Hearing Date & Time:  March 3, 2011 at 9:45 a.m. (Eastern Time)
Objection Deadline:  February 11, 2011 at 4:00 p.m. (Eastern Time)

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA,
A PROFESSIONAL CORPORATION
Sander L. Esserman (Admitted *Pro Hac Vice*)
Robert T. Brousseau (Admitted *Pro Hac Vice*)
Peter C. D'Apice
Jo E. Hartwick (Admitted *Pro Hac Vice*)
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone:  (214) 969-4900
Facsimile:  (214) 969-4999


Counsel for Dean M. Trafelet in his
Capacity as the Future Claimants' Representative


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            )
In re                                                       )        Chapter 11
                                                            )
MOTORS LIQUIDATION COMPANY, *et al.*,)        Case No. 09-50026 (REG)
                                                            )
        f/k/a General Motors Corp.,  *et al.*        )        (Jointly Administered)
                                                            )
                            Debtors.            )
------------------------------------------------------------X


**MEMORANDUM OF LAW OF DEAN M. TRAFELET, FUTURE CLAIMANTS'
REPRESENTATIVE, IN SUPPORT OF CONFIRMATION OF THE DEBTORS'
AMENDED JOINT CHAPTER 11 PLAN, DATED DECEMBER 7, 2010**

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................ii

TABLE OF AUTHORITIES ........................................................................ vi

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................... 4

III.  THE PLAN'S TREATMENT OF ASBESTOS
      LIABILITY IS APPROPRIATE UNDER THE UNIQUE
      CIRCUMSTANCES OF THIS CASE ................................................ 6

      A.   Pursuant to Section 105 of the Bankruptcy Code,
           the Court may issue any order necessary to carry
           out the provisions of the Bankruptcy Code. ........................... 7

      B.   Under the unique circumstances of this
           liquidating bankruptcy case, the Court's use of
           Section 105(a) of the Bankruptcy Code to channel
           Asbestos Personal Injury Claims to the Asbestos
           Trust would be consistent with other provisions of
           the Bankruptcy Code.................................................................. 9

      C.   Where, as here, the unique and exigent
           circumstances of a liquidating bankruptcy
           necessitate, the use of Section 105(a) of the
           Bankruptcy Code to channel and permanently
           enjoin Asbestos Personal Injury Claims against
           Protected Parties is appropriate............................................ 10

IV.   THE ISSUES RAISED IN THE PLAN OBJECTIONS
      SHOULD NOT IMPEDE CONFIRMATION.................................... 14

V.    THE PLAN COMPLIES WITH THE CONFIRMATION
      REQUIREMENTS OF THE BANKRUPTCY CODE ..................... 17

      A.   The Plan Complies with the Requirements of
           Sections 1123(a) and 1122 as Required by Section
           1129(a)(1). ................................................................................. 18

1.  The Plan properly classifies claims in accordance with the requirements of Section 1122(a). ....................................................... 18

2.  The Plan includes the information required by Section 1123(a). ......................................................... 21

    a.  The Plan appropriately designates classes of claims and interests as required by Section 1123(a)(1) ................................................. 21

    b.  The Plan appropriately identifies those claims and interests that are not impaired by the Plan as required by Section 1123(a)(2) .................................. 21

    c.  The Plan appropriately describes the proposed treatment for all impaired classes of claims and interests as required by Section 1123(a)(3). ............................ 22

    d.  The Plan appropriately provides the same treatment for similarly classified claims as required by Section 1123(a)(4). ................................................. 24

    e.  The Plan appropriately provides adequate means for its implementation as required by Section 1123(a)(5). ........................................ 24

    f.  The Plan complies with Section 1123(a)(6). ................................................. 26

    g.  The Plan discloses or sets forth the method for selecting the administrators or trustees provided for in the Plan that is consistent with the interests of creditors, equity security holders, and public policy as required by Section 1123(a)(7). ................................................. 27

B.  The Debtors have complied with the Disclosure and Solicitation Requirements of Sections 1125 and 1126 as required by Section 1129(a)(2) ......................................... 29

1.  The Debtors have complied with Section
    1125 of the Bankruptcy Code..........................................29

2.  The Plan complies with Section 1126 of the
    Bankruptcy Code. ...........................................................31

C.  The Facts and Circumstances of this Case
    Demonstrate that the Plan was proposed in Good
    Faith as Required by Section 1129(a)(3). .............................33

D.  All Payments to be made by the Debtors in
    Connection with the Plan and in this Case are
    Subject to Court Approval as Required by Section
    1129(a)(4)......................................................................34

E.  The Debtors Will Dissolve Within Thirty Days
    After Consummation of the Plan, and Will Have
    No Management to Disclose Under Section
    1129(a)(5)......................................................................35

F.  Section 1129(a)(6)'s Requirement that any Rate
    Changes Proposed in the Plan be Approved by the
    Applicable Governmental Regulatory Commission
    Does not Apply to this Case. ................................................36

G.  The Plan Provides each Impaired Claimant with a
    Greater Recovery than the Claimant would
    Receive in a chapter 7 Liquidation as Required by
    Section 1129(a)(7)...........................................................36

H.  The Plan Proposes to Pay Administrative
    Expenses and Priority Claims in Accordance with
    the Requirements of Section 1129(a)(9). .............................39

    1.  The Plan provides for payment in full of the
        allowed amount of administrative expense
        claims consistent with the requirements of
        Section 1129(a)(9)(A)....................................................39

    2.  The Plan provides for payment of unsecured
        priority claims in accordance with the
        requirements of Section 1129(a)(9)(B).........................40

3.      The Plan provides for the payment of priority
        tax claims in accordance with the
        requirements of Section 1129(a)(9)(C)...........................................40

I.      The Plan has been accepted by at least one Class
        of Impaired Claims as Required by Section
        1129(a)(10). ...........................................................................41

J.      The Plan is Feasible as Required by Section
        1129(a)(11). ...........................................................................41

K.      The Plan Provides for Payment of All Statutory
        Fees under 28 U.S.C. § 1930 as required by
        Section 1129(a)(12). ................................................................43

L.      Section 1129(a)(13) is Inapplicable Because the
        Debtors Have No Residual Retiree Benefit
        Obligations..............................................................................44

M.      The Plan does not Discriminate Unfairly and is
        Fair and Equitable with Respect to Class 6 Equity
        Interests in MLC as Required by Section
        1129(b)(1). .............................................................................44

        1.      The Plan does not discriminate unfairly
                against Class 6 Equity Interests in MLC....................................45

        2.      The Plan is fair and equitable to Class 6
                Equity Interests.........................................................................45

VI.     CONCLUSION...............................................................................46

# TABLE OF AUTHORITIES

## CASES

*Bessette v. Avco Financial Servs., Inc.,*
230 F.3d 439 (1st Cir. 2000), *amended on denial of rehearing*
(Dec. 15, 2000)................................................................................................8

*Class Five Nev. Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*),
280 F.3d 648 (6th Cir.2002)...........................................................................11

*Deutsche Bank , London Branch v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*),*
 416 F.3d 136 (2d Cir. 2005).........................................................10, 11, 16

*Feld v. Zale Corp.* (*In re Zale Corp.*),*
62 F.3d 746 (5th Cir.1995)............................................................................8

*Gillman v. Cont'l Airlines* (*In re Cont'l Airlines* ),
203 F.3d 203 (3d Cir.2000)...........................................................................11

*In re Adelphia Communications Corp.,*
368 B.R. 140 (Bankr. S.D.N.Y. 2007), *appeal dismissed,*
367 B.R. 84 (S.D.N.Y. 2007) and 371 B.R. 660 (S.D.N.Y. 2007),
*order aff'd*, 544 F.3d 420 (2d Cir. 2008)...........................................12, 13, 16

*In re Alves Photo Serv., Inc.,*
6 B.R. 690 (Bankr. D. Mass. 1980)...........................................................18, 37

*In re American Family Enters., Inc.,*
256 B.R. 377 (D.N.J. 2000).........................................................................9, 10

*In re Armstrong World Indus., Inc.,*
348 B.R. 136 (D. Del. 2006).......................................................................19, 20

*In re Chateaugay Corp.,*
89 F.3d 942 (2d Cir. 1996)...........................................................................19

*In re Dairy Mart Convenience Stores, Inc.,*
351 F.3d 86 (2d Cir. 2003)............................................................................8

*In re Drexel Burnham Lambert Group Inc.,*
138 B.R. 723 (Bankr. S.D.N.Y. 1992)...................................10, 18, 19, 29, 33, 34, 37

*In re Fesco Plastics Corp., Inc.,*
996 F.2d 152 (7th Cir.1993), *rehearing denied*
(June 25, 1993)................................................................................8

*In re Global Water Technologies, Inc.,*
311 B.R. 896 (Bankr. D. Colo. 2004)..............................................33

*In re Hoosier Hi-Reach, Inc.,*
64 B.R. 34 (Bankr. S.D. Ind. 1986)................................................33

*In re Insilco Techs., Inc.,*
480 F.3d 212 (3d Cir. 2007)...........................................................42

*In re Johns-Manville Corp.,*
68 B.R. 618 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987),
*aff'd*, 843 F.2d 636 (2d Cir. 1988)............................................34, 45

*In re Lisanti Foods, Inc.,*
329 B.R. 491 (D.N.J. 2005), *Mot. for relief from Judm. denied,*
2006 WL 2927619 (D.N.M. Oct. 11, 2006),
*and aff'd,* 241 Fed.Appx. 1 (3d Cir. 2007)...............................39, 43

*In re Madison Hotel Assocs.,*
749 F.2d 410 (7th Cir. 1984)..........................................................33

*In re Master Mortg. Inv. Fund, Inc.,*
168 B.R. 930 (Bankr. W.D. Mo. 1994)............................................11

*In re Quigley Co., Inc.,*
377 B.R. 110 (Bankr. S.D.N.Y. 2007).............................................19

*In re Specialty Equip. Cos.,*
3 F.3d 1043 (7th Cir.1993).............................................................11

*In re Texaco Inc.,*
84 B.R. 893 (Bankr. S.D.N.Y. 1988),
*appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988).........................29, 33

*In re T H Agriculture & Nutrition, L.L.C.,*
Case No. 08-14692 (REG), 2009 WL 7193573
(Bankr. S.D.N.Y. May 28, 2009).....................................................17

*In re Worldcom, Inc.,*
No. 02-13533 (AJG), 2003 WL 23861928
(Bankr. S.D.N.Y. Oct. 31, 2003)...................................................................34, 45

*Kane v. Johns-Manville Corp.,*
843 F.2d 636 (2d Cir. 1988).................................................................................18

