**Hearing Date:  March 1, 2011 at 9:45 a.m.**

HANGLEY ARONCHICK SEGAL & PUDLIN
By:    Matthew A. Hamermesh (admitted *pro hac vice*)
        Jacqueline R. Dungee (JD6936)
One Logan Square, 27th Floor
Philadelphia, PA 19103
(215) 568-6200

*Attorneys for NCR Corporation*

**UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| In re: | : | Chapter 11 |
|---|---|---|
|  | : |  |
| **MOTORS LIQUIDATION COMPANY *et al*.,** | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : | Case No. 09-50026 (REG) |

**RESPONSE OF NCR CORPORATON IN OPPOSITION TO
DEBTORS' 208TH OMNIBUS OBJECTION TO CLAIMS
(CONTINGENT CO-LIABILITY CLAIMS)**

      NCR Corporation ("NCR") hereby responds to the Debtors' 208th Omnibus Objection to Claims (Contingent Co-Liability Claims) (the "208th Objection") and respectfully requests that this Court enter an appropriate order denying the 208th Objection as to NCR. In support thereof, NCR states as follows:

**BACKGROUND**

      1.      On June 1, 2009, Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors (collectively, "MLC" or the "Debtors") filed voluntary petitions under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 et seq.

**NCR's Claims**

      2.      NCR and MLC have each previously been identified as potentially responsible parties ("PRPs" ), along with numerous other parties, under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") and similar federal and state

laws at several sites in, *inter alia*, Ohio and Kentucky. At each of these sites, to the extent MLC has failed or in the future fails to comply with its obligations to undertake or contribute financially to cleanup efforts or government cost reimbursement, or to pay natural resource damages, MLC is or will become liable to NCR for cost recovery and contribution under statutory and/or common law.

3. NCR filed four proofs of claim concerning these liabilities, three of which (described in further detail below) are the subject of the 208th Objection.

4. **Valleycrest Claim:** On or about November 25, 2009, NCR filed Proof of Claim #59913 (the "Valleycrest Claim," a copy of which is attached hereto as Exhibit A). The Valleycrest Claim arises out of the fact that both NCR and MLC are alleged to have shipped wastes, including hazardous substances, to a National Priorities List site named the North Sanitary Landfill, also known as the Valleycrest landfill, in Dayton, Ohio ("Valleycrest"). At least fifteen years ago, federal and state authorities asserted that NCR and MLC, along with others, are PRPs for the cleanup of Valleycrest. Since that time, both NCR and MLC have participated in and contributed financially to the investigation, removal and remediation of hazardous substances at Valleycrest.

5. The members of the Valleycrest Landfill Site Group ("VLSG") are among the PRPs at Valleycrest. The members of VLSG at the time, including MLC, executed and agreed to the terms of the Director's Final Findings and Order ("FFOs") with the Ohio Environmental Protection Agency ("OEPA") to perform a Remedial Investigation/Feasability Study ("RI/FS") at Valleycrest. Certain members of the VLSG, also including MLC, also entered into an Administrative Order on Consent ("AOC") with U.S. EPA pursuant to which VLSG has incurred costs. The costs associated with these agreements include, but are not limited to, investigative

costs, removal costs, administrative costs, U.S. EPA past and future costs, and OEPA past and future costs.

6. In the Valleycrest Claim, NCR asserted individual claims under Section 107 and 113 of CERCLA against MLC, which was formerly a member of VLSG. NCR's claim includes contribution and cost recovery claims against MLC.

7. Specifically, the Valleycrest Claim included a claim for $29,738,036.25, representing MLC's share of investigation, removal, remediation, response, OEPA, U.S. EPA and other governmental administrative and oversight costs and any other costs relating to Valleycrest, as determined pursuant to the formula set forth in the Judgment, Order and Decree entered on November 21, 2007, in *Cargill, Inc. v. ABCO Construction*, Case No. 3:98-cv-3601 (S.D. Ohio), and a related settlement agreement.

