Jeffrey Kurtzman, Esquire (7689)
KLEHR | HARRISON | HARVEY | BRANZBURG, LLP
1835 Market Street, Suite 1400
Philadelphia, PA  19103
Telephone:  215-569-4493
Facsimile:  215-568-6603

Attorneys for Modcomp, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.* | Case No. 09-50026 (REG) |
| | (Jointly Administered) |
| Debtors. | |

**RESPONSE OF MODCOMP, INC. TO DEBTORS'**
**160TH OMNIBUS OBJECTION TO CLAIMS**

TO:   **THE HONORABLE ROBERT E. GERBER,**
       **UNITED STATES BANKRUPTCY JUDGE**

The response of Modcomp, Inc. ("Modcomp" or the "Claimant"), by and through its undersigned attorneys, to the 160th Omnibus Objection to Claims ("Claims Objection") filed by Motors Liquidation Company ("MLC") and its affiliated debtors, as debtors-in-possession (collectively with "MLC", the "Debtors"), respectfully represents as follows:

## BACKGROUND

1.     On June 1, 2009 (the "Petition Date"), certain of the Debtors, including MLC, filed voluntary petitions for reorganization with this Court pursuant to Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

2. On July 5, 2009, this Court entered an order approving MLC's sale of certain of its assets to an entity now known as General Motors, LLC ("New GM").

3. Modcomp is engaged in the business of providing engineering support and computer services to customers. In 2008, Modcomp and the Debtors entered into a Hardware Maintenance Agreement (the "Modcomp Agreement") pursuant to which Modcomp agreed to provide certain engineering services for a six month period commencing on January 1, 2009, and concluding on June 30, 2009 (the "Term").

4. Pursuant to the Modcomp Agreement, the Debtors agreed to pay the sum of $15,083 per month during the Term. A copy of the Modcomp Agreement is annexed hereto and made a part hereof as Exhibit "A".

5. On September 16, 2009, this Court entered an order establishing November 30, 2009 as the deadline for the filing of proofs of claim against the Debtors. Modcomp timely filed claim no. 1087 in the amount of $75,415.00 (the "Modcomp Claim"), reflecting amounts due and owing by the Debtors under the Modcomp Agreement.

6. On or about January 26, 2011, the Debtors filed the Claims Objection, which seeks to expunge the Modcomp Claim, among other claims.

7. The sole apparent basis for the relief sought in the Claims Objection as it relates to Modcomp is that the Debtors assumed and assigned the Modcomp Agreement to New GM under the terms of a Master Purchase Agreement (as defined in the Claims Objection) and, as a consequence, that New GM assumed all of the Debtors' liabilities under and in connection with the Modcomp Agreement, including the obligation to cure the Modcomp Claim. Claims Objection ¶ 11.

PHIL1 1400310-1

8. For the reasons hereinafter set forth, the relief requested in the Claims Objection should be denied as it relates to the Modcomp Claim.

## RELIEF REQUESTED AND THE REASONS THEREFOR

9. The Claims Objection is predicated on the Debtors' assertion that "[p]ursuant to the Master Purchase Agreement, New GM has assumed all liabilities and obligations related to purchased contracts or assumed executory contracts," Claims Objection at ¶ 11, and that the Modcomp Claim is an assumed liability of New GM.

10. The Debtors are mistaken for two separate reasons. First, this Court's approval of the Master Purchase Agreement and the sale of the Debtors' assets to New GM thereunder did not occur until July 5, 2009. As set forth above, the Modcomp Agreement expired by its terms on June 30, 2009, six days prior to the approval of the sale. In this regard, Modcomp respectfully requests the Court to note that the Term is clearly specified on the face of the Modcomp Agreement and that such contract expired by its terms prior to the sale of the Debtors' assets to New GM.

11. As such, the Debtors had no rights in or under the Modcomp Agreement as of the expiration of the Term on June 30, 2009, and no executory contract existed within the meaning of § 365 of the Bankruptcy Code as of the sale date. For this reason, the Debtors could not have assumed and assigned the Modcomp Agreement since there was no valid, enforceable agreement between the parties for the Debtors to assign.

12. Secondly, and no less critically, despite the Debtors' allegations that the Modcomp Agreement had been assumed and assigned to New GM, New GM takes a contrary position. Annexed hereto and made a part hereof as Exhibit "B" is a letter from New GM to Modcomp disclaiming **any** liability with respect to the Modcomp Claim and

3

denying that the Modcomp Agreement had in fact been assumed and assigned in the context of the sale. In pertinent part, the letter states, "Since the invoices for which you are seeking payment from GM relate to the period prior to the Petition Date and do not constitute claims that were addressed in connection with the assumption by MLC and assignment to GM of executory contracts, these claims must be brought to the attention of MLC."

