Hearing Date and Time: March 1, 2011 at 9:45 a.m. (ET)
Objection Deadline: February 22, 2011 at 4:00 p.m. (ET)

John N. Hanson
Erica M. Zilioli
BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 789-6000
Facsimile:  (202) 789-6190

*Attorneys for the Marion Bragg Group*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| MOTORS LIQUIDATION COMPANY f/k/a GENERAL MOTORS CORPORATION, *et al.*, | : | 09-50026 (REG) |
| Debtors. | : | (Jointly Administered) |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**RESPONSE OF THE MARION BRAGG GROUP TO
DEBTORS' 209TH OMNIBUS OBJECTION TO CLAIMS**

The Marion Bragg Group ("the Group"), by and through its undersigned attorneys, hereby responds to the 209th Omnibus Objection to Claims [Docket No. 8946] filed by Motors Liquidation Company, *et al.*, ("the Debtors" or "General Motors") on January 28, 2011, pursuant to section 502(e)(1)(B) of Chapter 11 of the U.S. Bankruptcy Code, and requests that this Court overrule the Debtors' Objection as to the Group's claim which, contrary to the Debtors' assertion, is *not* contingent within the meaning of the U.S. Bankruptcy Code.

## BACKGROUND

1.  The Marion Bragg Group is a group of companies that banded together to respond to the United States Environmental Protection Agency (EPA) and the Indiana Department of Environmental Management (IDEM) concerning environmental conditions at a landfill in Grant County, Indiana, known as the Marion Bragg Site ("the Site").  See Affidavit of John N. Hanson ¶ 1, attached as Exhibit A ("Hanson Aff.").

2.  General Motors became a member of the Group on March 28, 1988, when it signed the Marion-Bragg Participation Agreement ("Participation Agreement").  Hanson Aff. ¶ 2, Attach. 1.  By signing the Participation Agreement, General Motors agreed to pay for its share of the Group's costs in responding to EPA and IDEM.

3.  Later in 1988, the Group entered into a Consent Decree with the United States of America, on behalf of EPA, and with IDEM ("Federal Consent Decree"), in which the Group agreed to remediate the Site.  Id. ¶ 3, Attach. 2.  The United States District Court for the Southern District of Indiana entered the Federal Consent Decree on April 24, 1991.  Id.

4.  The Federal Consent Decree requires the Group to finance and perform certain tasks related to the remediation and monitoring of the Site.  Id. ¶ 4, Attach. 2.  Pursuant to a second Consent Decree among the Group members that was entered in the Huntington Circuit Court for the State of Indiana in 1994 ("State Consent Decree"), as well as subsequent adjustments, General Motors' allocated share of the total cost of complying with the Federal Consent Decree is 11.67%.  Id. ¶¶ 5-6, Attach. 3.

5.  On November 25, 2009, the Group filed a Proof of Claim ("Claim") in the above-captioned case in the amount of $131,871 (claim no. 50145), asserting that the Debtors were

liable to the Group for General Motors' share of the costs of complying with the Federal Consent Decree.

6. From November 2009 through January 2011, the Group has incurred costs totaling $102,996.23 to comply with the Federal Consent Decree. Hanson Aff. ¶ 9. The Debtors' share of these costs is $12,019.66. Id. ¶ 10.

7. On January 28, 2011, in a last-ditch effort to reduce its liability before this Court reviews a proposed plan for reorganization, the Debtors filed their 209th Omnibus Objection to Claims by private creditors relating to certain environmental liabilities ("Objection").

## ARGUMENT

8. The Objection should be overruled because the Debtors have failed to demonstrate that the Group's Claim satisfies all three elements required for disallowance under the Bankruptcy Code. Specifically, the Group's Claim is *not* contingent. To the extent the Debtors object to its share of costs already incurred by the Group, which total $12,019.66 from November 2009 to January 2011, the Objection must be overruled. To the extent the Debtors object to future unliquidated costs, the Debtors' liability for such expenditures arises from existing legal duties and does not depend on any future events.

9. Section 502(e)(1) of the Bankruptcy Code provides:

> "[T]he court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that--
>
> …(B) such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution."

