Hearing Date and Time: March 1, 2011 at 9:45 a.m. (prevailing Eastern time)
Response Deadline: February 22, 2011 at 4:00 p.m. (prevailing Eastern time)

DAY PITNEY LLP
One International Place
Boston, MA 02110
(617) 345-4600
DANIEL J. CARRAGHER, ESQ. (DC-0328)
ATTORNEYS FOR UNITED TECHNOLOGIES CORPORATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, | Case No.: 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

**RESPONSE OF UNITED TECHNOLOGIES CORPORATION TO**
**DEBTOR'S 208TH OMNIBUS OBJECTION TO CLAIMS**

United Technologies Corporation ("UTC"), by and through its undersigned attorneys, hereby responds to the Debtors' 208th Omnibus Objection to Claims (Contingent Co-Liability Claims) (the "Claim Objection"). In support thereof, UTC respectfully states as follows:

<u>The UTC Claim and Related Claims against the Debtor</u>

1.      For approximately 60 years General Motors' Inland Fisher Guide facility discharged PCBs into Ley Creek, resulting in the entire four mile length of Ley Creek, and its environs, from the IFG facility to Onondaga Lake, being contaminated with PCBs. General Motors has been recognized as the primary, if not sole, contributor of PCBs to Ley Creek by the United States Environmental Protection Agency and the New York State Department of

Environmental Conservation.  See Objection of Onondaga County, New York to the Debtors' Amended Chapter 11 Plan (Doc. no. 9203), at ¶62.

2. UTC timely filed a proof of claim against Debtor Motors Liquidation Company (the "Debtor") on November 27, 2009, designated as Claim 59874 (the "UTC Claim").  The UTC Claim was filed in an unliquidated amount, but included a liquidated demand against it as a potentially responsible party for past costs incurred by the United States in the amount of $12,498,818.63.

3. The UTC Claim seeks payment from the Debtor of an amount on behalf of its subsidiary, Carrier Corporation, for certain environmental liabilities of the Debtor arising under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 9601, et seq. ("CERCLA"), and under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901, et seq. ("RCRA") related to the Onondaga Lake Superfund Site and in particular, for costs associated with or arising from certain demand letters identified in the UTC Claim as the Onondaga Demand Letter, the Salina Demand Letter, the Ley Creek Demand Letter and the Honeywell Demand.  Such demands to UTC relate to past activities by Carrier Corporation and the alleged discharge of contaminants into Sanders Creek, an upstream tributary of the North Branch of Ley Creek.  Accordingly, UTC is potentially liable, along with the Debtor, to Onondaga County, the United States of America *and* to Honeywell International, Inc. ("Honeywell") for environmental investigation, clean-up, remediation, monitoring and administrative costs, all related to the Ley Creek and/or the Onondaga Lake lake bed.  The Debtor and UTC are also alleged to have taken waste to the Town of Salina landfill adjacent to Ley Creek, thus giving rise to potential joint and several liability for landfill remediation costs to the Town of Salina.

4.  Each of the foregoing parties that made a demand on UTC (and on the Debtor) has filed claims in these proceedings that have not been finally allowed or disallowed.[1] Certain of these claims, including Onondaga County Claim 51099 and Town of Salina Claim 47951, include the same liquidated amount of $12,498,818.63 included in the UTC claim that is based on the demand by the United States for past costs incurred by it in connection with Onondaga Lake. However, such claims also include unliquidated claims for future costs.

5.  The unliquidated amounts for which the Debtor (and UTC) may have liability for future costs far exceed the $12.5 million past cost demand by the United States. The United States has not yet selected a remedy for the clean-up of Ley Creek below the Route 11 bridge and, accordingly, has yet to place a value on its future costs. See United States' Statement In Support of Environmental Provisions of Debtors' Plan of Liquidation (Doc. no. 9311) at p. 37 ("The terms, and cost, of the remedy selected for the Lower Ley Creek area of the Onondaga Site … will be … determined by the U.S. EPA or the States pursuant to an administrative process independent of the ERT Settlement Agreement.").

