| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | | PROOF OF CLAIM |
|---|---|---|

**AMENDED**

| Name of Debtor (Check Only One): | Case No. | Your Claim is Scheduled As Follows: |
|---|---|---|
| ☒Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) | |
| ☐MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) | |
| ☐MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) | **EXHIBIT B** |
| ☐MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) | |

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see Item # 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property): RIVAL, LLC

Name and address where notices should be sent:

RIVAL, LLC
ATTENTION: MR. WILLIAM DANIELS    Elizabeth Winston
670 AUTOMOTIVE DR
COLORADO SPRINGS, CO 80905-7347

Telephone number:    (719) 632-5591
Email Address:    thanken@phillong.com

XX  ☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: __50161__
*(If known)*

Filed on: __11/25/09__

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

**1. Amount of Claim as of Date Case Filed, June 1, 2009:** $ 3,500,000

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Intentional interference with contract
(See instruction #2 on reverse side.)    (Dealership lease)

**3. Last four digits of any number by which creditor identifies debtor:** _____

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe:

Value of Property: $_____    Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any: $_____

Basis for perfection: _____

Amount of Secured Claim: $_____    Amount Unsecured: $_____

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.    (See attached Addendum and documents)

If the documents are not available, please explain in an attachment.

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2)).

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

Date: 2/14/2011

**Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

James T. Flynn, attorney and agent

111 South Tejon, #202
Colorado Springs, CO 80903
(719) 578-8444

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
Modified B10 (GCG) (12/08)

Addendum to Amended Proof of Claim—Rival, LLC (Claim No. 50161)

Rival, LLC is a single purpose Colorado limited liability company. Its sole member is Elizabeth Winston Daniels, who is also the sole shareholder of Daniels Motors, Inc.  The only activity of Rival, LLC is ownership and rental of the land and building out of which Daniels Motors, Inc. operated it Chevrolet dealership business. The building owned by Rival, LLC was constructed in 1999 in compliance with design requirements imposed by General Motors.  It has no utility other than as an automobile dealership facility.

Since the construction of the building and until Daniels Motors, Inc. was put out of business by the actions of General Motors, Daniels Motors, Inc. rented Rival, LLC's property (through Argonaut Holdings, Inc. under a site control arrangement) on a triple net basis.  While it was still a viable business, Daniels Motors, Inc. paid rent in an amount sufficient to cover the mortgage payments owing by Rival, LLC, to its mortgage lender, GMAC, and to generate an attractive rate of return for Rival, LLC.

In May, 2009 General Motors interfered with the contractual relationship between Rival, LLC and its sole tenant, Daniels Motors, Inc., by terminating the right of Daniels Motors, Inc. to continue operations as a Chevrolet dealership under a Sales and Service Agreement.  This breach of contract by General Motors resulted in Daniels Motors, Inc. experiencing large operating losses that exhausted Daniels Motors, Inc.'s working capital and impaired its ability to pay the rent that Rival, LLC depended on to pay its mortgage. The consequence of this situation was a material decline in the creditworthiness of Rival, LLC, which in turn caused Rival, LLC's mortgage lender to impose higher interest rates and to charge large short term loan renewal fees.  This circumstance put Rival, LLC at imminent risk of losing its property by foreclosure.

Foreclosure was avoided only by a forced sale of the assets of Daniels Motors, Inc., at book value, to an affiliate of the Phil Long dealerships in July of 2010.  As part of this transaction, Phil Long facilitated a short term refinance of the mortgage against Rival, LLC's property and the purchaser of the assets of Daniels Motors, Inc.-- Daniels Long Automotive, LLC--entered into a lease of Rival, LLC's property.

Because Rival, LLC no longer has long term financing on its property and no longer has a long term lease with a stable and proven tenant, the value of its property has declined precipitously.  This is a direct result of General Motors' breach of its contract with Daniels Motors, Inc., with the known and foreseeable consequence that this breach of contract would interfere with the contract between Rival, LLC, as landlord, and Daniels Motors, Inc., as tenant.  The decline in value of Rival, LLC's property and the high interest rates and large loan renewal fees charged to Rival, LLC, both a direct result of General Motors' breach of its contract with Daniels Motors, Inc., have resulted in damages to Rival, LLC in the amount of not less than $3,500,000.

Attached hereto is a copy of the lease agreement that is now in place between the Phil Long affiliate that purchased the assets of Daniels Motors, Inc. and Rival. This lease provides for rent only in an amount sufficient to cover mortgage payments and income tax liability of Elizabeth Daniels Winston as the sole member of Rival, LLC. Also attached is a statement from Elizabeth Daniels Winston confirming the damages experienced by Rival, LLC as a consequence of General Motors' interference with the contractual relationship between Rival, LLC and Daniels Motors, Inc.

Statement of Elizabeth Daniels Winston in support of amended proof of claim of Rival, LLC (Claim No. 50161).

I am the sole member of Rival, LLC. I am also the sole shareholder of Daniels Motors, Inc., a Chevrolet dealership business that has been in my family for more than 80 years. Rival, LLC, owns the land and building out of which Daniels Motors, Inc. operated its Chevrolet dealership business from 1999 until the sale of the assets of Daniels Motors, Inc. to an affiliate of the Phil Long dealership organization in July of 2010 for book value.

