**Objection Deadline: February 22, 2011**
                                            **Hearing Date: March 1, 2011**

Maureen F. Leary
Assistant Attorney General
New York State Department of Law
The Capitol
Albany, New York 12224-0341
(518) 4784-7154
*Attorneys for the State of New York and the*
*New York State Department of Environmental Conservation*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____

In re

**MOTORS LIQUIDATION COMPANY, et al.,**          **Chapter 11**

                  **Debtors.**          **Case No. 09-50026 (REG)**

                                     **(Joint Administered)**

_____

**STATE OF NEW YORK'S LIMITED OBJECTION TO, AND REQUEST FOR**
**CLARIFICATION OF, DEBTORS' MOTIONS FOR ORDERS**
**(1) ESTIMATING MAXIMUM AMOUNT OF CLAIMS FOR PURPOSES**
**OF ESTABLISHING CLAIMS RESERVES, AND (2) ESTABLISHING CLAIMS**
**RESERVES IN CONNECTION WITH DISTRIBUTIONS TO BE MADE UNDER**
**AMENDED JOINT CHAPTER 11 PLAN WITH RESPECT TO CERTAIN**
**UNLIQUIDATED CLAIMS**

The State of New York and the New York State Department of Environmental

Conservation ("NYSDEC") hereby object to, and seek clarification of, the debtors' Motions (1)

Estimating the Maximum Amount of Certain Claims for Purposes of Establishing Claims

Reserves Under the Chapter 11 Plan (hereinafter, "Cap Motion"), and (2) Establishing Claims

Reserves In Connection With Distributions to be Made Under Amended Joint Chapter 11 Plan

With Respect to Certain Unliquidated Claims (hereinafter "Reserve Motion").

**Background**

1. On or about November 29, 2009, the State timely filed 21 proofs of claim ("POCs") totaling in excess of $198 million and arising from the Debtors' environmental compliance obligations and liability for costs associated with numerous environmentally contaminated sites located in New York. New York is in the process of reviewing each of its POCs and intends to amend and/or withdraw certain claims. New York currently estimates that its POCs as amended/withdrawn will total in excess of $200 million.

2. On or about December 7, 2010, the Debtors filed an Amended Disclosure Statement and Amended Plan. Under the Amended Plan, New York is a Class 3 claimant holding unsecured claims as well as a Class 4 claimant by virtue of its execution of the Environmental Response Trust, as defined in and appended to the Plan (Exhibit B).

3. On February 14, 2011, New York received the Cap Motion and the Reserve Motion. The two motions purport to address caps and reserves on estimated amounts for Class 3 unsecured claims.

4. <u>Cap Motion.</u> The Cap Motion lists only 2 of New York's 21 claims: $11 million (POC No. 50588), representing damages to the natural resources of the State as a result of contamination released from the Inland Fisher Guide facility in Syracuse; and $480,250 (POC No. 69444) representing estimated future remedial and regulatory oversight costs related to the Tonawanda Endoline Spill at a facility formerly owned by General Motors (Motion, Exhibit B, "Environmental Claims" p. 9).[1] The POCs attach certain technical data and environmental information that support the amount asserted.

---

[1] The Cap Motion also attempts to cap the claims of the United States and the States of Arkansas, Illinois, Indiana, Maryland, Missouri, New Jersey, North Carolina, Ohio, Rhode Island, and Wisconsin.

2

5. The Cap Motion characterizes the two New York claims as "Partially Unliquidated." The Cap Motion does not actually seek to set a reserve of any amount. Rather, it merely seeks to cap the amount of the claims listed.

6. <u>Reserve Motion.</u> The Reserve Motion seeks to set a reserve of $480 million even though the claims listed in the motion total far in excess of the reserved amount. For example, the claim of the United States alone (POC No. 67362) is listed in excess of $2 billion (Reserve Motion, Exhibit B "Environmental Claims p. 7). New York's 19 other claims are not subject to the Reserve Motion.

**A. The Debtors Have Not Provided Factual Support for Capping New York's Claims.**

7. The Cap Motion states that the Debtors have "arrived at their estimates" for the capping claims "in good faith, conservatively, and based upon appropriate review and analysis" and "based on a comprehensive review" of the proofs of claims and supporting documentation (Cap Motion, ¶ 30). The Debtors fail to provide the Court, or the affected parties, with the comprehensive review and analysis purportedly undertaken. The Debtors summarily state that they arrived at what they "believe" is the "maximum possible amount," which represents "the fairest possible course to protect the interests of all creditors" (Cap Motion, ¶ 30). The Debtors do not substantiate how they arrived at the capped amount, or why this is the fairest possible course to protect the interests of all creditors. Indeed, there is no factual basis in the motion for capping New York's or any other parties' claims.

