**HEARING DATE AND TIME: March 3, 2011 at 9:45 a.m. (Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-3275
Facsimile: (212) 715-8000
Thomas Moers Mayer
Robert T. Schmidt

*Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                   :
In re:                                                             :    Chapter 11 Case No.:
                                                                   :
MOTORS LIQUIDATION COMPANY, et al.                                 :    09-50026 (REG)
       f/k/a General Motors Corp., et al.                          :
                                                                   :
                          Debtors.                                 :    (Jointly Administered)
                                                                   :
------------------------------------------------------------------ X

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN SUPPORT OF THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

KL2 2686979.6

# TABLE OF CONTENTS

Statement in Support of Plan ................................................................................................2

Response to Certain Objections ............................................................................................3

    The Plan Does Not Discriminate ....................................................................................3

    The Plan was Proposed in Good Faith............................................................................5

    The Appointment of WTC as GUC and Avoidance Action Trust Administrators is
    Appropriate .....................................................................................................................6

Limited Reservation..............................................................................................................9

Conclusion ..........................................................................................................................10

KL2 2686979.6

# TABLE OF AUTHORITIES

### CASES

*Asbestos Settlement Trust v. City of New York (In re Celotex Corp.)*,
  487 F.3d 1320 (11th Cir. 2007) ...................................................................................9

*In re Celotex Corp.*,
  204 B.R. 586 (Bankr. M.D. Fla. 1996) .........................................................................9

### STATUTES

11 U.S.C. § 502(a) ..............................................................................................................6

11 U.S.C. § 502(d) ..............................................................................................................5

11 U.S.C. § 510...................................................................................................................5

11 U.S.C. § 1123(a)(3).........................................................................................................6

11 U.S.C. § 1123(a)(4).........................................................................................................3

11 U.S.C. § 1129(a)(9)(A) ...............................................................................................2, 9

**HEARING DATE AND TIME: March 3, 2011 at 9:45 a.m. (Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-3275
Facsimile: (212) 715-8000
Thomas Moers Mayer
Robert T. Schmidt

*Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X
                                                                   :
In re:                                                             :   Chapter 11 Case No.:
                                                                   :
MOTORS LIQUIDATION COMPANY, et al.                                 :   09-50026 (REG)
       f/k/a General Motors Corp., et al.                          :
                                                                   :
                            Debtors.                               :   (Jointly Administered)
                                                                   :
------------------------------------------------------------------ X

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
IN SUPPORT OF THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

TO:   THE HONORABLE ROBERT E. GERBER,
      UNITED STATES BANKRUPTCY JUDGE:

The Official Committee of Unsecured Creditors (the "**Committee**") of the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), by and through its undersigned counsel, hereby submits this statement (the "**Statement**") in support of the Debtors' Amended Joint Chapter 11 Plan, dated December 7, 2010 (as amended, the "**Plan**") [Docket No. 8015] and in response to certain objections to the Plan. In support of this Statement, the Committee respectfully states as follows:

KL2 2686979.6

**Statement In Support of Plan**

1.  Over the past 21 months, the Committee has played an active role in these bankruptcy cases in an effort to maximize the recoveries for unsecured creditors and facilitate a timely emergence from chapter 11. Throughout this case, the Committee has spent a considerable amount of time analyzing and negotiating numerous significant issues, the culmination of which are embodied in the Plan and related documents. In particular, during the homestretch to Plan confirmation, the Committee and its professionals focused on the following:

- The Committee and its professionals reviewed and commented on multiple versions of the Plan and drafted provisions of particular importance to the Committee.

- The Committee and its professionals drafted the General Unsecured Creditors' Trust Agreement ("**GUC Trust Agreement**")[1], which governs the post-effective date wind-down operations of the Debtors and which governs distributions to all holders of Allowed Claims.

- In conjunction with drafting the GUC Trust Agreement, the Committee and its professionals worked closely with Wilmington Trust Company ("**WTC**") as the future GUC Trust Administrator and with WTC's professionals to resolve securities issues relating to the structure of the GUC Trust, including months of discussions with staff at three different divisions of the Securities Exchange Commission and at the Depository Trust Company, which will be the sole registered holder of interests in the GUC Trust.

- The Committee and its professionals drafted the Avoidance Action Trust Agreement, which will govern the trust that will hold and prosecute the Term Loan Avoidance Action, and which governs the distributions of the proceeds of the Term Loan Avoidance Action and any other causes of action that may be held by the Avoidance Action Trust.

