**Hearing Date and Time: To Be Noticed**
**Objection Deadline: October 12, 2010 (4:00 p.m. EST)**

**Samuel J. Behringer, Jr.**
**Attorney at Law**
**333 McKinley Avenue**
**Grosse Pointe Farms, MI 48236-3420**          **DRAFT 1**
**Telephone: (313) 885-1948**
**Facsimile: (313) 886-6443**

**Attorney for Calvin H. Purnell**
**83rd Omnibus Objection Respondent #62124**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
———————————————————x

In Re                                                    Chapter 11 Case

**MOTORS LIQUIDATION COMPANY**, et al.,          09-50026 (REG)
         f/k/a General Motors Corp., et al.

                     Debtors.                     (Jointly Administered)

———————————————————x

**CALVIN PURNELL RESPONSE AND OBJECTIONS**
**TO DEBTORS' EIGHTY-THIRD OMNIBUS OBJECTION TO CLAIMS**

     Calvin H. Purnell, through his undersigned attorney, states the following response and

objections to the August 20, 2010 Debtors' Eighty-Third Omnibus Objection to Claims.

First Affirmative Defense
**ILLUSORY ASSUMPTION**

     Contrary to the Debtor's assertions in Section (i) of Paragraph 2 and other places in their

motion, the **New GM** does not recognize or pay all or any portion of the past, present or future

health insurance claims of Calvin H. Purnell and his wife.  See, Affidavit, Exhibit 1.

## Second Affirmative Defense
### ALL BENEFITS VESTED PRE-BANKRUPTCY

All benefit and retirement rights due to Mr. Purnell were fully vested in 1989 before his

employment was terminated and before the Debtors filed their instant Chapter 11 bankruptcy

proceeding.   Mr. Purnell thus cannot be defined as a person with "alleged rights which were in

realty unvested (or) are otherwise not the responsibility of the Debtors as purportedly

determined and asserted by the Debtors in Section (ii) of Paragraph 2.

## Third Affirmative Defense
### NO TERMINATION RIGHT RESERVED IN RETIREMENT OFFER AGREEMENT

When the Initial GM prepared the July 1, 2010 retirement offer agreement it jointly

executed with Calvin H. Purnell, it did not reserve therein any right to unilaterally amend

or terminate its promise in that retirement offer agreement to provide lifetime health

insurance to Calvin H. Purnell and his wife.  See, Exhibit 2.

## Fourth Affirmative Defense
### UNSUITABLE FOR CLASS TREATMENT

The termination/elimination of Mr. Purnell's job with the concurrent amendment of

the  General Motors Salaried Health Care Program ("GMSHCO") to provide this early retiree

lifetime health benefits as part of the compensation for his termination was a un-uniform,

individual action which is unsuitable for class treatment/adjudication as an eighty-third

omnibus objection.   Sprague v. General Motors Corp., 133 F3d 388 (1998).

<u>Fifth Affirmative Defense</u>
**PARAGRAPH AVERMENTS**

Mr. Purnell states the following responses and objections to the individual paragraph averments stated in the August 20, 2010 Debtors' Eighty-Third Omnibus Objection to Claims.

**<u>Relief Requested</u>**

1.      Because Mr. Purnell cannot be defined as a person with "liabilities that have been assumed by General Motors, LLC (**'New GM'**)" pursuant to the **Master Purchase Agreement** as asserted by the Debtor in Section <u>(i)</u> of Paragraph 2 and because he also cannot be defined as a person with "alleged rights which were in realty unvested (or) are otherwise not the responsibility of the Debtors as asserted by the Debtors in Section <u>(ii)</u> of Paragraph 2, the purportedly "determined" two alternating basis for the Eighty-Third Omnibus Objection to Claims do not apply to him.

2.      Mr. Purnell denies accuracy of the Debtors' alleged "determination" that his claim should be disallowed and expunged for reason:

A.      Mr. Purnell cannot be defined as a person with "liabilities that have been assumed by General Motors, LLC (**'New GM'**)" pursuant to the **Master Purchase Agreement** as asserted by the Debtor in Section <u>(i)</u> of Paragraph 2 because the **New GM** refuses to recognize and/or pay any of his past, present and future health insurance claims.

