HEARING DATE AND TIME: March 29, 2011 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: March 22, 2011 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :     Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :     09-50026 (REG)
         f/k/a General Motors Corp., et al. :
                                          :
                    Debtors.              :     (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

### NOTICE OF DEBTORS' OBJECTION TO PROOFS OF CLAIM
### NO. 12903 AND 12904 FILED BY OHIO NATIONAL LIFE INSURANCE COMPANY

**PLEASE TAKE NOTICE** that on February 24, 2011, Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(the "**Debtors**"), filed an objection to proofs of claim numbers 12903 and 12904 filed by Ohio

National Life Insurance Company (the "**Objection**"), and that a hearing (the "**Hearing**") to

consider the Objection will be held before the Honorable Robert E. Gerber, United States

Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, New York, New York 10004, on **March 29, 2011 at 9:45**

**a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by

registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest,

on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard

copy delivered directly to Chambers), in accordance with the customary practices of the

Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance

with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors,

767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin,

Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401

South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas

Morrow); (iii) General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn:

Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the

United States Department of the Treasury, One World Financial Center, New York, New York

10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500

Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.);

(vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor,

New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.);

(vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured

creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers

Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.);

(viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S.

Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007

(Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered,

attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375

Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and

Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:

Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); and (xi) Stutzman, Bromberg, Esserman

& Plifka, a professional corporation, attorneys for Dean M. Trafelet in his capacity as the legal

representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200,

Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.), so as to

be received no later than **March 22, 2011 at 4:00 p.m. (Eastern Time)** (the "**Response

Deadline**").

                    **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Objection or any claim set forth thereon, the Debtors may, on or after

the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the

proposed order annexed to the Objection, which order may be entered with no further notice or

opportunity to be heard offered to any party.

Dated:  New York, New York
        February 24, 2011

                                        /s/ Joseph H. Smolinsky
                                        Harvey R. Miller
                                        Stephen Karotkin
                                        Joseph H. Smolinsky

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | **Chapter 11 Case No.** |
|  | : |  |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : |  |
|  | : |  |
| Debtors. | : | **(Jointly Administered)** |
|  | : |  |

------------------------------------------------------------x

## DEBTORS' OBJECTION TO PROOFS OF CLAIM NO. 12903 AND 12904 FILED BY OHIO NATIONAL LIFE INSURANCE COMPANY

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

### Relief Requested

1.      Pursuant to section 502(b) of title 11, United States Code (the

"**Bankruptcy Code**"), and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), the Debtors object to proofs of claim numbers 12903 and 12904 filed by

Ohio National Life Insurance Company ("**Ohio National**") that assert claims against MLC and

MLCS, LLC (f/k/a Saturn, LLC) arising under certain secured equipment notes.  Copy of proofs of claim 12903 and 12904 are annexed hereto as **Exhibit "A."**

## Jurisdiction

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

3.      On June 1, 2009, four of the Debtors (the "**Initial Debtors**")[1] commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code, and on October 9, 2009, two additional Debtors (the "**REALM/ENCORE Debtors**")[2] commenced with this Court voluntary cases under chapter 11 of the Bankruptcy Code, which cases are jointly administered with those of the Initial Debtors under Case Number 09-50026 (REG).  On September 15, 2009, the Initial Debtors filed their schedules of assets and liabilities and statements of financial affairs, which were amended on October 4, 2009.  On October 15, 2009, the REALM/ENCORE Debtors filed their schedules of assets and liabilities and statements of financial affairs.

4.      On September 16, 2009, this Court entered an order (ECF No. 4079) establishing November 30, 2009 as the deadline for each person or entity to file a proof of claim in the Initial Debtors' cases, including governmental units.  On December 2, 2009, this Court entered an order (ECF No. 4586) establishing February 1, 2010 as the deadline for each person or entity to file a proof of claim in the REALM/ENCORE Debtors' cases (except governmental

---

[1]   The Initial Debtors are MLC (f/k/a General Motors Corporation), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), and MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.).

[2]   The REALM/ENCORE Debtors are Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc.

units, as defined in section 101(27) of the Bankruptcy Code, for which the Court established

April 16, 2010 as the deadline to file proofs of claim).

### **Proofs of Claim 12903 and 12904**

5.       Ohio National asserts a claim for $282,068.25 against MLC and MLCS,

LLC arising from certain secured equipment notes issued pursuant to that certain 1991-A Pass

Through Trust, Series 1991-A.  The secured notes were part of a sale-lease back structure, by

which MLC and MLCS, LLC financed the acquisition of certain manufacturing equipment.  The

underlying collateral of the notes were the leases and rentals of the equipment by MLC and

MLCS, LLC back from the financing entity.

6.       As part of the Debtors' sale of substantially all their assets to General

Motors, LLC ("**New GM**"), New GM assumed the underlying leases and rentals securing the

secured notes and, in turn, assumed the obligations under the notes pursuant to the terms of that

certain Amended and Restated Master Sale and Purchase Agreement (the "**Master Purchase**

**Agreement**"), dated as of June 26, 2009, by and among General Motors Corporation, Saturn

LLC, Saturn Distribution Corporation, Chevrolet-Saturn of Harlem, Inc., and New GM.

7.       The Master Purchase Agreement provides, at Article II (*Purchase and*

*Sale*), Section 2.1 (*Purchase and Sale of Assets; Assumption of Liabilities*):

> On the terms and subject to the conditions set forth in this
> Agreement, other than as set forth in Section 6.30, Section
> 6.34 and Section 6.35, at the Closing, Purchaser shall (a)
> purchase, accept and acquire from Sellers, and Sellers shall
> sell, transfer, assign, convey and deliver to Purchaser, free
> and clear of all Encumbrances (other than Permitted
> Encumbrances), Claims and other interests, the Purchased
> Assets and (b) assume and thereafter pay or perform as and
> when due, or otherwise discharge, all of the Assumed
> Liabilities.

8.      Section 2.2(a) of the Master Purchase Agreement (*Purchased and*

*Excluded Assets*) provides in pertinent part:

> (a)      The "Purchased Assets" shall consist of the right, title and interest that Sellers possess and have the right to legally transfer in and to all of the properties, assets, rights, titles and interests of every kind and nature, owned, leased, used or held for use by Sellers (including indirect and other forms of beneficial ownership), whether tangible or intangible, real, personal or mixed, and wherever located and by whomever possessed, assets, rights, titles and interests:

> > (x)      . . . all Contracts, other than the Excluded Contracts (collectively, the "Purchased Contracts"), including, for the avoidance of doubt . . . (B) any Executory Contract designated as an Assumable Executory Contract as of the applicable Assumption Effective Date.

9.      Section 2.3(a) of the Master Purchase Agreement (*Assumed and Retained*

*Liabilities*) provides in pertinent part:

> (a)      The "Assumed Liabilities" shall consist only of the following Liabilities of Sellers:

> > (ii)      all Liabilities under each Purchased Contract;

> > (iv)      all Cure Amounts under each Assumable Executory Contract that becomes a Purchased Contract;

10.     The term "Liabilities" is defined in the recitals to the Master Purchase

Agreement as follows:

> "Liabilities" means any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on or off-balance sheet or otherwise, or due or to become due,

including Indebtedness and those arising under any Law,
Claim, Order, Contract or otherwise.

11.     Pursuant to the Master Purchase Agreement, the collateral securing notes
are "Purchased Contracts" and the obligations under the secured notes are "Liabilities" under a
"Purchased Contract."  The Debtors have conferred with New GM who has indicated that it has
satisfied all outstanding obligations under the secured notes.

### The Relief Requested Should Be Approved by the Court

12.     A filed proof of claim is "deemed allowed, unless a party in interest . . .
objects."  11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential
allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See
In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC),
2010 WL 234827 (S.D.N.Y. Jan. 22, 2010); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No.
02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re
Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).  Section 502(b)(1) of the
Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that
"such claim is unenforceable against the debtor and property of the debtor, under any agreement
or applicable law."  11 U.S.C. § 502(b)(1).

13.     In the first instance, the Debtors believe that any outstanding obligations
under the secured notes have been satisfied in full by New GM.  To the extent any obligations
remain, such obligations are not the responsibility of MLC or the Debtors; but rather have been
assumed by New GM as described herein.  Further, paragraph 26 of the Order approving the
Master Purchase Agreement (ECF No. 2968) provides that:

Except as provided in the [Master Purchase Agreement] or
this Order, after the Closing, the Debtors and their estates
shall have no further liabilities or obligations with respect
to any Assumed Liabilities other than certain Cure

Amounts as provided in the [Master Purchase Agreement], and all holders of such claims are forever barred and estopped from asserting such claims against the Debtors, their successors or assigns, and their estates.

14.    Based upon the foregoing, the Debtors request that the Court disallow and expunge proofs of claim 12903 and 12904 in their entirety.

## Notice

15.    Notice of this objection has been provided to Ohio National and parties in interest in accordance with the Fifth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated January 3, 2011 (ECF No. 8360).  The Debtors submit that such notice is sufficient and no other or further notice need be provided.

16.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
       February 24, 2011

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**Exhibit "A"**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor** (Check Only One)    Case No

☒ Motors Liquidation Company (f/k/a General Motors Corporation)    09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)    09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)    09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc )    09-13558 (REG)

Your Claim is Scheduled As Follows

NOTE  *This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5)  All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property)    THE OHIO NATIONAL LIFE INSURANCE COMPANY

**Name and address where notices should be sent**

THE OHIO NATIONAL LIFE INSURANCE COMPANY
PO BOX 237
ATTN MAIL CODE 54
CINCINNATI  OH 45201-0237

Telephone number
Email Address

☐ Check this box to indicate that this claim amends a previously filed claim

**Court Claim Number:** _____
*(If known)*

Filed on _____

*[stamp: THE GARDEN CITY GROUP INC.  OCT 19 2009]*

If an amount is identified above you have a claim scheduled by one of the Debtors as shown  (This scheduled amount of your claim may be an amendment to a previously scheduled amount )  If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form  EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**Name and address where payment should be sent** (if different from above)

FILED - 12903
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

**1  Amount of Claim as of Date Case Filed, June 1, 2009**    $ 282,068.25

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2  Basis for Claim:**  Secured Equipment Notes  CUSIP# 37045GAB9
(See instruction #2 on reverse side )

**3  Last four digits of any number by which creditor identifies debtor** _____

**3a  Debtor may have scheduled account as** _____
(See instruction #3a on reverse side )

**4  Secured Claim** (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information  Note  Same claim also filed under Case 09-50027

**Nature of property or right of setoff:**  ☐ Real Estate  ☐ Motor Vehicle  ☒ Equipment  ☐ Other
**Describe:**  Assignment of Leases + Rentals from GM and Saturn

Value of Property  $ _____  Annual Interest Rate ___ %

Amount of arrearage and other charges as of time case filed included in secured claim, if any  $ _____

**Basis for perfection:** _____

**Amount of Secured Claim:** $ 282,068.25  **Amount Unsecured** $ _____

**6  Credits**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7  Documents**  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5  Amount of Claim Entitled to Priority under 11 U.S.C § 507(a).**
If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) § 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

**Amount entitled to priority**

$ _____

* Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**Date** 10/15/09

**Signature**  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any

*[signature]* Joyce M Fader, Assistant Secretary

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim  Fine of up to $500 000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571*

Modified B10 (GCG) (12/08)



