**HEARING DATE AND TIME: March 1, 2011 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
| f/k/a General Motors Corp., *et al.* | : | |
| Debtors. | : | (Jointly Administered) |

**DEBTORS' OMNIBUS REPLY TO OBJECTIONS RECEIVED IN CONNECTION WITH MOTION OF THE DEBTORS FOR ENTRY OF AN ORDER ESTIMATING MAXIMUM AMOUNT OF CERTAIN CLAIMS FOR PURPOSES OF ESTABLISHING CLAIMS RESERVES UNDER THE DEBTORS' <u>AMENDED JOINT CHAPTER 11 PLAN</u>**

## TABLE OF CONTENTS

**Page**

Preliminary Statement .................................................................................................................... 1

The Unresolved Objections Lack Merit ......................................................................................... 2

    A. Toyota PRA Claim ............................................................................................. 2

    B. NUMMI Claim .................................................................................................. 3

    C. State of New York Claims ................................................................................. 5

    D. Claims Related to the Onondaga Lake Superfund Site ...................................... 9

        a. Town of Salina ........................................................................................ 10

        b. Onondaga County ................................................................................... 11

        c. United Technologies ............................................................................... 11

    E. Daniel Plouffe Claim ........................................................................................ 12

This Court Can and Should Approve the Maximum Amount of the Estimated Claims .............. 13

Conclusion ................................................................................................................................... 14

# **TABLE OF AUTHORITIES**

## CASES

*In re Adelphia Bus. Solutions, Inc.*,
341 B.R. 415 (Bankr. S.D.N.Y. 2003) .......... 13

*O'Neill v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines*),
981 F.2d 1450 (5th Cir. 1993) .......... 13

*In re N.Y. Med. Group, P.C.*,
265 B.R. 408 (Bankr. S.D.N.Y. 2001) .......... 13

## STATUTES

11 U.S.C. 502(e)(1)(B) .......... 7

11 U.S.C. 502(c) .......... 13

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), file this omnibus reply (the "**Reply**") to the Objections (as hereinafter defined) interposed to the Motion of Debtors for Entry of an Order Estimating Maximum Amount of Certain Claims for Purposes of Establishing Claims Reserves Under the Debtors' Amended Joint Chapter 11 Plan, dated February 11, 2011 (ECF No. 9213) (the "**Partially Unliquidated Reserve Motion**"), and respectfully represent:

**Preliminary Statement**

1. On February 11, 2011, the Debtors filed the Partially Unliquidated Reserve Motion requesting that the Court estimate the maximum amount of approximately 530 partially unliquidated Claims[1] (the "**Estimated Claims**"), 235 of which were subject to pending formal objections. The Debtors received only 11 objections (the "**Objections,**" and the parties filing responses, the "**Objecting Parties**") in response to the Partially Unliquidated Reserve Motion and have consensually resolved four of the Objections, leaving only seven remaining Objections to the Partially Unliquidated Reserve Motion. The seven unresolved Objections are discussed in detail below.

2. As described in the Partially Unliquidated Reserve Motion, the Estimated Claims are largely liquidated, but also include additional potential claim amounts that are unliquidated, such as, interest and fees to be determined. The Debtors believe that the unliquidated amounts in the Estimated Claims, in many cases, are speculative and protective in nature. Prior to filing the Partially Unliquidated Reserve Motion, the Debtors made written requests to entities filing such claims to liquidate the claims or provide a cap for reserve

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Partially Unliquidated Reserve Motion and the Debtors' Amended Joint Chapter 11 Plan (the "Plan").

purposes. Since filing the Partially Unliquidated Reserve Motion, the Debtors and their professionals have engaged in discussions with several claimants resulting in the liquidation for reserve purposes of approximately twenty (20) additional claims, thus eliminating the need for an objection. At this stage of these chapter 11 cases, in order to establish appropriate reserves and be able to move forward with distributions under the Plan, the Debtors must address any remaining unliquidated amounts.

