**HEARING DATE AND TIME: March 3, 2011 at 9:45 a.m. (Eastern Time)**

KRAMER LEVIN NAFTALIS & FRANKEL LLP

1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 715-3275
Facsimile: (212) 715-8000
Thomas Moers Mayer
Robert T. Schmidt

*Counsel for the Official Committee*
*of Unsecured Creditors*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                                                 :
In re:                                                           :    Chapter 11 Case No.:
                                                                 :
MOTORS LIQUIDATION COMPANY, et al.                               :    09-50026 (REG)
        f/k/a General Motors Corp., et al.                       :
                                                                 :
                        Debtors.                                 :    (Jointly Administered)
                                                                 :
---------------------------------------------------------------- X

**NOTICE OF (I) FILING OF REVISED GUC TRUST AGREEMENT
AND (II) OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
FILING RELATING THERETO AND IN FURTHER SUPPORT OF
THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

TO:    THE HONORABLE ROBERT E. GERBER,
       UNITED STATES BANKRUPTCY JUDGE:

        The Official Committee of Unsecured Creditors (the "**Committee**") of the above-

captioned debtors and debtors-in-possession (collectively, the "**Debtors**"), by and through its

undersigned counsel, hereby submits this filing related to the GUC Trust Agreement and in

further support of the Debtors' Amended Joint Chapter 11 Plan, dated December 7, 2010 (as

maybe amended, the "**Plan**") [Docket No. 8015].  In support of this filing, the Committee

respectfully states as follows:

## Modifications to GUC Trust Agreement[1]

1.     The GUC Trust Agreement (the "**Agreement**") was filed with this Court on December 7, 2010, as Exhibit D to the Debtors' Amended Joint Chapter 11 Plan [Docket No. 8015].  Since that time, the Committee and its professionals have worked in conjunction with Wilmington Trust Company ("**WTC**") as the proposed GUC Trust Administrator, FTI Consulting, Inc. as the proposed GUC Trust Monitor, the Debtors, AP Services LLC, the U.S. Treasury, and each of their respective professionals in order to finalize the Agreement.  The changes that have been made to the Agreement are not substantive, do not affect the economics of the distributions to be made to holders of Allowed Class 3 Claims under the Plan and do not deviate from the Trust's stated purpose of resolving Disputed Claims and distributing assets of the Trust to or on account of holders of Allowed General Unsecured Claims in Class 3.

2.     In many instances, changes have been made to the Agreement in order to simplify or clarify distribution mechanics.  For example, in order to ensure precise compliance with the Trust's distribution mechanics and in order to avoid confusion, certain provisions that contained distribution mechanics in narrative form have been revised to show mathematical formulae producing the same result.  These mathematical formulae indicate with precision the manner of calculating the distributions contemplated by the Plan and in the Agreement.  In addition, exhibits were attached to the Agreement to provide examples of hypothetical distributions to holders of (i) Initial Allowed General Unsecured Claims, (ii) Resolved Allowed General Unsecured Claims, and (iii) Units receiving Excess GUC Trust Distributable Assets.

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in either the Plan or the Agreement.

KL2 2688605.3

3.    The following is a more complete list of the types of changes that have been made

to the Agreement:

- making all clean-up changes (e.g., filling in blanks, moving provisions for clarification purposes, deleting redundancies);

- revising and clarifying distribution calculations and mechanics and adding additional detail and transparency regarding how distributions are to be made to all holders of Allowed General Unsecured Claims in Class 3;

- revising distribution mechanics in order to provide for a more equitable distribution of fractional shares;

- providing for two additional holdbacks (the "Additional Holdback" and the "Reporting and Transfer Holdback", as defined in the Agreement) and providing for additional flexibility in adjusting the size of such holdbacks in order to ensure that the Trust will have sufficient cash available to fund all administrative expenses related to the GUC Trust and to ensure that the cost of administration is borne equitably among all holders of Allowed General Unsecured Claims. Specifically, the Reporting and Transfer Holdback will provide for the up front sale of $5 million in New GM Securities to cover the cost of any and all Exchange Act reporting required by the GUC Trust. This is contemplated by the Plan and will be borne ratably by all holders of Allowed General Unsecured Claims;

- resolving securities issues relating to the structure of the GUC Trust, including revising the Agreement to provide for compliance with all applicable SEC rules and regulations (including SEC reporting requirements) and the payment of associated costs;

- conforming the Agreement to all revisions made to the Plan;

