**HEARING DATE AND TIME: March 29, 2011 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: March 22, 2011 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------x
                                      :
In re                                 :      Chapter 11 Case No.
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :      09-50026 (REG)
        f/k/a General Motors Corp., et al.   :
                                      :
                      Debtors.        :      (Jointly Administered)
                                      :
----------------------------------------------------------x
```

## NOTICE OF HEARING ON DEBTORS' OBJECTION
## TO ADMINISTRATIVE CLAIM NO. 70792 FILED BY JOHN MEALER

PLEASE TAKE NOTICE that upon the annexed Objection, dated February 26,

2011 (the "**Objection**") of Motors Liquidation Company (f/k/a General Motors Corporation) and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), to the allowance of

Administrative Proof of Claim No. 70792 filed by John Mealer, all as more fully set forth in the

Objection, a hearing will be held before the Honorable Robert E. Gerber, United States

Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, New York, New York 10004, on **March 29**, **2011 at 9:45**

**a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses to the Objection must be

in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of

the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by

registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest,

on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard

copy delivered directly to Chambers), in accordance with the customary practices of the

Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance

with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors,

767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin,

Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401

South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas

Morrow); (iii) General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn:

Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the

United States Department of the Treasury, One World Financial Center, New York, New York

10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500

Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.);

(vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor,

New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii)

Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured

creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers

Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii)

the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S.

Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007

(Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered,

attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375

Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and

Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:

Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman &

Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal

representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200,

Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); and (xii)

John L. Mealer, 6333 Gardenia Lane, Show Low, AZ 85901 so as to be received no later than

**March 22, 2011, at 4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

PLEASE TAKE FURTHER NOTICE that if no response is timely filed and

served with respect to the Objection, the Debtors may, on or after the Response Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated: New York, New York
       February 26, 2011

                                        /s/ Joseph H. Smolinsky
                                        Harvey R. Miller
                                        Stephen Karotkin
                                        Joseph H. Smolinsky

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :       Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :       09-50026 (REG)
     f/k/a General Motors Corp., et al. :
                                    :
                    Debtors.        :       (Jointly Administered)
                                    :
------------------------------------------------------------x
```

## DEBTORS' OBJECTION TO
## ADMINISTRATIVE CLAIM NO. 70792 FILED BY JOHN MEALER

# TABLE OF CONTENTS

**Page**

Relief Requested ............................................................................................................ 1

Jurisdiction ................................................................................................................... 1

Preliminary Statement .................................................................................................. 1

Background ................................................................................................................... 3

    A.    These Chapter 11 Cases ................................................................... 3

    B.    The Internet Postings ...................................................................... 4

    C.    Claimant's Attempts to Seek Relief for Mr. Kordella's Comments ..................... 6

        1.    Claimant's First Filing in these Chapter 11 Cases ..................................... 6

        2.    Claimant's Adversary Proceeding ............................................................ 7

        3.    Claimant's Lawsuit in Arizona State Court and Arizona District Court ........................................................................................................ 8

        4.    Claimant's Administrative Proof of Claim ............................................... 9

Argument ................................................................................................................... 10

    A.    The Debtors Cannot Be Held Liable for Mr. Kordella's Actions Under a Theory of Respondeat Superior ........................................................ 10

        1.    Mr. Kordella's Actions Were Not Committed in the Scope of His Employment ............................................................................................. 10

        2.    If Mr. Kordella Was Acting in the Scope of His Employment, Liability for Such Actions Was Assumed by General Motors LLC ........ 11

    B.    The Mealer Claim Fails to State a Claim Upon Which Relief Can be Granted ................................................................................................... 12

        1.    Arizona Law Applies to the Substantive Torts Alleged in the Mealer Claim ........................................................................................... 13

        2.    Claimant Fails to State a Plausible Claim for Defamation ..................... 14

        3.    Claimant Fails to State a Plausible Claim for Tortious Interference With Prospective Advantage .................................................................. 15

        4.    The Mealer Claim Fails to State a Cause of Action for Trade Libel ....... 18

        5.    The Remaining Causes of Action Amount to Mere Legal Conclusions ............................................................................................. 20

    C.    The Mealer Claim is Barred by the Doctrine of Accord and Satisfaction .......... 20

Notice ........................................................................................................................ 21

Conclusion ................................................................................................................. 21

i

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*AMCOR Inv. Corp. v. Cox Ariz. Publ'ns, Inc.*,
    764 P.2d 327 (Ariz. Ct. App. 1988)....................................................................19

*Allstate Ins. Co. v. Stolarz*,
    613 N.E.2d 936 (N.Y. 1993)..........................................................................10

*Ashcroft v. Iqbal*,
    129 S. Ct. at 1949..................................................................................12, 13

*Barnes v. Mitchell*,
    67 N.W.2d 208 (Mich. 1954).........................................................................11

*Burns v. Davis*,
    993 P.2d 1119 (Ariz. Ct. App. 1999) ...............................................................19

*Dube v. Likins*,
    167 P.3d 93 (Ariz. Ct. App. 2007)........................................................14, 16, 17

*In re Ernst*,
    368 B.R. 296 (Bankr. S.D.N.Y. 2007).............................................................13

*Ethan Allen, Inc. v. Georgetown Manor, Inc.*,
    647 So. 2d 812 (Fla. 1994)...........................................................................16

*Flake v. Alper Holdings USA, Inc. (In re Alper Holdings USA, Inc.)*,
    398 B.R. 736 (S.D.N.Y. 2008).......................................................................12

*Gee v. Pima County*,
    612 P.2d 1079 (Ariz. Ct. App. 1980)........................................................18, 19

*Green Acres Trust v. London*,
    688 P.2d 617 (Ariz. 1984)......................................................................18, 19

*Hayden v. Paterson*,
    594 F.3d 150 (2d Cir. 2010)..........................................................................12

*Hitchcock v. Woodside Literary Agency*,
    15 F. Supp. 2d 246 (E.D.N.Y. 1998) ...............................................................14

*Locricchio v. Legal Servs. Corp.*,
    833 F.2d 1352 (9th Cir. 1987) .......................................................................16

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re M. Fabrikant & Sons, Inc.*,
    Bankr. No. 06-12737, 2009 WL 3806683 (Bankr. S.D.N.Y. Nov. 10, 2009) ............13, 20

*Marmis v. Solot Co.*,
    573 P.2d 899 (Ariz. Ct. App. 1977) ...........................................................................16, 17

*Morley v. Smith*,
    No. CV 04-1874-PCT-ECV, 2007 WL 1876382 (D. Ariz. June 27, 2007) .....................19

*Nichol v. Billot*,
    279 N.W.2d 761 (Mich. 1979) ..........................................................................................10

*In re O.P.M. Leasing Services, Inc.*,
    40 B.R. 380 (Bankr. S.D.N.Y. 1984) ................................................................................13

*Padula v. Lilarn Props. Corp.*,
    84 N.Y.2d 519 (1994) ..................................................................................................13, 14

*Patane v. Clark*,
    508 F.3d 106 (2d Cir. 2007) .............................................................................................13

*Ray Korte Chevrolet v. Simmons*,
    571 P.2d 699 (Ariz. Ct. App. 1977) ...........................................................................10, 11

*Rogers v. J.B. Hunt Transp., Inc.*,
    649 N.W.2d 23 (Mich. 2002) ...........................................................................................10

*Roth v. Rhodes*,
    30 Cal. Rptr. 2d 706 (Cal. Ct. App. 1994) ......................................................................16

*Schuler v. Abbott Labs.*,
    639 N.E.2d 144 (Ill. App. Ct. 1993) ................................................................................16

*Schultz v. Boy Scouts of Am., Inc.*,
    480 N.E.2d 679 (N.Y. 1985) ............................................................................................14

*Solar-West, Inc. v. Falk*,
    687 P.2d 939 (Ariz. Ct. App. 1984) .................................................................................20

*Stewart Title Guar. Co. v. Am. Abstract & Title Co.*,
    215 S.W.3d 596 (Ark. 2005) ............................................................................................16

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Turner v. Devlin*,
　　848 P.2d 286 (Ariz. 1993)...................................................................................14

*Unelko Corp. v. Rooney*,
　　912 F.2d 1049 (9th Cir. 1990) .............................................................15, 18, 19

## MISCELLANEOUS

9 A Ariz. Prac., Business Law Deskbook § 33:6 (2010-2011 ed.)..........................................18, 19

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

### Relief Requested

1.        The Debtors file this Objection (the "**Objection**"), pursuant to section 502(b) of

title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an order

disallowing and expunging Administrative Claim No. 70792 (the "**Mealer Claim**," a copy of

which is annexed hereto as **Exhibit "A"**) filed by John Mealer ("**Claimant**").  The Debtors have

examined the Mealer Claim and the hundreds of pages of documents Claimant has filed in these

chapter 11 cases and in other actions Claimant has commenced against the Debtors.  The Mealer

Claim fails to establish respondeat superior liability on the part of the Debtors, fails to state a

claim on which relief can be granted, and is barred by the doctrine of accord and satisfaction.

Accordingly, the Debtors request the entry of an order disallowing and expunging the Mealer

Claim from the Debtors' claims register.

### Jurisdiction

2.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Preliminary Statement

3.        The Mealer Claim represents Claimant's fourth bite at the apple.  Through filings

in this Court and multiple courts in Arizona, Claimant has sought to hold the Debtors, and other

entities, liable for personal views a General Motors employee, Mr. Kris Kordella, posted on

Claimant's website on June 9, 2009.  Through various court proceedings, Claimant has alleged that Mr. Kordella's comments injured Claimant's automotive business by deterring prospective investors and customers.  Claimant seeks $230 million for his alleged injuries.  Common sense, and Claimant's own actions, belie Claimant's assertions.

4.    As discussed further below, the Debtors cannot be held liable for Mr. Kordella's conduct because Mr. Kordella was not acting within the scope of his employment when he commented on Claimant's website.  In the highly unlikely event it is determined that Mr. Kordella was acting in the scope of his employment when he commented on Claimant's website, then any liability flowing from the comments would be liabilities assumed by General Motors LLC pursuant to the Master Sale and Purchase Agreement.  Importantly, however, Mr. Kordella's comments do not give rise to an actionable tort.

5.    The comments cannot give rise to a plausible claim for defamation because they are mere hyperbolic opinions that do not imply the requisite factual assertion capable of being proven true or false.  Likewise, the comments cannot form the basis of a plausible claim for tortious interference with a business expectancy because Claimant fails to demonstrate any actual, specific business relationship with which Mr. Kordella intentionally interfered or damaged.  Claimant's allegations of trade libel are similarly spurious.  As one court has already concluded, "it is simply not likely that any blog posting could cause such a response from serious investors." (Ex. N at 10.)  Indeed, Claimant has left Mr. Kordella's comments on his website for more than 18 months, thus contradicting any assertion that such comments are harmful to Claimant's business.

6.    Finally, Mr. Kordella apologized to Claimant for his comments and Claimant accepted the apology, thereby satisfying the doctrine of accord and satisfaction.  To escalate this

dispute from one involving simple name calling to a $230 million administrative expense claim

is not only unjustifiable under the relevant facts and laws, but would also severely prejudice the

estates' creditors holding valid claims.  Accordingly, the Mealer Claim should be denied and

expunged in its entirety.

## Background

### A.    These Chapter 11 Cases

7.      On June 1, 2009 (the "**Commencement Date**"), each of the Debtors commenced

a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy**

**Code**").

8.      On July 10, 2009, the Debtors consummated the sale of substantially all of their

assets to NGMCO, Inc. (n/k/a General Motors LLC), a United States Treasury-sponsored

purchaser, pursuant to section 363 of the Bankruptcy Code and that certain Amended and

Restated Master Sale and Purchase Agreement ("**MSPA**").  Pursuant to section 2.3(a)(v) of the

MSPA, General Motors LLC assumed "all Liability of Sellers (A) arising in the Ordinary Course

of Business during the Bankruptcy Case through and including the Closing Date, to the extent

such Liabilities are administrative expenses of Sellers' estates pursuant to Section 503(b) of the

Bankruptcy Code."  "Ordinary Course of Business" is defined under the MSPA, in relevant part,

as "the usual, regular and ordinary course of business consistent with past practice thereof."

9.      Paragraph 71 of this Court's July 5, 2009 Order approving the MSPA (ECF No.

2968) (the "**Sale Order**") states that "[t]his Court retains exclusive jurisdiction to enforce and

implement the terms and provisions of this Order, the MPA, all amendments thereto."

3

B.    **The Internet Postings**

10.    As discussed further below, the Mealer Claim arises from allegedly harmful

comments General Motors employee, Kris Kordella, made on Claimant's website on June 9,

2009.  A recent visit to Claimant's website reveals the full content of the allegedly "injurious"

statements made by Mr. Kordella, as well as Claimant's response and other postings Claimant

has made about his company.  Mr. Kordella's comments can be found under the heading "Why

thanks for the interest Mr. Kris Kordella!"  Kordella's comments according to Claimant's

website are as follows: [1]

> TO JL, What a funny guy
> Re: Your senseless blog to the Automotive News article on
> Whitacre. Mealer Automobiles? America's next major automobile
> company?? HAH!!!!!!!!!!!!!!!!!!! You're a legend in your own
> head.  And notice I didn't say mind because it's obvious you don't
> have one. Anyway I wish you ALL the worst the world can give to
> such a self serving pathetic MORON.
>
> Good riddance clown. Sincerely, Kris K (a real engineer of real
> automobiles).

(Ex. B at 3.)

11.    On June 15, 2009, Mr. Kordella sent an apology to Claimant, stating, "the bottom

line is I shouldn't have resorted to the 'knucklehead' name calling in my blog and inferring your

auto company isn't legit, because I'm sure it is.  Please consider this my apology for the

aforementioned actions."  (*Id.* at 4.)  That same day, Claimant recognized on his website that Mr.

Kordella had apologized for his comments, stating:

> Finally, GM Sr. Engineer Kris Kordella allowed this final
> comment and we can mend fences. . . . We are good to go and I
> wish GM and Mr. Kordella luck in all aspects.

---

[1] Available at: http://mealercompanies.com/?p=89, last visited February 18, 2011.  This posting is annexed hereto as **Exhibit "B."**

(*Id.* at 4.)  On August 22, 2009, undermining Claimant's assertions that his business was ruined by Mr. Kordella's earlier comments, Claimant issued a notice responding to, and soliciting interest in, employment with his company:[2]

> Quite a few people have inquired about opportunity with Mealer Companies LLC.  Funding is not 100% yet, but as we get to that point we will need hundreds of people for immediate help within the company, plus the hundreds in the construction industry as well as thousands more in the companies related to our manufacturing and products.

(Ex. C at 2.)  In the comments following this posting, numerous individuals and company representatives expressed interest in Claimant's company. (*Id.* ) On September 26, 2009, Claimant again issued a notice regarding the status of his investment opportunities and company operations:[3]

> It appears that we are under negotiations for funding and if all goes well, you will see our Bridge Vehicle hitting the market in the next 18 months.

(Ex. D at 2.)  On October 24, 2009, Claimant predicted rapid developments in the business:[4]

> October . . . . brings us to a point where we hope to be moving into our initial corporate offices this winter as we expect to begin making major advances to bringing our product to manufacturing and to market by fall 2010.  These are exciting times and I hope you will follow our progress. As we move our many engineers, techs and development personnel into the area, the enthusiasm will lead to constant updates and they should keep you up the [sic] speed.

---

[2] Available at http://mealercompanies.com/?p=344, last visited February 18, 2011.  This posting is annexed hereto as **Exhibit "C."**

[3] Available at http://mealercompanies.com/?p=377, last visited February 18, 2011.  A printout of this posting is annexed hereto as **Exhibit "D."**

[4] Available at http://mealercompanies.com/?p=387, last visited February 18, 2011. A printout of this posting is annexed hereto as **Exhibit "E."**

(Ex. E at 2.)  Finally, on January 1, 2010, Claimant updated his followers with news that the new

year promised to be good for business:[5]

> Mealer Companies LLC has a quite [sic] a bit going for the
> company this year.  Funding is just around the corner and a wide
> open world to help heal.  The MEALER products are not the issue
> and manufacturing along with product sales are not going to be a
> problem.

(Ex. F at 2.)

## C.    Claimant's Attempts to Seek Relief for Mr. Kordella's Comments

### 1.    Claimant's First Filing in these Chapter 11 Cases

12.    On March 12, 2010, Claimant filed with this Court a Motion to Approve

Procedures for Administering Claims Under Bankruptcy Code Section 503(a)(1)(A),(3)(4)(A)(C)

(ECF No. 5269) (the "**Administering Claims Motion**") seeking to "place this 'entity' in

position for relief under Tort claims against General Motors Corporation for intentional criminal

actions upon my private person that maliciously, intentionally and directly affected my business

which occurred on June 9, 2009." (Admin. Cl. Mot. at 1.)  The Administering Claims Motion

states that Claimant owns an Arizona registered alternative fuel powered automobile

manufacturing company and on June 9, 2009, an employee of General Motors Corporation

allegedly signed on to the website of Claimant's company and left comments "to the crippling

detriment of" Claimant and the "pending business-growth funding of Mealer Companies LLC."

(*Id.* at 3.)  The Administering Claims Motion was denied by this Court on April 14, 2010, for

failure to show a prima facie entitlement to relief (ECF No. 5507).

---

[5] Available at http://mealercompanies.com/?p=457, last visited February 18, 2011. A printout of this posting is
annexed hereto as **Exhibit "F."**

2.        Claimant's Adversary Proceeding

13.        On October 4, 2009, Claimant filed a voluntary petition seeking protection for

himself as an individual under chapter 7 of the Bankruptcy Code in the United States Bankruptcy

Court for the District of Arizona, case number 09-24899 (the "**Arizona Bankruptcy Case**").

14.        On March 30, 2010, Claimant commenced an adversary proceeding, case number

10-00503 (the "**Adversary Proceeding**") against, inter alia, "General Motors Corporation,"

"General Motors LLC" and "Motors Liquidation Co." in the Arizona Bankruptcy Case.  The

complaint (the "**Adversary Complaint**") in the Adversary Proceeding is annexed hereto as

**Exhibit "G."**  The facts underlying the Adversary Complaint are substantially similar to those

described in the Administering Claims Motion and all relate to the comments Mr. Kordella

posted on Claimant's website.  Specifically, the Adversary Complaint alleges causes of action

for intentional interference with prospective economic advantage (Ex. G at 16) and defamation

and other encroachments (Ex. G at 17.)

15.        On April 29, 2010, the Debtors filed a motion to dismiss the Adversary Complaint

on the grounds that (i) the Adversary Complaint violated the automatic stay in place as a result of

the commencement of these chapter 11 cases; (ii) Claimant lacked standing to bring the

Adversary Proceeding because his standing was transferred to an appointed trustee when he filed

for chapter 7 protection and the trustee had not abandoned the claims underlying the Adversary

Proceeding; and (iii) the Adversary Complaint failed to state a claim on which relief can be

granted.  The Debtors' Motion to Dismiss is annexed hereto as **Exhibit "H."**  General Motors

LLC also filed a motion to dismiss the Adversary Complaint arguing that it did not assume

liability for the Adversary Proceeding under the MSPA and that this Court retained jurisdiction

to determine all issues related to the MSPA.

7

16.     On June 2, 2010, the Arizona Bankruptcy Court held a hearing on the Debtors'
and General Motors LLC's respective motions to dismiss.  The transcript from the June 2, 2010
hearing before the Arizona Bankruptcy Court is annexed hereto as **Exhibit "I**." At the hearing,
the Arizona Bankruptcy Court dismissed the Adversary Proceeding as to both MLC and General
Motors LLC stating "the Court is going to grant the motion to dismiss without leave to amend
based on the orders entered by the bankruptcy court, and the injunctions or retention of
jurisdiction provisions therein." (Ex. I: 9:23-10:1.).  The order dismissing the Adversary
Proceeding against the Debtors without leave to amend is annexed hereto as **Exhibit "J."**

3.     <u>Claimant's Lawsuit in Arizona State Court and Arizona District Court</u>

17.     On June 8, 2010, Claimant filed a complaint in the Superior Court of the State of
Arizona for Navajo County, case number 10-00316 (the "**State Court Action**") against, inter
alia, the Debtors, General Motors LLC, and Mr. Kordella.  The complaint in the State Court
Action was not served on the Debtors.  General Motors LLC removed the State Court Action to
the United States District Court for the District of Arizona (the "**District Court**"), case number
10-08172 (the "**District Court Action**").

18.     The Complaint in the State Court and District Court Action alleges 40 causes of
action and is based on the same events described in the Administering Claims Motion and the
Adversary Proceeding.  The complaint (the "**District Court Complaint**") in the District Court
Action is annexed hereto as **Exhibit "K."**

19.     On June 15, 2010, General Motors LLC filed a motion to dismiss, annexed hereto
as **Exhibit "L,"** the District Court Action on the grounds that "General Motors LLC did not
assume responsibility for claims arising from alleged tortious acts by employees of MLC that
occurred prior to the July 10, 2009 closing date" on the MSPA. (Ex. L at 3.)  Notwithstanding

this Court's exclusive jurisdiction to enforce and implement the MSPA, on November 2, 2010,

the District Court entered an order, annexed hereto as **Exhibit "M,"** granting General Motors

LLC's motion to dismiss and finding that "[b]ecause GM did not assume successor liability, Mr.

Mealer's claims against GM are barred." (Ex. M at 8.)

20.    Mr. Kordella also filed a motion to dismiss the District Court Action for, inter

alia, lack of personal jurisdiction.  In the order granting Mr. Kordella's motion to dismiss,

annexed hereto as **Exhibit "N,"** the District Court observed:

> Mr. Mealer believes that Mr. Kordella's comments intimidated
> numerous potential investors and ultimately kept his $200,000,000
> stream from materializing.  Mr. Kordella could not have known
> that this harm was likely to be suffered in Arizona ***because it is
> simply not likely that any blog posting could cause such a
> response from serious investors*** – especially if Mr. Mealer's
> automobile is truly revolutionary.

(Ex. N at 10) (emphasis added).

4.    Claimant's Administrative Proof of Claim

21.     On February 5, 2011, Claimant filed the Mealer Claim in these chapter 11 cases.

The Mealer Claim does not allege any wrongful conduct directly on the part of the Debtors.

Rather, the Mealer Claim expressly states that it is "for respondeat superior." (Ex. A at 3.)  The

Mealer Claim seeks $230 million and, once again, alleges that "General Motors Corporation

engineering employee, Mr. Kris J. Kordella" visited Claimant's website "using a GM computer

and IP address . . . and posted various injurious falsehoods about Mr. Mealer and the Mealer

Automobile thus unlawfully destroying growth funding and the 'rival' business of Mealer

Companies LLC." (Ex. A at 7.)  The Mealer Claim does not quote any of the comments Mr.

Kordella allegedly made, but it does allege that his comments caused Claimant "to lose

prospective funding to the tune of $200,000,000" and "prospective [s]ales . . . [worth]

$30,000,000." *Id.* The Mealer Claim asserts "defamation of character/trade libel" and

"intentional interference with Mr. Mealer's Prospective Advantage." *Id.* at 9.

<div align="center">

**Argument**

</div>

**A.    The Debtors Cannot Be Held Liable for Mr. Kordella's Actions Under a Theory of Respondeat Superior**

22.    Claimant asserts that the Debtors should be held liable on a theory of respondeat

superior for actions taken by a General Motors employee located in Michigan. *Id.* at 8.

Claimant further asserts that he suffered harm for such actions in Arizona where he resides and

where his business is registered. *Id.* In any case presenting a potential choice of law issue, the

court must first determine "whether there is an actual conflict between the laws of the

jurisdictions involved." *Allstate Ins. Co. v. Stolarz*, 613 N.E.2d 936, 937 (N.Y. 1993). If there is

no conflict between the legal principles of the various jurisdictions, then the court need not

engage in a choice of law analysis. *Id.* Here, the law of respondeat superior is similar in both

Arizona and Michigan and, as such, the Court need not undertake a choice of law analysis. The

Debtors cannot be held liable for Mr. Kordella's actions under either state's laws regarding

respondeat superior liability.

1.    Mr. Kordella's Actions Were Not Committed in the Scope of His Employment

23.    For an employer to be held liable for its employee's acts through the doctrine of

respondeat superior, under both Arizona and Michigan law the employee's acts must have been

committed within the scope of employment. *Ray Korte Chevrolet v. Simmons*, 571 P.2d 699,

704 (Ariz. Ct. App. 1977); *Nichol v. Billot*, 279 N.W. 2d 761, 294, n.3 (Mich. 1979). An

employer is not liable for "torts intentionally or recklessly committed by an employee beyond the

scope of his master's business." *Rogers v. J.B. Hunt Transp., Inc.*, 649 N.W.2d 23, 26 (Mich.

2002). Under Arizona law, "an employee is acting within the scope of his employment while he

<div align="center">

10

</div>

is doing any reasonable thing which his employment expressly or impliedly authorizes him to do or which may reasonably be said to have been contemplated by that employment as necessarily or probably incidental to the employment." *Ray Korte Chevrolet*, 571 P.2d at 704.  Similarly, under Michigan law an employee acts in the scope of his employment "while engaged in the service of his master, or while about his master's business." *Barnes v. Mitchell*, 67 N.W. 2d 208, 210 (Mich. 1954).

24.    When Mr. Kordella posted the allegedly harmful comments on Claimant's website, Mr. Kordella was not acting within the scope of his employment.  Mr. Kordella is an engineer, hired by General Motors to work on issues relating to the design and manufacture of vehicles.  He was not hired to post his personal views on websites nor is his master's business related to posting opinions on websites.  Common sense indicates that providing one's personal views on a website are not necessarily or probably incidental to one's employment as a General Motors engineer.  Even assuming, arguendo, that Mr. Kordella's comments give rise to an actionable tort, the Debtors cannot be held liable for Mr. Kordella's actions in providing his personal views on Claimant's website because such actions were outside the scope of Mr. Kordella's employment.

2.    If Mr. Kordella Was Acting in the Scope of His Employment, Liability for Such Actions Was Assumed by General Motors LLC

25.    In the event Mr. Kordella's actions are deemed to have been committed within the scope of his employment, any liability flowing from such actions was assumed by General Motors LLC under the MSPA.  As noted above, section 2.3(a)(v) of the MSPA states that General Motors LLC assumed "all Liability of Sellers (A) arising in the Ordinary Course of Business during the Bankruptcy Case through and including the Closing Date, to the extent such

Liabilities are administrative expenses of Sellers' estates pursuant to Section 503(b) of the

Bankruptcy Code."  If Mr. Kordella was a General Motors employee acting in the ordinary

course of business on June 9, 2009, when he posted the allegedly harmful comments such that

his actions could give rise to respondeat superior liability, then any such liability was assumed by

General Motors LLC under the foregoing provision of the MSPA and the Debtors' estates should

not be held liable for such claim.

**B.**       **The Mealer Claim Fails to State a Claim Upon Which Relief Can be Granted**

26.      The Court should also expunge the Mealer Claim because it fails to state any

plausible claims on which relief may be granted.  Dismissal of a proof of claim under 11 U.S.C.

§ 502(c) is equivalent to dismissing a claim under Fed. R. Civ. P. 12(b)(6) for failure to state a

claim on which relief can be granted.  *See Flake v. Alper Holdings USA, Inc. (In re Alper*

*Holdings USA, Inc.*), 398 B.R. 736, 748 (S.D.N.Y. 2008) (affirming bankruptcy court's dismissal

of proof of claim for failure to state a plausible claim on which relief may be granted).

27.      A plaintiff must plead more than the possibility of relief to survive a motion to

dismiss.  *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (applying New York law) (citing

*Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).  As the Supreme Court has recently made clear:

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements" are insufficient to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 129 S. Ct. at 1949.

Rather, "[i]n order to withstand a motion to dismiss, a complaint must plead 'enough facts to

state a claim for relief that is plausible on its face.'"  *Patane v. Clark*, 508 F.3d 106, 111-12 (2d

Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is

facially plausible "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

28.        In ruling on a motion to dismiss, the Southern District of New York applies a two-part analysis.  "First, the court should begin by 'identifying pleadings that, because they are no more than legal conclusions, are not entitled to the assumption of the truth.'"  *In re M. Fabrikant & Sons, Inc.*, Bankr. No. 06-12737, 2009 WL 3806683, at *11 (Bankr. S.D.N.Y. Nov. 10, 2009) (citing *Iqbal*, 129 S. Ct. at 1950).  Second, the court should "give all 'well-pleaded factual allegations' an assumption of veracity and determine whether, together, they plausibly give rise to an entitlement of relief."  *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).  The Mealer Claim fails to meet this standard, and this Court should disallow it in its entirety.

1.        <u>Arizona Law Applies to the Substantive Torts Alleged in the Mealer Claim</u>

29.        In evaluating the merits of a claim, bankruptcy courts apply the state law under which the claim arises.  *In re Ernst*, 368 B.R. 296, 306 (Bankr. S.D.N.Y. 2007) ("Property interests are created and defined by state law and unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently in a bankruptcy proceeding.") (citing *Butner v. United States*, 440 U.S. 48, 55 (1979)).  A court sitting in New York will apply New York's choice of law rules in determining which state's substantive law should apply.  *In re O.P.M. Leasing Services, Inc.*, 40 B.R. 380, 398 (Bankr. S.D.N.Y. 1984).  Under New York choice of law principles, a tort claim is governed by the laws of the jurisdiction with the greatest interest in having its law applied to the dispute.  *Padula v. Lilarn Props. Corp.*, 84 N.Y.2d 519, 521 (1994).  When the conflict involves rules that regulate conduct, the law of the place of the tort governs.  *Id.* at 522.  Courts have held that laws regarding defamation and similar torts constitute conduct-regulating rules that are "governed by the law of the place where

the tort occurred, which is the place where the plaintiff's injuries occurred." *Hitchcock v.*

*Woodside Literary Agency*, 15 F. Supp. 2d 246, 251 (E.D.N.Y. 1998) (applying Maryland law to

claim for defamation and related torts where defendant's conduct occurred in New York, but was

felt by the plaintiff in Maryland, her domicile); *Schultz v. Boy Scouts of Am., Inc.*, 480 N.E.2d

679, 683 (N.Y. 1985) ("when the defendant's negligent conduct occurs in one jurisdiction and

the plaintiff's injuries are suffered in another . . .  the locus in this case is determined by where

the plaintiff's injuries occurred.")  Accordingly, the substantive law of Arizona should apply to

the torts alleged in the Mealer Claim because any injury flowing from Mr. Kordella's alleged

wrongful conduct, was felt by Claimant in Arizona where he resides and operates his business.

(Ex. A at 7.)

       2.    <u>Claimant Fails to State a Plausible Claim for Defamation</u>

      30.    Under Arizona law, the tort of defamation requires a false publication that brings

the defamed person into disrepute, contempt, or ridicule, or impeaches the plaintiff's honesty,

integrity, virtue, or reputation.  *Dube v. Likins*, 167 P.3d 93, 105 (Ariz. Ct. App. 2007).  Whether

a statement is capable of defamatory meaning is a question of law for the court.  *Id.*  Rhetoric or

epithet cannot be actionable unless it implies a factual assertion.  *Id.*  Statements which "cannot

'reasonably be interpreted as stating actual facts' about an individual . . . ." have been repeatedly

found to be protected speech.  *Turner v. Devlin*, 848 P.2d 286, 289 (Ariz. 1993).

      31.    In determining whether a statement could be viewed as implying an assertion of

fact, courts consider: (1) whether the declarant used figurative or hyperbolic language that would

negate the impression that his statement was one of fact; (2) whether the tenor or context in

which the statement was made would negate the impression of a statement of fact; and (3)

whether the kind of statement made is susceptible of being proved true or false. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990).

32.     Here, Mr. Kordella's comments cannot reasonably be viewed as assertions of fact. Mr. Kordella's statements used figurative and hyperpolic language such as by stating that Claimant was a "clown" and did not have a "mind."  (Ex. B at 3.)  Additionally, the tenor and context of the statements negate the impression that the statements are facts.  Mr. Kordella posted the comments as an informal message to Claimant on Claimant's website in response to comments Claimant had posted on another website.  Finally, the statements are not capable of being proved true or false.  For example, it is impossible to prove whether an individual is "senseless" or a "self serving pathetic moron."  (*See id.*)  Such terms are merely hyperbolic epithets and opinions that do not constitute the kind of speech that can be deemed defamatory. Accordingly, the Mealer Claim fails to state a plausible claim for defamation.

3.      Claimant Fails to State a Plausible Claim for Tortious Interference With Prospective Advantage

33.     Claimant asserts a claim for "Intentional Interference with Mr. Mealer's Prospective Advantage." (Ex. A at 9.)  Arizona tort law does not recognize a cause of action for interference with "prospective advantage", however, the tort of tortious interference with business expectancy is recognized.  To state a valid claim of tortious interference with a business expectancy, a plaintiff must allege  (1) the existence of a valid business expectancy; (2) the interferer's knowledge of the business expectancy; (3) the interferer intentionally induced or caused termination of the business expectancy; and (4) damage suffered as a result of termination of the business expectancy. *Dube v. Likins*, 167 P.3d at 99-100.

15

34.      With respect to the first prong, a plaintiff's business expectancy must amount to more than a "hope." *Marmis v. Solot Co.*, 573 P.2d 899, 902 (Ariz. Ct. App. 1977).  Rather, to state a claim for tortious interference upon which relief may be granted, "there must be a colorable economic relationship between the plaintiff and a third party with the potential to develop into a full contractual relationship." *Locricchio v. Legal Servs. Corp.,* 833 F.2d 1352, 1357 (9th Cir. 1987).  Courts have uniformly held that the plaintiff must identify the relationship with which the defendant interfered with some degree of specificity or certainty. *See, e.g.,* *Stewart Title Guar. Co. v. Am. Abstract & Title Co.,* 215 S.W.3d 596, 603 (Ark. 2005) ( "some precise business expectancy or contractual relationship must be obstructed"); *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 815 (Fla. 1994) ("[a]n action for tortious interference with a business relationship requires a business relationship evidenced by an actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered"); *Schuler v. Abbott Labs.,* 639 N.E.2d 144, 147 (Ill. App. Ct. 1993) ("Plaintiff states a cause of action only if he alleges a business expectancy with a specific third party"); and *Roth v. Rhodes,* 30 Cal. Rptr. 2d 706, 715 (Cal. Ct. App. 1994) ("an existing relationship is required").

