Hearing Date and Time: March 1, 2011
Objection Deadline: February 26, 2011 (4:00 p.m. EST)

Samuel J. Behringer, Jr.
Attorney at Law
333 McKinley Avenue
Grosse Pointe Farms, MI 48236-3420
Telephone: (313) 885-1948
Facsimile: (313) 886-6443

Attorney for Richard Zmierski
83rd Omnibus Objection Respondent #23974

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____x
                              :
In Re                         :    Chapter 11 Case
                              :
**MOTORS LIQUIDATION COMPANY**, et al., :    09-50026 (REG)
    f/k/a General Motors Corp., et al. :
                              :
        Debtors.              :    (Jointly Administered)
                              :
_____x

CALVIN PURNELL RESPONSE AND OBJECTIONS
TO DEBTORS' 182nd OMNIBUS OBJECTION TO CLAIMS

Richard Zmierski, through his undersigned attorney, states the following response and

objections to the Debtors' 182nd Omnibus Objection to Claims.

First Affirmative Defense
**ILLUSORY ASSUMPTION**

Contrary to the Debtors' assertions in Section (i) of Paragraph 2 and other places in their

motion, the **New GM** does not recognize or pay all or any portion of the past, present or future

lifetime health and life insurance retirement benefits of Richard Zmierski and his wife.

Second Affirmative Defense
**ALL BENEFITS VESTED PRE-BANKRUPTCY**

All health and insurance retirement rights due to Mr. Richard Zmierski and his wife were fully vested before his employment ended and before June 1, 2009 when the Debtors filed their instant Chapter 11 bankruptcy proceeding.  Mr. Richard Zmierski thus cannot be defined as a person with "alleged rights which were in reality unvested (or) are otherwise not the responsibility of the Debtors as purportedly "determined" and asserted by the Debtors in Section (ii) of Paragraph 2.

Third Affirmative Defense
**A PROHIBITED MODIFICATION/TERMINATION HAS OCCURRED**

The Debtors' reliance on a general reservation of an alleged right to terminate or modify "programs" is ambiguous and does not found any right to terminate or modify any specific individual retiree benefits".  Here, the Debtors modified Mr. Zmierski's benefits by terminating his specific lifetime health insurance and by also reducing the amount of his specific employer provided life insurance from the amount of his salary to $10,000[1] while maintaining the "program".

Third Affirmative Defense
**RIGHT TO PRE-MODIFICATION CONFERRENCE DENIED**

---

[1]    Mr. Purnell acknowledges Co-pay responsibility existed, typically @$121 for the health insurance, @$18.00 for the dental and @$6.00 for the vision.

Moreover, before the Debtors unilaterally made these modifications, the Debtors and this retiree's authorized representative (which is this retiree because he is not a union member) have <u>never</u> "conferred in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits" as required by 11 USC 1114(f)(2). This plain language of the statute must control as it existed before GM prepared the July 1, 2001 retirement offer agreement and has never been knowingly waived by this retiree.

<u>Fourth Affirmative Defense</u>
**PARAGRAPH AVERMENTS**

Mr. Zmierski states the following responses and objections to the individual paragraph averments stated in the August 20, 2010 Debtors' Eighty-Third Omnibus Objection to Claims.

<u>**Relief Requested**</u>[2]

1.       Because Mr. Zmierski cannot be defined as a person with "liabilities that have been assumed by General Motors, LLC (**'New GM'**)" pursuant to the **Master Purchase Agreement** as asserted by the Debtor in Section <u>(i)</u> of Paragraph 2 and because he also cannot be defined as a person with "alleged rights which were in realty unvested (or) are otherwise not the responsibility of the Debtors as asserted by the Debtors in Section <u>(ii)</u> of Paragraph 2, the purportedly "determined" two alternating basis for the 182nd Omnibus Objection to Claims do not apply to him.

---

[2]    The Debtors' subtitles are inserted solely to facilitate reference and are not admissions of fact or conclusions of law.

2. Mr. Zmierski denies accuracy of the Debtors' alleged "determination" that his claim should be disallowed and expunged for reason:

A. He cannot be defined as a person with "liabilities that have been assumed by General Motors, LLC ('**New GM**')" pursuant to the **Master Purchase Agreement** as asserted by the Debtor in Section (i) of Paragraph 2 because the **New GM** has refused since February 20, 2009 to recognize and/or pay any of his past, present and future lifetime health and insurance retirement benefits.

