Hearing Date and Time: March 3, 2011 at 9:45 a.m. (ET)

Kevin C. Murphy
The Wladis Law Firm, P.C.
P.O. Box 245
Syracuse, NY 13214
Telephone: (315) 445-1700

-and-

Luis A. Mendez
Senior Assistant County Attorney
Department of Law
Onondaga County, New York
John H. Mulroy Civic Center, 19th Floor
421 Montgomery Street
Syracuse, New York 13202
Telephone: (315)435-2170

Attorneys for Onondaga County, New York

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | |
| | **Chapter 11** |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | |
|     **f/k/a General Motors Corp.,** *et al.,* | **Case No. 09-50026 (REG)** |
| | |
|                     **Debtors.** | **Jointly Administered** |

## ONONDAGA COUNTY, NEW YORK'S RESPONSE TO THE UNITED STATES' MEMORANDA OF LAW STATEMENT IN SUPPORT OF THE PROPOSED ENVIRONMENTAL TRUST SETTLEMENT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................ii

PRELIMINARY STATEMENT ................................................... 1

FACTS ............................................................................... 2

ARGUMENT .......................................................................... 3

    I.   The Proposed Settlement is neither Fair nor Reasonable and it fails to Protect the Public Health and the Environment ............................................................. 3

    II. Pursuant to CERCLA and RCRA, the IFG Facility and Ley Creek are a Single Site ................................................. 4

        A. CERCLA ............................................................. 4

        B. RCRA.................................................................. 4

        C. Analysis............................................................. 6

    III. The Settlement is not Reasonable as it does not provide for an Efficacious Cleanup or Adequately Compensate the Public for the Cost of that Cleanup............................... 8

    IV. The Settlement is not Fair as it Lacks Accountability, is not Based on Comparative Fault and the Explanation for Its Structure is not Plausible ....................................... 10

    V.  There is no Rational Basis to Treat Upper Ley Creek differently than Lower Ley Creek (and Old Ley Creek).... 10

        A. Regulatory Oversight is not a Legitimate Basis to Treat Upper Ley Creek and Lower Let Creek differently for Environmental Response................. 11

        B. The Debtors' Bankruptcy Filing should not be Permitted to Act as a Means by which to Avoid Funding the Cleanup of Lower Ley Creek............... 12

CONCLUSION ...................................................................... 15

## TABLE OF AUTHORITIES

**CASES**

Chateaugay Corporation,
     944 F.2d 997 (2d Cir. 1991) ...................................................... 14

Deadham Water Co. v. Cumberland Farms Dairy, Inc.,
     805 F.2d 1074, 1081 (1st Cir. 1986) ............................................... 3

Matter of Mark IV Industries
     438 B. R. 460, 468 (S.D.N.Y. 2010) ...................................... 14, 15

United States v. Cannons Engineering Corp.,
     899 F.2d 79, 91 [1st Cir. 1990] ...................................................... 3

United States v. Carrols Development Corp.,
     454 F.Supp. 1215, 1222 (N.D.N.Y. 1978)..................................... 3

United States v. Charles George Trucking,
     34 F.3d 1081 (1st Cir. 1994) ............................................... 3, 8, 10

United States v. Conservation Chemical Co.,
     619 F.Supp.162, 185 (W.D.Mo.1985)............................................ 4

United States v. Gillette Company,
     406 F.Supp. 713, 716[D.Mass.1975] ............................................ 3

United States v. Town of Moreau,
     751 F. Supp 1044 (N.D.N.Y. 1990) ............................................. 11

**STATUTES & RULES**

CERCLA....................................................................................Passim

RCRA ......................................................................................Passim

**MISCELLANEOUS**

Conference Report on the Hazardous and Solid Waste Amendments of
1984,
     98 STAT. 3221 ..........................................................................5

The County of Onondaga, State of New York (the "County" or "Onondaga County"), by and through its undersigned counsel, submits this Response (the "Response") to the Memoranda of Law submitted by the United States on or about February 18, 2011, which requested this Court's approval and entry of the Environmental Response Trust Settlement (the "Settlement") and concurred in the Debtors' Motion for Confirmation of the Debtors' Amended Chapter 11 Plan (the "Plan").

## Preliminary Statement

The Debtors' former Inland Fisher Guide ("IFG") Facility located in the Town of Salina, Onondaga County, New York discharged or released and continues to discharge PCBs into the adjacent Ley Creek. The discharges have gone on for approximately 60 years and resulted in four plus miles of polychlorinated biphenyl ("PCB") contaminated Creek.

