Hearing Date and Time: March 3, 2011 at 9:45 a.m., ET

**HARRIS BEACH PLLC**
100 Wall Street
New York, New York 10005
Telephone: (212) 687-0100
Facsimile: (212) 687-0659

-and-

**HARRIS BEACH PLLC**
One Park Place, 4th Floor
300 South State Street
Syracuse, New York 13202
Telephone: (315) 423-7100
Facsimile: (315) 422-9331
Lee Woodard, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.*, | Case No. 09-50026 (REG) |
| Debtors. | (Jointly Administered) |

**TOWN OF SALINA'S REPLY IN FURTHER OPPOSITION TO: (I) APPROVAL OF ENVIRONMENTAL RESPONSE TRUST AND PRIORITY SITE CONSENT DECREE AND SETTLEMENT AGREEMENTS; AND (II) CONFIRMATION OF DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

The Town of Salina of the State of New York (the "Town"), by and through its undersigned counsel, hereby submits this Reply in further opposition to: (I) Approval of Environmental Response Trust and Priority Site Consent Decrees and Settlement Agreements; and (II) Confirmation of the Amended Joint Chapter 11 Plan Proposed by Motors Liquidation Company, f/k/a General Motors Corporation (the "Reply"), and respectfully states as follows:

229314 1547090.1

## I. **LIMITED BACKGROUND**

1. A hearing on the confirmation of the Debtors' Amended Joint Chapter 11 Plan (the "Plan") is scheduled for March 3, 2011 at 9:45 a.m.

2. The Town of Salina has filed three claims in the Debtors' cases, resulting from the cleanup of various sites contaminated by the Debtors within the Town of Salina and the County of Onondaga in the State of New York.

3. These claims filed assert the following claims against the Debtors: (i) approximately $12,498,818.63 in cost reimbursement for environmental contamination at the Onondaga Lake Superfund Site (the "Onondaga Lake Claim"); (ii) approximately $18,577,319.00 in cost reimbursement for environmental contamination at the former-Town of Salina Landfill (the "Landfill Claim"); and (iii) an amount to be determined, but estimated to be in excess of $10,000,000.00 in cost reimbursement for environmental contamination at the Lower Ley Creek sub-site (the "Lower Ley Creek Claim") (collectively, the "Town of Salina Claims").

4. On October 20, 2010 the United States of America filed a Notice of Lodging of Proposed Settlement Decree of the Environmental Response Trust Consent Decree and Settlement Agreement (the "ERT Notice"). The Town filed an Objection to that proposed Settlement Decree and appeared at the public meeting held on December 15, 2010 in Syracuse, New York in opposition to its approval.

5. On or about February 11, 2011, the Town filed an Administrative Proof of Claim in the approximate amount of $3.8 million based on the continuing environmental contamination emanating from the Debtors' real property located in the Town of Salina and the associated remediation expenses that have been incurred during the pendency of the bankruptcy cases.

229314 1547090.1

6. On or about February 11, 2011, the Town filed an Administrative Proof of Claim in the approximate amount of $3.8 million based on the continuing environmental contamination emanating from the Debtors' real property located in the Town of Salina and the associated remediation expenses that have been incurred during the pendency of the bankruptcy cases.

7. On or about February 11, 2011, the Town filed an Objection to the Debtors' Amended Joint Chapter 11 Plan (the "Plan Objection"). The Town also filed a ballot and voted to reject the Plan.

8. The Town filed an Objection to the Debtors' Motion for Entry of an Order Estimating the Maximum Amount of Certain Claims for Purposes of Establishing Claims Reserves Under the Plan, which was resolved consensually before the hearing on March 1, 2011.

## II. ADDITIONAL OBJECTIONS TO THE PLAN AND TO THE APPROVAL OF THE ENVIRONMENTAL SETTLEMENT AGREEMENTS

9. The Town repeats and reiterates its objections as outlined in full detail in its Plan Objection filed on February 22, 2011. In addition, the Town believes that there are additional specific problems and deficiencies with the Plan and Environmental Settlement Agreements that should be addressed prior to the Court confirming the Plan or approving the Environmental Settlements, as outlined below.

10. The Town also adopts and incorporates Onondaga County's Response to the United States Memoranda of Law Statement in Support of the Proposed Environmental Trust Settlement.

### A. All General Unsecured Creditors Will Not Be Treated Equally

11. In spite of the Debtors' assurances and the Amended GUC Trust, it remains impossible for the Town to determine if there will be sufficient funds set aside to distribute the same dividend to unsecured creditors whose claims are allowed after Confirmation as those creditors who are allowed and paid upon Confirmation. The Debtors should be required to: (a) identify and clarify

3

the amount of general unsecured claims that exist after the resolution of the Claims Objections and the Claims Estimation and Reserve proceedings, that took place before this Court on March 1, 2011; and (b) identify the specific amounts being set aside to satisfy those claims as if allowed in full after confirmation. This information will insure that proper reserves are established.

