**HEARING DATE AND TIME: April 26, 2011 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                            :
In re                                       :    Chapter 11 Case No.
                                            :
MOTORS LIQUIDATION COMPANY, et al.,         :    09-50026 (REG)
    f/k/a General Motors Corp., et al.      :
                                            :
                Debtors.                    :    (Jointly Administered)
                                            :
-----------------------------------------------------------x
```

## DEBTORS' SUR-REPLY TO THE MOTION OF
## DAVE SHOSTACK FOR RELIEF FROM THE AUTOMATIC STAY

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), hereby submit this sur-reply to the Motion of Dave Shostack ("**Movant**") seeking relief from the automatic stay (ECF No. 8161) (the "**Motion**"). In support hereof, the Debtors respectfully represent:

**Preliminary Statement**

1.     Movant seeks relief from the automatic stay to proceed with a postpetition lawsuit (the "**State Case**") he commenced *pro se* against "General Motors Holding, General

Motors Corporation, and AC Delco Inc." (collectively, the "**Defendants**") in the Second District Court of Suffolk County, New York on December 31, 2009 in violation of the automatic stay.[1] The State Case arises from Movant's May 2009 purchase of a used 2004 Chevrolet Malibu, and the Complaint seeks damages based upon the Defendants' "failure to compy with their obligations under the applicable express and implied warranties." (Opp., Ex. A, ¶ 51.)

2.  On February 3, 2011, Movant filed an Affidavit in Opposition to Debtors' Opposition (ECF No. 9129) (the "**Reply**") asserting for the first time that "Plaintiff['s] claims are post petition claims meaning they took place months after the bankruptcy and are new claims" and therefore claiming that "since Plaintiff['s] claim was a post petition claim . . . it was ok[ay] for Plaintiff to proceed in State Court without first lifting the stay." (Reply ¶¶ 13, 17.)  The Debtors file this sur-reply to address this assertion raised for the first time in the Movant's Reply.

**Relevant Background**

3.  The relevant facts are set forth in detail in the Debtors' Opposition and are incorporated herein by reference.  Certain relevant facts are set forth below for the convenience of the Court.

4.  On June 1, 2009 (the "**Commencement Date**"), each of the Debtors commenced a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").  The commencement of the Debtors' chapter 11 cases triggered the automatic stay of all litigation against the Debtors pursuant to section 362 of the Bankruptcy Code.

---

[1] The complaint (the "**Complaint**") in the State Case is annexed as Exhibit "A" to the Debtors' Opposition to the Motion of Dave Shostack for Relief from the Automatic Stay (ECF No. 8529) (the "**Opposition**").  The Debtors' arguments are set forth in detail in the Opposition and are incorporated herein by reference.

2

5. On December 31, 2009, Movant filed the Complaint in the State Case. In the Complaint, Movant states that he purchased a used 2004 Chevrolet Malibu Classic from a United State Government (GSA) fleet sale on or about May 7, 2009. (Opp., Ex. A, ¶ 12.)

6. In the Complaint, Movant acknowledges that he discovered the alleged defects in the 2004 Chevrolet Malibu during May 2009, including the following: "Overheating problem – car runs hot when sitting in traffic, temperature gage [*sic*] goes 2 lines past halfway mark, defective calipers and brake hoses, defective rotors, defective proportioning valve (defective antilock brake system), defective stabilizer bar brushings, defective lower control arms, defective driver side seat recliner, Water leak in trunk, bell odor coming through a/c vents, defective catalytic converter." (Opp., Ex. A, ¶ 14.)

7. In the Complaint, Movant claims to have taken the 2004 Chevrolet Malibu Classic to a Chevrolet dealership for service on or about October 10, 2009 at which time "the service manager and or mechanic [at the dealership] noted the following problems: defective brake calipers and defective brake hoses and a leaking front axle seal on the front left side." (Opp., Ex. A, ¶¶ 19, 20.)

8. In the Complaint, Movant states that he obtained estimates for transmission repairs on October 21, 2009 and October 23, 2009 totaling $3,084.51. (Opp., Ex. A., ¶¶ 26, 27.)

9. On or about December 9, 2010, Movant filed the Motion seeking to proceed with the State Case against MLC. The Motion does not assert a postpetition claim.

