Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 09-50026-reg

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    MOTORS LIQUIDATION COMPANY, ET AL.,

9        F/K/A GENERAL MOTORS CORP., ET AL.,

10

11           Debtors.

12

13    - - - - - - - - - - - - - - - - - - - - - -x

14

15                U.S. Bankruptcy Court

16                One Bowling Green

17                New York, New York

18

19                February 3, 2011

20                9:53 AM

21

22    B E F O R E:

23    HON. ROBERT E. GERBER

24    U.S. BANKRUPTCY JUDGE

25

Page 2

1

2    Debtors' 111th Omnibus Objection to Claims and Motion

3    Requesting Enforcement of the Bar Date Orders (Late-Filed

4    Claims)

5

6    Debtors' 112th Omnibus Objection to Claims (Claims with

7    Insufficient Documentation)

8

9    Debtors' 113th Omnibus Objection to Claims (Claims Relating to

10   Former Employees Represented by United Auto Workers)

11

12   Debtors' 114th Omnibus Objection to Claims (Welfare Benefits

13   Claims of Retired and Former Salaried and Executive Employees)

14

15   Debtors' 115th Omnibus Objection to Claims (Welfare Benefits

16   Claims of Retired and Former Salaried and Executive Employees)

17

18   Debtors' 116th Omnibus Objection to Claims (Welfare Benefits

19   Claims of Retired and Former Salaried and Executive Employees)

20

21   Debtors' 117th Omnibus Objection to Claims (Welfare Benefits

22   Claims of Retired and Former Salaried and Executive Employees)

23

24   Debtors' 118th Omnibus Objection to Claims (Amended and

25   Superseded Claims and Duplicate Claims)

Page 3

1

2  Debtors' 119th Omnibus Objection to Claims (Duplicate Debt

3  Claims)

4

5  Debtors' 120th Omnibus Objection to Claims (Multi-Debtor

6  Claims)

7

8  Debtors' 121st Omnibus Objection to Claims (Duplicate Debt

9  Claims)

10

11  Debtors' 122nd Omnibus Objection to Claims (Duplicate Debt

12  Claims)

13

14  Debtors' 123rd Omnibus Objection to Claims (Duplicate Debt

15  Claims)

16

17  Debtors' 124th Omnibus Objection to Claims (Duplicate Debt

18  Claims)

19

20  Debtors' 125th Omnibus Objection to Claims (Duplicate Debt

21  Claims)

22

23  Debtors' 126th Omnibus Objection to Claims (Duplicate Debt

24  Claims)

25

Page 4

1

2    Debtors' 127th Omnibus Objection to Claims (Duplicate Debt

3    Claims)

4

5    Debtors' 128th Omnibus Objection to Claims (Duplicate Debt

6    Claims)

7

8    Debtors' 129th Omnibus Objection to Claims (Duplicate Debt

9    Claims)

10

11    Debtors' 130th Omnibus Objection to Claims (Duplicate Debt

12    Claims)

13

14    Debtors' 131st Omnibus Objection to Claims (Duplicate Debt

15    Claims)

16

17    Debtors' 132nd Omnibus Objection to Claims (Eurobond Deutsche

18    Debt Claims)

19

20    Debtors' 133rd Omnibus Objection to Claims (Eurobond Deutsche

21    Debt Claims)

22

23    Debtors' 134th Omnibus Objection to Claims (Eurobond Deutsche

24    Debt Claims)

25

Page 5

1

2     Debtors' 135th Omnibus Objection to Claims (Eurobond Deutsche

3     Debt Claims)

4

5     Debtors' 136th Omnibus Objection to Claims (Eurobond Deutsche

6     Debt Claims)

7

8     Motion of Judd Wiesjahn and Annalisa Sand to File Late Proof of

9     Claim, or in the Alternative, to Amend Informal Proof of Claim

10

11    Motion of Green Hunt Wedlake, Inc., Trustee of General Motors

12    Nova Scotia Finance Company, Pursuant to Bankruptcy Rule

13    3018(a) for the Temporary Allowance of Its Claim Solely for

14    Purposes of Voting on the Debtors' Proposed Plan of

15    Reorganization

16

17    Amended Motion of Certain Noteholders Pursuant to Rule 3018(a)

18    of the Federal Rules of Bankruptcy Procedure for Temporary

19    Allowance of the Nova Scotia Guaranty Claims for the Purpose of

20    Voting to Accept or Reject the Plan

21

22    Debtors' (I) Objection to Proof of Claim No. 19633 filed by

23    LaRonda Hunter and Robin Gonzales and, in the Alternative, (II)

24    Motion to Estimate Proof of Claim No. 19633

25

Page 6

1

2   Debtors' Objection to Proof of Claim No. 45630 filed by William

3   O'Connor and Melody O'Connor; Proof of Claim No. 45628 filed by

4   John Pakai; and Proof of Claim No. 45629 filed by David Sidner

5   Debtors' Objection to Proof of Claim No. 65304 filed by Amiel

6   D. Foley

7

8   Debtors' Objection to Proofs of Claim Nos. 16440 and 16441

9   filed by Michael A. Schwartz

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25   Transcribed By:  Dena Page

Page 7

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4         Attorneys for Debtors

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:   STEPHEN KAROTKIN, ESQ.

9         JOSEPH H. SMOLINSKY, ESQ.

10

11

12    WEIL, GOTSHAL & MANGES LLP

13         Attorneys for Debtors

14         200 Crescent Court

15         Suite 300

16         Dallas, TX 75201

17

18    BY:   VANCE L. BEAGLES, ESQ. (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 8

1

2    AKIN GUMP STRAUSS HAUER & FELD LLP

3         Attorneys for Green Hunt Wedlake as trustee for the

4            Nova Scotia Finance Company

5         One Bryant Park

6         New York, NY 10036

7

8    BY:   PHILIP C. DUBLIN, ESQ.

9         NATALIE E. LEVINE, ESQ.

10

11

12   ARNSTEIN & LEHR LLP

13        Attorneys for Sentry Insurance and Sentry Select

14           Insurance Company

15        120 South Riverside Plaza

16        Suite 1200

17        Chicago, IL 60606

18

19   BY:   DAVID GOLIN, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

Page 9

1

2    BAXTER BRUCE & SULLIVAN, P.C.

3         Attorneys for Larry Compton, Trustee

4         Suite A-201 Professional Plaza

5         9309 Glacier Highway

6         P.O. Box 32819

7         Juneau, Alaska 99803

8

9    BY:   DANIEL G. BRUCE, ESQ. (TELEPHONICALLY)

10

11

12   BROWN RUDNICK

13        Attorneys for Anchorage Capital Master Off Shore Limited,

14          Canyon-GRF Master Fun and other Bondholders

15        Seven Times Square

16        New York, NY 10036

17

18   BY:   CALEB B. PIRON, ESQ.

19

20

21

22

23

24

25

Page 10

1

2    BUTZEL LONG, P.C.

3          Attorneys for the Official Creditors' Committee

4          380 Madison Avenue

5          22nd Floor

6          New York, New York, 10017

7

8    BY:   BARRY N. SEIDEL, ESQ.

9

10

11    GREENBERG TRAURIG, LLP

12          Attorneys for Nova Scotia Bondholders

13          200 Park Avenue

14          New York, NY 10166

15

16    BY:   JOHN H. BAE, ESQ.

17          BRUCE R. ZIRINSKY, ESQ.

18          NANCY A. MITCHELL, ESQ. (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 11

1

2   KRAMER LEVIN NAFTALIS & FRANKEL LLP

3        Attorneys for Creditors' Committee

4        1177 Avenue of the Americas

5        New York, NY 10036

6

7   BY:   ROBERT T. SCHMIDT, ESQ.

8

9

10   LAW OFFICE OF MARTIN L. STANLEY

11        Attorneys for Annalisa Sand and Judd Wiesjahn

12        1541 Ocean Avenue

13        Suite 200

14        Santa Monica, California 90401

15   BY:   MARTIN L. STANLEY, ESQ. (TELEPHONICALLY)

16

17

18   PAYNE MITCHELL LAW GROUP

19        Attorneys for Sandra Sleighmaker

20        2911 Turtle Creek Blvd

21        Suite 1400

22        Dallas, Texas 75219

23

24   BY:   JAMES L. MITCHELL, ESQ. (TELEPHONICALLY)

25

```
 1

 2    RICHARDS KIBBE & ORBE LLP

 3          Attorneys for Morgan Stanley and Goldman Sachs

 4          One World Financial Center

 5          New York, NY 10281

 6

 7    BY:   JOON P. HONG, ESQ.

 8

 9

10    STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

11          Attorneys for the Future Asbestos Claimants

12          2323 Bryan Street

13          Suite 2200

14          Dallas, TX 75201

15

16    BY:   JACOB L. NEWTON, ESQ. (TELEPHONICALLY)

17

18

19    UNITED STATES DEPARTMENT OF JUSTICE, U.S. ATTORNEY'S OFFICE

20          Attorneys for United States of America

21          86 Chambers Street

22          New York, NY 10007

23

24    BY:   DAVID S. JONES, ESQ.

25
```

Page 13

1

2  VICKI SLATER, ATTORNEY AT LAW

3          Attorneys for William Bradford Jones

4          1554 Lakeside Drive

5          Jackson, Mississippi 39216

6

7  BY:   VICKI SLATER, ESQ. (TELEPHONICALLY)

8

9

10  ALSO PRESENT:

11          DARLENE SCHNEIDER, Party Pro Se

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 14

1              P R O C E E D I N G S

2          THE COURT:  All right, GM Motors Liquidation

3    Corporation.  We have a number of things on today's calendar,

4    most of which, I sense, won't require judicial time, but

5    several of which will.  Since I suspect that the bulk of the

6    people are here by reason of the claims estimation issues, my

7    thought is to deal with that ahead of the tort relief from --

8    excuse me, late proof of claim matter.  But I'll take

9    recommendations from you.

10         (Pause)

11         THE COURT:  I'm sorry.  I lost my train of thought.  I

12   had a request that the late proof of claim issue be dealt with

13   earlier rather than later, but I don't know how many meters I

14   have running on plan issues.  Mr. Smolinsky, can I get your

15   recommendation?

16         I will tell you that I have a tentative on the late

17   proof of claim, which is to not decide it today and set up an

18   evidentiary hearing on whether or not he got actual notice, and

19   to rule that an informal proof of claim is insufficient.  But I

20   will give people a chance to be heard on that.  And I'll take

21   your recommendation as to how we're going to proceed.

22         MR. SMOLINSKY:  Good morning, Your Honor.  Joe

23   Smolinsky from Weil, Gotshal & Manges for the debtors.  The

24   3018 matters which are comprised of two separate main motions

25   can be dispensed with fairly quickly.  There are a lot of

MOTORS LIQUIDATION COMPANY, ET AL.

Page 15

1    lawyers in the courtroom, and I think we agree with your

2    recommendation to deal with those matters which Mr. Karotkin

3    will address.  And then we can move to the remainder of the

4    calendar.

5              THE COURT:  Okay.

6              MR. SMOLINSKY:  Shouldn't take very long.

7              THE COURT:  All right.

8              MR. STANLEY:  Your Honor, this is Mr. Stanley on that

9    late claim issue.

10             THE COURT:  Yes.

11             MR. STANLEY:  I apologize for interrupting.  I do have

12   a court order mediation with a judge waiting for me in about an

13   hour and fifteen minutes in downtown Los Angeles.  And I heard

14   the Court's tentative, and I understand the Court's tentative.

15   I don't think the defendants filed any affidavits or any

16   evidence in opposition to my motion.  That would be my

17   position.

18             THE COURT:  I understand that, Mr. Stanley, but you

19   have to understand that I have a case with thousands of

20   creditors here and a pretty full courtroom and I'm going to get

21   through my calendar as quickly as I can.

22             MR. STANLEY:  All right.  I'm happy to be patient.  I

23   just wanted to let the Court know that --

24             THE COURT:  I understood that before you spoke, Mr.

25   Stanley.

MOTORS LIQUIDATION COMPANY, ET AL.

Page 16

1          MR. STANLEY:  I apologize.  Thank you, Your Honor.

2          THE COURT:  Mr. Karotkin?

3          MR. KAROTKIN:  Thank you, Your Honor.  Stephen

4    Karotkin, Weil, Gotshal & Manges for the debtors.  I think we

5    have a resolution on the 3018 issues, if I could report that to

6    the Court.

7          THE COURT:  Go ahead.

8          MR. KAROTKIN:  With respect to those other than Green

9    Hunt Wedlake, which is the trustee for the Nova Scotia entity,

10   I believe we have an agreement as follows.  With respect to

11   those entities represented by the Greenberg Traurig firm, they

12   would be entitled to vote their claims as part of the guarantee

13   claim.  That would be limited, Your Honor, to fifteen entities

14   voting.  So fifteen in number.  The same with respect to the

15   Brown Rudnick clients, limited to seven in number voting.  And

16   with respect to Goldman Sachs and Morgan Stanley, I had a brief

17   conversation with counsel, and they would be treated the same

18   way.  He advised me that he believes they only have one vote

19   each, but he will confirm that with me later in the day.  We

20   have no objection if it's slightly more than one, as well, and

21   I'm sure that we can work that out.  With the further

22   understanding being, Your Honor, that the cumulative amount

23   voted with respect to all of those entities cannot exceed 1.072

24   billion, which I believe is the amount of the guarantee claim

25   filed.

MOTORS LIQUIDATION COMPANY, ET AL.

1      THE COURT:  Um-hum.

2      MR. KAROTKIN:  And of course, all rights are reserved

3  with respect to the substantive objection to the claim filed by

4  the creditors' committee.

5      And I think with that, unless there's any disagreement

6  from counsel in the room representing those entities, I think

7  that resolves those pleadings.

8      THE COURT:  Before I'm comfortable that everything has

9  been resolved, I want to hear the totality of what's open and

10  what's not open.

11      MR. KAROTKIN:  Okay.

12      THE COURT:  What about Green Hunt Wedlake?

13      MR. KAROTKIN:  With respect to Green Hunt Wedlake,

14  Your Honor, we have the reached the following agreement, which

15  I'd like to read into the record.

16      "The Nova Scotia trustee shall be permitted to

17  provisionally vote, as one vote, its Class III general

18  unsecured claim in the amount of $1,607,647,592.49, provided,

19  however, that all rights of the debtors and the creditors'

20  committee are expressly reserved and retained at or prior to

21  the hearing on confirmation of the plan to renew the opposition

22  to the 3018 motion on not less than five calendar days' notice

23  and to argue that the vote of the Nova Scotia trustee should

24  not be counted under Bankruptcy Rule 3018 in the event, one,

25  the Nova Scotia trustee does not vote to accept the plan and,

MOTORS LIQUIDATION COMPANY, ET AL.

Page 18

1    two, Class III, which is the general unsecured creditors

2    claim -- class votes to reject the plan."

3           THE COURT:  Mr. Karotkin, if I were to approve those

4    two resolutions, what remaining issues would there still be?

5           MR. KAROTKIN:  I would just like to make -- there's

6    one more part of that if --

7           THE COURT:  Oh, go ahead.

8           MR. KAROTKIN:  "In addition, upon delivery by the Nova

9    Scotia trustee of its objections to confirmation of the plan in

10   writing, the debtors shall meet and confer with the Nova Scotia

11   trustee in an effort to resolve those objections."

12          Now, answer --

13          THE COURT:  Say that last paragraph slower, please,

14   Mr. Karotkin.

15          MR. KAROTKIN:  Yes.

16          "Upon delivery by the Nova Scotia trustee of its

17   objections to confirmation of the plan in writing, the debtors

18   will meet and confer with the Nova Scotia trustee in an effort

19   to resolve those objections."

20          THE COURT:  That last duty being simply to meet and

21   confer --

22          MR. KAROTKIN:  That's --

23          THE COURT:  -- confer impliedly in good faith.

24          MR. KAROTKIN:  Yes, sir.

25          THE COURT:  Uh-hum.  Now, if I were to approve those

MOTORS LIQUIDATION COMPANY, ET AL.

Page 19

1    or consider that a satisfactory resolution, other than

2    reservations of rights on behalf of the creditors' committee,

3    which I well understood from its submission, what open issues

4    would there be vis-a-vis matters of voting?

5              MR. KAROTKIN:  It would -- first of all, it's a

6    reservation of rights on behalf of both the debtors and the

7    creditors' committee.

8              THE COURT:  Okay.

9              MR. KAROTKIN:  As to voting, I don't think there are

10   any other issues.

11             THE COURT:  All right.  Does anybody want to be heard

12   on this before I focus on it further?

13             Mr. Zirinsky, come to a microphone, please.

14             MR. ZIRINSKY:  Happy to, sir.

15             Good morning, Your Honor.  Bruce Zirinsky, Greenberg

16   Traurig, on behalf of Appaloosa, Aurelius, Fortress and -- I

17   always forget the last one -- Elliott.  We represent those four

18   management firms that, in turn, represent the fifteen entities

19   that Mr. Karotkin referred to.

20             Mr. Karotkin, from our perspective, has accurately

21   described the resolution as to the voting of those claims.  I

22   just want to add that all other rights are being reserved, but

23   it does, in response to Your Honor's question, resolve, from

24   our perspective, our voting issues with respect to plan.

25             THE COURT:  Okay.

MOTORS LIQUIDATION COMPANY, ET AL.

Page 20

1          MR. ZIRINSKY:  Thank you.

2          THE COURT:  Anybody else?

3          Come up, please, Mr. -- I see two people.  Mr. Dublin,

4     you first.  You've got Green Hunt Wedlake?

5          MR. DUBLIN:  Yes, Your Honor.

6          THE COURT:  Okay.

7          MR. DUBLIN:  Philip Dublin, Akin Gump Strauss Hauer &

8     Feld, on behalf of Green Hunt Wedlake.  Same issue, Your Honor,

9     we -- the representations by Mr. Karotkin resolve our issues

10    with respect to, at least in the interim, the 3018 motion and,

11    of course, without having to say so, all rights reserved as far

12    as the claim objection goes and any plan objections.

13         THE COURT:  Okay.  Anyone else?

14         MR. PIRON:  Your Honor, Caleb Piron from Brown

15    Rudnick.  We represent certain holders not represented by the

16    Greenberg group.

17         THE COURT:  Who?

18         MR. PIRON:  I do have a list here, Your Honor.  We

19    filed a couple of joinder pleadings, one of which was to the --

20    was to Greenberg's response to the committee's objection, the

21    second of which was to Greenberg's 3018 motion.  And I

22    apologize if I told Mr. Karotkin --

23         THE COURT:  Who?  Answer my question, please.

24         MR. PIRON:  Sure, Your Honor.  It's Anchorage Capital

25    Master Off Shore Limited, Canyon-GRF Master Fun, L.P., Canyon

09-50026-mg    Doc 9689    Filed 02/04/11    Entered 03/09/11 11:17:35    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 21 of 42

Page 21

1    Value Realization Fund, L.P., CSS, LLC, Knighthead Master Fun,

2    L.P., LMA SPC for the benefit of MAP 84, the Lyxor/Canyon

3    Realization Fund, Onex Debt Opportunity Fund, Redwood Master

4    Fund, and the Canyon Realization Fund.

5             Your Honor, I think I told Mr. Karotkin approximately

6    seven.  That number is actually ten, so we'd request that we

7    have the consent to vote those ten claims.

8             THE COURT:  All right.  Do you have any substantive

9    objection other than the question you want me to put to Mr.

10   Karotkin?

11            MR. PIRON:  I don't, Your Honor.

12            THE COURT:  All right, Mr. Karotkin, does that cause

13   you to change your request to me in any way?

14            MR. KAROTKIN:  No, sir.

15            THE COURT:  All right.

16            MR. PIRON:  Thank you, Your Honor.

17            THE COURT:  Okay.  Has everybody had a chance to speak

18   their piece?

19            All right, I have no problem with the agreements that

20   have been made so long as they're for voting only.  And I will

21   simply say, since I think it counts a little more when I say it

22   than when the parties say it, that this with a full reservation

23   of rights on the underlying issues raised by the creditors'

24   committee and includes, without limitation, reservations of

25   rights by the creditors' committee by the debtors on behalf of

Page 22

1    the estate and with respect Green Hunt Wedlake and the various

2    funds who've been mentioned as well.

3           So you can and should paper that, Mr. Karotkin or give

4    me whatever you think is necessary to implement that, and then

5    I'm going to ask everybody who is here only on that matter to

6    leave as soon as you want to.

7           MR. KAROTKIN:  Thank you, sir.  I will circulate a

8    proposed order among the parties.

9           THE COURT:  Okay.

10          MR. KAROTKIN:  May I be excused, Your Honor?

11          THE COURT:  Yes, you may.

12          MR. KAROTKIN:  Thank you.

13          THE COURT:  Now, Mr. Smolinsky, I'll deal with the

14   late proof of claim on Wiesjahn if we can next, so he can get

15   onto his other obligation.

16          Let me flesh out my tentative on that.  It seems to

17   me, subject to your rights to be heard, based upon my knowledge

18   of the law and my review of the underlying pleadings, that the

19   debtors are entitled to presumptions of mailing.  But it also

20   appears to me that it's not an irrebuttable presumption and

21   that Mr. Stanley has stated in declarations that,

22   notwithstanding what I understand the debtors to have told me,

23   that there were three separate mailings, that he still didn't

24   get the notice.

25          My tentative is that because the presumption of

09-50026-mg   Doc 9689   Filed 02/04/11   Entered 03/09/11 11:17:35   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 23 of 42

Page 23

1   receipt is not irrebuttable, he's entitled to his day in court

2   to show me, by old fashioned testimony and subject to duties to

3   be cross-examined, that actual notice was not given.  And I

4   think that where you have a duty to provide actual notice, and

5   you know who's supposed to get it, in contrast by way of

6   example to the Apartheid claimants whose identities, for the

7   most part, aren't known, he's entitled to his opportunity to

8   convince that the presumption should be overridden.  I find the

9   remaining points that it was an informal proof of claim, pretty

10  unpersuasive, although I guess I will hear argument on that.

11  Although, I think that, frankly, I think it all comes down to

12  his credibility, and he's going to have to come to New York and

13  get in that witness box and testify, and then I'll decide

14  whether or not he's telling me the truth or not.  That's my

15  tentative.  I'll hear your position.  I'll hear Mr. Stanley

16  next.  Obviously, I've read the papers.  You don't have to go

17  through late claims 101.

18          MR. SMOLINSKY:  Your Honor, Joe Smolinsky.  Do you

19  want Mr. Stanley to go first given the fact that it's his

20  motion or --

21          THE COURT:  All right.  Fair enough.  Mr. Stanley?

22  You still with me, Mr. Stanley?

23          MR. STANLEY:  Can you hear me okay?

24          THE COURT:  Just now, I can.  If you said anything

25  before "can you hear me okay", I didn't hear that.

MOTORS LIQUIDATION COMPANY, ET AL.

Page 24

1          MR. STANLEY:  Yes, Your Honor.  I had the phone on

2    mute while you were handling the other matter.  I forgot to

3    turn it back on.

4          Yes, thank you for taking me.  I appreciate you

5    considering my other obligation.  I have heard the Court's

6    tentative.  I am happy to come to New York if need be.  I will

7    state to the Court that, as Your Honor can see from the papers,

8    the envelopes were misaddressed, and I did not receive them.

9    But I am happy to come to court and testify.

10          The defendant's filed not one declaration in

11   opposition to my motion, and there isn't any competent evidence

12   to the contrary.  But again, I'm happy to come to New York.  I

13   am having a heart procedure on February 16th.  It's going to

14   lay me up for thirty days, and so I have a doctor's note from

15   Cedars-Sinai -- which is the big hospital here in Los Angeles;

16   I don't know if Your Honor's familiar with it -- from the

17   director there of the heart institute to that effect.  And

18   that's my only -- I have a civil trial obligations, but that's

19   my real obligation.  Otherwise, I'm happy to come to New York

20   if Your Honor wants me to.  And I'm happy to testify.

21          THE COURT:  All right.  Now, Mr. Stanley, whether or

22   not it was misaddressed is a disputed issue of fact.  As I

23   understand it, the envelopes were addressed to Martin Stanley,

24   Law Office of, and one of the issues that we'll be dealing with

25   at an evidentiary hearing will be to explore the significance

Page 25

1    of that.

2           MR. STANLEY:  Actually, it was addressed, Your Honor,

3    to Stanley Martin, the Law Office of Stanley Martin, and it

4    didn't say -- and it was not addressed, actually, to the Law

5    Office of Stanley Martin.  It was addressed to Annalisa Sand,

6    on the first line, for example, Judd Wiesjahn on the next line

7    -- on the first line, with the next line being Stanley Martin

8    Law Office, and I am not Stanley Martin and never have been.

9           THE COURT:  Oh.

10          MR. STANLEY:  And there's never been a representation

11   to that effect.  And the defendants were always aware because

12   in our original papers, we clearly stated that I am Martin

13   Louis Stanley.  I was in the court filings here in the county

14   court in California at all times.

15          THE COURT:  Forgive me, Mr. Stanley, I didn't realize

16   until you said it this moment that the first name and last name

17   were flip-flopped.

18          MR. STANLEY:  Correct.  And ther's no evidence to the

19   other -- to any other effect.  They had that that way the

20   entire time, and we did receive a paper some time about a month

21   or two ago which caused me my concern because, for example, it

22   was randomly delivered and it did have the wrong name on it.

23   I'm pretty sure; I don't have it in hand because I'm not at the

24   office because it's very early in the morning here.  Lucky I

25   don't live in Hawaii.

09-50026-mg   Doc 9689   Filed 02/04/11   Entered 03/09/11 11:17:35   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 26 of 42

Page 26

1          But the naming was flip-flopped.  And again, it did

2     not say in care of the Law Office of Martin Stanley or care of

3     anybody.  It just Annalisa Sand and Judd Wiesjahn on the first

4     lines.

5          THE COURT:  All right.  Okay, thank you.  I understand

6     the issue much better now than I did at the outset.

7          MR. STANLEY:  I apologize, Your Honor if I didn't make

8     that clear in my declaration.  I'm happy to come to New York to

9     make it clear and if I can find the paper that I did receive

10    recently that triggered my thought process on this, I'm hapy to

11    bring it.  I'm not a bankruptcy practitioner.  I have been

12    nominated twice in the last four years for e-trialer of the

13    year (ph.).  I have been a state bar probation monitor, and I

14    have taught, probably, hundreds of MCLE seminars on ethics of

15    malpractice, but at least dozens.  So I'm happy to come.

16         THE COURT:  Okay.

17         MR. STANLEY:  I've never handled a bankruptcy case in

18    my life, and I'm not as familiar as you all are with the

19    procedures.  I can tell you this.  None of us got this

20    document.  We've never missed a filing deadline in my office,

21    ever.

22         THE COURT:  I understand.  The issue, it's not going

23    to be so much one of bankruptcy law; it's going to be whether,

24    if Mr. Stanley tells me what he just told me and tells it to me

25    from the witness stand, and if I believe him, then the

MOTORS LIQUIDATION COMPANY, ET AL.

Page 27

1    rebuttable presumption will have been rebutted.

2           Mr. Smolinsky, I'll hear from you.

3           MR. SMOLINSKY:  Thank you, Your Honor.  Joe Smolinsky

4    for the debtors.  I understand your tentative ruling, Your

5    Honor, but I do feel that I need to say a few words, because we

6    are going to be dealing with hundreds of similar instances, and

7    it's important that we try to make sure that his rights are

8    preserved while not overburdening the Court.

9           From our perspective, Your Honor, this isn't even a

10   closed case.  The premise of the argument is that claimant

11   never received notice of the bar date.  First of all, he argues

12   that there was no service on the plaintiffs, who were the

13   parents of the decedent, and second, that the name of the firm

14   was wrong.

15          As Your Honor noted, there were three notices of the

16   bar date sent.  They did -- they were served on the Law Offices

17   of Stanley Martin instead of the Law Offices of Martin Stanley.

18   However, none of those three notices came back.  They were not

19   returned as undeliverable.  Mr. Stanley --

20          THE COURT:  Mr. Stanley, every time you shuffle a

21   paper on your desk, it sounds like an explosion in my

22   courtroom.

23          MR. STANLEY:  I apologize, Your Honor.  I was blowing

24   my nose because I have still a cold from returning from the

25   trip I was on just recently.  I apologize.

Page 28

1          THE COURT:  All right.

2          MR. SMOLINSKY:  Mr. Stanley cites to a Fifth Circuit

3    case, the Adams case, for the premise that a notice has to be

4    sent to the proper name and address.  But in that case, the

5    address was wrong, the notice came back undeliverable, and the

6    claimant had no notice of the bankruptcy.

7          Interestingly, when we -- the first thing we did when

8    we received the motion was to make sure that the address was

9    correct, so we did put into Google the Law Offices of Martin

10   Stanley and got back from Google Stanley Martin, Attorneys at

11   Law.  So even the World Wide Web is confused as to whether it's

12   Stanley Martin or Martin Stanley.  But the fact of the matter

13   is that the notice did not come back undeliverable.

14         It's also interesting that, in the declaration, he

15   says he says that he never received notice, but the motion

16   cites four reasons for the failure of service, including "GM's

17   failure to use proper business name of Wiesjahn/Sand counsel if

18   it even mailed notice".  So this was the first pleading that

19   Mr. Stanley filed, and he had already known that the business

20   name was incorrect.

21         Second, I just want to speak to the assertion that we

22   should have served the plaintiffs directly, which may not be

23   part of your tentative ruling.  You may have already ruled on

24   that.  But I just wanted to note a few things.  First of all,

25   well, the complaint that was filed did not provide the address

09-50026-mg   Doc 9689   Filed 02/04/11   Entered 03/09/11 11:17:35   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 29 of 42

Page 29

1    of the plaintiff.  It simply said that they resided in

2    Monterey, California.  The complaint was filed less than a

3    month before the bankruptcy.  There was no discovery in the

4    case yet.

5         We called our co-counsel that was assigned to the

6    matter, and the only thing that is in the file so far is an

7    accident report that lists the decedent's address as a P.O. box

8    in Big Sur where the accident occurred, which he thought might

9    be the morgue or the state police.  So we had -- we never had

10   notice of an address for the plaintiffs, individually, and we

11   did make every effort when we served over two and a half

12   million parties to serve both the plaintiffs and the

13   plaintiffs' counsel, if we had the address.

14        Mr. Stanley had notice of the bankruptcy through the

15   suggestion of bankruptcy that was filed in the state court

16   litigation, and he never came to us and asked for different or

17   additional notice.

18        The case law supports the fact that serving on counsel

19   is sufficient.  I note the in re: Caritas case 435 B.R. 111.

20   That's the Eastern District of New York, 2010.  The in re:

21   Linzer case 264 B.R. 243.  That's the Bankruptcy Court, Eastern

22   District of New York, holding that a creditor's nonbankruptcy

23   is deemed to an authorized agent for receiving notice.  And the

24   Netherlands Antilles re: Treister case.  That's 38 B.R. 228.

25   That's a Southern District of New York case that finds that

MOTORS LIQUIDATION COMPANY, ET AL.

Page 30

1    service on co-counsel, as opposed to lead to lead counsel, is

2    sufficient for all purposes.

3            Just a moment on the equities here.  Mr. Stanley

4    argues that the claim is negligible and therefore it's no harm,

5    no foul to the estate.  But again, I remind this Court that the

6    aggregate of all similar case -- claims that have been asserted

7    is daunting.

8            While I loathe to get into the facts of the case, I

9    think it is relevant as to how much time and money the estate

10   is going to spend on this.  If Your Honor took a look at the

11   complaint that was filed to the motion, this relates to a

12   product liability claim relating to a car accident.  As the

13   clai -- as the complaint alleges, the decedent was a passenger

14   in a car driven by a drunk driver, hit by another drunk driver,

15   and the decedent passed away at the scene.  And then there's a

16   line about the spare tire being defective.  There's no

17   allegations that the car swerved.  There's no allegations that

18   the spare tire contributed in any way to the incident.  And I

19   just note that for the record, because this evidentiary hearing

20   will, at least, cost some money to do.

21           The last thing that I just want to bring up to Your

22   Honor' attention, I think Your Honor noted it, but I wanted to

23   cite to one case, the Ms. Interpret v. Rawe Druck-und-

24   Veredlungs case, 222 B.R. 409, that's a bankruptcy, Southern

25   District, 1998 case that stands for the proposition that a

09-50026-mg   Doc 9689   Filed 02/04/11   Entered 03/09/11 11:17:35   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 31 of 42

Page 31

1    party must do more than merely assert that it had not received

2    the mailing.  Its testimony or affidavit of nonreceipt is

3    insufficient standing alone to rebut the presumption that the

4    addressee received a proper mailed item when the sender

5    presents proof that it has properly addressed, stamped, and

6    deposited the item in the mail.

7           When we attached to our papers an affidavit of service

8    of the bar date, which lists the three notices that went out.

9    We did not put it in declaration form, pursuant to the case

10   management order.  We understand if Your Honor wants to take

11   testimony from Garden City Group on whether, in fact, it did

12   place it in the mail.  But to the extent that we do have an

13   evidentiary hearing, I would only ask Your Honor that we -- in

14   view of all the other factors that we limit the evidentiary

15   hearing solely to the issue as to whether or not the mailing

16   was sent and whether or not it came back undelivered.

17          THE COURT:  All right.  Mr. Stanley, I'll take brief

18   reply.

19          MR. STANLEY:  Can Your Honor hear me okay?

20          THE COURT:  Yeah.

21          MR. STANLEY:  Okay.  Two points, Your Honor.  One, I

22   think mine is the only case where they reversed the names, so

23   it's not going to cause a floodgate of litigation with regards

24   to this issue.  And secondly, we indicated in our brief that we

25   put something in there in our first papers, actually, if Your

1   Honor would look at their web site, which we did, the Motors

2   Liquidation web site, it's clearly indicated that my name was

3   backwards and incorrect.  So of course, that's how we figured

4   it out.  We didn't just guess at that.

5           THE COURT:  All right.

6           MR. STANLEY:  It's right up there on their web site.

7           THE COURT:  All right.  Anything else?

8           MR. STANLEY:  Nothing else, Your Honor.

9           THE COURT:  All right.  Gentlemen, I am going to

10  adhere to my tentative, and now I'm merely going to flesh it

11  out since this is just a weigh station to the evidentiary

12  hearing that I think is necessary.

13          As I indicated in my preliminary remarks, upon

14  mailing, there is a, not just an inference but a presumption of

15  receipt.  And while I think what's sauce for the goose is sauce

16  for the gander, and therefore I should hear a Garden City Group

17  testimony, it wouldn't surprise me if that evidence is going to

18  show that they had routinized procedures under which they mail

19  things in accordance with their proofs of service.  And that

20  will, indeed, be sufficient to set up the presumption.

21          However, I am not going to limit the evidentiary

22  hearing to whatever Garden City says, just as I'm not going to

23  ask the United States Postal Service have its employees deposed

24  or showing up in my courtroom because I mainly want to hear Mr.

25  Stanley and look him in the eye and make my own factual

09-50026-mg    Doc 9689    Filed 02/04/11    Entered 03/09/11 11:17:35    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 33 of 42

Page 33

1    determination as to whether or not he got actual notice.

2          Because he was a known agent of his clients, there was

3    no need for the debtors to serve the individual clients.

4    However, I don't think you don't need to be a brain surgeon to

5    see whether, if there was error here, how it came up.  You've

6    got a guy whose first name and his last name both happen to be

7    in common usage as both.  I wouldn't be surprised if Garden

8    City tells me that it kept people's name alphabetically by last

9    name, and then that that accounts for why it may have been

10    addressed that way.  And then we'll figure out what happened.

11          And it's going to rise on the credibility issue

12    because, frankly, I don't see floodgates as being an issue here

13    where you have the perfect storm of a guy's name being flip-

14    flopped.  And if the guys wants to come in my courtroom and

15    testify as to nonreceipt, I'm going to let him.  And the

16    remaining issues don't, either, require an evidentiary hearing

17    or any further ruling on my part.

18          This is all about actual notice.  I don't consider it

19    an implied or informal proof of claim showing to have been

20    appropriately made here.  That issue is out of the case at this

21    point.

22          So you're to deal with teeing it up for an evidentiary

23    hearing if the whole issue can't be resolved in some other way.

24    And of course, the debtors will give Mr. Stanley the same

25    courtesies they always give everyone else in terms of

MOTORS LIQUIDATION COMPANY, ET AL.

Page 34

1  accommodating his medical condition for the time of any

2  hearing.

3         And if I do permit the claim to be late-filed, of

4  course that's allowing a claim.  Presumably, then it will go

5  into the same ADR mechanism, which, if it happens, will duly

6  take into account the fact that the decedent's injuries, at

7  least seemingly, may have resulted, in great part, from the

8  effects of the two other causes, two drunken drivers.  That's

9  my ruling, folks.

10         MR. STANLEY:  Can I just have a few seconds on that

11  last issue, Your Honor?

12         THE COURT:  No, because other than giving you a

13  reservation of rights, I'm not ruling on it in any way.

14         MR. STANLEY:  Fair enough.

15         THE COURT:  Okay.

16         MR. STANLEY:  I appreciate it.  Thank you.  And when

17  is it that the Court would like to have the hearing, or do we

18  set that up --

19         THE COURT:  You talk to Mr. -- you talk to Mr.

20  Smolinsky or one of his designees and tee this up for further

21  proceedings.

22         MR. STANLEY:  All right, I appreciate your help and

23  counsel's help, Your Honor, in --

24         THE COURT:  You don't need to thank me.  That's why

25  the government pays me.

MOTORS LIQUIDATION COMPANY, ET AL.

1          MR. STANLEY:  Of course.  Thank you for letting me

2    appear on CourtCall at least.  (Indiscernible) fly out there

3    for a hearing.

4          THE COURT:  All right, very well.

5          MR. STANLEY:  Okay, take care.

6          THE COURT:  Thank you.

7          MR. STANLEY:  Bye.

8          THE COURT:  Next matter, Mr. Smolinsky; your next

9    series of matters.

10          MR. SMOLINSKY:  Thank you, Your Honor.  The last

11    contested matter, which isn't really contested, is the

12    objection to the claim of Amiel D. Foley.  That was a claim

13    filed in the amount of 999 trillion dollars or, in the

14    alternative, to make him CEO of the company.

15          I don't know if Mr. Foley is in the courtroom or on

16    the phone.

17          THE COURT:  Want to pause to find out?

18          MR. SMOLINSKY:  Yes.  Is Mr. Foley present?

19          THE COURT:  All right.  Well, he doesn't appear to be

20    present in the courtroom.  Is Mr. Foley on the phone?

21          The record will reflect no response.

22          MR. SMOLINSKY:  Thank you, Your Honor.  We tried to

23    ascertain the background of this claim.  It may relate to a

24    letter he sent to General Motors Corporation relating to an

25    idea for a new engine.  We noted in our papers that in New GM's

MOTORS LIQUIDATION COMPANY, ET AL.

Page 36

1    effort to take any technology that existed, they took an

2    assignment of that letter to the extent that it was an

3    executory contract.  But we have no further information about

4    the claim.

5            Obviously, given the size of the claim and the lack of

6    foundation, we would ask this Court to expunge the claim at

7    this time.

8            THE COURT:  Objection sustained.  Have one of your

9    staff paper the ruling.

10           MR. SMOLINSKY:  Yes, Your Honor.

11           Speaking of papering ruling, just as a housekeeping

12   matter, we thank you for your timely decision on the Apartheid

13   matter.  It was unclear whether or not you intended us to

14   submit an order or whether your bench decision served that

15   purpose.

16           THE COURT:  No, I realized that after I did it, Mr.

17   Smolinsky, but I'm very careful that when I anticipate that a

18   ruling be not just an explanation of my views, but also an

19   order, I say it very, very explicitly.  And I'm also mindful,

20   especially since I wrote this section of Collier on it, of the

21   separate judgment rule.

22           So yes, it must be followed by an order and, because

23   of the nature of this, it can be a combined order and judgment,

24   but it must say the baby words, judgment -- baby-talk words,

25   judgment in addition to merely saying order.

MOTORS LIQUIDATION COMPANY, ET AL.

Page 37

1          And while I'm confident that you have a cooperative

2     working relationship with the folks on the other side, since I

3     assume that they would want to, at least, consider their

4     opportunities for appeal, and you would have to put in full

5     reservations of rights, my recommendation to you is that the

6     order and judgment be settled upon them, but that you have a

7     phone call with them to find out in advance whether they --

8     what they need in the way of an opportunity to submit a counter

9     order or judgment.

10          And for the avoidance of doubt, I'm going to say now

11     that the time to appeal from, either, the order aspect or the

12     judgment aspect, or both, is going to run from the time that's

13     entered and not from the time of the written decision that I

14     issued.  I forgot when I issued it.

15          MR. SMOLINSKY:  Last week.

16          THE COURT:  This week, earlier this week, last week,

17     whenever it was.  I think it was Friday afternoon or something

18     like that.

19          MR. SMOLINSKY:  That sounds about right.

20          THE COURT:  Okay.  So settle an order.  Maybe the way

21     to do it, Mr. Smolinsky, is to simplify what I said.  Give them

22     two calendar weeks, fourteen days, by mail or seven days by

23     hand, fax, or e-mail.  But if one of them calls you up and says

24     we'd like more time before the order is signed because we want

25     to submit a counter order, if it's reasonable -- and by

Page 38

1    reasonable, I'm thinking weeks, a week, not multiple weeks --

2    give them that courtesy.

3            MR. SMOLINSKY:  Your Honor, we've spoken to claimant's

4    counsel since the decision, and I don't think it'll be a

5    problem to be able to submit to Your Honor even before this

6    time frame of consented to order of --

7            THE COURT:  Okay.

8            MR. SMOLINSKY:  -- both parties.

9            THE COURT:  Which, of course, would be without

10   prejudice to both sides' rights if either of them -- either

11   side wants something beyond my court.

12           MR. SMOLINSKY:  Of course, Your Honor.

13           THE COURT:  That's fine.  I should have let you speak

14   before I went into that lengthy discussion.  Of course you were

15   right.  It did require an order and judgment, and just make it

16   happen.

17           MR. SMOLINSKY:  We'll do that, Your Honor.

18           THE COURT:  Oh, I would appreciate it if you or your

19   designee, when that order comes in, tells me whether it is ripe

20   for immediate entry or whether I still need to allow for time

21   for the other side to counter.

22           MR. SMOLINSKY:  I will, of course, Your Honor.

23           THE COURT:  Okay, thank you.

24           MR. SMOLINSKY:  On the uncontested matters, the first

25   matter is an objection to several proofs of claim relating to

09-50026-mg   Doc 9689   Filed 02/04/11   Entered 03/09/11 11:17:35   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 39 of 42

Page 39

1    what we call the GTO class action.  Your Honor, these claimants

2    apparently withdrew their claims upon receiving our motion, and

3    what we'd like to do, nevertheless, rather than withdraw the

4    motion is to submit an order that, obviously, reflects the fact

5    that the claims have been withdrawn but nevertheless

6    disallowing them.

7              There's been no response to the motion -- to the

8    substance of the motion.

9              THE COURT:  Okay.

10             MR. SMOLINSKY:  The next matter, similarly, is a class

11   action.  This relates to parking brakes.  We've objected to

12   those claims on class certification and other matters.  We've

13   received no response to that motion.  We ask that the claims be

14   disallowed.

15             THE COURT:  They are, granted.

16             MR. SMOLINSKY:  With respect to the other matters,

17   they're all omnibus claims objections, running from, I guess

18   it's 111 to 136.  As usual, Your Honor, we've received a

19   variety of formal and informal responses.  Your law clerk had

20   reached out to us and had indicated that there were a few

21   letters that were sent to the court that have not yet been

22   uploaded to ECF.  We suspect that we also got copies of those

23   letters, but we also want to make sure that we don't expunge

24   claims to the best of our ability to the extent that there are

25   outstanding requests.

Page 40

1          So what we would ask Your Honor, unless you have any

2    questions is to wait two or three days until the dust settles

3    and then submit the orders, which, as usual, will reflect the

4    schedules to those orders, which claims are being expunged

5    because we've resolved any issues or there were no response,

6    which claims have been adjourned and which claims that we're

7    withdrawing our motion with respect to.

8          THE COURT:  That's fine, Mr. Smolinsky, but you and

9    your guys can help me by you being the ones who are proactive.

10   When you think the dust is sufficiently cleared, then say now,

11   we think it's ripe.

12         MR. SMOLINSKY:  Yes, Your Honor.

13         THE COURT:  Okay.

14         MR. SMOLINSKY:  I think that resolves the calendar.

15         THE COURT:  Okay, very well.  Then, we're adjourned.

16   Have a good day everybody.

17         MR. SMOLINSKY:  Thank you, Your Honor.

18      (Whereupon these proceedings were concluded at 10:35 AM)

19

20

21

22

23

24

25

Page 41

1

2                              I N D E X

3

4                              RULINGS

5                                              Page       Line

6    Debtors' Objection to Proof of Claim No.    36         9

7    65304 Filed by Amiel D. Foley Sustained

8    Motion to Disallow Withdrawn GTO Class      39         9

9    Action Claims Granted

10   Motion to Disallow Class Action Claims      39        15

11   Granted

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 42

1

2                         C E R T I F I C A T I O N

3

4     I, Dena Page, certify that the foregoing transcript is a true

5     and accurate record of the proceedings.

6

7     Dena Page          Digitally signed by Dena Page
                          DN: cn=Dena Page, c=US
                          Reason: I am the author of this document
8     _____          Date: 2011.02.04 16:00:52 -05'00'

9     DENA PAGE

10

11    Veritext

12    200 Old Country Road

13    Suite 580

14    Mineola, NY 11501

15

16    Date:  February 4, 2011

17

18

19

20

21

22

23

24

25