Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 09-50026(REG)

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    MOTORS LIQUIDATION COMPANY, et al.

9    f/k/a General Motors Corporation, et al.,

10

11              Debtors.

12

13    - - - - - - - - - - - - - - - - - - - - - -x

14

15              United States Bankruptcy Court

16              One Bowling Green

17              New York, New York

18

19              March 1, 2011

20              9:52 AM

21

22

23    B E F O R E:

24    HON. ROBERT E. GERBER

25    U.S. BANKRUPTCY JUDGE

Page 2

1

2      HEARING re Motion of Debtors for Entry of an Order Establishing

3      Claims Reserves in Connection with Distribution to Be Made

4      Under the Debtors' Amended Chapter 11 Plan

5

6      HEARING Motion of Debtors for Entry of an Order Estimating

7      Maximum Amount of Certain Claims for Purposes of Establishing

8      Claims Reserves under the Debtors' Amended Joint Chapter 11

9      Plan

10

11     HEARING re Debtors' Seventeenth Omnibus Objection to Claims

12     (Tax Claims Assumed by General Motors, LLC)

13

14     HEARING re Debtors' Objection to Proof of Claim No. 69998 filed

15     by Thomas Smalley

16

17     HEARING re Debtors' Motion to Reclassify Proof of Claim 60528

18     Filed by the Michigan Department of Environmental Quality

19

20     HEARING re Debtors' Motion Pursuant to 11 U.S.C. § 365(a) to

21     Reject Utility Services Agreement

22

23

24

25

Page 3

1

2   HEARING re Motion of Debtors for Entry of Order Pursuant to

3   Sections 105(a) and 363(b) of the Bankruptcy Code

4   (i)Authorizing the Providing of Certain Retiree Benefits

5   Consistent with Union Settlement Agreement by General Motors

6   LLC; and (ii)Granting Participation in General Unsecured Claim

7

8   HEARING re Motion of the Junsos to Be Deemed to have Timely

9   Filed an Informal Proof of Claim or, Alternatively, for Leave

10   to Late File a Proof of Claim

11

12   HEARING re Debtors' Objection to Proof of Claim No. 02307 Filed

13   by Bobbie Jean Ford Pierce

14

15   HEARING re Debtors' Objection to Proof of Claim 69923 Filed by

16   Ella M. Lewis

17

18   HEARING re Debtors' Objection to Proof of Claim 69969 Filed by

19   Luceal Anderson

20

21   HEARING re Debtors' Objection to Proof of Claim 69970 Filed by

22   Bernadine Toliver

23

24   HEARING re Debtors' Objection to Proof of Claim 70000 of Audrey

25   Magee

Page 4

1

2    HEARING re Debtors' Objection to Proof of Claim No. 70461 Filed

3    by Christi Coleman

4

5    HEARING re Debtors' Eighteenth Omnibus Objection to Claims (Tax

6    Claims Assumed by General Motors, LLC)

7

8    HEARING re Debtors' Twenty-Seventh Omnibus Objection to Claims

9    (Incorrectly Classified Claims)

10

11   HEARING re Debtors' 110th Omnibus Objection to Claims

12   (Contingent Co-Liability Claims)

13

14   HEARING re Debtors' 146th Omnibus Objection to Claims (Claims

15   for Equity Interests)

16

17   HEARING re Debtors' 147th Omnibus Objection to Claims (Claims

18   for Equity Interests)

19

20   HEARING re Debtors' 148th Omnibus Objection to Claims (Claims

21   for Equity Interests)

22

23   HEARING re Debtors' 149th Omnibus Objection to Claims (Claims

24   for Equity Interests)

25

1

2    HEARING re Debtors' 150th Omnibus Objection to Claims (Claims

3    for Equity Interests)

4

5    HEARING re Debtors' 151st Omnibus Objection to Claims (Claims

6    for Equity Interests)

7

8    HEARING re Debtors' 152nd Omnibus Objection to Claims (Claims

9    for Equity Interests)

10

11   HEARING re Debtors' 153rd Omnibus Objection to Claims (Claims

12   for Equity Interests)

13

14   HEARING re Debtors' 154th Omnibus Objection to Claims (Claims

15   for Equity Interests)

16

17   HEARING re Debtors' 155th Omnibus Objection to Claims (Claims

18   for Equity Interests)

19

20   HEARING re Debtors' 156th Omnibus Objection to Claims (Claims

21   for Equity Interests)

22

23   HEARING re Debtors' 157th Omnibus Objection to Claims

24   (Duplicate Debt Claims)

25

Page 6

1    HEARING re Debtors' 158th Omnibus Objection to Claims (Eurobond

2    Deutsche Debt Claims)

3

4    HEARING re Debtors' 159th Omnibus Objection to Claims

5    (Continent Co-Liability Claims)

6

7    HEARING re Debtors' 160th Omnibus Objection to Claims (Claims

8    Assumed by General Motors LLC)

9

10   HEARING re Debtors' 161st Omnibus Objection to Claims (Claims

11   Assumed by General Motors LLC)

12

13   HEARING re Debtors' 162nd Omnibus Objection to Claims (Claims

14   Assumed by General Motors LLC)

15

16   HEARING re Debtors' 163rd Omnibus Objection to Claims

17   (Insufficient Documentation)

18

19   HEARING re Debtors' 164th Omnibus Objection to Claims

20   (Insufficient Documentation)

21

22   HEARING re Debtors' 165th Omnibus Objection to Claims and

23   Motion to Enforce Bar Date Orders (Late-Filed Claims)

24

25

Page 7

1    HEARING re Debtors' 166th Omnibus Objection to Claims

2    (Duplicate Debt Claims - Industrial Revenue Bonds)

3

4    HEARING re Debtors' 167th Omnibus Objection to Claims (Products

5    Liability Claims Assumed by General Motors LLC)

6

7    HEARING re Debtors' 168th Omnibus Objection to Claims

8    (Supplemental Executive Retirement Benefits Claims of Former

9    Executive Employees)

10

11    HEARING re Debtors' 169th Omnibus Objection to Claims (Welfare

12    Benefits Claims of Retired and Former Salaried and Executive

13    Employees)

14

15    HEARING re Debtors' 170th Omnibus Objection to Claims (Welfare

16    Benefits Claims of Retired and Former Salaried and Executive

17    Employees)

18

19    HEARING re Debtors' 171st Omnibus Objection to Claims (Welfare

20    Benefits Claims of Retired and Former Salaried and Executive

21    Employees)

22

23    HEARING re Debtors' 172nd Omnibus Objection to Claims (Welfare

24    Benefits Claims of Retired and Former Salaried and Executive

25    Employees)

Page 8

1

2    HEARING re Debtors' 173rd Omnibus Objection to Claims (Welfare

3    Benefits Claims of Retired and Former Salaried and Executive

4    Employees)

5

6    HEARING re Debtors' 174th Omnibus Objection to Claims (Welfare

7    Benefits Claims of Retired and Former Salaried and Executive

8    Employees)

9

10    HEARING re Debtors' 175th Omnibus Objection to Claims (Welfare

11    Benefits Claims of Retired and Former Salaried and Executive

12    Employees)

13

14    HEARING re Debtors' 176th Omnibus Objection to Claims (Welfare

15    Benefits Claims of Retired and Former Salaried and Executive

16    Employees)

17

18    HEARING re Debtors' 177th Omnibus Objection to Claims (Welfare

19    Benefits Claims of Retired and Former Salaried and Executive

20    Employees)

21

22    HEARING re Debtors' 178th Omnibus Objection to Claims (Welfare

23    Benefits Claims of Retired and Former Salaried and Executive

24    Employees)

25

1

2    HEARING re Debtors' 179th Omnibus Objection to Claims (Welfare

3    Benefits Claims of Retired and Former Salaried and Executive

4    Employees)

5

6    HEARING re Debtors' 180th Omnibus Objection to Claims (Welfare

7    Benefits Claims of Retired and Former Salaried and Executive

8    Employees)

9

10   HEARING re Debtors' 181st Omnibus Objection to Claims (Welfare

11   Benefits Claims of Retired and Former Salaried and Executive

12   Employees)

13

14   HEARING re Debtors' 182nd Omnibus Objection to Claims (Welfare

15   Benefits Claims of Retired and Former Salaried and Executive

16   Employees)

17

18   HEARING re Debtors' 183rd Omnibus Objection to Claims (Welfare

19   Benefits Claims of Retired and Former Salaried and Executive

20   Employees)

21

22   HEARING re Debtors' 184th Omnibus Objection to Claims (Welfare

23   Benefits Claims of Retired and Former Salaried and Executive

24   Employees)

25

Page 10

1    HEARING re Debtors' 185th Omnibus Objection to Claims (Welfare

2    Benefits Claims of Retired and Former Salaried and Executive

3    Employees)

4

5    HEARING re Debtors' 186th Omnibus Objection to Claims

6    (Qualified Defined Benefits Pension Benefits Claims of Former

7    Salaried and Hourly Employees)

8

9    HEARING re Debtors' 187th Omnibus Objection to Claims

10    (Qualified Defined Benefits Pension Benefits Claims of Former

11    Salaried and Hourly Employees)

12

13    HEARING re Debtors' 188th Omnibus Objection to Claims

14    (Qualified Defined Benefits Pension Benefits Claims of Former

15    Salaried and Hourly Employees)

16

17    HEARING re Debtors' 189th Omnibus Objection to Claims

18    (Qualified Defined Benefits Pension Benefits Claims of Former

19    Salaried and Hourly Employees)

20

21    HEARING re Debtors' 190th Omnibus Objection to Claims (Claims

22    Relating to Former Employees Represented by UAW)

23

24    HEARING re Debtors' 191st Omnibus Objection to Claims

25    (Incorrectly Classified)

1

2    HEARING re Debtors' 192nd Omnibus Objection to Claims

3     (Duplicate Debt Claims from different Series of Debt)

4

5    HEARING re Debtors' 193rd Omnibus Objection to Claims

6     (Duplicate Debt Claims from Different Series of Debt)

7

8    HEARING re Debtors' 194th Omnibus Objection to Claims

9     (Duplicate Debt Claims from Different Series of Debt)

10

11    HEARING re Debtors' 195th Omnibus Objection to Claims

12     (Duplicate Debt Claims from Different Series of Debt)

13

14    HEARING re Debtors' 196th Omnibus Objection to Claims (Claims

15     for Equity Interests and Duplicate Debt Claims)

16

17    HEARING re Debtors' 197th Omnibus Objection to Claims (Claims

18     for Preferred Stock)

19

20    HEARING re Debtors' 198th Omnibus Objection to Claims (Claims

21     for Preferred Stock)

22

23    HEARING re Debtors' 199th Omnibus Objection to Claims (Claims

24     for Preferred Stock)

25

Page 12

1     HEARING re Debtors' 200th Omnibus Objection to Claims (Claims

2     for Preferred Stock)

3

4     HEARING re Debtors' 201st Omnibus Objection to Claims (Workers'

5     Compensation Claims)

6

7     HEARING re Debtors' 202nd Omnibus Objection to Claims

8     (Duplicate Debt Claims)

9

10    HEARING re Debtors' 203rd Omnibus Objection to Claims

11    (Duplicate Debt Claims)

12

13    HEARING re Debtors' 204th Omnibus Objection to Claims

14    (Duplicate Debt Claims)

15

16    HEARING re Debtors' 205th Omnibus Objection to Claims (Tax

17    Claims Assumed by General Motors LLC)

18

19    HEARING re Debtors' 206th Omnibus Objection to Claims (Claims

20    Against GMAC)

21

22    HEARING re Debtors' 207th Omnibus Objection to Claims

23    (Insufficient Documentation)

24

25

Page 13

1

2      HEARING re Debtors' 208th Omnibus Objection to Claims

3      (Contingent Co-Liability)

4

5      HEARING re Debtors' 209th Omnibus Objection to Claims

6      (Contingent Co-Liability)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      Transcribed by:  Lisa Bar-Leib

1

2    A P P E A R A N C E S :

3    WEIL GOTSHAL & MANGES LLP

4         Attorneys for the Debtors and Debtors-in-Possession

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:  JOSEPH H. SMOLINSKY, ESQ.

9         STEPHEN KAROTKIN, ESQ.

10

11   WEIL GOTSHAL & MANGES LLP

12        Attorneys for the Debtors and Debtors-in-Possession

13        1300 Eye Street, NW

14        Suite 900

15        Washington, DC 20005

16

17   BY:  DAVID R. BERZ, ESQ.

18        (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 15

```
 1

 2   KRAMER LEVIN NAFTALIS & FRANKEL LLP

 3        Attorneys for the Official Committee of Unsecured

 4         Creditors

 5        1177 Avenue of the Americas

 6        New York, NY 10036

 7

 8   BY:  LAUREN M. MACKSOUD, ESQ.

 9

10   U.S. DEPARTMENT OF JUSTICE

11        United States Attorney's Office

12        Southern District of New York

13        86 Chambers Street

14        New York, NY 10007

15

16   BY:  NATALIE N. KUEHLER, AUSA

17        DAVID S. JONES, DEPUTY CHIEF, CIVIL DIVISION

18

19

20

21

22

23

24

25
```

Page 16

```
 1
 2     FOLEY & LARDNER LLP
 3          Attorneys for Toyota Motor Corporation
 4          402 West Broadway
 5          Suite 2100
 6          San Diego, CA 92101
 7
 8     BY:  MATTHEW J. RIOPELLE, ESQ.
 9
10     GREENBERG TRAURIG, LLP
11          Attorneys for Certain Noteholders of General Motors Nova
12           Scotia Finance Company
13          MetLife Building
14          200 Park Avenue
15          New York, NY 10166
16
17     BY:  GARY D. TICOLL, ESQ.
18
19     HARRIS BEACH PLLC
20          Attorneys for
21          100 Wall Street
22          New York, NY 10005
23
24     BY:  ERIC H. LINDENMAN, ESQ.
25
```

Page 17

1

2   MORGAN LEWIS & BOCKIUS LLP

3        Attorneys for JPMorgan Chase Bank, N.A.

4        101 Park Avenue

5        New York, NY 10178

6

7   BY:  RICHARD S. TODER, ESQ.

8

9   PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

10        Attorneys for Enterprise Holdings Inc.

11        1285 Avenue of the Americas

12        New York, NY 10019

13

14   BY:  JONATHAN T. KOEVARY, ESQ.

15

16   DAY PITNEY LLP

17        Attorneys for United Technologies Corporation

18        One International Place

19        Boston, MA 02110

20

21   BY:  DANIEL J. CARRAGHER, ESQ.

22        (TELEPHONICALLY)

23

24

25

Page 18

1

2    CARSON FISCHER PLC

3         Attorneys for Lapeer Metal Stamping Companies, Inc.

4         4111 Andover Road, West

5         2nd Floor

6         Bloomfield Hills, MI 48302

7

8    BY:  PATRICK J. KUKLA, ESQ.

9         (TELEPHONICALLY)

10

11   DEPARTMENT OF LAW

12        Attorneys for Onondaga County, New York

13        John H. Mulroy Civic Center

14        19th Floor

15        421 Montgomery Street

16        Syracuse, NY 13202

17

18   BY:  LUIS A. MENDEZ, SENIOR ASSISTANT COUNTY ATTORNEY

19        (TELEPHONICALLY)

20

21

22

23

24

25

Page 19

1

2    THE WLADIS LAW FIRM, P.C.

3         Attorneys for Onondaga County, New York

4         P.O. Box 245

5         Syracuse, NY 13214

6

7    BY:  KEVIN C. MURPHY, ESQ.

8         (TELEPHONICALLY)

9

10   OFFICE OF THE MICHIGAN ATTORNEY GENERAL

11        Environment, Natural Resources and Agriculture Division

12        525 West Ottawa

13        6th Floor

14        G. Mennen Williams Bldg.

15        Lansing, MI 48909

16

17   BY:  CELESTE R. GILL, ASSISTANT ATTORNEY GENERAL

18        (TELEPHONICALLY)

19

20

21

22

23

24

25

Page 20

```
 1

 2   THE COLEMAN LAW FIRM

 3        Attorneys for Kevin Junso, Nikki Junso, Matt Junso, Cole

 4         Junso and the Estate of Tyler Junso

 5        77 West Wacker Drive

 6        Suite 4800

 7        Chicago, IL 60601

 8

 9   BY:  STEVEN R. JAKUBOWSKI, ESQ.

10        (TELEPHONICALLY)

11

12   NEW YORK STATE DEPARTMENT OF LAW

13        Office of the Attorney General, Eric T. Schneiderman

14        Environmental Protection Bureau

15        The Capitol

16        Albany, NY 12224

17

18   BY:  MAUREEN F. LEARY, AGAR

19

20

21

22

23

24

25
```

Page 21

1

2    ROPERS, MAJESKI, KOHN & BENTLEY

3        Attorneys for Creditor, Remy International, Inc.

4        201 Spear Street

5        Suite 1000

6        San Francisco, CA 94105

7

8    BY:  N. KATHLEEN STRICKLAND, ESQ.

9        (TELEPHONICALLY)

10

11   STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

12       Attorneys for Dean Trafelet, the Future Claims

13        Representative

14       2323 Bryan Street

15       Suite 2200

16       Dallas, TX 75201

17

18   BY:  JACOB L. NEWTON, ESQ.

19        (TELEPHONICALLY)

20

21

22

23

24

25

Page 22

1

2   ALSO APPEARING:

3   TRACY WOODY, CLAIMANT

4        4908 Vallery Place

5        Raleigh, NC 27604

6

7   BY:   TRACY WOODY, PRO SE

8        (TELEPHONICALLY)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MOTORS LIQUIDATION COMPANY, et al.

1              P R O C E E D I N G S

2              THE COURT:  Please be seated.  Okay.  We're here on

3     GM, Motors Liquidation Company.  Reserved matters, the Smalley

4     claim and perhaps some other matters.  Who's going to take the

5     lead?  Mr. Karotkin?  Mr. Smolinsky?

6              MR. SMOLINSKY:  Good morning, Your Honor.  Joe

7     Smolinsky of Weil Gotshal & Manges for the debtors.  Your

8     Honor, we served last night an amended agenda.  I hope Your

9     Honor received it -

10             THE COURT:  I did --

11             MR. SMOLINSKY:  -- albeit late.

12             THE COURT:  -- and the first five pages of it gave me

13    what I think I need to know.

14             MR. SMOLINSKY:  Then maybe we can just --

15             THE COURT:  So you can let me know whether there were

16    any further consensual resolutions since then or where we

17    stand.

18             MR. SMOLINSKY:  The only one, Your Honor, is with

19    respect to Toyota.  They will be withdrawing their objection to

20    the unliquidated claims reserve motion.

21             THE COURT:  Okay.  Fair enough.  Do you have a

22    recommendation as to how you'd like to proceed on the

23    remainder?

24             MR. SMOLINSKY:  I think, Your Honor, we can just go

25    through the agenda in its order if that's okay with you, Your

MOTORS LIQUIDATION COMPANY, et al.

Page 24

1    Honor.

2              THE COURT:  Go ahead.

3              MR. SMOLINSKY:  Your Honor, in connection with

4    confirmation of the plan, as with any liquidating plan, we need

5    to establish reserves in connection with distributions to make

6    sure that holders of disputed claims, unliquidated claims, are

7    taken care of.  We can't obviously distribute all of our assets

8    to the holders of allowed claims as of that date on the

9    effective date.  This is an arduous process that requires a lot

10   of attention to detail to make sure that everyone is protected.

11   That includes not only fully reserving for liquidated filed

12   claims in their full face amount if they're disputed or

13   unresolved but also involves, for example, filers of

14   administrative, secured and priority claims that we may contend

15   later on do not constitute priority claims.  We need to reserve

16   unliquidated claims so that if we are successful --

17             THE COURT:  In other words, if they're not admin

18   claims, they may still be unsecured claims in which case you

19   got to reserve them.

20             MR. SMOLINSKY:  That's correct, Your Honor.

21             THE COURT:  I understand.

22             MR. SMOLINSKY:  Additionally, we have the JPMorgan

23   litigation, for example, where we are reserving for the full

24   unliquidated amount of the claim.  In the event that the

25   committee's lawsuit is successful, they may end up with an

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 25 of 84

Page 25

1   unliquidated unsecured claim.

2           THE COURT:  Yeah.  Help me understand that because I

3   would have thought that the only way by which that would happen

4   would be if JPMorgan Chase has got to write a check back to the

5   estate for a billion and a half dollars.  And then that would,

6   at least seemingly, providing the funding source for that

7   claim.

8           MR. SMOLINSKY:  Well, Your Honor, the plan provides

9   for pro rata distributions of the same consideration for

10  unsecured claims.  So if they pay back cash, they're still

11  entitled to their pro rata portion of the New GM securities --

12          THE COURT:  Which would, under the economics of this

13  case, seemingly be a lot less than a billion and a half

14  dollars.

15          MR. SMOLINSKY:  It could be, Your Honor.  There would

16  be a trial to determine -- if Your Honor finds that the liens

17  go away but the claims remain as unsecured claims then Your

18  Honor would have to look at the portion that may be still

19  secured and there would have to be an evaluation trial because

20  I think at the end of the day there may still be collateral,

21  some collateral.

22          THE COURT:  I'm with you now.  Go on.

23          MR. SMOLINSKY:  So, Your Honor, as we -- we've

24  obviously been on a claims resolution tare the last several

25  months.  But we still are left with certain unliquidated

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 26 of 84

Page 26

1   claims.  In order to establish reserves for those claims, we

2   filed two motions.  The first is a fully unliquidated reserve

3   motion.  That is for claims that despite our efforts to get a

4   liquidated amount from the claimants, they are still filed in a

5   fully unliquidated amount.  And we need to establish reserves

6   for that.

7           The second motion is for partially unliquidated

8   claims.  Those are for claims that have a liquidated amount but

9   there may be language to the extent of and such other amounts

10  as may be later determined or plus interest and fees.  And we

11  used the motion to make sure that the cap that we were using,

12  the amount that we were using, for the distributions are

13  acceptable to the claimants.

14          Let me first deal with the fully unliquidated claims

15  and then come back to the partially.  This motion seeks to

16  establish an initial reserve in an amount equal to claims of

17  420 million dollars set aside for the 1500 or so claims that

18  were attached as exhibits to the motion.  Attached to the

19  motion is a declaration of Carrianne Basler who is a managing

20  director of Alix Partners and also a vice president of Motors

21  Liquidation Company.  And she has been primarily involved in

22  the claims process.

23          THE COURT:  Just a minute, please, Mr. Smolinsky.  I

24  have the same problem I always have with rustling and people on

25  the phone disrupting my courtroom.  CourtCall, would you put

Page 27

1   everybody on mute, please, until I authorize certain people to

2   speak?

3            Go on, Mr. Smolinsky.

4            MR. SMOLINSKY:  Your Honor, set forth in the Basler

5   declaration, Ms. Basler has reviewed all of the unliquidated

6   claims on those schedules, has attached numbers to those claims

7   and has determined that a reserve of 370 million dollars should

8   be more than enough to satisfy those unliquidated claims if, as

9   and when they come to be allowed claims.  In addition, they've

10  included a fifty million dollar cushion bringing us to the 420

11  million.  But there's perhaps more good news because of the

12  1500 or so claims that are subject to that motion, we have

13  objected to a large number of them and those objections are

14  pending many of which are being handled on today's calendar.

15  So we believe that by the time the effective date comes, there

16  should only be about 400 claims that will share in that 420

17  million dollars.  So those reserves should be more than

18  sufficient.

19            There are several buckets which are included in the

20  unliquidated claims reserve.  There are the fully unliquidated

21  claims that were filed whether before the bar date or late

22  filed.  There are contracts that may be rejected as part of

23  confirmation and those parties will have a period of time after

24  confirmation in which to file rejection damage claims.  So they

25  would be included in this reserve.  And finally, we thought it

Page 28

1   was prudent to allow the ability at our discretion to add into

2   the reserve later claims that were inadvertently disallowed.

3   We've now objected successfully to something like 20,000

4   claims.  There's always the possibility of notice issues or

5   whatever and we thought it was prudent to be able to have that

6   cushion available because if they're not taken care of in this

7   motion, if they do come back and have a valid concern about the

8   disallowance, there would be no source in which to take care of

9   them later on.

10          Additionally, Your Honor, the unliquidated claims

11  motion seeks to establish procedures where we'll able to

12  liquidate claims in the future.  And obviously, it's subject to

13  consent by the opposing party and if there's a dispute, we

14  would come back to the Court with respect to that estimation.

15  We don't expect that procedure to be used extensively.

16          This has been a good opportunity to have lots of

17  discussions with claimants that were on the list either to make

18  them comfortable that they're adequately protected or to allow

19  them to liquidate their claim and to be moved off of this

20  motion and into a separate liquidated claim reserve.

21          THE COURT:  Pause, please, Mr. Smolinsky.  Am I

22  correct that where claimants have duly liquidated their claims,

23  at least at this stage, you'd simply reserve for whatever

24  they're asking for?

25          MR. SMOLINSKY:  That's correct, Your Honor.

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 29 of 84

Page 29

1          THE COURT:  Okay.

2          MR. SMOLINSKY:  So, for example, the Numi (ph.)

3    claim, we are setting aside distributions on account of a 500

4    million dollar claim until that claim is ultimately resolved.

5          THE COURT:  Um-hmm.

6          MR. SMOLINSKY:  So after resolving many parties'

7    formal and informal objections, we are left with just a handful

8    of objections.  As I said earlier, the Toyota Corporation

9    objection has been resolved now.  Their unliquidated claim will

10   come off of the schedules and will be effectively estimated at

11   zero.  Of course, they continue to have claims that are

12   reserved in their full amounts.  I think it's seventy plus

13   million dollars that's being set aside for Toyota's claims.

14         That leaves -- and let me just run through the

15   objections.  I think there are four objections remaining.  The

16   first is Edmund Ster --

17       (Phone interference)

18         THE COURT:  CourtCall, is that coming from people on

19   the phone or is that coming from you?

20         THE OPERATOR:  All lines are muted and my line has

21   been muted until I just opened it.

22         THE COURT:  You have any idea why I'm getting all

23   this noise in my courtroom?

24         THE OPERATOR:  Your Honor, I'm not seeing line --

25         THE COURT:  I beg your pardon?

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 30 of 84

Page 30

 1           THE OPERATOR:  I'm not seeing any noise coming from

 2   any line.

 3           THE COURT:  It's not what I'm seeing.  That's the

 4   problem.  It's what I'm hearing.  All right.  Continue, Mr.

 5   Smolinsky.

 6           MR. SMOLINSKY:  The first remaining objection is

 7   Edmund Sterniak.  Mr. Sterniak is an equity holder.  His claim

 8   is that he wants a dollar claim for his shares.  We believe

 9   that this is a confirmation objection and not an objection to

10   the reserve motion.

11           The second remaining objection is Sentry Insurance.

12   It seems from Sentry Insurance's papers that they are seeking a

13   reservation of rights under 502(j) to reconsider.  For obvious

14   reasons, we don't believe that this is an objection to this

15   motion because we can't reserve for 502(j) reconsiderations.

16   So, of course, their rights are reserved for whatever they're

17   worth to bring motions under 502(j), but we don't believe that

18   that is relevant to the current reserve motion.

19           The third objection is Sharyl Carter.  Ms. Carter,

20   which should be no stranger to this Court, has filed an

21   objection asserting that her claim should be paid in cash

22   rather than in New GM stock.  Again, we think that this is a

23   confirmation objection and not an objection to this motion.

24           Finally, we have Tracy Woody.  Ms. Woody has asserted

25   a general unsecured claim in the amount of $39,376.02.  I'm not

Page 31

1    sure what Ms. Woody's objection is.  We spoke to Ms. Woody.

2    She said the amount's not big enough.  We said what would be

3    big enough.  She said 40,800 dollars.  We said sold.  We'll

4    reserve for that amount.  She seemed happy with that and then

5    called back later and said that she was no longer happy.  So

6    we'll hear from her as to what her continuing objection is.

7              And those are the objections --

8              THE COURT:  Let me make sure I understand.  You

9    agreed to consensually reserve for 41,000 and you understood

10   her to say that that was insufficient.

11             MR. SMOLINSKY:  That's right.  She called back and

12   said she spoke to a lawyer and she's no longer accepting of

13   that.  Of course, if we did agree with her as to a number, we

14   would take her off this motion and we would treat it as simply

15   a liquidated claim subject to our rights to object to that

16   claim in the future.

17             THE COURT:  Okay.

18             MR. SMOLINSKY:  I think we'll stop there unless Your

19   Honor has any questions and deal with the partially liquidated

20   motion later.

21             THE COURT:  Your recommendation is that I deal with

22   partially liquidated separately?

23             MR. SMOLINSKY:  I think so, Your Honor --

24             THE COURT:  All right.

25             MR. SMOLINSKY:  -- otherwise it might get confusing.

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 32 of 84

Page 32

1          THE COURT:  CourtCall, now take everybody who's on

2     the phone and temporarily unmute them.  I won't try to make you

3     find particular callers.  Is Mr. Sterniak in the courtroom?  No

4     response.  Mr. Sterniak, are you on the phone?  No response.

5     Okay.  Sentry Insurance.  In the courtroom?  No.  On the phone?

6     No.  Sharyl Carter?  In the courtroom?  No.  Ms. Carter, are

7     you on the phone?  No.

8          THE OPERATOR:  Yes, Your Honor.

9          THE COURT:  Who just spoke, please?

10          THE OPERATOR:  Oh, this is the operator.  I was

11     letting you know I'm not shutting down the lines.

12          THE COURT:  Oh, okay.  Tracy Woody.  Ms. Woody, are

13     you in the courtroom?

14          MS. WOODY (TELEPHONICALLY):  I'm on the telephone.

15          THE COURT:  Okay.  Ms. Woody, would you like to be

16     heard on the motion?

17          MS. WOODY:  Yes.

18          THE COURT:  Go ahead.

19          MS. WOODY:  Well, when I was contacted by GM and I

20     talked with an attorney about it, they had indicated that --

21     about a capital reserve of some kind.  And when I talked with

22     the attorney, they wanted to try to speak for me and I said

23     that would be -- I was advised by my attorney that's not a good

24     idea.  And the reason why the cap of reserve I'm having a

25     little difficult with is because I'm still facing ongoing

Page 33

1    charges for renting a car -- or I should say for using a car

2    that's not my vehicle.  And the dispute with the SUV scenario

3    litigation is going on.  So I'm still experiencing expenses

4    from that.  Also, court costs and so forth.  And when I mean

5    court costs, I mean this call and I'm filing these motions,

6    papers and so forth -- fees and everything.  That is, I'm still

7    being charged for this.  And so, when I think about some of

8    those ongoing expenses, do this litigation, it's still ongoing.

9             And the other problem I have as well is as far as the

10   deadline for objections --

11            THE COURT:  Just a minute.  Pause, please, Ms. Woody.

12   Is that noise on your line or is that on somebody else's line?

13            MS. WOODY:  Someone talking?  No.  I'm in a quiet

14   area.

15            THE COURT:  Okay.  CourtCall, put everybody else

16   other than Ms. Woody on mute for a moment, please.  Continue,

17   please, Ms. Woody.

18            MS. WOODY:  Yes, Your Honor.  I learned from my

19   episode to be in a quiet spot.

20            But in any event, also, I noticed that the -- on

21   number 3 of the motion that I filed an objection, it says that

22   the claim reserve if no estimation objection is timely filed is

23   only ten days and you should be able to -- and I was thinking

24   that since they have -- drawing this information, I have been

25   given probably about 300 documents to review by GM.  And it

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 34 of 84

Page 34

1   says that any type of objections, it's like the documentation

2   they filed.  I didn't even see my claim or whether it was

3   litigated in this case.  I didn't see any claim related to my

4   claim that I had filed back in October.  And I amended the

5   claim just recently.  And so, I didn't see any reference to my

6   claim at all in any of the documentation which kind of

7   concerned me.  And I was granted an allowable at least proof of

8   claim to litigate in this court regarding the matter against

9   Motor Liquidation.

10           Also, the fourteen days would allow at least a couple

11   more days to review all this documentation.  You know, I'm

12   proceeding pro se at this point.  And that's kind of a main

13   thing right there that I was entertaining.  In the claim said

14   that if you already filed a proof of claim in accordance with

15   the attached instruction, you didn't need to refile.  However,

16   I had to amend the complaint -- the proof of claim because

17   General Motors -- I was directed on their website that said

18   that my claim was zero.

19           THE COURT:  Okay.

20           MS. WOODY:  So --

21           THE COURT:  Thank you, Ms. Woody.  I take it that

22   takes care of it?

23           MS. WOODY:  Yes.

24           THE COURT:  Very well.  Mr. Smolinsky, do you want to

25   reply in any way?

```
 1            MR. SMOLINSKY:  Your Honor, I'd just note that the

 2   ten days that she's talking about I think refers to the timing

 3   on the procedures to estimate additional claims.  So if we were

 4   to file an objection to Ms. Woody's claim, we would do that on

 5   the full thirty days notice that we utilize on any claim

 6   objection.  All we need, Your Honor, is a number.  If she wants

 7   60,000 or 70,000, we'll reserve that.  But all we need is a

 8   number.

 9            THE COURT:  All right.  Ms. Woody, do you have any

10   number other than the approximately 41,000 dollars that they're

11   now prepared to reserve for you on?

12            MS. WOODY:  Well, I guess the speedy litigation would

13   help which I'm going to go ahead and start working on.  You

14   know, I think maybe if I could just put down, if he wants a

15   number, I'll give them the number.  But I don't believe that it

16   was 41.

17            THE COURT:  It was 40,800.  I gave you the extra 200

18   bucks.

19            MS. WOODY:  Okay.  Yes.  I think I can go ahead and

20   reserve for that number.

21            THE COURT:  All right.  Then I think that that issue

22   is now moot.  Thank you very much, Ms. Woody.

23            MS. WOODY:  Thank you.

24            THE COURT:  Have a good day.

25            MS. WOODY:  You, too.
```

MOTORS LIQUIDATION COMPANY, et al.

Page 36

1         THE COURT:  Very well.  Mr. Smolinsky, give her the

2    extra 200 bucks.  Make it 41,000.

3         MR. SMOLINSKY:  Yes, Your Honor.

4         THE COURT:  I should say when setting up the reserve.

5    This is not, of course, a claims allowance determination today.

6         MR. SMOLINSKY:  Right.

7         THE COURT:  Right.

8         MR. SMOLINSKY:  Your Honor, unless Your Honor has any

9    other questions, before we go on with third party comments

10   generally, because I think there are some parties that want to

11   make some general statements, perhaps we should now go to the

12   partially liquidated, talk about those objections and then

13   people --

14        THE COURT:  Certainly.

15        MR. SMOLINSKY:  -- could make reservations of

16   positions.

17        As I said previously, Your Honor, the second motion

18   seeks to cap partially unliquidated claims.  We have done our

19   best to address all of the issues that people have raised.  We

20   have discussed and dealt with at least twenty parties in this

21   regard.  And let me just go to the objections.  Before I talk

22   about the formal objections, there was one informal objection

23   that was interposed by the Quanta Site Group and the Edgewater

24   Administrative Site Group.  Those are environmental claims.

25   And we entered into an order, an agreed order, to liquidate

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 37 of 84

Page 37

1    their claims for purposes of the reserve and take them out of

2    this motion.  And we'll just submit that order to Your Honor.

3              THE COURT:  Okay.

4              MR. SMOLINSKY:  That leaves only two remaining

5    objections.  The first is by Onondaga County.

6              THE COURT:  The other is --

7              MR. SMOLINSKY:  The other --

8              THE COURT:  -- United Technology?

9              MR. SMOLINSKY:  That's correct, Your Honor.  Both of

10   these claims deal with the Onondaga environmental site.  As

11   background, Your Honor, the EPA has filed liquidated claims in

12   the amount of over two billion dollars.  We have been working

13   with them and are close -- we have agreements in principle on

14   many, many sites and are close with respect to others.  And we

15   expect that for the effective date before you will be a

16   stipulation allowing claims by the United States for a

17   multitude of sites.  Now, I don't know -- I don't think that

18   Onondaga is necessarily going to be one of them that we get

19   resolved.  But I can tell you that with respect to the Onondaga

20   site, there will be a -- the two billion dollars will come to

21   reflect the various resolutions.  So that number will come down

22   substantially.  But there will be an amount of over a hundred

23   million dollars that will be set aside for Onondaga to protect

24   the continuing dialogue with respect to that site.

25              THE COURT:  Now, pause, Mr. Smolinsky.  I don't know

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 38 of 84

Page 38

1    if you can answer this or whether you have to hand off to the

2    U.S. attorney's office.  When I've had other similar types of

3    issues in other cases, most obviously Lyondell and Chemtura,

4    the -- I was asked to consider settlements that were

5    quarterbacked by the federal EPA but where the state

6    environmental agencies also coordinated, such as the California

7    Toxic Substances Commission, or whatever the exact name is

8    there.  Are we talking about similar types of settlements here

9    where the state and federal governments are going to work hand

10   in hand or is there less coordination in this case than there

11   was is Lyondell and in Chemtura?

12            MR. SMOLINSKY:  I'll let the U.S. attorney speak,

13   Your Honor.  However, I know that there's a lot going on behind

14   the scenes and a lot of discussions taking place.  And I think

15   the government expects to lodge those -- those settlements and

16   have a public comment period before they bring it to Your Honor

17   to approve.

18            THE COURT:  All right.  I want you to keep talking.

19   And I want to ask Mr. Jones to be prepared to help me on that

20   when it's his turn to speak.

21            MR. SMOLINSKY:  Thank you, Your Honor.  So as not to

22   be lost, I think there could be an impression from reading

23   Onondaga's papers -- Onondaga County's papers, that we are

24   seeking to reserve for that claim at zero dollars.  In fact,

25   there's a twelve and a half million dollar claim that was the

MOTORS LIQUIDATION COMPANY, et al.

1    liquidated portion of their claim.

2              THE COURT:  Twelve and a half million dollars?

3              MR. SMOLINSKY:  That's correct, Your Honor.

4              THE COURT:  Now, there are two major environmental

5    issues that I'm aware in New York State or at least I think

6    there are, one in Onondaga County which is near Syracuse; and

7    the second -- is it Massena which involves the tribe up near

8    the Canadian border?

9              MR. SMOLINSKY:  That's correct, Your Honor.

10             THE COURT:  Okay.  Continue.

11             MR. SMOLINSKY:  And you might have noticed that New

12   York State had filed an objection as well but that objection

13   has been resolved, allowing for a liquidated claim subject to

14   our continuing rights to object.

15             THE COURT:  Okay.  Continue.

16             MR. SMOLINSKY:  We have attempted to speak to

17   Onondaga County about getting liquidated amounts to the extent

18   that they believe that the twelve and a half million dollars

19   combined with the EPA amount is not sufficient.  But we have

20   not received any alternative amount.

21             THE COURT:  Pause, please, Mr. Smolinsky.  I'm not

22   sure I'm keeping up with you.  You offered to set up a reserve

23   of twelve and a half million dollars for the county separate

24   and apart from whatever you're doing with the federal EPA?

25             MR. SMOLINSKY:  That's right, Your Honor.  And just

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 40 of 84

Page 40

1   so we're clear, we're not talking about a specific account for

2   each claim.  This is part of a global reserve for each disputed

3   claim.  So everyone is protected but there's no separate

4   account.

5          THE COURT:  No segregated account.

6          MR. SMOLINSKY:  That's correct, Your Honor.  So while

7   we don't believe that any additional claim is necessary, we're

8   obviously not before you seeking to litigate an estimated

9   amount for these claims.  But Onondaga County has been

10  unwilling so far to provide an alternative amount.

11         United Technologies Corporation -- this is a claim

12  relating to the same site.  Clearly, we believe that this claim

13  will go away under 502(b)(1)(B).

14         THE COURT:  United Technologies -- or what was it,

15  it's carrier division, is a PRP?

16         MR. SMOLINSKY:  That's correct, Your Honor.  So,

17  again, we think this claim is duplicative of the reserves that

18  we already have and don't think that any additional amount is

19  necessary.

20         THE COURT:  But you have not yet filed a formal

21  502(e) to blow it away.

22         MR. SMOLINSKY:  We did, Your Honor.  There's one

23  pending.

24         THE COURT:  Oh, it's pending but not -- I haven't

25  heard it yet?

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 41 of 84

Page 41

 1              MR. SMOLINSKY:  That's correct, Your Honor.

 2              THE COURT:  Okay.

 3              MR. SMOLINSKY:  And those are the two remaining

 4      objections.  So maybe we can pause here and allow comments.

 5              THE COURT:  Okay.  CourtCall, unmute anybody who's

 6      now on mute.  I'll hear first from Onondaga County.  I should

 7      say, is Onondaga County here in the courtroom?  No.  Is

 8      Onondaga County on the phone?

 9              MR. MENDEZ (TELEPHONICALLY):  Yes, Your Honor.

10              THE COURT:  Okay.  May I get your appearance, please?

11              MR. MENDEZ:  Yes.  This is senior deputy county

12      attorney, Luis A. Mendez.  And --

13              THE COURT:  Pause.  Did you say Mendez?

14              MR. MENDEZ:  That is correct.

15              THE COURT:  Thank you, Mr. Mendez.  Proceed, please.

16              MR. MENDEZ:  First --

17          (Gap in audio)

18              MR. MENDEZ:  -- question about whether or not the

19      county has been willing to provide Motors Liquidation with an

20      estimate.  We have been in discussions with Motors Liquidation

21      very early on.  We're also pending receipt from EPA of the

22      remedial investigation of feasibility studies.  To confirm, the

23      information that we needed to provide the estimate for one

24      prong of our claim, that has not happened.  By the time we did

25      get back to Motors Liquidation, they advised that they were in

MOTORS LIQUIDATION COMPANY, et al.

Page 42

1   active discussions with the EPA and were not going to entertain

2   additional discussions.

3           Be that as it may, the county's claims that are being

4   brought as claims -- the 12.5 million dollar reserves does not

5   relate to recovery of the EPA oversight costs of the entire

6   Onondaga Lake system of which Lake Creek is a subsite.

7           THE COURT:  Pause, please, Mr. Mendez.  You said it

8   relates to EPA's and whose?

9           MR. MENDEZ:  DEC's oversight --

10          THE COURT:  DEC?

11          MR. MENDEZ:  Yes.  Department of --

12          THE COURT:  DEC stands for Department of

13  Environmental Conservation?

14          MR. MENDEZ:  That is correct.

15          THE COURT:  Isn't that a state agency rather than a

16  county one?

17          MR. MENDEZ:  It is a state agency.

18          THE COURT:  Then help me understand why that's an

19  element of your claim.

20          MR. MENDEZ:  Because both the USEPA and DEC have

21  pursued the county of other -- for a recovery of those

22  oversight costs.

23          THE COURT:  The county is a PRP?  I thought you were

24  on offense.

25          MR. MENDEZ:  The county has been named as a PRP in --

Page 43

1    throughout the Onondaga Lake site system.  We have a number of

2    different issues that had approached a resolution.  As relate

3    to the Lower Ley Creek site, the county, along with Motors

4    Liquidation, were also named as potentially responsible

5    parties.

6              THE COURT:  Pause, please, Mr. Mendez, 'cause I must

7    confess, in my prep, I thought the nature of your claim was

8    kind of like the federal EPA or the New York State Department

9    of Environmental Conservation was where you were trying to act

10   in an enforcement capacity.  The allegations are that you're in

11   one of those four categories that makes you liable as a PRP?

12             MR. MENDEZ:  Yes.  And that was actually stated in

13   our proof of claim on the docket --

14             THE COURT:  Okay.

15             MR. MENDEZ:  -- our proof of claim.

16             THE COURT:  But then, if you're a PRP, why don't we

17   have 502(e) issues?

18             MR. MENDEZ:  There may be 502 issues if the Lower Ley

19   Creek claim is resolved.  If it is not resolved, then we would

20   contest that we have liability and apportionment issues with

21   respect to the site under the -- it was a decision that

22   preclude a 502(e) motion.

23             THE COURT:  Have you read my decisions in Chemtura

24   and Lyondell --

25             MR. MENDEZ:  Yes, we have.

Page 44

1           THE COURT:  -- on that?

2           MR. MENDEZ:  Yes, we have, Your Honor.  And there are

3    a number of potentially distinguishing factors with respect to

4    the Lower Ley Creek claim that probably are better addressed in

5    the confirmation phase.  But with respect to the matter at

6    hand, right now which was the amount for -- that would be

7    estimated.  We understood the debtors' proposed estimation with

8    respect to the Lower Ley Creek portion of the claim to be a

9    zero estimation.  And we objected in large part based on our --

10   on the debtors' failure to specify how they had reached that

11   number in light of the procedure that they described in the

12   disclosure statement for estimating the other environmental

13   claims that they have thus far been able to resolve, if you

14   apply the same procedures, could possibly arrive at a zero

15   dollar for an estimation.  That was the basis of our --

16   essential basis for our objection was the zero explanation for

17   that -- that portion of the Lower Ley Creek claim that seeks

18   remedial related costs.

19           THE COURT:  Mr. Mendez, did you or your county file a

20   liquidated claim for any past out-of-pocket expenses that

21   the --

22           MR. MENDEZ:  Well --

23           THE COURT:  -- county had to shell out?

24           MR. MENDEZ:  We did not file an administrative claim

25   for those.

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 45 of 84

Page 45

1            THE COURT:  Or a pre-petition claim?

2            MR. MENDEZ:  Or a pre-petition claim.

3            THE COURT:  Were there amounts that you already had

4    to pay out?

5            MR. MENDEZ:  Not for the Lower Ley Creek site itself,

6    Your Honor.

7            THE COURT:  All right.

8            MR. MENDEZ:  Most about costs for the Lower Ley Creek

9    site really have related to this litigation.

10           THE COURT:  Okay.  Anything else, Mr. Mendez?

11           MR. MENDEZ:  No.  Just to reiterate that our limited

12   objection is related to that aspect of the Lower Ley Creek

13   claim that spoke to the remedial costs not the oversight claims

14   which is a 12.5 million dollar reserved amount.

15           THE COURT:  Okay.  Anything else?

16           MR. MENDEZ:  No, not at this time, Your Honor.

17           THE COURT:  Thank you.  United Technologies?  Is that

18   Mr. Carragher?

19           MR. CARRAGHER (TELEPHONICALLY):  Yes, it is, Your

20   Honor.

21           THE COURT:  Are you on?  I guess you are.

22           MR. CARRAGHER:  Yes, I am.

23           THE COURT:  Go ahead.

24           MR. CARRAGHER:  Your Honor, Daniel Carragher for

25   United Technologies.  Your Honor, I, too, was confused by the

MOTORS LIQUIDATION COMPANY, et al.

Page 46

1    nature of the county's claim in preparing our papers and I hope

2    I didn't contribute to the Court's confusion.  I felt that they

3    were outdated and forced with capacity as well whereas they are

4    really in the same position as United Technologies as a PRP.

5           But the basis for our objection, and everyone's

6    objections were to -- at the same time on rather short notice,

7    was not to increase or establish high reserves for our

8    co-liability claims but to make sure the underlying claims

9    weren't artificially capped which would potentially harm us by

10   increasing our orphan share problem by application of some

11   artificial cap.

12          It does appear that the states and Honeywell did not

13   object to the capped amounts on their claims.  And those are

14   two -- that have potential liability.  The Town of Salina did

15   and there has been a resolution.  If I could hear what that

16   resolution is that may resolve our concerns.

17          THE COURT:  That's the Salina resolution?

18          MR. CARRAGHER:  Yes, Your Honor.

19          THE COURT:  Are you in a position to do that, Mr.

20   Smolinsky?

21          MR. SMOLINSKY:  I think so, Your Honor.

22          THE COURT:  You want to yield to Mr. Smolinsky for a

23   second, Mr. Carragher, to give him a chance to respond to your

24   inquiry?

25          MR. CARRAGHER:  Yeah.  I would appreciate that.

Page 47

1          THE COURT:  Go ahead, Mr. Smolinsky.

2          MR. SMOLINSKY:  Your Honor, the -- we've been in

3    discussions with the Town of Salina.  They did file an

4    objection and subsequently withdrew the objection when they

5    understood the treatment that we were providing in the motion.

6    We are currently reserving for a liquidated claim for the Town

7    of Salina in the amount of $41,076,137.63.  That was the amount

8    of the liquidated portion of their claim.  And after

9    discussions, they've agreed to withdraw their objection.

10         THE COURT:  Okay.  Does that help you, Mr. Carragher?

11         MR. CARRAGHER:  It does, Your Honor.  And I also saw

12   the New York State resolution appears to be on similar lines.

13   And our concern, as with the county's, on the EPA, which is the

14   primary amount, is we didn't know what portion of that was --

15   if its cap -- if any, was attributable to Lower Ley Creek.  And

16   that's where we are -- had been in as a potentially responsible

17   party.  We would appreciate more information about that.  I did

18   hear Mr. Smolinsky's presentation that the Onondaga Lake claims

19   would be reserved at the hundred million dollar level, most

20   likely.  And if there's some portion of that to allocate it to

21   Lower Ley Creek, that was -- would give us more comfort.  We're

22   not being impaired by the application of these motion.

23         THE COURT:  I feel a little bit like we're playing

24   Let's Make a Deal here in the courtroom.  But if this exchange

25   of information can be constructive, it's worth it.  Mr.

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 48 of 84

Page 48

1   Smolinsky, can you or anybody else bring something to the table

2   on this?

3           MR. SMOLINSKY:  I'm not sure what to propose, Your

4   Honor.  I guess, we --

5           THE COURT:  No.  I wasn't looking for a new proposal.

6   I was looking for you just giving information to Mr. Carragher.

7   If I have the full array of information after you and the EPA

8   and Mr. Carragher speak, I'll rule.

9           MR. SMOLINSKY:  I think you do, Your Honor.  The

10  twelve million five -- I think there was a question on where

11  that number came from.  And that number was taken from

12  paragraph 8 in the addendum to the --

13          THE COURT:  The twelve and a half million being for

14  the Town of Salina?

15          MR. SMOLINSKY:  No.  That's the Onondaga County.

16          THE COURT:  Oh.  Right.  Forgive me.  Excuse me.

17          MR. SMOLINSKY:  That was --

18          THE COURT:  Salina got forty-one million.

19          MR. SMOLINSKY:  That's correct, Your Honor.

20          THE COURT:  Okay.

21          MR. SMOLINSKY:  And obviously not -- they will be

22  reserved for.

23          THE COURT:  Okay.  Now is the twelve and a half

24  million dollars for Onondaga County for Onondaga Lake, Lower

25  Ley Creek or some other property or all of the above?

1            MR. SMOLINSKY:  It refers to the Onondaga Lake

2    Superfund site which I don't know enough to know whether that's

3    the entire --

4            THE COURT:  You don't know how broadly that site is

5    defined?

6            MR. SMOLINSKY:  That's correct, Your Honor.

7            THE COURT:  Okay.  Okay.  All right.  Are you in a

8    position yet where you need more information, Mr. Carragher, or

9    do you have to make your legal arguments?  When I was doing my

10   prep --

11           MR. CARRAGHER:  No.  I don't need any more

12   information, Your Honor.  Our primary concern was that the --

13   with the resolution of the Town of Salina, the USEPA claims and

14   Honeywell claims are not artificially capped.  And since those

15   parties haven't objected and there's a two billion dollar

16   number still at this point being used for the USEPA then I

17   think that does satisfy our concerns.

18           THE COURT:  Okay.  Very good.  I'm glad to hear that.

19   All right.  So United Technologies' concerns have been

20   addressed.

21           MR. MENDEZ:  If I may be heard one more time, if I

22   may impose on the Court?

23           THE COURT:  Who is this speaking, please?

24           MR. MENDEZ:  This is Mr. Mendez --

25           THE COURT:  Go ahead, Mr. Mendez.

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 50 of 84

Page 50

1          MR. MENDEZ:  -- for Onondaga County.  We, too, have

2     benefited from the exchange of information here and understand

3     that there are continuing discussions and discussions that

4     involve the Onondaga Lake site, generally, and perhaps the

5     Lower Ley Creek, in particular.  And based on those

6     discussions, I would only request that if something develops in

7     the next twenty-four hours or so, if debtors' counsel would

8     communicate with us so that we can apprise our client and be in

9     a better position to advise them on how to proceed with

10    Thursday's presentation.

11          THE COURT:  Can I impose on you to do that, Mr.

12    Smolinsky?  Any time by -- that by sharing information you can

13    make an objection go away, that's a pretty good deal.

14          MR. SMOLINSKY:  We've tried to do that, Your Honor.

15    And we're happy to speak to Mr. Mendez going forward.

16          THE COURT:  Okay.  You got it, Mr. Mendez.

17          MR. MENDEZ:  Thank you, Your Honor.

18          THE COURT:  Okay.  Well, then am I right, folks, that

19    on the partially liquidated claims, both objections have now

20    been resolved?

21          MR. MENDEZ:  Yes, Your Honor.  I would say that that

22    would be the case.

23          MR. CARRAGHER:  Yes, Your Honor.  I agree also.

24          THE COURT:  Okay.  Very good.  All right.  Then my

25    thought, Mr. Smolinsky, had been to take a recess to deal with

Page 51

 1   any open issues.  But I wonder if this is a good time for you

 2   to put any deals on the record or for counterparties' deals --

 3   to put whatever they want to say on the record.

 4          MR. SMOLINSKY:  Your Honor, I didn't intend to put

 5   the deals, the liquidated amounts, on the record unless Your

 6   Honor is interested.

 7          THE COURT:  I don't need that.  But I thought you

 8   were telling me that some people wanted to make remarks.

 9          MR. SMOLINSKY:  I believe there are some parties --

10   JPMorgan, specifically, had asked to reserve some time to make

11   some comments.

12          THE COURT:  Mr. Toder, is that you or one of your

13   guys?

14          MR. TODER:  It's me this time, Your Honor.

15          THE COURT:  Okay.  Come on up.

16          MR. TODER:  But it's not a lot of time.

17          THE COURT:  I would hope not.

18          MR. TODER:  Thank you, Your Honor.  Richard Toder,

19   Morgan, Lewis & Bockius, for JPMorgan Chase Bank.  Debtors

20   advised us that, in fact, the estimation motion was not

21   intended to cover JPMC's administrative claims.  We had been

22   listed in the exhibit with respect to two administrative claims

23   which led to the confusion.  And that indeed, the term loan

24   avoidance claim was being fully reserved as a liquidated claim.

25   The motion had been for unliquidated claims.  We thought we

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 52 of 84

Page 52

1    were within that category.  They fully agreed -- they've agreed

2    to fully estimate.

3            Because of the close relationship between the

4    estimated claims and the plan confirmation hearing, there are

5    two and a half issues that remain.  And in response to the

6    Court's administrative order regarding the confirmation

7    hearing, at the end of last week, we filed a motion seeking no

8    more than five minutes of argument time.  We have not been

9    included among the parties.  On what I think is fair to

10   characterize as unique issues, the Court has not ruled on that.

11   I was hoping that we could impose upon the Court or request of

12   the Court that you allow us that five minutes.  And the

13   commitment that I will give to the Court is that if -- and I

14   have some hope that this would be the case based on

15   conversations with debtors' counsel -- that we're able to

16   address these remaining -- as I refer to euphemistically as two

17   and a half issues that we won't impose on the Court for even

18   the five minutes.  So I guess I'm requesting albeit the --

19           THE COURT:  All right.  I don't have a yellow light

20   and a red light.  You can have the five minutes.  I would hope

21   that on an issue of this character, you don't have to use it.

22           MR. TODER:  Me, too, but thank you very much.

23           THE COURT:  All right.

24           MR. KOEVARY:  Thank you, Your Honor.  Jonathan

25   Koevary, Paul, Weiss, Rifkind, Wharton & Garrison, for

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 53 of 84

Page 53

1    Enterprise Holdings Inc.  Your Honor, just to put -- we were an

2    objector.  Our objection was resolved.  Your Honor offered to

3    have us put things on the record.  We understand we're being

4    taken off of the schedules and that we have a liquidated claim

5    for plan reserve purposes at the amount that we requested in

6    our objection.  Thank you.

7             THE COURT:  All right.  Thank you, Mr. Koevary.  Mr.

8    Smolinsky, did he get it right?

9             MR. SMOLINSKY:  Yes, Your Honor.

10            THE COURT:  Okay.  Anyone else?

11            MS. KUEHLER:  Your Honor, Natalie Kuehler from the

12   U.S. attorney's office.

13            THE COURT:  Your last name, please?

14            MS. KUEHLER:  Natalie Kuehler.

15            THE COURT:  Kuehler?

16            MS. KUEHLER:  Yes.

17            THE COURT:  Thank you.

18            MS. KUEHLER:  On behalf of the United States.  I want

19   to mention for the record that United States was -- there were

20   EPA claims or United States claims that were initially included

21   in both motions currently before the Court, the fully

22   unliquidated reserves motion and the partially unliquidated

23   claims motion.  The United States and the debtors have reached

24   agreement to remove the United States claims that were part of

25   the fully unliquidated reserves motion from that motion so they

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 54 of 84

Page 54

1    would no longer be part of the unliquidated claims reserve but

2    could be satisfied from the existing two billion dollar reserve

3    established in the partially unliquidated claims motion.

4            In addition, I wanted to address Your Honor's

5    questions about coordination between USEPA and the states on

6    the various environmental liabilities of the debtors.  As Your

7    Honor knows, we have reached settlement on own site liabilities

8    and submitted an environmental response -- a proposed

9    Environmental Response Trust Consent Decree and Settlement

10   Agreement.  There was extensive cooperation with the relevant

11   states on that.  And in fact, fourteen of the states and a

12   tribe --

13           THE COURT:  I'm sorry.  There was coughing while you

14   were saying that last remark.

15           MS. KUEHLER:  And fourteen states and a tribe are co-

16   signatories on that agreement.  In addition, we have reached

17   settlement agreements for certain nonowned sites --

18           THE COURT:  The distinction you're making -- stuff

19   that GM owned at the time it filed its petition, on the one

20   hand, and that it had once owned but no longer owned, on the

21   other?

22           MS. KUEHLER:  No.  These are all -- there are certain

23   properties within the environmental response trust that are

24   being resolved although they are currently no longer owned by

25   the debtor but they were at the time of the petition date.

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 55 of 84

Page 55

1    There are also --

2            THE COURT:  Oh, just since June of 2009.

3            MS. KUEHLER:  Since June of 2009.

4            THE COURT:  Okay.

5            MS. KUEHLER:  There are also some small parcels that

6    were never owned by the debtors but that for reasons of

7    efficiency were included in the environment response trust

8    settlement agreement.  And separate from that, there are six

9    settlement agreements that are also already on record with the

10   Court for sites that the debtors did not own at the petition

11   date.  And at those separate six settlement agreements, we also

12   had extensive coordination with the states involved.

13           For the remaining environmental liabilities, there

14   are certain sites where there are no co-extensive state claims

15   and there are others where there are.  The Onondaga related

16   claims, for example, which we've been discussing here today, we

17   have been coordinating closely with the New York DEC.  So

18   depending on the site and the particular issues involved, there

19   has been extensive coordination.  Or, where no coordination was

20   necessary, none.

21           THE COURT:  Okay.  Thank you.  All right.

22           MS. LEARY:  Your Honor, if I might?

23           THE COURT:  Yes.

24           MS. LEARY:  Maureen Leary from the New York attorney

25   general's office --

Page 56

 1            THE COURT:  Ms. Leary?

 2            MS. LEARY:  -- on behalf of the State of New York and

 3    the Department of Environment Conservation.  Just to confirm

 4    Mr. Smolinsky's representation that our objection to the cap

 5    motion has been withdrawn based upon the deletion of two of New

 6    York's twenty-one claims in that motion in the exhibits.  Ms.

 7    Wine and Mr. Smolinsky have provided me with a letter, I

 8    believe.  It's directed to the claims agent that would put

 9    those two claims, along with the other New York claims, and

10    they will be reserved at the face amount --

11            THE COURT:  That New York State asked for?

12            MS. LEARY:  -- that New York State asserted.  So I

13    just wanted to confirm that.

14            THE COURT:  All right.

15            MS. LEARY:  Is that okay?

16            THE COURT:  Thank you, Ms. Leary.

17            MS. LEARY:  All right.

18            THE COURT:  Anybody else?  Okay.  Let's review the

19    bidding.  I think I need to rule on Sterniak, Sentry Insurance

20    and Sharyl Carter.  Am I missing anything else?

21            MR. SMOLINSKY:  Umm --

22            THE COURT:  Other objections having been withdrawn or

23    resolved.

24            MR. SMOLINSKY:  That's correct.  With Ms. Woody's

25    claim being resolved, that's correct.

Page 57

1          THE COURT:  Okay.  Under these circumstances, I don't

2    need to take a recess if that is all that's left because my

3    understanding is that the partially liquidated claims motion

4    had previously been resolved vis-à-vis everyone except Onondaga

5    County and United Technologies and those matters were resolved

6    this morning.

7          What is left before me are three objections to the

8    wholly unliquidated claims reserve motion, that of Mr.

9    Sterniak, Sentry Insurance and Sharyl Carter.  Reservations of

10   rights typically, and especially vis-à-vis 502(j), do not rise

11   to the level of requiring reserves to be set up for them.  And

12   if 502(j) claims or entitlements were ever construed to be of

13   that character, we could never reorganize Chapter 11 cases.  We

14   could never proceed with a Chapter 11 plan.  The whole name of

15   the game is to narrow the claims that are deserving of allowed

16   claim treatment and to give those with genuinely allowed claims

17   recoveries without undue delay.  And accordingly, I'm allowing

18   Sentry Insurance to have any rights it has under 502(j) and to

19   reserve any other rights that it has under applicable law.  But

20   I'm ruling that they don't have any relevance to the reserves

21   motion that's before me.

22          As I've said in other contexts, as early as the 363

23   decision on the 4th of July weekend back in 2009, it's

24   unfortunate that there isn't enough value in the Old GM estate,

25   the Motors Liquidation estate, to make distributions to equity

Page 58

1    holders.  But that's the harsh reality of Old GM's financial

2    circumstances.  Where, as here, I'm not in a position to make

3    full distributions to the unsecured creditor community, of

4    course, I cannot authorize either distributions or reserves for

5    the benefit of equity holders.  So Mr. Sterniak's objection

6    will be overruled for that reason.

7          Lastly, Sharyl Carter would like cash instead of New

8    GM stock.  I think it's likely that there are many creditors

9    who feel likewise.  But that isn't the consideration that New

10   GM provided to Old GM at the time of the 363 sale.  And it's,

11   in any event, a confirmation objection, if that, although I

12   supposed I've telegraphed my thinking on the extent to which it

13   would be a valid confirmation objection as well.  So that

14   objection is overruled.

15         Mr. Smolinsky, you and your folks are to paper these

16   rulings at your earliest convenience including papering any

17   revisions in the arrangements that were made as part of

18   resolving claims consensually.

19         MR. SMOLINSKY:  Yes, Your Honor.  We'd like to ask

20   your indulgence to perhaps wait twenty-four hours and then

21   submit an order because we are dealing with a lot of claims

22   here today that will allow us, if those claims are disallowed

23   to pull them off of the schedules so there'll be fewer claims

24   that are subject to that unliquidated claims reserve.

25         THE COURT:  That's fine.

Page 59

```
 1            MR. SMOLINSKY:  Thank you, Your Honor.  The next

 2      matter on the --

 3            THE COURT:  Pause, please, Mr. Smolinsky.  Anybody

 4      who is here on just what we went through so far is free to

 5      leave if he or she would like to.

 6         (Pause)

 7            MR. CARRAGHER:  I'll leave the phone call also.

 8      Thank you, Your Honor.

 9            THE COURT:  Very well.

10         (Pause)

11            THE COURT:  Okay, Mr. Smolinsky.  Go ahead.

12            MR. SMOLINSKY:  Thank you, sir.  The third matter on

13      the calendar is the seventeenth omnibus objections to claim.

14      Your Honor, this has been carried for some time.  We have three

15      remaining responses to that motion.  It's the Ohio Department

16      of Taxation, the state of Michigan and the IRS.  I'm happy to

17      report that we have recently completed a stipulation with the

18      IRS that will resolve and disallow and expunge all of the IRS'

19      remaining claims.  And we can just submit that stipulation to

20      Your Honor for consideration.

21            THE COURT:  Okay.

22            MR. SMOLINSKY:  The state of Michigan has agreed to

23      withdraw its claims and that would resolve the motion as to it.

24            And that remains -- that leaves us with the Ohio

25      Department of Taxation.  The Ohio Department of Taxation has
```

Page 60

```
 1    filed several claims against the debtors totaling in excess of

 2    fifty-one million dollars.  The problem with those claims at

 3    this juncture is that they're filed as priority claims.  So

 4    that would mean, Your Honor, that we would have to deal with

 5    them in connection with establishing cash reserves on the

 6    effective date which we cannot do.  So we bring it before Your

 7    Honor today.

 8              I think our papers are fairly straightforward.  Under

 9    the MSPA, the -- all tax claims were assumed by New GM.  The

10    state of Ohio has been in discussions, negotiations with New

11    GM.  We have not been a party to those discussions.  But it's

12    clear that the parties are acting consistent with the fact that

13    New GM has assumed that liability.  I don't think that there's

14    any dispute by the state of Ohio that this liability has been

15    assumed.  But they're not happy with allowing the disallowance

16    of the claim.

17              THE COURT:  Well, the real issue isn't that New GM

18    said it would pay them.  The issue -- and there was a question

19    I wanted to ask the state of Ohio.  And let me pause for a

20    second. Is state of Ohio here in the courtroom?  No.  Is state

21    of Ohio on the phone?  Anybody from the state of Ohio on the

22    phone?  CourtCall, is everybody unmuted?  CourtCall, are you

23    still on?

24              THE OPERATOR:  Yes, Your Honor.  Everyone's unmuted.

25              THE COURT:  Okay.  I'm going to ask once again.  Is
```

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 61 of 84

Page 61

1    there anybody here on behalf of the state of Ohio?  All right.

2    It seems to me, Mr. Smolinsky, the relevant issue isn't just

3    that New GM agreed to pay them but that the sale order, the 363

4    order, said that Old GM was off the hook on them.

5            MR. SMOLINSKY:  That's correct, Your Honor.  And I'll

6    note that the attorney general for the state of Ohio was

7    certainly noticed with the sale motion.  In fact, they

8    appeared.  They filed objections to the sale on a myriad of

9    points.  They were there when the order was papered.  And

10   paragraph 26 of the order clearly states that the debtors

11   cannot be pursued for liabilities that have been assumed.

12           So I think Your Honor hit the nail on the head that

13   there's no basis to continue to pursue the debtors on this

14   claim.

15           THE COURT:  Okay.  One last time.  Is anybody here on

16   behalf of the state of Ohio before I rule on this issue?  No

17   response.

18           All right.  In this contested matter in the Chapter

19   11 case of Motors Liquidation, Old GM, I have the debtors'

20   motion to expunge the claim of the state of Ohio.  The motion

21   is granted.

22           As Mr. Smolinsky observed in oral argument, New GM

23   agreed to assume the tax liability.  As importantly or more so,

24   frankly more so, the sale order, the 363 sale order, provided

25   that Old GM was off the hook on liabilities such as this tax

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 62 of 84

Page 62

1   liability that New GM assumed.  Accordingly, by reason of the

2   sale order, New GM is not -- is liable on this to the extent

3   it's otherwise liable under law.  And Old GM is off the hook on

4   them.  Nothing in this ruling should be deemed to be a

5   determination as to the obligation of New GM to the state of

6   Ohio.  But what I am ruling on today is that Old GM is not

7   liable for it.  Accordingly, the claim must be expunged.

8         MR. SMOLINSKY:  Thank you, Your Honor.  We can submit

9   an order.

10         THE COURT:  Paper it with a written order the time to

11   appeal from this determination will run from the time of entry

12   of the order and not from this dictated decision.

13         MR. SMOLINSKY:  Yes, Your Honor.  We'll do that.

14   Your Honor, the last contested matter is the debtors' objection

15   to proof of claim number 69998 filed by Thomas Smalley.

16         Your Honor, we were expecting to go forward with this

17   motion on an uncontested basis until we received yesterday a

18   copy of the objection -- or a response.  So we stand before

19   still wanting to go forward but we've had very little time to

20   respond to the responses filed by Mr. Smalley.

21         THE COURT:  I think I understand the issues.  Mr.

22   Smalley, are you on the phone?  Or, first, let me ask, Mr.

23   Smalley, are you in the courtroom?  No response.  Mr. Smalley,

24   are you on the phone?  No response.  I am in a position to rule

25   on this on the papers.  But I'll need to take a recess till

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 63 of 84

Page 63

1    approximately 11:00 or shortly thereafter to do it.  Do you

2    want to supplement or make any verbal remarks, Mr. Smolinsky?

3              MR. SMOLINSKY:  No, Your Honor.  I just want to make

4    sure that CourtCall opened the lines.  And then what I would

5    recommend is maybe we run through the uncontested calendar and

6    let everybody else go that might be here on that.  And then

7    I'll stay while you prepare your decision.

8              THE COURT:  Fair enough.  CourtCall, I think you told

9    me that you had unmuted all of the lines, am I correct?

10             THE OPERATOR:  Yes, Your Honor.

11             THE COURT:  Okay.  I'm going to ask one more time.

12   Is Mr. Smalley on the phone or anybody on his behalf?  No

13   response.  Okay.  Take care of the rest of your business, Mr.

14   Smolinsky.  Then anybody who's here for matters other than the

15   Smalley thing will be free to leave.

16             MR. SMOLINSKY:  Thank you, Your Honor.  On the

17   uncontested matters, we have debtors' motion objecting to the

18   Michigan Department of Environmental Quality.  We have entered

19   into a stipulation with the state of Michigan which we will

20   submit to Your Honor for consideration.

21             We then have the debtors' motion to reject utility

22   services agreement.  Your Honor may recall that we filed a

23   motion to simply reject that one agreement.  There was a

24   response filed asserting that this was part and parcel of a

25   number of agreements that would constitute a single integrated

Page 64

1    contract.  After reviewing the agreements, we agreed with that

2    position and we've agreed with DTE that we would agree to

3    reject all three of those agreements.  And there'll be a

4    stipulation reserving the parties' rights with respect to

5    365(h) rights as to whether it impacts it, that it's an

6    integrated contract, rejection damages and the like.  So we

7    were just exchanging signature pages late last night and we'll

8    submit that stipulation to Your Honor.

9              THE COURT:  Okay.

10             MR. SMOLINSKY:  Next we have the final motion,

11   hopefully, on the splinter unions.  And I think Mr. Karotkin

12   will address this motion.

13             THE COURT:  Okay.  Mr. Karotkin?

14             MR. KAROTKIN:  Good morning, Your Honor.  Stephen

15   Karotkin, Weil Gotshal & Manges, for the debtors.  Your Honor,

16   the motion, I believe, is self-explanatory.  It was served on

17   all of the twenty-four remaining former union retirees who are

18   represented by the Boilermakers.

19             As set forth in the motion, Your Honor, the

20   settlement with the what we call the splinter unions has been

21   made available to any of the unions that wanted to participate.

22   All of the unions other than the Boilermakers have already

23   decided to participate and orders were entered approving their

24   participation as well as --

25             THE COURT:  But for some reason the Boilermakers

Page 65

1    didn't go to bat for their former employees?

2         MR. KAROTKIN:  That is correct, Your Honor.  They

3    didn't go to bat.  They didn't want to be involved.  We tried

4    to get them to be involved but without success.  So at the end

5    of the day, the debtors and New GM took it upon themselves to

6    make the settlement available to these people rather than

7    basically shutting them out of their benefits.

8         So what this motion does, it provides these twenty-

9    four former employees who were Boilermakers with the same

10   benefits to be provided by New GM that are being provided to

11   the other retirees who elected to participate in the settlement

12   and also enables them to participate for their ratable

13   proportion of the one billion dollar allowed general unsecured

14   claims.

15        As I said, notice was given to all twenty-four

16   members of the union who are now retirees.  No response or

17   pleadings were filed.  As we set forth in our pleadings, we

18   think that -- and, as well, New GM thinks that this is the fair

19   and appropriate thing to do even though there's no requirement

20   that it be done.  And we simply would like the authority to

21   move forward with that.

22        THE COURT:  You did the right thing.  It's approved.

23        MR. KAROTKIN:  Thank you, sir.

24        THE COURT:  Okay.  Mr. Smolinsky?

25        MR. SMOLINSKY:  Your Honor, the next motion on the

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 66 of 84

Page 66

```
 1    calendar was a motion actually filed by Mr. Junso to have his

 2    claim be timely filed.  Mr. Junso is one of the, I believe, the

 3    Campbell group that appealed the sale order.  And we had agreed

 4    in connection with withdrawing the -- their agreement to

 5    withdraw that appeal that the debtors would not object to the

 6    timeliness of that claim.  However, the committee was left with

 7    the full rights to do so.  They have filed their response.

 8    There's been an agreement reached between the committee, the

 9    debtors and Mr. Junso that he will be able to file a claim in

10    the next twenty days so that he gets in before the effective

11    date, hopefully, of the plan and that would allow him to have a

12    claim of up to five million dollars and would make them subject

13    to the ADR procedures.  So we have a stipulation that we could

14    submit to Your Honor.

15             THE COURT:  Fair enough.  That's going to be just

16    fine.

17             MR. SMOLINSKY:  We then have a number of objections

18    to individual claims.  We received no responses to these

19    objections.  We have Bobbie Jean Ford Pierce, Ella Lewis,

20    Luceal Anderson, Bernadine Toliver, Audrey Magee.  And maybe I

21    could just open it up in case they're on the phone?

22             THE COURT:  Okay.  Are any of those folks in the

23    courtroom?  No.  Anybody -- any of those folks on the phone?

24    No response.  Go ahead, Mr. Smolinsky.

25             MR. SMOLINSKY:  So we'd ask for the reasons set forth
```

MOTORS LIQUIDATION COMPANY, et al.

Page 67

1   in the motion that those claims be expunged and disallowed.

2          THE COURT:  They will be.  They will be disallowed.

3          MR. SMOLINSKY:  Your Honor, the debtors' eighteenth

4   omnibus objections to claim -- that's another motion that's

5   been hanging around for a while.  We finally have been able to

6   cajole the city and county of San Francisco to allow that to go

7   forward on an uncontested basis.  So that will close out

8   eighteenth omnibus objection to claims.

9          THE COURT:  Very well.

10          MR. SMOLINSKY:  The twenty-seventh omnibus objections

11   to claim -- we're only going forward with respect to the Jones'

12   response.  Mr. Jones has notified the debtors that he no longer

13   has an objection to that motion.  So we would like to submit an

14   order disallowing and expunging that claim and adjourning with

15   respect to the rest.

16          THE COURT:  Yes, you may.

17          MR. SMOLINSKY:  Your Honor, the debtors' 110th

18   omnibus objection to claims -- those are contingent co-

19   liability claims.  We've been in discussions with the variety

20   of the parties that remain, the New Flyer, Northrop, Cummins,

21   Detroit Diesel, Expedition Helicopters.  I think we're there on

22   orders.  So what I'd like to do is to see if we can get you all

23   the orders in the next twenty-four hours.  And if there's any

24   issue, we would adjourn it to the March 9th hearing and

25   continue to try to paper those agreements.

Page 68

```
 1              THE COURT:  In other words, these would be orders

 2    sustaining the objections because the counterparties recognize

 3    that the debtors are entitled to it?

 4              MR. SMOLINSKY:  For a variety of reasons, they want

 5    their own order whether it's a reservation under 502(j) or the

 6    ability to pursue New GM even though they know our position

 7    that they can't do that under the sale order.  But for a

 8    variety of reasons, they want their own language in an

 9    individual order.  And we'll, of course, accommodate them.

10              THE COURT:  Okay.  That's fine.  I saw a person

11    moving up.  Did you want to be heard, ma'am?

12              MS. ELISON:  Yes, please.

13              THE COURT:  Come up to the microphone, would you

14    please?

15              MS. ELISON:  Thank you.  I appreciate it, Your Honor.

16    Good morning.

17              THE COURT:  Good morning.  Just state your name first

18    because a recording is being made of this.

19              MS. ELISON:  Okay.  My name is Julia M. Elison.  I'm

20    here on behalf of my mother, Claudette Elison.  She had filed a

21    claim for General Motors, for the old General Motors, I

22    believe.  And she -- I just wanted -- well, I'm here to make

23    sure that she was included into the omnibus, I believe, claim

24    as a claimant.  And the omnibus claims -- I'm sorry.  I'm

25    nervous.
```

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 69 of 84

Page 69

 1            THE COURT:  That's okay.  Don't be nervous.

 2            MS. ELISON:  I'm very nervous, Your Honor.

 3            THE COURT:  Do you know whether the debtors wanted to

 4    expunge -- that is, to say that claim wouldn't be allowed

 5    today?

 6            MS. ELISON:  Well, she received a letter in the mail.

 7    And I didn't understand what it was.  She had passed away.  It

 8    will be a year tomorrow.  And so she had started receiving --

 9    well, I have received letters in the mail on her -- on this.

10    And this is all brand new.  I didn't have any knowledge of what

11    was read.  I had tried to talk to -- seek legal counseling in

12    Michigan.  We're from Michigan -- I'm sorry.

13            THE COURT:  You came all the way from Michigan?

14            MS. ELISON:  Yes.  We came all the way here from

15    Michigan just to make sure that she was included with the

16    claims that was filed -- that was here for the General

17    Motors --

18            THE COURT:  Okay.

19            MS. ELISON:  -- account.

20            THE COURT:  Did you say your name was Ms. Elison?

21            MS. ELISON:  Yes.  Yes, Your Honor.

22            THE COURT:  And is your mom also Ms. Elison?  Or

23    is --

24            MS. ELISON:  Yes, Your Honor.

25            THE COURT:  Okay.

Page 70

1          MS. ELISON:  Her name is Claudette Elison.

2          THE COURT:  Claudette.

3          MS. ELISON:  Yes.

4          THE COURT:  Okay.  Mr. Smolinsky, I don't know if,

5    under these circumstances, you're prepared to respond and you

6    know about Ms. Elison's mother's claim.  I guess the thought I

7    have is if you can respond substantively, okay.  But otherwise,

8    perhaps an approach would be to say that for the time being her

9    rights are preserved and that if you have moved to expunge it

10   for a failure to respond, you'll just continue it as you do so

11   many others.

12         MS. ELISON:  Okay.

13         THE COURT:  Mr. Smolinsky?

14         MR. SMOLINSKY:  Your Honor, the good news is in the

15   courtroom we have Carrianne Basler and an iPad.  So, I think

16   that while Your Honor takes a break, we can talk to Ms. Elison,

17   find out where her claim resides and maybe it could be resolved

18   today.  We'll find out what's going on with it and report back

19   to Your Honor when you come back --

20         THE COURT:  Good.  You can do it while I'm taking the

21   recess on the other matter.

22         MR. SMOLINSKY:  Yes, Your Honor.

23         MS. ELISON:  Thank you.

24         THE COURT:  Okay.  Do we have any other further

25   business before I take the recess?

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 71 of 84

Page 71

1          MR. SMOLINSKY:  Your Honor, we just have the new

2    omnibus objections.  That's omnibus objection 146 to 209.  As

3    usual, we have agreed to adjourn those that have filed

4    responses and seek orders with respect to those that have not

5    responded.

6          I'll just note that the 208th and 209th omnibus --

7    you may notice in the agenda that there are lots of them that

8    are being carried.  Those are the 502(e)(1)(B).  And we believe

9    that a lot of those will go away in connection with the EPA

10   agreements.  But we'll be back before Your Honor on the 29th.

11   United Technologies, for example, is on that motion.  And so

12   we'll be back before Your Honor on the 29th to address those

13   matters.

14          THE COURT:  Okay.  Does that take care of it?

15          MR. SMOLINSKY:  I think that's right, Your Honor.

16          THE COURT:  Okay.  We'll be in recess.  I would like

17   everybody back here by 11:15 on the clock up there.  We're in

18   recess.

19       (Recess from 11:04 a.m. until 11:27 a.m.)

20          THE CLERK:  All rise.

21          THE COURT:  Have seats, please.  All right.  Ladies

22   and gentlemen, after the recess, I'm now in a position to rule

23   on the objection to the claim of Thomas Smalley.  I assume that

24   Mr. Smalley is still not on the phone.  The motion's been

25   decided on the papers.

Page 72

1      (Pause)

2          THE COURT:  In the jointly administered Chapter 11

3   cases of debtor, Motors Liquidation Company, formerly General

4   Motors Corporation, which, as in the past, I'll refer to as Old

5   GM, I have the debtors' objection to the claim of Thomas

6   Smalley.  The claim arises from a car accident that took place

7   in 1997, twelve years before the filing of Old GM's bankruptcy

8   case.  And the objection to the claim gives rise to the

9   contested matter that I have to decide today.

10         Mr. Smalley never filed a lawsuit against Old GM and,

11  as I'll discuss, the statute of limitations with respect to his

12  claim passed.  In addition, Mr. Smalley filed his proof of

13  claim late despite receiving actual notice of the bar date.

14  For those two reasons, I necessarily must conclude, therefore,

15  that his claim must be disallowed.  My findings of fact,

16  conclusions of law and bases for the exercise of my discretion

17  in connection with these determinations follow.

18         First, as facts, I find that Mr. Smalley, a resident

19  of the state of Iowa, was injured in a motor vehicle accident

20  on September 27, 1997, almost twelve years before Old GM's

21  Chapter 11 filing.  He was injured in DuPage County, Illinois

22  while driving a Buick Regal, a vehicle manufactured by Old GM.

23  According to Mr. Smalley, the accident occurred due to a loss

24  of steering and control of the Buick that resulted in a roll

25  over accident.  Mr. Smalley did not file a lawsuit against Old

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 73 of 84

Page 73

1   GM at the time, however, or since.

2           On June 1st, 2009, Old GM commenced its Chapter 11

3   case in this court.  On June 19, 2009, eighteen days later, Mr.

4   Smalley contacted the debtors' customer assistance center and

5   notified the debtors of his accident for the first time.  As a

6   result of Mr. Smalley's call to the assistance center, he

7   received actual notice of the bar date order by mail.

8           The bar date order states that proofs of claim

9   against the debtors must be actually received on or before the

10  bar date.  And it further explains that any creditor who fails

11  to comply with the bar date order will be forever barred from

12  asserting the claim or filing a proof of the claim.   In

13  addition to providing actual notice of the bar date, the

14  debtors also provided notice by publication in several national

15  newspapers.  However, the important thing here is that he got

16  actual notice of the bar date by mail.

17          On February 8, 2010, three months after the bar date

18  had come and gone and approximately twelve and a half years

19  after his accident, Mr. Smalley then filed a proof of claim

20  against Old GM.  On December 12th, 2010, Mr. Smalley was

21  engaged by Old GM to discuss settlement of his claim of which

22  he declined.  He has asserted that his claim is worth between

23  fifteen million dollars and eighty million dollars.  That's 8-0

24  million dollars.

25          Turning now to my conclusions of law and bases for

Page 74

1    the exercise of my discretion.  I'm forced to expunge this

2    claim for two separate reasons:  first, because it is time

3    barred; and second, because the proof of claim was filed late.

4         It's a well settled law in this district, the

5    Southern District of New York that bankruptcy courts may

6    determine issues of law with respect to personal injury claims

7    such as issues as to whether or not the statute of limitations

8    has run.  See In re U.S. Lines Inc., 262 B.R. 223 at 234

9    (S.D.N.Y. 2001).  As Judge Lifland explained in Chateaugay, a

10   finding that the claim is subject to disallowance as a matter

11   of law is not tantamount to a determination on the merits of

12   the personal injury tort.  In re Chateaugay Corp., 111 B.R. 67,

13   76 (Bankr. S.D.N.Y. 1997).

14        To state the obvious, my subject matter jurisdiction

15   to decide a claims allowance matter is clear under 28 U.S.C.

16   1334.  And by reason of that case law, I likewise have the

17   power as a bankruptcy judge to decide the issue under 28 U.S.C.

18   157 even though I don't have Article 3 status.

19        Determining which statute of limitations to apply is

20   not as debatable as it might be since there are only two

21   possibilities and neither one of them is long enough to

22   accommodate a claim that was filed twelve years after the

23   accident occurred.  However, I'll briefly explain the analysis.

24        As I discussed in my decision in Adelphia

25   Communications Corporation where, as here, a Court is

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 75 of 84

Page 75

1    exercising bankruptcy jurisdiction over state law claims under

2    28 U.S.C. Section 1334(b), the Court applies the choice of law

3    rules of the forum state, which is New York, of course, to

4    determine the applicable statute of limitations.  See Adelphia

5    Communications Corp. v. Bank of America, In re Adelphia

6    Communications Corp., 364 B.R. 24, 57, Note 136 (Bankr.

7    S.D.N.Y. 2007).

8            New York has a statute of limitations "borrowing

9    statute", New York CPLR 202.  That statute provides that "an

10   action based upon a cause of action accruing without the state"

11   -- and I say, parenthetically, the state there is New York

12   State -- "cannot be commenced after the expiration of the time

13   limited by the laws of either New York State or the place

14   without New York State where the cause of action accrued except

15   that where the cause of action accrued in favor of a resident

16   of New York State, the time limited by the laws of New York

17   State shall apply.  In many cases, when I was quoting the

18   statute, I substituted the words "the State", the cryptic

19   drafting which New York's legislator in its wisdom used when

20   drafting the statute, and plugged in "New York State" which, of

21   course, makes much more sense to the reader.

22           Under New York law and assuming that Mr. Smalley is

23   asserting a strict products liability claim or a negligence

24   claim, the two real bases for his claim, the cause of action

25   "accrued", as that expression is used in New York CPLR 202, at

Page 76

1    the place where the accident occurred.  Martin v. Julius Dierck

2    Equipment Company, 43 N.Y.2d 583, 588 (1978).  I note

3    parenthetically that this is a rule that's applicable to

4    negligence and product liability claims.  It is not the same

5    rule that would apply to a contract claim or a claim for a

6    purely economic injury.

7           In New York, the statute of limitations for both

8    negligence and products liability claims is three years.  See

9    New York CPLR 214(5); and Victorson v. Bock Laundry Machine

10   Company, 37 N.Y.2d 395, 404 (1975).  However, in my view, it's

11   the statute of limitations of Illinois where the accident took

12   place that controls.  And under Illinois law, that statute of

13   limitations for both negligence and products liability is two

14   years.  See 735 Ill. Stat. 513-202; and Golla v. General Motors

15   Corp., 657 N.E.2d 894, 903 (Ill. 1995) which holds that the

16   two-year statute of limitations for product liability claims

17   begins to run at the time of the accident.

18          Under Illinois' shorter statute of limitations, Mr.

19   Smalley's claim is time barred.  However, while I think it's

20   pretty clear under the New York law, CPLR 202, that the place

21   where the cause of action accrued is controlling and that's

22   Illinois, I note that even under New York's longer three year

23   statute of limitations, his claim would still be time-barred.

24   Thus, the claim must be disallowed because it's barred under

25   the statute of limitations.

Page 77

1          Similarly, the claim cannot be allowed because the

2     proof of claim wasn't timely filed.  Section 502(b)(9) of the

3     Code provides that a claim will be disallowed if the proof of

4     such claim is not timely filed and a party has objected to the

5     claim.  Pursuant to Bankruptcy Rule 3003(c)(3), a proof of

6     claim isn't timely filed unless it's done prior to the deadline

7     fixed by the bankruptcy court.  As Chief Judge Gonzalez

8     explained in XO Communications, "A bar date is not to be

9     disregarded by claimants since it's meant to function as a

10    statute of limitations and effectively disallows late claims in

11    order to provide the debtor and its creditors with finality to

12    the claims process to permit the debtor to make swift

13    distributions under the plan."  In re XO Communications, Inc.,

14    301 B.R. 782, 797-798 (Bankr. S.D.N.Y. 2003).

15         Despite receiving actual notice by mail, Mr.

16    Smalley's proof of claim was filed three months late.  And he

17    filed it late without any explanation.  In particular, he's

18    made no showing that this delay was excusable.  The Supreme

19    Court has held that excusable neglect hinges on five factors:

20    (1)the degree of prejudice to the debtors; (2)the length of the

21    delay and its potential impact on judicial proceedings; (3)the

22    reason for the delay including whether it was within the

23    reasonable control of the claimant; (4)whether the claimant

24    acted in good faith; and (5)if a claimant had counsel whether a

25    claimant should be penalized for his or her counsel's mistake

09-50026-mg    Doc 9697    Filed 03/02/11    Entered 03/09/11 11:30:31    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 78 of 84

Page 78

1    or neglect.  See Pioneer Investment Services Company v.

2    Brunswick Associates, 507 U.S. 380, 385-387 (1993).

3         The Second Circuit has noted that "the equities will

4    rarely, if ever, favor a party who fails to follow the clear

5    dictates of a Court rule."  In re Enron Corp., 419 F.3d 115,

6    122-123 (2d Cir. 2005).

7         The Second Circuit went on to explain that the

8    Pioneer factors are not to be equally weighted and that the

9    excuse provided by the litigant may be given the greatest

10   importance.  That's Enron, too, at the same page.

11        Here, the relevant factors weigh heavily against

12   allowing Mr. Smalley's claim.  First, the prejudice to the

13   debtors who, of course, are acting for all of the other

14   creditors in the case, is significant.  Reserving fifteen

15   million dollars in this case, much less eighty million dollars,

16   would be severely prejudicial to Old GM's other creditors given

17   the need to make distributions available to them and the fact

18   that we have a confirmation hearing for this case coming up

19   this Thursday.

20        Also, since the claim is clearly time-barred, it

21   would be an unnecessary hardship to GM's -- Old GM's other

22   creditors to force Old GM to expend more resources in order to

23   litigate a claim that could never be allowed anyway.

24        Next, while the delay was only three months, or was a

25   relatively small three months, the delay of even that amount

09-50026-mg   Doc 9697   Filed 03/02/11   Entered 03/09/11 11:30:31   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 79 of 84

Page 79

1    was not explained.  And it's in the context of a creditor

2    having been given actual notice after he actually called and

3    was in contact with the debtors.

4            Third, Mr. Smalley has provided no reason for the

5    delay.  This is especially significant because the Second

6    Circuit explained in its Enron decision that this factor should

7    be weighed most heavily.

8            Finally, while Mr. Smalley has at least seemingly

9    acted in good faith, this factor alone is insufficient to

10   outweigh the other factors.

11           The claimant has not made the required showing of

12   reasonable neglect.

13           For the reasons I've just stated, the debtors'

14   objection to Mr. Smalley's claim must be sustained and the

15   claim must be disallowed.  The time to appeal this decision

16   will run from the time of entry of the resulting order and not

17   from the time of this dictated decision.

18           I note that, to their great credit, the debtors

19   apparently had some discussions with Mr. Smalley vis-à-vis a

20   possible settlement notwithstanding the very apparent

21   weaknesses in this claim.  I won't prohibit the debtors from

22   doing so.  And if the debtors want to and the creditors'

23   committee doesn't voice an objection, if they want to try to

24   still resolve this in the near future before the order is

25   entered, I don't mind.  But if Mr. Smalley requires me to act

MOTORS LIQUIDATION COMPANY, et al.

Page 80

1    in accordance with this decision, he's going to have to live

2    with the decision that I just dictated.

3             Am I correct, Mr. Smolinsky and Mr. Karotkin, that we

4    have no further business?

5             MR. SMOLINSKY:  Your Honor, Joe Smolinsky for the

6    debtors.  I just want to provide Your Honor with an update on

7    Ms. Elison.

8             THE COURT:  Oh, yes.

9             MR. SMOLINSKY:  We did take the opportunity to speak

10   to her.  Her claim is subject to omnibus claim objection number

11   147.  Unfortunately, that's an objection seeking to reclassify

12   claims into equity interests.  Ms. Elison's mother filed a

13   claim --

14            THE COURT:  For stock she held?

15            MR. SMOLINSKY:  -- reciting the fact that she had

16   stock.  And we see no other claims.  We discussed with Ms.

17   Elison the priority scheme under the Bankruptcy Code and the

18   upcoming confirmation and the impact of that.  We offered Ms.

19   Elison the opportunity to consult an attorney before we enter

20   the order.  She took us up on it.  So we'll adjourn the motion

21   as to her till March 29th.  And I assume that she's going to be

22   comforted in corroborating what we explained to her.  And --

23            THE COURT:  Okay.

24            MR. SMOLINSKY:  -- it's unfortunate but that's --

25   those are the facts.

MOTORS LIQUIDATION COMPANY, et al.

Page 81

1           THE COURT:  Ms. Elison, I see you're still in the

2    back of the room.  I talked about this in a different context.

3    Unfortunately, until and unless GM's creditors get paid, there

4    isn't much we can do about stockholders.  But what the debtors

5    have offered to do is to give you a chance to get your own

6    advice on that and nothing is going to be done to you or your

7    family today.

8           MS. ELISON:  Okay.

9           THE COURT:  Thank you.

10          MS. ELISON:  Okay.  Thank you, Your Honor.

11          THE COURT:  Thank you.  Okay.  Anything else, Mr.

12   Smolinsky?

13          MR. SMOLINSKY:  I think that's a wrap, Your Honor.

14          THE COURT:  Okay.  Then we're adjourned.

15       (Whereupon these proceedings were concluded at 11:49 a.m.)

16

17

18

19

20

21

22

23

24

25

Page 82

```
 1                        I N D E X

 2

 3                      R U L I N G S

 4    DESCRIPTION                                PAGE     LINE

 5    Debtors' motion seeking to establish reserves    58       17

 6    of $420 million set aside for approximately

 7    1500 fully unliquidated claims granted:

 8    Sentry Insurance's objection to motion     57       20

 9    overruled;

10    Edmond Sterniak's objection to motion      58        5

11    overruled;

12    Sharyl Carter's objection to motion        58       13

13    overruled

14    Debtors' seventeenth omnibus objection to  62        6

15    claims (tax claims assumed by GM, LLC)

16    sustained with respect to Ohio Department

17    of taxation's claim; time to appeal runs from

18    entry of order not from dictated decision

19    Debtors' motion for entry of order approving   65     21

20    settlement with former Boilermakers employees

21    authorizing them to receive same benefits as

22    splinter unions granted

23

24

25
```

Page 83

```
 1                        I N D E X, cont'd

 2

 3                        R U L I N G S

 4    DESCRIPTION                                  PAGE      LINE

 5    Debtors' objections to individual proofs of    67        1

 6    claims filed by Bobbie Jean Ford Pierce (claim

 7    #02307), Ella M. Lewis (claim #69923), Luceal

 8    Anderson (claim #69969), Bernadine Toliver

 9    (claim #69970), Audrey Magee (claim #70000),

10    Christi Coleman (claim #70461) sustained;

11    claims will be disallowed/expunged

12    Debtors' twenty-seventh omnibus objection      67       15

13    to claims (incorrectly classified claims)

14    with respect to Michael Jones' claim (#29055)

15    sustained; claim will be disallowed/expunged

16    Debtors' objection to Thomas Smalley's claim   79       14

17    (#69998) sustained/claim will be disallowed;

18    time for appeal to run from entry of order not

19    dictated decision

20

21

22

23

24

25
```

Page 84

1                           C E R T I F I C A T I O N

2

3      I, Lisa Bar-Leib, certify that the foregoing transcript is a

4      true and accurate record of the proceedings.

5      Lisa Bar-Leib    Digitally signed by Lisa Bar-Leib
                        DN: cn=Lisa Bar-Leib, c=US
                        Reason: I am the author of this
6      _____    document
                        Date: 2011.03.02 16:40:47 -05'00'

7      LISA BAR-LEIB

8      AAERT Certified Electronic Transcriber (CET**D-486)

9

10     Veritext

11     200 Old Country Road

12     Suite 580

13     Mineola, NY 11501

14

15     Date:  March 2, 2011

16

17

18

19

20

21

22

23

24

25