Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 09-50026-reg

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    MOTORS LIQUIDATION COMPANY, ET AL.,

9        F/K/A GENERAL MOTORS CORP., ET AL.,

10

11          Debtors.

12

13    - - - - - - - - - - - - - - - - - - - - - -x

14

15              U.S. Bankruptcy Court

16              One Bowling Green

17              New York, New York

18

19              February 10, 2011

20              9:47 AM

21

22    B E F O R E:

23    HON. ROBERT E. GERBER

24    U.S. BANKRUPTCY JUDGE

25

1

2    HEARING re Debtors' Objection to Proofs of Claim Nos. 16440 and

3    16441

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Sharona Shapiro

Page 3

1

2    A P P E A R A N C E S :

3    WEIL, GOTSHAL & MANGES LLP

4            Attorneys for Debtors

5            200 Crescent Court

6            Suite 300

7            Dallas, TX 75201

8

9    BY:   ANGELA C. ZAMBRANO, ESQ.

10

11

12    WEIL, GOTSHAL & MANGES LLP

13            Attorneys for Debtors

14            767 Fifth Avenue

15            New York, NY 10153

16

17    BY:   PABLO FALABELLA, ESQ.

18

19

20    KRAMER LEVIN NAFTALIS & FRANKEL LLP

21            1177 Avenue of the Americas

22            New York, NY 10036

23

24    BY:   LAUREN M. MACKSOUD, ESQ.

25

Page 4

1

2    HORWITZ ,HORWITZ & PARADIS

3          Attorneys for Saturn Class Plaintiffs

4          570 Seventh Avenue

5          20th Floor

6          New York, NY 10018

7

8    BY:   GINA M. TUFARO, ESQ.

9          MICHAEL A. SCHWARTZ, ESQ.

10

11

12   STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

13          Attorneys for the Dean Trafalet,

14              the Future Claimants' Representative

15          2323 Bryan Street

16          Suite 2200

17          Dallas, TX 75201

18

19   BY:   JACOB L. NEWTON, ESQ. (TELEPHONICALLY)

20

21

22

23

24

25

Page 5

```
 1                   P R O C E E D I N G S

 2              THE CLERK:  All rise.

 3              THE COURT:  Good morning. Have seats, please.

 4              Okay.  GM Motors Liquidation.  Let me get appearances

 5    and then I have a couple of preliminary comments.

 6              MS. ZAMBRANO:  Good morning, Your Honor.  Angela

 7    Zambrano with Weil Gotshal & Manges on behalf of the debtors.

 8    And with me is --

 9              THE COURT:  Okay, Ms. Zambrano.  And with you, please?

10              MS. ZAMBRANO:   Pablo Falabella.

11              THE COURT:  Fala --

12              MR. FALABELLA:  Falabella.

13              THE COURT:  Falabella.  Thank you.

14              MR. SCHWARTZ:  Michael Schwartz with Horwitz ,Horwitz

15    & Paradis on behalf of Saturn class plaintiffs.

16              THE COURT:  Right, Mr. Schwartz.

17              MR. SCHWARTZ:  And with me is Gina Tufaro from our

18    office.

19              THE COURT:  Okay, thank you.

20              All right.  Well, make your presentations as you see

21    fit, folks.  But at the risk of stating the obvious, since the

22    briefing on today's motion was initiated, I issued the GM

23    apartheid decision and obviously it has great relevance to the

24    issues that we're dealing with today.

25              Mr. Schwartz, I'm going to look to you to help me
```

Page 6

1    understand the actual or perceived differences between the

2    class certification motion here and the one that I denied in

3    the apartheid matter.  And although I think the issues are

4    different vis-a-vis the 23(b)(3) predominance issues, I have

5    concerns that the 23(b)(3) preferability of class action

6    concerns remain of major concern to me.  And the issues

7    vis-a-vis the extent to which bankruptcy considerations are

8    superimposed upon traditional 23(a)and (b) doctrine also are a

9    matter of concern to me.

10          I do want both sides to address insofar as 23(b)

11   predominance issues are concerned and also superiority of class

12   action, the creation of the subclasses which are both more

13   numerous and somewhat more technically distinct from a law

14   perspective than they were in the apartheid but which also, at

15   least seemingly, raise some of the main manageability concerns

16   that I dealt with in the apartheid case.

17          Mr. Schwartz, let me hear from you first.  And if

18   you'd come up to the main lectern, please, I'd appreciate that.

19          MR. SCHWARTZ:  Your Honor, obviously we're not going

20   to revisit the issues addressed in apartheid with respect to

21   timing.  Your Honor made it very clear --

22          THE COURT:  Pause, please, Mr. Schwartz.  Can you pull

23   the microphone closer to you?  I'll try to raise the volume.

24          MR. SCHWARTZ:  Sure.  Is that better, Your Honor?

25          THE COURT:  I have it on maximum volume.  I'll be able

Page 7

1    to tell you in a minute.  Go ahead, please.

2         MR. SCHWARTZ:  Okay, Your Honor.  We are not going to

3    address any issues that Your Honor made perfectly clear in

4    apartheid regarding the timing of the filing of our motion.

5    But with respect to superiority of the class action device

6    here, we think an important point to note is Old GM has made

7    the point that not one punitive class member has filed a claim

8    in the bankruptcy court against the Old GM.

9         That begs the question if there are thousands of

10   people who have bought these Saturn cars and incurred damages

11   and repairs of thousands of dollars, as evidenced by the

12   complaints made to Old GM, made to NHTSA, made on the Internet

13   and in forums, why haven't they done so?  And we believe the

14   only reason they haven't done so is they may have known that

15   Old GM filed for bankruptcy but they did not know that they

16   bought a car with a defective part which caused them damage and

17   therefore they would have no reason to file a claim in the

18   bankruptcy court.

19        THE COURT:  If they didn't know that they have claims,

20   except for that number, which I don't know whether it's zero or

21   in the thousands or in the tens of thousands, for whom the

22   problem arose between June 9th of or 1st of 2009 -- I forgot

23   the exact date that this case was filed -- and now, how would

24   we know whether they're members of the class or not?

25        MR. SCHWARTZ:  Well, through -- if the Court would

Page 8

1    certify the class they would get notice and they would file a

2    claim through that procedure.  That information is available

3    through different sources.  People who have bought the cars,

4    there's warranty information that the car manufacturers use

5    that are available that can identify who these people are and

6    they can be given the opportunity to submit information

7    demonstrating that they purchased or leased one of the Saturn

8    vehicles and that they incurred repairs as a result of the

9    defect that we allege which is the broken timing chain.

10           THE COURT:  Um-hum.  Okay, continue, please.

11           MR. SCHWARTZ:  With respect to the 23(b)(3) issues,

12    Your Honor, we think that -- well, the aparth --

13           THE COURT:  Excuse me.

14           MR. SCHWARTZ:  Bless you, Your Honor.  The apartheid

15    claims obviously were tort claims which, as the Court

16    recognized, they're very difficult to treat in a class action

17    manner.

18           The claims asserted by the Saturn plaintiffs, which

19    are breach of implied warranty of merchantability and state

20    consumer fraud claims, those are often class because they can

21    be dealt with on -- there's class-wide proofs regarding the

22    legal issues and the factual issues.  They're all going to

23    center on the defective design of the vehicles.  And those

24    cases and those claims are not troublesome to class up.

25           THE COURT:  The extent to which GM did a substandard

Page 9

1    job in designing the timing chains, subject to Ms. Zambrano's

2    rights to be heard, fairly plainly seems to me to present a

3    common issue within 23(a) requirements.

4         The problems that I have with predominance take the

5    alleged deficiencies in GM's design as a given.  The problems I

6    have with 23(b) as contrasted -- or 23(b)(3) predominance as

7    contrasted to class action superiority and also as contrasted

8    to bankruptcy concerns, are the different ways by which the

9    problems might have manifested themselves.  And if I heard you

10   right, you recognized that by saying that some of them may not

11   even to this day know whether or not their timing chains have

12   caused them problems or will cause them problems or not.

13        But the diversity in the law that would be tacked onto

14   the deficiencies, the uncertainties as to where the consumer is

15   in the progression of aggravation and damage, the issue that at

16   least some of these vehicles may have been sold, some of them

17   have been serviced, successfully in some cases, unsuccessfully

18   in others, as a possibility.  I don't know if I have evidence

19   as to how many hundreds or thousands of people might be in each

20   of these various categories.  Those are the matters that

21   scratch my head.  And the diversity in the applicable law,

22   although I understand you're trying to deal with that by

23   creation of subclasses.  Can you help me with that stuff,

24   please, Mr. Schwartz?

25        MR. SCHWARTZ:  Sure.  One issue I think the Court was

Page 10

1    touching on, to us is really a damage issue, which I think in

2    the apartheid decision the Court recognized that individual

3    questions of damages would not preclude a class.  The

4    individual --

5            THE COURT:  If they're the only concern, that's

6    correct.

7            MR. SCHWARTZ:  Right.

8            THE COURT:  Or at least that's my understanding of the

9    law.

10           MR. SCHWARTZ:  Right.  We understand, Your Honor.

11   Whether someone has had their vehicle repaired, that's easily

12   demonstrated by a repair record, which many of our plaintiffs

13   have -- the ones that are repaired.  Other ones may have their

14   cars sitting there because they can't afford to repair it, but

15   they've had it looked by mechanics.

16           And as our expert has testified, these vehicles rolled

17   off the assembly line with the defect, with an oiling nozzle

18   which would not produce enough oil to keep the timing chains

19   properly lubricated.  That's the manifestation.  When -- over

20   time, as these timing chains became brittle because of the lack

21   of oil, and damages occurred.  That's, again, demonstrated by

22   either documentary evidence from the individual class members

23   that they brought their cars to a mechanic and they had the

24   timing chains repaired, replaced, or whether they had to have

25   their whole engine replaced to the extent of damages.  So

GENERAL MOTORS CORPORATION

Page 11

1      again, we think that's easily provable by documentary evidence

2      by the individual class members.

3              As to the classes and the subclasses.  There's -- one

4      class would be the six individual states where we have a claim

5      for breach of implied warranty.  That should not be

6      problematic, because again, it's each individual state.  Each

7      individual state law would apply to each of those classes.

8      Again, common proof as to law and the facts.  The other six

9      classes are the consumer fraud acts, again, for individual

10     states.  And those, again are common, whether the state laws

11     apply for each one of those states.  We recognize it gets a

12     little more complicated, perhaps al --

13             THE COURT:  Well, on the fraud, I have bigger problems

14     than I do on warranty.  Your opponent is likely going to say

15     that if they last for X thousand miles, it may be a problem but

16     it's not -- that's what express warranties are for and that

17     goes beyond implied warranty.  But that's an issue on the

18     merits and I will understand that.

19             But when you get into fraud, I have different

20     problems.  Because I gathered there's an evolution in your

21     claims between the time that the complaint was originally filed

22     and now vis-a-vis your reliance on what dealers may have said

23     orally.  And of course, oral representations always place great

24     problems on class certification.  But you're saying,

25     essentially, that it's an omissions case.

1          MR. SCHWARTZ:  Correct.

2          THE COURT:  But this is a different kind of omissions

3    case than a '34 Act fraud case where there are publicly

4    available disclosures made to all and where there are duties to

5    speak necessary to make the financial disclosures and the 10-Ks

6    and 10-Qs nonmisleading.  Am I right that you're still

7    asserting fraud by reason of omissions if not also oral

8    representations?

9          MR. SCHWARTZ:  Strictly an omissions case, Your Honor.

10   And the omissions are based --

11         THE COURT:  You said "strictly an omissions case"?

12         MR. SCHWARTZ:  Yes.

13         THE COURT:  Okay.

14         MR. SCHWARTZ:  Not a misrepresentation.  The Old GM

15   pointed some statements in the complaint regarding timing

16   chains that Old GM made that those were all prior to the class

17   period and those were more of a way of background than any type

18   of statement that we allege and class members would have relied

19   on.  The omissions, Your Honor, are based on the fact that we

20   allege Old GM knew, when they designed these vehicles and put

21   them on the road, that they had a problem.

22         And we support that in the complaint with allegations

23   that three years prior to introducing these Saturn vehicles,

24   Old GM had a very similar problem in other vehicles where they

25   had timing chains breaking because of lack of lubrication.

GENERAL MOTORS CORPORATION

Page 13

1    Therefore, when they designed these cars they knew that this

2    pintle valve they put in the timing chain to restrict the flow

3    of oil was going to cause a problem.  And that's the omission.

4         We allege the class plaintiffs would not have bought

5    these cars with these steel timing chains had they know that

6    there was going to be a defect that would manifest itself

7    during the life of the vehicle.  And our experts opine that

8    this defect would manifest during the use and the life of the

9    vehicle.

10        THE COURT:  In other words, you're saying that GM knew

11   about the problem from its '98s or whatever the year exactly

12   was -- but in the 90s.  And then when it sold cars in the

13   2000s, it knew that it had the same problem and that it had a

14   duty to tell the buyers of the world that there was this issue

15   with the timing chains?

16        MR. SCHWARTZ:  Correct, Your Honor.

17        THE COURT:  Um-hum.  Keep going.

18        MR. SCHWARTZ:  Okay.

19        THE COURT:  I interrupted you when you were going

20   class-by-class.

21        MR. SCHWARTZ:  Right.

22        THE COURT:  And you talked about six states-worth of

23   breach of implied warranty.  And then I lost the number of

24   states, but there were a number of states on their consumer

25   fraud statutes under which omissions would be allegedly a

Page 14

1    ground for a cause of action under the law of those particular

2    states.

3            MR. SCHWARTZ:  It would be the same six states, Your

4    Honor.

5            THE COURT:  Okay.

6            MR. SCHWARTZ:  Those are the states each of the

7    plaintiffs resided in.

8            THE COURT:  Continue, please.

9            MR. SCHWARTZ:  Okay.  We recognize that the grouping

10   states where we grouped states -- twenty-eight states that had

11   similar or nearly identical breach of implied warranty laws,

12   that could be difficult.  And the Court does, obviously, have

13   the ability to certify part of the class and not others if the

14   Court deemed it would be too troublesome in the bankruptcy

15   setting to deal with.  And we recognize that.

16           And perhaps those twenty-eight states, while in a

17   normal class action setting, would be something the Court could

18   deal with, they are more difficult in this setting and would

19   take much more time, because there needs to be a comparison --

20   which we've done -- of the laws in the twenty-eight states, to

21   show that they're all identical or at least extremely similar;

22   that there would be common burdens of proof, classwide.

23           THE COURT:  Um-hum.  I'm with you so far.  Do you have

24   anything further on that subject?

25           MR. SCHWARTZ:  No, Your Honor.  Nothing else that's

1    not in the brief.

2            THE COURT:  Okay.  Then I'll ask you if you have other

3    points, generally?

4            MR. SCHWARTZ:  Generally, no, Your Honor.

5            THE COURT:  Very well.

6            MR. SCHWARTZ:  We'll rest on our papers.

7            THE COURT:  Okay, thank you.

8            I'm going to hear from Ms. Zambrano and then give you

9    a chance to reply, Mr. Schwartz.  And I'm going to give Ms.

10   Zambrano a chance to surreply, but limited only to what you say

11   in reply.

12           MR. SCHWARTZ:  Thank you, Your Honor.

13           MS. ZAMBRANO:  Good morning, Your Honor.

14           THE COURT:  Good morning.

15           MS. ZAMBRANO:  I'm going to turn right to Rule 23,

16   because I think that is the Court's focus this morning.  I

17   agree with the Court that the issues with respect to Rule 23

18   are different here than we dealt with in Apartheid.  I'm not

19   going to spend any time with Rule 23(a), based on the Court's

20   comments.

21           THE COURT:  Wisely.

22           MS. ZAMBRANO:  I will say, though, that --

23           THE COURT:  Well --

24           MS. ZAMBRANO:  -- there's a lot of evidence --

25           THE COURT:  -- actually, I said "wisely" too glibly.

GENERAL MOTORS CORPORATION

1    There is a 23(a) issue concerning -- or potentially so --

2    concerning the fact that some apparently meaningful number of

3    members of the class may not know that they have claims and

4    that the proposal is to identify them at proof of claim time in

5    the class action meaning of proof of claim as contrasted to the

6    bankruptcy proof of claim.

7            MS. ZAMBRANO:  Yes.

8            THE COURT:  But I see this as mainly a 23(b)(3)

9    predominance in manageability, still, over 23(a).

10           MS. ZAMBRANO:  Agreed.  I was just going to say that,

11   well, two things.  First of all, I think what you just referred

12   to is, in the case law, it's kind of a no-man's-land whether

13   it's 23(a) or 23(b).  But it's the concept of having an

14   ascertainable class.  And there are two reasons -- it's not in

15   the text, obviously, of Rule 23, but it's been developed for

16   the commonsense reason that if you're going to certify a class,

17   you have to a) understand and be able to identify who's in that

18   class; and 2) you have to make sure that the class is not too

19   broad so that it covers people who have not been injured.

20           And there are both of those problems that are present

21   here in addition to the 23(b) problems that we will talk about.

22   First of all, with respect to the ascertainability, I think

23   Your Honor sort of nailed it in your questioning.  You can't

24   identify who is injured here, who has had their timing chain

25   break, short of individualized proof.  And I think what

Page 17

1    claimant's counsel said, if I heard him right, is this won't be

2    a problem.  Individuals will come forward with evidence on

3    that.  But that's exactly the problem, is that you can't just

4    identify who the class is short of having individualized proof.

5    And that's a problem.

6              We cited a case in our brief called the Sanneman case.

7    It's a Pennsylvania federal case.  It's 191 --

8              THE COURT:  In your initial brief or your reply?

9              MS. ZAMBRANO:  In our reply, Your Honor.

10             THE COURT:  Give me a second, please.  I want to find

11   it in the table of cases.

12             MS. ZAMBRANO:  Okay.

13             THE COURT:  It sounded like Sanneman?

14             MS. ZAMBRANO:  It is.  I apologize.  I'm quite ill.

15   Sanneman, S-A-N-N-E-M-A-N.

16             THE COURT:  Just a second, please.  I see, versus

17   Chrysler?

18             MS. ZAMBRANO:  Correct.  And the same problem was

19   present there and it troubled the Court because you couldn't

20   identify the class members short of having the individualized

21   proof.  Now, that also affects the 23(b) predominance analysis

22   as well.  But just focusing on ascertainability, again, that's

23   a problem.  And to be honest with you, I have struggled with

24   determining whether their class is people who have the problem

25   and it's latent, or is it the problem -- is it people who have

GENERAL MOTORS CORPORATION

Page 18

1   the problem and their timing chain has failed?

2        I thought in the complaint it was the broader group of

3   people.  In their proof of claim submissions, or at least their

4   response to our objection, it seemed to be just the people who

5   had the timing chain actually break.  When I heard Mr. Schwartz

6   talk today, again, I'm confused as to what class they're trying

7   to certify.  Either way, there's going to be an

8   ascertainability problem.

9        The second component of ascertainability that I

10  mentioned and that we have here that's a problem is that the

11  class is too broad, because it includes people that have not

12  been harmed.  And I don't mean they haven't been harmed because

13  they were the subject of the 40,000 cars that were recalled and

14  therefore they've had their problem fixed.  What I mean is that

15  there was a large group, according to legacy GM's records,

16  that -- and this was known in the litigation below -- that had

17  their vehicles fixed under a warranty.  And so again, they have

18  not been damaged.  The company covered those claims.  So the

19  current class definition is too broad, because it includes

20  people that have not been harmed.

21        Now, the other thing I would --

22        THE COURT:  Pause, please, Ms. Zambrano.  Did the

23  company stop replacing the chains when contractual warranties

24  came to their term duration?

25        MS. ZAMBRANO:  I haven't consulted with the company,

GENERAL MOTORS CORPORATION

Page 19

1    but I'm going to assume for purposes of today that they did,

2    yes.  But there's still the class problem.  Because the way

3    that it's defined, it includes people that are covered under

4    the class definition; they purchased this year of Saturn

5    vehicle, and they had a timing chain problem.  The problem is,

6    they should be excepted from it, because it's been repaired and

7    covered.  There aren't any -- they don't have any damages.

8          And we see this time and time again in class action

9    jurisprudence.  It's one of the reasons why classes are

10   required -- they're required to replead and narrow and so

11   forth.  And it's just an initial reason why, in normal civil

12   litigation, if this were a class certification hearing, this

13   class would never pass muster, because it's not -- it's

14   overbroad.  The problem technically in the literature is

15   defined as ascertainability.  But I think ascertainability is a

16   little bit of a misnomer there.  It's really people who haven't

17   been damaged.  It's overbroad.

18         THE COURT:  Um-hum.  Okay.  Keep going, please.

19         MS. ZAMBRANO:  So then the other thing I just want to

20   say about 23(a) in addition is I can't quarrel presently about

21   typicality and adequacy, because I haven't had discovery.  All

22   I have are the plaintiffs' allegations in their complaint -- or

23   excuse me, in their affidavits that were attached, of course,

24   for the first time, to the papers they filed about a week or so

25   ago -- two weeks now.

GENERAL MOTORS CORPORATION

Page 20

1          And in normal practice, we would of course test those

2     affidavits to determine if there were something about the named

3     plaintiffs' allegations that were not typical, or if there were

4     some reason that they had a defense or some other reason about

5     their claim that they would not be adequate representatives.

6     Perhaps they didn't have the type of -- perhaps they didn't

7     provide the type of notice that is required, for example, under

8     one of these consumer statutes.  And that would mean that they

9     would not be an adequate representative under that statute.

10          And I just simply haven't had the discovery.  So right

11     now, I can't quarrel about those things, and I'm going to leave

12     23(a) alone.  But I want to note that, that normally we would

13     have the discovery and we would need an opportunity to contest

14     those things.

15          THE COURT:  Pause, please, Ms. Zambrano.  Mr. Schwartz

16     filed a claim on behalf of his classes.  Lawyers so often do on

17     behalf of clients.  But my understanding is that there are

18     certain live human beings who are his class representatives in

19     the underlying suit.  I take it you have no objection, if I

20     deny class action certification, to allowing the particular

21     named claimants to file individual claims.

22          MS. ZAMBRANO:  We do not.  And I'd have to consult

23     with Mr. Falabella or Mr. Smolinsky, who's not here, as to

24     whether that's an appropriate filing -- the appropriate filing

25     has already been made by Mr. Schwartz on behalf of those

GENERAL MOTORS CORPORATION

Page 21

1    individuals or we would have them file additional or amended

2    papers.  I don't know.

3            THE COURT:  You recognize that in a blink of an eye, I

4    could give the named plaintiffs authorization to file late

5    proofs of claims --

6            MS. ZAMBRANO:  Exactly.

7            THE COURT:  -- even if Mr. Schwartz's having

8    previously done so wouldn't have already skinned the cat?

9            MS. ZAMBRANO:  Yes.  Outside of bankruptcy principles,

10   I know of no reason why there --

11           THE COURT:  You've got the problem you're a general

12   civil litigator, and you're going to hand off to your

13   bankruptcy colleague --

14           MS. ZAMBRANO:  I can't agree to something bankruptcy

15   related, or it makes me nervous to do so, I should say.

16           But I don't have any problem with their individual

17   claims.  It's the class component of their claim that's the

18   problem and why I'm here.

19           THE COURT:  Um-hum.  Okay.

20           MS. ZAMBRANO:  So turning, then, to Rule 23, Mr.

21   Schwartz did a nice job, I think, of going through the

22   different types of classes that he is seeking to certify and

23   that is certainly better than we have dealt with in apartheid

24   and many cases that I deal with.  The problem, however, is that

25   if you look on pages 28 through 42 of his brief, where you go

GENERAL MOTORS CORPORATION

Page 22

1   through every one of the causes of action that those classes

2   would be seeking, all of them have a causation component.  And

3   that makes sense.

4          None of them are strict liability statutes.  They have

5   a causation requirement.  So that was very much skipped over in

6   the presentation.  But --

7          THE COURT:  I've got to tell you that when I read the

8   papers, I wasn't as concerned about his causation claim,

9   because it seemed to be very different than the apartheid

10  thing.  If you got a bad timing belt, whether it's caused the

11  whole engine to crack from cylinders flying in different

12  directions -- I don't claim to be the automotive engineer that

13  either Mr. Schwartz is or his expert is -- I've had timing

14  belts come very close to failing, and I remember how scared I

15  was about that.  But that's divorced of the record.  I can

16  understand why a consumer would want a good timing belt.

17         And it seems to me, whether the damages are simply the

18  cost of replacing the belt, which is a bigger production than

19  replacing a fan belt -- again that's divorced of the record,

20  but it's my understanding -- or if the whole engine craters on

21  you, that would seem to be just a matter of damages.  I don't

22  see that as a matter of causation.  You've got a problem either

23  way.

24         MS. ZAMBRANO:  I think it is an element of causation.

25  Because just because they have that defect -- I've also had a

GENERAL MOTORS CORPORATION

Page 23

1   timing belt break.  And I didn't have the problem that Mr.

2   Schwartz has described.  That is --

3          THE COURT:  You didn't have the whole engine crater on

4   you, but I assume you had to pay the cost of -- unless it was

5   under warranty -- of getting the belt replaced?

6          MS. ZAMBRANO:  It was a pretty bad Ford Escort

7   experience.  Yes, it was --

8          THE COURT:  I understand.

9          MS. ZAMBRANO:  -- but --

10          THE COURT:  I do -- let's confess, I have a sympathy

11   for consumers who are facing this issue.

12          MS. ZAMBRANO:  Absolutely.  But what the statutes here

13   require, they're not strict liability.  So there would be

14   common proof as to the issue of the type of defect that their

15   expert has testified about.  But there would not be common

16   proof as to what each one of those 390,000 -- over 390,000

17   vehicles, why their timing chain broke.

18          Again, I would cite this case Sanneman from

19   Pennsylvania.  It was very similar.  They had -- it was

20   Chrysler vehicles.  And there was a problem with the paint in

21   the vehicles -- the way that the paint was applied.  And the

22   allegation was that the paint, the way that it was applied, it

23   chipped, because of the way that it was applied.  And again,

24   they had an expert from the plaintiffs' side that said you have

25   this type of application, you always have the chipping.

GENERAL MOTORS CORPORATION

Page 24

1          Well, we haven't had a chance to present from a

2     causation standpoint, our side of that story.  But we don't

3     agree with that.  So we don't agree with just because there is

4     a defect that's necessarily why every one of these 390,000

5     vehicles either have or will have a timing chain break.  And

6     that is what is required to prove for someone to recover,

7     legally, under any of those causes of action.

8          You can't just prove the defect and say ipso facto you

9     have damages -- what are you damages because you've had a

10    timing chain break.  There's a causation requirement.

11         THE COURT:  Well, given the facts that we have, does

12    the consumer have a claim saying my chain hasn't broken yet,

13    but given everything we know, I want it replaced with one

14    that's properly lubricated?

15         MS. ZAMBRANO:  I don't know if they'd have the right

16    elements there.  They don't have any damages.  So I would say

17    no in that instance.  But the Sanneman case dealt with these

18    same issues and they talked about the problem of having to --

19    how do you test cars?  Your Honor had some questions in the

20    beginning of how do you know if somebody has this problem.  It

21    requires an individual examination as to whether this car has

22    this defect, and ultimately, whether that defect caused them

23    any damages.  So I do think that is a pervasive problem.

24         THE COURT:  Well, is it a production defect or is

25    it -- I thought the allegation is it's a design defect?

Page 25

```
 1            MS. ZAMBRANO:  I think it's an alle --

 2            THE COURT:  For failure to properly put in enough

 3    lubrication.  But this would be an issue vis-a-vis every car,

 4    as contrasted to one where some worker forgot to put the

 5    lubrication in.

 6            MS. ZAMBRANO:  Yeah.  I think it I a design

 7    allegation.  But that doesn't stop the fact that all of the

 8    cases that look at -- they're alleging certain allegations,

 9    certain causes of action, that require causation.  There are

10    consumer statutes around the country that are strict liability.

11    These aren't those.  They have causation requirements.  And in

12    this instance --

13            THE COURT:  These particular statutes?

14            MS. ZAMBRANO:  Every one of them.  And I checked.  The

15    other stat -- some of the statutes also require reliance.  And

16    obviously Your Honor knows the difficulties of that, of proving

17    reliance, and the individual nature of that inquiry.

18            In addition, some of the statutes have notice

19    requirements.  And again, you have your -- the 23(a) problems,

20    which I've already described, with making sure somebody made

21    the notice that they're supposed to under the statute to be an

22    adequate representative.  But then again, every individual that

23    is part of that class has to establish the common elements.

24    And they have to have provided that notice.  That's individual

25    proof that's going to swamp any common issues with respect to a
```

Page 26

1    defect.  So I think those are the main problems with

2    predominance.

3            Now, I want to talk about superiority for a moment.

4    Obviously there is the fact that we are in bankruptcy court and

5    there was a ready alternative for people that have suffered

6    this problem to come and get relief.  And that is, of course,

7    to file a proof of claim.

8            I think it is notable that we have not seen any other

9    people do that, because outside of the notice that was provided

10   in the bankruptcy court, the only thing that a class action

11   process would provide is more publication notice.  And what

12   we've seen already is, at great cost to the estate, we've

13   provided notice:  if you have a claim against GM come and

14   assert it.  And none of these people did.

15           So I am skeptical and I think it's a waste of the

16   estate's resources and other creditors -- a burden and

17   prejudice to other creditors, to hold up the distribution of

18   300 million dollars, while we do that kind of notice again,

19   given that we had no response to the first.  So that's the

20   first point on superiority.

21           The second point on superiority is a little bit

22   different and something I've had to learn about.  It's called

23   NHTSA, the National Highway Traffic and Safety Authority (sic).

24   Mr. Schwartz will correct me if I got that wrong.  But it's

25   pronounced NHTSA.  And in their pleadings they talk a lot about

```
 1    NHTSA's investigation and so forth.  And so I spent a little

 2    time with that process.  And what I've learned is that you can

 3    accomplish all of the same things that they're trying to do in

 4    a NHTSA investigation that they're trying to do here.

 5             You can get a recall.  And I thought, well, maybe

 6    that's all you can get -- you can only get a recall, and maybe

 7    that's not going to be sufficient for someone who has already

 8    fixed their vehicle.  They don't need a recall.  They need

 9    reimbursement.  They also can provide orders for reimbursement

10    in that situation.  So I think that's also an alternative --

11             THE COURT:  And if the NHTSA acted, that would be --

12    you're saying it would a remedy, albeit, it would be New GM's

13    problem rather than -- who would --

14             MS. ZAMBRANO:  That's my position.

15             THE COURT:  -- who would fix these cars for consumers

16    if NHTSA -- I can't pronounce it the way you pronounced it --

17    said you got to do something here?

18             MS. ZAMBRANO:  It definitely would be New GM, it is

19    our position, yes.  And that is dealt with in the purchase and

20    sale agreement as well, although not as crystal clear as

21    probably everyone would like, on retrospect.

22             THE COURT:  It might result in a dispute between Old

23    GM and New GM, or New GM might come in here, as it sometimes

24    does, saying protect me.  But what's your understanding of New

25    GM's duty to belly up to the bar if the NHTSA were to say this
```

GENERAL MOTORS CORPORATION

Page 28

1    is serious enough to justify a recall?

2            MS. ZAMBRANO:  My understanding, having read those

3    portions of the purchase agreement, is that they would have an

4    obligation.  And that's why we put it in our papers.  We talked

5    about this before.

6            THE COURT:  There is an assumed liability, if you

7    will, or at least they haven't sought dispensation, to comply

8    with federal regulatory obligations of that character?

9            MS. ZAMBRANO:  Correct.  It is addressed.  Although,

10   again, I don't think it's as clear as everyone in retrospect

11   would like it.  We read it and felt comfortable that it was

12   addressed enough that that was -- that that would be what would

13   happen, according to us.

14           THE COURT:  And would I be the forum who would make

15   that determination if it ever got to be there?

16           MS. ZAMBRANO:  I don't know the answer to that.  I

17   assume you would have jurisdiction over any disputes over the

18   purchase and sale agreement, yes, Your Honor.  But I don't know

19   the answer to that definitively.

20           So that -- I mention all of this because I think that

21   is yet another device that is available to people in this

22   situation that does not leave them completely empty-handed,

23   particularly given that this is not theoretical.  This

24   investigation has been ongoing, and NHTSA is very aware of this

25   problem, and there's some background here for them if they

GENERAL MOTORS CORPORATION

Page 29

1   really wanted this relief.  So that's the 23(b) part of our

2   argument.

3            I'd like to address just very briefly the other

4   reasons, obviously, that this claim should be expunged.  The

5   first one obviously being the timing.  And I won't belabor

6   this.  The Court has spent a lot of time with the relevant case

7   law in this area.  But the law simply isn't that you're

8   supposed to wait.  The law is that you're supposed to act

9   promptly, as soon as reasonably practical.  That's in

10  accordance with Rule 23 itself and the precedent of this Court.

11  And certainly, these claimants have unfortunately waited longer

12  than the apartheid claimants waited.  And that really will have

13  an effect -- 300 million dollars in this estate, it will hold

14  up that distribution to other folks.  So that's number one.

15           The number -- the second reason is that the

16  discretion, of course, to permit a class in bankruptcy is used

17  so sparingly, as Your Honor noted in the apartheid decision,

18  really only treated or handled in two different kinds of cases;

19  one when there's been a precertification case.  And as Your

20  Honor probably noted from the case law, I don't even think it's

21  a slam dunk then.  I mean the Ephedra case talked about --

22  there was one case in that decision that had been certified

23  before.  And the Court did not permit it to proceed as a class

24  in that case.

25           We don't have that here.  And in fact, we don't have

GENERAL MOTORS CORPORATION

Page 30

```
1    that in any of the cases where there have been class proofs of

2    claim in the Southern District of New York; reported,

3    unreported, I can't find a decision where someone was not

4    certified before and was permitted to go forward.

5              THE COURT:  Other than by consent?

6              MS. ZAMBRANO:  Other than by consent.  Yes, Your

7    Honor.  And just for the record on that, we have -- we have not

8    consented to any cases to go forward as class claims that were

9    not certified prior to the petition.

10             The Saturn claimants attempt to avoid that law by

11   focusing on a narrow exception in the case law that was much

12   more relevant, in my view, in the apartheid decision; and

13   that's the notice exception.  I haven't ever seen a case

14   actually apply the notice exception, but they sort of talk

15   about it in most of them.

16             THE COURT:  All right.  Your point here is -- and I

17   take it you got my message in the apartheid decision that I

18   wasn't pleased with the quality of the notice that went to

19   those other people in South Africa.  But you're saying that

20   those problems are totally inapplicable here in the United

21   States?

22             MS. ZAMBRANO:  That's correct, Your Honor.  And so the

23   claimants -- in conclusion, the claimants simply waited too

24   long here to assert their class claims in this bankruptcy.  It

25   will clog up this process.  I do need to depose all of those
```

Page 31

1    people -- the named plaintiffs -- if we are going to proceed as

2    a class.  I do need to depose their expert with respect to the

3    statements he made about commonality and causation.  And so it

4    would clog up this 300 million dollars.  We would have to set

5    it aside while this Saturn litigation grinds on.  And I don't

6    think that's appropriate, given that we're mere weeks away from

7    confirmation.

8           And even if you were to overlook those problems that

9    are very real under the case law, you get to Rule 23.  And

10   while I do think they have a better case for certification

11   under Rule 23(b) than the apartheid plaintiffs did, they still

12   suffer from major predominance and superiority problems and

13   with the additional problem that's in the case law of the

14   ascertainability.

15          Unless the Court has any other questions, that will

16   conclude my presentation.

17          THE COURT:  No, thank you, Ms. Zambrano.

18          Mr. Schwartz?

19          MR. SCHWARTZ:  Thank you, Your Honor.  I'll try to be

20   brief.  One issue I would like to clarify is it's not a 300

21   million dollar claim.  When I was going through the papers last

22   night preparing, I realized that the expert made a mistake, and

23   the 300 million dollars would be if it was all fifty states.

24   Since it's not, it's probably just south of 100 million

25   dollars.

Page 32

1              THE COURT:  Just south of 100 million?

2              MR. SCHWARTZ:  Correct.

3              THE COURT:  Okay.

4              MR. SCHWARTZ:  And we can get an exact number on that.

5              THE COURT:  And help me understand the significance of

6    that capping liability.  I saw reference to that in the briefs.

7    Perhaps before argument I should have gone back to the

8    underlying declaration to better understand that event.  What

9    was that?

10             MR. SCHWARTZ:  I believe Your Honor is referring to we

11   had filed a claim capping letter agreeing to reduce the amount

12   of the claim in order to get into a mediation over the claim.

13   And there was correspondence with debtors' counsel about moving

14   it forward and --

15             THE COURT:  You're talking about like Rule 408 type of

16   stuff, that is not particularly relevant to what I'm doing now?

17             MR. SCHWARTZ:  Correct, Your Honor.

18             THE COURT:  Okay.

19             MR. SCHWARTZ:  Correct.

20             THE COURT:  Then I don't want to probe further in that

21   area.

22             MR. SCHWARTZ:  Okay.

23             THE COURT:  But one thing that occurred to me when Ms.

24   Zambrano was speaking as to something that I needed to come

25   back to you on is -- and it came up principally in the context

Page 33

1   of ascertainability of class members -- and that is that your

2   proposal for dealing with the uncertainty as to who would have

3   claims would be to wait until they file their class action

4   proofs of claim or their pieces of paper to participate in the

5   recovery showing what damages they had suffered, what nature of

6   injury they had suffered.  It wasn't just damages but how they

7   were injured.

8          How do I, as a judge, determine what pile of money has

9   to be taken from the other creditors to satisfy these

10  creditors, unless I know who has got membership in the class

11  and who has the injury that is the predicate for putting money

12  into the pot for this class, even before you get to the

13  subclasses?  Although the claims of the different subclasses

14  would seemingly have an effect on the aggregate class as a

15  whole, I don't see how one computes the aggregate damages if

16  you don't know who's in it.

17         MR. SCHWARTZ:  Well, I think Your Honor touched on

18  that, I believe, in the apartheid case.  I think we could do a

19  statistical analysis with experts to determine the incidence of

20  when these timing chains would break, over how many miles, and

21  how many cars would have been on the road at that point -- how

22  many cars -- you would have to have bought the car new, not

23  used, so it could be determined how long people owned a new car

24  and whether the incidence would have occurred during the time.

25  So I think it can be done.  It can be readily done with experts

GENERAL MOTORS CORPORATION

1    and a statistical analysis.

2         THE COURT: Um-hum. Okay. Continue, please.

3         MR. SCHWARTZ: Okay. With respect to causation, Your

4    honor, I don't agree with Ms. Zambrano's thinking on it,

5    because the causation here -- first of all it's a timing chain

6    not a timing belt. And a timing chain is supposed to last the

7    life of the vehicle. So when you have a timing chain breaking

8    and you have an expert opining that the oiling nozzle is

9    defective when it rolls off the assembly line, because it's not

10   going to property lubricate the timing chain, and the timing

11   chain, which again, is supposed to last the life of the

12   vehicle, breaks, I think you have causation.

13        And I think courts in those circumstances would find

14   causation. I don't think that'll be a problem for the

15   individual state breach of implied warranty law claims, or for

16   the consumer fraud claims. I think causation is not an issue.

17        With respect to superiority, again, I think my point

18   which I made when I began is that the notice in the bankruptcy

19   here notified people of GM's bankruptcy and the right to put a

20   claim. It did not notify purchasers of these vehicles that

21   there are allegations that Old GM sold them vehicles which were

22   defectively designed. A class action notice would notify

23   potential class members of that. And that's a big difference.

24   That's a big distinction between the bankruptcy notice and what

25   a class action notice does.

GENERAL MOTORS CORPORATION

Page 35

```
1            And we understand that a bankruptcy notice can

2     probably not do that with all the different -- especially with

3     a company like Old GM.  But in a class action notice, which is

4     specifically to notify potential class members of the claims

5     that they may have, it's very different.  I think that would be

6     more appropriate than to notify potential class members of

7     their claims here.

8            With respect to NHTSA, Your Honor, I think the claim

9     is you can get the similar relief from NHTSA.  NHTSA has not

10    done anything.  NHTSA's been investigating this for years.  Old

11    GM, we believe, placated NHTSA by doing that 20,000 car limited

12    recall by showing NHTSA some statistics that we don't believe

13    were valid because our plaintiffs and plenty of other people

14    have VIN numbers which show they were made after that three-

15    month window which Old GM recalled.  So we don't believe

16    relying on NHTSA is a viable alternative, because they haven't

17    acted and people are damaged and people have been damaged since

18    2002/2003, and no action has been taken.

19            I don't have anything else, Your Honor.

20            THE COURT:  Very well.  All right.  We're going to

21    take a break, and I would like all of you back here at 11

22    o'clock.  I can't guarantee you that I'll be ready at that

23    time, but I would ask that you be back here then.

24            You're authorized to use your cell phones in the

25    courtroom.  I gather now you don't need a waiver from the
```

Page 36

1    marshals.  You've been allowed to bring them upstairs.  But be

2    sure they're on vibrate or mute so they don't ring, if you've

3    decided to turn them on.  We're in recess.

4         (Recess from 10:35 a.m. until 11:50 a.m.)

5         THE COURT:  Have seats, please.  I apologize for

6    keeping you all waiting.

7         In the jointly administered Chapter 11 cases of debtor

8    Motors Liquidation Company, formerly General Motors

9    Corporation, which I refer as Old GM, I have a contested matter

10   evolving from a lawsuit brought against Old GM pre-petition

11   which, after the filing of proofs of claim by the plaintiffs,

12   now are before me in the form of claims against the Old GM

13   estate.  The lawsuit was brought on behalf of a putative class

14   of persons who owned certain Saturn vehicles across various

15   states and the District of Columbia.  These claims are alleged

16   to arise from a design defect in timing chains and oiling

17   nozzles used in Saturn vehicles.

18        I conclude that class certification, which is

19   discretionary in bankruptcy cases, must be denied under the

20   facts presented here.  I'm denying class certification and

21   disallowing the claims of absent class members, for most but

22   less than all of the reasons set forth in part one of my recent

23   apartheid decision in this case.  I'm going to summarize the

24   reasons here.  But if the class action plaintiffs wish to

25   appeal or seek leave to appeal, I'll issue full findings of

Page 37

1   facts, conclusions of law and bases for the exercise if my

2   discretion.  And I'll do so at or before the entry of the order

3   implementing these rulings.  But the following summarizes the

4   bases for the exercise of my discretion in this regard.

5          Just a few weeks ago, in part one of the apartheid

6   decision, which as yet doesn't appear in the B.R., but which is

7   at 2011 Bankruptcy LEXIS 240, 2011 W.L. 284933, I addressed

8   class certification issues.  Obviously that decision is

9   extraordinarily on point here.

10         In the apartheid decision I denied class certification

11  for a number of reasons, including a failure to satisfy the

12  requirement of Federal Rule of Civil Procedure -- what we

13  bankruptcy judges refer to as Civil Rule 23(b)(3), that common

14  issues predominate, the Civil Rule 23(b)(3) requirement that

15  class action treatment be superior, the late filing for class

16  certification, and because of other particular needs and

17  concerns of the bankruptcy system, particularly where a class

18  hadn't been certified pre-petition, and the debtor didn't

19  consent to class action certification.

20         Here I find that the class action proponent's position

21  on Civil Rule 23(b)(3) predominance of common issues is

22  stronger than it was in the apartheid decision, making that

23  issue more debatable.  But ultimately, I don't need to decide

24  and don't today decide whether the 23(b)(3) predominance

25  requirement has been satisfied, because all of the other

GENERAL MOTORS CORPORATION

Page 38

1    factors require me to deny class action certification in this

2    Chapter 11 case, just a few weeks before the scheduled

3    confirmation hearing, in any event.

4         I'm not now going to repeat all of the underlying law

5    applicable to matters of this character.  I discussed them in

6    depth just a few weeks ago in the apartheid decision.  And for

7    understandable reasons, class counsel doesn't dispute the

8    underlying law or legal standards or otherwise debate either

9    the holding of my recent apartheid decision or the legal

10   principles or reasoning it contained.

11        Turning first to class action superiority, the second

12   of the two requirements that Rule 23(b)(3) imposes, and which,

13   at the risk of stating the obvious, is in addition to the

14   requirement for the predominance of common issues.  The points

15   I made in the apartheid decision about class action treatment

16   not being superior are equally applicable here.  Assuming,

17   arguendo, that we could conquer the class action predominance

18   issues by setting up enough subclasses and plow through the

19   individual law of twenty-six states as applicable to the claims

20   of members of those various classes, that would place

21   tremendous strain on the bankruptcy system and the resources of

22   this Court in particular.

23        And class action treatment wouldn't be superior to the

24   mechanisms that are available in a bankruptcy court, for the

25   reasons I noted in the apartheid decision, based in material

1    part on Chief Judge Bernstein's decision in Musicland, as he

2    had there pointed out, the inherent simplicity of the

3    bankruptcy process tends to make class action treatment not

4    superior, as a general matter, and in this case, because an

5    individual claimant would need only to fill out and return a

6    proof of claim form.  Further, the deterrence that class

7    actions often provide would be of little utility in a case like

8    this one, where Old GM is liquidating and the punishment for

9    any wrongful Old GM conduct would be borne by Old GM's innocent

10   creditors.  See Musicland 362 B.R. at pages 650 to 651.

11         Turning now to unique bankruptcy concerns.  First, I

12   noted in the apartheid decision that the motion for class

13   certification should have been made much earlier in that case,

14   citing the Ephedra cases and Northwest Airlines; and that late

15   motions of this character raise concerns when they would have a

16   material effect on distributions to other creditors, as the 100

17   million dollars in claims asserted here so obviously would.

18         I ruled there that late filing would not, by itself,

19   bar class certification, but that it was an important factor.

20   My thinking in that respect hasn't changed in the three weeks

21   since I ruled on that issue before.  It's not relevant for

22   purposes of placing blame, but it's relevant because late

23   motions of this type have a major effect on the administration

24   of the Chapter 11 case and on potential prejudice to creditors.

25         Here, the Saturn plaintiffs failed to file a motion

GENERAL MOTORS CORPORATION

Page 40

1    for class action treatment until fourteen months after Old GM's

2    bar date and twenty months after the commencement of Old GM's

3    bankruptcy.  Given the substantial impact that almost 100

4    million dollars in claims could have on the Old GM estate, the

5    Saturn claimants should have sought class certification here,

6    just as in the apartheid litigation, far sooner than they did.

7    And that concern is particularly significant and perhaps

8    obvious, when we have a confirmation hearing set for March 3,

9    only three and a half weeks away.  The issues presented here

10   would take extraordinary court resources to hear in an

11   allowance hearing or even to estimate under Section 502, and

12   where until and unless the claims were fixed or estimated, we'd

13   have to set up a 100 million dollar reserve.

14          Secondly, we here have a variant of the point I made

15   before, which is relevant in this different context.  Once

16   again, assuming that I could deal with the predominance issues

17   by setting up enough subclasses, the issues dealing with the

18   twenty-six states' separate laws and the particular issues as

19   amongst the various subclasses and other aspects of the

20   individual nature of consumers' claims, dealing with this,

21   would just place too much strain on the bankruptcy system and

22   on this Court.

23          As Judge Rakoff observed in the Ephedra litigation,

24   bankruptcy significantly changes the balance of factors to be

25   considered in determining whether to allow a class action.  And

1    class certification may be less desirable in bankruptcy than in

2    ordinary civil litigation.  See his Ephedra decision at 329

3    B.R. at page 5.  See also Judge Lifland's analysis very

4    recently in Blockbuster.  Class-based claims have the potential

5    to adversely affect the administration of a case by adding

6    layers of procedural and factual complexity, siphoning the

7    debtor's resources and interfering with the orderly progression

8    of the reorganization.

9         For those reasons, among others, I must find that

10    entertaining these claims on a class action basis would

11    significantly complicate the GM debtors' Chapter 11 case here.

12    Thus, on a matter where bankruptcy judges have unquestioned

13    discretion to determine whether class action certification

14    would inappropriately clash with bankruptcy needs and concerns,

15    I can't authorize class action treatment here.

16         Finally, unlike the apartheid case, the quality of the

17    notice here is not even debatable.  The notice within the

18    United States was unquestionably satisfactory.  And as I noted

19    before, that is, in the apartheid litigation, the filing of the

20    GM Chapter 11 case was well known.  Paraphrasing Judge Kaplan's

21    observation back in July 2009, on a stay application from my

22    363 decision, the filing of the GM Chapter 11 case was an event

23    of which no sentient American was unaware.

24         Here, the class is made up of U.S. citizens who are

25    car owners and who, it may reasonably be inferred, watch

GENERAL MOTORS CORPORATION

Page 42

1   television, listen to the radio, read newspapers and knew any

2   problems that had infected GM and had resulted in GM's

3   bankruptcy.  It would be incorrect to argue that they did not

4   have notice.  I'm not persuaded by the distinction that I heard

5   in oral argument that I should consider notice of GM's

6   bankruptcy to be an unsatisfactory substitute for telling

7   people that they have problems in their vehicles with respect

8   to their bad timing chains.  If anyone had a problem with a

9   failed timing chain, he or she would know that and could easily

10  file a regular proof of claim in this case.

11          The debtors point out, without dispute, that there is

12  no decision in this district in which the Court has ever

13  exercised its discretion to make civil rule applicable in a

14  Chapter 11 case, where the class was not certified pre-petition

15  or the estate didn't consent.  In this case, with confirmation

16  just three and a half weeks away, I'm not going to be the

17  first.

18          For the reasons I just summarized, I'm denying the

19  cross motion for class certification and I'm granting the

20  motion to disallow the claims insofar as they're asserted on

21  behalf of absent class members.  However, I will authorize the

22  individual class representatives to file individual proofs of

23  claim for their personal damages underlying these claims,

24  within the later of the time agreed upon between class action

25  plaintiffs' counsel and the debtors, or thirty days from the

GENERAL MOTORS CORPORATION

Page 43

1   entry of the order denying class certification here.

2        If the individual class representatives elect to avail

3   themselves of the right I'm giving them to file individual

4   proofs of claim, I'm ruling that their doing so will be without

5   prejudice to any rights they have to appeal or leave to appeal.

6        The debtors are to settle an order in accordance with

7   the foregoing, but they're first to consult with Mr. Schwartz

8   and to find out from him, whether he'd like to appeal or seek

9   leave to appeal or otherwise wants me to make full findings of

10  fact, conclusions of law and bases for the exercise of my

11  discretion.  I have many things on my plate, and obviously I

12  think this capsulizes the bases for my ruling.  But if it's

13  desired, I will make more extensive full findings, as I did on

14  the apartheid decision.  Mr. Schwartz is entitled to that, and

15  if he's of a mind to, he's entitled to that before or at the

16  time that I enter the order.

17        I appreciate your indulgence.  We've now gone through

18  the whole morning, and I made you wait a while for this

19  decision.  We're now adjourned.  Have a good day.

20        (Whereupon these proceedings were concluded at 12:07 p.m.)

21

22

23

24

25

Page 44

1

2                               I N D E X

3

4                              RULINGS

5                                              Page      Line

6   Class certification is denied               36        18

7   Claims of absent class members are disallowed  36     20

8   Individual class representatives may file    42        21

9   individual proofs of claim for personal

10  damages

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 45

1

2                        C E R T I F I C A T I O N

3

4    I, Sharona Shapiro, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    Sharona                    Digitally signed by Sharona Shapiro
                                DN: cn=Sharona Shapiro, c=US
     Shapiro                    Reason: I am the author of this document
8                               Date: 2011.02.11 11:51:15 -05'00'
     _____

9    SHARONA SHAPIRO

10   AAERT Certified Electronic Transcriber (CET**D-492)

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  February 11, 2011

18

19

20

21

22

23

24

25