Hearing Date and Time: April 26, 2011 at 9:45 a.m. (Eastern Time)
Objection Deadline: April 19, 2011 at 4:00 p.m. (Eastern Time)

**LOWENSTEIN SANDLER PC**
Sharon L. Levine, Esq.
S. Jason Teele, Esq.
Andrew Behlmann, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 262-6700
Facsimile:    (973) 597-2333

*Counsel to David Irwin*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) )  ) Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.* | ) ) ) Case No. 09-50026 (REG) ) Jointly Administered |
| Debtors. | ) ) |

**NOTICE OF MOTION OF DAVID IRWIN FOR RELIEF FROM THE AUTOMATIC STAY TO CONDUCT LIMITED INTRUSIVE TESTING OF DEBTORS' PROPERTY**

**PLEASE TAKE NOTICE** that the undersigned will present the attached *Motion of David Irwin for Relief From the Automatic Stay To Conduct Limited Intrusive Testing of Debtors' Property* (the "Motion") to the Honorable Robert E. Gerber, Bankruptcy Judge of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), at One Bowling Green, New York, New York 10004, at a hearing to be held on **April 26, 2011 at 9:45 a.m. (Eastern Time)** (the "Hearing").

**PLEASE TAKE FURTHER NOTICE** that objections, if any, to the relief requested in the Motion must comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York, must be set forth in a

25156/2
03/11/2011 16925241.6

writing describing the basis therefor and must be filed with the Bankruptcy Court electronically in accordance with General Orders M-182 and M-193 by registered users of the Bankruptcy Court's electronic case filing system (the User's Manual for the Electronic Case Filing System can be found at http://www.nysb.uscourts.gov, the official website of the Bankruptcy Court) and, by all other parties in interest, on a 3.5-inch disk, preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard copy delivered directly to Chambers) and served in accordance with General Order M-182 or by first-class mail upon each of the following: (a) Counsel for Irwin:  Lowenstein Sandler PC, 65 Livingston Avenue, Roseland, New Jersey, 07068, Attn: Andrew Behlmann, Esq.; (b) Counsel for the Debtors: Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10143, Attn: Harvey R. Miller, Esq. (facsimile 212-310-8007); (c) Counsel for the Official Committee of Unsecured Creditors: Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036, Attn: Thomas Moers Mayer, Esq.; and (d) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Diana G. Adams, Esq., so as to be received no later than **April 19, 2011 at 4:00 p.m. (Eastern Time)** (the "Objection Deadline").  Only those responses that are timely filed, served, and received by the Objection Deadline will be considered at the Hearing.  Failure to file a timely objection may result in entry of a final order granting the Motion without further notice. The parties are required to attend the Hearing and failure to attend in person or by counsel may result in relief being granted or denied upon default.

Dated:   March 11, 2011

        **LOWENSTEIN SANDLER PC**

By: _____/s/ S. Jason Teele_____
      Sharon L. Levine, Esq.
      S. Jason Teele, Esq.
      Andrew Behlmann, Esq.
      1251 Avenue of the Americas
      New York, New York 10020
      Telephone:   (212) 262-6700
      Facsimile:    (973) 597-2333

*Counsel to David Irwin*

Hearing Date and Time: April 26, 2011 at 9:45 a.m. (Eastern Time)
Objection Deadline: April 19, 2011 at 4:00 p.m. (Eastern Time)

**LOWENSTEIN SANDLER PC**
Sharon L. Levine, Esq.
S. Jason Teele, Esq.
Andrew Behlmann, Esq.
1251 Avenue of the Americas
New York, New York 10020
Telephone:    (212) 262-6700
Facsimile:    (973) 597-2333

*Counsel to David Irwin*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | ) |
| | ) |
| | ) Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, | ) |
| f/k/a General Motors Corp., *et al.* | ) Case No. 09-50026 (REG) |
| | ) Jointly Administered |
| Debtors. | ) |
| | ) |

### MOTION OF DAVID IRWIN FOR RELIEF FROM THE AUTOMATIC STAY TO CONDUCT LIMITED INTRUSIVE TESTING OF DEBTORS' PROPERTY

David Irwin ("Irwin"), by and through his undersigned counsel, hereby moves this Court (the "Motion") for entry of an order substantially in the form annexed hereto as Exhibit A (the "Order"), pursuant to section 362 of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") and Rule 4001-1 of the Local Bankruptcy Rules, modifying the automatic stay to permit third-party expert witnesses retained by Irwin, M&M Auto (as defined below), or their respective insurers to conduct limited intrusive testing of certain property of the Debtors, consisting of a 2008 Saab 9-3 (the "Vehicle")[1] that previously belonged to Irwin, for discovery purposes relating to an accident in which Irwin suffered substantial bodily injuries. In support of this Motion, Irwin respectfully represents as follows:

---

[1] The Vehicle bears Vehicle Identification Number (VIN) YS3FB49YX81115773.

25156/2
03/11/2011 16925241.6

## PRELIMINARY STATEMENT

1.    By this Motion, Irwin seeks relief from the automatic stay for the very limited purpose of permitting an expert to conduct an analysis of certain components of Irwin's former automobile, which the Debtors purchased from Irwin's insurer to preserve its evidentiary value. Irwin has already agreed, pursuant to the ADR Procedures approved in these cases, see Docket No. 5037, to cap his potential claim against the Debtors and to submit to binding arbitration. Accordingly, Irwin does not seek stay relief to pursue lengthy and costly state-court litigation against the Debtors, but rather, seeks narrowly tailored relief to permit him to proceed with litigation against non-Debtor third parties.

2.    On January 29, 2009, Irwin, the original owner of the Vehicle, was partially ejected from the Vehicle when the driver's side door opened upon impact with a railroad crossing vertical support post. Irwin suffered substantial initial injuries as a result, including fifteen broken ribs, punctures to both lungs, a cracked thoracic vertebra, reflex sympathetic dystrophy in his foot, a broken shoulder, a partially torn-off ear, kidney damage, and scarring throughout his body, including his shoulder, chest, and face. Irwin's medical expenses, though not yet fully known, are expected to approach $200,000.

3.    The Vehicle was a total loss, and the Debtors, having received notice that the Vehicle was involved in a catastrophic accident, purchased the Vehicle from Irwin's insurer in its damaged state in order to preserve its evidentiary value. An auto body shop that had previously performed repairs on the Vehicle retained an engineer, who performed a non-destructive inspection of the Vehicle with the Debtors' permission in May 2009. Subsequent to that inspection, the engineer recommended that the driver's-side door of the Vehicle be removed, disassembled, and inspected to determine why the door opened during the Collision. This

partially destructive testing is essential to ascertaining whether the door opened due to a design flaw or negligent repairs.

4. Because the Vehicle is now the property of the Debtors' bankruptcy estates, the Engineer and Irwin's expert cannot conduct the necessary testing without the Debtors' consent or relief from the automatic stay. To date, the Debtors have not permitted further access to the Vehicle. By this Motion, Irwin seeks relief from the automatic stay to permit access to the Vehicle to conduct limited destructive testing of the driver's-side door and related components, so that Irwin may proceed with his litigation against a non-Debtor defendant, and establish and liquidate his claims, if any, against the Debtors via the ADR procedures approved in these bankruptcy cases.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory predicates for the relief sought in this Motion are section 362(d)(1) of the Bankruptcy Code and Local Bankruptcy Rule 4001-1.

## BACKGROUND

7. On August 30, 2008, Irwin purchased the Vehicle new from Gebhardt Automotive, Inc. ("Gebhardt"). See Sales Invoice dated August 30, 2008, annexed as Exhibit 1 to the Declaration of Jeff Kelley, Esq. (the "Kelley Decl.") filed contemporaneously herewith as Exhibit B. On January 29, 2009, Irwin was partially ejected from the Vehicle when the driver's-side door opened upon impact (the "Collision") with a railroad crossing. See State of Colorado Traffic Accident Report Dated January 29, 2009, annexed to the Kelley Decl. as Exhibit 2.

-3-

Irwin's initial injuries from the Collision included fifteen broken ribs, punctures to both lungs, a cracked thoracic vertebra, reflex sympathetic dystrophy in his foot, a broken shoulder, a partially torn-off ear, kidney damage, and scarring throughout his body including shoulder, chest, and face. Total medical expenses are not yet fully known but are expected to approach $200,000.

**Prior Repairs to the Vehicle**

8.  Approximately four months prior to the Collision, the Vehicle was involved in a low-speed collision that damaged the driver's-side door, the same door that opened upon impact with the railroad support post. The door was repaired by M&M Auto Sales and Body Shop, owned by Dennis Michel and Tom Michel (collectively, "M&M Auto") and located in Sterling, Colorado. See Estimate of Repairs and Preliminary Supplement with Summary, annexed to the Kelley Decl. as Exhibit 3. M&M Auto removed the door from the vehicle, removed and installed a new outer door skin, and reinstalled the door on the Vehicle. Irwin, dissatisfied with the repairs due to a "hollow" sound in the door, returned the Vehicle to M&M Auto for additional repairs. Irwin used the Vehicle regularly and without incident until the Collision.

**Post-Collision Inspection of the Vehicle**

9.  Upon receiving notice that the Vehicle had been involved in a catastrophic collision, the Debtors purchased the Vehicle at auction and placed it in protected indoor storage at Front Range Automotive in Englewood, Colorado. See Letter from Paul Olle, ACE ESIS GM Central Claims Unit, to Phil Harding, dated April 1, 2009, annexed to the Kelley Decl. as Exhibit 3. The ESIS/GM Central Claims Unit ("ESIS")[2] permitted Bastian E. Corneilissenn, P.E. (the "Engineer"), an engineer hired by M&M Auto, to inspect the Vehicle. With the Debtors' permission, the Engineer and Irwin's expert, John Koziol, performed a non-destructive inspection

---

[2] ESIS, a member of the ACE Group of Insurance Companies, manages auto, general, and products liability claims for General Motors. Upon information and belief, the Debtors' products liability insurance policy carries a self-insured retention of $35 million per claim, and ESIS provides claims administration services for the Debtors.

-4-

(the "Inspection") of the Vehicle's driver's-side door on May 19, 2009 at Front Range Automotive, in the presence of representatives of Irwin and the Debtors.

10.    Following the Inspection, the Engineer recommended that the driver's-side door and related components of the Vehicle be removed, disassembled, and inspected (the "Testing") to determine why the door opened in the Collision.  See Letter from Bastiaan E. Cornelissen, Ph.D., P.E. to Robert I. Lapidow, Esq., dated May 25, 2009, annexed to the Kelley Decl. as Exhibit 5.  The Testing is essential to determine whether the Vehicle had a design flaw or M&M Auto performed negligent repairs.  However, subsequent to the Inspection, the Debtors have provided no further access to the Vehicle.

11.    On June 1, 2009 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On account of the Debtors' bankruptcy filings, the Testing cannot take place without the Debtors' consent or relief from the automatic stay.  Without the results of the Testing, Irwin is unable to identify the party or parties responsible for his injuries.

**State Court Litigation**

12.    On November 12, 2010, Irwin commenced litigation (the "Colorado Litigation") against M&M and Gebhardt by filing a *Complaint and Jury Demand* in the Boulder District Court, State of Colorado.  Due to the automatic stay imposed by the Debtors' bankruptcy filings, Irwin did not name the Debtors as defendants in the Colorado Litigation.

13.    On January 31, 2011, a *Motion for Change of Venue* filed by M&M Auto was granted, and the Colorado Litigation was transferred to the District Court of Logan County, State of Colorado.  On February 23, 2011, the District Court for Logan County, Colorado, ordered a six-month stay of the Colorado Litigation to afford Irwin an opportunity to seek stay relief in the

Debtors' bankruptcy cases, so that Irwin can obtain access to the Vehicle to perform the Testing, to determine the reason the door opened in the Collision.

14.     Irwin timely filed a Proof of Claim form in the Debtors' bankruptcy cases [Claim No. 25376] on November 13, 2009,[3] asserting an unliquidated general unsecured claim against Debtor Motors Liquidation Company (f/k/a General Motors Corporation). Irwin has agreed to cap his claim, and has agreed to submit his claim to arbitration pursuant to the ADR Procedures approved by the Court in these bankruptcy cases. However, numerous attempts by Irwin's counsel to contact Debtors' counsel and ESIS to gain access to the Vehicle to perform the Testing have been unsuccessful, rendering this Motion essential to preserve the Vehicle and enable the Testing.

## ARGUMENT

15.     Irwin is entitled to the limited stay relief sought in this Motion because this relief (i) may result in partial resolution of the issues in the Colorado Litigation or Irwin's claim against the Debtors' estates (ii) will not interfere with the Debtors' bankruptcy cases in any way, (iii) primarily involves third parties, (iv) will not prejudice the rights of other creditors, (v) will promote the expeditious resolution of litigation, (vi) will not result in an avoidable judicial lien against the Debtors, and (vii) will not have a significant impact on the Debtors or their bankruptcy cases, and will prevent harm to Irwin that would vastly outweigh any incremental burden on the Debtors' estates.

### I.     GENERAL STANDARD FOR STAY RELIEF

16.     Section 362(d)(1) of the Bankruptcy Code permits Bankruptcy Courts to modify or lift the automatic stay "for cause." The Bankruptcy Code does not define "cause," but, under

---

[3] The last date for non-governmental general unsecured creditors to file Proof of Claim forms in these bankruptcy cases was November 30, 2009 at 5:00 p.m. (Prevailing Eastern Time). See Docket No. 4079.

Second Circuit law, courts assess whether cause exists warranting a modification of the stay on a case-by-case basis. See In re Sonnax Indus., 907 F.2d 1280, 1287 (2d Cir. 1990) (noting that the decision to grant stay relief for cause is discretionary). Courts maintain broad discretion in making this determination, and employ a fact-intensive analysis, commonly assessing the following factors to determine whether cause exists for stay relief:

1. whether relief would result in partial or complete resolution of the issues;

2. lack of any connection with or interference with the bankruptcy case;

3. whether the other proceeding involves the debtor as a fiduciary;

4. whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;

5. whether the debtor's insurer has assumed full responsibility for defending it;

6. whether the action primarily involves third parties;

7. whether litigation in another forum would prejudice the interests of other creditors;

8. whether the judgment claim arising from the other action is subject to equitable subordination;

9. whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;

10. the interest of judicial economy and the expeditious and economical resolution of litigation;

11. whether the parties are ready for trial in the other proceeding; and

12. impact of the stay on the parties and the balance of harms.

Id. at 1286 (citing In re Curtis, 40 B.R. 795 (Bankr. D. Utah 1984)). These twelve factors are

commonly known as the Sonnax factors. In re Lehman Brothers Holdings Inc., 435 B.R. 122, 138 (S.D.N.Y. 2010); cf. In re Mazzeo, 167 F.3d 139, 143 (2d Cir. 1999) (vacating stay relief order where lower court did not apply the Sonnax factors and made only cursory factual findings). Of the twelve factors, courts need only consider the factors relevant to a given case. See Sonnax, 907 F.2d at 1285; Lehman Brothers Holdings, 435 B.R. at 138 ("Only those factors bearing on the particular case need be considered.") (citing In re Touloumis, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994)).

## II. THE RELEVANT *SONNAX* FACTORS WEIGH HEAVILY IN FAVOR OF STAY RELIEF

17. In this instance, the first, second, sixth, seventh, ninth, tenth, and twelfth Sonnax factors are relevant, and each weighs strongly in favor of granting Irwin the limited stay relief requested in this Motion.

### A. Sonnax Factor #1: Granting Stay Relief May Result in Full Resolution of the Issues as to the Debtors.

18. Crucial to Colorado Litigation involves resolving the issue of determining the proper defendant. As the purpose of the Testing is to ascertain what caused the driver's-side door of the Vehicle to open in the Collision, the Testing itself is a gating issue in the Colorado Litigation. Modifying the automatic stay to permit the Testing enables Irwin's counsel to ascertain whether M&M Auto, the Debtors, or both are at fault. Thus, while the results of the Testing may prompt Irwin to proceed with arbitration to fix the amount of his claim against the Debtors (a procedure already authorized under the ADR Procedures, and for which no stay relief is necessary), it is equally possible that the Testing could rule out liability by the Debtors and resolve Irwin's claim against them.

B. **Sonnax Factor #2: Stay Relief Will Not Interfere With the Debtors' Bankruptcy Cases.**

19. Following the Collision, the Vehicle was a total loss. The Debtors purchased the Vehicle from Irwin's insurer solely to preserve its evidentiary value, and the Vehicle is of no consequence to the Debtors' success or failure in its chapter 11 reorganization. Permitting removal and disassembly of the driver's-side door from an already-demolished automobile for evidentiary purposes—particularly when the Debtors purchased the vehicle *specifically for that purpose*—will not interfere with the Debtors' bankruptcy cases. While the results of the Testing may supply evidence supporting Irwin's pending claim against the Debtors through the ADR Procedures, the Testing may also facilitate the resolution of Irwin's claim by finding a non-Debtor solely responsible for Irwin's injuries. Moreover, Irwin does not seek to compel the Debtors to fund the Testing at their expense. The Debtors will incur no expense as a result of the Testing, which will be conducted by a non-Debtor.

C. **Sonnax Factor #6: The Colorado Litigation Primarily Involves Third Parties.**

20. The Debtors are not named as defendants in the Colorado Litigation; Irwin has agreed to submit his claim against them to arbitration, and does not seek stay relief to name them as defendants. Gebhardt, a Saab dealer, has been dismissed as a defendant in the Colorado Litigation. Thus, the Colorado Litigation now involves only two non-Debtors: Irwin and M&M Auto. With respect to the Colorado Litigation, the purpose of the Testing is to determine whether a design flaw by the Debtors or negligent repairs by M&M Auto caused the driver's-side door of the Vehicle to open in the Collision. This determination, instrumental in deciding whether the Colorado Litigation should proceed against M&M Auto or end, involves only Irwin, M&M Auto, the Engineer, and Front Range Automotive. The Debtors' connection to the relief sought—and the only reason the Testing has been delayed—is that the Debtors hold the title to

and control possession of the Vehicle.

        D.      **Sonnax Factor #7: Permitting the Testing Will Not Prejudice Other Creditors.**

      21.      The Debtors purchased the Vehicle solely to preserve its evidentiary value. Through the Testing, Irwin and M&M Auto now seek to extract this evidentiary value. The monetary value of the Vehicle is inconsequential to the Debtors' estates, and the diminution in value of a total-loss automobile from the removal of a single door will have a negligible effect on the ultimate distribution to the Debtors' other creditors. Moreover, the Debtors arranged for protected indoor storage of the Vehicle in Colorado, and thus likely have incurred and continue to incur postpetition storage fees as an administrative expense. Completing the Testing shortens the amount of time the Debtors must retain the Vehicle, saving the Debtors' estates from continuing to incur storage fees—actually *benefitting* other creditors.

        E.      **Sonnax Factor #9: Permitting the Testing Will Not Result in an Avoidable Judicial Lien Against the Debtors.**

      22.      As noted above, Irwin does not seek stay relief to litigate against the Debtors in another forum. Irwin has agreed to move his claim against the Debtors into the alternate nonjudicial litigation framework the Debtors themselves created, including agreeing to cap his claim at a maximum dollar amount. That process does not require further approval by the Court to proceed. Rather, by this Motion, Irwin seeks limited stay relief for the sole purpose of accessing property held by the Debtors to conduct an analysis essential in his pending litigation against a non-Debtor defendant. Because the Colorado Litigation does not involve the Debtors, the limited stay relief sought in this Motion cannot result in a judgment against the Debtors, and therefore cannot result in an avoidable judgment lien against them.

**F.     Sonnax Factor #10: Permitting the Testing Will Promote the Expeditious and Economical Resolution of the Colorado Litigation.**

23.     The state court temporarily stayed the Colorado Litigation pending the outcome of this Motion. If Irwin obtains stay relief, the Testing then enables him to determine whether to prosecute or abandon the Colorado Litigation. In either event, logic dictates that the sooner the Colorado Litigation can proceed, the sooner it can be resolved. Permitting the Testing will shorten the period of time that the Debtors hold the Vehicle and incur storage charges, without subjecting the Debtors, the Court, or any other party to any incremental burden.

**G.     Sonnax Factor #12: The Balance of Harms Favors Granting Stay Relief.**

24.     Absent judicial relief from the automatic stay, it is unclear when—if ever—Irwin would be able to access the Vehicle to conduct the Testing. The Debtors sold substantially all of their operating assets, and now exist solely as liquidating companies. Even if the Debtors confirmed a chapter 11 plan tomorrow, the automatic stay would not automatically terminate until their bankruptcy cases are closed. See 11 U.S.C. § 362(c)(2)(C) (automatic stay in a chapter 11 case continues until a discharge is granted); § 1141(d)(3) (confirmation of a liquidating plan does not discharge a chapter 11 debtor). This could leave Irwin in a state of limbo for an undefined period of time, unable to proceed with state-court litigation solely against a non-Debtor. Clearly, the substantial harm Irwin will suffer absent relief from the automatic stay vastly outweighs any harm to the Debtors' estates resulting from the partial disassembly of an already-demolished automobile that the Debtors purchased for that very purpose.

**H.     All Relevant Sonnax Factors Weigh Heavily in Favor of Stay Relief.**

25.     It is clear from the above analysis of the seven relevant Sonnax factors that "cause" exists for the limited relief Irwin seeks from the automatic stay pursuant to section 362(d)(1) of the Bankruptcy Code. Absent such relief, Irwin's state-court litigation likely will

-11-

remain in stasis for years, potentially depriving him of any recovery whatsoever. Granting stay relief, on the other hand, imposes no burden on the Debtors' estates, and actually may *benefit* the estates by shortening the period of time the Vehicle remains in storage at the Debtors' expense. The Debtors purchased the Vehicle to preserve its evidentiary value, which value Irwin now seeks to obtain. The filing of the Debtors' bankruptcy cases should not frustrate equity by preventing him from doing so.

## **RESERVATION OF RIGHTS**

26.     Irwin reserves the right to assert any other or further grounds for the relief sought in this Motion at or before the hearing hereupon.

## **CONCLUSION**

WHEREFORE, Irwin respectfully requests that the Court enter an Order (i) granting Irwin relief from the automatic stay for the limited purpose of permitting the Engineer to conduct the Testing, (ii) requiring the Debtors, Front Range Automotive, and any person in possession of the Vehicle to permit Irwin, M&M Auto, the Engineer, and their insurers and representatives access to the Vehicle to perform the Testing, and (iii) granting Irwin such other relief as the Court deems just and proper.

Dated:   March 11, 2011

                      **LOWENSTEIN SANDLER PC**

                      By:   */s/ S. Jason Teele*
                            Sharon L. Levine, Esq.
                            S. Jason Teele, Esq.
                            Andrew Behlmann, Esq.
                            1251 Avenue of the Americas
                            New York, New York 10020
                            Telephone:   (212) 262-6700
                            Facsimile:     (973) 597-2333

*Counsel to David Irwin*