# EXHIBIT B

## IUE-CWA GM BANKRUPTCY CLAIM TRUST AGREEMENT

THIS TRUST AGREEMENT, entered into effective November 29, 2010, by and among, James Clark, Lauren Asplen, Mark Profitt, Lesley Cash and Edward Fire (collectively, the"Trustees"),

### WITNESSETH:

WHEREAS, the IUE-CWA entered into a Settlement Agreement with General Motors Company ("GM") and Motors Liquidation Company ("MLC") in the course of the Chapter 11 bankruptcy case entitled, *In re: Motors Liquidation Company, et al., f/k/a General Motors Corp, et al.,* Case No. 09-50026 (REG) ("the Settlement Agreement") in which IUE-CWA was granted an allowed pre-petition unsecured claim pursuant to Section 1114 of the Bankruptcy Code, 11 U.S.C. § 1114, in MLC's Chapter 11 case in the amount of its proportionate share (*i.e.,* 79.39%) of one billion dollars ($1,000,000,000) with respect to certain retirees and surviving spouses (the "Allowed IUE-CWA Claim");

WHEREAS, by an order dated November 12, 2009, the Bankruptcy Court approved the Settlement Agreement (the "Court Order");

WHEREAS, the undersigned Trustees have entered into this Trust Agreement to implement the Trust, to be known as the "IUE-CWA GM BANKRUPTCY CLAIM TRUST" (the "Trust");

WHEREAS, the Settlement Agreement contemplates that the Bankruptcy Court will approve any assignment or disbursement of the proceeds of the Allowed Claim by IUE-CWA or any other unions that share in the Claim pursuant to the Settlement Agreement;

WHEREAS, IUE-CWA intends to seek a further Order of the Bankruptcy Court approving its assignment of the Allowed IUE-CWA Claim to the IUE-CWA GM BANKRUPTCY CLAIM TRUST;

WHEREAS the purpose of the Trust is to provide such supplemental medical, dental and vision benefits to the eligible participants as the Trustees determine may be prudently provided from the assets available to the Trust from the IUE-CWA allowed claim;

WHEREAS, the Trustees are willing to serve as a named fiduciary of the Plan;

WHEREAS, the Trustees are willing to receive, hold, and invest the assets of the Trust in accordance with the terms of this Trust Agreement;

WHEREAS, the Trust is intended to comply with the requirements of Section 501(c)(9) of the Internal Revenue Code of 1986, as amended (the "Code"), the applicable provisions of the Employee Retirement and Income Security Act ("ERISA"), and § 302 of the Labor Management Relations Act of 1947, ("LMRA");

1

WHEREAS, other unions entitled to participate in the Claim provided by virtue of the Settlement Agreement may at some time seek to assign their portion of the claim to the IUE-CWA GM BANKRUPTCY CLAIM TRUST  and have their members become participants in the program of benefits provided by the Trust

NOW THEREFORE, in consideration of the premises and the covenants contained herein, the Trustees agree as follows:

Article I
DEFINITIONS

Section 1.01 <u>Authorized Investments.</u> The term "Authorized Investments" shall not be limited to investments that are defined as legal investments for trust funds under the laws of any jurisdiction and shall include, but shall not be limited to: (i) cash held in interest bearing accounts or cash equivalents that are credited with earnings; (ii) bonds, debentures, notes, or other evidences of indebtedness; (iii) stocks (regardless of class), or other evidences of ownership, in any corporation, partnership, collective investment fund (including funds for which the Trustee or an affiliate thereof serves as investment manager), investment company, association, joint venture or business trust; (iv) investment contracts issued by legal reserve insurance companies; (v) group or pooled trusts described in Revenue Ruling 81-100, 1981-1 C.B. 326; and (vii) any other investment or transaction permitted by applicable law.

Section 1.02 <u>Benefits.</u> The term "Benefits" shall mean post-retirement medical benefits, including, but not limited to, hospital, surgical, medical, prescription drug, vision, dental, and hearing aid.

Section 1.03 <u>Benefit Provider.</u> The term "Benefit Provider" shall mean any Insurer, health maintenance organization, network of health care professionals, clinic, pharmaceutical, health care or welfare benefit management contractor, or any other provider or manager or other entity appointed by the Trustees to provide or defray the costs of the benefits provided under the Plan.

Section 1.04 <u>Chair.</u> The term "Chair" shall mean the Trustee selected pursuant to Section 8.02 to perform the functions described in Article IX.

Section 1.05 <u>Code.</u> The term "Code" shall mean the Internal Revenue Code of 1986, as amended, and any successor statute thereto.

Section 1.06 <u>Trustees.</u> The term "Trustees" shall mean the governing body that is described in this Trust Agreement.

Section 1.07 <u>Cost-Sharing.</u> The term "Cost Sharing" shall mean co-payments, deductibles, co-insurance, and other out-of-pocket expenses charged to a Participant in connection with a Benefit (covered or otherwise) under the terms of the Plan.

Section 1.08 <u>DOL.</u> The term "DOL" shall mean the United States Department of Labor.

2

Section 1.09 <u>ERISA.</u> The term "ERISA" shall mean the Employee Retirement Income Security Act of 1974, as amended.

Section 1.10 <u>Insurer.</u> The term "Insurer" shall mean an entity which is licensed to sell insurance by one or more states where Participants reside and which is appointed by the Trustees to insure any Benefits provided under the Plan.

Section 1.11 <u>Independent Trustee.</u> The term "Independent Trustee" shall mean an individual person who serves as a Trustee and is not appointed by the IUE-CWA, who satisfies the requirements of Section 8.01 hereof, and whose experience in such fields as, without limitation, health care, employee benefits, asset management, human resources, labor relations, economics, law, accounting or actuarial science indicates a capacity to fulfill the powers and duties of Article 9 in the manner described in Section 9.11, and wherever practicable, helps to provide a range of relevant experiences to the Trustees.

Section 1.12 <u>Investment Manager.</u> The term "Investment Manager" means a fiduciary other than the Trustees appointed by the Trustees in accordance with the provisions of Section 9.05 hereof which satisfies the requirements of § 3(38) of ERISA.

Section 1.13 <u>LMRA.</u> The term "LMRA" shall mean the Labor Management Relations Act of 1947, as amended, and any successor statute thereto.

Section 1.14 <u>Trustee.</u> The term "Trustee" shall mean an individual who is initially designated in Section 8.01 hereof as a Trustee, or his or her successor appointed pursuant Section 8.03.

Section 1.15 <u>Plan.</u> The term the "Plan" shall mean the retiree welfare benefit plan which is funded by the Trust and which may be amended from time to time by the Trustees as specified herein, to make available Benefits to Participants and Beneficiaries.

Section 1.16 <u>Participants.</u> The term "Participants" shall mean individuals who are enrolled in, and receive coverage pursuant to the terms of, the Plan.

Section 1.17 <u>Premium.</u> The term "Premium" shall mean any dollar amount charged to Participants in the Plan and shall not include the amount of any Cost-Sharing.

Section 1.18 <u>Surviving Spouse.</u> The term "Surviving Spouse" shall mean (a) any individual who was receiving welfare benefits as a surviving spouse under the terms of the GM Plan as of December 31, 2009 and is eligible for coverage under the Plan, or (b) the spouse of a deceased individual who on the day before such individual's death was a Current Retiree or an Eligible Retiree, and by virtue of such relationship, the spouse is eligible for coverage under the Plan. The term "Surviving Spouse" also shall mean a surviving dependent to the same extent that such surviving dependent is eligible for coverage under the Plan.

3

Section 1.19 <u>Third-Party Administrator.</u> The term "Third-Party Administrator" shall mean any person or entity engaged by the Trustees to perform any administrative functions of the Trust or the Plan.

Section 1.20 <u>Trust Agreement.</u> The term "Trust Agreement" shall mean this agreement, and as it may be amended thereafter from time to time by the Trustees.

Section 1.21 <u>Trust or Trust Fund.</u> The term "Trust" or "Trust Fund" shall mean the Trust established by this Trust Agreement and comprising all property or interests in property held by the Trustees from time to time under this Trust Agreement.

Section 1.22 IUE-CWA. The term "IUE-CWA" shall mean the IUE-CWA, Industrial Division of Communications Workers of America, AFL-CIO, CLC, and any successor thereof.

Section 1.23 <u>IUE-CWA Trustee.</u> The term "IUE-CWA Trustee" shall mean a Trustee selected by IUE-CWA pursuant to the terms of Article VIII hereof and initially appointed pursuant to Section 8.01.

Any capitalized term used in this Trust Agreement, if not defined in this Trust Agreement, shall have the meaning it has in the Settlement Agreement.

Article II<br>ELIGIBILITY AND PARTICIPATION

Section 2.01 <u>Eligibility for Participation.</u> In designing the Plan, participants eligible for benefits from the Trust shall be post-age-65 GM/Delphi retirees, post-age-65 GM/Delphi surviving spouses and under-age-65 GM/Delphi retirees or surviving spouses disqualified for Retiree Health Care Benefits due to Medicare eligibility who were represented by IUE-CWA and who were covered by the Settlement Agreement, as specified in paragraph 3 of the Settlement Agreement if they otherwise satisfy the terms of the Plan.

Section 2.02 <u>Determination by Trustees.</u> Any determination regarding the status of any individual as a Participant or Beneficiary under the Plan shall be solely and exclusively the responsibility of the Trustees under the standards provided in Section 9.13.

Article III<br>ESTABLISHMENT OF TRUST

Section 3.01 <u>Purpose.</u> The purpose of the Trust is to provide whatever Benefits the Trustees determine to be appropriate; all in accordance with the Plan and as permitted under Section 501(c)(9) of the Code as set forth herein. The IUE-CWA constitutes an "employee organization" under Section 3(4) of ERISA. The Trust, together with the Plan, is intended to constitute a "voluntary employees' beneficiary association' under Section 501(c)(9) of the Code. The Plan is intended to constitute an "employee welfare benefit plan" within the meaning of Section 3(1) of ERISA.

4

Section 3.02 <u>Receipt of Funds.</u> The Trustees shall accept all sums of money and other property deposited or remitted to the Trust and the Trustees shall hold, manage, and administer the Trust Fund without distinction between principal and income.

Section 3.03 <u>No Diversion.</u> At no time shall any part of the corpus or income of the Trust Fund be used for or diverted to purposes other than for the exclusive benefit of the Participants, including payment of reasonable costs of establishment, amendment and administration of the Trust and the Plan, and at no time shall any part of the net earnings improperly inure to the benefit of any private individual as provided in Section 501(c)(9) of the Code and Section 1.501(c)(9)-4 of the Treasury Regulations promulgated thereunder.

Section 3.04 <u>Fiduciary Duties.</u> Except as otherwise provided herein, the responsibilities of each fiduciary as such shall be limited to the performance of those duties specifically assigned to it hereunder. No fiduciary shall have any responsibility for the performance of any duty not specifically so assigned, except to the extent such responsibility is imposed by applicable law. The Trustees shall be a named fiduciary (as defined in Section 402(a)(2) of ERISA) hereunder with authority to control and manage the operation of the Trust to the extent set forth herein and in the Plan.

Section 3.05 <u>No Guarantee.</u> Nothing contained in the Trust or the Plan shall constitute a guarantee that the assets of the Trust Fund will be sufficient to pay any benefit to any person or to make any other payment. The obligation of the Plan to pay any Benefits is expressly conditioned on the availability of marketable assets in the Trust to pay the benefit, and neither the Trustees nor any other person shall be required to liquidate any Trust assets in order to generate cash to pay benefits. Except for payments of benefits under the Plan, no Participant shall receive any distribution of cash or other thing of current or exchangeable value, either from the Trustees or the IUE-CWA on account of, or as a result of, the Trust Fund created hereunder.

Section 3.06 <u>No Interest.</u> Except as provided in Section 9.02(b) with respect to Participants and Beneficiaries, none of the following persons or entities shall have any right, title or interest, whether legal or equitable, in the assets of the Trust Fund at any time, including following the termination of the Trust: the IUE-CWA, the Trustees, or any eligible participant or beneficiary.

Article IV
CONTRIBUTIONS TO THE TRUST FUND

Section 4.01 <u>Claim Proceeds</u>: The Trustee shall accept any and all proceeds of the IUE-CWA Allowed Claim in whatever form said proceeds are paid to it.

Section 4.02 <u>Medicare Subsidies.</u> To the extent the Plan provides benefits that are subject to any governmental reimbursement, the Trustees may accept such reimbursement including Medicare Part D subsidies and any other governmental payment relating to the benefits provided to Participants and Beneficiaries pursuant to the Plan and Trust.

5

Section 4.03 <u>Participant Contributions.</u> The Trust Fund shall accept contributions from Participants as permitted or required by the Trustees. Such Participant contributions may be remitted to the Trust Fund pursuant to voluntary authorized deductions from periodic payments due participants from the Trust.

Section 4.04 <u>Other Legal Sources.</u> The Trust may accept money or property from sources other than those described in Sections 4.01, 4.02, and 4.03, provided that acceptance from any such other source is permitted by law.

Section 4.05 Assignment of Other Claims. The Trust may accept the assignment by other labor organizations of allowed claims that they hold in the MLC Bankruptcy case by virtue of the Settlement Agreement who agree to have their members become participants in the program of benefits provided by the Trust.

Article V
PAYMENTS FROM THE TRUST FUND

Section 5.01 <u>Payments from the Trust Fund.</u>  To the extent permitted by law and except as otherwise provided herein, the Trustee shall be fully protected in making payments out of the Trust Fund, and shall have no responsibility to see to the application of such payments or to ascertain whether such payments comply with the terms of the Plan, and shall not be liable for any payment made by it in good faith and in the exercise of reasonable care without actual notice or knowledge of the impropriety of such payments hereunder. The Trustee may withhold all or any part of any payment as the Trustee in the exercise of its reasonable discretion may deem proper, to protect the Trustee and the Trust against any liability or claim on account of any income or other tax whatsoever; and with all or any part of any such payment so withheld, may discharge any such liability.

Section 5.02 <u>Method of Payments.</u>  Any payment required to be made by it hereunder, unless directed otherwise by the Trustees, may be made by mailing a check in the amount thereof by first class mail in a sealed envelope addressed to the person or entity to whom or to which such payment is to be made, according to the direction of the Trustees. If any dispute arises as to the identity or rights of persons who may be entitled to benefits hereunder, the Trustees may withhold payment until such dispute is resolved by a court of competent jurisdiction or, at the discretion of the Trustees, is settled by written stipulation of the parties concerned.
The Trustee may also make payments by electronic transfer or any other form they deem appropriate.

Section 5.03 <u>Excessive Payments.</u> If the payment of any benefit under the Plan is determined to have been excessive or improper, and the recipient thereof fails to make repayment to the Trust of such excessive or improper payment upon the Trustees' request, the Trustees shall deduct the amount of such excessive or improper payment from any other benefits thereafter payable to such person.

6

Article VI
TRUSTEE POWERS AND DUTIES

Section 6.01 <u>Powers of the Trustees.</u> The Trustees shall have the following powers in addition to the powers customarily vested in trustees by law:

(a)     With any cash at any time held by it, to purchase or subscribe for any Authorized Investment, and to retain such Authorized Investment in the Trust Fund;

(b)     To sell for cash or, with the consent of the Trustees, on credit, convert, redeem, exchange for another Authorized Investment, or otherwise dispose of, any Authorized Investment at any time held by it;

(c)     To retain uninvested all or any part of the Trust Fund, which shall be deposited in an interest-bearing account in any banking or savings institution

(d)     To exercise any option appurtenant to any Authorized Investment in which the Trust Fund is invested for conversion thereof into another Authorized Investment, or to exercise any rights to subscribe for additional Authorized Investments, and to make all necessary payments thereof;

(e)     To join in, consent to, dissent from or oppose the reorganization, recapitalization, consolidation, sale, merger, foreclosure, or readjustment of the finances of any corporations, entities or properties in which the Trust Fund may be invested, or the sale, mortgage, pledge, or lease of any such property or the property of any such corporation or entity on such terms and conditions as the Trustee may deem wise; to do any act (including the exercise of options, making of agreements or subscriptions, and payment of expenses, assessments, or subscriptions) which may be deemed necessary or advisable in connection therewith, and to accept any Authorized Investment which may be issued in or as a result of any such proceeding, and thereafter to hold the same;

(f)     To vote, in person or by general or limited proxy, at any election of any corporation in which the Trust Fund is invested, and similarly to exercise, personally or by a general or limited power of attorney, any right appurtenant to any Authorized Investment held in the Trust Fund;

(g)     To purchase any Authorized Investment at a premium or a discount;

(h)     To employ for the benefit of the Trust Fund suitable agents, actuaries, accountants, investment counselors or advisors, legal counsel and consultants, and to pay their reasonable expenses and compensation;

(i)     To purchase, to sell, to exercise, to allow to expire without exercise, and to honor the exercise of, options to purchase or sell stock, commodities or other assets subject to such options;

7

(j)      To borrow, raise or lend moneys, for the purposes of the Trust in such amounts and upon such terms and conditions as the Trustees, in their absolute discretion, may deem advisable, and for any such moneys so borrowed, to issue a promissory note and to secure the repayment thereof by pledging or mortgaging all or any part of the Trust Fund, provided that no person lending money to the Trustees shall be bound to see to the application of the money lent or to inquire into the validity, expediency or propriety of any such borrowing;

(k)      To cause any Authorized Investment in the Trust Fund to be registered in, or transferred into, their name as Trustees or the name of their nominee or nominees, or to retain such investments unregistered in a form permitting transfer by delivery, but the books and records of the Trustees shall at all times show that all such investments are part of the Trust Fund, and the Trustees shall be fully responsible for any misappropriation in respect of any investment held by its nominee or held in unregistered form and shall cause the indicia of ownership to be maintained within the jurisdiction of the district courts of the United States, except as may otherwise be permitted under regulations promulgated by the United States Secretary of Labor, pursuant to ERISA;

(l)      To do all acts which they may deem necessary or proper and to exercise any and all powers of the Trustees under this Trust Agreement upon such terms and conditions as they may deem to be in the best interests of the Trust;

(m)      To apply for, purchase, hold, transfer, pay premiums on, surrender, and exercise all incidents of ownership of any insurance contract, any guaranteed income, guaranteed investment, and similar contracts which they are properly authorized to purchase;

(n)      To invest in units of any common or collective trust fund, mortgage or other asset pool, or short term investment fund exclusively for the purpose of investment of assets of employee benefit plans exempt from income taxation under Section 501 of the Code;

(o)      To begin, maintain or defend any litigation necessary in connection with the administration of the Plan or the Trust;

(p)      To pay any income or other tax or estimated tax, charge or assessment attributable to any property or benefit out of such property or benefit in their sole discretion, or any tax on unrelated business income of the Trust, if any, out of the Trust Fund;

(q)      To retain any funds or property subject to any dispute without liability for payment of interest, or decline to make payment or delivery thereof until final and unappealed adjudication is made by a court of competent jurisdiction;

(r)      To grant consents, take actions and otherwise implement the rights of the Trustees under the Plan;

(s)      To act in any jurisdiction where permitted by law to do so or to designate one or more persons, or a bank or trust company, to be ancillary trustee in any jurisdiction in which ancillary administration may be necessary, to negotiate and determine the compensation to be paid to any   .

8

such ancillary trustee, and to pay such compensation out of principal or income or both, and such ancillary trustee shall be granted with respect to any and all property subject to administration by it all of the powers, authorities and discretion granted in this Trust Agreement to the Trustees, provided, however, that such action as may require the investment of additional funds or the assumption of additional obligations shall not be undertaken without the written consent of the Trustees; and

(t)    To cooperate with IUE-CWA in obtaining any judicial or regulatory approvals or relief necessary or appropriate for the Trust.

Section 6.02 Title to Trust Fund. All rights, title and interest in and to the Trust Fund shall at all times be vested exclusively in the Trustees.

Section 6.03 Standard of Care. The Trustees shall discharge their duties solely in the interests of Participants and Beneficiaries and for the exclusive purpose of providing benefits to Participants and Beneficiaries and defraying reasonable expenses of administering the Trust and the Plan. The Trustees shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in conduct of an enterprise of like character and with like aims, consistent with the provisions of ERISA and the Code.

Section 6.04 Continuance of Plan. Neither the Trustees nor IUE-CWA assumes any contractual obligation as to the continuance of the Plan. The Trustees' obligation to make any payment shall be limited to amounts held in the Trust Fund at the time of the payment.

Section 6.05 Payment of Expenses. The Trustees shall apply the assets of the Trust Fund to pay all reasonable costs, charges, and expenses (including, but not limited to, all brokerage fees and transfer tax expenses and other expenses incurred in connection with the sale or purchase of investments, all real and personal property taxes, income taxes and other taxes of any kind at any time levied or assessed under any present or future law upon, or with respect to, the Trust Fund or any property included in the Trust Fund and all legal, actuarial, accounting and financial advisory expenses) reasonably incurred (and where applicable previously approved) by the Trustees in connection with establishment, amendment, administration, valuation and operation of the Trust or Plan.

Section 6.06 Consultation. The Trustees may engage or consult with counsel or other advisors and may take or may refrain from taking any action in accordance with or reliance upon the opinion of counsel or such expert advisors.

Section 6.07 Reliance on Written Instruments. The Trustees shall be fully protected in acting upon any instrument, certificate or paper reasonably believed by them to be genuine and to be signed or presented by the Trustees or a duly authorized person on behalf of the Trustees, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

9

Section 6.08 <u>Bonding.</u> The Trustees shall be bonded in the amount required by Section 412 of ERISA and may be covered by liability insurance in accordance with Section 410(b) of ERISA. To the extent permitted by applicable law, the costs of such bonding and insurance shall be expenses paid by the Trustees out of the assets of the Trust Fund under Section 6.06.

Article VII
ACCOUNTS

Section 7.01 <u>Accounts.</u> The Trustees shall establish and maintain such accounts as they deem to be necessary and appropriate for the assets of the Trust.

Section 7.02 <u>Records.</u> The Trustees shall maintain accurate and detailed records and accounts of all investments, receipts, disbursements, and other transactions with respect to the Trust, and all accounts, books and records relating thereto shall be open at all reasonable times to inspection and audit by such person or persons as the Trustees may designate.

Section 7.03 <u>Annual Audit.</u> The Trustees shall appoint an auditor to conduct an annual audit of the Trust Fund, a statement of the results of which shall be made available for inspection by interested persons, at the principal office of the Trust.

Section 7.04 <u>No Interest by Participants.</u> In no event shall any Participant or Beneficiary have any interest in any specific asset of the Trust Fund. At no time shall any account or separate fund be considered a savings account or investment or asset of any particular Participant, Beneficiary or class of Participants and Beneficiaries, and no Participant or Beneficiary shall have any right to any particular asset which the Trustees may have allocated to any account or separate fund for accounting purposes.

Section 7.05 <u>Accounting Year, Cash Basis.</u> The accounting year of the Trust shall be the calendar year.

Article VIII
PROCEDURES FOR TRUSTEES

Section 8.01 <u>Composition of Trustees.</u> The Trustees shall be comprised of seven (7) individual persons, consisting of (a) five (5) Trustees appointed by the President of the IUE-CWA and (b) two (2) Independent Trustees. The initial Trustees of the Trustees appointed by the IUE-CWA are listed in Exhibit 1 of this Trust Agreement. No Independent Trustee, or any family of a Trustee, employer, or partner of an Independent Trustee, shall have any financial or institutional relationship with IUE-CWA; provided however, that receipt of a pension or other mandatory contractual payment from IUE-CWA which was earned in full prior to the appointment shall not be deemed a financial or other institutional relationship.

Section 8.02 <u>Chair.</u> The Trustees shall select the Chair from among its Trustees. The term of the Chair will continue until he or she ceases to be a Trustee, resigns as Chair or is replaced as Chair with another Trustee by the remaining Trustees.

10

Section 8.03 <u>Removal; Successor Trustees</u>

(a)       Either of the Independent Trustees may be removed or replaced, and a successor designated, at any time by an affirmative vote of five of the other Trustees at any time in the event that such other Trustees lose confidence in the capacity or willingness of either of the Independent Trustees being replaced or removed to fulfill his or her duties and responsibilities as Trustee as set forth in this Trust Agreement. In the event of a vacancy in an Independent Trustee position, whether by expiration of a term, resignation, removal, incapacity, death or otherwise of a Independent Trustee, the remaining independent Trustee shall recommend a replacement, subject to the approval of remaining members of the Board of Trustees and when possible, such successor Independent Trustee shall be selected prior to the expiration of the term, resignation, removal, incapacity, or death of the Independent Trustee being replaced.

(b)       The IUE-CWA appointed Trustees shall serve at the discretion of the IUE-CWA President, and may be removed or replaced, and a successor designated, at any time by written notice from the IUE-CWA International President to the Trustees.

(c)       Each Trustee shall signify his or her acceptance of the appointment and his or her responsibilities under this Agreement in writing.

(d)       If no appointment of a successor Independent Trustee is made within a reasonable time after his or her resignation, removal or other event, the United States Bankruptcy Court for the Southern District of New York may, upon application by any remaining Trustee, appoint a successor Trustee to the Trustees as such court may deem suitable and proper.

Section 8.04 <u>Fees and Expenses.</u> To the extent permitted by ERISA, Trustees will be entitled to reasonable compensation for the performance of their duties hereunder. Trustees may be reimbursed for reasonable expenses properly and actually incurred in the performance of their duties. The fees and expenses of the Trustees shall be deemed to be fees and expenses of the Trust and shall be reimbursed from the Trust Fund consistent with the restrictions set forth in this Section 9.04.

(a)       Independent Trustees shall receive an annual retainer of $15,000, payable in equal quarterly installments in arrears.  In the event that an Independent Trustee's tenure on the Board of Trustees ends on a day other than the last day of the quarter for which a quarterly installment of his or her annual retainer is due, her or she will be paid for the pro rata portion of such quarter that coincides with his or her tenure on the Board of Trustees.

(b)       IUE-CWA appointed Trustees who are eligible to receive compensation for participation on the Board of Trustees shall receive the amounts described in Subsection 8.04(a) above for Independent Trustees. Any Trustee who is an employee of the IUE-CWA or of any local union affiliated therewith shall not be eligible to receive compensation for service as a Trustee. Notwithstanding the prohibited compensation described in this Subsection 8.04(b), IUE-CWA appointed Trustees shall be entitled to receive reimbursements for reasonable expenses properly and actually incurred in the performance of a Trustee's duties pursuant to this Trust Agreement.

11

(c)    Other than IUE-CWA Trustees who are prohibited from receiving compensation pursuant to Subsection 8.04(b), nothing herein shall prohibit or limit any Trustee from receiving fees from the Trust Fund for services rendered at the request of the Trustees (e.g., reasonable meeting fees paid for attendance at retiree meetings to explain the operation of the programs contemplated by the Settlement Agreement, and/or this Trust Agreement).

Section 8.05 Term of Office. Each Trustee shall continue to serve as such until his or her death, incapacity to serve hereunder, resignation, removal, or the expiration of his or her term. An Independent Trustee term shall be a three (3) year period. An Independent Trustee may serve more than one term and the reappointment of an existing independent Trustee to a further term shall not be subject to Court approval.

Section 8.06 Resignation. A Trustee may resign, and shall be fully discharged from further duty or responsibility under this Trust Agreement to the extent permitted by law, by giving at least 30 days' advance written notice to the Trustees (or such shorter notice as the Trustees may accept as sufficient) stating a date when such resignation shall take effect. Such resignation shall take effect on the date specified in the notice or, if a successor Trustee has been appointed effective as of an earlier date, on such earlier date.

Section 8.07 Meetings.

(a)    The Trustees shall hold meetings as frequently as is necessary to ensure the efficient administration of the Trust and Plan and shall hold a minimum of four (4) meetings during each calendar year. The Chair, or any three (3) Trustees, may call a special meeting of the Trustees by giving at least five (5) business days' advance written notice of the time and place thereof to all other Trustees.

(b)    The Chair, or another such individual so designated by the Chair, shall (i) preside over Trustees meetings; (ii) prepare the Trustees meeting agenda; and (iii) perform such other functions as the Trustees determines.

(c)    One Trustee, or another individual so designated, shall maintain minutes of all Trustees meetings, but such minutes need not be verbatim. Copies of such minutes shall be provided to all Trustees and to such other parties as the Trustees may designate.

Section 8.08 Place of Meeting; Telephonic Meetings. Meetings of the Trustees may be held at any place designated in the notice of meeting. Meetings of the Trustees may be held through any communications equipment if all persons participating can hear each other, and such participation in a meeting is presence at the meeting for all purposes, including Section 8.09.

Section 8.09 Quorum. A majority of the Trustees of the Trustees then in office shall constitute a quorum for the purpose of transacting any business; provided that an Independent Trustee and at least one IUE-CWA appointed Trustee are present.

12

Section 8.10 <u>Vote of the Trustees.</u>

(a)     Each Trustee of the Trustees present at the meeting shall have one vote. Except as otherwise specified in this Trust Agreement, all actions of the Trustees shall be by majority vote of the entire Trustees.

(b)     The vote of any absent Trustee may be cast in accordance with a written proxy delivered to any other Trustee present at the meeting.

(c)     In addition to decisions made at meetings, actions may be taken without a meeting pursuant to a written (including e-mail) or telephone poll by the Chair (or his designee); provided that any action taken in a telephone poll must be confirmed in writing (including e-mail) by each Trustee who voted for the action taken either before or as soon as practicable following the vote (but no later than thirty (30) days after the vote).

(d)     In the event of a deadlock of the Trustees, an impartial umpire shall be appointed by the Trustees to break such deadlock, or if the Trustees are unable to agree on an impartial umpire within a reasonable length of time, such an umpire shall be appointed by the United States District Court for the Southern District of Ohio upon petition of any Trustee. Unless the deadlock is otherwise broken, the decision of the umpire in breaking the deadlock shall constitute the action of the Trustees.

Article IX<br>POWERS AND DUTIES OF THE TRUSTEES

Section 9.01 <u>General.</u> The Trustees shall be responsible for the implementation, amendment, and overall operation of the Trust Fund and the establishment, design, amendment, maintenance and administration of the Plan. Subject to the provisions of this Trust Agreement and applicable laws, the Trustees shall have sole, absolute and discretionary authority to adopt such rules and regulations and take all actions that it deems desirable for the administration of the Trust Fund, and to administer and interpret the terms of the Plan and the Trust. The decisions of the Trustees will be final and binding on all Participants and all other parties to the maximum extent allowed by law.

Section 9.02 <u>Benefits.</u>

(a)     <u>Adoption of Plan.</u> The Trustees shall adopt a Plan to offer Benefits to Participants and Beneficiaries. Subject to Section 9.02(c), the Trustees shall have the sole discretion to determine the terms of the Plan, and may provide for different benefit structures for different groups of Participants and Beneficiaries and may provide for different payments of Premiums, co-pays, deductibles, and other fees and expenses to be charged to such groups as a condition of participation in the Plan. Except as set forth in Section 9.02(c) and otherwise applicable law, the Trustees shall be under no obligation to design the Plan to assure that the assets of the Trust Fund will be sufficient to provide Benefits to all potential Participants and Beneficiaries of the Plan.

(b)     <u>Benefits.</u> The benefit design shall include rules to determine eligibility for Benefits under the Plan, in what form and in what amount. The Plan may include co-pays, Participant and Beneficiary contributions, and any other features that the Trustees from time to time

13

determines appropriate or desirable in its sole discretion. In designing the Plan and the Benefits to be provided thereunder, the Trustees shall take into account relevant circumstances, including, without limitation, the degree to which Participants may have alternative resources or coverage sources, as well as the resources of the Trust Fund and the affordability of continued plan participation for current Participants. The Benefits provided under the Plan shall be limited to those medical and welfare benefits and reimbursements permitted under Section 501(c)(9) of the Code, Section 3(1) of ERISA, and Section 302(c) of the LMRA.

(c)     Method of Providing Benefits. Benefits under the Plan may be fully insured, partially insured or self-insured, as determined by the Trustees from time to time in their sole discretion and in accordance with the funding policy established pursuant to Section 9.03. The Trustees, in their sole discretion – subject to the terms of this Trust Agreement – shall decide the benefits under the Plan, and the form and amount of such benefits. The exercise of this discretion shall be limited to the design of the Plan and may not be used in making decisions regarding benefits for individual Participants (except in connection with claims for benefits under the terms of the Plan).

(d)     Reimbursement payments. Decisions regarding eligibility for, amounts of, and other matters relating to any reimbursement payments shall be made in the Trustees' sole discretion and shall be final and binding.

Section 9.03 Funding Policy. The Trustees will establish a funding policy for the Plan.

Section 9.04 Investment Guidelines. The Trustees may establish investment guidelines for managing (including the power to acquire and dispose of) all or any part of the Trust Fund.

Section 9.05 Appointment of Investment Managers. The Trustees may appoint one or more Investment Manager(s) to manage all or part of the Trust Fund and enter into an agreement with the Investment Manager(s). If an Investment Manager is appointed, it shall have the authority of the Trustees specified in Section 6.01 hereof with respect to the portion of the Trust Fund assets over which it has investment discretion.

Section 9.06 Reports and Returns. The Trustees or their designee shall file all government reports and returns, including but not limited to the IRS Form 5500 series with respect to the Supplemental Benefits provided to Participants and Beneficiaries, and the IRS Form 990 series, that are required to be made with respect to the Trust and the Plan.

Section 9.07 Compromise or Settle Claims. The Trustees may compromise, settle and release claims or demands in favor of or against the Trust or the Trustees on such terms and conditions as the Trustees may deem advisable.

Section 9.08 Appointment of Administrator, Delegation of Authority. The Trustees may hire staff including an Executive Director and such additional employees as are necessary to administer the Plan and conduct the affairs of the Trust and/or appoint a Third Party Administrator to perform any functions assigned to it by the Trustees. The Trustees may by adoption of a written resolution delegate to any one or more Trustees the authority to act on

14

behalf of the full Trustees to the extent set forth in the resolution. Each Independent Trustee shall have the right, but not the obligation, to be a member of any sub-committee appointed by the Trustees to which any powers are delegated. Any action taken on behalf of the Trustees pursuant to the delegation shall be reported to the Trustees at its next regularly scheduled meeting.

Section 9.09 <u>Consultation.</u> The Trustees may engage or consult with counsel or other advisors and, in accordance with the provisions of Section 6.06 hereof, may pay reasonable compensation therefor from the Trust Fund and may take or may refrain from taking any action in accordance with or reliance upon the opinion of counsel or such expert advisors.

Section 9.10 <u>Reliance on Written Instruments.</u> Each Trustee shall be fully protected in acting upon any instrument, certificate or paper, or record believed by him or her to be genuine and to be signed or presented by a duly authorized person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the authenticity, truth, and accuracy of the statements therein contained.

Section 9.11 <u>Standard of Care.</u> The Trustees shall discharge their duties in the interests of Participants and Beneficiaries and for the exclusive purpose of providing benefits to such Participants and Beneficiaries and defraying reasonable expenses of administering the Trust and the Plan. The Trustees shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, consistent with the provisions of ERISA and the Code. In exercising their discretion with respect to providing benefits to Participants and Beneficiaries in the Plan, the Trustees and each Trustee shall consider exclusively the interests of the Participants and Beneficiaries of such Plan. In exercising their discretion with respect to defraying reasonable expenses of administering the Trust or the Plan, the Trustees and each Trustee shall consider exclusively the interests of the Participants and Beneficiaries in the Plan.

Section 9.12 <u>Bonding.</u> The Trustees shall be bonded in the amount required by Section 412 of ERISA and may be covered by liability insurance in accordance with Section 410(b) of ERISA. To the extent permitted by applicable law, the costs of such bonding and insurance shall be expenses paid by the Trustee.

Section 9.13 <u>Discretionary Authority.</u> Except as the Trustees' powers are limited by specific provisions of this Trust Agreement, the Trustees (or their designee) shall have the exclusive right, power, and authority, in their sole and absolute discretion, to administer, apply and interpret this Trust Agreement, any Plan of benefits and any other Plan documents, their own motions, resolutions, administrative rules and regulations, contracts, or instruments and to decide all matters arising in connection with the operation or administration of the Trust or Plan. Benefits under this Plan will be paid only if the Trustees or their delegate decides in its discretion that the applicant is entitled to them. Without limiting the generality of the foregoing, the Trustees, on behalf of the Trust, shall have the sole and absolute discretionary authority to:

15

(a)        take all actions and make all decisions with respect to the eligibility for, and the amount of, benefits payable under the Plan;

(b)        formulate, interpret, and apply rules, regulations and policies necessary to administer the Plan in accordance with its terms;

(c)        decide questions, including legal or factual questions, relating to the calculation and payment of benefits under the Plan;

(d)        determine the standard of proof and the sufficiency of evidence as to any factual question arising under the Plan;

(e)        resolve and/or clarify any ambiguities, inconsistencies and omissions arising under the Plan or other plan documents;

(f)        process, and approve or deny benefit claims and rule on any benefit exclusions;

(g)        settle or compromise disputed claims made by or against the Plan on such terms as the Trustees determine to be in the best interest of the Participants and Beneficiaries;

(h)        enforce any contribution, remittance or payment obligation set forth in Article IV; and

(i)        do all acts which they may deem necessary or proper and to exercise any and all powers of the Trustees under this Trust Agreement upon such terms and conditions as they may deem to be in the best interest of the Trust or the Plan.

All determinations made by the Trustees or their designee with respect to any matter arising under the Trust or Plan and any other Plan documents shall be final and binding on all affected parties, including without limitation Participants and Beneficiaries, and any other persons who have claims against the Trust Fund and the Plan through any of them. In the event that the terms of the Plan are inconsistent with the terms of this Trust Agreement, the Trust Agreement controls.

Section 9.14 <u>Subrogation and Reimbursement.</u>

(a)        If the Trust Fund pays Benefits to or for any Participant or Beneficiary for any injury, illness, expense or loss, the Trust Fund will be subrogated to the full extent of such payments to all rights of the Participant, Beneficiary, or any assignee of either of them against any person, firm, corporation or other entity in connection with any claim related to the injury, illness, expense or loss.

(b)        If the Trust Fund pays Benefits to or for any Participant or Beneficiary for any injury, illness, expense or loss caused, or alleged to be caused, by any person, and the Participant, Beneficiary (or someone acting on behalf of the Participant or Beneficiary) or any assignee of either of them obtains any recovery from any source in connection with the injury, illness, expense or loss, whether by lawsuit, settlement or otherwise, including any recovery from the Participant's or Beneficiary's insurance, and regardless of how the recovery is characterized or

16

named, the Trust Fund shall be entitled to full reimbursement from the Participant or Beneficiary (or person acting on behalf of the Participant or Beneficiary) or any assignee of either of them to the full extent of the Trust Fund's payment, and the Trust Fund shall have a constructive trust over such recovered amounts to the full extent of its payments and the Participant, Beneficiary, or assignee shall account for such amounts on behalf of the Trust Fund.

(c)    The Trust Fund's rights of subrogation and reimbursement shall have first priority and a shall not be reduced for any reason, including for attorneys' fees, even if the Participant or Beneficiary (or person acting on behalf of the Participant or Beneficiary) or any assignee of either of them is not "made whole" for his or their loss, unless the Trustees or the Trustees' designee determines, in the exercise of its role and absolute discretion, to reduce the Trust Fund's recovery in appropriate circumstances, which may include, with respect to attorneys' fees, a condition that the attorney representing the Participant, Beneficiary, or assignee, has agreed in advance to honor the rights of the Trust Fund with respect to subrogation and reimbursement contained herein.

(d)    Prior to payment by the Trust Fund to or for any Participant or Beneficiary (or someone acting on behalf of the Participant or Beneficiary) for any injury, illness, expense or loss caused. or alleged to have been caused, in circumstances that may support a recovery from any person, the Participant or Beneficiary (or other adult acting on behalf of a minor Beneficiary) will be asked to execute a subrogation and reimbursement agreement consistent with the terms of this Trust Agreement. Failure to request or obtain such an agreement prior to the payment by the Trust Fund shall not in any way diminish the Trust Fund's rights of subrogation and reimbursement herein.

(e)    The Participant or Beneficiary shall do nothing to prejudice the Trust Fund's rights under this Trust Agreement and shall promptly inform the Trust Fund of the name and address of any attorney representing the Participant, Beneficiary or assignee. The Participant or Beneficiary shall assist the Trust Fund upon request, including instituting legal proceedings against any appropriate persons, firms, corporations or entities.

(f)   In the event that the Trust Fund is not fully reimbursed as set out in this Trust Agreement, the Trust Fund shall have the right, as the Trustees or the Trustees's designee may determine, in the exercise of its sole and absolute discretion, to reduce any benefits to which the Participant, Beneficiary, or assignee is or subsequently may become entitled, by the amount not reimbursed to or recovered by the Fund.

Section 9.15 No Individual Liability on Contracts. The Trustees of the Trustees shall not be liable personally, either individually or jointly, for any debts, obligations, or undertakings contracted by them, or for the breach of any contracts. Such claims and obligations shall be paid out by the Trust; provided, however, that the Trustees shall not be exempt from personal liability for willful misconduct, breach of trust, or fraud, and the Trust shall not indemnify the Trustees for such liabilities.

Section 9.16 IUE-CWA Not Liable For the Conduct of the Trustees. In their capacity as Trustees, the Trustees, individually and jointly, are not officers, agents, employees, or

representatives of IUE-CWA. In their capacity as Trustees, each Trustee is a principal acting independently of the IUE-CWA. Under no circumstances will IUE-CWA, or their employees, officers, directors, or agents be responsible for or have any liability for any act, omission, contract, obligation or undertaking of the Trustees or its officers, agents or representatives.

Section 9.17 <u>Implementation Date of Administration of the Plan.</u> The Trustees shall become wholly responsible for the administration of the Plan as of the Implementation Date chosen by the Trustees.

Section 9.18 <u>Reimbursement for Defense of Claims.</u> To the extent permitted by applicable law and not otherwise covered by liability insurance purchased by the Trust (without regard to any non-recourse rider purchased by the insured), the Trustees, employees of the Trustees and persons acting on the Trustees' behalf pursuant to an express written delegation (each separately, the "Indemnified Party") shall be reimbursed by the Trust Fund for reasonable expenses, including without limitation attorneys' fees, incurred personally in defense of any claim that seeks a recovery of any loss to the Plan or Trust Fund or for any damages suffered by any party to, or beneficiary of this Trust Agreement (a) for which the Indemnified Party is adjudged not liable, or (b) which is dismissed or compromised in a final settlement, where the Trustees determine that the settling Indemnified Party was not primarily responsible (in such cases, all or only a portion of the settling Indemnified Party's reasonable expenses may be reimbursed, as directed by the Trustees); provided that, the Trustees shall have the right to approve of the retention of any counsel whose fees would be reimbursed by the Trust Fund, but such approval shall not be withheld unreasonably.

Section 9.19 <u>Indemnifications.</u> To the extent permitted by law, the Trust shall indemnify and hold the Trustees, the IUE-CWA, and the employees, officers and agents of each of them harmless from and against any liability that they may incur in connection with the Plan and the Trust, unless such liability arise from gross negligence or intentional misconduct.

Section 9.20 <u>Code of Ethics.</u> The Trustees shall maintain a code of ethics to govern the conduct of Trustees and staff, if any, when acting on behalf of the Trust or the Plan, or otherwise in their official capacity.

Article X
AMENDMENT, TERMINATION AND MERGER

Section 10.01 <u>Amendment.</u> The Trust Agreement may be amended at any time in writing by the Trustees, provided that (a) no amendment shall adversely affect the exempt status of the Trust or Plan under Section 501(c)(9) of the Code, or (b) no amendment shall modify Sections 2.01, 3.05, 6.01(a), 6.05, 9.01 or this Article X.

Section 10.02 <u>Termination.</u>

(a)    This Trust Agreement may be terminated by the Trustees whenever the Trustees, and in their sole discretion determine that the Trust is no longer effective in serving its purposes or that the interests of the Participants and Beneficiaries could be better served through an alternative

18

arrangement. Upon termination of this Trust Agreement, the assets of the Trust Fund shall be paid out at the direction of the Trustees in the following order of priority: (a) the payment of reasonable and necessary administrative expenses (including taxes); (b) the payment of benefits to Participants and Beneficiaries entitled to payments for Benefit claims incurred prior to such termination; (c) at the discretion of the Trustees, in accordance with Section 501(c)(9) of the Code and ERISA, for the benefit of Participants and Beneficiaries in such fashion as the Trustees determine. Neither IUE-CWA nor the Trustees shall have any beneficial interest in the Trust Fund. The Trust Fund shall remain in existence until all assets have been distributed.

(b)    Following termination, the Trustees shall continue to have all of the powers provided in this Trust Agreement as are necessary or desirable for the orderly liquidation and distribution of the Trust Fund in accordance with the provisions hereof.

Article XI
MISCELLANEOUS

Section 11.01 <u>Rights in Trust Fund.</u> No Participant, Beneficiary, or other person shall have any right, title or interest in the Trust Fund or any legal or equitable right against the Trustees, the Trust or IUE-CWA, except as may be otherwise expressly provided in the Plan or in this Trust Agreement.

Section 11.02 <u>Non-Alienation.</u> Except to the extent required by applicable law, the rights or interest of any Participant or Beneficiary to any benefits or future payments hereunder or under the provisions of the Plan shall not be subject to attachment or garnishment or other legal process by any creditor of any such Participant, nor shall any such Participant have any right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he may expect to receive, contingent or otherwise, under this Trust Agreement, except as specifically permitted by the Trustees.

Section 11.03 <u>Controlling Laws.</u> The Trust shall be construed and the terms hereof applied according to the laws of the State of Ohio to the extent not superseded by federal law.

Section 11.04 <u>Counterparts.</u> This Trust Agreement may be executed in any number of counterparts, each of which shall be considered as an original.

Section 11.05 <u>Headings.</u> The headings and subheadings of this Trust Agreement are for convenience of reference only and shall have no substantive effect on the provisions of this Trust Agreement.

Section 11.06 <u>Usage.</u> The plural use of a term defined in Article I in the singular shall mean all of the entities defined by such term.

19

IN WITNESS WHEREOF, and as evidence of the establishment of the Trust created hereunder, the parties hereto have caused this instrument to be effective as of the date above first written.

Trustees

_____    11/29/10
Signature                Date

_____    11/29/10
Signature                Date

_____    11/29/10
Signature                Date

_____    11/29/10
Signature                Date

_____
Signature                Date

20