**PRESENTMENT DATE AND TIME: March 28, 2011 at 12:00 noon (Eastern Time)**
**OBJECTION DEADLINE: March 28, 2011 at 11:30 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
**In re** : **Chapter 11 Case No.**
:
**MOTORS LIQUIDATION COMPANY,** *et al.,* : **09-50026 (REG)**
  f/k/a General Motors Corp., *et al.* :
:
              **Debtors.** : **(Jointly Administered)**
:
------------------------------------------------------------x

# NOTICE OF PRESENTMENT OF STIPULATION AND AGREED ORDER BETWEEN THE DEBTORS AND CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL SETTLING CLAIM NO. 50606

PLEASE TAKE NOTICE that the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") will present the Stipulation and Agreed Order Between the Debtors and California Department of Toxic Substances Control Settling Claim No. 50606 (the "**Stipulated Order**") attached hereto to the Honorable Robert E. Gerber, United States Bankruptcy Judge, for approval and signature at Room 621 of the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), One Bowling Green, New York, New York 10004 on **March 28, 2011 at 12:00 noon (Eastern Time)**.

US_ACTIVE:\43634247\06\72240.0635

PLEASE TAKE FURTHER NOTICE that any responses or objections to this Stipulated Order must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers

Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); and (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.), so as to be received no later than **March 28, 2011, at 11:30 a.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and served with respect to the Stipulated Order, the Debtors may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the Stipulated Order, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
       March 14, 2011

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**PRESENTMENT DATE AND TIME: March 28, 2011 at 12:00 noon (Eastern Time)**
**OBJECTION DEADLINE: March 28, 2011 at 11:30 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :   09-50026 (REG)
     f/k/a General Motors Corp., et al.   :
                                          :
                        Debtors.          :   (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

**STIPULATION AND AGREED ORDER BETWEEN THE DEBTORS AND**
**CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL**
**SETTLING CLAIM NO. 50606**

Motors Liquidation Company, (f/k/a General Motors Corporation) ("**MLC**"), and its affiliated debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), and California Department of Toxic Substances Control ("**DTSC**" and collectively with the Debtors, the "**Parties**"), by and through their respective undersigned counsel or representatives, hereby enter into this Stipulation and Agreed Order (this "**Stipulated Order**") and stipulate as follows:

## **RECITALS**

a.　　WHEREAS on June 1, 2009 (the "**Commencement Date**"), certain of the Debtors (the "**Initial Debtors**") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), Case No. 09-50026 (REG);

b.　　WHEREAS on September 16, 2009, the Court entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice Thereof (the "**Bar Date Order**") establishing November 30, 2009 at 5:00 p.m. (Eastern Time) as the deadline to file proofs of claim against the Initial Debtors based on prepetition claims;

c.　　WHEREAS on October 6, 2009, the Court entered that certain Order pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) Authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish Procedures for Settling Certain Claims (the "**Settlement Procedures Order**");

d.　　WHEREAS pursuant to the Settlement Procedures Order, the Debtors are authorized, with certain exceptions, to settle any and all claims asserted against the Debtors without prior approval of the Court or other party in interest whenever (i) the aggregate amount to be allowed for an individual claim (the "**Settlement Amount**") is less than or equal to $1 million or (ii) the Settlement Amount is within 10 percent of the noncontingent, liquidated amount listed on the Debtors' schedules of assets and liabilities

so long as the difference in amount does not exceed $1 million (any settlement amount within (i) or (ii) being a "***De Minimis*** **Settlement Amount**");

   e.  WHEREAS pursuant to the Settlement Procedures Order, if the Settlement Amount is not a *De Minimis* Settlement Amount but is less than or equal to $50 million, the Debtors must submit the proposed settlement to the official committee of unsecured creditors appointed in these chapter 11 cases (the "**Creditors' Committee**").  Within five business days of receiving the proposed settlement, the Creditors' Committee may object or request an extension of time within to object.  If there is a timely objection made by the Creditors' Committee, the Debtors may either (a) renegotiate the settlement and submit a revised notification to the Creditors' Committee or (b) file a motion with the Court seeking approval of the existing settlement under Bankruptcy Rule 9019 on no less than ten days' notice.  If there is no timely objection made by the Creditors' Committee or if the Debtors receive written approval from the Creditors' Committee of the proposed settlement prior to the objection deadline (either of such events hereafter defined as "**Committee Consent**"), then the Debtors may proceed with the settlement;

   f.  WHEREAS on or about November 25, 2009, DTSC filed a proof of claim, assigned claim number 50606 (the "**Claim**"), asserting an unliquidated, unsecured, prepetition claim alleging that the Debtors are liable to DTSC under state and federal environmental laws for, inter alia, response costs DTSC has incurred, and may incur, at various distinct contaminated sites in California, including the Casmalia Superfund Site in Santa Barbara, County (the **"Casmalia Site"**), California, the BKK Site in West Covina, California (the **"BKK Site"**), and the former General Motors facility in Fremont, California(the **"Fremont Site"**).  DTSC is withdrawing the Van Nuys Site from its

Claim. The Claim asserted liability under the Comprehensive Environmental, Response, Compensation and Liability Act, 42 U.S.C. § 9601 *et seq*., **("CERCLA")** and under certain California statutes, regulations, and laws (including the common law) relating to the pollution or protection of the environment and the protection of public safety and welfare from hazardous materials (in each case solely to the extent that DTSC has jurisdiction to impose liability or obligations thereunder), the Hazardous Substances Account Act, Health and Safety Code §§ 25300 *et seq.* and the Hazardous Waste Control Law, Health and Safety Code § 25100 *et seq.* **("California Cleanup Laws")**;

      g.    WHEREAS after good-faith, arms'-length negotiations, the Parties have reached an agreement (the "**Settlement**") to resolve the Claim;

      h.    WHEREAS the Debtors have provided notice of the Settlement to the Creditors' Committee in accordance with the Settlement Procedures Order and the Creditors' Committee has not timely objected or has provided written approval of the Settlement prior to the objection deadline.

      NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed that:

      1.    The Claim shall be treated as an allowed general unsecured claim against MLC in the amount of four million two hundred thousand dollars ($4,200,000), to be allocated as described in paragraphs 2 through 4 below (the "**Allowed Claim**"), which Allowed Claim shall not be subject to any defense, counterclaim, right of setoff, reduction, avoidance, disallowance (including under Section 502(d) of the Bankruptcy Code) or subordination.

2. In settlement and satisfaction of the Claim with respect to the BKK Site in West Covina, California the DTSC shall have an allowed general unsecured claim against MLC in the amount of $3,692,568.44 (the "**BKK Allowed Claim**"). DTSC will deposit any and all funds actually received by virtue of the BKK Allowed Claim in the DTSC BKK Site specific special subaccount established pursuant to California Health and Safety Code section 25330.4 to be used solely, at DTSC's sole and reasonable discretion, to conduct or finance ongoing and future response actions (as defined by CERCLA) at or in connection with the BKK Site, including, but not limited to, DTSC's recoverable oversight, or to reimburse third parties for the performance of such response actions. Nothing in this paragraph shall create any rights in any non-Debtor third parties; provided, however, that only funds actually received by DTSC by virtue of the BKK Allowed Claim shall reduce the potential liability of other potentially liable persons for the BKK Site by the amount actually received by DTSC.

3. In settlement and satisfaction of the Claim with respect to the Casmalia Resources Superfund Site in Santa Barbara County, California the DTSC shall have an allowed general unsecured claim against MLC in the amount of $14,863.12. DTSC will deposit any and all funds actually received by virtue of the Casmalia Allowed Claim in the DTSC Casmalia specific special subaccount established pursuant to California Health and Safety Code section 25330.4 to be used to pay for DTSC's response costs. Nothing in this paragraph shall create any rights in any non-Debtor third parties; provided, however, that only funds actually received by DTSC by virtue of the Casmalia Allowed Claim shall reduce the potential liability of other potentially liable persons for the Casmalia Site by the amount actually received by DTSC.

4. In settlement and satisfaction of the Claim with respect to the former General Motors facility in Fremont, California, the DTSC shall have an allowed general unsecured claim against MLC in the amount of $492,568.44. DTSC will deposit any and all funds actually received by virtue of the Fremont Allowed Claim in the DTSC Fremont Site specific special subaccount established pursuant to California Health and Safety Code section 25330.4 to be used solely, at DTSC's sole and reasonable discretion, to conduct or finance corrective actions and or response costs, including but not limited to payment of DTSC oversight costs, at or in connection with the Fremont Site. Nothing in this paragraph shall create any rights in any non-Debtor third parties; provided, however, that only funds actually received by DTSC by virtue of the Fremont Allowed Claim shall reduce the potential liability of other potentially liable persons for the Fremont Site by the amount actually received by DTSC.

5. DTSC shall receive distributions on account of the Allowed Claim in the form set forth in and pursuant to the terms of the confirmed chapter 11 plan or plans in these chapter 11 cases (the "**Plan**"). In the event the distributions take any form other than the payment of United States Dollars, the phrase "funds actually received" in paragraphs 2, 3 and 4 above, shall mean the number of United States Dollars that DTSC receives after causing the distribution to be sold or otherwise converted to United States Dollars, exclusive of any fees or transaction costs that DTSC may incur to any third parties.

6. Upon receipt of such distributions on account of the Allowed Claim as set forth in the Plan, the Claim shall be deemed satisfied in full.

7. With respect to the Claim, other than the right to receive distributions on account of the Allowed Claim under the Plan, DTSC and its affiliates, successors and assigns, and its past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "**Claimant Parties**"), shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns (collectively, the "**Debtor Parties**"). With respect to the Claim, except as set forth in this Stipulated Order, the Claimant Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code) against any of the Debtor Parties, and are hereby barred from asserting any and all claims against any of the Debtor Parties relating to the BKK, Casmalia, Fremont, or Van Nuys Sites, whether known or unknown, presently existing, whether or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Stipulation and Settlement by the Parties.

8. The Debtors' claims agent shall be authorized and empowered to adjust the claims register to reduce and allow Proof of Claim No. 50606 to reflect the Allowed Claim.

## CONTRIBUTION PROTECTION

9. The Parties agree that, as of the Effective Date of the Plan, the Debtors are entitled to protection from actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Settlement. The "matters addressed" in this Settlement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), include any response or

other costs incurred by DTSC, or to be incurred by DTSC or potentially responsible parties, with respect to the BKK, Casmalia, and Fremont Sites.  No finding in any subsequent proceeding concerning the Debtors' contribution obligations shall affect the finality or enforceability of this Settlement.  The Parties agree that "matters addressed" in this Settlement do not include, and the contribution protection provided in this Settlement does not bar, claims by a non-party to this settlement against any of the Debtors for response costs (as defined by CERCLA) incurred prior to the Effective Date of the Plan with respect to any of the BKK, Casmalia or Fremont Sites.

10. The Debtors also agree that with respect to any suit or claim for contribution brought against them for matters related to this Stipulated Order, they will notify in writing DTSC within thirty (30) days of their receipt of service.  DTSC shall have no obligation to appear, intervene, assist or defend the debtors from any claims for contribution in any action.

## COVENANTS NOT TO SUE AND RESERVATION OF RIGHTS

11. In consideration of all of the foregoing, including the distributions that will be made pursuant to the terms of this Stipulated Order and the resolution of the Debtors' obligations with respect to the BKK, Casmalia, and Fremont Sites as set forth herein, DTSC covenants not to file a civil action or to take any administrative or other action against the Debtors pursuant to any California Cleanup Law or CERCLA in relation to those Sites.  These covenants not to sue shall take effect upon Debtors' full payment of the Distributions specified herein.

12. The covenants not to sue contained in paragraph 11 of this Stipulated Order extend only to the Debtors and do not extend to any other person or entity. Nothing

in this Stipulated Order is intended as a covenant not to sue for any person or entity other than the Debtors and does not include any sites or matters other than the BKK, Casmalia, and Fremont Sites. The Debtors and DTSC expressly reserve all claims, demands and causes of action either judicial or administrative, past, present or future, in law or equity, which the Debtors and DTSC may have against all other persons, firms, corporations, entities or predecessors of the Debtors (except to the extent such predecessors constitute "Debtors" hereunder) for any matter arising at, or relating in any manner to, the claims addressed herein.

13. The covenants not to sue set forth in paragraph 11 do not pertain to any matters other than those expressly set forth therein. DTSC expressly reserves, and this Stipulated Order is without prejudice to, all rights against the Debtors with respect to all other matters except those expressly set forth herein. Nothing contained in this Stipulated Order shall apply to or affect any action by DTSC based on (a) a failure to meet a requirement of this Stipulated Order; (b) criminal liability; (c) matters reserved herein; (d) liability for response costs or injunctive relief pursuant to California Cleanup Laws, CERCLA, or any other applicable federal law or regulation that occurs at the BKK, Casmalia, or Fremont Sites as a result of conduct of the Debtors after the date of entry by the Court of this Stipulated Order and which give rise to liability under California Cleanup Laws, CERCLA or any other applicable federal law or regulation.  The Parties understand that the phrase "conduct of the Debtors after the date of entry of this Stipulated Order" does not include continuing releases related to conduct occurring before the date of entry by the Court of this Stipulated Order.

14. Subject to the covenants not to sue contained herein, nothing in this Stipulated Order shall be deemed to limit DTSC to exercise its authority under California Cleanup Laws, CERCLA, or any other applicable law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by DTSC pursuant to those authorities. Nothing in this Stipulated Order shall be deemed to limit the information gathering authority of DTSC under California Cleanup Laws, CERCLA, or any other applicable federal law or regulation, or to excuse the Debtors from any disclosure or notification requirements imposed by California Cleanup Law, CERCLA or any other applicable federal or state law or regulation.

15. Except with respect to any action to enforce this Stipulated Order, and any Plan provision, Debtors hereby covenant not to sue and agree not to assert or pursue any claims or causes of action against DTSC with respect to the BKK, Casmalia, and/or Fremont Sites, including any claim against DTSC, the California Hazardous Substances Account or any other State of California fund or account, under the California Cleanup Laws or CERCLA, related to the Casmalia, BKK and/or Fremont Sites or any claims arising out of investigation, remediation, monitoring, or response activities at those Sites. The foregoing covenant not to sue shall also apply to DTSC's successors or assigns, officers, directors, and employees. Nothing herein shall be construed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. section 9611 or 40 C.F.R. section 300.700(d), or comparable or similar state law. The Covenants Not to Sue by Debtors and DTSC set forth herein do not pertain to any matters other than those expressly set forth herein.

16. The Stipulated Order shall not be construed as an admission by any of the Parties of any liability or obligation that is resolved pursuant to this Stipulated Order or as a concession of any legal arguments concerning the matters settled herein. Rather, this Stipulated Order is to be construed solely as a reflection of the Parties' desire to facilitate a resolution of the Debtors' obligations to DTSC, if any, at the BKK, Casmalia, and Fremont Sites. The Parties agree that no Party should be considered a "prevailing" party with respect to the issues resolved by this Stipulated Order.  In no event shall the Stipulated Order, any of its provisions, or any negotiations, statement, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in any judicial, administrative, regulatory or other proceeding, by the Parties herein or by anyone else, except a proceeding to enforce this Stipulated Order.

17. This Stipulated Order contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties relating thereto.  This Stipulated Order is subject in all respects to Creditor Committee Consent, and if such consent is not obtained by the Debtors, then the Debtors may determine in their sole discretion whether to proceed forward with seeking Court approval of the Stipulated Order in accordance with the Settlement Procedures Order or abandon the Stipulated Order.  In the event that an objection is filed to this Stipulated Order, DTSC shall take appropriate action as is reasonably necessary, and cooperate with Debtors, to seek approval of this Settlement under applicable provisions of the Bankruptcy Code.

18. This Stipulated Order may not be modified other than by signed writing executed by all of the Parties hereto or by order of the Court after notice to the Parties and opportunity for a hearing.

19. Each person who executes this Stipulated Order represents that he or she is duly authorized to do so on behalf of the respective Parties hereto and that each such party has full knowledge and has consented to this Stipulated Order.

20. This Stipulated Order may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulated Order to present any copy, copies, or facsimiles signed by the Parties hereto to be charged.

21. This Stipulated Order is subject to the approval of the Court. If this Stipulated Order is not approved by the Court, this Stipulated Order shall be deemed null and void, and shall not be referred to or used for any purpose by any party including in these chapter 11 cases.

22. This Stipulated Order shall be exclusively governed by and construed and enforced in accordance with the laws of the state of California, without regard to conflicts of law principles thereof.

23. The Court shall retain jurisdiction to enforce the terms of the Settlement for the duration of the performance of the terms and provisions of this Settlement and this Stipulated Order.

| **MOTORS LIQUIDATION COMPANY AND AFFILIATED DEBTORS** | **CALIFORNIA DEPARTMENT OF TOXIC SUBSTANCES CONTROL** |
|---|---|
| By: /s/ David Head | By: /s/ Stewart W. Black |
| Print Name: David Head<br>Title: Vice-President | Print Name: Stewart W. Black<br>Title: Acting Deputy Director |
| Dated: March 11, 2011 | Dated: March 10, 2011 |

IT IS SO ORDERED.

Dated: New York, New York
_____, 2011          United States Bankruptcy Judge