**HEARING DATE AND TIME: April 26, 2011 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: April 19, 2011 at 4:00 pm. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :        09-50026 (REG)
       f/k/a General Motors Corp., et al. :
                                          :
                      Debtors.            :        (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

<u>**NOTICE OF HEARING ON MOTION OF DEBTORS**
**FOR ENTRY OF ORDER PURSUANT TO FED. R. BANKR. P. 9019**
**AND FED. R. CIV. P. 23 APPROVING AGREEMENT RESOLVING PROOF OF**
**CLAIM NO. 51093 AND IMPLEMENTING MODIFIED CLASS SETTLEMENT**</u>

PLEASE TAKE NOTICE that upon the annexed Motion, dated March 14, 2011

(the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors in possession (the "**Debtors**"), for an order, pursuant to Rule 9019

of the Federal Rules of Bankruptcy Procedure and Rule 23 of the Federal Rules of Civil

Procedure approving the Agreement Resolving Proof of Claim No. 51093 (the "**Agreement**"),

attached to the Motion as **Exhibit "A"** implementing a settlement between class action plaintiff

Jason Anderson, on behalf of himself and all others similarly situated, and the Debtors, as

09-50026-mg    Doc 9805    Filed 03/14/11    Entered 03/14/11 19:29:26    Main Document
Pg 2 of 33

defined and as more fully set forth in the Motion, a hearing will be held before the Honorable

Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004, on **April 26, 2011 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel

may be heard.

               PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham,

Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

US_ACTIVE:\43491622\27\72240.0639                        2

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.); and (xii) Girard Gibbs LLP, attorneys for class action plaintiff Jason

Anderson and all others similarly situated, 601 California Street, Suite 1400, San Francisco,

California 94108 (Attn:  Eric H. Gibbs, Esq. and A. J. De Bartolomeo, Esq.), so as to be received

no later than **April 19, 2011 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion as **Exhibit "B,"** which order may be entered with no further notice or opportunity to be

heard offered to any party.

Dated: New York, New York
         March 14, 2011

                                    /s/ Joseph H. Smolinsky
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

# TABLE OF CONTENTS

**Page**

I.     Relief Requested ................................................................................................ 2

II.    Preliminary Statement ....................................................................................... 3

III.   Jurisdiction ......................................................................................................... 4

IV.    Background ......................................................................................................... 4

     A.      The Anderson Class Action ................................................................... 4

     B.      The Agreement ....................................................................................... 9

V.     The Relief Requested Should Be Approved by the  Court Pursuant to Bankruptcy
     Rule 9019 ........................................................................................................... 14

VI.    The Settlement Should Be Approved by this Court Under Rule 23 ................. 16

VII.   Notice ................................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re AMC Realty Corp.*,
    270 B.R. 132 (Bankr. S.D.N.Y. 2001)................................................................................16

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)..........................................................................................................17

*City of Detroit v. Grinnell Corp.*,
    495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by*
    *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)............................................19

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)..............................................................................................17

*In re Dow Corning Corp.*,
    198 B.R. 214 (Bankr. E.D. Mich. 1996) ............................................................................14

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) .....................................14

*Fireside Bank v. Superior Court*,
    155 P.3d 268 (Cal. 2007) .................................................................................................18

*Green v. Am. Express Co.*,
    200 F.R.D. 211 (S.D.N.Y. 2001) ...........................................................................21, 22, 23

*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ..............................................................................23

*In re Indep. Energy Holdings PLC*,
    No. 00-CIV-6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .................18, 19, 21

*In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) .........................................14

*In re Iridium Operating LLC*,
    478 F.3d 452 (2d Cir. 2007)..............................................................................................14

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006). .........................................................................18, 19, 21

*Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*,
    313 F.2d 447 (6th Cir. 1963) ............................................................................................14

**Page**

*In re Milken & Assocs. Sec. Litig.*,
    150 F.R.D. 46 (S.D.N.Y. 1993) ...................................................................................19

*In re Nazi Era Cases Against German Defendants Litig.*,
    198 F.R.D. 429 (D.N.J. 2000) ....................................................................................21

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
    390 U.S. 414, *reh'd denied*, 391 U.S. 909 (1968) ...................................................14

*In re Purofied Down Prods. Corp.*,
    150 B.R. 519 (S.D.N.Y. 1993) .....................................................................................14

*Rosenberg v. XO Communications, Inc. (In re XO Communications, Inc.)*,
    330 B.R. 394 (Bankr. S.D.N.Y. 2005) .....................................................................21

*Selby v. Principal Mut. Life Ins. Co.*,
    No. 98 Civ. 5283 (RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003)..............23

*In re Tobacco II Cases*,
    207 P.3d 20 (Cal. 2009) ...........................................................................................18

*Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group,
    Inc.)*, 134 B.R. 499 (Bankr. S.D.N.Y. 1991) ....................................................13, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005)......................................16

*Weinberger v. Kendrick*,
    698 F.2d 61 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983)........................16, 19

*Williams v. First Nat'l Bank*,
    216 U.S. 582 (1910)..................................................................................................16

## STATUTES/RULES

11 U.S.C. §105.................................................................................................................15, 23

11 U.S.C. § 502......................................................................................................................13

11 U.S.C. § 503........................................................................................................................8

28 U.S.C. § 157.................................................................................................................4, 5, 6

28 U.S.C. § 1334.....................................................................................................................4

Cal. Code Civ. Proc. § 382 ..............................................................................................3, 7, 17

iii

**Page**

Cal. Code Civ. Proc. § 1795.90 .................................................................2

Fed. R. Bankr. P. 1015.................................................................23

Fed. R. Bankr. P. 3003.................................................................8

Fed. R. Bankr. P. 3007.................................................................15

Fed. R. Bankr. P. 9007.................................................................23

Fed. R. Bankr. P. 9019.................................................2, 3, 13, 15, 21

Fed. R. Civ. P. 23.................................................2, 17, 18, 21, 23

## OTHER AUTHORITIES

6 Herbert Newberg & Alba Conte,
  *Newberg on Class Actions*, § 11.72 (4th ed. 2002)................................21

**HEARING DATE AND TIME: April 26, 2011 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE:  April 19, 2011 at 4:00 pm. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                          :
In re                                     :      Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :      09-50026 (REG)
        f/k/a General Motors Corp., et al.    :
                                          :
                Debtors.                  :      (Jointly Administered)
                                          :
-----------------------------------------------------------x
```

**MOTION OF DEBTORS FOR ENTRY**
**OF ORDER PURSUANT TO FED. R. BANKR. P. 9019**
**AND FED. R. CIV. P. 23 APPROVING AGREEMENT RESOLVING PROOF**
**OF CLAIM NO. 51093 AND IMPLEMENTING MODIFIED CLASS SETTLEMENT**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

## I.    Relief Requested[1]

1.    Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 23 of the Federal Rules of Civil Procedure ("**Rule 23**"), the Debtors respectfully request entry of that certain proposed Order Pursuant to Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. Rule 23 Approving Agreement Resolving Proof of Claim No. 51093 and Implementing Modified Class Settlement (the "**Order**") approving and ratifying that certain modified settlement agreement (the "**Agreement**") between class action plaintiff Jason Anderson ("**Anderson**"), on behalf of himself and all others similarly situated (the "**Anderson Class**"), and the Debtors (collectively, Anderson, the Anderson Class, and the Debtors, the "**Parties**"). The Agreement is attached hereto as **Exhibit "A"** and the Order is attached hereto as **Exhibit "B."**

2.    Among other things, the Agreement sets forth the proposed settlement and resolution of Claim No. 51093 (the "**Anderson Proof of Claim**"), which is based on a previous settlement reached in a class action lawsuit brought by Jason Anderson, on behalf of himself and the Anderson Class against General Motors Corporation ("**GM**") on May 18, 2004, in the Superior Court of the State of California, County of Los Angeles (the "**California Court**"), alleging, among other things, that GM violated the Unfair Competition Law by creating an "adjustment program" under the Motor Vehicle Warranty Adjustment Programs statute ("**MVWAP**"), Civ. Code § 1795.90 *et. seq.*, allegedly without providing the Anderson Class with certain notices and repair reimbursements (the "**Anderson Class Action**").  Entry of the Order will result in:  (i) the resolution of approximately $10,000,000.00 in claims against the

---

[1]    All capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Agreement (defined below).

Debtors' estates; and (ii) the alleviation of the financial burden, time, and uncertainty associated

with litigation of the Anderson Proof of Claim and the Anderson Class Action.

## II.     Preliminary Statement

3.      By this Motion of Debtors for Entry of Order Pursuant to Fed. R. Bankr.

P. 9019 and Fed. R. Civ. P. 23 Approving Agreement Resolving Proof of Claim No. 51093 and

Implementing Modified Class Settlement (the "**Motion**"), the Debtors seek to implement the

settlement previously reached in the Anderson Class Action and approved by the California

Court, with the requested modifications described herein and in the Agreement.  The Anderson

Class already has been certified by the California Court; extensive notice of the Anderson Class

Action Settlement (defined below) was previously given to the Anderson Class; members of the

Anderson Class already have submitted claims for settlement benefits; and the Anderson Class

Action Settlement was approved by the California Court under Section 382 of the California

Code of Civil Procedure—a code provision that is patterned after Rule 23.  The California Court

approved the Anderson Class Action settlement as fair, reasonable, and adequate, and GM

previously transferred $2,258,000.00 in escrow as earmarked for payment of attorneys' fees,

costs, and an incentive award for Anderson.  Pursuant to the California Court's Order

Preliminarily Approving Stipulation of Settlement (the "**Preliminary Approval Order**") and

final judgment (the "**Final Judgment**"), all claims by Anderson Class members were submitted

to GM (as class claims administrator) and were post-marked by May 11, 2009.  On June 1, 2009,

before the terms of the settlement could be implemented and before GM performed any actions

as class claims administrator, certain of the Debtors commenced voluntary cases under chapter

11 of title 11 of the United States Code (the "**Bankruptcy Code**"), which stayed the

implementation of the Anderson Class Action settlement.

4.       As a result of the commencement of these chapter 11 cases, the Debtors

are unable to provide the original consideration contemplated under the Anderson Class Action

Settlement to the participating members of the class—including, for certain of the class

members, a free vehicle valuation and, if necessary, repair—but the Parties have reached an

agreement to provide alternative treatment that is favorable to the Participating Anderson Class

Members (defined below).  The Agreement is fair, reasonable, and adequate and meets the

standards of Rule 23.  Moreover, the Agreement will result in a reduction of general unsecured

claims against the Debtors' estates.  The Agreement is also the result of a collaborative effort

between the Parties and the statutory committee of unsecured creditors (the "**Creditors'**

**Committee**") in these chapter 11 cases and is submitted to this Court for approval with the

Creditors' Committee's support and consent.  Entry of the Order, thus, is in the best interest of

the Anderson Class, the Debtors, and the Debtors' creditors.  Accordingly, the Debtors

respectfully request that this Motion be granted.

### III.      Jurisdiction

5.       This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### IV.      Background

**A.      The Anderson Class Action**

6.       On May 18, 2004, Anderson filed a class action complaint against GM on

behalf of himself and the Anderson Class in the California Court, Case No. JCCP4396, alleging

that certain Silverado trucks exhibit an abnormal engine knock or piston noise.  Anderson further

alleged that GM knew about this condition and that GM had a business policy under which it

provided certain benefits, including a 6 year/100,000 General Motors Protection Plan (or

"**GMPP**"), to California owners and lessees of Silverados who complained to GM about the condition.  Anderson asserted that GM's business policy to offer a GMPP or other benefit to some consumers, but not others, who own or lease a Silverado with an abnormal engine knock or piston noise condition was an adjustment program or "secret warranty" that violates California law, including, specifically, the California MVWAP, because GM allegedly did not notify Anderson or the Anderson Class about the adjustment program or provide them with coverage under the plan.

7.    Following substantial discovery, law and motion practice, class certification having been granted, a writ petition as to the form and notice of class certification having been denied, and two separate mandatory settlement conferences before a California state judge, GM and the Anderson Class reached a comprehensive claims-made stipulation of settlement of the Anderson Class Action (the "**Anderson Class Action Settlement**").  A copy of the Anderson Class Action Settlement is attached as **Exhibit "C."**  Under the terms of the settlement, after submission of the appropriate documentation, GM agreed to reimburse class members who submitted valid, timely claims for:  (i) monies spent on the purchase of a GMPP that otherwise would have been available to them for free under GM's allegedly unlawful adjustment program; and/or (ii) repair costs paid by class members to correct the abnormal engine knock or piston noise or on other specified engine repairs.  GM also agreed that certain members of the Anderson Class with constant engine knock or piston noise concerns could request a free evaluation from a Chevrolet dealer and, if appropriate, obtain free repairs of the condition.[2]

---

[2]    Specifically, under the terms of the Anderson Class Action Settlement, certain Anderson Class members who purchased a GMPP within 90 days of vehicle delivery would receive reimbursement, up to the full purchase price of the GMPP, if such class member provided a completed and signed claim form and appropriate

5

8.      On November 18, 2008, the California Court entered the Preliminary

Approval Order, a copy of which is attached hereto as **Exhibit "D."**  In that Preliminary

Approval Order, the California Court set a fairness hearing for March 5, 2009 (the "**Fairness**

**Hearing**"); set forth deadlines for objecting to the Anderson Class Action Settlement and

appearing at the Fairness Hearing; approved the form of class notice (the "**Notice of**

**Settlement**"); and approved the proposed manner of providing notice, which manner included

first-class mailing of the Preliminary Approval Order to members of the Anderson Class and

posting a Spanish-language version of the Notice of Settlement on Class Counsel's (defined

below) website.  A copy of the Notice of Settlement is attached hereto as **Exhibit "E."**  In

accordance with that Preliminary Approval Order, GM mailed notice of the class action

settlement to approximately 240,000 California owners and lessees of model year 1999-2003

Silverado vehicles.

9.      On March 5, 2009, the California Court conducted its Fairness Hearing

and entered its Final Judgment, a copy of which is attached hereto as **Exhibit "F,"** in which it

finally certified a class in the Anderson Class Action and finally approved the Anderson Class

Action Settlement.[3]  The California Court determined that the Anderson Class satisfied Section

---

documentation showing piston or pin noise.  (*See* Settlement Agreement ¶ 3.3 (Ex. C).)  Similarly, certain Anderson Class members who purchased a GMPP after 90 days of vehicle delivery would receive reimbursement, up to the full purchase price of the GMPP, if such class member provided a completed and signed claim form and a statement made under penalty of perjury that their vehicle had piston or pin nose.  (*See id.* (Ex. C).)  Further, GM agreed to reimburse certain Anderson Class members for out-of-pocket repair expenses, up to seventy-five or 100% of the cost of repair, depending on the type of covered repair.  (*See id.* ¶¶ 3.3, 3.6 (Ex. C).)  Finally, Claimants who made a statement under penalty of perjury that, prior to the expiration of the limited warranty period, they made inquiry or expressed concerns to an authorized GM dealer about constant engine knock or piston noise and did not receive a repair, would receive a free evaluation from a dealer and a free repair if the condition was found to exist as a result of the evaluation.  (*See id.* ¶ 3.5 (Ex. C).)

[3]      The Anderson Class included the following:  "All California owners and lessees of 1999-2003 model year Chevrolet Silverados equipped with a 4.8 liter (LR4), 5.3 liter (LM7), 6.0 liter (LQ4, L59) or 8.1 liter (L18) engines who (1) Have an engine "knock, ping or slap" noise in their vehicles; and (2) Were not given notice of the condition giving rise to or the terms and conditions of GM's Engine Knock Noise Adjustment Program."  For purposes of the

382 of the California Code of Civil Procedure ("**Section 382**"), because:  (i) the Anderson Class was so numerous that joinder of all members was impracticable; (ii) there were questions of law or fact common to the Anderson Class; (iii) Anderson's claim was typical of the claim of the Anderson Class members' claims; (iv) Anderson would fairly and adequately assert and protect the interests of the Anderson Class under the criteria set forth in Section 382; (v) questions of fact common to the Anderson Class predominated over factual questions affecting only individual members; and (vi) a class action provided a fair and efficient method for adjudication of the controversy.  (*See* Final Judgment ¶ 2 (Ex. F).)

10.     The California Court also finally approved of the provisional designation of the law firm of Girard Gibbs LLP as class counsel ("**Class Counsel**") and Anderson as the representative plaintiff (the "**Representative Plaintiff**").

11.     As set forth in the Anderson Class Action Settlement, the Final Judgment also awarded Anderson as Representative Plaintiff an incentive award in the total sum of $7,500.00 (the "**Incentive Award**"), Class Counsel a total sum of $1,950,000.00 in attorneys' fees (the "**Attorneys' Fees**"), and $212,500.00 in documented costs and expenses ("**Documented Costs and Expenses**").

12.     In accordance with the Anderson Class Action Settlement and the Final Judgment approving the award of Attorneys' Fees, Incentive Award, and Documented Costs and Expenses, on or about March 16, 2009, GM deposited $2,258,000.00 in cash (the "**Anderson Class Action Settlement Deposit**") in an account established at Union Bank of California,

---

Anderson Class Action Settlement and the class definition, "engine knock, ping or slap noise" has the same meaning as "Start Noise" (*i.e.*, piston or piston pin noise that occurs at initial start up and disappears shortly after the engine warms up) or "Constant Noise" (*i.e.*, piston or piston pin noise that is not Start Noise).  Excluded from the Anderson Class were those California owners and lessees of 1999-2003 model year Chevrolet Silverados who timely requested to be excluded from the class.

which cash was then transferred by Class Counsel on or about May 7, 2009 to an attorney-client

trust account (the "**Attorney-Client Trust Account Deposit**") established by class counsel in

the Anderson Class Action.

        13.     Pursuant to the Anderson Class Action Settlement and the Final Judgment,

members of the Anderson Class were required to submit a settlement benefit claim form ("**Claim**

**Form**") to obtain the benefits of the settlement.  In accordance with the Final Judgment, on

March 26, 2009, Claim Forms were mailed to the approximately 240,000 members of the

Anderson Class.  Under the terms of the Anderson Class Action Settlement and the Final

Judgment, GM agreed to act as claims administrator.  The deadline for class members to submit

and postmark valid and timely Claim Forms for settlement benefits (together with any necessary

supporting documentation) to GM expired on May 11, 2009.  Approximately 5,913 Claim Forms

were submitted by Anderson Class members (collectively, the "**Participating Anderson Class**

**Members**").

        14.     The commencement of these chapter 11 cases on June 1, 2009, stayed all

further implementation of the Anderson Class Action Settlement.

        15.     On September 16, 2009, the United States Bankruptcy Court for the

Southern District of New York (the "**Court**") entered the Order Pursuant to Section 502(b)(9) of

the Bankruptcy Code and Rule 3003(c)(3) of the Bankruptcy Procedure Establishing the

Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section

503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice

Thereof (ECF No. 4079) establishing November 30, 2009 at 5:00 p.m. (Eastern) as the deadline

to file proofs of claim against the Initial Debtors based on prepetition claims.

16.     On November 25, 2009, the Anderson Proof of Claim, based on the Anderson Class Action Settlement, was filed with this Court, purportedly on behalf of the Anderson Class, and assigned claim number 51093. The Anderson Proof of Claim asserts a claim in the amount of $10,000,000.00, for class consideration allegedly due pursuant to the Anderson Class Action Settlement (the "**Claim**").[4]

17.     On December 1, 2009, this Court approved and entered the Stipulation and Order Between the Debtors and the Holders of Unliquidated Dex-Cool and Anderson Claims to Allow Class Proofs of Claim for Dex-Cool and Anderson Claimants (the "**Class Claims Stipulation**") and through which the Debtors and the holders of Unliquidated Anderson Claims, defined in the Class Claims Stipulation as the claims made in connection with the Anderson Class Action that had not yet been liquidated pursuant to the terms of the Anderson Class Action Settlement, agreed that Class Counsel could file a class-wide proof of claim on behalf of all holders of Unliquidated Anderson Claims.

**B.     The Agreement**

18.     Since the filing of the Anderson Proof of Claim, the Parties have engaged in good-faith, arms-length negotiations, and, without any admission of liability by any Party, have reached the Agreement to resolve the Anderson Proof of Claim and implement the Anderson Class Action Settlement, as modified, with this Court's approval.

19.     Because of the commencement of these chapter 11 cases, the Debtors are unable to provide the Participating Anderson Class Members with the exact consideration contemplated by the Anderson Class Action Settlement, including, among other things, the

---

[4]     In accordance with the Anderson Class Action Settlement, the Anderson Proof of Claim also seeks a free evaluation from a Chevrolet dealer and, if appropriate, free repairs of the condition relating to constant engine knock or piston noise concerns for certain Participating Anderson Class Members.

previously agreed upon evaluation and repair service.  Accordingly, the Parties respectfully

request that this Court approve the Agreement to provide, among other things, the Participating

Anderson Class Members with the Total Allowed General Unsecured Claim (defined below) that

is equivalent to the approximate value of the benefits that would have been provided to the

Participating Anderson Class Members under the Anderson Class Action Settlement,

consideration that may be more favorable to the Participating Anderson Class Members.[5]

20.    The key provisions of the Agreement are summarized as follows:

a.    Subject to execution of the Agreement by the Parties and upon entry of the Order and, unless otherwise set forth in the Agreement, the Anderson Proof of Claim shall be resolved and the Participating Anderson Class Members shall receive, in the aggregate, a single allowed general unsecured claim against MLC in the amount of $8,853,300.00 (the "**Total Allowed Unsecured Claim**").

b.    Class Counsel shall be authorized to dispose of the Total Allowed Unsecured Claim such that Class Counsel can make the proper *pro rata* distribution of consideration to the Participating Anderson Class Members in accordance with the Agreement.  Class Counsel shall be solely responsible for (i) distributing the cash proceeds resulting from the disposition of the Total Allowed Unsecured Claim; (ii) otherwise implementing the Agreement; and (iii) paying all expenses associated with such distribution and/or implementation.

c.    Cash proceeds resulting from the sale or assignment of the Total Allowed Unsecured Claim shall be distributed, on a *pro rata* basis, in accordance with the following guidelines,

---

[5]    Under the Agreement, certain Participating Anderson Class Members may receive more favorable consideration than under the terms of the Anderson Class Action Settlement.  Specifically, members of the Anderson Class who failed to submit appropriate documentation may have been unable to obtain any benefits under the Anderson Class Action Settlement.  However, under the Agreement, Participating Anderson Class Members may obtain a reduced amount of reimbursement, on a *pro rata* basis, on account of their claims.

which are further set forth in the Plan of Allocation attached as **Exhibit "H"** to the Agreement:[6]

- **<u>Reimbursement of Purchase Price of GMPP Purchased Within 90 Days of Retail Delivery.</u>**  Each Participating Anderson Class Member in this group may obtain reimbursement, on a *pro rata* basis, up to the full purchase price of the GMPP paid by such member if the Participating Anderson Class Member has supplied documentation of the GMPP value and has submitted appropriate documentation showing that his or her Silverado has or had Start Noise.  If the Participating Anderson Class Member has not submitted documentation of the GMPP value but has supplied appropriate documentation showing that his or her Silverado has or had Start Noise, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of $1,800.00.  If the Participating Anderson Class Member has not submitted documentation of the GMPP value and has not supplied appropriate documentation showing that his or her Silverado has or had Start Noise but otherwise has a valid claim, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of $900.00.

- **<u>Reimbursement of Purchase Price of GMPP Purchased After 90 Days of Retail Delivery</u>.**  Each Participating Anderson Class Member in this group may obtain reimbursement, on a *pro rata* basis, up to the purchase price of the GMPP paid for by such member if the Participating Anderson Class Member has supplied documentation of the GMPP value and has stated under penalty of perjury that his or her Silverado has or had Start Noise.  If the Participating Anderson Class Member has not submitted documentation of the GMPP value but has stated under penalty of perjury that his or her Silverado has or had Start Noise, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of $1,800.00.  If the Participating Anderson Class Member has not submitted documentation of the GMPP value and has not stated under penalty of perjury that his or her Silverado has or had Start Noise, but otherwise has a valid

---

[6]     All distributions under the Agreement will be made on a *pro rata* basis of the cash proceeds resulting from the sale or assignment of the Total Allowed Unsecured Claim.

claim, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of $900.00.

- **Customer-Paid Start Noise Repair Expense Reimbursement.** Each Participating Anderson Class Member who, during the Applicable Warranty Period[7], paid for a repair to address concerns about Start Noise for which the Participating Anderson Class Member was not fully reimbursed may be reimbursed, on a *pro rata* basis, for the out-of-pocket repair expense incurred by such member if the Participating Anderson Class Member (i) signed, completed and submitted a Claim Form stating under penalty of perjury that he or she sought the repair to address a concern about Start Noise, and (ii) submitted appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order). If the Participating Anderson Class Member has not submitted appropriate documentation of the repair and repair expense, but the claim is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of one-half (50%) of the average repair expense for this category.

- **Other Customer-Paid Covered Engine Repairs.** Each Participating Anderson Class Member who paid for other Covered Engine Repairs[8] for which the Participating Anderson Class Member was not fully reimbursed may be reimbursed, on a *pro rata* basis, for 75% of the out-of-pocket Covered Engine Repair expense incurred by such member if the Participating Anderson Class Member submitted appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order) and signed, completed and submitted a Claim Form stating

---

[7] For purposes of eligibility for this settlement benefit, "**Applicable Warranty Period**" shall mean the GM Limited New Vehicle Warranty period (3 years or 36,000 miles, whichever comes first) except that for those Anderson Class members who purchased a GMPP, the time and mileage limitations for reimbursement of repair expenses under this paragraph shall be those set forth in the Participating Anderson Class Member's GMPP (for example, 4 years or 50,000 miles, whichever comes first).

[8] For purposes of eligibility for this settlement benefit, "**Covered Engine Repairs**" shall include only unreimbursed repair expense for the following engine components: cylinder block; heads; crankshaft and bearings; crankshaft seals - front and rear; camshaft and bearings; connecting rods and pistons; valve train (including valve seals, valve covers and internal parts); timing gears; timing chain/belt and cover; oil pump, oil pump housing; oil pan; engine seals and gaskets; lubricated internal engine parts; water pump; intake and exhaust manifolds; flywheel; harmonic balancer; and engine mounts.

under penalty of perjury that (i) he or she made inquiry or expressed concern to an authorized GM dealer or GM about start noise prior to expiration of the GM Limited New Vehicle Warranty Period (3 years or 36,000 miles after retail sale or lease, whichever came first), and (ii) an un-reimbursed expense was incurred within the earlier of 6 years or 100,000 miles of retail delivery, whichever came first.  If the Participating Anderson Class Member has not submitted appropriate documentation of the repair and repair expense, but the claim is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, for one-half (50%) of the average amount of the reimbursable Covered Engine Repair expenses for this category (*e.g.*, 75% of the out-of-pocket Covered Engine Repair expenses incurred by Participating Anderson Class Members in this category).

- **Constant Noise Repair Expense Reimbursement.**  Each Participating Anderson Class Member who signed, completed and submitted a Claim Form stating under penalty of perjury that, prior to the expiration of the GM Limited New Vehicle Warranty (3 years or 36,000 miles after retail sale or lease, whichever came first), he or she made inquiry or expressed concern to an authorized GM dealer or GM about constant noise and did not receive a repair, may be reimbursed, on a *pro rata* basis, in the amount of $1,800.00.  If the Participating Anderson Class Member has submitted an incomplete Claim Form but the claim is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of $900.00.

d.      Upon entry of the Order, Anderson, the Anderson Class, and their affiliates, successors and assigns, and their agents, insurers, representatives, administrators, executors, trustees, and attorneys, shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns, including GM or its successors in interest (collectively, the "**Debtor Parties**").[9]

---

[9]      Nothing in the Agreement is intended by the Parties to be a release, settlement, or waiver by the Debtor Parties of any claims, including any claims, liabilities, obligations, rights, damages, causes of action, debts, or losses arising out of, concerning, or related to the Anderson Class Action Settlement Deposit, the Attorney-Client Trust Account Deposit, or interest earned thereon.  Similarly, nothing in the Agreement is intended by the Parties to be a release, settlement, or waiver by Anderson, the Anderson Class, and their affiliates, successors and assigns, and their agents, insurers, representatives, administrators, executors, trustees and attorneys (collectively, the "**Anderson**

## V.     The Relief Requested Should Be Approved by the Court Pursuant to Bankruptcy Rule 9019

21.     Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate."  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  A decision to accept or reject a compromise or settlement is within the sound discretion of this Court.  *See id.*; *see also* 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001).  The settlement need not result in the best possible outcome for the debtor but must not "fall below the lowest point in the range of reasonableness."  *In re Drexel Burnham Lambert Group*, 134 B.R. at 505.

22.     Relying on the guiding language of *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, *reh'd denied*, 391 U.S. 909 (1968), courts in this Circuit have set forth the following factors regarding the reasonableness of such settlements:

(1)     the probability of success in the litigation;

(2)     the difficulties associated with collection;

(3)     the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(4)     the paramount interests of the creditors.

---

Parties") or Class Counsel of any defenses to any claims asserted by the Debtor Parties arising out of, concerning, or related to the Anderson Class Action Settlement Deposit, the Attorney-Client Trust Account Deposit, or interest earned thereon, or the assertion of a claim by the Anderson Parties or Class Counsel against the Debtors or their bankruptcy estates pursuant to Section 502(h) of the Bankruptcy Code.

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).  The decision to approve a particular settlement lies within the sound discretion of the bankruptcy Court.  *Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963).  It is the responsibility of the court to examine a settlement and determine whether it "falls below the lowest point in the range of reasonableness."  *In re Dow Corning Corp.*, 198 B.R. 214, 222 (Bankr. E.D. Mich. 1996).  For the reasons set forth below, the Debtors respectfully submit that the Agreement meets this standard.

23.    The Agreement falls well within the range of reasonableness, as it is fair and equitable and in the paramount interest of the Debtors and their creditors.  While the Parties dispute factual and legal issues relevant to the disposition of some or all of each other's claims, and, therefore, dispute the probability of success, the settlement represents a fair compromise of the Anderson Proof of Claim.  Settlement at this stage avoids the expense, inconvenience, uncertainty, and delay that would be caused by relitigating any of the issues resolved by the Anderson Class Action Settlement and further negotiated in the Agreement to the benefit of the Debtors' estates.

24.    The Agreement alleviates the financial burden, time, and uncertainty associated with continued litigation of the Anderson Proof of Claim and the Anderson Class Action Settlement.

25.    Moreover, approval of the Agreement comports with this Court's October 6, 2009 Order Pursuant to 11 U.S.C. §105(a) and Fed. R. Bankr. P. 3007 and 9019(b)

Authorizing the Debtors to (I) File Omnibus Claims Objections and (II) Establish Procedures for

Settling Certain Claims (the "**De Minimis Order**"), (ECF No. 4180).  The De Minimis Order

states, in relevant part, the following:

> If the Settlement Amount for a Claim is not a De Minimis
> Settlement Amount *but is less than or equal to $50 million*, the
> Debtors will submit the proposed settlement to the Creditors'
> Committee.  Within five (5) business days of receiving the
> proposed settlement, the Creditors' Committee may object or
> request an extension of time within which to object.  If there is a
> timely objection made by the Creditors' Committee, the Debtors
> may either (a) renegotiate the settlement and submit a revised
> notification to the Creditors' Committee or (b) file a motion with
> the Court seeking approval of the existing settlement under
> Bankruptcy Rule 9019 on no less than 10 days' notice.  *If there is
> no timely objection made by the Creditors' Committee or if the
> Debtors receive written approval from the Creditors' Committee of
> the proposed settlement prior to the objection deadline (which
> approval may be in the form of an email from counsel to the
> Creditors' Committee), then the Debtors may proceed with the
> settlement.*

26.      In accordance with this De Minimis Order, the Agreement, including the

Total Allowed Unsecured Claim, was submitted to the Creditors' Committee, which informed

the Debtors that it has no objection to either the Agreement as a whole or to the Total Allowed

Unsecured Claim provided for in of the Agreement.

27.      The Debtors submit that the Agreement falls well within the range of

reasonableness, is in the best interests of the Debtors' estates and their creditors, and should be

approved as a sound exercise of the Debtors' business judgment.  Accordingly, the Debtors

respectfully request the entry of the Order.

## VI.      The Settlement Should Be Approved by this Court Under Rule 23

28.      The Agreement should also be approved pursuant to Rule 23.

29.    Federal courts have long expressed a preference for the negotiated resolution of litigation. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."). A general policy favoring settlement exists, especially with respect to class actions. *See, e.g., In re AMC Realty Corp.*, 270 B.R. 132, 145-46 (Bankr. S.D.N.Y. 2001) (recognizing that "settlements are favored in federal law and the prompt resolution of claims and disputes makes the compromise of claims of particular importance in the bankruptcy reorganization") (internal quotation marks omitted)*; Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted), *cert. denied*, 544 U.S. 1044 (2005); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."), *cert. denied*, 464 U.S. 818 (1983).

### (a)    The Anderson Class Satisfies Rules 23(a) and 23(b)

30.    "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). "Rule 23(a) and (b) standards apply equally to certifying a class action for settlement or for trial, with one exception." Manual for Complex Litigation § 21.132 (4th ed. 2004) (emphasis added). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems," under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

31.    The Parties stipulate, solely for the purposes of settlement, that the Anderson Class meets the standards of Rules 23(a) and (b). Specifically, the Parties submit that

this Court should adopt the California Court's findings with respect to the certification of the Anderson Class under California Section 382 and find that the Anderson Class meets the standards of Rule 23.

32.    The California Court's findings in its in its Preliminary Approval Order and Final Judgment further demonstrate the satisfaction of Rules 23(a) and (b).  In those orders, the California Court found that:

- The Anderson Class is so numerous that joinder of all members is impracticable;

- There are questions of law or fact common to the Anderson Class;

- Anderson's claim, as a representative party, is typical of the claims of the Anderson Class Members;

- Anderson will fairly and adequately assert and protect the interests of the Anderson Class;

- Questions of fact common to the Anderson Class predominate over factual questions affecting only individual members; and

- The Anderson Class Action provides a fair and efficient method for adjudication of the controversy.  (*See* Final Judgment ¶ 2 (Ex. F).)

33.    The California Supreme Court has recognized that the requirements for class certification under Rule 23(a) are "analogous to the requirements for class certification under Code of Civil Procedure section 382." *In re Tobacco II Cases*, 207 P.3d 20, 33 (Cal. 2009); *Fireside Bank v. Superior Court*, 155 P.3d 268, 281 (Cal. 2007) (identifying requirements for class action under section 382).  To this end, California courts look to federal class action law

"when seeking guidance on issues of class action procedure." *In re Tobacco II Cases*, 207 P.3d at 33.

34.    Accordingly, this Court should adopt the findings of the California Court in its Preliminary Approval Order and Final Judgment and find that the Anderson Class satisfies Rules 23(a) and 23(b) solely for the purposes of the Agreement.

        **(b)**      **The Agreement Satisfies Rule 23(e)**

35.    This Court should also find that the Agreement satisfies Rule 23(e)(2).

36.    Rule 23(e) requires court approval of a class action settlement.  The standard for reviewing the proposed settlement of a class action in the Second Circuit, as in other circuits, is whether the proposed settlement is "*fair, reasonable and adequate*."  *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (emphasis added); *see In re Indep. Energy Holdings PLC*, No. 00-CIV-6689 (SAS), 2003 WL 22244676, at *9 (S.D.N.Y. Sept. 29, 2003).  In reviewing the reasonableness of a proposed class action settlement, courts are cautioned against substituting their judgment for that of the parties who negotiated the settlement or conducting a mini-trial on the merits of the action.  *See Weinberger*, 698 F.2d at 74; *In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993).  To that end, the Second Circuit has established the following factors as relevant in evaluating class action settlements:  (i) the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining the class action through the trial; (vii) the ability of the defendants to withstand a greater judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in

light of all the attendant risks of litigation.  *See In re Indep. Energy Holdings PLC*, 2003 WL

22244676, at *3; *accord In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. at 311.

          37.     Here, there can be no doubt that the Agreement should be approved based

on the foregoing factors.  Absent the Agreement, the Parties would have faced the expense and

duration of a lengthy and complex trial of the Anderson Class Action.  *See City of Detroit v.

Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.

Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).  At a minimum, litigation of the Anderson

Class Action would have involved numerous fact witnesses, experts, hundreds of documents,

pre-trial motions, and likely post-trial motions and appeal.  Additionally, despite notice of the

Anderson Class Action Settlement being mailed *twice* , no objections to the settlement were

received.  *See In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *3.  Further, the

relatively advanced stage of the Anderson Class Action litigation provided counsel with more

than enough information to assess the strengths and weaknesses of their case as well as the risks

of damages.  Indeed, the Anderson Class Action litigation has been ongoing since May 2004 and

has involved two separate and lengthy court-ordered settlement conferences before a California

state court judge; extensive document and deposition discovery; and significant law and motion

practice.

          38.     The Agreement also is fair, reasonable and adequate.  While the Claim

will be settled for approximately $1.2 million *less* than the amount asserted in the Anderson

Proof of Claim, the Participating Anderson Class Members will largely obtain a general

unsecured claim in the amount they would have received pre-bankruptcy.  And, for those

Participating Anderson Class Members who had "constant noise" and may have been eligible to

receive a noise evaluation and repair from an authorized Chevrolet dealer, the Agreement

contemplates that, once the Total Allowed Unsecured Claim is converted to cash or monetized under the terms of the Agreement, Participating Anderson Class Members who signed, completed and submitted a Claim Form stating under penalty of perjury that, prior to the expiration of the GM Limited New Vehicle Warranty, he or she made inquiry or expressed concern to an authorized GM dealer or GM about constant noise and did not receive a repair, will obtain reimbursement, on a *pro rata* basis, in the amount of $1,800.00.  Moreover, if such a Participating Anderson Class Member submitted an incomplete Claim Form but the claim for "constant noise" is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of $900.00.

39.     Further, the settlement amount is reasonable.  Pursuant to the Agreement, the Claim will immediately be estimated in the amount of $8,853,300.00.  The Parties agreed on this amount after a detailed review of approximately 1,000 of the Participating Anderson Class Members' claims and extensive negotiations.

40.     Finally, the Agreement is the result of numerous, arms-length negotiations between the Parties and their respective counsel concerning modification of the Anderson Class Action Settlement.  *See In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *3; *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. at 311.

41.     Based on the foregoing, this Court should find that the Agreement satisfies Rule 23(e)(2).

(c)     **No Additional Notice Is Required**

42.     The Notice of Settlement adopted and approved by the Parties and the California Court was in full compliance with the notice requirements of due process, federal law, the Constitution of the United States, and any other applicable law, and this Court need not

require any new notice to be given to the Anderson Class. *See Green v. Am. Express Co.*, 200

F.R.D. 211, 212 (S.D.N.Y. 2001); *In re Nazi Era Cases Against German Defendants Litig.*, 198

F.R.D. 429, 441 (D.N.J. 2000); 6 Herbert Newberg & Alba Conte, <u>*Newberg on Class Actions*</u>, §

11.72 (4th ed. 2002).

43.      In *Rosenberg v. XO Communications, Inc. (In re XO Communications,*

*Inc.)*, the Southern District of New York Bankruptcy Court approved a stipulation that the debtor

need not provide new notice to all potential class action members of a Rule 9019 motion settling

the class action when notice of class action settlement had already been provided in the state

court settlement. *See* 330 B.R. 394, 409-410 (Bankr. S.D.N.Y. 2005).

44.      Here, the California Court previously ordered that the Notice of

Settlement be effected by direct mailing notice of the settlement *twice* to 240,000 California

owners and lessees of model year 1999-2003 Silverado vehicles—once after the Preliminary

Approval Order and again after the Final Judgment.  Those notices resulted in the submission of

Claim Forms and the identification of the Participating Anderson Class Members.  This Court

should also find that the Notice of Settlement was previously provided in full compliance with

the notice requirements of due process, federal law, the Constitution of the United States, and all

other applicable law.  Indeed, based on the Parties' stipulation, this Court previously ordered that

notice on Class Counsel was sufficient to notify all members of the Anderson Class Action,

including the Participating Anderson Class Claims.  (*See* Stipulation of Settlement, attached

hereto as **Exhibit "G,"** at 2 ("Notice to the undersigned class counsel shall be, and shall be

deemed to be, sufficient notice to all class members in the Dex-Cool Class Action and the

Anderson Class Action.").)

45.     The changes to the Anderson Class Action Settlement that the Parties agreed to in order to implement the settlement after GM's bankruptcy and that are contained in the Agreement do not require that any new or additional notice be given, particularly where, as here, the changes resulted in terms that provide the Participating Anderson Class Members with the Total Allowed Unsecured Claim that is equivalent to the approximate value of the benefits that would have been provided to the Participating Andersen Class Members under the Anderson Class Action Settlement.

46.     Moreover, the Debtors have already paid for notice to the Anderson Class and have *not* agreed to pay for any further notice; in fact the Agreement will be void if any further notice is required by this Court.  (*See* Agreement ¶ 1 ("The Parties further acknowledge and agree that, in the unlikely event that this Court requires any further notice to the Anderson Class, this Agreement shall be void and the Parties shall no longer be bound by this Agreement.").)  In these circumstances, no additional notice should be required.  *See Green,* 200 F.R.D. at 213 (ordering that "no notice be served when the cost of notice, to say nothing of the postage, would jeopardize, and likely destroy, the hard fought settlement agreement that the parties have presented to this Court"); *cf. Hainey v. Parrott,* 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("Furthermore, establishing a second opt-out period would not be in the best interests of the class because it would result in additional administrative costs, which in turn reduces the amount available for distribution.").

47.     Finally, there is no evidence of any collusion between the Parties to the Agreement, further indicating that no additional notice is required.  *See Green,* 200 F.R.D. at 213 (ordering no notice of settlement be given when "[f]irst, and most significantly, there is no evidence of collusion between the parties"); *Selby v. Principal Mut. Life Ins. Co.*, No. 98 Civ.

5283 (RLC), 2003 WL 22772330, at *4 (S.D.N.Y. Nov. 21, 2003) (ordering no notice of

settlement be given "where is no evidence of collusion between the parties, and the settlement

negotiations were conducted at arms-length").

48.    Based on the foregoing, this Court should find that the dissemination of

the Notice of Settlement satisfied the requirements of Rule 23(e) and due process, and no new

notice need be given regarding the Agreement.

## VII.    <u>Notice</u>

49.    Notice of this Motion has been provided to (i) Class Counsel, P.C.,

attorneys for Anderson and the Anderson Class, Girard Gibbs LLP (Attn.: Eric H. Gibbs, Esq.

and A. J. De Bartolomeo, Esq.), 601 California Street, Suite 1400, San Francisco, California

94108; and (ii) parties in interest in accordance with the Fifth Amended Order Pursuant to 11

U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case

Management Procedures, dated January 3, 2011 (ECF. No. 8360).  The Debtors submit that such

notice is sufficient and no other or further notice need be provided.

50.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       March 14, 2011

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession