**EXECUTION VERSION**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                          :
In re                                     :          **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY**, *et al.*, :          **09-50026 (REG)**
        **f/k/a General Motors Corp.**, *et al.* :
                                          :
                    **Debtors.**          :          **(Jointly Administered)**
                                          :
------------------------------------------------------------x

## AGREEMENT RESOLVING PROOF OF CLAIM NO. 51093
## AND IMPLEMENTING MODIFIED CLASS SETTLEMENT

This Agreement Resolving Proof of Claim No. 51093 and Implementing Modified Class Settlement (the "Agreement") is entered into as of March 14, 2011 (the "Effective Date") by and among Motors Liquidation Company ("MLC") and its affiliated debtors, as debtors in possession (collectively, the "Debtors"), and Plaintiff Jason Anderson ("Anderson"), on behalf of himself and the Anderson Class (defined below) (Anderson, together with the Debtors, collectively, the "Parties").

WHEREAS, Anderson filed a class action complaint on behalf of himself and the Anderson Class against General Motors Corporation ("GM") on May 18, 2004, in the Superior Court for the State of California, County of Los Angeles (the "California Court"), Case No. JCCP4396, alleging that GM violated California law, specifically the Unfair Competition Law ("UCL"), by creating an "adjustment program" under the Motor Vehicle Warranty Adjustment Programs statute ("MVWAP"), Civ. Code § 1795.90 *et. seq.*, allegedly without providing the Anderson Class with certain adjustment program notices and repair reimbursements concerning certain Silverado trucks allegedly exhibiting an abnormal engine knock or piston noise (the "Anderson Class Action"). A copy of the First Amended Anderson Class Action Complaint is attached as Exhibit "A";

**EXECUTION VERSION**

WHEREAS, the California Court issued the order granting class certification on November 8, 2006, a copy of which is attached as Exhibit "B";

WHEREAS, following substantial discovery, law and motion practice, class certification having been granted, a writ petition as to the form and notice of class certification having been denied, and two separate mandatory settlement conferences before a California state judge, GM and the Anderson Class reached a comprehensive claims-made stipulation of settlement of the Anderson Class Action (the "Anderson Class Action Settlement"), a copy of which is attached as Exhibit "C."

WHEREAS, under the terms of the settlement, GM agreed to reimburse class members who submitted valid, timely claims for: (i) monies spent on the purchase of a General Motors Protection Plan (the "GMPP") that otherwise would have been available to them for free under GM's allegedly unlawful adjustment program; and/or (ii) repair costs paid by class members to correct the abnormal engine knock or piston noise or on other specified engine repairs. GM also agreed that members of the Anderson Class with constant engine knock or piston noise concerns could request a free evaluation from a Chevrolet dealer and, if appropriate, obtain free repairs of the condition;

WHEREAS, on November 18, 2008, the California Court entered the Preliminary Approval Order (the "Preliminary Approval Order"), a copy of which is attached hereto as Exhibit "D," in which the California Court set a fairness hearing for March 5, 2009; set forth deadlines for objecting to the Anderson Class Action Settlement and appearing at the fairness hearing (the "Fairness Hearing"); approved the form of class notice (the "Class Action Settlement Notice"); approved the manner of providing notice, and preliminarily certified the following class: "All California owners and lessees of 1999-2003 model year Chevrolet Silverados equipped with a 4.8 liter (LR4), 5.3 liter (LM7), 6.0 liter (LQ4, L59) or 8.1 liter (L18) engines who (1) have an engine "knock, ping or slap" noise in their vehicles; and (2) were not given notice of the condition giving rise to or the terms and conditions of GM's Engine Knock Noise Adjustment Program" (collectively, the "Anderson Class"). For purposes of the Anderson Class Action Settlement and the class definition, "engine knock, ping or slap noise" was defined to have the same meaning as "Start Noise" (*i.e.*, piston or piston pin noise that occurs at initial start up and disappears shortly after the engine warms up) or "Constant Noise" (*i.e.*, piston or piston pin noise that is not Start Noise). Excluded from the Anderson Class were those California owners and lessees of 1999-2003 model year Chevrolet Silverados who timely requested to be excluded from the class;

WHEREAS, in accordance with that Preliminary Approval Order, GM mailed notice of the class action settlement, by first class mail, to approximately 240,000 California owners and lessees of model year 1999-2003 Silverado vehicles, a copy of which notice is attached hereto as Exhibit "E," and also posted a Spanish-language version of the Class Action Settlement Notice on Class Counsel's (defined below) website;

WHEREAS, on March 5, 2009, the California Court conducted its Fairness Hearing and entered its Final Judgment, a copy of which is attached as Exhibit "F," in which it certified the Anderson Class and finally approved the Anderson Class Action Settlement. In the Final Judgment, the California Court determined that the Anderson Class satisfied Section 382 of

**EXECUTION VERSION**

the California Code of Civil Procedure ("Section 382"), because: (i) the Anderson Class was so numerous that joinder of all members was impracticable; (ii) there were questions of law or fact common to the Anderson Class; (iii) Anderson's claim was typical of the claim of the Anderson Class members' claims; (iv) Anderson would fairly and adequately assert and protect the interests of the Anderson Class under the criteria set forth in Section 382; (v) questions of fact common to the Anderson Class predominated over factual questions affecting only individual members; and (vi) a class action provided a fair and efficient method for adjudication of the controversy;

WHEREAS, in the Final Judgment, the California Court also finally approved of the provisional designation of the law firm of Girard Gibbs LLP as class counsel ("Class Counsel") and Anderson as the representative plaintiff (the "Representative Plaintiff"), and also awarded Anderson as Representative Plaintiff an incentive award in the total sum of $7,500.00 (the "Incentive Award"), and Class Counsel a total sum of $1,950,000.00 in attorneys' fees (the "Attorneys' Fees") and $212,500.00 in documented costs and expenses ("Documented Costs and Expenses");

WHEREAS, in accordance with the Anderson Class Action Settlement and the Final Judgment approving the award of Attorneys' Fees, Incentive Award, and Documented Costs and Expenses, on or about March 16, 2009, GM deposited $2,258,000.00 in cash (the "Anderson Class Action Settlement Deposit") in an account established at Union Bank of California, which cash was then transferred by Class Counsel on or about May 7, 2009 to an attorney-client trust account (the "Attorney-Client Trust Account Deposit") established by Class Counsel in the Anderson Class Action;

WHEREAS, pursuant to the Anderson Class Action Settlement and Final Judgment, members of the Anderson Class were required to submit a claim form ("Claim Form") to obtain the benefits of the settlement. Accordingly, on March 26, 2009, GM as acting claims administrator, mailed Claim Forms to the approximately 240,000 members of the Anderson Class;

WHEREAS, the deadline for class members to submit and postmark valid and timely Claim Forms for settlement benefits (together with any necessary supporting documentation) to GM expired on May 11, 2009, and approximately 5,913 Claim Forms were submitted by Anderson Class members (collectively, the "Participating Anderson Class Members");

WHEREAS, on June 1, 2009, certain of the Debtors, including GM (the "Initial Debtors") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") before the United States Bankruptcy Court for the Southern District of New York (the "Court"), Case No. 09-50026 (REG). The bankruptcy stayed all proceedings relating to the implementation of the Anderson Class Action Settlement;

WHEREAS, on September 16, 2009, this Court entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating

**EXECUTION VERSION**

Thereto and Approving the Form and Manner of Notice Thereof establishing November 30, 2009 at 5:00 p.m. (Eastern) as the deadline to file proofs of claim against the Initial Debtors based on prepetition claims;

WHEREAS, on November 25, 2009 a proof of claim based on the Anderson Class Action Settlement was filed with this Court on behalf of the Anderson Class and assigned claim number 51093 (the "Anderson Proof of Claim"), asserting a claim in the amount of $10,000,000.00, for class consideration allegedly due pursuant to the Anderson Class Action Settlement for claim amounts due to the Participating Anderson Class Members (the "Claim");

WHEREAS, due to GM's bankruptcy, Debtors are unable to provide the Participating Anderson Class Members with the benefits originally envisioned in the Anderson Class Action Settlement, and, accordingly, the Parties request that this Court approve this Agreement to provide the Participating Anderson Class Members with the Total Allowed General Unsecured Claim (defined below) that is equivalent to the approximate value of those benefits;

WHEREAS, on December 1, 2009, this Court approved and entered the Stipulation and Order Between the Debtors and the Holders of Unliquidated Dex-Cool and Anderson Claims to Allow Class Proofs of Claim for Dex-Cool and Anderson Claimants (the "Class Claims Stipulation"), a copy of which is attached hereto as Exhibit "G," and through which the Debtors and the holders of Unliquidated Anderson Claims, defined in the Class Claims Stipulation as the claims made in connection with the Anderson Class Action that had not yet been liquidated pursuant to the terms of the Anderson Class Action Settlement, agreed that Class Counsel could file a class-wide proof of claim on behalf of all holders of Unliquidated Anderson Claims; and

WHEREAS after good-faith, arms' length negotiations, the Parties have reached an agreement to resolve the Anderson Proof of Claim and implement the Anderson Class Action Settlement through this Agreement;

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed by the Parties that:

1.      The Parties will jointly seek Court approval of this Agreement and seek to secure any factual findings or legal conclusions necessary to effectuate the purposes and goals of this Agreement and final approval thereof.  In particular, promptly after execution of this Agreement by all Parties, the Debtors shall file a motion seeking Court approval of the Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 and Rule 23 of the Federal Rules of Civil Procedure (the "Motion").  The Motion will confirm that under the terms of this Agreement, the only relief sought by the Anderson Class is the Total Allowed Unsecured Claim (as defined below) and that no other claims or amounts are sought from Debtors or asserted by the Anderson Class against Debtors.  The Motion will also confirm that, for purposes of this Court approving this Agreement only, the Parties acknowledge and stipulate to the validity of the Anderson Class's certification in the Anderson Class Action; that this Court, for purposes of granting the Motion, may take judicial notice of the March 5, 2009 order issued in the Anderson Class Action certifying the Anderson Class under Rule 382; and that this Court, in considering

**EXECUTION VERSION**

the Motion and implementation of the Anderson Class Action Settlement, need only address the class-action settlement factors addressed in Federal Rule Civil Procedure 23(e) ("Rule 23(e)"). Specifically, the Parties agree to request that this Court adopt the Notice of Settlement in the Anderson Class Action as sufficient under Rule 23(e) and find that it is not necessary to provide any further notice to the Anderson Class. Since the notice was previously provided to the Anderson Class in accordance with due process, the Anderson Parties (defined below) hereby acknowledge and agree that the Debtors shall not be responsible for any costs related to any further notice that this Court may order in connection with the implementation of this Agreement. The Parties further acknowledge and agree that, in the unlikely event that this Court requires any further notice to the Anderson Class, this Agreement shall be void and the Parties shall no longer be bound by this Agreement. It is acknowledged by the Parties that the Debtors' agreement not to challenge certification or Class Counsel's authority (through this Agreement and the Class Claims Stipulation) to proceed under Rule 7023 of the Federal Rules of Bankruptcy Procedure to file the Anderson Proof of Claim is based solely on the unique facts and circumstances of this particular Claim.

2.    This Agreement is subject to and shall be binding on the Parties only upon Court approval. "Court Approval" shall mean the entry by this Court in *In re Motors Liquidation Company, et al.*, Chapter 11 Case No. 09-50026 (REG), after notice and a hearing, of an order approving this Agreement, substantially in the form attached hereto as Exhibit "I", (the "Court Order"). "Court Approval Date" shall mean the date upon which the Court Order becomes Final (as defined below). In the event Court Approval is not granted or similar relief is not otherwise provided by this Court or in the event that the Court Approval Date does not occur, this Agreement shall be deemed to be null and void and no Party shall have any obligations to another Party arising out of this Agreement, save and except for the obligations and/or provisions set forth in Paragraphs 7, 8, 10, 12, 14, 15, and 16 hereof, which provisions are intended to survive the expiration or earlier termination of this Agreement. "Final" shall mean that the Court Order has been entered by this Court, and (i) the time to appeal or petition for certiorari has expired and no timely appeal or petition for certiorari shall then be pending, or (ii) if a timely appeal or writ of certiorari thereof has been sought, that the Court Order shall have been affirmed by the highest court to which such Court Order was appealed, or *certiorari* shall have been denied or reargument or rehearing on remand shall have been denied or resulted in no material modification of such Court Order, and the time to take any further appeal, petition for *certiorari*, or move for modification of such Court Order, or move for reargument or rehearing, or move for a new trial or to amend the judgment under Rule 59 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before this Court shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before this Court, may be filed with respect to such Court Order shall not cause such Court Order not to be Final.

3.    Subject to and upon execution by all Parties to this Agreement, the Anderson Proof of Claim shall be treated as an allowed general unsecured claim against MLC in the amount of $8,853,300.00 (the "Total Allowed Unsecured Claim"). Regardless of any challenge to this Agreement or the failure of this Agreement to become effective the Parties hereby agree that the Anderson Proof of Claim shall be estimated to be $8,853,300.00 for all purposes, including for Plan confirmation and distribution purposes.

**EXECUTION VERSION**

4.      As consideration for the Agreement, including the release contained herein, on the Court Approval Date, the Participating Anderson Class Members shall be granted the Total Allowed Unsecured Claim, which shall constitute, in the aggregate, a single allowed general unsecured claim by the Participating Anderson Class Members collectively against MLC in the amount of $8,853,300.00.  Class Counsel is authorized, following the Court Approval Date and without any additional approval from this Court, to (i) sell, transfer, assign, and/or otherwise monetize the Total Allowed Unsecured Claim, either individually or through a broker, and/or (ii) monetize any shares, warrants, options or other property received from Debtors on account of the Total Allowed Unsecured Claim as part of any confirmed Chapter 11 plan or plans in these chapter 11 cases (the "Plan") in any commercially reasonable manner.  The resulting cash proceeds from the foregoing activities shall be utilized by Class Counsel to make distributions, on a *pro rata* basis, to the Participating Anderson Class Members in accordance with the allocation plan (the "Plan of Allocation") attached hereto as Exhibit "H."  Class Counsel is solely responsible for administration and implementation of the Plan of Allocation and distribution of the cash proceeds resulting from the Total Allowed Unsecured Claim in accordance with this Agreement, and in no event shall the Debtors be responsible or liable for the administration of the Anderson class; administration or distribution of cash proceeds from the Total Allowed Unsecured Claim; or implementation of the Plan of Allocation.  Each of the Parties understands, agrees, and acknowledges that the *pro rata* nature of the reimbursement payments under each of the foregoing shall be paid from the cash proceeds resulting from the disposition, by Class Counsel, of the Total Allowed Unsecured Claim.  The Participating Anderson Class Members acknowledge and agree that the resulting cash proceeds likely will be insufficient to pay Participating Anderson Class Members in full.

5.      Upon entry of the Court Order and receipt by Class Counsel, on behalf of the Participating Anderson Class Members, of the Total Allowed Unsecured Claim, the Parties agree that the Claim and the Anderson Proof of Claim shall be superseded and replaced by the Total Allowed Unsecured Claim and the claims docket or registry may be so modified and amended without further order of this Court.  Within ten (10) business days of the date of entry of the Court Order, Anderson, as represented by Class Counsel, shall file the Court Order with the California Court.

6.      Upon entry by this Court of the Court Order and unless otherwise set forth herein, Anderson, the Anderson Class, and their affiliates, successors and assigns, and their agents, insurers, representatives, administrators, executors, trustees and attorneys (collectively, the "Anderson Parties"), shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns, including GM or its successors in interest ("New GM") (collectively, the "Debtor Parties"), and, except as set forth in this Agreement, the Anderson Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code), complaints, grievances, liabilities, obligations, promises, agreements, damages, causes of action, rights, debts, demands, controversies, costs, losses, and expenses (including attorneys' fees and expenses) whatsoever, including but not limited to claims under the UCL or California's MVWAP, under any municipal, local, state, or federal law, common or statutory, whether known or unknown, and connected with this Agreement and/or the Anderson Class Action Settlement and/or the Anderson Class Action against any of the Debtor Parties, and are hereby barred from asserting any and all claims whatsoever, whether known or "Unknown Claims" (defined below), presently existing, whether or not asserted, and whether found in fact

**EXECUTION VERSION**

or law or in equity, in existence as of the execution of this Agreement by the Anderson Parties (the "Settled Claims"). Nothing herein shall be construed as a release or waiver of any Party's rights or obligations under this Agreement. The Anderson Parties fully understand that the facts upon which the Agreement are based may hereafter be other than or different from facts now believed by either Party to be true, expressly accept and assume the risks of such possible differences in facts, and agree that this Agreement shall remain effective notwithstanding any such differences in facts. Notwithstanding anything to the contrary contained herein this Agreement or this Paragraph 6, nothing in this Agreement shall be construed as a release, settlement, or waiver by the Debtor Parties of any claims, including any claims, liabilities, obligations, rights, damages, causes of action, debts, or losses arising out of, concerning, or related to the Anderson Class Action Settlement Deposit, the Attorney-Client Trust Account Deposit, or interest earned thereon. Similarly, notwithstanding anything to the contrary contained herein this Agreement or this Paragraph 6, nothing in the Agreement shall be construed as a release, settlement, or waiver by the Anderson Parties or Class Counsel of any defenses to any claims asserted by the Debtor Parties arising out of, concerning, or related to the Anderson Class Action Settlement Deposit, the Attorney-Client Trust Account Deposit, or interest earned thereon. Nothing in this Agreement shall be admissible as evidence in connection with any disputes or litigation regarding the claims and defenses reserved by this Paragraph 6.

For purposes of this Agreement, "Unknown Claims" means any and all Settled Claims that the Anderson Parties do not know or suspect to exist in their favor upon the Effective Date, which if known by them, might have affected their decision with respect to the Agreement. With respect to any and all Settled Claims, the Anderson Parties stipulate and agree that they and each member of the Anderson Class shall be deemed to have, and by operation of law shall have, waived any and all provisions, rights, and benefits conferred by any law, rules, or regulations of any state or territory of the United States or any other country, or principle of common or civil law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Anderson Parties may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Settled Claims, but the Anderson Parties shall expressly have and each Anderson Class member shall be deemed to have, and by operation of law shall have, fully, finally, and forever settled and released any and all Settled Claims and Unknown Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and the members of the Anderson Class shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the settlement of which this release is a part.

**EXECUTION VERSION**

7.    By executing this Agreement, the Parties acknowledge that they (a) are not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Agreement; (b) have made their own investigation of the facts and are relying solely upon their own knowledge and the advice of their own legal counsel; (c) knowingly waive any claim that this Agreement was induced by any misrepresentation or nondisclosure and any right to rescind or avoid this Agreement based upon presently existing facts, known or unknown; and (d) are entering into this Agreement voluntarily, of their own free will, and without any coercion, undue influence, threat, or intimidation of any kind or type whatsoever.  The Parties stipulate that each Party is relying upon these representations and warranties in entering into this Agreement.  The representations and warranties contained in this Paragraph 7 shall survive the execution of this Agreement indefinitely.

8.    By entering into this Agreement, the Parties do not admit, and specifically deny, any violation of any contract, municipal, local, state, or federal law, common or statutory.  Neither the execution of this Agreement nor compliance with its terms, nor the consideration provided for herein shall constitute or be construed as an admission by any Party (or any Party's agents, representatives, attorneys, or employers) of any fault, wrongdoing, or liability whatsoever, and the Parties acknowledge that all such liability is expressly denied by the Debtors.  This Agreement has been entered into in release and compromise of claims as stated herein and to avoid the expense and burden of litigation.

9.    If any provision or term of this Agreement, other than those set forth in Paragraph 6 above, is held to be illegal, invalid, or unenforceable, such provision or term shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement.  Furthermore, in lieu of each such illegal, invalid, or unenforceable provision or term there shall be added automatically as a part of this Agreement another provision or term as similar to the illegal, invalid, or unenforceable provision as may be possible and that is legal, valid, and enforceable.

10.    As a condition precedent to any obligations or liabilities of the Debtor Parties, Anderson expressly represents and warrants to the Debtor Parties that (a) he is the lawful owner of certain of the claims and the potential claims released in this Agreement and release; (b) he has full capacity and authority to settle, compromise, and release the Anderson Class claims and potential claims and to enter into this Agreement on behalf of the Anderson Class; (c) no other person or entity has acquired or has been assigned, or will in the future acquire or have any right to assert, against any of the Debtor Parties any portion of the Anderson Class Action claims or any other potential claims released in this Agreement; and (d) he knows of no other person or entity that intends to assert a claim by, through, under, or on behalf of any of the Anderson Parties.  The representations and warranties contained in this Paragraph 10 shall survive the execution of this Agreement indefinitely.

11.    This Agreement, which expressly incorporates the Anderson Class Action Settlement (as modified herein), contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties

**EXECUTION VERSION**

relating thereto. This Agreement is subject in all respects to consent by the statutory committee of unsecured creditors, and if such consent is not obtained by the Debtors, then the Debtors may determine, in their sole discretion, whether to proceed forward with seeking Court approval of the Agreement or abandon the Agreement.

12.     This Agreement may not be modified other than by signed writing executed by the Parties or by order of this Court.

13.     Each person who executes this Agreement represents that he or she is duly authorized to do so on behalf of the respective Parties hereto and that each such party has full knowledge and has consented to this Agreement.

14.     This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Agreement to present any copy, copies, or facsimiles signed by the Parties hereto.

15.     This Agreement shall be exclusively governed by and construed and enforced in accordance with the laws of the state of New York, without regard to conflicts of law principles thereof. This Court shall retain exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Agreement.

16.     Each of the Parties understands, agrees, and acknowledges that all of the Parties shall be deemed to be the drafters of this Agreement and any ambiguity in or dispute regarding the interpretation of this Agreement shall not be resolved by any rule of interpretation providing for interpretation against the party that causes the uncertainty to exist or against any party as the drafter.

17.     The Parties agree that the Court Order shall provide that, notwithstanding entry of the Court Order, this Court shall retain continuing jurisdiction over the Parties to further effectuate the Court Order and the terms of this Agreement.

18.     If notice need be given to the Parties for the purposes of this Agreement, any performance thereunder, or any motions or orders related to the Agreement, under the Federal Rules of Civil Procedure, the Bankruptcy Rules, or otherwise, notice shall be transmitted as follows:

If to the Anderson Parties, delivered or faxed to:

> Eric H. Gibbs
> A.J. De Bartolomeo
> Elizabeth Pritzker
> Girard Gibbs LLP
> 601 California Street, Suite 1400
> San Francisco, CA 94108

If to Debtors, delivered or faxed to:

**EXECUTION VERSION**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinksy
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York New York 10153

**THE UNDERSIGNED WARRANT THAT THEY HAVE READ THE TERMS OF THIS AGREEMENT, HAVE HAD THE ADVICE OF COUNSEL OR THE OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING, UNDERSTANDING AND EXECUTING THE AGREEMENT, AND HAVE FULL KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS AGREEMENT.**

**[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK]**

**EXECUTION VERSION**

| MOTORS LIQUIDATION COMPANY AND AFFILIATED DEBTORS | JASON ANDERSON, ON BEHALF OF HIMSELF AND THE ANDERSON CLASS |
|---|---|
| By: _Carrianne Basler_ <br><br> Print Name: _Carrianne Basler_ <br> Title: _Vice President_ | By: _____ <br><br> Print Name: _____ <br> Title: _____ |
| Dated: March _14_, 2011 | Dated: March ___, 2011 |

| GIRARD GIBBS LLP, AS CLASS COUNSEL |
|---|
| By: _____ <br><br> Print Name: _____ <br> Title: _____ |
| Dated: March ___, 2011 |

EXECUTION VERSION

| MOTORS LIQUIDATION COMPANY AND AFFILIATED DEBTORS | JASON ANDERSON, ON BEHALF OF HIMSELF AND THE ANDERSON CLASS |
|---|---|
| By: _____ | By: _____ |
| Print Name:_____ | Print Name: JASON ANDERSON |
| Title:_____ | Title:_____ |
| Dated:  March ___, 2011 | Dated:  March 14, 2011 |

| GIRARD GIBBS LLP, AS CLASS COUNSEL |
|---|
| By: _____ |
| Print Name:_____ |
| Title:_____ |
| Dated:  March ___, 2011 |

**EXECUTION VERSION**

| MOTORS LIQUIDATION COMPANY AND AFFILIATED DEBTORS | JASON ANDERSON, ON BEHALF OF HIMSELF AND THE ANDERSON CLASS |
|---|---|
| By: _____ | By: _____ |
| Print Name:_____ | Print Name:_____ |
| Title:_____ | Title:_____ |
| Dated:  March ___, 2011 | Dated:  March ___, 2011 |

| GIRARD GIBBS LLP, AS CLASS COUNSEL |
|---|
| By: _____ |
| Print Name: _Eric Gibbs_____ |
| Title: _partner_____ |
| Dated:  March _14_, 2011 |

US_ACTIVE:\43501769\24\72240.0639

# EXHIBIT A

Eric H. Gibbs (State Bar No. 178658)
Dylan Hughes (State Bar No. 209113)
Allison L. Ehlert (State Bar No. 230362)
**GIRARD GIBBS & De BARTOLOMEO LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Counsel for Plaintiff, the Proposed Class,
and the General Public of California

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF ORANGE

| | |
|---|---|
| JASON ANDERSON, on behalf of himself and all others similarly situated and on behalf of the General Public of California, ) | Case No. 04CC00554 |
| ) | The Honorable C. Robert Jameson |
| Plaintiff, ) | **CLASS ACTION** |
| v. ) | **FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES.** |
| GENERAL MOTORS CORPORATION, a Delaware Corporation; and DOES 1 through 20, ) | |
| Defendant. ) | |

1    Jason Anderson ("Plaintiff"), by and through his attorneys, based on his individual experiences

2    and the investigation of counsel, and on information and belief, alleges on behalf of himself and the

3    proposed plaintiff class as defined herein, and on behalf of the general public, as follows:

4                                              I.

5                                   NATURE OF THE CASE

6        1.    In 1998, GM began installing newly designed engines in its Chevrolet Silverado trucks

7    ("Class Vehicles").  Consumers complain that the new engines installed in Class Vehicles suffer from a

8    condition known as "piston slap."  Piston slap occurs when the piston bangs against the cylinder wall due

9    to excess clearance between the cylinder and the cylinder wall.  To pacify consumers who complain of

10   piston slap, GM has adopted a program and policy whereby it promises to make repairs to correct defects

11   related to materials or workmanship in the engine occurring during a specified period and extending

12   beyond the consumer's bumper-to-bumper warranty.  In other words, GM has adopted an "adjustment

13   program" for owners who complain that their vehicles manifest piston slap ("Piston Slap Adjustment

14   Program").  Because of the secret nature of GM's Piston Slap Adjustment Program, Class members paid

15   and continue to pay for damages that, unknown to them, are covered by GM's Piston Slap Adjustment

16   Program; and Class members bought and continue to buy extended warranties when, if offered the secret

17   Piston Slap Adjustment Program, they would not.

18       2.    As alleged herein, GM's conduct related to the Piston Slap Adjustment Program violates

19   the Motor Vehicle Warranty Adjustment Programs statute, Civil Code Sections 1795.90 et seq., and the

20   Unfair Competition Law, Business and Professions Code Sections 17200 et seq.  On behalf of himself

21   and the proposed Plaintiff Class (as defined below), and on behalf of the general public of California,

22   Plaintiff seeks declaratory, injunctive, and equitable relief, including rescission, restitution, and

23   disgorgement.

24                                             II.

25                                 JURISDICTION AND VENUE

26       3.    This action asserts claims under the Unfair Competition Law, Business and Professions

27   Code Sections 17200 et seq., and the declaratory relief statute, Code of Civil Procedure Section 1060.

28   This Court has jurisdiction over this class action under Article 6, Section 10 of the California

                                              1

1  Constitution and Code of Civil Procedure Section 410.10. This Court has jurisdiction over GM, as GM

2  is registered to conduct business within California and conducts substantial business within California.

3       4.     Venue is proper in this Court under Code of Civil Procedure Section 395.5, because,

4  among other things, at the time he filed this action, Plaintiff was a resident of Orange County,

5  California; many of the events and/or legal duties complained of herein occurred in or emanated from

6  Orange County, California, or were supposed to occur in or emanate from Orange County, California;

7  and GM conducts substantial business within Orange County, California.

8       5.     The total amount in controversy as to the Plaintiff and each individual member of the

9  proposed Plaintiff Class defined herein does not exceed seventy-four thousand nine hundred ninety-nine

10 dollars ($74,999), including treble or punitive damages, interest, and costs. Plaintiff and each individual

11 member of the proposed Plaintiff Class therefore disclaim any damages and/or restitution in excess of

12 $74,999 per individual proposed Plaintiff Class member. In addition, neither Plaintiff nor any member

13 of the proposed Plaintiff Class asserts any federal question.

**III.**

**PARTIES**

16      6.     Through June 2004, Plaintiff Jason Anderson was a resident of Orange County,

17 California. Plaintiff purchased a new 2002 Chevrolet Silverado in 2001. Plaintiff's vehicle initially

18 manifested piston slap at approximately 10,000 miles, and continues to suffer from piston slap today.

19 GM has not provided the Piston Slap Adjustment Program to Plaintiff.

20      7.     Defendant GM is a Delaware Corporation, headquartered in Wayne County, Michigan

21 with its principal place of business located in Wayne County, Michigan. GM is the world's largest

22 manufacturer of motor vehicles. GM designs, builds, and markets cars and trucks worldwide and has

23 done so since 1931.

24      8.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1-

25 100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this

26 complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes

27 and thereon alleges that each of the fictitiously named Defendants are agents, employees, or affiliates of

28 Defendant and may be served with process within the state of California, and are responsible in some

1    manner for the unlawful conduct herein alleged.

2        9.    Unless otherwise stated, Defendant GM and Does 1-100 are referred to collectively

3    herein as "Defendant" or "GM."

4    **IV.**

5    **TOLLING OR NON-ACCRUAL OF APPLICABLE STATUTES OF LIMITATION**

6        10.    Any applicable statutes of limitations have been tolled or have not run because GM

7    knowingly and actively concealed and denied the facts as alleged herein. GM had actual or constructive

8    knowledge of the wrongful courses of action alleged herein. Plaintiff, Class members and the general

9    public of California have been kept in ignorance of information essential to the pursuit of these claims,

10    without any fault or lack of diligence on their part. In fact, GM fraudulently and deceitfully concealed

11    and misrepresented to the public material facts alleged herein. Plaintiff, Class members, and the general

12    public of California did not discover the facts constituting GM's illegal business practices until a date

13    within the limitations period governing this action, and promptly exercised due diligence by filing this

14    complaint. Plaintiff, Class members, and the general public of California were not at fault for failing to

15    discover GM's misconduct sooner, and had no actual or presumptive knowledge of the facts of GM's

16    misconduct to put them on inquiry notice. Plaintiff, Class members and the general public could not

17    reasonably have discovered GM's misrepresentations and/or material omissions before the filing of this

18    action and, therefore, their claims accrued on that date, and/or any statute of limitations was tolled until

19    that date.

20        11.    GM is, and was, under a continuing duty to disclose at the time of purchase, after

21    purchase, upon manifestation of piston slap, and upon customers complaining of piston slap, that it

22    offers and provides the Piston Slap Adjustment Program, free of charge, to purchasers of Class Vehicles.

23    Because of GM's concealment of such material facts, GM is estopped from relying on any statute of

24    limitations defense.

25

26

27

28

## V.

## SUBSTANTIVE ALLEGATIONS

### Chevrolet Silverado

12.    GM manufactures the Chevrolet Silverado, a pick-up truck available in several different models.  GM advertises the Silverado as "the most dependable, longest lasting truck on the road."  Between 1999 and 2003, the Silverado was the second best selling vehicle in the United States.

### Piston Slap

13.    In 1998 GM redesigned many of its engines, and consequently installed them in certain 1999-2003 model year vehicles, including the Chevrolet Silverado.

14.    GM's redesigned engines suffer from, among other things, piston slap.  Piston slap occurs when there is excessive lateral movement of the piston causing it to bang against the cylinder wall.  Piston slap produces an audible sound that ranges from a loud knocking noise to a ticking noise similar to that of a diesel engine.

15.    Vehicles purchased new from GM do not initially exhibit piston slap, and thus do not produce knocking, ticking, or otherwise unexpected or abnormal noises.  Consequently, upon purchase, Plaintiff and Class members were unaware that their vehicles suffered from piston slap.

16.    Piston slap typically begins within the first 15,000 miles of use.  Class Vehicle owners typically first notice piston slap as a tapping or ticking noise upon startup.  With vehicle use, the ticking noise progresses into a loud knocking noise at startup, and with additional use, the knocking progresses to a continuous and chronic knocking noise that is louder when the engine is stressed such as when the vehicle is ascending a hill, quickly accelerating, or towing.

17.    According to General Motors, experts in the field, and/or consumers, piston slap can damage the vehicle in which it occurs by causing piston and cylinder wall scuffing, scoring, and scratching; piston skirt and seal failure; reduced compressions; increased oil and fuel consumption; a rough idle; reduced power and performance; metal in the oil system; a loud knocking and/or ticking noise; and/or excessive emissions due to incomplete combustion, excessive oil combustion, and/or combustion chamber blow-by.

18.    Class Vehicle engines' suffer from piston slap at far greater rates and with greater

4

1    severity and uniformity than other manufacturers' engines and/or than GM intended or designed.

2    19.    Within the first few years of customers complaining about piston slap, GM told

3    customers that there would be an updated piston and/or fix in the spring or summer of 2002. GM has yet

4    to provide Class members with an updated piston and/or fix free of charge.

5    **GM's Secret Piston Slap Adjustment Program**

6    20.    Unknown to most Class members, GM has a secret adjustment program whereby it

7    promises to make repairs to correct defects related to materials or workmanship in Class Vehicle engines

8    during a specified period, and extending beyond the consumer's bumper-to-bumper warranty. This

9    Piston Slap Adjustment Program is part of GM's nationwide vehicle database and has official

10    authorization and/or warranty codes.

11    21.    Because of the latent nature of piston slap and GM's pattern of failing to disclose,

12    concealing, and/or misleading purchasers of Class Vehicles about the existence of its Piston Slap

13    Adjustment Program, Class members pay for repairs that should be covered by GM's Piston Slap

14    Adjustment Program and purchase extended warranties or repair contracts when they otherwise would

15    not.

16    22.    In summary, GM has failed to inform the general public and all people who purchased

17    Class Vehicles that it offers, free of charge, the Piston Slap Adjustment Program in connection with the

18    piston slap problem. Moreover, GM fails to inform prospective purchasers of Class Vehicles of the

19    Piston Slap Adjustment Program. The net result is that only a fraction of Class Vehicle owners are

20    notified of and/or benefit from GM's Piston Slap Adjustment Program. Consequently, Class Members

21    purchased and continue to purchase Class Vehicles when they otherwise would not; Class members paid

22    and continue to pay for damages and repairs that, unknown to them, are covered by GM's Piston Slap

23    Adjustment Program; and Class members bought and continue to buy extended warranties or repair

24    contracts when, if offered the Piston Slap Adjustment Program, they would not.

25    **Plaintiff's Experiences**

26    23.    At approximately 10,000 miles, Plaintiff noticed a knocking noise upon starting his

27    vehicle and during daily use. The knocking noise has become progressively more severe with use and is

28    more prevalent when the engine is stressed such as when it is ascending a hill or quickly accelerating.

5

Plaintiff complained to GM about the piston slap within the bumper-to-bumper warranty. Plaintiff was never told about the Piston Slap Adjustment Program and, concerned about the damage piston slap might cause, purchased an extended warranty for $1,500.

### VI.

### CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action on behalf of himself and a class of persons (the "Class") initially defined as follows:

**All residents of California who purchased or leased a 1999, 2000, 2001, 2002, or 2003 Chevrolet Silverado.**

Excluded from the Class is the Defendant, any entity in which the Defendant has a controlling interest, any of the officers, directors, or employees of the Defendant, the legal representatives, heirs, successors, and assigns of the Defendant, anyone employed with Plaintiff's counsel's firm, and any Judge to whom this case is assigned, and his or her immediate family.

25.     For the reasons stated below, this action has been brought and may properly be maintained on behalf of California residents, pursuant to the provisions of Code of Civil Procedure Section 382 and Civil Code Sections 1750 et seq.

26.     <u>Numerosity of the Class</u> – Code Civ. Proc. § 382; Civ. Code § 1781(b)(1): Members of the Class are so numerous that their individual joinder herein is impracticable. Thus, although the precise number of Class members and their addresses are unknown to Plaintiff, they are readily ascertainable from GM's records. Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

27.     <u>Existence and Predominance of Common Questions of Fact and Law</u> – Code Civ. Proc. § 382; Civ. Code § 1781(b)(2): Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual Class members. These common legal and factual questions include:

a.     Whether GM offers the Piston Slap Adjustment Program free of charge to Class Vehicle owners who assert that their vehicles manifest piston slap;

b.     Whether GM's Piston Slap Adjustment Program constitutes an "adjustment

1  program" within the meaning of Section 1795.90;

2       c.      Whether GM has a duty to notify all owners of Class Vehicles about the Piston

3  Slap Adjustment Program, and if so, whether GM complied with its duty;

4       d.      Whether GM has a duty to notify all owners of Class Vehicles of the terms and

5  conditions of the Piston Slap Adjustment Program, and if so, whether GM complied with its duty;

6       e.      Whether GM has a duty to provide coverage under the Piston Slap Adjustment

7  Program to all eligible owners of Class Vehicles, and if so, whether GM complied with its duty;

8       f.      Whether GM has a duty to provide reimbursement to owners of Class Vehicles for

9  expenses related to repairs, and/or the purchase of extended warranties or repair contracts incurred prior

10  to having knowledge of the Piston Slap Adjustment Program, and if so, whether GM complied with its

11  duty;

12       g.      Whether GM engaged in unlawful, unfair, or fraudulent business practices, as

13  alleged herein, and thus violated the Unfair Competition Law;

14       h.      Whether GM violated Civil Code Sections 1795.90 et seq. as alleged herein, and

15  thus violated the Unfair Competition Law; and

16       i.      Whether Plaintiff and Class members are entitled to a declaration of their rights in

17  connection with the Piston Slap Adjustment Program under Code of Civil Procedure Section 1060.

18       j.      Whether Plaintiff and Class members are entitled to equitable relief in the form of

19  an injunction, and/or restitution, and/or disgorgement, and/or rescission.

20       28.    **Typicality** – Code Civ. Pro. § 382; Civ. Code § 1781(b)(3):  Plaintiff's claims are

21  typical of the claims of Class members because, among other things, Plaintiff purchased a Class Vehicle

22  that suffers from piston slap and Plaintiff was not provided benefits under the Piston Slap Adjustment

23  Program.

24       29.    **Adequacy** – Code Civ. Pro § 382; Civ. Code § 1781(b)(4):  Plaintiff is an adequate

25  representative of the Class because his interests do not conflict with the interests of the members of the

26  Class he seeks to represent.  Plaintiff has retained counsel competent and experienced in complex class

27  action litigation and Plaintiff intends to prosecute this action vigorously.  The interests of members of

28  the Class will be fairly and adequately protected by Plaintiff and his counsel.

7

30.    **Superiority** – Code Civ. Proc. § 382: The class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. Further, it would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

31.    In the alternative, the Class may be certified because:

a.    the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members that would establish incompatible standards of conduct for Defendant;

b.    the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c.    Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## FIRST CAUSE OF ACTION

### (Violation of the Unfair Competition Law - Unlawful Business Practices)

32.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. Plaintiff asserts this cause of action on behalf of himself and all others similarly situated, and on behalf of the general public of the State of California.

33.    Plaintiff and Class members are "consumers" within the meaning of Civil Code Section

8

1    1795.90(a).

2          34.     Defendant is a "manufacturer" within the meaning of Civil Code Section 1795.90(b).

3          35.     Class Vehicles are "motor vehicles" within the meaning of Civil Code Section

4    1795.90(e).

5          36.     Class members who leased a Class Vehicle are "lessees" within the meaning of Civil

6    Code Section 1795.90(f).

7          37.     Defendant's program and/or policy of offering the Piston Slap Adjustment Program, free

8    of charge, to customers who complain of piston slap and/or the damage piston slap causes is an

9    "adjustment program" within the meaning of Civil Code Section 1795.90(d) because a) the Piston Slap

10   Adjustment Program is a policy and/or procedure of extending certain consumers' warranties beyond

11   their stated limits; and/or b) the Piston Slap Adjustment Program pays for all or a part of the cost of

12   repairing conditions that may substantially affect vehicle durability, reliability, and/or performance.

13   Defendant adopted the Piston Slap Adjustment Program at least 91 days ago.

14         38.     Defendant has failed to comply with Civil Code Sections 1795.90 et seq. Specifically,

15   Defendant has not: a) notified by first-class mail, or otherwise, all affected Class members of

16   Defendant's Piston Slap Adjustment Program, and its terms and conditions; b) provided coverage under

17   the Piston Slap Adjustment Program to all Class members; c) reimbursed owners of Class Vehicles for

18   repair or other expenses, including for the purchase of extended warranties or repair contracts they

19   incurred prior to having knowledge of the Piston Slap Adjustment Program; and d) notified its dealers,

20   in writing, of all the terms and conditions of the Piston Slap Adjustment Program.

21         39.     Defendant's acts, conduct and practices, as alleged herein, were unlawful in that

22   Defendant violated the Motor Vehicle Warranty Adjustment Programs Act, Civil Code Sections 1795.90

23   et seq., as alleged herein, and thus violated the Unfair Competition Law, Business and Professions Code

24   Sections 17200 et seq.

25         40.     As a direct and proximate result of Defendant's unlawful business practices as alleged

26   herein, Defendant was able to: (a) sell more extended warranties and/or repair contracts than it otherwise

27   would have; (b) sell more vehicles than it otherwise would have; (c) charge inflated prices for GM

28   vehicles; (d) save money on costly warranty repairs; and/or (e) charge for vehicle repairs. Accordingly,

9

1  Defendant received and is in possession of excessive and unjust revenues and profits. Defendant directly

2  received monies from Plaintiff and Class members and/or Plaintiff's and Class members' monies are

3  directly traceable to Defendant and/or Defendant's legal duties and obligations run directly to Plaintiff

4  and Class members.

5      41.    Plaintiff, on behalf of himself and all others similarly situated, and on behalf of the

6  general public of California, seeks rescission, disgorgement of all profits obtained from unfair

7  competition, an injunction prohibiting Defendant from continuing in such practices, a declaration of

8  rights concerning Defendant's Piston Slap Adjustment Program, restitution, and any other relief the

9  Court deems acceptable in accordance with Section 17203 of the Business and Professions Code.

10  **SECOND CAUSE OF ACTION**

11  **(Violation of the Unfair Competition Law - Unfair and Fraudulent Practices)**

12      42.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

13  Plaintiff asserts this cause of action on behalf of himself and all others similarly situated, and on behalf

14  of the general public of the State of California.

15      43.    Defendant's acts, conduct, and practices, as described herein, constitute unfair,

16  fraudulent, and deceptive business acts and practices within the meaning of California Business and

17  Professions Code Sections 17200 et seq.

18      44.    Defendant's acts, conduct, and practices, as alleged herein, were unfair in that any utility

19  for Defendant's conduct is outweighed by the gravity of the consequences to Plaintiff, Class members,

20  and the general public, and/or Defendant's conduct is immoral, unethical, oppressive, unscrupulous or

21  substantially injurious to Plaintiff, Class members and the general public.

22      45.    Defendant's acts, conduct and practices, as alleged herein, were fraudulent in that they

23  were likely to deceive Plaintiff, Class members, and the general public.

24      46.    Defendant's unfair, fraudulent, and deceptive business acts and practices are

25  described herein and include, but are not limited to:

26      a.    concealing and/or failing to disclose that GM has a policy of offering the Piston

27  Slap Adjustment Program to purchasers and/or lessees of Class Vehicles whose owners assert that their

28  vehicles suffer from piston slap;

10

b.      failing to disclose at the time of sale and/or lease of Class Vehicles that there is a

Piston Slap Adjustment Program for Class Vehicles;

c.      failing to disclose to all Class members who complained of piston slap that GM

has a Piston Slap Adjustment Program; and

d.      failing to notify all Class members of the Piston Slap Adjustment Program.

47.      As a direct and proximate result of Defendant's unlawful business practices as alleged

herein, Defendant was able to: (a) sell more extended warranties and/or repair contracts than it otherwise

would have; (b) sell more vehicles than it otherwise would have; (c) charge inflated prices for GM

vehicles; (d) save money on costly warranty repairs; and/or (e) charge for vehicle repairs. Accordingly,

Defendant received and is in possession of excessive and unjust revenues and profits. Defendant directly

received monies from Plaintiff and Class members and/or Plaintiff's and Class members' monies are

directly traceable to Defendant and/or Defendant's legal duties and obligations run directly to Plaintiff

and Class members.

48.      Plaintiff, on behalf of himself and all others similarly situated, and where

appropriate, on behalf of the general public of California, seeks rescission, disgorgement of all profits

obtained from unfair competition, an injunction prohibiting Defendant from continuing in such practices,

a declaration of rights concerning piston slap, restitution, and any other relief the Court deems

acceptable in accordance with Section 17203 of the Business and Professions Code.

### THIRD CAUSE OF ACTION

### (For Declaratory Relief Pursuant to Code of Civil Procedure Section 1060)

49.      Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein.

Plaintiff asserts this cause of action on behalf of himself and all others similarly situated, and on behalf

of the general public of the State of California.

50.      An actual controversy, over which this Court has jurisdiction, has arisen and now exists

between the parties relating to the legal rights and duties of Plaintiff and Defendant for which Plaintiff

desires a declaration of rights.

51.      Defendant's acts and conduct violate the Unfair Competition Law, Business and

Professions Code Sections 17200 et seq., because Defendant has failed to comply with the Motor

11

1 | Vehicle Warranty Adjustment Programs Act, Civil Code Sections 1795.90 et seq., in that Defendant has

2 | not notified Plaintiff and Class members about the Piston Slap Adjustment Program and/or provided

3 | them with coverage under the Program.

4 |     52.    A declaratory judgement is necessary to determine Plaintiff's rights in connection with

5 | the Piston Slap Adjustment Program, including Plaintiff's right to notice of the Program and coverage

6 | under the Program, in accordance with the requirements of Civil Code Sections 1795.90 et seq.

7 |     WHEREFORE, Plaintiff, on Plaintiff's own behalf and on behalf of the Class, and where

8 | appropriate on behalf of the general public of California, prays for judgment as follows:

9 |     a.    For an order certifying the Plaintiff Class and appointing Plaintiff and his counsel to

10 | represent the Class;

11 |     b.    For an order awarding Plaintiff and the members of the Class restitution, disgorgement,

12 | and/or other equitable relief as the Court deems proper;

13 |     c.    For an order enjoining Defendant from continuing to engage in unlawful business

14 | practices, as alleged herein;

15 |     d.    For an order awarding Plaintiff and the members of the Class pre-judgment and post-

16 | judgment interest;

17 |     e.    For an order awarding Plaintiff and the members of the Class reasonable attorneys' fees

18 | and costs of suit, including expert witness fees, pursuant to, among other things, Code of Civil Procedure

19 | Section 1021.5;

20 |     f.    For an order declaring that GM's acts and practices whereby it has offered some, but not

21 | all, Class members an extended warranty in the form of the Piston Slap Adjustment Program violate

22 | Sections 1795.90 et seq.;

23 |     g.    For an order declaring that GM must comply with Sections 1795.90 et seq.; and

24 |     h.    For an order awarding such other and further relief as this Court may deem just and

25 | proper.

26 | //

27 | //

28 | //

1

## DEMAND FOR JURY TRIAL

2    Plaintiff hereby demands a trial by jury on all claims so triable.

3                                          Respectfully submitted,

4

5    Dated: August 13, 2004               by: _____
                                               Eric H. Gibbs
6

7    Dylan Hughes
     Allison Ehlert
8    **GIRARD GIBBS & De BARTOLOMEO LLP**
     601 California Street, Suite 1400
9    San Francisco, California 94108
     Telephone: (415) 981-4800
10   Facsimile: (415) 981-4846

11   Richard J. Doherty
     O. Randolph Bragg
12   **HORWITZ, HORWITZ & ASSOCIATES, LTD.**
     25 E. Washington, Suite 900
13   Chicago, Illinois 60602
     Telephone: (312) 372-8822
     Facsimile: (312) 372-1673
14

15   Mark S. Baumkel
     30200 Telegraph Rd.
16   Suite 200
     Bingham Farms, MI 48025
17   Telephone: (248) 642-0444
     Facsimile: (248) 642-6661

18   Attorneys for Plaintiff, the Proposed Class, and
     the General Public of California
19

20

21

22

23

24

25

26

27

28

---

13

FIRST AMENDED CLASS ACTION COMPLAINT
CASE NO. 04CC00554

## CERTIFICATE OF SERVICE

I, Sue M. Querubin, hereby declare as follows:

I am employed by Girard Gibbs & De Bartolomeo, A Limited Liability Partnership, 601 California Street, Suite 1400, San Francisco, California 94108. I am over the age of eighteen years and am not a party to this action. On August 13, 2004, I served the within document(s):

1.    **FIRST AMENDED CLASS ACTION COMPLAINT FOR UNLAWFUL, UNFAIR AND FRAUDULENT BUSINESS PRACTICES.**

on:

> Wallace M. Allan
> Gregory R. Oxford
> Eric Y. Kizirian
> **O'MELVENY & MYERS LLP**
> 400 South Hope Street
> Los Angeles, California 90071
> Telephone: (213) 430-6645
> Facsimile: (213) 430-6407

__X__  by placing the document(s) listed above for collection and mailing following the firm's ordinary business practice in a sealed envelope with postage thereon fully prepaid for deposit in the United States mail at San Francisco, California addressed as set forth below.

_____  by personally delivering the document(s) listed above the person(s) at the address(es) set forth below.

_____  by causing personal delivery by _____ of the document(s) listed above to the person(s) at the address(es) set forth above.

_____  by depositing the document(s) listed above in a sealed envelope with delivery fees provided for a FedEx pick up box or office designated for overnight delivery, and addressed as set forth below.

_____  by transmitting via facsimile the above listed document(s) to the fax number(s) set forth below on this date.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct, executed August 13, 2004, at San Francisco, California.

Sue M. Querubin

CERTIFICATE OF SERVICE
CASE NO. 04CC00554

**Christopher Eandi**

| | |
|---|---|
| **om:** | Complex Civil EFiling [efilecomplex@occourts.org] |
| **ent:** | Friday, August 13, 2004 4:06 PM |
| **To:** | cme@girardgibbs.com |
| **Subject:** | Re: Efiling Case: 04CC00554 - Tracking Number: 08132004160445-358 |

Your Filing has been RECEIVED by the Superior Court.  Your Filing is not
FILED at this point.

You will receive another notification when the court ACCEPTS or REJECTS
your FILING.

Filings are only processed during normal work hours.  All Filings received
after 5pm will be processed and considered filed on the next business day.

Superior Court of California - County of Orange                                    Page 1 of 1



### Home





- **Calendar Info**
- **Case Info**
- **Rulings**
  **New Education**
  **Website!**

**Court Hours**

**Court Rules (local)**
**(Updated 8/1)**

**Employment**
**Opportunities**

**Fee Schedule**

**Forms-All**

**Forms-Search**

**Frequently Asked**
**Questions-FAQs**

**Judicial**
**Departments**

**Judicial Officers**

**Jury Services**

**Notices**

**Links**

**Telephone**
**Numbers**

**Traffic Citation**
**Internet Payment**

🖶 Printer Friendly Version

# Complex Civil E-Filing was Sent

Your Filing has been sent to the Court with a timestamp of **13-Aug-04, 04:04 PM** with
Tracking Number **08132004160445-358.**
All filings sent to the court after 5pm will be considered submitted on the next business
day.

Court Staff only process EFilings between the hours of 8am and 5pm, Monday through
Friday.



Home | Gen Info | Locations | Civil | Criminal | Family | Grand Jury | Juvenile |
Probate | Small Claims | Traffic

To send feedback or questions for the court: Feedback
To send comments or errors about the website: Webmaster

Return To Orange County Superior Court Home Page

County of Orange Website

# EXHIBIT B

**ORIGINAL**

1  Daniel C. Girard (State Bar No. 114826)
2  Elizabeth C. Pritzker (State Bar No. 146267)
   Dylan Hughes (State Bar No. 209113)
3  Lindy K. Lucero (State Bar No. 229582)
   **GIRARD GIBBS LLP**
4  601 California Street, Suite 1400
   San Francisco, California 94108
5  Telephone: (415) 981-4800
6  Facsimile: (415) 981-4846

7  Attorneys for Plaintiff Jason Anderson

8

9

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                      COUNTY OF LOS ANGELES

12

13  **GENERAL MOTORS CASES,**                    )  Case No. JCCP 4396
14                                               )
15  Included Actions:                            )  **CLASS ACTION**
                                                 )
16     Anderson v. General Motors Corp.          )  [~~PROPOSED~~] **ORDER GRANTING**
                                                 )  **PLAINTIFF ANDERSON'S MOTION FOR**
17     Peiten v. General Motors Corp.            )  **CLASS CERTIFICATION**
                                                 )
18     Ewing v. General Motors Corp.             )
                                                 )  <u>Further Hearing Date</u>: November 8, 2006
19                                               )  <u>Further Hearing Time</u>: 10:30 a.m.
                                                 )  <u>Dept</u>:   CCW 322
20                                               )  <u>Judge</u>:   Hon. Peter D. Lichtman
21                                               )

22

23

24

25

26

27

28

---

1



RECEIVED
OCT 0 5 2006
By

ORIGINAL FILED
NOV 0 8 2006
LOS ANGELES
SUPERIOR COURT

FAXED

1    Plaintiff Jason Anderson's ("Plaintiff") Motion for Class Certification came on regularly for

2   hearing on July 13, 2006.  On July 25, 2006, the Court issued a minute order directing the parties to

3   submit supplemental briefs addressing the applicability of the recent Court of Appeal decision in

4   *Pfizer, Inc. v. Superior Court*, 141 Cal. App. 4th 290 (July 11, 2006) ("*Pfizer*"), to the Court's class

5   certification determination.

6        The matter came before the Court for a second hearing, on September 12, 2006, to allow

7   supplemental argument regarding the applicability or non-applicability of *Pfizer* to the class claims

8   presented in this case.  At that time, the Court invited Plaintiff to craft a modified class definition(s),

9   and to submit further briefing in light of any proposed modified definition.

10       The matter came before the Court for a third hearing on November 8, 2006.  All parties

11  appeared through counsel.

12       The Court has reviewed all papers filed in connection with the Motion for Class Certification,

13  including the supplemental memoranda of the parties addressing *Pfizer*, has considered the oral

14  arguments of the parties, as well as the standards for class certification under Code of Civil Procedure

15  § 382, and finds as follows:

16       1.     The operative complaint in this action alleges causes of action for: (a) declaratory relief

17  pursuant to California's Declaratory Relief Act, Code of Civil Procedure Section 1060; (b) unlawful

18  business conduct in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof.

19  Code § 17200 *et seq.*, based on allegations that Defendant General Motors Corporation ("GM")

20  violated provisions of California's Motor Vehicle Warranty Adjustment Programs Act (also known as

21  the California "secret warranty" law), Civil Code § 1795.90 *et seq.*; and (c) unfair and fraudulent

22  business conduct in violation of the UCL, based on allegations that GM concealed or failed to disclose

23  that GM had a policy of offering General Motors Protection Plans ("GMPPs") to some owners and

24  lessees of 1999-2003 model year Chevrolet Silverado trucks with specified engine types who complain

25  to GM about engine knock concerns associated with their vehicles.  *See* Plaintiff's First Amended

26  Complaint ("Cmplt."), at ¶¶ 1-2, 20-48.  The legal and factual predicate underlying each claim is

27  Plaintiff's allegation that GM has established and maintains a "secret" adjustment program, in

28

---

2

[PROPOSED] ORDER GRANTING PLAINTIFF ANDERSON'S MOTION FOR CLASS CERTIFICATION
CASE NO. JCCP 4396

1  violation of Civil Code § 1795.90 *et seq.*, through which GM provides a GMPP to some, but not all,
2  owners and lessees of the subject Silverado vehicles who complain about an engine knock condition
3  variously described as "piston slap," "piston noise," "cold engine knock," "rough idle," "piston skirt
4  slap," "piston noise," "cold start engine piston slap," "cold piston slap," "cold piston knock," "piston
5  slapping noise," "tapping," "ticking," "slapping," "pinging," "rattling," "vibrating," "carbon in the
6  piston," "sounding like a diesel engine," or simply "engine knock condition prevalent in Chevy
7  trucks." Plaintiff seeks a declaration of rights, an injunction, as well as restitution, disgorgement and
8  rescission.

9    2.    Plaintiff seeks to certify this action on behalf of California residents, and proposes two
10  alternative class definitions as follows:

11  **PROPOSED CLASS DEFINTION # 1:** "All California owners and lessees of 1999-
12  2003 model year Chevrolet Silverados equipped with 4.8L, 5.3L, 6.0L or 8.1L engines
13  who were not given notice of the condition giving rise to or the terms and conditions of
    General Motors' Engine Knock Noise Adjustment Program."

14    Or

15  **PROPOSED CLASS DEFINITION # 2:**    "All California owners and lessees of 1999-
16  2003 model year Chevrolet Silverados equipped with 4.8L, 5.3L, 6.0L or 8.1L engines
17  who: (1) have engine "knock, ping or slap" noise in their vehicle(s); AND (2) were not
    given notice of the condition giving rise to or the terms and conditions of General
18  Motors' Engine Knock Noise Adjustment Program."

19    3.    Plaintiff has satisfied the standing requirements of Proposition 64 and *Californians for*
20  *Disability Rights v. Mervyn's, LLC*, 39 Cal. 4th 223 (2006) (applying Proposition 64 to pending UCL
21  actions) for two reasons.

22    a.    First, Plaintiff alleges an "injury in fact" and a loss of property that is common
23  to Plaintiff and to all Class members. As discussed, above, Plaintiff's claims under the unlawful prong
24  of the UCL stem from the assertion that GM violated the Motor Vehicle Warranty Adjustment
25  Programs Act, Cal. Civ. Code § 1795.90 *et seq.*, by among other things: (1) adopting a policy or
26  program of providing a free GMPP to some, but not all, owners and lessees of Silverado trucks who
27  complain about engine knock concerns, in violation of Civil Code § 1795.90; (2) failing to notify, by

28

3
[PROPOSED] ORDER GRANTING PLAINTIFF ANDERSON'S MOTION FOR CLASS CERTIFICATION
CASE NO. JCCP 4396

first-class mail or otherwise, all affected Class members of the existence, terms and conditions of GM's "secret" adjustment program, in violation of Civil Code § 1795.92(a) and (b); (3) failing to notify its dealers, in writing, of all of the terms and conditions of the program, in violation of Civil Code § 1795.92(c); and (4) failing to reimburse owners and lessees of subject vehicles for repairs or other expenses, including for the purchase of GMPPs or for service repairs incurred prior to having knowledge of GM's policy or program, in violation of Civil Code § 1795.92(d) and (e). *See* FAC, ¶¶ 32-41. These allegations satisfy Proposition 64's new "injury in fact" requirements for standing under the UCL. Plaintiff alleges a concrete and particularized injury, arising from GM's failure to provide Plaintiff and Class members with required legal notice of its program, and thereby deprived Plaintiff and the Class of their statutory rights to notice and the opportunity to make a claim for reimbursement under the Motor Vehicle Warranty Adjustment Programs Act, Civil Code §§ 1795.90 *et seq.* As required for constitutional standing, the alleged "injury in fact" is directly traceable to GM's actions, and can be redressed by a favorable decision directing GM to comply with its obligations under the law. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)); *see also FEC v. Akins*, 524 U.S. 11, 21-22 (1998) (voters alleging inability to obtain campaign-related information stated an "injury in fact" for purposes of standing to compel lobbying group to make disclosures required under Federal Election Campaign Act); *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74 (1982) (testers who were given false information about housing availability alleged "injury in fact" to statutory right to truthful housing information); *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (violation of statute creating legal rights is an "injury in fact" for standing purposes under the United States Constitution); *Serena v. Mock*, No. 5-06-1262, 2006 U.S. Dist. LEXIS 54359, *11 (E.D. Cal. Aug. 4, 2006) (prospective grand jurors who did not receive an "equal notice of the opportunity to apply for grand jury service" alleged "injury in fact" and had standing to challenge defendants' unequal recruitment process for grand jury membership). Plaintiff also alleges the "loss of property" as a result of GM's conduct, i.e., the loss of "a valuable right or interest protected by law." *In Re L.T.*, 103 Cal. App. 4th 262, 265 (2002) (observing that "valuable right[s] or interest[s] protected by law" are "property") (citations and internal

quotation marks omitted); _see also_ _Downing v. Municipal Court_, 88 Cal. App. 2d 345, 350 (1948) (loss of "property" may include loss of "any right or interest protected by law") (citations and internal quotation marks omitted); Civil Code § 655 ("There may be ownership . . . of rights created or granted by statute."). Additionally, although not required, Plaintiff alleges the "loss of money," here, the loss of monies he expended to purchase a GMPP in the absence of notice of GM's "adjustment program."

b. Second, Plaintiff's claims under the unfair or fraudulent prongs of the UCL all arise from an alleged common course of deceptive conduct. This common course of conduct is described in the operative complaint as GM's "conceal[ment] or failure to disclose," to Plaintiff and to Class members, that GM had a policy of offering GMPPs to some, but not all, owners or lessees of subject Silverado trucks who complain to GM about engine knock concerns. _See_ FAC, ¶¶ 45-46. Where, as here, Plaintiff alleges an "injury in fact" arising from an allegedly common material omission, the standing and typicality requirements of Proposition 64 and Code of Civil Procedure § 382 are satisfied, because "proof as to the representative plaintiff[] [Jason Anderson] will supply proof as to all" Class members. _See In Re Tobacco II Cases_, Case No. D046435, 2006 Cal. App. LEXIS 1353, *16 (Sept. 5, 2006) (internal citations and quotation marks omitted); _Vasquez v. Superior Court_, 4 Cal. 3d 800, 814 (1971); _Occidental Land, Inc. v. Superior Court_, 18 Cal. 3d 355, 363 (1976); _Mass. Mutual Life Ins. Co. v. Superior Court_, 97 Cal. App. 4th 1282, 1292-93 (2002).

4. In making the above findings, the Court has read and considered the recent Court of Appeal decision in _Pfizer, Inc. v. Superior Court_, 141 Cal. App. 4th 290 (July 11, 2006).

5. Plaintiff has defined an ascertainable Class. An ascertainable class turns on three things: (1) the class definition, (2) the size of the class, and (3) the means of identifying the class members. _See Miller v. Woods_, 148 Cal. App. 3d 862, 873 (1983). If a class definition is sufficiently clear and objective to allow the court to use it to determine membership, the ascertainability requirement is met. _See Daar v. Yellow Cab Co._, 67 Cal. 2d 695, 704-06 (1967) (finding that a class consisting of all customers of taxi company over a four-year period was ascertainable). The Court finds there is an ascertainable Class, consisting of [choose one]:

[PROPOSED] ORDER GRANTING PLAINTIFF ANDERSON'S MOTION FOR CLASS CERTIFICATION
CASE NO. JCCP 4396

"All California owners and lessees of 1999-2003 model year Chevrolet Silverados equipped with 4.8L, 5.3L, 6.0L or 8.1L engines who were not given notice of the condition giving rise to or the terms and conditions of General Motors' Engine Knock Noise Adjustment Program."

OR

"All California owners and lessees of 1999-2003 model year Chevrolet Silverados equipped with 4.8L, 5.3L, 6.0L or 8.1L engines who: (1) have engine "knock, ping or slap" noise in their vehicle(s); AND (2) were not given notice of the condition giving rise to or the terms and conditions of General Motors' Engine Knock Noise Adjustment Program."

The Court also finds that the Class, which consists of thousands of owners and lessees of the subject vehicles, is numerous and that it is impracticable to bring all members of the Class before the Court. The Court also finds that the members of the Class may be identified by Defendant's records. Accordingly, the ascertainability requirement is met.

6.     Members of the proposed Class share a well-defined community of interest in the common questions of law and fact raised by this case. The common issues of law and fact consist of the following:

a.     Whether GM has established and maintains an "adjustment program" within the meaning of Civil Code § 1795.90(d);

b.     Whether GM has complied with its statutory duties under Civil Code §§ 1795.92(a)-(c), to provide mailed notice of the existence, terms and conditions of its "adjustment program" to all owners and lessees of the subject Class vehicles; to provide copies of all mailed notices to the New Motor Vehicle Board within the Department of Motor Vehicles and make the notices available for public inquiries; and to provide written notice to dealers of all terms and conditions of the "adjustment program";

c.     Whether GM has complied with its statutory duties under Civil Code §§ 1795.92(d)-(e), to implement procedures to assure reimbursement of each owner or lessee eligible under GM's "adjustment program" who incurs expenses for repair of a condition subject to the program prior to acquiring knowledge of the program;

00/00/2006          08:41          FIRST LEGAL SUPPORT    FAX (213) 250-1197

1          d.          Whether GM violated its statutory obligations under Civil Code § 1795.90 *et*

2    *seq.*, and thus violated the UCL;

3          e.          Whether GM engaged in unlawful, unfair, or fraudulent business practices and

4    thus violated the UCL;

5          f.          Whether Plaintiff and Class members are entitled to a declaration of their rights

6    in connection with GM's "adjustment program" under the Declaratory Relief Act; and

7          g.          Whether Plaintiff and Class members are entitled to equitable relief in the form

8    of an injunction, restitution, reimbursement, and/or rescission.

9          7.          No individual issues predominate over these common issues. Plaintiff alleges that GM's

10    wrongdoing is the same as to each Class member. The central predominant question is whether GM

11    has established, maintains, and offers an "adjustment program" within the meaning of Civil Code

12    § 1795.90(d). All members of the proposed Class have an interest in this central predominant

13    question, and, if GM has instituted an adjustment policy, the related predominant questions of whether

1    GM has complied with its duties under Motor Vehicle Warranty Adjustment Programs Act, including

15    its statutory duties to: (a) notify all Class members about the existence and terms of its adjustment

16    program; (b) provide Class members with coverage under the program; and (c) reimburse Class

17    members for repair expenses subject to the adjustment program that they incurred prior to learning

18    about the program. *See* Cal. Civ. Code § 1795.92. All of these questions can be resolved by reference

19    to common legal arguments and proof, and none depends upon or implicates individualized issues of

20    fact or law. *See In Re Tobacco II Cases*, 2006 Cal. App. LEXIS 1353 at *16; *accord Lebrilla v.*

21    *Farmers Group, Inc.*, 119 Cal. App. 4th 1070, 1072-73 (2004) (granting class certification when

22    plaintiffs' allegations concerned defendant's uniform practice of wrongdoing); *Reyes v. Board of*

23    *Supervisors*, 196 Cal. App. 3d 1263, 1267 (1987) (same); *see also Sav-On Drug Stores, Inc. v.*

24    *Superior Court*, 34 Cal. 4th 319, 340 (2004) ("It would be neither efficient nor fair to anyone,

25    including defendants, to force multiple trials to hear the same evidence and decide the same issues.")

26    (internal citation and quotation marks omitted).

28

[PROPOSED] ORDER GRANTING PLAINTIFF ANDERSON'S MOTION FOR CLASS CERTIFICATION
CASE NO. JCCP 4396

8.    To try Plaintiff's claims on a class-wide basis will require only that Plaintiff present proof that is common to all Class members. Examples of this common proof include interpretations of Civil Code § 1795.90 *et seq.*; testimony and documentary evidence concerning GM's program and policy regarding its offer of GMPPs to owners and lessees of subject Class vehicles; and expert testimony about the "engine knock" conditions at issue. If Plaintiff proves that GM maintained an "adjustment program" within the meaning of Civil Code § 1795.90, but failed to comply with its statutory duties as set forth in Civil Code § 1795.92 in violation of Bus. & Prof. Code § 17200 *et seq.*, the Court may issue an order requiring GM to comply with its statutory obligations, including: (a) providing the notice to all Class members of the existence of the program, the condition giving rise to the program, and the principal terms and conditions of the program; and (b) implementing procedures to assure reimbursement of each Class member eligible under GM's "adjustment program" who incurs expenses for repair of a condition subject to the program prior to acquiring knowledge of the program. The fact that different amounts of reimbursement may be claimed by or owed to different Class members does not defeat commonality: "[T]he necessity for class members to prove their own damages does not mean individual fact questions predominate." *Clothesrigger v. GTE Corp.*, 191 Cal. App. 3d 605, 617 (1987).

9.    Plaintiff and his counsel will fairly and adequately represent the Class. Because Plaintiff's claims in this case arise from the same conduct directed against all Class members, his claims are typical of those of the Class. Plaintiff has no interests that are adverse or antagonistic to the interests of the Class. Plaintiff has also retained experienced counsel, competent in class action litigation under state and federal law.

10.    A class action is the superior method to adjudicate the claims of Plaintiff and Class members, and will confer substantial benefit on both Class members and the judicial system. California strongly favors the use of class actions to address consumer protection claims. *See Sav-On Drug Stores, Inc.*, 34 Cal. 4th at 340; *California v. Levi Strauss & Co.*, 41 Cal. 3d 460, 471 (1986); *Richmond v. Dart Indus., Inc.*, 29 Cal. 3d 462, 469 (1981). Here, Plaintiff, Class members, and even GM will derive substantial benefit from a single adjudication regarding GM's compliance or non-

1   compliance with the provisions of the Motor Vehicle Warranty Adjustment Programs Act, Civil Code

2   § 1705.90 *et seq.* Because the complexity and cost of litigating individual claims for alleged violations

3   of the Act effectively forecloses the filing of individual cases, a class action gives Class members the

4   only practical means of redress. Use of the class action device will also benefit the judicial system, as

5   it will allow the claims of thousands of Class members to be adjudicated in one action, thus promoting

6   efficiency, avoiding the multiplicity of separate actions that would otherwise be required, and avoiding

7   the danger of inconsistent results.

8        **IT IS THEREFORE ORDERED** that:

9        1.     The Court certifies this case as a class action pursuant to Code of Civil Procedure § 382.

10       2.     The Court hereby appoints Plaintiff Jason Anderson as the representative for the Class.

11       3.     The Court hereby appoints the law firm of Girard Gibbs LLP, 601 California Street,

12  Suite 1400, San Francisco, California 94108, as counsel for the Class.

13       4.     The Court certifies the following Plaintiff Class [choose one]:

14       **"All California owners and lessees of 1999-2003 model year Chevrolet Silverados
         equipped with 4.8L, 5.3L, 6.0L or 8.1L engines who were not given notice of the
15       condition giving rise to or the terms and conditions of General Motors' Engine
16       Knock Noise Adjustment Program."**

17       *OR*

18       **"All California owners and lessees of 1999-2003 model year Chevrolet Silverados
         equipped with 4.8L, 5.3L, 6.0L or 8.1L engines who: (1) have engine "knock, ping
19       or slap" noise in their vehicle(s); AND (2) were not given notice of the condition
20       giving rise to or the terms and conditions of General Motors' Engine Knock Noise
         Adjustment Program."**

21

22  Excluded from the Class are Defendant, any entity in which Defendant has a controlling interest, any

23  of the officers, directors or employees of Defendant, and the legal representatives, heirs, successors,

24  and assigns of Defendant.

25  //

26  //

27  //

28

[PROPOSED] ORDER GRANTING PLAINTIFF ANDERSON'S MOTION FOR CLASS CERTIFICATION
CASE NO. JCCP 4396

1    5.    Plaintiff's counsel and Defendant's counsel shall meet and confer on the form of a

2    notice to be mailed to all members of the Class, and shall submit the notice within three weeks after

3    entry of this Order.  Counsel shall also meet and confer on the costs associated with giving notice to

4    the Class.  If the parties cannot agree on these issues, Plaintiff's counsel shall so inform the Court by

5    letter.

6    IT IS SO ORDERED.

7

8    DATED: ___11/8___ , 2006

9    HONORABLE PETER D. LICHTMAN
     JUDGE OF THE SUPERIOR COURT

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

[PROPOSED] ORDER GRANTING PLAINTIFF ANDERSON'S MOTION FOR CLASS CERTIFICATION
CASE NO.  JCCP 4396

# EXHIBIT C

1  ERIC H. GIBBS (S.B. #178658)
   ELIZABETH C. PRITZKER (S.B. #146267)
2  GIRARD GIBBS LLP
   601 California St., 14th Floor
3  San Francisco, California 94108
   Tel; (415) 981-4800; Fax: (415) 981-4846
4
   Attorneys for Plaintiff
5  Jason Anderson and the Class

6  GREGORY R. OXFORD (S.B. #62333)
   ISAACS CLOUSE CROSE & OXFORD LLP
7  21515 Hawthorne Boulevard, Suite 950
   Torrance, California 90503
8  Tel: (310) 316-1990; Fax: (310) 316-1330

9  Attorneys for Defendant
   General Motors Corporation
10
   Of Counsel
11 L. JOSEPH LINES, III
   GENERAL MOTORS CORPORATION
12 Mail Code 482-026-601
   400 Renaissance Center
13 P.O. Box 400
   Detroit, Michigan 48265-4000
14 Tel: (313) 665-7386; Fax: (313) 665-7376

15
                **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
16
                        **COUNTY OF LOS ANGELES**
17

18
   Coordination Proceeding Special Title    )   Case No. JCCP4396
19 (Rule 1550(c))                           )
                                            )   CERTIFIED CLASS ACTION
20     GENERAL MOTORS CASES                 )
                                            )
21 _____         )
                                            )   **STIPULATION OF SETTLEMENT**
22 This Document Relates to:                )
                                            )
23 JASON ANDERSON, on behalf of himself     )
   and all others similarly situated,       )
24                                          )
                     Plaintiff,             )
25                                          )
                        v.                  )
26 GENERAL MOTORS CORPORATION               )
                                            )
27              Defendant.                  )

28
   ────────────────────────────────────────────────────────
                        *Stipulation of Settlement*
                                 1

1    This Stipulation of Settlement (the "Agreement") between Plaintiff Jason

2    Anderson and the Class (as defined below) and defendant General Motors Corporation

3    ("GM") is intended to fully, finally and forever resolve, discharge and settle the lawsuit

4    styled *Jason Anderson v. General Motors Corporation*, pending in this Court under

5    JCCP 4396 (the "Action") and all matters raised therein, subject to the terms and

6    conditions hereof and approval by the Court.

7                                        **I. RECITALS.**

8       1.1.    Plaintiff Anderson filed this Action individually and on behalf of a

9    proposed Class (further defined below) which includes California owners and lessees of

10   Model Year 1999-2003 Chevrolet Silverados equipped with 4.8 liter (LR4), 5.3 liter

11   (LM7), 6.0 liter (LQ4, LQ9), and 8.1 liter (L18) engines ("Class Vehicles"). Plaintiff

12   contends that GM violated the Unfair Competition Law ("UCL"), by creating an

13   "adjustment program" under the Motor Vehicle Warranty Adjustment Programs statute

14   ("MVWAP"), Civ. Code § 1795.90 *et seq.*, without providing Class Members with

15   notices and/or repair reimbursements under Civ. Code § 1795.92. Specifically, plaintiff

16   contends that GM created an "adjustment program" by offering certain owners and

17   lessees of Class Vehicles General Motors Protection Plans ("GMPPs") or other benefits

18   when they complained that their vehicles have or have had piston or piston pin noise at

19   initial start up that goes away shortly after the engine warms up ("Start Noise"). GM

20   denies that it has created an "adjustment program" under MVWAP, denies that it was

21   required to provide Class Members with notices and/or repair reimbursements and

22   denies that it has violated the UCL.

23      1.2.    MVWAP defines the term "adjustment program" as follows:

24       "Adjustment program" means a program or policy that expands or extends the
         consumer's warranty beyond its stated limit or under which a manufacturer
25       offers to pay for all or any part of the cost of repairing, or to reimburse
         consumers for all or any part of the cost of repairing, any condition that may
26       substantially affect vehicle durability, reliability, or performance, other than
         service provided under a safety or emission-related recall campaign.
27

28

1    "Adjustment program" does not include ad hoc adjustments made by a
     manufacturer on a case-by-case basis.  [Civ. Code § 1795.90(d)]

2

3    1.3.    Plaintiff claims that the GMPP offers constituted an "adjustment

4    program" because the GMPPs "extend" or "enlarge" the GM limited new vehicle

5    warranty and, alternatively, because the GMPPs pay or reimburse repair expenses for

6    "any condition that may substantially affect vehicle durability, reliability or

7    performance."

8    1.4.    GM denies all allegations of wrongdoing asserted in the Action and denies

9    liability under any cause of action asserted therein.  Specifically, GM contends that it

10   offered the GMPPs to a small number of customers on a case-by-case basis for purposes

11   of customer satisfaction, and that it did not create an "adjustment program" because the

12   GMPPs are not warranties, but instead are service contracts that do not extend or

13   enlarge the GM limited new vehicle warranty and do not pay or reimburse repair

14   expenses for the Start Noise which they were intended to address.  GM further contends

15   that Start Noise has no adverse effect on the durability, reliability or performance of the

16   vehicle engine.

17   1.5.    The Parties recognize that the outcome of the Action is uncertain, in that

18   the ultimate resolution of this Action would depend upon judicial construction of the

19   reach and applicability of provisions of the MVWAP that have not been interpreted by

20   any state appellate court, and that pursuing the Action to a litigated judgment and a

21   possible appeal under the circumstances would entail substantial cost, risk and delay.

22   1.6.    Representative Plaintiff and Class Counsel have conducted an

23   investigation and evaluation of the factual and legal issues raised by the claims asserted

24   in the Action and believe that, in light of the cost, risk and delay of continued litigation

25   balanced against the benefits of the settlement set forth in this Agreement, that such

26   settlement is in the best interests of the, and is fair, reasonable and adequate, for the

27   Class as a whole.

28

1      1.7.    GM expressly denies any wrongdoing and does not admit or concede any

2  actual or potential fault, wrongdoing or liability in connection with any facts or claims

3  that have been or could have been alleged against it in the Action. GM denies that

4  Plaintiff or any Class Members have suffered damage or were harmed by the conduct

5  alleged. GM has concluded, however, that it is desirable to settle the Action upon the

6  terms and conditions set forth herein because it will (i) fully resolve all claims raised in

7  the Action; (ii) avoid the expense, burdens and uncertainties of continued litigation; and

8  (iii) promote customer satisfaction with GM and Chevrolet vehicles.

9      1.8.    Plaintiff and GM therefore stipulate, after good faith, arms-length

10  negotiations in a settlement conference before the Honorable Carl J. West, and subject

11  to the approval of the Court, that the Action shall be compromised, settled, released, and

12  dismissed with prejudice upon and subject to the following terms and conditions:

13                                **II. DEFINITIONS.**

14      As used in this Agreement and the exhibits hereto the following terms have the

15  meanings specified below:

16      2.1.    "Action" means the lawsuit styled *Jason Anderson v. General Motors*

17  *Corporation*, pending in this Court under JCCP 4396.

18      2.2.    "Applicable Warranty Period" means the Limited New Vehicle Warranty

19  Period (3 years or 36,000 miles, whichever comes first), EXCEPT THAT only for

20  purposes of this Agreement for those Class Members who purchased a General Motors

21  Protection Plan ("GMPP"), the Applicable Warranty Period means the time and mileage

22  limitations in the Class Member's GMPP (for example, 4 years or 50,000 miles,

23  whichever comes first, as specified in the Class Member's GMPP).

24      2.3.    "Attorneys' Fees" means the amount awarded by the Court to Class

25  Counsel to compensate them, and any other attorneys for Plaintiff or the Class in the

26  Action, and is inclusive of all attorneys' fees of any kind in connection with the Action.

27  GM agrees not to oppose Class Counsel's application for an award of Attorneys' Fees

28

1    up to the maximum of $1,950,000.00 and agrees to pay the sum awarded by the Court

2    as provided in this Agreement as long as it does not exceed that sum.

3        2.4.    "Authorized GM Dealer," unless otherwise specified, means any GM

4    dealer in California that is (or at the relevant time was) a signatory to an existing and

5    effective General Motors Corporation Dealer Sales and Service Agreement.

6        2.5.    "Claim" means a claim to receive a cash payment or other settlement

7    benefit under paragraphs 3.1 through 3.6 of this Agreement. A Claim consists of a

8    Claim Form signed under penalty of perjury and any documentation required by

9    paragraphs 3.3, 3.4, 3.5 or 3.6 of this Agreement.

10        2.6.    "Claim Deadline" means 45 days after the date that the Final Notice and

11    Claim Forms (defined below) are mailed to Class Members.

12        2.7.    "Claim Form" means the forms attached hereto as Exhibits E-1, E-2 and

13    E-3, only one of which will be sent to each potential Class Member along with the Final

14    Notice as follows:

15        Exhibit E-1:    Class Members who, according to GM or GMAC Insurance

16        records, *purchased* GMPPs within 90 days of retail delivery

17        of their Class Vehicle;

18        Exhibit E-2:    Class Members who, according to GM or GMAC Insurance

19        records, *purchased* GMPPs more than 90 days after retail

20        delivery of their Class Vehicle;

21        Exhibit E-3:    All other Class Members.

22        2.8.    "Class" or "Class Members" are as described in the November 8, 2006

23    order certifying this Class Action, as follows: "All California owners and lessees of

24    1999 through 2003 model year Chevrolet Silverados equipped with a 4.8 liter (LR4),

25    5.3 liter (LM7), 6.0 liter (LQ4, LQ9), and 8.1 liter (L18) engines who: (1) have an

26    engine "knock, ping or slap noise" in their vehicles; (2) were not given notice of the

27    condition giving rise to or the terms and conditions of GM's Engine Knock Noise

28

1  Adjustment Program." For purposes of this Agreement, "knock, ping or slap noise" has

2  the same meaning as "Start Noise" or "Constant Noise" (defined below). Excluded

3  from the Class are those California owners and lessees of 1999 through 2003 model

4  year Chevrolet Silverados who timely requested to be excluded from the Class on or

5  prior to August 15, 2007. Subrogees, assignees and other third parties are not Class

6  Members, are not eligible to receive any benefits under this Agreement and are not

7  subject to any releases executed by or on behalf of the Representative Plaintiff or Class

8  Members.

9      2.9.  "Class Action Settlement Notice" means the notice, substantially in the

10  form attached hereto as Exhibit C, provided to potential Class Members after issuance

11  of the Preliminary Approval Order.

12      2.10.  "Class Counsel" means Girard Gibbs LLP, 601 California Street, 14th

13  Floor, San Francisco, California 94108.

14      2.11.  "Class Vehicles" mean 1999 through 2003 model year Chevrolet

15  Silverados equipped with 4.8 liter (LR4), 5.3 liter (LM7), 6.0 liter (LQ4, LQ9) or 8.1

16  liter (L18) engines.

17      2.12.  "Constant Noise" means piston or piston pin noise that is not "Start

18  Noise" (defined below), for example noise that continues after the engine warms up or

19  that begins after the engine has warmed up.

20      2.13.  "Court," unless specifically stated otherwise, means the Superior Court of

21  the State of California for the County of Los Angeles.

22      2.14.  "Defendant's Counsel" means Isaacs Clouse Crose & Oxford LLP, 21515

23  Hawthorne Boulevard, Suite 950, Torrance, California 90503.

24      2.15.  "Documented Costs and Expenses" means the amount of reasonable and

25  documented out-of-pocket costs and expenses incurred by Plaintiff or Class Counsel,

26  shown by their application for reimbursement filed prior to the Fairness Hearing and

27  awarded by the Court, inclusive of past notice costs due to the Garden City Group of

28

1   approximately $93,000.00. Documented Costs and Expenses will not exceed the total

2   sum of $215,000.00 in the aggregate without GM's approval.

3       2.16. "Effective Date" means the later of (a) the date upon which the time for

4   seeking appellate review of the Final Judgment (by appeal or otherwise) shall have

5   expired; or (b) the date upon which the time for seeking appellate review of any

6   appellate decision affirming the Final Judgment (by appeal or otherwise) shall have

7   expired and all appellate challenges to the Final Judgment shall have been dismissed

8   with prejudice without any person having any further right to seek appellate review

9   thereof (by appeal or otherwise).

10       2.17. "Fairness Hearing" means the hearing scheduled for a date approximately

11   75 days after the mailing of the Class Action Settlement Notice at which the Court will

12   consider whether to approve the Agreement as fair, reasonable, and adequate; will

13   consider the proposed Incentive Award to the Representative Plaintiff, the proposed

14   award of Attorneys' Fees to Class Counsel, and the proposed reimbursement of any

15   Documented Costs and Expenses to Class Counsel; will consider whether to enter the

16   Final Judgment; and will make such other rulings as are contemplated by this

17   Stipulation.

18       2.18. "Final Judgment" means the judgment, substantially in the form attached

19   hereto as Exhibit A, to be entered by the Court in the Action finally approving this

20   Agreement and dismissing the Action with prejudice.

21       2.19. "Final Notice" means the notice mailed to Class Members in substantially

22   the form annexed as Exhibit D within twenty-one (21) days of entry of Final Judgment

23   along with appropriate Claim Forms.

24       2.20. "GM" means Defendant General Motors Corporation.

25       2.21. "Incentive Award" means such incentive payment to the Representative

26   Plaintiff as may be awarded by the Court upon Class Counsel's request, in an amount

27   not to exceed $7,500.00.

28

1    2.22.  "Limited Warranty Period" means the warranty period specified in the

2    Chevrolet New Vehicle Warranty (3 years or 36,000 miles, whichever comes first).

3    2.23.  "Parties" or "Party" means the Representative Plaintiff and/or Defendant

4    GM.

5    2.24.  "Preliminary Approval Order" means the Court's order preliminarily

6    approving the terms of this Agreement as fair, adequate, and reasonable, including the

7    Court's approval of the form and manner of giving notice to potential Class Members,

8    substantially in the form attached hereto as Exhibit B.

9    2.25.  "Released Claims" means any and all claims, demands, causes of actions

10   or liabilities, including but not limited to those for alleged violations of any state or

11   federal statutes, rules or regulations, and all common law claims, including Unknown

12   Claims as defined herein, based on or related in any way to (a) Start Noise or Constant

13   Noise in Class Vehicles; or (b) the factual allegations and legal claims that were made

14   in the Action, including any claim that any repair arguably covered by a GMPP should

15   have been paid for, reimbursed or provided to Class Members pursuant to MVWAP.

16   Released Claims do not include claims for personal injury, or claims based on or related

17   to engine noise conditions in Class Vehicles **other** than Start Noise or Constant Noise.

18   Consistent with the express terms of this Agreement, subrogation claims are not being

19   released as part of this settlement.

20   2.26.  "Representative Plaintiff" means Jason Anderson, the named plaintiff in

21   the Action.

22   2.27.  "Start Noise" means piston or piston pin noise that occurs at initial engine

23   start-up and disappears shortly after the engine warms up

24   2.28.  "Unknown Claims" means any Released Claim that Plaintiff or Class

25   Members do not know or suspect to exist at the time of the release provided for herein,

26   including without limitation those that, if known, might have affected the Class

27

28

1   Member's settlement and release pursuant to the terms of this Agreement or the Class

2   Member's decision not to object to the settlement terms memorialized herein.

3       2.29.  "Unreimbursed Repair Expenses" means the amount of any repair expense

4   or partial repair expense paid by the Class Member which is not and was not (a) paid for

5   or reimbursed under the terms of the Class Member's extended warranty, service

6   contract or GMPP, (b) payable or reimbursable under the terms thereof, and (c) paid for

7   or reimbursed by GM or any Authorized GM dealer.

8       2.30.  "Valid Claim" means and refers to a Claim that has been deemed eligible

9   for payment or other relief in accordance with the terms of this Agreement.

10  **III.  CLASS RELIEF, CLASS NOTICE AND CLAIMS ADMINISTRATION,**

11  **ATTORNEYS' FEES AND COSTS**

12      3.1.  The following relief is available to Class Members who submit Valid

13  Claims.

14      3.2.  Class Members can make Claims for multiple settlement benefits and

15  receive all benefits for which they are eligible, conditioned upon submission of a signed

16  and valid Claim Form and any required documents as further provided below.  This

17  includes benefits for multiple Unreimbursed Repair Expenses, again conditioned on

18  eligibility and submission of a signed and valid Claim Form and any required

19  documents.

20      **3.3    Reimbursement of Purchase Price of GMPPs.**

21      By using available GM or GMAC Insurance records, GM will identify Class

22  Members who purchased General Motors Protection Plans ("GMPPs") for Class

23  Vehicles and determine which of them purchased their GMPPs (a) within 90 days of

24  retail delivery of their Class Vehicle and (b) more than 90 days thereafter.  These Class

25  Members will be eligible for reimbursement of the purchase price of their GMPPs

26  subject to the provisions of Paragraphs A or B below if they (1) complete and return a

27  timely and valid Claim Form (in the form of Exhibits E-1 or E-2 hereto), and (2) in the

28

case of Exhibit E-1 Claim Forms **only**, submit the required documentation described below.

    **A.**    **GMPP Purchasers Within 90 Days of Retail Delivery.** GM will reimburse each Class Member in this group for the purchase price of the GMPP paid by the Class Member if the Class Member completes, signs under penalty of perjury and returns an Exhibit E-1 Claim Form and supplies appropriate documentation showing that his or her Silverado has or had Start Noise by the Claim Deadline.

    **B.**    **GMPP Purchasers More Than 90 Days After Retail Delivery.** GM will reimburse each Class Member in this group for the purchase price of the GMPP paid for by the Class Member if the Class Member completes, signs under penalty of perjury and returns a signed Exhibit E-2 Claim Form by the Claim Deadline.

    **3.4.**    **Reimbursement of Customer-Paid Start Noise Repair Expense.** For each Class Member who during the Applicable Warranty Period incurred Unreimbursed Repair Expenses for a repair to address concerns about Start Noise, upon timely receipt of (i) the Class Member's completed, signed and valid Claim Form (E-1, E-2 or E-3) attesting under penalty of perjury that he or she paid for an engine repair to address a concern about Start Noise and (ii) appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order), GM will fully reimburse the Class Member for the repair expense.

    **3.5.**    **Constant Noise Evaluation and Appropriate Repairs.**

    (a)    For each Class Member who completes, signs and returns a timely and valid Claim Form, attesting under penalty of perjury that prior to the expiration of the Limited Warranty Period the Class Member made inquiry or expressed concerns to an authorized GM dealer or GM about Constant Noise and did not receive a repair, GM

1   will, within twenty-one (21) days of the Effective Date mail the Class Member

2   instructions explaining how the Class Member may obtain an engine noise evaluation

3   from any authorized Chevrolet dealer in California. GM will, upon presentation of the

4   Class Vehicle to an authorized Chevrolet dealer, cause the dealer to provide a current

5   noise evaluation of the Class Vehicle at no cost to the Class Member.

6       (b)    If the current noise evaluation confirms that the Class Vehicle has

7   Constant Noise, GM will offer (at the Class Member's option) repairs to address,

8   remedy or eliminate Constant Noise ("Constant Noise Repairs"), including where

9   needed replacement of appropriate components. Any Constant Noise Repair that is

10   accepted by the Class Member pursuant to this paragraph will be performed at no cost

11   to the Class Member.

12       **3.6.**    **Reimbursement for Listed Engine Repairs.** For each Class Member

13   who completes, signs and returns a timely and valid Claim Form (E-1, E-2 or E-3)

14   attesting under penalty of perjury that (a) the Class Member made inquiry of or

15   expressed concerns to an authorized GM dealer or GM about Start Noise prior to

16   expiration of the Limited Warranty Period; and (b) the Class Member incurred

17   Unreimbursed Repair Expenses for any of the engine repairs listed below within 6 years

18   or 100,000 miles of retail delivery (whichever came first), GM will reimburse the Class

19   Member for 75 percent (75 %) of the repair expense shown on appropriate written

20   documentation of the repair such as a repair order. The engine repairs eligible for this

21   reimbursement shall include **only** Unreimbursed Repair Expenses for the following

22   engine components:

23       • cylinder block, heads, crankshaft and bearings

24       • crankshaft seals – front and rear

25       • camshaft and bearings

26       • connecting rods and pistons

27       • valve train (including valve seals, valve covers and internal parts)

28

1    • timing gears

2    • timing chain/belt and cover

3    • oil pump, oil pump housing, oil pan

4    • engine seals and gaskets

5    • lubricated internal engine parts

6    • water pump

7    • intake and exhaust manifolds

8    • flywheel

9    • harmonic balancer

10   • engine mounts

11   **3.7.   GM's Right To Offset Prior Payments and Enforce Prior Settlements**

12   **and Releases.**  GM shall have the right to reduce any amount to be reimbursed by any

13   amount previously paid by GM or any affiliate of GM for the same expense or that is or

14   was payable or reimbursable under the Class Member's extended warranty, service

15   contract, or GMPP.  GM also shall have the right to enforce fully the terms of any

16   release, judgment, arbitration award or other adjudication obtained in connection with

17   any Class Member's prior claim concerning a Class Vehicle.

18   **3.8.   Mailing of Class Action Settlement Notice.**  Subject to the terms of the

19   Preliminary Approval Order, GM or its designee shall, within thirty (30) days of entry

20   of the Preliminary Approval Order cause the Class Action Settlement Notice to be sent

21   by first-class mail to all Class Members whose names and mailing addresses appear on

22   the vehicle registration data obtained from The Polk Company on or about May 30,

23   2007, which data shall be updated prior to mailing using the U.S. Postal Service's

24   NCOA (National Change of Address) database.

25   **3.9.   Mailing of Final Notice and Claim Forms; Submission of Claims.**  No

26   later than twenty-one (21) days after entry of Final Judgment,  GM shall cause the Final

27   Notice, substantially in the form attached as Exhibit D, and the appropriate Claim

28

1   Forms (substantially in the forms attached as Exhibits E-1 through E-3) to be sent by

2   first-class mail to all Class Members shown on the Class Action Settlement Notice

3   mailing list compiled for the mailing pursuant to paragraph 3.8 above, which data shall

4   be updated again prior to mailing using the U.S. Postal Service's NCOA (National

5   Change of Address) database. Any Class Member may submit a Claim Form to GM at

6   any time after receiving Final Notice and prior to the Claims Deadline.

7       **3.10. Claims Evaluation, Resolution and Payment.** GM agrees to process all

8   Claims submitted pursuant to this Agreement in good faith consistent with the terms of

9   this Agreement, and to disburse settlement payments to Class Members who submit

10   timely Valid Claims. GM will carry out these duties in accordance with the procedures

11   and guidelines set forth below. Consistent with the terms of this Agreement, Class

12   Counsel reserves the right to respond to Class Member inquiries, to use reasonable

13   efforts to resolve disputes, if any, in good faith with GM and, failing consensual

14   resolution, to move the Court for an order compelling compliance with the terms and

15   provisions of this Agreement.

16       **3.11. Claims Reporting, Processing and Resolution.**

17       (a)    Within twenty-one (21) days of the Effective Date, GM shall do each of

18   the following:

19          *(i)*    send Class Counsel a list of Valid Claims (i.e., Class Member's

20   name, address and VIN) (the "Valid Claims List") including the value of settlement

21   benefits under paragraphs 3.3 through 3.6 of this Agreement;

22          *(ii)*    send Class Counsel a list of Claims that either have been denied or

23   reduced (pursuant to paragraph 3.7, above, or otherwise), and for each denied or

24   reduced Claim a clear description of the basis for the denial or reduction;

25          *(iii)*    send each Class Member whose Claim has been denied or reduced a

26   written communication explaining the basis for the denial or reduction and informing

27   the Class Member of his/her/its option to challenge the denial or reduction (as set forth

28

1  below), and furnish a copy of each such written communication and the Class Member's

2  Claim Form to Class Counsel; and

3         *(iv)* send all Class Members whose Claims are determined to be

4  deficient in one or more respects (e.g., because the Class Member forgot to sign the

5  Claim Form), a deficiency notice informing the Class Member that he/she/it has 21 days

6  after the receipt of that notice to cure the deficiency. If a Class Member fails to cure the

7  deficiency within 21 days after receipt of the notice to cure, GM may deny the Claim

8  and send the Class Member the written communication described in paragraph *(ii)*

9  above (with a copy to Class Counsel).

10        (b)    A Class Member may challenge a Claim denial or reduction by notifying

11  GM and Class Counsel, by first-class mail or email, within 21 days after GM has mailed

12  the notification of claim denial or reduction to the Class Member, and providing GM

13  and Class Counsel a statement of the reason(s) the Class Member is disputing the Claim

14  denial or reduction. GM and Class Counsel shall meet and confer in a good faith effort

15  to resolve the Class Member's challenge.

16        (c)    If, after good faith attempts at resolution, the Class Member, Class

17  Counsel and GM are not able to agree on a disposition of the Class Member's Claim,

18  the Class Member may instruct Class Counsel to submit the disputed Claim to Judge

19  West, or if Judge West is unavailable, to Judge Lichtman or another judicial officer of

20  the Los Angeles Superior Court to be agreed upon by the parties or assigned by the

21  Court, for final resolution. As a convenience to the Class Member, GM, Class Counsel

22  and the Court, the parties may combine all disputed Claims so they may be adjudicated

23  together in a single proceeding. Subject to the calendar conditions of the Court, GM

24  and Class Counsel agree to use their best efforts to submit any unresolved disputes to

25  the Court within seventy-five (75) days of the Effective Date.

26

27

28

**3.12. Payment of Valid Claims.**

(a)    As soon as reasonably practicable, and in no event later than twenty-one (21) days after the Effective Date, GM shall send, by first-class mail, to each Class Member with a Valid Claim a settlement payment check in the amount of the Class Member's Valid Claim.

(b)    Class Members eligible for settlement payments who receive a deficiency notice and who timely cure the deficiency will be sent a settlement check within fifteen (15) days after the deficiency has been cured and GM has determined the Claim to be a Valid Claim.

(c)    Class Members eligible for settlement payments and who receive a notice that their Claim has been reduced will be entitled to receive a settlement check, as follows: (1) if the Class Member does not timely challenge the reduction, the Class Member will be sent a settlement check in the amount of the reduced Claim within thirty (30) days of the date the communication specified in paragraph 3.11(a)(ii) was mailed to the Class Member; ALTERNATIVELY, (2) if the Class Member challenges the reduction, the Class Member will be sent a settlement check within fifteen (15) days after the date the Class Member's challenge is finally resolved and the amount of the settlement payment to which the Class Member is entitled is finally determined either through the meet and confer efforts of the Class Member, Class Counsel and GM, or by order of the Court, as specified in paragraph 3.11 above.

**3.13. Costs of Class Notice and Claims Administration.** GM stipulates and agrees that it will pay all notice and claims administration costs.

**3.14. Notice to Authorized Chevrolet Dealers in California.** GM shall prepare an advisory, which GM will share with Class Counsel, informing authorized Chevrolet dealers in California of the pertinent Settlement terms and procedures. GM shall send the advisory to Chevrolet dealers in California within twenty-one (21) days of the Effective Date.

1     **3.15. Spanish Language Notices.** Class Counsel shall, by no later than the

2 date the Class Action Settlement Notice is mailed to Class Members, post English-

3 language and Spanish-language versions of the Class Action Settlement Notice (which

4 Spanish-language translation shall be paid for by GM as a claims administration

5 expense under paragraph 3.13 above) on Class Counsel's website, at:

6 www.GirardGibbs/SilveradoSettlement.com.

7     **3.16. Attorneys' Fees and Documented Costs and Expenses, and Incentive**

8 **Payment to Representative Plaintiff.** After an agreement was reached as to the

9 principal terms and conditions of this Agreement, and with the assistance of Judge

10 West, the Parties entered into discussions regarding an Incentive Award to the

11 Representative Plaintiff, Attorneys' Fees for Class Counsel, and reimbursement of

12 Class Counsel's Documented Costs and Expenses, as described herein. Pursuant to

13 those discussions, the Parties agree that, prior to the Fairness Hearing and entry of the

14 Final Judgment, Class Counsel may apply to the Court for an Incentive Award to

15 Representative Plaintiff and for an award of Attorneys' Fees. GM agrees not to oppose

16 either application provided that Class Counsel does not request an Incentive Award for

17 Representative Plaintiff in excess of $7,500.00, and does not request a total and all-

18 inclusive Attorneys' Fees award in excess of $1,950,000. GM also agrees not to oppose

19 an application for reimbursement of Class Counsel's Documented Costs and Expenses,

20 subject to reasonable documentation being provided to the Court, and provided that said

21 application does not request reimbursement of Document Costs and Expenses in excess

22 of $215,000.

23     **3.17. GM's Payment Agreement.** Subject to the other terms of this

24 Agreement, GM agrees to pay the Incentive Award and the Attorneys' Fees awarded by

25 the Court provided that the Incentive Award does not exceed $7,500.00, and the

26 Attorneys' Fees award does not exceed $1,950,000.00. GM also agrees to reimburse

27 Class Counsel's Documented Costs and Expenses in the amount applied for and

28

1   awarded by the Court, subject to the limitations set forth in paragraph 3.16, above.

2   Such payments will not reduce benefits available to Class Members nor will Class

3   Members be required to pay any portion of the Incentive Award, Attorneys' Fees or

4   Documented Costs and Expenses.  The Class Notice will advise the Class Members of

5   Class Counsel's intent to seek an award of Attorneys' Fees and an Incentive Award the

6   Representative Plaintiff, including the amounts thereof.  The amounts actually awarded

7   by the Court shall not affect the other terms of the settlement which shall remain in full

8   force and effect.

9       **3.18.  Deposit of Funds.**  Within five (5) business days of the Court granting

10  final approval of the Settlement, GM in full satisfaction of its monetary obligations to

11  Class Counsel will deposit all sums awarded as an Incentive Award for the

12  Representative Plaintiff, all sums awarded as Attorneys' Fees for Class Counsel, and all

13  sums awarded as reimbursement for Class Counsel's Documented Costs and Expenses,

14  into an interest-bearing bank account established at Union Bank of California, 44

15  Montgomery Street, San Francisco, California, or such other bank to be agreed upon by

16  the Parties.  Within ten (10) days of the Settlement's Effective Date, and absent any

17  appeal by an objector from an order awarding an Incentive Award to the named plaintiff

18  or awarding Attorneys' Fees to Class Counsel, GM will transfer the sums deposited in

19  the Union Bank of California (or other agreed-upon) account, together with any accrued

20  interest, from the Union Bank of California (or other agreed-upon) account to an

21  Attorney-Client Trust Account established by Class Counsel as directed by Class

22  Counsel.  In the event that the Settlement does not become effective, GM retains all

23  right to the amounts deposited in the Union Bank of California (or other agreed-upon)

24  account and may withdraw and retain the full amounts deposited, including any interest

25  earned.  Notwithstanding the foregoing, in the event that a trial court ruling or appeal

26  results in the reduction of the Incentive Award, Documented Costs and Expenses or

27  Attorney's Fee Award, then GM on the later of ten days following the Effective Date or

28

1    ten days following the final disposition of any appeal shall transfer the reduced

2    amount(s) awarded to Plaintiff and/or Class Counsel to Class Counsel's trust account,

3    together with a pro rata share of the interest earned, and GM shall receive the remaining

4    balance of the account, including a pro rata share of the interest earned.

5        **3.19.    Limitation on GM's Liability.** _GM shall have no liability or obligation

6    to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of,

7    any person, either directly or indirectly, in connection with this Action, the Agreement,

8    or the proposed settlement, other than the amounts expressly provided for in the

9    Agreement.

10        **IV.  SETTLEMENT APPROVAL, RELEASE AND DEFAULT**

11        4.1.    Promptly after execution of this Agreement, Plaintiff and GM will apply

12    to the Court for entry of the proposed Preliminary Approval Order, attached hereto as

13    Exhibit B, and setting of a hearing for the Court to consider (a) whether to make final its

14    certification of the Class for purposes of the Settlement but not for trial purposes; (b)

15    whether to grant final approval of the Settlement as fair, reasonable and adequate for the

16    Class as a whole; (c) whether to grant Class Counsel's application for Attorneys' Fees,

17    Documented Costs and Expenses and the Representative Plaintiff's Incentive Award

18    and, if so, in what amounts; and (d) any related matters as appropriate ("Fairness

19    Hearing").

20        4.2.    GM shall cause the Class Action Settlement Notice to be printed and

21    mailed to Class Members in accordance with the terms of the Preliminary Approval

22    Order and paragraph 3.8 of this Agreement. No later than the day the motion for final

23    approval of the Settlement is to be filed under the Preliminary Approval Order, GM or

24    its designee will file an affidavit or declaration attesting it has mailed the Class Action

25    Settlement Notice to Class Members in accordance with the Preliminary Approval

26    Order.

27

28

1    4.3.    In accordance with the Preliminary Approval Order or such other or

2    further order of the Court, Class Counsel will file a motion for final approval of the

3    Settlement and an application for Attorneys' Fees, Documented Costs and Expenses,

4    and an Incentive Award for the Representative Plaintiff, and the Parties will brief the

5    motion and application. GM may, but is not obligated to, join in the motion for final

6    approval of the Settlement.

7    4.4.    The Parties will appear at the Fairness Hearing and present their

8    arguments in support of final approval of the Settlement and entry of the proposed Final

9    Judgment, and Class Counsel will present its arguments in support of an award of

10    Attorneys' Fees, Documented Costs and Expenses, and an Incentive Award for the

11    Representative Plaintiff. GM will not object to or oppose an award of Attorneys' Fees,

12    Documented Costs and Expenses and an Incentive Award for the Representative

13    Plaintiff if the amounts sought do not exceed the limits set forth in paragraphs 2.15, 3.16

14    and 3.17.

15    4.5.    Representative Plaintiff and each Class Member stipulates and agrees that,

16    upon the Effective Date, he, she, or it shall be deemed to have, and for the consideration

17    provided for herein and by operation of the Final Judgment shall have, released, waived

18    and discharged his, her or its Released Claims as defined herein and shall have

19    expressly waived and relinquished, to the fullest extent permitted by law, the provisions,

20    rights, and benefits of section 1542 of the California Civil Code, and of any similar law

21    of any other state, which provides: "a general release does not extend to claims which

22    the creditor does not know or suspect to exist in his or her favor at the time of executing

23    the release, which if known by him or her must have materially affected his or her

24    settlement with the debtor." Representative Plaintiff and Class Members may hereafter

25    discover facts in addition to or different from those which he or she now knows or

26    believes to be true with respect to the subject matter of the Released Claims, but

27    Representative Plaintiff and Class Members, upon the Effective Date, shall be deemed

28

1  to have, and by operation of law shall have, fully, finally and forever settled, released

2  and discharged any and all Released Claims, known or unknown, suspected or

3  unsuspected, contingent or non-contingent, whether or not concealed or hidden, that

4  now exist or heretofore may have existed upon any theory of law or equity now existing

5  or coming into existence in the future, including but not limited to, conduct that is

6  negligent, reckless, intentional, with or without malice, or a breach of any duty, law or

7  rule, without regard to the subsequent discovery or existence of such different or

8  additional facts.

9      4.6    GM agrees that, upon the Effective Date, it shall be deemed to have

10  released, waived and discharged any and all claims or causes of action, known or

11  unknown, against Representative Plaintiff Jason Anderson or Class Counsel based on or

12  in any way related to any of the allegations, acts, omissions, transactions, events or

13  other matters alleged, claimed or at issue in the Action, provided that this release shall

14  not extend to any claim for breach of this Agreement or violation of the Final Judgment

15  entered pursuant to the terms hereof.

16  **V. PRELIMINARY INJUNCTION PENDING FAIRNESS HEARING.**

17      5.1.    Pending Court approval of this Agreement at the Fairness Hearing, all

18  potential Class Members who have not previously excluded themselves from the Class

19  shall be preliminarily enjoined and barred (i) from filing or commencing any lawsuit in

20  any jurisdiction based on or relating to the claims and causes of action, or the facts and

21  circumstances relating thereto, in this Action and/or the Released Claims; and (ii) from

22  filing or commencing any other lawsuit as a class action on behalf of Class Members

23  (including by seeking to amend a pending complaint to include class allegations or

24  seeking class certification in a pending action) based on or relating to the claims and

25  causes of action, or the facts and circumstances relating thereto, in this Action and/or

26  the Released Claims.

27  //

28

## VI. OBJECTIONS TO SETTLEMENT

6.1.    Any Class Member who wishes to object to the Agreement, the proposed settlement, the Incentive Award or the request for Attorneys' Fees and Expenses, must serve a written objection that must be postmarked no later than forty-five (45) days after the date of mailing of the Class Action Settlement Notice.  The written objection must be filed and served as follows:

| Clerk of the Court | Class Counsel | GM's counsel |
| --- | --- | --- |
| Clerk of the Court | Elizabeth Pritzker | Gregory R. Oxford |
| Superior Court of the State of California | Girard Gibbs LLP | Isaacs Clouse Crose & Oxford LLP |
| County of Los Angeles | 601 California St., 14th Floor | 21515 Hawthorne Blvd., Suite 950 |
| Central Civil West Courthouse | San Francisco, CA 94108 | Torrance, CA 90503 |
| 600 S. Commonwealth Avenue | | |
| Los Angeles, CA 90005 | | |

The written objection must include: *(i)* the objector's name, address and telephone number; *(ii)* the Vehicle Identification Number of the vehicle that establishes that the objector is a member of the Class; *(iii)* the name of this case and the case number, *(iv)* the specific reason and basis for the objection, including any legal and factual support the objector wishes to bring to the Court's attention and any evidence in support of each objection.

6.2.    If the objector intends to appear at the Fairness Hearing through counsel, the comment must also state the following:  *(i)* the identity of all attorneys representing the objector who will appear at the fairness hearing, *(ii)* the identity and number of Class Members represented by objector's counsel; *(iii)* the number of such represented Class Members who have opted out of the Class and the Settlement; *(iv)* the number of such represented Class Members who have remained in the Settlement and have not objected; *(v)* the date the objector's counsel assumed representation for the objector, and *(vi)* a list of the names of all cases where the objector's counsel has objected to a class action settlement in the last three years.  Objecting Class Members must also make themselves available for deposition by Class Counsel and/or GM's counsel in their

1   county of residence, between the time the objection is filed and seven (7) days before

2   the date of the Fairness Hearing.  To appeal from any provision of the order approving

3   the Settlement as fair, reasonable and adequate, the award of incentive payments, or to

4   the award of reasonable attorneys' fees and documented costs and expenses paid by

5   Defendant and awarded to Class Counsel, the objector must appear in person, or

6   through counsel, or seek leave of Court excusing such appearance prior to the fairness

7   hearing, or as otherwise may be permitted by the Court at the fairness hearing.  In

8   addition, the objector must demonstrate compliance with paragraph 6.1 to show that he

9   or she is a member of the Class.

10      6.3.    Class Members, or their attorneys, intending to make an appearance at the

11  Fairness Hearing, must deliver a Notice of Intention to Appear to Class Counsel and

12  Defendant's Counsel identified above, and have this Notice file-stamped by the Court,

13  no later than thirty (30) days before the Fairness Hearing.  The Notice of Intention to

14  Appear must: *(i)* state how much time the Class Member and/or their attorney

15  anticipates needing to present the objection; *(ii)* identify, by name, address, telephone

16  number and detailed summary of testimony, any witnesses the Class Member and/or

17  their attorney intends to present any testimony from; and *(iii)* identify all exhibits the

18  Class Member and/or their attorney intends to offer in support of the objection and

19  attach complete copies of all such exhibits.

20      6.4.    Any Class Member and/or their attorney who fails to comply with the

21  provisions of the foregoing paragraphs 6.1 through 6.3 shall be deemed to have waived

22  and forfeited any and all rights he or she may have to appear separately and/or object,

23  and shall be bound by all the terms of the Agreement.

24  ### VII.  GENERAL PROVISIONS.

25      7.1.    All Parties agree that this Agreement was drafted jointly by counsel for

26  the Parties at arm's length and that the Agreement including its Exhibits constitutes the

27  sole agreement between the Parties concerning the subject matter hereof.  Further, the

28

1   Parties intend and agree that this Agreement, including its Exhibits, is a fully integrated

2   and enforceable Agreement, and further stipulate and agree that: *(i)* there are no other

3   agreements, written or oral, between the Parties concerning this subject matter; *(ii)* no

4   representations, warranties or inducements have been made to any Party concerning the

5   Settlement or this Agreement other than are contained in the Agreement; and *(iii)* this

6   Agreement shall not be modified or amended except by a signed writing executed by or

7   on behalf of all Parties and approved by the Court.

8       7.2.    The Parties expressly agree that the terms and provisions of this

9   Agreement are contractual and not a mere recital and shall survive the execution of this

10  Agreement and entry of the Final Judgment and shall continue in full force and effect

11  thereunder.

12      7.3.    The Agreement will terminate at the sole option and discretion of GM or

13  Class Counsel if:  (i) the Court, or any appellate court(s), rejects, modifies or denies

14  approval of any material portion of the Agreement or the proposed settlement (except

15  for the Incentive Award, Reimbursement of Designated Costs and Expenses and the

16  Award of Attorneys' Fees and Expenses as to which the provisions of paragraph 3.17

17  shall control), including, without limitation, the terms of relief, the findings of the

18  Court, the provisions relating to notice, the definition of the Class and/or the scope or

19  terms of the Released Claims; or (ii) the Court, or any appellate court(s), does not enter

20  or affirm, or alters or expands, any material portion of the Final Judgment.  In such

21  event, this Agreement and all negotiations shall be without prejudice to the Parties and

22  shall not be admissible into evidence, and shall not be deemed or construed to be an

23  admission or confession by any of the Parties or any fact, matter or proposition of law.

24      7.4.    If this Stipulation is not approved by the Court or the Settlement is

25  terminated or there is a failure to reach the Effective Date in accordance with the terms

26  of this Stipulation, the Parties and all Class Members will be restored to their respective

27  positions as of the date immediately preceding the commencement of settlement

28

1    discussions in the Action, including their respective positions on class certification.  In

2    such event, the terms and provisions of this Stipulation, will have no further force and

3    effect with respect to the Parties; neither the fact nor the terms of the Settlement will be

4    used in this Action or in any other proceeding for any purpose; and any Judgment or

5    order entered by the Court in accordance with the terms of this Stipulation will be

6    treated as vacated, nunc pro tunc.  No order of the Court or modification or reversal on

7    appeal of any order of the Court concerning any Incentive or Attorneys' Fee Award or

8    Reimbursement of Documented Costs and Expenses will constitute grounds for

9    cancellation or termination of this Stipulation.

10          7.5.    The Agreement shall be governed by and interpreted according to the laws

11    of the State of California without regard to its conflicts of law provisions.

12          7.6.    If any disputes arise regarding the implementation or interpretation of this

13    Agreement, the Parties agree to use reasonable efforts to resolve the dispute, including

14    consultation or mediation with Judge West, failing which the parties agree to present the

15    dispute Judge Lichtman or another judicial officer of the Los Angeles Superior Court to

16    be agreed upon by the parties or assigned by the Court for final resolution.

17          7.7.    Whenever the Agreement requires or contemplates that one Party shall or

18    may give notice to the other, notice shall be provided by facsimile and/or next-day

19    (excluding weekends and holidays) express delivery service as follows:

20                a.    If to Defendant, then to:

21    L. Joseph Lines, III                          Gregory R. Oxford
      General Motors Corporation                    Isaacs Clouse Crose & Oxford LLP
22    Mail Code 482-026-601                         21515 Hawthorne Boulevard, Suite 950
      400 Renaissance Center                        Torrance, California 90503
23    P.O. Box 400                                  (310) 316-1990
      Detroit, Michigan 48265-4000                  (310) 316-1330 (FAX)

24

25    //

26    //

27    //

28

1          **b.**      If to Plaintiff, then to Class Counsel:

2    Elizabeth C. Pritzker
Girard Gibbs LLP

3    601 California St., 14th Floor
San Francisco, California 94108

4    (415) 981-4800
(415) 981-4846 (FAX)

5

6          7.8.    The Parties reserve the right, subject to the Court's approval, to agree

7    upon any reasonable extensions of time that might be necessary to carry out any of the

8    provisions of the Agreement.

9          7.9.    In no event shall the Agreement, any of its provisions or any negotiations,

10    statements, or court proceedings relating hereto in any way be construed as, offered as,

11    received as, or used as an admission of liability in any judicial, administrative,

12    regulatory, arbitration or other proceeding.  Further, this Agreement shall not be offered

13    or admitted into evidence in any proceeding, except the proceeding to seek court

14    approval of this settlement or in a proceeding to enforce the terms of the settlement.

15          7.10.   The Parties, their successors and assigns, and their attorneys undertake to

16    implement the terms of the Agreement in good faith, and to use good faith in resolving

17    any disputes that may arise in the implementation of the terms of the Agreement.

18          7.11.   The Parties, their successors and assigns, and their attorneys agree to

19    cooperate fully with one another in seeking Court approval of the Agreement and to use

20    their best efforts to effect the prompt consummation of the Agreement and the proposed

21    settlement.

22          7.12.   The Court will retain jurisdiction to the extent allowed by law with respect

23    to implementation and enforcement of the terms of this Stipulation, and the Parties

24    submit to the jurisdiction of the Court for purposes of implementing and enforcing the

25    Settlement. All applications with respect to any aspect of the Settlement shall be

26    presented to and determined by the Court.

27    //

28

1    7.13.  Each person executing this Agreement warrants that he or she has the

2  authority to do so.

3    7.14.  The Agreement may be signed in counterparts, each of which shall

4  constitute a duplicate original.

5
**APPROVED AND AGREED TO BY AND ON BEHALF OF**
6  **PLAINTIFF JASON ANDERSON AND THE CLASS**

7  Date:  November 13, 2008

8  GIRARD GIBBS LLP

9
By: _____
10      Elizabeth C. Pritzker
   Attorney for Plaintiff
11  Jason Anderson and the Class

12
**APPROVED AND AGREED TO BY AND ON BEHALF OF**
13  **DEFENDANT GENERAL MOTORS CORPORATION**

14

15  Date:  November 13, 2008

16  ISAACS CLOUSE CROSE & OXFORD LLP

17
By: _____
18      Gregory R. Oxford
   Attorney for Defendant
19  General Motors Corporation

20

21

22

23

24

25

26

27

28

# EXHIBIT D

COPY

ERIC H. GIBBS (S.B. #178658)
ELIZABETH C. PRITZKER (S.B. #146267)
GIRARD GIBBS LLP
601 California St., 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800; Fax: (415) 981-4846

RECEIVED

NOV 13 2008

Dept. 322

Attorneys for Plaintiff
Jason Anderson and the Class

GREGORY R. OXFORD (S.B. #62333)
ISAACS CLOUSE CROSE & OXFORD LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503
Tel: (310) 316-1990; Fax: (310) 316-1330

ORIGINAL FILED

NOV 18 2008

LOS ANGELES
SUPERIOR COURT

Attorneys for Defendant
General Motors Corporation

Of Counsel
L. JOSEPH LINES, III
GENERAL MOTORS CORPORATION
Mail Code 482-026-601
400 Renaissance Center
P.O. Box 400
Detroit, Michigan 48265-4000
Tel: (313) 665-7386; Fax: (313) 665-7376

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| Coordination Proceeding Special Title (Rule 1550(c))<br><br>GENERAL MOTORS CASES | Case No. JCCP4396<br><br>CERTIFIED CLASS ACTION |
| This Document Relates to:<br><br>JASON ANDERSON, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>GENERAL MOTORS CORPORATION,<br><br>     Defendant. | [PROPOSED] ORDER PRELIMINARILY APPROVING STIPULATION OF SETTLEMENT<br><br>Hearing Date: November 18, 2008<br>Time:  9:30 a.m.<br>Department: CCW 322<br><br>Hon. Peter D. Lichtman |

BY FAX

1

*Order Preliminarily Approving Stipulation of Settlement*

1    WHEREAS, Representative Plaintiff Jason Anderson, individually and as certified

2    representative of the Class ("Plaintiff") and defendant General Motors Corporation

3    ("GM") have entered into a Stipulation of Settlement (the "Agreement") subject to the

4    approval and determination of the Court as to fairness, reasonableness, and adequacy of

5    the settlement which, if approved, will result in dismissal of the Action with prejudice;

6    and

7    WHEREAS, terms defined in the Agreement filed by the parties herein will have

8    the same meaning in this Order,

9    IT IS HEREBY STIPULATED, by and between Representative Plaintiff and GM,

10    by and through their undersigned counsel, that the Court following its review of the

11    Stipulation of Settlement and related documents submitted by the parties, may enter its

12    order as follows:

13    The Court based on its independent review of and due deliberation concerning the

14    Stipulation of Settlement and related documents hereby orders:

15    **1.    Preliminary Approval**.  Based on the facts and legal authorities presented

16    to the Court throughout the pendency of this Action, the terms of the Agreement and the

17    Court's independent review, the proposed Agreement appears to be fair, reasonable and

18    adequate with respect to Class Members as that term is defined in the Stipulation of

19    Settlement.

20    **2.    Fairness Hearing.**

21    (a)    A hearing will be held on [**March 5, 2009 at 1 :45 a.m.**] in Department

22    CCW 322 of the Los Angeles Superior Court, Central Civil West Courthouse, 600 S.

23    Commonwealth Avenue, Los Angeles, California, to decide, among other things: (a)

24    whether the Agreement should be finally approved as fair, reasonable and adequate; (b)

25    whether the Action should be dismissed with prejudice pursuant to the terms of the

26    Agreement; (c) whether Class Members should be bound by the release set forth in the

27    Agreement; (d) whether Class Members should be subject to a permanent injunction that,

28    among other things, will enjoin and bar Class Members from filing, commencing,

2

1  prosecuting, intervening in, or participating in (as class members or otherwise), any

2  lawsuit in any jurisdiction based on or relating to the claims and causes of action, or the

3  facts and circumstances relating thereto, in this Action and/or the Released Claims (as

4  defined in the Agreement); and (e) whether the application of Class Counsel for an award

5  of Attorneys' Fees and reimbursement of Class Counsel's Documented Costs and

6  Expenses, and the application of Representative Plaintiff Jason Anderson for an Incentive

7  Award should be approved.

8       3.    **Pre-Hearing Notices.**

9            (a)   **Class Notice.** Notice of the proposed class action settlement, in the

10  form filed with this Court as Exhibit C to the Agreement (the "Class Action Settlement

11  Notice"), shall be sent by first-class mail to Class Members by GM within thirty (30) days

12  after the entry of this Preliminary Approval Order, subject to any reasonable extension of

13  this deadline that is agreeable to the Parties or ordered by the Court. Additionally, Class

14  Counsel shall, by no later than the date the Class Action Settlement Notice is mailed to

15  Class Members, post a Spanish-language version of the Class Action Settlement Notice on

16  Class Counsel's website, at the following URL:

17  www.GirardGibbs/SilveradoSettlement.com.

18            (b)   **Proof of Mailing Class Notices.** At the time the motion for final

19  approval of the Settlement is to be filed, the Claims Administrator or other such

20  appropriate person or entity, among others, shall file an affidavit or declaration attesting

21  that notice to the Class was disseminated in accordance with this Preliminary Approval

22  Order.

23       4.    **Findings Concerning Notice.** Having considered, among other factors, *(i)*

24  the cost of giving notice by various methods, *(ii)* the interests of each Class Member; *(iii)*

25  the likelihood that Class Members' current address can be obtained, and *(iv)* the likelihood

26  that each Class Member will receive actual notice, the Court expressly finds that notice

27  given in the form and manner provided in Paragraph 3(a) of this Order and as described in

28  the Agreement will provide the best notice practicable under the circumstances. The

1   Court finds that the content and manner of the Class Notice: *(i)* is the best practicable

2   notice; *(ii)* is reasonably calculated, under the circumstances, to apprise Class Members of

3   the pendency of the Action and of their right to object to the proposed settlement; *(iii)* is

4   reasonable and constitutes due, adequate and sufficient notice to all persons entitled to

5   receive notice; and *(iv)* meets all applicable requirements of any law, the Due Process

6   Clauses of the United States and California Constitutions, and the California Code of Civil

7   Procedure and Rules of Court. The Court further finds that the proposed manner and form

8   of the Class Notice reasonably advises potential members of the Class of the following:

9   (a) the nature of the Action and settlement relief, and that the relief is limited to that

10   provided by the Agreement and is contingent on the Court's final approval thereof; and

11   (b) that any Class Member may, if he or she desires, object and enter an appearance

12   through his or her counsel. In sum, the Court finds that the Class Notice and method of

13   mailing to Class Members provided in the Agreement is readily understandable,

14   reasonable, constitutes due, adequate and sufficient notice to all persons entitled to receive

15   notice and meets all the requirements of due process.

16        **5.**   **Objections and Appearances.**

17        **(a)**   **Written Objections.** Any Class Member who wishes to object to the

18   fairness, reasonableness or adequacy of the Agreement or the proposed settlement, award

19   of Attorneys' Fees or Incentive Award, may make a written objection, in compliance with

20   Section V of the Agreement, which must be received by Class Counsel and GM's Counsel

21   and have been file-stamped by the Court no later than {**February 2, 2009**}{45 days from

22   the date of mailing of the Class Notice} Written objections must be verified by sworn

23   affidavit and must include: *(i)* the objector's name, address and telephone number; *(ii)* the

24   name of the Action and the case number, *(iii)* a statement of each objection; and *(iv)* a

25   written brief detailing the specific reasons, if any, for each objection, including any legal

26   and factual support the objector wishes to bring to the Court's attention and any evidence

27   the objector wishes to introduce in support of the objection(s). If the objection is

28   presented through an attorney, the written objection must also include: *(i)* the identity and

4

1    number of Class Members represented by objector's counsel; *(ii)* the number of such

2    represented Class Members who have opted out of the settlement; *(iii)* the number of such

3    represented Class Members who have remained in the settlement and have not objected;

4    *(iv)* the date the objector's counsel assumed representation for the objector, and *(v)* a list

5    of the names of all cases where the objector's counsel has objected to a class action

6    settlement in the last three years. Objecting Class Members who intend to testify in

7    support of their objection either in person or by affidavit must also make themselves

8    available for deposition by Plaintiffs' counsel and/or GM's counsel in their county of

9    residence, between the time the objection is filed and seven (7) days before the date of the

10   Fairness Hearing. To appeal from any provision of the final order approving the

11   Settlement as fair, reasonable and adequate, the award of an Incentive Payment to the

12   Representative Plaintiff, or to the award of Attorneys' Fees or Documented Costs and

13   Expenses paid by GM and awarded to Class Counsel, the objector must appear at the

14   Fairness Hearing in person, or through counsel, or seek leave of Court excusing such

15   appearance prior to the Fairness Hearing, or as otherwise may be permitted by the Court at

16   the Fairness Hearing.

17          (b)    **Appearance at Fairness Hearing**. Any Class Member who files

18   and serves a written objection, as described in the preceding subsection, may appear at the

19   Fairness Hearing, either in person or through personal counsel hired at the Class

20   Member's expense, to object to the fairness, reasonableness, or adequacy of the Agreement

21   or the proposed settlement, or to the award of Attorneys' Fees and Expenses. Class

22   Members, or their attorneys, intending to make an appearance at the Fairness Hearing,

23   must deliver to Class Counsel and GM's Counsel, and have file-marked by the Court, no

24   later than [**February 2, 2009**], a Notice of Intention to Appear. The Notice of Intention

25   to Appear must: *(i)* state how much time the Class Member and/or their attorney

26   anticipates needing to present the objection; *(ii)* identify, by name, address, telephone

27   number and detailed summary of testimony any witnesses the Class Member and/or their

28   attorney intends to present any testimony from; and *(iii)* identify all exhibits the Class

5

1    Member and/or their attorney intends to offer in support of the objection and attach

2    complete copies of all such exhibits.

3         (c)    Any Class Member and/or their attorney who fails to comply with the

4    provisions of the preceding subsections shall waive and forfeit any and all rights he or she

5    may have to appear separately and/or object, and shall be bound by all the terms of the

6    Agreement and any orders entered by the Court.

7         (d)    Written objections and Notices of Intention to Appear (along with the

8    supporting brief, any evidence, and any other required materials) must be filed with the

9    Clerk of the Court _and_ delivered to Plaintiffs' counsel and GM's counsel no later than

10   [February 2, 2009] at the following addresses:

11

| Clerk of the Court: | GM's Counsel: |
|---|---|
| Superior Court of California<br>County of Los Angeles<br>Central Civil West Courthouse<br>600 S. Commonwealth Avenue<br>Los Angeles, California 90005 | Gregory R. Oxford<br>Isaacs Clouse Crose & Oxford LLP<br>21515 Hawthorne Boulevard<br>Suite 950<br>Torrance, California 90503 |
| Class Counsel: | |
| Elizabeth C. Pritzker<br>Girard Gibbs LLP<br>601 California St., 14th Floor<br>San Francisco, California 94108 | |

19   **6.**    **Final Approval Pleadings, Incentive Awards and Fee Application.**

20   (a)    Class Counsel shall file a motion for final approval of the Settlement and an

21   application for Attorneys' Fees, Documented Costs and Expenses, and an Incentive

22   Award for the Representative Plaintiff on or before [February 2, 2009]. GM has the right,

23   but not the obligation, to join in the motion for final approval of the Settlement.

24   (b)    Five (5) court days prior to the date set for hearing, Class Counsel and/or

25   GM may file a reply memorandum in support of the motion for final approval of the

26   Settlement. Class Counsel and/or GM shall be permitted to respond to Class Member

27   comments on or objections to the Settlement, if any, as part of its reply memorandum.

28

7.    **Preliminary Injunction.** All Class Members are preliminarily enjoined and barred *(i)* from filing or commencing any lawsuit in any jurisdiction based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or included within the Released Claims; and *(ii)* from filing or commencing any lawsuit based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, in this Action and/or included within the Released Claims.

8.    **Service of Papers.** GM's counsel and Class Counsel shall serve on each other and on all other parties who have filed notices of appearance before the Fairness Hearing, any further documents in support of the proposed settlement, including responses to any papers filed by a Class Member. GM's counsel and Class Counsel shall promptly furnish each other with any and all objections or written exclusion requests that may come into their possession before the Fairness Hearing.

9.    **Termination of Settlement.** This Order shall become null and void, and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if (a) the proposed settlement is not finally approved by the Court, or does not become final, pursuant to the terms of the Agreement; or (b) the proposed settlement is terminated in accordance with the Agreement or does not become effective as required by the terms of the Agreement for any other reason. In such event, the proposed settlement and Agreement shall become null and void and be of no further force and effect, shall be inadmissible into evidence for any purposes, and neither the Agreement nor this Preliminary Approval Order shall be used or referred to for any purpose whatsoever.

10.    **Use of Order.** This Preliminary Approval Order shall be of no force and effect if the settlement is not approved or does not become final and shall not be construed or used as an admission, concession or declaration by or against GM of any fault, wrongdoing, breach or liability, or by or against Plaintiff or the Class Members that their claims lack merit or that the relief requested in the Action is inappropriate, improper or

7

1  unavailable, or as a waiver by any party of any defenses it may have, including defenses

2  or arguments opposing class certification.

3      **11.    Defined Terms.**  Capitalized terms used in this Preliminary Approval Order

4  shall have the same meaning as set forth in Part II of the Stipulation of Settlement.

5      Good cause appearing therefor, **IT IS SO ORDERED.**

6      DATED: November 10, 2008

7                                          PETER D. LICHTMAN
                                          _____
8                                          Judge of the Superior Court

9

   **APPROVED AS TO FORM:**

10 GIRARD GIBBS LLP

11

12     By: _____

13          Elizabeth C. Pritzker
            Attorneys for Plaintiff
14          Jason Anderson and the Class

15 ISAACS CLOUSE CROSE & OXFORD LLP

16

17     By: _____

18          Gregory R. Oxford
            Attorneys for Defendant
19          General Motors Corporation

20

21

22

23

24

25

26

27

28

                                    8

# EXHIBIT E

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
*In Re General Motors Cases (Anderson v. General Motors Corp ), JCCP No. 4396*

## FOR CALIFORNIA RESIDENTS WHO OWN OR LEASE 1999-2003 CHEVROLET SILVERADO TRUCKS WITH 4.8, 5.3, 6.0 OR 8.1 LITER ENGINES

### You May Be Able To Obtain Cash Reimbursements If Your Vehicle Has Piston Or Piston Pin Noise Under A Proposed Class Action Settlement.

**The Settlement:** There is a proposed Class Action Settlement involving California owners and lessees of certain 1999-2003 Chevrolet Silverado trucks who have piston or piston pin noise in their vehicles This noise is sometimes referred to as cold engine knock, rough idle, piston slap, cold tick or cold start noise

**Persons Entitled to Benefits** You are a Class Member and entitled to benefits under the Settlement if 1) you live in or purchased or leased one of these Silverado vehicles in California, 2) you owned or leased the vehicle as of June 15, 2007, and 3) the vehicle makes or has made piston or piston pin noise

**Available Settlement Benefits** The Settlement must be approved by the Superior Court of California, County of Los Angeles If approved, available benefits will include

For those people with piston or pin noise only at startup

- Full cash reimbursement of the purchase price of any General Motors Protection Plan ("GMPP"),

- Full cash reimbursement of expenses paid for piston or piston pin noise repairs during the Limited Warranty period or, if applicable, during the GMPP period,

- Cash reimbursement of 75% for certain engine repair expenses within 6 years or 100,000 miles of retail delivery of the vehicle, and

For those people with constant piston or pin noise

- A free noise evaluation by an authorized GM dealer and, if needed, a free engine repair

See pages 2-3 of this Notice for additional information about these benefits and required documentation

**Settlement Approval and Claims Process.** If the Court approves the Settlement, a Claim Form will be mailed to you You may use the Claim Form to make a claim for settlement payments or other benefits

**Summary of Class Members' Rights and Options Under the Settlement** The purpose of this Notice is to inform you, as a potential Class Member, of the terms of the proposed Settlement, and your rights and options under the Settlement You may

| | |
|---|---|
| **PARTICIPATE IN THE SETTLEMENT** | If you agree with the Settlement, you need not do anything until after the Court decides whether to approve the Settlement If the Settlement is approved, you will be sent a Claim Form, and instructions about how to claim your settlement benefits |
| **OBJECT OR COMMENT ON THE SETTLEMENT** | Write the Court about why you do, or do not, like the Settlement |
| **ATTEND THE HEARING** | Ask to speak to the Court about the fairness of the Settlement |
| **DO NOTHING** | Receive no payment or other benefit Become barred from bringing or being part of any other lawsuit concerning these issues |

**This Notice May Affect Your Rights    Please Read It Carefully**
For more information or a copy of this Notice in Spanish, call 1-866-981-4800
or visit www.girardgibbs com/silverado

*Este Aviso Le Informa Sobre un Acuerdo Legal Propuesto Que Puede Afectar Sus Derechos    Por Favor Lea Este Aviso Con*
*Cuidado  Para mas informacion o una copia de este aviso en español, llama 1-866-981-4800 o lo visita*
www.girardgibbs com/silverado

## PLAINTIFFS' STATEMENT ABOUT THE CASE

This lawsuit is brought by Plaintiff Jason Anderson against General Motors Corporation ("GM")   The lawsuit alleges that GM has an Engine Knock Noise "Adjustment Program" under which it provides certain owners and lessees of Silverado trucks with extended warranties, General Motors Protection Plans ("GMPPs") or other benefits when they complain that their vehicles have or have had piston or piston pin noise at initial start up that goes away shortly after the engine warms up ("Start Noise")   Plaintiff claims GM violated California's "Secret Warranty" Law, Cal Civil Code §§ 1795 90 *et seq* , and Unfair Competition Law, Cal Bus & Prof Code § 17200 *et seq* , because GM failed to notify all 1999-2003 Silverado owners and lessees about its Adjustment Program, or inform them that they may be eligible for a free GMPP or other benefits offered under that Program

## GM'S STATEMENT ABOUT THE CASE:

GM denies Plaintiff's claims, and contends that it lawfully assisted a small percentage of Silverado owners and lessees whose trucks may make a particular type of engine knock noise at cold start-up that goes away within a few seconds   GM contends this type of noise has no adverse effect on the durability, reliability or performance of the engine   GM contends it has given assistance in the form of free GMPPs or other goodwill measures to promote customer satisfaction, and that its goodwill measures do not constitute a "secret warranty" or "Adjustment Program" under California law

## CERTIFIED CLASS ACTION

The case was certified as a class action by a Los Angeles Court on behalf of the following Class

> All California owners and lessees of 1999-2003 Chevrolet Silverados equipped with 4 8 liter, 5 3 liter, 6 0 liter or 8 1 liter engines ("Class Vehicles") who (1) Have an engine "knock, ping or slap" noise in their vehicles, and (2) Were not given notice of the condition giving rise to or the terms of GM's Engine Knock Noise Adjustment Program

For purpose of this Notice and the Settlement, "knock, ping or slap noise" has the same meaning as "Start Noise" (piston or piston pin noise at initial engine start up that disappears shortly after the engine warms up), or "Constant Noise" (piston or piston pin noise that is not "Start Noise," for example, noise that continues or begins after the engine warms up)

*This is not a solicitation from a lawyer*

## AGREEMENT TO SETTLE:

Plaintiff and Class Counsel believe the proposed Settlement is in the best interests of the Class, that is desirable to settle this lawsuit to avoid the uncertainties of continued litigation, and that the terms and benefits of the Settlement described in this Notice provide fair, reasonable relief to the Class

GM expressly denies any wrongdoing and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any fact or any claim asserted in the lawsuit  GM has concluded, however, that it is desirable to settle the lawsuit upon the terms and conditions described in this Notice because it will (1) fully resolve all claims raised in the lawsuit, (2) avoid the expense, burden and uncertainties of continued litigation, trial or appeal, and (3) promote customer satisfaction with GM and Chevrolet vehicles

## BENEFITS AVAILABLE TO CLASS MEMBERS

If the Court approves the Settlement, Class Members will be able to make claims for multiple settlement benefits as described in paragraphs 1, 2, 3 and 4, below, and will receive all benefits for which they are eligible   This includes benefits for multiple, unreimbursed repair expenses   Unreimbursed repair expenses do not include expenses covered, paid for or reimbursed under any extended warranty, GMPP or other service contract  GM may reduce the amount to be reimbursed to a Class Member by the amount, if any, previously paid by GM or any affiliate of GM for the same expense

**If the Court Approves the Settlement, you will be mailed a Claim Form and instructions that explain (1) how to make a claim for settlement benefits, and (2) the deadline for submitting a timely claim**

The settlement benefits available to Class Members include

1. **Reimbursement of Purchase Price of GMPPs Purchased by Certain Class Members:**

   Class Members who purchased GMPPs for Class Vehicles will be eligible for reimbursement subject to the provisions of paragraphs (a) or (b) below, if they timely return a signed and completed Claim Form and required documentation, if any, as further described below

   **[continued on next page]**

*Please do not contact the Court regarding this Notice.*

2

(a) <u>Class Members Who Purchased a GMPP Within 90 Days of Retail Delivery</u>  GM will reimburse each Class Member in this group for the full purchase price of the GMPP paid by the Class Member if the Class Member supplies appropriate documentation showing that his or her Silverado has or had Start Noise

(b) <u>Class Members Who Purchased a GMPP After 90 Days of Retail Delivery</u>  GM will reimburse each Class Member in this group for the purchase price of the GMPP paid for by the Class Member if the Class Member states under penalty of perjury that his or her Silverado has or had Start Noise

2. **Customer-Paid Start Noise Repair Expense Reimbursement**

For each Class Member who during the Applicable Warranty Period (defined below) paid for a repair to address concerns about Start Noise for which the Class Member was not fully reimbursed, GM upon receipt of (i) a signed and completed Claim Form stating under penalty of perjury that he or she sought the repair to address a concern about Start Noise and (ii) appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order) will reimburse the Class Member for the repair expense

Only for purposes of eligibility for this settlement benefit, "Applicable Warranty Period" shall mean the GM Limited New Vehicle Warranty (3 years or 36,000 miles, whichever comes first) <u>except that</u> for those Class Members who purchased a GMPP, the time and mileage limitations for reimbursement of repair expenses under this paragraph shall be those set forth in the Class Member's GMPP (for example, 4 years or 50,000 miles, whichever comes first)

3. **Constant Noise Evaluation**

For each Class Member who completes and returns a Claim Form which includes the Class Member's sworn statement that prior to the expiration of his or her GM New Vehicle Limited Warranty he or she made inquiry of or expressed concerns to an authorized GM dealer or GM about Constant Noise (i e , piston or piston pin noise that is *not* Start Noise), GM

will, upon presentation of the Class Vehicle to an authorized Chevrolet dealer, provide a current noise evaluation of the Class Vehicle  If the current noise evaluation confirms that the Class Vehicle has Constant Noise, GM will offer at the Class Member's option repairs to address, remedy or eliminate Constant Noise ("Constant Noise Repairs"), including where appropriate replacement of piston assemblies or other appropriate components  Any Constant Noise Repair offer that is accepted by the Class Member pursuant to this paragraph will be performed at no cost to the Class Member

4. **Partial Reimbursement for Certain Other Repairs**

For each Class Member who completes and returns a Claim Form which includes the Class Member's statement under penalty of perjury that he or she made inquiry of or expressed concerns to an authorized GM dealer or GM about Start Noise prior to expiration of the GM Limited New Vehicle Warranty (3 years or 36,000 miles after retail sale or lease, whichever came first) and that he or she incurred expenses for any of the engine repairs described below within 6 years or 100,000 miles of retail delivery, whichever came first, GM will reimburse the Class Member for 75 percent (75 %) of the repair expense shown on appropriate written documentation such as a repair order

The engine repairs eligible for this reimbursement <u>are limited to</u> repairs of the following engine components  Cylinder block, heads, crankshaft and bearings, crankshaft seals – front and rear, camshaft and bearings, connecting rods and pistons, valve train (including valve seals, valve covers and internal parts), timing gears, timing chain/belt and cover, oil pump, oil pump housing, oil pan, all engine seals and gaskets, lubricated internal engine parts, water pump, intake and exhaust manifolds, flywheel, harmonic balancer, and engine mounts

[continued on next page]

## CLAIMS PROCEDURES UPON SETTLEMENT APPROVAL

If the Court Approves the Settlement, you will be mailed a Claim Form and instructions that explain (1) how to make a claim for settlement benefits, and (2) the deadline for submitting a timely claim

Additional details about the claims resolution process appear in the Stipulation for Settlement filed in this action

To review an electronic copy of the Stipulation for Settlement, go to **www girardgibbs com/silverado**

## ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD TO PLAINTIFF

In November 2006, the Los Angeles Superior Court appointed the following lawyers as Class Counsel to represent the Class in this litigation

GIRARD GIBBS LLP
601 California Street, Suite 1400
San Francisco, CA 94108
www girardgibbs com

As part of the Settlement, and subject to Court approval, GM will pay up to $7,500 in an incentive award to Plaintiff Jason Anderson in recognition of his initiative and effort pursuing the matter on behalf of other California owners and lessees of Class Vehicles In addition, subject to Court approval, GM will pay a separate sum not to exceed $1,950,000 in attorneys' fees of Class Counsel GM will also reimburse Class Counsel for documented case costs and litigation expenses not to exceed $215,000 These amounts do not reduce the relief available to Class Members and are in addition to and separate from the other benefits available to Class Members under the Settlement

## COSTS OF SETTLEMENT ADMINISTRATION

GM will pay the cost of notice and of the claims administration associated with the Settlement

## DISMISSAL AND RELEASE OF CLAIMS

If the proposed Settlement is approved by the Court, then all legal claims that were asserted on behalf of Class Members in this Action will be dismissed with prejudice as to all Class Members, and all legal claims that may have been asserted in the litigation will be released This means that Class Members will be forever barred from bringing, continuing, or being part of any other lawsuit against GM for these claims

If the Court does not approve the proposed Settlement, the Settlement Agreement between GM and Plaintiff Jason Anderson on behalf of the certified class in the *Anderson v General Motors Corp* litigation will terminate and shall be null and void, and this lawsuit will remain before the Court for trial or ultimate disposition

## FAIRNESS HEARING, DATE AND LOCATION:

The Court will hold a Fairness Hearing to consider and then decide whether to approve the proposed Settlement, and determine whether to approve the proposed award of Attorneys' Fees and Expenses to Class Counsel and the proposed Incentive Award to Plaintiff The hearing is scheduled for **March 5, 2009, at 1:45 p.m.,** in Dept 322 of the Los Angeles County Superior Court, Central Civil West Courthouse, 600 S Commonwealth Avenue, Los Angeles, California before the Hon Peter D Lichtman

## PRELIMINARY INJUNCTION PENDING FAIRNESS HEARING

Pending the Fairness Hearing, all Class Members are preliminarily enjoined and barred (i) from filing or commencing any lawsuit based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, alleged in this Action and/or the Released Claims, and (ii) from filing or commencing any other lawsuit as a class action on behalf of Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, alleged in this Action and/or the Released Claims

[continued on next page]

## YOUR RIGHTS AND OPTIONS:

If you fall within the Class definition, you have the following options

1  PARTICIPATE IN THE SETTLEMENT. If you agree with the proposed Settlement, you need not do anything until after the Court decides whether to approve the Settlement   Thereafter, you will receive a Claim Form and instructions for submitting a claim for settlement benefits

2  COMMENT ON THE SETTLEMENT. You may write to the Court or Class Counsel to express your support for or opposition to the Settlement   In order to object to the Settlement, however, you **must** follow the procedures in paragraph 3 immediately below

3  OBJECT TO THE SETTLEMENT  If you wish to object to the Settlement or Class Counsel's request for attorneys' fees, expenses and an incentive award for Plaintiff Jason Anderson, you must submit your objection in writing   On the first page of your written objection, you must include a prominent reference to *In Re GM Cases (Anderson v General Motors Corp )*, JCCP No 4396   Your objections must include   (a) your full name, address and telephone number, (b) the year, model and vehicle identification number of your 1999-2003 Chevrolet Silverado, (c) a statement of each objection, if any, (d) a written brief detailing the specific reasons for each objection including the legal or factual support you wish to bring to the Court's attention and any evidence you wish to submit to the Court in support of your objection(s), and (e) your signature  If you wish to speak at the Fairness Hearing (described above), you also must state in your objections or comments that you intend to appear and speak at the hearing  If you do not include this statement, you will not be entitled to speak at the hearing

Objecting Class Members who intend to testify in support of the objection either in person or by affidavit or declaration must also make themselves available for deposition by Class Counsel or by GM's counsel in their county of residence, between the time the objection is filed and at least seven (7) days before the date of the Fairness Hearing

If you intend to appear at the Fairness Hearing through counsel, your written objection(s) must also state the following   (i) the identity of all attorneys representing the objector who will appear at the Fairness Hearing, (ii) the identity and number of Class Members represented by the objector's counsel, (iii) the number of such represented Class Members who have opted out of the Class and the Settlement, (iv) the number of such represented Class Members who have remained in the Settlement and have not objected, (v) the date the objector's counsel assumed representation for the objector, and (vi) a list of the names of all cases where the objector's counsel has objected to a class action settlement in the last three years   To appeal from any provision of the Court's order approving the Settlement as fair, reasonable and adequate, the award of an incentive payment to Jason Anderson, or the attorneys' fees or documented expenses awarded to Class Counsel, the objector must appear at the Fairness Hearing in person, or through counsel, or seek leave of Court excusing such appearance prior to the Fairness Hearing, or as otherwise may be permitted by the Court at the Fairness Hearing   In addition, the objector must demonstrate compliance with this paragraph to show that he or she is a member of the Class

Class Members, or their attorneys, intending to make an appearance at the Fairness Hearing must deliver to Class Counsel and GM's counsel, and have file-stamped by the Court, no later than **February 2, 2009**, a Notice of Intent to Appear The Notice of Intent to Appear must  (i) state how much time the Class Member and/or their attorney anticipates needing to present the objection, (ii) identify, by name, address and telephone number and detailed summary of testimony, any witnesses the Class Member intends to present any testimony from, and (iii) identify all exhibits the Class Member and/or their attorney intends to offer in support of the objection and attach complete copies of all such exhibits

If you do not raise your objections according to this procedure, you will waive all objections and have no right to appeal if the Settlement is approved You may, but need not, enter an appearance in the lawsuit and object through your own legal counsel If you do, you will be responsible for your own attorneys' fees and costs

[continued on next page]

*This is not a solicitation from a lawyer*

5

*Please do not contact the Court regarding this Notice*

## OBJECTION/COMMENT DEADLINE:

You **must** mail or deliver your comments or objections, and your Notice of Intent to Appear if you wish to attend the Fairness Hearing, to the Clerk of the Court, with copies to Plaintiffs' Class Counsel and GM's counsel, for receipt no later than **February 2, 2009**, at the following addresses

### Clerk of the Court

Superior Court, County of Los Angeles
Central Civil West Courthouse
Department 322
600 S Commonwealth Avenue
Los Angeles, California 90005

### Class Counsel

Elizabeth C Pritzker
Girard Gibbs LLP
601 California Street, 4th Floor
San Francisco, California 94108

### Counsel for General Motors Corporation

Gregory R Oxford
Isaacs Clouse Crose & Oxford LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503

## ADDITIONAL INFORMATION

You may wish to keep this Notice for future reference If the Settlement is approved, this Notice may be helpful in filling out your Claim Form for settlement payments or other benefits

For more information about the Settlement, or a copy of this Notice in Spanish, call 1-866-981-4800, or visit www.girardgibbs com/silverado You also can direct any inquires to Class Counsel at the address listed above or by sending an email to silveradosettlement @girardgibbs com

## INFORMACIÓN ADICIONAL.

Usted puede desear guardar este aviso para la referencia futura Si el establecimiento es aprobado, este aviso puede ser provechoso en rellenar su impreso de demanda para los pagos del establecimiento u otras ventajas

Para mas informacion o una copia de este aviso en español, llama 1-866-981-4800 o lo visita www.girardgibbs com/silverado Usted puede tambien dirigir cualesquiera investiga para clasificar consejo en la dirección enumerada sobre o enviando un email a silveradosettlement @girardgibbs com

DATED. DECEMBER 18, 2008

**BY ORDER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES**

*This is not a solicitation from a lawyer*          *Please do not contact the Court regarding this Notice*

# EXHIBIT F

1    ERIC H. GIBBS (S.B. #178658)
     ELIZABETH C. PRITZKER (S.B. #146267)
2    GIRARD GIBBS LLP
     601 California St., 14th Floor
3    San Francisco, California 94108
     Tel; (415) 981-4800; Fax: (415) 981-4846
4

5    Attorneys for Plaintiff Jason Anderson and the Class

6    GREGORY R. OXFORD (S.B. #62333)
     ISAACS CLOUSE CROSE & OXFORD LLP
7    21515 Hawthorne Boulevard, Suite 950
     Torrance, California 90503
8    Tel: (310) 316-1990; Fax: (310) 316-1330

9    Attorneys for Defendant General Motors Corporation

10    Of Counsel

11    L. JOSEPH LINES, III
     GENERAL MOTORS CORPORATION
12    Mail Code 482-026-601
     400 Renaissance Center
13    P.O. Box 400
     Detroit, Michigan 48265-4000
14    Tel: (313) 665-7386; Fax: (313) 665-7376

ORIGINAL FILED

~~FEB 27 2009~~

~~LOS ANGELES
SUPERIOR COURT~~

RECEIVED

FEB 27 2009

Dept. 322

**ORIGINAL FILED**

MAR 05 2009

LOS ANGELES
SUPERIOR COURT

15

16          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

                **COUNTY OF LOS ANGELES**

17        **CENTRAL CIVIL WEST COURTHOUSE**

18

19    Coordination Proceeding Special Title    )
     (Rule 1550(c))    )
20           )
       **GENERAL MOTORS CASES**    )
21           )
    ─────────────────────────── )
22    This Document Relates to:    )
          )
23    JASON ANDERSON, on behalf of himself    )
     and all others similarly situated,    )
24           )
             Plaintiff,    )
25           )
            v.    )
26           )
     GENERAL MOTORS CORPORATION,    )
27           )
            Defendant.    )
28           )
          )

Judicial Council Proceeding No. 4396

Orange County Superior Court No. 04CC00554.

CERTIFIED CLASS ACTION

The Honorable Peter D. Lichtman

**FINAL JUDGMENT**

1        This matter having come before the Court on the application of Representative Plaintiff Jason

2    Anderson, individually and as a representative of a class of similarly situated persons (collectively,

3.   "Plaintiffs"), and General Motors Corporation ("GM") for approval of the Settlement set forth in the

4    Stipulation of Settlement and the exhibits thereto (collectively the "Agreement"), and the Court having

5    considered all papers filed, all evidence submitted and proceedings had herein and otherwise being

6    fully informed;

7        **IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

8        1.    The Court has jurisdiction over the subject matter of this litigation, and over all parties

9    to the litigation, including all members of the following Class defined in the Court's previous order

10   granting class certification: "All California owners and lessees of 1999-2003 model year Chevrolet

11   Silverados equipped with a 4.8 liter (LR4, 5.3 liter (LM7), 6.0 liter (LQ4, L59) or 8.1 liter (L18)

12   engines who (1) Have an engine "knock, ping or slap" noise in their vehicles; and (2) Were not given

13   notice of the condition giving rise to or the terms and conditions of GM's Engine Knock Noise

14   Adjustment Program." For purposes of this Settlement and the Final Judgment, "engine knock, ping or

15   slap noise" has the same meaning as "Start Noise" (i.e., piston or piston pin noise that occurs at initial

16   start up and disappears shortly after the engine warms up) or "Constant Noise" (i.e., piston or piston

17   pin noise that is not Start Noise), as those terms are defined in the Agreement. Excluded from the

18   Class are those California owners and lessees of 1999-2003 model year Chevrolet Silverados who

19   timely requested to be excluded from the Class on or prior to August 15, 2007. Subrogees, assignees

20   and other third parties are not Class Members, are not eligible to receive any benefits under this

21   Settlement and are not subject to any releases executed by or on behalf of the Representative Plaintiff

22   or Class Members.

23       2.    Pursuant to Section 382 of the Code of Civil Procedure, the Court hereby finds that the

24   members of the proposed Class are so numerous that joinder of all members is impracticable, that there

25   are questions of law and fact common to the Class, that the claims of the named plaintiff are typical of

26   the claims of Class and that Representative Plaintiff, Jason Anderson, and the law firm of Girard Gibbs

27   LLP, as Class Counsel, have fairly and adequately represented the Class and will continue to do so.

28   The Court further finds that questions of fact common to the Class predominate over factual questions

1  affecting only individual members and that a class action is superior to other available methods for the

2  fair and efficient adjudication of the controversy. Accordingly, the Court reaffirms its prior

3  certification of the Class as defined in paragraph 1 above and hereby finds that, for settlement

4  purposes, and for purposes of the Agreement and the Settlement, the Action and the above-defined

5  Class meet the requirements for the bringing and maintenance of a class action set forth in section 382

6  of the Code of Civil Procedure.

7       3.    The Court hereby finds that: (a) the Settlement memorialized in the Agreement has been

8  entered into in good faith and was concluded shortly before trial after Class Counsel and GM had

9  conducted extensive discovery, investigation and legal research concerning the issues raised by

10  Plaintiff's claims; (b) the Settlement evidenced by the Agreement is fair, reasonable and adequate as to,

11  and in the best interests of, the Class Members; (c) the Settlement delivers benefits to the Class in a

12  reasonably timely manner while resolving complex issues that would require expensive and long-

13  lasting litigation; (d) the Agreement was the result of extensive arms' length negotiations among highly

14  experienced counsel, with full knowledge of the risks inherent in this litigation and under the

15  supervision of Los Angeles Superior Court Judge Carl J. West, an experienced settlement judge; (e)

16  there is no evidence of collusion or fraud in connection with the Settlement; (f) the investigation and

17  discovery conducted to date suffices to enable the parties and the Court to make an informed decision

18  as to the fairness and adequacy of the Settlement; (g) the case raised complex and vigorously contested

19  issues of law and fact that would result in complex, expensive, and lengthy litigation; (h) Plaintiff faced

20  significant risks in establishing liability and damages; and (i) the release is tailored to address the

21  allegations in the case.

22       4.    The Court hereby finds that the Agreement and Settlement are, in all respects, fair,

23  reasonable, and adequate, and in the best interests of the Class. The Court grants final approval of the

24  Agreement and Settlement, and directs the Parties to perform the terms of the Agreement.

25       5.    Upon the Effective Date set forth in the Agreement, the Representative Plaintiff and the

26  Class Members, by operation of this Judgment, shall have hereby released, waived and discharged any

27  and all claims, demands, causes of action or liabilities, including but not limited to those for alleged

28  violations of any state or federal statutes, rules or regulations, and all common law claims, including

1    Unknown Claims as defined in the Agreement, based on or in any way related to the factual allegations

2    and legal claims that were made in the Action, including any claim that any repair should have been

3    paid for, reimbursed or provided to Class Members pursuant to the Motor Vehicle Warranty

4    Adjustment Programs law, Civ. Code § 1795.90 *et seq.* Upon the Effective Date set forth in the

5    Agreement, the Representative Plaintiff and Class Members, by operation of this Judgment, also shall

6    have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights

7    and benefits of Section 1542 of the California Civil Code, and of any similar law of any other state,

8    which provides: "a general release does not extend to claims which the creditor does not know or

9    suspect to exist in his or her favor at the time of executing the release, which if known by him or her

10    must have materially affected his or her settlement with the debtor." Claims for personal injury or

11    claims based on or related to engine noise conditions in Class Vehicles other than Start Noise or

12    Constant Noise are not released, waived or discharged by this Judgment. Consistent with the express

13    terms of the Agreement, subrogation claims are not being released as part of this Judgment.

14        6.    Upon the Effective Date, GM shall be deemed to have released, waived and discharged

15    any and all claims or causes of action, known or unknown, against the Representative Plaintiff or Class

16    Counsel based on or in any way related to any of the allegations, acts, omissions, transactions, events

17    or other matters alleged, claimed or at issue in the Action, provided that this release shall not extend to

18    any claim for breach of the Agreement or violation of this Final Judgment.

19        7.    The Court hereby orders and declares (a) the Agreement is approved by the Court and

20    shall be binding on all Class Members; and (b) the Agreement as approved by this final judgment is

21    and shall be binding and preclusive in all pending and future lawsuits or other proceedings whether in

22    state or federal court. Each and every term and condition of the Agreement as a whole (including its

23    attached exhibits) is approved as proposed and is to be effective, implemented, and enforced as

24    provided in the Agreement.

25        8.    The Court finds that the Class Action Settlement Notice and methodology implemented

26    pursuant to this Court's Preliminary Approval Order provided the best notice practicable under the

27    circumstances. The Court further finds that the Class Action Settlement Notice advised each member

28    of the Class, in plain easily understood language: (a) the nature of the suit; (b) the definition of the

1   Class certified; (c) the class claims, issues, and defenses; (d) the nature of the settlement benefits

2   available to Class Members under the Settlement; (e) the procedures available to Class Members to

3   claim settlement benefits and for adjudicating disputes relating to eligibility or disbursement of

4   settlement benefits; (f) that a Class Member could enter an appearance through counsel if desired; and

5   (g) that the judgment incorporating the Settlement will fully release GM, dismiss this lawsuit with

6   prejudice, and include and bind all members of the Class who did not timely request exclusion. The

7   Court finds that the Class Action Settlement Notice and methodology fully complied with all

8   applicable legal requirements, including the Due Process Clauses of the Constitutions of the United

9   States and the State of California and the California Code of Civil Procedure and Rules of Court.

10      9.      The Court finds that Class Counsel and the Representative Plaintiff adequately

11   represented the Class for purposes of entering into and implementing the Agreement.

12      10.     All Class Members are, from this day forward, hereby permanently barred and enjoined

13   from:

14      (a)     filing or commencing any lawsuit in any jurisdiction based on or relating to: (i) the

15   claims and causes of action asserted in this Action; (ii) the facts and circumstances relating to this

16   Action; or (iii) the Released Claims, or

17      (b)     organizing Class Members, or soliciting the participation of Class Members, in a

18   separate class for purposes of pursuing as a purported class action any other lawsuit (including by

19   seeking to amend a pending complaint to include class allegations, or seeking class certification in a

20   pending action in any jurisdiction) based on or relating to: (i) the claims and causes of action asserted

21   in this Action; (ii) the facts and circumstances relating to this Action; or (iii) the Released Claims.

22      11.     Representative Plaintiff is awarded an Incentive Award in the total sum of  $ 7,500.

23   Class Counsel are hereby awarded the total sum of $ 1,950,000 in Attorneys' Fees, and the total sum of

24   $ 212,500 in Documented Costs and Expenses.  Defendant shall pay the Incentive Award, Attorneys'

25   Fees and Documented Costs and Expenses in accordance with the Agreement.  GM shall have no

26   responsibility for and no liability with respect to the allocation of Attorneys' Fees to Class Counsel or

27   any other person who may assert some claim thereto.

28      12.     The terms of the Agreement as approved by this final judgment shall be forever binding

1   on, and shall have *res judicata* effect and preclusive effect in, all pending and future lawsuits or other

2   proceedings that may be maintained by or on behalf of the Representative Plaintiff or any Class

3   Members, as well as their collective heirs, executors, administrators, successors and assigns, relating to

4   the Action and/or the Released Claims (as defined in the Agreement).

5         13.    Neither this Final Judgment nor the Agreement (nor any document referred to herein or

6   any action taken to carry out this Final Judgment) is, may be construed as, or may be used as an

7   admission by GM of the validity of any claim, of actual or potential fault, wrongdoing or liability

8   whatsoever. Entering into or carrying out the Agreement and any negotiations or proceedings relating

9   to the Settlement shall not in any event be construed as, or deemed to be evidence of, an admission or

10   concession of GM and shall not be offered or received into evidence in any action or proceeding

11   against any party hereto in any court, judicial, administrative, regulatory hearing, arbitration, or other

12   tribunal or proceeding for any purpose whatsoever, except in a proceeding to enforce the Agreement.

13   This Final Judgment and the Agreement it approves (including exhibits thereto) may, however, be filed

14   in any action against or by GM to support its defense of *res judicata*, collateral estoppel, release, good

15   faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or

16   similar defense or counterclaim, as set forth in paragraph 12 of this Final Judgment.

17         14.    Representative Plaintiff's First Amended Complaint and this entire Action, including all

18   individual claims and Class claims asserted or that could have been asserted herein, is hereby

19   DISMISSED WITH PREJUDICE, without fees, costs, or expenses to any party except as otherwise

20   provided herein.

21         15.    Without affecting the finality of this Final Judgment in any way, this Court hereby

22   retains continuing jurisdiction over (a) implementation of the Settlement; (b) payment of Class

23   Members' claims under the Settlement; (c) further proceedings, if necessary, on Plaintiff's and Class

24   Counsel's applications for Attorneys' Fees, Documented Costs and Expenses, or Incentive Awards

25   previously filed herein; and (d) the Parties for purposes of construing, enforcing, or administering the

26   Agreement. If any Party fails to fulfill its obligations completely, the Court retains the power to issue

27   such orders to enforce this Judgment and the Settlement as it deems appropriate after noticed hearing.

28         16.    If the Settlement does not become effective in accordance with the terms of the

Agreement, then this Final Judgment shall be rendered null and void to the extent provided by and in accordance with the Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

**IT IS SO ORDERED.**

PETER D. LICHTMAN

Dated: _____3/5/09_____

_____
THE HONORABLE PETER D. LICHTMAN

# EXHIBIT G

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                :

In re                       :         **Chapter 11 Case No.**

**MOTORS LIQUIDATION COMPANY,** *et al.,*   :         **09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al.*    :
                              :

                **Debtors.**       :         **(Jointly Administered)**
                              :
------------------------------------------------------------x

## STIPULATION AND ORDER BETWEEN THE DEBTORS AND THE HOLDERS OF UNLIQUIDATED DEX-COOL AND ANDERSON CLAIMS TO ALLOW CLASS PROOFS OF CLAIM FOR DEX-COOL AND ANDERSON CLASS CLAIMANTS

          Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11

cases (collectively, the "**Debtors**" or "**MLC**"), and the holders of Unliquidated Dex-Cool Claims

(as defined below), and the holders of Unliquidated Anderson Claims (as defined below), by and

through their respective undersigned counsel, hereby enter into this Stipulation and Agreed

Order (this "**Stipulation**") and stipulate as follows:

### RECITALS

    A.        On June 1, 2009 (the "**Commencement Date**"), the Debtors commenced with this

Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States

Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code. No trustee or examiner has been appointed. On or about June 3,

2009, an Official Committee of Unsecured Creditors (the "**Committee**") was appointed in the

Chapter 11 Cases. The Chapter 11 Cases are being jointly administered pursuant to Rule

1015(b) of the Bankruptcy Rules.

B.    On September 16, 2009, the Court entered an order (the "**Bar Date Order**")

establishing November 30, 2009 at 5:00 p.m. (Eastern Time) (the "**General Bar Date**") as the

deadline for each person or entity (including without limitation, each individual, partnership,

joint venture, corporation, estate, or trust) to file a proof of claim (a "**Proof of Claim**") against

any Debtor to assert any claim (as defined in section 101(5) of the Bankruptcy Code) (a

"**Claim**") that arose prior to the Commencement Date.

C.    On April 29, 2003 certain consumers filed class actions against MLC in the 16th

Judicial Circuit Court (Jackson County) of the State of Missouri (the "**Gutzler Class Action**")

and in the Superior Court of the State of California for the County of Alameda (the "**Sadowski**

**Class Action**" and together with the Gutzler Class Action, the "**Dex-Cool Class Actions**").    In

both the Gutzler Class Action and the Sadowski Class Action, the parties entered into a

settlement agreement approved by each court (collectively, the "**Dex-Cool Settlement**

**Agreement**").    Prior to the Commencement Date, the administration of the Dex-Cool Settlement

Agreement had been substantially completed.    However, certain claims in connection with the

Dex-Cool Class Actions had not yet been liquidated pursuant to the terms of the Dex-Cool

Settlement Agreement (the "**Unliquidated Dex-Cool Claims**").

D.    On May 18, 2004 certain consumers filed a class action against MLC in the

Superior Court of the State of California for the County of Los Angeles, Central Civil West

Courthouse (the "**Anderson Class Action**").    In the Anderson Class Action, the parties entered

into a settlement agreement approved by the court (the "**Anderson Settlement Agreement**").

Prior to the Commencement Date, the administration of the Anderson Settlement Agreement had

been initiated.    However, certain claims in connection with the Anderson Class Action had not

yet been liquidated pursuant to the terms of the Anderson Settlement Agreement (the

"**Unliquidated Anderson Claims**").

     **NOW, THEREFORE,** in consideration of the mutual covenants and agreements

set forth in this Stipulation, it is agreed as follows:

<u>**AGREEMENT**</u>

    1.    On behalf of the holders of Unliquidated Dex-Cool Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors, and the Debtors agree that the undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Dex-Cool Claims.

    2.    On behalf of the holders of Unliquidated Anderson Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors and the Debtors agrees that undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Anderson Claims.

    3.    The undersigned class counsel, by filing the Class Proofs of Claim in respect of

the Unliquidated Dex-Cool Claims and the Unliquidated Anderson Claims, consents to and

hereby is deemed to be the claimant for the purpose of receiving notices and distributions, if

any, except as otherwise provided in a confirmation order related to a chapter 11 plan filed in

the Chapter 11 Cases, and may (but shall not be required to) respond to any objections

interposed as to any claims asserted in each applicable Class Proof of Claim.  Notice to the

undersigned class counsel shall be, and shall be deemed to be, sufficient notice to all class

members in the Dex-Cool Class Action and the Anderson Class Action.

4.     The Debtors' agreement herein to permit the filing by the undersigned class counsel of each Class Proof of Claim is intended solely for the purpose of administrative convenience and neither this Stipulation and Order nor the filing of any Class Proof of Claim shall in any way prejudice the right of any Debtor or any other party in interest to object to the allowance of any Class Proof of Claim.

5.     This Court shall retain jurisdiction to resolve any disputes or controversies arising from or relating to this Stipulation and Order and to the filing of the Class Proofs of Claim pursuant to this Stipulation.

6.     This Stipulation is subject to the approval of this Court and shall become effective upon the entry of an order by the Court approving this Stipulation. If this Stipulation is not approved by the Court, then this Stipulation shall be deemed null and void, and shall not be referred to or used for any purpose by any of the parties hereto (the "**Parties**") in either the Chapter 11 Cases or in any other forum.

7.     This Stipulation sets forth the entire understanding of the Parties with respect to the matters addressed herein and is intended to be the complete and exclusive statement of the terms thereof and may not be modified or amended except by a writing signed by the Parties and/or their counsel, which shall be so-ordered by the Court. Accordingly, the Parties have independently verified all facts and/or conditions of facts that they have determined are necessary to their decision to enter into this Stipulation, and they have not relied upon any representations, written or oral, express or implied, of any other person in verifying and satisfying themselves as to such facts and/or condition of facts.

8.     The Parties represent and warrant to each other that the signatories to this Stipulation have full power and authority to enter into this Stipulation.

9.      This Stipulation may be executed in multiple counterparts, each of which shall

be deemed an original but all of which together shall constitute one and the same instrument.

Delivery of signed counterparts of this Stipulation by facsimile transmission or as PDF

attachment to an email message shall have the same effect as the manual delivery of an original

signed counterpart of this Stipulation, and all signatures on such counterpart will be deemed to

be as valid as an original signature whether or not a Party delivers manually an original signed

counterpart of this Stipulation, although it is the Parties' intention to deliver an original signed

counterpart after any facsimile or email delivery.


DATED: November ___, 2009                    Respectfully submitted,



**GIRARD GIBBS LLP**                          **POLSINELLI SHUGHART P.C.**



By: /s/ A. J. de Bartolomeo                   By: P. John Brady
A. J. De Bartolomeo                           P. John Brady

Eric H. Gibbs                                 Twelve Wyandotte Plaza
Dylan Hughes                                  120 West 12th Street
Geoffrey A. Munroe                            Kansas City, Missouri 64105
601 California Street, 14th Floor             Telephone: (816) 421-3355
San Francisco, California  94108              Facsimile: (816) 374-0509
Telephone: (415) 981-4800
Facsimile: (415) 981-4846                     *Court-Appointed Class Counsel in Dex-Cool*

*Court-Appointed Class Counsel in Dex-Cool*
*Class Action and Anderson*

**WEIL, GOTSHAL & MANGES LLP**


By: <u>Joseph H. Smolinsky</u>
Joseph H. Smolinsky

767 Fifth Avenue
New York, New York 10153
Attention: Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Phone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors and Debtors in*
*Possession*

## ORDER APPROVING STIPULATION

Based on the foregoing stipulation of the parties, the Court finding that good cause exists to approve the Stipulation as an order of the Court, that adequate notice of the Stipulation has been provided, and that no further notice is required,

IT IS HEREBY ORDERED that the foregoing stipulation is approved and incorporated by reference and made a part of this Order.

IT IS FURTHER ORDERED that this Court will retain jurisdiction to adjudicate any disputes arising in connection with this Order.

Date: ___*December 1, 2009*___
      New York, New York

                                  *s/ Robert E. Gerber*
                                  UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT H

## EXHIBIT "H"

## PLAN OF ALLOCATION

**RELIEF AVAILABLE TO PARTICIPATING ANDERSON CLASS MEMBERS:**[1]  Under the Agreement, Participating Anderson Class Members may obtain the following relief, distributed by Class Counsel on a *pro rata* basis from cash proceeds resulting from the sale or assignment of the Total Allowed Unsecured Claim to any third party or from the sale of any stock or shares, in the open market or otherwise, distributed in accordance with the Plan (collectively, the "Cash Proceeds"):

1) **Reimbursement of Purchase Price of GMPP Purchased.**

   a) Participating Anderson Class Members Who Purchased a GMPP Within 90 Days of Retail Delivery.  Each Participating Anderson Class Member in this group may obtain reimbursement, on a *pro rata* basis of the Cash Proceeds, up to the full purchase price of the GMPP paid by such member if the Participating Anderson Class Member has supplied documentation of the GMPP value and has submitted appropriate documentation showing that his or her Silverado has or had Start Noise.  If the Participating Anderson Class Member has not submitted documentation of the GMPP value but has supplied appropriate documentation showing that his or her Silverado has or had Start Noise, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis of the Cash Proceeds, in the amount of $1,800.00.  If the Participating Anderson Class Member has not submitted documentation of the GMPP value and has not supplied complete documentation showing that his or her Silverado has or had Start Noise but otherwise has a valid claim, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis of the Cash Proceeds, in the amount of $900.00.

   b) Participating Anderson Class Members Who Purchased a GMPP After 90 Days of Retail Delivery.  Each Participating Anderson Class Member in this group may obtain reimbursement, on a *pro rata* basis of the Cash Proceeds, up to the purchase price of the GMPP paid for by such member if the Participating Anderson Class Member has supplied documentation of the GMPP value and has stated under penalty of perjury that his or her Silverado has or had Start Noise.  If the Participating Anderson Class Member has not submitted documentation of the GMPP value but has stated under penalty of perjury that his or her Silverado has or had Start Noise, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis of the Cash Proceeds, in the amount of $1,800.00.  If the Participating Anderson Class Member has not submitted documentation of the GMPP value and has not stated under penalty of perjury that his or her Silverado has or had Start Noise, but otherwise has a valid claim, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis of the Cash Proceeds, in the amount of $900.00.

---

[1]    Defined terms shall be given the meaning ascribed to them in the Agreement.

2) **Customer-Paid Repair Expense Reimbursement.**

a) <u>Customer-Paid Start Noise Repair Expenses</u>.  Each Participating Anderson Class Member who, during the Applicable Warranty Period (defined below), paid for a repair to address concerns about Start Noise for which the Participating Anderson Class Member was not fully reimbursed may be reimbursed, on a *pro rata* basis of the Cash Proceeds, for the out-of-pocket repair expense incurred by such member if the Participating Anderson Class Member (i) signed, completed and submitted a Claim Form stating under penalty of perjury that he or she sought the repair to address a concern about Start Noise, and (ii) submitted appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order).  If the Participating Anderson Class Member has not submitted complete or appropriate documentation of the repair and repair expense, but the claim is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis of the Cash Proceeds, in the amount of one-half (50%) of the average repair expense for this category.

Only for purposes of eligibility for this settlement benefit, "Applicable Warranty Period" shall mean the GM Limited New Vehicle Warranty period (3 years or 36,000 miles, whichever comes first) <u>except that</u> for those Class Members who purchased a GMPP, the time and mileage limitations for reimbursement of repair expenses under this paragraph shall be those set forth in the Participating Anderson Class Member's GMPP (for example, 4 years or 50,000 miles, whichever comes first).

b) <u>Other Customer-Paid Covered Engine Repairs</u>.  Each Participating Anderson Class Member who paid for other Covered Engine Repairs for which the Participating Anderson Class Member was not fully reimbursed may be reimbursed, on a *pro rata* basis of the Cash Proceeds, for 75% of the out-of-pocket Covered Engine Repair expense incurred by such member if the Participating Anderson Class Member submitted appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order) and signed, completed and submitted a Claim Form stating under penalty of perjury that (i) he or she made inquiry or expressed concern to an authorized GM dealer or GM about Start Noise prior to expiration of the GM Limited New Vehicle Warranty Period (3 years or 36,000 miles after retail sale or lease, whichever came first), and (ii) an un-reimbursed expense was incurred within the earlier of 6 years or 100,000 miles of retail delivery, whichever came first.  If the Participating Anderson Class Member has not submitted complete or appropriate documentation of the repair and repair expense, but the claim is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis of the Cash Proceeds, for one-half (50%) of the average amount of the reimbursable Covered Engine Repair expenses for this category.

Only for purposes of eligibility for this settlement benefit, "Covered Engine Repairs" shall include <u>only</u> unreimbursed repair expense for the following engine components:

- cylinder block, heads, crankshaft and bearings;

- crankshaft seals -  front and rear;

- camshaft and bearings;

- connecting rods and pistons;

- valve train (including valve seals, valve covers and internal parts);

- timing gears;

- timing chain/belt and cover;

- oil pump, oil pump housing, oil pan;

- engine seals and gaskets;

- lubricated internal engine parts;

- water pump;

- intake and exhaust manifolds;

- flywheel;

- harmonic balancer; and

- engine mounts.

3) **Constant Noise Repair Expense Reimbursement.**

a) <u>Constant Noise Expenses</u>.  Each Participating Anderson Class Member who signed, completed and submitted a Claim Form stating under penalty of perjury that, prior to the expiration of the GM Limited New Vehicle Warranty (3 years or 36,000 miles after retail sale or lease, whichever came first), he or she made inquiry or expressed concern to an authorized GM dealer or GM about Constant Noise and did not receive a repair, may be reimbursed, on a *pro rata* basis of the Cash Proceeds, in the amount of $1,800.00.  If the Participating Anderson Class Member has submitted an incomplete Claim Form but the claim is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis of the Cash Proceeds, in the amount of $900.00.

**The *pro rata* nature of the reimbursement payments under each of the foregoing is based on the amount of the cash proceeds resulting from the disposition, by Class Counsel, of the Total Allowed Unsecured Claim.  The resulting cash proceeds likely will be insufficient to pay Participating Anderson Class Members in full.**