Hearing Date and Time:  March 29, 2011 (9:30 a.m.)
Objection Deadline: Unknown

Samuel J. Behringer, Jr.
Attorney at Law
333 McKinley Avenue
Grosse Pointe Farms, MI 48236-3420
Telephone: (313) 885-1948
Facsimile: (313) 886-6443
March 16, 2011

Attorney for Calvin H. Purnell
83rd Omnibus Objection Respondent #62124

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

—————————————————————x
                                        :
In Re                                   :          Chapter 11 Case
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :          09-50026 (REG)
       f/k/a General Motors Corp., et al. :
                                        :
              Debtors.                  :          (Jointly Administered)
                                        :
—————————————————————x

## FIRST RESTATED
## CALVIN PURNELL RESPONSE AND OBJECTIONS
## TO DEBTORS' EIGHTY-THIRD OMNIBUS OBJECTION TO CLAIMS

Calvin H. Purnell, through his undersigned attorney, states the following response and

objections to the August 20, 2010 Debtors' 83rd Omnibus Objection to Claims.

### SUMMARY

Mr. Purnell began working at **OLD GM** on January 22, 1968 as a skilled trades employee.

In 1973 he became a salaried employee for its better benefits and retirement.  On March 22,

1998, upon attaining 30 years employment, his health and lifetime salary-rate life insurance

retirement benefits fully vested.

Mr. Purnell retired from the **Old GM** on July 1, 2001 contracting for retirement

benefits and lifetime salary-rate GM paid life insurance.   The record of this bankruptcy case

includes **Old GM** correspondence which states the post-retirement salary-rate life insurance

**"will remain in effect for the rest of your life and is provided by General Motors at no cost to**

**you.[1]"** Exhibit 1.   No repudiation clause exists in the retirement offer agreement which

negates this promise.  The Debtors' nevertheless contend irregularly published modification

and termination clauses in 2006-2010 documents render such lifetime representations void.

Exhibits 2(A)-(E).   Mr. Purnell argues the Old GM failed to reserve the right to modify or

terminate in its later "Your GM Benefits" brochures in effect from 1974 to 1985:

> "In addition, when General Motors did reserve its rights, this reservation
> was less than clear...   The issue of the reasonableness of the general
> retirees' reliance should have been remanded to the district court.  The
> reliance of those who retired from 1974 to 1985 appears eminently
> justified."

Mr. Purnell also asserts vested rights[2], estoppel[3], improper class certification and breach of

fiduciary duties.   Mr. Purnell also believes age discrimination has occurred.

---

[1]       See the David W. Turner Response and Objection to the Debtor's 182nd Omnibus Objection to Claims
as filed with this Court on January 26, 2011, Claim No. 27065,  and its attached copy of a GM National Retiree
Servicing Center letter dated December 4, 1995.  Exhibit 1.  And, see also, the Joseph C. Singer response and
objection to the same 182nd Omnibus Objection, Claim No. 29999, and its letter attachments.

[2]       Upon completion of thirty years employment, Mr. Purnell's retirement benefits and
insurance fully vested on March 22, 1998.

[3]       The lack of a repudiation clause which specifically invalidates the GM lifetime promises
letters (**"will remain in effect for the rest of your life and is provided by General Motors at no
cost to you"**, Exhibit 1) and the *"Confirmation of Benefit Elections"* which irregularly include

11 USC 1114(e) states that Debtors "shall timely pay and shall not modify any retiree benefits during the 180-day period ending on the date of the filing of the petition." When Mr. Purnell became 65 on February 20, 2009, the Debtors modified his benefits by terminating his lifetime health insurance and by also reducing the amount of his GM paid life insurance from the amount of his salary to $10,000[4].   Moreover, the **Old GM** did this modification without ever seeking to confer with Mr. Purnell "in good faith in attempting to reach mutually satisfactory modifications of such retiree benefits" as required by 11 USC 1114(f)(2).   Less than 180 days after Mr. Purnell's 65th birthday and this benefit modification, on June 1, 2009 **Old GM** filed this Chapter 11 bankruptcy proceeding.   Here, Mr. Purnell seeks to restore his retirement benefits and his lifetime GM paid salary-rate life insurance as permitted by 11 USC 1114.

First Affirmative Defense
**ILLUSORY DETERMINATION**

Contrary to the Debtors' assertions in Section (i) of Paragraph 2 and other places in their motion, the **New GM** does <u>not</u> recognize or pay all or any portion of the past, present or future lifetime health and life insurance retirement benefits of Calvin H. Purnell and his wife.

---

(and sometimes do not include) a modification/termination clause [Exhibits 1(A)(-(E)] found the estoppel claim.

[4]    Mr. Purnell acknowledges co-pay responsibility, typically @$121 for the health insurance, @$18.00 for the dental and @$6.00 for the vision.

<u>Second Affirmative Defense</u>
**ALL BENEFITS VESTED PRE-BANKRUPTCY**

All health and insurance retirement rights due to Mr. Purnell and his wife were fully

vested on his 30th employment anniversary in 1998 before his employment ended on July 1,

2001 and before June 1, 2009 when the Debtors filed their instant Chapter 11 bankruptcy

proceeding.  Mr. Purnell thus cannot be defined as a person with "alleged rights which were

in reality unvested (or) are otherwise not the responsibility of the Debtors as purportedly

"determined" and asserted by the Debtors in Section <u>(ii)</u> of Paragraph 2.


<u>Third Affirmative Defense</u>
**A PROHIBITED MODIFICATION/TERMINATION HAS OCCURRED**

The 11 USC 1114(e) requirement that the Debtors "shall timely pay and shall not modify

any retiree benefits" bars any modification of retirement benefits "during the 180-day period

ending on the date of the filing of the petition."   11 USC 1114(l).    When Mr. Purnell became 65

on February 20, 2009, the Debtors modified his benefits by terminating his lifetime health

insurance and by also reducing the amount of his GM paid life insurance from the amount of his

salary to $10,000.    Less than 180 days later, on June 1, 2009, the Debtors filed this Chapter 11

bankruptcy proceeding.  The Debtors' modification by termination of Mr. Purnell's lifetime

health and insurance retirement benefits is thus contrary to statute and illegal.


<u>Fourth Affirmative Defense</u>
**RIGHT TO PRE-MODIFICATION CONFERRENCE DENIED**

Moreover, before the Debtors unilaterally made these modifications,  the Debtors and

this retiree's authorized representative (which is this retiree because he is not a union member)

never "conferred in good faith in attempting to reach mutually satisfactory modifications of

such retiree benefits" as required by 11 USC 1114(f)(2). This plain language of the statute must

control as it existed before GM prepared the July 1, 2001 retirement offer agreement and has

never been knowingly waived by this retiree.


### Fifth Affirmative Defense
### PARAGRAPH AVERMENTS

Mr. Purnell states the following responses and objections to the individual paragraph

averments stated in the August 20, 2010 Debtors' 83rd Omnibus Objection to Claims.


### Relief Requested[5]

1.    Because Mr. Purnell cannot be defined as a person with "liabilities that

have been assumed by General Motors, LLC ('**New GM**')" pursuant to the **Master Purchase**

**Agreement** as asserted by the Debtor in Section (i) of Paragraph 2 and because he also cannot

be defined as a person with "alleged rights which were in realty unvested (or) are otherwise not

the responsibility of the Debtors as asserted by the Debtors in Section (ii) of Paragraph 2, the

purportedly "determined" two alternating basis for the Eighty-Third Omnibus Objection to

Claims do not apply to him.


2.    Mr. Purnell denies accuracy of the Debtors' alleged "determination" that

his claim should be disallowed and expunged for reason:

---

[5]    The Debtors' subtitles are inserted solely to facilitate reference and are not admissions of fact or conclusions of law.

A.      Mr. Purnell cannot be defined as a person with "liabilities that have been assumed by General Motors, LLC ('**New GM**')" pursuant to the **Master Purchase Agreement** as asserted by the Debtor in Section (i) of Paragraph 2 because the **New GM** has refused since February 20, 2009 to recognize and/or pay any of his past, present and future lifetime health and insurance retirement benefits.

B.      Mr. Purnell cannot be defined as a person with "alleged rights which were in realty unvested (or) are otherwise not the responsibility of the Debtors as asserted by the Debtors in Section (ii) of Paragraph 2 because his rights were fully vested on March 22, 1998, (i) before the July 1, 2001 termination/elimination of his job and (ii) before the June 1, 2009 filing of the Debtor's instant Chapter 11 proceeding.


Further responding to the allegations in Paragraph 2, the last sentence averments are false because **New GM** has refused since February 20, 2009  to recognize and/or pay any of Mr. Purnell's past, present and future lifetime health and insurance retirement benefits.

### Jurisdiction

3.      The allegations in Paragraph 3 are admitted.


### Background

4.      Mr. Purnell began his employment at General Motors on January 22, 1968 as a skilled trades employee.    In 1973 he accepted a salaried position because of the better benefits and retirement.    Upon completion of thirty years employment, his benefits and retirement fully vested on March 22, 1998.

In 2001 the original General Motors ("**Old GM**"), in one of a series of **Old GM** initiated group retirement programs targeted to the upper end of the pay scale and persons over 52 years of age, solicited Mr. Purnell to give up his job in exchange for the promise of negotiated lifetime health and insurance retirement benefits, to wit; lifetime health insurance for himself and his wife (plus retirement payments and salary-rate life insurance).

At the age of 57, Mr. Purnell accepted the offer.    A retirement offer agreement was prepared by the **Old GM** and it was signed by both parties.    Mr. Purnell was not involuntarily terminated and the salaried plan was neither amended nor terminated to provide him this lifetime benefit.    The **New GM** did not exist at this point in time.    Mr. Purnell retired from the **Old GM** on July 1, 2001.

The record of this bankruptcy case includes **Old GM** correspondence which states the post-retirement salary-rate life insurance **"will remain in effect for the rest of your life and is provided by General Motors at no cost to you.**[6]**"**  Exhibit 1.    It cannot be stressed enough; no express repudiation of this written representation appears in either Mr. Purnell's retirement offer agreement or the annual written "*Confirmation of Benefit Elections*" published by the Old GM.    Instead, the Debtors rely on irregularly written reservations of a general right to modify or terminate these benefits:

-In 2006, the modification/termination clause the Debtors rely upon appears in <u>normal</u>

---

[6]       See the David W. Turner Response and Objection to the Debtor's 182nd Omnibus Objection to Claims as filed with this Court on January 26, 2011, Claim No. 27065,  and its attached copy of a GM National Retiree Servicing Center letter dated December 4, 1995.  Exhibit 1.   And, see also, the Joseph C. Singer response and objection to the same 182nd Omnibus Objection, Claim No. 29999, and its letter attachments.

type on page 6 in the 4 sentence 6th paragraph of the 2006 *"Confirmation of Benefit Elections"* published by the Old GM.  See Exhibit 2(A);

> "The information presented in this application[7] briefly describes certain General Motors Salaried Health Care Program features, as well as other programs and benefits.  It does not cover all the details about the Programs - which are found in plan documents that have the final word over any other oral or written statement.  General Motors reserves the right to amend, modify, suspend, or terminate any of its benefit plans or programs at any time by the action of its Board of Directors[8], or individual or committee expressly authorized by the Board to take such action.  This application - and the benefits described within - do not imply any guarantees."

-In 2007, the modification/termination language appears in **bold face** type in a separate paragraph on page 4 of the *"Confirmation of Benefit Elections"* e-published by the Old GM and a second time at the top of page 6 in normal language.  See Exhibit 2(B)(i).    However, in another *"Confirmation of Benefit Elections"* mailed by the Old GM to its employees stating the 2007 benefits, no modification/termination clause exists.  See Exhibit 2(B)(ii).

-In 2008, when the insurance benefit at issue here entirely disappears from the document , the same modification/termination language is stated on page 4 in a 4 sentence paragraph, in normal type.  This is the year Mr. Purnell retired.  See Exhibit 2(C).

-In 2009, the language appears twice.  First, in a single **bold face** paragraph on page 3.  Second, as part of the page 5 "Client Information" paragraph in normal type.  See, Exhibit 2(D).

-In 2010, the language appears in normal type near the end of the document.

When Mr. Purnell became 65 on February 20, 2009, the Debtors modified his retirement benefits by terminating his health benefits  and by also reducing the amount of his employer provided life insurance from the amount of his salary to $10,000.  The Debtors never

---

[7]     This document is entitled *"Confirmation of Benefit Elections"*, not "application".

[8]     The David W. Turner objection, supra, challenges the lack of an express  Board of Directors authorization which expressly sets aside all prior written lifetime life insurance representations.

sought to confer with him "in good faith in attempting to reach mutually satisfactory modifications" of such retirement benefits as required by 11 USC 1114(f)(2).

Then, almost 8 years later after he retired and less than 180 days after the February 20, 2009 benefit modification date, on June 1, 2009 (the **"Commencement Date"**), the **Old GM** filed this Chapter 11 proceeding. His health insurance benefit was gone. His lifetime GM paid salary-rate life insurance was gone, reduced to $10,000. The Debtors' allegations in this regard in Paragraph 4 are admitted save for the fact that the **Old GM, MLC** and the **New GM** all have refused since February 20, 2009 to recognize or pay the lifetime health and insurance benefits which were negotiated to induce Mr. Purnell to voluntarily retire on July 1, 2001.

5.    The allegations in Paragraph 5 are admitted.

6.    The allegations in Paragraph 6 are admitted.

## The Salaried and Executive Employee Welfare Benefits Claims.

7.    The allegation in Paragraph 7 that the Salaried and Executive Employee Welfare Benefits Claimants such as Mr. Purnell assert claims arising out of either the reduction of elimination of Welfare Benefits prior to the Commencement is denied as being false and misleading because the Welfare Benefits at issue here include the promises made by the **Old GM** in the July 1, 2010 retirement offer agreement to provide Mr. Purnell and his wife:

A.    Lifetime health insurance, and

B.    Lifetime salary-rate life insurance.

**Accrued Benefits Claims**
**Have Been Assumed By New GM**

8.      Contrary to the Debtor's multiple assertions in Section (i) of Paragraph 2,

here in Paragraph 8 and here also in the title to this paragraph, and other places in this motion,

the **New GM** has <u>not</u> recognized or paid since February 20, 2009  any portion of the past,

present or future health and life insurance benefits of Calvin H. Purnell and his wife.   The

allegations in Paragraph 8 are therefore denied for reason they are incorrect conclusions

of fact and law.

**Benefit Modification Claims Should Be Disallowed**
**As Debtors Had Right to Amend or Terminate Each Benefit Plan**

9.      By the plain language of bankruptcy statute, the Debtors did not have the

right to unilaterally modify Mr. Purnell's retirement benefits.   The 11 USC 1114(e) requirement

that the Debtors "shall timely pay and shall not modify any retiree benefits" bars any

modification of retirement benefits "during the 180-day period ending on the date of the filing

of the petition."  11 USC 1114(l).   When Mr. Purnell became 65 on February 20, 2009, the

Debtors modified his benefits by terminating his lifetime health insurance and by reducing the

amount of his employer provided life insurance from the amount of his salary to $10,000.   Less

than 180 days later, on June 1, 2009, the Debtors filed this Chapter 11 bankruptcy proceeding.

The Debtors' modification of Mr. Purnell's lifetime health and insurance retirement benefits is

thus contrary to bankruptcy statute and illegal.   Moreover, before these modifications were

made, the Debtors never sought to "confer in good faith in attempting to reach mutually

satisfactory modifications of such retiree benefits" as required by 11 USC 1114(f)(2) with this

retiree's authorized representative (which is this retiree because he is not a union member).

The allegations in Paragraph 9 are therefore denied for reason they are incorrect conclusions

of fact and law.


10.    Mr. Purnell became fully vested on March 22, 1998.  No vesting

issue was noticed in the **Old GM** prepared July 1, 2001 retirement offer agreement.  The

contention that "to vest benefits is to render then unalterable" is admitted.  The ambiguity

between Mr. Purnell's vested retirement rights, which GM did not mention, and GM's

purported modification/termination reservation [compromised by the 11 USC 1114(f)(2)

mandatory good faith conference] works against the Debtors because the Debtors

prepared it.


11.    It is admitted that the Sixth Circuit and courts in other Circuits have

recognized that once benefits are vested, it renders them unalterable.   In this case, the

Debtors, not Mr. Purnell, prepared the retirement offer agreement and that document and

specifically its modification/termination reservation is subject to the 11 USC 1114(f)(2)

mandatory good faith conference requirement which the Debtors have entirely ignored.


12.    Here, again (footnote 1), the Debtors write without regard to (i) the

retirement offer agreement (having omitted it from their defined terms "Benefit Plans"

and "Welfare Benefits" in Paragraph 2 and having also omitted it from their defined terms

"Benefit Modification Claims" and "Accrued Benefits Claims" in Paragraph 7) and (ii) the 11

USC 1114(f)(2) mandatory good faith conference requirement.   The plain language of the

statute applies equally in all cases regardless of the Debtors' size or stature.   The fact that Mr.

Purnell is an individual is meaningless,  11 USC 1114(f)(2) mandates a good faith conference

requirement which the Debtors have ignored and which never occurred.   The allegations in

Paragraph 12 are therefore denied for reason they are incorrect conclusions of fact and law.


In section 1114 it is law that the Debtors' may not modify retiree benefits

"during the 180-day period ending on the date of the filing of the petition" and it is also

provided at 11 USC 1114(l)(1)-(2) that , if the Debtor does so, and it is determined that the

debtor was "insolvent on the date such benefits were modified," then the court "shall issue an

order reinstating as of the date the modification was made, such benefits as in effect

immediately before such date unless the court finds that the balance of the equities clearly

favors such modifications.  Thus section 1114's protections extend to a 180 day prepetition

period as well as for the duration of the bankruptcy proceedings.


As in the July 13, 2010 IUE-CWA v. Visteon Corp. (In re Visteon Corp.) decision,

No. 10-1944, 2010 WL 2735714 (3rd Cir. July 13, 2010), Mr. Purnell contends that section 1114

is unambiguous and "clearly applies to any and all retiree benefits" even though a number of

other courts (e.g. In re New Valley Corp., In re Delphi Corp., In re Doskocil Cos., LTV Steel Co.)

hold to the contrary.   But see, In re Ames Dep't Stores, Inc., Nos. 92 Civ 6145-46, 1992 WL

373492 (S.D.N.Y. November 30, 1992); In re Farmland Indus., Inc., 294 B.R. 903 (Bankr. W.D.

Mo. 2003).   Nevertheless, the Third Circuit was convinced that the aforementioned courts

had "mistakenly relied on their own views about sensible policy, rather than on the
congressional policy choice reflected in the unambiguous language of the statute."  In re
Visteon, 2010 WL 2735715, at *7.


In reaching its conclusion, the Third Circuit relied on three significant factors.  First, it
noted Congress has explicitly excluded certain benefits from the scope of section 1114 (e.g.
"benefits provided for purposes other than health, accident, disability or death; or to benefits
provided to high-income retirees able to obtain comparable coverage; or to benefits
contemplated, but not maintained or established, prior to the debtor's filing for bankruptcy).
Congress did not limit section 1114's otherwise broad scope based on whether or not the
debtor reserved a right to terminate in its retirement plans.  In re Visteon, *Id.* at *8.  The court
reasoned that had Congress intended to exclude retiree benefit plans that contain a unilateral
right to terminate benefits from the protections afforded by section 1114, Congress would have
done so specifically.


Second, the *Visteon* court also relied on the 2005 addition of subparagraph (l) to section
1114 to support its conclusion[9].  Section 1114(l) provides that "[i]f the debtor, during the 180-
day period ending on the date of the filing of the petition - (1) modified benefits; and (2) was
insolvent on the date such benefits were modified; the court ... shall issue an order reinstating
as of the date the modification was made, such benefits as in effect immediately before such
date unless the court finds that the balance of the equities clearly favors such modifications.

---

[9]      Subsection 1114(l) was enacted pursuant to the Bankruptcy Abuse Prevention and Consumer Protection
Act of 2005, Pub. L. No. 109-08, 119 Stat. 23.

11 USC 1114(l).  It was reasoned that if section 1114 were construed to exclude retiree benefits

plans with a unilateral right to terminate, then section 1114(l) "would be virtually meaningless

...[because] [o]utside of the bankruptcy context, an employer is already  prohibited by various

laws, including ERISA, the Labor-Management Relations Act of 1947, codified in various sections

of 29 U.S.C., and the basic principles of contract law, from modifying those benefits it is

obligated to provide.   Subsection (l) therefore has meaning only if it adds something new,

namely, the <u>protection</u> of benefits a would-be debtors could otherwise terminate at will.

<u>In Re Visteon</u>, *Id*. at *13.


    Third,  the *Visteon* court noted that unless a statute "produces a result demonstrably at

odds with the intentions of its drafters...or an outcome so bizarre that Congress could not have

intended it," the court's responsibility is to adhere to the plain meaning of the statute[10].  It was

concluded (having determined both that the statute was unambiguous and that it was not at

odds with congressional intent[11]) that its reading of section 1114, even though it would

enhance a retiree's rights in the context of a chapter 11 case, was not within the realm of being

"demonstrably at odds with the intention of its drafters" nor "so bizarre that Congress could

not have intended it."  In reaching its conclusion, the *Vesteon* court acknowledged the generally

accepted position that "prepetition contract rights and property interests should

---

[10]    <u>In re Visteon</u>, *Id*. at *14  quoting <u>Mitchell</u> v. <u>Horn</u>, 318 F3d 523, 525 (3rd Cir. 2003).

[11]    The court reached this conclusion notwithstanding the debtor's argument that because "[i]n 2007,
bills were introduced in both houses of Congress which would have added a clause stating that section 1114's
<u>protections</u> apply 'whether or not the debtor asserts a right to unilaterally modify such payments under such
plan, fund or program' [and] [n]either bill was enacted...that Congress' consideration and rejection of these
amendments indicates both that section 1114 does not apply to benefits that are terminable at will, and that
Congress concluded that extending protection to such benefits was unwise. <u>In re Visteon</u>, 2010 WL 2735715,
at *18 (citations omitted).

not be analyzed differently or enhanced simply because an interested party is involved in a

bankruptcy case[12].


13.    The record of this bankruptcy case includes **Old GM** correspondence

which states the post-retirement salary-rate life insurance **"will remain in effect for the rest of**

**your life and is provided by General Motors at no cost to you.**[13]**"**  Exhibit 1.   No express

repudiation of these specific letter representations appear in either Mr.  Purnell's retirement

offer agreement or in the annual written "*Confirmation of Benefit Elections*" published by the

Old GM.   Instead, the Debtors rely on irregularly written general reservations of a general right

to modify or terminate these benefits while at the same time also stating it's documents do

"not cover all the details about the Programs - which are found in plan  documents that have

the final word over any other oral or written statement."   See, Exhibits  2(A)-(E).   The three

judge dissent in Sprague v. General Motors, 133 F.3d 388 (6th Cir. 1998) pointed out specifically

that Old GM failed to reserve modification/termination rights in its "Your GM Benefits"

brochures in effect from 1974 to 1985 and went on to state:

> "In addition, when General Motors did reserve its rights, this reservation
> was less than clear...   The issue of the reasonableness of the general
> retirees' reliance should have been remanded to the district court.  The
> reliance of those who retired from 1974 to 1985 appears eminently
> justified."

133 F.3d 388, 414.  The Debtors insistence that the modification/termination clauses were

---

[12]    *In re Visteon*, Id. at *19 9 quoting Brief of Debtors-Appelees at 33, *In Re Visteon*., No. 10-1944, 2010 WL
2735715 (3rd Cir. July 13, 2010) (quoting *In re Delphi Corp.*, No. 05-44481, 2009 WL 637315, at *2 (Bankr. S.D.N.Y.
Mar. 10, 2009).

[13]    See the David W. Turner Response and Objection to the Debtor's 182nd Omnibus Objection to Claims
as filed with this Court on January 26, 2011, Claim No. 27065,  and its attached copy of a GM National Retiree
Servicing Center letter dated December 4, 1995.  Exhibit 1.  And, see also, the Joseph C. Singer response and
objection to the same 182nd Omnibus Objection, Claim No. 29999, and its letter attachments.

sufficiently disclosed is belied by the fact that retirees could sign the GM prepared form and

give up their jobs only to have GM turn around on the next day and unilaterally terminate the

benefits thereby relieving the Debtors of at least two, if not more, lifetime health and life

insurance liabilities.  Mr. Purnell thought wrongfully he had negotiated lifetime health and life

insurance retirement benefits, while, in fact, he was lucky to get eight years.   For the reasons

of fact and law stated here and in Paragraph 12 above, the allegations in Paragraph 13 are

denied as being incorrect conclusions of fact and law.


14.    The allegations in Paragraph 14 are denied for reason that the Sprague

decision, supra, is not unanimous and because Mr. Purnell and other members of the 83rd

ominbus objection join with the dissent which, in their collective opinions, found vested

rights[14], estoppel[15], improper class certification and breach of fiduciary duties.   Mr. Purnell also

believes age discrimination has occurred.    The retirees, then and now, are owed the right of

vested employees in promised future lifetime health and life insurance benefits and cannot and

should not be summarily written off as people with "...*alleged* rights to benefits *which were in*

*reality unvested, and as described herein, are otherwise not the responsibility of the Debtors*"

as is done now in Paragraph 2 of the omnibus objection.    If there was any truth in GM's

documents, GM should have previously described every retiree as a person with "...*alleged*

---

[14]      Upon completion of thirty years employment, Mr. Purnell's retirement benefits and
insurance fully vested on March 22, 1998.
[15]      Again, **Old GM** correspondence states the post-retirement salary-rate life insurance
**"will remain in effect for the rest of your life and is provided by General Motors at no cost
to you"** and no express repudiation of this statement (and others like it) has been provided.

rights to benefits *which were in reality unvested*, and as described herein, are otherwise not the responsibility of the Debtors" so Mr. Purnell would have had notice of how he would be treated/classified now and in the future.

15.    The allegations in Paragraph 15 are denied for reason that the retirement offer agreements do <u>not</u> "clearly" reserve or describe the Debtors modification/termination claims as specifically alleged in Paragraph 15 above.   The record of this bankruptcy case includes **Old GM** correspondence which states the post-retirement salary-rate life insurance **"will remain in effect for the rest of your life and is provided by General Motors at no cost to you."**  Exhibit 1.   No express repudiation of this written representation appears in either Mr. Purnell's retirement offer agreement or the annual written "*Confirmation of Benefit Elections*" published by the Old GM.   Instead, the Debtors rely on irregularly written general reservations of a general right to modify or terminate these benefits.

The three judge dissent in <u>Sprague</u> v. <u>General Motors</u>, stated:

> "In addition, when General Motors did reserve its rights, this reservation was less than clear...   The issue of the reasonableness of the general retirees' reliance should have been remanded to the district court.  The reliance of those who retired from 1974 to 1985 appears eminently justified."

133 F.3d 388, 414.   If this claim was so clearly reserved why didn't the Debtor's describe the retirees (such as Mr. Purnell) as persons with "...*alleged* rights to benefits *which were in reality unvested*, and as described herein, are otherwise not the responsibility of the Debtors" in the retirement offer agreements as GM now does in its omnibus objections?   And, it must be noted

that the Debtors have nevertheless have totally ignored the good faith concurrence require-

ment of 11 USC 1114(f)(2).

16.    It is admitted only that the Debtors' ability to terminate or modify Mr.

Purnell's health and life insurance retirement benefits are required to exercised in compliance

with 11 USC 1114, which this Debtor did not comply with.  In Re Visteon Corp., No. 10-1944,

2010 WL 2735715 (3rd Cir. July 13, 2010), along with the dissent in Sprague, supra, is

persuasive and should be followed.

17.    The allegations in Paragraph 17 are denied for reason they are incorrect

conclusions of fact and law.

### The Debtors Have No Liability for the
### Salaried and Executive Employee Welfare Benefits Claims

18.    The allegations in Paragraph 18 are denied for reason they are incorrect

conclusions of fact and law.

### The Relief Requested Should be Approved by the Court

19.    The allegations in Paragraph 19 are denied for reason they are incorrect

conclusions of fact and law.

20.    The allegations in Paragraph 20 are denied for reason they are incorrect

conclusions of fact and law.

## Notice

21.     The allegations in Paragraph 21 are admitted.

22.     The allegations in Paragraph 22 are admitted.

## MR. PURNELL'S CONCLUSION

Mr. Purnell and his wife's lifetime health and life insurance retirement benefits

fully vested on March 22, 1998.   The record of this bankruptcy case also includes **Old GM**

correspondence which states the post-retirement salary-rate life insurance:

> **"will remain in effect for the rest of your life and is provided
> by General Motors at no cost to you.[16]"**   Exhibit 3.

No express repudiation of this written representation appears in either Mr. Purnell's retirement

offer agreement or the annual written "*Confirmation of Benefit Elections*" published by the Old

GM.   Instead, the Debtors rely on irregularly written general reservations of a general right to

modify or terminate benefits.

The July 1, 2001 retirement offer agreement, entirely written  by the **Old GM**,

induced Mr. Purnell to give up his job in exchange for lifetime health insurance benefits and

lifetime GM paid salary-rate life insurance for Mr. Purnell and his wife.   It is an anomaly to have

one document both promise lifetime health and insurance benefits while simultaneously also

---

[16]     See the David W. Turner Response and Objection to the Debtor's 182nd Omnibus Objection to Claims
as filed with this Court on January 26, 2011, Claim No. 27065,  and its attached copy of a GM National Retiree
Servicing Center letter dated December 4, 1995.  Exhibit 2.  And, see also, the Joseph C. Singer response and
objection to the same 182nd Omnibus Objection, Claim No. 29999, and its letter attachments.

purportedly reserving a indirectly worded right to destroy those promises.   The **Debtors** now refuse to pay the lifetime health insurance benefits and also refuse to provide salary rate life insurance as required by the retirement offer agreement and seek to avoid same by this 11 USC 502 motion.


In Paragraph 2, the **Debtors** write they have "determined" that the Proofs of Claim which this 83rd Omnibus Objection addresses "assert claims that ...**(i)** relate to liabilities that have been assumed by the ... **New GM** pursuant to the terms of ... the **Master Purchase Agreement**..."   The last sentence of Paragraph 2 repeats this definition (i) "determination". However, nothing could be further from the truth.   The **New GM** since February 20, 2009 has not assumed and does not and will not pay the lifetime health insurance and life insurance benefits called for in the Debtors' prepared retirement offer agreement.   Mr. Purnell is therefore not  within this element of the Debtors' defination (i) "determination".


In Paragraph 2, the **Debtors** also write they have "determined" that the Proofs of Claim which this 83rd Omnibus Objection addresses "assert claims that ...**(ii)** relate to alleged rights to benefits which were in reality unvested, and as described herein, are otherwise not the responsibility of the Debtors (emphasis added)."   Well, as pointed out above, it is irrefutable that Mr. Purnell's retirement and benefit rights fully vested on March 22, 1998, years before the Commencement Date of this Chapter 11 bankruptcy.   Mr. Purnell is therefore not  within this element of the Debtors' defination (ii) "determination".

The plain and simple truth is that the Debtors have failed to establish that Mr. Purnell's claim is within the definiation (i) and (ii) "determination" the Debtors' have set up to seek to strike the claim of Mr. Purnell and the other creditors involved in the 83rd Omnibus Objection.  Since the Debtors' (i) and (ii) premises for Mr. Purnell's inclusion in the 83rd Omnibus Objection are not factually true, the Debtors' motion brought pursuant to 11 USC 502 must fail.  The New GM does <u>not</u> recognize the retirement offer agreement.   Mr. Purnell's became fully vested on March 22, 1998, years before the Commencement Date.


**WHEREFORE,** Respondent Calvin H. Purnell demands the following relief in consequence of his response and objections to the  August 20, 2010 Debtors' Eighty-Third Omnibus Objection to Claims:

A.    The 83rd Omnibus Objection be denied as to him with prejudice against the Debtors.

B.    An order be entered immediately which reinstates as of the date the modification was made (February 1, 2010) to the present all health and life insurance benefits which were terminated and which directs the payments to continue for the duration of this Chapter 11 proceeding.

C.    The Debtors pay all attorney fees paid or incurred on his behalf to correct the unlawful termination of his benefits and for any and all related costs, fees and expenses.

D.    For such other and further relief as is just or appropriate.

/s/ Samuel J. Behringer, Jr.

**Samuel J. Behringer, Jr.**
**Attorney at Law**
**333 McKinley Avenue**
**Grosse Pointe Farms, MI 48236-3420**
**Telephone: (313) 885-1948**
**Facsimile: (313) 886-6443**

**Attorney for Calvin H. Purnell**
**83rd Omnibus Objection Respondent #62124**
**March 16, 2011**

## <u>EXHIBIT LIST</u>

1.      David W. Turner Response and Objection to Debtor's 182nd Omnibus Objection
        to Claims.

2.      (A)      2006 Confirmation of Benefits Elections for Richard Zmierski.
        (B)      2007 Confirmation of Benefits Elections for Richard Zmierski.
        (C)      2008 Confirmation of Benefits Elections for Richard Zmierski.
        (D)      2009 Confirmation of Benefits Elections for Richard Zmierski.
        (E)      2010 Confirmation of Benefits Elections for Richard Zmierski.