**HEARING DATE AND TIME:** March 29, 2011 at 9:45 a.m. (Eastern time)
**OBJECTION DEADLINE:** March 22, 2011 at 4:00 p.m.. (Eastern time)

John Lewis Mealer, pro per (pro se)
6333 Gardenia Lane
Show Low, Arizona 85901
jlmealer@mealercompanies.com,
928-532-8191

CREDITOR/CLAIMANT

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **MOTORS LIQUIDATION COMPANY, et al.,** ) | **Chapter 11 Case No.** |
| **f/k/a General Motors Corp., et al.** ) | <u>**09-50026 (REG)**</u> |
| **Debtor** ) | <u>Jointly Administered</u> |
| ) | |
| ) | |
| ) | |
| ) | **(Creditor's Principal Brief)** |
| ) | |

<u>**CREDITOR'S RESPONSE, OBJECTION and MOTION TO DENY THE RELIEF**</u>
<u>**REQUESTED** *IN DEBTOR'S OBJECTION, DISAGREEMENT and*</u>
<u>*MOTION TO DENY ENTRY OF ORDER DISALLOWING and EXPUNGING*</u>
<u>**ADMINISTRATIVE CLAIM NO. 70792 FILED BY JOHN L MEALER**</u>

Creditor/Claimant/Plaintiff Mealer's Response, Disagreement, Objection and Motion is based

on the attached Memorandum of Points and Authorities filed and timely served concurrently all

pleadings and papers on file herein and such pleadings as filed in the Arizona District Court Case No:

3:10-cv-08172-JWS, which is integral to this complaint and attached hereto as Exhibits, and upon such

oral and documentary evidence as may be presented at a hearing if necessary on this [responsive]

principal brief Motion To Deny the Relief Requested in Debtor's Objection and Motion To Deny Entry

of Order Disallowing and Expunging Administrative Claim No. 70792 Filed By John L Mealer..

# TABLE OF CONTENTS

Page

I.    Relief Requested................................................................................... 2

II.    Jurisdiction .......................................................................................... 5

III.    Preliminary Statement (Background of Mealer's Claims)........................... 6

IV.    Debtor's liability is clear and concise..................................................... 7

V.    Internet Postings *(Doctrine of Accord and Satisfaction Improperly Applied)*................9

VI.    Background ........................................................................................ 16

      1.    These Chapter 11 Cases .................................................................. 16

            A.    Exceptions Debtor(s) MLC, NGMCO ("GM") bankruptcy protection. 16

                1).    July 10, 2009 ........................................................ 16

                2).    Permitted Encumbrances ......................................... 16

            B.    Mealer's First filing in these Ch. 11 cases ........................................... 21

            C.    Mealer's Adversary Proceeding ...................................................... 22

            D.    Mealer's Lawsuit in Arizona State Court and Arizona District Court... 25

            E.    Mealer's Administrative Proof of Claim ("APC")............................. 27

VII.    Argument .......................................................................................... 28

VIII.    Sheer Speculation vs Inferential Allegations .......................................... 32

            A.    Standing ...................................................................................... 32

            B.    Cause ......................................................................................... 32

IX.    Conclusion ....................................................................................... (38)

X.    **Motion to Deny Entry of Order** Disallowing and Expunging Administrative
Claim no. 70792 Filed by John L. Mealer ................................................. 39

XI.    AFFIDAVIT ...................................................................................... 39

XII.    Certificate of Service and Service List ....................................................... 40, 41

(i)

## TABLE OF AUTHORITIES

### CASES                                                          Pages(s)

4A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1082 (3d ed. 2010) … 22

15 U.S.C. § 1291 et seq.............................................................................................. 30

17 U.S.C. § 512(c)(1)(B). …....................................................................................... 39

28 U.S.C. § 157(b)(2)(B), (O), and § 157(b)(5) …....................................................  5

28 U.S.C. § 157(c)(1), Id. § 157(b)(3), Id. § 157(c)(2)
    First Circuit (1996) …................................................................................................  5

49 U.S.C. §§ 11341-11342 (1982)............................................................................. 30

Amini v Oberlia Coll.,
    259 F.3d 493, 502 (6th Cir. 2001))........................................................................9,

Arizona Constitution in Article 18, Section 3............................................................ 34

ARS § 20-455 Defamation …...................................................................................... 6

Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,
    472 U.S. at 602, 603 ............................................................................................. 39

Aspen Skiing Co. v. Aspen Highlands Skiing Corp.,
    472 U.S. 585, 596 n.19 (1985) …...........................................................16-21, 28, 34

Averitt, [A.F.S., 767 F.2d at 972  Commission's Policy Statement, 108 F.T.C.A.,  At 362],
    70 Geo.L.J. At 246.............................................................................16-21, 29, 34

Bassett v NCAA,
    28 F.3d 426, 430 (6th Cir. 2008) …......................................................................9,

Bell Atl. Corp v Twombly,
    127 S. Ct. 1955, 1969 (2007)................................................................................. 9

Berkey Photo, Inc. v. Eastman Kodak Co.,
    603 F.2d 263, 291 (2d Cir. 1979), cert. denied, 444 U.S. 1093 (1980).........12, 13, 16-21, 28, 34

Bethel v. New York Transit Authority,
    1998 N.Y. Int. 0113 (October 15, 1998)..........................................................7, 8, 12, 35

Blue Shield of Virginia v. McCready,
    457 U.S. 465, 478 nn. 12-13 (1982) …................................................................... 34

## TABLE OF AUTHORITIES

### CASES                                                              Pages(s)

*Boag v. MacDougall,*
    454 U.S. 364, 365 (1982).................................................................................. 22

Broad v. Rockwell Int'l Corp., <u>Black's Law Dictionary,</u> *[reasonable care] Gardner B.A.,2004, p. 1061*),
    642 F.2d 929, 961-62 (5th Cir.), cert. denied, 454 U.S. 965, 102 S.Ct. 506, 70 L.Ed.2d 380
    (1981); …......................................................................................................7, 8, 12, 35

Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.,
    509 U.S. 209, 222 (1993)......................................................................16-21, 28, 34

*Brown v. Kendall,* <u>Restatement of the Law, Second, Torts. §288C.</u>
    60 Mass. 292 (1850)........................................................................................... 9

Car Carriers, Inc. v Ford Motor Co.,
    745.F2d 1101. 1106 (7th Cir. 1984)..................................................................6, 9, 33

<u>Caribbean Broadcasting System, Ltd. v. Cable & Wireless PLC,</u>
148 F.3d 1080, 1087 (D.C. Cir. 1998). …...................................................14-24, 26, 30, 31

*City of Tempe v. Pilot Properties, Inc.,*
    *22 Ariz. App. 356, 363, 527 P.2d 515, 522 (Ariz. Ct. App. 1974) (Slander of Title)..* 13, 36

*Clinkscales v. Carver,* <u>Restatement of the Law, Second, Torts. §288C.</u>
    22 Cal.2d 72 (1934)............................................................................................ 9

Cook v. Avien, Inc., <u>Black's Law Dictionary,</u> *[duty of reasonable care] Gardner B. A., 2004, p. 1061*),
    573 F.2d 685, 692 (1st Cir.1978);.....................................................................7, 8, 12, 35

*County of Tulare v. Workers' Comp. Appeals Bd. (1985)*
    170 Cal.App.3d 1247, 1253. …........................................................................ 31

<u>*Doe v Friendfinder Network, Inc.*,</u>
    540 F Supp.2d. 288 (D.N.H. 2008). …............................................................. 38, 39

*Eastman Kodak Co. v. Image Technical Services, Inc.,*
    *504 U.S. 451, 480  at 488 (1992) (Scalia, J., dissenting at 488)*..............................*16-21, 28, 34*

*Educ. Credit Mgmt. Corp v Barnes*
    259 B.R. 328 (S.D.) *28 USC § 157(d)*;.............................................................. 5

*Espinoza v. Elgin, Joliet & Eastern Railway,* <u>Restatement of the Law, Second, Torts. §288C.</u>
    649 N.E.2d 1323 (Ill. 1995)................................................................................ 9

F. Harper & F. James, Jr., <u>The Law of Torts</u> 1367 (1956). …..................................7, 8, 12, 35

## TABLE OF AUTHORITIES

### CASES                                                     Pages(s)

Fed. R. Civ P. Rule 41(a)(2) ….......................................................................... 5

*Fedie v. Travelodge Int'l, Inc.*,
   162 Ariz. 263, 266, 782 P.2d 739, 742 (1989) ….................................. 34

Ferdik,
   963 F.2d at 1261 ….......................................................................... 22

*F.T.C. v. Klesner*,
   280 U.S. 19*, 28, 50 S.Ct. 1, 4, 74 L.Ed. 138 (1929) (footnote omitted)*....................................29

*Gee v. Pima County*,
   126 Ariz. 116, 612 P.2d 1079 (Ariz. Ct. App. 1980) (trade libel)............... 13, 16 ,18, 22, 24, 36

*Gordon v. Burr*, ('controlling persons' citing the SEC definition Id. At 668 with approval)
   506 F.2d 1080, 1085 (2d Cir. 1974)........................................................ 7, 8, 12, 35

*General Indus. Corp. v. Hartz Mountain Corp.*,
   810 F.2d 795, 803 (8th Cir. 1987) ….................................................12, 13, 16-21, 28

<u>H.R.Rep. No. 1383, 73d Cong., 2d Sess. 26 (1934)</u> noting ("it would be difficult if not impossible
   to enumerate or to interpret the many ways in which actual control may be exerted")...........9

<u>H.R. Rep. No. 105-551, at 53, pt.2, at 64 (1998)</u> ........................................................ *38, 39*

Hackbart v. Holmes, <u>Black's Law Dictionary,</u> *[duty of reasonable care] Gardner B. A., 2004, p. 1061*),
   675 F.2d 1114, 1118 (10th Cir.1982);......................................................7, 8, 12, 35

*Haralson v. Fisher Surveying, Inc.*
   201 Ariz. 1, 31 P.3d 114 (2001) ….....................................................7, 9, 29, 30

*Haspel v State Farm Mut. Auto Ins. Co.*,
   241 Fed. Appx. 837, 2007 WL 2030272, *1 (3d Cir. 2007) (quoting Twombly127 S. Ct. at
   1969))..........................................................................................9,

*Heath v. Swift Wings, Inc.*, <u>Restatement of the Law, Second, Torts. §288C.</u>
   252 S.E.2d 256 (N.C. 1979)............................................................ 9

*Herman v Magnusan*,
   277 N.W.2d 445, 455 (N.D. 1979)........................................................ 9

*Hicks v. Miranda*,
   422 U.S. 322, 45 L.Ed.2d 223, 95 S.Ct. 2281 (1975) …........................................ 4

# TABLE OF AUTHORITIES

**CASES**                                                                    **Pages(s)**

*Hinojosa v. Workmen's Comp. Appeals Bd. (1972)*
    8 Cal.3d 150, 152) ,.................................................................. 31

*Hirsch v. Cooper,*
    737 P.2d 1092, 1097 (Ariz. Ct. App.1986)...................................... 12, 13

*Huntsinger v. Glass Containers Corp.* (1972) 22 Cal. App. 3D 803, 807  [Fourth Dist., Div. Two]
Huntsinger.............. 31


*International Harvester, Co.*, [A.F.S., 767 F.2d at 972 Commission's Policy Statement, 108 F.T.C.A.,
    At 362], 104 F.T.C. 949, 1064 n. 55 (1984)............................................16-21, 28, 34

*J. R. Norton Co. v. Fireman's Fund Ins. Co.*,
    116 Ariz. 427, 430, 569 P.2d 857, 860 (App. 1977). …....................................... 34

*Johnson v. Dudenak & Geibig t/d/b/a Sassy's,*
    60 Som.L.J. 333 (2002) (Gibson, J.), <u>Restatement (Second) of Torts § 317</u>……........7, 12, 24-27

*Josephson v. Meyers*, <u>Restatement of the Law, Second, Torts. §288C.</u>
    429 A.2d 877 (Conn. 1980),............................................................................ 9


*Kamine/Besicorp  Allegany, L.P.*
    214 B.R. 953, 972 (Bankr. D.N.J. 1997). …................................................ 4, 5

*La Favre & Scott, supra note 5, at 585; infra note 78* …...............................................31-34

*LaFavre & Scott, supra note 5, at 569*.......................................................... 30

*Lee Moor Contracting Co. v. Blanton,*
    49 Ariz. 130, 135, 65 P.2d 35, 37 (1937)........................................ 9,10, 39

*Lanza v. Drexel & Co.*, ('controlling persons' citing the SEC definition Id. At 668 with approval)
    479 F.2d 1277, 1299 (2d Cir.1973) (en banc);...........................................7, 8, 12, 35

*Long v. Arizona Portland Cement Co.* [Arizona Supreme Court]
    89 Ariz. 366, 362 P.2d. 741, 742 (1961); Folk V. City of Phoenix, 27 Ariz. App. 146,
    551 P.2d 595, 600 (1976). …................................................................34

*Macneil v. Perkins,*
    84 Ariz. 74, 324 P.2d 211 (1958)........................................ 7, 24-27, 29, 30

### TABLE OF AUTHORITIES

**CASES**                                                                    **Pages(s)**

Maddox v Commonwealth,
 349 S.W.2d 686 ) Ky. 1960)........................................................................ 30,

*Mansbach v. Prescott, Ball & Turben,* Black's Law Dictionary, *[duty of reasonable care] Gardner B.*
 *A., 2004, p. 1061)*,598 F.2d 1017, 1025 (6th Cir.1979);.............................................7, 8, 12, 35

*Matter of Poole Funeral Chapel, Inc.,*
 63 B.R. 527, 530 (Bankr.N.D.Ala.1986) (quoting statements of U.S. Senator. DeConcini)....... 5

*McDaniel v. Troy Design Servs. Co.,*
 186 Ariz. 552, 553, 925 P.2d 693, 694 (App. 1996). .....................................7, 8, 12, 24-27, 35

McCarran-Ferguson Act, 15 U.S.C. § 1011........................................................ 30

*McDowell v. Davis,*
 104 Ariz. 69, 71, 448 P.2d 869, 871 (1968) ..................................................................... 34

McLean v. Alexander, Black's Law Dictionary, *[duty of reasonable care] Gardner B.A., 2004, p. 1061*),
 599 F.2d 1190, 1197-98 (3d Cir.1979);...................................................................7, 8, 12, 35

*Medasys Acquisition Corp. v. SDMS, PC,*
 *203 Ariz. 420 (2002).* ......................................................................7-11, 13, 23, 24,34

Moore v State
 94 S.E.2d 80 (Ga. Ct. App. 1956).................................................................... 30,

*Multistate Legal Studies, Inc. v. Harcourt Brace Jovanovich Legal and Professional Publications, Inc.,*
 *63 F.3d 1540, 1550 (10ᵗʰ Cir. 1995), cert. denied, 516 S. Ct. 1044 (1996)* ....................... 6, 24

*Murawski v. Pataki,*
 514 F.Supp.2d 577, 591 (S.D.N.Y. 2007) (citations omitted)....................................... 4, 6

*Nielsen Sjolander, Administratrix of Estate of Niels Otto Andersen Sjolander v. Vestas Wind System A/S,*
 64 Som. L.J. 280 (2009) (Klementik, J.)...................................................................7, 8, 12, 35

*Nielsen Sjolander, Administratrix of Estate of Niels Otto Andersen Sjolander v. Vestas Wind System A/S,*
2006 Supreme Court *Farabaugh;* Section 414 of the Restatement (Second) of Torts,
"Negligence in Exercising Control Retained by Employer."
 64 Som. L.J. 280 (2009) (Klementik, J.)..................................................................... 7, 12, 35

*Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,*
 *614 F.2d 832, 838 (2d Cir.1980)* .............................................................................5, 10, 11, 38

## TABLE OF AUTHORITIES

### CASES                                                                Pages(s)

Newspapers Preservation Act of 1970 *viz* 15 U.S.C. § 1801, et seq............................................. 30, 31

*Norway Plains Co. v. Boston & Me. R.R.,*
   67 Mass. 263, 267 (1854)(Shaw, C.J.)...................................................................... 5

*Pharo v. Smith*, ('controlling persons' citing the SEC definition Id. At 668 with approval)
   621 F.2d 656, 670 (5th Cir.1980) …............................................................ 7, 8, 12, 35

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*
   998 F.2d 1192, 1196 (3d Cir. 1993)....................................................................9,

*Perfect 10, Inc. v. CCBill LLC,*
   *481 F. 3d. 751 (9th Cir. Mar. 29, 2007; amended opinion issued May 31, 2007),* ............. *38-39*

*Piper v. Bear Med. Sys., Inc.,*
   180 Ariz. 170, 174, 883 P.2d 407, 411 (App. 1993)............................................... 34

Plywood Antitrust Litigation
   655 F. 2d 627, 641 (5th Cir. 1981), cert dismissed, 462 U.S. 1125, 103 S. Ct. *437 3100, 77
   L.Ed.2d 1358 (1983)), cert denied, 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821(1985)..6, 33

*Pruitt v. Pavelin,*
   *141 Ariz., 195, 685 P.2d 1347 (1984)*............................................................*7, 9, 12, 35*

Restatement (Second) of Agency Sec. 226 (Third § 7.03 § 227) …......................................... 38, 39,

*Restatement (Second) of Agency Secs. 221 & 226, (Third § 7.03 § 227)* ................................ *38, 39,*

*Rawlings v.Apodaca*
   726 P.2d 565 (Ariz. 1986) …......................................................................7-11, 13, 23, 24,34

*Rolf v. Blyth, Eastman Dillon & Co.*, Black's Law Dictionary, *[duty of reasonable care] Gardner B. A.,*
   *2004, p. 1061)*,
   570 F.2d 38, 46-47 (2d Cir.), cert. denied, 439 U.S. 1039, 99 S.Ct. 642, 58 L.Ed.2d 698(1978).8

*Rochez Brothers, Inc. v. Rhoades*, ('controlling persons' citing SEC definition Id. At 668 with approval)
   527 F.2d 880 (3d Cir.1975), cert. denied, 425 U.S. 993, 96 S.Ct.2205, 48 L.Ed.2d 817
   (1976).............................................................................................................7,8, 12, 35

*Rochez Brothers*,
   527 F.2d at 890;.......................................................................................... 9

*Rueles*,
   199 Ariz. At 346, 347, ¶¶¶ 5, 11, 18 P.3d at 140, 141.............................................7, 8, 12, 35

(vii.)

## TABLE OF AUTHORITIES

### CASES                                               Pages(s)

SEC v. Carriba Air, Inc., Black's Law Dictionary, *[reasonable care]Gardner B.A.,2004, p. 1061*),
    681 F.2d 1318, 1324 (11th Cir.1982);.........................................................................7, 8, 12, 35

*SEC v. Netelkos,*
    592 F.Supp. 906, 913 (S.D.N.Y.1984).......................................................................... 9

*Santiago v. Phoenix Newspapers, Inc.,*
    164 Ariz. 505, 794 P.2d 138. (1990).......................................................................7, 9, 29, 30

State Farm Mut. Auto. Ins. Co. v. Haight
    205 Cal.App.3d 223, 241.) ......................................................................................... 31

*Schulman v. Cal. Water Res. Control Bd.*
    *(In re Lazar)*, 200 B.R. 358, 366 (Bankr. C.D. Cal. 1996) 28 U.S.C. § 157(a)......................... 5

Section 5 of the FTC Act, 15 U.S.C. § 45,...........................................................16-21, 28, 34,

*Section. 691.991 of the Michigan Compiled Laws* ...................................................  *34*

*State v Howes*, Kadish, [supra note 5, at 340-41 (emphasis added)].
    432 A.2d 419 (Me. 1981).............................................................................................. 30,

*State v Satern, 516 N.W.2d 839 (Iowa 1994) Model Penal Code § 2.04(4)(now 2.06(4) at 34*
    *(Tentaive Draft No. 1 1953)* ....................................................................................... *31-34*

*Strapex Corp. v. Metaverpa N.V.,*
    607 F.Supp. 1047, 1050 (S.D.N.Y.1985). …..................................................... 5, 10, 11, 38

*Sutliff, Inc. v. Donovan Cos.,*
    727 F.2d 648,654 (7th Cir. 1984); 5 C. …............................................................ 6, 33

*Triestram v. Way*, Restatement of the Law, Second, Torts. §288C.
    281 N.W. 420 (Mich. 1938)........................................................................................ 9

*Tryer v. Ojai Valley School, (1992)*
    9 Cal.App. 4Th 1476, 1481. ...................................................................................... 31

*United States v. Alcoa,*
    *148 F.2d 416, 432 (2d Cir. 1945), and R. Bork, The Antitrust Paradox 160 (1978))*............... 39

*United States v. Carroll Towing Co.*, Restatement of the Law, Second, Torts. §288C.
    159 F.2d 169 (2d. Cir. 1947) …................................................................................. 9

## TABLE OF AUTHORITIES

### CASES                                                              Pages(s)

*United States v. Griffith,*
   334 U.S. 100, 107 (1948) ...................................................................*16-21, 28, 34*

*United States v. Grinnell Corp.,*
   384 U.S. 563, 570-71 (1966)) ….........................................................16-21, 28, 34

*United States v Ruffin,*
   613 F.2d 408, 412 (2d Cir. 1979)...................................................... 30,

W. Page Keeton, et al., <u>Prosser and Keeton on the Law of Torts</u>, § 45, at 319-20 (5th ed. 1984) … 34

*Wagenseller v. Scottsdale Mem'l Hosp.,*
   147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). ….................................... 12, 13

*Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors,*
   184 Ariz. 419, 427, 909 P.2d 486, 494 (App. 1995) (citations omitted). …..................... 11,12,

*Warner v. Southwest Defect Images, LLC,*
   2008 Ariz.App. LEXIS 47 (Ct.App.2008) ….................................................7-11, 13, 23, 24,34

*Western Tech., Inc. v. Sverdop & Parcel, Inc.,*
   *154 Ariz. 1, 4, 739 P.2d 1318, 1321 (Ariz. Ct. App. 1987)........................ 13, 16 ,18, 22, 24, 36*

*White v. Abrams,*
   495 F.2d 724, 735-36 (9th Cir.1974))......................................................7, 8, 9, 12, 35

*Williams,* [Restatement (Second) of Agency Sec. 219 (1958)]
   106 Ariz. at 338, 476 P.2d at 148............................................................7, 8, 12, 35

*Williams v. Wise,*
   106 Ariz. At 338, 476 P.2d at 148 (1970)........................................... 9,10, 39

*Williamson Tobacco Corp.,*
   509 U.S. 209, 222 (1993).................................................................. 12, 13, 16-21

<u>Wright & A. Miller, Federal Practice & Procedure</u> § 1216 at 121-23 (1969).................................. 6, 33

*Zweig v. Hearst Corp., (paraphrasing White v Abrams)*
   594 F.2d 1261, 1268 (9th Cir.1979)........................................................7, 8, 12, 35

**HEARING DATE AND TIME:** March 29, 2011 at 9:45 a.m. (Eastern time)
**OBJECTION DEADLINE:** March 22, 2011 at 4:00 p.m.. (Eastern time)

John Lewis Mealer, pro per (pro se) Creditor/Claimant
6333 Gardenia Lane
Show Low, Arizona 85901
jlmealer@mealercompanies.com,
928-532-8191

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| ) | |
| ) | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY, et al.,** ) | |
| ) | <u>09-50026 (REG)</u> |
| **f/k/a General Motors Corp., et al.** ) | |
| ) | <u>Jointly Administered</u> |
| **Debtor** ) | |
| ) | **CREDITOR'S RESPONSE, OBJECTION and** |
| ) | **MOTION TO DENY THE RELIEF** |
| ) | **REQUESTED IN DEBTOR'S OBJECTION and** |
| ) | **MOTION TO DENY ENTRY OF ORDER** |
| ) | **DISALLOWING and EXPUNGING** |
| | **ADMINISTRATIVE CLAIM NO. 70792 FILED** |
| | **BY JOHN L MEALER** |

_____

**CREDITOR, JOHN LEWIS MEALER'S** <u>RESPONSE, OBJECTION AND</u>
<u>MOTION TO DENY RELIEF REQUESTED IN DEBTOR'S OBJECTION</u>

The actual reason and authority this case is before this Honorable Bankruptcy Court, is through

both the N.Y.S.D. Honorable Judge Robert E. Gerber and the Arizona District Bk Court Honorable

Redfield T. Baum's  directions to this Claimant as noted herein.

Administrative Claims pending actions for Civil complaints are direct averment allegations

based on debtor's admissions of acts along with inferential allegations respecting all the material

elements which sustain recovery under *some* viable legal theory, central to this complaint, whether

hypertechnically or otherwise plead pursuant to Fed. R. Civ. (See *United States v. Uni Oil, Inc.*, 710

F.2d 1078, 1080-81 n.1 (5th Cir. 1983))

1.

**TO THE HONORABLE ROBERT E GERBER,**
**INITED STATES BANKRUPTCY JUDGE:**

Claimant/Creditor Mealer respectfully represent:

## I.    <u>RELIEF REQUESTED</u>

1.    Creditor/Claimant, John Lewis Mealer, (herein "Mealer") hereby responds to debtor's Objection of this claim which this claim is valid pursuant to section(s) 11 U.S.C. § 503(a)(1)(A),(3)(A) (3), and § 101(10)(A)(B), and § 348(d), and § 523(a)(6), and through judicial direction and Order.

A.    Pursuant the Administration Claim Instructions, ("**A.C.I**.") which Debtors have provided this court (See Debtor's Exhibit "A") and which was completed by Claimant and mailed to the Administrative Claim Office; instructed at <u>No. 3 If court judgment, date obtained;</u> whereby Mealer stated, *"In federal court, currently."* regarding the pending lawsuit in the Arizona District Federal Courts which was directed by the bankruptcy Judges Honorable Gerber and Honorable Baum, referenced by Mealer under <u>No. 7 Supporting Documents:</u> wherein Mealer stated, *"I will send full documentation, plus letter of admission from GMC upon responc[s]e."*

B.    Pursuant the "**A.C.I.**," clearly stated on page No.2 <u>Instructions For Filing Administrative Proof Of Claim</u> at <u>No. 7 Supporting Documents: You must attach to this proof of claim form copies of documents that show the Debtor owes the debt claimed or, if the documents are too lengthy,</u> **<u>a summary of those documents.</u>** <u>If documents are not available, you must attach an explanation of why they are not available.</u> Mealer has clearly followed the instructions of said complaint by filing a "summary of those documents" (See Debtor's Exhibit "A" Administrative Proof of Claim # 70107022 additional details) which is the <u>Rule No. 7 Summary</u>.

C.    Debtors are intentionally misleading this court by providing a never-served document (parked for Arizona's statute of limitations on defamation claim purposes) as debtor's Exhibit "K" in an attempt to discredit this Creditor/Claimant. The Debtor's "Ex. K" document is irrelevant

2.

except for Arizona Superior Court claim filing purposes noted herein, whereas, the Amended Claim (A copy of which is annexed hereunto as **Exhibit #1)** is Mealer's only *Served Summons and Complaint*, which has not been answered by defendants/debtors.

        D.     Furthermore, based upon the relevant concurrent/pending Arizona District Court complaint (Case No: 3:10-cv-08172-JWS) which was transferred from Arizona Superior Court (Case No: CV201000316) by Defendant's (Debtors) after accepting service and summons of the Amended Complaint, the Debtor intentionally supplied this court with only the initial parked, <u>never-served</u> complaint as Exhibit "K" and referred to as the "Mealer Claim".

        E.     Debtor's Motion for US District Court for removal from State Superior Court further proves they are in possession of said complaint and by referencing of said, <u>never-served</u> Complaint/claims, appears to be debtor's attempt to distract from the matters at hand. Debtor's, by acceptance and removal, must have in their possession the actual August 10th, 2009 properly served summons and Amended Complaint documents. **(Exhibit #2)**.

        F.     Debtor's flagrant, intentional violations of the Federal Rules of Civil Procedure § 8(b) et seq., pursuant Rule 55(b)(2) are in default and as such, are pending Arizona District action. **(Exhibits #4, #4a, #4b)**. Said Motion for Default Entry "#4", includes Order of Entry "#4a", and Judicial Notice "#4b" and includes and references all Exhibits #1, #2, #3 as provided herein. <u>Note:</u> Exhibit #3 is a copy of plaintiff Mealer's letter of intention of filing default judgment upon defendants, including MLC.

        Therefore, Mealer hereby makes notice to this Honorable Court of the intentional misdirection that Debtor is attempting upon all who are present, whereby they have improperly suggested and then did admit and now have purposely omitted in the same document/Objection/Motion -in order to influence, deceive and dissuade this court- as proven after the true receipt and service of summons for Mealer's claims in Arizona District Court Case No: 3:10-cv-08172-JWS and within Debtor's February

3.

26th, 2011 <u>Notice of Hearing On Debtor's Objection To Administrative Claim No. 70792 By John</u>

<u>Mealer,</u>:

> <u>In Debtor's own words at ¶#1:</u> *"The Debtors have examined the Mealer Claim and the hundreds of pages of documents Claimant has filed in these chapter 11 cases and in other actions Claimant has commenced against the Debtors."*

G. **Pursuant to and upon order of** this N.Y.S.D. Bankruptcy Court's direction on 4/14/2010, Mealer has proceeded and pursued Justice by law in a Superior Court Civil setting to procure a valid *"show[ing] and a prima facie entitlement to relief"* prior to this claim being returned to this bankruptcy forum. Ultimately, Arizona District Court Case No: 3:10-cv-08172-JWS is exactly that *"show[ing]"* pursuant the N.Y.S.D. Case No. 09-50026; *"Endorsed Order: Motion Denied without prejudice, for failure to show a prima facie entitlement to relief. S/REG USB"* by the Honorable Robert E Gerber in this very court and this exact case 09-50026 (REG) <u>(herein, "NYSD Order")</u>. Re: Mealer's <u>Motion to Approve Procedures For Administering Claims Under Bankruptcy Code Section 503(a)(1)</u> <u>(A),(3)(4)(A)(C)</u> was "denied without prejudice" thus allowing this claim and others to follow. **(See Ex. #5)**.

H. Mealer's true and complete claim, by Amended Complaint is pending appeal in Arizona District Court, has made full, complete, proper allegations, has stated a claim on which relief can be granted and clearly establishes respondeat superior liability upon Debtors and subsequently **is not barred** by the "doctrine of accord and satisfaction" and has been accepted by Arizona District Court per Orders of the Honorable John W. Sedwick.

**THEREFORE,** Debtors having intentionally misrepresented the true and correct issues at hand, have omitted and have failed to provide the relevant facts in what appears to be no more than abusive procedural tactics and as such have already become a detriment to the public and a hindrance and disgrace to this Court. For the reasons herein, accordingly, Creditor MEALER requests the <u>entry of an</u> <u>order</u> allowing the true and substantiated Mealer Claim to remain on the claim's register and to Deny the Debtor's Motion to Deny.                    4.

## II.    **JURISDICTION**

1.      Jurisdiction is unclear for this case. Factually this court has jurisdiction to <u>consider</u> this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is technically not a Core subject matter proceeding pursuant 28 U.S.C. §§ 157(b)(2)(B), 157(b)(5) "as defensive against torts and as such strictly limit the authority of bankruptcy judges with respect to personal injury claims". Mealer filed his April 14, 2010 requesting this <u>Court Approve Procedures for Administering Claims....</u> whereby the Honorable Robert E. Gerber denied the request without prejudice and ordered Mealer to show a prima facie entitlement to relief which could only be concluded in a civil court. NGMCO 363 Order allows access to torts. <u>Therein lies the confusion</u>.

A.      Mealer's chapter 7 bankruptcy pre-petition claims ultimately originated from incidents that created his personal bankruptcy and were entirely made as protective and defensive claims which could have and would have existed outside of Bk. as detailed within the August 10, 2010 Amended Complaint **(Ex. #1)** sent to civil court by the Honorable Robert E. Gerber on April 14, 2010, and Honorable Redfield T Baum on June 2, 2010. The concurrent causes of action have caused an intersecting lapse of court's replies upon this Claimant and neither court has undergone final ruling proceedings on the merits of these cases, and many instances are pending appeal. Both bankruptcy court Orders maintain this is not core subject matter, yet these cases must be heard and ruled upon somewhere.

B.      To sum up the jurisdictional issue; Mealer presumes this court possesses knowledge and power to determine where this case belongs, keeping in mind this court originally concluded and ordered through 'denial without prejudice' that Mealer provide prima facie entitlement to relief which could only be obtained in civil court for the personal injury torts. Mealer timely filed such legal proceedings and awaits adjudication by due process. Mealer awaits instruction to have these personal injury tort claims to be heard in the district in which the claims arose. If Not for Debtor's

interference, Mealer would be manufacturing automobiles at full capacity.

## III.    <u>PRELIMINARY STATEMENT (BACKGROUND OF MEALER CLAIMS)</u>

1.    Debtor's "apple bites scenario" aside, in May, 2009, the Mealer Companies LLC Funding Proforma **(Exhibit #7)** was mailed via email and US Postal Service on CD ROM, in print or PDF format, to various interested prospective investors, brokers, venture capitalist firms, trust funds, State of Tennessee Department of Economic Development, Texas Department of Economic Development, the Arizona Governor's Office, the White House, Senator John McCain, Senator Jon Kyl and to a variety of major automakers, including Ford, Chrysler, GM, Land Rover (Tata Motors), Toyota and others, just days following the new "mealercompanies.com" website being set-up which was a significant due diligence point and web presence for prospective advantageous persons and companies to garner funding and support for full funding. Mealer was also maintaining the prior Mealer Companies' website of "betterconstructed.com".

A.    According to mealercompanies.com website's detailed statistical visitor counter (statcounter.com), within 10 days of the proforma mailings, GM employees entered MealerCompanies.com website, possibly for review. Within 30 days on June 9th, 2009, Mr. Kordella <u>signed into</u> the website by direct URL (not from outside links) under investor guru Blog name "MONEY01" and published injurious falsehoods sent via RSS FEED and later via direct email messages from within GM offices via inner-corporate secured ISP equipment to Mealer's prospective advantageous parties. Please See Ex #1 "Amended Complaint" P.44 et al., Count II, P.66, App. I et seq., P.76, App. II et seq., <u>referenced herein pursuant to "A.C.I.", Rules 2 & 7.</u>

B.    The true Mealer Claim and precise circumstances of this extraordinary case as it has progressed or stalled are not for lack of cognizable theory or the Mealer's requirement to supply 'inferential allegations', but instead represents the actual orders, demands and actions placed upon this Claimant by this Honorable Court, the Arizona District Bankruptcy Court and the Arizona District

Court all originating from the unlawful, injurious actions of the Debtors. Claimant Mealer holds liable the Debtors and other entities as detailed within the served Amended Complaint, for injurious falsehoods made on and following June 9th, 2009 by GM corporation employee, engineer "designated" (Ex. #23) blogger Mr. Kris J. Kordella with other named/identified or unnamed GM, GMAC employees/agents who aided, abetted and participated -to have published these injurious falsehoods- portrayed as an investor 'blogger' before key investors under the moniker "MONEY01" on Mealer's Prospective Funding for his automotive manufacturing business growth website, in a clearly anti-competitive manner.

2.      Mealer was in discussion with several groups of parties of interest of prospective investors for $200 Million and multiple prospective public clients and dealers for 2000 pre-MFG sales to the tune of $30 Million. Common sense, past and current illegitimate business purpose anticompetitive conduct by the GM Family of companies, specifically GM provide a basis of plausible validity of Debtor's actions. *Such entities supplied only upon Order of this court as Non-Disclosure Agreements will be violated.*

## IV.     **DEBTOR'S LIABILITY IS CLEAR AND CONCISE**

1.      As discussed and detailed further and within the actual served Complaint. (Ex.#1).

A.      Debtors are held liable whether through negligence and gross negligence, respondeat superior, vicarious liability because they failed to prevent Mr. Kordella's intentional conduct while at work and /or while outside of work using GM equipment under control of GM, because he was privileged, long time employee of GM and while hired, trained and retained as a servant for over 25 years. Further, the negligent entrustment which GM placed upon Mr. Kordella to uphold his highly skilled and corporately managed custody of proper work ethics while using GM computers at work and ISP from home and GM did fail to exercise said control, and his tortfeasors did occur both within and

7.

outside his scope of employment through GM's inner-corporate ISP either as gross negligence or possibly by complicity and conspiracy. Whether intentional or not, GM had the right to control and controlled and is vicariously liable for their employee, Mr. Kordella's injury to Mealer and Mealer's property,

B.    GM did entrust the custody and control to their employee, Mr. Kordella, who while at work for GM was in possession of and utilizing GM owned computer equipment, and the GM assigned private Internet access and GM secured and private email and the GM assigned private IP address by and through GM inner-corporately shared ISP access wherein GM had the ability to control Mr. Kordella's daily activity while he was at work on said equipment and GM did know of the necessity, and had an opportunity, for exercising such control to prevent Mr. Kordella from intentionally maliciously injuring Mealer as stated within the Served Complaint.

C.    Mr. Kordella's privately controlled ISP with employer GM acting as "controlling person" designated and created MONEY01 blog and the follow up messages have clearly and undeniably caused harm to Mealer. Mr. Kordella, blogged as a "GM engineer" cleverly identified as "MONEY01'" who by the very moniker is the No. 1 investor with GM's blog replies by email owned by GM passing through the inner-corporate GM-GMAC controlled private ISP which Mr, Kordella had secured controlled access to as a 'flexible duty' employee under the controlling guidelines and policies of GM. **(See Ex. 20, 21, 22, 23)** The comments proved operationally malicious, strategic placement of injurious falsehoods which clearly and effectively implied factual assertion of totally false comparisons which this claimant (automaker) was reliant that GM would not commit in what would have been competitive and rival companies, which resulted in loss of investment funds and prospective monies to be set-aside for prospective investor meetings, to the benefit of GM, GMAC and to the injury of Mealer and Mealer Companies LLC. A signed copy of Mr. Kordella's ISP User Agreement form and Employee Handbook cannot be had under due diligence and requires subpoena for GM.

8.

2.    GM is vicariously liable for both contributory and comparative unintentional torts and per se unlawful activity against Mealer because GM supplied the computer equipment, trained the employees and retained the right to exercise the control of said equipment and employees, and apparently failed to exercise said right to control. GM is required to supply "reasonable care under all of the circumstances of the particular case" which is a predicated issue,  flexible enough to apply to diverse circumstances.

3.    Clearly, any discussion of good faith, negligence, or a duty to supervise is irrelevant. As one of the major treatises on the subject recognizes: Vicarious liability ... is imposed ... in cases where the master has taken all the steps that reasonable foresight would suggest, including those which involve the exercise of control. Indeed, the court is not even interested in hearing whether the master exercised his right of control well and prudent.

4.    The mere fact that GM had considered that an employee may inadvertently iterate or comment on social media and whether or not such employee may or may not be designated by GM to speak on behalf of GM provides ample evidence that GM was the controlling person and owed a duty to Mealer and the public to behave as any reasonable person would under the circumstances and GM's choice and/or policy to to do nothing to stem the risk of any foreseeable risk of harm and the damages it will actually cause to others and an option (request and plea) to take alternative action **(Ex. #11)** to avoid such acts, violates such "reasonable person" and caused inadvertent injury to Mealer which was necessary to the general welfare of the public, including Mealer Companies' engineers and development team **(See Ex. #7, P. 35 et al)** has become no less than a series of intentional acts . GM further acted negligent per se by refusing to remove or have removed the postings after the fact.

## V.    THE INTERNET POSTINGS

1.    Mealer's Amended Complaint **(Ex.#1)** details the strategically placed, GM created "MONEY01" blog on Mealer's funding website 'per quod to per se' meanings of the injurious

9.

falsehoods which Mr. Kordella (GM) maliciously stated in front of Mealer's prospective investors and clients is clear and evident throughout the Amended Complaint and specifically P. 66, Appendix I, and P.78, Appendix II specifically beginning on P. 83, ¶128, through ¶128L. The effect of the MONEY01 blog was instrumental in preventing Mealer Companies and the Mealer Automobile and Mealer himself from gaining growth funds and becoming rival with Debtor GM.

Mealer's application of any attempt to qualm the already destructive RSS FEED delivered injurious falsehoods was to prevent further damage and to stem the financial, emotional and pecuniary damage that GM had just caused to him.

**2.**    After days of Claimant demanding Mr. Kordella publicly apologize and have his superior issue a public apology as well including a retraction, Mr. Kordella offered a private insolent apology which Mealer then posted on his own in an attempt to save face and stem the future damages of the giant GM's lowly opinion of a new US Automaker who had just lost his prospective funds, reputation and ability to gain substantive automotive related work. Mealer's reply [to his self-posted on the MONEY01 blog entitled "TO JL, What a funny guy" of Mr. Kordella's private apology cliché] to "....mend fences..." and "...good to go..." are examples of the "patchwork created by Mealer to attempt to save face". It did not work as far as the prospective investors and clients are concerned.

A.    Further examples of Mealer's August 22, 2009 attempts at "damage control" to portray that his business had not been destroyed and funding halted due to Mr. Kordella's RSS FEED sent injurious falsehoods have been included in Debtor's Exhibits *Ex. B at 3, Id at 4,* and are no more than what had been planned updates to help gather interest in the Mealer Automobile and Mealer Companies products. Including Mealer's hope to rekindle the old prospective interest by claiming we were under negotiations (and trying to avoid explaining GM's attack)**:** (Debtors Ex. C at 2)

It appears that we are under negotiations for funding and if all goes well, you will see out Bridge Vehicle hitting the market in the next 18 months.

10.

B.        On October 24, 2009, Mealer made further attempts to ease critically timed, June 9, 2009 interference of business progress and his blackened reputation instigated by GM's  Mr. Kordella's blog by  instead *predicting rapid developments in Mealer Co's. business:*

> *The October Stretch*
> *October 2009 in regards to Mealer Companies brings us to a point where we hope to be moving into our initial corporate offices this winter as we expect to begin making major advances to bringing our product to manufacturing and to market by fall 2010. These are exciting times and I hope you will follow our progress. As we move our many engineers, techs and development personnel into the area, the enthusiasm will lead to constant updates and they should keep you up to speed. [sic JL Mealer]*

C.        Finally, on January 1, 2010, Mealer applying even more damage control updated the remnants of his prospects and interested parties that the new year might be better than the previous year where GM acted maliciously to destroy his prospective advantages. Of course Debtors have again misquoted and taken out of context the website statements of Mealer.

> *Mealer Companies LLC has a quite a bit going for the company this year. Funding just around the corner and a wide open world to help **heal**. The MEALER products are not the issue and manufacturing along with product sales are not going to be a problem... It's the red tape and road blocks that may be put down by the power brokers and greedy outsiders. When reality comes around, we know that nothing will stand in our way.*
>
> *"Heal" meaning creating a sliver of real hope for new jobs and new found wealth for those of us who are struggling through a bad past year. Mealer Companies is just the tip of the iceberg on a new stretch of American Entrepreneurs. In fact the entire global world of private and individual businesses is about to rally around and create the jobs that not only the USA needs, but the world's populous demands. No one who is worth anything wants to stay on welfare or take a free ride through life. It's all about the job, career and lifestyles that we choose for ourselves and for our families.*
>
> *I expect to have a few new prototype sketches of the MEALER on this Word Press site within the next 45-60 days.*
>
> *JL Mealer*

**3.**    Mealer realizes that GM will not recant or relent in their attack and seeks relief for Mr. Kordella's (GM) injurious falsehood comments

**4.**    Mr. Kordella whether designated by GM or by his own volition did intentionally and

11.

negligently publish a series of injurious falsehoods and direct emails disparaging the quality of Mealer's property which resulted in pecuniary loss and the publications of matter were in fact derogatory to Mealer's business, all of which were calculated to prevent others from dealing with him. As evidenced in the Complaint Ex. #1, the details of Intentional Interference WPA prove true through GM's tortfeasor. When facts are disputed, the employee relationship is a question of fact for the jury rather than an issue of law for the court.  The court may decide the issue of "who had the control or right of control at the time ….[of the incident]" only if the evidence is "clear and uncontradicted." Mealer believes the evidence that [GM] had the control and right of control of [sic] actions at the time he used GM equipment while at work to cause injury. Indeed, GM had exclusive right to control the work activities at all GM owned offices and engineering locations because GM superiors supervised all of the employees daily work activities, including where, when, and how to work and what they are allowed to suggest in a personal manner or as designated by GM  "on a blog". **(See Exhibit #23.)**

A.    The comments which were made on Mealer's business and prospective funding website under the guise of Mr. Kordella and other contributing GM employees **(Ref. Ex. #1)** while signed on as "MONEY01" and then again as he professed to be "A real engineer of real automobiles" with a returning email address that belongs to GM and assigned to GM employee(s) "kris.j.kordella@GM.com" **(Ex.#24)** through GM jointly-owned IP address 198.208.251.24 from his GM office in or near Bloomfield Hills, MI.

Clarification of ability to control and right, necessity and opportunity for exercising that conduct and control exists with GM who trained employee Mr. Kordella in professional conduct and has had control over such conduct for tortious, criminal activity within the scope of his employment while using GM supplied, monitored and personalized GM equipment is evidenced by GM's  Social Media Policies. (Ex. #23).

12.

B.        *Normally a blog posting is merely a private made public opinion*, HOWEVER, this case is extraordinary as the improper motive and means by which GM did actively (or possibly negligently) by and through their 25 year veteran -who was designated and connected to other designated GM bloggers- lead engineer Mr. Kordella's knowing he was blocking existing "business expectancy" investment funds did intentionally publish unlawful injurious falsehoods and misrepresentations of Mealer's business, knowledge, trustworthiness and personality, via a series of strategically worded, malicious injurious falsehoods, placed directly in front of Mealer's prospective investors and clients. Said comments were immediately sent via RSS FEED to prospects signed up to receive website updates and instantly interfered with tentative and not always serious investors but 'prospective investors' none-the-less. Whether considered *"serious investors and clients"* or *"timid investors and clients"* or *"hesitant investors and clients"* they were *"prospective investors"* prior to GM's injurious falsehood MONEY01 blog. CLEARLY, the prospective growth funding and pre-MFG Mealer Automobile sales were destroyed by Mr. Kordella's intentional posting of injurious falsehoods , slander of title and trade libel on June 9th, 2009.  This cost Mealer $430 Million in prospective funds and pre-mfg vehicle sales.

C.        Further, Mealer has provided the documentary evidence proving the <u>existence of a valid business expectancy</u> **(Ex. #7)**; Mr. Kordella's and GM's knowledge of this funding expectation is proven by his repeated visits to "http://mealercompanies.com/?page_id=2", **(See Ex. #1, p.70, ¶113b*1* and Ex. #8 and Ex. #9)**; the existence of defamatory injurious falsehood styled comments made by Mr. Kordella acting under GM capacity portraying themselves as lead investor "MONEY01" including a series of follow-up and further injurious falsehoods through direct emails to prospects of Mealer, which did result in irreparable damage proving tortious as defamation and trade libel berating the Mealer Automobile are wrongful and fraudulent and intended to dissuade Mealer's prospects whomever they may have been.

13.

D.    Indeed, Mealer has left the GM employee created "MONEY01" blogging account [containing injurious falsehood comments] on the company website for over 180 days and this was allowed for several reasons **(See Exhibit #18)** including;

1).    Mealer expected GM in any form whether MLC, or the new GM  (GM LLC) or the latest GM Company to offer a public corporate apology so that Mealer may try to "win back" his lost prospective investors and clients;

2).    Mealer felt that altering the website comments and blogs was dishonest to those following the progress of the prospective growth funding;

3).    Mealer was attempting to use the attention (as bad as it was/is) of the corporate giant GM to inspire others to potentially "invest in the underdog;"

4).    Mealer hopes that through the history of GM's anti-competitive behavior against other automakers, inventors and suppliers, that this GM  attack on Mealer might prove beneficial to Mealer rather than a crushing antitrust issue.

5).    It is simply not Mealer's responsibility nor his authority to remove another person's injurious falsehoods without the requested corporate parties permission, public apology and retraction. No officer or superior to Mr. Kordella from any GM party has responded to multiple requests to have these issues resolved.

6).    Following the blog space created as "MONEY01" Mr. Kordella followed up by sending direct emails containing additional injurious falsehoods to a    variety    of    Mealer's prospective investors, clients and interested parties and the initial posting became somewhat shadowed by the direct assault, including multiple threatening emails to Mealer. And those emails cannot be remedied.

7).    The publication of injurious falsehoods by GM prove to be evidence for

14.

the unlawful actions by GM and the associated defendants IF such a lawsuit were to result had GM and the parties NOT offered the public, corporate apology as originally requested by Mealer.

Mealer routinely mailed copies of multiple letters to the Honorable Robert E. Gerber in order to keep the court up to date on the April 14, 2010 Order to show a prima facie entitlement to relief wherein, Mealer requested that GM, et al., remove by 'request to have removed' through their CEO authority the blog and to publicly apologize for said injurious falsehoods.

**5.**     Mr. Kordella has never offered a public apology to Mealer nor has Mealer accepted any public [or private] apology from Mr. Kordella for the initial, immediate effect of the injurious falsehood postings, nor has GM publicly and corporately apologized for their gross negligence, negligent and/or injurious falsehood related activity.

A.     <u>Debtor has erred in their summary of the doctrine of accord and satisfaction,</u> and has erroneously concluded that any private or public apology could meet such an accord or satisfaction. IN FACT, an accord and satisfaction "is a method of discharging a contract or cause of action whereby the new agreement, or accord, is substituted for the old and the performance of the accord is the satisfaction." This has never been the case and cannot possibly become the solution in this personal injury matter for either GM or GMAC **(Ex. #10,** P.4-5 citing P.16 ) <u>Solar-West. Inc. v. Falk</u>, 687 P.2d 939-45 )Ariz. Ct. App. 1984)**).**

B.     Mealer did not ask for, nor provoke debtors for this injurious attack at any time during their once-active business and Mealer's once-active business. Debtors, while converting to a new improved version of their failed business *appear to* have decided that a new US automaker might too easily grab a very small portion of their sales market and then worked to destroy the man (Mealer) and his automobile (the Mealer Automobile).

C.     Mealer wishes to make it clear to this court, he understands that other creditors are also important and although the intentional tortious actions and injurious falsehoods caused

15.

extensive, provable irreparable damages to Mealer and his business, Mealer is willing to accept the

originally demanded/requested "GM Family's, *(Specifically GMC n/k/a MLC and GM LLC, new*

*GMCo and GMAC)* "Public Corporate Apology" and the requests made for their tortious activity and

whatever pecuniary damages this court feels is reasonable for the trade libel and defamation they have

caused, plus any other GM, MLC damages. **(Ex. #11).**

**Accordingly, the Mealer Claim should NOT be denied and must be heard in it's entirety.**

## VI.    BACKGROUND

    **1.**    <u>These Chapter 11 Cases</u>

        To the best of Mealer's knowledge Debtor's Ch. 11 dates are correct.

    **2.**    <u>The Internet Postings</u> (See Complaint Exhibit #1, Viz court authority per A.C.I.)

## VII    EXCEPTIONS TO
## Debtor(s) MLC, NGMCO ("GM") BANKRUPTCY PROTECTION

    **1.**    **<u>On July 10, 2009</u>**, on suggestion of the president, directed by executive GM officers, the

board and the general anticipation of the torts used against Mealer, to regain market control, the

Debtors depended on the elimination of personal injury torts by consummating the sale of substantially

all of their assets to NGMCO, Inc. (which is the reformed GM, a/k/a General Motors LLC, k/n/a

General Motors Company "GMC"), a United States Treasury-sponsored purchaser, pursuant to section

363 of the bankruptcy Code and certain Amended and Restated Master Sale Agreement **(MSPA")**.

*See <u>Sections 3, 4, 5</u> noted herein on P. 16,* clearly stating MLC and purchaser GM LLC (NGMCO) are

not immune to and must be in compliance with applicability to any Antitrust Laws. Further Pursuant to

<u>"Section 4.3 Noncontravention; Consents.</u>

    (b) Subject to the entry and effectiveness of the Sale Approval Order, no consent, waiver,
approval, Order, Permit, qualification or authorization of, or declaration or filing with, or
notification to, any Person or Governmental Authority (other than the Bankruptcy Court)
is required by any Seller …. of the transactions contemplated by this Agreement or by the
Ancillary Agreements to which such Seller is a party or the compliance by such Seller with any
of the provisions hereof or thereof, **except for (i) compliance with the applicable
requirements of any Antitrust Laws...**    16.

*AND*

### "Section 5.2  Authorization; Enforceability.

(b) No consent, waiver, approval, Order, Permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required by Purchaser for the consummation by Purchaser of the transactions contemplated by this Agreement or the Ancillary Agreements to which it is a party or the compliance by Purchaser with any of the provisions hereof or thereof, **except for (i) compliance with the applicable requirements of any Antitrust Laws...** "

AND note that Section 5.2 was REPLACED on July 5th, 2009 in the Second Amended Restated Master sale and Purchase  Agreement (herein "MSPA2")

### "Section 5.2  Authorization; Enforceability. "MSPA2"

(b) This Agreement constitutes, and each of the Ancillary Agreements to which Purchaser is a party, when duly executed and delivered by Purchaser, shall constitute, a valid and legally binding obligation of Purchaser (assuming that this Agreement and such Ancillary Agreements constitute valid and legally binding obligations of each **Seller that is a party thereto and the other applicable parties thereto), enforceable against Purchaser in accordance with its respective terms and conditions, except as may be limited by applicable bankruptcy....fraudulent transfer and other similar Laws relating to or affecting …. in effect ….** by general equitable principles relating to enforceability, **including principles of commercial reasonableness, good faith and fair dealing."**

AND the **<u>EXECUTION COPY</u>** reverted;

"**Section 5.2**; (b) No consent, waiver, approval, Order, Permit or authorization of, or declaration or filing with, or notification to, any Person or Governmental Authority is required by Purchaser for the consummation by Purchaser of the transactions contemplated by this Agreement or the Ancillary Agreements to which it is a party or the compliance by Purchaser with any of the provisions hereof or thereof, **except for (I) compliance with the applicable requirements of any Antitrust Laws....**"

AND pursuant to Parent SEC agreements and related notes:

### <u>Section 4.5 Reports and Financial Statements; Internal Controls.</u>

(b) (i) The consolidated financial statements of Parent included in the Parent SEC Documents (including all related notes and schedules, where applicable) fairly present or will fairly present in all material respects the consolidated financial position of Parent and its consolidated Subsidiaries, ….subject, in the case of Parent SEC Documents filed or furnished during the period beginning on the date of the Original Agreement and ending on the Closing Date, to any modification by Parent of its reporting obligations under Section 12 or Section 15(d) of the Exchange Act as a result of the filing of the Bankruptcy Cases.

17.

AND; pursuant to the Second Amended to Amended Restated "MSPA", dated July 5th, 2009, entered

July 10, 2009, which clearly states the permitted encumbrances outlined within the Honorable Gerber's

MLC Bankruptcy Chapter 11, 363 Order;

> "...(x) **except to the extent otherwise agreed to** in the Ratification Agreement entered into by Sellers and GMAC on June 1, 2009 and approved by the Bankruptcy Court on the date thereof or any other written agreement between GMAC or any of its Subsidiaries and any Seller, all Claims (in each case solely to the extent such Claims constitute Encumbrances) and Encumbrances in favor of GMAC or any of its Subsidiaries in, upon or with respect to any property of Sellers or in which Sellers have an interest, **including** any of the following: (2) **owned or leased equipment;**(4)...inventory, equipment, ; it being **understood that nothing in this clause** (xi) **or preceding clause** (x) **shall be deemed to modify, amend or otherwise change any agreement as between GMAC or any of its Subsidiaries and any Seller**...."

This clause et seq is especially critical as the GMC-20 ISP device was/is registered at and stored within

the GMAC headquarters at 200 Renaissance Center, Detroit, MI.

    **2.**    <u>Permitted Encumbrances</u>: GM by and through engineer Mr. Kordella have created a

series of *"...permitted encumbrances... arising by operation of law or statute...."* [IE. Defamation,

Trade Libel and Antitrust Law and other tortfeasors per statutes] *"...that are being contested in good*

*faith by appropriate proceedings...."* [IE. Case No. 3:10-cv-08172-JWS US District Court of Arizona].

    In addition, the 363 order further states that neither MLC nor the new GM are subject to all

terms, conditions and limitations, including certain personal injury torts and any antitrust related claims

which may occur at any time during the bankruptcy or had been referenced to in the various versions or

amendments of the final MSPA whether prior to, during or after the 363 Order and the complete

settlement of all issues related to the GM  bankruptcy.

**Section 3.** *Effectiveness of Amendment.* Upon the execution and delivery hereof, the Purchase Agreement shall thereupon be deemed to be amended and restated as set forth in <u>Section 2</u>, **as fully and with the same effect as if such amendments and restatements were originally set forth in the Purchase Agreement.**

**Section 4.** *Ratification of Purchase Agreement; Incorporation by Reference.* Except as specifically provided for in this Amendment, the Purchase Agreement is hereby confirmed and ratified in all respects and shall be and remain in full force and effect in accordance with its terms. **This Amendment is subject to all of the terms, conditions and limitations set forth in**

18.

the Purchase Agreement, including Article IX thereof, which sections are hereby incorporated into this Amendment, mutatis mutandis, as if they were set forth in their entirety herein.

**Section 5.** *Counterparts.* **This Amendment may be executed in one or more counterparts, each of which shall be deemed an original, and all of which taken together shall constitute one and the same agreement.** All signatures of the Parties may be transmitted by facsimile or electronic delivery, and each such facsimile signature or electronic delivery signature (including a pdf signature) will, for all purposes, be deemed to be the original signature of the Party whose signature it reproduces and be binding upon such Party.

Motor Liquidation Company ("MLC") and honorable Robert E Gerber of the New York Southern District Bankruptcy Court remanded the changes to the June 1st, 2009, June 26th, 2009 & July 5th, 2009 agreements to apply as follows within the bankruptcy-reorganization 363 Order:

UNITED STATES BANKRUPTCY COURT SOUTHERN DISTICT OF NEW YORK
In re: Chapter 11 Case No. 09-50026 (REG) GENERAL MOTORS CORP., et al
**As taken from the 363 Order by Honorable Robert E Gerber:**

Upon the motion, dated June 1, 2009 (the "Motion"), of General Motors Corporation ("GM") and its affiliated debtors, as debtors in possession (collectively, the "Debtors"), pursuant to sections 105, 363, and 365 of title 11, United States Code (the "Bankruptcy Code") and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") for, among other things, entry of an order authorizing and approving (A) that certain Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009, by and among GM and its Debtor subsidiaries (collectively, the "Sellers") and NGMCO, Inc., as successor in interest to Vehicle Acquisition Holdings LLC (the "Purchaser"),a purchaser sponsored by the United States Department of the Treasury (the "U.S. Treasury"),together with all related documents and agreements as well as all exhibits, schedules, and addenda thereto (as amended, the "MPA"), a copy of which is annexed hereto as Exhibit "A" (excluding the exhibits and schedules thereto); **(B) t**he sale of the **Purchased Assets** [1] to the Purchaser free and clear of liens, claims, encumbrances, and interests **(other than Permitted Encumbrances)** [2]**, including rights or claims based on any successor or transferee liability;** (C) the assumption and assignment of the Assumable Executory Contracts; (D) the establishment of certain Cure Amounts; and (E) the UAW Retiree Settlement Agreement (as defined below);

[1] Capitalized terms used herein and not otherwise defined **shall have the meanings ascribed to such terms in the Motion or the MSPA.**

[2]**"Permitted Encumbrances"** means all (I) purchase money security interests arising in the Ordinary Course of Business; (ii) security interests relating to progress payments created or arising pursuant to government Contracts in the Ordinary Course of Business; (iii) security interests relating to vendor tooling arising in the Ordinary Course of

19.

Business; (iv) Encumbrances that have been or may be created by or with the written consent of Purchaser; (v) mechanic's, materialmen's, laborer's, workmen's, repairmen's, carrier's liens **and other similar Encumbrances arising by operation of law or statute** in the Ordinary Course of Business for amounts that are not delinquent **or that are being contested in good faith by appropriate proceedings;**

Plaintiff understands the preceding references noted as **superscript ("[1, 2]")** to clearly define the unusual antitrust related personal injury tort claims which are, through the 363 Order, considered to be *"...similar encumbrances..."* and *"...permitted encumbrances...arising by operation of law or statute...."* *"...that are being contested in good faith by appropriate proceedings...."* by both this instant Administrative Claim and within the Arizona District Court. The final "MSPA" at sections 4.3(b) and 5.3(b)(i) unequivocally state, pursuant the 363 Order, there shall be no consent, waiver, approval, Order, Permit or other compliance requirement(s) to transfer assets *"... except for (I) compliance with the applicable requirements of any Antitrust Laws...."* and as clarified in "MSPA2"(b) *except as may be limited by applicable bankruptcy....fraudulent transfer and other similar Laws relating to or affecting .... in effect ....* by general equitable principles relating to enforceability, *including principles of commercial reasonableness, good faith and fair dealing."*

The following context relating to exceptions for assumed liabilities as any expressly permitted or specific provisions of antitrust issues of the 363 order is quite clear;

> At 48; "Except for the Assumed Liabilities, **or as expressly permitted or otherwise specifically provided for in the MPA or this Order**, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Sellers arising under or related to the Purchased Assets."

CLEARLY, the exception of antitrust issues which are expressly permitted as encumbrances and otherwise specifically provided for in both the 363 order and the MSPA. Mealer has plead quite clearly the antitrust and permitted personal injury tort claims and has done so pursuant Federal Rules of Civil Procedure. In reference to the authority of this "permitted encumbrance" claim and antitrust issue,

20.

pursuant paragraph 71 of this Court's July 5, 2009 Order which causes this court to "retain exclusive jurisdiction" Mealer expresses concern over the pending cases in the District of Arizona and the influence each Claim and Complaint might have on the public's interest and rather than argue the jurisdictional issue, hereby places the selection of venue bringing to light the last sentence of ¶ 71 and it's relevance to this instant claim/case where it states;

> "This court does not retain jurisdiction to hear disputes in connection with the application of the Participation Agreements, stockholder agreements or <u>other documents concerning the governance of the Purchaser</u>, …. <u>which disputes shall be adjudicated as necessary under applicable law in any other court or administrative agency of competent jurisdiction</u>".

Simply, if the Honorable Robert E Gerber decides to hear this case when a final ruling may be justified upon the merits rather than denial of claims, Mealer agrees with his decision.

### B.    MEALER'S FIRST FILING IN THIS CHAPTER 11 CASE.

1).    Mealer, dealing with intervening circumstances beyond his control, realized the damages were so deep and far reaching and that GM would not do the right thing and offer an apology, so he was forced to resort to "protective and defensive" protection, officially requesting this Court Approve Procedures for Administering Claims Under Bankruptcy Code Section 503(a)(1)(A),(3)(4)(A)(C). On 4/14/2010, this Court denied the Administrative Claims Motion, which granted and Ordered Mealer to proceed in a civil suit so as to provide "prima facie entitlement to relief." **(Ex. #5)**. Pursuant this Court, this case has progressed.

2).    The obvious factor involving the six month period keeping Mealer from pursuing any legal remedy relates to the fact, that Mealer believed a miracle could happen and he would have been graced with funding regardless of the blackened name and trade libel by GM. Furthermore, enough time had passed that Mealer realized his prospects from the summer of 2009 had moved on after the GM assault. Mr. Kordella and GM made certain that Mealer's funding would never happen

21.

and after six months of Mealer's pleas and requests with GM / GMAC, he realized they were never going to be responded to. With no other recourse, the Administering Claims Action was forced upon him.

## C.    MEALER'S ADVERSARY PROCEEDING

1).    On October 4, 2009, Mealer having no response from GM, GMAC or Mr. Kordella regarding a public apology and retraction and while attempting to compile personal funds to file the civil suit (as ordered in N.Y.S.D. to provide prima facie entitlement to relief), was forced to file his personal Ch 7 petition, Case No. 09-24899, (fees donated by an associate) due to the financial results of the injurious falsehoods which destroyed Mealers prospective growth funding  on June 9, 2009, and blackened his name for other automotive-related jobs.

2).    On March 30, 2010, Mealer filed a "protective and defensive" Adversary Claim (No. 10-00503) which was Mealer's attempt to outline the GM and GMAC Group's use of tortfeasors to control his livelihood and ultimately cause default in Mealer's mortgage payments as any pending foreclosure was placed on automatic stay. *Viz* 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5), which "strictly limit the authority of bankruptcy judges with respect to personal injury ….claims" and Fed. R. Civ. P. Rule 41(a)(2) which allow for involuntary dismissals, the Ariz. Dist. Bankruptcy Court Judge the Honorable Redfield T. Baum dismissed GM and MLC "without leave to amend" without reference to Rule 8(a) and as such, "without prejudice" and directed Mealer to replead in civil court much like the Honorable Robert E Gerber ordered on April 14, 2010 for prima facie relief.

3).    Mealer did not violate an Automatic Stay of the Debtor's chapter 11 reorganization, nor did Mealer lack standing to proceed *viz* judicial order noted herein and referenced in **Exh #5** and referenced in Debtor's Exh "I" pgs, 7, 8, 9, 10 stating that civil claims are not to be heard

22.

in a bankruptcy court and that as such, the "injunction and retention of jurisdiction therein" would not grant jurisdiction to the Ariz. Dist. Bk Court, nor to Mealer's claims in that forum. Which reverted back to the Hon. Robert E. Gerber's Order and Motion to Deny without prejudice... pending Mealer's prerequisite for prima facie relief for his 503(a)(b)(1)(A),(3)(A)(B)(C) [initially, mistakenly quoted via pro se error as "503(a)(1)(A),(3)(A)(3)"] ...*tardily file[d]* claims... (b) *after notice and a hearing...* (1) (A) ….*actual necessary costs and expenses to preserve the estate...* (3) *expenses other than compensation and reimbursement...* WHEREBY, (A) *a creditor who files a petition under section 303....*(B)....*a creditor recovers after court's approval...*(C)....*in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor. Viz* 348(d)...*for a claim against the debtor that arises after the order for relief but before the conversion in a case...*Mealer reasons viz 11 USC 523(a)(6) .... *for the willful and malicious injury by the debtor to another entity ....*

a).    The GM Corp reorganization through MLC to NGMCO and finally to GM LLC and GMCo, does not offer antitrust immunity under context of any Antitrust Laws as specified under labor unions, major league football and baseball or interstate carriers, nor under the insurance companies provision, nor free press as a newspaper company.

b).    IN FACT, as matter of law through direct Congressional Action, neither the Debtors, nor NGMCO, GM LLC, GM Company *have any  protection what-so-ever* from the wide range of Antitrust and/or Anticompetitive  illegitimate business purpose violations. Mealer believes that because Debtors and associated companies noted herein, maliciously violated Mealer's privacy, published defamation of character through injurious falsehoods,created trade libel which caused immediate, irreparable harm as it was sent to prospective advantageous parties via RSS FEED, the unlawful actions caused violations of a variety Anticompetitive laws (Antitrust Laws) because it

23.

prevented the public from accessing the interstate sales upon full-scheduled manufacture of Mealer products, Mealer Automobile, whereby the personal injury tort was converted to criminal activity against society.

        c).    Furthermore, because Debtors and other defendants in the ordered civil case have not responded to Mealer's requests and pleas (as noted herein) to put an end to the continued damages, their potential *defense* of "negligence" cannot be allowed from this point forward, because debtors and related parties are maintaining their untrue, blackening statements and by not recanting the injurious falsehoods thus, are without recourse by acting with reckless disregard of whether the comments are false or not. Because the forum presentation of these injurious falsehoods was published before Mealer's prospects and including Mr. Kordella's follow-up, direct injurious falsehood emails which are not "fair comment and criticism", nor are they "ridiculous" when used in this prospective funding assemblage and context. As such, Debtors, et al are assuming strict liability. The Law does not provide protection for Debtors and related parties who share ownership of the ISP used to blog against Mealer on his privately owned company growth funding website because they are not the provider, but the actual "information content provider" and contributory publisher while also housing and protecting the Internet Service Provider.

        4).    The wording of the 363 Order was specifically and dynamically worded so as to not circumvent Antitrust Law or Anticompetitive behavior, and the Honorable Judge Gerber (N.Y.S.D.) would never intend to release either MLC or NGMCO, GM LLC from antitrust issues such as Mealer v GM, GMAC, et al., as that would result in a gross miscarriage of justice and prevent due process while causing severe harm to the public and would violate criminal law. Furthermore, clarification of NGMCO *(k/n/a, GM LLC and GM Company)* liability as "Purchaser" in the "MSPA" preamble which was drafted by this honorable court and is clearly on record.

24.

5).    On June 2, 2010, the Ariz. Dist. Bk. Court Honorable Redfield T. Baum made it clear that personal injury tort claims could not be heard in the Ariz. Dist. Bk  Ct. with the stay in effect in the N.Y.S.D. Bk. Ct. regarding Mealer's MLC and GM LLC claims. Judge Honorable Baum ordered Mealer to a civil forum prior to dismissing the case "without leave to amend", v*iz* 28 U.S.C. §§ 157(b)(2)(B) and 157(b)(5), which "strictly limit the authority of bankruptcy judges with respect to personal injury ….claims" and Fed. R. Civ. P. Rule 41(a)(2) which allow for involuntary dismissals, without reference to Rule 8(a) and as such, "without prejudice" and directed Mealer to replead in civil court much like the Honorable Robert E Gerber ordered on April 14, 2010 for prima facie relief,which allowed for redress in a separate civil forum or as detailed by Hon Judge Baum's reference to " …. and the injunctions or retention of jurisdiction provisions therein." (Debtor's Ex. I: 9:23-10:1). Mealer understands (again) this dismissal to revert to the Honorable Robert E. Gerber's April 14, 2010; "*Endorsed Order: Motion Denied without prejudice, for failure to show a prima facie entitlement to relief. S/REG USB*" [*Re:* N.Y.S.D. Case No. 09-50026 **(See Ex. #5)**].

### D.    Mealer's Lawsuit  in Arizona State Court and Arizona District Court

1).    While multiple bankruptcy cases and complaints covering tort  issues were concurrently underway;

a).    On April 14, 2010 the Honorable Robert E Gerber, by order, sent Mealer to show prima facie evidence entitlement to relief. **(Ex. #6)**

b).    On June 2, 2010, the Honorable Redfield T. Baum, by order, sent Mealer to civil court for his civil issues and remanded all other Debtor matters back to the N.Y.S.D. Forum. (Debtor's Ex. "I" p.6:21-25 and p.7:22-24 and p.9:23-25, p.10:1)

c).    On June 8, 2010, Mealer parked a complaint in Arizona State Superior County Court case No. 10-00316 ("State Court Action") and completed an amended complaint and

25.

properly served said Complaint **(Ex. #1)** and on August 10, 2010, concurrently and properly on all parties including MLC **(Ex. #2)**. Mealer served pursuant <u>Fed. R. Civ. P. 4(h)</u>, under that Rule, "a domestic... corporation... or other unincorporated association... must be served... by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized... by law to receive service of process."   And specifically, viz Ariz. R. Civ. P 4.2(h) providing That [i]n case of a corporation or partnership or an unincorporated association located outside [Arizona] but within the United States... service... shall be made on one of the persons specified in Rule 4.1(k), which mirrors Fed. R. 4(h) and specifies that service can be made on "a partner, an officer, managing or general agent, or to any other agent authorized by appointment or by law to receive service of process."

2).    Mealer complied with the letter of Rule 4.2(c) in attempting to serve MLC. Service was made to c/o Albert Koch (the acting CFO, CEO at the time) at 500 Renaissance Center, Ste 1400, Detroit, Michigan 48265, Certified Mail-Return Receipt No. 7009 2820 0000 9062 9488 and service was accepted on August 18th, 2010 at 7:17 by "Firm Book" method Recipient: "T. Keys" after being routed to the 400 Ren Cen mail center "Firm Name: REN CEN 48243." **(See  Ex. #2, Pg. 13).** The certified mailing was signed by T. Keys who had the authority to "accept restricted delivery mail on [MLC's and Koch's] behalf". "[i]n determining the validity of service in the state court prior to removal, a federal court must apply the law of the state under which the service was made."

3).    Debtors have provided this court with an improper and never served document as their Exhibit "K." Whereas, the properly served Complaint against 15 defendants, alleges 21 Causes of action against "GMACM" (GMAC Mort. LLC, GMAC Financial Svcs., Residential Capital LLC), for mortgage related violations (all 21 have been dismissed in Mealer's Ch. 7 Bk., due to the "inartful pleadings" of this pro se litigant violating Rule 8(a), *yet* with prejudice), AND 11 Causes of action

26.

remaining against "GMACM," GM LLC (pending appeal, See Ex. #6 ),   and the same 11 Causes of

actions being held against Debtors, and at least 2 Causes of action for  negligence against CEO's; David

Applegate, Michael Carpenter, Thomas Marano and Edward Whitacre, Jr. The Four Causes of action

against the Department of the United States Treasury have been 'voluntarily' dismissed.


4).    On June 15, 2010, General Motors LLC filed a motion to dismiss the District

Court Action on grounds that have been proven opposite of the GM LLC claim and the District Court's

ruling, which is awaiting the time for appeal. **(See Ex. #6)**


5).    Mr. Kordella's motion to dismiss is also **awaiting appeal per court order (Ex**

**#6).** Furthermore, observations of District Court notwithstanding pending appeal as the appeal has yet

to detail much of what has been detailed herein regarding "prospective" rather than "serious" investors

and as proven by case law specifically referenced for P. 14  herein.


E.    **MEALER'S ADMINISTRATIVE PROOF OF CLAIM , "APC"**


1).    On February 5, 2011, Mealer filed the Administrative Proof of Claim (herein

"APC") **(Debtor's Ex. "A")** which clearly defines *multiple claims* against Debtors including [gross]

negligence, *viz* Section 7 "A.C.I." referring to additional paperwork (ie. the Served Complaint (Ex.

#1)), as previously directed in court orders by the Honorable Redfield T. Baum **(Ex. #6 and See**

**Debtor's Ex "I" p.6:21-25, p.7:22-24, p.9:23-25, p.10:1)** and the Honorable Robert E. Gerber **(Ex.**

**#5)** allowing for new administrative based claims, civil complaints and future appeals granted to this

Creditor, and other tardily filing Creditors.


2).    Mealer clearly "APC" references the only filed and *served by summons* August

10, 2010 amended complaint which details all allegations, Incl: "injurious falsehood quotes" from Mr.

27.

Kordella (while at work for GM and for the benefit of GM and his fellow employees) as long term benefits to regain market control were *oddly* suggested by President Obama, directed by and through GM's Edward Montgomery and GM superiors to enhance GM's survival through these procedures. (**Ex. #14** :P.3¶¶1,4, P.4¶4, P.5:¶¶1,2 P.6:¶2,3 and **Ex. #16**:¶2).    The obvious effect of such a plan, even rooted in bankruptcy protection, inspired by the government and acted upon by the failed company (GM), was injury to Mealer's customers and prospective employees (See Ex.#1, Development Team, P.36), was sufficiently substantial as it caused small harm on a large class of people. Mealer being the main injured party must file this section 5 claim against GM and GMAC for unlawful control of this claimant's business through GM, GMAC employees and agents.

a).    GM is vicariously liable because GM employees including Mr. Kordella, complied with the business needs of their employer, specifically to promote like-styled vehicles such as the Chevy Volt **(Ex. #15)** while downplaying competition by uplifting GM **(Ex. #14)** and upgrading employee benefits **(Ex. #16)**. The mens rea requirement for accomplice liability is satisfied because, analogous to requiring that the accomplice intend to promote or facilitate the act underlying the offense, whether unintentional or intentional.

b).    Through a series of letters and phone calls from Mealer, GM was aware of the unfair, deceptive acts and practices they were in control of remedying with a simple public retraction, apology they  could have satisfied the second part of the complaint relating to what amounts to a wide range of normally indistinguishable antitrust violations. GM refused to act or respond and have assumed liability through complicity.

## VII.    ARGUMENT

### 1.    Debtors Must Be Held Liable for Mr. Kordella's Actions;

28.

A.      Mealer asserts (See **Ex. #1**, viz A.P.C. And this court's authority to provide #7 Supporting Documents after #5 Brief Description) Debtors are liable for all allegations stated in **Ex. #1**, under a theory of respondeat superior, [vicarious liability] and negligent entrustment, negligence in exercising control retained by employer, gross negligence, recklessness and/or for complicity and conspiracy under accomplice liability. These allegations *viz* the August 10, 2010 served Complaint by GM through Mr. Kordella, in response to Mealer stating on automotivenews.com that the huge burden of *"UAW demands have crushed GM and other US automakers,"* and by re-quoting -then pending-GM CEO, Mr. Whitacre's statements of June 9, 2009 and making personal views about the UAW burden causing the downfall of the Big Three. (**Ex.#1**,P.3¶, 8b,P.69-70, ¶¶70b,c, P.46¶83b, P.54¶99b, P.67 ¶¶¶¶ 112a,b,c,d, P.68¶113, P.74¶113g)

> "I don't know anything about cars," Whitacre, 67, said [per Bloomberg News] "A business is a business, and I think I can learn about cars. I'm not that old, and I think the business principles are the same."

B.      Mr. Kordella stated through his work email from kris.j.kordella@gm.com (which is protected by GM's "Liberty Alliance, Oblix" computer program and firewall which is accessed specifically by GM employees *from either home or work,* (**Ex. #20, #21, #23**)) to Mealer, Re; Mr. Kordella's and GM's reason for the injurious falsehood publications to Mealer's prospective parties, while GM control to provide beneficial support to GM and employees, the principle and accomplice is yet to be determined as complicity fits well in this instance;

> "...As you know, **if things do not work out for GM**, I will lose most of my pension, all medical benefits and on, and on. Basically a financial Armageddon for me and hundreds of my friends and family members that have **relied on GM** for the last 60 plus years. Not to mention the tens of thousands who've already lost their jobs. .."*"... Needless to say **you know that Detroit and it's suburbs,** and for that matter all of Michigan, Ohio, Indiana and other Mid West states **have been beaten up so badly** in the press, by Congress, by most Americans that feel they're not affected by this automotive crisis, that we've developed thin skin...."

29.

C.      Furthermore, the The GMC-20 ISP protective system provided by a company that GM helped create known as "LIBERTY ALLIANCE" and OBLIX NET POINT and GM's secondary connection as to employee Respondeat Superior and vicarious liability liability exists regardless of "going and coming" rule, because employer's private and secured ISP, Liberty Alliance network solution allowed, managed and mandated their employee's use of said product for Internet access both at home and at work. Liability also applies because GM incidentally benefited from Mr. Kordella's tortious activity.

The court, however, also explained that there is an exception to the general rule pertaining to when the employees actions through the equipment provided provides an incidental benefit relied upon by the employee and derived from the employer. Whether through the actual tort -or- through the work the employee may complete at home through the same secured ISP and computer which made available and a requirement for work related ISP access such as email.

GM and GMAC share an interactive, secure and highly scrutinized Internet Service Provider clearly making for the GM – GMAC  *clearly making the ISP the content producer* in this extreme case in which the service provider has the right and ability to control such activity and to remove said activity. GM - GMAC would not be profitable today if not for the wanton disregard for the safety, public welfare and destruction of the June 2009 critical prospective business growth funding for Mealer Companies LLC and Mealer. Furthermore, In *Murawski v. Pataki*, 514 F.Supp.2d 577, 591 (S.D.N.Y. 2007) (citations omitted), in an opinion which also carries the support of almost every circuit court. In making explicit the test for immunity from suit, the Ninth Circuit has stated that § 230(c)(1) protects only three particular types of parties from liability. GM and GMAC controlled the speaker, his content , his access and his equipment, thus they controlled the tortfeasors and criminal activity.

30.

(1) a provider or user of an interactive computer service,  (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker,
(3) of information provided by another information content provider.
*Barnes v. Yahoo!, Inc.* 570 F.3d 1096, 1100-1101 (9th Cir. 2009).

And as clearly defined herein and as this case clearly shows, <u>GMACM and GM are not subject to this 3 party exclusion</u> as they provided both the content and the service through their employees and agents while they mutually received financial benefit(s) directly attributable to the infringing activity, *viz* 17 U.S.C. § 512(c)(1)(B).   Liberty Alliance and Oblix supplied GM with the ability to gain incidental benefit, derived by simplifying GM-GMAC employees "strategic options" as they are connected "going and coming" for business purposes, which inherently makes GM, GMAC employees blogs and the GMC-20 ISP nonexempt.

"The objectives of the Liberty Alliance Project are in line with  General Motors' pursuit to leverage the most effective technology solutions  offered for the digital economy," states Ralph Szygenda, GM Group Vice President, Chief Information Officer. "Secure information management and  interoperability across the Internet landscape are vital issues to GM as we use digital technologies to expand our strategic options and reinvent relationships with our customers, employees, and business partners. It's a progressive, innovative alliance that makes sense for GM."
PR Contact:  Eric Apodaca at 313-667-4861 313-667-4861 or eric.apodaca@gm.com

**(See  Ex. #20, #21, #22, #23, #25 specifically on P.6 "Circle of Friends", P.13,¶6)**

Mr. Kordella's reasoning (alone) for his attack on Mealer, provides undeniable proof Mr. Kordella was acting within his "scope of his employment" to promote his master (GM) and had done so in an anti-competitive manner on GM's computer as directed by GM managerial discussions, GM publications, pre-bankruptcy orders and through supervisor directions. On June 9, 2009, Mr. Kordella was not "engineering" for GM who was wrapped up in Bankruptcy corporate reformation, but instead searching the Internet with GM-GMAC inner corporate private and secured ISP and computer related equipment. GM's superiors and managing members have made it publicly clear that GM was suffering and must be more competitive. The Mealer Automobile's (new US automaker) while GM was a failed

31.

company would have  caused even more damages than GM had already suffered to date on June 9,

2009. GM and Mr. Kordella were betting GM Volt technology which is an early variation of the Mealer

Automobile, and they may have felt threatened.  **(See Ex. #24, P.2) (Also See Exhibit #26)**

## VIII.  SHEER  SPECULATION S v. INFERENTIAL ALLEGATION:

Defendant's claiming Mealer's "sheer speculation" is simply another GMACM abusive attempt

to dissuade and deceive this court, when in fact, Mealer's Complaint made clear, direct and legally

directed "inferential allegations respecting all the material elements to sustain recovery under *some*

viable legal theory."

### A.    STANDING:

Mealer clearly has standing to pursue all claims  stated within the Amended Complaint

pursuant to his following all directions given and ordered to him by the court and pursuant to

bankruptcy laws as noted herein, with special consideration to tort laws and due process afforded him

by Article Five in the American  Bill of Rights and Fourteenth Amendment to the U.S. Constitution.

### B.    CAUSATION: Further, for the reasons stated herein; Mealer's injury by GM,

GM's causation of the 'alleged' incidents, and the violations of law in tort and otherwise causing injury

to Mealer as detailed within the Aug.10, 2010 Complaint, re: this instant case claims and violations

admitted by Mr. Kordella do in fact **grant Mealer standing to sue** for all counts as this continuous

sequence of unbroken tortious activity, has continued to produce injury upon Mealer, and without said

tortfeasors, such injury would not have occurred. (See *Allen v. Wright*, 468 U.S. 737, 752 (1984))

Proximate cause as "ideas of what  justice demands, or of what is administratively possible and

convenient." (See <u>Keeton</u>, et al., *supra),* and *Viz; 11 U.S.C. § 503(a)(1)(A),(3)(A)(3),* §101(10)(A)(B),

§348(d), §523(a)(6).

32.

**503(a)(1)(A),(3)(A)(3)** whereby (a) An entity may timely file a request for payment of an administrative expense, **or may tardily file such request if permitted by the court for cause.** (b) **After notice and a hearing**, there shall be allowed administrative expenses, other than claims allowed under Section 502(f) of this title including-- (1)(A) the **actual, necessary costs and expenses of preserving the estate** including-- (3) the actual necessary  expenses, other than compensation and reimbursement specified in paragraph (4) of this subsection, incurred by-- (A) a **creditor that files a petition** under section 303 of this title; (B) a **creditor that recovers after the court's approval**, for the benefit of the estate any property transferred or concealed by the debtor; (c) a **creditor in connection with the prosecution of a criminal offense relating to the case or to the business or property of the debtor.**

**101(10)(A)(B):** whereby "(10)" The term creditor means-- (A) e**ntity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor:** (B) entity that has a claim against the estate of a kind specified on section 348(d), 502(f), 502(g) or 502(h) or 502(I) of this section.

**348(d)** A claim against the estate or the debtor that arises after the order for relief but before conversion in a case...

**523(a)(6)** for **willful and malicious injury by the debtor to another entity or to the property of another entity**.

Both Arizona and Michigan have derived laws prohibiting  what amounts to defendant's GM claims of  anti-indemnity for their employees actions. These laws protect Mr. Kordella from having his pension voided or any other actions taken against him for what the debtor's GM claim is Mr. Kordella's sole negligence. NOTE: Mr. Kordella could not have sole negligence as stated herein and within Ex. #1, Mealer's amended Aug. 10, 2010 Complaint.

The outcome of this motion can very easily be defined by the totality-of-circumstances analysis of the negligent actions of GM , "whether a duty exists[] is a matter of law for the court to decide." *Gipson v Kasey*, 214 Ariz. 141, ¶9, 150 P.3d 228, 230 (2007). Such question is to be reviewed denovo. *De La Cruz v. State*, 192, Ariz. 122, ¶ 1, 961 P.2d. 1070, 1071 (App. 1998). GM's unlawful activity substantially harms the public, Mealer, Mealer Companies LLC and prospective parties which is detailed within the Aug. 10, 2010 Complaint on P.4¶10d, P.24¶28h1, P.38¶70i, P.41¶72a, P.44¶79, P.44¶80, specifically at P.64¶¶¶¶¶¶107e,f,g,h,j,k, and specifically at P.65¶109, and specifically at P.75¶114, P.79¶119c, P.81¶122, P.85¶¶128b,d.

33.

GM Corp. k/n/a/ "MLC" and GM Company must be held vicariously liable to Mealer *Viz* Arizona Revised Statutes ("A.R.S.") section 12-2506(D)(1) (2003) and U.S.C. Title 15 et seq., for injuries inflicted on common foes (competitive business [Mealer Companies LLC] and it's owner [Mealer]). This court should hold through the totality of the circumstances of this case, sufficient evidence exists that (a) Debtors and Mr. Kordella and other engineers/employees of GM and GMAC as named within the Complaint knowingly acted in concert to inflict injuries on Mealer and products to be produced by Mealer Companies LLC (b) they were certain or substantially certain would result in the consequences complained of, and (c) actively participated in commission of the tort. (See *Mein v. Cook*, 219 Ariz. 96, 193 P.3d 790 (App.2008). Other courts have reached similar conclusions. See, e.g., *Lamb v. Peck*, 441 A.2d 14, 15-16 (Conn.1981), *Robinson v. June*, 637 N.Y.S.2d 1018, 1020-21 (N.Y.Sup.Ct.1996).    Further, a "conscious agreement" need not be verbally expressed and may be implied from the conduct itself. *Restatement (Second) of Torts § 876 cmt. a (1979)*; see also *Mein*, 219 Ariz. at 100, ¶ 19, 193 P.3d at 794.0 There was no need for someone to yell words akin to, "let's get 'em," to create a conscious agreement under A.R.S. § 12-2506(D)(1), although according to Mealer's website visits **(Ex. 9)**, it appears that the intent to "get 'em" by various GM employees *[Ms. Christy Garwood, Mr. Joseph Burgel and Mr. Kordella while under control of and while at work applying methods to benefit the business of GM and collecting payroll]* during it's strategic bankruptcy, and under the scope of GM's bankruptcy protection and aggressive new and improved business model erroneously set-forth by President Obama **(See Exhibit #14),**  was active and Mealer's injuries are the type Congress intended to prevent because they are "inextricably intertwined with the injury [GM -by and through- multiple employees] sought to inflict." *Blue Shield v. McCready*, 457 U.S. 465, 484, 102 S.Ct. 2540, 2551, 73 L.Ed.2d 149 (1982). Mealer has shown that GM actively manipulated the growth funding of his business through unlawful activity and prevails on his theory.

34.

Mealer maintains and has standing to pursue both defamation, trade libel, slander of title and antitrust claims because Mealer Companies LLC is Mealer's alter ego and prospective investors and customers relied on Mealer's good standing, mental capacity, capable engineering staff, personal honesty, strong character and selfless ways to either continue or begin business and buy products from his company. See _Sherman_, 601 F.2d at 439-40.

Standing for Mealer to sue [for all claims], (See Ex. 1) including those under antitrust law is proper under section four of the Clayton Act, 15 U.S.C. § 15 (1988), to maintain a private damage action against GM. Under section four, persons injured in their "business or property by reason of anything forbidden in the antitrust laws may sue" in federal district court and recover treble damages. 15 U.S.C. § 15(a) (1988); _Midwest Communications, Inc. v. Minnesota Twins, Inc._, 779 F.2d 444, 449-50 (8th Cir.1985), cert. denied, 476 U.S. 1163, 106 S.Ct. 2289, 90 L.Ed.2d 730 (1986). (1) [t]he causal connection between the alleged antitrust violation and the harm to the plaintiff; (2) [i]mproper motive; (3) [w]hether the injury was of a type that Congress sought to redress with the antitrust laws; (4) [t]he directness between the injury and the market restraint; (5) [t]he speculative nature of the damages; [and] (6) [t]he risk of duplicate recoveries or complex damage apportionment. _Midwest Communications_, 779 F.2d at 450; _Peck v. General Motors Corp._, 894 F.2d 844, 846 (6th Cir.1990). Prescribed by the Supreme Court.

The law of the case doctrine provides that a court's decision on legal issues should govern the same issues in later stages of the same case. _Arizona v. California_, 460 U.S. 605, 618, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). The doctrine, however, applies only to issues decided by final judgments. _Smith v. Mark Twain Nat'l Bank_, 805 F.2d 278, 286 n. 16 (8th Cir.1986); In re _Unioil, Inc._, 962 F.2d 988, 993 (10th Cir.1992).

35.

The district court's rulings on GM's motion to dismiss and motion for summary judgment were not and could not become final judgments. See *Bullock v. Baptist Memorial Hosp.*, 817 F.2d 58, 59 (8th Cir.1987) (order dismissing complaint against some but not all defendants is not a final order); *Wright v. South Ark. Regional Health Center, Inc.*, 800 F.2d 199, 202 (8th Cir.1986) (denial of summary judgment motion is usually not a final order); Fed.R.Civ.P. 54(b) (judgment on multiple claims or involving multiple parties). Further, a district court may properly depart from an earlier holding "if convinced that it is clearly erroneous and would work a manifest injustice." *Arizona v. California*, 460 U.S. at 618 n. 8, 103 S. Ct. at 1391 n. 8.

When a district court is convinced that it incorrectly decided a legal question in an interlocutory ruling, the district court may correct the decision to avoid later reversal. In re Unioil, 962 F.2d at 993. This court should conclude that until the district court entered judgment on all claims after trial, the district court could reconsider its earlier rulings deciding the standing issue in Mealer's favor. In any event, the law of the case doctrine does not prevent this court from reviewing the district court's standing decision on appeal. In re *949 Erie St., Racine, Wis.*, 824 F.2d 538, 541-42 (7th Cir.1987).

B.    GM as an employer may be vicariously liable for torts committed by an employee that cause injury to another's property or person even if the employer did not have any part in the commission of the tortious act. GM had the right to control or controls Mr. Kordella's actions, then the employee is an "employee" and GM is potentially subject to vicarious liability for the their employee's tortious acts.

C.    Respondeat superior is equivalent to vicarious liability in this instant case and a culpability matter, backed with ample case law and US Code and Ariz. Rev Stat., reasoning. *And* as detailed pursuant the references in Mealer's **"APC"** at #**7. Supporting Documents** stating, "*I will send*

36.

*full documentation, plus letter of admission from GMC upon responc[s]e."* Without a doubt, this response by properly served complaint **(Ex. #1)** are <u>Supporting Documents</u> explaining the allegation and charges which detail the GM Corp./ MLC and what Mealer believes to include GM LLC vicarious liability derives from the reasoning that (1) Mr. Kordella was acting on GM's behalf, (2) GM is usually exercising control and supervision over Mr. Kordella's conduct, (3) GM is in the better position to accept financial responsibility or to insure against it, and (4) GM receives the benefit of Mr. Kordella's work and should therefore also bear the burden of the Mr. Kordella's negligent and intentional conduct. Thus, some courts have characterized it as *respondeat superior,* or "let the master answer."

        D.      Mr. Kordella's unlawful actions did actually, physically, morally and financially assist the GM Corporation's transition to GM LLC and GM Company to where it is today by keeping the public attention on the new GM and not on an emerging Mealer Automobile and new US Automaker (or other final branding). Mr. Kordella was in fact, acting to further the employer's business and has stated this in his private admission/pseudo-apology to Mealer after the Intentional Interference WPA was done. Specifically, to support new "breakthrough" GM technology. **(See Ex. #26)**

        E.      Mealer not only made clear, ie. "red flag" Mr. Kordella's publication of injurious falsehoods under vicarious liability, respondeat superior need to intervene, after GM employee acting as GMAC agent was made clear to his employers, but the "red flag" went ignored to further injure Mealer. The audacity of GM and GMAC to go beyond the obvious "infringing activity'" which was and is "apparent to a reasonable person operating under the same or similar circumstances", especially considering Mealer requested they stop, prevent and have removed the infringing material. GM and GMAC's action ave caused and compounded the damages made by Mr. Kordella while he served the interest of two masters while refusing to abandon make right the irreparable harm and injury to Mealer.

37.

Second, the service provider, who was GM and GMAC must not "receive a financial benefit directly attributable to the infringing activity, in a case in which the service provider has the right and ability to control such activity." The relationship between GM, GMAC (GMC-20 ISP stored at GMAC HQ) is clear and uncontradicted proof that when combined with **(Ex. #20, #21, #22, #23, #25, #26)** provide  vicarious liability to establish a master-servant relationship.

F.    Indeed, GMC, k/n/a MLC, connected with GMAC and their shared corporate ISP equipment and inter-related transactions..." with '"....GMAC, usually generating efficiencies and enhanced results for each of them, including business opportunities and referrals, data and resource sharing, economies of scale, leveraging staff expertise, and administrative expenses, all of which combined, result in a highly valuable and significant organizational, operational, business and financial synergies;" "entered into that certain [amended prior to May 22, 2009] Master Services Agreement, dated as of November 30, 2006..." "...' provide various services and financial accommodations to one another as set forth therein..." **(See Exhibit #16)**. And, who has remedied or replaced defective jointly shared and owned IT equipment prior to the 363 Order and the unlawful activity against Mealer through the cross-collateralized and co-owned ISP equipment. This entire lawsuit before the court, cannot possibly have been mere coincidence as no monopolist is unconscious of what he is doing, and improper exclusion is always intended.

## IX.    <u>CONCLUSION</u>

For the foregoing reasons, this injured claimant Mealer prays this court continue these proper proceedings and allow this extraordinary issue to remain active within this MLC f/n/a GMC Bankruptcy. Complainant realizes this court has seen many bizarre and unworthy claims against GM during this Chapter 11 restructure and although this case seems bizarre and outlandish it is exactly the truth and not unlike what GMC has done in the past to other competitors. Mealer prays this court sees the validity of this case and allows it to be heard.      (38.)

15 March, 2011            *.JLM*                                                    *E-Signed .*

**X.**                    **MOTION TO DENY**
ENTRY OF ORDER DISALLOWING AND EXPUNGING ADMINISTRATIVE CLAIM
NO. 70792 FILED BY JOHN L. MEALER

For the reasons stated in the foregoing documents accompanied by all documents on file and to

be brought together and already served and unanswered by Defendants , Complainant, Creditor Mealer

hereby respectfully requests this Honorable Court to DENY Entry of Order Disallowing and Expunging

Administrative Claim No. 70792, Filed by John L. Mealer, and to allow this claim to continue

wherever this court deems proper according to applicable law.

**XI.**    **AFFIDAVIT**

I, John Lewis Mealer under penalties of perjury to the full extent of the law, affirm the

preceding documentation, affidavits, evidence and representations to be true and correct to the best of

my knowledge and perception of this ongoing incident, with my signature below.

15 March, 2011            *.JLM*                                                    *E-Signed .*

39.

### CERTIFICATE OF SERVICE

I, John Lewis Mealer do hereby declare that: On 16 March 2011,I  deposited the original and copies of the following documents and otherwise served via the US Postal Service, First Class Mail to be delivered to the following persons and addresses:

CREDITOR'S RESPONSE, OBJECTION and MOTION TO DENY THE RELIEF REQUESTED *IN DEBTOR'S OBJECTION, DISAGREEMENT and  MOTION TO DENY ENTRY OF ORDER DISALLOWING and EXPUNGING* ADMINISTRATIVE CLAIM NO. 70792 FILED BY JOHN L MEALER  *and* TABLE OF CONTENTS, TABLE OF AUTHORITIES, CREDITOR JOHN LEWIS MEALER'S RESPONSE, OBJECTION AND MOTION TO DENY RELIEF REQUESTED IN DEBTOR'S OBJECTION

*and* CREDITOR'S RESPONSE, OBJECTION *and* MOTION TO DENY THE RELIEF REQUESTED *IN DEBTOR'S OBJECTION, DISAGREEMENT and  MOTION TO DENY ENTRY OF ORDER DISALLOWING* and *EXPUNGING* ADMINISTRATIVE CLAIM NO. 70792 FILED BY JOHN L MEALER, AFFIDAVIT, CERTIFICATE OF SERVICE, SERVICE LIST.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration on 15 March, 2011 at Show Low, Arizona.

.JLM                                                        E-Signed .

40.

## SERVICE LIST

ORIGINAL:  Hard Copy and CD-Rom;

**New York Southern District Bankruptcy Court**

One Bowling Green

New York, New York, 10004-1408

COPIES: CD-Rom;

(i)      **Weil, Gotshal & Manges LLP**, attorneys for Debtors, 767 Fifth Avenue, New York, N.Y. 10153 (Attn: Harvey R. Miller., Stephen Karotkin, Esp., Joseph H. Smolinksy, Esq.

(ii)     **Debtors, c/o Motors Liquidation Company**, 401 South Old Woodward Avenue, Suite 370, Birmingham, MI. 48009 (Attn: Thomas Morrow).

(iii)    **General Motors LLC**, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.)

(iv)     **Cadwalader, Wickersham & Taft LLP**, attorneys for the United States Department of the Treasury, One World Financial Center, New York, NY., 10281 (Attn: John J. Rapisardi, Esq.)

(v)      **United States Department of the Treasury**, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esp.)

(vi)     **Vedder Price, P.C.**, attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, N.Y. 10019 (Attn: Michael J. Edelman, Esq. And Michael L. Schein, Esq.)

(vii)    **Kramer Levin Naftalis & Franklin LLP,** attorneys for the statutory committee of insecured creditors, 1177 Avenue of the Americas, New York, N.Y. 10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksound, Esq., and Jennifer Sharret, Esq.)

(viii)   **Office of the United States Trustee for the Southern District of New York**, 33 Whitehall Street, 21st Floor, New York, N.Y. 10004 (Attn: Tracy Hope Davis, Esq.)

(ix)     **U.S. Attorney's Office**, S.D.N.Y., Chambers Street, Third Floor, New York, N.Y. 10007 (Attn: David S. Jones, Esq. And Natalie Kuehler, Esq.)

41.