**HEARING DATE AND TIME: TO BE DETERMINED**

JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212
Heather Lennox (admitted *pro hac vice*)
Robert S. Walker (admitted *pro hac vice*)

JONES DAY
51 Louisiana Avenue NW
Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700
Andrew M. Kramer (admitted *pro hac vice*)

JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306
Lisa G. Laukitis

Attorneys for General Motors LLC


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :   Case No. 09-50026 (REG)
        f/k/a General Motors Corp., et al.,  :
                                          :   (Jointly Administered)
                 Debtors.                 :
                                          :
-------------------------------------------------------------x
```

## SUR-REPLY OF GENERAL MOTORS LLC IN FURTHER SUPPORT OF THE COURT'S EXERCISE OF JURISDICTION OVER MOTION OF GENERAL MOTORS LLC TO ENFORCE SALE ORDER (DOCKET NO. 7527)

## <u>TABLE OF CONTENTS</u>

**Page**

A.    New GM's Arguments in Support of the Preclusion Dispute Have "Colorable Merit" ................................................................................................. 2

B.    The Court Has "Arising In" Jurisdiction Over the MOU Dispute ........................ 6

C.    The Court Has "Related To" Jurisdiction Over the MOU Dispute ...................... 8

  1.    The UAW Reply Mischaracterizes the "Any Conceivable Effect" Test .................................................................................................................. 8

  2.    New GM Is "Intertwined" With the Debtors ............................................. 10

D.    The Court Should Not Abstain From Exercising Its Jurisdiction ...................... 11

  1.    The Jurisdiction Provisions in the Sale Order and the 2009 UAW Retiree Settlement Agreement Weigh Heavily Against Abstention ........ 11

  2.    The Court Has Sufficient "Familiarity and Expertise" to Resolve the MOU Dispute ..................................................................................... 12

  3.    The Issues Raised in the Motion Are Not "Remote" From the Debtors' Bankruptcy Cases ................................................................... 13

Conclusion ......................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page**

CASES

176-60 Union Tpk., Inc. v. Howard Beach Fitness Ctr., Inc.,
  209 B.R. 307 (S.D.N.Y. 1997)..................................................................9

Abraham Zion Corp. v. Lebow,
  761 F.2d 93 (2d Cir. 1985)......................................................................5

Ameritrust Co., N.A. v. Opti-Gage, Inc. (In re Opti-Gage, Inc.),
  128 B.R. 189 (Bankr. S.D. Ohio 1991) ..................................................10

Arris Int'l v. Hybrid Patents, Inc. (In re Com21, Inc.),
  357 B.R. 802 (Bankr. N.D. Cal. 2006) ...................................................12

Back v. LTV Corp. (In re Chateaugay Corp.),
  213 B.R. 633 (S.D.N.Y. 1997)..................................................................9

Clark v. Chrysler Group, LLC,
  No. 10-3030, 2010 WL 4486927 (E.D. Pa. Nov. 5, 2010) ...................3, 7

Collins v. IBM Se. Emps. Fed. Credit Union (In re Alliance Leasing Corp.),
  No. 07-0065A, 2007 Bankr. LEXIS 4637 (Bankr. M.D. Tenn. Jul. 3, 2007)........................12

Cummings v. AT&T Corp. (In re Universal Serv. Fund Tel. Billing Practice Litig.),
  619 F.3d 1188 (10th Cir. 2010) ...............................................................4

DVI Fin. Servs. v. Nat'l Med. Imaging, LLC (In re DVI, Inc.),
  305 B.R. 414 (Bankr. D. Del. 2004) .........................................................9

EMC Mortg. Corp. v. Davis,
  167 S.W.3d 406 (Tex. App. 2005)............................................................4

EOG Res., Inc. v. Badlands Power Fuels, LLC,
  677 F. Supp. 2d 1143 (D.N.D. 2009).......................................................4

Feldman v. Trs. of Beck Indus., Inc. (In re Beck Indus., Inc.),
  479 F.2d 410 (2d Cir. 1973), cert. denied, 414 U.S. 858 (1973) .............9

Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.),
  190 B.R. 157 (S.D.N.Y. 1995)..................................................................9

In re Allegheny Health, Educ. & Research Found.,
  383 F.3d 169 (3d Cir. 2004)......................................................................7

In re Dow Corning Corp.,
    86 F.3d 482 (6th Cir. 1996) ...............................................................................8

In re Emanuel,
    422 B.R. 453 (Bankr. S.D.N.Y. 2010) .............................................................2

In re Lawrence,
    233 B.R. 248 (N.D.N.Y. 1999) .........................................................................8

In re Lehman Bros. Holdings Inc.,
    Case No. 08-13555 (Bankr. S.D.N.Y. Sep. 15, 2009) ......................................9

In re Lyondell Chem. Co.,
    402 B.R. 596 (Bankr. S.D.N.Y. 2009) ............................................................11

In re Motors Liquidation Co.,
    No. 09-50026 (Bankr. S.D.N.Y.), Transcript of Hr'g, Oct. 4, 2010 ...............7-8

In re Portrait Corp. of Am., Inc.,
    406 B.R. 637 (Bankr. S.D.N.Y. 2009) ............................................................11

Jim Bouton Corp. v. William Wrigley Jr. Co.,
    902 F.2d 1074 (2d Cir. 1990), cert. denied, 498 U.S. 854 (1990) ....................5

JMB Capital Partners, L.P. v. CRT Capital Grp. LLC (In re NTL, Inc.),
    295 B.R. 706 (Bankr. S.D.N.Y. 2003) ............................................................14

Longacre Master Fund, Ltd. v. Telecheck Servs., Inc. (In re Casual Male),
    317 B.R. 472 (Bankr. S.D.N.Y. 2004) ............................................................14

Lothian Cassidy LLC v. Ransom,
    428 B.R. 555 (E.D.N.Y. 2010) ..........................................................................6

Luan Inv. Se. v. Franklin 145 Corp. (In re Petrie Retail, Inc.),
    304 F.3d 223 (2d Cir. 2002) ..............................................................................6

Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus., Inc.),
    No. 10-3052, 2011 WL 766661 (Bankr. S.D.N.Y. Feb. 25, 2011) ....................8

Nemsa Establishment, S.A. v. Viral Testing Sys. Corp.,
    No. 95-Civ-0277, 1995 WL 489711 (S.D.N.Y. Aug. 15, 1995) ......................10

NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't Stores, Inc.),
    317 B.R. 260 (Bankr. S.D.N.Y. 2004) ...........................................................6-7

Schlaifer Nance & Co. v. Estate of Warhol,
    194 F.3d 323 (2d Cir. 1999) ..............................................................................2

Tower Auto. Mex. v. Grupo Proeza (In re Tower Auto., Inc.),
    356 B.R. 598 (Bankr. S.D.N.Y. 2006) ........................................................................9

Travelers Indem. Co. v. Bailey,
    129 S.Ct. 2195 (2009) ...............................................................................................14

Universal Well Servs., Inc. v. Avoca Natural Gas Storage,
    222 B.R. 26 (W.D.N.Y. 1998) ....................................................................................8

U.S. v. Paolo (In re Paolo),
    619 F.3d 100 (1st Cir. 2010) .......................................................................................7

Winstar Holdings, LLC v. Blackstone Grp. L.P.,
    No. 07 Civ. 4634, 2007 WL 4323003 (S.D.N.Y. Dec. 10, 2007) ...............................8

OTHER AUTHORITIES

Black's Law Dictionary (9th ed. 2009) .....................................................................................4

Collier on Bankruptcy (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2011) ...................7

Fed. R. Civ. P. 60(c)(1) .............................................................................................................9

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

General Motors LLC f/k/a General Motors Company ("**New GM**") hereby submits this

sur-reply in response to the Reply Memorandum of Law Concerning Jurisdiction Over Motion of

General Motors LLC to Enforce the Sale Order (Docket No. 9492) (the "**UAW Reply**") and in

further support of the Court's exercise of its jurisdiction to hear and grant the Motion of General

Motors LLC (f/k/a General Motors Company) to Enforce Sale Order (Docket No. 7527)

(the "**Motion**").[1]

## Argument

1.      In its opening brief, New GM demonstrated that the plain language of the

2009 UAW Retiree Settlement Agreement and the Sale Order unambiguously stated the intention

of both New GM and the UAW that this Court retain and exercise exclusive jurisdiction over all

disputes involving the "enforcement, implementation, application or interpretation" of the

2009 UAW Retiree Settlement Agreement.  The UAW Reply ignored the explicit jurisdictional

provisions in the governing documents and chose instead to oppose this Court's jurisdiction by

extensively arguing the merits of the underlying dispute.  The appropriate standard, however, is

exceedingly restrained, requiring a showing that New GM's position on the merits is facially

"insubstantial" and totally lacking in "colorable merit."  Such an argument cannot survive even a

casual review of the 2009 UAW Retiree Settlement Agreement, which compels the opposite

conclusion.

---

[1]      New GM submits this sur-reply in accordance with the Stipulation and Agreed Order Regarding
Scheduling Issues Related to Motion of General Motors LLC (f/k/a General Motors Company) to Enforce
Sale Order, entered on November 9, 2010 (Docket No. 7704), and the Second Stipulation and Agreed
Order Regarding Scheduling Issues Related to Motion of General Motors LLC (f/k/a General Motors
Company) to Enforce Sale Order, entered on January 18, 2011 (Docket No. 8619).  Capitalized terms not
otherwise defined herein have the meanings given to them in the Brief of General Motors LLC in Support
of the Court's Exercise of Jurisdiction Over the Motion of General Motors LLC (f/k/a General Motors
Company) to Enforce Sale Order (Docket No. 9107) (the "**New GM Brief**").

2.      The UAW Reply neither overcomes this Court's explicit reservation of exclusive jurisdiction over the Preclusion Dispute in the Sale Order and the 2009 UAW Retiree Settlement Agreement nor undermines the fact that the Court also has both "arising in" and "related to" jurisdiction over the MOU Dispute.  Finally, the UAW Reply continues to sidestep the governing discretionary abstention standard repeatedly articulated by the Court and chooses instead to exaggerate and mischaracterize other "factors" allegedly weighing in favor of abstention.  Consequently, the Court should not only conclude that it has jurisdiction, but it should exercise it as well.

**A.      New GM's Arguments in Support of the
        Preclusion Dispute Have "Colorable Merit"**

3.      To overcome the Court's exclusive jurisdiction over the Preclusion Dispute, the UAW recognizes that it is obliged to show that New GM's arguments are "wholly insubstantial" and lack "colorable merit" — i.e., are "utterly devoid of a legal or factual basis." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 337 (2d Cir. 1999); see also In re Emanuel, 422 B.R. 453, 465 (Bankr. S.D.N.Y. 2010).

4.      The UAW Reply devotes more than half its length to arguing the merits — i.e., that New GM's position that its obligations are fixed and capped as expressly set forth in the 2009 UAW Retiree Settlement Agreement is wholly insubstantial and lacking in colorable merit.  (See UAW Reply ¶¶ 1-12; Motion ¶¶ 58-59; New GM Brief ¶¶ 3-4, 18-20).  Regardless of whether the UAW's argument ultimately prevails, it does not overcome the express language of the 2009 UAW Retiree Settlement Agreement, which plainly states that it fixes and caps New

GM's payment obligations and supersedes, modifies or terminates any prior inconsistent agreement. New GM's merits position is, at the very least, "colorable."[2]

5.        Indeed, the UAW has deemed it necessary to attempt to distinguish no fewer than seven discrete sections of the 2009 UAW Retiree Settlement Agreement.[3] That attempt alone reveals the need for this Court to interpret and apply each of those provisions and, thus, implicitly concedes the Court's jurisdiction over a "colorable" argument. See Clark v. Chrysler Grp., LLC, No. 10-3030, 2010 WL 4486927, at *6-8 (E.D. Pa. Nov. 5, 2010) (accepting defendant's argument that "'it is precisely because of this disagreement,' which requires an interpretation of the [Chrysler] Sale Order" that a dispute between non-debtors under federal law was sufficiently related to the Chrysler chapter 11 cases to warrant transfer of the action to the Chrysler bankruptcy court).

6.        In fact, the UAW Reply appears to concede the colorable basis of New GM's arguments. (See UAW Reply ¶ 21 (stating that "as the UAW has established, if this Court determines that it has jurisdiction over the Preclusion Dispute, that jurisdiction rests on the slenderest of reeds"); and ¶ 23 (conceding that the Court may, in fact, have an "attenuated" basis for jurisdiction over the Preclusion Dispute)). If jurisdiction over the Preclusion Dispute is possible (as the UAW concedes that it is), then a colorable basis for such jurisdiction must exist.

---

[2]        Although the standard for determining whether this Court has jurisdiction requires only that New GM's position on the merits be merely "colorable," New GM's contention that it meets this standard should not be interpreted as suggesting that it concedes any weakness in its argument. On the contrary, New GM believes that its position on the merits is compelling and will be manifestly demonstrated during the merits phase of this proceeding.

[3]        Relevant excerpts from these sections of the 2009 UAW Retiree Settlement Agreement — the first paragraph and Sections 2, 5.B, 5.D, 8, 14 and 32.C — are attached hereto as Annex A. The UAW asserts that New GM's omission of any discussion of Section 32.C of the 2009 UAW Retiree Settlement Agreement in the New GM Brief is "telling." (UAW Reply ¶ 12). Section 32.C of the 2009 UAW Retiree Settlement Agreement, however, is explicitly and thoroughly discussed in the Motion (Motion ¶¶ 44 and 59) and will be further addressed during the merits phase of this matter.

7.      The UAW's assertion that language of the 2009 UAW Retiree Settlement
Agreement providing that it "has application to … the [DC] VEBA" is merely prefatory and
without operative force is wrong.  (UAW Reply ¶ 6).  That statement, which appears in the first
paragraph of the agreement, is itself an operative provision.  See EOG Res., Inc. v. Badlands
Power Fuels, LLC, 677 F. Supp. 2d 1143, 1153 (D.N.D. 2009) (holding that the provision of a
contract stating that "[t]his [a]greement shall control and govern all work performed by
[c]ontractor for [c]ompany" was "operative language governing the scope of the agreement");
see also 2009 UAW Retiree Settlement Agreement §§ 5.A, 12.C, 25.D (expressly referring to the
"Existing External VEBA," i.e., the DC VEBA).

8.      Contrary to the UAW's implication, contractual language is not relegated to
"recital" status merely because it appears at the beginning of a document.  (UAW Reply ¶ 6).
Contractual language can be operative regardless of its location in a document.  See Cummings
v. AT&T Corp. (In re Universal Serv. Fund Tel. Billing Practice Litig.), 619 F.3d 1188, 1204-05
(10th Cir. 2010) (holding that language appearing in a section of the contract labeled
"descriptions" was operative and would be enforced as such regardless of its location); EMC
Mortg. Corp. v. Davis, 167 S.W.3d 406, 410, 415 n.5 (Tex. App. 2005) (holding that a bold and
centered provision appearing at the top of a mortgage note "did not specify or explain the reasons
for the transaction" and, therefore, was not a recital and was enforceable).  This is especially so
where, as here, the opening paragraphs of the 2009 UAW Retiree Settlement Agreement are not
identified as "recitals"[4] or as a preamble, other provisions contain a mix of factual background
and operative clauses,[5] and the parties agreed that the agreement would "be enforced and

---

[4]      Black's Law Dictionary 1385 (9th ed. 2009) (defining "recital" as "[a] preliminary statement in a contract or
deed explaining the background of the transaction or showing the existence of particular facts.").

[5]      See, e.g., 2009 UAW Retiree Settlement Agreement §§ 6.A, 21, 29(A)(i) and 29(A)(ii).

construed as if no captions had been used."[6] Thus, the parties' expressed intent to make the

2009 UAW Retiree Settlement Agreement applicable to the DC VEBA is an operative provision,

and the DC VEBA is subject to the finality of New GM's "fixed and capped" obligations.

9.     Finally, even if language expressly applying the 2009 UAW Retiree Settlement

Agreement to the DC VEBA is merely "prefatory" (which it is not), such prefatory language

nevertheless "furnish[es] a background in relation to which the meaning and intent of the

operative provisions can be determined." Jim Bouton Corp. v. William Wrigley Jr. Co.,

902 F.2d 1074, 1077 (2d Cir. 1990), cert. denied, 498 U.S. 854 (1990); see generally Abraham

Zion Corp. v. Lebow, 761 F.2d 93, 103 (2d Cir. 1985) (providing that "a statement in a 'whereas'

clause may be useful in interpreting an ambiguous operative clause in a contract").  In this case,

the intent of the 2009 UAW Retiree Settlement Agreement is to establish finality with respect to

New GM's payment obligations to the New VEBA and the DC VEBA.

10.     In summary, it appears that the UAW has again skipped over the jurisdictional

question in favor of advancing its merits arguments earlier and often.  As a result, the UAW

Reply fails to address the authority cited in the New GM Brief in support of the Court's exclusive

*jurisdiction* over the Preclusion Dispute.  (New GM Brief ¶¶ 16-17).  The Sale Order and the

2009 UAW Retiree Settlement Agreement expressly provide that this Court retained exclusive

jurisdiction "to resolve disputes arising out of or relating to the enforcement, implementation,

application or interpretation of" the 2009 UAW Retiree Settlement Agreement.  (Sale Order ¶ 71;

2009 UAW Retiree Settlement Agreement § 26).  The 2009 UAW Retiree Settlement Agreement

(which supersedes all prior agreements and is expressly applicable to the DC VEBA) fixes and

caps New GM's obligations related to retiree medical benefits and the New VEBA.  (2009 UAW

---

[6]     2009 UAW Retiree Settlement Agreement § 32.D.

Retiree Settlement Agreement § 2).  These facts establish that the Preclusion Dispute falls

squarely within the Court's exclusive jurisdiction.  The UAW Reply does nothing to undermine

this conclusion.

**B.**      **The Court Has "Arising In" Jurisdiction Over the MOU Dispute**

11.      The UAW Reply asserts that the separate and "independent" nature of the

Preclusion Dispute and the MOU Dispute thwarts the Court's "arising in" jurisdiction over the

MOU Dispute.  (See UAW Reply ¶¶ 14-15).  This ignores the key link between the two disputes.

The Preclusion Dispute is a threshold, gateway determination for the MOU Dispute; *no* court can

reach the MOU Dispute without first resolving the Preclusion Dispute.[7]  Thus, the Court has

"arising in" jurisdiction over the MOU Dispute.  See Lothian Cassidy LLC v. Ransom,

428 B.R. 555, 560 (E.D.N.Y. 2010) (holding that a dispute "arises in" a bankruptcy case if it

requires a bankruptcy court to interpret its own order before reaching underlying claims).[8]

12.      The UAW's brief parenthetical summary of Lothian Cassidy misstates that court's

reasoning.  The Lothian Cassidy court held that "the causes of action advanced by the plaintiffs

more than relate to the [debtor's] bankruptcy proceeding – they 'arise in' it" because, among other

reasons, "[l]itigation of some, if not all, of plaintiffs' claims w[ould] require gateway

interpretation of the bankruptcy court's prior orders…."  Id. at 560.  That the Lothian Cassidy

court also held that the independent (and lesser) threshold for "related to" jurisdiction was

satisfied (id. at 559) in no way undercuts the discrete holding that the bankruptcy court had

"arising in" jurisdiction.  See also NWL Holdings, Inc. v. Eden Ctr., Inc. (In re Ames Dep't

Stores, Inc.), 317 B.R. 260, 269 (Bankr. S.D.N.Y. 2004) (noting that "[d]iscussions of 'related to'

---

[7]      Of course, if the Preclusion Dispute is resolved in favor of New GM, this Court need not address the MOU Dispute at all.

[8]      See also Luan Inv. Se. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223, 229-30 (2d Cir. 2002) (holding that a bankruptcy court possessed jurisdiction over core proceeding between non-debtors that "involved interpretation of the bankruptcy court's orders.").

jurisdiction, a wholly separate jurisdictional basis, are irrelevant to an 'arising in' jurisdiction inquiry").

13.     A case recently decided on similar facts confirms that claims requiring threshold interpretation of prior bankruptcy court orders are core proceedings.  In <u>Clark v. Chrysler Group, LLC</u>, the district court granted a motion by Chrysler Group LLC ("**New Chrysler**"), the purchaser of substantially all of the assets of debtor Chrysler LLC ("**Old Chrysler**"), to transfer an action involving certain federal claims against New Chrysler to the bankruptcy court overseeing Old Chrysler's bankruptcy.  <u>Chrysler Group</u>, 2010 WL 4486927, at *9.  The court held that, because the federal law dispute between the non-debtors "require[d] the interpretation of the [Chrysler] Sale Order," the case was a core proceeding.[9]  Because the non-debtors' dispute was a "core proceeding," the bankruptcy court likewise would have had "arising in" jurisdiction.[10]

14.     The UAW's unsupported assertion that the Court's interpretation and enforcement of the Sale Order is a "non-core" matter (UAW Reply ¶ 23 n.18) is simply wrong.  Indeed, the Court has already held that a dispute between two non-debtors involving the enforcement of the Sale Order was a "core matter."  <u>In re Motors Liquidation Co.</u>, No. 09-50026 (Bankr. S.D.N.Y.), Transcript of Hr'g, Oct. 4, 2010, at 46:2-18 (holding that the Sale was a core proceeding and that "the enforcement of orders resulting from core proceedings are themselves considered core

---

[9]     <u>Id.</u> at *8 ("Here, the case is a core proceeding because its resolution turns on the interpretation of the Bankruptcy Court's Sale Order … and is based on rights established by the Sale Order.") (citing <u>In re Allegheny Health, Educ. & Research Found.</u>, 383 F.3d 169, 176 (3d Cir. 2004) ("[W]e hold that the bankruptcy court correctly determined that the suit was a core proceeding because it required the court to interpret and give effect to its previous sale orders.")).

[10]     <u>See also</u> <u>U.S. v. Paolo (In re Paolo)</u>, 619 F.3d 100, 102 n.2 (1st Cir. 2010) (observing that matters *arising in* bankruptcy are "'core' proceedings, whereas those merely *related to* the bankruptcy are 'non-core'") (emphasis added) (citing 1 <u>Collier on Bankruptcy</u> ¶ 3.01 (Alan N. Resnick & Henry J. Sommer, eds., 16th ed. 2011)).  Because the parties did not raise the issue of the court's "arising in" jurisdiction (briefing only the broader standard of "related to" jurisdiction), the <u>Chrysler Group</u> court did not decide the issue of "arising in" jurisdiction but did find that the Chrysler bankruptcy court had "related to" jurisdiction. <u>See</u> <u>Chrysler Group</u>, 2010 WL 4486927, at *8.

proceedings"); accord Morgan Olson, LLC v. Frederico (In re Grumman Olson Indus., Inc.),

No. 10-3052, 2011 WL 766661, at *4 (Bankr. S.D.N.Y. Feb. 25, 2011) (holding that a dispute

that implicates rights created in, and requires interpretation and enforcement of, a sale order is a

core proceeding).

**C.     The Court Has "Related To" Jurisdiction Over the MOU Dispute**

        **1.     The UAW Reply Mischaracterizes the "Any Conceivable Effect" Test**

        15.     The UAW attempts to narrow the "any conceivable effect" test for "related to"

jurisdiction by arguing that an effect on the estate cannot be "speculative." (UAW Reply ¶ 16).

The UAW misstates the relevant standard and mischaracterizes New GM's position. Under the

"any conceivable effect" test, certainty or likelihood of an effect on a debtor's estate is not

required "so long as it is *possible* that the proceeding *may* affect the debtor's rights or the

administration of the estate." Winstar Holdings, LLC v. Blackstone Grp. L.P., No. 07 Civ. 4634,

2007 WL 4323003, at *1 n.1 (S.D.N.Y. Dec. 10, 2007) (emphasis added) (internal quotation

marks omitted) (citing In re Dow Corning Corp., 86 F.3d 482, 491 (6th Cir. 1996));

accord In re Lawrence, 233 B.R. 248, 252 (N.D.N.Y. 1999) (rejecting argument that "related to"

jurisdiction did not exist because connection to bankruptcy case was "speculative and indirect"

and noting that the "any conceivable effect" test is "extremely broad") (citing Universal Well

Servs., Inc. v. Avoca Natural Gas Storage, 222 B.R. 26, 29 (W.D.N.Y. 1998)).

        16.     The New GM Brief (at ¶ 25) identifies conceivable effects on the administration

of the Debtors' estates that support "related to" jurisdiction over the MOU Dispute. In particular,

the imposition upon New GM of a previously undisclosed $450 million obligation in connection

with the Sale conceivably could:

        (a)    prompt some of the 850 parties that initially objected to the Sale,
                regardless of the validity of their legal claims, to file additional pleadings

in the Debtors' highly public bankruptcy cases that will impair the efficient administration of the Debtors' estates;[11] and

    (b)    have a negative impact on the value of New GM's stock (which stock constitutes a substantial portion of the Debtors' assets and is to be distributed directly to the Debtors' creditors).[12]

17.    Contrary to the UAW's assertions, New GM has not contended that the possible impact on the value of New GM's stock, standing alone, is sufficient to establish "related to" jurisdiction.  Rather, New GM, consistent with applicable authority, believes such impact is a relevant factor to consider in a "related to" jurisdiction analysis.[13]  Uncertainty over New GM's obligations to retirees and the New VEBA — precisely the uncertainty that was to be eliminated by the 2009 UAW Retiree Settlement Agreement and the Sale Order — could have a negative

---

[11]    The purpose of New GM's reference to In re Lehman Brothers Holdings Inc., Case No. 08-13555 (Bankr. S.D.N.Y. Sep. 15, 2009), was to demonstrate the immense burden that may be placed on a bankruptcy court's docket when previously undisclosed terms of a highly public and expedited sale pursuant to section 363 of the Bankruptcy Code come to light.  In any event, the UAW incorrectly argues that the time to bring a motion based on Rule 60(b) of the Federal Rules of Civil Procedure has expired.  A party may bring such a motion within a "reasonable time" for "any other reason that justifies relief."  Fed. R. Civ. P. 60(c)(1) (made applicable to this matter pursuant to Federal Rule of Bankruptcy Procedure 9024).  Moreover, the cases cited by the UAW – 176-60 Union Turnpike, Inc. v. Howard Beach Fitness Center, Inc., 209 B.R. 307, 313-14 (S.D.N.Y. 1997), and Back v. LTV Corp. (In re Chateaugay Corp.), 213 B.R. 633, 639-40 (S.D.N.Y. 1997) – do not address the impact of parties filing pleadings with the bankruptcy court on the "administration of the estate," regardless of the viability or the amount of such claims.

[12]    See Debtors' Amended Joint Chapter 11 Plan (Docket No. 8015) (the "Old GM Plan"), at § 4.3.

[13]    See In re Chateaugay Corp., 213 B.R. at 640; Hunnicutt Co. v. TJX Cos. (In re Ames Dep't Stores, Inc.), 190 B.R. 157, 161 (S.D.N.Y. 1995).  These cases (in which creditors received stock in a reorganized debtor in exchange for claims) apply to the facts present here with much greater force than the authority cited by the UAW (in which the debtor itself continued to hold stock in wholly-owned but independent, non-debtor operating subsidiaries and such stock was not being distributed to creditors on account of their claims), because any decrease in the value of New GM stock will *directly* impact the recoveries of the Debtors' creditors.  (See UAW Reply ¶ 17 n.12) (citing Feldman v. Trs. of Beck Indus., Inc. (In re Beck Indus., Inc.), 479 F.2d 410, 415 (2d Cir. 1973), cert. denied, 414 U.S. 858 (1973) (holding that bankruptcy court jurisdiction did not extend to claims against an independent subsidiary of the debtor, even though the value of the debtor's equity interest therein would be impacted); Tower Auto. Mex. v. Grupo Proeza (In re Tower Auto., Inc.), 356 B.R. 598, 600-01 (Bankr. S.D.N.Y. 2006) (holding that the possible diminution in the value of debtor's investment in the stock of its non-debtor foreign subsidiary was not, by itself, enough to provide the court with jurisdiction over a dispute between the non-debtor subsidiary and a third party that was not a creditor of the debtors); DVI Fin. Servs. v. Nat'l Med. Imaging, LLC (In re DVI, Inc.), 305 B.R. 414, 417-18 (Bankr. D. Del. 2004) (holding that the bankruptcy court did not have "related to" jurisdiction over adversary proceeding commenced by the debtor, solely in its capacity as servicing agent for certain trusts, to recover for third parties' alleged breach of transferred agreements, where the debtor held an equity interest in the trusts, but the trusts held legal and equitable title to the property sought in the adversary proceeding)).

long-term effect on the value of New GM's stock.[14]  This conceivable negative effect supports

the Court's "related to" jurisdiction over the MOU Dispute.

### 2.    New GM Is "Intertwined" With the Debtors

18.    The UAW argues that the "intimately intertwined" standard for "related to"

jurisdiction should apply only for insiders or "joint or overlapping liability."  (UAW Reply ¶ 18).

This interpretation is not consistent with relevant case authority.  See, e.g., Nemsa

Establishment, S.A. v. Viral Testing Sys. Corp., No. 95-Civ-0277, 1995 WL 489711, at *13

(S.D.N.Y. Aug. 15, 1995) (observing that "related to" jurisdiction can be determined from "the

degree to which the parties … are intertwined.") (quoting Ameritrust Co., N.A. v.

Opti-Gage, Inc. (In re Opti-Gage, Inc.), 128 B.R. 189, 196 (Bankr. S.D. Ohio 1991)).[15]

Moreover, the UAW cites no authority to suggest that New GM must be an insider of the

Debtors (or have some other legally cognizable relationship) to be sufficiently "intertwined" for

purposes of "related to" jurisdiction.

19.    New GM's payment obligations to the New VEBA were a centerpiece of the Sale

and the Sale Order.  New GM's assumption of certain obligations (and not others) related to the

UAW and its retirees, too, was a centerpiece of the Sale and the Sale Order.  Resolution of those

obligations under the clear language of the 2009 UAW Retiree Settlement Agreement, the Sale

Order and the MPA cannot be divorced from the administration of the Debtors' estates.  Nor can

---

[14]    The uncertainty generated by a judgment adverse to New GM could also impact the value of New GM's stock beyond the nominal value of that judgment.  If the 2009 UAW Retiree Settlement Agreement did not truly "fix and cap" New GM's obligations to the New VEBA, investors may wonder if other undisclosed liabilities are lurking in other unknown side-agreements.  That uncertainty could conceivably have a deleterious effect on New GM's stock and, hence, on creditor recoveries in Old GM's case.

[15]    The argument that New GM and the Debtors are not sufficiently intertwined with respect to parsing their respective obligations under the Sale Order to support "related to" jurisdiction over the MOU Dispute also is inconsistent with the UAW's primary argument, i.e., that the alleged meaning ascribed to the terms of the 2008 UAW Retiree Settlement Agreement by Old GM should bind New GM, which was not a party to, and did not assume, that agreement.  (See UAW Brief ¶¶ 11-16, 20-25; UAW Reply ¶ 21).

the subordinate issue – the MOU Dispute – be wholly divorced from the interpretation of the 2009 UAW Retiree Settlement Agreement and the Sale Order.  (See *supra* ¶¶ 11-12).  The dispute before the Court is (and both New GM and the UAW are) thus "intimately intertwined" with the Debtors and the estates.

**D.**     **The Court Should Not Abstain From Exercising Its Jurisdiction**

20.     As it did in its opening brief, the UAW refuses to address comprehensively the seven-factor discretionary abstention test repeatedly articulated by the Court.  See In re Lyondell Chem. Co., 402 B.R. 596, 613 (Bankr. S.D.N.Y. 2009).[16]  Each relevant factor weighs heavily in favor of the Court's exercise of jurisdiction over the Motion.  (See New GM Brief ¶¶ 37-56). Rather than restating the arguments in opposition to abstention (which the UAW scarcely engages), the UAW's assertion that certain tangential "factors" and considerations weigh in favor of abstention is addressed below.

**1.**     **The Jurisdiction Provisions in the Sale Order and the 2009 UAW
          Retiree Settlement Agreement Weigh Heavily Against Abstention**

21.     The UAW argues that the retention of jurisdiction provisions in the Sale Order and the 2009 UAW Retiree Settlement Agreement (the "**Jurisdiction Provisions**") "do not restrict this Court's exercise of its discretion to abstain from hearing the Preclusion Dispute …. where circumstances warrant abstention."  (UAW Reply ¶ 20).  The UAW has failed to identify any such "circumstances."  Moreover, the only cases it cites in support of its argument ultimately support New GM's position.

---

[16]     The UAW states in a footnote that it "will not discuss each factor raised by New GM" (i.e., the factors set forth by the Court) in its abstention analysis.  (UAW Reply ¶ 19 n. 16).  That all factors need not be considered when some are irrelevant in a particular circumstance (see In re Portrait Corp. of Am., Inc., 406 B.R. 637, 642 (Bankr. S.D.N.Y. 2009)) does not mean the UAW can omit relevant factors from the discretionary abstention analysis.

22.     Unlike here, where all relevant jurisdictional language reserves jurisdiction in the

Court, the bankruptcy court in <u>Collins v. IBM Southeast Employees Federal Credit Union</u>

<u>(In re Alliance Leasing Corp.)</u>, No. 07-0065A, 2007 Bankr. LEXIS 4637, at *24 (Bankr. M.D.

Tenn. Jul. 3, 2007), was faced with *competing* jurisdiction provisions.  Although the bankruptcy

court generally had retained jurisdiction over post-confirmation disputes pursuant to the terms of

the debtor's liquidating chapter 11 plan, the agreement out of which the relevant dispute arose

expressly provided that disputes thereunder were to be resolved in the Florida courts or through

arbitration.  <u>Id.</u> at *15-16, 24.  By abstaining, the bankruptcy court endorsed the parties' prior

agreement to be bound by the jurisdiction provision of their private contract.  Applying the same

approach here (where the parties' agreement reserves exclusive jurisdiction in the Court) would

militate against abstention with respect to the Preclusion Dispute.

23.     In <u>Arris International v. Hybrid Patents, Inc. (In re Com21, Inc.)</u>, 357 B.R. 802,

809 (Bankr. N.D. Cal. 2006), the bankruptcy court abstained because the parties' dispute could

have been "resolved without ever considering the effect of the bankruptcy sale."  Here, the

opposite is true.  The Preclusion Dispute and the ancillary MOU Dispute require the threshold

interpretation and enforcement of the Sale Order and the 2009 UAW Retiree Settlement

Agreement.  Thus, <u>Arris International</u> neither undermines the Jurisdiction Provisions nor weighs

in favor of abstention.

## 2.     The Court Has Sufficient "Familiarity and Expertise" to Resolve the MOU Dispute

24.     The UAW's inaccurate claim that the Michigan District Court is better suited to

resolve the Motion because the Court "lacks any familiarity or expertise with the MOU Dispute"

(UAW Reply ¶ 19) does not support abstention.  Determining whether the conditions precedent

to the Additional VEBA Payment set forth in the 2007 Delphi Restructuring MOU (which was

negotiated in connection with bankruptcy proceedings) have occurred requires the consideration of bankruptcy-intensive issues (e.g., the distinction between plans of reorganization and liquidating plans) as well as the expectations of parties negotiating within the framework of the Bankruptcy Code. (See Motion ¶¶ 62-68). The Court has precisely the expertise necessary to resolve the MOU Dispute (which expertise the Michigan District Court lacks).

25.    Indeed, as demonstrated at paragraphs 11-12 above, the familiarity and expertise possessed by this Court are *necessary* to the resolution of the MOU Dispute. The Court's interpretation of the 2009 UAW Retiree Settlement Agreement and the Sale Order are prerequisites to resolution of the MOU Dispute (as they are prerequisites to the determination of the threshold Preclusion Dispute). Thus, because the MOU Dispute cannot be resolved by *any* court without first interpreting the Sale Order and the 2009 UAW Retiree Settlement Agreement, there is no court whose familiarity and expertise exceeds that of this Court.

### 3.    The Issues Raised in the Motion Are Not "Remote" From the Debtors' Bankruptcy Cases

26.    The UAW asserts that, because the Sale closed 19 months ago, abstention is warranted for disputes related to this "remote" event. However, the Sale was the linchpin of the Debtors' bankruptcy cases, and the 2009 UAW Retiree Settlement Agreement was the *sine qua non* of the Sale. (See New GM Brief ¶¶ 1-2, 8-13, 41). The restructuring and reduction of retiree benefits and establishment of the finite monetary payments that New GM would have to make to the New VEBA were essential to the eventual resolution of the Debtors' estates (and an unwaivable condition to the Sale). (See id.).[17] Far from being "remote" from the Debtors'

---

[17]    The UAW contends that "fixing and capping" liabilities on account of UAW retirees was not critical to the Sale because it had already been "established and settled" by the 2008 UAW Retiree Settlement Agreement. (UAW Reply ¶ 21). This puzzling argument ignores the fact that New GM was not a party to the 2008 UAW Retiree Settlement Agreement and did not take an assignment of it in connection with the Sale. (New GM Brief ¶ 19; Sale Order ¶ FF). It also ignores the significant reduction in the amount and

bankruptcy cases, the dispute between New GM and the UAW over the Additional VEBA

Payment goes to the heart of Old GM's bankruptcy case and the value of the distributions to be

made to the Debtors' creditors.

27.    In fact, courts have retained and exercised jurisdiction to enforce and interpret

their own orders _decades_ after their entry.  See, e.g., Travelers Indem. Co. v. Bailey,

129 S.Ct. 2195, 2199-202 (2009) (upholding bankruptcy court's jurisdiction to interpret and

enforce its own orders after nearly 18 years).[18]  In addition, it was less than 4 months after the

Sale closed that the UAW began asserting its entitlement to an additional $450 million payment

from New GM.  (See VEBA Complaint ¶ 11).[19]  The fact that New GM first tried to resolve the

dispute out of court, abided by the time periods in the dispute resolution provisions of the

2009 UAW Retiree Settlement Agreement and accommodated an extended briefing schedule on

jurisdictional issues are not facts that support abstention.

<u>**Conclusion**</u>

28.    The UAW cannot demonstrate that New GM's arguments related to the Preclusion

Dispute lack "colorable merit."  The UAW cannot escape the Court's exclusive jurisdiction over

the Preclusion Dispute.  Given the Court's exclusive jurisdiction over this threshold issue, the

Court also has "arising in" jurisdiction over the MOU Dispute.  At the very least, the impact of a

judgment adverse to New GM with respect to the Additional VEBA Payment threatens increased

administrative burdens for the Court and a negative effect on the value of the consideration to be

---

nature of obligations due to the VEBAs in the 2009 UAW Retiree Settlement Agreement from the
2008 UAW Retiree Settlement Agreement.

[18]    The UAW fails to demonstrate how the two cases cited in support of its "remoteness" argument —
Longacre Master Fund, Ltd. v. Telecheck Services, Inc. (In re Casual Male Corp.), 317 B.R. 472 (Bankr.
S.D.N.Y. 2004), and JMB Capital Partners, L.P. v. CRT Capital Group LLC (In re NTL, Inc.),
295 B.R. 706 (Bankr. S.D.N.Y. 2003) — support an argument that the simple passage of time diminishes a
court's jurisdiction over its own orders.

[19]    A copy of the VEBA Complaint (as defined in the Motion) is attached to the Motion as Exhibit I.

distributed to the Debtors' creditors pursuant to the Old GM Plan.  Considered in connection with

the centrality of the Sale to the Debtors' bankruptcy cases, the conceivable effects of such a

judgment also establish "related to" jurisdiction over the MOU Dispute.  Finally, the tangential

issues addressed by the UAW in lieu of applying the abstention standard articulated by the Court

do not overcome New GM's previous showing that abstention is inappropriate under these

circumstances.  Accordingly, for the foregoing reasons and for those set forth in the New GM

Brief, New GM respectfully requests that the Court exercise its jurisdiction over the Motion.

Dated: March 21, 2011
     New York, New York                   Respectfully submitted,


   /s/  Lisa G. Laukitis
Lisa G. Laukitis
JONES DAY
222 East 41st Street
New York, New York  10017
Telephone:  (212) 326-3939
Facsimile:  (212) 755-7306

Andrew M. Kramer (admitted *pro hac vice*)
JONES DAY
51 Louisiana Avenue NW
Washington, D.C.  20001
Telephone:  (202) 879-3939
Facsimile:  (202) 626-1700

Heather Lennox (admitted *pro hac vice*)
Robert S. Walker (admitted *pro hac vice*)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio  44114
Telephone:  (216) 586-3939
Facsimile:  (216) 579-0212

ATTORNEYS FOR
GENERAL MOTORS LLC

## ANNEX A

SELECTED SECTIONS OF 2009 UAW RETIREE SETTLEMENT AGREEMENT
DEMONSTRATING A COLORABLE BASIS FOR THE COURT'S JURISDICTION

First Paragraph:    "This Settlement Agreement shall cover and has application to … the Existing
External VEBA [i.e., the DC VEBA]."

Section 2:    "All obligations of [New GM], the [New GM] Plan and any other [New GM]
entity or benefit plan for Retiree Medical Benefits for the Class and the
Covered Group arising from any agreement(s) between [New GM] and the
UAW shall be forever terminated as of the Implementation Date.  [New GM]'s
sole obligations to the New Plan and the New VEBA are those set forth in this
Settlement Agreement."

Section 5.B:    "Neither [New GM], the [New GM] Plan, the Existing Internal VEBA, nor
any other [New GM] person, entity or benefit plan shall have any
responsibility or liability for Retiree Medical Benefits for individuals in the
Class or in the Covered Group for claims incurred after the Implementation
Date.  [New GM]'s sole obligations to the New Plan and the New VEBA are
those set forth in this Settlement Agreement."

Section 5.D:    "All obligations of [New GM] … and all provisions of applicable collective
bargaining agreements, contracts, letters and understandings in any way
related to Retiree Medical Benefits for the Class and the Covered Group are
terminated on the Implementation Date, or otherwise amended so as to be
consistent with this Settlement Agreement."

Section 8:    "[New GM]'s financial obligation and payments to the New Plan and New
VEBA are fixed and capped by the terms of this Settlement Agreement ….
Pursuant to this Settlement Agreement, [New GM] shall have the following,
and only the following, obligations to the New VEBA and the New Plan …."

Section 14:    "The UAW, acting on its own behalf and as the authorized representative of
the Class and the Covered Group, also agrees not to seek to obligate [New
GM] to:  (i) provide any additional payments to the New VEBA other than
those specifically required by this Settlement Agreement …."

Section 32.C:    "This Settlement Agreement supersedes any prior understandings, agreements
or representations by or between the parties, written or oral, regarding the
matters set forth in this Settlement Agreement."