**Hearing Date & Time: March 29, 2011 at 9:45 a.m. (Eastern Time)**
**Response Deadline: March 22, 2011 at 4:00 p.m. (Eastern Time)**

José Javier Bartolomei
Stephen S. LaPlante
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
101 N. Main Street, 7th Floor
Ann Arbor, Michigan 48108
734.668.8982
bartolomei@millercanfield.com

Attorneys for Ford Motor Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* **f/k/a General Motors Corp.,** *et al.,* | 09-50026 (REG) |
| **Debtors.** | **(Jointly Administered)** |

**RESPONSE OF FORD MOTOR COMPANY**
**TO DEBTORS' 208TH OMNIBUS OBJECTION TO CLAIMS**

Ford Motor Company, ("Ford"), by its attorneys, hereby submits this response to Debtors'

*208th Omnibus Objection to Claims (Contingent Co-Liability Claims)* (the "Objection") filed by

Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as

debtors in possession (collectively, the "Debtors"). In support of this Response, Ford respectfully

states as follows:

## BACKGROUND

1.    Ford is an original equipment manufacturer of automobiles for the global market.

Ford filed a unsecured proof of claim in this case, claim number 60591 (the "Ford Claim"),

covering certain environmental obligations incurred by the Debtors with respect to forty-four (44)

separate environmental remediation sites throughout the United States. *See* Proof of Claim #

60591, Exhibit A, attached hereto. The sites (collectively, the "Sites") included in the Ford Claim

are as follows:

| 1. Arivec Chemical Site | 12. Fons Old Wayne | 23. Mercury Refining | 34. Reclamation Oil Company |
|---|---|---|---|
| 2. Bayonne Barrel and Drum | 13. Ford Road Landfill | 24. Metamora Landfill | 35. Rose Township Dump |
| 3. Booth Oil | 14. Forest Waste Disposal | 25. Northside Sanitary Landfill | 36. Satterlee Sumpter Township Landfill |
| 4. Breslube Penn | 15. G&H Landfill | 26. Northline Drum | 37. Sauget Area 2 (RRG Clayton) |
| 5. Cam-or | 16. General Oil Main Site | 27. Operating Industries Inc. Landfill | 38. Skinner Landfill |
| 6. Chemical Recovery Systems Site | 17. General Oil/Ford Pond | 28. Organic Chemical | 39. Springfield Township Dump |
| 7. Chemsol | 18. Gordon Service | 29. Pfohl Brothers | 40. SRS Env Site (Sybil Oil Site, Detroit) |
| 8. Commercial Oil Services | 19. Lake Calumet Cluster Site | 30. Quanta Long Island | 41. Stickney Ave Landfill |
| 9. Dearborn Refining | 20. Lammers Barrel | 31. Quanta Resources Site/Syracuse | 42. Third Site |
| 10. Duane Marine Salvage | 21. Liquid Disposal Inc. | 32. Quanta Resources Edgewater | 43. Tyler Street Dump Site |
| 11. Enviro-Chem | 22. M&J Solvents | 33. Rasmussen Dump Site a/k/a Whitmore Lake | 44. Willow Run CVO |

2.       For a number of the Sites, Ford is part of a group of Potentially Responsible Parties

(a "PRP Group") collectively responsible for addressing environmental issues at these Sites. The

PRP Group for a number of these Sites has, by separate counsel, filed a separate proof of claim for

such sites and may have, by the time of the hearing on the Objection and this Response, settled

with the Debtors for an allowed claim that includes Ford's portion of costs and claims for such

site[1]. To the extent that these PRP Group site claims are already settled, Ford is willing to amend

the Ford Claim to remove such sites from the Ford Claim. To the extent that these PRP Group site

claims are not settled by the time of the hearing on the Objection and this Response, Ford retains

such PRP Group sites as part of the Ford Claim.

3.      A subset of the Sites covered by the Ford Claim are subject to a Site Exchange

Agreement, dated as of August 15, 2001, by and between Ford and General Motors Corporation

(the "Site Exchange Agreement"). *See* Site Exchange Agreement, Exhibit B, attached hereto.

Pursuant to the Site Exchange Agreement, Ford and General Motors Corporation agreed, *inter alia*,

to exchange responsibility for certain environmental remediation sites subject to various consent

judgments and site participation agreements. Pursuant to the Site Exchange Agreement, in

exchange for certain consideration (including Ford's undertaking of responsibility for certain other

environmental remediation sites), the Debtors specifically agreed to assume all the environmental

remediation responsibilities of Ford with regard to the Commercial Oil Services Site located in

Oregon, Ohio, and the Willow Run Creek Area Site, located in Washtenaw County and Wayne

County, Michigan. Ford's Claim with respect to the Commercial Oil Services Site is estimated by

Ford to be $26,679.32. Ford's Claim with respect to the Willow Run Creek Area Site is estimated

---

[1] These sites may include, subject to confirmation by Ford and the Debtors of a settlement with the PRP Group for each site, the following: Arivec Chemical Site (PRP Group Claim # 44827), Chemical Recovery Systems Site, Chemsol, Dearborn Refining (PRP Group Claim # 36708), Duane Marine Salvage (PRP Group Claim # 59686), Enviro Chem (PRP Group Claim #70410), Forest Waste Disposal (PRP Group Claim #49480), G&H Landfill (PRP Group Claim # 39020), Lake Calumet Cluster Site (PRP Group Claim # 70483), Lammers Barrel (PRP Group Claim # 36699), Liquid Disposal, Inc. (PRP Group Claim # 38913), M&J Solvents (PRP Group Claim # 70045), Metamora Landfill (PRP Group Claim # 31997), Northside Sanitary Landfill (PRP Group Claim # 17251), Operating Industries Inc., Landfill (PRP Group Claim # 45842), Quanta Resources Edgewater (PRP Group Claim # 58621), Quanta Resources Long Island (PRP Group Claim # 67103), Quanta Resources Syracuse (PRP Group Claim # 16557), Rasmussen Dump Site a/k/a Whitmore Lake (PRP Group Claim #31995), Skinner Landfill (PRP Group Claim # 65679), Third Site (PRP Group Claim # 70406).

by Ford to be $1,304,938.

4.    On November 28, 2009, the Environmental Protection Agency (the "EPA") filed

a proof of claim in the Debtors' bankruptcy case (Claim Number 64064) (the "EPA Claim").

The EPA Claim sets forth over forty-five sites where the Debtors are liable to the EPA for

various penalties, costs, and remedies.  A number of the Sites covered by the Ford Claim are also

covered under the EPA claim[2].  The remaining Sites, however, are not mentioned in the EPA

claim (the "Excluded Sites").[3]

### THE DEBTORS' OBJECTION

5.    Without providing any analysis on a site-by-site basis, the Debtors' Objection

asserts that the Ford Claim is a contribution claim pursuant to section 502(e)(1)(B) of chapter 11

of title 11 of the United States Code (the "Bankruptcy Code") and, as such, should be disallowed

and expunged in its entirety.  See Paragraph 1 of the Objection. To establish the co-liability

status, the Debtors note that the "Surviving Creditor [is the] United States Environmental

Protection Agency"; see Exhibit A to the Objection.  This conclusion misses the fact that the

EPA claim only covers a small subset of the Sites covered by the Ford Claim, as well as other

circumstances regarding each Site.

---

[2]  Sites covered by both the Ford Claim and the EPA Claim include the following:  Breslube-
Penn, Chemical Recovery Systems Site, Dearborn Refining, Ford Road Landfill, Forest Waste
Disposal, Lake Calumet Cluster Site, Lammers Barrel, Mercury Refining, Reclamation Oil
Company, Rose Township Dump, Sauget Area 2 (RRG Clayton) and Springfield Township
Dump.

[3] The Debtors and the EPA have filed with this Court a *Consent Decree and Settlement
Agreement Between the Debtors and the United States of America* which purports to settle the
EPA's claims against the Debtors.  Pursuant to ¶ 62 of the *Consent Decree*, the *Consent Decree*
is subject to a public comment period after which the United States will request approval of the
Settlement Agreement contained in the *Consent Decree*.  As other parties responding to the
Objection have argued, Ford urges the Court to hold any ruling on the Objection in abeyance
until such time as Ford and other creditors are provided with due process rights of notice and an
opportunity to be heard regarding the final approval of the *Consent Decree*.

## ARGUMENT

**A.**    **Section 502(e)(1)(B) is not Applicable to Sites Included in the Ford Claim.**

6.    Section 502(e)(1)(B) of the Bankruptcy Code provides, in relevant part:

> [T]he court shall disallow any claim for reimbursement or
> contribution of an entity that is liable with the debtor on or has
> secured the claim of a creditor to the extent that ...such claim for
> reimbursement or contribution is contingent as of the time of
> allowance or disallowance of such claim for reimbursement or
> contribution . . . .

11 U.S.C. § 502(e)(1)(B). Three elements must be met in order for a claim to be subject to

disallowance pursuant to § 502(e)(1)(B): "First, the claim must be for reimbursement or

contribution. Second, the party asserting the claim must be liable with the debtor on the claim.

Third, the claim must be contingent at the time of its allowance or disallowance." *In re Drexel*

*Burnham Lambert Group Inc. ("Drexel I"),* 148 B.R. 982, 985 (Bankr. S.D.N.Y. 1992).

7.    The well-recognized public policy motivations behind § 502(e)(1)(B) are twofold.

First, Congress sought to prevent competition between a primary and secondary creditor for the

"limited proceeds in the estate." *In re Wedtech Corp.,* 85 B.R. 285, 289 n.4 (Bankr. S.D.N.Y.

1988) *("Wedtech I")*(quoting HR Rep. No. 95-595, 95th Cong., 1st Sess. 354 (1977)).  Second,

Congress enacted § 502(e)(1)(B) to protect debtors from having to make duplicative distributions

of estate assets on the basis of contingent claims.

**(1)**    **Section 502(e)(1)(B) Does Not Apply to Liquidated Past Remediation Costs.**

8.    As this Court has previously noted, Section 502(e)(1)(B) does not apply "where

remediation costs were already paid by the claimant." *In re Chemtura Corp.*, No. 09-11233,

2011 WL 109081, at *1 (Bankr. S.D.N.Y. Jan. 11, 2011); *see also id* at * 14 ("*past* response

costs previously paid are non-contingent")(emphasis in the original); *In re Lyondell Chemical*

5

*Co.*, -- B.R. --, 2011 WL 11413, at *1, *12 (Bankr. S.D.N.Y. Jan. 4, 2011).

9.     Ford has spent considerable sums in covering the Debtor's share of

environmental remediation costs for the Sites included in the Ford claim. As of the date of this

Response, Ford is in the process of calculating these expenditures and will supply them to the

Court and to the Debtors in a supplement to this Response prior to the hearing date on the

Objection and this Response. These costs are liquidated and not contingent, have already been

realized and represent tangible claims that should allowed by the Debtors and this Court.

**(2)    Section 502(e)(1)(B) is not Applicable to the Ford Claim for Costs to be
         Incurred at the Excluded Sites.**

10.     The second prong of 502(e)(1)(B) asks whether a debtor is "liable with" the

claimant. *In re GCO Services, LLC,* 324 B.R. 459, 465 (Bankr. S.D.N.Y. 2005). This prong

requires "a finding that the causes of action in the underlying lawsuit assert claims upon which,

if proven, the debtor could be liable but for the automatic stay." *Id., citing Wedtech I,* 85 B.R. at

290. The public policy rationale for disallowing a claim that is subject to joint liability is to

prevent double payment by the debtors on account of the same liability. *See, e.g., In re Lyondell*

*Chemical Company,* 2011 Bankr. LEXIS 10, at *45 (Bankr. S.D.N.Y., January 4, 2011); *In re*

*Chemtura Corporation,* 2011 Bankr. LEXIS 88, at *49-64 (Bankr. S.D.N.Y., January 13, 2011).

In *Chemtura,* the Private Party Claims were premised on joint liability under the cost recovery

aspect of CERCLA section 107(a), as opposed to the requirements of contribution under section

113(f) of CERCLA. *Id.* at *49. As the Debtors in *Lyondell* and *Chemtura* had agreements with

the EPA and state authorities in which there existed allowed claims for environmental liabilities,

and the Private Parties in those cases sought contribution on the full amount of their claims, the

claims of the Private Parties would subject the Debtors to the type of double payment that section 502(e)(1)(B) was created to prevent. *Id.* at *54.

11.     As mentioned above, the Excluded Sites are not included in the EPA's proofs of claim filed in these cases. As a result, the EPA cannot recover any portion of the cleanup costs incurred by Ford at the Excluded Sites. The Debtors cannot be liable then to the EPA for any amount with respect to Ford's obligations at the Excluded Sites. The Ford Claim against the Debtors is a direct claim for established costs representing the Debtors' portion of the remediation costs at the Excluded Sites. Therefore, there is no risk of double payment from the Debtor (to the EPA and Ford), and the Ford Claim should not be disallowed under § 502(e)(1)(B), with regard to the Excluded Sites.

**B.    Claims Based on the Site Exchange Agreement are Contract Claims Not Subject to Disallowance Under § 502(e)(1)(B).**

12.     Ford and the Debtors entered into the Site Exchange Agreement expressly for the purpose of transferring the liability risk from Ford to the Debtors with regard to certain sites (specifically the Commercial Oil Services and the Willow Run Creek Area sites). As a result of the terms of the Site Exchange Agreement, the Debtors assumed all of Ford's obligations for environmental remediation for these sites and accepted all responsibility for paying any related environmental claims. *See* Site Exchange Agreement at ¶ 3, Ex. B attached hereto.

13.     In order to establish disallowance of a claim under section 502(e)(1)(B), the Debtor must show: 1) that the claim is for reimbursement or contribution, 2) that the party asserting the claim is co-liable with the debtor on the claim, and 3) that the claim is contingent as of the time of allowance or disallowance. *See, e.g., Drexel I*, 148 B.R. at 985.

7

14.    The Debtors rely on section 502(e)(1)(B) of the Bankruptcy Code for the proposition that, over nine years after entry of the Site Exchange Agreement, this bargained for exchange should be terminated. Such a result would violate section 502(e)(1)(B), would alter the incentives to negotiate settlements among parties at risk of environmental liabilities, and would result in a windfall for the Debtors.

15.    The first prong of the 502(e)(1)(B) test requires the Debtors to show that the claim is for reimbursement or contribution. "Contribution refers to the ability of one joint tort feasor against whom a judgment is rendered to recover a proportional share of the judgment from another joint tort feasor also liable to the plaintiff." *In re GCO Services, LLC,* 324 at 465 *(citing Wedtech I,* 85 B.R. at 289. Reimbursement "is a broad word which encompasses whatever claims a co-debtor has which entitle him to be made whole for monies he has expended on account of a debt for which he and the debtor are both liable." *In re Wedtech,* 87 B.R. 279, 287 (Bankr. S.D.N.Y. 1988) *("Wedtech II").* Generally, the concept of reimbursement includes indemnity. *In re GCO Services, LLC,* 324 B.R. at 465. The requirement that the claim be for contribution or reimbursement addresses the Congressional intent in 502(e)(1)(B) to prevent competition between a primary and secondary creditor.

16.    Ford is not, however, seeking contribution from the Debtors for that portion of the underlying environmental claims that would otherwise be the responsibility of the Debtors. Rather, the Debtors have contractually agreed to be *fully* responsible for all obligations that may otherwise be the liability of Ford at the sites covered by the Site Exchange Agreement. The Debtors accepted consideration from Ford[4] in exchange for accepting all responsibility related to the environmental liabilities incurred at the sites covered by the Site Exchange Agreement.

---

[4] Including Ford's obligation to undertake the Debtors' environmental liabilities at certain other sites.

Therefore, Ford would contractually not be responsible for paying the underlying claims or obligations owed by the Debtors, would not pay the underlying claims in the first instance, and would not be entitled to reimbursement under the terms of the Site Exchange Agreement. As a result, Ford's Claim with respect to sites covered by the Site Exchange Agreement is not a claim for contribution or reimbursement, and the Debtors are unable to satisfy the first requirement of section 502(e)(1)(B).

17.    If the Court finds that the claim is subject to disallowance under 502(e)(1)(B), Ford will have paid a substantial sum without receiving its bargained for consideration in return. At the time the Site Exchange Agreement was negotiated, the parties acknowledged they were potentially responsible parties and had entered into the Site Exchange Agreements to set forth their rights and obligations for environmental claims at the Commercial Oil Services site, the Willow Run Creek Area site (and the sites for which Ford undertook the Debtors' obligations). Both Ford and the Debtors were looking for cost certainty and efficiency and to negotiate the long-term risks such environmental claims present.    By undertaking full contractual responsibility for the Commercial Oil Services and Willow Run Creek sites, the Debtors' place Ford's Claim related to those sites outside of the scope § 502(e)(1)(B). Ford's Claim should be upheld with regard to those sites.

### CONCLUSION

WHEREFORE, for all the foregoing reasons, Ford respectfully requests that the Court (i) overrule the Objection with respect to Claim Number 60591, and (ii) grant Ford such other and further relief as this Court deems just, proper, and equitable.

Dated: March 21, 2010                    Respectfully Submitted,

                                         MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

9

By: */s/ José J. Bartolomei*
     José Javier Bartolomei
     Stephen S. LaPlante
101 North Main Street, 7th Floor
Ann Arbor MI 48104
Phone: 734.668.8982
Fax: 734.747.7147
Email: bartolomei@millercanfield.com
Attorneys for Ford Motor Company

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing

*Response of Ford Motor Company to Debtors' 208th Omnibus Objection to Claims* was

served via overnight mail on March 21, 2011 to counsel listed below:

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Weil, Gotshal & Manges, LLP
767 Fifth Ave.
New York, NY 10153

Thomas Morrow
c/o Motors Liquidation Company
401 South Old Woodward Ave., Suite 370
Birmingham, MI 48009

Lawrence S. Buonomo
General Motors, LLC
400 Renaissance Center
Detroit, MI 48265

John J. Rapisardi
Cadwalader, Wickersham & Taft, LLP
One World Financial Center
New York, NY 10281

Joseph Samarias
United States Department of the Treasury
1500 Pennsylvania Ave., NW
Room 2312
Washington, DC 20220

Michael J. Edelman
Michael L. Schein
Vedder Price, P.C.
1633 Broadway, 47th Floor
New York, NY 10019

Thomas Moers Mayer
Robert Schmidt
Lauren Macksoud
Jennifer Sharret
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, NY 10036

Tracy Hope Davis
Office of the United States Trustee
for the Southern District of New York
33 Whitehall Street, 21st Floor
New York, NY 10004

David S. Jones
Natalie Kuehler
U.S. Attorney's Office, S.D.N.Y.
86 Chambers Street, 3rd Floor
New York, NY 10007

Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale, Chartered
375 Park Ave., 35th Floor
New York, NY 10152-3500

Trevor W. Swett III
Kevin C. Maclay
Caplin & Drysdale, Chartered
One Thomas Circle, N.W., Suite 1100
Washington, DC 20005

Sander L. Esserman
Robert T. Brousseau
Stutzman, Bromberg, Esserman & Plifka, P.C.
2323 Bryan Street, Suite 2200
Dallas, TX 75201

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: */s/ José J. Bartolomei*
        José J. Bartolomei
101 North Main Street, 7th Floor
Ann Arbor MI 48104
Phone: 734.668.8982
Fax: 734.747.7147
Email:  bartolomei@millercanfield.com
Attorneys for Ford Motor Company

## EXHIBIT A

Proof of Claim Number 60591
(Attached)

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

| Name of Debtor<br>**MOTORS LIQUIDATION COMPANY (f/k/a General Motors Corporation)** | Case Number **09-50026** |
|---|---|

*Your Claim Is Scheduled As Follows*

NOTE *This form should not be used to make a claim for an administrative expense arising after the commencement of the case All other requests for payment of an administrative expense may be filed pursuant to 11 U S C § 503*

Name of Creditor (the person or other entity to whom the debtor owes money or property) **FORD MOTOR COMPANY, and its subsidiaries and affiliates and all successors and assigns thereof**

☐ Check this box to indicate that this claim amends a previously filed claim

Name and address where notices should be sent
José J Bartolomei
Miller Canfield
Attorneys and Agents for Ford Motor Company
101 N Main Street, 7th Floor
Ann Arbor, MI 48104
Telephone number 734 668 8982
Email Address bartolomei@millercanfield com

Court Claim Number.
*(If known)*

Filed on

THE GARDEN CITY GROUP, INC
NOV 27 2009

Name and address where payment should be sent (if different from above)
[Same as above]

Telephone number [Same as above]

FILED - 60591
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

☒ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown Please review the Bar Date Notice to determine whether you must file a proof of claim to preserve your rights The Bar Date Notice is available upon request at the address on the back of this form

THIS SPACE IS FOR COURT USE ONLY

1 Amount of Claim as of Date Case Filed   $ CURRENTLY UNLIQUIDATED AND UNKNOWN (See attached)

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4

If all or part of your claim is entitled to priority, complete item 5

☒ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

2. Basis for Claim· **SEE ATTACHED**
(See instruction #2 on reverse side)

3 Last four digits of any number by which creditor identifies debtor. _____
3a Debtor may have scheduled account as _____
(See instruction 3a on reverse side)

4 Secured Claim (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff·   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☒ Other

Value of Property· $ Unknown (see attached for description of possible setoff rights of claimant) Annual Interest Rate Unknown%

Amount of arrearage and other charges as of time case filed included in secured claim, if any· $ N//A

Basis for perfection· Possible Setoff Rights   Amount Unsecured· $   Unknown (see attached)

6 Credits The amount of all payments on this claim has been credited for the purpose of making this proof of claim

7 Documents· Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary *(See instruction 7 and definition of "redacted" on reverse side )* **See attached summary.**

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain  Voluminous and contain confidential/sensitive information

**5** Amount of Claim Entitled to Priority under 11 U S C §507(a)
If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C §507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C §507 (a)(4)

☐ Contributions to an employee benefit plan – 11 U S C §507 (a)(5)

☐ Up to $2,425 of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C §507 (a)(7)

☒ Taxes or penalties owed to governmental units – 11 U S C §507 (a)(8)

☐ Other – Specify applicable paragraph of 11 U S C §507 (a)( )

Amount entitled to priority·

$UNKNOWN (See attached)

| Date<br>Nov 24, 2009 | Signature: The person filing this claim must sign it Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above Attach copy of power of attorney, if any<br>By _____<br>Name· José J Bartolomei<br>Title  Attorney and Agent for Ford Motor Company | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571*

Founded in 1852
by Sidney Davy Miller

# MILLER CANFIELD

MICHIGAN  Ann Arbor
Detroit • Grand Rapids
Kalamazoo • Lansing
Saginaw • Troy

FLORIDA  Naples

ILLINOIS  Chicago

NEW YORK  New York

OHIO  Cincinnati

CANADA  Toronto • Windsor

CHINA  Shanghai

MEXICO  Monterrey

POLAND  Gdynia
Warsaw • Wroclaw

JOSÉ J. BARTOLOMEI
TEL (734) 668-8982
FAX (734) 747-7147
E-MAIL bartolomei@millercanfield com

Miller, Canfield, Paddock and Stone, P.L.C.
101 North Main Street, Seventh Floor
Ann Arbor, Michigan 48104
TEL (734) 663-2445
FAX (734) 747-7147
www millercanfield com

**VIA FEDERAL EXPRESS**          November 25, 2009

The Garden City Group, Inc
Attn. Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Ste  A
Dublin OH 43017

RE    Proofs of Claim to be filed in Case No  09-50026

To Whom It May Concern

Please be advised that this office represents Ford Motor Company and Troy Design & Manufacturing Co  Please find enclosed two (2) proofs of claim to be filed on behalf of Ford Motor Company in the *In re Motors Liquidation Company (f/k/a General Motors Corporation)* bankruptcy case, case no  09-50026 currently venued in the United States Bankruptcy Court for the Southern District of New York, and one (1) proof of claim to be filed on behalf of Troy Design & Manufacturing Co  in the same bankruptcy case.

Should you have any questions, please do not hesitate to contact me at (734) 668-8982

Very truly yours,

Miller, Canfield, Paddock and Stone, P.L.C.

José Javier Bartolomei

JJB/srd
Enclosures

DISCLOSURE UNDER TREASURY CIRCULAR 230  The United States Federal tax advice contained in this document and its attachments, if any, may not be used or referred to in the promoting, marketing or recommending of any entity, investment plan or arrangement, nor is such advice intended or written to be used, and may not be used, by a taxpayer for the purpose of avoiding Federal tax penalties  Advice that complies with Treasury Circular 230's "covered opinion" requirements (and thus, may be relied on to avoid tax penalties) may be obtained by contacting the author of this document

17494029 1\029982-00655

## ATTACHMENT TO PROOF OF CLAIM

1    Ford Motor Company ("Ford") has an unliquidated claim against Debtor relating
to numerous environmental clean-up sites and consent decrees, administrative
orders, participation agreements and settlement agreements related thereto, in
connection with Debtor's conduct before the commencement of its bankruptcy
case   The sites include, without limitation, the following sites:

Arivec Chemical
Bayonne B & D
Booth Oil
Breslube Penn
Camor
Chem  Rec. Serv
Chemsol
Commercial Oil
Dearborn Refining
Duane Marine
Enviro-Chem
Fons Old Wayne
Ford Road
Forest Waste
G&H Landfill
General Oil 2
General Oil/Ford Pond
Gordon Service
Lake Calumet Cluster
Lammers Barrel
LDI
M&J Solvents
Mercury Refining
Metamora
Northside LF
Northline Drum
Operating Industries
Organic Chemical (included if chance of reopener)
Pfohl Brothers
Quanta LIC
Quanta Resources
Quanta Edgewater
Rasmussen
Reclamation Oil
Rose Township
Satterlee Sumpter
Sauget 2
Skinner
Springfield Twnsp

SRS Env Site
Stickney Ave LF
Third Site
Tyler St Dump Site
Willow Run

2.    Ford specifically reserves the right to add additional sites and claims as they are discovered and to otherwise amend this proof of claim ("<u>Claim</u>"). Further, potentially responsible party ("<u>PRP</u>") groups at the above sites may file, or may have already filed, claims against Debtor on behalf of the PRP groups in which Ford is a PRP.

3    Without limiting the generality of the claims and requests for payment, Debtor is obligated to Ford with respect to unpaid pre-petition unsecured amounts in an amount that is currently unknown   The potential amount of Debtor's obligation to Ford that may be secured or entitled to unsecured priority treatment is also currently unknown   Debtor, Ford, and other entities are alleged to be PRPs to certain environmental liabilities ("<u>Environmental Liabilities</u>"), including, without limitation, Environmental Liabilities arising under the Comprehensive Environmental Response, Compensation and Liability Act, 42 U S C. § 9601 *et seq* , under the Resource Conservation and Recovery Act, 42 U.S.C § 6901 *et seq* , and under judicial consent decrees and administrative orders entered with the Environmental Protection Agency, the State of Michigan, and various other governmental agencies   To date, Ford has incurred significant costs in connection with the Environmental Liabilities and will continue to incur significant costs for required work and governmental agency cost reimbursement. Debtor is responsible for various percentages of these costs depending on the site. Ford has paid, and continues to pay, its allocated percentage of those costs. Without Debtor's participation and contribution of its specified percentage of costs, Ford may be responsible to pay Debtor's costs. Additionally, Debtor's liability in connection with the Environmental Liabilities may be joint and several

4    To the extent that Debtor asserts a claim against Ford of any kind, Ford reserves the right to assert that Debtor's claims are subject to rights of setoff and/or recoupment ("<u>Setoff Rights</u>"), which rights are treated as secured claims under title 11 of the United States Code (the "<u>Bankruptcy Code</u>").   At the time of the filing of this Claim, Ford does not assert, but reserves its right to assert, Setoff Rights regarding any claim asserted by the Debtor.

5    Ford expressly reserves the right to amend, modify, and/or supplement this Claim at any time for whatever reason, including, without limitation, for the purpose of filing additional claims and requests for payment and/or to specify the amount of Ford's contingent (to the extent that any of Ford's claims are contingent), unmatured, and/or unliquidated claims as they become non-contingent, matured and/or liquidated   By filing this Claim, Ford does not waive and expressly reserves its right to pursue claims and requests for payment, including the claims and requests for payment described in this Claim against the Debtor based upon

alternative legal theories.

6    To the extent any of the claims set forth in this Claim, in whole or in part, or any components of the Claims, arise or relate in any manner to the period on or after the date of Debtor's bankruptcy petition, Ford asserts that such claims (or any portion thereof) are entitled to priority under Section 503 and 507 of the Bankruptcy Code

7.    By filing this Claim, Ford does not consent to the jurisdiction of this Court to hear any proceeding, motion, or other matter related to the Claim or any other rights of Ford not related to the Claim

8.    Ford reserves all rights at law, in equity, or otherwise, including rights under all pre-petition agreements related to Debtor

9    The documentation supporting this Claim is voluminous and contains confidential and sensitive information   To preserve the confidentiality of this information and to avoid any harm to Debtor and Ford, the documentation is not attached to this Claim   Ford presumes that the Debtor, as counterparty to the underlying agreements, is in possession of its own copies and is familiar with the agreements' terms.   If Debtor does not have copies of any relevant agreements and requires copies of them to fulfill its statutory duties in this bankruptcy proceeding, then Ford will provide Debtor copies upon request and upon implementation of acceptable procedures to protect the confidentiality of the agreements and the information contained in them.

# EXHIBIT B

Site Exchange Agreement, dated as of August 15, 2001, by and between
Ford Motor Company and General Motors Corporation

# SITE EXCHANGE AGREEMENT

This Agreement, effective as of August 15, 2001, is between Ford Motor Company, a Delaware corporation ("Ford") and General Motors Corporation, a Delaware corporation ("GM").

WHEREAS, Ford and GM, among others, are signatories to a Consent Decree entered on June 3, 1993, under which the signatories are obligated to perform the Remedial Action and the operation and maintenance activities ("O&M") at the G&H Industrial Landfill Site ("G&H") located in Shelby Township, Michigan; and

WHEREAS, Ford and GM are parties to an Amended G&H Landfill Superfund Site Remedial Design/Remedial Action PRP Group Organization Agreement, amended on April 7, 1995 among the signatories to the G&H Consent Decree (the "G&H Group Agreement"), under which each is obligated to pay its allocated share of the costs incurred to fulfill the requirements of the G&H Consent Decree; and

WHEREAS, Ford and GM, among others, are signatories to an Administrative Order by Consent ("AOC") dated September 28, 1993, under which certain of the signatories, including Ford and GM, are obligated to perform removal activities and the O&M at the Commercial Oil Services Site ("COS") located in Oregon, Ohio; and

WHEREAS, Ford and GM are parties to a Site Participation Agreement among the signatories to the COS AOC, effective the same date as the effective date of the COS AOC, under which each is obligated to pay its allocated share of the costs incurred to fulfill the requirements of the COS AOC; and

WHEREAS, Ford and GM, among others, are signatories to a Consent Judgment dated March 24, 1995, under which the signatories are obligated to perform the Remedial Action and the O&M at the Willow Run Creek Area Site ("WRCA") located in Washtenaw County and Wayne County, Michigan; and

WHEREAS, Ford and GM are parties to the WRCA Settlement Agreement dated March 23, 1995 among the signatories to the WRCA Consent Judgment, under which Ford and GM are obligated to pay certain costs incurred to fulfill the requirements of the WRCA Consent Judgment, in accordance with an allocation reached privately between them; and

WHEREAS, Ford and GM have jointly been issued a permit by U. S. EPA Region 5 under the Toxic Substances Control Act (the "TSCA Permit") dated September 26, 1995 with respect to the WRCA Landfill, which was constructed to facilitate fulfillment of the requirements of the WRCA Consent Judgment; and

WHEREAS, Ford and GM anticipate that they will be signatories to a Partial Consent Decree currently being negotiated with the United States Department of Justice, under which Ford will be obligated to perform the Remedial Action at the Krejci Dump Site in Summit County, Ohio and GM will be obligated to provide limited financial assistance to Ford for the purpose of funding performance of the work under the Consent Decree; and

WHEREAS, remedy construction activities at G&H, COS, and WRCA (collectively, the "Sites") have been completed; and

WHEREAS, Ford and GM wish to avoid a duplication of legal and technical efforts in handling the oversight and administrative activities associated with the O&M at the Sites, and GM wishes to establish the terms under which it will fulfill its obligations under the Partial Consent Decree with respect to the Krejci Dump Site;

NOW, THEREFORE, the parties agree as follows:

1. As of the effective date of this Agreement, Ford will assume the responsibilities of GM under the G&H Consent Decree and the G&H Group Agreement.

2. Ford covenants not to sue and will defend and indemnify GM against claims for the enforcement of GM's obligations under the G&H Consent Decree and the G&H Group Agreement.

3. GM will assume the responsibilities of Ford under (a) the COS AOC and the COS Site Participation Agreement and (b) the WRCA Consent Judgment and, except as provided in Paragraph 5 below, the WRCA Settlement Agreement.

4. GM covenants not to sue and will defend and indemnify Ford against claims for the enforcement of Ford's obligations under the COS AOC, the COS Site Participation Agreement, the WRCA Consent Judgment and, to the extent such claims are related to the WRCA and except as provided in Paragraph 5 below, the WRCA Settlement Agreement.

5. Notwithstanding Paragraphs 3 and 4 above, Ford will be entitled to receive its share of future payments to be made by YCUA and Ypsilanti Township in accordance with the provisions of Section II.C.3 of the WRCA Settlement Agreement, and Ford will remain obligated to pay its share of compensation (if any such compensation is found to be owing) to Wayne County in accordance with the provision of Section II.D.5 of the WRCA Settlement Agreement.

6. Ford and GM will, as soon as reasonably possible following the effective date of this Agreement, petition U. S. EPA for modification of the TSCA permit, requesting that GM be named as the sole permittee. In any event, following the effective date of this Agreement, Ford will have no further obligations under the TSCA permit, and GM will defend and indemnify Ford against any claims for the enforcement of the parties' obligations under the TSCA permit. Ford and GM will cooperate as necessary during the permit modification process.

7. Based on the current "present value" estimates (assuming a 3% annual inflation rate and a 7% discount factor) of each party's future costs to fulfill its O&M obligations, including administrative and oversight costs, with respect to the Sites as detailed in Attachments A, B and C hereto prepared by Conestoga-Rovers & Associates and Engineering Management Inc., the estimated costs of GM's liabilities that Ford is assuming exceed the estimated costs of Ford's liabilities that GM is assuming by the amount of $40,000. Accordingly, GM will pay such difference to Ford within 30 days of the effective date of this Agreement.

8. Ford and GM understand that the actual future costs for O&M, including administrative and oversight costs, at each of the Sites may be higher or lower than the estimated costs. Nevertheless, each party waives the right to seek redress based on differences between estimated and actual O&M, administrative and oversight costs at the Sites.

9. Notwithstanding the foregoing, neither Ford nor GM assume the responsibilities of the other, and each reserves its rights, with respect to matters outside the scope of the work required under the

G&H Consent Decree, the COS AOC and the WRCA Consent Judgment, including, without limitation (a) claims for natural resource damages and (b) third party personal injury, property damage, or other "toxic tort" claims.

10. Within 60 days after entry of the Partial Consent Decree with respect to the Krejci Dump Site, GM will pay to Ford the amount of $500,000, provided that such Consent Decree includes Covenants Not to Sue and Contribution Protection provisions substantially in the form attached hereto as Attachment D.

11. Upon payment of the $500,000, Ford will assume all responsibilities of GM under the Partial Consent Decree. In addition, Ford covenants not to sue and will defend and indemnify GM against claims for the enforcement of GM's obligations under the Partial Consent Decree or for costs of "Response" or "Natural Resource Damages" (as those terms are defined by CERCLA) arising from the Krejci Dump Site.

12. Each party reserves its rights of contribution, under applicable laws, against third parties with respect to the Sites.

13. This Agreement will be binding upon the subsidiaries, affiliates, successors and assigns of Ford and GM. No assignment or delegation of any obligation herein will release the assigning party without the prior written consent of the other party.

14. Neither Ford or GM, nor any representative or counsel of Ford or GM, has acted as counsel for the other party with respect to such party's entering into this Agreement, and each party represents that it has sought and obtained any appropriate legal advice it deems necessary prior to entering into this Agreement.

15. For purposes of enforcement or interpretation of the provisions of this Agreement, the parties agree that the laws of the State of Michigan will be applicable, except to the extent federal law will apply to questions arising under the Comprehensive Environmental Response, Compensation and Liability Act, as amended ("CERCLA"), or the National Contingency Plan promulgated thereunder, and further agree not to contest personal jurisdiction in the state or federal courts of Michigan with respect to litigation brought for such purposes.

16. This Agreement may be executed in two counterparts, each of which will be deemed an original, but both of which together will constitute one and the same instrument.

17. Nothing herein will be deemed to create a partnership or joint venture and/or principal and agent relationship between the parties.

IN WITNESS WHEREOF, the parties enter into this Agreement. Each person signing this Agreement represents and warrants that he or she is duly authorized to enter into this Agreement on behalf of the respective corporation.

**FORD MOTOR COMPANY**                **GENERAL MOTORS CORPORATION**

By: _____         By: _____
        Thomas DeZure                          Don A. Schiemann

Its: _____         Its: _____ATTORNEY_____
        Assistant Secretary

Date: _____AUG 15 2001_____        Date: ___AUGUST 15, 2001_____