HEARING DATE AND TIME: March 29, 2011 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: March 22, 2011 at 4:00 p.m. (Eastern Time)

George W. Shuster, Jr.
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Telephone: 212.937.7232
Facsimile: 212.230.8888
george.shuster@wilmerhale.com
*Attorneys for Waste-Stream, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------x
In re                                                  :    Chapter 11 Case No.
                                                       :
MOTORS LIQUIDATION COMPANY, et al.,                    :    09-50026 (REG)
        f/k/a General Motors Corp., et al.,            :
                                                       :
                        Debtors.                       :    (Jointly Administered)
                                                       :
-------------------------------------------------------x
```

**RESPONSE OF WASTE-STREAM, INC.
TO DEBTORS' 209TH OMNIBUS OBJECTION TO CLAIMS
(as to Claim Number 66754)**

_____

Waste-Stream, Inc. ("Waste-Stream"), by and through its undersigned attorneys, hereby submits its response (the "Response") to the Debtors' 209th Omnibus Objection to Claims [Docket No. 8946] (the "Omnibus Objection") with respect to Claim Number 66754. As grounds for this Response, Waste-Stream states as follows:[1]

**BACKGROUND**

1.   On November 30, 2009, Waste-Stream filed a claim against Motors Liquidation Company (the "Debtor" and, together with its affiliated debtors in the above-captioned Chapter 11

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to such terms in the Omnibus Objection. To avoid repetition, Waste-Stream has focused this Response on the aspects of the Omnibus Objection most relevant to its claim. Other claimants have also filed responses to the Omnibus Objection (and to the Debtors' similar 208th Omnibus Objection) on other grounds that are also applicable to the Waste-Stream Claim, and Waste-Stream hereby adopts those grounds and incorporates them herein by reference.

Case, the "Debtors") for up to $30,920,000 in damages to property owned by Waste-Stream in Potsdam, New York, and contaminated by the Debtor (the "Potsdam Property"), which claim was assigned number 66754 (the "Waste-Stream Claim").[2]

2.  In the over two years following the filing of the Waste-Stream Claim, the Debtor has never contested the underlying basis for the Waste-Stream Claim—that the Debtor's hazardous substances contaminated the Potsdam Property. Nor has the Debtor engaged with Waste-Stream in any substantive discussion regarding the basis, scope, or details of the Waste-Stream Claim.

3.  However, through the Omnibus Objection, filed on January 28, 2011, the Debtors have made the unsupported, blanket statement that the Waste-Stream Claim should be disallowed in full solely on the basis of Section 502(e)(1)(B) of the Bankruptcy Code. While the Debtors purport to reserve rights to object to the Waste-Stream Claim on grounds of "duplication" or other grounds apart from Section 502(e)(1)(B), the Debtors make no arguments in respect of any other grounds, and Waste-Stream reserves all of its rights in respect of any such further objection or any such other grounds. With respect to the Debtors' Section 502(e)(1)(B) argument, the Omnibus Objection contains no specific factual support whatsoever and provides no description or consideration of the basis, scope, or details of the Waste-Stream Claim in particular.

## GROUNDS FOR RESPONSE

**A.    The Waste-Stream Claim, on its Face, Cannot Be Wholly Subject to Section 502(e)(1)(B).**

4.  First, the Omnibus Objection should be overruled in respect of the Waste-Stream Claim because the Omnibus Objection fails to state any facts that would permit the Court to determine that the Waste-Stream Claim in particular is wholly within the parameters of Section 502(e)(1)(B) of the Bankruptcy Code. To the contrary, both the text and the amount stated on the face of the Waste-Stream Claim demonstrate, *prima facie*, that even if a portion of the Waste-Stream Claim were deemed

---

[2] A copy of the Waste-Stream Claim is attached hereto as Exhibit A.

to meet the criteria of Section 502(e)(1)(B), other portions of the Waste-Stream Claim are necessarily outside the scope of Section 502(e)(1)(B).[3]

5. As a textual matter, the Waste-Stream Claim expressly states that it includes a claim for "all direct, indirect, nominal, and consequential damages, interests, costs, attorneys' fees and other amounts owed or owing to it, whether liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured" related to the Debtor's contamination of the Potsdam Property. *Waste-Stream Claim* at p. 2, ¶ 5. The Debtors' assertion that the Waste-Stream Claim should be disallowed on the basis that it is a claim for "reimbursement or contribution" of an entity "that is liable with the debtor" to a third party is plainly inconsistent with these explicit words of the Waste-Stream Claim itself.[4] While the Waste-Stream Claim includes certain grounds that might, under some circumstances, meet the criteria of Section 502(e)(1)(B), the Waste-Stream Claim clearly states that its scope is broader than the criteria set forth in Section 502(e)(1)(B). Specifically, Waste-Stream asserts that the Debtor is "directly" liable to it for damages related to the Debtor's contamination of the Potsdam Property owned by Waste-Stream. It is beyond doubt that such a direct claim is outside the "reimbursement or contribution" and "co-liability" requirements of Section 502(e)(1)(B).

6. In addition, the amount of the Waste-Stream Claim—up to $30,920,000—far exceeds the amount for which Waste-Stream and the Debtor might be "co-liable" to a third party. The third party to whom Waste-Stream and the Debtor might be co-liable for damages to the Potsdam Property is the New York State Department of Environmental Conservation ("NYSDEC"). While NYSDEC would likely assert that each of Waste-Stream and the Debtor (and other responsible parties) are jointly and severally liable (and therefore co-liable) to NYSDEC for all of its claims for remediation of the

---

[3] Pursuant to Fed. R. Bankr. P. 3001(f), the Waste-Stream Claim constitutes *prima facie* evidence of the validity and amount of the claim, and the Debtors' Omnibus Objection does not satisfy the Debtors' burden to refute such evidence.
[4] The Debtors and Waste-Stream agree that Section 502(e)(1)(B) contains three basic requirements that are relevant here, all of which must be satisfied to permit disallowance: (1) that the claim is for "reimbursement or contribution," (2) that the claimant is "liable with the debtor" to a third party in respect of the claim, and (3) that the claim is "contingent."

Potsdam Property, the amount of that co-liability remains uncertain. Two potentially relevant figures are available: (a) the $4,279,489.53 face amount of the claim filed by NYSDEC against the Debtor related to the Potsdam Property (the "NYSDEC Claim")[5] and (b) the $12,130,000 estimated clean-up costs for the Potsdam Property as stated by the NYSDEC on page 9 of its February 2011 Proposed Remedial Action Plan for the site, a copy of which is attached hereto as Exhibit B (the "Proposed Remedial Action Plan"). If the Debtor is only liable to NYSDEC for $4 million, $12.1 million, or any like amount, then it is logically impossible that the Debtor and Waste-Stream could be "co-liable" to NYSDEC for the entire $31 million amount of the Waste-Stream Claim. As a result, on the record before the Court and on the basis of available facts, it is impossible to determine that the entire Waste-Stream Claim is subject to disallowance under Section 502(e)(1)(B).

7.   It is troubling that the Debtors have asked the Court to disallow the Waste-Stream Claim in full on the sole basis that the prior Bench Decisions issued by the Court on Section 502(e)(1)(B) are allegedly "directly on point and controlling *in most respects*;" because claims at issue in the Omnibus Objection "*generally are the same type* of private party claims disallowed by this Court in the Bench Decisions;" and because a "*similar conclusion* with respect to disallowing the Contribution Claims" is required in this case. *Omnibus Objection* at ¶ 1 (emphasis added). At a minimum, the Debtors should be required to make a showing that the Bench Decisions *are wholly controlling* as to the Waste-Stream Claim *in all respects*, that the Waste-Stream Claim is *exactly the same type* of claim as at issue in the Bench Decisions in all material respects, and that a *conclusion identical to that in the Bench Decisions* applies to, and should be ordered in respect of, the entire Waste-Stream Claim. The Debtors have not even approached such a showing in respect of the Waste-Stream Claim.

---

[5] This claim, assigned number 50831, is expressly referenced in the Omnibus Objection as allegedly "surviving" any disallowance of the Waste-Stream Claim. A copy of the initial page of this claim is attached hereto as Exhibit C.

- 4 -

8.  Argument by vague and defective analogy cannot support disallowance of a $31 million claim, and, in fact, there are specific facts in this case—such as Waste-Stream's status as owner of the Potsdam Property—that make any such analogy inappropriate. In addition to the foregoing, Waste-Stream also contends that its status as owner of a property for which a Proposed Remedial Action Plan has been issued, and for which a remediation cost of over $12.1 million has been determined, invalidates any argument that up to $12.1 million of the Waste-Stream Claim is "contingent" for Section 502(e)(1)(B) purposes. Waste-Stream's ownership of the Potsdam Property makes its connection to the damages caused by the Debtor anything but "contingent."

**B.      Application of the Section 502(e)(1)(B) Criteria to the Waste-Stream Claim Is Premature.**

9.  While it is clear that not all of the Waste-Stream Claim could be subject to disallowance under Section 502(e)(1)(B), it is not immediately apparent how the Court could presently determine what portion of the Waste-Stream Claim might be subject to Section 502(e)(1)(B), and what portion is not. This is true primarily because in order to determine "co-liability" of the Debtor and Waste-Stream under Section 502(e)(1)(B), the Court must first determine the extent of the "liability" to the NYSDEC for which there could be "co-liability." If, for example, the NYSDEC Claim were allowed in full for its face amount of $4,279,489.53, and if the Court were to then determine that the Waste-Stream Claim should be disallowed to the extent of such $4,279,489.53 on Section 502(e)(1)(B) grounds, the Court could only then determine whether the amount of Waste-Stream's other and additional claims, up to $26,640,510.47, should be allowed or disallowed.

10. Moreover, an order disallowing the Waste-Steam Claim in full now would unduly prejudice Waste-Stream and could result in a potential windfall to the Debtors. Suppose, *arguendo*, that the Waste-Stream Claim were disallowed now solely on the basis that it is alleged to be, in whole, a contribution claim for contingent amounts for which the Debtor and Waste-Stream might be co-liable to the NYSDEC. The Debtors could then object to the NYSDEC Claim and, if that objection were

- 5 -

successful—in other words, if the NYSDEC Claim were also disallowed in full—then the Debtor would skirt liability to both Waste-Stream and NYSDEC for environmental damage to the Potsdam Property. That result would pervert the purpose of Section 502(e)(1)(B), which is to protect a debtor from double-liability for the same amount—not to give the debtor a "free pass" from liability on that amount altogether.

11.     Therefore, if the Debtors desire to object to claims for liability in respect of the Potsdam Property, all such claims must be resolved together, at the same time, in the same proceeding.

C.     **The Court Should Expressly Reserve Rights of Waste-Stream Against Third Parties.**

12.     As described above, Waste-Stream believes that disallowance of the Waste-Stream Claim on Section 502(e)(1)(B) grounds is improper and that a decision on the Omnibus Objection is premature. However, whether the Court allows or disallows all or any part of the Waste-Stream Claim at this time, the Court should simultaneously and expressly reserve all of Waste-Stream's rights against all private and public parties other than the Debtors. Any determination of the Waste-Stream Claim against the Debtor has no effect upon the rights, claims, and defenses of Waste-Stream against other parties responsible for contamination of the Potsdam Property and governmental entities, such as NYSDEC, with oversight of the Potsdam Property. Therefore, any determination of the Waste-Stream Claim should be without prejudice to all rights, claims, and defenses of Waste-Stream, including, without limitation, its right to assert that any failure of a private or public party to collect any amount from the Debtors in respect of the Potsdam Property will in no way increase any liability that Waste-Stream would otherwise have in respect of the Potsdam Property. For the avoidance of doubt, Waste-Stream believes any order on the Waste-Stream Claim should contain language to this effect.

**WHEREFORE**, Waste-Stream hereby requests that the Court overrule the Omnibus Objection in respect of the Waste-Stream Claim, expressly reserve all rights, claims, and defenses of Waste-

Stream against all private and public parties other than the Debtors, and order such other and further relief as the Court deems just and equitable.

Dated: March 22, 2011

WASTE-STREAM, INC.,
By its attorneys,

 /s/ George W. Shuster, Jr.
George W. Shuster, Jr.
WILMER CUTLER PICKERING
HALE AND DORR LLP
399 Park Avenue
New York, New York 10022
Telephone: 212.937.7232
Facsimile: 212.230.8888
george.shuster@wilmerhale.com