**Hearing Date and Time: March 29, 2011 at 9:45 a.m. (Eastern Time)**
**Response Deadline: March 22, 2011 at 4:00 p.m. (Eastern Time)**

**LOWENSTEIN SANDLER PC**
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
Tel:    (973) 597-2500
Fax:    (973) 597-2400

**JACKSON WALKER L.L.P.**
Jeffrey G. Hamilton, Esq.
Heather M. Forrest, Esq.
901 Main Street, Suite 6000
Dallas, Texas 75202
Tel:    (214) 953-6000
Fax:    (214) 953-5822

*Attorneys For Flowserve Corporation f/k/a The Duriron Company*

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Motors Liquidation Company, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No:  09-50026 (REG)<br><br>(Jointly Administered) |

## FLOWSERVE CORPORATION f/k/a THE DURIRON COMPANY'S RESPONSE TO DEBTORS' 208TH OMNIBUS OBJECTION TO CLAIMS (CONTINGENT CO-LIABILITY CLAIMS) (DOCKET NO. 8945)

## TABLE OF CONTENTS

**PAGES**

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT.................................................................................. 1

THE FLOWSERVE CLAIMS AND THE CLAIM OBJECTION................................ 2

A.    Flowserve's Claims................................................................................... 2

     (1)    Actual Out Of Pocket Costs And Expenses Paid By Flowserve............................ 5

     (2)    The FFO And RIFS Related Expenses for the Valleycrest Site. ........................... 6

     (3)    Remediation Cost Expenses.................................................................. 6

D.    The Claim Objection. ............................................................................... 7

ARGUMENT ........................................................................................................... 7

A.    *Lyondell* And *Chemtura* Are Inapposite And Provide No Support For The Claim Objection. ................................................................................................. 7

B.    11 U.S.C. § 502(e)(1)(B) Does Not Apply To Flowserve's Proofs Of Claim. .................. 9

CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

**Pages**

CASES

*In re All Media Properties, Inc.*,
 5 B.R. 126 (Bankr. S.D. Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir. 1981) (*per curiam*) ......... 11

*In re Chemtura Corporation, et al.*,
 No. 09-11233, 2011 WL 109081 (Bankr. S.D.N.Y., Jan. 13, 2011) ..........................1, 7, 8, 12

*Fine Organics Corp. v. Hexcel Corporation (In re Hexcel Corp.)*,
 174 B.R. 807 (Bankr. N.D. Calif. 1994) ........................................................................10, 11

*In re Lyondell Chemical Company, et al.*,
 No. 09-10023, 2011 WL 11413 (Bankr. S.D.N.Y. 2011, Jan. 4, 2011) ..... 1, 7, 8, 9, 10, 11, 12

*In re New York Trap Rock Corporation, et al.*,
 153 B.R. 648 (Bankr. S.D.N.Y. 1993) .................................................................................. 9

*In re RNI Wind Down Corp.*,
 369 B.R. 174 (Bankr. D. Del. 2007) .................................................................................. 11

*In re Touch America Holdings, Inc.*,
 381 B.R. 95 (Bankr. D. Del. 2008) .................................................................................... 11

STATUTES

11 U.S.C. § 502(e)(1)(B) ........................................................................................ 1, 7, 9, 10, 13

Flowserve Corporation f/k/a The Duriron Company ("**Flowserve**"), by its undersigned counsel, files this response (the "**Response**") to the above-captioned Debtors' 208th Omnibus Objection to Claims (Contingent Co-Liability Claims) (Docket No. 8945) (the "**Claim Objection**").  In support of this Response, Flowserve respectfully states as follows:

## PRELIMINARY STATEMENT

1.    The Debtors incorrectly rely on two cases previously decided by this Court, *Chemtura* and *Lyondell*, to argue that Flowserve's proofs of claim (defined below) should be disallowed pursuant to 11 U.S.C. § 502(e)(1)(B) because it is a contingent, co-liability claim. However, the facts of those cases are clearly distinguishable from the facts here, and those cases are therefore inapposite.  Flowserve's Proof of Claim is based on the Debtors' breach of a prepetition agreement.  Flowserve is not seeking to enforce or collect on a general agreement that apportions liability for environmental damages.  Nor has Flowserve asserted a statutory claim for contribution under CERCLA (defined below) or any other statute.  The Debtors in these cases entered into a contract to assume Flowserve's liabilities, and therefore the Debtors alone are responsible for Flowserve's environmental costs.  The Debtors and Flowserve are not co-liable to the United States Government, or any other entity, for the obligations set forth in the Settlement Agreements (defined below).  Flowserve paid the Debtors $254,000, as well as other valuable consideration, to assume its liability.  Moreover, the Debtors' liability is not contingent on any future act or circumstances.  The liability was fixed by the Settlement Agreements.  Only the amount needs to be determined.  The proofs of claim Flowserve timely filed against the Debtors are for breach of contract only, not for common law or statutory indemnification or contribution.

2.    Because the Debtors and Flowserve are not co-liable on the debt and the debt is not a contingent liability of the Debtors, 11 U.S.C. § 502(e)(1)(B) of the Bankruptcy Code is not applicable and the Claim Objection should be overruled.

## THE FLOWSERVE CLAIMS AND THE CLAIM OBJECTION

**A.      Flowserve's Claims.**

3.      Flowserve and the Debtors are parties to multiple contracts pursuant to which the Debtors assumed liability for cleanup costs at two separate sites. The first is generally referred to as the Valleycrest Landfill Site and the second is generally referred to as the Cardington Road Landfill.  Flowserve filed claims for damages it incurred when the Debtors' breached these contracts, which are described in greater detail below.

**B.      The Valleycrest Landfill Site.**

4.      The Valleycrest Landfill Site Group ("**VLSG**") is comprised of a group of potentially responsible parties ("**PRPs**") who are potentially liable under the Comprehensive Environmental Response Compensation and Liability Act of 1980, as amended ("**CERCLA**") for the conditions of the North Sanitary Landfill Superfund Site (the "**Valleycrest Site**") in Dayton, Ohio.  On January 21, 1995, the Ohio Environmental Protection Agency (the "**Ohio EPA**") issued a *Director's Final Findings and Orders* (the "**FFO**") with respect to the Site.  The FFO provides for the evaluation and development of a Remedial Investigation and Feasibility Study (the "**RIFS**") for the Site.

5.      In order to carry out the terms and conditions of the FFO and perform the RIFS, the original VLSG members entered into (i) the Valleycrest Landfill Site Participation Agreement, dated January 12, 1995, as amended by that certain First Amended Valleycrest Landfill Site Participation Agreement, dated May 22, 1998 (the "**Original Valleycrest Agreement**"), (ii) the Valleycrest Landfill Site Governmental Entity Participation Agreement, dated on or about January 5, 1999 (the "**Second Valleycrest Agreement**"), and (iii) the Amendment to the Second Agreement and the Original Agreement, dated on or about May 2000 (the "**Master Valleycrest Amendment**") (the Original Valleycrest Agreement, the Second Valleycrest Agreement, and the Master Valleycrest Amendment are referred to, collectively, as the "**VLSG Participation Agreements**").  The VLSG Participation Agreements are attached as

Exhibit A-2 to the proofs of claim filed by Flowserve based on the Valleycrest Site.

6.      The VLSG Participation Agreements allocated a percentage share of the costs and expenses in developing the RIFS and performing the subsequent remediation to each member of VLSG.  General Motors Corporation, now known as Motors Liquidation Company, *et al*. (the "**Debtors**" or "**GM**") and Flowserve are members of the VLSG and parties to the VLSG Participation Agreements.  Pursuant to the VLSG Participation Agreements and specifically, the Master Valleycrest Amendment, Flowserve's allocated percentage of the costs related to the Valleycrest Site was 3.375%.

7.      After entering into the VLSG Participation Agreements, on or about August 31, 2001, GM and Flowserve entered into a separate and independent Settlement Agreements (the "**Valleycrest Settlement Agreements**").  Pursuant to the terms of the Valleycrest Settlement Agreements, GM assumed all of Flowserve's responsibilities under the VLSG Participation Agreements.  Flowserve agreed to pay -- and did pay -- to GM the sum of $254,000 and transferred other valuable consideration in the form of credits and litigation recoveries in exchange for GM's assumption of Floweserve's allocated liability.  GM has not refunded, repaid or transferred back any amounts or rights it received from Flowserve under the VLSG Settlement Agreements.

**C.      The Cardington Road Landfill Site.**

8.      The Cardington Road Site Group ("**CRSG**") is also comprised of a group of PRPs who are potentially liable under CERCLA for the conditions of the Cardington Road/Sanitary Landfill Company Superfund Site in Moraine, Ohio (the "**Cardington Site**" and together with the Valleycrest Site the "**Sites**").  On March 15, 1996 the CRSG entered into a Site Participation Agreement to govern the performance and allocation of costs of the CRSG pursuant to a Consent Decree for performance of remedial action approved by the United States District Court (the "**CRSG Participation Agreement**", together with the VLSG Participation Agreements the "**Participation Agreements**").  The CRSG Participation Agreement is attached as Exhibit A-2 to Flowserve's Cardington proof of claim based on the Cardington Site.

9.      The CRSG Participation Agreement allocated a percentage share of the costs and expenses in performing the subsequent remediation to each member of CRSG.  The Debtors and Flowserve are members of the CRSG and parties to the CRSG Participation Agreement and Flowserve's allocated percentage of the costs related to the Cardington Site was .6451%.  Flowserve and the Debtors previously funded certain environmental response activities at the Cardington Road Site and remedial construction was completed.  In addition, long-term operation and maintenance has begun at the Cardington Site.

10.      After entering into the CRSG Participation Agreement, on or about March 2, 2001, GM and Flowserve entered into a separate and independent Settlement Agreement (the "**Cardington Settlement Agreement**", together with the Valleycrest Settlement Agreements, the "**Settlement Agreements**").  Pursuant to the terms of the Cardington Settlement Agreement, GM assumed all of Flowserve's responsibilities under the CRSG Participation Agreement.  Flowserve agreed to pay -- and did pay -- to GM the sum of $24,578.00 and transferred other valuable consideration in the form of credits and litigation recoveries in exchange for GM's assumption of Floweserve's allocated liability under the CRSG Participation Agreement.  GM has not refunded, repaid or transferred back any amounts or rights it received from Flowserve under the Cardington Settlement Agreement.

**D.      The Proofs of Claims.**

11.      GM has breached the terms of the Settlement Agreements by failing to pay amounts due under the terms of those contracts.  As a result of GM's breach of the Settlement Agreements and the damages caused by such breach, on November 25, 2009, Flowserve timely filed its proofs of claim in the respective amounts of $1,952,731.07 for the Valleycrest Site and $33,178.84 for the Cardington Site, which appear as claims numbered 47998 and 47997 on the Debtors' claims register (together, the "**Proofs of Claim**").  True and correct copies of the Proofs of Claim (including all attachments thereto) are attached hereto as **Exhibit A**.  The Debtors' breach of the Settlement Agreements forms the basis of the claims set forth in the Proofs of Claim, not any potential co-liability under the Participation Agreements or by statute that may be

-4-

due and owing to a governmental entity or any other third party.  The amounts claimed in the Proofs of Claim were calculated as follows:

**(1)     Actual Out Of Pocket Costs And Expenses Paid By Flowserve.**

12.     During the term of the Participation Agreements, each of the parties were issued periodic assessments by De Maximis, the VLSG and CRSG Coordinator of the Site work, to cover the costs and expenses (as defined in the Participation Agreements) incurred in connection with complying with the FFO, RIFS and the Participation Agreements.  Assessments have been issued to and paid by Flowserve.  Specifically, as of the date that Flowserve filed the Proofs of Claim, it had paid $9,401.00 (invoice dated May 8, 2009), $10,588.00 (invoice dated July 22, 2009), and $10,085.00 (invoice dated October 28, 2009) for a total of $30,074.00 under the VLSG Participation Agreement, for which the Debtors are liable to Flowserve only pursuant to the VLSG Settlement Agreements.  Copies of those invoices are attached to Flowserve's Proof of Claim number 47998 (Exhibit A hereto) as Exhibit A-3.

13.     After filing the Proofs of Claim, Flowserve received and paid additional assessments for the Valleycrest Site as follows:

(i)      $3,219.00 (invoice dated January 15, 2010);

(ii)     $8,460.00 (invoice dated April 7, 2010);

(iii)    $6,023.00 (invoice dated July 8, 2010);

(iv)     $3,622.00 (invoice dated September 21, 2010);

(v)      $13,111.00 (invoice dated January 5, 2011); and

(vi)     $6,911.00 (invoice dated March, 2011).

In addition to the amounts paid for the Valleycrest Site, Flowserve received and paid an invoice in the amount of $1,230.00 by De Maximis for costs at the Cardington Site.  Accordingly, as of the date of this Response, Flowserve has paid a total of $72,650.00 for which the Debtors are

responsible pursuant to the Settlement Agreements.  Copies of these additional invoices are attached hereto as **Exhibit B**.[1]

      (2)      **The FFO And RIFS Related Expenses for the Valleycrest Site.**

      14.      In addition, the VLSG, pursuant to the FFO, RIFS and the VLSG Participation Agreements, is required to complete the FFO, the RIFS and all related work.  The VLSG has estimated that this work will be completed by February 2012 at a total cost of $1,032,617.[2]  Flowserve's share of these costs, applying the 3.375% allocation pursuant to the VLSG Participation Agreements, was $34,850.82 at the time the proof of claim was filed.[3]  Pursuant to the Settlement Agreements, Flowserve has a claim against the Debtors for these costs.

      (3)      **Remediation Cost Expenses.**

      15.      After completion of the RIFS, FFO, and related work, a remedy will be selected for the Valleycrest Site, which will be implemented at the Valleycrest Site.  According to the VLSG, the estimated cost of implementing a remedy at the Valleycrest Site will be $55,935,000 (the "**VLSG Remediation Cost Estimate**").  Flowserve's share of the VLSG Remediation Cost Estimate, applying the 3.375% allocation pursuant to the VLSG Participation Agreements, is $1,887,806.25.  Pursuant to the VLSG Settlement Agreements, the Debtors are responsible to Flowserve for these costs.

      16.      Similarly, the CRSG has estimated the cost of completion of the work at the Cardington Site at a cost of $5,143,209.00 (the "**CRSG Remediation Cost Estimate**").  Flowserve's share of the CRSG Remediation Cost Estimate, applying the .6451% allocation

---

[1]      A copy of the March 2011 invoice will be attached as a supplemental filing because it has not yet been received.

[2]      The basis for this amount is set forth in the VLSG's proof of claim.

[3]      As discussed above, additional expenses in the amount of $71,420 have been incurred and paid by Flowserve in connection with the FFO, RIFS and related work.  Accordingly, the actual out of pocket expenses incurred by Flowserve have exceeded the estimates included in the poof of claim.

pursuant to the CRSG Participation Agreement, is $33,178.84.  Pursuant to the CRSG Settlement

Agreement, the Debtors are responsible to Flowserve for these costs.

**D.      The Claim Objection.**

17.     On January 28, 2011, GM filed the Claim Objection, wherein GM argues

that Flowserve's Proofs of Claim should be disallowed pursuant to 11 U.S.C. § 502(e)(1)(B)

because they are contingent, co-liability claims for contribution or reimbursement.  GM has not

disputed or contested Flowserve's right to an allowed claim and distribution based upon the

actual out of pocket expenses Flowserve has paid, nor has GM disputed the calculations of the

amount of the Proofs of Claim.

18.     The   Claim   Objection   should   be   overruled   because   GM   has

mischaracterized the basis of Flowserve's claims.  There is no co-liability to any third party

(including but not limited to government entities) on the part of GM and Flowserve related to

obligations assumed by Flowserve under the Settlement Agreements.  GM and Flowserve are not

co-liable to anyone with respect to Flowserve's obligation under the Participation Agreements.

Because co-liability on the claims does not exist, 11 U.S.C. § 502(e)(1)(B) does not apply, the

Claim Objection should be overruled and the Proofs of Claim should be allowed.  Moreover, the

debt is not contingent; the Debtors' liability to Flowserve is fixed by the Settlement Agreements.

## ARGUMENT

**A.      *Lyondell* And *Chemtura* Are Inapposite And Provide No Support For The Claim
        Objection.**

19.     The Claim Objection relies heavily upon two prior decisions issued by this

Court: (1) *In re Lyondell Chemical Company, et al.*, No. 09-10023, 2011 WL 11413 (Bankr.

S.D.N.Y. 2011, Jan. 4, 2011) ("**_Lyondell_**"); and (2) *In re Chemtura Corporation, et al.*, No. 09-

11233, 2011 WL 109081 (Bankr. S.D.N.Y., Jan. 13, 2011) ("**_Chemtura_**").   Copies of the

*Lyondell* and *Chemtura* decisions are attached hereto as **Exhibit C**.  There are significant

relevant factual differences in each those cases, rendering them distinguishable and not

controlling in this case.

20.    <u>First</u>, in both *Chemtura* and *Lyondell*, governmental agencies had filed claims seeking payment for the same claims that the creditors had asserted, which raised not only a possible but an actual risk of a duplicative payments by the debtors on the same claims.  *See Lyondell*, 2011 WL 11413 at *13; *Chemtura*, 2011 WL 109081 at *2.  Here, no governmental entity, or any other party, has filed or can file a claim related to the payments sought by Flowserve in its Proofs of Claim.  GM's argeement with the government with respect to the Valleycrest Landfill Site relates to GM's liability under the VLSG Participation Agreements, not GM's liability to Flowserve under the VLSG Settlement Agreements.

21.    <u>Second</u>, the governmental agencies involved in the *Lyondell* and *Chemtura* cases had already entered into binding agreements with the debtors related to the remediation at issue in those cases.  *See Lyondell*, 2011 WL 11413 at *14; *Chemtura*, 2011 WL 109081 at *1.  Here, GM has not entered into any agreements with governmental entities for the cleanup of the Sites or for any related matter that touches upon the obligations of GM to Flowserve set forth in the Settlement Agreements.

22.    <u>Finally</u>, the creditors' theories of recovery in *Lyondell* and *Chemtura* were based upon the anticipated increase in allocated percentages of liability they would be responsible for if the debtors failed to fulfill their obligations under CERCLA.  *See Lyondell*, 2011 WL 11413 at *13; *Chemtura*, 2011 WL 109081 at *2.  As this Court has ruled, "this is the essence of co-liability."  *Lyondell*, 2011 WL 11413 at *13.  Flowserve's claim is <u>not</u> a claim for reimbursement for a potential increased allocation of responsibility.  It is instead a <u>contractual claim</u> whereby GM agreed to be responsible to Flowserve only for Flowserve's share of the liability in consideration of a cash payment and other valuable consideration from Flowserve.  Flowserve is not and has not filed a claim for any increase in its share of liability due to the failure of GM to satisfy its obligations under the Participation Agreements.  Flowserve's Proof of Claim is limited to the cost allocations that the Debtors agreed to pay pursuant to the Settlement Agreements.

23.    Accordingly,  the  Debtors'  reliance  on  *Lyondell*  and  *Chemtura*  is

misplaced, and the Proofs of Claim should be allowed.

**B.      11 U.S.C. § 502(e)(1)(B) Does Not Apply To Flowserve's Proofs Of Claim.**

24.      11 U.S.C. § 502(e)(1)(B) provides that "the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on … the claim of a creditor, to the extent that … such claim for reimbursement or contribution is contingent as of the time of the allowance or disallowance of such claim for reimbursement or contribution…." 11 U.S.C. §502(e)(1)(B).    Courts interpreting this provision have generally held that three elements must be present before a claim will be disallowed.    Specifically:

(1) the claim must be contingent at the time it is allowed or disallowed;

(2) the claim must be for reimbursement or contribution; and

(3) the claimant must be co-liable with the debtor.

*Lyondell*, 2011 WL 11413 at *15.

25.      If any one of these elements is missing, 11 U.S.C. § 502(e)(1)(B) does not apply and the claim should not be subject to disallowance.  Here, the debt is not contingent and the Debtors and Flowserve are not co-liable.  As this Court noted in *Lyondell*, the purpose of this section of the Bankruptcy Code is to protect a debtor from the risk of duplicative payments on the same underlying claim.  *See id*.  Moreover, when the risk of duplicative liability on the debtor's part for a claim does not exist, 11 U.S.C. § 502(e)(1)(B) does not apply.  *See In re New York Trap Rock Corporation, et al.*, 153 B.R. 648, 651 (Bankr. S.D.N.Y. 1993).  In other words, direct actions against a debtor, not actions for contribution for joint and several liability, should not be disallowed under 11 U.S.C. § 502(e)(1)(B).  *Id*.

26.      Flowserve's Proofs of Claim are not claims for contribution or reimbursement under CERCLA or any other law or instrument whereby parties have agreed to allocate their percentage of liability.  Instead, they are claims for breach of contract by GM.  The Debtors' liability to Flowserve may be unliquidated but is fixed by virtue of the Settlement Agreements.  The fact that the claims are based upon environmental remediation is irrelevant for

purposes of allowance of the Proofs of Claim.

27.    Although this Court previously held in *Lyondell* that a direct contractual claim should be disallowed under 11 U.S.C. § 502(e)(1)(B) because it was, in substance, a claim for reimbursement, the decision upon which this Court relied is also factually distinguishable from the facts surrounding Flowserve's claims for many of the same reasons that *Lyondell* and *Chemtura* are distinguishable. *See Lyondell,* 2011 WL 11413 at *16, n. 78, *citing Fine Organics Corp. v. Hexcel Corporation (In re Hexcel Corp.)*, 174 B.R. 807 (Bankr. N.D. Calif. 1994).

28.    In *Hexcel*, Fine Organics Corporation ("**Fine Organics**") filed a claim in Hexcel Corporation's bankruptcy case seeking reimbursement for anticipated future remediation costs that it might incur.  Fine Organics' claim was based on an asset purchase agreement it had entered into when purchasing certain real property from Hexcel.  Prior to filing for bankruptcy protection, Hexcel had also executed an administrative consent order with the New Jersey Department of Environmental Protection & Energy (the "**NJDEPE**") pursuant to which Hexcel acknowledged that it was obligated to perform and pay for the remediation.  Fine Organics was not a party to the administrative consent order but the asset purchase agreement stated that Hexcel was obligated to perform all obligations due and owing for remediation under the consent order.  Hexcel had also submitted a cleanup plan and provided a $4 million letter of credit to the NJDEPE as financial assurance of its ability to fund the remediation.  Fine Organics filed a proof of claim in the amount of $7.5 million for future expenses to remediate the site.  Significantly, the bank that issued the $4 million letter of credit filed a surrogate proof of claim on behalf of NJDEPE for the same remediation costs and expenses.  In addition, the NJDEPE had ordered Hexcel to remediate the site.  *See Hexcel*, 174 B.R. at 808.

29.    The *Hexcel* court ruled that Fine Organics' claim should be disallowed under 11 U.S.C. § 502(e)(1)(B) because it was a contingent co-liability claim which, if allowed, would subject Hexcel to duplicate payment on the same liabilities.  *See Hexcel*, 174 B.R. at 812. Importantly the *Hexcel* court noted that had the Fine Organics' claim been allowed to stand, it would compete with the duplicate claim already filed on behalf of the NJDEPE.  *Id.*  In addition,

-10-

unlike GM, Hexcel had already been ordered to remediate the site and the cases upon which the *Hexcel* court relied analyzed direct actions for liability based upon provisions of CERCLA, not contractual obligations that existed between the parties and for which consideration had been paid to the debtor by the claimant.

30.    *Hexcel* is therefore distinguishable and should not be relied upon when deciding whether Flowserve's Proofs of Claim should be disallowed. Although the United States Government and the Ohio EPA have each filed proofs of claims in GM's bankruptcy case, neither has asserted a claim for payment related to Flowserve's obligations and allocated percentage responsibility in connection with the Sites. Nor, upon information and belief, has any other governmental entity filed a claim to collect from the Debtors' estates for the amounts that have been included in Flowserve's Proofs of Claim. Thus there is no risk of payment on duplicate claims because Flowserve's claims are based entirely upon the contractual obligations owing by GM pursuant to the Settlement Agreements and not the Participation Agreements or any statutory liability. There is no co-liability or risk of duplicate claims.

31.    Moreover, the Proofs of Claim do not assert claims for a contingent liability. A claim is contingent where it "has not yet accrued and ... is dependent upon some future event that may never happen." *In re Touch America Holdings, Inc.*, 381 B.R. 95, 107 (Bankr. D. Del. 2008). One frequently cited definition holds that "claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event." *In re All Media Properties, Inc.*, 5 B.R. 126, 133 (Bankr. S.D. Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir. 1981) (*per curiam*). Here, it is beyond cavil that the Debtors are absolutely liable to Flowserve, as set forth in the Settlement Agreements. This case is therefore more analogous to the decision in *In re RNI Wind Down Corp.*, 369 B.R. 174 (Bankr. D. Del. 2007), discussed by this Court in *Lyondell*, in which the claim for the costs of defense was unliquidated but determined not to be contingent. As this Court noted, ". . . the right to advancement was a then-existing right (under the certificate of incorporation, by-laws and Delaware law), subject only to uncertainty at the time as to just how much the defense costs

would turn out to be." *Lyondell*, 2011 WL 11413 at *11, n. 41.

32.    Moreover, as discussed above, Flowserve paid GM $278,578[4] and provided certain additional credits and other consideration to assume Flowserve's portion of the liability.    Disallowing Flowserve's Proofs of Claim would serve as a disincentive for independent agreements like the Settlement Agreements for fear that the contract rights would have no meaning in a future bankruptcy proceeding.  As this Court recognized in both *Chemtura* and *Lyondell*, the policy behind CERCLA is to encourage prompt and complete remediation of environmental damage.  *See Chemtura* 2011 WL 109081 at *14; *Lyondell*, 2011 WL 11413 at *11.  This can best be accomplished if one party, rather than multiple parties, takes on that responsibility.  Essentially, invalidating a contract for which one party has paid substantial consideration to another party to assume its obligations is not the purpose of 11 U.S.C. § 502(e)(1)(B) when there is no risk of duplicative liability.

33.    It must also be noted that Flowserve has not asserted a claim against GM for GM's share of the cleanup pursuant to the Participation Agreements.  The VLSG filed that claim for the Valleycrest Site and, again, is based upon GM's independent responsibility as a PRP, not its independent liability for Flowserve's 3.375% share which is solely the subject of the VLSG Settlement Agreements.  Flowserve's Proofs of Claim are based only upon the contractual obligations that GM undertook in the Settlement Agreements, and for which GM was paid $278,578 and other valuable consideration.

34.    Finally, disallowing the Proofs of Claim would unjustly enrich GM after having negotiated the terms of the Settlement Agreements and accepting payment in the total amount of $278,578, as well as other valuable consideration from Flowserve for the obligations it assumed therein.  Accordingly, if this Court is inclined to disallow or reduce the claims, Flowserve respectfully requests that the Court include in the claim amounts the $278,578 paid by Flowserve to GM as well as the value of the other consideration provided to GM for entering

---

[4]    As discussed above, Flowserve paid GM $254,000 for the VLSG Settlement Agreement and $24,578 for the CRSG Settlement Agreement, for a total of $278,578.

into the Settlement Agreements plus the $72,650.00 of actual out of pocket expenses that Flowserve has paid as of the date of filing this Response.

## **CONCLUSION**

35.    The cases upon which GM relies in arguing that Flowserve's Proofs of Claim should be disallowed are fundamentally distinguishable.  Flowserve's Proofs of Claim are not duplicative proofs of claim based upon co-liability with the Debtor to a third party. Moreover, GM's liability to Flowserve is not contingent; it is simply unliquidated.  It is a claim for damages based upon a breach of contract.  No other party has filed or could file a claim for the obligations that GM assumed in the Settlement Agreements.  Accordingly, there is no risk of the Debtors making duplicate payments on the claims.   Because both co-liability and the existence of a contingent claim -- two of the requisite elements for disallowance under 11 U.S.C. § 502(e)(1)(B) -- are missing here, the Proofs of Claim cannot be disallowed on that basis and the claims should be allowed in the amount and priority as filed.  GM negotiated the terms of the Settlement Agreements and was paid for the obligations it assumed therein.  As such, Flowserve is entitled to the benefit of its bargain and should receive distributions on the Proofs of Claim.


**[Signature page to follow.]**

**WHEREFORE**, Flowserve respectfully requests that this Court enter an order (i) overruling the Claim Objection as it relates to Flowserve's Proofs of Claim; (ii) allowing Flowserve's Proofs of Claim in the full amounts stated therein; and (iii) granting Flowserve such other and further relief as this Court deems just and appropriate.

Respectfully submitted,

**LOWENSTEIN SANDLER PC**

By: /s/ *S. Jason Teele*
Michael S. Etkin, Esq.
S. Jason Teele, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10022

-- and --

65 Livingston Avenue
Roseland, New Jersey 07068
973.597.2500 (Telephone)
973.597.2400 (Facsimile)

-- and --

**JACKSON WALKER L.L.P.**
Jeffrey G. Hamilton, Esq.
Heather M. Forrest, Esq.
901 Main Street, Suite 6000
Dallas, Texas 75202
Tel:    (214) 953-6000
Fax:    (214) 953-5822

*Attorneys For Flowserve Corporation*
*f/k/a The Duriron Company*

Dated: March 22, 2011
        New York, New York