**HEARING DATE AND TIME: March 29, 2011 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, f/k/a General Motors Corp., *et al.* | : | 09-50026 (REG) |
| Debtors. | : | (Jointly Administered) |

**DEBTORS' REPLY TO JOHN MEALER'S RESPONSE TO THE DEBTORS'
OBJECTION TO ADMINISTRATIVE CLAIM NO. 70792**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), file this reply (the "**Reply**") to the response (the "**Response**") filed by John Mealer ("**Claimant**") in connection with the Debtors' Objection to Administrative Claim No. 70792 Filed by John Mealer (ECF No. 9479, the "**Objection**") and respectfully represent:

**Background**

1. On February 26, 2011, the Debtors filed the Objection seeking to expunge administrative claim number 70792 filed by John Mealer (the "**Mealer Claim**") on the ground that the Mealer Claim fails to establish respondeat superior liability on the part of the Debtors, fails to state a claim on which relief can be granted, and is barred by the doctrine of accord and satisfaction.

2. The Objection detailed the procedural history of the District Court Action,[1] an action seeking similar relief from MLC as that sought in the Mealer Claim, and noted that MLC had never received service of the Complaint in the District Court Action. (Obj. ¶ 17.) On March 3, 2011, with full knowledge of these chapter 11 cases (Resp. 25), Claimant filed a Motion for Entry of Default (the "**Default Motion**") as to MLC in the District Court Action. The District Court has not yet taken any action with respect to the Default Motion.

3. On March 17, 2011, Claimant filed the Response to the Objection and admitted filing the Default Motion as to MLC in the District Court Action. A copy of the Default Motion is attached as Exhibit 4 to the Response.

4. The Response is difficult to decipher and fails to rebut the Debtors' Objection to the Mealer Claim. Accordingly, the Debtors stand by the Objection, reiterate their positions as they now also pertain to the Response and the Default Motion, and state as follows:

---

[1] Terms not defined herein have the meaning given to them in the Objection.

**This Court is the Proper Forum for Resolving the Mealer Claim**

5. The Response states that "jurisdiction is unclear for this case" and states that this Court lacks core jurisdiction over the Mealer Claim because it is allegedly a personal injury claim. (Resp. 5.) To the extent Claimant seeks to argue that this Court lacks core jurisdiction over his claim for defamation because defamation is a personal injury tort, the Debtors note that this Court has core jurisdiction over the Mealer Claim under 28 U.S.C. §157(b)(2)(A) because it is an administrative claim, and therefore is a matter "concerning the administration of the estate." 28 U.S.C. § 157(b)(2)(A). *See also Nilsen v. Neilson (In re Cedar Funding, Inc.)* 419 B.R. 807, 819 (B.A.P. 9th Cir. 2009) (rejecting argument that defamation is a personal injury tort excluded from the bankruptcy court's core jurisdiction under 28 U.S.C. § 157(b)(2)(O) and noting that because defamation action arose while the trustee was performing his duties in connection with the administration of the estate, the matter was a core proceeding under 28 U.S.C. § 157(b)(2)(A)).

6. The Response further alleges that this Court's April 14, 2010 Order denying the Administering Claims Motion instructed Claimant to pursue his claims against the Debtors outside of this Court. (Resp. 5, 21, 22.) Such a reading of this Court's denial of the Administering Claims Motion is misguided. This Court did not instruct Claimant to proceed as to the Debtors in the District Court Action.

7. Further, Paragraph 71 of this Court's July 5, 2009 Order approving the MSPA (ECF No. 2968) (the "**Sale Order**") states that "[t]his Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, the MPA, all amendments thereto." As discussed in the Objection and as discussed further below,

3

resolution of the Mealer Claim implicates interpretation and enforcement of section 2.3(a)(v) of the MSPA. Accordingly, this Court is the proper forum to resolve the Mealer Claim.

**The Debtors Cannot Be Held Liable for Mr. Kordella's Actions Under a Theory of Respondeat Superior**

8. As set forth in the Objection, the Mealer Claim states that it seeks to hold the Debtors liable solely on a theory of respondeat superior for actions taken by a General Motors employee, Mr. Kris Kordella. Mr. Kordella's allegedly tortious actions were not committed within the scope of employment and, as such, the Debtors cannot be held liable for such actions. *See, e.g.*, *Rogers v. J.B. Hunt Transp., Inc.*, 649 N.W.2d 23, 26 (Mich. 2002). Claimant's Response fails to rebut this argument. The Response asserts that the Debtors can be held vicariously liable for Mr. Kordella's actions because they allegedly trained and controlled Mr. Kordella and supplied the computer equipment he allegedly used when commenting on Claimant's website. (Resp. 9.) Even assuming such assertions are true, they do not establish that Mr. Kordella was doing anything "which may reasonably be said to have been contemplated . . . as necessarily or probably incidental" to his employment when he expressed his personal views on Claimant's website. *Ray Korte Chevrolet v. Simmons*, 571 P.2d 699, 704 (Ariz. Ct. App. 1977). Claimant's assertions that "GM – GMAC would not be profitable today" if not for Mr. Kordella's comments on Claimant's website (Resp. 30) not only conflate the Debtors with the separate and distinct businesses of General Motors LLC and GMAC, but also amount to implausible speculation that is not entitled to the assumption of truth. *In re M. Fabrikant & Sons, Inc.*, Bankr. No. 06-12737, 2009 WL 3806683, at 11 (Bankr. S.D.N.Y.

4

Nov. 10, 2009) (citing *Ashcroft v. Iqbal*, 129 S. Ct. at 1937, 1950 (2009)).  Accordingly, the Mealer Claim should be denied.

9.  Further, as noted in the Objection, in the unlikely event that Mr. Kordella's actions are deemed to have been committed within the scope of his employment, any liability flowing from such actions was likely assumed by General Motors LLC under section 2.3(a)(v) of the MSPA and, pursuant to paragraph 26 of the the Sale Order, Mr. Mealer would thus be barred from pursuing any such assumed liability against the Debtors.  Claimant's Response does not address this argument at all.

**The Mealer Claim Fails to State a Claim Upon Which Relief Can be Granted**

10.  As explained in the Objection, Mr. Kordella's comments cannot give rise to a plausible claim for defamation or trade libel because they are mere hyperbolic opinions that do not imply the requisite factual assertion capable of being proven true or false.  *See Turner v. Devlin*, 848 P.2d 286, 289 (Ariz. 1993); *AMCOR Inv. Corp. v. Cox Ariz. Publ'ns Inc.*, 764 P.2d 327, 332 (Ariz. Ct. App. 1988).  The Response's assertion that Mr. Kordella's internet posting "cost Mealer $430 Million in prospective funds and pre-mfg vehicle sales" (Resp. 13) is contradicted by numerous cases holding that postings made on informal websites such as chat rooms or blogs are unlikely to be viewed as factual statements.  For example, in *Rocker Mgmt. LLC v. John Does 1 through 20*, 2003 WL 22149380, at *2 (N.D. Cal. 2003), the court noted that such messages tend to be "replete with grammar and spelling errors; most posters do not even use capital letters.  Many of the messages are vulgar and offensive, and are filled with hyperbole . . . in this context, readers are unlikely to view messages posted anonymously as assertions of fact."  Likewise, in *Global Telemedia Int'l, Inc. v. Doe 1*, 132 F. Supp. 2d

5

1261, 1264 (C.D. Cal. 2001) the court observed that postings in internet chat rooms "are full of hyperbole, invective, short-hand phrases and language not generally found in fact-based documents. . . .To put it mildly, these postings . . . lack the formality and polish typically found in documents in which a reader would expect to find facts." The court concluded that the tone, context, style, and content of such internet postings "strongly suggest that they are the opinions of the posters." Similarly, in *SPX Corp. v. Doe*, 253 F. Supp. 2d 974, 981 (N.D. Ohio 2003) the court addressed statements posted on an internet message board and noted:

> such message boards are accessible to anyone of the tens of millions of people in this country (and more abroad) with Internet access, and no one exerts control over the content. Pseudonym screen names are the norm. A reasonable reader would not view the blanket, unexplained statements at issue as "facts" when placed on such an open and uncontrolled forum.

Finally, in *Doe v. Cahill*, 884 A.2d 451, 465-66 (Del. 2005) the court noted that "factual and contextual issues relevant to chat rooms and blogs are particularly important in analyzing the defamation claim" and concluded that one cannot assume that statements are factually based on research "when the statements are made on blogs or in chat rooms."

        11.     As Claimant noted in the Administering Claims Motion, attached as Exhibit 5 to the Response, Mr. Kordella's posting on Claimant's website contained an unconventional use of question marks, exclamation points, capitalization, and sentence structure. Further, Claimant contends that Mr. Kordella posted his comments under the screen name "Money01." (Resp. 10, 12.) As noted in the foregoing case law, such characteristics are common to informal internet postings and indicate that Mr. Kordella's comments were his personal opinions and were not likely to be viewed by readers as

6

reliable statements of fact. Additionally, Mr. Kordella's posting could never be taken by a reasonable person as an official authorized statement of General Motors Corporation. Accordingly, the comments cannot give rise to a valid claim for defamation or trade libel and the Mealer Claim should be denied.

12. Likewise, as stated in the Objection, the comments cannot form the basis of a plausible claim for tortious interference with a business expectancy because Claimant fails to demonstrate any actual, specific relationship with which Mr. Kordella intentionally interfered or damaged. Annexed to the Response as Exhibit 7 is a "Funding Request Summary" for Claimant's company which Claimant asserts proves "the existence of a valid business expectancy." (Resp. 13.) The mere existence of such a document alone, however, does not provide any evidence or indicia that Claimant possessed an "actual and identifiable understanding or agreement which in all probability would have been completed if the defendant had not interfered" as is necessary to state a valid claim for tortious interference with a business relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.,* 647 So.2d 812, 815 (Fla. 1994). Accordingly, the Mealer Claim must be denied.

13. Finally, the Response fails to provide any further details regarding the violations of interstate commerce laws and other anti-competitive violations alleged in the Mealer Claim. Accordingly, as set forth in the Objection, such claims amount to no more than threadbare assertions not entitled to the assumption of truth and the Mealer Claim must be disallowed in its entirety for failure to state a claim upon which relief can be granted. To the extent the Debtors have not addressed each and every factual assertion contained in the 360 page Response and exhibits thereto, the Debtors do not concede the

7

accuracy or truth of such factual assertions and reserve their rights to analyze the veracity of such assertions should it become necessary.

## Conclusion

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that the Court disallow and expunge the Mealer Claim, and grant such other and further relief as is just.

Dated: New York, New York
March 24, 2011

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

Attorneys for Debtors
and Debtors in Possession