HEARING DATE AND TIME:  April 26, 2011 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE:  April 19, 2011 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :    09-50026 (REG)
    f/k/a General Motors Corp., et al. :
                                    :
                    Debtors.        :    (Jointly Administered)
                                    :
------------------------------------------------------------x
```

### NOTICE OF HEARING ON MOTION
### OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO
### FED. R. BANKR. P. 9019 AND FED. R. CIV. P. 23 APPROVING AGREEMENT
### RESOLVING PROOF OF CLAIM NO. 50026 AND IMPLEMENTING
### MODIFIED DEX-COOL CLASS SETTLEMENT

PLEASE TAKE NOTICE that upon the annexed Motion, dated March 24, 2011

(the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors in possession (the "**Debtors**"), for an order, pursuant to Rule 9019

of the Federal Rules of Bankruptcy Procedure and Rule 23 of the Federal Rules of Civil

Procedure approving the Agreement Resolving Proof of Claim No. 50026 (the "**Agreement**"),

attached to the Motion as **Exhibit "A"** implementing a settlement between class action plaintiffs

(the "**Dex-Cool Plaintiffs**"), on behalf of themselves and all others similarly situated

(collectively, the "**Dex-Cool Class**"), and the Debtors, as defined and as more fully set forth in

the Motion, a hearing will be held before the Honorable Robert E. Gerber, United States

Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, New York, New York 10004, on **April 26, 2011 at 9:45 a.m.**

**(Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham,

Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.); and (xii) Girard Gibbs LLP, Co-Lead Class Counsel for the Dex-Cool

Plaintiffs and the Dex-Cool Class, 601 California Street, Suite 1400, San Francisco, California

94108 (Attn:  Eric H. Gibbs, Esq. and A. J. De Bartolomeo, Esq.), so as to be received no later

than **April 19, 2011 at 4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion as **Exhibit "B,"** which order may be entered with no further notice or opportunity to be

heard offered to any party.

Dated: New York, New York
March 24, 2011

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

# TABLE OF CONTENTS

**Page**

I.      Relief Requested ............................................................................................. 2

II.     Preliminary Statement ..................................................................................... 3

III.    Jurisdiction ...................................................................................................... 4

IV.     Background ...................................................................................................... 4

      A.      The Dex-Cool Class Actions ............................................................... 4

      B.      Dex-Cool Class Action Settlement Terms and Approval ..................... 7

      C.      The Agreement ................................................................................... 14

V.      The Relief Requested Should Be Approved by the  Court Pursuant to Bankruptcy
Rule 9019 ....................................................................................................... 16

VI.     The Settlement Should Be Approved by the Court Under Rule 23 ................. 18

      (a)     The Dex-Cool Class Satisfies Rules 23(a) and 23(b) ............................ 19

      (b)     The Agreement Satisfies Rule 23(e) .................................................... 21

      (c)     No Additional Notice Is Required ........................................................ 23

VII.    Notice ............................................................................................................. 25

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<u>C<small>ASES</small></u>

*In re AMC Realty Corp.*,
    270 B.R. 132 (Bankr. S.D.N.Y. 2001) ..................................................................18

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ...........................................................................................19

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) ...............................................................................19

*In re Dow Corning Corp.*,
    198 B.R. 214 (Bankr. E.D. Mich. 1996) ..............................................................16

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ......................16

*Fireside Bank v. Superior Court*,
    155 P.3d 268 (Cal. 2007) ...................................................................................20

*Green v. Am. Express Co.*,
    200 F.R.D. 211 (S.D.N.Y. 2001) .....................................................................22, 24

*Hale v. Wal-Mart Stores, Inc.*,
    231 S.W.3d 215 (Mo. Ct. App. 2007) ..................................................................20

*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) ................................................................24

*In re Indep. Energy Holdings PLC*,
    No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..................20, 21, 22

*In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) ..........................16

*In re Iridium Operating LLC*,
    478 F.3d 452 (2d Cir. 2007) ...............................................................................16

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) .....................................................................20, 21, 22

*Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*,
    313 F.2d 447 (6th Cir. 1963) ..............................................................................16

*In re Milken & Assocs. Sec. Litig.*,
  150 F.R.D. 46 (S.D.N.Y. 1993) ........................................................................21

*Mitchell v. Residential Funding Corp.*,
  Nos. WD 70210, WD 70227, WD 70244, WD 70263,
  2010 WL 4720755 (Mo. Ct. App. Nov. 23, 2010)..................................................20

*In re Nazi Era Cases Against German Defendants Litig.*,
  198 F.R.D. 429 (D.N.J. 2000)............................................................................22

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Dex-Cool*,
  390 U.S. 414, *reh'd denied*, 391 U.S. 909 (1968) .................................................16

*In re Purofied Down Prods. Corp.*,
  150 B.R. 519 (S.D.N.Y. 1993)...........................................................................16

*Rosenberg v. XO Commc'ns, Inc. (In re XO Commc'ns, Inc.)*,
  330 B.R. 394 (Bankr. S.D.N.Y. 2005).................................................................22

*Selby v. Principal Mut. Life Ins. Co.*,
  No. 98 Civ. 5283 (RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003)..............24

*In re Tobacco II Cases*,
  207 P.3d 20 (Cal. 2009) ....................................................................................20

*Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499 (Bankr. S.D.N.Y. 1991) .........................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005).....................................18

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982), *cert. denied*, 464 U.S. 818 (1983)........................18, 20

*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910)..........................................................................................18

## STATUTES

11 U.S.C. § 105..........................................................................................17, 25

11 U.S.C. § 502................................................................................................12

11 U.S.C. § 503................................................................................................12

28 U.S.C. § 157..................................................................................................4

28 U.S.C. § 1334................................................................................................4

Cal. Code Civ. § 382 ................................................................................................... 11, 20

Fed. R. Bankr. P. 3003 ...................................................................................................... 12

Fed. R. Bankr. P. 3007 ...................................................................................................... 17

Fed. R. Bankr. P. 9019 ................................................................... 1, 2, 3, 15, 17, 23

Fed. R. Civ. P. 23 ..................................................................... 1, 2, 3, 4, 18, 19, 20, 25

Mo. R. Civ. P. 52.08 .................................................................................... 11, 19, 20

## **OTHER AUTHORITY**

9 Collier on Bankruptcy § 9019.02 (15th ed. rev. 2001) ............................................... 15

6 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.72 (4th ed. 2002) ............... 22

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

### MOTION OF DEBTORS FOR ENTRY OF ORDER
### PURSUANT TO FED. R. BANKR. P. 9019 AND FED. R. CIV. P. 23
### APPROVING AGREEMENT RESOLVING PROOF OF CLAIM
### NO. 50026 AND IMPLEMENTING MODIFIED DEX-COOL CLASS SETTLEMENT

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

# I.  <u>Relief Requested</u>[1]

1.      Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rule 23 of the Federal Rules of Civil Procedure ("**Rule 23**"), the Debtors respectfully request entry of that certain proposed Order Pursuant to Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. Rule 23 Approving Agreement Resolving Proof of Claim No. 50026 and Implementing Modified Dex-Cool Class Settlement (the "**Order**"), approving and ratifying that certain modified settlement agreement (the "**Agreement**") between class action plaintiffs (the "**Dex-Cool Plaintiffs**"), on behalf of themselves and all others similarly situated (collectively, the "**Dex-Cool Class**"), and the Debtors (collectively, the Dex-Cool Plaintiffs, the Dex-Cool Class, and the Debtors, the "**Parties**").  The Agreement is attached hereto as **Exhibit "A"** and the Order is attached hereto as **Exhibit "B."**

2.      Among other things, the Agreement sets forth the proposed settlement and resolution of Claim No. 50026 (the "**Dex-Cool Proof of Claim**"), which is based on previous settlements (collectively, the "**Dex-Cool Class Action Settlement**") reached in class action lawsuits brought by the Dex-Cool Plaintiffs, on behalf of themselves and the Dex-Cool Class, against General Motors Corporation ("**GM**") in, among other courts, the Superior Court of the State of California, County of Alameda (the "**California Court**") and the Circuit Court of Jackson County, Missouri at Independence (the "**Missouri Court**"), alleging, among other things, that "Dex-Cool" extended life engine coolants corroded and sludged various engine and cooling system components leading to expensive repairs for class members (the "**Dex-Cool**

---

[1]      All capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the Agreement (defined below).

**Class Actions**").[2] Entry of the Order will result in: (i) the resolution of approximately $3,000,000.00 in claims against the Debtors' estates; and (ii) the alleviation of the financial burden, time, and uncertainty associated with litigation of the Dex-Cool Proof of Claim and the Dex-Cool Class Actions.

## II.  Preliminary Statement

3.      By this Motion of Debtors for Entry of Order Pursuant to Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. 23 Approving Agreement Resolving Proof of Claim No. 50026 and Implementing Modified Dex-Cool Class Settlement (the "**Motion**"), the Debtors seek to complete implementation of the Dex-Cool Class Action Settlement previously reached and approved by the California and Missouri Courts, with the requested modifications described herein. The Dex-Cool Class already has been certified by the California and Missouri Courts; extensive notice of the Dex-Cool Class Action Settlement was previously given to the Dex-Cool Class; members of the Dex-Cool Class already have submitted claims for settlement benefits; GM previously funded $6,127,758.00 to pay Dex-Cool Class members who submitted valid claims for reimbursement prior to the original claims date (and prior to the filing date); certain members of the Dex-Cool Class who previously submitted deficient claims already have been notified of the deficiency and given the opportunity to resubmit their claims for reimbursement; nearly one-half of the Dex-Cool Class members who were notified of a deficient claim resubmitted their claims; and the Dex-Cool Class Action Settlement was approved by the California and Missouri Courts under code provisions that are patterned after Rule 23 of the Federal Rules of Civil Procedure.

---

[2]      The Dex-Cool Class Actions include those actions covered by two class action settlement agreements; one that was approved by the California Court (as to forty-nine states and concerning a nationwide class inclusive of all states but Missouri) and one that was approved by the Missouri Court (as to the State of Missouri and inclusive of a Missouri state-wide class).

4.    On June 1, 2009, before the terms of the settlements could be fully implemented and those members of the Dex-Cool Class who resubmitted claims for reimbursement (*e.g.*, to correct initial deficiencies) and now hold valid claims could be paid (the "**Resubmitting Participating Class Members**"), certain of the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), which stayed the further implementation of the Dex-Cool Class Action Settlement.

5.    As a result of the commencement of these chapter 11 cases, the Debtors are unable to provide the exact consideration contemplated under the Dex-Cool Class Action Settlement to the Resubmitting Participating Class Members, but the Parties have reached an agreement to provide alternative consideration that is fair and reasonable to the Resubmitting Participating Class Members under the circumstances of these chapter 11 cases.  The Agreement itself is thus fair, reasonable, and adequate and meets the standards of Rule 23.  Moreover, the Agreement will result in a reduction of general unsecured claims against the Debtors' estates. The Agreement and proposed order are the result of a collaborative effort between the Parties and the statutory committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases and is submitted to the Court for approval with the Creditors' Committee's support and consent.  Entry of the Order, thus, is in the best interest of the Dex-Cool Class, the Debtors, and the Debtors' creditors.  Accordingly, the Debtors respectfully request that this Motion be granted.

## III.  Jurisdiction

6.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## IV.  Background

### A.    The Dex-Cool Class Actions.

7.      On April 11, 2003, the same counsel filed cases in California and Missouri state courts related to Dex-Cool coolants.  The California case was dismissed without prejudice in deference to the action formerly pending before the California Court, *Sadowski v. General Motors Corp.*, No. HGO-3093843.  The Missouri case, formerly pending in the Missouri Court, is captioned *Gutzler v. General Motors Corp.*, No. 03CV208786.  Similar cases were then filed by more than a dozen different law firms in state and federal courts throughout the country, including in Illinois, Texas, New York, New Jersey, and Pennsylvania.  The complaints filed in all of these cases allege that Dex-Cool, which GM started using as a factory-fill coolant starting with their 1995 model-year vehicles, caused problems with the engines or cooling systems.  The complaints also assert claims for breach of warranty, violations of unfair business practices statutes, and related causes of action.

8.      GM removed most of the state actions to federal court and filed a petition with the Judicial Panel on Multidistrict Litigation (the "**MDL Panel**") to transfer and consolidate them into a federal multidistrict litigation.  After months of briefing motions to remand, the parties reached an agreement on consolidation.  The cases originally filed in state court in California (including the *Sadowski* action), Missouri (the *Gutzler* action), and Texas (*Longoria v. General Motors Corp.*, No. 03-03140-D) were remanded back to state court.  By order of the MDL Panel, all other cases either originally filed in or removed to federal court were consolidated for pretrial purposes in the United States District Court for the Southern District of Illinois, under the caption *In re DEX-COOL Products Liability Litigation*.  As part of this consolidation and coordination process, most of the law firms representing plaintiffs in the Dex-Cool litigation agreed to jointly prosecute these cases and agreed to a structure for delegating and allocating the work among the firms.  The firms also agreed that Girard Gibbs LLP and Shughart

Thomson & Kilroy, P.C. would serve as "Co-Lead Counsel" for the group, and the two firms

were subsequently appointed Co-Lead Counsel in the various courts where the Dex-Cool Class

Actions were being prosecuted (collectively, "**Co-Lead Class Counsel**").

9.    During late 2003 and continuing into late 2007, the parties engaged in

extensive discovery in the various actions.  GM deposed more than forty of the named plaintiffs.

The plaintiffs took twenty-six depositions of current and former GM employees.  The plaintiffs

and GM also deposed seven third-party witnesses.  In addition, they exchanged over 700

interrogatories, over 300 requests for production of documents, and almost 100 requests for

admissions.  Furthermore, GM produced, and the plaintiffs' counsel reviewed, roughly a million

pages of documents and over three gigabytes of electronic data.

10.    The parties also engaged in extensive expert discovery.  Both the fact and

expert discovery undertaken by the parties led to several discovery disputes, some of which were

resolved through motions to compel discovery and/or through the appointment of a special

master.

11.    After a class was certified in the Missouri case and notice was given to the

class, the case was set for an estimated three-week jury trial to begin on November 5, 2007.

12.    During the final pretrial phase, the parties negotiated over a potential class

action settlement of all the Dex-Cool Class Actions, and, on October 25, 2007, the same day the

jury questionnaire was given to potential jurors, the parties reached an agreement in principle to

settle all of the Dex-Cool Class Actions.  The agreement in principle was memorialized into the

Dex-Cool Class Action Settlement, dated March 26, 2008, and provided, among other things,

that (i) the *Gutzler* action and the claims of a Missouri-only class would be resolved through one

agreement, subject to the Missouri Court's approval, and (ii) the *Sadowski* action, all the other

Dex-Cool putative class actions, and the claims of a nationwide class (excluding persons who

purchased or leased their vehicle in Missouri) would be resolved through another agreement,

both agreements of which were dependant upon each other and subject to the approval of *both*

the California Court and the Missouri Court.

**B.**    **Dex-Cool Class Action Settlement Terms and Approval.**

13.    Pursuant to the Dex-Cool Class Action Settlement reached by the parties,

the Dex-Cool Class collectively consists of all consumers in the United States who:

> (a)    own or lease, or who have owned or leased, a Covered Vehicle
> "that has been in service in excess of seven years, measured from
> the Date of Initial Vehicle Delivery, at the time of the first date on
> which notice of the Settlement is disseminated and who, at the time
> of the notice, had not incurred a repair expense of the type
> included in the definition of Covered Repair," or

> (b)    own or lease, or who have owned or leased, a Covered Vehicle and
> "who incurred an expense for a Covered Repair before the first
> date on which notice of the Settlement is disseminated to the Class
> in accordance with the Notice Order."  Excluded from the Class
> are GM, any affiliate, parent, or subsidiary of GM, any entity in
> which GM has a controlling interest, any officer, director, or
> employee of GM, any successor or assign of GM, and any Judge to
> whom any of the Actions is assigned as well as his or her
> immediate family.

14.    The following tables list the vehicle models covered by the Dex-Cool

Class Action Settlement, when equipped with the specified engine size, and the "Covered

Repairs" defined for the various models.  Consumers who own one of the following models with

a different engine than what is specified below were not covered by the Dex-Cool Class Action

Settlement.

## GROUP A VEHICLES
### Model years 1995-2003
### Equipped with 3.1-liter or 3.4-liter V6 engine manufactured before April 10, 2003

| Buick | Century, Rendezvous |
|-------|---------------------|

| Chevrolet | Impala, Lumina, Malibu, Monte Carlo, Venture |
|---|---|
| Oldsmobile | Alero, Cutlass, Silhouette |
| Pontiac | Aztek, Grand Am, Grand Prix, Montana, Trans Sport |

**Group A Covered Repairs**:  Replacement of failed lower intake manifold gasket

**GROUP B VEHICLES**
**Model years 1995-2004**
**Equipped with 3.8-liter V6 engine (internal GM engine designation RPO L36)**

| Buick | LeSabre, Park Avenue, Regal, Riviera |
|---|---|
| Chevrolet | Camaro, Impala, Lumina, Monte Carlo |
| Oldsmobile | Eighty-Eight, Intrigue, LSS, Ninety-Eight |
| Pontiac | Bonneville, Firebird, Grand Prix |

**Group B Covered Repairs**: Repairs necessitated by engine coolant sealing issues, including replacement of throttle body gasket, upper intake manifold gasket, lower intake manifold gasket, or intake manifold

**GROUP C VEHICLES**
**Model years 1995-2000**
**Equipped with 4.3-liter V6 engine**

| Chevrolet | Blazer, Chevrolet S-10 |
|---|---|
| GMC | Envoy, Jimmy, S-15 |
| Oldsmobile | Bravada |

**Group C Covered Repairs**: Repairs necessitated by cooling-system sludge, including cooling-system flush, heater core repairs, water pump repairs, or radiator cap replacement.
**"Sludge" refers to a rust-like material that can form in the cooling system and whose formation is allegedly related to use of Dex-Cool**

15.    Under the Dex-Cool Class Action Settlement, GM agreed to send various

levels of cash reimbursements to Dex-Cool Class members who paid for the foregoing Covered

Repairs performed within seven years or 150,000 miles after the original owner or lessee took

delivery of the vehicle and who submitted timely and valid claims.  Claims were required to be

supported by documentation showing the amount the Dex-Cool Class member spent on a

Covered Repair and documentation that the Dex-Cool Class member owned or leased the vehicle

at the time of the repair.  The amount of reimbursement a claimant was to receive depended on

(i) when the Covered Repair was performed and (ii) the amount the claimant actually paid, as

described below:

> (a)    For a Covered Repair made *within five years* after initial vehicle
> delivery, the claimant was to be reimbursed the documented
> amount he or she paid out of pocket and for which he or she was
> not previously reimbursed, up to $400.

> (b)    For a Covered Repair made in the *sixth year* after initial vehicle
> delivery, the claimant was to be reimbursed the documented
> amount he or she paid out of pocket and for which he or she was
> not previously reimbursed, up to $100.

> (c)    For a Covered Repair made in the *seventh year* after initial vehicle
> delivery, the claimant was to be reimbursed the documented
> amount he or she paid out of pocket and for which he or she was
> not previously reimbursed, up to $50.

> (d)    Furthermore, if the claimant was entitled to reimbursement under
> subpart (a) above (*i.e.*, the Covered Repair was performed within
> five years after initial vehicle delivery), and could document that
> the Covered Repair required payment of over $1,500 to address an
> internal coolant leak, the claimant could elect to request
> reimbursement of 40 percent of the amount the claimant paid out
> of pocket and for which he or she was not previously reimbursed,
> up to $800.  An "internal coolant leak" was defined to mean
> "coolant leaked from one vehicle component into another
> component," as opposed to leaking from inside a vehicle
> component to the exterior.[3]

16.    The Dex-Cool Class Action Settlement was submitted to the Missouri and

California Courts for approval and were subsequently approved.  In the Preliminary Approval

Orders, attached hereto as **Exhibits "C**" and **"D,"** the Missouri and California Courts

---

[3]    All statements made herein regarding the Dex-Cool Class Action Settlement are summary only, and are not
intended to change the meaning of or be used in interpreting any portion of the Dex-Cool Class Action Settlement.

preliminarily approved of the Dex-Cool Class Action Settlement, and conditionally certified the

settlement classes.  In so doing, they specifically found that:

- The Dex-Cool Class was so numerous that joinder of all absent class members would be impracticable;

- Questions of law and fact common to members of the Dex-Cool Class predominated over questions affecting individual members;

- The claims of the named plaintiffs were typical of claims of the Dex-Cool Class as a whole;

- The named plaintiffs and their counsel would fairly and adequately represent the Dex-Cool Class; and

- A class action was a superior method for bringing the claims.

(*Id.* (Exs. C, D).)

17.    In those Preliminary Approval Orders, the Missouri and California Courts

set fairness hearings for final approval of the Dex-Cool Class Action Settlement; set forth

deadlines for objecting to the Dex-Cool Class Action Settlement and appearing at the Fairness

Hearings; approved the forms of class notice (collectively, the "**Notice of Settlement**"), copies

of which are attached hereto as **Exhibits "E" and "F"**; and approved of the proposed manner of

providing notice, which manner included (i) direct mail notice to certain readily identifiable Dex-

Cool Class members; (ii) publication notice through a number of nationally-circulated magazines

and weekend newspaper supplements, as well as through Internet advertising; and (iii) electronic

notice through a dedicated website.  The publication notice was published in four national

newspaper supplements, with an estimated circulation of 65,900,000; twelve national consumer

magazines, with a total estimated circulation of 43,865,000; and in Internet advertising appearing

across a wide-range of websites, with an estimated 199,500,000 views.

18.    On October 23, 2008, and September 5, 2008, respectively, after

conducting fairness hearings, the California and Missouri Courts entered judgments (collectively,

the "**Final Judgment**"), copies of which are attached hereto as **Exhibits "G"** and **"H,"** in which

they finally certified the Dex-Cool Class and finally approved the Dex-Cool Class Action

Settlement.[4]   The California and Missouri Courts determined that the Dex-Cool Class satisfied

Section 382 of the California Code of Civil Procedure ("**Section 382**") and Rule 52.08 of the

Missouri Rules of Civil Procedure ("**Rule 52.08**"), because:  (i) the Dex-Cool Class was so

numerous that joinder of all members is impracticable; (ii) questions of law or fact common to

the Dex-Cool Class predominated over questions affecting individual members; (iii) the claims

of named plaintiffs were typical of claims of the Dex-Cool Class as a whole; (iv) the

representative plaintiffs would fairly and adequately assert and protect the interests of the Dex-

Cool Class; and (v) the Dex-Cool Class Action provided a superior method for adjudication of

the controversy.  Moreover, the California and Missouri Courts found that the Dex-Cool Class

Action settlement was, in all respects, fair, reasonable, and adequate, and in the best interests of

the Dex-Cool Class.  (*See id.* (Exs. G, H).)

---

[4]     The Missouri Court certified the following class:  "All Consumers who purchased or leased a Covered Vehicle in the State of Missouri who (i) own or lease, or who have Vehicle in the State of Missouri (i) that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred an expense of the type included in the definition of Covered Repair, or (ii) who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order."  Excluded from the Missouri Class were  "GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; and the Judge to whom the Action is assigned as well as his or her immediate family. "

The California Court certified the following class:  "All Consumers in the United State of America, excepting those who purchased or leased their vehicles in the State of Missouri, who (i) own or lease, or who have owned or leased, a Covered Vehicle that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred a repair expense of the type included in the definition of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order."  Excluded from the California Class were "GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone employed by counsel for Representative Plaintiffs, any Judge to whom any of the Actions is assigned as well as his or her immediate family; any and all persons who timely and validly request exclusion from the Class pursuant to the notice disseminated in accordance with the Notice Order."

19.     The Final Judgment also awarded attorneys' fees in a collective amount

totaling $21,250,000.00 (collectively, the "**Attorneys' Fees**"); documented costs and expenses in

a collective amount totaling $2,800,000.00 (collectively, "**Documented Costs and Expenses**");

and incentive awards to the Dex-Cool Plaintiffs in varying amounts, none of which exceed

$20,000.00 (collectively, the "**Incentive Awards**").

20.     Before the bankruptcy filing and in accordance with the Dex-Cool Class

Action Settlement, the Final Judgment and orders approving the award of Attorneys' Fees,

Incentive Award, and Documented Costs and Expenses, the following occurred:

- Garden City Group, serving as claims administrator (the "Claims Administrator"), collected 68,154 claims statements that were timely submitted;

- The Claims Administrator approved approximately 40,000 claims as valid and entitled to payment under the Dex-Cool Class Action Settlement;

- GM funded approximately $6,127,758.00 necessary to pay those approved claims;

- GM funded the Attorneys' Fees, Incentive Award, and Documented Costs and Expenses;

- Notice of deficiency letters were sent out by the Claims Administrator, to the remaining claimants (approximately 28,000), informing them of how to cure deficient claims statements for resubmission; and

- The Resubmitting Participating Class Members submitted approximately 11,299 claim statements in an attempt to cure previously-deficient statements.

- The Claims Administrator reviewed approximately 6,685 of the Claim Forms submitted by the Resubmitted Participating Dex-Cool Class Members and approved claims totaling $1,325,568.60.

21.     The commencement of these chapter 11 cases on June 1, 2009, stayed all

further implementation of the Dex-Cool Class Action Settlement, including the Claims

Administrator's review of the remaining 4,614 Claim Forms submitted by the Resubmitting

Participating Class Members;.

22.     On September 16, 2009, the United States Bankruptcy Court for the

Southern District of New York (the "**Court**") entered the Order Pursuant to Section 502(b)(9) of

the Bankruptcy Code and Rule 3003(c)(3) of the Bankruptcy Procedure Establishing the

Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section

503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice

Thereof (ECF No. 4079) establishing November 30, 2009 at 5:00 p.m. (Eastern) as the deadline

to file proofs of claim against MLC and certain of the other Debtors based on prepetition claims.

23.     On November 25, 2009, the Dex-Cool Proof of Claim, based on the Dex-

Cool Class Action Settlement, was filed with this Court on behalf of the Dex-Cool Class and

assigned claim number 50026.  The Dex-Cool Proof of Claim asserts a claim in the amount of

$3,000,000.00, for class consideration allegedly due to the Resubmitting Participating Class

Members pursuant to the Dex-Cool Class Action Settlement (the "**Claim**").

24.     On December 1, 2009, this Court approved and entered the Stipulation and

Order Between the Debtors and the Holders of Unliquidated Dex-Cool and Anderson Claims to

Allow Class Proofs of Claim for Dex-Cool and Anderson Claimants (the "**Class Claims**

**Stipulation**"), attached hereto as **Exhibit "I,"** and through which the Debtors and the holders of

Unliquidated Dex-Cool Claims, defined in the Class Claims Stipulation as the claims made in

connection with the Dex-Cool Class Action that had not yet been liquidated pursuant to the terms

of the Dex-Cool Class Action Settlement, agreed that Co-Lead Class Counsel could file a class-

wide proof of claim on behalf of all holders of Unliquidated Dex-Cool Claims.

C.    **The Agreement.**

25.    Since the filing of the Dex-Cool Proof of Claim, the Parties have engaged in good-faith, arms-length negotiations, and, without any admission of liability by any Party, have reached the Agreement to resolve the Dex-Cool Proof of Claim and implement the Dex-Cool Class Action Settlement, as modified, with this Court's approval.

26.    Because of the commencement of these chapter 11 cases, the Debtors are unable to provide the Resubmitting Participating Class Members with the exact consideration contemplated by the Dex-Cool Class Action Settlement.  Accordingly, the Parties respectfully request that the Court approve the Agreement to provide, among other things, the Resubmitting Participating Class Members with the Total Allowed General Unsecured Claim (defined below) that is equivalent to the approximate value of the benefits that would have been provided to the Resubmitting Participating Class Members under the Dex-Cool Class Action Settlement.

27.    The key provisions of the Agreement are summarized as follows:

(a)    Subject to execution of the Agreement by the Parties and upon entry of the Order, the Dex-Cool Proof of Claim shall be resolved and the Resubmitting Participating Class Members shall receive, in the aggregate, a single allowed general unsecured claim against MLC in the amount of $2,205,570.00 (the "**Total Allowed Unsecured Claim**").

(b)    Co-Lead Class Counsel shall be authorized to dispose of the Total Allowed Unsecured Claim such that Co-Lead Class Counsel can make the proper *pro rata* distribution of consideration to the Resubmitting Participating Class Members in accordance with the Agreement.  Co-Lead Class Counsel shall be solely responsible for (i) distributing the cash proceeds resulting from the disposition of the Total Allowed Unsecured Claim; (ii) otherwise implementing the Agreement; and (iii) paying all expenses associated with such distribution and/or implementation.

(c)    Cash proceeds resulting from the sale or assignment of the Total Allowed Unsecured Claim to any third party or from the sale of any stock or shares, in the open market or otherwise, distributed in accordance with the Plan shall be distributed, on a *pro rata* basis,

in accordance with the following guidelines, which are further set forth in the Plan of Allocation contained in Paragraph 5 of the Agreement:[5]

i. **Resubmitting Participating Class Members with a Covered Repair _within five years_ after initial vehicle delivery.** Resubmitting Participating Class Members may obtain reimbursement, on a _pro rata_ basis, of the greater of (i) the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to $400, or (ii) if the Resubmitting Participating Dex-Cool Class Member submitted Proof of Internal Leak Repair Expense showing a repair expense of more than $1,500 due to a diagnosed internal coolant leak, 40% of the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to a maximum of $800.

ii. **Resubmitting Participating Class Members with a Covered Repair made in the _sixth year_ after initial vehicle delivery.** Resubmitting Participating Class Members may obtain reimbursement, on a _pro rata_ basis, of the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to $100.

iii. **Resubmitting Dex-Cool Class Members with a Covered Repair made in the _seventh year_ after initial vehicle delivery.** Resubmitting Participating Class Members may obtain reimbursement, on a _pro rata_ basis, of the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to $50.

(d) Upon entry of the Order, Dex-Cool Plaintiffs, the Dex-Cool Class, and their affiliates, successors and assigns, and their agents, insurers, representatives, administrators, executors, trustees and attorneys agree that they shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns, including GM or its successors in interest (collectively, the "**Debtor Parties**").

---

[5]    All distributions under the Agreement will be made on a pro rata basis of the cash proceeds resulting from the sale or assignment of the Total Allowed Unsecured Claim.

## V.  The Relief Requested Should Be Approved by the
## Court Pursuant to Bankruptcy Rule 9019

28.     Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate."  *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).  A decision to accept or reject a compromise or settlement is within the sound discretion of the Court.  *Id.*; *see also* 9 Collier on Bankruptcy § 9019.02 (15th ed. rev. 2001).  The settlement need not result in the best possible outcome for the debtor but must not "fall below the lowest point in the range of reasonableness."  *Drexel Burnham Lambert Group*, 134 B.R. at 505.

29.     Relying on the guiding language of *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Dex-Cool,* 390 U.S. 414, 424, *reh'd denied*, 391 U.S. 909 (1968), courts in this Circuit have set forth the following factors regarding the reasonableness of such settlements:

> (1)     the probability of success in the litigation;
>
> (2)     the difficulties associated with collection;
>
> (3)     the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
>
> (4)     the paramount interests of the creditors.

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).  The decision to approve a particular settlement lies within the sound discretion of the Court.  *Mach. Terminals, Inc. v.*

*Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963). It is the responsibility

of the court to examine a settlement and determine whether it "falls below the lowest point in the

range of reasonableness." *In re Dow Corning Corp.*, 198 B.R. 214, 222 (Bankr. E.D. Mich.

1996). For the reasons set forth below, the Debtors respectfully submit that the Agreement

meets this standard.

   30. The Agreement falls well within the range of reasonableness, as it is fair

and equitable and in the paramount interest of the Debtors and their creditors. While the Parties

dispute factual and legal issues relevant to the disposition of some or all of each other's claims,

and, therefore, dispute the probability of success, the settlement represents a fair compromise of

the Dex-Cool Proof of Claim. Settlement at this stage avoids the expense, inconvenience,

uncertainty, and delay that would be caused by relitigating any of the issues resolved by the Dex-

Cool Class Action Settlement and further negotiated in the Agreement to the benefit of the

Debtors' estates.

   31. The Agreement alleviates the financial burden, time, and uncertainty

associated with continued litigation of the Dex-Cool Proof of Claim and the Dex-Cool Class

Action Settlement.

   32. Moreover, approval of the Agreement comports with this Court's October

6, 2009 Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and 9019(b)

Authorizing the Debtors to (I) File Omnibus Claims Objections and (II) Establish Procedures for

Settling Certain Claims (the "**De Minimis Order**"), (ECF No. 4180). The De Minimis Order

states, in relevant part, the following:

> If the Settlement Amount for a Claim is not a De Minimis
> Settlement Amount *but is less than or equal to $50 million*,
> the Debtors will submit the proposed settlement to the
> Creditors' Committee. Within five (5) business days of

receiving the proposed settlement, the Creditors' Committee may object or request an extension of time within which to object. If there is a timely objection made by the Creditors' Committee, the Debtors may either (a) renegotiate the settlement and submit a revised notification to the Creditors' Committee or (b) file a motion with the Court seeking approval of the existing settlement under Bankruptcy Rule 9019 on no less than 10 days' notice. *If there is no timely objection made by the Creditors' Committee or if the Debtors receive written approval from the Creditors' Committee of the proposed settlement prior to the objection deadline (which approval may be in the form of an email from counsel to the Creditors' Committee), then the Debtors may proceed with the settlement.*

33.     In accordance with this De Minimis Order, the Agreement, including the amount of Total Allowed Unsecured Claim, was submitted to the Creditors' Committee, which informed the Debtors that it has no objection to either the Agreement as a whole or to the Total Allowed Unsecured Claim provided for in the Agreement.

34.     The Debtors submit that the Agreement falls well within the range of reasonableness, is in the best interests of the Debtors' estates and their creditors, and should be approved as a sound exercise of the Debtors' business judgment. Accordingly, the Debtors respectfully request the entry of the Order.

## VI.    The Settlement Should Be Approved by the Court Under Rule 23

35.     The Agreement should also be approved pursuant to Rule 23.

36.     Federal courts have long expressed a preference for the negotiated resolution of litigation. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."). A general policy favoring settlement exists, especially with respect to class actions. *See, e.g.*, *In re AMC Realty Corp.*, 270 B.R. 132, 145-46 (Bankr. S.D.N.Y. 2001) (recognizing that "settlements are favored in federal law and the prompt resolution of claims and disputes makes the compromise of claims of

particular importance in the bankruptcy reorganization") (internal quotation marks omitted);

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.) ("We are mindful of the

'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation

omitted), *cert. denied*, 544 U.S. 1044 (2005); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.

1982) ("There are weighty justifications, such as reduction of litigation and related expenses, for

the general policy favoring the settlement of litigation."), *cert. denied*, 464 U.S. 818 (1983).

### (a)    The Dex-Cool Class Satisfies Rules 23(a) and 23(b)

37.    "Before certification is proper for any purpose—settlement, litigation, or

otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met."[6]

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006).    "Rule 23(a) and (b) standards

apply equally to certifying a class action for settlement or for trial, with one exception."  Manual

for Complex Litigation § 21.132 (4th ed. 2004) (emphasis added).  "Confronted with a request

for settlement-only class certification, a district court need not inquire whether the case, if tried,

would present intractable management problems," under Rule 23(b)(3)(D).  *Amchem Prods., Inc.*

*v. Windsor*, 521 U.S. 591, 620 (1997).

38.    The Parties stipulate, solely for purposes of settlement, that the Dex-Cool

Class meets the standards of Rules 23(a) and (b).  Specifically, the Parties submit that the Court

should adopt the California and Missouri Courts' findings with respect to the certification of the

Dex-Cool Class under California Section 382 and Missouri Rule 52.08 and find that the Dex-

Cool Class meets the standards of Rule 23.

---

[6]    Rule 23(a) requires that the Dex-Cool Class meet certain numerosity, commonality, typicality, and
adequacy requirements, and Rule 23(b) requires that, as to this Rule 23(b)(3) class, questions of law or fact common
to the Dex-Cool Class predominate over any questions affecting only individual members and that a class action be
superior to other available methods for fairly and efficiently adjudicating the controversy.  *See* Fed. R. Civ. P. 23(a),
(b).

39.    The California and Missouri Courts' findings in their Preliminary

Approval Orders and Final Judgment further demonstrate the satisfaction of Rules 23(a) and (b).

In those orders, the California and Missouri Courts found that:

- The Dex-Cool Class is so numerous that joinder of all members is impracticable;

- Questions of law or fact common to the Dex-Cool Class predominated over questions affecting individual members;

- The claims of named plaintiffs are typical of claims of the Dex-Cool Class as a whole;

- The representative plaintiffs will fairly and adequately assert and protect the interests of the Dex-Cool Class; and

- The Dex-Cool Class Action provides a superior method for adjudication of the controversy.

40.    The California Supreme Court has recognized that the requirements for

class certification under Rule 23(a) are "analogous to the requirements for class certification

under Code of Civil Procedure section 382." *In re Tobacco II Cases*, 207 P.3d 20, 33 (Cal.

2009); *Fireside Bank v. Superior Court*, 155 P.3d 268, 281 (Cal. 2007) (identifying requirements

for class action under section 382). Similarly, Missouri courts have analogized Rule 52.08 of the

Missouri Rules of Civil Procedure to Rule 23 of the Federal Rules. *Mitchell v. Residential

Funding Corp.*, Nos. WD 70210, WD 70227, WD 70244, WD 70263, 2010 WL 4720755, at *30

n.12 (Mo. Ct. App. Nov. 23, 2010); *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 222 (Mo. Ct.

App. 2007). To that end, both California and Missouri courts look to federal class action law

"when seeking guidance on issues of class action procedure." *In re Tobacco II Cases*, 207 P.3d

at 33.

41.     Accordingly, the Court should adopt the findings of the California and

Missouri Courts in their Preliminary Approval Orders and Final Judgment and find that the Dex-

Cool Class satisfies Rules 23(a) and 23(b) solely for the purposes of the Agreement.

### (b)    The Agreement Satisfies Rule 23(e)

42.     The Court should also find that the Agreement satisfies Rule 23(e)(2).

43.     Rule 23(e) requires court approval of a class action settlement.  The

standard for reviewing the proposed settlement of a class action in the Second Circuit, as in other

circuits, is whether the proposed settlement is "*fair, reasonable and adequate*."  *In re Luxottica*

*Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (emphasis added); *see In re*

*Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3 (S.D.N.Y.

Sept. 29, 2003).  In reviewing the reasonableness of a proposed class action settlement, courts

are cautioned against substituting their judgment for that of the parties who negotiated the

settlement or conducting a mini-trial on the merits of the action.  *See Weinberger*, 698 F.2d at 74;

*In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993).  The Second Circuit has

established the following factors as relevant in evaluating class action settlements:  (i) the

complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the

settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the

risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining

the class action through the trial; (vii) the ability of the defendants to withstand a greater

judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible

recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in

light of all the attendant risks of litigation.  *See In re Indep. Energy Holdings PLC*, 2003 WL

22244676, at *3; *accord In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. at 311.

44.     Here, there can be no doubt that the Agreement should be approved based on the foregoing factors.  The relatively advanced stage of the Dex-Cool Class Actions provided counsel with more than enough information to assess the strengths and weaknesses of the case, as well as the risks of damages.  Indeed, the Dex-Cool Class Actions have been ongoing since April 2003 and have involved extensive discovery, including more than forty depositions of the named plaintiffs, twenty-six depositions of current and former GM employees, and seven third-party witnesses, and significant law and motion practice.

45.     The Agreement also is fair, reasonable and adequate.  The Claim will be settled for approximately $800,000 *less* than the amount asserted in the Dex-Cool Proof of Claim and the Resubmitting Participating Class Members will largely obtain a general unsecured claim in the amount they would have received pre-bankruptcy.  Pursuant to the Agreement, the Claim will immediately be estimated in the amount of $2,205,570.00.  The Parties agreed on this amount after (i) the Resubmitting Participating Class Members submitted approximately 11,299 claim statements in an attempt to cure previously-deficient statements; (ii) the Claims Administrator reviewed approximately 6,685 of the claim statements submitted by the Resubmitting Participating Class Members and approved claims totaling $1,325,568.60; and (iii) Co-Lead Class Counsel conducted a further review of approximately 200 of the 4,614 additional claims submitted by the Resubmitting Participating Class Members.

46.     Finally, the Agreement is the result of numerous, arms-length and extensive negotiations between the Parties and their respective counsel concerning modification of the Dex-Cool Class Action Settlement.  *See In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *3; *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. at 311.

47.    Based on the foregoing, the Court should find that the Agreement satisfies Rule 23(e)(2).

### (c)    No Additional Notice Is Required

48.    The Notice of Settlement adopted and approved by the Parties and the California and Missouri Courts was in full compliance with the notice requirements of due process, federal law, the Constitution of the United States, and any other applicable law, and this Court need not require any new notice to be given to the Dex-Cool Class.  *See Green v. Am. Express Co.*, 200 F.R.D. 211, 212 (S.D.N.Y. 2001); *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. 429, 441 (D.N.J. 2000); 6 Herbert Newberg & Alba Conte, <u>Newberg on Class Actions</u>, § 11.72 (4th ed. 2002).

49.    In *Rosenberg v. XO Communications, Inc. (In re XO Communications, Inc.)*, the Southern District of New York Bankruptcy Court approved a stipulation that the debtor need not provide new notice to all potential class action members of a Rule 9019 motion settling the class action when notice of class action settlement had already been provided in the state court settlement.  *See* 330 B.R. 394, 409-410 (Bankr. S.D.N.Y. 2005).

50.    Here, the three-part Notice of Settlement that was approved by the California and Missouri courts and effected by the Claims Administrator more than satisfied due process.  The publication notice was published in four national newspaper supplements, with an estimated circulation of 65,900,000; twelve national consumer magazines, with a total estimated circulation of 43,865,000; and in Internet advertising appearing across a wide-range of websites, giving an estimated 199,500,000 views.  Indeed, over 68,000 claims statements were received, and, even though roughly 28,000 of those were deficient, the Resubmitting Participating Class Members have been given a second opportunity to cure and, through this Agreement, obtain benefits.  This Court should also find that the Notice of Settlement was previously provided in

full compliance with the notice requirements of due process, federal law, the Constitution of the

United States, and all other applicable law.  Indeed, based on the Parties' stipulation, this Court

previously ordered that notice on Co-Lead Class Counsel was sufficient to notify all members of

the Dex-Cool Class Action, including the Resubmitting Participating Class Members.  (*See* Class

Claims Stipulation at 2 ("Notice to the undersigned class counsel shall be, and shall be deemed

to be, sufficient notice to all class members in the Dex-Cool Class Action.").)

51.    The changes to the Dex-Cool Class Action Settlement that the Parties

agreed to in order to further implement the settlement after GM's bankruptcy and that are

contained in the Agreement do not require that any new or additional notice be given,

particularly where, as here, the changes resulted in terms that provide the Resubmitting

Participating Class Members with the Total Allowed Unsecured Claim that is equivalent to the

approximate value of the benefits that would have been provided to the Resubmitting

Participating Class Members under the Dex-Cool Class Action Settlement.

52.    Moreover, requiring the Parties to issue new notice at this juncture would

result in the Agreement being void.  Specifically, the Debtors have already paid for notice to the

Dex-Cool Class and have not agreed to pay for any further notice; in fact the Agreement will be

void if any further notice is required by the Court.  (*See* Agreement ¶ 1 (Ex. A) ("The Parties

further acknowledge and agree that, in the unlikely event that the Court requires any further

notice to the Dex-Cool Class, this Agreement shall be void and the Parties shall no longer be

bound by this Agreement.").)  In these circumstances, no additional notice should be required.

*See Green,* 200 F.R.D. at 213 (ordering that "no notice be served when the cost of notice, to say

nothing of the postage, would jeopardize, and likely destroy, the hard fought settlement

agreement that the parties have presented to this Court"); *cf. Hainey v. Parrott*, 617 F. Supp. 2d

668, 679 (S.D. Ohio 2007) ("Furthermore, establishing a second opt-out period would not be in the best interests of the class because it would result in additional administrative costs, which in turn reduces the amount available for distribution.").

53.    Finally, there is no evidence of any collusion between the Parties to the Agreement, further indicating that no additional notice is required. *See Green,* 200 F.R.D. at 213 (ordering no notice of settlement be given when "[f]irst, and most significantly, there is no evidence of collusion between the parties"); *Selby v. Principal Mut. Life Ins. Co.*, No. 98 Civ. 5283 (RLC), 2003 WL 22772330, at *4 (S.D.N.Y. Nov. 21, 2003) (ordering no notice of settlement be given "where is no evidence of collusion between the parties, and the settlement negotiations were conducted at arms-length").

54.    Based on the foregoing, this Court should find that the dissemination of the Notice of Settlement satisfied the requirements of Rule 23(e) and due process, and no new notice need be given regarding the Agreement.

## VII.  Notice

55.    Notice of this Motion has been provided to (i) Girard Gibbs LLP, Co-Lead Class Counsel for the Dex-Cool Plaintiffs and the Dex-Cool Class, 601 California Street, Suite 1400, San Francisco, California 94108 (Attn.: Eric H. Gibbs, Esq. and A. J. De Bartolomeo, Esq.); (ii) Polsinelli Shughart P.C., Co-Lead Class Counsel for the Dex-Cool Plaintiffs and the Dex-Cool Class, Twelve Wyandotte Plaza, 120 West 12th Street, Kansas City, Missouri 64105 (Attn.: P. John Brady, Esq.); and (iii) parties in interest in accordance with the Fifth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated January 3, 2011 (ECF No. 8360).  The Debtors submit that such notice is sufficient and no other or further notice need be provided.

56.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       March 24, 2011

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors

# EXHIBIT A

**EXECUTION COPY**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                          :
**In re**                                 :     Chapter 11 Case No.
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.,*  :     **09-50026 (REG)**
        f/k/a **General Motors Corp.,** *et al.* :
                                          :
              **Debtors.**                :     **(Jointly Administered)**
                                          :
----------------------------------------------------------x

### AGREEMENT RESOLVING PROOF OF CLAIM NO. 50026
### AND IMPLEMENTING MODIFIED CLASS SETTLEMENT

This Agreement Resolving Proof of Claim No. 50026 and Implementing
Modified Class Settlement (the "Agreement") is entered into as of March 24, 2011 (the
"Effective Date") by and among Motors Liquidation Company ("MLC") and its affiliated
debtors, as debtors in possession (collectively, the "Debtors"), and class action plaintiffs (the
"Dex-Cool Plaintiffs"), on behalf of themselves and the Dex-Cool Class (defined below) (the
Dex-Cool Plaintiffs, together with the Debtors, collectively, the "Parties").

WHEREAS, the Dex-Cool Plaintiffs filed several class action complaints
throughout the country, including in California, Missouri, Illinois, Texas, New Jersey, and
Pennsylvania (collectively, the "Dex-Cool Class Actions") against General Motors Corporation
("GM"), beginning in 2003, alleging that GM's use of Dex-Cool, a factory-fill coolant that GM
began using starting with its 1995 model year vehicles, caused problems with the engines or
cooling systems of certain GM vehicles;

WHEREAS, the Dex-Cool Class Actions were either coordinated by the Judicial
Panel on Multidistrict Litigation in federal district court in Illinois, or remanded to state courts in
Texas (*Longoria v. GM*), California (*Sadowski v. GM*), or Missouri (*Gutzler v. GM*);

WHEREAS, following substantial discovery, law and motion practice, and state-
wide classes having been certified by the Superior Court of the State of California, County of

EXECUTION COPY

Alameda (the "California Court") and the Circuit Court of Jackson County, Missouri at Independence (the "Missouri Court"), GM and the Dex-Cool Class (defined below) reached a comprehensive claims-made stipulation of settlement of the Dex-Cool Class Actions whereby, among other things, (i) the *Gutzler* action and the claims of a Missouri-only class would be resolved through a Missouri-only statewide settlement class subject to approval by the Missouri Court and approval of the similar *Sadowski* class by the California court (discussed below); and (ii) the *Sadowski* action, all the other Dex-Cool Class Actions, and the claims of a nationwide class (excluding persons who purchased or leased their vehicle in Missouri) would be resolved through a 49-state settlement class subject to approval by the California Court and approval of the similar *Gutzler* class by the Missouri Court (the "Dex-Cool Class Action Settlement"). A copy of the Dex-Cool Class Action Settlement is attached as Exhibit "A";

WHEREAS, under the terms of the Dex-Cool Class Action Settlement, GM agreed to reimburse members of the Dex-Cool Class who owned or leased certain GM vehicles with 3.1L and 3.4L engines, 3.8L engines, and 4.3L engines, paid for certain repairs performed within seven years or 150,000 miles after the original owner or lessee took physical possession of the vehicle as reported by the delivering dealer (the "Date of Initial Vehicle Delivery"), and who submitted timely and valid claims. Claims were required to be supported by documentation showing the amount the class member spent on a repair and documentation that the class member owned or leased the vehicle at the time of the repair. The amount of reimbursement a claimant was to receive depended on (i) when the repair was performed and (ii) the amount the class member actually paid for the repair. In exchange for the cash payments by GM to the Dex-Cool Class, GM received a release from all members of the Dex-Cool Class;

WHEREAS, both the California and Missouri Courts entered Preliminary Approval Orders (the "Preliminary Approval Orders"), in which they preliminarily approved the Dex-Cool Class Action Settlement; set fairness hearings; set forth deadlines for objecting to the Dex-Cool Class Action Settlement; approved the forms of class notice (collectively, the "Notice of Settlement"); approved the proposed manner of providing the Notice of Settlement; and conditionally certified the settlement classes;

WHEREAS, the Missouri Court conditionally certified the following class: "All Consumers who purchased or leased a Covered Vehicle in the State of Missouri (i) that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred an expense of the type included in the definition of Covered Repair, or (ii) who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order" (collectively, the "Missouri Class"). Excluded from the Missouri Class are GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; and the Judge to whom the Action is assigned as well as his or her immediate family;

WHEREAS, the California Court conditionally certified the following class: "All Consumers in the United State of America, excepting those who purchased or leased their vehicles in the State of Missouri, who (i) own or lease, or who have owned or leased, a Covered Vehicle that has been in service in excess of seven years, measured from the Date of Initial

Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred a repair expense of the type included in the definition of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order" (collectively, the "California Class," and, together with the Missouri Class, the "Dex-Cool Class"). Excluded from the California Class are GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone employed by counsel for Representative Plaintiffs, any Judge to whom any of the Actions is assigned as well as his or her immediate family; any and all persons who timely and validly request exclusion from the Class pursuant to the notice disseminated in accordance with the Notice Order;

WHEREAS, in accordance with the Preliminary Approval Orders, notice was effected. The notice program consisted of: (i) direct mail notice to certain readily identifiable Dex-Cool Class members, copies of which notices are attached hereto as Exhibits "B" and "C"; (ii) publication notice through a number of nationally-circulated magazines and weekend newspaper supplements, as well as through Internet advertising; and (iii) electronic notice through a dedicated website. The publication notice was published in four national newspaper supplements, with an estimated circulation of 65,900,000; twelve national consumer magazines, with a total estimated circulation of 43,865,000; and in Internet advertising appearing across a wide-range of websites, giving an estimated 199,500,000 views;

WHEREAS, on October 23, 2008, and September 5, 2008, respectively, after conducting fairness hearings, the California and Missouri Courts entered judgments (the "Final Judgments"), copies of which are attached hereto as Exhibit "D" and Exhibit "E," respectively, in which they certified the Dex-Cool Class and finally approved the Dex-Cool Class Action Settlement. In the Final Judgments, the California and Missouri Courts determined that the Dex-Cool Class satisfied Section 382 of the California Code of Civil Procedure ("Section 382") and Rule 52.08 of the Missouri Rules of Civil Procedure ("Rule 52.08") because: (i) the Dex-Cool Class was so numerous that joinder of all members was impracticable; (ii) questions of law or fact common to the Dex-Cool Class predominated over questions affecting individual members; (iii) the Dex-Cool Plaintiffs' claims were typical of the claims of the Dex-Cool Class members; (iv) the individual representative plaintiffs would fairly and adequately assert and protect the interests of the Dex-Cool Class under the criteria set forth in Section 382 and Rule 52.08; and (v) a class action provided a fair and efficient method for adjudication of the controversy;

WHEREAS, in the Final Judgments, the California and Missouri Courts also finally approved of the provisional designation of the law firms of Girard Gibbs LLP and Shughart Thomson & Kilroy, P.C. as Co-Lead Class Counsel ("Co-Lead Class Counsel");

WHEREAS, the Dex-Cool Plaintiffs applied for and were granted attorneys' fees from the California and Missouri Courts in a collective amount totaling $21,250,000.00 (collectively, the "Attorneys' Fees"); documented costs and expenses in a collective amount totaling $2,800,000.00 (collectively, "Documented Costs and Expenses"); and incentive awards to the individual representative plaintiffs in the Dex-Cool Class Actions in varying amounts, none of which exceeded $20,000.00 (collectively, the "Incentive Awards"). Accordingly, GM

**EXECUTION COPY**

subsequently funded the Attorneys' Fees, Incentive Award, and Documented Costs and
Expenses;

WHEREAS, in accordance with the Dex-Cool Class Action Settlement and the
Final Judgments, members of the Dex-Cool Class were required to submit a claim form ("Claim
Form") to obtain the benefits of the settlement. GM retained Garden City Group to serve as
claims administrator (the "Claims Administrator"). Accordingly, on May 21, 2008, the Claims
Administrator mailed Claim Forms to the approximately 1,430,000 members of the Dex-Cool
Class;

WHEREAS, the deadline for class members to submit and postmark valid and
timely Claim Forms for settlement benefits (together with any necessary supporting
documentation) to GM expired on October 27, 2008, and approximately 68,154 Claim Forms
were timely submitted by Dex-Cool Class members (collectively, the "Participating Dex-Cool
Class Members");

WHEREAS, the Claims Administrator reviewed the Claim Forms submitted by
the Participating Dex-Cool Class Members and approved approximately 40,000 claims as valid
and entitled to payment under the Dex-Cool Class Action Settlement, and GM funded
approximately $6,127,758.00 to satisfy those approved claims;

WHEREAS, on April 22, 2009, the Claims Administrator sent notice of
deficiency letters to approximately 28,000 claimants to provide them with an opportunity to cure
deficiencies in their claims forms and thereafter received approximately 11,299 resubmitted
claim forms (collectively, the "Resubmitting Participating Class Members");

WHEREAS, pre-petition, the Claims Administrator reviewed approximately
6,685 of the Claim Forms submitted by the Resubmitting Participating Class Members and
approved claims totaling $1,325,568.60;

WHEREAS, on June 1, 2009, before a review of the remaining 4,614 Claim
Forms submitted by the Resubmitting Participating Class Members could be completed by the
Claims Administrator, certain of the Debtors, including GM (the "Initial Debtors") commenced
voluntary cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")
before the United States Bankruptcy Court for the Southern District of New York (this "Court"),
Case No. 09-50026 (REG). The bankruptcy stayed all proceedings relating to the
implementation of the Dex-Cool Class Action Settlement, including the Claims Administrator's
review of the remaining 4,614 Claim Forms submitted by the Resubmitting Participating Class
Members;

WHEREAS, on September 16, 2009, this Court entered the Order Pursuant to
Section 502(b)(9) of the Bankruptcy Code and Rule 3003(c)(3) of the Federal Rules of
Bankruptcy Procedure (the "Bankruptcy Rules") Establishing the Deadline for Filing Proofs of
Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating
Thereto and Approving the Form and Manner of Notice Thereof establishing November 30, 2009
at 5:00 p.m. (Eastern) as the deadline to file proofs of claim against the Initial Debtors based on
prepetition claims;

**EXECUTION COPY**

WHEREAS, on November 25, 2009 a proof of claim based on the Dex-Cool Class Action Settlement was filed with this Court on behalf of the Dex-Cool Class and assigned claim number 50026 (the "Dex-Cool Proof of Claim"), asserting a claim in the amount of $3,000,000.00, for class consideration allegedly due pursuant to the Dex-Cool Class Action Settlement for claim amounts due to the Resubmitting Participating Class Members (the "Claim");

WHEREAS, due to GM's bankruptcy, Debtors are unable to provide the Resubmitting Participating Class Members with the exact benefits originally envisioned in the Dex-Cool Class Action Settlement, and, accordingly, the Parties request that this Court approve this Agreement to provide the Resubmitting Participating Class Members with the Total Allowed Unsecured Claim (defined below) that is equivalent to the approximate value of those benefits;

WHEREAS, on December 1, 2009, this Court approved and entered the Stipulation and Order Between the Debtors and the Holders of Unliquidated Dex-Cool and Anderson Claims to Allow Class Proofs of Claim for Dex-Cool and Anderson Claimants (the "Class Claims Stipulation"), a copy of which is attached hereto as Exhibit "F," and through which the Debtors and the holders of Unliquidated Dex-Cool Claims, defined in the Class Claims Stipulation as the claims made in connection with the Dex-Cool Class Action that had not yet been liquidated pursuant to the terms of the Dex-Cool Class Action Settlement, agreed that Co-Lead Class Counsel could file a class-wide proof of claim on behalf of all holders of Unliquidated Dex-Cool Claims; and

WHEREAS after good-faith, arms' length negotiations, the Parties have reached an agreement to resolve the Dex-Cool Proof of Claim and implement the Dex-Cool Class Action Settlement through this Agreement;

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed by the Parties that:

1.      The Parties will jointly seek Court approval of this Agreement and seek to secure any factual findings or legal conclusions necessary to effectuate the purposes and goals of this Agreement and final approval thereof. In particular, promptly after execution of this Agreement by all Parties, the Debtors shall file a motion seeking Court approval of the Agreement pursuant to Federal Rule of Bankruptcy Procedure 9019 and Rule 23 of the Federal Rules of Civil Procedure (the "Motion"). The Motion will confirm that under the terms of this Agreement, the only relief sought by the Dex-Cool Class is the Total Allowed Unsecured Claim (defined below) and that no other claims or amounts are sought from Debtors or asserted by the Dex-Cool Class against Debtors. The Motion will also confirm that, for purposes of this Court approving this Agreement only, the Parties acknowledge and stipulate to the validity of the Dex-Cool Class's certification in the Dex-Cool Class Action; that this Court, for purposes of granting the Motion, may take judicial notice of the Final Judgments entered by the California and Missouri Courts on October 23, 2008, and September 5, 2008, respectively; and that this Court, in considering the Motion and implementation of the Dex-Cool Class Action Settlement, need only address the class-action settlement factors addressed in Federal Rule Civil Procedure 23(e) ("Rule 23(e)"). Specifically, the Parties agree to request this Court adopt the Notice of Settlement in the Dex-Cool Class Action as sufficient under Rule 23(e) and find that it is not

**EXECUTION COPY**

necessary to provide any further notice to the Dex-Cool Class. Since the notice was previously provided to the Dex-Cool Class in accordance with due process, the Dex-Cool Parties (defined below) hereby acknowledge and agree that the Debtors shall not be responsible for any costs related to any further notice that this Court may order in connection with the implementation of this Agreement. The Parties further acknowledge and agree that, in the unlikely event that this Court requires any further notice to the Dex-Cool Class, this Agreement shall be void and the Parties shall no longer be bound by this Agreement. It is acknowledged by the Parties that the Debtors' agreement not to challenge certification or Co-Lead Class Counsel's authority (through this Agreement and the Class Claims Stipulation) to proceed under Rule 7023 of the Federal Rules of Bankruptcy Procedure to file the Dex-Cool Proof of Claim is based solely on the unique facts and circumstances of this particular Claim.

2.      This Agreement is subject to and shall be binding on the Parties only upon Court approval. "Court Approval" shall mean the entry by this Court in *In re Motors Liquidation Company et al.*, Chapter 11 Case No. 09-50026 (REG), after notice and a hearing, of an order approving this Agreement, substantially in the form attached hereto as Exhibit "G" (the "Court Order"). "Court Approval Date" shall mean the date upon which the Court Order becomes Final (as defined below). In the event Court Approval is not granted or similar relief is not otherwise provided by this Court or in the event that the Court Approval Date does not occur, this Agreement shall be deemed to be null and void and no Party shall have any obligations to another Party arising out of this Agreement, save and except for the obligations and/or provisions set forth in Paragraphs 9, 10, 12, 14, 16, 17, and 18 hereof, which provisions are intended to survive the expiration or earlier termination of this Agreement. "Final" shall mean that the Court Order has been entered by this Court, and (i) the time to appeal or petition for certiorari has expired and no timely appeal or petition for certiorari shall then be pending, or (ii) if a timely appeal or writ of certiorari thereof has been sought, that the Court Order shall have been affirmed by the highest court to which such Court Order was appealed, or *certiorari* shall have been denied or reargument or rehearing on remand shall have been denied or resulted in no material modification of such Court Order, and the time to take any further appeal, petition for *certiorari,* or move for modification of such Court Order, or move for reargument or rehearing, or move for a new trial or to amend the judgment under Rule 59 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before this Court shall have expired; provided, however, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedure in cases before this Court, may be filed with respect to such Court Order shall not cause such Court Order not to be Final.

3.      Subject to and upon execution by all Parties to this Agreement, the Dex-Cool Proof of Claim shall be treated as an allowed general unsecured claim against MLC in the amount of $2,205,570.00 (the "Total Allowed Unsecured Claim"). Regardless of any challenge to this Agreement or the failure of this Agreement to become effective the Parties hereby agree that the Dex-Cool Proof of Claim shall be estimated to be $2,205,570.00 for all purposes, including for Plan confirmation and distribution purposes.

4.      As consideration for the Agreement, including the release contained herein, on the Court Approval Date, the Resubmitting Participating Class Members shall be granted the Total Allowed Unsecured Claim, which shall constitute, in the aggregate, a single

EXECUTION COPY

allowed general unsecured claim by the Resubmitting Participating Class Members collectively against MLC in the amount of $2,205,570.00.  Co-Lead Class Counsel is authorized, following the Court Approval Date and without any additional approval from this Court, to (i) sell, transfer, assign, and/or otherwise monetize the Total Allowed Unsecured Claim, either individually or through a broker, and/or (ii) monetize any shares, warrants, options or other property received from Debtors on account of the Total Allowed Unsecured Claim as part of any confirmed Chapter 11 plan or plans in these chapter 11 cases (the "Plan") in any commercially reasonable manner.  The resulting cash proceeds from the foregoing activities shall be utilized by Co-Lead Class Counsel to make distributions, on a *pro rata* basis, to the Resubmitting Participating Class Members who have submitted valid and complete claims in accordance with the Dex-Cool Class Action Settlement, in accordance with the allocation plan (the "Plan of Allocation") set forth below.  Co-Lead Class Counsel is solely responsible for administration and implementation of the Plan of Allocation and distribution of the cash proceeds resulting from the Total Allowed Unsecured Claim in accordance with this Agreement, and in no event shall the Debtors be responsible or liable for the administration of the Dex-Cool Class; administration or distribution of cash proceeds from the Total Allowed Unsecured Claim; or implementation of the Plan of Allocation.

5.    Pursuant to the following Plan of Allocation contained in this Paragraph 5, Co-Lead Class Counsel shall make distributions, on a *pro rata* basis, from cash proceeds resulting from the sale or assignment of the Total Allowed Unsecured Claim to any third party or the sale of any stock or shares, in the open market or otherwise, to the Resubmitting Participating Class Members who submitted a proper claim under the terms of the Dex-Cool Settlement as follows:

(a)    For a Resubmitting Participating Dex-Cool Class Member who incurred a Covered Repair (as defined in the Dex-Cool Class Action Settlement) within five years after initial vehicle delivery, such member may obtain reimbursement, on a *pro rata* basis, of the greater of (i) the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to $400, or (ii) if the Resubmitting Participating Dex-Cool Class Member submitted Proof of Internal Leak Repair Expense (as defined in the Dex-Cool Class Action Settlement) showing a repair expense of more than $1,500 due to a diagnosed internal coolant leak, 40% of the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to a maximum of $800;

(b)    For a Resubmitting Participating Dex-Cool Class Member who incurred a Covered Repair between the fifth and sixth year after initial vehicle delivery, such member may obtain reimbursement, on a *pro rata* basis, of the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to $100; and

**EXECUTION COPY**

     (c)     For a Resubmitting Participating Dex-Cool Class Member who incurred a Covered Repair between the sixth and seventh year after initial vehicle delivery, such member may obtain reimbursement, on a *pro rata* basis, of the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to $50.

     6.     Each of the Parties understands, agrees, and acknowledges that the *pro rata* nature of the reimbursement payments under each of the foregoing shall be paid from the cash proceeds resulting from the disposition, by Co-Lead Class Counsel, of the Total Allowed Unsecured Claim. The Resubmitting Participating Class Members acknowledge and agree that the resulting cash proceeds likely will be insufficient to pay Resubmitting Participating Class Members in full.

     7.     Upon entry of the Court Order and receipt by Co-Lead Class Counsel, on behalf of the Resubmitting Participating Class Members, of the Total Allowed Unsecured Claim, the Parties agree that the Claim and the Dex-Cool Proof of Claim shall be superseded and replaced by the Total Allowed Unsecured Claim and the claims docket or registry may be so modified and amended without further order of this Court. Within ten (10) business days of the date of entry of the Court Order, the Dex-Cool Plaintiffs, as represented by Co-Lead Class Counsel, shall file the Court Order with the California and Missouri Courts.

     8.     Upon entry by this Court of the Court Order and unless otherwise set forth herein, the Dex-Cool Plaintiffs, the Dex-Cool Class, and their affiliates, successors and assigns, and their agents, insurers, representatives, administrators, executors, trustees and attorneys (collectively, the "Dex-Cool Parties"), shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns, including GM or its successors in interest ("New GM") (collectively, the "Debtor Parties"), and, except as set forth in this Agreement, the Dex-Cool Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code), complaints, grievances, liabilities, obligations, promises, agreements, damages, causes of action, rights, debts, demands, controversies, costs, losses, and expenses (including attorneys' fees and expenses) whatsoever, including but not limited to claims under any municipal, local, state, or federal law, common or statutory, whether known or unknown, and connected with this Agreement and/or the Dex-Cool Class Action Settlement and/or the Dex-Cool Class Actions against any of the Debtor Parties, and are hereby barred from asserting any and all claims whatsoever, whether known or "Unknown Claims" (defined below), presently existing, whether or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Agreement by the Dex-Cool Parties (the "Settled Claims"). Nothing herein shall be construed as a release or waiver of any Party's rights or obligations under this Agreement. The Dex-Cool Parties fully understand that the facts upon which the Agreement are based may hereafter be other than or different from facts now believed by either Party to be true, expressly accept and assume the risks of such possible differences in facts, and agree that this Agreement shall remain effective notwithstanding any such differences in facts.

     For purposes of this Agreement, "Unknown Claims" means any and all Settled Claims that the Dex-Cool Parties do not know or suspect to exist in their favor upon the

Effective Date, which if known by them, might have affected their decision with respect to the Agreement. With respect to any and all Settled Claims, the Dex-Cool Parties stipulate and agree that they and each member of the Dex-Cool Class shall be deemed to have, and by operation of law shall have, waived any and all provisions, rights, and benefits conferred by any law, rules, or regulations of any state or territory of the United States or any other country, or principle of common or civil law, which is similar, comparable, or equivalent to California Civil Code § 1542, which provides:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.

The Dex-Cool Parties may hereafter discover facts in addition to or different from those which he, she, or it now knows or believes to be true with respect to the subject matter of the Settled Claims, but the Dex-Cool Parties shall expressly have and each Dex-Cool Class member shall be deemed to have, and by operation of law shall have, fully, finally, and forever settled and released any and all Settled Claims and Unknown Claims, known or unknown, suspected or unsuspected, contingent or non-contingent, whether or not concealed or hidden, which now exist, or heretofore have existed, upon any theory of law or equity now existing or coming into existence in the future, without regard to the subsequent discovery or existence of such different or additional facts. The Parties acknowledge, and the members of the Dex-Cool Class shall be deemed by operation of law to have acknowledged, that the foregoing waiver was separately bargained for and a material element of the settlement of which this release is a part.

9.      By executing this Agreement, the Parties acknowledge that they (a) are not relying upon any statements, understandings, representations, expectations, or agreements other than those expressly set forth in this Agreement; (b) have made their own investigation of the facts and are relying solely upon their own knowledge and the advice of their own legal counsel; (c) knowingly waive any claim that this Agreement was induced by any misrepresentation or nondisclosure and any right to rescind or avoid this Agreement based upon presently existing facts, known or unknown; and (d) are entering into this Agreement voluntarily, of their own free will, and without any coercion, undue influence, threat, or intimidation of any kind or type whatsoever. The Parties stipulate that each Party is relying upon these representations and warranties in entering into this Agreement. The representations and warranties contained in this Paragraph 9 shall survive the execution of this Agreement indefinitely.

10.      By entering into this Agreement, the Parties do not admit, and specifically deny, any violation of any contract, municipal, local, state, or federal law, common or statutory. Neither the execution of this Agreement nor compliance with its terms, nor the consideration provided for herein shall constitute or be construed as an admission by any Party (or any Party's agents, representatives, attorneys, or employers) of any fault, wrongdoing, or liability whatsoever, and the Parties acknowledge that all such liability is expressly denied by the Debtors. This Agreement has been entered into in release and compromise of claims as stated herein and to avoid the expense and burden of litigation.

11.    If any provision or term of this Agreement, other than those set forth in Paragraph 8 above, is held to be illegal, invalid, or unenforceable, such provision or term shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of each such illegal, invalid, or unenforceable provision or term there shall be added automatically as a part of this Agreement another provision or term as similar to the illegal, invalid, or unenforceable provision as may be possible and that is legal, valid, and enforceable.

12.    As a condition precedent to any obligations or liabilities of the Debtor Parties, the Dex-Cool Plaintiffs expressly represent and warrant to the Debtor Parties that (a) they are the lawful owners of certain of the claims and the potential claims released in this Agreement and release; (b) they have full capacity and authority to settle, compromise, and release the Dex-Cool Class claims and potential claims and to enter into this Agreement on behalf of the Dex-Cool Class; (c) no other person or entity has acquired or has been assigned, or will in the future acquire or have any right to assert, against any of the Debtor Parties any portion of the Dex-Cool Class Action claims or any other potential claims released in this Agreement; and (d) they know of no other person or entity that intends to assert a claim by, through, under, or on behalf of any of the Dex-Cool Parties.  The representations and warranties contained in this Paragraph 12 shall survive the execution of this Agreement indefinitely.

13.    This Agreement, which expressly incorporates the Dex-Cool Class Action Settlement (as modified herein), contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties relating thereto. This Agreement is subject in all respects to consent by the statutory committee of unsecured creditors, and if such consent is not obtained by the Debtors, then the Debtors may determine, in their sole discretion, whether to proceed forward with seeking Court approval of the Agreement or abandon the Agreement.

14.    This Agreement may not be modified other than by signed writing executed by the Parties or by order of this Court.

15.    Each person who executes this Agreement represents that he or she is duly authorized to do so on behalf of the respective Parties hereto and that each such party has full knowledge and has consented to this Agreement.

16.    This Agreement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Agreement to present any copy, copies, or facsimiles signed by the Parties hereto.

17.    This Agreement shall be exclusively governed by and construed and enforced in accordance with the laws of the state of New York, without regard to conflicts of law principles thereof. This Court shall retain exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Agreement.

EXECUTION COPY

18.    Each of the Parties understands, agrees, and acknowledges that all of the Parties shall be deemed to be the drafters of this Agreement and any ambiguity in or dispute regarding the interpretation of this Agreement shall not be resolved by any rule of interpretation providing for interpretation against the party that causes the uncertainty to exist or against any party as the drafter.

19.    The Parties agree that the Court Order shall provide that, notwithstanding entry of the Court Order, this Court shall retain continuing jurisdiction over the Parties to further effectuate its Court Order and the terms of this Agreement.

20.    If notice need be given to the Parties for the purposes of this Agreement, any performance thereunder, or any motions or orders related to the Agreement, under the Federal Rules of Civil Procedure, the Bankruptcy Rules, or otherwise, notice shall be transmitted as follows:

If to the Dex-Cool Parties, delivered or faxed to:

Eric H. Gibbs
A.J. De Bartolomeo
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, CA 94108

If to Debtors, delivered or faxed to:

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinksy
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York New York 10153

**THE UNDERSIGNED WARRANT THAT THEY HAVE READ THE TERMS OF THIS AGREEMENT, HAVE HAD THE ADVICE OF COUNSEL OR THE OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING, UNDERSTANDING AND EXECUTING THE AGREEMENT, AND HAVE FULL KNOWLEDGE OF THE TERMS, CONDITIONS AND EFFECTS OF THIS AGREEMENT.**

**[THE REMAINDER OF THIS PAGE HAS INTENTIONALLY BEEN LEFT BLANK]**

| MOTORS LIQUIDATION COMPANY AND AFFILIATED DEBTORS | GIRARD GIBBS LLP, AS CO-LEAD CLASS COUNSEL |
|---|---|
| By: _____ | By _____ |
| Print Name: _____ | Print Name: A. J. De Bartolomeo |
| Title: _____ | Title: Partner |
| Dated: March ___, 2011 | Dated: March 23, 2011 |

| | POLSINELLI SHUGHART, P.C., AS CO-LEAD CLASS COUNSEL |
|---|---|
| | By: _____ by permission |
| | Print Name: Jack Brady |
| | Title: Partner |
| | Dated: March 23, 2011 |

| MOTORS LIQUIDATION COMPANY AND AFFILIATED DEBTORS | GIRARD GIBBS LLP, AS CO-LEAD CLASS COUNSEL |
|---|---|
| By: _J. Head_ | By: _____ |
| Print Name: DAVID HEAD | Print Name:_____ |
| Title: VICE - PRESIDENT | Title:_____ |
| Dated: March 24, 2011 | Dated: March ___, 2011 |

| POLSINELLI SHUGHART, P.C., AS CO-LEAD CLASS COUNSEL |
|---|
| By: _____ |
| Print Name:_____ |
| Title:_____ |
| Dated: March ___, 2011 |

# EXHIBIT A

1

2

3

4

5

6          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

7              **FOR THE COUNTY OF ALAMEDA**

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 1550(b)) | JUDICIAL COUNCIL COORDINATION<br>PROCEEDING NO. 4495 |
| **GENERAL MOTORS**<br>**DEX-COOL/GASKET CASES** | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA<br>NO. HG03093843 |
| Included actions: | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN JOAQUIN |
| Sadowski v. General Motors Corp. | NO. CV 025 770 |
| Bertino v. General Motors Corp. | **MASTER CLASS ACTION SETTLEMENT**<br>**AGREEMENT COVERING ALL STATES**<br>**EXCEPT THE STATE OF MISSOURI** |
| | The Honorable Robert B. Freedman |
| | Action filed:    April 29, 2003<br>Trial date:    None set |

19          This Settlement Agreement ("Agreement" or "Settlement") is entered into between the

20  Representative Plaintiffs on behalf of themselves and the Class, and Defendant General Motors

21  Corporation ("GM"), by and through their respective counsel or other designated signatory, in

22  settlement and compromise of the Actions, as well as the Amico/Bertino Actions.

23  1.    **DEFINITIONS**

24          1.1.    "Actions" means the following lawsuits:

25                  (a) *Sadowski v. General Motors*, Case No. HG03091369 (Alameda County, California)

26                  (b) *Bowers v. General Motors*, Case No. 002590 (Philadelphia County, Pennsylvania)

27                  (c) *Brown v. General Motors*, Case No. 03-539 GPM (S.D. Ill.)

28                  (d) *Cherney v. General Motors*, Case No. 3113-03 (Albany County, New York)

(e) *Dalidowicz v. General Motors*, Case No. MID-L-3875-03 (Middlesex County, New Jersey)

(f) *Dochwat v. General Motors,* Case No. 03-410-GPM (S.D. Ill.)

(g) *Flynn v. General Motors*, Case No.: 03-L-723 (Madison County, Illinois)

(h) *Longoria v. General Motors*, Case No. 03-03140-D (Nueces County, TX)

(i) *Strzalkowski v. General Motors*, Case No. 04-04740 (D. N.J.)

(j) *Sher Family Limited Partnership v. General Motors*, Case No. 06-00629 (E.D. Pa.)

(k) *Sullivan v. General Motors*, Case No. 07-00127 (W.D. N.C.)

(l) All actions consolidated as part of MDL No. 1562 and made part of the Second Amended Consolidated Class Action Complaint in the MDL cases.

Nothing contained in the definition of "Actions" is intended to, or shall be deemed to, limit the scope of the 49 state settlement or the release contained herein.

1.2. "Amico/Bertino Actions" means the following lawsuits: *Amico v. General Motors,* Case No. 2004-092816 (Maricopa County, Arizona) and *Bertino v. General Motors,* Case No. CV025770 (San Joaquin County, California). Nothing contained in the definition of "Amico/Bertino Actions" is intended to, or shall be deemed to, limit the scope of the 49 state settlement or the release contained herein.

1.3. "Amico/Bertino Counsel" means Michael F. Ram of Levy, Ram & Olson LLP; John W. Rasmussen of Johnson, Rasmussen, Robinson & Allen P.L.C.; Richard T. Dorman of Cunningham, Bounds, Crowder, Brown & Breedlove, LLC; Mark S. Baumkel of Mark S. Baumkel & Associates; and James Belford Brown of Herum Crabtree Brown.

1.4. "Claim" means a claim to receive a cash payment under subparagraphs 3.1 and/or 3.2. A Claim consists of a Claim Statement, Proof of Expenditure, Proof of Ownership, and in the case of a claim under subparagraph 3.2, Proof of Internal Leak Repair.

1.5. "Claimant" means a Class Member who submits a Claim.

1.6. "Claim Deadline" means 150 days after the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order.

1       1.7.  "Claim Statement" means a document substantially in the form of Exhibit A hereto,

2  which must be submitted by the Class Member, postmarked or received by the Claims Administrator,

3  by the Claim Deadline in order to obtain benefits under the Settlement, as described below.

4       1.8.  "Claims Administrator" means Garden City Group, Inc. or such other entity to be

5  retained by General Motors, subject to approval by Co-Lead Counsel, to, among other things,

6  administer the Settlement and the claims process set forth in subparagraphs 3.1-3.8, below, including

7  receiving and processing claims, determining which claims are valid, assisting Class Members with the

8  completion and submission of claims, issuing and mailing Settlement payments, and ensuring that

9  claims fulfillment is properly implemented.

10       1.9.  "Class" means all Consumers in the United States of America (excepting those who

11  purchased or leased a vehicle in the State of Missouri) who (i) own or lease, or who have owned or

12  leased, a Covered Vehicle that has been in service in excess of seven years, measured from the Date of

13  Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated

14  and who, at the time of the notice, had not incurred a repair expense of the type included in the

15  definition of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and

16  who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is

17  disseminated to the Class in accordance with the Notice Order.  Excluded from the Class are GM; any

18  affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer,

19  director, or employee of GM; any successor or assign of GM; anyone employed by counsel for

20  Representative Plaintiffs; and any Judge to whom any of the Actions is assigned as well as his or her

21  immediate family.

22       1.10.  "Class Counsel" means Co-Lead Counsel and the following counsel:  Norman E. Siegel

23  of Stueve Siegel Hanson LLP; John M. Parisi of Shamberg Johnson & Bergman; Andrew N. Friedman

24  of Cohen Milstein, Hausfeld & Toll, PLLC; Ernest Cory of Cory Watson Crowder & Degaris PC; Joe

25  Whatley of Whatley Drake LLC; Lee S. Shalov of Shalov Stone Bonner & Rocco, LLP; William M.

26  Audet of Alexander, Hawes & Audet, LLP; Michael B. Marker of The Rex Carr Law Firm, LLC ;

27  Matthew H. Armstrong of Schlichter Bogard & Denton LLP; Murray Fogler of McDade Fogler Maines,

28  LLP; Jonathan Shub of Seeger Weiss LLP; Steven N. Berk of Chavez & Gertler LLP; Jonathan W.

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

1    Cuneo of Cuneo Gilbert & LaDuca, LLP; Michael D. Donovan of Donovan Searles, LLC; and Joel R.

2    Rhine and Christopher A. Chleborowicz of Lea Rhine Rosbrugh & Chleborowicz, PLLC.

3        1.11. "Class Member" means a member of the Class.

4        1.12. "Co-Lead Counsel" means Eric H. Gibbs of the law firm Girard Gibbs LLP, and P. John

5    Brady of the law firm Shughart Thomson & Kilroy P.C.

6        1.13. "Consumer" means a person who purchases or leases for personal, family, or household

7    use.

8        1.14. "Court," unless specifically stated otherwise,  means the Superior Court of the State of

9    California for the County of Alameda.

10        1.15. "Covered Repair" means any Engine Group A Repair, Engine Group B Repair, or Engine

11    Group C Repair.

12        1.16. "Covered Vehicle" means an Engine Group A Vehicle, Engine Group B Vehicle, or

13    Engine Group C Vehicle.

14        1.17. "Date of Initial Vehicle Delivery" means the date on which the original retail purchaser

15    or lessee took physical possession of the vehicle as reported by the delivering dealer.

16        1.18. "Effective Date" and/or "Effective Date of Settlement" means the latest of the following

17    dates:  (i) if no appeal from the Judgment is filed, the date of expiration of the time for the filing or

18    noticing of any appeal from the Judgment; or (ii) if an appeal from the Judgment is filed, and the

19    Judgment is affirmed or the appeal dismissed, the date beyond which California Supreme Court review

20    is no longer available; or (iii) if the Court of Appeal issues a judgment affirming the Judgment or

21    dismissing the appeal ("Appellate Judgment") and a petition for review of the Appellate Judgment is

22    filed and denied, the date beyond which United States Supreme Court review is no longer available; or

23    (iv) if a petition for review of the Appellate Judgment is filed and granted, or the California Supreme

24    Court orders review of the Appellate Judgment on its own motion, and the Appellate Judgment is

25    affirmed or the review proceeding dismissed, and no petition for a writ of certiorari with respect to the

26    Supreme Court's judgment affirming the Appellate Judgment or dismissing the review proceeding

27    ("Review Judgment") is filed, the date of expiration of the time for the filing of such a petition for a

28    writ of certiorari; or (v) if such a petition for a writ of certiorari is filed and denied, the date the petition

1    is denied; or (vi) if such a petition for a writ of certiorari is filed and granted, the date of final

2    affirmance of the Review Judgment or final dismissal of the review proceeding initiated by the petition

3    for a writ of certiorari.  This Settlement shall not become Effective, and this definition of Effective Date

4    shall not be met, unless and until the Effective Date of the Missouri Settlement Agreement, entered into

5    by the parties in the action entitled *Gutzler v. General Motors*, Case No. 03CV208786 (Jackson

6    County, Missouri).  In the event that the Missouri Settlement Agreement, entered into by the parties in

7    the action entitled *Gutzler v. General Motors*, Case No. 03CV208786 (Jackson County, Missouri), is

8    not given final approval by the court in that action, or is reversed or modified on appeal, this Settlement

9    shall not become Effective and General Motors shall have the option and right to rescind this

10    Settlement at its sole discretion by filing with the Court written notice of such election, with proof of

11    service on Co-Lead Counsel.  Notwithstanding the above, and for the sole purpose of avoiding

12    unnecessary delay in Class Members' receipt of settlement benefits, in the event that an appeal from the

13    Judgment is filed, and such appeal (a) is an appeal only of the portion of the Judgment awarding i) an

14    amount up to $140,000 in incentive payments to Representative Plaintiffs, (ii) attorneys' fees in an

15    amount not to exceed $16.5 million and/or (iii) documented costs in an amount not to exceed $1.55

16    million, and (b) could not result in the reversal and/or modification of the Judgment (including the

17    release provisions contained in paragraphs 3.14 through 3.18), then GM and Co-Lead Counsel may,

18    acting in good faith and upon mutual agreement, agree that the settlement is otherwise Effective and

19    that implementation of the settlement, including distribution of the settlement benefits, should proceed.

20        1.19.  "Engine Group A Vehicle" means any 1995 through 2003 model year vehicle with a 3.1-

21    liter V6 or 3.4-liter V6 engine that was factory-equipped with Dex-Cool coolant and a nylon/silicone

22    lower intake manifold gasket.  Excluded are all 2003 model year vehicles manufactured after April 9,

23    2003.

24        1.20.  "Engine Group A Repair" means any lower intake manifold gasket replacement made on

25    an Engine Group A Vehicle within the earlier of 7 years or 150,000 miles of the Date of Initial Vehicle

26    Delivery.

27        1.21.  "Engine Group B Vehicle" means any 1995 through 2004 model year vehicle with a 3.8-

28    liter V6 engine (RPO L36) that was factory-equipped with Dex-Cool coolant.

5

1.22. "Engine Group B Repair" means any engine sealability repair made on an Engine Group B Vehicle within the earlier of 7 years or 150,000 miles of the Date of Initial Vehicle Delivery. Engine sealability repairs with respect to an Engine Group B Repair include but are not limited to replacements of a throttle body gasket, upper intake manifold gasket, lower intake manifold gasket, or intake manifold.

1.23. "Engine Group C Vehicle" means any 1995 through 2000 model year S/T light truck or sport utility vehicle with a 4.3-liter V6 engine that was factory-equipped with Dex-Cool coolant.

1.24. "Engine Group C Repair" means any Sludge-related repair made on an Engine Group C Vehicle within the earlier of 7 years or 150,000 miles of the Date of Initial Vehicle Delivery. Sludge-related repairs are repairs that are caused by cooling system Sludge and may include but are not limited to cooling system flushes, heater core repairs, water pump repairs, and radiator cap replacements to the extent that they were the result of cooling system Sludge.

1.25. "Judgment" means the judgment to be entered by the Court pursuant to this Settlement, substantially in the form attached hereto as Exhibit C (but which may be modified or amended as necessary before entry in order to effectuate the terms of this Agreement), which shall include, among other things, final approval of the Settlement, dismissal of the *Sadowski* action with prejudice and approval and entry of the provisions contained in Section 3.C, Release of Claims, below (i.e. paragraphs 3.14 through 3.18).

1.26. "Notice Order" means an order substantially in the form of Exhibit B hereto, providing for, among other things, provisional certification of the Class for settlement purposes only; preliminary approval of the Settlement; dissemination of notice to the Class according to the notice plan attached; and setting of the Fairness Hearing.

1.27. "Parties" means the Representative Plaintiffs and Defendant GM.

1.28. "Proof of Expenditure" means contemporaneous documentary proof of an out-of-pocket expenditure by a Class Member on a Covered Repair to the extent not fully reimbursed under a new vehicle warranty or any extended warranty or goodwill adjustment. In the case of an Engine Group A Repair, Proof of Expenditure must document that the repair was made due to a failed intake manifold gasket (and was not associated with a larger repair unrelated to a failed lower intake manifold gasket).

6

In the case of an Engine Group B Repair, Proof of Expenditure must document that the repair was made due to an engine coolant sealability repair (including but not limited to throttle body gasket, upper intake manifold gasket, lower intake manifold gasket, or intake manifold) (and was not associated with a larger repair unrelated to a failed throttle body gasket, upper intake manifold gasket, lower intake manifold gasket, intake manifold, or other engine sealability issue).  In the case of an Engine Group C Repair, Proof of Expenditure must document that the repair was made due to diagnosed Sludge.  An acceptable form of proof may include any written statement based on personal knowledge by the person or business that performed the repair, such as a receipt.  In the event that contemporaneous documentary proof (i.e. an actual repair invoice or other contemporaneous documentary proof of the repair) is not available, then a Claimant may satisfy the proof of expenditure requirement by submitting (i) a written statement based on personal knowledge from the person or business who made the repair that a copy of the actual repair invoice or other contemporaneous documentary proof of the repair is not available and that the repair qualified as an Engine Group A Repair, Engine Group B Repair, or Engine Group C repair as described above, and (ii) proof of payment of the repair.  If a Claimant is unable to provide the requisite Proof of Expenditure described above, the Claimant may submit the best available written statement or other documents that the Claimant believes demonstrates a Proof of Expenditure, and the Claims Administrator and General Motors, in the exercise of their joint, reasonable discretion, may under subparagraph 3.6, after review of all such Claims, approve the Claim.

1.29.  "Proof of Internal Leak Repair Expense" means Proof of Expenditure as defined in subparagraph 1.26 above where the expenditure was (i) over $1,500 and (ii) due to diagnosed internal coolant leak.  For purposes of this Settlement Agreement, an internal coolant leak means a diagnosed coolant leak into the vehicle's internal components, as opposed to an external leak where coolant leaks only out of the vehicle.

1.30.  "Proof of Ownership" means documentary proof that, at the time a Covered Repair was performed, the Claimant owned or leased the vehicle on which the Covered Repair was performed.  An acceptable form of proof may include a copy of a vehicle registration card, proof of insurance coverage, title certificate, bill of sale, or lease agreement.

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

1    1.31.    "Repair Expense" means the actual out-of-pocket expense incurred by the Claimant

2    Class Member for the Covered Repair itself.

3    1.32.    "Representative Plaintiffs" means the named plaintiffs in the Actions, including all cases

4    consolidated as part of MDL No. 1562 and all named plaintiffs in the Second Amended Consolidated

5    Class Action Complaint filed in MDL No. 1562, and the named plaintiffs in the Amico/Bertino

6    Actions, excluding Mark Glover, Jason Bertino and Donald Hemans.

7    1.33.    "Sludge" means a rust-like material that forms in the vehicle cooling system related to

8    Dex-Cool.

9    **2.    RECITALS**

10    2.1.    The Actions and the Amico/Bertino Actions that are the subject of this Settlement allege

11    that, among other things, the Dex-Cool engine coolant installed in certain GM vehicles fails to protect

12    the vehicles' engine and cooling system, and in fact causes damage to the engine and cooling system

13    and that certain engine components, including certain gaskets, were defective.

14    2.2.    GM denies all allegations of wrongdoing asserted in the Actions and in the

15    Amico/Bertino Actions and denies liability under any cause of action asserted therein. Specifically,

16    among other things, GM denies the alleged defects, including the alleged defects in Dex-Cool coolant

17    as well as the allegations that certain engine components, including certain gaskets, were defective.

18    2.3.    The Parties recognize that the outcome of the Actions and the Amico/Bertino Actions are

19    uncertain and that pursuing the Actions and the Amico/Bertino Actions to litigated judgments would

20    entail substantial cost, risk, and delay.

21    2.4.    The Representative Plaintiffs and their counsel have conducted an investigation and

22    evaluation of the factual and legal issues raised by the claims asserted in the Actions and believe that, in

23    light of the cost, risk, and delay of continued litigation balanced against the benefits of the settlement

24    set forth in this Agreement, that such settlement is in the best interests of, and is fair, reasonable, and

25    adequate for the Class as a whole.

26    2.5.    Through this Settlement, the Parties desire to compromise and settle all issues and claims

27    that have been or could have been brought in the Actions by or on behalf of members of the Class.

28

2.6.    The Parties agree to undertake all reasonable efforts, including all steps and efforts that may become necessary by order of the Court, to effectuate the terms and purposes of this Agreement, to secure the Court's approval of it, and to oppose any objections to and appeals from any order of final approval.

## 3.    SETTLEMENT CONSIDERATION

### A.    Claims Reimbursements

3.1.    All Class Members who submit a proper Claim Statement, Proof of Expenditure, and Proof of Ownership will be eligible to receive a cash payment from the Claims Administrator according to the following payment schedule (unless the Class Member is eligible to, and opts to, receive a cash payment pursuant to subparagraph 3.2):

(a) For Class Members who incurred a Repair Expense within five years of the Date of Initial Vehicle Delivery, an amount equal to the Repair Expense, up to a maximum of $400.

(b) For Class Members who incurred a Repair Expense between the fifth and sixth year of the Date of Initial Vehicle Delivery, an amount equal to the Repair Expense, up to a maximum of $100.

(c) For Class Members who incurred a Repair Expense between the sixth and seventh year of the Date of Initial Vehicle Delivery, an amount equal to the Repair Expense, up to a maximum of $50.

3.2.    Any Class Member who is eligible to receive cash payment under subparagraph 3.1(a) may opt to instead receive 40% of the Repair Expense, up to a maximum of $800, if the Class Member submits Proof of Internal Leak Repair Expense showing a repair over $1,500 due to a diagnosed internal coolant leak.

3.3.    If a Class Member incurred multiple Repair Expenses, the Class Member may submit multiple Claims, however, each Claim must be supported by a separate Claim Statement, Proof of Expenditure, Proof of Ownership, and in the case of a Claim under subparagraph 3.2, Proof of Internal Leak Repair Expense.

3.4.    Claims may not be assigned or transferred and must be made and signed by the Class Member who incurred the Repair Expense.

3.5.    The Claims Administrator has the right, if it reasonably suspects a potentially invalid Claim or fraud, to request additional documentation. General Motors has the right to perform a review of Claims and, in the event that GM reasonably suspects a potentially invalid Claim or fraud, to request additional documentation before the Claim is approved and paid. Co-Lead Counsel shall monitor the claims review and approval process to ensure that valid claims are timely paid.

3.6.    After giving Claimants a reasonable opportunity of at least 45 days to cure deficient Claims, the Claims Administrator shall determine the sufficiency or deficiency of all Claims. GM and Co-Lead Counsel will work with the Claims Administrator to develop a process by which the sufficiency or deficiency of Claims are determined, including GM's ability to challenge claims that it suspects are invalid. The Claims Administrator's determination of the sufficiency or deficiency of a Claim is final and not subject to appeal by any party.

3.7.    Within 60 days after the Class Administrator approves a Claim as sufficient, the Claims Administrator shall mail a check, issued to the Claimant and payable to the Claimant, in the amount provided by subparagraphs 3.1 and 3.2. All such checks provided to eligible Claimants shall contain, or be accompanied by, a release providing and explaining to the Claimant that, by accepting the payment and cashing the check, the Claimant releases General Motors from any and all claims related to the vehicle for which the Claim is submitted, to the extent that such claims relate to Dex-Cool, engine gaskets or engine sealability issues.

3.8.    No Claimant shall have any claim or cause of action against the Representative Plaintiffs, Class Counsel, Amico/Bertino Counsel, the Claims Administrator, GM, or any Released Persons based on distributions made substantially in accordance with this Agreement and any further orders of the Court.

**B.**      **Costs and Fees**

3.9.    GM will pay all costs and fees of the Claims Administrator, including amounts distributed by the Claims Administrator to Class Members pursuant to subparagraphs 3.1, 3.2, and 3.7.

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

1    3.10.  GM will pay all costs associated with disseminating notice of the Settlement to the Class,

2    the form of such notice to be agreed upon by GM and Co-Lead Counsel and provided in the Notice

3    Order issued by the Court.

4    3.11.  GM will pay to Representative Plaintiffs such incentive payments as may be awarded by

5    the Court upon Co-Lead Counsel's request, not to exceed $140,000 in total payments to all

6    Representative Plaintiffs.  In no event shall GM be obligated to pay incentive payments in excess of

7    $200,000 in the aggregate under this Settlement and the Missouri Dex-Cool (Gutzler) Settlement.

8    3.12.  GM will pay Class Counsel and Amico/Bertino Counsel attorneys' fees in an amount to

9    be approved by the Court, not to exceed $14,000,000 for Class Counsel and $2,500,000 for

10   Amico/Bertino Counsel.  In no event shall GM be obligated to pay for any attorneys' fees in excess of

11   $21,250,000 to Class Counsel and $2,500,000 to Amico/Bertino Counsel under this Settlement and the

12   Missouri Dex-Cool (Gutzler) Settlement, including any attorneys' fees paid to Amico/Bertino Counsel

13   in connection with the settlement and dismissal of the Amico and Bertino actions.

14   3.13.  GM will pay Class Counsel documented costs in an amount approved by the Court, not to

15   exceed $1,250,000, and costs in the amount of $300,000 to Amico/Bertino Counsel.  In no event shall

16   GM be obligated to pay any payment of costs in excess of $2,500,000 to Class Counsel and $300,000 to

17   Amico/Bertino Counsel under this Settlement and the Missouri Dex-Cool (Gutzler) Settlement,

18   including any costs paid to Amico/Bertino Counsel in connection with the settlement and dismissal of

19   the Amico and Bertino actions.

20   **C.    Release of Claims**

21   3.14.  In consideration of the benefits described above, the Representatives Plaintiffs promise,

22   covenant and agree, and each Class Member and the Class shall be deemed to have promised,

23   covenanted and agreed, that, upon the Effective Date of Settlement, the Representative Plaintiffs and

24   the Class Members, including their affiliates, subsidiaries, associates, general or limited partners or

25   partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their

26   respective present or former officers, directors, trustees, employees, agents, attorneys, representatives

27   and/or shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors,

28   administrators, predecessors, successors, assigns or insurers, and anyone acting on their behalf, by

11

1   operation of the Judgment, shall have hereby released, waived and discharged GM, including its

2   subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors,

3   and/or assigns, including, without limitation, any of their respective present or former officers,

4   directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates,

5   general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors,

6   assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for

7   any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known

8   and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state

9   statutory or common law federal statutory or common law, or foreign statutory or common law, to the

10  fullest extent permitted by law, including, but not limited to, federal or state antitrust claims, RICO

11  claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices

12  statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation

13  claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted

14  directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such

15  claims were or could have been raised or asserted in the Actions or the Amico/Bertino Actions, to the

16  extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the

17  allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any

18  Repair Expense. Claims for personal injury, and claims for lower intake manifold gasket replacements

19  in 4.3-liter V6 engines for Class Members who have not submitted a Claim and received a payment

20  under the settlement, are not released. The Parties recognize and agree that this is a general release.

21  Representative Plaintiffs and the Class Members expressly waive and relinquish, and shall be deemed

22  to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and

23  benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any

24  law of the United States, any law of any State or the District of Columbia, or any principle of common

25  law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A

26  general release does not extend to claims which the creditor does not know or suspect to exist in his or

27  her favor at the time of executing the release, which if known by him or her must have materially

28  affected his or her settlement with the debtor."

12

3.15.  Upon the Effective Date of Settlement, for the consideration provided for herein and by operation of the Final Order and Judgment, the Representative Plaintiffs shall have, and each Class Member and the Class shall be deemed to have, covenanted and agreed that he or she shall not, at any time, institute, cause to be instituted, assist in instituting or permit to be instituted on his or her behalf any proceeding in any state or federal court, in or before any administrative agency, or any other proceeding or otherwise allege or assert any of the claims released against the Released Persons, individually or collectively, in subparagraph 3.14 above.

3.16.  Upon the Effective Date of the Settlement, GM and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns, shall be deemed to have, and by operation of the Judgment shall have, released, waived, and discharged any and all claims or causes of action of any nature whatsoever, including but not limited to any claim for violations of federal, state, or other law (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), whether known or unknown, that have been or could have been asserted against any Representative Plaintiff, counsel for any Representative Plaintiff, or any Class Member, in the Actions or in any other complaint, action, or litigation in any other court or forum arising from, based on, or related to the initiation, prosecution, or resolution of the Actions to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense.  The Parties recognize and agree that this is a general release, and shall have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United States, any law of any State or the District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

3.17.  Upon the Effective Date of Settlement, for the consideration provided for herein and by operation of the Judgment, GM and its past or present officers, directors, employees, agents, attorneys,

13

1    predecessors, successors, affiliates, subsidiaries, divisions, and assigns, shall be deemed to have, and by

2    operation of the Judgment shall have, covenanted and agreed that he, she or it shall not, at any time,

3    institute, cause to be instituted, assist in instituting or permit to be instituted on his, her or its behalf any

4    proceeding in any state or federal court, in or before any administrative agency, or any other proceeding

5    or otherwise allege or assert any of the claims released against the Representative Plaintiffs, Class

6    Counsel, and all Class Members, individually or collectively, in subparagraph 3.16 above.

7        3.18.    The sole remedy for default of this Agreement by either of the Parties is an action for

8    breach of this Agreement. Following entry by the Court of a Judgment that substantially takes the form

9    of Exhibit C to this Agreement and completion of all obligations and undertakings set forth therein, no

10    default by any party shall affect the final dismissal of the Actions or the Amico/Bertino Actions with

11    prejudice, the discharge of any of GM, any Released Persons, Class Counsel, Amico/Bertino Counsel,

12    Representative Plaintiffs, or Class Members, either individually or collectively, or the releases and

13    covenants provided in connection with this Agreement and set forth in subparagraphs 3.14-3.17.

14    **4.**    **DENIAL OF WRONGDOING OR LIABILITY**

15        4.1.    This Agreement constitutes the resolution of disputed claims, is for settlement purposes

16    only, and shall not be used by any party, Class Counsel or Amico/Bertino Counsel for any other

17    purpose. GM expressly denies that it has violated any law, breached any agreement or obligation to the

18    Representative Plaintiffs or the Class, or engaged in any wrongdoing with respect to the Representative

19    Plaintiffs or the Class. GM denies that it is liable to the Representative Plaintiffs or to the Class for any

20    claims, causes of action, costs, expenses, attorneys' fees or damages of any kind relating to Repair

21    Expenses. GM denies that any of the claims were appropriate for maintenance as a class action through

22    trial. Neither this Agreement nor any actions undertaken by GM in satisfaction of this Agreement shall

23    constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the

24    validity of any allegation of fact or law made by the Representative Plaintiffs in the Actions, the

25    Amico/Bertino Actions, or in any other action or proceeding. Any orders related to class certification

26    entered in this action under this Agreement or otherwise shall not constitute, in the Actions, the

27    Amico/Bertino Actions, or any other proceeding, an admission by GM that the Representative

28    Plaintiffs' claims, or those of any alleged Class Member, are appropriate for class treatment or that any

14

1   requirement for class certification is otherwise satisfied in the Actions or the Amico/Bertino Actions.

2   By entering into this Agreement, GM in no way waives its right to challenge or contest, on any and all

3   grounds, any allegations that a class may be certified in the Actions or Amico/Bertino Actions or any

4   order regarding class certification that has been entered in the Actions or the Amico/Bertino Actions. If

5   this Agreement is terminated and becomes null and void, the class action aspects of the Agreement

6   shall have no further force and effect with respect to any Party and shall not be offered in evidence or

7   used in the Actions, the Amico/Bertino Actions, or any other proceeding.  This Agreement, even when

8   Effective, shall not be offered or be admissible in evidence against GM or cited or referred to in any

9   action or proceeding, except in an action or proceeding brought to enforce its terms or by GM in

10  defense of any claims brought by the Representative Plaintiffs, the Class or by any Class Members.

11  **5.    SETTLEMENT APPROVAL PROCESS**

12          5.1.    The Parties will apply to the Court for entry of the proposed Notice Order and setting of a

13  hearing for the Court to consider (a) whether to make final its certification of the Class for purposes of

14  the Settlement but not for trial purposes; (b) whether to grant final approval of the Settlement as fair,

15  reasonable, and adequate for Class as a whole; (c) whether to grant Class Counsel's application for

16  attorneys' fees and costs and the Representative Plaintiffs' incentive award and, if so, in what amounts;

17  and (d) any related matters as appropriate ("Fairness Hearing").

18          5.2.    Within five business days of the Court granting final approval of the Settlement, GM will

19  deposit $24,200,000 into an interest-bearing bank account established at a bank of GM's choosing,

20  subject to the reasonable approval of Co-Lead Counsel.  Within five business days after the

21  Settlement's Effective Date, and absent any appeal by an objector from an order awarding (i)

22  Representative Plaintiffs an amount up to $140,000 in incentive payments (ii) attorneys' fees in an

23  amount not to exceed $16.50 million for both (and all) Class Counsel and Amico/Bertino Counsel

24  and/or (iii) documented costs in an amount not to exceed $1.55 million for both (and all) Class Counsel

25  and Amico/Bertino Counsel, that does not and could not result in the reversal and/or modification of the

26  Judgment (including the release provisions contained in paragraphs 3.14 through 3.18) GM will transfer

27  the total amount of the fee and cost award and any incentive payment award, including any interest

28  earned on the $24,200,000 million deposit, from the  account to a bank account as directed by Co-Lead

15

Counsel. In the event that any fee, cost, or incentive award is later distributed from the account

pursuant to the Missouri Settlement, any interest earned on such principal amounts shall be, at that

time, transferred to a bank account as jointly directed by Co-Lead Counsel in writing. In the event that

the Settlement does not become Effective, General Motors retains all right to the amount distributed in

the account and may withdraw and retain the full amount, including any interest earned.

5.3.    Co-Lead Counsel will in good faith allocate the fee award among Class Counsel in a

manner which, in the judgment of Co-Lead Counsel, reflects their relative contributions to the Actions

and the Agreement. Amico/Bertino Counsel shall receive $2,500,000 in attorneys' fees and $300,000

in costs, which shall satisfy any claims for attorneys' fees and costs as between: (1) General Motors

and Amico/Bertino Counsel; and (2) Amico/Bertino Counsel and Class Counsel. Any disagreement

among Class Counsel or between Co-Lead Counsel and Amico/Bertino Counsel concerning the

distribution of the fee award shall be referred to a mediation process determined by Co-Lead Counsel

and, if necessary, to the Court for determination. Co-Lead Counsel will in good faith allocate the

incentive awards among the Representative Plaintiffs in a manner which, in the judgment of Co-Lead

Counsel, and as approved by the Court, reflects their relative contribution to the Actions and the

Agreement. Co-Lead Counsel, Class Counsel, Amico/Bertino Counsel and the Representative

Plaintiffs shall have no recourse to, nor any claims of any nature whatsoever against, GM in the event

of a disagreement as to the apportionment of any fee or incentive award.

5.4.    GM and Co-Lead Counsel will work together with, among others, the Settlement

Administrator to disseminate notice to the Class in accordance with the Notice Order. No later than the

day the motion for final approval of the Settlement is to be filed under the Notice Order, the Settlement

Administrator or such other appropriate person or entity, among others, will file an affidavit or

declaration attesting that notice to the Class was disseminated in accordance with the Notice Order.

5.5.    Class Members must submit their exclusion requests, objections and supporting papers,

and notices of intent to appear in accordance with the Notice Order and the notice to the Class

disseminated pursuant to the Notice Order.

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

5.6.    If the number of exclusion requests exceed 10,000, GM shall have the option to rescind this Settlement at its sole discretion by filing with the Court written notice of such election, with proof of service on Co-Lead Counsel, no later than three days before the Fairness Hearing.

5.7.    In accordance with the Notice Order or such other or further order of the Court, Co-Lead Counsel will file a motion for final approval of the Settlement and an application for attorneys' fees and costs and incentive awards for the Representative Plaintiffs, and the Parties will brief the motion and application.

5.8.    The Parties will appear at the Fairness Hearing and present their arguments in support of final approval of the Settlement and entry of the proposed Judgment, and Co-Lead Counsel will present their arguments in support of an award of attorneys' fees and costs and incentive awards for the Representative Plaintiffs. GM agrees that the attorneys' fees, costs, and incentive awards, as set forth in subparagraphs 3.11-3.13, are reasonable, and thus will not object to or oppose an award of attorneys' fees and costs and incentive awards for the Representative Plaintiffs, provided the amounts sought do not exceed that provided for by subparagraphs 3.11-3.13.

5.9.    The Actions and the Amico/Bertino Actions shall be stayed until the Court grants or denies final approval of the Settlement. After the Effective Date of Settlement, Co-Lead Counsel, on behalf of all Class Counsel will, within thirty days, execute joint stipulations of dismissal, with prejudice, of the remaining Actions and deliver such joint stipulations for dismissal with prejudice to General Motors for filing in the remaining Actions. After the Effective Date of the Settlement, Amico/Bertino Counsel will dismiss the Amico/Bertino Actions, as provided in Exhibit D, attached hereto or any subsequent agreement entered into between GM and Amico/Bertino Counsel formalizing the term sheet attached hereto.

5.10.    This Agreement shall, if either GM or the Co-Lead Counsel elect, be null and void and shall have no further force and effect with respect to any party in the Actions or the Amico/Bertino Actions in the event that (i) preliminary and final approval of the settlement and of the settlement in *Gutzler v. General Motors*, Case No. 03CV208786 (Jackson County Missouri), is not obtained, or if such approval is reversed on appeal; (ii) the Effective Date of Settlement for this Settlement and the settlement in *Gutzler v. General Motors*, Case No. 03CV208786 (Jackson County Missouri), does not

17

1    occur for any reason; (iii) entry of the Judgment described is reversed; (iv) the Judgment is substantially

2    modified by the Court, or on appeal, and GM or the Representative Plaintiffs do not agree with its

3    modification; or (v) the remaining Actions are not dismissed with prejudice after presentation of the

4    joint stipulations by General Motors as referenced in 5.9 above. In such event, this Agreement shall not

5    be offered in evidence or used in the Actions, the Amico/Bertino Actions, or in any other action for any

6    purpose including, but not limited to, the existence, certification or maintenance of any purported class

7    or in connection with a trial or appeal of this matter or any other matter. In such event, this Agreement

8    and all negotiations, proceedings, documents prepared and statements made in connection with this

9    Agreement shall be without prejudice to the Parties and shall not be admissible into evidence, and shall

10   not be deemed or construed to be an admission or confession by any of the Parties of any fact, matter or

11   proposition of law, and shall not be used in any manner for any purpose, and all Parties to the Actions

12   and the Amico/Bertino Actions shall stand in the same position as if this Agreement had not been

13   negotiated, made or filed with the Court.

14   **6.    MISCELLANEOUS PROVISIONS**

15        6.1.    The Representative Plaintiffs and GM expressly agree that the terms of this Agreement

16   and all provisions hereof, including all representations, promises, agreements, covenants, and

17   warranties, are contractual and not a mere recital and shall survive the execution of this Agreement and

18   entry of the Judgment and shall continue in full force and effect thereunder. All exhibits to this

19   Agreement are material and integral parts hereof and are fully incorporated herein by this reference.

20        6.2.    This Agreement represents the entire agreement and understanding among the Parties and

21   supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject

22   matter of this Agreement, the sole exception being the term sheet attached hereto as Exhibit D and any

23   agreement entered into between Amico/Bertino Counsel and GM to effectuate that term sheet. The

24   Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation,

25   warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of

26   this Agreement has been made or relied on except as expressly set forth in this Agreement. No

27   modification or waiver of any provisions of this Agreement shall be effective unless made in writing

28   and signed by or on behalf of the person against whom enforcement of the Agreement is sought.

6.3.    This Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it, and all of which shall be deemed a single agreement.

6.4.    The Parties have negotiated all of the terms and conditions of this Agreement at arm's length. None of the Parties or their respective counsel will be deemed the drafter of this Agreement or its exhibits for purposes of construing the provisions thereof. The language in all parts of this Agreement and its exhibits will be interpreted according to its fair meaning, and will not be interpreted for or against any Party as the drafter thereof.

6.5.    In accordance with California Rule of Court 3.769(h), the Court will retain continuing and exclusive jurisdiction over the Parties and all Class Members for purposes of implementing and enforcing this Agreement and the Settlement.

6.6.    The Parties hereto warrant and represent that no promise or inducement has been offered or made for the release and covenants in subparagraphs 3.14-3.17 except as herein set forth, that the releases and covenants are executed without reliance on any statements or any representations not contained herein, and the release and covenants reflects the entire agreement among the Parties with respect to the terms of the releases and covenants, except as provided above with respect to the attached term sheet and any agreement entered into to further memorialize the term sheet.

6.7.    The Parties acknowledge and agree and specifically warrant to each other that they have fully read this Agreement and the releases and covenants contained in subparagraphs 3.14-3.17, received independent legal advice with respect to the advisability of entering into this Agreement and those releases and covenants, and the legal effect of this Agreements and the releases and covenants, and fully understand their effect.

6.8.    GM and Co-Lead Counsel may agree, on behalf of the Parties and subject to approval of the Court where required, to reasonable extensions of time to carry out the provisions of this Agreement. For purposes of such extensions, agreement by Co-Lead Counsel is the agreement of all Parties.

6.9.   This Agreement will be binding upon and inure to the Parties' successors and assigns. This Agreement is not intended to create any third party beneficiaries other than persons (including Class Members) for which a direct benefit is specifically provided for hereunder.

6.10.   In the event that the release and covenants contained in subparagraphs 3.14-3.15 of this Agreement shall for any reason be held in whole or material part to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement if GM elects in writing to Co-Lead Counsel to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.  If no such election is made, then the Agreement shall be null and void.  In the event that the release and covenants contained in subparagraphs 3.16-3.17 of this Agreement shall for any reason be held in whole or material part to be invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this Agreement if the Representative Plaintiffs elect, either individually or collectively, in writing to proceed as if such invalid, illegal, or unenforceable provision had never been included in this Agreement.  If no such election is made, then the Agreement shall be null and void.  If one or more of the other material provisions contained in this Agreement is held to be invalid, illegal, or unenforceable, such invalidity, illegality, or unenforceability will not affect other provisions if GM and the Representative Plaintiffs, on behalf of the Class, both elect to proceed as if such invalid, illegal, or unenforceable provision were not contained in this Agreement.

6.11.   No consideration or amount or sum paid, credited, offered, or expended by GM in its performance of this Agreement constitutes a penalty, fine, punitive damages or other form of assessment for any alleged claim or offense.

6.12.   For purposes of this Agreement, the Parties and all counsel agree that all orders and agreements regarding the confidentiality of documents and information ("Protective Orders") remain in effect and all Parties and counsel remain bound to comply with the provisions of those Protective Orders.  Within thirty days of the Effective Date of Settlement, each of the Parties agrees to use its best efforts to return all documents produced in these Actions or belonging to Defendants and all copies thereof, and each of the Parties' counsel will certify in writing that it used its best efforts to return all documents have been returned to the producing party.

20

1      6.13.  GM and Co-Lead Counsel agree to use their best efforts to issue a joint, written press

2    release within 48 hours of formal execution of this Settlement Agreement.

3      6.14.  The Parties hereto understand, acknowledge and agree that they and their counsel (i) have

4    each performed an independent investigation of the allegations of fact and law made in connection with

5    the Actions and the Amico/Bertino Actions, and (ii) that they each may hereafter discover facts in

6    addition to, or different from, those that they now know or believe to be true with respect to the subject

7    matter of this Agreement.  Nevertheless, it is the Parties' intention to resolve their disputes pursuant to

8    the terms of this Agreement and, thus, in furtherance of their intentions, the Agreement shall remain in

9    full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and

10    this Agreement shall not be subject to rescission or modification by reason of any change or difference

11    in facts or law.

12      6.15.  This Agreement shall be governed and construed in accordance with the internal laws of

13    the State of California, without regard to any conflict of law provision that could require the application

14    of the law of any other jurisdiction.

15      6.16.  Whenever under the terms of this Agreement, a Party is required to provide written notice

16    to the other, such notice must be directed to the individual at the address specified below, unless that

17    individual or the individual's successor gives notice to the other Party in writing of another individual

18    or address to whom such notice should be directed:

19    Written notice to the Representative Plaintiffs must be given to:

20            Eric H. Gibbs
                Girard Gibbs LLP
21            601 California Street, 14th Floor
                San Francisco, California 94108
22

            P. John Brady
23            Shughart Thomson & Kilroy, P.C.
                Twelve Wyandotte Plaza
24            120 West 12th Street
                Kansas City, MO 64105
25

26    Written notice to GM must be given to:

            Robert B. Ellis, P.C.
27            Kirkland & Ellis LLP
                200 East Randolph Drive
28            Chicago, Illinois 60601

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

1    IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly

2    authorized attorneys below.

3

4

5    _____
     Eric H. Gibbs

6    Girard Gibbs LLP
     601 California Street, 14th Floor

7    San Francisco, California 94108

8

9

10   _____
     P. John Brady
     Shughart Thomson & Kilroy, P.C.

11   Twelve Wyandotte Plaza
     120 West 12th Street

12   Kansas City, MO 64105

13   Co-Lead Counsel

14

Robert B. Ellis, P.C.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Attorneys for GM

Michael F. Ram
Levy, Ram & Olson LLP
639 Front Street
Fourth Floor
San Francisco, CA 94111

Attorneys for Amico/Bertino Actions

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

1       IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly

2   authorized attorneys below.

3

4

5

6   Eric H. Gibbs                                   Robert B. Ellis, P.C.
     Girard Gibbs LLP                                Kirkland & Ellis LLP

7   601 California Street, 14th Floor             200 East Randolph Drive
     San Francisco, California 94108            Chicago, Illinois 60601

8                                             Attorneys for GM

9

10   P. John Brady
     Shughart Thomson & Kilroy, P.C.

11   Twelve Wyandotte Plaza                  Michael F. Ram
     120 West 12th Street                     Levy, Ram & Olson LLP

12   Kansas City, MO 64105                 639 Front Street
                                         Fourth Floor

13   Co-Lead Counsel                            San Francisco, CA 94111

14                                          Attorneys for Amico/Bertino Actions

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

1    IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly

2  authorized attorneys below.

3

4

5

6  Eric H. Gibbs
   Girard Gibbs LLP
   601 California Street, 14th Floor
7  San Francisco, California 94108

8

9

10 P. John Brady
   Shughart Thomson & Kilroy, P.C.
   Twelve Wyandotte Plaza
11 120 West 12th Street
   Kansas City, MO 64105
12
   Co-Lead Counsel
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Robert B. Ellis, P.C.
Kirkland & Ellis LLP
200 East Randolph Drive
Chicago, Illinois 60601

Attorneys for GM

*Michael F. Ram*

Michael F. Ram
Levy, Ram & Olson LLP
639 Front Street
Fourth Floor
San Francisco, CA 94111

Attorneys for Amico/Bertino Actions

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

1    IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly

2    authorized attorneys below.

3

4

5

6    Eric H. Gibbs                          Robert B. Ellis, P.C.
     Girard Gibbs LLP                       Kirkland & Ellis LLP
     601 California Street, 14th Floor      200 East Randolph Drive
7    San Francisco, California 94108        Chicago, Illinois 60601

8                                           Attorneys for GM

9

10   P. John Brady
     Shughart Thomson & Kilroy, P.C.        Michael F. Ram
11   Twelve Wyandotte Plaza                 Levy, Ram & Olson LLP
     120 West 12th Street                   639 Front Street
12   Kansas City, MO 64105                  Fourth Floor
                                            San Francisco, CA 94111
13   Co-Lead Counsel
                                            Attorneys for Amico/Bertino Actions
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

# EXHIBIT B

SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ALAMEDA
*SADOWSKI V. GENERAL MOTORS CORP.*, CASE NO. HG03091369

# If you have ever owned or leased
# any of the General Motors vehicles listed on pages 2-3,
# please read this notice carefully, as it affects your legal rights.

*The California Superior Court for Alameda County authorized this notice*
*This is not a solicitation from a lawyer*

*The purpose of this notice is to provide information about a class action settlement and to inform people*
*covered by the proposed Settlement of their rights and options*

- There is a proposed class action Settlement involving the GM vehicles listed in paragraph 4. These vehicles were factory-equipped with Dex-Cool. Dex-Cool is an engine coolant designed to protect vehicles' engine and cooling systems.

- You are included in this proposed Settlement if you own or lease or previously owned or leased any of these vehicles and made repairs related to the use of Dex-Cool as outlined in paragraph 4 of this Notice.

- Repairs involving intake manifold gasket failures, engine coolant sealing issues, and sludge (a rust-like material) are covered by this proposed Settlement. These repairs would likely involve parts like the intake manifold and/or manifold gaskets, throttle body gaskets, radiator cap, heater core, water pump and other parts of the cooling system. See paragraph 4 for a complete description of the specific types of repairs covered for each vehicle type.

- The Court in charge of this case still has to decide whether to give final approval to the proposed Settlement. Valid claims will be paid if the proposed Settlement is approved.

- The types of repairs covered in the proposed Settlement, how to file a claim and your legal rights to participate or exclude yourself are outlined in this Notice. Please read it carefully.

| SUMMARY OF CLASS MEMBERS' RIGHTS AND OPTIONS UNDER THE PROPOSED SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM** | The only way to get a payment. Submit your claim online or by mail by **October 27, 2008** |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to be part of any other lawsuit concerning the issues being settled now |
| **COMMENT ON THE PROPOSED SETTLEMENT** | Write to the Court about why you support or oppose the proposed Settlement |
| **GO TO A HEARING** | Ask to speak to the Court about the proposed Settlement |
| **DO NOTHING** | Get no payment. Be barred from bringing or being part of any other lawsuit concerning the issues being settled now |

QUESTIONS? VISIT WWW.DEXCOOLSETTLEMENT.COM OR CALL TOLL-FREE 1 (866) 245-4291

- 1 -

1.    THE LITIGATION: A number of lawsuits were filed as class actions against GM in state and federal courts across the United States involving "Dex-Cool" extended-life engine coolant  Among other things, the lawsuits allege that (i) Dex-Cool in the vehicles listed below caused problems with the vehicles' engines or cooling systems, and (ii) that certain engine components, such as the nylon/silicone lower intake manifold gaskets equipped in certain vehicles, were defective

2     GM'S POSITION: GM denies all allegations of wrongdoing and denies liability under any claim asserted in the lawsuits   GM argued that Dex-Cool protected engines for a longer period than traditional coolants, caused less wear on certain engine parts than traditional coolants, and provided environmental benefits  GM further argued that alleged problems with the vehicles' engines or cooling systems were caused by owners not following the maintenance instructions for their vehicles or other factors

3.    GM'S AGREEMENT TO SETTLE: GM has agreed to a class action settlement of the lawsuits  GM will reimburse class members up to a specified amount for certain repair costs they paid during the first seven years or 150,000 miles of vehicle ownership or lease, whichever is earlier

This notice is to inform class members of the existing lawsuits, the major terms of the proposed Settlement, and class members' rights and options  This proposed Settlement will not become effective unless it is approved by the Court as described below

4     CLASS COVERED BY THE PROPOSED SETTLEMENT   You are included in the class  (i) if you are a United States resident, (ii) if you own or lease, or previously owned or leased, any of the vehicles listed below, for personal, family, or household use (as opposed to commercial or business use), and (iii) if the vehicle was not purchased or leased in the State of Missouri, and

(a)  The vehicle has been in service for over seven years since the date the original buyer or lessee took delivery of the vehicle, and

(b)  As of the date of this Notice (May 30, 2008), you have not had to pay for any Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle,

### OR

(c)  Regardless of how long the vehicle has been in service, you paid out-of-pocket for a Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle

### GROUP A VEHICLES

#### Model years 1995-2003

Equipped with 3.1-liter or 3.4-liter V6 engine, manufactured before April 10, 2003 with a nylon/silicone lower intake manifold gasket.

| Buick | Century, Rendezvous |
|---|---|
| Chevrolet | Impala, Lumina, Malibu, Monte Carlo, Venture |
| Oldsmobile | Alero, Cutlass, Silhouette |
| Pontiac | Aztek, Grand Am, Grand Prix, Montana, Trans Sport |

Note   Some of these vehicles may have been offered for sale with an engine other than a 3 1-liter or 3 4 -liter V6 engine   Any of the above models sold with an engine other than a 3 1-liter or 3 4 -liter V6 engine are not included and are not eligible to make a claim

<u>Group A Covered Repairs</u>:  Replacement of failed nylon/silicone lower intake manifold gasket.

---

## GROUP B VEHICLES

### Model years 1995-2004

### Equipped with 3.8-liter V6 engine (internal GM engine designation RPO L36).

| Buick | LeSabre, Park Avenue, Regal, Riviera |
| Chevrolet | Camaro, Impala, Lumina, Monte Carlo |
| Oldsmobile | Eighty-Eight, Intrigue, LSS, Ninety-Eight |
| Pontiac | Bonneville, Firebird, Grand Prix |

Note   Some of these vehicles may have been offered for sale with an engine other than a 3 8-liter V6 engine RPO L36   Any of the above models sold with an engine other than a 3 8-liter V6 engine RPO L36 are not included and are not eligible to make a claim

<u>Group B Covered Repairs</u>:  Repairs necessitated by engine coolant sealing issues, including replacement of throttle body gasket, upper intake manifold gasket, lower intake manifold gasket, or intake manifold.

---

## GROUP C VEHICLES

### Model years 1995-2000

### Equipped with 4.3-liter V6 engine

| Chevrolet | Blazer, Chevrolet S-10 |
| GMC | Envoy, Jimmy, S-15 |
| Oldsmobile | Bravada |

<u>Group C Covered Repairs</u>:  Repairs necessitated by cooling-system sludge, including cooling-system flush, heater core repairs, water pump repairs, or radiator cap replacement   "Sludge" refers to a rust-like material that can form in the cooling system and whose formation is related to use of Dex-Cool.

If you own one of the models listed above, but (i) with a different engine size than what is listed, or (ii) the vehicle was manufactured using a lower intake manifold gasket other than a nylon/silicone gasket, or (iii) the vehicle is a Group A vehicle manufactured after April 9, 2003, then you are not covered by the settlement and are not eligible to file a claim

People who purchased or leased their GM vehicle in Missouri are not included in this proposed Settlement They are instead included in a separate proposed Settlement that is being submitted for approval to a Missouri state court  The settlement benefits of the proposed Missouri settlement are the same as the settlement benefits of the proposed Settlement described in this notice

Also excluded from the class are GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone employed by counsel for any of the named plaintiffs in the lawsuits covered by this proposed Settlement, any judge to whom any of the lawsuits is assigned, as well as his or her immediate family, and all persons who timely and validly request exclusion from the class  (The procedure for exclusion is described below )

The Court has appointed the following lawyers as Co-Lead Counsel to represent the class for purposes of the proposed Settlement

Eric H  Gibbs
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, California 94108

P  John Brady
Shughart Thomson & Kilroy P C
Twelve Wyandotte Plaza
120 West 12th Street
Kansas City, Missouri 64105

5.    SETTLEMENT BENEFITS:  Under the proposed Settlement, GM will send cash reimbursements to class members who paid for Covered Repairs performed within seven years or 150,000 miles (whichever is earlier) after the original owner or lessee took delivery of the vehicle, and who submit timely and valid claims

The amount of reimbursement for which you are eligible depends on (i) when the Covered Repair was performed and (ii) the amount you actually paid, as described below

   a   **For a Covered Repair made within five years after initial vehicle delivery**
       You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $400, if you were not previously fully reimbursed

       However, if you can document that the Covered Repair required you to pay over $1,500 to address an internal coolant leak, your reimbursement level may be different  If so, you can elect to request reimbursement of 40% of the amount you paid out-of-pocket up to $800, if you were not previously fully reimbursed

       (An internal coolant leak means that coolant leaked from one vehicle component into another component  Whereas an external coolant leak means that coolant leaked from inside a vehicle component to the exterior of the vehicle )

   b   **For a Covered Repair made in the *sixth year* after initial vehicle delivery**
       You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $100, if you were not previously fully reimbursed

   c   **For a Covered Repair made in the *seventh year* after initial vehicle delivery:**
       You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $50, if you were not previously fully reimbursed

If you paid for more than one Covered Repair (whether on the same vehicle or on different vehicles included in the proposed Settlement), you may make a separate reimbursement claim for each one

6.   HOW TO MAKE A CLAIM: To make a claim for a reimbursement under the proposed Settlement, you must submit the following documents, either online or by mail. If you do not submit each of the following documents, and fully complete the claim statement, your claim may be denied.

(a) **Completed Claim Statement.** A Claim Statement form is enclosed with this Notice. If you need more forms, you can photocopy this one or download additional copies from the proposed Settlement Web site at www.DexCoolSettlement.com. You can also call the Claims Administrator toll-free at **1 (866) 245-4291** to have more forms mailed to you.

(b) **Proof of repair payment.** You must provide documentation showing that you paid out-of-pocket for a Covered Repair, for which you were not fully reimbursed. Please read the instructions on the Claim Statement form for more details.

(c) **Proof of ownership or lease.** You must provide documentation showing that you owned or leased the vehicle at the time of the Covered Repair. Please read the instructions on the Claim Statement form for more details.

(d) If you wish to submit your claim by mail, you must mail the above documents, **postmarked no later than October 27, 2008**, to the Claims Administrator at the address listed on the Claim Statement form.

(e) If you wish to submit your claim online, please go to www.DexCoolSettlement.com, fill out the online Claim Statement form, and attach scanned versions of your required documentation before clicking the button to submit your claim. **Online claims must be submitted no later than midnight on October 27, 2008.**

(f) If you wish to make reimbursement claims for two or more Covered Repairs, you must submit a separate set of documents (Claim Statement, proof of repair payment, and proof of ownership or lease) for each claim. You may not combine claims for more than one Covered Repair in a single Claim Statement.

(g) The Claims Administrator has the right to request additional documentation before the Claim is approved and paid. Your claim may be denied if the Claims Administrator determines that it is invalid.

7.   ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS: Since this litigation started in 2003, over 20 law firms have devoted more than 43,000 hours to prosecuting the various lawsuits across the country on behalf of class members purely on a contingent basis, and have received no compensation for their services or reimbursement of their expenses. As part of the proposed Settlement, subject to Court approval, plaintiffs' counsel will apply for attorneys' fees not to exceed $16.55 million and expenses not to exceed $1.55 million.

Application will be made for incentive awards not to exceed a total amount of $140,000 for the named plaintiffs in the lawsuits. There are more than 100 named plaintiffs in the lawsuits. This is to recognize their initiative and effort in pursuing the matter on behalf of other vehicle owners and lessees. Any amounts approved by the Court will be paid by GM separately from and without reducing the reimbursement payments it makes to class members under the proposed Settlement.

8.   RELEASE OF CLAIMS IF COURT APPROVES THE PROPOSED SETTLEMENT: If the Court approves the proposed Settlement, it will enter a judgment that will dismiss the litigation with prejudice as to all class members. It will release all claims they may have based on any expenses they incurred because of a Covered Repair during the first seven years or 150,000 miles (whichever is earlier) their Group A, Group B, or Group C vehicle was in service.

This means that class members will be forever barred from bringing, continuing, or being part of any other lawsuit against GM and its personnel, representatives, and insurers, or GM's related companies and their personnel, representatives, and insurers, concerning such expenses. If you fall within the class definition and

do not want to be barred from bringing, continuing, or being part of such a lawsuit, you must exclude yourself from the class and proposed Settlement here

The release applicable to the Class if the settlement is approved provides as follows  In consideration of the benefits described above, the Representative Plaintiffs promise, covenant and agree, and each Class Member and the Class shall be deemed to have promised, covenanted and agreed, that, upon the Effective Date of Settlement, the Representative Plaintiffs and the Class Members, including their affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and/or shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers, and anyone acting on their behalf, by operation of the Judgment, shall have hereby released, waived and discharged GM, including its subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state statutory or common law federal statutory or common law, or foreign statutory or common law, to the fullest extent permitted by law, including, but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such claims were or could have been raised or asserted in the Actions or the Amico/Bertino Actions, to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense  Claims for personal injury, and claims for lower intake manifold gasket replacements in 4 3-liter V6 engines for Class Members who have not submitted a Claim and received a payment under the settlement, are not released  The Parties recognize and agree that this is a general release  Representative Plaintiffs and the Class Members expressly waive and relinquish, and shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United States, any law of any State or the District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor"

9.    YOUR OPTIONS AND DEADLINES:  If you are a class member, you have the following options

  (a)  **Participate in the proposed Settlement by making a claim**    To participate in the proposed Settlement, you must submit a claim as described above  You do not need to do anything else to participate  If you submit a valid claim on time, the Court approves the proposed Settlement, and the Judgment becomes final, then a reimbursement check will be mailed to you

  (b)  **Request to be excluded**   If you wish to exclude yourself from the class, you must submit a letter or postcard, such that it is received on or before **August 13, 2008**, stating

      • Your name, address, telephone number,
      • The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased, <u>and</u>

- That you wish to be excluded from the class and proposed Settlement in the lawsuit *Sadowski v General Motors Corp*, Case No HG03091369

You must send your exclusion request to the Claims Administrator, addressed as follows  Dex Cool Litigation 2, c/o The Garden City Group, Inc., P.O. Box 9239, Dublin, OH 43017-4639   If you submit a valid exclusion request on time, you cannot obtain a reimbursement payment under the proposed Settlement  You will not be bound by the final judgment, and you will not be barred from bringing, continuing, or being part of another lawsuit concerning expenses you incurred because of a Covered Repair

If you do not properly exclude yourself, all of your claims based on such expenses will be released, and you will be barred from bringing, continuing, or being part of any such lawsuit. You will be barred even if you do not submit a claim under this proposed Settlement  In other words, if you do nothing at all, your claims will be released, and you will receive nothing under the proposed Settlement

(c) **Object or comment**  If you are a class member and do not exclude yourself, you may object to or comment on all or part of the proposed Settlement  This includes plaintiffs' counsel's request for attorneys' fees, expenses, and incentive awards for the named plaintiffs  Objecting is not the same as excluding yourself  If you object and the proposed Settlement is approved, you will still be bound by the final judgment and your claims will be released

You must submit your objections or comments in writing as follows

- On the first page, please include a prominent reference to *Sadowski v  General Motors Corp*, Case No  HG03091369  Your objections or comments must include

    - Your full name, address, and telephone number,

    - The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased, along with proof of a Covered Repair,

    - Your signature, and

    - Any supporting papers or briefs on which your objections or comments are based

If you also wish to speak at the fairness hearing (described below), you must also state in your objections or comments that you intend to appear and speak at the hearing  If you do not include this statement, you will not be entitled to speak at the hearing

You must deliver your objections or comments to the Court by filing them in person at any location of the Alameda County Superior Court that includes a facility for civil filings or by mailing them to Clerk of the Court at the address listed below, with copies to Co-Lead Counsel for the class and GM's counsel  They must be received no later than August 13, 2008  The mailing addresses for the Clerk of the Court, Co-Lead Counsel, and GM's counsel are as follows

| | **Co-Lead Counsel:** | **Counsel for GM** |
|---|---|---|
| Clerk of the Court | | |
| Rene C  Davidson Alameda | Eric H  Gibbs | Robert B  Ellis |
| County Courthouse | Girard Gibbs LLP | Kirkland & Ellis LLP |
| 1225 Fallon Street | 601 California Street, 14th Floor | 200 East Randolph Drive |
| Oakland, California  94612 | San Francisco, California 94108 | Chicago, Illinois 60601 |

QUESTIONS? VISIT WWW DEXCOOLSETTLEMENT COM OR CALL TOLL-FREE 1 (866) 245-4291

If you submit an objection and wish to preserve your appellate rights, you must appear in person, through your counsel or as otherwise permitted by the Court, at the Fairness Hearing. If you do not wish to appear in Court then you must state so in your objection.

If you do not raise your objections according to the above procedure, you will waive all objections and have no right to appeal any aspect of the proposed Settlement. If you raise an objection according to the above procedure and fail to appear, you will have no right to appeal any aspect of the proposed Settlement. This includes appealing (i) an order approving the Settlement as fair, reasonable and adequate, (ii) entry of Judgment that dismisses this action with prejudice and releases the claims of class members as provided for in the Settlement, (iii) an award of incentive payments to the Representative Plaintiffs, or (iv) an award of reasonable attorneys fees and costs to Class Counsel.

You can enter an appearance in the lawsuit through your own legal counsel. If you do, you will be responsible for your own attorneys' fees and costs.

10.    **FAIRNESS HEARING:**  On August 29, 2008 at 11:00 a.m., a hearing will be held before the Honorable Robert B. Freedman, in Department 20 of the California Superior Court for Alameda County, County Administration Building, 1221 Oak Street, Oakland, California 94612. The purpose of the hearing is for the Court to decide whether the proposed Settlement is fair, reasonable, and adequate and should be approved. The Court will also decide whether a final judgment should be entered dismissing this lawsuit, and the amount of attorneys' fees and expenses and incentive awards to class representatives. This hearing may be postponed without further notice to the class.

11.    **ADDITIONAL INFORMATION:** You can get more information at the proposed Settlement Web site at www.DexCoolSettlement.com. You can also view the Settlement Agreement and download a Claim Statement form on the Web site.

You can get more information by calling the Claims Administrator toll-free at 1 (866) 245-4291, sending an e-mail to info@dexcoolsettlement.com, or by sending a written inquiry to Co-Lead Counsel at the address in Section 9, above. In addition, you can view the Court's docket at www.alameda.courts.ca.gov/domainweb and inputting case number HG03093843 or ICCP004495. Otherwise, please do not direct any inquiries to the **Court**.

DATED  MARCH 20, 2008                    BY ORDER OF THE SUPERIOR COURT
                                         OF THE STATE OF CALIFORNIA
                                         FOR THE COUNTY OF ALAMEDA

# EXHIBIT C

CIRCUIT COURT OF JACKSON COUNTY, MISSOURI, AT INDEPENDENCE
*GUTZLER V. GENERAL MOTORS CORP.*, CASE NO. 03CV208786

# If you ever purchased or leased in Missouri any of the General Motors vehicles listed on pages 2-3, please read this notice carefully, as it affects your legal rights.

*The Circuit Court of Jackson County authorized this notice.*
*This is not a solicitation from a lawyer.*

*The purpose of this notice is to provide information about a class action settlement and to inform people covered by the proposed Settlement of their rights and options.*

- There is a proposed class action Settlement involving the GM vehicles listed in paragraph 4. These vehicles were factory-equipped with Dex-Cool. Dex-Cool is an engine coolant designed to protect vehicles' engine and cooling systems.

- You are included in this proposed Settlement if you purchased or leased any of these vehicles and made repairs related to the use of Dex-Cool as outlined in paragraph 4 of this Notice.

- Repairs involving intake manifold gasket failures, engine coolant sealing issues, and sludge (a rust-like material) are covered by this proposed Settlement. These repairs would likely involve parts like the intake manifold and/or manifold gaskets, throttle body gaskets, radiator cap, heater core, water pump and other parts of the cooling system. See paragraph 4 for a complete description of the specific types of repairs covered for each vehicle type.

- The Court in charge of this case still has to decide whether to give final approval to the proposed Settlement. Valid claims will be paid if the proposed Settlement is approved.

- The types of repairs covered in the proposed Settlement, how to file a claim and your legal rights to participate or exclude yourself are outlined in this Notice. Please read it carefully.

- You may have previously received notice of a class action involving GM vehicles owned or leased in Missouri that were factory-equipped with Dex-Cool. That class is being decertified by the Court and can no longer provide you with any benefits or affect your rights. Instead, this Notice describes the current proposed class action settlement that may affect your legal rights.

| SUMMARY OF CLASS MEMBERS' RIGHTS AND OPTIONS UNDER THE PROPOSED SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM | The only way to get a payment. Submit your claim online or by mail by **October 27, 2008.** |
| EXCLUDE YOURSELF | Get no payment. This is the only option that allows you to be part of any other lawsuit concerning the issues being settled now. |
| COMMENT ON THE PROPOSED SETTLEMENT | Write to the Court about why you support or oppose the proposed Settlement. |
| GO TO A HEARING | Ask to speak to the Court about the proposed Settlement. |
| DO NOTHING | Get no payment. Be barred from bringing or being part of any other lawsuit concerning the issues being settled now. |

QUESTIONS? VISIT WWW.DEXCOOLSETTLEMENT.COM/MISSOURI OR CALL TOLL-FREE 1 (866) 245-4291

1.    **THE LITIGATION:** A lawsuit was filed as a class action against GM in Missouri involving "Dex-Cool" extended-life engine coolant. Among other things, the lawsuits allege that (i) Dex-Cool in the vehicles listed below caused problems with the vehicles' engines or cooling systems, and (ii) that certain engine components, such as the nylon/silicone lower intake manifold gaskets equipped in certain vehicles, were defective.

2.    **GM'S POSITION:** GM denies all allegations of wrongdoing and denies liability under any claim asserted in the lawsuit. GM argued that Dex-Cool protected engines for a longer period than traditional coolants, caused less wear on certain engine parts than traditional coolants, and provided environmental benefits. GM further argued that alleged problems with the vehicles' engines or cooling systems were caused by owners not following the maintenance instructions for their vehicles or other factors.

3.    **GM'S AGREEMENT TO SETTLE:** GM has agreed to a class action settlement of the lawsuit. GM will reimburse class members up to a specified amount for certain repair costs they paid during the first seven years or 150,000 miles of vehicle ownership or lease, whichever is earlier.

This notice is to inform class members of the lawsuit, the major terms of the proposed Settlement, and class members' rights and options. This proposed Settlement will not become effective unless it is approved by the Court as described below.

4.    **CLASS COVERED BY THE PROPOSED SETTLEMENT:** The class previously defined by the Court and contained in the notice you may have previously received is being decertified as part of this settlement agreement. You are included in the new settlement class if you purchased or leased in the State of Missouri any of the vehicles listed below, for personal, family, or household use (as opposed to commercial or business use), and:

(a.) The vehicle has been in service for over seven years since the date the original buyer or lessee took delivery of the vehicle, and

(b.) As of the date of this Notice (May 30, 2008), you have not had to pay for any Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle;

### OR

(c.) Regardless of how long the vehicle has been in service, you paid out-of-pocket for a Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle.

### GROUP A VEHICLES

#### Model years 1995-2003

**Equipped with 3.1-liter or 3.4-liter V6 engine, manufactured before April 10, 2003 with a nylon/silicone lower intake manifold gasket.**

| | |
|---|---|
| **Buick** | **Century, Rendezvous, Regal, Skylark** |
| **Chevrolet** | **Impala, Lumina, Malibu, Monte Carlo, Venture, Corsica, Beretta, Lumina APV** |
| **Oldsmobile** | **Alero, Cutlass (Supreme and Ciera), Silhouette** |
| **Pontiac** | **Aztek, Grand Am, Grand Prix, Montana, Trans Sport** |

Note: Some of these vehicles may have been offered for sale with an engine other than a 3.1-liter or 3.4 -liter V6 engine. Any of the above models sold with an engine other than a 3.1-liter or 3.4 -liter V6 engine are not included and are not eligible to make a claim.

QUESTIONS? VISIT WWW.DEXCOOLSETTLEMENT.COM/MISSOURI OR CALL TOLL-FREE 1 (866) 245-4291



**Group A Covered Repairs**:  Replacement of failed nylon/silicone lower intake manifold gasket.

## GROUP B VEHICLES

### Model years 1995-2004

### Equipped with 3.8-liter V6 engine (internal GM engine designation RPO L36).

| Buick | LeSabre, Park Avenue, Regal, Riviera |
|---|---|
| Chevrolet | Camaro, Impala, Lumina, Monte Carlo |
| Oldsmobile | Eighty-Eight, Intrigue, LSS, Ninety-Eight |
| Pontiac | Bonneville, Firebird, Grand Prix |

Note:  Some of these vehicles may have been offered for sale with an engine other than a 3.8-liter V6 engine RPO L36.  Any of the above models sold with an engine other than a 3.8-liter V6 engine RPO L36 are not included and are not eligible to make a claim.

**Group B Covered Repairs**:  Repairs necessitated by engine coolant sealing issues, including replacement of throttle body gasket, upper intake manifold gasket, lower intake manifold gasket, or intake manifold.

## GROUP C VEHICLES

### Model years 1995-2000

### Equipped with 4.3-liter V6 engine

| Chevrolet | Blazer, Chevrolet S-10 |
|---|---|
| GMC | Envoy, Jimmy, S-15 |
| Oldsmobile | Bravada |

**Group C Covered Repairs**:  Repairs necessitated by cooling-system sludge, including cooling-system flush, heater core repairs, water pump repairs, or radiator cap replacement. "Sludge" refers to a rust-like material that can form in the cooling system and whose formation is related to use of Dex-Cool.

If you own one of the models listed above, but (i) with a different engine size than what is listed, or (ii) the vehicle was manufactured using a lower intake manifold gasket other than a nylon/silicone gasket, or (iii) the vehicle is a Group A vehicle manufactured after April 9, 2003, then you are not covered by the settlement and are not eligible to file a claim.

People who purchased or leased their GM vehicle in a state other than Missouri are not included in this proposed Settlement.  They are instead included in a separate proposed Settlement that is being submitted for approval to a California state court.  The settlement benefits of the proposed settlement in states other than Missouri are the same as the settlement benefits of the proposed Settlement described in this notice.

Also excluded from the class are GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; the judge to whom the lawsuit is assigned, as well as his or her immediate family; and all persons who timely and validly request exclusion from the class. (The procedure for exclusion is described below.)

The Court has appointed the following lawyers as Co-Lead Counsel to represent the class for purposes of the proposed Settlement:

| | |
|---|---|
| Eric H. Gibbs | P. John Brady |
| Girard Gibbs LLP | Shughart Thomson & Kilroy P.C. |
| 601 California Street, Suite 1400 | Twelve Wyandotte Plaza |
| San Francisco, California 94108 | 120 West 12th Street, Suite 1700 |
| | Kansas City, Missouri 64105 |

5.      SETTLEMENT BENEFITS: Under the proposed Settlement, GM will send cash reimbursements to class members who paid for Covered Repairs performed within seven years or 150,000 miles (whichever is earlier) after the original owner or lessee took delivery of the vehicle, and who submit timely and valid claims.

The amount of reimbursement for which you are eligible depends on (i) when the Covered Repair was performed and (ii) the amount you actually paid, as described below:

a.  **For a Covered Repair made within five years after initial vehicle delivery:**
You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $400, if you were not previously fully reimbursed.

However, if you can document that the Covered Repair required you to pay over $1,500 to address an internal coolant leak, your reimbursement level may be different. If so, you can elect to request reimbursement of 40% of the amount you paid out-of-pocket up to $800, if you were not previously fully reimbursed.

(An internal coolant leak means that coolant leaked from one vehicle component into another component. Whereas an external coolant leak means that coolant leaked from inside a vehicle component to the exterior of the vehicle.)

b.  **For a Covered Repair made in the *sixth year* after initial vehicle delivery:**
You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $100, if you were not previously fully reimbursed.

c.  **For a Covered Repair made in the *seventh year* after initial vehicle delivery:**
You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $50, if you were not previously fully reimbursed.

If you paid for more than one Covered Repair (whether on the same vehicle or on different vehicles included in the proposed Settlement), you may make a separate reimbursement claim for each one.

6.      HOW TO MAKE A CLAIM: To make a claim for a reimbursement under the proposed Settlement, you must submit the following documents, either online or by mail. If you do not submit each of the following documents, and fully complete the claim statement, your claim may be denied.

(a.)  **Completed Claim Statement.** A Claim Statement form is enclosed with this Notice. If you need more forms, you can photocopy this one or download additional copies from the proposed Settlement Web site at www.DexCoolSettlement.com/Missouri.   You can also call the Claims Administrator toll-free at **1 (866) 245-4291** to have more forms mailed to you.

(b.)  **Proof of repair payment.** You must provide documentation showing that you paid out-of-pocket for a Covered Repair, for which you were not fully reimbursed. Please read the instructions on the Claim Statement form for more details.

(c.)  **Proof of ownership or lease.** You must provide documentation showing that you owned or leased the vehicle at the time of the Covered Repair. Please read the instructions on the Claim Statement form for more details.

(d.) If you wish to submit your claim by mail, you must mail the above documents, **postmarked no later than October 27, 2008,** to the Claims Administrator at the address listed on the Claim Statement form.

(e.) If you wish to submit your claim online, please go to www.DexCoolSettlement.com/Missouri, fill out the online Claim Statement form, and attach scanned versions of your required documentation before clicking the button to submit your claim. Online claims must be **submitted no later than midnight on October 27, 2008.**

(f.) If you wish to make reimbursement claims for two or more Covered Repairs, you must submit a separate set of documents (Claim Statement, proof of repair payment, and proof of ownership or lease) for each claim. You may not combine claims for more than one Covered Repair in a single Claim Statement.

(g.) The Claims Administrator has the right to request additional documentation before the Claim is approved and paid. Your claim may be denied if the Claims Administrator determines that it is invalid.

7.    **ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS:** Since this litigation started in 2003, over 20 law firms have devoted more than 43,000 hours to prosecuting various lawsuits across the country on behalf of class members purely on a contingent basis, and have received no compensation for their services or reimbursement of their expenses. As part of the proposed Settlement, subject to Court approval, plaintiffs' counsel will apply for attorneys' fees not to exceed $7.5 million and expenses not to exceed $1.25 million.

Application will be made for incentive awards not to exceed a total amount of $60,000 for the named plaintiffs in the lawsuit. There are three named plaintiffs in the lawsuit. This is to recognize their initiative and effort in pursuing the matter on behalf of other vehicle owners and lessees. Any amounts approved by the Court will be paid by GM separately from and without reducing the reimbursement payments it makes to class members under the proposed Settlement.

8.    **RELEASE OF CLAIMS IF COURT APPROVES THE PROPOSED SETTLEMENT:** If the Court approves the proposed Settlement, it will enter a judgment that will dismiss the litigation with prejudice as to all class members. It will release all claims they may have based on any expenses they incurred because of a Covered Repair during the first seven years or 150,000 miles (whichever is earlier) their Group A, Group B, or Group C vehicle was in service.

This means that class members will be forever barred from bringing, continuing, or being part of any other lawsuit against GM and its personnel, representatives, and insurers, or GM's related companies and their personnel, representatives, and insurers, concerning such expenses. If you fall within the class definition and do not want to be barred from bringing, continuing, or being part of such a lawsuit, you must exclude yourself from the class and proposed Settlement here.

The release applicable to the Class if the settlement is approved provides as follows: In consideration of the benefits described above, the Representative Plaintiffs promise, covenant and agree, and each Class Member and the Class shall be deemed to have promised, covenanted and agreed, that, upon the Effective Date of Settlement, the Representative Plaintiffs and the Class Members, including their affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and/or shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers, and anyone acting on their behalf, by operation of the Judgment, shall have hereby released, waived and discharged GM, including its subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state statutory or

common law federal statutory or common law, or foreign statutory or common law, to the fullest extent permitted by law, including, but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such claims were or could have been raised or asserted in the Action, to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense. Claims for personal injury are not released. The Parties recognize and agree that this is a general release. Representative Plaintiffs and the Class Members expressly waive and relinquish, and shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United States, any law of any State or the District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

9.    **YOUR OPTIONS AND DEADLINES:** If you are a class member, you have the following options:

  (a.)  **Participate in the proposed Settlement by making a claim.** To participate in the proposed Settlement, you must submit a claim as described above. You do not need to do anything else to participate. If you submit a valid claim on time, the Court approves the proposed Settlement, and the judgment becomes final, then a reimbursement check will be mailed to you.

  (b.)  **Request to be excluded.** If you wish to exclude yourself from the class, you must submit a letter or postcard, **such that it is received on or before August 13, 2008**, stating:

    • Your name, address, telephone number;

    • The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased; and

    • That you wish to be excluded from the class and proposed Settlement in the lawsuit *Gutzler v. General Motors Corp.*, Case No. 03CV208786.

  You must send your exclusion request to the Claims Administrator, addressed as follows: **Dex Cool Litigation, c/o The Garden City Group, Inc., P.O. Box 9239, Dublin, OH 43017-4639.** If you submit a valid exclusion request on time, you cannot obtain a reimbursement payment under the proposed Settlement. You will not be bound by the final judgment, and you will not be barred from bringing, continuing, or being part of another lawsuit concerning expenses you incurred because of a Covered Repair.

  If you do not properly exclude yourself, all of your claims based on such expenses will be released, and you will be barred from bringing, continuing, or being part of any such lawsuit. You will be barred even if you do not submit a claim under this proposed Settlement. In other words, if you do nothing at all, your claims will be released, and you will receive nothing under the proposed Settlement.

  (c.)  **Object or comment.** If you are a class member and do not exclude yourself, you may object to or comment on all or part of the proposed Settlement. This includes plaintiffs' counsel's request for attorneys' fees, expenses, and incentive awards for the named plaintiffs. Objecting is not the same as excluding yourself. If you object and the proposed Settlement is approved, you will still be bound by the final judgment and your claims will be released.

You must submit your objections or comments in writing as follows:

- On the first page, please include a prominent reference to *Gutzler v. General Motors Corp.*, Case No. 03CV208786. Your objections or comments must include:

  - Your full name, address, and telephone number;

  - The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased, along with proof of a Covered Repair;

  - Your signature; and

  - Any supporting papers or briefs on which your objections or comments are based.

If you also wish to speak at the fairness hearing (described below), you must also state in your objections or comments that you intend to appear and speak at the hearing. If you do not include this statement, you will not be entitled to speak at the hearing.

You must deliver your objections or comments to the Court by filing them in person at any location of the Jackson County Circuit Court that includes a facility for civil filings or by mailing them to Clerk of the Court at the address listed below, with copies to Co-Lead Counsel for the class and GM's counsel. **They must be received no later than August 13, 2008.** The mailing addresses for the Clerk of the Court, Co-Lead Counsel, and GM's counsel are as follows:

| Clerk of the Court | Co-Lead Counsel: | Counsel for GM: |
|---|---|---|
| Jackson County Courthouse | | |
| 308 West Kansas | P. John Brady | Robert B. Ellis |
| Independence, Missouri 64050 | Shughart Thomson & Kilroy, P.C. | Kirkland & Ellis LLP |
| | 120 West 12th Street, Suite 1700 | 200 East Randolph Drive |
| | Kansas City, Missouri 64105 | Chicago, Illinois 60601 |

If you submit an objection and wish to preserve your appellate rights, you must appear in person, through your counsel or as otherwise permitted by the Court, at the Fairness Hearing. If you do not wish to appear in Court then you must state so in your objection.

If you do not raise your objections according to the above procedure, you will waive all objections and have no right to appeal any aspect of the proposed Settlement. If you raise an objection according to the above procedure and fail to appear, you will have no right to appeal any aspect of the proposed Settlement. This includes appealing (i) an order approving the Settlement as fair, reasonable and adequate; (ii) entry of Judgment that dismisses this action with prejudice and releases the claims of class members as provided for in the Settlement; (iii) an award of incentive payments to the Representative Plaintiffs; or (iv) an award of reasonable attorneys fees and costs to Class Counsel.

You can enter an appearance in the lawsuit through your own legal counsel. If you do, you will be responsible for your own attorneys' fees and costs.

10.    FAIRNESS HEARING:   On September 5, 2008, a hearing will be held before the Honorable Michael Manners, in Division 2 of the Jackson County Circuit Court at Independence, 308 West Kansas, Independence, Missouri 64050.The purpose of the hearing is for the Court to decide whether the proposed Settlement is fair, reasonable, and adequate and should be approved. The Court will also decide whether a final judgment should be entered dismissing this lawsuit; and the amount of attorneys' fees and expenses and incentive awards to class representatives. This hearing may be postponed without further notice to the class.

11.    ADDITIONAL INFORMATION:   You can get more information at the proposed Settlement Web site at www.DexCoolSettlement.com/Missouri.   You can also view the Settlement Agreement and download a Claim Statement form on the Web site.

You can get more information by calling the Claims Administrator toll-free at **1 (866) 245-4291**; sending an e-mail to info@dexcoolsettlement.com; or by sending a written inquiry to Co-Lead Counsel at the address in paragraph 9, above.   In addition, you can view the Court's docket at http://www.16thcircuit.org/ and inputting case number 03CV208786.  Otherwise, **please do not direct any inquiries to the Court.**

DATED: MARCH 28, 2008                    BY ORDER OF THE CIRCUIT COURT
                                        OF JACKSON COUNTY, MISSOURI

# EXHIBIT D

1

2

3

4

5

**ENDORSED
FILED
ALAMEDA COUNTY**

**OCT 23 2008**

*Adajin* , Exec. Off./Clerk

6            SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                 FOR THE COUNTY OF ALAMEDA

8    Coordination Proceeding                    JUDICIAL COUNCIL COORDINATION
     Special Title (Rule 1550(b))               PROCEEDING NO. 4495
9
     **GENERAL MOTORS**                         SUPERIOR COURT OF CALIFORNIA
10   **DEX-COOL/GASKET CASES**                  COUNTY OF ALAMEDA
                                                NO. HG03093843
11       Included actions
                                                SUPERIOR COURT OF CALIFORNIA
12   Sadowski v  General Motors Corp.           COUNTY OF SAN JOAQUIN
                                                NO. CV 025 770
13
     Bertino v  General Motors Corp             **JUDGMENT AND ORDER OF DISMISSAL**
14                                              **WITH PREJUDICE**

15                                              The Honorable Robert B  Freedman

16                                              Action filed.  April 29, 2003
                                                Trial date    None set
17

18        This matter came before the Court for hearing pursuant to the Order Granting Preliminary

19   Approval Of Proposed Settlement, Provisionally Certifying Class, And Directing Dissemination Of

20   Notice To Class, dated March 20, 2008 ("Notice Order"), on the application of the Parties for

21   approval of the settlement set forth in the Settlement Agreement, dated March 19, 2008

22   ("Agreement")  Due and adequate notice having been given of the settlement set forth in the

23   Agreement ("Settlement") as required by the Notice Order, and the Court having considered and

24   reviewed all papers filed and proceedings had herein, including the timely objections to the proposed

25   settlement submitted by class members, approximately 80 of which were submitted by individuals

26   themselves and 5 by counsel on behalf of 6 individuals, as well as the responses filed by Plaintiffs

27   and GM to the objections, and otherwise being fully informed in the premises and good cause

28   appearing therefor, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that

---

1

JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE
JUDICIAL COUNSEL COORDINATED PROCEEDING 4495

1.    This Judgment incorporates by reference the definitions in the Agreement and Notice Order, and all defined terms used herein shall have the same meanings set forth in the Agreement and Notice Order

2    This Court has jurisdiction over the subject matter of the Sadowski Action, the Sadowski Parties, and all members of the settlement Class defined as follows·

> All Consumers in the United States of America, excepting those who purchased or leased their vehicles in the State of Missouri, who (i) own or lease, or who have owned or leased, a Covered Vehicle that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred a repair expense of the type included in the definition of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order

> Excluded from the Class are GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone employed by counsel for Representative Plaintiffs, any Judge to whom any of the Actions is assigned as well as his or her immediate family; any and all persons who timely and validly request exclusion from the Class pursuant to the notice disseminated in accordance with the Notice Order

3    This Court hereby finds that for settlement purposes, and for purposes of the Agreement and the Settlement, the Sadowski Action and the Class meet the requirements for the bringing and maintenance of a class action set forth in section 382 of the Code of Civil Procedure and section 1781 of the Civil Code

4    This Court hereby finds that the Agreement and Settlement are, in all respects, fair, reasonable, and adequate, and in the best interests of the Class; overrules the timely objections submitted, grants final approval of the Agreement and Settlement, and directs the Parties to perform the terms of the Agreement

1      5      This Court hereby dismisses the Sadowski Action with prejudice and without costs,

2    except as otherwise provided in the Agreement

3      6      Upon the Effective Date of the Settlement, the Representative Plaintiffs and the Class

4    Members, including their affiliates, subsidiaries, associates, general or limited partners or

5    partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their

6    respective present or former officers, directors, trustees, employees, agents, attorneys,

7    representatives and/or shareholders, affiliates, associates, general or limited partners or partnerships,

8    heirs, executors, administrators, predecessors, successors, assigns or insurers, and anyone acting on

9    their behalf, by operation of this Judgment, shall have hereby released, waived and discharged GM,

10   including its subsidiaries, affiliates, associates, general or limited partners or partnerships,

11   predecessors, successors, and/or assigns, including, without limitation, any of their respective

12   present or former officers, directors, trustees, employees, agents, attorneys, representatives and

13   shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors,

14   administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf,

15   individually and collectively, from liability for any and all claims, demands, debts, rights, causes of

16   action or liabilities whatsoever, including known and unknown claims, now existing or hereafter

17   arising, in law, equity or otherwise, arising under state statutory or common law federal statutory or

18   common law, or foreign statutory or common law, to the fullest extent permitted by law, including,

19   but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer

20   protection, consumer fraud, deceptive trade practices statutes, common law breach of contract

21   claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims

22   or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively,

23   representatively or in any other capacity, and whether or not such claims were or could have been

24   raised or asserted in the Actions or the Amico/Bertino Actions, to the extent any such claims are

25   based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions,

26   transactions, events, conduct, or matters arising from or related to any Repair Expense  Claims for

27   personal injury, and claims for lower intake manifold gasket replacements in 4 3-liter V6 engines for

28   Class Members who have not submitted a Claim and received a payment under the settlement, are

1   not released  The Parties recognize and agree that this is a general release  Representative Plaintiffs

2   and the Class Members expressly waive and relinquish, and shall be deemed to have waived and

3   relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California

4   Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United

5   States, any law of any State or the District of Columbia, or any principle of common law that is

6   similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general

7   release does not extend to claims which the creditor does not know or suspect to exist in his or her

8   favor at the time of executing the release, which if known by him or her must have materially

9   affected his or her settlement with the debtor "

10       7    Upon the Effective Date of the Settlement, GM and its past or present officers,

11  directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions,

12  and assigns, shall be deemed to have, and by operation of this Judgment shall have, released,

13  waived, and discharged any and all claims or causes of action of any nature whatsoever, including

14  but not limited to any claim for violations of federal, state, or other law (whether in contract, tort, or

15  otherwise, including statutory, common law, property, and equitable claims), whether known or

16  unknown, that have been or could have been asserted against any Representative Plaintiff, counsel

17  for any Representative Plaintiff, or any Class Member, in the Actions or in any other complaint,

18  action, or litigation in any other court or forum arising from, based on, or related to the initiation,

19  prosecution, or resolution of the Actions to the extent any such claims are based upon, arise out of or

20  relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or

21  matters arising from or related to any Repair Expense. The Parties recognize and agree that this is a

22  general release, and shall have expressly waived and relinquished, to the fullest extent permitted by

23  law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions,

24  rights, and benefits conferred by any law of the United States, any law of any State or the District of

25  Columbia, or any principle of common law that is similar, comparable, or equivalent to California

26  Civil Code section 1542, which states, "A general release does not extend to claims which the

27  creditor does not know or suspect to exist in his or her favor at the time of executing the release,

28  which if known by him or her must have materially affected his or her settlement with the debtor "

8    Under the circumstances, the notice of this Settlement provided to the Class Members in accordance with the Notice Order was the best notice practicable of the proceedings and matters set forth therein, including the proposed Settlement, to all persons entitled to such notice, and said notice fully satisfied the requirements of due process and California law

9    Neither the Fee Application nor any order entered by this Court thereon shall in any way disturb or affect this Judgment, and all such matters shall be considered separate from this Judgment   The Court will not award more than (i) $140,000 in incentive payments to Representative Plaintiffs; (ii) $16 5 million in attorneys' fees, and (iii) $1 55 million in documented costs.

10    Within forty-five (45) days after entry of this Judgment, Co-Lead Counsel shall, with the agreement of GM, file a listing of each person who submitted a valid and timely request for exclusion from the Class   The persons so identified shall neither share in the benefits of the Settlement nor be bound by this Judgment   All persons who meet the Class definition and have not submitted such an exclusion request shall be bound by this Judgment

11    Neither the Agreement nor the Settlement nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim asserted against GM in the Actions, or of any wrongdoing or liability of GM, or of an admission by General Motors that the claims that were the subject of this action were appropriate for class certification for purposes of trial or for any other purpose other than for purposes of this Settlement Agreement, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of GM in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal, or (c) is or may be deemed to interfere with, prohibit or bar a Class Member from cooperating with or assisting an extended commercial warranty provider or other third party to bring subrogation claims against GM related to Covered Repairs   GM may file the Agreement, this Judgment, or both in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim

1       12     Consistent with the express terms of the Settlement Agreement, subrogation claims

2 are not being released as part of this Judgment  The rights of extended commercial warranty

3 providers or other third parties to bring subrogation claims against GM related to Covered Repairs in

4 a separate action are not barred by the Settlement

5       13     Without affecting the finality of this Judgment in any way, this Court hereby retains

6 continuing jurisdiction, pursuant to California Rule of Court 3 769(h), over (a) implementation of the

7 Settlement, (b) payment of Class Members' claims under the Settlement; (c) further proceedings, if

8 necessary, on applications for attorneys' fees, expenses, or costs in connection with the Sadowski

9 Action or the Settlement, and (d) the Parties for purposes of construing, enforcing, or administering

10 the Agreement  If any Party fails to fulfill its obligations completely, the Court retains the power to

11 issue such orders to enforce this Judgment and the Settlement as it deems appropriate after noticed

12 hearing.

13       14     If the Settlement does not become effective in accordance with the terms of the

14 Agreement, then this Judgment shall be rendered null and void to the extent provided by and in

15 accordance with the Agreement and shall be vacated and, in such event, all orders entered and

16 releases delivered in connection herewith shall be null and void to the extent provided by and in

17 accordance with the Agreement

18       15     A Compliance Hearing is hereby set for February 27, 2009 at 10 00 a m  in

19 Department 20  If a final report and accounting satisfactory to the Court regarding the administration

20 of the Settlement is submitted at least 5 court days prior to the Compliance Hearing, no appearances

21 will be required

22       **IT IS SO ORDERED.**

23

24 DATED. _Oct 23, 2008_

25                      THE HONORABLE ROBERT B. FREEDMAN
                        JUDGE OF THE SUPERIOR COURT

26

27

28

JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE
JUDICIAL COUNSEL COORDINATED PROCEEDING 4405

# EXHIBIT E

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

| | | |
|---|---|---|
| MICHAEL GUTZLER, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 03CV208786 |
| | ) | |
| GENERAL MOTORS CORPORATION, | ) | Division 2 |
| | ) | |
| Defendant. | ) | |

### FINAL JUDGMENT AND ORDER OF DISMISSAL

This matter came before the Court for hearing pursuant to the Amended Order Decertifying Class, Granting Preliminary Approval of Proposed Settlement, Provisionally Certifying Settlement Class, And Directing Dissemination of Notice To Class, dated April 14, 2008 ("Notice Order"), on the application of the Parties for approval of the settlement set forth in the Settlement Agreement, dated March 26, 2008 ("Agreement"). Due and adequate notice having been given of the settlement set forth in the Agreement ("Settlement") as required by the Notice Order, and the Court having considered all papers filed and proceedings had herein and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.    This Judgment incorporates by reference the definitions in the Agreement and Notice Order, and all defined terms used herein shall have the same meanings set forth in the Agreement and Notice Order.

2369008.01

2.    This Court hereby decertifies the class defined in the Court's Order dated
January 9, 2006.

3.    This Court has jurisdiction over the subject matter of the Action, the
Parties, and all members of the settlement Class defined as follows:

> All Consumers who purchased or leased a Covered Vehicle in the State of
> Missouri (i) that has been in service in excess of seven years, measured from the
> Date of Initial Vehicle Delivery, at the time of the first date on which notice of the
> Settlement is disseminated and who, at the time of the notice, had not incurred a
> repair expense of the type included in the definition of Covered Repair, or (ii)
> who incurred an expense for a Covered Repair before the first date on which
> notice of the Settlement is disseminated to the Class in accordance with the
> Notice Order.    Excluded from the Class are GM; any affiliate, parent, or
> subsidiary of GM; any entity in which GM has a controlling interest; any officer,
> director, or employee of GM; any successor or assign of GM; and the Judge to
> whom the Action is assigned as well as his or her immediate family.

4.  This Court hereby finds that for settlement purposes, and for purposes of
the Agreement and the Settlement, the Action and the Class meet the requirements for
the bringing and maintenance of a class action set forth in Rule 52.08.

5.  This Court hereby finds that the Agreement and Settlement are, in all
respects, fair, reasonable, and adequate, and in the best interests of the Class; grants
final approval of the Agreement and Settlement; and directs the Parties to perform the
terms of the Agreement.

6.  This Court hereby dismisses the Action with prejudice and without costs,
except as otherwise provided in the Agreement.

7.  Upon the Effective Date of the Settlement, the Representative Plaintiffs and
the Class Members, including their affiliates, subsidiaries, associates, general or
limited partners or partnerships, predecessors, successors, and/or assigns, including,
without limitation, any of their respective present or former officers, directors,
trustees, employees, agents, attorneys, representatives and/or shareholders, affiliates,
associates, general or limited partners or partnerships, heirs, executors, administrators,

2

2369008.01

predecessors, successors, assigns or insurers, and anyone acting on their behalf, by operation of the Judgment, shall have hereby released, waived and discharged GM, including its subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state statutory or common law federal statutory or common law, or foreign statutory or common law, to the fullest extent permitted by law, including, but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such claims were or could have been raised or asserted in the Action, to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense. Claims for personal injury are not released. The Parties recognize and agree that this is a general release. Representative Plaintiffs and the Class Members expressly waive and relinquish, and shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United States, any law of any State or the

3

District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

7. Upon the Effective Date of the Settlement, GM and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns, shall be deemed to have, and by operation of the Judgment shall have, released, waived, and discharged any and all claims or causes of action of any nature whatsoever, including but not limited to any claim for violations of federal, state, or other law (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), whether known or unknown, that have been or could have been asserted against any Representative Plaintiff, counsel for any Representative Plaintiff, or any Class Member, in the Action or in any other complaint, action, or litigation in any other court or forum arising from, based on, or related to the initiation, prosecution, or resolution of the Action to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense. The Parties recognize and agree that this is a general release, and shall have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United States, any law of any State or the District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the

4

debtor.".

8. Under the circumstances, the notice of this Settlement provided to the Class Members in accordance with the Notice Order was the best notice practicable of the proceedings and matters set forth therein, including the proposed Settlement, to all persons entitled to such notice, and said notice fully satisfied the requirements of due process and Missouri law.

9. Neither the Fee Application nor any order entered by this Court thereon shall in any way disturb or affect this Judgment, and all such matters shall be considered separate from this Judgment. The Court will not award more than (i) $60,000 in incentive payments to Representative Plaintiffs; (ii) $7.25 million in attorneys' fees; and (iii) $1.25 million in documented costs.

10. Within forty-five (45) days after entry of this Judgment, Co-Lead Counsel shall, with the agreement of GM, file a listing of each person who submitted a valid and timely request for exclusion from the Class. The persons so identified shall neither share in the benefits of the Settlement nor be bound by this Judgment. All persons who meet the Class definition and have not submitted such an exclusion request shall be bound by this Judgment.

11. Neither the Agreement nor the Settlement nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim asserted against GM in the Action, or of any wrongdoing or liability of GM, or of an admission by General Motors that the claims that were the subject of this action were appropriate for class certification for purposes of trial or for any other purpose other than for purposes of this Settlement Agreement; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of GM in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal. GM may file the Agreement, this Judgment,

5

or both in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of the Settlement; (b) payment of Class Members' claims under the Settlement; (c) further proceedings, if necessary, on applications for attorneys' fees, expenses, or costs in connection with the Action or the Settlement; and (d) the Parties for purposes of construing, enforcing, or administering the Agreement. If any Party fails to fulfill its obligations completely, the Court retains the power to issue such orders to enforce this Judgment and the Settlement as it deems appropriate after noticed hearing.

13. If the Settlement does not become effective in accordance with the terms of the Agreement, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

**IT IS SO ORDERED.**

DATED: _SEP - 5 2008_____    _____

**THE HONORABLE MICHAEL MANNERS**
JUDGE OF THE CIRCUIT COURT

A TRUE COPY-ATTEST
COURT OF JACKSON COUNTY, MO
CT ADMINISTRATOR'S OFFICE
DEPARTMENT OF CIVIL RECORDS

6

# EXHIBIT F

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                    :

In re                                :        Chapter 11 Case No.
                                   :

MOTORS LIQUIDATION COMPANY, *et al.*,  :       09-50026 (REG)
       f/k/a General Motors Corp., *et al.*    :
                                     :

                     Debtors.        :       (Jointly Administered)
                                     :

------------------------------------------------------------x

## STIPULATION AND ORDER BETWEEN THE DEBTORS AND THE HOLDERS OF UNLIQUIDATED DEX-COOL AND ANDERSON CLAIMS TO ALLOW CLASS PROOFS OF CLAIM FOR DEX-COOL AND ANDERSON CLASS CLAIMANTS

         Motors Liquidation Company (f/k/a General Motors Corporation) ("MLC") and

certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11

cases (collectively, the "**Debtors**" or "**MLC**"), and the holders of Unliquidated Dex-Cool Claims

(as defined below), and the holders of Unliquidated Anderson Claims (as defined below), by and

through their respective undersigned counsel, hereby enter into this Stipulation and Agreed

Order (this "**Stipulation**") and stipulate as follows:

### RECITALS

      A.        On June 1, 2009 (the "**Commencement Date**"), the Debtors commenced with this

Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States

Code (the "**Bankruptcy Code**").  The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code.  No trustee or examiner has been appointed. On or about June 3,

2009, an Official Committee of Unsecured Creditors (the "**Committee**") was appointed in the

Chapter 11 Cases.  The Chapter 11 Cases are being jointly administered pursuant to Rule

1015(b) of the Bankruptcy Rules.

B.        On September 16, 2009, the Court entered an order (the "**Bar Date Order**")

establishing November 30, 2009 at 5:00 p.m. (Eastern Time) (the "**General Bar Date**") as the

deadline for each person or entity (including without limitation, each individual, partnership,

joint venture, corporation, estate, or trust) to file a proof of claim (a "**Proof of Claim**") against

any Debtor to assert any claim (as defined in section 101(5) of the Bankruptcy Code) (a

"**Claim**") that arose prior to the Commencement Date.

C.        On April 29, 2003 certain consumers filed class actions against MLC in the 16th

Judicial Circuit Court (Jackson County) of the State of Missouri (the "**Gutzler Class Action**")

and in the Superior Court of the State of California for the County of Alameda (the "**Sadowski**

**Class Action**" and together with the Gutzler Class Action, the "**Dex-Cool Class Actions**").  In

both the Gutzler Class Action and the Sadowski Class Action, the parties entered into a

settlement agreement approved by each court (collectively, the "**Dex-Cool Settlement**

**Agreement**").  Prior to the Commencement Date, the administration of the Dex-Cool Settlement

Agreement had been substantially completed.  However, certain claims in connection with the

Dex-Cool Class Actions had not yet been liquidated pursuant to the terms of the Dex-Cool

Settlement Agreement (the "**Unliquidated Dex-Cool Claims**").

D.        On May 18, 2004 certain consumers filed a class action against MLC in the

Superior Court of the State of California for the County of Los Angeles, Central Civil West

Courthouse (the "**Anderson Class Action**").  In the Anderson Class Action, the parties entered

into a settlement agreement approved by the court (the "**Anderson Settlement Agreement**").

Prior to the Commencement Date, the administration of the Anderson Settlement Agreement had

been initiated.  However, certain claims in connection with the Anderson Class Action had not

yet been liquidated pursuant to the terms of the Anderson Settlement Agreement (the

"**Unliquidated Anderson Claims**").

**NOW, THEREFORE,** in consideration of the mutual covenants and agreements

set forth in this Stipulation, it is agreed as follows:

<u>AGREEMENT</u>

1.    On behalf of the holders of Unliquidated Dex-Cool Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors, and the Debtors agree that the undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Dex-Cool Claims.

2.    On behalf of the holders of Unliquidated Anderson Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors and the Debtors agrees that undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Anderson Claims.

3.    The undersigned class counsel, by filing the Class Proofs of Claim in respect of

the Unliquidated Dex-Cool Claims and the Unliquidated Anderson Claims, consents to and

hereby is deemed to be the claimant for the purpose of receiving notices and distributions, if

any, except as otherwise provided in a confirmation order related to a chapter 11 plan filed in

the Chapter 11 Cases, and may (but shall not be required to) respond to any objections

interposed as to any claims asserted in each applicable Class Proof of Claim.    Notice to the

undersigned class counsel shall be, and shall be deemed to be, sufficient notice to all class

members in the Dex-Cool Class Action and the Anderson Class Action.

4.    The Debtors' agreement herein to permit the filing by the undersigned class counsel of each Class Proof of Claim is intended solely for the purpose of administrative convenience and neither this Stipulation and Order nor the filing of any Class Proof of Claim shall in any way prejudice the right of any Debtor or any other party in interest to object to the allowance of any Class Proof of Claim.

5.    This Court shall retain jurisdiction to resolve any disputes or controversies arising from or relating to this Stipulation and Order and to the filing of the Class Proofs of Claim pursuant to this Stipulation.

6.    This Stipulation is subject to the approval of this Court and shall become effective upon the entry of an order by the Court approving this Stipulation. If this Stipulation is not approved by the Court, then this Stipulation shall be deemed null and void, and shall not be referred to or used for any purpose by any of the parties hereto (the "**Parties**") in either the Chapter 11 Cases or in any other forum.

7.    This Stipulation sets forth the entire understanding of the Parties with respect to the matters addressed herein and is intended to be the complete and exclusive statement of the terms thereof and may not be modified or amended except by a writing signed by the Parties and/or their counsel, which shall be so-ordered by the Court. Accordingly, the Parties have independently verified all facts and/or conditions of facts that they have determined are necessary to their decision to enter into this Stipulation, and they have not relied upon any representations, written or oral, express or implied, of any other person in verifying and satisfying themselves as to such facts and/or condition of facts.

8.    The Parties represent and warrant to each other that the signatories to this Stipulation have full power and authority to enter into this Stipulation.

9.      This Stipulation may be executed in multiple counterparts, each of which shall

be deemed an original but all of which together shall constitute one and the same instrument.

Delivery of signed counterparts of this Stipulation by facsimile transmission or as PDF

attachment to an email message shall have the same effect as the manual delivery of an original

signed counterpart of this Stipulation, and all signatures on such counterpart will be deemed to

be as valid as an original signature whether or not a Party delivers manually an original signed

counterpart of this Stipulation, although it is the Parties' intention to deliver an original signed

counterpart after any facsimile or email delivery.


DATED: November __, 2009                    Respectfully submitted,


**GIRARD GIBBS LLP**                        **POLSINELLI SHUGHART P.C.**


By: /s/ A. J. de Bartolomeo                 By: P. John Brady
A. J. De Bartolomeo                         P. John Brady

Eric H. Gibbs                               Twelve Wyandotte Plaza
Dylan Hughes                                120 West 12th Street
Geoffrey A. Munroe                          Kansas City, Missouri 64105
601 California Street, 14th Floor           Telephone: (816) 421-3355
San Francisco, California 94108             Facsimile: (816) 374-0509
Telephone: (415) 981-4800
Facsimile: (415) 981-4846                   *Court-Appointed Class Counsel in Dex-Cool*

*Court-Appointed Class Counsel in Dex-Cool*
*Class Action and Anderson*

**WEIL, GOTSHAL & MANGES LLP**


By: <u>Joseph H. Smolinsky</u>
Joseph H. Smolinsky

767 Fifth Avenue
New York, New York 10153
Attention: Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Phone: (212) 310-8000
Facsimile: (212) 310-8007


*Attorneys for the Debtors and Debtors in Possession*

## ORDER APPROVING STIPULATION

Based on the foregoing stipulation of the parties, the Court finding that good cause exists to approve the Stipulation as an order of the Court, that adequate notice of the Stipulation has been provided, and that no further notice is required,

IT IS HEREBY ORDERED that the foregoing stipulation is approved and incorporated by reference and made a part of this Order.

IT IS FURTHER ORDERED that this Court will retain jurisdiction to adjudicate any disputes arising in connection with this Order.


Date:    **_December 1, 2009_**
         New York, New York


                              **_s/ Robert E. Gerber_**
                              UNITED STATES BANKRUPTCY JUDGE


US_ACTIVE:\43228357\05\72240.0639

# EXHIBIT G

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :
In re                                         :        Chapter 11 Case No.
                                              :
MOTORS LIQUIDATION COMPANY, et al.,           :        09-50026 (REG)
         f/k/a General Motors Corp., et al.   :
                                              :
                 Debtors.                     :        (Jointly Administered)
                                              :
------------------------------------------------------------x

## ORDER PURSUANT TO FED. R. BANKR. P. 9019 AND FED. R. CIV. P. RULE 23 APPROVING AGREEMENT RESOLVING PROOF OF CLAIM NO. 50026 AND IMPLEMENTING MODIFIED DEX-COOL CLASS SETTLEMENT

Upon the Motion, dated March 24, 2011 (the "**Motion**"),[1] of Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure and Federal Rule of Civil Procedure 23, for entry of an order approving the

Agreement Resolving Proof of Claim No. 50026 and Implementing Modified Dex-Cool Class

Settlement (the "**Agreement**"), attached to the Motion as **Exhibit "A,"** implementing a

settlement between the Debtors and class action plaintiffs (the "**Dex-Cool Plaintiffs**"), on behalf

of themselves and all others similarly situated (collectively, the "**Dex-Cool Class**") as more fully

set forth in the Motion; and due and proper notice of the Motion having been provided, and it

appearing that no other or further notice need be provided to any party; and the Court having

found and determined that (i) the relief sought in the Motion is in the best interests of the

Debtors, their estates, creditors, and all parties in interest; (ii) the Agreement is fair, reasonable,

adequate, and in the best interest of the Dex-Cool Class considering the complexity, expense,

---

[1]      Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and likely duration of the Dex-Cool Class Action litigation; the reaction of the Dex-Cool Class to

the proposed settlement; the stage of the proceedings and the amount of discovery completed; the

risk of establishing liability and damages and maintaining the class through trial; the ability of

the Debtors to withstand a greater judgment; and the range of reasonableness of the settlement in

light of the best possible recovery and all the attendant risks of litigation; (iii) the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; (iv) the

settlement and compromise embodied in the Agreement is within the range of reasonableness;

(v) the Agreement was not the product of collusion between the parties and their respective

counsel, but was the result of bona fide, good faith, arms-length negotiations between

experienced counsel after sufficient discovery was obtained; (vi) and the Notice of Settlement

previously provided to the Dex-Cool Class was adequate and satisfied the Federal Rules of Civil

Procedure and no additional notice of the Agreement is required; and after due deliberation and

sufficient cause appearing therefore, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Debtors' entry into the Agreement is in the best interests of

the Debtors and their estates; and it is further

ORDERED that the Debtors' entry into the Agreement is authorized, ratified, and

directed; and it is further

ORDERED that the Court will apply Rule 7023 of the Federal Rules of

Bankruptcy Procedure solely for the purposes of settlement in granting the Motion; and it is

further

ORDERED that the Court adopts the California and Missouri Courts' certification

of the Dex-Cool Class solely for the purposes of settlement; and it is further

2

ORDERED that the Resubmitting Participating Class Members shall be awarded

an allowed general unsecured claim in the amount of $2,205,570.00 (the **"Total Allowed**

**Unsecured Claim"**) and it is hereby determined that such amount is fair and reasonable; and it is

further

ORDERED that the Claim and the Dex-Cool Proof of Claim shall be superseded

and replaced by the Total Allowed Unsecured Claim; and it is further

ORDERED that Co-Lead Class Counsel is specifically authorized and directed to

administer the proceeds resulting from the Total Allowed Unsecured Claim and otherwise make

*pro rata* distributions of the cash proceeds to the Resubmitting Participating Class Members in

accordance with the Agreement and as follows:

(i)      Co-Lead Class Counsel is authorized to (i) sell, transfer, assign, and/or

otherwise monetize the Total Allowed Unsecured Claim, either individually or through a broker,

and/or (ii) monetize any shares, warrants, options, or other property received from Debtors as

part of any chapter 11 plan in any commercially reasonable manner;

(ii)     Cash distributions to Resubmitting Participating Class Members will be

made on a *pro rata* basis from cash proceeds resulting from the Total Allowed Unsecured Claim

and will be allocated in accordance with the Agreement and the Plan of Allocation contained

therein; and it is further

ORDERED that no further notice of (i) the Agreement, (ii) Co-Lead Class

Counsels' and the Debtors' entry into the Agreement, or (iii) the representative plaintiffs' entry

into the Agreement on behalf of the Dex-Cool Class is required; and it is further

ORDERED that upon entry of this Order, all terms and conditions of the

Agreement shall become effective; and it is further

ORDERED that to the extent any conflict exists between the terms and conditions

of the Agreement and this Order, this Order shall control; and it is further

ORDERED that no member of the Dex-Cool Class shall have any claim against

the Debtors or Debtors' Counsel based on implementation of the Agreement or distributions

made from cash proceeds resulting from the Total Allowed Unsecured Claim; and it is further

ORDERED that Co-Lead Class Counsel shall be solely responsible for costs

associated with administration and implementation of the Agreement and distribution of the cash

proceeds resulting from the Total Allowed Unsecured Claim; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to the implementation, interpretation, and/or enforcement of this

Order.

Dated: New York, New York
     [_____], 2011

                _____

                United States Bankruptcy Judge

# EXHIBIT B

HEARING DATE AND TIME: April 26, 2011 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: April 19, 2011 at 4:00 p.m. (Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                              :

In re                       :      Chapter 11 Case No.
                              :

**MOTORS LIQUIDATION COMPANY,** *et al.,*  :     **09-50026 (REG)**
      f/k/a **General Motors Corp.,** *et al.*  :
                              :

                   **Debtors.**    :     **(Jointly Administered)**
                              :

-------------------------------------------------------------x

### ORDER PURSUANT TO FED. R. BANKR. P. 9019 AND FED. R. CIV. P. RULE 23 APPROVING AGREEMENT RESOLVING PROOF OF CLAIM NO. 50026 AND IMPLEMENTING MODIFIED DEX-COOL CLASS SETTLEMENT

Upon the Motion, dated March 24, 2011 (the "**Motion**"),[1] of Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), pursuant to Rule 9019 of the Federal Rules of Bankruptcy

Procedure and Federal Rule of Civil Procedure 23, for entry of an order approving the

Agreement Resolving Proof of Claim No. 50026 and Implementing Modified Dex-Cool Class

Settlement (the "**Agreement**"), attached to the Motion as **Exhibit "A,"** implementing a

settlement between the Debtors and class action plaintiffs (the "**Dex-Cool Plaintiffs**"), on behalf

of themselves and all others similarly situated (collectively, the "**Dex-Cool Class**") as more fully

set forth in the Motion; and due and proper notice of the Motion having been provided, and it

appearing that no other or further notice need be provided to any party; and the Court having

found and determined that (i) the relief sought in the Motion is in the best interests of the

Debtors, their estates, creditors, and all parties in interest; (ii) the Agreement is fair, reasonable,

adequate, and in the best interest of the Dex-Cool Class considering the complexity, expense,

---

[1]     Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

and likely duration of the Dex-Cool Class Action litigation; the reaction of the Dex-Cool Class to

the proposed settlement; the stage of the proceedings and the amount of discovery completed; the

risk of establishing liability and damages and maintaining the class through trial; the ability of

the Debtors to withstand a greater judgment; and the range of reasonableness of the settlement in

light of the best possible recovery and all the attendant risks of litigation; (iii) the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; (iv) the

settlement and compromise embodied in the Agreement is within the range of reasonableness;

(v) the Agreement was not the product of collusion between the parties and their respective

counsel, but was the result of bona fide, good faith, arms-length negotiations between

experienced counsel after sufficient discovery was obtained; (vi) and the Notice of Settlement

previously provided to the Dex-Cool Class was adequate and satisfied the Federal Rules of Civil

Procedure and no additional notice of the Agreement is required; and after due deliberation and

sufficient cause appearing therefore, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Debtors' entry into the Agreement is in the best interests of

the Debtors and their estates; and it is further

ORDERED that the Debtors' entry into the Agreement is authorized, ratified, and

directed; and it is further

ORDERED that the Court will apply Rule 7023 of the Federal Rules of

Bankruptcy Procedure solely for the purposes of settlement in granting the Motion; and it is

further

ORDERED that the Court adopts the California and Missouri Courts' certification

of the Dex-Cool Class solely for the purposes of settlement; and it is further

ORDERED that the Resubmitting Participating Class Members shall be awarded an allowed general unsecured claim in the amount of $2,205,570.00 (the "**Total Allowed Unsecured Claim**") and it is hereby determined that such amount is fair and reasonable; and it is further

ORDERED that the Claim and the Dex-Cool Proof of Claim shall be superseded and replaced by the Total Allowed Unsecured Claim; and it is further

ORDERED that Co-Lead Class Counsel is specifically authorized and directed to administer the proceeds resulting from the Total Allowed Unsecured Claim and otherwise make *pro rata* distributions of the cash proceeds to the Resubmitting Participating Class Members in accordance with the Agreement and as follows:

(i)      Co-Lead Class Counsel is authorized to (i) sell, transfer, assign, and/or otherwise monetize the Total Allowed Unsecured Claim, either individually or through a broker, and/or (ii) monetize any shares, warrants, options, or other property received from Debtors as part of any chapter 11 plan in any commercially reasonable manner;

(ii)      Cash distributions to Resubmitting Participating Class Members will be made on a *pro rata* basis from cash proceeds resulting from the Total Allowed Unsecured Claim and will be allocated in accordance with the Agreement and the Plan of Allocation contained therein; and it is further

ORDERED that no further notice of (i) the Agreement, (ii) Co-Lead Class Counsels' and the Debtors' entry into the Agreement, or (iii) the representative plaintiffs' entry into the Agreement on behalf of the Dex-Cool Class is required; and it is further

ORDERED that upon entry of this Order, all terms and conditions of the Agreement shall become effective; and it is further

ORDERED that to the extent any conflict exists between the terms and conditions of the Agreement and this Order, this Order shall control; and it is further

ORDERED that no member of the Dex-Cool Class shall have any claim against the Debtors or Debtors' Counsel based on implementation of the Agreement or distributions made from cash proceeds resulting from the Total Allowed Unsecured Claim; and it is further

ORDERED that Co-Lead Class Counsel shall be solely responsible for costs associated with administration and implementation of the Agreement and distribution of the cash proceeds resulting from the Total Allowed Unsecured Claim; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: New York, New York
      [_____], 2011

_____
United States Bankruptcy Judge

# EXHIBIT C

## IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
## AT INDEPENDENCE

MICHAEL GUTZLER, et al.,   )
             )
  Plaintiffs,      )
             )
v.            )  Case No.  03CV208786
             )
GENERAL MOTORS CORPORATION,  )  Division 2
             )
  Defendant.      )

### AMENDED ORDER DECERTIFYING CLASS, GRANTING PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT, PROVISIONALLY CERTIFYING SETTLEMENT CLASS, AND DIRECTING DISSEMINATION OF NOTICE TO CLASS

WHEREAS, under the Missouri Class Action Settlement Agreement, entered into between the Parties, the Parties have applied for an order granting preliminary approval of a proposed class action settlement of the above-captioned action in accordance with a Settlement Agreement dated March 26, 2008 ("Agreement"), which together with the Exhibits annexed thereto sets forth the terms and conditions of a proposed settlement ("Settlement") whereby this case will be dismissed with prejudice;

WHEREAS the Court has read and considered the Agreement and the Exhibits annexed thereto; and

WHEREAS all defined terms contained and not otherwise defined herein shall have the same meanings as set forth in the Agreement,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.  The Court grants preliminary approval of the Agreement and the proposed Settlement set forth therein, subject to further consideration at the Fairness Hearing described below.

2.      Solely for settlement purposes and for purposes of the Agreement and the

proposed Settlement, the Court decertifies the existing class defined in the Court's January 9,

2006 Order, grants Plaintiffs leave to file a Second Amended Petition and certifies the following

Settlement Class:  All Consumers who purchased or leased a Covered Vehicle in the State of

Missouri (i) that has been in service in excess of seven years, measured from the Date of Initial

Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated

and who, at the time of the notice, had not incurred a repair expense of the type included in the

definition of Covered Repair, or (ii) who incurred an expense for a Covered Repair before the

first date on which notice of the Settlement is disseminated to the Class in accordance with the

Notice Order.  Excluded from the Class are GM; any affiliate, parent, or subsidiary of GM; any

entity in which GM has a controlling interest; any officer, director, or employee of GM; any

successor or assign of GM; and the Judge to whom the Action is assigned as well as his or her

immediate family.

3.      Pursuant to the Agreement, and under Rule 52.08, this Court finds, for purposes

of settlement only, that (a) the Class is so numerous that joinder of all Class Members is

impracticable; (b) there are questions of law or fact common to Class Members that predominate

over any questions affecting only individual Class Members; (c) the claims of the Named

Plaintiffs are typical of those of the Class; (d) the Plaintiffs and their counsel will fairly and

adequately protect the interests of the Class; and (e) a class action is superior to other available

methods for fairly and efficiently adjudicating the controversy, considering (i) the Class

Members' interests in individually controlling the prosecution of separate actions, (ii) the extent

and nature of any litigation concerning the controversy already begun by Class Members,

(iii) the desirability or undesirability of concentrating litigation of the claims in this particular

forum, and (iv) the likely difficulties in managing a class action.

4.    To act on behalf of the Class in connection with the Agreement and proposed

Settlement, the Court appoints the Named Plaintiffs as representatives of the Class and their

counsel of record, Shughart Thomson & Kilroy, P.C. and Girard Gibbs LLP as Co-Lead Counsel

for the Class.

5.    If the Agreement is not approved by the Court or the Settlement is terminated or

fails to become effective in accordance with the terms of the Agreement, the Court shall recertify

the current class, Plaintiffs shall withdraw the Second Amended Petition and this conditional

certification of a settlement class shall be vacated without further order of the Court and without

prejudice to the right of any party to seek leave to amend a petition or seek or oppose class

certification for trial purposes thereafter.  Otherwise, upon the Effective Date of the Settlement,

this class certification shall become unconditional for settlement purposes.

6.    A hearing ("Fairness Hearing") shall be held before this Court on September 5,

2008 at 9:00 a.m., in Division 2 of the Circuit Court of Jackson County, Missouri, at

Independence, 308 West Kansas Ave., Independence, Missouri 64050, to determine whether the

proposed Settlement, resolving and dismissing the Action on the terms and conditions provided

for in the Agreement, is fair, reasonable, and adequate to the Class and should be approved by

the Court; whether a Judgment as provided in Exhibit C of the Agreement should be entered

herein; and to determine the amount of attorneys' fees and expenses that should be awarded to

Class Counsel and incentive awards that should be approved for the Representative Plaintiffs.

7.    The Parties have proposed that the Class be given notice of the proposed Settlement by mail and publication as set forth in more detail in the memorandum filed with the Court describing the notice program.

8.    The Court approves the proposed notice program, including the form and content of the Long-Form Notice, claim form, summary notice for publication, and the proposed method of their dissemination, and finds that the proposed notice program meets the requirements of due process and Missouri law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto.   The Court directs the Parties to implement the proposed notice program as set forth in the Settlement Agreement and the memorandum describing the notice program filed with the Court.

9.    All persons who fall within the Class definition and who do not timely and validly exclude themselves from the Class shall be bound by all determinations and judgments whether favorable or unfavorable to the Class.

10.    Persons who wish to exclude themselves from the Class shall request exclusion within the time and in the manner set forth in the Long-Form Notice, including mailing or delivering a written exclusion request, such that it is received on or before August 13, 2008 at the address set forth in the Long-Form Notice.   Unless the Court orders otherwise, no request for exclusion shall be valid unless it is made within the time and in the manner set forth in the Long-Form Notice.

11.    Any Class Member may enter an appearance in the Action, at the Class Member's own expense, individually or through counsel of the Class Member's choice.  Any Class Member who does not enter an appearance will be represented by Co-Lead Counsel.   Pending determination of whether the Settlement should be granted final approval, neither the Named

4

Plaintiffs nor any Class Member, either directly, representatively, or in any other capacity, shall commence or prosecute any action or proceeding in any court or tribunal asserting any of the claims set forth in paragraph 3.14 of the Agreement.

12.    The Court will consider any Class Member's written objections or comments on whether the proposed Settlement should or should not be approved as fair, reasonable, and adequate; or whether a Judgment should or should not be entered thereon; or whether attorneys' fees and expenses should or should not be awarded to Class Counsel; or whether incentive awards should or should not be approved for the Representative Plaintiffs, provided the Class Member complies with the deadline and procedure set forth in the Long-Form Notice for submitting such objections or comments, including (a) delivering, no later than August 13, 2008, such objections or comments and any supporting papers or briefs to the Court, either by mailing them to: Clerk of Court, Circuit Court of Jackson County, Missouri, 308 West Kansas Avenue, Independence, Missouri 64050 or by filing in person at either location of the Circuit Court of Jackson County; and (b) mailing or delivering copies of such comments or objections and supporting papers or briefs to Co-Lead Counsel for the Class and to GM's counsel at the addresses listed in the Notice, such that they are received no later than August 13, 2008. Unless otherwise ordered by the Court, any Class Member who does not make his or her objection in the manner required shall be deemed to have waived such objection and shall forever be foreclosed from making any objection to the fairness, reasonableness, or adequacy of the proposed Settlement; the entry of a Judgment; any award of attorneys' fees or expenses to Class Counsel; or any incentive award to any Representative Plaintiff. An objecting Class Member may not appeal an order approving the Settlement as fair, reasonable and adequate; entry of Judgment that dismisses this action with prejudice and releases the claims of Class Members as provided

for in the Settlement; an award of incentive payments to the Representative Plaintiffs; or an award of reasonable attorneys fees and costs to Class Counsel, unless the objecting Class Member appears in person, through his/her counsel or as otherwise may be permitted by the Court, at the Fairness Hearing, or seeks leave of Court excusing such appearance prior to the Fairness Hearing.

13.    The Court will also hear any Class Member who appears at the Fairness Hearing and wishes to be heard on the above matters, provided that the Class Member complies with the deadline and procedure set forth in the Long-Form Notice for giving notice of his her intention to be appear at the Fairness Hearing.  Any Class Member who does not give such notice in the manner required shall not be entitled to be heard at the Fairness Hearing.

14.    All papers in support of final approval of the Settlement, or Class Counsel's application for attorneys' fees, reimbursement of expenses, and incentive awards for the Representative Plaintiffs ("Fee Application"), shall be filed and served by August 14, 2008.  The Parties may respond to any objection to the Settlement or Fee Application, provided that any such responses are filed and served no later than August 28, 2008.

15.    The Fee Application will be considered separately from the fairness, reasonableness, and adequacy of the Settlement.

16.    All costs of giving notice to the Class and administering the Settlement shall be borne and paid as set forth in the Agreement.

17.    The Court reserves the right to adjourn the date of the Fairness Hearing without further notice to the Class Members, and retains jurisdiction to consider all further applications arising out of or in connection with the proposed Settlement.  The Court may approve the

Settlement, with such modifications as may be agreed to by the Parties and approved by the Court, if appropriate, without further notice to the Class.

18.    If the Settlement is not approved or consummated for any reason whatsoever, the Settlement and all proceedings had in connection therewith shall be without prejudice to the rights of the Parties in all of the Actions and all of the actions will return to the status quo ante as provided in this Order and in the Settlement Agreement.

IT IS SO ORDERED.

DATED: _April 14, 2008_    _____

THE HONORABLE MICHAEL MANNERS
JUDGE DIVISION 2
JACKSON COUNTY CIRCUIT COURT

I certify a copy of the above was faxed or mailed this ____ day of April, 2008, to:

Richard M. Paul III, Attorney for Plaintiffs
Fax # (816) 374-0509

Eric D. Gibbs, Attorney for Plaintiffs
Fax # (415) 981-4846

John M. Parisi, Attorney for Plaintiffs
Fax # (816) 474-0003

David R. Smith, Attorney for Plaintiffs
Fax # (816) 753-1830

Andrew N. Friedman, Attorney for Plaintiffs
Fax # (202) 408-4699

Norman R. Siegel, Attorney for Plaintiffs
Fax # (816) 714-7101

Robert J. Hoffman, Attorney for Defendant
Fax # (816) 374-3300

Robert B. Ellis, Attorney for Defendant
Fax # (312) 861-2200

Sylvester James, Jr., Discovery Commissioner
Fax # (816) 472-6805

M. Brady, Law Clerk, Division 2

# EXHIBIT D

ENDORSED
FILED
ALAMEDA COUNTY

MAR 2 0 2008

CLERK OF THE SUPERIOR COURT
By ___HOLLIE M. ADAMIC___
                                    Deputy

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 1550(b))<br><br>**GENERAL MOTORS<br>DEX-COOL/GASKET CASES**<br><br>Included actions:<br><br>Sadowski v. General Motors Corp.<br><br>Bertino v. General Motors Corp. | JUDICIAL COUNCIL COORDINATION<br>PROCEEDING NO. 4495<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA<br>NO. HG03093843<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN JOAQUIN<br>NO. CV 025 770<br><br>[PROPOSED]<br>**ORDER GRANTING PRELIMINARY<br>APPROVAL OF PROPOSED SETTLEMENT,<br>PROVISIONALLY CERTIFYING CLASS,<br>AND DIRECTING DISSEMINATION OF<br>NOTICE TO CLASS**<br><br>The Honorable Robert B. Freedman<br><br>Action filed:    April 29, 2003<br>Trial date:      None set |

WHEREAS, under the Master Class Action Settlement Agreement Covering All States Except the State of Missouri, entered into between the Parties, the Parties have applied for an order granting preliminary approval of a proposed class action settlement of, among other Actions, the above-captioned action ("Sadowski Action"), in accordance with a Settlement Agreement dated March 19, 2008 ("Agreement"), which together with the Exhibits annexed thereto sets forth the terms and conditions of a proposed settlement ("Settlement") whereby the Sadowski Action, among other Actions, will be dismissed with prejudice;

WHEREAS the Court has read and considered the Agreement and the Exhibits annexed thereto; and

1    WHEREAS all defined terms contained and not otherwise defined herein shall have the same

2    meanings as set forth in the Agreement,

3    NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

4    1.    The Court grants preliminary approval of the Agreement and the proposed Settlement

5    set forth therein, subject to further consideration at the Fairness Hearing described below.

6    2.    Solely for settlement purposes and for purposes of the Agreement and the proposed

7    Settlement, the Court grants Plaintiffs leave to file a Fourth Amended Complaint and certifies the

8    following Class: All Consumers in the United States of America (excepting those who purchased or

9    leased a vehicle in the State of Missouri) who (i) own or lease, or who have owned or leased, a

10   Covered Vehicle that has been in service in excess of seven years, measured from the Date of Initial

11   Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and

12   who, at the time of the notice, had not incurred a repair expense of the type included in the definition

13   of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and who

14   incurred an expense for a Covered Repair before the first date on which notice of the Settlement is

15   disseminated to the Class in accordance with the Notice Order. Excluded from the Class are GM;

16   any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any

17   officer, director, or employee of GM; any successor or assign of GM; anyone employed by counsel

18   for Representative Plaintiffs; any Judge to whom any of the Actions is assigned as well as his or her

19   immediate family.

20   3.    Pursuant to the Agreement, and under section 382 of the Code of Civil Procedure and

21   section 1781 of the Civil Code, this Court finds, for purposes of settlement only, that the Class is

22   ascertainable and that there is a well-defined community of interest in the questions of law and fact

23   involved affecting the Class Members, and finds and concludes that (a) the Class is so numerous that

24   joinder of all Class Members is impracticable; (b) there are questions of law or fact common to Class

25   Members that predominate over any questions affecting only individual Class Members; (c) the

26   claims of the "Sadowski Plaintiffs," namely, Michael Sadowski and William Thornton, are typical of

27   those of the Class; (d) the Sadowski Plaintiffs and their counsel will fairly and adequately protect the

28   interests of the Class; and (e) a class action is superior to other available methods for fairly and

1    efficiently adjudicating the controversy, considering (i) the Class Members' interests in individually

2    controlling the prosecution of separate actions, (ii) the extent and nature of any litigation concerning

3    the controversy already begun by Class Members, (iii) the desirability or undesirability of

4    concentrating litigation of the claims in this particular forum, and (iv) the likely difficulties in

5    managing a class action.

6        4.    To act on behalf of the Class in connection with the Agreement and proposed

7    Settlement, the Court appoints the Sadowski Plaintiffs as representatives of the Class and their

8    counsel of record, Girard Gibbs LLP and Shughart Thomson & Kilroy P.C., as Co-Lead Counsel for

9    the Class.

10        5.    If the Agreement is not approved by the Court or the Settlement is terminated or fails

11   to become effective in accordance with the terms of the Agreement, Plaintiffs shall withdraw the

12   Fourth Amended Complaint and this conditional class certification shall be vacated without further

13   order of the Court and without prejudice to the right of any party to seek leave to amend a complaint

14   or seek or oppose class certification for trial purposes thereafter.  Otherwise, upon the Effective Date

15   of the Settlement, this class certification shall become unconditional for settlement purposes.

16        6.    A hearing ("Fairness Hearing") shall be held before this Court on August 29, 2008 at

17   _11_ : _00_ _a._m., in Department 20 of the Superior Court of California for Alameda County, County

18   Administration Building, 1221 Oak Street, Oakland, California 94612, to determine whether the

19   proposed Settlement, resolving and dismissing the Sadowski Action on the terms and conditions

20   provided for in the Agreement, is fair, reasonable, and adequate to the Class and should be approved

21   by the Court; whether a Judgment as provided in Exhibit C of the Agreement should be entered

22   herein; and to determine the amount of attorneys' fees and expenses that should be awarded to Class

23   Counsel and Amico/Bertino Counsel and incentive awards that should be approved for the

24   Representative Plaintiffs.

25        7.    The Parties have proposed that the Class be given notice of the proposed Settlement

26   by mail and publication as set forth in more detail in the memorandum filed with the Court

27   describing the notice program.

28

8.     The Court approves the proposed notice program, including the form and content of the Long-Form Notice, claim form, summary notice for publication, and the proposed method of their dissemination, and finds that the proposed notice program meets the requirements of due process and California law, is the best notice practicable under the circumstances, and constitutes due and sufficient notice to all persons entitled thereto. The Court directs the Parties to implement the proposed notice program as set forth in the Settlement Agreement and the memorandum describing the notice program filed with the Court.

9.     All persons who fall within the Class definition and who do not timely and validly exclude themselves from the Class shall be bound by all determinations and judgments whether favorable or unfavorable to the Class.

10.    Persons who wish to exclude themselves from the Class shall request exclusion within the time and in the manner set forth in the Long-Form Notice, including mailing or delivering a written exclusion request, such that it is received on or before August 13, 2008 at the address set forth in the Long-Form Notice. Unless the Court orders otherwise, no request for exclusion shall be valid unless it is made within the time and in the manner set forth in the Long-Form Notice.

11.    Any Class Member may enter an appearance in the Sadowski Action, at the Class Member's own expense, individually or through counsel of the Class Member's choice. Any Class Member who does not enter an appearance will be represented by Co-Lead Counsel. Pending determination of whether the Settlement should be granted final approval, neither the Sadowski Plaintiffs nor any Class Member, including any Representative Plaintiff in any of the Actions, either directly, representatively, or in any other capacity, shall commence or prosecute any action or proceeding in any court or tribunal asserting any of the claims set forth in paragraph 3.14 of the Agreement.

12.    The Court will consider any Class Member's written objections or comments on whether the proposed Settlement should or should not be approved as fair, reasonable, and adequate; or whether a Judgment should or should not be entered thereon; or whether attorneys' fees and expenses should or should not be awarded to Class Counsel and Amico/Bertino Counsel; or whether incentive awards should or should not be approved for the Representative Plaintiffs, provided the

1    Class Member complies with the deadline and procedure set forth in the Long-Form Notice for

2    submitting such objections or comments, including (a) delivering, no later than August 13, 2008,

3    such objections or comments and any supporting papers or briefs to the Court, either by mailing

4    them to: Clerk of Court, Superior Court of California, County of Alameda, Rene C. Davidson

5    Alameda County Courthouse, 1225 Fallon Street, Oakland, California 94612, or by filing in person

6    at any location of the Superior Court, County of Alameda that includes a facility for civil filings; and

7    (b) mailing or delivering copies of such comments or objections and supporting papers or briefs to

8    Co-Lead Counsel for the Class and to GM's counsel at the addresses listed in the Notice, such that

9    they are received no later than August 13, 2008.  Unless otherwise ordered by the Court, any Class

10    Member who does not make his or her objection in the manner required shall be deemed to have

11    waived such objection and shall forever be foreclosed from making any objection to the fairness,

12    reasonableness, or adequacy of the proposed Settlement; the entry of a Judgment; any award of

13    attorneys' fees or expenses to Class Counsel; or any incentive award to any Representative Plaintiff.

14    An objecting Class Member may not appeal an order approving the Settlement as fair, reasonable

15    and adequate; entry of Judgment that dismisses this action with prejudice and releases the claims of

16    Class Members as provided for in the Settlement; an award of incentive payments to the

17    Representative Plaintiffs; or an award of reasonable attorneys fees and costs to Class Counsel, unless

18    the objecting Class Member appears in person, through his/her counsel or as otherwise may be

19    permitted by the Court, at the Fairness Hearing, or seeks leave of Court excusing such appearance

20    prior to the Fairness Hearing.

21        13.    The Court will also hear any Class Member who appears at the Fairness Hearing and

22    wishes to be heard on the above matters, provided that the Class Member complies with the deadline

23    and procedure set forth in the Long-Form Notice for giving notice of his her intention to be appear at

24    the Fairness Hearing.  Any Class Member who does not give such notice in the manner required

25    shall not be entitled to be heard at the Fairness Hearing.

26        14.    All papers in support of final approval of the Settlement, or Class Counsel's or

27    Amico/Bertino Counsel's application for attorneys' fees, reimbursement of expenses, and incentive

28    awards for the Representative Plaintiffs ("Fee Application"), shall be filed and served by August 6,

1   2008. The Parties may respond to any objection to the Settlement or Fee Application, provided that

2   any such responses are filed and served no later than August 20, 2008.

3       15.    The Fee Application will be considered separately from the fairness, reasonableness,

4   and adequacy of the Settlement.

5       16.    All costs of giving notice to the Class and administering the Settlement shall be borne

6   and paid as set forth in the Agreement.

7       17.    The Court reserves the right to adjourn the date of the Fairness Hearing without

8   further notice to the Class Members, and retains jurisdiction to consider all further applications

9   arising out of or in connection with the proposed Settlement. The Court may approve the

10  Settlement, with such modifications as may be agreed to by the Parties and approved by the Court, if

11  appropriate, without further notice to the Class.

12      18.    If the Settlement is not approved or consummated for any reason whatsoever, the

13  Settlement and all proceedings had in connection therewith shall be without prejudice to the rights of

14  the Parties in all of the Actions and all of the actions will return to the status quo ante as provided in

15  this Order and in the Settlement Agreement.

16  **IT IS SO ORDERED.**

17

18  DATED: _March 20, 2008_          THE HONORABLE ROBERT B. FREEDMAN

19                                    JUDGE OF THE SUPERIOR COURT

20

21

22

23

24

25

26

27

28

# EXHIBIT E

SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ALAMEDA
*SADOWSKI V. GENERAL MOTORS CORP.*, CASE NO. HG03091369

## If you have ever owned or leased
## any of the General Motors vehicles listed on pages 2-3,
## please read this notice carefully, as it affects your legal rights.

*The California Superior Court for Alameda County authorized this notice*
*This is not a solicitation from a lawyer*

*The purpose of this notice is to provide information about a class action settlement and to inform people*
*covered by the proposed Settlement of their rights and options*

- There is a proposed class action Settlement involving the GM vehicles listed in paragraph 4. These vehicles were factory-equipped with Dex-Cool. Dex-Cool is an engine coolant designed to protect vehicles' engine and cooling systems.

- You are included in this proposed Settlement if you own or lease or previously owned or leased any of these vehicles and made repairs related to the use of Dex-Cool as outlined in paragraph 4 of this Notice.

- Repairs involving intake manifold gasket failures, engine coolant sealing issues, and sludge (a rust-like material) are covered by this proposed Settlement. These repairs would likely involve parts like the intake manifold and/or manifold gaskets, throttle body gaskets, radiator cap, heater core, water pump and other parts of the cooling system. See paragraph 4 for a complete description of the specific types of repairs covered for each vehicle type.

- The Court in charge of this case still has to decide whether to give final approval to the proposed Settlement. Valid claims will be paid if the proposed Settlement is approved.

- The types of repairs covered in the proposed Settlement, how to file a claim and your legal rights to participate or exclude yourself are outlined in this Notice. Please read it carefully.

| SUMMARY OF CLASS MEMBERS' RIGHTS AND OPTIONS UNDER THE PROPOSED SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM | The only way to get a payment. Submit your claim online or by mail by October 27, 2008 |
| EXCLUDE YOURSELF | Get no payment. This is the only option that allows you to be part of any other lawsuit concerning the issues being settled now |
| COMMENT ON THE PROPOSED SETTLEMENT | Write to the Court about why you support or oppose the proposed Settlement |
| GO TO A HEARING | Ask to speak to the Court about the proposed Settlement |
| DO NOTHING | Get no payment. Be barred from bringing or being part of any other lawsuit concerning the issues being settled now |

QUESTIONS? VISIT WWW.DEXCOOLSETTLEMENT.COM OR CALL TOLL-FREE 1 (866) 245-4291

1.    THE LITIGATION: A number of lawsuits were filed as class actions against GM in state and federal courts across the United States involving "Dex- Cool" extended-life engine coolant  Among other things, the lawsuits allege that (i) Dex-Cool in the vehicles listed below caused problems with the vehicles' engines or cooling systems, and (ii) that certain engine components, such as the nylon/silicone lower intake manifold gaskets equipped in certain vehicles, were defective

2    GM'S POSITION: GM denies all allegations of wrongdoing and denies liability under any claim asserted in the lawsuits  GM argued that Dex-Cool protected engines for a longer period than traditional coolants, caused less wear on certain engine parts than traditional coolants, and provided environmental benefits  GM further argued that alleged problems with the vehicles' engines or cooling systems were caused by owners not following the maintenance instructions for their vehicles or other factors

3.    GM'S AGREEMENT TO SETTLE: GM has agreed to a class action settlement of the lawsuits  GM will reimburse class members up to a specified amount for certain repair costs they paid during the first seven years or 150,000 miles of vehicle ownership or lease, whichever is earlier

This notice is to inform class members of the existing lawsuits, the major terms of the proposed Settlement, and class members' rights and options  This proposed Settlement will not become effective unless it is approved by the Court as described below

4    CLASS COVERED BY THE PROPOSED SETTLEMENT  You are included in the class (i) if you are a United States resident, (ii) if you own or lease, or previously owned or leased, any of the vehicles listed below, for personal, family, or household use (as opposed to commercial or business use), and (iii) if the vehicle was not purchased or leased in the State of Missouri, and

(a) The vehicle has been in service for over seven years since the date the original buyer or lessee took delivery of the vehicle, <u>and</u>

(b) As of the date of this Notice (May 30, 2008), you have not had to pay for any Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle,

<u>OR</u>

(c) Regardless of how long the vehicle has been in service, you paid out-of-pocket for a Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle

GROUP A VEHICLES

Model years 1995-2003

Equipped with 3.1-liter or 3.4-liter V6 engine, manufactured before April 10, 2003 with a nylon/silicone lower intake manifold gasket.

| Buick | Century, Rendezvous |
|---|---|
| Chevrolet | Impala, Lumina, Malibu, Monte Carlo, Venture |
| Oldsmobile | Alero, Cutlass, Silhouette |
| Pontiac | Aztek, Grand Am, Grand Prix, Montana, Trans Sport |

Note   Some of these vehicles may have been offered for sale with an engine other than a 3 1-liter or 3 4 -liter V6 engine   Any of the above models sold with an engine other than a 3 1-liter or 3 4 -liter V6 engine are not included and are not eligible to make a claim

Group A Covered Repairs:  Replacement of failed nylon/silicone lower intake manifold gasket.

## GROUP B VEHICLES

### Model years 1995-2004

### Equipped with 3.8-liter V6 engine (internal GM engine designation RPO L36).

| Buick | LeSabre, Park Avenue, Regal, Riviera |
| Chevrolet | Camaro, Impala, Lumina, Monte Carlo |
| Oldsmobile | Eighty-Eight, Intrigue, LSS, Ninety-Eight |
| Pontiac | Bonneville, Firebird, Grand Prix |

Note   Some of these vehicles may have been offered for sale with an engine other than a 3 8-liter V6 engine RPO L36   Any of the above models sold with an engine other than a 3 8-liter V6 engine RPO L36 are not included and are not eligible to make a claim

Group B Covered Repairs:  Repairs necessitated by engine coolant sealing issues, including replacement of throttle body gasket, upper intake manifold gasket, lower intake manifold gasket, or intake manifold.

## GROUP C VEHICLES

### Model years 1995-2000

### Equipped with 4.3-liter V6 engine

| Chevrolet | Blazer, Chevrolet S-10 |
| GMC | Envoy, Jimmy, S-15 |
| Oldsmobile | Bravada |

Group C Covered Repairs:  Repairs necessitated by cooling-system sludge, including cooling-system flush, heater core repairs, water pump repairs, or radiator cap replacement   "Sludge" refers to a rust-like material that can form in the cooling system and whose formation is related to use of Dex-Cool.

If you own one of the models listed above, but (i) with a different engine size than what is listed, or (ii) the vehicle was manufactured using a lower intake manifold gasket other than a nylon/silicone gasket, or (iii) the vehicle is a Group A vehicle manufactured after April 9, 2003, then you are not covered by the settlement and are not eligible to file a claim

People who purchased or leased their GM vehicle in Missouri are not included in this proposed Settlement They are instead included in a separate proposed Settlement that is being submitted for approval to a Missouri state court  The settlement benefits of the proposed Missouri settlement are the same as the settlement benefits of the proposed Settlement described in this notice

Also excluded from the class are GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone employed by counsel for any of the named plaintiffs in the lawsuits covered by this proposed Settlement, any judge to whom any of the lawsuits is assigned, as well as his or her immediate family, and all persons who timely and validly request exclusion from the class  (The procedure for exclusion is described below )

The Court has appointed the following lawyers as Co-Lead Counsel to represent the class for purposes of the proposed Settlement

> Eric H Gibbs
> Girard Gibbs LLP
> 601 California Street, Suite 1400
> San Francisco, California 94108

> P John Brady
> Shughart Thomson & Kilroy P C
> Twelve Wyandotte Plaza
> 120 West 12th Street
> Kansas City, Missouri 64105

5.    SETTLEMENT BENEFITS: Under the proposed Settlement, GM will send cash reimbursements to class members who paid for Covered Repairs performed within seven years or 150,000 miles (whichever is earlier) after the original owner or lessee took delivery of the vehicle, and who submit timely and valid claims

The amount of reimbursement for which you are eligible depends on (i) when the Covered Repair was performed and (ii) the amount you actually paid, as described below

a   **For a Covered Repair made within five years after initial vehicle delivery**
    You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $400, if you were not previously fully reimbursed

    However, if you can document that the Covered Repair required you to pay over $1,500 to address an internal coolant leak, your reimbursement level may be different  If so, you can elect to request reimbursement of 40% of the amount you paid out-of-pocket up to $800, if you were not previously fully reimbursed

    (An internal coolant leak means that coolant leaked from one vehicle component into another component  Whereas an external coolant leak means that coolant leaked from inside a vehicle component to the exterior of the vehicle )

b   **For a Covered Repair made in the *sixth year* after initial vehicle delivery**
    You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $100, if you were not previously fully reimbursed

c   **For a Covered Repair made in the *seventh year* after initial vehicle delivery:**
    You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $50, if you were not previously fully reimbursed

If you paid for more than one Covered Repair (whether on the same vehicle or on different vehicles included in the proposed Settlement), you may make a separate reimbursement claim for each one

6.    HOW TO MAKE A CLAIM: To make a claim for a reimbursement under the proposed Settlement, you must submit the following documents, either online or by mail. If you do not submit each of the following documents, and fully complete the claim statement, your claim may be denied.

(a) **Completed Claim Statement.** A Claim Statement form is enclosed with this Notice. If you need more forms, you can photocopy this one or download additional copies from the proposed Settlement Web site at www DexCoolSettlement com. You can also call the Claims Administrator toll-free at 1 (866) 245-4291 to have more forms mailed to you

(b) **Proof of repair payment.** You must provide documentation showing that you paid out-of-pocket for a Covered Repair, for which you were not fully reimbursed. Please read the instructions on the Claim Statement form for more details

(c) **Proof of ownership or lease.** You must provide documentation showing that you owned or leased the vehicle at the time of the Covered Repair. Please read the instructions on the Claim Statement form for more details

(d) If you wish to submit your claim by mail, you must mail the above documents, postmarked no later than October 27, 2008, to the Claims Administrator at the address listed on the Claim Statement form

(e) If you wish to submit your claim online, please go to www DexCoolSettlement com, fill out the online Claim Statement form, and attach scanned versions of your required documentation before clicking the button to submit your claim. Online claims must be submitted no later than midnight on October 27, 2008.

(f) If you wish to make reimbursement claims for two or more Covered Repairs, you must submit a separate set of documents (Claim Statement, proof of repair payment, and proof of ownership or lease) for each claim. You may not combine claims for more than one Covered Repair in a single Claim Statement

(g) The Claims Administrator has the right to request additional documentation before the Claim is approved and paid. Your claim may be denied if the Claims Administrator determines that it is invalid

7.    ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS: Since this litigation started in 2003, over 20 law firms have devoted more than 43,000 hours to prosecuting the various lawsuits across the country on behalf of class members purely on a contingent basis, and have received no compensation for their services or reimbursement of their expenses. As part of the proposed Settlement, subject to Court approval, plaintiffs' counsel will apply for attorneys' fees not to exceed $16.5 million and expenses not to exceed $1.55 million

Application will be made for incentive awards not to exceed a total amount of $140,000 for the named plaintiffs in the lawsuits. There are more than 100 named plaintiffs in the lawsuits. This is to recognize their initiative and effort in pursuing the matter on behalf of other vehicle owners and lessees. Any amounts approved by the Court will be paid by GM separately from and without reducing the reimbursement payments it makes to class members under the proposed Settlement

8.    RELEASE OF CLAIMS IF COURT APPROVES THE PROPOSED SETTLEMENT: If the Court approves the proposed Settlement, it will enter a judgment that will dismiss the litigation with prejudice as to all class members. It will release all claims they may have based on any expenses they incurred because of a Covered Repair during the first seven years or 150,000 miles (whichever is earlier) their Group A, Group B, or Group C vehicle was in service

This means that class members will be forever barred from bringing, continuing, or being part of any other lawsuit against GM and its personnel, representatives, and insurers, or GM's related companies and their personnel, representatives, and insurers, concerning such expenses. If you fall within the class definition and

do not want to be barred from bringing, continuing, or being part of such a lawsuit, you must exclude yourself from the class and proposed Settlement here

The release applicable to the Class if the settlement is approved provides as follows  In consideration of the benefits described above, the Representative Plaintiffs promise, covenant and agree, and each Class Member and the Class shall be deemed to have promised, covenanted and agreed, that, upon the Effective Date of Settlement, the Representative Plaintiffs and the Class Members, including their affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and/or shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers, and anyone acting on their behalf, by operation of the Judgment, shall have hereby released, waived and discharged GM, including its subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state statutory or common law federal statutory or common law, or foreign statutory or common law, to the fullest extent permitted by law, including, but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such claims were or could have been raised or asserted in the Actions or the Amico/Bertino Actions, to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense  Claims for personal injury, and claims for lower intake manifold gasket replacements in 4 3-liter V6 engines for Class Members who have not submitted a Claim and received a payment under the settlement, are not released  The Parties recognize and agree that this is a general release  Representative Plaintiffs and the Class Members expressly waive and relinquish, and shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United States, any law of any State or the District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor "

9.    YOUR OPTIONS AND DEADLINES:  If you are a class member, you have the following options

(a) **Participate in the proposed Settlement by making a claim**    To participate in the proposed Settlement, you must submit a claim as described above  You do not need to do anything else to participate  If you submit a valid claim on time, the Court approves the proposed Settlement, and the judgment becomes final, then a reimbursement check will be mailed to you

(b) **Request to be excluded**  If you wish to exclude yourself from the class, you must submit a letter or postcard, such that it is received on or before August 13, 2008, stating

  • Your name, address, telephone number,

  • The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased, and

QUESTIONS? VISIT WWW DLXCOOLSETTLEMENT COM OR CALL TOLL-FREE 1 (866) 245-4291

- That you wish to be excluded from the class and proposed Settlement in the lawsuit *Sadowski v General Motors Corp*, Case No HG03091369

You must send your exclusion request to the Claims Administrator, addressed as follows  Dex Cool Litigation 2, c/o The Garden City Group, Inc., P.O. Box 9239, Dublin, OH 43017-4639   If you submit a valid exclusion request on time, you cannot obtain a reimbursement payment under the proposed Settlement  You will not be bound by the final judgment, and you will not be barred from bringing, continuing, or being part of another lawsuit concerning expenses you incurred because of a Covered Repair

If you do not properly exclude yourself, all of your claims based on such expenses will be released, and you will be barred from bringing, continuing, or being part of any such lawsuit. You will be barred even if you do not submit a claim under this proposed Settlement  In other words, if you do nothing at all, your claims will be released, and you will receive nothing under the proposed Settlement

(c) **Object or comment**  If you are a class member and do not exclude yourself, you may object to or comment on all or part of the proposed Settlement  This includes plaintiffs' counsel's request for attorneys' fees, expenses, and incentive awards for the named plaintiffs  Objecting is not the same as excluding yourself  If you object and the proposed Settlement is approved, you will still be bound by the final judgment and your claims will be released

You must submit your objections or comments in writing as follows

- On the first page, please include a prominent reference to *Sadowski v General Motors Corp*, Case No HG03091369  Your objections or comments must include

  - Your full name, address, and telephone number,

  - The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased, along with proof of a Covered Repair,

  - Your signature, and

  - Any supporting papers or briefs on which your objections or comments are based

If you also wish to speak at the fairness hearing (described below), you must also state in your objections or comments that you intend to appear and speak at the hearing  If you do not include this statement, you will not be entitled to speak at the hearing

You must deliver your objections or comments to the Court by filing them in person at any location of the Alameda County Superior Court that includes a facility for civil filings or by mailing them to Clerk of the Court at the address listed below, with copies to Co-Lead Counsel for the class and GM's counsel  They must be received no later than **August 13, 2008**  The mailing addresses for the Clerk of the Court, Co-Lead Counsel, and GM's counsel are as follows

| Clerk of the Court | Co-Lead Counsel: | Counsel for GM |
|---|---|---|
| Rene C Davidson Alameda County Courthouse 1225 Fallon Street Oakland, California 94612 | Eric H Gibbs Girard Gibbs LLP 601 California Street, 14th Floor San Francisco, California 94108 | Robert B Ellis Kirkland & Ellis LLP 200 East Randolph Drive Chicago, Illinois 60601 |

If you submit an objection and wish to preserve your appellate rights, you must appear in person, through your counsel or as otherwise permitted by the Court, at the Fairness Hearing. If you do not wish to appear in Court then you must state so in your objection.

If you do not raise your objections according to the above procedure, you will waive all objections and have no right to appeal any aspect of the proposed Settlement. If you raise an objection according to the above procedure and fail to appear, you will have no right to appeal any aspect of the proposed Settlement. This includes appealing (i) an order approving the Settlement as fair, reasonable and adequate, (ii) entry of Judgment that dismisses this action with prejudice and releases the claims of class members as provided for in the Settlement, (iii) an award of incentive payments to the Representative Plaintiffs, or (iv) an award of reasonable attorneys fees and costs to Class Counsel.

You can enter an appearance in the lawsuit through your own legal counsel. If you do, you will be responsible for your own attorneys' fees and costs.

10.     FAIRNESS HEARING:  On August 29, 2008 at 11:00 a.m., a hearing will be held before the Honorable Robert B. Freedman, in Department 20 of the California Superior Court for Alameda County, County Administration Building, 1221 Oak Street, Oakland, California 94612. The purpose of the hearing is for the Court to decide whether the proposed Settlement is fair, reasonable, and adequate and should be approved. The Court will also decide whether a final judgment should be entered dismissing this lawsuit, and the amount of attorneys' fees and expenses and incentive awards to class representatives. This hearing may be postponed without further notice to the class.

11.     ADDITIONAL INFORMATION:  You can get more information at the proposed Settlement Web site at www.DexCoolSettlement.com.    You can also view the Settlement Agreement and download a Claim Statement form on the Web site.

You can get more information by calling the Claims Administrator toll-free at 1 (866) 245-4291, sending an e-mail to info@dexcoolsettlement.com, or by sending a written inquiry to Co-Lead Counsel at the address in Section 9, above. In addition, you can view the Court's docket at www.alameda.courts.ca.gov/domainweb and inputting case number HG03093843 or JCCP004495. Otherwise, please do not direct any inquiries to the Court.

DATED  MARCH 20, 2008                         BY ORDER OF THE SUPERIOR COURT
                                              OF THE STATE OF CALIFORNIA
                                              FOR THE COUNTY OF ALAMEDA

# EXHIBIT F

CIRCUIT COURT OF JACKSON COUNTY, MISSOURI, AT INDEPENDENCE
*GUTZLER V. GENERAL MOTORS CORP.*, CASE NO. 03CV208786

# If you ever purchased or leased in Missouri any of the General Motors vehicles listed on pages 2-3, please read this notice carefully, as it affects your legal rights.

*The Circuit Court of Jackson County authorized this notice.*
*This is not a solicitation from a lawyer.*

*The purpose of this notice is to provide information about a class action settlement and to inform people covered by the proposed Settlement of their rights and options:*

- There is a proposed class action Settlement involving the GM vehicles listed in paragraph 4. These vehicles were factory-equipped with Dex-Cool. Dex-Cool is an engine coolant designed to protect vehicles' engine and cooling systems.

- You are included in this proposed Settlement if you purchased or leased any of these vehicles and made repairs related to the use of Dex-Cool as outlined in paragraph 4 of this Notice.

- Repairs involving intake manifold gasket failures, engine coolant sealing issues, and sludge (a rust-like material) are covered by this proposed Settlement. These repairs would likely involve parts like the intake manifold and/or manifold gaskets, throttle body gaskets, radiator cap, heater core, water pump and other parts of the cooling system. See paragraph 4 for a complete description of the specific types of repairs covered for each vehicle type.

- The Court in charge of this case still has to decide whether to give final approval to the proposed Settlement. Valid claims will be paid if the proposed Settlement is approved.

- The types of repairs covered in the proposed Settlement, how to file a claim and your legal rights to participate or exclude yourself are outlined in this Notice. Please read it carefully.

- You may have previously received notice of a class action involving GM vehicles owned or leased in Missouri that were factory-equipped with Dex-Cool. That class is being decertified by the Court and can no longer provide you with any benefits or affect your rights. Instead, this Notice describes the current proposed class action settlement that may affect your legal rights.

| SUMMARY OF CLASS MEMBERS' RIGHTS AND OPTIONS UNDER THE PROPOSED SETTLEMENT | |
|---|---|
| **SUBMIT A CLAIM** | The only way to get a payment. Submit your claim online or by mail by **October 27, 2008.** |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to be part of any other lawsuit concerning the issues being settled now. |
| **COMMENT ON THE PROPOSED SETTLEMENT** | Write to the Court about why you support or oppose the proposed Settlement. |
| **GO TO A HEARING** | Ask to speak to the Court about the proposed Settlement. |
| **DO NOTHING** | Get no payment. Be barred from bringing or being part of any other lawsuit concerning the issues being settled now. |

QUESTIONS? VISIT WWW.DEXCOOLSETTLEMENT.COM/MISSOURI OR CALL TOLL-FREE 1 (866) 245-4291

1.    THE LITIGATION:  A lawsuit was filed as a class action against GM in Missouri involving "Dex-Cool" extended-life engine coolant.  Among other things, the lawsuits allege that (i) Dex-Cool in the vehicles listed below caused problems with the vehicles' engines or cooling systems, and (ii) that certain engine components, such as the nylon/silicone lower intake manifold gaskets equipped in certain vehicles, were defective.

2.    GM's POSITION:  GM denies all allegations of wrongdoing and denies liability under any claim asserted in the lawsuit.  GM argued that Dex-Cool protected engines for a longer period than traditional coolants, caused less wear on certain engine parts than traditional coolants, and provided environmental benefits.  GM further argued that alleged problems with the vehicles' engines or cooling systems were caused by owners not following the maintenance instructions for their vehicles or other factors.

3.    GM's AGREEMENT TO SETTLE:  GM has agreed to a class action settlement of the lawsuit.  GM will reimburse class members up to a specified amount for certain repair costs they paid during the first seven years or 150,000 miles of vehicle ownership or lease, whichever is earlier.

This notice is to inform class members of the lawsuit, the major terms of the proposed Settlement, and class members' rights and options.  This proposed Settlement will not become effective unless it is approved by the Court as described below.

4.    CLASS COVERED BY THE PROPOSED SETTLEMENT:  The class previously defined by the Court and contained in the notice you may have previously received is being decertified as part of this settlement agreement. You are included in the new settlement class if you purchased or leased in the State of Missouri any of the vehicles listed below, for personal, family, or household use (as opposed to commercial or business use), and:

(a.) The vehicle has been in service for over seven years since the date the original buyer or lessee took delivery of the vehicle, and

(b.) As of the date of this Notice (May 30, 2008), you have not had to pay for any Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle;

### OR

(c.) Regardless of how long the vehicle has been in service, you paid out-of-pocket for a Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle.

### GROUP A VEHICLES

#### Model years 1995-2003

**Equipped with 3.1-liter or 3.4-liter V6 engine, manufactured before April 10, 2003 with a nylon/silicone lower intake manifold gasket.**

| Buick | Century, Rendezvous, Regal, Skylark |
|---|---|
| Chevrolet | Impala, Lumina, Malibu, Monte Carlo, Venture, Corsica, Beretta, Lumina APV |
| Oldsmobile | Alero, Cutlass (Supreme and Ciera), Silhouette |
| Pontiac | Aztek, Grand Am, Grand Prix, Montana, Trans Sport |

Note:  Some of these vehicles may have been offered for sale with an engine other than a 3.1-liter or 3.4-liter V6 engine.  Any of the above models sold with an engine other than a 3.1-liter or 3.4-liter V6 engine are not included and are not eligible to make a claim.

<u>Group A Covered Repairs</u>:  Replacement of failed nylon/silicone lower intake manifold gasket.

## GROUP B VEHICLES

### Model years 1995-2004

**Equipped with 3.8-liter V6 engine (internal GM engine designation RPO L36).**

| Buick | LeSabre, Park Avenue, Regal, Riviera |
|-------|--------------------------------------|
| Chevrolet | Camaro, Impala, Lumina, Monte Carlo |
| Oldsmobile | Eighty-Eight, Intrigue, LSS, Ninety-Eight |
| Pontiac | Bonneville, Firebird, Grand Prix |

Note:  Some of these vehicles may have been offered for sale with an engine other than a 3.8-liter V6 engine RPO L36.  Any of the above models sold with an engine other than a 3.8-liter V6 engine RPO L36 are not included and are not eligible to make a claim.

<u>Group B Covered Repairs</u>:  Repairs necessitated by engine coolant sealing issues,
including replacement of throttle body gasket, upper intake manifold gasket,
lower intake manifold gasket, or intake manifold.

## GROUP C VEHICLES

### Model years 1995-2000

**Equipped with 4.3-liter V6 engine**

| Chevrolet | Blazer, Chevrolet S-10 |
|-----------|------------------------|
| GMC | Envoy, Jimmy, S-15 |
| Oldsmobile | Bravada |

<u>Group C Covered Repairs</u>:  Repairs necessitated by cooling-system sludge, including
cooling-system flush, heater core repairs, water pump repairs, or radiator cap replacement.
"Sludge" refers to a rust-like material that can form in the
cooling system and whose formation is related to use of Dex-Cool.

If you own one of the models listed above, but (i) with a different engine size than what is listed, or (ii) the vehicle was manufactured using a lower intake manifold gasket other than a nylon/silicone gasket, or (iii) the vehicle is a Group A vehicle manufactured after April 9, 2003, then you are not covered by the settlement and are not eligible to file a claim.

People who purchased or leased their GM vehicle in a state other than Missouri are not included in this proposed Settlement.  They are instead included in a separate proposed Settlement that is being submitted for approval to a California state court.  The settlement benefits of the proposed settlement in states other than Missouri are the same as the settlement benefits of the proposed Settlement described in this notice.

Also excluded from the class are GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; the judge to whom the lawsuit is assigned, as well as his or her immediate family; and all persons who timely and validly request exclusion from the class.  (The procedure for exclusion is described below.)

QUESTIONS? VISIT WWW.DEXCOOLSETTLEMENT.COM/MISSOURI OR CALL TOLL-FREE 1 (866) 245-4291

- 3 -

The Court has appointed the following lawyers as Co-Lead Counsel to represent the class for purposes of the proposed Settlement:

Eric H. Gibbs
Girard Gibbs LLP
601 California Street, Suite 1400
San Francisco, California 94108

P. John Brady
Shughart Thomson & Kilroy P.C.
Twelve Wyandotte Plaza
120 West 12th Street, Suite 1700
Kansas City, Missouri 64105

5.    SETTLEMENT BENEFITS:  Under the proposed Settlement, GM will send cash reimbursements to class members who paid for Covered Repairs performed within seven years or 150,000 miles (whichever is earlier) after the original owner or lessee took delivery of the vehicle, and who submit timely and valid claims.
The amount of reimbursement for which you are eligible depends on (i) when the Covered Repair was performed and (ii) the amount you actually paid, as described below:

a.   **For a Covered Repair made within five years after initial vehicle delivery:**
You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $400, if you were not previously fully reimbursed.

However, if you can document that the Covered Repair required you to pay over $1,500 to address an internal coolant leak, your reimbursement level may be different. If so, you can elect to request reimbursement of 40% of the amount you paid out-of-pocket up to $800, if you were not previously fully reimbursed.

(An internal coolant leak means that coolant leaked from one vehicle component into another component. Whereas an external coolant leak means that coolant leaked from inside a vehicle component to the exterior of the vehicle.)

b.   **For a Covered Repair made in the *sixth year* after initial vehicle delivery:**
You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $100, if you were not previously fully reimbursed.

c.   **For a Covered Repair made in the *seventh year* after initial vehicle delivery:**
You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $50, if you were not previously fully reimbursed.

If you paid for more than one Covered Repair (whether on the same vehicle or on different vehicles included in the proposed Settlement), you may make a separate reimbursement claim for each one.

6.    HOW TO MAKE A CLAIM:  To make a claim for a reimbursement under the proposed Settlement, you must submit the following documents, either online or by mail. If you do not submit each of the following documents, and fully complete the claim statement, your claim may be denied.

(a.)  **Completed Claim Statement.**  A Claim Statement form is enclosed with this Notice. If you need more forms, you can photocopy this one or download additional copies from the proposed Settlement Web site at www.DexCoolSettlement.com/Missouri.  You can also call the Claims Administrator toll-free at 1 (866) 245-4291 to have more forms mailed to you.

(b.)  **Proof of repair payment.**  You must provide documentation showing that you paid out-of-pocket for a Covered Repair, for which you were not fully reimbursed. Please read the instructions on the Claim Statement form for more details.

(c.)  **Proof of ownership or lease.**  You must provide documentation showing that you owned or leased the vehicle at the time of the Covered Repair. Please read the instructions on the Claim Statement form for more details.

(d.) If you wish to submit your claim by mail, you must mail the above documents, **postmarked no later than October 27, 2008**, to the Claims Administrator at the address listed on the Claim Statement form.

(e.) If you wish to submit your claim online, please go to www.DexCoolSettlement.com/Missouri, fill out the online Claim Statement form, and attach scanned versions of your required documentation before clicking the button to submit your claim. Online claims must be **submitted no later than midnight on October 27, 2008.**

(f.) If you wish to make reimbursement claims for two or more Covered Repairs, you must submit a separate set of documents (Claim Statement, proof of repair payment, and proof of ownership or lease) for each claim. You may not combine claims for more than one Covered Repair in a single Claim Statement.

(g.) The Claims Administrator has the right to request additional documentation before the Claim is approved and paid. Your claim may be denied if the Claims Administrator determines that it is invalid.

**7.    ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS:** Since this litigation started in 2003, over 20 law firms have devoted more than 43,000 hours to prosecuting various lawsuits across the country on behalf of class members purely on a contingent basis, and have received no compensation for their services or reimbursement of their expenses. As part of the proposed Settlement, subject to Court approval, plaintiffs' counsel will apply for attorneys' fees not to exceed $7.5 million and expenses not to exceed $1.25 million.

Application will be made for incentive awards not to exceed a total amount of $60,000 for the named plaintiffs in the lawsuit. There are three named plaintiffs in the lawsuit. This is to recognize their initiative and effort in pursuing the matter on behalf of other vehicle owners and lessees. Any amounts approved by the Court will be paid by GM separately from and without reducing the reimbursement payments it makes to class members under the proposed Settlement.

**8.    RELEASE OF CLAIMS IF COURT APPROVES THE PROPOSED SETTLEMENT:** If the Court approves the proposed Settlement, it will enter a judgment that will dismiss the litigation with prejudice as to all class members. It will release all claims they may have based on any expenses they incurred because of a Covered Repair during the first seven years or 150,000 miles (whichever is earlier) their Group A, Group B, or Group C vehicle was in service.

This means that class members will be forever barred from bringing, continuing, or being part of any other lawsuit against GM and its personnel, representatives, and insurers, or GM's related companies and their personnel, representatives, and insurers, concerning such expenses. If you fall within the class definition and do not want to be barred from bringing, continuing, or being part of such a lawsuit, you must exclude yourself from the class and proposed Settlement here.

The release applicable to the Class if the settlement is approved provides as follows: In consideration of the benefits described above, the Representative Plaintiffs promise, covenant and agree, and each Class Member and the Class shall be deemed to have promised, covenanted and agreed, that, upon the Effective Date of Settlement, the Representative Plaintiffs and the Class Members, including their affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and/or shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers, and anyone acting on their behalf, by operation of the Judgment, shall have hereby released, waived and discharged GM, including its subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state statutory or

common law federal statutory or common law, or foreign statutory or common law, to the fullest extent permitted by law, including, but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such claims were or could have been raised or asserted in the Action, to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense. Claims for personal injury are not released. The Parties recognize and agree that this is a general release. Representative Plaintiffs and the Class Members expressly waive and relinquish, and shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United States, any law of any State or the District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

9.    **YOUR OPTIONS AND DEADLINES:** If you are a class member, you have the following options:

(a.) **Participate in the proposed Settlement by making a claim.** To participate in the proposed Settlement, you must submit a claim as described above. You do not need to do anything else to participate. If you submit a valid claim on time, the Court approves the proposed Settlement, and the judgment becomes final, then a reimbursement check will be mailed to you.

(b.) **Request to be excluded.** If you wish to exclude yourself from the class, you must submit a letter or postcard, **such that it is received on or before August 13, 2008,** stating:

- Your name, address, telephone number;
- The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased; and
- That you wish to be excluded from the class and proposed Settlement in the lawsuit *Gutzler v. General Motors Corp.*, Case No. 03CV208786.

You must send your exclusion request to the Claims Administrator, addressed as follows: **Dex Cool Litigation, c/o The Garden City Group, Inc., P.O. Box 9239, Dublin, OH 43017-4639.** If you submit a valid exclusion request on time, you cannot obtain a reimbursement payment under the proposed Settlement. You will not be bound by the final judgment, and you will not be barred from bringing, continuing, or being part of another lawsuit concerning expenses you incurred because of a Covered Repair.

If you do not properly exclude yourself, all of your claims based on such expenses will be released, and you will be barred from bringing, continuing, or being part of any such lawsuit. You will be barred even if you do not submit a claim under this proposed Settlement. In other words, if you do nothing at all, your claims will be released, and you will receive nothing under the proposed Settlement.

(c.) **Object or comment.** If you are a class member and do not exclude yourself, you may object to or comment on all or part of the proposed Settlement. This includes plaintiffs' counsel's request for attorneys' fees, expenses, and incentive awards for the named plaintiffs. Objecting is not the same as excluding yourself. If you object and the proposed Settlement is approved, you will still be bound by the final judgment and your claims will be released.

You must submit your objections or comments in writing as follows:

- On the first page, please include a prominent reference to *Gutzler v. General Motors Corp.*, Case No. **03CV208786.** Your objections or comments must include:

  - Your full name, address, and telephone number;

  - The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased, along with proof of a Covered Repair;

  - Your signature; and

  - Any supporting papers or briefs on which your objections or comments are based.

If you also wish to speak at the fairness hearing (described below), you must also state in your objections or comments that you intend to appear and speak at the hearing. If you do not include this statement, you will not be entitled to speak at the hearing.

You must deliver your objections or comments to the Court by filing them in person at any location of the Jackson County Circuit Court that includes a facility for civil filings or by mailing them to Clerk of the Court at the address listed below, with copies to Co-Lead Counsel for the class and GM's counsel. **They must be received no later than August 13, 2008.** The mailing addresses for the Clerk of the Court, Co-Lead Counsel, and GM's counsel are as follows:

| Clerk of the Court | Co-Lead Counsel: | Counsel for GM: |
|---|---|---|
| Jackson County Courthouse | | |
| 308 West Kansas | P. John Brady | Robert B. Ellis |
| Independence, Missouri 64050 | Shughart Thomson & Kilroy, P.C. | Kirkland & Ellis LLP |
| | 120 West 12th Street, Suite 1700 | 200 East Randolph Drive |
| | Kansas City, Missouri 64105 | Chicago, Illinois 60601 |

If you submit an objection and wish to preserve your appellate rights, you must appear in person, through your counsel or as otherwise permitted by the Court, at the Fairness Hearing. If you do not wish to appear in Court then you must state so in your objection.

If you do not raise your objections according to the above procedure, you will waive all objections and have no right to appeal any aspect of the proposed Settlement. If you raise an objection according to the above procedure and fail to appear, you will have no right to appeal any aspect of the proposed Settlement. This includes appealing (i) an order approving the Settlement as fair, reasonable and adequate; (ii) entry of Judgment that dismisses this action with prejudice and releases the claims of class members as provided for in the Settlement; (iii) an award of incentive payments to the Representative Plaintiffs; or (iv) an award of reasonable attorneys fees and costs to Class Counsel.

You can enter an appearance in the lawsuit through your own legal counsel. If you do, you will be responsible for your own attorneys' fees and costs.

**10.    FAIRNESS HEARING:**  On September 5, 2008, a hearing will be held before the Honorable Michael Manners, in Division 2 of the Jackson County Circuit Court at Independence, 308 West Kansas, Independence, Missouri 64050.The purpose of the hearing is for the Court to decide whether the proposed Settlement is fair, reasonable, and adequate and should be approved. The Court will also decide whether a final judgment should be entered dismissing this lawsuit; and the amount of attorneys' fees and expenses and incentive awards to class representatives. This hearing may be postponed without further notice to the class.

**11.    ADDITIONAL INFORMATION:**  You can get more information at the proposed Settlement Web site at www.DexCoolSettlement.com/Missouri.  You can also view the Settlement Agreement and download a Claim Statement form on the Web site.

You can get more information by calling the Claims Administrator toll-free at **1 (866) 245-4291**; sending an e-mail to info@dexcoolsettlement.com; or by sending a written inquiry to Co-Lead Counsel at the address in paragraph 9, above.  In addition, you can view the Court's docket at http://www.16thcircuit.org/ and inputting case number **03CV208786**.  Otherwise, **please do not direct any inquiries to the Court.**

DATED: MARCH 28, 2008                    BY ORDER OF THE CIRCUIT COURT
                                         OF JACKSON COUNTY, MISSOURI

# EXHIBIT G

**ENDORSED**
**FILED**
ALAMEDA COUNTY

OCT 23 2008

Adalyn , Exec. Off./Clerk

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 1550(b)) | JUDICIAL COUNCIL COORDINATION<br>PROCEEDING NO. 4495 |
| **GENERAL MOTORS<br>DEX-COOL/GASKET CASES** | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA<br>NO. HG03093843 |
| Included actions | |
| Sadowski v  General Motors Corp. | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN JOAQUIN<br>NO. CV 025 770 |
| Bertino v  General Motors Corp | **JUDGMENT AND ORDER OF DISMISSAL<br>WITH PREJUDICE** |
| | The Honorable Robert B  Freedman |
| | Action filed.   April 29, 2003<br>Trial date     None set |

This matter came before the Court for hearing pursuant to the Order Granting Preliminary Approval Of Proposed Settlement, Provisionally Certifying Class, And Directing Dissemination Of Notice To Class, dated March 20, 2008 ("Notice Order"), on the application of the Parties for approval of the settlement set forth in the Settlement Agreement, dated March 19, 2008 ("Agreement")  Due and adequate notice having been given of the settlement set forth in the Agreement ("Settlement") as required by the Notice Order, and the Court having considered and reviewed all papers filed and proceedings had herein, including the timely objections to the proposed settlement submitted by class members, approximately 80 of which were submitted by individuals themselves and 5 by counsel on behalf of 6 individuals, as well as the responses filed by Plaintiffs and GM to the objections, and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that

1.      This Judgment incorporates by reference the definitions in the Agreement and Notice Order, and all defined terms used herein shall have the same meanings set forth in the Agreement and Notice Order

2      This Court has jurisdiction over the subject matter of the Sadowski Action, the Sadowski Parties, and all members of the settlement Class defined as follows·

> All Consumers in the United States of America, excepting those who purchased or leased their vehicles in the State of Missouri, who (i) own or lease, or who have owned or leased, a Covered Vehicle that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred a repair expense of the type included in the definition of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order
> Excluded from the Class are GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone employed by counsel for Representative Plaintiffs, any Judge to whom any of the Actions is assigned as well as his or her immediate family; any and all persons who timely and validly request exclusion from the Class pursuant to the notice disseminated in accordance with the Notice Order

3      This Court hereby finds that for settlement purposes, and for purposes of the Agreement and the Settlement, the Sadowski Action and the Class meet the requirements for the bringing and maintenance of a class action set forth in section 382 of the Code of Civil Procedure and section 1781 of the Civil Code

4      This Court hereby finds that the Agreement and Settlement are, in all respects, fair, reasonable, and adequate, and in the best interests of the Class; overrules the timely objections submitted, grants final approval of the Agreement and Settlement, and directs the Parties to perform the terms of the Agreement

1        5    This Court hereby dismisses the Sadowski Action with prejudice and without costs,

2    except as otherwise provided in the Agreement

3        6    Upon the Effective Date of the Settlement, the Representative Plaintiffs and the Class

4    Members, including their affiliates, subsidiaries, associates, general or limited partners or

5    partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their

6    respective present or former officers, directors, trustees, employees, agents, attorneys,

7    representatives and/or shareholders, affiliates, associates, general or limited partners or partnerships,

8    heirs, executors, administrators, predecessors, successors, assigns or insurers, and anyone acting on

9    their behalf, by operation of this Judgment, shall have hereby released, waived and discharged GM,

10    including its subsidiaries, affiliates, associates, general or limited partners or partnerships,

11    predecessors, successors, and/or assigns, including, without limitation, any of their respective

12    present or former officers, directors, trustees, employees, agents, attorneys, representatives and

13    shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors,

14    administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf,

15    individually and collectively, from liability for any and all claims, demands, debts, rights, causes of

16    action or liabilities whatsoever, including known and unknown claims, now existing or hereafter

17    arising, in law, equity or otherwise, arising under state statutory or common law federal statutory or

18    common law, or foreign statutory or common law, to the fullest extent permitted by law, including,

19    but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer

20    protection, consumer fraud, deceptive trade practices statutes, common law breach of contract

21    claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims

22    or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively,

23    representatively or in any other capacity, and whether or not such claims were or could have been

24    raised or asserted in the Actions or the Amico/Bertino Actions, to the extent any such claims are

25    based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions,

26    transactions, events, conduct, or matters arising from or related to any Repair Expense Claims for

27    personal injury, and claims for lower intake manifold gasket replacements in 4 3-liter V6 engines for

28    Class Members who have not submitted a Claim and received a payment under the settlement, are

1   not released  The Parties recognize and agree that this is a general release  Representative Plaintiffs

2   and the Class Members expressly waive and relinquish, and shall be deemed to have waived and

3   relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California

4   Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United

5   States, any law of any State or the District of Columbia, or any principle of common law that is

6   similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general

7   release does not extend to claims which the creditor does not know or suspect to exist in his or her

8   favor at the time of executing the release, which if known by him or her must have materially

9   affected his or her settlement with the debtor "

10        7     Upon the Effective Date of the Settlement, GM and its past or present officers,

11   directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions,

12   and assigns, shall be deemed to have, and by operation of this Judgment shall have, released,

13   waived, and discharged any and all claims or causes of action of any nature whatsoever, including

14   but not limited to any claim for violations of federal, state, or other law (whether in contract, tort, or

15   otherwise, including statutory, common law, property, and equitable claims), whether known or

16   unknown, that have been or could have been asserted against any Representative Plaintiff, counsel

17   for any Representative Plaintiff, or any Class Member, in the Actions or in any other complaint,

18   action, or litigation in any other court or forum arising from, based on, or related to the initiation,

19   prosecution, or resolution of the Actions to the extent any such claims are based upon, arise out of or

20   relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or

21   matters arising from or related to any Repair Expense.  The Parties recognize and agree that this is a

22   general release, and shall have expressly waived and relinquished, to the fullest extent permitted by

23   law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions,

24   rights, and benefits conferred by any law of the United States, any law of any State or the District of

25   Columbia, or any principle of common law that is similar, comparable, or equivalent to California

26   Civil Code section 1542, which states, "A general release does not extend to claims which the

27   creditor does not know or suspect to exist in his or her favor at the time of executing the release,

28   which if known by him or her must have materially affected his or her settlement with the debtor "

1    8    Under the circumstances, the notice of this Settlement provided to the Class Members

2  in accordance with the Notice Order was the best notice practicable of the proceedings and matters

3  set forth therein, including the proposed Settlement, to all persons entitled to such notice, and said

4  notice fully satisfied the requirements of due process and California law

5    9    Neither the Fee Application nor any order entered by this Court thereon shall in any

6  way disturb or affect this Judgment, and all such matters shall be considered separate from this

7  Judgment   The Court will not award more than (i) $140,000 in incentive payments to Representative

8  Plaintiffs; (ii) $16 5 million in attorneys' fees, and (iii) $1 55 million in documented costs.

9    10    Within forty-five (45) days after entry of this Judgment, Co-Lead Counsel shall, with

10  the agreement of GM, file a listing of each person who submitted a valid and timely request for

11  exclusion from the Class   The persons so identified shall neither share in the benefits of the

12  Settlement nor be bound by this Judgment   All persons who meet the Class definition and have not

13  submitted such an exclusion request shall be bound by this Judgment

14    11    Neither the Agreement nor the Settlement nor any act performed or document

15  executed pursuant to or in furtherance of the Agreement or the Settlement (a) is or may be deemed to

16  be or may be used as an admission of, or evidence of, the validity of any claim asserted against GM

17  in the Actions, or of any wrongdoing or liability of GM, or of an admission by General Motors that

18  the claims that were the subject of this action were appropriate for class certification for purposes of

19  trial or for any other purpose other than for purposes of this Settlement Agreement, or (b) is or may

20  be deemed to be or may be used as an admission of, or evidence of, any fault or omission of GM in

21  any civil, criminal, or administrative proceeding in any court, administrative agency, or other

22  tribunal, or (c) is or may be deemed to interfere with, prohibit or bar a Class Member from

23  cooperating with or assisting an extended commercial warranty provider or other third party to bring

24  subrogation claims against GM related to Covered Repairs   GM may file the Agreement, this

25  Judgment, or both in any other action that may be brought against it in order to support a defense or

26  counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement,

27  judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or

28  counterclaim

12      Consistent with the express terms of the Settlement Agreement, subrogation claims are not being released as part of this Judgment  The rights of extended commercial warranty providers or other third parties to bring subrogation claims against GM related to Covered Repairs in a separate action are not barred by the Settlement

13      Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction, pursuant to California Rule of Court 3 769(h), over (a) implementation of the Settlement, (b) payment of Class Members' claims under the Settlement; (c) further proceedings, if necessary, on applications for attorneys' fees, expenses, or costs in connection with the Sadowski Action or the Settlement, and (d) the Parties for purposes of construing, enforcing, or administering the Agreement  If any Party fails to fulfill its obligations completely, the Court retains the power to issue such orders to enforce this Judgment and the Settlement as it deems appropriate after noticed hearing.

14      If the Settlement does not become effective in accordance with the terms of the Agreement, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement

15     A Compliance Hearing is hereby set for February 27, 2009 at 10 00 a m  in Department 20  If a final report and accounting satisfactory to the Court regarding the administration of the Settlement is submitted at least 5 court days prior to the Compliance Hearing, no appearances will be required

**IT IS SO ORDERED.**

DATED.  _Oct 23, 2016_

THE HONORABLE ROBERT B. FREEDMAN
JUDGE OF THE SUPERIOR COURT

JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE
JUDICIAL COUNSEL COORDINATED PROCEEDING 4405

# EXHIBIT H

IN THE CIRCUIT COURT OF JACKSON COUNTY, MISSOURI
AT INDEPENDENCE

MICHAEL GUTZLER, et al.,                    )
                                            )
      Plaintiffs,                      )
                                            )
v.                                          )        Case No.  03CV208786
                                            )
GENERAL MOTORS CORPORATION,                 )        Division 2
                                            )
      Defendant.                       )

## FINAL JUDGMENT AND ORDER OF DISMISSAL

This matter came before the Court for hearing pursuant to the Amended Order

Decertifying Class, Granting Preliminary Approval of Proposed Settlement, Provisionally

Certifying Settlement Class, And Directing Dissemination of Notice To Class, dated

April 14, 2008 ("Notice Order"), on the application of the Parties for approval of the

settlement set forth in the Settlement Agreement, dated March 26, 2008 ("Agreement").

Due and adequate notice having been given of the settlement set forth in the Agreement

("Settlement") as required by the Notice Order, and the Court having considered all

papers filed and proceedings had herein and otherwise being fully informed in the

premises and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED

AND DECREED that:

1.    This Judgment incorporates by reference the definitions in the Agreement

and Notice Order, and all defined terms used herein shall have the same meanings set

forth in the Agreement and Notice Order.

2369008.01

2.      This Court hereby decertifies the class defined in the Court's Order dated

January 9, 2006.

3.      This Court has jurisdiction over the subject matter of the Action, the

Parties, and all members of the settlement Class defined as follows:

> All Consumers who purchased or leased a Covered Vehicle in the State of
> Missouri (i) that has been in service in excess of seven years, measured from the
> Date of Initial Vehicle Delivery, at the time of the first date on which notice of the
> Settlement is disseminated and who, at the time of the notice, had not incurred a
> repair expense of the type included in the definition of Covered Repair, or (ii)
> who incurred an expense for a Covered Repair before the first date on which
> notice of the Settlement is disseminated to the Class in accordance with the
> Notice Order.   Excluded from the Class are GM; any affiliate, parent, or
> subsidiary of GM; any entity in which GM has a controlling interest; any officer,
> director, or employee of GM; any successor or assign of GM; and the Judge to
> whom the Action is assigned as well as his or her immediate family.

4.  This Court hereby finds that for settlement purposes, and for purposes of

the Agreement and the Settlement, the Action and the Class meet the requirements for

the bringing and maintenance of a class action set forth in Rule 52.08.

5.  This Court hereby finds that the Agreement and Settlement are, in all

respects, fair, reasonable, and adequate, and in the best interests of the Class; grants

final approval of the Agreement and Settlement; and directs the Parties to perform the

terms of the Agreement.

6.  This Court hereby dismisses the Action with prejudice and without costs,

except as otherwise provided in the Agreement.

7.  Upon the Effective Date of the Settlement, the Representative Plaintiffs and

the Class Members, including their affiliates, subsidiaries, associates, general or

limited partners or partnerships, predecessors, successors, and/or assigns, including,

without limitation, any of their respective present or former officers, directors,

trustees, employees, agents, attorneys, representatives and/or shareholders, affiliates,

associates, general or limited partners or partnerships, heirs, executors, administrators,

predecessors, successors, assigns or insurers, and anyone acting on their behalf, by
operation of the Judgment, shall have hereby released, waived and discharged GM,
including its subsidiaries, affiliates, associates, general or limited partners or
partnerships, predecessors, successors, and/or assigns, including, without limitation,
any of their respective present or former officers, directors, trustees, employees,
agents, attorneys, representatives and shareholders, affiliates, associates, general or
limited partners or partnerships, heirs, executors, administrators, predecessors,
successors, assigns or insurers and anyone acting on their behalf, individually and
collectively, from liability for any and all claims, demands, debts, rights, causes of
action or liabilities whatsoever, including known and unknown claims, now existing
or hereafter arising, in law, equity or otherwise, arising under state statutory or
common law federal statutory or common law, or foreign statutory or common law, to
the fullest extent permitted by law, including, but not limited to, federal or state
antitrust claims, RICO claims, claims arising under state consumer protection,
consumer fraud, deceptive trade practices statutes, common law breach of contract
claims, statutory or common law fraud or misrepresentation claims, breach of
fiduciary duty claims or unjust enrichment claims and whether possessed or asserted
directly, indirectly, derivatively, representatively or in any other capacity, and
whether or not such claims were or could have been raised or asserted in the Action,
to the extent any such claims are based upon, arise out of or relate to, in whole or in
part, any of the allegations, acts, omissions, transactions, events, conduct, or matters
arising from or related to any Repair Expense. Claims for personal injury are not
released. The Parties recognize and agree that this is a general release. Representative
Plaintiffs and the Class Members expressly waive and relinquish, and shall be deemed
to have waived and relinquished, to the fullest extent permitted by law, the provisions,
rights, and benefits of California Civil Code section 1542 and the provisions, rights,
and benefits conferred by any law of the United States, any law of any State or the

3

District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."

   7. Upon the Effective Date of the Settlement, GM and its past or present officers, directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns, shall be deemed to have, and by operation of the Judgment shall have, released, waived, and discharged any and all claims or causes of action of any nature whatsoever, including but not limited to any claim for violations of federal, state, or other law (whether in contract, tort, or otherwise, including statutory, common law, property, and equitable claims), whether known or unknown, that have been or could have been asserted against any Representative Plaintiff, counsel for any Representative Plaintiff, or any Class Member, in the Action or in any other complaint, action, or litigation in any other court or forum arising from, based on, or related to the initiation, prosecution, or resolution of the Action to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense. The Parties recognize and agree that this is a general release, and shall have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United States, any law of any State or the District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the

4

debtor.".

8.   Under the circumstances, the notice of this Settlement provided to the Class Members in accordance with the Notice Order was the best notice practicable of the proceedings and matters set forth therein, including the proposed Settlement, to all persons entitled to such notice, and said notice fully satisfied the requirements of due process and Missouri law.

9.   Neither the Fee Application nor any order entered by this Court thereon shall in any way disturb or affect this Judgment, and all such matters shall be considered separate from this Judgment.   The Court will not award more than (i) $60,000 in incentive payments to Representative Plaintiffs; (ii) $7.25 million in attorneys' fees; and (iii) $1.25 million in documented costs.

10.  Within forty-five (45) days after entry of this Judgment, Co-Lead Counsel shall, with the agreement of GM, file a listing of each person who submitted a valid and timely request for exclusion from the Class.   The persons so identified shall neither share in the benefits of the Settlement nor be bound by this Judgment.   All persons who meet the Class definition and have not submitted such an exclusion request shall be bound by this Judgment.

11. Neither the Agreement nor the Settlement nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim asserted against GM in the Action, or of any wrongdoing or liability of GM, or of an admission by General Motors that the claims that were the subject of this action were appropriate for class certification for purposes of trial or for any other purpose other than for purposes of this Settlement Agreement; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of GM in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.   GM may file the Agreement, this Judgment,

5

or both in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12. Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over (a) implementation of the Settlement; (b) payment of Class Members' claims under the Settlement; (c) further proceedings, if necessary, on applications for attorneys' fees, expenses, or costs in connection with the Action or the Settlement; and (d) the Parties for purposes of construing, enforcing, or administering the Agreement. If any Party fails to fulfill its obligations completely, the Court retains the power to issue such orders to enforce this Judgment and the Settlement as it deems appropriate after noticed hearing.

13. If the Settlement does not become effective in accordance with the terms of the Agreement, then this Judgment shall be rendered null and void to the extent provided by and in accordance with the Agreement and shall be vacated and, in such event, all orders entered and releases delivered in connection herewith shall be null and void to the extent provided by and in accordance with the Agreement.

**IT IS SO ORDERED.**

DATED:___SEP - 5 2008___    _____

**THE HONORABLE MICHAEL MANNERS**
**JUDGE OF THE CIRCUIT COURT**

A TRUE COPY-ATTEST
COURT OF JACKSON COUNTY, MO
COURT ADMINISTRATOR'S OFFICE
DEPARTMENT OF CIVIL RECORDS

2369008.01

# EXHIBIT I

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                             :

In re                            :       Chapter 11 Case No.
                             :

MOTORS LIQUIDATION COMPANY, *et al.,*  :      09-50026 (REG)
      f/k/a General Motors Corp., *et al.*   :
                             :

             Debtors.        :       (Jointly Administered)
                             :
------------------------------------------------------------x

## STIPULATION AND ORDER BETWEEN THE DEBTORS AND THE HOLDERS OF UNLIQUIDATED DEX-COOL AND ANDERSON CLAIMS TO ALLOW CLASS PROOFS OF CLAIM FOR DEX-COOL AND ANDERSON CLASS CLAIMANTS

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11

cases (collectively, the "**Debtors**" or "**MLC**"), and the holders of Unliquidated Dex-Cool Claims

(as defined below), and the holders of Unliquidated Anderson Claims (as defined below), by and

through their respective undersigned counsel, hereby enter into this Stipulation and Agreed

Order (this "**Stipulation**") and stipulate as follows:

### RECITALS

A.       On June 1, 2009 (the "**Commencement Date**"), the Debtors commenced with this

Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States

Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code. No trustee or examiner has been appointed. On or about June 3,

2009, an Official Committee of Unsecured Creditors (the "**Committee**") was appointed in the

Chapter 11 Cases. The Chapter 11 Cases are being jointly administered pursuant to Rule

1015(b) of the Bankruptcy Rules.

B.        On September 16, 2009, the Court entered an order (the "**Bar Date Order**")

establishing November 30, 2009 at 5:00 p.m. (Eastern Time) (the "**General Bar Date**") as the

deadline for each person or entity (including without limitation, each individual, partnership,

joint venture, corporation, estate, or trust) to file a proof of claim (a "**Proof of Claim**") against

any Debtor to assert any claim (as defined in section 101(5) of the Bankruptcy Code) (a

"**Claim**") that arose prior to the Commencement Date.

C.        On April 29, 2003 certain consumers filed class actions against MLC in the 16th

Judicial Circuit Court (Jackson County) of the State of Missouri (the "**Gutzler Class Action**")

and in the Superior Court of the State of California for the County of Alameda (the "**Sadowski**

**Class Action**" and together with the Gutzler Class Action, the "**Dex-Cool Class Actions**"). In

both the Gutzler Class Action and the Sadowski Class Action, the parties entered into a

settlement agreement approved by each court (collectively, the "**Dex-Cool Settlement**

**Agreement**"). Prior to the Commencement Date, the administration of the Dex-Cool Settlement

Agreement had been substantially completed. However, certain claims in connection with the

Dex-Cool Class Actions had not yet been liquidated pursuant to the terms of the Dex-Cool

Settlement Agreement (the "**Unliquidated Dex-Cool Claims**").

D.        On May 18, 2004 certain consumers filed a class action against MLC in the

Superior Court of the State of California for the County of Los Angeles, Central Civil West

Courthouse (the "**Anderson Class Action**"). In the Anderson Class Action, the parties entered

into a settlement agreement approved by the court (the "**Anderson Settlement Agreement**").

Prior to the Commencement Date, the administration of the Anderson Settlement Agreement had

been initiated. However, certain claims in connection with the Anderson Class Action had not

1

yet been liquidated pursuant to the terms of the Anderson Settlement Agreement (the

"**Unliquidated Anderson Claims**").

        **NOW, THEREFORE,** in consideration of the mutual covenants and agreements

set forth in this Stipulation, it is agreed as follows:

**AGREEMENT**

    1.     On behalf of the holders of Unliquidated Dex-Cool Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors, and the Debtors agree that the undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Dex-Cool Claims.

    2.     On behalf of the holders of Unliquidated Anderson Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors and the Debtors agrees that undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Anderson Claims.

    3.     The undersigned class counsel, by filing the Class Proofs of Claim in respect of

the Unliquidated Dex-Cool Claims and the Unliquidated Anderson Claims, consents to and

hereby is deemed to be the claimant for the purpose of receiving notices and distributions, if

any, except as otherwise provided in a confirmation order related to a chapter 11 plan filed in

the Chapter 11 Cases, and may (but shall not be required to) respond to any objections

interposed as to any claims asserted in each applicable Class Proof of Claim.  Notice to the

undersigned class counsel shall be, and shall be deemed to be, sufficient notice to all class

members in the Dex-Cool Class Action and the Anderson Class Action.

4.      The Debtors' agreement herein to permit the filing by the undersigned class counsel of each Class Proof of Claim is intended solely for the purpose of administrative convenience and neither this Stipulation and Order nor the filing of any Class Proof of Claim shall in any way prejudice the right of any Debtor or any other party in interest to object to the allowance of any Class Proof of Claim.

5.      This Court shall retain jurisdiction to resolve any disputes or controversies arising from or relating to this Stipulation and Order and to the filing of the Class Proofs of Claim pursuant to this Stipulation.

6.      This Stipulation is subject to the approval of this Court and shall become effective upon the entry of an order by the Court approving this Stipulation.  If this Stipulation is not approved by the Court, then this Stipulation shall be deemed null and void, and shall not be referred to or used for any purpose by any of the parties hereto (the "**Parties**") in either the Chapter 11 Cases or in any other forum.

7.      This Stipulation sets forth the entire understanding of the Parties with respect to the matters addressed herein and is intended to be the complete and exclusive statement of the terms thereof and may not be modified or amended except by a writing signed by the Parties and/or their counsel, which shall be so-ordered by the Court.  Accordingly, the Parties have independently verified all facts and/or conditions of facts that they have determined are necessary to their decision to enter into this Stipulation, and they have not relied upon any representations, written or oral, express or implied, of any other person in verifying and satisfying themselves as to such facts and/or condition of facts.

8.      The Parties represent and warrant to each other that the signatories to this Stipulation have full power and authority to enter into this Stipulation.

9. This Stipulation may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Delivery of signed counterparts of this Stipulation by facsimile transmission or as PDF attachment to an email message shall have the same effect as the manual delivery of an original signed counterpart of this Stipulation, and all signatures on such counterpart will be deemed to be as valid as an original signature whether or not a Party delivers manually an original signed counterpart of this Stipulation, although it is the Parties' intention to deliver an original signed counterpart after any facsimile or email delivery.

DATED: November ___, 2009                    Respectfully submitted,


**GIRARD GIBBS LLP**                         **POLSINELLI SHUGHART P.C.**


By: /s/ A. J. de Bartolomeo                  By: P. John Brady
A. J. De Bartolomeo                          P. John Brady

Eric H. Gibbs                                Twelve Wyandotte Plaza
Dylan Hughes                                 120 West 12th Street
Geoffrey A. Munroe                           Kansas City, Missouri 64105
601 California Street, 14th Floor            Telephone: (816) 421-3355
San Francisco, California 94108              Facsimile: (816) 374-0509
Telephone: (415) 981-4800
Facsimile: (415) 981-4846                    *Court-Appointed Class Counsel in Dex-Cool*

*Court-Appointed Class Counsel in Dex-Cool*
*Class Action and Anderson*

**WEIL, GOTSHAL & MANGES LLP**


By: <u>Joseph H. Smolinsky</u>
Joseph H. Smolinsky

767 Fifth Avenue
New York, New York 10153
Attention: Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Phone: (212) 310-8000
Facsimile: (212) 310-8007


*Attorneys for the Debtors and Debtors in Possession*

## ORDER APPROVING STIPULATION

Based on the foregoing stipulation of the parties, the Court finding that good cause exists to approve the Stipulation as an order of the Court, that adequate notice of the Stipulation has been provided, and that no further notice is required,

IT IS HEREBY ORDERED that the foregoing stipulation is approved and incorporated by reference and made a part of this Order.

IT IS FURTHER ORDERED that this Court will retain jurisdiction to adjudicate any disputes arising in connection with this Order.

Date: **_December 1, 2009_**
New York, New York

_s/ Robert E. Gerber_
UNITED STATES BANKRUPTCY JUDGE