HEARING DATE AND TIME: April 26, 2011 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: April 19, 2011 at 4:00 pm. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                        :
In re                                   :    Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :    09-50026 (REG)
      f/k/a General Motors Corp., et al. :
                                        :
                      Debtors.          :    (Jointly Administered)
                                        :
-------------------------------------------------------------x
```

### NOTICE OF DEBTORS' OBJECTION TO
### PROOF OF CLAIM NO. 28231 FILED BY ISAAC OLIVA

**PLEASE TAKE NOTICE** that on March 24, 2011, Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), filed their objection (the "**Objection**") to Proof of Claim No.

28231, filed by Isaac Oliva, and that a hearing to consider the Debtors' Objection will be held

before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004, on **April 26, 2011 at 9:45 a.m. (Eastern Time)**, or as soon

thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must

be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by

registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest,

on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard

copy delivered directly to Chambers), in accordance with the customary practices of the

Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance

with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors,

767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin,

Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401

South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas

Morrow); (iii) General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn:

Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the

United States Department of the Treasury, One World Financial Center, New York, New York

10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500

Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.);

(vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor,

New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii)

Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured

creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers

Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii)

the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S.

Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007

(Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered,

attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375

Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and

Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:

Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman &

Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal

representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200,

Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); and (xii)

Girard Gibbs LLP, attorneys for class action plaintiff Jason Anderson and all others similarly

situated, 601 California Street, Suite 1400, San Francisco, California 94108 (Attn: Eric H.

Gibbs, Esq. and A. J. De Bartolomeo, Esq.), so as to be received no later than **April 19, 2011 at**

**4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

   **PLEASE TAKE FURTHER NOTICE** that if no response is timely filed and

served with respect to the Objection, the Debtors may, on or after the Response Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated: New York, New York
March 24, 2011

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                    :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| f/k/a **General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------x

### DEBTORS' OBJECTION TO
### PROOF OF CLAIM NO. 28231 FILED BY ISAAC OLIVA

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

### Relief Requested

    1.    The Debtors file this Objection (the "**Objection**") pursuant to section

502(b) of title 11 of the United States Code, Rule 3007(d) of the Federal Rules of Bankruptcy

Procedure, and this Court's order establishing the deadline for filing proofs of claim against

MLC and certain other Debtors and the procedures relating to the filing of proofs of claim (ECF

No. 4079), seeking to disallow and expunge Proof of Claim No. 28231 (the "**Oliva Claim**") filed

by Isaac Oliva ("**Oliva**").

      2.     The Oliva Claim should be expunged because it is duplicative of Proof of

Claim No. 51093 (the "**Anderson Claim**"). The Anderson Claim was filed by Jason Anderson

("**Anderson**"), on behalf of himself and a class of all others similarly situated (the "**Anderson**

**Class**" and, together with Anderson, the "**Anderson Parties**"), against General Motors

Corporation ("**GM**") in the Superior Court of the State of California, County of Los Angeles (the

"**California Court**") (the "**Anderson Class Action**"). In the Anderson Class Action, Anderson

alleged, among other things, that GM violated California Unfair Competition Law and the Motor

Vehicle Warranty Adjustment Programs statute, Civ. Code § 1795.90 *et. seq.* The Anderson

Class Action was settled prior to GM's bankruptcy filing (the "**Anderson Class Action**

**Settlement**"), but, due to the Debtors' chapter 11 filings, all of the class consideration could not

be provided to the Anderson Class. The Anderson Claim seeks remaining consideration

purportedly due to the Anderson Class based on the previously approved settlement of the

Anderson Class Action.

      3.     The Debtors and the Anderson Parties (together, the "**Parties**") have

recently reached an agreement to resolve the Anderson Claim the ("**Agreement**") and have

asked this Court to approve the Agreement such that the previously approved Anderson Class

Action Settlement can be implemented, as modified. (*See* Motion for Entry of Order Pursuant to

Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. 23 Approving Agreement Resolving Proof of Claim

No. 51093 and Implementing Modified Class Settlement (ECF No. 9805) (the "**Anderson**

**Modification Motion**").) The deadline for any responses or objections to the Anderson

Modification Motion is April 19, 2011 at 4:00 p.m. (Eastern Time). If the Agreement is

approved, each eligible member of the Anderson Class will receive a *pro rata* distribution in the

form of a general unsecured claim, as further set forth in the Agreement.

       4.     Oliva is a member of the Anderson Class, and the Oliva Claim filed by

Oliva admittedly is based on the Anderson Class Action Settlement. Through the Oliva Claim,

Oliva seeks consideration he believes he is entitled to under the terms of the Anderson Class

Action Settlement. However, as the Anderson Claim is filed on behalf of all members of the

Anderson Class including Oliva, the Oliva Claim is duplicative. Consequently, if Oliva has any

right to consideration from the Debtors, it is through the Agreement (if approved).

       5.     Accordingly, the Debtors respectfully request entry of the Order Granting

Debtors' Objection to Proof of Claim No. 28231 Filed by Isaac Oliva (the "**Order**"), a copy of

which is attached hereto as **Exhibit "A,"** disallowing and expunging from the Claims Register in

its entirety the Oliva Claim as duplicative of the Anderson Claim.

       6.     This Objection does not affect the Anderson Claim and does not constitute

any admission or finding with respect to the Oliva Claim or the Anderson Claim. Further, the

Debtors reserve all their rights to object on any basis to the Anderson Claim or on any other basis

to the Oliva Claim should the Court not grant the relief requested herein.

### Jurisdiction

       7.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

       8.     On May 18, 2004, Anderson filed the Anderson Class Action on behalf of

the Anderson Class in the California Court.

9.      Following substantial discovery, law and motion practice, and two

separate mandatory settlement conferences before a California state judge, GM and the Anderson

Parties reached the Anderson Class Action Settlement.

10.     On November 18, 2008, the California Court entered the Order

Preliminarily Approving Stipulation of Settlement (the "**Preliminary Approval Order**"). In

that Preliminary Approval Order, the California Court set a fairness hearing for March 5, 2009

(the "**Fairness Hearing**"); set forth deadlines for objecting to the Anderson Class Action

Settlement and appearing at the Fairness Hearing; approved the form of class notice (the "**Notice**

**of Settlement**"); and approved the proposed manner of providing notice, which manner included

first-class mailing of the Preliminary Approval Order to the members of the Anderson Class and

posting a Spanish-language version of the Notice of Settlement on Class Counsel's website.   In

accordance with that Preliminary Approval Order, GM (as class claims administrator) mailed

notice of the class action settlement to approximately 240,000 California owners and lessees of

model year 1999-2003 Silverado vehicles.

11.     On March 5, 2009, the California Court conducted its Fairness Hearing

and entered its Final Judgment, in which it finally approved the Anderson Class Action

Settlement and finally certified the Anderson Class consisting of: "All California owners and

lessees of 1999-2003 model year Chevrolet Silverados equipped with a 4.8 liter (LR4, 5.3 liter

(LM7, 6.9 liter (LQ4, L59) or 8.1 liter (l18) engines who (1) Have an engine "knock, ping or

slap" noise in their vehicles; and (2) Were not given notice of the condition giving rise to or the

terms and conditions of GM's Engine Knock Noise Adjustment Program." Excluded from the

Anderson Class were those California owners and lessees of 1999-2003 model year Chevrolet

Silverados who timely requested to be excluded from the class on or before August 15, 2007.

4

12.     Pursuant to the Anderson Class Action Settlement and Final Judgment, members of the Anderson Class were required to submit a settlement benefit claim form ("**Claim Form**") to obtain the benefits of the settlement.  The deadline for class members to submit and postmark valid and timely Claim Forms for settlement benefits (together with any necessary supporting documentation) to GM expired on May 11, 2009.

13.     Oliva's proof of claim indicates that he is the owner of a 2003 Chevrolet Silverado 2500/EX.  Oliva is thus a member of the Anderson Class absent him timely filing a notice of opt-out with the California Court.  Court records indicate that Oliva did not opt out of the Anderson Class, and, on or about May 7, 2009, he submitted a Claim Form, seeking to obtain benefits from the Anderson Class Action Settlement.

14.     On June 1, 2009, before the terms of the Anderson Class Action Settlement could be implemented and before GM performed any actions as class claims administrator, certain of the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), which stayed all proceedings related to the implementation of the Anderson Class Action Settlement.

15.     On September 16, 2009, this Court entered the Bar Date Order which, among other things, established November 30, 2009 at 5:00 p.m. (Eastern) as the deadline to file proofs of claim against MLC and certain of the other Debtors based on prepetition claims and set forth procedures for filing proofs of claim in these chapter 11 cases.

16.     On November 16, 2009, Oliva filed the Oliva Claim, a copy of which is attached hereto as **Exhibit "B,"** based on the Anderson Class Action Settlement.  Through the Oliva Claim, Oliva attaches his Claim Form and cites the "Basis for Claim" as "Warranty

Reimbursement – Engine Noise Litigation," thereby stating his belief that he is entitled to relief under the Anderson Class Action Settlement.

17.     On November 24, 2009, the Parties entered into a stipulation (the "**Stipulation**") permitting Class Counsel to file, on behalf of all members of the Anderson Class, the Anderson Claim against the Debtors.

18.     On November 25, 2009, the Anderson Claim was filed with this Court on behalf of the Anderson Class and assigned claim number 51093. The Anderson Claim, a copy of which is attached hereto as **Exhibit "C,"** asserts a claim in the amount of $10,000,000.00, for class consideration allegedly due to Anderson Class members pursuant to the Anderson Class Action Settlement.

19.     On December 1, 2009, the Court entered the Order Approving the Stipulation (the "**Stipulated Order**"), a copy of which is attached hereto as **Exhibit "D,"** permitting Class Counsel to file the Anderson Claim against the Debtors. The Anderson Claim seeks relief on behalf of all of the Anderson Class members, and, through the Stipulated Order, Class Counsel "consents to" and "is deemed to be the claimant" for purposes of receiving notices and distributions on behalf of the members of the Anderson Class. (*See id.*) Consequently, any individually-filed claims by Anderson Class members, including the Oliva Claim, are duplicative of the Anderson Claim. (*See id.*)

20.     On March 14, 2011, the Debtors filed the Anderson Modification Motion (ECF No. 9805), a copy of which is attached hereto without exhibits as **Exhibit "E,"** seeking to implement the Agreement providing for approval of the settlement previously reached in the Anderson Class Action with certain modifications necessary as a result of the Debtors' chapter

6

11 cases.  A hearing on the Anderson Modification Motion is currently scheduled for April 26,

2011 at 9:45 a.m. (Eastern Time).

21.    Accordingly, provided that the Court approves the Agreement, to the

extent Oliva is entitled to any relief under the Anderson Class Action, he will obtain a *pro rata*

distribution based on the Anderson Claim pursuant to the Agreement.[1]

### The Relief Requested Should Be Approved by the Court

22.    A filed proof of claim is "deemed allowed, unless a party in interest . . .

objects."  11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential

allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See*

*In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC),

2010 WL 234827 (S.D.N.Y. Jan. 22, 2010); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No.

02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re*

*Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

23.    Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a

claim may not be allowed to the extent that "such claim is unenforceable against the debtor and

property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  The

Debtors cannot be required to pay on the same claim more than once.  *See, e.g., In re Finley,*

*Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey*, 160 B.R. 882, 894 (Bankr.

S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an identical injury are generally

disallowed.").

---

[1]    The Oliva Claim requests reimbursement for a "Mechanical Breakdown Protection" extended warranty, which does not appear to be a GM product and was purchased from a third party, not GM.  Moreover, Oliva does not appear to be eligible for any other consideration under the Anderson settlement based on the Oliva Claim.  Thus, the Oliva Claim does not appear to assert a valid claim for reimbursement under the Anderson Class Action Settlement.

24.     The Oliva Claim should be expunged because it is duplicative of the

Anderson Claim. Oliva is a member of the Anderson Class, and the Oliva Claim seeks amounts

purportedly due to Oliva based on the Anderson Class Action Settlement, which has already

been resolved by the Debtors with the settlement of the Anderson Claim set forth in the

Agreement. Thus, the Oliva Claim seeks consideration for which Oliva may be eligible, if at all,

only under the Anderson Class Action Settlement, and Oliva is not entitled to individual relief

separate and apart from the Anderson Claim. Accordingly, to the extent Oliva is entitled to any

relief under the Anderson Class Action Settlement, his entitlement, if any, is limited to a pro rata

distribution based on the Anderson Claim pursuant to the Agreement.

25.     Moreover, any individual claims of Oliva related to the Released Claims

(as defined in the Anderson Class Action Settlement) necessarily merged into the Final Judgment

and dismissal of the California Court. Accordingly, Anderson as the court-appointed class

representative–and Class Counsel and not individual members of the Anderson Class–are the

proper parties to bring claims for consideration due under the terms of the Anderson Class

Action Settlement.

26.     To avoid the possibility of multiple recoveries by the same creditor, and

because Oliva already agreed to be bound by the Anderson Class Action Settlement as a member

of the Anderson Class, the Debtors respectfully request that the Court disallow and expunge the

Oliva Claim in its entirety.

### Notice

27.     Notice of this Objection has been provided to (i) Isaac Oliva, 2219 Cedar

Street, Santa Ana, California 92707; (ii) Class Counsel, P.C., attorneys for Anderson and the

Anderson Class, Girard Gibbs LLP (Attn.: Eric H. Gibbs, Esq. and A. J. De Bartolomeo, Esq.),

601 California Street, Suite 1400, San Francisco, California 94108; and (iii) parties in interest in

8

accordance with the Fifth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P.

1015(c) and 9007 Establishing Notice and Case Management Procedures, dated January 3, 2011

(ECF No. 8360). The Debtors submit that such notice is sufficient and no other or further notice

need be provided.

      28.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

      WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
      March 24, 2011

                 /s/ Joseph H. Smolinsky
                 Harvey R. Miller
                 Stephen Karotkin
                 Joseph H. Smolinsky

                 WEIL, GOTSHAL & MANGES LLP
                 767 Fifth Avenue
                 New York, New York 10153
                 Telephone: (212) 310-8000
                 Facsimile: (212) 310-8007

                 Attorneys for Debtors
                 and Debtors in Possession

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                            :
In re                                       :        Chapter 11 Case No.
                                            :
MOTORS LIQUIDATION COMPANY, et al.,         :        09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                            :
                        Debtors.            :        (Jointly Administered)
                                            :
-------------------------------------------------------------x

## ORDER GRANTING DEBTORS' OBJECTION TO
## PROOF OF CLAIM NO. 28231 FILED BY ISAAC OLIVA

Upon the objection dated March 24, 2011 (the "**Objection**") to Proof of Claim No.

28231 filed by Isaac Oliva (the "**Oliva Claim**"), of Motors Liquidation Company (f/k/a General

Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"),

pursuant to section 502(b) of title 11, United States Code (the "**Bankruptcy Code**"), Rule 3007(d)

of the Federal Rules of Bankruptcy Procedure, and this Court's order establishing the deadline for

filing proofs of claim of certain Debtors and procedures relating to the filing of proofs of claim (ECF

No. 4079), seeking to disallow and expunge the Oliva Claim on the ground that it is duplicative of

Proof of Claim No. 51093 (the "**Anderson Claim**"), as more fully described in the Objection; and

due and proper notice of the Objection having been provided, and it appearing that no other or

further notice need be provided; and the Court having found and determined that the relief sought in

the Objection is in the best interests of the Debtors, their estates, creditors, and all parties in interest

and that the legal and factual bases set forth in the Objection establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Oliva Claim is hereby disallowed and expunged in its entirety; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2011

_____
United States Bankruptcy Judge

US_ACTIVE:\43651035\07\72240.0639

# EXHIBIT B

7013030

**PROOF OF CLAIM**

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

Your Claim is Scheduled As Follows

| Name of Debtor (Check Only One) | Case No |
|---|---|
| ☒ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☐ MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐ MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) |

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see Item # 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property) ISAAC OLIVA

Name and address where notices should be sent
ISAAC OLIVA
2219 CEDAR, ST
SANTA ANA CA 92707

Telephone number
Email Address

Name and address where payment should be sent (if different from above)

Telephone number 714-751-5430

☒ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number 09-50026
(if known)

Filed on May-7-2009

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

FILED - 28231
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

1. Amount of Claim as of Date Case Filed, June 1, 2009    $ 1,035.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is entitled pursuant to 11 U.S.C. § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges

2. Basis for Claim: Warranty Reimbursement-Engine Noise Litigation
(See instruction #2 on reverse side)

3. Last four digits of any number by which creditor identifies debtor: _____

3a. Debtor may have scheduled account as _____
(See instruction #3a on reverse side)

4. Secured Claim (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:    ☐ Real Estate    ☒ Motor Vehicle    ☐ Equipment    ☐ Other
Describe:

Value of Property $_____    Annual Interest Rate_____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any $_____

Basis for perfection: _____

Amount of Secured Claim $_____    Amount Unsecured $_____

6. Credits: The amount of all payments on this claim has been credited for the purpose of making this proof of claim

7. Documents: Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain in an attachment

5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(___)

Amount entitled to priority

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file it again.

Date:
11-10-200

Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any

*Isaac Oliva*

FOR COURT USE ONLY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

Modified B10 (GCG) (12/08)

9766329806

## ENGINE NOISE LITIGATION

## SETTLEMENT BENEFIT CLAIM FORM (E-3)

To make a claim, complete and sign this Claim Form and mail it no later than May 11, 2009, along with all required documents to

Engine Noise Litigation-NOG
P.O. Box 33170
Detroit, MI 48232-5170

Isaac Oliva
2219 Cedar St
Santa Ana, CA 92707-3011

☐ Check this box to update your name and/or address and fill in updated information here

Name _ISAAC OLIVA_

Address _2219 CeDAR ST_
_SANTA ANA, Calif 92707_

Vehicle Identification Number 1GCHK29G73E337832

### CHECK **ALL** BOXES THAT APPLY TO YOU AND SIGN AND DATE THIS FORM
### YOU **MUST** SUPPLY ANY REQUIRED DOCUMENTATION

*You may be entitled to multiple benefits*
*Turn this form over to check additional boxes and to sign and date the form.*

**If you paid for "Start Noise" repairs, check here for full reimbursement:**

☐ I enclose documentation (such as a repair order) showing that, prior to the expiration of my Silverado's original warranty (i.e., within 3 years or 36,000 miles, whichever came first), I paid for engine repair expenses to address a concern about piston or piston pin noise that disappears shortly after engine warm up ("Start Noise"). The repair dates and a description of the repairs are listed below

| Repair Date(s) | Vehicle Mileage(s) | Repair Cost(s) Paid by You | Description of Repair |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

Side 1

**NOTE: YOU MUST COMPLETE AND SIGN THIS FORM**

**If you paid for other engine repairs listed below, check here for reimbursement:**

☐ Prior to the expiration of my Silverado's original warranty (3 years 36,000 miles after sale or lease, whichever came first), I contacted GM or a GM dealership and inquired or expressed concerns about "Start Noise" in my vehicle ("Start Noise" is piston or piston pin noise at initial start-up that disappears shortly after engine warm up). I enclose documentation (such as a repair order) showing that I paid for repairs to one or more of following engine components within 6 years or 100,000 miles of the initial retail sale or lease of my Silverado, whichever came first: cylinder block, heads, crankshaft and bearings, crankshaft seals — front and rear, camshaft and bearings, connecting rods and pistons, valve train (including valve seals, valve covers and internal parts), timing gears, timing chain/belt and cover, oil pump, oil pump housing, oil pan, all engine seals and gaskets, all lubricated internal engine parts, water pump, intake and exhaust manifolds, flywheel, harmonic balancer, and engine mounts. By checking this box, I understand that I am eligible to be reimbursed for 75% of the amount that I paid for the repairs shown in these documents, which are described below

| Repair Date(s) | Vehicle Mileage(s) | Repair Cost(s) Paid by You | Description of Repair |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

**For an evaluation and possible repair of Constant Piston or Constant Piston Pin Noise, check here:**

☐ Prior to the expiration of my Silverado's original warranty (3 years 36,000 miles after sale or lease, whichever came first), I contacted GM or a GM dealership and made inquiry or expressed a concern about a piston or pin noise that was not Start Noise and did not disappear shortly after engine warm up ("Constant Noise"), and I did not receive a repair for this Constant Noise condition. I understand that by checking this box, I will receive instructions on how to obtain a free noise evaluation at an authorized Chevrolet dealership; if the dealer confirms my Silverado has Constant Noise, I will receive an appropriate repair for this condition. Note: Chevrolet dealers will not make repairs for "Start Noise" (piston or piston pin noise that disappears shortly after the engine warms up).

I declare under penalty of perjury under the laws of the State of California that these statements and the documentation submitted is true and correct.

Dated: APR. 1, 11 , 2009    ISAAC OLIVA    _Isaac Oliva_
    Date Form Here           Print Your Name Here       Sign Your Name Here

0081071/#36480-E3    **NOTE: YOU MUST COMPLETE AND SIGN THIS FORM**

07187

## CUSTOMER REIMBURSEMENT PROCEDURE

If you have paid to have this condition corrected prior to this notification, you may be eligible to receive reimbursement

If your vehicle had 70,000 miles or less at the time you paid to have this condition corrected, your request for reimbursement may include parts, labor, fees and taxes If your vehicle had greater than 70,000 miles, but less than 80,000 miles at the time you paid to have this condition corrected, your request for reimbursement may include parts only If your vehicle had 80,000 miles or more at the time you paid to have this condition corrected, you are not entitled to reimbursement

*Your claim will be acted upon within 60 days of receipt*

If your claim is

- Approved, you will receive a check,
- Denied, you will receive a letter with the reason(s) for the denial, or
- Incomplete, you will receive a letter identifying the documentation that is needed to complete the claim and offered the opportunity to resubmit the claim when the missing documentation is available

Please follow the instructions on the Claim Form provided below to file a claim for reimbursement

## CUSTOMER REIMBURSEMENT CLAIM FORM

Please do NOT mail this claim form until the settlement has been approved OR if you have already submitted this form as part of the Special Coverage. To confirm settlement approval, go to www.speedometersettlement.com or call 1-866-514-0405

### This section to be completed by Claimant

Date Claim Submitted _MAY 7, 2009_

17-Digit Vehicle Identification Number (VIN) _1 6C HK29G73E337832_

Mileage at Time of Repair _HaveNT RePaiReD_  Date of Repair _____

Claimant Name (Please Print) _Isaac Joseph Oliva_

Street Address or PO Box Number _2219 CeDAR St._

City _SANTA ANA_   State _CaliF._ ZIP Code _92707_

Daytime Telephone Number (Include Area Code) _714 - 448 - 7528_

Evening Telephone Number (Include Area Code) _"    "    "_

Amount of Reimbursement Requested $ _Full Amount I Paid For_  _EXTENDED WARRANTY_

The following documentation must accompany this form
Original or clear copy of all receipts, invoices and/or repair orders that show
- The name and address of the person who paid for the repair
- The Vehicle Identification Number (VIN) of the vehicle that was repaired
- What problem occurred, what repair was done, when it was done and who did it
- The total cost of the repair expense that is being claimed
- Payment for the repair in question and the date of payment
  (copy of front and back of cancelled check, or copy of credit card receipt)

My signature to this document attests that all attached documents are genuine and I request reimbursement for the expense I incurred for the repair covered by this letter

Claimant's Signature _Isaac Oliva_

Please mail this Claim Form and the required documents to
**Reimbursement Department — Settlement**
**P.O. Box 33170**
**Detroit, MI 48232-5170**

Reimbursement questions should be directed to the following number  1-800-204-0261

-Exhibit 2-

-6-


CHEVROLET

## *Selman Chevrolet Company*

### 1800 East Chapman
## ORANGE, CALIFORNIA 92867-7704
Phone (714) 633-3521

B A R. REG NO AA003847 • E P.A NO CAD 981572886

| CUSTOMER NO 71996 | ADVISOR BILL VILLIGAN 1167 | TAG NO 107 | INVOICE DATE 05/07/09 | INVOICE NO CTCS497021 |
|---|---|---|---|---|

ISAAC OLIVA
2219 CEDAR STREET
SANTA ANA, CA 92703

| LABOR RATE | LICENSE NO 7P67433 | MILEAGE 75,428 | COLOR ONYX BLACK/ | STOCK NO |
|---|---|---|---|---|
| YEAR/MAKE/MODEL 03/CHEVROLET TRUCK/SILVERADO 2500/EX | | DELIVERY DATE 07/19/03 | | DELIVERY MILES 50 |
| VEHICLE ID NO 1 G C H K 2 9 G 7 3 E 3 3 7 8 3 2 | | SELLING DEALER NO SELMAN | | PRODUCTION DATE |
| FTE NO | PO NO | RO DATE 05/07/09 | | |

| RES/DELIVERY NO 714 720-6310 | BUSINESS PHONE 562 696-2117 | COMMENTS |
|---|---|---|

LABOR & PARTS
J# 1 41CV2     HEAVY LINE TRUCK/VAN
CUSTOMER STATES PISTON NOISE WHEN COLD  CHK AND ADVISE
STARTED IN A M  COLD, LOWER END KNOCK NOTED, APPEARS PISTON
RELATED  SOUND SUBSIDES WITH ENGINE TEMP  NOTHING ABNORMAL
NOTED AT NORMAL OPERATIONAL TEMPS

JOB #  1 TOTAL LABOR & PARTS        0 00

COMMENTS
714 448 7526
GM CUSTOMER ASSISTANCE # 800-222 1020

TOTALS

IF YOU HAVE ANY QUESTIONS OR COMMENTS   PLEASE REFER
TO YOUR SERVICE ADVISOR

* INDICATES GM GOODWRENCH LIMITED LIFETIME SERVICE
GUARANTEE APPLIES FOR THE ORIGINAL PURCHASER

*Isaac Oliva*
CUSTOMER SIGNATURE

May, 7 2009

| | | |
|---|---|---|
| TOTAL LABOR .. | 0 00 |
| TOTAL PARTS | 0 00 |
| TOTAL SUBLET .. | 0.00 |
| TOTAL G O G | 0.00 |
| TOTAL MISC CHG | 0.00 |
| TOTAL MISC DISC | 0 00 |
| TOTAL TAX | 0 00 |
| **TOTAL INVOICE $** | **0.00** |

INVOICE PREPARED                    CASH☐
BY_____    $_____
PAYMENT RECEIVED            AMOUNT RECEIVED
BY_____    $_____
                        CHARGE PICTURED

CREDIT CARD☐            CHECK☐

                        NO ._____
WARRANTY☐        INTERNAL☐
                        OTHER☐

SERVICE DEPARTMENT HOURS
TUESDAY THRU FRIDAY
7 30 AM TO 6.00 PM
MONDAY 7 30 AM TO 8 00 PM
SATURDAY 8 00 AM TO 4 00 PM
NO VEHICLES RELEASED
AFTER SERVICE
DEPARTMENT CLOSES
PARTS DEPARTMENT HOURS
MONDAY THRU FRIDAY
8 00 AM TO 5 30 PM
SATURDAY 8 00 AM TO 4.00 PM
BODY SHOP HOURS
MONDAY THRU FRIDAY
7 30 AM TO 5 30 PM
SATURDAY 8 00 AM TO NOON

NOTICE TO CONSUMER
PLEASE READ IMPORTANT
INFORMATION ON BACK

NOTICE TO CUSTOMER
WE MAKE A SEPARATE CHARGE FOR
THE STORAGE AND DISPOSAL OF
TOXIC  WASTES  RATHER  THAN
RECOVER  THESE  COSTS  BY
INCREASING OUR LABOR RATES TO
ALL OF OUR CUSTOMERS WE MAKE
THIS  CHARGE  ONLY  ON  THOSE
PARTICULAR REPAIRS OR SERVICES
WHICH GENERATE THESE WASTES
THESE  ARE  UNIFORM  CHARGES
WHICH ARE CALCULATED ANNUALLY
FOR EACH PARTICULAR SERVICE
ARE AVAILABLE ON REQUEST

ALL PARTS INSTALLED ARE NEW UNLESS SPECIFIED OTHERWISE

PAGE 1 OF 1            CUSTOMER COPY            [ END OF INVOICE | 10 05am ]

REORDER FROM TRU-COM CO (800) 501-7070

# Building Trades Federal Credit Union
### Main Branch
1918 West Chapman Avenue
Orange, CA 92868

Wednesday, July 23, 2003

ISAAC OLIVA
Account #

RE  Quote Number  85
2003 Chevrolet Silverado 2500HD
Vehicle Options  4WD
Current Odometer Reading  50
Loan Officer  Maria Silva

## MECHANICAL BREAKDOWN PROTECTION QUOTATION

| Plan Name & Type | Terms of Coverage | Premium | Tax | Total |
|---|---|---|---|---|
| Solid Gold - Deluxe High Tech (New) | 5 yrs, 80k miles | $800 00 | $0 00 | $800 00 |
| Solid Gold - Deluxe High Tech (New) | 5 yrs, 100k miles | $1,045 00 | $0 00 | $1,045 00 |
| Solid Gold - Deluxe High Tech (New) | 6 yrs, 60k miles | $670 00 | $0 00 | $670 00 |
| Solid Gold - Deluxe High Tech (New) | 6 yrs, 80k miles | $1,035 00 | $0 00 | $1,035 00 |
| Solid Gold - Deluxe High Tech (New) | 6 yrs, 100k miles | $1,280 00 | $0 00 | $1,280 00 |
| Solid Gold - Deluxe High Tech (New) | 7 yrs, 100k miles | $1,565 00 | $0 00 | $1,565 00 |

Rates subject to change without notice

Coverage Effective Date Determination
Month = month of application / Day = date of the application / Year = year model of the vehicle*
*If year model of vehicle is newer than the current year, then the coverage effective date is the date of the application

Mileage Determination
The starting mileage of the application will begin at 0 and will expire when the selected mileage is reached on the odometer

The term of coverage continues for the number of years selected from the effective date of coverage or until the number of miles selected appears on the odometer, whichever occurs first

VEHICLE OWNER'S STATEMENT  I have received a Sample Certificate  I will read and comply with my obligations including proper MAINTENANCE of my vehicle and my obligations to protect my vehicle from additional damage in the event of a Mechanical Breakdown  I UNDERSTAND THAT THERE IS NOT COVERAGE FOR VEHICLES THAT HAVE EVER BEEN DECLARED A SALVAGE, REBUILT, TOTAL LOSS OR USED FOR COMMERCIAL PURPOSES  Breakdowns and defects occurring prior to the effective date are not covered  I represent that the information provided above is true and correct

Accept MBP Coverage
(Please circle coverage choice)

Vehicle Owner's Signature _____  Date 7-24-03

Current Odometer Reading _____300_____  Vehicle Purchase Date 7-19-03

Vehicle Identification Number 1GCHK29673E337832

Current Mailing Address 2219 CEDAR ST
Santa Ana, Ca 92203

Decline MBP Coverage
Sign Here _____  Date _____

This quotation is based on information you provided on your vehicle as of today  This letter does not guarantee or bind coverage  Rates and eligibility are subject to regulations and conditions filed in your state
Rates are not valid after 10 days.

Isaac Oliva
May 7, 2009

# EXHIBIT C

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT  Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor | Case Number |
|---|---|
| In re  Motors Liquidation Company | 09-50026 |

NOTE  *This form should not be used to make a claim for an administrative expense arising after the commencement of the case  A request for payment of an administrative expense may be filed pursuant to 11 U S C §503*

| Name of Creditor (the person or other entity to whom the debtor owes money or property) Girard Gibbs LLP (Court-Approved Class Counsel) | ☐ Check this box to indicate that this claim amends a previously filed claim |
|---|---|
| Name and address where notices should be sent Attn  A J  De Bartolomeo , Esq , Girard Gibbs LLP Court-Approved Class Counsel in Jason Anderson v  General Motors Corporation 601 California Street, Suite 1400, San Francisco, CA 94108 Telephone number (415) 981-4800 | Court Claim Number _____ *(if known)* Filed on _____ |

| Name and address where payment should be sent (if different from above) FILED - 51093 MOTORS LIQUIDATION COMPANY F/K/A GENERAL MOTORS CORP SDNY # 09-50026 (REG) Telephone number | ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars ☐ Check this box if you are the debtor or trustee in this case |
|---|---|

| 1  Amount of Claim as of Date Case Filed                     $ 10,000,000 00 | 5  Amount of Claim Entitled to Priority under 11 U S C §507(a)  If any portion of your claim falls in one of the following categories, check the box and state the amount |
|---|---|

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4

If all or part of your claim is entitled to priority, complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

2  Basis for Claim   See Attachment
(See instruction #2 on reverse side )

3  Last four digits of any number by which creditor identifies debtor _____

   3a. Debtor may have scheduled account as _____
   (See instruction #3a on reverse side )

4  Secured Claim (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff   ☐ Real Estate    ☐ Motor Vehicle    ☐ Other
Describe

Value of Property $_____   Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim,

if any $_____       Basis for perfection _____

Amount of Secured Claim  $_____    Amount Unsecured  $_____

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C §507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C §507 (a)(4)

☐ Contributions to an employee benefit plan – 11 U S C §507 (a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C §507 (a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C §507 (a)(8)

☐ Other – Specify applicable paragraph of 11 U S C §507 (a)(__)

Amount entitled to priority

$_____

6  Credits  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

7. Documents  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  *(See instruction 7 and definition of "redacted" on reverse side )*

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

| Date 11/24/09 | Signature  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any     *FOR A.J. DEBARTOLOMEO* | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571*

B 10 (Official Form 10) (12/08) – Cont

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

### Items to be completed in Proof of Claim form

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1   Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2   Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3   Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a   Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4   Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5   Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6   Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7   Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature.**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

_____

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10)

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed up by property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

### ANDERSON V. GENERAL MOTORS CORPORATION
### CLASS PROOF OF CLAIM[1]
#### In re Motors Liquidation Company – 09-50026 (REG)

Debtor. Motors Liquidation Company (f/k/a General Motors Corporation) ("GM")

Total Amount of Class Claim:        $10,000,000.00

Treatment of Class Claim        Pre-petition/Unsecured

Exhibits to Class Claim

      1.     Settlement Agreement

      2      Notice of Settlement Distributed to Class Members

      3      Final Judgment Approving Class Action Settlement

Basis for Claim

      1     <u>The Anderson Litigation</u>

On May 18, 2004, Class Counsel filed an action on behalf of Plaintiff Jason Anderson and a class of California owners and lessees of model year 1999-2003 Chevrolet Silverado trucks against GM entitled *Anderson v  General Motors Corp* , California Judicial Council Coordinated Proceeding Case No  JCCP 4396 ("Anderson Litigation").  The action alleged that certain Silverado trucks exhibit an abnormal engine knock or piston noise  The lawsuit further alleged that GM knew about this condition, and that GM had a business policy under which it provided certain benefits, including a 6 year/100,000 General Motors Protection Plan (or "GMPP"), to California owners and lessees of Silverados who complained to GM about the condition  The action asserted that GM's business policy to offer a GMPP or other benefit to some consumers, but not others, who own or lease a Silverado with an abnormal engine knock or piston noise condition is an adjustment program or "secret warranty" that violates California law, including, specifically, the California Motor Vehicle Warranty Adjustment Program Act, because GM did not notify Plaintiff and class members about the adjustment program, nor provide Plaintiff and class members with coverage under the plan.

After substantial discovery and law and motion practice, on November 8, 2006, the Los Angeles County Superior Court entered an order certifying the action as a class action, and directed that notice be mailed to class members  GM contested the class notice order, both in the trial and appellate courts.  GM's challenge and appeal were rejected, however  On June 15, 2007, a class action notice was mailed to approximately 240,000 California owners and lessees of model year 1999-2003 Chevrolet Silverado vehicles

---

[1] The parties are negotiating a stipulation for filing this class proof of claim  However, the stipulation may not be filed prior to the November 30, 2009 bar date

The parties continued to vigorously litigate the class action   GM brought a motion for summary judgment, which motion was denied by the Los Angeles County Superior Court on November 15, 2007   GM appealed this denial to the California Court of Appeal   GM's appeal was denied by order of the appellate court on May 15, 2008

The class action was set for trial to commence on November 18, 2008

2.    Final Judgment of Class Action Settlement in the *Anderson* Litigation

At a mandatory settlement conference conducted by the Honorable Carl J  West of the Los Angeles County Superior Court on September 17, 2008, GM and the class reached a comprehensive claims-made settlement of the action.  Under the terms of the settlement, GM agreed to reimburse class members who submit valid, timely claims for (1) monies spent on the purchase of a General Motors Protection Program (or GMPP) that otherwise would have been available to them for free under GM's allegedly unlawful adjustment program; and/or (2) repair costs paid to correct the abnormal engine knock or piston noise or on other, specified engine repairs  GM also agreed that class members with constant engine knock or piston noise concerns may request a free evaluation from a Chevrolet dealer and, if appropriate, obtain free repairs of the condition.

On November 14, 2008, preliminary approval of the class action settlement was granted  GM mailed notice of the class action settlement to approximately 240,000 California owners and lessees of model year 1999-2003 Silverado vehicles.   [*See* Exh. 2.]   A Judgment finally approving the class action settlement was entered on March 5, 2009. [*See* Exh  3 ]

Final Notice of the class action settlement and settlement benefit claim forms were mailed to the approximately 240,000 members of the class on March 26, 2009

3    Status of Settlement Administration and Outstanding Claims

Under the terms of the settlement, GM agreed to act as claims administrator   The approved deadline for class members to submit and postmark valid and timely claims for settlement benefits (together with any necessary supporting documentation) to GM expired on May 11, 2009

Due to GM's bankruptcy on June 1, 2009, no class claims have been paid, and the total value of those claims has yet to be reduced to a liquidated value pursuant to the terms of the Settlement Agreement

2

4      Calculation of Claim:

In its role as claims administrator under the terms of the class action settlement in the Anderson Litigation, GM has all documentation necessary to calculate the value of this Claim The total estimated value of the Claim, subject to confirmation from records in GM's possession and control, is as follows

Total estimated value of settlement                                    $10,000,000 00

|  |  | Subtotal | $10,000,000.00 |
| --- | --- | --- | --- |
| TOTAL |  |  | $10,000,000.00* |

*Claimants reserve the right to amend this claim after the date of filing of this class proof of claim





**EXHIBIT 1**

1   ERIC H. GIBBS (S B #178658)
    ELIZABETH C. PRITZKER (S B #146267)
2   GIRARD GIBBS LLP
    601 California St , 14th Floor
3   San Francisco, California 94108
    Tel, (415) 981-4800, Fax: (415) 981-4846
4
    Attorneys for Plaintiff
5   Jason Anderson and the Class

6   GREGORY R. OXFORD (S B #62333)
    ISAACS CLOUSE CROSE & OXFORD LLP
7   21515 Hawthorne Boulevard, Suite 950
    Torrance, California 90503
8   Tel: (310) 316-1990; Fax. (310) 316-1330

9   Attorneys for Defendant
    General Motors Corporation
10
    Of Counsel
11  L. JOSEPH LINES, III
    GENERAL MOTORS CORPORATION
12  Mail Code 482-026-601
    400 Renaissance Center
13  P.O. Box 400
    Detroit, Michigan 48265-4000
14  Tel (313) 665-7386, Fax (313) 665-7376

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                       COUNTY OF LOS ANGELES

17

18  Coordination Proceeding Special Title    )   Case No  JCCP4396
19  (Rule 1550(c))                           )
                                             )   CERTIFIED CLASS ACTION
20       GENERAL MOTORS CASES                )
                                             )
21  _____     )
                                             )   STIPULATION OF SETTLEMENT
22  This Document Relates to                 )
                                             )
23  JASON ANDERSON, on behalf of himself     )
    and all others similarly situated,       )
24                                           )
                 Plaintiff,                  )
25                                           )
           v.                                )
26  GENERAL MOTORS CORPORATION               )
                                             )
27               Defendant.                  )
                                             )
28  _____

*Stipulation of Settlement*

1    This Stipulation of Settlement (the "Agreement") between Plaintiff Jason

2 Anderson and the Class (as defined below) and defendant General Motors Corporation

3 ("GM") is intended to fully, finally and forever resolve, discharge and settle the lawsuit

4 styled *Jason Anderson v General Motors Corporation*, pending in this Court under

5 JCCP 4396 (the "Action") and all matters raised therein, subject to the terms and

6 conditions hereof and approval by the Court.

## I. RECITALS.

8    1.1.    Plaintiff Anderson filed this Action individually and on behalf of a

9 proposed Class (further defined below) which includes California owners and lessees of

10 Model Year 1999-2003 Chevrolet Silverados equipped with 4 8 liter (LR4), 5.3 liter

11 (LM7), 6 0 liter (LQ4, LQ9), and 8.1 liter (L18) engines ("Class Vehicles"). Plaintiff

12 contends that GM violated the Unfair Competition Law ("UCL"), by creating an

13 "adjustment program" under the Motor Vehicle Warranty Adjustment Programs statute

14 ("MVWAP"), Civ. Code § 1795.90 *et seq.*, without providing Class Members with

15 notices and/or repair reimbursements under Civ Code § 1795 92   Specifically, plaintiff

16 contends that GM created an "adjustment program" by offering certain owners and

17 lessees of Class Vehicles General Motors Protection Plans ("GMPPs") or other benefits

18 when they complained that their vehicles have or have had piston or piston pin noise at

19 initial start up that goes away shortly after the engine warms up ("Start Noise")   GM

20 denies that it has created an "adjustment program" under MVWAP, denies that it was

21 required to provide Class Members with notices and/or repair reimbursements and

22 denies that it has violated the UCL

23    1 2    MVWAP defines the term "adjustment program" as follows·

24    "Adjustment program" means a program or policy that expands or extends the
consumer's warranty beyond its stated limit or under which a manufacturer

25    offers to pay for all or any part of the cost of repairing, or to reimburse
consumers for all or any part of the cost of repairing, any condition that may

26    substantially affect vehicle durability, reliability, or performance, other than

27    service provided under a safety or emission-related recall campaign.

28

1    "Adjustment program" does not include ad hoc adjustments made by a
2    manufacturer on a case-by-case basis.  [Civ. Code § 1795 90(d)]

3    1.3.    Plaintiff claims that the GMPP offers constituted an "adjustment

4    program" because the GMPPs "extend" or "enlarge" the GM limited new vehicle

5    warranty and, alternatively, because the GMPPs pay or reimburse repair expenses for

6    "any condition that may substantially affect vehicle durability, reliability or

7    performance."

8    1.4    GM denies all allegations of wrongdoing asserted in the Action and denies

9    liability under any cause of action asserted therein.  Specifically, GM contends that it

10   offered the GMPPs to a small number of customers on a case-by-case basis for purposes

11   of customer satisfaction, and that it did not create an "adjustment program" because the

12   GMPPs are not warranties, but instead are service contracts that do not extend or

13   enlarge the GM limited new vehicle warranty and do not pay or reimburse repair

14   expenses for the Start Noise which they were intended to address   GM further contends

15   that Start Noise has no adverse effect on the durability, reliability or performance of the

16   vehicle engine

17   1 5    The Parties recognize that the outcome of the Action is uncertain, in that

18   the ultimate resolution of this Action would depend upon judicial construction of the

19   reach and applicability of provisions of the MVWAP that have not been interpreted by

20   any state appellate court, and that pursuing the Action to a litigated judgment and a

21   possible appeal under the circumstances would entail substantial cost, risk and delay

22   1 6.    Representative Plaintiff and Class Counsel have conducted an

23   investigation and evaluation of the factual and legal issues raised by the claims asserted

24   in the Action and believe that, in light of the cost, risk and delay of continued litigation

25   balanced against the benefits of the settlement set forth in this Agreement, that such

26   settlement is in the best interests of the, and is fair, reasonable and adequate, for the

27   Class as a whole

28

1      1 7    GM expressly denies any wrongdoing and does not admit or concede any

2    actual or potential fault, wrongdoing or liability in connection with any facts or claims

3    that have been or could have been alleged against it in the Action. GM denies that

4    Plaintiff or any Class Members have suffered damage or were harmed by the conduct

5    alleged. GM has concluded, however, that it is desirable to settle the Action upon the

6    terms and conditions set forth herein because it will (i) fully resolve all claims raised in

7    the Action; (ii) avoid the expense, burdens and uncertainties of continued litigation, and

8    (iii) promote customer satisfaction with GM and Chevrolet vehicles.

9      1 8    Plaintiff and GM therefore stipulate, after good faith, arms-length

10    negotiations in a settlement conference before the Honorable Carl J West, and subject

11    to the approval of the Court, that the Action shall be compromised, settled, released, and

12    dismissed with prejudice upon and subject to the following terms and conditions:

13                  **II. DEFINITIONS.**

14    As used in this Agreement and the exhibits hereto the following terms have the

15    meanings specified below:

16      2 1    "Action" means the lawsuit styled *Jason Anderson v  General Motors*

17    *Corporation*, pending in this Court under JCCP 4396

18      2 2.    "Applicable Warranty Period" means the Limited New Vehicle Warranty

19    Period (3 years or 36,000 miles, whichever comes first), EXCEPT THAT only for

20    purposes of this Agreement for those Class Members who purchased a General Motors

21    Protection Plan ("GMPP"), the Applicable Warranty Period means the time and mileage

22    limitations in the Class Member's GMPP (for example, 4 years or 50,000 miles,

23    whichever comes first, as specified in the Class Member's GMPP).

24      2.3.    "Attorneys' Fees" means the amount awarded by the Court to Class

25    Counsel to compensate them, and any other attorneys for Plaintiff or the Class in the

26    Action, and is inclusive of all attorneys' fees of any kind in connection with the Action

27    GM agrees not to oppose Class Counsel's application for an award of Attorneys' Fees

28

1   up to the maximum of $1,950,000.00 and agrees to pay the sum awarded by the Court

2   as provided in this Agreement as long as it does not exceed that sum.

3      2 4    "Authorized GM Dealer," unless otherwise specified, means any GM

4   dealer in California that is (or at the relevant time was) a signatory to an existing and

5   effective General Motors Corporation Dealer Sales and Service Agreement.

6      2.5.    "Claim" means a claim to receive a cash payment or other settlement

7   benefit under paragraphs 3.1 through 3.6 of this Agreement. A Claim consists of a

8   Claim Form signed under penalty of perjury and any documentation required by

9   paragraphs 3.3, 3.4, 3.5 or 3.6 of this Agreement.

10      2 6    "Claim Deadline" means 45 days after the date that the Final Notice and

11   Claim Forms (defined below) are mailed to Class Members.

12      2.7.    "Claim Form" means the forms attached hereto as Exhibits E-1, E-2 and

13   E-3, only one of which will be sent to each potential Class Member along with the Final

14   Notice as follows:

15       Exhibit E-1.          Class Members who, according to GM or GMAC Insurance

16                                    records, *purchased* GMPPs within 90 days of retail delivery

17                                    of their Class Vehicle,

18       Exhibit E-2:          Class Members who, according to GM or GMAC Insurance

19                                    records, *purchased* GMPPs more than 90 days after retail

20                                    delivery of their Class Vehicle,

21       Exhibit E-3:          All other Class Members

22      2 8.    "Class" or "Class Members" are as described in the November 8, 2006

23   order certifying this Class Action, as follows "All California owners and lessees of

24   1999 through 2003 model year Chevrolet Silverados equipped with a 4 8 liter (LR4),

25   5.3 liter (LM7), 6.0 liter (LQ4, LQ9), and 8 1 liter (L18) engines who: (1) have an

26   engine "knock, ping or slap noise" in their vehicles; (2) were not given notice of the

27   condition giving rise to or the terms and conditions of GM's Engine Knock Noise

28

1   Adjustment Program "  For purposes of this Agreement, "knock, ping or slap noise" has

2   the same meaning as "Start Noise" or "Constant Noise" (defined below)  Excluded

3   from the Class are those California owners and lessees of 1999 through 2003 model

4   year Chevrolet Silverados who timely requested to be excluded from the Class on or

5   prior to August 15, 2007  Subrogees, assignees and other third parties are not Class

6   Members, are not eligible to receive any benefits under this Agreement and are not

7   subject to any releases executed by or on behalf of the Representative Plaintiff or Class

8   Members.

9        2 9.   "Class Action Settlement Notice" means the notice, substantially in the

10   form attached hereto as Exhibit C, provided to potential Class Members after issuance

11   of the Preliminary Approval Order

12       2.10.   "Class Counsel" means Girard Gibbs LLP, 601 California Street, 14th

13   Floor, San Francisco, California 94108

14       2 11   "Class Vehicles" mean 1999 through 2003 model year Chevrolet

15   Silverados equipped with 4.8 liter (LR4), 5 3 liter (LM7), 6 0 liter (LQ4, LQ9) or 8 1

16   liter (L18) engines

17       2.12   "Constant Noise" means piston or piston pin noise that is not "Start

18   Noise" (defined below), for example noise that continues after the engine warms up or

19   that begins after the engine has warmed up

20       2.13   "Court," unless specifically stated otherwise, means the Superior Court of

21   the State of California for the County of Los Angeles

22       2.14.   "Defendant's Counsel" means Isaacs Clouse Crose & Oxford LLP, 21515

23   Hawthorne Boulevard, Suite 950, Torrance, California 90503

24       2.15.   "Documented Costs and Expenses" means the amount of reasonable and

25   documented out-of-pocket costs and expenses incurred by Plaintiff or Class Counsel,

26   shown by their application for reimbursement filed prior to the Fairness Hearing and

27   awarded by the Court, inclusive of past notice costs due to the Garden City Group of

28

1  approximately $93,000.00. Documented Costs and Expenses will not exceed the total

2  sum of $215,000.00 in the aggregate without GM's approval

3     2.16    "Effective Date" means the later of (a) the date upon which the time for

4  seeking appellate review of the Final Judgment (by appeal or otherwise) shall have

5  expired, or (b) the date upon which the time for seeking appellate review of any

6  appellate decision affirming the Final Judgment (by appeal or otherwise) shall have

7  expired and all appellate challenges to the Final Judgment shall have been dismissed

8  with prejudice without any person having any further right to seek appellate review

9  thereof (by appeal or otherwise).

10     2.17.    "Fairness Hearing" means the hearing scheduled for a date approximately

11  75 days after the mailing of the Class Action Settlement Notice at which the Court will

12  consider whether to approve the Agreement as fair, reasonable, and adequate; will

13  consider the proposed Incentive Award to the Representative Plaintiff, the proposed

14  award of Attorneys' Fees to Class Counsel, and the proposed reimbursement of any

15  Documented Costs and Expenses to Class Counsel, will consider whether to enter the

16  Final Judgment; and will make such other rulings as are contemplated by this

17  Stipulation

18     2.18    "Final Judgment" means the judgment, substantially in the form attached

19  hereto as Exhibit A, to be entered by the Court in the Action finally approving this

20  Agreement and dismissing the Action with prejudice

21     2.19    "Final Notice" means the notice mailed to Class Members in substantially

22  the form annexed as Exhibit D within twenty-one (21) days of entry of Final Judgment

23  along with appropriate Claim Forms

24     2.20    "GM" means Defendant General Motors Corporation.

25     2.21    "Incentive Award" means such incentive payment to the Representative

26  Plaintiff as may be awarded by the Court upon Class Counsel's request, in an amount

27  not to exceed $7,500.00

28

1    2 22.  "Limited Warranty Period" means the warranty period specified in the

2    Chevrolet New Vehicle Warranty (3 years or 36,000 miles, whichever comes first)

3    2.23   "Parties" or "Party" means the Representative Plaintiff and/or Defendant

4    GM

5    2 24   "Preliminary Approval Order" means the Court's order preliminarily

6    approving the terms of this Agreement as fair, adequate, and reasonable, including the

7    Court's approval of the form and manner of giving notice to potential Class Members,

8    substantially in the form attached hereto as Exhibit B

9    2.25.  "Released Claims" means any and all claims, demands, causes of actions

10   or liabilities, including but not limited to those for alleged violations of any state or

11   federal statutes, rules or regulations, and all common law claims, including Unknown

12   Claims as defined herein, based on or related in any way to (a) Start Noise or Constant

13   Noise in Class Vehicles; or (b) the factual allegations and legal claims that were made

14   in the Action, including any claim that any repair arguably covered by a GMPP should

15   have been paid for, reimbursed or provided to Class Members pursuant to MVWAP

16   Released Claims do not include claims for personal injury, or claims based on or related

17   to engine noise conditions in Class Vehicles **other** than Start Noise or Constant Noise

18   Consistent with the express terms of this Agreement, subrogation claims are not being

19   released as part of this settlement

20   2.26.  "Representative Plaintiff" means Jason Anderson, the named plaintiff in

21   the Action.

22   2 27.  "Start Noise" means piston or piston pin noise that occurs at initial engine

23   start-up and disappears shortly after the engine warms up

24   2.28.  "Unknown Claims" means any Released Claim that Plaintiff or Class

25   Members do not know or suspect to exist at the time of the release provided for herein,

26   including without limitation those that, if known, might have affected the Class

27

28

1  Member's settlement and release pursuant to the terms of this Agreement or the Class

2  Member's decision not to object to the settlement terms memorialized herein.

3      2.29.  "Unreimbursed Repair Expenses" means the amount of any repair expense

4  or partial repair expense paid by the Class Member which is not and was not (a) paid for

5  or reimbursed under the terms of the Class Member's extended warranty, service

6  contract or GMPP, (b) payable or reimbursable under the terms thereof, and (c) paid for

7  or reimbursed by GM or any Authorized GM dealer

8      2.30.  "Valid Claim" means and refers to a Claim that has been deemed eligible

9  for payment or other relief in accordance with the terms of this Agreement

10  **III. CLASS RELIEF, CLASS NOTICE AND CLAIMS ADMINISTRATION,**

11  **ATTORNEYS' FEES AND COSTS**

12      3.1.   The following relief is available to Class Members who submit Valid

13  Claims

14      3.2.   Class Members can make Claims for multiple settlement benefits and

15  receive all benefits for which they are eligible, conditioned upon submission of a signed

16  and valid Claim Form and any required documents as further provided below  This

17  includes benefits for multiple Unreimbursed Repair Expenses, again conditioned on

18  eligibility and submission of a signed and valid Claim Form and any required

19  documents

20      3.3    **Reimbursement of Purchase Price of GMPPs.**

21      By using available GM or GMAC Insurance records, GM will identify Class

22  Members who purchased General Motors Protection Plans ("GMPPs") for Class

23  Vehicles and determine which of them purchased their GMPPs (a) within 90 days of

24  retail delivery of their Class Vehicle and (b) more than 90 days thereafter.  These Class

25  Members will be eligible for reimbursement of the purchase price of their GMPPs

26  subject to the provisions of Paragraphs A or B below if they (1) complete and return a

27  timely and valid Claim Form (in the form of Exhibits E-1 or E-2 hereto), and (2) in the

28

case of Exhibit E-1 Claim Forms **only**, submit the required documentation described below.

    A.    **GMPP Purchasers Within 90 Days of Retail Delivery.** GM will reimburse each Class Member in this group for the purchase price of the GMPP paid by the Class Member if the Class Member completes, signs under penalty of perjury and returns an Exhibit E-1 Claim Form and supplies appropriate documentation showing that his or her Silverado has or had Start Noise by the Claim Deadline.

    B.    **GMPP Purchasers More Than 90 Days After Retail Delivery** GM will reimburse each Class Member in this group for the purchase price of the GMPP paid for by the Class Member if the Class Member completes, signs under penalty of perjury and returns a signed Exhibit E-2 Claim Form by the Claim Deadline.

    **3.4.**    **Reimbursement of Customer-Paid Start Noise Repair Expense.** For each Class Member who during the Applicable Warranty Period incurred Unreimbursed Repair Expenses for a repair to address concerns about Start Noise, upon timely receipt of (i) the Class Member's completed, signed and valid Claim Form (E-1, E-2 or E-3) attesting under penalty of perjury that he or she paid for an engine repair to address a concern about Start Noise and (ii) appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order), GM will fully reimburse the Class Member for the repair expense.

    **3.5.**    **Constant Noise Evaluation and Appropriate Repairs.**

    (a)    For each Class Member who completes, signs and returns a timely and valid Claim Form, attesting under penalty of perjury that prior to the expiration of the Limited Warranty Period the Class Member made inquiry or expressed concerns to an authorized GM dealer or GM about Constant Noise and did not receive a repair, GM

1    will, within twenty-one (21) days of the Effective Date mail the Class Member

2    instructions explaining how the Class Member may obtain an engine noise evaluation

3    from any authorized Chevrolet dealer in California. GM will, upon presentation of the

4    Class Vehicle to an authorized Chevrolet dealer, cause the dealer to provide a current

5    noise evaluation of the Class Vehicle at no cost to the Class Member

6        (b)      If the current noise evaluation confirms that the Class Vehicle has

7    Constant Noise, GM will offer (at the Class Member's option) repairs to address,

8    remedy or eliminate Constant Noise ("Constant Noise Repairs"), including where

9    needed replacement of appropriate components. Any Constant Noise Repair that is

10    accepted by the Class Member pursuant to this paragraph will be performed at no cost

11    to the Class Member.

12        **3.6.**    **Reimbursement for Listed Engine Repairs.** For each Class Member

13    who completes, signs and returns a timely and valid Claim Form (E-1, E-2 or E-3)

14    attesting under penalty of perjury that (a) the Class Member made inquiry of or

15    expressed concerns to an authorized GM dealer or GM about Start Noise prior to

16    expiration of the Limited Warranty Period, and (b) the Class Member incurred

17    Unreimbursed Repair Expenses for any of the engine repairs listed below within 6 years

18    or 100,000 miles of retail delivery (whichever came first), GM will reimburse the Class

19    Member for 75 percent (75 %) of the repair expense shown on appropriate written

20    documentation of the repair such as a repair order. The engine repairs eligible for this

21    reimbursement shall include **only** Unreimbursed Repair Expenses for the following

22    engine components:

23        •   cylinder block, heads, crankshaft and bearings

24        •   crankshaft seals – front and rear

25        •   camshaft and bearings

26        •   connecting rods and pistons

27        •   valve train (including valve seals, valve covers and internal parts)

28

- timing gears
- timing chain/belt and cover
- oil pump, oil pump housing, oil pan
- engine seals and gaskets
- lubricated internal engine parts
- water pump
- intake and exhaust manifolds
- flywheel
- harmonic balancer
- engine mounts

3.7.    **GM's Right To Offset Prior Payments and Enforce Prior Settlements and Releases.** GM shall have the right to reduce any amount to be reimbursed by any amount previously paid by GM or any affiliate of GM for the same expense or that is or was payable or reimbursable under the Class Member's extended warranty, service contract, or GMPP. GM also shall have the right to enforce fully the terms of any release, judgment, arbitration award or other adjudication obtained in connection with any Class Member's prior claim concerning a Class Vehicle

3.8.    **Mailing of Class Action Settlement Notice.**  Subject to the terms of the Preliminary Approval Order, GM or its designee shall, within thirty (30) days of entry of the Preliminary Approval Order cause the Class Action Settlement Notice to be sent by first-class mail to all Class Members whose names and mailing addresses appear on the vehicle registration data obtained from The Polk Company on or about May 30, 2007, which data shall be updated prior to mailing using the U S. Postal Service's NCOA (National Change of Address) database

3.9.    **Mailing of Final Notice and Claim Forms; Submission of Claims.**  No later than twenty-one (21) days after entry of Final Judgment,  GM shall cause the Final Notice, substantially in the form attached as Exhibit D, and the appropriate Claim

1  Forms (substantially in the forms attached as Exhibits E-1 through E-3) to be sent by

2  first-class mail to all Class Members shown on the Class Action Settlement Notice

3  mailing list compiled for the mailing pursuant to paragraph 3 8 above, which data shall

4  be updated again prior to mailing using the U.S Postal Service's NCOA (National

5  Change of Address) database.  Any Class Member may submit a Claim Form to GM at

6  any time after receiving Final Notice and prior to the Claims Deadline

7      **3.10.  Claims Evaluation, Resolution and Payment.**  GM agrees to process all

8  Claims submitted pursuant to this Agreement in good faith consistent with the terms of

9  this Agreement, and to disburse settlement payments to Class Members who submit

10  timely Valid Claims   GM will carry out these duties in accordance with the procedures

11  and guidelines set forth below.  Consistent with the terms of this Agreement, Class

12  Counsel reserves the right to respond to Class Member inquiries, to use reasonable

13  efforts to resolve disputes, if any, in good faith with GM and, failing consensual

14  resolution, to move the Court for an order compelling compliance with the terms and

15  provisions of this Agreement

16      **3.11.  Claims Reporting, Processing and Resolution**

17      (a)      Within twenty-one (21) days of the Effective Date, GM shall do each of

18  the following

19          (i)     send Class Counsel a list of Valid Claims (i e , Class Member's

20  name, address and VIN) (the "Valid Claims List") including the value of settlement

21  benefits under paragraphs 3.3 through 3 6 of this Agreement,

22          (ii)     send Class Counsel a list of Claims that either have been denied or

23  reduced (pursuant to paragraph 3 7, above, or otherwise), and for each denied or

24  reduced Claim a clear description of the basis for the denial or reduction,

25          (iii)     send each Class Member whose Claim has been denied or reduced a

26  written communication explaining the basis for the denial or reduction and informing

27  the Class Member of his/her/its option to challenge the denial or reduction (as set forth

28

below), and furnish a copy of each such written communication and the Class Member's Claim Form to Class Counsel; and

(iv)  send all Class Members whose Claims are determined to be deficient in one or more respects (e.g., because the Class Member forgot to sign the Claim Form), a deficiency notice informing the Class Member that he/she/it has 21 days after the receipt of that notice to cure the deficiency. If a Class Member fails to cure the deficiency within 21 days after receipt of the notice to cure, GM may deny the Claim and send the Class Member the written communication described in paragraph *(ii)* above (with a copy to Class Counsel).

(b)    A Class Member may challenge a Claim denial or reduction by notifying GM and Class Counsel, by first-class mail or email, within 21 days after GM has mailed the notification of claim denial or reduction to the Class Member, and providing GM and Class Counsel a statement of the reason(s) the Class Member is disputing the Claim denial or reduction. GM and Class Counsel shall meet and confer in a good faith effort to resolve the Class Member's challenge

(c)    If, after good faith attempts at resolution, the Class Member, Class Counsel and GM are not able to agree on a disposition of the Class Member's Claim, the Class Member may instruct Class Counsel to submit the disputed Claim to Judge West, or if Judge West is unavailable, to Judge Lichtman or another judicial officer of the Los Angeles Superior Court to be agreed upon by the parties or assigned by the Court, for final resolution  As a convenience to the Class Member, GM, Class Counsel and the Court, the parties may combine all disputed Claims so they may be adjudicated together in a single proceeding  Subject to the calendar conditions of the Court, GM and Class Counsel agree to use their best efforts to submit any unresolved disputes to the Court within seventy-five (75) days of the Effective Date.

1   **3.12.  Payment of Valid Claims.**

2   (a)    As soon as reasonably practicable, and in no event later than twenty-one

3   (21) days after the Effective Date, GM shall send, by first-class mail, to each Class

4   Member with a Valid Claim a settlement payment check in the amount of the Class

5   Member's Valid Claim.

6   (b)    Class Members eligible for settlement payments who receive a deficiency

7   notice and who timely cure the deficiency will be sent a settlement check within fifteen

8   (15) days after the deficiency has been cured and GM has determined the Claim to be a

9   Valid Claim.

10   (c)    Class Members eligible for settlement payments and who receive a notice

11   that their Claim has been reduced will be entitled to receive a settlement check, as

12   follows   (1) if the Class Member does not timely challenge the reduction, the Class

13   Member will be sent a settlement check in the amount of the reduced Claim within

14   thirty (30) days of the date the communication specified in paragraph 3.11(a)(ii) was

15   mailed to the Class Member; ALTERNATIVELY, (2) if the Class Member challenges

16   the reduction, the Class Member will be sent a settlement check within fifteen (15) days

17   after the date the Class Member's challenge is finally resolved and the amount of the

18   settlement payment to which the Class Member is entitled is finally determined either

19   through the meet and confer efforts of the Class Member, Class Counsel and GM, or by

20   order of the Court, as specified in paragraph 3 11 above.

21   **3.13.  Costs of Class Notice and Claims Administration.**  GM stipulates and

22   agrees that it will pay all notice and claims administration costs.

23   **3.14.  Notice to Authorized Chevrolet Dealers in California.**  GM shall

24   prepare an advisory, which GM will share with Class Counsel, informing authorized

25   Chevrolet dealers in California of the pertinent Settlement terms and procedures   GM

26   shall send the advisory to Chevrolet dealers in California within twenty-one (21) days of

27   the Effective Date.

28

1    **3.15.  Spanish Language Notices.**  Class Counsel shall, by no later than the

2    date the Class Action Settlement Notice is mailed to Class Members, post English-

3    language and Spanish-language versions of the Class Action Settlement Notice (which

4    Spanish-language translation shall be paid for by GM as a claims administration

5    expense under paragraph 3 13 above) on Class Counsel's website, at:

6    www.GirardGibbs/SilveradoSettlement.com.

7    **3.16.  Attorneys' Fees and Documented Costs and Expenses, and Incentive**

8    **Payment to Representative Plaintiff.**  After an agreement was reached as to the

9    principal terms and conditions of this Agreement, and with the assistance of Judge

10   West, the Parties entered into discussions regarding an Incentive Award to the

11   Representative Plaintiff, Attorneys' Fees for Class Counsel, and reimbursement of

12   Class Counsel's Documented Costs and Expenses, as described herein.  Pursuant to

13   those discussions, the Parties agree that, prior to the Fairness Hearing and entry of the

14   Final Judgment, Class Counsel may apply to the Court for an Incentive Award to

15   Representative Plaintiff and for an award of Attorneys' Fees.  GM agrees not to oppose

16   either application provided that Class Counsel does not request an Incentive Award for

17   Representative Plaintiff in excess of $7,500.00, and does not request a total and all-

18   inclusive Attorneys' Fees award in excess of $1,950,000  GM also agrees not to oppose

19   an application for reimbursement of Class Counsel's Documented Costs and Expenses,

20   subject to reasonable documentation being provided to the Court, and provided that said

21   application does not request reimbursement of Document Costs and Expenses in excess

22   of $215,000.

23   **3.17.  GM's Payment Agreement**  Subject to the other terms of this

24   Agreement, GM agrees to pay the Incentive Award and the Attorneys' Fees awarded by

25   the Court provided that the Incentive Award does not exceed $7,500 00, and the

26   Attorneys' Fees award does not exceed $1,950,000 00.  GM also agrees to reimburse

27   Class Counsel's Documented Costs and Expenses in the amount applied for and

28

1    awarded by the Court, subject to the limitations set forth in paragraph 3.16, above.

2    Such payments will not reduce benefits available to Class Members nor will Class

3    Members be required to pay any portion of the Incentive Award, Attorneys' Fees or

4    Documented Costs and Expenses. The Class Notice will advise the Class Members of

5    Class Counsel's intent to seek an award of Attorneys' Fees and an Incentive Award the

6    Representative Plaintiff, including the amounts thereof. The amounts actually awarded

7    by the Court shall not affect the other terms of the settlement which shall remain in full

8    force and effect.

9        **3.18.  Deposit of Funds.** Within five (5) business days of the Court granting

10    final approval of the Settlement, GM in full satisfaction of its monetary obligations to

11    Class Counsel will deposit all sums awarded as an Incentive Award for the

12    Representative Plaintiff, all sums awarded as Attorneys' Fees for Class Counsel, and all

13    sums awarded as reimbursement for Class Counsel's Documented Costs and Expenses,

14    into an interest-bearing bank account established at Union Bank of California, 44

15    Montgomery Street, San Francisco, California, or such other bank to be agreed upon by

16    the Parties. Within ten (10) days of the Settlement's Effective Date, and absent any

17    appeal by an objector from an order awarding an Incentive Award to the named plaintiff

18    or awarding Attorneys' Fees to Class Counsel, GM will transfer the sums deposited in

19    the Union Bank of California (or other agreed-upon) account, together with any accrued

20    interest, from the Union Bank of California (or other agreed-upon) account to an

21    Attorney-Client Trust Account established by Class Counsel as directed by Class

22    Counsel. In the event that the Settlement does not become effective, GM retains all

23    right to the amounts deposited in the Union Bank of California (or other agreed-upon)

24    account and may withdraw and retain the full amounts deposited, including any interest

25    earned. Notwithstanding the foregoing, in the event that a trial court ruling or appeal

26    results in the reduction of the Incentive Award, Documented Costs and Expenses or

27    Attorney's Fee Award, then GM on the later of ten days following the Effective Date or

28

1   ten days following the final disposition of any appeal shall transfer the reduced

2   amount(s) awarded to Plaintiff and/or Class Counsel to Class Counsel's trust account,

3   together with a pro rata share of the interest earned, and GM shall receive the remaining

4   balance of the account, including a pro rata share of the interest earned.

5       **3.19.**  <u>Limitation on GM's Liability.</u>  GM shall have no liability or obligation

6   to pay any fees, expenses, costs or disbursements to, or incur any expense on behalf of,

7   any person, either directly or indirectly, in connection with this Action, the Agreement,

8   or the proposed settlement, other than the amounts expressly provided for in the

9   Agreement

10      **IV. SETTLEMENT APPROVAL, RELEASE AND DEFAULT**

11      4.1.    Promptly after execution of this Agreement, Plaintiff and GM will apply

12  to the Court for entry of the proposed Preliminary Approval Order, attached hereto as

13  Exhibit B, and setting of a hearing for the Court to consider (a) whether to make final its

14  certification of the Class for purposes of the Settlement but not for trial purposes, (b)

15  whether to grant final approval of the Settlement as fair, reasonable and adequate for the

16  Class as a whole, (c) whether to grant Class Counsel's application for Attorneys' Fees,

17  Documented Costs and Expenses and the Representative Plaintiff's Incentive Award

18  and, if so, in what amounts; and (d) any related matters as appropriate ("Fairness

19  Hearing")

20      4 2     GM shall cause the Class Action Settlement Notice to be printed and

21  mailed to Class Members in accordance with the terms of the Preliminary Approval

22  Order and paragraph 3 8 of this Agreement  No later than the day the motion for final

23  approval of the Settlement is to be filed under the Preliminary Approval Order, GM or

24  its designee will file an affidavit or declaration attesting it has mailed the Class Action

25  Settlement Notice to Class Members in accordance with the Preliminary Approval

26  Order.

27

28

1        4.3.    In accordance with the Preliminary Approval Order or such other or

2    further order of the Court, Class Counsel will file a motion for final approval of the

3    Settlement and an application for Attorneys' Fees, Documented Costs and Expenses,

4    and an Incentive Award for the Representative Plaintiff, and the Parties will brief the

5    motion and application.  GM may, but is not obligated to, join in the motion for final

6    approval of the Settlement

7        4 4    The Parties will appear at the Fairness Hearing and present their

8    arguments in support of final approval of the Settlement and entry of the proposed Final

9    Judgment, and Class Counsel will present its arguments in support of an award of

10    Attorneys' Fees, Documented Costs and Expenses, and an Incentive Award for the

11    Representative Plaintiff  GM will not object to or oppose an award of Attorneys' Fees,

12    Documented Costs and Expenses and an Incentive Award for the Representative

13    Plaintiff if the amounts sought do not exceed the limits set forth in paragraphs 2.15, 3 16

14    and 3 17

15        4 5    Representative Plaintiff and each Class Member stipulates and agrees that,

16    upon the Effective Date, he, she, or it shall be deemed to have, and for the consideration

17    provided for herein and by operation of the Final Judgment shall have, released, waived

18    and discharged his, her or its Released Claims as defined herein and shall have

19    expressly waived and relinquished, to the fullest extent permitted by law, the provisions,

20    rights, and benefits of section 1542 of the California Civil Code, and of any similar law

21    of any other state, which provides   "a general release does not extend to claims which

22    the creditor does not know or suspect to exist in his or her favor at the time of executing

23    the release, which if known by him or her must have materially affected his or her

24    settlement with the debtor "  Representative Plaintiff and Class Members may hereafter

25    discover facts in addition to or different from those which he or she now knows or

26    believes to be true with respect to the subject matter of the Released Claims, but

27    Representative Plaintiff and Class Members, upon the Effective Date, shall be deemed

28

1    to have, and by operation of law shall have, fully, finally and forever settled, released

2    and discharged any and all Released Claims, known or unknown, suspected or

3    unsuspected, contingent or non-contingent, whether or not concealed or hidden, that

4    now exist or heretofore may have existed upon any theory of law or equity now existing

5    or coming into existence in the future, including but not limited to, conduct that is

6    negligent, reckless, intentional, with or without malice, or a breach of any duty, law or

7    rule, without regard to the subsequent discovery or existence of such different or

8    additional facts.

9        4.6    GM agrees that, upon the Effective Date, it shall be deemed to have

10    released, waived and discharged any and all claims or causes of action, known or

11    unknown, against Representative Plaintiff Jason Anderson or Class Counsel based on or

12    in any way related to any of the allegations, acts, omissions, transactions, events or

13    other matters alleged, claimed or at issue in the Action, provided that this release shall

14    not extend to any claim for breach of this Agreement or violation of the Final Judgment

15    entered pursuant to the terms hereof

16    **V. PRELIMINARY INJUNCTION PENDING FAIRNESS HEARING.**

17        5 1    Pending Court approval of this Agreement at the Fairness Hearing, all

18    potential Class Members who have not previously excluded themselves from the Class

19    shall be preliminarily enjoined and barred (i) from filing or commencing any lawsuit in

20    any jurisdiction based on or relating to the claims and causes of action, or the facts and

21    circumstances relating thereto, in this Action and/or the Released Claims, and (ii) from

22    filing or commencing any other lawsuit as a class action on behalf of Class Members

23    (including by seeking to amend a pending complaint to include class allegations or

24    seeking class certification in a pending action) based on or relating to the claims and

25    causes of action, or the facts and circumstances relating thereto, in this Action and/or

26    the Released Claims.

27    //

28

*Stipulation of Settlement*
20

# VI. OBJECTIONS TO SETTLEMENT

6 1    Any Class Member who wishes to object to the Agreement, the proposed settlement, the Incentive Award or the request for Attorneys' Fees and Expenses, must serve a written objection that must be postmarked no later than forty-five (45) days after the date of mailing of the Class Action Settlement Notice. The written objection must be filed and served as follows

| Clerk of the Court | Class Counsel | GM's counsel |
|---|---|---|
| Clerk of the Court | Elizabeth Pritzker | Gregory R Oxford |
| Superior Court of the State of California | Girard Gibbs LLP | Isaacs Clouse Crose & Oxford LLP |
| County of Los Angeles | 601 California St , 14th Floor | 21515 Hawthorne Blvd , Suite 950 |
| Central Civil West Courthouse | San Francisco, CA 94108 | Torrance, CA 90503 |
| 600 S Commonwealth Avenue | | |
| Los Angeles, CA 90005 | | |

The written objection must include *(i)* the objector's name, address and telephone number, *(ii)* the Vehicle Identification Number of the vehicle that establishes that the objector is a member of the Class, *(iii)* the name of this case and the case number, *(iv)* the specific reason and basis for the objection, including any legal and factual support the objector wishes to bring to the Court's attention and any evidence in support of each objection

6.2    If the objector intends to appear at the Fairness Hearing through counsel, the comment must also state the following   *(i)* the identity of all attorneys representing the objector who will appear at the fairness hearing, *(ii)* the identity and number of Class Members represented by objector's counsel, *(iii)* the number of such represented Class Members who have opted out of the Class and the Settlement, *(iv)* the number of such represented Class Members who have remained in the Settlement and have not objected; *(v)* the date the objector's counsel assumed representation for the objector, and *(vi)* a list of the names of all cases where the objector's counsel has objected to a class action settlement in the last three years. Objecting Class Members must also make themselves available for deposition by Class Counsel and/or GM's counsel in their

1    county of residence, between the time the objection is filed and seven (7) days before

2    the date of the Fairness Hearing   To appeal from any provision of the order approving

3    the Settlement as fair, reasonable and adequate, the award of incentive payments, or to

4    the award of reasonable attorneys' fees and documented costs and expenses paid by

5    Defendant and awarded to Class Counsel, the objector must appear in person, or

6    through counsel, or seek leave of Court excusing such appearance prior to the fairness

7    hearing, or as otherwise may be permitted by the Court at the fairness hearing.  In

8    addition, the objector must demonstrate compliance with paragraph 6 1 to show that he

9    or she is a member of the Class.

10          6 3    Class Members, or their attorneys, intending to make an appearance at the

11   Fairness Hearing, must deliver a Notice of Intention to Appear to Class Counsel and

12   Defendant's Counsel identified above, and have this Notice file-stamped by the Court,

13   no later than thirty (30) days before the Fairness Hearing.  The Notice of Intention to

14   Appear must. (i) state how much time the Class Member and/or their attorney

15   anticipates needing to present the objection, (ii) identify, by name, address, telephone

16   number and detailed summary of testimony, any witnesses the Class Member and/or

17   their attorney intends to present any testimony from; and (iii) identify all exhibits the

18   Class Member and/or their attorney intends to offer in support of the objection and

19   attach complete copies of all such exhibits

20          6.4.    Any Class Member and/or their attorney who fails to comply with the

21   provisions of the foregoing paragraphs 6 1 through 6.3 shall be deemed to have waived

22   and forfeited any and all rights he or she may have to appear separately and/or object,

23   and shall be bound by all the terms of the Agreement.

24                      VII.  GENERAL PROVISIONS.

25          7.1.    All Parties agree that this Agreement was drafted jointly by counsel for

26   the Parties at arm's length and that the Agreement including its Exhibits constitutes the

27   sole agreement between the Parties concerning the subject matter hereof.  Further, the

28

1  Parties intend and agree that this Agreement, including its Exhibits, is a fully integrated

2  and enforceable Agreement, and further stipulate and agree that:  *(i)* there are no other

3  agreements, written or oral, between the Parties concerning this subject matter; *(ii)* no

4  representations, warranties or inducements have been made to any Party concerning the

5  Settlement or this Agreement other than are contained in the Agreement; and *(iii)* this

6  Agreement shall not be modified or amended except by a signed writing executed by or

7  on behalf of all Parties and approved by the Court.

8          7 2.    The Parties expressly agree that the terms and provisions of this

9  Agreement are contractual and not a mere recital and shall survive the execution of this

10  Agreement and entry of the Final Judgment and shall continue in full force and effect

11  thereunder

12          7 3     The Agreement will terminate at the sole option and discretion of GM or

13  Class Counsel if  (i) the Court, or any appellate court(s), rejects, modifies or denies

14  approval of any material portion of the Agreement or the proposed settlement (except

15  for the Incentive Award, Reimbursement of Designated Costs and Expenses and the

16  Award of Attorneys' Fees and Expenses as to which the provisions of paragraph 3 17

17  shall control), including, without limitation, the terms of relief, the findings of the

18  Court, the provisions relating to notice, the definition of the Class and/or the scope or

19  terms of the Released Claims, or (ii) the Court, or any appellate court(s), does not enter

20  or affirm, or alters or expands, any material portion of the Final Judgment  In such

21  event, this Agreement and all negotiations shall be without prejudice to the Parties and

22  shall not be admissible into evidence, and shall not be deemed or construed to be an

23  admission or confession by any of the Parties or any fact, matter or proposition of law.

24          7.4.    If this Stipulation is not approved by the Court or the Settlement is

25  terminated or there is a failure to reach the Effective Date in accordance with the terms

26  of this Stipulation, the Parties and all Class Members will be restored to their respective

27  positions as of the date immediately preceding the commencement of settlement

28

1   discussions in the Action, including their respective positions on class certification   In

2   such event, the terms and provisions of this Stipulation, will have no further force and

3   effect with respect to the Parties, neither the fact nor the terms of the Settlement will be

4   used in this Action or in any other proceeding for any purpose; and any Judgment or

5   order entered by the Court in accordance with the terms of this Stipulation will be

6   treated as vacated, nunc pro tunc   No order of the Court or modification or reversal on

7   appeal of any order of the Court concerning any Incentive or Attorneys' Fee Award or

8   Reimbursement of Documented Costs and Expenses will constitute grounds for

9   cancellation or termination of this Stipulation.

10          7.5    The Agreement shall be governed by and interpreted according to the laws

11   of the State of California without regard to its conflicts of law provisions

12          7.6    If any disputes arise regarding the implementation or interpretation of this

13   Agreement, the Parties agree to use reasonable efforts to resolve the dispute, including

14   consultation or mediation with Judge West, failing which the parties agree to present the

15   dispute Judge Lichtman or another judicial officer of the Los Angeles Superior Court to

16   be agreed upon by the parties or assigned by the Court for final resolution

17          7 7    Whenever the Agreement requires or contemplates that one Party shall or

18   may give notice to the other, notice shall be provided by facsimile and/or next-day

19   (excluding weekends and holidays) express delivery service as follows·

20          a    If to Defendant, then to

21   L. Joseph Lines, III                     Gregory R  Oxford
     General Motors Corporation               Isaacs Clouse Crose & Oxford LLP
22   Mail Code 482-026-601                     21515 Hawthorne Boulevard, Suite 950
     400 Renaissance Center                   Torrance, California 90503
23   P.O. Box 400                              (310) 316-1990
     Detroit, Michigan 48265-4000             (310) 316-1330 (FAX)

24

25   //

26   //

27   //

28

1          b.     If to Plaintiff, then to Class Counsel

2 Elizabeth C. Pritzker
Girard Gibbs LLP
3 601 California St., 14th Floor
San Francisco, California 94108
4 (415) 981-4800
(415) 981-4846 (FAX)
5

6      7.8     The Parties reserve the right, subject to the Court's approval, to agree

7 upon any reasonable extensions of time that might be necessary to carry out any of the

8 provisions of the Agreement.

9      7.9     In no event shall the Agreement, any of its provisions or any negotiations,

10 statements, or court proceedings relating hereto in any way be construed as, offered as,

11 received as, or used as an admission of liability in any judicial, administrative,

12 regulatory, arbitration or other proceeding. Further, this Agreement shall not be offered

13 or admitted into evidence in any proceeding, except the proceeding to seek court

14 approval of this settlement or in a proceeding to enforce the terms of the settlement.

15      7.10.    The Parties, their successors and assigns, and their attorneys undertake to

16 implement the terms of the Agreement in good faith, and to use good faith in resolving

17 any disputes that may arise in the implementation of the terms of the Agreement

18      7.11    The Parties, their successors and assigns, and their attorneys agree to

19 cooperate fully with one another in seeking Court approval of the Agreement and to use

20 their best efforts to effect the prompt consummation of the Agreement and the proposed

21 settlement

22      7.12    The Court will retain jurisdiction to the extent allowed by law with respect

23 to implementation and enforcement of the terms of this Stipulation, and the Parties

24 submit to the jurisdiction of the Court for purposes of implementing and enforcing the

25 Settlement All applications with respect to any aspect of the Settlement shall be

26 presented to and determined by the Court

27 //

28

1       7 13.  Each person executing this Agreement warrants that he or she has the

2  authority to do so

3       7.14.  The Agreement may be signed in counterparts, each of which shall

4  constitute a duplicate original.

5

6  **APPROVED AND AGREED TO BY AND ON BEHALF OF**
   **PLAINTIFF JASON ANDERSON AND THE CLASS**

7  Date.  November 13, 2008

8  GIRARD GIBBS LLP

9

10  By:
       Elizabeth C  Pritzker
    Attorney for Plaintiff

11  Jason Anderson and the Class

12

13  **APPROVED AND AGREED TO BY AND ON BEHALF OF**
    **DEFENDANT GENERAL MOTORS CORPORATION**

14

15  Date·  November 13, 2008

16  ISAACS CLOUSE CROSE & OXFORD LLP

17

18  By
      Gregory R. Oxford
    Attorney for Defendant

19  General Motors Corporation

20

21

22

23

24

25

26

27

28



**EXHIBIT 2**

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT
### *In Re General Motors Cases (Anderson v. General Motors Corp.), JCCP No. 4396*

# FOR CALIFORNIA RESIDENTS WHO OWN OR LEASE 1999-2003 CHEVROLET SILVERADO TRUCKS WITH 4.8, 5.3, 6.0 OR 8.1 LITER ENGINES

### You May Be Able To Obtain Cash Reimbursements If Your Vehicle Has Piston Or Piston Pin Noise Under A Proposed Class Action Settlement.

**The Settlement:** There is a proposed Class Action Settlement involving California owners and lessees of certain 1999-2003 Chevrolet Silverado trucks who have piston or piston pin noise in their vehicles. This noise is sometimes referred to as cold engine knock, rough idle, piston slap, cold tick or cold start noise.

**Persons Entitled to Benefits** You are a Class Member and entitled to benefits under the Settlement if 1) you live in or purchased or leased one of these Silverado vehicles in California, 2) you owned or leased the vehicle as of June 15, 2007, and 3) the vehicle makes or has made piston or piston pin noise.

**Available Settlement Benefits** The Settlement must be approved by the Superior Court of California, County of Los Angeles. If approved, available benefits will include.

For those people with piston or pin noise only at startup

- Full cash reimbursement of the purchase price of any General Motors Protection Plan ("GMPP"),

- Full cash reimbursement of expenses paid for piston or piston pin noise repairs during the Limited Warranty period or, if applicable, during the GMPP period.

- Cash reimbursement of 75% for certain engine repair expenses within 6 years or 100,000 miles of retail delivery of the vehicle, and

For those people with constant piston or pin noise

- A free noise evaluation by an authorized GM dealer and, if needed, a free engine repair

See pages 2-3 of this Notice for additional information about these benefits and required documentation.

**Settlement Approval and Claims Process.** If the Court approves the Settlement, a Claim Form will be mailed to you. You may use the Claim Form to make a claim for settlement payments or other benefits

**Summary of Class Members' Rights and Options Under the Settlement** The purpose of this Notice is to inform you, as a potential Class Member, of the terms of the proposed Settlement, and your rights and options under the Settlement. You may

| | |
|---|---|
| **PARTICIPATE IN THE SETTLEMENT** | If you agree with the Settlement, you need not do anything until after the Court decides whether to approve the Settlement. If the Settlement is approved, you will be sent a Claim Form and instructions about how to claim your settlement benefits |
| **OBJECT OR COMMENT ON THE SETTLEMENT** | Write the Court about why you do, or do not, like the Settlement |
| **ATTEND THE HEARING** | Ask to speak to the Court about the fairness of the Settlement |
| **DO NOTHING** | Receive no payment or other benefit. Become barred from bringing or being part of any other lawsuit concerning these issues |

---

*This Notice May Affect Your Rights. Please Read It Carefully*
For more information or a copy of this Notice in Spanish, call 1-866-981-4800
or visit www.girardgibbs.com/silverado

*Este Aviso Le Informa Sobre un Acuerdo Legal Propuesto Que Puede Afectar Sus Derechos. Por Favor Lea Este Aviso Con Cuidado. Para mas informacion o una copia de este aviso en español, llama 1-866-981-4800 o lo visita*
www.girardgibbs.com/silverado

## PLAINTIFFS' STATEMENT ABOUT THE CASE

This lawsuit is brought by Plaintiff Jason Anderson against General Motors Corporation ("GM")    The lawsuit alleges that GM has an Engine Knock Noise "Adjustment Program" under which it provides certain owners and lessees of Silverado trucks with extended warranties,    General    Motors    Protection    Plans ("GMPPs") or other benefits when they complain that their vehicles have or have had piston or piston pin noise at initial start up that goes away shortly after the engine warms up ("Start Noise")    Plaintiff claims GM violated California's "Secret Warranty" Law, Cal Civil Code §§ 1795 90 et seq , and Unfair Competition Law, Cal Bus & Prof Code § 17200 et seq , because GM failed to notify all 1999-2003 Silverado owners and lessees about its Adjustment Program, or inform them that they may be eligible for a free GMPP or other benefits offered under that Program

### GM'S STATEMENT ABOUT THE CASE:

GM denies Plaintiff's claims, and contends that it lawfully assisted a small percentage of Silverado owners and lessees whose trucks may make a particular type of engine knock noise at cold start-up that goes away within a few seconds    GM contends this type of noise has no adverse effect on the durability, reliability or performance of the engine    GM contends it has given assistance in the form of free GMPPs or other goodwill measures to promote customer satisfaction, and that its goodwill measures do not constitute a "secret warranty" or "Adjustment Program" under California law

### CERTIFIED CLASS ACTION

The case was certified as a class action by a Los Angeles Court on behalf of the following Class

> All California owners and lessees of 1999-2003 Chevrolet Silverados equipped with 4 8 liter, 5 3 liter, 6 0 liter or 8 1 liter engines ("Class Vehicles") who (1) Have an engine "knock, ping or slap" noise in their vehicles, and (2) Were not given notice of the condition giving rise to or the terms of GM's Engine Knock Noise Adjustment Program

For purpose of this Notice and the Settlement, "knock, ping or slap noise" has the same meaning as "Start Noise" (piston or piston pin noise at initial engine start up that disappears shortly after the engine warms up), or "Constant Noise," (piston or piston pin noise that is not "Start Noise," for example, noise that continues or begins after the engine warms up)

*This is not a solicitation from a lawyer*

### AGREEMENT TO SETTLE:

Plaintiff and Class Counsel believe the proposed Settlement is in the best interests of the Class, that is desirable to settle this lawsuit to avoid the uncertainties of continued litigation, and that the terms and benefits of the Settlement described in this Notice provide fair, reasonable relief to the Class

GM expressly denies any wrongdoing and does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any fact or any claim asserted in the lawsuit    GM has concluded, however, that it is desirable to settle the lawsuit upon the terms and conditions described in this Notice because it will (1) fully resolve all claims raised in the lawsuit, (2) avoid the expense, burden and uncertainties of continued litigation, trial or appeal, and (3) promote customer satisfaction with GM and Chevrolet vehicles

### BENEFITS AVAILABLE TO CLASS MEMBERS

If the Court approves the Settlement, Class Members will be able to make claims for multiple settlement benefits as described in paragraphs 1, 2, 3 and 4, below, and will receive all benefits for which they are eligible    This    includes    benefits    for    multiple, unreimbursed repair expenses    Unreimbursed repair expenses do not include expenses covered, paid for or reimbursed under any extended warranty, GMPP or other service contract    GM may reduce the amount to be reimbursed to a Class Member by the amount, if any, previously paid by GM or any affiliate of GM for the same expense

**If the Court Approves the Settlement, you will be mailed a Claim Form and instructions that explain (1) how to make a claim for settlement benefits, and (2) the deadline for submitting a timely claim**

The settlement benefits available to Class Members include

1. **Reimbursement of Purchase Price of GMPPs Purchased by Certain Class Members:**

   Class Members who purchased GMPPs for Class Vehicles will be eligible for reimbursement subject to the provisions of paragraphs (a) or (b) below, if they timely return a signed and completed Claim Form and required documentation, if any, as further described below

[continued on next page]

*Please do not contact the Court regarding this Notice.*

2

(a) <u>Class Members Who Purchased a GMPP Within 90 Days of Retail Delivery</u>    GM will reimburse each Class Member in this group for the full purchase price of the GMPP paid by the Class Member if the Class Member supplies appropriate documentation showing that his or her Silverado has or had Start Noise

(b) <u>Class Members Who Purchased a GMPP After 90 Days of Retail Delivery</u>    GM will reimburse each Class Member in this group for the purchase price of the GMPP paid for by the Class Member if the Class Member states under penalty of perjury that his or her Silverado has or had Start Noise

2.  <u>Customer-Paid Start Noise Repair Expense Reimbursement</u>

For each Class Member who during the Applicable Warranty Period (defined below) paid for a repair to address concerns about Start Noise for which the Class Member was not fully reimbursed, GM upon receipt of (i) a signed and completed Claim Form stating under penalty of perjury that he or she sought the repair to address a concern about Start Noise and (ii) appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order) will reimburse the Class Member for the repair expense

Only for purposes of eligibility for this settlement benefit, "Applicable Warranty Period" shall mean the GM Limited New Vehicle Warranty (3 years or 36,000 miles, whichever comes first) <u>except that</u> for those Class Members who purchased a GMPP, the time and mileage limitations for reimbursement of repair expenses under this paragraph shall be those set forth in the Class Member's GMPP (for example, 4 years or 50,000 miles, whichever comes first)

3.  <u>Constant Noise Evaluation</u>

For each Class Member who completes and returns a Claim Form which includes the Class Member's sworn statement that prior to the expiration of his or her New Vehicle Limited Warranty he or she made inquiry of or expressed concerns to an authorized GM dealer or GM about Constant Noise (i e , piston or piston pin noise that is *not* Start Noise), GM

will, upon presentation of the Class Vehicle to an authorized Chevrolet dealer, provide a current noise evaluation of the Class Vehicle If the current noise evaluation confirms that the Class Vehicle has Constant Noise, GM will offer at the Class Member's option repairs to address, remedy or eliminate Constant Noise ("Constant Noise Repairs"), including where appropriate replacement of piston assemblies or other appropriate components    Any Constant Noise Repair offer that is accepted by the Class Member pursuant to this paragraph will be performed at no cost to the Class Member

4.  <u>Partial Reimbursement for Certain Other Repairs</u>

For each Class Member who completes and returns a Claim Form which includes the Class Member's statement under penalty of perjury that he or she made inquiry of or expressed concerns to an authorized GM dealer or GM about Start Noise prior to expiration of the GM Limited New Vehicle Warranty (3 years or 36,000 miles after retail sale or lease, whichever came first) and that he or she incurred expenses for any of the engine repairs described below within 6 years or 100,000 miles of retail delivery, whichever came first, GM will reimburse the Class Member for 75 percent (75 %) of the repair expense shown on appropriate written documentation such as a repair order

The engine repairs eligible for this reimbursement <u>are limited to</u> repairs of the following engine components    Cylinder block, heads, crankshaft and bearings, crankshaft seals – front and rear, camshaft and bearings, connecting rods and pistons, valve train (including valve seals, valve covers and internal parts), timing gears, timing chain/belt and cover, oil pump, oil pump housing, oil pan, all engine seals and gaskets, lubricated internal engine parts, water pump, intake and exhaust manifolds, flywheel, harmonic balancer, and engine mounts

[continued on next page]

*This is not a solicitation from a lawyer*

3

*Please do not contact the Court regarding this Notice*

## CLAIMS PROCEDURES UPON SETTLEMENT APPROVAL

If the Court Approves the Settlement, you will be mailed a Claim Form and instructions that explain (1) how to make a claim for settlement benefits, and (2) the deadline for submitting a timely claim.

Additional details about the claims resolution process appear in the Stipulation for Settlement filed in this action.

To review an electronic copy of the Stipulation for Settlement, go to www.girardgibbs.com/silverado

## ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARD TO PLAINTIFF

In November 2006, the Los Angeles Superior Court appointed the following lawyers as Class Counsel to represent the Class in this litigation.

GIRARD GIBBS LLP
601 California Street, Suite 1400
San Francisco, CA 94108
www.girardgibbs.com

As part of the Settlement, and subject to Court approval, GM will pay up to $7,500 in an incentive award to Plaintiff Jason Anderson in recognition of his initiative and effort pursuing the matter on behalf of other California owners and lessees of Class Vehicles. In addition, subject to Court approval, GM will pay a separate sum not to exceed $1,950,000 in attorneys' fees of Class Counsel. GM will also reimburse Class Counsel for documented case costs and litigation expenses not to exceed $215,000. These amounts do not reduce the relief available to Class Members and are in addition to and separate from the other benefits available to Class Members under the Settlement.

## COSTS OF SETTLEMENT ADMINISTRATION

GM will pay the cost of notice and of the claims administration associated with the Settlement.

## DISMISSAL AND RELEASE OF CLAIMS

If the proposed Settlement is approved by the Court, then all legal claims that were asserted on behalf of Class Members in this Action will be dismissed with prejudice as to all Class Members, and all legal claims that may have been asserted in the litigation will be released. This means that Class Members will be forever barred from bringing, continuing, or being part of any other lawsuit against GM for these claims.

If the Court does not approve the proposed Settlement, the Settlement Agreement between GM and Plaintiff Jason Anderson on behalf of the certified class in the *Anderson v. General Motors Corp.* litigation will terminate and shall be null and void, and this lawsuit will remain before the Court for trial or ultimate disposition.

## FAIRNESS HEARING, DATE AND LOCATION:

The Court will hold a Fairness Hearing to consider and then decide whether to approve the proposed Settlement, and determine whether to approve the proposed award of Attorneys' Fees and Expenses to Class Counsel and the proposed Incentive Award to Plaintiff. The hearing is scheduled for March 5, 2009, at 1:45 p.m., in Dept. 322 of the Los Angeles County Superior Court, Central Civil West Courthouse, 600 S. Commonwealth Avenue, Los Angeles, California before the Hon. Peter D. Lichtman.

## PRELIMINARY INJUNCTION PENDING FAIRNESS HEARING

Pending the Fairness Hearing, all Class Members are preliminarily enjoined and barred (i) from filing or commencing any lawsuit based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, alleged in this Action and/or the Released Claims, and (ii) from filing or commencing any other lawsuit as a class action on behalf of Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action) based on or relating to the claims and causes of action, or the facts and circumstances relating thereto, alleged in this Action and/or the Released Claims.

[continued on next page]

## YOUR RIGHTS AND OPTIONS:

If you fall within the Class definition, you have the following options

1  **PARTICIPATE IN THE SETTLEMENT.** If you agree with the proposed Settlement, you need not do anything until after the Court decides whether to approve the Settlement    Thereafter, you will receive a Claim Form and instructions for submitting a claim for settlement benefits

2  **COMMENT ON THE SETTLEMENT.** You may write to the Court or Class Counsel to express your support for or opposition to the Settlement    In order to object to the Settlement, however, you must follow the procedures in paragraph 3 immediately below

3  **OBJECT TO THE SETTLEMENT** If you wish to object to the Settlement or Class Counsel's request for attorneys' fees, expenses and an incentive award for Plaintiff Jason Anderson, you must submit your objection in writing    On the first page of your written objection, you must include a prominent reference to *In Re GM Cases (Anderson v General Motors Corp )*, JCCP No  4396    Your objections must include    (a) your full name, address and telephone number, (b) the year, model and vehicle identification number of your 1999-2003 Chevrolet Silverado, (c) a statement of each objection, if any, (d) a written brief detailing the specific reasons for each objection including the legal or factual support you wish to bring to the Court's attention and any evidence you wish to submit to the Court in support of your objection(s), and (e) your signature  If you wish to speak at the Fairness Hearing (described above), you also must state in your objections or comments that you intend to appear and speak at the hearing  If you do not include this statement, you will not be entitled to speak at the hearing

Objecting Class Members who intend to testify in support of the objection either in person or by affidavit or declaration must also make themselves available for deposition by Class Counsel or by GM's counsel in their county of residence, between the time the objection is filed and at least seven (7) days before the date of the Fairness Hearing

If you intend to appear at the Fairness Hearing through counsel, your written objection(s) must also state the following    (i) the identity of all attorneys representing the objector who will appear at the Fairness Hearing, (ii) the identity and number of Class Members represented by the objector's counsel, (iii) the number of such represented Class Members who have opted out of the Class and the Settlement, (iv) the number of such represented Class Members who have remained in the Settlement and have not objected, (v) the date the objector's counsel assumed representation for the objector, and (vi) a list of the names of all cases where the objector's counsel has objected to a class action settlement in the last three years  To appeal from any provision of the Court's order approving the Settlement as fair, reasonable and adequate, the award of an incentive payment to Jason Anderson, or the attorneys' fees or documented expenses awarded to Class Counsel, the objector must appear at the Fairness Hearing in person, or through counsel, or seek leave of Court excusing such appearance prior to the Fairness Hearing, or as otherwise may be permitted by the Court at the Fairness Hearing    In addition, the objector must demonstrate compliance with this paragraph to show that he or she is a member of the Class

Class Members, or their attorneys, intending to make an appearance at the Fairness Hearing must deliver to Class Counsel and GM's counsel, and have file-stamped by the Court, no later than **February 2, 2009,** a Notice of Intent to Appear  The Notice of Intent to Appear must (i) state how much time the Class Member and/or their attorney anticipates needing to present the objection, (ii) identify, by name, address and telephone number and detailed summary of testimony, any witnesses the Class Member intends to present any testimony from, and (iii) identify all exhibits the Class Member and/or their attorney intends to offer in support of the objection and attach complete copies of all such exhibits

If you do not raise your objections according to this procedure, you will waive all objections and have no right to appeal if the Settlement is approved  You may, but need not, enter an appearance in the lawsuit and object through your own legal counsel  If you do, you will be responsible for your own attorneys' fees and costs

[continued on next page]

*This is not a solicitation from a lawyer*

5

*Please do not contact the Court regarding this Notice*

## OBJECTION/COMMENT DEADLINE:

You must mail or deliver your comments or objections, and your Notice of Intent to Appear if you wish to attend the Fairness Hearing, to the Clerk of the Court, with copies to Plaintiffs' Class Counsel and GM's counsel, for receipt no later than **February 2, 2009**, at the following addresses

### Clerk of the Court

Superior Court, County of Los Angeles
Central Civil West Courthouse
Department 322
600 S Commonwealth Avenue
Los Angeles, California 90005

### Class Counsel

Elizabeth C Pritzker
Girard Gibbs LLP
601 California Street, 4th Floor
San Francisco, California 94108

### Counsel for General Motors Corporation

Gregory R Oxford
Isaacs Clouse Crose & Oxford LLP
21515 Hawthorne Boulevard, Suite 950
Torrance, California 90503

## ADDITIONAL INFORMATION

You may wish to keep this Notice for future reference If the Settlement is approved, this Notice may be helpful in filling out your Claim Form for settlement payments or other benefits

For more information about the Settlement, or a copy of this Notice in Spanish, call 1-866-981-4800, or visit www girardgibbs com/silverado You also can direct any inquires to Class Counsel at the address listed above or by sending an email to silveradosettlement @girardgibbs com

## INFORMACIÓN ADICIONAL.

Usted puede desear guardar este aviso para la referencia futura Si el establecimiento es aprobado, este aviso puede ser provechoso en rellenar su impreso de demanda para los pagos del establecimiento u otras ventajas

Para mas información o una copia de este aviso en español, llama 1-866-981-4800 o lo visita www girardgibbs com/silverado Usted puede tambien dirigir cualesquiera investiga para clasificar consejo en la dirección enumerada sobre o enviando un email a silveradosettlement @girardgibbs com

DATED.  DECEMBER 18, 2008

BY ORDER OF THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES

*This is not a solicitation from a lawyer*

6

*Please do not contact the Court regarding this Notice*



EXHIBIT 3

1  ERIC H. GIBBS (S.B. #178658)
   ELIZABETH C. PRITZKER (S.B. #146267)
2  GIRARD GIBBS LLP
   601 California St., 14th Floor
3  San Francisco, California 94108
   Tel; (415) 981-4800, Fax: (415) 981-4846
4
5  Attorneys for Plaintiff Jason Anderson and the Class

6  GREGORY R. OXFORD (S.B. #62333)
   ISAACS CLOUSE CROSE & OXFORD LLP
7  21515 Hawthorne Boulevard, Suite 950
   Torrance, California 90503
8  Tel: (310) 316-1990, Fax: (310) 316-1330

9  Attorneys for Defendant General Motors Corporation

10  Of Counsel

11  L. JOSEPH LINES, III
    GENERAL MOTORS CORPORATION
12  Mail Code 482-026-601
    400 Renaissance Center
13  P.O. Box 400
    Detroit, Michigan 48265-4000
14  Tel· (313) 665-7386; Fax· (313) 665-7376

15              SUPERIOR COURT OF THE STATE OF CALIFORNIA

16                        COUNTY OF LOS ANGELES

17                   CENTRAL CIVIL WEST COURTHOUSE

18

| | |
|---|---|
| 19   Coordination Proceeding Special Title (Rule 1550(c)) | Judicial Council Proceeding No 4396 |
| 20   GENERAL MOTORS CASES | Orange County Superior Court No 04CC00554. |
| 21   | CERTIFIED CLASS ACTION |
| 22   This Document Relates to. | The Honorable Peter D. Lichtman |
| 23   JASON ANDERSON, on behalf of himself and all others similarly situated, | FINAL JUDGMENT |
| 24            Plaintiff, | |
| 25               v. | |
| 26   GENERAL MOTORS CORPORATION, | |
| 27            Defendant | |
| 28 | |

JUDGMENT
CASE NO JCCP 4396

1        This matter having come before the Court on the application of Representative Plaintiff Jason

2   Anderson, individually and as a representative of a class of similarly situated persons (collectively,

3   "Plaintiffs"), and General Motors Corporation ("GM") for approval of the Settlement set forth in the

4   Stipulation of Settlement and the exhibits thereto (collectively the "Agreement"), and the Court having

5   considered all papers filed, all evidence submitted and proceedings had herein and otherwise being

6   fully informed;

7        **IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

8        1        The Court has jurisdiction over the subject matter of this litigation, and over all parties

9   to the litigation, including all members of the following Class defined in the Court's previous order

10  granting class certification:   "All California owners and lessees of 1999-2003 model year Chevrolet

11  Silverados equipped with a 4.8 liter (LR4, 5.3 liter (LM7), 6.0 liter (LQ4, L59) or 8.1 liter (L18)

12  engines who (1) Have an engine "knock, ping or slap" noise in their vehicles; and (2) Were not given

13  notice of the condition giving rise to or the terms and conditions of GM's Engine Knock Noise

14  Adjustment Program "  For purposes of this Settlement and the Final Judgment, "engine knock, ping or

15  slap noise" has the same meaning as "Start Noise" (i.e., piston or piston pin noise that occurs at initial

16  start up and disappears shortly after the engine warms up) or "Constant Noise" (i.e., piston or piston

17  pin noise that is not Start Noise), as those terms are defined in the Agreement.  Excluded from the

18  Class are those California owners and lessees of 1999-2003 model year Chevrolet Silverados who

19  timely requested to be excluded from the Class on or prior to August 15, 2007.  Subrogees, assignees

20  and other third parties are not Class Members, are not eligible to receive any benefits under this

21  Settlement and are not subject to any releases executed by or on behalf of the Representative Plaintiff

22  or Class Members.

23        2.        Pursuant to Section 382 of the Code of Civil Procedure, the Court hereby finds that the

24  members of the proposed Class are so numerous that joinder of all members is impracticable, that there

25  are questions of law and fact common to the Class, that the claims of the named plaintiff are typical of

26  the claims of Class and that Representative Plaintiff, Jason Anderson, and the law firm of Girard Gibbs

27  LLP, as Class Counsel, have fairly and adequately represented the Class and will continue to do so

28  The Court further finds that questions of fact common to the Class predominate over factual questions

1  affecting only individual members and that a class action is superior to other available methods for the
2  fair and efficient adjudication of the controversy.  Accordingly, the Court reaffirms its prior
3  certification of the Class as defined in paragraph 1 above and hereby finds that, for settlement
4  purposes, and for purposes of the Agreement and the Settlement, the Action and the above-defined
5  Class meet the requirements for the bringing and maintenance of a class action set forth in section 382
6  of the Code of Civil Procedure.

7      3    The Court hereby finds that: (a) the Settlement memorialized in the Agreement has been
8  entered into in good faith and was concluded shortly before trial after Class Counsel and GM had
9  conducted extensive discovery, investigation and legal research concerning the issues raised by
10  Plaintiff's claims; (b) the Settlement evidenced by the Agreement is fair, reasonable and adequate as to,
11  and in the best interests of, the Class Members; (c) the Settlement delivers benefits to the Class in a
12  reasonably timely manner while resolving complex issues that would require expensive and long-
13  lasting litigation; (d) the Agreement was the result of extensive arms' length negotiations among highly
14  experienced counsel, with full knowledge of the risks inherent in this litigation and under the
15  supervision of Los Angeles Superior Court Judge Carl J West, an experienced settlement judge, (e)
16  there is no evidence of collusion or fraud in connection with the Settlement; (f) the investigation and
17  discovery conducted to date suffices to enable the parties and the Court to make an informed decision
18  as to the fairness and adequacy of the Settlement; (g) the case raised complex and vigorously contested
19  issues of law and fact that would result in complex, expensive, and lengthy litigation; (h) Plaintiff faced
20  significant risks in establishing liability and damages; and (i) the release is tailored to address the
21  allegations in the case.

22      4.    The Court hereby finds that the Agreement and Settlement are, in all respects, fair,
23  reasonable, and adequate, and in the best interests of the Class.  The Court grants final approval of the
24  Agreement and Settlement, and directs the Parties to perform the terms of the Agreement.

25      5    Upon the Effective Date set forth in the Agreement, the Representative Plaintiff and the
26  Class Members, by operation of this Judgment, shall have hereby released, waived and discharged any
27  and all claims, demands, causes of action or liabilities, including but not limited to those for alleged
28  violations of any state or federal statutes, rules or regulations, and all common law claims, including

1    Unknown Claims as defined in the Agreement, based on or in any way related to the factual allegations

2    and legal claims that were made in the Action, including any claim that any repair should have been

3    paid for, reimbursed or provided to Class Members pursuant to the Motor Vehicle Warranty

4    Adjustment Programs law, Civ. Code § 1795.90 *et seq.* Upon the Effective Date set forth in the

5    Agreement, the Representative Plaintiff and Class Members, by operation of this Judgment, also shall

6    have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights

7    and benefits of Section 1542 of the California Civil Code, and of any similar law of any other state,

8    which provides: "a general release does not extend to claims which the creditor does not know or

9    suspect to exist in his or her favor at the time of executing the release, which if known by him or her

10   must have materially affected his or her settlement with the debtor." Claims for personal injury or

11   claims based on or related to engine noise conditions in Class Vehicles other than Start Noise or

12   Constant Noise are not released, waived or discharged by this Judgment. Consistent with the express

13   terms of the Agreement, subrogation claims are not being released as part of this Judgment

14        6.    Upon the Effective Date, GM shall be deemed to have released, waived and discharged

15   any and all claims or causes of action, known or unknown, against the Representative Plaintiff or Class

16   Counsel based on or in any way related to any of the allegations, acts, omissions, transactions, events

17   or other matters alleged, claimed or at issue in the Action, provided that this release shall not extend to

18   any claim for breach of the Agreement or violation of this Final Judgment.

19        7.    The Court hereby orders and declares (a) the Agreement is approved by the Court and

20   shall be binding on all Class Members, and (b) the Agreement as approved by this final judgment is

21   and shall be binding and preclusive in all pending and future lawsuits or other proceedings whether in

22   state or federal court. Each and every term and condition of the Agreement as a whole (including its

23   attached exhibits) is approved as proposed and is to be effective, implemented, and enforced as

24   provided in the Agreement.

25        8.    The Court finds that the Class Action Settlement Notice and methodology implemented

26   pursuant to this Court's Preliminary Approval Order provided the best notice practicable under the

27   circumstances. The Court further finds that the Class Action Settlement Notice advised each member

28   of the Class, in plain easily understood language (a) the nature of the suit; (b) the definition of the

1 Class certified, (c) the class claims, issues, and defenses; (d) the nature of the settlement benefits

2 available to Class Members under the Settlement, (e) the procedures available to Class Members to

3 claim settlement benefits and for adjudicating disputes relating to eligibility or disbursement of

4 settlement benefits; (f) that a Class Member could enter an appearance through counsel if desired, and

5 (g) that the judgment incorporating the Settlement will fully release GM, dismiss this lawsuit with

6 prejudice, and include and bind all members of the Class who did not timely request exclusion. The

7 Court finds that the Class Action Settlement Notice and methodology fully complied with all

8 applicable legal requirements, including the Due Process Clauses of the Constitutions of the United

9 States and the State of California and the California Code of Civil Procedure and Rules of Court.

10    9.    The Court finds that Class Counsel and the Representative Plaintiff adequately

11 represented the Class for purposes of entering into and implementing the Agreement.

12    10    All Class Members are, from this day forward, hereby permanently barred and enjoined

13 from:

14    (a)    filing or commencing any lawsuit in any jurisdiction based on or relating to: (i) the

15 claims and causes of action asserted in this Action; (ii) the facts and circumstances relating to this

16 Action; or (iii) the Released Claims, or

17    (b)    organizing Class Members, or soliciting the participation of Class Members, in a

18 separate class for purposes of pursuing as a purported class action any other lawsuit (including by

19 seeking to amend a pending complaint to include class allegations, or seeking class certification in a

20 pending action in any jurisdiction) based on or relating to: (i) the claims and causes of action asserted

21 in this Action, (ii) the facts and circumstances relating to this Action, or (iii) the Released Claims.

22    11.    Representative Plaintiff is awarded an Incentive Award in the total sum of $ 7,500.

23 Class Counsel are hereby awarded the total sum of $ 1,950,000 in Attorneys' Fees, and the total sum of

24 $ 212,500 in Documented Costs and Expenses  Defendant shall pay the Incentive Award, Attorneys'

25 Fees and Documented Costs and Expenses in accordance with the Agreement.  GM shall have no

26 responsibility for and no liability with respect to the allocation of Attorneys' Fees to Class Counsel or

27 any other person who may assert some claim thereto.

28    12    The terms of the Agreement as approved by this final judgment shall be forever binding

1  on, and shall have *res judicata* effect and preclusive effect in, all pending and future lawsuits or other

2  proceedings that may be maintained by or on behalf of the Representative Plaintiff or any Class

3  Members, as well as their collective heirs, executors, administrators, successors and assigns, relating to

4  the Action and/or the Released Claims (as defined in the Agreement).

5      13.    Neither this Final Judgment nor the Agreement (nor any document referred to herein or

6  any action taken to carry out this Final Judgment) is, may be construed as, or may be used as an

7  admission by GM of the validity of any claim, of actual or potential fault, wrongdoing or liability

8  whatsoever. Entering into or carrying out the Agreement and any negotiations or proceedings relating

9  to the Settlement shall not in any event be construed as, or deemed to be evidence of, an admission or

10  concession of GM and shall not be offered or received into evidence in any action or proceeding

11  against any party hereto in any court, judicial, administrative, regulatory hearing, arbitration, or other

12  tribunal or proceeding for any purpose whatsoever, except in a proceeding to enforce the Agreement.

13  This Final Judgment and the Agreement it approves (including exhibits thereto) may, however, be filed

14  in any action against or by GM to support its defense of *res judicata*, collateral estoppel, release, good

15  faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or

16  similar defense or counterclaim, as set forth in paragraph 12 of this Final Judgment.

17      14    Representative Plaintiff's First Amended Complaint and this entire Action, including all

18  individual claims and Class claims asserted or that could have been asserted herein, is hereby

19  DISMISSED WITH PREJUDICE, without fees, costs, or expenses to any party except as otherwise

20  provided herein.

21      15.    Without affecting the finality of this Final Judgment in any way, this Court hereby

22  retains continuing jurisdiction over (a) implementation of the Settlement; (b) payment of Class

23  Members' claims under the Settlement; (c) further proceedings, if necessary, on Plaintiff's and Class

24  Counsel's applications for Attorneys' Fees, Documented Costs and Expenses, or Incentive Awards

25  previously filed herein; and (d) the Parties for purposes of construing, enforcing, or administering the

26  Agreement. If any Party fails to fulfill its obligations completely, the Court retains the power to issue

27  such orders to enforce this Judgment and the Settlement as it deems appropriate after noticed hearing.

28      16.    If the Settlement does not become effective in accordance with the terms of the

1  Agreement, then this Final Judgment shall be rendered null and void to the extent provided by and in

2  accordance with the Agreement and shall be vacated and, in such event, all orders entered and releases

3  delivered in connection herewith shall be null and void to the extent provided by and in accordance

4  with the Agreement.

5

6      **IT IS SO ORDERED.**

7

8  Dated    3/5/09                                    PETER D. LICHTMAN

9                                          THE HONORABLE PETER D. LICHTMAN

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

In re                                          :        Chapter 11 Case No.
                                               :
MOTORS LIQUIDATION COMPANY, *et al.*,          :        09-50026 (REG)
    f/k/a General Motors Corp., *et al.*   :
                                               :
        Debtors.         :        (Jointly Administered)
                                               :
-------------------------------------------------------x

### STIPULATION AND ORDER BETWEEN THE DEBTORS AND THE HOLDERS OF UNLIQUIDATED DEX-COOL AND ANDERSON CLAIMS TO ALLOW CLASS PROOFS OF CLAIM FOR DEX-COOL AND ANDERSON CLASS CLAIMANTS

        Motors Liquidation Company (f/k/a General Motors Corporation) ("MLC") and certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**" or "**MLC**"), and the holders of Unliquidated Dex-Cool Claims (as defined below), and the holders of Unliquidated Anderson Claims (as defined below), by and through their respective undersigned counsel, hereby enter into this Stipulation and Agreed Order (this "**Stipulation**") and stipulate as follows:

RECITALS

        A.      On June 1, 2009 (the "**Commencement Date**"), the Debtors commenced with this Court voluntary cases (the "**Chapter 11 Cases**") under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"). The Debtors are authorized to continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed. On or about June 3, 2009, an Official Committee of Unsecured Creditors (the "**Committee**") was appointed in the Chapter 11 Cases. The Chapter 11 Cases are being jointly administered pursuant to Rule

1015(b) of the Bankruptcy Rules.

B.        On September 16, 2009, the Court entered an order (the "Bar Date Order")

establishing November 30, 2009 at 5:00 p.m. (Eastern Time) (the "General Bar Date") as the

deadline for each person or entity (including without limitation, each individual, partnership,

joint venture, corporation, estate, or trust) to file a proof of claim (a "Proof of Claim") against

any Debtor to assert any claim (as defined in section 101(5) of the Bankruptcy Code) (a

"Claim") that arose prior to the Commencement Date.

C.        On April 29, 2003 certain consumers filed class actions against MLC in the 16th

Judicial Circuit Court (Jackson County) of the State of Missouri (the "Gutzler Class Action")

and in the Superior Court of the State of California for the County of Alameda (the "Sadowski

Class Action" and together with the Gutzler Class Action, the "Dex-Cool Class Actions").  In

both the Gutzler Class Action and the Sadowski Class Action, the parties entered into a

settlement agreement approved by each court (collectively, the "Dex-Cool Settlement

Agreement").  Prior to the Commencement Date, the administration of the Dex-Cool Settlement

Agreement had been substantially completed.  However, certain claims in connection with the

Dex-Cool Class Actions had not yet been liquidated pursuant to the terms of the Dex-Cool

Settlement Agreement (the "Unliquidated Dex-Cool Claims").

D.        On May 18, 2004 certain consumers filed a class action against MLC in the

Superior Court of the State of California for the County of Los Angeles, Central Civil West

Courthouse (the "Anderson Class Action").  In the Anderson Class Action, the parties entered

into a settlement agreement approved by the court (the "Anderson Settlement Agreement").

Prior to the Commencement Date, the administration of the Anderson Settlement Agreement had

been initiated.  However, certain claims in connection with the Anderson Class Action had not

yet been liquidated pursuant to the terms of the Anderson Settlement Agreement (the

"**Unliquidated Anderson Claims**").

        **NOW, THEREFORE,** in consideration of the mutual covenants and agreements

set forth in this Stipulation, it is agreed as follows:

**AGREEMENT**

     1.    On behalf of the holders of Unliquidated Dex-Cool Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors, and the Debtors agree that the undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Dex-Cool Claims.

     2.    On behalf of the holders of Unliquidated Anderson Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors and the Debtors agrees that undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Anderson Claims.

     3.    The undersigned class counsel, by filing the Class Proofs of Claim in respect of

the Unliquidated Dex-Cool Claims and the Unliquidated Anderson Claims, consents to and

hereby is deemed to be the claimant for the purpose of receiving notices and distributions, if

any, except as otherwise provided in a confirmation order related to a chapter 11 plan filed in

the Chapter 11 Cases, and may (but shall not be required to) respond to any objections

interposed as to any claims asserted in each applicable Class Proof of Claim. Notice to the

undersigned class counsel shall be, and shall be deemed to be, sufficient notice to all class

members in the Dex-Cool Class Action and the Anderson Class Action.

4.     The Debtors' agreement herein to permit the filing by the undersigned class counsel of each Class Proof of Claim is intended solely for the purpose of administrative convenience and neither this Stipulation and Order nor the filing of any Class Proof of Claim shall in any way prejudice the right of any Debtor or any other party in interest to object to the allowance of any Class Proof of Claim.

5.     This Court shall retain jurisdiction to resolve any disputes or controversies arising from or relating to this Stipulation and Order and to the filing of the Class Proofs of Claim pursuant to this Stipulation.

6.     This Stipulation is subject to the approval of this Court and shall become effective upon the entry of an order by the Court approving this Stipulation. If this Stipulation is not approved by the Court, then this Stipulation shall be deemed null and void, and shall not be referred to or used for any purpose by any of the parties hereto (the "Parties") in either the Chapter 11 Cases or in any other forum.

7.     This Stipulation sets forth the entire understanding of the Parties with respect to the matters addressed herein and is intended to be the complete and exclusive statement of the terms thereof and may not be modified or amended except by a writing signed by the Parties and/or their counsel, which shall be so-ordered by the Court. Accordingly, the Parties have independently verified all facts and/or conditions of facts that they have determined are necessary to their decision to enter into this Stipulation, and they have not relied upon any representations, written or oral, express or implied, of any other person in verifying and satisfying themselves as to such facts and/or condition of facts.

8.     The Parties represent and warrant to each other that the signatories to this Stipulation have full power and authority to enter into this Stipulation.

9.    This Stipulation may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument. Delivery of signed counterparts of this Stipulation by facsimile transmission or as PDF attachment to an email message shall have the same effect as the manual delivery of an original signed counterpart of this Stipulation, and all signatures on such counterpart will be deemed to be as valid as an original signature whether or not a Party delivers manually an original signed counterpart of this Stipulation, although it is the Parties' intention to deliver an original signed counterpart after any facsimile or email delivery.

DATED: November ___, 2009                    Respectfully submitted,


**GIRARD GIBBS LLP**                          **POLSINELLI SHUGHART P.C.**


By: /s/ A. J. de Bartolomeo                  By: P. John Brady
A. J. De Bartolomeo                          P. John Brady

Eric H. Gibbs                                Twelve Wyandotte Plaza
Dylan Hughes                                 120 West 12th Street
Geoffrey A. Munroe                           Kansas City, Missouri 64105
601 California Street, 14th Floor            Telephone: (816) 421-3355
San Francisco, California 94108              Facsimile: (816) 374-0509
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

*Court-Appointed Class Counsel in Dex-Cool*  *Court-Appointed Class Counsel in Dex-Cool*

*Court-Appointed Class Counsel in Dex-Cool*
*Class Action and Anderson*

**WEIL, GOTSHAL & MANGES LLP**

By: Joseph H. Smolinsky
Joseph H. Smolinsky

767 Fifth Avenue
New York, New York 10153
Attention: Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Phone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors and Debtors in
Possession*

## ORDER APPROVING STIPULATION

Based on the foregoing stipulation of the parties, the Court finding that good cause exists to approve the Stipulation as an order of the Court, that adequate notice of the Stipulation has been provided, and that no further notice is required,

IT IS HEREBY ORDERED that the foregoing stipulation is approved and incorporated by reference and made a part of this Order.

IT IS FURTHER ORDERED that this Court will retain jurisdiction to adjudicate any disputes arising in connection with this Order.

Date: _December 1, 2009_
      New York, New York

                              _s/ Robert E. Gerber_
                              UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE:\43228357\05\72240.0639

# EXHIBIT E

HEARING DATE AND TIME: April 26, 2011 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: April 19, 2011 at 4:00 pm. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x

In re                                            :

                                                 :

MOTORS LIQUIDATION COMPANY, *et al.*,            :

    f/k/a General Motors Corp., *et al.*          :

                                                 :

                        Debtors.                 :

                                                 :

------------------------------------------------------x

Chapter 11 Case No.

09-50026 (REG)

(Jointly Administered)

## MOTION OF DEBTORS FOR ENTRY
## OF ORDER PURSUANT TO FED. R. BANKR. P. 9019
## AND FED. R. CIV. P. 23 APPROVING AGREEMENT RESOLVING PROOF
## OF CLAIM NO. 51093 AND IMPLEMENTING MODIFIED CLASS SETTLEMENT

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

       Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

# I.    Relief Requested[1]

1.    Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**") and Rule 23 of the Federal Rules of Civil Procedure ("**Rule 23**"), the

Debtors respectfully request entry of that certain proposed Order Pursuant to Fed. R. Bankr. P.

9019 and Fed. R. Civ. P. Rule 23 Approving Agreement Resolving Proof of Claim No. 51093

and Implementing Modified Class Settlement (the "**Order**") approving and ratifying that certain

modified settlement agreement (the "**Agreement**") between class action plaintiff Jason Anderson

("**Anderson**"), on behalf of himself and all others similarly situated (the "**Anderson Class**"),

and the Debtors (collectively, Anderson, the Anderson Class, and the Debtors, the "**Parties**").

The Agreement is attached hereto as **Exhibit "A"** and the Order is attached hereto as **Exhibit
"B."**

2.    Among other things, the Agreement sets forth the proposed settlement and

resolution of Claim No. 51093 (the "**Anderson Proof of Claim**"), which is based on a previous

settlement reached in a class action lawsuit brought by Jason Anderson, on behalf of himself and

the Anderson Class against General Motors Corporation ("**GM**") on May 18, 2004, in the

Superior Court of the State of California, County of Los Angeles (the "**California Court**"),

alleging, among other things, that GM violated the Unfair Competition Law by creating an

"adjustment program" under the Motor Vehicle Warranty Adjustment Programs statute

("**MVWAP**"), Civ. Code § 1795.90 *et. seq.*, allegedly without providing the Anderson Class

with certain notices and repair reimbursements (the "**Anderson Class Action**"). Entry of the

Order will result in: (i) the resolution of approximately $10,000,000.00 in claims against the

---

[1]    All capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the
Agreement (defined below).

Debtors' estates; and (ii) the alleviation of the financial burden, time, and uncertainty associated
with litigation of the Anderson Proof of Claim and the Anderson Class Action.

## II.    Preliminary Statement

3.    By this Motion of Debtors for Entry of Order Pursuant to Fed. R. Bankr.
P. 9019 and Fed. R. Civ. P. 23 Approving Agreement Resolving Proof of Claim No. 51093 and
Implementing Modified Class Settlement (the "**Motion**"), the Debtors seek to implement the
settlement previously reached in the Anderson Class Action and approved by the California
Court, with the requested modifications described herein and in the Agreement. The Anderson
Class already has been certified by the California Court; extensive notice of the Anderson Class
Action Settlement (defined below) was previously given to the Anderson Class; members of the
Anderson Class already have submitted claims for settlement benefits; and the Anderson Class
Action Settlement was approved by the California Court under Section 382 of the California
Code of Civil Procedure—a code provision that is patterned after Rule 23. The California Court
approved the Anderson Class Action settlement as fair, reasonable, and adequate, and GM
previously transferred $2,258,000.00 in escrow as earmarked for payment of attorneys' fees,
costs, and an incentive award for Anderson. Pursuant to the California Court's Order
Preliminarily Approving Stipulation of Settlement (the "**Preliminary Approval Order**") and
final judgment (the "**Final Judgment**"), all claims by Anderson Class members were submitted
to GM (as class claims administrator) and were post-marked by May 11, 2009. On June 1, 2009,
before the terms of the settlement could be implemented and before GM performed any actions
as class claims administrator, certain of the Debtors commenced voluntary cases under chapter
11 of title 11 of the United States Code (the "**Bankruptcy Code**"), which stayed the
implementation of the Anderson Class Action settlement.

4.      As a result of the commencement of these chapter 11 cases, the Debtors

are unable to provide the original consideration contemplated under the Anderson Class Action

Settlement to the participating members of the class—including, for certain of the class

members, a free vehicle valuation and, if necessary, repair—but the Parties have reached an

agreement to provide alternative treatment that is favorable to the Participating Anderson Class

Members (defined below).  The Agreement is fair, reasonable, and adequate and meets the

standards of Rule 23.  Moreover, the Agreement will result in a reduction of general unsecured

claims against the Debtors' estates.  The Agreement is also the result of a collaborative effort

between the Parties and the statutory committee of unsecured creditors (the **"Creditors'**

**Committee"**) in these chapter 11 cases and is submitted to this Court for approval with the

Creditors' Committee's support and consent.  Entry of the Order, thus, is in the best interest of

the Anderson Class, the Debtors, and the Debtors' creditors.  Accordingly, the Debtors

respectfully request that this Motion be granted.

### III.      Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### IV.      Background

**A.      The Anderson Class Action**

6.      On May 18, 2004, Anderson filed a class action complaint against GM on

behalf of himself and the Anderson Class in the California Court, Case No. JCCP4396, alleging

that certain Silverado trucks exhibit an abnormal engine knock or piston noise.  Anderson further

alleged that GM knew about this condition and that GM had a business policy under which it

provided certain benefits, including a 6 year/100,000 General Motors Protection Plan (or

"GMPP"), to California owners and lessees of Silverados who complained to GM about the
condition. Anderson asserted that GM's business policy to offer a GMPP or other benefit to
some consumers, but not others, who own or lease a Silverado with an abnormal engine knock or
piston noise condition was an adjustment program or "secret warranty" that violates California
law, including, specifically, the California MVWAP, because GM allegedly did not notify
Anderson or the Anderson Class about the adjustment program or provide them with coverage
under the plan.

7.    Following substantial discovery, law and motion practice, class
certification having been granted, a writ petition as to the form and notice of class certification
having been denied, and two separate mandatory settlement conferences before a California state
judge, GM and the Anderson Class reached a comprehensive claims-made stipulation of
settlement of the Anderson Class Action (the "**Anderson Class Action Settlement**"). A copy of
the Anderson Class Action Settlement is attached as **Exhibit "C."** Under the terms of the
settlement, after submission of the appropriate documentation, GM agreed to reimburse class
members who submitted valid, timely claims for: (i) monies spent on the purchase of a GMPP
that otherwise would have been available to them for free under GM's allegedly unlawful
adjustment program; and/or (ii) repair costs paid by class members to correct the abnormal
engine knock or piston noise or on other specified engine repairs. GM also agreed that certain
members of the Anderson Class with constant engine knock or piston noise concerns could
request a free evaluation from a Chevrolet dealer and, if appropriate, obtain free repairs of the
condition.[2]

---

[2]    Specifically, under the terms of the Anderson Class Action Settlement, certain Anderson Class members
who purchased a GMPP within 90 days of vehicle delivery would receive reimbursement, up to the full purchase
price of the GMPP, if such class member provided a completed and signed claim form and appropriate

8.      On November 18, 2008, the California Court entered the Preliminary

Approval Order, a copy of which is attached hereto as **Exhibit "D."**  In that Preliminary

Approval Order, the California Court set a fairness hearing for March 5, 2009 (the **"Fairness**

**Hearing"**); set forth deadlines for objecting to the Anderson Class Action Settlement and

appearing at the Fairness Hearing; approved the form of class notice (the **"Notice of**

**Settlement"**); and approved the proposed manner of providing notice, which manner included

first-class mailing of the Preliminary Approval Order to members of the Anderson Class and

posting a Spanish-language version of the Notice of Settlement on Class Counsel's (defined

below) website. A copy of the Notice of Settlement is attached hereto as **Exhibit "E."**  In

accordance with that Preliminary Approval Order, GM mailed notice of the class action

settlement to approximately 240,000 California owners and lessees of model year 1999-2003

Silverado vehicles.

9.      On March 5, 2009, the California Court conducted its Fairness Hearing

and entered its Final Judgment, a copy of which is attached hereto as **Exhibit "F,"** in which it

finally certified a class in the Anderson Class Action and finally approved the Anderson Class

Action Settlement.[3]  The California Court determined that the Anderson Class satisfied Section

---

documentation showing piston or pin noise. (*See* Settlement Agreement ¶ 3.3 (Ex. C).)  Similarly, certain Anderson
Class members who purchased a GMPP after 90 days of vehicle delivery would receive reimbursement, up to the
full purchase price of the GMPP, if such class member provided a completed and signed claim form and a statement
made under penalty of perjury that their vehicle had piston or pin noise. (*See id.* (Ex. C).)  Further, GM agreed to
reimburse certain Anderson Class members for out-of-pocket repair expenses, up to seventy-five or 100% of the cost
of repair, depending on the type of covered repair. (*See id.* ¶¶ 3.3, 3.6 (Ex. C).)  Finally, Claimants who made a
statement under penalty of perjury that, prior to the expiration of the limited warranty period, they made inquiry or
expressed concerns to an authorized GM dealer about constant engine knock or piston noise and did not receive a
repair, would receive a free evaluation from a dealer and a free repair if the condition was found to exist as a result
of the evaluation. (*See id.* ¶ 3.5 (Ex. C).)

[3]       The Anderson Class included the following:  "All California owners and lessees of 1999-2003 model year
Chevrolet Silverados equipped with a 4.8 liter (LR4), 5.3 liter (LM7), 6.0 liter (LQ4, L59) or 8.1 liter (L18) engines
who (1) Have an engine "knock, ping or slap" noise in their vehicles; and (2) Were not given notice of the condition
giving rise to or the terms and conditions of GM's Engine Knock Noise Adjustment Program."  For purposes of the

382 of the California Code of Civil Procedure ("**Section 382**"), because: (i) the Anderson Class

was so numerous that joinder of all members was impracticable; (ii) there were questions of law

or fact common to the Anderson Class; (iii) Anderson's claim was typical of the claim of the

Anderson Class members' claims; (iv) Anderson would fairly and adequately assert and protect

the interests of the Anderson Class under the criteria set forth in Section 382; (v) questions of

fact common to the Anderson Class predominated over factual questions affecting only

individual members; and (vi) a class action provided a fair and efficient method for adjudication

of the controversy. (*See* Final Judgment ¶ 2 (Ex. F).)

        10.    The California Court also finally approved of the provisional designation

of the law firm of Girard Gibbs LLP as class counsel ("**Class Counsel**") and Anderson as the

representative plaintiff (the "**Representative Plaintiff**").

        11.    As set forth in the Anderson Class Action Settlement, the Final Judgment

also awarded Anderson as Representative Plaintiff an incentive award in the total sum of

$7,500.00 (the "**Incentive Award**"), Class Counsel a total sum of $1,950,000.00 in attorneys'

fees (the "**Attorneys' Fees**"), and $212,500.00 in documented costs and expenses

("**Documented Costs and Expenses**").

        12.    In accordance with the Anderson Class Action Settlement and the Final

Judgment approving the award of Attorneys' Fees, Incentive Award, and Documented Costs and

Expenses, on or about March 16, 2009, GM deposited $2,258,000.00 in cash (the "**Anderson

Class Action Settlement Deposit**") in an account established at Union Bank of California,

---

Anderson Class Action Settlement and the class definition, "engine knock, ping or slap noise" has the same meaning
as "Start Noise" (*i.e.*, piston or piston pin noise that occurs at initial start up and disappears shortly after the engine
warms up) or "Constant Noise" (*i.e.*, piston or piston pin noise that is not Start Noise). Excluded from the Anderson
Class were those California owners and lessees of 1999-2003 model year Chevrolet Silverados who timely requested
to be excluded from the class.

which cash was then transferred by Class Counsel on or about May 7, 2009 to an attorney-client

trust account (the **"Attorney-Client Trust Account Deposit"**) established by class counsel in

the Anderson Class Action.

13.     Pursuant to the Anderson Class Action Settlement and the Final Judgment,

members of the Anderson Class were required to submit a settlement benefit claim form (**"Claim**

**Form"**) to obtain the benefits of the settlement. In accordance with the Final Judgment, on

March 26, 2009, Claim Forms were mailed to the approximately 240,000 members of the

Anderson Class. Under the terms of the Anderson Class Action Settlement and the Final

Judgment, GM agreed to act as claims administrator. The deadline for class members to submit

and postmark valid and timely Claim Forms for settlement benefits (together with any necessary

supporting documentation) to GM expired on May 11, 2009. Approximately 5,913 Claim Forms

were submitted by Anderson Class members (collectively, the **"Participating Anderson Class**

**Members"**).

14.     The commencement of these chapter 11 cases on June 1, 2009, stayed all

further implementation of the Anderson Class Action Settlement.

15.     On September 16, 2009, the United States Bankruptcy Court for the

Southern District of New York (the **"Court"**) entered the Order Pursuant to Section 502(b)(9) of

the Bankruptcy Code and Rule 3003(c)(3) of the Bankruptcy Procedure Establishing the

Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section

503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice

Thereof (ECF No. 4079) establishing November 30, 2009 at 5:00 p.m. (Eastern) as the deadline

to file proofs of claim against the Initial Debtors based on prepetition claims.

16.    On November 25, 2009, the Anderson Proof of Claim, based on the

Anderson Class Action Settlement, was filed with this Court, purportedly on behalf of the

Anderson Class, and assigned claim number 51093.  The Anderson Proof of Claim asserts a

claim in the amount of $10,000,000.00, for class consideration allegedly due pursuant to the

Anderson Class Action Settlement (the "**Claim**").[4]

17.    On December 1, 2009, this Court approved and entered the Stipulation and

Order Between the Debtors and the Holders of Unliquidated Dex-Cool and Anderson Claims to

Allow Class Proofs of Claim for Dex-Cool and Anderson Claimants (the "**Class Claims**

**Stipulation**") and through which the Debtors and the holders of Unliquidated Anderson Claims,

defined in the Class Claims Stipulation as the claims made in connection with the Anderson

Class Action that had not yet been liquidated pursuant to the terms of the Anderson Class Action

Settlement, agreed that Class Counsel could file a class-wide proof of claim on behalf of all

holders of Unliquidated Anderson Claims.

**B.    The Agreement**

18.    Since the filing of the Anderson Proof of Claim, the Parties have engaged

in good-faith, arms-length negotiations, and, without any admission of liability by any Party,

have reached the Agreement to resolve the Anderson Proof of Claim and implement the

Anderson Class Action Settlement, as modified, with this Court's approval.

19.    Because of the commencement of these chapter 11 cases, the Debtors are

unable to provide the Participating Anderson Class Members with the exact consideration

contemplated by the Anderson Class Action Settlement, including, among other things, the

---

[4]    In accordance with the Anderson Class Action Settlement, the Anderson Proof of Claim also seeks a free
evaluation from a Chevrolet dealer and, if appropriate, free repairs of the condition relating to constant engine knock
or piston noise concerns for certain Participating Anderson Class Members.

previously agreed upon evaluation and repair service. Accordingly, the Parties respectfully

request that this Court approve the Agreement to provide, among other things, the Participating

Anderson Class Members with the Total Allowed General Unsecured Claim (defined below) that

is equivalent to the approximate value of the benefits that would have been provided to the

Participating Anderson Class Members under the Anderson Class Action Settlement,

consideration that may be more favorable to the Participating Anderson Class Members.[5]

      20.    The key provisions of the Agreement are summarized as follows:

      a.    Subject to execution of the Agreement by the Parties and upon entry of the Order and, unless otherwise set forth in the Agreement, the Anderson Proof of Claim shall be resolved and the Participating Anderson Class Members shall receive, in the aggregate, a single allowed general unsecured claim against MLC in the amount of $8,853,300.00 (the "**Total Allowed Unsecured Claim**").

      b.    Class Counsel shall be authorized to dispose of the Total Allowed Unsecured Claim such that Class Counsel can make the proper *pro rata* distribution of consideration to the Participating Anderson Class Members in accordance with the Agreement. Class Counsel shall be solely responsible for (i) distributing the cash proceeds resulting from the disposition of the Total Allowed Unsecured Claim; (ii) otherwise implementing the Agreement; and (iii) paying all expenses associated with such distribution and/or implementation.

      c.    Cash proceeds resulting from the sale or assignment of the Total Allowed Unsecured Claim shall be distributed, on a *pro rata* basis, in accordance with the following guidelines,

---

[5]    Under the Agreement, certain Participating Anderson Class Members may receive more favorable consideration than under the terms of the Anderson Class Action Settlement. Specifically, members of the Anderson Class who failed to submit appropriate documentation may have been unable to obtain any benefits under the Anderson Class Action Settlement. However, under the Agreement, Participating Anderson Class Members may obtain a reduced amount of reimbursement, on a *pro rata* basis, on account of their claims.

which are further set forth in the Plan of Allocation
attached as **Exhibit "H"** to the Agreement:[6]

- **Reimbursement of Purchase Price of GMPP Purchased
  Within 90 Days of Retail Delivery.** Each Participating
  Anderson Class Member in this group may obtain
  reimbursement, on a *pro rata* basis, up to the full purchase
  price of the GMPP paid by such member if the
  Participating Anderson Class Member has supplied
  documentation of the GMPP value and has submitted
  appropriate documentation showing that his or her
  Silverado has or had Start Noise. If the Participating
  Anderson Class Member has not submitted documentation
  of the GMPP value but has supplied appropriate
  documentation showing that his or her Silverado has or had
  Start Noise, the Participating Anderson Class Member may
  obtain reimbursement, on a *pro rata* basis, in the amount of
  $1,800.00. If the Participating Anderson Class Member
  has not submitted documentation of the GMPP value and
  has not supplied appropriate documentation showing that
  his or her Silverado has or had Start Noise but otherwise
  has a valid claim, the Participating Anderson Class
  Member may obtain reimbursement, on a *pro rata* basis, in
  the amount of $900.00.

- **Reimbursement of Purchase Price of GMPP Purchased
  After 90 Days of Retail Delivery.** Each Participating
  Anderson Class Member in this group may obtain
  reimbursement, on a *pro rata* basis, up to the purchase
  price of the GMPP paid for by such member if the
  Participating Anderson Class Member has supplied
  documentation of the GMPP value and has stated under
  penalty of perjury that his or her Silverado has or had Start
  Noise. If the Participating Anderson Class Member has not
  submitted documentation of the GMPP value but has stated
  under penalty of perjury that his or her Silverado has or had
  Start Noise, the Participating Anderson Class Member may
  obtain reimbursement, on a *pro rata* basis, in the amount of
  $1,800.00. If the Participating Anderson Class Member
  has not submitted documentation of the GMPP value and
  has not stated under penalty of perjury that his or her
  Silverado has or had Start Noise, but otherwise has a valid

---

[6]    All distributions under the Agreement will be made on a *pro rata* basis of the cash proceeds resulting from
the sale or assignment of the Total Allowed Unsecured Claim.

claim, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of $900.00.

- **Customer-Paid Start Noise Repair Expense Reimbursement.** Each Participating Anderson Class Member who, during the Applicable Warranty Period[7], paid for a repair to address concerns about Start Noise for which the Participating Anderson Class Member was not fully reimbursed may be reimbursed, on a *pro rata* basis, for the out-of-pocket repair expense incurred by such member if the Participating Anderson Class Member (i) signed, completed and submitted a Claim Form stating under penalty of perjury that he or she sought the repair to address a concern about Start Noise, and (ii) submitted appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order). If the Participating Anderson Class Member has not submitted appropriate documentation of the repair and repair expense, but the claim is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of one-half (50%) of the average repair expense for this category.

- **Other Customer-Paid Covered Engine Repairs.** Each Participating Anderson Class Member who paid for other Covered Engine Repairs[8] for which the Participating Anderson Class Member was not fully reimbursed may be reimbursed, on a *pro rata* basis, for 75% of the out-of-pocket Covered Engine Repair expense incurred by such member if the Participating Anderson Class Member submitted appropriate documentation of the repair and repair expense (such as a dealer or third-party repair order) and signed, completed and submitted a Claim Form stating

---

[7]    For purposes of eligibility for this settlement benefit, "**Applicable Warranty Period**" shall mean the GM Limited New Vehicle Warranty period (3 years or 36,000 miles, whichever comes first) except that for those Anderson Class members who purchased a GMPP, the time and mileage limitations for reimbursement of repair expenses under this paragraph shall be those set forth in the Participating Anderson Class Member's GMPP (for example, 4 years or 50,000 miles, whichever comes first).

[8]    For purposes of eligibility for this settlement benefit, "**Covered Engine Repairs**" shall include only unreimbursed repair expense for the following engine components:  cylinder block; heads; crankshaft and bearings; crankshaft seals - front and rear; camshaft and bearings; connecting rods and pistons; valve train (including valve seals, valve covers and internal parts); timing gears; timing chain/belt and cover; oil pump, oil pump housing; oil pan; engine seals and gaskets; lubricated internal engine parts; water pump; intake and exhaust manifolds; flywheel; harmonic balancer; and engine mounts.

under penalty of perjury that (i) he or she made inquiry or expressed concern to an authorized GM dealer or GM about start noise prior to expiration of the GM Limited New Vehicle Warranty Period (3 years or 36,000 miles after retail sale or lease, whichever came first), and (ii) an un-reimbursed expense was incurred within the earlier of 6 years or 100,000 miles of retail delivery, whichever came first. If the Participating Anderson Class Member has not submitted appropriate documentation of the repair and repair expense, but the claim is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, for one-half (50%) of the average amount of the reimbursable Covered Engine Repair expenses for this category (*e.g.*, 75% of the out-of-pocket Covered Engine Repair expenses incurred by Participating Anderson Class Members in this category).

- **Constant Noise Repair Expense Reimbursement**. Each Participating Anderson Class Member who signed, completed and submitted a Claim Form stating under penalty of perjury that, prior to the expiration of the GM Limited New Vehicle Warranty (3 years or 36,000 miles after retail sale or lease, whichever came first), he or she made inquiry or expressed concern to an authorized GM dealer or GM about constant noise and did not receive a repair, may be reimbursed, on a *pro rata* basis, in the amount of $1,800.00. If the Participating Anderson Class Member has submitted an incomplete Claim Form but the claim is otherwise valid, the Participating Anderson Class Member may obtain reimbursement, on a *pro rata* basis, in the amount of $900.00.

    d.    Upon entry of the Order, Anderson, the Anderson Class, and their affiliates, successors and assigns, and their agents, insurers, representatives, administrators, executors, trustees, and attorneys, shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns, including GM or its successors in interest (collectively, the **"Debtor Parties"**).[9]

---

[9]    Nothing in the Agreement is intended by the Parties to be a release, settlement, or waiver by the Debtor Parties of any claims, including any claims, liabilities, obligations, rights, damages, causes of action, debts, or losses arising out of, concerning, or related to the Anderson Class Action Settlement Deposit, the Attorney-Client Trust Account Deposit, or interest earned thereon. Similarly, nothing in the Agreement is intended by the Parties to be a release, settlement, or waiver by Anderson, the Anderson Class, and their affiliates, successors and assigns, and their agents, insurers, representatives, administrators, executors, trustees and attorneys (collectively, the "Anderson

## V.    The Relief Requested Should Be Approved by the Court Pursuant to Bankruptcy Rule 9019

21.    Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). A decision to accept or reject a compromise or settlement is within the sound discretion of this Court. *See id.; see also* 9 Collier on Bankruptcy ¶ 9019.02 (15th ed. rev. 2001). The settlement need not result in the best possible outcome for the debtor but must not "fall below the lowest point in the range of reasonableness." *In re Drexel Burnham Lambert Group*, 134 B.R. at 505.

22.    Relying on the guiding language of *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424, *reh'd denied*, 391 U.S. 909 (1968), courts in this Circuit have set forth the following factors regarding the reasonableness of such settlements:

(1)    the probability of success in the litigation;

(2)    the difficulties associated with collection;

(3)    the complexity of the litigation, and the attendant expense, inconvenience, and delay; and

(4)    the paramount interests of the creditors.

---

Parties") or Class Counsel of any defenses to any claims asserted by the Debtor Parties arising out of, concerning, or related to the Anderson Class Action Settlement Deposit, the Attorney-Client Trust Account Deposit, or interest earned thereon, or the assertion of a claim by the Anderson Parties or Class Counsel against the Debtors or their bankruptcy estates pursuant to Section 502(h) of the Bankruptcy Code.

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed,*

506 U.S. 1088 (1993); *In re Iridium Operating LLC,* 478 F.3d 452, 462 (2d Cir. 2007); *In re*

*Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd,* 17 F.3d 600 (2d Cir. 1994); *In*

*re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993). The decision to approve a

particular settlement lies within the sound discretion of the bankruptcy Court. *Mach. Terminals,*

*Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963). It is the

responsibility of the court to examine a settlement and determine whether it "falls below the

lowest point in the range of reasonableness." *In re Dow Corning Corp.*, 198 B.R. 214, 222

(Bankr. E.D. Mich. 1996). For the reasons set forth below, the Debtors respectfully submit that

the Agreement meets this standard.

        23.    The Agreement falls well within the range of reasonableness, as it is fair

and equitable and in the paramount interest of the Debtors and their creditors. While the Parties

dispute factual and legal issues relevant to the disposition of some or all of each other's claims,

and, therefore, dispute the probability of success, the settlement represents a fair compromise of

the Anderson Proof of Claim. Settlement at this stage avoids the expense, inconvenience,

uncertainty, and delay that would be caused by relitigating any of the issues resolved by the

Anderson Class Action Settlement and further negotiated in the Agreement to the benefit of the

Debtors' estates.

        24.    The Agreement alleviates the financial burden, time, and uncertainty

associated with continued litigation of the Anderson Proof of Claim and the Anderson Class

Action Settlement.

        25.    Moreover, approval of the Agreement comports with this Court's October

6, 2009 Order Pursuant to 11 U.S.C. §105(a) and Fed. R. Bankr. P. 3007 and 9019(b)

Authorizing the Debtors to (I) File Omnibus Claims Objections and (II) Establish Procedures for

Settling Certain Claims (the "**De Minimis Order**"), (ECF No. 4180). The De Minimis Order

states, in relevant part, the following:

> If the Settlement Amount for a Claim is not a De Minimis
> Settlement Amount *but is less than or equal to $50 million*, the
> Debtors will submit the proposed settlement to the Creditors'
> Committee. Within five (5) business days of receiving the
> proposed settlement, the Creditors' Committee may object or
> request an extension of time within which to object. If there is a
> timely objection made by the Creditors' Committee, the Debtors
> may either (a) renegotiate the settlement and submit a revised
> notification to the Creditors' Committee or (b) file a motion with
> the Court seeking approval of the existing settlement under
> Bankruptcy Rule 9019 on no less than 10 days' notice. *If there is*
> *no timely objection made by the Creditors' Committee or if the*
> *Debtors receive written approval from the Creditors' Committee of*
> *the proposed settlement prior to the objection deadline (which*
> *approval may be in the form of an email from counsel to the*
> *Creditors' Committee), then the Debtors may proceed with the*
> *settlement.*

26.     In accordance with this De Minimis Order, the Agreement, including the

Total Allowed Unsecured Claim, was submitted to the Creditors' Committee, which informed

the Debtors that it has no objection to either the Agreement as a whole or to the Total Allowed

Unsecured Claim provided for in of the Agreement.

27.     The Debtors submit that the Agreement falls well within the range of

reasonableness, is in the best interests of the Debtors' estates and their creditors, and should be

approved as a sound exercise of the Debtors' business judgment. Accordingly, the Debtors

respectfully request the entry of the Order.

**VI.     The Settlement Should Be Approved by this Court Under Rule 23**

28.     The Agreement should also be approved pursuant to Rule 23.

29.     Federal courts have long expressed a preference for the negotiated resolution of litigation. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910) ("Compromises of disputed claims are favored by the courts."). A general policy favoring settlement exists, especially with respect to class actions. *See, e.g., In re AMC Realty Corp.*, 270 B.R. 132, 145-46 (Bankr. S.D.N.Y. 2001) (recognizing that "settlements are favored in federal law and the prompt resolution of claims and disputes makes the compromise of claims of particular importance in the bankruptcy reorganization") (internal quotation marks omitted); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir.) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation omitted), *cert. denied*, 544 U.S. 1044 (2005); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."), *cert. denied*, 464 U.S. 818 (1983).

(a)     **The Anderson Class Satisfies Rules 23(a) and 23(b)**

30.     "Before certification is proper for any purpose—settlement, litigation, or otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met." *Denney v. Deutsche Bank A G*, 443 F.3d 253, 270 (2d Cir. 2006). "Rule 23(a) and (b) standards apply equally to certifying a class action for settlement or for trial, with one exception." Manual for Complex Litigation § 21.132 (4th ed. 2004) (emphasis added). "Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems," under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

31.     The Parties stipulate, solely for the purposes of settlement, that the Anderson Class meets the standards of Rules 23(a) and (b). Specifically, the Parties submit that

this Court should adopt the California Court's findings with respect to the certification of the

Anderson Class under California Section 382 and find that the Anderson Class meets the

standards of Rule 23.

32.      The California Court's findings in its in its Preliminary Approval Order

and Final Judgment further demonstrate the satisfaction of Rules 23(a) and (b). In those orders,

the California Court found that:

- The Anderson Class is so numerous that joinder of all members is
  impracticable;

- There are questions of law or fact common to the Anderson Class;

- Anderson's claim, as a representative party, is typical of the claims of the
  Anderson Class Members;

- Anderson will fairly and adequately assert and protect the interests of the
  Anderson Class;

- Questions of fact common to the Anderson Class predominate over factual
  questions affecting only individual members; and

- The Anderson Class Action provides a fair and efficient method for
  adjudication of the controversy. (*See* Final Judgment ¶ 2 (Ex. F).)

33.      The California Supreme Court has recognized that the requirements for

class certification under Rule 23(a) are "analogous to the requirements for class certification

under Code of Civil Procedure section 382." *In re Tobacco II Cases*, 207 P.3d 20, 33 (Cal.

2009); *Fireside Bank v. Superior Court*, 155 P.3d 268, 281 (Cal. 2007) (identifying requirements

for class action under section 382). To this end, California courts look to federal class action law

"when seeking guidance on issues of class action procedure." *In re Tobacco II Cases*, 207 P.3d

at 33.

34.    Accordingly, this Court should adopt the findings of the California Court

in its Preliminary Approval Order and Final Judgment and find that the Anderson Class satisfies

Rules 23(a) and 23(b) solely for the purposes of the Agreement.

      **(b)**      **The Agreement Satisfies Rule 23(e)**

35.    This Court should also find that the Agreement satisfies Rule 23(e)(2).

36.    Rule 23(e) requires court approval of a class action settlement. The

standard for reviewing the proposed settlement of a class action in the Second Circuit, as in other

circuits, is whether the proposed settlement is *"fair, reasonable and adequate."* *In re Luxottica*

*Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (emphasis added); *see In re*

*Indep. Energy Holdings PLC*, No. 00-CIV-6689 (SAS), 2003 WL 22244676, at *9 (S.D.N.Y.

Sept. 29, 2003). In reviewing the reasonableness of a proposed class action settlement, courts

are cautioned against substituting their judgment for that of the parties who negotiated the

settlement or conducting a mini-trial on the merits of the action. *See Weinberger*, 698 F.2d at 74;

*In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993). To that end, the Second

Circuit has established the following factors as relevant in evaluating class action settlements:  (i)

the complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the

settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the

risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining

the class action through the trial; (vii) the ability of the defendants to withstand a greater

judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible

recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in

light of all the attendant risks of litigation. *See In re Indep. Energy Holdings PLC*, 2003 WL

22244676, at *3; *accord In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. at 311.

      37.    Here, there can be no doubt that the Agreement should be approved based

on the foregoing factors. Absent the Agreement, the Parties would have faced the expense and

duration of a lengthy and complex trial of the Anderson Class Action. *See City of Detroit v.*

*Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v.*

*Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). At a minimum, litigation of the Anderson

Class Action would have involved numerous fact witnesses, experts, hundreds of documents,

pre-trial motions, and likely post-trial motions and appeal. Additionally, despite notice of the

Anderson Class Action Settlement being mailed *twice* , no objections to the settlement were

received. *See In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *3. Further, the

relatively advanced stage of the Anderson Class Action litigation provided counsel with more

than enough information to assess the strengths and weaknesses of their case as well as the risks

of damages. Indeed, the Anderson Class Action litigation has been ongoing since May 2004 and

has involved two separate and lengthy court-ordered settlement conferences before a California

state court judge; extensive document and deposition discovery; and significant law and motion

practice.

      38.    The Agreement also is fair, reasonable and adequate. While the Claim

will be settled for approximately $1.2 million *less* than the amount asserted in the Anderson

Proof of Claim, the Participating Anderson Class Members will largely obtain a general

unsecured claim in the amount they would have received pre-bankruptcy. And, for those

Participating Anderson Class Members who had "constant noise" and may have been eligible to

receive a noise evaluation and repair from an authorized Chevrolet dealer, the Agreement

contemplates that, once the Total Allowed Unsecured Claim is converted to cash or monetized

under the terms of the Agreement, Participating Anderson Class Members who signed,

completed and submitted a Claim Form stating under penalty of perjury that, prior to the

expiration of the GM Limited New Vehicle Warranty, he or she made inquiry or expressed

concern to an authorized GM dealer or GM about constant noise and did not receive a repair, will

obtain reimbursement, on a *pro rata* basis, in the amount of $1,800.00. Moreover, if such a

Participating Anderson Class Member submitted an incomplete Claim Form but the claim for

"constant noise" is otherwise valid, the Participating Anderson Class Member may obtain

reimbursement, on a *pro rata* basis, in the amount of $900.00.

   39. Further, the settlement amount is reasonable. Pursuant to the Agreement,

the Claim will immediately be estimated in the amount of $8,853,300.00. The Parties agreed on

this amount after a detailed review of approximately 1,000 of the Participating Anderson Class

Members' claims and extensive negotiations.

   40. Finally, the Agreement is the result of numerous, arms-length negotiations

between the Parties and their respective counsel concerning modification of the Anderson Class

Action Settlement. *See In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *3; *In re

Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. at 311.

   41. Based on the foregoing, this Court should find that the Agreement satisfies

Rule 23(e)(2).

   **(c)**  **No Additional Notice Is Required**

   42. The Notice of Settlement adopted and approved by the Parties and the

California Court was in full compliance with the notice requirements of due process, federal law,

the Constitution of the United States, and any other applicable law, and this Court need not

require any new notice to be given to the Anderson Class. *See Green v. Am. Express Co.*, 200

F.R.D. 211, 212 (S.D.N.Y. 2001); *In re Nazi Era Cases Against German Defendants Litig.*, 198

F.R.D. 429, 441 (D.N.J. 2000); 6 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, §

11.72 (4th ed. 2002).

    43.    In *Rosenberg v. XO Communications, Inc. (In re XO Communications,*

*Inc.)*, the Southern District of New York Bankruptcy Court approved a stipulation that the debtor

need not provide new notice to all potential class action members of a Rule 9019 motion settling

the class action when notice of class action settlement had already been provided in the state

court settlement. *See* 330 B.R. 394, 409-410 (Bankr. S.D.N.Y. 2005).

    44.    Here, the California Court previously ordered that the Notice of

Settlement be effected by direct mailing notice of the settlement *twice* to 240,000 California

owners and lessees of model year 1999-2003 Silverado vehicles—once after the Preliminary

Approval Order and again after the Final Judgment. Those notices resulted in the submission of

Claim Forms and the identification of the Participating Anderson Class Members. This Court

should also find that the Notice of Settlement was previously provided in full compliance with

the notice requirements of due process, federal law, the Constitution of the United States, and all

other applicable law. Indeed, based on the Parties' stipulation, this Court previously ordered that

notice on Class Counsel was sufficient to notify all members of the Anderson Class Action,

including the Participating Anderson Class Claims. (*See* Stipulation of Settlement, attached

hereto as **Exhibit "G,"** at 2 ("Notice to the undersigned class counsel shall be, and shall be

deemed to be, sufficient notice to all class members in the Dex-Cool Class Action and the

Anderson Class Action.").)

45.    The changes to the Anderson Class Action Settlement that the Parties agreed to in order to implement the settlement after GM's bankruptcy and that are contained in the Agreement do not require that any new or additional notice be given, particularly where, as here, the changes resulted in terms that provide the Participating Anderson Class Members with the Total Allowed Unsecured Claim that is equivalent to the approximate value of the benefits that would have been provided to the Participating Andersen Class Members under the Anderson Class Action Settlement.

46.    Moreover, the Debtors have already paid for notice to the Anderson Class and have *not* agreed to pay for any further notice; in fact the Agreement will be void if any further notice is required by this Court. (*See* Agreement ¶ 1 ("The Parties further acknowledge and agree that, in the unlikely event that this Court requires any further notice to the Anderson Class, this Agreement shall be void and the Parties shall no longer be bound by this Agreement.").) In these circumstances, no additional notice should be required. *See Green,* 200 F.R.D. at 213 (ordering that "no notice be served when the cost of notice, to say nothing of the postage, would jeopardize, and likely destroy, the hard fought settlement agreement that the parties have presented to this Court"); *cf. Hainey v. Parrott,* 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) ("Furthermore, establishing a second opt-out period would not be in the best interests of the class because it would result in additional administrative costs, which in turn reduces the amount available for distribution.").

47.    Finally, there is no evidence of any collusion between the Parties to the Agreement, further indicating that no additional notice is required. *See Green,* 200 F.R.D. at 213 (ordering no notice of settlement be given when "[f]irst, and most significantly, there is no evidence of collusion between the parties"); *Selby v. Principal Mut. Life Ins. Co.,* No. 98 Civ.

5283 (RLC), 2003 WL 22772330, at *4 (S.D.N.Y. Nov. 21, 2003) (ordering no notice of

settlement be given "where is no evidence of collusion between the parties, and the settlement

negotiations were conducted at arms-length").

48.     Based on the foregoing, this Court should find that the dissemination of

the Notice of Settlement satisfied the requirements of Rule 23(e) and due process, and no new

notice need be given regarding the Agreement.

## VII.    Notice

49.     Notice of this Motion has been provided to (i) Class Counsel, P.C.,

attorneys for Anderson and the Anderson Class, Girard Gibbs LLP (Attn.: Eric H. Gibbs, Esq.

and A. J. De Bartolomeo, Esq.), 601 California Street, Suite 1400, San Francisco, California

94108; and (ii) parties in interest in accordance with the Fifth Amended Order Pursuant to 11

U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case

Management Procedures, dated January 3, 2011 (ECF. No. 8360). The Debtors submit that such

notice is sufficient and no other or further notice need be provided.

50.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       March 14, 2011

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession