HEARING DATE AND TIME: April 26, 2011 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: April 19, 2011 at 4:00 pm. (Eastern Time)

---

**PLEASE CAREFULLY REVIEW THIS OBJECTION AND
THE ATTACHMENTS HERETO TO DETERMINE WHETHER
THIS OBJECTION AFFECTS YOUR CLAIM(S)**

---

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x
:
In re                                                     :          Chapter 11 Case No.
:
**MOTORS LIQUIDATION COMPANY**, *et al.*,      :          **09-50026 (REG)**
        **f/k/a General Motors Corp.**, *et al.*            :
:
                            Debtors.              :          (Jointly Administered)
:
------------------------------------------------------------------x

<u>NOTICE OF DEBTORS' 218TH OMNIBUS OBJECTION TO CLAIMS</u>
**(Duplicate Claims Filed by Individual Members of the Dex-Cool Class)**

**PLEASE TAKE NOTICE** that on March 24, 2011, Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), filed their 218th omnibus objection to claims (the "**218th**

**Omnibus Objection to Claims**"), and that a hearing to consider the Debtors' 218th Omnibus

Objection to Claims will be held before the Honorable Robert E. Gerber, United States

Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, New York, New York 10004, on **April 26, 2011 at 9:45 a.m.**

**(Eastern Time)**, or as soon thereafter as counsel may be heard.

> **PARTIES RECEIVING THIS NOTICE SHOULD REVIEW THE 218TH OMNIBUS OBJECTION TO CLAIMS TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN EXHIBIT "A" ANNEXED THERETO.**

> **PLEASE TAKE FURTHER NOTICE** that any responses to the 218th Omnibus

Objection to Claims must be in writing, shall conform to the Federal Rules of Bankruptcy

Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy

Court (a) electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham,

Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.); (xii) Girard Gibbs LLP, Co-Lead Class Counsel for the Dex-Cool Plaintiffs

and the Dex-Cool Class, 601 California Street, Suite 1400, San Francisco, California 94108

(Attn:  Eric H. Gibbs, Esq. and A. J. De Bartolomeo, Esq.); and (xiii) Polsinelli Shughart P.C.,

Co-Lead Class Counsel for the Dex-Cool Plaintiffs and the Dex-Cool Class, Twelve Wyandotte

Plaza, 120 West 12th Street, Kansas City, Missouri 64105 (Attn.: P. John Brady, Esq.), so as to

be received no later than **April 19, 2011 at 4:00 p.m. (Eastern Time)** (the "**Response**

**Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that if no response is timely filed and

served with respect to the Debtors' 218th Omnibus Objection to Claims or any claim set forth

thereon, the Debtors may, on or after the Response Deadline, submit to the Bankruptcy Court an

order substantially in the form of the proposed order annexed to the Debtors' 218th Omnibus

Objection to Claims, which order may be entered with no further notice or opportunity to be

heard offered to any party.

Dated:  New York, New York
        March 24, 2011

                                    /s/ Joseph H. Smolinsky
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Debtors
                                    and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :        09-50026 (REG)
       f/k/a General Motors Corp., et al. :
                                          :
                    Debtors.              :        (Jointly Administered)
                                          :
--------------------------------------------------------------x
```

## DEBTORS' 218TH OMNIBUS OBJECTION TO CLAIMS
### (Duplicate Claims Filed by Individual Members of the Dex-Cool Class)

---

THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON THE EXHIBITS ATTACHED TO THIS OBJECTION.

---

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

## TABLE OF CONTENTS

**Page**

I.      Relief Requested ................................................................................................ 1

II.     Jurisdiction ........................................................................................................ 4

III.    Background ........................................................................................................ 4

IV.     The Relief Requested Should Be Approved by the Court ................................. 9

V.      Notice ............................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Adelphia Commc'ns Corp.*,
  No. 02-41729 (REG), 2007 Bankr. LEXIS 660
  (Bankr. S.D.N.Y. Feb. 20, 2007) ..........................................................................................10

*In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey*,
  160 B.R. 882 (Bankr. S.D.N.Y. 1993) ...................................................................................10

*In re Oneida, Ltd.*,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC),
  2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) ............................................................................9

*In re Rockefeller Ctr. Props.*,
  272 B.R. 524 (Bankr. S.D.N.Y. 2000) ...................................................................................10

## STATUTES/RULES

11 U.S.C. § 105 ...............................................................................................................................11

11 U.S.C. § 502 .......................................................................................................................2, 7, 9, 10

28 U.S.C. § 157 .................................................................................................................................4

28 U.S.C. § 1334 ...............................................................................................................................4

Fed. R. Bankr. P. 1015 ....................................................................................................................11

Fed. R. Bankr. P. 3007 ...............................................................................................................2, 8, 9

Fed. R. Bankr. P. 9007 ....................................................................................................................11

Fed. R. Bankr. P. 9019 ......................................................................................................................3

Fed. R. Civ. P. 23 ..............................................................................................................................3

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully represent:

## I.    Relief Requested

1.    The Debtors file this 218th omnibus objection to claims (the "**218th Omnibus Objection to Claims**") pursuant to section 502(b) of title 11 of the United States Code, Rule 3007(d) of the Federal Rules of Bankruptcy Procedure, and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these chapter 11 cases (the "**Procedures Order**") (ECF No. 4180), seeking to disallow and expunge certain proofs of claim listed on **Exhibit "A"** annexed hereto (the "**Individual Dex-Cool Claims**").  The Individual Dex-Cool Claims should be expunged because they are duplicative of Proof of Claim No. 51095 (the "**Dex-Cool Class Action Claim**"), and they are inconsistent with a complete and general release previously provided by members of the Dex-Cool Class (defined below) to the Debtors as part of a settlement.

2.    Specifically, the Dex-Cool Class Action Claim was filed by class action plaintiffs (the "**Dex-Cool Plaintiffs**") on behalf of themselves and a class of all others similarly situated (collectively, the "**Dex-Cool Class**" and, together with the Dex-Cool Plaintiffs, the "**Dex-Cool Parties**") based on a settlement reached between the Debtors and the Dex-Cool Parties (the "**Dex-Cool Class Action Settlement**").  The Dex-Cool Class Action Settlement settled claims by the Dex-Cool Parties against General Motors Corporation ("**GM**") concerning, among other things, claims that "Dex-Cool" extended life engine coolants corroded and sludged various engine and cooling system components and led to expensive repairs (the "**Dex-Cool Class Actions**").  The Dex-Cool Class Actions were settled prior to GM's bankruptcy filing, but,

1

due to the Debtors' chapter 11 filings, the class consideration contemplated by the Dex-Cool

Class Action Settlement could not be provided to all members of the Dex-Cool Class entitled to

receive such consideration.  The Dex-Cool Class Action Claim is based on the Dex-Cool Class

Action Settlement that was previously approved by both the Superior Court of the State of

California, County of Alameda (the "**California Court**") and the Circuit Court of Jackson

County, Missouri at Independence (the "**Missouri Court**").  The Dex-Cool Claim thus seeks

remaining consideration purportedly due to certain members of the Dex-Cool Class who

resubmitted claims for reimbursement (*e.g.*, to correct initial deficiencies) and now hold valid

claims (the "**Resubmitting Participating Class Members**").  Importantly, all other members of

the Dex-Cool Class, including some of the individuals who filed the Individual Dex-Cool

Claims, either already have received the consideration due to them under the terms of the Dex-

Cool Class Action Settlement or are not entitled to receive consideration under the terms of the

Dex-Cool Class Action Settlement.

        3.      The Debtors and the Dex-Cool Parties (together, the "**Parties**") have

recently reached an agreement to resolve the Dex-Cool Class Action Claim the ("**Agreement**")

and have asked this Court to approve the Agreement such that the previously approved Dex-Cool

Class Action Settlement can be implemented, as modified.  (*See* Motion for Entry of Order

Pursuant to Fed. R. Bankr. P. 9019 and Fed. R. Civ. P. 23 Approving Agreement Resolving

Proof of Claim No. 51095 and Implementing Modified Dex-Cool Class Settlement (ECF No.

9905) (the "**Dex-Cool Modification Motion**").)  The deadline for any responses or objections to

the Dex-Cool Modification Motion is April 19, 2011 at 4:00 p.m. (Eastern Time).  If the

Agreement is approved, each eligible Resubmitting Participating Class Member will receive a

*pro rata* distribution in the form of a general unsecured claim, as further set forth in the Agreement.

4.      The Individual Dex-Cool Claims were filed by certain members of the Dex-Cool Class (the "**Individual Dex-Cool Claimants**") and are based on the Dex-Cool Class Action Settlement or claims that have been released through the Dex-Cool Class Action Settlement.  However, as the Dex-Cool Class Action Claim is filed on behalf of all members of the Dex-Cool Class, including the Individual Dex-Cool Claimants, the Individual Dex-Cool Claims are duplicative of the Dex-Cool Class Action Claim.  Moreover, to the extent Individual Dex-Cool Claims were filed in order to seek consideration over and above what is due (or already has been provided) under the terms of the Dex-Cool Class Action Settlement, the claim is without merit, as *all* members of the Dex-Cool Class (defined to exclude those persons who opted out of the Dex-Cool Class) released GM of any and all claims concerning or relating to the Dex-Cool Class Actions.  Consequently, if the Individual Dex-Cool Claimants have any right to consideration from the Debtors, it is through the Agreement (if approved).

5.      Accordingly, the Debtors respectfully request entry of the Order Granting Debtors' 218th Omnibus Objection to Claims (the "**Order**"), a copy of which is attached hereto as **Exhibit "B,"** disallowing and expunging from the Claims Register the Individual Dex-Cool Claims as duplicative of the Dex-Cool Class Action Claim.

6.      This 218th Omnibus Objection to Claims does not affect the Dex-Cool Class Action Claim and does not constitute any admission or finding with respect to the Individual Dex-Cool Claims or the Dex-Cool Class Action Claim Claim.  Further, the Debtors reserve all of their rights to object on any basis to the Dex-Cool Class Action Claim or on any

other basis to the Individual Dex-Cool Claims should the Court not grant the relief requested

herein.

## II.    Jurisdiction

7.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## III.    Background

8.      On April 11, 2003, cases were filed in California and Missouri state courts

based on GM's use of "Dex-Cool" as a factory-fill coolant in certain of its vehicles.  The

California case, captioned *Sadowski v. General Motors Corp.*, No. HGO-3093843, was

dismissed without prejudice in deference to an action before the California Court and the

Missouri case, captioned *Gutzler v. General Motors Corp.*, No. 03CV208786, was filed in the

Missouri Court.  Similar cases were then filed by more than a dozen different law firms in state

and federal courts throughout the country.  GM removed most of the state actions to federal court

and filed a petition with the Judicial Panel on Multidistrict Litigation (the **"MDL Panel"**) to

transfer and consolidate them into a federal multidistrict litigation.  The *Sadowski* and *Gutzler*

cases were remanded back to the California and Missouri Courts, respectively.  By order of the

MDL Panel, all other cases either originally filed in or removed to federal court were

consolidated for pretrial purposes in the United States District Court for the Southern District of

Illinois, under the caption *In re DEX-COOL Products Liability Litigation*.  The law firms of

Girard Gibbs LLP and Shughart Thomson & Kilroy, P.C. were appointed Co-Lead Counsel in

the various courts where the Dex-Cool Class Action Actions were being prosecuted (collectively,

"**Co-Lead Class Counsel**").

9.      On March 26, 2008, after years of substantial discovery, law, and motion

practice, GM and the Dex-Cool Parties reached the Dex-Cool Class Action Settlement, which

4

provided, among other things, that (i) the *Gutzler* action and the claims of a Missouri-only class would be resolved through one agreement, subject to the Missouri Court's approval, and (ii) the *Sadowski* action, all other Dex-Cool putative class actions, and the claims of a nationwide class (excluding persons who purchased or leased their vehicle in Missouri) would be resolved through another settlement, both settlements of which were dependent upon each other and subject to the approval of *both* the California Court and the Missouri Court.

10.      The Dex-Cool Class Action Settlement was submitted to the Missouri and California Courts for approval, and they were subsequently approved.  In the Preliminary Approval Orders, the Missouri and California Courts set fairness hearings (the "**Fairness Hearings**") for final approval of the Dex-Cool Class Action Settlement; set forth deadlines for objecting to the Dex-Cool Class Action Settlement and appearing at the Fairness Hearings; approved the forms of class notice (collectively, the "**Notice of Settlement**"); and approved of the proposed manner of providing notice, which manner included (i) direct mail notice to certain readily identifiable Dex-Cool Class members; (ii) publication notice through a number of nationally circulated magazines and weekend newspaper supplements, as well as through Internet advertising; and (iii) electronic notice through a dedicated website.  The publication notice was published in four national newspaper supplements, with an estimated circulation of 65,900,000; twelve national consumer magazines, with a total estimated circulation of 43,865,000; and in Internet advertising appearing across a wide-range of websites, with an estimated 199,500,000 views.

11.      On October 23, 2008, and September 5, 2008, respectively, after conducting the Fairness Hearings, the California and Missouri Courts entered judgments (the

"**Final Judgments**"), in which they finally certified the Dex-Cool Class and finally approved the

Dex-Cool Class Action Settlement.[1]

      12.      Before the bankruptcy filing and in accordance with the Dex-Cool Class

Action Settlement and the Final Judgments, the following occurred:

- Garden City Group, serving as claims administrator (the "**Claims Administrator**"), collected 68,154 claims statements that were timely submitted;

- The Claims Administrator approved approximately 40,000 claims as valid and entitled to payment under the Dex-Cool Class Action Settlement;

- GM funded approximately $6,127,758.00 necessary to pay those approved claims;

- Notice of deficiency letters were sent out by the Claims Administrator, to the remaining claimants (approximately 28,000), informing them of how to cure deficient claims statements for resubmission;

- The Resubmitting Participating Class Members submitted approximately 11,299 claim statements in an attempt to cure previously-deficient statements; and

---

[1]    The Missouri Court certified the following class: "All Consumers who purchased or leased a Covered Vehicle in the State of Missouri (i) that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred an expense of the type included in the definition of Covered Repair, or (ii) who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order." Excluded from the Missouri Class were GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; and the Judge to whom the Action is assigned as well as his or her immediate family.

    The California Court certified the following class: "All Consumers in the United State of America, excepting those who purchased or leased their vehicles in the State of Missouri, who (i) own or lease, or who have owned or leased, a Covered Vehicle that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred a repair expense of the type included in the definition of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order." Excluded from the California Class were GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone employed by counsel for Representative Plaintiffs, any Judge to whom any of the Actions is assigned as well as his or her immediate family; any and all persons who timely and validly request exclusion from the Class pursuant to the notice disseminated in accordance with the Notice Order.

- The Claims Administrator reviewed approximately 6,685 of the Claim Forms submitted by the Resubmitted Participating Dex-Cool Class Members and approved claims totaling $1,325,568.60.

13. On June 1, 2009, certain of the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), which stayed all further implementation of the Dex-Cool Class Action Settlement, including the Claims Administrator's review of the remaining 4,614 Claim Forms submitted by the Resubmitting Participating Class Members.

14. On September 16, 2009, this Court entered the Bar Date Order which, among other things, established November 30, 2009 at 5:00 p.m. (Eastern) as the deadline to file proofs of claim against MLC and certain of the other Debtors based on prepetition claims and set forth procedures for filing proofs of claim in these chapter 11 cases.

15. Furthermore, on October 6, 2009, this Court entered the Procedures Order, which authorizes the Initial Debtors, among other things, to file omnibus objections to no more than 100 claims at a time, under various grounds, including those set forth in Bankruptcy Rule 3007(d) and those additional grounds set forth in the Procedures Order. The claimants that are listed in Exhibit "A" have all filed claims against the Initial Debtors.

16. On November 24, 2009, the Parties entered into a stipulation (the "**Stipulation**") permitting Co-Lead Class Counsel to file, on behalf of all members of the Dex-Cool Class, the Dex-Cool Class Action Claim against the Debtors.

17. On November 25, 2009, the Dex-Cool Class Action Claim was filed with this Court on behalf of the Dex-Cool Class and assigned claim number 51095. The Dex-Cool Class Action Claim, a copy of which is attached hereto as **Exhibit "C,"** asserts a claim in the amount of $3,000,000.00, for class consideration allegedly due pursuant to the Dex-Cool Class Action Settlement.

7

18.    On December 1, 2009, the Court entered the Order Approving the Stipulation (the "**Stipulated Order**"), a copy of which is attached hereto as **Exhibit "D,"** permitting Co-Lead Class Counsel to file the Dex-Cool Class Action Claim against the Debtors. The Dex-Cool Class Action Claim seeks relief on behalf of all of the Dex-Cool Class members, and, through the Stipulated Order, Co-Lead Class Counsel "consents to" and "is deemed to be the claimant" for purposes of receiving notices and distributions on behalf of the members of the Dex-Cool Class.  (*See id.*)

19.    The Individual Dex-Cool Claimants are members of the Dex-Cool Class. Court records indicate that none of the Individual Dex-Cool Claimants opted out of the Dex-Cool Class.  Further, the proofs of claim filed by the Individual Dex-Cool Claimants seek to obtain benefits from the Dex-Cool Class Action Settlement or that are related to the claims released through the Dex-Cool Class Action Settlement.  Thus, the Individual Dex-Cool Claims are duplicative of the Dex-Cool Class Action Claim.  (*See id.*)

20.    On March 24, 2011, the Debtors filed their Dex-Cool Modification Motion (ECF No. 9905), a copy of which is attached hereto without exhibits as **Exhibit "E,"** seeking to implement the Agreement providing for approval of the settlement previously reached in the Dex-Cool Class Action with certain modifications necessary as a result of the Debtors' chapter 11 cases.  A hearing on the Dex-Cool Modification Motion is currently scheduled for April 26, 2011 at 9:45 a.m. (Eastern Time).

21.    Accordingly, provided that the Court approves the Agreement and the Individual Dex-Cool Claimants are entitled to consideration due under the terms of the original Dex-Cool Class Action Settlement, they will obtain a *pro rata* distribution based on the Dex-Cool Class Action Claim pursuant to the terms of the Agreement.

## IV.     The Relief Requested Should Be Approved by the Court

22.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010); *In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

23.     Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  Further, the Debtors cannot be required to pay on the same claim more than once.  *See, e.g., In re Finley, Kumble, Wagner, Heine, Underberg, Manley, Myerson, & Casey*, 160 B.R. 882, 894 (Bankr. S.D.N.Y. 1993) ("In bankruptcy, multiple recoveries for an identical injury are generally disallowed.").

24.     The Individual Dex-Cool Claims should be expunged because they are duplicative of the Dex-Cool Class Action Claim.  The Individual Dex-Cool Claimants are members of the Dex-Cool Class, and the Individual Dex-Cool Claims seek amounts purportedly due based on the Dex-Cool Class Action Settlement, which has already been resolved by the Debtors with the settlement of the Dex-Cool Class Action Claim set forth in the Agreement.  The Individual Dex-Cool Claims already are covered by the Dex-Cool Class Action Claim, and Individual Dex-Cool Claimants are not entitled to individual relief separate and apart from the Dex-Cool Class Action Claim.  Accordingly, to the extent the Individual Dex-Cool Claimants

are entitled to any relief under the Dex-Cool Class Action Settlement, they will obtain a *pro rata* distribution based on the Dex-Cool Class Action Claim pursuant to the Agreement.

25.    Moreover, any Individual Dex-Cool Claims related to the claims released in the Dex-Cool Class Action Settlement necessarily merged into the Final Judgment and dismissal of the Dex-Cool Class Actions by the California and Missouri Courts.  Accordingly, the Dex-Cool Plaintiffs and Co-Lead Class Counsel, and not individual members of the Dex-Cool Class, are the proper parties to bring claims for consideration due under the terms of the Dex-Cool Class Action Settlement.

26.    To avoid the possibility of multiple recoveries by the same creditor, and because the Individual Dex-Cool Claimants already agreed to be bound by the Dex-Cool Class Action Settlement as members of the Dex-Cool Class, the Debtors respectfully request that the Court disallow and expunge the Individual Dex-Cool Claims in their entirety.

## V.    Notice

27.    Notice of this 218th Omnibus Objection to Claims has been provided to (i) each claimant listed on Exhibit "A"; (ii) Girard Gibbs LLP, Co-Lead Class Counsel for the Dex-Cool Plaintiffs and the Dex-Cool Class, 601 California Street, Suite 1400, San Francisco, California 94108 (Attn.: Eric H. Gibbs, Esq. and A. J. De Bartolomeo, Esq.); (iii) Polsinelli Shughart P.C., Co-Lead Class Counsel for the Dex-Cool Plaintiffs and the Dex-Cool Class, Twelve Wyandotte Plaza, 120 West 12th Street, Kansas City, Missouri 64105 (Attn.: P. John Brady, Esq.); and (iv) parties in interest in accordance with the Fifth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated January 3, 2011 (ECF No. 8360).  The Debtors submit that such notice is sufficient and no other or further notice need be provided.

28.     No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       March 24, 2011

                                        /s/ Joseph H. Smolinsky
                                        Harvey R. Miller
                                        Stephen Karotkin
                                        Joseph H. Smolinsky

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Debtors in Possession

# EXHIBIT A

218th Omnibus Objection

**Exhibit A**

Motors Liquidation Company, et al.
Case No. 09-50026 (REG),  Jointly Administered

## *CLAIMS TO BE DISALLOWED AND EXPUNGED*

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| ALBERTA B JONES<br>309 SHADY OAKS CT<br>ST CLAIR, MO 63077 | 45262 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$680.11 (U)<br>$680.11 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| BAKER, DENNIS R<br>3720 QUADRANT DR<br>NORTH BEND, OH 45052-9507 | 46621 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$846.39 (U)<br>$846.39 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| BARBARA BRANDT<br>410 AMY CT.<br>DAYTON, OH 45415UNITED STATES OF AMERICA | 70408 | Motors Liquidation Company | $696.39 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$0.00 (U)<br>$696.39 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| BRIAN K HUTSON<br>418 TREES OF AVALON PKWY<br>MCDONOUGH, GA 30253 | 70158 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$1,379.29 (U)<br>$1,379.29 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| CAITLIN BAILEY<br>45 AVERY ROAD<br>NEWINGTON, CT 06111 | 62460 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$581.27 (U)<br>$581.27 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| CHRISTOPHER PETERSON<br>16267 JEFFERSON STREET<br>OMAHA, NE 68135 | 62566 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$466.24 (U)<br>$466.24 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".

(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

218th Omnibus Objection

**Exhibit A**

Motors Liquidation Company, et al.
Case No. 09-50026 (REG),  Jointly Administered

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| DANIEL LAVOIE<br>555 CANAL ST<br>APT # 1505<br>MANCHESTER, NH 03101 | 15420 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$1,018.76 (U)<br>$1,018.76 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| DARLENE INGRASSIA<br>357 DUMBARTON BOULEVARD<br><br>RICHMOND HEIGHTS, OH 44143UNITED STATES OF AMERICA | 64485 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$680.74 (U)<br>$680.74 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| DENNIS RENNER<br>214 N FULTON ST<br><br>VAN WERT, OH 45891 | 62185 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$278.54 (U)<br>$278.54 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| DENNIS RENNER<br>214 N FULTON ST<br><br>VAN WERT, OH 45891 | 62186 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$462.72 (U)<br>$462.72 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| DONALD BOGNER<br>6353 DEWEY RD<br><br>MADISON, OH 44057 | 61022 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$476.48 (U)<br>$476.48 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| EDNA SELLITTI<br>661 NE WAS MYRTLE WY<br><br>JENSEN BCH, FL 34957 | 11545 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$677.66 (U)<br>$677.66 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".

(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

218th Omnibus Objection

**Exhibit A**

Motors Liquidation Company, et al.
Case No. 09-50026 (REG),  Jointly Administered

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| FRANK TUMMINELLO 167 PINE TREE ROAD OCEAN CITY, MD 21842UNITED STATES OF AMERICA | 48447 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $1,500.97 | (U) | | |
| | | | $1,500.97 | (T) | | |
| GARY ENNIS 631 CHIC ENNIS RD BENSON, NC 27504 | 69793 | Environmental Corporate Remediation Company, Inc. | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $577.98 | (U) | | |
| | | | $577.98 | (T) | | |
| GARY ENNIS 631 CHIC ENNIS RD BENSON, NC 27504 | 69794 | Remediation And Liability Management Company, Inc. | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $534.13 | (U) | | |
| | | | $534.13 | (T) | | |
| GREG SABO 2745 SABLE CT MOUNT PLEASANT, MI 48858 | 61409 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $100.00 | (U) | | |
| | | | $100.00 | (T) | | |
| HAROLD MOSCHETZ 17322 W CLEVELAND AVE NEW BERLIN, WI 53146UNITED STATES OF AMERICA | 70345 | Motors Liquidation Company | | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | Unliquidated | | | |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".

(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

### CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| HELENE TACHNA 37198 FOX CHASE FARMINGTON HILLS, MI 48331 UNITED STATES OF AMERICA | 70379 | Motors Liquidation Company | $0.00 $0.00 $0.00 $935.60 $935.60 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| HOPE PLISKOW PO BOX 339612 FARMINGTON HILLS, MI 48333 | 48390 | Motors Liquidation Company | $0.00 $0.00 $0.00 $645.00 $645.00 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| HUGHES, JILL J 18143 N. 27TH WAY PHOENIX, AZ 85032 UNITED STATES OF AMERICA | 50847 | Motors Liquidation Company | $0.00 $0.00 $0.00 $857.01 $857.01 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| J ROSS 1230 BUTLER RD SAGINAW, MI 48601-6308 | 28746 | Motors Liquidation Company | $0.00 $0.00 $0.00 $561.00 $561.00 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| JOAN WALDROP 169 CEDARVIEW LANE WATERVLIET, NY 12189 | 70028 | Motors Liquidation Company | Unliquidated | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

218th Omnibus Objection

**Exhibit A**

## *CLAIMS TO BE DISALLOWED AND EXPUNGED*

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| JULIA MCLAUGHLIN<br>4207 45TH STREET EAST<br><br>BRADENTON, FL 34208 | 25278 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$690.87 (U)<br>$690.87 (T)<br>Unliquidated | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| KATHIE ISENBERG<br>PO BOX 915<br><br>DEER PARK, WA 99006 | 65846 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$856.72 (U)<br>$856.72 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| KEVIN & ROXANNE LOGAN<br>11057 LINDEN ROAD<br><br>LINDEN, MI 48451 | 70295 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$400.00 (U)<br>$400.00 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| LARRY MADDUX<br>6054 SIMIEN RD.<br><br>INDIANAPOLIS, IN 46237 | 70010 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$738.28 (U)<br>$738.28 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| LAURA KEISER<br>10161 GROVER ROAD<br><br>HANOVER, MI 49241 | 61270 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$5,161.75 (U)<br>$5,161.75 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| LEON AND FRAN HOCHSTEDLER<br>1224 HYATTS RD<br><br>DELAWARE, OH 43015 | 61875 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$548.72 (U)<br>$548.72 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| LEON AND FRAN HOCHSTEDLER 1224 HYATTS RD  DELAWARE, OH 43015 | 61876 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $739.15 | (U) | | |
| | | | $739.15 | (T) | | |
| M SIRACUSA 229 CLARK ST  BROCKPORT, NY 14420UNITED STATES OF AMERICA | 51130 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $1,000.00 | (U) | | |
| | | | $1,000.00 | (T) | | |
| MARINA KRAUT / OLGA LEZHEPEKOVA 6366 DELLWOOD DRIVE NE  FRIDLEY, MN 55432 | 1243 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $616.68 | (U) | | |
| | | | $616.68 | (T) | | |
| MARVIN VANDERWALL 2827 BRIDGESIDE DR. SE  CALEDONIA, MI 49316-8926 UNITED STATES OF AMERICA | 20615 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $3,148.79 | (U) | | |
| | | | $3,148.79 | (T) | | |
| MARY GRIGAL 8 B WAVECREST AVE  WINTERFIELD PARK, NJ 07036 | 60279 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $2,500.00 | (U) | | |
| | | | $2,500.00 | (T) | | |
| MIKE HUSON 284 SOUTHCREST PL  SIMI VALLEY, CA 93065UNITED STATES OF AMERICA | 62356 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $89.33 | (U) | | |
| | | | $89.33 | (T) | | |

(1) In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".

(2) Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| PATRICK, RAY M GLASSER AND GLASSER CROWN CENTER, 580 EAST MAIN STREET, SUITE 600 NORFOLK, VA 23510-2212 | 58018 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$200,000.00<br>$200,000.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| PAULA MARTIN 260 CHAPEL RIDGE DR APT F HAZELWOOD, MO 63042-2636 | 69724 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$935.58<br>$935.58 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| RICH MUHA 1453 WEST ASH PLACE GRIFFITH, IN 46319UNITED STATES OF AMERICA | 69708 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$618.17<br>$618.17 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| RIPPO JILL J AKA JILL J HUGHES 18433 N. 27TH WAY PHOENIX, AZ 85032 | 50846 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$832.12<br>$832.12 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| RIPPO, JILL J A/K/A JILL J HUGHES 18433 N. 27TH WAY PHOENIX, AZ 85032 | 50845 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$558.48<br>$558.48 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| ROBERT I GOODWIN 55 NORTH 2ND STREET KALAMAZOO, MI 49009-8574 | 61929 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$676.77<br>$676.77 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1) In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2) Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

### CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| ROBERT I GOODWIN<br>55 NORTH 2ND STREET<br><br>KALAMAZOO, MI 49009-8574 | 61930 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$1,613.35<br>$1,613.35 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| RONALD CONLEY<br>8568 RIVERBEND DR<br><br>PORTLAND, MI 48875UNITED STATES OF AMERICA | 62236 | Motors Liquidation Company | Unliquidated | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| SHIRLEY TIERNEY<br>1917 CLIFFVIEW LANE<br><br>FLORENCE, KY 41042 | 70983 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$697.91<br>$697.91 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| SNELL, JAMES R<br>19060 COUNTY ROAD 1095<br><br>LA CYGNE, KS 66040-6011 | 28863 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$476.36<br>$476.36 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| STACY SHRAMEK<br>141 S BUCKLEY ST<br><br>ALMA CENTER, WI 54611 | 70294 | Motors Liquidation Company | Unliquidated | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

218th Omnibus Objection

**Exhibit A**

Motors Liquidation Company, et al.
Case No. 09-50026 (REG),  Jointly Administered

### CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| STEVEN STEMPIEN<br>142 PLEASANT VALLEY ST<br>APT 200103<br>METHUEN, MA 01844 | 70026 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$862.78<br>$862.78 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| TERRI ANN CHAZELLE<br>24441 WEST STATE HIGHWAY 8<br>POTOSI, MO 63664UNITED STATES OF AMERICA | 64245 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$600.00<br>$600.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| THERESA M MCHUGH<br>215 LATHROP ROAD<br>SYRACUSE, NY 13219 | 70305 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$610.93<br>$610.93 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| THOMAS PAUL<br>22224 VILLAGE 22<br>CAMARILLO, CA 93012 | 70199 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$607.64<br>$607.64 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| TROY SJOSTRAND<br>4700 NINE MILE CREEK PKWY<br>BLOOMINGTON, MN 55437UNITED STATES OF AMERICA | 64629 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$950.00<br>$950.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

### CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| VERLIN DAHMES<br>2771 COUNTY ROAD 120 NE<br><br>ALEXANDRIA, MN 56308-7921 | 62030 | Motors Liquidation Company | | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | Unliquidated | | | |
| VERLINDA CHEEK<br>5082 DOWNING ST<br><br>ORLANDO, FL 32839-5328 | 68252 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $1,500.00 | (U) | | |
| | | | $1,500.00 | (T) | | |
| ZACH LANE<br>23811 53RD AV W<br><br>MOUNTLAKE TERRACE, WA 98043 UNITED STATES OF AMERICA | 60724 | Motors Liquidation Company | $0.00 | (S) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $1,524.36 | (U) | | |
| | | | $1,524.36 | (T) | | |
| *CLAIMS TO BE DISALLOWED AND EXPUNGED* | 53 | | $696.39 | (S) | | |
| | | | $0.00 | (A) | | |
| | | | $0.00 | (P) | | |
| | | | $242,814.63 | (U) | | |
| | | | $243,511.02 | (T) | | |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

# EXHIBIT B

HEARING DATE AND TIME: April 26, 2011 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: April 19, 2011 at 4:00 pm. (Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :    09-50026 (REG)
        f/k/a General Motors Corp., et al. :
                                          :
                    Debtors.              :    (Jointly Administered)
                                          :
----------------------------------------------------------x

## ORDER GRANTING DEBTORS' 218TH OMNIBUS OBJECTION TO CLAIMS
### (Duplicate Claims Filed by Individual Members of the Dex-Cool Class)

Upon the 218th omnibus objection to claims, dated March 24, 2011 (the "**218th**

**Omnibus Objection to Claims**")[1] to certain proofs of claim filed by individual members of the

Dex-Cool Class as set forth on **Exhibit "A"** annexed hereto (collectively, the "**Individual Dex-Cool**

**Claims**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated

debtors, as debtors in possession (collectively, the "**Debtors**"), pursuant to section 502(b) of title 11,

United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal Rules of Bankruptcy

Procedure, and this Court's order approving procedures for the filing of omnibus objections to

proofs of claim filed in these chapter 11 cases (the "**Procedures Order**") (ECF No. 4180), seeking

to disallow and expunge the Individual Dex-Cool Claims on the ground that they are duplicative of

Proof of Claim No. 51095 (the "**Dex-Cool Class Action Claim**"), as more fully described in the

218th Omnibus Objection to Claims; and due and proper notice of the 218th Omnibus Objection to

Claims having been provided, and it appearing that no other or further notice need be provided; and

the Court having found and determined that the relief sought in the 218th Omnibus Objection to

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the
Debtors' 218th Omnibus Objection to Claims.

Claims is in the best interests of the Debtors, their estates, creditors, and all parties in interest and

that the legal and factual bases set forth in the 218th Omnibus Objection to Claims establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

it is

ORDERED that the relief requested in the 218th Omnibus Objection to Claims is

granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Individual

Dex-Cool  Claims listed on Exhibit "A" annexed hereto are disallowed and expunged in their

entirety; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters

arising from or related to this Order.

Dated: New York, New York
_____, 2011


_____
United States Bankruptcy Judge


2

# EXHIBIT A

**Exhibit A**

### CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| ALBERTA B JONES<br>309 SHADY OAKS CT<br><br>ST CLAIR, MO 63077 | 45262 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$680.11<br>$680.11 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| BAKER, DENNIS R<br>3720 QUADRANT DR<br><br>NORTH BEND, OH 45052-9507 | 46621 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$846.39<br>$846.39 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| BARBARA BRANDT<br>410 AMY CT.<br><br>DAYTON, OH 45415UNITED STATES OF AMERICA | 70408 | Motors Liquidation Company | $696.39<br>$0.00<br>$0.00<br>$0.00<br>$696.39 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| BRIAN K HUTSON<br>418 TREES OF AVALON PKWY<br><br>MCDONOUGH, GA 30253 | 70158 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$1,379.29<br>$1,379.29 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| CAITLIN BAILEY<br>45 AVERY ROAD<br><br>NEWINGTON, CT 06111 | 62460 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$581.27<br>$581.27 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| CHRISTOPHER PETERSON<br>16267 JEFFERSON STREET<br><br>OMAHA, NE 68135 | 62566 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$466.24<br>$466.24 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| DANIEL LAVOIE<br>555 CANAL ST<br>APT # 1505<br>MANCHESTER, NH 03101 | 15420 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$1,018.76 (U)<br>$1,018.76 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| DARLENE INGRASSIA<br>357 DUMBARTON BOULEVARD<br>RICHMOND HEIGHTS, OH 44143UNITED STATES OF AMERICA | 64485 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$680.74 (U)<br>$680.74 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| DENNIS RENNER<br>214 N FULTON ST<br>VAN WERT, OH 45891 | 62185 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$278.54 (U)<br>$278.54 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| DENNIS RENNER<br>214 N FULTON ST<br>VAN WERT, OH 45891 | 62186 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$462.72 (U)<br>$462.72 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| DONALD BOGNER<br>6353 DEWEY RD<br>MADISON, OH 44057 | 61022 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$476.48 (U)<br>$476.48 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| EDNA SELLITTI<br>661 NE WAS MYRTLE WY<br>JENSEN BCH, FL 34957 | 11545 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$677.66 (U)<br>$677.66 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| FRANK TUMMINELLO<br>167 PINE TREE ROAD<br><br>OCEAN CITY, MD 21842UNITED STATES OF AMERICA | 48447 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$1,500.97<br>$1,500.97 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| GARY ENNIS<br>631 CHIC ENNIS RD<br><br>BENSON, NC 27504 | 69793 | Environmental Corporate Remediation Company, Inc. | $0.00<br>$0.00<br>$0.00<br>$577.98<br>$577.98 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| GARY ENNIS<br>631 CHIC ENNIS RD<br><br>BENSON, NC 27504 | 69794 | Remediation And Liability Management Company, Inc. | $0.00<br>$0.00<br>$0.00<br>$534.13<br>$534.13 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| GREG SABO<br>2745 SABLE CT<br><br>MOUNT PLEASANT, MI 48858 | 61409 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$100.00<br>$100.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| HAROLD MOSCHETZ<br>17322 W CLEVELAND AVE<br><br>NEW BERLIN, WI 53146UNITED STATES OF AMERICA | 70345 | Motors Liquidation Company | Unliquidated | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".

(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| HELENE TACHNA 37198 FOX CHASE FARMINGTON HILLS, MI 48331UNITED STATES OF AMERICA | 70379 | Motors Liquidation Company | $0.00 $0.00 $0.00 $935.60 $935.60 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| HOPE PLISKOW PO BOX 339612 FARMINGTON HILLS, MI 48333 | 48390 | Motors Liquidation Company | $0.00 $0.00 $0.00 $645.00 $645.00 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| HUGHES, JILL J 18433 N. 27TH WAY PHOENIX, AZ 85032UNITED STATES OF AMERICA | 50847 | Motors Liquidation Company | $0.00 $0.00 $0.00 $857.01 $857.01 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| J ROSS 1230 BUTLER RD SAGINAW, MI 48601-6308 | 28746 | Motors Liquidation Company | $0.00 $0.00 $0.00 $561.00 $561.00 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| JOAN WALDROP 169 CEDARVIEW LANE WATERVLIET, NY 12189 | 70028 | Motors Liquidation Company | Unliquidated | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".

(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| JULIA MCLAUGHLIN<br>4207 45TH STREET EAST<br>BRADENTON, FL 34208 | 25278 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$690.87<br>$690.87<br>Unliquidated | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| KATHIE ISENBERG<br>PO BOX 915<br>DEER PARK, WA 99006 | 65846 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$856.72<br>$856.72 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| KEVIN & ROXANNE LOGAN<br>11057 LINDEN ROAD<br>LINDEN, MI 48451 | 70295 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$400.00<br>$400.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| LARRY MADDUX<br>6054 SIMIEN RD.<br>INDIANAPOLIS, IN 46237 | 70010 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$738.28<br>$738.28 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| LAURA KEISER<br>10161 GROVER ROAD<br>HANOVER, MI 49241 | 61270 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$5,161.75<br>$5,161.75 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| LEON AND FRAN HOCHSTEDLER<br>1224 HYATTS RD<br>DELAWARE, OH 43015 | 61875 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$548.72<br>$548.72 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

### CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| LEON AND FRAN HOCHSTEDLER 1224 HYATTS RD DELAWARE, OH 43015 | 61876 | Motors Liquidation Company | $0.00 $0.00 $0.00 $739.15 $739.15 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| M SIRACUSA 229 CLARK ST BROCKPORT, NY 14420UNITED STATES OF AMERICA | 51130 | Motors Liquidation Company | $0.00 $0.00 $0.00 $1,000.00 $1,000.00 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| MARINA KRAUT / OLGA LEZHEPEKOVA 6366 DELLWOOD DRIVE NE FRIDLEY, MN 55432 | 1243 | Motors Liquidation Company | $0.00 $0.00 $0.00 $616.68 $616.68 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| MARVIN VANDERWALL 2827 BRIDGESIDE DR. SE CALEDONIA, MI 49316-8926 UNITED STATES OF AMERICA | 20615 | Motors Liquidation Company | $0.00 $0.00 $0.00 $3,148.79 $3,148.79 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| MARY GRIGAL 8 B WAVECREST AVE WINTERFIELD PARK, NJ 07036 | 60279 | Motors Liquidation Company | $0.00 $0.00 $0.00 $2,500.00 $2,500.00 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| MIKE HUSON 284 SOUTHCREST PL SIMI VALLEY, CA 93065UNITED STATES OF AMERICA | 62356 | Motors Liquidation Company | $0.00 $0.00 $0.00 $89.33 $89.33 | (S) (A) (P) (U) (T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

218th Omnibus Objection

**Exhibit A**

Motors Liquidation Company, et al,
Case No. 09-50026 (REG),  Jointly Administered

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| PATRICK, RAY M<br>GLASSER AND GLASSER<br>CROWN CENTER, 580 EAST MAIN STREET, SUITE 600<br>NORFOLK, VA 23510-2212 | 58018 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$200,000.00<br>$200,000.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| PAULA MARTIN<br>260 CHAPEL RIDGE DR APT F<br>HAZELWOOD, MO 63042-2636 | 69724 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$935.58<br>$935.58 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| RICH MUHA<br>1453 WEST ASH PLACE<br>GRIFFITH, IN 46319UNITED STATES OF AMERICA | 69708 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$618.17<br>$618.17 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| RIPPO JILL J AKA JILL J HUGHES<br>18433 N. 27TH WAY<br>PHOENIX, AZ 85032 | 50846 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$832.12<br>$832.12 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| RIPPO, JILL J A/K/A JILL J HUGHES<br>18433 N. 27TH WAY<br>PHOENIX, AZ 85032 | 50845 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$558.48<br>$558.48 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| ROBERT J GOODWIN<br>55 NORTH 2ND STREET<br>KALAMAZOO, MI 49009-8574 | 61929 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$676.77<br>$676.77 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| ROBERT I GOODWIN<br>55 NORTH 2ND STREET<br><br>KALAMAZOO, MI 49009-8574 | 61930 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$1,613.35 (U)<br>$1,613.35 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| RONALD CONLEY<br>8568 RIVERBEND DR<br><br>PORTLAND, MI 48875UNITED STATES OF AMERICA | 62236 | Motors Liquidation Company | | Unliquidated | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| SHIRLEY TIERNEY<br>1917 CLIFFVIEW LANE<br><br>FLORENCE, KY 41042 | 70983 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$697.91 (U)<br>$697.91 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| SNELL, JAMES R<br>19060 COUNTY ROAD 1095<br><br>LA CYGNE, KS 66040-6011 | 28863 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$476.36 (U)<br>$476.36 (T) | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| STACY SHRAMEK<br>141 S BUCKLEY ST<br><br>ALMA CENTER, WI 54611 | 70294 | Motors Liquidation Company | | Unliquidated | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| STEVEN STEMPIEN<br>142 PLEASANT VALLEY ST<br>APT 200103<br>METHUEN, MA 01844 | 70026 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$862.78<br>$862.78 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| TERRI ANN CHAZELLE<br>24441 WEST STATE HIGHWAY 8<br>POTOSI, MO 63664UNITED STATES OF AMERICA | 64245 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$600.00<br>$600.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| THERESA M MCHUGH<br>215 LATHROP ROAD<br>SYRACUSE, NY 13219 | 70305 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$610.93<br>$610.93 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| THOMAS PAUL<br>22224 VILLAGE 22<br>CAMARILLO, CA 93012 | 70199 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$607.64<br>$607.64 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| TROY SJOSTRAND<br>4700 NINE MILE CREEK PKWY<br>BLOOMINGTON, MN 55437UNITED STATES OF AMERICA | 64629 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$950.00<br>$950.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".

(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

218th Omnibus Objection

**Exhibit A**

Motors Liquidation Company, et al.
Case No. 09-50026 (REG),  Jointly Administered

### *CLAIMS TO BE DISALLOWED AND EXPUNGED*

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| VERLIN DAHMES<br>2771 COUNTY ROAD 120 NE<br><br>ALEXANDRIA, MN 56308-7921 | 62030 | Motors Liquidation Company | | | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| | | | Unliquidated | | | |
| VERLINDA CHEEK<br>5082 DOWNING ST<br><br>ORLANDO, FL 32839-5328 | 68252 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$1,500.00<br>$1,500.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| ZACH LANE<br>23811 53RD AV W<br><br>MOUNTLAKE TERRACE, WA 98043 UNITED STATES OF AMERICA | 60724 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$1,524.36<br>$1,524.36 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | Claim is duplicative of Dex-Cool Class Action Claim 51095 | Pgs. 1-5 |
| *CLAIMS TO BE DISALLOWED AND EXPUNGED* | 53 | | $696.39<br>$0.00<br>$0.00<br>$242,814.63<br>$243,511.02 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | | |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

# EXHIBIT C

## GENERAL MOTORS DEX-COOL PRODUCTS LIABILITY LITIGATION
## CLASS PROOF OF CLAIM[1]
### In re Motors Liquidation Company – 09-50026 (REG)

Debtor· Motors Liquidation Company (f/k/a General Motors Corporation) ("GM")

Total Amount of Class Claim      Unliquidated (approximately $3 million)

Treatment of Class Claim      Pre-petition/Unsecured

Exhibits to Class Claim

      1 ·    Settlement Agreement

      2    Notice of Settlement Distributed to Class Members

      3    Final Judgment Approving Class Action Settlement

Basis for Claim

      1    <u>The Dex-Cool Products Liability Litigation</u>

      Starting in 2003, a number of class action lawsuits were filed in state and federal courts against GM involving "Dex-Cool" extended life engine coolant.  The lawsuits alleged that Dex-Cool corroded and sludged various engine and cooling system components leading to expensive repairs and in some instances catastrophic engine failure  GM denied all allegations and any liability in the Dex-Cool Litigation

      2.    <u>Class Action Settlement in the Dex-Cool Litigation</u>

      After more than four years of litigation and on the eve of trial a settlement was reached in 2007  [See Exhibit 1 ]  Pursuant to the terms of the settlement, GM agreed to reimburse class members[2] up to $800 00 for certain repair costs they paid during the first seven years or 150,000 miles of vehicle ownership or lease.  Preliminary approval of the settlement was granted on March 20, 2008 and final Judgment approving the settlement in the Dex-Cool Litigation was granted on October 23, 2008[3].  [See Exhs 2 & 3 ]

---

[1] The parties are negotiating a stipulation for filing this class proof of claim  However, the stipulation may not be filed prior to the November 30, 2009 bar date

[2] A Missouri only state class was certified in Missouri state court on January 9, 2006 in *Gutzler v GM*, Case No  03CV208786  A nationwide class (excluding Missouri) was certified in California state court on August 30, 2007 in *Sadowski v GM*, (JCCP No  4495, Case No HG03093843)

[3] Final Judgment approving the settlement of the Missouri only class was granted on September 5, 2008.

3    <u>Status of Settlement Administration and Outstanding Claims</u>

In order for a class member to receive the reimbursement provided for in the settlement, the class member was required to file a valid and timely claim form with the Claims Administrator In February 2009, GM funded $6,127,758 00 to pay class members who submitted a valid claim for reimbursement of repair expenditures prior to the original claims date Subsequently, on May 8, 2009, in accordance with the terms of the Court-approved settlement, the Claims Administrator requested $1,325,568 60 from GM to fund additional claims At the time bankruptcy was filed on June 1, 2009, the Claims Administrator was reviewing claims that had been previously deemed deficient but that had been cured by the claimant. Many of those claims involved multiple repair reimbursements that were submitted by one claimant The actual value of those claims has not yet been reduced to a liquidated value pursuant to the terms of the Settlement Agreement and are currently estimated at under $2,000,000



2

B 10 (Official Form 10) (12/08)

| UNITED STATES BANKRUPTCY COURT  Southern District of New York | PROOF OF CLAIM |
|---|---|

| Name of Debtor | Case Number |
|---|---|
| In re  Motors Liquidation Company | 09-50026 |

NOTE  *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Girard Gibbs LLP (Court- Approved Class Counsel)

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Attn  A.J. De Bartolomeo, Esq., Girard Gibbs LLP
Court- Approved Class Counsel in General Motors Dex-Cool/Gasket Cases
601 California Street, Suite 1400, San Francisco, CA 94108

Telephone number:
(415) 981-4800

Court Claim Number _____
*(If known)*

Filed on _____

[Stamp: THE GARDEN CITY GROUP INC. NOV 25 2009]

Name and address where payment should be sent (if different from above):

FILED - 51095
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

| 1. Amount of Claim as of Date Case Filed | $ | 3,000,000.00 |
|---|---|---|

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. Basis for Claim    See Attachment
(See instruction #2 on reverse side.)

3. Last four digits of any number by which creditor identifies debtor _____

3a. Debtor may have scheduled account as _____
(See instruction #3a on reverse side.)

4. Secured Claim (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff:  ☐ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:

Value of Property $_____  Annual Interest Rate_____%

Amount of arrearage and other charges as of time case filed included in secured claim,
if any $_____    Basis for perfection _____

Amount of Secured Claim $_____    Amount Unsecured $_____

6. Credits  The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. Documents  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a)  If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507 (a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507 (a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507 (a)(___).

Amount entitled to priority:
$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

FOR COURT USE ONLY

Date: 11/24/09
Signature  The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

[Signature]    for A.J. DeBartolomeo

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*

B 10 (Official Form 10) (12/08) – Cont

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number**
Fill in the federal judicial district where the bankruptcy case was filed (for example, Central District of California), the bankruptcy debtor's name, and the bankruptcy case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is located at the top of the notice.

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the Bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the trustee or another party in interest files an objection to your claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4. Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. §507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2), authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity owed a debt by the debtor that arose on or before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment on a debt owed by the debtor that arose on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. §506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car.

A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. §507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

## INFORMATION

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(d), any applicable provisions of the Bankruptcy Code (11 U.S.C. §101 et seq.) and any applicable orders of the bankruptcy court.



**EXHIBIT 1**

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 1550(b))<br><br>**GENERAL MOTORS<br>DEX-COOL/GASKET CASES**<br><br>Included actions<br><br>Sadowski v General Motors Corp<br><br>Bertino v General Motors Corp | JUDICIAL COUNCIL COORDINATION<br>PROCEEDING NO 4495<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA<br>NO HG03093843<br><br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN JOAQUIN<br>NO CV 025 770<br><br>**MASTER CLASS ACTION SETTLEMENT<br>AGREEMENT COVERING ALL STATES<br>EXCEPT THE STATE OF MISSOURI**<br><br>The Honorable Robert B Freedman<br><br>Action filed    April 29, 2003<br>Trial date    None set |

This Settlement Agreement ("Agreement" or "Settlement") is entered into between the Representative Plaintiffs on behalf of themselves and the Class, and Defendant General Motors Corporation ("GM"), by and through their respective counsel or other designated signatory, in settlement and compromise of the Actions, as well as the Amico/Bertino Actions

1.    **DEFINITIONS**

1 1    "Actions" means the following lawsuits

(a) *Sadowski v General Motors*, Case No HG03091369 (Alameda County, California)

(b) *Bowers v General Motors*, Case No 002590 (Philadelphia County, Pennsylvania)

(c) *Brown v General Motors*, Case No 03-539 GPM (S D Ill )

(d) *Cherney v General Motors*, Case No 3113-03 (Albany County, New York)

1

1   (e) *Dahdowicz v General Motors*, Case No MID-L-3875-03 (Middlesex County, New

2       Jersey)

3   (f) *Dochwat v General Motors*, Case No 03-410-GPM (S D Ill)

4   (g) *Flynn v General Motors*, Case No 03-L-723 (Madison County, Illinois)

5   (h) *Longoria v General Motors*, Case No 03-03140-D (Nueces County, TX)

6   (i) *Strzalkowski v General Motors*, Case No 04-04740 (D N J)

7   (j) *Sher Family Limited Partnership v General Motors*, Case No 06-00629 (E D Pa)

8   (k) *Sullivan v General Motors*, Case No 07-00127 (W D N C)

9   (l) All actions consolidated as part of MDL No 1562 and made part of the Second

10       Amended Consolidated Class Action Complaint in the MDL cases

11  Nothing contained in the definition of "Actions" is intended to, or shall be deemed to, limit the scope of

12  the 49 state settlement or the release contained herein

13      1 2   "Amico/Bertino Actions" means the following lawsuits  *Amico v General Motors*, Case

14  No  2004-092816 (Maricopa County, Arizona) and *Bertino v General Motors*, Case No  CV025770

15  (San Joaquin County, California)  Nothing contained in the definition of "Amico/Bertino Actions" is

16  intended to, or shall be deemed to, limit the scope of the 49 state settlement or the release contained

17  herein

18      1 3   "Amico/Bertino Counsel" means Michael F  Ram of Levy, Ram & Olson LLP, John W

19  Rasmussen of Johnson, Rasmussen, Robinson & Allen P L C , Richard T  Dorman of Cunningham,

20  Bounds, Crowder, Brown & Breedlove, LLC, Mark S  Baumkel of Mark S  Baumkel & Associates,

21  and James Belford Brown of Herum Crabtree Brown

22      1 4   "Claim" means a claim to receive a cash payment under subparagraphs 3 1 and/or 3 2  A

23  Claim consists of a Claim Statement, Proof of Expenditure, Proof of Ownership, and in the case of a

24  claim under subparagraph 3 2, Proof of Internal Leak Repair

25      1 5   "Claimant" means a Class Member who submits a Claim

26      1 6   "Claim Deadline" means 150 days after the first date on which notice of the Settlement is

27  disseminated to the Class in accordance with the Notice Order

28

1    1 7   "Claim Statement" means a document substantially in the form of Exhibit A hereto,

2    which must be submitted by the Class Member, postmarked or received by the Claims Administrator,

3    by the Claim Deadline in order to obtain benefits under the Settlement, as described below

4    1 8   "Claims Administrator" means Garden City Group, Inc  or such other entity to be

5    retained by General Motors, subject to approval by Co-Lead Counsel, to, among other things,

6    administer the Settlement and the claims process set forth in subparagraphs 3 1-3 8, below, including

7    receiving and processing claims, determining which claims are valid, assisting Class Members with the

8    completion and submission of claims, issuing and mailing Settlement payments, and ensuring that

9    claims fulfillment is properly implemented

10   1 9   "Class" means all Consumers in the United States of America (excepting those who

11   purchased or leased a vehicle in the State of Missouri) who (i) own or lease, or who have owned or

12   leased, a Covered Vehicle that has been in service in excess of seven years, measured from the Date of

13   Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated

14   and who, at the time of the notice, had not incurred a repair expense of the type included in the

15   definition of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and

16   who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is

17   disseminated to the Class in accordance with the Notice Order  Excluded from the Class are GM, any

18   affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer,

19   director, or employee of GM, any successor or assign of GM, anyone employed by counsel for

20   Representative Plaintiffs, and any Judge to whom any of the Actions is assigned as well as his or her

21   immediate family

22   1 10   "Class Counsel" means Co-Lead Counsel and the following counsel  Norman E Siegel

23   of Stueve Siegel Hanson LLP, John M Parisi of Shamberg Johnson & Bergman, Andrew N Friedman

24   of Cohen Milstein, Hausfeld & Toll, PLLC, Ernest Cory of Cory Watson Crowder & Degaris PC, Joe

25   Whatley of Whatley Drake LLC, Lee S Shalov of Shalov Stone Bonner & Rocco, LLP, William M

26   Audet of Alexander, Hawes & Audet, LLP, Michael B Marker of The Rex Carr Law Firm, LLC ,

27   Matthew H Armstrong of Schlichter Bogard & Denton LLP, Murray Fogler of McDade Fogler Maines,

28   LLP, Jonathan Shub of Seeger Weiss LLP, Steven N Berk of Chavez & Gertler LLP, Jonathan W

3

1   Cuneo of Cuneo Gilbert & LaDuca, LLP, Michael D Donovan of Donovan Searles, LLC, and Joel R

2   Rhine and Christopher A Chleborowicz of Lea Rhine Rosbrugh & Chleborowicz, PLLC

3           1 11   "Class Member" means a member of the Class

4           1 12   "Co-Lead Counsel" means Eric H Gibbs of the law firm Girard Gibbs LLP, and P John

5   Brady of the law firm Shughart Thomson & Kilroy P C

6           1 13   "Consumer" means a person who purchases or leases for personal, family, or household

7   use

8           1 14   "Court," unless specifically stated otherwise, means the Superior Court of the State of

9   California for the County of Alameda

10          1 15   "Covered Repair" means any Engine Group A Repair, Engine Group B Repair, or Engine

11  Group C Repair

12          1 16   "Covered Vehicle" means an Engine Group A Vehicle, Engine Group B Vehicle, or

13  Engine Group C Vehicle

14          1 17   "Date of Initial Vehicle Delivery" means the date on which the original retail purchaser

15  or lessee took physical possession of the vehicle as reported by the delivering dealer

16          1 18   "Effective Date' and/or "Effective Date of Settlement' means the latest of the following

17  dates   (i) if no appeal from the Judgment is filed, the date of expiration of the time for the filing or

18  noticing of any appeal from the Judgment, or (ii) if an appeal from the Judgment is filed, and the

19  Judgment is affirmed or the appeal dismissed, the date beyond which California Supreme Court review

20  is no longer available, or (iii) if the Court of Appeal issues a judgment affirming the Judgment or

21  dismissing the appeal ("Appellate Judgment") and a petition for review of the Appellate Judgment is

22  filed and denied, the date beyond which United States Supreme Court review is no longer available, or

23  (iv) if a petition for review of the Appellate Judgment is filed and granted, or the California Supreme

24  Court orders review of the Appellate Judgment on its own motion, and the Appellate Judgment is

25  affirmed or the review proceeding dismissed, and no petition for a writ of certiorari with respect to the

26  Supreme Court's judgment affirming the Appellate Judgment or dismissing the review proceeding

27  ("Review Judgment") is filed, the date of expiration of the time for the filing of such a petition for a

28  writ of certiorari, or (v) if such a petition for a writ of certiorari is filed and denied, the date the petition

4

1    is denied, or (vi) if such a petition for a writ of certiorari is filed and granted, the date of final

2    affirmance of the Review Judgment or final dismissal of the review proceeding initiated by the petition

3    for a writ of certiorari  This Settlement shall not become Effective, and this definition of Effective Date

4    shall not be met, unless and until the Effective Date of the Missouri Settlement Agreement, entered into

5    by the parties in the action entitled Gutzler v  General Motors, Case No  03CV208786 (Jackson

6    County, Missouri)  In the event that the Missouri Settlement Agreement, entered into by the parties in

7    the action entitled Gutzler v  General Motors, Case No  03CV208786 (Jackson County, Missouri), is

8    not given final approval by the court in that action, or is reversed or modified on appeal, this Settlement

9    shall not become Effective and General Motors shall have the option and right to rescind this

10    Settlement at its sole discretion by filing with the Court written notice of such election, with proof of

11    service on Co-Lead Counsel  Notwithstanding the above, and for the sole purpose of avoiding

12    unnecessary delay in Class Members' receipt of settlement benefits, in the event that an appeal from the

13    Judgment is filed, and such appeal (a) is an appeal only of the portion of the Judgment awarding i) an

14    amount up to $140,000 in incentive payments to Representative Plaintiffs, (ii) attorneys' fees in an

15    amount not to exceed $16 5 million and/or (iii) documented costs in an amount not to exceed $1 55

16    million, and (b) could not result in the reversal and/or modification of the Judgment (including the

17    release provisions contained in paragraphs 3 14 through 3 18), then GM and Co-Lead Counsel may,

18    acting in good faith and upon mutual agreement, agree that the settlement is otherwise Effective and

19    that implementation of the settlement, including distribution of the settlement benefits, should proceed

20        1 19  "Engine Group A Vehicle" means any 1995 through 2003 model year vehicle with a 3 1-

21    liter V6 or 3 4-liter V6 engine that was factory-equipped with Dex-Cool coolant and a nylon/silicone

22    lower intake manifold gasket  Excluded are all 2003 model year vehicles manufactured after April 9,

23    2003

24        1 20  "Engine Group A Repair" means any lower intake manifold gasket replacement made on

25    an Engine Group A Vehicle within the earlier of 7 years or 150,000 miles of the Date of Initial Vehicle

26    Delivery

27        1 21  "Engine Group B Vehicle" means any 1995 through 2004 model year vehicle with a 3 8-

28    liter V6 engine (RPO L36) that was factory-equipped with Dex-Cool coolant

5

1    1 22    "Engine Group B Repair" means any engine sealability repair made on an Engine Group

2    B Vehicle within the earlier of 7 years or 150,000 miles of the Date of Initial Vehicle Delivery    Engine

3    sealability repairs with respect to an Engine Group B Repair include but are not limited to replacements

4    of a throttle body gasket, upper intake manifold gasket, lower intake manifold gasket, or intake

5    manifold

6    1 23    "Engine Group C Vehicle" means any 1995 through 2000 model year S/T light truck or

7    sport utility vehicle with a 4 3-liter V6 engine that was factory-equipped with Dex-Cool coolant

8    1 24    "Engine Group C Repair" means any Sludge-related repair made on an Engine Group C

9    Vehicle within the earlier of 7 years or 150,000 miles of the Date of Initial Vehicle Delivery    Sludge-

10    related repairs are repairs that are caused by cooling system Sludge and may include but are not limited

11    to cooling system flushes, heater core repairs, water pump repairs, and radiator cap replacements to the

12    extent that they were the result of cooling system Sludge

13    1 25    "Judgment" means the judgment to be entered by the Court pursuant to this Settlement,

14    substantially in the form attached hereto as Exhibit C (but which may be modified or amended as

15    necessary before entry in order to effectuate the terms of this Agreement), which shall include, among

16    other things, final approval of the Settlement, dismissal of the *Sadowski* action with prejudice and

17    approval and entry of the provisions contained in Section 3 C, Release of Claims, below (i e

18    paragraphs 3 14 through 3 18)

19    1 26    "Notice Order" means an order substantially in the form of Exhibit B hereto, providing

20    for, among other things, provisional certification of the Class for settlement purposes only, preliminary

21    approval of the Settlement, dissemination of notice to the Class according to the notice plan attached,

22    and setting of the Fairness Hearing

23    1 27    "Parties" means the Representative Plaintiffs and Defendant GM

24    1 28    "Proof of Expenditure" means contemporaneous documentary proof of an out-of-pocket

25    expenditure by a Class Member on a Covered Repair to the extent not fully reimbursed under a new

26    vehicle warranty or any extended warranty or goodwill adjustment    In the case of an Engine Group A

27    Repair, Proof of Expenditure must document that the repair was made due to a failed intake manifold

28    gasket (and was not associated with a larger repair unrelated to a failed lower intake manifold gasket)

6

1   In the case of an Engine Group B Repair, Proof of Expenditure must document that the repair was made

2   due to an engine coolant sealability repair (including but not limited to throttle body gasket, upper

3   intake manifold gasket, lower intake manifold gasket, or intake manifold) (and was not associated with

4   a larger repair unrelated to a failed throttle body gasket, upper intake manifold gasket, lower intake

5   manifold gasket, intake manifold, or other engine sealability issue)   In the case of an Engine Group C

6   Repair, Proof of Expenditure must document that the repair was made due to diagnosed Sludge   An

7   acceptable form of proof may include any written statement based on personal knowledge by the person

8   or business that performed the repair, such as a receipt   In the event that contemporaneous

9   documentary proof (i e  an actual repair invoice or other contemporaneous documentary proof of the

10  repair) is not available, then a Claimant may satisfy the proof of expenditure requirement by submitting

11  (i) a written statement based on personal knowledge from the person or business who made the repair

12  that a copy of the actual repair invoice or other contemporaneous documentary proof of the repair is not

13  available and that the repair qualified as an Engine Group A Repair, Engine Group B Repair, or Engine

14  Group C repair as described above, and (ii) proof of payment of the repair   If a Claimant is unable to

15  provide the requisite Proof of Expenditure described above, the Claimant may submit the best available

16  written statement or other documents that the Claimant believes demonstrates a Proof of Expenditure,

17  and the Claims Administrator and General Motors, in the exercise of their joint, reasonable discretion,

18  may under subparagraph 3 6, after review of all such Claims, approve the Claim

19       1 29   "Proof of Internal Leak Repair Expense" means Proof of Expenditure as defined in

20  subparagraph 1 26 above where the expenditure was (i) over $1,500 and (ii) due to diagnosed internal

21  coolant leak   For purposes of this Settlement Agreement, an internal coolant leak means a diagnosed

22  coolant leak into the vehicle's internal components, as opposed to an external leak where coolant leaks

23  only out of the vehicle

24       1 30   "Proof of Ownership" means documentary proof that, at the time a Covered Repair was

25  performed, the Claimant owned or leased the vehicle on which the Covered Repair was performed   An

26  acceptable form of proof may include a copy of a vehicle registration card, proof of insurance coverage,

27  title certificate, bill of sale, or lease agreement

28

1    1 31   "Repair Expense" means the actual out-of-pocket expense incurred by the Claimant

2    Class Member for the Covered Repair itself

3    1 32   "Representative Plaintiffs" means the named plaintiffs in the Actions, including all cases

4    consolidated as part of MDL No 1562 and all named plaintiffs in the Second Amended Consolidated

5    Class Action Complaint filed in MDL No 1562, and the named plaintiffs in the Amico/Bertino

6    Actions, excluding Mark Glover, Jason Bertino and Donald Hemans

7    1 33   "Sludge" means a rust-like material that forms in the vehicle cooling system related to

8    Dex-Cool

9    **2.   RECITALS**

10    2 1   The Actions and the Amico/Bertino Actions that are the subject of this Settlement allege

11    that, among other things, the Dex-Cool engine coolant installed in certain GM vehicles fails to protect

12    the vehicles' engine and cooling system, and in fact causes damage to the engine and cooling system

13    and that certain engine components, including certain gaskets, were defective

14    2 2   GM denies all allegations of wrongdoing asserted in the Actions and in the

15    Amico/Bertino Actions and denies liability under any cause of action asserted therein   Specifically,

16    among other things, GM denies the alleged defects, including the alleged defects in Dex-Cool coolant

17    as well as the allegations that certain engine components, including certain gaskets, were defective

18    2 3   The Parties recognize that the outcome of the Actions and the Amico/Bertino Actions are

19    uncertain and that pursuing the Actions and the Amico/Bertino Actions to litigated judgments would

20    entail substantial cost, risk, and delay

21    2 4   The Representative Plaintiffs and their counsel have conducted an investigation and

22    evaluation of the factual and legal issues raised by the claims asserted in the Actions and believe that, in

23    light of the cost, risk, and delay of continued litigation balanced against the benefits of the settlement

24    set forth in this Agreement, that such settlement is in the best interests of, and is fair, reasonable, and

25    adequate for the Class as a whole

26    2 5   Through this Settlement, the Parties desire to compromise and settle all issues and claims

27    that have been or could have been brought in the Actions by or on behalf of members of the Class

28

1    2 6    The Parties agree to undertake all reasonable efforts, including all steps and efforts that

2    may become necessary by order of the Court, to effectuate the terms and purposes of this Agreement, to

3    secure the Court's approval of it, and to oppose any objections to and appeals from any order of final

4    approval

5    **3.**    **SETTLEMENT CONSIDERATION**

6        A.    **Claims Reimbursements**

7        3 1    All Class Members who submit a proper Claim Statement, Proof of Expenditure, and

8    Proof of Ownership will be eligible to receive a cash payment from the Claims Administrator according

9    to the following payment schedule (unless the Class Member is eligible to, and opts to, receive a cash

10   payment pursuant to subparagraph 3 2)

11            (a) For Class Members who incurred a Repair Expense within five years of the Date of

12                Initial Vehicle Delivery, an amount equal to the Repair Expense, up to a maximum of

13                $400

14            (b) For Class Members who incurred a Repair Expense between the fifth and sixth year

15                of the Date of Initial Vehicle Delivery, an amount equal to the Repair Expense, up to

16                a maximum of $100

17            (c) For Class Members who incurred a Repair Expense between the sixth and seventh

18                year of the Date of Initial Vehicle Delivery, an amount equal to the Repair Expense,

19                up to a maximum of $50

20       3 2    Any Class Member who is eligible to receive cash payment under subparagraph 3 1(a)

21   may opt to instead receive 40% of the Repair Expense, up to a maximum of $800, if the Class Member

22   submits Proof of Internal Leak Repair Expense showing a repair over $1,500 due to a diagnosed

23   internal coolant leak

24       3 3    If a Class Member incurred multiple Repair Expenses, the Class Member may submit

25   multiple Claims, however, each Claim must be supported by a separate Claim Statement, Proof of

26   Expenditure, Proof of Ownership, and in the case of a Claim under subparagraph 3 2, Proof of Internal

27   Leak Repair Expense

28

1    3 4    Claims may not be assigned or transferred and must be made and signed by the Class

2    Member who incurred the Repair Expense

3    3 5    The Claims Administrator has the right, if it reasonably suspects a potentially invalid

4    Claim or fraud, to request additional documentation   General Motors has the right to perform a review

5    of Claims and, in the event that GM reasonably suspects a potentially invalid Claim or fraud, to request

6    additional documentation before the Claim is approved and paid   Co-Lead Counsel shall monitor the

7    claims review and approval process to ensure that valid claims are timely paid

8    3 6    After giving Claimants a reasonable opportunity of at least 45 days to cure deficient

9    Claims, the Claims Administrator shall determine the sufficiency or deficiency of all Claims   GM and

10    Co-Lead Counsel will work with the Claims Administrator to develop a process by which the

11    sufficiency or deficiency of Claims are determined, including GM's ability to challenge claims that it

12    suspects are invalid   The Claims Administrator's determination of the sufficiency or deficiency of a

13    Claim is final and not subject to appeal by any party

14    3 7    Within 60 days after the Class Administrator approves a Claim as sufficient, the Claims

15    Administrator shall mail a check, issued to the Claimant and payable to the Claimant, in the amount

16    provided by subparagraphs 3 1 and 3 2   All such checks provided to eligible Claimants shall contain, or

17    be accompanied by, a release providing and explaining to the Claimant that, by accepting the payment

18    and cashing the check, the Claimant releases General Motors from any and all claims related to the

19    vehicle for which the Claim is submitted, to the extent that such claims relate to Dex-Cool, engine

20    gaskets or engine sealability issues

21    3 8    No Claimant shall have any claim or cause of action against the Representative Plaintiffs,

22    Class Counsel, Amcco/Bertmo Counsel, the Claims Administrator, GM, or any Released Persons based

23    on distributions made substantially in accordance with this Agreement and any further orders of the

24    Court

25    **B.    Costs and Fees**

26    3 9    GM will pay all costs and fees of the Claims Administrator, including amounts

27    distributed by the Claims Administrator to Class Members pursuant to subparagraphs 3 1, 3 2, and 3 7

28

1    3 10   GM will pay all costs associated with disseminating notice of the Settlement to the Class,

2    the form of such notice to be agreed upon by GM and Co-Lead Counsel and provided in the Notice

3    Order issued by the Court

4    3 11   GM will pay to Representative Plaintiffs such incentive payments as may be awarded by

5    the Court upon Co-Lead Counsel's request, not to exceed $140,000 in total payments to all

6    Representative Plaintiffs   In no event shall GM be obligated to pay incentive payments in excess of

7    $200,000 in the aggregate under this Settlement and the Missouri Dex-Cool (Gutzler) Settlement

8    3 12   GM will pay Class Counsel and Amico/Bertino Counsel attorneys' fees in an amount to

9    be approved by the Court, not to exceed $14,000,000 for Class Counsel and $2,500,000 for

10    Amico/Bertino Counsel   In no event shall GM be obligated to pay for any attorneys' fees in excess of

11    $21,250,000 to Class Counsel and $2,500,000 to Amico/Bertino Counsel under this Settlement and the

12    Missouri Dex-Cool (Gutzler) Settlement, including any attorneys' fees paid to Amico/Bertino Counsel

13    in connection with the settlement and dismissal of the Amico and Bertino actions

14    3 13   GM will pay Class Counsel documented costs in an amount approved by the Court, not to

15    exceed $1,250,000, and costs in the amount of $300,000 to Amico/Bertino Counsel   In no event shall

16    GM be obligated to pay any payment of costs in excess of $2,500,000 to Class Counsel and $300,000 to

17    Amico/Bertino Counsel under this Settlement and the Missouri Dex-Cool (Gutzler) Settlement,

18    including any costs paid to Amico/Bertino Counsel in connection with the settlement and dismissal of

19    the Amico and Bertino actions

20    C.   Release of Claims

21    3 14   In consideration of the benefits described above, the Representatives Plaintiffs promise,

22    covenant and agree, and each Class Member and the Class shall be deemed to have promised,

23    covenanted and agreed, that, upon the Effective Date of Settlement, the Representative Plaintiffs and

24    the Class Members, including their affiliates, subsidiaries, associates, general or limited partners or

25    partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their

26    respective present or former officers, directors, trustees, employees, agents, attorneys, representatives

27    and/or shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors,

28    administrators, predecessors, successors, assigns or insurers, and anyone acting on their behalf, by

11

1  operation of the Judgment, shall have hereby released, waived and discharged GM, including its

2  subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors,

3  and/or assigns, including, without limitation, any of their respective present or former officers,

4  directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates,

5  general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors,

6  assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for

7  any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known

8  and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state

9  statutory or common law federal statutory or common law, or foreign statutory or common law, to the

10  fullest extent permitted by law, including, but not limited to, federal or state antitrust claims, RICO

11  claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices

12  statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation

13  claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted

14  directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such

15  claims were or could have been raised or asserted in the Actions or the Amico/Bertino Actions, to the

16  extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the

17  allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any

18  Repair Expense Claims for personal injury, and claims for lower intake manifold gasket replacements

19  in 4 3-liter V6 engines for Class Members who have not submitted a Claim and received a payment

20  under the settlement, are not released The Parties recognize and agree that this is a general release

21  Representative Plaintiffs and the Class Members expressly waive and relinquish, and shall be deemed

22  to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and

23  benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any

24  law of the United States, any law of any State or the District of Columbia, or any principle of common

25  law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A

26  general release does not extend to claims which the creditor does not know or suspect to exist in his or

27  her favor at the time of executing the release, which if known by him or her must have materially

28  affected his or her settlement with the debtor "

1    3 15   Upon the Effective Date of Settlement, for the consideration provided for herein and by

2    operation of the Final Order and Judgment, the Representative Plaintiffs shall have, and each Class

3    Member and the Class shall be deemed to have, covenanted and agreed that he or she shall not, at any

4    time, institute, cause to be instituted, assist in instituting or permit to be instituted on his or her behalf

5    any proceeding in any state or federal court, in or before any administrative agency, or any other

6    proceeding or otherwise allege or assert any of the claims released against the Released Persons,

7    individually or collectively, in subparagraph 3 14 above

8    3 16   Upon the Effective Date of the Settlement, GM and its past or present officers, directors,

9    employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions, and assigns,

10   shall be deemed to have, and by operation of the Judgment shall have, released, waived, and discharged

11   any and all claims or causes of action of any nature whatsoever, including but not limited to any claim

12   for violations of federal, state, or other law (whether in contract, tort, or otherwise, including statutory,

13   common law, property, and equitable claims), whether known or unknown, that have been or could

14   have been asserted against any Representative Plaintiff, counsel for any Representative Plaintiff, or any

15   Class Member, in the Actions or in any other complaint, action, or litigation in any other court or forum

16   arising from, based on, or related to the initiation, prosecution, or resolution of the Actions to the extent

17   any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts,

18   omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense  The

19   Parties recognize and agree that this is a general release, and shall have expressly waived and

20   relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California

21   Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United

22   States, any law of any State or the District of Columbia, or any principle of common law that is similar,

23   comparable, or equivalent to California Civil Code section 1542, which states, "A general release does

24   not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time

25   of executing the release, which if known by him or her must have materially affected his or her

26   settlement with the debtor "

27   3 17   Upon the Effective Date of Settlement, for the consideration provided for herein and by

28   operation of the Judgment, GM and its past or present officers, directors, employees, agents, attorneys,

1  predecessors, successors, affiliates, subsidiaries, divisions, and assigns, shall be deemed to have, and by

2  operation of the Judgment shall have, covenanted and agreed that he, she or it shall not, at any time,

3  institute, cause to be instituted, assist in instituting or permit to be instituted on his, her or its behalf any

4  proceeding in any state or federal court, in or before any administrative agency, or any other proceeding

5  or otherwise allege or assert any of the claims released against the Representative Plaintiffs, Class

6  Counsel, and all Class Members, individually or collectively, in subparagraph 3 16 above

7      3 18   The sole remedy for default of this Agreement by either of the Parties is an action for

8  breach of this Agreement   Following entry by the Court of a Judgment that substantially takes the form

9  of Exhibit C to this Agreement and completion of all obligations and undertakings set forth therein, no

10  default by any party shall affect the final dismissal of the Actions or the Amico/Bertino Actions with

11  prejudice, the discharge of any of GM, any Released Persons, Class Counsel, Amico/Bertino Counsel,

12  Representative Plaintiffs, or Class Members, either individually or collectively, or the releases and

13  covenants provided in connection with this Agreement and set forth in subparagraphs 3 14-3 17

14  **4    DENIAL OF WRONGDOING OR LIABILITY**

15      4 1   This Agreement constitutes the resolution of disputed claims, is for settlement purposes

16  only, and shall not be used by any party, Class Counsel or Amico/Bertino Counsel for any other

17  purpose   GM expressly denies that it has violated any law, breached any agreement or obligation to the

18  Representative Plaintiffs or the Class, or engaged in any wrongdoing with respect to the Representative

19  Plaintiffs or the Class   GM denies that it is liable to the Representative Plaintiffs or to the Class for any

20  claims, causes of action, costs, expenses, attorneys' fees or damages of any kind relating to Repair

21  Expenses   GM denies that any of the claims were appropriate for maintenance as a class action through

22  trial   Neither this Agreement nor any actions undertaken by GM in satisfaction of this Agreement shall

23  constitute, or be construed as, an admission of any liability or wrongdoing, or recognition of the

24  validity of any allegation of fact or law made by the Representative Plaintiffs in the Actions, the

25  Amico/Bertino Actions, or in any other action or proceeding   Any orders related to class certification

26  entered in this action under this Agreement or otherwise shall not constitute, in the Actions, the

27  Amico/Bertino Actions, or any other proceeding, an admission by GM that the Representative

28  Plaintiffs' claims, or those of any alleged Class Member, are appropriate for class treatment or that any

14

1    requirement for class certification is otherwise satisfied in the Actions or the Amico/Bertino Actions

2    By entering into this Agreement, GM in no way waives its right to challenge or contest, on any and all

3    grounds, any allegations that a class may be certified in the Actions or Amico/Bertino Actions or any

4    order regarding class certification that has been entered in the Actions or the Amico/Bertino Actions    If

5    this Agreement is terminated and becomes null and void, the class action aspects of the Agreement

6    shall have no further force and effect with respect to any Party and shall not be offered in evidence or

7    used in the Actions, the Amico/Bertino Actions, or any other proceeding    This Agreement, even when

8    Effective, shall not be offered or be admissible in evidence against GM or cited or referred to in any

9    action or proceeding, except in an action or proceeding brought to enforce its terms or by GM in

10   defense of any claims brought by the Representative Plaintiffs, the Class or by any Class Members

11   **5.    SETTLEMENT APPROVAL PROCESS**

12        5 1    The Parties will apply to the Court for entry of the proposed Notice Order and setting of a

13   hearing for the Court to consider (a) whether to make final its certification of the Class for purposes of

14   the Settlement but not for trial purposes, (b) whether to grant final approval of the Settlement as fair,

15   reasonable, and adequate for Class as a whole, (c) whether to grant Class Counsel's application for

16   attorneys fees and costs and the Representative Plaintiffs' incentive award and, if so, in what amounts,

17   and (d) any related matters as appropriate ("Fairness Hearing")

18        5 2    Within five business days of the Court granting final approval of the Settlement, GM will

19   deposit $24,200,000 into an interest-bearing bank account established at a bank of GM's choosing,

20   subject to the reasonable approval of Co-Lead Counsel    Within five business days after the

21   Settlement's Effective Date, and absent any appeal by an objector from an order awarding (i)

22   Representative Plaintiffs an amount up to $140,000 in incentive payments (ii) attorneys' fees in an

23   amount not to exceed $16 50 million for both (and all) Class Counsel and Amico/Bertino Counsel

24   and/or (iii) documented costs in an amount not to exceed $1 55 million for both (and all) Class Counsel

25   and Amico/Bertino Counsel, that does not and could not result in the reversal and/or modification of the

26   Judgment (including the release provisions contained in paragraphs 3 14 through 3 18) GM will transfer

27   the total amount of the fee and cost award and any incentive payment award, including any interest

28   earned on the $24,200,000 million deposit, from the  account to a bank account as directed by Co-Lead

1    Counsel  In the event that any fee, cost, or incentive award is later distributed from the account

2    pursuant to the Missouri Settlement, any interest earned on such principal amounts shall be, at that

3    time, transferred to a bank account as jointly directed by Co-Lead Counsel in writing  In the event that

4    the Settlement does not become Effective, General Motors retains all right to the amount distributed in

5    the account and may withdraw and retain the full amount, including any interest earned

6        5 3    Co-Lead Counsel will in good faith allocate the fee award among Class Counsel in a

7    manner which, in the judgment of Co-Lead Counsel, reflects their relative contributions to the Actions

8    and the Agreement  Amico/Bertino Counsel shall receive $2,500,000 in attorneys' fees and $300,000

9    in costs, which shall satisfy any claims for attorneys' fees and costs as between  (1) General Motors

10   and Amico/Bertino Counsel, and (2) Amico/Bertino Counsel and Class Counsel  Any disagreement

11   among Class Counsel or between Co-Lead Counsel and Amico/Bertino Counsel concerning the

12   distribution of the fee award shall be referred to a mediation process determined by Co-Lead Counsel

13   and, if necessary, to the Court for determination  Co-Lead Counsel will in good faith allocate the

14   incentive awards among the Representative Plaintiffs in a manner which, in the judgment of Co-Lead

15   Counsel, and as approved by the Court, reflects their relative contribution to the Actions and the

16   Agreement  Co-Lead Counsel, Class Counsel, Amico/Bertino Counsel and the Representative

17   Plaintiffs shall have no recourse to, nor any claims of any nature whatsoever against, GM in the event

18   of a disagreement as to the apportionment of any fee or incentive award

19       5 4   GM and Co-Lead Counsel will work together with, among others, the Settlement

20   Administrator to disseminate notice to the Class in accordance with the Notice Order  No later than the

21   day the motion for final approval of the Settlement is to be filed under the Notice Order, the Settlement

22   Administrator or such other appropriate person or entity, among others, will file an affidavit or

23   declaration attesting that notice to the Class was disseminated in accordance with the Notice Order

24       5 5    Class Members must submit their exclusion requests, objections and supporting papers,

25   and notices of intent to appear in accordance with the Notice Order and the notice to the Class

26   disseminated pursuant to the Notice Order

27

28

1     5 6   If the number of exclusion requests exceed 10,000, GM shall have the option to rescind

2   this Settlement at its sole discretion by filing with the Court written notice of such election, with proof

3   of service on Co-Lead Counsel, no later than three days before the Fairness Hearing

4     5 7   In accordance with the Notice Order or such other or further order of the Court, Co-Lead

5   Counsel will file a motion for final approval of the Settlement and an application for attorneys' fees and

6   costs and incentive awards for the Representative Plaintiffs, and the Parties will brief the motion and

7   application

8     5 8   The Parties will appear at the Fairness Hearing and present their arguments in support of

9   final approval of the Settlement and entry of the proposed Judgment, and Co-Lead Counsel will present

10   their arguments in support of an award of attorneys' fees and costs and incentive awards for the

11   Representative Plaintiffs   GM agrees that the attorneys' fees, costs, and incentive awards, as set forth

12   in subparagraphs 3 11-3 13, are reasonable, and thus will not object to or oppose an award of attorneys'

13   fees and costs and incentive awards for the Representative Plaintiffs, provided the amounts sought do

14   not exceed that provided for by subparagraphs 3 11-3 13

15     5 9   The Actions and the Amico/Bertino Actions shall be stayed until the Court grants or

16   denies final approval of the Settlement   After the Effective Date of Settlement, Co-Lead Counsel, on

17   behalf of all Class Counsel will, within thirty days, execute joint stipulations of dismissal, with

18   prejudice, of the remaining Actions and deliver such joint stipulations for dismissal with prejudice to

19   General Motors for filing in the remaining Actions   After the Effective Date of the Settlement,

20   Amico/Bertino Counsel will dismiss the Amico/Bertino Actions, as provided in Exhibit D, attached

21   hereto or any subsequent agreement entered into between GM and Amico/Bertino Counsel formalizing

22   the term sheet attached hereto

23     5 10   This Agreement shall, if either GM or the Co-Lead Counsel elect, be null and void and

24   shall have no further force and effect with respect to any party in the Actions or the Amico/Bertino

25   Actions in the event that (i) preliminary and final approval of the settlement and of the settlement in

26   *Gutzler v  General Motors,* Case No  03CV208786 (Jackson County Missouri),  is not obtained, or if

27   such approval is reversed on appeal, (ii) the Effective Date of Settlement for this Settlement and the

28   settlement in *Gutzler v  General Motors,* Case No  03CV208786 (Jackson County Missouri), does not

17

1  occur for any reason, (iii) entry of the Judgment described is reversed, (iv) the Judgment is substantially

2  modified by the Court, or on appeal, and GM or the Representative Plaintiffs do not agree with its

3  modification, or (v) the remaining Actions are not dismissed with prejudice after presentation of the

4  joint stipulations by General Motors as referenced in 5 9 above  In such event, this Agreement shall not

5  be offered in evidence or used in the Actions, the Amico/Bertino Actions, or in any other action for any

6  purpose including, but not limited to, the existence, certification or maintenance of any purported class

7  or in connection with a trial or appeal of this matter or any other matter  In such event, this Agreement

8  and all negotiations, proceedings, documents prepared and statements made in connection with this

9  Agreement shall be without prejudice to the Parties and shall not be admissible into evidence, and shall

10  not be deemed or construed to be an admission or confession by any of the Parties of any fact, matter or

11  proposition of law, and shall not be used in any manner for any purpose, and all Parties to the Actions

12  and the Amico/Bertino Actions shall stand in the same position as if this Agreement had not been

13  negotiated, made or filed with the Court

14  6.    **MISCELLANEOUS PROVISIONS**

15       6 1    The Representative Plaintiffs and GM expressly agree that the terms of this Agreement

16  and all provisions hereof, including all representations, promises, agreements, covenants, and

17  warranties, are contractual and not a mere recital and shall survive the execution of this Agreement and

18  entry of the Judgment and shall continue in full force and effect thereunder  All exhibits to this

19  Agreement are material and integral parts hereof and are fully incorporated herein by this reference

20       6 2    This Agreement represents the entire agreement and understanding among the Parties and

21  supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject

22  matter of this Agreement, the sole exception being the term sheet attached hereto as Exhibit D and any

23  agreement entered into between Amico/Bertino Counsel and GM to effectuate that term sheet  The

24  Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation,

25  warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of

26  this Agreement has been made or relied on except as expressly set forth in this Agreement  No

27  modification or waiver of any provisions of this Agreement shall be effective unless made in writing

28  and signed by or on behalf of the person against whom enforcement of the Agreement is sought

18

1    6 3    This Agreement may be executed in one or more counterparts, each of which shall be

2    deemed an original as against any Party who has signed it, and all of which shall be deemed a single

3    agreement

4    6 4    The Parties have negotiated all of the terms and conditions of this Agreement at arm's

5    length  None of the Parties or their respective counsel will be deemed the drafter of this Agreement or

6    its exhibits for purposes of construing the provisions thereof  The language in all parts of this

7    Agreement and its exhibits will be interpreted according to its fair meaning, and will not be interpreted

8    for or against any Party as the drafter thereof

9    6 5    In accordance with California Rule of Court 3 769(h), the Court will retain continuing

10   and exclusive jurisdiction over the Parties and all Class Members for purposes of implementing and

11   enforcing this Agreement and the Settlement

12   6 6    The Parties hereto warrant and represent that no promise or inducement has been offered

13   or made for the release and covenants in subparagraphs 3 14-3 17 except as herein set forth, that the

14   releases and covenants are executed without reliance on any statements or any representations not

15   contained herein, and the release and covenants reflects the entire agreement among the Parties with

16   respect to the terms of the releases and covenants, except as provided above with respect to the attached

17   term sheet and any agreement entered into to further memorialize the term sheet

18   6 7    The Parties acknowledge and agree and specifically warrant to each other that they have

19   fully read this Agreement and the releases and covenants contained in subparagraphs 3 14-3 17,

20   received independent legal advice with respect to the advisability of entering into this Agreement and

21   those releases and covenants, and the legal effect of this Agreements and the releases and covenants,

22   and fully understand their effect

23   6 8    GM and Co-Lead Counsel may agree, on behalf of the Parties and subject to approval of

24   the Court where required, to reasonable extensions of time to carry out the provisions of this

25   Agreement  For purposes of such extensions, agreement by Co-Lead Counsel is the agreement of all

26   Parties

27

28

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO 4495

1      6 9   This Agreement will be binding upon and inure to the Parties' successors and assigns

2  This Agreement is not intended to create any third party beneficiaries other than persons (including

3  Class Members) for which a direct benefit is specifically provided for hereunder

4      6 10  In the event that the release and covenants contained in subparagraphs 3 14-3 15 of this

5  Agreement shall for any reason be held in whole or material part to be invalid, illegal, or unenforceable

6  in any respect, such invalidity, illegality, or unenforceability shall not affect any other provision of this

7  Agreement if GM elects in writing to Co-Lead Counsel to proceed as if such invalid, illegal, or

8  unenforceable provision had never been included in this Agreement  If no such election is made, then

9  the Agreement shall be null and void  In the event that the release and covenants contained in

10  subparagraphs 3 16-3 17 of this Agreement shall for any reason be held in whole or material part to be

11  invalid, illegal, or unenforceable in any respect, such invalidity, illegality, or unenforceability shall not

12  affect any other provision of this Agreement if the Representative Plaintiffs elect, either individually or

13  collectively, in writing to proceed as if such invalid, illegal, or unenforceable provision had never been

14  included in this Agreement  If no such election is made, then the Agreement shall be null and void  If

15  one or more of the other material provisions contained in this Agreement is held to be invalid, illegal, or

16  unenforceable, such invalidity, illegality, or unenforceability will not affect other provisions if GM and

17  the Representative Plaintiffs, on behalf of the Class, both elect to proceed as if such invalid, illegal, or

18  unenforceable provision were not contained in this Agreement

19      6 11  No consideration or amount or sum paid, credited, offered, or expended by GM in its

20  performance of this Agreement constitutes a penalty, fine, punitive damages or other form of

21  assessment for any alleged claim or offense

22      6 12  For purposes of this Agreement, the Parties and all counsel agree that all orders and

23  agreements regarding the confidentiality of documents and information ("Protective Orders") remain in

24  effect and all Parties and counsel remain bound to comply with the provisions of those Protective

25  Orders  Within thirty days of the Effective Date of Settlement, each of the Parties agrees to use its best

26  efforts to return all documents produced in these Actions or belonging to Defendants and all copies

27  thereof, and each of the Parties' counsel will certify in writing that it used its best efforts to return all

28  documents have been returned to the producing party

20

MASTER CLASS ACTION SETTLEMENT AGREEMENT
JUDICIAL COUNCIL COORDINATION PROCEEDING NO 4495

1    6 13    GM and Co-Lead Counsel agree to use their best efforts to issue a joint, written press

2    release within 48 hours of formal execution of this Settlement Agreement

3    6 14    The Parties hereto understand, acknowledge and agree that they and their counsel (i) have

4    each performed an independent investigation of the allegations of fact and law made in connection with

5    the Actions and the Amico/Bertino Actions, and (ii) that they each may hereafter discover facts in

6    addition to, or different from, those that they now know or believe to be true with respect to the subject

7    matter of this Agreement   Nevertheless, it is the Parties' intention to resolve their disputes pursuant to

8    the terms of this Agreement and, thus, in furtherance of their intentions, the Agreement shall remain in

9    full force and effect notwithstanding the discovery of any additional facts or law, or changes in law, and

10    this Agreement shall not be subject to rescission or modification by reason of any change or difference

11    in facts or law

12    6 15    This Agreement shall be governed and construed in accordance with the internal laws of

13    the State of California, without regard to any conflict of law provision that could require the application

14    of the law of any other jurisdiction

15    6 16    Whenever under the terms of this Agreement, a Party is required to provide written notice

16    to the other, such notice must be directed to the individual at the address specified below, unless that

17    individual or the individual's successor gives notice to the other Party in writing of another individual

18    or address to whom such notice should be directed

19    Written notice to the Representative Plaintiffs must be given to

20              Eric H  Gibbs
              Girard Gibbs LLP
21              601 California Street, 14th Floor
              San Francisco, California 94108
22
              P  John Brady
23              Shughart Thomson & Kilroy, P C
              Twelve Wyandotte Plaza
24              120 West 12th Street
              Kansas City, MO 64105
25
    Written notice to GM must be given to
26
              Robert B  Ellis, P C
27              Kirkland & Ellis LLP
              200 East Randolph Drive
28              Chicago, Illinois 60601

1    IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly

2    authorized attorneys below

3

4

5    _____          _____
     Eric H. Gibbs                       Robert B. Ellis, P.C.
6    Girard Gibbs LLP                    Kirkland & Ellis LLP
     601 California Street, 14th Floor   200 East Randolph Drive
7    San Francisco, California 94108     Chicago, Illinois 60601

8                                        Attorneys for GM

9
     _____
10   P. John Brady                       _____
     Shughart Thomson & Kilroy, P.C.     Michael F. Ram
11   Twelve Wyandotte Plaza              Levy, Ram & Olson LLP
     120 West 12th Street                639 Front Street
12   Kansas City, MO 64105               Fourth Floor
                                         San Francisco, CA 94111
13   Co-Lead Counsel
                                         Attorneys for Amico/Bertino Actions
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        22
                        MASTER CLASS ACTION SETTLEMENT AGREEMENT
                     JUDICIAL COUNCIL COORDINATION PROCEEDING NO. 4495

1    IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly

2    authorized attorneys below

3

4

5

6    Eric H Gibbs                          Robert B. Ellis, P C
     Girard Gibbs LLP                       Kirkland & Ellis LLP
7    601 California Street, 14th Floor      200 East Randolph Drive
     San Francisco, California 94108        Chicago, Illinois 60601

8                                           Attorneys for GM

9

10   P. John Brady                          Michael F. Ram
     Shughart Thomson & Kilroy, P.C         Levy, Ram & Olson LLP
11   Twelve Wyandotte Plaza                 639 Front Street
     120 West 12th Street                   Fourth Floor
12   Kansas City, MO 64105                  San Francisco, CA 94111

13   Co-Lead Counsel                        Attorneys for Amico/Bertmo Actions

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly

2    authorized attorneys below

3

4

5

6    Eric H Gibbs                          Robert B Ellis, P C
     Girard Gibbs LLP                      Kirkland & Ellis LLP
7    601 California Street, 14th Floor     200 East Randolph Drive
     San Francisco, California 94108       Chicago, Illinois 60601

8                                          Attorneys for GM

9

10   P John Brady                          Michael F Ram
     Shughart Thomson & Kilroy, P C        Levy, Ram & Olson LLP
11   Twelve Wyandotte Plaza                639 Front Street
     120 West 12th Street                  Fourth Floor
12   Kansas City, MO 64105                 San Francisco, CA 94111

13   Co-Lead Counsel

14                                         Attorneys for Amico/Berlino Actions

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    IN WITNESS HEREOF, the Parties have caused this Agreement to be executed by their duly

2  authorized attorneys below

3

4

5    _____         _____
6    Eric H. Gibbs                        Robert B. Ellis, P.C.
     Girard Gibbs LLP                     Kirkland & Ellis LLP
     601 California Street, 14th Floor     200 East Randolph Drive
7    San Francisco, California 94108       Chicago, Illinois 60601

8                                          Attorneys for GM

9

10   P. John Brady
     Shughart Thomson & Kilroy, P.C.       _____
     Twelve Wyandotte Plaza               Michael F. Ram
11   120 West 12th Street                  Levy, Ram & Olson LLP
     Kansas City, MO 64105                 639 Front Street
12                                         Fourth Floor
13   Co-Lead Counsel                       San Francisco, CA 94111

14                                         Attorneys for Amico/Bertino Actions

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        22



**EXHIBIT 2**

SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF ALAMEDA
*SADOWSKI V. GENERAL MOTORS CORP.*, CASE NO HG03091369

# If you have ever owned or leased
## any of the General Motors vehicles listed on pages 2-3,
## please read this notice carefully, as it affects your legal rights.

*The California Superior Court for Alameda County authorized this notice*
*This is not a solicitation from a lawyer*

*The purpose of this notice is to provide information about a class action settlement and to inform people covered by the proposed Settlement of their rights and options*

- There is a proposed class action Settlement involving the GM vehicles listed in paragraph 4. These vehicles were factory-equipped with Dex-Cool. Dex-Cool is an engine coolant designed to protect vehicles' engine and cooling systems

- You are included in this proposed Settlement if you own or lease or previously owned or leased any of these vehicles and made repairs related to the use of Dex-Cool as outlined in paragraph 4 of this Notice

- Repairs involving intake manifold gasket failures, engine coolant sealing issues, and sludge (a rust-like material) are covered by this proposed Settlement  These repairs would likely involve parts like the intake manifold and/or manifold gaskets, throttle body gaskets, radiator cap, heater core, water pump and other parts of the cooling system  See paragraph 4 for a complete description of the specific types of repairs covered for each vehicle type

- The Court in charge of this case still has to decide whether to give final approval to the proposed Settlement  Valid claims will be paid if the proposed Settlement is approved

- The types of repairs covered in the proposed Settlement, how to file a claim and your legal rights to participate or exclude yourself are outlined in this Notice  Please read it carefully

| SUMMARY OF CLASS MEMBERS' RIGHTS AND OPTIONS UNDER THE PROPOSED SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM | The only way to get a payment  Submit your claim online or by mail by October 27, 2008 |
| EXCLUDE YOURSELF | Get no payment  This is the only option that allows you to be part of any other lawsuit concerning the issues being settled now |
| COMMENT ON THE PROPOSED SETTLEMENT | Write to the Court about why you support or oppose the proposed Settlement |
| GO TO A HEARING | Ask to speak to the Court about the proposed Settlement |
| DO NOTHING | Get no payment  Be barred from bringing or being part of any other lawsuit concerning the issues being settled now |

QUESTIONS? VISIT WWW.DEXCOOLSETTLEMENT.COM OR CALL TOLL-FREE 1 (866) 245-4291

- 1 -

1.    THE LITIGATION: A number of lawsuits were filed as class actions against GM in state and federal courts across the United States involving "Dex- Cool" extended-life engine coolant  Among other things, the lawsuits allege that (i) Dex-Cool in the vehicles listed below caused problems with the vehicles' engines or cooling systems, and (ii) that certain engine components, such as the nylon/silicone lower intake manifold gaskets equipped in certain vehicles, were defective

2    GM'S POSITION: GM denies all allegations of wrongdoing and denies liability under any claim asserted in the lawsuits  GM argued that Dex-Cool protected engines for a longer period than traditional coolants, caused less wear on certain engine parts than traditional coolants, and provided environmental benefits  GM further argued that alleged problems with the vehicles' engines or cooling systems were caused by owners not following the maintenance instructions for their vehicles or other factors

3.    GM'S AGREEMENT TO SETTLE: GM has agreed to a class action settlement of the lawsuits  GM will reimburse class members up to a specified amount for certain repair costs they paid during the first seven years or 150,000 miles of vehicle ownership or lease, whichever is earlier

This notice is to inform class members of the existing lawsuits, the major terms of the proposed Settlement, and class members' rights and options  This proposed Settlement will not become effective unless it is approved by the Court as described below

4    CLASS COVERED BY THE PROPOSED SETTLEMENT    You are included in the class  (i) if you are a United States resident, (ii) if you own or lease, or previously owned or leased, any of the vehicles listed below, for personal, family, or household use (as opposed to commercial or business use), and (iii) if the vehicle was not purchased or leased in the State of Missouri, and

(a ) The vehicle has been in service for over seven years since the date the original buyer or lessee took delivery of the vehicle, and

(b ) As of the date of this Notice (May 30, 2008), you have not had to pay for any Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle,

OR

(c ) Regardless of how long the vehicle has been in service, you paid out-of-pocket for a Covered Repair that was performed during the first seven years or 150,000 miles (whichever is earlier) after the date the original buyer or lessee took delivery of the vehicle

GROUP A VEHICLES

Model years 1995-2003

Equipped with 3.1-liter or 3.4-liter V6 engine, manufactured before April 10, 2003 with a nylon/silicone lower intake manifold gasket.

| Buick | Century, Rendezvous |
|-------|---------------------|
| Chevrolet | Impala, Lumina, Malibu, Monte Carlo, Venture |
| Oldsmobile | Alero, Cutlass, Silhouette |
| Pontiac | Aztek, Grand Am, Grand Prix, Montana, Trans Sport |

Note   Some of these vehicles may have been offered for sale with an engine other than a 3 1-liter or 3 4 -liter
V6 engine  Any of the above models sold with an engine other than a 3 1-liter or 3 4 -liter V6 engine are not
included and are not eligible to make a claim

<u>Group A Covered Repairs</u>:  Replacement of failed nylon/silicone lower intake manifold gasket.

## GROUP B VEHICLES

### Model years 1995-2004

Equipped with 3.8-liter V6 engine (internal GM engine designation RPO L36).

| Buick | LeSabre, Park Avenue, Regal, Riviera |
|-------|--------------------------------------|
| Chevrolet | Camaro, Impala, Lumina, Monte Carlo |
| Oldsmobile | Eighty-Eight, Intrigue, LSS, Ninety-Eight |
| Pontiac | Bonneville, Firebird, Grand Prix |

Note   Some of these vehicles may have been offered for sale with an engine other than a 3 8-liter V6 engine
RPO L36  Any of the above models sold with an engine other than a 3 8-liter V6 engine RPO L36 are not
included and are not eligible to make a claim

<u>Group B Covered Repairs</u>:  Repairs necessitated by engine coolant sealing issues,
including replacement of throttle body gasket, upper intake manifold gasket,
lower intake manifold gasket, or intake manifold.

## GROUP C VEHICLES

### Model years 1995-2000

Equipped with 4.3-liter V6 engine

| Chevrolet | Blazer, Chevrolet S-10 |
|-----------|------------------------|
| GMC | Envoy, Jimmy, S-15 |
| Oldsmobile | Bravada |

<u>Group C Covered Repairs</u>:  Repairs necessitated by cooling-system sludge, including
cooling-system flush, heater core repairs, water pump repairs, or radiator cap replacement   "Sludge"
refers to a rust-like material that can form in the
cooling system and whose formation is related to use of Dex-Cool.

If you own one of the models listed above, but (i) with a different engine size than what is listed, or (ii) the
vehicle was manufactured using a lower intake manifold gasket other than a nylon/silicone gasket, or (iii) the
vehicle is a Group A vehicle manufactured after April 9, 2003, then you are not covered by the settlement and
are not eligible to file a claim

People who purchased or leased their GM vehicle in Missouri are not included in this proposed Settlement
They are instead included in a separate proposed Settlement that is being submitted for approval to a Missouri
state court  The settlement benefits of the proposed Missouri settlement are the same as the settlement benefits
of the proposed Settlement described in this notice

Also excluded from the class are GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a
controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone
employed by counsel for any of the named plaintiffs in the lawsuits covered by this proposed Settlement, any
judge to whom any of the lawsuits is assigned, as well as his or her immediate family, and all persons who
timely and validly request exclusion from the class  (The procedure for exclusion is described below )

The Court has appointed the following lawyers as Co-Lead Counsel to represent the class for purposes of the
proposed Settlement

Eric H  Gibbs                        P  John Brady
Girard Gibbs LLP                     Shughart Thomson & Kilroy P C
601 California Street, Suite 1400     Twelve Wyandotte Plaza
San Francisco, California 94108      120 West 12th Street
                                     Kansas City, Missouri 64105

5.    **SETTLEMENT BENEFITS:** Under the proposed Settlement, GM will send cash reimbursements to class
members who paid for Covered Repairs performed within seven years or 150,000 miles (whichever is earlier)
after the original owner or lessee took delivery of the vehicle, and who submit timely and valid claims

The amount of reimbursement for which you are eligible depends on (i) when the Covered Repair was
performed and (ii) the amount you actually paid, as described below

   a   For a Covered Repair made within five years after initial vehicle delivery
       You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $400, if you
       were not previously fully reimbursed

       However, if you can document that the Covered Repair required you to pay over $1,500 to address an
       internal coolant leak, your reimbursement level may be different  If so, you can elect to request
       reimbursement of 40% of the amount you paid out-of-pocket up to $800, if you were not previously
       fully reimbursed

       (An internal coolant leak means that coolant leaked from one vehicle component into another
       component  Whereas an external coolant leak means that coolant leaked from inside a vehicle
       component to the exterior of the vehicle )

   b   For a Covered Repair made in the *sixth year* after initial vehicle delivery
       You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $100, if you
       were not previously fully reimbursed

   c   For a Covered Repair made in the *seventh year* after initial vehicle delivery:
       You are eligible to be reimbursed the documented amount you paid out-of-pocket up to $50, if you
       were not previously fully reimbursed

If you paid for more than one Covered Repair (whether on the same vehicle or on different vehicles included in
the proposed Settlement), you may make a separate reimbursement claim for each one

6.    HOW TO MAKE A CLAIM: To make a claim for a reimbursement under the proposed Settlement, you must submit the following documents, either online or by mail. If you do not submit each of the following documents, and fully complete the claim statement, your claim may be denied.

(a) . Completed Claim Statement. A Claim Statement form is enclosed with this Notice. If you need more forms, you can photocopy this one or download additional copies from the proposed Settlement Web site at www DexCoolSettlement com. You can also call the Claims Administrator toll-free at 1 (866) 245-4291 to have more forms mailed to you

(b) Proof of repair payment. You must provide documentation showing that you paid out-of-pocket for a Covered Repair, for which you were not fully reimbursed. Please read the instructions on the Claim Statement form for more details

(c) Proof of ownership or lease. You must provide documentation showing that you owned or leased the vehicle at the time of the Covered Repair. Please read the instructions on the Claim Statement form for more details

(d) If you wish to submit your claim by mail, you must mail the above documents, postmarked no later than October 27, 2008, to the Claims Administrator at the address listed on the Claim Statement form

(e) If you wish to submit your claim online, please go to www DexCoolSettlement com, fill out the online Claim Statement form, and attach scanned versions of your required documentation before clicking the button to submit your claim. Online claims must be submitted no later than midnight on October 27, 2008.

(f) If you wish to make reimbursement claims for two or more Covered Repairs, you must submit a separate set of documents (Claim Statement, proof of repair payment, and proof of ownership or lease) for each claim. You may not combine claims for more than one Covered Repair in a single Claim Statement

(g) The Claims Administrator has the right to request additional documentation before the Claim is approved and paid. Your claim may be denied if the Claims Administrator determines that it is invalid

7.    ATTORNEYS' FEES AND EXPENSES AND INCENTIVE AWARDS: Since this litigation started in 2003, over 20 law firms have devoted more than 43,000 hours to prosecuting the various lawsuits across the country on behalf of class members purely on a contingent basis, and have received no compensation for their services or reimbursement of their expenses. As part of the proposed Settlement, subject to Court approval, plaintiffs' counsel will apply for attorneys' fees not to exceed $16 5 million and expenses not to exceed $1 55 million

Application will be made for incentive awards not to exceed a total amount of $140,000 for the named plaintiffs in the lawsuits. There are more than 100 named plaintiffs in the lawsuits. This is to recognize their initiative and effort in pursuing the matter on behalf of other vehicle owners and lessees. Any amounts approved by the Court will be paid by GM separately from and without reducing the reimbursement payments it makes to class members under the proposed Settlement

8.    RELEASE OF CLAIMS IF COURT APPROVES THE PROPOSED SETTLEMENT: If the Court approves the proposed Settlement, it will enter a judgment that will dismiss the litigation with prejudice as to all class members. It will release all claims they may have based on any expenses they incurred because of a Covered Repair during the first seven years or 150,000 miles (whichever is earlier) their Group A, Group B, or Group C vehicle was in service

This means that class members will be forever barred from bringing, continuing, or being part of any other lawsuit against GM and its personnel, representatives, and insurers, or GM's related companies and their personnel, representatives, and insurers, concerning such expenses. If you fall within the class definition and

QUESTIONS? VISIT WWW DEXCOOLSETTLEMENT COM OR CALL TOLL-FREE 1 (866) 245-4291

- 5 -

do not want to be barred from bringing, continuing, or being part of such a lawsuit, you must exclude yourself from the class and proposed Settlement here

The release applicable to the Class if the settlement is approved provides as follows  In consideration of the benefits described above, the Representative Plaintiffs promise, covenant and agree, and each Class Member and the Class shall be deemed to have promised, covenanted and agreed, that, upon the Effective Date of Settlement, the Representative Plaintiffs and the Class Members, including their affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and/or shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers, and anyone acting on their behalf, by operation of the Judgment, shall have hereby released, waived and discharged GM, including its subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state statutory or common law federal statutory or common law, or foreign statutory or common law, to the fullest extent permitted by law, including, but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such claims were or could have been raised or asserted in the Actions or the Amico/Bertino Actions, to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense  Claims for personal injury, and claims for lower intake manifold gasket replacements in 4 3-liter V6 engines for Class Members who have not submitted a Claim and received a payment under the settlement, are not released  The Parties recognize and agree that this is a general release  Representative Plaintiffs and the Class Members expressly waive and relinquish, and shall be deemed to have waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United States, any law of any State or the District of Columbia, or any principle of common law that is similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor "

9.    YOUR OPTIONS AND DEADLINES: If you are a class member, you have the following options

    (a)  Participate in the proposed Settlement by making a claim  To participate in the proposed Settlement, you must submit a claim as described above  You do not need to do anything else to participate  If you submit a valid claim on time, the Court approves the proposed Settlement, and the Judgment becomes final, then a reimbursement check will be mailed to you

    (b)  Request to be excluded  If you wish to exclude yourself from the class, you must submit a letter or postcard, such that it is received on or before August 13, 2008, stating

        • Your name, address, telephone number,

        • The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased, <u>and</u>

- That you wish to be excluded from the class and proposed Settlement in the lawsuit *Sadowski v General Motors Corp*, Case No HG03091369

You must send your exclusion request to the Claims Administrator, addressed as follows  Dex Cool Litigation 2, c/o The Garden City Group, Inc., P.O. Box 9239, Dublin, OH 43017-4639. If you submit a valid exclusion request on time, you cannot obtain a reimbursement payment under the proposed Settlement  You will not be bound by the final judgment, and you will not be barred from bringing, continuing, or being part of another lawsuit concerning expenses you incurred because of a Covered Repair

If you do not properly exclude yourself, all of your claims based on such expenses will be released, and you will be barred from bringing, continuing, or being part of any such lawsuit. You will be barred even if you do not submit a claim under this proposed Settlement  In other words, if you do nothing at all, your claims will be released, and you will receive nothing under the proposed Settlement

(c) **Object or comment**  If you are a class member and do not exclude yourself, you may object to or comment on all or part of the proposed Settlement  This includes plaintiffs' counsel's request for attorneys' fees, expenses, and incentive awards for the named plaintiffs  Objecting is not the same as excluding yourself  If you object and the proposed Settlement is approved, you will still be bound by the final judgment and your claims will be released

You must submit your objections or comments in writing as follows

- On the first page, please include a prominent reference to *Sadowski v General Motors Corp*, Case No  HG03091369  Your objections or comments must include

    - Your full name, address, and telephone number,

    - The year, model, and vehicle identification number of the vehicle covered by the proposed Settlement that you currently or previously owned or leased, along with proof of a Covered Repair,

    - Your signature, and

    - Any supporting papers or briefs on which your objections or comments are based

If you also wish to speak at the fairness hearing (described below), you must also state in your objections or comments that you intend to appear and speak at the hearing  If you do not include this statement, you will not be entitled to speak at the hearing

You must deliver your objections or comments to the Court by filing them in person at any location of the Alameda County Superior Court that includes a facility for civil filings or by mailing them to Clerk of the Court at the address listed below, with copies to Co-Lead Counsel for the class and GM's counsel  They must be received no later than August 13, 2008  The mailing addresses for the Clerk of the Court, Co-Lead Counsel, and GM's counsel are as follows

|  | **Co-Lead Counsel:** | **Counsel for GM** |
|---|---|---|
| Clerk of the Court | | |
| Rene C  Davidson Alameda | Eric H  Gibbs | Robert B  Ellis |
| County Courthouse | Girard Gibbs LLP | Kirkland & Ellis LLP |
| 1225 Fallon Street | 601 California Street, 14th Floor | 200 East Randolph Drive |
| Oakland, California  94612 | San Francisco, California 94108 | Chicago, Illinois 60601 |

QUESTIONS? VISIT WWW DEXCOOLSETTLEMENT COM OR CALL TOLL-FREE 1 (866) 245-4291

If you submit an objection and wish to preserve your appellate rights, you must appear in person, through your counsel or as otherwise permitted by the Court, at the Fairness Hearing  If you do not wish to appear in Court then you must state so in your objection

If you do not raise your objections according to the above procedure, you will waive all objections and have no right to appeal any aspect of the proposed Settlement  If you raise an objection according to the above procedure and fail to appear, you will have no right to appeal any aspect of the proposed Settlement  This includes appealing (i) an order approving the Settlement as fair, reasonable and adequate, (ii) entry of Judgment that dismisses this action with prejudice and releases the claims of class members as provided for in the Settlement, (iii) an award of incentive payments to the Representative Plaintiffs, or (iv) an award of reasonable attorneys fees and costs to Class Counsel

You can enter an appearance in the lawsuit through your own legal counsel  If you do, you will be responsible for your own attorneys' fees and costs

10.    FAIRNESS HEARING:  On August 29, 2008 at 11:00 a.m., a hearing will be held before the Honorable Robert B  Freedman, in Department 20 of the California Superior Court for Alameda County, County Administration Building, 1221 Oak Street, Oakland, California 94612  The purpose of the hearing is for the Court to decide whether the proposed Settlement is fair, reasonable, and adequate and should be approved  The Court will also decide whether a final judgment should be entered dismissing this lawsuit, and the amount of attorneys' fees and expenses and incentive awards to class representatives  This hearing may be postponed without further notice to the class

11.    ADDITIONAL INFORMATION:  You can get more information at the proposed Settlement Web site at www DexCoolSettlement com    You can also view the Settlement Agreement and download a Claim Statement form on the Web site

You can get more information by calling the Claims Administrator toll-free at 1 (866) 245-4291, sending an e-mail to info@dexcoolsettlement com, or by sending a written inquiry to Co-Lead Counsel at the address in Section 9, above  In addition, you can view the Court's docket at www alameda courts ca gov/domainweb and inputting case number HG03093843 or ICCP004495  Otherwise, please do not direct any inquiries to the Court

DATED  MARCH 20, 2008              BY ORDER OF THE SUPERIOR COURT
                                   OF THE STATE OF CALIFORNIA
                                   FOR THE COUNTY OF ALAMEDA



EXHIBIT 3

ENDORSED
FILED
ALAMEDA COUNTY

OCT 2 3 2008

Adolfin , Exec. Off./Clerk

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 1550(b)) | JUDICIAL COUNCIL COORDINATION<br>PROCEEDING NO. 4495 |
| GENERAL MOTORS<br>DEX-COOL/GASKET CASES | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF ALAMEDA<br>NO. HG03093843 |
| Included actions | |
| Sadowski v. General Motors Corp. | SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN JOAQUIN<br>NO. CV 025 770 |
| Bertino v. General Motors Corp. | JUDGMENT AND ORDER OF DISMISSAL<br>WITH PREJUDICE |
| | The Honorable Robert B. Freedman |
| | Action filed.   April 29, 2003<br>Trial date      None set |

This matter came before the Court for hearing pursuant to the Order Granting Preliminary Approval Of Proposed Settlement, Provisionally Certifying Class, And Directing Dissemination Of Notice To Class, dated March 20, 2008 ("Notice Order"), on the application of the Parties for approval of the settlement set forth in the Settlement Agreement, dated March 19, 2008 ("Agreement")  Due and adequate notice having been given of the settlement set forth in the Agreement ("Settlement") as required by the Notice Order, and the Court having considered and reviewed all papers filed and proceedings had herein, including the timely objections to the proposed settlement submitted by class members, approximately 80 of which were submitted by individuals themselves and 5 by counsel on behalf of 6 individuals, as well as the responses filed by Plaintiffs and GM to the objections, and otherwise being fully informed in the premises and good cause appearing therefor, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that

1.     This Judgment incorporates by reference the definitions in the Agreement and Notice Order, and all defined terms used herein shall have the same meanings set forth in the Agreement and Notice Order

2.     This Court has jurisdiction over the subject matter of the Sadowski Action, the Sadowski Parties, and all members of the settlement Class defined as follows:

> All Consumers in the United States of America, excepting those who purchased or leased their vehicles in the State of Missouri, who (i) own or lease, or who have owned or leased, a Covered Vehicle that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred a repair expense of the type included in the definition of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order

Excluded from the Class are GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone employed by counsel for Representative Plaintiffs, any Judge to whom any of the Actions is assigned as well as his or her immediate family; any and all persons who timely and validly request exclusion from the Class pursuant to the notice disseminated in accordance with the Notice Order

3.     This Court hereby finds that for settlement purposes, and for purposes of the Agreement and the Settlement, the Sadowski Action and the Class meet the requirements for the bringing and maintenance of a class action set forth in section 382 of the Code of Civil Procedure and section 1781 of the Civil Code

4.     This Court hereby finds that the Agreement and Settlement are, in all respects, fair, reasonable, and adequate, and in the best interests of the Class; overrules the timely objections submitted, grants final approval of the Agreement and Settlement, and directs the Parties to perform the terms of the Agreement

5     This Court hereby dismisses the Sadowski Action with prejudice and without costs, except as otherwise provided in the Agreement

6     Upon the Effective Date of the Settlement, the Representative Plaintiffs and the Class Members, including their affiliates, subsidiaries, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and/or shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers, and anyone acting on their behalf, by operation of this Judgment, shall have hereby released, waived and discharged GM, including its subsidiaries, affiliates, associates, general or limited partners or partnerships, predecessors, successors, and/or assigns, including, without limitation, any of their respective present or former officers, directors, trustees, employees, agents, attorneys, representatives and shareholders, affiliates, associates, general or limited partners or partnerships, heirs, executors, administrators, predecessors, successors, assigns or insurers and anyone acting on their behalf, individually and collectively, from liability for any and all claims, demands, debts, rights, causes of action or liabilities whatsoever, including known and unknown claims, now existing or hereafter arising, in law, equity or otherwise, arising under state statutory or common law federal statutory or common law, or foreign statutory or common law, to the fullest extent permitted by law, including, but not limited to, federal or state antitrust claims, RICO claims, claims arising under state consumer protection, consumer fraud, deceptive trade practices statutes, common law breach of contract claims, statutory or common law fraud or misrepresentation claims, breach of fiduciary duty claims or unjust enrichment claims and whether possessed or asserted directly, indirectly, derivatively, representatively or in any other capacity, and whether or not such claims were or could have been raised or asserted in the Actions or the Amico/Bertino Actions, to the extent any such claims are based upon, arise out of or relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or matters arising from or related to any Repair Expense Claims for personal injury, and claims for lower intake manifold gasket replacements in 4 3-liter V6 engines for Class Members who have not submitted a Claim and received a payment under the settlement, are

3

1  not released  The Parties recognize and agree that this is a general release  Representative Plaintiffs

2  and the Class Members expressly waive and relinquish, and shall be deemed to have waived and

3  relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of California

4  Civil Code section 1542 and the provisions, rights, and benefits conferred by any law of the United

5  States, any law of any State or the District of Columbia, or any principle of common law that is

6  similar, comparable, or equivalent to California Civil Code section 1542, which states, "A general

7  release does not extend to claims which the creditor does not know or suspect to exist in his or her

8  favor at the time of executing the release, which if known by him or her must have materially

9  affected his or her settlement with the debtor "

10      7      Upon the Effective Date of the Settlement, GM and its past or present officers,

11  directors, employees, agents, attorneys, predecessors, successors, affiliates, subsidiaries, divisions,

12  and assigns, shall be deemed to have, and by operation of this Judgment shall have, released,

13  waived, and discharged any and all claims or causes of action of any nature whatsoever, including

14  but not limited to any claim for violations of federal, state, or other law (whether in contract, tort, or

15  otherwise, including statutory, common law, property, and equitable claims), whether known or

16  unknown, that have been or could have been asserted against any Representative Plaintiff, counsel

17  for any Representative Plaintiff, or any Class Member, in the Actions or in any other complaint,

18  action, or litigation in any other court or forum arising from, based on, or related to the initiation,

19  prosecution, or resolution of the Actions to the extent any such claims are based upon, arise out of or

20  relate to, in whole or in part, any of the allegations, acts, omissions, transactions, events, conduct, or

21  matters arising from or related to any Repair Expense.  The Parties recognize and agree that this is a

22  general release, and shall have expressly waived and relinquished, to the fullest extent permitted by

23  law, the provisions, rights, and benefits of California Civil Code section 1542 and the provisions,

24  rights, and benefits conferred by any law of the United States, any law of any State or the District of

25  Columbia, or any principle of common law that is similar, comparable, or equivalent to California

26  Civil Code section 1542, which states, "A general release does not extend to claims which the

27  creditor does not know or suspect to exist in his or her favor at the time of executing the release,

28  which if known by him or her must have materially affected his or her settlement with the debtor "

8    Under the circumstances, the notice of this Settlement provided to the Class Members in accordance with the Notice Order was the best notice practicable of the proceedings and matters set forth therein, including the proposed Settlement, to all persons entitled to such notice, and said notice fully satisfied the requirements of due process and California law

9    Neither the Fee Application nor any order entered by this Court thereon shall in any way disturb or affect this Judgment, and all such matters shall be considered separate from this Judgment   The Court will not award more than (i) $140,000 in incentive payments to Representative Plaintiffs; (ii) $16 5 million in attorneys' fees, and (iii) $1 55 million in documented costs.

10    Within forty-five (45) days after entry of this Judgment, Co-Lead Counsel shall, with the agreement of GM, file a listing of each person who submitted a valid and timely request for exclusion from the Class  The persons so identified shall neither share in the benefits of the Settlement nor be bound by this Judgment   All persons who meet the Class definition and have not submitted such an exclusion request shall be bound by this Judgment

11    Neither the Agreement nor the Settlement nor any act performed or document executed pursuant to or in furtherance of the Agreement or the Settlement (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any claim asserted against GM in the Actions, or of any wrongdoing or liability of GM, or of an admission by General Motors that the claims that were the subject of this action were appropriate for class certification for purposes of trial or for any other purpose other than for purposes of this Settlement Agreement, or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of GM in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal, or (c) is or may be deemed to interfere with, prohibit or bar a Class Member from cooperating with or assisting an extended commercial warranty provider or other third party to bring subrogation claims against GM related to Covered Repairs   GM may file the Agreement, this Judgment, or both in any other action that may be brought against it in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good-faith settlement, judgment bar or reduction, or any theory of claim preclusion or issue preclusion or similar defense or counterclaim

JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE
JUDICIAL COUNSEL COORDINATED PROCEEDING 4405

1   12  Consistent with the express terms of the Settlement Agreement, subrogation claims

2 are not being released as part of this Judgment  The rights of extended commercial warranty

3 providers or other third parties to bring subrogation claims against GM related to Covered Repairs in

4 a separate action are not barred by the Settlement

5   13  Without affecting the finality of this Judgment in any way, this Court hereby retains

6 continuing jurisdiction, pursuant to California Rule of Court 3 769(h), over (a) implementation of the

7 Settlement, (b) payment of Class Members' claims under the Settlement; (c) further proceedings, if

8 necessary, on applications for attorneys' fees, expenses, or costs in connection with the Sadowski

9 Action or the Settlement, and (d) the Parties for purposes of construing, enforcing, or administering

10 the Agreement  If any Party fails to fulfill its obligations completely, the Court retains the power to

11 issue such orders to enforce this Judgment and the Settlement as it deems appropriate after noticed

12 hearing.

13   14  If the Settlement does not become effective in accordance with the terms of the

14 Agreement, then this Judgment shall be rendered null and void to the extent provided by and in

15 accordance with the Agreement and shall be vacated and, in such event, all orders entered and

16 releases delivered in connection herewith shall be null and void to the extent provided by and in

17 accordance with the Agreement

18   15  A Compliance Hearing is hereby set for February 27, 2009 at 10 00 a m  in

19 Department 20  If a final report and accounting satisfactory to the Court regarding the administration

20 of the Settlement is submitted at least 5 court days prior to the Compliance Hearing, no appearances

21 will be required

22  **IT IS SO ORDERED.**

23

24 DATED. _Oct 23, 2006_

25        THE HONORABLE ROBERT B. FREEDMAN
         JUDGE OF THE SUPERIOR COURT

26

27

28

JUDGMENT AND ORDER OF DISMISSAL WITH PREJUDICE
JUDICIAL COUNSEL COORDINATED PROCEEDING 4495

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                        :

In re                      :        Chapter 11 Case No.
                         :

MOTORS LIQUIDATION COMPANY, *et al.,*  :    09-50026 (REG)
    f/k/a General Motors Corp., *et al.*   :

                         :

              Debtors.    :    (Jointly Administered)
                         :
------------------------------------------------------x

## STIPULATION AND ORDER BETWEEN THE DEBTORS AND THE HOLDERS OF UNLIQUIDATED DEX-COOL AND ANDERSON CLAIMS TO ALLOW CLASS PROOFS OF CLAIM FOR DEX-COOL AND ANDERSON CLASS CLAIMANTS

Motors Liquidation Company (f/k/a General Motors Corporation) ("MLC") and

certain of its subsidiaries, as debtors and debtors in possession in the above-captioned chapter 11

cases (collectively, the "Debtors" or "MLC"), and the holders of Unliquidated Dex-Cool Claims

(as defined below), and the holders of Unliquidated Anderson Claims (as defined below), by and

through their respective undersigned counsel, hereby enter into this Stipulation and Agreed

Order (this "Stipulation") and stipulate as follows:

### RECITALS

A.      On June 1, 2009 (the "Commencement Date"), the Debtors commenced with this

Court voluntary cases (the "Chapter 11 Cases") under chapter 11 of title 11 of the United States

Code (the "Bankruptcy Code"). The Debtors are authorized to continue to operate their

businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and

1108 of the Bankruptcy Code. No trustee or examiner has been appointed. On or about June 3,

2009, an Official Committee of Unsecured Creditors (the "Committee") was appointed in the

Chapter 11 Cases. The Chapter 11 Cases are being jointly administered pursuant to Rule

1015(b) of the Bankruptcy Rules.

B.       On September 16, 2009, the Court entered an order (the "Bar Date Order") establishing November 30, 2009 at 5:00 p.m. (Eastern Time) (the "General Bar Date") as the deadline for each person or entity (including without limitation, each individual, partnership, joint venture, corporation, estate, or trust) to file a proof of claim (a "Proof of Claim") against any Debtor to assert any claim (as defined in section 101(5) of the Bankruptcy Code) (a "Claim") that arose prior to the Commencement Date.

C.       On April 29, 2003 certain consumers filed class actions against MLC in the 16th Judicial Circuit Court (Jackson County) of the State of Missouri (the "Gutzler Class Action") and in the Superior Court of the State of California for the County of Alameda (the "Sadowski Class Action" and together with the Gutzler Class Action, the "Dex-Cool Class Actions"). In both the Gutzler Class Action and the Sadowski Class Action, the parties entered into a settlement agreement approved by each court (collectively, the "Dex-Cool Settlement Agreement"). Prior to the Commencement Date, the administration of the Dex-Cool Settlement Agreement had been substantially completed. However, certain claims in connection with the Dex-Cool Class Actions had not yet been liquidated pursuant to the terms of the Dex-Cool Settlement Agreement (the "Unliquidated Dex-Cool Claims").

D.       On May 18, 2004 certain consumers filed a class action against MLC in the Superior Court of the State of California for the County of Los Angeles, Central Civil West Courthouse (the "Anderson Class Action"). In the Anderson Class Action, the parties entered into a settlement agreement approved by the court (the "Anderson Settlement Agreement"). Prior to the Commencement Date, the administration of the Anderson Settlement Agreement had been initiated. However, certain claims in connection with the Anderson Class Action had not

yet been liquidated pursuant to the terms of the Anderson Settlement Agreement (the

"Unliquidated Anderson Claims").

NOW, THEREFORE, in consideration of the mutual covenants and agreements

set forth in this Stipulation, it is agreed as follows:

### AGREEMENT

1.    On behalf of the holders of Unliquidated Dex-Cool Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors, and the Debtors agree that the undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Dex-Cool Claims.

2.    On behalf of the holders of Unliquidated Anderson Claims, undersigned class

counsel may file a Class Proof of Claim aggregating the holders' respective claims against

Debtors and the Debtors agrees that undersigned class counsel has authority under Fed. R.

Bankr. P. 3001 and the Bankruptcy Code to execute and file such claim on behalf of the holders

of the Unliquidated Anderson Claims.

3.    The undersigned class counsel, by filing the Class Proofs of Claim in respect of

the Unliquidated Dex-Cool Claims and the Unliquidated Anderson Claims, consents to and

hereby is deemed to be the claimant for the purpose of receiving notices and distributions, if

any, except as otherwise provided in a confirmation order related to a chapter 11 plan filed in

the Chapter 11 Cases, and may (but shall not be required to) respond to any objections

interposed as to any claims asserted in each applicable Class Proof of Claim.  Notice to the

undersigned class counsel shall be, and shall be deemed to be, sufficient notice to all class

members in the Dex-Cool Class Action and the Anderson Class Action.

4.    The Debtors' agreement herein to permit the filing by the undersigned class counsel of each Class Proof of Claim is intended solely for the purpose of administrative convenience and neither this Stipulation and Order nor the filing of any Class Proof of Claim shall in any way prejudice the right of any Debtor or any other party in interest to object to the allowance of any Class Proof of Claim.

5.    This Court shall retain jurisdiction to resolve any disputes or controversies arising from or relating to this Stipulation and Order and to the filing of the Class Proofs of Claim pursuant to this Stipulation.

6.    This Stipulation is subject to the approval of this Court and shall become effective upon the entry of an order by the Court approving this Stipulation. If this Stipulation is not approved by the Court, then this Stipulation shall be deemed null and void, and shall not be referred to or used for any purpose by any of the parties hereto (the "**Parties**") in either the Chapter 11 Cases or in any other forum.

7.    This Stipulation sets forth the entire understanding of the Parties with respect to the matters addressed herein and is intended to be the complete and exclusive statement of the terms thereof and may not be modified or amended except by a writing signed by the Parties and/or their counsel, which shall be so-ordered by the Court. Accordingly, the Parties have independently verified all facts and/or conditions of facts that they have determined are necessary to their decision to enter into this Stipulation, and they have not relied upon any representations, written or oral, express or implied, of any other person in verifying and satisfying themselves as to such facts and/or condition of facts.

8.    The Parties represent and warrant to each other that the signatories to this Stipulation have full power and authority to enter into this Stipulation.

9.      This Stipulation may be executed in multiple counterparts, each of which shall

be deemed an original but all of which together shall constitute one and the same instrument.

Delivery of signed counterparts of this Stipulation by facsimile transmission or as PDF

attachment to an email message shall have the same effect as the manual delivery of an original

signed counterpart of this Stipulation, and all signatures on such counterpart will be deemed to

be as valid as an original signature whether or not a Party delivers manually an original signed

counterpart of this Stipulation, although it is the Parties' intention to deliver an original signed

counterpart after any facsimile or email delivery.


DATED: November __, 2009                          Respectfully submitted,


GIRARD GIBBS LLP                                  POLSINELLI SHUGHART P.C.


By: /s/ A. J. de Bartolomeo                       By: P. John Brady
A. J. De Bartolomeo                               P. John Brady

Eric H. Gibbs                                     Twelve Wyandotte Plaza
Dylan Hughes                                      120 West 12th Street
Geoffrey A. Munroe                                Kansas City, Missouri 64105
601 California Street, 14th Floor                 Telephone: (816) 421-3355
San Francisco, California 94108                   Facsimile: (816) 374-0509
Telephone: (415) 981-4800
Facsimile: (415) 981-4846                         *Court-Appointed Class Counsel in Dex-Cool*

*Court-Appointed Class Counsel in Dex-Cool*
*Class Action and Anderson*

**WEIL, GOTSHAL & MANGES LLP**


By: <u>Joseph H. Smolinsky</u>
Joseph H. Smolinsky

767 Fifth Avenue
New York, New York 10153
Attention: Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Phone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for the Debtors and Debtors in
Possession*

## ORDER APPROVING STIPULATION

Based on the foregoing stipulation of the parties, the Court finding that good cause exists to approve the Stipulation as an order of the Court, that adequate notice of the Stipulation has been provided, and that no further notice is required,

IT IS HEREBY ORDERED that the foregoing stipulation is approved and incorporated by reference and made a part of this Order.

IT IS FURTHER ORDERED that this Court will retain jurisdiction to adjudicate any disputes arising in connection with this Order.

Date: *December 1, 2009*
New York, New York

*s/ Robert E. Gerber*
UNITED STATES BANKRUPTCY JUDGE

US_ACTIVE\43228357\05\72240.0639

# EXHIBIT E

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------x
                                :

**In re**                          :        **Chapter 11 Case No.**
                                :

**MOTORS LIQUIDATION COMPANY,** *et al.,*  :        **09-50026 (REG)**
     **f/k/a General Motors Corp.,** *et al.*  :

                               :

               **Debtors.**       :        **(Jointly Administered)**
                               :

------------------------------------------------------x

**NOTICE OF HEARING ON MOTION**
**OF DEBTORS FOR ENTRY OF ORDER PURSUANT TO**
**FED. R. BANKR. P. 9019 AND FED. R. CIV. P. 23 APPROVING AGREEMENT**
**RESOLVING PROOF OF CLAIM NO. 51095 AND IMPLEMENTING**
**MODIFIED DEX-COOL CLASS SETTLEMENT**

PLEASE TAKE NOTICE that upon the annexed Motion, dated March 24, 2011

(the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors in possession (the "**Debtors**"), for an order, pursuant to Rule 9019

of the Federal Rules of Bankruptcy Procedure and Rule 23 of the Federal Rules of Civil

Procedure approving the Agreement Resolving Proof of Claim No. 51095 (the "**Agreement**"),

attached to the Motion as **Exhibit "A"** implementing a settlement between class action plaintiffs

(the "**Dex-Cool Plaintiffs**"), on behalf of themselves and all others similarly situated

(collectively, the "**Dex-Cool Class**"), and the Debtors, as defined and as more fully set forth in

the Motion, a hearing will be held before the Honorable Robert E. Gerber, United States

Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, New York, New York 10004, on **April 26, 2011 at 9:45 a.m.**

**(Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R.

Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o

Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham,

Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400 Renaissance Center,

Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham &

Taft LLP, attorneys for the United States Department of the Treasury, One World Financial

Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.); and (xii) Girard Gibbs LLP, Co-Lead Class Counsel for the Dex-Cool

Plaintiffs and the Dex-Cool Class, 601 California Street, Suite 1400, San Francisco, California

94108 (Attn: Eric H. Gibbs, Esq. and A. J. De Bartolomeo, Esq.), so as to be received no later

than **April 19, 2011 at 4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion as **Exhibit "B,"** which order may be entered with no further notice or opportunity to be

heard offered to any party.

Dated: New York, New York
March 24, 2011

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **09-50026 (REG)** |
| f/k/a **General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

**MOTION OF DEBTORS FOR ENTRY OF ORDER**
**PURSUANT TO FED. R. BANKR. P. 9019 AND FED. R. CIV. P. 23**
**APPROVING AGREEMENT RESOLVING PROOF OF CLAIM**
**NO. 51095 AND IMPLEMENTING MODIFIED DEX-COOL CLASS SETTLEMENT**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

# TABLE OF CONTENTS

**Page**

I.      Relief Requested ................................................................................. 1

II.     Preliminary Statement ......................................................................... 2

III.    Jurisdiction ........................................................................................... 3

IV.     Background ............................................................................................ 4

        A.      The Dex-Cool Class Actions ...................................................... 4

        B.      Dex-Cool Class Action Settlement Terms and Approval ......... 6

        C.      The Agreement ........................................................................ 13

V.      The Relief Requested Should Be Approved by the  Court Pursuant to Bankruptcy
        Rule 9019 ............................................................................................ 15

VI.     The Settlement Should Be Approved by the Court Under Rule 23 ................................. 17

        (a)     The Dex-Cool Class Satisfies Rules 23(a) and 23(b) ............................. 18

        (b)     The Agreement Satisfies Rule 23(e) ...................................... 20

        (c)     No Additional Notice Is Required ......................................... 22

VII.    Notice .................................................................................................. 24

# TABLE OF AUTHORITIES

Page(s)

## CASES

*In re AMC Realty Corp.*,
    270 B.R. 132 (Bankr. S.D.N.Y. 2001) ...................................................................18

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ..............................................................................................19

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006) .................................................................................19

*In re Dow Corning Corp.*,
    198 B.R. 214 (Bankr. E.D. Mich. 1996) ...............................................................16

*In re Drexel Burnham Lambert Group, Inc.*,
    960 F.2d 285 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993) ......................16

*Fireside Bank v. Superior Court*,
    155 P.3d 268 (Cal. 2007) .....................................................................................20

*Green v. Am. Express Co.*,
    200 F.R.D. 211 (S.D.N.Y. 2001) .....................................................................22, 24

*Hale v. Wal-Mart Stores, Inc.*,
    231 S.W.3d 215 (Mo. Ct. App. 2007) ...................................................................20

*Hainey v. Parrott*,
    617 F. Supp. 2d 668 (S.D. Ohio 2007) .................................................................24

*In re Indep. Energy Holdings PLC*,
    No. 00 Civ. 6689(SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ..................20, 21, 22

*In re Ionosphere Clubs, Inc.*,
    156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994) .........................16

*In re Iridium Operating LLC*,
    478 F.3d 452 (2d Cir. 2007) .................................................................................16

*In re Luxottica Group S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) .....................................................................20, 21, 22

*Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*,
    313 F.2d 447 (6th Cir. 1963) ...............................................................................16

*In re Milken & Assocs. Sec. Litig.,*
    150 F.R.D. 46 (S.D.N.Y. 1993) ...............................................................................21

*Mitchell v. Residential Funding Corp.,*
    Nos. WD 70210, WD 70227, WD 70244, WD 70263,
    2010 WL 4720755 (Mo. Ct. App. Nov. 23, 2010)...................................................20

*In re Nazi Era Cases Against German Defendants Litig.,*
    198 F.R.D. 429 (D.N.J. 2000)..................................................................................22

*Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Dex-Cool,*
    390 U.S. 414, *reh'd denied,* 391 U.S. 909 (1968) ..................................................16

*In re Purofied Down Prods. Corp.,*
    150 B.R. 519 (S.D.N.Y. 1993).................................................................................16

*Rosenberg v. XO Commc'ns, Inc. (In re XO Commc'ns, Inc.),*
    330 B.R. 394 (Bankr. S.D.N.Y. 2005).....................................................................22

*Selby v. Principal Mut. Life Ins. Co.,*
    No. 98 Civ 5283 (RLC), 2003 WL 22772330 (S.D.N.Y. Nov. 21, 2003)..............24

*In re Tobacco II Cases,*
    207 P.3d 20 (Cal. 2009) ..........................................................................................20

*Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group,*
    *Inc.),* 134 B.R. 499 (Bankr. S.D.N.Y. 1991) ........................................................15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,*
    396 F.3d 96 (2d Cir.), *cert. denied,* 544 U.S. 1044 (2005).....................................18

*Weinberger v. Kendrick,*
    698 F.2d 61 (2d Cir. 1982), *cert. denied,* 464 U.S. 818 (1983)........................18, 20

*Williams v. First Nat'l Bank,*
    216 U.S. 582 (1910)................................................................................................18

## STATUTES

11 U.S.C. § 105...............................................................................................................17, 25

11 U.S.C. § 502........................................................................................................................12

11 U.S.C. § 503........................................................................................................................12

28 U.S.C. § 157..........................................................................................................................4

28 U.S.C. § 1334........................................................................................................................4

Cal. Code Civ. § 382 .................................................................................11, 20

Fed. R. Bankr. P. 3003 ...................................................................................12

Fed. R. Bankr. P. 3007 ...................................................................................17

Fed. R. Bankr. P. 9019 .................................................................1, 2, 3, 15, 17, 23

Fed. R. Civ. P. 23 .................................................................1, 2, 3, 4, 18, 19, 20, 25

Mo. R. Civ. P. 52.08 ...............................................................................11, 19, 20

**O**THER **A**UTHORITY

9 Collier on Bankruptcy § 9019.02 (15th ed. rev. 2001) .............................................15

6 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.72 (4th ed. 2002) ...............22

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), respectfully

represent:

## I.  Relief Requested[1]

1.      Pursuant to Rule 9019 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**") and Rule 23 of the Federal Rules of Civil Procedure ("**Rule 23**"), the

Debtors respectfully request entry of that certain proposed Order Pursuant to Fed. R. Bankr. P.

9019 and Fed. R. Civ. P. Rule 23 Approving Agreement Resolving Proof of Claim No. 51095

and Implementing Modified Dex-Cool Class Settlement (the "**Order**"), approving and ratifying

that certain modified settlement agreement (the "**Agreement**") between class action plaintiffs

(the "**Dex-Cool Plaintiffs**"), on behalf of themselves and all others similarly situated

(collectively, the "**Dex-Cool Class**"), and the Debtors (collectively, the Dex-Cool Plaintiffs, the

Dex-Cool Class, and the Debtors, the "**Parties**").  The Agreement is attached hereto as **Exhibit**

**"A"** and the Order is attached hereto as **Exhibit "B."**

2.      Among other things, the Agreement sets forth the proposed settlement and

resolution of Claim No. 51095 (the "**Dex-Cool Proof of Claim**"), which is based on previous

settlements (collectively, the "**Dex-Cool Class Action Settlement**") reached in class action

lawsuits brought by the Dex-Cool Plaintiffs, on behalf of themselves and the Dex-Cool Class,

against General Motors Corporation ("**GM**") in, among other courts, the Superior Court of the

State of California, County of Alameda (the "**California Court**") and the Circuit Court of

Jackson County, Missouri at Independence (the "**Missouri Court**"), alleging, among other

---

[1]      All capitalized terms not otherwise defined in this Motion shall have the meanings ascribed to them in the
Agreement (defined below).

things, that "Dex-Cool" extended life engine coolants corroded and sludged various engine and

cooling system components leading to expensive repairs for class members (the "**Dex-Cool**

**Class Actions**").[2] Entry of the Order will result in: (i) the resolution of approximately

$3,000,000.00 in claims against the Debtors' estates; and (ii) the alleviation of the financial

burden, time, and uncertainty associated with litigation of the Dex-Cool Proof of Claim and the

Dex-Cool Class Actions.

## II.  Preliminary Statement

3.        By this Motion of Debtors for Entry of Order Pursuant to Fed. R. Bankr.

P. 9019 and Fed. R. Civ. P. 23 Approving Agreement Resolving Proof of Claim No. 51095 and

Implementing Modified Dex-Cool Class Settlement (the "**Motion**"), the Debtors seek to

complete implementation of the Dex-Cool Class Action Settlement previously reached and

approved by the California and Missouri Courts, with the requested modifications described

herein. The Dex-Cool Class already has been certified by the California and Missouri Courts;

extensive notice of the Dex-Cool Class Action Settlement was previously given to the Dex-Cool

Class; members of the Dex-Cool Class already have submitted claims for settlement benefits;

GM previously funded $6,127,758.00 to pay Dex-Cool Class members who submitted valid

claims for reimbursement prior to the original claims date (and prior to the filing date); certain

members of the Dex-Cool Class who previously submitted deficient claims already have been

notified of the deficiency and given the opportunity to resubmit their claims for reimbursement;

nearly one-half of the Dex-Cool Class members who were notified of a deficient claim

resubmitted their claims; and the Dex-Cool Class Action Settlement was approved by the

---

[2]        The Dex-Cool Class Actions include those actions covered by two class action settlement agreements; one
that was approved by the California Court (as to forty-nine states and concerning a nationwide class inclusive of all
states but Missouri) and one that was approved by the Missouri Court (as to the State of Missouri and inclusive of a
Missouri state-wide class).

California and Missouri Courts under code provisions that are patterned after Rule 23 of the Federal Rules of Civil Procedure.

      4.    On June 1, 2009, before the terms of the settlements could be fully implemented and those members of the Dex-Cool Class who resubmitted claims for reimbursement (*e.g.*, to correct initial deficiencies) and now hold valid claims could be paid (the "**Resubmitting Participating Class Members**"), certain of the Debtors commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**"), which stayed the further implementation of the Dex-Cool Class Action Settlement.

      5.    As a result of the commencement of these chapter 11 cases, the Debtors are unable to provide the exact consideration contemplated under the Dex-Cool Class Action Settlement to the Resubmitting Participating Class Members, but the Parties have reached an agreement to provide alternative consideration that is fair and reasonable to the Resubmitting Participating Class Members under the circumstances of these chapter 11 cases. The Agreement itself is thus fair, reasonable, and adequate and meets the standards of Rule 23. Moreover, the Agreement will result in a reduction of general unsecured claims against the Debtors' estates. The Agreement and proposed order are the result of a collaborative effort between the Parties and the statutory committee of unsecured creditors (the "**Creditors' Committee**") in these chapter 11 cases and is submitted to the Court for approval with the Creditors' Committee's support and consent. Entry of the Order, thus, is in the best interest of the Dex-Cool Class, the Debtors, and the Debtors' creditors. Accordingly, the Debtors respectfully request that this Motion be granted.

### III.  Jurisdiction

6.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### IV.  Background

**A.      The Dex-Cool Class Actions.**

7.      On April 11, 2003, the same counsel filed cases in California and Missouri

state courts related to Dex-Cool coolants.  The California case was dismissed without prejudice

in deference to the action formerly pending before the California Court, *Sadowski v. General

Motors Corp.*, No. HGO-3093843.  The Missouri case, formerly pending in the Missouri Court,

is captioned *Gutzler v. General Motors Corp.*, No. 03CV208786.  Similar cases were then filed

by more than a dozen different law firms in state and federal courts throughout the country,

including in Illinois, Texas, New York, New Jersey, and Pennsylvania.  The complaints filed in

all of these cases allege that Dex-Cool, which GM started using as a factory-fill coolant starting

with their 1995 model-year vehicles, caused problems with the engines or cooling systems.  The

complaints also assert claims for breach of warranty, violations of unfair business practices

statutes, and related causes of action.

8.      GM removed most of the state actions to federal court and filed a petition

with the Judicial Panel on Multidistrict Litigation (the "**MDL Panel**") to transfer and consolidate

them into a federal multidistrict litigation.  After months of briefing motions to remand, the

parties reached an agreement on consolidation.  The cases originally filed in state court in

California (including the *Sadowski* action), Missouri (the *Gutzler* action), and Texas (*Longoria v.

General Motors Corp.*, No. 03-03140-D) were remanded back to state court.  By order of the

MDL Panel, all other cases either originally filed in or removed to federal court were

consolidated for pretrial purposes in the United States District Court for the Southern District of

Illinois, under the caption *In re DEX-COOL Products Liability Litigation*. As part of this

consolidation and coordination process, most of the law firms representing plaintiffs in the Dex-

Cool litigation agreed to jointly prosecute these cases and agreed to a structure for delegating and

allocating the work among the firms. The firms also agreed that Girard Gibbs LLP and Shughart

Thomson & Kilroy, P.C. would serve as "Co-Lead Counsel" for the group, and the two firms

were subsequently appointed Co-Lead Counsel in the various courts where the Dex-Cool Class

Actions were being prosecuted (collectively, "**Co-Lead Class Counsel**").

        9.     During late 2003 and continuing into late 2007, the parties engaged in

extensive discovery in the various actions. GM deposed more than forty of the named plaintiffs.

The plaintiffs took twenty-six depositions of current and former GM employees. The plaintiffs

and GM also deposed seven third-party witnesses. In addition, they exchanged over 700

interrogatories, over 300 requests for production of documents, and almost 100 requests for

admissions. Furthermore, GM produced, and the plaintiffs' counsel reviewed, roughly a million

pages of documents and over three gigabytes of electronic data.

        10.    The parties also engaged in extensive expert discovery. Both the fact and

expert discovery undertaken by the parties led to several discovery disputes, some of which were

resolved through motions to compel discovery and/or through the appointment of a special

master.

        11.    After a class was certified in the Missouri case and notice was given to the

class, the case was set for an estimated three-week jury trial to begin on November 5, 2007.

        12.    During the final pretrial phase, the parties negotiated over a potential class

action settlement of all the Dex-Cool Class Actions, and, on October 25, 2007, the same day the

jury questionnaire was given to potential jurors, the parties reached an agreement in principle to

settle all of the Dex-Cool Class Actions. The agreement in principle was memorialized into the

Dex-Cool Class Action Settlement, dated March 26, 2008, and provided, among other things,

that (i) the *Gutzler* action and the claims of a Missouri-only class would be resolved through one

agreement, subject to the Missouri Court's approval, and (ii) the *Sadowski* action, all the other

Dex-Cool putative class actions, and the claims of a nationwide class (excluding persons who

purchased or leased their vehicle in Missouri) would be resolved through another agreement,

both agreements of which were dependant upon each other and subject to the approval of *both*

the California Court and the Missouri Court.

**B.**    **Dex-Cool Class Action Settlement Terms and Approval.**

13.    Pursuant to the Dex-Cool Class Action Settlement reached by the parties,

the Dex-Cool Class collectively consists of all consumers in the United States who:

(a)    own or lease, or who have owned or leased, a Covered Vehicle
"that has been in service in excess of seven years, measured from
the Date of Initial Vehicle Delivery, at the time of the first date on
which notice of the Settlement is disseminated and who, at the time
of the notice, had not incurred a repair expense of the type
included in the definition of Covered Repair," or

(b)    own or lease, or who have owned or leased, a Covered Vehicle and
"who incurred an expense for a Covered Repair before the first
date on which notice of the Settlement is disseminated to the Class
in accordance with the Notice Order." Excluded from the Class
are GM, any affiliate, parent, or subsidiary of GM, any entity in
which GM has a controlling interest, any officer, director, or
employee of GM, any successor or assign of GM, and any Judge to
whom any of the Actions is assigned as well as his or her
immediate family.

14.    The following tables list the vehicle models covered by the Dex-Cool

Class Action Settlement, when equipped with the specified engine size, and the "Covered

Repairs" defined for the various models. Consumers who own one of the following models with

a different engine than what is specified below were not covered by the Dex-Cool Class Action

Settlement.

## GROUP A VEHICLES
**Model years 1995-2003**
**Equipped with 3.1-liter or 3.4-liter V6 engine manufactured before April 10, 2003**

| Buick | Century, Rendezvous |
|---|---|
| Chevrolet | Impala, Lumina, Malibu, Monte Carlo, Venture |
| Oldsmobile | Alero, Cutlass, Silhouette |
| Pontiac | Aztek, Grand Am, Grand Prix, Montana, Trans Sport |

**Group A Covered Repairs**: Replacement of failed lower intake manifold gasket

## GROUP B VEHICLES
**Model years 1995-2004**
**Equipped with 3.8-liter V6 engine (internal GM engine designation RPO L36)**

| Buick | LeSabre, Park Avenue, Regal, Riviera |
|---|---|
| Chevrolet | Camaro, Impala, Lumina, Monte Carlo |
| Oldsmobile | Eighty-Eight, Intrigue, LSS, Ninety-Eight |
| Pontiac | Bonneville, Firebird, Grand Prix |

**Group B Covered Repairs**: Repairs necessitated by engine coolant sealing issues, including replacement of throttle body gasket, upper intake manifold gasket, lower intake manifold gasket, or intake manifold

## GROUP C VEHICLES
**Model years 1995-2000**
**Equipped with 4.3-liter V6 engine**

| Chevrolet | Blazer, Chevrolet S-10 |
|---|---|
| GMC | Envoy, Jimmy, S-15 |
| Oldsmobile | Bravada |

**Group C Covered Repairs**: Repairs necessitated by cooling-system sludge, including cooling-system flush, heater core repairs, water pump repairs, or radiator cap replacement.

**"Sludge" refers to a rust-like material that can form in the cooling system and whose formation is allegedly related to use of Dex-Cool**

15.  Under the Dex-Cool Class Action Settlement, GM agreed to send various

levels of cash reimbursements to Dex-Cool Class members who paid for the foregoing Covered

Repairs performed within seven years or 150,000 miles after the original owner or lessee took

delivery of the vehicle and who submitted timely and valid claims. Claims were required to be

supported by documentation showing the amount the Dex-Cool Class member spent on a

Covered Repair and documentation that the Dex-Cool Class member owned or leased the vehicle

at the time of the repair. The amount of reimbursement a claimant was to receive depended on

(i) when the Covered Repair was performed and (ii) the amount the claimant actually paid, as

described below:

<ol type="a" start="1">
<li>For a Covered Repair made <em>within five years</em> after initial vehicle delivery, the claimant was to be reimbursed the documented amount he or she paid out of pocket and for which he or she was not previously reimbursed, up to $400.</li>

<li>For a Covered Repair made in the <em>sixth year</em> after initial vehicle delivery, the claimant was to be reimbursed the documented amount he or she paid out of pocket and for which he or she was not previously reimbursed, up to $100.</li>

<li>For a Covered Repair made in the <em>seventh year</em> after initial vehicle delivery, the claimant was to be reimbursed the documented amount he or she paid out of pocket and for which he or she was not previously reimbursed, up to $50.</li>

<li>Furthermore, if the claimant was entitled to reimbursement under subpart (a) above (<em>i.e.</em>, the Covered Repair was performed within five years after initial vehicle delivery), and could document that the Covered Repair required payment of over $1,500 to address an internal coolant leak, the claimant could elect to request reimbursement of 40 percent of the amount the claimant paid out of pocket and for which he or she was not previously reimbursed, up to $800. An "internal coolant leak" was defined to mean "coolant leaked from one vehicle component into another</li>
</ol>

component," as opposed to leaking from inside a vehicle component to the exterior.[3]

16.    The Dex-Cool Class Action Settlement was submitted to the Missouri and California Courts for approval and were subsequently approved. In the Preliminary Approval Orders, attached hereto as **Exhibits "C" and "D,"** the Missouri and California Courts preliminarily approved of the Dex-Cool Class Action Settlement, and conditionally certified the settlement classes. In so doing, they specifically found that:

- The Dex-Cool Class was so numerous that joinder of all absent class members would be impracticable;

- Questions of law and fact common to members of the Dex-Cool Class predominated over questions affecting individual members;

- The claims of the named plaintiffs were typical of claims of the Dex-Cool Class as a whole;

- The named plaintiffs and their counsel would fairly and adequately represent the Dex-Cool Class; and

- A class action was a superior method for bringing the claims.

(*Id.* (Exs. C, D).)

17.    In those Preliminary Approval Orders, the Missouri and California Courts set fairness hearings for final approval of the Dex-Cool Class Action Settlement; set forth deadlines for objecting to the Dex-Cool Class Action Settlement and appearing at the Fairness Hearings; approved the forms of class notice (collectively, the **"Notice of Settlement"**), copies of which are attached hereto as **Exhibits "E" and "F"**; and approved of the proposed manner of providing notice, which manner included (i) direct mail notice to certain readily identifiable Dex-Cool Class members; (ii) publication notice through a number of nationally-circulated magazines

---

[3]    All statements made herein regarding the Dex-Cool Class Action Settlement are summary only, and are not intended to change the meaning of or be used in interpreting any portion of the Dex-Cool Class Action Settlement.

and weekend newspaper supplements, as well as through Internet advertising; and (iii) electronic

notice through a dedicated website. The publication notice was published in four national

newspaper supplements, with an estimated circulation of 65,900,000; twelve national consumer

magazines, with a total estimated circulation of 43,865,000; and in Internet advertising appearing

across a wide-range of websites, with an estimated 199,500,000 views.

18.    On October 23, 2008, and September 5, 2008, respectively, after

conducting fairness hearings, the California and Missouri Courts entered judgments (collectively,

the "**Final Judgment**"), copies of which are attached hereto as **Exhibits "G"** and **"H,"** in which

they finally certified the Dex-Cool Class and finally approved the Dex-Cool Class Action

Settlement.[4] The California and Missouri Courts determined that the Dex-Cool Class satisfied

Section 382 of the California Code of Civil Procedure ("**Section 382**") and Rule 52.08 of the

Missouri Rules of Civil Procedure ("**Rule 52.08**"), because: (i) the Dex-Cool Class was so

numerous that joinder of all members is impracticable; (ii) questions of law or fact common to

---

[4]    The Missouri Court certified the following class: "All Consumers who purchased or leased a Covered Vehicle in the State of Missouri (i) that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred an expense of the type included in the definition of Covered Repair, or (ii) who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated to the Class in accordance with the Notice Order." Excluded from the Missouri Class were "GM; any affiliate, parent, or subsidiary of GM; any entity in which GM has a controlling interest; any officer, director, or employee of GM; any successor or assign of GM; and the Judge to whom the Action is assigned as well as his or her immediate family. "

The California Court certified the following class: "All Consumers in the United State of America, excepting those who purchased or leased their vehicles in the State of Missouri, who (i) own or lease, or who have owned or leased, a Covered Vehicle that has been in service in excess of seven years, measured from the Date of Initial Vehicle Delivery, at the time of the first date on which notice of the Settlement is disseminated and who, at the time of the notice, had not incurred a repair expense of the type included in the definition of Covered Repair, or (ii) own or lease, or who have owned or leased, a Covered Vehicle and who incurred an expense for a Covered Repair before the first date on which notice of the Settlement is disseminated in accordance with the Notice Order." Excluded from the California Class were "GM, any affiliate, parent, or subsidiary of GM, any entity in which GM has a controlling interest, any officer, director, or employee of GM, any successor or assign of GM, anyone employed by counsel for Representative Plaintiffs, any Judge to whom any of the Actions is assigned as well as his or her immediate family; any and all persons who timely and validly request exclusion from the Class pursuant to the notice disseminated in accordance with the Notice Order."

the Dex-Cool Class predominated over questions affecting individual members; (iii) the claims

of named plaintiffs were typical of claims of the Dex-Cool Class as a whole; (iv) the

representative plaintiffs would fairly and adequately assert and protect the interests of the Dex-

Cool Class; and (v) the Dex-Cool Class Action provided a superior method for adjudication of

the controversy. Moreover, the California and Missouri Courts found that the Dex-Cool Class

Action settlement was, in all respects, fair, reasonable, and adequate, and in the best interests of

the Dex-Cool Class. (*See id.* (Exs. G, H).)

       19.    The Final Judgment also awarded attorneys' fees in a collective amount

totaling $21,250,000.00 (collectively, the "**Attorneys' Fees**"); documented costs and expenses in

a collective amount totaling $2,800,000.00 (collectively, "**Documented Costs and Expenses**");

and incentive awards to the Dex-Cool Plaintiffs in varying amounts, none of which exceed

$20,000.00 (collectively, the "**Incentive Awards**").

       20.    Before the bankruptcy filing and in accordance with the Dex-Cool Class

Action Settlement, the Final Judgment and orders approving the award of Attorneys' Fees,

Incentive Award, and Documented Costs and Expenses, the following occurred:

- Garden City Group, serving as claims administrator (the "Claims Administrator"), collected 68,154 claims statements that were timely submitted;

- The Claims Administrator approved approximately 40,000 claims as valid and entitled to payment under the Dex-Cool Class Action Settlement;

- GM funded approximately $6,127,758.00 necessary to pay those approved claims;

- GM funded the Attorneys' Fees, Incentive Award, and Documented Costs and Expenses;

- Notice of deficiency letters were sent out by the Claims Administrator, to the remaining claimants (approximately 28,000), informing them of how to cure deficient claims statements for resubmission; and

- The Resubmitting Participating Class Members submitted approximately 11,299 claim statements in an attempt to cure previously-deficient statements.

- The Claims Administrator reviewed approximately 6,685 of the Claim Forms submitted by the Resubmitted Participating Dex-Cool Class Members and approved claims totaling $1,325,568.60.

21.    The commencement of these chapter 11 cases on June 1, 2009, stayed all further implementation of the Dex-Cool Class Action Settlement, including the Claims Administrator's review of the remaining 4,614 Claim Forms submitted by the Resubmitting Participating Class Members;.

22.    On September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**") entered the Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Rule 3003(c)(3) of the Bankruptcy Procedure Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice Thereof (ECF No. 4079) establishing November 30, 2009 at 5:00 p.m. (Eastern) as the deadline to file proofs of claim against MLC and certain of the other Debtors based on prepetition claims.

23.    On November 25, 2009, the Dex-Cool Proof of Claim, based on the Dex-Cool Class Action Settlement, was filed with this Court on behalf of the Dex-Cool Class and assigned claim number 51095. The Dex-Cool Proof of Claim asserts a claim in the amount of $3,000,000.00, for class consideration allegedly due to the Resubmitting Participating Class Members pursuant to the Dex-Cool Class Action Settlement (the "**Claim**").

24.    On December 1, 2009, this Court approved and entered the Stipulation and Order Between the Debtors and the Holders of Unliquidated Dex-Cool and Anderson Claims to Allow Class Proofs of Claim for Dex-Cool and Anderson Claimants (the "**Class Claims**

**Stipulation")**, attached hereto as **Exhibit "I,"** and through which the Debtors and the holders of

Unliquidated Dex-Cool Claims, defined in the Class Claims Stipulation as the claims made in

connection with the Dex-Cool Class Action that had not yet been liquidated pursuant to the terms

of the Dex-Cool Class Action Settlement, agreed that Co-Lead Class Counsel could file a class-

wide proof of claim on behalf of all holders of Unliquidated Dex-Cool Claims.

C.    **The Agreement.**

25.    Since the filing of the Dex-Cool Proof of Claim, the Parties have engaged

in good-faith, arms-length negotiations, and, without any admission of liability by any Party,

have reached the Agreement to resolve the Dex-Cool Proof of Claim and implement the Dex-

Cool Class Action Settlement, as modified, with this Court's approval.

26.    Because of the commencement of these chapter 11 cases, the Debtors are

unable to provide the Resubmitting Participating Class Members with the exact consideration

contemplated by the Dex-Cool Class Action Settlement. Accordingly, the Parties respectfully

request that the Court approve the Agreement to provide, among other things, the Resubmitting

Participating Class Members with the Total Allowed General Unsecured Claim (defined below)

that is equivalent to the approximate value of the benefits that would have been provided to the

Resubmitting Participating Class Members under the Dex-Cool Class Action Settlement.

27.    The key provisions of the Agreement are summarized as follows:

(a)    Subject to execution of the Agreement by the Parties and upon
entry of the Order, the Dex-Cool Proof of Claim shall be resolved
and the Resubmitting Participating Class Members shall receive, in
the aggregate, a single allowed general unsecured claim against
MLC in the amount of $2,205,570.00 (the "**Total Allowed
Unsecured Claim**").

(b)    Co-Lead Class Counsel shall be authorized to dispose of the Total
Allowed Unsecured Claim such that Co-Lead Class Counsel can
make the proper *pro rata* distribution of consideration to the

14

Resubmitting Participating Class Members in accordance with the Agreement. Co-Lead Class Counsel shall be solely responsible for (i) distributing the cash proceeds resulting from the disposition of the Total Allowed Unsecured Claim; (ii) otherwise implementing the Agreement; and (iii) paying all expenses associated with such distribution and/or implementation.

(c)     Cash proceeds resulting from the sale or assignment of the Total Allowed Unsecured Claim to any third party or from the sale of any stock or shares, in the open market or otherwise, distributed in accordance with the Plan shall be distributed, on a *pro rata* basis, in accordance with the following guidelines, which are further set forth in the Plan of Allocation contained in Paragraph 5 of the Agreement:[5]

i.   **Resubmitting Participating Class Members with a Covered Repair *within five years* after initial vehicle delivery.**
     Resubmitting Participating Class Members may obtain reimbursement, on a *pro rata* basis, of the greater of (i) the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to $400, or (ii) if the Resubmitting Participating Dex-Cool Class Member submitted Proof of Internal Leak Repair Expense showing a repair expense of more than $1,500 due to a diagnosed internal coolant leak, 40% of the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to a maximum of $800.

ii.  **Resubmitting Participating Class Members with a Covered Repair made in the *sixth year* after initial vehicle delivery.**
     Resubmitting Participating Class Members may obtain reimbursement, on a *pro rata* basis, of the amount equal to the actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to $100.

iii. **Resubmitting Dex-Cool Class Members with a Covered Repair made in the *seventh year* after initial vehicle delivery.**
     Resubmitting Participating Class Members may obtain reimbursement, on a *pro rata* basis, of the amount equal to the

---

[5]     All distributions under the Agreement will be made on a pro rata basis of the cash proceeds resulting from the sale or assignment of the Total Allowed Unsecured Claim.

actual out-of-pocket expense incurred by the Resubmitting Participating Dex-Cool Class Member for the Covered Repair itself, up to $50.

(d)      Upon entry of the Order, Dex-Cool Plaintiffs, the Dex-Cool Class, and their affiliates, successors and assigns, and their agents, insurers, representatives, administrators, executors, trustees and attorneys agree that they shall have no further right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns, including GM or its successors in interest (collectively, the "**Debtor Parties**").

## V. The Relief Requested Should Be Approved by the Court Pursuant to Bankruptcy Rule 9019

28.      Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor-in-possession] and after notice and a hearing, the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). This rule empowers bankruptcy courts to approve settlements "if they are in the best interests of the estate." *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991). A decision to accept or reject a compromise or settlement is within the sound discretion of the Court. *Id.*; *see also* 9 Collier on Bankruptcy § 9019.02 (15th ed. rev. 2001). The settlement need not result in the best possible outcome for the debtor but must not "fall below the lowest point in the range of reasonableness." *Drexel Burnham Lambert Group*, 134 B.R. at 505.

29.      Relying on the guiding language of *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Dex-Cool*, 390 U.S. 414, 424, *reh'd denied*, 391 U.S. 909 (1968), courts in this Circuit have set forth the following factors regarding the reasonableness of such settlements:

(1)      the probability of success in the litigation;

(2)      the difficulties associated with collection;

> (3)    the complexity of the litigation, and the attendant expense,
> inconvenience, and delay; and
>
> (4)    the paramount interests of the creditors.

*In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*,

506 U.S. 1088 (1993); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *In re*

*Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In*

*re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993). The decision to approve a

particular settlement lies within the sound discretion of the Court. *Mach. Terminals, Inc. v.*

*Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir. 1963). It is the responsibility

of the court to examine a settlement and determine whether it "falls below the lowest point in the

range of reasonableness." *In re Dow Corning Corp.*, 198 B.R. 214, 222 (Bankr. E.D. Mich.

1996). For the reasons set forth below, the Debtors respectfully submit that the Agreement

meets this standard.

30.    The Agreement falls well within the range of reasonableness, as it is fair

and equitable and in the paramount interest of the Debtors and their creditors. While the Parties

dispute factual and legal issues relevant to the disposition of some or all of each other's claims,

and, therefore, dispute the probability of success, the settlement represents a fair compromise of

the Dex-Cool Proof of Claim. Settlement at this stage avoids the expense, inconvenience,

uncertainty, and delay that would be caused by relitigating any of the issues resolved by the Dex-

Cool Class Action Settlement and further negotiated in the Agreement to the benefit of the

Debtors' estates.

31.    The Agreement alleviates the financial burden, time, and uncertainty

associated with continued litigation of the Dex-Cool Proof of Claim and the Dex-Cool Class

Action Settlement.

32.    Moreover, approval of the Agreement comports with this Court's October

6, 2009 Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and 9019(b)

Authorizing the Debtors to (I) File Omnibus Claims Objections and (II) Establish Procedures for

Settling Certain Claims (the "**De Minimis Order**"), (ECF No. 4180). The De Minimis Order

states, in relevant part, the following:

> If the Settlement Amount for a Claim is not a De Minimis
> Settlement Amount *but is less than or equal to $50 million*,
> the Debtors will submit the proposed settlement to the
> Creditors' Committee. Within five (5) business days of
> receiving the proposed settlement, the Creditors'
> Committee may object or request an extension of time
> within which to object. If there is a timely objection made
> by the Creditors' Committee, the Debtors may either (a)
> renegotiate the settlement and submit a revised notification
> to the Creditors' Committee or (b) file a motion with the
> Court seeking approval of the existing settlement under
> Bankruptcy Rule 9019 on no less than 10 days' notice. *If
> there is no timely objection made by the Creditors'
> Committee or if the Debtors receive written approval from
> the Creditors' Committee of the proposed settlement prior
> to the objection deadline (which approval may be in the
> form of an email from counsel to the Creditors'
> Committee), then the Debtors may proceed with the
> settlement.*

33.    In accordance with this De Minimis Order, the Agreement, including the

amount of Total Allowed Unsecured Claim, was submitted to the Creditors' Committee, which

informed the Debtors that it has no objection to either the Agreement as a whole or to the Total

Allowed Unsecured Claim provided for in the Agreement.

34.    The Debtors submit that the Agreement falls well within the range of

reasonableness, is in the best interests of the Debtors' estates and their creditors, and should be

approved as a sound exercise of the Debtors' business judgment. Accordingly, the Debtors

respectfully request the entry of the Order.

## VI.    The Settlement Should Be Approved by the Court Under Rule 23

35.    The Agreement should also be approved pursuant to Rule 23.

36.    Federal courts have long expressed a preference for the negotiated

resolution of litigation. *See Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910)

("Compromises of disputed claims are favored by the courts."). A general policy favoring

settlement exists, especially with respect to class actions. *See, e.g., In re AMC Realty Corp.*, 270

B.R. 132, 145-46 (Bankr. S.D.N.Y. 2001) (recognizing that "settlements are favored in federal

law and the prompt resolution of claims and disputes makes the compromise of claims of

particular importance in the bankruptcy reorganization") (internal quotation marks omitted);

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 116 (2d Cir.) ("We are mindful of the

'strong judicial policy in favor of settlements, particularly in the class action context.'") (citation

omitted), *cert. denied*, 544 U.S. 1044 (2005); *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir.

1982) ("There are weighty justifications, such as reduction of litigation and related expenses, for

the general policy favoring the settlement of litigation."), *cert. denied*, 464 U.S. 818 (1983).

### (a)    The Dex-Cool Class Satisfies Rules 23(a) and 23(b)

37.    "Before certification is proper for any purpose—settlement, litigation, or

otherwise—a court must ensure that the requirements of Rule 23(a) and (b) have been met."[6]

*Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006). "Rule 23(a) and (b) standards

apply equally to certifying a class action for settlement or for trial, with one exception." Manual

for Complex Litigation § 21.132 (4th ed. 2004) (emphasis added). "Confronted with a request

---

[6]    Rule 23(a) requires that the Dex-Cool Class meet certain numerosity, commonality, typicality, and adequacy requirements, and Rule 23(b) requires that, as to this Rule 23(b)(3) class, questions of law or fact common to the Dex-Cool Class predominate over any questions affecting only individual members and that a class action be superior to other available methods for fairly and efficiently adjudicating the controversy. *See* Fed. R. Civ. P. 23(a), (b).

for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems," under Rule 23(b)(3)(D). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

38.    The Parties stipulate, solely for purposes of settlement, that the Dex-Cool Class meets the standards of Rules 23(a) and (b). Specifically, the Parties submit that the Court should adopt the California and Missouri Courts' findings with respect to the certification of the Dex-Cool Class under California Section 382 and Missouri Rule 52.08 and find that the Dex-Cool Class meets the standards of Rule 23.

39.    The California and Missouri Courts' findings in their Preliminary Approval Orders and Final Judgment further demonstrate the satisfaction of Rules 23(a) and (b). In those orders, the California and Missouri Courts found that:

- The Dex-Cool Class is so numerous that joinder of all members is impracticable;

- Questions of law or fact common to the Dex-Cool Class predominated over questions affecting individual members;

- The claims of named plaintiffs are typical of claims of the Dex-Cool Class as a whole;

- The representative plaintiffs will fairly and adequately assert and protect the interests of the Dex-Cool Class; and

- The Dex-Cool Class Action provides a superior method for adjudication of the controversy.

40.    The California Supreme Court has recognized that the requirements for class certification under Rule 23(a) are "analogous to the requirements for class certification under Code of Civil Procedure section 382." *In re Tobacco II Cases*, 207 P.3d 20, 33 (Cal. 2009); *Fireside Bank v. Superior Court*, 155 P.3d 268, 281 (Cal. 2007) (identifying requirements for class action under section 382). Similarly, Missouri courts have analogized Rule 52.08 of the

Missouri Rules of Civil Procedure to Rule 23 of the Federal Rules. *Mitchell v. Residential*

*Funding Corp.*, Nos. WD 70210, WD 70227, WD 70244, WD 70263, 2010 WL 4720755, at *30

n.12 (Mo. Ct. App. Nov. 23, 2010); *Hale v. Wal-Mart Stores, Inc.*, 231 S.W.3d 215, 222 (Mo. Ct.

App. 2007). To that end, both California and Missouri courts look to federal class action law

"when seeking guidance on issues of class action procedure." *In re Tobacco II Cases*, 207 P.3d

at 33.

    41.     Accordingly, the Court should adopt the findings of the California and

Missouri Courts in their Preliminary Approval Orders and Final Judgment and find that the Dex-

Cool Class satisfies Rules 23(a) and 23(b) solely for the purposes of the Agreement.

### (b)     The Agreement Satisfies Rule 23(e)

    42.     The Court should also find that the Agreement satisfies Rule 23(e)(2).

    43.     Rule 23(e) requires court approval of a class action settlement. The

standard for reviewing the proposed settlement of a class action in the Second Circuit, as in other

circuits, is whether the proposed settlement is *"fair, reasonable and adequate."* *In re Luxottica*

*Group S.p.A. Sec. Litig.*, 233 F.R.D. 306, 310 (E.D.N.Y. 2006) (emphasis added); *see In re*

*Indep. Energy Holdings PLC*, No. 00 Civ. 6689(SAS), 2003 WL 22244676, at *3 (S.D.N.Y.

Sept. 29, 2003). In reviewing the reasonableness of a proposed class action settlement, courts

are cautioned against substituting their judgment for that of the parties who negotiated the

settlement or conducting a mini-trial on the merits of the action. *See Weinberger*, 698 F.2d at 74;

*In re Milken & Assocs. Sec. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993). The Second Circuit has

established the following factors as relevant in evaluating class action settlements: (i) the

complexity, expense and likely duration of the litigation; (ii) the reaction of the class to the

settlement; (iii) the stage of the proceedings and the amount of discovery completed; (iv) the

risks of establishing liability; (v) the risks of establishing damages; (vi) the risks of maintaining

the class action through the trial; (vii) the ability of the defendants to withstand a greater

judgment; (viii) the range of reasonableness of the settlement fund in light of the best possible

recovery; and (ix) the range of reasonableness of the settlement fund to a possible recovery in

light of all the attendant risks of litigation. *See In re Indep. Energy Holdings PLC*, 2003 WL

22244676, at *3; *accord In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. at 311.

44.    Here, there can be no doubt that the Agreement should be approved based

on the foregoing factors. The relatively advanced stage of the Dex-Cool Class Actions provided

counsel with more than enough information to assess the strengths and weaknesses of the case,

as well as the risks of damages. Indeed, the Dex-Cool Class Actions have been ongoing since

April 2003 and have involved extensive discovery, including more than forty depositions of the

named plaintiffs, twenty-six depositions of current and former GM employees, and seven third-

party witnesses, and significant law and motion practice.

45.    The Agreement also is fair, reasonable and adequate. The Claim will be

settled for approximately $800,000 *less* than the amount asserted in the Dex-Cool Proof of Claim

and the Resubmitting Participating Class Members will largely obtain a general unsecured claim

in the amount they would have received pre-bankruptcy. Pursuant to the Agreement, the Claim

will immediately be estimated in the amount of $2,205,570.00. The Parties agreed on this

amount after (i) the Resubmitting Participating Class Members submitted approximately 11,299

claim statements in an attempt to cure previously-deficient statements; (ii) the Claims

Administrator reviewed approximately 6,685 of the claim statements submitted by the

Resubmitting Participating Class Members and approved claims totaling $1,325,568.60; and (iii)

22

Co-Lead Class Counsel conducted a further review of approximately 200 of the 4,614 additional claims submitted by the Resubmitting Participating Class Members.

46.    Finally, the Agreement is the result of numerous, arms-length and extensive negotiations between the Parties and their respective counsel concerning modification of the Dex-Cool Class Action Settlement. *See In re Indep. Energy Holdings PLC*, 2003 WL 22244676, at *3; *In re Luxottica Group S.p.A. Sec. Litig.*, 233 F.R.D. at 311.

47.    Based on the foregoing, the Court should find that the Agreement satisfies Rule 23(e)(2).

### (c)    No Additional Notice Is Required

48.    The Notice of Settlement adopted and approved by the Parties and the California and Missouri Courts was in full compliance with the notice requirements of due process, federal law, the Constitution of the United States, and any other applicable law, and this Court need not require any new notice to be given to the Dex-Cool Class. *See Green v. Am. Express Co.*, 200 F.R.D. 211, 212 (S.D.N.Y. 2001); *In re Nazi Era Cases Against German Defendants Litig.*, 198 F.R.D. 429, 441 (D.N.J. 2000); 6 Herbert Newberg & Alba Conte, *Newberg on Class Actions*, § 11.72 (4th ed. 2002).

49.    In *Rosenberg v. XO Communications, Inc. (In re XO Communications, Inc.)*, the Southern District of New York Bankruptcy Court approved a stipulation that the debtor need not provide new notice to all potential class action members of a Rule 9019 motion settling the class action when notice of class action settlement had already been provided in the state court settlement. *See* 330 B.R. 394, 409-410 (Bankr. S.D.N.Y. 2005).

50.    Here, the three-part Notice of Settlement that was approved by the California and Missouri courts and effected by the Claims Administrator more than satisfied due

process. The publication notice was published in four national newspaper supplements, with an

estimated circulation of 65,900,000; twelve national consumer magazines, with a total estimated

circulation of 43,865,000; and in Internet advertising appearing across a wide-range of websites,

giving an estimated 199,500,000 views. Indeed, over 68,000 claims statements were received,

and, even though roughly 28,000 of those were deficient, the Resubmitting Participating Class

Members have been given a second opportunity to cure and, through this Agreement, obtain

benefits. This Court should also find that the Notice of Settlement was previously provided in

full compliance with the notice requirements of due process, federal law, the Constitution of the

United States, and all other applicable law. Indeed, based on the Parties' stipulation, this Court

previously ordered that notice on Co-Lead Class Counsel was sufficient to notify all members of

the Dex-Cool Class Action, including the Resubmitting Participating Class Members. (*See* Class

Claims Stipulation at 2 ("Notice to the undersigned class counsel shall be, and shall be deemed

to be, sufficient notice to all class members in the Dex-Cool Class Action.").)

      51.    The changes to the Dex-Cool Class Action Settlement that the Parties

agreed to in order to further implement the settlement after GM's bankruptcy and that are

contained in the Agreement do not require that any new or additional notice be given,

particularly where, as here, the changes resulted in terms that provide the Resubmitting

Participating Class Members with the Total Allowed Unsecured Claim that is equivalent to the

approximate value of the benefits that would have been provided to the Resubmitting

Participating Class Members under the Dex-Cool Class Action Settlement.

      52.    Moreover, requiring the Parties to issue new notice at this juncture would

result in the Agreement being void. Specifically, the Debtors have already paid for notice to the

Dex-Cool Class and have not agreed to pay for any further notice; in fact the Agreement will be

void if any further notice is required by the Court. (*See* Agreement ¶ 1 (Ex. A) ("The Parties

further acknowledge and agree that, in the unlikely event that the Court requires any further

notice to the Dex-Cool Class, this Agreement shall be void and the Parties shall no longer be

bound by this Agreement.").) In these circumstances, no additional notice should be required.

*See Green,* 200 F.R.D. at 213 (ordering that "no notice be served when the cost of notice, to say

nothing of the postage, would jeopardize, and likely destroy, the hard fought settlement

agreement that the parties have presented to this Court"); *cf. Hainey v. Parrott,* 617 F. Supp. 2d

668, 679 (S.D. Ohio 2007) ("Furthermore, establishing a second opt-out period would not be in

the best interests of the class because it would result in additional administrative costs, which in

turn reduces the amount available for distribution.").

53.     Finally, there is no evidence of any collusion between the Parties to the

Agreement, further indicating that no additional notice is required. *See Green,* 200 F.R.D. at 213

(ordering no notice of settlement be given when "[f]irst, and most significantly, there is no

evidence of collusion between the parties"); *Selby v. Principal Mut. Life Ins. Co.,* No. 98 Civ.

5283 (RLC), 2003 WL 22772330, at *4 (S.D.N.Y. Nov. 21, 2003) (ordering no notice of

settlement be given "where is no evidence of collusion between the parties, and the settlement

negotiations were conducted at arms-length").

54.     Based on the foregoing, this Court should find that the dissemination of

the Notice of Settlement satisfied the requirements of Rule 23(e) and due process, and no new

notice need be given regarding the Agreement.

## VII.  Notice

55.     Notice of this Motion has been provided to (i) Girard Gibbs LLP, Co-Lead

Class Counsel for the Dex-Cool Plaintiffs and the Dex-Cool Class, 601 California Street, Suite

1400, San Francisco, California 94108 (Attn.: Eric H. Gibbs, Esq. and A. J. De Bartolomeo,

Esq.); (ii) Polsinelli Shughart P.C., Co-Lead Class Counsel for the Dex-Cool Plaintiffs and the

Dex-Cool Class, Twelve Wyandotte Plaza, 120 West 12th Street, Kansas City, Missouri 64105

(Attn.: P. John Brady, Esq.); and (iii) parties in interest in accordance with the Fifth Amended

Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing

Notice and Case Management Procedures, dated January 3, 2011 (ECF No. 8360). The Debtors

submit that such notice is sufficient and no other or further notice need be provided.

      56.    No previous request for the relief sought herein has been made by the

Debtors to this or any other Court.

      WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
      March 24, 2011

                /s/ Joseph H. Smolinsky
                Harvey R. Miller
                Stephen Karotkin
                Joseph H. Smolinsky
                WEIL, GOTSHAL & MANGES LLP
                767 Fifth Avenue
                New York, New York 10153
                Telephone: (212) 310-8000
                Facsimile: (212) 310-8007

                Attorneys for Debtors