Assistant Attorney General
Environmental and Natural Resources
  Division
March 25, 2011
Page 10


The language regarding the "account for the Non-Owned Site" is unclear. The proposed Settlement Agreement should expressly provide that for each of the Non-Owned Sites which are the subject of this proposed settlement, the proceeds obtained by EPA for each Allowed Claim should be allocated on an individual site basis. It should clearly provide that the proceeds received for each site will be allocated to a special account established in the name of that site, *e.g.,* the "Lammers Site Special Account," for use at that site. The EPA is collecting these funds because of the liability of MLC/Old GM for response costs at the Lammers Site. Therefore, use of these funds for purposes other than the remediation of the Lammers Site would be unfair and unreasonable. The settlement agreement also should provide that the settlement proceeds allocated to each site will be available on an on-going basis to the PRPs at each site where the PRPs are, or will be performing site work, and not held back from performing PRPs until the work is completed.

Finally, it is unclear from the terms of the Settlement Agreement how or when the EPA will seek to convert any non-cash distribution received into cash proceeds. More details regarding the U.S. EPA's intended procedure for doing so should be included in the Settlement Agreement. At present, it is unclear whether the EPA may continue to hold any non-cash distribution received for an indefinite period of time and, if so, whether EPA intends to withhold any distributions to PRPs until and unless it has converted the non-cash distribution into cash proceeds.

The Lammers Group appreciates this opportunity to provide comment on the proposed Settlement Agreement. However, given the complexities of the relevant facts and circumstances regarding the Lammers Site, we do wish to note our objection that providing less than a minimum of thirty days comment placed an undue burden upon the Lammers Group to review and provide comment on the proposed settlement. The unusually short notice and comment period was particularly unreasonable given that the Government had not included the Lammers Group in the settlement negotiations and has not disclosed the key underlying facts, such as estimated future costs or the MLC/Old GM proportionate share, which it relied upon to enter into this settlement.

Very truly yours,

*[signature]*

Susan M. Franzetti
Counsel for Lammers Barrel Factory PRP Group


Cc (via e-mail):    Jaimie Leeser Nawaday, Assistant United States Attorney
                    Southern District of New York

US 00383

Assistant Attorney General
Environmental and Natural Resources
  Division
March 25, 2011
Page 11

**EXHIBIT A**

### MEMBERS OF THE LAMMERS BARREL PRP GROUP

Akzo Nobel Coatings, Inc.
Alcoa Inc. and Alcoa Home Exteriors, Inc.
Arkema, Inc.
ArvinMeritor, Inc.
Ashland, Inc.
BP Products North America Inc.
Clopay Corporation
Copeland Corporation
C.P. Inc.
Cummins Inc.
Eli Lilly and Company
Ford Motor Company
GATX Corporation
General Electric Company
Georgia-Pacific Corporation
The Goodyear Tire & Rubber Company
Hexion Specialty Chemicals, Inc.
Honeywell
Illinois Tool Works Inc.
International Paper Co.
I.V.C. Industrial Coatings, Inc.
Anthony Kohnen
Lamson & Sessions Co.
Lear Corporation Automotive Systems
Minnesota Mining & Manufacturing (3M)
Morton International, Inc.
Navistar, Inc.
NL Industries
OXY USA, Inc.
Pharmacia Corporation
PPG Industries, Inc.
Premium Finishes, Inc.
Shell Oil Company
The Sherwin Williams Company
Sunoco, Inc.
United States Steel Corporation
Univar USA
The Valspar Corporation
Whittaker Corporation

US 00384

TO:   Assistant Attorney General,
      Environment and Natural Resources Division

This comment submitted In re: Motors Liquidation Corp., et al., Ref. 90-11-3-09754

Submitted on behalf of the Valleycrest Landfill Site Group ("VLSG")

by: _____
    Vincent B. Stamp, Esq.
    Common Counsel for the VLSG
    Dinsmore & Shohl LLP
    1900 Chemed Center
    255 E. Fifth St.
    Cincinnati, OH  45202
    513-977-8200
    stamp@dinslaw.com

This comment relates to the proposed Consent Decree between MLC ("Old GM") and USEPA, which was lodged on March 4, 2011 and Noticed in the Federal Register on March 10, 2011 at Vol. 76, No. 47. The Consent Decree relates in part to the Valleycrest Superfund site in Dayton, Ohio ("the Valleycrest Site" or "the Site"). The Consent Decree would, in essence, settle Old GM's liability for its share of the cost of remediating the Valleycrest Site for an allowed claim of $7 Million in Old GM's Bankruptcy.

The undersigned represents the Valleycrest Landfill Group ("VLSG") an association made up of The Kelsey Hayes Company, NCR Corporation, Waste Management of Ohio, Inc., Cargill Incorporated, The Standard Register Company, Northrop Grumman Space & Mission Systems Corp./Globe and Flowserve Corporation/Duriron, who are allegedly Potentially Responsible Parties ("PRPs") at the Site. The VLSG is filing this comment because, based on the best information available to the VLSG - information which was also available to and shared

US 00385

with the USEPA and DOJ (Department of Justice) - the proposed settlement should be at least $16.5 million, leaving the proposed settlement more than $9.5 million below the fair value of Old GM's share of the Site. The inadequacy of the proposed settlement will injure the members of the VLSG, because USEPA will almost certainly look to the members of the VLSG to make up the financial shortfall caused by the inexplicably low proposed settlement.

The VLSG is currently conducting a Remedial Investigation and Feasibility Study ("RIFS") at the Valleycrest Site. "Old GM" is a PRP at the Site and had been an active member of the VLSG until it filed for bankruptcy protection on June 1, 2009 in the United States Bankruptcy Court in the Southern District of New York, Case No. 09-50026 (REG).

At the conclusion of the RIFS, which we expect to be approved by Ohio EPA within the next two weeks, USEPA will move forward to ultimately select a remedy to be implemented at the Site. By far the largest PRP at the Site both in terms of quantity of waste and toxicity of waste at the Site is Old GM.

Consequently, in June of 2010, a VLSG representative contacted USEPA Region V to start a dialogue in regard to USEPA filing an Amended Proof of Claim to cover Old GM's liability for its share of the costs of implementing a final remedy at the Valleycrest Site. (See Ex. 1, p. 2)

On August 13, 2010 a VLSG representatives contacted the Department of Justice Attorney Natalie Kuehler, who is one of the attorneys representing USEPA in the Old GM bankruptcy. She informed the VLSG that USEPA would be filing an Amended Proof of Claim to include a Valleycrest remedy claim. (See Ex. 1, pg. 2).

The VLSG representatives specifically discussed with the EPA Region V and the Department of Justice representatives the fact that, in order for USEPA to properly value its

2

Valleycrest claim against Old GM, the VLSG, which was conducting the RIFS, would have to provide USEPA with the Remedy cost estimates at Valleycrest. These cost estimates were contained in the latest versions of the RIFS in which the remedies evaluated and related cost estimates were constantly changing during the regulatory review of the RIFS.

On January 17, 2011, the VLSG submitted the final cost estimates for the potential Remedies at the Site to USEPA which were as follows:

- $28,447,784 (best case)
- $37,895,738 (most likely)
- $104,722,141 (worst case)

(See Ex. 2, entitled "Claim Valuation" and Ex. A thereto, pg. 10-11)

The $104,000,000+ estimate related to a new remedial alternative which was required by USEPA to be evaluated in the RIFS. All of the remedial alternatives up until this submittal assumed that any contaminated groundwater could be discharged into the Dayton POTW. Since there was some possibility that the City of Dayton would not allow the POTW to take this discharge, USEPA required the VLSG to include offsite treatment and disposal as an alternative remedy for evaluation in the RIFS.

On February 4, 2011, the VLSG sent these final remedial cost estimates to the Region V and Department of Justice attorneys who were our contacts regarding the USEPA's Valleycrest claim against Old GM, and indicated that these were the numbers that should be utilized in valuing Old GM's liability for the Valleycrest Remedy. (See Ex. 2)

In addition, since the cost estimates assumed an unrealistic 7% net present value ("NPV") factor and $0 for oversight costs, the VLSG indicated to USEPA that it should base its claim upon the more realistic assumptions of a 2.7% NPV (per the OMB) and a 9% factor for oversight

3

US 00387

costs, based upon actual oversight cost experience at the Site. In addition, the VLSG suggested that the cost estimate should include an estimated 20% possibility of off-Site Treatment and Disposal if the POTW would not take the discharged water. This resulted in a final remedial cost estimate of $75,600,000. (See Ex. 2) Utilizing at least GM's allocated share of the RIFS costs contained in the Valleycrest PRP Agreement (21.9375%) applied to the $75.6 million final remedial cost estimate, the VLSG told USEPA and DOJ that the amount of USEPA's Valleycrest remedy claim against Old GM should be at least $16,584,750. (See Ex. 2 and Ex. 3, para. 8)

On March 3, 2011, USEPA filed its Amended Proof of Claim in the MLC Bankruptcy including for the first time, a Proof of Claim against Old GM for the Valleycrest Remedy costs. On March 4, 2011, USEPA filed a proposed consent decree and settlement with Old GM which in Par. 8 proposes that USEPA settle its Valleycrest Remedy claim against Old GM with the allowance of a general unsecured claim in the amount of $7 million. This $7 million when compared to the $16,584,750 which the VLSG provided to USEPA and the Department of Justice and which was based on the actual remedial costs to be included in the FS indicates the problem with USEPA's claim.

The VLSG does not know the underlying assumptions utilized by USEPA and DOJ in reaching a settlement with Old GM at this $7 million claim amount. However, the VLSG believes that $7 million is a woefully undervalued claim. This undervaluation, in turn, will result in the VLSG members being severely prejudiced as to any future claims brought by USEPA against them to implement a future remedy at this Site.

Accordingly, the VLSG respectfully requests that USEPA withhold its consent to this proposed consent decree and, based upon the most accurate information, negotiate a new settlement with Old GM for the Valleycrest Site which would result in a substantially higher

4

valuation of USEPA's claim against Old GM. That claim amount should be at least the VLSG-suggested amount of $16,584,750.

US 00389

# Dinsmore&Shohl LLP
ATTORNEYS

Vincent B. Stamp
513-977-8264
vince.stamp@dinslaw.com

January 31, 2011

Nicole Wood-Chi
USEPA Region 5
77 West Jackson Blvd.
Mail Code: C-14J
Chicago, IL 60604

Re: **Proofs of Claim in GM Bankruptcy for Valleycrest Landfill Superfund Site ("Site")**

Dear Ms. Wood-Chi:

    I am writing as Liaison Counsel for the Valleycrest Landfill Site Group ("VLSG"), the association of companies performing the Remedial Investigation/Feasibility Study ("RI/FS") and other Site activities at the Valleycrest Site.

    I want to thank you for speaking by telephone this past Thursday to me and to Mark Erzen and Larry Silver, both of whom represent individual members of the VLSG. In Thursday's call we requested a meeting with EPA to discuss important issues affecting the VLSG and its members regarding the proofs of claim (POCs) we have filed in the Motors Liquidation Corporation ("MLC") bankruptcy. We await your response to our request for a meeting.

    Valleycrest is an industrial and municipal waste landfill located in Dayton, Ohio which operated between 1966 and 1992. The VLSG members have spent approximately $60 million to date at the Site, including performing a major drum removal pursuant to an administrative order on consent with EPA and the RI/FS pursuant to a consent order with the Ohio Environmental Protection Agency ("OEPA"). The total cost of the cleanup of Valleycrest will likely exceed $100 million. We have been told that EPA will issue the Record of Decision for the Site and conduct or oversee the remedial design/remedial action.

    In the years prior to filing for bankruptcy in June 2009, General Motors Corporation ("GM"), was generally understood to be the largest generator PRP at the Valleycrest Site. GM was also a member of the VLSG. In recognition of its preeminent role among the generators, GM entered into agreements with other generator members of the VLSG through which, in

Ms. Nicole Wood-Chi
January 31, 2011
Page 2

---

effect, GM assumed the other VLSG Members' CERCLA liability at Valleycrest. These agreements included an indemnity running from GM to the other VLSG members by which GM promised to pay any cleanup liability that the other VLSG Members may incur at Valleycrest at any time.

In exchange for these indemnities, the VLSG members paid substantial out-of-pocket consideration to GM. The affected VLSG members are: Cargill, Flowserv, Northrop Grumman/Globe, Standard Register, Kelsey-Hayes/TRW and NCR. Each of these VLSG members filed timely proofs of claim in the MLC bankruptcy proceedings raising these indemnification/contract claims.

USEPA also filed a proof of claim dated November 28, 2009, in the MLC bankruptcy. For reasons not explained to us, USEPA did not include in its proof of clam a claim regarding the Valleycrest Site, even though GM without question is the generator PRP with the greatest share of liability at the Site. We brought that omission to your attention in a phone call in June 2010. In August 2010, we were informed by Natalie Kuehler, Assistant U.S. Attorney representing EPA in the GM bankruptcy, that EPA had reversed course and reached preliminary agreement with MLC to allow EPA to amend its proof of claim to include Valleycrest claims. She told us that the amendment would likely be effected by stipulation between EPA and MLC.

On August 13, 2010, I was contacted by Tony Muzzin and Tim Neis of Alix Partners ("Alix"), an entity representing MLC in negotiations with claimants in the bankruptcy. In a series of telephone and email communications with Alix, we were informed that we should (i) communicate with all of the claimants at the Valleycrest Site – including the VLSG members, other PRPs who made claims (*viz.*, Bridgestone Corporation and Ohio EPA) – and (ii) present to Alix a single set of combined claims, unified to the extent possible, including CERCLA and contract claims, from all claimants based upon single estimates of Site costs and GM's share of those costs. We were told by Alix to include USEPA in the effort, in anticipation that it would amend its proof of claim to include Valleycrest.

In compliance with MLC's request, we reached out to all of the MLC claimants at Valleycrest, including Bridgestone and Ohio EPA, as well as to USEPA to discuss the unified approach requested by Alix. We had several communications with USEPA's representatives in the bankruptcy, providing information to support a unified approach to the Site, as Alix had requested. We gathered information and presented the information to Alix and MLC's counsel Thomas Goslin of Weil Gotshal and Manges in several conference calls during the second half of 2010. On January 12, 2011, I was told by Alix to submit a report to it summarizing the information within the next 3 weeks.

This approach as requested by Alix changed dramatically on January 13, 2011. In a conversation I had with Mr. Goslin that afternoon, I was told for the first time that the unified approach to the Site requested by Alix in July 2010, and which we followed for six months, was no longer the way that MLC would proceed. I was told that MLC and USEPA were negotiating a "global" settlement of all of the GM sites and that Valleycrest would be included in those

Dinsmore&Shohl LLP

US 00391

Ms. Nicole Wood-Chi
January 31, 2011
Page 3

---

negotiations. We were told by Mr. Goslin in that call and another call on January 21, 2011 that the VLSG members should approach USEPA and its representatives in the MLC bankruptcy and request that EPA agree to include the PRPs indemnification/contract claims in the negotiations with MLC.

Of course this new position is diametrically opposed to that which Alix Partners had requested of the VLSG for the past six months. During that time we have spent considerable time and money to bring together all Valleycrest claims so as to accomplish Alix's stated objective of eliminating duplicative claims, providing claims that are consistently and currently valued and providing Old GM the opportunity to avoid negotiating with all of these claimants leaving that to the VLSG. We have been severely prejudiced by this abrupt about face.

As we explained to you in our call last Thursday, obviously this change of process is very disturbing to VLSG members. In the context of the MLC bankruptcy environmental claims, the Valleycrest Site is unusual and probably unique. As I noted, GM is the generator at the Site with the largest equitable CERCLA liability. In addition to its own large generator share, GM by indemnification contract, is responsible for virtually the entire remaining generator share. GM's share of liability can be therefore calculated with the same certainty as the EPA claim.

As we also explained to you on Thursday's call, GM now represents a very large orphan share at Valleycrest. USEPA will likely expect the VLSG members to continue to carry the cost burden at this Site, which is considerable. Even worse, VLSG members paid large amounts of money to GM for their indemnities, which are no longer of value outside the bankruptcy context. If the VLSG members are not able to receive fair compensation in the bankruptcy for these indemnification/contract claims, we will need to reevaluate our approach to the Site after the ROD is issued. As you know, this is a Site with five distinct geographical areas and a very large orphan share.

We have requested a meeting to discuss a cooperative approach between USEPA and the VLSG in negotiations with MLC. We believe strongly that such an approach is in the interests of both.

We look forward to your response.

Sincerely,

*Vince Stamp*

Vincent B. Stamp

VBS:ymm
cc: Larry Silver, Esq.
    Mark Erzen, Esq.
    John Persiani, Esq.

Dinsmore&Shohl LLP

US 00392

**From:** Maarsen, Yolande
**Sent:** Friday, February 04, 2011 5:16 PM
**To:** 'jaimie.nawaday@usdoj.gov'
**Subject:** FW: On behalf of V.Stamp: Cost Estimates
**Attachments:** Claim Valuation.pdf

**From:** Maarsen, Yolande
**Sent:** Friday, February 04, 2011 5:08 PM
**To:** 'wood.nicole@EPA.gov'; 'jamie.nawaday@usdoj.gov'
**Cc:** 'Larry Silver'; 'Mark Erzen'; Persiani, John
**Subject:** On behalf of V.Stamp: Cost Estimates

Nicole and Jamie, please find attached the up-to-date cost estimates for the Valleycrest Remedial Alternatives evaluated in the VLSG submission of the Feasibility Study on January 17, 2011. If you have any questions, let me know.

Vince Stamp


Yolande Maarsen
Legal Assistant to:
 Vincent B. Stamp, Esq.
 Steve N. Siegel, Esq.
 Robert M. Zimmerman, Esq.
 Scott R. Everett, Esq.
 Amanda McFarland, Esq.
Dinsmore & Shohl LLP
1900 Chemed Center
255 E. Fifth Street
Cincinnati, OH 45202
Ph: 513-977-8258
Fax: 513-977-8141
Email: yolande.maarsen@dinslaw.com

**From:** Maarsen, Yolande
**Sent:** Friday, February 04, 2011 5:08 PM
**To:** 'wood.nicole@EPA.gov'; 'jamie.nawaday@usdoj.gov'
**Cc:** 'Larry Silver'; 'Mark Erzen'; Persiani, John
**Subject:** On behalf of V.Stamp: Cost Estimates
**Attachments:** Claim Valuation.pdf

Nicole and Jamie, please find attached the up-to-date cost estimates for the Valleycrest Remedial Alternatives evaluated in the VLSG submission of the Feasibility Study on January 17, 2011. If you have any questions, let me know.

Vince Stamp



Yolande Maarsen
Legal Assistant to:
  Vincent B. Stamp, Esq.
  Steve N. Siegel, Esq.
  Robert M. Zimmerman, Esq.
  Scott R. Everett, Esq.
  Amanda McFarland, Esq.
Dinsmore & Shohl LLP
1900 Chemed Center
255 E. Fifth Street
Cincinnati, OH  45202
Ph: 513-977-8258
Fax: 513-977-8141
Email: yolande.maarsen@dinslaw.com

2/4/2011

US 00394

## CLAIM VALUATION

## RDRA CLAIMS

In the VLSG's original proof of claim submitted November 24, 2009, the cost estimate for the worst case remedial option was $55,935,000. We indicated to Old GM's claims manager, Alix Partners, that this was a preliminary number and that additional changes would be forthcoming from the USEPA and OEPA which would likely increase the cost estimates. Alix Partners asked us to provide a memo to them regarding our claim when the remedial options were closer to finalization.

Over the last few months, USEPA and OEPA have required numerous changes to the remedial alternatives to be considered for the Valleycrest Site. As we indicated to Mr. Neis and Mr. Goslin of Alix Partners in our most recent telephone call, USEPA and OEPA within the last two months have expanded the remedial alternatives to be considered in the RDRA process to address the possibility that extracted leachate and groundwater would have to be addressed via on-site treatment and discharge to an on-site infiltration impoundment or transportation to an off-site commercial facility for treatment and disposal. As a result, the VLSG recently was required to submit a revised draft Feasibility Study to USEPA and OEPA which contained cost estimates for these new remedial elements – i.e., on-site and off-site groundwater and leachate treatment and disposal.

Prior to these most recent changes, all of the remedial alternatives that were included in the feasibility study were premised on the extracted leachate and groundwater from the Site being discharged into the City of Dayton's publically-owned treatment works ("POTW"), thus eliminating the necessity of the on- or off-Site leachate and groundwater treatment and disposal methods referred to above.

However, USEPA has now determined that, since it is possible for various reasons, that the City POTW may not allow the discharge of the leachate and groundwater into its system, the array of remedial alternatives for the Site must now include the possibility of treatment and disposal of contaminated leachate and groundwater on and off the Site via the above-referenced methods. In addition, within the last two weeks, OEPA has required the VLSG to consider changes to leachate and groundwater extraction model which results in yet another remedy cost estimate.

Accordingly, the remedial cost estimates submitted by the VLSG to USEPA and OEPA in the just issued draft Feasibility Study incorporates these on- and off-Site leachate and groundwater treatment and disposal methods. The new cost estimates in the draft Feasibility Study are $28,447,784 for the lowest cost remedy and $104,722,141 for the highest cost remedy. (See Ex. A, p. 10 and p. 11 of Appendix J of the draft Feasibility Study submitted by the VLSG to USEPA and OEPA on January 17, 2011.) These numbers are based on a 7% NPV discount rate and include no Agency oversight costs during the implementation of the Remedy. Our previous remedy proofs of claim estimates used the more appropriate factors of 2.7% NPV and estimated future Agency oversight costs at 9%.[1] Utilizing these factors the resulting current remedy

---

[1] This 9% factor is based on the Site's actual oversight cost experience.

US 00395

estimates range from $38,052,126 ($38 million) for the lowest cost Remedy 3(a) and $173,756,588 ($174 million) for the highest cost remedy (3b). (See Ex. B)

Although far from certain, we believe that a remedial alternative will be chosen which includes the discharge of the extracted groundwater and leachate into the Dayton POTW (i.e. either 2(b) or 3(b)) Accordingly, we have selected Remedy 2(b) which is the highest cost remedial alternative utilizing the POTW as our base claim[2]. Remedy 2(b) is currently estimated to cost $50,460,529 ($51 million rounded). (See Ex. B) This remedial alternative is based on a 2.7% NPV, 9% agency oversight cost, an ARARS compliant solid waste cap and extraction of leachate and groundwater with disposal in the City of Dayton's POTW. However, if the City of Dayton does not allow the discharge of leachate and groundwater into its POTW, the highest cost remedial alternative 3(b) would require extracted leachate and groundwater to be treated and disposed of at an off-site commercial treatment facility.[3] The estimated cost for this remedy including the off-site treatment and disposal is $173,756,586 ($174 million rounded).[4]

Based on discussions with the City of Dayton representative this past Tuesday (January 25, 2011) during our dispute resolution meeting, this $174 million remedy, although not certain to be required, is a real possibility at this Site. Accordingly, this risk must be reflected in some manner in the remedial cost estimate by means of a probability factor to prevent the VLSG and USEPA from substantially understating their RDRA claims. The VLSG's Technical Consultants de maximis and CRA have indicated that the probability of the $174 million remedy being required is 20%. Accordingly, the estimated cost of the remedy at this Site utilizing this probability factor of 20% is as follows:

```
     $174,000,000
            x 20%
     $ 34,800,000

     $ 51,000,000
             x .8
       40,800,000
     + 34,800,000
     $ 75,600,000
```

This remedial cost estimate of $75.6 million is what the VLSG believes should be utilized in any Valleycrest RDRA proof of claim in the Old GM bankruptcy.

---

[2] Rather than using a proof of claim methodology utilizing the average between the highest ($174 million) and lowest ($38 million) cost remedies or other such cost estimate methods which would result in a substantially higher proof of claim, our consolidated claim is instead based on the 2(b) POTW remedy estimated at $50.5 million.

[3] Please note that Dayton and Montgomery County have gone on record that the more reasonable cost remedial alternative of on Site treatment and disposal is not likely to receive a permit because of the location of Site in relation to the Dayton Drinking Water Aquifer. (See Ex. C)

[4] OEPA in its latest comments on the leachate and groundwater extraction rate model has proposed that Remedy 2(b) include a higher extraction rate than currently utilized in the 2(b) Remedy presented in the feasibility study. The VLSG has filed for Informal Dispute Resolution on this issue. However, if this change is adopted, the worst case 2(b) Remedy would increase in cost by $5 million to $179 million.

US 00396