

Eric B. Fisher
212 374 5359
fishere@butzel.com

22nd Floor   380 Madison Avenue
New York, New York  10017
**T:** 212 818 1110  **F:** 212 818 0494
**butzel.com**

March 29, 2011

**VIA MESSENGER**

Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

Re:    *In re General Motors Corporation, et al., 09-50026 (REG): Discovery Concerning Official Committee of Unsecured Creditors' First Amended Objection to Claims Filed by Green Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and Motion for Other Relief* **(Docket No. 7859) ("Amended Objection")**

Dear Judge Gerber:

We represent the Official Committee of Unsecured Creditors (the "**Committee**") of Motors Liquidation Company f/k/a General Motors Corporation in connection with the above-referenced objection to approximately $2.67 billion worth of claims asserted by the Noteholders[1] and the Nova Scotia Finance Trustee (collectively, "**Claimants**").  Pursuant to Local Bankruptcy Rule 7007-1(b), we write respectfully to request a telephonic conference with the Court to resolve certain discovery disputes with Claimants.  The parties have conferred extensively about these particular discovery issues in person, by telephone and via email, but have not been able to reach a consensual resolution.

**BACKGROUND**

On July 2, 2010, the Committee filed the *Objection to Claims Filed by Green Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and Motion for Other Relief* (Docket No. 6248) ("**Initial Objection**," and together with the Amended Objection, the "**Objection**").  On August 17, 2010, we served document requests on the Noteholders and set August 31, 2010 as the response deadline.  At the request of Claimants'

---

[1]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Amended Objection.

Ann Arbor   Bloomfield Hills   Boca Raton   Detroit   Lansing   New York   Palm Beach   Washington D.C.
Alliance Offices   Beijing   Shanghai   Mexico City   Monterrey   Member Lex Mundi   www.butzel.com

March 29, 2011

counsel, we then agreed to postpone the response deadline until after the parties had an opportunity to meet.

On September 1, 2010, we met with lawyers from Greenberg Traurig, which was then serving as counsel to all Claimants. Claimants, through Greenberg Traurig, refused to provide any discovery.

On November 15, 2010, shortly before filing the Committee's Amended Objection, we met with counsel for the Noteholders (Greenberg Traurig), as well as the Nova Scotia Finance Trustee (Akin Gump) and New GM (King & Spalding). Claimants continued to refuse to produce any documents. On December 15, 2010, this Court held a status conference and expressly authorized the Committee's pursuit of discovery.

Consistent with a discovery schedule agreed upon in meetings among the parties, on January 11, 2011, we served a revised set of document requests on the Noteholders and the Nova Scotia Finance Trustee. On January 14, 2011, the parties met to discuss those requests, following which the Committee agreed to narrow the requests. On February 8, 2011, we served amended, narrowed document requests; and, on February 16, 2011, the Noteholders and the Nova Scotia Finance Trustee served their responses and objections thereto.

Counsel for the Committee and Claimants have conferred extensively about Claimants' responses and objections to the Committee's document requests. That process resolved many of the parties' discovery disagreements. However, the five issues described below remain unresolved and require this Court's intervention.[2]

## DISCOVERY DISPUTES WITH NOTEHOLDERS

**I.    The Noteholders should be compelled to produce documents from June 1, 2008 (or the Purchase Date, as applicable) until July 2, 2010.**

With respect to most of the topics covered in the Committee's document requests, the Committee seeks documents during the period from June 1, 2008 to July 2, 2010.[3] With respect to certain other carefully-defined topics, the Committee seeks documents from two months before the date each Noteholder first purchased the Notes (the "**Purchase Date**") to July 2, 2010.[4] The Noteholders have objected to these time frames and have only agreed to produce information during the limited six-month timeframe from January 1, 2009 to July 31, 2009.

---

[2]    Although the parties agreed to begin producing documents by March 1, 2011, <u>the Noteholders have not yet produced any documents to the Committee.</u> Notwithstanding the Noteholders' failure to produce documents, the Committee has substantially completed its document production to Claimants.

[3]    These topics include the Lock-Up Agreement, Consent Fee, Extraordinary Resolution, Claims, Swap Liability, Nova Scotia Finance bankruptcy, Escrow Agreement, Nova Scotia Proceeding, Bond Exchange Offer, $450 Million Loan, potential bankruptcy of GM Canada, GM Individuals and the selection process for the Nova Scotia Finance Trustee.

[4]    These topics include the Swaps, Intercompany Loans, transfers complained of in the Nova Scotia Proceeding, financial condition of Nova Scotia Finance, corporate structure of Nova Scotia Finance, fees

BUTZEL LONG

March 29, 2011

June 1, 2008 (or the Purchase Date, as applicable), rather than January 1, 2009, should be the appropriate beginning date for responsive documents. As reflected in Greenberg's Amended Verified Statement Pursuant to Bankruptcy Rule 2019 (Docket No. 4569) and Second Amended Verified Statement Pursuant to Bankruptcy Rule 2019 (Docket No. 7319) (collectively, the "**2019 Statements**"), the Noteholders purchased many of the Notes at issue in this Objection during 2008. The question of what each Noteholder knew about the financial condition of Old GM and Nova Scotia Finance at the time it purchased Notes in 2008 is highly relevant.

For example, the Claims challenged by the Objection arise from the Lock-Up Agreement, which settled a proceeding commenced by the Noteholders, in which the Noteholders claimed "oppression" based upon certain acts and transfers involving Nova Scotia Finance and Old GM that occurred, and were publicly reported, in May 2008. Under Nova Scotia law, "the essence of the oppression remedy is to ensure fairness, and that fairness, in turn, requires protection of the parties' reasonable expectations." *See Report of the Special Advisor to Bowater Canada Finance Corporation at 18, In re AbitibiBowater, Inc., et al.*, No. 09-11296 (KJC) (Bankr. D. Del. Sept. 20, 2010). Thus, to the extent that the Noteholders knew, when they bought their Notes in 2008, about the acts and transfers challenged in the Nova Scotia Complaint, the action was meritless and certainly did not warrant payment of an exorbitant consent fee and the allowance of $2.67 billion worth of claims for the benefit of the Noteholders. *See id.* at 22 n.9 (noting that, in the context of a claim for oppression by a noteholder of an unlimited liability company, given the "emphasis on reasonable expectations in oppression case law and the public disclosure of the transactions at issue we do not believe that such a claim would be viable"). In addition, what the Noteholders knew in 2008, when they purchased the Notes, is pertinent to a host of other issues at stake in the Objection.

Similarly, July 2, 2010 (the date the Committee filed the Initial Objection), rather than July 31, 2009, is the appropriate end date because of the important events that occurred after July 31, 2009. For example, it appears that the Swaps were assumed in August 2009. In addition, as reflected in the 2019 Statements, the Noteholders were actively trading the Notes throughout 2009 and 2010. In October 2009, Nova Scotia Finance was declared bankrupt under Nova Scotia's Bankruptcy and Insolvency Act, despite evidence of its solvency and apparently for the sole purpose of ensuring the assertion of the Wind-Up Claim and Guarantee Claims against Old GM. In addition, the Noteholders admittedly contacted the Fiscal Agent during October 2009 about the Claims. Finally, the Noteholders received a confirmation letter dated July 21, 2010 purporting to memorialize the assumption and assignment of the Lock-Up Agreement.

For all of the above reasons, the Noteholders should be compelled to produce documents from June 1, 2008 (or the Purchase Date, as applicable) until July 2, 2010.

**II.     The Noteholders should be compelled to produce all documents considered in connection with the decision to purchase, hold or sell the Notes.**

The Committee requested all documents considered in connection with each Noteholder's decision to purchase, hold or sell the Notes, including but not limited to internal analyses, the Offering Circular and documents sufficient to show any counter-party with whom the Notes were transacted.

---

paid concerning the Notes and prior or potential defaults under the Fiscal and Paying Agency Agreement and Notes.

BUTZEL LONG

March 29, 2011

The Noteholders have refused to provide any such information, even though it is plainly relevant.  For example, in *Harbert Distressed Investment Master Fund, Ltd. v. Calpine Canada Energy Finance II ULC, et al.*, 7 B.L.R. (4th) 276 (2005 N.S.S.C. 211), the Supreme Court of Nova Scotia denied relief to a sophisticated bondholder that claimed oppression for acts of which it was aware before it bought the bonds.  The debtors questioned the bondholder's motives and stated that "it purchased the bonds in question for the express purpose of taking opportunistic advantage of the issues that have been raised in this proceeding in order to maximize profit on a short term basis." *Id*. at ¶ 104.  The Court noted that evidence concerning the bond issuance and "documents of the deal" were necessary to evaluate the bondholder's "reasonable expectation" and held that "the dates that the bonds were purchased (prior to or after the conduct complained of) and the knowledge of the bondholders alleged to have been oppressed are relevant." *Id*. at ¶ 186.  Here, too, what the Noteholders knew and expected at the time they purchased the Notes is critically important.  In addition, historical information about profits already realized by the Noteholders in connection with their investment in the Notes is relevant to assessing the fairness of the transactions giving rise to the Claims.

**III.    The Noteholders should be compelled to produce documents sufficient to show other investments in unlimited liability companies.**

The Committee requested documents sufficient to show any (a) investment by a Noteholder in an unlimited liability company or unlimited company organized under the laws of Canada ("**ULC**") and (b) involvement by a Noteholder in a proceeding involving a ULC.  The Noteholders have refused to produce responsive documents.

This information is reasonably calculated to lead to the discovery of admissible evidence because the Nova Scotia Finance Trustee and these same Noteholders have previously pursued "wind-up" claims in United States bankruptcy proceedings in this district and others.  *See, e.g., In re Smurfit-Stone Container Corporation, et al.* (Bankr. D. Del. No. 09-10235 (BLS)) (Greenberg Traurig, as counsel to Green Hunt Wedlake, Inc. and, among others, Aurelius Capital Management, LP); *In re AbitibiBowater, Inc., et al.*, (Bankr. D. Del. No. 09-11296 (KJC)) (Greenberg Traurig, as counsel to Green Hunt Wedlake, Inc. and, among others, Aurelius Capital Management, LP); *see also In re Calpine Corporation, et al.*, (Bankr. S.D.N.Y. No. 05-60200 (BRL)) (Aurelius Capital Management, LP).  The Noteholders' knowledge concerning ULCs and their involvement in other proceedings asserting "wind-up" claims are highly relevant to the Committee's fraudulent transfer and equitable subordination allegations.  Moreover, at this time, we seek only a list of such investments and proceedings, and reserve our rights to seek further information.

**IV.    The Noteholders should be compelled to produce all documents relied upon in connection with the Rule 2019 Statements.**

The Committee requested all documents that support any filing made in this proceeding pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure.  The Noteholders objected to this request.  This information is relevant because the Noteholders are attempting to profit disproportionately from Old GM's chapter 11 reorganization at the expense of the broader class of unsecured creditors.  *See, e.g., In re Washington Mutual, Inc.*, 419 B.R. 271, 278-80 (D. Del. 2009) (noting that the purpose of Rule 2019 is to advise "the court and all parties in interest of

BUTZEL LONG

March 29, 2011

the actual economic interest of all persons participating" in the bankruptcy and stating that collective action by a group of creditors "is a form of leverage wherein the parties utilize other members' holdings to obtain a greater degree of influence" and enable "better returns than if creditors were to act individually"); *see also In re Northwest Airlines Corp.*, 363 B.R. 701, 703 (Bankr. S.D.N.Y. 2007) (by acting in concert, the noteholders "implicitly ask the court and other parties to give their positions a degree of credibility"). It is therefore appropriate that the Noteholders produce the supporting documents for the 2019 Statements so that the Committee can determine the economics of each Noteholder's investment in the Notes and test the credibility of the Noteholders' positions.

## DISCOVERY DISPUTE WITH NOVA SCOTIA FINANCE TRUSTEE

**V.    The Trustee should be compelled to identify his prior involvement in similar cases.**

The Committee requested documents sufficient to show the Nova Scotia Finance Trustee's involvement in any proceeding involving a ULC. The Nova Scotia Finance Trustee objects to this request as overly broad, unduly burdensome and not calculated to lead to the discovery of admissible evidence, and refuses to produce responsive documents. For the reasons already stated in section III above, this information is relevant. Further, at this time, we seek only a list of such proceedings, and thus the request is not burdensome.

We regret to have to burden the Court with the above discovery disputes and look forward to their prompt resolution.

Respectfully,

*/s/ Eric B. Fisher*

Eric B. Fisher

cc:    Bruce Zirinsky, Esq. (via e-mail)
       Kevin Finger, Esq. (via e-mail)
       Daniel Golden, Esq. (via e-mail)
       Dean Chapman, Esq. (via e-mail)