```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

Thomas M Smalley plaintiff

           vs.

MOTORS LIQUIDATION COMPANY, et al.,          Chapter 11 Case No.
       f/k/a General Motors Corp., et al.

                                              Case No. 09-50026
(REG)

Debtor(s).
-------------------------------------------------------x
```

9883

Endorsed Order: Denied without prejudice for failure to comply with Local Bankruptcy Rule 7056-1, and Case Mgt. Ord. #2 9/33
S/REG
USBJ
3/29/11

Motion for Summary Judgment

Debtor-creditor law governs situations where one party is unable to pay a monetary debt to another. GM has yet to replace my car and after an accident have sustain a disabling injury

RELIEF REQUESTED

I THOMAS SMALLEY WILL affirmatively defend THAT I BELIEVE I AM ENTITLED TO A MONETARY SETTLEMENT DO TO MY LOSSES

apon your broad powers in these matters. and if it Pleases the court I would be willing to amend the claim down to $15,000,000 The amount of fine per SEC. 5. PENALTIES.(a) CIVIL PENALTIES.—Section 30165(a) of title 49, United States Code

In defective product liability lawsuits claims generally consist of four basic elements.

1.) I was in a faulty auto and involved in roll over accident and now am disabled with nerve damage that is direct result of the faulty car

2.) GM informed me that if car was not fix due to Faulty Product that GM manufactured

3.) if the 91 Buick was not repaired per BUICK ( GM ) I would suffer a CRASH

4.) I was driving the 91 Buick as intended on a roadway

In many states they don't start the clock running until the injury is discovered
In my case it was discovered in 2009 the Dr said my injury is direct result of driving the faulty auto

,causing driver to loose control and sustain a crash witch could result in DEATH or Disability, Caudia Equine Syndrome does not appear until year 4 or 5, and for the last 3 days 3-19-3-21 have had VERY BAD Troubles just rying to eliminate my bodies waste,Times I wish that death may have been easyer to COPE

This Bankruptcy is all about stripping liability for GM for claims of injuries due to recalls ,its also shows that if car companies contribute $350 Million to members of Congress ,NHTSA will lax its over-site and Congress will turn there eye on regulation that govern PUBLIC LAW

Therefore I Have met the standard that GM has not in good faith paid its debt to me,Tom Smalley and have filed Claim for this Debt in your Court and with your Broad Powers can Issue this claim to move forward , I should not have to rely on Social Security for my support when CLEARLY GM is at FAULT, and with night time calls to my home with offer to drop claim for pennies and did not mention this to court?

Looks like in last months pleadings I had ask court for bifurcation? in other words GM has NOT replaced my car ,so the COURT can FIND that that is a debt they SHOULD NOT WALK AWAY FROM by simply delivering me a NEW CAR and then to BIFURCATE the INJURY CLAIM to your lower court

RE FROM last month : I also have a SS case in Federal Court in Des Moines ,Iowa(for what will be 50 months of back-pay) that may or maynot be enjoined to determine if either Social Security or GM should contribute to my NEEDS and Such (NON CORE) or if a Lower NY Court could grant,upon your broad powers in these matters. and if it Pleases the court I would be willing to amend the claim down to $15,000,000

'New' Chrysler Shielded from 'Old' Product Liability
Chrysler won't be liable for product defect claims on vehicles sold before it emerged from bankruptcy. Will the "new" GM win the same protection? see exhibit A

"Detroit Auto Workers Busted on the Job Drinking Beer & Smoking Pot on Break "
http://www.youtube.com/watch?v=XVmKyJXHXRE

If you have a chance this is a report by TV Station in Detroit that shows UAW UNION may be more at FAULT for the Hundreds of Thousands of Auto Injuries and its Liability

I OBJECT to any Expunging of any record in Case of Appeal

Senator Specter
If state law is preempted and lawsuits or claims are dismissed, public safety and health may be affected. In the past, some tort cases have unearthed industry secrets and safety shortcuts that manufacturers have taken. Information obtained in tort suits has turned out to be very useful to regulators seeking to protect the public. In addition, the unearthing of this information has caused manufacturers to improve the safety of their products, or make other changes that protect the public.

WYETH v. LEVINE
See United States v. Dotterweich, 320 U.S. 277, 280, 282 (1943) ("The purposes of this legislation thus

touch phases of the lives and health of people which, in the circumstances of modern industrialism, are largely beyond self-protection").

See H.R. Rep. No. 73-6110, pt. 1, § 25 (1933) ("Liability for Personal Injuries - a right of action for damages shall accrue to any person for injury or death proximately caused by a violation of this Act.").

Uniform Rules
22 NYCRR Part 206

§ 206.19 Bifurcated Trials

(a) Judges are encouraged to order a bifurcated trial of the issues of liability and damages in any action for personal injury where it appears that bifurcation may assist in a clarification or simplification of issues and a fair and more expeditious resolution of the action.

(b) Where a bifurcated trial is ordered, the issues of liability and damages shall be severed and the issue of liability shall be tried first, unless the court orders otherwise.

(c) In the event of a claimant's judgment on the issue of liability or a defendant's judgment on the issue of liability on a counterclaim, the damage phase of the trial shall be conducted as soon as possible before the same judge, unless the judge presiding over the trial, for reasons stated in the record, finds such procedure to be impracticable.

Product liability cases involve defective products that cause injury or damage to someone as a result of a manufacturing defect, a design defect  Product liability cases in New York are based on strict liability.

'New' Chrysler Shielded from 'Old' Product Liability
Chrysler won't be liable for product defect claims on vehicles sold before it emerged from bankruptcy. Will the "new" GM win the same protection?

By Michael Orey

Chrysler's bankruptcy will leave lots of people empty-handed. Among them are accident claimants who seek compensation when a faulty Chrysler vehicle causes injury or death. Under terms approved on June 1 by U.S. Bankruptcy Court Judge Arthur J. Gonzalez, the "new" Chrysler emerging from bankruptcy won't be liable for product defect claims involving any cars sold before it came into existence.

This issue drew only minor attention during the recent jockeying by various groups over whether the U.S. Supreme Court should intervene in the case. Now that the justices have stayed out of the case, and Chrysler's alliance with Italy's Fiat (FIA.MI) closed on June 10, it appears that anyone with a pending injury claim against Chrysler has no hope of a recovery. What's more, under Gonzalez's order, the newly constituted Chrysler is shielded from suits filed by anyone injured in a future accident involving the 31 million Chrysler vehicles currently on the roads.

A looming question now is whether a postbankruptcy General Motors will win the same liability protections. In filings accompanying the failed effort to persuade the Supreme Court to review the Chrysler case, groups representing consumers and accident claimants noted that it "could provide the roadmap for subsequent bankruptcies in this troubled economy," including GM's. About 74 million GM vehicles are now on U.S. roads, according to the Insurance Institute for Highway Safety.

Potentially Large Number of Claims

Lawyers for the consumer and accident victim groups argued that cutting off all avenues of redress for injury victims violates the bankruptcy law and the U.S. Constitution. And the number of victims is large, they contend, citing federal statistics showing that 5,940 people were killed in crashes involving Chrysler vehicles in 2007. "Many thousands more" were injured, their court filing said. In a Mar. 5 filing with the Securities & Exchange Commission, GM said that based on historical experience, it had recorded liabilities of about $1 billion a year in 2007 and 2008 to cover product liability claims. (Similar data are not available for Chrysler, since it was a private company.)

"Most consumers have no idea that their rights and the rights of their family members have been eliminated should something happen as a result of a defect in one of these cars," says Joanne Doroshow, executive director of the Center for Justice & Democracy in New York.

Even those who have already won judgments appear to be out of luck. Jeremy Knowles, an Alexander City (Ala.) attorney, points to the family of Vickie Mohr, who was killed in a collision involving her 2000 Dodge Caravan. In 2005, a Shelby County (Tenn.) jury found the van defective and awarded Mohr's family $52 million, mostly in punitive damages. The idea that Chrysler can walk away from that liability—reduced to $13 million by an appeals court—doesn't sit well with Knowles, whose firm handled the case. "People with personal injuries or life-ending injuries should be at the top of the list, not the bottom" in a bankruptcy proceeding, he says. "There should be more justice than that."

The way personal injury claims are typically dealt with in bankruptcy is surprisingly varied, say attorneys and academics in the field. While all lawsuits against a company are halted when it enters Chapter 11, a judge may let pending accident claims move forward but only allow payment in cases where there is insurance; when there's not, victims must get in line with other creditors. The rights of people who might have claims against a company in the future may not be addressed at all. "It ends up getting sorted out in a kind of muddled way," says David Skeel, who teaches bankruptcy at the University of Pennsylvania Law School.

In a few instances, when a huge pileup of injury claims was what drove a company into insolvency, special trusts have been set up to compensate victims. That's what happened in the bankruptcies of several asbestos manufacturers, as well as contraceptive maker A.H. Robins (WYE) and breast implant manufacturer Dow Corning. Insurers in those cases funded portions of the trusts.

But the Chrysler bankruptcy has been unlike any other, in part because of the federal government's unprecedented role in orchestrating and financing the process. For accident victims, there have been particular problems. One is that there is essentially no insurance to tap. That's because Chrysler self-insured the first $25 million of each accident, according to Barry

E. Bressler, a Philadelphia attorney who represents injury claimants. Without outside insurance, plaintiffs are left to pursue an insolvent enterprise.

"What people have to remember is that bankruptcy was really the only option that was offered to us to create a viable company," Chrysler spokesman Mike Palese says. "The alternative would have been liquidation of the company. In liquidation, the outcome would have been far worse for all stakeholders."

From the outset, the Obama Administration has stressed that it wouldn't micromanage the automakers' day-to-day operations, or even many aspects of their bankruptcies. In a statement, the Treasury said the agency wasn't involved in the decision on liability, but called it "consistent with conventional bankruptcy practice," adding that "unfortunately, the outcome would have been far worse had the government not intervened in the restructuring and Chrysler had liquidated."

Chrysler Can Thank Expedited Procedure

The expedited procedure Chrysler used to restructure—known as a 363(f) sale for the section of the bankruptcy code that authorizes it—also meant that accident victims and others had far less opportunity to participate in the process and advocate for their interests than they would in a typical reorganization. Lynn M. Lopucki, a bankruptcy law professor at the University of California, Los Angeles, says courts have allowed the process to be overly favorable to companies trying to shed their obligations. "The 363 sale is too good to be true—too good for management," says Lopucki.

The idea that the automakers can walk away from paying on injury claims has reached Congress, where legislators heed the public-relations fallout from tragic accident stories in their hometown newspapers. "The 363 bankruptcy is god-like in how it works," Senator Bob Corker (R-Tenn.) said on June 10 at a hearing of the Senate Commerce Committee. The committee questioned Ron Bloom, an adviser to the U.S. Treasury and one of the most influential members of the Obama Administration's auto industry task force assisting GM and Chrysler through bankruptcy. Bloom testified that the process is designed specifically to remove liabilities from companies, and admitted that personal injury awards would be less to victims going forward because they will have to seek compensation from the "old" Chrysler. That entity will remain in bankruptcy, comprised of hard-to-sell assets such as factories and real estate that could take years to liquidate. "It is clearly a terrible thing for those victims, but we don't have an alternative unless we want to be writing an endless check" for future liabilities, Bloom said.

In its successful effort to persuade the Supreme Court to stay out of the case, Chrysler swatted away arguments that its postbankruptcy operation should not be shielded from product liability damages. The court's decision to do so, Chrysler said in a June 7 filing, did not put accident victims in any worse position than if the company had been liquidated. Those with current injuries would be "unlikely to receive any money because there are secured creditors ahead of them with billions of dollars in unmet claims." As for those seeking to preserve assets for future claims arising from the 30 million-plus Chrysler vehicles still being driven, the automaker said: "The unfortunate but unavoidable fact is that future [injury] claimants...simply have no value to be protected."

"Detroit Auto Workers Busted on the Job Drinking Beer & Smoking Pot on Break "
http://www.youtube.com/watch?v=XVmKyJXHXRE

"Usually a sensationalist local TV expose is easy to dismiss. However, we can even forgive Detroit TV station WJBK's use of rock songs as the Fox2 station showed Chrysler factory workers taking their half-hour shift break at a park, drinking beer and smoking marijuana before finishing their work day. The Jefferson North Plant in Detroit is one of Chrysler's flagships, manufacturing the new Jeep Grand Cherokee. It's also the factory President Obama visited a few weeks ago to praise American manufacturing."

"It's the same plant where President Obama stood in July, praising Chrysler auto workers and saying "I would bet on the American worker any day of the week." The local TV station said it began following the workers just five days after Obama's visit. Chrysler went through a government-led bankruptcy in 2009 and took $10.8 billion from the federal government. "The fact that we're standing in this magnificent factory today is a testament to the decision we made," said Obama in July."

"The video really does speak for itself, but the reporter summarizes why this is so egregious: The metro Detroit economy is on the path back from the abyss, and part of that recovery is to overcome the stereotypes of union workers that are reinforced in this video."

"The Fox2 news crew went to the park for 10 days, and there were autoworkers drinking alcohol and smoking marijuana every day. Chrysler representatives said that many of the employees in the video have already been suspended indefinitely without pay and each vehicle built at the factory is checked multiple times to make sure there are no quality issues before they go on sale. We doubt, however, that those words will make any Jeep Grand Cherokee owners feel any better after watching this video."

http://blogs.cars.com/kickingtires/2010/09/detroit-tv-station-uncovers-chrysl...

http://www.insideline.com/chrysler/workers-at-2011-jeep-grand-cherokee-plant-...

**********

This was not a single time, but EVERYDAY occurrence! And these guys have free health insurance AND on average $73.00 / hour jobs! Those caught have been suspended until the Union works it out.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
In re:
Thomas M Smalley plaintiff

                        vs.                        Chapter 11 Case No.

MOTORS LIQUIDATION COMPANY,et al.,
      f/k/a General Motors Corp.,et al.

                                                                              Case No. 09-50026

(REG)


Debtor(s).
-----------------------------------------------------------x

                                            ORDER

AND NOW, this 22nd day of March, 2011, upon consideration of

Plaintiff's Motion for Summary Judgment of Liability and Damages, IT IS HEREBY ORDERED

that Defendant's motion is denied and plaintiff is awarded his claim. and by the Good Faith exhibited by

the plaintiff will accept his amended Claim of $15,000,000 from his original claim


                                            BY THE COURT: