Presentment Date and Time:
**April 5, 2011**
**12:00 noon**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
                             :

**In re**                                :          **Chapter 11 Case No.**
                                  :

**MOTORS LIQUIDATION COMPANY,** *et al.,* :         **09-50026(REG)**
       **f/k/a General Motors Corp.,** *et al.*  :
                                 :          **(Jointly Administered)**
-----------------------------------------------------------x

## NOTICE OF PRESENTMENT OF JOINT MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(b), AND FED. R. BANKR. P. 9010(a), TO APPROVE DISTRIBUTION AND ASSIGNMENT OF CLAIMS OF USW AND IAM TO A VEBA TRUST

        PLEASE TAKE NOTICE that upon the annexed Joint Motion of United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, the undersigned will present the attached proposed order to the Honorable Robert S. Gerber, United States Bankruptcy Judge, for signature on April 5, 2011 at 12:00 noon.

        PLEASE TAKE FURTHER NOTICE that objections, if any, to the proposed order must be made in writing and received in the Bankruptcy Judge's chambers and by the undersigned not later than 11:30 a.m. on April 5, 2011.  Unless objections are received by that time, the order may be signed.

Dated: New York, New York
       March 30, 2011


                         Respectfully submitted,

                         LEVY RATNER, P.C.
                         Attorneys for USW


                        _____/s/_____
                       By:   Suzanne Hepner
                           shepner@levyratner.com
                       80 Eighth Avenue, Eighth Floor
                       New York, New York 10011
                       Telephone: (212) 627-8100
                       Facsimile: (212) 627-8182

PREVIANT, GOLDBERG, UELMEN,
GRATZ, MILLER, & BRUEGGEMAN, S.C.
Attorneys for IAM


_____/s/_____
By:    Marianne Goldstein Robbins
       mgr@previant.com
1555 North RiverCenter Drive, Suite 202
Milwaukee, WI 53212
Telephone:  414-271-4500
Facsimile:   414-271-6308


To (By Hand Delivery via Messenger):

Harvey R. Miller, Esq.
Stephen Karotkin, Esq.
Joseph H. Smolinsky, Esq.
WEIL, GOTSHAL & MANGES LLP
*Attorneys for Debtors and Debtors in Possession*
767 Fifth Avenue
New York, New York  10153

David R. Berz, Esq. (via First Class Mail)
WEIL, GOTSHAL & MANGES LLP
*Attorneys for Debtors and Debtors in Possession*
1300 Eye Street NW, Suite 900
Washington,, DC 20005-3314

Thomas Moers Mayer, Esq.
Robert Schmidt, Esq.
KRAMER LEVIN NAFTALIS & FRANKEL LLP
*Counsel for the Official Committee of Unsecured Creditors*
1177 Avenue of the Americas
New York, New York  10036

Barry N. Seidel, Esq.
BUTZEL LONG, PC
*Special Counsel for Official Committee of Unsecured Creditors*
380 Madison Avenue, 22nd Floor
New York, New York 10017

Ronald E. Reinsel, Esq. (via First Class Mail)
CAPLIN & DRYSDALE, CHARTERED
*Counsel for the Official Committee of Asbestos Claimant Creditors*
One Thomas Circle, NW, Suite 1100
Washington, DC  20005

Brian S. Masumoto, Esq.
OFFICE OF THE UNITED STATES TRUSTEE
33 Whitehall Street, 21st Floor
New York, New York 10004

**TIME FOR PRESENTMENT: APRIL 5, 2011 AT 12:00 p.m. (Eastern Time)**
**OBJECTION DEADLINE: APRIL 5, 2011 AT 11:30 a.m.. (Eastern Time)**

Suzanne Hepner
LEVY RATNER, P.C.
80 Eighth Avenue, Eighth Floor
New York, New York 10011
Telephone: (212) 627-8100
Facsimile: (212) 627-8182
Attorneys for United Steelworkers

Marianne Goldstein Robbins
Previant, Goldberg, Uelmen,
Gratz, Miller, & Brueggeman, s.c.
1555 North RiverCenter Drive, Suite 202
Milwaukee, WI 53212
Telephone:  414-271-4500
Facsimile:  414-271-6308
Attorneys for IAM

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                        :      Chapter 11 Case No.
                                              :
**MOTORS LIQUIDATION CORP.,** *et al.,*       :      09-50026 (REG)
                                              :
*f/k/a* **GENERAL MOTORS CORP.,** *et al.,*   :      (Jointly Administered)
                                              :
            **Debtors.**                      :
                                              :
-------------------------------------------------------------x

**JOINT MOTION PURSUANT TO 11 U.S.C. §§ 105, 363(b), AND**
**FED. R. BANKR. P. 9010(a), TO APPROVE DISTRIBUTION**
**AND ASSIGNMENT OF CLAIMS OF USW AND IAM TO A VEBA TRUST**

TO THE HONORABLE ROBERT S. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

### PRELIMINARY STATEMENT

    1.    By this Joint Motion, the United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-

CIO·CLC ("USW") and International Association of Machinists and Aerospace Workers

("IAM") seek entry of an order, pursuant to 11 U.S.C. §§ 105(a) and 363 and Fed. R. Bankr. P.

2002 and 6004, approving the assignment of the USW and IAM claims to the Participating

Union GM Bankruptcy Claim Health Care Reimbursement Trust.

2.        On or about September 3, 2009, the USW and other unions entered into an

agreement with General Motors Company and Motors Liquidation Company, formerly known as

General Motors Corporation (collectively the "Debtors"), titled "Settlement Agreement Between

and Among GMCo/MLC-IUE-CWA and USW Regarding Retiree Health Care, Life Insurance,

Pension Top-up, and Modification and GMCO Assumption of MCL-IUE-CWA CBA"

("Settlement Agreement"). The Settlement Agreement provides, in pertinent part, as follows:

> The IUE-CWA, USW and all Splinter Unions (as hereafter defined) that agree to
> applicable terms in this Settlement Agreement shall be granted an allowed prepetition
> unsecured claim in MLC's Chapter 11 Case in the amount of one billion dollars with
> respect to retiree health and life insurance benefits for the post-age-65 retirees, post-age-
> 65 surviving spouses and under-age-65 retirees or surviving spouse disqualified for
> Retiree Health Care Benefits due to Medicare eligibility who are represented by IUE-
> CWA, USW and the Splinter Unions (the "Allowed Claim"). Age for purposes of the
> preceding sentence shall be determined as of December 31, 2009. The Allowed Claim
> shall be in full settlement, satisfaction and discharge of all claims against MLC and its
> affiliates and their present and former officers and directors by the IUE-CWA, USW and
> the Splinter Unions or any employees, retirees or other persons or beneficiaries
> represented by or subject to agreements entered by such unions with MLC (the "Splinter
> Claims") against MLC and its affiliates and their respective officers, directors. Upon
> approval of this Settlement Agreement by the Bankruptcy Court, any and all Splinter
> Claims shall be withdrawn, released and dismissed with prejudice and the IUE-CWA,
> USW and the Splinter Unions shall promptly take all such action necessary or required to
> effectuate the foregoing, including providing releases to MLC. Any funds resulting from
> the Allowed Claim shall be distributed in a manner as authorized by the Bankruptcy
> Court. To the extent approved by the Bankruptcy Court, MLC agrees that the IUE-CWA,
> USW, and the Splinter Unions have a right to sell, assign or transfer their respective
> allowed Claim as they deem appropriate at any time.

(Docket No. 4241, Ex. A, ¶ 3.)

2

3.      This Court approved the Settlement Agreement on November 12, 2009.

("Approval Order", Docket No. 4433.)  The USW percentage share of the entire Allowed Claim

of one billion dollars is 14.73%.  (Docket No. 4433, Ex. A.)

4.      This Court entered an Order dated August 9, 2010 ("IAM Approval Order")

(Docket No. 6594) approving IAM's acceptance of the terms of the Settlement Agreement.  The

IAM percentage share of the entire allowed claim of one billion dollars is 4.32 % (Docket No.

6594, Exhibit A).

5.      USW and IAM now seek to distribute their percentage shares of the Allowed

Claim to a trust created to provide medical, prescription drug, dental, vision and other

permissible health care benefits to eligible participants, namely, the post-age-65 retirees, post-

age-65 surviving spouses and under-age-65 retirees or surviving spouse disqualified for Retiree

Health Care Benefits due to Medicare eligibility who are represented by the USW and IAM.  A

copy of the Trust Agreement of the Participating Union GM Bankruptcy Claim Health Care

Reimbursement Trust ("the Trust") is attached as Exhibit A.

6.      The Trust, together with the Plan, is intended to constitute a "voluntary

employees' beneficiary association" under § 501(c)(9) of the Internal Revenue Code, 26

U.S.C. § 501(c)(9).  The Plan, which will be established by the Trust's Committee (as such

term is defined in the Trust), is intended to constitute an "employee welfare benefit plan"

within the meaning of § 3(1) of the Employee Retirement Income Security Act ("ERISA") and

to be compliant with ERISA requirements. (Ex. A, at 2).  The Trust Agreement provides as

follows:

> At no time shall any part of the corpus or income of the Trust Fund
> be used for or diverted to purposes other than for the exclusive
> benefit of the Participants, including reasonable costs of
> establishment, amendment and administration of the Trust and the

3

Plan, and at no time shall any part of the net earnings improperly inure to the benefit of any private individual as provided in Section 501(c)(9) of the Code and Section 1.501(c)(9)-4 of the Treasury Regulations promulgated thereunder.

(*Id.* at 4).

7.    The Trust will be established and managed by a committee ("Committee").   The Committee shall comprise of five individual persons, consisting of three (3) USW Members and two (2) IAM Members.  No Member of the Committee shall be a current or former officer, director or salaried employee of the Company.  The initial Committee Members are named in this Trust Agreement.  (*Id.* at 12.)  The three Committee members appointed by the International President of the USW are  Sara Restauri, Darrell Collins, and  David McLean.  The two Committee members appointed by the International President of the IAM are Karl Heim and Steve Ellicott.

8.    The USW and IAM have each agreed to transfer its respective percentage share of the Allowed Claim in this case to the Trust.    The Transfer of Claim Agreement is subject to approval of this Court.  (Ex. C at 1.)  (See Exhibits B and C hereto).

9.    The Committee has retained Independent Fiduciary Services, Inc. ("IFS") to serve as their financial advisor.  IFS is an investment advisory firm with over 20 years of experience which provides investment advisory services to institutional investors, including taking responsibility as an "independent fiduciary" for specific investment transactions. (http://www.fidserv.com/about)    The USW and IAM note that IFS serves a similar function for the Trust established by the IUE-CWA for the distribution of its percentage share of the Allowed Claim.

**The Motion to Approve the Distribution and Assignment of the USW and IAM Claims to the Trust Should Be Granted under §§ 363(b) and 105(a) of the Bankruptcy Code**

10.     Ample authority exists for approval of the Motion under §§ 363(b) and 105(a) of the Bankruptcy Code. Section 105 of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Settlement Agreement contemplates approval of the bankruptcy court for the distribution of any funds resulting from the Allowed Claim and for the right of each union to sell, assign or transfer their respective Allowed Claim. (Ex. A. at 5-6.) Here, the USW and IAM have established a Trust to provide health benefits to eligible retirees pursuant to the Settlement Agreement. The USW and IAM seek to transfer the respective interest in the Allowed Claim to that Trust so that the Trust will have the assets to provide the retiree health benefits.

11.     The Trust has been established to be compliant with the Internal Revenue Code and with the provisions of ERISA. The Committee members will have the responsibility of using the assets of the Trust for the benefit of the participants. The Committee members will establish a plan of benefits or other program for the eligible retirees with the assistance of actuarial and legal professionals.

12.     The Allowed Claim is for the loss of retiree health benefits for the eligible retirees as identified in the Settlement Agreement. The Trust is a voluntary employee beneficiary association ("VEBA") created for the purpose of accepting the USW and IAM percentage shares of the Allowed Claim so that it may provide benefits to the eligible retirees. By providing such benefits the Trust is carrying out the purpose of the Settlement Agreement and the Allowed Claim.

13.     This Court and others have recognized that a VEBA is an appropriate vehicle for providing retirees with benefits to compensate for the loss of retiree health benefits in a bankruptcy case.  In this case, this Court found that a settlement with the UAW which provided that General Motors would make contributions to a New VEBA which would then have the obligation to fund retiree medical benefits was fair and equitable. *In re General Motors Corp.,* 407 B.R. 463, 484-86, 519-20 (Bankr. S.D.N.Y. 2009).  *See also, In re Chrysler LLC,* No. 09-50002 (AJG), 2009 WL 1360869, *18-19 (Bankr. S.D.N.Y. May 7, 2009) (approval of agreement to fund a VEBA providing retiree health benefits with equity and a note); (*In re Delphi Corp.,* No. 05-44481 (RDD), 2009 WL 973130 (Bankr. S.D.N.Y. April 2, 2009) (approving payment to a salaried retirees committee to set up a VEBA in settlement of claims for lost retiree health benefits); *In re Tower Automotive, Inc.,* 342 B.R. 158 (Bankr. S.D.N.Y. 2006) (approving settlement with unions providing for establishment of VEBA trusts to provide future retiree benefits);  *In re Motors Liquidation Corp.,* (Docket #4433) (approving transfer of IUE-CWA claim to a VEBA).

[Remainder of page intentionally left blank]

WHEREFORE, USW and IAM respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
       March 30, 2011

Respectfully submitted,

LEVY RATNER, P.C.
Attorneys for USW

_____/s/_____
By:    Suzanne Hepner
       shepner@levyratner.com
80 Eighth Avenue, Eighth Floor
New York, New York 10011
Telephone: (212) 627-8100
Facsimile: (212) 627-8182

PREVIANT, GOLDBERG, UELMEN,
GRATZ, MILLER, & BRUEGGEMAN, S.C.
Attorneys for IAM

_____/s/_____
By:    Marianne Goldstein Robbins
       mgr@previant.com
1555 North RiverCenter Drive, Suite 202
Milwaukee, WI 53212
Telephone:  414-271-4500
Facsimile:  414-271-6308

**EXHIBIT A**

PARTICIPATING UNION GM Bankruptcy claim
**HEALTH CARE REIMBURSEMENT TRUST**

THIS TRUST AGREEMENT, entered into effective _____, 2011, by and among, Darrell Collins, Steven Ellicott, Karl Heim, David McLean, and Sara Restauri (collectively, the "Committee") and _____, N.A. (the "Trustee").

W I T N E S S E T H:

WHEREAS, the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Industrial Union, AFL-CIO, CLC ("USW") and the International Association of Machinists and Aerospace Workers ("IAM") (collectively, the "Participating Unions"), along with certain other unions, entered into a Settlement Agreement with the General Motors Company ("GM") and Motors Liquidation Company ("MLC") in the course of the Chapter 11 bankruptcy case entitled, *In re: Motors Liquidation Company, et al., f/k/a General Motors Corp, et al.,* Case No. 09-50026 (REG) ("the Settlement Agreement") in which the Participating Unions were granted an allowed pre-petition unsecured claim pursuant to Section 1114 of the Bankruptcy Code, 11 U.S.C. § 1114 in MLC's Chapter 11 case in the amount of the aggregate proportionate share (*i.e.,* 19.05%) of one billion dollars ($1,000,000,000) with respect to certain retirees and surviving spouses (the "Allowed Participating Union Claim");

WHEREAS, by an order dated November 12, 2009, the Bankruptcy Court approved the Settlement Agreement (the "Court Order");

WHEREAS, each Participating Union desires to assign the entirety of its Allowed Participating Union Claim to a trust to benefit the retirees and surviving spouses on whose behalf such Allowed Participating Union Claim was brought;

WHEREAS, the individuals who comprise the Committee have been appointed by the Participating Unions to establish and maintain a trust to hold the proceeds of the Allowed Participating Union Claim;

WHEREAS, the Committee accordingly desires to establish the "Participating Union GM Bankruptcy Claim Health Care Reimbursement Trust" (the "Trust") to hold the proceeds of the Allowed Participating Union Claim;

WHEREAS, the Committee has retained the Trustee to serve in such capacity with respect to the Trust, and the Trustee desires to do so:

WHEREAS, the Settlement Agreement contemplates that the Bankruptcy Court will approve any assignment or disbursement of the proceeds of the Allowed Participating Union Claim;

WHEREAS, the Participating Unions intend to seek a further Order of the Bankruptcy Court approving the assignment of the Allowed Participating Union Claim to the Trust;

WHEREAS the purpose of the Trust is to provide such medical, prescription drug, dental, vision and other permissible health care benefits to the eligible participants, as specified in this Trust

Agreement, and as may be funded by the proceeds of the Allowed Participating Union Claim and any earnings thereon, or other income of the Trust;

WHEREAS, the Committee shall be responsible for sponsoring and administering the "Participating Union GM Bankruptcy Claim Health Care Reimbursement Plan" or any successor thereto (the "Plan"), through which all benefits to the Trust's beneficiaries shall be provided;

WHEREAS, the Committee is willing to exercise the authority granted to it herein;

WHEREAS, the Trustee is willing to receive, hold, and invest the assets of the Trust in accordance with the terms of this Trust Agreement;

WHEREAS, the Trust is intended to comply with the requirements of section 501(c)(9) of the Internal Revenue Code of 1986, as amended (the "Code"), the applicable provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and section 302 of the Labor Management Relations Act of 1947, as amended ("LMRA");

NOW THEREFORE, in consideration of the premises and the covenants contained herein, the Committee and the Trustee agree as follows:

## Article I
## DEFINITIONS

Section 1.01 <u>Authorized Investments</u>. Subject to any investment guidelines established by the Committee and communicated to the Trustee pursuant to Section 10.04 hereof, the term "Authorized Investments" shall not be limited to investments that are defined as legal investments for trust funds under the laws of any jurisdiction and shall include, but shall not be limited to: (i) cash equivalents held in interest bearing accounts; (ii) bonds, debentures, notes, or other evidences of indebtedness; (iii) stocks (regardless of class), or other evidences of ownership, in any corporation, partnership, mutual investment fund (including funds for which the Trustee or an affiliate thereof serves as investment manager), investment company, association, joint venture or business trust; (iv) investment contracts issued by legal reserve insurance companies; and (v) group or pooled trusts described in Revenue Ruling 81-100, 1981-1 C.B. 326.

Section 1.02 <u>Beneficiary</u>. The term "Beneficiary" or "Beneficiaries" shall mean any individual who was a dependent, spouse or surviving spouse of an Eligible Retiree as of December 31, 2009, who participates in the Plan under the terms thereof as adopted from time to time by the Committee, but only to the extent that such individual continues to qualify as a dependent, spouse or surviving spouse of an Eligible Retiree.

Section 1.03 <u>Chair</u>. The term "Chair" shall mean the Member selected pursuant to Section 9.05 to perform the functions described in Article IX.

Section 1.04 <u>Code</u>. The term "Code" shall mean the Internal Revenue Code of 1986, as amended, and any successor statute thereto.

2

Section 1.05 Company. The term "Company" shall mean the General Motors Company and/or Motors Liquidation Company.

Section 1.06 Committee. The term "Committee" shall mean the USW Members and the IAM Members formed to establish and manage the Trust, to sponsor and administer the Plan, and to serve as the "named fiduciary" of the Plan within the meaning of section 402(a)(2) of ERISA.

Section 1.07 Eligible Retiree. The term "Eligible Retiree" includes any individual who as of December 31, 2009 was (i) a Retiree or surviving spouse of a Retiree; and (ii) eligible for coverage under the federal Medicare program.

Section 1.08 ERISA. The term "ERISA" means the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et. seq., and any successor statute thereto.

Section 1.09 IAM Member. The term "IAM Member" shall mean the member of the Committee selected by IAM pursuant to Article IX.

Section 1.10 Investment Manager. The term "Investment Manager" means a fiduciary other than the Committee appointed by the Committee in accordance with the provisions of Section 10.05 hereof which satisfies the requirements of section 3(38) of ERISA.

Section 1.11 LMRA. The term "LMRA" shall mean the Labor Management Relations Act of 1947, as amended, 29 U.S.C. §§ 151 et. seq., and any successor statute thereto.

Section 1.12 Member. The term "Member" shall mean an individual who is a member of the Committee initially designated in Section 9.01 hereof as a Member or his or her successor appointed pursuant Section 9.04.

Section 1.13 Participants. The term "Participants" shall mean Eligible Retirees and Beneficiaries who, from time to time satisfy the requirements to participate in the Plan pursuant to Section 2.01.

Section 1.14 Participating Union. The term "Participating Union" shall mean the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Industrial Union, AFL-CIO, CLC ("USW"), the International Association of Machinists and Aerospace Workers ("IAM"), and, subject to the Committee's express approval in writing, any other union that was a party to the Settlement Agreement and that, subsequent to the effective date of this Trust Agreement, agrees to transfer its share of the Allowed Participating Union Claim to the Trust and become bound by the terms of this Trust Agreement.

Section 1.15 Plan. The term "Plan" shall mean the Participating Union GM Bankruptcy Claim Health Care Reimbursement Plan, as adopted and as may be amended from time to time by the Committee as specified herein.

Section 1.16 Retiree. The term "Retiree" shall mean any individual who, before December 31, 2009, retired from a position covered by a collective bargaining agreement between the Company and a Participating Union with the right to receive post-employment medical benefits from the Company.

3

Section 1.17 <u>Settlement Agreement</u>. The term "Settlement Agreement" shall mean the agreement between the Participating Unions and the General Motors Company ("GM") and Motors Liquidation Company ("MLC"), which was entered into in the course of the Chapter 11 bankruptcy case entitled, *In re: Motors Liquidation Company, et al., f/k/a General Motors Corp, et al.*, Case No. 09-50026 (REG) and approved by the Bankruptcy Court on November 12, 2009.

Section 1.18 <u>Trust Agreement</u>. The term "Trust Agreement" shall mean this agreement, and as may be amended thereafter from time to time by the Committee.

Section 1.19 <u>Trust or Trust Fund</u>. The term "Trust" or "Trust Fund" shall mean the trust established by this Trust Agreement, comprising all property or interests in property held by the Trustee from time to time under this Trust Agreement.

Section 1.20 <u>Trustee</u>. The term "Trustee" shall mean the independent financial institution named herein (and any successor named thereafter) and thereafter retained by the Committee, in its sole and absolute discretion. Any corporation continuing as the result of any merger or consolidation to which the Trustee is a party, or any corporation to which substantially all the business and assets of the Trustee may be transferred, will be deemed to be continuing as the Trustee.

Section 1.21 <u>USW Member</u>. The term "USW Member" shall mean the member of the Committee selected by USW pursuant to Article IX.

## Article II
## ELIGIBILITY AND PARTICIPATION

Section 2.01 <u>Eligibility for Participation</u>. Any Eligible Retiree or Beneficiary may participate in the Plan subject to his or her satisfaction of the participation requirements determined from time to time by the Committee in its sole and absolute discretion.

Section 2.02 <u>Determination by Committee</u>. Any determination regarding the status of any Eligible Retiree, Beneficiary or any other individual as a Participant under the Plan shall be solely and exclusively the responsibility of the Committee under the standards provided in Section 10.13.

## Article III
## ESTABLISHMENT OF TRUST

Section 3.01 <u>Purpose</u>. The purpose of the Trust is to apply the assets of the Trust to provide post-employment medical and other specified welfare benefits for Participants pursuant to the Plan. The Trust, together with the Plan, is intended to constitute a "voluntary employees' beneficiary association" within the meaning of Section 501(c)(9) of the Code.

Section 3.02 <u>Receipt of Funds</u>. The Trustee shall accept all sums of money and other property deposited or remitted to the Trust and the Trustee shall hold, manage, and administer the Trust Fund without distinction between principal and income. The Trustee shall be accountable for the contributions or transfers it receives, but shall not be responsible for the collection of any contributions or transfers to the Trust.

4

Section 3.03 <u>No Diversion</u>.  At no time shall any part of the corpus or income of the Trust Fund be used for or diverted to purposes other than for the exclusive benefit of the Participants, including reasonable costs of establishment, amendment and administration of the Trust and the Plan, and at no time shall any part of the net earnings improperly inure to the benefit of any private individual as provided in Section 501(c)(9) of the Code and Section 1.501(c)(9)-4 of the Treasury Regulations promulgated thereunder.

Section 3.04 <u>Fiduciary Duties</u>.  Except as otherwise provided herein, the responsibilities of each fiduciary as such shall be limited to the performance of those duties specifically assigned to it hereunder.  No fiduciary shall have any responsibility for the performance of any duty not specifically so assigned, except to the extent such responsibility is imposed by applicable law.  The Committee shall be the named fiduciary (as defined in Section 402(a)(2) of ERISA) hereunder with authority to control and manage the operation of the Trust to the extent set forth herein and in the Plan.  The Committee shall act in its fiduciary, and not its settlor, capacity whenever it adopts, amends, merges, or terminates the Plan.

Section 3.05 <u>No Guarantee</u>.  Nothing contained in the Trust or the Plan shall constitute a guarantee that the assets of the Trust Fund will be sufficient to pay any benefit to any person or to make any other payment.  The obligation of the Plan to pay any benefit provided under the Plan is expressly conditioned on the availability of marketable assets in the Trust to pay the benefit, and neither the Committee, the Trustee, nor any other person shall be required to liquidate any Trust assets in order to generate cash to pay benefits.  Except for payments of benefits under the Plan, no Participant shall receive any distribution of cash or other thing of current or exchangeable value, either from the Committee or the Trustee, on account of, or as a result of, the Trust Fund created hereunder.

Section 3.06 <u>No Interest</u>.  Except as provided in Section 3.03, to the extent permitted by ERISA, the Company shall have no legal or equitable interest in the assets of the Trust Fund at any time, including following the termination of the Trust.

**Article IV**
**CONTRIBUTIONS TO THE TRUST FUND**

Section 4.01 <u>Claim Proceeds</u>.  The Trust Fund shall accept any and all proceeds of the Allowed Participating Union Claim in whatever form said proceeds are paid to it.

Section 4.02 <u>Company Remittances</u>.  The Trust Fund shall accept remissions from the Company which are required by the Settlement Agreement and any subsequent collective bargaining agreement.

Section 4.03 <u>Medicare Subsidies</u>.  The Trust Fund may accept contributions constituting Medicare Part D subsidies or any other governmental payment relating to the benefits provided to Participants pursuant to the Plan and Trust.

Section 4.04 <u>Participant Contributions.</u>  The Trust Fund shall accept contributions from Participants as permitted or required by the Trustees.  Such Participant contributions may be remitted to the Trust Fund pursuant to voluntary authorized deductions from periodic payments due participants from the Company's pension plan.

5

Section 4.05 <u>Other Legal Sources.</u> The Trust may accept money or property from sources other than those described in Sections 4.01, 4.02, 4.03, and 4.04, provided that acceptance from any such other source is permitted by law.

Section 4.06 <u>Assignment of Other Claims</u>. The Trust may accept the assignment by other labor organizations of allowed claims that they hold in the MLC Bankruptcy case by virtue of the Settlement Agreement who agree to have their members become participants in the program of benefits provided by the Trust.

## Article V
## PAYMENTS FROM THE TRUST FUND

Section 5.01 <u>Payments from the Trust Fund</u>. To the extent permitted by law, the Trustee shall be fully protected in making payments out of the Trust Fund, and shall have no responsibility to see to the application of such payments or to ascertain whether such payments comply with the terms of the Plan, and shall not be liable for any payment made by it in good faith and in the exercise of reasonable care without actual notice or knowledge of the impropriety of such payments hereunder. The Trustee may withhold all or any part of any payment as the Trustee in the exercise of its reasonable discretion may deem proper, to protect the Trustee and the Trust against any liability or claim on account of any income or other tax whatsoever; and with all or any part of any such payment so withheld, may discharge any such liability. Any part of any such payment so withheld by the Trustee that may be determined by the Trustee to be in excess of any such liability will, upon such determination by the Trustee, be paid to the person or entity from whom or from which it was withheld.

Section 5.02 <u>Method of Payments</u>. The Trustee may make any payment required to be made by it hereunder, unless directed otherwise by the Committee, by mailing its check in the amount thereof by first class mail in a sealed envelope addressed to the person or entity to whom or to which such payment is to be made, or by any other such means as the Trustee is directed by the Committee. If any dispute arises as to the identity or rights of persons who may be entitled to benefits hereunder, the Trustee may withhold payment until such dispute is resolved by a court of competent jurisdiction or, at the discretion of the Committee, is settled by written stipulation of the parties concerned.

Section 5.03 <u>Excessive Payments</u>. If the payment of any benefit under the Plan is determined to have been excessive or improper, and the recipient thereof fails to make repayment to the Trustee or Trustee's agent of such excessive or improper payment upon the Trustee's request, the Trustee shall deduct the amount of such excessive or improper payment from any other benefits thereafter payable to such person. Until repaid to the Trustee or Trustee's agent, the amount of said excessive or improper payment shall not be included in the Trust Fund.

## Article VI
## TRUSTEE POWERS AND DUTIES

Section 6.01 <u>Powers of the Trustee</u>. The Trustee shall have the following powers in addition to the powers customarily vested in trustees by law, provided however, that the Trustee's powers with respect to the investment or disposition of assets held in the Trust Fund shall be subject to

6

(i) the funding policy established by the Committee and communicated to the Trustee under Section 10.03 hereof, (ii) any investment guidelines established by the Committee and communicated and acceptable to the Trustee under Section 10.04 hereof, and (iii) the instructions of any Investment Manager appointed pursuant to Section 10.05 hereof.

(a)    With any cash at any time held by it, to purchase or subscribe for any Authorized Investment, and to retain such Authorized Investment in the Trust Fund;

(b)    To sell for cash or, with the consent of the Committee, on credit, convert, redeem, exchange for another Authorized Investment, or otherwise dispose of, any Authorized Investment at any time held by it;

(c)    To retain uninvested all or any part of the Trust Fund, which shall be deposited in an interest-bearing account in any banking or savings institution, including an account established in the name of the Trustee if the Trustee is a depository institution;

(d)    To exercise any option appurtenant to any Authorized Investment in which the Trust Fund is invested for conversion thereof into another Authorized Investment, or to exercise any rights to subscribe for additional Authorized Investments, and to make all necessary payments thereof;

(e)    To join in, consent to, dissent from or oppose the reorganization, recapitalization, consolidation, sale, merger, foreclosure, or readjustment of the finances of any corporations, entities or properties in which the Trust Fund may be invested, or the sale, mortgage, pledge, or lease of any such property or the property of any such corporation or entity on such terms and conditions as the Trustee may deem wise; to do any act (including the exercise of options, making of agreements or subscriptions, and payment of expenses, assessments, or subscriptions) which may be deemed necessary or advisable in connection therewith, and to accept any Authorized Investment which may be issued in or as a result of any such proceeding, and thereafter to hold the same;

(f)    To vote, in person or by general or limited proxy, at any election of any corporation in which the Trust Fund is invested, and similarly to exercise, personally or by a general or limited power of attorney, any right appurtenant to any Authorized Investment held in the Trust Fund;

(g)    To purchase any Authorized Investment at a premium or a discount;

(h)    Upon instruction from the Committee, to employ for the benefit of the Trust Fund suitable agents, actuaries, accountants, investment counselors, legal counsel and consultants, and to pay their reasonable expenses and compensation;

(i)    To purchase, to sell, to exercise, to allow to expire without exercise, and to honor the exercise of, options to purchase or sell stock, commodities or other assets subject to such options;

(j)    With the consent of the Committee, to borrow, raise or lend moneys, for the purposes of the Trust in such amounts and upon such terms and conditions as the Trustee, in its absolute discretion, may deem advisable, and for any such moneys so borrowed, to issue its promissory

note as Trustee and to secure the repayment thereof by pledging or mortgaging all or any part of the Trust Fund, provided that no person lending money to the Trustee shall be bound to see to the application of the money lent or to inquire into the validity, expediency or propriety of any such borrowing;

(k)    To cause any Authorized Investment in the Trust Fund to be registered in, or transferred into, its name as Trustee or the name of its nominee or nominees, or to retain such investments unregistered in a form permitting transfer by delivery, but the books and records of the Trustee shall at all times show that all such investments are part of the Trust Fund, and the Trustee shall be fully responsible for any misappropriation in respect of any investment held by its nominee or held in unregistered form and shall cause the indicia of ownership to be maintained within the jurisdiction of the district courts of the United States, except as may otherwise be permitted under regulations promulgated by the Secretary of Labor pursuant to ERISA; provided that no Investment Manager shall direct the Trustee to invest in or hold securities that could cause the Trust to maintain indicia of ownership in violation of section 404(b) of ERISA or the regulations promulgated thereunder;

(l)    To do all acts which it may deem necessary or proper and to exercise any and all powers of the Trustee under this Trust Agreement upon such terms and conditions as it may deem to be in the best interests of the Trust;

(m)    To apply for, purchase, hold, transfer, pay premiums on, surrender, and exercise all incidents of ownership of any insurance contract, any guaranteed income, guaranteed investment, and similar contracts which it is properly directed to purchase;

(n)    To invest in units of any common or collective trust fund, mortgage or other asset pool, or short term investment fund operated by the Trustee exclusively for the purpose of investment of assets of employee benefit plans exempt from income taxation under Section 501 of the Code, and at any time at which any assets of the Trust Fund are so invested, the trust agreement or other instrument governing such common or collective trust fund, mortgage or asset pool, or other investment fund shall be deemed incorporated herein and made a part hereof, as though set forth at length in this Trust Agreement;

(o)    Upon instruction from the Committee, to begin, maintain or defend any litigation necessary in connection with the administration of the Plan or the Trust, except that the Trustee shall not be obligated or required to do so unless it has been indemnified to its satisfaction against all expenses and liabilities sustained or anticipated by it by reason thereof;

(p)    To pay any income or other tax or estimated tax, charge or assessment attributable to any property or benefit out of such property or benefit in its sole discretion, or any tax on unrelated business income of the Trust, if any, out of the Trust Fund;

(q)    To retain any funds or property subject to any dispute without liability for payment of interest, or decline to make payment or delivery thereof until final and unappealed adjudication is made by a court of competent jurisdiction;

(r)    Upon instruction from the Committee, to grant consents, take actions and otherwise implement the rights of the Trustee under the Plan;

8

(s)    With the consent of the Committee, to act in any jurisdiction where permitted by law to do so or to designate one or more persons, or a bank or trust company, to be ancillary trustee in any jurisdiction in which ancillary administration may be necessary, to negotiate and determine the compensation to be paid to any such ancillary trustee, and to pay such compensation out of principal or income or both, and such ancillary trustee shall be granted with respect to any and all property subject to administration by it all of the powers, authorities and discretion granted in this Trust Agreement to the Trustee, provided, however, that such action as may require the investment of additional funds or the assumption of additional obligations shall not be undertaken without the written consent of the Trustee; and

(t)    To cooperate with the Participating Unions in obtaining any judicial or regulatory approvals or relief necessary or appropriate for the Trust.

Section 6.02 <u>Title to Trust Fund</u>.  All rights, title and interest in and to the Trust Fund shall at all times be vested exclusively in the Trustee.

Section 6.03 <u>Standard of Care</u>.  The Trustee shall discharge its duties solely in the interests of Participants and for the exclusive purpose of providing benefits to Participants and defraying reasonable expenses of administering the Trust and the Plan.  The Trustee shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in conduct of an enterprise of like character and with like aims, consistent with the provisions of ERISA and the Code.  Subject to the provisions of ERISA, the Trustee will be under no liability or obligation to anyone with respect to any failure of the Committee to perform any of its obligations under the Plan or Trust Agreement or for any error or omission of the Committee.

Section 6.04 <u>Determination of Rights</u>.  The Trustee shall have no power, authority, or duty hereunder in respect to the determination of the eligibility of any person to coverage under the Plan or the entitlement of any person to any benefit payments under the Plan.

Section 6.05 <u>Continuance of Plan</u>.  Neither the Committee, Trustee, nor the Participating Unions assume any contractual obligation as to the continuance of the Plan and shall not be responsible for the adequacy of the Trust Fund to meet and discharge any liabilities under the Plan, and the Trustee's obligation to make any payment shall be limited to amounts held in the Trust Fund at the time of the payment.

Section 6.06 <u>Payment of Expenses.</u> The Trustee shall apply the assets of the Trust Fund to pay all reasonable costs, charges, and expenses (including, but not limited to, all brokerage fees and transfer tax expenses and other expenses incurred in connection with the sale or purchase of investments, all real and personal property taxes, income taxes and other taxes of any kind at any time levied or assessed under any present or future law upon, or with respect to, the Trust Fund or any property included in the Trust Fund and all legal, actuarial, accounting and financial advisory expenses) reasonably incurred (and where applicable previously approved) by the Trustee or the Committee in connection with establishment, amendment, administration and operation of the Trust or Plan, unless such amounts are otherwise paid by the Company pursuant to the Settlement Agreement or a subsequent collective bargaining agreement.  The Committee shall by written certificate provided to the Trustee request payment for any expenses related to

9

the administration of the Trust.  Upon receipt of the written certificate, the Trustee may make the payment requested by the Committee.  The expenses of the Trustee shall constitute a lien on the Trust Fund.  In causing the Trust Fund to pay expenses pursuant to this Section 6.06, the Committee shall be acting in its fiduciary capacity with respect to the Plan or Trust.

Section 6.07 <u>Trustee Compensation</u>.  The Trustee will apply the assets of the Trust Fund to pay its own fees in the amounts and on the dates set forth in Exhibit A, unless such amounts are otherwise paid by the Company pursuant to the Settlement Agreement or a subsequent collective bargaining agreement.  The Trustee's compensation shall constitute a lien on the Trust Fund.

Section 6.08 <u>Consultation</u>.  The Trustee may engage or consult with counsel or other advisors and may take or may refrain from taking any action in accordance with or reliance upon the opinion of counsel or such expert advisors.

Section 6.09 <u>Reliance on Written Instruments</u>.  The Trustee shall be fully protected in acting upon any instrument, certificate or paper reasonably believed by it to be genuine and to be signed or presented by a duly authorized person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the truth and accuracy of the statements therein contained.

Section 6.10 <u>Bonding</u>.  The Trustee shall be bonded in the amount required by section 412 of ERISA and may be covered by liability insurance in accordance with section 410(b) of ERISA.  To the extent permitted by applicable law, the costs of such bonding and insurance shall be expenses paid by the Trustee out of the assets of the Trust Fund under Section 6.06, unless such amounts are otherwise paid by the Company pursuant to the Settlement Agreement or a subsequent collective bargaining agreement.

**Article VII**
**TRUST ACCOUNTS**

Section 7.01 <u>Accounts</u>.  In the event that the Committee so determines, the Trustee shall establish and maintain separate recordkeeping accounts for each Eligible Retiree at such time as the Committee determines.  However, the assets of the Trust will not be physically segregated into any such Participant accounts.

Section 7.02 <u>Records</u>.  The Trustee shall maintain accurate and detailed records and accounts of all investments, receipts, disbursements, and other transactions with respect to the Trust, and all accounts, books and records relating thereto shall be open at all reasonable times to inspection and audit by the Committee or such person or persons as the Committee may designate.

Section 7.03 <u>Annual Audit</u>.  The Committee shall appoint an auditor to conduct an annual audit of the Trust Fund, a statement of the results of which shall be provided to each of the Participating Unions and the Trustee and also made available for inspection by interested persons at the principal office of the Trust.

Section 7.04 <u>No Interest by Participants</u>.  In no event shall any Participant have any interest in any specific asset of the Trust Fund.  At no time shall any account or separate fund be considered a savings account or investment or asset of any particular Participant, or class of Participants,

10

and no Participant shall have any right to any particular asset which the Committee or Trustee may have allocated to any account or separate fund for accounting purposes.

Section 7.05 <u>Furnishing Written Accounts</u>. The Trustee shall file with the Committee a written account setting forth a description of all securities and other property purchased and sold, and all receipts, disbursements, and other transactions effected by it during the accounting period to which the Committee and the Trustee have agreed, and showing the securities and other properties held, and their fair market values at such times and as of such dates as may be agreed by the Committee and the Trustee in writing. Such written account shall be filed with the Committee within thirty (30) days after the close of each calendar quarter.

Section 7.06 <u>Accounting Year, Cash Basis</u>. The accounting year of the Trust shall be the calendar year. All accounts of the Trustee shall be kept on a cash basis.

Section 7.07 <u>Judicial Proceedings</u>. If the Trustee and the Committee cannot agree with respect to any act or transaction reported in any statement, the Trustee shall have the right to have its accounts settled by judicial proceedings in which only the Trustee and the Committee shall be necessary parties. Subject to the provisions of ERISA, the Trustee shall not be required to file, and no Participant shall have any right to compel, an accounting, judicial or otherwise, by the Trustee.

**Article VIII**
**PROCEDURES FOR THE TRUSTEE**

Section 8.01 <u>Removal</u>. The Trustee may be removed by the Committee at any time upon thirty (30) days' advance written notice. Such removal shall be effective on the date specified in such written notice, provided that notice has been given to the Trustee of the appointment of a successor Trustee in the manner set forth in Section 8.03 below.

Section 8.02 <u>Resignation</u>. The Trustee may resign by filing with the Committee a written resignation that shall take effect sixty (60) days after the date of such filing or such earlier date that a successor Trustee has been appointed by the Committee. In no event may the Trustee's resignation take effect before a successor Trustee has been appointed. If the Committee fails to appoint a successor Trustee, the retiring Trustee may seek the appointment of a successor Trustee in the manner set forth in Section 8.03.

Section 8.03 <u>Successor Trustee</u>. The Committee may appoint a successor Trustee by delivering to the successor Trustee an instrument in writing, executed by an authorized representative of the Committee, appointing such successor Trustee, and by delivering to the removed or resigning Trustee an acceptance in writing, executed by the successor Trustee so appointed. Such appointment shall take effect upon the date specified in Section 8.01 or 8.02 above, as applicable. If no appointment of a successor Trustee is made by the Committee within a reasonable time after such resignation, removal or other event, any court of competent jurisdiction may, upon application by the retiring Trustee, appoint a successor Trustee after such notice to the Committee and the retiring Trustee, as such court may deem suitable and proper.

Section 8.04 <u>Amendment to Trust Document for Successor Trustee</u>. The Committee may appoint a successor Trustee by securing from the successor Trustee an amendment to this Trust

11

Agreement, executed by both the successor Trustee and an authorized representative of the Committee, which replaces the current Trustee with the successor Trustee, appointing such successor Trustee, and by delivering to the removed or resigning Trustee an executed copy of the amendment. Such appointment shall take effect upon the date specified in the amendment.

Section 8.05 Effect of Removal or Resignation of Trustee. Upon the removal or resignation of the Trustee in accordance with Section 8.01 or 8.02 above, the Trustee shall be fully discharged from further duty or responsibility under this Trust Agreement to the extent permitted by law.

Section 8.06 Merger or Consolidation of the Trustee. Any corporation continuing as the result of any merger or resulting from any consolidation, to which merger or consolidation the Trustee is a party, or any corporation to which substantially all the business and assets of the Trustee may be transferred, will be deemed to be continuing as the Trustee.

### Article IX
### PROCEDURES FOR COMMITTEE

Section 9.01 Composition of Committee. The Committee shall comprise five individual persons, consisting of three (3) USW Members and two (2) IAM Members. No Member of the Committee shall be a current or former officer, director or salaried employee of the Company. The initial Committee Members are named in this Trust Agreement.

Section 9.02 Term of Office. Each Member shall continue to serve as such until his or her death, incapacity to serve hereunder, resignation or removal.

Section 9.03 Resignation. A Member may resign, and shall be fully discharged from further duty or responsibility under this Trust Agreement to the extent permitted by law, by giving at least thirty (30) days' advance written notice to the Committee (or such shorter notice as the Committee may accept as sufficient) stating a date when such resignation shall take effect. Such resignation shall take effect on the date specified in the notice or, if a successor Member has been appointed effective as of an earlier date, on such earlier date.

Section 9.04 Removal and Successor Committee Members.

(a)    The USW Members shall serve at the discretion of the USW International President, and may be removed or replaced, and a successor designated, at any time by written notice from the USW International President to the Committee.

(b)    The IAM Members shall serve at the discretion of the IAM International President, and may be removed or replaced, and a successor designated, at any time by written notice from the IAM International President to the Committee.

(c)    If no appointment of a successor Member is made within a reasonable time after his or her resignation, removal or other event, any court of competent jurisdiction may, upon application by any remaining Member, appoint a successor Member to the Committee as such court may deem suitable and proper.

12

Section 9.05 <u>Chair</u>.  The Committee shall select a chair from among its Members (the "Chair").  The term of the Chair will continue until he or she ceases to be a Member, resigns as Chair or is replaced as Chair with another Member by the remaining Members.

Section 9.06 <u>Fees and Expenses</u>.  Members shall not be eligible to receive compensation for service as a Member.  The prohibited compensation described in this Subsection 9.06, shall not include reimbursements for reasonable expenses properly and actually incurred in the performance of a Member's duties pursuant to this Trust Agreement.

Section 9.07 <u>Meetings</u>.

(a)    The Committee shall hold meetings as frequently as is necessary to ensure the efficient administration of the Trust and Plan and shall hold a minimum of ___ meetings during each calendar year. The Chair, or any three Members, may call a special meeting of the Committee by giving at least five days' advance written notice of the time and place thereof to all other Members.

(b)    The Chair, or another such individual or individuals so designated by the Chair, (i) shall preside over Committee meetings; (ii) prepare the Committee meeting agenda; (iii) oversee Trust operations between Committee meetings and report to the Committee on such operations; and (iv) perform such other functions as the Committee determines.

(c)    One Member, or another individual so designated, shall maintain minutes of all Committee meetings, but such minutes need not be verbatim.  Copies of such minutes shall be provided to all Members and to such other parties as the Committee may designate.

Section 9.08 <u>Place of Meeting; Telephonic Meetings</u>.  Meetings of the Committee may be held at any place designated in the notice of meeting.  Meetings of the Committee may be held through any communications equipment if all persons participating can hear each other, and such participation in a meeting is presence at the meeting.

Section 9.09 <u>Quorum</u>.  A majority of the Members of the Committee then in office shall constitute a quorum for the purpose of transacting any business.

Section 9.10 <u>Vote of the Members</u>.

(a)    Each Member shall have one vote.  Except as otherwise specified in this Trust Agreement, all action of the Committee shall be by majority vote of those present, at a meeting at which a quorum is present.

(b)    In addition to decisions made at meetings, actions may be taken without a meeting by unanimous written consent of each of the Members.

(c)    In the event of an issue concerning administration or operation of the Trust or Plan results in an even split of votes among the Committee Members, any Committee Member may refer the issue to arbitration pursuant to the procedures established from time to time by the Committee.  The determination of the arbitrator shall be final and binding on all parties to the Trust.  The costs and expenses of such arbitration (including attorneys' fees for separate counsel for

13

Members on each side of the issue) shall be paid from the Trust unless paid by any other source, or unless otherwise ordered by the arbitrator. The arbitrator's decision must be consistent with the terms of the Trust and, if the dispute concerns an amendment to the Trust, the arbitrator may not issue a decision contrary to the terms of Section 11.01 hereof.

## Article X
## POWERS AND DUTIES OF THE COMMITTEE

Section 10.01 <u>General</u>. The Committee shall be responsible for the establishment, management and overall operation and administration of the Trust and the Plan. Subject to the provisions of this Trust Agreement and applicable laws, the Committee shall have sole, absolute and discretionary authority to adopt such rules and regulations and take all actions that it deems desirable for the administration of the Trust, and to interpret the terms of the Plan and Trust. The decisions of the Committee will be final and binding on all Participants and all other parties to the maximum extent allowed by law.

Section 10.02 <u>Plan Benefits</u>.

(a)      <u>Adoption of Plan</u>. The Committee shall adopt a Plan to offer retiree health and welfare benefits to Participants. Subject to Section 10.02(b), the Committee shall have the sole discretion to determine the terms of the Plan, provided, however, that such terms shall be consistent with the relevant provisions of this Trust Agreement, including, without limitation, the eligibility provisions of Section 2.01. The Committee shall be under no obligation to design the Plan to assure that the assets of the Trust Fund be sufficient to continue to provide benefits to current and potential Participants of the Plan in subsequent years.

(b)      <u>Benefits</u>. The benefits provided under the Plan shall be limited to those medical and welfare benefits permitted under section 501(c)(9) of the Code, section 3(1) of ERISA, and section 302(c) of the LMRA.

Section 10.03 <u>Funding Policy</u>. The Committee will establish a funding policy for the Plan and communicate that funding policy to the Trustee.

Section 10.04 <u>Investment Guidelines</u>. The Committee may establish investment guidelines for managing (including the power to acquire and dispose of) all or any part of the Trust Fund and communicate that policy to the Trustee.

Section 10.05 <u>Appointment of Investment Managers</u>. The Committee may appoint one or more Investment Manager(s) to manage all or part of the Trust Fund and enter into an agreement with the Investment Manager(s). If an Investment Manager is appointed, it shall have the authority of the Trustee specified in Section 6.01 hereof with respect to the portion of the Trust Fund over which it has investment discretion and the Trustee's duties with respect to that portion of the Trust Fund shall be limited to following the instructions of the Investment Manager.

Section 10.06 <u>Government Reports and Returns</u>. The Committee or its designee shall file all reports and returns, including but not limited to, any IRS Form 5500 series and IRS Form 990 series that are required to be made with respect to the Trust and the Plan.

14

Section 10.07 <u>Compromise or Settle Claims</u>. The Committee may compromise, settle and release claims or demands in favor of or against the Trust or the Committee on such terms and conditions as the Committee may deem advisable.

Section 10.08 <u>Appointment of Administrator, Delegation of Authority</u>. The Committee may appoint a Third Party Administrator to perform any functions assigned to it by the Committee. The Committee may by adoption of a written resolution delegate to any one or more Members the authority to act on behalf of the full Committee to the extent set forth in the resolution.

Section 10.09 <u>Consultation</u>. The Committee may engage or consult with counsel or other advisors and, in accordance with the provisions of Section 6.06 hereof, may direct the Trustee to pay reasonable compensation therefor from the Trust Fund and may take or may refrain from taking any action in accordance with or reliance upon the opinion of counsel or such expert advisors.

Section 10.10 <u>Reliance on Written Instruments and Company Records</u>. Each Member of the Committee shall be fully protected in acting upon any instrument, certificate or paper, or record supplied by the Company believed by him or her to be genuine and to be signed or presented by a duly authorized person or persons, and shall be under no duty to make any investigation or inquiry as to any statement contained in any such writing, but may accept the same as conclusive evidence of the authenticity, truth, and accuracy of the statements therein contained.

Section 10.11 <u>Standard of Care</u>. The Committee shall discharge its duties in the interests of Participants and for the exclusive purpose of providing benefits to such Participants and defraying reasonable expenses of administering the Trust and the Plan. The Committee shall act with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, consistent with the provisions of ERISA and the Code. To the extent permitted under ERISA, the Committee's discretion is limited by the terms of this Trust Agreement.

Section 10.12 <u>Bonding</u>. The Members of the Committee shall be bonded in the amount required by Section 412 of ERISA and may be covered by liability insurance in accordance with Section 410(b) of ERISA. To the extent permitted by applicable law, the costs of such bonding and insurance shall be expenses paid by the Trustee under Section 6.06, unless such costs are otherwise paid by the Company pursuant to the Settlement Agreement or a subsequent collective bargaining agreement.

Section 10.13 <u>Discretionary Authority</u>. Except as the Committee's powers are limited by specific provisions of this Trust Agreement, the Committee shall have the exclusive right, power, and authority, in their sole and absolute discretion, to administer, apply and interpret this Trust Agreement, the Plan and any other Plan documents, their own motions, resolutions, administrative rules and regulations, contracts, or instruments and to decide all matters arising in connection with the operation or administration of the Trust or Plan. Benefits under this Plan will be paid only if the Committee or its delegate decides in its discretion that the applicant is entitled to them. Without limiting the generality of the foregoing, the Committee shall have the sole and absolute discretionary authority to: (a) take all actions and make all decisions with

15

respect to the eligibility for, and the amount of, benefits payable under the Plan, (b) formulate, interpret and apply rules. regulations and policies necessary to administer the Plan in accordance with its terms, (c) decide questions, including legal or factual questions, relating to the calculation and payment of benefits under the Plan, (d) determine the standard of proof and the sufficiency of evidence as to any factual question arising under the Plan, (e) resolve and/or clarify any ambiguities, inconsistencies and omissions arising under the Plan or other Plan documents, (f) process, and approve or deny benefit claims and rule on any benefit exclusions, and (g) settle or compromise disputed claims made by or against the Plan on such terms as the Committee determines to be in the best interest of the Participants.  All determinations made by the Committee or its designee with respect to any matter arising under the Trust or Plan and any other Plan documents shall be final and binding on all affected parties, including without limitation Participants, and any other persons who have claims against the Trust Fund and the Plan through any of them.  In the event that the terms of the Plan are inconsistent with the terms of this Trust Agreement, the Trust Agreement controls.

Section 10.14 <u>Subrogation and Reimbursement</u>.

(a)    If the Trust Fund pays Benefits to or for any Participant for any injury, illness, expense or loss, the Trust Fund will be subrogated to the full extent of such payments to all rights of the Participant or any assignee of either of them against any person, firm, corporation or other entity in connection with any claim related to the injury, illness, expense or loss.

(b)    If the Trust Fund pays Benefits to or for any Participant for any injury, illness, expense or loss caused, or alleged to be caused, by any person, and the Participant (or someone acting on behalf of the Participant) or any assignee of either of them obtains any recovery from any source in connection with the injury, illness, expense or loss, whether by lawsuit, settlement or otherwise, including any recovery from the Participant's insurance, and regardless of how the recovery is characterized or named, the Trust Fund shall be entitled to full reimbursement from the Participant (or person acting on behalf of the Participant) or any assignee of either of them to the full extent of the Trust Fund's payments.

(c)    The Trust Fund's rights of subrogation and reimbursement shall have first priority and shall not be reduced for any reason, including for attorneys fees, even if the Participant (or person acting on behalf of the Participant) or any assignee of either of them is not "made whole" for his or their loss, unless the Committee or the Committee's designee determines, in the exercise of its role and absolute discretion, to reduce the Trust Fund's recovery in appropriate circumstances, which may include, with respect to attorneys fees, a condition that the attorney representing the Participant, or assignee, has agreed in advance to honor the rights of the Trust Fund with respect to subrogation and reimbursement contained herein.

(d)    Prior to payment by the Trust Fund to or for any Participant (or someone acting on behalf of the Participant) for any injury, illness, expense or loss caused. or alleged to have been caused, in circumstances that may support a recovery from any person, the Participant (or other adult acting on behalf of a minor Beneficiary) will be asked to execute a subrogation and reimbursement agreement consistent with the terms of this Trust Agreement.  Failure to request or obtain such an agreement prior to the payment by the Trust Fund shall not in any way diminish the Trust Fund's rights of subrogation and reimbursement herein.

16

(e)    The Participant shall do nothing to prejudice the Trust Fund's rights under this Trust Agreement and shall promptly inform the Trust Fund of the name and address of any attorney representing the Participant or assignee. The Participant shall assist the Trust Fund upon request, including instituting legal proceedings against any appropriate persons, firms, corporations or entities.

(f)    In the event that the Trust Fund is not fully reimbursed as set out in this Trust Agreement, the Trust Fund shall have the right, as the Committee or the Committee's designee may determine, in the exercise of its sole and absolute discretion, to reduce any benefits to which the Participant or assignee is or subsequently may become entitled, by the amount not reimbursed to or recovered by the Fund.

Section 10.15 Reimbursement for Defense of Claims. To the extent permitted by applicable law and not otherwise covered by liability insurance purchased by the Trust (without regard to any non-recourse rider purchased by the insured), the Committee, Members, employees of the Committee and persons acting on the Committee's behalf pursuant to an express written delegation (each separately, the "Indemnified Party") shall be reimbursed by the Trust Fund for reasonable expenses, including without limitation attorneys fees, incurred in defense of any claim that seeks a recovery of any loss to the Plan or Trust Fund or for any damages suffered by any party to, or beneficiary of this Trust Agreement (a) for which the Indemnified Party is adjudged not liable, or (b) which is dismissed or compromised in a final settlement, where the Committee – or, where required by applicable law, an independent fiduciary – determines that the settling Indemnified Party was not primarily responsible (in such cases, all or only a portion of the settling Indemnified Party's reasonable expenses may be reimbursed, as directed by the Committee or an independent fiduciary), provided that, the Committee shall have the right to approve of the retention of any counsel whose fees would be reimbursed by the Trust Fund, but such approval shall not be withheld unreasonably.

## ARTICLE XI
## AMENDMENT, TERMINATION AND MERGER

Section 11.01 Amendment. The Trust Agreement may be amended at any time in writing by the Committee, provided that (a) no amendment may alter the Company's contribution obligations or assign any liability to the Company, (b) no amendment shall adversely affect the exempt status of the Trust or Plan under section 501(c)(9) of the Code, or (c) no amendment shall modify Article IX or this Article XI. No amendment to the Trust Agreement shall modify the responsibilities of the Trustee hereunder unless the Trustee has first consented to such amendment.

Section 11.02 Termination.

(a)    The Trust and this Trust Agreement may be terminated at any time in writing by the Committee with a copy of such written instrument to be provided to the Trustee. Upon termination of this Trust Agreement, the assets of the Trust Fund shall be paid out at the direction of the Committee in the following order of priority: (i) the payment of reasonable and necessary administrative expenses (including taxes), unless such amounts are otherwise paid by the Company pursuant to the Settlement Agreement or a subsequent collective bargaining

17

agreement; (ii) the payment of benefits to Participants entitled to payments for claims arising prior to such termination; (iii) at the discretion of the Committee, used in accordance with Section 501(c)(9) of the Code and ERISA, for the benefit of such group of Participants in such fashion as the Committee determines including, without limitation, through a merger of the Trust with another trust or other entity maintained for like purposes; and (iv) for charitable purposes. The Company, any Participating Union or the Committee shall have no beneficial interest in the Trust Fund. The Trust Fund shall remain in existence until all assets have been distributed.

(b)    Upon termination, the Committee and the Trustee shall continue to have all of the powers provided in this Trust Agreement as are necessary or desirable for the orderly liquidation and distribution of the Trust Fund in accordance with the provisions hereof.

Section 11.03 <u>Transfer of Assets and/or Liabilities</u>. To the extent permitted by applicable law, some or all of the assets and/or liabilities of the Trust Fund may at the discretion of the Committee be transferred directly to another trust for the purpose of providing health or welfare benefits to some or all of the Participants on such terms and conditions as the Committee may determine.

Section 11.04 <u>Merger of Trusts or Transfer of Assets</u>. In addition to the powers of the Committee pursuant to Sections 11.02 and 11.03 to merge the Trust or to transfer Trust assets to another trust, the Committee may merge or accept transfers of assets from other trusts into the Trust, provided that the assets attributable to Participants are separately accounted for and are used solely on their behalf. In the event that the Committee exercises any such powers involving mergers or transfers of assets to or from other trusts, the Committee shall separately account for, and prohibit the use of, contributions to the Trust made or remitted by the Company for any purposes other than providing benefits and defraying administrative costs with respect to Participants upon retirement.

## ARTICLE XII
## MISCELLANEOUS

Section 12.01 <u>Rights in Trust Fund</u>. No Participant or other person shall have any right, title or interest in the Trust Fund or any legal or equitable right against the Trustee, the Committee, the Participating Unions or the Company, except as may be otherwise expressly provided in the Plan or in this Trust Agreement.

Section 12.02 <u>Non-Alienation</u>. Except to the extent required by applicable law, the rights or interest of any Participant to any benefits or future payments hereunder or under the provisions of the Plan shall not be subject to attachment or garnishment or other legal process by any creditor of any such Participant, nor shall any such Participant have any right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he may expect to receive, contingent or otherwise, under this Trust Agreement.

Section 12.03 <u>Controlling Laws</u>. The Trust shall be construed and the terms hereof applied according to the laws of the Commonwealth of Pennsylvania to the extent not superseded by federal law

18

Section 12.04 <u>Counterparts</u>. This Trust Agreement may be executed in any number of counterparts, each of which shall be considered as an original.

Section 12.05 <u>Headings</u>. The headings and subheadings of this Trust Agreement are for convenience of reference only and shall have no substantive effect on the provisions of this Trust Agreement.

Section 12.06 <u>Notices</u>.  All notices, requests, demands and other communications under this Trust Agreement shall be in writing and shall be deemed to have been duly given (i) on the date of receipt if served personally or by confirmed facsimile or other similar communication; (ii) on the first business day after sending if sent for guaranteed next day delivery by Federal Express or other next-day courier service; or (iii) on the fourth business day after mailing if mailed to the party or parties to whom notice is to be given by registered or certified mail, return receipt requested, postage prepaid, and properly addressed as follows:

If to the Trustee:

_____

_____

_____

_____

If to the Committee:

    Committee of the Participating Union GM Bankruptcy Claim Health Care
    Reimbursement Trust
    Five Gateway Center
    Pittsburgh, PA 15222

IN WITNESS WHEREOF, and as evidence of the establishment of the Trust created hereunder, the parties hereto have caused this instrument to be effective as of the date above first written.

COMMITTEE OF THE PARTICIPATING UNION GM BANKRUPTCY CLAIM HEALTH CARE REIMBURSEMENT TRUST

<u>USW MEMBERS</u>

_____          Dated: _____
Darrell Collins

_____          Dated: _____
David McLean

_____          Dated: _____
Sara Restauri

<u>IAM MEMBERS</u>

_____          Dated: _____
Steven Ellicott

_____          Dated: _____
Karl Heim

<u>TRUSTEE</u>

By:    _____

       _____
       Print Name

       _____
       Title
Dated: _____

20

## Exhibit A

**[Trustee's fees]**

**Exhibit B**

[account credit schedule]

**EXHIBIT B**

## TRANSFER OF CLAIM AGREEMENT

The United Steel, Paper, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CCC ("USW"), having a mailing address of Five Gateway Center, Pittsburgh, PA 15222 ("Assignor"), in consideration of the promises made herein, does hereby sell, convey, transfer and assign to Participating Union GM Bankruptcy Claim Health Care Reimbursement Trust, ("Assignee") all of Assignor's right, title and interest in and to the claim or claims of Assignor (the "Claim") subject only to court approval as set forth below, the general unsecured claim arising in the course of the Chapter 11 bankruptcy case entitled, *In re: Motors Liquidation Company, et al, f/k/a General Motors Corp. et al.,* Case No. 09-50026 (REG) in which USW was granted an allowed pre-petition unsecured claim pursuant to Section 1114 of the Bankruptcy Code, 11 U.S.C § 1114 in the amount of its proportionate share (*i.e.,* 14.73%) of one billion dollars ($1,000,000,000) against the General Motors Company and/or Motors Liquidation Company (the "Debtor").

This sale, conveyance, transfer and assignment includes all rights and benefits of Assignor relating to the Claim, including without limitation the Claim identified above and Assignor's rights to receive any principal, interest, penalties and fees which may be paid or issued by the Debtor in satisfaction of the Claim. This Assignment shall be deemed an absolute and unconditional assignment of the Claim for purposes of collection and shall not be deemed to create a security interest.

Assignor represents and warrants that: (i) the Claim is valid; (ii) the Claim has been allowed; and (iii) no objection to the Claim exists. Assignor further represents and warrants that: (i) no payment has been received by Assignor, or by any third party claiming through Assignor, in full or partial satisfaction of the Claim; (ii) Assignor has not previously assigned, sold or pledged the Claim to any third party, in whole or in party; (iii) Assignor owns and has title to the Claim free of any and all liens, security interests or encumbrances of any kind or nature whatsoever; and (iv) there are no offsets or defenses that have been or may be asserted by or on behalf of the Debtor or any other party to reduce the amount of the Claim or to impair its value.

Assignee is a trust intended to qualify as a voluntary employees' beneficiary association ("VEBA") under Section 501(c)(9) of the Internal Revenue Code. Assignor acknowledges that it has been provided a copy of the Assignee's trust agreement and has no objection to its terms.

Assignee agrees in consideration of the assignment of this claim by the Assignor to include as participants in the Participating Union GM Bankruptcy Claim Health Care Reimbursement Trust USW represented retirees of General Motors Corporation ("GM") that are eligible to be included within the retiree group set forth in paragraph 3 (entitled "Claims in MLC's Chapter 11 Case") of the Settlement Agreement Between And Among GMCO/MLC-IUE-CWA and USW Regarding Retiree Health Care, Life Insurance, Pension Top-Up, and Modification and GMCO Assumption Of MLC-IUE-CWA CBA (the "Settlement Agreement") approved by the Court on November 12,

2009, that is, individuals who, as of December 31, 2009, were eligible for coverage under the federal Medicare program and had retired from a position covered by a collective bargaining agreement between GM and USW with the right to receive post-employment medical benefits from GM ("the included USW retirees").

Assignee further agrees that the included USW retirees will be provided benefits and otherwise treated on the same basis as other participants in the Assignee and will not be subject to any requirements or obligations that are not equally imposed on other similarly situated USW represented participants in the Assignee.

Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's stead to demand, sue for, compromise and recover all amounts as now are, or may hereafter become, due and payable for or on account of the Claim assigned herein. Assignor grants unto Assignee full authority to do all things necessary to enforce the Claim and its rights thereunder pursuant to this Assignment of Claim. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action or to prove or defend the Claim's validity or amount in the Proceedings. Assignor agrees to take such further action, at its own expense, as may be necessary or desirable to effect the assignment of the Claim and the payments or distributions on account of the Claim to Assignee including, without limitation, the execution of appropriate transfer powers, court resolutions and consents.

Assignor agrees that any distribution received by Assignor on account of the Claim, whether in the form of cash, securities, instruments or any other property, shall constitute property of Assignee to which Assignee has an absolute right, and that Assignor will hold such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee.

The terms of this Assignment of Claim shall be binding upon, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns.

Assignor hereby acknowledges that Assignee may at any time reassign the Claim, together with all right, title and interest of Assignee in and to this Assignment of Claim. All representations and warranties made herein shall survive the execution and delivery of this Assignment of Claim and any such reassignment. This Assignment of Claim may be executed in counterparts and all such counterparts taken together shall be deemed to constitute a single agreement.

This Assignment of claim shall be governed by and construed in accordance with the laws of the State of New York. Any action arising under or relating to this Assignment of Claim shall be brought in any state or federal court located in the State of New York, and Assignor consents to and confers personal jurisdiction and venue over Assignor by such court or courts and agrees that service of process may be upon Assignor by mailing a copy of said process to Assignor at the address set

forth in this Assignment of Claim, and in any action hereunder Assignor waives the right to demand a trial by jury.

Assignor and Assignee acknowledge that the assignment of this claim is subject to approval of the Court in *In re: Motors Liquidation Company, et al., f/k/a General Motors Corp. et al.,* Case No. 09-50026 (REG). Assignee shall promptly seek permission of the Court for this transfer upon the execution of this Assignment.

## CONSENT AND WAIVER

Assignor hereby acknowledges and consents to all of the terms set forth in this Assignment of Claim and hereby waives its right to raise any objections thereto and its right to receive notice pursuant to Rule 3001, of the Federal Rules of Bankruptcy Procedure.

IN WITNESS WHEREOF, Assignor has duly executed this Transfer of Claim Agreement by its duly authorized representative this 30 day of March, 2011.

**(Assignor)**
USW

By: _Leo W Gerard_

Name:  Leo W. Gerard

Title:  International President

**(Assignee)**
Participating Union GM Bankruptcy Claim
Health Care Reimbursement Trust

By: _Sara E. Restauri_

Name:  Sara E. Restauri

Title:  Committee Member

**(Assignor)**
Witness:

By _David R. Jury_

Name:  David R. Jury

Title:  Associate General Counsel

## EVIDENCE OF TRANSFER OF CLAIM

The United Steel, Paper, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO-CCC ("USW"), an unincorporated labor association, and its successors and assigns (collectively "Assignor"), pursuant to the Transfer of Claim Agreement dated March __, 2011, has hereby absolutely and unconditional sold, transferred and assigned to Participating Union GM Bankruptcy Claim Health Care Reimbursement Trust, its successors and assigns (collectively "Assignee"), subject only to court approval as set forth below, the general unsecured claim arising in the course of the Chapter 11 bankruptcy case entitled, *In re: Motors Liquidation Company, et al., f/k/a General Motors Corp. et al.*, Case No. 09-50026 (REG) in which USW was granted an allowed pre-petition unsecured claim pursuant to Section 1114 of the Bankruptcy Code, 11 U.S.C. § 1114 in the amount of its proportionate share (*i.e.*, 14.73%) of one billion dollars ($1,000,000,000) against the General Motors Company and/or Motors Liquidation Company (the "Debtor").

Assignor hereby waives any notice or hearings requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing the assignment of this Claim as an unconditional assignment and Assignee as the valid owner of the Claim.

Assignor and Assignee acknowledge that the assignment of claim is subject to approval of the Court in *In re: Motors Liquidation Company, et al., f/k/a General Motors Corp, et al.*, Case No. 09-50026 (REG).

IN WITNESS WHEREOF, Assignor has duly executed this Evidence of Transfer of Claim by its duly authorized representative this 30 day of March, 2011.

**(Assignor)**
USW

By: *Leo W Gerard*

Name:  Leo W. Gerard

Title:  International President

Witness:

By: *David R. Jury*

Name:  David R. Jury

Title:  Associate General Counsel

**(Assignee)**
Participating Union GM Bankruptcy Health Care Reimbursement Trust

By: *Sara E. Restauri*

Name:  Sara E. Restauri

Title:  Committee Member

**EXHIBIT C**

## TRANSFER OF CLAIM AGREEMENT

The International Association of Machinists and Aerospace Workers ("IAM"), having a mailing address of 9000 Machinists Place, Upper Marlboro, MD 20772 ("Assignor"), in consideration of the promises made herein, does hereby sell, convey, transfer and assign to Participating Union GM Bankruptcy Claim Health Care Reimbursement Trust, ("Assignee") all of Assignor's right, title and interest in and to the claim or claims of Assignor (the "Claim") subject only to court approval as set forth below, the general unsecured claim arising in the course of the Chapter 11 bankruptcy case entitled, *In re: Motors Liquidation Company, et al, f/k/a General Motors Corp. et al.,* Case No. 09-50026 (REG) in which IAM was granted an allowed pre-petition unsecured claim pursuant to Section 1114 of the Bankruptcy Code, 11 U.S.C § 1114 in the amount of its proportionate share (*i.e.,* 4.32%) of one billion dollars ($1,000,000,000) against the General Motors Company and/or Motors Liquidation Company (the "Debtor").

This sale, conveyance, transfer and assignment includes all rights and benefits of Assignor relating to the Claim, including without limitation the Claim identified above and Assignor's rights to receive any principal, interest, penalties and fees which may be paid or issued by the Debtor in satisfaction of the Claim. This Assignment shall be deemed an absolute and unconditional assignment of the Claim for purposes of collection and shall not be deemed to create a security interest.

Assignor represents and warrants that: (i) the Claim is valid; (ii) the Claim has been allowed; and (iii) no objection to the Claim exists. Assignor further represents and warrants that: (i) no payment has been received by Assignor, or by any third party claiming through Assignor, in full or partial satisfaction of the Claim; (ii) Assignor has not previously assigned, sold or pledged the Claim to any third party, in whole or in party; (iii) Assignor owns and has title to the Claim free of any and all liens, security interests or encumbrances of any kind or nature whatsoever; and (iv) there are no offsets or defenses that have been or may be asserted by or on behalf of the Debtor or any other party to reduce the amount of the Claim or to impair its value.

Assignee is a trust intended to qualify as a voluntary employees' beneficiary association ("VEBA") under Section 501(c)(9) of the Internal Revenue Code. Assignor acknowledges that it has been provided a copy of the Assignee's trust agreement and has no objection to its terms.

Assignee agrees in consideration of the assignment of this claim by the Assignor to include as participants in the Participating Union GM Bankruptcy Claim Health Care Reimbursement Trust IAM represented retirees of General Motors Corporation ("GM") that are eligible to be included within the retiree group set forth in paragraph 3 (entitled "Claims in MLC's Chapter 11 Case") of the Settlement Agreement Between And Among GMCO/MLC-IUE-CWA and IAM Regarding Retiree Health Care, Life Insurance, Pension Top-Up, and Modification and GMCO Assumption Of MLC-IUE-CWA CBA (the "Settlement Agreement") approved by the Court on November 12,

2009, that is, individuals who, as of December 31, 2009, were eligible for coverage under the federal Medicare program and had retired from a position covered by a collective bargaining agreement between GM and IAM with the right to receive post-employment medical benefits from GM ("the included IAM retirees").

Assignee further agrees that the included IAM retirees will be provided benefits and otherwise treated on the same basis as other participants in the Assignee and will not be subject to any requirements or obligations that are not equally imposed on other similarly situated IAM represented participants in the Assignee.

Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's stead to demand, sue for, compromise and recover all amounts as now are, or may hereafter become, due and payable for or on account of the Claim assigned herein. Assignor grants unto Assignee full authority to do all things necessary to enforce the Claim and its rights thereunder pursuant to this Assignment of Claim. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action or to prove or defend the Claim's validity or amount in the Proceedings. Assignor agrees to take such further action, at its own expense, as may be necessary or desirable to effect the assignment of the Claim and the payments or distributions on account of the Claim to Assignee including, without limitation, the execution of appropriate transfer powers, court resolutions and consents.

Assignor agrees that any distribution received by Assignor on account of the Claim, whether in the form of cash, securities, instruments or any other property, shall constitute property of Assignee to which Assignee has an absolute right, and that Assignor will hold such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee.

The terms of this Assignment of Claim shall be binding upon, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns.

Assignor hereby acknowledges that Assignee may at any time reassign the Claim, together with all right, title and interest of Assignee in and to this Assignment of Claim. All representations and warranties made herein shall survive the execution and delivery of this Assignment of Claim and any such reassignment. This Assignment of Claim may be executed in counterparts and all such counterparts taken together shall be deemed to constitute a single agreement.

This Assignment of claim shall be governed by and construed in accordance with the laws of the State of New York. Any action arising under or relating to this Assignment of Claim shall be brought in any state or federal court located in the State of New York, and Assignor consents to and confers personal jurisdiction and venue over Assignor by such court or courts and agrees that service of process may be upon Assignor by mailing a copy of said process to Assignor at the address set

forth in this Assignment of Claim, and in any action hereunder Assignor waives the right to demand a trial by jury.

Assignor and Assignee acknowledge that the assignment of this claim is subject to approval of the Court in *In re:  Motors Liquidation Company, et al., f/k/a General Motors Corp. et al.,* Case No. 09-50026 (REG).  Assignee shall promptly seek permission of the Court for this transfer upon the execution of this Assignment.

## CONSENT AND WAIVER

Assignor hereby acknowledges and consents to all of the terms set forth in this Assignment of Claim and hereby waives its right to raise any objections thereto and its right to receive notice pursuant to Rule 3001, of the Federal Rules of Bankruptcy Procedure.

IN WITNESS WHEREOF, Assignor has duly executed this Transfer of Claim Agreement by its duly authorized representative this 29 day of March, 2011.

**(Assignor)**
IAM

By: *R. Thomas Buffenbarger*

Name: *R. THOMAS BUFFENBARGER*

Title: *INTERNATIONAL PRESIDENT*

**(Assignor)**
Witness:

By: *David L. Neigus*

Name: *DAVID L. NEIGUS*

Title: *ASSOCIATE GENERAL COUNSEL*

**(Assignee)**
Participating Union GM Bankruptcy Claim Health Care Reimbursement Trust

By: *Sara E. Restauri*

Name:  Sara E. Restauri

Title:   Committee Member

## EVIDENCE OF TRANSFER OF CLAIM

The International Association of Machinists and Aerospace Workers ("IAM"), an unincorporated labor association, and its successors and assigns (collectively "Assignor"), pursuant to the Transfer of Claim Agreement dated March __, 2011, has hereby absolutely and unconditional sold, transferred and assigned to Participating Union GM Bankruptcy Claim Health Care Reimbursement Trust, its successors and assigns (collectively "Assignee"), subject only to court approval as set forth below, the general unsecured claim arising in the course of the Chapter 11 bankruptcy case entitled, *In re: Motors Liquidation Company, et al., f/k/a General Motors Corp. et al.,* Case No. 09-50026 (REG) in which IAM was granted an allowed pre-petition unsecured claim pursuant to Section 1114 of the Bankruptcy Code, 11 U.S.C. § 1114 in the amount of its proportionate share (*i.e.,* 4.32%) of one billion dollars ($1,000,000,000) against the General Motors Company and/or Motors Liquidation Company (the "Debtor").

Assignor hereby waives any notice or hearings requirements imposed by Rule 3001 of the Bankruptcy Rules, and stipulates that an order may be entered recognizing the assignment of this Claim as an unconditional assignment and Assignee as the valid owner of the Claim.

Assignor and Assignee acknowledge that the assignment of claim is subject to approval of the Court in *In re: Motors Liquidation Company, et al., f/k/a General Motors Corp, et al.,* Case No. 09-50026 (REG).

IN WITNESS WHEREOF, Assignor has duly executed this Evidence of Transfer of Claim by its duly authorized representative this 29 day of March, 2011.

**(Assignor)**
IAM

By: R. Thomas Buffenbarger

Name: R. THOMAS BUFFENBARGER

Title: INTERNATIONAL PRESIDENT

Witness:

By: David Neigus

Name: DAVID L. NEIGUS

Title: ASSOCIATE GENERAL COUNSEL

**(Assignee)**
Participating Union GM Bankruptcy Health Care Reimbursement Trust

By: [signature]

Name:  Sara E. Restauri

Title:  Committee Member