ORIGINAL

HEARING DATE AND TIME: March 29, 2011 at 9:45 a.m. (Eastern time)
ADJOURNED TO: April 26, 2011 9:45 s.m. (Eastern time)

John Lewis Mealer, pro per (pro se)
6333 Gardenia Lane
Show Low, Arizona 85901
jlmealer@mealercompanies.com,
928-532-8191

CREDITOR/CLAIMANT

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**



|  |  |
|---|---|
| **MOTORS LIQUIDATION COMPANY, et al.,** ) | **Chapter 11 Case No.** |
| ) | |
| **f/k/a General Motors Corp., et al.** ) | <u>09-50026 (REG)</u> |
| ) | |
| **Debtor** ) | <u>Jointly Administered</u> |
| ) | |
| ) | |
| ) | |
| ) | |
| ) | |

---

**CLAIMAINT/CREDITOR'S  RESPONSE and CLARIFICATION, TO DEBTOR'S REPLY TO
JOHN MEALER'S RESPONSE TO DEBTORS' OBJECTION TO JOHN MEALER'S
ADMINITRATIVE CLAIM NO. 70792**

TO THE HONORABLE ROBERT E. GERBER,
UNTIED STATES BANKRUPTCY JUDGE:

John Mealer, who is a principle for registered automobile manufacturer known as Mealer

Companies LLC with main offices located in Arizona, ("**Claimant**") objected to Motors Liquidation

Company (f/k/a General Motors corporation, n/k/a General Motors Company after restructuring) herein

("**Debtors**"), objection to Administrative Claim No. 70792 filed by John Mealer for unlawful tortious

and criminal activities committed by "Debtor" against Claimant on June 9, 2009. This reply is in

response to Debtor's response and respectfully represent:

## **Background**

1.     On June 9, 2009 (post-petition) GM by and through their 26 year veteran chief engineer and once model and suddenly unhinged employee who was on the verge of retiring, *Mr Kordella*, in the scope of his employment (Ex 22 through 26 and as admitted by Mr. Kordella) entered Claimant's Automotive Manufacturing Business growth funding and prospective advantageous website, portraying himself as "MONEY01" and "...a real engineer of real automobiles..." with a return email address available to all who read GM's malicious injurious falsehood blog and direct emails to prospective parties which berated and defiled the Mealer name, Mealer Companies, employees, engineers and created doubt of Mealer products, to **kris.j.kordella@GM.com.** The GM blog (and direct emails) which was created from GM offices on GM computers through a series of GM employee and active management interaction [provided as evidence Ex 9], while in the course to further GM business was immediately sent via RSS feed to prospective investors and customers of Mealer Companies. And ruined the reputation and good name of Claimant, causing a total loss of prospective funding and pre-manufactured Mealer Automobile sales (pending funding). GM followed up the blog by sending injurious falsehood emails directly to Claimant's prospective investors and pending customers to further blacken his name and to libel Mealer Companies' (claimant's) products.

The June 9, 2009 injurious, malicious torts and criminal acts obviously make this claim against GM a post-petition claim as GM attacked this smaller automaker post-petition during the restructuring of General Motors.

2.     In October 2009, Claimant was forced to file personal Chapter 7 bankruptcy after losing all savings and assets invested into his alternative fuel powered automobile manufacturing business due in whole to losing and not having regained the prospective investors or pre-mfg sales due to the GM interference on June 9, 2009.

3.     On March 9, 2010 Claimant sent a Motion to "Approve Procedures For

1.

Administering Claims... " to this Honorable Court. With the ten months passing and the brief window of opportunity for funding passing Claimant due to GM's interference, the ten months and lack of response to his blackened name proved Mealer's prospective investors (expectancy) were not returning.

4.      On April 14, 2010, this Honorable Court clearly stated "Motion denied without prejudice, for failure to show a prima facie entitlement to relief." (Ex 5). Clearly, "without prejudice" makes available the denied party, the freedom to litigate the matter in a subsequent action as if the action were never dismissed, AND the need to gather 'prima facie entitlement to relief' which could only be accomplished with this post-petition tort claim, in a separate civil action for the civil tort.

5.      On June 2, 2010 in Claimant's personal chapter 7 bankruptcy in the District of Arizona, the Honorable Redfield T. Baum, reverted jurisdiction of the personal injury torts and criminal matters to the active GM restructuring in the N.Y.S.D. bankruptcy court and claims to civil court.

6.      On June 8th, 2010 Claimant (as directed) filed that action as ordered by two separate judges, in Arizona State Superior Court and served the amended complaint on August 10, 2010 to all parties, including GM – MLC. MLC, GM and other parties being in default within 30 days of accepting service were given ample opportunity (over 160 days) to respond and/or to remove said injurious falsehoods through a simple public apology and written request to remove their corporate blog and rescind their direct emails to claimant's prospective parties. They refused to respond to interrogatories and instead, transferred the case to Arizona District court.

7.      On March 17, 2011 Claimant filed a "simply read, easily interpreted" response to the Objection and clarified the filing of the default motion for the post-petition torts and resulting post-petition claims made by Claimant against GM/MLC/GM. *The GM-MLC default motion was made NOT to control the property of MLC, but to compel control of the injurious torts made by GM-MLC.*

**This Court may be the proper forum for resolving the Mealer Claim**

Claimaint's does not argue with this court, but instead agrees with this court on

2.

jurisdiction as stated in his response whereby he reiterates the directions he was given by both the

Arizona District Bankruptcy Court's Honorable Redfiled T. Baum and this New York Southern District

Bankruptcy Court's Honorable Robert E. Gerber to either remove the civil and criminal matters from

the bankruptcy court and to "provide prima facie entitlement to relief." Claimant has taken the two

court's direction pertaining to 28 USC §§ 157(b)(2)(B), 157(b)(5) "as defensive against torts and as

such strictly limit the authority of bankruptcy judges with respect to personal injury claims." to be

<u>qualified judicial reasoning</u> behind their decision to not [initially] review tort/criminal matters in the

bankruptcy forum. This court knows far more than claimant on jurisdictional matters and claimant was

merely following court Orders and does not feel he was ever misguided by either court. Debtor's

council must be confused to challenge the clear authority and directions made by two separate Courts.

Claimant relies on this court's judicial direction and accompanied case law, whereby, "A

creditor seeking relief on this basis has the initial burden of producing evidence sufficient to establish a

prima facie case ..." See <u>FSFG Service Corporation v Kim</u>, 71 B.R. 1011, 1015 (Bankr. CD Cal 1987),

overruled on other grounds, <u>Lomas Mortgage USA v Elmore</u>, 94 B.R. 670 (Bankr. CD Cal 1988). Once

the creditor establishes a prima facie case, however, the burden shifts to the debtor to prove that the

creditor is not entitled to relief.  Id. See also, <u>Duvar Apt. v FDIC</u>, 205 B.R. 196, 200 (9th Cir BAP

1996); Bankruptcy Code section 362(g). Here, the Debtor has provided no proof that the claimant is not

entitled to relief as the GM council claims they cannot   "...decipher..." and has misrepresented

claimant's Fed. R. Civ.P 8 well plead complaint and claim (See Twombly).

**<u>The Debtors must be held liable for the GM directed actions of Mr. Kordella under the Theory of
Respondeat Superior , Negligent Entrustment , Vicarious Liability and a conscious agreement
with one or more GM employees among other claims of culpability.</u>**

8.    Debtor's council is wrong about respondeat superior culpability and have failed

to address the other culpability allegations of the Claim. As set forth in the Objection, the Mealer Claim

3.

states that it seeks to hold the Debtors liable on a variety of theories and as admitted by Debtor's
confused council, they have had "...difficulty...." "...deciphering..." the entirety of claimant's Objection.
(P2,¶4 Debtor's Reply). The entirety of Debtor's council's rendition of claimant's Objection is based
upon their confusion and matters regarding said claimant's Objection as they portray to this honorable
court, is wholly irrelevant, illogical, incidental, disjointed ramblings against the Objection which they
admittedly cannot decipher. Claimant offers no opinion on Debtor's council's admission of confusion.

On June 2, 2010 11:02 a.m., GM Attorney of Brooke & Bowman, Mr. Klein, clearly stated on
record Arizona District Bankruptcy Court, "I'm here on behalf of Motors Liquidation Company, also
known as the old GM and General Motors Company, also known as the new GM." Thus proving that
council for GM, MLC, GM considers (conflates) the companies to be one and the same (because they
are one and the same viz the GM Restructuring plan via this honorable court's 363 Order). Such
admissions and viz the restructuring, and rules for bankruptcy, this particular claim is not speculation
and is entitled to assumption of truth. (See Debtor's Ex. "I" in their Objection to Administrative Claim
No. 70792 on March 17, 2011, P.3:8-10). Old GM is limited to reforming as new GM through MLC
when certain laws have been violated. GM has violated such laws against this Claimant, thus according
to the 363 Order, the transfer must remedied or completely stop in violation [of the 363 Order, MSPA].

> (See, MSPA §4.3 Noncontravention; Consents(i), §5.2 Authorization; Enforceability. (b)
> "MSPA2", the MSPA Execution Copy §5.2(b)(I), §4 ratification of Purchase Agreement, and §3
> Effectiveness of Amendment, and §5 which clearly and undeniably state that this is a binding
> agreement, mutatis mutandis. Bound by all limitations set forth in their entirety..

9.     Claimant, being able to decipher portions of Debtors council's Reply concluded
they have not read claimant's documents but have an opinion on one of several claimants' allegations of
GM's culpability *viz* theory of respondeat superior. Being one of **several factors** of GM's culpability,
respondeat superior does apply because GM must be held liable whether through negligence and gross
negligence, respondeat superior, vicarious liability because they failed to prevent Mr. Kordella's

4.

intentional [negligent] conduct while at work and /or while outside of work using GM equipment under control of GM, because he was privileged, long time employee of GM and while hired, trained and retained as a servant for over 25 years. Further, the negligent entrustment which GM placed upon Mr. Kordella to uphold his highly skilled and corporately managed custody of proper work ethics while using GM computers at work and ISP from home, whereby GM did fail to exercise said control, and his tortfeasors did occur both within and outside his scope of employment through GM's inner-corporate ISP either as gross negligence or possibly by complicity and conspiracy. Whether intentional or not, GM had the right to control and controlled and is vicariously liable for their employee, Mr. Kordella's injury to Mealer and Mealer's property. See Nielsen Sjolander, Administratrix of Estate of Niels Otto Andersen Sjolander v. Vestas Wind System A/S, 2006 Supreme Court Farabaugh; Section 414 of the Restatement (Second) of Torts, "Negligence in Exercising Control Retained by Employer." 64 Som. L.J. 280 (2009) (Klementik, J.). See also Orr v William J. Burns Int'l Detective Agency, 12 A.2d 25, 27 (Pa. 1940); see also Bowman v. Home Life Ins. Co. of Am. 243 F.2d 332, 335 (3d Cir. 1957) **(recognizing that the issue of whether a person acted within the scope of employment is ordinarily left to the jury)** and should not be dismissed. Claimant has addressed this issue and as admitted by Debtor's council, they were unable to decipher the simple verbatim in claimant's Objection.

Mr. Kordella's action were clearly within GM's provisions "which may reasonably be said to have been contemplated … as necessarily or probably incidental" to his employment and the survival of GM and his fellow employees, when he expressed the views directed by fellow employees and management who visited and reviewed and remained on claimants website on the exact pages as Mr. Kordella minutes prior to and during Mr. Kordella showing up to present the "goaded" injurious falsehoods. **(See Ex. 9).** See Ray Korte Chevrolet v Simmons, 571 P.2d 699, 704 (Ariz. Ct. App, 1977), and Restatement of Agency § 228 (1958), and (See Ex 20 through 26 and Mr. Kordella's confession).

FURTHERMORE, According to *Section. 691.991 of the Michigan Compiled Laws*, GM cannot

5.

gain or force indemnity for their employee's misconduct while the employee is at work using GM

equipment. GM realizing that the benefits of providing their employees with GM and GMAC private

and secured Internet access comes with a price and was foreseeable by GM. (See Ex 23 ).

> See also, e.g. Martin, 48 F.3d at 1351; Domar Ocean Transp. v. Independent Refining Co., 783 F.2d. 1185, 1190 (5th Cir. 1986); Commercial Bus. Sys. Inc., 453 S.E.2d at 266; *Androphy*, et al. Supra note 9, at 122; *Davidson*, supra note 9, at 176 see also Doe v. United States, 912 F. Supp. 193, 194-95 (E.D. Va. 1995); Gary T. Schwartz, The Hidden and Fundamental Issue of Employer Vicarious Liability, 69 S. CAL. L. REV. 1739, 1754, 1764-65 (1996) (recognizing employer's reluctance to assert the right to indemnify a claim against an employee).

Mr. Kordella's GM engineering blog post and the direct injurious falsehood emails was made

within his scope of employment, See *Doe id* 95 F.3d 325, 328 (4th Cir. 1996) and 912 F. Supp. At 195.

**Finally**, as GM's council is well aware, June 9, 2009 is post-petition and the personal injury tort

and criminal claim is allowable and an enforceable encumbrance on this entire GM restructuring.

> See MSPA **"Permitted Encumbrances"** means all (I) purchase money security interests arising in the Ordinary Course of Business; (ii) security interests relating to progress payments created or arising pursuant to government Contracts in the Ordinary Course of Business; (iii) security interests relating to vendor tooling arising in the Ordinary Course of Business; (iv) Encumbrances that have been or may be created by or with the written consent of Purchaser; (v) mechanic's, materialmen's, laborer's, workmen's, repairmen's, carrier's liens **and other similar Encumbrances arising by operation of law or statute** in the Ordinary Course of Business for amounts that are not delinquent **or that are being contested in good faith by appropriate proceedings;**

## The Mealer Claim Clearly States a Claim Upon Which Relief Can be Granted

10.    As explained by Debtor's council re: claimant's Response being 'difficult to

decipher' and their Reply is based on factors they admittedly cannot entertain involving claimant's

complaint and Objection, Debtor has no decisive idea of the actual claims sitting before them. Their

Reply appears moot. To be clear, GM's attack of Claimant was not made on a random website and as

such, the MONEY01 moniker used before prospective advantageous parties combined with the proudly

displayed return email address for blog maker MONEY01 to General Motors engineering department

totally erases any case law of random blogs and random comments as Debtor's council has provided

this court in response to claimant's Objection.    6.

11.    There was/is no implausible speculation in GM's injurious falsehood blog commentary, but instead cognizable, malicious strategically placed wording designed to defame and interfere with claimants growth funds. GM's Blog was not intended as a public comment on just any internet message board, but a created Blog *[not a comment to a blog]* on claimants automotive manufacturing business growth funding website as a GM BLOG "real engineer" MONEY01 specifically in front of claimants prospective parties backed by direct defamatory emails to prospecs.

Clearly, claimant's inferential allegations respecting all the material elements which sustain recovery under *some* viable legal theory, central to this complaint, whether hypertechnically or otherwise plead pursuant to Fed. R. Civ. P. 12(b)(6) (See United States v. Uni Oil, Inc., 710 F.2d 1078, 1080-81 n.1 (5th Cir. 1983)), See also Conley v Gibson 355 U.S. 41,47 78 S.Ct.99, 103,2L Ed.2d 80 (1957), See also Wittstock v. Mark A. Van Sile, Inc. 330 F.3d. 899, 902 (6th Cir. 2003) mandate claimant's complaint/claims against GM and clearly detail Relief Which Can be Granted.

Further, to be very clear, the blog created by GM on claimant's investment growth automotive manufacturing website and the injurious falsehood GM blog left by GM while posing as *the* key investor and *the* real engineering company of real cars was strategic and not as portrayed by Debtor's council in their Reply P.5,¶10. Claimant must clarify the typo made in his Objection; "$430 Million," should have read $230 Million ($200 Million in actual prospective investment funds plus $30 Million in pre-manufactured Mealer vehicle sales pending the investment 'growth' funds), in immediate loss caused by GM's defamation, trade libel tortious interference with prospective advantage, et al. On June 9, 2009).

12.    The Objection and all evidence and accompanied documents related to claimant's claim and complaint define the exact tortious interference and demonstrate a clear culpability to GM's culpability with interference with claimant's prospective advantage and has provided Exhibits detailing said trespass and interference (See Ex 8 and 9). (See also, Aug 10, 2009 Complaint at P.25, 26:¶28l);

7.

"Mr. Kordella [acting by and through and for GM] did in fact visit this plaintiff's professional website and while and after and during signing up to blog and actually "blogging" with ill intent the injurious falsehoods and trade libel per se under moniker MONEY01, did also open an Internet "window" to view and read the actually defined and detailed webpage of mealercompanies.com entitled "WHAT WE ARE REALLY ABOUT" ["http://mealercompanies.com/?page_id=2"] and did personally review the actual reasons for the existence of this plaintiff"s prospective funding website <u>multiple times</u> *prior to and during* his malicious and intentional acts of willful and wanton misconduct whereby he did in fact publish a series of ultra-inflammatory, injurious, maliciously and strategically worded, injurious falsehoods about this plaintiff and his automotive manufacturing trade creating trade libel, intentionally and explicitly to destroy this plaintiff's notoriety, ability, plans, goals and desires to gather funding and expand manufacturing of the Mealer Automobile and other Mealer products and to destroy pre-MFG sales and the total destruction of the Mealer name. "

All elements of the tort intentional interference with prospective advantage have been met:

> The elements of this cause of action are:
> (1) The existence of a valid contractual relationship or business expectancy;
> (2) knowledge of the relationship or expectancy on the part of the interferor;
> (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and
> (4) resultant damage to the party whose relationship or expectancy has been disrupted. <u>Hirsch v. Cooper</u>, 737 P.2d 1092, 1097 (Ariz.Ct.App.1986).

The most important element in a claim for tortious business interference is the improper "motive or means" of the interference, *<u>Wagenseller v. Scottsdale Mem'l Hosp.</u>*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). and the use of fraudulent misrepresentations is one form of improper interference with another's business potential:
Fraudulent misrepresentations are ... ordinarily a wrongful means of interference and make an interference improper. A representation is fraudulent when, to the knowledge or belief of its utterer, it is false in the sense in which it is intended to be understood by its recipient.

Although there is no Arizona law directly on point (i.e., addressing the question whether a claim for tortious interference with prospective contractual relations is dependent upon compliance with the statute of frauds), it appears that under Arizona law, a tort *"may be committed even where the plaintiff has no contractual rights but simply the prospect of a contractual relationship."* <u>Bar J Bar Cattle Co. v. Pace</u>, 158 Ariz. 481, 486; 763 P.2d 545, 550 (Ariz.Ct.App.1988) (citing Restatement (Second) of Torts § 766B comment c (1979) *("The relations protected against intentional interference by the rule ... include any prospective contractual relations ... if the potential contract would be of pecuniary value to the plaintiff.")).*

The California Supreme Court has held that a claim for intentional interference with prospective economic advantage is not dependent on compliance with the statute of frauds. See <u>Buckaloo v. Johnson</u>, 14 Cal.3d 815, 822; 537 P.2d 865, 868 (1975). It reasoned: This is a tort theory of recovery rather than contract, and is based on interference with a "relationship" between parties irrespective of the enforceability of the underlying agreement. As stated in the leading California case of <u>Zimmerman v. Bank of America</u>: *"The tort of interference with an advantageous relationship, or with a contract, does not ... disintegrate because it relates to a*

8.

*contract not written or an advantageous relation not articulated into a contract. The nature of the tort does not vary with the legal strength, or enforceability, of the relation disrupted. The actionable wrong lies in the inducement to break the contract or to sever the relationship, not in the kind of contract or relationship so disrupted, whether it is written or oral, enforceable or not enforceable."*

Id. (citation omitted) (emphasis in original). Because we believe that the Arizona Supreme Court would find the California Supreme Court's reasoning to be persuasive, we hold that to prevail upon their claim for tortious interference with prospective contractual relations, the appellants need not show that they could have enforced the alleged oral agreement with the RTC. Accordingly, the Arizona statute of frauds is not dispositive of the 12(b)(6) motion as it relates to this claim.

The privilege we recognized in Bendix is indeed broad, but not so broad as to encompass, as a matter of law, the conduct alleged here.   The question in this case is whether  Smith and Hudesman  acted acceptably, given the current community standards and  the manner in which business persons are expected to conduct their affairs.  See Restatement (Second) of Torts 767 comment (1979). This is not a theoretical problem to be resolved by this court  according to abstract notions of how society should  work. Rather, this is a genuine issue of material fact. As such, it should  be determined by the trier of fact, after thorough review of  the  evidence produced at trial.  See C.N.C. Chemical  Corp.,  690  F.  Supp. at 143; Powers v. Leno, 509 N.E.2d 46, 49  (Mass. App.  1987); see also Snow v. Western Savings & Loan Ass'n, 730 P.2d 204 (Ariz. 1986).10

Furthermore, re; the improper motive and means to disrupt claimant's business expectancy:

To prove the tort of intentional interference with contractual relations, a plaintiff must show: [1]the existence of a valid contractual relationship or **business expectancy;** [2]the interferer's knowledge of the relationship or expectancy; [3] intentional interference inducing or causing a breach or termination of the relationship or **expectancy;** [4] and resultant damage to the party whose relationship or **expectancy has been disrupted.** ... [5]In addition, the **interference must be improper as to motive or means** before liability will attach. *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Gover-nors,* 184 Ariz. 419, 427, 909 P.2d 486, 494 (App. 1995) (citations omitted).

The publication of defamatory, libelous and injurious falsehoods directly in front of claimant's prospective parties while posing as a "real engineer or a real automobiles" and the primo investor is certainly improper [unlawful] motive or means and must be left up to a jury to decide.

13.    Claimant has made perfectly clear in the 108 pages of the August 10, 2009 detailed Complaint which accompanied the Objection, of interstate commerce and the various anti-competitive claims within documents served and provided in the Objection. Again, Debtor's council is

9.

unable to decipher said Objection and responds only to portions they feel they can somehow decipher and are unable to form a sensible conclusion to their Reply. Accordingly, as set forth in the Objection, amounts to inferential allegations as demanded by law. *United States v. Uni Oil, Inc.*, 710 F.2d 1078, 1080-81 n.1 (5th Cir. 1983). Claimant cannot re-copy details herein for redundancy purposes and prays this court review the initial Aug 10, 2010 Complaint which was ordered by this honorable court on July 14, 2010 to gather prima facie entitlement to relief according to what this claimant believes is attributed to the bankruptcy code, case law, Ninth Circuit BAP rulings noted herein. (See paragraphs 5 - 7 herein).

> "'[N]o monopolist monopolizes unconscious of what he is doing,'" and "'[i]mproper exclusion (exclusion not the result of superior efficiency) is always deliberately intended.'" Aspen, 472 U.S. at 602, 603 (quoting United States v. Alcoa, 148 F.2d 416, 432 (2d Cir. 1945), and R. Bork, The Antitrust Paradox 160 (1978)).

FURTHER, although the documentation, for post-petition torts and criminal activity against claimant by GM, has been supplied to GM/MLC/GM multiple times since June 9, 2009, the Ninth Circuit BAP held that while the failure to attach sufficient documentation to this claim would deprive the proofs of claim of their *prima facie* validity, the lack of documentation was not a basis for disallowing the claims. The BAP reasoned that the Bankruptcy Code sets forth the sole grounds for objections, which do not include lack of compliance with Rule 3001(c), stating:

> The statute sets forth the sole grounds for objections, which do not include lack of compliance with Rule 3001(c)

> The requirements for proofs of claim are contained in the Bankruptcy Code, the Bankruptcy Rules and the official forms. Section 501(a) states that a creditor "may file a proof of claim." 11 U.S.C. §501(a). Section 502(a) states:

> §502. Allowance of claims or interests
> (a) A claim or interest, proof of which is filed under §501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

Claimant's case specifically,

> §362(b)(1) excepts all criminal proceedings from the stay, regardless of their purpose. In re Gruntz, 202 F.3d 1074 (9th Cir. 2000) (en banc). AND,

> §523(a)(6) .... for the willful and malicious injury by the debtor to another entity...

10.

Complainant has followed all orders of the courts 'to the letter', as well as the requirements for filing *post-petition personal injury and criminal claims* as directed by the Bankruptcy Code.

## CONCLUSION, PRAYER

WHEREFORE, for the reasons set forth above, the Claimant respectfully request that the Court allow and provide for hearing of the Mealer post petition personal injury and crime related Claim against Debtors, and deny Debtor's council -who admittedly remains confused and unable to decipher Claimant's "Claim" and August 10, 2010 properly served Complaint- their Motion to Dismiss John Mealer's Administrative Claim No. 70792. Claimant prays this court review this case in it's entirety, understand the repetitive nature herein used to clarify the claim and to take this matter seriously and to not consider it one of the many seemingly ridiculous claims against GM, as this Claimant has recently been made aware of. (Claimant urges/pleas GM to do the same).

26 March, 2011        .JLM        _____        E-Signed.

## AFFIDAVIT

I, John Lewis Mealer under penalties of perjury to the full extent of the law, affirm the preceding documentation, affidavits, evidence and representations to be true and correct to the best of my knowledge and perception of this ongoing incident, with my signature below.

26 March, 2011        .JLM        _____        E-Signed.

11.

## CERTIFICATE OF SERVICE

I, John Lewis Mealer do hereby declare that: On 28 March 2011, I deposited the original and

copies of the following documents and otherwise served via the US Postal Service, First Class Mail to

be delivered to the following persons and addresses:

CLAIMAINT/CREDITOR'S **RESPONSE and CLARIFICATION**, TO DEBTOR'S REPLY TO JOHN MEALER'S RESPONSE TO DEBTORS' OBJECTION TO JOHN MEALER'S ADMINITRATIVE CLAIM NO. 70792

I declare under penalty of perjury that the foregoing is true and correct and that this declaration

on 28 March, 2011 at Show Low, Arizona.

.JLM                                                    E-Signed.

## SERVICE LIST

ORIGINAL:

**New York Southern District Bankruptcy Court**

One Bowling Green

New York, New York, 10004-1408

COPIES:

(i)    **Weil, Gotshal & Manges LLP,** attorneys for Debtors, 767 Fifth Avenue, New York, N.Y. 10153 (Attn: Harvey R. Miller., Stephen Karotkin, Esp., Joseph H. Smolinksy, Esq.

(ii)    **Debtors, c/o Motors Liquidation Company,** 401 South Old Woodward Avenue, Suite 370, Birmingham, MI. 48009 (Attn: Thomas Morrow).

(iii)    **General Motors LLC,** 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.)

(iv)    **Cadwalader, Wickersham & Taft LLP,** attorneys for the United States Department of the Treasury, One World Financial Center, New York, NY., 10281 (Attn: John J. Rapisardi, Esq.)

(v)    **United States Department of the Treasury,** 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esp.)

(vi)    **Vedder Price, P.C.,** attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, N.Y. 10019 (Attn: Michael J. Edelman, Esq. And Michael L. Schein, Esq.)

(vii)    **Kramer Levin Naftalis & Franklin LLP,** attorneys for the statutory committee of insecured creditors, 1177 Avenue of the Americas, New York, N.Y. 10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksound, Esq., and Jennifer Sharret, Esq.)

(viii)    **Office of the United States Trustee for the Southern District of New York,** 33 Whitehall Street, 21st Floor, New York, N.Y. 10004 (Attn: Tracy Hope Davis, Esq.)

(ix)    **U.S. Attorney's Office,** S.D.N.Y., Chambers Street, Third Floor, New York, N.Y. 10007 (Attn: David S. Jones, Esq. And Natalie Kuehler, Esq.)