Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                    :
In re                               :      Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :      09-50026 (REG)
      f/k/a General Motors Corp., et al. :
                                    :
                     Debtors.       :      (Jointly Administered)
                                    :
-----------------------------------------------------------x
```

## NOTICE OF HEARING ON DEBTORS' OBJECTION
## TO PROOF OF CLAIM NO. 45631 FILED BY STEVEN NEWMAN
## C/O MICHAEL GREEN, DECEASED

PLEASE TAKE NOTICE that upon the annexed Objection, dated April 5, 2011

(the "**Objection**") of Motors Liquidation Company (f/k/a General Motors Corporation) and its

affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), to the allowance of

Proof of Claim No. 45631 filed by Steven Newman c/o Michael Green, deceased, all as more

fully set forth in the Objection, a hearing will be held before the Honorable Robert E. Gerber,

United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, New York, New York 10004, on **May 17,**

**2011 at 9:45 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses to the Objection must be

in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of

the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by

registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest,

on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard

copy delivered directly to Chambers), in accordance with the customary practices of the

Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance

with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors,

767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin,

Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401

South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas

Morrow); (iii) General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn:

Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the

United States Department of the Treasury, One World Financial Center, New York, New York

10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500

Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.);

(vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor,

New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii)

Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured

creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers

Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii)

the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S.

Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007

(Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered,

attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375

Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and

Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:

Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); and (xi) Stutzman, Bromberg, Esserman

& Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal

representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200,

Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.), so as to

be received no later than **May 10, 2011, at 4:00 p.m. (Eastern Time)** (the "**Response**

**Deadline**").

PLEASE TAKE FURTHER NOTICE that if no response is timely filed and

served with respect to the Objection, the Debtors may, on or after the Response Deadline, submit

to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated: New York, New York
      April 5, 2011

*/s/ Joseph H. Smolinsky*
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

**HEARING DATE AND TIME: May 17, 2011 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: May 10, 2011 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                    :
In re                               :        Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :        09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                    :
                    Debtors.        :        (Jointly Administered)
                                    :
------------------------------------------------------------x
```

## DEBTORS' OBJECTION TO
## PROOF OF CLAIM NO. 45631 FILED BY STEVEN NEWMAN
## <u>C/O MICHAEL GREEN, DECEASED</u>

# TABLE OF CONTENTS

**Page(s)**

RELIEF REQUESTED..........................................................................................................1

JURISDICTION ...................................................................................................................1

BACKGROUND ..................................................................................................................1

PUNITIVE DAMAGES ARE IMPROPER IN A CHAPTER 11 LIQUIDATION.......................3

CLAIMANT HAS NOT PROVEN THAT HE IS ENTITLED TO PUNITIVE
    DAMAGES......................................................................................................................4

THE BANKRUPTCY COURT SHOULD REJECT ANY REQUEST TO
    ABSTAIN FROM ADJUDICATING THIS MATTER ...........................................................8

NOTICE................................................................................................................................11

CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re A.H Robins Co.*, 89 B.R. 555 (E.D. Va. 1988) ........................................................ 4

*AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278 (D. Del. 2006) ........................ 6

*Bankruptcy Servs. v. Ernst & Young* (*In re CBI Holding Co.*),
    529 F.3d 432, 438 (2d Cir. 2008) ........................................................................ 10

*In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029 (D. Minn. 2007) ................................ 6

*DePaepe v. Gen. Motors Corp.*, 141 F.3d 715 (7th Cir. 1998) ........................................ 6

*In re Drexel Burnham Lambert Group, Inc.*, No. 90B-10421,
    1990 WL 302177 (Bankr. S.D.N.Y. Dec. 14, 1990) .................................................. 8

*Falbaum v. Leslie Cos.* (*In re Leslie Fay Cos.*), 222 B.R. 718 (S.D.N.Y. 1998) ........................ 10

*In re Gen. American Communs. Corp.*, 130 B.R. 136 (Bankr. S.D.N.Y. 1991) ........................... 10

*Granfinanciera v. Nordberg*, 492 U.S. 33 (1989) ........................................................ 10

*In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986) ................................ 4

*JPMorgan Chase Bank, N.A. v. Charter Commc'ns Operating, LLC* (*In re Charter Commc'ns*),
    409 B.R. 649(S.D.N.Y. 2009)........................................................................... 9

*J.T. Moran Financial Corp.*, 124 B.R. 931 (S.D.N.Y. 1991) ........................................ 10

*Langenkamp v. Culp*, 492 U.S. 42 (1990)............................................................... 10

*In re Manville Forest Prods. Corp.*, 896 F.2d 1384 (2d Cir. 1990). ................................ 8

*Novak v. Callahan* (*In re GAC Corp.*), 681 F.2d 1295 (11th Cir. 1982) ........................ 4

*In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) ........................ 6

*In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702 (2d Cir. 1995)................................ 8

*Sibley v. KLM-Royal Dutch Airlines*, 454 F. Supp. 425 (S.D.N.Y. 1978)........................ 4

## TABLE OF AUTHORITIES
### (continued)

Page(s)

**Statutes**

11 U.S.C. § 105(a) .................................................................................................... 11

28 U.S.C. § 157.................................................................................................... 1, 8, 9

28 U.S.C. § 1334................................................................................................... 1. 8, 9

Fed. R. Bankr. P. 502(b) .............................................................................................. 1

Fed. R. Bankr. P. 3007(a) ............................................................................................ 1

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**" or

"**GM**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"),

respectfully represent:

## **Relief Requested**

1.        The Debtors file this Objection (the "**Objection**"), pursuant to section 502(b) of

chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an order

disallowing and expunging Proof of Claim No. 45631 filed by Steven Newman ("**Claimant**") on

behalf of the estate of Michael Green.[1]  Because punitive damages are unavailable and because

the Claimant cannot assert a meritorious claim, he is not entitled to punitive damages, and the

Debtors request the entry of an order disallowing and expunging the proof of claim from the

Debtors' claims register.

## **Jurisdiction**

2.        This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## **Background**

3.        Michael Green was seriously injured in a one-car incident on June 8, 1986, after

he lost control of the 1986 T-top Chevrolet Camaro he was driving.  He sued General Motors

Corporation in the New Jersey Superior Court—*Green v. General Motors Corp.* (Index No. W-

029370-88), (the "**Green Lawsuit**")—alleging that defects in the car, specifically its T-top roof

---

[1] A copy of Proof of Claim No. 45631 is annexed hereto as **Exhibit "A."**

system, caused him to suffer enhanced injuries in the incident.  The case was tried twice; the first

jury deliberated more than a week, but could not reach a verdict, and the second jury found for

Mr. Green and awarded $17,767,175 in compensatory damages.  With interest, GM paid Mr.

Green and his lawyers almost $22 million in 1999.  Although Mr. Green received compensatory

damages under a life care plan based on his projected life expectancy of approximately 48 years

(to age 77), he passed away on March 18, 2001 at the age of 31.  Claimant Steven Newman is the

representative of Mr. Green's estate.

4.      On November 16, 2001, Steven Newman filed suit (the "**Newman Lawsuit**")[2] on

behalf of Mr. Green's estate asserting that, although not sought in the earlier Green Lawsuit,

counsel would have sought and the jury would have awarded punitive damages had GM

produced certain additional documents.  In addition, Claimant alleges that he is now entitled to

punitive damages based on GM's alleged misconduct in not producing those additional

documents.  GM concedes that certain documents related to the consideration of an alternative

roof design were omitted from GM's document production.  However, GM disputes that these

documents, if timely produced, would have changed the course of the trial, and further

vigorously disputes any allegations of actionable misconduct in the discovery process.

5.      Here, Claimant alleges that the jury in the Green Lawsuit would theoretically

have awarded additional millions in punitive damages based on a nearly endless list of "what

ifs":  if GM had provided certain additional documents to Mr. Green's counsel; if Mr. Green's

counsel had then identified the documents in his trial preparation as a focal point at trial; if Mr.

Green's counsel had attempted to amend (and was allowed by the trial court to amend) his

---

[2] A copy of the complaint in the Newman Lawsuit is attached to the Proof of Claim annexed as Exhibit A
hereto.

pleadings to include a claim for punitive damages; if Mr. Green's expert design witnesses had

been inclined to revise their opinions in light of the additional documents; if Mr. Green's counsel

would have been able to elicit other witness testimony supporting the theory that the additional

documents illustrated an alternative, safer design that GM rejected for improper reasons; if the

court had allowed this hypothetical punitive damages claim to go to the jury; and finally if the

jury had determined that the failure to implement the alternative design would support a finding

that punitive damages were warranted.

6.    The documents described by Claimant that form the basis for the Newman

Lawsuit were under GM's constructive control during the Green lawsuit and certain of those

documents were responsive to Mr. Green's discovery requests, but were not produced in

discovery.  The U.S. Magistrate Judge, over objection, pierced GM's attorney-client privilege,

allowing Claimant to take extensive discovery of  GM's defense of the Green Lawsuit, including

numerous depositions of GM's lawyers, legal staff, engineers, and outside counsel.

7.    The Green proof of claim was initially filed in an unliquidated amount.  As part of

the capping procedures established under the Amended Order Pursuant to 11 U.S.C. § 105(a)

And General Order M-390 Authorizing Implementation of Alternative Dispute Procedures,

Including Mandatory Mediation (ECF No. 7558) (the "**ADR Order**" and the procedures

contained therein, the "**ADR Procedures**"), Claimant agreed to cap the claim for all purposes at

$75 million.  A mediation under the ADR Procedures was held on March 7, 2011 and proved

unsuccessful in resolving the Green proof of claim.

### Punitive Damages Are Improper in a Chapter 11 Liquidation

8.    Claimant concedes that he seeks the punitive damages that Mr. Green allegedly

should have received in the original lawsuit but for GM's alleged misconduct in the discovery

3

process. The purpose of awarding punitive damages is to punish wrongdoers and deter future

wrongful conduct.[3] But in a bankruptcy setting, where the recovery of punitive damages by one

creditor depletes recoveries to other creditors, courts have regularly exercised their equitable

power pursuant to section 105 of the Bankruptcy Code to disallow or subordinate punitive

damage claims. *See, e.g., In re Johns-Manville*, 68 B.R. at 627; *In re A.H Robins Co.*, 89 B.R.

555, 562 (E.D. Va. 1988) ("Equity provides [the] [c]ourt the power to disallow [a] punitive

damage claim . . ."). As set forth in *In re Johns-Manville*, "to allow recovery of punitive

damages . . . would be to risk the depletion of [] assets to the benefit of known victims at the

expense of future Claimants. Such a result is inequitable on its face." 68 B.R. at 627. Awarding

punitive damage claims to certain unsecured creditors in cases where all unsecured creditors are

not receiving full satisfaction of their claims in effect forces those impaired creditors to pay for

the debtor's wrongful conduct. *See Novak v. Callahan* (*In re GAC Corp.*), 681 F.2d 1295, 1301

(11th Cir. 1982) ("[T]he effect of allowing a punitive damages claim would be to force innocent

creditors to pay for the bankrupt's wrongdoing. Such a result would be inequitable . . . ").

Punitive damage claims are particularly inappropriate in instances where, as in these cases, the

debtor is liquidating, as there would be no deterrent purpose or effect.[4]

## Claimant Has Not Proven That He Is Entitled To Punitive Damages

9.    The Court should also disallow the Green proof of claim because Claimant is not

entitled to punitive damages. In order to substantiate a claim for relief, Claimant must first

---

[3] *See In re Johns-Manville Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom. Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); *Sibley v. KLM-Royal Dutch Airlines*, 454 F. Supp. 425, 428 (S.D.N.Y. 1978).

[4] Notably, in chapter 7 liquidations, punitive damages are subject to statutory subordination and relegated to a fourth level in the distribution scheme—below that of unsecured claims—because they may be cut off when available funds are insufficient to pay even compensatory damages. *See* 11 U.S.C. § 726(a)(4).

demonstrate that punitive damages are available in these chapter 11 cases.  Secondly, Claimant

must demonstrate that punitive damages would have been awarded or alternatively should be

awarded.

10.    Claimant asserts two justifications for his asserted entitlement to punitive

damages:  (1) GM's failure to produce the documents at issue deprived Mr. Green of the

opportunity to seek and recover punitive damages at trial in the Green Lawsuit; and (2) GM

fraudulently or negligently concealed evidence in the Green Lawsuit thereby entitling Claimant

to punitive damages.

11.    Although Claimant asserts that GM fraudulently or negligently concealed

evidence in the Green Lawsuit, the extensive discovery taken by Mr. Newman's counsel

demonstrates that the combination of in-house resources and outside counsel employed by GM

for document discovery at relevant times in the Green Lawsuit was entirely consistent with then-

current norms.  Indeed, the affirmative evidence adduced in the depositions taken as a whole

makes clear that the failure to produce the documents in the Green Lawsuit resulted from a series

of innocent errors and mistakes by paralegals and lawyers working on the case.  Claimant

himself stipulated to these facts, showing a lack of intent on the part of GM to conceal evidence.

(*see generally* Declaration of Joseph H. Smolinsky in Support of Debtors' Objection to Proof of

Claim No. 45631 Filed by Steven Newman c/o Michael Green, Deceased ("**Smolinsky Dec.**")

Ex. 1, Stipulation of Facts.).  The absence of competent, direct evidence of proper intent is fatal

to Claimant's allegations.  MLC can present a number of witnesses actually involved in

representing GM in this matter, who all will testify that they took GM's discovery obligations

seriously and made their best efforts to meet them.  (*See, e.g.,* Smolinsky Dec., Ex. 2, Coulson

Dep. at 54:7-55:17; Ex. 3, Dep. of M. Ade at 29:4-31:25, Ex. 4, Dep. of D. Brown at 18:23-

20:16, 281:11-25, 285:23-287:11.)  They will detail the extensive efforts GM made in the Green

Lawsuit to respond appropriately to discovery.  (*See, e.g.,* Smolinsky Dec. Ex. 2, Coulson Dep.

at 19:2-25:20; Ex. 4, Brown Dep. at 71:20-74:16; Ex. 5, Ziolkowski Dep. at 215:19-25.)

Claimant simply has no witness with ***actual personal knowledge*** of GM's intent who can offer

evidence—not conjecture or speculation—to the contrary.

12.    Claimant's only other avenue of proof of an intent to hide documents on the part

of GM is through his expert witnesses, who conclusively, albeit without competent underlying

facts or supporting evidence, opine that the facts and circumstances surrounding the review and

production of documents in the Green Lawsuit show that GM somehow "intended" to deceive

Mr. Green's counsel about the documents now at issue.  Rule 702 of the Federal Rules of

Evidence does not permit an expert to offer opinion testimony about the intent or motivation of

another person or entity, because that testimony is not derived from any methodology generally

accepted by the scientific community and will not "assist the trier of fact to understand the

evidence or to determine a fact in issue."  *See DePaepe v. Gen. Motors Corp.*, 141 F.3d 715, 719

(7th Cir. 1998) (holding that expert ***"could not testify as an expert that GM had a particular***

***motive"***) (emphasis added); *In re Baycol Prods. Litig.*, 532 F. Supp. 2d 1029, 1053 (D. Minn.

2007) (expert "may not infuse his personal views as to whether [defendant] acted ethically,

irresponsibly or recklessly"); *AstraZeneca LP v. Tap Pharm. Prods., Inc.*, 444 F. Supp. 2d 278,

293 (D. Del. 2006) ("Expert witnesses are not permitted to testify . . . regarding [the defendant's]

intent, motive, or state of mind, or evidence by which such state of mind may be inferred.")

(citations omitted); *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 544 (S.D.N.Y. 2004)

(expert's "repetitions of facts and speculative inferences about [a corporation's] intent" is

improper "because it describes lay matters which a jury is capable of understanding and deciding

6

without the expert's help" and because the opinions lacked any basis in a body of knowledge or expertise).

13.     Claimant's assertion that Mr. Green would have sought and recovered punitive damages in the Green Lawsuit had GM produced the documents at issue is speculative at best, and relies on an extensive series of what-ifs across a lengthy time line, running from initial identification of the now so-called "hot" documents through a jury award of punitive damages. It is far from clear how Claimant's counsel would conceivably prove that these countless "what ifs" would all have fallen in Mr. Green's favor, including:

- Claimant's counsel and his expert would have identified the document in their trial preparation,

- Claimant's expert in the first trial would have changed his proposed defect theory and alternative designs[5] to the one allegedly supported by the document,

- His counsel would have marshaled evidence in support of a punitive damages claim before summary judgment, proven that claim at trial, and successfully argued for those damages at closing, and

- The jury would have awarded punitive damages.

For these reasons, MLC believes that it will be difficult for Claimant's claims to succeed at trial. This fundamental reliance on speculation, along with issues of expert admissibility and evidentiary gaps as to GM's alleged intent to conceal documents, raise serious questions about Claimant's ability to recover any of the additional damages he now seeks.

---

[5] Claimant's counsel testified that he could not say that the documents would have impacted his expert's theory:  "I don't know if they would have changed his opinion."  (Smolinsky Dec. Ex. C, Donovan Dep. at 77:17-78:22.)

### The Bankruptcy Court Should Reject Any Request to Abstain
### From Adjudicating This Matter

14.     Section 157(b)(2) provides that the "allowance or disallowance of claims against

the estate . . . and estimation of claims or interests . . ." are core proceedings subject to the

jurisdiction of the bankruptcy court.  *See* 28 U.S.C. § 157(b)(2)(B).  *See also In re Drexel*

*Burnham Lambert Group, Inc.*, No. 90B-10421, 1990 WL 302177, at *8, (Bankr. S.D.N.Y. Dec.

14, 1990) (stating that "[t]he Bankruptcy Court is the proper forum for the determination of the

liquidation of a claim against the estates.").  Thus, by filing the proof of claim, the Claimant has

rendered the claim a core proceeding, and necessarily is a party under the bankruptcy court's

core jurisdiction and has submitted himself to the "equitable power of the bankruptcy court to

disallow [the] claim."  *See In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389 (2d Cir.

1990); *see also In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir. 1995) (finding

that "when a creditor files a proof of claim, the bankruptcy court has core jurisdiction to

determine that claim, even if it was a prepetition contract claim arising under state law.").  Mr.

Green has already liquidated his personal injury and product liability claims.  All that remains is

a claim for non-compensatory punitive damages; therefore, as this is not a personal injury or

wrongful death claim, this Court has the authority to liquidate or estimate the claim for

allowance or disallowance.

15.     Both the law and the ADR Procedures dictate that the proof of claim is under the

jurisdiction of the Bankruptcy Court.  *See* 28 U.S.C. § 157; 28 U.S.C. § 1334.  (*See* ADR

Procedures § E.2.)[6]  Sections 157 and 1334 define the subject matter jurisdiction of the Court.

---

[6] Specifically, Section E.2 of the ADR Procedures provides:

> **If the Designated Claim is not resolved by the ADR Procedures** (an
> "Unresolved Designated Claim"), **litigation of such Unresolved Designated**

8

Section 1334(b) states that "district courts shall have original but not exclusive jurisdiction of all

civil proceedings arising under title 11, or arising in or related to cases under title 11."  28 U.S.C.

§ 1334(b).  Section 157(a) vests the bankruptcy court with four categories of subject matter

jurisdiction: (1) cases "under title 11," (2) civil proceedings "arising under title 11," (3) civil

proceedings "arising in" a case under title 11; and (4) civil proceedings "related to" a case under

title 11.  *See* 28 U.S.C. §157(a); *see also JPMorgan Chase Bank, N.A. v. Charter Commc'ns*

*Operating, LLC* (*In re Charter Commc'ns*), 409 B.R. 649, 653 (Bankr. S.D.N.Y. 2009) (stating

that Section 157 "makes clear that the bankruptcy court may hear and determine . . . all core

proceedings . . . and may enter appropriate orders and judgments" with respect to such matters).

16.    Under certain circumstances, it may be appropriate in the interests of efficiency of

judicial resources for another court to liquidate a claim and then return to the Bankruptcy Court

for a determination of whether certain portions of a resulting judgment should be disallowed

under applicable federal bankruptcy law.  However, in the present case, since the entire claim is

based on punitive damages, the allowance of which on legal grounds is highly questionable, it

would not be efficient use of judicial resources, or the resources of the estate, to conduct a

lengthy jury trial only to return to the Bankruptcy Court to determine whether such a claim is

---

*Claim shall proceed in the Bankruptcy Court* by the commencement by the
Debtors of proceedings consistent with the terms, conditions, and limitations set
forth in the Claims Procedures Order or other applicable procedures or orders, as
soon as reasonably practicable upon completion of the ADR Procedures for the
Unresolved Designated Claim, to the extent that (a) the Bankruptcy Court has
subject matter jurisdiction over the Unresolved Designated Claim and (b) the
Unresolved Designated Claim is not subject to the abstention provisions of 28
U.S.C. § 1334(c).").

(ADR Procedures § E.2 (emphasis added).)

viable under applicable federal bankruptcy law.  Therefore, the Court should retain jurisdiction
and determine from start to finish the validity of the Green proof of claim.

17.    Furthermore, Claimant has waived his right to a jury trial by filing the Green
proof of claim.  The Supreme Court has held that by filing a proof of claim, a creditor waives the
right to a jury trial on any issue that bears directly on the allowance of such claim.  *See*
*Langenkamp v. Culp*, 498 U.S. 42 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989).
Courts in the Second Circuit have followed the Supreme Court's decisions when deciding
whether a claimant's dispute can be decided without a jury.  For example, in *Bankruptcy Servs.*
*v. Ernst & Young* (*In re CBI Holding Co.*), 529 F.3d 432, 438 (2d Cir. 2008), the Second Circuit
found the claims to be core proceedings because they were integrally related to the proof of
claim and held that claimant waived right to jury trial "when it submitted its Proof of Claim
against the estate and subjected itself to the equitable powers of the bankruptcy court."  *See also*
*J.T. Moran Fin. Corp. v. Am. Consol. Fin. Corp. (J.T. Moran Fin. Corp.)*, 124 B.R. 931, 939
(S.D.N.Y. 1991) (holding that "[t]he United States Supreme Court has clearly ruled that when a
party files a claim against a debtor, a trial by jury is unavailable because a determination of the
claim is part and parcel of the process of an allowance and disallowance of claims which is
integral to the restructuring of the debtor-creditor relations, and, therefore, a public right");
*Falbaum v. Leslie Cos.* (*In re Leslie Fay Cos.*)*,* 222 B.R. 718, 720 (S.D.N.Y. 1998) (finding that
it is "well settled that a creditor who voluntarily participates in the equitable reordering of a
debtor's estate by filing a proof of claim has no jury trial rights with respect to proceedings that
involve the allowance or disallowance of those claims"); *Gen. Am Commc'ns Corp. v. Prati* (*In*
*re Gen. American Commc'ns. Corp.*, 130 B.R. 136, 159 (Bankr. S.D.N.Y. 1991) (finding that

"where there is a core matter and the defendants have submitted proof of claims against the

bankruptcy estate," the bankruptcy court should not entertain a demand for a jury trial).

## Notice

18.      Notice of this Objection has been provided to Claimant and to the parties in

interest in accordance with the Fifth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R.

Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated

January 3, 2011 (ECF No. 8360).  The Debtors submit that such notice is sufficient and no other

or further notice need be provided.

19.      No previous request for the relief sought herein has been made by the Debtors to

this or any other Court.

## Conclusion

WHEREFORE the Debtors respectfully request entry of an order granting the

relief requested herein and such other and further relief as is just.


Dated: New York, New York
       April 5, 2011


/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Debtors in Possession

11

**<u>EXHIBIT "A"</u>**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor (Check Only One)**                    **Case No**

☑ Motors Liquidation Company (f/k/a General Motors Corporation)    09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)    09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)    09-50028 (RLG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet Saturn of Harlem, Inc )    09-13558 (REG)

**Your Claim is Scheduled As Follows.**

NOTE *This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

Name of Creditor (The person or other entity to whom the debtor owes money or property) Estate Of Michael Green by his Executor

Name and address where notices should be sent   Steven Newman

MAURICE J. DONOVAN, ESQ.
Law Office of Benjamin M. DelVento PC
70 South Orange Avenue - Suite 150
Livingston, NJ 07039

Telephone number  973 758-1801    Email Address   / mjdonovan@delventolaw.com

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
*(If known)*

Filed on _____

**THE GARDEN CITY GROUP, INC.**
**NOV 2 5 2009**

If an amount is identified above you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED UNLIQUIDATED or CONTINGENT a proof of claim MUST be filed in order to receive any distribution in respect of your claim It you have already filed a proof of claim in accordance with the attached instructions you need not file again

Name and address where payment should be sent (if different from above)

Same as above          FILED - 45631
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

| 1 Amount of Claim as of Date Case Filed, June 1, 2009     $_UNLIQUIDATED - See_ annexed | 5 |
|---|---|

If all or part of your claim is secured, complete item 4 below however, if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority, complete item 5 If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9) complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

**2 Basis for Claim**
(See instruction #2 on reverse side )          See annexed Complaint

**3 Last four digits of any number by which creditor identifies debtor** _____

3a Debtor may have scheduled account as _____
(See instruction #3a on reverse side )

**4 Secured Claim (See instruction #4 on reverse side )**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe

Value of Property $_____   Annual Interest Rate___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any $_____

Basis for perfection _____

Amount of Secured Claim $_____   Amount Unsecured $_____

**6 Credits** The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7 Documents** Attach redacted copies of any documents that support the claim such as promissory notes purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary *(See instruction 7 and definition of redacted on reverse side )*

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING
SEE RIDER ANNEXED
If the documents are not available, please explain in an attachment

**5 Amount of Claim Entitled to Priority under 11 U S C § 507(a)** If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor s business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case - 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

**Amount entitled to priority**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

Date 11/23   Signature The person filing this claim must sign it   Sign and print name and title if any of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above   Attach copy of power of attorney, if any

MAURICE J. DONOVAN, ESQ., ATTORNEY FOR CREDITOR

**FOR COURT USE ONLY**

Penalty for presenting fraudulent claim   Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

Modified B10 (GCG) (12/08)

LAW OFFICE OF

# BENJAMIN M. DEL VENTO

A PROFESSIONAL CORPORATION

BENJAMIN M DEL VENTO
MAURICE J DONOVAN *
BENJAMIN M DEL VENTO, JR **
MATTHEW D DEL VENTO

*CERTIFIED BY THE SUPREME COURT OF NEW JERSEY
AS A CIVIL TRIAL ATTORNEY
** ADMITTED TO THE NEW YORK & NEW JERSEY BARS

70 South Orange Avenue
Suite 150
Livingston, NJ 07039

(973) 758-1801
FAX (973) 758-1802

November 24, 2009

The Garden City Group, Inc
5151 Blazer Parkway, Suite A
Dublin, OH 43017
ATT   MOTORS LIQUIDATION COMPANY
       CLAIMS PROCESSING

RE:    **ESTATE OF MICHAEL GREEN**
       **BY HIS EXECUTOR STEVEN NEWMAN**
       **CASE NOS. 09-50026 (REG)**
                   **09-50027 (REG)**
                   **09-50028 (REG)**
                   **09-13558 (REG)**

Gentlemen

Enclosed please find Proof of Claim with reference to the above matter

Very truly yours,

MAURICE J. DONOVAN

MJD mp
Encs

VIA FEDERAL EXPRESS

## RIDER TO PROOF OF CLAIM

This Proof of Claim is filed without prejudice to, and shall not be deemed or construed to be a waiver of any of the rights of [Newman] to (1) trial by jury in any case, controversy or proceeding so triable in this case or any case controversy or proceeding related to this case, or any other action or proceeding, (2) assert any other rights, claims, defenses, actions. setoffs, offsets or recoupments to which it may be entitled. in law equity or otherwise. and (3) object to the jurisdiction of this Court on any and all appropriate grounds  Any and all such rights are hereby expressly preserved

{00595430 DOC}

**LAW OFFICES OF BENJAMIN M. DELVENTO**
A Professional Corporation
405 Northfield Avenue
West Orange NJ 07052
(973) 736-8050
Attorney for Plaintiff

---

| | |
|---|---|
| **STEVEN G. NEWMAN, EXECUTOR** | SUPERIOR COURT OF NEW JERSEY |
| **UNDER THE WILL OF** | ESSEX COUNTY - LAW DIVISION |
| **MICHAEL GREEN, DECEASED.** | DOCKET NO |
| **Plaintiff** | |
| v | |
| | **COMPLAINT** |
| **GENERAL MOTORS CORPORATION.** | **AND JURY DEMAND** |
| **Defendant.** | |

---

Plaintiff Steven G Newman, by his attorneys Law Office of Benjamin M DelVento, P C, complaining of defendants, alleges that

## THE PARTIES

1  Plaintiff Steven G Newman is the duly appointed and acting Executor under the Will of Michael Green, deceased pursuant to certificate issued April 10, 2001 by Joseph P Brennan, Jr, Essex County (N J) Surrogate  Plaintiff brings this action in that capacity

2   Michael Green (hereinafter ' Green") died on March 18 2001, a resident of Livingston Essex County, New Jersey

3   Defendant General Motors Corporation (hereinafter "GM") is a corporation doing business in the State of New Jersey and at all times relevant hereto was engaged in the business of designing, manufacturing, advertising and sale of motor vehicles

## FACTUAL BACKGROUND

4   On June 9, 1986, Green sustained serious personal injuries resulting in permanent quadriplegia as the result of an accident that occurred while he was driving a 1986 Chevrolet IROC Camaro designed, manufactured and marketed by GM

5   On June 1, 1988 Green filed a complaint against GM in the Superior Court of New Jersey, Law Division, Essex County (Docket #W-029370-88), alleging that the 1986 IROC Camaro was defectively designed, not reasonably fit for its intended use and not crashworthy Green further alleged that the injuries he suffered were proximately caused and/or enhanced by such defect

6   The defect complained of arose from the ' T-roof" design of the IROC Camaro which essentially substituted one center roof rail for a full roof structure with two or more roof rails

7   In or about June 1989, GM filed an answer to the complaint

8   From 1989 to 1993, the parties engaged in extensive and comprehensive discovery pursuant to the New Jersey Rules of Court including the exchange of interrogatories and document demands and the taking of numerous depositions

9   In the course of that discovery, Green, through his attorneys, demanded, among other things, that GM identify and produce

2

(a)     All documents related to the performance and results
        of all studies tests investigations or examinations
        related to any malfunctions or complaints associated
        with the T-roof design

(b)     All predictive analyses, studies, tests, investigations or
        examinations relevant to any T-roof alternative
        approach or design considered by GM,

(c)     All documents reflecting the conduct and results of
        any studies, tests and/or calculations performed in
        determining T-roof performance, specifications,
        design criteria, or design objections, including any
        predictive and/or cost analyses

(d)     All documents reflecting any modifications in the
        design design objectives or design criteria of the T-
        room vehicle,

(e)     All documents reflecting the conduct or results of any
        market analysis of the area of type of market in which
        the IROC Camaro was to compete

(f)     The names of all persons who have or may have
        information concerning the matters thus catalogued

10     In response to those discovery demands, GM at no time presented any
documentation indicating that any alternative roof design had been examined or tested, nor did GM
identify any persons having knowledge of any consideration given to alternative designs  GM also
produced no market analyses assessing the sales potential of the T-roof design against that of any
alternative design

11   The matter went to trial on January 19, 1993  On February 16, 1993, following
a full trial, a mistrial was declared when the jurors reported that they could not agree on a verdict

12   From 1993 to 1996 the parties engaged in additional discovery, which, under the
New Jersey Rules of Court  included the required supplementation of the parties' earlier responses

3

to discovery demands  Again, GM presented no documentation or other information with respect to any of the matters described in foregoing paragraph 9

13    The matter was retried before a jury commencing on January 16, 1996 and concluding on March 5, 1996 with an $18,000,000 verdict in favor of Green

14    GM appealed from the judgment

15    In its appellate brief, GM argued — as it had in the trial court — that Green had failed to prove ' that there exists a practicable, safer alternative to the Camaro's T-roof design " GM asserted that the alternative roof design proposed by Green's expert witness — two roof rails  one on either side of the vehicle, instead of one central T-pillar — was 'simply an imagined concept that exists nowhere but in the mind of [Green's] expert ' that ' no vehicle has ever been produced or sold using this design, ' and that the expert's opinion was inadmissible ' since this hypothetical design had never been implemented by any car manufacturer '

16    After all appellate briefs had been filed, and just before the scheduled oral argument of the appeal  Green's attorneys serendipitously learned that GM documents uncovered in a similar litigation in Tennessee alleging design defect in the T-roof Camaro might belie certain of GM's assertions in the Green litigation

17    The Tennessee materials were subject to a confidentiality order entered by the Tennessee court  but by order entered December 17, 1997, that court permitted them to be disclosed to Green's attorneys

18    Green's attorneys thereupon began to receive what became a voluminous collection of GM documents, never disclosed in the Green litigation despite Green's ample and repeated demands, which demonstrate  among other things, that

4

(a)   GM had considered and evaluated the very alternative
roof design recommended by Green s expert.

(b)   GM was aware that the alternative design had been
used in certain European production cars,

(c)   GM found that the alternative design had better
structural impact and roof crush characteristics, but

(d)   GM internal memoranda reported that the more
"macho appearance" of the T-roof design was
important to its "proven sales performance '

19   On January 5, 1998, immediately after receiving the first of those materials and
just before argument of the appeal  Green moved before the Appellate Division to supplement the
record with certain of the salient documents  The Appellate Division granted that motion over GM's
opposition

20    The Appellate Division sustained the trial jury's liability finding, but vacated
the award of prejudgment interest and remanded the matter to the Law Division to consider the
possibility of a remittitur  Following the denial of certification by the New Jersey Supreme Court
and the mandated remand proceedings, final judgment was ultimately entered in Green's favor on
May 24, 1999 in the amount of $14,126,013 83

FIRST COUNT
(Fraudulent Concealment of Evidence)

21    Green repeats and realleges the allegations contained in paragraphs 1 through
19 as if fully set forth herein

22   GM had a legal obligation to disclose in discovery the information, papers and
documents described in foregoing paragraphs 16, 17 and 18

5

23    Such discovery was indisputably material to Green's case, for it bore on GM's liability for design defect and on the nature, scope and extent of recoverable damages

24    The information, papers and documents described in paragraphs 16, 17 and 18 evidence that GM acted in wilful and wanton disregard of consumers and the public at large, and thus warrant the award of both compensatory and punitive damages

25    Green could not reasonably have obtained access to that evidence without GM disclosing it in discovery as required by the New Jersey Rules of Court

26    GM intentionally withheld that evidence with purpose to disrupt the litigation

27    Green was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence GM concealed

    (a)    Green was deprived of the opportunity to seek and recover punitive damages in the trial of his personal injury cause of action,

    (b)    Green was required to absorb the costs of a second trial which would not have been necessary had the full facts bearing on GM's liability been presented at the first trial  and

    (c)    Green was deprived of a judgment and damage award and thus of necessary medical care  for the three years that elapsed between the first and second trials

WHEREFORE, plaintiff demands judgment against GM for

    (a)    Compensatory damages,

    (b)    Punitive damages

    (c)    Interest,

    (d)    Cost of suit, and

6

(e)      Such other and further relief as this Court may deem just and equitable

## SECOND COUNT
(Negligent Concealment of Evidence)

28   Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 24 as if fully set forth herein

29   GM negligently failed to disclose that evidence to Green

30   Plaintiff repeats and realleges the allegations contained in paragraph 27 as if fully set forth herein

WHEREFORE plaintiff demands judgment against GM for

(a)      Compensatory damages,

(b)      Punitive damages,

(aa)     Interest,

(bb)     Costs of suit, and

(cc)     Such other and further relief as this court may deem just and equitable

## THIRD COUNT
(N J  RICO)

31   Plaintiff repeats and realleges the allegations of paragraphs 1-26 as if fully set forth at length herein

32      GM constitutes an "enterprise" within the meaning of the New Jersey Racketeer Influenced and Corrupt Organizations Act (RICO), N J S A 2C 41-1c ("Enterprise #1")

7

33    In the alternative  GM  together  with  its  officers,  agents,  employees, representatives and attorneys constitute an association-in-fact enterprise within the meaning of RICO  N J S A  2C 41-1c ("Enterprise #2")

34  In the alternative  GM together with its outside attorneys responsible directly or indirectly in the defense of plaintiff's underlying personal injury suit, constitute an association-in-fact enterprise within the meaning of RICO, N J S A  2C 41-1c ( 'Enterprise #3")

35  GM (and the officers  agents, employees, and representatives acting on its behalf) constitutes a 'person" within the meaning of RICO, N J S A  2C 41-1b

36   As shown below, GM conducted  or participated directly or indirectly in the conduct of, Enterprise #1  Enterprise #2, and/or Enterprise #3 through a pattern of racketeering activity in violation of RICO  N J S A  2C 41-2c, and by reason of such activity caused injury to plaintiff s business or property within the meaning of RICO  N J S A  2C 41-4c

37   As detailed below, GM engaged in a nine (9) year pattern of mail and wire fraud by intentionally, wilfully, and fraudulently concealing the existence of the evidence listed in paragraphs 16-18 herein  More particularly, GM and its officers, agents, employees, representatives, and attorneys engaged in a scheme and artifice to defraud plaintiff, and a scheme and artifice to perpetrate a fraud on the court, by intentionally and fraudulently concealing evidence  (a) that was relevant and material to plaintiff's personal injury claims, and (b) that GM had a continuing duty to disclose to plaintiff pursuant to the discovery rules of the New Jersey Rules of Court

38  On or about September 15, 1988, plaintiff served by United States Mail his initial Demand for Production of Documents and Product Liability Interrogatories which, inter alia requested the information set forth in paragraph 9 herein ( 'Initial Discovery Requests ')

8

39  On or about November 9, 1989, GM served its purported responses to plaintiff's Initial Discovery Requests ("Initial Responses")  These Initial Responses were served via United States Mail and were verified as to their truth and sworn as to their veracity by an authorized agent of GM

40  On or about January 22, 1990, pursuant to the direction of the Court  plaintiff served by United States Mail upon GM a request for more specific discovery responses

41  On or about March 8, 1990, GM served its purported responses to plaintiff's request for supplementary discovery responses ( 'Supplemental Responses")  These Supplemental Responses were served via United States Mail

42  On or about May 21, 1990, plaintiff again requested by United States Mail more specific responses to the purported Supplemental Responses served on GM on March 8, 1990

43  On or about June 4, 1990, GM served a purported response to plaintiff's request for more specific supplemental responses ( Second Supplemental Responses ')  These Second Supplemental Responses were served via United States Mail

44  On or about August 3, 1990, the Court entered an Order requiring GM to provide more specific supplemental responses to plaintiff's discovery requests

45  On or about September 20, 1990, GM served its supplemental responses purportedly in accordance with the August 3, 1990 Order (' Third Supplemental Responses")

46  On or about July 23, 1991, GM served a supplemental response to plaintiff's interrogatory no  11, which requested the names of all persons with relevant knowledge ("Fourth Supplemental Response")  This Fourth Supplemental Response was served via United States Mail and was subsequently verified by an authorized agent of GM on August 8, 1991

9

47  In accordance with the New Jersey Rules of Court and the August 3, 1990 Order, GM had a continuing and ongoing duty to supplement its discovery responses during the course of discovery  In fact, on or about August 22, 1991, September 19, 1991, December 23, 1991, January 19, 1992, December 16. 1992. and on various other dates, GM served purported supplemental responses to plaintiff's discovery requests via United States Mail

48  In GM's Initial Responses, Supplemental Responses, Second Supplemental Responses, Third Supplemental Responses, Fourth Supplemental Responses, in all of GM's other responses and supplemental responses, and during the two personal injury trials, GM fraudulently concealed and affirmatively misrepresented the existence of the evidence listed in paragraphs 16-18 herein even though GM had a legal duty to disclose same

49  On October 25, 1996, GM forwarded via United States Mail its initial appellate brief for filing with the Clerk of the Appellate Division in Trenton, New Jersey    Such brief contained affirmative misrepresentations as more particularly described in the foregoing paragraph 15 as to the existence of evidence of alternative design in an attempt to perpetrate a fraud upon plaintiff and upon the courts

50  GM utilized the United States Mails, and interstate wires (i e , telephone and facsimile), on countless other occasions that served to perpetuate its scheme and artifice to defraud plaintiff and to commit a fraud on the court

51  This unlawful use of the United States Mail facilities and interstate wire facilities lasted for a period of more than nine (9) years, from the time plaintiff served his Initial Discovery Requests in September of 1988 through in or about December of 1997 when plaintiff came into possession of some of the fraudulently concealed materials and information

10

52   GM had knowledge of the existence of the fraudulently concealed materials and information, as evidenced by the fact that GM produced such evidence in the Tennessee litigation

53   Plaintiff reasonably and detrimentally relied on the intentional misrepresentations and fraudulent failures to disclose said evidence, to wit, by failing to pursue a punitive damages claim against GM during not one, but two, trials of his personal injury case

54   As a direct and proximate result of the aforesaid pattern of racketeering activity, plaintiff was damaged in his business or property as aforesaid in paragraph 27 herein

WHEREFORE, plaintiff demands judgment against defendant GM for

(a)     Compensatory damages,

(b)     Treble damages pursuant to RICO, N J S A  2C 41-4c,

(c)     Interest

(d)     Costs of suit  including reasonable attorneys' fees and costs of investigation and litigation, pursuant to RICO, N J S A  2C 41-4c  and

(e)     Such other and further relief as the Court may deem just and equitable

### JURY DEMAND

Plaintiff demands a trial by jury of six (6) persons as to all issues so triable

### CERTIFICATION PURSUANT TO R  4 5-1

The undersigned hereby certifies that the within matter in controversy is not the subject of any other action pending in any court nor of a pending arbitration proceeding  It is further certified that no arbitration proceeding is contemplated at this time

11

## DESIGNATION OF TRIAL COUNSEL

Pursuant to R  4 25, MAURICE J  DONOVAN. ESQ , is hereby designated as trial counsel in this matter

LAW OFFICES OF
BENJAMIN M. DEL VENTO, P.C.

By _____
MAURICE J. DONOVAN

Dated  November 16, 2001

12

**EXHIBIT "B"**
**PROPOSED ORDER**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                         :

**In re**                                       :          **Chapter 11 Case No.**
                                         :

**MOTORS LIQUIDATION COMPANY,** *et al.,*   :          **09-50026 (REG)**
     **f/k/a General Motors Corp.,** *et al.*    :
                                         :

                      **Debtors.**        :          **(Jointly Administered)**
                                         :
----------------------------------------------------------------x

**ORDER GRANTING DEBTORS' OBJECTION TO
PROOF OF CLAIM NO. 45631 FILED BY STEVEN NEWMAN
C/O MICHAEL GREEN, DECEASED**

Upon the Objection, dated April 5, 2011 (the "**Objection**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as

debtors in possession (collectively, the "**Debtors**"), pursuant to section 502(b) of title 11,

United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of the Federal Rules of

Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an order disallowing

and expunging Green proof of claim No. 45631 filed by Steven Newman c/o Michael

Green, deceased on the grounds that such claim fails to state a legally cognizably cause of

action as more fully described in the Objection; and due and proper notice of the

Objection having been provided, and it appearing that no other or further notice need be

provided; and the Court having found and determined that the relief sought in the

Objection is in the best interests of the Debtors, their estates, creditors, and all parties in

interest and that the legal and factual bases set forth in the Objection establish just cause

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed
to such terms in the Objection.

for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

       ORDERED that the relief requested in the Objection is granted as

provided herein; and it is further

       ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the

Green proof of claim (Green proof of claim No. 45631) is disallowed and expunged in its

entirety; and it is further

       ORDERED that this Court shall retain jurisdiction to hear and determine

all matters arising from or related to this Order.

Dated: New York, New York
      _____, 2011

                              _____
                              United States Bankruptcy Judge