Carrianne Basler
AP SERVICES, LLC
2000 Town Center, Suite 2400
Southfield, MI 48075
Telephone: (248) 358-4420
Facsimile: (248) 358-1969

Crisis Managers for the Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :        09-50026 (REG)
     f/k/a General Motors Corp., et al.   :
                                          :
                    Debtors.              :        (Jointly Administered)
                                          :
------------------------------------------------------------x
```

**NOTICE OF HEARING ON APPLICATION**
**BY AP SERVICES, LLC AS CRISIS MANAGERS**
**TO THE DEBTORS FOR APPROVAL OF DISCRETIONARY FEES**

PLEASE TAKE NOTICE that upon the annexed application, dated April 29, 2011 (the "**Application**"), of AP Services, LLC, as crisis managers for the debtors in the above captioned case (collectively, the "**Debtors**") a hearing will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **June 22**, **2011 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to this Application must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the

Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the Debtors and Post-Effective Date Debtors, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York

10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86

Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq.

and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official

committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th

Floor, New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and Rita C. Tobin,

Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:  Trevor

W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman &

Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the

legal representative for future asbestos personal injury claimants, 2323 Bryan Street,

Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T.

Brousseau, Esq.), (xii) Gibson, Dunn & Crutcher LLP, attorneys for Wilmington Trust

Company as GUC Trust Administrator and for Wilmington Trust Company as Avoidance

Action Trust Administrator, 200 Park Avenue, 47th Floor, New York, New York 10166

(Attn:  Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust Monitor and as

the Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree Street,

Suite 500, Atlanta, Georgia 30309 (Attn:  Anna Phillips); (xiv) Crowell & Moring LLP,

attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590

Madison Avenue, 19th Floor, New York, New York 10022-2524 (Attn:  Michael V.

Blumenthal, Esq.); (xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301

Woodlawn Boulevard, Austin, Texas 78703; and (xvi) AP Services, LLC, crisis

managers to the Debtors, 2000 Town Center, Suite 2400, Southfield, MI 48075 (Attn:

John J. Collins, Jr.), so as to be received no later than **June 15, 2011, at 4:00 p.m.**

**(Eastern Time)** (the "**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed

and served with respect to the Application, AP Services, LLC may, on or after the

Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of

the proposed order annexed to the Application, which order may be entered with no

further notice or opportunity to be heard offered to any party.

Dated: New York, New York
       April 29, 2011


/s/ Carrianne Basler
Carrianne Basler

AP SERVICES, LLC
2000 Town Center, Suite 2400
Southfield, MI 48075
Telephone: (248) 358-4420
Facsimile: (248) 358-1969

Crisis Managers for the Debtors

**Hearing Date: June 22, 2011 at 9:45 a.m.**
**Objection Deadline: June 15, 2011 at 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY, et al.,** | : | **Case No. 09-50026 (REG)** |
| f/k/a **General Motors Corp.,** *et al.* | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------------x

### APPLICATION BY AP SERVICES, LLC
### AS CRISIS MANAGERS TO THE DEBTORS FOR
### APPROVAL OF DISCRETIONARY FEES

| | |
|---|---|
| Name of Applicant: | AP Services, LLC ("*APS*") |
| Authorized to be Retained by: | Motors Liquidation Company, *et al.* |
| Date of Retention: | July 2, 2009, *nunc pro tunc* to June 1, 2009 |
| Amount of Discretionary Fees | Up to $14.5 million |

TO THE HONORABLE ROBERT GERBER
UNITED STATES BANKRUPTCY JUDGE

This application (the "*Application*") is for approval of the Discretionary Fees as set forth in the Third Amendment dated June 7, 2010 to the Engagement Letter dated May 29, 2009 (the "*Third Amendment*") between APS and the above-captioned debtors (the "*Debtors*"). By order dated July 2, 2009 (the "*Retention Order*"), this Court authorized the retention of APS pursuant to section 363 of title 11 of the United States Code (the "*Bankruptcy Code*"). While APS believes the Discretionary Fees were approved by this Court pursuant to an order entered on September 17, 2010 approving the Third Amendment, APS files this Application for the avoidance of doubt. This Application seeks the Court's approval of three separate discretionary fees: (i) $7.0 million for confirmation of the Debtors plan of liquidation; (ii) $2.5 million for distributions of stock and warrants under the plan of liquidation; and (iii) up to $5.0 million for claim reductions.

Dated: April 29, 2011

By: _____
**Albert A. Koch**
Authorized Representative
AP Services, LLC

1

**Hearing Date: June 22, 2011 at 9:45 a.m.**
**Objection Deadline: June 15, 2011 at 4:00 p.m.**

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------x
In re:                                                    )    **Chapter 11**

**MOTORS LIQUIDATION COMPANY, et al** )    **Case No. 09-50026 (REG)**

                                                          )    **Jointly Administered**

          **Debtors**                          )
-------------------------------------------------------x

**APPLICATION BY AP SERVICES, LLC**
**AS CRISIS MANAGERS TO THE DEBTORS FOR**
**APPROVAL OF DISCRETIONARY FEES**

TO THE HONORABLE ROBERT E. GERBER

UNITED STATES BANKRUPTCY JUDGE


AP Services, LLC ("*APS*"), in connection with its engagement to provide crisis

management and restructuring services to Motors Liquidation Company f/k/a General Motors

Corporation ("*MLC*"), and its affiliated debtors (collectively, "*Motors Liquidation*" or the

"*Debtors*") with the designation of Mr. Albert A. Koch to serve as Chief Executive Officer

("*CEO*") in the above-captioned Chapter 11 cases (collectively, the "*Chapter 11 Cases*"), hereby

submits this application (the "*Application*") for allowance of discretionary fees totaling up to

$14.5 million (the "*Discretionary Fees*") as set forth in the Third Amendment dated June 7,

2010 to the Engagement Letter entered into between APS and the Debtors on May 29, 2009 (the

"*Third Amendment*").  The original Engagement Letter was approved by this Court on July 2,

2009 (the "*Retention Order*").  The Third Amendment, including the Discretionary Fees, was

approved by this Court on September 17, 2010. A copy of the Engagement Letter, as amended

pursuant to the First Amendment dated as of July 23, 2009, the Second Amendment dated as of

November 12, 2009, and the Third Amendment dated as of June 7, 2010 is attached hereto as

Exhibit A.

In furtherance of this Application, APS respectfully presents the Declaration of

Mr. Albert A. Koch (attached hereto as Exhibit B, the "*Koch Declaration*") and further

represents as follows:

### PRELIMINARY STATEMENT

March 31, 2011, the effective date of the Second Amended Joint Chapter 11 Plan of MLC

(the "*Plan*"), marked the historic completion of one of the largest and most complex bankruptcy

cases in U.S. history. The effectiveness of the Plan paves the way for the implementation of a

unique trust structure that will continue environmental remediation, facilitate the sale of

properties, provide for claims resolution and effect stock distribution to unsecured creditors.

The Plan provides for four distinct trusts: (i) the Environmental Response Trust ("*ERT*")[1]

to provide for environmental remediation of MLC idled manufacturing facilities as well as to

facilitate the sale of properties; (ii) an Asbestos Trust to channel and resolve asbestos personal

injury claims; (iii) an Avoidance Action Trust to pursue certain avoidance actions; and (iv) a

GUC Trust to manage assets of the trust, resolve claims and make distributions to general

unsecured creditors. The Plan and its structure is a model for large industrial bankruptcies in the

areas of environmental remediation, asset liquidation and claims resolution. The Plan allows for

a "national" remediation solution backed by significant funds, to allow the sale and

redevelopment of MLC's remaining properties.

---

[1] Capitalized terms not otherwise defined herein shall have the meaning set forth in the Plan.

APS and Mr. Albert A. Koch ("**Mr. Koch**") in his leadership role as CEO for the global

MLC enterprise, along with a team of over 170 full and part-time APS temporary staff, played a

pivotal role in designing the Plan to provide maximum distributions to creditors as well as

returning to the U.S. Treasury the maximum funds from MLC's non-recourse DIP loan:

- APS worked diligently and in close cooperation with the United States Environmental Protection Agency ("**EPA**"), as well as governmental agencies in more than a dozen states to craft the ERT which provides $536 million, subject to adjustment, for the continuing environmental remediation of remaining properties, for as long as 100 years in some cases. The ERT enables redevelopment and sale of MLC's remaining real property and also provides approximately $200 million of cash and property that was transferred to the ERT to fund its administration.

- APS oversaw distribution of the General Motors Company common stock and warrants owned by MLC to holders of allowed unsecured claims. MLC owned 10% of General Motors Company's ("**New GM**") common stock, plus warrants exercisable for a further 15% of New GM's common stock on a fully diluted basis. MLC's interest includes 150 million shares of common stock, a warrant to acquire 136.4 million shares at $10/share and a warrant to acquire 136,400,000 shares at $18.33/share. As of April 21, 2011, over 75% of the stock and warrants had been distributed under the Plan.

- APS placed a key focus on claims resolution, successfully negotiating the resolution of or litigating nearly 97 percent of the $294 billion in claims that were filed against MLC. APS leveraged unique technological solutions to manage the treatment of more than 750,000 contracts, and the analysis of more than 70,000 claims. This resulted in claim reductions of more than $284 billion. In addition, APS was involved in extensive and collaborative negotiations to resolve claims at numerous federal and state EPA Superfund sites.

- APS aggressively pursued sales of real estate during the bankruptcy process, working closely with federal, state and local government agencies to resolve environmental issues at the sites, resulting in the sale of 11 closed manufacturing facilities. In addition, APS closed on five major asset sales that preserved jobs or helped to create new jobs in Strasbourg, France, Wilmington, Delaware, Pontiac, Michigan, Pittsburgh, Pennsylvania and Parma, Ohio

- APS worked diligently with all constituents, including the United States Department of Treasury ("**US Treasury**"), The United States Department of Justice, The United States Environmental Protection Agency as well as the Unsecured Creditors' Committee (the "**Committee**") to finalize the Plan and Disclosure Statement and to implement the same.

The Third Amendment provides that APS earns the Discretionary Fees upon the consummation of defined tasks including the reduction of unsecured claims, the distribution of stock and warrants and confirmation of a plan of liquidation. APS typically works for compensation that includes hourly-based fees and performance-based contingent incentive compensation earned upon results attained. In this case, APS is entitled to the Discretionary Fees as a result of its extraordinary role in the development and consummation of the Plan, distribution of stock and warrants and reduction of claims. The Discretionary Fees were heavily negotiated with and approved by the US Treasury and the Debtors. In addition, the Third Amendment was approved by this Court without objection, after submission of affidavit testimony and lengthy hearings. As such, APS has earned and is entitled to be paid the Discretionary Fees. While APS believes the Discretionary Fees have been approved by this Court, for the avoidance of doubt, APS hereby seeks this Court's approval of payment of the Discretionary Fees.

## FACTUAL BACKGROUND

1.      On June 1, 2009 (the "***Petition Date***") the Debtors filed voluntary petitions for relief under Chapter 11 of title 11 of the United States Code (the "***Bankruptcy Code***").

2.      By the fall of 2008, MLC was in the midst of a severe liquidity crisis precipitated by the collapse of the financial markets, the national recession and a decline in domestic automobile sales.[2] In the face of the global meltdown of the financial markets and a liquidity crisis unprecedented in MLC's 100-year history, MLC was forced to file a Chapter 11 case in order to preserve its value, permit the survival of its business and save hundreds of thousands of jobs associated not only with MLC, but also its vast supplier and dealer networks. MLC

---

[2]  See Affidavit of Frederick A. Henderson dated as of June 1, 2009 filed with this Court at docket 21.

ultimately sold substantially all of its assets under §363 of the Bankruptcy Code because there simply was no viable alternative. The only alternative was a piecemeal liquidation of MLC's assets.

3.      Since the section 363 sale, MLC has worked diligently to manage MLC's remaining properties, liquidate MLC's assets, resolve claims, and negotiate a plan of liquidation with the various parties in interest, including the EPA, the US Department of Justice, the statutory Committees and the US Treasury. APS played an integral role in formulating and implementing the Plan and maximizing value for creditors.

4.      On or about May 30, 2009, MLC retained APS to serve as crisis managers to the Debtors and appointed Mr. Koch to serve as Chief Restructuring Officer to the Debtors. This engagement was approved pursuant to an order entered by this Court on July 2, 2009 (Docket Number 2949, the "*Retention Order*"), a copy of which is attached hereto as **Exhibit C**. Subsequent to the sale of substantially all of MLC's assets, Mr. Koch was appointed CEO of MLC.

5.      The Retention Order approved the original Engagement Letter dated May 29, 2009, which provided for hourly fees, expenses and incentive compensation. [3]  The Engagement Letter was subsequently amended on July 23, 2009 by the First Amendment (the "First Amendment"). The First Amendment provided for hourly rate reductions along with incentive payments, including, but not limited to, (i) a percentage recovery to APS on monies returned to the U.S. Treasury; and (ii) an incentive payment tied to confirmation of a plan of liquidation. The First Amendment was approved by this Court on August 18, 2009.

---

[3] Throughout these Chapter 11 Cases, APS has been paid hourly fees and has been reimbursed for expenses incurred in connection with services provided to the Debtors. APS has timely filed all monthly staffing reports and quarterly compensation reports relating to these fees and expenses as outlined in the Retention Order.

6.    A Second Amendment dated as of November 12, 2009 addressed the

compensation of APS for services related to an MLC subsidiary, now sold, which operated an

automatic-transmission manufacturing facility in France.

7.    The Third Amendment provided a retroactive return to APS' standard rates, and

replaced the incentive payments to APS under the First Amendment with incentives designed to

more closely align the APS incentive payments with the interests of stakeholders. The Board of

Directors of APS unanimously approved the Third Amendment after determining that the Third

Amendment was in the best interests of the estate of MLC.

8.    The Third Amendment provides for the following discretionary fees:

a.    Total Unsecured Creditor Claims. In the event that the total unsecured
claims pool (including bond claims) is less than $35 billion, APS shall be
entitled to a Discretionary Fee of $5.0 million. In the event that the total
unsecured claims pool (including bond claims) is equal or greater than $35
billion but less than $42 billion, APS shall be entitled to a Discretionary Fee
of $2.5 million. Between $35 billion and $42 billion the Discretionary Fee
shall be adjusted pro rata. For example, if the total unsecured claims are
$38.5 billion, the Discretionary Fee under this paragraph would be $3.75
million. In the event that the total unsecured claims pool exceeds $42
billion, APS shall not be entitled to a Discretionary Fee for this milestone;

b.    Distribution of Stock and Warrants. At such time as APS and the Trustee
distributes 70% or more of each of the Common Stock and Warrants of New
GM to the Debtors' unsecured creditors following the effective date of a plan
of liquidation, APS shall be entitled to a Discretionary Fee of $2.5 million.

c.    Confirmation of a Plan of Liquidation. In the event that the Debtors confirm
a plan of liquidation that becomes effective, APS shall be entitled to an
Incentive Fee of $7 million that is payable upon confirmation of the plan of
liquidation.

9.    The Third Amendment was approved by this Court on September 17, 2010 (the

"*Third Amendment Approval Order*"). The Third Amendment Approval Order was entered

after notice and a hearing and review of affidavit testimony from both Stephen H. Case,

7

Chairman of the Board of Directors of MLC, and Albert A. Koch, President and Chief Executive Officer of MLC.

10.    In addition, the Third Amendment Approval Order specifically provides in part: "Ordered that the Third Amendment is authorized and approved and the Debtors are authorized to enter into the Third Amendment and to make all payments provided therein. . . ." Thus, the Third Amendment Approval Order not only approved the Discretionary Fees, after a finding of reasonableness, but authorized payment of the Discretionary Fees at such time as they were earned by APS.[4]

11.    On March 29, 2011, this Court entered an order confirming the Debtors' Plan. The Plan became effective on March 31, 2011. As such, APS has earned the $7 million incentive fee for confirmation of a plan of liquidation.

12.    In addition, on April 21, 2011, APS completed the first distribution, which distributed over 75% of the Common Stock and Warrants of New GM to the Debtors' unsecured creditors. As such, APS has earned the incentive fee of $2.5 million for distribution of stock and warrants.

13.    APS has also substantially reduced the total unsecured claim pool. Currently, the total unsecured claim pool is greater than $35 billion but less than $42 billion. As such, APS is entitled to an incentive fee of between $2.5 million and $5.0 million depending on the final dollar value of the unsecured claims pool. Because this incentive fee is formulaic, APS requests that this Court approve the payment of this incentive fee in one or more installments at such time

---

[4] APS notes that the Retention Order includes language providing that APS must file time records in connection with any application for approval of a success fee. APS believes that this language is only applicable to the success fees previously approved in this case with respect to the 363 sale. In addition, APS believes the Third Amendment Approval Order modifies the Retention Order and does not require the submission of time records. Indeed, in connection with the Third Amendment Approval Order, this Court has already (i) found that the Discretionary Fees are a reasonable exercise of the Debtors' business judgment; and (ii) approved payment of the Discretionary Fees.

as the GUC Trust Trustee concurs in writing that the ultimate level of claims is such that additional incentive fees have been earned.

## CRISIS MANAGEMENT SERVICES PROVIDED TO THE DEBTORS

14.     APS believes it has earned the Discretionary Fees and is entitled to their payment based on the Third Amendment Approval Order and the satisfaction of the conditions precedent to earning the Discretionary Fees. Nevertheless, in further support of the Discretionary Fees, APS has highlighted below a summary of services that it provided. These services were essential to the successful development and confirmation of the Plan and reduction of unsecured claims[5]. This was a very unique business situation where the skills of APS were required and tested with results that few, if any, could have accomplished as effectively or as expeditiously. APS was effectively required to create a new business enterprise on July 11, 2009 as all the employees of the existing General Motors were transferred to New GM. The MLC management team consisted predominantly of APS temporary staff, which was supplemented by approximately 60 full time equivalent contractors hired by MLC.

15.     MLC was created by AlixPartners to fulfill two purposes. First, it was to manage and ultimately liquidate a large industrial real estate company with over 90 real estate locations, as well as to manage the environmental remediation that was required at many of these sites. Second, it was to prosecute the Chapter 11 case of the largest industrial company to ever file a Chapter 11 proceeding. To achieve these two separate but complimentary purposes, AlixPartners resources were generally assigned to either an operating function or a bankruptcy

---

[5] As part of its retention, APS has filed both Monthly Staffing Reports and Quarterly Fee Reports that have provided substantial detail of accomplishments throughout the case. Due to their voluminous nature they have not been attached to this application, but are available on the docket.

administration activity. Beginning on July 11, 2009 MLC began its first day of operation with APS teams dedicated to the operations of MLC and the administration of the Chapter 11.

16.    The operational activities can best be explained by the major functional areas into which MLC resources were organized. The functional areas and the primary APS personnel responsible for them were:

**Executive Management** was responsible for the overall strategy and day to day management of the operations and the prosecution of the Chapter 11 cases. This area was staffed by Messrs. Koch and Stenger.

**Environmental Management** was responsible for day to day activities of environmental compliance, operations and maintenance activities, remediation work, and contractor management and numerous other activities.   In addition, the development of remediation plans and cost estimates for over 90 sites and the subsequent review and diligence of such estimates with federal and state regulators and their representatives was conducted by this team.   MLC hired approximately 30 environmental contractors covering the 14 states in which MLC operated and managed the daily operations and responsibilities that those contractors undertook.  This function was led by Mr. Redwine and staffed by Messrs. Haeger, Muzzin and Roling.

**Real Estate Management** was responsible for the development and day to day implementation of disposition plans for over 90 real estate sites.  Activities included marketing properties, broker management, weekly status conference calls with the Automotive Task Force and Automotive Communities Task Force, as well as frequent meetings and other communications with state and local officials regarding site status, participation in various state and local planning forums and negotiation of property sales.  This function was led by Mr. Braden and staffed by Mr. Deighan and Ms. Ni.

**Equipment Disposition, Plant Wind-Down and Site Management** was responsible for developing and implementing plans to maximize value from equipment, developing and implementing demolition plans, managing the return and wind-down of leased facilities from General Motors and managing the day to day operation of the sites through MLC on-site managers. MLC retained approximately 18 contractors to perform site management in the field. This area was enormously busy beginning in July 2009 as no infrastructure existed nor were there any employees to administer over 130 leased and owned facilities in various stages of operation. This function was led by Mr. Braden and staffed by Messrs. Cook, Healy, Gaston, Nowicki, Berreondo and Whitlock.

**Finance and Administration Management** was responsible for the design and implementation of accounting and finance, planning and budgeting, human resources, and tax systems and procedures consistent with the current and prospective needs of MLC and its successors and management of the day to day tasks of these functions. MLC developed and installed its own accounting and management information systems including email, SharePoint, environmental contract control and other systems that were completed by December 31, 2009, which enabled MLC to stop "renting " these same functions from New GM, resulting in saving MLC over $5 million. This area was led by Mr. Selzer and was staffed by Messrs. Hamilton, Rosenthal, Jilla, Thorson, Patel and a staff of five full time equivalent contractors.

17.    The bankruptcy administration activities of MLC were staffed by APS personnel in coordination with the Debtors' attorneys, Weil, Gotshal & Manges LLP. Our efforts were focused in the Detroit offices of MLC and the Dallas call and data center of APS. The bankruptcy administration activities were led by David Head, Carrianne Basler and Tom

Morrow, with significant contributions from a core team of 12 team members and assistance from numerous other APS professionals. The major areas were organized into teams as follows:

**Bankruptcy Advisory and Bankruptcy Management Support** was responsible for developing, negotiating and implementing the Plan, reviewing and reconciling debt/claim values, and objecting to claims and otherwise resolving claims resulting in claim reductions exceeding $150 billion (not including the litigation claims discussed below). The team implemented unique strategies for resolution of priority and secured tax claims, accounts payable, rejection claims for contracts and leases, bondholder claims, environmental claims, employee claims, asbestos claims and other claims.

**Litigation Claims** was responsible for reviewing the value of thousands of litigation claims, including products liability, personal injury and wrongful death claims, class action claims; and indemnification and subrogation claims, and working with defense counsel on resolving the litigation. This included the development of groundbreaking Alternative Dispute Resolution ("*ADR*") procedures, and managing the ADR process, including mediation and settlement negotiations. Litigation claims have been reduced from over $100 billion to approximately $2.4 billion.

**Communications** was responsible for managing the Debtor's call center and processing inquiries from creditors, investors, litigation claimants, counsel, former employees, shareholders, bondholders and other parties in interest.

## LEGAL STANDARD AND RATIONALE SUPPORTING INCENTIVE COMPENSATION

18.    Performance fees or incentive fees are normal parts of compensation for turnaround firms and restructuring consulting firms and are standard for APS engagements, both inside and outside of the bankruptcy context. Indeed, APS and other similar firms price their engagements to include performance or incentive fees as part of the total compensation package for such engagements.

19.     Performance or incentive fees are typical in restructuring cases because clients appreciate an approach that aligns the interests of the client/debtor with the interests of its advisor. In colloquial terms, incentive fees demonstrate that the turnaround firm has "skin in the game" along with the company undergoing the turnaround. This alignment of interests inures to the overall benefit of a client/debtor, as well as its estate and creditors. Without that demonstrated alignment of interests, such a client/debtor might be reluctant to reach out for critical leadership and specialized guidance from seasoned turnaround and management firms like APS. As a result, the absence of specialized top management leadership would decrease the likelihood of a successful outcome.

20.     Similarly, incentive fees are a vital and inseparable component of the overall compensation model for turnaround and crisis management firms like APS, and denial of such fees in cases such as MLC, where a concrete showing of both success and merit is made, would ill serve restructurings generally and potentially produce undesirable results. Some firms would simply decline challenging engagements and others would readjust their compensation models by increasing their monthly and/or hourly fees. In recognition of these realities, Courts routinely authorize and approve the payment of performance fees and incentive fees upon a clear and demonstrable showing of management expertise that is transformative, in terms of business viability, capital structure fit and value generation. This reasoning is precisely applicable to the engagement of APS by the Debtors' in these chapter 11 cases.

21.     As the Bankruptcy Court in the Southern District of Ohio held in *In re Cardinal Indus., Inc.*, 151 B.R. 843 (Bankr. S.D. Ohio 1998) (an AlixPartners affiliate who served as Chapter 11 operating trustee was awarded a fee of $2.1 million plus a success fee of 50,000 shares of stock):

> Performance-based or success-factor bonuses are a normal part of compensation arrangements for management restructure consultants and . . . such bonuses generally far exceed the time value of the consultant's services on a lodestar basis. Indeed, the time value component is referred to as the base salary, apparently payable to the consultant even if success is not achieved.

*In re Cardinal Indus., Inc.*, 151 B.R. at 847.

22.    Courts review transaction fees or success fees under the "reasonableness standard" of section 330 of the Bankruptcy Code. *In re XO Communications, Inc.*, 398 B.R. 106 (Bankr. S.D.N.Y. 2008); *In re Northwest Airlines Corporation*, 400 B.R. 393 (Bankr. S.D.N.Y. 2009). In considering a success fee, courts consider (i) whether the financial advisor's services were necessary and beneficial to the debtors' estates at the time the services were rendered; and (ii) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases outside of bankruptcy. *XO Communications* at 18. Where an incentive fee is tied to the results of the bankruptcy case, time spent on the case "may shed little light on the actual value that a financial advisor brought to a transaction." *XO Communications*, at 18, fn. 9.

23.    When Congress passed the Bankruptcy Reform Act of 1978, it decided to remove the "spirit of frugality" as a factor in bankruptcy fees. The standard is now the cost of comparable services in a non-bankruptcy setting. *In re Drexel Burnham Lambert Group, Inc.*, 133 B.R. 13 (Bankr. S.D.N.Y. 1991) (Congress's objective in requiring that the market, not the court, establish attorneys' rates was to ensure that bankruptcy cases are staffed by appropriate legal specialists). Inasmuch as performance-based fees are a normal part of the fee structures of APS and other turnaround and management restructuring firms, both within and outside of bankruptcy, approval of the Discretionary Fees is appropriate to assure comparable compensation for comparable services.

14

24.    Recent and high-profile bankruptcy cases involving performance-based fees awarded to APS and its affiliates, as well as to other turnaround and restructuring specialists, include the following:

- Enron Corp., a Chapter 11 case in the Southern District of New York before Judge Gonzalez. The Bankruptcy Court granted approval to Stephen F. Cooper, of the turnaround firm Kroll Zolfo Cooper LLC, to receive payment of $12 million as a success fee for services as Debtor's interim chairman. In re Enron Corp., 2006 WL 1030421 (Bankr. S.D.N.Y. 2006)

- Calpine Corporation, a Chapter 11 case in the Southern District of New York before Judge Lifland. APS was crisis manager to the Debtors and in 2008 was awarded success fees of $6.0 million [Case No. 05-60200, Docket No. 7748].

- Chrysler Corporation, a Chapter 11 case in the Southern District of New York before Judge Gonzalez. Capstone Advisory Group, LLC, was financial advisor to the Debtors and the Court approved, and Capstone was paid, a $17 million transaction fee for the successful sale of a majority of Chrysler's assets.

- Northwest Airlines, a Chapter 11 case in the Southern District of New York before Judge Gropper. Seabury APG was financial advisor to the Debtors and in 2007 was awarded success fees of $13.5 million [Case No. 05-17930, Docket No. 7633]. No objections were filed to the application and it was granted by the court.

- Interstate Bakeries Corp., a Chapter 11 case in the Western District of Missouri. Alvarez & Marsal, crisis managers to the Debtors, was awarded success fees of $3.8 million in 2009 [Case No. 04-45814, Docket No. 12171]. No objections were filed to the application and it was granted by the court.

- Dana Corporation, a Chapter 11 case in the Southern District of New York. APS was crisis manager to the Debtors and in 2008 was awarded a success fee of $4.0 million [Case No. 06-10354, Docket No. 8108]. No objections were filed to the application and it was granted by the court.

- BearingPoint, a Chapter 11 case in the Southern District of New York before Judge Gerber. APS was crisis manager to the Debtors and in 2009, the Bankruptcy Court approved a contingent success fee of $4.5 million [Case No. 09-10691, Docket No. 1296]. No objections were filed to the application and it was granted by the court.

- SemGroup, a Chapter 11 case in the District of Delaware. In 2010, the Bankruptcy Court approved a contingent success fee of $6,825,000 to APS [Case No. 08-11525, entered on March 4, 2010, at Docket No. 7408]. No objections were filed to the application and it was granted by the court.

- Readers Digest, a Chapter 11 case in the Southern District of New York before Judge Drain. AlixPartners, LLP acted as financial advisor to the Debtors and in 2010, the Bankruptcy Court approved a contingent success fee of up to $5.0 million. AlixPartners ultimately received a success fee of $3.0 million [Case No. 09-23529, Docket No. 744]. No objections were filed to the application and it was granted by the court.

- Lyondell Chemical Co., a chapter 11 case in the Southern District of New York before Judge Gerber. APS was crisis manager to the Debtors and in 2010, the Bankruptcy Court approved a contingent success fee of $7.0 million [Case No. 09-10023 Docket No. 4814]. No objections were filed to the application and it was granted by the court.

25.    In short, performance-based fees are a normal component of compensation for firms such as APS, which provide financial advisory, crisis management and turnaround services to debtors and other troubled companies and may be approved on that basis alone. Further, the amount of the Discretionary Fees in this case is reasonable pursuant to the standards outlined in §330 of the Bankruptcy Code. In addition, approval of the Discretionary Fees in these Chapter 11 Cases is particularly warranted because the extraordinary services provided by APS, Mr. Koch and the APS temporary staff resulted in tangible, measurable and significant incremental value to the Debtors and their estates.

26.    APS recognizes that its efforts did not singularly drive the confirmation of the Plan, and that the efforts of the Debtors, their employees, and other professionals were also extraordinary under the circumstances. However, the general economic environment and the specific challenges facing the Debtors and their businesses were exceptional. Moreover, APS accepted these challenges and risks under the unprecedented conditions described earlier.

27.    APS played a key role in the success of these cases by providing the guidance, stewardship and professional expertise that drove confirmation of the Plan in an incredibly complex bankruptcy proceeding. The Plan maximizes value to parties in interest by implementing a unique trust structure to permit environmental remediation, claims resolution and

stock distribution to unsecured creditors. The Plan resulted from a dedicated team, including Mr. Koch and APS' temporary staff, working closely with federal and local governments, regulatory bodies, communities and creditors, to provide a creative solution to a challenging problem.

27.    The Koch Declaration supports this request. The Koch Declaration shows, among other probative points, that APS and other turnaround firms regularly require and receive success fees as part of their normal compensation structure, both inside and outside of bankruptcy cases.

## CONCLUSION

28.    To summarize, (a) the Engagement Letter provides for the payment of the Discretionary Fees based upon defined criteria, (b) such criteria has been attained, (c) fees, such as the Discretionary Fees, are a normal part of the compensation structure of APS and other similar firms both inside and outside of bankruptcy, and (d) APS played a pivotal role in the extraordinary results of this case. Accordingly, the approval of the Discretionary Fees is both warranted and appropriate.

WHEREFORE, APS respectfully requests that this Court enter an order, substantially in the form attached hereto as Exhibit D, awarding APS its Discretionary Fees in the amount of up to $14,500,000 and such other and further relief as is just or appropriate.

Dated: April 29, 2011

By:    _____
       Albert A. Koch
       Authorized Representative
       AP Services, LLC
       2000 Town Center, Suite 2400
       Southfield, MI 48075

17

# **EXHIBIT A**
## ENGAGEMENT LETTER

# AP Services LLC

Chicago  Dallas  Detroit  New York  San Francisco  Washington, DC

May 29, 2009

Mr. Frederick A. Henderson
President and Chief Executive Officer
General Motors Corporation
300 Renaissance Center
Detroit, MI 48243

Re:  Agreement for Interim Management and Restructuring Services

Dear Mr. Henderson:

This letter, together with the attached Schedule(s), Exhibit and General Terms and Conditions, sets forth the agreement ("Agreement") between AP Services, LLC, a Michigan limited liability company ("APS"), and General Motors Corporation and certain of its affiliates (the "Company") for the engagement of APS to provide certain temporary employees as set forth on Exhibit A (the "Temporary Staff") to the Company to assist it in its restructuring as described below.

All defined terms shall have the meanings ascribed to them in this letter and in the attached Schedule(s), Exhibit and General Terms and Conditions.

This letter supersedes that certain engagement letter between AlixPartners, LLP ("AlixPartners"), an affiliate of APS, and the Company dated as of February 3, 2009 (the "AlixPartners Engagement Letter"). The AlixPartners Engagement Letter contemplated the execution of this Agreement, and the potential provision of Temporary Staff by APS to the Company in connection with its restructuring efforts, including any sale of its assets.

Generally, the engagement of APS, including any APS employees who serve in Executive Officer positions, shall be under the supervision of the Board of Directors of the Company and the direct supervision of its President and Chief Executive Officer ("CEO"). Neither the CRO (as defined below) nor any Temporary Staff are anticipated to act as directors of General Motors Corporation, either before or after the Transaction.

---

### OBJECTIVE AND TASKS

---

On or before May 31, 2009, APS will provide Mr. Al Koch to be appointed and serve as the Company's Chief Restructuring Officer ("CRO"), reporting directly to the Company's CEO. Working collaboratively with the senior management team, the Board of Directors and other Company professionals, the CRO will assist the Company in evaluating and

# APServices LLC

Mr. Frederick A. Henderson
May 29, 2009
Page 2 of 41

implementing strategic and tactical options through the restructuring process, including any sale of its assets. In addition to the ordinary course duties of a CRO, the Temporary Staff roles will include working with the Company and its employees and other professionals to do the following:

- Assist the Company and its advisors in the negotiation and completion of the sale of assets and operations contemplated by the Company (the "Transaction") to a US Treasury sponsored purchaser ("New GM"). The Transaction is anticipated to be processed and consummated pursuant to section 363 of the United States Bankruptcy Code (the "Code").

- On behalf of the Company (the "Company" or "Oldco"), to support the negotiation of, and participate in the review of, the proposed structure of the Transaction, including the assets to be sold and transferred to New GM and the liabilities to be assumed by New GM as a part of the purchase price, and the negotiation and implementation of various transitional contractual relationships between Oldco and New GM. In performing services, APS will take into consideration (i) the management and resources that Oldco will need after the consummation of the Transaction, and (ii) the necessary transitional contractual relations between Oldco and New GM.

- As noted, prior to the closing of the Transaction, the CRO will report to the Company's CEO. As to the services to be performed by APS as described above, the CRO will communicate directly with the Chairman of the Board, and ultimately the entire Board of Directors, as necessary, in respect of any issues that APS considers germane to its assignments. APS will meet with and report directly to the Board on its progress and on the performance of its engagement.

- Upon the closing of the Transaction, the Board shall appoint Mr. Koch as the Chief Executive Officer (the "CEO") of Oldco and the remaining directors will select and appoint additional directors as appropriate to oversee the administration of Oldco. As CEO, Mr. Koch will report directly to the Board of Oldco. APS shall continue its engagement with OldCo in accordance with the terms of this agreement. If resolved by the Board:

  - Certain Temporary Staff may become officers of OldCo or officers or directors of OldCo's subsidiaries as requested by the Board and agreed to by APS.

  - Al Koch and the Temporary Staff will oversee the administration of the Company's bankruptcy case, including compliance with bankruptcy court reporting requirements and the discharge of obligations of the Company pursuant

# AP Services llc

Mr. Frederick A. Henderson
May 29, 2009
Page 3 of 41

> to the Code, and at the direction of the Board, shall propose, file and implement a plan of liquidation under chapter 11 in accordance with the Code.

> — Al Koch and the Temporary Staff will seek to monetize assets, settle and administer claims as soon as practicable.

- Assist the Company, as requested, in relation to its investments in subsidiaries and affiliates and business counterparts and any other actions consistent with Code and applicable authorities.

## STAFFING

APS will provide the Company with the Temporary Staff set forth on Exhibit A, subject to the terms and conditions of this Agreement, with the titles, pay rates and other descriptions set forth therein.

The Temporary Staff may be assisted by or replaced by other professionals at various levels, as required, who shall also become Temporary Staff. APS will keep the Company informed as to APS' staffing and will not add additional Temporary Staff to the assignment without first consulting with the Company to obtain Company concurrence that such additional resources are required and do not duplicate the activities of other employees or professionals.

If APS finds it desirable to augment its professional staff with independent contractors (an "I/C") in this case, (i) APS will file, and require the I/C to file, 2014 affidavits indicating that the I/C has reviewed the list of the interested parties in this case, disclosing the I/C's relationships, if any, with the interested parties and indicating that the I/C is disinterested; (ii) the I/C must remain disinterested during the time that the I/C is retained and providing services to the Company; and (iii) the I/C must represent that he/she will not work for or be employed by the Company or other parties in interest in this case during the time APS is involved in providing services to the Company.

APS' standard practice is to charge for an I/C's services at the APS rate for a professional of comparable skill and experience, which rate typically exceeds the compensation provided by APS to such I/C. However, if the Company commences a case under the Code, APS will charge a rate equal to the compensation provided by APS to the I/C.

## TIMING, FEES AND RETAINER

In the event the Company commences a case under the Code, the Company will apply to the Bankruptcy Court, on the date of filing or as soon thereafter as practicable, to obtain

# AP Services LLC

Mr. Frederick A. Henderson
May 29, 2009
Page 4 of 41

approval of APS's retention and Retainer pursuant to section 363 of the Bankruptcy Code *nunc pro tunc* to the date of filing. It is understood that the terms and conditions of this Agreement and, in particular, the compensation, reimbursement, Success Fee, Discretionary Fee, and Break Fee (each as defined later) are subject to (a) prior approval of the Bankruptcy Court to be treated as administrative expenses of the bankruptcy case; (b) may be subject to a standard of reasonableness; and (c) that APS will file an application for Bankruptcy Court approval of the Second Payment of the Success Fee, the Discretionary Fee, and the Break Fee, as each is asserted to be due and payable. The Debtors will seek Bankruptcy Court approval of the First Payment of the Success Fee in connection with seeking approval of the Transaction.

The Company shall compensate APS for its services, and reimburse APS for expenses, as set forth on Schedule 1.

\*    \*    \*

If these terms meet with your approval, please sign and return the enclosed copy of the Agreement.

We look forward to our continued relationship.

Sincerely yours,

AP SERVICES, LLC

*Fred Crawford*
        *by K*
Fred Crawford

*A. Koch*
A/A. Koch

Acknowledged and Agreed to:

GENERAL MOTORS CORPORATION

By: _____

Its: _____PRESIDENT + CEO_____

Dated: _____MAY 30, 2009_____

APServices LLC

AP Services, LLC
**Employment by General Motors Corporation**

**Exhibit A**

**Temporary Staff**
**Individuals with Executive Officer Positions**

| Name | Description | Hourly Rate |
|------|-------------|-------------|
| Al Koch | Chief Restructuring Officer | $835 |

**Additional Temporary Staff**
**(subject to update)**

| Name | APS Description of Title | Hourly Rate |
|------|--------------------------|-------------|
| Yoni Aidan | Vice President | €420 |
| Konstantinos Alexopoulos | Vice President | €520 |
| Stefano Aversa | Managing Director | $835 |
| Afshin Azhari | Director | $510 |
| Arnd Baur | Director | €555 |
| Kurt Beckeman | Director | $595 |
| Aleksandra Bozic | Vice President | $450 |
| Kyle Braden | Director | $555 |
| Garry Brown | Managing Director | $790 |
| Marc Brown | Director | $595 |
| Frank Browne | Associate | $265 |
| Susan Budd | Director | $510 |
| Martin Cairns | Director | £420 |
| Cliff Campbell | Director | $650 |
| Michelle Campbell | Director | $595 |
| Chris Capers | Director | $595 |
| Patrick Clark | Analyst | $260 |
| Thomas Clarke | Director | $510 |
| Bruce Conforto | Director | $595 |
| Christian Cook | Director | $595 |
| Fred Crawford | Managing Director | $835 |
| Rick Davidson | Director | $595 |
| Dennis DeBassio | Associate | $360 |

APServices LLC

| Name | APS Description of Title | Hourly Rate |
|------|------------------------|-------------|
| Tony Flanagan | Managing Director | $730 |
| John Franks | Director | $510 |
| Dan Goldwin | Director | $555 |
| Alexandra Griffin | Analyst | $235 |
| Barb Guefa | Director | $595 |
| James Guo | Vice President | CNY 2,750 |
| Jens Haas | Director | €555 |
| Scott Haeger | Director | $510 |
| David Hairston | Director | $595 |
| Michael Hartley | Director | $595 |
| David Hewish | Director | £460 |
| John Hoffecker | Managing Director | $835 |
| Elmar Kades | Director | €555 |
| Jan Kengelbach | Vice President | $500 |
| Susanna Kim | Paraprofessional | $180 |
| Carsten Koenig | Director | €555 |
| Tai Li | Director | $595 |
| Drew Lockard | Director | $510 |
| Olle Lundqvist | Director | €535 |
| Reese McNeel | Vice President | £290 |
| Natalie Meuche | Paraprofessional | $180 |
| Meade Monger | Managing Director | $835 |
| Tom Morrow | Managing Director | $685 |
| Jason Muskovich | Director | $595 |
| Bruce Myers | Managing Director | $790 |
| Ivo Naumann | Managing Director | CNY 5,250 |
| Michael O'Connor | Director | £485 |
| Christian Paul | Director | CNY 4,100 |
| Bobbie Phillips | Analyst | $235 |
| Vanessa Pogue | Paraprofessional | $180 |
| C.V. Ramachandran | Managing Director | $790 |
| Dan Ritter | Director | $510 |
| Gordon Schreur | Director | $595 |
| Axel Schulte | Managing Director | €675 |
| Vinzenz Schwegmann | Managing Director | €730 |
| Thomas Sedran | Managing Director | €785 |
| Ketav Shah | Director | $595 |
| Ted Stenger | Managing Director | $835 |
| Stephen Taylor | Managing Director | £575 |
| Michael Tyroller | Director | €555 |

APServices llc

| Name | APS Description of Title | Hourly Rate |
|---|---|---|
| Mark Wakefield | Director | $595 |
| Michael Weyrich | Managing Director | £545 |
| Richard Whitlock | Director | $510 |
| Jens-Ulrich Wiese | Director | €535 |
| Peter Williams | Vice President | £360 |

The parties agree that Exhibit A can be amended by APS from time to time to add or delete staff, and the Monthly Staffing Reports shall be treated by the parties as such amendments.

# ΛPServices llc

## SCHEDULE 1

### FEES AND EXPENSES

1.  **Fees:** APS' fees will be based on the hours worked by APS personnel at APS' hourly rates, which are:

| | |
|---|---|
| Managing Directors | $ 685-995 |
| Directors | $ 510-685 |
| Vice Presidents | $ 350-500 |
| Associates | $ 260-360 |
| Analysts | $ 235-260 |
| Paraprofessionals | $ 180-200 |
| Independent Contractors | TBD |

Work performed by the Temporary Staff outside of North America will be charged at their local rates converted to U.S. dollars on the invoice date. APS reviews and revises its billing rates on January 1 of each year. The above rates will not be increased until January 1, 2010.

For those engagements where the Company requests that APS provide electronic discovery services -- which may include the identification, preservation, collection, processing, hosting and production of electronically stored information -- the following charges for processing, hosting and production will apply in addition to the Temporary Staff hourly fees associated with the identification, preservation and collection of electronically stored information:

**Processing**

| | |
|---|---|
| Processing | $750 per Gigabyte |
| TIFF Creation | a.  $.05  per page |
| OCR | c.  $.03  per page |

**Document Review**

| | |
|---|---|
| Attenex Document Mapper Analysis | $2,500 per Gigabyte |
| iCONECT Loading (waived if using with Attenex) | |
| TIFF images | $.02 per image |
| Native files | $75 per Gigabyte |
| Review Platform Licences | $150 per user/month |
| Storage of Hosted Data | $50 per Gigabyte/month |

**Production**

| | |
|---|---|
| Bates Number Endorsement | $.01 per stamp/page |
| Production Media | At Cost |

Page 8 of 41

# APServices LLC

2. **Success Fee:** In addition to hourly fees, APS will be compensated for its efforts by the payment of a Success Fee as described below. The payment of the Success Fee, the Discretionary Fee (as defined below), and the Break Fee (as defined below) will be subject to the approval of the United States Department of the Treasury, or confirmation that such federal agency either has not objected, or will not object, to its payment. The Company understands and acknowledges that the Success Fee is an integral part of APS' compensation for the engagement.

If the Company completes a successful sale of a substantial portion of its assets to NewCo pursuant to Section 363 of the Code, the Company will pay APS a Success Fee of $13.0 million, and a discretionary fee in an amount to be determined at the Company's sole discretion (the "Discretionary Fee"), with the Discretionary Fee eligible for payment only if the bankruptcy case (i) yields extraordinarily positive results; and (ii) demonstrates that APS added significant value in achieving the consummation of the Transaction and the presentation of the Plan of Liquidation.

The payment of the Success Fee, subject to the conditions set forth in the attached letter under the title "Timing, Fees and Retainer," shall be due and payable as follows:

(a) $6.5 million at closing of the Transaction (the "First Payment"),

(b) $6.5 million on the first anniversary of the closing of the foregoing sale (the "Second Payment"); and

(c) The Discretionary Fee will be paid as and when directed by the Company.

Unless the Agreement is terminated by the Company for Cause (as defined below) or as explicitly set forth in this Section 2, APS shall remain entitled to the Success Fee that otherwise would be payable for the greater of 12 months from the date of termination of this Agreement, and the period of time that has elapsed from the date of this Agreement to the date of such termination.

Cause shall mean:

(a) a Temporary Staff member acting on behalf of the Company is convicted of a felony, or

(b) it is determined in good faith by the Board of Directors of General Motors Corporation after five (5) business days notice and opportunity to cure, that either (i) a Temporary Staff member is engaging in misconduct injurious to the Company, or (ii) a Temporary Staff member is breaching any of his or her material obligations under this Agreement, or (iii) a Temporary Staff member is willfully disobeying a lawful direction of the Board of Directors or senior management of the Company.

# ÄPServices LLC

The Second Payment set forth above will be forfeited by APS (i) in the event that APS resigns without good reason or is terminated by the Company for Cause prior to the due date of the Second Payment or if, (ii) prior to its payment, Mr. Koch ceases to be CEO as a result of his voluntary resignation, death or disability, and APS fails to designate a reasonably acceptable replacement.

In the event that the anticipated sale to NewCo does not occur as planned, it is agreed that the Company and APS will negotiate in good faith to develop a replacement success fee formula that is patterned after that which was included in the AlixPartners Engagement Letter. APS acknowledges that such good-faith negotiations may not result in the parties' agreement on a replacement success fee formula.

3. **Expenses:** In addition to the fees set forth in this Schedule, the Company shall pay directly, or reimburse APS upon receipt of periodic billings, for all reasonable out-of-pocket expenses incurred in connection with this assignment, such as travel, lodging and meals, postage, courier, routine black and white copying, telephone, messenger and facsimile charges, subject to the Company's expense policies.

4. **Break Fee:** A break fee (the "Break Fee") will be payable to APS in the event that APS is terminated other than for Cause, as defined in Section 2 of this Schedule 1, prior to payment of $6.5 million as set forth in 2(b) above or by APS due to a material breach of this Agreement by the Company. The amount of such Break Fee shall be $6.5 million. Any payment of the Break Fee shall be in full satisfaction and release of any amounts that might otherwise be payable under paragraph 2 (b) or (c) above.

5. **Retainer:** This will confirm that AlixPartners is holding a retainer in the amount of $20 million (the "Retainer") pursuant to the AlixPartners Engagement Letter. Our billings for services rendered by AlixPartners and/or APS for the period ending May 31, 2009 will include actual time incurred through May 15, 2009 and an estimated billing for the period ending May 31, 2009. It is agreed that such billings will be paid by wire transfer on or before May 29, 2009, provided that any invoice therefor is received by the Company on or prior to May 21, 2009. In accordance with APS' standard terms and conditions, payment received for such invoice will replenish the Retainer to the agreed-upon amount.

At the inception of this Agreement, the full amount of the Retainer will be transferred from AlixPartners to APS. If actual approved billings for May are less than the amount paid, then APS will adjust June billings to reflect this overage. If actual approved time is more than the amount paid, then such difference will be charged to the Retainer, thereby permanently reducing the Retainer.

**AP**Services ᴸᴸᶜ

**SCHEDULE 2**

**DISCLOSURES**

APS has caused to be submitted for review, by its conflicts check system, the names of significant parties in interest in this case, as provided to APS by the Company. Additional parties in interest continue to be identified and this Schedule 2 may be updated by APS from time to time to disclose additional connections or relationships between APS and the interested parties.

APS completed a search of its client database for the past five years to determine whether it has had or has any relationships with the parties in interest provided by the Company thus far. Based on this search, APS knows of no fact or situation that would represent a conflict of interest for APS with regard to the Company. However, APS wishes to disclose the following:

- H&F Astro LLC and Hellman & Friedman Capital Associates V, LLC ("H&F Capital"), two private equity investment vehicles managed by Hellman & Friedman LLC ("H&F LLC", and collectively with H&F Astro LLC and H&F Capital, "H&F") own a controlling stake in AlixPartners, LLP ("AlixPartners"), an affiliate of AP Services, LLC ("APS"), which the Debtors engaged prepetition to provide certain advisory services. No material nonpublic information about the Debtors has been furnished by AlixPartners to H&F. AlixPartners' conflict checking system has searched the names of each managing director of H&F LLC and each portfolio company of H&F LLC (the "H&F Conflict Parties") against the list of Potential Parties in Interest, and AlixPartners has determined to the best of its knowledge that there are no resulting disclosures other than as noted herein. However, H&F, its members, affiliated fund entities or affiliates (collectively, the "H&F Entities") may have had, currently have or may in the future have business relationships or connections with the Debtors or other Potential Parties in Interest in matters related to or unrelated to the Debtors or their affiliates or these chapter 11 cases. The engagement will be performed solely by APS. AlixPartners operates independently of the H&F Entities, and does not share common employees or officers, except that certain H&F LLC managing directors or employees are on the Board of Directors of AlixPartners. AlixPartners' financial performance is not impacted by the success or failure of the H&F Entities. Accordingly, neither APS nor AlixPartners has undertaken to determine the existence, nature and/or full scope of any business relationships or connections that the H&F Entities may have with the Potential Parties in Interest, the Debtors or these chapter 11 cases, other than with respect to the H&F Conflict Parties. APS believes it continues to be disinterested and does not hold or represent an interest adverse to the estate with respect to the engagement, regardless of any direct or indirect relationship to or connection any of the H&F Entities may have with the Debtors.

- There are fifteen confidential clients of AlixPartners and/or APS, who are professionals in interest, suppliers, director affiliated companies, insurance providers, indenture trustees, investment bankers, executory contract counterparties, litigation parties, equity interest parties, utility providers, lenders, customers, bondholders, competitors and

Page 11 of 41

AℙServices ʟʟᴄ

creditors to the Debtors. The confidential clients are current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- AlixPartners is currently engaged by certain clients that may be suppliers to the Debtors, as more specifically described herein with respect to such individual clients. AlixPartners believes that these engagements do not present conflicts with respect to APS' proposed engagement by the Debtors. To alleviate potential conflict concerns, AlixPartners has developed guidelines in individual matters such as (i) informational barriers; and (ii) separate engagement teams. In addition, AlixPartners' and APS' professionals will continue to adhere to their confidentiality obligations with respect to individual engagements.

- A minor supplier to the Debtors is a current confidential client of AlixPartners. A managing director of AlixPartners is acting as Chief Restructuring Officer of the confidential client. AlixPartners believes that this engagement does not represent a conflict. In addition, AlixPartners' and APS' professionals will continue to adhere to their confidentiality obligations with respect to individual engagements.

- AlixPartners or an affiliate currently has a confidential pending client engagement with a supplier to the Debtors or an affiliate, in matters unrelated to the Debtors and their affiliates, except that the engagement indirectly involves a subsidiary of the Debtors. AlixPartners is not involved in negotiations with the subsidiary of the Debtors. AlixPartners believes that this engagement does not represent a conflict of interest between APS and the Debtors. In addition, professionals of AlixPartners and its affiliates will continue to adhere to their confidentiality obligations with respect to individual engagements.

- AlixPartners has previously represented GM and certain of its affiliates in numerous matters unrelated to this proceeding, in various capacities including financial advisor, officer, and litigation consultant.

- Many employees of AlixPartners have purchased GM vehicles under various published supplier discount programs; have financed vehicles and other purchases with GMAC financing on an arms-length basis, and have purchased other products and services offered to the public by General Motors Corporation ("GM"), its various divisions, and subsidiaries. These personal/consumer purchases may also occur in the future on an arms-length basis.

- We understand that Jay Alix, a minority equity holder and a former managing director of AlixPartners, and a former member of the Board of Directors of AlixPartners, may have entered into discussions with the Debtors regarding the potential engagement of Mr. Alix as a consultant to the Debtors. To our knowledge, while Mr. Alix consulted with the Debtors, he was not engaged by the Debtors and was not paid for his services.

- ABN AMRO and ABN AMRO Rothschild LLC ("ABN AMRO"), lenders, investment bankers and professionals in interest to the Debtors, are current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. ABN AMRO

# APServices LLC

is an indenture trustee, lender, bondholder, executory contract counterparty and collateral agent for vendors to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. ABN AMRO provides banking services to AlixPartners in matters unrelated to the Debtors and their affiliates.

- ACE American Insurance Company ("ACE"), an insurance provider to the Debtors, is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- AIG, AIG Global Investment Group and American International Group ("AIG"), bondholders, lenders and insurance providers to the Debtors, are affiliated with entities that are limited partners, litigation counterparties, adverse parties, lenders and bondholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. AIG has provided various types of insurance to AlixPartners in matters unrelated to the Debtors and their affiliates.

- American Axle & Manufacturing Holdings, a creditor to the Debtors, is the previous employer of a current AlixPartners employee.

- American Airlines, a director affiliated company to the Debtors, is a current and former client of AlixPartners and/or APS in matters unrelated to the Debtors and their affiliates. American Airlines was a customer to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. American Airlines is the previous employer of current AlixPartners employees.

- American Express Company ("American Express"), a director affiliated company to the Debtors, is a vendor to AlixPartners as well as a lender, bondholder, creditor and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. American Express is a member of a creditors' committee that was a former AlixPartners client in matters unrelated to the Debtors and their affiliates. American Express is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Ameritech, a creditor to the Debtors, is a creditor, lender and vendor to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Ameritech was a member of a creditor's committee that retained AlixPartners in matters unrelated to the Debtors and their affiliates.

- Amoco Corporation, a director affiliated company to the Debtors, is a co-defendant and lessor to former AlixPartners clients in matters unrelated to the Debtors and their affiliates. Amoco Corporation is an affiliated entity to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- AON Inc, an insurance provider to the Debtors, is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates. AON Inc. is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

# APServices LLC

- Apollo Management, a limited partner with the Debtors in various investment fund vehicles, is a lender to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Apollo Management is the parent of a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- AT&T, AT&T Business Service, AT&T Calling Cards, AT&T Capital Services Inc, AT&T Collocation Pro Cabs, AT&T Corp., AT&T Datacomm Inc., AT&T Inc Legacy SBC, AT&T Southeast, AT&T Teleconference, AT&T VTNS, AT&T Worldnet and AT&T Yellow Pages ("AT&T"), utility providers and director affiliated companies to the Debtors, are creditors, executory contract counterparties, vendors, lenders and shareholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate of AT&T is a former APS client in matters unrelated to the Debtors and their affiliates. AT&T is a vendor and a current client of AlixPartners in matters unrelated to the Debtors and their affiliates.

- Austin Ventures, a limited partner with the Debtors in various investment fund vehicles, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Avenue CLO V (collectively "Avenue"), a lender to the Debtors, is a lender, bondholder, executory contract counterparty and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Avenue is a client related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Avis Budget Car Rental and Avis Budget Group (collectively, "Avis"), customers to the Debtors, are the previous employers of a current AlixPartners employee. Avis is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Banca Intesa, a lender to the Debtors, has provided banking services to AlixPartners Srl, an affiliate of AlixPartners and APS.

- Bank of America Securities, LLC and Bank of America, N.A., lenders to the Debtors, are current and former clients of AlixPartners, as well as executory contract counterparties, creditors and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Bank of Montreal, a lender to the Debtors, is a bondholder, lessor and lender to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Bank of Montreal is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Bank of Montreal is a co-client to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Bank of New York, BNY GCM (Belgium), BNY Mellon Wealth Management and Bank of New York Mellon Corporation, ("BNY"), lenders, shareholders, bondholders, professionals in interest and indenture trustees to the Debtors, are lenders, bondholders, creditors and indenture trustees to current and former AlixPartners and/or APS clients in

# APServices LLC

matters unrelated to the Debtors and their affiliates. In addition, BNY is the previous employer of a current AlixPartners employee.

- Bank of Nova Scotia, a lender to the Debtors, was formerly a member of a bank group that retained AlixPartners as well as a creditor, lender and bondholder to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Bank One Corporation ("Bank One"), a director affiliated company to the Debtors, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. Bank One is a lender, creditor and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Barclays Bank, Barclays Bank of Kenya Limited, Barclays Bank PLC, Barclays Capital Inc. and Barclays Global Investors Limited ("Barclays Bank"), lenders, executory contract counterparties, bondholders, investment bankers and significant shareholders to the Debtors, and affiliated entities are creditors, significant shareholders, adverse parties, lenders and bondholders of current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Barclays Bank is a vendor to AlixPartners and is a co-client to a current AlixPartners client in matters unrelated to the Debtors and their affiliates. Barclays Bank is also the previous employer of a current AlixPartners employee.

- Bell South, Bell South Corp., Bell South Long Distance, Bell South Telecommunications and Bell South Business Systems are utility providers to the Debtors. Bell South is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Bear Stearns, Bear Stearns International Limited and Bear Stearns & Co. Inc., lenders, professionals in interest and investment bankers to the Debtors, are lenders, bondholders, and professional in interests to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Blue Cross Blue Shield ("BCBS"), a creditor to the Debtors, is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates. BCBS is a vendor and insurance provider to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- BNP Paribas and BNP Paribas Securities Corp., lenders, bondholders and professionals in interest to the Debtors, were lenders, creditors, professionals in interest to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. BNP Paribas is a related party to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Bosch, Robert Stifung GmbH, a creditor to the Debtors, is affiliated with an entity that is a creditor, vendor and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Robert Bosch Tool

APServices ᴸᴸᶜ

Corporation, is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Robert Bosch previously employed a current AlixPartners employee.

- BP Amoco p.l.c, BP Canada Energy Mktg Corp , BP Energy Co USA, BP PLC - Yorktown Virginia Refinery, BP PLC (formerly, BP PLC- Yorktown Virginia Refinery), BP Products N America Inc , BP Solar International Inc. and BP Trinidad & Tobago LLC (collectively, "BP"), director affiliated companies and utility providers to the Debtors, are current and former AlixPartners clients in matters unrelated to the Debtors and their affiliates. An affiliate, BP Energy, is an executory contract counterparty and customer of current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Brown Rudnick LLP, a professional in interest in this bankruptcy matter, is opposing counsel and a professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Brown Rudnick LLP is plaintiff's counsel in threatened litigation against AlixPartners and APS.

- Brunswick Corporation, a customer to the Debtors, is a professional in interest and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Brunswick Corporation is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Burger King Corporation, a director affiliated company to the Debtors, is the previous employer of a current AlixPartners employee.

- Cadwalader, Wickersham & Taft LLP ("Cadwalader"), a professional in interest in this bankruptcy matter, is client counsel and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Cadwalader is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Canadian Imperial Bank of Commerce ("CIBC"), a lender to the Debtors, is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Other CIBC affiliated entities are lenders, bondholders, creditors, shareholders and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Carlyle Group, Carlyle High Yield Part 2008-1, Carlyle High Yield Part IX Ltd, Carlyle Partners IV, L.P. and Carlyle Partners V, L.P. (collectively, "Carlyle"), director affiliated companies and lenders to the Debtors, are current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Carlyle affiliated entities have been lenders, creditors and vendors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Caterpillar Inc Mstr Pen Tr, Caterpillar Logistics LLC, Caterpillar Logistics Services Inc., Caterpillar Logistics Services International NV, Caterpillar Logistics Supply Chain Services GMBG and Caterpillar Logistics Supply Chain Services Italia (collectively,

# AP Services LLC

"Caterpillar"), lenders, equity interest parties and joint venture parties to the Debtors, are vendors, customers, adverse parties, lenders, creditors and director affiliated companies to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Chevrolet Austria GmbH, Chevrolet Belgium, Chevrolet Deutschland GmbH, Chevrolet Espana S.A., Chevrolet Euro Parts Center B.V., Chevrolet Europe GmbH, Chevrolet Finland OY, Chevrolet France S.A.S., Chevrolet Italia S.p.A., Chevrolet Nederland B.V., Chevrolet Of Novato, Inc., Chevrolet Poland Sp. Z.O.O., Chevrolet Portugal, LDA, Chevrolet S.A. De Ahorra Para Fines Determinados, Chevrolet Sales (Thailand) Ltd., Chevrolet Sociedad Anonima De Ahorro Para Fines Determinados, Chevrolet Southeast Europe Automobile LLC., Chevrolet Suisse S.A., Chevrolet Sverige AB, Chevrolet Turkiye Ticaret Ltd. Sti., Chevrolet UK Ltd. and Chevrolet-Saturn Of Harlem, Inc., equity interest parties to the Debtors, are affiliated with an entity that is the previous employer of a current AlixPartners employee.

- Chrysler LLC, a competitor to the Debtors, is affiliated with entities that were customers, adverse parties, vendors, lenders and executory contract counterparties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Chrysler, LLC is the previous employer of a current AlixPartners employee.

- Citibank N.A., Bangkok Branch, Citibank N.A., Taipei Branch, Citibank NA-N Y, Citibank, N.A., Citibank, N.A., Citibank, National Association (Las Vegas, NV), Citicorp Securities Services Inc., Citicorp USA, Inc., Citigroup and Citigroup CIB (collectively, "Citi"), executory contract counterparties, lenders, professionals in interest, indenture trustees, bondholders, investment bankers and creditors to the Debtors, and affiliated entities are creditors, lenders, bondholders, shareholders, adverse parties, professionals in interest and lessors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Citizens Savings Bank, a lender to the Debtors, is the previous employer of a current AlixPartners employee. Citizens Savings Bank is a creditor and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Coca-Cola Beverages PLC, Coca-Cola Company and Coca-Cola HBC (collectively, "Coca-Cola"), director affiliated companies to the Debtors, are affiliated with an entity that is a lender to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Coca-Cola is the previous employer of a current AlixPartners employee.

- Comerica Bank ("Comerica), a lender to the Debtors, is a former lender to AlixPartners and is also a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Comerica is a lender, creditor, co-defendant and bondholder to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Comerica is the previous employer of a current AlixPartners employee. Comerica provides banking services to AlixPartners.

# APServices LLC

- Commerzbank AG, a lender to the Debtors, is an indenture trustee, lender, creditor and litigation party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Compaq Computer Corporation and Compaq Europe International, director affiliated companies to the Debtors, were client related parties to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Compaq Computer is an adverse party, lessee, and executory contract counterparty to former AlixPartners clients in matters unrelated to the Debtors and their affiliates.

- ConocoPhillips Company, a utility provider to the Debtors, is a creditor, executory contract counterparty and adverse party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, ConocoPhillips is a related party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Continental AG, a creditor to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Continental AG is a vendor to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Cravath Swaine & Moore, a professional in interest in this bankruptcy matter, is opposing counsel, client counsel and professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Cravath Swaine & Moore is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Cravath Swaine & Moore is a vendor to AlixPartners.

- Credit Suisse Securities (USA) LLC-Investment Arm ("CSS"), an investment banker and shareholder to the Debtors, is an affiliate of current and former AlixPartners clients in matters unrelated to the Debtors and their affiliates. Other CSS affiliated entities are lenders, creditors, bondholders, shareholders, limited partners and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Credit Suisse, is the previous employer of a current AlixPartners employee.

- Daimler AG, a strategic alliance to the Debtors, is affiliated with entities that were customers, adverse parties, vendors, lenders and executory contract counterparties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Dana Holding Corporation, a creditor to the Debtors, is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Davidson Kempner Capital Management, a bondholder to the Debtors, is a current AlixPartners client in matters unrelated to the Debtors and their affiliates. Davidson Kempner Capital Management is a lender to current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

# AP Services LLC

- Davis Polk & Wardwell, a professional in interest in this bankruptcy matter, is a creditor, professional in interest and client counsel to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Deloitte & Touche, Deloitte Touche Tohmatsu and Deloitte, LLP (collectively, "Deloitte"), professionals in interest in this bankruptcy matter and creditors to the Debtors, are vendors to AlixPartners, adverse to a former AlixPartners client, as well as professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Deloitte is a current client of AlixPartners in matters unrelated to the Debtors and their affiliates. Additionally, Deloitte affiliated entities previously employed several current AlixPartners employees.

- Delphi Corp., Delphi Energy And Engine Management Systems UK Overseas and Delphi ERISA Litigation (collectively, "Delphi"), creditors, customers and litigation parties to the Debtors and entities in which the Debtors own an equity interest, and affiliated entities, are creditors, vendors, co-defendants and customers of current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Delphi is the previous employer of a current AlixPartners employee.

- The Department of the Treasury, a government agency to the Debtors, is an affiliate of an entity, the Internal Revenue Service ("IRS"), that is a creditor, adverse party, vendor and client through representative creditors' committee to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. The IRS is the previous employer of current AlixPartners employees. An affiliate, The Department of Justice ("DOJ") is a current and former client of AlixPartners in matters unrelated to the Debtors and their affiliates. The DOJ has also been an adverse party and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Deutsche Bank, Deutsche Bank AG, Deutsche Bank AG London, Deutsche Bank Luxembourg S.A. as Fiscal Agent, Deutsche Bank Securities Inc. and Deutsche Bk-New York (collectively, "Deutsche Bank"), lenders, director affiliated companies, indenture trustees, creditors, investment bankers, professionals in interest and bondholders to the Debtors, are affiliated with entities that are shareholders, lenders, adverse parties, indenture trustees, creditors, limited partners and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Deutsche Bank is a current AlixPartners client in matters unrelated to the Debtors and their affiliates. Also, Deutsche Bank provides banking services to AlixPartners in matters unrelated to the Debtors and their affiliates.

- DirecTV Group, a director affiliated company to the Debtors, is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Dresdner Bank, a lender to the Debtors, and affiliated entities are indenture trustees, lenders, lessors, members of bank group clients, professionals in interest and creditors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

# APServices llc

- DTE Defiance LLC, DTE Energy, DTE Energy Services Inc., DTE Moraine, LLC, DTE Tonawanda LLC and DTE Tonawanda LLC (collectively, "DTE"), utility providers and executory contract counterparties to the Debtors, are affiliated with an entity that is the previous employer of a current AlixPartners employee. DTE Energy is an executory contract counterparty to a former APS client in matters unrelated to the Debtors and their affiliates.

- Duke Energy, a utility provider and strategic alliance party to the Debtors, is a creditor, director affiliated company and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Eaton Vance Cdo IX Ltd, Eaton Vance Cdo VIII Ltd, Eaton Vance Cdo X PLC, Eaton Vance Fltg Rt Inc Tr, Eaton Vance Grayson & Co, Eaton Vance Instl Sr Ln Fd, Eaton Vance Loan Opp Fd Ltd, Eaton Vance Ltd Duration Inc Fund, Eaton Vance Medallion Floating, Eaton Vance Senior Inc Tr, Eaton Vance Sht Dur Div Inc Fd, Eaton Vance Sr Debt Pf, Eaton Vance Sr Debt Pf, Eaton Vance Sr Fltg Rt Tr and Eaton Vance Sr Inc Tr (collectively, "Eaton Vance"), lenders to the Debtors, and affiliated entities are lenders, creditors and bondholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Eaton Vance was part of a bank group for which AlixPartners performed services, in matters unrelated to the Debtors and their affiliates.

- EDS LLC, a utility provider to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. EDS is an adverse party and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. EDS is the previous employer of current AlixPartners employees.

- E.I. DuPont GP, DuPont Automotive, Dupont Safety & Protection and Dupont Coatings & Color Technologies Group (collectively, "DuPont"), directors affiliated companies to the Debtors, are affiliated with an entity that is a former client of AlixPartners in matters unrelated to the Debtors and their affiliates. DuPont is a creditor, vendor, executory contract counterparty and adverse party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. DuPont is the previous employer of current AlixPartners employees.

- Entergy, a utility provider to the Debtors, is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Ericsson Inc., Ericsson LM Telephone Co., Ericsson NV/SA, Ericsson SpA and Ericsson Telecomunicacoes S.A. (collectively, "Ericsson"), director affiliated companies to the Debtors, are affiliated with an entity that is a client related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Ernst & Young LLP ("E&Y"), New York, a professional in interest in this bankruptcy matter and director affiliated company to the Debtors, is an adverse party, vendor and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. E&Y is a vendor to AlixPartners and previously employed

# APServices LLC

several current AlixPartners employees. E&Y is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Erskine Bowles, a current member of the GM Board of Directors, was a former consultant to AlixPartners, but this role has terminated. These positions did not overlap. Mr. Bowles completed his service with AlixPartners over two years ago. He has no financial interest in AlixPartners and, to the best of our knowledge, has no financial interest or connection with any of AlixPartners' clients.

- Evergreen Core Plus Bd Fd, Evergreen Hi Yld Bd Tr, Evergreen High Income Fund, Evergreen Inc Adv Fd, Evergreen Multi-Sector Income, Evergreen Utly & Hi Inc Fd and Evergreen Va High Income Fd (collectively, "Evergreen"), lenders to the Debtors, are affiliated to an entity that is a related party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Fannie Mae, a director affiliated company to the Debtors, is a related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Federal Trade Commission, a government authority in this bankruptcy matter, is the previous employer of a current AlixPartners employee.

- Federal Mogul Corporation, a supplier to the Debtors, is a current client of AlixPartners in matters unrelated to the Debtors and their affiliates. In addition, Federal Mogul previously employed a current AlixPartners employee.

- FIAT – GM Powertrain B.V., FIAT – GM Powertrain Polska Sp. z.o.o., Fiat Partecipazioni S.p.A. and Fiat-GM Powertrain Polska Sp Z o.o. (collectively, "FIAT"), joint venture parties and entities in which the Debtors own an equity interest, are affiliated with an entity that is the previous employer of a current AlixPartners employee. FIAT is a customer to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Fiat is also a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Fidelity Advr Sr I-Advr Hi In, Fidelity Advr Sr II-Advr Strt, Fidelity American Hi Yld Fd, Fidelity Ballyrock Clo II, Fidelity Ballyrock Clo III, Fidelity Canadian Asset All, Fidelity Cip LLC:Fid Fl Rate, Fidelity Management & Research Co., Fidelity Management & Research Company, Fidelity Puritan Tr-Puritan Fd, Fidelity Sch St Tr-Strt Inc Fd, Fidelity Summer St Tr-Cap & In and Fidelity Summer St-Cap & Inc Fd, (collectively, "Fidelity"), lenders, bondholders and shareholders to the Debtors, are affiliated with an entity that is a vendor to AlixPartners. In addition, Fidelity and affiliated entities are also lenders, lessors, adverse parties, director affiliated companies, executory contract counterparties, customers, lessees, bondholders and shareholders of current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Fidelity is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

# AP Services LLC

- Fifth Third Bank, a lender to the Debtors, is a bondholder, creditor, lender, lessor and adverse party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Fifth Third Bank is a member in a bank group for which AlixPartners performed services in matters unrelated to the Debtors and their affiliates. Fifth Third Bank is a client-related party and a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- First Chicago NBD, a director affiliated company to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- First Union Corporation ("FU"), a director affiliated company to the Debtors, is a lender, limited partner, bondholder and director affiliated company to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Ford Motor Company ("Ford Motor"), a director affiliated company, competitor and strategic alliance party to the Debtors, and affiliated entities are customers, lenders, adverse parties, vendors, plaintiffs and client litigants to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Ford Motor is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Fortress Cr Invs I Ltd and Fortress Cr Invs II Ltd ("Fortress"), lenders to the Debtors, and affiliates are former clients of AlixPartners and/or APS in matters unrelated to the Debtors and their affiliates. Additionally, Fortress is a lender and shareholder to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Franklin Advisors, a bondholder to the Debtors, is a shareholder, creditor, co-plaintiff and lender to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- General Electric Capital Corporation, General Electric Co., GE Asset Management Inc., GE Capital, GE Capital Consumer Financial Services, GE Card Services, GE Commercial Finance, GE Corporate Financial Services, GE Fleet Services of GE Commercial Finance and GE Insurance Solutions (collectively, "GE"), bondholders, director affiliated companies, creditors, and lenders to the Debtors, are creditors, customers, lenders, vendors, litigation parties, adverse parties, lessors and bondholders of current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. GE is a client-related party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. General Electric Capital Corporation is the previous employer of a current AlixPartners employee.

- GM or its affiliated entities are creditors, adverse parties, shareholders, vendors, bondholders, customers and lenders to current and former clients of APS and/or AlixPartners.

AP Services LLC

- GMPT (General Motors Powertrain Europe), a division of a non-debtor affiliate of Debtors, is a current client of AlixPartners or its affiliates, providing consulting services to GMPT in matters that are not directly related to the restructuring of the Debtors.

- General Motors Corporation is the previous employer of numerous current AlixPartners employees.

- GMAC, GMAC Auto Lease Payment Corp., GMAC Auto Lease Purchase Corporation, GMAC Banque, GMAC Holding S.A. De C.V. and GMAC LLC (collectively, "GMAC"), customers, strategic alliance parties and equity interest parties to the Debtors, are former AlixPartners clients in matters unrelated to the Debtors and their affiliates. GMAC is an adverse party, creditor and lender to current and former AlixPartners clients in matters unrelated to the Debtors and their affiliates. GMAC is the previous employer of a current AlixPartners employee.

- GMAM Investment Funds Trust and GMAM Real Estate I, LLC are lenders and equity interest parties to the Debtors. GMAM Investment Funds Trust is a related party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Goldentree Ln. Opportunities III Ltd. and Goldentree Ln. Opportunities IV Ltd., lenders to the Debtors, are professionals in interests and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Goldman Sachs, Goldman Sachs Cr Parts LP, Goldman Sachs Group Inc., Goldman Sachs Group Inc. and Goldman Sachs-Abs Loans 2007 L (collectively, "Goldman Sachs"), lenders, director affiliated companies, professionals in interest and investment bankers to the Debtors, are affiliated with an entity that is a former client of AlixPartners as well as lenders, litigants, lessees, bondholders, professionals in interest and shareholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Additionally, Goldman Sachs is the previous employer of current AlixPartners employees.

- Goodyear Tire & Rubber, a creditor to the Debtors, is a creditor to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Goodyear Tire & Rubber is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Graduate School of Business at the University of Chicago, a director affiliated company to the Debtors, is an affiliate to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. An affiliate, The University of Chicago, is a bondholder to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Great American, an insurance provider to the Debtors, is affiliated with entities that are vendors, related parties, executory contract counterparties and adverse parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

# APServices LLC

- Hartford Fltng Rt Fd and Hartford-Fltg Bk Ln Sr Of Hart, lenders to the Debtors, are affiliated to entities that are creditors, bondholders, lenders, vendors, executory contract counterparties and adverse parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Hayes Lemmerz is a current client of APS, and Kevin Carmody of APS is acting as Chief Restructuring Officer of Hayes Lemmerz. APS is not involved, however, in customer negotiations or other issues related to GM. To alleviate any potential conflict concerns, APS has placed an information barrier between Hayes Lemmerz and GM. In addition, separate engagement teams have been established with instructions to make certain no information is shared between engagement teams.

- Haynes and Boone, a professional in interest in this bankruptcy matter, was a member of a creditors' committee for which AlixPartners worked, as well as client professional and vendor to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Haynes and Boone is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Heidrick & Struggles, a directors affiliated company to the Debtors, is a professional in interest to a former APS client and a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Hertz Corporation, a customer to the Debtors, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. Hertz Corporation is a litigation party and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Hertz Corporation is a contract vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Hewlett-Packard ("HP"), a creditor and lender to the Debtors, is a lender, vendor, adverse party and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. HP is the previous employer of a current AlixPartners employee.

- Highland Credit Opp CDO Ltd, Highland Floating Rate Fund, Highland Offshore Ptnrs LP and Highland-Pac Sel Fd Fltg Rt Ln, (collectively, "Highland"), lenders to the Debtors, are lenders to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Highland Capital, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. An affiliate, Highland Capital, is the previous employer of a current AlixPartners employee.

- Honda, a competitor to the Debtors, and its affiliated entities are customers, creditors, vendors, co-defendants and adverse parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Honigman Miller Schwartz and Cohn, a professional in interest to the Debtors, is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Honigman Miller Schwartz and Cohn is a professional in interest and client

# AP Services LLC

counsel to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates, and is also a vendor to AlixPartners and/or APS.

- Houlihan Lokey ("Houlihan"), a professional in interest in this bankruptcy matter, is a professional in interest and investment banker to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Houlihan is an affiliate of a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- HSBC Finance Corp. and HSBC Financial Corp., ("HSBC"), lenders and strategic alliance parties to the Debtors, are lenders, creditors, indenture trustees and related parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. HSBC is a current and former client of AlixPartners in matters unrelated to the Debtors and their affiliates.

- Hughes Electronics Corporation, a director affiliated company to the Debtors, is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- ING Bank, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. ING affiliated entities were lenders, noteholders, creditors, bondholders, lessors and bank steering committee members to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Jack Smith, former chairman of GM, was a member of the AlixPartners' Advisory Board. Mr. Smith completed his service with AlixPartners over two years ago. He has no financial interest in AlixPartners and, to the best of our knowledge, has no financial interest or connection with any of AlixPartners' clients.

- Jenner & Block, a professional in interest in this bankruptcy matter, is an adverse party and client counsel to former AlixPartners clients in matters unrelated to the Debtors and their affiliates. Jenner & Block is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Jerome B. York, a former director to the Debtors, was an officer to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Johnson Controls, a creditor to the Debtors, is a creditor and director affiliated company to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Johnson Controls is the previous employer of a current AlixPartners employee.

- Jones Day, a professional in interest in this bankruptcy matter, is client counsel to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Additionally, Jones Day was counsel to the Creditors' Committee of a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Jones Day is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

# APServices LLC

- JP Morgan Chase, JP Morgan Whitefriars Inc, JPMorgan Chase & Co and JPMorgan Chase Bank (collectively, "JP Morgan"), lenders, professionals in interest and creditors to the Debtors, are affiliated with entities that are lenders, shareholders, vendors, bondholders and creditors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. JP Morgan affiliated entities previously employed several current AlixPartners employees.

- KeyBank National Association, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. In addition, KeyBank National Association is a creditor and lender to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Kirkland & Ellis LLP, a professional in interest in this bankruptcy matter, is counsel, adverse counsel and professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Kirkland & Ellis is a current and former client of AlixPartners in matters unrelated to the Debtors and their affiliates. AlixPartners is a client of Kirkland & Ellis in matters unrelated to the Debtors and their affiliates.

- Kodak, a director affiliated company to the Debtors, and affiliates are adverse parties and executory contract counterparties to former AlixPartners clients in matters unrelated to the Debtors and their affiliates. Affiliated entities are current and former AlixPartners clients in matters unrelated to the Debtors and their affiliates.

- Kohlberg Kravis Roberts & Company ("KKR"), a director affiliated company to the Debtors, and affiliates are lenders, shareholders and creditors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. KKR is a client related party and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- KPMG LLP, a professional in interest in this bankruptcy matter, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. KPMG is a professional in interest, adverse party and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Additionally, KPMG previously employed several current AlixPartners employees.

- Lazard Group LLC and Lazard Ltd ("collectively, "Lazard"), professionals in interest in this bankruptcy matter and director affiliated companies to the Debtors, are creditors and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Lazard was a client through membership in a creditor's committee to a former AlixPartners client in matters unrelated to the Debtors and their affiliates. An affiliate, Lazard Freres, is the previous employer of a current AlixPartners employee.

- Lear Corporation ("Lear"), a creditor to the Debtors, is a customer and litigation party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Lear is a former AlixPartners client in matters unrelated to the

APServices LLC

Debtors and their affiliates. Lear is the previous employer of a current AlixPartners employee.

- Lehman Brothers Asset Management Inc, Lehman Brothers First Trust, Lehman Brothers High Income and Lehman Brothers (collectively, "Lehman Brothers"), shareholders, bondholders and lenders to the Debtors, are bondholders, shareholders and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Lehman Brothers previously employed a current AlixPartners employee. Lehman Brothers provided investment banking services to AlixPartners and affiliated entities. Lehman Brothers is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Lloyds, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. An affiliate is a creditor, lender, insurer, litigation party, executory contract counterparty and adverse party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- M&T Bank, a lender to the Debtors, is a related party to a current AlixPartners client in matter unrelated to the Debtors and their affiliates.

- Magna International, a creditor to the Debtors, and affiliated entities are  former AlixPartners clients in matters unrelated to the Debtors and their affiliates. An affiliate of Magna Entertainment is a current AlixPartners client in matters unrelated to the Debtors and their affiliates. In addition, an affiliate of Magna International, Magna PowerTrain, is a customer to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Marathon CLO I, Marathon CLO II Ltd and Marathon Financing I B V (collectively, "Marathon"), lenders to the Debtors, and affiliated entities are bondholders, significant shareholders and executory contract counterparties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Affiliated entities are current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Marsh Inc., an insurance provider to the Debtors, is affiliated with an entity that is a creditor and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Marsh & McLennan, is a vendor to AlixPartners.

- MCI and MCI Worldcom ("MCI"), utility providers to the Debtors, and affiliated entities are creditors, litigation counterparties, executory contract counterparties and vendors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. MCI is a former client of APS in matters unrelated to the Debtors and their affiliates. Verizon is a vendor to AlixPartners.

- Merrill Lynch & Co., Inc., Merrill Lynch Bank, Merrill Lynch Canada Finance Company, Merrill Lynch Cap Serv Inc, Merrill Lynch International & Co Cv, Merrill

**AP**Services LLC

Lynch International Limited, Merrill Lynch Preferred Capital Trust I, Merrill Lynch Preferred Capital Trust II, Merrill Lynch Preferred Capital Trust III, Merrill Lynch Preferred Capital Trust IV, Merrill Lynch Preferred Capital Trust V, Merrill Lynch Preferred Capital Trust VI, Merrill Lynch Preferred Funding I LP, Merrill Lynch Preferred Funding II LP, Merrill Lynch Preferred Funding III LP, Merrill Lynch Preferred Funding IV LP, Merrill Lynch Preferred Funding V LP and Merrill Lynch Pierce Fenner & Smith (collectively, "Merrill Lynch"), director affiliated companies, professionals in interest, lenders and investment bankers to the Debtors, are affiliated with entities that are current and former clients of AlixPartners, as well as lenders, bondholders, shareholders, limited partners, adverse parties and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Merrill Lynch is a current AlixPartners client in matters unrelated to the Debtors and their affiliates. Merrill Lynch is the previous employer of current AlixPartners employees.

- Metaldyne Corporation, a supplier to the Debtors, is a current AlixPartners client in that AlixPartners is providing financial advisory services in connection with Metaldyne Corporation's chapter 11 bankruptcy proceeding. AlixPartners is not assisting Metaldyne Corporation with any negotiations or other issues involving GM. To alleviate any potential conflict concerns, AlixPartners has placed an information barrier between Metaldyne Corporation and GM. In addition, separate engagement teams have been established with instructions to make certain no information is shared between engagement teams.

- Microsoft Global Finance ("Microsoft"), a lender to the Debtors, is a vendor, lender, and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Microsoft is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Minnesota Mining & Manufacturing, a director affiliated company to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Mizuho Corporate Bank, a lender to the Debtors, is a lender, creditor, and client professional to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, Mizuho Corporate Bank previously employed a current AlixPartners employee.

- Morgan Lewis and Bockius, a professional in interest in this bankruptcy matter, is opposing counsel, lender and professional in interest to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Morgan Lewis and Bockius is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. The spouse of a current AlixPartners employee, is a partner at Morgan, Lewis & Bockius, in matters unrelated to this bankruptcy matter. The spouse is not working on this bankruptcy matter.

- Morgan Stanley, Morgan Stanley & Co. Incorporated, Morgan Stanley and Co. and Morgan Stanley Sr Fd Inc (collectively, "Morgan Stanley"), professionals in interest in

APServices LLC

this bankruptcy matter, bondholders, director affiliated companies and lenders to the Debtors, are lenders, bondholders, creditors, shareholders and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Morgan Stanley is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Morgan Stanley is the previous employer of a current AlixPartners employee.

- Motorola Inc. ("Motorola"), a director affiliated company to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Motorola is a creditor, customer and related party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Motorola is the previous employer of current AlixPartners employees.

- National City Bank, a lender to the Debtors, is affiliated with an entity that is a former AlixPartners client in a matter unrelated to the Debtors and their affiliates. National City Bank is a member of a bank group for which AlixPartners performed services in matters unrelated to the Debtors and their affiliates and is a lender to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- National Union ("NU"), an insurance provider to the Debtors, is affiliated with entities that are limited partners, litigation counterparties, adverse parties, lenders and bondholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. NU has also provided various types of insurance to AlixPartners in matters unrelated to the Debtors and their affiliates.

- New York State Common Retirement Fund, a shareholder to the Debtors, is a joint venture party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Nordic Capital, a limited partner with the Debtors in various investment fund vehicles, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Northern Trust Company, Northern Trust Company Securities Lending and Northern Trust Investments, N.A. (collectively, "Northern Trust"), lenders, bondholders and shareholders to the Debtors, are bondholders and lenders to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Northern Trust Company is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Oak Hill Cr Part III, Oak Hill Cr Partners IV, Oak Hill Credit Partners V Ltd and Oak Hill Credit Ptnrs II Ltd (collectively, "Oak Hill"), lenders to the Debtors, and affiliated entities were creditors, bondholders and lenders to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Oak Hill Advisors, is the parent of a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

# AP Services LLC

- Oaktree - Emp Ret Fd City Of D, Oaktree - Gen Brd Pen Hlth Bnf, Oaktree - High Yield LP, Oaktree - Intl Paper Co Comngl, Oaktree - Pac Gas & Elec Post, Oaktree Cap Mgmt- Hi Yld Tr, Oaktree Capital Management LLC, Oaktree Loan Fund 2x (Cay) LP, Oaktree Loan Fund, L.P., Oaktree-Bill & Melinda Gates, Oaktree-DaimlerChrysler Corp M, Oaktree-High Yield Fd II LP, Oaktree-San Diego Cty Emp Ret and Oaktree-Tmct (collectively, Oaktree"), lenders, competitors and bondholders to the Debtors, are affiliated with entities that were adverse parties to a former AlixPartners client in a litigated matter as well as bondholders and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Oaktree- DaimlerChrysler, a former affiliation of Chrysler, LLC, is the previous employer of a current AlixPartners employee.

- Oppenheimer Sr Fltg Rt Fd, a lender to the Debtors, and affiliated entities are lenders, bondholders and professionals in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, Oppenheimer & Co., is the previous employer of a current AlixPartners employee.

- Pacific Gas & Electric ("PG&E"), a utility provider to the Debtors, is an executory contract counterparty, adverse party and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. In addition, PG&E was a member of the creditors committee to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Panamsat Corporation, a director affiliated company to the Debtors, is an affiliate to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Paul Weiss Rifkind & Garrison, a professional in interest in this bankruptcy matter, is clients' legal counsel and opposing counsel to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Paul Weiss Rifkind & Garrison is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Peco Energy Services, a utility provider to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Peco Energy is a vendor to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Penske Automotive Group, Inc., Penske Corporation and Penske Logistics, creditors, customers and executory contract counterparties to the Debtors, are joint venture parties to a current AlixPartners client in matters unrelated to the Debtors and their affiliates. An affiliate, Penske Performance Transportation, is the previous employer of a current AlixPartners employee.

- Peregrine, Inc. became a client in 1998. Peregrine was a significant supplier to GM. The stock of Peregrine was acquired by an affiliate of AlixPartners with the support of GM. Peregrine's working capital funding was provided by GM. GM also provided an

# APServices LLC

indemnification and guaranty to AlixPartners. AlixPartners currently has no claims against GM in connection with the indemnification and guaranty.

- Peugeot S.A., a creditor to the Debtors, is an affiliate to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Pfizer, Pfizer Foundation, Pfizer Global Pharmaceuticals and Pfizer Human Health, director affiliated companies to the Debtors, are affiliated with entities that are potential acquirers, adverse parties, customers, executory contract counterparties and related parties to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- PNC Leasing LLC ("PNC"), an executory contract counterparty to the Debtors, is a bondholder, lender, significant shareholder and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. PNC is a current and former AlixPartners and/or APS client and is a related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates. PNC is the previous employer of a current AlixPartners employee.

- PricewaterhouseCoopers LLP ("PWC"), a professional in interest in this bankruptcy matter, is a professional in interest, opposing counsel and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. PWC is the auditor for AlixPartners and provides audit, tax and related consulting services. PWC is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. PWC is the previous employer of a number of current AlixPartners employees.

- Qwest, a utility provider to the Debtors, is a customer, vendor, related party, litigant, and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Qwest is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Richards Layton & Finger, a professional in interest in this bankruptcy matter, was counsel to former AlixPartners clients in matters unrelated to the Debtors and their affiliates and is counsel to AlixPartners in matters unrelated to the Debtors and their affiliates. Richards Layton & Finger is also a professional in interest to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Richards Layton & Finger provides legal services to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Robert A. Lutz, an officer to the Debtors, is an officer, director and significant shareholder to a former AlixPartners and/or APS client in matters unrelated to this bankruptcy matter.

- Rockwood Holdings Inc. and Rockwood Specialties Group Inc. are strategic alliance parties to the Debtors. Rockwood Holdings Inc is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

AP Services LLC

- Rothschild LLP, a professional in interest in this bankruptcy matter, is a professional in interest, bondholder and related party to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Rothschild LLP is a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Royal Bank of Scotland, a lender to the Debtors, is a lender and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Royal Bank of Scotland is an executory contract counterparty to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Ryder Logistics, a creditor to the Debtors, is an affiliate to a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Ryder affiliated entities were vendors, lessors and creditors to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Sankaty Cr Opps Off Mtr IV LP, Sankaty Credit Opp IV LP, Sankaty High Yield Part II LP and Sankaty Hy Part III LP (collectively, "Sankaty"), lenders to the Debtors, are lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- SBC and SBC Internet Services ("SBC"), utility providers to the Debtors and affiliated entities, are vendors, creditors, executory contract counterparties, related parties and lessors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. SBC is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Sara Lee Corp., a director affiliated company to the Debtors, is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Shell Energy North America, Shell Energy Canada and Shell Hydrogen B.V., (collectively, "Shell"), utility providers and strategic alliance parties to the Debtors, are affiliated with an entity that is a former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. An affiliate, Shell Oil, is a creditor and vendor to current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Simpson Thacher & Bartlett, a professional in interest in this bankruptcy matter, is opposing counsel and client professional to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Simpson Thacher & Bartlett is counsel to Hellman & Friedman LLC as well as to its affiliated private equity funds, including the funds that hold a controlling stake in AlixPartners. Simpson Thacher & Bartlett is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. In addition, Simpson Thacher & Bartlett provides services to AlixPartners.

- Skadden, Arps, Slate, Meagher & Flom, a professional in interest in this bankruptcy matter, is a professional in interest and client counsel to current and former AlixPartners

# APServices LLC

and/or APS clients in matters unrelated to the Debtors and their affiliates. Skadden, Arps, Slate, Meagher & Flom, is a current and former AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates.

- Societe Generale, a lender to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Sonnenschein Nath & Rosenthal, a professional in interest in this bankruptcy matter, is a creditor, adverse party and professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Sonnenschein Nath & Rosenthal is the previous employer of a current AlixPartners employee.

- Southern California Edison, a utility provider to the Debtors, is a joint venture entity to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. Southern California Edison is an insurance provider and creditor to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Sprint, a utility provider to the Debtors, is a creditor, vendor and executory contract counterparty to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate of Sprint is a related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- SunTrust Leasing Corporation, an executory contract counterparty to the Debtors, is affiliated with entities that are creditors, bondholders, lenders and indenture trustees to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, SunTrust Bank, is a related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Suzuki, Suzuki Motor Corp. and Suzuki Motor Corporation, executory contract counterparties, strategic alliance parties, competitors, joint venture parties and miscellaneous equity interest parties to the Debtors, are affiliates to current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Tenneco Automotive, a creditor to the Debtors, is affiliated with entities that are co-defendants, customers and vendors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Tenneco Automotive is a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Tenneco Automotive is the previous employer of a current AlixPartners employee.

- Texas Instruments, a director affiliated company to the Debtors, is a client related party and a former AlixPartners client in matters unrelated to the Debtors and their affiliates. Texas Instruments is the previous employer of a current AlixPartners employee.

- Thomas H. Lee Partners, L.P., an investment as a limited partner to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

# APServices LLC

- Time Warner Telecom, a utility provider to the Debtors, and affiliated entities, are litigation parties, vendors, adverse parties, creditors and director-affiliated companies to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, America On-Line, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Toyota Motor Corporation ("Toyota"), a competitor, strategic alliance party and executory contract counterparty to the Debtors, and affiliated entities are customers, creditors, vendors and lenders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Toyota is the previous employer of a current AlixPartners employee.

- TRW Automotive Holdings Corporation, a creditor to the Debtors, is a customer and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. An affiliate, TRW Inc., is the previous employer of a current AlixPartners employee.

- U.S. Bank Card Services, a wholly owned subsidiary of U.S. Bank ("US Bank"), a director affiliated company to the Debtors, is a lender, creditor, indenture trustee and bondholder to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. US Bank is a client-related party to a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- UBS AG, UBS AG London, UBS Global Asset Management (US) Inc. and UBS Securities LLC (collectively, "UBS"), lenders, bondholders and investment bankers to the Debtors, are creditors, customers, director affiliated companies, lenders, lessors and bondholders to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. UBS is the previous employer of a current AlixPartners employee.

- The United States Department of Justice ("DOJ"), a government agency to the Debtors, is a current and former client of AlixPartners in matters unrelated to the Debtors and their affiliates. The DOJ has also been an adverse party and customer to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Union Pacific Railroad, a creditor and director affiliated company to the Debtors, is a creditor, customer, adverse party and lessor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Union Pacific Railroad is the previous employer of a current AlixPartners employee.

- Van Kampen Asset Management, a shareholder to the Debtors, is affiliated with entities that are former AlixPartners clients as well as lenders, bondholders, and retained professionals to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- VeraSun Energy Corporation, a strategic alliance party to the Debtors, is a current APS client in matters unrelated to the Debtors and their affiliates.

# APServices LLC

- Verizon Business and Verizon Communications (collectively, "Verizon"), utility providers to the Debtors, are former AlixPartners clients in matters unrelated to the Debtors and their affiliates. Other Verizon affiliated entities are creditors, executory contract counterparties and vendors to several current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Verizon is a vendor to AlixPartners.

- Vestar Capital Partners, an investment party as a limited partner to the Debtors, is a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Visant Corporation, Visant Holding Corporation and Visant Secondary Holdings Corporation, director affiliated companies to the Debtors, are affiliated to an entity that is the parent to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Wachovia Bank ("Wachovia"), a director affiliated company to the Debtors, is a lender, bondholder, creditor, adverse party, co-defendant and professional in interest to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Wachovia is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Weil, Gotshal & Manges LLP, a professional in interest in this bankruptcy matter, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. AlixPartners is a client of Weil, Gotshal & Manges, LLP in matters unrelated to the Debtors and their affiliates.

- Wellington Management Company, a bondholder to the Debtors, is the previous employer of a current AlixPartners employee. Wellington Management Company was a lender, bondholder and shareholder to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- Wells – 13702900, Wells – 13823100, Wells – 14945000, Wells – 16017000, Wells 16463700 La Dept W&Pwr Em, Wells 16959700-Jh Hi Yld, Wells 16959701-John Hancock In, Wells Cap Mgmt – 13923601, Wells Cap Mgmt 12222133 and Wells Cap Mgmt 1886650 (collectively, "Wells Fargo"), lenders to the Debtors, are affiliated entities to a former client of AlixPartners through membership in a bank group for which AlixPartners performed services in matters unrelated to the Debtors and their affiliates. Other Wells Fargo affiliated entities are lenders, creditors, lessors, bondholders, indenture trustees and vendors to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Wells Fargo is a related party to a current AlixPartners client and a vendor to AlixPartners, in matters unrelated to the Debtors and their affiliates. Wells Fargo is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- WestLB AG, a lender to the Debtors, is a lender to a current AlixPartners and/or APS client in matters unrelated to the Debtors and their affiliates. WestLB AG, is a joint

# APServices llc

venture party to a former AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Western Asset Management, a bondholder to the Debtors, is a lender and creditor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Western Asset Management is a client related party to a current APS client in matters unrelated to the Debtors and their affiliates.

- White & Case, a professional in interest in this bankruptcy matter, is a professional in interest to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. White & Case is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. White & Case is also a vendor to AlixPartners in matters unrelated to the Debtors and their affiliates.

- Wilmington Trust Company, a creditor, indenture trustee and executory contract counterparty to the Debtors, is a bondholder, creditor, lessor and indenture trustee to former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates. Wilmington Trust Company is a current AlixPartners client in matters unrelated to the Debtors and their affiliates.

- Xerox Corporation, a director affiliated company to the Debtors, is a current and former AlixPartners client in matters unrelated to the Debtors and their affiliates. Xerox is an adverse party, lessee, customer and vendor to current and former AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

- XM Satellite Radio Holdings and XM Satellite Radio, Inc. ("XM"), customers, strategic alliance parties and equity interest parties to the Debtors, are affiliates to a current AlixPartners client in matters unrelated to the Debtors and their affiliates. XM is a co-defendant and director affiliated company to current AlixPartners and/or APS clients in matters unrelated to the Debtors and their affiliates.

APServices llc

## SCHEDULE 3

### INSURANCE PROGRAM

Company D&O policies

2007-2009
Primary carrier: AIG/American International Specialty Lines Insurance Company
Primary carrier policy number: 480-99-87 Limit: $485-500 million, depending on policy period

Tail policy to 2007-09 D&O policy (Tail policy to become effective December 15, 2009; policy period through December 15, 2015)
Primary carrier: AIG/American International Specialty Lines Insurance Company
Primary carrier policy number: 480-99-87 Limit: $325 million

DIP D&O policy
D&O Policies which shall be obtained from the same carrier, or a similar world-wide carrier, as the policies listed above and which, except for having a Limit of Liability of $50 million or such other amount as approved by the Bankruptcy Court, shall have coverage terms and conditions that essentially "follows form" of such policies (including endorsements 13, 14, and 15 thereto)

# AP SERVICES, LLC
## GENERAL TERMS AND CONDITIONS

These General Terms and Conditions ("Terms") are incorporated into the Agreement between the Company and APS to which these Terms are attached. In case of conflict between the wording in the letter and/or schedule(s) and these Terms, the wording of the letter and/or schedule(s) shall prevail.

### Section 1. Company Responsibilities.

The Company will undertake responsibilities as set forth below:

1. Provide reliable and accurate detailed information, materials, documentation and

2. Make decisions and take future actions, as the Company determines in its sole discretion, on any recommendations made by APS in connection with this Agreement.

APS' delivery of the services and the fees charged are dependent on (i) the Company's timely and effective completion of its responsibilities; and (ii) timely decisions and approvals made by the Company's management. The Company shall be responsible for any delays, additional costs or other deficiencies caused by not completing its responsibilities.

### Section 2. Retainer, Billing and Payments.

**Retainer and Billing.** APS will submit monthly invoices for services rendered and expenses incurred and will offset such invoices against the Retainer. Unless explicitly stated in the invoice, all amounts invoiced are not contingent upon or in any way tied to the delivery of any reports or other work product in the future. Payment will be due within 15 calendar days after receipt of the invoices to replenish the Retainer to the agreed-upon amount. Any unearned portion of the Retainer will be returned to the Company at the termination of the engagement.

**Payments.** All payments to be made by the Company to APS shall be payable upon receipt of invoice via wire transfer to APS' bank account, as follows:

| | |
|---|---|
| Receiving Bank: | Comerica Bank |
| | ABA #072000096 |
| Receiving Account: | AP Services, LLC |
| | A/C #1851-765410 |
| Currency: | USD |

### Section 3. Relationship of the Parties.

The parties intend that an independent contractor relationship will be created by the Agreement. As an independent contractor, APS will have complete and exclusive charge of the management and operation of its business, including hiring and paying the wages and other compensation of all its employees and agents, and paying all bills, expenses and other charges incurred or payable with respect to the operation of its business. Of course, neither the Temporary Staff nor APS will be entitled to receive from the Company any vacation pay, sick leave, retirement, pension or social security benefits, workers' compensation, disability, unemployment insurance benefits or any other employee benefits. APS will be responsible for all employment, withholding, income and other taxes incurred in connection with the operation and conduct of its business.

Nothing in this agreement is intended to create, nor shall be deemed or construed to create a fiduciary or agency relationship between APS and the Company or its Board of Directors.

### Section 4. Confidentiality.

APS shall keep confidential all non-public confidential or proprietary information obtained from the Company during the performance of its services hereunder (the "Information"), and neither APS nor the Temporary Staff will disclose any Information to any other person or entity. "Information" includes non-public confidential and proprietary data, plans, reports, schedules, drawings, accounts, records, calculations, specifications, flow sheets, computer programs, source or object codes, results, models or any work product relating to the business of the Company, its subsidiaries, distributors, affiliates, vendors, customers, employees, contractors and consultants.

The foregoing is not intended to prohibit, nor shall it be construed as prohibiting, APS from making such disclosures of Information that APS reasonably believes is required by law or any regulatory requirement or authority, or to clear client conflicts. APS may make reasonable disclosures of Information to third parties in connection with the performance of APS' obligations and assignments hereunder. In addition, APS will have the right to disclose to any person that it provided services to the Company or its affiliates and a general description of such services, but shall not provide any other information about its involvement with the Company.

The Company acknowledges that all Information (written or oral), including advice and Work Product (as defined in Section 5), generated by APS and the Temporary Staff in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management and its Board of Directors) in connection with the transactions to which it relates. The Company agrees that no such information shall be used for any other purpose or reproduced, disseminated, quoted or referred to with attribution to APS at any time in any manner or for any purpose without APS' prior approval except as required by law.

Because of the nature of the services provided by AlixPartners, from time to time, separate teams of AlixPartners professionals may concurrently represent clients that are adverse to each other, or which may be viewed by clients to be adverse. Despite any such concurrent representation, each AlixPartners team shall strictly preserve all client confidences, and not disseminate such information externally, except pursuant to the terms of this engagement letter, or to any AlixPartners professionals that are currently working for an entity adverse to the Company. The Company agrees that it does not consider

| AP SERVICES, LLC |
|---|
| GENERAL TERMS AND CONDITIONS |

such concurrent representation of the Company and any adversary by separate AlixPartners teams to be inappropriate and, therefore, waives any objections to any such present or future concurrent representation.

### Section 5. Intellectual Property.

All methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that APS has created, acquired or developed prior to the date of this Agreement are, and shall remain, the sole and exclusive property of APS, and the Company shall not acquire any interest therein. APS shall be free to use all methodologies, processes, techniques, ideas, concepts, know-how, procedures, software, tools, writings and other intellectual property that APS may create or develop in connection with this engagement, subject to its duty of confidentiality to the extent that the same contain information or materials furnished to APS by the Company that constitute Information referred to in Section 4 above. Except as provided above, all information, reports, materials, software and other work product that APS creates or develops specifically for the Company as part of this engagement (collectively known as "Work Product") shall be owned by the Company and shall constitute Information referred to in Section 4 above. APS may retain copies of the Work Product subject to its obligations under Section 4 above.

### Section 6. Framework of the Engagement.

The Company acknowledges that it is retaining APS to provide the Temporary Staff solely to assist and advise the Company as described in the Agreement. This engagement shall not constitute an audit, review or compilation, or any other type of financial statement reporting engagement.

### Section 7. Indemnification and Other Matters.

To the fullest extent as would be permitted for the Company's officers under the Delaware General Corporation Law and the Company's bylaws and procedures, the Company shall indemnify, hold harmless and defend APS and its affiliates and its and their partners, directors, officers, employees, and Temporary Staff (collectively, the "indemnitees") from and against all claims, liabilities, losses, expenses and damages to the extent of the most favorable indemnities provided by the Company to any of its officers, which shall be primary and any similar obligations of APS, its affiliates and insurers to the indemnitees for the same claims, liabilities, losses, expenses and damages shall be secondary, provided, however, that to the extent any matter for which indemnification is called for hereunder arises while the Company is under the protection of the Bankruptcy Code, indemnification of APS personnel who are not directors or officers of the Company shall be subject to the approval of the Bankruptcy Court. To the fullest extent as would be permitted for the Company's officers under the Delaware General Corporation Law and the Company's bylaws and procedures, the Company shall pay damages and expenses as incurred, including reasonable legal fees and disbursements of counsel. However, to the extent any

matter for which indemnification is called for hereunder arises while the Company is under the protection of the Bankruptcy Code, indemnitees acknowledge that the Company's ability to pay damages and expenses may be limited by the Bankruptcy Court. In addition, the Company shall pay the costs of APS' professional time (APS' professional time will be reimbursed at APS' rates in effect when such future time is required), relating to or arising out of the engagement, including any legal proceeding in which an indemnitee may be required or agree to participate but in which it is not a party. At their own expense (unless the Company and indemnitee, in good faith, jointly believe that there is a conflict), the indemnitees may, but are not required to, engage separate counsel of their choice in connection with any of the matters to which this indemnification agreement relates.

The Company shall specifically include and cover, as a benefit for their protection, Temporary Staff serving as directors or officers of the Company, subsidiaries or affiliates from time to time (the "Covered Individuals") under the Company's policy for directors' and officers' ("D&O') insurance in place at the applicable time, and as further described on Schedule 3 hereto (the "Insurance Program"), which shall be specifically primary to any other valid and collectible insurance that may apply to the Covered Individuals for the same claims, liabilities, losses, expenses and damages. The definition of subsidiaries or affiliates in the previous sentence shall not be greater than that provided in the Company's D&O insurance coverage. The Covered Individuals acknowledge and agree that the standard of conduct each must satisfy in order to be afforded the protections and benefits afforded by coverage under any Company D&O insurance policy shall be that provided for under the terms of such policy. The Company will maintain D&O insurance coverage in accordance with the Insurance Program. The Company disclaims a right to distribution from the D&O insurance coverage with respect to the Covered Individuals. In the event that the Company does not obtain or fund payments required by any of the Company's policies that comprise the Insurance Program, APS may, at its option, attempt to purchase a separate D&O policy that will cover the Covered Individuals only and that will have no more than $50 million of coverage. The cost of same shall be invoiced to the Company as an out -of -pocket cash expense. If APS is unable to purchase such D&O insurance, then APS reserves the right to terminate the Agreement.

APS is not responsible for any third-party products or services. The Company's sole and exclusive rights and remedies with respect to any third party products or services are against the third-party vendor and not against APS, whether or not APS is instrumental in procuring the third-party product or service.

APS shall not be liable to the Company except for actual damages resulting from bad faith, self-dealing, intentional misconduct or gross negligence, and notwithstanding anything to the contrary in this Section 7, the Company shall not be liable for indemnification against any claim, liability, loss, expense or damages resulting from bad faith, self-dealing, intentional misconduct or gross negligence by

# AP SERVICES, LLC
## GENERAL TERMS AND CONDITIONS

an indemnitee, or any act which may not be indemnified under the Delaware General Corporation Law.

### Section 8. Governing Law and Arbitration.

The Agreement is governed by and shall be construed in accordance with the laws of the State of New York with respect to contracts made and to be performed entirely therein and without regard to choice of law or principles thereof.

Any controversy or claim arising out of or relating to the Agreement, or the breach thereof, shall be settled by arbitration. Each party shall appoint one non-neutral arbitrator. The two party arbitrators shall select a third arbitrator. If within 30 days after their appointment the two party arbitrators do not select a third arbitrator, the third arbitrator shall be selected by the American Arbitration Association (AAA). The arbitration shall be conducted in New York, New York under the AAA's Commercial Arbitration Rules, and the arbitrators shall issue a reasoned award. The arbitrators may award costs and attorneys' fees to the prevailing party. Judgment on the award rendered by the arbitrators may be entered in any court having jurisdiction thereof. In the event the Company files under Chapter 11, the Company and APS agree that the Bankruptcy Court shall have jurisdiction over any and all matters arising under or in connection with this Agreement, including the indemnification provisions outlined in Section 7, above.

In any court proceeding arising out of this Agreement, the parties hereby waive any right to trial by jury.

### Section 9. Termination and Survival.

The Agreement may be terminated at any time by written notice by one party to the other; provided, however, that notwithstanding such termination APS will be entitled to any fees and expenses due under the provisions of the Agreement, including Success Fee and Break Fee in accordance with Schedule 1. Such payment obligation shall inure to the benefit of any successor or assignee of APS.

Sections 2, 4, 5, 7, 8, 9, 10 and 11 of these Terms, the provisions of Schedule 1 and the obligation to pay accrued fees and expenses shall survive the expiration or termination of the Agreement.

### Section 10. Non-Solicitation of Employees.

The Company acknowledges and agrees that APS has made a significant monetary investment recruiting, hiring and training its personnel. During the term of this Agreement and for a period of two years after the date that APS last renders services pursuant to this Agreement (the "Restrictive Period"), the Company and its affiliates agree not to directly or indirectly hire, contract with, or solicit the employment of any of APS' Managing Directors, Directors, or other employees/contractors.

If during the Restrictive Period the Company or its affiliates directly or indirectly hires or contracts with any of

APS' Managing Directors, Directors, or other employees/contractors, the Company agrees to pay to APS as liquidated damages and not as a penalty the sum total of: (i) for a Managing Director, one million U.S. dollars ($1,000,000 USD); (ii) for a Director, five hundred thousand U.S. dollars ($500,000 USD); and (iii) for any other employee/contractor, two hundred fifty thousand U.S. dollars ($250,000 USD). The Company acknowledges and agrees that liquidated damages in such amounts are (x) fair, reasonable and necessary under the circumstances to reimburse APS for the costs of recruiting, hiring and training its employees as well as the lost profits and opportunity costs related to such personnel, and to protect the significant investment that APS has made in its Managing Directors, Directors, and other employees/ consultants; and (y) appropriate due to the difficulty of calculating the exact amount and value of that investment.

The Company also acknowledges and agrees that money damages alone may not be an adequate remedy for a breach of this provision, and the Company agrees that APS shall have the right to seek a restraining order and/or an injunction for any breach of this non-solicitation provision. If any provision of this section is found to be invalid or unenforceable, then it shall be deemed modified or restricted to the extent and in the manner necessary to render the same valid and enforceable.

### Section 11. General.

**Severability.** If any portion of the Agreement shall be determined to be invalid or unenforceable, the remainder shall be valid and enforceable to the maximum extent possible.

**Entire Agreement.** These Terms, the letter agreement into which they are incorporated and the Schedule(s) and Exhibit to such letter agreement contain the entire understanding of the parties relating to the services to be rendered by APS and the Temporary Staff and may not be amended or modified in any respect except in a writing signed by the parties. APS is not responsible for performing any services not specifically described herein or in a subsequent writing signed by the parties

**Joint and Several.** If more than one party signs this Agreement, the liability of each party shall be joint and several.

**Limit of Liability.** APS shall not be liable for incidental or consequential damages under any circumstances, even if it has been advised of the possibility of such damages. APS' aggregate liability, whether in tort, contract, or otherwise, is limited to the amount of fees paid to APS for services on this engagement (the "Liability Cap"). The Liability Cap is the total limit of APS' aggregate liability for any and all claims or demands by anyone pursuant to this Agreement, including liability to the Company, to any other parties hereto, and to any others making claims relating to the work performed by APS pursuant to this Agreement. Any such claimants shall allocate any amounts payable by APS among themselves as appropriate, but if they cannot agree on the allocation it will not affect the enforceability of the

**AP SERVICES, LLC**
**GENERAL TERMS AND CONDITIONS**

Liability Cap. Under no circumstances shall the aggregate of all such allocations or other claims against APS pursuant to this Agreement exceed the Liability Cap.

Notices. All notices required or permitted to be delivered under the Agreement shall be sent, if to APS, to:

> AP Services, LLC
> 2000 Town Center, Suite 2400
> Southfield, MI 48075
> Attention: General Counsel

and if to the Company, to the address set forth in the Agreement, to the attention of the Company's General Counsel, or to such other name or address as may be given in writing to the other party.    All notices under the Agreement shall be sufficient if delivered by facsimile or overnight mail. Any notice shall be deemed to be given only upon actual receipt.

Rev. 1/1/2009

**AP**Services LLC                    Chicago  Dallas  Detroit  Los Angeles  New York  San Francisco  Washington, DC

July 23, 2009


Board of Directors
Motors Liquidation Company
f/k/a General Motors Corporation
GM Global Headquarters
Attn:  Mail Code 482-C37-A99
300 Renaissance Center
Detroit, MI  48265

Re:    Agreement for Interim Management and Restructuring Services -- First Amendment

Dear Sirs:

This letter represents the first amendment (the "First Amendment") to the agreement between
AP Services, LLC, a Michigan limited liability company ("APS") and General Motors
Corporation n/k/a Motors Liquidation Company ("Motors Liquidation", the "Company" or
the "Debtor") dated May 29, 2009 (the "Engagement Letter" and, along with this First
Amendment, the "Agreement"). Unless otherwise modified herein, the terms and conditions
of the Engagement Letter remain in full force and effect.

APS was retained by the Company and certain of its affiliates to act as crisis managers in
connection with their chapter 11 reorganization proceeding. In addition, Albert A. Koch was
appointed to serve as the Debtors Chief Restructuring Officer. Upon the closing of the
Related Section 363 Transactions[1], Mr. Koch was appointed Chief Executive Officer of
Motors Liquidation.

This First Amendment shall be effective immediately upon the closing of the Related
Section 363 Transactions authorized by that certain Order (i) Authorizing Sale of Assets
Pursuant to Amended and Restated Master Sale and Purchase Agreement with NGMCO, Inc.,
a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of
Certain Executory Contracts and Unexpired Leases in Connection with the Sale; and (iii)
Granting Related Relief (the "Sale Order"), entered on July 5, 2009, in the bankruptcy
proceeding of Motors Liquidation and certain of its affiliates pending in the United States
Bankruptcy Court for the Southern District of New York, being case no. 09-50026 (the
"Bankruptcy Case").

After negotiations with the United States Department of Treasury (the "U.S. Treasury") and
the Official Committee of Unsecured Creditors (the "Committee"), and in anticipation of the

_____

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in that certain Order
Pursuant to Bankruptcy Code Sections 105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001
and 6004 (A) Approving Amendment to DIP Credit Facility to Provide For Debtors' Post-Petition Wind-
Down Financing (the "Wind-Down Financing Order") or the Sale Order, as hereinafter defined.

APServices llc

Motors Liquidation Company
July 23, 2009
Page 2 of 4

wind-down of the Debtor as contemplated by the Wind-Down Financing Order, APS has
agreed to modify certain key payment provisions in the Engagement Letter Schedule 1 with
Motors Liquidation. Specifically:

1. **Hourly Fee Reductions:** For hours worked after the effective date of this First
   Amendment, APS agrees that it will reduce its standard hourly fees contemplated by
   section 1 of Schedule 1 of the Engagement Letter as follows: (i) for fees incurred
   after the effective date of this First Amendment up to the aggregate amount of $60
   million (calculated using 100% of standard hourly rates), APS will discount each bill
   to 85% of total incurred standard hourly fees; and (ii) for fees incurred after the
   effective date of this First Amendment exceeding $60 million (calculated using 100%
   of standard hourly rates), APS will discount each bill to 75% of total incurred standard
   hourly fees.

2. **Discretionary Fees:** As contemplated by section 2 of Schedule 1 of the Engagement
   Letter, in addition to the Success Fee of $13 million, APS has obtained the approval
   of the U.S. Treasury for Discretionary Fees based on APS meeting certain key
   milestones in connection with the Bankruptcy Case. Each of the Discretionary Fees
   shall be due and payable at such time as the milestone is met by APS. The
   components of the Discretionary Fees are as follows:

   a. <u>Total Unsecured Creditor Claims</u>. In the event that the total unsecured claims
      pool (including bond claims) is less than $35 billion, APS shall be entitled to a
      Discretionary Fee of $5.0 million. In the event that the total unsecured claims
      pool (including bond claims) is equal to or greater than $35 billion but less
      than $42 billion, APS shall be entitled to a Discretionary Fee of $2.5 million.
      In the event that the total unsecured claims pool exceeds $42 billion, APS
      shall not be entitled to a Discretionary Fee for this milestone; and

   b. <u>Confirmation of a Plan of Liquidation</u>. In the event that the Debtors confirm a
      plan of liquidation or any other plan and such plan is effective on or before
      May 28, 2010, APS shall be entitled to a Discretionary Fee of $2.5 million;
      and

   c. <u>Distribution of Stock and Warrants</u>. In the event that APS distributes 70% or
      more of each of the Common Stock and Warrants of the Purchaser, received
      by the Debtors in connection with the Related 363 Sale Transactions, to the
      Debtors' unsecured creditors within 60 days of the effective date of a
      confirmed plan of liquidation, APS shall be entitled to a Discretionary Fee of
      $2.5 million.

**AP**Services LLC

Motors Liquidation Company
July 23, 2009
Page 3 of 4

3. **Incentive Payments:** In light of APS' agreement to reduce its standard hourly billings, Debtor has agreed to pay APS certain incentive payments in the event that (i) the Debtor reduces priority claims payments; or (ii) provides for the return of monies to the Lenders whether from reductions in expenses, increased assets sale proceeds or any other means related to the administration of the Bankruptcy Case contemplated by the Wind-Down Financing Order ("Incentive Payments") and more specifically outlined in the Wind-Down Budget. The agreed Incentive Payments are outlined below.

    a. <u>Reduction of Priority Claims.</u> In the event that the Debtor reduces required payments on priority claims, which are currently estimated at $100 million, by at least $25 million, Debtors will pay APS 5% of each dollar in reductions in excess of $25 million at such time as excess monies are returned to the lenders, and

    b. <u>Reduction of All Other Net Costs of the Wind-Down Budget.</u> Debtors shall pay APS 15% of each dollar that is returned to the Lenders. For example, if $50 million is returned to the Lenders then $42.5 million will be remitted to the Lenders and $7.5 million will be earned by APS. Provided, however, that in calculating monies returned to the Lenders any fees and expenses paid to the professionals and advisors of the Unsecured Creditors Committee and any ad-hoc committees in excess of $17.2 million shall be treated as if such excess were available for return to the Lender. Further provided that calculations pursuant this paragraph 3(b) shall exclude any monies returned in 3(a) above. The payment(s) made during the bankruptcy proceeding will be subject to the approval of the Unsecured Creditors Committee, such approval not to be unreasonably withheld. Upon emergence from bankruptcy and prior to the final dissolution o f the estate payments will be subject to approval of the members of the board of directors appointed by the Unsecured Creditors Committee (or such other Unsecured Creditors' Committee designee that is reasonably acceptable to APS), such approval not to be unreasonably withheld. Upon final dissolution of the Company a final accounting of amounts earned and unpaid will be submitted to the board for approval.

4. **Termination Without Cause:** Upon termination of the Agreement, unless such termination is by the Debtor for Cause (as defined in the Engagement Letter), APS shall be entitled to immediate payment of (i) the Second Payment of the Success Fee (as defined in the Engagement Letter); and (ii) any Incentive Payments or Discretionary Fees earned pursuant to this First Amendment, but in no event less than $2.5 million if such termination occurs within one year of the effective date of the First Amendment and $5.0 million if it occurs after one year; and (iii) all fee reductions made pursuant to paragraph 1 above; and (iv) all other accrued but unpaid fees and expenses.

APServices LLC

Motors Liquidation Company
July 23, 2009
Page 4 of 4

Each of the U.S. Treasury, the Committee, the Debtor and APS have consented to the
Agreement and to pre-approval of the Second Payment of the Success Fee, the Incentive
Payment and the Discretionary Fees (collectively, the "Success Fees"). The Debtor agrees
that as soon as practicable after the date of the closing of the Section 363 Sale Transactions,
the Debtor will file a motion (the "Motion") to modify that certain Amended Order
Authorizing the Debtors to Employ and Retain APS as Crisis Managers and Designating
Albert A. Koch as Chief Restructuring Officer, entered on July 2, 2009.

\*    \*    \*    \*    \*

If these terms meet with your approval, please sign and return a copy of this First
Amendment. We look forward to our continuing relationship with you.

Sincerely yours,

AP SERVICES, LLC

By: Albert A. Koch
Its: Authorized Representative

Acknowledged and Agreed to:

MOTORS LIQUIDATION COMPANY

By: _____
                    Stephen H. Case
Its: Chairman of the Board of Directors
Dated: July 24 2009

 **APServices** LLC
*When it really matters.*

Chicago  Dallas  Detroit  Düsseldorf  London  Los Angeles  Milan
Munich  New York  Paris  San Francisco  Shanghai  Tokyo  Washington, DC

November 12, 2009

Board of Directors
Motors Liquidation Company
f/k/a General Motors Corporation
GM Global Headquarters
Attn: Mail Code 482-C37-A99
300 Renaissance Center
Detroit, MI 48265

Re:    Motors Liquidation Company Engagement – Second Amendment

Dear Sirs:

This letter represents the second amendment (the "Second Amendment") to the agreement between AP Services, LLC, a Michigan limited liability company ("APS") and Motors Liquidation Company (the "Company") dated May 29, 2009 (as first amended on July 21, 2009, the "Engagement Letter"). Unless otherwise modified herein, the terms and conditions of the Engagement Letter remain in full force and effect. All capitalized terms used but not defined herein shall have the meanings ascribed to them in the Engagement Letter.

Pursuant to the Engagement Letter, APS was retained to provide certain crisis management services to the Company in connection with their chapter 11 proceedings, including, without limitation, assisting the Company in relation to its investments in subsidiaries and affiliates and for the liquidation of same. In connection with the engagement APS Temporary Staff have and will continue to spend time and energy on MLC's investment in General Motors Strasbourg SAS ("GMS") a 100% owned subsidiary of MLC. .

The purposes of this Second Amendment are to clarify (i) the services that APS and its affiliates are providing to the Company's non-debtor foreign subsidiary, GMS, including the possible disposition of assets or interests of GMS; and (ii) the payment arrangements to APS with respect to such services. While such services are within the scope of the Engagement Letter, this Second Amendment memorializes and acknowledges payment by GMS for GMS Services, as defined below.

**Services to be provided by APS**

With effect from September 1, 2009 (the "Commencement Date"), and in accordance with the Engagement Letter, APS and its affiliates have performed and will perform, without limitation, the following tasks in connection with GMS (the "GMS Services"):

07/3262665_1                                                                                  1


When it really matters.

Motors Liquidation Company
November 12, 2009
Page 2 of 4

### Strategy-related services

- Advise and assist the management of GMS with the development of the Company's 2010 budget, business plan and forecast, and other such forecasts as may be required and requested by the management of GMS;

- Advise and assist the management of GMS in the development, with other advisors to GMS, of contingency and other plans with respect to its business operations;

- Advise and assist the management of GMS in the negotiation and implementation of restructuring initiatives and evaluation of strategic alternatives; and

- Advise and support the management of GMS in the preparation of bid materials, presentations and negotiations with respect to new business;

### Financial services

- Advise and assist the management of GMS in the supervision of its performance of financial and treasury functions;

- Advise and assist the management of GMS in developing and implementing its cash management strategies, tactics, forecasts and processes; and

- Advise and assist the management of GMS in the preparation and negotiation of new credit facilities as may be required and requested by the management of GMS;

### Human Resources services

- Advise and assist the management of GMS in the selection and recruitment of a Chief Financial Officer ("CFO") and help transition the new CFO into GMS;

### Sale of GMS

- Advise and assist the management of GMS in pursuing the sale of GMS to a third party, including, without limitation, assisting in negotiations with stakeholders, preparing materials and presentations and maintaining a data room for potential purchasers; and

- Advise and assist the management of GMS in preparing transition services and other agreements between GMS, General Motors Company and Adam-Opel as appropriate;



Motors Liquidation Company
November 12, 2009
Page 3 of 4

*Other services*

- At the request of GMS, assist with such other matters as may be requested that fall within APS' expertise and that are mutually agreeable.

## Staffing

The Engagement Letter and subsequent Monthly Staffing Reports identify personnel of APS and its affiliates serving as "Temporary Staff" for the Company and certain of its affiliates, including those acting in officer roles. In addition, it is anticipated that Albert A. Koch and Ted Stenger of APS may be appointed as General Managers ("Directeurs Generaux") and/or members of the board of directors of GMS. Until such appointment, no Temporary Staff of APS are acting as officers or directors of GMS or participating in decision making for GMS. Additional Temporary Staff expected to assist and advise GMS include Laurent Petizon, Giacomo Cantu, Nicolas Deniau, Reese McNeel and Bruce Conforto. The parties agree that Exhibit A to the Engagement Letter can be amended by APS from time to time to add or delete staff, and the Monthly Staffing Reports shall be treated by the parties as such amendments.

Monthly Staffing Reports and Quarterly Compensation Reports, as they are filed with respect to the Company's chapter 11 case, will reflect the staffing, fees and expenses (and any allocation of same) relative to the GMS Services.

## Payment

GMS shall pay APS directly for its hourly fees and expenses associated with the GMS Services. Services performed by Temporary Staff outside of North America providing GMS Services shall be billed at APS' standard hourly rates as set forth below, and shall not be subject to the Hourly Fee Reductions in the First Amendment. The standard hourly rates for the Temporary Staff currently expected to provide GMS Services are set forth below:

Laurent Petizon: €730
Giacomo Cantu: €555
Reese McNeel: £290
Nicolas Deniau: €495
Bruce Conforto: $595

Work performed by the above Temporary Staff with respect to GMS Services will be charged at the above local rates converted to U.S. dollars on the last day of the billing period. Any fees and expenses for GMS Services not paid by GMS shall be paid by the Company. APS shall submit monthly invoices for the GMS Services to GMS, which invoices shall be due



Motors Liquidation Company
November 12, 2009
Page 4 of 4

within 15 days of receipt. Time and expenses incurred by Messrs. Koch, Stenger and other
Temporary Staff not specifically assigned to GMS will not be charged to GMS.

* * *

If these terms meet with your approval, please sign and return the enclosed copy of this
Second Amendment.

We look forward to our continuing relationship with you.

Sincerely yours,

AP SERVICES, LLC

Ted Stenger
Managing Director

Acknowledged and Agreed to:
MOTORS LIQUIDATION COMPANY

By: _____
Its: _____Chairm/BoD_____
Dated: ____December 17, 2009___

GENERAL MOTORS STRASBOURG SAS

By: _____
Its: _____Stephen Jenkins_____
Dated: ____20 Nov 09_____

APServices LLC          Chicago  Dallas  Detroit  Los Angeles  New York  San Francisco  Washington, DC

June 7, 2010

Board of Directors
Motors Liquidation Company
f/k/a General Motors Corporation
500 Renaissance Center
Suite 1400
Detroit, MI  48243

Re:    Agreement for Interim Management & Restructuring Services – Third Amendment

Dear Sirs:

This letter represents the third amendment (the "Third Amendment") to the agreement
between AP Services, LLC, a Michigan limited liability company ("APS") and Motors
Liquidation Company f/k/a General Motors Corporation ("Motors Liquidation," the
"Company" or the "Debtor") dated May 29, 2009 (the "Engagement Letter" and, along with
the First Amendment dated July 23, 2009, the Second Amendment dated November 12, 2009,
and this Third Amendment, the "Agreement").

APS was retained by the Company and certain of its affiliates to act as crisis managers in
connection with their chapter 11 reorganization proceeding. In addition, Albert A. Koch was
appointed to serve as the Debtor's Chief Restructuring Officer. On or about July 10, 2009
(the "Closing Date"), upon the closing of the sale of the majority of the Debtor's assets to
General Motors Company, Mr. Koch was appointed Chief Executive Officer of Motors
Liquidation.

This Third Amendment shall be effective immediately upon approval by the Bankruptcy
Court in the bankruptcy proceeding of Motors Liquidation and certain of its affiliates pending
in the United States Bankruptcy Court for the Southern District of New York, being Case No.
09-50026 (the "Bankruptcy Case"). The Hourly Rate Changes, as subsequently defined, shall
be retroactive to the Closing Date.

Background

The First Amendment was entered into effective on the Closing Date after negotiations with
the United States Department of Treasury (the "U.S. Treasury") and the Official Committee
of Unsecured Creditors (the "Committee"). The First Amendment was in anticipation of the
wind-down of the Debtor as contemplated by the Wind-Down Financing Order.[1]  Since the
Closing Date, APS has worked diligently and in close cooperation with the United States

---

[1]  The Wind-Down Financing Order shall mean that certain Order Pursuant to Bankruptcy Code Sections
105(a), 361, 362, 363, 364 and 507 and Bankruptcy Rules 2002, 4001 and 6004 (A) Approving Amendment
to DIP Credit Facility to Provide For Debtors' Post-Petition Wind-Down Financing.

# APServices llc

Motors Liquidation Company
June 7, 2010
Page 2 of 4

Treasury, the United States Department of Labor, the United States Department of Justice, and the United States Environmental Protection Agency, as well as governmental agencies in more than a dozen states, to develop a liquidating plan of reorganization for the Debtor that will adequately meet the interests of these stakeholders. It became increasingly apparent to APS over the past months that the originally designed incentives were not working as intended and, in fact, at times were presenting an obstacle to gaining acceptance by the various stakeholders of the proposed plan structure and implementation.

Accordingly, APS entered into negotiations with the U.S. Treasury and the Committee to further amend the financial terms of the APS engagement. This letter documents the results of those negotiations. The U.S. Treasury agreed not to object to an amendment, provided that the overall cost to the taxpayer of the APS engagement was likely to be lower than the cost contemplated under the First Amendment. By way of information, APS and the Debtor estimate that the incentive structure in this Third Amendment will likely provide approximately 35% less in compensation to APS than would have been the case with the incentives established in the First Amendment. The incentives in the Third Amendment, however, provide APS with acceleration of payment and certainty of amount.

### Changes to Numbered Paragraphs in the First Amendment

1. **Hourly Fee Reductions:** The Hourly Fee Reductions outlined in paragraph 1 of the First Amendment are hereby deleted and replaced with the following:

   **Hourly Fees:** Hourly fees shall be paid at rates as set forth in the Engagement Letter, as such rates have been updated in the ordinary course for the 2010 calendar year and as they may be further modified by Supplemental Declarations or order of the Bankruptcy Court (the "Hourly Rate Changes"). The Hourly Rate Changes shall be retroactive to July 10, 2009. APS wishes to disclose that the retroactive amount to be billed to the Company through April 30, 2010 is approximately $5.3 million. Additional retroactive amounts to be billed to the Company will continue to accrue after April 30, 2010 through the date of approval of this Third Amendment. APS shall bill the retroactive amounts, and such amounts shall be due and payable promptly upon approval of this Third Amendment.

2. **Discretionary Fees:** Paragraphs 2 a. and b. of the First Amendment are deleted and replaced in their entirety as follows:

   Total Unsecured Creditor Claims. In the event that the total unsecured claims pool (including bond claims) is less than $35 billion, APS shall be entitled to a Discretionary Fee of $5.0 million. In the event that the total unsecured claims pool (including bond claims) is equal to or greater than $35 billion but less

APServices LLC

Motors Liquidation Company
June 7, 2010
Page 3 of 4

than $42 billion, APS shall be entitled to a Discretionary Fee of $2.5 million.
Between $35 billion and $42 billion the Discretionary Fee shall be adjusted
pro rata. For example, if the total unsecured claims are $38.5 billion, the
Discretionary Fee under this paragraph would be $3.75 million. In the event
that the total unsecured claims pool exceeds $42 billion, APS shall not be
entitled to a Discretionary Fee for this milestone; and

Paragraph 2 c. of the First Amendment is amended to read as follows:

c. Distribution of Stock and Warrants. At such time as APS and the Trustee
distributes 70% or more of each of the Common Stock and Warrants of the
Purchaser, received by the Debtors in connection with the Related 363 Sale
Transactions, to the Debtors' unsecured creditors following the effective date
of a plan of liquidation, APS shall be entitled to a Discretionary Fee of $2.5
million.

3. **Incentive Payments**: The Incentive Payments outlined in paragraph 3 of the First
Amendment are hereby deleted and replaced in their entirety with the following:

**Incentive Payments**: In the event that the Debtors confirm a plan of
liquidation that becomes effective, APS shall be entitled to an Incentive Fee of
$7 million that is payable upon confirmation of the plan of liquidation.

Each of the U.S. Treasury, the Debtor and APS has consented to this Third Amendment,
including providing pre-approval for the Incentive Payment, the retroactive Hourly Rate
Changes and the Discretionary Fees. In addition, the U.S. Treasury, the Debtor and APS
continue to consent to pre-approval of the Second Payment of the Success Fee (as defined in
the Engagement Letter). The Debtor agrees that as soon as practicable, it will file a motion to
approve this Third Amendment.

Except as otherwise modified by this Third Amendment, the terms of the Engagement Letter,
as amended, remain in full force and effect.

\*   \*   \*   \*   \*

# APServices LLC

Motors Liquidation Company
June 7, 2010
Page 4 of 4

If these terms meet with your approval, please sign and return a copy of this Third
Amendment. We look forward to our continuing relationship with you.

Sincerely yours,

AP SERVICES, LLC

By:    Albert A. Koch
Its:   Authorized Representative

Acknowledged and Agreed to:
MOTORS LIQUIDATION COMPANY
By:    _____
Its:   Chair _____
Dated:    16 June 10 _____

# EXHIBIT B
## DECLARATION OF ALBERT A. KOCH

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------x
```
| | | |
|---|---|---|
| **In re:** | ) | **Chapter 11** |
| **MOTORS LIQUIDATION COMPANY, et. al.)** | | **Case No. 09-10023** |
| | ) | **Jointly Administered** |
| **Debtors** | ) | |
```
-----------------------------------------------------x
```

## DECLARATION OF ALBERT A. KOCH

I, Albert A. Koch, make this declaration and state as follows:

1.     I am a Managing Director of AlixPartners, LLP and an Authorized Representative of AP Services, LLC ("*APS*"), which maintains offices at, among other locations, 2000 Town Center, Suite 2400, Southfield, Michigan 48075.

2.     This declaration is submitted pursuant to Section 504 of the Bankruptcy Code and Bankruptcy Rule 2016 in connection with and in support of APS' application (the "*Application*") for approval of Discretionary Fees payable to APS. Capitalized terms used but not defined herein have the meanings given them in the Application. I have read the Application, and the facts contained therein are true and correct to the best of my knowledge, information and belief.

3.     The Application requests that this Court enter an order, for the avoidance of doubt, authorizing payment of the Discretionary Fees in amounts up to $14.5 million to APS. Of this $14 million, a total of $12 million has been earned and is payable now pursuant to discretionary fees as these discretionary fees are outlined in paragraph 8 of the Application. The remainder, up to an additional $2.5 million, will be paid only to the extent earned based upon ultimate claim

levels attained and agreed to in writing by the GUC Trust Trustee. The formula for earning such discretionary fees is set forth in paragraph 8(a) of the Application.

4.      No agreement or understanding exists between APS and any other persons or parties to share in any compensation received in connection with these Chapter 11 Cases other than as among members of AlixPartners and APS.

5.      In my leadership role as CEO for the global MLC enterprise, I worked with a team of over 170 full and part-time APS temporary staff, and played a pivotal role in designing the Plan to provide maximum distributions to creditors as well as returning to the U.S. Treasury the maximum funds from MLC's non-recourse DIP loan:

- APS worked diligently and in close cooperation with the United States Environmental Protection Agency, as well as governmental agencies in more than a dozen states to craft the ERT which provides $536 million, subject to adjustment, for the continuing environmental remediation of remaining properties, for as long as 100 years in some cases. The ERT enables redevelopment and sale of MLC's remaining real property and also provides approximately $200 million of cash and property that was transferred to the ERT to fund its administration.

- APS oversaw distribution of the General Motors Company common stock and warrants owned by MLC to holders of allowed unsecured claims. MLC owned 10% of General Motors Company's ("*New GM*") common stock, plus warrants exercisable for a further 15% of New GM's common stock on a fully diluted basis. MLC's interest includes 150 million shares of common stock, a warrant to acquire 136.4 million shares at $10/share and a warrant to acquire 136,400,000 shares at $18.33/share. As of April 21, 2011, over 75% of the stock and warrants had been distributed under the Plan.

- APS placed a key focus on claims resolution, successfully negotiating the resolution of or litigating nearly 97 percent of the $294 billion in claims that were filed against MLC. APS leveraged unique technological solutions to manage the treatment of more than 750,000 contracts, and the analysis of more than 70,000 claims. This resulted in claim reductions of more than $284 billion. In addition, APS was involved in extensive and collaborative negotiations to resolve claims at numerous federal and state EPA Superfund sites.

- APS aggressively pursued sales of real estate during the bankruptcy process, working closely with federal, state and local government agencies to resolve environmental issues at the sites, resulting in the sale of 11 closed manufacturing facilities. In addition, APS closed on three asset sales that preserved jobs or helped to create new jobs in Strasbourg, France, Wilmington, Delaware and Pontiac, Michigan.

20

- APS worked diligently with all constituents, including the United States Department of Treasury, The United States Department of Justice, The United States Environmental Protection Agency as well as the Unsecured Creditors' Committee to finalize the Plan and Disclosure Statement and to implement the same.

6.      Contingent success fees are a normal part of compensation for APS and other turnaround and management restructuring consulting firms.  APS priced the engagement and negotiated the Discretionary Fees as part of its total compensation package, and APS contemplated discretionary fees when accepting the engagement from the Debtors.  The Discretionary Fees are fair, reasonable and comparable to contingent fees charged by APS and other advisors in similar engagements both in and out of Chapter 11.

* * * * *

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: April **29**, 2011

By:    _____

Albert A. Koch
Authorized Representative
AP Services, LLC
2000 Town Center, Suite 2400
Southfield, MI 48075

**EXHIBIT C**
RETENTION ORDER

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                          :
In re                                                     :          Chapter 11 Case No.
                                                          :
**GENERAL MOTORS CORP.,** *et al.*,                        :          **09-50026 (REG)**
                                                          :
                                     **Debtors.**          :          **(Jointly Administered)**
                                                          :
-------------------------------------------------------------x

### AMENDED ORDER AUTHORIZING THE DEBTORS TO EMPLOY AND RETAIN AP SERVICES, LLC AS CRISIS MANAGERS AND TO DESIGNATE ALBERT A. KOCH AS CHIEF RESTRUCTURING OFFICER, *NUNC PRO TUNC* TO THE PETITION DATE

Upon the motion (the "**Motion**") of General Motors Corporation ("**GM**"), and its affiliate debtors, as debtors and debtors in possession in the above-referenced chapter 11 cases (collectively, the "**Debtors**") for an order, pursuant to section 363 of the Bankruptcy Code,[1] authorizing the Debtors to employ AP Services, LLC ("**APS**") and to designate Albert A. Koch as CRO, nunc pro tunc to the Petition Date, pursuant to the terms of that certain agreement, dated May 29, 2009, between APS and GM, attached to the Motion as Exhibit C (the "**Engagement Letter**"); and upon consideration of the representations made in the Motion and the Koch Declaration; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (i) the Office of the United States Trustee for the Southern

---

[1] Capitalized terms used and not otherwise defined herein shall have the meanings ascribed to them in the Motion.

District of New York, (ii) the attorneys for the United States Department of the Treasury, (iii) the attorneys for Export Development Canada, (iv) the attorneys for the agent under GM's prepetition secured term loan agreement, (v) the attorneys for the agent under GM's prepetition amended and restated secured revolving credit agreement, (vi) the attorneys for the statutory committee of unsecured creditors appointed in these chapter 11 cases, (vii) the attorneys for the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, (viii) the attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers—Communications Workers of America, (ix) the United States Department of Labor, (x) the attorneys for the National Automobile Dealers Association, (xi) the attorneys for the ad hoc bondholders committee, (xii) the U.S. Attorney's Office, S.D.N.Y., and (xiii) all entities that requested notice in these chapter 11 cases under Fed. R. Bankr. P. 2002, and it appearing that no other or further notice need be provided; and a hearing having been held to consider the relief requested in the Motion on June 25, 2009 (the "**Hearing**"); and upon the record of the Hearing at which the attorneys for the Debtors advised the Court of the terms of the resolution of the objection to the Motion filed by the Office of the United States Trustee; and upon all of the proceedings had before the Court; and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates. creditors, and all parties in interest; and the Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefore, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Debtors are authorized, <u>nunc</u> <u>pro</u> <u>tunc</u> to the Petition Date, to (i) employ and retain APS on the terms set forth in the Engagement Letter as modified by this Order and (ii) designate Albert A. Koch as Chief Restructuring Officer for the Debtors; and it is further

ORDERED that, in a manner consistent with the Motion, the Engagement Letter and the Koch Declaration:

(i)     APS may render crisis management services to the Debtors;

(ii)    APS may provide Temporary Employees to the Debtors to assist the Debtors in their restructuring efforts;

(iii)   Mr. Koch may serve as Debtors' CRO, as provided in the Engagement Letter;

(iv)    Mr. Koch may serve as CEO of the Debtors upon the closing of the Transaction;

(v)     APS may designate certain Temporary Staff of APS as directors or executive officers of subsidiaries of the Debtors as more specifically set forth in the Engagement Letter; and

(vi)    working collaboratively with the Debtors' senior management team, Boards of Directors and the Debtors' other professionals, Mr. Koch and APS may assist the Debtors in evaluating and implementing strategic and tactical options through the restructuring process; and it is further

ORDERED that APS and its personnel shall be required to: (i) maintain contemporaneous time records in tenth of an hour increments and (ii) conform to any schedule of hourly rates contained in the Engagement Letter; except that with respect to the GM PO, APS can continue to bill the Debtors at the set monthly fee determined prior to the Petition Date and such set monthly fee shall be included within any quarterly report of compensation; and it is further

ORDERED that, except as otherwise provided herein, APS is not required to submit fee applications pursuant to sections 330 and 331 of the Bankruptcy Code, but will instead submit monthly invoices to the Debtors, and the Debtors are hereby authorized to pay, in the ordinary course of its business, all reasonable amounts invoiced by APS for fees and expenses; and it is further

ORDERED that APS shall submit to the Court, with copies to the United States Trustee and all official committees contemporaneously with such filing, quarterly reports of compensation earned, and parties-in-interest in these Chapter 11 Cases shall have the right to object to fees paid and expenses reimbursed to APS subject to review under the reasonableness standards of sections 330 and 331 of the Bankruptcy Code within 20 days after APS files such reports; and it is further

ORDERED that the first quarterly report of compensation earned by APS shall be submitted by APS no later than 45 days after the end of the first calendar quarter after the Petition Date, which shall cover the period to and including the last day of the first quarter after the Petition Date, and this procedure shall continue at three month intervals thereafter; and it is further

ORDERED that APS shall file with the Court (and serve copies on the United States Trustee and all official committees contemporaneously with such filing) a report on staffing on the engagement for the previous month. Such report shall include the names of the individuals assigned and any updates to the then-current list of officer and director positions held by members of the Temporary Staff. All staffing shall be subject to review by the Court in the event that an objection is filed; and it is further

ORDERED that, notwithstanding anything in the Motion, the Koch Declaration or the Engagement Letter, pursuant to the protocol[2] established with the United States Trustee (the "**Protocol**"), the Debtors are permitted to indemnify those APS employees serving as "executive officers" (as such term is used in the Protocol) of the Debtors and such indemnification, and associated D&O insurance coverage, shall be provided on the same terms as provided to the Debtors' other officers and directors under the terms of the Debtors' by-laws (subject to applicable state law) and the Debtors' D&O policies; however, in no case shall the indemnification provisions of the Engagement Letter apply to APS; AlixPartners or their affiliated entities; and it is further

ORDERED that, notwithstanding the Protocol, if the Debtors assign any APS employee to act in a director role in any of their wholly-owned subsidiaries, such assignment is hereby approved and the Debtors shall indemnify and insure such APS employee as an "executive officer" pursuant to the foregoing paragraph, and it is further

ORDERED that 50% of the Success Fee shall be payable at the closing (the "**Closing**") of the Transaction (as set forth in Paragraph 26 of the Motion), subject to APS filing with the Court a supplemental affidavit summarizing the services rendered by APS with respect to the Transaction; and it is further

ORDERED that the balance of the Success Fee (which is payable on the first anniversary of the Closing) and any Discretionary Fee shall be subject to review under the reasonableness standards of sections 330 and 331 of the Bankruptcy Code, including the filing of

---

[2]  On October 4, 2001, the Bankruptcy Court for the District of Delaware approved a settlement between the United States Trustee and Jay Alix and Associates ("**JAA**"), under which JAA, along with its affiliates, agreed to abide by certain guidelines in seeking to be retained in future chapter 11 bankruptcy cases.  The Stipulations, each dated September 11, 2001, were entered in the cases, *In re Safety-Kleen Corp.*, Case No. 00-2303 (Bankr. D. Del.) and *In re Harnischfeger Industries Inc.*, Case No. 99-2171 (Bankr. D. Del.), respectively.

appropriate fee applications (which shall include time records), and after notice and a hearing; and it is further

ORDERED that no person involved in rendering services pursuant to the Engagement Letter shall bill at a rate higher than the rate charged by Mr. Albert A. Koch, as the same may be adjusted from time to time in accordance with the normal billing practices of APS and its affiliates.  The Office of the United States Trustee shall be advised of any such adjustment; and it is further

ORDERED that to the extent that there may be any inconsistency between the terms of the Motion, the Engagement Letter or this Order, the terms of this Order shall govern; and it is further

ORDERED that this Order supersedes in all respects the prior order of this Court entered on June 25, 2009 authorizing *inter alia* the retention of APS [Docket No. 2534]; and it is further

ORDERED that this Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated:  New York, New York
       *July   2  *, 2009


                                 *s/Robert E. Gerber*           
                                UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT D

## PROPOSED ORDER

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: ) | Chapter 11 |
| ) | |
| MOTORS LIQUIDATION COMPANY, *et* ) | Case No. 09-50026 (REG) |
| *al.*, f/k/a General Motors Corp., Et al. ) | |
| ) | |
| Debtors. ) | Jointly Administered |
| ) | |

## ORDER GRANTING APPLICATION BY AP SERVICES, LLC AS CRISIS MANAGERS TO THE DEBTORS FOR APPROVAL OF DISCRETIONARY FEES

Upon consideration of the *Application of AP Services, LLC as Crisis Managers to the Debtors for Approval of Discretionary Fees* (the "Application"),[6] dated April __, 2011, for entry of an order allowing and authorizing payment of the Discretionary Fees as provided in the Engagement Letter, as modified by the Third Amendment, approved by this Court on September 17, 2010, all as more fully described in the Application; and due and proper notice of the Application having been provided, and it appearing that no other or further notice need be provided; and the Court having reviewed the Application and having found and determined that the relief sought in the Application is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the factual and legal bases set forth in the Application establish

---

[6] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Application.

just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is:

**ORDERED,** that the Application is granted as provided herein;

**ORDERED,** that the Discretionary Fees are approved on a final basis; and it is further

**ORDERED,** that the above-captioned debtors are authorized and directed to make payment to APS of the Discretionary Fees promptly upon entry of this Order, as each such Discretionary Fee is earned by APS; and it is further

**ORDERED,** that this Court retains jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: April __, 2011
     New York, New York

_____
United States Bankruptcy Judge