**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
:           10 Civ. 9094 (RMB)
IN RE MOTORS LIQUIDATION COMPANY     :
:           **DECISION & ORDER**
-----------------------------------------------------------------x

**I.    Introduction**

Before the Court is a motion, filed January 21, 2011 by General Motors LLC ("New GM" or "Appellee"), to dismiss as "equitably moot" an appeal, filed October 14, 2010 by Rally Auto Group, Inc. ("Rally" or "Appellant"). (Mot. of Appellee to Dismiss Appeal, dated Jan. 21, 2011 ("Appellee Mot."), at 1.) Rally appealed from an order, issued October 12, 2010 by Judge Robert E. Gerber of the United States Bankruptcy Court for the Southern District of New York ("Enforcement Order"). The Enforcement Order, among other things, required Rally to terminate its Chevrolet dealership in Palmdale, California pursuant to an agreement, dated June 1, 2009 ("Wind-Down Agreement").

**For the reasons set forth below, New GM's motion to dismiss the appeal is granted.**

**II.   Background**

On June 1, 2009, General Motors Corporation and its affiliates ("Old GM" or "Debtor") filed a voluntary petition in the S.D.N.Y. Bankruptcy Court under Chapter 11 of the Bankruptcy Code. On or about that same date, Old GM and Rally entered into the Wind-Down Agreement under which Rally, in exchange for monetary payments and other consideration, agreed to terminate its Palmdale Chevrolet dealership agreement (as well as its Buick, Cadillac, and GMC dealership agreements) by October 31, 2010. (Wind-Down Agreement, attached as Ex. G to Decl. of Gregory R. Oxford, dated Jan. 19, 2011 ("Oxford Decl."), §§ 2, 3.) The Wind-Down Agreement also provided, among other things, that "the Bankruptcy Court shall retain full,

complete and exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of this Agreement and any other matter related thereto." (Wind-Down Agreement § 13.)

By order dated July 5, 2009 ("Sale Order"), the S.D.N.Y. Bankruptcy Court approved the sale of Old GM's assets – including assignment of Old GM's interests under the various Wind-Down Agreements – to New GM ("GM Sale"), and held that the Wind-Down Agreements "represent valid and binding contracts, enforceable in accordance with their terms." (Sale Order, attached as Ex. F to Oxford Decl., §§ 7, 31.) The Sale Order also provided that the S.D.N.Y. Bankruptcy Court "retains exclusive jurisdiction to . . . resolve any disputes with respect to or concerning the [Wind-Down Agreements]." (Sale Order § 71.)

On December 16, 2009, President Obama signed into law the Dealer Arbitration Act ("DAA"), see Pub. L. No. 111-117, § 747(b), 123 Stat. 3034, which afforded terminated dealers such as Rally "the right to seek, through binding arbitration [before the American Arbitration Association ('AAA')] . . . reinstatement of a franchise agreement [with New GM], or to be added as a franchisee to [New GM's] dealer network," id. Rally timely filed a demand for arbitration pursuant to the DAA and, after holding hearings on May 13, 14, and 17, 2010, an AAA arbitrator, on June 8, 2010, concluded that Rally "shall be added to the [New GM] dealer network . . . as to the Cadillac, Buick and GMC brands" but "not . . . with respect to the Chevrolet brand." (Written Determination of Arbitrator, dated June 8, 2010 ("Award"), attached as Ex. I to Oxford Decl., at 2.)

On August 13, 2010, Rally commenced an action in the United States District Court for the Central District of California ("California Action") by filing a petition to modify or, alternatively, to vacate the AAA Award. (Pet. in No. 10 Civ. 1236 (C.D. Cal.), dated Aug. 13, 2010 ("Calif. Pet.").) Rally argued, among other things, that the arbitrator "exceeded the scope

2

of his authority [under the DAA] by attempting to remove the Chevrolet brand" from the Rally franchise. (Calif. Pet. at 5.)

On September 10, 2010, New GM requested by motion that the S.D.N.Y. Bankruptcy Court, pursuant to 11 U.S.C. §§ 105, 363, exercise its exclusive jurisdiction to enforce the terms of the Sale Order and Wind-Down Agreement and require Rally to dismiss the California Action with prejudice. (New GM's Mot. to Enforce the Sale Order and Wind-Down Agreement in Bankruptcy Court, dated Sept. 10, 2010, ¶¶ 17–19 ("[E]ven if judicial review of the arbitration award is somehow available, Rally may not 'end run' around this Court; such judicial review must be done by this Court," which "has 'retained exclusive jurisdiction' to enforce and implement the terms of the . . . Sale Order and the Wind-Down Agreement, and resolve any disputes concerning these Court-approved documents." (emphasis omitted)); see also Sale Order § 71; Wind-Down Agreement § 13.) On October 12, 2010, the S.D.N.Y. Bankruptcy Court granted New GM's motion ordering, among other things, that "Rally and all persons acting in concert with it cease and desist from prosecuting the claims attempted to be asserted in the California Action and from taking any action or attempting in any way to avoid the terms of the . . . Wind-Down Agreement." (Enforcement Order, attached as Ex. J to Oxford Decl., at 2; see Tr. of Proceedings before Bankruptcy Court, dated Oct. 4, 2010, attached as Ex. E to Oxford Decl., at 46:19-22 (Judge Gerber: "The Second Circuit has held . . . that bankruptcy courts are empowered to enforce the sale orders that they enter and to protect the rights which were established by the sale order[s].").) By separate order, dated October 12, 2010, the S.D.N.Y. Bankruptcy Court granted Rally's oral motion for a stay of its Enforcement Order "to the limited extent" of affording Rally 7 days "to seek stay relief . . . [in] the Southern District of New York."

3

(Stay Order in Bankruptcy Court, dated Oct. 12, 2010, attached as Ex. K to Oxford Decl., at 2–3.)

On October 15, 2010, after filing the instant appeal of the Enforcement Order, Rally moved for a stay of the Enforcement Order in this district. By opinion and order, dated October 29, 2010, following a hearing held on October 20, 2010, United States District Judge Robert B. Patterson, Jr. denied Rally's application for a stay "[b]ecause it has not established that it will suffer greater irreparable harm than [New GM] and other third parties, has failed to show a possibility of success on the merits, and has not indicated that the public interest weighs in favor of a stay." (Judge Patterson's Order, dated Oct. 29, 2010, attached as Ex. A to Oxford Decl., at 12.)

On October 31, 2010, pursuant to the Wind-Down Agreement, Sale Order, and Enforcement Order, Rally closed its Chevrolet dealership. (Appellee Mot. at 1.) And, by stipulation of the parties, dated November 9, 2010, Rally dismissed the California Action "with prejudice." (Stip. of Dismissal in California Action, dated Nov. 9, 2010, at 1 ("[P]ursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii), and the Orders entered by the United States Bankruptcy Court for the Southern District of New York . . . dated October 12, 2010, the parties hereby stipulate that this action is hereby dismissed with prejudice and this matter is terminated.").)

As noted, on January 21, 2011, New GM filed a motion to dismiss Rally's appeal from the Enforcement Order on grounds of "equitable mootness." (Appellee Mot. at 1.) New GM argues, among other things, that the GM Sale "has been consummated, with all of the attendant consequences of transferring and transforming a multibillion dollar enterprise," triggering a "strong presumption" that Rally's appeal of the Enforcement Order is "equitably moot."

(Appellee Mot. at 13 (quoting Parker v. Motors Liquidation Co., 430 B.R. 65, 80 (S.D.N.Y. 2010); Campbell v. Motors Liquidation Co., 428 B.R. 43, 60 (S.D.N.Y. 2010)).)  New GM also argues that Rally cannot rebut this presumption because, among other reasons, New GM has already "conveyed the single Chevrolet dealership opportunity in Antelope Valley" to Juan Lou Gonzales ("Gonzales"), who, on November 10, 2010, after competing successfully against Rally for the opportunity, opened AV Chevrolet in Lancaster, California – just under six miles from Rally's former Chevrolet dealership in Palmdale.  (Appellee Mot. at 11, 14–16 (emphasis omitted); see Decl. of Gonzales, dated Jan. 14, 2011 ("Gonzales Decl."), attached to Appellee Mot., ¶ 5.)

On February 10, 2011, Rally filed an opposition in which it argues that its appeal is not equitably moot because, among other reasons, "this Court could still order effective relief in Rally's favor by simply reversing the Bankruptcy Court's ruling that it possessed 'exclusive' subject matter jurisdiction to hear the issues that have been raised in the [California Action] and permit Rally to prosecute [the California Action]."  (Appellant's Mem. of Law in Opp'n to Mot., dated Feb. 10, 2011 ("Appellant Opp'n"), at 11.)  Addressing the merits of its underlying appeal, Rally also argues that "[o]nly Article III courts (like the California District Court) have the subject-matter jurisdiction and constitutional power to review . . . [the parties' AAA] arbitration proceeding to insure the rights of due process and perform the traditional judicial review of legislative courts' fact finding determinations."  (Appellant Opp'n at 7.)

On February 24, 2011, New GM filed a reply, arguing that "[i]f the appeal is moot, the merits do not matter," but that, in any case, "there is no basis for the Court to depart from Judge Patterson's holding that the California District Court lacks jurisdiction, which stands as the law

5

of the case." (Reply Mem. of Law in Supp. of Mot. of Appellee, dated Feb. 24, 2011 ("Appellee Reply"), at 7 (emphases omitted).)

The parties waived oral argument.

**III. Legal Standard**

"[Equitable mootness] principles are especially pertinent in bankruptcy proceedings, where the ability to achieve finality is essential to the fashioning of effective remedies." In re Chateaugay Corp, 988 F.2d 322, 325–26 (2d Cir. 1993) (hereinafter, "Chateaugay I"). "The Court of Appeals has recognized that bankruptcy appeals may be equitably moot in two situations: when an unstayed order has resulted in a 'comprehensive change in circumstances,' and when a reorganization is 'substantially consummated.'" In re Delta Air Lines, Inc., 374 B.R. 516, 522 (S.D.N.Y. 2007) (quoting Chateaugay I, 988 F.2d at 325; In re Chateaugay Corp., 10 F.3d 944, 955 (2d Cir. 1993) (hereinafter, "Chateaugay II")).

"There exists a strong presumption that an appeal of an unstayed order is moot once a reorganization has been substantially consummated." Allstate Ins. Co. v. Hughes, 174 B.R. 884, 889 (S.D.N.Y. 1994); see Campbell, 428 B.R. at 60.

"Bankruptcy courts retain jurisdiction to enforce and interpret their own orders." In re Millenium Seacarriers, Inc., 419 F.3d 83, 97 (2d Cir. 2005) (citing In re Petrie Retail, Inc., 304 F.3d 223, 230 (2d Cir. 2002)).

**IV. Analysis**

Preliminarily, some of the parties' arguments address the issue whether the AAA Award may be reviewed in the California Action or whether any such review must take place in the S.D.N.Y. Bankruptcy Court. (See Appellant Opp'n at 6–7; Appellee Reply at 7–8.) While the issue is not directly before the Court, it would appear that there are several bases for upholding

6

the Bankruptcy Court's exercise of jurisdiction in the Enforcement Order. First, the Wind-Down Agreement (which Rally signed) and the Sale Order expressly provide for the Bankruptcy Court's retention of "exclusive jurisdiction to interpret, enforce, and adjudicate disputes concerning the terms of [the Wind-Down] Agreement and any other matter related thereto," which would encompass a dispute over reinstatement of Rally's Chevrolet dealership. (Wind-Down Agreement § 13; see Sale Order § 71.) Second, it is well established that "[a] bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization." Petrie, 304 F.3d at 230. Third, Rally failed to persuade Judge Patterson that it had (even) "a possibility of succeeding on the merits of its lack of jurisdiction argument" because the Sale Order constitutes a core proceeding and "[a] motion seeking enforcement of an order resolving a core matter based on a retained jurisdiction clause is itself a core matter" over which bankruptcy courts have jurisdiction. (Judge Patterson's Order at 8.) "[C]ourts are understandably reluctant to reopen a ruling once made, especially when one judge . . . is asked to consider the ruling of a different judge . . . ." Lillbask ex rel. Mauclaire v. Conn. Dep't of Educ., 397 F.3d 77, 94 (2d Cir. 2005).

But, it is not necessary to decide the question of jurisdiction because Rally has not overcome the strong presumption that its appeal is moot. See Campbell, 428 B.R. at 52. To overcome the presumption of mootness, Rally must establish the presence of all of the following five factors:

> (a) the court can still order some effective relief; (b) such relief will not affect the re-emergence of the debtor as a revitalized corporate entity; (c) such relief will not unravel intricate transactions so as to knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court; (d) the parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings; and (e) the appellant pursued with diligence all available remedies to obtain a stay of execution of the

7

> objectionable order if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from.

Campbell, 428 B.R. at 60 (quoting Chateaugay II, 10 F.3d at 952–53); see Delta, 374 B.R. at 523.

**No Effective Relief**

New GM argues persuasively that "[t]he relief Rally seeks – authorization to prosecute the California Action for the ultimate purpose of gaining reinstatement of its Chevrolet [d]ealer [a]greement – is not feasible" because, among other reasons, AV Chevrolet was established, following a competition in which Rally participated, as a replacement for Rally on November 10, 2010, and "New GM never considered having two Chevrolet dealerships in the Antelope Valley." (Appellee Mot. at 5, 16.) This Court cannot now order any effective relief because it cannot restore the status quo. See In re Global Vision Prods., Inc., No. 07 Civ. 12628, 2009 WL 2170253, at *4 (S.D.N.Y. July 14, 2009).

Soon after executing the Wind-Down Agreement with Rally in 2009, New GM solicited applications from California dealers, including Rally, seeking to operate the Antelope Valley Chevrolet dealership which would replace Rally's Palmdale dealership beginning in November 2010. Gonzales (at the time a Saturn dealer) and Rally each submitted proposals. "Because new vehicle sales [at Gonzales's Saturn dealership] had been much better than Rally's, [New] GM selected Mr. Gonzales's proposal over Rally's shortly before the [DAA] was enacted." (Appellee Mot. at 9.) And, following the issuance of the Enforcement Order and of Judge Patterson's October 29, 2010 order denying a stay, Gonzales opened AV Chevrolet "less than six miles from and astride the same freeway as" Rally's dealership. (Gonzales Decl. ¶¶ 3, 10 ("[B]ased on Rally's 'wind-down' status . . . it would not continue in business as a Chevrolet

8

dealership, and therefore only [AV Chevrolet] would be able to offer Chevrolet new vehicle sales and warranty service in the Antelope Valley area.").)

Thus, any order allowing Rally to pursue the California Action – in which Rally seeks "a final determination requiring GM to continue/add back the Chevrolet brand [to] Rally's . . . line[] of new motor vehicles" (Calif. Pet. at 16) – would not afford effective relief because "there is only one Chevrolet dealership opportunity in the Antelope Valley, not two" (Appellee Mot. at 6), and Gonzales has earned and exploited that opportunity, see Freeman v. Journal Register Co., -- F. Supp. 2d --, 2010 WL 768942, at *5 (S.D.N.Y. 2010) (no "effective relief" "[i]n light of the significant actions that have already been taken"); In re Malese 18 Corp., 426 B.R. 44, 50 (E.D.N.Y. 2010) (no "effective relief" where "the Court is skeptical that it could overturn [the bankruptcy court's] decision without creating significant inequities"); In re Adelphia Commc'ns Corp., 367 B.R. 84, 94–96 (S.D.N.Y. 2007) ("[I]t is far from evident that an effective remedy can still be granted in this case"; such relief appears not feasible or "available" and "[a]ppellants do not explain how [that relief] would work in practice").[1]

Rally has, in fact, recently acknowledged that the termination of its Chevrolet dealer agreement and the opening of AV Chevrolet render this matter moot. Before Judge Patterson, Rally argued on October 14 and 20, 2010 that, "[w]ithout . . . the stay" (which was denied), "Rally's appeal will shortly become moot." (Appellant's Mem. of Law in Supp. of Stay before Judge Patterson, dated Oct. 14, 2010 ("Appellant Stay Mem."), attached as Ex. C to Oxford Decl., at 7.) "Rally's Chevrolet dealership will be both destroyed and handed by New GM to a

---

[1] Even if Rally's Chevrolet dealership were to be reinstated, Gonzales "would . . . exercise [his] right to file a protest under section 3062 of the California Vehicle Code," which would "operate[] as a temporary injunction [and] prohibit[] establishment of the new dealership until a hearing c[ould] be held before an Administrative Law Judge." (Gonzales Decl. ¶ 8 (citing Cal. Veh. Code § 3062).)

9

third-party." (Appellant Stay Mem. at 7, 17, 43–44; see Tr. of Proceedings before Judge Patterson, dated Oct. 20, 2010, attached as Ex. D to Oxford Decl., at 41:10-13); Adelphia, 367 B.R. at 92–93 ("[T]he appeal should be dismissed as equitably moot on judicial estoppel grounds alone.").

And, as noted, the relief Rally seeks in the California Action – i.e., to sever, or "carve out," the Chevrolet Wind-Down Agreement from the GM Sale and Sale Order – overlooks the fact that the Wind-Down Agreement was an integral part of the larger GM Sale and "cannot equitably be undone in isolation." Parker, 428 B.R. at 61; Delta, 374 B.R. at 524; (see also Sale Order §§ 31, 69.) "[T]o nullify the [Wind-Down Agreement] while leaving the remainder of the [Sale Order] intact would ignore the tradeoff that allowed the parties to settle in the first instance and would treat a non-severable provision of the [Sale Order] as dispensable." Delta, 374 B.R. at 523; see Adelphia, 367 B.R. at 92–93 ("[R]ewrit[ing] the terms of the bargain . . . is beyond the power of the Court."); In re Source Enters., Inc., 392 B.R. 541, 550 (S.D.N.Y. 2008); In re Texaco Inc., 92 B.R. 38, 46 (S.D.N.Y. 1988) ("Th[e] presumption [of equitable mootness] is undergirded by the common-sense notion that the piecemeal dismantling of the [r]eorganization [p]lan in subsequent appeals of individual transactions is, in practical terms if nothing else, a virtually impossible task." (internal quotation marks omitted)); see also United States v. Salerno, 932 F.2d 117, 123 (2d Cir. 1991).

**Impact Upon Re-emergence of the Debtor**

Even if, arguendo, the Court could order effective relief – which it cannot do – this prospect would raise substantial equitable concerns addressed by the other Chateaugay factors. See In re Calpine Corp., 390 B.R. 508, 520 (S.D.N.Y. 2008). "[T]here is no doubt that reinstatement of Rally's Chevrolet [d]ealer [a]greement would encourage other dealers that lost

10

[DAA] arbitration proceedings (and there are many) to seek similar relief, causing chaos in the GM dealer network and endangering its revitalization as sanctioned by the Bankruptcy Court." (Appellee Mot. at 16.) While the Wind-Down Agreement comprises a relatively small part of GM's reorganization plan, its undoing would, no doubt, complicate GM's operations and therefore risk having a negative effect on GM's vitality as a reorganized entity. See Delta, 374 B.R. at 524; (Judge Patterson's Order at 7 ("G.M.'s contention that the continued existence of Rally's Chevrolet dealership in the same market as Mr. Gonzales's would impede Mr. Gonzales's ability [to] grow the dealership and harm G.M.'s efforts to resuscitate its business, is a credible one.").) Such relief may very well "affect the re-emergence of the [D]ebtor as a revitalized corporate entity." Chateaugay II, 10 F.3d at 953. New GM points out that "at least three other GM dealerships that did not prevail in arbitration proceedings . . . are 'waiting in the wings' to see whether Rally can somehow obtain reinstatement of [its] Chevrolet [dealership]." (Appellee Mot. at 16–17).[2]

**Unraveling Intricate Transactions**

New GM argues persuasively that the relief sought by Rally would "knock the props out from under the authorization for every transaction that has taken place and create an unmanageable, uncontrollable situation for the Bankruptcy Court." Chateugay II, 10 F.3d at 953. For example, Gonzales has (together with New GM) "invested more than $2.1 million to capitalize the new [AV Chevrolet] dealership, . . . hired a full complement of employees,

---

[2] By order dated November 1, 2010, the S.D.N.Y. Bankruptcy Court directed these three terminated GM dealers to "cease and desist from prosecuting" three separate cases in the United States District Court for the Northern District of Ohio seeking to vacate DAA arbitration awards issued against those dealers, and required the Ohio dealers to designate any appeal as "related to" the Rally appeal "so that [an] appeal will be heard by the same District Court Judge that is deciding the Rally [a]ppeal." (Order, dated Nov. 1, 2010, attached as Ex. N to Oxford Decl., at 3–5.) It does not appear that the Ohio dealers have appealed from the Bankruptcy Court's November 1, 2010 Order.

creat[ed] a substantial payroll, and . . . executed a five-year lease of its dealership facility obligating it to pay more than $400,000 in annual rent." (Appellee Mot. at 5.) Such agreements and commitments made in reliance upon the Enforcement Order "would have to be reevaluated if Rally somehow were permitted to establish a second Chevrolet dealership in Palmdale." (Appellee Mot. at 16, 18.)

The Court concludes that Rally's requested relief would likely unravel transactions that have already occurred. See Parker, 430 B.R. at 82; (see Appellee Reply at 4 ("Mr. Gonzales waited to negotiate a lease and open [AV Chevrolet] until November 2010, after the stay had been denied [by Judge Patterson] and after Rally had admitted its appeal would be moot in that event.").) Over a year ago, United States District Judge Robert W. Sweet reached a similar conclusion, refusing to disrupt a GM Sale that "has been consummated, with all of the attendant consequences of transferring and transforming a multibillion dollar enterprise, including its relationship to third parties, governmental entities, suppliers, customers and the communities in which it does business." Parker, 430 B.R. at 80. Rally cannot show that its requested relief, even if it were possible, would not "knock the props out from under the authorization for every transaction that has taken place." Delta, 374 B.R. at 524 (internal quotation marks omitted)); see Texaco, 92 B.R. at 45; see also Campbell, 428 B.R. at 63–64 (Buchwald, J.).

**Appellant's Apparent Lack of Diligence**

As New GM correctly observes, "Rally could have, but did not, seek a stay from the United States Court of Appeals for the Second Circuit" of the Enforcement Order. (Appellee Mot. at 20.) Instead, Rally stipulated to dismissal (with prejudice) of the California Action, paving the way for Gonzales's establishment of AV Chevrolet. Since Judge Patterson's October 29, 2010 denial of its stay application, Rally also does not appear diligently to have pursued this

appeal. Rally has not submitted a brief on appeal in the six months since Judge Patterson's denial, and, in fact, has opted not to submit a brief (if ever) until after this Court's resolution of the instant motion. (See Tr. of Proceedings, dated Jan. 5, 2011, at 4:14-20 (Rally's Counsel: "I would like to just make an application that if [New GM's] motion is denied then we can enter into . . . a short briefing schedule for the appeal. I am not really sure . . . when my [briefing] papers were due and I've been out of the office. . . . [T]here would be no sense to briefing the appeal if you are going to grant the motion . . . .")); see In re UNR Indus., 20 F.3d 766, 769-70 (7th Cir. 1994) ("A stay not sought, and a stay sought and denied, lead equally to the implementation of the plan for reorganization.").

Because Rally has failed to prevail on at least three of the Chateaugay factors, the appeal is moot. See In re Nat'l Rests. Mgmt., Inc., No. 00 Civ. 6624, 2001 WL 220023, at *3 (S.D.N.Y. Mar. 7, 2001); Global Vision, 2009 WL 2170253, at *5.[3]

## V.    Conclusion

For the foregoing reasons, New GM's motion to dismiss [#7] is granted. The Clerk of the Court is respectfully requested to close this case.

Dated: New York, New York
       May 10, 2011

_____
RICHARD M. BERMAN, U.S.D.J.

---

[3]    The Court has considered all the other arguments raised by the parties in their briefs and finds them to be without merit or otherwise not warranting discussion. See CFIP Master Fund, Ltd. v. Citibank, N.A., 738 F. Supp. 2d 450, 479 (S.D.N.Y. 2010).

13