# Exhibit A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
In re                                                         :
MOTORS LIQUIDATION COMPANY, *et al.*,                         :    Chapter 11 Case No.
      f/k/a General Motors Corp., *et al.*                  :
                                                              :    09-50026 (REG)
                                                              :
                                                              :    (Jointly Administered)
                                                              :
                                                              :
                                                              :
------------------------------------------------------------x

**DECLARATION OF JOHN COONEY IN SUPPORT OF THE APPLICATION
OF MARK BUTTITA PURSUANT TO 11 U.S.C. § 503(B) FOR ALLOWANCE
OF ADMINISTRATIVE EXPENSES INCURRED IN MAKING A
SUBSTANTIAL CONTRIBUTION IN THIS CHAPTER 11 CASE
FROM JUNE 4, 2009 THROUGH JULY 15, 2009**

      **JOHN COONEY**, hereby declares under penalty of perjury that the following is true and correct:

      1.     I am a member of Cooney & Conway, a law firm with offices at 120 N La Salle St # 30, Chicago, IL 60602-2492. This declaration is submitted ") in support of the Application Of Mark Buttita Pursuant To 11 U.S.C. § 503(B) For Allowance Of Administrative Expenses Incurred In Making A Substantial Contribution In This Chapter 11 Case From June 4, 2009 Through July 15, 2009 (the "**Application**"). The facts set forth in this Declaration are personally known to me and, if called as a witness, I would testify thereto. Unless otherwise defined, all capitalized terms used herein shall have the meanings ascribed to them in the Application.

      2.     In June 2009, within days after the filing of these cases, the United States Trustee formed an Official Committee of Unsecured Creditors ("**UCC**") to act as a fiduciary for the interests of all unsecured creditors in these cases. My client, Mark Buttita ("**Buttita**"), in his

477133

capacity as the personal representative of Salvatore Buttita was appointed as one of the members of the UCC, and the only member of that committee who represented the interests of asbestos tort victims.

3. Given the overwhelming importance of the proposed sale, its effect on the interests of the asbestos tort victims, the rapid pace of the sale proceedings, as well as the wide variety of other interests otherwise represented on the committee as a whole, I determined that I required the assistance of counsel experienced both in complex bankruptcies and most particularly in the unique circumstances presented in the context of asbestos related bankruptcy issues to assist him in protecting the distinctive interests of the asbestos victims in these cases in connection with the sale. On behalf of Buttita, I selected Caplin & Drysdale to provide that assistance.

4. In addition to his official role on the larger creditors committee, as described in the Application, Buttita effectively acted, through Caplin & Drysdale, as a fiduciary for all asbestos victims of the Debtors. He conducted discovery specific to the Debtors' asbestos liabilities and actively opposed the proposed sale to the extent that it proposed to impermissibly affect the interests of all asbestos victims, including the due process rights of those yet unknown victims whose right to seek recovery against the purchaser as the Debtors' successor was sought to be improperly enjoined.

5. All services performed by Caplin & Drysdale during the Compensation Period were performed for and on behalf of Buttita.

6. In connection with its representation of Buttita during the Compensation Period, Caplin & Drysdale incurred total fees of $259,908.50 calculated in accordance with the firm's normal billing rates and actual and necessary expenses of $13,973.29. These charges did not

include any professional fees incurred prior to Buttita's appointment to the UCC as well as any potentially duplicative time charges when more than one attorney was involved in attending meetings or hearings.

7. As a professional courtesy to Buttita and my firm and as a service to the constituency which they represented, Caplin & Drysdale voluntarily agreed to discount its total professional fees by thirty-three percent (33%). The resulting billing to Buttita was $187,245.79, consisting of (i) $173,272.50 in fees and $13, 973.29 in expenses (the "**Compensation Amount**").

8. Buttita, through my firm, has paid the entire Compensation Amount and there is no outstanding balance owed to Caplin & Drysdale.

9. I certify that (a) I have read the Application; (b) to the best of my knowledge, information and belief formed after reasonable inquiry, the fees and disbursements sought in the Application fall within the Amended Guidelines for Fees and Disbursements for Professionals in Southern of New York Bankruptcy Cases adopted by the Court on November 26, 2009 (the "**Local Guidelines**"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expense Filed Under 11 U.S.C. § 33 adopted on January 30, 1996 (the "**UST Guidelines**"), and the Court's Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and 331 Establishing Procedures For Interim Compensation and Reimbursement of Expenses of Professionals (entered 8/7/2009) (Dkt. No. 3711) (together, the Local Guidelines, UST Guidelines and the Administrative Order, the "**Guidelines**").

10. I further certify that the Application has been provided to: (a) counsel for Motors Liquidation Corporation; and (b) counsel for the Unsecured Creditors Committee.

- 3 -

11. I believe that the fees and expenses that I incurred on behalf of Buttita through the employment of Caplin & Drysdale are reasonable and justified in light of the circumstances of this chapter 11 case and conferred a substantial contribution upon the Debtor's estate and its creditors.

12. Further, in accordance with 18 U.S.C. § 155, neither I nor any partner, counsel or associate of my firm has entered into any agreement, express or implied, with any party in interest for the purpose of fixing the amount of any of the fees or other compensation to be allowed our of or paid from the Debtor's assets.

13. Moreover, in accordance with 11 U.S.C. § 504, no agreement or understanding exists between me, my firm or any partner, counsel, or associate thereof, on the one hand, and any other person, on the other hand, for division of such compensation as my firm may receive for services rendered in connection with this chapter 11 case, nor will any division of fees prohibited by 11 U.S.C. § 504 be made by me or any partner, counsel or associate of my firm.

14. Upon information and belief and relying on MLC's most recent Monthly Operating Report (the "**MOR**") and the Disclosure Statement filed in connection with its recently confirmed liquidating plan (the "**Disclosure Statement**"), MLC has approximately $254,701.00 in assets. *See* MLC Monthly Operating Report For The Month Ended March 31, 2011, p. 5 (Filed 05/11/2011; Dkt. No. 10222). According to the MOR, MLC owes $1,342,339.00. *See id.*

15. The MOR further states that (i) the amended and restated DIP Facility with the U.S. Treasury and the Export Development of Canada, which was approved by the Bankruptcy Court, dated July 5, 2009 (Dkt. No. 29269); and (ii) the proceeds that the Debtor recover from

their remaining assets will be sufficient to pay the administrative expenses of winding down their estates and administering a chapter 11 plan. *See id.*, p.12 (Note 3).

16. Upon information and belief, MLC has paid all quarterly fees to the United States Trustee and all monthly operating reports have been filed. *See id.*, p. 21.

17. Upon information and belief, based on the MOR and the Disclosure Statement, MLC has more than sufficient assets to satisfy the Application in full. *See id.*, pp. 5, 12 (Note 3).

18. No prior application has been made to this or any other Court for the relief requested in the Application.

Dated:   Chicago, Illinois
         May 11, 2011

                                                          _____
                                                          John Cooney