**Hearing Date And Time: May 17, 2011 at 2:00 p.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
155 North Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411
John Wm. Butler, Jr.
(admitted *pro hac vice*)
Albert L. Hogan III
(admitted *pro hac vice*)
Ron E. Meisler
(admitted *pro hac vice*)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for DPH Holdings Corp., et al.,

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                                  :
In re                                                             :   Chapter 11
                                                                  :
MOTORS LIQUIDATION COMPANY, *et al.*,                             :   Case No. 09-50026 (REG)
    f/k/a General Motors Corp., *et al.*,                   :
                                                                  :   (Jointly Administered)
                                                                  :
               Debtors.                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DPH HOLDINGS CORP. (F/K/A DELPHI CORPORATION) AND ITS
AFFILIATED REORGANIZED DEBTORS' LIMITED STATEMENT
CONCERNING JURISDICTION OVER MOTION OF GENERAL MOTORS LLC
(F/K/A GENERAL MOTORS COMPANY) TO ENFORCE SALE ORDER

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

Preliminary Statement ..........................................................................................................1

Argument ..............................................................................................................................3

A.  To The Extent The Motion Turns On The UAW-Delphi-GM MOU, The
    Delphi Bankruptcy Court Has Exclusive Jurisdiction Over The Motion
    Under Article XIII Of Delphi's Plan Of Reorganization .......................................3

B.  Article XIII(u) Of Delphi's Plan Of Reorganization And Section
    7.05 Of The GSA Do Not Support GM's Position That The Delphi
    Bankruptcy Court Has Only Non-Exclusive Jurisdiction ......................................4

Conclusion ............................................................................................................................9

TABLE OF AUTHORITIES

Page

Polyfusion Electronics, Inc. v. AirSep Corp.,
    816 N.Y.S.2d 783 (N.Y. App. Div. 2006) ........................................................................8

Quality Products & Concepts Co. v. Nagel Precision, Inc.,
    666 N.W.2d 251 (Mich. 2003) ........................................................................................8

DPH Holdings Corp. (f/k/a Delphi Corporation ("**Delphi**")) and its affiliated reorganized debtors (collectively, "**DPH Holdings**") hereby submit this Limited Statement Concerning Jurisdiction Over Motion Of General Motors LLC (F/K/A General Motors Company) To Enforce Sale Order, and respectfully represent as follows:

Preliminary Statement

1. DPH Holdings submits this statement to present its position on the jurisdictional issue identified in this Court's Memorandum And Order Re UAW-New GM Dispute, dated October 29, 2010 (Docket No. 7607).

2. As an initial matter, to the extent the Motion Of General Motors LLC (F/K/A General Motors Company) To Enforce Sale Order, dated October 22, 2010 (Docket No. 7527) (the "**Motion**"), turns on the Amended And Restated Master Sale And Purchase Agreement (the "**MPA**") and this Court's Order (I) Authorizing Sale Of Assets Pursuant To Amended And Restated Master Sale And Purchase Agreement With NGMCO, Inc., A U.S. Treasury-Sponsored Purchaser; (II) Authorizing Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale; And (III) Granting Related Relief, dated July 5, 2009 (Docket No. 2968) (the "**Sale Order**"), DPH Holdings agrees that this Court has exclusive jurisdiction over the Motion under paragraph 71 of the Sale Order. Thus, if the Motion can be resolved based solely on the MPA and the Sale Order, as General Motors LLC ("**GM**") has argued, then the Motion falls within this Court's exclusive jurisdiction.

3. However, to the extent the Motion turns on GM's backup argument regarding the UAW-Delphi-GM Memorandum of Understanding – Delphi Restructuring (the "**UAW-Delphi-GM MOU**") that was approved by order of the bankruptcy court in DPH

Holdings' chapter 11 case[1] (the "**Delphi Bankruptcy Court**"), the Delphi Bankruptcy Court has exclusive jurisdiction over the Motion. Under the Delphi Bankruptcy Court's order, the Delphi Bankruptcy Court has jurisdiction over "all matters arising from the implementation and performance of [the] order and the [UAW-Delphi-GM MOU]" to the extent provided in Delphi's plan of reorganization. (Ex. A at 7, ¶ 12.) The applicable provision in Delphi's plan[2] is article XIII, under which the Delphi Bankruptcy Court retained "exclusive jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and this Plan," including, without limitation, matters "to enforce all orders previously entered by the [Delphi] Bankruptcy Court." (Ex. B at 67, art. XIII; id. at 68, art. XIII(r).) Just as this Court has exclusive jurisdiction over disputes concerning the MPA and the Sale Order, the Delphi Bankruptcy Court has exclusive jurisdiction over disputes concerning the UAW-Delphi-GM MOU and the order approving the UAW-Delphi-GM MOU.

    4. GM acknowledges that the Delphi Bankruptcy Court has jurisdiction over the Motion to the extent it implicates the UAW-Delphi-GM MOU, but asserts that that jurisdiction is non-exclusive based on its reading of article XIII(u) of Delphi's plan and a jurisdiction provision in the Amended and Restated Global Settlement Agreement between Delphi and General Motors Corporation (the "**GSA**"),[3] an agreement that incorporates by reference the UAW-Delphi-GM MOU. (Ex. D at GSA-18, § 2.01.) Article XIII(u) preserves the Delphi Bankruptcy Court's exclusive jurisdiction over "disputes arising in connection with the interpretation, implementation, or enforcement of" certain documents, including the GSA,

---

[1]  The Delphi Bankruptcy Court's order approving the UAW-Delphi-GM MOU is attached hereto as <u>Exhibit A</u>.

[2]  Delphi's plan of reorganization is attached hereto as <u>Exhibit B</u>, and the order approving the plan (without exhibits) is attached hereto as <u>Exhibit C</u>.

[3]  The GSA (without exhibits) is attached hereto as <u>Exhibit D</u>.

2

"except as provided in such documents." (Ex. B at 69, art. XIII(u).) According to GM, the exception applies here because of section 7.05 of the GSA, which provides that the Delphi Bankruptcy Court has non-exclusive jurisdiction over certain matters "related to the construction, interpretation or enforcement of this Agreement" (Ex. D at GSA-51, § 7.05.)

5.  GM's argument fails on two grounds. First, section 7.05 of the GSA is limited to matters related to the "Agreement," a defined term that is limited to the GSA itself and the exhibits and attachments thereto. It does not include the UAW-Delphi-GM MOU. Second, GM contends that section 7.05 of the GSA, executed in 2008, applies to matters related to the UAW-Delphi-GM MOU, executed in 2007 – in other words, that section 7.05 of the GSA constitutes an amendment to the UAW-Delphi-GM MOU. But the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "**UAW**") is not a party to the GSA, and GM offers no legal support or explanation for its view that Delphi and General Motors Corporation had the authority to amend the UAW-Delphi-GM MOU without the participation and consent of the UAW.

6.  In short, section 7.05 of the GSA does not govern matters related to the UAW-Delphi-GM MOU. As a result, the Motion does not trigger the exception in article XIII(u) of Delphi's plan. Thus, even if this Court looks to article XIII(u), the result is the same – the Delphi Bankruptcy Court has exclusive jurisdiction over the Motion to the extent it turns on the UAW-Delphi-GM MOU and the order approving the UAW-Delphi-GM MOU.

Argument

A.  <u>To The Extent The Motion Turns On The UAW-Delphi-GM MOU, The Delphi Bankruptcy Court Has Exclusive Jurisdiction Over The Motion Under Article XIII Of Delphi's Plan Of Reorganization.</u>

7.  The Delphi Bankruptcy Court entered an order approving the UAW-Delphi-GM MOU in July 2007. (Ex. A.) The order provides that the Delphi Bankruptcy Court

3

has jurisdiction over "all matters arising from the implementation and performance of [the] order and the [UAW-Delphi-GM MOU]" to the extent provided in Delphi's plan of reorganization. (Ex. A at 7, ¶ 12.) GM does not dispute that Delphi's plan governs the existence and scope of the Delphi Bankruptcy Court's jurisdiction over the Motion. (See Docket No. 9107 at 19-21, ¶¶ 30-33.)

8. Article XIII of Delphi's plan provides that the Delphi Bankruptcy Court "shall have <u>exclusive jurisdiction</u> of all matters arising out of, and related to, the Chapter 11 Cases and this Plan."[4] (Ex. B at 67, art. XIII (emphasis added).) Article XIII also provides a non-exhaustive list of matters that fall within the retention of exclusive jurisdiction. The list includes, among other things, matters "to enforce all orders previously entered by the [Delphi] Bankruptcy Court." (<u>Id.</u> at 68, art. XIII(r).)

9. Delphi entered into the UAW-Delphi-GM MOU during its chapter 11 case, and the Delphi Bankruptcy Court approved the UAW-Delphi-GM MOU in its order entered in July 2007 (Ex. A), approximately two years before it approved Delphi's plan (Ex. C). Thus, insofar as the Motion involves a dispute regarding the UAW-Delphi-GM MOU or the order approving the UAW-Delphi-GM MOU, the Motion falls within the Delphi Bankruptcy Court's exclusive jurisdiction pursuant to article XIII and the example provided in article XIII(r).

B. <u>Article XIII(u) Of Delphi's Plan Of Reorganization And Section 7.05 Of The GSA Do Not Support GM's Position That The Delphi Bankruptcy Court Has Only Non-Exclusive Jurisdiction.</u>

10. GM's argument that the Delphi Bankruptcy Court has only non-exclusive jurisdiction over the Motion is based on article XIII(u) of Delphi's plan and section 7.05 of the

---

[4] The Delphi Bankruptcy Court's order approving the plan contains a similar provision. (Ex. C at 78-79, ¶ 56.)

GSA.[5] Article XIII(u) makes clear that the Delphi Bankruptcy Court has exclusive jurisdiction over "disputes arising in connection with the interpretation, implementation, or enforcement of the Delphi-GM Definitive Documents and the Master Disposition Agreement, <u>except as provided in such documents</u>." (Ex. B at 69, art. XIII(u) (emphasis added).) The GSA, which incorporates by reference the UAW-Delphi-GM MOU, is one of the "Delphi-GM Definitive Documents" referenced in article XIII(u). (Ex. B at 20, arts. 1.56-1.57.) According to GM, section 7.05 of the GSA establishes that the Delphi Bankruptcy Court has non-exclusive jurisdiction over matters related to the UAW-Delphi-GM MOU, triggering the exception in article XIII(u).

        11.     GM's argument fails because the language of the GSA shows that section 7.05 does not govern matters related to the UAW-Delphi-GM MOU. Section 7.05 provides in relevant part:

> By its execution and delivery of this Agreement, each Party hereby irrevocably and unconditionally agrees that the [Delphi] Bankruptcy Court shall retain exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of <u>this Agreement</u>; . . . provided further that after the second anniversary of the Effective Date [in September 2008], the [Delphi] Bankruptcy Court shall retain non-exclusive jurisdiction over all matters related to the construction, interpretation or enforcement of <u>this Agreement</u> . . . .

(Ex. D at GSA-51, § 7.05 (emphasis added).)

        12.     The definition of "Agreement" is limited to the GSA itself and "all exhibits and attachments [t]hereto." (<u>Id.</u> at GSA-1.) The UAW-Delphi-GM MOU, which is not an exhibit or attachment to the GSA, is not covered by this definition. As a result, matters related to the UAW-Delphi-GM MOU are not "matters related to . . . this Agreement" within the meaning of section 7.05 of the GSA.

---

[5]    GM also cites article XIII(k), but the relevant portion of article XIII(k) simply directs that certain disputes involving GM are governed by article XIII(u). (Ex. B at 68, art. XIII(k).)

5

13.     Indeed, the GSA consistently draws a distinction between the "Agreement" – i.e., the GSA itself and the exhibits and attachments thereto – and the "Labor MOUs," a separate defined term that includes the UAW-Delphi-GM MOU.  (Ex. D at GSA-12, § 1.86; id. at GSA-16, § 1.131.)  For example, the GSA's release provisions treat the "Agreement" and the "Labor MOUs" as separate and distinct agreements.  (See id. at GSA-41, art. IV ("In partial consideration for the promises and agreements made by the Debtors and GM pursuant to this Agreement, the Delphi Plan, the Labor MOUs, . . . .") (emphasis added); id. at GSA-42 to GSA-43, § 4.01(a)-(c) ("the formulation, preparation, negotiation, dissemination, confirmation, or consummation (but not performance) of . . . this Agreement, the Labor MOUs . . . .") (emphasis added); id. at GSA-44, § 4.01(l) ("The Parties acknowledge that (x) the consideration provided by GM pursuant to this Agreement, the Labor MOUs, . . . constitutes a substantial contribution to any Delphi Plan that is necessary to the success of any Delphi Plan, . . . .") (emphasis added); id. at GSA-44 to GSA-45, § 4.02(a)-(b) ("the formulation, preparation, negotiation, dissemination, confirmation, or consummation (but not performance) of any Delphi Plan, the Disclosure Statement, this Agreement, the Labor MOUs, . . . .") (emphasis added).)

14.     Similarly, the provision governing interpretation of conflicts between various agreements also expressly distinguishes the "Agreement" from the "Labor MOUs."  (See id. at GSA-54, § 7.18(a) ("In the event of any conflict between this Agreement and any of the Labor MOUs, . . . the provisions of such documents other than this Agreement shall govern.") (emphasis added); see also id. at GSA-5 ("resolution of the Outstanding Issues requires the Parties to make certain commitments, take certain actions, and receive certain consideration

pursuant to, and subject to the terms and conditions of, <u>this Agreement</u>, . . . <u>the Labor MOUs</u> . . . .) (emphasis added).)

15. In addition, in numerous places throughout the GSA the context is clear that the term "Agreement" refers only to the GSA and its exhibits and attachments, and not to any other ancillary agreements. For example, section 5.01 states that, "[a]s soon as practicable following the execution of this Agreement and the Restructuring Agreement, the Debtors shall file a motion in the [Delphi] Bankruptcy Court for an order approving this Agreement and authorizing the Debtors to take any an[d] all actions in furtherance thereof." (<u>Id.</u> at GSA-48, § 5.01.) The GSA was executed on September 12, 2008. (<u>Id.</u> at GSA-1.) The UAW-Delphi-GM MOU was executed on June 22, 2007, ratified by the UAW on June 28, 2007, and went effective upon entry of the Delphi Bankruptcy Court's approval order on July 19, 2007. (Ex. A.) Thus, the reference to "this Agreement" in section 5.01 does not include the UAW-Delphi-GM MOU, which was approved by the Delphi Bankruptcy Court more than a year before Delphi and General Motors Corporation executed the GSA.

16. Along the same lines, section 7.24 provides that "[t]his Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one and the same Agreement." (Ex. D at GSA-56, § 7.24.) Again, the UAW, Delphi, and General Motors Corporation executed the UAW-Delphi-GM MOU in June 2007, nearly 15 months before Delphi and General Motors Corporation executed the GSA.

17. These examples reinforce the conclusion that section 7.05 of the GSA, which is limited to matters related to the "Agreement," does not cover matters related to the UAW-Delphi-GM MOU.

18. GM's argument regarding section 7.05 of the GSA fails for a second independent reason. The UAW-Delphi-GM MOU is a trilateral agreement among the UAW, Delphi, and General Motors Corporation. (Ex. A.) It does not include a provision addressing the Delphi Bankruptcy Court's jurisdiction. (Id.) GM contends that matters related to the UAW-Delphi-GM MOU are subject to section 7.05 of the GSA, even though the GSA postdates the UAW-Delphi-GM MOU by more than a year. GM's position makes sense only if section 7.05 of the GSA is viewed as an addition or amendment to the UAW-Delphi-GM MOU. Section 7.05 of the GSA cannot be viewed in that manner, however, because the GSA is merely a bilateral agreement between Delphi and General Motors Corporation.

19. It is well-established that an amendment to a contract requires the agreement of <u>all</u> of the parties to the contract. See, e.g., Quality Prods. & Concepts Co. v. Nagel Precision, Inc., 666 N.W.2d 251, 253 (Mich. 2003) ("[T]he principle of freedom to contract does not permit a party <u>unilaterally</u> to alter the original contract. Accordingly, mutuality is the centerpiece to waiving or modifying a contract, just as mutuality is the centerpiece to forming any contract."); Polyfusion Elecs., Inc. v. AirSep Corp., 816 N.Y.S.2d 783, 785 (N.Y. App. Div. 2006) (explaining that "a party to an agreement may not unilaterally change its terms"). Because the UAW was not a party to the GSA, there is no basis for the conclusion that section 7.05 of the GSA constitutes an amendment to the UAW-Delphi-GM MOU.

20. For the reasons set forth above, section 7.05 of the GSA does not govern matters related to the UAW-Delphi-GM MOU.[6] As a result, such matters are not covered by the

---

[6] Even if it did, the Delphi Bankruptcy Court would still have exclusive jurisdiction. The dispute at issue here stretches back to at least April 2010, when the UAW filed its complaint against GM in the United States District Court for the Eastern District of Michigan. The dispute therefore falls within the portion of section 7.05 that grants the Delphi Bankruptcy Court exclusive jurisdiction over matters arising within the two-year period after the effective date of the GSA in September 2008. (Ex. D at GSA-51, § 7.05.)

8

09-50026-mg    Doc 10234    Filed 05/13/11    Entered 05/13/11 16:00:06    Main Document
Pg 12 of 12

exception in article XIII(u) of Delphi' plan of reorganization, but rather fall within the general rule of exclusive jurisdiction.

## Conclusion

WHEREFORE DPH Holdings respectfully requests that this Court (a) honor the Delphi Bankruptcy Court's retention of exclusive jurisdiction over the UAW-Delphi-GM MOU, if the underlying issue over the $450 million is not resolved through the bilateral dispute between GM and the UAW involving the Sale Order and (b) grant DPH Holdings such other and further relief as is just.

Dated:  New York, New York
        May 13, 2011

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:  /s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr.
     (admitted *pro hac vice*)
     Albert L. Hogan III
     (admitted *pro hac vice*)
     Ron E. Meisler
     (admitted *pro hac vice*)
155 North Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 407-0700
Facsimile: (312) 407-0411

- and -

Four Times Square
New York, New York 10036
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

Attorneys for DPH Holdings Corp., et al.,