**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11** |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | **Case No. 09-50026 (REG)** |
| **Debtors.** | **(Jointly Administered)** |

**SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE**
**GUIDELINES FOR REVIEWING APPLICATIONS FOR COMPENSATION**
**AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330**

**FIFTH INTERIM AND FINAL FEE APPLICATION**

Name of Applicant:   **Butzel Long, a professional corporation ("BL")**

Role in the Case:   Special Counsel to the Official Committee of Unsecured Creditors of Motors Liquidation Company, f/k/a General Motors Corporation

Date of Retention:   July 13, 2009, *nunc pro tunc* to June 10, 2009

| FIFTH INTERIM FEE APPLICATION | |
|---|---|
| Period for which compensation and reimbursement are sought: | October 1, 2010 through and including March 31, 2011 |
| Amount of compensation sought: | $703,367.50[1] |
| Amount of expense reimbursement sought: | $59,500.51 |

| FINAL FEE APPLICATION | |
|---|---|
| Period for which compensation and reimbursement are sought: | June 10, 2009 through and including March 31, 2011 |
| Amount of compensation sought: | $2,046,609.06[2] |
| Amount of expense reimbursement sought: | $144,757.17[3] |

---

[1]   This amount excludes more than $24,000 of fees incurred by BL during April 2011 in connection with the preparation of this Application. BL has not and will not seek compensation for such fees, but requests that the Fee Examiner consider this concession in the event that it suggests the disallowance of any compensation requested herein.

[2]   Reflects reductions to fees taken by BL, in the aggregate amount of $17,096.69, both before and after the hearings to consider its prior interim fee applications.

[3]   Reflects reductions to expenses taken by BL, in the aggregate amount of $1,636.83, before the hearings to consider its prior interim fee applications.

## PRIOR INTERIM FEE APPLICATIONS

| Date of Application | Docket No. | Application Period | Fees Requested | Expenses Requested | Fees Allowed | Fee Hold-Back | Expenses Allowed |
|---|---|---|---|---|---|---|---|
| 11/16/09 | 4450 | 6/10/09 – 9/30/09 | $237,775.50 | $21,265.87 | $236,158.74 | $23,615.87 | $20,996.55 |
| 3/17/10 | 5293 | 10/1/09 – 1/31/10 | $258,825.50 | $12,188.98 | $253,659.37 | $25,365.94 | $11,109.70 |
| 8/5/10 | 6542 | 2/1/10 – 5/31/10 | $429,844.75 | $20,791.35 | $419,530.95[4] | $48,632.67[5] | $20,662.12 |
| 11/15/10 | 7754 | 6/1/10 – 9/30/10 | $433,892.50 | $32,647.29 | $433,892.50 | $43,389.25 | $32,488.29 |
| **Total** | | | **$1,360,338.25** | **$86,893.49** | **$1,343,241.56** | **$141,003.73** | **$85,256.66** |

---

[4]    On November 23, 2010, the Court entered an order awarding BL $412,109.20 for fees requested pursuant to BL's Third Interim Fee Application and carving out $12,749.75 of fees requested by BL for those relating to compensation for the fee review process. On January 3, 2011, BL and the Fee Examiner agreed that only $5,058.00, rather than $12,749.75, should be disallowed for the fee review process, a difference of $7,421.75 (the "**Fees on Fees Differential**"). Accordingly, the Fees on Fees Differential is included in the "Fees Allowed" column pertaining to BL's Third Interim Fee Application.

[5]    Includes the Fees on Fees Differential.

**SUMMARY OF THE FIFTH INTERIM FEE APPLICATION
OF BUTZEL LONG FOR SERVICES RENDERED FOR THE
COMPENSATION PERIOD OCTOBER 1, 2010 THROUGH MARCH 31, 2011**

| Shareholders<br><br>Name and Location of Professional: | Department(s) and Year Admitted[6] | Hourly Billing Rate[7] | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Regina M. Alter (New York) | LIT - 1997 | $440.00 | 0.8 | $352.00 |
| Eric Fisher (New York) | BK, LIT - 1996 | $525.00 - $575.00 | 297.6 | $161,530.00 |
| Cynthia J. Haffey (Michigan) | LIT - 1997 | $390.00 | 0.5 | $195.00 |
| Claudia Rast (Michigan) | LIT - 1987 | $400.00 | 20.2 | $8,080.00 |
| Barry N. Seidel (New York) | BK - 1978 | $725.00 - $750.00 | 129.4 | $94,727.50 |
| Robert Sidorsky (New York) | BK, LIT - 1983 | $625.00 | 29.7 | $18,562.50 |
| **Total** | | | **478.2** | **$283,447.00** |

| Associates<br><br>Name and Location of Professional: | Department(s) and Year Admitted | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Maria Caceres-Boneau (New York) | LIT - 2008 | $325.00 - $335.00 | 186.6 | $61,859.00 |
| Katie L. Cooperman (New York) | BK, CORP - 2006 | $395.00 - $425.00 | 764.4 | $315,711.00 |
| David J. DeVine (Michigan) | BK, LIT - 2006 | $285.00 - $300.00 | 38.4 | $11,488.50 |
| Jennifer A. Dukarski (Michigan) | IP, LIT - 2010 | $225.00 | 1.5 | $337.50 |
| Donald Orlandoni (Michigan) | BK, LIT - 2007 | $240.00 - $275.00 | 64.2 | $17,525.50 |
| Laura Tedesco (Michigan) | CORP - 2009 | $235.00 | 6.4 | $1,504.00 |
| **Total** | | | **1,061.5** | **$408,425.50** |

---

[6]     BK – Bankruptcy, CORP – Corporate, IP – Intellectual Property, LIT – Litigation.

[7]     As of the period beginning January 1, 2011, BL has billed all professionals and paraprofessionals at their standard 2011 rates.

| Paraprofessionals<br><br>Name and Location of Paraprofessional: | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Frederick Capria (New York) | LIT | $245.00 - $270.00 | 37.7 | $9,666.50 |
| Michelle Martinez (New York) | LIT | $150.00 | 1.1 | $165.00 |
| Alexis Richards (Michigan) | LIT | $165.00 | 1.7 | $280.50 |
| Stephanie Shattuck (Michigan) | LIT | $180.00 | 39.6 | $7,128.00 |
| **Total** | | | **80.1** | **$17,240.00** |

| Professionals | Blended Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|
| Shareholders | $592.74 | 478.2 | $283,447.00 |
| Associates | $384.76 | 1,061.5 | $408,425.50 |
| Paraprofessionals | $215.23 | 80.1 | $17,240.00 |
| **Total Fees Incurred** | | **1,619.8** | **$709,112.50** |
| **Blended Attorney Rate** | **$449.36** | | |
| | | | |
| **Total Fees Incurred** | | | **$709,112.50** |
| **Less Adjustment[8]** | | | **($5,745.00)** |
| **Total Fees Requested** | | **1,619.8** | **$703,367.50** |

---

[8]     BL has only requested 50% of fees incurred in connection with its preparation of monthly fee statements.

**SUMMARY OF THE FINAL FEE APPLICATION
OF BUTZEL LONG FOR SERVICES RENDERED FOR THE
COMPENSATION PERIOD JUNE 10, 2009 THROUGH MARCH 31, 2011**

| Shareholders<br><br>Name and Location of Professional: | Department(s) and Year Admitted [9] | Hourly Billing Rate [10] | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Regina M. Alter (New York) | LIT | $440.00 | 0.8 | $352.00 |
| Richard Brosnick (New York) | LIT - 1997 | $490.00 | 8.5 | $4,165.00 |
| Ross Ellick (New York) | LIT - 1989 | $495.00 - $525.00 | 49.6 | $25,977.00 |
| Eric Fisher (New York) | BK, LIT - 1996 | $525.00 - $575.00 | 999.4 | $529,975.00 |
| Jane Greyf (New York) | CORP - 1999 | $590.00 | 2.1 | $1,239.00 |
| Cynthia J. Haffey (Michigan) | LIT - 1997 | $390.00 | 0.5 | $195.00 |
| Christopher Nelson (Michigan) | LIT - 1995 | $350.00 | 18.9 | $6,615.00 |
| Samuel M. Ofsevit (New York) | RE - 1981 | $475.00 | 0.2 | $95.00 |
| Thomas B. Radom (Michigan) | BK - 1974 | $475.00 | 3.1 | $1,472.50 |
| Claudia Rast (Michigan) | LIT - 1987 | $400.00 | 20.2 | $8,080.00 |
| Barry N. Seidel (New York) | BK - 1978 | $725.00 - $750.00 | 442.8 | $321,942.50 |
| Robert Sidorsky (New York) | BK, LIT - 1983 | $625.00 | 48.3 | $30,187.50 |
| E. Dale Wilson (Michigan) | CORP, RE - 1999 | $285.00 - $335.00 | 8.2 | $2,417.00 |
| **Total** | | | **1602.6** | **$932,712.50** |

---

[9]    BK – Bankruptcy, CORP – Corporate, IP – Intellectual Property, LIT – Litigation, RE – Real Estate.

[10]    As of the periods beginning January 1, 2010 and January 1, 2011, Butzel Long has billed all professionals and paraprofessionals at their standard 2010 and 2011 rates, as applicable.

| Counsel<br><br>Name and Location of Professional: | Department and Year Admitted | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Robert Sidorsky[11] (New York) | BK, LIT - 1983 | $535.00 | 5.0 | $2,675.00 |
| Total | | | 5.0 | $2,675.00 |

| Senior Attorney<br><br>Name and Location of Professional: | Department and Year Admitted | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| William J. Kohler (Michigan) | CORP - 1986 | $410.00 | 7.9 | $3,239.00 |
| Total | | | 7.9 | $3,239.00 |

| Associates<br><br>Name and Location of Professional: | Department and Year Admitted | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Maria Caceres-Boneau (New York) | LIT - 2008 | $325.00 - $335.00 | 331.0 | $108,789.00 |
| Katie L. Cooperman (New York) | BK, CORP - 2006 | $350.00 - $425.00 | 2209.4 | $878,124.00 |
| David J. DeVine (Michigan) | BK, LIT - 2006 | $285.00 - $300.00 | 38.4 | $11,488.50 |
| Jennifer A. Dukarski (Michigan) | IP, LIT - 2010 | $225.00 | 1.5 | $337.50 |
| Orlee Goldfeld (New York) | BK, LIT - 1999 | $360.00 - $435.00 | 37.7 | $13,601.50 |
| Omer Granit (New York) | CORP - 2008 | $325.00 | 32.5 | $10,562.50 |
| Donald Orlandoni (Michigan) | BK, LIT - 2007 | $240.00 - $275.00 | 64.2 | $17,525.50 |
| Laura Tedesco (Michigan) | CORP - 2009 | $215.00 - $235.00 | 18.3 | $4,062.50 |
| Total | | | 2733.0 | $1,044,491.00 |

---

[11]    On or about January 27, 2010, Mr. Sidorsky became a shareholder. Prior to this date, he was employed as counsel.

| Paraprofessionals<br><br>Name and Location of Paraprofessional: | Department | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Frederick Capria (New York) | LIT | $235.00 - $270.00 | 326.5 | $79,679.50 |
| Vanessa Lozzi (Michigan) | LIT | $175.00 | 2.0 | $350.00 |
| Deanna Mejia (Michigan) | LIT | $140.00 | 6.2 | $868.00 |
| Michelle Martinez (New York) | LIT | $150.00 | 3.7 | $555.00 |
| Michelle Ann Pleban (Michigan) | LIT | $155.00 - $165.00 | 9.7 | $1,548.50 |
| Tonia Borg Renko (Michigan) | LIT | $165.00 | 1.2 | $198.00 |
| Alexis Richards (Michigan) | LIT | $150.00 - $165.00 | 2.1 | $340.50 |
| Kimberly Schoening (Michigan) | LIT | $135.00 - $140.00 | 25.1 | $3,438.00 |
| Stephanie Shattuck (Michigan) | LIT | $180.00 | 39.6 | $7,128.00 |
| Total | | | 416.1 | $94,105.50 |

| Summer Associates<br><br>Name and Location of Professional: | Department [12] | Hourly Billing Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|---|
| Andre Garron (New York) | SA* | $175.00 | 5.3 | $927.50 |
| Max Heuer (New York) | SA* | $175.00 | 1.0 | $175.00 |
| Total | | | 6.3 | $1,102.50 |

---

[12]    SA – Summer Associate, * Not yet admitted to the bar.

| Professionals | Blended Rate | Total Hours Billed | Total Compensation |
|---|---|---|---|
| Shareholders | $582.00 | 1602.6 | $932,712.50 |
| Counsel | $535.00 | 5.0 | $2,675.00 |
| Senior Attorney | $410.00 | 7.9 | $3,239.00 |
| Associates | $382.18 | 2733.0 | $1,044,491.00 |
| Paraprofessionals | $226.16 | 416.1 | $94,105.50 |
| Summer Associates | $175.00 | 6.3 | $1,102.50 |
| **Total Fees Incurred** | | **4,770.9** | **$2,078,325.50** |
| **Blended Attorney Rate** | **$456.05** | | |
| | | | |
| **Total Fees Incurred** | | | **$2,078,325.50** |
| **Less 50% Adjustment**[13] | | | **($14,619.75)** |
| **Less Further Adjustments**[14] | | | **($17,096.69)** |
| **Total Fees Requested** | | **4,770.9** | **$2,046,609.06** |

---

[13]    BL has only requested 50% of fees incurred in connection with its preparation of monthly fee statements.

[14]    Reduction comprised of (i) $1,102.50 for fees incurred by BL summer associates, (ii) $2,811.44 for vague time entries, (iii) $4,102.50 for multiple attendees at various hearings, (iv) $303.00 for a billing rate error, (v) $144.00 for clerical and administrative tasks, (vi) $5,058.00 for the fee review process, and (vii) $3,575.25 for compensation matters unrelated to fee applications.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | Case No. 09-50026 (REG) |
| **Debtors.** | **(Jointly Administered)** |

**FIFTH INTERIM AND FINAL FEE APPLICATION
OF BUTZEL LONG, A PROFESSIONAL CORPORATION,
AS SPECIAL COUNSEL TO THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY,
f/k/a GENERAL MOTORS CORPORATION, FOR ALLOWANCE OF
COMPENSATION FOR PROFESSIONAL SERVICES RENDERED
AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES
INCURRED DURING THE (I) INTERIM COMPENSATION PERIOD
OCTOBER 1, 2010 THROUGH MARCH 31, 2011 AND (II) ENTIRE
COMPENSATION PERIOD JUNE 10, 2009 THROUGH MARCH 31, 2011**

**TO:    THE HONORABLE ROBERT E. GERBER,
         UNITED STATES BANKRUPTCY JUDGE:**

Butzel Long, a professional corporation ("**BL**"), Special Counsel to the Official

Committee of Unsecured Creditors (the "**Committee**") of Motors Liquidation Company, f/k/a

General Motors Corporation (together with its chapter 11 filing affiliates, the "**Debtors**"), for its

fifth interim and final application (the "**Application**"), pursuant to sections 330(a) and 331 of

title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules

of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for (i) allowance of compensation for

professional services rendered to the Committee by BL during the interim compensation period

from October 1, 2010, through and including March 31, 2011 (the "**Fifth Interim**

Compensation Period") in the amount of $703,367.50[1] and reimbursement of actual, reasonable

and necessary expenses incurred in connection with the rendition of services in the amount of

$59,500.51, which amounts have not been the subject of previous interim fee applications, (ii)

final allowance of compensation for professional services rendered to the Committee by BL

during the period commencing June 10, 2009 through and including March 31, 2011 (the

"**Entire Compensation Period**") in the aggregate amount of $2,046,609.06 and reimbursement

of actual, reasonable and necessary expenses incurred in connection with the rendition of

services in the amount of $144,757.17, and (iii) final allowance of all amounts previously held

back in the aggregate amount of $347,496.93 (the "**Holdback**").[2]  In support of this Application,

BL respectfully represents as follows:

## SUMMARY OF PROFESSIONAL COMPENSATION
## AND REIMBURSEMENT OF EXPENSES REQUESTED

1.    This Application has been prepared in accordance with the Amended Guidelines

for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy

Cases dated November 25, 2009 (the "**Local Guidelines**"), the United States Trustee Guidelines

for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11

U.S.C. § 330 adopted on January 30, 1996 (the "**UST Guidelines**"), and this Court's Order

Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals, entered August 7, 2009 (Docket No. 3711) (the

"**Administrative Order**," and together with the Local Guidelines and the UST Guidelines, the

---

[1]    This amount excludes more than $24,000 of fees incurred by BL during April 2011 in connection
with the preparation of this Application.  BL has not and will not seek compensation for such fees, but
requests that the Fee Examiner consider this concession in the event that it suggests the disallowance of
any compensation requested herein.

[2]    This amount includes $7,421.75 for the Fees on Fees Differential, as defined and discussed
herein.

"**Guidelines**").  Pursuant to the Local Guidelines, a certification regarding compliance with the same is annexed hereto as Exhibit A.

2.        This Application has also been prepared in accordance with this Court's rulings on the four (4) prior BL interim fee applications.  Further, BL has endeavored to comply with the directions provided by Brady C. Williamson as fee examiner (the "**Fee Examiner**") in connection with such prior BL interim fee applications.  BL will provide a copy of this Application to the Fee Examiner.

3.        As set forth above, by this Application, BL requests (i) allowance of interim compensation for professional services rendered to the Committee by BL during the Fifth Interim Compensation Period in the amount of $703,367.50 and reimbursement of actual, reasonable and necessary expenses disbursed in connection with the rendition of services in the amount of $59,500.51, (ii) final allowance of compensation for professional services rendered to the Committee by BL throughout these chapter 11 cases during the Entire Compensation Period in the aggregate amount of $2,046,609.06 and reimbursement of actual, reasonable and necessary expenses disbursed in connection with the rendition of services in the amount of $144,757.17, and (iii) final allowance of the Holdback.

4.        BL's efforts to advise and represent the Committee during the Fifth Interim Compensation Period and the Entire Compensation Period, and the professional services performed and expenses incurred in connection therewith, were actual and necessary to preserve and protect the interests of the unsecured creditors of the Debtors.  BL's charges for professional services performed and expenses incurred are reasonable under the applicable standards.

5.        There is no agreement or understanding between BL and any other person, other than members of BL, for the sharing of compensation to be received for services rendered in

3

these cases. During the Entire Compensation Period, BL has received no payment and no promises of payment from any source (other than the Debtors) for services rendered or to be rendered in any capacity whatsoever in connection with the matters covered by this Application.

6.      The fees charged by BL in these cases are billed in accordance with BL's existing billing rates, from time to time, and procedures in effect during the Entire Compensation Period.[3] The rates BL charges for the services rendered by its professionals and paraprofessionals in these cases are the same rates BL charges for professional and paraprofessional services rendered in comparable bankruptcy and nonbankruptcy matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy and nonbankruptcy cases in a competitive national legal market.

7.      In accordance with the UST Guidelines, annexed hereto as <u>Exhibit B</u> and <u>Exhibit E</u> are schedules setting forth the following information for the Fifth Interim Compensation Period and the Entire Compensation Period, respectively: (i) the name and office location of all BL professionals and paraprofessionals who have performed services for the Committee in these chapter 11 cases, (ii) the capacities in which each individual was employed by BL during the applicable period, (iii) the department(s) in which each individual practices, (iv) the hourly billing rate(s) charged by BL for the services performed by such individuals, (v) the year in which each attorney was first licensed to practice law, and (vi) the aggregate number of hours expended by each individual in these matters and the fees billed therefor.

8.      Annexed hereto as <u>Exhibit C</u> and <u>Exhibit F</u> are schedules for the Fifth Interim Compensation Period and the Entire Compensation Period, respectively, specifying the

---

[3]      BL mistakenly billed various professionals at reduced rates for the June 10, 2009 – July 31, 2009 period (whereby BL provided an unintended benefit of $7,139 to the Debtors' estates). BL mistakenly billed one paraprofessional at a reduced rate for the June 10, 2009 – October 31, 2009 period (whereby BL provided an unintended benefit of $743 to the Debtors' estates). BL has not sought compensation for these unintended benefits.

categories of expenses for which BL is seeking reimbursement and the total amount for each

such expense category.  A detailed breakdown of all such expenses, including the date incurred,

amount and description thereof, as well as the individual who incurred such expense and the

project code related thereto, is also included in <u>Exhibit C</u>.  An itemized schedule of all such

expenses has been provided to the Debtors, the attorneys for the Debtors, the attorneys for the

Committee, the Court, the Office of the United States Trustee for the Southern District of New

York (the "**U.S. Trustee**") and the Fee Examiner.

9.    Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit D</u> and <u>Exhibit G</u> are

summaries of BL's time records relating to the charges for services rendered during the Fifth

Interim Compensation Period and the Entire Compensation Period, respectively, categorized

according to BL's project codes hereinafter described.

10.    BL maintains computerized records of the time spent by all BL attorneys and

paraprofessionals in connection with its engagement by the Committee.  Copies of these

computerized records have been furnished to the Debtors, the attorneys for the Debtors, the

attorneys for the Committee, the Court, the U.S. Trustee and the Fee Examiner in the format

specified by the UST Guidelines.  Copies of these computerized records for the Fifth Interim

Compensation Period are annexed hereto as <u>Exhibit H</u>.[4]

### BACKGROUND

11.    The Debtors filed voluntary petitions for relief under chapter 11 of the

Bankruptcy Code on June 1, 2009 (the "**Petition Date**") in the United States Bankruptcy Court

for the Southern District of New York.

---

[4]    Copies of such computerized records relating to all prior BL interim fee applications are filed on
the docket.  See Docket Nos. 4450, 5293, 6542 and 7754.

12.     On June 3, 2009, the U.S. Trustee appointed the Committee, pursuant to section 1102 of the Bankruptcy Code.

13.     On December 23, 2009, the Court entered an order (the "**Fee Order**") appointing the Fee Examiner.  On February 16, 2010, the Fee Examiner filed his First Status Report and Advisory, which summarizes the applicable standards and guidelines for the Fee Examiner's review of fee applications.  On April 8, 2010, the Fee Examiner filed his Second Status Report and Advisory.

14.     On March 29, 2011, the Court entered an order (Docket No. 9941) confirming the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (the "**Plan**").  The effective date of the Plan occurred on March 31, 2011.

## Retention of BL and Prior Interim Fee Applications

15.     On June 30, 2009, the Committee filed an application (the "**Retention Application**") with this Court pursuant to section 1103(a) of Title 11 of the Bankruptcy Code and Rule 2014(a) of the Bankruptcy Rules for entry of an order authorizing the employment of BL as Special Counsel to the Committee, *nunc pro tunc* to June 10, 2009, all as more fully described in the Retention Application (Docket No. 2847).

16.     No objections were filed to BL's retention and, on July 13, 2009, this Court entered an order authorizing the employment of BL as Special Counsel to the Committee.  The Court's Order went on to state:

> Butzel Long shall be compensated for Special Counsel Services performed as of June 10, 2009, and expenses incurred in connection therewith, subject to the approval of this Court and compliance with Section 330(a) of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules of this Court, the United States Trustee's Guidelines for Fees

and Disbursements issued by the Office of the United States Trustee, and such other

procedures as may be fixed by order of this Court, for professional services rendered and

expenses incurred by Butzel Long;

A copy of the above order can be found at Docket No. 3124 and is incorporated herein by

reference.

17.    On November 16, 2009, BL submitted its First Application for Interim

Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual

and Necessary Expenses Incurred From June 10, 2009 Through and Including September 30,

2009 (the "**First BL Application**") seeking approval of $237,775.50 in fees and $21,265.87 in

expenses (Docket No. 4450).  After a hearing to consider the First BL Application on April 29,

2010, the Court entered an order on May 21, 2010 granting the First BL Application in the total

amount of $257,155.29 and approving a 10% holdback in the amount of $23,615.87 until the

completion of these chapter 11 cases.

18.    On March 17, 2010, BL submitted its Second Application for Interim

Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual

and Necessary Expenses Incurred From October 1, 2009 Through and Including January 31,

2010 (the "**Second BL Application**") seeking approval of $258,825.50 in fees and $12,188.98 in

expenses (Docket No. 5293).  After a hearing to consider the Second BL Application on June 29,

2010, the Court entered an order on July 22, 2010 granting the Second BL Application in the

total amount of $264,769.07 and approving a 10% holdback in the amount of $25,365.94.

19.    On August 5, 2010, BL submitted its Third Application for Interim

Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual

and Necessary Expenses Incurred From February 1, 2010 Through and Including May 31, 2010

7

(the "**Third BL Application**") seeking approval of $429,844.75 in fees and $20,791.35 in

expenses (Docket No. 6542).  After a hearing to consider the Third BL Application on October

26, 2010, the Court entered an order on November 23, 2010 granting the Third BL Application

in the total amount of $432,771.32, approving a 10% holdback in the amount of $41,210.92 and

carving out $12,749.75 related to compensation for the fee review process.  On January 4, 2011,

BL and the Fee Examiner agreed that only $5,058.00 would be disallowed for fees on fees,

instead of $12,749.75, a difference of $7,421.75 (the "**Fees on Fees Differential**").  The Fees on

Fees Differential relating to fees requested in the Third BL Application remains unpaid and

outstanding.

20.     On November 15, 2010, BL submitted its Fourth Application for Interim

Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual

and Necessary Expenses Incurred From June 1, 2010 Through and Including September 30, 2010

(the "**Fourth BL Application**," and together with the First BL Application, the Second BL

Application and the Third BL Application, the "**Prior BL Fee Applications**") seeking approval

of $433,892.50  in fees and $32,647.29 in expenses (Docket No. 7754).  After a hearing to

consider the Fourth BL Application on December 15, 2010, the Court entered an order on

December 22, 2010 granting the Fourth BL Application in the total amount of $466,380.79 and

approving a 10% holdback in the amount of $43,389.25.

### BL Monthly Statements During Fifth Interim Compensation Period

21.     Pursuant to the procedures outlined in the Administrative Order, BL has served a

statement of its fees and disbursements accrued for its professional services in the above-

captioned matter for the period commencing (i) October 1, 2010 through and including October

31, 2010 (the "**October Statement**"), (ii) November 1, 2010 through and including November

30, 2010 (the "**November Statement**"), (iii) December 1, 2010 through and including December 31, 2010 (the "**December Statement**"), (iv) January 1, 2011 through and including January 31, 2011 (the "**January Statement**"), (v) February 1, 2011 through and including February 28, 2011 (the "**February Statement**") and (vi) March 1, 2011 through and including March 31, 2011 (the "**March Statement**," and together with the October Statement, the November Statement, the December Statement, the January Statement and the February Statement, the "**BL Statements**") upon the U.S. Trustee, the Debtors, the attorneys for the Debtors and the attorneys for the Committee (collectively, the "**Notice Parties**").  The Administrative Order provides that the Notice Parties shall have at least 15 days after receipt of a monthly statement to review it, and shall serve any objections to the monthly statement no later than 45 days following the month for which compensation is sought.  During the Fifth Interim Compensation Period, BL has received no notice of objection to any of the BL Statements from any of the Notice Parties.

22.     BL has also served the BL Statements upon the Fee Examiner.  During the Fifth Interim Compensation Period, BL has received no notice of objection to any of such statements from the Fee Examiner.

## SUMMARY OF SERVICES

23.     Throughout the Fifth Interim Compensation Period and the Entire Compensation Period, BL rendered a substantial amount of professional services in furtherance of its representation of the Committee.

24.      BL's reputation as a leading law firm in the automotive industry was well-suited to its representation of the Committee.  For example, BL was engaged as supplier counsel to ensure that the procedures for the assumption and assignment of supplier contracts in the 363

9

transaction were fair and workable, and led discussions and negotiations on that topic with the Debtors' special automotive counsel.

25.     BL was also engaged to act as conflict counsel to represent the Committee in matters for which the Committee's counsel, Kramer Levin Naftalis & Frankel, LLP, was unable to represent the Committee due to a conflict of interest or otherwise.  As Special Counsel to the Committee, BL rendered its services on an "as-needed" basis.

### Fifth Interim Compensation Period

26.     In connection with its representation of the Committee during the Fifth Interim Compensation Period, BL's services have predominantly concerned the adversary proceeding commenced on the Committee's behalf against JPMorgan Chase Bank, N.A. (the "**JPMorgan Adversary Proceeding**")[5] and the objection to claims and investigation of claims and causes of action against certain holders of notes issued by General Motors Nova Scotia Finance Company (the "**Nova Scotia Matter**").

27.     The following is a general, non-exhaustive summary of the significant professional services rendered by BL during the Fifth Interim Compensation Period only, organized in accordance with BL's internal system of project codes.[6]

　　　　a.     JPMorgan Avoidance Complaint.  On July 31, 2009, the Committee commenced the JPMorgan Adversary Proceeding challenging, *inter alia*, the security interest of more than 400 lenders (the "**Defendants**") to a certain term loan agreement, dated as of November 29, 2006, as amended by that certain first amendment dated as of March 4, 2009 (as amended, the "**Term Loan Agreement**"), and sought to recover in

---

[5]     In addition to JPMorgan Chase Bank, N.A., there are more than 400 named defendants in the JPMorgan Adversary Proceeding.

[6]     The Prior BL Applications include summaries of the professional services rendered by BL during the respective interim compensation periods.

excess of $1.4 billion, in the aggregate, from the Defendants.  During the Fifth Interim

Compensation Period, BL's professional services in connection with the JPMorgan

Adversary Proceeding included:  conducting legal research; reviewing the Debtor's

proposed plan and disclosure statement; preparing for and attending oral argument on the

parties' cross-motions for summary judgment; and various other tasks.

       b.    <u>General Motors Nova Scotia Finance Company</u>.  On November 30, 2009,

a claim was filed against the Debtors on behalf of the holders of notes (the

"**Noteholders**") issued by General Motors Nova Scotia Finance Company in the amount

of $1,607,647,592.49 (claim no. 66319) (the "**Trustee Claim**").  On December 10, 2009,

Greenberg Traurig, LLP, on behalf of certain Noteholders, filed a similar claim against

the Debtors (claim no. 69551) (the "**Protective Claim**").  Including the Trustee Claim

and the Protective Claim, in total, approximately fifty seven (57) claims (the "**Claims**")

have been filed by or on behalf of the Noteholders.  On July 2, 2010, BL filed an

objection to the Trustee Claim and the Protective Claim.  On November 19, 2010, BL

filed an amended objection applying to all Claims.  During the Fifth Interim

Compensation Period, BL's professional services in connection with the Nova Scotia

Matter included:  conducting legal research; analyzing the Claims and potential

objections thereto; drafting and filing an amended objection to the Claims; reviewing

various responses filed to the amended objection; preparing for and attending various

Court conferences; drafting a response to various motions filed by, or on behalf of,

certain Noteholders pursuant to Bankruptcy Rule 3018 and attending a hearing on such

motions; reviewing the Plan; drafting discovery requests, subpoenas and related

correspondence; attending numerous meet and confers; reviewing documents produced in

11

discovery and reviewing documents to produce in discovery; drafting memoranda; and various other tasks.

28.     The professional services performed by BL on behalf of the Committee during the Fifth Interim Compensation Period required an aggregate expenditure of 1,619.8 recorded hours by BL's professionals and paraprofessionals.  Of the aggregate time expended, 478.2 recorded hours were expended by shareholders of BL, 1,061.5 recorded hours were expended by associates of BL and 80.1 recorded hours were expended by paraprofessionals of BL.

29.     During the Fifth Compensation Period, BL billed the Committee for time expended by attorneys based on hourly rates ranging from $225 to $750 per hour.

30.     BL seeks allowance of interim compensation for professional services performed during the Fifth Interim Compensation Period in the amount of $703,367.50 and for expenses incurred in the rendition of such services in the amount of $59,500.51.  Allowance of compensation in the amount requested would result in a blended attorney hourly rate of approximately $449.36 (based on 1,539.7 recorded hours for attorneys at BL's regular billing rates in effect at the time of the performance of services).  As noted, annexed hereto is a schedule listing each BL professional and paraprofessional who performed services in these cases during the Fifth Interim Compensation Period, the hourly rate charged by BL for services performed by such individual and the aggregate number of hours and charges by each such individual.

31.     In accordance with the Administrative Order, to date,[7] BL received payments totaling $622,194.51 for the Fifth Interim Compensation Period, consisting of $562,694.00, representing 80% of the fees, and $59,500.51, representing 100% of expenses, invoiced pursuant

---

[7]     Though not received as of the time this Application was filed, BL anticipates receiving, before the hearing on this Application, payment of $78,605.40 for fees and $12,189.57 for expenses on account of the March Statement.

to the October Statement, November Statement, December Statement, January Statement,
February Statement and March Statement.

32.     The foregoing professional services performed by BL were necessary and
appropriate to preserve and protect the interests of the unsecured creditors of the Debtors.
Compensation for the foregoing services as requested is commensurate with the complexity,
importance and nature of the problems, issues or tasks involved.  The professional services were
performed with expedience and in an efficient manner.

### Entire Compensation Period

33.     Throughout the Entire Compensation Period, BL rendered a substantial amount of
professional services in furtherance of its representation of the Committee, and assisted the
Committee in Plan negotiations to ensure that, among other things, the interests of unsecured
creditors would be preserved after the effective date of the Plan.

34.     Among other things, BL devoted a substantial amount of time toward addressing
numerous issues in connection with (i) negotiating procedures for the assumption and assignment
of supplier contracts, (ii) cross-motions for summary judgment in the JPMorgan Adversary
Proceeding, (iii) analyzing and objecting to the Claims filed by or on behalf of the Noteholders
in connection with the Nova Scotia Matter, (iv) negotiating certain provisions of the Plan and
related disclosure statement, (v) developing strategies regarding certain confirmation objections
filed by the Noteholders and (vi) participating in the confirmation hearing.

35.     Services rendered by BL during the Entire Compensation Period have been
grouped into different project categories or task codes.  The number of hours and total
compensation requested for each of the task codes during the Entire Compensation Period is set

13

forth in <u>Exhibit G</u>.  The services rendered during the Fifth Interim Compensation Period are

included in the description of services rendered during the Entire Compensation Period.

36.    The majority of the services performed by members and associates of BL were

rendered by lawyers assigned to BL's Bankruptcy and Litigation departments.  BL has been

actively involved in major chapter 11 cases, and currently represents or has represented, among

others, creditors of the following debtors:  Calpine Corporation, Lear Corporation, General

Growth Properties, Inc. and Lehman Brothers Holdings Inc.  As a consequence, BL has brought

to these cases a high level of expertise and experience that inures to the benefit of unsecured

creditors of the Debtors.

37.    Overall, of the 4,770.9 recorded hours expended during the Entire Compensation

Period, 1602.6 recorded hours were expended by shareholders of BL, 2733.0 recorded hours

were expended by associates and 416.1 recorded hours were expended by paraprofessionals.

Allowance of compensation in the amount requested for the Entire Compensation Period would

result in a blended attorney hourly rate of approximately $456.05 (based on 4,348.5 recorded

hours for attorneys at BL's regular billing rates in effect at the time of the performance of

services).  As noted, annexed hereto is a schedule listing each BL professional and

paraprofessional who performed services in these cases during the Entire Compensation Period,

the hourly rate(s) charged by BL for services performed by such individual and the aggregate

number of hours and charges by each such individual.

38.    In accordance with the Administrative Order and this Court's orders regarding the

Prior BL Applications, to date, BL received payments totaling $1,843,869.30, which amount

includes $622,194.51 for the Fifth Interim Compensation Period.[8]

---

[8]    See *supra* note 7.

14

39.     The holdback of (i) $23,615.87 relating to fees requested in the First BL

Application, (ii) $25,365.94 relating to fees requested in the Second BL Application, (iii)

$48,632.67 (which amount includes the Fees on Fees Differential) relating to fees requested in

the Third BL Application and (iv) $43,389.25 relating to fees requested in the Fourth BL

Application remains unpaid and outstanding.  Accordingly, BL now seeks approval for all

amounts allowed pursuant to the Administrative Order relating to the Fifth Interim

Compensation Period and approval for the Debtors to pay the Holdback.

## ACTUAL AND NECESSARY DISBURSEMENTS OF BL

40.     As set forth in Exhibit C and Exhibit F hereto, BL has requested $59,500.51 for

expenses incurred in providing professional services during the Fifth Interim Compensation

Period, and $144,757.17 for expenses incurred in providing professional services during the

Entire Compensation Period.  These expenses were actual, reasonable and necessary.

41.     During the Fifth Interim Compensation Period and the Entire Compensation

Period, BL's attorneys have devoted time during the evenings and on weekends to perform legal

services on behalf of the Committee.  Such services were essential to meet deadlines.  Consistent

with firm policy, attorneys of BL who worked late into the evenings were reimbursed for their

cost for transportation from the office to home.  BL has not charged the Debtors for any

transportation costs incurred while working on weekends.  The reimbursement amounts do not

exceed those set forth in the UST Guidelines.

42.     BL has not charged the Debtors for any local, long distance or international

telephone or facsimile expenses.

43.     With respect to photocopying expenses, BL applied a credit of $665.36 relating to copies in compliance with the Court's decision that such charges are reimbursable at the lesser of $.10 per page and cost.[9]

44.     None of these categories of expenses exceed the maximum rate set forth in the UST Guidelines.  The actual expenses incurred in providing professional services were necessary, reasonable and justified under the circumstances to serve the needs of the Committee.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

45.     Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern the Court's award of such compensation. 11 U.S.C. § 331.  Section 330 provides that a court may award a professional employed under section 1103 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." *Id.* § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should consider the nature, the extent, and the value of such services, taking into account all relevant factors, including –
>
> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable

---

[9]    In accordance with its usual and customary practice, BL charged for copies at $0.18 per page until the Court ruled at the April 29, 2010 fee hearing on the first and second interim fee applications that copies were to be charged at the lesser of $0.10 per page and cost.  As a result, BL had effectively "overcharged" the Debtors by $665.36 for copies invoiced pursuant to its February Statement, and therefore applied a credit of $665.36 against invoice number 8468869.

16

amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed; and

(E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

*Id.* § 330(a)(3).

46.     BL's role as supplier counsel terminated on or about July 5, 2009 concurrent with the consummation of the 363 sale.  BL has continued to serve the Committee as conflicts counsel during the Entire Compensation Period.  The two litigations BL is handling on behalf of the Committee as conflicts counsel involve billions of dollars and the outcomes are likely to have a meaningful impact on what distributions unsecured creditors receive in this case.

47.     Though the Plan has been confirmed and the Plan is effective, the outcomes in these two litigations are not yet final.  Cross-motions for summary judgment in the JPMorgan Adversary proceeding have not yet been decided, and the litigation concerning the Nova Scotia matter is still pending.  Nonetheless, given the diligent and professional way BL has performed its services to date, BL has done all that is necessary under the Bankruptcy Code to earn an award of final compensation.  As such, BL argues that the full amount be awarded and the Holdback be paid.

48.     In the instant case, BL respectfully submits that the services for which it seeks compensation and the expenditures for which it seeks reimbursement in this Application were necessary for, and beneficial to, the preservation, protection and prosecution of the Committee's rights and claims in this chapter 11 proceeding.  Such services and expenditures were necessary to and in the best interests of the Committee.  The compensation requested herein is reasonable in light of the nature, extent, and value of such services to the Committee.

49.      Compensation for the foregoing services as requested is commensurate with the complexity, importance and nature of the problems, issues and tasks involved.  The professional services were performed expediently and efficiently.  Whenever possible, BL sought to minimize the costs of its services to the Debtors by utilizing talented paraprofessionals to handle more routine aspects of case administration.  Groups of the same BL attorneys were utilized for similar tasks in these cases to minimize the costs of intra-BL communication and education about the Committee's circumstances.

50.      In sum, the services rendered by BL were reasonable, necessary and beneficial to the Committee and were consistently performed in a timely manner commensurate with the complexity, importance and nature of the issues involved.  Accordingly, approval of the compensation for professional services and reimbursement of expenses sought herein is warranted.

18

## CONCLUSION

WHEREFORE BL respectfully requests the Court enter an Order authorizing (i) the compensation for professional services rendered to the Committee and reimbursement of actual and necessary expenses incurred during the Fifth Interim Compensation Period in the amount of $762,868.01, consisting of $703,367.50, representing 100% of fees incurred during the Fifth Interim Compensation Period, and reimbursement of $59,500.51, representing 100% of actual and necessary expenses incurred during the Fifth Interim Compensation Period; (ii) final allowance of compensation for professional services rendered to the Committee and reimbursement of actual and necessary expenses incurred during the Entire Compensation Period in the amount of $2,191,366.23, consisting of $2,046,609.06, representing 100% of fees incurred during the Entire Compensation Period, and reimbursement of $144,757.17, representing 100% of actual and necessary expenses incurred during the Entire Compensation Period; (iii) final allowance of the Holdback, which includes the Fees on Fees Differential, in the aggregate amount of $347,496.93; and (iv) such other and further relief as is just and proper.

Dated:  May 16, 2011
        New York, New York

                                    Respectfully submitted,

                                    BUTZEL LONG, a professional corporation


                                    By: /s/ Barry N. Seidel
                                        Barry N. Seidel
                                        Eric B. Fisher
                                        Katie L. Cooperman
                                        380 Madison Avenue
                                        New York, NY 10017
                                        (212) 818-1110 Telephone
                                        (212) 818-0494 Fax