Sander L. Esserman (Admitted *Pro Hac Vice*)
Robert T. Brousseau (Admitted *Pro Hac Vice*)
Peter D'Apice
Jo E. Hartwick (Admitted *Pro Hac Vice*)
Jacob L. Newton (Admitted *Pro Hac Vice*)
STUTZMAN, BROMBERG,
ESSERMAN & PLIFKA,
A PROFESSIONAL CORPORATION
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: (214) 969-4900
Facsimile: (214) 969-4999

COUNSEL FOR AD HOC COMMITTEE OF
ASBESTOS PERSONAL INJURY CLAIMANTS


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                            )
In re                                       )        Chapter 11
                                            )
MOTORS LIQUIDATION COMPANY, *et al.*, )
                                            )        Case No. 09-50026 (REG)
        f/k/a General Motors Corp.,  *et al.*   )
                                            )
                    Debtors.                )        Jointly Administered
-------------------------------------------------------------X

## APPLICATION OF THE AD HOC COMMITTEE
## OF ASBESTOS PERSONAL INJURY CLAIMANTS FOR PAYMENT OF
## REASONABLE FEES AND EXPENSES PURSUANT TO 11 U.S.C. § 503(b)

## TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................. 2

TABLE OF AUTHORITIES ........................................................ 4

APPLICATION OF THE AD HOC COMMITTEE
OF ASBESTOS PERSONAL INJURY CLAIMANTS FOR PAYMENT
OF REASONABLE FEES AND EXPENSES PURSUANT TO 11 U.S.C.
§ 503(b) ............................................................................................ 6

I.    INTRODUCTORY STATEMENT......................................... 7

II.   JURISDICTION ...................................................................... 8

III.  GROUNDS FOR RELIEF......................................................... 8

A.    The Debtors' Plan and Section 503(b) of the
      Bankruptcy Code Both Provide for Payment of
      Administrative Expense Claims to Creditors, and
      their Attorneys, for Making a Substantial
      Contribution to the Case .............................................. 8

B.    The Ad Hoc Committee Conferred a Substantial
      Contribution in this Case ........................................... 10

      1.   *The Ad Hoc Committee's Actions in this Case*
           *Conferred a Direct, Significant and*
           *Demonstrably Positive Benefit to the Debtors'*
           *Bankruptcy Case and the Creditors of the*
           *Estate*................................................................... 11

      2.   *The Ad Hoc Committee's Actions in this Case Benefited*
           *the Debtors' Bankruptcy and the Creditors of the Estate,*
           *Not Solely the Members of the Ad Hoc Committee*.........19

      3.   *The Ad Hoc Committee's Actions in this Case Were Not*
           *Duplicative of Services Performed by Others*.................20

C.    The Ad Hoc Committee's Request for Payment Is
      For Actual and Necessary Professional Services
      and for Actual and Necessary Out-of-Pocket
      Expenses Incurred ....................................................... 21

      1.   *Actual and Necessary Fees Incurred by SBEP*................ 23

           A.  ASBESTOS DUE DILLIGENCE (C-01) ....................... 25

           B.  363 SALE TRANSACTION (C-02)............................... 25

           C.  APPOINTMENT OF FUTURE

CLAIMANTS' REPRESENTATIVE AND
OFFICIAL COMMITTEE OF
UNSECURED CREDITORS HOLDING
ASBESTOS RELATED CLAIMS (C-03) ...................... 26

D.  BAR DATE ISSUES (C-4) ............................................ 27

E.  AUTOMATIC STAY ISSUES (C-5) ............................. 27

2.    *Actual and Necessary Expenses Incurred by
SBEP* ............................................................................ 28

IV.    NOTICE ...................................................................................... 29

V.    PRAYER FOR RELIEF ............................................................. 30

EXHIBIT A .......................................................................................... 32

EXHIBIT B .......................................................................................... 35

EXHIBIT C .......................................................................................... 37

# TABLE OF AUTHORITIES

## Cases

*GATX Terminals Corp. v. Tarricone (In re Tarricone)*, 83 B.R. 253
(Bankr. S.D.N.Y. 1988) ........................................................................ 11, 12

*In re 1 Potato 2, Inc.*, 71 B.R. 615 (Bankr. D. Minn. 1987)........................................ 20

*In re 50-Off Stores, Inc.*, 220 B.R. 897 (Bankr. W.D. Tex. 1998) ............................... 11

*In re Alert Holdings Inc.*, 157 B.R. 753, (Bankr. S.D.N.Y. 1993) ..................... 8, 9, 10

*In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273 (Bankr. W.D. Tex. 2005) .............. 11

*In re Buttes Gas & Oil Co.*, 112 B.R. 191 (Bankr. S.D. Tex. 1989)  ......................... 10

*In re D.W.G.K. Rest., Inc.*, 84 B.R. 684 (Bankr. S.D. Cal. 1988................................. 9, 10

*In re FRG, Inc.*, 124 B.R. 653 (Bankr. E.D. Pa. 1991)................................................ 10

*In re Milo Butterfinger's, Inc.*, 218 B.R. 856 (Bankr. N.D. Tex. 1997)...................... 19

*In re Mirant Corp.*, 354 B.R. 113 (Bankr. N.D. Tex. 2006) ........................ 9, 12, 15, 19

*In re Speeds Billiards & Games, Inc.*, 149 B.R. 434 (Bankr. E.D. Tex. 1993)........... 19

*In re Texaco, Inc.*, 90 B.R. 622 (Bankr. S.D.N.Y. 1988)  ............................................ 12

*In re Villa Luisa, L.L.C.*, 354 B.R. 345 (Bankr. S.D.N.Y. 2006) ................................. 9

*In re U.S. Lines, Inc.*, 103 B.R. 427(Bankr. S.D.N.Y. 1989),
*aff'd*, 1991 WL 67464 (S.D.N.Y. April 22, 1991) ................................................. 8, 9, 11

*Lebron v. Mechem Fin., Inc.*, 27 F.3d 937 (3d Cir. 1994) .......................................... 19

*Roberts v. Petroleum World, Inc. (In re Roberts)*, 93 B.R. 442 (D.S.C. 1988)........... 12

*Trade Creditor Group v. L.J. Hooker Corp., Inc., et al.*
*(In re Hooker Invs., Inc.)*, 188 B.R. 117 (S.D.N.Y. 1995)...................................... 10, 11

**Statutes**

11 U.S.C. § 363.................................................................. 7, 13, 14, 15, 20, 25, 26

11 U.S.C. § 503........................................................................ 6, 8, 9, 10, 11

11 U.S.C. § 503(b)(3)(D)............................................................. 8, 21, 28, 30

11 U.S.C. § 503(b)(4) ................................................................ 8, 20, 21, 29, 31

28 U.S.C. § 1334....................................................................................... 8

28 U.S.C. § 157.......................................................................................... 8

**APPLICATION OF THE AD HOC COMMITTEE
OF ASBESTOS PERSONAL INJURY CLAIMANTS FOR PAYMENT OF
REASONABLE FEES AND EXPENSES PURSUANT TO 11 U.S.C. § 503(b)**

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

The Ad Hoc Committee of Asbestos Personal Injury Claimants (the "**Ad Hoc Committee**") files this Application for Payment of Reasonable Fees and Expenses Pursuant to 11 U.S.C. § 503(b) (the "**Application**")[1] requesting payment of the reasonable fees and actual and necessary expenses of its bankruptcy counsel, Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation ("**SBEP**"), in the total amount of $511,032.22 as a result of the substantial contribution conferred in these cases by the Ad Hoc Committee of Asbestos Personal Injury Claimants.[2]  In support of this Application, the Ad Hoc Committee respectfully represents:

_____

[1] The Ad Hoc Committee of Asbestos Personal Injury Claimants is comprised of William J. Lewis, a mesothelioma claimant with a settled but unpaid claim, represented by SimmonsCooper LLC; Maureen Tavaglione, Personal Representative of the Estate of Robert J. Tavaglione, represented by Waters & Kraus; Terry Roth, a lung cancer claimant, represented by Brayton Purcell LLP; Jene Moore, Sr., a mesothelioma claimant represented by Early Ludwick & Sweeney L.L.C.; Edward Levitch, a mesothelioma claimant represented by Paul & Hanley LLP; and Kenneth Knight, a mesothelioma claimant, represented by The Lanier Law Firm PLLC.   Asbestos personal injury claimants represented by Cooney and Conway, as well as Steven Kazan of Kazan, McClain, Lyons, Greenwood & Harley, PLC, serve as an *ex officio members*.

[2] SBEP represented the Ad Hoc Committee of Asbestos Personal Injury Claimants from May 31, 2009 through February 26, 2010.  SBEP subsequently withdrew from representing the Ad Hoc Committee of Asbestos Personal Injury Claimant and was retained to represent Dean M. Trafelet as Legal Representative of Future Asbestos Personal Injury Claimants (the "**Future Claimants' Representative**") pursuant to the Court's order approving the Future Claimants' Representative's application to employ SBEP entered on April 14, 2010.

# I.

## INTRODUCTORY STATEMENT

The Ad Hoc Committee contributed significantly to the successful bankruptcy of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors and debtors in possession (collectively, the "**Debtors**"), in several important ways.  First, the Ad Hoc Committee, on its own volition and at its own expense, advocated the interests of all current and future asbestos personal injury claimants at a time when no other case fiduciary was advocating those interests.  The Ad Hoc Committee also played a key role in connection with the Debtors' proposed 363 Sale Motion (defined below).  Through the efforts of the Ad Hoc Committee, the Bankruptcy Court[3] recognized and addressed the Constitutional problem caused by the Debtors' proposed injunction against future asbestos claimants, thus eliminating a potential stumbling block to the closing and consummation of the 363 sale transaction.  Moreover, the Ad Hoc Committee saved the Debtors' estates a substantial amount of time and money by commencing, at its own expense, an in-depth analysis and investigation into the Debtors' aggregate asbestos liability, and the Ad Hoc Committee also played a key role in the appointment of an Official Committee of Asbestos Claimants as well as the appointment of Dean M. Trafelet as the Future Claimants' Representative.  None of the Ad Hoc Committee's efforts were duplicative of the work done by any other estate professional, and the efforts of the Ad Hoc Committee benefited not just its members but also the Debtors' estates as a whole.

---

[3] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Plan.

Accordingly, due to the actual and demonstrable benefit provided by the Ad

Hoc Committee to the Debtors' bankruptcy, the Ad Hoc Committee is entitled to

payment of its reasonable fees and actual and necessary expenses pursuant to 11

U.S.C. § 503(b).

## II.

### JURISDICTION

1.      This Bankruptcy Court has jurisdiction to hear this Application

pursuant to 28 U.S.C. §§ 157 and 1334, and Article II of the Debtors' Second

Amended Joint Chapter 11 Plan (the "Plan").  In addition, the Plan provides for the

allowance and payment of Administrative Expense Claims pursuant to 11 U.S.C. §

503(b).  *See* Plan, sections 1.2 and 2.2.

## III.

### GROUNDS FOR RELIEF

**A.      The Debtors' Plan and Section 503(b) of the Bankruptcy Code Both
Provide for Payment of Administrative Expense Claims to Creditors,
and their Attorneys, for Making a Substantial Contribution to the
Case**

2.      Section 503(b) of the Bankruptcy Code provides that a creditor who has

made a substantial contribution to a bankruptcy case shall receive an

administrative expense claim equal to its reasonable fees and necessary expenses.

In addition, after notice and a hearing, the court shall allow reasonable

compensation for the creditor's attorney in making the substantial contribution.  11

U.S.C. § 503(b)(3)(D) and (b)(4); *In re Alert Holdings Inc.*, 157 B.R. 753, 757 (Bankr.

S.D.N.Y. 1993); *In re U.S. Lines, Inc.*, 103 B.R. 427, 429 (Bankr. S.D.N.Y. 1989),

8

*aff'd*, 1991 WL 67464 (S.D.N.Y. April 22, 1991). The Debtors' Plan also provides for

the allowance and payment of Administrative Expense Claims pursuant to 11

U.S.C. § 503(b). *See* Plan, section 2.2. Pursuant to paragraph 46 of the Findings of

Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the

Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure

Confirming Debtors' Second Amended Joint Chapter 11 Plan (the "Confirmation

Order"), applications for payment of reasonable fees and expenses under section

503(b) of the Bankruptcy Code must be filed by May 16, 2011, forty-five (45) days after

the Effective Date.

3.      Although the term "substantial contribution" is not defined in the

Bankruptcy Code, courts have found that an applicant satisfies the substantial

contribution test when it has provided an "actual and demonstrable benefit" to the

debtor's reorganization or the creditors in the case. *In re Villa Luisa, L.L.C.*, 354

B.R. 345, 348 (Bankr. S.D.N.Y. 2006); *In re Alert Holdings Inc.*, 157 B.R. at 757; *In

re U.S. Lines, Inc.*, 103 B.R. at 429; *In re Mirant Corp.*, 354 B.R. 113, 132-33

(Bankr. N.D. Tex. 2006).

4.      "The substantial contribution test is intended to promote meaningful

creditor participation in the reorganization process." *In re Alert Holdings Inc.*, 157

B.R. at 757. Services are compensable if the creditor's involvement fosters and

enhances the progress of the case. *In re Villa Luisa, L.L.C.*, 354 B.R. at 348; In re

*Alert Holdings Inc.*, 157 B.R. at 757; *see also In re D.W.G.K. Rest., Inc.*, 84 B.R. 684,

690 (Bankr. S.D. Cal. 1988) (services are compensable where creditor actions provide significant and tangible benefits to the creditors or the estate).

5.       Granting compensation for fees and expenses incurred by the Ad Hoc Committee in these cases is in line with the underlying policies of section 503(b) of the Bankruptcy Code.  Provisions such as section 503(b) are deliberately drafted with a degree of flexibility to allow worthy contributors to a bankruptcy case – such as the Ad Hoc Committee – appropriate compensation.

**B.      The Ad Hoc Committee Conferred a Substantial Contribution in this Case**

6.       In determining whether an applicant has made a substantial contribution in a bankruptcy case, courts have considered several factors, including: whether the services conferred a direct, significant and demonstrably positive benefit to the debtor's reorganization or the creditors of the estate; whether the services were rendered solely to benefit the creditor or to benefit all parties in the case; and whether the services were duplicative of services performed by others.  *In re Alert Holdings Inc.*, 157 B.R. at 757 (citing *In re FRG, Inc.*, 124 B.R. 653, 658 (Bankr. E.D. Pa. 1991)); *Trade Creditor Group v. L.J. Hooker Corp., Inc., et al. (In re Hooker Invs., Inc.)*, 188 B.R. 117, 120-21 (S.D.N.Y. 1995); *In re Buttes Gas & Oil Co.*, 112 B.R. 191, 194 (Bankr. S.D. Tex. 1989).

7.       Determining whether a creditor has made a substantial contribution in a bankruptcy case is a question of fact undertaken on a case by case basis.  *In re Hooker Invs., Inc.*, 188 B.R. at 120.  As one court has recognized:  "[t]he substantial-contribution inquiry is similar to the excusable-neglect inquiry in that '[n]o single

10

circumstance controls[;] nor is a court to simply proceed down a checklist ticking off traits.  Instead, courts are to look for a synergy of several factors that conspire to push the analysis one way or the other.'" *In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273, 281 (Bankr. W.D. Tex. 2005) (quoting, in part, *In re 50-Off Stores, Inc.*, 220 B.R. 897, 901 (Bankr. W.D. Tex. 1998)).  The court has wide discretion to determine allowance of administrative expenses for substantial contribution in a bankruptcy case and the appropriate amount of expenses to be awarded.  *In re Hooker Invs., Inc.*, 188 B.R. at 120.  That discretion is justified by the bankruptcy judge's superior knowledge of the case.  *Id.*  Indeed, in deciding whether to make a substantial contribution award, the court may consider its first-hand observations of services provided by the applicant in connection with the bankruptcy case.  *In re U.S. Lines, Inc.*, 103 B.R. at 430.

8.    Here, the Ad Hoc Committee has clearly conferred a substantial contribution to the Debtors' bankruptcy and the creditors of the estate for which they are entitled to compensation pursuant to section 503(b) of the Bankruptcy Code.

> 1.    *The Ad Hoc Committee's Actions in this Case Conferred a Direct, Significant and Demonstrably Positive Benefit to the Debtors' Bankruptcy Case and the Creditors of the Estate*

9.    "[S]ervices that confer a significant and demonstrable benefit upon the reorganization process which have not been rendered solely on behalf of a creditor's own interest should be compensated." *In re U.S. Lines, Inc.*, 103 B.R. at 430 (citing *GATX Terminals Corp. v. Tarricone (In re Tarricone)*, 83 B.R. 253, 255 (Bankr.

S.D.N.Y. 1988)). "Such services generally take the 'form of constructive contributions in key reorganizational aspects, when but for the role of the creditor, the movement towards final reorganization would have been substantially diminished.'" *Id.* at 430.

10.    Whether a creditor has conferred a significant and demonstrable benefit on the reorganization process is a question of fact determined on a case by case basis. Creditors have been held to have made substantial contributions where they opposed an earlier plan, and as a result, the court ultimately confirmed a more favorable plan. *See, e.g., In re Texaco, Inc.*, 90 B.R. 622, 627-29 (Bankr. S.D.N.Y. 1988) (attorneys who filed prepetition derivative action insisted on additional disclosure regarding third party releases under plan, ultimately protecting the interests of and adding to potential value for all shareholders). Creditors have also been held to have made a substantial contribution when their actions changed the treatment for unsecured creditors under a plan. *See Roberts v. Petroleum World, Inc. (In re Roberts)*, 93 B.R. 442, 444-45 (D.S.C. 1988) (objection to plan that resulted in amendment of plan's treatment for unsecured creditors constituted a substantial contribution). In another case, a court found that a creditor group's efforts in negotiating a compromise with debtors that eliminated an issue that might otherwise have required attention at the debtors' confirmation hearing made a "substantial contribution" in the case. *See In re Mirant Corp.*, 354 B.R. at 135 (efforts of creditors, in negotiating compromise with debtors that eliminated issue that might otherwise have required attention at confirmation hearing, made a

12

"substantial contribution" in case; request by creditors to obtain reimbursement of their counsel fees in relatively small amount, given size of administratively consolidated chapter 11 cases, of $75,000 was allowed).

11.     Here, the Ad Hoc Committee's efforts resulted in substantial contributions in these cases.  First, the Ad Hoc Committee vigorously represented the interests of asbestos creditors at a time when no other case fiduciary was advocating their interests.  The unsecured creditors' committee was dominated by creditors holding unsecured commercial or trade claims against the Debtors, and hence that committee had no incentive to advocate the particular interests of the Debtors' asbestos claimants, particularly since every dollar paid to the Debtors' asbestos creditors was one less dollar available for the commercial and trade creditors.  Thus, the Debtors' tens of thousands of current asbestos claimants (not to mention the legions of future asbestos claimants) were left with no voice in the Debtors' bankruptcy.  The Ad Hoc Committee stood in this gap and served as the voice for the Debtors' asbestos constituency during the critical first days of this bankruptcy case.

12.     The Ad Hoc Committee also took a proactive role in the Debtors' bankruptcy case.  Immediately upon its formation, the Ad Hoc Committee began its investigation and analysis of the Debtors' proposed 363 Sale Motion[4]—the pivotal

---

[4] *See* Motion Pursuant to 11 U.S.C. §§ 105, 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. P. 2002, 6004, and 6006, to (I) Approve (A) the Sale Pursuant to the Master Sale and Purchase Agreement with Vehicle Acquisition Holdings LLC, a U.S. Treasury-Sponsored Purchaser, Free and Clear of Liens, Claims, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contract and Unexpired Leases; and (C) Other Relief [Docket No. 92] (hereafter, the "**363 Sale Motion**").

event of the Debtors' bankruptcy. Pursuant to the 363 Sale Motion, substantially all the Debtors' assets were sold to a U.S. Treasury-sponsored purchaser (hereafter, "**New GM**"). Because the 363 Sale Motion sought to transfer substantially all of the Debtors' assets to New GM while simultaneously immunizing New GM from all potential asbestos liability, the Ad Hoc Committee objected to the 363 Sale Motion.

13.    In its objection, the Ad Hoc Committee challenged the Debtors' attempt to shield New GM from "successor liability" claims without appointing a future claims representative to represent the interests of future asbestos claimants who had been exposed to the Debtors' asbestos but who had not yet manifested an asbestos-related disease.[5] The Ad Hoc Committee likewise challenged the attempt to transfer the purchased assets to New GM "free and clear" of all current and future asbestos liabilities, as well as the imposition of a permanent channeling injunction that would preclude all asbestos creditors, current and future alike, from asserting their asbestos claims against New GM.

14.    The Ad Hoc Committee's objection focused the Bankruptcy Court on the specific provisions of the 363 Sale Motion that were Constitutionally deficient, particularly in regard to the application and impact of those provisions upon future asbestos claimants. Hence, the Ad Hoc Committee urged the Bankruptcy Court to impose appropriate limitations on the injunctions and other protections that the Debtors' sought to confer upon New GM.

---

[5] The peculiarly lethal nature of asbestos exposure—that its insidious process may not manifest itself until many years after the worker comes into contact with the dangerous fiber—guarantees the existence of a group of unknown claimants who will regrettably and inevitably fall victim to the disease in the future.

15.     Ultimately, in direct response to the Ad Hoc Committee's concerns, the Bankruptcy Court modified the order approving the 363 Sale Motion (hereafter, the "**363 Sale Order**")[6] to expressly preserve the Ad Hoc Committee's argument that it was Constitutionally impermissible to transfer the Debtors' assets to New GM free and clear of the interests of future asbestos claimants while permanently enjoining those future asbestos claimants from pursuing New GM on account of their asbestos liabilities.  *See* 363 Sale Order, at p. 22-23 (assuring Constitutional protections to future asbestos claimants).  The new language added to the 363 Sale Order by the Bankruptcy Court not only conferred a substantial and direct benefit upon future asbestos claimants, but it also benefitted the Debtors' estate as a whole by eliminating a Constitutional deficiency that may well have precluded the sale transaction from being consummated.  This is exactly the type of contribution that other courts have concluded constitutes a "substantial" contribution, and the Ad Hoc Committee should be reimbursed for its efforts.  *See, e.g., In re Mirant Corp.*, 354 B.R. at 135.

16.     The Ad Hoc Committee's contribution to this bankruptcy case also extended beyond its role in the 363 sale transaction.  Indeed, in recognition of the conflicting and competing interests between the general unsecured claimants represented by the existing unsecured creditors' committee, on the one hand, and

---

[6] Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale and Purchase Agreement With NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii) Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection With the Sale; and (iii) Granting Related Relief, entered by the Bankruptcy Court on July 5, 2009 [Docket No. 2968].

the Debtors' asbestos creditors, on the other, the Ad Hoc Committee moved the

Bankruptcy Court for the appointment of an official asbestos committee to

represent the interests of current asbestos victims, as well as a future claims

representative to represent and protect the interests of future asbestos claimants.

The Ad Hoc Committee's request highlighted the Debtors' significant asbestos

liabilities arising from the Debtors' extensive use of asbestos and asbestos-

containing products in the manufacture of its automobiles—liabilities which the

Debtors themselves had acknowledged exceeded $600 million.  *See* Motion to

Appoint,[7] p. 2-3 (citing to General Motors' Quarterly Report (Form 10-Q) filed May

8, 2009, for the Period Ending March 31, 2009).  The Ad Hoc Committee also

stressed the potential benefit to the estate that would derive from the appointment

of an asbestos committee and a future claims representative.

> The benefit to the estate is large:  the Asbestos Committee alongside
> the Future Claims Representative provides the ready mechanism to
> negotiate a successful exit from bankruptcy, with permanent
> injunctive protections for the Debtors and the Purchaser [*i.e.*, New
> GM] from asbestos-related litigation.  The cost in the context of this
> huge industrial bankruptcy is small.  The appointment of a Future
> Claimants' Representative to represent the interests of future asbestos
> claimants and the simultaneous appointment of an official committee
> to represent the unique interests of current asbestos victims would be
> major steps in moving this reorganization case forward.

*See* Motion to Appoint, p. 15.

---

[7] *See* Motion of the Ad Hoc Committee of Asbestos Personal Injury Claimants for an Order (i) Appointing a Legal
Representative for Future Asbestos Personal Injury Claimants and (ii) Directing the United States Trustee to
Appoint an Official Committee of Asbestos Personal Injury Claimants (the "Motion to Appoint") [Docket No. 478].

17.    The Bankruptcy Court decided not to appoint the asbestos committee
and future claims representative *at that time* (*i.e.*, at the inception of the Debtors'
bankruptcy and in the midst of the contested 363 Sale Motion), but the Ad Hoc
Committee's motion and subsequent actions taken in the bankruptcy case served as
the catalyst for the ultimate appointment of the Official Committee of Unsecured
Creditors Holding Asbestos Related Claims of Motors Liquidation Company (the
"**Asbestos Committee**") on March 2, 2010, as well as the appointment by the
Bankruptcy Court of Dean M. Trafelet as the Future Claimants' Representative
(the "**Future Claimants' Representative**") on April 8, 2010.  Indeed, it was through
the persistent efforts of the Ad Hoc Committee that the Debtors and the unsecured
creditors committee ultimately agreed to seek Bankruptcy Court approval for the
formation of the Asbestos Committee and the appointment of the Future Claimants'
Representative.  Moreover, as discussed below, the Asbestos Committee and the
Future Claimants' Representative fulfilled the Ad Hoc Committee's prediction—
they both played a major role in moving the Debtors' bankruptcy case forward and
allowed the Debtors to negotiate a successful exit from bankruptcy, with permanent
injunctive protections from asbestos-related litigation that benefitted not just the
asbestos constituency but also all creditors of the Debtors' estates.

18.    Furthermore, the Ad Hoc Committee also provided a material benefit
to the Debtors' estates through its in-depth investigation into the Debtors' asbestos
liabilities.  Throughout its existence, the Ad Hoc Committee conducted an extensive
analysis of the Debtors' historical use of asbestos and asbestos-containing products,

17

in an effort to test the veracity of the Debtors' unilateral projections contained in
the Debtors' public filings and to determine the true extent of the Debtors' asbestos
liability. After the official appointment of the Asbestos Committee and the Future
Claimants' Representative in March and April 2010, the Ad Hoc Committee made
the results of its analysis available to each of them, thus saving both time and
money for the Debtors' estates.

19.    The Asbestos Committee and the Future Claimants' Representative
utilized much of the work undertaken by the Ad Hoc Committee, supplemented by
their own discovery and analysis, to successfully negotiate and resolve the asbestos
estimation proceeding. Ultimately, the asbestos estimation proceeding resolved the
aggregate amount of the Debtors' asbestos-related liabilities and fixed the Asbestos
Trust Claim in the amount of $625,000,000.00 for purposes of funding the Asbestos
Trust created pursuant to the Debtors' Plan, a successful result that was materially
facilitated by the Ad Hoc Committee's efforts. The Ad Hoc Committee's efforts
contributed significantly to this result and deserve to be reimbursed by the estate.

20.    Finally, the Ad Hoc Committee also benefited the Debtors' estates
through its efforts in connection with the imposition of a bar date for unsecured
claims, including asbestos claims, as well as its efforts resisting various motions
that sought to impermissibly extend the automatic stay to non-debtor entities. In
connection with these matters, the Ad Hoc Committee raised important issues for
the Court's consideration, including due process issues and issues of fundamental
fairness, and ultimately the Ad Hoc Committee's efforts afforded finality and

18

certainty to the estate as a whole, thus benefitting the estate.  The estate also

benefited from the Ad Hoc Committee's efforts when the Court denied Detroit Diesel

and Remy International's motions and refused to extend the protections of the

automatic stay to impermissible lengths.

> 2.    *The Ad Hoc Committee's Actions in this Case Benefited the Debtors' Bankruptcy and the Creditors of the Estate, Not Solely the Members of the Ad Hoc Committee*

21.    In determining whether an award of substantial contribution is

appropriate, courts also look to whether the services involved in the contribution

were undertaken solely for the benefit of the applying creditor or for the benefit of

all parties in the case.  Where the creditor's actions serve the general good, by

acting to benefit a class of creditors of which it is a member, substantial

contribution may be awarded.  *See In re Mirant Corp.*, 354 B.R. at 132-33 (Court

held that even where parties seeking reimbursement or professional compensation

did not act for benefit of all parties, they were entitled to award of substantial

contribution and satisfied the requirement that their conduct serve the more

general good, by acting to benefit class of creditors or interest-holders of which it

was a member).  Moreover, "[t]he court should not diminish the benefits conferred,

if any, by the creditor's motivation."  *In re Milo Butterfinger's, Inc.*, 218 B.R. 856,

858 (Bankr. N.D. Tex. 1997); *see also Lebron v. Mechem Fin., Inc.*, 27 F.3d 937, 944

(3d Cir. 1994); *In re Speeds Billiards & Games, Inc.*, 149 B.R. 434, 437 (Bankr. E.D.

Tex. 1993) ("A creditor who has made a substantial contribution to a case is entitled

to an administrative expense award even if that creditor's involvement in the case

19

is not motivated by altruism.") (citing *In re 1 Potato 2, Inc.*, 71 B.R. 615, 618 n.3

(Bankr. D. Minn. 1987)).

22.    As discussed above, all of the actions taken by the Ad Hoc Committee

in these cases resulted in benefits to the Debtors' estates and other creditors, not

just the members of the Ad Hoc Committee.  In particular, the Ad Hoc Committee's

efforts and the results obtained in connection with the 363 Sale Motion benefited all

creditors by removing a potential obstacle to the successful closing and

consummation of the 363 sale to New GM.  The Ad Hoc Committee's investigation

into the Debtors' asbestos liabilities also established the framework for the

successful resolution of the asbestos estimation proceeding, thus paving the way for

the successful confirmation of the Debtors' Plan which provided a tangible and

significant benefit to the Debtors' estates as a whole.

### 3.    *The Ad Hoc Committee's Actions in this Case Were Not Duplicative of Services Performed by Others*

23.    In determining whether to grant a creditor's request for substantial

contribution, courts look to whether the creditor's services were duplicative of

services performed by any other parties, such as a fiduciary committee.

24.    Here, the Ad Hoc Committee took an active role in the Debtors'

bankruptcy case and advocated the interests of asbestos creditors at a time when no

other constituency had any incentive or ability to advocate the unique interests of

current and future asbestos creditors.  The Ad Hoc Committee sought Bankruptcy

Court approval of an official Asbestos Committee and Future Claimants'

Representative shortly after the bankruptcy case was commenced, and the Ad Hoc

Committee voluntarily dissolved on February 26, 2010, immediately prior to the
Bankruptcy Court's appointment of the Asbestos Committee on March 2, 2010.
Hence, the Ad Hoc Committee's actions in this bankruptcy case were not duplicative
of the services performed by anyone else.

25.     For all of the foregoing reasons, the Ad Hoc Committee submits that
its actions conferred a substantial benefit in these chapter 11 cases under section
503(b)(3)(D), entitling them to reasonable compensation for professional services
rendered by SBEP pursuant to section 503(b)(4).

**C.    The Ad Hoc Committee's Request for Payment Is For Actual and
Necessary Professional Services and for Actual and Necessary Out-of-
Pocket Expenses Incurred**

26.     Section 503(b)(4) of the Bankruptcy Code provides for "reasonable
compensation for professional services rendered by an attorney … of an entity
whose expense is allowable under subparagraph (A), (B), (C), (D), or (E) of
paragraph (3) of this subsection, based on the time, the nature, the extent and the
value of such services … and reimbursement for actual, necessary expenses
incurred by such attorney...." 11 U.S.C. § 503(b)(4).

27.     SBEP rendered professional services in this case and incurred actual
and necessary out-of-pocket expenses during its representation as counsel for the
Ad Hoc Committee.  By this Application, the Ad Hoc Committee does not seek
compensation for all professional services rendered on behalf of the Ad Hoc
Committee during the Debtors' bankruptcy cases.  Instead, the Ad Hoc Committee
only seeks compensation for the period during which the Ad Hoc Committee

believes they made a substantial contribution in these cases.  For this reason, the

Ad Hoc Committee seeks compensation for the professional services rendered and

reimbursement of expenses for SBEP for the period from May 31, 2009 through and

including January 31, 2010 (the "**Application Period**").  This period corresponds to

that portion of the Debtors' cases that began with the filing of the Debtors' 363 Sale

Motion and ended with the Ad Hoc Committee's investigation and analysis of the

Debtors' aggregate asbestos liability.  Moreover, the Ad Hoc Committee does not

seek reimbursement for all time incurred by SBEP during the Application Period,

but only that time that conferred a direct, tangible benefit on the Debtors' estates.

The Ad Hoc Committee does not seek any compensation for the time spent in

preparing this Application.

28.    SBEP rendered professional services in the amount of $496,763.25 and

incurred actual and necessary out-of-pocket expenses in the amount of $14,268.97

during the Application Period.  Thus, by this application the Ad Hoc Committee

requests allowance of compensation in the amount of $496,763.25 for services

rendered during the Application Period, and allowance of reimbursement in the

amount of $14,268.97 for expenses incurred during the Application Period for

SBEP.  For the Court's review, attached hereto as <u>Exhibit A</u>, is a chart

summarizing the fees and expenses requested in this Application and a chart

summarizing SBEP's customary billing rate, its time expended, and total value of

time incurred by it during the Application Period.  Attached as <u>Exhibit B</u> hereto is

the Declaration of Sander L. Esserman in Support of the Application, including as

22

an attachment thereto the invoices reflecting the time recorded by SBEP

professionals for services rendered on a daily basis during the Application Period

and descriptions of the services provided.

### 1. *Actual and Necessary Fees Incurred by SBEP*

29.     With respect to the time and labor expended by SBEP in this case, as

set forth in Exhibit A, during the Application Period, SBEP rendered professional

services in the amount of $496,763.25.  The Ad Hoc Committee believes that the

services rendered by SBEP in these cases were reasonable and necessary and it is

therefore appropriate for SBEP to be compensated for the time spent in connection

with these cases.  A brief narrative description of the services rendered by SBEP as

counsel for the Ad Hoc Committee during the Application Period is set forth below.

30.     SBEP rendered professional services as counsel for the Ad Hoc

Committee in connection with the important aspects of the Debtors' bankruptcy

case that could impact the interests of the asbestos constituency, and for which the

asbestos constituency had no other voice.  During the Application Period, SBEP

analyzed and drafted motions, pleadings, and other documents on behalf of the Ad

Hoc Committee, including pleadings relating to the Debtors' 363 sale transaction.

SBEP also engaged in extensive negotiations with counsel for the Debtors and other

constituencies, ultimately laying the foundation for the appointment of the Asbestos

Committee and the Future Claimants' Representative.  SBEP also served discovery

and otherwise conducted an investigation into the Debtors' aggregate asbestos

liability, thus lessening the amount of discovery that the Asbestos Committee and

23

the Future Claimants' Representative ultimately had to conduct in the course of the

contested asbestos estimation proceeding.  SBEP's efforts conferred a benefit on the

Ad Hoc Committee and the estate as a whole.  SBEP's work was not duplicative of

any other party's work, and the Ad Hoc Committee raised issues that that were not

addressed by the unsecured creditors committee or any other party in interest.

31.    The Ad Hoc Committee believes that SBEP's services were reasonable

and necessary in light of the complex issues involved in these cases, particularly

with regard to the Debtors' 363 sale transaction as well as the investigation into the

Debtors' aggregate asbestos liability.  The Ad Hoc Committee also believes, as

outlined above, that its actions in these cases during the Application Period

substantially contributed to these chapter 11 cases.  Therefore, the Ad Hoc

Committee seeks compensation for 1,217.45 hours of reasonable and necessary legal

fees incurred in connection with these tasks in the total amount of $496,763.25.

The Ad Hoc Committee only seeks reimbursement for those fees that they believe

substantially contributed to the Debtors' successful reorganization and do not seek

reimbursement for any other fees, such as the fees incurred in connection with the

preparation of this fee application.

32.    With respect to the time and labor expended by SBEP on behalf of the

Ad Hoc Committee in this case, as set forth in Exhibit A, during the Application

Period, SBEP rendered professional services in the amount of $496,763.25.  The Ad

Hoc Committee and SBEP believe it appropriate for SBEP to be compensated for

the time spent in connection with these matters, and sets forth a brief narrative

24

description of the services rendered for or on behalf of the Ad Hoc Committee and the time expended, organized by project task categories, as follows:

## A.    <u>ASBESTOS DUE DILIGENCE</u> (C-01)

33.    During the Application Period, SBEP conducted an extensive analysis of the Debtors' historical use of asbestos and asbestos-containing products, in an effort to test the veracity of the Debtors' unilateral projections contained in the Debtors' public filings and to determine the true extent of the Debtors' aggregate asbestos liability.    SBEP conducted discovery, analyzed the Debtors' financial statements and other public filings, and conducted an in-depth investigation into the nature and extent of the Debtors' aggregate asbestos liability.    SBEP also participated in numerous conferences with the Debtors and Debtors' counsel, and also with the unsecured creditors committee, regarding the Debtors' aggregate asbestos liability.    SBEP also spent numerous hours attending to asbestos due diligence issues to protect and preserve the rights of its constituency at a time when no other party was advocating on behalf of the Debtors' asbestos victims.    SBEP seeks compensation for 228.40 hours of reasonable and necessary legal expenses incurred in the category of Asbestos Due Diligence during the Application Period in the total amount of $88,137.75.

## B.    <u>363 SALE TRANSACTION</u> (C-02)

34.    During the Application Period, SBEP spent a considerable amount of time investigating and analyzing the Debtors' proposed 363 Sale Motion and the impact of the 363 Sale Motion on the Debtors' current and future asbestos creditors.

25

SBEP also participated in numerous conferences with the Debtors, Debtors' counsel, and the unsecured creditors committee regarding the Debtors' 363 Sale transaction. SBEP also researched and drafted an objection to the 363 Sale Motion in order to preserve the rights of future asbestos claimants, and SBEP participated in several hearings in order to protect the interests of the Ad Hoc Committee's constituents. SBEP seeks compensation for 642.35 hours of reasonable and necessary legal expenses incurred in the category of 363 Sale Transaction during the Application Period in the total amount of $276,397.00

C.    **APPOINTMENT OF FUTURE CLAIMANTS' REPRESENTATIVE AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS HOLDING ASBESTOS RELATED CLAIMS** (C-03)

35.    During the Application Period, SBEP recognized that no party was advocating the interests of the Debtors' asbestos creditors and, accordingly, SBEP researched, drafted, and prosecuted a motion asking the Bankruptcy Court to appoint an official asbestos committee as well as an official representative for future asbestos claimants.  SBEP also participated in numerous conferences with the Debtors and Debtors' counsel, and also with the unsecured creditors committee, regarding the appointment of an official asbestos committee and an official representative for future asbestos claimants.  Ultimately, through SBEP's efforts, the Bankruptcy Court appointed the Asbestos Committee on March 2, 2010, and the Future Claimants' Representative on April 8, 2010.  SBEP seeks compensation for 66.70 hours of reasonable and necessary legal expenses incurred in the category of Appointment of Future Claimants' Representative and Official Committee of

Unsecured Creditors Holding Asbestos Related Claims during the Application

Period in the total amount of $27,817.25.

### D.    BAR DATE ISSUES (C-04)

36.    During the Application Period, SBEP expended resources to protect the

interests of the Debtors' asbestos creditors in response to the Debtors' request to

impose a bar date for unsecured claims, including asbestos claims.  SBEP raised

several important issues for the Court's consideration, including due process issues

and issues of fundamental fairness.  Ultimately, through the resolution and

approval of the Debtors' motion, SBEP's efforts and the Court's determination on

these due process issues provided finality and certainty to the estate as a whole,

thus benefitting the estate.  SBEP seeks compensation for 88.10 hours of reasonable

and necessary legal expenses incurred in the category of Bar Date Issues during the

Application Period in the total amount of $35,366.25

### E.    AUTOMATIC STAY ISSUES (C-05)

37.    During the Application Period, SBEP performed significant research in

order to draft and oppose motions filed by co-defendants of the Debtors (namely,

Detroit Diesel and Remy International) that attempted to extend the protections of

the Debtors' automatic stay to them.  SBEP's efforts on behalf of asbestos claimants

benefited those claimants, as well as the entirety of the Debtors' estates, when the

Court denied Detroit Diesel and Remy International's motions and refused to

extend the protections of the automatic stay to impermissible lengths.  SBEP seeks

compensation for 191.90 hours of reasonable and necessary legal expenses incurred

in the category of Bar Date Issues during the Application Period in the total amount

of $69,045.00.

### 2.    *Actual and Necessary Expenses Incurred by SBEP*

38.    During the Application Period, SBEP incurred actual and necessary

out-of-pocket expenses on behalf of counsel for the Ad Hoc Committee in the amount

of $14,268.97.  Exhibit C contains a breakdown of the expenses incurred by SBEP

during the Application Period.  These expenses are broken down into categories of

charges, including, *inter alia*, telephone charges, special or hand delivery charges,

photocopying charges, and long-distance travel charges.  These expenses are actual,

necessary, out-of-pocket expenses which are not properly included in overhead, that

arise exclusively from and are traceable to representation of counsel for the Ad Hoc

Committee.  SBEP charges its clients $0.10 per page for internal copying.  External

copying, computerized research, courier and delivery services are charged at the

provider's cost without markup.  Back-up documentation for all expenses including

long-distance travel charges are kept by SBEP and are available for examination

upon request.  No allowable disbursement is treated as a "profit center" involving

markup over actual cost.  Thus, the Ad Hoc Committee seeks reimbursement for the

actual and necessary out-of-pocket expenses incurred during the Compensation

Period in the total amount of $14,268.97.

39.    As discussed in detail above, the Ad Hoc Committee conferred a

substantial contribution in these cases in connection with their work on behalf of

asbestos creditors during the Application Period pursuant to section 503(b)(3)(D).

Consequently, the Ad Hoc Committee submits that it is appropriate to be

compensated for the reasonable professional fees and reimbursed for the actual,

necessary expenses SBEP incurred during the Application Period pursuant to

section 503(b)(4) of the Bankruptcy Code.  Thus, by this Application the Ad Hoc

Committee requests allowance of compensation in the amount of $496,763.25 for

services rendered during the Application Period, and allowance of reimbursement in

the amount of $14,268.97 for expenses incurred during the Application Period by

SBEP.

## IV.

## <u>NOTICE</u>

40.    Notice of this Application will be provided by electronic mail to the

Attorneys for the Debtors, Harvey R. Miller, Stephen Karotkin and Joseph H.

Smolinsky, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York

10153; Debtors, Motors Liquidation Company, Attn: Thomas Morrow, 401 South

Old Woodward Avenue, Suite 370, Birmingham, Alabama, 48265; General Motors

LLC, Attn: Lawrence S. Buonomo; 400 Renaissance Center, Detroit, Michigan

48009; Attorneys for the United States Department of Treasury, John J. Rapisardi,

Cadwalader, Wickersham & Taft LLP, One World Financial Center, New York, New

York 110281; United States Department of the Treasury, 1500 Pennsylvania

Avenue NW, Room 2312, Washington, D.C. 20220; Attorneys for Export

Development Canada, Michael J. Edelman and Michael L. Schein, Vedder Price,

P.C., 1633 Broadway, 47th Floor, New York, New York 10019; Attorneys for the

Creditors' Committee, Thomas Moers Mayer and Robert Schmidt, Lauren

Macksoud and Jennifer Sharret, Kramer Levin Naftalis & Frankel LLP, 1177

Avenue of the Americas, New York, New York 10036; United States Attorney's

Office, Attn: David S. Jones and Natalie Kuehler;  Counsel for the Asbestos

Claimants' Committee, Elihu Inselbuch and Rita C. Tobin, Caplin & Drysdale,

Chartered, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 and

Trevor W. Swett III and Kevin McCauley, Caplin & Drysdale, Chartered, One

Thomas Circle, N.W. Suite 1100, Washington, D.C.  20005;  Attorneys for the Fee

Examiner, Timothy F. Nixon, Katherine Stadler, and Carla O. Andres, Godfrey

Kahn, S.C., 333 Main Street, Suite 600, Green Bay, Wisconsin 54307; and by

facsimile to The Office of the United States Trustee for the Southern District of New

York, Attn: Tracy Hope Davis, 33 Whitehall Street, 21st Floor, New York, New York

10004.

## V.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, for all of the foregoing reasons, the Ad Hoc Committee

respectfully requests entry by this Court of an order (i) finding that the Ad Hoc

Committee's  actions conferred an actual and demonstrable benefit to the Debtors'

reorganization process and the creditors of these estates; (ii) finding that the Ad

Hoc Committee's actions conferred a substantial contribution in these cases for the

period from May 31, 2009, through and including January 31, 2010, pursuant to

section 503(b)(3)(D) of the Bankruptcy Code; (iii) finding that the professional

30

services rendered by SBEP in the amount of $496,763.25, and the actual, necessary

expenses incurred by SBEP in the amount of $14,268.97 for the period from May 31,

2009, through and including January 31, 2010, constitutes reasonable compensation

pursuant to section 503(b)(4); (iv) granting the Ad Hoc Committee's' Application; (v)

granting the Ad Hoc Committee an allowed administrative expense claim pursuant

to section 503(b)(4) of the Bankruptcy Code in the total amount of $511,032.22; (vi)

directing the Debtors to pay such allowed administrative expense claim

immediately upon entry of this Court's order granting the Ad Hoc Committee's

Application; and (vii) granting the Ad Ho Committee such other and further relief

which this Court deems to be appropriate.


Dated:  May 16, 2011                    Respectfully submitted,

                                        STUTZMAN, BROMBERG,
                                        ESSERMAN & PLIFKA,
                                        A PROFESSIONAL CORPORATION

                                         /s/ *Sander L. Esserman*
                                        Sander L. Esserman (Admitted *Pro Hac Vice*)
                                        Robert T. Brousseau (Admitted *Pro Hac Vice*)
                                        Peter D'Apice
                                        Jo E. Hartwick (Admitted *Pro Hac Vice*)
                                        Jacob L. Newton (Admitted *Pro Hac Vice*)

                                        2323 Bryan Street, Suite 2200
                                        Dallas, Texas 75201
                                        Telephone:  (214) 969-4900
                                        Facsimile:  (214) 969-4999

                                        **ATTORNEYS FOR THE AD HOC COMMITTEE
                                        OF ASBESTOS PERSONAL INJURY
                                        CLAIMANTS**

31

## EXHIBIT A

### Summary of Application

| | |
|---|---|
| Name of Applicant: | Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation |
| Period for which Compensation is Sought: | May 31, 2009 through January 31, 2010 |
| Amount of Compensation Requested: | $496,763.25 |
| Amount of Expense Reimbursement Requested: | $14,268.97 |
| Total Compensation Requested: | $511,032.22 |
| Total Professional Hours: | 1,151.95 |
| Total Paraprofessional Hours: | 65.50 |

### Summary of Compensation by Professional

| Name of Professional Person | Position of the Applicant, Number of Years in that Position, Year of Obtaining License to Practice | Hourly Billing Rate (including changes) | Total Billed Hours | Total Fees |
|---|---|---|---|---|
| Robert T. Brousseau | Shareholder Member of TX bar since 1972. | $550.00 | 86.40 | $47,520.00 |
| Briana L. Cioni | Associate Member of TX bar since 2005. | $300.00 | 80.50 | $24,150.00 |
| Peter C. D'Apice | Shareholder Member of NY bar since 1988, TX bar since 1991. | $525.00 | 155.75 | $81,768.75 |
| Andrea L. Ducayet | Associate Member of FL bar since 2001, TX bar since 2001. | $365.00 (2009) $385.00 (2010) | 6.00 | $2,190.00 |

| | | | | |
|---|---|---|---|---|
| Sander L. Esserman | Shareholder Member of TX bar since 1976. | $700.00 (2009) $725.00 (2010) | 142.75 | $99,925.00 |
| Steven A. Felsenthal | Shareholder Member of WI bar since 1974, TX bar since 1992. | $725.00 | 5.70 | $4,132.50 |
| Jo E. Hartwick | Shareholder Member of TX bar since 1990. | $395.00 | 245.75 | $97,071.25 |
| Van J. Hooker | Shareholder Member of TX bar since 1983. | $425.00 | 1.90 | $807.50 |
| Terrie D. Khoshbin | Associate Member of IL bar since 1990, TX bar since 1993. | $325.00 | 11.50 | $3,737.50 |
| David A. Klingler | Shareholder Member of TX bar since 1989. | $425.00 | 40.60 | $17,255.00 |
| Jacob L. Newton | Shareholder Member of AR bar since 2001, TX bar since 2004. | $400.00 (2009) $425.00 (2010) | 4.30 | $1,720.00 |
| Heather J. Panko | Associate Member of TX bar since 2006. | $275.00 (2009) $300.00 (2010) | 85.45 | $23,498.75 |
| David J. Parsons | Associate Member of TX bar since 2002. | $365.00 (2009) $385.00 (2010) | 12.30 | $4,489.50 |
| Rachael Stringer | Associate Member of TX bar since 2008. | $225.00 (2009) $250.00 (2010) | 147.30 | $33,142.50 |
| Cliff I. Taylor | Associate Member of TX bar since 2003. | $350.00 (2009) $375.00 (2010) | 122.00 | $42,700.00 |
| Stephanie Tydlaska | Shareholder Member of CA bar since 1999, TX bar since 2005. | $350.00 (2009) $375.00 (2010) | 3.75 | $1,312.50 |
| Melanie R. Fain | Assistant Paralegal | $95.00 | 1.50 | $142.50 |
| Cindy L. Jeffery | Paralegal | $175.00 | 64.00 | $11,200.00 |
| **Grand Total** | | | 1,217.45 | **$496,763.25** |
| Blended Rate: | | | | $408.04 |
| Blended Rate (excluding paralegal, and paraprofessional time): | | | | $421.39 |

## Summary of Compensation by Category

| Category | Hours | Fees |
|---|---|---|
| Asbestos Due Diligence (C-01) | 228.40 | $88,137.75 |
| 363 Sale Transaction (C-02) | 642.35 | $276,397.00 |
| Appointment of Future Claimants' Representative and Official Committee of Unsecured Creditors Holding Asbestos Related Claims (C-03) | 66.70 | $27,817.25 |
| Bar Date Issues (C-04) | 88.10 | $35,366.25 |
| Automatic Stay Issues (C-05) | 191.90 | $69,045.00 |
| **Totals** | **1,217.45** | **$496,763.25** |

## EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                  )

In re                           )         Chapter 11
                                  )

MOTORS LIQUIDATION COMPANY, *et al.,*)
                                  )         Case No. 09-50026 (REG)

     f/k/a General Motors Corp., *et al.*   )
                                  )

                    Debtors.    )         Jointly Administered
-------------------------------------------------------------X

### DECLARATION OF SANDER L. ESSERMAN IN SUPPORT OF THE AD HOC COMMITTEE OF ASBESTOS PERSONAL INJURY CLAIMANTS' APPLICATION FOR PAYMENT OF REASONABLE FEES AND EXPENSES PURSUANT TO 11 U.S.C. § 503(b)

I, Sander L. Esserman, declare as follows:

1.      The matters stated herein are true and correct and are within my personal knowledge, and if called to testify as a witness, I could and would testify competently thereto.

2.      I am a shareholder in the law firm of Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation ("SBEP"), and have been admitted to the Bar of the Supreme Court of Texas since 1976.  SBEP has rendered professional services in these cases.

3.      I have reviewed the foregoing Application for Payment of Reasonable Fees and Expenses Pursuant to 11 U.S.C. § 503(b) filed by the Ad Hoc Committee of

Asbestos Personal Injury Claimants (the "Application"). To the best of my knowledge, information and belief formed upon the basis of my participation in these cases, as well as after reasonable inquiry, the facts set forth in the foregoing Application are true and correct and comply with the requirements as set forth by the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure.

4.     The fees and disbursements sought are billed at rates and in accordance with practices customarily employed by SBEP and generally accepted by SBEP's clients.

5.     In seeking reimbursement for an expense incurred by SBEP, SBEP does not make a profit on that expense.

6.     In seeking reimbursement for a service which SBEP purchased or contracted for from a third party, SBEP requests reimbursement only for the amount billed to SBEP by the third-party vendor and paid by SBEP to such vendor.

7.     Attached hereto are true and correct copies of the time and expense entries billed by SBEP in connection with these cases and for which reimbursement is sought in the Application.

I verify under penalty of perjury that the foregoing is true and correct. Executed on: May 16, 2011, in Dallas, Texas.


*/s/ Sander L. Esserman*

## EXHIBIT C

## EXPENSE SUMMARY

| EXPENSE CATEGORY | TOTAL EXPENSES |
|---|---|
| Photocopying | |
|     Internal | $556.00 |
|     External | $13.59 |
| Telecommunications | |
|     Toll Charges | $202.49 |
|     Facsimile | |
| Courier and Freight | $236.85 |
| Transcript Order Expenses | $3,774.78 |
| Messenger Service | |
| Computerized Research | $2,842.87 |
| Out of Town Travel Expenses[8] | $6,256.39 |
| Word Processing, Secretarial and Other Staff Services | |
| Overtime Expense | |
|     Non-professional | |
|     Professional | |
| Filing Expenses | $380.00 |
| Parking Expenses | $6.00 |
| **TOTAL** | **$14,268.97** |

[8] Back-up documentation for travel related expenses is available upon request.