Hearing Date and Time:  (To Be Determined) (Prevailing Eastern Time)
Objection Date and Time:  (To Be Determined) (Prevailing Eastern Time)

STUART MAUE
3840 McKelvey Road
St. Louis, Missouri  63044
Telephone:  (314) 291-3030
Facsimile:  (314) 291-6546
James P. Quinn
W. Andrew Dalton

*Consultant to the Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*<br>f/k/a General Motors Corp., *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>Jointly Administered |

**FINAL FEE APPLICATION OF STUART MAUE FOR ALLOWANCE OF COMPENSATION
AND REIMBURSEMENT OF EXPENSES FOR THE ANALYSIS OF
INTERIM FEE APPLICATIONS OF SELECTED CASE PROFESSIONALS**

**TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE**

Stuart Maue, Consultant to the Fee Examiner, by this fee application (the "**Final Fee Application**") pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeks (i) allowance and payment of reasonable compensation for actual and necessary professional services performed by Stuart Maue in the aggregate amount of $478,112.50, including $28,021.00 of holdback fees, for the analysis of certain interim fee applications of Baker & McKenzie; Jenner & Block; LLP; Kramer Levin Naftalis & Frankel, LLP; LFR, Inc.; The Claro Group, LLC; FTI Consulting, Inc. (expenses only); Brownfield Partners, LLC; and Weil Gotshal & Manges LLP

(collectively the "**Selected Case Professionals**"); and (ii) reimbursement of actual, reasonable, and necessary expenses in the aggregate amount of $3,579.99 incurred in performing and reporting on the analysis of the interim fee applications.[1]

### SUMMARY

For this assignment, Stuart Maue processed approximately 47,249 fee entries and 11,989 expense entries invoiced by 1,169 individual professionals and paraprofessionals seeking court approval for interim payment of fees and disbursements.  Stuart Maue's analysis helped the Fee Examiner bring to the Court's attention, for the hearings on April 29, 2010, June 29, 2010, October 26, 2010, and December 15, 2010, a wide variety of errors, omissions, anomalies, and non-compensable services and expenses that should not be paid by the Debtors' estates.  The fees and expenses sought by Stuart Maue represent less than one percent of the total sought in the applications subject to its review.

### I.      The Retention of Stuart Maue

1.      Commencing on June 1, 2009 (the "**Commencement Date**"), Motors Liquidation Company and its affiliated debtors (collectively the "**Debtors**") filed with the Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases were consolidated for procedural purposes only and have been jointly administered pursuant to Rule 1015(b) of the Bankruptcy Rules.  The Debtors have been authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(2) and 1108.

2.      On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee stipulated to the appointment of Brady C. Williamson as fee examiner in the chapter 11 cases (the "**Fee Examiner**") and, by the *Stipulation and Order With Respect to Appointment of a Fee Examiner* [Docket No. 4708] (the "**Fee Examiner Order**") of the same date, the Court appointed the Fee Examiner.

3.      On January 29, 2010, pursuant to the Fee Examiner Order, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue*

---

[1] This request does not include an additional $13,300 in limited services rendered to the Fee Examiner, at his request, for aiding in the review of the fourth interim fee application of Weil, Gotshal & Manges LLP.  Those additional services are discussed at ¶ 8, *infra*.

*Firm as Consultant to the Fee Examiner as of January 22, 2010* [Docket No. 4910].  On February 17,

2010, this Court entered an order authorizing the limited engagement of Stuart Maue [Docket No. 5005]

(the "**Limited Retention Order**") for the purpose of assisting in the analysis of the fees and expenses

requested in the first interim fee applications of some, but not all, case professionals—specifically, those

designated by the Fee Examiner.

4.        On April 5, 2010, the Fee Examiner submitted the *Fee Examiner's Application to*

*Authorize the Extended Retention and Employment of the Stuart Maue Firm as Consultant to the Fee*

*Examiner as of March 8, 2010* [Docket No. 5431] (the "**Extended Retention Application**").   The

Extended Retention Application sought, among other things, authorization for Stuart Maue to assist the

Fee Examiner in the review of only those additional and subsequent fee applications the Fee Examiner

determined warrant Stuart Maue's analysis.   Stuart Maue would be compensated for such services at its

regular hourly rates for 2010.  The Extended Retention Application specifically sought compensation for

Stuart Maue's analysis of the first interim fee application of Weil Gotshal & Manges LLP and for FTI

Consulting, Inc., both of which were, at the applicants' request, addressed at the April 29, 2010 hearing.

5.        On April 19, 2010, the Debtors filed the *Response of Debtors to Fee Examiner's*

*Application to Authorize Extended Retention of the Stuart Maue Firm as Consultant to the Fee Examiner*

*as of March 8, 2010* [Docket No. 5522] (the "**Debtors' Response**").

6.        On April 29, 2010, this Court provisionally approved the Extended Retention Application

to the extent that Stuart Maue may perform and be compensated for fee application analysis through the

second set of interim fee applications, after which the Court would conduct a "stop look and listen" to

determine whether further retention was appropriate.   Based upon the Court's ruling, this Final Fee

Application includes only the work authorized by the Court, the results of which were incorporated into

the Fee Examiner's presentation at the June 29, 2010 hearing.

7.        On June 29, 2010, this Court authorized the continued retention of Stuart Maue for one

additional fee period (consisting of the analysis of the third interim fee applications of certain selected

case professionals) at which time there would arise "a species of rebuttable presumption that [Stuart]

Maue's services will then come to an end."   Tr. 7/6/2010 at 38/23-24 [Docket No. 6369].  The Court's

ruling was not with prejudice to a subsequent request for Stuart Maue's continued retention beyond the third interim period.

8.      Stuart Maue assisted the Fee Examiner and his Counsel with the analysis of one interim fee application beyond the third interim period.  Stuart Maue incurred $13,300.00 in fees for work related to the fourth interim fee application of Weil Gotshal & Manges LLP and billed those costs directly to the Fee Examiner's Counsel, which paid them.  The Estates did not pay Stuart Maue for these services, nor were they asked to do so.  The Final Fee Application seeks an award from the Estates only for the services provided pursuant to the Court's retention orders for the firm.

9.      Stuart Maue will assist the Fee Examiner and his counsel with similar services and analysis, on and after May 17, 2011, in reviewing the final interim applications (for the period from October 1, 2010 through March 29, 2011) and the final fee applications for all of the professionals.  The post-confirmation Debtors have agreed to compensate Stuart Maue for these services, up to a fixed limit, but pursuant to the Confirmed Plan, the services and the amounts billed (absent exceptional circumstances) will not require Court review.

## II.      The First Fee Application

10.      On June 7, 2010, Stuart Maue submitted its first interim fee application [Docket No. 5969] (the "**First Fee Application**"), seeking fees in the amount of $197,902.50, and expenses in the amount of $1,363.71, in connection with the analysis of the first interim fee applications of Jenner & Block, LLP; Brownfield Partners, LLC; Kramer Levin Naftalis & Frankel LLP; LFR, Inc.; The Claro Group and Weil Gotshal & Manges LLP; and the expenses requested in the first interim fee application of FTI Consulting, Inc.  The First Fee Application is incorporated here by reference.

11.      On October 26, 2010, the Court entered an order approving the First Fee Application. *See Order Granting Application of Stuart Maue for Allowance of Compensation and Reimbursement of Expenses for the Analysis of the First Interim Fee Applications of the Selected Case Professionals, the First Interim Fee Application of Weil Gotshal & Manges LLP, and Expenses Requested in the First Interim Fee Application of FTI Consulting, Inc.* [Docket No. 6342].  The order authorized payment to Stuart Maue of $197,902.50 for fees and $1,363.71 for expenses.  That amount was paid in full.

### III. The Second Fee Application

12.    On November 16, 2010, Stuart Maue submitted its second interim fee application [Docket No. 7801] (the "**Second Fee Application**"), seeking fees in the amount of $280,210.00, and expenses in the amount of $2,216.28, in connection with the analysis of the first interim fee application of Baker & McKenzie; the second interim fee applications of Jenner & Block, LLP; LFR, Inc., and The Claro Group, LLC; and the second and third interim fee applications of Kramer Levin Naftalis & Frankel LLP and Weil Gotshal & Manges LLP. The Second Fee Application is incorporated here by reference.

13.    On December 16, 2010, the Court entered an order approving the Second Fee Application. *See Order Granting the Second Application of Stuart Maue for Allowance of Interim Compensation and Reimbursement of Expenses for the Analysis of Interim Fee Applications of Selected Case Professionals* [Docket No. 8152]. The order authorized payment to Stuart Maue of $252,189.00 and $2,216.28 for expenses, with $28,021.00 in fees held back until further order of the Court. Except for the amount held back, the amounts approved by the Court were paid in full.

### IV. The Final Fee Application

14.    Stuart Maue prepared this Final Fee Application in accordance with the Administrative Order re: Guidelines for Fee and Disbursements for Professionals in Southern District of New York Bankruptcy Cases dated November 25, 2009 (the "**SDNY Guidelines**"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the United States Department of Justice dated January 30, 1996 (the "**UST Guidelines**"), and the *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"). Pursuant to the SDNY Guidelines, a compliance certification is attached as **Exhibit A**.

15.    Stuart Maue seeks final allowance from the Estates of reasonable compensation for actual and necessary professional services rendered in the aggregate amount of $478,112.50 and for reimbursement of actual, reasonable, and necessary expenses incurred in the aggregate amount of $3,579.99. Stuart Maue's fee request includes a $36,650.00 reduction from the lodestar amount. The

services for which Stuart Maue seeks compensation were performed between January 22, 2010 through October 20, 2010.

16.     Stuart Maue professionals and paraprofessionals spent and recorded an aggregate of 1,586.1 hours in performing the analysis of the interim fee applications.  This aggregate does not include time that might be construed as duplicative, excessive, redundant, or otherwise not beneficial to the Debtors' estates.

17.     Of the time expended performing the analysis of the interim fee applications, 1,240 recorded hours were expended by attorneys and 288.90 recorded hours by accountants.  The hourly rates for attorneys ranged from $325.00 to $375.00, while the billing rate for the accountant was $275.00. Stuart Maue did not increase the hourly rate of any individual during the entire course of this engagement.

18.      The attorney primarily responsible for Stuart Maue's engagement spent and recorded 44.60 hours at a rate of $375.00 an hour on efforts concerning the continued retention and compensation of Stuart Maue as consultant to the Fee Examiner.  The hours include attendance at the April 29, 2010 and the June 29, 2010 fee hearings and the preparation of Stuart Maue's first and second fee applications.

19.     The attorney primarily responsible for Stuart Maue's engagement spent and recorded 12.60 hours traveling between St. Louis, Missouri and New York, New York to attend the fee hearings on April 29, 2010 and June 29, 2010.  The non-working travel time was billed at one-half of the attorney's regular hourly rate.

20.     To date, Stuart Maue has received payment from the Estates of $450,091.50 in fees and $3,579.99 in expenses.[2]  Stuart Maue has not received payment of $28,021.00 in fees (the 10% holdback from the Second Fee Application) and requests payment of same in this Final Fee Application.

21.     Attached as **Exhibit B** is a schedule setting forth all Stuart Maue professionals who performed services for the Fee Examiner for which Stuart Maue is seeking reimbursement, the position of each such individual, the date of bar admission for each attorney, the hourly billing rate charged for each

---

[2] Stuart Maue has received an additional payment from the Fee Examiner's counsel of $13,300 for additional services rendered in connection with the fourth interim fee application of Weil, Gotshal & Manges, LLP and are not included in the Final Fee Application.

individual, the aggregate number of hours and fees expended by each individual, and the blended rate for

attorneys and for all professionals for the services rendered.

22.    Attached as **Exhibit C** is a schedule specifying the categories of expenses for which

Stuart Maue is seeking reimbursement and the total amount for each such category.  This schedule does

not include certain expenses incurred by Stuart Maue for which no reimbursement is sought.

23.    The hourly fees recorded by Stuart Maue in these cases reflect those applied to other

matters, both non-bankruptcy and bankruptcy, of similar size and complexity.  The fees are billed in

accordance with Stuart Maue's general procedures.

24.    Stuart Maue has not entered into any agreement, express or implied, with any other party

for the purpose of fixing or sharing fees or other compensation to be paid for professional services in

these cases, except as disclosed herein.  *See* n.1 and ¶ 8, *supra*.

25.    Stuart Maue has not shared, or agreed to share, (a) any compensation received or that

may be received with another party or person, other than with the employees of Stuart Maue, or (b) any

compensation another person or party has received or may receive.  No promises have been received by

Stuart Maue as to compensation other than in accordance with the Bankruptcy Code.

### V.    Summary of Activities Performed

26.    Many tasks and activities contribute to Stuart Maue's review and analysis of fee

applications and the underlying invoice data.  While management of the invoice data and verification and

quantification is an integral part of Stuart Maue's process, the primary analysis consists of the initial

in-depth examination by Stuart Maue professionals of the individual fee and expense entries included in

the fee applications.

27.    When and only when the Fee Examiner requests Stuart Maue's assistance, the first step is

the creation of a database that attorneys and accountants use to perform their analysis.  Stuart Maue

utilizes proprietary software it has developed for the specific purpose of managing, analyzing, and

reporting on legal fees and expenses. The software allows Stuart Maue to view the entries in various

formats (*i.e.*, chronologically, sorted by timekeeper, sorted by matter or project); to perform searches; to

group phases, projects, tasks, activities, and expense categories; and to generate exhibits of relevant time or expense entries.

28.     After each database is populated with the fee and expense entries, a Stuart Maue accountant performs a series of activities to balance the database and reconcile the data to the hard copy of the fee application.  This process includes verification and reconciliation of information including timekeepers (the timekeeper identifier, position, hourly rates(s)), matters/projects, task hour allocation, embedded time (time allocated to specific activities in an otherwise block billed entry), descriptions of entry codes utilized by the case professional, hourly rate increases, expense categories, and expense documentation.  In addition to identifying and quantifying any calculation errors in the fee application, the reconciliation process identifies missing or incomplete data.

29.     The database is then assigned to one or more Stuart Maue attorneys who perform the detailed analysis of the fees and underlying time entries.  Each attorney assigned to analyze the fee applications has been a member of the bar for at least nine years.

A.     At the outset, the Fee Examiner established parameters to guide the analysis and define the categories of fees Stuart Maue would identify and quantify using the experience and expertise of its attorneys.  With the aid of proprietary software, Stuart Maue attorneys analyzed each of the time entries against the parameters.  While the identification of certain billing issues – such as duplicative time entries or fees invoiced by summer associates – may be flagged either by computer software or a manual review of the fee applications, most entries that may not comply with applicable guidelines or other relevant authority require further qualitative analysis.  Approximately 80 percent of the line item entries analyzed were fee entries and, accordingly, the large majority of hours was incurred by Stuart Maue attorneys.

B.     Examples of billing issues that required identification and evaluation included vague task descriptions, block billing, clerical/administrative activities, potentially excessive legal research, non-working travel time, position-inappropriate tasks (*i.e.*, an attorney performing paralegal work), and potential duplication of effort.  Stuart Maue attorneys also segregated work related to the preparation of fee applications from (i) the review and editing of firm invoices, and (ii) work related to

responding to inquiries and objections related to the fee applications. The identification and quantification of all such billing issues directly resulted in significant savings to the Debtors' estates through either voluntary or Court-imposed reductions to the fees requested by various case professionals.

30. The expense items in the fee applications were reviewed by a Stuart Maue accountant who has more than 15 years experience in analyzing and auditing expenses. As with the legal fees, the Fee Examiner established categories of expenses for Stuart Maue to identify and quantify as well as parameters for potential objections. Stuart Maue's software assisted in the identification of several issues related to expenses, including mathematical errors, verification of proper rates (photocopies, facsimile), and pre-retention date expenses. However, other expenses require detailed review, such as the application of cost caps to meal charges, identification of questionable travel costs, identification of firm overhead, and analysis of vaguely described disbursements. In addition, at the request of the Fee Examiner and his counsel, Stuart Maue's accountant analyzed and quantified issues such as (i) the currency conversion contained in the first interim application of Baker & McKenzie, and (ii) the fees resulting from hourly rate increases implemented by various case professionals.

31. When Stuart Maue completed the analysis and audit of a specific fee application, it created exhibits of all fee and expense entries that appeared questionable or merited additional review. In addition, Stuart Maue prepared tables, charts, and graphs of relevant invoice data so that the Fee Examiner could compare hourly rates among the various case professionals, analyze the rates and staffing of specific projects, and visually review the hours incurred during various time periods. Upon request, Stuart Maue also provided exhibits to the case professionals so that they could better respond to the Fee Examiner's inquiries.

32. Finally, as the case professionals provided additional information to the Fee Examiner, Stuart Maue incorporated the additional detail into the invoice data and/or revised exhibits of fee and expense entries at the direction of the Fee Examiner. Stuart Maue performed a final verification of the hours, fees, and expenses detailed in the Fee Examiner's reports to ensure accuracy and avoid duplication.

33. Stuart Maue continually advised the Fee Examiner of the status of its fee application review and the issues identified to ensure no projects were undertaken that had not been specifically

requested.  Likewise, the regular communication between Stuart Maue, the Fee Examiner, and the Fee

Examiner's counsel allowed the Fee Examiner to utilize Stuart Maue's professionals and software

efficiently, and prevented duplication of effort.

### VI.      The Requested Compensation Should Be Allowed

34.      The professional services performed by Stuart Maue were necessary and beneficial in

these chapter 11 cases.   Compensation for these services as requested is commensurate with the

complexity, importance, and nature of the tasks involved.  Stuart Maue undertook significant efforts – as

detailed in the preceding paragraphs – to ensure that the professional services were performed efficiently,

and without duplication of effort.

35.      In preparing this Final Fee Application, Stuart Maue calculated the amount of time spent

by each attorney and accountant in performing actual and necessary services requested by the Fee

Examiner.  The data came directly from contemporaneously-kept computerized time records maintained

for each Stuart Maue client.

36.      The hourly rates charged by Stuart Maue are the customary and usual rates charged to

Stuart Maue clients for bankruptcy and non-bankruptcy matters of this size and complexity.   The

disbursements for which Stuart Maue seeks reimbursement are customary and usual expenses for which

Stuart Maue seeks reimbursement from its clients.  Stuart Maue charges $0.10 per page for photocopies

and does not charge clients for facsimile costs, local or long distance telephone charges, or any overhead

expenses.

37.      Section 330 of the Bankruptcy Code provides that a court may award a professional

employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary

services rendered . . . and reimbursed for actual, necessary expenses."   11 U.S.C. § 330(a)(1).

Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court should
> consider the nature, the extent, and the value of such services, taking into account all
> relevant factors, including
>
> (A)      the time spent on such services;

(B)     the rates charged for such services;

(C)     whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;

(D)     whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;

(E)     with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and

(F)     whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3).

38.     Stuart Maue respectfully submits that the services for which it seeks compensation in this Final Fee Application were, at the time rendered, performed at the explicit request of the Fee Examiner and necessary for and beneficial to the Debtors' estates. The compensation requested is reasonable in light of the nature, extent, and value of such services provided to the Fee Examiner and ultimately, to the Court.

39.     Stuart Maue reserves the right to file a brief in reply to any objection to this Final Fee Application.

40.     No previous motion for the relief sought herein has been made to this or any other Court, except in the form of the applications for interim compensation described above.

**RELIEF REQUESTED**

WHEREFORE, Stuart Maue respectfully requests (i) allowance and payment of compensation for professional services rendered in the amount of $478,112.50 including the $28,021.00 of holdback fees; and (ii) reimbursement for actual and necessary expenses Stuart Maue incurred in the amount of $3,579.99; and (iii) that the Court grant Stuart Maue such other and further relief as is just.

Dated:      May 16, 2011
            St. Louis, Missouri


                          Respectfully submitted,


                          By:      _____/s/ *W. Andrew Dalton*_____
                                 W. Andrew Dalton

                                 STUART MAUE
                                 3840 McKelvey Road
                                 St. Louis, Missouri  63044
                                 Telephone:   (314) 291-3030
                                 Facsimile:    (314) 291-6546
                                 James P. Quinn
                                 W. Andrew Dalton

                                 *Consultant to the Fee Examiner*


6372096_1

STUART MAUE
3840 McKelvey Road
St. Louis, Missouri  63044
Telephone:  (314) 291-3030
Facsimile:  (314) 291-6546
James P. Quinn
W. Andrew Dalton

*Consultant to the Fee Examiner*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.* | |
| f/k/a General Motors Corp., *et al.* | Case No. 09-50026 (REG) |
| Debtors. | Jointly Administered |


**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR**
**PROFESSIONALS IN RESPECT TO THE FINAL FEE APPLICATION OF STUART MAUE**
**FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**
**FOR THE ANALYSIS OF INTERIM FEE APPLICATIONS OF**
**SELECTED CASE PROFESSIONALS**

I, W. Andrew Dalton, hereby certify that:

1.      I am Vice President and Director of Legal Audit at Stuart Maue, Consultant to the Fee

Examiner in the above-captioned bankruptcy cases.

2.      I have been designated by Stuart Maue with the responsibility in this case for ensuring

that the Final Fee Application of Stuart Maue for Allowance of Compensation and Reimbursement of

Expenses for the Analysis of Interim Fee Applications of Selected Case Professionals, dated May \_\_\_\_,

2011 (the "**Final Fee Application**") complies with the Amended Guidelines for Fees and Disbursements

for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on November

25, 2009 (the "**SDNY Guidelines**") and the United States Trustee Guidelines for Reviewing Applications

for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 promulgated by the

United States Department of Justice dated January 30, 1996 (the "**UST Guidelines**").

       3.       Pursuant to Section A.1. of the SDNY Guidelines, I certify that:

          a.       I have read the Final Fee Application;

          b.       To the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought in the Final Fee Application fall within the SDNY Guidelines and the UST Guidelines except as specifically described in the Final Fee Application;

          c.       The fees and disbursements sought are billed at rates and in accordance with practices customarily employed by Stuart Maue and generally accepted by Stuart Maue's clients; and

          d.       In providing a reimbursable service, Stuart Maue does not make a profit on the service, whether the service is performed by Stuart Maue in-house or through a third party.

       4.       With respect to Section A.3. of the SDNY Guidelines, I certify that the trustee, the chair of each official committee, and the debtor are each being provided with a copy of the Final Fee Application at least fourteen (14) days in advance of the hearing to consider the fee application.

Dated: May 16, 2011
       St. Louis, Missouri

                         Respectfully submitted,

                         By:      /s/ *W. Andrew Dalton*
                               W. Andrew Dalton

6372209_1

SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE GUIDELINES
FOR REVIEWING APPLICATIONS FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

Name of Applicant:                              Stuart Maue, Ltd.

Role in the Case:                               Consultant to the Fee Examiner

Date of Retention:                              February 17, 2010, *nunc pro tunc* January 22, 2010

Amount of Compensation and Expense    Fees Requested:        $478,112.50
Reimbursement Sought As Actual,
Reasonable and Necessary:             Expenses Requested:      $3,579.99

Amount of Unpaid Compensation
Sought As Actual, Reasonable and
Necessary:                                      $28,021.00

Prior Fee Applications:                         This is the final fee application of Stuart Maue.

The following is disclosed regarding the prior fee applications:

| | | Requested | | Approved | |
|---|---|---|---|---|---|
| **Date Filed** | **Services Performed** | **Fees** | **Expenses** | **Fees** | **Expenses** |
| 06/07/2010 | 01/22/2010 - 04/22/2010 | $197,902.50 | $1,363.71 | $197,902.50 | $1,363.71 |
| 11/16/2010 | 03/25/2010 – 10/20/2010 | $280,210.00 | $2,216.28 | $252,189.00 | $2,216.28 |

## SUMMARY OF PROFESSIONAL HOURS AND FEES

| Name | Position | Hourly Rate | Hours | Fees |
|---|---|---|---|---|
| **Analysis of Interim Fee Applications** | | | | |
| W. Andrew Dalton (Bar admission: 1996) | Attorney/ Manager | $375.00 | 60.90 | $22,837.50 |
| Dave Brown (Bar admission: 1998) | Attorney/ Senior Auditor | $350.00 | 407.30 | $142,555.00 |
| Tami Z. Morrissey (Bar admission: 1995) | Attorney/ Auditor | $325.00 | 350.90 | $114,042.50 |
| Janet E. Papageorge (Bar admission: 1982) | Attorney/ Auditor | $325.00 | 345.60 | $112,320.00 |
| Kathryn Hough (Bar admission: 2001) | Attorney/ Auditor | $325.00 | 75.30 | $24,472.50 |
| Pamela S. Snyder | Accountant/Auditor | $275.00 | 288.90 | $79,447.50 |
| | | **Total** | **1,528.90** | **$495,675.00** |
| | | | | |
| **Stuart Maue Retention/Compensation** | | | | |
| W. Andrew Dalton | Attorney/Manager | $375.00 | 44.60 | $16,725.00 |
| | | **Total** | **44.60** | **$16,725.00** |
| | | | | |
| **Non-Working Travel** | | | | |
| W. Andrew Dalton | Attorney/Manager | $187.50 | 12.60 | $2,362.50 |
| | | **Total** | **12.60** | **$2,362.50** |
| | | | | |
| **Aggregate Totals** | | | | |
| W. Andrew Dalton | Attorney/Manager | $375.00 | 118.10 | $41,925.00 |
| Dave Brown | Attorney/Senior Auditor | $350.00 | 407.30 | $142,555.00 |
| Tami Z. Morrissey | Attorney/Auditor | $325.00 | 350.90 | $114,042.50 |
| Janet E. Papageorge | Attorney/Auditor | $325.00 | 345.60 | $112,320.00 |
| Kathryn Hough | Attorney/Auditor | $325.00 | 75.30 | $24,472.50 |
| Pamela S. Snyder | Accountant/Auditor | $275.00 | 288.90 | $79,447.50 |
| | | **Total** | **1,586.10** | **$514,762.50** |
| | | | Discount | ($36,650.00) |
| **Total Fees For Which Compensation is Sought** | | | | **$478,112.50** |
| | | | | |
| **Blended Hourly Rates** | | | | |
| | | | Attorneys | All Professionals |
| Blended Rate (exclusive of discount and non-working travel) | | | $337.03 | $325.64 |

6372258_1

Exhibit C
Summary of Stuart Maue Expenses

## Summary of Expense Categories

| CATEGORY | AGRREGATE AMOUNT |
|---|---|
| Airfare | $1,863.00 |
| Lodging | $1,169.62 |
| Parking | $71.00 |
| Ground Transport | $198.84 |
| Federal Express | $183.48 |
| Postage | $1.05 |
| Photocopies | $93.00 |
| **Total** | **$3,579.99** |