Baker & McKenzie LLP
One Prudential Plaza, Suite 3500
130 East Randolph Street
Chicago, IL  60601
Telephone: (312) 861-8000
Facsimile: (312) 861-2899
David F. Heroy
Andrew P.R. McDermott

*Special Counsel to the Debtors and*
*Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 Case No. |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* f/k/a **General Motors Corp.,** *et al.* | **09-50026 (REG)** |
| Debtors. | (Jointly Administered) |

**FINAL APPLICATION OF BAKER & MCKENZIE
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR
SERVICES RENDERED AS SPECIAL COUNSEL FOR THE DEBTORS
<u>FOR THE PERIOD JUNE 1, 2009 THROUGH MARCH 29, 2011</u>**

| | |
|---|---|
| Name of Applicant: | Baker & McKenzie |
| Authorized to Provide Services to: | Debtors |
| Date of Retention: | June 1, 2009 |
| Date of Entry of Retention Order: | August 3, 2009 [Docket No. 3634] |
| Fee Period for Which Compensation and Reimbursement is Sought: | June 1, 2009 through March 29, 2011 |
| Compensation Requested: | $1,280,837.78 |
| Expense Reimbursement Requested: | $24,236.72 |
| Total Request: | $1,305,074.50 |
| This Is: | Final Fee Application |
| Blended Rate of All Billers:** | $480.40 |
| Blended Rate of Professionals:** | $507.61 |

\* One prior interim application has been filed by Baker & McKenzie [Docket No. 4454].
\*\* Blended rates do not include time billed after the First Interim Period.

CHIDMS1/2884142v2

Baker & McKenzie LLP
One Prudential Plaza, Suite 3500
130 East Randolph Street
Chicago, IL  60601
Telephone: (312) 861-8000
Facsimile: (312) 861-2899
David F. Heroy
Andrew P.R. McDermott

*Special Counsel to the Debtors and
Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY,** *et al.,*<br>f/k/a General Motors Corp., *et al.* | **09-50026 (REG)** |
| **Debtors.** | **(Jointly Administered)** |

**FINAL APPLICATION OF BAKER & MCKENZIE
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES FOR
SERVICES RENDERED AS SPECIAL COUNSEL FOR THE DEBTORS
FOR THE PERIOD JUNE 1, 2009 THROUGH MARCH 29, 2011**

Baker & McKenzie ("**Baker**"), special counsel to the above-captioned debtors (the "**Debtors**"), hereby applies (this "**Final Application**") for entry of an order allowing, (a) for the period from June 1, 2009, through March 29, 2011 (the "**Fee Period**"), (1) fees in the amount of $1,280,837.78, for the reasonable and necessary legal services Baker has rendered to the Debtors, and (2) the actual and necessary expenses that Baker incurred in the amount of $24,236.72; and (b) fees and expenses related to the filing and prosecution of this Final Application; in each case pursuant to sections 330 and 331 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**"), Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 2016-1 of the Local Rules of the Bankruptcy Court for the

CHIDMS1/2884142v2

Southern District of New York (the "**Local Rules**"), the Retention Order (as defined below), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330 (the "**Trustee Guidelines**") and the Order Granting Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals [Docket No. 3711] (the "**Interim Compensation Order**").  In support of this Final Application, Baker respectfully states as follows:

## PRELIMINARY STATEMENT[1]

This Final Application presents only one "new" issue – approval of Baker's fees and expenses for Retention & Fee Applications (the Baker project matter relating to Baker's being retained in these Chapter 11 Cases and seeking approval of its fees and expenses through preparation of monthly statements and fee applications).  All of the remaining services provided by Baker to the Debtors were completed in the First Interim Fee Period and the Fee Examiner and Baker reached an agreement to resolve the Fee Examiner's objections to Baker's First Interim Application with respect to these services.  This agreement provided for an agreed reduction in Baker's fees and subsequent recommendation for interim approval of those fees (as reduced) by the Fee Examiner.  With no other objections being lodged, the Court approved Baker's First Interim Application in accordance with the Fee Examiner's recommendations.

As Baker was continuing to bill fees and incur expenses relating to Retention & Fee Applications, Baker and the Fee Examiner determined that the issue of approval of its fees for Retention & Fee Applications would most expeditiously be resolved as part of this Final Application.  All of the invoices for Retention & Fee Applications are attached hereto as

---

[1] All terms as defined below.

**Exhibit C** and have been served upon the Debtors in monthly statements. Although Baker recognizes that amounts awarded as interim compensation are subject to reconsideration, there has been no indication that the resolution regarding Baker's First Interim Application should be revisited. Thus, this Final Application will summarize the First Interim Application, but will not retread these issues or provide additional information unless requested by the Fee Examiner or a party in interest. Schedules summarizing the fees and expenses billed in the First Interim Period, together with information regarding billing professionals, are attached hereto as **Exhibit B**. The variation in total amounts requested in this Final Application reflects reductions agreed upon between the Fee Examiner and Baker in the context of approval of the First Interim Application as described more fully below.

## BACKGROUND

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. This Final Application has been prepared by Baker in accordance with the Amended Guideline for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "**Local Guidelines**"), the Trustee Guidelines and the Interim Compensation Order. Pursuant to the Local Guidelines, a certification regarding compliance with same is annexed hereto as **Exhibit A**.

3. On June 1, 2009 (the "**Commencement Date**"), the Debtors filed voluntary petitions for relief commencing cases (the "**Chapter 11 Cases**") under chapter 11 of the Bankruptcy Code. The Debtors are operating their businesses and managing their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee

or examiner has been appointed in these cases.

4. On July 5, 2009, the Court approved the sale of substantially all of the Debtors' assets to Vehicle Acquisition Holdings LLC (its successor, "**New GM**") pursuant to its Order (I) Authorizing Sale Of Assets Pursuant To Amended And Restated Master Sale And Purchase Agreement With NGMCO, Inc., A U.S. Treasury Sponsored Purchase; (II) Authorizing Assumption And Assignment Of Certain Executory Contracts And Unexpired Leases In Connection With The Sale; And (III) Granting Related Relief [Docket No. 2968] and the approved sale was consummated as of July 10, 2009 (the "**Sale Date**").

### BAKER'S RETENTION & CONTINUING DISINTERESTEDNESS

5. On July 22, 2009, the Debtors filed their Application For Entry Of Order Pursuant To 11 U.S.C. §§ 327(e) And Fed. R. Bankr. P. 2014 Authorizing Retention And Employment of Baker & McKenzie As Special Counsel, *Nunc Pro Tunc* To The Commencement Date (the "**Retention Application**") [Docket No. 3283]. In support thereof, on July 31, 2009, the Debtors filed the Amended And Restated Declaration Of A. Duane Webber And Disclosure Statement Of Baker & McKenzie Pursuant To Sections 327(e), 329 And 504 Of The Bankruptcy Code And Rule 2014(a) Of The Federal Rules Of Bankruptcy Procedure (the "**Webber Declaration**") [Docket No. 3597].

6. By this Court's order dated August 3, 2009 [Docket No. 3634] (the "**Retention Order**"), the Debtors were authorized to retain Baker as special counsel, *nunc pro tunc* to the Commencement Date, with regard to tax and international matters relating primarily to the Debtors' post-petition financing, the tax implications of the Debtors' Chapter 11 Cases and the negotiation and sale of substantially all of the Debtors' assets. The Retention Order authorizes the Debtors to compensate Baker at Baker's hourly rates charged for services of this type and to

reimburse Baker for Baker's actual and necessary out-of-pocket expenses incurred, as more fully set forth therein.

7.  As disclosed in the Webber Declaration, Baker does not hold any adverse interest to the Debtors or their estates with respect to the matters on which Baker has been employed. As further set forth in the Webber Declaration, Baker may have in the past represented, may currently represent, and likely in the future will represent parties-in-interest in connection with matters unrelated to the Debtors and the Chapter 11 Cases. In the Webber Declaration, Baker disclosed its connections to parties-in-interest that it has been able to ascertain using its reasonable efforts. Baker has and will continue to update the Webber Declaration if and when necessary and appropriate.

### BAKER'S FIRST INTERIM FEE APPLICATION

8.  Beginning on the Commencement Date, Baker performed legal services for the Debtors with respect to four distinct major projects which have made near full use of Baker's international reach:

(a) "**Project Beam**," the proposed sale of (or investment in) the Debtors' (and New GM, on and after the Sale Date) stake in Adam Opel GmbH, has been led by Baker's Berlin and London offices, with support from offices in Munich and Frankfurt;

(b) "**Delphi Steering Acquisition**," the proposed acquisition by the Debtors (and New GM, on and after the Sale Date) of the steering and half shafts business of Delphi Corporation, has been managed from Baker's London office, with services worldwide from offices in Amsterdam, Beijing, Berlin, Frankfurt, Madrid, Melbourne, Mexico City, Milan, Monterrey (Mexico), Moscow, Paris, Porto Alegre (Brazil), Rome, San Francisco and Sao Paulo;

(c) "**Project Two**," support for the Debtors' (and New GM's, on and after the Sale Date) restructuring and contingency planning efforts throughout the Asia-Pacific region, including regulatory compliance and review of material contracts, utilizing Baker's offices and affiliated lawyers in Bangkok, Beijing, Ho Chi Minh City, Jakarta, Kuala Lumpur, Manila, Melbourne, Shanghai, Singapore, Sydney and Tokyo, as well as Baker's contacts with law firms in countries such as India, that do not permit foreign firms; and

(d) "**U.S. Tax Liability**," the resolution of disputed tax liabilities of the Debtors and related claims filed in the Chapter 11 Cases serviced by Baker's Chicago, New York and Washington, D.C. offices.

9. In addition to the foregoing, Baker provided minor follow up services relating to a previous matter that has wound-down ("**Technology Company**").

10. All of the substantive work performed by Baker was completed in the First Interim Fee Period and the fees and expenses relating to the foregoing matters were submitted for interim approval by the Court in Baker's First Application for Interim Professional Compensation for Baker & McKenzie LLP, Special Counsel, for the period June 1, 2009 through September 30, 2009 [Docket No. 4454] (the "**First Interim Application**").

11. On April 22, 2004, Brady C. Williamson, the fee examiner appointed in these Chapter 11 Cases (the "**Fee Examiner**"), filed the Fee Examiner's Preliminary Report on the First Interim Fee Application of Baker & McKenzie LLP [Docket No. 5543] raising certain issues with the First Interim Application and reflecting the agreement among Baker and the Fee Examiner regarding an extension of the hearing on the First Interim Application to permit a full audit by the Fee Examiner, documented in the Stipulation and Order for Adjournment of April

29, 2010 Hearing on First Interim Fee Application of Baker & McKenzie LLP filed April 26, 2010 [Docket No. 5604] and entered April 29, 2010 [Docket No. 5671].

12. Baker and the Fee Examiner subsequently resolved the Fee Examiner's issues with Baker's First Interim Application through Baker's voluntary write-off of $51,115.59 in fees relating to its total request of $1,262,789.76 in fees and $21,619.20 in expenses, as reflected in the Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of Baker & McKenzie LLP filed June 22, 2010 [Docket No. 6080] (the "**Fee Examiner's Report**").

13. As stated in the Fee Examiner's Report ¶ 27, "Baker has also disclosed that going forward, all fees and expenses submitted in future fee applications will be for retention or billing matters only. The Fee Examiner and Baker have had productive discussions on this issue, and have agreed to defer treatment of this issue until Baker's final fee application, when the full scope of billing and retention activities, in relation to the work Baker performed, will be more apparent."

14. In accordance with the Fee Examiner's Report and Baker's acceptance of the recommendations at the hearing on its First Interim Application, on July 22, 2010, the Court entered its Order Granting First Interim Professional Compensation and Reimbursement of Expenses [Docket No. 6402] (the "**First Interim Order**"), approving, pursuant to sections 330 and 331 of the Bankruptcy Code, the following amounts relating to Baker's First Interim Application (*See* Schedule B to First Interim Order):

| Applicant | Fees Requested | Fees Awarded | Fees Held Back (10%) | Expenses Requested | Expenses Awarded |
|---|---|---|---|---|---|
| Baker & McKenzie LLP | $1,262,789.76 | $1,046,409.68 | $104,640.97 | $21,619.20 | $21,785.99 |

15. In sum, the amount of Baker's fees approved ($1,046,409.68) in the First Interim Order, in light of the deductions provided for in the Fee Examiner's Report include: (i) Fees

CHIDMS1/2884142v2 -7-

Requested ($1,262,789.76) *less* (ii) the sum of (A) $51,115.59 (voluntary reductions), (B) $127,145.05 (Retention & Fee Applications fees), (C) $35,774.37 (amounts billable to New GM) and (D) upon information and belief, a $2,345.07 deduction that results from variances between Baker's and the Fee Examiner's requested amounts and deduction amounts arising from use of alternative currency conversion methods.

16. The small increase in expenses awarded to Baker for the First Interim Period (over the amount requested) is the result of the Fee Examiner's application of currency conversion rates to Baker's request. *See* Fee Examiner's Report Exh. A-2.

17. The Fee Examiner's reservation of $127,145.05 for Baker's Retention & Fee Applications matter varies from the amount of $122,222.31 reflected in Baker's invoices and First Interim Application because the Fee Examiner included in this amount certain fees billed to other matters that it determined were more properly considered under the Retention & Fee Applications matter. The difference of $4,922.74 is referenced herein as the "**Additional Fee Examiner R&FA Fees**" and is included in Baker's current request.

### BAKER'S FEES FOR RETENTION & FEE APPLICATIONS

18. Baker's time entries and expenses organized under the Retention & Fee Applications matter relate to Baker's services performed in connection being retained and paid as a professional in the Chapter 11 Cases. The following summarizes the services provided relating to the applicable invoice periods and stages of the Chapter 11 Cases (invoices attached as Exhibit C):

19. <u>Initial Retention (June-July 2009, Fees of $80,722.81 [Invoices] & $4,922.74 [Additional Fee Examiner RF&A Fees])</u> – At the outset, Baker's retention required significant effort principally because Baker's retention involved thirty (30) offices including four major firm

CHIDMS1/2884142v2                    -8-

groups working on four distinct matters of major importance to GM's restructuring (as more fully described above): Project BEAM (Germany), the Delphi Steering Acquisition (London), Project Two Asia/Pacific Restructuring (Sydney) and US Tax Matters (Washington, D.C.). Baker's retention was unique in that Baker was required to communicate and comply with bankruptcy guidelines across offices in twenty-one (21) countries worldwide, nineteen (19) of which are non-English speaking. This additional layer of administration included the extra costs of translation of the bankruptcy standards, currency conversions and collection of data across multiple systems, all of which would have been unnecessary outside of bankruptcy. In addition, Baker was not contacted by the Debtors prior to filing regarding the scope and manner of Baker's bankruptcy retention as special counsel because the Debtors believed it would be sufficient to retain Baker as ordinary course counsel. As a result of the foregoing, significant time was spent by Baker in the first months that was not necessary for other professionals, including time spent principally on (i) advising the Debtors and Debtors' counsel that Baker needed to be retained as special counsel (there existed significant confusion as to whether Baker worked for non-Debtor subsidiaries) and determining the proper means for retention (as special counsel instead of ordinary course counsel); (ii) identifying and coordinating Baker's bankruptcy retention among the 30 offices involved (including 26 international offices), performing conflicts checks and notification of billing procedures appropriate in bankruptcy; and (iii) assisting Debtors' counsel with preparation of the Retention Application and drafting the supporting Webber Declaration, which documents many professionals had filed at the beginning of the case. Because this was the Debtors' and its counsel's busiest period, and Baker's retention had not been contemplated, Baker's initial retention required numerous contacts and repeated inquiries that led to additional fees that most other professionals did not experience.

20.     <u>Initial Invoices & Monthly Statements (August-September 2009, Fees of $41,449.50 & Expenses of $108.09)</u> – Given Baker's international reach and twenty-six (26) international offices billing to the Debtors in June and July, insolvency attorneys spent significant time preparing Baker's invoices consistent with the requirements of professionals in U.S. bankruptcy cases and coordinating billing to comply with bankruptcy guidelines. The Monthly Statements contained summary information on over 150 billing professionals worldwide, the majority of which were located in non-English speaking countries and working in offices not typically retained in U.S. bankruptcy proceedings. In addition, Baker billed fees during this period to assisting the Debtors in its retention of "ordinary course professionals" in foreign jurisdictions and significant time working with the Debtors to identify work transitioning to New GM after the sale.

21.     <u>First Interim Application (October-November 2009, Fees of $42,991.50 & Expenses of $150.04)</u> – In late October and through November, Baker spent significant time preparing its First Interim Application. Baker also continued to provide services relating to transitioning matters from MLC to New GM and working with AlixPartners (advisor to MLC) to resolve confusion over which offices should be billing to which entity and the allocation of responsibility for Baker invoices among MLC and New GM.

22.     <u>Monthly Statements, Ordinary Course Professionals, Transition (December 2009 – March 2010, Fees of $15,543.55 & Expenses of $266.71)</u> – Baker continued to prepare Monthly Statements during this period. The amounts involved include time spent on preparing submissions relating to Project Two, a matter that the client advised was to be an ongoing matter for MLC, but that was ultimately determined among MLC advisors and New GM to be an obligation of New GM going forward. Fees billed included discussions with AlixPartners and

New GM relating to this transition, and the modification of invoices from Asia/Pacific for inclusion in Monthly Statements. In addition, Baker continued to assist in the retention and payment of ordinary course professionals internationally.

23. <u>Fee Examiner Requests, Settlement & Hearing on First Interim Application (April – July 2010, Fees of $40,015.00 & Expenses of $1,542.99)</u> – Amounts stated include time spent responding to inquiries from the Fee Examiner regarding Baker's First Interim Application, reviewing draft Fee Examiner's Reports and providing additional information to the Fee Examiner. In addition, Baker insolvency professionals negotiated a mutually agreeable settlement with the Fee Examiner that prevented wasteful pleadings and Court resources. One Baker attorney travelled to New York for the hearing in July 2010. In addition, Baker continued to prepare Monthly Statements during this period.

24. <u>Fee Examiner Requests, Settlement & Hearing on First Interim Application (August 2010 – March 2011, Fees of $8,733.00 & Expenses of $321.31)</u> – After the hearing on Baker's First Interim Application, Baker worked with AlixPartners to resolve an issue as to the proper level of interim payments due to Baker. In addition, Baker performed brief research and continued to monitor Court rulings relating to Retention & Fee Applications in preparation for this Final Application. For efficiency, Baker discontinued preparing Monthly Statements during this period.

25. In sum, from June 1, 2010 through March 31, 2011, Baker provided services relating to Retention & Fee Applications in these Chapter 11 Cases, accruing fees in the total amount of $234,428.10 and expenses in the amount of $2,450.73.

26. Baker will supplement this Final Application with invoices after March 31, 2011 for time spent preparing and prosecuting this Final Application.

## ACTUAL & NECESSARY EXPENSES

27. Attached hereto as **Exhibit D** is a summary of the expenses incurred by Baker during the Fee Period relating to the Retention & Fee Applications matter and for which reimbursement is sought herein.

28. It is Baker's policy to charge its clients in all areas of practice the amounts incurred by Baker for identifiable, non-overhead expenses incurred in connection with the client's case that would not have been incurred except for representation of that particular client. Examples of such expenses are postage, overnight mail, courier delivery, computer assisted legal research, photocopying, out-going facsimile transmissions, local transportation and secretarial overtime.

## CONCLUSION

29. By this Final Application, Baker requests final allowance and payment of: (a) for the Fee Period, fees and expenses in the total amount of $1,305,074.50 consisting of: (1) $1,280,837.78, for the actual, reasonable and necessary professional services rendered by Baker on behalf of the Debtors, and (2) $24,236.72, for actual and necessary costs and expenses; and (b) fees and expenses related to the filing and prosecution of this Final Application.

## NOTICE

30. Notice of this Final Application has been provided to all parties required to receive notice of this Final Application. In light of the nature of the relief requested, Baker submits that no further notice is required.

WHEREFORE, Baker respectfully requests the entry of an order (a) allowing an administrative expense claim for Baker's compensation and reimbursement for its fees and expenses incurred during the Fee Period and fees and expenses related to the filing and prosecution of this Final Application; (b) authorizing and directing payment of such amounts and (c) granting such other and further relief as is just and proper.

Dated: May 15, 2011            /s/ David F. Heroy
David F. Heroy
Baker & McKenzie LLP
One Prudential Plaza, Suite 3500
130 East Randolph Street
Chicago, IL 60601
Telephone: (312) 861-8000
Facsimile: (312) 861-2899