*Local Loan Co. v. Hunt,*
292 U.S. 234 (1934)...............................................................................................7

*Lyondell Chemical Co. vs. CenterPoint Energy Gas Services Inc. (In re Lyondell
Chemical Co.),* 402 B.R. 571 (Bankr. S.D.N.Y. 2009)......................................7

*MacArthur Co. v. Johns-Manville Corp. (In re Johns-Manville Corp.),*
837 F.2d 89 (2d Cir. 1988), *cert. denied,*
488 U.S. 868 (1988)........................................................................................10, 11

*Menard-Sanford v. Mabey (In re A.H. Robins Co.),*
880 F.2d 694 (4th Cir.1989)................................................................................11

*The Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel Cybergenics
Corp. v. Chinery,* 330 F.3d 548 (3d Cir. 2003),
*cert. dismissed,* 540 U.S. 1001 (2003)
and 540 U.S. 1002 (2003).....................................................................................8

*Pub. Fin. Corp. v. Freeman,*
712 F.2d 219 (5th Cir. 1983)...............................................................................33

*Schwartz v. Aquatic Dev. Group, Inc. (In re Aquatic Dev. Group, Inc.),*
352 F.3d 671 (2d Cir. 2003)..................................................................................7

*SEC v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert
Group, Inc.),* 960 F.2d 285 (2d Cir. 1992),
*cert. dismissed,* 506 U.S. 1088 (1993)..........................................................10, 11

*Solow v. Kalikow (In re Kalikow),*
602 F.3d 82 (2d Cir. 2010)...............................................................................7, 8

*U.S. v. Energy Resources Co.,*
495 U.S. 545 (1990)...............................................................................................8

## STATUTES

11 U.S.C. § 105..................................................................................................7, 8, 9, 10, 24

11 U.S.C. § 105(a)..................................................................................................7, 8, 9, 10

11 U.S.C. § 330..................................................................................................35

11 U.S.C. § 331..................................................................................................35

11 U.S.C. § 503..................................................................................................35

11 U.S.C. § 503(b)..................................................................................................35

11 U.S.C. § 524(g) ..................................................................................................7, 9, 13

11 U.S.C. § 524(g)(1)(B)..................................................................................................9

11 U.S.C. § 524(g)(2)(B)(i) ..................................................................................................9

11 U.S.C. § 524(e)..................................................................................................12

11 U.S.C. § 726..................................................................................................38

11 U.S.C. § 1114..................................................................................................44

11 U.S.C. § 1122..................................................................................................18, 20

11 U.S.C. § 1122(a)..................................................................................................18, 19, 20

11 U.S.C. § 1123..................................................................................................18

11 U.S.C. § 1123(a)..................................................................................................18, 21

11 U.S.C. § 1123(a)(1)..................................................................................................21

11 U.S.C. § 1123(a)(2)..................................................................................................21

11 U.S.C. § 1123(a)(3)..................................................................................................22

11 U.S.C. § 1123(a)(4)..................................................................................................24

11 U.S.C. § 1123(a)(5)..................................................................................................24

11 U.S.C. § 1123(a)(5)..................................................................................17

11 U.S.C. § 1123(a)(5)(D)..............................................................................17

11 U.S.C. § 1123(a)(6)..............................................................................26, 27

11 U.S.C. § 1123(a)(7)..............................................................................27, 28

11 U.S.C. § 1124..........................................................................................22

11 U.S.C. § 1125..................................................................................29, 30, 31

11 U.S.C. § 1125(b).......................................................................................29

11 U.S.C. § 1125(c).......................................................................................29

11 U.S.C. § 1126......................................................................................29, 31

11 U.S.C. § 1126(a).......................................................................................31

11 U.S.C. § 1126(c).......................................................................................32

11 U.S.C. § 1126(f)...................................................................................31, 32

11 U.S.C. § 1126(g).............................................................................31, 32, 38

11 U.S.C. § 1129......................................................................................17, 18

11 U.S.C. § 1129(a)(1)...................................................................................18

11 U.S.C. § 1129(a)(2).............................................................................29, 33

11 U.S.C. § 1129(a)(3)...................................................................................33

11 U.S.C. § 1129(a)(4)...................................................................................34

11 U.S.C. § 1129(a)(5).............................................................................35, 36

11 U.S.C. § 1129(a)(5)(A)(i)...........................................................................35

11 U.S.C. § 1129(a)(5)(A)(ii)..........................................................................35

11 U.S.C. § 1129(a)(5)(B)..............................................................................36

11 U.S.C. § 1129(a)(6)........................................................................................36

11 U.S.C. § 1129(a)(7).........................................................................36, 37, 39

11 U.S.C. § 1129(a)(8)........................................................................................39

11 U.S.C. § 1129(a)(9)(A)..................................................................................39

11 U.S.C. § 1129(a)(9)(B)..................................................................................40

11 U.S.C. § 1129(a)(9)(B)(i).............................................................................40

11 U.S.C. § 1129(a)(9)(B)(ii)............................................................................40

11 U.S.C. § 1129(a)(9)(C)............................................................................40, 41

11 U.S.C. § 1129(a)(10)......................................................................................41

11 U.S.C. § 1129(a)(11)................................................................................41, 43

11 U.S.C. § 1129(a)(12)................................................................................43, 44

11 U.S.C. § 1129(a)(13)......................................................................................44

11 U.S.C. § 1129(b).....................................................................................39, 44, 46

11 U.S.C. § 1129(b)(1)...................................................................................44, 45

11 U.S.C. § 1129(b)(2)(C)..................................................................................45

28 U.S.C. § 1930.................................................................................................43

## SECONDARY AUTHORITIES

7 COLLIER ON BANKRUPTCY ¶ 1129.02[11]..................................................41

Hearing Date & Time:  March 3, 2011 at 9:45 a.m. (Eastern Time)
Objection Deadline:  February 11, 2011 at 4:00 p.m. (Eastern Time)

## MEMORANDUM OF LAW OF DEAN M. TRAFELET, FUTURE CLAIMANTS' REPRESENTATIVE, IN SUPPORT OF CONFIRMATION OF THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN, DATED DECEMBER 7, 2010

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Dean M. Trafelet, the court-appointed Legal Representative for Future

Asbestos Personal Injury Claimants in this case (the "**Future Claimants'**

**Representative**"), submits this Memorandum of Law in Support of Confirmation of

the Debtors' Amended Joint Chapter 11 Plan, Dated December 7, 2010, and

respectfully represents as follows:

## I.
## INTRODUCTION

The Plan[1] constitutes a fair and equitable scheme for the resolution and

satisfaction of the myriad issues, claims and interests in these singular bankruptcy

cases and should be confirmed.  These bankruptcy cases are, if anything, unique.

The pressures, exigencies, novel issues of law, governmental involvement, and

potential for far-reaching economic impact that have been present in these cases are

rarely—if ever—present in other liquidating bankruptcy cases.  Indeed, this Court

has more than once referred to the "exigent circumstances of these chapter 11

cases" and commented on the "widespread and adverse economic consequences for

the Debtors, their estates, their creditors, employees, the automotive industry, and

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed
thereto in the Debtors' Amended Joint Chapter 11 Plan, dated December 7, 2010 (as
subsequently amended by the Stipulation and Order Fixing Asbestos Trust Claim
and Resolving Debtors' Estimation Motion [Docket No. 9214]) (the "**Plan**").

1

the national economy" as a whole, which would be "threatened by protracted proceedings in these chapter 11 cases."[2]

Against this backdrop, the Debtors were obliged to develop a confirmable plan of liquidation that would fairly and adequately provide for their creditors—including present and future asbestos claimants. The Plan achieves this objective. As is common with liquidating plans, the means by which the Plan is to be effectuated centers around the formation of certain trusts, which will liquidate and pay claims pursuant to procedures and criteria articulated in the Plan and to be approved by this Court. By dividing the assets of the Debtors among these trusts in a fair and equitable manner, and then assigning to each trust's trustee the task of disbursing the corpus of the trust pursuant to procedures that ensure claimants within each class of claims are treated equally, the Plan allows the Debtors to liquidate and dissolve, while at the same time providing a mechanism for the orderly payment of claims.

Among the trusts contemplated by the Plan is the Asbestos Trust, to which present and future Asbestos Personal Injury Claims are to be channeled for payment. The Asbestos Trust mechanism in these liquidation cases is the result of extensive negotiations among the Debtors, Future Claimants' Representative and the Asbestos Committee (as defined below). The Future Claimants' Representative

---

[2] *See e.g.*, Order (I) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (III) Granting Related Relief [Dkt. No. 2968] at pp. 5-6) (the "**Sale Order**").

believes that, under the exigent and unique circumstances of this case, the Plan's treatment of Asbestos Personal Injury Claims (*i.e.*, the channeling of such claims to the Asbestos Trust and the enjoining of such claims against Protected Parties) is appropriate here.

Furthermore, the Future Claimants' Representative believes that the Plan as a whole can be—and should be—confirmed under the relevant provisions of the Bankruptcy Code. While certain parties have objected to confirmation of the Plan, the Future Claimants' Representative does not believe that any of these objections should impede confirmation of the Plan. Indeed, many of the confirmation objections filed to date either lack merit or are easily resolved by minor plan modifications. The Debtors, no doubt, will either resolve such confirmation objections before the confirmation hearing or will provide this Court with briefing and argument as to why the objections should be denied.

The purpose of this Memorandum of Law is to provide this Court with (i) the Future Claimants' Representative's assessment of the propriety of the Asbestos Trust mechanism in this unique liquidating bankruptcy case, (ii) to respond to those few confirmation objections that affect issues pertinent to the Asbestos Trust or the Future Claimants' Representative's constituency, and (iii) to provide analysis as to the confirmability of the Plan as a plan of liquidation under the Bankruptcy Code.

## II.
## BACKGROUND

On the Commencement Date, Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and several of its affiliates (collectively, the "**Debtors**") commenced these cases under chapter 11 of the Bankruptcy Code.

On June 3, 2009, the Office of the United States Trustee for the Southern District of New York (the "**United States Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Creditors' Committee**") to represent the interests of all unsecured creditors in these chapter 11 cases.

On March 2, 2010, the United States Trustee appointed the Official Committee of Unsecured Creditors Holding Asbestos Related Claims of Motors Liquidation Company (the "**Asbestos Committee**") to represent the interests of holders of present Asbestos Personal Injury Claims.

On March 9, 2010, the Debtors filed their Motion Pursuant to Sections 105 and 1109 of the Bankruptcy Code for an Order Appointing Dean M. Trafelet as Legal Representative for Future Asbestos Personal Injury Claimants (the "**Appointment Motion**") asking this Court to appoint the Future Claimants' Representative to represent and protect the interests of holders of future asbestos personal injury claims against the Debtors (the "**Future Claimants**").  Pursuant to an order dated April 8, 2010, this Court approved Dean M. Trafelet's appointment as the Future Claimants' Representative.  The Future Claimants' Representative represents the interests of holders of future Asbestos Personal Injury Claims.

4

The Debtors historically incurred significant liability with respect to Asbestos Personal Injury Claims. Indeed, as of the Petition Date, approximately 29,000 Asbestos Personal Injury Claims were pending against the Debtors.

On November 15, 2010, the Debtors filed a motion for entry of an order pursuant to section 502(c) of the Bankruptcy Code authorizing estimation of their aggregate liability for Asbestos Personal Injury Claims for purposes of the Plan and establishing a schedule for an estimation proceeding (the "**Estimation Motion**").

On December 7, 2010, the Debtors filed the Debtors' Amended Joint Chapter 11 Plan, dated December 7, 2010 [Docket No. 8015]. On December 8, 2010, the Debtors filed their Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan (the "**Disclosure Statement**") [Docket No. 8023], which was approved by the Bankruptcy Court on December 8, 2010, pursuant to that Order (I) Approving Notice of Disclosure Statement Hearing; (II) Approving Disclosure Statement; (III) Establishing A Record Date; (IV) Establishing Notice and Objection Procedures for Confirmation of the Plan; (V) Approving Notice Packages and Procedures for Distribution Thereof; (VI) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan; and (VII) Approving the Forms of Notices to Non-Voting Classes Under the Plan (the "**Disclosure Statement Order**") [Docket No. 8043]. Thereafter, the Debtors commenced the process of soliciting votes to accept or reject the Plan.

On or about January 21, 2011, the Future Claimants' Representative, the Asbestos Committee, the Creditors' Committee, and the Debtors entered into a

Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtors'
Estimation Motion (the "**Stipulation and Order**").  Pursuant to the Stipulation and
Order, the parties resolved the Estimation Motion and agreed that the Debtors'
aggregate liability for Asbestos Personal Injury Claims, *i.e.*, the Asbestos Trust
Claim under the Plan, shall be fixed in the amount of $625 million.  The Stipulation
and Order amends the Plan as and to the extent set forth in **Exhibit "A"** to the
Stipulation and Order.

On or about February 14, 2011, this Court approved and entered the
Stipulation and Order [Docket No. 9214].

### III.
### THE PLAN'S TREATMENT OF ASBESTOS LIABILITY IS APPROPRIATE UNDER THE UNIQUE CIRCUMSTANCES OF THIS CASE

After protracted, arms-length negotiations among the Debtors, Future
Claimants' Representative, and Asbestos Committee, a channeling and trust
mechanism was developed for Asbestos Personal Injury Claims that meets the
exigent circumstances of this liquidating bankruptcy, while at the same time
providing adequate means to satisfy the Debtors' present and future asbestos
liabilities.  Pursuant to the Plan, Asbestos Personal Injury Claims will be channeled
to the Asbestos Trust and all Entities shall be permanently enjoined from taking
any action with respect to any Asbestos Personal Injury Claim against any
Protected Party—except actions to enforce any right under the Plan, any Exhibits to
the Plan, the Plan Supplement or any other agreement or instrument between the
Debtors and the Asbestos Trust (Plan, Article 4.5).  While the implementation by a

liquidating debtor of a channeling and trust mechanism similar to that

contemplated for reorganizations in Section 524(g) is a novel concept, the

circumstances of these cases—which are unprecedented and not likely to occur

again—are such that the extension of this Court's authority under Bankruptcy

Code, Section 105 to approve the mechanism fashioned in the Plan is appropriate

here.  Notably, there have been no objections directly attacking the propriety of the

trust mechanism established for Asbestos Personal Injury Claims.  However,

because the treatment of the asbestos claims in this liquidating bankruptcy is so

novel, the Future Claimants' Representative feels that an analysis is appropriate.

A.    **Pursuant to Section 105 of the Bankruptcy Code, the Court may issue any order necessary to carry out the provisions of the Bankruptcy Code.**

Section 105(a) of the Bankruptcy Code empowers a bankruptcy court with

authority to issue "any order, process, or judgment that is necessary or appropriate

to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). *Solow v.*

*Kalikow* (*In re Kalikow),* 602 F.3d 82, 96-97 (2d Cir. 2010); *Lyondell Chemical Co.*

*vs. CenterPoint Energy Gas Services Inc. (In re Lyondell Chemical Co.),* 402 B.R.

571, 587 (Bankr. S.D.N.Y. 2009) (employing authority under § 105(a) in the context

of a § 362 stay).  Bankruptcy courts are "courts of equity, empowered to invoke

equitable principles to achieve fairness and justice in the reorganization process."

*Schwartz v. Aquatic Dev. Group, Inc.* (*In re Aquatic Dev. Group, Inc.*), 352 F.3d 671,

680 (2d Cir. 2003) (internal citations and quotations omitted); *see also Local Loan*

*Co. v. Hunt,* 292 U.S. 234, 240 (1934) ("[C]ourts of bankruptcy are essentially courts

of equity, and their proceedings inherently proceedings in equity.").  As courts of

equity, bankruptcy courts "have broad authority to modify creditor-debtor relationships." *U.S. v. Energy Resources Co.*, 495 U.S. 545, 549 (1990). Thus, bankruptcy courts may use their equitable powers to "craft flexible remedies that, while not expressly authorized by the Code, effect the result the Code was designed to obtain." *The Official Comm. of Unsecured Creditors of Cybergenics Corp. ex rel Cybergenics Corp. v. Chinery*, 330 F.3d 548, 568 (3d Cir. 2003), *cert. dismissed,* 540 U.S. 1001 (2003) and 540 U.S. 1002 (2003).

The Second Circuit has long recognized that "[s]ection 105(a) limits the bankruptcy court's equitable powers, which 'must and can only be exercised within the confines of the Bankruptcy Code.'" *Kalikow,* 602 F.3d at 96-97 (citations omitted). Section 105 "does not 'authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d 86, 92 (2d Cir. 2003).

Accordingly, while Section 105 does not itself create new rights, a bankruptcy court may invoke Section 105 if the equitable remedy utilized is demonstrably necessary to preserve a right elsewhere provided in the Bankruptcy Code. *Bessette v. Avco Financial Servs., Inc.,* 230 F.3d 439, 444-45 (1st Cir. 2000), *amended on denial of rehearing* (Dec. 15, 2000). "[W]hen a specific Code section addresses an issue, a court may not employ its equitable powers to achieve a result not contemplated by the Code." *In re Fesco Plastics Corp., Inc.,* 996 F.2d 152, 154-55 (7th Cir.1993), *rehearing denied* (June 25, 1993); *Feld v. Zale Corp. (In re Zale*

8

*Corp.),* 62 F.3d 746, 760 (5th Cir.1995) ("A § 105 injunction cannot alter another

provision of the [C]ode.").

**B.    Under the unique circumstances of this liquidating bankruptcy case, the Court's use of Section 105(a) of the Bankruptcy Code to channel Asbestos Personal Injury Claims to the Asbestos Trust would be consistent with other provisions of the Bankruptcy Code.**

Where a debtor is seeking to reorganize under the weight of substantial

asbestos liability, the Bankruptcy Code authorizes the issuance of an injunction to

enjoin entities from taking action with respect to a claim or demand that is to be paid

in whole or in part by a trust that is to assume the liabilities of a debtor for personal

injury claims allegedly caused by the presence of, or exposure to, asbestos or asbestos

containing products.  11 U.S.C. § 524(g)(1)(B).  While application of Section 524(g) is

limited to those circumstances where a debtor seeks to reorganize, under the

circumstances presented here, a narrow extension of the Court's authority under

Section 105(a) to provide similar relief to these liquidating debtors is called for.  *See*

*e.g.,* 11 U.S.C. § 524(g)(2)(B)(i) ("the injunction is to be implemented in connection

with a trust that, pursuant to a plan of *reorganization—*") (emphasis added).

Courts have found that the use of Section 105 of the Bankruptcy Code to

issue channeling injunctions similar to the one proposed in the Plan is appropriate

under certain, unique and exigent circumstances.  In *In re American Family*

*Enters., Inc.* 256 B.R. 377 (D.N.J. 2000), the court used Section 105 to issue a

channeling injunction that channeled all consumer claims to a consumer fund and

permanently enjoined pursuit of those claims against certain released parties.  In

issuing the channeling injunction, the court observed that the funding provided in

9

conjunction with the channeling injunction would not otherwise have been available to pay the consumer claims. *Id.* at 406-07. Similarly, this Court employed Section 105 of the Bankruptcy Code in *In re Drexel Burnham Lambert Group Inc.*, 138 B.R. 723 (Bankr. S.D.N.Y. 1992) to issue an injunction to channel claims to pooled assets and funds. The *Drexel Burnham* court observed that the injunction and release provisions were "essential to implementing and consummating the Plan, and providing Plan distributions to Creditors." *Id.* at 754. The channeling injunction is equally essential here in implementing the Plan through which the Debtors will provide for payment of present and future asbestos-related personal injury claims— which payment would not otherwise be available if the Debtors simply liquidated.

C.    **Where, as here, the unique and exigent circumstances of a liquidating bankruptcy necessitate, the use of Section 105(a) of the Bankruptcy Code to channel and permanently enjoin Asbestos Personal Injury Claims against Protected Parties is appropriate.**

The Second Circuit Court of Appeals has held that "[i]n bankruptcy cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an important part in the debtor's reorganization plan." *Deutsche Bank, London Branch v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136, 141 (2d Cir. 2005) (*quoting, SEC v. Drexel Burnham Lambert Group, Inc.* (*In re Drexel Burnham Lambert Group, Inc.*), 960 F.2d 285, 293 (2d Cir. 1992), *cert. dismissed,* 506 U.S. 1088 (1993)); *See also, MacArthur Co. v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 837 F.2d 89, 93-94 (2d Cir. 1988), *cert. denied,* 488 U.S. 868 (1988). In its *Metromedia* decision, the Second Circuit, while acknowledging (and not overruling) the earlier law in this area, put its earlier

10

holdings in a context that now limits the use of third-party releases to situations

that can be regarded as unique.   The court in *Metromedia* explained:

> While none of our cases explains when a nondebtor release is "important" to a debtor's plan, it is clear that such a release is proper only in rare cases. *See, e.g., Class Five Nev. Claimants v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 280 F.3d 648, 657-58 (6th Cir.2002) ( "[S]uch an injunction is a dramatic measure to be used cautiously ....");  *Gillman v. Cont'l Airlines* (*In re Cont'l Airlines* ), 203 F.3d 203, 212-13 (3d Cir.2000) (recognizing that nondebtor releases have been approved only in "extraordinary cases").

416 F.3d at 141.

The Second Circuit cited examples of situations where the facts were

sufficiently unique to approve nondebtor releases:

> Courts have approved nondebtor releases when: the estate received substantial consideration, *e.g., Drexel Burnham,* 960 F.2d at 293; the enjoined claims were "channeled" to a settlement fund rather than extinguished, *MacArthur Co. v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 837 F.2d 89, 93-94 (2d Cir.1988); *Menard-Sanford v. Mabey* (*In re A.H. Robins Co.*), 880 F.2d 694, 701 (4th Cir.1989); the enjoined claims would indirectly impact the debtor's reorganization "by way of indemnity or contribution," *id.;* and the plan otherwise provided for the full payment of the enjoined claims, *id.*  Nondebtor releases may also be tolerated if the affected creditors consent. *See In re Specialty Equip. Cos.,* 3 F.3d 1043, 1047 (7th Cir.1993).

*Id.* at 142.

The Second Circuit in *Metromedia* further explained: "But this is not a

matter of factors and prongs."  *Id.*  As the bankruptcy court for the Western District

of Missouri observed in applying substantially identical factors:

> No court has set out a rigid "factor test" to be applied in every circumstance. Rather, the courts have engaged in a fact specific review, weighing the equities of each case.

*In re Master Mortg. Inv. Fund, Inc.,* 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994).

11

This Court examined and applied the standards set forth in *Metromedia* in *In re Adelphia Communications Corp.,* 368 B.R. 140 (Bankr. S.D.N.Y. 2007), *appeal dismissed,* 367 B.R. 84 (S.D.N.Y. 2007) and 371 B.R. 660 (S.D.N.Y. 2007), *order aff'd,* 544 F.3d 420 (2d Cir. 2008).   In *Adelphia,* a bondholder group objected to numerous nondebtor releases arguing that "section 524(e) 'expressly prohibits' thirdparty releases and injunctions . . ." *Id.* at 266.  This Court responded:

> . . . I think that statement is inaccurate. Section 524(e) provides that the *discharge itself* does not grant such a release or injunction, and is silent on whether a bankruptcy court can expressly discharge or otherwise affect the liability of a non-debtor. That silence does not mean that third-party releases are always forbidden. Their propriety, in individual cases, is the subject of extensive caselaw in this Circuit and elsewhere, including several decisions of the Second Circuit itself.

*Id.* (emphasis in original).

After careful analysis of the *Metromedia* decision, and the cases leading up to it, this Court noted that "[i]n the Second Circuit, it has long been the law that third party releases are permissible under at least some circumstances." *Id.*  This Court further stated:

> Thus, in the Second Circuit, third-party releases or injunctions to prevent a creditor from suing a third party now are permissible under some circumstances, but not as a routine matter. They are permissible if, but only if, there are unusual circumstances to justify enjoining a creditor from suing a non-debtor party.

*Id.* at 267.  Accordingly, the Court concluded in *Adelphia* that there are three categories of third-party releases that are acceptable:

> 1. *Indemnified Persons.* Persons or entities who by employment contract, corporate bylaws, or retention or loan agreements must be indemnified by the estate with respect to their services.  To the extent

12

that the third party releases are congruent with the indemnification obligations, and the debtor would be liable for any liability imposed on such persons, third-party releases are acceptable. That is so even if they involve professionals for, or lenders to, the estate.

2. *Unique Transactions.*  Cases where a third-party makes a substantial contribution which makes the reorganization possible.  In Adelphia, this applied to the buyers who put $17.5 billion into the estate, and agreed to rework their agreements to take the debtors' assets in a section 363 sale, when creditor feuding made it impossible to confirm the reorganization plan that the buyers originally bargained for. That qualifies as having contributed substantial consideration to the reorganization.

3. *Consent.* In cases where the proposed release is appropriately disclosed, consent can be established by a vote in support of a plan.

*Id.* at 268.

This case presents the sufficiently rare and unusual circumstances contemplated by the courts in *Metromedia* and *Adelphia*.  The plan provides for the channeling of all Asbestos Personal Injury Claims, both present and future, to the Asbestos Trust for payment.  Unique transactions in this case have made it possible to fund the Asbestos Trust—funds that otherwise would not have been available to pay present or future Asbestos Personal Injury Claims.  In addition, the affected creditors consented to this treatment when they voted to accept the plan.  These factors satisfy the standards articulated in *Metromedia* and *Adelphia*.

Additionally, the channeling injunction proposed by the Plan does not contravene any fundamental purpose of the Bankruptcy Code.  While 11 U.S.C. § 524(g) does not apply in this case, the policy and purpose behind 524(g) is not being violated.  At the heart of 524(g) is the overarching principle of equitable treatment among the claimants who are channeled to the trust.  Here, both present and future

Asbestos Personal Injury Claims are channeled to the Asbestos Trust for satisfaction.  The purpose of the proposed Trust Distribution Procedures is to treat all holders of present and future Asbestos Personal Injury Claims equitably.

Furthermore, the injunctive relief provided to the Protected Parties is fair and equitable in light of the fact that funds will be provided to the Asbestos Trust that would not otherwise be available to pay present or future Asbestos Personal Injury Claims.  The channeling of the Asbestos Personal Injury Claims to the Asbestos Trust is the result of extensive arm's length negotiations among the Debtors, the Creditors' Committee, the Asbestos Committee, the Future Claimants' Representative and other parties in interest to obtain a fair, equitable, and permanent resolution of the Debtors' asbestos-related liabilities.  The Plan provides such a resolution.

## IV.
## THE ISSUES RAISED IN THE PLAN OBJECTIONS
## SHOULD NOT IMPEDE CONFIRMATION

Although none of the confirmation objections filed to date relates directly to the Asbestos Trust or the treatment of Asbestos Personal Injury Claims under the Plan, certain confirmation objections seek changes to the Plan, which are unwarranted, lack any legal basis, and would negatively affect the interests of Asbestos Claimants.

For instance, the Town of Salina, New York ("**Salina**"), which holds a disputed General Unsecured Claim, has lodged a nebulous confirmation objection, asserting that the Plan should require the GUC Trust to make initial distributions

in only half the amount of allowed claims, so that Salina may be sure that there are sufficient funds to pay its claims should they be allowed. As an initial matter, it would be wholly improper and unprecedented under the circumstances to withhold hundreds of millions of dollars of allowed claims amounts (including amounts payable to the Asbestos Trust) so that a relatively minor creditor may rest at ease that its disputed claim may be paid, if it is ultimately allowed. Tellingly, Salina provides no authority for such a proposition. Furthermore, the February 11, 2011 Motion of Debtors for Entry of an Order Estimating Maximum Amount of Certain Claims for Purposes of Establishing Claims Reserves under the Debtors' Amended Joint Chapter 11 Plan (the **"Debtors' Claims Reserves Motion"**) specifically provides for a $10 million dollar reserve for the Salina claim. Consequently, the Court should overrule Salina's confirmation objection.

New United Motor Manufacturing, Inc. ("**NUMMI**") has filed a comparable objection to the Debtors' Amended Joint Plan based on its concern that it will receive reduced distributions on its disputed claim compared to other general unsecured creditors. NUMMI requests that the Debtors establish a reserve to cover the full $500 million dollars of its asserted claims. The Debtors' Claims Reserve Motion provides for a $500 million reserve for NUMMI's asserted claims. Accordingly, the Court should overrule NUMMI's objection.

Similarly, the State of New York—which holds a disputed General Unsecured Claim—contends that there should be a mechanism in place to guarantee the value

15

of GM common stock will remain stable.[3]  The State of New York requests that the

GUC Trust, to account for the possibility of a fluctuation in the value of the GM

common stock, should be required to "hold back" 25% of allowed claim amounts.

This position is untenable for the same reasons that are articulated above.

Furthermore, no Plan—and no Court for that matter—can guarantee that stock will

maintain or improve its value.  That is simply the nature of the assets with which

the GUC Trust has been funded.  Notably, and what the State of New York fails to

recognize, it is entirely possible that the value of GM common stock may increase in

value over time.  Indeed, recent market activity and the performance of GM would

indicate that the GM common stock may even increase in value, rather than

decrease.

Certain parties also object to the release and exculpation provisions in

Sections 12.5 and 12.6 of the Plan, respectively.   These Plan provisions are not the

same type of third-party releases such as those in *Metromedia*, 416 F.3d at 141-43

and *Adelphia,* 368 B.R. at 267.  Rather, the provisions in Sections 12.5 and 12.6 are

commonly found in plans, and merely release those professionals and parties

(including the Future Claimants' Representative) who have taken a role in these

bankruptcies from becoming involved in litigation over their ***post-Commencement***

***Date*** activities in the bankruptcies, and expressly excludes willful misconduct, gross

negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential

information, breach of fiduciary duty, and *ultra vires* acts (Plan at pp. 72-73, §§ 12.5

---

[3] *See* State of New York's Limited Objection to Debtors' Motion for Entry of an
Order Confirming Liquidation Plan and GUC Trust [Dkt. No. 9208] at p. 11.

and 12.6).  These common provisions are not objectionable, and should not be

allowed to impede confirmation of the Plan.  *See In re T H Agriculture & Nutrition,*

*L.L.C.*, Case No. 08-14692 (REG), 2009 WL 7193573, at * 23-24 (Bankr. S.D.N.Y.

May 28, 2009) (finding that release, exculpation and injunction provisions were fair

and equitable).  At any rate, as noted above, this case presents the sufficiently rare

and unusual circumstances in which the *Metromedia* and *Adelphia* courts found

that non-debtor releases are justified.

## V.
## THE PLAN COMPLIES WITH THE CONFIRMATION
## REQUIREMENTS OF THE BANKRUPTCY CODE

The general requirements for confirmation of a plan of reorganization under

Chapter 11 are listed in Section 1129 of the Bankruptcy Code.  The Debtors' plan of

liquidation is appropriate under the rules, and satisfies the requirements of

Bankruptcy Code, Section 1129.  "Section 1123(a)(5)[4], which mandates a plan to

provide adequate means for its execution, expressly permits 'the sale of all or any

part of the property of the estate . . . or the distribution of all or any part of the

---

[4] Section 1123(a)(5)(D) expressly contemplates the appropriateness in some
circumstances of a plan of liquidation.  More specifically, Section 1123(a)(5)(D)
provides as follows:

    (a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—
    …
    (5) provide adequate means for the plan's implementation, such as—
    …

        (D) sale of all or any part of the property of the estate, either subject to
        or free of any lien, or the distribution of all or any part of the
        property of the estate among those having an interest in such
        property of the estate.

11 U.S.C. § 1123(a)(5)(D).

property of the estate among those having an interest in such property of the

estate.'" *In re Alves Photo Serv., Inc.*, 6 B.R. 690, 693 (Bankr. D. Mass. 1980).

Where such a plan conforms to the provisions of Section 1123 and satisfies the

confirmation standards in Section 1129, it is confirmable. *Id.* In addition, where, as

here, a debtor seeks a channeling injunction, the debtor must satisfy the standards

articulated by the courts in that regard. As illustrated below, the Debtors' Plan

satisfies the requirements of the Bankruptcy Code.

## A.    The Plan Complies with the Requirements of Sections 1123(a) and 1122 as Required by Section 1129(a)(1).

Section 1129(a)(1) provides that a plan may only be confirmed if it complies

"with the applicable provisions of the [Bankruptcy Code]." 11 U.S.C. § 1129(a)(1).

Section 1129(a)(1) has been interpreted to require the court to find that the plan

complies with the requirements for classification of claims and the contents of a

plan outlined in Sections 1122 and 1123(a), respectively. *Drexel Burnham*, 138 B.R.

at 757 (noting that the legislative history of Section 1129(a)(1) indicates that the

section was meant to embody the requirements of Sections 1122 and 1123 of the

Bankruptcy Code); *see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648-49 (2d

Cir. 1988).

### 1.    *The Plan properly classifies claims in accordance with the requirements of Section 1122(a).*

The requirement that the plan comply with the applicable provisions of the

Bankruptcy Code requires the plan to properly classify claims and interests

pursuant to the mandates of Section 1122(a). This section provides that "a plan

may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a). Two rules regarding classification of claims have been derived from the language of this section: "[d]issimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason." *In re Quigley Co., Inc.,* 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007) (quoting *In re Chateaugay Corp.*, 89 F.3d 942, 949 (2d Cir. 1996)). The plan proponent is not required to place all substantially similar claims in the same class; instead it is only required to ensure that all claims within a particular class share the same rights to the debtor's assets. *Drexel Burnham*, 138 B.R. at 757.

The classification scheme outlined in the Plan complies with Section 1122(a). The Plan does not place claims with different rights to the Debtors' assets in the same class. Instead, the Plan appropriately places Secured Claims, Priority Non-Tax Claims and Equity Interests in MLC in separate classes, because these claims all have different rights to the Debtors' assets and could not be properly classified together. Separation of unsecured claims into three classes, Class 3 General Unsecured Claims, Class 4 Property Environmental Claims, and Class 5 Asbestos Personal Injury Claims is also appropriate because each of these distinct groups consists of claims that share similar attributes. *Drexel Burnham*, 138 B.R. at 757 (noting that the Bankruptcy Code "does not require that similar classes be grouped together, but merely that any groups be homogenous or share some attributes"); *see also In re Armstrong World Indus., Inc.*, 348 B.R. 136, 159 (D. Del. 2006) ("A

classification structure satisfies section 1122 of the Bankruptcy Code when a reasonable basis exists for the structure, and the claims and interests within each particular class are substantially similar.").

The placement of all unsecured claims, other than Asbestos Personal Injury Claims and Property Environmental Claims, into a single class is appropriate under the standards of Section 1122(a).  All claims in Class 3 General Unsecured Claims are unsecured claims that share the same right and priority to the Debtor's assets. Therefore, these claims have been appropriately classified together.

Placing all Asbestos Personal Injury Claims in the same class is also appropriate because these claims are substantially similar to each other and will be channeled to the Asbestos Trust under the Plan.  *Armstrong*, 348 B.R. at 159-60.

Finally, the separate classification of Property Environmental Claims is appropriate because this class consists of substantially similar claims and the Debtors have proposed to treat these claims differently than the General Unsecured Claims.  Under the Plan, on the Effective Date, all Property Environmental Claims shall be satisfied and treated in accordance with the terms of the Environmental Response Trust Agreement, the Environmental Response Trust Consent Decree and Settlement Agreement, and the Priority Order Sites Consent Decrees and Settlement Agreements (Plan, Article 4.4).

2.    *The Plan includes the information required by Section 1123(a).*

To comply with the applicable provisions of the Bankruptcy Code, a plan also

must include the specific information listed in Section 1123(a).  The Debtors' Plan

includes all of the mandatory information required by Section 1123(a).

a.    The Plan appropriately designates classes of claims and
interests as required by Section 1123(a)(1).

Section 1123(a)(1) requires a plan to separate claims and interests into

classes and to identify those classes in the plan.[5]  11 U.S.C. § 1123(a)(1).  Article 3

of the Plan identifies each of the six classes of claims against and interests in the

Debtors as follows:

> Class 1 – Secured Claims;
> Class 2 – Priority Non-Tax Claims;
> Class 3 – General Unsecured Claims;
> Class 4 – Property Environmental Claims;
> Class 5 – Asbestos Personal Injury Claims; and
> Class 6 – Equity Interests in MLC.

(Plan, Article 3).

b.    The Plan appropriately identifies those claims and interests that
are not impaired by the Plan as required by Section 1123(a)(2).

Under Section 1123(a)(2), a Plan must also identify any classes of claims or

interests that are not impaired under the Plan.  11 U.S.C. § 1123(a)(2).  Article 3 of

the Plan appropriately identifies the three classes of claims that are unimpaired

---

[5] However, a plan proponent is not required to classify administrative claims,
involuntary gap claims, or priority tax claims in the plan.  11 U.S.C. § 1123(a)(1).

under the Plan: Class 1 Secured Claims, Class 2 Priority Non-Tax Claims, and

Class 4 Property Environmental Claims (Plan, Article 3).

    c.  The Plan appropriately describes the proposed treatment for all
impaired classes of claims and interests as required by Section
1123(a)(3).

In order for a claimant or interest holder to know how its impaired claim will

be affected by the plan, Section 1123(a)(3) requires the debtor to specify the

treatment that each impaired class of claims will receive.  11 U.S.C. § 1123(a)(3).  A

class of claims or interests is impaired under a plan, if the plan alters the legal,

equitable or contractual rights of the claim or interest holder.  11 U.S.C. § 1124.

Under the Plan, there are three impaired classes of claims or interests:  Class 3

General Unsecured Claims, Class 5 Asbestos Personal Injury Claims, and Class 6

Equity Interests in MLC (Plan, Articles 3, 4.3, 4.5, and 4.6).

Article IV of the Plan explains the treatment that each of these impaired

classes will receive.  Holders of Class 3 Allowed General Unsecured Claims shall

receive from the GUC Trust their Pro Rata Share of (i) the New GM Securities or

the proceeds thereof, if any, and (ii) the GUC Trust Units in accordance with the

GUC Trust and the GUC Trust Agreement (Plan, Article 4.3(a)).  To the extent it is

determined that the holders of Allowed General Unsecured Claims are entitled to

any proceeds of the Term Loan Avoidance Action, either by (i) mutual agreement

between the U.S. Treasury and the Creditors' Committee or (ii) Final Order, (A) if

any proceeds of the Term Loan Avoidance Action are received prior to the Avoidance

Action Trust Transfer Date, then holders of Allowed General Unsecured Claims

shall receive from the Debtors their Pro Rata Share of such proceeds, net of any
expenses incurred by the Debtors, and (B) as soon as practicable after the
Avoidance Action Trust Transfer Date, holders of Allowed General Unsecured
Claims shall receive from the Avoidance Action Trust their Pro Rata Share of any
proceeds of the Term Loan Avoidance Action, to the extent not already distributed,
in accordance with the Avoidance Action Trust Agreement (Plan, Article 4.3(b)
and (c)).

Class 5 Asbestos Personal Injury Claims shall be channeled to the Asbestos
Trust and shall be satisfied in accordance with the terms of the
Asbestos Trust Distribution Procedures and the Asbestos Trust Agreement,
provided that, once Allowed, the Asbestos Trust Claim shall be entitled to the same
distributions from the GUC Trust and the Avoidance Action Trust, as applicable, as
an Allowed General Unsecured Claim in Class 3 (Plan, Article 4.5).

Class 6 Equity Interests in MLC shall be cancelled on the Effective Date and
one new share of MLC's common stock shall be issued to a custodian to be
designated by MLC, who will hold such share for the benefit of the holders of such
former Equity Interests consistent with their former economic entitlements (Plan,
Article 4.6).  All Equity Interests of the other Debtors shall be cancelled when such
Debtors are dissolved or merged out of existence in accordance with Section 6.10 of
the Plan (Plan, Article 4.6).  Each holder of an Equity Interest shall neither receive
nor retain any property on account of such Equity Interest; provided, however, that
in the event all Allowed Claims have been satisfied in full, holders of Equity

Interests may receive a pro rata distribution of any remaining assets of the Debtors

(Plan, Article 4.6).

     d.     The Plan appropriately provides the same treatment for
     similarly classified claims as required by Section 1123(a)(4).

In order to ensure that similarly situated claimants receive equal treatment

under the plan, Section 1123(a)(4) requires the plan to provide the same treatment

to all claims or interests that are classified together, unless a holder of a claim or

interest agrees to accept different treatment for its claim.  11 U.S.C. § 1123(a)(4).

Under the Plan, each claim or interest will receive the same treatment that has

been specified for all other claims within the class.

     e.     The Plan appropriately provides adequate means for its
     implementation as required by Section 1123(a)(5).

In order to ensure that the transactions contemplated by the plan can be

carried out, Section 1123(a)(5) requires a plan to provide adequate means for its

implementation.  11 U.S.C. § 1123(a)(5).  Under the Plan, the Debtors seek to avail

themselves of the benefits of a channeling injunction under Section 105 of the

Bankruptcy Code by creating an asbestos personal injury trust to process and pay

Asbestos Personal Injury Claims.  As discussed in more detail in Section III herein,

the Plan enables the Debtors to obtain the benefits of a channeling injunction under

Section 105 of the Bankruptcy Code.  Additionally, other provisions of the Plan

specifically address the means by which the Plan will be implemented.

Article VI of the Plan provides for the substantive consolidation of the

Debtors, and their respective estates, into MLC for voting, confirmation, and

distribution purposes under the Plan (Plan, Article 6.1).  Article VI of the Plan also

provides the framework for the creation and operation of the various trusts to be

established pursuant to the Plan, including the GUC Trust, the Asbestos Trust, the

Environmental Response Trust, and the Avoidance Action Trust.  The provisions of

Article VI are supplemented by the various Plan documents, including the GUC

Trust Agreement, the Asbestos Trust Agreement, the Asbestos Trust Distribution

Procedures, the Environmental Response Trust Agreement, the Environmental

Response Trust Consent Decree and Settlement Agreement, and the Avoidance

Action Trust Agreement.  Article VI also describes the various transactions that will

enable the Debtors to effectuate the Plan's terms, including the transfer of (i) the

GUC Trust Assets to the GUC Trust, (ii) the Asbestos Trust Assets to the Asbestos

Trust, (iii) the Environmental Response Trust Assets to the Environmental

Response Trust, and (iv) the Avoidance Action Trust Assets to the Avoidance Action

Trust.  In addition, Article VI provides for the dissolution of the Debtors after the

completion of the acts required by the Plan, and provides the authorization for the

various corporate actions that are necessary to effectuate the Plan and the

subsequent dissolution of the Debtors.  These provisions, in conjunction with the

various Plan documents, ensure that the Debtors will be able to implement the Plan

successfully.

f.      The Plan complies with Section 1123(a)(6).

Section 1123(a)(6) requires a plan to provide for the inclusion of a provision in the debtor's corporate charter that prohibits the issuance of nonvoting equity securities and to provide for an appropriate distribution of the voting power among classes of securities that possess voting power.  11 U.S.C. § 1123(a)(6).  As the Debtors' Plan is a plan of liquidation that provides for the dissolution of the Debtors after the completion of the acts required by the Plan, the requirement that the plan provide for the inclusion of a provision in the Debtors' corporate charters that prohibits the issuance of nonvoting equity securities does not apply to this case.

With respect to the provision in Section 1123(a)(6) that requires a plan to provide for an appropriate distribution of the voting power among classes of securities that possess voting power, Article 4.6 of the Plan provides that Equity Interests in MLC will be cancelled and one new share of MLC's common stock shall be issued to a custodian to be designated by MLC, who will hold such share for the benefit of the holders of such former Equity Interests consistent with their former economic entitlements (Plan, Article 4.6).  The Plan provides that all Equity Interests of the other Debtors shall be cancelled when such Debtors are dissolved or merged out of existence in accordance with Section 6.10 of the Plan (Plan, Article 4.6).  On or promptly after the Effective Date, but in no event later than December 15, 2011, MLC will file with the Securities and Exchange Commission a Form 15 for the purpose of terminating the registration of any of its publicly-traded securities

26

(Plan, Article 4.6).  All Equity Interests in MLC outstanding after the Effective Date

will be cancelled on the date MLC is dissolved in accordance with Section 6.10 of the

Plan (Plan, Article 4.6).  The rights of a holder of an Equity Interest or former

Equity Interest issued by MLC pursuant to Article 4.6 of the Plan shall be

nontransferable (Plan, Article 4.6).  Based on the foregoing, the Plan complies with

the requirements of Section 1123(a)(6).

> g.    The Plan discloses or sets forth the method for selecting the
> administrators or trustees provided for in the Plan that is
> consistent with the interests of creditors, equity security
> holders, and public policy as required by Section 1123(a)(7).

Section 1123(a)(7) requires a plan to "contain only provisions that are

consistent with the interests of creditors and equity security holders and with public

policy with respect to the manner of selection of any officer, director, or trustee

under the plan."  11 U.S.C. § 1123(a)(7).  The Plan provides that within thirty days

after its completion of the acts required by the Plan, or as soon thereafter as is

practicable, but no later than December 15, 2011, each Debtor shall be deemed

dissolved for all purposes without the necessity for any other or further actions to be

taken by or on behalf of each Debtor (Plan, Article 6.10).  The Debtors' Plan is a

liquidating plan that provides for the creation of four trusts to distribute the

Debtors' assets to creditors – the GUC Trust, the Asbestos Trust, the

Environmental Response Trust, and the Avoidance Action Trust (Plan, Articles 6.2,

6.3, 6.4 and 6.5).  With respect to each of these trusts, the Plan discloses the

administrators or trustees, or the manner of selection of such administrators, who

will govern such trusts for the benefit of the Debtors' creditors.

The Plan provides that the GUC Trust will be governed by the GUC Trust Administrator and the GUC Trust Monitor (Plan, Article 6.2(d)).  Wilmington Trust Company will be the GUC Trust Administrator and FTI Consulting, Inc. will be the GUC Trust Monitor (Plan, Article 6.2(e)).  The Asbestos Trust will be governed by the Asbestos Trust Administrator(s) (Plan, Article 6.3(e)).  Pursuant to the Plan, the Asbestos Trust Administrator(s) will be designated on or before the Effective Date by the Debtors, with the consent of the Asbestos Committee and the Future Claimants' Representative, and such designation shall be confirmed by the Court (Plan, Article 6.3(f)).  The Environmental Response Trust will be governed by the Environmental Response Trust Administrative Trustee according to the terms set forth in the Environmental Response Trust Agreement and the Environmental Response Trust Consent Decree and Settlement Agreement (Plan, Article 6.4(d)).  Finally, the Avoidance Action Trust will be governed by the Avoidance Action Trust Administrator and the Avoidance Action Trust Monitor (Plan, Article 6.5(d)).  Wilmington Trust Company will be the Avoidance Action Trust Administrator, and FTI Consulting, Inc. will be the Avoidance Action Trust Monitor (Plan, Article 6.5(e)).

The disclosure of the administrators of the various trusts to be established under the Debtors' Plan or, as the case may be, the manner in which such administrators will be selected, is consistent with the interests of creditors, as well as public policy.  Accordingly, the Plan complies with Section 1123(a)(7).

28

**B.    The Debtors have complied with the Disclosure and Solicitation
Requirements of Sections 1125 and 1126 as required by Section 1129(a)(2).**

Section 1129(a)(2) requires the plan proponent to comply with "the applicable

provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2). This section has been

interpreted to require the plan proponent to comply with the disclosure and

solicitation requirements provided in Sections 1125 and 1126. *Drexel Burnham*,

138 B.R. at 759; *see also In re Texaco Inc.*, 84 B.R. 893, 906-07 (Bankr. S.D.N.Y.

1988), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988). The Debtors have complied

with the applicable provisions of the Bankruptcy Code, including the provisions of

sections 1125 and 1126 of the Bankruptcy Code, regarding disclosure and

solicitation of the Plan.

*1.    The Debtors have complied with Section 1125 of the Bankruptcy Code.*

Section 1125 of the Bankruptcy Code provides in pertinent part that:

(b)    An acceptance or rejection of a plan may not be solicited after
the commencement of the case under [the Bankruptcy Code]
from a holder of a claim or interest with respect to such claim or
interest, unless, at the time of or before such solicitation, there
is transmitted to such holder the plan or a summary of the plan,
and a written disclosure statement approved, after notice and a
hearing, by the court as containing adequate information. . . .

(c)    The same disclosure statement shall be transmitted to each
holder of a claim or interest of a particular class, but there may
be transmitted different disclosure statements, differing in
amount, detail, or kind of information, as between classes.

11 U.S.C. § 1125(b), (c).

After notice and five hearings, the Court approved the Disclosure Statement finding that it contained adequate information within the meaning of Section 1125 of the Bankruptcy Code (*see* Disclosure Statement Order at 2, 4).

Pursuant to the Affidavit of Service filed with the Court on January 14, 2011 [Docket No. 8607] by The Garden City Group, Inc. ("**GCG**"), the Debtors' claims, noticing and solicitation agent, it appears that the correct materials were sent to the appropriate parties on or before the solicitation date of December 28, 2010, as required by the terms of the Disclosure Statement Order.  Holders of Class 3 General Unsecured Claims and the holders of Class 5 Asbestos Personal Injury Claims or the attorneys representing holders of Class 5 Asbestos Personal Injury Claims were mailed a solicitation package including:  (i) the Notice of (I) Approval of Disclosure Statement; (II) Establishment of Record Date; (III) Hearing on Confirmation of the Plan and Procedures for Objecting to Confirmation of the Plan; and (IV) Procedures and Deadline for Voting on the Plan (the "**Confirmation Hearing Notice**"), (ii) the Plan and Disclosure Statement, (iii) the Disclosure Statement Order, and (iv) a Ballot.  In addition, pursuant to the Affidavit of Service, creditors and equity interests that were not entitled to vote to accept or reject the Plan were provided with the Confirmation Hearing Notice and certain non-voting materials approved by the Court pursuant to the Disclosure Statement Order.

In addition, as reflected in the Amended Affidavit of Publication Re Docket No. 8788 filed with the Court on February 16, 2011 [Docket No. 9277] by GCG and as required by the Disclosure Statement Order, the Debtors caused the

Confirmation Hearing Notice to be published in the *The Wall Street Journal* (Global Edition—North America, Europe, and Asia), *The New York Times* (National), *USA Today* (National), *The Globe and Mail* (National), and *The National Post*. Accordingly, the Debtors satisfied the notice and solicitation requirements of Section 1125 of the Bankruptcy Code.

> 2.    *The Plan complies with Section 1126 of the Bankruptcy Code*.

Section 1126 of the Bankruptcy Code specifies the requirements for acceptance of a plan of reorganization.  Under Section 1126 of the Bankruptcy Code, only holders of allowed claims and allowed equity interests in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan. Section 1126 of the Bankruptcy Code provides in pertinent part that

> (a)    The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan. . . .

> (f)    Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

> (g)    Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

11 U.S.C. § 1126(a), (f), (g).

As set forth in the Disclosure Statement, Class 3 General Unsecured Claims and Class 5 Asbestos Personal Injury Claims are the only classes of claims under the Plan that are impaired and entitled to vote to accept or reject the Plan (*see* Disclosure Statement at 134).  Classes 1, 2 and 4 of the Plan are unimpaired.  As a result, pursuant to Section 1126(f) of the Bankruptcy Code, holders of claims in Classes 1, 2 and 4 are conclusively presumed to have accepted the Plan.  Holders of Class 6 Equity Interests in MLC shall neither receive nor retain any property on account of such Equity Interest (*see* Disclosure Statement at 8).  Accordingly, pursuant to Section 1126(g) of the Bankruptcy Code, Class 6 is conclusively deemed to reject the Plan.

With respect to impaired classes of claims entitled to vote to accept or reject a plan, Section 1126(c) of the Bankruptcy Code specifies the requirements for acceptance of a plan by a class of claims:

> (c)     A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

Based upon the foregoing and the evidence that will be presented at the Confirmation Hearing, the Future Claimants' Representative submits that the Debtors have complied with the disclosure and solicitation requirements of the

Bankruptcy Code, and the Plan will satisfy the requirements of Section 1129(a)(2)

of the Bankruptcy Code.

**C.    The Facts and Circumstances of this Case Demonstrate that the Plan was
proposed in Good Faith as Required by Section 1129(a)(3).**

The Plan was proposed in good faith and not by any means forbidden by law

consistent with Bankruptcy Code, Section 1129(a)(3).  *See* 11 U.S.C. § 1129(a)(3)

(requiring that plan be "proposed in good faith and not by any means forbidden by

law").

In determining whether the Plan has been proposed in good faith the court

will consider whether "the plan will fairly achieve a result consistent with the

Bankruptcy Code."  *Texaco*, 84 B.R. at 907 (quoting *In re Madison Hotel Assocs.*,

749 F.2d 410, 425 (7th Cir. 1984)); *see also Drexel Burnham*, 138 B.R. at 759.

Liquidating plans are permissible and allow the debtor to liquidate its property in a

reasonable manner so long as the plan's aim is consistent with the purposes and

objectives of Chapter 11.  *In re Hoosier Hi-Reach, Inc.*, 64 B.R. 34, 38 (Bankr. S.D.

Ind. 1986); *see also, In re Global Water Technologies, Inc.*, 311 B.R. 896, 903

(Bankr. D. Colo. 2004) (recognizing that Chapter 11 liquidating plans are

permissible and may be filed in good faith).  Whether a plan is proposed in good

faith is a question of fact that must be determined in light of the totality of the

circumstances surrounding the bankruptcy filing.  *Pub. Fin. Corp. v. Freeman*, 712

F.2d 219, 221 (5th Cir. 1983).

Here, the Plan is the result of extensive arm's-length negotiations between

the Debtors, the Creditors' Committee, the Asbestos Committee, the Future

Claimants' Representative, and other parties in interest.  It represents a fair,

equitable, and permanent resolution of the Debtors' liabilities—including their

asbestos-related liabilities.  Confirmation of the Plan and the implementation of the

injunction provided in Article 4.5 of the Plan will allow the Debtors to consummate

an orderly liquidation, while providing the best possible return to its creditors,

including Future Claimants.

**D.    All Payments to be made by the Debtors in Connection with the Plan and in this Case are Subject to Court Approval as Required by Section 1129(a)(4).**

Section 1129(a)(4) requires that "[a]ny payment made or to be made …by the

debtor, or by a person issuing securities or acquiring property under the plan, for

services or for costs and expenses in or in connection with the case, or in connection

with the plan and incident to the case" be approved by or subject to the approval of

the court as reasonable.  11 U.S.C. § 1129(a)(4).  This section has been interpreted

to require that all payments of professional fees and expenses made in connection

with the case from the estate's assets be subject to the review and approval of the

court.  *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2003 WL 23861928, *54 (Bankr.

S.D.N.Y. Oct. 31, 2003) (citing *Drexel Burnham*, 138 B.R. at 760; *In re Johns-*

*Manville Corp.*, 68 B.R. 618, 632 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407

(S.D.N.Y. 1987), *aff'd*, 843 F.2d 636 (2d Cir. 1988)).

Here, all fees and expenses incurred by the Debtors and their professionals,

the Future Claimants' Representative and his professionals, the Creditors'

Committee and its professionals, the Asbestos Committee and its professionals, and

the Fee Examiner and his professionals, have been or will be fully disclosed and

34

subject to approval by the Court in accordance with the payment procedures established by this Court.[6]  In addition, the Plan requires all entities seeking compensation from the estate under either Section 330 or Section 503 of the Bankruptcy Code to file final fee applications with the Court (Plan, Article 2.2). Furthermore, the Plan provides that the Court will retain jurisdiction to hear and determine all applications under section 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date (Plan, Article 11.1(h)).  Thus, all payments to be made by the Debtors' bankruptcy estates for costs and services will be disclosed and submitted to the Court for approval.

## E. The Debtors Will Dissolve Within Thirty Days After Consummation of the Plan, and Will Have No Management to Disclose Under Section 1129(a)(5).

Section 1129(a)(5) requires the proponent of the plan to disclose certain information with respect to the debtor's post-confirmation management.  Section 1129(a)(5)(A)(i) requires the plan proponent to disclose "the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor...."  11 U.S.C. § 1129(a)(5)(A)(i).  Section 1129(a)(5)(A)(ii) requires the Court to find that such individual's service is consistent with the interests of creditors and equity security holders and is consistent with public policy.  11 U.S.C. § 1129(a)(5)(A)(ii).  Finally, the plan proponent is also required to disclose the identity of and proposed compensation for

---

[6] *See* Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 3711].

any insider that is to be employed or retained by the reorganized debtor.  11 U.S.C.

§ 1129(a)(5)(B).

Under the Plan, the Debtors' post-confirmation activities will be limited to

consummating the Plan and then dissolving the entities.  The Plan provides that

each Debtor shall be dissolved within 30 days after completion of all acts required

under the Plan, but in no event later than December 15, 2011 (Disclosure State at

95).  Thus, all post-confirmation acts will be effectuated pursuant to the confirmed

plan and under the purview of the Court, and Section 1129(a)(5) should be satisfied.

**F.      Section 1129(a)(6)'s Requirement that any Rate Changes Proposed in the
         Plan be Approved by the Applicable Governmental Regulatory Commission
         Does not Apply to this Case.**

In the event that a debtor's plan proposes to change any rates that are

subject to regulation by a governmental regulatory commission, Section 1129(a)(6)

requires that the rate change be approved by the regulatory commission or be

subject to approval by such commission.  11 U.S.C. § 1129(a)(6).  Here, the Debtors

will not continue to operate in the ordinary course after confirmation of the Plan.

The Future Claimants' Representative believes that the Debtors are not subject to

any rate regulations and that Section 1129(a)(6) is not applicable in this case.

**G.      The Plan Provides each Impaired Claimant with a Greater Recovery than the
         Claimant would Receive in a chapter 7 Liquidation as Required by Section
         1129(a)(7).**

Section 1129(a)(7) requires that, with respect to each impaired class of

claims, each creditor within that class must either (a) accept the plan or (b) receive

or retain, as of the plan's effective date, at least as much as it would receive in a

chapter 7 liquidation.  11 U.S.C. § 1129(a)(7).  This test—also known as the "best

interests of creditors test"—applies only to non-accepting claims or interests.

*Drexel Burnham*, 138 B.R. at 761.  Thus, if a class of impaired creditors

unanimously votes to accept the plan, "then the best interests test is automatically

satisfied for all members of that class."  *Id.*

When determining whether a liquidation plan satisfies Section 1129(a)(7),

"[t]he court must properly evaluate the relative costs of administrative expenses in

the Chapter 11 case as compared to those contemplated in a Chapter 7 case to

determine whether a Chapter 11 plan meet confirmation standards."  *Alves Photo*, 6

B.R. at 693.  The court must consider the additional expense of administration

which will be likely to occur as well as the expense which is mandated by passing

all liquidation assets through a chapter 7 trustee.  *Id.* at 694.  Furthermore, the

court must consider the attendant cost of new counsel for the trustee, the disruption

of the present investigation and the resulting delay and expense necessary to

educate replacement fiduciaries, along with the possibility of duplication of

discovery efforts which may have been completed.  *Id.*

Under the Plan, there are three impaired classes:  Class 3 General Unsecured

Claims; Class 5 Asbestos Personal Injury Claims; and Class 6 Equity Interests in

MLC (Plan, Article 3).  Only Class 3 General Unsecured Claims and Class 5

Asbestos Personal Injury Claims are entitled to vote on the Plan.  Under the Plan,

Class 6 Equity Interests in MLC will not receive or retain any property on account

of their equity interests (Plan, Article 4.6), and are deemed to reject the Plan.  11

U.S.C. § 1126(g).

To the extent any of the holders of claims or interests in the impaired classes

do not vote unanimously to approve the Plan, the Plan must provide each holder of

a claim or interest in the dissenting class with a greater recovery than he or she

would receive in a chapter 7 liquidation.  A liquidation under chapter 7 likely would

result in smaller distributions made to creditors than that provided for in the Plan

because (i) a chapter 7 liquidation would entail additional administrative expenses

in the appointment of a chapter 7 trustee and the trustee's professionals, which

would be paid prior to any distributions to General Unsecured Claims and (ii) a

chapter 7 liquidation would generate additional expenses and Claims, some of

which would be entitled to priority over General Unsecured Claims (Disclosure

Statement at 111).  Further, under the distribution scheme in a chapter 7 case,

equity interest holders do not receive distributions from the estate until all

unsecured creditors are paid in full.  11 U.S.C. § 726.  This means that, in a chapter

7 liquidation, holders of Equity Interests in MLC would not receive any distribution

on account of their interests unless all General Unsecured Claims and Asbestos

Personal Injury Claims are paid in full.  Thus, the holders of Equity Interests in

MLC are receiving as much under the Plan as they would receive in a chapter 7

liquidation.

Where, as here, a plan of liquidation would effect an orderly liquidation

without the attendant costs and delay of conversion, the best interest of creditors

38

test provided in Section 1129(a)(7) is satisfied. *See In re Lisanti Foods, Inc.*, 329 B.R. 491, 500 (D.N.J. 2005), *Mot. for relief from Judm. denied,* 2006 WL 2927619 (D.N.M. Oct. 11, 2006), *and aff'd,* 241 Fed.Appx. 1 (3d Cir. 2007). Because the Plan will provide holders of claims and interests in the impaired classes with a greater recovery than they would receive under a chapter 7 liquidation, or, with respect to Class 6 Equity Interests in MLC, as much under the Plan as they would receive in a chapter 7 liquidation, the requirements of Section 1129(a)(7) have been met with respect to these classes.[7]

## H.    The Plan Proposes to Pay Administrative Expenses and Priority Claims in Accordance with the Requirements of Section 1129(a)(9).

   *1.    The Plan provides for payment in full of the allowed amount of administrative expense claims consistent with the requirements of Section 1129(a)(9)(A).*

Section 1129(a)(9)(A) requires that a plan provide for the payment in full of the allowed amount of any administrative claims and involuntary gap claims on the effective date of the plan. 11 U.S.C. § 1129(a)(9)(A). Under the Plan, the Debtors will pay each holder of an Allowed Administrative Expense in full in cash on the Effective Date, or as soon thereafter as is reasonably practicable (Plan, Article 2.1). Thus, the Plan complies with the requirements of Section 1129(a)(9)(A).

---

[7] Because Class 6 Equity Interests in MLC is deemed to reject the Plan, the Debtors must rely on Section 1129(b) to confirm the Plan. Accordingly, Section 1129(a)(8) is inapplicable to this case.

2.   *The Plan provides for payment of unsecured priority claims in accordance with the requirements of Section 1129(a)(9)(B).*

Section 1129(a)(9)(B) sets forth the treatment to be provided to certain unsecured priority claims. 11 U.S.C. § 1129(a)(9)(B). More specifically, Section 1129(a)(9)(B) provides that if a class of unsecured non-tax priority claims has accepted the plan, the class may receive deferred cash payments of a value, as of the effective date, equal to the allowed amount of the claim. 11 U.S.C. § 1129(a)(9)(B)(i). With respect to a class of unsecured non-tax priority claims that has not accepted the plan, Section 1129(a)(9)(B)(ii) provides that the claims must be paid in full in cash on the effective date. 11 U.S.C. § 1129(a)(9)(B)(ii).

Article 4.2 of the Plan provides that Allowed Priority Non-Tax Claims shall receive an amount in Cash equal to the Allowed amount of such Claim on the Effective Date, or as soon thereafter as is reasonably practicable (Plan, Article 4.2). Thus, the Plan complies with Section 1129(a)(9)(B).

3.   *The Plan provides for the payment of priority tax claims in accordance with the requirements of Section 1129(a)(9)(C).*

Section 1129(a)(9)(C) provides that unsecured priority tax claims may receive deferred cash payments over a period not to exceed five (5) years from the commencement of the case, in an amount equal to the value of the claim as of the effective date. 11 U.S.C. § 1129(a)(9)(C).

The Plan provides that Allowed Priority Tax Claims shall be paid an amount in Cash equal to the Allowed amount of such Claim on the Effective Date, or as soon

thereafter as is reasonably practicable.  Thus, the Plan complies with the

requirements of Section 1129(a)(9)(C).

## I.    The Plan has been accepted by at least one Class of Impaired Claims as Required by Section 1129(a)(10).

Section 1129(a)(10) requires at least one class of impaired creditors to vote to

accept the plan, without including the acceptance of any insiders. 11 U.S.C. §

1129(a)(10).  Holders of Class 3 General Unsecured Claims and Class 5 Asbestos

Personal Injury Claims were the only classes of impaired creditors entitled to vote

on the Plan.  The Future Claimants' Representative anticipates that the evidence to

be presented by the Debtors at the Confirmation Hearing will show that one or both

of these impaired classes voted to accept the Plan, thereby satisfying Section

1129(a)(10).

## J.    The Plan is Feasible as Required by Section 1129(a)(11).

Section 1129(a)(11) provides that for a plan to be feasible, the plan proponent

must show that "[c]onfirmation of the plan is not likely to be followed by the

liquidation, or the need for further financial reorganization, of the debtor or any

successor to the debtor under the plan, *unless such liquidation or reorganization is*

*proposed in the plan.*"  11 U.S.C. § 1129(a)(11) (emphasis added).  Where a plan of

liquidation is involved, "there is less emphasis on future performance," so long as

there is still a showing that the plan is feasible.  *See* 7 COLLIER ON BANKRUPTCY ¶

1129.02[11].  One mechanism for effectuating a liquidating plan is the creation of

one or more liquidating trusts—state law trusts managed by a group of creditors

that succeeds to the debtor's assets and administers the liquidation and distribution

process. *See In re Insilco Techs., Inc.*, 480 F.3d 212, 214 n.1 (3d Cir. 2007).

The Plan provides for this mechanism in the form of the GUC Trust, which is

intended to "administer certain post-Effective Date responsibilities under the Plan,

including, but not limited to, distributing New GM Securities and resolving

outstanding Disputed General Unsecured Claims" and if the Residual Wind-Down

Assets are transferred to the GUC Trust, the GUC Trust shall administer the

resolution of all Disputed Administrative Expenses, Disputed Priority Tax Claims,

Disputed Priority Non-Tax Claims, and Disputed Secured Claims (Plan, Article

6.2(b)).

The Plan also provides for the Asbestos Trust, which shall "(i) direct the

processing, liquidation, and payment of all Asbestos Personal Injury Claims in

accordance with the Plan, the Asbestos Trust Distribution Procedures, and the

Confirmation Order and (ii) preserve, hold, manage, and maximize the assets of the

Asbestos Trust for use in payment and satisfying Asbestos Personal Injury Claims"

(Plan, Article 6.3(b)).

The Plan further provides for the creation of the Environmental Response

Trust, which shall, *inter alia*, "conduct, manage, and/or fund Environmental Actions

with respect to certain of the Environmental Response Trust Properties, including

the migration of hazardous substances emanating from certain of the

Environmental Response Trust Properties" (Plan, Article 6.4(b)).

The Plan also contemplates the creation of the Avoidance Action Trust, which shall liquidate and disburse its assets in accordance with Treasury Regulation section 301.7701-4(d) (Plan, Article 6.5(b)).

Here, the Plan's contemplated creation of four trusts to receive and distribute the assets of the Debtors' estates provides feasible means for the liquidation of the Debtors, and is, therefore, feasible under Section 1129(a)(11). *See Lisanti Foods*, 329 B.R. at 506 ("I find that Article 5 of the plan provides an adequate means for implementation of the plan.  First by substantive consolidation of the debtor estates . . . [s]econdly, by transfer of all of the bankruptcy estate assets including causes of action to a liquidating trust together with appointment of a liquidating trustee and oversight committee . . . I find in this case in general in effect these types of cases and these types of trusts permit conclusion of the Chapter 11 in much the same way as would occur in a Chapter 7 liquidation, but—and I think this is an important point—with the greater participation—creditor participation that's afforded by means of the Oversight committee").

## K.   The Plan Provides for Payment of All Statutory Fees under 28 U.S.C. § 1930 as required by Section 1129(a)(12).

Section 1129(a)(12) provides that a plan cannot be confirmed unless all fees required to be paid under 28 U.S.C. § 1930 have been paid or will be paid on the effective date of the plan.  11 U.S.C. § 1129(a)(12).  Article 12.8 of the Plan, provides that "[o]n the Effective Date, and thereafter as may be required, each of the Debtors, and after the Effective Date, the GUC Trust Administrator, the Asbestos Trust Administrator(s), the Environmental Response Trust Administrative Trustee,

43

and the Avoidance Action Trust Administrator, shall each (i) pay all the respective

fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States

Code" (Plan, Article 12.8). Thus, the Plan complies with Section 1129(a)(12).

**L.    Section 1129(a)(13) is Inapplicable Because the Debtors Have No Residual Retiree Benefit Obligations.**

Section 1129(a)(13) requires the plan to provide for the continuation of retiree

benefits at the level originally provided by the debtor without modification or at a

modified level that has been determined under Section 1114. 11 U.S.C. §

1129(a)(13). In this case, the retiree benefits contemplated by Section 1129(a)(13)

were provided for as part of the 363 Transaction.[8] The Debtors have no residual

retiree benefits obligations. Therefore, the Debtors need not provide for such

obligations under the Plan.

**M.    The Plan does not Discriminate Unfairly and is Fair and Equitable with Respect to Class 6 Equity Interests in MLC as Required by Section 1129(b)(1).**

Where, as here, a class receives nothing under a plan of reorganization, the

class is deemed to have rejected the plan. Because Class 6 Equity Interests in MLC

is deemed to reject the Plan, the Plan must be confirmed under the cram down

provisions of Section 1129(b).

Section 1129(b)(1) of the Bankruptcy Code allows the Court to confirm a plan

of reorganization where a class of claims or interests rejects the plan, as long as the

plan does not discriminate unfairly and is fair and equitable to the non-accepting

---

[8] *See* Sale Order at 27-28 (approving UAW Retiree Settlement Agreement) and 21-22 (approving Amended and Restated Master Sale and Purchase Agreement).

class of claims or interests.  11 U.S.C. § 1129(b)(1).  Because the Plan does not

discriminate unfairly and is fair and equitable with respect to Class 6 Equity

Interests, the Plan can be confirmed under Section 1129(b)(1) of the Bankruptcy

Code.

1.    *The Plan does not discriminate unfairly against Class 6 Equity Interests in MLC.*

The requirement that the plan does not discriminate unfairly is meant to

ensure that a dissenting class will receive value that is relatively equal to the value

given to other similarly situated classes.  *Johns-Manville*, 68 B.R. at 636.  Thus, a

plan will be found to discriminate unfairly where the plan treats similarly situated

classes differently without providing a "reasonable basis for the disparate

treatment."  *Worldcom*, 2003 WL 23861928 at *59.

There is no unfair discrimination in this case because the interests of Class 6

Equity Interests are not similar to any other class of claims or interests.  Because

all of the equity interests in the Debtors are classified together, it is not possible for

the Plan to discriminate against equity.

2.    *The Plan is fair and equitable to Class 6 Equity Interests.*

In order for a Plan to be fair and equitable with respect to a class of interests

the plan must either provide (i) that each interest holder in the class will receive or

retain property of a value that is equal to its fixed liquidation preference, fixed

redemption price, or the value of such interest, or (ii) that any interest that is junior

to the dissenting class of interests will not receive or retain any property on account

of such junior interest.  11 U.S.C. § 1129(b)(2)(C).  Here, Class 6 Equity Interests

will not receive or retain any property under the Plan.  The Plan is nevertheless fair

and equitable with respect to this class because there is no class that is junior to

Class 6 Equity Interests and it is therefore, impossible for a junior class to receive

property under the Plan.

Accordingly, the Plan can be confirmed pursuant to the cram down

requirements of Section 1129(b) of the Bankruptcy Code.

## VI.
## CONCLUSION

For the foregoing reasons, the Future Claimants' Representative respectfully

urges that the Plan be confirmed.

Dated: February 22, 2011          Respectfully submitted,

                                  STUTZMAN, BROMBERG, ESSERMAN &
                                  PLIFKA, A PROFESSIONAL CORPORATION

                                  Sander L. Esserman (Admitted *Pro Hac Vice*)
                                  Robert T. Brousseau (Admitted *Pro Hac Vice*)
                                  Peter C. D'Apice
                                  Jo E. Hartwick (Admitted *Pro Hac Vice*)
                                  2323 Bryan Street, Suite 2200
                                  Dallas, Texas 75201
                                  Telephone:  (214) 969-4900
                                  Facsimile:  (214) 969-4999

                                  Counsel for Dean M. Trafelet in his Capacity as
                                  the Future Claimants' Representative