8. Additionally and separately, the Valleycrest Claim includes a claim stated therein in the amount of $1,942,642.26 (the "Total Overage"), owed exclusively to NCR pursuant to a judgment and settlement agreement in which MLC agreed to repay NCR certain amounts that NCR previously paid in excess of its agreed share of costs relating to Valleycrest. The Total Overage is net of previous payments of MLC thereon and includes interest.[1]

---

[1] In fact, MLC holds the Total Overage in trust for NCR. On January 19, 2011, NCR commenced an adversary proceeding against MLC by filing a Complaint (the "Complaint") in MLC's bankruptcy cases, which was docketed as Adversary Proceeding No. 11-09400-reg. In the Complaint, NCR seeks an order directing that the Total Overage may not be distributed to Motors' creditors as part of the bankruptcy plan and must be turned over to NCR. In addition, NCR filed an Administrative Proof of Claim for the Total Overage on or about February 14, 2011.

NCR asserted the Total Overage as part of the Valleycrest Claim only as a protective matter and only to the extent the claims set forth in the Complaint and the Administrative Proof of Claim are denied. NCR filed the Valleycrest Claim and is filing this Response with full reservation of, and without prejudice to, NCR's rights, including, without limitation, the right to assert that NCR has an ownership interest in the Total Overage, that MLC holds the Total

(continued...)

9. In the Valleycrest Claim, NCR also asserted claims for $422,008., MLC's agreed share of the cost of fulfilling VLSG's obligations under the FFOs, and $102,804.57, MLC's share of the cost of work required under the AOC.

10. **Cardington Road Claim:** On or about November 25, 2009, NCR filed Proof of Claim #59911 (the "Cardington Road Claim," a copy of which is attached hereto as Exhibit B). The Cardington Road Claim arises out of the fact that both NCR and MLC are alleged to have shipped wastes, including hazardous substances, to a National Priorities List site named the Sanitary Landfill Company (IWD) Superfund Site, also known as the Cardington Road Landfill, in Moraine, Ohio ("Cardington Road"). Federal and/or state environmental authorities asserted that NCR and MLC, along with others, are PRPs for the cleanup of Cardington Road. Since that time, both NCR and MLC have participated in and contributed financially to the investigation, removal and remediation of hazardous substances at Cardington Road.

11. The members of the Cardington Road Site Group ("CRSG") are among the PRPs at Cardington Road. The members of CRSG at the time, including MLC, entered into a consent decree ("Consent Decree") with the United States for performance of Remedial Action and payment of response costs with respect to Cardington Road. The CRSG completed the Remedial Action at Cardington Road in approximately 1999 and has been performing long term operation and maintenance (O&M) since then.

---

(continued...)

Overage not in its own right but rather as an express or constructive trustee, or that NCR is entitled to administrative expense treatment pursuant to Sections 503(b) and 507(a)(2) of the Bankruptcy Code, 11 U.S.C. §§ 503(b) & 507(a)(2), with respect to the Total Overage.

4

12. NCR is asserting its claims under Sections 107 and 113 of CERCLA against MLC, which is a member of CRSG. NCR's claims include contribution claims and cost recovery against MLC. NCR is also asserting its claims under the "Site Participation Agreement" entered into in 1996 by the members of CRSG, including NCR and MLC. The Site Participation Agreement obligates MLC to perform the remedy and pay its share of response costs at Cardington Road, including O&M costs.

13. MLC's proportionate share of all claims is no less than $ 1,506,403.92, related to O&M, U.S. EPA and other governmental administrative and oversight costs, fulfillment of the CRSG's obligations under the Consent Decree, and any other costs relating to Cardington Road.

14. In addition, because NCR paid costs at Cardington Road in excess of its share at the beginning of the remediation, NCR is due an additional $127,965.00 that MLC is obligated to pay on NCR's behalf. This calculation is based on an agreement that MLC would pay NCR's share until Site costs reached $13.9 million. Site costs so far are approximately $12.4 million, so MLC's obligation to pay NCR's share on the remaining $1.5 million is $127,965.00.

15. **South Dayton Claim:** On or about November 25, 2009, NCR filed Proof of Claim #59910 (the "South Dayton Claim," a copy of which is attached hereto as Exhibit C). The South Dayton Claim arises out of the fact that both NCR and MLC are alleged to have shipped wastes, including hazardous substances, to a National Priorities List site named the South Dayton Dump and Landfill, located in Moraine, Ohio ("South Dayton"). Federal and/or state environmental authorities asserted that NCR and MLC, along with others, are PRPs for the cleanup of South Dayton. Since that time, both NCR and MLC have participated in and contributed financially to the investigation, removal and remediation of hazardous substances at South Dayton.

16. NCR is asserting its claims under Sections 107 and 113 of CERCLA against MLC. NCR's claims include contribution claims and cost recovery against MLC. It is estimated that the costs associated with South Dayton could exceed $3.3 million.

### The 208th Objection

17. MLC and its affiliates filed the 208th Objection on January 28, 2011. In the 208th Objection, MLC seeks disallowance of various claims, including NCR's Valleycrest Claim, Cardington Road Claim and South Dayton Claim.

18. Specifically, MLC asserts that these claims are contingent co-liability claims that should be disallowed in their entirety pursuant to Section 502(e)(1)(B) of the Bankruptcy Code, 11 U.S.C. § 502(e)(1)(B).

### RESPONSE IN OPPOSITION TO 208TH OBJECTION

19. For the following reasons, the 208th Objection should be denied as to NCR.

### NCR's Claims For Previously Paid Costs Should Be Allowed

20. As this Court has previously noted, Section 502(e)(1)(B) does not apply "where remediation costs were already paid by the claimant." *In re Chemtura Corp.*, No. 09-11233, 2011 WL 109081, at *1 (Bankr. S.D.N.Y. Jan. 11, 2011); *see also id.* at *14 ("*past* response costs previously paid are non-contingent" (emphasis in original)); *In re Lyondell Chemical Co.*, -- B.R. --, 2011 WL 11413, at *1, *12 (Bankr. S.D.N.Y. Jan. 4, 2011).

21. A significant portion of, *inter alia*, NCR's Valleycrest Claim and Cardington Road Claim consist of remediation costs that NCR has already paid. Specifically, at least the Total Overage and $127,965.00 of the Cardington Road Claim represent remediation costs that NCR has already paid.

22. Plainly, the Valleycrest Claim and Cardington Road Claim cannot be disallowed in full pursuant to Section 502(e)(1)(B).

6

23. Nonetheless, the Debtors seek precisely that relief in the 208th Objection: "Accordingly, the Debtors respectfully submit that the Contribution Claims should be disallowed and expunged." 208th Objection ¶ 25, at 15. Similarly, in their proposed order, MLC asks this Court to enter an Order directing "that, pursuant to section 502(b) of the Bankruptcy Code, the claims listed on Exhibit 'A' (the 'Order Exhibit') annexed hereto under the heading '*Claims to be Disallowed and Expunge*'" are disallowed and expunged from the claims registry . . . ." 208th Objection proposed order at 2.

24. In other words, The 208th Objection seeks relief that is not proper under Section 502(e)(1)(B) and should be denied.

## NCR Incorporates Other Responses to 208th Objection

25. NCR adopts and incorporates by reference all other applicable responses to the 208th Objection asserted by any other party, including, without limitation, the Response of Valleycrest Landfill Site Group to Debtors' 208th Omnibus Objection to Claims.

WHEREFORE, NCR Corporation respectfully requests that this Court enter an order denying the 208th Objection as to NCR.

    Respectfully submitted,

    HANGLEY ARONCHICK SEGAL & PUDLIN, P.C.

Dated: February 22, 2011    By: /s/ Matthew A. Hamermesh
    Matthew A. Hamermesh
    Jacqueline R. Dungee
    One Logan Square, 27th Floor
    Philadelphia, PA 19103
    Telephone: (215) 568-6200
    Telecopy: (215) 568-0300

Attorneys for NCR Corporation