13. New GM's disclaimer of liability to Modcomp is material to the resolution of the Claims Objection. Since mid-2009, Modcomp has attempted to recover the amount of the Modcomp Claim from New GM based upon the Debtors' assertions that New GM undertook financial responsibility following the asset sale. Employees and representatives of New GM have repeatedly advised Modcomp's counsel that the Modcomp Agreement was not an executory contract which had in fact had been assumed and assigned to New GM or an "assumed liability" within the meaning of the Master Purchase Agreement.

14. This position is borne out on the face of the Modcomp Agreement itself since that instrument expired by its terms prior to the sale, as set forth above.

15. Under Section 365(a) of the Bankruptcy Code, a debtor may assume or reject any executory contract, subject to bankruptcy court approval. For purposes of Section 365(a), an "executory contract" is a contract under which the obligations of both the debtor and the non-debtor party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other. In re Wireless Data, 547 F.3d 484 (2d Cir. 2008); In re Penn Traffic Co., 524 F.3d 373 (2d Cir. 2008). As a result, in order for the Modcomp

Agreement to be "executory" within the meaning of the statute, it had to be enforceable against Modcomp as of the date of the Debtors' purported assumption and assignment of the Modcomp Agreement to New GM.

16. As this Court has previously held, when an executory contract has terminated in accordance with its terms, the bankruptcy court is not authorized to reinstate the contract for purposes of a debtor's assumption or rejection. In re Comp III, Inc., 136 B.R. 636 (Bankr. S.D.N.Y. 1992); In re E.C. Ernst, Inc., 24 B.R. 192 (Bankr. S.D.N.Y. 1982) (holding that contract which is no longer executory cannot be rejected by debtor-in-possession).

17. Where, as here, the contract expired by its terms after the Petition Date, it is not executory and thus not susceptible to assumption or rejection under Section 365. In re Child World, Inc., 147 B.R. 847, 852 (Bankr. S.D.N.Y. 1992), citing, Gloria Manufacturing Corp. v. International Ladies Garment Workers' Union, 734 F.2d 1020 (4th Cir. 1984); In re Government Securities Corp., 101 B.R. 343 (Bankr. S.D. Fla. 1989), affirmed 972 F.2d 328 (11th Cir. 1992); In re Pesce Baking Co., Inc., 43 B.R. 949, 957 (Bankr. N.D. Ohio 1984).

18. The Claims Objection places Modcomp in a position which is both unfair and untenable. On one hand, the Debtors assert that the Modcomp Agreement was assumed and assigned, with financial responsibility for the Modcomp Claim having passed to New GM upon the approval of the sale. On the other hand, New GM disavows any and all liability with respect to the Modcomp Claim, asserting instead that the Modcomp Agreement was not among those executory contracts which were assumed and assigned in connection with the asset sale transaction.

PHIL1 1400310-1

19. To the extent that this Court grants the claims objection as it relates to the Modcomp Claim, Modcomp will effectively be without a remedy or a source of recovery for its claim. Because the Debtors are not contesting the amount or validity of the Modcomp Claim, such claim should be allowed pursuant to Section 502 of the Bankruptcy Code in the absence of an order of this Court determining that the Modcomp Agreement was in fact assumed and assigned to New GM and directing New GM to satisfy such claim in full.

20. In view of the fact that the Modcomp Agreement could not have been assumed and assigned after the expiration of the Term, however, Modcomp respectfully submits that the entry of an order expunging and disallowing the Modcomp Claim would be both inequitable and inappropriate as a matter of law. For the foregoing reasons, the Claims Objection should be denied as it relates to the Modcomp Claim.

## CONCLUSION

For the reasons hereinabove set forth, the Claims Objection should be overruled as it relates to the Modcomp Claim, and the Modcomp Claim should be allowed as a general unsecured claim against the Debtors pursuant to Section 502 of the Bankruptcy Code.

Dated: February 21, 2011

KLEHR | HARRISON | HARVEY | BRANZBURG LLP

By: _____
Jeffrey Kurtzman (JK7689)
1835 Market Street, Suite 1400
Philadelphia, PA 19103
(215) 569-4493

– and –

          Raul Gastesi, Jr., Esquire
          Gastesi & Associates, P.A.
          8105 NW 155th Street
          Miami Lakes, FL  33016

          Attorneys for Modcomp, Inc.