11 U.S.C. § 502(e)(1).

10. In order for the Court to disallow a claim under section 502(e)(1)(B), a debtor must prove three elements: (1) the claim is for reimbursement or contribution; (2) the claimant

3

shares liability with the debtor on the claims; and (3) the claim is contingent. See, e.g., In re G-I Holdings, Inc., 308 B.R. 196, 212 (Bankr. D.N.J. 2004) (citations omitted); Sorensen v. Drexel Burnham Lambert Group, 146 B.R. 92, 95 (S.D.N.Y. 1992).

**A.  Past and Future Remediation and Monitoring Costs Are Not Contingent**

11. The Debtors have failed to meet their statutory burden as to the third element because the Group's Claim for costs of complying with the Federal Consent Decree, namely undertaking specific remediation and monitoring activities related to the Site, is *not* contingent.

12. A claim is contingent within the meaning of section 502(e)(1)(B) "if the debtor's legal duty to pay does not come into existence until triggered by the occurrence of a future event." Pearl-Phil GMT LTD. v. Caldor Corp., 266 B.R. 575, 580 (S.D.N.Y. 2001) (quoting Mazzeo v. United States (In re Mazzeo), 131 F.3d 295, 303 (2d Cir. 1997)). The determination of whether a claim is contingent is made at the time of the court's ruling on allowance. In re Drexel Burnham Lambert Group, 148 B.R. 982, 985-86 (Bankr. S.D.N.Y. 1992); In re Alper Holdings USA, Ch. 11 Case No. 07-12148 (BRL), 2008 Bankr. LEXIS 2634, at *17-18 (Bankr. S.D.N.Y. Sept. 10, 2008).

13. The Debtors' legal duty to contribute to remediation and related costs was triggered by *past* events, namely the 1988 and 1994 Consent Decrees to which General Motors was a party by virtue of its membership in the Group. See Hanson Aff. ¶¶ 4-6, Attachs. 2-3. General Motors has been and continues to be liable under those Consent Decrees for its share of the costs of performing the remediation and monitoring activities mandated by the Federal Consent Decree. Accordingly, the Debtors' liability for the Group Claim does not depend on any future events.

4

14. Not only do the Debtors fail to acknowledge their existing legal duties, but also they fail to address entirely the particular circumstances of their relationship with the Group and nature of the Group's Claim for costs arising out of judicially-sanctioned Consent Decrees. Rather, the Debtors offer a single conclusory and unsupported statement that they "are objecting to Contribution Claims for future cleanup costs that may or may not actually be incurred, and then may or may not actually be paid by any of the claimants." (Objection ¶ 24.)

15. At this stage, when the Court is ruling on allowance of claims, the Group's Claim consists of both past and future costs. The Debtors purport to object only to future costs but in fact seek disallowance of the Group's entire Claim. (Id. ¶ 24, Ex. A.) To the extent the Group's Claim consists of past costs, the Debtors' Objection must be overruled as contrary to law because it is well-established that, where a claimant has already incurred costs for which the debtor is liable, the claimant's claim is not contingent and therefore not subject to disallowance under section 501(e)(1)(B). In re Alper Holdings USA, 2008 Bankr. LEXIS 2634, at *19 (allowing claims where "fees and expenses have already been incurred and … are not dependent on some future triggering event or determination of liability"); In re G-I Holdings, Inc., 308 B.R. at 212 ("Here, the funds have been expended and thus the claim to that extent is not contingent.").

16. In the context of environmental liabilities, this interpretation of the Bankruptcy Code supports the policy of encouraging parties to undertake remediation activities early. In re APCO Liquidating Trust, 370 B.R. 625, 636-37 (Bankr. D. Del. 2007) ("The prospect of the potential disallowance of contingent contribution claims under section 502(e)(1)(B) offers a further incentive to undertake the cleanup: if the work is done (or at least underway), the contribution claim is not contingent as to amounts incurred by the contribution claimant.")

5

17. In this case, many of the costs included in the Group's Claim have already been paid. Specifically, the Group incurred costs totaling $102,996.23 from November 2009 through January 2011.[1] Hanson Aff. ¶ 9. The Debtors' share of such costs is $12,019.66. Id. ¶ 10. Such costs are not dependent on any future events and, therefore, are not contingent. The Debtors themselves only object to the allowance of "*future* cleanup costs." (Objection ¶ 24 (emphasis added).) Thus, to the extent the Group's Claim consists of past costs, the Debtors' Objection should be overruled.

18. The remainder of the costs identified in the Group's Claim are for monitoring and related activities required by the Federal Consent Decree. These costs, while unliquidated, are not contingent because the Group's obligation to pay for those activities has accrued pursuant to the Consent Decrees and is not contingent on any future events. See, e.g., In re RNI Wind Down Corp., 369 B.R. 174, 183-84 (Bankr. D. Del. 2007) ("The fact that the exact amount of [the claimant's] claim cannot be determined at this time renders a portion of [the claimant's] claim as unliquidated. It does not, in itself, render the claim contingent."); In re Mazzeo, 131 F.3d at 303 (holding that a debt is not contingent if all of the events giving rise to liability for the debt have occurred). As a signatory to the Consent Decrees, General Motors is likewise obligated to pay its share of the costs.

19. Finally, the Debtors' assertion that the claims identified in the Objection should be disallowed because the costs "were contingent or unliquidated at the time of the claim" is inconsistent with two well-established principles of bankruptcy law. First, unliquidated claims are not necessarily contingent claims; only the latter is disallowable. See In re RNI Wind Down

---

[1] The Group notes that these past costs are conservative because the Debtors stopped paying their share of Group expenses upon filing for bankruptcy in June 2009; additional costs were expended before November 2009 when the Group filed its Proof of Claim.

6

Corp., 369 B.R. at 183-84.  Second, the Court must determine contingency at the time of ruling on disallowance, *i.e.*, upon ruling on the Objection.  See In re Drexel Burnham Lambert Group, 148 B.R. at 985-86.  In this case, a portion of the Group's Claim at this time is based on costs already expended and the remainder is simply unliquidated.

20.     Accordingly, the Objection should be overruled because the Debtors have failed to establish that the Group's Claim is contingent.

**B.     The Debtors' Interpretation of Section 501(e)(1)(B) Would Discourage Remediation**

21.     The Debtors contend that disallowing claims for environmental liabilities would promote environmental protection "by encouraging parties first to perform prompt remedial activities at contaminated sites and then seek reimbursement for their expenses."  (Objection ¶ 9.)  That is precisely what the Group has done in this case:  its members, including the Debtors' predecessor, General Motors, signed a Consent Decree in Federal Court in which they agreed to remediate the Marion Bragg Superfund Site and carry out required monitoring activities thereafter -- all of which has been and is being done.  Accordingly, disallowing the Group's Claim would in fact discourage potentially responsible parties from voluntarily undertaking similar environmental clean-up efforts.

22.     The Group banded together in 1988 in order to remediate the Site.  Since then, the Group has diligently remediated and monitored the Site in compliance with the Federal Consent Decree.  If this Court were to disallow the Group's Claim, private entities would be discouraged from voluntarily undertaking remediation efforts in a similarly organized way, particularly as to comprehensive and expensive remediation efforts, out of fear that one or more of the members could simply avoid paying their share of the costs by filing for bankruptcy.

23. Some of the other claims identified in the Objection may be contingent and entirely speculative. In such instances, the Debtors are correct that disallowing such claims would encourage parties to more promptly address remediation. But that is not the case as to the Group, which has diligently cleaned up and continues to monitor the Site. Disallowing the Group's Claim would undermine environmental protection, not promote it.

**C.    The Group Claim Is Not Duplicative of the EPA or IDEM Claims**

24. The Objection asserts that the Group's Claim is duplicative of claims filed by IDEM. While the two claims may overlap, they are not duplicative. Rather, the majority of the Group's Claim consists of costs for affirmative obligations under the Federal Consent Decree to remediate and monitor the Site.

25. Pursuant to the Federal Consent Decree, IDEM and EPA agreed to perform certain oversight activities at the Group's expense, but the Group is solely responsible for undertaking the clean up and monitoring activities. See Hanson Aff. ¶¶ 4, 7-8, Attachs. 2, 4. From November 2009 to January 2011, the Group paid IDEM and EPA $17,112.29 -- less than seventeen percent of the total costs. Thus, the majority of the Group's Claim consists of costs associated with tasks required for compliance with the Consent Decrees.

26. If this Court were to accept the Debtors' unfounded assertion that the Group's Claim is duplicative of the IDEM claim and disallow the Claim, private parties would be discouraged from voluntarily entering into consent decrees with governmental agencies. Furthermore, governments would have to undertake more of the remediation efforts and then seek reimbursement from potentially responsible parties, at greater cost to the public.

27. To the extent the Debtors seek disallowance of any duplicative claims, the Group requests that this Court delay further consideration of the Objection as to its Claim pending adjudication as to the allowed amount (if any) of the $72,000,000 IDEM claim.

## CONCLUSION

28. The Court should overrule the Debtors' Objection as to the Group's Claim for $131,871 because the Debtors have failed to demonstrate -- and the Claim does not satisfy -- the statutory requirements for disallowance under 11 U.S.C. § 502(e)(1)(B). Specifically, the Claim is not contingent because some of the costs sought by the Group have already been incurred and paid and because none of the costs are dependent on the occurrence of any future event.

Dated: February 18, 2011

Respectfully submitted,

/s/ Erica M. Zilioli

John N. Hanson (*Pro hac vice* motion pending)
Erica M. Zilioli (*Pro hac vice* motion pending)
BEVERIDGE & DIAMOND, P.C.
1350 I Street, N.W., Suite 700
Washington, DC 20005
Telephone: (202) 789-6000
Facsimile: (202) 789-6190
Email: jhanson@bdlaw.com, ezilioli@bdlaw.com

*Attorneys for the Marion Bragg Group*

## CERTIFICATE OF SERVICE

I, Erica M. Zilioli, hereby certify that on February 18, 2011, I served a copy of the foregoing Response of the Marion Bragg Group to Debtors' 209th Omnibus Objection to Claims via Federal Express on the following parties:

Weil, Gotshal & Manges LLP
Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.
767 Fifth Avenue
New York, NY 10153

Motors Liquidation Company
Attn: Thomas Morrow
401 South Old Woodward Avenue, Suite 370
Birmingham, MI 48009

General Motors LLC
Attn: Lawrence S. Buonomo, Esq.
400 Renaissance Center
Detroit, MI 48265

Cadwalader, Wickersham & Taft LLP
Attn: John J. Rapisardi, Esq.
One World Financial Center
New York, NY 10281

U.S. Department of the Treasury
Attn: Joseph Samarias, Esq.
1500 Pennsylvania Avenue NW, Room 2312
Washington, DC 20220

Vedder Price, P.C.
Attn: Michael J. Edelman, Esq., and Michael L. Schein, Esq.
1633 Broadway, 47th Floor
New York, NY 10019

Kramer Levin Naftalis & Frankel LLP
Attn: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.
1177 Avenue of the Americas
New York, NY 10036

Office of the U.S. Trustee for the Southern District of New York
Attn: Tracy Hope Davis, Esq.
33 Whitehall Street, 21st Floor
New York, NY 10004

U.S. Attorney's Office, S.D.N.Y.
Attn: David S. Jones, Esq., and Natalie Kuehler, Esq.
86 Chambers Street, Third Floor
New York, NY 10007

Caplin & Drysdale, Chartered
Attn: Elihu Inselbuch, Esq., and Rita C. Tobin, Esq.
375 Park Avenue, 35th Floor
New York, NY 10152-3500

Caplin & Drysdale, Chartered
Attn: Trevor W. Swett, III, Esq., and Kevin C. Maclay, Esq.
One Thomas Circle, N.W., Suite 1100
Washington, DC 20005

Stutzman, Bromberg, Esserman & Plifka, P.C.
Attn: Sander L. Esserman, Esq., and Robert T. Brousseau, Esq.
2323 Bryan Street, Suite 2200
Dallas, TX 75201

Dated: February 18, 2011                                    /s/ Erica M. Zilioli
                                                            Erica M. Zilioli