6.  The potential costs related to lower Ley Creek have been estimated at $50 million plus or minus. See Objection of Onondaga County, New York to the Debtors' Amended Chapter 11 Plan (Doc. no. 9203), at ¶62 ("The potential cost based on the currently available data has been preliminarily estimated in the potential range of $50 million, plus or minus."). In addition to those amounts, Honeywell has asserted that the Ley Creek responsible parties should be

---

[1] The United States of America has filed claim 64064 in an unliquidated amount in excess of $2 billion, an unspecified portion of which relates to Ley Creek and Onondaga Lake. Onondaga County has filed, among other claims, claim 51099 related to Ley Creek and Onondaga Lake. The Town of Salina has filed three general unsecured claims, designated as 47951, 47952 and 47953, which relate, in part to Ley Creek and Onondaga Lake and also to the Town of Salina landfill. Honeywell has filed several claims, including claims, designated as 45831, 45832, 46497, 46498 and 46499, aggregating approximately $57.5 million, currently shown as unresolved that, on information and belief, relate to Honeywell's responsibility for environmental remediation of the lake bed of Onondaga Lake, where Honeywell has identified Sediment Management Unit 6 as being the portion of Onondaga Lake for which the parties alleged to be responsible for contamination of Ley Creek should bear full responsibility.

jointly and severally liable to Honeywell for $58-75 million that Honeywell has incurred and expects to incur in connection with Sediment Management Unit 6 in Onondaga Lake.  Finally, the Town of Salina has estimated that the future costs related to the Town of Salina landfill could be $30-35 million.

7. The unresolved environmental claims against the Debtor arising from its activities at the IFG facility, excluding the claims subject to the pending settlement in connection with the Environmental Remediation Trust, are thus likely to be in excess of $150 million.  This amount is separate from the upper Ley Creek claims against the Debtor that are expected to be settled in connection with the ERT Settlement Agreement and for which the Debtor has already agreed to contribute in excess of $33 million.

## UTC's Response to the Claim Objection

8. The Debtors filed the Claim Objection on January 28, 2011.  The Claim Objection identifies the amount of the UTC Claim as $12,498,818.63 and identifies the Surviving Claim Creditor as the United States Environmental Agency (Claim #64064).

9. UTC opposes the Claim Objection on the ground that it is premature for the Court to address the allowance or disallowance of the UTC claim under 11 U.S.C. § 502(e)(1)(B) based on the particular facts of this case where none of the underlying environmental claims against the Debtor giving rise to the UTC Claim has been allowed against the estate.  Those underlying claims clearly include the United States.  However, they also include alleged direct claims asserted by Onondaga County, the Town of Salina and Honeywell.  For example, Honeywell has primary responsibility for completing remedies related to the lake bed, and it is Honeywell and not the EPA that has asserted claims against the Debtor and UTC for allocable shares of those costs.

4

10. UTC recognizes the clear implications of this Court's rulings in <u>In re Chemtura Corp.</u>, 2011 Bankr. LEXIS 88 (Bankr. S.D.N.Y. Jan. 13, 2011) and <u>In re Lyondell Chem. Co.</u>, 2011 Bankr. LEXIS 10 (Bankr. S.D.N.Y. Jan. 4, 2011) on the legal issues under § 502(e)(1)(B). UTC further concedes that its claim against the Debtor is not based on past costs paid by UTC and that the sole basis for its claim against the Debtor is UTC's potential liability for future costs for which the Debtor should be held responsible.

11. Notwithstanding the admittedly contingent nature of its claim under the Court's interpretation of § 502(e)(1)(b) in <u>Chemtura</u> and <u>Lyondell</u>, UTC submits that this is not an appropriate time to address the allowance or disallowance of its claim.

12. As the Court has recognized, the primary purpose of § 502(e)(1)(B) is to avoid redundant recoveries. <u>Chemtura</u>, 2011 Bankr. LEXIS 88, at *54, *54, <u>Lyondell</u>, 2011 Bankr. LEXIS 10, at *45. Here, there is no potential for "double dipping" at this stage of the case because the underlying claims against the Debtor have not been allowed, and disallowance of the UTC claim would not serve the primary purpose of § 502(e)(1)(b).

13. Indeed, disallowance of the UTC Claim as a contingent claim at this stage of the proceedings would run counter to the principle of granting standing to affected parties in bankruptcy proceedings and the rights of parties in interest to intervene where their interests are adversely affected.

14. UTC should have the opportunity to appear and be heard in connection with contested proceedings or approval of compromises with respect to the underlying claims, here the claims of the United States, Honeywell, Onondaga County and the Town of Salina. Disallowing the UTC Claim as a contingent claim at this stage of the proceedings arguably would disenfranchise UTC and deprive it of standing to participating in proceedings related to

5

the underlying claims against the Debtor despite its obvious economic stake as a party liable with the debtor, especially where unsettled general unsecured claims against the Debtor will only yield partial recoveries to the underlying creditors. Preserving the standing of UTC to participate in order to protect its pecuniary interest is matters concerning the underlying claims will not only benefit UTC but also advance the goal of enfranchising creditors and permitting them to raise issues where they have a direct pecuniary interest. See, e.g., Dish Network Corp. v. DBSD N. Am., Inc. (In re DBSD N. Am.), 2010 U.S. App. LEXIS 27007, at *28 (2d Cir. N.Y. Dec. 6, 2010) (granting Sprint standing to appeal on the basis of a claim temporarily allowed for voting purposes and observing that the court's temporary allowance of the claim was enough to allow it to object below, where no one argued that Sprint lacked standing).

15.    Deferring consideration of the Debtor's objection to the UTC Claim is consistent with this court's rulings in Chemtura and Lyondell. In both cases, the underlying claims had been resolved and allowed at the time of the Court's rulings. See Chemtura, 2011 Bankr. LEXIS 88, at *4-*6, noting the allowance of claims by the United States and three states; Lyondell, 2011 Bankr. LEXIS 10, at *4, noting the approval of a settlement with the EPA and ten state environmental agencies. While the Court later observed that the approval of the EPA settlement in Lyondell was not necessary to its ruling, 2011 Bankr. LEXIS 88, at *50 n. 62, that observation was in connection with a request to allow the PRP's claim for all purposes, not whether it was an appropriate time to consider allowance or disallowance in advance of the settlement of the underlying agency claim.

16.    In this case, preserving UTC's right to participate in proceedings related to the claims of the United States is particularly appropriate. The Debtor and the United States have entered into the ERT Settlement Agreement and have chosen to settle some but not all of the Ley

6

Creek claims. In support of the proposed exclusion of the lower Ley Creek claims from the ERT Settlement Agreement, the United States has identified the presence of other viable PRP's (namely UTC and other similarly situated parties) at the excluded sites. See United States' Statement In Support of Environmental Provisions of Debtors' Plan of Liquidation (Doc. no. 9311) at p. 44 ("The non-covered Onondaga sites are not owned by Debtors, Debtors were not issued injunctive cleanup orders at these sites, and Debtors are not the sole viable PRPs identified by U.S. EPA or the States."). Where the United States has already stated that it has assigned a lower priority to its claims on the excluded sites based on the presence of other deep pocket PRPs, parties like UTC should be afforded the opportunity to appear and be heard on those claims to protect their pecuniary interests.

WHEREFORE, UTC respectfully requests that this Court: (i) deny the Claim Objection without prejudice to it being renewed after the claims of the United States, Honeywell, Onondaga County and the Town of Salina related to Ley Creek and Onondaga Lake have been allowed against the estate; and (ii) grant such other or further relief as the Court deems just and proper.

Dated: February 22, 2011
Boston, MA

DAY PITNEY LLP
Attorneys for United Technologies Corporation

By:____/s/ Daniel J. Carragher_____
 DANIEL J. CARRAGHER (DC-0328)
One International Place
Boston, MA 02110
(617) 345-4600
- and -
7 Times Square
 New York, NY 10036-7311
 (212) 297-5800

7