In May of 2009, General Motors interfered with the contract between Rival, LLC, as landlord, and Daniels Motors, Inc., as tenant, by terminating the right of Daniels Motors, Inc. to continue operations as a Chevrolet dealership under a Sales and Service Agreement. This action on the part of General Motors constituted a breach of contract between it and Daniels Motors, Inc. This breach of contract by General Motors resulted in Daniels Motors, Inc. experiencing large operating losses that exhausted its working capital and impaired its ability to pay rent. Rival, LLC in turn suffered a material decline in its creditworthiness. This caused Rival, LLC's mortgage lender (GMAC) to impose higher interest rates and charge large short term loan renewal fees. Rival, LLC was put at imminent risk of losing its property by foreclosure.

Foreclosure was avoided by the book value sale of the assets of Daniels Motors, Inc., to Phil Long. As part of this transaction, Phil Long facilitated a short term refinance of the GMAC mortgage against Rival, LLC's property and the purchaser of the assets of Daniels Motors, Inc.--Daniels Long Automotive, LLC--entered into a lease of Rival, LLC's property at terms that are much less favorable than the terms that were in effect prior to the May 2009 breach of contract by General Motors.

Because Rival, LLC no longer has long term financing on its property and no longer has a long term lease with a stable and proven tenant, the value of its property has declined precipitously. The decline in value of Rival, LLC's property and the high interest rates and loan renewal fees charged to Rival, LLC by GMAC, all a direct result of General Motors' breach of its contract with Daniels Motors, Inc., has resulted in damages to Rival, LLC in the amount of not less than $3,500,000.

Dated: February 8 , 2011

Elizabeth Daniels Winston

Lease Agreement


THIS LEASE AGREEMENT ('Lease"), dated as of this 1st day of July, 2010 is entered into between Daniels Long Automotive, LLC as Tenant ("Tenant"), and Rival, LLC, as Landlord ("Landlord"). The parties, for adequate consideration hereby receipted for, now mutually covenant and agree as follows:

1. PREMISES. Landlord does hereby lease to Tenant, and Tenant does hereby rent from Landlord, those premises located in Colorado Springs, CO commonly known as 610 and 670 Automotive Drive, Colorado Springs, Colorado 80905 and legally described on Exhibit 1 hereto (the "Premises").

2. TERM.

This Lease shall have a term commencing on the 1st day of July, 2010, and continuing through the 30th day of June, 2015 (the "Expiration Date").

3. RENT. Tenant shall pay to Landlord, without offset, deduction, notice, or demand, rent for the Premises as follows:

(a)    Base Rent. Tenant shall pay to Landlord as base rent ("Base Rent") during the Term an amount sufficient to service the mortgage loan against the Premises and provide funds sufficient to cover any income tax liability passing through to Elizabeth Daniels Winston as the sole member of Landlord. The initial Base Rent shall be $36,000/month. Base Rent will be adjusted in accordance with the Section 3(a) at such time as the amount of Landlord's monthly mortgage payment for principal and interest shall change. In no event will Base Rent exceed $54,000/month.

(b)    Additional Rent. Tenant shall pay as Additional Rent all costs of whatever nature associated with the Premises other than income tax obligations of Landlord. Additional Rent includes, but is not limited to, real property taxes, insurance, maintenance, utilities and repairs.

(c)    Late Charge. Tenant agrees that if any payment or installment of Base Rent hereunder is not paid on or before the tenth day of each month, Tenant shall pay to Landlord a rental delinquency charge of $300.00 per day for every day past due, which sum shall be due and payable upon demand by Landlord. Any Base Rent, Additional Rent or other sums due from Tenant which are more than one month delinquent shall bear interest at the rate of eight percent (8%) per annum from the originally scheduled due date.

(d)    Place to Pay. All Rent will be paid to Landlord at such address as Landlord may from time to time direct.

4. USE

(a)    The Premises are to be used solely for the operation of an automobile dealership and those ancillary uses that are typical for such business operations and for no other purpose without the prior written consent of Landlord, which consent shall not be unreasonably withheld, delayed, or conditioned.

(b)    Tenant shall not commit, or suffer to be committed, any waste or any public or private nuisance upon the Premises.

(c)    Tenant shall not use the Premises or permit anything to be done in or about the Premises which will in any way conflict with any law, statute, ordinance or government rule or regulation now in force or which may hereafter be enacted or promulgated. Tenant shall, at it sole expense, promptly comply with all laws, statutes, ordinances and governmental rules, regulations or requirements now in force or which may hereafter be in force, including, without limitation, the Americans with Disabilities Act, and with the requirements of any board of fire underwriters or other similar body now or hereafter constituted relating to or affecting the conditions, use or occupancy of the Premises, excluding structural changes.

(d)     Tenant shall not conduct any fire, auction, bankruptcy, going-out-of-business, lost-our-lease, or other similar sales on the Premises.

(e)     Tenant shall not intentionally permit any employee or visitor of the Tenant to violate any covenant or obligations of the Tenant hereunder.

5.  PREPARATION AND ACCEPTANCE OF PREMISES

Neither Landlord nor Landlord's agents have made any representations, warranties or promises with respect to the physical condition of the Premises, or any matter or thing affecting or related to the Premises unless otherwise expressly set forth herein.

6.  SECURITY DEPOSIT. Intentionally omitted.

7.  INTENTIONALLY OMITTED

8.  ENVIRONMENTAL MATTERS

(a)     Compliance and Indemnity. Tenant will comply with all federal, state and local laws, ordinances and regulations concerning any hazardous materials or substances as defined in any such laws, ordinances and regulations (collectively "Hazardous Materials"). Tenant hereby indemnifies and holds Landlord harmless from all claims or losses (including, without limitation, reasonable attorney's fees and diminution in value) which may be asserted against or incurred by Landlord as a result of any Hazardous Materials used or located on or about the Premises or the Building as a result of the activities of Tenant, its agents, contractors or invitees, and Landlord hereby indemnifies and holds Tenant harmless from all claims or losses (including, without limitation, reasonable attorney's fees and diminution in fair market value) which may be asserted against or incurred by Tenant as a result of any Hazardous Materials used or located upon the Premises or the Building as a result of the activities of Landlord or any lessee/tenant, or their agents, contractors, or invitees prior to the occupancy of Daniels Long Automotive, LLC.

(b)     Survival of Section. The provisions of this Section shall survive the expiration or any earlier termination of this Lease.

9.  SERVICES

(a)     Services Provided. Landlord will provide no services to Tenant hereunder. Throughout the Term all maintenance, repairs, replacements and/or additions to the Premises and the building located thereon (the "Building") shall be made by Tenant, at Tenant's sole expense. Tenant shall provide and pay for all snow removal and maintenance of any and all parking lot facilities, sidewalks, landscaping, drives, lighting and all other improvements located or to be located on the Premises.

(b)     Utilities. Tenant shall be responsible for all utility services for the Premises and will pay for all costs of such utilities directly to the utility company providing it. Tenant is responsible for satisfying itself that utility service to the Premises will be adequate for its needs.

10.  DAMAGE OR DESTRUCTION

(a)     Insured Casualty. If the Building or Premises containing the same be destroyed or damaged by fire or other casualty to such an extent that they cannot be repaired and restored within one hundred twenty (120) days after such casualty, then Landlord shall have the option to terminate this Lease; otherwise Tenant shall forthwith and with due diligence, repair and restore said Building or Premises to substantially their condition and design immediately prior to such damage or destruction, so long as insurance proceeds are available to fund such repair and/or restoration.

2

(b)    Damage Near End of Term. If the damage or destruction referred to in Section 10(a) above amounts to at least twenty-five (25%) of the Building or Premises and occurs during the last eighteen (18) months of the Term, then Landlord shall have the option, at its sole election, to terminate this Lease effective as of the date of such damage or destruction, and any unearned rents paid in advance shall be refunded. Such election must be made and notice thereof given to Tenant within thirty (30) days from the date of such damage or destruction. Notwithstanding anything to the contrary contained hereof, if this Lease shall not be terminated as provided in this Section 10(b), the Building or Premises shall be repaired and restored as hereinabove provided so long as insurance proceeds are available to fund such repair and/or restoration.

(c)    Mutual Release/No Statutory Termination. Upon any termination of this Lease under any of the provisions of this Article or elsewhere in this Lease, each party shall be released thereby without further obligations to the other party coincident with the surrender of possession of the Premises to Landlord, except for i) items which have theretofore accrued and are then unpaid from one party to the other, ii) rights of indemnification for acts or omissions occurring prior to such termination and surrender, and iii) any other rights or obligations which are expressly stated in this Lease to survive the termination or expiration of this Lease. Tenant hereby waives any statutory rights of termination which may arise by reason of any partial or total destruction of the Premises which Landlord is obligated to restore or may restore under any of the provisions of this Article, and further waives any rights it may have to construe any damage to the Premises as a constructive eviction.

(d)    Notice of Casualty. If all or any part of the Premises is damaged or destroyed by fire or other casualty, Tenant shall promptly notify Landlord in writing of such matter

11.  TENANT MAINTENANCE, REPAIRS AND ALTERATIONS

(a)    Maintenance. Tenant will, at its expense, maintain the Premises, the Building, all landscaping, parking areas, lighting and other improvements located therein in a first-class condition. If Landlord believes Tenant is not properly performing its maintenance obligations, it may give Tenant written notice specifying the maintenance it believes is required, in which case Tenant will have thirty (30) days (or such longer period as may be reasonably required, provided Tenant undertakes reasonable curative measures within thirty (30) days and diligently pursues such measures) to cure the maintenance deficiency involved. If Tenant fails to fully cure the maintenance deficiency within such period, Landlord may thereafter enter the Premises and cure the maintenance deficiency involved. Tenant shall then pay Landlord all its reasonable costs incurred in remedying the maintenance deficiency within thirty (30) days after receiving Landlord's invoice for such costs.

(b)    Alterations. Tenant shall not make any structural alterations, additions or improvements to the Premises, or take any action affecting the exterior walls of the Building which would alter the physical appearance of the Premises when viewed from outside its exterior (except for customary car dealership interior and exterior signage), without the prior written consent of Landlord, which consent will not be unreasonably withheld. Subject to the above conditions, Tenant shall have the right to make non-structural, interior alterations, additions or improvements to the Premises without the consent of the Landlord. Plans and specifications for structural work shall be submitted in writing to, and subject to approval by, Landlord prior to commencement of any such work. Landlord shall have the right to approve Tenant's contractors as well as the general manner and method in which work requiring Landlord's consent is to be performed. Prior to commencement of any work requiring Landlord's consent, Tenant shall provide Landlord with insurance certificates evidencing that all contractors and subcontractors have workmen's compensation insurance and builder's risk insurance in amounts and with coverage satisfactory to Landlord, and will post at a prominent location in the Building and Premises a notice of non-lienability in a form approved by Landlord. Unless otherwise agreed to in writing between Landlord and Tenant, any such improvements, including wall covering, paneling and built-in cabinet work, but excepting Tenant's movable furniture and equipment, shall at once become a part of the realty and belong to Landlord and shall be surrendered with the Premises. At no time shall Tenant be permitted to remove the Building or any structural or other alterations, additions or improvements made to the Building or Premises unless requested to do so in writing by Landlord, at Tenant's sole expense. Notwithstanding anything to the contrary contained in this Lease, upon the earlier of the expiration or termination of this Lease Tenant shall, at its sole expense, remove all telecommunications cabling from within the Premises to the point of demarcation

3

within the Building, as the case may be, unless Landlord has requested Tenant, in writing, to tag any such telecommunications cabling and to leave same in place. Tenant shall, at its sole expense, repair any damage to the Building or Premises caused by the removal of any items or personality therefrom. At least twenty (20) days prior to the commencement of any work at the Premises, Tenant shall notify Landlord of the names and addresses of the persons supplying labor and materials so that Landlord may give notice that it shall not be subject for any lien for any work performed or requested by or for Tenant, in accordance with Colorado's mechanics' lien statutes.

(c)    Costs of Work. Tenant shall pay all costs for work done or caused to be done by or on behalf of Tenant on the Premises and the Building and Tenant (or any subtenant) will keep the same free and clear of all mechanics' liens and other liens on account of work done for or on behalf of Tenant or persons claiming under Tenant. Tenant hereby agrees to indemnify, defend and save Landlord harmless of and from all liability, loss, damages, costs or expenses, including reasonable attorneys' fees, incurred in connection with any claims of any nature whatsoever for work performed for, or materials or supplies furnished to, Tenant, including lien claims of laborers, materialmen or others. Should any such liens be filed or recorded against the Premises with respect to work done for or materials supplied to or on behalf of Tenant or should any action affecting the title thereto be commenced, Tenant shall cause such liens to be released of record within twenty (20) days after notice thereof. If Tenant desires to contest any such claim or lien, Tenant shall nonetheless cause such lien to be released of record by the posting of adequate security with a court of competent jurisdiction as may be provided by Colorado's mechanics' lien statutes. If Tenant is delinquent in paying any charge for which such a lien or suit to foreclose such a lien has been recorded or filed and has not caused the lien to be released, Landlord may (but without being required to do so) pay such lien or claim and costs associated therewith, and the amount so paid, together with interest thereon at the rate of fifteen percent (15%) per annum and reasonable attorneys' fees incurred in connection therewith, shall be immediately due from Tenant to Landlord as Additional Rent.

## 12. SIGNS

Tenant may place signage for the Premises and the Building only as approved by Landlord, which approval shall not be unreasonably withheld, delayed or conditioned. All signage referenced hereof shall be made and installed at Tenant's sole expense.

## 13. TAXES

During the Term, Tenant shall pay prior to delinquency all real, personal and other taxes and assessments assessed against and levied upon the Premises and all personal property of Tenant contained at the Premises. Upon request from Landlord, Tenant will provide Landlord with proof of timely payment of such taxes and assessments.

## 14. INDEMNITY

Landlord and Tenant hereby indemnify and hold each other (including their respective employees, agents and contractors) harmless from any and all claims by third parties arising from their respective acts or omissions, except as provided in Section 16 below. This indemnity includes all loss, cost, or expense (including reasonable attorneys fees), which may be incurred by or asserted against the indemnified party. Upon request of the indemnified party, the other party will assume the defense of any such claim utilizing legal counsel reasonably approved by the indemnified party. The indemnified party will not settle any claims subject to indemnification hereunder without the reasonable consent of the indemnifying party, provided no final judgment has been entered with respect to the claim. Each party will promptly give notice to the other of any accidents or occurrence which may be subject to this indemnity as soon as they become aware of the accident or occurrence. The provisions of this Section 14 shall survive the expiration or any earlier termination of this Lease.

## 15. INSURANCE

(a)    Tenant's Insurance. Tenant shall procure and maintain at its own cost at all times during the Term "all risk" insurance on the Premises and Building in an amount not less than full replacement value,

4

comprehensive general liability insurance, including coverage for bodily injury, property damage, personal injury (employee and contractual liability exclusions deleted), products and completed operations, contractual liability, owner's protective liability and broad form property damage with the following limits of liability: $1,000,000.00 each occurrence combined single limit for bodily injury, property damage and personal injury and $3,000,000.00 aggregate for bodily injury and property damage for products and completed operations. Tenant may satisfy these insurance coverage requirements through a combination of primary and umbrella policies. All such insurance shall be procured from a responsible insurance company authorized to do business in Colorado and rated no lower by Best than AA, and shall be otherwise satisfactory to Landlord. All such policies shall name Landlord and applicable mortgagees as additional insureds, and shall provide that the same may not be canceled or altered except upon thirty (30) days prior written notice to Landlord. All insurance maintained by Tenant shall be primary and all liability insurance obtained by Tenant will be on an "occurrence," as opposed to a "claims made" basis. Tenant shall provide certificate(s) of such insurance to Landlord upon commencement of the Term and at least thirty (30) days prior to any annual renewal date thereof and upon request from time to time and such certificate(s) shall disclose that such insurance names Landlord and applicable mortgagees as additional insureds, in addition to the other requirements set forth herein. The limits of such insurance shall not, under any circumstances, limit the liability of Tenant hereunder. Tenant shall also obtain and keep in force a loss of rents insurance policy in favor of Landlord in an amount equal to twelve (12) months Rent. All liability, property and other policies of Tenant required hereunder shall be written as primary policies, with no right to any contribution from, and not in excess of, any insurance coverage which Landlord may carry to protect its interests, and no such policy shall be subject to any deductible in excess of $10,000 or to any self-insured retention.

(b)    Waiver of Subrogation. All insurance required by this Lease will contain a waiver of subrogation and Tenant will, upon request from Landlord, promptly provide to Landlord proof that such a waiver is in effect on all insurance required by Tenant hereunder.

16.  [Intentionally Omitted]

17.  [Intentionally Omitted]

18.  LANDLORD REPAIRS

There shall be no abatement of Rent and no liability of Landlord by reason of any injury to, or interference with, Tenant's business arising from the making of any repairs, alterations or improvements to the Premises and/or Building.

19.  COMMON AREAS

There are no common areas associated with this Lease.

20.  LIMITED LIABILITY

Landlord shall not be liable for any loss or damage resulting from: (a) fire, explosion, falling dry wall whether caused by gas, electricity, water or rain; (b) the pipes, appliances, electrical, HVAC, plumbing or other utility or communications systems; (c) the roofs, streets within the premises, parking areas, drives or subsurface; (d) any variation or interruption of utility services; or (e) theft or other criminal acts of third parties.

21.  ASSIGNMENT AND SUBLETTING

(a)    Tenant shall not assign this Lease or sublet all or any part of the Premises without the prior written consent of Landlord, which consent will not be unreasonably withheld. Regardless of whether Landlord's consent is required and/or obtained, any subletting or assignment hereof shall not I) permit any new or amended use which would conflict with any permitted use of the Premises and/or the Building, nor ii) relieve Tenant (or any guarantors) of its primary and other obligations hereof, including the obligation for payment of all Rent due

hereunder through the Term, nor iii) permit Tenant to receive any rents which exceed sums payable from Tenant to Landlord hereunder (all excess sums, if any, shall promptly be remitted to Landlord).

(b)    If Tenant is a corporation, then any type of transfer or assignment, whether by merger, consolidation, liquidation or otherwise, or any change in the ownership or power to vote a majority of Tenant's outstanding voting stock, shall constitute an assignment. If Tenant is a partnership or other legal entity, then any change in the identity of the partners or members having an aggregate beneficial interest in the entity exceeding fifty percent (50%) shall constitute an assignment. Any attempted assignment or subletting without Landlord's prior written consent shall be wholly void and shall constitute a breach of this Lease. Acceptance of Rent by Landlord from anyone other than Tenant shall not be construed as (i) a release of Tenant from any obligation of liability under this Lease nor (ii) an acceptance of a sublet or an assignment of this Lease. The consent of Landlord to an assignment or subletting shall not be construed to relieve Tenant from obtaining the written consent of Landlord to any further assignment or subletting.

22.  EMINENT DOMAIN AND CONDEMNATION

(a)    Total Condemnation. If the whole of the Premises shall be taken by condemnation or eminent domain, then the Term hereof shall cease as of the day of the vesting of title or as of the day possession shall be so taken, whichever is earlier.

(b)    Partial Condemnation. If only a portion of the Premises is taken by condemnation or eminent domain, Landlord shall be entitled to terminate this Lease, effective on the day of vesting of title or the day possession is taken, whichever is earlier, upon giving written notice to Tenant within ninety (90) days from the taking. If Landlord does not elect to so terminate this Lease, Landlord shall restore the Premises to the extent practicable, and Rent shall be abated to the extent there is any diminution in the usable area of the Premises.

(c)    Damages. If there is any taking of any kind, Landlord shall be entitled to any and all awards and/or settlements which may be given, and Tenant shall have no claim for the value of any unexpired portion of the Term. Tenant shall have the right to claim from the condemning authority a separate award for damage to Tenant's business.

23.  INVOLUNTARY TERMINATION

If at any time during the Term, there shall be filed by or against Tenant or any guarantor of this Lease in any court pursuant to any statute, either of the United States or any State, a petition in bankruptcy or insolvency or for reorganization or for the appointment of a receiver or trustee of all or a portion of Tenant's or such guarantor's property, and within thirty (30) days thereof Tenant or guarantor fails to secure a discharge thereof, or if Tenant or guarantor makes an assignment for the benefit of creditors or petitions for or enters into such an arrangement, this Lease, at the option of Landlord exercised within a reasonable time after notice of the happening of any one or more of such events, may be canceled and terminated and in which event neither Tenant nor any person claiming through or under Tenant by virtue of any statute or of an order of any court shall be entitled to possession or to remain in possession of the Premises, but shall forthwith quit and surrender the Premises, and Landlord, in addition to the other rights and remedies Landlord has by virtue of any statute or rule of law, may retain, as liquidated damages, any Rent, security deposit or monies received by it from Tenant or others on behalf of Tenant.

24.  ENTRY BY LANDLORD

Landlord and its agents shall have the right to enter the Building and the Premises at all reasonable times for the purpose of examining or inspecting the same. Notwithstanding anything to the contrary contained herein if there is an emergency Landlord may enter the Building and the Premises by any means whatsoever without notice as reasonably required to respond to the emergency. During the one hundred eighty (180) days prior to expiration of this Lease, Landlord will also have the right at reasonable times to exhibit and show the Premises to prospective tenants.

## 25. SURRENDER

(a)    <u>Condition of Premises</u>. Upon the expiration or any earlier termination of this Lease, by lapse of time or otherwise (i) Tenant will surrender possession of the Premises to Landlord and deliver all keys to the Premises and all locks thereof to Landlord, (ii) if there are any combination locks on the Premises, Tenant will deliver the combinations for such locks to Landlord in writing, and (iii) subject to Section 11(a) above, Tenant will return the Premises and all improvements, equipment and fixtures therein to Landlord in broom clean condition and in the condition delivered to Tenant as of the Commencement Date. If Tenant fails to deliver the Premises as required above, Landlord may restore the Premises and such equipment and fixtures to the above required condition, and Tenant will pay the cost thereof to Landlord upon demand. The obligations of this subsection will survive the expiration date or any earlier termination of this Lease.

(b)    <u>Items Remaining</u>. Upon the expiration or any earlier termination of this Lease or termination of Tenant's right to possession of the Premises, and subject to Section 11(a) above, all fixtures permanently attached to the Premises or Building shall be Landlord's property and will remain upon the Premises, without compensation, allowance or credit to Tenant. However, if prior to the expiration date or any such termination or within thirty (30) days thereafter, Landlord notifies Tenant to remove any such items or installations, Tenant will do so at its expense as promptly as practicable following receipt of this notice. The obligations of Tenant under this subsection will survive the expiration date or any earlier termination of this Lease.

## 26. DEFAULT BY TENANT

(a)    <u>Event of Default Defined</u>. Any one or more of the following events (an "Event of Default") shall constitute a default by Tenant hereunder:

(i) Tenant shall fail to promptly pay when due the Rent or any other amounts payable hereunder. Notwithstanding the foregoing, Landlord agrees that the first and second such failure of each calendar year of the Term shall be a default hereunder only where such failure shall continue for ten (10) days after Tenant is given written notice thereof that any such amount has not been timely received.

(ii) [Intentionally Deleted]

(iii) If this Lease or the estate of Tenant hereunder shall be transferred to or shall pass to or devolve upon any other person or party except in the manner herein provided.

(iv) This Lease or the Premises, or any part thereof, shall be taken upon execution or by any other process of law directed against Tenant, or shall be taken upon or subject to any attachment at the instance of any creditor or claimant against Tenant, and said attachment shall not be discharged or disposed of within fifteen (15) days after the levy thereof.

(v) Tenant or any guarantor of this Lease shall file a petition in bankruptcy or insolvency or for reorganization or arrangement under the bankruptcy laws of the United States, or under any insolvency act of any State, or shall voluntarily take advantage of any such law or act by answer or otherwise, or shall be dissolved or shall make an assignment for the benefit of creditors.

(vi) Involuntary proceedings under any such bankruptcy law or insolvency act, or for the dissolution of Tenant or any guarantor of this Lease shall be instituted against Tenant or such guarantor, or a receiver or trustee shall be appointed for all or substantially all of the property of Tenant, or such guarantor, and such proceedings shall not be dismissed or such receivership or trusteeship vacated within thirty (30) days after such institution or appointment.

(vii) Tenant shall fail to take possession of the Premises on the Commencement Date.

(viii) Not including matters referenced in subsections (a)(i) - - (vi) above (all of which constitute a default immediately upon occurrence of the referenced act or omission), Tenant shall fail to perform any of the

other agreements, terms, covenants or conditions herein on Tenant's part to be performed, and such nonperformance shall continue for a period of thirty (30) days after notice thereof by Landlord to Tenant, or if such performance cannot be reasonably had within such thirty (30) day period, Tenant shall not in good faith have commenced such performance within such thirty (30) day period and shall not diligently proceed therewith to completion.

(b)    Remedies. If there is any such default or breach by Tenant, Landlord may at any time thereafter, in its sole discretion, with or without notice or demand and without limiting Landlord in the exercise of a right or remedy which Landlord may have by reason of such default or breach, elect to pursue one or more of the following remedies:

(i) If there is any such default or breach by Tenant, Landlord may at any time thereafter, in its sole discretion, re-enter and take possession of the Premises or any part thereof and repossess the same as Landlord's former estate without prejudice to any remedies for arrears of rent or preceding breach of covenants or conditions. Should Landlord elect to re-enter the Premises as provided in this subsection (b)(i) or should Landlord take possession pursuant to legal proceedings or pursuant to any notice provided for bylaw, Landlord may, from time to time, without terminating this Lease, re-let the Premises or any part hereof in Landlord's or Tenant's name, but for the account of Tenant, for such term or terms (which may be greater or less than the period which would otherwise have constituted the balance of the Term) and on such conditions and upon such other terms (which may include concessions of free rent and alteration and repair of the Premises) as Landlord, in its discretion, may determine, and Landlord may collect and receive the rents therefore and apply them on behalf of Tenant's account. No such reentry or taking possession of the Premises by Landlord shall be construed as an election on Landlord's part to terminate this Lease unless a written notice of such intention be given to Tenant by Landlord. No notice from Landlord hereunder or under a forcible entry and detainer statute or similar law shall constitute an election by Landlord to terminate this Lease unless such notice specifically so states, which notice may be provided by Landlord at any time following default or breach of this Lease by Tenant. Landlord also reserves the right following any such re-entry and/or reletting to exercise its right to terminate this Lease by giving Tenant such written notice, in which event this Lease will terminate as specified in such notice.  A termination of the Lease by Landlord subsequent to an event of default by Tenant shall be without prejudice to Landlord's right to recover damages for Tenant's breach of the terms of this Lease.

(ii) If Landlord does not elect to terminate this Lease as permitted in subsection (b)(i) above, but on the contrary, elects to take only possession as also permitted in subsection (b)(i) above, Tenant shall pay to Landlord: (1) the Rent and all other sums as herein provided which would be payable hereunder if such repossession had not occurred, less (b) the net proceeds, if any, of any reletting of the Premises after deducting all of Landlord's expenses in connection with such reletting, including without limitation all repossession costs, brokerage commissions, legal expenses, attorneys' fees, expenses of employees, alteration and repair costs and expenses of preparation for such reletting, provided Landlord exercises in good faith commercially reasonable efforts to re-lease the Premises.

27.  LANDLORD'S DEFAULT

(a)    Notice. If there is any act or omission by Landlord which would or may give Tenant the right to terminate this Lease, or to claim a partial or total eviction, or to exercise any remedy whatsoever against Landlord, Tenant will not exercise any such right until:

(i)    it has given written notice of any such act or omission to both Landlord and each mortgage holder (a "Mortgagee") whose names and addresses have been furnished to Tenant, which notice shall be delivered in the manner provided in Section 33 below, and

(ii)    a reasonable period of time for remedying such act or omission (not to exceed thirty (30) days from the date of Tenant's notice, unless a longer period is reasonably required and diligent efforts to cure the default are commenced within such thirty (30) days and are thereafter diligently pursued) has elapsed, and the act or omission involved has still not been remedied.

8

(b)    <u>Tenant's Remedies</u>. If the act or omission involved has not been remedied after the notice and cure periods provided in subsection (a) above, then Tenant, subject to all other provisions of this Lease, will have all rights in law or equity on account of the act or omission involved, including, but not limited to, termination of this Lease.

## 28. LANDLORD'S LIEN (INTENTIONALLY OMITTED)

## 29. SUBORDINATION AND ATTORNMENT

This Lease is subordinate to any mortgage or deed of trust now or hereafter placed on the Premises and to any renewal, modification, consolidation, replacement or extension of such mortgage or deed of trust and the addition of any other mortgage or deed of trust granted after the Effective Date. This clause shall be self-operative, and no further instrument of subordination shall be required. Within five (5) days after written request by Landlord, Tenant shall execute any and all documents submitted by Landlord to confirm the subordination of this Lease. Landlord is hereby irrevocably appointed agent and attorney-in-fact of Tenant to execute all such subordination instruments if Tenant fails to execute such instruments within fifteen (15) days after notice from Landlord requesting the execution thereof. Upon request by Tenant, Landlord shall request, and use good faith efforts in attempting to obtain, a non-disturbance agreement from the lender, although Landlord makes no representation or guaranty that such non-disturbance agreement can be obtained nor is it a contingency to this Lease. Tenant agrees, in the event of a sale, transfer, or assignment of the Landlord's interest in the Premises, to attorn to and to recognize such sale, transfer or assignment and such purchaser, transferee, assignee or mortgagee as Landlord under the Lease. If there is any sale or transfer of the Premises by Landlord, Landlord shall be relieved of all subsequent liability hereunder.

## 30. ESTOPPEL CERTIFICATE

Tenant shall, at any time upon not less than ten (10) days prior written notice from Landlord, execute, acknowledge and deliver to Landlord a statement, in writing and on such form as Landlord or Landlord's lender may reasonably request, certifying that this Lease is unmodified and in full force and effect (or, if modified, stating the nature of such modification and certifying that this Lease, as so modified, is in full force and effect) and the dates to which rental and other charges are paid in advance, if any, and acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of Landlord hereunder, or specifying such defaults if any are claimed. It is expressly understood and agreed that any such statements may be relied upon by any prospective purchaser or encumbrancer of all or any portion of the Premises. Tenant's failure to deliver such statement within such time shall be conclusive upon Tenant that this Lease is in full force and effect, without modification, except as may be represented by Landlord, that there are no uncured defaults in Landlord's performance and that not more than one (1) month rental has been paid in advance.

## 31. ABANDONMENT

If Tenant ceases doing business with the public on the Premises for a period of six (6) consecutive months (exclusive of periods of renovation or repair of any casualty) then, unless prior to such time Tenant resumes doing business with the public, Landlord may thereafter elect to terminate this Lease by delivering written notice to Tenant of such election. Tenant will then have thirty (30) days after receipt of such notice to notify Landlord it will re-open for business with the public within the following ninety (90) days (the "Re-Opening Notice"). If Tenant does not timely deliver the Re-Opening Notice, this Lease will then automatically terminate on the 31st day after delivery of Landlord's notice of election to terminate. If Tenant timely delivers its Re-Opening Notice and re-opens its business with the public within the following ninety (90) days, Landlord's election to terminate will be deemed withdrawn. If Tenant timely delivers its Re-Opening Notice, but fails to re-open its business with the public within the following ninety (90) days, this Lease will automatically terminate on the 91st day after delivery of the Re-Opening Notice.

32. BROKERS

Neither party has dealt with any broker in connection with this transaction. Each party hereby indemnifies and holds the other harmless from any claims for commissions from third parties based on their respective actions.

33. NOTICE AND OTHER DELIVERIES

All notices required under this Lease shall be in writing. Notices shall be either (i) sent by certified mail return receipt requested, (ii) sent for next day delivery by Federal Express or other reputable next day courier service or (iii) by fax transmission, but only if the sending fax machine provides confirmation of transmission. The appropriate addresses for each party for the receipt of notice are as follows:

To Landlord at:        Rival, LLC
                       670 Automotive Drive
                       Colorado Springs, CO 80905

To Tenant at:          Daniels Long Automotive, LLC
                       PO Box 85
                       Colorado Springs, CO 80901

or such other address as either party may from time to time specify in writing to the other. Notice shall be presumed delivered or given in each case as follows: (i) upon personal delivery to the recipient as reflected on the third party delivery service receipt; (ii) upon the earlier of the date of receipt shown on the certified mail return receipt or two (2) business days after deposit in the U.S. Postal Service, (iii) on the next business day after deposit with Federal Express or other next day courier service for delivery (receipt must be retained for proof of deposit) or (iv) on the date shown on the fax transmission confirmation report. In the case of next day courier service or certified mail delivery, the sender shall prepay the delivery or postage charge. Notwithstanding anything to the contrary contained above, Landlord may send invoices for Rent or other charges arising from this Lease to Tenant only, and by any means provided in this Section 33 or simply by ordinary mail.

34. RULES AND REGULATIONS

Tenant shall comply with all laws and regulations concerning the Premises and the Building and all rules and regulations that Landlord may establish from time to time. Landlord may add to, or amend, these rules and regulations provided:

    (a)    Tenant is given thirty (30) days advance notice;

    (b)    the changes do not unreasonably and materially interfere with Tenant's conduct of its business or use and enjoyment of the Premises;

    (c)    the changes do not require Tenant to pay additional money.

If any rules conflict with or are inconsistent with the provisions of this Lease, the Lease provision shall control. Landlord shall not be responsible for another tenant's failure to observe the rules.

35. HOLDING OVER. If Tenant, with landlord's consent, remains in possession of the Property, or any part thereof, after the expiration of the Term hereof such occupancy shall be a tenancy from month-to-month upon all the provisions of this Lease pertaining to the obligations of the Tenant.

36. RELATIONSHIP OF PARTIES. Nothing contained in this Lease shall be deemed, construed or implied as creating the relationship of principal and agent, partnership, joint venture or any other relationship of Landlord and Tenant.

10

37.  OPTION TO RENEW.  If Tenant gives notice to Landlord ninety (90) days before the expiration date set forth herein, that it intends to renew this Lease for an additional five (5) year term, the terms of this Lease shall be renewed for that time period at a "new" Base Rent which will be determined by multiplying the Base Rent provided herein by the number which represents the Consumer Price Index (Denver Area-all items) increase which occurred during the Term of this Lease.

38.  GENERAL PROVISIONS

(a)    The waiver by Landlord of any term, covenant or condition herein contained shall not be deemed to be a waiver of any subsequent breach. The acceptance of Rent or payment of any lesser amount than is due shall not be deemed to be a waiver of any default by Tenant, or a waiver of the balance due.

(b)    The headings to the sections of this Lease shall have no effect upon the construction or interpretation of this Lease.

(c)    Time is of the essence.

(d)    Subject to the restrictions on assignments in this Lease, the covenants and conditions herein contained bind the heirs, successors, executors, administrators, and assigns of the parties hereto.

(e)    Either Party may request that a short form memorandum of this Lease be recorded.

(f)    Upon Tenant paying the Rent reserved hereunder and observing and performing all of the covenants, conditions and provisions on Tenant's part to be observed and performed hereunder, Tenant shall have quiet possession of the Premises for the Term, subject to all the provisions of this Lease.

(g)    If Tenant is a corporation, each individual executing this Lease on behalf of said corporation represents and warrants that he/she is duly authorized to execute and deliver this Lease on behalf of said corporation, in accordance with the bylaws and resolutions of said corporation, and that this Lease is binding upon said corporation. If Tenant is a partnership or other legal entity, each individual executing this Lease on behalf of such partnership or other entity represents and warrants that he/she is duly authorized to execute and deliver this Lease on behalf of the partnership or entity, and that this Lease is binding on the partnership or entity.

(h)    No remedy or election hereunder shall be deemed exclusive but shall, whenever possible, be cumulative with all other remedies at law or in equity.

(i)    In any action or proceeding brought by either party against the other under this Lease, the prevailing party shall be entitled to recover all of its court costs and reasonable attorneys' fees from the non-prevailing party. The parties hereby i) WAIVE TRIAL BY JURY in any action brought by or against either of them with respect to this Lease, ii) consent to the courts of El Paso County, Colorado, as to both jurisdiction and venue for litigation of any matters under this Lease, and iii) agree that this Lease shall be governed by the laws of the State of Colorado.

(j)    Tenant will pay all Rent without offset or reduction of any kind whatsoever.

(k)    This Lease contains all of the agreements of the parties hereto with respect to any matter covered or mentioned in this Lease, and no prior agreements or understanding pertaining to any such matters shall be effective for any purpose. There are no other representations or warranties between the parties and all reliance with respect to representations is solely upon the written representations and agreements contained in this Lease. No provision of this Lease may be amended or added to except by an agreement in writing signed by Landlord and Tenant or their respective successors in interest.

(l)    This Lease and the obligations of the parties hereunder shall not be affected or impaired because that party is unable to fulfill any of its obligations hereunder or is delayed in doing so, if such inability or

11

delay is caused by reason of strike, labor troubles, acts of God, or any other cause beyond the reasonable control of the party involved.

(m)    Any provision of this Lease which shall prove to be invalid, void, or illegal shall in no way affect, impair, or invalidate any other provision hereof and such other provisions shall remain in full force and effect.

(n)    The submission or delivery of this document for examination and review does not constitute an option, an offer or an agreement to lease. This document shall become binding as a Lease only upon execution by Landlord and Tenant.

(o)    Any consent required of Landlord in this Lease, if not otherwise specified in the particular provision, shall mean Landlord will not unreasonably deny such consent after its review of reasonable documentation requested of and received from Tenant, and Tenant shall have no claim for damages by reason of such delay or withholding of any such consent.

(p)    [Intentionally Deleted]

(q)    Tenant acknowledges this is a "triple net" Lease and any and all expenses and obligations in connection with the Premises and the Building are the obligation of Tenant.

IN WITNESS WHEREOF, the parties hereto have executed this Lease as of the Effective Date.

TENANT:

Daniels Long Automotive, LLC
 by Phil Long Dealerships, Inc.
  Manager

by: _____
    Gerald D. Cimino, President

LANDLORD:

Rival, LLC

by: _____
    Elizabeth Daniels Winston, Manager

EXHIBIT *A*

Lot 1 and Tract A in Motor World Filing No. 3, in the City of Colorado Springs, El Paso County, Colorado

(also known as 610 and 670 Automotive Drive, Colorado Springs, CO 80905)

13