**B. The Debtors' Cap Motion Improperly Eliminates New York's Right to Amend and Update Its Proofs of Claim and to Pursue Resolution of Its Claim in a Court of Appropriate Jurisdiction.**

8. The New York claims listed in the Cap Motion are based on NYSDEC's reasoned estimate of the natural resource damages and the remedial costs at two contaminated

3

sites for which the Debtors are liable under State and Federal environmental laws. New York's claims were based upon the information available to NYSDEC regarding contamination caused by the Debtors at the time of the bar date.[2] These estimates are subject to change by virtue of the nature the nature and extent of contamination found at two sites and based on ongoing investigative and regulatory work. For example, additional sampling data or other information on the sites may have been generated after the bar date, and NYSDEC may have undertaken a more comprehensive evaluation of such data and information. As additional information becomes available regarding the nature and extent of contamination, NYSDEC (and where appropriate, agencies of the United States) re-evaluates the estimated damages and remedial costs and the amounts asserted in the POC. Indeed, this process has been ongoing in New York in order to assure the accuracy and defensibility of the amounts asserted in the POCs. As such, the amounts initially asserted may change. New York is entitled to timely amend the POCs to reflect new or updated information. Notably, any amendment to a POC will not be for *a different type of claim* than the claim initially asserted in New York's original POC. *In re Houbigant, Inc.,* 188 B.R. 347, (Bankr. S.D. N.Y. 1995) (amendments to claims are permitted when purpose is to more fully explain claim, but disallowed when purpose is to create new claim). Any amendment will be related to the same facts and circumstances surrounding New York's original POC.

9.  In addition, underlying New York's claims are certain causes of action against the Debtors under State and Federal environmental laws that non-bankruptcy courts have jurisdiction to decide. The Debtors improperly attempt to limit New York's recovery under

---

[2] For example, tax claimants regularly file estimated claims in bankruptcy cases to comply with bar date orders and later amend the claims for purposes of updating the amounts due. *See In re BH S & B Holdings LLC*, 435 B.R. 153, 166 (Bankr. S.D.N.Y. 2010)

4

these laws by capping the claim amount before any final judgment or resolution is reached.

10. The Debtors' Cap Motion eliminates any ability for New York, and other environmental claimants, to amend a POC to update the estimated amount and assert a more accurate claim, as information becomes available and is evaluated. Moreover, the Cap Motion impairs the ability for New York and other environmental claimants to pursue resolution of causes of action arising under State and Federal environmental laws, and to obtain full recovery of the amounts to which they ultimately may be entitled.

### C. Section 502(c) Does Not Authorize the Relief Requested.

11. The Debtors Cap Motion asks the Court to determine the maximum amount of certain claims pursuant to 11 U.S.C. § 502(c) and § 105(a). Section 502(c) authorizes the estimation of claims, but does not expressly provide for a limit to be placed on the amount of such claims outside of the estimation process. Moreover, the cases cited by the Debtors in support of the cap do not support the relief requested because each arose in the context of the estimation process.

12. The Debtors' reliance on Section 105(a) to bolster its request for the cap on claims is likewise without merit. Section 105(a) alone does not authorize the Court to cap claims. *Norwest Bank Worthington v. Ahlers,* 485 U.S. 197, 206 (1988) ("whatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code"); *see also In re Rickel & Associates, Inc.,* 260 B.R. 673, 678 (Bankr. S.D. N.Y. 2001). A separate jurisdictional basis in the Code is necessary for the relief requested here.

13. Although it is important that disputed claims be estimated to avoid undue delay in the administration of the bankruptcy case, Section 502(c) is not the vehicle to assure

efficiencies in administration by placing a cap on claims *en masse* without proper adjudication regarding whether each claim *should* be capped.

14. New York has no objection to the Court's estimation of its claims at the face amount set forth in the POCs, but objects to capping that amount. That relief is not supported by the plain language of either Section 502(c) or Section 105(a).

**D.    New York's Claims Are Not "Speculative" or "Protective in Nature."**

15. The Cap Motion asserts that the claims subject to capping are "speculative and protective in nature" and therefore a cap is appropriate (Cap Motion, ¶ 19). New York's POCs are fully supported by addenda and documentation on the claim, including an analysis of the site's factual background, an evaluation of the natural resource damages and remedial costs, and a reasoned estimate. The supporting documentation attached to each POC refutes that either is speculative or protective in nature and belies the Debtors' assertion that a ceiling on recovery should be set.

**E.    The Debtors Have Not Identified the Amount Reserved for Disputed Liquidated Claims.**

16. Neither the Cap Motion nor the Reserve Motion address any of New York's other 19 claims. In e-mails sent to Debtors' counsel, New York requested clarification regarding the reserve amounts set for New York's claims. In February 19 and 21, 2011 emails, the Debtors' counsel advised that New York's other claims were deemed "liquidated" and are being reserved "separately" in the full "face amount." The Debtors have not identified the amount contained in this "separate reserve" for liquidated claims, however, and neither the Cap Motion nor the Reserve Motion identify this third category of claims for which reserves should be set. The Plan recognizes this third reserve category, but has set no reserve amount in order for all Class 3 claimants to judge their likely recovery and determine the feasibility of the Plan. New York

6

seeks clarification regarding the amount the Debtors will reserve separately for liquidated but still disputed claims, and whether that specific amount will be subject to judicial approval on notice to parties in interest.[3]  New York seeks to assure that any of its claims that ultimately may be allowed are properly reserved in the GUC Trust so that those allowed claims are in fact paid.

17.     The State reserves the right to amend the foregoing limited objection and request for clarification, and to join in other objections filed by parties in interest who are subject to either the Cap Motion or the Reserve Motion.

## CONCLUSION

For the foregoing reasons, New York respectfully requests that the relief in the Cap Motion be denied and the claims listed should be reserved for the full face amount set forth on the proofs of claim without cap or other limitation.

Dated: February 22, 2011                                  ERIC T. SCHNEIDERMAN
                                                          Attorney General of the State of New York

                                    By:    _____
                                           MAUREEN F. LEARY
                                           Assistant Attorney General
                                           New York State Office of the
                                             Attorney General
                                           The Capitol
                                           Albany, New York  12224
                                           Telephone: 518-474-7154
                                           Maureen.Leary@ag.ny.gov

---

[3] Although the Plan (§ 1.112) contemplates the debtors' creation of reserves for disputed claims, no such reserve has been created nor a reserve amount identified in the Plan (even though the Debtors provide an estimate of $34 to 38 billion.  To make matters worse, the GUC Trust Administrator is only required to retain sufficient GUC Trust Assets for distribution to Disputed Claims *"to the extent practicable"* (Plan, Exhibit D: GUC Trust Agreement, § 5.5). There is no unconditional requirement that the Administrator retain and reserve for distribution a specified Trust Asset amount to assure protection of Class 3 disputed claims.

**CERTIFICATE OF SERVICE**

      I, Maureen F. Leary, hereby certify that on the 22nd day of February, 2011, I served a copy of the State of New York's Objection to Debtors' Motion for an Order Estimating Maximum Amount of Claims for Purposes Of Establishing Claims Reserves upon each of the parties set forth below, by electronic and/or first class mail, postage prepaid:

Harvey R. Miller, Esquire
Stephen Karotkin, Esquire
Joseph H. Smolinsky, Esquire
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY  10153
harvey.miller@weil.com
stephen.karotkin@weil.com
Joseph.Smolinsky@weil.com
*Attorneys for Debtors*

David R. Berz, Esquire
Thomas Goslin, Esquire
Weil Gotshal & Manges, LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005
david.berz@weil.com
thomas.goslin@weil.com
*Attorneys for General Motors*

Thomas Morrow, Esquire
c/o Motors Liquidation Company
401 South Old Woodward Ave., Suite 370
Birmingham, Michigan  48009

Ted Stenger, Executive Vice President
c/o Motors Liquidation Company
General Motors LLC
500 Renaissance Center, Suite 1400
Detroit, Michigan 48243
tstenger@alixpartners.com

Lawrence S. Buonomo, Esquire
General Motors LLC
400 Renaissance Center
Detroit, Michigan  48265

John J. Rapisardi, Esquire
Cadwalader Wisckersham & Taft LLP
One World Financial Center
New York, New York  10281
john.rapisardi@cwt.com
*Attorney for the United States Department of Treasury*

Michael O. Hill, Esquire
Hill & Kehne, LLC
2300 Wisconsin Avenue, NW, Suite 300
Washington, DC  20007
mhill@hillkehne.com
*Attorney for the Environmental Response Trust Administrative Trustee*

Joseph Samarias, Esquire
United States Department of Treasury
1500 Pennsylvania Avenue NW, Rm 2312
Washington, D.C.  20220
Joseph.Samarias@do.treas.gov

Michael J. Edelman, Esquire
Michael L. Schein, Esquire
Vedder Price P.C.
1633 Broadway, 47th Floor
New York, NY  10019
mj_edelman@vedderprice.com
m_schein@vedderprice.com
*Attorneys for Export Development Canada*

Elliott P. Laws, Esquire
Crowell & Morning LLP
1001 Pennsylvania Ave., NW
Washington, DC  20004
ELaws@crowell.com
*For the Environmental Response Trust Administrative Trustee*

Thomas Moers Mayer, Esquire

8

Robert Schmidt, Esquire
Lauren Macksoud, Esquire
Jennifer Sharret, Esquire
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of The Americas
New York, NY 10036
tmayer@kramerlevin.com
rschmidt@kramerlevin.com
lmacksoud@kramerlevin.com
jsharret@kramerlevin.com
*Attorneys for Official Committee of
Unsecured Creditors*

Andrew D. Velez-Rivera, Esquire
Brian Shoichi Masumoto, Esquire
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004
andy.velez-rivera@usdoj.gov
Brian.Masumoto@usdoj.gov
*Attorneys for the United States*

David S. Jones, Esquire
Natalie Kuehler, Esquire
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chamber Street, 3rd Floor
New York, NY 10007
David.Jones6@usdoj.gov
Natalie.Kuehler@usdoj.gov
*Attorneys for the United States*

Elihu Inselbuch, Esquire
Rita C. Tobin, Esquire
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
ei@capdale.com
rct@capdale.com
*Attorneys for Asbestos Claimants'
Committee*

Trevor W. Swett III, Esquire
Kevin C. Maclay, Esquire
Caplin & Drysdale
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
tws@capdale.com
kcm@capdale.com
*Attorneys for Asbestos Claimants'
Committee*

Sander L. Esserman, Esquire
Robert T. Brousseau, Esquire
Stutzman, Bromberg, Esserman & Plifka
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
esserman@sbep-law.com
brousseau@sbep-law.com
*Attorneys for Future Asbestos Claimants'*

Alan Tenenbaum, Esquire
Patrick M. Casey, Esquire
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
patrick.casey@usdoj.gov
alan.tenembaum@usdoj.gov
*Attorneys for the United States*

John J. Privitera, Esquire
Jacob F. Lamme, Esquire
McNamee, Lochner, Titus & Williams, P.C.
677 Broadway
Albany, NY 12207-2503
privitera@mltw.com
*Attorneys for the Saint Regis Mohawk Tribe*

Margarita Padilla, Esquire
Deputy Attorney General
California Office of the Attorney General
P.O. Box 70550, 1515 Clay Street
Oakland, CA 94615-0550
Margarita.Padilla@doj.ca.gov
*Attorneys for the California Toxic
Substances Control Board*

Robert Kuehl, Esquire
Deputy Attorney General
Delaware Office of the Attorney General
391 Lukens Drive
New Castle, DE 19720
Robert.Kuehl@state.de.us

James L. Morgan, Esquire
State of Illinois Environmental Control
500 South Second
Springfield, IL 62706
jmorgan@atg.state.il.us

Timothy K. Junk, Esq.
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South, 5th Fl.
302 West Washington Street
Indianapolis, IN 46204
Tim.Junk@atg.in.gov

Carol Iancu, Esquire
Assistant Attorney General
Environmental Protection Division
Massachusetts Office of the Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
carol.iancu@state.ma.us

Celeste R. Gill, Esquire
Assistant Attorney. General
Environment, Natural Resources, and Agriculture
State of Michigan Attorney General's Office
P.O. Box 30755
Lansing, MI 48909
gillc1@michigan.gov

John McManus, Esquire
Chief Counsel
Attorney General for the State of Missouri
Agriculture and Environmental Division
P.O. Box 899
Jefferson City, MO 65102
jack.mcmanus@ago.mo.gov

John Dickinson, Esquire
Rachel Lehr, Esquire
Richard F. Engel, Esquire
Deputy Attorney General
New Jersey Attorney General's Office
Richard J. Hughes Justice Complex
25 Market St, CN 093
Trenton, NJ 08625
Richard.Engel@dol.lps.state.nj.us
rachel.lehr@law.dol.lps.state.nj.us
John.Dickinson@dol.lps.state.nj.us

Michelle T. Sutter, Esquire
Principal Attorney
Dale Vitale, Esq.
Ohio Attorney General Richard Cordray
Environmental Enforcement Section
30 E. Broad Street, 25th Floor
Columbus, OH 43215
michelle.sutter@ohioattorneygeneral.gov
dale.vitate@ohioattorneygeneral.gov

P. Kathleen Strasbaugh, Esquire
Richard Braun, Esquire
Wisconsin Attorney General's Office
Bureau of Legal Services
Wisconsin Department of Natural Resources
P.O. Box 7921
101 S. Webster Street, LS/8
Madison, Wisconsin 53707-7981
Kathleen.Strasbaugh@Wisconsin.gov
Richard.braun@doj.state.wi.us

_____
Maureen F. Leary