- The Committee and its professionals worked with the Debtors' proposed post-confirmation professionals and engaged in hard negotiations with the U.S. Treasury to develop the Budget and other controls necessary to (a) leave the Debtors with sufficient cash to pay in full all pre-Effective Date administrative expenses, as required by 11 U.S.C. § 1129(a)(9)(A) and (b) minimize the likelihood that the New GM Securities would need to be sold in order to fund administrative expenses.

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Debtors' Plan.

KL2 2686979.6

- The Committee spearheaded litigation that led to the settlement of the Asbestos Trust Claim.

- The Committee worked with the Debtors to resolve or estimate significant claims in advance of confirmation.

- The Committee responded to hundreds of creditor inquiries regarding the Plan and solicitation materials and worked to maximize the amount of information available to general unsecured creditors.

2. Subject to the limited reservations set forth at the end of this Statement, the Committee is firmly of the view that the Plan provides the best possible recovery for unsecured creditors as a whole, submits that the Plan complies with applicable provisions of the Bankruptcy Code and, accordingly, supports confirmation of the Plan.

### Response to Certain Objections

3. The Committee understands that the Debtors have consensually resolved the majority of objections to the Plan and that there are only a handful of remaining substantive objections. While the Debtors will respond in detail to any remaining objections, the Committee believes it appropriate to respond briefly to the assertions in certain of the objections that (i) the Plan improperly discriminates between similarly situated creditors, (ii) the Plan was not proposed in good faith, and (iii) WTC is conflicted from serving as GUC Trust Administrator.

*The Plan Does Not Discriminate*

4. The Committee submits that the Plan and all related agreements, including the GUC Trust Agreement, provide for the same treatment for each claim within a particular class as required by section 1123(a)(4) of the Bankruptcy Code. Nonetheless, the Nova Scotia Noteholders (defined below) argue that the Plan violates section 1123(a)(4) because the proposed claim reserve procedures outlined in the GUC Trust Agreement are insufficient to protect holders

3

of Disputed Claims against the risk that the Debtors and the GUC Trust Administrator will fail to adequately fund the reserves.

5. This argument is unfounded in light of the express language of the GUC Trust Agreement, which provides that in the absence of an agreement between the Debtors and/or the GUC Trust Administrator and the holder of such claim as to the estimated amount of a claim, or an amount estimated or determined by the Bankruptcy Court, the GUC Trust will reserve either the liquidated amount set forth by the claimant in their proof of claim, or in the case of unliquidated claims, the amount estimated by the Debtors and/or the GUC Trust Administrator with the approval of the GUC Trust Monitor. *See* GUC Trust Agreement § 1.1(uu)(A).[2] In other words, the GUC Trust Agreement provides that absent agreement between the parties or estimation by the Court, the reserve will be based on the liquidated amount set forth in the proof of claim. For parties such as the Nova Scotia Claimholders (defined below) who have specified a liquidated amount in their proofs of claim, the GUC Trust Agreement ensures that the reserve will accommodate their claim. For parties who have filed Claims in unliquidated amounts, the Debtors have recently filed motions to estimate such Claims. *See* Docket Nos. 9212 and 9213. Accordingly, the GUC Trust has been structured to ensure that all holders of claims, whether Allowed as of the Effective Date or Allowed sometime thereafter, are treated fairly and equitably.

---

[2] This, and all other references to the GUC Trust Agreement, corresponds to the most recent version of the GUC Trust Agreement, which is expected to be filed with the Court prior to the Confirmation Hearing.

KL2 2686979.6

*The Plan was Proposed in Good Faith*

6.  The Nova Scotia Noteholders[3] and the Nova Scotia Trustee[4] (together, the "**Nova Scotia Claimholders**") argue that the Plan was not proposed in good faith because the Plan unfairly deals with their claims. Specifically, these parties argue that the Plan evidences a failure to act with fairness towards holders of Disputed Claims, particularly those held by the Nova Scotia Claimholders, because the Plan does not provide for partial distributions to holders of Disputed Claims. These claimants argue that the Plan should provide for either payment of the undisputed portion of their claims or payment to the Nova Scotia Claimholders in respect of the outstanding amount of the Nova Scotia Notes,[5] less the consent fee. However, in asserting these arguments the Nova Scotia Claimholders ignore the fact that the Committee has asked this Court to disallow each of their claims in their entirety.[6] *See* Committee's Objection to Claims filed by Green Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company

---

[3] The "**Nova Scotia Noteholders**" include Appaloosa Management L.P., Aurelius Capital Management, LP, Elliott Management Corporation, Fortress Investment Group LLC, Anchorage Capital Master Offshore Ltd., Canyon-GRF Master Fund, L.P., Canyon Value Realization Fund Limited, Knighthead Master Fund, LP, LMA SPC for and on behalf of MAP 84, Lyxor/Canyon Realization Fund, Ltd., Onex Debt Opportunity Fund, Ltd., Redwood Master Fund Ltd, and The Canyon Value Realization Master Fund, L.P.

[4] The "**Nova Scotia Trustee**" refers to Green Hunt Wedlake, Inc. in its role as Trustee of General Motors Nova Scotia Finance Company.

[5] "**Nova Scotia Notes**" means those notes issued pursuant to that certain Fiscal and Paying Agency Agreement among GM Nova Scotia, General Motors Corp., Deutsche Bank Luxembourg S.A., as fiscal agent, and Banque Général du Luxembourg S.A., as paying agent, dated as of July 10, 2003.

[6] The Nova Scotia Noteholders' objection to confirmation cites out of context a brief colloquy between the Court and the Committee's conflicts counsel in which the Court asks conflicts counsel whether the Committee is seeking to recover cash from the Nova Scotia Noteholders or obtain a credit against the Nova Scotia Noteholders' claims. Conflicts counsel responded "the latter." *See* Objection to Debtors' Amended Joint Chapter 11 Plan filed by the Nova Scotia Noteholders at p. 17 [Docket No. 9202]; *see also* Hr'g Tr., 47:17-24, Dec. 15, 2010. The Nova Scotia Noteholders unabashedly attempt to infer from this cryptic exchange a partial waiver or limitation of the Committee's objection to the allowance of the Nova Scotia Noteholders' claims as subject to disallowance or equitable subordination in their entirety under 11 U.S.C. § 502(d) or 11 U.S.C. § 510. The Nova Scotia Noteholders' argument is in the nature of a "gotcha" and has no legal merit – the record in its entirety is clear that the Committee has always sought, and continues to seek, disallowance or equitable subordination of the Nova Scotia Noteholders' claims in their entirety.

5

[Docket No. 6248]. In other words, there is no undisputed portion of either claim that could or should otherwise be entitled to a distribution under the Plan. Moreover, the Committee has objected to the claims asserted by the Nova Scotia Claimholders under section 502 of the Bankruptcy Code, which provides that a proof of claim will not be deemed allowed where a party in interest objects. *Id*.; *see also* 11 U.S.C. § 502(a). Accordingly, there is no basis for any of the Nova Scotia Claimholders' assertions that the Plan was not proposed in good faith in violation of section 1129(a)(3) of the Bankruptcy Code.

*The Appointment of WTC as GUC and Avoidance Action Trust Administrators is Appropriate*

7.  The objections filed by the California Department of Toxic Substances Control (the "**DTSC**"), the State of New York on behalf of the New York State Department of Environmental Conservation (collectively, "**New York**"), and the Town of Salina of the State of New York ("**Salina**") unjustifiably attack WTC alleging that WTC's current and future roles in these cases pose a potential conflict of interest and the possibility of prejudice to general unsecured creditors. Any such concerns are misstated and unfounded.

8.  Upon the Effective Date, the Committee will dissolve[7] and WTC will be resigning from its position as a member and the chair of the Committee. Therefore, as of the Effective Date, WTC will be focused on serving trust beneficiaries in its capacity as GUC and Avoidance Action Trust Administrators.

9.  DTSC, New York and Salina provide no basis or reason for their bald assertion that WTC faces a conflict of interest in serving as administrator to both the GUC and Avoidance Action Trusts. In fact, there can be no conflict of interest in serving as administrator to both the GUC and Avoidance Action Trusts because the beneficiaries of those trusts are the same. In

---

[7] Pursuant to section 12.1 of the Plan, the Committee will survive for a few limited purposes.

6

each instance, WTC will be acting as a fiduciary for creditors of the Debtors' estates. Therefore, WTC's dual roles cannot lead to a conflict of interest and will not prohibit WTC from properly discharging its duties to the beneficiaries of the GUC and Avoidance Action Trusts.

10. DTSC, New York and Salina further argue that the GUC Trust lacks sufficient oversight and controls to protect general unsecured creditors. These arguments are also without merit. The GUC Trust Agreement provides for various layers of review for all actions taken by the GUC Trust Administrator, including by the GUC Trust Monitor[8] – which is charged with overseeing the activities of the GUC Trust Administrator – and by the Bankruptcy Court. *See e.g.* GUC Trust Agreement §§ 1.1(uu), 2.3(d), 2.6(c), 3.5(b), 4.1, 5.4(d), 5.7, 5.9, 6.1, 6.2, 6.4, and 11.3. In addition, the GUC Trust Agreement provides that the GUC Trust Administrator can be removed and replaced by a successor administrator upon the filing of a petition to the Bankruptcy Court by the holders of a majority of the Units (as defined in the GUC Trust Agreement). *See* GUC Trust Agreement § 10.2. Therefore, the GUC Trust Agreement provides for sufficient oversight and controls to protect the interests of unsecured creditors.

11. WTC is also best suited to serve as GUC and Avoidance Action Trust Administrators. WTC has extensive experience in acting as a fiduciary and in coordinating distributions to bondholders and other creditor constituencies. DTSC, New York and Salina do not allege otherwise. WTC is the logical and most sensible party to serve in the positions of GUC and Avoidance Action Trust Administrators. That is why the Committee picked WTC to be the administrator for both the GUC and Avoidance Action Trusts.

12. WTC has worked very closely with the Committee's professionals, the Debtors, and

---

[8] The Plan provides that the GUC Trust Monitor, like the GUC Trust Administrator, is to be appointed by the Committee with the consent of the Debtors. Following deliberations and the consideration of other parties, the Committee determined that FTI Consulting, Inc. was best suited to serve in the role of the GUC Trust Monitor.

the U.S. Treasury to structure, negotiate and finalize (i) the Debtors' exit from bankruptcy and (ii) certain documents that will form the entities necessary to effectuate the exit, including both the GUC and Avoidance Action Trust Agreements. *See* Declaration of Anna Phillips, attached hereto as **Exhibit A**, at ¶. 2. Any suggestion that WTC be replaced at this late stage is misguided because, among other things, creditors will lose the benefit of a trust administrator which has been intimately involved in these cases since their inception and which holds an almost unparalleled amount of institutional knowledge about this case, the important issues relevant to the unsecured creditors, and the intricate distribution mechanics outlined in the GUC Trust Agreement and laboriously negotiated by WTC and the Committee with the Debtors, the Securities and Exchange Commission and the Depository Trust Company. *Id.*

13.    Finally, the Committee submits that the objections filed by DTSC, New York and Salina are based on flawed factual and legal premises. Each of these objectors is concerned that WTC, as the soon-to-be former indenture trustee for bondholders with liquidated and Allowed Claims, is focused on disallowing Disputed Claims. This concern has no basis factually. AP Services LLC, the entity that currently manages the Debtors and has managed such litigation during the chapter 11 case, will continue to manage the GUC Trust and will continue to manage claim allowance litigation after the Effective Date. The concern also has no basis legally. Any estate fiduciary – be it the debtor's management, board of directors, creditors' committee, their professionals or a post-effective date trustee or its professionals – is bound to litigate in good faith against disputed claims so as to ensure that such claims dilute creditor recoveries only to the extent justified by the facts and law supporting such claims. DTSC, New York and Salina are not entitled to object to the appointment of any post-Effective Date administrator out of concern that such administrator will litigate hard against them – that is precisely what any such

8

KL2 2686979.6

administrator is supposed to do. *See Asbestos Settlement Trust v. City of New York (In re Celotex Corp.)*, 487 F.3d 1320, 1325 (11th Cir. 2007) (The purposes of the Trust are essentially to receive and manage the Trust assets, to assume the Debtors' current and future liabilities from asbestos claims, and "to address, liquidate, resolve, and disallow or allow and pay Asbestos Claims.") *quoting In re Celotex Corp.*, 204 B.R. 586, 602 (Bankr. M.D. Fla. 1996).

14.    Therefore, the Plan should be approved with WTC named as GUC Trust Administrator.

## Limited Reservation

15.    Although the Committee supports the Plan as filed and has approved the GUC Trust Agreement, Avoidance Action Trust Agreement and other plan documents in their current form, various parties continue to comment and request changes. The Committee does not expect these changes to be material but nonetheless, the Committee reserves it rights.

16.    In addition, the Committee has not yet seen a draft of the Confirmation Order. The Committee supports the Plan on the condition – and in full expectation – that the Confirmation Order will be reasonably satisfactory to the Committee and will make all findings required by the Bankruptcy Code based on evidence to be presented at the Confirmation Hearing, including without limitation a finding that cash retained by the Debtors after the Effective Date will be sufficient to pay all allowed administrative expenses as required by 11 U.S.C. § 1129(a)(9)(A).

**Conclusion**

17. Subject to the reservations set forth above, the Committee submits that the Plan satisfies all applicable requirements of the Bankruptcy Code. For all of the reasons set forth above, objections to the Plan should be overruled by this Court and the Plan should be confirmed at the Confirmation Hearing.

WHEREFORE, the Committee supports entry of an order (a) confirming the Debtors' Plan; and (b) granting such other or further relief as the Court deems appropriate.

Dated: New York, New York
February 23, 2011

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

By: /s/ Thomas Moers Mayer
Thomas Moers Mayer
Robert T. Schmidt
1177 Avenue of the Americas
New York, New York 10036
(212) 715-3275

Counsel for the Official Committee of Unsecured Creditors of Motors Liquidation Company, et al.

KL2 2686979.6

# **EXHIBIT A**

KRAMER LEVIN NAFTALIS & FRANKEL LLP
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
Thomas Moers Mayer
Robert T. Schmidt

*Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
In re:                                                       :    Chapter 11 Case No.:
                                                             :
MOTORS LIQUIDATION COMPANY., et al.,                         :    09-50026 (REG)
f/k/a General Motors Corp., et al.                           :
                                                             :
                              Debtors.                       :    (Jointly Administered)
                                                             :
------------------------------------------------------------ X

**DECLARATION OF ANNA PHILLIPS IN SUPPORT OF THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS' STATEMENT IN
SUPPORT OF THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF NEW YORK   )

ANNA PHILLIPS, under the penalty of perjury, deposes and says that:

1. I am a Senior Managing Director with FTI Consulting, Inc. (together with its wholly owned subsidiaries, agents, independent contractors and employees, "**FTI**"), a financial advisory services firm with numerous offices throughout the country. I submit this Declaration on behalf of FTI (the "**Phillips Declaration**") in support of the Statement in Support of the Debtors' Amended Joint Chapter 11 Plan (the "**Statement**") filed by the Official Committee of Unsecured Creditors (the "**Committee**") appointed in the chapter 11 cases of

KL2 2688188.2

Motors Liquidation Company, *et al*., (f/k/a General Motors Corp., *et al*.) the debtors and debtors-in-possession herein (collectively, the "**Debtors**").[1]  Unless otherwise stated in this Declaration, I have personal knowledge of the facts hereinafter set forth.

2.    WTC has worked very closely with the Committee's professionals, the Debtors, and the U.S. Treasury to structure, negotiate and finalize (i) the Debtors' exit from bankruptcy and (ii) certain documents that will form the entities implicit in the exit, including both the GUC and Avoidance Action Trust Agreements.  Any suggestion that WTC be replaced at this late stage is misguided because, among other things, creditors will lose the benefit of a trust administrator which has been intimately involved in these cases since their inception and which holds an almost unparalleled amount of institutional knowledge about this case, the important issues relevant to the unsecured creditors, and the intricate distribution mechanics outlined in the GUC Trust Agreement and laboriously negotiated by WTC and the Committee with the Debtors, the Securities and Exchange Commission and the Depository Trust Company.

3.    Moreover, replacing WTC as GUC Trust Administrator at this time would likely cause a delay to the time frame set for the initial distribution of New GM Securities to the Debtors' general unsecured creditors, which is currently expected to take place shortly after the Effective Date.  It is my understanding that the Debtors expect to distribute a significant percentage of the New GM Securities in the initial distribution and since the New GM Stock is already trading, there can be  no doubt that the Debtors' creditors are anxious to receive their *pro rata* share of the New GM Stock.  Accordingly, replacing WTC as GUC Trust Administrator at this time could only serve to delay distributions to the Debtors' unsecured

---

1 Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Statement or in the Plan.

2

creditors unnecessarily.

4. Lastly, I, along with my team at FTI, have been working with WTC for over a year and a half on this case and I believe that WTC has all of the qualifications and experience necessary to serve as administrator of the GUC and Avoidance Action Trusts. In addition, I believe that WTC has the full faith and confidence of the Committee to perform these roles. Accordingly, and for the reasons set forth above, I believe WTC is the right party to serve as administrator to the GUC and Avoidance Action Trusts.

5. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed:     New York, New York
              February 23, 2011

                                         /s/ *Anna Phillips*
                                         Anna Phillips