B.    Mr. Purnell cannot be defined as a person with "alleged rights which were in realty unvested (or) are otherwise not the responsibility of the Debtors as asserted by the Debtors in Section _(ii)_ of Paragraph 2 because his rights were fully vested on January 22, 1998, (i) before the July 1, 2001 termination/elimination of his job and (ii) before the June 1, 2009 filing of the Debtor's instant Chapter 11 proceeding.

Further responding to the allegations in Paragraph 2, the last sentence averments are false because **New GM** refuses to recognize and/or pay any of Mr. Purnell's past, present and future health insurance claims.

## Jurisdiction

3.    The allegations in Paragraph 3 are admitted.

## Background

4.    Mr. Purnell began his employment at General Motors on January 22, 1968 as a skilled trades employee.    In 1973 he accepted a salaried position because of the better benefits and retirement.    Upon completion of thirty years employment, his benefits and retirement fully vested on January 22, 1998.

In 2001 the original General Motors (**"Initial Debtors"**), in one of a series of **Initial Debtors** initiated group retirement programs targeted to the upper end of the pay scale and persons over 52 years of age, solicited Mr. Purnell to give up his job in exchange for the promise of negotiated long term welfare benefits, to wit; lifetime fully paid health insurance for himself and his wife (plus retirement payments and salary-rate life insurance).

At the age of 57, Mr. Purnell accepted the offer.   A retirement offer agreement was prepared by the **Initial Debtors** and it was signed by both parties.   Mr. Purnell was not involuntarily terminated and the (plan name) was neither amended nor terminated to provide him this lifetime benefit.   The **New GM** did not exist at this point in time.   Mr. Purnell retired from the **Initial Debtors** on July 1, 2001.

Almost 8 years later, on June 1, 2009 (the "**Commencement Date**"), the **Initial Debtors'** then filed this Chapter 11 proceeding.    The Debtors' allegations in this regard in Paragraph 4 are admitted save for the fact that the Initial Debtors, MLC and the New GM all refuse to recognize or pay the early retiree lifetime fully paid health insurance benefits which were negotiated to induce Mr. Purnell to voluntarily retire on July 1, 2001[1].   See, Exhibit  1.

   5.  The allegations in Paragraph 5 are admitted.

   6.  The allegations in Paragraph 6 are admitted.

**The Salaried and Executive Employee Welfare Benefits Claims.**

   7.  The allegation in Paragraph 7 that the Salaried and Executive Employee Welfare Benefits Claims assert claims arising out of either the reduction of elimination of Welfare Benefits prior to the Commencement is denied as being false and misleading because the Welfare Benefits at issue here include the promises made by the **Initial GM** in the July 1,

---

[1]  In Paragraph 2 the Debtors treat the retirement offer agreement negotiated with Mr. Purnell as if it does not even exist.   The Debtors omit this employment agreement from their long self-serving list of the General Motors Salaried Health Care Program, the General Motors Life and Disability Benefits Program of Salaried Employees, the Tuition Assistance Programs for Salaried Employees in the United States, supplemental life and personal liability insurance under the General Motors Supplemental Life Benefits Program for Executive Employees and the Personal Umbrella Liability Insurance Program from their definition of **Benefit Plans** and **Welfare Benefits**.

2010 retirement offer agreement (which does not include a right to terminate clause) to

provide Mr. Purnell and his wife:

    A.      Lifetime fully paid health insurance, and

    B.      Salary-rate life insurance.

**Accrued Benefits Claims**
**Have Been Assumed By New GM**

8.     Contrary to the Debtor's assertions in Section (i) of Paragraph 2, here in

Paragraph 8, and other places in this motion, the New GM does not recognize or pay all or any

portion of the past, present or future health insurance claims of Calvin H. Purnell and his wife.

See, Exhibits 1 and 2.   The allegations in Paragraph 8 are therefore denied for reason they are

incorrect conclusions of fact and law.

**Benefit Modification Claims Should Be Disallowed**
**As Debtors Had Right to Amend or Terminate Each Benefit Plan**

9.     When the Initial GM prepared the July 1, 2010 retirement offer

agreement it jointly executed with Calvin H. Purnell, it did not reserve therein any right to

unilaterally amend or terminate its promise in that retirement offer agreement to provide

lifetime health insurance to Calvin H. Purnell and his wife.   See, Exhibit  2.  The allegations in

Paragraph 9 are therefore denied for reason they are incorrect conclusions of fact and law.

10.     Mr. Purnell became fully vested on January 22, 1998.   No vesting issue

was noticed in the **Initial GM** prepared July 1, 2001 retirement offer agreement.   The

contention that "to vest benefits is to render then unalterable" is admitted.

11.    It is admitted that the Sixth Circuit has recognized that once benefits are

vested, it renders them unalterable.    In this case, the employer, not Mr. Purnell, prepared the

retirement offer agreement (Exhibit 2).

12.    Here, again (footnote 1), the Debtors write without regard to the

retirement offer agreement (having omitted it from their defined terms "Benefit Plans"

and "Welfare Benefits" in Paragraph 2 and having also omitted it from their defined terms

"Benefit Modification Claims" and "Accrued Benefits Claims" in Paragraph 7)  so they can

ignore the fact that the **Initial GM** prepared retirement offer agreement does not include

a termination clause.   The allegations in Paragraph 12 are therefore denied for reason

they are incorrect conclusions of fact and law.

13.    Here, again, the Debtors write without regard to the Initial GM

prepared retirement  offer agreement so they can ignore the fact that it does not include

a termination clause.   If a termination clause has such a great importance that it can be

cited as having appeared in not less than 4 documents, it should have been included in the

retirement offer agreement too so that the employee, be that Mr. Purnell or any of the other

Exhibit "A" employees, could have seen the true one-sided, illusory nature of the agreement,

to wit; they could sign it and give up their jobs only to have GM turn around on some later date

in the future (e.g. after the **Commencement Date**) and unilaterally terminate it thereby

relieving the Initial GM of at least two, if not more, lifetime health insurance liabilities.

14.     Here, again, the Debtors write without regard to the Initial GM prepared retirement  offer agreement so they can ignore the fact that it does not include a termination clause.

15.     After having treated Mr. Purnell's July 1, 2010 retirement offer agreement as if it does not exist (see footnote 1), here in the allegations of Paragraph 15 the Debtors' make reference to such as "supporting agreements" but entirely fail to state that some such supporting agreements, or at least that of Mr. Purnell, do <u>not</u> "reserve" any right in the **Initial GM** to amend or terminate the Benefit Plans " offered under such retirement offer agreements."

16.     Responding to the allegations in Paragraph 16, the Debtors failed to expressly reserve any contractual right in Mr. Purnell's (and other's) retirement offer agreements "to terminate or otherwise modify the Welfare Benefits."   See Exhibit 1. The **Initial GM** offered and accepted to provide Mr. Purnell and his wife early retirement <u>lifetime</u> fully paid health insurance and the word lifetime precludes unilaterally terminating the Welfare Benefits.   If this is an ambiguity, the Debtors, who wrote the contract, have to live with it.  <u>In re Doskicil Cos.</u>, 130 B.R. 870 (Bankr. D. Kan. 1991), where a reservation was made, does not apply in this situation.

17.     The allegations in Paragraph 17 are denied for reason they are incorrect

conclusions of fact and law.

### The Debtors Have No Liability for the
### Salaried and Executive Employee Welfare Benefits Claims

18.     The allegations in Paragraph 18 are denied for reason they are incorrect

conclusions of fact and law.

### The Relief Requested Should be Approved by the Court

19.     The allegations in Paragraph 19 are denied for reason they are incorrect

conclusions of fact and law.

20.     The allegations in Paragraph 20 are denied for reason they are incorrect

conclusions of fact and law.

### Notice

21.     The allegations in Paragraph 21 are admitted.

22.     The allegations in Paragraph 22 are admitted.

### MR. PURNELL'S CONCLUSION

Mr. Purnell's retirement and benefits fully vested on January 22, 1998.   The

July 1, 2001 retirement offer agreement, entirely prepared by the **Debtors**, induced Mr. Purnell

to give up his job in exchange for fully paid lifetime health insurance benefits and salary-rate

life insurance for Mr. Purnell and his wife.  The **Debtors** failed to include any termination clause

in the retirement offer agreement.  The Debtors entirely prepared the retirement offer

agreement.   The **Debtors** now refuse to pay the lifetime health insurance benefits and also

refuse to provide salary rate life insurance as required by the retirement offer agreement and

seek to avoid same by this 11 USC 502 motion.


In Paragraph 2, the **Debtors** write they have "determined" that the Proofs of

Claim which this 83rd Omnibus Objection addresses "assert claims that ...**(i)** relate to liabilities

that have been assumed by the ... **New GM** pursuant to the terms of ... the **Master Purchase**

**Agreement**..."   The last sentence of Pargraph 2 repeats this defination (i) "determination".

However, nothing could be further from the truth.   With reference to Exhibit 1 annexed hereto,

the **New GM** has not assumed and does not and will not pay the lifetime health insurance

benefits called for in the Debtor prepared retirement offer agreement.   Mr. Purnell is therefore

not  within this element of the Debtors' defination (i) "determination".


In Paragraph 2, the **Debtors** also write they have "determined" that the Proofs of

Claim which this 83rd Omnibus Objection addresses "assert claims that ...**(ii)** relate to alleged

rights to benefits which were in reality unvested, and as described herein, are otherwise not

the responsibility of the Debtors (emphasis added)."   Well, as pointed out above, it is

irrefutable that Mr. Purnell's retirement and benefit rights fully vested on January 22, 1998,

years before the Commencement Date of this Chapter 11 bankruptcy.   Mr. Purnell is therefore

not  within this element of the Debtors' defination (ii) "determination".


The plain and simple truth is that the Debtors have failed to establish that Mr.

Purnell's claim is within the defination (i) and (ii) "determination" the Debtors' have set up to

seek to strike the claim of Mr. Purnell and the other creditors involved in the 83rd Omnibus

Objection.  However, since the (i) and (ii) premises for Mr. Purnell's inclusion in the 83rd

Omnibus Objection are not factually true, the Debtors' motion brought pursuant to 11 USC 502

must fail.  The New GM does <u>not</u> recognize the retirement offer agreement.   Mr. Purnell's

became fully vested on January 22, 1998, years before the Commencement Date.   And, the

retirement offer agreement has no termination clause.


WHEREFORE, Respondent Calvin H. Purnell demands the August 20, 2010

Debtors' Eighty-Third Omnibus Objection to Claims be denied as to him and every listed

creditors in its Exhibit "A" with prejudice against the Debtors and for such other and further

relief as is just or appropriate.


**Samuel J. Behringer, Jr.**
**Attorney at Law**
**333 McKinley Avenue**
**Grosse Pointe Farms, MI 48236-3420**
**Telephone: (313) 885-1948**
**Facsimile: (313) 886-6443**

**Attorney for Calvin H. Purnell**
**83rd Omnibus Objection Respondent #62124**

**Attorney at Law**
**333 McKinley Avenue**
**Grosse Pointe Farms, MI 48236-3420**
**Telephone: (313) 885-1948**
**Facsimile: (313) 886-6443**

**Attorney for Calvin H. Purnell**
**83rd Omnibus Objection Respondent #62124**

Sam,
I have highlighted some changes. GM, from the time I worked there, never had fully paid health care. We, the employees, always had a deduction for health care. The last two years I had GM health care, during retirement, the cost for Carol and I was 121 per month for BC/BS PPO. The vision was 2 and then 6 dollars per month and the dental care was 15 and then 18 per month.

The life insurance was to be paid fully by GM for the base salary amount upon retirement. That was then reduced to 10,000 with the option offered to buy additional insurance from MetLife to make up the reduction. But, since most of us were in our 60's the cost was high.

The claim that the retirees were asked to fill out was to cover the additional cost of having to pay for the Medicare Gap coverage, the vision care and the dental care.  Since we were in our 60's the costs were high for all of these. We are supposed to need more healthcare than a younger person.

I'm still looking for the other paperwork. Since 2001 I have had lots of paper sent from GM and I have a stack to go through. I find it. It  just may take a little time.
Thanks,
Calvin