AM -278-00351-0
003  46

3644
Page 2 of 100

**ACCOUNT NUMBER: 19-6545**
**OHIO NATIONAL LIFE INSURANCE CO.**

This statement is for the period from
September 1, 2009 to September 30, 2009

## ASSET DETAIL (continued)

| Shares/ Par | Security Description | CUSIP | Market Value/ Price | Cost Basis | Yield At Market | Est Annual Inc |
|---|---|---|---|---|---|---|
| **tocks** | | | | | | |
| 100 000 | Kansas City Life Ins CO<br>Account 19-6545<br>KCLI | 484836101 | 3,114 00<br>31 140 | 0 25 | 3 47 | 108 00 |
| 89 000 | Lincoln Natl Corp Ind<br>Account 19-6545<br>LNC | 534187109 | 2,305 99<br>25 910 | 0 22 | 0 15 | 3 56 |
| 76 000 | Nortel Networks Corp<br>Account 19-6545<br>NRTLQ | 656568508 | 6 61<br>0 087 | 2 00 | 0 00 | 0 00 |
| 100 000 | Presidential Life Corp<br>Account 19-6545<br>PLFE | 740884101 | 1,036 00<br>10 360 | 0 14 | 2 41 | 25 00 |
| 100 000 | Protective Life Corp<br>Account 19-6545<br>PL | 743674103 | 2,142 00<br>21.420 | 0.25 | 2 24 | 48 00 |
| 100 000 | Travelers Cos Inc<br>Account 19-6545<br>TRV | 89417E109 | 4,923 00<br>49 230 | 0 04 | 2 44 | 120 00 |
| 4,214 000 | U S Airways Group Inc<br>Account 19-6545<br>LCC | 90341W108 | 19,805 80<br>4 700 | 0 00 | 0 00 | 0 00 |
| 100 000 | Unitrin Inc<br>Account 19-6545<br>UTR | 913275103 | 1,949 00<br>19 490 | 0 47 | 4.10 | 80 00 |
| 100 000 | U N U M Provident Corp<br>Account 19-6545<br>UNM | 91529Y106 | 2,144 00<br>21 440 | 0 20 | 1 54 | 33 00 |
| 73,847 000 | U S Internetworking Inc<br>Account 19-6545<br>USIX | 917311805 | 7 38<br>0 000 | 1 00 | 0 00 | 0 00 |
| 82,005 000 | World Color Press Inc US<br>Account 19-6545<br>WCU | 981442106 | 832,809 98<br>10.155 | 4,330,906 83 | 0 00 | 0 00 |
| | **Total Stocks** | | **$872,350 58** | **$4,331,020 06** | | **$417 56** |
| **xable Bonds** | | | | | | |
| 1,282,000 000 | Piedmont Aviat<br>Ser A<br>10 050 01/15/2003 Account 19-6545 | 720101CA0 | 1,116,865 58<br>87 119 | 1 00 | 11 54 | 128,841 00 |
| 1,441,000 000 | Piedmont Aviat<br>Ser C<br>10 050 01/15/2003 Account 19-6545 | 720101CC6 | 1,255,384 79<br>87 119 | 1 00 | 11 54 | 144,820 50 |
| (282,068 250) | General Motors<br>Ser 9 1 A 2<br>Default 07/02/2009 Account 19-6545 | 37045GAB9 | 282,068 25<br>100.000 | 0 08 | 0 00 | 0 00 |
| 9,925,000 000 | Bear Stearns CO Inc<br>Unsub<br>7 825 12/07/2009 Account 19-6545 | 073902BR8 | 10,042,412 75<br>101 183 | 11,774,722 25 | 7 54 | 758,781 25 |
| 297,894 080 | Humpuss Funding Corp<br>Priv Placement<br>7 720 12/15/2009 Skg Fd Account 19-6545 | 445533AA0 | 239,804 73<br>80 500 | 0 15 | 9 59 | 22,997 42 |

37045G___( )



*PROSPECTUS*

## $519,832,414

# General Motors Corporation
# 1991-A Pass Through Trusts
### PASS THROUGH CERTIFICATES, SERIES 1991-A

*Each Pass Through Certificate offered hereby will represent a fractional undivided interest in one of two separate General Motors Corporation 1991-A Pass Through Trusts (the "Pass Through Trusts") to be formed pursuant to two trust agreements by and among General Motors Corporation ("General Motors"), its wholly-owned subsidiary Saturn Corporation ("Saturn"), and The First National Bank of Chicago (the "Pass Through Trustee"), as trustee under each Pass Through Trust. The property of the Pass Through Trusts will consist of equipment notes (the "Equipment Notes") issued on a nonrecourse basis by certain owner trustees in connection with six separate leveraged lease transactions to finance not more than 80% of the equipment cost to such owner trustees of ten groups of certain automotive production equipment (or, when relevant, Saturn's rights in respect of certain automotive production equipment under a certain industrial revenue bond lease) (each an "Equipment Group" and collectively, the "Equipment") that will be acquired by such owner trustees from General Motors or Saturn and leased to General Motors or Saturn (collectively, the "Lessees"). Amounts payable under the leases will be at least sufficient to pay in full when due all payments of principal, of, premium, if any, and interest on the Equipment Notes held in the Pass Through Trusts. However, neither the Pass Through Certificates nor the Equipment Notes are obligations of, or guaranteed by, the Lessees.*

*Each Equipment Note will be issued as part of a single series under an indenture supplement which relates to a single Equipment Group and which is supplemental to one of six indentures. The Equipment Notes acquired by the Pass Through Trusts will mature on or before the final distribution date of the Pass Through Certificates issued by such Pass Through Trust. The series of Equipment Notes issued with respect to each Equipment Group will be secured by a security interest in such Equipment Group and in the lease and lease supplement relating thereto, including the right to receive rentals payable by General Motors or Saturn in respect of such Equipment Group pursuant to such lease and lease supplement. In addition, General Motors will irrevocably and unconditionally guarantee all lease obligations of Saturn for Equipment Groups leased to Saturn.*

*Interest paid on the Equipment Notes held in the Pass Through Trusts will be passed through to the Certificateholders of such Pass Through Trusts on January 2 and July 2 of each year, commencing on January 2, 1992, at the rate per annum set forth below for such Pass Through Trust until the final distribution date as set forth below for such Pass Through Trust. Principal paid on the Equipment Notes held in each Pass Through Trust will be passed through to the Certificateholders in each such Pass Through Trust in scheduled amounts on January 2 or July 2, or both, of each year, commencing on January 2, 1992 and January 2, 2000, respectively, and continuing until the final distribution date set forth below for such Pass Through Trust. The Equipment Notes may be prepaid (or purchased in lieu of prepayment) under certain circumstances.*

*Certain limitations apply to the acquisition and holding of Pass Through Certificates by an employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or an individual retirement account or employee benefit plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code"). Certain governmental and non-electing church plans, however, are not subject to Title I of ERISA or Section 4975 of the Code and, therefore, may invest in the Pass Through Certificates. See "ERISA Considerations."*

**THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

| Pass Through Certificates | Principal Amount | Interest Rate | Final Distribution Date | Price to Public (1) (2) |
|---|---|---|---|---|
| 1991-A1 . . . . . . . . . . | $247,880,164 | 8.17% | January 2, 2000 | 100% |
| 1991-A2 . . . . . . . . . | $271,952,250 | 8.95% | July 2, 2009 | 100% |

*(1) Plus accrued interest, if any, at the applicable interest rate from September 27, 1991.*

*(2) The underwriting commission varies by Pass Through Trust and aggregates $2,815,162, which constitutes 542% of the principal amount of the Pass Through Certificates. The underwriting commissions and certain other expenses, estimated at $659,958, will be payable by the owner trustees in the leveraged lease transactions (other than certain expenses to be paid directly by the Lessees). All of the proceeds from the sale will be used to purchase the Equipment Notes from the owner trustees.*

*The Pass Through Certificates are offered by the Underwriters, subject to prior sale, when, as and if accepted by the Underwriters, and subject to approval of certain legal matters by counsel for the Underwriters. It is expected that delivery of the Pass Through Certificates in book entry form will be made on or before September 27, 1991 through the facilities of The Depository Trust Company, against payment therefor in immediately available funds.*

## MORGAN STANLEY & CO.
### Incorporated

*September 24, 1991*

No person has been authorized to give any information or to make any representations other than those contained or incorporated by reference in this Prospectus in connection with the offer contained in this Prospectus, and, if given or made, such information or representations must not be relied upon as having been authorized by General Motors, Saturn or the Underwriters. This Prospectus does not constitute an offer to sell or the solicitation of an offer to buy securities in any jurisdiction to any person to whom it is unlawful to make such offer or solicitation. Neither the delivery of this Prospectus nor any sale made hereunder shall, under any circumstances, create an implication that there has been no change in the affairs of General Motors or Saturn since the date hereof or that the information contained herein is correct at any time subsequent to the date hereof.

---

## TABLE OF CONTENTS

| | Page |
|---|---|
| AVAILABLE INFORMATION | 3 |
| REPORTS TO CERTIFICATEHOLDERS BY THE TRUSTEE | 3 |
| DOCUMENTS INCORPORATED BY REFERENCE | 3 |
| SUMMARY | 4 |
| FORMATION OF THE PASS THROUGH TRUSTS | 11 |
| DESCRIPTION OF PAYMENT FLOWS | 11 |
| USE OF PROCEEDS | 13 |
| THE LESSEES | 13 |
| RATIOS OF EARNINGS TO FIXED CHARGES | 14 |
| DESCRIPTION OF THE PASS THROUGH CERTIFICATES | 14 |
| DESCRIPTION OF THE EQUIPMENT NOTES | 26 |
| CERTAIN FEDERAL INCOME TAX CONSEQUENCES | 39 |
| CERTAIN ILLINOIS TAXES | 42 |
| ERISA CONSIDERATIONS | 42 |
| UNDERWRITING | 43 |
| LEGAL OPINIONS | 44 |
| EXPERTS | 44 |
| GLOSSARY OF CERTAIN TERMS | I-1 |

IN CONNECTION WITH THIS OFFERING, THE UNDERWRITERS MAY OVER-ALLOT OR EFFECT TRANSACTIONS WHICH STABILIZE OR MAINTAIN THE MARKET PRICES OF THE PASS THROUGH CERTIFICATES AT LEVELS ABOVE THOSE WHICH MIGHT OTHERWISE PREVAIL IN THE OPEN MARKET. SUCH TRANSACTIONS MAY BE EFFECTED IN THE OVER-THE-COUNTER MARKET OR OTHERWISE. SUCH STABILIZING, IF COMMENCED, MAY BE DISCONTINUED AT ANY TIME.

## AVAILABLE INFORMATION

General Motors is subject to the information requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and in accordance therewith files reports, proxy statements and other information with the Securities and Exchange Commission (the "Commission") Such reports, proxy statements and other information filed by General Motors with the Commission can be inspected and copied at the Public Reference Section of the Commission, Room 1228, Judiciary Plaza, 450 Fifth Street, N W , Washington, D.C. 20549, and at the public reference facilities of the Commission's Regional Offices at Room 3190, Kluczynski Building, 230 South Dearborn Street, Chicago, Illinois 60604, and Room 1400, 75 Park Place, New York, New York 10007. Copies of such material may be obtained by mail from the Public Reference Section of the Commission at 450 Fifth Street, N W , Washington, D.C 20549, at prescribed rates Reports, proxy statements and other information concerning General Motors can also be inspected at the offices of (i) the New York Stock Exchange, Inc., 20 Broad Street, New York, New York 10005, (ii) the Midwest Stock Exchange, Inc , 120 South LaSalle Street, Chicago, Illinois 60603, (iii) the Pacific Stock Exchange, Inc., 233 South Beaudry Street, Los Angeles, California 90012 and 301 Pine Street, San Francisco, California 94104 and (iv) the Philadelphia Stock Exchange, Inc., 1900 Market Street, Philadelphia, Pennsylvania 19103

This Prospectus constitutes a part of a Registration Statement filed by General Motors and Saturn with the Commission under the Securities Act of 1933, as amended (the "Securities Act of 1933") This Prospectus omits certain of the information contained in the Registration Statement in accordance with the rules and regulations of the Commission Reference is hereby made to the Registration Statement and related exhibits for further information with respect to General Motors and Saturn. Statements contained herein concerning the provisions of any document are not necessarily complete and, in each instance, reference is made to the copy of such document filed as an exhibit to the Registration Statement or otherwise filed with the Commission Each such statement is qualified in its entirety by such reference

## REPORTS TO CERTIFICATEHOLDERS BY THE TRUSTEE

The First National Bank of Chicago, as trustee for the holders of the Pass Through Certificates, pursuant to the Pass Through Trust Agreements by and among General Motors, Saturn and the Pass Through Trustee, will provide to Certificateholders certain periodic statements concerning distributions made with respect to each Pass Through Trust See "Description of the Pass Through Certificates — Reports to Certificateholders "

## DOCUMENTS INCORPORATED BY REFERENCE

General Motors' Annual Report on Form 10-K for the year ended December 31, 1990, its Quarterly Reports on Form 10-Q for the quarters ended March 31, 1991 and June 30, 1991, and its Current Reports on Form 8-K dated February 6, 1991 and March 6, 1991 heretofore filed with the Commission pursuant to the Exchange Act are hereby incorporated by reference

All documents filed by General Motors pursuant to Sections 13(a), 13(c), 14 or 15(d) of the Exchange Act subsequent to the date of this Prospectus and prior to the termination of the offering of the Pass Through Certificates offered hereby shall be deemed to be incorporated by reference in this Prospectus and to be a part hereof from the date of filing of such documents Any statement contained herein or in a document incorporated or deemed to be incorporated by reference herein shall be deemed to be modified or superseded for purposes of this Prospectus to the extent that a statement contained herein or in any other subsequently filed document which also is or is deemed to be incorporated by reference herein supersedes or supersedes such statement. Any such statement so modified or superseded shall not be deemed, except as so modified and superseded, to constitute a part of this Prospectus

General Motors will provide without charge to each person to whom this Prospectus is delivered, upon the written or oral request of such person, a copy of any or all of the documents which have been or may be incorporated herein by reference (other than exhibits unless specifically incorporated therein). Requests for such documents should be directed to General Motors, Room 11-128, General Motors Building, 3044 West Grand Boulevard, Detroit, Michigan 48202-3091 (Telephone Number (313) 556-2044).

3

## SUMMARY

*The following summary of provisions relating to the Pass Through Certificates does not purport to be complete and is qualified in its entirety by the detailed information appearing elsewhere or incorporated by reference in the Prospectus*

Glossary .. ........ . . .   Included at the end of this Prospectus as Appendix I is a Glossary of certain of the significant defined terms used herein.

Pass Through Trusts. .. ...........   Each of the two General Motors Corporation 1991-A Pass Through Trusts (the "Pass Through Trusts") is to be formed pursuant to one of two separate Pass Through Trust Agreements (the "Agreements") by and among General Motors Corporation ("General Motors"), its wholly-owned subsidiary Saturn Corporation ("Saturn") and The First National Bank of Chicago (the "Pass Through Trustee"), as trustee under each Pass Through Trust. Each Pass Through Trust will be a separate entity.

Pass Through Trust Property.   .   ...   The property of the Pass Through Trusts will consist of equipment notes (the "Equipment Notes") issued on a nonrecourse basis by the Owner Trustees in connection with six separate leveraged lease transactions to finance not more than 80% of the equipment cost to such Owner Trustees, on behalf of certain Owner Participants, of ten groups of automotive production equipment (or, when relevant, Saturn's rights in respect of certain automotive production equipment under a certain industrial development revenue bond lease) (each an "Equipment Group" and collectively, the "Equipment") which will be acquired by such Owner Trustees from General Motors or Saturn and leased to General Motors or Saturn (General Motors and Saturn in their capacity as lessees are referred to herein collectively as the "Lessees"). Each Equipment Note will be issued as part of a single series under an indenture supplement (an "Indenture Supplement") which relates to a single Equipment Group and which is supplemental to one of six indentures (each, an "Indenture").

Each Equipment Group comprises one or more items of automotive production equipment or groups of items of automotive production equipment which constitute an integrated system of automotive production equipment (each item or integrated system, an "Item"). Additional information concerning the Equipment Groups is contained below in "Use of Proceeds." Each Pass Through Trust will acquire those Equipment Notes having an interest rate corresponding with the interest rate applicable to the Pass Through Certificates, Series 1991-A (the "Pass Through Certificates"), that will be issued by such Pass Through Trust. The Equipment Notes acquired by each Pass Through Trust will mature on or before the final distribution date applicable to the Pass Through Certificates issued by such Pass Through Trust. The aggregate principal amount of the Equipment Notes held in each Pass Through Trust will be the same as the aggregate principal amount of the Pass Through Certificates issued by that Pass Through Trust.

4

Pass Through Certificates Offered;

| | |
|---|---|
| Book-Entry Registration    .  .... | Each Pass Through Certificate will represent a fractional undivided interest in the related Pass Through Trust. The Pass Through Certificates will be issued in fully registered form only. See "Description of the Pass Through Certificates — General." The Pass Through Certificates will be registered in the name of Cede & Co. ("Cede"), as the nominee of The Depository Trust Company ("DTC") No person acquiring an interest in the Pass Through Certificates will be entitled to receive a definitive certificate (a "Registered Certificate") representing such person's interest in the Pass Through Trust, except in the event that Registered Certificates are issued under the limited circumstances described herein. See "Description of the Pass Through Certificates — Book-Entry Registration" and "— Registered Certificates." |
| Denominations  .........  ........ | The Pass Through Certificates of each Pass Through Trust will be issued in minimum denominations of $1,000 and any integral multiple of $1,000 in excess thereof. See "Description of the Pass Through Certificates — General " |
| Regular Distribution Dates ..      .  . | January 2 and July 2. |
| Special Distribution Dates .      .  . | The second day of any month |
| Record Dates .   .   .  ..... | The fifteenth day preceding a Regular Distribution Date or Special Distribution Date. |
| Distributions .    .   . | Payments of interest on the Equipment Notes held in each Pass Through Trust are scheduled to be received in specified amounts by the Pass Through Trustee of such Pass Through Trust on January 2 or July 2 of each year, commencing January 2, 1992, and are to be distributed to the Certificateholders of such Pass Through Trust on such dates Payments of principal on the Equipment Notes held in each Pass Through Trust are scheduled to be received in specified amounts by the Pass Through Trustee of such Pass Through Trust on January 2 or July 2, or both, of each year, commencing January 2, 1992 in the case of Pass Through Trust-A1 and January 2, 2000 in the case of Pass Through Trust-A2 and are to be distributed to the Certificateholders of each Pass Through Trust on the corresponding Regular Distribution Dates. Payments of principal, premium, if any, and interest on the Equipment Notes held in each Pass Through Trust resulting from prepayments thereof, if any, will be distributed on a Special Distribution Date after not less than 20 days' notice from the Pass Through Trustee to the Certificateholders of such Pass Through Trust. For a discussion of distributions upon an Event of Default, see "Description of the Pass Through Certificates — Events of Default and Certain Rights Upon an Event of Default." |
| Method of Distributions .      .  .  ... | So long as the Pass Through Certificates are registered in the name of Cede as nominee of DTC, distributions by the Pass Through Trustee will be made in same-day funds to DTC, which will in turn make distributions to participants in DTC ("DTC Participants") in clearinghouse or next-day funds The final distribution of principal with respect to the Pass Through |

5

Certificates of any Pass Through Trust will be made by DTC to DTC Participants in same-day funds. Responsibility for distributions by DTC Participants to beneficial owners of the Pass Through Certificates will be the responsibility of such DTC Participants and will be made in accordance with customary industry practices See "Description of the Pass Through Certificates — Payments and Distributions." At such time, if any, as Registered Certificates are issued representing the Pass Through Certificates and are not registered in the name of Cede, as nominee for DTC, distributions by the Pass Through Trustee to Certificateholders, other than the final distribution, will be made by check mailed to each Certificateholder of record on the applicable record date at its address appearing on the register. The final distribution with respect to the Pass Through Certificates of any Pass Through Trust will be made only upon surrender and presentation thereof at the office or agency of the Pass Through Trustee. See "Description of the Pass Through Certificates — Payments and Distributions."

**Special Payment Upon Unavailability of Items . . . . . . . . . . . . . . . . .**    Certain Items will not be delivered until after the issuance of the Pass Through Certificates. To the extent that any proceeds of the sale of the Pass Through Certificates have not been applied by the Pass Through Trustee by December 31, 1991 to the purchase of the related Equipment Notes which were contemplated to be held in the related Pass Through Trust, such proceeds shall be distributed on February 2, 1992 or an earlier Special Distribution Date to the Certificateholders on a pro rata basis, together with accrued interest thereon, but without premium. See "Description of the Pass Through Certificates — Delayed Purchase" and "— Special Payment Upon Unavailability of Items "

**Interest . . . . . . . . . . . . . . . . . . . . . . .**    Interest on the Pass Through Certificates of each Pass Through Trust will be passed through at the rate per annum indicated on the cover of this Prospectus for such Pass Through Trust, which is the interest rate borne by the Equipment Notes to be held in such Pass Through Trust. Interest is calculated on the basis of a 360-day year consisting of twelve 30-day months See "Description of the Pass Through Certificates — General "

**Scheduled Payments of Principal . . .**    Each Pass Through Trust will hold Equipment Notes whose principal is payable in scheduled amounts on January 2 or July 2, or both, of each year, commencing on January 2, 1992 in the case of Pass Through Trust-A1 and January 2, 2000 in the case of Pass Through Trust-A2. See "Description of the Pass Through Certificates — Payments and Distributions" and "Description of the Equipment Notes — Principal Payments "

**Equipment Notes· General . . . . . .**    Interest will be payable in arrears on the Equipment Notes on the unpaid principal amount thereof on January 2 and July 2 in each year, commencing on January 2, 1992

6

Equipment Notes. Prepayment .    The Equipment Notes may be prepaid under the following circumstances

(a) If an Event of Loss to an Item shall occur and like kind equipment of equivalent value is not substituted for such Item, the applicable Lessee is obligated to pay the Stipulated Loss Value of such Item; provided, however, that such a substitution may occur only in the absence of a Lease Event of Default or Material Default. Such payment will be used to prepay a portion of the series of Equipment Notes issued with respect to the Equipment Group of which such Item is a part on the next succeeding January 2 or July 2, as the case may be (each, a "Prepayment Date"), which is at least 90 days after the occurrence of such Event of Loss. The amount prepaid will be equal to the sum of (i) as to principal, an amount equal to the product obtained by multiplying the aggregate unpaid principal amount of the Equipment Notes issued with respect to such Equipment Group as at the Prepayment Date by a fraction, the numerator of which shall be the Lessor's Cost of such Item and the denominator of which shall be the aggregate Lessor's Cost of all Items included in such Equipment Group immediately prior to the Prepayment Date, and (ii) as to interest, the aggregate amount of interest accrued and unpaid in respect of the principal amount to be prepaid pursuant to clause (i) above on such Prepayment Date. No premium will be payable in the event of a prepayment under such circumstances.

(b) If a Lessee elects to exercise its right to terminate a Lease pursuant to the terms thereof with respect to some or all of the Items leased thereunder or if a Lessee exercises its right to purchase some or all of the Equipment Groups (but not less than all of the Equipment Groups under lease for a particular term at a particular location on behalf of a particular Owner Participant) in accordance with the terms of the applicable Lease (unless such Equipment Notes are exchanged for new notes in accordance with the terms of the applicable Indenture), a portion of the proceeds from Lessee's payment of the Termination Value or purchase option price, as the case may be, will be used to prepay Equipment Notes relating to such Item or Equipment Group. The amount prepaid will be equal to the principal and accrued interest thereon, computed as provided in paragraph (a) above plus a make-whole premium. See "Description of the Equipment Notes — Prepayment" for a description of the manner of computing the make-whole premium

(c) The Owner Trustee may, under certain circumstances, (i) prepay all, but not less than all, of the Equipment Notes issued by such Owner Trustee and held in a particular Pass Through Trust or (ii) prepay all, but not less than all, of the Equipment Notes issued by such Owner Trustee under any Indenture Supplement at a price equal to the aggregate unpaid principal amount thereof, together with accrued inter-

7

est thereon, plus a make-whole premium referred to in paragraph (b) above.

(d) If under any Indenture an Indenture Default shall have occurred and be continuing and the Indenture Trustee has given notice of its intent to accelerate the Equipment Notes thereunder or to exercise other substantial remedies, the applicable Owner Trustee may elect to prepay or purchase all of the then outstanding Equipment Notes issued under such Indenture at a price equal to the unpaid principal amount thereof, together with accrued interest thereon to the date of prepayment or purchase, but without premium.

See "Description of the Equipment Notes — Prepayment."

Equipment Notes: Security . . . . . . . . . .   The Equipment Notes issued with respect to each Equipment Group will be secured by a security interest in the Items included in such Equipment Group (or, when relevant, the Owner Trustee's rights in the County Lease (as defined below) with respect to such Equipment Group) and an assignment to the Indenture Trustee of all of the Owner Trustee's rights under the Lease and the Guaranty (as defined below) with respect to such Equipment Group, including the right to receive rent thereunder, with certain exceptions, in respect of such Equipment Group from the Lessees.

One of the jurisdictions in which a significant portion of the Equipment is located has entered into an arrangement whereby Saturn is permitted to make certain payments in lieu of property taxes otherwise due. In order to effect such arrangements, the Industrial Development Board of Maury County, Tennessee (the "Board") issued industrial development revenue bonds due in 2025 to General Motors (the "Bonds"), and used the proceeds of the Bonds to obtain record title to the facility and equipment used by Saturn, including some of the Equipment Such facility and equipment are leased to Saturn pursuant to an industrial development revenue lease (the "County Lease"). For the three Equipment Groups subject to the County Lease, the Owner Trustee will be assigned certain of Saturn's rights under the County Lease as it relates to such Equipment Groups. The rights of the Owner Trustees under the County Lease will be assigned to the Indenture Trustees.

The Equipment Notes are not cross-collateralized and, consequently, the Equipment Notes issued in respect of any one Equipment Group are not secured by any of the other Equipment Groups or the Lease Supplements related thereto There are no cross-default provisions in the Indentures and, consequently, events resulting in an Indenture Default under any particular Indenture may not result in an Indenture Default occurring under any other Indenture If the Equipment Notes issued in respect of one or more Equipment Groups under a particular Indenture are in default, the Equipment Notes issued in respect of the remaining Equipment Groups under the other Indentures may not be in default and, if not in default, no remedies will be exercisable under the Indentures with respect

8

to such remaining Equipment Groups However, since a Lease Event of Default which has not been cured or waived could constitute an Indenture Default and there are cross-default provisions among each of the Leases between the Lessees and an Owner Trustee on behalf of a particular Owner Participant, there could be cross-defaults under all Indentures which are entered into by an Owner Trustee on behalf of a particular Owner Participant See "Description of the Equipment Notes — Security"

Although the Equipment Notes are not obligations of, or guaranteed by, the Lessees, the amounts payable by the Lessees under the Leases are scheduled to be at least sufficient to pay in full when due all payments of principal of, premium, if any, and interest on the Equipment Notes. See "Description of the Equipment Notes — General"

| | |
|---|---|
| Exchange of Equipment Notes Under Certain Circumstances . . . . . . . | Under certain circumstances, a Lessee (or an affiliate) has the right, subject to certain conditions, to cause the Pass Through Trustee to exchange all of the Equipment Notes issued under one or more Indenture Supplements for full recourse, unsecured notes of General Motors or any of its affiliates. Such new notes will be issued in the full outstanding principal amount, bear the same interest rate, be payable in installments in the same manner, have the same final maturity and otherwise have *substantially the same terms as the Equipment Notes being exchanged*, with appropriate modifications to reflect the unsecured character of such new notes. If the Equipment Notes are exchanged for notes of an affiliate of General Motors, such affiliate's obligations under the notes will be irrevocably and unconditionally guaranteed by General Motors See "Description of the Equipment Notes — Exchange of the Equipment Notes Under Certain Circumstances" For a discussion of the possible tax consequences of such exchange, see "Certain Federal Income Tax Consequences — Sales of Pass Through Certificates." |
| Additional Equipment Notes. . . . . . | Under certain circumstances, additional Equipment Notes may be *issued under one or more of the Indenture Supplements to* finance the cost of certain alterations, modifications, additions or improvements to any Item in a given Equipment Group. Additional Equipment Notes issued to finance the cost of alterations, modifications, additions or improvements to any Item in a given Equipment Group will be equally and ratably secured by such Equipment Group. See "Description of the Equipment Notes — Prepayment" and "— The Leases — Net Lease; Modifications and Additional Equipment Notes." |
| The Guaranties . . . . . . . . . . | *General Motors will enter into three Guaranties (the "Guaranties") pursuant to which it will irrevocably and unconditionally guarantee all obligations of Saturn under the Leases under which Saturn is the Lessee. See "Description of the Equipment Notes — The Guaranties"* |

9

| | |
|---|---|
| Use of Proceeds ....     ..... | The proceeds from the sale of the Pass Through Certificates will be used by the Pass Through Trustee to purchase the Equipment Notes from the Owner Trustees The Owner Trustees will use such proceeds to finance not more than 80% of the Lessor's Cost of the Equipment, representing in the aggregate the entire debt portion of the six separate leveraged lease transactions. The net proceeds to General Motors and Saturn from the sale of the Equipment Groups will be used by General Motors and Saturn for general corporate purposes. See "Use of Proceeds." |
| Pass Through Trustee.. .  .. ... . | The First National Bank of Chicago will act as trustee, paying agent and registrar for the Pass Through Certificates. The First National Bank of Chicago also will act as the Indenture Trustee for the Equipment Notes. |
| Federal Income Tax Consequences | Each Pass Through Trust should be classified as a grantor trust for federal income tax purposes, and each Certificateholder of each Pass Through Trust should be treated as the owner of a pro rata undivided interest in each of the Equipment Notes and any other property held in such Pass Through Trust and should report on its federal income tax return its pro rata share of income from such Equipment Notes in accordance with such Certificateholder's method of accounting See "Certain Federal Income Tax Consequences." |
| ERISA Considerations......   ..... | As described herein, the Pass Through Certificates may be purchased by employee benefit plans that are subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), provided that, in order to comply with ERISA, the fiduciary acting on behalf of each employee benefit plan that purchases Pass Through Certificates will be required to represent and warrant that (i) the fiduciary is a qualified professional asset manager, or "QPAM", under the QPAM Exemption (as defined in "ERISA Considerations" below) and (ii) the purchase of the Pass Through Certificates qualifies for the QPAM Exemption from ERISA's prohibited transaction rules See "ERISA Considerations." |

## FORMATION OF THE PASS THROUGH TRUSTS

The Pass Through Trusts will be formed pursuant to two separate Pass Through Trust Agreements (in each case, an "Agreement") by and among General Motors, Saturn and the Pass Through Trustee. Upon or prior to the execution and delivery of the Agreements, the Pass Through Trustee, on behalf of each Pass Through Trust, will enter into six separate participation agreements with respect to all of the Equipment Groups (in each case, a "Participation Agreement") pursuant to which it will, among other things, purchase Equipment Notes having an interest rate equal to the interest rate of the Pass Through Certificates issued by such Pass Through Trust. The Equipment Notes acquired by each Pass Through Trust will mature on or before the final distribution date of the Pass Through Certificates that will be issued by such Pass Through Trust  The two Pass Through Trusts, taken together, will hold all the Equipment Notes originally issued, representing in the aggregate the entire debt portion of the six separate leveraged lease transactions. The Pass Through Trustee will distribute the amount of payments of principal, premium, if any, and interest received by it as holder of the Equipment Notes to the Certificateholders of the Pass Through Trust in which such Equipment Notes are held. See "Description of the Pass Through Certificates — General" and "Description of the Equipment Notes — General."

## DESCRIPTION OF PAYMENT FLOWS

The following diagram illustrates certain aspects of the payment flows in this transaction among the Lessees, the Owner Trustees, the Indenture Trustees, the Pass Through Trustees and the Certificateholders.

For each of the six separate leveraged lease transactions, the Lessee leases one or more Equipment Groups from an Owner Trustee, as lessor for such Equipment Groups under a Lease and one or more Lease Supplements entered into pursuant thereto, with each Lease Supplement covering a particular Equipment Group. A single series of Equipment Notes with respect to each Equipment Group will be issued under an Indenture by the Owner Trustee pursuant to an Indenture Supplement. Rent is payable under the Lease to the Owner Trustee, as lessor  However, as a result of the assignment of the Lease and its related Lease Supplements to the Indenture Trustee, the Lessee will make rental payments directly to the Indenture Trustee  From these rental payments the Indenture Trustee will, on behalf of the Owner Trustee, first make payments to the Pass Through Trustee as required to meet obligations under the Equipment Notes relating to such Equipment Group and will pay the remaining balance to the Owner Trustee, for the benefit of the Owner Participant  The Pass Through Trustee will distribute payments received on the Equipment Notes relating to such Equipment Group (together with payments received on the Equipment Notes relating to the other Equipment Groups which are the subjects of the other lease transactions) held in such Pass Through Trust to the Certificateholders as required under the terms of the Pass Through Certificates. The First National Bank of Chicago will act initially both as Pass Through Trustee of the two Pass Through Trusts and as Indenture Trustee under the six Indentures.



General Motors Corporation/Saturn Corporation

* Equipment Notes with respect to these three Equipment Groups will be issued under one Indenture with three separate Indenture Supplements

† Excess Payments related to Equipment Groups 2 through 10 flow to their respective Owner Trustees and Owner Participants in the same manner as is shown for Equipment Group 1

## USE OF PROCEEDS

The Pass Through Certificates are being issued in order to facilitate the financing by Owner Trustees (as defined below) on behalf of certain Owner Participants (as defined below) of their purchase of the Equipment Groups to be leased to General Motors or Saturn. Proceeds from the Pass Through Certificates will be used by the Pass Through Trustee to purchase Equipment Notes issued by the Owner Trustee which, in turn, will use the proceeds to purchase the Equipment Groups on behalf of the Owner Participants The Equipment is automotive production equipment (or, when relevant, Saturn's rights in respect of certain automotive production equipment under the County Lease) that has been, or will be, placed in service in 1990 and 1991 in General Motors' or Saturn's existing automotive production facilities and is being purchased by the Owner Trustees, on behalf of certain Owner Participants, from General Motors or Saturn. The facilities in which the Equipment Groups will be located at the time of purchase are in Spring Hill, Tennessee (Saturn); Tonawanda, New York (General Motors Powertrain Division), Buffalo, New York (General Motors Saginaw Division); Lockport, New York (General Motors Harrison Division); Saginaw, Michigan (General Motors Saginaw Division); and Toledo, Ohio (General Motors Powertrain Division).

The Equipment Notes will be issued under six separate Trust Indenture and Security Agreements (each an "Indenture"), each such Indenture being between The First National Bank of Chicago, as trustee thereunder (in such capacity, the "Indenture Trustee"), and The Connecticut National Bank, not in its individual capacity (except as expressly set forth therein) but solely as owner trustee (the "Owner Trustee") of a separate trust for the benefit of an institutional investor (the "Owner Participant") Each Owner Participant will provide from sources other than the Equipment Notes, at least 20% of the equipment cost of the related Equipment Groups as an equity investment No Owner Participant, however, will be personally liable for any amount payable under the related Indenture or Indenture Supplement or any series of Equipment Notes issued thereunder

The net proceeds to General Motors and Saturn from the sale of the Equipment Groups will be used by General Motors and Saturn for general corporate purposes

The following table sets forth information with respect to each of the Equipment Groups:

|  | Lessee | Aggregate Cost of Equipment to Owner Trustees | Principal Amount of Equipment Notes | Final Maturity Date of Equipment Notes |
|---|---|---|---|---|
| Equipment Group 1    . ... . | Saturn | $182,166,700 | $145,733,359 | January 2, 2003 |
| Equipment Group 2 ..  .    .. | Saturn | 168,647,000 | 134,917,598 | January 2, 2003 |
| Equipment Group 3   .... | Saturn | 198,249,000 | 157,463,393 | July 2, 2009 |
| Equipment Group 4 ... ...   .. | General Motors | 49,136,209 | 39,308,966 | January 2, 2005 |
| Equipment Group 5 ..... ... | General Motors | 4,816,736 | 3,853,389 | January 2, 2003 |
| Equipment Group 6 .   . ...... | General Motors | 10,940,000 | 8,751,998 | January 2, 2004 |
| Equipment Group 7     .... | General Motors | 9,820,734 | 7,856,589 | July 2, 2002 |
| Equipment Group 8 . ..... . . | General Motors | 1,204,535 | 963,626 | January 2, 2004 |
| Equipment Group 9  . .... | General Motors | 23,040,000 | 18,432,000 | July 2, 2002 |
| Equipment Group 10 .... | General Motors | 3,189,371 | 2,551,496 | July 2, 2003 |
| Total   .  ..... .. ..    .... . . ..   . . | | $651,210,285 | $519,832,414 | |

## THE LESSEES

The major portion of General Motors' operations is derived from the automotive products industry, consisting of the design, manufacture, assembly, and sale of automobiles, trucks, and related parts and accessories General Motors also has financing, insurance, defense and electronic data processing operations and produces products and provides services in other industries. The financing and insurance operations assist in the merchandising of General Motors' products as well as other products. General Motors Acceptance Corporation ("GMAC") and its subsidiaries, as well as certain other subsidiaries of General Motors, offer financial services and certain types of insurance to dealers and customers In addition, subsidiaries of GMAC

13



One Financial Way
Cincinnati, Ohio 45242

Post Office Box 237
Cincinnati, Ohio 45201-0237
Telephone 513 794 6100
www.ohionational.com

October 15, 2009

The Garden City Group, Inc
P.O Box 9386
Dublin, Ohio 43017

Attention   Motors Liquidation Company Claims Processing

To Whom It May Concern

    Enclosed are the claims of The Ohio National Life Insurance Company.

Very truly yours,

Joseph M. Fischer
Assistant Counsel

JMF mam

Enclosures

Garden City Group



| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**PROOF OF CLAIM**

**Your Claim is Scheduled As Follows.**

| Name of Debtor (Check Only One) | Case No |
|---|---|
| ☐ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☒ MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐ MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see Item # 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property) *THE OHIO NATIONAL LIFE INSURANCE COMPANY*

Name and address where notices should be sent

THE OHIO NATIONAL LIFE INSURANCE COMPANY
PO BOX 237
ATTN MAIL CODE 54
CINCINNATI OH 45201-0237

Telephone number
Email Address

Name and address where payment should be sent (if different from above)

FILED - 12904
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box to indicate that this claim amends a previously filed claim

**Court Claim Number** _____
*(If known)*

Filed on _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

*(Garden City Group stamp: THE GARDEN CITY GROUP, INC. OCT 19 2009)*

If an amount is identified above you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount). If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form. EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1 Amount of Claim as of Date Case Filed, June 1, 2009** $ **282,068.25**

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9) complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2 Basis for Claim** *Secured Equipment Notes   CUSIP# 37045GAB9*
(See instruction #2 on reverse side )

**3** Last four digits of any number by which creditor identifies debtor _____

3a Debtor may have scheduled account as _____
(See instruction #3a on reverse side )

**4 Secured Claim** (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information *Note: Same claim filed under Case No 09-50026*

**Nature of property or right of setoff**  ☐ Real Estate   ☐ Motor Vehicle  ☒ Equipment  ☒ Other
Describe *Assignment of Leases and Rentals from GM and Saturn*

**Value of Property** $ _____   **Annual Interest Rate** ___%

**Amount of arrearage and other charges as of time case filed included in secured claim, if any** $ _____

**Basis for perfection** _____

**Amount of Secured Claim** $ **282,068.25**   **Amount Unsecured** $ _____

**6 Credits** The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7 Documents** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary (See instruction 7 and definition of redacted on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5 Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).**
If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___)

**Amount entitled to priority**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

| Date: 10/15/09 | Signature The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. *Jasper M Freeze, Assistant Secretary* | FOR COURT USE ONLY |
|---|---|---|

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
**Modified B10 (GCG) (12/08)**

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law  In certain circumstances such as bankruptcy cases not filed voluntarily by the debtor there may be exceptions to these general rules  The attorneys for the Debtors and their court-appointed claims agent  The Garden City Group  Inc , are not authorized and are not providing you with any legal advice*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS **IF BY MAIL** THE GARDEN CITY GROUP, INC  ATTN  MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P O  BOX 9386, DUBLIN  OH 43017-4286 **IF BY HAND OR OVERNIGHT COURIER** THE GARDEN CITY GROUP INC , ATTN  MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING  5151 BLAZER PARKWAY SUITE A  DUBLIN  OH 43017  PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO  THE UNITED STATES BANKRUPTCY COURT SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004  ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 P M  (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**

These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1 2009  You should select the debtor against which you are asserting your claim

**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**

Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case  Please provide us with a valid email address  A separate space is provided for the payment address if it differs from the notice address  The creditor has a continuing obligation to keep the court informed of its current address  See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**

State the total amount owed to the creditor on the date of the bankruptcy filing  Follow the instructions concerning whether to complete items 4 and 5  Check the box if interest or other charges are included in the claim

**2  Basis for Claim**

State the type of debt or how it was incurred  Examples include goods sold  money loaned, services performed  personal injury/wrongful death  car loan  mortgage  note  and credit card  If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information  You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**

State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a  Debtor May Have Scheduled Account As**

Use this space to report a change in the creditor's name, a transferred claim or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**

Check the appropriate box and provide the requested information if the claim is fully or partially secured  Skip this section if the claim is entirely unsecured (See DEFINITIONS, below ) State the type and the value of property that secures the claim, attach copies of lien documentation and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5  Amount of Claim Entitled to Priority Under 11 U S C  § 507(a)**

If any portion of your claim falls in one or more of the listed categories  check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS, below )  A claim may be partly priority and partly non-priority  For example, in some of the categories the law limits the amount entitled to priority

For claims pursuant to 11 U S C  § 503(b)(9) indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1  2009  the date of commencement of these cases (See DEFINITIONS, below)  Attach documentation supporting such claim

**6  Credits**

An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim the creditor gave the Debtor credit for any payments received toward the debt

**7  Documents**

Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt  You may also attach a summary  You must also attach copies of documents that evidence perfection of any security interest  You may also attach a summary  FRBP 3001(c) and (d)  If the claim is based on the delivery of health care goods or services, see instruction 2  Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**

The person filing this proof of claim must sign and date it  FRBP 9011  If the claim is filed electronically  FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature  Print the name and title  if any  of the creditor or other person authorized to file this claim  State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices  Attach a complete copy of any power of attorney  Criminal penalties apply for making a false statement on a proof of claim

---

## DEFINITIONS

**Debtor**

A debtor is the person, corporation  or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company | |
| (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC | |
| (f/k/a Saturn LLC) | 09-50027 (RFG) |
| MLCS Distribution Corporation | |
| (f/k/a Saturn Distribution Corporation) | 09-50028 (RFG) |
| MLC of Harlem, Inc | |
| (f/k/a Chevrolet-Saturn of Harlem  Inc ) | 09-13558 (REG) |

**Creditor**

A creditor is the person  corporation  or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**

A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing  See 11 U S C  § 101(5)  A claim may be secured or unsecured

**Proof of Claim**

A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing  The creditor must file the form with The Garden City Group, Inc  as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C  § 506(a)**

A secured claim is one backed by a lien on property of the debtor  The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors  The amount of the secured claim cannot exceed the value of the property  Any amount owed to the creditor in excess of the value of the property is an unsecured claim  Examples of liens on property include a mortgage on real estate or a security interest in a car  A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding  In some states  a court judgment is a lien  A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**

A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before  the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**

An unsecured claim is one that does not meet the requirements of a secured claim  A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C  § 507(a)**

Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**

A document has been redacted when the person filing it has masked  edited out, or otherwise deleted  certain information  A creditor should redact and use only the last four digits of any social-security  individual's

## INFORMATION

tax-identification, or financial-account number  all but the initials of a minor's name  and only the year of any person's date of birth

**Evidence of Perfection**

Evidence of perfection may include a mortgage, lien, certificate of title, financing statement  or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**

To receive acknowledgment of your filing from The Garden City Group Inc  please provide a self-addressed stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group Inc

**Offers to Purchase a Claim**

Certain entities are in the business of purchasing claims for an amount less than the face value of the claims  One or more of these entities may contact the creditor and offer to purchase the claim  Some of the written communications from these entities  may easily be confused with official court documentation or communications from the debtor  These entities do not represent the bankruptcy court or the debtor  The creditor has no obligation to sell its claim  However  if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e) any applicable provisions of the Bankruptcy Code (11 U S C  § 101 et seq ) and any applicable orders of the bankruptcy court

**Additional Information**

If you have any questions with respect to this claim form please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com



AM -276-00351-0                           3644
003   48                          Page 2 of 100
**ACCOUNT NUMBER: 19-6545**
**OHIO NATIONAL LIFE INSURANCE CO**

This statement is for the period from
September 1, 2009 to September 30, 2009

## ASSET DETAIL (continued)

| Shares/ Par | Security Description | CUSIP | Market Value/ Price | Cost Basis | Yield At Market | Est Annual Inc |
|---|---|---|---|---|---|---|
| **Stocks** | | | | | | |
| 100 000 | Kansas City Life Ins CO<br>Account 19-6545<br>KCLI | 484836101 | 3,114 00<br>31 140 | 0 25 | 3 47 | 108 00 |
| 89 000 | Lincoln Natl Corp Ind<br>Account 19-6545<br>LNC | 534187109 | 2,305 99<br>25 910 | 0 22 | 0 15 | 3 58 |
| 76 000 | Nortel Networks Corp<br>Account 19-6545<br>NRTLQ | 656568508 | 6 61<br>0 087 | 2.00 | 0 00 | 0 00 |
| 100 000 | Presidential Life Corp<br>Account 19-6545<br>PLFE | 740884101 | 1,036 00<br>10 360 | 0.14 | 2 41 | 25 00 |
| 100 000 | Protective Life Corp<br>Account 19-6545<br>PL | 743674103 | 2,142 00<br>21 420 | 0.25 | 2 24 | 48 00 |
| 100 000 | Travelers Cos Inc<br>Account 19-6545<br>TRV | 89417E109 | 4,923 00<br>49 230 | 0 04 | 2 44 | 120 00 |
| 4,214 000 | U S Airways Group Inc<br>Account 19-6545<br>LCC | 90341W108 | 19,805 80<br>4 700 | 0 00 | 0 00 | 0 00 |
| 100 000 | Unitrin Inc<br>Account 19-6545<br>UTR | 913275103 | 1,949 00<br>19 490 | 0 47 | 4 10 | 80 00 |
| 100 000 | U N U M Provident Corp<br>Account 19-6545<br>UNM | 91529Y106 | 2,144 00<br>21 440 | 0 20 | 1 54 | 33 00 |
| 73,847 000 | U S Internetworking Inc<br>Account 19-6545<br>USIX | 917311805 | 7 38<br>0 000 | 1 00 | 0 00 | 0 00 |
| 82,005 000 | World Color Press Inc US<br>Account 19-6545<br>WCU | 981442106 | 832,809 98<br>10 155 | 4,330,906 83 | 0 00 | 0 00 |
| | **Total Stocks** | | **$872,350 58** | **$4,331,020 06** | | **$417 58** |
| **Taxable Bonds** | | | | | | |
| 1,282,000 000 | Piedmont Aviat<br>Ser A<br>10 050 01/15/2003 Account 19-6545 | 720101CA0 | 1,116,865 58<br>87 119 | 1 00 | 11 54 | 128,841 00 |
| 1,441,000 000 | Piedmont Aviat<br>Ser C<br>10 050 01/15/2003 Account 19-6545 | 720101CC6 | 1,255,384 79<br>87 119 | 1 00 | 11 54 | 144,820 50 |
| (282,068 250) | General Motors<br>Ser 9 1 A 2<br>Default 07/02/2009 Account 19-6545 | 37045GAB9 | 282,068 25<br>100 000 | 0 08 | 0 00 | 0 00 |
| 9,925,000 000 | Bear Stearns CO Inc<br>Unsub<br>7 825 12/07/2009 Account 19-6545 | 073902BR8 | 10,042,412 75<br>101 183 | 11,774,722 25 | 7 54 | 758,781 25 |
| 297,894 080 | Humpuss Funding Corp<br>Priv Placement<br>7 720 12/15/2009 Skg Fd Account 19-6545 | 445533AA0 | 239,804 73<br>80 500 | 0 15 | 9 59 | 22,997 42 |

370456___( )

*PROSPECTUS*

# $519,832,414

# *General Motors Corporation*
# *1991-A Pass Through Trusts*
### PASS THROUGH CERTIFICATES, SERIES 1991-A

*Each Pass Through Certificate offered hereby will represent a fractional undivided interest in one of two separate General Motors Corporation 1991-A Pass Through Trusts (the "Pass Through Trusts") to be formed pursuant to two trust agreements by and among General Motors Corporation ("General Motors"), its wholly owned subsidiary Saturn Corporation ("Saturn") and The First National Bank of Chicago (the "Pass Through Trustee"), as trustee under each Pass Through Trust  The property of the Pass Through Trusts will consist of equipment notes (the "Equipment Notes") issued on a nonrecourse basis by certain owner trustees in connection with six separate leveraged lease transactions to finance not more than 80% of the equipment cost to such owner trustees of ten groups of certain automotive production equipment (or, when relevant, Saturn's rights in respect of certain automotive production equipment under a certain industrial revenue bond lease) (each an "Equipment Group" and collectively, the "Equipment") leased to and leased by such owner trustees from General Motors or Saturn and leased to General Motors or Saturn (collectively, the "Lessees").  Amounts payable under the leases will be at least sufficient to pay in full when due all payments of principal of, premium, if any, and interest on the Equipment Notes held in the Pass Through Trusts  However, neither the Pass Through Certificates nor the Equipment Notes are obligations of, or guaranteed by, the Lessees.*

*Each Equipment Note will be issued as part of a single series under an indenture supplement which relates to a single Equipment Group and which is supplemental to one of six indentures  The Equipment Notes acquired by the Pass Through Trusts will mature on or before the final distribution date of the Pass Through Certificates issued by such Pass Through Trust  The series of Equipment Notes issued with respect to each Equipment Group will be secured by a security interest in such Equipment Group and in the lease and lease supplement relating thereto, including the right to receive rentals payable by General Motors or Saturn in respect of such Equipment Group pursuant to such lease and lease supplement  In addition, General Motors will irrevocably and unconditionally guarantee all lease obligations of Saturn for Equipment Groups leased to Saturn.*

*Interest paid on the Equipment Notes held in the Pass Through Trusts will be passed through to the Certificateholders of such Pass Through Trusts on January 2 and July 2 of each year, commencing on January 2, 1992, at the rate per annum set forth below for such Pass Through Trust until the final distribution date as set forth below for such Pass Through Trust. Principal paid on the Equipment Notes held in each Pass Through Trust will be passed through to the Certificateholders in each such Pass Through Trust in scheduled amounts on January 2 or July 2, or both, of each year, commencing on January 2, 1992 and January 2, 2000, respectively, and continuing until the final distribution date set forth below for such Pass Through Trust  The Equipment Notes may be prepaid (or purchased in lieu of prepayment) under certain circumstances*

*Certain limitations apply to the acquisition and holding of Pass Through Certificates by an employee benefit plan subject to Title I of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), or an individual retirement account or employee benefit plan subject to Section 4975 of the Internal Revenue Code of 1986, as amended (the "Code")  Certain governmental and non-electing church plans, however, are not subject to Title I of ERISA or Section 4975 of the Code and, therefore, may invest in the Pass Through Certificates  See "ERISA Considerations "*

**THESE SECURITIES HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THIS PROSPECTUS. ANY REPRESENTATION TO THE CONTRARY IS A CRIMINAL OFFENSE.**

| Pass Through Certificates | Principal Amount | Interest Rate | Final Distribution Date | Price to Public (1) (2) |
|---|---|---|---|---|
| 1991-A1 | $247,880,164 | 8.17% | January 2, 2000 | 100% |
| 1991-A2 | $271,952,250 | 8.95% | July 2, 2009 | 100% |

*(1)  Plus accrued interest, if any, at the applicable interest rate from September 27, 1991.*

*(2)  The underwriting commission varies by Pass Through Trust and aggregates $2,815,162, which constitutes .542% of the principal amount of the Pass Through Certificates. The underwriting commissions and certain other expenses, estimated at $689,958, will be payable by the owner trustees in the leveraged lease transactions (other than certain expenses to be paid directly by the Lessees)  All of the proceeds from the sale will be used to purchase the Equipment Notes from the owner trustees*

*The Pass Through Certificates are offered by the Underwriters, subject to prior sale, when, as and if accepted by the Underwriters, and subject to approval of certain legal matters by counsel for the Underwriters  It is expected that delivery of the Pass Through Certificates in book-entry form will be made on or before September 27, 1991 through the facilities of The Depository Trust Company, against payment therefor in immediately available funds*

## *MORGAN STANLEY & CO.*
### Incorporated

*September 24, 1991*

No person has been authorized to give any information or to make any representations other than those contained or incorporated by reference in this Prospectus in connection with the offer contained in this Prospectus, and, if given or made, such information or representations must not be relied upon as having been authorized by General Motors, Saturn or the Underwriters. This Prospectus does not constitute an offer to sell or the solicitation of an offer to buy securities in any jurisdiction to any person to whom it is unlawful to make such offer or solicitation. Neither the delivery of this Prospectus nor any sale made hereunder shall, under any circumstances, create an implication that there has been no change in the affairs of General Motors or Saturn since the date hereof or that the information contained herein is correct at any time subsequent to the date hereof.

---

## TABLE OF CONTENTS

|  | Page |
|---|---|
| AVAILABLE INFORMATION | 3 |
| REPORTS TO CERTIFICATEHOLDERS BY THE TRUSTEE | 3 |
| DOCUMENTS INCORPORATED BY REFERENCE | 3 |
| SUMMARY | 4 |
| FORMATION OF THE PASS THROUGH TRUSTS | 11 |
| DESCRIPTION OF PAYMENT FLOWS | 11 |
| USE OF PROCEEDS | 13 |
| THE LESSEES | 13 |
| RATIOS OF EARNINGS TO FIXED CHARGES | 14 |
| DESCRIPTION OF THE PASS THROUGH CERTIFICATES | 14 |
| DESCRIPTION OF THE EQUIPMENT NOTES | 26 |
| CERTAIN FEDERAL INCOME TAX CONSEQUENCES | 39 |
| CERTAIN ILLINOIS TAXES | 42 |
| ERISA CONSIDERATIONS | 42 |
| UNDERWRITING | 43 |
| LEGAL OPINIONS | 44 |
| EXPERTS | 44 |
| GLOSSARY OF CERTAIN TERMS | I-1 |

2

IN CONNECTION WITH THIS OFFERING, THE UNDERWRITERS MAY OVER-ALLOT OR EFFECT TRANSACTIONS WHICH STABILIZE OR MAINTAIN THE MARKET PRICES OF THE PASS THROUGH CERTIFICATES AT LEVELS ABOVE THOSE WHICH MIGHT OTHERWISE PREVAIL IN THE OPEN MARKET. SUCH TRANSACTIONS MAY BE EFFECTED IN THE OVER-THE-COUNTER MARKET OR OTHERWISE. SUCH STABILIZING, IF COMMENCED, MAY BE DISCONTINUED AT ANY TIME.

## AVAILABLE INFORMATION

General Motors is subject to the information requirements of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), and in accordance therewith files reports, proxy statements and other information with the Securities and Exchange Commission (the "Commission") Such reports, proxy statements and other information filed by General Motors with the Commission can be inspected and copied at the Public Reference Section of the Commission, Room 1228, Judiciary Plaza, 450 Fifth Street, N W , Washington, D C 20549, and at the public reference facilities of the Commission's Regional Offices at Room 3190, Kluczynski Building, 230 South Dearborn Street, Chicago, Illinois 60604, and Room 1400, 75 Park Place, New York, New York 10007. Copies of such material may be obtained by mail from the Public Reference Section of the Commission at 450 Fifth Street, N W , Washington, D.C. 20549, at prescribed rates Reports, proxy statements and other information concerning General Motors can also be inspected at the offices of (i) the New York Stock Exchange, Inc , 20 Broad Street, New York, New York 10005, (ii) the Midwest Stock Exchange, Inc , 120 South LaSalle Street, Chicago, Illinois 60603, (iii) the Pacific Stock Exchange, Inc , 233 South Beaudry Street, Los Angeles, California 90012 and 301 Pine Street, San Francisco, California 94104 and (iv) the Philadelphia Stock Exchange, Inc., 1900 Market Street, Philadelphia, Pennsylvania 19103

This Prospectus constitutes a part of a Registration Statement filed by General Motors and Saturn with the Commission under the Securities Act of 1933, as amended (the "Securities Act of 1933") This Prospectus omits certain of the information contained in the Registration Statement in accordance with the rules and regulations of the Commission Reference is hereby made to the Registration Statement and related exhibits for further information with respect to General Motors and Saturn Statements contained herein concerning the provisions of any document are not necessarily complete and, in each instance, reference is made to the copy of such document filed as an exhibit to the Registration Statement or otherwise filed with the Commission Each such statement is qualified in its entirety by such reference

## REPORTS TO CERTIFICATEHOLDERS BY THE TRUSTEE

The First National Bank of Chicago, as trustee for the holders of the Pass Through Certificates, pursuant to the Pass Through Trust Agreements by and among General Motors, Saturn and the Pass Through Trustee, will provide to Certificateholders certain periodic statements concerning distributions made with respect to each Pass Through Trust See "Description of the Pass Through Certificates — Reports to Certificateholders "

## DOCUMENTS INCORPORATED BY REFERENCE

General Motors' Annual Report on Form 10-K for the year ended December 31, 1990, its Quarterly Reports on Form 10-Q for the quarters ended March 31, 1991 and June 30, 1991, and its Current Reports on Form 8-K dated February 6, 1991 and March 6, 1991 heretofore filed with the Commission pursuant to the Exchange Act are hereby incorporated by reference

All documents filed by General Motors pursuant to Sections 13(a), 13(c), 14 or 15(d) of the Exchange Act subsequent to the date of this Prospectus and prior to the termination of the offering of the Pass Through Certificates offered hereby shall be deemed to be incorporated by reference in this Prospectus and to be a part hereof from the date of filing of such documents Any statement contained herein or in a document incorporated or deemed to be incorporated by reference herein shall be deemed to be modified or superseded for purposes of this Prospectus to the extent that a statement contained herein or in any other subsequently filed document which also is or is deemed to be incorporated by reference herein modifies or supersedes such statement Any such statement so modified or superseded shall not be deemed, except as so modified and superseded, to constitute a part of this Prospectus

**General Motors will provide without charge to each person to whom this Prospectus is delivered, upon the written or oral request of such person, a copy of any or all of the documents which have been or may be incorporated herein by reference (other than exhibits unless specifically incorporated therein). Requests for such documents should be directed to General Motors, Room 11-128, General Motors Building, 3044 West Grand Boulevard, Detroit, Michigan 48202-3091 (Telephone Number (313) 556-2044).**

3

## SUMMARY

*The following summary of provisions relating to the Pass Through Certificates does not purport to be complete and is qualified in its entirety by the detailed information appearing elsewhere or incorporated by reference in the Prospectus*

| | |
|---|---|
| Glossary . . . . . . . . . . . . . | Included at the end of this Prospectus as Appendix I is a Glossary of certain of the significant defined terms used herein. |
| Pass Through Trusts . . . . . . . . . | Each of the two General Motors Corporation 1991-A Pass Through Trusts (the "Pass Through Trusts") is to be formed pursuant to one of two separate Pass Through Trust Agreements (the "Agreements") by and among General Motors Corporation ("General Motors"), its wholly-owned subsidiary Saturn Corporation ("Saturn") and The First National Bank of Chicago (the "Pass Through Trustee"), as trustee under each Pass Through Trust. Each Pass Through Trust will be a separate entity |
| Pass Through Trust Property | The property of the Pass Through Trusts will consist of equipment notes (the "Equipment Notes") issued on a nonrecourse basis by the Owner Trustees in connection with six separate leveraged lease transactions to finance not more than 80% of the equipment cost to such Owner Trustees, on behalf of certain Owner Participants, of ten groups of automotive production equipment (or, when relevant, Saturn's rights in respect of certain automotive production equipment under a certain industrial development revenue bond lease) (each an "Equipment Group" and collectively, the "Equipment") which will be acquired by such Owner Trustees from General Motors or Saturn and leased to General Motors or Saturn (General Motors and Saturn in their capacity as lessees are referred to herein collectively as the "Lessees") Each Equipment Note will be issued as part of a single series under an indenture supplement (an "Indenture Supplement") which relates to a single Equipment Group and which is supplemental to one of six indentures (each, an "Indenture") |
| | Each Equipment Group comprises one or more items of automotive production equipment or groups of items of automotive production equipment which constitute an integrated system of automotive production equipment (each item or integrated system, an "Item") Additional information concerning the Equipment Groups is contained below in "Use of Proceeds" Each Pass Through Trust will acquire those Equipment Notes having an interest rate corresponding with the interest rate applicable to the Pass Through Certificates, Series 1991-A (the "Pass Through Certificates"), that will be issued by such Pass Through Trust. The Equipment Notes acquired by each Pass Through Trust will mature on or before the final distribution date applicable to the Pass Through Certificates issued by such Pass Through Trust The aggregate principal amount of the Equipment Notes held in each Pass Through Trust will be the same as the aggregate principal amount of the Pass Through Certificates issued by that Pass Through Trust |

4

| | |
|---|---|
| Pass Through Certificates Offered, Book-Entry Registration  . . . . | Each Pass Through Certificate will represent a fractional undivided interest in the related Pass Through Trust The Pass Through Certificates will be issued in fully registered form only See "Description of the Pass Through Certificates — General" The Pass Through Certificates will be registered in the name of Cede & Co ("Cede"), as the nominee of The Depository Trust Company ("DTC")  No person acquiring an interest in the Pass Through Certificates will be entitled to receive a definitive certificate (a "Registered Certificate") representing such person's interest in the Pass Through Trust, except in the event that Registered Certificates are issued under the limited circumstances described herein  See "Description of the Pass Through Certificates — Book-Entry Registration" and "— Registered Certificates." |
| Denominations | The Pass Through Certificates of each Pass Through Trust will be issued in minimum denominations of $1,000 and any integral multiple of $1,000 in excess thereof  See "Description of the Pass Through Certificates — General" |
| Regular Distribution Dates | January 2 and July 2 |
| Special Distribution Dates | The second day of any month |
| Record Dates | The fifteenth day preceding a Regular Distribution Date or Special Distribution Date |
| Distributions | Payments of interest on the Equipment Notes held in each Pass Through Trust are scheduled to be received in specified amounts by the Pass Through Trustee of such Pass Through Trust on January 2 or July 2 of each year, commencing January 2, 1992, and are to be distributed to the Certificateholders of such Pass Through Trust on such dates  Payments of principal on the Equipment Notes held in each Pass Through Trust are scheduled to be received in specified amounts by the Pass Through Trustee of such Pass Through Trust on January 2 or July 2, or both, of each year, commencing January 2, 1992 in the case of Pass Through Trust-A1 and January 2, 2000 in the case of Pass Through Trust-A2 and are to be distributed to the Certificateholders of each Pass Through Trust on the corresponding Regular Distribution Dates  Payments of principal, premium, if any, and interest on the Equipment Notes held in each Pass Through Trust resulting from prepayments thereof, if any, will be distributed on a Special Distribution Date after not less than 20 days' notice from the Pass Through Trustee to the Certificateholders of such Pass Through Trust  For a discussion of distributions upon an Event of Default, see "Description of the Pass Through Certificates — Events of Default and Certain Rights Upon an Event of Default." |
| Method of Distributions | So long as the Pass Through Certificates are registered in the name of Cede as nominee of DTC, distributions by the Pass Through Trustee will be made in same-day funds to DTC, which will in turn make distributions to participants in DTC ("DTC Participants") in clearinghouse or next-day funds  The final distribution of principal with respect to the Pass Through |

5

Certificates of any Pass Through Trust will be made by DTC to DTC Participants in same-day funds Responsibility for distributions by DTC Participants to beneficial owners of the Pass Through Certificates will be the responsibility of such DTC Participants and will be made in accordance with customary industry practices See "Description of the Pass Through Certificates — Payments and Distributions " At such time, if any, as Registered Certificates are issued representing the Pass Through Certificates and are not registered in the name of Cede, as nominee for DTC, distributions by the Pass Through Trustee to Certificateholders, other than the final distribution, will be made by check mailed to each Certificateholder of record on the applicable record date at its address appearing on the register The final distribution with respect to the Pass Through Certificates of any Pass Through Trust will be made only upon surrender and presentation thereof at the office or agency of the Pass Through Trustee. See "Description of the Pass Through Certificates — Payments and Distributions "

**Special Payment Upon Unavailability of Items** . . ... . .... Certain Items will not be delivered until after the issuance of the Pass Through Certificates To the extent that any proceeds of the sale of the Pass Through Certificates have not been applied by the Pass Through Trustee by December 31, 1991 to the purchase of the related Equipment Notes which were contemplated to be held in the related Pass Through Trust, such proceeds shall be distributed on February 2, 1992 or an earlier Special Distribution Date to the Certificateholders on a pro rata basis, together with accrued interest thereon, but without premium. See "Description of the Pass Through Certificates — Delayed Purchase" and "— Special Payment Upon Unavailability of Items."

**Interest** . . . . . . . . . . . . . . . . . . . . . . . . . Interest on the Pass Through Certificates of each Pass Through Trust will be passed through at the rate per annum indicated on the cover of this Prospectus for such Pass Through Trust, which is the interest rate borne by the Equipment Notes to be held in such Pass Through Trust Interest is calculated on the basis of a 360-day year consisting of twelve 30-day months See "Description of the Pass Through Certificates — General "

**Scheduled Payments of Principal** . Each Pass Through Trust will hold Equipment Notes whose principal is payable in scheduled amounts on January 2 or July 2, or both, of each year, commencing on January 2, 1992 in the case of Pass Through Trust-A1 and January 2, 2000 in the case of Pass Through Trust-A2. See "Description of the Pass Through Certificates — Payments and Distributions" and "Description of the Equipment Notes — Principal Payments "

**Equipment Notes  General** . Interest will be payable in arrears on the Equipment Notes on the unpaid principal amount thereof on January 2 and July 2 in each year, commencing on January 2, 1992

6

Equipment Notes: Prepayment . . . ..     The Equipment Notes may be prepaid under the following circumstances:

(a) If an Event of Loss to an Item shall occur and like kind equipment of equivalent value is not substituted for such Item, the applicable Lessee is obligated to pay the Stipulated Loss Value of such Item; provided, however, that such a substitution may occur only in the absence of a Lease Event of Default or Material Default. Such payment will be used to prepay a portion of the series of Equipment Notes issued with respect to the Equipment Group of which such Item is a part on the next succeeding January 2 or July 2, as the case may be (each, a "Prepayment Date"), which is at least 90 days after the occurrence of such Event of Loss The amount prepaid will be equal to the sum of (i) as to principal, an amount equal to the product obtained by multiplying the aggregate unpaid principal amount of the Equipment Notes issued with respect to such Equipment Group as at the Prepayment Date by a fraction, the numerator of which shall be the Lessor's Cost of such Item and the denominator of which shall be the aggregate Lessor's Cost of all Items included in such Equipment Group immediately prior to the Prepayment Date, and (ii) as to interest, the aggregate amount of interest accrued and unpaid in respect of the principal amount to be prepaid pursuant to clause (i) above on such Prepayment Date. No premium will be payable in the event of a prepayment under such circumstances

(b) If a Lessee elects to exercise its right to terminate a Lease pursuant to the terms thereof with respect to some or all of the Items leased thereunder or if a Lessee exercises its right to purchase some or all of the Equipment Groups (but not less than all of the Equipment Groups under lease for a particular term at a particular location on behalf of a particular Owner Participant) in accordance with the terms of the applicable Lease (unless such Equipment Notes are exchanged for new notes in accordance with the terms of the applicable Indenture), a portion of the proceeds from Lessee's payment of the Termination Value or purchase option price, as the case may be, will be used to prepay Equipment Notes relating to such Item or Equipment Group. The amount prepaid will be equal to the principal and accrued interest thereon, computed as provided in paragraph (a) above plus a make-whole premium See "Description of the Equipment Notes — Prepayment" for a description of the manner of computing the make-whole premium.

(c) The Owner Trustee may, under certain circumstances, (i) prepay all, but not less than all, of the Equipment Notes issued by such Owner Trustee and held in a particular Pass Through Trust or (ii) prepay all, but not less than all, of the Equipment Notes issued by such Owner Trustee under any Indenture Supplement at a price equal to the aggregate unpaid principal amount thereof, together with accrued inter-

7

est thereon, plus a make-whole premium referred to in paragraph (b) above.

(d) If under any Indenture an Indenture Default shall have occurred and be continuing and the Indenture Trustee has given notice of its intent to accelerate the Equipment Notes thereunder or to exercise other substantial remedies, the applicable Owner Trustee may elect to prepay or purchase all of the then outstanding Equipment Notes issued under such Indenture at a price equal to the unpaid principal amount thereof, together with accrued interest thereon to the date of prepayment or purchase, but without premium.

See "Description of the Equipment Notes — Prepayment."

**Equipment Notes' Security**

The Equipment Notes issued with respect to each Equipment Group will be secured by a security interest in the Items included in such Equipment Group (or, when relevant, the Owner Trustee's rights in the County Lease (as defined below) with respect to such Equipment Group) and an assignment to the Indenture Trustee of all of the Owner Trustee's rights under the Lease and the Guaranty (as defined below) with respect to such Equipment Group, including the right to receive rent thereunder, with certain exceptions, in respect of such Equipment Group from the Lessees.

One of the jurisdictions in which a significant portion of the Equipment is located has entered into an arrangement whereby Saturn is permitted to make certain payments in lieu of property taxes otherwise due In order to effect such arrangements, the Industrial Development Board of Maury County, Tennessee (the "Board") issued industrial development revenue bonds due in 2025 to General Motors (the "Bonds"), and used the proceeds of the Bonds to obtain record title to the facility and equipment used by Saturn, including some of the Equipment Such facility and equipment are leased to Saturn pursuant to an industrial development revenue bond lease (the "County Lease") For the three Equipment Groups subject to the County Lease, the Owner Trustee will be assigned certain of Saturn's rights under the County Lease as it relates to such Equipment Groups The rights of the Owner Trustees under the County Lease will be assigned to the Indenture Trustees

The Equipment Notes are not cross-collateralized and, consequently, the Equipment Notes issued in respect of any one Equipment Group are not secured by any of the other Equipment Groups or the Lease Supplements related thereto There are no cross-default provisions in the Indentures and, consequently, events resulting in an Indenture Default under any particular Indenture may not result in an Indenture Default occurring under any other Indenture. If the Equipment Notes issued in respect of one or more Equipment Groups under a particular Indenture are in default, the Equipment Notes issued in respect of the remaining Equipment Groups under the other Indentures may not be in default and, if not in default, no remedies will be exercisable under the Indentures with respect

8

to such remaining Equipment Groups However, since a Lease Event of Default which has not been cured or waived could constitute an Indenture Default and there are cross-default provisions among each of the Leases between the Lessees and an Owner Trustee on behalf of a particular Owner Participant, there could be cross-defaults under all Indentures which are entered into by an Owner Trustee on behalf of a particular Owner Participant. See "Description of the Equipment Notes — Security"

Although the Equipment Notes are not obligations of, or guaranteed by, the Lessees, the amounts payable by the Lessees under the Leases are scheduled to be at least sufficient to pay in full when due all payments of principal of, premium, if any, and interest on the Equipment Notes See "Description of the Equipment Notes — General"

| | |
|---|---|
| Exchange of Equipment Notes Under Certain Circumstances . . | *Under certain circumstances, a Lessee (or an affiliate) has the right, subject to certain conditions, to cause the Pass Through Trustee to exchange all of the Equipment Notes issued under one or more Indenture Supplements for full recourse, unsecured notes of General Motors or any of its affiliates Such new notes will be issued in the full outstanding principal amount, bear the same interest rate, be payable in installments in the same manner, have the same final maturity and otherwise have substantially the same terms as the Equipment Notes being exchanged, with appropriate modifications to reflect the unsecured character of such new notes. If the Equipment Notes are exchanged for notes of an affiliate of General Motors, such affiliate's obligations under the notes will be irrevocably and unconditionally guaranteed by General Motors* See "Description of the Equipment Notes — Exchange of the Equipment Notes Under Certain Circumstances" For a discussion of the possible tax consequences of such exchange, see "Certain Federal Income Tax Consequences — Sales of Pass Through Certificates" |
| Additional Equipment Notes . | Under certain circumstances, additional Equipment Notes may be issued under one or more of the Indenture Supplements to finance the cost of certain alterations, modifications, additions or improvements to any Item in a given Equipment Group. *Additional Equipment Notes issued to finance the cost of alterations, modifications, additions or improvements to any Item in a given Equipment Group will be equally and ratably secured by such Equipment Group. See "Description of the Equipment Notes — Prepayment" and "— The Leases — Net Lease; Modifications and Additional Equipment Notes"* |
| The Guaranties . .. | General Motors will enter into three Guaranties (the "Guaranties") pursuant to which it will irrevocably and unconditionally guarantee all obligations of Saturn under the Leases under which Saturn is the Lessee See "Description of the Equipment Notes — The Guaranties" |

9

| | |
|---|---|
| Use of Proceeds . | The proceeds from the sale of the Pass Through Certificates will be used by the Pass Through Trustee to purchase the Equipment Notes from the Owner Trustees. The Owner Trustees will use such proceeds to finance not more than 80% of the Lessor's Cost of the Equipment, representing in the aggregate the entire debt portion of the six separate leveraged lease transactions The net proceeds to General Motors and Saturn from the sale of the Equipment Groups will be used by General Motors and Saturn for general corporate purposes See "Use of Proceeds " |
| Pass Through Trustee    .        . | The First National Bank of Chicago will act as trustee, paying agent and registrar for the Pass Through Certificates. The First National Bank of Chicago also will act as the Indenture Trustee for the Equipment Notes |
| Federal Income Tax Consequences | Each Pass Through Trust should be classified as a grantor trust for federal income tax purposes, and each Certificateholder of each Pass Through Trust should be treated as the owner of a pro rata undivided interest in each of the Equipment Notes and any other property held in such Pass Through Trust and should report on its federal income tax return its pro rata share of income from such Equipment Notes in accordance with such Certificateholder's method of accounting See "Certain Federal Income Tax Consequences " |
| ERISA Considerations . . .      . . | As described herein, the Pass Through Certificates may be purchased by employee benefit plans that are subject to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), provided that, in order to comply with ERISA, the fiduciary acting on behalf of each employee benefit plan that purchases Pass Through Certificates will be required to represent and warrant that (i) the fiduciary is a qualified professional asset manager, or "QPAM", under the QPAM Exemption (as defined in "ERISA Considerations" below) and (ii) the purchase of the Pass Through Certificates qualifies for the QPAM Exemption from ERISA's prohibited transaction rules See "ERISA Considerations " |

10

## FORMATION OF THE PASS THROUGH TRUSTS

The Pass Through Trusts will be formed pursuant to two separate Pass Through Trust Agreements (in each case, an "Agreement") by and among General Motors, Saturn and the Pass Through Trustee. Upon or prior to the execution and delivery of the Agreements, the Pass Through Trustee, on behalf of each Pass Through Trust, will enter into six separate participation agreements with respect to all of the Equipment Groups (in each case, a "Participation Agreement") pursuant to which it will, among other things, purchase Equipment Notes having an interest rate equal to the interest rate of the Pass Through Certificates issued by such Pass Through Trust. The Equipment Notes acquired by each Pass Through Trust will mature on or before the final distribution date of the Pass Through Certificates that will be issued by such Pass Through Trust. The two Pass Through Trusts, taken together, will hold all the Equipment Notes originally issued, representing in the aggregate the entire debt portion of the six separate leveraged lease transactions. The Pass Through Trustee will distribute the amount of payments of principal, premium, if any, and interest received by it as holder of the Equipment Notes to the Certificateholders of the Pass Through Trust in which such Equipment Notes are held. See "Description of the Pass Through Certificates — General" and "Description of the Equipment Notes — General."

## DESCRIPTION OF PAYMENT FLOWS

The following diagram illustrates certain aspects of the payment flows in this transaction among the Lessees, the Owner Trustees, the Indenture Trustees, the Pass Through Trustees and the Certificateholders.

For each of the six separate leveraged lease transactions, the Lessee leases one or more Equipment Groups from an Owner Trustee, as lessor for such Equipment Groups under a Lease and one or more Lease Supplements entered into pursuant thereto, with each Lease Supplement covering a particular Equipment Group. A single series of Equipment Notes with respect to each Equipment Group will be issued under an Indenture by the Owner Trustee pursuant to an Indenture Supplement. Rent is payable under the Lease to the Owner Trustee, as lessor. However, as a result of the assignment of the Lease and its related Lease Supplements to the Indenture Trustee, the Lessee will make rental payments directly to the Indenture Trustee. From these rental payments the Indenture Trustee will, on behalf of the Owner Trustee, first make payments to the Pass Through Trustee as required to meet obligations under the Equipment Group relating to such Equipment Group and will pay the remaining balance to the Owner Trustee, for the benefit of the Owner Participant. The Pass Through Trustee will distribute payments received on the Equipment Notes relating to such Equipment Group (together with payments received on the Equipment Notes relating to the other Equipment Groups which are the subjects of the other lease transactions) held in such Pass Through Trust to the Certificateholders as required under the terms of the Pass Through Certificates. The First National Bank of Chicago will act initially both as Pass Through Trustee of the two Pass Through Trusts and as Indenture Trustee under the six Indentures.

11



**General Motors Corporation/Saturn Corporation**

Lease Rental Payments Assigned by Owner Trustees

* Equipment Notes with respect to these three Equipment Groups will be issued under one Indenture with three separate Indenture Supplements

† Excess Payments related to Equipment Groups 2 through 10 flow to their respective Owner Trustees and Owner Participants in the same manner as is shown for Equipment Group 1

12

## USE OF PROCEEDS

The Pass Through Certificates are being issued in order to facilitate the financing by Owner Trustees (as defined below) on behalf of certain Owner Participants (as defined below) of their purchase of the Equipment Groups to be leased to General Motors or Saturn. Proceeds from the Pass Through Certificates will be used by the Pass Through Trustee to purchase Equipment Notes issued by the Owner Trustee which, in turn, will use the proceeds to purchase the Equipment Groups on behalf of the Owner Participants The Equipment is automotive production equipment (or, when relevant, Saturn's rights in respect of certain automotive production equipment under the County Lease) that has been, or will be, placed in service in 1990 and 1991 in General Motors' or Saturn's existing automotive production facilities and is being purchased by the Owner Trustees, on behalf of certain Owner Participants, from General Motors or Saturn The facilities in which the Equipment Groups will be located at the time of purchase are in Spring Hill, Tennessee (Saturn); Tonawanda, New York (General Motors Powertrain Division); Buffalo, New York (General Motors Saginaw Division), Lockport, New York (General Motors Harrison Division), Saginaw, Michigan (General Motors Saginaw Division), and Toledo, Ohio (General Motors Powertrain Division)

The Equipment Notes will be issued under six separate Trust Indenture and Security Agreements (each an "Indenture"), each such Indenture being between The First National Bank of Chicago, as trustee thereunder (in such capacity, the "Indenture Trustee"), and The Connecticut National Bank, not in its individual capacity (except as expressly set forth therein) but solely as owner trustee (the "Owner Trustee") of a separate trust for the benefit of an institutional investor (the "Owner Participant") Each Owner Participant will provide from sources other than the Equipment Notes, at least 20% of the equipment cost of the related Equipment Groups as an equity investment. No Owner Participant, however, will be personally liable for any amount payable under the related Indenture or Indenture Supplement or any series of Equipment Notes issued thereunder

The net proceeds to General Motors and Saturn from the sale of the Equipment Groups will be used by General Motors and Saturn for general corporate purposes

The following table sets forth information with respect to each of the Equipment Groups·

|  |  | Lessee | Aggregate Cost of Equipment to Owner Trustees | Principal Amount of Equipment Notes | Final Maturity Date of Equipment Notes |
|---|---|---|---|---|---|
| Equipment Group 1 | . | Saturn | $182,166,700 | $145,733,359 | January 2, 2003 |
| Equipment Group 2 . | .. | Saturn | 168,647,000 | 134,917,598 | January 2, 2003 |
| Equipment Group 3 | . | Saturn | 198,249,000 | 157,463,393 | July 2, 2009 |
| Equipment Group 4 | .. | General Motors | 49,136,209 | 39,308,966 | January 2, 2005 |
| Equipment Group 5 | ..... | General Motors | 4,816,736 | 3,853,389 | January 2, 2003 |
| Equipment Group 6 | ... .. . | General Motors | 10,940,000 | 8,751,998 | January 2, 2004 |
| Equipment Group 7 | ...... | General Motors | 9,820,734 | 7,856,589 | July 2, 2002 |
| Equipment Group 8 | .... | General Motors | 1,204,535 | 963,626 | January 2, 2004 |
| Equipment Group 9 . |  | General Motors | 23,040,000 | 18,432,000 | July 2, 2002 |
| Equipment Group 10 | . | General Motors | 3,189,371 | 2,551,496 | July 2, 2003 |
| Total    . .. | .... |  | $651,210,285 | $519,832,414 |  |

## THE LESSEES

The major portion of General Motors' operations is derived from the automotive products industry, consisting of the design, manufacture, assembly, and sale of automobiles, trucks, and related parts and accessories General Motors also has financing, insurance, defense and electronic data processing operations and produces products and provides services in other industries The financing and insurance operations assist in the merchandising of General Motors' products as well as other products General Motors Acceptance Corporation ("GMAC") and its subsidiaries, as well as certain other subsidiaries of General Motors, offer financial services and certain types of insurance to dealers and customers. In addition, subsidiaries of GMAC



## Ohio National Financial Services.

**1909  100 Years  2009**

*Life changes. We'll be there* ®

One Financial Way
Cincinnati, Ohio 45242

Post Office Box 237
Cincinnati, Ohio 45201-0237
Telephone  513 794 6100
www.ohionational.com

October 15, 2009

The Garden City Group, Inc.
P.O. Box 9386
Dublin, Ohio  43017

Attention:  Motors Liquidation Company Claims Processing

To Whom It May Concern:

Enclosed are the claims of The Ohio National Life Insurance Company.

Very truly yours,

Joseph M. Fischer
Assistant Counsel

JMF mam

Enclosures

Garden City Group

The Ohio National Life Insurance Company
Ohio National Life Assurance Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x
:
In re                                              :          Chapter 11 Case No.
:
**MOTORS LIQUIDATION COMPANY**, *et al.*,          :          **09-50026 (REG)**
    f/k/a General Motors Corp., *et al.*    :
:
        Debtors.                       :          **(Jointly Administered)**
:
--------------------------------------------------------------x

### ORDER GRANTING DEBTORS' OBJECTION TO PROOFS OF CLAIM NO. 12903 AND 12904 FILED BY OHIO NATIONAL LIFE INSURANCE COMPANY

Upon the objection to proofs of claim numbers 12903 and 12904 filed by Ohio

National Life Insurance Company, dated February 24, 2011 (the "**Objection**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in

possession (collectively, the "**Debtors**"), pursuant to section 502(b) of title 11, United States Code

(the "**Bankruptcy Code**"), and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure,

seeking entry of an order disallowing and expunging proofs of claim numbers 12903 and 12904,

all as more fully described in the Objection; and due and proper notice of the Objection having

been provided, and it appearing that no other or further notice need be provided; and the Court

having found and determined that the relief sought in the Objection is in the best interests of the

Debtors, their estates, creditors, and all parties in interest and that the legal and factual basis set

forth in the Objection establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, proofs of claim number 12903 and 12904 is disallowed and expunged from the claims registry in its entirety; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2011

_____

UNITED STATES BANKRUPTCY JUDGE