3.  Accordingly, the Debtors file this Reply and respectfully submit that the Objections should be denied and request that the Court estimate the maximum amount of the remaining Estimated Claims for purposes of establishing claims reserves under the Plan.[2]

### The Unresolved Objections Lack Merit

4.  As referenced above, only seven Objections remain unresolved at this time. Of the seven Objections that remain unresolved, three were filed by claimants in connection with the Onondaga Lake Superfund site in New York.[3] The remaining Responses were filed by Toyota Motor Corporation ("**Toyota**") (ECF No. 69721), New United Motor Manufacturing, Inc. ("**NUMMI**") (ECF No. 9365), the State of New York (ECF No. 9387), and an individual claimant, Mr. Daniel Plouffe (ECF Nos. 9403 and 9406). The Debtors address each of the unresolved Objections in detail below.

**A.**  *Toyota PRA Claim*

5.  On December 31, 2009, Toyota asserted a general unsecured claim against MLC in the amount of $3,200,000 based upon asserted damages resulting from MLC's rejection

---

[2] The Debtors will present a revised proposed order and exhibits listing the partially unliquidated claims at the Hearing.

[3] *See* ECF No. 9337 filed by Town of Salina, ECF No. 51099 filed by the County of Onondaga, State of New York ("**Onondaga County**"), and ECF No. 9386 filed by United Technologies.

of a Product Responsibility Agreement for Toyota-Specific Vehicles entered into on March 31, 1986, as reflected in proof of claim number 69721 (the "**Toyota PRA Claim**"). Based upon the liquidated amount of the Toyota PRA Claim, through the Partially Unliquidated Reserve Motion, the Debtors propose to estimate the Toyota PRA Claim at $3,200,000 for purposes of establishing claims reserves under the Plan.

6. In its Objection, Toyota asserts that the amount of the Toyota PRA Claim was only an estimate of the rejection damages and that the actual rejection damages suffered by Toyota are much greater than the estimate. The Objection indicates, and Toyota's counsel has reiterated, that Toyota is "recalculating its estimate of the appropriate amount of rejection damages associated with the Toyota PRA" and upon completion Toyota will file a supplement to the Objection and an amendment to the Toyota PRA Claim. (*See* ECF No. 9334, ¶¶ 9-10.)

7. In hopes of reaching a consensual resolution in advance of this Reply, the Debtors reached out to Toyota's counsel to request a proposed estimate for reserve purposes for the Toyota PRA Claim and understand that an estimate of the Toyota PRA Claim is forthcoming. Once received, the Debtors will work with Toyota in good faith to establish an agreed-upon estimate for the Toyota PRA Claim for reserve purposes under the Plan.

8. Should Toyota fail to provide a reasonable, revised estimate of the Toyota PRA Claim prior to the Hearing, the Debtors respectfully request the Court estimate the Toyota PRA Claim in the current liquidated amount of $3.2 million for reserve purposes under the Plan, as requested in the Partially Unliquidated Reserve Motion.

**B.**     *NUMMI Claim*

9. On November 24, 2009, NUMMI asserted a general unsecured claim in the amount of $500 million against MLC, as reflected in proof of claim number 67357, alleging

3

(1) breach of contract; (2) implied breach of contract and similar principles, including "detrimental reliance on express/implied representations," "implied contractual indemnity," and "equitable indemnity," and (3) breach of fiduciary duty (the "**NUMMI Claim**").

10. On April 1, 2010, MLC filed an objection to the NUMMI Claim (ECF No. 5404) (the "**NUMMI Claim Objection**") arguing that the plain language of the relevant agreements governing the relationship between MLC and NUMMI establish that there is no supportable legal or factual basis for the NUMMI Claim. NUMMI filed a response to MLC's objection on May 24, 2010 (ECF No. 5854), and MLC filed a reply to NUMMI's response on November 4, 2010 (ECF No. 7655). At the November 9, 2010 hearing on the NUMMI Claim Objection, the Court asked that the parties treat the claims as a plenary litigation and directed NUMMI to re-plead its claim in the style of an adversary complaint.

11. On November 23, 2010, the Debtors, NUMMI, and Toyota entered into a joint stipulation and scheduling order regarding the NUMMI Claim and two other claims filed by Toyota (ECF No. 7941) (the "**NUMMI Stipulation and Order**"). The NUMMI Stipulation and Order provided that NUMMI would file an adversary complaint as a substitute for, and consistent with the NUMMI Claim to initiate an adversary proceeding against MLC, and that such complaint would "be in a fixed and liquidated amount no greater than the Proof of Claim previously filed by NUMMI." NUMMI Stipulation and Order at 2. At the time, it was openly discussed with, counsel for NUMMI that the purpose of this language was to avoid the need to estimate the claim prior to confirmation of the Debtors' Plan.

12. On November 24, 2010, NUMMI filed an adversary complaint asserting claims for breach of contract and promissory estoppel (the "**NUMMI Complaint**") and thereby commenced Adversary Proceeding Case No. 10-05016 against MLC (the "**NUMMI Adversary**

4

**Proceeding**"). MLC filed a motion to dismiss the Adversary Proceeding on December 23, 2010, NUMMI filed an opposition brief on January 18, 2011, and the Debtors submitted a reply on February 1, 2011. Following oral argument on February 9, 2011, the Court took the matter under submission pending additional briefing on certain issues, as requested by the Court.

13. In its Objection, NUMMI argues that the Partially Unliquidated Reserve Motion improperly seeks to cap the NUMMI Claim at $500 million regardless of the result of the NUMMI Adversary Proceeding.

14. The Debtors view the NUMMI Claim as a liquidated claim for $500 million. As stated above, the NUMMI Stipulation and Scheduling Order provides that the Adversary Proceeding would serve as "a substitute for and consistent with the NUMMI Claim" and specified that the claims set forth in the NUMMI Complaint would "be in a fixed and liquidated amount no greater than the Proof of Claim previously filed by NUMMI." (NUMMI Stipulation and Order at 2.) The Debtors respectfully submit that the NUMMI Claim was included in the Partially Unliquidated Reserve Motion in an abundance of caution and that NUMMI's current position in the Objection is in violation of the NUMMI Stipulation and Order. Accordingly, consistent with the NUMMI Stipulation and Order, the Debtors request that the Court estimate the maximum amount of the NUMMI Claim for reserve purposes under the Plan at $500 million.

C. *State of New York Claims*

15. On November 25, 2009, the New York State Department of Environmental Conservation ("**NYSDEC**") asserted a general unsecured claim against MLC in the amount of $11 million for damages to the natural resources of the State of New York as a

result of contamination released from the Inland Fisher Guide System in Syracuse, as reflected in proof of claim number 50588 (the "**Inland Fisher Claim**").

16. Also on November 25, 2009, the NYSDEC asserted a general unsecured claim against Debtor Environmental Corporate Remediation Company, Inc. in the amount of $480,250.00 ("**ENCORE**") for estimated future remedial regulatory oversight costs related to the Tonawanda Endoline Spill at a facilities formerly owned by General Motors Corporation, as reflected in proof of claim number 69444 (the "**Tonawanda Claim**").

17. In total, the State of New York (the "**State**") filed twenty-one (21) proofs of claim totaling more than $198 million arising from the Debtors' environmental compliance obligations and liability for numerous environmentally contaminated sites in New York (the "**New York State Claims**"). With the exception of the Inland Fisher Claim and Tonawanda Claim, the remaining New York State Claims are fully liquidated claims.

18. In its Objection, ("the State's Objection") the State asserts that it is in the process of reviewing the New York State Claims and intends to amend and/or withdraw certain claims. The State argues that the Partially Unliquidated Reserve Motion "eliminates any ability for New York, and other environmental claimants, to amend a [claim] to update the estimated amount and assert a more accurate claim, as information becomes available and is evaluated." (State's Obj. at 5.)

19. The State further argues that the Partially Unliquidated Reserve Motion "impairs the ability for New York and other environmental claimants to pursue resolution of causes of action arising under State and Federal environmental laws, and to obtain full recovery of the amounts to which they ultimately may be entitled." *Id.*

20. The State's Objection ignores the fact that the claims process cannot remain open forever. In order for the Debtors to effectuate a plan of liquidation successfully without undue delay, there has to be finality in the claims process. Indeed, section 502(e) of title 11 of the United States Code (the "Bankruptcy Code") demonstrates a recognition that contingent claims must become fixed or be cutoff at some point in a case. *See* 11 U.S.C. 502(e)(1)(B) (disallowing claims for reimbursement or contribution that are "contingent as of the time of allowance or disallowance of such claim").

21. The State's Objection indicates that New York State has no objection to the Court's estimation of its claims at the face value set forth in the proofs of claim, but objects to capping at that amount. (State's Obj. at 6.) In an effort to achieve a consensual resolution, the Debtors have proposed to counsel for the State that the Inland Fisher Claim and the Tonawanda Claim be removed from the schedules to the Partially Unliquidated Reserve Motion and made subject to the Fully Unliquidated Claims Reserve, which would eliminate the capping of the individual amounts, while providing for distributions should the claims eventually become allowed. The Debtors believe that the cushion built into the reserves for that motion would be more than sufficient for this purpose. The Debtors will continue to pursue a consensual resolution of the reserve amounts with the State, however, in the event the parties are unable to reach agreement, the Debtors request that the Court estimate the maximum amount of the Inland Fisher Claim and the Tonawanda Claim at the liquidated amount of such claims as set forth in the proof of claim and as listed in exhibits to the Partially Unliquidated Reserve Motion.

22. Finally, the State's Objection asserts that the Debtors have not identified the amount reserved for disputed liquidated claims and requests clarification on the means by which the Debtors intend to reserve for fully liquidated claims. Although unrelated to the relief

7

sought in the Partially Unliquidated Reserve Motion, the Debtors nonetheless provide the clarification requested regarding reserves for liquidated claims.

23.  As set forth in the Partially Unliquidated Reserve Motion,[4] the Plan and GUC Trust Agreement, there are aggregate distribution reserves for Disputed Claims. Specifically, section 4.3 of the Plan provides for the distribution to each holder of an Allowed General Unsecured Claim in Class 3 as of the Distribution Record Date, "shall receive from the GUC Trust its Pro Rata Share of (i) the New GM Securities or the proceeds thereof, if any, and (ii) the GUC Trust Units, in accordance with the terms of the GUC Trust and the GUC Trust Agreement."

24.  Section 1.112 of the Plan sets forth the calculation of the Pro Rata Share for distribution purposes and defines "Pro Rata Share" as "the ratio (expressed as a percentage) of (i) the amount of any Allowed Claim in a particular Class to (ii) the sum of (x) the aggregate amount of Allowed Claims in such Class and (y) the aggregate amount of Disputed Claims in such Class."  Section 1.112 further provides that: "[t]he Debtors may seek a determination by the Bankruptcy Court of the amount that should be reserved in determining the Pro Rata Share on account of Disputed Claims on an individual or aggregate basis."

25.  Pursuant to Section 1.112 of the Plan, the Debtors filed the Fully Unliquidated Reserve Motion and the Partially Unliquidated Reserve Motion seeking a determination from this Court of the amounts to be reserved for unliquidated, disputed claims in determining the Pro Rata Share.  For fully liquidated claims, the Debtors use the liquidated face amount of such claims in order to determine the amount to be reserved in determining the "aggregate amount of Disputed Claims" for the calculation of the Pro Rata Share.

---

[4] *See* Partially Unliquidated Claims Reserve Motion ¶¶ 15-17.

8

26. Additionally, pursuant to Section 5.5 of the GUC Trust Agreement[5] the GUC Trust Administrator

> shall at all times, to the extent practicable, retain (a) sufficient GUC Trust Distributable Assets as the GUC Trust Administrator shall determine, in consultation with the GUC Trust Monitor and subject to the Budget, <u>as would be distributable (I) to all holders of Disputed General Unsecured Claims at the time outstanding as if all Disputed General Unsecured Claims were allowed at the Maximum Amount</u>, but only until such Disputed General Unsecured Claims are resolved . . .

(GUC Trust Agmt. § 5.5) (emphasis added). The GUC Trust Agreement provides that absent an agreement, estimation, or determination by the Bankruptcy Court, the "Maximum Amount" is "the liquidated amount set forth in the proof of claim filed by the holder of such claim." (GUC Trust Agmt § 1.1(jj)(A)(z).) Accordingly, the GUC Trust Agreement provides that absent an agreement, estimation, or determination by the Bankruptcy Court, the GUC Trust Administrator is required to reserve an amount for liquidated disputed claims in their liquidated amount until such claims are resolved.

**D.    *Claims Related to the Onondaga Lake Superfund Site***

27. As noted above, three of the unresolved Objections relate to claims relating to the Onondaga Lake Superfund Site in New York. The liabilities arising from the Onondaga Lake Superfund site are being negotiated on a global basis with the United States government and are included in the United States' environmental claim, proof of claim number 64064, for which the Debtors intend to reserve a maximum amount of such claim at $2,025,258,337.00 even though resolution is expected to result in a much lower aggregate amount. To the extent that the Objections filed by Town of Salina, Onondaga County, or United

---

[5] The GUC Trust Agreement is annexed as Exhibit "D" to the Plan.

9

Technologies assert that the proposed estimates for their claims are insufficient, their claims will be additionally protected by the EPA Claim.

    a.    <u>Town of Salina</u>

28.    The Town of Salina filed three proofs of claim against the Debtors asserting damages arising from the cleanup of various sites contaminated by the Debtors within the Town of Salina and the County of Onondaga in the State of New York. These claims have been assigned claim numbers 47951, 47952, and 47953 (together, the "**Town of Salina Claims**".) The Town of Salina's Objection asserts that it is unclear whether the $10 million estimate proposed for Claim No. 47952 in the Partially Unliquidated Reserve Motion also applies to claims 47951 and 47953, and to the extent that the $10 million estimate does cover those claims, the Town seeks a minimum reserve of $41,076,137.63.

29.    Claim Nos. 47951 and 47953 are fully liquidated claims and are therefore not included in either of the reserve motions. As discussed above, fully liquidated claims are being reserved for in the face amount of the claim as filed. Thus, for Claim No. 47951 the Debtors are reserving the stated amount of $12,498,818.63 and for Claim No. 47953 the Debtors are reserving the stated amount of $18,577,319.00, combined with the proposed estimate of $10,000,000.00 for Claim No. 47952, this results in a total reserve amount of $41,076, 137.63 for the Town of Salina Claims. Therefore, the Debtors are already reserving for the Town of Salina Claims in the amount requested in the Objection and no further relief is necessary.

30.    The remaining issues discussed in the Town of Salina's Objection concern the proposed method of distribution on Allowed Claims as set forth in the Plan, and the Town of Salina's standing to participate in the confirmation hearing and object to the Plan. The Debtors submit that these objections are confirmation-related objections rather than objections to the

10

relief sought in the Partially Unliquidated Reserve Motion and would be more properly dealt with at confirmation.

    b.    <u>Onondaga County</u>

    31.    In addition to the issues addressed above, the Onondaga County Objection ("Onondaga Objection") asserts that the Partially Unliquidated Reserve Motion "fails to identify the methodology or substantiate the basis for the proposed estimates." (Onondaga Objection at 5.) Since the filing of the Partially Unliquidated Reserve Motion, the Debtors and their professionals have engaged in discussions with numerous other claimants regarding revisions to the proposed estimates of their claims and agreed upon liquidated claim amounts for reserve purposes obviating the need for an Objection. The Objecting Parties, including Onondaga County, were free to propose a reasonable basis for an estimate in excess of the amounts proposed by the Debtors, and have failed to do so.

    c.    <u>United Technologies</u>

    32.    United Technologies is a potentially responsible party at the Onondaga Lake Superfund site and filed a contingent, unliquidated claim against MLC on November 29, 2009, reflected in proof of claim number 59874, for certain environmental liabilities (the "**United Technologies Claim**").

    33.    The Debtors have already objected to the United Technologies Claim under section 502(e) of the Bankruptcy Code, and it is subject to disallowance as a contingent contribution claim.

    34.    The United Technologies Objection also references the following related claims: United States of America (Claim No. 64064), Onondaga County (Claim No. 51099), Town of Salina (Claim No. 47952), and Honeywell (Claim No. 46498) and asserts that the actual

11

clean up costs could far exceed the caps proposed by the Debtors for those claims and could exceed $150 million. As discussed above, the Debtors are working to settle the liability arising from the Onondaga Lake Superfund site with the United States government and the $2 billion reserve amount proposed for the EPA Claim will apply to the Onondaga Lake Superfund site.

E.    *Daniel Plouffe Claim*

35.    On November 25, 2009, Daniel Plouffe asserted a general unsecured claim against MLC in the amount of $162,320 for services performed, as reflected in proof of claim number 45171. The Partially Unliquidated Reserve Motion seeks to estimate Mr. Plouffe's claim at its full liquidated stated amount for reserve purposes under the Plan.

36.    In his Objection ("Plouffe Objection"), Mr. Plouffe, a *pro se* claimant, requests that he "be permitted to have [his] claims stand as a valid claim against [MLC] and continue to participate in and recover whatever portion [of] funds is fair and appropriate." (Plouffe Obj. at 2.) To be clear, the Partially Unliquidated Reserve Motion does not seek to disallow Mr. Plouffe's claim; it seeks only to establish the maximum amount for the claim for purposes of establishing claims reserves under the Plan. The Plouffe Objection appears to be directed at the pending omnibus claims objection related to Claim No. 45171, rather than the relief sought in the Partially Unliquidated Claims Reserve Motion.[6]

**This Court Can and Should Approve the Maximum Amount of the Estimated Claims**

37.    As set forth more fully in the Partially Unliquidated Reserve Motion, this Court has authority to estimate the maximum amount of the Estimated Claims for purposes of

---

[6] In an effort to address the concerns expressed in the Plouffe Objection, the Debtors have tried to contact Mr. Plouffe to discuss the relief being requested in the Partially Unliquidated Reserve Motion. Unfortunately neither the Plouffe Objection nor his proof of claim include a phone number where he can be reached. On February 24, 2011, the Debtors sent a letter to Mr. Plouffe via overnight delivery offering to discuss the Plouffe Objection.

establishing claims reserves under the Plan. Nothing prohibits the Court from relying in part on the informed analysis of the Debtors and their professionals, in consultation with the Creditors' Committee and its professionals, in formulating appropriate estimates for the Estimated Claims. Section 502(c) of the Bankruptcy Code provides "a means for a bankruptcy court to achieve reorganization, and/or distribution on claims, without awaiting the results of legal proceedings that could take a very long time to determine." *See In re Adelphia Bus. Solutions, Inc.*, 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (*citing O'Neill v. Cont'l Airlines, Inc.* (*In re Cont'l Airlines*), 981 F.2d 1450, 1461 (5th Cir. 1993)); *see also In re N.Y. Med. Group, P.C.*, 265 B.R. 408, 415 (Bankr. S.D.N.Y. 2001) (estimation of a claim under 502(c)(1) is appropriate if liquidation of a claim "will take too long and unduly delay the distribution of the estate's assets.")

38. For the remaining Objections, the parties have not provided the Debtors with a reasonable basis to estimate the Estimated Claims for reserve purposes in excess of the amounts specified in the Partially Unliquidated Reserve Motion.

13

## **Conclusion**

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that the Court deny the Objections, and enter of an order granting the relief requested in the Partially Unliquidated Reserve Motion, and grant such other and further relief as is just.

Dated: New York, New York
       February 25, 2011

*/s/ Joseph H. Smolinsky*
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

14