- providing further detail and clarification regarding the Term Loan Avoidance Action and Other Avoidance Action Claims in conformity with the terms of the Avoidance Action Trust Agreement, which was drafted subsequent to the December 7, 2010 filing of the Agreement;

- revising the Agreement to reflect changes in the mechanics for distributions to holders of the Asbestos Trust Claim pursuant to the terms of the Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtors' Estimation Motion [Docket No. 8790];

- revising the Agreement to provide further detail and clarification regarding receipt and distribution of the Additional Shares, which may be paid to the GUC Trust from New GM pursuant to the MSPA;

- revising the Agreement to provide for additional review and oversight by the GUC Trust Monitor and the Bankruptcy Court;

- clarifying and providing more detail with respect to the GUC Trust's potential role in the wind-down of the Debtors' estates.

4.     In order to help parties in interest understand the changes that were made, the Committee has compiled a list of all notable changes showing, for each change listed, the nature of the change, the reason for the change, and highlighting all sections in which the change appears.   For ease of reference, these changes are described in the table annexed hereto as **Exhibit A.**   In addition, a copy of the Agreement, as modified, is annexed hereto as **Exhibit B** and a copy thereof, blacklined against the version attached to the Plan, is available on the Debtors' web site at www.motorsliquidationdocket.com and on the Committee's web site at www.motorsliquidationcreditorscommittee.com.

Dated: New York, New York
        February 25, 2011

**KRAMER LEVIN NAFTALIS & FRANKEL LLP**

By: /s/ Thomas Moers Mayer
Thomas Moers Mayer
Robert T. Schmidt
1177 Avenue of the Americas
New York, New York 10036
(212) 715-3275

Counsel for the Official Committee of Unsecured Creditors of Motors Liquidation Company, et al.

KL2 2688605.3

# Exhibit A

| GUC Trust Section Reference | Description of Change | Reason for Change |
|---|---|---|
| <u>Distribution Mechanics</u>:<br><br>§§ 1.1(d), 1.1(i), 1.1(n), 1.1(w), 1.1(zz), 1.1(xxx), 1.1(yyy), 2.3(c), 3.3, 5.2, 5.3, 5.4, 5.5, 5.6, 6.1 and 6.2 | • Distribution provisions (formerly in narrative form) have been converted to detailed formulae.<br>• Distribution procedures elaborated upon to take into account the holdbacks and Additional Shares.<br>• Distribution procedures for fractional shares revised as discussed below. | The provisions with respect to the distribution procedures have not substantively changed. However, the distribution provisions, which had been in narrative form, have been converted to detailed formulae in order to achieve more uniformity, precision and transparency in administration. |
| <u>Fractional Shares</u>:<br><br>§ 5.6 | Revised distribution mechanics for fractional shares:<br>• The Agreement now provides for the rounding up or down to the nearest whole number for the first distribution to each holder of an Allowed Claim;<br>• Fractional shares distributable in respect of Units shall be sold for cash in lieu of a distribution on each distribution date, rather than only the final distribution date;<br>• Fractional shares in respect of separate claims held by a single Unit holder shall be aggregated in determining the number of shares such Unit holder is entitled to receive. | The distribution mechanics for fractional shares have been revised in order to provide a more equitable and timely distribution of fractional shares. |

| GUC Trust Section Reference | Description of Change | Reason for Change |
|---|---|---|
| Holdbacks:<br><br>Background(E)(vii), Background(G), §§ 1.1(a), 1.1(iii), 1.1(jjj), 5.2, 5.2, 5.4, 6.1, 6.2 and 6.4 | • Additional Holdback created as a reserve for miscellaneous expenses not covered by the Budget.<br>• Reporting and Transfer Holdback added to create a reserve of $5 million of New GM Securities that may be sold by the GUC Trust in order to cover expenses related to Exchange Act reporting and costs associated with the transfer, registration for transfer and certification of any Units.<br>• Flexibility added to allow the release of assets from holdbacks.<br>• Conforming changes throughout the document. | The function of these new holdbacks, as well as the Protective Holdback (which was referenced in the earlier version of this Agreement), is: (i) to ensure, to the extent practicable, that the GUC Trust will be able to pay any expenses outside of its Budget; and (ii) to ensure, to the extent practicable, that such expenses are evenly distributed among holders of Allowed General Unsecured Claims, thereby promoting the fair, equitable and uniform treatment of all holders of Allowed General Unsecured Claims. |
| Compliance with SEC Rules and Regulations, and Associated Expenses:<br><br>§§ 4.1, 1.1(iii), 1.1(jjj), 1.1(mmm), 2.6(c), 6.1 and 6.3 | • Default duration of GUC Trust shortened from 5 years to 3 years.<br>• Provision made concerning Exchange Act reporting.<br>• Creation of a reserve to satisfy reporting expense (from the up front sale of New GM Securities designed to fund the Reporting and Transfer Holdback). | • The default duration of the GUC Trust has been shortened to fall within the parameters of No-Action Letters previously issued by the SEC Division of Investment Management concerning an exemption for liquidating trusts under the Investment Company Act of 1940.<br>• The Agreement has been amended to provide for the GUC Trust's compliance with all applicable Exchange Act reporting requirements.<br>• The Reporting and Transfer Holdback has been created to ensure that the GUC Trust's expenses are evenly distributed among the holders of Allowed General Unsecured Claims. |

KL2 2688605.3

| GUC Trust Section Reference | Description of Change | Reason for Change |
|---|---|---|
| Avoidance Actions: §§ 1.1(xxx), 1.1(yyy), 5.1(b), 5.1(c), 6.11, 8.4 and 8.1(d)(xx) | Provisions of the GUC Trust Agreement have been added/modified to clarify treatment of Term Loan Avoidance Action Claims and Other Avoidance Action Claims. | The Agreement has been revised to provide further detail and clarification regarding the treatment of Term Loan Avoidance Action Claims and Other Avoidance Action Claims in conformity with the terms of the Avoidance Action Trust Agreement, which was drafted subsequent to the December 7, 2010 filing of the Agreement. |
| Asbestos Trust Claim: §§ 1.1(n), 1.1(w) 1.1(ww), 2.3(a), 4.1, 5.2(a), 5.5(a) and 6.1(g) | • Initial distribution made directly by Debtors rather than by GUC Trust. <br> • The Asbestos Trust Claim is no longer treated as a Disputed Claim. | • The Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtors' Estimation Motion, the Asbestos Claimants' Committee and the Futures Claimants' Representative provided for this revision. <br> • The Asbestos Trust Claim has been Allowed in the amount of $625 million. |
| Additional Shares: §§ 1.1(b), 2.3(d), 5.3, 5.4 and 6.2 | Provision made for distribution of Additional Shares to be received pursuant to the MSPA. | The parties are in the process of amending the MSPA with regard to the issuance of the Additional Shares to the GUC Trust. The Agreement has been revised in anticipation of this amendment to the MSPA. |
| Consultation with GUC Trust Monitor: §§ 1.1(t), 1.1(y), 1.1(ww), 2.3(d), 3.5(b), 4.1, 5.2(a), 5.3(b), 5.4(d) and 6.1 | Required consultation with and/or approval from GUC Trust Monitor. | The Agreement has been revised in order to provide the GUC Trust Monitor with additional consultation and approval rights and obligations. These changes ensure that all significant actions of the GUC Trust are undertaken with the oversight, insight and authorization of both the GUC Trust Administrator and GUC Trust Monitor. |
| Approval from Bankruptcy Court: Background (G), §§2.6(b), 5.3(b) and 6.1 | Required approval from the Bankruptcy Court. | The Agreement has been revised to require Bankruptcy Court approval of certain actions to be taken by the GUC Trust. These changes provide an additional layer of oversight of the GUC Trust's operations and ensure that the GUC Trust operates with an element of transparency. |

KL2 2688605.3

| GUC Trust Section Reference | Description of Change | Reason for Change |
|---|---|---|
| Debtors' Liquidation:<br><br>§§ 1.1(o), 2.7, 6.1, 6.12, 7.3, 7.7(c), 8.1(c) and 9.6 | Provisions of the Agreement have been added/revised to provide clarification with respect to the potential role of the GUC Trust and its assets in the wind-down of MLC. | The Agreement has been modified to clarify that the GUC Trust assets set aside for distribution to holders of Allowed General Unsecured Claims will not be used to fund expenses associated with the wind-down of the Debtors' estates (with one exception allowing for the use of such assets as a last resort for the indemnification of the GUC Trust Administrator Parties and GUC Trust Monitor Parties). This clarification has been made to ensure that GUC Trust assets intended for the benefit Holders of Allowed General Unsecured Claims will not be used to satisfy Administrative Expenses, Priority Tax Claims, Priority Non-Tax Claims, or other liabilities related to the wind-down of the Debtors' estates. |

KL2 2688605.3

# **Exhibit B**

KL2 2688605.3