35.      The Mealer Claim fails to identify any specific third party with whom Claimant had an actual and identifiable economic relationship.  Claimant merely asserts that Mr. Kordella's comments caused him to lose "prospective [s]ales" and "prospective funding" from "prospective investors" (Ex. A at 7.)  The Mealer Claim does not identify any specific investor or group of investors who were dissuaded from investing in Claimant's company due to Mr. Kordella's comments.  Likewise, Claimant does not mention any actual and identifiable sales, or indeed even what claimant would have been selling as claimant admits that his business was in

16

the "[p]re-[m]anufacturing" stages and was "subject to . . . prospective funding." (*Id.*) Such

alleged business relationships amount to nothing more than a mere "hope" and, as such,

Claimant fails to state a plausible claim for tortious interference with prospective business

expectancy. *Marmis*, 573 P.2d at 902.

36.     Claimant similarly fails to satisfy the second and third requirements for stating a

valid claim for tortious interference with prospective business expectancy.  Claimant does not

allege that Mr. Kordella had any knowledge of Claimant's purported business expectancy nor

does Claimant allege that Mr. Kordella intentionally induced or caused termination of the

business expectancy. *Dube*, 167 P.3d at 99-100.  Indeed, it is implausible that Mr. Kordella could

have had any knowledge of, or intent to terminate, a business expectancy of Claimant given that

Claimant himself fails to articulate an actual, identifiable business expectancy.

37.     Likewise, Claimant cannot satisfy the fourth requirement for stating a plausible

claim for tortious interference with prospective business expectancy because he cannot establish

any actual damage suffered as a result of Mr. Kordella's comments.  Although Claimant asserts

he lost $230 million as a result of Mr. Kordella's posting on his website, such an assertion is

implausible and is belied by Claimant's own conduct.  For 18 months, Claimant has left Mr.

Kordella's comments up on his publicly-available website for the world to view, thus

contradicting Claimant's assertion that the comments were "injurious." (Ex. A at 7.)  If Claimant

has suffered any actual damage from Mr. Kordella's comments, it is a result of Claimant's own

actions in leaving the comments on his website and repeating them in countless filings in courts

across the country.

38.     Further, Claimant's own comments on his website indicate that his company is

doing well.  For example, on August 22, 2009, Claimant noted on his website that "[q]uite a few

17

people have inquired about opportunity [sic] with Mealer Companies LLC." (Ex. C at 2.)  On

September 26, 2009, Claimant wrote "[i]t appears we are under negotiations for funding and if

all goes well, you will see our Bridge Vehicle hitting the market in the next 18 months." (Ex. D

at 2.)  On October 24, 2009, Claimant wrote "we hope to be moving into our initial corporate

offices this winter as we expect to begin making major advances to bringing our product to

manufacturing and to market by fall 2010. These are exciting times."  (Ex. E at 2.)  Finally, on

January 1, 2010, Claimant wrote "Mealer . . . has [] quite a bit going for [it] this year," and

"[f]unding just around the corner."  (Ex. F at 2.)  Such statements undermine Claimant's

assertion that Mr. Kordella's comments had the effect of "destroying growth funding and the

'rival' business of Mealer Companies LLC." (Ex. A at 7.) As the District Court concluded, "it is

simply not likely that any blog posting could cause such a response from serious investors." (Ex.

N at 10.)  Accordingly, the Mealer Claim fails to state a plausible claim for tortious interference

with a business expectancy.

       4.     <u>The Mealer Claim Fails to State a Cause of Action for Trade Libel</u>

       39.    Claimant also asserts that the Debtors are liable to him for trade libel. (Ex. A at

9.)  Arizona law regarding trade libel is similar to that for defamation.  The former requires an

"intentional publication of an injurious falsehood" which disparages the quality of the plaintiff's

business property or products, and the publication results in an actual pecuniary loss to the

plaintiff.  *Gee v. Pima County*, 612 P.2d 1079, 1080 (Ariz. Ct. App. 1980); 9A Ariz. Prac.,

Business Law Deskbook § 33:6 (2010-2011 ed.).  The same First Amendment requirements and

immunities which govern actions for defamation are applied to actions for trade libel. *Unelco*,

912 F.2d at 1058.  As in defamation, a qualified privilege exists for declarants whose statements

are made in furtherance of some interest of social importance.  *See generally Burns v. Davis*, 993

P.2d 1119 (Ariz. Ct. App. 1999) (discussing and applying qualified privilege in defamation

context).  Furthermore, so long as the statement in question is not found to be "specifically

directed to verifiable facts," an action for trade libel cannot be maintained.  9A Ariz. Prac.,

Business Law Deskbook § 33:6 (2010-2011 ed.).  Statements of fact about a product which lack

"precision and specificity" and are couched in an otherwise purely opinion-based comment will

not be found to be trade libel.  *AMCOR Inv. Corp. v. Cox Ariz. Publ'ns, Inc.*, 764 P.2d 327, 332

(Ariz. Ct. App. 1988).

40.     Claimant's cause of action for trade libel fails on several grounds.  First, as

discussed with respect to defamation, the statements made by Mr. Kordella on an opinion blog

do not amount to the kind of "injurious falsehood" contemplated in the tort of trade libel.  *See

supra Gee*, 612 P.2d at 1080.  The context and plain meaning of the statements made by Mr.

Kordella indicate that they were expressions of hyperbole and opinion, and could not have

reasonably been interpreted as assertions of fact.  Assuming, arguendo, that the statements could

be deemed assertions of fact, the comments qualify for the immunity granted for statements in

furtherance of a socially important interest, namely a commentary on the state of automobile

manufacturing in the United States and emerging technologies impacting that industry. *See

Burns*, 993 P.2d at 1127-29 (discussing application of qualified privilege); *Morley v. Smith*, No.

CV 04-1874-PCT-ECV, 2007 WL 1876382, at *2 (D. Ariz. June 27, 2007) (trade libel action

holding that qualified privilege applied to defendant's statements alerting plaintiff's potential

customers that plaintiff was an illegitimate cat breeder and was violating breeder registration

regulations).  Second, as discussed with respect to tortious interference with a business

expectancy, the Mealer Claim fails to prove any actual damages suffered due to the comments of

Mr. Kordella.  Indeed, Claimant's own comments on his website indicate that business was

doing well for months after publication of Mr. Kordella's comments.  As such, Claimant cannot

assert a plausible cause of action for trade libel against the Debtors and the Mealer Claim should

be denied.

     5.    <u>The Remaining Causes of Action Amount to Mere Legal Conclusions</u>

    41.    The Mealer Claim also asserts that it should be allowed pursuant to "numerous

interstate commerce laws such as those found in USC Title 15 under the Sherman Act" and

"anti-competitive violations." (Ex. A at 9.)  The Mealer Claim does not elaborate on the

foregoing theories of recovery nor does it provide any facts in support of these claims.  Such

assertions amount to "no more than legal conclusions" and as such "are not entitled to the

assumption of the truth."  *In re M. Fabrikant*, 2009 WL 3806683, at *11 (citing *Iqbal*, 129 S. Ct.

at 1950).  Accordingly, the Mealer Claim must be disallowed in its entirety for failure to state a

claim on which relief can be granted.

**C.**    **<u>The Mealer Claim is Barred by the Doctrine of Accord and Satisfaction</u>**

    42.    The doctrine of accord and satisfaction provides further grounds to disallow and

expunge the Mealer Claim. "An accord and satisfaction is a subsequent agreement to take

something other than the original agreement." *Solar-West, Inc. v. Falk*, 687 P.2d 939, 944 (Ariz.

Ct. App. 1984).  "It is a method of discharging a contract or cause of action whereby the new

agreement, or accord, is substituted for the old and the performance of the accord is the

satisfaction."  *Id.* at 644-45.

    43.    The Mealer Claim should be disallowed, because Claimant accepted Mr.

Kordella's retraction and apology.   As noted above, on June 15, 2009, Mr. Kordella sent an

apology to Claimant, stating, "the bottom line is I shouldn't have resorted to the 'knucklehead'

name calling in my blog and inferring your auto company isn't legit, because I'm sure it is.

Please consider this my apology for the aforementioned actions." (Ex. B at 4.) Claimant accepted this apology as an accord and satisfaction when he posted the following message on his website:

> GM Sr. Engineer Kris Kordella allowed this final comment, and we can mend fences. By the way, my "attack of GM" was comments on autonews.com regarding the Obama administration's payback appointment of Ed Whitaker to a chairman position. Anyhow.. [sic] We are good to go and I wish GM and Mr. Kordella luck in all aspects.
> JL Mealer.

*Id.* Accordingly, Mr. Mealer accepted Mr. Kordella's apology and retraction as a full satisfaction of any claim he may have had for defamation, trade libel, or tortious interference and the Mealer Claim should thus be disallowed.

## Notice

44.    Notice of this Objection has been provided to Claimant and to the parties in interest in accordance with the Fifth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated January 3, 2011 (ECF No. 8360).  The Debtors submit that such notice is sufficient and no other or further notice need be provided.

45.    No previous request for the relief sought herein has been made by the Debtors to this or any other Court.

## Conclusion

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated:  New York, New York
        February 26, 2011

                                        /s/ Joseph H. Smolinsky
                                        Harvey R. Miller
                                        Stephen Karotkin
                                        Joseph H. Smolinsky

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

# EXHIBIT "A"

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | ADMINISTRATIVE PROOF OF CLAIM |
|---|---|

**Name of Debtor** *(Check only one)*

☒ Motors Liquidation Company (f/k/a General Motors Corporation)  09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)  09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)  09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc )  09-13558 (REG)
☐ Remediation and Liability Management Company, Inc  09-50029 (REG)
(subsidiary of **General Motors Corporation**)
☐ Environmental Corporate Remediation Company, Inc  09-50030 (REG)
(subsidiary of **General Motors Corporation**)

**ADMINISTRATIVE CLAIM**

The deadline for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, governmental entities, and trusts) to file a proof of claim for certain administrative expenses against the Debtors is (i) on or before February 14, 2011 at 5 00 p m (Eastern Time), with respect to administrative expenses arising between June 1, 2009 and January 31, 2011, and (ii) the date that is thirty (30) days after the Effective Date at 5 00 p m (Eastern Time), with respect to administrative expenses arising between February 1, 2011 and the Effective Date

**Name of Creditor** (The person or other entity to whom the debtor owes money or property)  JOHN L MEALER

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

**FILED - 70792**
**MOTORS LIQUIDATION COMPANY F/K/A GENERAL MOTORS CORP SDNY # 09-50026 (REG)**

**Name and address where notices should be sent**
JOHN L MEALER
6333 GARDENIA LANE
RE MEALER AUTOMOBILE
TRADE LIBEL BY GM, GMAC, ET AL
SHOW LOW, AZ 85901

☒ Check box if you have never received any notices from the bankruptcy court in this case

☐ Check box if the address differs from the address on the envelope sent to you by the court

Telephone Number  928-532-8191

Last four digits of account or other number by which creditor identifies debtor  *MEALER*

Check here ☐ replaces a previously filed claim, dated _____
if this claim ☐ amends

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☒ Personal injury/wrongful death
☐ Taxes
☒ Other  *See attached*

☐ Retiree benefits as defined in 11 U S C § 1114(a)
☐ Wages, salaries, and compensation (fill out below)

Last four digits of SS# _____

Unpaid compensation for services performed

from _____ to _____
  (date)      (date)

**2. Date debt was incurred (must be on or after June 1, 2009):**
*June 9th, 2009 to date*

**3. If court judgment, date obtained:**
*In federal court, currently*

**4. Total Amount of Administrative Claim:** $ *230,000,000.00*

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

**5. Brief Description of Administrative Expense Claim (attach any additional information):** *For Respondeat superior 11 USC §523(a)(6) willful and malicious injury by GMC to Creditor Mealer, et al. Trade libel, defamation... See attached.*

**6. Credits:** All payments made on this claim have been credited and deducted for the purpose of making this proof of claim.
*zero*

**7. Supporting Documents:**
Attach copies of supporting document, such as promissory notes, contracts, security agreements, and evidence of perfection of liens
DO NOT SEND ORIGINAL DOCUMENTS
*I will send full documentation, plus letter of admission from GMC upon response.*

**8. This Administrative Proof of Claim:**
☒ is the first filed proof of claim evidencing the claim asserted herein
☐ supplements a proof of claim filed on or about _____
☐ replaces/supersedes a proof of claim filed on _____

**9. Date-Stamped Copy:** To receive an acknowledgement of the filing to your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim  *See enclosed*

| Date  *2/2/11* | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)  *John L Mealer, President Mealer Companies LLC*  *John Lewis Mealer* | THIS SPACE IS FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim  Fine up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571*

4452501470

owth ... website on June 4th, 2009 were sent out immediately to prospective investor and customers via RSS feed, and Mr. Kwo'ella follo... ug through GM's computers while at work with intention I impu... fish out and direct FM ... to these prospective customers and investors

...claims ... are allowed pursuant to the following bankruptcy laws and further verified by numerous ... commerce laws such as those found in USC Title 15 under the Sherman ... a basic published willful and malicious defamation of character/trade libel, anti-competitive actions including Intentional Interference with Mr. Heal's Prospective Advantage.

Mr. Kwo'ella ... admitted such ... and ... a public apology ... has (GM) also refused a corporate apology. The matter ... through a simple public, corporate apology, the perpetuation of these injurious ... may end, but the damage has been done and continues to ... to this day.

11 USC § 503(b)(4)(A)(3) whereby ... An entity may timely file a request for payment ... or may tardily file such request if permitted by the court for cause ... notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title including - (1)(A) the actual, necessary costs and expenses of preserving the estate including--(3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by-- (A) a creditor that files a petition under section 303 of this title; (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor; (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor;

11 USC § 101(10)(A)(B) whereby "(10) The term "creditor" means- (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(i) of this section.
348 (d) A claim against the estate or the debtor that arises after the order for relief but before conversion in a case ...

In addition to this obvious legal standard ... plaintiff relies on exemption to "MLC" f/k/a GM (old) with EXEMPTION TO DISCHARGE 11 USC § 523(a)(6) "for willful and malicious injury by the debtor to another entity or to the property of another entity."

Dated February 2nd 2011 John Lewis Healer

UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

**ADMINISTRATIVE PROOF OF CLAIM**

**Name of Debtor** *(Check only one)*

☒ Motors Liquidation Company (f/k/a General Motors Corporation) — 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC) — 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) — 09-13558 (REG)
☐ Remediation and Liability Management Company, Inc — 09-50029 (REG)
(subsidiary of **General Motors Corporation**)
☐ Environmental Corporate Remediation Company, Inc — 09-50030 (REG)
(subsidiary of **General Motors Corporation**)

*(stamp:)* THE GARDEN CITY GROUP INC. FEB 5 2011

**ADMINISTRATIVE CLAIM**

The deadline for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, governmental entities, and trusts) to file a proof of claim for certain administrative expenses against the Debtors is (i) on or before February 14, 2011 at 5 00 p m (Eastern Time), with respect to administrative expenses arising between June 1, 2009 and January 31, 2011, and (ii) the date that is thirty (30) days after the Effective Date at 5 00 p m (Eastern Time), with respect to administrative expenses arising between February 1, 2011 and the Effective Date

**Name of Creditor** (The person or other entity to whom the debtor owes money or property) JOHN L MEALER

**Name and address where notices should be sent**
JOHN L MEALER
6333 GARDENIA LANE
RE MEALER AUTOMOBILE
TRADE LIBEL BY GM, GMAC, ET AL
SHOW LOW, AZ 85901

Telephone Number 928-532-8191

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars
☒ Check box if you have never received any notices from the bankruptcy court in this case
☐ Check box if the address differs from the address on the envelope sent to you by the court

**FILED - 70792**
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

**Last four digits of account or other number by which creditor identifies debtor** *MEALER*

Check here ☐ replaces a previously filed claim, dated _____
if this claim ☐ amends

**1. Basis for Claim**
☐ Goods sold
☐ Services performed
☐ Money loaned
☒ Personal injury/wrongful death
☐ Taxes
☒ Other *See attached*

☐ Retiree benefits as defined in 11 U S C § 1114(a)
☐ Wages, salaries, and compensation (fill out below)
Last four digits of SS#
Unpaid compensation for services performed
from _____ to _____
(date)        (date)

**2. Date debt was incurred (must be on or after June 1, 2009):** *June 9th, 2009 to date*

**3. If court judgment, date obtained:** *In federal court, currently*

**4. Total Amount of Administrative Claim:** $ *230,000,000.⁰⁰*
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim Attach itemized statement of all interest or additional charges

**5. Brief Description of Administrative Expense Claim** (attach any additional information): *For Respondeat Superior 11 USC §523(a)(6) willful and malicious injury by GMC to Creditor Mealer, et al. Trade libel, defamation ... See attached*

**6. Credits:** All payments made on this claim have been credited and deducted for the purpose of making this proof of claim.
*zero*

**7. Supporting Documents:** Attach copies of supporting document, such as promissory notes, contracts, security agreements, and evidence of perfection of liens DO NOT SEND ORIGINAL DOCUMENTS *I will send full documentation, plus letter of admission from GMC upon responce.*

**8. This Administrative Proof of Claim:**
☒ is the first filed proof of claim evidencing the claim asserted herein
☐ supplements a proof of claim filed on or about _____
☐ replaces/supersedes a proof of claim filed on _____

**9. Date-Stamped Copy:** To receive an acknowledgement of the filing to your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim *See enclosed*

Date *2/2/11*

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)
*John L Mealer, President Mealer Companies LLC*
*John Lewis Mealer*

THIS SPACE IS FOR COURT USE ONLY

*Penalty for presenting fraudulent claim* Fine up to $500,000 or imprisonment for up to 5 years, or both 18 U S C §§ 152 and 3571

# INSTRUCTIONS FOR FILING ADMINISTRATIVE PROOF OF CLAIM

*The instructions and definitions below are general explanations of the law  In particular cases or circumstances, there may be exceptions to these general rules*

## — DEFINITIONS —

**Administrative Bar Date**
The deadline for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, governmental entities, and trusts) to file a proof of claim for certain administrative expenses against the Debtor is (i) on or before February 14, 2011 at 5 00 p m. (Eastern Time), with respect to administrative expenses arising between June 1, 2009 and January 31, 2011, and (ii) the date that is thirty (30) days after the Effective Date at 5 00 p m. (Eastern Time), with respect to administrative expenses arising between February 1, 2011 and the Effective Date

**Administrative Expense Claims**
The claims described in section 503 and 507 of title 11 of the United States Code  Among other things, these sections provide that certain types of claims are entitled to administrative expense priority, including, without limitation (i) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the bankruptcy case, (ii) certain taxes and penalties related thereto, (iii) compensation and reimbursement of certain officers, (iv) the actual, necessary expenses incurred by (a) certain creditors, (b) a creditor, an indenture trustee, an equity security holder, or a committee representing any such entities, in making a substantial contribution to a debtor's chapter 11 case, (c) a custodian, (d) members of certain committees if incurred in the performance of the duties of such committees, and (v) compensation for services rendered by an indenture trustee

**Administrative Proof of Claim**
A form filed with the clerk of the bankruptcy court where the bankruptcy case was filed, to tell the bankruptcy court how much the Debtor owes an Administrative Expense Creditor for Administrative Expense Claims

**Debtors**
The Debtors in these cases are (i) Motors Liquidation Company, (ii) MLCS, LLC (f/k/a Saturn, LLC), (iii) MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), (iv) MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ), (v) Remediation and Liability Management Company, Inc , and (vi) Environmental Corporate Remediation Company, Inc

**Effective Date**
The Effective Date is the business day on or after the confirmation date of the Debtors' Amended Joint Chapter 11 Plan, dated December 7, 2010  The Debtors shall file a notice of the Effective Date with the Bankruptcy Court and with the Securities and Exchange Commission

## ITEMS TO BE COMPLETED ON ADMINISTRATIVE PROOF OF CLAIM FORM

**Name of Debtor and Case Number:**
Provide the name of the applicable Debtor and its corresponding case number

**Information about Administrative Expense Creditor:**
Complete the section giving the name, address and telephone number of the Administrative Expense Creditor to whom the Debtor owes money or property, and the Debtor's account number, if any  If anyone else has already filed a proof of claim relating to this debt, if you never received notices from the bankruptcy court about this case, if your address differs from that to which the court sent notice, or if this proof of claim replaces or changes a proof of claim that was already filed, check the appropriate box on the form

**1. Basis for Administrative Expense Claim:**
Check the type of debt for which the proof of claim is being filed  If the type of debt is not listed, check "Other" and briefly describe the type of debt.  If you were an employee of the Debtors, fill in the last four digits of your social security number and the dates of work for which you were not paid

**2. Date Debt Incurred:**
Fill in the date when the debt first was owed by the Debtor

**3. Court Judgments:**
If you have a court judgment for this debt, state the date the court entered the judgment

**4. Total Amount of Administrative Expense Claim:**
Fill in the amount of the entire claim  If interest or other charges in addition to the principal amount of the claim are included, check the appropriate place on the form and attach an itemization of the interest and charges

**5. Brief Description of Administrative Expense Claim**

**6. Credits:**
By signing this Administrative Proof of Claim, you are stating under oath that in calculating the amount of your Administrative Expense Claim you have given the Debtor credit for all payments received from the Debtor

**7. Supporting Documents:**
You must attach to this proof of claim form copies of documents that show the Debtor owes the debt claimed or, if the documents are too lengthy, a summary of those documents.  If documents are not available, you must attach an explanation of why they are not available

All Administrative Proofs of Claim must be **received on or before the Administrative Bar Date**, at the following address (whichever is applicable)

If by overnight courier or hand delivery to

The Garden City Group, Inc
Attn  Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

Or if by hand delivery to

United States Bankruptcy Court, S D N Y
One Bowling Green
Room 534
New York, New York 10004

If by first-class mail, to

The Garden City Group, Inc
Attn  Motors Liquidation Company Claims Processing
P O  Box 9386
Dublin, Ohio 43017-4286

Please be advised that Administrative Proofs of Claim may **not** be delivered by facsimile, telecopy transmission, or electronic mail transmission  Administrative Proofs of Claim shall be considered timely filed only if actually received by the Debtors' claims agent, The Garden City Group, Inc , or by the Court on or before the Administrative Bar Date

John L. Mealer
6333 Gardenia Lane
Show Low, Arizona 85901
928-532-8191

jlmealer@mealercompanies.com                    http://www.mealercompanies.com

A registered Arizona based alternative fuel automaker and the designer of
"BLATT-SODA" a non-plant based bio-fuel

## ADMINISTRATIVE PROOF OF CLAIM # 70107022 additional details,
*Reference Claim Document Items:  #5 **and #7 as needed.***

General Motors Corporation engineering employee, Mr. Kris J. Kordella under respondeat superior culpability,  visited plaintiff's professional and funding growth oriented website using a GM computer and IP address 198.208.251.24 from his GM office in or near (yet with the IP registered to GM in) Bloomfield Hills, MI., concurrently and with what appears to be the assistance and "goading" of both Mr. Joseph Burgel "joe.burgel@gm.com" using IP address 198.208.251.22 out of his GM place of work located in or near (yet with the IP registered to GM in) Farmington, MI. and Ms. Christy Garwood "christy.garwood@gm.com" using IP address 198.208.251.23 out of her GM place of work located in or near (yet with the IP registered to GM in) West Bloomfield, MI . on June 9th, 2009. Mr. Kordella signed on to this funding growth website as investor guru "MONEY01" and posted various injurious falsehoods about Mr. Mealer and the Mealer Automobile thus unlawfully destroying growth funding and the 'rival' business of Mealer Companies LLC.

These incidents and postings of injurious falsehoods in a malicious manner (admitted by Mr. Kordella), caused John L. Mealer to lose prospective funding to the tune of $200,000,000. AND Pre-Manufacturing prospective Sales which were subject to the prospective funding under discussion between Mr. Mealer and Mr. Mealer's registered Arizona based 'alternative fuel powered automaker and alternative fuel design' company's *(Mealer Companies LLC)* prospective investors, the the tune of $30,000,000. in automobiles and related vehicles.

Mr. Kordella's malicious public posting of the injurious falsehoods on Mr. Mealer's funding

*1 of 2*

growth expansion website on June 9th, 2009 were sent out immediately to prospective investors and customers via RSS feed, and Mr. Kordella followed up through GM's Computers, while at work with additional injurious falsehood and direct EMAILS to these prospective customers and investors.

These claims by Mr. Mealer are allowed pursuant to the following bankruptcy laws and further verified by numerous interstate commerce laws such as those found in USC Title 15 under the Sherman Act and basic *published* willful and malicious defamation of character/trade libel, anti-competitive violations, including Intentional Interference With Mr. Mealer's Prospective Advantage.

Mr. Kordella has admitted such an incident and has refused a public apology as has "GMC" also refused a corporate apology. The injuries are perpetuated and through a simple public, corporate apology, the perpetuation of these injurious falsehoods may end, but the damage has been done and continues to progress to this very day.

**11 USC § 503(a)(1)(A),(3)(A)(3)** whereby (a) An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause. (b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under Section 502(f) of this title including-- (1)(A) the actual, necessary costs and expenses of preserving the estate including-- (3) the actual, necessary expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by-- (A) a creditor that files a petition under section 303 of this title; (B) a creditor that recovers, after the court's approval, for the benefit of the estate any property transferred or concealed by the debtor; (C) a creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor.

**11 USC § 101(10)(A)(B):** whereby "(10)" The term "creditor" means-- (A) entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor; (B) entity that has a claim against the estate of a kind specified in section 348(d), 502(f), 502(g), 502(h) or 502(I) of this section.
**348 (d)** A claim against the estate or the debtor that arises after the order for relief but before conversion in a case ...

In addition to this obvious legal standard (the law), plaintiff relies on exemption to "MLC"f/k/a GM (old) with **EXEMPTION TO DISCHAGE 11 USC § 523(a)(6) "for willful and malicious injury by the debtor to another entity or to the property of another entity."**

Date: February 2nd, 2011

John Lewis Mealer

2 of 2



[illegible]

U.S POSTAGE
pain
SHOWLOW, AZ
85901
FEB 03    11
AMOUNT
$5.71
00076838-02

43017

1000

UNITED STATES
POSTAL SERVICE

The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing

5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

Merler
6333 Gardenia Lane
Shaw Low, Arizona
85901

RETURN RECEIPT
REQUESTED

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

CERTIFIED MAIL™

7009 2820 0003 4820 1275

Hand delivered by Postb7a93eler

# EXHIBIT "B"

To JL, What a funny guy  ...... (a note from GM s Senior Engineering Department) :                                      2/18/11 7:21 AM

- Log in
- XHTML

- Blog
- Home
- What we are really about

  To search, type and hit

## • Recently Written

- GM aka MLC, their bankruptcy… Defamation, their lawyers, etc…
- President Obama's job plan versus reality…
- NOTE: Those following posts in *Fairfield, Dallas, NY & two others…
- IF I were President… [update Dec 14th, 2010]
- November 13th, 2010… Update
- November 3rd, 2010 Update
- Quick Update and note to the DC attorneys and others…
- It begins
- Update, July 16th, 2010
- July 2010, funny thing happened on the way to the meeting…

## • Categories

- Uncategorized

## • Archives

- February 2011
- January 2011
- December 2010
- November 2010
- August 2010
- July 2010
- June 2010
- March 2010
- January 2010
- November 2009
- October 2009
- September 2009
- August 2009
- July 2009
- June 2009
- May 2009

To JL, What a funny guy   ...... (a note from GM s Senior Engineering Department) :                    2/18/11 7:21 AM

- **Blogroll**
  - ○ Wordpress Themes

- **Admin**
  - ○ Log in
  - ○ Wordpress
  - ○ XHTML

**Jun**

**9**

# To JL, What a funny guy   ...... (a note from GM s Senior Engineering Department)

Filed Under Uncategorized

**Why thanks for the interest Mr. Kris Kordella!**
*(see notes from GM s Kris Kordella in blue below)...*

I didn't think GM would be sending over the SENIOR ENGINEERING staff to harrass and libel me just yet.
As far as Obama appointing Mr. Whitacre as new chairman and head of the the NEW GM, the actual media at one time reported on the donations to Obama's campaign by the EX-AT&T CEO Edward Whitacre.

*Mr. Kordella, since you have wholly failed General Motors in product design and as the world is witness, you have very little to stand on as far as attacking me. Since you are a real designer of real automobiles, and by suggestion, these real automobiles are viable under your new god-like leader s vision... where are they now? ... Except maybe on the chopping block awaiting their dismissal as a viable automobile?*

At least Mr. Wagoner recognized the need for your department to design better vehicles and has stated so in a variety of reports and interviews. You, of all people, should realize that limiting factors of re-tooling and the UAW constraints have bound your design concepts... If indeed, you have had any new designs in the recent years.

*Or was that Saturn?*

Regardless of how you feel about me and my honest comments on AUTOMOTIVE NEWS about Edward Whitaker's payback appointment from President Obama, I wish you success.

When Government Motors fails just like General Motors has already failed, perhaps we can put you to work at Mealer Companies, but we will need to adjust your Senior Engineering status just a bit.

JL Mealer

To JL, What a funny guy   ...... (a note from GM s Senior Engineering Department) :                          2/18/11 7:21 AM

## A SPECIAL NOTE FROM GM s HEAD DESIGN GUY,

*TO JL, What a funny guy "*
*Re: Your senseless blog to the Automotive News article on Whitacre.   Mealer Automobiles?*
*America s next major automobile company??  HAH!!!!!!!!!!!!!!!!!!!!!!  You re a legend in your own*
*head.  And notice I didn t say mind because it s obvious you don t have one.   Anyway I wish you*
*ALL the worst the world can give to such a self serving pathetic MORON.*

*Good riddance clown.  Sincerely, Kris K ( a real engineer of real automobiles) "*

# Comments

## 12 Responses to  " To JL, What a funny guy " ...... (a note from GM s Senior Engineering Department)"

1.  *JLM* on June 9th, 2009 12:33 PM

    Is this what I have to look forward to?
    JL Mealer

2.  *JL Mealer* on June 10th, 2009 9:34 PM

    http://www.autonews.com/apps/pbcs.dll/article?AID=/20090609/ANA02/906099989/1178

3.  *Stephanie* on June 13th, 2009 4:54 PM

    First and foremost, what a very sad and upset man this must be. How very sad. Secondly, the truth will always
    win. Not to mention a good lawyer. So with that said, keep doing the right thing and never stoop to their level.
    Maybe that's why they are in the toilet. You will be in my prayers.

4.  *JLM* on June 13th, 2009 5:01 PM

    Thank you Stephanie.
    The deal is, this is not  just Joe Blow with his opinion".. but the Senior Engineer from GM!
    He posted this live when I had this wordpress site open for posts and it sat there for days until I added my
    comments.
    For all I know, the investment group I have been courting read it and dropped me simply because this  real
    designer" as Kris Kordella claims just threw me to the  no mind" and  non- existant" status that today's
    investors are worried to tread.
    We have some seriously good 'Disruptive Technology' patents, we are registered as Automakers and
    Alternative Fuel providers, so… GM's Sr Engineer Kris Kordella has seriously libeled me and my company.

5.  *Christine* on June 13th, 2009 7:54 PM

    WOW is someone Jealous of Mealer Companys CEO I Love it you got under his skin Only the best will
    Survive and Mealer is all about whats best for the consumer and our planet its going to be the new wave of the
    Future and that moron is just hateful I see Mealer Companys going far I think you are brilliant and you think
    outside of the box unlike kris K who will soon be living in a box..

6.  *Shelly* on June 13th, 2009 8:25 PM

What a jerk! But fascinating that someone  so important" would give you the time of day and yet imply that you've got nothing. It sounds like you've got a great plan and they don't want anyone sharing their spotlight. And that's just my humble opinion. It seems to me that any plan that can help the environment should be taken very seriously. For him to talk to you like he's some high school bully is ridiculous.

7. *Jennifer* on June 15th, 2009 9:49 AM

Imagine working for GM and being able to pretend, with a straight face, that you've been successful. They're currently a charity case, and as hardworking as their employees may be, they're currently charity cases, too. It's not out of love for their crappy vehicles that they've been given crutches, but concern for their employees. Well, when the NYSE finds the symbol  GM" unfit to continue to be listed, they've officially failed. Wait, did that happen already? Yes, yes, it did. The nerve to call someone else a clown.

8. *JLM* on June 15th, 2009 4:44 PM

Finally,
GM Sr. Engineer Kris Kordella allowed this final comment and we can mend fences. By the way, my  attack of GM" was comments on autonews.com regarding the Obama administration's payback appointment of Ed Whitaker to a chairman position. Anyhow.. We are good to go and I wish GM and Mr. Kordella luck in all aspects.
JL Mealer
...................................................
 Dear Mr. Mealer,
Obviously you can see how I might get upset after your blog in the Automotive News. It was quite an attack on people like me who work in the trenches for this company every day and hope to continue to have a job once we get (hopefully) through all this bankruptcy. As you know, if things do not work out for GM, I will lose most of my pension, all medical benefits and on, and on. Basically a financial Armageddon for me and hundreds of my friends and family members that have relied on GM for the last 60 plus years. Not to mention the tens of thousands who've already lost their jobs.
Needless to say you know that Detroit and it's suburbs, and for that matter all of Michigan, Ohio, Indiana and other Mid West states have been beaten up so badly in the press, by Congress, by most Americans that feel they're not affected by this automotive crisis, that we've developed thin skin. However, the bottom line is I shouldn't have resorted to the  knucklehead" name calling in my blog and inferring your auto company isn't legit, because I'm sure it is.
Please consider this my apology for the aforementioned actions. Additionally, I wish you and your company great success in the future as any company that can help the United States get more GREEN is a noble company and should be commended for their work. Wishing you the best of luck in the future,

Kris J. Kordella

9. *Stephanie* on June 15th, 2009 5:22 PM

Hmmmm, well isn't that interesting. 1) I can see how someone might lash out if they were in his position. Of course he would lash out because he saw you have a future and pretty much knows he does not. I do wish him luck as well, because at this point that is what he will need.
2) Although I understand (as my mother just lost her job of 37 years and has lost everything-she works for the school district. Same one for all those years) Mr. Kordella should have lashed out at the correct people and maybe he could have taken constructive action and gotten some good results.
But alas, we are all still on planet earth, still human and FULL of emotion. I wish all of GM's employees the

To JL, What a funny guy   ...... (a note from GM s Senior Engineering Department) :                    2/18/11 7:21 AM

best of luck in the future. As far as that goes, everyone that has lost their jobs, the same.
Here's to Mealer!
Looking forward to final product.

10. *Rod Glaze* on September 6th, 2009 10:09 PM

Oddly enough watching the Tucker movie once again, has brought me to this website. I have much to say
about alot.....and alot to do about little. I am in favor of any or all who can absolutley pull the rug out from
underneath the beauracratic shamble that has been created through the reduction of prersonal freedom. Return
freedom to the individual, of choice, work, love, and lust and we have entrepenuers who hire better then the
best, to prove the best still exist. Good Luck Mr. Mealer....I shall follow until someone is in the way then I
shall seek to guide, until I am asked to lead, at which time I shall once again learn to follow. Look forward to
personal contact, and knowing nothing wish to be your  Abe Kratz" Sincerely Rod

11. *JLM* on September 7th, 2009 9:28 PM

Thank you Rod.
I am open to all advice on pushing this funding issue to completion.

12. *Troy Shelhart* on September 20th, 2009 3:03 AM

Sure sounds like a pipe dream to me, but then again thats what they said about putting a man on the moon. I
will follow this story now that I know about it, and wish you the best of luck!

## Leave a Reply

Name (required)


Email Address(required)



Website



Submit Comment

Copyright © 2007 • Using Nightlife theme created by Performancing
Powered By Wordpress - Theme Provided By Wordpress Themes - Colon Cleanser

# EXHIBIT "C"

Opportunity with Mealer Companies LLC :                                               2/16/11 7:33 AM

- Log in
- XHTML

- Blog
- Home
- What we are really about

  To search, type and hit e

## Recently Written

- GM aka MLC, their bankruptcy… Defamation, their lawyers, etc…
- President Obama's job plan versus reality…
- NOTE: Those following posts in *Fairfield, Dallas, NY & two others…
- IF I were President… [update Dec 14th, 2010]
- November 13th, 2010… Update
- November 3rd, 2010 Update
- Quick Update and note to the DC attorneys and others…
- It begins
- Update, July 16th, 2010
- July 2010, funny thing happened on the way to the meeting…

## Categories

- Uncategorized

## Archives

- February 2011
- January 2011
- December 2010
- November 2010
- August 2010
- July 2010
- June 2010
- March 2010
- January 2010
- November 2009
- October 2009
- September 2009
- August 2009
- July 2009
- June 2009
- May 2009

- ## Blogroll

  - ○ Wordpress Themes

- ## Admin

  - ○ Log in
  - ○ Wordpress
  - ○ XHTML

**Aug**

**22**

# Opportunity with Mealer Companies LLC

Filed Under Uncategorized

Quite a few people have inquired about opportunity with Mealer Companies LLC.

Funding is not 100% yet, but as we get to that point we will need hundreds of people for immediate help within the company, plus the hundreds in the construction industry as well as thousands more in the companies related to our manufacturing and products. Why not play a part? It can't hurt to throw some info about yourself together, send it to us and discuss where you feel you can fit in.

We can use designers, drafting experts, get-it-done personnel, a basic, yet highly trainable labor staff for all aspects of automotive and electrical manufacturing, public realtions, security, and a host of business people. Mealer Companies needs a nationwide automotive dealership network. In fact, we would like to sign up dealers as soon as possible. Spread the word... Many automotive dealers just lost their businesses or were cut by the new car czar and as the saying goes: *When one door closes, another door opens.*

**No... We won t give you an email address,** because we want only those types of thinking people who are capable of fending for themselves to offer their services. Those who will easily figure out how to contact Mealer Companies via email, or through the post or in youtube or any other social media outlet. *Figure it out... my name and my website URL combined as an email will get a direct message to me. Be prepared to move to Arizona...*

If you read through this brief wordpress site, you will see our plans for helping create more jobs across the USA and elsewhere in the world. Where do you fit in?

Whether it's a major long time player in our company or someone wishing to learn while they earn a great living and move on to a new and exciting company of their own, we've got a few (at least eight) ears to hear some of your ideas. Qualified investors and trainable employees are always welcome with Mealer Companies. As we expand our job training courses and help our well trained candidates seek their own niche in the world of (hopefully-USA-based) manufacturing or whatever well planned and precisely documented, worthwhile business venture they seek to fund... You will see an even greater opportunity for investment.

I'll add to this post later.

Opportunity with Mealer Companies LLC :                                                    2/18/11 7:33 AM

JL MEALER

**The MEALER is about you, your family, your country and the choices you make.**
*Wherever you may live and whoever you may be.*

# Comments

## 19 Responses to  Opportunity with Mealer Companies LLC"

1. *Rob Ginocchio* on August 24th, 2009 8:59 PM

   I just read some comments you've made on yahoo and investigated your website here. It takes guts to go out
   on a political limb in public as a businessman. I appreciate that and obviously share some of your views on
   topics of the day. If you ever need short samples of gear rod for engineering/prototyping and I've got the
   stock, let me know. I'll ship you what you need no charge if I've got it. Not sure if the use will be there, but
   over the years I've had a number of automotive parts manufacuters use my stock for one thing or another.
   Good Luck.

2. *Calvin E. Camps* on August 25th, 2009 6:50 AM

   Dear Mr Mealer,

   I work direct with Angel Investor we would have
   vey high interest in investing in your green
   engergy projects. Please contact Calvin CXXXX

   Gainesville Florida

3. *JLM* on August 25th, 2009 2:53 PM

   Thank you Rob.

   The truth is the truth and I would not be able to face myself in the mirror if I wasn't trying to do what is right
   and honest.
   I really don't know how so many politicians today can sleep at night when they know they are lying, cheating
   and outright destroying our nation.

   I will take you up on that offer for materials… Even if we purchase it from you to keep you busy and with cash
   in the bank.

Opportunity with Mealer Companies LLC :                                                                                2/16/11 7:33 AM

JL Mealer

4. *Fred Mars* on August 25th, 2009 5:44 PM

I'd work for you tomorrow John. Your a good man with good ideas that will benefit humanity.

5. *JLM* on August 25th, 2009 9:04 PM

Thank you Fred Mars…. I wish we were in hiring mode right now (you'd have a great administrative job with us).
Your "fixamerica" blog could be a major stepping stone for the future if only the majority of people would just pay attention to reality rather than TV and sports.

JL Mealer

6. *Poly Endrasik Jr* on September 5th, 2009 1:29 PM

Hi John, I liked your comment"But of course the schools and text books do exactly that." and am intrigued by your company / goals. I recently -early retired" from Chrysler after 26 years, starting with American Motors Corporation as prototype build tech. Lack of innovative spirit and politics is a primary reason I left when presented the opportunity, now I am trying my own hand at business. After AMC was bought by Chrysler, each year and new owner seemed to be less tolerant of innovators (I did work hard to implement the first video conferencing system which included integrated CAD sharing in 1991    a decade ahead of it's time    and have tried to stay on edge of technology but it was tough).

Anyway, if I can be of assistance let me know, I didn't leave all my ideas with the OEM before I left!

Here's the link to my LinkedIn profile: http://www.linkedin.com/in/polyendrasikjr

Good luck and God bless!

7. *Christa Linderer* on September 8th, 2009 6:18 AM

John

I liked your comment to Fred Mars (Your "fixamerica" blog could be a major stepping stone for the future if only the majority of people would just pay attention to reality rather than TV and sports.)
A few months ago, my husband and I decided to cancel our cable TV service and go with good quality Netflix movies every now and then. The propaganda on TV is a shame to any intelligent person.
I've been following some of your comments on Automotive News and I am sure I will find a way to get my resume to you. I'm a business person, analytical, supportive and getting things done. My previous employer, developing Hybrid technology for BMW, closed their office in MI and relocated to Germany.
Best of luck!

8. *Kelly Blankenship* on September 8th, 2009 3:40 PM

Very interesting company, I would be interested in participating in discussions    specifically around compliance related issues and fair lending. As you know the Obama administration is going to be coming down hard on finance companies. They must be ready or they will be hit with fines and possible cease and desists.

9. *Baltazar Pinon Neri* on September 9th, 2009 2:10 PM

Opportunity with Mealer Companies LLC :                                                           2/18/11 7:33 AM

Dear John: Your company is very interesant; Im available if you need anything from us. Also I invite you to
invest in Juarez Mexico with all the competitive advantages. Ciudad Juarez have more than 350 international
companies established included automotive (parts) manufacturing companies. If you want to know more; I can
send you information.
You can to explore new opportunities.
My Consultor Group is new company too. 90% of my business are with US companies.
I understand you.
Thanks!! Good luck; God Bless you.
Baltazar Pinon Neri(Linked in Auto OEM)
Director Consultor
LION International Consultors Group

10. *Idris Muhammad* on September 9th, 2009 3:43 PM

In response to JL Mealer's posting on Linked-In, I am interested to apply. I am mechanical engineer with
MBA, CQE and extensive experience in supplier quality and plant quality management. Please advise how to
send my resume to you. I am open for salary and relocation.
Thanks,
Idris Muhammad
idrishanif@hotmail.com)
810-695-4166

11. *Martin Jennings* on September 22nd, 2009 5:51 AM

JL,

I applaud you for your fortitude. I happen to be one of those who agree with your political premise, and
admire you for your willingness to stand, alone if necessary, to 1) prove the naysayers wrong, 2) produce
something that brings back America to what it once was and can be again, 3) never forgetting the objective:
safety, economy, and style.

I'm sure you've seen this before, but if not, Google –The Power of Leadership"…it will motivate, empower
and reflect what Mealer is and will be as well as what it must go through! I

My congratulations. Unfortunately, I am the least mechanically inclined individual you'll ever meet,however, I
excel in public relations and persuading even the most steadfast opponents to understand reason and benefits.
When your operation is ready for exposure and need someone to communicate with ALL stakeholders, I'd be
honored to assist you.

12. *Scott Palmer* on September 30th, 2009 11:01 AM

JL Mealer
Mealer Companies LLC
http://mealercompanies.com
America's Next Major Automaker
& 100% Self-Regenerative-Fueled
High Capacity Electricity Producing Device MFG

Mr. Mealer, et al.,

Opportunity with Mealer Companies LLC :                                                    2/18/11 7:33 AM

We had the chance to chat recently on The Huffington Post and I thought I'd get my resume to you in advance of your funding approval.

I have been an Entrepreneur of a photography studio for some time now, however due to cutbacks and the economy, I feel it is time for me to utilize my talents in a more productive and profitable manner. I am an older adult with years of life experience and knowledge of the daily machinations of managing a business. These life skills allow me to be innovative, reliable and perhaps more dedicated than someone just coming to the workforce.

I feel this position is a good fit for me, having been in my own business for a time. I believe I have many talents and benefits to offer you and my experience will help me be an asset to your company in a very short time.

I am comfortable working independently or as part of a team and am highly motivated. I have extensive experience with the needs of clientele and am able to communicate effectively. Other skills I can bring to your organization include: Management/Sales practices, Creative Thinking, and Organization, Research and extensive Computer skills, as well as Aggressive Media and Writing potential. I believe you will find my background and experience applicable to some of your needs .

I am geographically mobile and am willing to begin employment immediately. I would appreciate a personal interview at your earliest convenience. Please contact me at the address and phone number below. I am eager to further discuss my qualifications and view your facility.

Thank you for your consideration. I look forward to hearing from you soon.

Sincerely,

Scott V. Palmer
2888 Hwy 43 South
Loretto, TN. 38469
931.852.2271 (home)
931.244.0750 (cell)

– – – – – – – – – – – – – – – –

Scott V. Palmer

2888 Hwy 43 South
Loretto, TN. 38469
931.852.2271 (home)
931.244.0750 (cell)

EMPLOYMENT HISTORY

 Media Consultant/Photographer/Studio Manager

AngelPalm Studios, Loretto, TN    Apr. 05 to Apr. Present

Overseeing all aspects of media management publishing/writing solutions and innovative implementation. Photographer/Videographer    All digital studio solutions. Utilized Adobe CS3 suite for digital image manipulation and correction, Portrait Professional, Adobe Lightroom 2
Daily management of studio/office, support staff/assistants and crew to include contractors and sub-contract services.

Built strong client base with residual contact. Built company value with smart purchasing.
AngelPalm Studios
Loretto, TN. 38469
931.852.2271 (home)
931.244.0750 (cell)

Media Content Manager

Writer's Research Guild    Apr. 03 to Apr. 05

Provided Internet content and solutions for a subsidiary of Google, DEMAND Media and eHow.com.
Wrote high value SEO content and completed research for web-based content solutions providing users with
solutions and information on various topics and issues.
Writers Research Group, LLC
PO Box 891568
Oklahoma City, OK 73189-1568
Phone: 405-681-5074

Network Consultant

Palmer Network Consulting, Ozark, AL    Apr. 00 to Apr. 03

Overseeing all aspects of network management solutions and implementation.
Saved company over $200k in second year by innovation and strong product research.

Network Manager

Thomson Newspapers Corporation, Dothan, AL    Apr. 99    Apr. 00

Major Responsibilities:
Began as IT support technician handling hardware/software trouble-shooting, installation, and maintenance of
corporate network systems.
Implementation, installation and maintenance of $1.8 million Windows NT network involving a
Windows/Macintosh heterogeneous environment encompassing five local newspapers and over 245
workstations, 12 Windows NT servers, 14 Macintosh database servers and 1 AP wire service station.
Maintained a Microsoft Exchange Intranet/Internet mail server with over 300 clients. WAN/LAN/VPN and
wireless solution experience.
Software utilized: Adobe Photoshop, Adobe Acrobat, Quark Xpress 6, PC Anywhere, All Norton Utilities
and Antivirus products, Timbuktu Pro, Baseview software, NewsEdit Pro, AppleShare IP, Windows NT 5,
Mac OS X and above, Windows 98/00/XP SP2/Vista. Some experience with New Media and Internet
applications.

Computer Technician
Thomson Newspapers Corporation, Dothan, AL    Jan. 99 to Apr. 99

Senior Graphics Illustrator
Thomson Newspapers Corporation, Dothan, AL    Oct. 98 to Jan. 99

Senior Writer/Graphics Illustrator
Thrifty Nickel Want Ads, Dothan, AL   Feb. 97 to Oct. 98

Create and write all ads and designs for customers utilizing Corel Suite, Pagemaker, Quark Express, Adobe
Photoshop/ Illustrator in both Mac and PC formats. Perform strip/layout and meet all deadlines. All
advertisement copywriting. Experienced in hardware and software troubleshooting and design.

Scott V. Palmer
Page 2

Senior Newspaper Reporter/Photographer

Apalachicola Times, Apalachicola, FL    Jan 96 to Jan 97

Performed all newsgathering, feature writing and photography for weekly newspaper. Did strip/layout and
production of headlines and masts utilizing Aldus Pagemaker and Quark Express/Photoshop applications for
Mac and PC platforms.

Senior Issues Researcher

Florida State Chamber of Commerce, St. Petersburg, FL    Aug. 95 to Dec. 95

Developed reports and written scripts/copy dealing with new Florida legislative issues. Assisted manager in
soliciting business for community support for the Chamber.

Senior Account Liaison

Raymond James and Associates, St. Petersburg, FL    Apr. 90 to Aug. 95

Portfolio Representative to clients and the Account Executives and Brokers. Executed securities trading over
New York Stock Exchange via IBM trading software. Acted as Account Manager for 24 employees.

ADDITIONAL PROFESSIONAL SKILLS

Journalism

Word Processing, proofreading, office equipment operation, script, copy and feature writing, headlines,
deadlines, accuracy in reporting and research, AR/AP, broadcast experience. Proficient in all aspects of digital
photography and design. Proficient in Adobe Photoshop CS3, all Word product suites, and most publishing
software. Talented web researcher and solution provider.

Radio:

On-Air talent and producer for WFSU and FAMU classical music block.
On-Air talent and producer for 102.5 St. Petersburg, FL. contemporary and classical rock request hour.

References:

Available on request

13. *Joe Plajstek* on October 9th, 2009 2:55 PM

Dear Mr. Mealer

Like to send you my resume, you will see that my background/experience in marketing and sales for a luxury

automaker is a perfect fit for your new product. You have what it takes to be successful, passion.

J.

14. *Wil Thomas* on November 4th, 2009 12:44 PM

John,
Before you go out and sign up a host of traditional auto-dealers, I'd like to run an idea I've been mulling over
by you. See, I am of the opinion that the traditional dealership model used by, well everyone in the auto
industry, is yesterdays' news. It is old hat.

This is the 21st century. the age of Google, Facebook & Twitter. Isn't there a better way to bring world-class
transportation to the masses?

I'm not a marketing genius. Just a guy with an idea.

Wil

15. *Chris G. Deschacht* on November 5th, 2009 12:10 PM

Dear Mr. Mealer,

After reading your recent response to a post on azcentral.com expressing your wishes to remain in Arizona I
would like to offer our services. I am an Arizona Commercial REALTOR and can assist you with site locator
service as well as site acquisition (or any other real estate services for that matter).

As real estate is my first love, I am partial to it. However, should the opportunity ever present itself to work for
a company with innovative ideas like Mealer American Motors I would have to consider it long and hard.

Either way, I wish you the best in any of your current and future endeavours and will be following your
progress closely.

Respectfully yours,

Chris G. Deschacht
Bullhead City, Arizona

16. *Joe Barr* on January 3rd, 2010 12:54 PM

Hello JL,

In the past five years I've been involved in securing funding for revolutionary CVT's (continuously Variable
Transmissions for both Bicycles and scooters). Get used to sleeping only a few hours each night and fighting
those traditional forces who will throw doubt in your path with each step you take. However, I see the light in
your future if you just have the determination to not be pushed back by those who have it as their agenda for
you to give up.

Joe

joebarr100@msn.com

17. *Dann Therrien* on January 7th, 2010 1:19 PM

Opportunity with Mealer Companies LLC :                                      2/18/11 7:33 AM

Let me know where to send my resume... This is soooo exciting!

18. *steven odell* on February 12th, 2011 3:44 PM

JL, I used to work for an R&D firm and loved wearing many different hats (the technology worked, but the Principals were thieves, hence the subsequent SEC involvment). Let me know when you can use a researcher, designer, draftsman, copy writer, PR man, welder, fabricator and painter, okay? I will even take my turn cooking in the lunchroom. ;>)

Steven O.

19. *JLM* on February 12th, 2011 4:56 PM

Most certainly Steven. Once I get through the lawsuit or gather funding, I will contact you. Send a resume to me using my name (no spaces) AT yahoo.
JL Mealer

## Leave a Reply

Name (required)


Email Address(required)


Website


Submit Comment

Copyright © 2007 • Using Nightlife theme created by Performancing
Powered By Wordpress - Theme Provided By Wordpress Themes - Colon Cleanser

# EXHIBIT "D"

Mealer Updates, Funding...:                                                        2/18/11 7:34 AM

- Log in
- XHTML

- Blog
- Home
- What we are really about

  To search, type and hit

## Recently Written

- ○ GM aka MLC, their bankruptcy... Defamation, their lawyers, etc...
- ○ President Obama's job plan versus reality...
- ○ NOTE: Those following posts in *Fairfield, Dallas, NY & two others...
- ○ IF I were President... [update Dec 14th, 2010]
- ○ November 13th, 2010... Update
- ○ November 3rd, 2010 Update
- ○ Quick Update and note to the DC attorneys and others...
- ○ It begins
- ○ Update, July 16th, 2010
- ○ July 2010, funny thing happened on the way to the meeting...

## Categories

- ○ Uncategorized

## Archives

- ○ February 2011
- ○ January 2011
- ○ December 2010
- ○ November 2010
- ○ August 2010
- ○ July 2010
- ○ June 2010
- ○ March 2010
- ○ January 2010
- ○ November 2009
- ○ October 2009
- ○ September 2009
- ○ August 2009
- ○ July 2009
- ○ June 2009
- ○ May 2009

- ## Blogroll

  - Wordpress Themes

- ## Admin

  - Log in
  - Wordpress
  - XHTML

**Sep**

**26**

# Mealer Updates, Funding...

Filed Under Uncategorized

Mealer Companies LLC ... Okay, I edited this post because after reading it, I appeared to be whining (and made major typos of which I will become famous). It appears we are under negotiations for funding and if all goes well, you will see our Bridge Vehicle hitting the market in the next 18 months.

Let's fast forward a couple of years and say Mealer Companies goes into full production tomorrow. An average American family (we will call the Crosbies) begins the purchase process for a $39,000 MEALER FV Series and takes the time to visit a dealership and get the home breaker box retrofitting details from one of our dealers whether franchised or directly owned by our company, PRIOR to purchasing or ordering their new MEALER. The Crosbies want to take full advantage of the MEALER ability to generate power for their condo. They hire a local electrician who visits their home and installs a connector and smaller breaker box wherever the MEALER will be parked at night. Cost is roughly $300 for the electrician and $200 for the hardware and extension cable which links to the parking area for the MEALER. This is due to the fact, the Crosbies live in a condo and the garage has already been set up for grandma to live in since her Medicaid was cut off and she must now pay her medical coverage with her Social Security check... So, no garage to park the car.

The Crosbies choose an SUV sized, 7-seating MEALER FV (branded name?) and drive it home. All is well and although the MEALER charges their condo, plus the up-link power cabled connection to three of their four-plex neighbors while also supplying the Internet via the MEALER, they realize that with their newly acquired energy bill savings, they want to travel across country to Disneyland and hit Knotts Berry Farm (which are then both owned by China)... Hmmmm what to do? The neighbors will be without power since they all had gotten together and voted to remove themselves from the electrical power controlled by the Smart Grid System and carefully watched over by *Electra-Czar...*
*Easy solutions are what we do.*

*The Crosbies put a call into a Mealer Companies associate business and they do a quick-lease on a portable MEALER charge pack' (name?) that maintains, controls and distributes a storage of energy which is converted to electricity which quietly and efficiently provides a back-up power source for just such occasions. This of course, was offered as part of a MEALER extended service plan and the cost is covered. This is also an option for those families who have not yet purchased two MEALER Automobiles, one for home idle and*

*the other for the road...*

*Or one for each spouse.*

Note: Without the added expense of an electric bill or fuel charges, one spouse can actually stay home and raise the children in a decent environment where they can be loved and cared for... Grandma, Grandpa or elderly mom and dad no longer need to freeze to death in the frigid winters because they failed to pay –NO Common Sense Edison Electric Co" winter heating bills.

Back to the scenario:

The Crosbies return home and everyone is happy

That's how I see it. Sure, I am brutally honest (even though I seriously edited my original note before posting it), and sure some people might feel offended by pointing out the obvious factors involved in getting the MEALER to market along with their feeling of intense disagreement with my vision of 2 years from now. You need to call a 'circle', a 'circle' when dealing with politics and this circle we are dealing with now is certainly not completely round and it only wants to roll over you.

*[Notice the extreme wit with the 'circle' concept? I have hundreds of these snappy, witty, analogous streams of thought just floating around my mind... Lucky us, eh?]*

Fear not America    Let's see where this goes this fall.

JL Mealer
Mealer Companies LLC
http://mealercompanies.com
America's Next Major Automaker
& 100% Self-Regenerative-Fueled
High Capacity Electric Producing Device MFG

# Comments

## 6 Responses to   Mealer Updates, Funding..."

1. *john e madden III* on October 8th, 2009 6:26 PM

    i want to learn more about your –ear"....or –ears", i want to to see u on glenn becks' show soon and i want you –vetted" by glenn or his staff–  i like what ive read so far–   please ask glenn for a radio or tv interview soon. thanks john M

2. *JLM* on October 8th, 2009 9:11 PM

Mealer Updates, Funding... :                                                                2/18/11 7:34 AM

John,

I would love to be on Beck's show. However, I believe he and his producer's and 'Stu' are refusing to talk to me because they can't get past my vehicle as being what they call 'green'. They must believe I am one of the Al Gore followers or anything of the sort, but instead pro-American.

This is about Americans and our jobs and the country's future for our children. I am against the greenie mentality!

Send a note to Beck and suggest.. have your friends do the same. I won't be selling cars, but prmoting everything you read about me. They can vette me, but I warn you, I have not - played well with others'' all of my life and my past does not look choir boy clean.

JL MEALER

3. *Dr.Gurminder Singh* on October 21st, 2009 12:27 PM

I am the founder of the Institute and GreenEdge Advisors. Co-author the Green Car Reports and GreenPapers of Green Infrastructures.

Would very much like to undertake due diligence and provide strategic assistance to capitalize your company. If this is of interest, email me.

4. *Manfred Knobel* on October 25th, 2009 6:10 AM

what an interesting concept! Congrats to the idea innovation. How much power do you think your stable of cars could generate as supplementary electrical power to an exisiting residence? Will you be using existing PV technology or are you holding out for the concentrated nano panels?
Again, my compliments....what a ride

5. *JLM* on October 26th, 2009 9:32 AM

Manfred,
The MEALER will provide enough electrical output to run an arc welder while powering lights at the same time. Or rather, and entire house with all electricity. I assume that is what you are asking.

Funding is looking definite for this year.
JL Mealer

6. *K.J.VIGUE.II* on October 30th, 2009 7:35 AM

Very interested in your company's services. Please feel free to call me at 202-528-9285!!!

Kind regards,

K.J.
K.J. Vigue,II, Founder
CEO & Chairman of the Board of Trustees
Wonderful Angels' Academy
P.O. Box 77711
Washington, DC 20013-7711
wonderfulangelsacademy.org

Mealer Updates, Funding... :                                                        2/18/11 7:34 AM

k.j.vigue@wonderfulangelsacademy.org
Private Email: petabee7310866@aol.com
301-218-4374
24 HOUR CELL LINE: ( 202-528-9285 )

## Leave a Reply

Name (required)

Email Address(required)

Website

Submit Comment

Copyright © 2007 • Using Nightlife theme created by Performancing
Powered By Wordpress - Theme Provided By Wordpress Themes - Colon Cleanser

# EXHIBIT "E"

- Log in
- XHTML


- Blog
- Home
- What we are really about

To search, type and hit

## • Recently Written

- ○ GM aka MLC, their bankruptcy… Defamation, their lawyers, etc…
- ○ President Obama s job plan versus reality…
- ○ NOTE: Those following posts in *Fairfield, Dallas, NY & two others…
- ○ IF I were President… [update Dec 14th, 2010]
- ○ November 13th, 2010… Update
- ○ November 3rd, 2010 Update
- ○ Quick Update and note to the DC attorneys and others…
- ○ It begins
- ○ Update, July 16th, 2010
- ○ July 2010, funny thing happened on the way to the meeting…

## • Categories

- ○ Uncategorized

## • Archives

- ○ February 2011
- ○ January 2011
- ○ December 2010
- ○ November 2010
- ○ August 2010
- ○ July 2010
- ○ June 2010
- ○ March 2010
- ○ January 2010
- ○ November 2009
- ○ October 2009
- ○ September 2009
- ○ August 2009
- ○ July 2009
- ○ June 2009
- ○ May 2009

The October Stretch :                                                                  2/18/11 12:24 PM

- ## Blogroll

  - Wordpress Themes

- ## Admin

  - Log in
  - Wordpress
  - XHTML

**Oct**

**24**

## The October Stretch

Filed Under Uncategorized

October 2009 in regards to Mealer Companies brings us to a point where we hope to be moving into our initial corporate offices this winter as we expect to begin making major advances to bringing our product to manufacturing and to market by fall 2010. These are exciting times and I hope you will follow our progress. As we move our many engineers, techs and development personnel into the area, the enthusiasm will lead to constant updates and they should keep you up the speed.

JL Mealer

# Comments

## One Response to  The October Stretch"

1. *JL Mealer* on February 10th, 2011 11:00 AM

   The enthusiasm working yet?

## Leave a Reply

Name (required)

The October Stretch :                                                                                          2/18/11 12:24 PM

Email Address(required)

Website

Submit Comment

Copyright © 2007 • Using Nightlife theme created by Performancing
Powered By Wordpress - Theme Provided By Wordpress Themes - Colon Cleanser

# EXHIBIT "F"

1 January 2010 :                                                                                    2/18/11 7:35 AM

- Log in
- XHTML

- Blog
- Home
- What we are really about

To search, type and hit

## Recently Written

- GM aka MLC, their bankruptcy… Defamation, their lawyers, etc…
- President Obama s job plan versus reality…
- NOTE: Those following posts in *Fairfield, Dallas, NY & two others…
- IF I were President… [update Dec 14th, 2010]
- November 13th, 2010… Update
- November 3rd, 2010 Update
- Quick Update and note to the DC attorneys and others…
- It begins
- Update, July 16th, 2010
- July 2010, funny thing happened on the way to the meeting…

## Categories

- Uncategorized

## Archives

- February 2011
- January 2011
- December 2010
- November 2010
- August 2010
- July 2010
- June 2010
- March 2010
- January 2010
- November 2009
- October 2009
- September 2009
- August 2009
- July 2009
- June 2009
- May 2009

1 January 2010 :                                                                                                     2/18/11 7:35 AM

- **Blogroll**

  - Wordpress Themes

- **Admin**

  - Log in
  - Wordpress
  - XHTML

**Jan**

**1**

# 1 January 2010

Filed Under Uncategorized

Mealer Companies LLC has a quite a bit going for the company this year. Funding just around the corner and a wide open world to help heal. The MEALER products are not the issue and manufacturing along with product sales are not going to be a problem… It s the red tape and road blocks that may be put down by the power brokers and greedy outsiders. When reality comes around, we know that nothing will stand in our way.

 Heal" meaning creating a sliver of real hope for new jobs and new found wealth for those of us who are struggling through a bad past year. Mealer Companies is just the tip of the iceberg on a new stretch of American Entrepreneurs. In fact the entire global world of private and individual businesses is about to rally around and create the jobs that not only the USA needs, but the world s populous demands. No one who is worth anything wants to stay on welfare or take a free ride through life. It s all about the job, career and lifestyles that we choose for ourselves and for our families.

I expect to have a few new prototype sketches of the MEALER on this Word Press site within the next 45-60 days.

JL Mealer

**The MEALER is about you, your family, your country and the choices you make, the roads you follow…** *Wherever you may live and whoever you may be.*

# Comments

1 January 2010 :                                                                          2/18/11 7:35 AM

## 2 Responses to  1 January 2010"

1. *John Susko* on January 3rd, 2010 2:11 PM

   The healing you wrote about is long over due. I look forward to seeing the prototype sketches and to contributing to the realization of this awesome dream how ever I can   as soon as possible.

   Power brokers, roadblocks, greedy outsiders, and nay-sayers be damned!

2. *Wilson Thomas* on January 6th, 2010 5:17 PM

   Good to see an update! I am excited for the future! Though 2009 was difficult, it is through adversity that we become stronger and more determined.

   Keep fighting and we will win!

## Leave a Reply

Name (required)


Email Address(required)


Website


Submit Comment

Copyright © 2007 • Using Nightlife theme created by Performancing
Powered By Wordpress - Theme Provided By Wordpress Themes - Colon Cleanser

# EXHIBIT "G"

*Complaint*

*original*

26|

John Lewis Mealer, Pro Per
6333 Gardenia Lane
Show Low, Arizona 85901
jlmealer@mealercompanies.com

FILED

2010 MAR 30  AM 10: 46

CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF ARIZONA -- PHOENIX DIVISION**

| | |
|---|---|
| In re | Case No.: 2:09-BK-24899-RTB |
| JOHN LEWIS MEALER,<br>Debtor(s) | Chapter 7 |
| GMAC MORTGAGE LLC, GMACfs,<br>GENERAL MOTORS CORP., GENERAL<br>MOTORS CO., MOTORS LIQUIDATION<br>CO., RESIDENTIAL CAPITAL LLC, KRIS J.<br>KORDELLA, CHRISTY GARWOOD, et al. | **ADVERSARY COMPLAINT**<br>*2:10-ap-503* |
| (Creditor)    Defendants, | **ENJOINED MOTION FOR** |
| vs. | **EVIDENTIARY HEARING CONCERNING** |
| JOHN LEWIS MEALER, (wife, sons,et al)<br>(Debtor's/Injured)<br>~~and LAWRENCE J. WARFIELD, Chapter 7~~<br>~~Trustee,~~ | **GROSS CREDITOR MISCONDUCT** |
| Plaintiffs, | |

**I.**        **JURISDICTION AND VENUE**

    **Comes Now** the Plaintiff, In Pro Per, by special appearance; Motioning adversary

proceeding pursuant 11 USC § 101 et seq., FRBP Part I, Rule 1018, Part VII Adversary

Proceedings, Rules 7001, 7056, 9014, Part III, IX, "General Provisions," 11 USC Appendix Rule

9027, 9029, F.R.Civ.P.8, 3 F.R.Civ.P., 12 F.R.Civ.P.(g)(1), Core Proceeding pursuant to 28

U.S.C § 1334(a)(b), 28 USC § 157(b)(2)(B)(C)(F)(G)(H)(5)(c)(1)(2)(1) et al., 11 USC § 101(5)

(B), § 303(a)(b)(2)(d)(f)(g)(h)(1)(1)(i), § 524(a)(2), 547(b) and 362(b)(20)(21) subsection (a),

*1*

03/30/2010

(d)4, 11 U.S.C. § 523(a)(4)(a)(6) [per the Equal protection Clause], et al., Therefore, this US

Arizona District Bankruptcy Court exercises jurisdiction on these matters.

## II.                                    <u>CLAIM SUMMARY</u>

I, Plaintiff(s) hereby produce, verify and submit this CHAPTER 7 ADVERSARY

COMPLAINT _____ enjoined MOTION FOR EVIDENTIARY HEARING

CONCERNING GROSS CREDITOR MISCONDUCT against the Defendants listed above: This

enjoined Complaint/Motion blocks, denies, argues Creditor Defendants' motion For Relief From

Automatic Stay and seeks redress to initiate settlement for Defendants' flagrant, egregious,

reprehensible prima facie torts and ongoing irreparable injuries fraudulently committed upon

Plaintiff creating Breach of Fiduciary Duty, Breach of Contract, fraudulent activities and other

injuries caused by Defendants' unrestrained, denigrating actions which intentionally instilled

debtor's financial condition prior to and during this bankruptcy case under unusual and exigent

circumstances, yet not beyond the scope of state and federal bankruptcy law, contract law,

common law, jurisprudence, and judicial rule. A lift of automatic stay in this case will result in

immediate and irreparable injury, ad infinitum, loss and damage to Plaintiffs in what appears

would be thwarting due process, subservient to law and will defeat the ends of justice. Plaintiff

does not enter this legal battle by choice, but *conditio sine qua non* justice.

## III.              <u>DEFENDANTS' LACK OF AUTHORITY and PRECEDENCE</u>

Defendants' as Mortgage Holder/Creditor has no remedy or precedence to demand relief

from the automatic stay per their original motion, which allows forum for this Plaintiff's

adversary complaint. Defendant's original request and Motion to Lift Automatic Stay is without

merit as Creditor/Movant/Defendants' have not made an effort to provide legal cause to move

their claim to another court. The contractual evidence provided by Defendant acting ultra vires

2

03/30/20

against this Debtor by and through this instant case aberrant modus operandi further proves

Plaintiff's case.

> Pursuant to 11 USC § 362(d)(1) of the Bankruptcy Code, the automatic stay may only be lifted to permit a litigation to go forward in another court upon an initial showing of "cause" by the party seeking relief from the stay. Sonnax Indus., Inc. v. Tri Component Prods. Corp. (In re Sonnax Indus., Inc), 907 F. 2d 1280, 1285 (2d Cir. 1990); In re New York Med Grp., P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y.2001).1

## IV.    **CREDITORS BREACH OF DUTY TO PROTECT DEBTOR**

Pursuant to laws of contract both parties have a mutual right to remedy. Defendants' who are also an FDIC approved banking institution and mortgage holder of the Plaintiffs have committed what appears to be collisional gross negligence in malicious assaults upon this Plaintiff while under a fiduciary duty to protect the Plaintiff, activity leaning precariously close to banking fraud. While it is understood that a debtor maintain insurance and generally protects creditor interests in lien property, it is common practice for the creditor to provide an effort of protection for debtor and exercise skill, care and diligence when acting on behalf of the debtor/client. Shared fiduciary responsibility is evident in this respect. Reciprocity certainly plays a part in the balance of rights and obligations of the parties, which may not be disturbed to the parties detriment contrary to the requirement of good faith. Creditor is prohibited from earmarking debtor's payments and mixing, combining or co mingling funds to pay for the very Internet Service Provider ("ISP") registration fees whereby the instrument is used to harass, attack, instill duress and control Debtor. Such action conspired by Defendants' is clearly fraudulent misappropriation of this Debtor's funds which originated as mortgage payments.

Direct tortious activity against any debtor is blatant abuse of creditor bank privileges, especially when that creditor bank shares fiduciary interest in a competitive company as that of the debtor. Under the Court's inherent authority to secure permanent injunctive relief and other

3

1  equitable relief for this Plaintiff, including restitution for unjust enrichment against the

2  Defendant's for failing to maintain procedures ensuring compliance with contractual obligations,

3  blatant collusive tortious violations, unfair business practices and other critical legal

4  encroachments which culminate in multiple breach of contract violations causing serious

5  irreparable injury, Plaintiff seeks remedy.

6      The Blatant tortious activity paid for with Debtor's mortgage payments proves further

7  *errore calculi* of Plaintiff's account. Creditor participatory aiding and abetting to intentionally

8  harm the debtor client is a gross breach of this shared fiduciary responsibility creating *exceptio*

9  *non causa debti*. Defendants' willful neglect and gross breach of contractual obligations *conditio*

10  *sine qua non* for Plaintiff's failure to maintain mortgage payments and this instant bankruptcy.

11  Defendants' enforcement of this dishonored, breached, mortgage contract culminated in their

12  Motion for Lift of Automatic Stay during Debtor/Plaintiff's ultimate economic failure as actual

13  cause of Defendants inappropriate tortious M.O. creating the Plaintiff's inability to perform

14  under the contract and subsequent bankruptcy, and thus qualifies as a voidable Motion under

15  Title 11 USC § 303(a)(b)(2)(d)(f)(g)(h)(1)(1)(i), 547(b) and 362(b)(20)(21) subsection (a), (d)4.

16

17      Plaintiff contends and qualifies this codified line of reasoning taking legal action to seek

18  damages due to Defendants' unconscionable actions that dishonored contractual obligations

19  making a voidable fundamental breach both anticipatory and actual through what now appears to

20  be defective paperwork by gross contract confusion and Plaintiff's pernicious belief of a provenly

21  false security and reliance on the tantamount juristic act with Defendants. By and through

22  Creditor's grossly breached contract, Defendants Motion to Lift Automatic Stay has become

23  void. *"By strict definition that which is void is nugatory and of no effect and cannot be cured;*

24  *that which is voidable may be either voided or cured."* Black's Law Dictionary.

25                                    4

This Court need not be lectured on contract law, the following basics are noted for benefit of the Defendants' and may also be found in the UCC: *(1)*. Breach of duty (negligence) a failure to perform a duty owed to another or to society; a failure to exercise that care which a reasonable man would exercise under similar circumstances. In the absence of an express term governing the sequence of performance, and in the absence of circumstances that imply a sequence of performance, default rules supply the answer. Blyth v Birmingham Waterworks Co (1856) 11 Exch 781. *(2)*. Breach of trust with fraudulent intent "a larceny after trust, which includes all of the elements of larceny except the unlawful taking in the beginning." State v. Owings, 205 S.C. 314, 316, 31 S.E.2d 906, 907 (1944). *(3)*. Material breach is a breach that is substantial and operates to excuse further performance by the aggrieved party. A material breach destroys the value of the contract and gives rise to an action for breach of contract.

Defendants' have clearly acted unprofessionally in of breach of contract as detailed herein, and thus have violated their entire authority to claims against this debtor Plaintiff and are monetarily responsible for their illegal actions against this private Plaintiff.

**V.**          **PREMISIS:  CAUSE OF ACTION**

While Plaintiff maintains a registered automobile manufacturing company and is competitive to the interests of Defendants while also under mortgage contract with Creditor Defendant, the following incidents shine a beacon of light on multiple transgressions.

Defendants' agent Mr. Kris J Kordella, did on June 9th, 2009 at 10:56:50 AM enter Plaintiff's professional business website URL http://mealercompanies.com with intent to strategically sabotage, whether by and through direction of management or strictly through respondeat *superior contributory and comparative negligence originating while at work under General Motors Corporation roof yet subordinate to the GMAC/(fs) owned Internet Service Provider's ("ISP") and by and through other legally responsible parties acting in concert with at*

5

least two other fully documented, simultaneous invasions by additional GM-GMAC agents who

may or may not have been directed by superiors, did sign into and complete the required

personal and professional Blogger information at 11:29:31 AM in order to develop sophisticated

commentary about Plaintiff on Plaintiff's RSS feed, investor oriented website as coming from a

highly rated financial Blogger and engineering expert related to GM-GMAC under

"kris.j.kordella@gm.com" as "MONEY01" and did purposely write strategically worded, grossly

disparaging, humiliating, defamatory statements regarding JL Mealer and the Mealer Automobile

and did days later follow up the initial blackening comments about Plaintiff with direct emails to

multiple interested parties further defaming Plaintiff as a "fraud", compounding the humiliating

damage to Plaintiff and becoming a trespasser, ab anito: With unclean hands, Defendant acted in

concert with multiple employee agents, did willingly and knowingly trespass with malicious

intent to defile and harass Plaintiff's privacy and did unfairly proximate cause of immediate and

future financial loss through gross misconduct resulting in crippling financial constraints being

shackled upon Plaintiffs that maintain mortgage with Defendants who coincidentally have

equitable stake in a failing competitive-business, did attempt to hinder and restrain "Mealer

Automobiles" and other Mealer-products to be manufactured by Plaintiffs for international trade

from competing in the well-renowned General Motor's vast product sales market, by and through

pervasive monopolistic behavior, trade libel per se, did intentionally invade to inflict duress,

commit reckless and intentional tortious interference upon Plaintiffs, intentionally creating an

impossibility to perform under the mortgage contract, which did prevent Plaintiffs from

expanding a competitive-business, maintain their livelihood and did intentionally and unfairly

hinder prospective trade agreements through Defendants' far reaching libelous assault, abusive

and manipulative unfair business practices through direct unwarranted defamation of character,

6

the blackening of Plaintiffs' good name resulting in intentional, unreasonable restraint of trade per se by deliberately humiliating, embarrassing and distorting Plaintiffs' ability to conduct international and domestic trade through acts of purposefully defamatory laden tort designed to and accomplishing the induced abandonment of prospective and pending "B-Round Expansion Capital" funding contracts between private investors and Plaintiffs' growing business, thus perpetrating unfair business practices through combination; acting in concert and with corporate assistance, corporate management, corporate supervisors and other agent employees within the General Motors Corporation, General Motors Acceptance Corporation, General Motors Company, GMACfs, and other subsidiaries who benefited from this anti-competitive conduct which abrogated this Plaintiffs' right of unhindered contract and pursuit of a competitive-trade while Plaintiffs proceeded under duress and relied on an expectancy of Mortgage Holder Defendants' implied duty of good faith, that said Defendant would never violate this duty and resort to illegal misconduct that would ultimately cause hinder, delay and fraudulent obstruction to Debtor Plaintiffs' ability to maintain mortgage payments, which is Defendants' liability for intentional duress, malfeasance creditor misconduct with criminal and tortious intent, gross negligence, fraudulent inducement, intentional misrepresentation and breach of contract, breach of fiduciary duty and intentional interference with Plaintiff's prospective advantage.

The Mortgage propagated between parties further fails and dissolves *exceptio quod metus causa* thus; "Reverting to the defense raised by first defendant [Plaintiff], it is clear that a contract may be vitiated by duress (**metus**), the *raison d'etre* of the rule apparently being that intimidation or improper pressure renders the consent of the party subjected to duress no true consent at all." *Arend and Another v Astra Furnishers (pty) ltd 1974 (1) SA 298 (C)*

7

**Maxim of law;** *Nemo debet rem suam factor aut defectu suo amittere.* No one should lose his property without his act or negligence. Co. Litt. 263

This enjoined Complaint, Motion (argument), by law, can only regard the personal attacks on John Lewis Mealer and family in regards to Plaintiffs' ability to pursue business objectives and gather growth funding for Mealer Companies LLC, and not per se for claims made by the company itself. Mealer Companies LLC must remain witness at this time.

There can be no confusion as to the purpose of the Plaintiff's website and clearly, the Defendant acted in concert to restrict Plaintiff's rights. Defendants' planned, committed and achieved the intended consequences resulting from their defamatory blackening remarks about Plaintiffs' person, business goals and thus crippled Plaintiffs' ability to maintain debt payments.

Plaintiff's website details without equivocation the reason for the websites existence on page 2 entitled, "WHAT WE ARE REALLY ABOUT" and URL second page link to: "http://mealercompanies.com/?page_id=2" as follows within the first sentence and paragraph:

> **"Mealer Companies LLC** is gathering funding to begin full scale production of our automobile and 220v full power source (combined as one). We have the vehicle, the patents, the key personnel and are now simply procuring the key ingredient…
> *The remainder of our investment money."*

## VI.    **DEFENDANTS' UNCLEAN HANDS, ANNOTATED EXHIBITS**

GM-GMAC did on June 9th, 2009 enter Plaintiff's professional business website URL http://mealercompanies.com, signed into website to Blog via organization name, "General Motors Corporation" (Exh G-3) Registered by "GMC-20" at "GMAC(fs)" Corporate Headquarters"(Exh H) as "MONEY01" and wrote grossly disparaging and via the World Wide Web, globally visible and RSS fed comments about JL Mealer and privately held company Mealer Companies LLC and later followed up with emails to interested parties referring to non-

8

public figure JL Mealer as a fraud. "It is apparent that under US corporate law, only gross

negligence suffices to find a director liable to compensate for damage she or he causes." Smith

v. Van Gorkom or the Trans Union case, 488 A.2d 858 (Supreme Court of Delaware, 1985).

*"Culpa Lata Dolo Equiparator"* Gross negligence is held to be equivalent to intentional wrong.

**A.    Annotated Exhibit G-3**

Document detailing Internet Protocol "IP" address confirmation by official agencies

located at: http://www.ipadress.com/whois/198.208.251.24 Defines Internet Protocol "IP"

address, 198.208.251.24 is applied to Defendants' employee agent, Kris Kordella aka

kris.j.kordella@gm.com identified and personally admitted as Blogger "MONEY01".

**B.    Annotated Exhibit G-1**

Document located at: http://www.ip-adress.com/whois/198.208.251.22

visitor identified under Internet Protocol "IP" address 198.208.251.22 which is applied to user

Christy Garwood of christy.garwood@gm.com who is appears to be a professional public

relations Blogger for Defendant GM-GMAC that was on Plaintiff's website in concert with Mr.

Kris J. Kordella up to the point Mr. Kordella left the libelous and blackening attacks on JL

Mealer on June 9th, 2009.

**C.    Annotated Exhibit G-1 NOTE:** Whois information lists "IP" 198.208.251.22, (#.23),

(#.24) assigned to Defendants' confirms Internet Protocol ("IP") owner Organization Name as

"General Motors Corporation", who's Corporate ID is known as "GMC-20" which is registered

to address: "200 Renaissance Center, Detroit Michigan 48265, US."

**D.    Annotated Exhibit H**

**One of many GMAC(fs) Corporate created Documents;** FDIC filed, SEC registered,

and also located at Defendants' website in their Corporate Documents, URL:

9

http://www.gmacfs.com/us/en/business/investing/demandnotes/Prospectus.html, was specifically

written by Defendants' entitled, **"GMAC Financial Services Prospectus for Demand Notes"**

which is available for download from their website on as of 3/17/2010. SEC, FTC and FDIC also

have registered copies available upon request, wherein the Defendants' clearly state in multiple

areas of the 24 page document that GMAC(fs) Headquarters and the "Principle Executive

Offices of GMAC"address as: <u>"GMAC LLC 200 Rennaissance Center Detroit, Michigan 48265"</u>

GMAC, GMACfs Headquarters as documented on GMAC website clearly identifies the

same address of the registered IP/Internet Service Provider "ISP" address above as belonging to

the Defendants', clearly in connection to GMAC and GMACfs provides prima facie evidence of

culpability and combined contributory gross negligence in the matters at hand.

**VII.**               **DEFENDANTS' DEFAMATORY ASSAULT**

**Defamation:** "A statement which causes harm to reputation".

A statement is defamatory if it "tends to injure the plaintiff's reputation and expose the
plaintiff to public hatred, contempt, ridicule, or degradation." <u>Phipps v. Clark Oil & Ref. Corp.,
408 N.W.2d 569, 573 (Minn. 1987)</u>. "When the defamatory meaning is not apparent on its face,
the plaintiff has the burden of pleading and proving such extrinsic facts." <u>Anderson v.
Kammeier, 262 N.W.2d 366, 371 (Minn. 1977)</u>. *"Actus non facit reum nisi sit rea,"* The acts is
not guilty unless the mind is also guilty

The comments below *"**highlighted, italicized in quotes**"*, and meanings "<u>underlined in

quotes</u>", were in their entirety, published by Defendants' on June 9[th], 2009 during the attack

emailed via RSS feed to many highly interested qualified investors, future customers,

engineering employees et al. who had signed up for automatic website updates from the privately

owned Mealer Companies LLC, investor information based website, "mealercompanies.com";

**1a.** (Merriam Webster Dictionary), ...*"**Mealer Automobiles? America's next major
automobile company??**"*

"<u>Question Marks and multiple usage of Question marks meaning: a: Something</u>

/ 0

unknown,unknowable, or uncertain **b:** someone (as an athlete or an automaker) whose condition, talent, or potential for success is in doubt."

**1b.** (Collins English Dictionary), *"...HAH!!!!!!!!!!!!!!!!!!!!!!!!"*...

" HAH abbreviation of HA meaning an exclamation denoting surprise, joy or grief. Both uttered and as written, it expresses as great variety of emotions, determined by the tine or the context.When repeated,ha,ha, it is an expression of laughter, satisfaction, or triumph, sometimes derisive
laughter; or sometimes it is equivalent to "Well, it is so." Ha-has, and articulate hootings of satirical rebuke. Carlysle

**1c.** (Stuart Jeffries, "The Joy of Exclamation Marks!" The Guardian, Apr. 29, 2009)

"There is surely a point after which exclamation marks no longer express friendliness. In this post-literal time, exclamation marks become signs of sarcasm as witty correspondents rebel against their overuse. Hence: 'I loved your last email! OMG did I LOVE it!!!!!!!' The point is they didn't. They were being IRONIC."

**1d.** *Use of multiple Exclamation Points with exclamation point defined as:* "as a symbol of factorial function, or (in logic) occurring with an existential quantifier"

**2.** (Cambridge Idiom Dictionary), *"...it's obvious you don't have one (a mind)..."*

[commonly referred to as *out of your mind*:]

"extremely stupid or mentally ill."

**3a.** (Meriam-Webster Dictionary), *"...self serving..."*

"Serving one's own interests often in disregard of the truth or the interests of others."

**3b.** (Merriam-Webster Dictionary), *"...pathetic..."*

"Pitifully inferior or adequate"

**3c.** (Merriam-Webster Dictionary), *"...MORON..."*

"1. a person affected with mild retardation.   2. a very stupid person."

*4.* (Merriam-Webster Dictionary), *"...CLOWN..."*

"2. rude ill-bred person.   3. A person who habitually jokes and plays the buffoon.

**5.** (Merriam Webster Dictionary), *"...real..."* used twice to explain that Mealer was not

"real"and Mealer Companies LLC was not connected to a "real" engineering firm, thus

11

inflect that MONEY01 was in fact real, creating a reliance on MONEY01 Blogger's

engineering skills as well as financial opinions in regards to JL Mealer and Mealer

Companies LLC.

> "1. Not artificial, fraudulent, or illusionary. 2. GENUINE. 3. Genuinely good or capable of success.

## VIII.    BLATANT INTENTIONS OF DEFENDANT, *MENS REA*

"MONEY01" is a term often used when teaching of principles of economics, business

investing, venture capital, stock market affairs and other finance related matters whereas,

MONEY01 by the very name portrays the premiere and foremost authority over the cognitive

and factual content is portrays. With "MONEY01" inferred as the leader of monetary matter,

Defendant seemed to imply that they were the foremost authority on financial matters of Mealer

Companies LLC to be detailed by and through following MONEY01 discussions of MEALER

AUTOMOBILES and JL MEALER himself. The term and moniker "MONEY01" as used by

GM-GMAC agent employees as the Blogger name during the intentional misrepresentation and

grossly negligent attack on MEALER represents to the reader that Defendants' opinion and

statements far exceed even the collegiate terminology for a prerequisite class usually followed

with "101" such as "English101" or by comparative, "Money101" as fraudulently claiming to be

the premium authority on investing matters.

This egregious misconduct is a complete breach under an implied duty of good faith by

Defendants' mortgage holder by and through acts of fraud and misrepresentation with intent to

destroy Plaintiffs' reputation and this debtor's ability to compete within a business that is in direct

competition to Defendants' corporate affiliate and co-Defendant who, in bankruptcy and

reformation of their new corporate identity have benefited from degrading this Plaintiff, and

collisional tortious interference of Plaintiff's business activities, preventing Plaintiffs' from

12

gaining "B-Round" growth funding, expansion of Mealer Companies LLC business is an

unconscionable breach of fiduciary duty resulting in both personal injury and lawfully repugnant

commercial disparagement under unfair business practices. Mealer Companies LLC is per se

registered as an alternative fuel automaker as of 09/19/2008, Arizona Corporation Commission

No. L-1477212-5, Internal Revenue Service Employer ID No. 26-3359384. The extreme duress

GM-GMAC exerts on Mealer's person, family and future business matters with the blackening of

Plaintiff's good name hinders Mealer from garnering support for funding second round

expansion of his automobile manufacturing enterprise and has defiled him from attaining high

level work related to automobile manufacturing industry.

    The intentions and results of contract corrupting actions by the Defendants speak for

themselves. *"Ex antecedentibus et consequentibus fit optima interpretatio,"* The best

interpretation is made from antecedents and consequents. 2 Co. Inst. 317. *"Culpa Lata Dolo*

*Aequiparatur"* Gross negligence is equal to fraud.

## IX.                    ADMISSION OF GUILT BY GM-GMAC

### *Defendants' Mea maxima culpa*

    This Instant Case provides multiple violations of century old laws regulating business

practices as professional conduct is concerned. This case proves the illegal anti-competitive

schemes that Defendants' have already admitted to when they offered a private half-hearted,

insolent apology to MEALER (Exh B-1), pleading in part due to the then current GM-GMAC

issues of looming bankruptcy and restructuring the employees and management were panicked

which is copied in part as:

> "... lose most of my pension, all medical benefits and on, and on. Basically a financial
> Armageddon for me and hundreds of my friends and family members that have relied on
> GM for the last 60 plus years.""..."However, the bottom line is I shouldn't have resorted
> to the"knucklehead" name calling in my blog and inferring your auto company isn't

13

legit..."

The private and disappointing apology that Defendants' issued from their employed agent is direct admission of guilt providing incontrovertible prima facie evidence, providing legal causation for the entirety of Plaintiff's Motion against Defendants' original claims which are counterclaimed herein by Plaintiff. Not only does Defendants' fraud vitiate the mortgage contract, but creates a basis for claim of damages for the intentional malicious attack which created the need for Plaintiff's bankruptcy and subsequent loan default. "Most of the disputes in the world arise from words." <u>Morgan v. Jones, Lofft 160, 176, 98 Eng. Rep. 587, 596 (K.B. 1773) (Murray, C.J.).</u>

Defendant's series of carefully articulated, defamatory libel 'per se' through a series of words and phrases which were Blogged by Defendant on Plaintiff's website on the World Wide Web and then compounded through direct email with interested parties impugning the validity of and thus creating public and private doubt of Plaintiff has by an unmistakably clever intent, destroyed prospective capital B-Growth funds to be used for business expansion and Plaintiff's economic growth and ability to cover mortgage payments. Defendant acted to fraudulently transfer and convey title of Plaintiff's real property by blatant tortious acts.

"Fraud vitiates the most solemn contracts, documents and even judgments," <u>*U.S. v. Throckmorton,* 98 U.S. 61.</u> Defendants' admission per se of their deceptive acts prove intentional malicious intent and fraud ab initio; *"Qui adimit medium, dirimit finem."* **He who takes away the means, destroys the end.** Co. Litt. 161. Defendants' had unequivocally intended and expected the Plaintiff to fail by and through their fraudulent actions.

Therefore the Defendants' entire contractual lien claimed on Plaintiff's home fails on it's face to satisfy terms, under Slander of Title (Material Misrepresentation), Breach of Contract

*14*

creating an issue of Impossibility of Performance through Defendants' fraudulent scheme to

collect and prevent mortgage payments by predatory loan servicing and egregious general fraud.

X.  **COMPENSATORY DAMAGES**

*Respondeat superior, Actus reus*

Defendants expected and pursued the consequences of their defamatory blackening

remarks of Plaintiff and Plaintiff's business and Plaintiff's ability to maintain mortgage payments

prior to the publishing of comments which destroyed Plaintiff's reputation and hindered the

business goals of, by and sought by this Plaintiff. Plaintiff's website clearly details the reason for

the websites existence on page 2 entitled, "WHAT WE ARE REALLY ABOUT" and URL link

"http://mealercompanies.com/?page_id=2" as follows in the first sentence and paragraph:

> "**Mealer Companies LLC** is gathering funding to begin full scale production of our
> automobile and 220v full power source (combined as one). We have the vehicle, the
> patents, the key personnel and are now simply procuring the key ingredient... *The
> remainder of our investment money.*"

Plaintiff's damages are not limited to the actual loss of pending contracts and prospective

advantage of B-Growth Funding from multiple qualified investors who were completing their

due diligence investigations which abruptly ended when Defendant publicly humiliated the

Plaintiff which are outlined on Page 8 in plaintiff's funding request documents as distributed to

qualified investors, Venture Capital firms, Banks and other lending outlets which states very

clearly Plaintiff's intention's for funding the growth of Mealer Companies LLC (emphasis and

font existing) entitled, "MEALER COMPANIES, FUNDING REQUEST SUMMARY,

CONFIDENTIAL DISCLOSURE, J.L. MEALER, Q2 JUNE 2009":

> "  **Mealer seeks to raise start-up $95,000,000** in VC capital and lease-back agreements over the
> first three years for Phase I, not taking into account pre-and post-production sales. After two
> years, Mealer will require another $105,000,000 of either private capital or loans for Phase II
> secondary manufacturing purposes. The company will have one major manufacturing facility in
> either VA or TN and electronics research and developmental center and manufacturing center
> either in the same state or elsewhere. At least four other ideal manufacturing locations are

*15*

under review and remain highly attractive. The cost of a fund-to-suit conversion of existing facilities proves to be a fast, viable and cost-effective alternative to new site construction. And, since there are a growing number of such facilities coming to market, Mealer is sure to find the right facilities to meet our requirements. "

### XI.    MEMORANDUM AND DEFENDANTS' VIOLATIONS OF LAW, ACTUS REAS

*Res ipsa loguitur "the thing speaks for itself."*

Defendant having initiated their libelous attack and being responsible for Defamation per se against this Plaintiff, by and through their blackening attack, did inflict and intentionally commit gross violations of following laws against the Plaintiff and Plaintiff's expansion of trade.

**COUNT ONE.  Intentional Interference With Prospective Economic Advantage**

The elements of the tort of are:

**1.  an economic relationship between [the plaintiff and some third person] containing the probability of future economic benefit to the [plaintiff],**

JL Mealer, while discussing funding for "B-Round Business Expansion" of the Mealer Automobile as an alternative fuel powered vehicle manufacturing company known as Mealer Companies LLC, with multiple high level funding groups, private individuals, engineers, supply companies, fabrication companies, et al, was unfairly attacked and irreparably blackened, libeled, other wise made to lose these funding accounts by Defendants who later apologized for (admitted) the events.

**2.  knowledge by the defendant of the existence of the relationship,**

Defendants conspired with multiple agents who entered Mealer's investor oriented website, signing up as Blogger named "MONEY01" then proceeded to destroy and blacken Mealer's reputation, name, company value and over-all funding viability of Mealer Automobiles, projects, goodwill and business in whole with crudes remarks while also claiming to be a *"...real..."* engineer of *"...real automobiles..."* and then

16

ending his grossly disparaging tirade with *"...I wish you All the worst the world can give*

*a self serving pathetic MORON."*

3.  **intentional acts on the part of the defendant designed to disrupt the relationship,**

Defendants signing on as MONEY01 provides acknowledgement that "B-Round

Expansion Capital" was the objective of Mealer's website, and the defamatory attack

proves malicious intent in conjunction with the admission/apology.

4.  **actual disruption of the relationship, [and] (5) damages to the plaintiff**
**proximately caused by the acts of the defendant.' (Buckaloo v. Johnson (1975) 14**
**Cal.3d 815, 827.)**

Mealer has lost all pending business and pending contractual "B-Round Expansion

Capital" business and personal relationships due to the June 9th , 2009 attack originating

from within Defendants' offices.

## COUNT TWO. __DEFAMATION and other ENCROACHMENTS__

By and through corporate Public Relations agents, supply side and engineering

employees acting in what appears to be combined effort may have been used to unfairly prevent

Plaintiff from maintaining mortgage payments and livelihood which ultimately resulted in

Mealer going bankrupt and declaring Chapter 7 BK in Oct 2009 once the "pending-due-

diligence" of investors fell through per the intentional and subsequent published personal,

professional and character attacks against Mealer from the once successful, larger and more

experienced automaker (GM). There is no legitimate or lawfully protected reason for Defendants

to venture into the privacy of Plaintiff's public domain in order intentionally defile his name and

future to create what amounts to a clear and present danger against Plaintiff's ability and right to

life, liberty and pursuit of property, compounded by contractual obligation such as a mortgage

debt and the obligate (Plaintiff) Constitutionally protected rights.

17

Supreme Court Justice Oliver Wendell Holmes, Jr stated concisely in what has become a landmark ruling related to the First Amendment and criminal, seditious libel, <u>"the words are used in such circumstances and of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent..."</u> <u>"...no court could regard them as protected by any constitutional right..."</u> Albeit, GM-GMAC has not committed criminal and seditious libel against the United States, but the very *actus reus* in controlling a private man's ability to live freely and conduct a competitive-business simply due to corporate fear of losing revenue is unjust enrichment, tortious and fraudulent on it's face within contract between parties.

The following counts relate to the attacks as defined and explained within this document.

**COUNT TWO-1.  <u>Title 15 USC § 1. Trusts, etc., in restraint of trade illegal; penalty</u>**

"Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal...."

**COUNT TWO-2.  <u>Title 15 USC § 2. Monopolizing trade a felony; penalty</u>**

"Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations..."

**COUNT TWO-3.  <u>Title 15 USC § 5. Bringing in additional parties</u>**

"Whenever it shall appear to the court... ...that the ends of justice require that other parties should be brought before the court, the court may cause them to be summoned... "

**COUNT TWO-4.  <u>Title 15 USC, CH 22, SUB III, §1125(a)(1)(B)</u>**

"(1) Any person who, on or in connection with any goods or services... uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(B) ... or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

*18*

1    The gross violations noted above are merely outlines of the crimes committed upon this

2    Plaintiff and should not be considered the limits of damages. Plaintiff reserves the right to amend

3    these claims as the full brunt of this crippling attack settle in.

4    **XII.**                              **PLAINTIFF'S ARGUMENT**

5        The following laws are in favor of the Plaintiff in regards to protection under the law for

6    violations by the Defendants' against mortgage contract obligations revolving around Plaintiff's

7    Real Property at 6333 Gardenia Lane, Show Low, Arizona, which is the main factor of

8    Defendants' actions regarding their desire to Lift the Automatic Stay during Plaintiff's

9    bankruptcy, AND the reason for Defendants' contractual lien against said Real Property.

10

11   **A.    Real Estate Settlement Procedures Act of 1971 ("RESPA")**
             **[Codified to 12 USC 2616]**

12   "This Act does not annul, alter or affect, or except any person subject to the provisions of
13   this Act from complying with, the laws of any State with respect to settlement
     practices..."

14

15   **B.    Real Estate Settlement Procedures Act of 1974 ("RESPA")**
             **[Codified to 12 U.S.C. 2601 note]**

16   "To further the national housing goal of encouraging homeownership by regulating
17   certain lending practices and closing settlement procedures in federally related mortgage
     transactions to the end that unnecessary costs and difficulties of purchasing are
18   minimized, and for other purposes."

19   **C.    Section 19**

20       "(b) No provision of this Act or the laws of any State imposing any liability shall
21   apply to any act done or omitted in good faith in conformity with any rule,
     regulation, or interpretation thereof..."

22       Contract law is very clear and concise in regards to fraudulent activities by either

23   contractual obligate. There is nothing more blatantly unlawful than the tortious violations noted

24   herein which created difficulty in settlement or the mortgage debt, explicitly Defendants'

25                                              19

flagrant, abusive violations and oppressive bad faith conduct upon the Plaintiff which resulted in

the creation of numerous incurable deficiencies that by all standards of law have reduced their

claim to Lift The Automatic Stay as completely nugatory.

**D.** **FDIC  LAW REGULATIONS AND ACTS** *6500 Consumer Protection,*
**Title VIII-DEBT COLLECTION PRACTICES**

**TITLE 15 USC 1692e,f**

### § 806 HARRASSMENT OR ABUSE

A debt collector may not engage in any conduct the natural consequences of
which is to harass, oppress, or abuse any person in connection with the collection
of a debt. Without limiting the general application of the foregoing, the following
conduct is a violation of this section

(1)    The use or threat of use of violence or other criminal means to
harm the physical person, reputation, or property of any person.

### § 807 FALSE OR MISLEADING RESPRESENTATIONS

A debt collector my not use any false, deceptive, or misleading representation or
means in connection with the collection of any debt. Without limiting the general
application of the foregoing, the following conducts is a violation of this section:

(8)    Communicating or threatening to communicate to any person credit
information which is known or which should be known to be false,
including the failure to communicate that a disputed debt is disputed.

(10)    The use of any false representation or deceptive means to collect or
attempt to collect any debt or to obtain information concerning a consumer.

### (f)§ 808 UNFAIR PRACTICES

A debt collector may not use unfair or unconscionable means to collect or attempt
to collect any debt. Without limiting the general application of the foregoing, the
following conduct is a violation of this section
(6)   Taking or threatening to take nonjudicial action to effect
dispossession or settlement of property if--
(A)  There is no right to possession of the property claimed as
collateral through an enforceable security interest;
(B)  there is no present intention to take possession of the property;
or the property is exempt by law from such dispossession or
disablement.

20

**E.    Title 11 USC, § 510(c) Bank Reform Act of 1978**

        (c)    Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may--

(1)    under principles of equitable subordination 15, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2)    order that any lien securing such a subordinated claim be transferred to the estate.

**F.    Title 11 USC 362(b)(20) under subsection (a),** of any act to enforce any lien against or security interest in real property following entry of the order under subsection (d)(4) as to such real property in any prior case under this title, for a period of 2 years after the date of the entry of such an order, except that the debtor, in a subsequent case under this title, may move for relief from such order based upon changed circumstances or for other good cause shown, after notice and a hearing;

**G.    Pursuant 11 USC § 362(d)(1)** of the Bankruptcy Code, the automatic stay may only be lifted to permit a litigation to go forward in another court upon an initial showing of "cause" by the party seeking relief from the stay. <u>Sonnax Indus., Inc. v. Tri Component Prods. Corp.</u> (In re Sonnax Indus., Inc), 907 F. 2d 1280, 1285 (2d Cir. 1990); <u>In re New York Med Grp., P.C.</u>, 265 B.R. 408, 413 (Bankr. S.D.N.Y.2001).1

**H.    Title 18 USC § 1346. Definition of "scheme or artifice to defraud"**
For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services.

**I.    Title 18 USC § 1348. Securities fraud**

Whoever knowingly executes, or attempts to execute, a scheme or artifice—
(1) to defraud any person in connection with any security of an issuer with a class of securities registered under section 12 of the Securities Exchange Act of 1934 (15 U.S.C. 78l) or that is required to file reports under section 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78o (d)); or

Title 18 is has been noted to detail the fraud by actual code that will negate prior claims made by this Plaintiff against contract violations negating this instant mortgage on it's face.

Defendants' are registered as a banking institution with the FDIC and SEC and required to file

and report mortgages which have become reportable securities. Defendants' deal in Securities.

XIII.        **ENJOINED MOTION FOR EVIDENTIARY HEARING**

**CONCERNING GROSS CREDITOR MISCONDUCT**

For the reasons noted herein this enjoined document and by consenting rule for joined

motion under 12 F.R.Civ.P.(g)(1), and presenting this instant case under extraordinary, exigent

circumstances, Plaintiff Prays this court accept this Motion For Evidentiary Hearing Concerning

Gross Creditor Misconduct as *enjoined* within and without this Adversary Complaint for the

purpose of hearing the merits and accepting evidence of this case for final ruling due to an

emergency situation creating an unfair advantage for Defendant during this legal engagement

between parties, time is of the essence. Pursuant to common sense reasoning and a Plaintiff's

bona fide effort to allow the mortgage holder Defendant a chance to remedy the gregarious harm

caused and unaltered thus ongoing, by their agent through their corporately owned "ISP," this

Plaintiff has extended his hand to resolve this situation from day one immediately upon the

blackening, denigrating defamation which occurred on 6/9/09 and again from the moment an

actual disruption of this private businessman to investor relations was realized 30, 60, 90, 120

days later culminating in this bankruptcy, but Creditor has ignored this Debtor. Co-Defendant

General Motors Corp during to their corporate bail-out and renaming responded through special

Public Relations agent Christine Stein who contacted Plaintiff to resolve the situation and then

backed out of the problem solving when crimes were validated. Plaintiff relies on this honorable

court to push these proceedings into light, validate evidence, substantiate the breach of contract

and compel both parties to court on these matters. A complete stay of proceedings for Plaintiff's

22

bankruptcy and Defendants' future Motions in regards to foreclosure on Plaintiff's mortgage is requested and Plaintiff Prays, court accepts the applicable laws noted herein to back this request.

## XIV.                    CONCLUSION

Plaintiff hereby Prays this court rule in favor of Plaintiff requiring a case review adjudicated on the merits and evidence herein and prepare for an evidentiary hearing, and allow for discovery and disclosure proceedings for incidents and claims detailed within this enjoined complaint/motion and to deny Defendants' (Originally listed as "Movants") MOTION TO LIFT AUTOMATIC STAY for reasons described herein, AND to proceed with providing a legal forum whereby this case may be negotiated and applied pursuant to applicable laws and Plaintiff's Motion for Summary Judgment *subsequi* since Defendant's are entitled to a defense, AND/OR to grant immediate equitable relief in the form of Plaintiff's mortgage converted to a dischargeable debt, AND for just cause to eliminate the lien via permanent discharge injunction, and/or deny, denounce and remove Defendants' interest in Real Property known as 6333 Gardenia Lane Show Low, Arizona (85901) for reasons and legal authority noted herein, AND consequential, compensatory and punitive damages for defamation and libelous offenses per se by Defendant causing pain and suffering on Plaintiff and Plaintiff's family as this court deem proper, AND to Rule in favor of the Plaintiff in regards to allegations of Title 15 USC § 1 & 2; for restraint of trade, attempt to monopolize, combination, conspiracy, for violations against Plaintiff in accordance to Title 15 USC, CH 22, SUB III, §1125(a)(1)(B) false or misleading description of fact, or false or misleading representation of fact in relation to Plaintiff's name and business, for damages incurred by Defendants placing Plaintiff in false light, for fraudulent inducement, for fraudulent obstruction, for combined contributory negligence, for impairment of earning capacity, for intentional duress, for trespass with intent to commit harm, for trespass and

23

assault with intent to violate contractual obligations, for Breach of Contract, for Breach of

Fiduciary Duty, for Breach of good will, for malfeasance creditor misconduct with criminal

intent, for Intentional Interference With Plaintiff's Prospective Advantage to the fullest extent of

the law, AND to provide the maximum in monetary damages as detailed herein trebled where

applicable, plus fines AND to prohibit Defendants' from further blackening Plaintiff's name or

business, AND a written legitimate public apology from all Defendants'.

"The requirements for the issuance of a permanent injunction are (1) the likelihood of

substantial and immediate irreparable injury; and (2) the inadequacy of remedies at law." *Dream*

*Palace v. County of Maricopa*, 384 F.3d 990, 1010 (9th Cir. 2004). "In issuing an injunction, the

Court must balance the equities between the parties and give due regard to the public interest."

*High Sierra Hikers*, 390 F.3d at 642. District courts possess "broad discretionary power" to

fashion equitable relief, *see Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973).

Plaintiff moving for this affirmative equitable remedy withing this bankruptcy due to

breach of performance claims against Defendants' under 11 USC § 101(5)(B).

**XV.**        **AFFIDAVIT VERFICATION BY SIGNATURE**

I, the Plaintiff, John Lewis Mealer, hereby claim the allegations and other facts regarding

this bankruptcy issue of this case and all related cause of issues and evidence or annotated

evidence as detailed by myself to be true to the best of my knowledge, and do hereby certify this

statement with my signature below:

DATED: 3/30/2010        _____

                                              John Lewis Mealer

24

FORM 104 (10/06)

2:10-ap-503

| ADVERSARY PROCEEDING COVER SHEET (Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER (Court Use Only) |
|---|---|

**PLAINTIFF(S)**
John Lewis Mezler , wife , 2 sons

**DEFENDANT(S)** GMAC MORTGAGE LLC, GMACFS, GENERAL MOTORS CORP, GENERAL MOTORS CO., MOTORS LIQUIDATION CO., RESIDENTIAL CAPITAL LLC, KRIS J. BORDELLA, CHRISTY GARWOOD, et al.

**ATTORNEY(S)** (Firm Name, Address, and Telephone No.)
In Propir Personis ( spec. appearance)
6333 Gardenia lane
Show Low, Ariz 85901

**ATTORNEY(S)** (If Known)
GMAC → PITE · DUNCAN , LLP
4375   Jutland , St 200
PO Box 17933.
San Diego, Ca   92177-0933

**PARTY** (Check One Box Only)
[✓] Debtor      [ ] U.S. Trustee/Bankruptcy Admin
[ ] Creditor    [ ] Trustee    [ ] Other

**PARTY** (Check One Box Only)
[ ] Debtor      [ ] U.S. Trustee/Bankruptcy Admin
[✓] Creditor    [ ] Trustee    [ ] Other

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

**NATURE OF SUIT**
(Number up to five (5) boxes starting with the lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)
*Note: Only a complaint including an objection to discharge under 11 U.S.C. § 727 will defer the clerk's entry of the debtor's discharge in bankruptcy. A complaint to determine the dischargeability of a debt under 11 U.S.C. § 523 does not affect the entry of a discharge with respect to other debts.*

**FRBP 7001(1) – Recovery of Money/Property**
[✓] 11 - Recovery of money/property - § 542 turnover of property
[✓] 12 - Recovery of money/property - § 547 preference
[✓] 13 - Recovery of money/property - § 548 fraudulent transfer
[✓] 14 - Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
[✓] 21 - Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
[ ] 31 - Approval of sale of property of estate and of a co-owner - § 363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
[ ] 41 - Objection/revocation of discharge - § 727(c), (d), (e)

**FRBP 7001(5) – Revocation of Confirmation**
[ ] 51 - Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
[ ] 66 - Dischargeability - § 523(a)(1), (14), (14A) priority tax claims
[ ] 62 - Dischargeability - § 523(a)(2), flase pretenses, false representation, actual fraud
[ ] 67 - Dischargeability - § 523(a)(4), fraud as fiduciary, embezzlement, larceny
                continued next column

**FRBP 7001(6) – Dischargeability (continued)**
[ ] 61 - Dischargeability - § 523(a)(5), domestic support
[✓] 68 - Dischargeability - § 523(a)(6), willful and malicious injury
[ ] 63 - Dischargeability - § 523(a)(8), student loan
[ ] 64 - Dischargeability - § 523(a)(15), divorce/separate property settlement—not decree
[ ] 65 - Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
[✓] 71 - Injunctive relief - reinstatement of stay
[✓] 72 - Injunctive relief - other

**FRBP 7001(8) – Subordination of Claim or Interest**
[ ] 81 - Subordination of claim or interest

**FRBP 7001(9) – Declaratory Judgment**
[ ] 91 - Declaratory judgment

**FRBP 7001(10) – Determination of Removed Action**
[ ] 01 - Determination of removed claim or cause

**Other**
[ ] SS-SIPA Case - 15 U.S.C. §§ 78aaa et seq.
[ ] 02 - Other (e.g., other actions that would have been brought in state court if unrelated to bankruptcy case)

[ ] Check if this case involves a substantive issue of state law
[ ] Check if a jury trial is demanded in complaint.

[ ] Check if this is asserted to be a class action under FRCP 23
Demand $ dimples + $2conn + Multiple + apology

Other Relief Sought   Please   documents

03/30/2010

*(received stamp, handwritten/rotated:)* RECEIVED 2010 MAR 30 AM 10:47 CLERK BANKRUPTCY COURT OF ARIZONA

Form 104 (10/06), Page 2

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>*GMAC* | | BANKRUPTCY CASE NO.<br>*09-24899* |
| DISTRICT IN WHICH CASE IS PENDING<br>*Arizona* | DIVISIONAL OFFICE<br>*Phoenix* | NAME OF JUDGE<br>*Hon. Baum* |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISIONAL OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>*3/30/2010* | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>*(John Lewis Mesler)* | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 104, the Adversary Proceeding Cover Sheet, if it is required by the court. In some courts, the cover sheet is not required when the adversary proceeding is filed electronically through the court's Case Management/Electronic Case Files (CM/ECF) system. (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Parties.** Give the names of the parties to the adversary proceeding exactly as they appear on the complaint. Give the names and addresses of the attorneys if known.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not presented by an attorney, the plaintiff must sign.

# EXHIBIT "H"

1 | Thomas M. Klein (010954)
tom.klein@bowmanandbrooke.com
2 | C. Megan Fischer (019828)
megan.fischer@bowmanandbrooke.com
3 | **BOWMAN AND BROOKE LLP**
Suite 1600, Phoenix Plaza
4 | 2901 North Central Avenue
Phoenix, Arizona 85012-2761
5 | (602) 643-2300
(602) 248-0947 – Fax
6 |
7 | Joseph H. Smolinsky
Brianna N. Benfield
**WEIL, GOTSHAL & MANGES LLP**
8 | 767 Fifth Avenue
New York, New York 10153
9 | (212) 310-8000
(212) 310-8117 – Fax
10 |
11 | Attorneys for Motors Liquidation Company (f/k/a General Motors Corporation)

12 | **IN THE UNITED STATES BANKRUPTCY COURT**

13 | **FOR THE DISTRICT OF ARIZONA**

14 | In re:                                                      ) Case No. 2:09-BK-24899-RTB

15 | JOHN LEWIS MEALER,                              ) Chapter 7

16 |         Debtor,                                              )

17 |                                                                 )

18 |                                                                 )  Adversary No. 2:10-AP-00503-RTB

19 | JOHN LEWIS MEALER,                              )
                                                                      ) **MOTION OF MOTORS LIQUIDATION**
20 |         Plaintiff,                                           ) **COMPANY (F/K/A GENERAL MOTORS**
                                                                      ) **CORPORATION) TO DISMISS**
21 | v.                                                             ) **ADVERSARY COMPLAINT, AND**
                                                                      ) **MEMORANDUM OF POINTS AND**
22 | GMAC Mortgage LLC, GMACfs,                 ) **AUTHORITIES**
GENERAL MOTORS CORP., GENERAL        )
23 | MOTORS CO., MOTORS LIQUIDATION       )
CO., RESIDENTIAL CAPITAL LLC,              )
24 | KRIS J. KORDELLA, CHRISTY                    )
GARWOOD, et al.,                                      )
25 |                                                                 )
        Defendants.                                        )
26 |

27 |         This is a motion to dismiss an adversary complaint filed by the Debtor, John Lewis

28 | Mealer, on March 30, 2010. First, to the extent the adversary complaint seeks any

1   damages as to Motors Liquidation Company ("MLC") (identified in the adversary complaint

2   as "Motors Liquidation Co."), it is void for violating the automatic stay in place as to MLC

3   as a result of its chapter 11 filing on June 1, 2009 in the Bankruptcy Court for the Southern

4   District of New York.  Second, Mr. Mealer lacks standing to pursue an action on behalf of

5   the estate in this chapter 7 case where the Trustee has not abandoned his exclusive right

6   to proceed with this lawsuit. Third, on its face, the adversary complaint fails to state a claim

7   upon which relief could be granted against the moving parties and, thus, should be

8   dismissed as a matter of law pursuant to Rule 12(b)(6) of the Federal Rules of Civil

9   Procedure.

10          This motion is made on behalf of General Motors Corporation, n/k/a Motors

11   Liquidation Company ("MLC") (identified in the adversary complaint as "General Motors

12   Corp." and "Motors Liquidation Co.").

13          This motion is supported by the accompanying Memorandum of Points and

14   Authorities and all pleadings and papers of record in this matter.

15          Dated this *29th* day of *April*, 2010.

16                                                        BOWMAN AND BROOKE LLP

17

18                                                        By: */s/ C. Megan Fischer*
                                                              Thomas M. Klein
                                                              C. Megan Fischer
19

20                                                        WEIL, GOTSHAL & MANGES LLP

21                                                        Joseph H. Smolinsky
                                                         Brianna N. Benfield
22                                                        Attorneys for Motors Liquidation Company
                                                         (f/k/a General Motors Corporation)

23

24

25

26

27

28

1 | **MEMORANDUM OF POINTS AND AUTHORITIES**

2 | I.   **FACTUAL SUMMARY**

3 | On June 1, 2009, Defendant General Motors Corporation (n/k/a Motors Liquidation

4 | Company) ("MLC") commenced a voluntary case under chapter 11 of title 11 of the United

5 | States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of

6 | New York. The MLC bankruptcy case has been assigned case number 09-50026 (REG). On

7 | July 10, 2009, General Motors Corporation consummated the sale of substantially all of its

8 | assets to NGMCO, Inc. (n/k/a General Motors, LLC), a United States Treasury-sponsored

9 | purchaser, pursuant to that certain Amended and Restated Master Sale and Purchase

10 | Agreement ("MSPA"). Simultaneous with closing on the MSPA, General Motors Corporation

11 | changed its name to Motors Liquidation Company.

12 | Although the allegations in the instant adversary complaint are somewhat unclear,

13 | they may be summarized as follows: Sometime after the commencement of MLC's chapter

14 | 11 case, the debtor in this matter, John Lewis Mealer ("Mr. Mealer") commented about

15 | General Motors Corporation's bankruptcy filing on some sort of blog sponsored or maintained

16 | by the *Automotive News* magazine. It appears that Mr. Kris J. Kordella ("Mr. Kordella"), an

17 | engineer employed by General Motors Corporation at that time, happened to see Mr.

18 | Mealer's comments. Upon seeing Mr. Mealer's comments, Mr. Kordella made his own

19 | observations in response to Mr. Mealer's comments. Mr. Mealer claims that Mr. Kordella's

20 | comments were tortious, and alleges that they give rise to a variety of claims stated in the

21 | adversary proceeding. As discussed further below, none of those allegations, however, state

22 | claims for relief that are plausible on their face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

23 | 556-7, 127 S.Ct. 1955, 167 L.Ed. 2d 929 (2007) (complaint must state a claim for relief that is

24 | "plausible on its face").

25 | II.   **APPLICABLE LAW**

26 | A.   **The Adversary Complaint is Void for Violating the Automatic Stay**

27 | To the extent Mr. Mealer seeks damages from MLC, this adversary

28 | proceeding should be dismissed as to MLC for violating the automatic stay in place as a

1   result of MLC's bankruptcy. Specifically, 11 U.S.C. section 362(a)(3) prohibits "any act to

2   obtain possession of property of the estate or of property from the estate or to exercise

3   control over property of the estate." When an entity files a bankruptcy petition, the

4   automatic stay is effective immediately and any proceedings filed after the stay takes effect

5   are void. E. Refractories Co. Inc. v. Forty-Eight Insulations Inc., 157 F.3d 169, 172 (2d Cir.

6   1998) (citing Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 527 (2d Cir. 1994); 48th

7   St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.), 835 F.2d

8   427, 431 (2d Cir. 1987)); Hearst Magazines v. Geller, 2009 U.S. Dist. LEXIS 30481, at *3

9   (S.D.N.Y. Mar. 24, 2009). "Moreover, since the bankruptcy stay is automatic, '[t]he action

10   is void even where the acting party had no actual notice of the stay.'" Id. (quoting Dalton v.

11   New Commodore Cruise Lines Ltd., 2004 U.S. Dist. LEXIS 2590, at *2 (S.D.N.Y. Feb. 24,

12   2004). "Contempt proceedings are the proper means of compensation and punishment for

13   willful violations of the automatic stay." Maritime Asbestosis Legal Clinic v. LTV Steel Co.

14   (In re Chateaugay Corp.), 920 F.2d 183, 186-87 (2d Cir. 1990); see also Fidelity Mortgage

15   Investors, 550 F.2d at 51, 57 (Bankruptcy Act case allowing imposition of costs, including

16   reasonable attorney's fees under civil contempt powers for acts taken with "knowledge" of

17   automatic stay and "deliberate[]" disregard of bankruptcy rules regarding requirements for

18   relief), cert. denied, 429 U.S. 1093 (1977); see also Johns-Manville Sales Corp., v. Doan

19   (In re Johns-Manville Corp.), 26 B.R. 919, 922 (Bankr. S.D.N.Y. 1983) (finding respondent

20   who sought to continue judicial proceedings against debtor after debtor filed its petition for

21   bankruptcy in contempt because respondent "clearly recognized the intended prohibitory

22   effect of the automatic stay . . . and nonetheless [] proceed[ed] in willful and flagrant

23   disregard of the[] stay orders")).

24           By filing the adversary proceeding seeking damages from MLC, Mr. Mealer

25   violated the automatic stay. Mr. Mealer was aware of MLC's bankruptcy, yet proceeded

26   with an action seeking damages from MLC outside of MLC's chapter 11 case. Such

27   conduct constitutes a willful violation of the automatic stay for which Mr. Mealer could be

28   sanctioned and held in contempt of court. Accordingly, MLC respectfully requests that this

1  Court declare Mr. Mealer's adversary proceeding void for violating the automatic stay and

2  dismiss the adversary proceeding without prejudice to Mr. Mealer's right to file a claim, if

3  any, in MLC's bankruptcy case in the Southern District of New York.

4          **B.**    **Mr. Mealer Lacks Standing to Bring the Instant Adversary Proceeding**

5          Mr. Mealer has no standing to bring the instant adversary proceeding

6  because his standing was transferred to an appointed trustee when he filed for chapter 7

7  bankruptcy. The Bankruptcy Code establishes that the trustee is the "representative of the

8  estate" and thus "has the capacity to sue and be sued." 11 U.S.C. § 323. In Estate of

9  Spirtos v. One San Bernardino County Super. Ct., the Ninth Circuit held that "11 U.S.C. §

10  323 vests the bankruptcy trustee with the exclusive right to sue on behalf of the bankruptcy

11  estate." 443 F.3d 1172, 1174 (9th Cir.2006) (finding that a creditor of a bankruptcy estate

12  does not have standing to file a complaint on behalf of the estate unless permission from

13  the trustee is obtained) (emphasis added). Additionally, the court in In re Eisen found that

14  a chapter 7 debtor had no standing to sue because when a chapter 7 trustee was

15  appointed, he was vested with all of the debtor's causes of action. 31 F.3d 1447, 1451 n. 2

16  (9th Cir.1994) (finding that "as trustee, Moneymaker is vested with Eisen's [the debtor's]

17  causes of action, rendering Eisen with no standing to appeal").

18          Only if a trustee abandons a claim does a debtor regain standing to bring that

19  claim. Catalano v. Comm'r of Internal Revenue, 279 F.3d 682, 685 (9th Cir.2002). Proper

20  abandonment requires that the trustee give all creditors notice of his intent to abandon a

21  claim. Specifically, 11 U.S.C. section 554(a) states, "[a]fter notice and a hearing, the

22  trustee may abandon any property of the estate that is burdensome to the estate or that is

23  of inconsequential value and benefit to the estate." 11 U.S.C. § 554(a). Fed. R. Bankr.P.

24  6007 implements § 554 by adding, "the trustee ... shall give notice of a proposed

25  abandonment or disposition of property to ... all creditors ..." Fed. R. Bankr.P. 6007 (2006-

26  2007). The Ninth Circuit has therefore found that "there is no abandonment without notice

27  to creditors." Sierra Switchboard Co. v. Westinghouse Elec. Corp., 789 F.2d 705, 710 (9th

28  Cir.1986) (holding that trustee had not abandoned an emotional distress claim to the

1    debtor because "[n]othing in the record indicates that creditors were notified of the

2    trustee's intent to abandon ...").

3       Mr. Mealer alleges that the incident underlying the instant adversary

4    proceeding occurred on June 9, 2009, prior to the commencement of Mr. Mealer's chapter

5    7 bankruptcy case. Accordingly, the cause of action is property of the chapter 7 estate.

6    Indeed, this lawsuit is noted at item 35 of Mr. Mealer's Amended Schedule B, listing

7    personal property of the estate. [Docket No. 23]. There is no record in this chapter 7 case

8    that the trustee has provided any notice of its intent to abandon the instant cause of action.

9    Accordingly, the trustee retains the exclusive right to pursue this action on behalf of the

10   estate and this adversary proceeding should be dismissed due to Mr. Mealer's lack of

11   standing to sue. Moreover, If the trustee did abandon this action, then it is not estate

12   property and Mr. Mealer cannot invoke the Bankruptcy Court's jurisdiction over his lawsuit.

13   See, In re Conway, 1994 WL 617253, at *2 (Bankr. E.D. Cal 1994) ("The law is clear that

14   once property leaves the bankruptcy estate, the court loses jurisdiction over that

15   property.") (citing, In re Hall's Motor Transport Co., 889 F.2d 520, 523 (3rd Cir.1989);

16   Matter of Xonics, Inc., 813 F.2d 127, 131 (7th Cir.1987).

17   **C.    The Adversary Complaint Fails to State a Claim Upon Which Relief Can**

18   **be Granted**

19      In considering a Motion to Dismiss under Federal Rule of Civil Procedure

20   12(b)(6), the Court should accept the plaintiff's "factual allegations" as true, drawing all

21   reasonable inferences in Mr. Mealer's favor. Anderson v. Clow, 89 F.3d 1399, 1403 (9th Cir.

22   1996). Conclusory allegations and legal conclusions, however, should be disregarded.

23   Ashcroft v. Iqbal, 556 U.S. ___, 129 S.Ct. 1937, 173 L.Ed. 2d 868, 884 (2009). Thus, while

24   for purposes of this motion, "well pleaded factual allegations" are accepted as alleged, "bald

25   assertions, subjective characterizations, and legal conclusions" should be disregarded.

26   Moore's Federal Practice (3d Ed.) § 12.34[1][b] at p. 12-81 (2010).

27      The Court in Iqbal created a road map to aid courts in determining when a

28   litigant has sufficiently stated a claim. The first step in the analysis is to identify any

1   conclusory pleadings. Id. at 1950. Pleadings that are factually or legally conclusory are

2   not entitled to a presumption of truth and must be supported by well-pled factual

3   allegations. Id. "Threadbare recitals of the elements of a claim, supported by mere

4   conclusory statements, do not suffice." Id. at 1949 (citing Twombly, 550 U.S. at 555).

5   Where a pleading contains well-pled factual allegations, the second step in the analysis is

6   to "assume their veracity and determine whether they plausibly give rise to an entitlement

7   to relief." Id. at 1950. "A claim has facial plausibility when the plaintiff pleads factual

8   content that allows the court to draw the reasonable inference that the defendant is liable

9   for the misconduct alleged." Id. at 1949. The Court went on to state that the standard for

10  plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer

11  possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556).

12          Applying this test to the facts in Iqbal, the Court determined that plaintiff had

13  not "nudged his claims of invidious discrimination across the line from conceivable to

14  plausible." Id. at 1950–51. The Court found that formulaic recitation of the elements of a

15  constitutional discrimination claim did not trigger an presumption of truth. Id. at 1951. For

16  instance, the Court determined that the following statements were conclusory: "Ashcroft

17  was the 'principal architect'" and that "petitioners 'knew of, condoned, and willfully and

18  maliciously agreed to subject [him]' to harsh conditions . . ., solely on account of [his]

19  religion, race, and/or national origin . . . ." Id.

20          The Ninth Circuit Court of Appeals has embraced and applied the

21  Iqbal/Twombly standard. See Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir.

22  2009) (quoting Iqbal, 129 S. Ct. at 1949) ("In sum, for a complaint to survive a motion to

23  dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content,

24  must be plausibly suggestive of a claim entitling the plaintiff to relief."); see also Longariello

25  v. Phoenix Union High Sch. Dist., CV-09-1606-PHX-LOA, 2009 WL 4827014, *2 (D. Ariz.

26  Dec. 15, 2009).

27          Applying the Iqbal/Twombly standard to Mr. Mealer's adversary complaint

28  necessitates dismissal of the Adversary Complaint for failure to state a plausible claim.

1  Taken in the order that they appear in the Adversary Complaint, Mr. Mealer's assertions

2  are insufficient to state a claim for which relief can be granted for the following reasons:

3  **"I.    Jurisdiction and Venue"**

4  This paragraph is nothing but a string cite of statutes and rules asserting that

5  this Court has jurisdiction.  As noted above, if the trustee abandoned this cause of action,

6  then the Bankruptcy Court no longer has jurisdiction over it.

7  **"II.    Claim Summary"**

8  This paragraph contains nothing more than bald assertions with no specific

9  facts and no allegation that Mr. Kordella was acting in the scope of his employment when he

10  responded to Mr. Mealer's blog post.

11  **"III.    Defendants' Lack of Authority and Precedence"**

12  Mr. Mealer confuses parties, lumping together GMAC Mortgage, LLC, the

13  creditor that owns a note and deed of trust on Mr. Mealer's personal residence dated

14  February 13, 2008, with the other defendants named in the adversary complaint. This

15  paragraph contains no specific factual allegations to support a conclusion that all of the

16  defendants should be treated as the same.

17  **"IV.    Creditors Breach of Duty to Protect Debtor"**

18  This paragraph seems to focus only on GMAC Mortgage, LLC, and, therefore,

19  contains no claims against the defendants who are making this motion. The paragraph also

20  appears to be based upon the bald assertion that GMAC Mortgage, LLC, "earmarked" some

21  payments from Mr. Mealer and used them to pay the "Internet Service Provider ("ISP")

22  registration fees" that allowed Mr. Kordella access to the internet. Without some specific facts

23  to support these bald assertions, they must disregarded.  This allegation is simply ridiculous.

24  **"V.    Premisis: Cause of Action"**

25  This  section  contains  the  following  bald  assertions  or  subjective

26  characterizations that should be disregarded:

27  (1)    That Kris J. Kordella was the "defendants' agent." No specific facts are

28  alleged to establish that Mr. Kordella was acting as an agent for any of the defendants. No

1    specific facts are alleged to indicate that Mr. Kordella was acting in anything other than his

2    own individual capacity.

3              (2)      Mr. Mealer alleges that Mr. Kordella accessed the internet "with intent to

4    strategically sabotage, whether by and through direction of management or strictly through

5    respondeat *superior contributory and comparative negligence originating while at work under*

6    *General Motors Corporation roof yet subordinate to the GMAC/*(fs) owned Internet Service

7    Provider's ("ISP") . . .." This allegation is not only a bald assertion, but uses a string of legal

8    jargon which, taken together, makes no sense.

9              (3)      The remainder of this section is a rambling collection of bald assertions

10   and legal conclusions.

11             (4)      There are only two "facts" contained in this entire section:   that Mr.

12   Kordella accessed Mr. Mealer's website on June 9, 2009 around 11:00 a.m., and Mr.

13   Mealer's website contains a statement that he is "gathering funding to begin full scale funding

14   of our automobile . . .." Those two facts, standing alone, do not give rise to any claim for

15   relief. Everything beyond those two facts consists of Mr. Mealer's subjective

16   characterizations, bald assertions, and conclusory allegations, none of which are sufficient to

17   state a claim.

18             **"VI.    Defendants' Unclean Hands, Annotated Exhibits"**

19             This sections contains the following unsubstantiated allegations:

20             (1)      That "GM-GMAC" accessed Mr. Mealer's professional business website

21   URL on June 9, 2009. The only fact alleged in the adversary proceeding is that Mr. Kris

22   Kordella posted a message on that date and did so using his "gm.com" address. Mr. Mealer

23   alleges no facts to support a conclusion that Mr. Kordella was acting as an agent for MLC or

24   any other General Motors entity and, therefore, there is no plausible basis to conclude that

25   the adversary complaint states a valid claim.

26             (2)      Mr. Mealer refers to Mr. Kordella's comments as "grossly disparaging,"

27   which, by definition, is his subjective characterization and does not, by itself, give rise to any

28   valid claim.

1        (3)    The remainder of this section alleges that the "gm.com" address

2 belongs to General Motors which does not, by itself, establish that anyone using an address

3 ending with the "gm.com" designation has authority to speak on behalf of MLC or any other

4 General Motors corporate entity.

5        **"VII.    Defendants' Defamatory Assault"**

6        This section of the adversary complaint quotes from Mr. Kordella's message

7 and provides dictionary definitions of the terms used by Mr. Kordella. Although the caption for

8 this section of the complaint refers to "defamation," this section falls well short of alleging

9 facts to support a claim for defamation.

10        In order to properly plead a cause of action for defamation, Mr. Mealer needs to

11 allege facts that support the following: (1) someone made a false and defamatory statement

12 concerning Mr. Mealer; (2) there was an unprivileged publication of that statement to a third

13 party; (3) fault amounting at least to negligence on the part of the publisher; and (4) either

14 actionability of the statement irrespective of special harm or the existence of special harm

15 caused by the publication." Restatement (Second) of Torts § 558 (1977). According to

16 Arizona law, defamatory statements "must be false and must bring the defamed person into

17 disrepute, contempt, or ridicule, or must impeach plaintiff's honesty, integrity, virtue, or

18 reputation." Godbehere v. Phoenix Newspapers, Inc., 162 Ariz. 335, 341, 783 P.2d 781, 787

19 (1989). Thus, harm is a special requirement of the tort of defamation in Arizona.

20        Whether the statements Mr. Kordella allegedly made about Mr. Mealer are

21 false or defamatory is not relevant to this motion. What is relevant is that Mr. Mealer has

22 alleged no specific facts to support at least one of the other critical elements of a claim for

23 defamation.

24        Specifically, Mr. Mealer alleges no specific facts establishing that Mr. Mealer

25 sustained any harm as a result of the statements allegedly made by Mr. Kordella. Elsewhere

26 in the adversary complaint, Mr. Mealer asserts that he has not been able to obtain funding for

27 his business venture, but he alleges no specific facts linking Mr. Mealer's inability to obtain

28 that funding to any of the statements allegedly made by Mr. Kordella.

1            Moreover, as noted above, Mr. Mealer has alleged no facts to support a

2    conclusion that any of the other defendants named in the adversary complaint directed or are

3    in any way responsible for any comments allegedly made by Mr. Kordella. When the

4    adversary complaint is stripped down to its bare facts, all Mr. Mealer has alleged is that he

5    and Mr. Kordella had a brief email exchange. That does not give rise to a cause of action

6    against MLC or any of the other named defendants.

7            **"VIII.  Blatant Intentions of Defendant, *Mens Rea*"**

8            This section of the adversary complaint contains Mr. Mealer's subjective

9    characterizations of how the moniker "MONEY01" could be interpreted. Based on Mr.

10   Mealer's subjective characterizations, he asserts that he has experienced "extreme duress"

11   and draws other conclusions. He does not allege any specific facts to support his

12   conclusions, however.

13           **"IX.    Admission of Guilt by GM-GMAC"**

14           This section begins by characterizing an apology Mr. Kordella sent to Mr.

15   Mealer as "half-hearted," "disappointing," and "insolent." These terms constitute subjective

16   characterizations by Mr. Mealer. He then makes bald assertions, with no facts alleged to

17   support them, that somehow, Mr. Kordella's communications created "public and private

18   doubt of Plaintiff" which "destroyed prospective capital B-Growth funds to be used for

19   business expansion and Plaintiff's economic growth and ability to cover mortgage payments."

20   Without some facts to substantiate these assertions and conclusions, this section does not

21   state any valid claim.

22           **"X.    Compensatory Damages"**

23           In this section, Mr. Mealer alleges that there were "multiple qualified investors"

24   who were "completing their due diligence investigations" of Mr. Mealer's company who then

25   "abruptly ended" their investigations because "Defendant" "publically humiliated" Mr. Mealer.

26   Mr. Mealer, however, never identifies a single one of the "multiple qualified investors," nor

27   does he allege any specific facts to support his assertion and conclusion that they were doing

28   / / /

1    due diligence investigations of Mr. Mealer's company, and that they "abruptly ended" those

2    investigations because of anything any of the named defendants did.

3              "XI.    Memorandum and Defendants' Violations of Law, Actus Reas"

4              In this section, Mr. Mealer alleges various torts, including intentional

5    interference with prospective economic advantage, breach of privacy, and restraint of trade.

6    All of these amount to more legal conclusions and bald assertions based not on facts but on

7    the alleged "defamation" addressed in preceding paragraphs. Without any actual facts

8    proving the critical elements of causation and harm arising from Mr. Kordella's statements,

9    the rest of Mr. Mealer's meanderings cannot rise to the level of stating a valid claim against

10   any of the defendants.

11             "XII.    Plaintiff's Argument"

12             In this section, Mr. Mealer cites a number of federal statutes without alleging

13   any facts to explain how any of those statutes are related to his case. Nowhere, for example,

14   does he explain how emails from Mr. Kordella could be characterized as "securities fraud."

15             "XIII.   Enjoined Motion for Evidentiary Hearing Concerning Gross
                        Creditor Misconduct"
16

17             This section is essentially a request for a hearing and a plea that this Court not

18   take up GMAC Mortgage, LLC's motion for relief from the automatic stay. Because Mr.

19   Mealer's adversary complaint has failed to state a claim for relief, there is no reason why the

20   Court needs to schedule a hearing on it.

21             "XIV.    Conclusion"

22             In this section, Mr. Mealer asks for a variety of relief, including denying GMAC

23   Mortgage, LLC's motion to lift automatic stay, discharging Mr. Mealer's mortgage debt, and

24   otherwise finding in Mr. Mealer's favor on a variety of legal theories asserted in the adversary

25   complaint but not supported by the necessary factual allegations.

26   ///

27   ///

28   ///

III.    **CONCLUSION**

For the foregoing reasons, Motors Liquidation Company requests that the Court grant this motion and dismiss plaintiff's adversary complaint with prejudice.

Dated this *29th* day of *April*, 2010.

BOWMAN AND BROOKE LLP


By: */s/ C. Megan Fischer*
    Thomas M. Klein
    C. Megan Fischer

WEIL, GOTSHAL & MANGES LLP

Joseph H. Smolinsky
Brianna N. Benfield
Attorneys for Motors Liquidation Company
(f/k/a General Motors Corporation)

1

**CERTIFICATE OF SERVICE**

2       I hereby certify that on the *29th* day of *April*, 2010, I caused the attached MOTION

3   OF MOTORS LIQUIDATION COMPANY (F/K/A GENERAL MOTORS CORPORATION)

4   TO DISMISS ADVERSARY COMPLAINT, AND MEMORANDUM OF POINTS AND

5   AUTHORITIES to be electronically transmitted to the Clerk's Office using the CM/ECF

6   System for filing and service to the following:

7       John Lewis Mealer, Pro Per
          6333 Gardenia Lane
8       Show Low, Arizona 85901
          jlmealer@mealercompanies.com
9       Plaintiff

10      A courtesy copy of the foregoing was sent via email to the following:

11     Yaron Shaham, Esq.
         WOLFE & WYMAN LLP
12     5 Park Plaza, Suite 1100
         Irvine, CA 92614-5979
13     yshaham@wolfewyman.com
         Attorneys for GMAC Mortgage, LLC
14

15     Lawrence J. Warfield, Esq.
         P.O. Box 14647
16     Scottsdale, Arizona 85267
         lwarfield@warfieldcpas.com
17     Trustee

18                         /s/   D. Schwartz

19

20

21

22

23

24

25

26

27

28

# EXHIBIT "I"

UNITED STATES BANKRUPTCY COURT
DISTRICT OF ARIZONA

In re:                                    )
                                          )
JOHN LEWIS MEALER           CH: 7         )   2:09-BK-24899-RTB
                                          )
1) JOHN LEWIS MEALER vs GMAC MORTGAGE,    )   ADV: 2-10-00503
   LLC. & GENERAL MOTORS CORP. &          )
   GENERAL MOTORS CO. & MOTORS            )
   LIQUIDATION CO. & RESIDENTIAL          )
   CAPITAL LLC & KRIS J CORDELLA &        )
   CHRISTY GARWOOD & GMAC FINANCIAL       )
   SERVICES AKA GMAC, INC. &              )
   RESIDENTIAL CAPITAL, LLC & GMAC        )
   MORTGAGE, LLC                          )
                                          )
   MOTION TO DISMISS ADVERSARY            )
   PROCEEDING FILED BY GENERAL MOTORS     )
   CO.                                    )
                                          )   ADV: 2-10-00503
2) JOHN LEWIS MEALER vs GMAC MORTGAGE,    )
   LLC. & GENERAL MOTORS CORP. &          )
   GENERAL MOTORS CO. & MOTORS            )
   LIQUIDATION CO. & RESIDENTIAL          )
   CAPITAL LLC & KRIS J CORDELLA &        )
   CHRISTY GARWOOD & GMAC FINANCIAL       )
   SERVICES AKA GMAC, INC. &              )
   RESIDENTIAL CAPITAL, LLC & GMAC        )
   MORTGAGE, LLC                          )
                                          )
   MOTION TO DISMISS ADVERSARY            )
   PROCEEDING FILED BY MOTORS             )
   LIQUIDATION                            )

                    U.S. Bankruptcy Court
                    230 N. First Avenue, Suite 101
                    Phoenix, AZ 85003-1706

                    June 2, 2010
                    11:02 a.m.

        BEFORE THE HONORABLE REDFIELD T. BAUM SR., Judge

1   <u>APPEARANCES:</u>

2   For GMAC Mortgage LLC, and          Colt B. Dodrill (Telephonic)
    Residential Capital, LLC:           WOLFE & WYMAN LLP
3                                       980 Kelly Johnson Drive
                                        Suite 140
4                                       Las Vegas, NV 89119

5   Pro Se Plaintiff:                   John Lewis Mealer
                                        6333 Gardenia Lane
6                                       Show Low, AZ 85901

7   For Motors Liquidation Co.          Thomas Klein
    and GM Company:                     BOWMAN AND BROOKE LLP
8                                       2901 N. Central Ave., Suite 1600
                                        Phoenix, AZ 85012

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Proceedings recorded by electronic sound technician, Juanita
    Pierson-Williams; transcript produced by AVTranz.

**∧V***Tranz*
E-Reporting and E-Transcription
Phoenix (602) 263-0885 • Tucson (520) 403-8024
Denver (303) 634-2295

3

1              THE CLERK:  All rise.

2              THE COURT:  Be seated, please.

3              THE CLERK:  In the case of 09:24899, John Mealer,

4     Adversary 10-503.

5              MR. DODRILL:  good morning.  This is Colt Dodrill for

6     Defendant GMAC Mortgage, LLC, Residential Cap, LLC.

7              MR. MEALER:  This is John Mealer, or I'm John Mealer.

8              MR. KLEIN:  Good morning.  I'm Tom Klein.  I'm here

9     on behalf of Motors Liquidation Company, also known as the Old

10    GM and General Motors Company, also known as the new GM.

11             THE COURT:  So that really thoroughly confused me.

12    Whose motion to dismiss is it on behalf of GM?

13             MR. KLEIN:  There are three motions to dismiss:  On

14    the phone, GMAC filed a motion to dismiss; on behalf of Motors

15    Liquidation Corporation, I filed a motion to dismiss; and on

16    behalf of GM Company, I filed a motion to dismiss.

17             THE COURT:  All right.  Who wants to go first?

18             MR. KLEIN:  If I may, Your Honor.  I know you've got

19    a busy docket.  Have you had a chance to review the adversary

20    complaint and the motions?

21             THE COURT:  I have.

22             MR. KLEIN:  All right.  I'll be very brief, then.

23    I'll just add one point on the part of the motion that started

24    at the substance or lack of substance of the complaint, and

25    just emphasize the _Iqbal_, I-Q-B-A-L, case from U.S. Supreme

4

1    Court last year.  Mr. Iqbal was stopped by TSA at an airport

2    and was convinced that it was all part of the conspiracy

3    masterminded by John Ashcroft at the top down through the

4    Justice Department to target people of Arabic descent at

5    airports.  And the U.S. Supreme Court said, basically, "You may

6    have a firm conviction that that's why you were stopped, but

7    you need some evidence to support that, some objective facts to

8    support that."  And I think that case applies well to the facts

9    alleged by Mr. Mealer.

10           I suspect that I probably could not convince

11   Mr. Mealer that there was not some conspiracy against him;

12   however, there are no facts to support it, just as there were

13   no facts to support Mr. Iqbal's complaint that there is some

14   conspiracy here.  And without those facts the claim should be

15   dismissed.

16           THE COURT:  Let me ask you a question.  Assuming I

17   were to agree with you, I would assume I would have to grant

18   the motion with leave to amend, set a deadline to do that.

19           MR. KLEIN:  You could do that but the other --

20           THE COURT:  I understand that Ninth Circuit law

21   compels me to do that.

22           MR. KLEIN:  As a practical matter, though, there are

23   the other two issues we raised, which is:  Mr. Mealer lacks

24   standing to bring the claim in the first instance; and as to my

25   two clients, first as to Motors Liquidation Company, there's a

5

1    stay in effect pursuant to the Chapter 11 proceedings that are

2    still ongoing in the Southern District of New York Bankruptcy

3    Court.  So the suggestion would be if you grant the motion with

4    leave to amend, that it should also indicate that the -- the

5    claim ought to be as to MLC void as a matter of law because it

6    violates the stay in the Chapter 11 proceeding.

7            As to my other client, General Motors Company, the

8    new GM, the asset sale order entered by the Judge in New York

9    specifically holds that there is no successor liability.  So

10    there is no valid claim against the new GM for anything that

11    happened prior to July 9th of 2009.  The District Court -- or

12    excuse me, the Bankruptcy Court there, Judge Gerber, retained

13    exclusive jurisdiction to interpret specifically that provision

14    of his order.  So to the extent that there's a question about

15    whether a valid claim could be made against the new GM, that

16    decision should be made by Judge Gerber in New York.  And so if

17    there's an amended complaint filed, it should be filed in New

18    York so Judge Gerber can rule on that.

19            THE COURT:  All right.

20            MR. DODRILL:  Your Honor, if I may, Colt Dodrill for

21    GMAC Mortgage, LLC.  We're the lenders in this case that really

22    have no connection to the alleged defamation the Plaintiff

23    alleges in his adversary complaint.  It seems any amendment,

24    whether he's allowed under Rule 15 or under Rule 8, would be

25    futile as against the lender on his real property.

6

1          This -- he alleges no origination-based claims, and

2     as counsel stated, he's still lacks the standing because the

3     events on which his claims are based arose pre-petition.

4     Therefore, the claims, if at all, need to be raised by Mr.

5     Mealer's Chapter 7 trustee.  So I think futility would tell us

6     that his amendments need not -- he need not be allowed leave to

7     amend.

8               THE COURT:  Mr. Mealer?

9               MR. MEALER:  Your Honor --

10              THE COURT:  I think you and I have had this

11    discussion before about you need a lawyer and some resources,

12    to do that, right?

13              MR. MEALER:  It appears that way.  But I can't seem

14    to get a lawyer to take this because the case has already

15    started.  That's what I've been hearing.

16              And I believe that these crimes were committed by

17    GMAC and GM prior to my bankruptcy which caused my bankruptcy,

18    which created the ability for me not to be able to pay my

19    mortgage, and that is gross Creditor misconduct.  I mean, it's

20    so blatant it -- it --

21              THE COURT:  I have to tell you, sir, that at least as

22    to the two entities that are the result of the bankruptcy of

23    the General Motors Company have some pretty serious doubts that

24    right now you can pursue those claims in this court even

25    assuming you had valid claims.  I mean, one of them was

1   essentially a sale free and clear that -- if I remember

2   correctly, some of the issues related to that went all the way

3   up to the U.S. Supreme Court, that that order has been upheld

4   by -- I guess it would be the Second or Third Circuit your cert

5   was denied; although a brief stay was entered by the U.S.

6   Supreme Court.  Then if the surviving entities, Motors

7   Liquidation, is still subject to an automatic stay you can't

8   pursue a claim against them, just like somebody couldn't pursue

9   a claim against you in your bankruptcy other than in that

10  court.

11          MR. MEALER:  Your Honor, what I've -- you know, as a

12  pro se complaintant (sic) here, what I found is Title 11, 503,

13  it's in my paperwork, if there's a crime committed by GM

14  regardless of if they change their name or declare bankruptcy,

15  I have a valid claim.  I've entered the GM bankruptcy court

16  with my petition.  I've petitioned GM, and it appears that the

17  Honorable Judge in --

18          THE COURT:  Gerber?

19          MR. MEALER:  -- with the MLC bankruptcy is allowing

20  me to come back into court once I have verification that these

21  crimes were committed.

22          THE COURT:  Now, let me -- let me tell you one thing:

23  Crimes, in the legal sense, are not the province or a

24  jurisdiction of this Court.

25          MR. MEALER:  Okay.

8

1          THE COURT:  Is there civil claims?

2          MR. MEALER:  Yes, sir.

3          THE COURT:  All right.

4          MR. MEALER:  But Creditor misconduct, I assumed was

5  part of the bankruptcy court because that's what put me here,

6  and the very Creditor that has interest in the competitive

7  automotive company, GM against Mealer Companies, they shut me

8  down.  They put me here.  And the --

9          THE COURT:  Well, again, one of the different --

10  difficulties, as I see it, is that, in a simple sense, all of

11  those dealer issues are -- have been or are being litigated in

12  that court, not this court.

13          MR. MEALER:  Yes, sir.  Yes, sir.  That -- that court

14  is -- well, GM exists today.  They existed before.

15          THE COURT:  Well, in a different legal capacity after

16  some --

17          MR. MEALER:  I don't think --

18          THE COURT:  -- unusual and very significant

19  proceedings in the bankruptcy court.  Like I said --

20          MR. MEALER:  Yes, sir.

21          THE COURT:  -- in some respects it went all the way

22  up to the U.S. Supreme Court.

23          MR. MEALER:  Yes, sir.

24          From my standpoint as a layman, I don't see how a

25  bankruptcy or a name change for a corporation allows them to

9

1  commit a crime.  The crime is continuing today.  GM is

2  benefiting from it.  GM is -- old GM, new GM, they're one in

3  same.  They've paid the same employees prior to the bankruptcy,

4  their bankruptcy, and after to their -- excuse me -- after

5  their bankruptcy.  And they have not made one move to

6  apologize, or remove their defamation, or -- or to do anything

7  for the crimes, once again crimes, for the collusional work

8  they done with GMAC.

9          I've got documentation.  I've tried to submit it to

10  the Court.  I wanted an evidentiary hearing.  I still would

11  like that.  I've got a signed apology from one of the people

12  that actually blackened my name.  And I'm doing what I can to

13  get this into court.  And, like I said, I can't get a lawyer

14  that will take this because I've already started, and -- and

15  that's where I'm at, Your Honor.

16          THE COURT:  All right.  Thank you.

17          Anything further from either of the movants?

18          MR. KLEIN:  No, Your Honor.

19          MR. DODRILL:  No, Your Honor.

20          THE COURT:  All right.

21          As to Defendants, I'll call it new General Motors and

22  the remaining old General Motors now known as Motors

23  Liquidation Company, the Court is going to grant the motion to

24  dismiss without leave to amend based on the orders entered by

25  the bankruptcy court, and the injunctions or retention of

10

1    jurisdiction provisions therein.

2         The Court will grant the motion to dismiss as to

3    GMAC, but will allow the Debtor 30 days to, if the Debtor so

4    elects, to file and amend the complaint.

5         If the Debtor does that, the Court will review that

6    independently to conclude whether or not a sufficient claim has

7    been alleged to allow that case to pursue; i.e., I don't want

8    GMAC to file a second motion to dismiss until the Court has had

9    an opportunity to review that complaint.

10        Counsel for the respective movants may serve and

11   lodge appropriate orders.

12        MR. KLEIN:  Thank you.

13        MR. DODRILL:  Thank you, Your Honor.

14    (Proceedings Concluded)

15

16

17    I certify that the foregoing is a correct transcript from

18   the record of proceedings in the above-entitled matter.

19

20   Dated: February 9, 2011

21                                   _Jami S. Mayes_
                                     AVTranz, Inc.
22                                   845 N. 3rd Avenue
                                     Phoenix, AZ 85003

23

24

25

# EXHIBIT "J"

**SO ORDERED:**

1  Thomas M. Klein (010954)
   tom.klein@bowmanandbrooke.com

**Dated: June 03, 2010**

2  C. Megan Fischer (019828)
   megan.fischer@bowmanandbrooke.com

3  **BOWMAN AND BROOKE LLP**
   Suite 1600, Phoenix Plaza

4  2901 North Central Avenue
   Phoenix, Arizona  85012-2761

_____

**REDFIELD T. BAUM, SR**
**U.S. Bankruptcy Judge**

5  (602) 643-2300
   (602) 248-0947 – Fax

_____

6

7  Joseph H. Smolinsky
   Brianna N. Benfield

8  **WEIL, GOTSHAL & MANGES LLP**
   767 Fifth Avenue

9  New York, New York  10153
   (212) 310-8000
   (212) 310-8117 – Fax

10

11  Attorneys for Motors Liquidation Company (f/k/a General Motors Corporation)

12              **IN THE UNITED STATES BANKRUPTCY COURT**

13                     **FOR THE DISTRICT OF ARIZONA**

14  In re:                                          ) Case No. 2:09-BK-24899-RTB
                                                    )
15  JOHN LEWIS MEALER,                              ) Chapter 7
                                                    )
16              Debtor,                             )
                                                    )
    _____                )
17                                                  ) Adversary No. 2:10-AP-00503-RTB
    JOHN LEWIS MEALER,                              )
18                                                  )
                Plaintiff,                          ) **ORDER DISMISSING ADVERSARY**
19                                                  ) **PROCEEDING AGAINST MOTORS**
    v.                                              ) **LIQUIDATION COMPANY (f/k/a**
20                                                  ) **GENERAL MOTORS CORPORATION)**
    GMAC Mortgage LLC, GMACfs,                      ) **WITHOUT LEAVE TO AMEND**
21  GENERAL MOTORS CORP., GENERAL                   )
    MOTORS CO., MOTORS LIQUIDATION                  )
22  CO., RESIDENTIAL CAPITAL LLC,                    )
    KRIS J. KORDELLA, CHRISTY                       )
23  GARWOOD, et al.                                 )
                                                    )
24              Defendants.                         )
                                                    )
    _____                )
25

26       The Court, having heard arguments and considered the pleadings;

27  / / /

28  / / /

1       IT IS ORDERED dismissing Motors Liquidation Company (identified in the adversary

2    complaint as "Motors Liquidation Co."; f/k/a General Motors Corporation) without leave to

3    amend, each party to bear its own fees and costs.

4       DONE this _____ day of _____, 2010.

5

6                         Honorable Redfield T. Baum
                            Judge, U.S. Bankruptcy Court

7                         District of Arizona

# EXHIBIT "K"

# EXHIBIT A

John Lewis Mealer, Pro Per
6333 Gardenia Lane
Show Low, Arizona 85901
jlmealer@mealercompanies.com

*ORIGINAL*

2010 JUN -8 PM 3:50

DOCKETED BY _____
CLERK SUPERIOR COURT
NAVAJO COUNTY

IN THE SUPERIOR COURT OF THE STATE OF ARIZONA
IN AND FOR THE COUNTY OF NAVAJO

JOHN LEWIS MEALER                          )   CASE CV2010 00316
                                           )
        PLAINTIFF                          )   CIVIL COMPLAINT FOR TORT CRIMES
          vs                               )
                                           )   JURY TRIAL DEMANDED
GMAC MORTGAGE LLC, GMAC                     )
FINANCIAL SERVICES, GENERAL                )
MOTORS CORPORATION., GENERAL               )
MOTORS COMPANY., MOTORS                    )
LIQUIDATION COMPANY, RESIDENTIAL           )
CAPITAL LLC, UNITED STATES                 )
TREASURY DEPARTMENT, GM                    )
ENGINEER KRIS J KORDELLA, JANE             )
DOE, JOHN DOE, et al                       )
                                           )
        DEFENDANTS                         )
                                           )
                                           )
_____)

## JURISDICTION

This case involves intentional and ongoing tort violations by the defendants against this

plaintiff which have created a claim in excess of $50,000 and falls within the jurisdiction of the

State of Arizona Navajo Superior Court where the damages to this Arizona and Navajo county

resident John Lewis Mealer and his Arizona, Navajo County based alternative fuel powered

automaker business had occurred on June 9th, 2009 and continue to occur to date. This honorable

court has jurisdiction in these matter under Article 6, Sections 5 and 14 of the Arizona

Constitution, and ARS Title 44, Chapter 10 and other laws pertaining to this instant case.

1

## CASE SUMMARY

**Comes Now the Plaintiff John Lewis Mealer** with good cause submitting this complaint and lawsuit against Defendants; GMAC Mortgage LLC, GMACfs, General Motors Corporation, General Motors Company, Motors Liquidation Company, Residential Capital LLC, United States Treasury Department, General Motors Engineer, employee and agent Mr. Kris J Kordella, General Motors employees and agents Jane Doe and John Doe and other key aforementioned corporation's employees and agents to be discovered during discovery disclosure in this instant case.

The charges and allegations of this instant case on the part of GMAC Mortgage LLC and GMACfs (herein called "GMAC") which resulted from the intentionally crafted, strategically worded Internet defamation as gross libel per se which was maliciously placed upon this plaintiff's business website by General Motors engineers on June 9th, 2009 by and through the Internet Service Provider ("ISP") which is owned, located, registered to and secured within the GMAC corporate headquarters at 200 Renaissance Center Detroit, Michigan in their malicious effort and real-life actuality to inflict as much damage as possible and to prevent plaintiff from gathering B-Round expansion funding for domestic manufacturing the Mealer Automobile for domestic and global sales.

This Plaintiff is the founding member (and patent holder) to Mealer Companies LLC which is an Arizona LLC registered on 9/19/08 to build alternative fuel powered automobiles, with the Arizona Corporation Commission Number L-1477212-5, Internal Revenue Service Employer ID 26-3359384.

GMAC is the main creditor and private home mortgage holder (Mortgage No. 0602003923) for this plaintiff and coincidentally, the main creditor of General Motors (herein

2

called "GM") whereby GMAC holds a publicly proclaimed interest in the survivability and viability of their preferred creditor and competitive automaker (to plaintiff) "GM".

GMAC provided access to and "held open the Internet doorway" for the tortuous crimes noted herein to be committed upon this plaintiff and in order for these crimes to continue and are thus culpable as respondeat superior of GM and GM's engineers and public relations (professional Bloggers for GM) who 'punched the keys' and spelled out the exact libel which created the far reaching and irreversible financial and future business and other emotional-related damages to this plaintiff, his business and his family.

GM engineers, specifically Kris J Kordella while at work, hunted down plaintiff and entered plaintiff's professional and Mealer Automobile investment oriented website ("http://mealercompanies.com") on June 9th, 2009 with the intentions to destroy and blacken plaintiff's good name and hinder plaintiff from gathering expansion B-Round growth funding for the MEALER AUTOMOBILE and Mealer Companies LLC which is an Arizona registered alternative fuel and automobile manufacturing company as of September 19th, 2008.

GM engineer, Mr. Kordella, acted in concert with at least two other "GM" employees working in what appears to be the Public Relations department of GM, who appear to be "professional Bloggers" for defendants. "GM" is culpable as respondeat superior of their employee(s) specifically Kris J Kordella for the carefully and maliciously planned and executed series of crimes creating intentional anti-competitive behavior and other tort violations detailed herein. Furthermore, neither bankruptcy nor corporate or private name change of these defendant parties creates an excuse for the intentional torts and other crimes intentionally committed by the "GM FAMILY" noted herein.

3

Mr. Kordella then followed up his grossly disparaging and expertly Blogged attack and proceeded to send direct and separate emails to additional interested parties who commented on his "MONEY01" blog which Mr. Kordella created on plaintiff's professional automotive funding expansion website and referred to this plaintiff as a fraud.

The libel per se that was "Blogged" by GM and GMAC efforts on mealercompanies.com website was done for the explicit and malicious purpose of causing as much damage as possible to plaintiff which acted as a deterrent for various interested parties who were investigating and doing final "due diligence" on plaintiff and plaintiff's business prior to investing in, offering their services for, applying for, planning a future purchase, offering equipment and buildings for lease or sale to, or otherwise providing funding, backing and other support for plaintiff and plaintiff's business and family.

## CLAIMS AGAINST DEFENDANTS

The torts and crimes committed, propagated and continued to this day without remorse by the defendants against this plaintiff are; 1). gross defamation per se, 2). gross libel per se with intent to destroy, 3). trade libel per se, 4). intentional tortuous interference with prospective advantage, 5). breach of fiduciary duty, 6). negligence of fiduciary duty, 7). conspiracy to commit fraud, 8). fraud, 9). conspiracy to commit mortgage servicing fraud, 10). mortgage servicing fraud, 11). unfair business practices-antitrust, 12). unfair competition, 13). specific intent of defendants to obtain a monopoly through unfair and predatory business conduct, 14). unjust enrichment, 15). negligent infliction of emotional distress, 16). intentional infliction of emotional distress, 17). slander of business reputation, 18). equitable subordination, 19). conspiracy for equitable subordination, 20). invasion of privacy with intent to injure, 21). trespass with intent to injure, 22). instilling extreme duress used to induce mortgage failure, 23).

4

intentional and negligent conspiracy to inflict business injuries, 24). false light, 25). abuse of power in by stronger party in contract, 26). illegal debt collection practices creating inability to perform,27). fraudulent inducement, 28). fraudulent obstruction, 29). combined contributory negligence, 30). impairment of earning capacity, 31). intentional creditor misconduct resulting in injury,32). breach of contract, 33). malfeasance creditor misconduct, 34). actual contract fraud in conjunction with mortgage contract,  35). deprivation of rights, 36). malfeasance creditor misconduct, 37). negligence, 38). conspired effort to defame, 39). anticompetitive business practices, 40) illegal coercive monopoly, et al and to be completed upon discovery disclosure proceedings.

### OUTLINE OF DEFENDANT'S INTENTIONAL TORTS AGAINST PLAINTIFF

The defendant's strategic defamatory libel per se against this plaintiff was cleverly worded, wholly fraudulent, deceptive and dishonest by design and effectually destructive and immediately updated as news when it was delivered via email, worldwide, to the various interested investing parties who had signed up for automatic updates via the RSS feed (Really Simple Syndication also considered a "live news feed" or "real time update") which obviously destroyed the investment and product credibility and over-all viability of this plaintiff. Defendant's actions, intentions and blatantly vicious libel cyber-attack by design and according to Mr. Kordella's letter of admission. (See Exhibit B-1) which resulted in:

1).    Maintaining intentionally wrongful, fraudulent business methods to gain an unfair advantage over this plaintiff, including: a) untrue or misleading advertising or promotion which misrepresent the nature, characteristics, qualities of the Mealer Automobile, b) falsely disparaging this plaintiff's products.

*5*

2).    Establishing a coercive monopoly of automobile manufacturers through the aforementioned private criminal acts whereby defendants were able to exclude plaintiff from competing within the automotive manufacturing business with that of GM,

> 44-1402. Contract, combination or conspiracy to restrain or monopolize trade
> A contract, combination or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce, any part of which is within this state, is unlawful.

3).    Creating a situation of extreme duress and mortgage fraud through creditor (GMAC) initiation of contract fraud (also by GMAC) which in effect is both intentional tortfeasor(s) and blatant criminal actions against this plaintiff which disrupted this plaintiff's ability to maintain mortgage payments or for other financial recourse whereby his immediate and future financial situation and subsequent financial failure was beyond the control of this debtor (plaintiff).

Plaintiff's inability to maintain the very mortgage contract that ties this plaintiff to the creditor GMAC which resulted in the impossibility to perform and forced this plaintiff into a chapter 7 bankruptcy in October 2009, was caused by GMAC's intentionally induced fraudulent transfer (by mortgage default), of the ownership of this plaintiff's home. The mortgage and pending home foreclosure must be denied and blocked by this court in order to serve Justice, for at least the time that this case is adjudicated or settled.

> When a mortgage is procured by fraud, the instruments can be canceled and foreclosure denied. *Meyerson v. Boyce*, 97 So.2d 488 (Fla. 3d DCA 1957). Fraud only invalidates contracts of debtor. In the absence of fraud, every contract of a debtor is valid against all his creditors, existing or subsequent, who have not acquired a lien on the property affected by such contract. R.L. 1910, § 2894. Unless displaced by the provisions of the Uniform Fraudulent Transfer Act, the principles of law and equity, including the law merchant and the law relating to principal and agent, estoppel, laches, fraud, misrepresentation, duress, coercion, mistake, insolvency, or other validating or invalidating cause, supplement the provisions of the Uniform Fraudulent Transfer Act. Added by Laws 1986, c. 100, § 11, eff. Nov. 1, 1986.

4).    Creating the total and complete and immediate disruption of pending and prospective Mealer Companies business expansion funding agreements and other prospective contracts by

6

intentionally and negligently stating injurious falsehoods about plaintiff, to the then interested investors and the various interested and prospective parties who were expected per previous discussions and broker interface to invest in the MEALER AUTOMOBILE during the summer of 2009. This damaged the plaintiff $200,000,000. in lost prospective investor opportunity.

5). Causing, by making untrue statements and shedding false light about plaintiff, the immediate persuading to cease any financial interest from once interested prospective investment parties including banks, venture capitalists, private investors, hedge funds, bonding agents, brokers, fellow small automakers. Discussions between these prospective parties and plaintiff ended abruptly due to the grossly disparaging libel and the typical anticompetitive drama created by the larger and more experienced globally renowned automaker "GM".

7). Disrupting relationships with various non-finance related parties who once held a great interest in the MEALER AUTOMOBILE and other products Mealer Companies LLC and John L Mealer were expecting to manufacture, who now have no interest in these products because defendants claimed this plaintiff and his business by MONEY01 standards, is not viable, is mindless, is self centered, is a fraud, etc. All pending funding deals ended abruptly and the immediate financial ruin of plaintiff was swift and complete.

8). Causing aggravated damages where damages may be assumed including but not limited to severe emotional and stress related physical suffering of this plaintiff, his wife and two sons.

## DEFENDANT'S ILLEGAL CONDUCT AGAINST PLAINTIFF (CLAIMS)

### I. Gross Libel per se, Defamation of Character per se, Trade Libel

While working in concert and in a combined effort utilizing the GMAC registered and bank secured, registered at GMAC corporate headquarters Internet Service Provider ("ISP"), GM engineers entered plaintiff's professional Mealer Automobile company funding website and

7

intentionally, maliciously destroyed over 25 years of planning, research, development and this

plaintiff's life's work by intentionally and critically blackening this plaintiff's name and viability

as an automaker and global supplier of Mealer Companies products. This is also a claim made by

this plaintiff that defendant's must admit or deny as a whole. SEE APPENDIX I

The financial damages created by the defendant's to this plaintiff's good name in the

alternative fuel powered automotive realm is not easily defined and left to this honorable court

and the juries discretion, yet this plaintiff feels that $200,000,000 is a worthwhile amount for

these irreparable damages especially since the defendants have known about the libelous

postings since June 9th, 2009 and have done nothing to remedy the situation after repeated

requests by this plaintiff to date nor has the defendants offer any public apology whatsoever

beyond the insolent private admissions by Mr. Kordella. Considering that the GM engineer Kris

J Kordella who is an employee-agent of GM apologized and admitted his blatantly maliciously

attacking plaintiff for the sake of GM and "...hundreds of his friends and co-workers who have

depended on GM..." the defendants have little ground to stand on for not being culpable for this

crime. Punitive damages and those damages related to plaintiff's family's pain and suffering

should also be taken into consideration.

This plaintiff puts to light the various and definable reasons that these grossly disparaging

and irreparably defamatory statements are false and uncalled for is quite clear on it's face as, for

example; Mr. Kordella's (GM) claim that Mr. Mealer has no mind is absurd and intended only to

dissuade investors from looking upon Mr. Mealer as a viable investment manager for their

money. Or GM's blatantly destructive claim that plaintiff is "self serving", "pathetic", a

"MORON", a "CLOWN", when in fact each of these derogatory terms are strategically used to

persuade the opposite of who and what Mr. Mealer really is. Plaintiff believes that this attack

was carefully formulated to create the worst possible damage to this plaintiff and his family and his livelihood, and even if they came about from a moment of wild indiscretion on the part of GM engineer Mr. Kordella, the corporations bear the burden of Respondeat Superior from the private ISP owner (GMAC, RESCAP) to the long time direct employer (GM), to the department that has funded the continued transgression of this criminal activity (US Treasury).

This plaintiff believes that according to recent experience, no realistic potential investor in a new automotive company wants to commit large sums of money and trust into a company who has been disparaged and lied about and as inflected by GM's Mr. Kordella as a fraud, or which is run by a "... self serving, pathetic MORON"... or a "CLOWN". The defendant's strategy worked as planned and they accomplished their mission to prevent the Mealer Automobile trade from gaining a share of what they perceive to be the General Motor's exclusive global market.

## II. Gross Creditor Misconduct, Breach of Contract, Induced Impossibility of Performance

GMAC while working in concert with their preferred debtor "GM" and providing access to "GM" engineers with the very funds that were gathered from the plaintiff as mortgage payments to maintain their secure and as per banking rules their well established privately owned and maintained and housed at GMAC headquarters, Internet Service Provider ("ISP"), proceeded to allow and provide access for GM engineers and other GMAC employees to research, hunt down and enter their client-debtor's (plaintiff's) professional website and leave blackening comments which resulted in a total abrogation of rights, crippled this plaintiff's earning capacity, destroyed this plaintiff business and family life, et al.

These illegal transgressions occurred in clear violation of banking laws, creditor-debtor relationship standards, and blatant violations of housing laws, RESPA (12 USC 2601, 2616 et al), FDIC Debt Collection Practices (15 USC 1692 e, §,§ 806(1), 808(8)(10), f § 808(6)(A)(B),

9

Bank Reform Act of 1978 (11 USC § 510(c)(1)(2), and other violations and legal remedies and

claims and facts to be brought forth during trial following Discovery Disclosure.

Plaintiff demands his home in it's entirety unencumbered as retribution for the crimes

committed by GMAC as noted herein AND $200,000,000. in damages or as the court and jury

deem proper, for the actions detailed above and separate from violations of other torts and

antitrust issues as detailed herein.

**III.     Intentional Interference With Prospective Advantage**

GMAC and GM have created a situation against this plaintiff whereby they worked in

concert through their employees and/or agents to intentionally interfere with this plaintiff's

prospective advantage in his automotive manufacturing business.

The elements of this cause of action are:

(1) The existence of a valid contractual relationship or business expectancy;
(2) knowledge of the relationship or expectancy on the part of the interferor;
(3) intentional interference inducing or causing a breach or termination of the relationship
or expectancy; and
(4) resultant damage to the party whose relationship or expectancy has been disrupted.
Hirsch v. Cooper, 737 P.2d 1092, 1097 (Ariz.Ct.App.1986).

(1)     The destruction of plaintiff's credibility, [with his then prospective investors and a diverse

group of credible brokers, banks, and other viable funding sources such as venture capitalists and

private investment groups who were using the plaintiff's professional website as a final sounding

board for their own due diligence], was the blatant intentions by defendants in this matter.

(2)     Defendant Mr. Kordella signed onto this plaintiff's professional and investor based

website under the alias as moniker "MONEY01" in order to portray himself as a leading money

and investor source which is clearly evidence that Mr. Kordella knew the reason for the existence

of this plaintiff prospective investment website.

*10*

Furthermore, the fact that this grossly disparaging attack occurred on this plaintiff professional investor oriented website where it is made quite clear the reason for this exact website currently listed on the page 2 entitled and linked from "WHAT WE ARE REALLY ABOUT", at http://mealercompanies.com/?page_id=2 which was visited multiple times by Mr. Kordella during his crippling tirade and business destructive libelous attack and clearly states the following reasons for th professional website's existence, (emphasis kept):

"WHAT WE ARE REALLY ABOUT"

> **Mealer Companies LLC is gathering funding to begin full scale production of our automobile and 220v full power source (combined as one). We have the vehicle, the patents, the key personnel and are now simply procuring the key ingredient...**
> *The remainder of our investment money."*

(3)     The tortuous crime of trade libel against the MEALER AUTOMOBILE and the gross libel per se (noted herein) against plaintiff John Lewis Mealer (noted herein) as tortuous actions taken by GM by and through the GMAC Internet Service Provider ("ISP") as supplied by their creditor GMAC which is coincidentally this plaintiff's creditor, have created the inability of this plaintiff to close the deal with his prospective investors simply because of defendant's strategic, malicious, business sabotage resulting in Intentional Interference with this plaintiff's Prospective Advantage. Defendant made it very clear why he had entered plaintiff's professional website and he succeeded in his quest for total destruction of plaintiff's life.

(4)     GM's employee agent. Mr. Kordella, while at work and while utilizing the GMAC secured and private Internet Service Provider ("ISP") from work entered the site and signed on as a professional blogger under the name of "MONEY01" to assert his professional and "real engineer" viewpoint of the viability of the MEALER AUTOMOBILE and the plaintiff  from a personal perspective as detailed herein. Mr. Kordella obviously knew the reason for the website's existence and the effect of his intentionally destructive and untrue comments about this plaintiff

*11*

and this plaintiff's automobile manufacturing business and 25 years of research and design. Mr. Kordella's ("GM") attack utterly and immediately destroyed all Mealer Companies viability and the personal and private work related capability of plaintiff and destroyed and ended the prospective investor relations who have since lost all interest with plaintiff and his business.

Although there is no Arizona law directly on point (i.e., addressing the question whether a claim for tortuous interference with prospective contractual relations is dependent upon compliance with the statute of frauds), it appears that under Arizona law, a tort "may be committed even where the plaintiff has no contractual rights but simply the prospect of a contractual relationship." Bar J Bar Cattle Co. v. Pace, 158 Ariz. 481, 486; 763 P.2d 545, 550 (Ariz.Ct.App.1988) (citing Restatement (Second) of Torts § 766B comment c (1979) ("The relations protected against intentional interference by the rule ... include any prospective contractual relations ... if the potential contract would be of pecuniary value to the plaintiff.")).

The California Supreme Court has held that a claim for intentional interference with prospective economic advantage is not dependent on compliance with the statute of frauds. See Buckaloo v. Johnson, 14 Cal.3d 815, 822; 537 P.2d 865, 868 (1975). It reasoned:

This is a tort theory of recovery rather than contract, and is based on interference with a "relationship" between parties irrespective of the enforceability of the underlying agreement. As stated in the leading California case of Zimmerman v. Bank of America: "The tort of interference with an advantageous relationship, or with a contract, does not ... disintegrate because it relates to a contract not written or an advantageous relation not articulated into a contract. The nature of the tort does not vary with the legal strength, or enforceability, of the relation disrupted. The actionable wrong lies in the inducement to break the contract or to sever the relationship, not in the kind of contract or relationship so disrupted, whether it is written or oral, enforceable or not enforceable."

Id. (citation omitted) (emphasis in original). Because we believe that the Arizona Supreme Court would find the California Supreme Court's reasoning to be persuasive, we hold that to prevail upon their claim for tortuous interference with prospective contractual relations, the appellants need not show that they could have enforced the alleged oral agreement with the RTC. Accordingly, the Arizona statute of frauds is not dispositive of the 12(b)(6) motion as it relates to this claim.

Mealer Companies funding documents which had been distributed to the prospective and highly interested parties for their investment considerations, and which was under serious prospective investment consideration including this plaintiff's professional interface and globally accessible website which was also being scrutinized and under due diligence, whereby GMAC provided the pathway and possibly an incentive as they certainly had multiple motives, for GM

12

engineers to blacken the good name of this plaintiff and Mealer Automobile manufacturing goals. This document titled "MEALER COMPANIES, FUNDING REQUEST SUMMARY, CONFIDENTIAL DISCLOSURE, J.L. MEALER, Q2 JUNE 2009" on Page 8, which state very clearly the amount of funding that was prospective and under serious consideration and financial advisory at the time:

> " Mealer seeks to raise start-up $95,000,000 in VC capital and lease-back agreements over the first three years for Phase I, not taking into account pre-and post-production sales. After two years, Mealer will require another $105,000,000 of either private capital or loans for Phase II secondary manufacturing purposes. The company will have one major manufacturing facility in either VA or TN and electronics research and developmental center and manufacturing center either in the same state or elswhere. At least four other ideal manufacturing locations are under review and remain highly attractive. The cost of a fund-to-suit conversion of existing facilities proves to be a fast, viable and cost-effective alternative to new site construction. And, since there are a growing number of such facilities coming to market, Mealer is sure to find the right facilities to meet our requirements. "

The aggravated and direct damages and loss of prospective funding which was caused by GM through the private and bank secured ISP registered to GMAC headquarters is $200,000,000. The actions of GMAC of allowing and providing for their debtor GM to enter this plaintiff's professional website with the intent to injure and destroy. Defendant GMAC intentionally participated and caused the immediate and future abandonment and discontinuance of financial investment interest from prospective contracts and agreements by this plaintiff's prospective investors, future customers, future employees and other interested parties. The actual damages are ongoing and neither GM, nor GMAC has offered to remove their grossly damaging libel, nor have they made any attempt to contact the once prospective investment parties or other interested parties and the intentionally damaging remarks are still on plaintiff's professional website without any public comment or apology from defendants.

IV.     Anticompetitive Behaviour, Coercive Illegally Obtained Monopoly, Antitrust Violations, Defendant's Coercive Monopoly by Destruction of Plaintiff's Business Growth,

*13*

The very actions of defendant's in their exclusionary anticompetitive behavior against this plaintiff ultimately result in their desire and need to exclude this plaintiff from entering the competitive automotive field where the Mealer Automobile would compete with a General Motors automobile. Rather than welcome the newcomer into the automotive arena, defendants opted to totally destroy and exclude this plaintiff from open market and international competition. The facts speak for themselves and the actions of these defendants including their motives spell out the exact intentions of their illegal anticompetitive coercive monopoly actions through the blatant sabotage of the Mealer Automobile and the destruction of JL Mealer himself.

The actual lost monetary amount and value of damages created by defendants anticompetitive and antitrust actions are difficult to ascertain because history has forever been changed and the Mealer Automobile may never reach full production as was originally planned and as once under intense consideration as the prospective business growth may have allowed. The grossly negligent and intentionally blatant acts of interference by these defendants may never be realized. Plaintiff relies on this honorable court and the future jury to define their versions of what the Mealer Automobile and other Mealer products could have and would have done for this country and this plaintiff had these defendants not interfered.

## DEFENDANT'S ADMISSION OF THE ACT

GM engineer, Mr. Kordella went so far as to offer a half-hearted yet completely private apology for his publicly degrading and professionally devastating attack while in his professional capacity at work, of which his attack strategically and proudly touted his qualified "GM" engineering and "MONEY01" investor related moniker. Thus, GM has admitted their attack which ultimately and immediately destroyed any and all prospective funding and future purchases of the Mealer Automobile and the good name of plaintiff so as to prohibit this plaintiff

14

from locating a viable automotive or other engineering related job. Defendants clearly, blatantly and maliciously have derailed prospective funding for Mealer Companies LLC expansion and this plaintiff's B-Round growth. The signed confessions states that GM, specifically Mr. Kordella, was worried for the welfare of the company and fellow employee payroll and pensions.

## EMOTIONAL DISTRESS

The emotional distress brought on by the immediate loss of 25 years of research and development being washed down the drain due to the corrupt actions of the defendants has created a serious, debilitating effect on this plaintiff's emotional state which has unfortunately been passed onto all immediate family members with classic symptoms of severe distress disorders and aggravated mental trauma.

Gross creditor misconduct committed by GMAC upon allowing access (whether knowingly or unknowingly) to this plaintiff's professional website [of which was manifestly depended on by this plaintiff for his livelihood, business growth and mortgage contract fulfillment], through the GMAC headquartered secured Internet Service Provider ("ISP") and by the very fact that this was done to their own debtor (this plaintiff) for the benefit of their preferred debtor (GM) and that this has continued to this day wholly unabated and without defendant's remorse or this plaintiff's ability for mortgage recourse creates additional, real-life fear in the form of utter helplessness and this actual physical distress in the form of absolute uncontrollable duress, oppression and complete unbridled panic at the potential outcome of this instant case where this plaintiff is battling in self-defense against a much better funded and completely unscrupulous 'global powerhouse' called General Motors and General Motors Acceptance Corporation *and the thousands of US taxpayer funded top notch lawyers at their disposal.*

*15*

Let me be clear... I can only write this now because it is 1:00 AM and my family is asleep, so it is safe for the man of the house to break (just a little bit) right now.

This injured plaintiff who has lost nearly everything to these plaintiff's is an absolute victim who is literally at the mercy of this court and whatever form of Justice and Law that can somehow be brought forth against a blatantly destructive, multinational series of interlocked, commingled corporations which are infinitively well funded by the US Treasury, SIMPLY to save his home, and SIMPLY to maintain some resemblance of a normal his life for his family and SIMPLY to hold dear to what liberty is available in a time when multinational corporations who are paid for with taxpayer funds run rampant over the newcomers and little guys in competitive business, and to SIMPLY continue to try to survive and maintain the original business and dream that was officially begun in 2008, yet originated in 1982 during high school. This entire case was brought on by the defendant's clear and blatant  attempt to destroy this plaintiff and not by any actions caused or created by this plaintiff.

The premise of duress is the virtual destruction of the victim's free will. *Cooper v. Cooper*, 69 So.2d 881 (Fla. 1954); *Herald v. Hardin*, 95 Fla.

As a matter of record, this plaintiff's doctor has repeatedly discussed with this plaintiff various forms of sedatives to calm the agitated mental and emotional state of this plaintiff which has been caused specifically by this instant crippling antitrust and intentional tort issue created and maintained by the defendants strictly for the purpose of stealing this man's home and crushing his business efforts. Plaintiff contends to his doctor that he needs his wits about him in order to find a way out of this mess in this honorable court and to save his home and business and to somehow provide for his family. Ingesting medication only to mask this severe trauma and extreme duress is not an option, and is simply not going to be done by this plaintiff.

*16*

To this day, the affects of this unwarranted and ongoing attack have created and continue to prolong debilitating emotional and physical issues which coincides with PTSD and which have been discussed with family doctors and a long time federal agent who have experience with such matters and that affect this plaintiff and his wife and two young sons, who are leaving this plaintiff to live with other family members (in July 2010). The stress at our 'home' is simply too much to put them through.

## ALLEGATIONS AND CLAIMS BY PLAINTIFF
## THAT DEFENDANTS MUST EITHER ADMIT OR DENY

1.     Defendant GMAC Mortgage LLC was headquartered at 200 Renaissance Center Detroit, Michigan on June 9th, 2009.

2.     Defendant GMAC Financial Services is headquartered at 200 Renaissance Center Detroit, Michigan on June 9th, 2009.

3.     Defendant GMAC fs and GMAC Mortgage LLC list their headquarters as  200 Renaissance Center Detroit, Michigan on FTC, FDIC and other press releases to date.

4.     Defendant's within the GM family in the Detroit, Michigan and surrounding area utilized, on June 9th, 2009, the "GMC-20" Internet Service Provider ("ISP") which is registered as  200 Renaissance Center Detroit, Michigan as a secure and private access to the Internet.

5.     Defendant Kris J Kordella was an engineer for General Motors employed on June 9th, 2009.

6.     Defendant Kris J Kordella was an engineer working for "GM" and at work on June 9th, 2009 at 10:56 AM.

7.     Defendant Kris J Kordella was an employee working for "GM" on June 9th, 2009 had access to the Internet and had the GM assigned email address of kris.j.kordella@gm.com .

17

8.      Defendant Kris J Kordella utilized the "GMC-20" IPS from within his place of work at "GM" on June 9th, 2009 under the IP address 198.208.251.24 belonging to GMC-20 and registered to GMAC headquarters and as originated from the GM location and Mr. Kordella's secured and registered to GM company computer.

9.      Defendant Kris J Kordella was employed by "GM" from May 1986 to September 2009 for 23 years and 5 months.

10.     Defendant Kris J Kordella is currently "self-employed" as a Quality Engineering and Education and Training Development agent mainly for the "new GM" and receiving compensation for his services from the "new GM".

11.     Defendant Kris J Kordella did enter plaintiff's professional automotive manufacturing and prospective financing oriented website on June 9th, 2009 at 11:29:31 AM and signed on to as a Blogger calling himself "MONEY01".

12.     Defendant Kris J Kordella did leave defamatory comments with the blatant intentions, reasoning the destruction of plaintiff's business as quoted in Mr. Kordella's "...wish you all the worst the world can give such a self-serving pathetic moron..."

13.     Defendant Mr. Kordella did offer plaintiff a private apology admitting to the libel and other defamatory actions detailed within this document.

14.     Defendant GMAC purchased the title to mortgage contract (No. 0602003923) for plaintiff's home located at 6333 Gardenia Lane, Show Low, Arizona from Amerifirst Financial, Inc. on or near February 15th, 2008.

15.     Defendant US Treasury Department has and continues to provide funding to GMAC Financial Services LLC, GMAC Mortgage LLC, Residential Capital LLC.

*18*

16.    Defendant US Treasury Department has and continues to provide funds and financial security to General Motors Corporation, General Motors Company, Motors Liquidation Company.

17.    Jane Doe who is identified as GM employee Christy Garwood is now or was an employee of GM (christy.garwood@gm.com) and utilizing the IP address 198.208.251.22 from within GM corporate offices on June 9th, 2009 while at work.

18.    John Doe who is identified as GM employee Joseph Burgel is now or was an employee of GM (joseph.burgel@gm.com) and utilizing the IP address 198.208.251.23 from within GM corporate offices on June 9th, 2009 while at work.

19.    Defendant GMAC is creditor to defendant GM old and GM new, MLC and holds an interest in payments to be gathered from these companies.

20.    Defendant GM owes more than $500,000 in credit swap, actual federal reserve notes or other value to their creditor GMAC.

21.    Defendant GMAC has stated in various FTC and FDIC documents and other public press releases proclaimed itself to be and is actually tied and financially reliant on GM old, GM new, and MLC to recover and/or maintain and/or distribute debt and/or repay debt and/or make vehicle sales whether in bankruptcy or out of bankruptcy.

22.    Defendant Kris J Kordella did on June 9th, 2009 hunt down Mr. JL Mealer and Mealer Companies LLC professional automotive finance related website with intent to trespass to injure and destroy to the best of his ability Mr. Mealer's ability to gather prospective funding for his privately owned business expansion and B-Round growth funding from prospective investors whereby Mr. Kordella signed on to Blog as "MONEY01" and later admitted his criminal

*19*

1   transgressions as his spurious method of retribution used to assist in securing the jobs and

2   pensions of hundreds of his friends an co-workers.

3   23.     Defendant Mr Kordella did succeed in his attempts as noted in #22 above.

4   24.     Defendant Mr. Kordella has received uninterrupted paychecks from old GM to new GM.

5   25.     Defendant Mr. Kordella was an engineer and at work for GM on June 9th, 2009 and was

6   surfing the Internet while at work and not doing the job he was hired for as an engineer.

7   26.     Defendant Mr. Kordella was assigned a job where he was told to surf the Internet in

8   search of mortgages who may or may not have been in default and took special note when

9   plaintiff's automotive manufacturing business searching for funding was discovered.

10  27.     Defendant Mr. Kordella was so enraged as to comments on an autoblog made by plaintiff

11  regarding the UAW and corporate greed creating the downfall of his employer that he hunted

12  this plaintiff down with the intent to destroy.

13  28.     Defendant Mr. Kordella was so enraged by this plaintiff's comments concerning the

14  qualifications of GM's then newly appointed interim CEO who was untrained to auto

15  manufacturing that Mr Kordella hunted down this plaintiff with intent to destroy.

16

17  29.     Defendant     Mr. Kordella was temporarily re-assigned from engineering duties to

18  research troubled accounts in an effort to locate and assist in liquidation of potentially troubled

19  assets.

20  30.     Defendant Mr Kordella was not always an engineer with GM, but acted as a public

21  relations and professional Blogger working with other GM, GMAC, RESCAP employee agents,

22  Bloggers, public relation employees, agents specifically Christy Garwood and Joseph Burgel.

23  31.     Defendant Mr Kordella was nearing retirement and decided to search assets of GMAC

24  Mortgage in an effort to locate a home out of Michigan  he may be able to acquire at a

25                                      20

reasonable price as per his comments stating exactly that on a blog where he left a comment in

2008 regarding what he would do if GM ever went *"belly up"*. *"...I'd get the Hell out of this*

*piece of shit state..."* And Mr. Kordella was assisted by <u>GMAC Relocation</u> which is nearby his

place of work in Bloomfield Hills, Michigan.

## APPENDIX I

The following outline details the negligent, unprivileged publication of intentionally false

and defamatory "Blogged" content placed on plaintiff's professional automotive and business

expansion website with the intent to destroy the reputation and funding viability and expansion

of manufacturing capabilities of the Mealer Automobile. When, on June 9th, 2009 GM Engineer

Kris J Kordella who signed on as "MONEY01" in order to elevate himself in what he portrays as

an investor who appears to have superior knowledge in all matters of funding (specifically with

Mealer Automobiles), <u>which in turn adds a preponderance of evidence that Mr. Kordella and the</u>

<u>defendants did IN FACT know the exact purpose of this plaintiff's funding expansion website.</u>

**Defamation: A statement which causes harm to reputation.**

A statement is defamatory if it <u>"tends to injure the plaintiff's reputation and expose the plaintiff to</u>
<u>public hatred, contempt, ridicule, or degradation."</u> Phipps v. Clark Oil & Ref. Corp., 408 N.W.2d
569, 573 (Minn. 1987).
<u>When the defamatory meaning is not apparent on its face, the plaintiff has the burden of pleading</u>
<u>and proving such extrinsic facts.</u> Anderson v. Kammeier, 262 N.W.2d 366, 371 (Minn. 1977).

The comments below as *highlighted, italicized in quotes*, and meanings of this portion of

defendant's comments from modern everyday dictionary definitions is <u>underlined in quotes.</u> This baseless

attack which destroyed this plaintiff were posted in their entirety *(yes, there's more)*, and immediately

sent out to many highly interested qualified prospective investors, prospective future customers and future

engineering and other employees who had signed up for RSS feed from the Mealer Companies LLC

interim, qualified Investor based website known as mealercompanies.com;

**1a.** (Meriam Webster Dictionary), ...*"Mealer Automobiles? America's next major automobile*
*company??"*

21

"Question Marks and multiple usage of Question marks meaning: a: Something unknown, unknowable, or uncertain b: someone (as an athlete or an automaker) whose condition, talent, or potential for success is in doubt."

The statement above "1a." make it blatantly clear the intentions of defendant (GM) Mr. Kordella can only allude to and are perceived by this injured victim as signaling and making it clear to prospective investors, clients and engineers that the viability, condition and potential for success of Mealer Automobiles is in serious doubt and "MONEY01" makes it clear that all should be wary of this unknown company with it's uncertain automobile product. Casting doubt in major investment while portraying oneself as a financial guru and a "real" engineer is intentional interference with a prospective advantage.

**1b.** (Collins English Dictionary), "...HAH!!!!!!!!!!!!!!!!!!!!!"...
"HAH abbreviation of HA meaning an exclamation denoting surprise, joy or grief. Both uttered and as written, it expresses as great variety of emotions, determined by the tine or the context. When repeated,ha,ha, it is an expression of laughter, satisfaction, or triumph, sometimes derisive laughter; or sometimes it is equivalent to "Well, it is so." Ha-has, and articulate hootings of satirical rebuke. Carlysle

**1c.** (Stuart Jeffries, "The Joy of Exclamation Marks!" The Guardian, Apr. 29, 2009)
"There is surely a point after which exclamation marks no longer express friendliness. In this post-literal time, exclamation marks become signs of sarcasm as witty correspondents rebel against their overuse. Hence: 'I loved your last email! OMG did I LOVE it!!!!!!' The point is they didn't. They were being IRONIC."

**1d.** *Use of multiple Exclamation Points with exclamation point defined as: "*as a symbol of factorial function, or (in logic) occurring with an existential quantifier"*

The blatant statements and strategic use of punctuation at "1b., 1c., 1d" as Blogged by Mr. Kordella under the moniker aka "MONEY01" is clearly an attempt to create an expression of derisive and comical rebuke of the Mealer Automobile so as to persuade prospective investors, employees, engineers and other interested parties to steer clear of the company and man (this plaintiff) who have anything to do with the Mealer Automobile as it would reduce these interested parties to the same ridicule as Mr. Kordella portrayed and intentionally inflected upon this plaintiff in his successful efforts to interfere with funding and business growth and the over-all competition that Mealer Automobiles would give to GM automobiles. The exclamation marks and over-use of this particular punctuation drives the

22

point home to these same parties who are looking for the smallest weakness to put their hard earned investment money, time and efforts elsewhere.

**2.** (Cambridge Idiom Dictionary), *"...it's obvious you don't have one (a mind)..."* commonly referred to as *out of your mind*: "extremely stupid or mentally ill."

This blatantly crippling comment was a coupe de gras by adding to the doubt of this plaintiff's mental capability and his ability to function as any form of normal human being let alone as a businessman running a company that is requesting $200,000,000. of investment funds from prospective parties, and/or the same businessman running a company selling any viable product or hiring competent engineers. This is clearly a gross and blatant attempt (that proved successful) to dissuade prospective investors and clients from putting efforts and funding into the growth of a competitive automaker. After-all, what serious engineer or other long term qualified employee would want to taint their resume by working with a man whom GM and MONEY01 and engineer Mr. Kordella claims has no mind? Common market research and long time purchasing habits sheds light on the fact, that very few people would commit to buy a high dollar product (specifically an automobile) from a man who is mentally ill.

**3a.** (Meriam-Webster Dictionary), *"...self serving..."* "Serving one's own interests often in disregard of the truth or the interests of others."

As Mr. Kordella noted above in "**3a.**" plaintiff is self-serving and this is so far from the truth that it should fit in a category of lies and a crime all it's own. This term is used to signal to the world of prospective clients, investors, employees, suppliers, fellow business owners, future business partners and others that plaintiff cares for no one but his companies bottom dollar and will do whatever it takes to make a profit including the very acts and mistakes that certain current automakers have done to create their own self serving world of bankruptcy and failure.

**3b.** (Merriam-Webster Dictionary), *"...pathetic..."* "Pitifully inferior or adequate"

As defendants clearly intentionally misstate above in "**3b.**" an effort to cleverly sabotage and seal the fate of this plaintiff's future by further dissuading his prospective investors from finalizing and closing the funding agreements for Mealer Companies. The term "...pathetic..." is used to portray this plaintiff as

23

inferior and inadequate for the prospective parties time, efforts or prospective investment funds, which is another blatant and successful attempt to destroy the validity and funding for the Mealer Automobile to prevent it from competing in an open market with GM vehicles.

3e. (Merriam-Webster Dictionary), *"...MORON..."*
"1. a person affected with mild retardation.  2. a very stupid person."

As defendants clearly and intentionally lied about in "3e." in order to destroy the upstanding business reputation of this plaintiff by referring to him as someone with mild retardation, who is very stupid and have intentionally created a life-changing outlook on this plaintiff's credibility as a viable candidate for the workforce or as an investment opportunity with his own business. No reasonable person would buy or rely on the safety of an automobile supplied by an automaker who is mildly retarded or very stupid.

4. (Merriam-Webster Dictionary), *"...CLOWN..."*
"2. rude ill-bred person.  3. A person who habitually jokes and plays the buffoon.

As defendants clearly and intentionally deceive this plaintiff's prospective clients and investors in "4" and intentionally misguide and mislead this plaintiff's future employees, future domestic and international customers by intentionally and incorrectly  referring to this plaintiff as a "rude, ill-bred person" and someone who by the very description of this plaintiff caused this plaintiff to "lose face" with his prospective Japanese and Korean investment groups who now want nothing to do with this "CLOWN" as per MONEY01 and the real engineers from a real engineering firm as noted below in "5".

5. (Merriam Webster Dictionary), *"...real..."* used twice to explain that Mealer was not "real".
"1. Not artificial, fraudulent, or illusionary. 2. GENUINE. 3. Genuinely good or capable of success.

As defendants unequivocally misstate and intentionally dissuade plaintiff's prospective investors, et al. by inferring that the Mealer Automobile and JL Mealer are not "real" and in fact are no more than a fraudulent and illusionary, not genuine entity who is incapable of success. This alone is a major deal breaker and as has been proven, Mr. Kordella and these defendant's have succeeded in their quest to utterly destroy and crush this plaintiff and this plaintiff's business.

*24*

Furthermore, defendant's blatantly aggressive and destructive to this plaintiff's good reputation and Mealer Companies financial B-Round growth for the domestic manufacture for worldwide resale of Mealer Automobiles attacks included with their admission of said attacks prove their attempt to Intentionally Interfere with Mealer's Prospective Economic Advantage and destroy and blacken Mealer's good name. Defendant's statements are untrue, unfounded, posted through defendant's blatant and carefree trespass with intent and Blogged maliciously with the intent to injure this plaintiff. The attempt was successful as it totally wiped out prospective funding and created an inability to compete and total restraint of this plaintiff's ability to compete within the very international automotive trade that defendants GM are well known for.

## CONCLUSION

Through the combined efforts of a secured, maintained and corporately headquartered and housed (by GMAC and Residential Capital) Internet Service Provider ("ISP"), along with GM engineers (specifically Mr. Kordella) and professional Bloggers who work for GM and GMAC, with funding from the US Treasury and after the initial payments to maintain the ISP were deducted from a portion of this 'plaintiff-debtor to GMAC' house payment, these defendants have created and have maintained the destructive libel on this plaintiff's website that continues to destroy all aspects of a future for this plaintiff and his family. GMAC is currently and effectively stealing the home that this plaintiff built and has mortgaged with GMAC when in fact, GMAC caused this plaintiff to fail financially and with mortgage payments after participating in destroying Mealer Companies funding and this plaintiff's future job prospects.

**WHEREFORE, this plaintiff prays this court grant the following** and/or permits this case to go to jury trial at the earliest possible time since time is of the essence and GMAC is attempting to steal this man's home after working on concert to destroy his ability to make

25

mortgage payments as evidenced herein. The following demands should be met during this extraordinary yet plausible lawsuit:

1.  GMAC and all representatives of defendants shall immediately be forbidden to enter the property of this plaintiff at 6333 Gardenia Lane, Show Low, Arizona.

2.  Plaintiff prays that this honorable court, for the physical safety and well being of this plaintiff and victim of Gross Creditor Misconduct and other associated crimes along with his wife and two young sons, DOES ISSUE (pending the outcome of this instant case) a "permanent injunction" protecting the real property at 6333 Gardenia Lane Show Low, Arizona from foreclosure whether obtained legally or illegally by GMAC, RESCAP or any other party who may or may not represent the defendants or this plaintiff.

    "The requirements for the issuance of a permanent (i)njunction are (1) the likelihood of substantial and immediate irreparable injury; and (2) the inadequacy of remedies at law." Dream Palace v. County of Maricopa, 384 F.3d 990, 1010 (9th Cir 2004). "In issuing an injunction, the Court must balance the equities between the parties and give due regard to the public interest." High Sierra Hikers, 390 F.3d at 642. District courts possess "broad discr(e)tionary power" to fashion equitable relief, see Lemon v Kurttzman, 411 U.S. 192,200 (1973).

3.  To be equally fair, this court should also protect defendants with an injunction against this plaintiff prohibiting him from selling or otherwise altering this home which could create a loss for either party.

4.  GM and all representatives of defendant's shall immediately offer a public apology and retraction of the libelous defamation against this plaintiff and request that all libelous attacks by the defendant's against this plaintiff be removed from this plaintiff's professional website and that the moniker MONEY01 be aloud to be stricken from the immediate records and that all written public apologies may be sent to any offended or once prospective investment parties at the pleasure of this plaintiff.

26

5.       That the combined defendants immediately pay this plaintiff $200,000,000. in damages and other punitive damages as the court deems proper and as created by defendant's intentional gross libel per se (as admitted to by defendants and noted herein).

6.       That this case proceed to trial for the Intentional Interference With Prospective Advantage (as allegations herein) and prosecuted to the full extent of the law plaintiff's loss of $200,000,000. in prospective investment fees trebled as per the law.

7.       That this case proceed to trial for the Arizona Revised Statutes Title 44 violations of antitrust and anticompetitive behavior (as allegations herein) and prosecuted to the full extent of the law. Thus far plaintiff's monetary loss is to be determined by the documentation and this honorable court.

8.       That any other compensation be provided to this damaged plaintiff and victim as this honorable court and subsequently applied jury deem proper.

**AFFIDAVIT**

I, John Lewis Mealer affirm the preceding to be true and correct to the best of my knowledge and perception of this ongoing incident, and under penalties of perjury and fraud, create this affidavit with my signature below. Further this affiant saith not.

7 June 2010

27

1  John Lewis Mealer, Pro Per  (Pro Se)
   6333 Gardenia Lane
2  Show Low, Arizona 85901
   jlmealer@mealercompanies.com
3  jlmealer@yahoo.com

4       IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

5          IN AND FOR THE COUNTY OF NAVAJO

6  JOHN LEWIS MEALER                    )
7              PLAINTIFF                 )    **CASE NUMBER CV201000316**
8              vs                        )
                                         )    ~~CERTIFICATE OF~~
9  GMAC MORTGAGE LLC and CEO DAVID )     ~~COMPULSORY ARBITRATION~~
   **APPLEGATE**, GMAC FINANCIAL         )
10 SERVICES, GMAC LLC and **CEO**        )    SUMMONS
   **MICHAEL CARPENTER**, GENERAL        )
11 MOTORS CORPORATION., GENERAL          )
   MOTORS COMPANY and **CEO EDWARD**     )
12 **WHITACRE JR**, MOTORS LIQUIDATION   )
   COMPANY, RESIDENTIAL CAPITAL LLC )
13 and **CEO THOMAS MARANO**, UNITED     )
   STATES TREASURY DEPARTMENT, GM        )
14 ENGINEER KRIS J KORDELLA, JANE        )
   DOE, JOHN DOE, et al.                 )
15
16            DEFENDANTS

17 The plaintiff John Lewis Mealer to defendant(s):
18 CEO "New" GM (et al)  Edward Whitacre Jr. in his personal and
   professional capacity, jointly and severally.
19 300 Renaissance Center, Detroit, MI  48265-3000
20      Mail Drop  482-Z39-B10

21

22     YOU ARE HEREBY SUMMONED and required to serve upon this plaintiff, pro per, an

23 answer to the complaint which is herewith served upon you, within twenty (20) days, exclusive

24 of the day of service, after service of this summons upon you if served within the State of

25 Arizona. Direct service is complete when made. Arizona Rules of Civil Procedure. Rule 4.

YOU ARE HEREBY NOTIFIED that in case of your failure to appear and defend within the time applicable, judgement may be taken against you  for the relief demanded in the Complaint.

YOU ARE CAUTIONED that in order to appear to defend, you must file an Answer or other proper response in writing with the Clerk of this Court, accompnaied by the necessary filing fee, within the time required, and you are required to serve a copy of any Answer or other response upon the Plaintiff, pro per. Arizona Rules of Civil Procedure, Rule 10.

The name and address of the Plaintiff

John Lewis Mealer
6333 Gardenia Lane
Show Low, Arizona (85901)
jlmealer@mealercompanies.com

REQUESTS FOR REASONABLE ACCOMODATION FOR PERSONS WITH DISABILITIES MUST BE MADE TO THE DIVISION ASSIGNED TO THE CASE BY APRTIES AT LEAST THREE (3) DAYS IN ADVANCE OF A SCHEDULED COURT PROCEEDING.

SIGNED AND SEALED this 10th day of August, 2010

_____
Deputy Clerk/ Clerk of the Court

Name of Paper: John Lewis Mealer, pro per

Address: 6333 Gardenia Ln. Showlow, Ariz 85900

JLMEALER@ MEALER COMPANIES.COM

# IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

# IN AND FOR THE COUNTY OF NAVAJO

JOHN LEWIS MEALER

PLAINTIFF

vs.

GMAC MORTGAGE LLC, etal

DEFENDANT(S)

Case Number: CV 201000316

CERTIFICATE OF

COMPULSORY ARBITRATION

Title of Pleading

COMES NOW Plaintiff(s), pro per and pro se by this honorable courts description, and hereby certifies that this case is not subject to the Uniform Rules of Procedure for Arbitration, because equitable relief is sought.

DATED THIS 16th day of August, 2010

Submitted on: 6/8/2010

Signature: _____

Signature witnessed this 8th day of June 2010, by

Notary Public / Deputy Clerk

Copy to:

CONFORMED COPY OF ORIGINAL

John Lewis Mealer, Pro Per  (Pro Se)
6333 Gardenia Lane
Show Low, Arizona 85901
jlmealer@mealercompanies.com
jlmealer@yahoo.com

AUG 10 2010

NAVAJO COUNTY SUPERIOR COURT
VALERIE WYANT, CLERK

## IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

## IN AND FOR THE COUNTY OF NAVAJO

JOHN LEWIS MEALER                       )

             PLAINTIFF          )

        vs                              )

GMAC MORTGAGE LLC and CEO DAVID )
APPLEGATE, GMAC FINANCIAL )
SERVICES, GMAC LLC and CEO )
MICHAEL CARPENTER, GENERAL )
MOTORS CORPORATION., GENERAL )
MOTORS COMPANY and CEO EDWARD )
WHITACRE JR. MOTORS LIQUIDATION )
COMPANY, RESIDENTIAL CAPITAL LLC )
and CEO THOMAS MARANO, UNITED )
STATES TREASURY DEPARTMENT, GM )
ENGINEER KRIS J KORDELLA, JANE )
DOE, JOHN DOE, et al.

          DEFENDANTS

CASE NUMBER CV201000316

*REQUEST FOR JURY TRIAL*

## REQUEST FOR JURY TRIAL

Plaintiff hereby demands a trial of this action by jury.

DATED: ~~July~~ Aug 10th , 2010

_____

John Lewis Mealer

# EXHIBIT "L"

Thomas M. Klein (010954)
tom.klein@bowmanandbrooke.com
C. Megan Fischer (019828)
megan.fischer@bowmanandbrooke.com
**BOWMAN AND BROOKE LLP**
Suite 1600, Phoenix Plaza
2901 North Central Avenue
Phoenix, Arizona  85012-2761
(602) 643-2300
(602) 248-0947 – Fax

Attorneys for General Motors LLC (f/k/a General Motors Company)

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| John Lewis Mealer, | Case No. 3:10-cv-08172-JWS |
| Plaintiff, | |
| v. | **DEFENDANT GENERAL MOTORS LLC'S MOTION TO DISMISS** |
| GMAC Mortgage LLC, GMAC Financial Services, General Motors Corporation, General Motors Company, Motors Liquidation Company, Residential Capital LLC, United States Treasury Department, GM Engineer Kris J. Kordella, Jane Doe, John Doe, et al., | (Oral Argument Requested) |
| Defendants. | |

Defendant General Motors LLC (f/k/a General Motors Company), who is yet to be properly served,[1] appears specially for the limited purpose of submitting this motion to dismiss the Complaint of Plaintiff John Lewis Mealer for lack of successor liability and insufficient service of process pursuant to the Federal Rule of Civil Procedure ("FRCP") 12(b)(5). This Motion to Dismiss is supported by the following Memorandum of Points and Authorities.

/ / /

**MEMORANDUM OF POINTS AND AUTHORITIES**

---

[1]  For purposes of this motion, General Motors LLC assumes that plaintiff's attempt to serve General Motors LLC's former CEO, Edward Whitacre, was an attempt to serve the corporation of General Motors LLC pursuant to FRCP 4(h)(1)(B).

::ODMA\PCDOCS\PHX\477876\1

**I.      INTRODUCTION**

On or about June 8, 2010, Plaintiff, John Mealer, filed a Complaint in the Superior Court of Navajo County, Arizona, against defendants GMAC Mortgage LLC, GMAC Financial Services, General Motors Corporation, General Motors Company, Motors Liquidation Company, Residential Capital LLC, United States Treasury Department, General Motors Engineer Kris J. Kordella, Jane Doe, John Doe, et al. Although the allegations in the Complaint are somewhat unclear, they may be summarized as follows: On or about June 9, 2009, plaintiff, John Lewis Mealer commented about General Motors Corporation's bankruptcy filing on some sort of blog sponsored or maintained by the *Automotive News* magazine. It appears that Mr. Kris J. Kordella ("Mr. Kordella"), an engineer employed by General Motors Corporation at that time, happened to see Mr. Mealer's comments. Upon seeing Mr. Mealer's comments, Mr. Kordella made his own observations in response to Mr. Mealer's comments.[2] Mr. Mealer claims that Mr. Kordella's comments were tortious, and alleges that they give rise to a variety of claims stated in the Complaint. *See* Complaint.

On June 1, 2009, Defendant General Motors Corporation commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the Bankruptcy Court for the Southern District of New York. On July 10, 2009, General Motors Corporation consummated the sale of substantially all of its assets to NGMCO, Inc. (n/k/a General Motors LLC), a United States Treasury-sponsored purchaser, pursuant to that certain Amended and Restated Master Sale and Purchase Agreement ("MSPA"). *See generally In re General Motors Corp.,* 407 B.R. 463 (Bankr., S.D.N.Y. 2009) ("Sale Opinion") (approving sale transaction). Simultaneous with closing on the MSPA, General Motors Corporation changed its name to Motors Liquidation Company ("MLC").

---

[2]      For purposes of this motion only, General Motors LLC accepts as true the allegation or allegations of the Amended Complaint that, in posting his personal opinion, Mr. Kordella was acting in the capacity of an employee of MLC.

1    After filing the Complaint, plaintiff mailed a copy of the Complaint to Mr. Edward

2    Whitacre, the former CEO of General Motors LLC. Delivery of the Complaint on Mr.

3    Whitacre, by mail, however, is not proper service of General Motors LLC.

4    Plaintiff's Complaint should be dismissed because: (1) General Motors LLC has no

5    successor liability for the actions of General Motors Corporation (n/k/a Motors Liquidation

6    Company) or its employees; and (2) General Motors LLC has not been properly served

7    under FRCP 12(b)(5).[3]

8    **II.    LEGAL ARGUMENT**

9    **A.    Plaintiff's Allegations Against General Motors LLC were Permanently
10    Enjoined by the Bankruptcy Court and Any Claims of Successor
     Liability have been Deemed Released**

11    Plaintiff alleges that the incident giving rise to his cause of action occurred

12    on June 9, 2009. This was after General Motors Corporation's filing of voluntary

13    bankruptcy on June 1, 2009 and before the Bankruptcy Court approved the sale of

14    substantially all of the assets of General Motors Corporation to General Motors LLC on

15    July 10, 2009. In acquiring these assets, General Motors LLC did <u>not</u> assume the liabilities

16    of General Motors Corporation, except with certain enumerated exceptions not applicable

17    here. In particular, General Motors LLC did not assume responsibility for claims arising

18    from alleged tortious acts by employees of MLC that occurred prior to the July 10, 2009

19    closing date.  *Id.,* 407 B.R. at 499-507 (overruling objections by tort claimants seeking to

20    preserve claims against New General Motors).  *See also In re Chrysler, LLC*, 2009 WL

21    2382766, pp 11-13 (2nd Cir. 2009) (bankruptcy court was permitted to authorize the sale

22    of substantially all Chrysler's automotive assets free and clear of claims).

23    The scope and limitations of General Motors LLC's  responsibilities are

24    defined in the Bankruptcy Court's "Order (i) Authorizing Sale of Assets Pursuant to

25    Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc., a U.S.

26    Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain

27

28    _____

      [3]    Again, if plaintiff was attempting to serve Mr. Whitacre in an individual capacity, he raises the
      affirmative defenses under FRCP 12(b) of lack of personal jurisdiction, insufficiency of process,
      insufficient service of process, and improper venue.

1  Executory Contracts and Unexpired Leases In Connection with the Sale; and (iii) Granting

2  Related Relief," entered on July 5, 2009 (the "Sale Approval Order"), which is a final

3  binding order. *See* Sale Approval Order, attached as Exhibit B to General Motors LLC's

4  Notice of Removal. [3] The Sale Approval Order provides that, with the exceptions of certain

5  liabilities expressly assumed under the relevant agreements, the assets acquired by

6  General Motors LLC were transferred "free and clear of all liens, claims, encumbrances,

7  and other interests of any kind or nature whatsoever. . . including rights or claims based

8  on any successor or transferee liability. . ." *Id.,* ¶7.

9      The Bankruptcy Court ruled that the bankruptcy laws under which it issued

10  orders and opinions preempt any conflicting state laws, including any state successor

11  liability law. In addition, the Bankruptcy Court expressly retained jurisdiction to resolve all

12  matters relating to the implementation, enforcement and interpretation of the very orders

13  and opinions that Plaintiff seeks to circumvent in the filing of the State Action. Accordingly,

14  the State Action is an impermissible collateral attack on the Bankruptcy Court's orders and

15  opinions.

16      General Motors LLC had no employees or operations as of June 9, 2009,

17  the date of Mr. Kordella's alleged email exchange with Mr. Mealer, so there cannot be, nor

18  is there, a claim that Mr. Kordella worked for General Motors LLC at that time. This Court,

19  should, therefore, dismiss plaintiff's claims against General Motors LLC. In the alternative,

20  to the extent this Court believes there are any legitimate issues involving potential claims

21  against General Motors LLC based on alleged actions prior to its acquisition of the assets

22  of General Motors Corporation/MLC, this Court should transfer this matter to the

23  Bankruptcy Court for the Southern District of New York, which retains exclusive

24  jurisdiction over any matter or dispute arising from or relating to the Sale Approval Order.[5]

25  / / /

26      **B.    Plaintiff Has Failed To Properly Serve General Motors LLC**

27  ---
    [4]  The Sale Approval Order is also publicly available at
         http://docs.motorsliquidationdocket.com/pdflib/2968_order.pdf.

28  ---
    [5]  If General Motors LLC is not dismissed from this matter, it intends to file a Motion to Transfer Venue to
         the United States District Court for the Southern District of New York.

1    Plaintiff failed to properly serve General Motors LLC under FRCP 4(h)(1)(A)

2    or (B). Under FRCP 4(h):

3    "[A] domestic of foreign corporation [ ] must be served: (1) in a judicial district of the United States: (A) in the manner prescribed

4    by Rule 4(e)(1) for serving an individual; or (B) by delivering a copy of the summons and of the complaint to an officer, a

5    managing or general agent, or any other agent authorized by appointment or by law to receive service of process and- if the

6    agent is one authorized by statute and the statute so requires- by also mailing a copy of each to the defendant[.]"

7

8    General Motors LLC has not been properly served in this matter. Edward

9    Whitacre, the former CEO of General Motors LLC, was purportedly served, by mail, with

10    the Complaint. However, Mr. Whitacre is not a qualifying officer or agent under FRCP

11    4(h)(1)(B), nor did plaintiff "deliver" the summons and complaint as required. Based on

12    General Motors LLC's due diligence, it is General Motors LLC's understanding that, to

13    date, no other parties have been properly served in this matter. Thus, plaintiff's attempt to

14    serve General Motors LLC was insufficient under FRCP 4(h)(1)(B) and his complaint

15    should be dismissed.

16    In an abundance of caution, however, General Motors LLC is filing this

17    Motion to Dismiss within the period provided by the rules on the assumption that mailing

18    the Complaint to Mr. Whitacre constituted effective service.

19    **III.    CONCLUSION**

20    For the foregoing reasons, General Motors LLC respectfully requests that this Court

21    dismiss plaintiff's claims against General Motors LLC because there is no successor liability

22    for any alleged actions that took place prior to July 10, 2009, and because General Motors

23    LLC was not properly served.

24    / / /

25    / / /

26    / / /

27    / / /

28    Dated this *15th* day of *September*, 2010.

BOWMAN AND BROOKE LLP

1

2

3    By: /s/ Thomas M. Klein
                Thomas M. Klein
                C. Megan Fischer
                Attorneys for General Motors LLC (f/k/a
                General Motors Company)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on the *15th* day of *September*, 2010, I caused the attached **DEFENDANT GENERAL MOTORS LLC'S MOTION TO DISMISS** to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and service to the following:

John Lewis Mealer, Pro Per
6333 Gardenia Lane
Show Low, Arizona  85901
jlmealer@mealercompanies.com

Colt B. Dodrill, Esq.
WOLFE & WYMAN LLP
980 Kelly Johnson Drive, Suite 140
Las Vegas, NV  89119
cbdodrill@wolfewyman.com
Attorneys for General MotorsAC Mortgage, LLC

/s/   *D. Schwartz*

# EXHIBIT "M"

<br>

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| JOHN LEWIS MEALER, | ) | |
| | ) | |
| Plaintiff, | ) | 3:10-cv-08172 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| GMAC MORTGAGE LLC, *et al.*, | ) | [Re: Motion at Docket 8 ] |
| | ) | |
| Defendants. | ) | |

## I.  MOTION PRESENTED

At docket 8, defendant General Motors LLC ("GM") moves pursuant to Federal
Rule of Civil Procedure 12(b)(5) to dismiss the case for insufficient service of process.
Although GM does not cite Rule 12(b)(6) in its motion, it is perfectly clear from its
supporting memorandum that it is also moving pursuant to that rule to dismiss the
complaint for failure to state a claim upon which relief may be granted.  Plaintiff John L.
Mealer ("Mr. Mealer") opposes the motion at docket 20.  GM's reply is at docket 22.
Oral argument was requested, but would not assist the court.

## II.  BACKGROUND

This case arises out of allegedly defamatory comments made in response to an
internet blog posting.  On June 1, 2009, General Motors Corporation filed for

Dockets.Justia.com

bankruptcy. On July 10, 2009, the bankruptcy court approved the sale of substantially all of the assets of General Motors Corporation to NGMCO, Inc., an entity sponsored by the United States Treasury. General Motors Corporation subsequently changed its name to Motors Liquidation Company and NGMCO, Inc. became General Motors LLC.

Mr. Mealer claims to have developed technology that will revolutionize the automobile and vault his company–Mealer Companies LLC ("Mealer Companies")–from obscurity into direct competition with GM and other major automakers. Mr. Mealer alleges that on June 9, 2009, Kris J. Kordella, an engineer for General Motors Corporation, made disparaging remarks about Mr. Mealer on his company's website. The remarks were a response to Mr. Mealer's posting about the General Motors Corporation bankruptcy on the *Automotive News* website. Mr. Mealer believes that those remarks had considerable sway on potential investors such that Mealer Companies lost all potential investment capital to the tune of $200,000,000.

Mr. Mealer filed a lawsuit in Arizona state court, asserting forty claims against GMAC Mortgage LLC, GMAC Financial Services, General Motors Corporation, General Motors Company, Motors Liquidation Company, Residential Capital LLC, the United States Department of the Treasury, and Mr. Kordella. Mr. Mealer served process on GM by mailing a copy of the summons and complaint to Edward Whitacre, GM's former CEO. The case was removed to the District of Arizona on September 14, 2010. Mr. Mealer is proceeding *pro se*.

-2-

### III.  STANDARDS OF REVIEW

**A. Insufficiency of Service of Process**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) for insufficient service of process is governed by the procedural requirements of Federal Rule of Civil Procedure 4(c).[1]  Rule 4(c) provides that "a summons must be served with a copy of the complaint."[2]  "Rule 4 is a flexible rule that should be liberally construed so long as the party receives sufficient notice of the complaint."[3]  In determining whether service was valid, whether actual notice was given is "highly probative."[4]

**B. Failure to State a Claim**

A motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and construed in the light most favorable to the nonmoving party."[5]  Dismissal for failure to state a claim can be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."[6]  "Conclusory

---

[1]5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2010).

[2]Fed. R. Civ. P. 4(c)(1).

[3]*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

[4]*Horner v. Jones-Bey*, 415 F.3d 748, 758 (7th Cir. 2005).

[5]*Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[6]*Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

-3-

allegations of law . . . are insufficient to defeat a motion to dismiss."[7]  To avoid

dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible

on its face."[8]  Thus, for a complaint to survive a motion to dismiss under Rule 12(b)(6),

"the non-conclusory factual content; and reasonable inferences from that content, must

be plausibly suggestive of a claim entitling the plaintiff to relief."[9]

## IV.  DISCUSSION

### A. Mr. Mealer Properly Served GM Through Its Former CEO

GM argues that Mr. Mealer did not comply with Federal Rule of Civil Procedure

4(h).[10]  Under that rule, "a domestic . . . corporation . . . or other unincorporated

association . . . must be served . . . by delivering a copy of the summons and of the

complaint to an officer, a managing or general agent, or any other agent authorized . . .

by law to receive service of process."[11]  GM maintains that the summons and complaint

were not "deliver[ed]" within the meaning of Rule 4(h) and that Mr. Whitacre was not a

qualifying officer or agent for service of process.  Mr. Mealer counters that he complied

with Arizona Rule of Civil Procedure 4.2(c), which states the requisite procedure for

service by mail.

---

[7]*Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[8]*Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[9]*Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation and citation omitted).

[10]Doc. 8 at 5.

[11]Fed. R. Civ. P. 4(h)(1)(B).

-4-

GM's reliance on Federal Rule 4(h) is technically error because "[t]he issue of the sufficiency of service of process prior to removal is strictly a state law issue."[12] Consequently, "[i]n determining the validity of service in the state court prior to removal, a federal court must apply the law of the state under which the service was made."[13]

Arizona Rule of Civil Procedure 4.2(h) provides that "[i]n case of a corporation or partnership or unincorporated association located outside [Arizona] but within the United States . . . service . . . shall be made on one of the persons specified in Rule 4.1(k)."[14] Arizona Rule 4.1(k) mirrors Federal Rule 4(h) and specifies that service can be made on "a partner, an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process."[15]

Mr. Mealer complied with the letter of Rule 4.2(c) in attempting to serve GM.[16] The certified mailing was signed for by Mike Darowski, presumably an employee of GM.[17] To the extent that Darowski had authority to "accept restricted delivery mail on [Whitacre's] behalf," it is of no moment that Whitacre did not "expressly or specifically

---

[12]*Lee v. City of Beaumont*, 12 F.3d 933, 936–37 (9th Cir. 1993), *overruled on other grounds by Cal. Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

[13]4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1082 (3d ed. 2010).

[14]Ariz. R. Civ. P. 4.2(h).

[15]Ariz. R. Civ. P. 4.1(k).

[16]*See* doc. 20 at 29, 40.

[17]*Id.* at 40.

-5-

authorize [Darowski] or otherwise appoint[] an agent[] to accept service of process on [his] behalf."[18]

The crux of GM's argument is that when Mr. Mealer mailed the summons and complaint, Mr. Whitacre was no longer an officer. However, "Arizona courts have recognized effective service of process even on an ostensible (or apparent) agent in the corporate context."[19] In *Koven*, the court found service of a corporation's former officer to be effective based on agency principles.[20] Those same principles apply to the case at bar. "[I]n order to establish 'ostensible' authority, the record must reflect that the alleged principal not only represented another as his agent, but that the person who relied upon the manifestation was reasonably justified in doing so under the facts of the case."[21] Mr. Mealer argues that he "had no reason not to rely on" GM's website–which identified Mr. Whitacre as CEO–in determining an appropriate officer to serve.[22] Under the circumstances, the court agrees that GM represented Mr. Whitacre to be an officer of the corporation and that Mr. Mealer was reasonably justified in relying on that representation.

GM's final argument is that Mr. Mealer "failed to identify Mr. Whitacre as an agent of [GM] when mailing him the complaint."[23] GM cites *Biaett v. Phoenix Title & Trust Co.*,

---

[18]*Barlage v. Valentine*, 110 P.3d 371, 376 (Ariz. 2005).

[19]*Id.* at 377 (citing *Koven v. Saberdyne Systems, Inc.*, 625 P.2d 907, 911 (1980)).

[20]*Koven*, 625 P.2d at 911.

[21]*Id.* at 911–12.

[22]Doc. 20 at 7.

[23]Doc. 22 at 4.

in support of its contention.[24]  The *Biaett* court, however, stated that "to accomplish [by mail] legal service on a corporation . . . it is necessary that the officer to whom the papers are mailed be expressly designated as such."[25]  Mr. Mealer did not need to identify Mr. Whitacre as an agent of GM, only as an officer.  That is precisely what he did.[26]

## B. GM Is Not Liable For the Tortious Conduct Alleged in the Complaint

GM contends that Mr. Mealer's complaint against it must be dismissed for failure to state a claim pursuant to Rule 12(b)(6).  GM argues that it is not subject to successor liability–claims "asserted against the successor in ownership of property that was transferred from the entity whose alleged wrongful acts give rise to the claim."[27]  The order approving the sale of substantially all of General Motors Corporation's assets to GM is clear: "GM would voluntarily assume liability for warranty claims, and for product liability claims asserted by those injured after the [sale]–even if the vehicle was manufactured before the [sale].  But . . . GM would not assume any [General Motors Corporation] liabilities for injuries that arose before the [sale]."[28]  The offensive remarks were made on June 1, 2009.  GM acquired General Motors Corporation's assets on July 10, 2009.  Mr. Mealer's alleged injuries therefore arose before the sale of General

---

[24]217 P.2d 923 (Ariz. 1950).

[25]*Id.* at 926.

[26]Doc. 20 at 40.

[27]*In re General Motors Corp.*, 407 B.R. 463, 500 (Bankr. S.D.N.Y. 2009).

[28]*Id.*

-7-

Motors Corporation's assets to GM.  Because GM did not assume successor liability,

Mr. Mealer's claims against GM are barred.

### V.  CONCLUSION

For the foregoing reasons, GM's motion at docket 8 to dismiss the case pursuant

to Federal Rule of Civil Procedure 12(b)(5), for insufficient service of process, is

**DENIED**.  GM's simultaneous motion to dismiss the case pursuant to Federal Rule of

Civil Procedure 12(b)(6) is **GRANTED**, and the claims against GM are **DISMISSED**.

DATED this 1st day of November 2010.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

-8-

# EXHIBIT "N"

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| JOHN L. MEALER, | ) | |
| | ) | |
| Plaintiff, | ) | 3:10-cv-08172 JWS |
| | ) | |
| vs. | ) | ORDER AND OPINION |
| | ) | |
| GMAC MORTGAGE LLC, *et al.*, | ) | [Re: Motion at Docket 16] |
| | ) | |
| Defendants. | ) | |
| | ) | |

## I.  MOTION PRESENTED

At docket 16, defendant Kris J. Kordella moves to dismiss the case pursuant to Rules 12(b)(6), 12(b)(5), and 12(b)(2) for failure to state a claim, insufficient service of process, and lack of personal jurisdiction.  Plaintiff John L. Mealer opposes the motion at docket 20.  No reply was filed.  Oral argument was requested, but would not assist the court.

## II.  BACKGROUND

This case arises out of allegedly defamatory comments made in response to an internet blog posting.  On June 1, 2009, General Motors Corporation filed for bankruptcy.  On July 10, 2009, the bankruptcy court approved the sale of substantially all of the assets of General Motors Corporation to NGMCO, Inc., an entity sponsored by

the United States Treasury.  General Motors Corporation subsequently changed its name to Motors Liquidation Company and NGMCO, Inc. became General Motors LLC ("GM").

Mr. Mealer claims to have developed technology that will revolutionize the automobile and vault his company–Mealer Companies LLC ("Mealer Companies")–from obscurity into direct competition with GM and other major automakers.  Mr. Mealer alleges that on June 9, 2009, Kris J. Kordella, an engineer for General Motors Corporation, made disparaging remarks about Mr. Mealer on his company's website. The remarks were a response to Mr. Mealer's posting about the General Motors Corporation bankruptcy on the *Automotive News* website.  Mr. Mealer believes that those remarks had considerable sway on potential investors such that Mealer Companies lost all potential investment capital to the tune of $200,000,000.

Mr. Mealer filed a lawsuit in Arizona state court, asserting forty claims against GMAC Mortgage LLC, GMAC Financial Services, General Motors Corporation, General Motors Company, Motors Liquidation Company, Residential Capital LLC, the United States Department of the Treasury, and Mr. Kordella.  Mr. Mealer served process on Mr. Kordella via certified mail.  Mr. Mealer is proceeding *pro se*.

### III.  STANDARD OF REVIEW

**A. Failure to State a Claim**

A motion to dismiss for failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), tests the legal sufficiency of a plaintiff's claims.  In reviewing such a motion, "[a]ll allegations of material fact in the complaint are taken as true and

construed in the light most favorable to the nonmoving party."[1] Dismissal for failure to

state a claim can be based on either "the lack of a cognizable legal theory or the

absence of sufficient facts alleged under a cognizable legal theory."[2] "Conclusory

allegations of law . . . are insufficient to defeat a motion to dismiss."[3] To avoid

dismissal, a plaintiff must plead facts sufficient to "state a claim to relief that is plausible

on its face."[4] Thus, for a complaint to survive a motion to dismiss under Rule 12(b)(6),

"the non-conclusory factual content, and reasonable inferences from that content, must

be plausibly suggestive of a claim entitling the plaintiff to relief."[5]

## B. Insufficiency of Service of Process

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(5) for insufficient

service of process is governed by the procedural requirements of Federal Rule of Civil

Procedure 4(c).[6] Rule 4(c) provides that "a summons must be served with a copy of the

complaint."[7] "Rule 4 is a flexible rule that should be liberally construed so long as the

---

[1] *Vignolo v. Miller,* 120 F.3d 1075, 1077 (9th Cir. 1997).

[2] *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990).

[3] *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001).

[4] *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

[5] *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotation and citation omitted).

[6] 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1353 (3d ed. 2010).

[7] Fed. R. Civ. P. 4(c)(1).

-3-

party receives sufficient notice of the complaint."[8]  In determining whether service was

valid, whether actual notice was given is "highly probative."[9]

## C. Lack of Personal Jurisdiction

"Where a defendant moves to dismiss a complaint [pursuant to Federal Rule of

Civil Procedure 12(b)(2),] for lack of personal jurisdiction, the plaintiff bears the burden

of establishing that a court has personal jurisdiction over a defendant."[10]  Where the

motion is based only upon written materials, rather than an evidentiary hearing, the

plaintiff is required only to make a prima facie showing of personal jurisdiction.[11]

Uncontroverted allegations in the complaint are taken as true, and conflicts between

parties over statements contained in affidavits are resolved in favor of the plaintiff.[12]

"Where, as here, there is no applicable federal statute governing personal

jurisdiction, the district court applies the law of the state in which the district court sits."[13]

Arizona's long-arm statute authorizes the exercise of jurisdiction to the extent permitted

by federal due process requirements.[14]  Due process requires that the defendant "have

---

[8]*Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

[9]*Homer v. Jones-Bey*, 415 F.3d 748, 758 (7th Cir. 2005).

[10]*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

[11]*Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

[12]*Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).

[13]*Fred Martin Motor Co.*, 374 F.3d at 800.

[14]*Batton v. Tenn. Farmers Mut. Ins. Co.*, 736 P.2d 2, 4 (Ariz. 1987).

certain minimum contacts with [the forum] such that the maintenance of the suit does

not offend traditional notions of fair play and substantial justice."[15]

## IV.  DISCUSSION

### A. Failure to State a Claim

Mr. Kordella moves to dismiss Mr. Mealer's complaint for failure to state a

claim.[16]  The only argument that Mr. Kordella makes in support of his position is that GM

did not assume the liabilities of its predecessor–General Motors Corporation.

Mr. Kordella incorporates the contents of GM's motion to dismiss, which was based on

that theory and which the court granted at docket 30, into his own motion.  Mr. Kordella

does not explain how the circumstances of GM's bankruptcy affect legal claims against

him personally.  Mr. Kordella cites no case law and states only that he "was included in

that claim by plaintiff."[17]  It is unclear what claim he is referring to.

Elsewhere in Mr. Kordella's motion, he states that Mr. Mealer accepted

Mr. Kordella's apology and, therefore, that "no claims can be sustained and dismissal is

proper."[18]  Mr. Kordella's theory is unclear, and he cites no case law in support of his

position.  Even though Mr. Kordella purports to have moved pursuant to Rule 12(b)(6),

the court is unable to discern any theory for consideration under that rule.\

---

[15]*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

[16]Doc. 16 at 1, 6.

[17]Doc. 16 at 4.

[18]Doc. 16 at 3.

## B. Insufficiency of Service of Process

Mr. Kordella argues that he "was not served personally" and therefore that dismissal for insufficient service is appropriate.[19]  Mr. Kordella's argument is based on Federal Rule 4(e)(2)(A), which states that "an individual . . . may be served in a judicial district of the United States by . . . delivering a copy of the summons and of the complaint to the individual personally."[20]  Mr. Mealer argues that he properly served Mr. Kordella pursuant to Arizona state law.

Mr. Kordella's reliance on Federal Rule 4(e) is technically error because "[t]he issue of the sufficiency of service of process prior to removal is strictly a state law issue."[21]  Consequently, "[i]n determining the validity of service in the state court prior to removal, a federal court must apply the law of the state under which the service was made."[22]  Even if it were an issue of federal law, Federal Rule 4(e)(1) states that service of an individual may be made "in a judicial district of the United States" by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located of where service is made."[23]  Therefore, service of process on Mr. Kordella must only have been valid under Arizona law.

---

[19]Doc. 16 at 4.

[20]Fed. R. Civ. P. 4(e)(2)(A).

[21]*Lee v. City of Beaumont*, 12 F.3d 933, 936–37 (9th Cir. 1993), *overruled on other grounds by Cal. Dep't of Water Resources v. Powerex Corp.*, 533 F.3d 1087 (9th Cir. 2008).

[22]4A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1082 (3d ed. 2010).

[23]Fed. R. Civ. P. 4(e)(1).

Under Arizona Rule of Civil Procedure 4.2(c), "[w]hen the whereabouts of a party

is known, service may be made by depositing the summons and a copy of the pleading

being served in the post office, postage prepaid, to be sent to the person to be served

by any form of mail requiring a signed and returned receipt."[24]  Mr. Mealer complied with

the requirements of Rule 4.2(c) and service was effective under Arizona law.[25]

## C. Lack of Personal Jurisdiction

The final issue is whether this court has personal jurisdiction over Mr. Kordella.

Mr. Kordella argues that he "engaged in no activities within Arizona, nor had any contact

with plaintiff in Arizona" and therefore, that this court is without jurisdiction over his

person.[26]  Mr. Mealer does not address the question of personal jurisdiction in his

response, but does advance relevant arguments in his complaint.

Mr. Mealer has not alleged contacts sufficient to support a finding of general

jurisdiction.  The only question is whether Mr. Kordella's sole alleged contact–the

allegedly defamatory blog posting–supports specific jurisdiction. Specific jurisdiction

describes personal jurisdiction over a defendant where the plaintiff asserts claims

related to the defendant's contacts with the forum. Specific jurisdiction "exists if (1) the

defendant has performed some act or consummated some transaction within the forum

or otherwise purposefully availed himself of the privileges of conducting activities in the

forum, (2) the claim arises out of or results from the defendant's forum-related activities,

---

[24]Ariz. R. Civ. P. 4.2(c).

[25]Doc. 20 at 29, 31–33, 38.

[26]Doc. 16 at 6.

-7-

and (3) the exercise of jurisdiction is reasonable."[27]  The first prong–purposeful

availment–is dispositive in the case at bar.

### 1. Mr. Kordella's Internet Posting Does Not Independently Constitute Purposeful Availment

With respect to purposeful availment in tort cases, the question is generally

"whether a defendant 'purposefully directs his activities' at the forum state" and courts

apply "an 'effects' test that focuses on the forum in which the defendant's actions were

felt, whether or not the actions themselves occurred within the forum."[28]  The effects test

was first announced by the Supreme Court in *Calder v. Jones.*[29]  The Ninth Circuit has

construed the *Calder* test to comprise three prongs: "the defendant allegedly must have

(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing

harm that the defendant knows is likely to be suffered in the forum state."[30]

Although the allegations against Mr. Kordella satisfy the first prong, the second

and third prongs are not met.  For purposes of personal jurisdiction, the relevant

intentional act is Mr. Kordella's allegedly defamatory posting on the Mealer Companies'

website.  Mr. Mealer argues that "the harm at issue in this case" took place in Arizona

and, therefore, that this court has personal jurisdiction over Mr. Kordella.[31]  However,

---

[27]*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

[28]*Id.*

[29]465 U.S. 783, 789–90 (1984).

[30]*Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006).

[31]Doc. 20 at 46.

the Ninth Circuit has "warned courts not to focus too narrowly on the test's third

prong–the effects prong."[32]  Specifically, the Ninth Circuit has "said that there must be

something more . . . [and] that something more is . . . express aiming at the forum

state."[33]

Mr. Mealer's allegations do not support a finding that Mr. Kordella expressly

aimed his commentary at Arizona.  As this district has previously recognized, "[t]he

distinction between 'express aiming' and 'foreseeability' suggests that mere knowledge

of an individual's residence, combined with intentional posting of defamatory statements

on the internet (which, taken together, makes it foreseeable an individual will be harmed

in a certain forum location) does not amount to 'express aiming.'"[34]  Mr. Kordella did

"nothing more than post a statement on a [website] hosted in Arizona."[35]  Even

assuming that Mr. Kordella knew that Mr. Mealer lived in Arizona when the posting was

made, Mr. Mealer has not sufficiently alleged that Mr. Kordella's conduct was expressly

aimed at Arizona.  Mr. Mealer's own allegations are illustrative.

Mr. Mealer alleges (and thus recognizes) that Mr. Kordella's comments were

"intentionally publish[ed] on a *global* scale."[36]  The very fact that an internet posting is

---

[32]*Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006).

[33]*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000) (internal quotations omitted).

[34]*Xcentric Venture, LLC v. Bird*, 683 F. Supp. 2d 1068, 1073 (D. Ariz. 2010).

[35]*Bobolas v. Does 1-100*, 2010 WL 3923880, at *2 n.1 (D. Ariz. Oct. 1, 2010) (expressing "concerns about whether [a court] can exercise personal jurisdiction" over defendants whose sole jurisdictional contact is an internet posting on a site hosted in the forum).

[36]Doc. 20 at 48 (emphasis added).  Mr. Mealer repeatedly emphasizes the "global" nature of the alleged defamation. *See, e.g.*, *id.* at 49, 50, 51.

immediately global belies the notion that every potentially defamatory comment on a website is "expressly aimed" at the forum in which the website's host is located.  Unless a website has unique ties to a particular forum, or the content of the offensive comment is somehow forum-specific, a blog posting of the type at issue here will seldom–if ever–constitute purposeful availment.  Because the internet is worldwide, Mr. Kordella's internet commentary lacks the "something more" that the Ninth Circuit has articulated as express aiming.

Moreover, Mr. Mealer has not adequately alleged that Mr. Kordella caused harm that he knew was likely to be suffered in Arizona.  Mr. Mealer believes that Mr. Kordella's comments intimidated numerous potential investors and ultimately kept his $200,000,000 investment stream from materializing.  Mr. Kordella could not have known that this harm was likely to be suffered in Arizona because it is simply not likely that any blog posting could cause such a response from serious investors–especially if Mr. Mealer's automobile is truly revolutionary.  Therefore, the third prong of the effects test is also not satisfied.

-10-

## V.  CONCLUSION

For the foregoing reasons, Mr. Kordella's motion at docket 16 to dismiss the

claims against him for lack of personal jurisdiction, pursuant to Federal Rule 12(b)(2), is

**GRANTED,** and the claims against Mr. Kordella are **DISMISSED**.

DATED this 16th day of November 2010.


/s/ JOHN W. SEDWICK
UNITED STATES DISTRICT JUDGE

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                        :
In re                                                   :          **Chapter 11 Case No.**
                                                        :
**MOTORS LIQUIDATION COMPANY,** *et al.,*               :          **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*        :
                                                        :
                                **Debtors.**            :          **(Jointly Administered)**
                                                        :
-------------------------------------------------------------x

<u>**ORDER GRANTING DEBTORS' OBJECTION TO**</u>
<u>**ADMINISTRATIVE CLAIM NO. 70792 FILED BY JOHN MEALER**</u>

Upon the Objection, dated February 26, 2011 (the "**Objection**")[1], of

Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated

debtors, as debtors in possession (collectively, the "**Debtors**"), pursuant to section 502(b)

of title 11, United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of the Federal

Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an order

disallowing and expunging the Mealer Claim on the grounds that the Mealer Claim fails

to state a cause of action on which relief can be granted, all as more fully described in the

Objection; and due and proper notice of the Objection having been provided, and it

appearing that no other or further notice need be provided; and the Court having found

and determined that the relief sought in the Objection is in the best interests of the

Debtors, their estates, creditors, and all parties in interest and that the legal and factual

bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such
terms in the Motion.

ORDERED that the relief requested in the Objection is granted as

provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the

Mealer Claim (Administrative Claim No. 70792) is disallowed and expunged in its

entirety; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine

all matters arising from or related to this Order.

Dated: New York, New York
      [_____], 2011

_____
United States Bankruptcy Judge