B. Mr. Purnell cannot be defined as a person with "alleged rights which were in realty unvested (or) are otherwise not the responsibility of the Debtors as asserted by the Debtors in Section (ii) of Paragraph 2 because his rights were fully vested before the termination/elimination of his job and before the June 1, 2009 filing of the Debtor's instant Chapter 11 proceeding.

Further responding to the allegations in Paragraph 2, the last sentence averments are false because **New GM** has refused since February 20, 2009 to recognize and/or pay any of Mr. Richard Zmierski 's past, present and future lifetime health and insurance retirement benefits.

### Jurisdiction

3. The allegations in Paragraph 3 are admitted.

### Background

4.       Mr. Zmierski began his employment at General Motors as a skilled trades employee.  He later accepted a salaried position because of the better benefits and retirement.  Upon completion of thirty years employment, his benefits and retirement became fully vested.

In 2001 the original General Motors ("**Initial Debtors**"), in one of a series of **Initial Debtors'** initiated group retirement programs targeted to the upper end of the pay scale and persons over 52 years of age, solicited Mr. Zmierski to give up his job in exchange for the promise of negotiated lifetime health and insurance retirement benefits, to wit; lifetime health insurance for himself and his wife (plus retirement payments and salary-rate life insurance). Mr. Zmierski accepted the offer.   A retirement offer agreement was prepared by the **Initial Debtors** and it was signed by both parties.  Mr. Zmierski was not involuntarily terminated and the salaried plan was neither amended nor terminated to provide him this lifetime benefit. The **New GM** did not exist at this point in time.   Mr. Zmierski subsequently retired from the **Initial Debtors**.

When Mr. Zmierski became 65, the Debtors modified his retirement benefits by terminating his lifetime health insurance and by also reducing the amount of his employer provided life insurance from the amount of his salary to $10,000.  The Debtors never sought to confer with him "in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits as required by 11 USC 1114(f)(2).

Employees, the Tuition Assistance Programs for Salaried Employees in the United States, supplemental life and personal liability insurance under the General Motors Supplemental Life Benefits Program for Executive Employees and the Personal Umbrella Liability Insurance Program from their definition of **Benefit Plans** and **Welfare Benefits**.

the **New GM** has <u>not</u> recognized or paid any portion of the past, present or future health and life insurance benefits of Mr. Zmierski and his wife. The allegations in Paragraph 8 are therefore denied for reason they are incorrect conclusions of fact and law.

### Benefit Modification Claims Should Be Disallowed
### As Debtors Had Right to Amend or Terminate Each Benefit Plan

9.  By the plain language of bankruptcy statute, the Debtors did not have the right to unilaterally modify Mr. Purnell's retirement benefits. The retirement agreement only preserved a right to terminate or modify the entire program, there is no reservation of any right to terminate or modify the benefits of any individual. Any ambiguity is this regad must be interpreted against the author of the document. The Debtors' modification of Mr. Zmierski 's individual lifetime health and insurance retirement benefits is thus contrary to bankruptcy statute and illegal. Moreover, before these modifications were made, the Debtors never sought to "confer in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits" as required by 11 USC 1114(f)(2) with this retiree's authorized representative (which is this retiree because he is not a union member). The allegations in Paragraph 9 are therefore denied for reason they are incorrect conclusions of fact and law.

10. Mr. Zmierski became fully vested. No vesting issue was noticed in the **Initial GM** prepared July 1, 2001 retirement offer agreement. The contention that "to vest benefits is to render then unalterable" is admitted. The ambiguity between Mr. Purnell's

vested retirement rights, which GM did not mention, and GM's purported modification/termination reservation [compromised by the 11 USC 1114(f)(2) mandatory good faith conference] works against the Debtors because the Debtors prepared it.

11. It is admitted that the Sixth Circuit and courts in other Circuits have recognized that once benefits are vested, it renders them unalterable. In this case, the Debtors, not Mr. Zmierski, prepared the retirement offer agreement and that document and specifically its modification/termination reservation is subject to the 11 USC 1114(f)(2) mandatory good faith conference requirement which the Debtors have entirely ignored.

12. Here, again (footnote 1), the Debtors write without regard to (i) the retirement offer agreement (having omitted it from their defined terms "Benefit Plans" and "Welfare Benefits" in Paragraph 2 and having also omitted it from their defined terms "Benefit Modification Claims" and "Accrued Benefits Claims" in Paragraph 7) and (ii) the 11 USC 1114(f)(2) mandatory good faith conference requirement. The plain language of the statute applies equally in all cases regardless of the Debtors' size or stature. The fact that Mr. Zmierski is an individual is meaningless, 11 USC 1114(f)(2) mandates a good faith conference requirement which the Debtors have ignored and which never occurred. The allegations in Paragraph 12 are therefore denied for reason they are incorrect conclusions of fact and law.

As in the July 13, 2010 IUE-CWA v. Visteon Corp. (In re Visteon Corp.) decision, No. 10-1944, 2010 WL 2735714 (3rd Cir. July 13, 2010), Mr. Zmierski contends that section 1114 is unambiguous and "clearly applies to any and all retiree benefits" even though a number of other courts (e.g. In re New Valley Corp., In re Delphi Corp., In re Doskocil Cos., LTV Steel Co.) hold to the contrary.    But see, In re Ames Dep't Stores, Inc., Nos. 92 Civ 6145-46, 1992 WL 373492 (S.D.N.Y. November 30, 1992); In re Farmland Indus., Inc., 294 B.R. 903 (Bankr. W.D. Mo. 2003).    Nevertheless, the Third Circuit was convinced that the aforementioned courts had "mistakenly relied on their own views about sensible policy, rather than on the congressional policy choice reflected in the unambiguous language of the statute."    In re Visteon, 2010 WL 2735715, at *7.

In reaching its conclusion, the Third Circuit relied on three significant factors.    First, it noted Congress has explicitly excluded certain benefits from the scope of section 1114 (e.g. "benefits provided for purposes other than health, accident, disability or death; or to benefits provided to high-income retirees able to obtain comparable coverage; or to benefits contemplated, but not maintained or established, prior to the debtor's filing for bankruptcy). Congress did not limit section 1114's otherwise broad scope based on whether or not the debtor reserved a right to terminate in its retirement plans.    In re Visteon, *Id.* at *8.    The court reasoned that had Congress intended to exclude retiree benefit plans that contain a unilateral right to terminate benefits from the protections afforded by section 1114, Congress would have done so specifically.

Second, the *Visteon* court also relied on the 2005 addition of subparagraph (l) to section 1114 to support its conclusion[4]. Section 1114(l) provides that "[i]f the debtor, during the 180-day period ending on the date of the filing of the petition - (1) modified benefits; and (2) was insolvent on the date such benefits were modified; the court ... shall issue an order reinstating as of the date the modification was made, such benefits as in effect immediately before such date unless the court finds that the balance of the equities clearly favors such modifications. 11 USC 1114(l). It was reasoned that if section 1114 were construed to exclude retiree benefits plans with a unilateral right to terminate, then section 1114(l) "would be virtually meaningless ...[because] [o]utside of the bankruptcy context, an employer is already prohibited by various laws, including ERISA, the Labor-Management Relations Act of 1947, codified in various sections of 29 U.S.C., and the basic principles of contract law, from modifying those benefits it is obligated to provide. Subsection (l) therefore has meaning only if it adds something new, namely, the protection of benefits a would-be debtors could otherwise terminate at will. In Re Visteon, *Id*. at *13.

Third, the *Visteon* court noted that unless a statute "produces a result demonstrably at odds with the intentions of its drafters...or an outcome so bizarre that Congress could not have intended it," the court's responsibility is to adhere to the plain meaning of the statute[5]. It was concluded (having determined both that the statute was unambiguous and that it was not at odds with congressional intent[6]) that its reading of section 1114, even though it would enhance

---

[4] Subsection 1114(l) was enacted pursuant to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-08, 119 Stat. 23.
[5] In re Visteon, *Id*. at *14 quoting Mitchell v. Horn, 318 F3d 523, 525 (3rd Cir. 2003).

a retiree's rights in the context of a chapter 11 case, was not within the realm of being "demonstrably at odds with the intention of its drafters" nor "so bizarre that Congress could not have intended it." In reaching its conclusion, the <u>Vesteon</u> court acknowledged the generally accepted position that "prepetition contract rights and property interests should not be analyzed differently or enhanced simply because an interested party is involved in a bankruptcy case[7].

13. The three judge dissent in <u>Sprague</u> v. <u>General Motors</u>, 133 F.3d 388 (6th Cir. 1998) pointed out specifically that General Motors failed to reserve modification/ termination rights in its "Your GM Benefits" brochures in effect from 1974 to 1985 and went on to state:

> "In addition, when General Motors did reserve its rights, this reservation was less than clear... The issue of the reasonableness of the general retirees' reliance should have been remanded to the district court. The reliance of those who retired from 1974 to 1985 appears eminently justified."

133 F.3d 388, 414. The Debtors insistence that the modification/termination clauses were sufficiently disclosed is belied by the fact that retirees could sign the GM prepared form and give up their jobs only to have GM turn around on the next day and unilaterally terminate the

---

[6] The court reached this conclusion notwithstanding the debtor's argument that because "[i]n 2007, bills were introduced in both houses of Congress which would have added a clause stating that section 1114's <u>protections</u> apply 'whether or not the debtor asserts a right to unilaterally modify such payments under such plan, fund or program' [and] [n]either bill was enacted...that Congress' consideration and rejection of these amendments indicates both that section 1114 does not apply to benefits that are terminable at will, and that Congress concluded that extending protection to such benefits was unwise. <u>In re Visteon</u>, 2010 WL 2735715, at *18 (citations omitted).

[7] *In re Visteon*, Id. at *19 9 quoting Brief of Debtors-Appelees at 33, *In Re Visteon.*, No. 10-1944, 2010 WL 2735715 (3rd Cir. July 13, 2010) (quoting *In re Delphi Corp.*, No. 05-44481, 2009 WL 637315, at *2 (Bankr. S.D.N.Y. Mar. 10, 2009).

benefits thereby relieving the Debtors of at least two, if not more, lifetime health and life insurance liabilities. Mr. Zmierski negotiated <u>individual benefits</u>, the Debtors' reserved the right to terminate the <u>entire program</u>, two different objects.  Mr. Zmierski thought wrongfully he had negotiated lifetime health and life insurance retirement benefits, while, in fact, he was lucky to get eight years.  For the reasons of fact and law stated here and in Paragraph 12 above, the allegations in Paragraph 13 are denied as being incorrect conclusions of fact and law.

       14.     The allegations in Paragraph 14 are denied for reason that the <u>Sprague</u> decision, supra, is not unanimous and because Mr. Zmierski and other members of the 182nd ominbus objection join with the dissent which, in their collective opinions, found vested rights, estoppel, improper class certification and breach of fiduciary duties.  Mr. Zmierski also believes age discrimination has occurred.   The retirees, then and now, are owed the right of vested employees in promised future lifetime health and life insurance benefits and cannot and should not be summarily written off as people with "...*alleged* rights to benefits *which were in reality unvested*, and as described herein, are otherwise not the responsibility of the Debtors" as is done now in Paragraph 2 of the omnibus objection.   If there was any truth in GM's documents, GM should have previously described every retiree as a person with "...*alleged* rights to benefits *which were in reality unvested*, and as described herein, are otherwise not the responsibility of the Debtors" so Mr. Zmierski would have had notice of how he would be treated/classified now and in the future.

15.	The allegations in Paragraph 15 are denied for reason that the retirement offer agreements do <u>not</u> "clearly" reserve or describe the Debtors modification/termination claims as specifically alleged in Paragraph 15 above.   The three judge dissent in <u>Sprague</u> v. <u>General Motors</u>, stated:

> "In addition, when General Motors did reserve its rights, this reservation was less than clear...   The issue of the reasonableness of the general retirees' reliance should have been remanded to the district court.  The reliance of those who retired from 1974 to 1985 appears eminently justified."

133 F.3d 388, 414.   If this claim was so clearly reserved why didn't the Debtor's describe the retirees (such as Mr. Zmierski) as persons with "...*alleged* rights to benefits *which were in reality unvested*, and as described herein, are otherwise not the responsibility of the Debtors" in the retirement offer agreements as GM now does in its omnibus objections?   And, it must be noted that the Debtors have nevertheless have totally ignored the good faith concurrence requirement of 11 USC 1114(f)(2).

16.	It is admitted only that the Debtors' right to terminate or modify Mr. Zmierski 's health and life insurance retirement benefits are required to exercised in compliance with 11 USC 1114, which this Debtor did not comply with. <u>In Re Visteon Corp</u>., No. 10-1944, 2010 WL 2735715 (3rd Cir. July 13, 2010), along with the dissent in <u>Sprague</u>, supra, is persuasive and should be followed.

17.	The allegations in Paragraph 17 are denied for reason they are incorrect conclusions of fact and law.

### The Debtors Have No Liability for the
### Salaried and Executive Employee Welfare Benefits Claims

18.     The allegations in Paragraph 18 are denied for reason they are incorrect conclusions of fact and law.

### The Relief Requested Should be Approved by the Court

19.     The allegations in Paragraph 19 are denied for reason they are incorrect conclusions of fact and law.

20.     The allegations in Paragraph 20 are denied for reason they are incorrect conclusions of fact and law.

### Notice

21.     The allegations in Paragraph 21 are admitted.

22.     The allegations in Paragraph 22 are admitted.

### MR. PURNELL'S CONCLUSION

Mr. Zmierski's and his wife's lifetime health and life insurance retirement benefits fully vested.   The retirement offer agreement, entirely written  by the **Debtors**, induced Mr. Zmierski to give up his job in exchange for lifetime health insurance benefits and salary-rate life insurance for Mr. Zmierski and his wife.   The **Debtors** now refuse to pay the

lifetime health insurance benefits and also refuse to provide salary rate life insurance as required by the retirement offer agreement and seek to avoid same by this 11 USC 502 motion.

In Paragraph 2, the **Debtors** write they have "determined" that the Proofs of Claim which this 182nd Omnibus Objection addresses "assert claims that ...**(i)** relate to liabilities that have been assumed by the ... **New GM** pursuant to the terms of ... the **Master Purchase Agreement**..."   The last sentence of Paragraph 2 repeats this definition (i) "determination". However, nothing could be further from the truth.   The **New GM** has <u>not</u> assumed and does not and will not pay the lifetime health insurance and life insurance benefits called for in the Debtors' prepared retirement offer agreement.   Mr. Zmierski is therefore not within this element of the Debtors' defination (i) "determination".

In Paragraph 2, the **Debtors** also write they have "determined" that the Proofs of Claim which this 182nd Omnibus Objection addresses "assert claims that ...**(ii)** relate to alleged rights to benefits <u>which were in reality unvested</u>, and as described herein, are otherwise not the responsibility of the Debtors (emphasis added)."   Well, as pointed out above, it is irrefutable that Mr. Zmierski 's retirement and benefit rights <u>fully vested</u> years before the Commencement Date of this Chapter 11 bankruptcy. Mr. Zmierski is therefore not within this element of the Debtors' defination (ii) "determination".

The plain and simple truth is that the Debtors have failed to establish that Mr.

Zmierski 's claim is within the defination (i) and (ii) "determination" the Debtors' have set up to seek to strike the claim of Mr. Zmierski and the other creditors involved in the 182nd Omnibus Objection. Since the Debtors' (i) and (ii) premises for Mr. Zmierski 's inclusion in the 182nd Omnibus Objection are not factually true, the Debtors' motion brought pursuant to 11 USC 502 must fail. The New GM does **not** recognize the retirement offer agreement. Mr. Zmierski 's became fully vested before the Commencement Date.

**WHEREFORE,** Respondent Richard Zmierski demands the following relief in consequence of his response and objections to the Debtors' 182nd Omnibus Objection to Claims:

A.  The 182nd Omnibus Objection be denied as to him with prejudice against the Debtors.

B.  An order be entered immediately which reinstates as of the date the modification was made to the present all health and life insurance benefits which were terminated and which directs the payments to continue for the duration of this Chapter 11 proceeding.

C.  The Debtors pay all attorney fees paid or incurred on his behalf to correct the unlawful termination of his benefits and for any and all related costs, fees and expenses.

D.  For such other and further relief as is just or appropriate.

17

/s/ Samuel J. Behringer, Jr.

**Samuel J. Behringer, Jr.**
**Attorney at Law**
**333 McKinley Avenue**
**Grosse Pointe Farms, MI 48236-3420**
**Telephone: (313) 885-1948**
**Facsimile: (313) 886-6443**
**February 29, 2011**

**Attorney for Richard Zmierski**
**83rd Omnibus Objection Respondent #23974**