The proposed Environmental Response Trust (the "Trust") would require the Debtor to contribute $31.1 million towards the environmental response required at the Debtors' "IFG" Facility and approximately the first two miles of the Creek. The Trust does not require the Debtors to contribute to the environmental response required for the remainder of the Creek, neither the current or old creek bed. That the Trust requires the Debtor to contribute towards the environmental response for the first two miles, but does not require the Debtor to contribute towards the environmental response for the remainder of the Creek, is nothing but arbitrary.

As such, the County submits that pursuant to the applicable environmental statutes, to wit: the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) and the Resource Conservation and Recovery Act (RCRA), the proposed settlement cannot be approved.

Further, and for the same reasons, pursuant to the Bankruptcy Code, the Plan cannot be confirmed.

## Facts

The legal and factual background underpinning the County's Claims and Objections have been exhaustively detailed in the following:

- Onondaga County's November 24, 2009 Proof of Claims;

- Onondaga County's October 10, 2010 Objections to the Proposed Disclosure Statement;

- Onondaga County's November 24,2 010 and December 15, 2010 Comments to the United States Department of Justice (USDOJ) concerning the proposed Settlement;

- Onondaga County's January 19, 2011 Comments to the USDOJ concerning the proposed Priority Order Settlements;

- Onondaga County's February 11, 2011 Objection to Confirmation of Debtors' Proposed Plan; and

- Onondaga County's February 22, 2011 Objection to the Debtors' Motion for an Order Estimating Reserves.

Pursuant to this Court's Order of February 24, 2011, these matters will not be restated.

### Argument

**I.    The Proposed Settlement is neither Fair nor Reasonable and it fails to Protect the Public Health and the Environment.**

Before it can be approved by the Court pursuant to sections 113(f) and 122(c)(1) of CERCLA, 42 U.S.C. §§ 9613(f) and 9622(c)(1), a proposed CERCLA consent decree must be determined to be fair, reasonable, and consistent with the purposes of CERCLA, which was designed "to protect and preserve public health and the environment." *Deadham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986). Among the overarching goals of CERCLA are "accountability, the desirability of an unsullied environment, and promptness of response activities." *United States v. Charles George Trucking*, 34 F.3d 1081 (1st Cir. 1994) (Quoting *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 91 [1st Cir. 1990]). Thus, the intent of CERCLA is to encourage settlements as well as reduce the time and expense of enforcement litigation, because enforcement litigation does little more than divert money away from cleanup and restoration.

As summarized in *United States v. Carrols Development Corp.*, 454 F.Supp. 1215, 1222 (N.D.N.Y. 1978):

> It is not the Court's function to determine whether this is the best possible settlement that could have been obtained but rather the Court's duty is to determine "whether the settlement is within the reaches of the public interest."

(quoting *United States v. Gillette Company,* 406 F.Supp. 713, 716 [D.Mass.1975]).

The County submits the Settlement is neither reasonable nor fair, and that it is not within the public interest. The Settlement lacks accountability. It fails to promote a prompt response. Finally, it is contrary to the applicable environmental law.

## II. Pursuant to CERCLA and RCRA, the IFG Facility and Ley Creek are a Single Site.

### A. CERCLA

Section 101(9) of CERCLA defines "facility" to include any "site or area where a hazardous substance has been deposited, stored, disposed of, or placed, or [has] otherwise come to be located." 42 U.S.C. § 9601(9); *see also* 42 U.S.C. 6903(29)(c), broadly defining the term "facility" pursuant to RCRA; *accord* 40 CFR Part 260.10. The definition is intended to be expansive. "Simply put, the term 'facility' includes every place where hazardous substances come to be located." *United States v. Conservation Chemical Co.,* 619 F.Supp.162, 185 (W.D.Mo.1985). Therefore, CERCLA dictates that the Debtors' IFG CERCLA "facility" is *both* the location of the former IFG plant *and* any portion of Ley Creek where Debtors' PCBs have come to be located. As set forth immediately below, RCRA requires the same conclusion.

### B. RCRA

As with CERCLA, the statutory underpinnings of RCRA are intended to assure that corrective action obligations are sufficiently broad so as to assure that RCRA facility owners/operators promptly address migration of hazardous wastes released into the environment. The legality of the proposed Settlement is called into doubt by the statutory history of the very legislation to which the

Settlement is attempting to adhere. In the Conference Report on the

Hazardous and Solid Waste Amendments of 1984, 98 STAT. 3221 (which

amended RCRA), we find the following language:

> SECTION 207-- CORRECTIVE ACTION BEYOND
> FACILITY BOUNDARIES; UNDERGROUND TANKS
>
> *14 CONFERENCE SUBSTITUTE. -- THE CONFERENCE
> SUBSTITUTE ADOPTS THE HOUSE PROVISION. THIS
> PROVISION OVERTURNS A POLICY OF THE
> ENVIRONMENTAL PROTECTION AGENCY WHICH
> LIMITED THE SCOPE OF CORRECTIVE ACTION TO
> THE PROPERTY OF THE POLLUTING FACILITY. SINCE
> MOST FORMS OF POLLUTION, PARTICULARLY
> GROUNDWATER CONTAMINATION, DO NOT OBSERVE
> TERRITORIAL OR PROPERTY BOUNDARIES, SUCH A
> RESTRICTION HAS NO BASIS IN LOGIC. THE
> PROVISION THEREFORE REQUIRES EPA TO AMEND
> THE APPLICATION REGULATION TO ASSURE THAT
> CORRECTIVE ACTION BEYOND A FACILITY
> BOUNDARY WILL BE REQUIRED WHERE
> APPROPRIATE.

H.R. CONF. REP. 98-1133, H.R. Conf. Rep. No. 1133, 98TH Cong., 2nd Sess.

1984, 1984 U.S.C.C.A.N. 5649, 1984 WL 37531 (Leg. Hist added). This Report

indicates that RCRA was amended precisely to preclude the outcome proposed

by the Trust here: the arbitrary "drawing of a line" for environmental response

at the location of the Route 11 bridge crossing. There is "no basis in logic" to

require the Debtors to fund the cleanup up to the bridge but not beyond the

bridge, as Debtors' PCB contamination did "not observe territorial or property

boundaries" or suddenly stop moving downstream because of a bridge that did

nothing to impede downstream contamination.

## C.    Analysis

It is necessary, at this point, to recall the relevant geography.  In the simplest of terms, Ley Creek in Onondaga County flows downstream from the IFG Facility to Onondaga Lake.  At one point Route 11 crosses Ley Creek via a bridge.  The portion of the Creek between the IFG Facility and the Route 11 bridge is referred to as "Upper Ley Creek," and the portion of the Creek between the Route 11 bridge and Onondaga Lake is referred to as "Lower Ley Creek."  The distinction between Upper Ley Creek and Lower Ley Creek becomes is vital.

The United States does recognize – because it must – that the contamination of Upper Ley Creek "stems from the adjacent current or formerly Debtor-owned properties [the IFG Facility]" and that the Debtors are "essentially the sole PRPs [Potentially Responsible Party] in connection with the hazardous substance at issue" (United States Memorandum of Law in Support of Approval of the Environmental Trust Settlement at 12).  It is a 1997 Order on Consent between the Debtors and the New York State Department of Environmental Conservation that serves as the basis for the IFG Facility and Upper Ley Creek's classifications as "owned properties" for which the Debtors are responsible for environmental remediation under the Trust.  In relevant part, the Consent Order states:

> The confirmed presence of these hazardous substances at GM's facility and the proximity of such substances and discharge of PCBs to Ley Creek establishes that the hazardous substance contamination at the GM facility represents a release or threat of release of hazardous substances to the

Onondaga Lake NPL Site pursuant to 104 and 107 of CERCLA. GM's facility is a subsite of the Onondaga Lake NPL site."

Contemporaneously with the Consent Order, EPA identified the IFG Facility as a subsite of the Onondaga Lake Superfund site. The basis for this determination was that polychlorinated biphenyl ("PCB") contamination was migrating or being transported from the IFG Facility via Ley Creek into Onondaga Lake.

EPA's July 22, 2010 Onondaga Lake NPL Subsite Evaluation for Lower Ley Creek substantiates the findings in the 1997 Order. The listing of the IFG Facility and Ley Creek as Onondaga Lake subsites occurred because "the majority of the contamination in Lower Ley Creek sediment has come from various sources and/or *facilities upstream and on Ley Creek, including the former General Motors Corporation – Inland Fisher Guide Facility*" (emphasis added). Notably, this July 22, 2010 Subsite Evaluation did not identify any other alleged source of the Lower Ley Creek contamination. We are left, then, with one inescapable conclusion: the Debtors' contamination at and releases and discharges from the IFG Facility is what caused the contamination of *both* Upper *and* Lower Ley Creek (including Old Ley Creek).

Under these circumstances there is simply no basis in law or in fact for distinguishing between the Debtors' obligation to fund the necessary environmental response of Ley Creek between the IFG Facility and one side of the Route 11 bridge (Upper Ley Creek) and the Debtors' obligation to fund the equally necessary environmental response of Ley Creek from the Route 11

bridge to Onondaga Lake (Lower Ley Creek and Old Ley Creek). The Debtors are responsible for the contamination of the *entirety* of Ley Creek, and there is no rational reason for quite literally cutting off the Debtors' liability in an arbitrarily imposed location (the Route 11 bridge). Doing so is in direct conflict with CERCLA and the specific direction of Congress when amending RCRA. Any suggestion to the contrary "has no basis in logic."

III. **The Settlement is not Reasonable as it does not provide for an Efficacious Cleanup or Adequately Compensate the Public for the Cost of that Cleanup.**

In its Memorandum of Law, the United States relies on *Charles George Trucking*, 34 F.3d 1081 (1st Cir. 1994). The Court in *Charles George Trucking* instructed as follows:

> A CERCLA consent decree is reasonable when it provides for an efficacious cleanup, and at the same time adequately compensates the public for the cost of that cleanup. Efficacy is not merely a function of how close a settlement comes to meeting a scientifically defined ideal, nor is adequacy merely a function of how close a settlement comes to meeting an estimate of projected costs. These are, rather, pragmatic concepts, and evaluating them requires common sense, practical wisdom, and a dispassionate assessment of the attendant circumstances.

*Id.* at 1085, internal citations omitted.

Onondaga County submits that the very authority relied upon by the United States, and cited directly above, actually supports the *County's* contentions, and not those of the United States. The Settlement is (i) devoid of common sense and practical wisdom; (ii) it fails to comply with the dictates of

CERCLA; and (iii) it fails to comply with the intent of and instructions from Congress with respect to RCRA. The result is a proposed Settlement that utterly fails to adequately compensate the public for the cost of environmental cleanup necessitated by Debtors' release of PCBs into the environment over the course of 60 years.

The proposal also fails to provide for a prompt response to the Lower Ley Creek contamination. The Debtors have clearly been identified as the source of PCB contamination, and the Debtors themselves admitted in the 1997 Order on Consent that the release of PCBs from the IFG Facility constituted a release or a threat of release to Onondaga Lake. The only feasibly way for the PCBs to travel from the IFG Facility to Onondaga Lake is via Ley Creek – the *entirety* of Ley Creek. The PCBs did not and do not travel from the IFG Facility via Ley Creek and then suddenly stop once they reach the Route 11 Bridge, before magically appearing in the Lake. Contaminants simply cannot travel from the IFG Facility to Onondaga Lake without passing through Upper Ley Creek *and* Lower Ley Creek.

No other party besides the Debtor has been found responsible for, and no other party has volunteered to investigate, Lower Ley Creek. Unless circumstances change it will necessarily be EPA or the State of New York that will need to respond and fund any environmental response necessary in that area. Neither scenario will result in a prompt response and either scenario may result in costly litigation.

**IV.    The Settlement is not Fair as it Lacks Accountability, is not Based on Comparative Fault and the Explanation for Its Structure is not Plausible**

The Court in *Charles George Trucking* goes on to instruct as follows:

> Substantive fairness introduces into the equation concepts of corrective justice and accountability: a party should bear the cost of the harm for which it is legally responsible. The logic behind these concepts dictates that settlement terms must be based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability among the settling parties according to rational (if necessarily imprecise) estimates of how much harm each PRP has done.... Whatever formula or scheme EPA advances for measuring comparative fault and allocating liability should be upheld so long as the agency supplies a plausible explanation for it, welding some reasonable linkage between the factors it includes in its formula or scheme and the proportionate shares of the settling PRPs.

*Id.* at 1087. This Settlement utterly fails to provide the "corrective justice and accountability" required under *Charles George Trucking*. There is no plausible explanation as to why the Debtor has been required to fund the required Upper Ley Creek environmental response, but not the equally necessary and equally attributable to the Debtor Lower Ley Creek environmental response.

**V.    There is no Rational Basis to Treat Upper Ley Creek differently than Lower Ley Creek (and Old Ley Creek).**

The United States and the Debtors suggest that Upper Ley Creek and Lower Ley Creek may be treated differently for any number of different reasons. For the reasons set forth below, Onondaga County strenuously disagrees with

these suggestions.  There is no basis to treat Upper Ley Creek differently than Lower Ley Creek under the circumstances.

**A.    Regulatory Oversight is not a Legitimate Basis to Treat Upper Ley Creek and Lower Ley Creek differently for Environmental Response.**

The United States and the Debtors suggest that the two sections of Ley Creek are treated differently because they are being managed or overseen by two different regulators, to wit:  EPA and the "DEC".  But this suggestion does not provide a legal basis for the disparate treatment afforded to Upper Ley Creek and Lower Ley Creek in the Settlement.  In reality, the management and oversight of the two portions of Ley Creek is nothing more than an antiquated construct; it is the result of the back-and-forth and historical exchanging of roles that these two regulators have played.  It would certainly be preferred for one of the two regulators to oversee the entirety of Ley Creek, but the inability of the regulators EPA/DEC to properly coordinate the cleanup work provides no basis in law for the differential treatment afforded to Upper Ley Creek and Lower Ley Creek in the Settlement.  Suggesting that the regulatory oversight of Ley Creek is the reason why the two portions of the Creek are treated differently is a convenient conclusion based on convenient facts, but it is not a valid reason for treating the two portions of the Creek differently. *See e.g. United States v. Town of Moreau,* 751 F. Supp 1044 (N.D.N.Y. 1990)(Court rejected EPA-proposed settlement where it did not address presently contaminated aquifer).

Page 11 of 16

**B.    The Debtors' Bankruptcy Filing should not be Permitted to Act as a Means by which to Avoid Funding the Cleanup of Lower Ley Creek.**

The United States and the Debtors further suggest that Upper Ley Creek is the subject of a Consent Order, but that Lower Ley Creek is not, and that this is a valid basis for treating the two sections of the Creek differently. A closer reading of the triggering 1997 DEC Consent Order, however, suggests that this is not the case.

Paragraph 34 of the Consent Order states:

> The Department and Respondent agree that the goals of this Consent Order are for the Respondent to (i) coordinate and address all the pending regulatory and remedial matters described in the Recitals to this Consent Order . . .

The Recitals include a finding that the IFG Facility caused a release or a threat of release of contaminants into Onondaga Lake (see page 8 above). Section I, ¶B of the Order states:

> The Preliminary RI/FS Report shall be reviewed by the Department under this Consent Order. Upon completion of its review, *the Department shall provide Respondent with notice and comments regarding any additional RI and FS work that may need to be done in order to satisfy the requirements of CERCLA, the NCP, the EPA guidance document entitled "Guidance for Conducting Remedial Investigations and Feasibility Studies under CERCLA,"* dated October 1988, and any subsequent revisions to that guidance document in effect at the time the Preliminary RI/FS Report is submitted, appropriate EPA and Department technical and administrative guidance, which are in final form and publicly available (the "applicable RIES guidance"), and any RCRA post-closure permit requirements which may otherwise apply in addressing contamination at the Site.

(emphasis added).

The investigation that occurred pursuant to the Consent Order revealed that in order to comply with CERCLA, and to address all pending matters described in the Recitals, Lower Ley Creek required investigation. Thus, with respect to Lower Ley Creek, the Debtors remain subject to the above-referenced 1997 Order. In addition, the Debtors also remain subject to an August 12, 1985 entered into with the New York State Department of Environmental Conservation (NYSDEC)(Case #7-0383) to (a) address the on-going discharge to Ley Creek of IFG Facility wastewaters contaminated with, among other pollutants, two types of PCB, Aroclor 1242 and Aroclor 1248; and (b) limit any such future discharges. Despite those Orders the Debtors continue to discharge PCBs to Ley Creek, including discharges that exceed permit limits. Those PCBs necessarily flow downstream and past the artificial Route 11 bridge boundary line. Thus, the Debtors impact on Ley Creek downstream of Route 11 is subject to an existing Order.

In fact, NYSDEC and the Debtors were negotiating the terms of a second consent order to address the nature and details of the required Lower Ley Creek investigation and response when the Debtors filed for protection under the Bankruptcy Code. Thus, while the Debtors are not subject to an Order that details the nature of the required investigation, but they are subject to Orders that regulate the discharge of PCBs and require that the subsequent impacts be addressed. Certainly, a bankruptcy filing cannot and should not be used as a shield to protect against Debtors' environmental obligations,

especially when the "missing order" would address the details of the work

required after Orders that already established the Debtors' liability. Yet that is

exactly the result the United States is suggesting should occur when it argues

that because Lower Ley Creek is not subject to a consent order that details the

nature of the required investigation, the Debtors should not be obligated to

fund any portion of the required environmental response.

The Second Circuit has recognized that bankruptcy relief must reflect

and assure consistency with applicable federal and state laws aimed at

protecting public health and safety. *In re Chateaugay Corporation,* 944 F.2d

997 (2d Cir. 1991). As the *Chateaguay* Court explained,

> "it is difficult to understand how any injunction
> directing a property owner to remedy ongoing pollution
> could be a dischargeable 'claim' if, as *Kovacs* instructs,
> the owner 'may not maintain a nuisance, pollute the
> waters of the State, or refuse to remove the source of
> such conditions.' Moreover, leaving such injunctions
> outside the category of dischargeable 'claims' is
> entirely consistent with *Midlantic's* holding that the
> Bankruptcy Code does not entitle a debtor to abandon
> property in violation of an environmental regulation
> 'that is reasonable designed to protect the public
> health or safety from identified hazards.'"

*Id.* at 1009 (internal citations omitted).

An analogous circumstance was addressed in *Matter of Mark IV*

*Industries* 438 B. R. 460, 468 (S.D.N.Y. 2010), where the Debtor's attempt to

discontinue remedial actions with respect to contamination that had migrated

off-site were rejected by the court, which instructed:

> "Were we to adopt the bankruptcy court's position that
> any order requiring the debtor to expend money

creates a dischargeable claim, it is unlikely that the state could effectively enforce its laws:  virtually all enforcement actions impose some costs on the violator."

*Id. at* 468 (internal citations and quotations omitted.

The true nature of the obligation to remediate environmentally contaminated sites is statutory; it does not arise from any court order.   Just as the debtor in *Mark IV* had statutory obligations to remediate off-site environmental hazards that were not dischargeable in bankruptcy, so too do the Debtors here. Despite *Mark IV* and other case law to the contrary, the United States and the Debtor here are creating the very real possibility of leaving required potentially unfunded.

Approval of the proposed Environmental Trust Agreement Settlement Agreement and the subsequent Confirmation of the Plan in its current form threatens to bring about the very result that the *Mark IV* court rejected and Congress has enjoined.

## <u>Conclusion</u>

Notwithstanding the Government's assertions to the contrary, a failure to require the Debtors to remediate the *entirety* of Ley Creek in Onondaga County is contrary to basic principles of environmental law.  For the reasons set forth herein, the Court should disapprove the proposed Settlement, or, in the alternative, amend it such that it is consistent with applicable law and requires the Debtor to fund the environmental response for the *entirety* of Ley Creek as

an owned property under the terms of the proposed Environmental Response

Trust Agreement.


Dated: March 2, 2011
        Syracuse, New York

                            Attorneys for Claimant
                            Onondaga County, New York

                    By: /s/Luis A. Mendez, Esq.
                        Luis A. Mendez
                        Senior Deputy County Attorney
                        John H. Mulroy Civic Center, 19th Floor
                        421 Montgomery Street
                        Syracuse, New York 13202
                        Telephone: (315)435-2170


                    By: /s/Kevin C. Murphy, Esq.
                        Kevin C. Murphy
                        The Wladis Law Firm, P.C.
                        PO Box 245
                        Syracuse, NY 13214
                        Telephone: (315) 445-1700

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In Re:                                            Chapter 11 Case No.

MOTORS LIQUIDATION COMPANY, *et al.,*              09-50026 (REG)
        f/k/a General Motors Corp., *et al.*

             Debtors.              (Jointly Administered)

---

### CERTIFICATE OF SERVICE

I, Kevin C. Murphy, of The Wladis Law Firm, P.C. hereby certify that on the 2nd day of March, 2011, this office electronically filed Onondaga County, New York's Response to the United States' Memoranda of Law Statement in Support of the Proposed Environmental Trust Settlement, in the above-referenced matter, with the Clerk of the Bankruptcy Court using the CM/ECF system, which sent notification to the CM/ECF participants.

March 2, 2011                          /s/ Kevin C. Murphy, Esq