12. In addition to having reserves set aside, the Confirmation Order should contain a provision that limits the amount of distributions to Class 3 Claimants to payment of only 50% of amounts owed to them, and only upon a final allowance or disallowance of all general unsecured claims shall the remainder be paid.

13. This proposed holdback procedure would allow an initial distribution on those claims that are deemed allowed as of the Confirmation Date, but would provide for a subsequent distribution to the entire general unsecured creditor body once all of the unsecured claims are resolved. It would ensure that the ultimate distribution to general unsecured claims not allowed on the date of confirmation is equivalent to the distribution to the allowed unsecured creditors, preventing discrimination among unsecured creditors and ensuring compliance with §1129(b).

14. Moreover, if payments made to allowed "pre-confirmation" claims turn out to be higher than the payments made to allowed "post-confirmation" claims, the Confirmation Order should contain a mechanism to provide for disgorgement of any distribution that proves to be inequitable.

15. It is respectfully submitted that the Plan should not be confirmed in its current form, until there are detailed protections included that ensure equitable treatment among: (i) those general unsecured claims that are deemed allowed upon confirmation; and (ii) those claims, such as the Town's claims, which may be established and paid after confirmation.

229314 1547090.1

**B.     Additional Objections To The Proposed Environmental Settlement Agreements And Classification Of The Town's Claims As Class 3 Claims**

16.     As fully detailed in the Plan Objection, the Town has vehemently objected to the Environmental Response Trust Agreement and Environmental Response Trust Consent Decree and Settlement Agreement (the "ERT"). The Town believes its environmental claims should be included in the ERT, and therefore, it objects to the classification of its claims as part of Class 3 and maintains that its claims should be properly classified as Class 4 Claims. The Plan provides that Class 4 Environmental Claimants will receive either 100% of their allowed claims under the terms of the ERT, or they will receive immediate cash payments pursuant to the Priority Order Sites Consent Decrees and Settlement Agreements. (Collectively, the ERT and Priority Site Consent Decrees and Settlement Agreements are the "Environmental Settlement Agreements").

17.     The United States and the Debtors are now seeking approval of the proposed Environmental Settlement Agreements upon confirmation of the Plan. The Town, among others, provided extensive written and verbal comments and objections to the ERT during the public comment period and at the public meeting held on December 15, 2010, as more fully detailed in the Town's correspondence to the USDOJ dated December 15, 2010 (the "ERT Objection"). A copy of the ERT Objection without exhibits was attached the Plan Objection as Exhibit "A" and is fully incorporated herein.

18.     The United States' filed its Statements in Support of the Environmental Settlement Agreements and the Plan, allegedly addressing the concerns and issues raised by the various objecting parties, including the Town (the "US Statements"). In the US Statements, it attempts to explain and justify the different treatment between ERT Environmental Claimants, the Priority Order

5

229314 1547090.1

Site Claimants, and those Class 3 Claimants, like the Town, whose claims are also the result of the Debtors' environmental contamination. However, the alleged rationale for the Debtors' proposed payment of 100% on its environmental liabilities for some sites but not others is flawed, as the arbitrary, artificial lines drawn do not recognize the nature of the existing, continuing and/or migrating contamination that resulted directly from the GM's operations in the Town. In addition, the US arguments that try to justify the classification based on prioritizing the ERT sites that would not have other Potentially Responsible Parties "on the hook" are not convincing. Consequently, the Environmental Settlement Agreements should not be approved and the proposed classification and treatment of the Town's environmental claims under the Plan should not be permitted.

19. The Town's largest claim, the Landfill Claim, includes both past and future response costs incurred or to be incurred by the Town under CERCLA, pursuant to both an October 29, 1997 Consent Order entered into between the Town and NYSDEC, as well as a Record of Decision which outlines the required investigatory and remedial actions as issued by USEPA and NYSDEC in March 2007. To date, the Town has incurred $5,485,160.06 in investigation, remedial and other costs pursuant to the Record of Decision.

20. The Record of Decision outlines specific response actions that are necessary to protect the public health or welfare and the environment from actual or threatened releases of hazardous substances. The technical data and evidence demonstrates that the Debtors' operations at the Inland Fischer Guide Site "(IFG Site")", as well as its disposal of PCB related wastes at the Landfill Site, resulted in the Landfill Site being classified as an Inactive Hazardous Waste Site by NYSDEC. Given these facts, there can be no rational explanation why the Landfill Site should not be included as a Priority Site since it is similar in nature to the type of Priority Sites that are already being paid out by the Debtors.

229314 1547090.1

21. In specifically addressing the US Statement in support of the approval of the ERT, the Town believes there are additional basis for the Court to deny the approval of ERT and Priority Site Consent Decrees, as outlined below. The following sections relate to the US' Statement in Support of the ERT:

*A. Section III, A, page 28-29:*

23. The ERT does not represent a Consent Decree purely addressing CERCLA liability, but an agreement whereby the final distribution of assets of a company provided DIP financing by the United States is being established. Thus, the US is not entitled the level of deference typically granted when solely dealing with CERCLA liabilities.

*B. Section III, A., subp. 1, page 29 – 30:*

24. From a procedural fairness standpoint, there was no candor or openness with respect to the Town, since it was completely excluded from participating in the negotiations. The Town's repeated efforts to have its claims resolved well prior to the confirmation hearing were unsuccessful. Alix Partners unilaterally suspended its discussions with the Town pending unknown negotiations with the United States Environmental Protection Agency ("USEPA") and the United States Department of Justice ("USDOJ"). The Town was informed that Alix Partners was "negotiating the site (Onondaga Lake and all of the derivative sites) with the USEPA and the USDOJ and do not currently have plans to discuss this claim with the Town of Salina until those talks have concluded." Despite further requests for clarification, there was no additional information or explanation regarding why the Town was not a part of those discussions, which is especially troublesome given the Town's continuing obligations and the tremendous expenses incurred in the remediation of the Landfill Site.

229314 1547090.1

25. It should be noted that counsel for the Town had a preliminary discussion with Debtors' counsel regarding the Landfill claim last week, but such efforts came too late. The Town simply should have been at the table when the environmental settlements were being negotiated. Thus, any "procedural fairness" alleged by the US with respect to the Environmental Settlement Agreements did not exist for the Town.

*C. Section III, B., page 32:*

26. The Town is not arguing that it should not be required to pay a portion of the cleanup costs associated with the Landfill Site, but that it should not be required to pay for that portion of the cleanup costs (i.e., 56%) that is directly attributed to the disposal of PCBs and PCB-related wastes by the Debtors' practices at the IFG facility.

*D. Section III, B, 1, page 33.*

27. The ERT Settlement Agreement does not appropriately prioritize cleanups taking into account principles of bankruptcy and environmental law, but is designed to protect the Debtors' assets and reduce its liabilities to USEPA while maximizing US's investment in the Debtor.

*E. Section III, B, 1, page 34.*

28. The Environmental Settlement Agreements that USEPA and the Debtors have reached with certain creditors have not just dealt with Superfund sites where the Debtor is the only viable PRP identified. The attached documents show that: (a) for the Wheeler Pit Settlement Agreement, the Pacific Railroad Company was another identified PRP; (b) for the Garland Road Settlement Agreement, Paul D. Theis and Waterwheel Farm, Inc. were identified as PRPs; and (c) for Harvey & Knott Settlement Agreement, Chrysler Corporation was identified as a PRP. The US' argument that the Environmental Settlement Agreements include only those sites where there are no

8

229314 1547090.1

other significant viable PRPs is specious; to the contrary, they exemplify how the Environmental Settlement Agreements discriminate against other environmental claimants such as the Town.

*F. Section III, B, 1, page 35.*

29. The March 2007 Record of Decision ("ROD") is an extension of the 1997 Consent Order entered into between NYSDEC and the Town of Salina. Thus, a clean up order does exist. In addition, the Landfill Site assessment reports prepared by NYSDEC in support of the Consent Decree and the ROD identifies the Debtor as a PRP to the Landfill Site and is therefore responsible for the presence of PCBs and PCB related wastes within the site.

30. Based on the foregoing and the detailed analysis contained in the Town's Plan Objection, the ERT and the Priority Order Sites Consent Decrees in their current form should not be approved. There is no rational basis for dividing the contaminated properties and the claims resulting therefrom. The exclusion of the Town as a party to the ERT and a Class 4 Claimant improperly and unfairly discriminates between similarly situated claimants without justification. 11 U.S.C. §1122(a). As a result, the Town should be included as a party to the ERT (or, in the alternative, treated as a Priority Site Claimant), and should be treated as a Class 4 Claimant under the Plan, being paid 100% of its environmental claims.

### III. CONCLUSION

31. The Plan does not comply the statutory requirements of 11 U.S.C. §1129 and improperly discriminates against creditors with similar claims in violation of §1122. As a result, the Plan should not be confirmed without significant amendments that address the Town's objections. In addition, the ERT and Priority Site Consent Decrees also should not be approved.

32. Nothing contained herein shall be deemed to be a waiver by the Town of Salina of any rights it may have under applicable law and the Town of Salina reserves the right to amend and

229314 1547090.1

supplement this Objection, and to object or otherwise respond to the approval, confirmation and implementation of the Debtors' Plan on any grounds outlined herein and any other grounds available.

WHEREFORE, the Town of Salina respectfully requests that the Court deny: (a) Confirmation of the Plan: (b) approval of the Environmental Settlement Agreements; and (c) and requests such other and further relief as this Court deems just and proper.

Dated: March 2, 2011

HARRIS BEACH PLLC

_____
Lee E. Woodard, Esq.
HARRIS BEACH PLLC
One Park Place, 4th Floor
300 South State Street
Syracuse, New York 13202
Telephone: (315) 423-7100
Facsimile: (315) 422-9331

-and-

100 Wall Street
New York, New York 10005
Telephone: (212) 687-0100
Facsimile: (212) 687-0659

*Attorneys for Town of Salina*

229314 1547090.1