10. On January 10, 2011, Debtors filed the Opposition in response to the arguments set forth in the Motion.

11.     On February 3, 2011, Movant filed the Reply asserting for the first time that Movant's claim was a postpetition claim and that the State Case does not require relief from the automatic stay.

12.     On February 11, 2011, Movant filed an administrative proof of claim (Claim No. 70874) in the amount of $3,045.31 plus interest and Court costs for the "potential costs associated with [a] defective transmission and [a] rental car." Movant's administrative proof of claim is attached hereto as **Exhibit "A"** (the "**Administrative Claim**").

13.     As set forth in paragraph 12 of the Opposition, prior to filing the Opposition, in an effort to avoid expending the estates' limited resources litigating the Motion concerning a small potential claim, the Debtors contacted Movant to offer him an allowed general unsecured claim in the amount of $3,085. The Debtors were unable to reach a settlement with the Movant when he insisted on an administrative priority. Without regard to the underlying merits of the claim, the Debtors remain prepared at this time to offer Movant an allowed general unsecured claim in the amount of $3,085 to consensually resolve the Motion and all of Movant's claims against the Debtors, including the Administrative Claim.

## Movant's Claim Is Not a Postpetition Claim

14.     With respect to product liability and warranty claims, such as Movant's potential claim, the main inquiry is at what point the claim arose. Movant cannot establish that his claim arose postpetition. Section 101(5) of the Bankruptcy Code defines "claim" as

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
>
> (B) right to an equitable remedy for breach of performance if such breach gives rise to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5).

15. In the Second Circuit, a claim will be deemed to have arisen prepetition when it arises out of a prepetition relationship recognized in the law of contracts or torts. *See LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995) ("A claim will be deemed pre-petition when it arises out of a relationship recognized in . . . the law of contracts or torts."); *West v. WorldCom, Inc.*, No. 06 Civ. 0748, 2007 U.S. Dist. LEXIS 83924, at *6-7 (S.D.N.Y. Nov. 14, 2007) ("Claims arise before a petition when the parties are engaged in a pre-petition relationship recognized in contract or tort law.").

16. If a relationship exists prepetition, but the liability does not materialize until postpetition, the claim is not converted from a prepetition claim to an postpetition claim. Courts within this Circuit have concluded that a "prepetition 'claim' may well encompass a cause of action that, under state law, was not cognizable until after the bankruptcy petition was filed." *In re Johns-Manville Corp.*, 57 B.R. 680, 690 (Bankr. S.D.N.Y. 1986)). Under this "conduct test," as it is often referred, a claim exists at the "time when the acts giving rise to the alleged liability were performed." *Id.* In other words, if a debtor's conduct forming the basis of liability occurred prepetition, a claim arises when the conduct occurred, even though the injury resulting from the conduct is not manifest at the commencement of the bankruptcy case. This test was adopted by the United States Court of Appeals for the Fourth Circuit in *Grady v. A.H. Robins Co.*, 839 F.2d 198 (4th Cir. 1988), *cert. dismissed* 487 U.S. 1260 (1988) (claimant who had Dalkon Shield inserted prepetition held claim that arose prepetition) and has been followed by courts within this Circuit. *See, e.g., In re Emons Industries, Inc.*, 220 B.R. 182, 193-94 (Bankr. S.D.N.Y. 1998) (holding that tort victims injured by the debtor's prepetition conduct are prepetition creditors where the conduct giving rise to the liability was the marketing by the debtor of the defective product years prior to the petition date) (citing *A.H. Robins*).

5

17. Because the conduct test by itself may define claims too broadly in certain circumstances, some courts use this test in conjunction with the prepetition relationship test, particularly in the context of product liability claims against a debtor manufacturer. For example, the United States Court of Appeals for the Eleventh Circuit, in *Epstein v. Official Committee of Unsecured Creditors (In re Piper Aircraft Corp.)*, established what is known as the *Piper* test:

> An individual has a § 101(5) claim against a debtor manufacturer if (i) events occurring before confirmation create a relationship, such as contact, exposure, impact, or privity, between the claimant and the debtor's product; and (ii) the basis for liability is the debtor's prepetition conduct in designing, manufacturing and selling the allegedly defective or dangerous product. The debtor's prepetition conduct gives rise to a claim to be administered in a case only if there is a relationship established before confirmation between an identifiable claimant or group of claimants and that prepetition conduct.

58 F.3d 1573, 1577 (11th Cir. 1995).

18. Under the *Piper* test, where, as here, an allegedly defective product was manufactured prepetition and a creditor purchased the allegedly defective product prepetition, a claim for damages suffered by the creditor postpetition would be a prepetition claim, rather than a postpetition claim, because (i) the debtor's conduct (i.e., manufacturing the allegedly defective product) occurred prepetition and (ii) the relationship between the debtor and the creditor was created prepetition (i.e., when the creditor purchased the allegedly defective product). *Cf. Dutcher v. Reorganized Pettibone Corp.*, 193 B.R. 667 (S.D.N.Y. 1996) (manufacturer of forklift was not liable for injury to plaintiff three years after confirmation of manufacturer's plan of reorganization because confirmation discharged manufacturer of any responsibilities).

19. In this case, the relevant relationship arose in 2004 when General Motors Corporation sold the vehicle in question to Mr. Shostack's predecessor in interest. Based on the

6

foregoing, Movant's potential claim against the Debtors arising out of his prepetition purchase of a General Motors vehicle is a prepetition claim, not a postpetition claim.  Movant had a prepetition relationship with the Debtors because he purchased the General Motors vehicle prior to the Commencement Date.  Moreover, the Debtors' conduct in designing, manufacturing, and selling the vehicle occurred prior to the Commencement Date.  Further, the service bulletins Movant relies upon as evidence of the Debtors' purported knowledge of the alleged transmission defects on the 2004 Chevrolet Malibu were issued well before the Commencement Date.  Finally, in the Complaint, Movant has conceded that he learned of the alleged defects prior to the Commencement Date.  That the Movant's costs of repair were not incurred until after the Commencement Date does not convert this prepetition claim to a postpetition claim.

## Movant's Claim Is Not an Administrative Expense

20. Movant cannot establish that his claim rises to administrative expense priority.  Statutory priorities, such as administrative expenses, are narrowly construed in the Second Circuit because of the fundamental bankruptcy goal of an orderly and equal distribution among creditors.  *See generally Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 100 (2d Cir. 1986) ("Because the presumption in bankruptcy cases is that the debtor's limited resources will be equally distributed among his creditors, statutory priorities are narrowly construed."); *In re Old Carco LLC*, Ch. 11 Case No. 09 B 50002, 2010 WL 22426 at *6 (Bankr. S.D.N.Y. Jan. 5, 2010) ("Strictly construing the terms 'actual' and 'necessary' minimizes administrative expense claims, thereby preserving the estate for the benefit of all creditors.  If claims not intended to have priority were afforded such, the value of the priority for those creditors Congress intended to prefer would be diluted.") (citations omitted); *In re Ames Dep't Stores, Inc.*, 306 B.R. 43, 54 (Bankr. S.D.N.Y. 2004) (observing basic principles in Second

7

Circuit that "grants of administrative expense priority cut against the general goal in bankruptcy law to distribute limited debtor assets equally among similarly situated creditors" and that "statutory priorities, such as those resulting from administrative expense treatment, are narrowly construed") (citing *McFarlin's*).

21. Consistent with these well-established principles, priority status may be awarded only if the creditor's claim is firmly based on a clear statutory purpose and the creditor has satisfied its burden of proof that its claim should override claims of similarly situated creditors. *See Nathanson v. NLRB*, 344 U.S. 25 (1952) (if one claimant is to be preferred over others, purpose should be clear from statute); *McFarlin's*, 789 F.2d at 101 (same). Movant has not and cannot satisfy his burden.

22. The relevant statute is section 503(b)(1)(A) of the Bankruptcy Code, which provides that administrative expenses are the "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). Two elements must be satisfied for a debt to be given administrative expense status: (i) the expense must arise out of a transaction between the creditor and the debtor in possession and (ii) the creditor's consideration for the expense must be both supplied to and beneficial to the debtor in possession in the operation of the business. *McFarlin's*, 789 F.2d at 101; *Ames*, 306 B.R. at 55. Neither element exists here.

## **CONCLUSION**

WHEREFORE the Debtors respectfully request that the Court deny the Motion and the relief requested therein and grant the Debtors such other and further relief as is just.

Dated: New York, New York
March 7, 2011

*/s/ Joseph H. Smolinsky*
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession