**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                      :
                                      :
In re:                                :      Chapter 11 Case No.:
                                      :
MOTORS LIQUIDATION COMPANY, et al.    :      09-50026 (REG)
    f/k/a General Motors Corp., et al.:
                                      :
              Debtors.                :      (Jointly Administered)
                                      :
------------------------------------------------------------x
```

## FINAL APPLICATION OF FTI CONSULTING, INC. (I) FOR ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED IN THE CASE FOR THE PERIOD FROM OCTOBER 1, 2010 THROUGH MARCH 29, 2011 AND (II) FOR FINAL APPROVAL OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES FOR SERVICES RENDERED IN THE CASE FOR THE PERIOD FROM JUNE 3, 2009 THROUGH MARCH 29, 2011

Name of Applicant:                                FTI Consulting, Inc.

Authorized to Provide
Professional Services to:                         THE OFFICIAL COMMITTEE OF
                                                  UNSECURED CREDITORS OF MOTORS
                                                  LIQUIDATION COMPANY, et al.

Date of Retention:                                August 18, 2009 (effective June 3, 2009)

Period for which compensation
and reimbursement is sought:                      June 3, 2009 to March 29, 2011
Amount requested in this fee app
    Compensation requested:                       $18,495,125.25
    Expense reimbursement
    requested:                                    $135,380.13

This is an (a): ____Interim __X__Final Application

## Summary of Applications

| Date Application Filed | Docket No. | Compensation Period | Fees Requested | Expenses Requested | Fees Allowed | Expenses Allowed | Hold-Back (if any) |
|---|---|---|---|---|---|---|---|
| 11/16/09 | 4455 | June 3, 2009 to September 30, 2009 | $4,435,036.25 | $74,500.84 | $4,435.036.25 | $73,248.33 | $443,503.63 |
| 3/16/10 | 5279 | October 1, 2009 to January 31, 2010 | $2,066,666.00 | $18,756.18 | $2,066,666.00 | $18,688.23 | $206,666.60 |
| 8/5/10 | 6536 | February 1, 2010 to May 31, 2010 | $2,000,000.00 | $11,713.21 | $1,976,822.56[1] | $10,944.88 | $197,682.26 |
| 11/15/10 | 7775 | June 1, 2010 to September 30, 2010 | $2,000,000.00 | $4,827.53 | $2,000,000.00 | $4,827.53 | $200,000.00 |
| Contained in this document | | October 1, 2010 to March 29, 2011[2] | $2,993,423.00 | $25,582.37 | n.a. | n.a. | n.a. |
| Contained in this document | | Completion Fee | $5,000,000.00 | $0.00 | n.a | n.a | n.a |
| Total | | | $18,495,125.25 | $135,380.13 | | | |

---

[1] The Third Interim Fee Order has $27,177.44 of fees not yet allowed, pending the Court's ruling on the issue raised.
[2] The March 2011 monthly fee has been pro-rated for 29 days out of 31 days in March. The period also includes time incurred for preparation of the March Fee Statement and this Final Fee Application.

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                            :
                                            :
In re:                                      :        Chapter 11 Case No.:
                                            :
MOTORS LIQUIDATION COMPANY, et al.          :        09-50026 (REG)
    f/k/a General Motors Corp., et al.      :
                                            :
                        Debtors.            :        (Jointly Administered)
                                            :
------------------------------------------------------------x

<u>**FINAL APPLICATION OF FTI CONSULTING, INC. (I) FOR
ALLOWANCE OF COMPENSATION AND FOR REIMBURSEMENT OF
EXPENSES FOR SERVICES RENDERED IN THE CASE FOR THE PERIOD
FROM OCTOBER 1, 2010 THROUGH MARCH 29, 2011 AND (II) FOR FINAL
APPROVAL OF COMPENSATION AND FOR REIMBURSEMENT OF EXPENSES
FOR SERVICES RENDERED IN THE CASE FOR THE PERIOD FROM JUNE 3, 2009
THROUGH MARCH 29, 2011**</u>

FTI Consulting, Inc. ("FTI" or "Applicant"), as financial advisors to the Official

Committee of Unsecured Creditors (the "Committee") of Motors Liquidation Company, et al.

("MLC"), the debtors and debtors-in-possession in the above-captioned chapter 11 cases

(collectively, the "Debtors" or the "Company") and, together with their non-debtor affiliates,

hereby submits its final application pursuant to 11 U.S.C. §§330 and 331 for final allowance of

compensation for services rendered and for reimbursement of expenses incurred in these cases.

<u>**INTRODUCTION**</u>

1.      By this application, FTI seeks (I) final allowance of compensation for

professional services rendered as financial advisors to the Committee for the period October 1,

2010 through and including March 29, 2011 (the "**Fifth Interim Period**")[3] in the amount of

$2,993,423  representing 4,737.4 hours in professional services, including those incurred in April

and May 2011 related to the preparation of the March fee statement and this final fee application

and actual and necessary expenses of $25,582.37,  (II) final allowance of compensation for

professional services rendered as financial advisors to the Committee for the period June 3, 2009

through and including March 29, 2011 (the "Application Period")[2] in the amount of

$13,495.125.25 representing 22,709.5 hours in professional services and actual and necessary

expenses of $135,380.13 and (III) $5,000,000 representing the Completion Fee. In support of this

application, the Applicant represents as follows:

2.      This application is submitted pursuant to the terms of the Order Pursuant

to 11 U.S.C. § 105(a) and 331 Establishing Procedures for Interim Compensation and

Reimbursement of Expenses of Professionals dated August 7, 2009 (the "Administrative Fee

Order"). FTI is seeking the final award and the full payment, without any holdback of fees, of (I)

$2,993,423.00 in fees and $25,582.37 for reimbursement of expenses relating to services

rendered on behalf of the Committee during the Fifth Interim Period and (II) $18,495,125.25 in

fees and $135, 380.13 reimbursement of expenses relating to services rendered on behalf of the

Committee during the Application Period.

### **BACKGROUND**

3.      On June 1, 2009 (the "Petition Date"), the Debtors filed voluntary

petitions for relief under chapter 11 of the United States Code (the "Bankruptcy Code"). The

Debtors have continued to operate their businesses and manage their properties as debtors-in-

possession pursuant to 1107(a) and 1108 of the Bankruptcy Code.

---

[3] The March 2011 monthly fee has been pro-rated for 29 days out of 31 days in March. The period also includes time incurred for preparation of the March Fee Statement and this Final Fee Application.

4.      On June 3, 2009, the Office of the United States Trustee for the Southern District of New York, pursuant to section 1102 of the Bankruptcy Code, appointed the Committee to represent the interests of all unsecured creditors in these Chapter 11 Cases.

5.      On June 3, 2009, the Committee selected Kramer Levin Naftalis & Frankel LLP as its Counsel ("Committee Counsel") and FTI Consulting as its Financial Advisor.

6.      By an Order dated August 18, 2009, the United States Bankruptcy Court for the Southern District of New York authorized and approved the Committee's retention of FTI *nunc pro tunc* to June 3, 2009.

7.      On July 10, 2009, General Motors Company ("New GM"), formerly known as NGMCO, Inc. and successor-in-interest to Vehicle Acquisition Holdings LLC, completed the acquisition of substantially all of the assets of Motors Liquidation Company ("Old GM" or "MLC"), formerly known as General Motors Corporation, and its direct and indirect subsidiaries, Saturn LLC ("Saturn LLC"), Saturn Distribution Corporation ("Saturn Distribution") and Chevrolet-Saturn of Harlem, Inc. ("Harlem", and collectively with Old GM, Saturn LLC and Saturn Distribution, the "Sellers").  The sale was consummated pursuant to the Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009, as amended (the "Purchase Agreement"), between the Sellers and New GM.  The Purchase Agreement was entered into in connection with the Sellers' filing of voluntary petitions for relief under the Bankruptcy Code in this Court, and was completed pursuant to Section 363(b) of the Bankruptcy Code (the "363 Sale") and the Order of this Court dated July 5, 2009.  Subsequent to the 363 Sale, the Debtors continue to manage the remaining assets in the Estate and are in the process of winding down the Estate.

8.      On March 29, 2011, this Court entered an order confirming the Debtors'
Plan. The Plan became effective on March 31, 2011.

9.      On April 21, 2011, MLC completed the first distribution, which
distributed over 75% of the Common Stock and Warrants of New GM held by the Debtors to
unsecured creditors.

10.     As stated in the FTI Retention Application and the Retention Order
entered by the Court on August 18, 2009, FTI has agreed to seek compensation (a) on an hourly
basis from the commencement of the FTI Committee Engagement on June 3, 2009 to the date of
closing of the 363 Sale, which closed during the morning of July 10, 2009 and (b) on a fixed
monthly fee basis for the period thereafter, plus reimbursement of actual and necessary expenses.

11.     Additionally, FTI is entitled to a completion fee of $5.0 million (the
"**Completion Fee**") upon the successful wind-down of the Debtors' estates (the "**Wind-Down**").
The Completion Fee was considered earned and payable in two parts, as follows:

a. $2.5 million upon confirmation of a Plan of Liquidation, and

b. $2.5 million upon receipt by unsecured creditors of not less than 70% of the equity and
warrants received by Debtors as proceeds from the 363 Sale (the "**Equity and Warrants**").
As (a) the Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b)
of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure
Confirming Debtors' Second Amended Joint Chapter 11 Plan was entered by the Bankruptcy
Court on March 29, 2011 and (b) the initial distribution to holders of allowed general unsecured
claims of more than 75% of the stock and warrants owned by MLC was completed on April 21,
2011, the Completion Fee is now earned.

## Summary of Prior Applications

12.     On November 16, 2009, the Applicant filed its first interim fee application [Docket No. 4455] (the "**First Interim Fee Application**") for the allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred from June 3, 2009 through September 30, 2009 seeking interim allowance of fees in the aggregate amount of $4,435,036.25 and the interim allowance of the reimbursement for actual and necessary expenses in the amount of $74,500.84. A hearing on the First Interim Fee Application was held on April 29, 2010.

13.     On March 16, 2010, the Applicant filed its second interim fee application [Docket No. 5279] (the "**Second Interim Fee Application**") for the allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred from October 1, 2009 through January 31, 2010 seeking interim allowance of fees in the aggregate amount of $2,066,666.00 and the interim allowance of the reimbursement for actual and necessary expenses in the amount of $18,756.18. A hearing on the Second Interim Fee Application was held on June 29, 2010.

14.     On August 5, 2010, the Applicant filed its third interim fee application [Docket No. 6536] (the "**Third Interim Fee Application**") for the allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred from February 1, 2010 through May 31, 2010 seeking interim allowance of fees in the aggregate amount of $2,000,000.00 and the interim allowance of the reimbursement for actual and necessary expenses in the amount of $11,713.21. A hearing on the Third Interim Fee Application was held on October 26, 2010.

15.    On November 22, 2010, the Applicant filed its fourth interim fee application [Docket No. 7775] (the "**Fourth Interim Fee Application**") for the allowance of compensation for professional services rendered and for reimbursement of actual and necessary expenses incurred June 1, 2010 through September 30, 2010 seeking interim allowance of fees in the aggregate amount of $2,000,000.00 and the interim allowance of the reimbursement for actual and necessary expenses in the amount of $4,827.53. A hearing on the Fourth Interim Fee Application was held on January 6, 2011.

16.    FTI's significant contributions and achievements during the Case include:

A.  Consummation of a successful Section 363 sale transaction

i.    Business Plan:  FTI's specialist automotive team conducted a comprehensive review of the strategic, operational and financial assumptions in the Company's business plan and provided advice to the Committee on the results of its review to enable the Committee to form a view on the viability of the proposed "New GM" entity as a result of the Section 363 sale transaction.

ii.   Mechanics of the Section 363 sale transaction:  Working closely with Committee Counsel, FTI provided extensive feedback and advice to the Committee regarding the impact of the mechanics and structure of the sale on all major stakeholders.

iii.  Wind-down plan:  Contemporaneous with the 363 sale, FTI undertook extensive analysis and together with Committee Counsel advised the Committee on the adequacy of the plan to wind-down the remaining portions of "Old GM" and the funding provided by the DIP lender to

execute same. The Committee professional's review of the wind-down

budget and their negotiations with the Debtors and the DIP lender resulted

in increased funding of approximately $250 million to ensure the estate

would be administratively solvent.

B.  Consummation of an efficient wind-down

    i.  Claims:  The Case invoked a huge volume of claims related issues - that

needed to be resolved in a timely and cost effective manner.  Working

closely with Committee Counsel and Debtors professionals, FTI played

(and continues to play) an integral role in the resolution of financial debt,

litigation, environmental (both administrative and unsecured), asbestos

related claims.  FTI brought to bear subject matter expertise as required.

    ii.  Litigation assistance:   Extensive support was given to Committee Counsel

(and Committee Conflicts Counsel) in relation to several large litigation

items currently being prosecuted by the Committee.  These adversary

proceedings were active for a large portion of the Chapter 11 case.

C.  Extensive creditor interface

    i.  Over the course of the Chapter 11, FTI received thousands of calls and

emails from interested parties that were responded to in a timely and

professional manner.  Upon the mailing of Plan solicitation materials that

included FTI's analysis and contact information to several million claim

holders, the call and email volume was extreme for several weeks until the

voting deadline expired.

D.  Structuring, funding and documentation of exit and post effective date entities

       i.     FTI was instrumental in assisting Committee Counsel and the proposed Trust Administrator in the development and negotiation of GUC post effective structures  (both the GUC Trust and the yet to be formed Avoidance Action Trust) including providing subject matter experts as required in the fields of litigation, tax, insurance,  and governance generally. FTI developed and extensively modeled numerous and highly complex iterations of formulaic distribution methodology relating to all forms of distributions.  This included extensive work with Committee Counsel regarding GUC Trust related SEC issues.  FTI provided guidance to Counsel and the Committee on the budgetary implications of various proposals in relation to the DIP lender and other funding approaches.

E.  Extensive support to the Committee Counsel and to the Committee

       i.     Throughout the case, as the facts and case developments dictated, FTI undertook analysis and provided recommendations to the Committee, while liaising closely with the Debtors' advisors to avoid any duplication of efforts.

F.  IPO participation

       i.     At the request of the Committee, FTI undertook a very detailed analysis of New GM's financial information and other IPO related issues to enable the Committee to make an informed decision as to whether to execute their tag-along rights.  This involved extensive interface with New GM and its underwriters, including the review of significant and material non public information that had to be analyzed and synthesized into the form of

deliverable required by Committee Counsel and the client. The work

performed by FTI in relation to this matter allowed the Committee to avoid

having to engage an investment bank to complete this analysis, saving the

estate a significant amount in additional professional fees.

## SUMMARY OF SERVICES RENDERED

17.     The Debtors' chapter 11 cases have presented numerous large and

complex issues that had to be addressed in order to preserve and maximize value for unsecured

creditors.  The Retention Order authorized FTI to render financial advisory services to the

Official Committee of Unsecured Creditors, which included, but were not limited to the

following services during the Application Period.

18.     **PCD 1 Current Operating Results & Events**

FTI reviewed and analyzed information distributed directly by the Debtors to the Committee, and

Court filings throughout the case.  At the request of the Committee, FTI reviewed and analyzed

New GM's operating results and market performance. FTI prepared numerous detailed reports to

the Committee analyzing GM's market performance. FTI participated on numerous calls with the

Debtors and the Debtors' advisors to discuss operating results and key motions filed.  FTI

expended significant time developing and presenting numerous reports to the Committee that (a)

highlighted the major developments in these cases, including a detailed analysis of the proposed

sale transaction, (b) provided financial analyses on matters impacting recoveries to unsecured

creditors and (c) summarized complex issues facing the Debtors as well as providing guidance

and recommendations to the Committee and Committee Counsel regarding many of the issues

covered in the reports.  These services were essential to ensure the Committee had a complete understanding of these issues and to ensure that value was being maximized.

FTI reviewed and analyzed General Motors Company's ("New GM") public filings of financial statements and other financial updates from underwriters and other parties to assess the implications for the IPO process. FTI reviewed and developed analyses based on analyst reports and other expert commentary on New GM and prepared reports to the Committee on same, addressing the evolving valuation implications thereof.

### 19.    __PCD 3 Financing Matter (DIP, Exit, Other)__

FTI reviewed the Debtor In Possession ("DIP") financing key terms and conditions by analyzing the DIP documents and providing extensive commentary to the Committee and Committee Counsel. FTI undertook extensive diligence of the proposed wind-down budget and assessed the adequacy of each wind-down budget category to ensure a successful funded wind-down of the estate. FTI also reviewed and analyzed the proposed exit capital structure and reported to the Committee and Committee Counsel on same.

FTI undertook extensive work at the instruction of the Committee to assist them to decide whether to participate in the IPO.  This work included reviewing New GM's S-1 Registration Statement along with its subsequent amendments and extensive work with the underwriting team and extensive analysis of non public information from New GM.   FTI worked with Committee Counsel on various implications for exit due to the timing, form and structure of the wind-down financing and the wind-down vehicle.  Extensive market studies and valuation work was conducted at the request of Committee Counsel and comprehensive reporting to Committee, and Committee Counsel was provided and updated as requested.

20.    **PCD 4 Trade Vendor Issues**

FTI reviewed and analyzed various motions and proposals relating to vendor issues including the

Critical Vendor motion, Foreign Supplier motion, and proposed assumptions and rejections of

certain executory contracts.  In addition, FTI reviewed the Debtors' proposals to pay certain

suppliers' pre-petition balances and the continuation of the existing UST Auto Supplier Support

and Troubled Supplier Assistance Programs.  FTI met with the Debtors and their advisors on a

regular basis to discuss the Debtors' proposed actions and related analyses.  FTI reviewed these

documents to assess the proposed payments to certain suppliers pursuant to the Critical Vendor

motion and Foreign Vendor motion and potential claims arising from rejections of certain

executory contracts and the overall impact on recoveries to unsecured creditors.

21.    **PCD 5 Real Estate and Environmental Issues**

FTI reviewed and analyzed various motions and proposals relating to the assumption and

rejection of certain real property leases.  In addition, FTI expended a significant amount of time

reviewing and analyzing the detailed assumptions and support for same, made by the Debtors in

the development of potential remediation costs and environmental claims estimated as part of the

Debtors' wind-down budget.

FTI met with the Debtors' advisors on a regular basis to discuss planning, and subsequent

execution of (a) their work plan in addressing pending environmental issues, (b) their proposed

approach to negotiate with regulatory authorities regarding environmental remediation, (c) the

anticipated timeframe and the feasibility of such timeframe in working with Federal, State and

Local governments to develop an approach that promotes job creation and commercial property

13

redevelopment as a strategy to mitigate potential environmental remediation costs, (d) their proposed approach to develop an insurance program to cover environmental expenses, (e) transition timeline to shut down certain manufacturing plants that are being leased to NewGM and (f) the Debtors progress towards objecting to and resolving environmental related claims filed against MLC and other Debtor entities with respect to the sites not owned by the Debtors. FTI performed an extensive review and analysis of the Debtors' revised environmental remediation estimate. FTI received information on a site by site basis and compared the original and revised estimates to understand the variances and assess the reasonableness of the overall process and results. FTI reviewed and monitored the negotiations and implementation of the environmental trust settlement agreement negotiated by the Debtors with several environmental regulatory agencies, including analysis of the proposed structure and remediation estimates. FTI presented its findings to the Committee on same. These services were essential to ensure the Committee had a complete understanding of these issues and to ensure that claims and remediation costs were dealt with in a responsible manner.

22.    **PCD 6 Asset Sales**

FTI performed detailed analyses for the Committee and Committee Counsel, closely monitored and provided feedback to the Debtors on the sale of the GM Strasbourg operation. This included consultations with Committee Counsel's Paris based attorneys regarding various wind-down and disposition strategies.  FTI received updates and discussed critical issues related to Strasbourg such as the negotiation of commercial agreements with New GM, analysis of financial agreements, dealings with key customers and progress on the sale transaction process. FTI monitored the developments related to the attempted sale of Opel and its potential impact on

unsecured creditor returns. FTI discussed with the Debtors the sale of the Wilmington facility

and reviewed related documentation, providing a recommendation to Committee Counsel and the

Committee in relation to the transaction. FTI also discussed with the Debtors and analyzed all

other non-core asset sales; the extent of analysis was dictated by the materiality of the asset. FTI

provided updates on all asset sales as part of its periodic reports to the Committee.

23.    **PCD 7 Analysis of Business Plan**

FTI reviewed the Debtors' preliminary business plans and viability plans in order to identify

issues critical to unsecured creditors as future equity owners of the business.  Using in-house

automotive experts, FTI researched various industry reports and macro-economic factors

impacting the Debtors' business plan.  Moreover, FTI analyzed the Debtors' projections relating

to volume and mix, cash flows and cost structure in order to assess and evaluate the Debtors'

underlying assumptions made in developing their business plan.  FTI participated in meetings

with the Debtors and their advisors on the same.  In addition, FTI reviewed and assessed other

related issues impacting the Debtors' business plan including the Cash for Clunkers Program and

the Debtors' dealership rationalization program.  FTI presented its findings to the Committee on

the same.

24.    **PCD 8 Valuation and Related Matters**

FTI reviewed and provided expert commentary to the Committee on various financial reports

and the implications thereof provided by the Debtors including their liquidation analysis and

Evercore's fairness opinion to evaluate and assess potential recoveries to unsecured creditors.

FTI developed independent analyses to assess the value of potential recoveries to unsecured

creditors under various valuation methodologies. During this period, FTI prepared various analyses including a comparable analysis based on publicly traded comparable companies, valuations on GM warrants, and comparisons between the GM bankruptcy and the Chrysler bankruptcy relating to their hypothetical liquidation analyses, wind-down budgets, and potential recoveries to unsecured creditors.

At the request of the Committee, FTI began preparing a comprehensive evaluative document for the Committee in anticipation of the IPO to help the Committee make an informed decision on whether or not to participate in the IPO. FTI reviewed numerous analyst reports and SEC filings to help in preparing valuation and related analysis of New GM's IPO. FTI met with New GM's underwriters, and New GM and obtained information essential in advising the Committee on this decision.

FTI prepared extensive reporting  to the Committee including considerations on whether to participate or not in New GM's initial public offering. These services were essential for the Committee to make a decision on whether to participate or not in the initial public offering.


25.    **PCD 9 Analysis of Employee Comp Programs**

FTI worked with Committee Counsel, the Debtors and the Debtors' advisors to understand the implications of the proposed treatment of VEBA, CBAs, benefits plans, OPEB and modifications to existing programs to assess whether the proposed treatment would result in potential claims against Old GM.  In addition, FTI reviewed proposed settlements with various unions and also prepared sensitivity analyses regarding the Debtors' pension assets and obligations and treatment thereof.

26. **PCD 10 Analysis of Tax Issues**

FTI reviewed and analyzed the tax implications of the sale transaction. FTI performed diligence

on tax issues related to lease rejections and other tax related claims and provided feedback to

both the Debtor's advisors and the Committee and Committee Counsel. FTI successfully

contributed to negotiating reduced claim amounts related to the tax components of certain

claims. Additionally, FTI actively participated in structuring discussions related to the tax

treatment of the post-effective trusts.

27. **PCD 11 Prepare For and Attend Court Hearings**

FTI incurred time preparing and attending key court hearings at the request of Committee

Counsel.  In several instances, Anna Phillips prepared, and was available to provide expert

testimony on behalf of the Committee in support of the Committee's filed motions.

28. **PCD 13 Analysis of Other Miscellaneous Motions**

FTI reviewed numerous motions, Affidavits and other materials provided by the Debtors in order

to identify issues impacting unsecured creditors. FTI also reviewed various omnibus rejection

motions relating to certain executory contracts and leases to ascertain potential claims that may

arise as a result of these rejections.  FTI presented its findings and recommendations to the

Committee on same.

29. **PCD 14 Analysis of Claims/Liab Subject to Compromise**

FTI performed due diligence with respect to the allocation of claims between MLC and New GM

and the overall impact on recoveries to unsecured creditors.  FTI met regularly with the Debtors

and their advisors to understand and assess the Debtors' latest claims estimates and to develop a

strategy to facilitate the claims review and reconciliation process.  These meetings were critical

to ensure that claims were resolved in an efficient manner and to facilitate an expeditious exit

from bankruptcy.

 FTI analyzed and discussed with the Debtors' advisors and with Committee Counsel significant

individual claims, including but not limited to, the Nova Scotia bond claims and the NUMMI

claim to assess the merits of these claims and develop strategies to negotiate and resolve these

claims. FTI reviewed and summarized the omnibus claims objections filed by the Debtors to

understand the rationale and merits of such objections. FTI performed analyses to calculate and

reconcile claim amounts related to the Debtors' various bond issuances, including principal

amounts outstanding and accrued interest calculations. FTI prepared periodic reports to the

Committee to keep them apprised of the status of the claims pool and analysis on the likely final

range of claims in the case as well as the Debtors' efforts to negotiate and settle claim amounts.

FTI closely monitored the Debtors' progress with respect to the resolution of unliquidated

claims, including product liability claims and other litigation claims, and the implementation of

ADR procedures. FTI reviewed detailed information related to the ongoing ADR process,

including the summaries of each case, the capping offers and settlements that have been reached

to further resolve the claims. FTI met regularly with the Debtors to discuss updates. Pursuant to

the ADR procedure, the Committee was required to review and comment on any proposed

claims settlements in excess of $1 million. FTI reviewed the necessary details and commented on

the claims level information to make an informed business decision on proposed settlements. FTI

made recommendations to the Committee regarding the claims settlement offers. These meetings

were critical to ensure that claims were resolved in an efficient manner, that the overall claims

pool in the estate was kept as low possible and to facilitate an expeditious exit from Bankruptcy.

FTI participated in the process of requesting and obtaining detailed information related to

asbestos claims in order to enable the corresponding asbestos experts to perform their analyses.

FTI prepared periodic reports to the Committee to keep them apprised of the status of the claims

pool and the Debtors' efforts to negotiate and settle claim amounts.

30.    **PCD 15 Analyze Interco Claims, Related Party Transactions, SubCon**

FTI performed extensive analyses related to the claims filed with respect to the Nova Scotia

bonds. FTI reviewed and analyzed relevant documents including the original issuance

documents, the Lock Up Agreement, the swap related documents and the various intercompany

transactions that occurred between the time of issuance and the Bankruptcy filing by the Debtors.

FTI also prepared analyses related to the corporate and legal organizational structure of the

Debtors to understand which entities stayed behind under MLC after the transaction and which

entities needed to be wound down. FTI prepared reports to the Committee summarizing its

findings on the topics above.

31.    **PCD 16 Analysis, Negotiate and Formulate Plan of Liquidation and
Disclosure Statement**

FTI undertook extensive work in this area.  FTI worked with the Debtors, the Committee and

Committee Counsel to formulate an acceptable Plan of Liquidation, which maximized the value

of the estate; adequately dealt with long-term matters in the case such as the resolution of

product liability claims, tort claims, asbestos claims and the environmental remediation of owned sites; and allowed for timely distributions to unsecured creditors.

FTI provided significant input to Committee, requested changes for the Plan of Liquidation and Disclosure Statement filed by the Debtors. FTI worked with the Committee to assess the Plan and Disclosure Statement to determine if it was an acceptable Plan of Liquidation, which maximized the value of the estate and adequately deals with all future long-term matters. FTI reviewed, analyzed and actively assisted in the structuring  and proposed governance of the post-emergence trusts in order to ensure (a) adequate resolution of remaining disputed claims, (b) adequate distribution of securities to unsecured creditors including extensive formulaic modeling and definition and testing thereof,  (c) tax effectiveness and (d) minimization of administrative expenses.

FTI reviewed and analyzed the adequacy of the Wind-Down Budget developed by the Debtors for purposes of funding future wind-down expenses after the Plan of Liquidation became effective. FTI worked with the Debtors to finalize the Plan and Disclosure statement documents and exhibits including the GUC Trust agreement to ensure that it provided an adequate framework for the Trust to function as a vehicle to resolve and allow disputed claims and make timely and cost effective distributions to the Unsecured Creditors.

FTI participated in the drafting and negotiations related to the implementation of the GUC and Avoidance Action Trust Agreements. FTI had extensive discussions with Committee Counsel, the Debtors and their advisors and other interested parties with respect to the structure, financing, governance and other key terms of the proposed trusts. FTI actively participated in discussions concerning the tax treatment for each of the proposed trusts. FTI reviewed and commented on the proposed D&O insurance policies proposed for the post-effective entities.

FTI developed the distribution formulas to be used to make distribution of New GM's securities

to allowed unsecured claims with input from Committee Counsel and from the Debtors. These

complicated formulas provide a clear methodology to effectuate the initial distribution of

securities and any subsequent distributions to allowed unsecured claim holders. The distribution

formulas take into account the amount of required reserves necessary to make future

distributions to potential allowed claims that remained disputed as of the Effective Date as well

as the potential for distribution of additional shares should allowed claims exceed $35 billion.

FTI prepared reports to the Committee addressing the issues above. These services were essential

for the Committee to have a clear understanding of the plan process, the proposed post-effective

trust structure and the mechanism to obtain distributions of New GM securities.

### 32. **PCD 17 Wind-Down Monitoring**

FTI performed due diligence with respect to the Debtors' proposed wind-down budget, transition

services agreement with New GM and wind-down procedures. FTI monitored the court docket

for any key filings as well as news articles that may impact the potential recoveries to unsecured

creditors. FTI participated in weekly conference calls with the Debtors' advisors to discuss

critical issues related to the progress of the wind-down process. FTI reviewed and analyzed

periodic reports prepared by the Debtors regarding the status of the wind-down activities. FTI

also analyzed and summarized the Monthly Operating Reports filed by the Debtors with the

Bankruptcy Court. FTI monitored the Debtors' wind-down activities and developed monthly

status update reports to the Committee. FTI expended significant time developing and presenting

numerous reports to the Committee that (a) highlighted the major developments in these cases,

(b) provided financial analyses on matters impacting recoveries to unsecured creditors and (c)

summarized complex issues facing the Debtors. These tasks are important to ensure that timely

progress is being made and to ensure that the value to the estate is being maximized.


33.      **PCD 18 Potential Avoidance Actions & Litigation**

FTI was involved with two significant litigations that the Committee is actively pursuing. FTI

provided advice to the Committee Counsel on the overall economic impact, assessing the

business and cost/benefit ramifications of pursuing the litigations and providing on-going general

financial and litigation consulting support services. FTI had numerous discussions with

Committee Counsel and other related and involved parties regarding the progression of these

actions.

These services were essential to ensure that recoveries to unsecured creditors were maximized.


34.      **PCD 19 Case Management**

FTI established project teams to facilitate engagement management.  Time expended in this

category includes developing and coordinating work plans and meetings to update FTI team

members on current case issues. These hours were limited and valuable to the overall project

planning of this engagement and ensured services were provided in the most coordinated, cost

efficient and effective manner.


35.      **PCD 20 General Meetings with Debtors & Debtors' Professionals**

FTI attended and participated in meetings and telephonic conferences with the Debtors and their

advisors regarding various case issues including the 363 transaction and sale of certain non-core

assets, cash flows, business plan, wind-down budget, environmental issues, proposed executory

contract and lease rejections, and proposed settlements with the Debtors' organized labor.  FTI updated the Committee on issues raised at these meetings and the potential impact on recoveries to unsecured creditors.

### 36.    PCD 21 General Meetings with UCC & UCC Counsel

FTI attended and participated in meetings and telephonic conferences with the Committee and Committee Counsel to provide updates on various case issues relating to the 363 transaction and sale of certain non-core assets, cash flows, business plan, wind-down budget, environmental issues, proposed contract and lease rejections, and employee compensation programs.  These meetings and calls were essential as they helped ensure the Committee was fully apprised of all issues and impact on recoveries.

### 37.    PCD 22 Meetings With Other Parties

FTI incurred significant time responding to inquiries from thousands of creditors regarding the progress of the case, the claims pool, their expected recoveries, and the plan process, timing and mechanism for distributions.

### 38.    PCD 24 Preparation of Fee Application

FTI expended necessary resources to ensure the timely filing of monthly fee statements in accordance with the Administrative Order Pursuant to 11 U.S.C. Sections 105(a) and 331 Establishing Procedures For Interim Compensation and Reimbursement of Expenses of Professionals dated August 7, 2009.  Time in this category includes preparing the Monthly Fee Statements for the fee periods of June 2009 through March 2011, as well as the time spent in

preparing the First, Second, Third, Fourth Interim and the Final Applications of FTI Consulting,

Inc. for Allowance of Compensation and for Reimbursement of Expenses.


39.     **PCD 32 Analysis of Insurance Coverage & Claims**

FTI, at the request of Committee Counsel, reviewed and analyzed all major insurance policies

covering MLC after the sale transaction was executed. FTI performed detailed diligence on

policies related to asbestos excess coverage to identify potential sources of recovery to unsecured

creditors. FTI assisted in reviewing and negotiating post emergence insurance coverage for the

trusts prior to the Effective Date when the policies were to go live.


**ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

40.     All of the services for which final compensation is sought herein were

rendered for and on behalf of the Committee, and not on behalf of any other entity.  FTI

respectfully submits that the professional services rendered were necessary, appropriate and have

contributed to the effective administration of the Debtors' chapter 11 cases and maximization of

value.  It is respectfully submitted that the services rendered to the Committee were performed

efficiently, effectively and economically.

41.     During the Application Period, FTI professionals expended an aggregate

of 22,709.5 hours in rendering services on behalf of the Committee for a total fee of

$18,495,125.25. FTI submits that its fee is reasonable for the work performed in these cases and

the results obtained.

42.     FTI incurred out-of-pocket expenses of (I) $25,582.37 in connection with

the rendition of the professional services described above during the Fifth Interim Period and (II)

$135,380.13 in connection with the rendition of the professional services described above during

Application Period. The actual expenses incurred in providing professional services were

necessary, reasonable, and justified under the circumstances to serve the needs of the Committee

in these Chapter 11 cases.


43.    FTI expended necessary resources to ensure the timely filing the March

2011 fee statement and Final Fee Application in accordance with the Administrative Order

Pursuant to 11 U.S.C. Sections 105(a) and 331 Establishing Procedures For Interim

Compensation and Reimbursement of Expenses of Professionals dated August 7, 2009.  FTI

expended 29.7 hours in April and estimated 26 hours in May to prepare the applications for a

total estimated fee of $25,681 (April fee of $11,811and estimated May fee of $13,870).

## APPLICATION

44.     This application is made by FTI in accordance with the Guidelines adopted by the Executive Office for the United States Trustees and the Administrative Order. Pursuant to this application, FTI has attached the following exhibits:

A.      <u>Exhibit A</u> -- Certification Under Guidelines for Fees and Disbursements for Professionals in Respect of Fourth Application of FTI Consulting, Inc;

B.      <u>Exhibit B</u> -- Retention Order dated August 18, 2009 authorizing the employment and retention of FTI Consulting, Inc. effective as of June 3, 2009 to provide professional services as Financial Advisors to the Official Committee of Unsecured Creditors;

C.      <u>Exhibit C</u> -- Summary of billings and collections for each of the months covered in the Application Period;

D.      <u>Exhibit D</u> -- Summary of billings and collections for each of the months covered in the Fifth Interim Period;

E.      <u>Exhibit E</u> -- Summary of time by professional for the Application Period;

F.      <u>Exhibit F</u> -- Summary of time by professional for the Fifth Interim Period;

G.      <u>Exhibit G</u> -- Summary of time by task code for the Application Period;

H.      <u>Exhibit H </u>-- Summary of time by task code for the Fifth Interim Period;

I.      <u>Exhibit I</u> -- Summary of out of pocket expenses by category incurred during the Application Period;

J.      <u>Exhibit J</u> -- Summary of out of pocket expenses by category incurred during the Fifth Interim Period;

K.      <u>Exhibit K</u> – Detail of expenses by category and professional incurred

during the Fifth Interim Period

## CONCLUSION

45.    No agreement or understanding exists between FTI and any other person

for the sharing of any compensation to be received for professional services rendered or to be

rendered in connection with these cases.

**WHEREFORE,** FTI respectfully requests that this Court enter an order:

    a.  approving the allowance of $18,495,125.25 for compensation for services rendered during the Application Period, and reimbursement of $135,380.13 for out of pocket expenses,

    b.  directing the payment of such fees by the Debtors, and

    c.  granting such other and further relief as this Court may deem just and proper.

Dated: New York, New York
       May 13, 2011

FTI Consulting, Inc.
Financial Advisors to the Official Committee
Of Unsecured Creditors

By: _____

Michael Eisenband
Senior Managing Director
Three Times Square
New York, NY 10036
(212) 499-3647

# EXHIBIT

## "A"
## Certification

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------- x
                                            :
In re:                                      :           Chapter 11 Case No.
                                            :
MOTORS LIQUIDATION COMPANY, et al.          :           09-50026 (REG)
    f/k/a General Motors Corp., et al.      :
                                            :
                    Debtors.                :           (Jointly Administered)
                                            :
----------------------------------------------------------- x
```

**CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS**
**FOR PROFESSIONALS IN RESPECT OF FINAL APPLICATION OF FTI**
**CONSULTING, INC., FINANCIAL ADVISOR TO**
**OFFICIAL COMMITTEE OF UNSECURED CREDITORS, FOR FINAL**
**ALLOWANCE OF COMPENSATION FOR SERVICES RENDERED AND**
**FOR REIMBURSEMENT OF EXPENSES DURING PERIOD FROM**
**JUNE 3, 2009 THROUGH AND INCLUDING MARCH 29,2011**

Pursuant to the Guidelines for Fees and Disbursements for Professionals in

Southern District of New York Bankruptcy Cases adopted by the Court on June 24, 1991 and

amended April 21, 1995 (together, the "Local Guidelines"), and the United States Trustee

Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed

Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "U.S. Trustee Guidelines" and,

together with the Local Guidelines, the "Guidelines"), the undersigned, a senior managing

director of FTI Consulting, Inc. ("FTI"), financial advisors to the Official Committee of

Unsecured Creditors (the "Committee") of Motors Liquidation Company and its affiliated

debtors in possession in the above-captioned cases (collectively, the "Debtors"), hereby certifies

with respect to FTI's final application for allowance of compensation for services rendered and

for reimbursement of expenses, dated May 13, 2011 (the "Application"), for the period of June 3,

2009  through and including March 29, 2011 (the "Application Period") as follows:

2

1.      I am the professional designated by FTI in respect of compliance with the

Guidelines.

2.      I make this certification in support of the Application, for final compensation

and reimbursement of expenses for the Application Period, in accordance with the Local

Guidelines.

3.      In respect of section B.1 of the Local Guidelines, I certify that:

        a.      I have read the Application.

        b.      To the best of my knowledge, information and belief formed after
reasonable inquiry, the fees and disbursements sought fall within
the Guidelines.

        c.      Except to the extent that fees or disbursements are prohibited by
the Guidelines, the fees and disbursements sought are billed at
rates in accordance with practices customarily employed by FTI
and generally accepted by FTI's clients.

        d.      In providing a reimbursable service, FTI does not make a profit on
that service, whether the service is performed by FTI in-house or
through a third party.

4.      In respect of section B.2 of the Local Guidelines, I certify that FTI has

provided statements of FTI's fees and disbursements previously accrued, by filing and serving

monthly statements in accordance with the Administrative Fee Order (as defined in the

Application).

5.      In respect of section B.3 of the Local Guidelines, I certify that copies of

the Application are being provided to (a) the Court; (b) the Office of the United States Trustee;

(c) counsel for the Debtors; (d) the Debtors; and (e) counsel for the Committee.

Dated:        New York, New York
              May 13, 2011

                        FTI Consulting, Inc.
                        Financial Advisors to the Official Committee
                        Of Unsecured Creditors

                        By:

                        Michael Eisenband
                        Senior Managing Director
                        Three Times Square
                        New York, NY  10036
                        (212) 499-3647

4

# EXHIBIT

## "B"
## Retention Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                    :
In re                                               :                  **Chapter 11 Case No.**
                                                    :
**MOTORS LIQUIDATION COMPANY**, *et al*.,           :                  **09-50026 (REG)**
            f/k/a **General Motors Corp.**, *et al*. :
                                                    :
                        **Debtors.**                :                  **(Jointly Administered)**
                                                    :
-----------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 331 ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS

Upon the Motion, dated July 21, 2009 (the "**Motion**"),[1] of Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(collectively, the "**Debtors**"), pursuant to sections 105(a) and 331 of title 11, United States Code

(the "**Bankruptcy Code**") and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure (the

**Bankruptcy Rules**"), for entry of an order authorizing the establishment of certain procedures

for interim compensation and reimbursement of professionals, all as more fully described in the

Motion; and due and proper notice of the Motion having been provided, and it appearing that no

other or further notice need be provided; and upon the objection of the St. Regis Mohawk Tribe

(the "**Tribe Objection**") and the State of New York on behalf of the New York State

Department of Environmental Conservation (the "**State Objection,**" and together with the Tribe

Objection, the "**Objections**") to the Motion; and upon the reply (the "**Reply**") of Debtors to the

Objections; and a hearing having been held to consider the relief requested in the Motion (the

"**Hearing**"); and upon the record of the Hearing, and all of the proceedings had before the Court;

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

(n)     Any Retained Professional who fails to timely file an Interim Fee Application seeking approval of compensation and expenses previously paid pursuant to a Monthly Statement shall be ineligible to receive further monthly payments of fees or reimbursement of expenses as provided herein until such Interim Fee Application is filed.

(o)     The pendency of an Interim Fee Application or a Court order that payment of compensation or reimbursement of expenses was improper as to a particular Monthly Statement shall not disqualify a Retained Professional from the future payment of compensation or reimbursement of expenses as set forth above, unless otherwise ordered by the Court.

(p)     Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein shall have any effect on this Court's interim or final allowance of compensation and reimbursement of expenses of any Retained Professionals.

(q)     The attorneys for the Creditors' Committee may, in accordance with the foregoing procedure for monthly compensation and reimbursement of professionals, collect and submit statements of expenses, with supporting vouchers, from members of the Creditors' Committee; *provided*, *however*, that these reimbursement requests must comply with this Court's Administrative Orders dated June 24, 1991 and April 21, 1995; and it is further

(r)     On or before the **30th day** of each month following the month for which compensation is sought, the Debtors will transmit a letter (the "**Monthly Letter**") to (i) the attorneys for the Tribe, McNamee, Lochner, Titus & Williams, P.C., 677 Broadway, Albany, New York 12207 (Attn: John J. Privitera Esq. and Jacob F. Lamme, Esq.) and (ii) the attorneys for the State of New York on behalf of the NYSDEC, New York State Department of Law Environmental Protection Bureau, The Capitol, Albany, New York 12224 (Attn: Maureen F. Leary, Assistant Attorney General) setting forth the aggregate fees and aggregate expenses for the period covered by the Monthly Letter for all retained professionals submitting Monthly Fee Statements.  The Tribe and NYSDEC shall have no right to object to or otherwise challenge the Monthly Statements.  The Monthly Letter is being provided for informational purposes only.

ORDERED that the Debtors shall include all payments to Retained Professionals on their monthly operating reports, detailed so as to state the amount paid to each Retained Professional; provided however, that amounts paid to Ordinary Course Professionals may be stated in the aggregate on any monthly operating reports; and it is further

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after

due deliberation and sufficient cause appearing therefor, it is

ORDERED that, for the reasons set forth on the record of the Hearing, the Motion

is granted as provided herein; and it is further

ORDERED that the Objections are hereby overruled in their entirety; provided,

however, that the Debtors shall provide the St. Regis Mohawk Tribe (the "**Tribe**") and the New

York State Department of Environmental Conservation (the "**NYSDEC**") with the Monthly

Letter (as defined below); and it is further

ORDERED that except as may otherwise be provided in Court orders authorizing

the retention of specific professionals, all professionals in this case may seek interim

compensation in accordance with the following procedure:

(a)     Except as provided in paragraph (b) below, on or before the **30th day** of each month following the month for which compensation is sought, each professional seeking compensation will serve a monthly statement (the "**Monthly Statement**"), by hand or overnight delivery, on (i) the Debtors, Motors Liquidation Company, 300 Renaissance Center, Detroit, Michigan 48265 (Attn: Ted Stenger); (ii) the attorneys for the Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Stephen Karotkin, Esq. and Joseph Smolinsky, Esq.); (iii) the attorneys for the Creditors' Committee, Kramer Levin Naftalis & Frankel LLP, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq. and Robert Schmidt, Esq.); and (iv) the Office of the United States Trustee, 33 Whitehall Street, 22nd Floor, New York, New York 10004 (Attn: Diana G. Adams, Esq.) (collectively, the "**Notice Parties**").

(b)     Each professional shall serve the Monthly Statement for the month of June 2009 on or before August 14, 2009.

(c)     The Monthly Statement shall not be filed with the Court and a courtesy copy need not be delivered to Chambers because this Motion is not intended to alter the fee application requirements outlined in sections 330

and 331 of the Bankruptcy Code.  Professionals are still required to serve and file interim and final applications for approval of fees and expenses in accordance with the relevant provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules for the Southern District of New York.

(d)      Each Monthly Statement must contain a list of the individuals and their respective titles (e.g., attorney, paralegal, etc.) who provided services during the period covered by the Monthly Statement, their respective billing rates, the aggregate hours spent by each individual, a reasonably detailed breakdown of the disbursements incurred (no professional should seek reimbursement of an expense that would otherwise not be allowed pursuant to the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330 dated January 30, 1996), and contemporaneously maintained time entries for each individual in increments of **tenths (1/10) of an hour** or as close thereto as practicable.[2]

(e)      Except as provided for in paragraph (f) below, each Notice Party shall have at least **15 days** after receipt of a Monthly Statement to review it and, if such party has an objection to the compensation or reimbursement sought in a particular Monthly Statement (an "**Objection**"), such party shall, by no later than the **45th day** following the month for which compensation is sought (the "**Objection Deadline**"), serve upon the professional whose Monthly Statement is objected to, and the other persons designated to receive statements in paragraph (a) above, a written "Notice of Objection to Fee Statement," setting forth the nature of the Objection and the amount of fees or expenses at issue.

(f)      Each Notice Party shall have at least **15 days** after receipt of the Monthly Statement for June 2009 to review it and, if such party has an Objection, such party shall, by no later than the **60th day** following the end of the month of June 2009, serve upon the professional whose Monthly Statement is objected to, and the other persons designated to receive statements in paragraph (a) above, a written "Notice of Objection to Fee Statement," setting forth the nature of the Objection and the amount of fees or expenses at issue.

(g)      At the expiration of the Objection Deadline, the Debtors shall promptly pay **80%** of the fees and **100%** of the expenses identified in each Monthly Statement to which no Objection has been served in accordance with paragraphs (e) and (f) above.

---

[2]      The Debtors may seek to modify this requirement in the retention application of certain professionals.

ORDERED that all time periods set forth in this Order shall be calculated in accordance with Rule 9006(a) of the Federal Rules of Bankruptcy Procedure; and it is further

ORDERED that any and all other and further notice of the relief requested in the Motion shall be, and hereby is, dispensed with and waived; <u>provided</u>, <u>however</u>, that the Debtors shall serve a copy of this Order on each of the Retained Professionals; and it is further

ORDERED that notice of hearings to consider Interim Fee Applications and final fee applications shall be limited to the Notice Parties and any party who files a notice of appearance and requests notice in these chapter 11 cases; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated:  New York, New York
       <u>**August 7, 2009**</u>


          <u>***s/ Robert E. Gerber***</u>
          United States Bankruptcy Judge

(h)     If the Debtors receive an Objection to a particular Monthly Statement, they shall withhold payment of that portion of the Monthly Statement to which the Objection is directed and promptly pay the remainder of the fees and disbursements in the percentages set forth in paragraph (g) above.

(i)     If an Objection is resolved and if the party whose Monthly Statement was the subject of the Objection serves on all Notice Parties a statement indicating that the Objection has been withdrawn and describing in detail the terms of the resolution, then the Debtors shall promptly pay, in accordance with paragraph (g) above, that portion of the Monthly Statement that was withheld is no longer subject to the Objection.

(j)     All Objections that are not resolved by the parties shall be preserved and presented to the Court at the next interim or final fee application hearing to be heard by the Court in accordance with paragraph (l) below.

(k)     The service of an Objection in accordance with paragraph (f) above shall not prejudice the objecting party's right to object to any fee application made to the Court in accordance with the Bankruptcy Code on any ground, whether raised in the Objection or not.  Furthermore, the decision by any party not to object to a Monthly Statement shall not be a waiver of any kind or prejudice that party's right to object to any fee application subsequently made to the Court in accordance with the Bankruptcy Code.

(l)     Commencing with the period ending September 30, 2009, and at four-month intervals thereafter (the "**Interim Fee Period**"), each of the retained professionals as set forth in paragraphs 3 and 4 herein (the "**Retained Professionals**") shall file with the Court an application (an "**Interim Fee Application**") for interim Court approval and allowance, pursuant to sections 330 and 331 of the Bankruptcy Code (as the case may be) of the compensation and reimbursement of expenses requested in the Monthly Statements served during such Interim Fee Period.  Each Retained Professional shall file its Interim Fee Application no later than **45 days** after the end of the Interim Fee Period.

(m)     The Debtors' attorneys shall obtain a date from the Court for the hearing to consider Interim Fee Applications for all Retained Professionals (the "**Interim Fee Hearing**").  At least **30 days** prior to the Interim Fee Hearing, the Debtors' attorneys shall file a notice with the Court, with service upon the U.S. Trustee and all Retained Professionals, setting forth the time, date, and location of the Interim Fee Hearing, the period covered by the Interim Fee Applications, and the Objection Deadline.  Any Retained Professional unable to file its own Interim Fee Application with the Court shall deliver to the Debtors' attorneys a fully executed copy with original signatures, along with service copies, three business days before the filing deadline.  The Debtors' attorneys shall file and serve such Interim Fee Application.

**EXHIBIT C**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**SUMMARY OF FEES & EXPENSES**
*FOR THE PERIOD JUNE 3, 2009 TO MARCH 29, 2011*

| | June 3, 2009 - September 30, 2009 | October 1, 2009 - January 31, 2010 | February 1, 2010 - May 31, 2010 (1) | June 1, 2010 - Septembr 30, 2010 | October 1, 2010 - March 29, 2011 [3] | Completion Fee | Total June 3, 2009 - March 31, 2011 |
|---|---|---|---|---|---|---|---|
| *Fees* | | | | | | | |
| Incurred & Billed | 4,435,036.25 | 2,066,666.00 | 2,000,000.00 | 2,000,000.00 | 2,993,423.00 | 5,000,000.00 | 18,471,947.81 |
| Allowed | 4,435,036.25 | 2,066,666.00 | 1,976,822.56 | 2,000,000.00 | n.a. | n.a. | n.a. |
| Paid | (3,991,532.63) | (1,859,999.40) | (1,779,140.30) | (1,800,000.00) | (2,000,000.00) | - | (11,430,672.33) |
| **Unpaid** | **443,503.63** | **206,666.60** | **197,682.26** | **200,000.00** | **993,423.00** | **5,000,000.00** | **7,041,275.49** |
| | | | | | | | |
| *Expenses* | | | | | | | |
| Incurred & Billed [2] | 74,500.84 | 18,756.18 | 11,713.21 | 4,827.53 | 25,582.37 | - | 135,380.13 |
| Allowed | 73,248.33 | 18,688.23 | 10,944.88 | 4,827.53 | n.a. | - | n.a. |
| Paid | (73,248.33) | (18,688.23) | (10,944.88) | (4,827.53) | (19,708.62) | - | (127,417.59) |
| Unpaid | - | - | - | - | 5,873.75 | - | 5,873.75 |
| | | | | | | | |
| *Total Fees and Expenses* | | | | | | | |
| Incurred & Billed | 4,508,284.58 | 2,085,354.23 | 1,987,767.44 | 2,004,827.53 | 3,019,005.37 | 5,000,000.00 | 18,605,239.15 |
| Paid | (4,064,780.96) | (1,878,687.63) | (1,790,085.18) | (1,804,827.53) | (2,019,708.62) | - | (11,558,089.92) |
| **Unpaid** | **$443,503.63** | **$206,666.60** | **$197,682.26** | **$200,000.00** | **$999,296.75** | **$5,000,000.00** | **$7,047,149.24** |

Notes:

(1) The Third Interim Fee Order has $27,177.44 of fees not yet allowed, pending the Court's ruling on the issue raised.

(2) After considering voluntary reduction.

(3) The March 2011 monthly fee has been pro-rated for 29 days out of 31 days in March. The period also includes time incurred for preparation of the March Fee Statement and this Final Fee Application.

**EXHIBIT D**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**SUMMARY OF FEES & EXPENSES BY MONTH**
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

|  | October 1, 2010 - October 31, 2010 | November 1, 2010 - November 30, 2010 | Decmeber 1, 2010 - December 31, 2010 | January 1, 2011 - January 31, 2011 | February 1, 2011 - February 28, 2011 | March 1, 2011 - March 29, 2011 [2] | Total October 1, 2010 - March 29, 2011 |
|---|---|---|---|---|---|---|---|
| ***Fees*** | | | | | | | |
| Incurred & Billed | 500,000.00 | 500,000.00 | 500,000.00 | 500,000.00 | 500,000.00 | 493,423.00 | 2,993,423.00 |
| Paid | (400,000.00) | (400,000.00) | (400,000.00) | (400,000.00) | (400,000.00) | - | (2,000,000.00) |
| **Unpaid** | **100,000.00** | **100,000.00** | **100,000.00** | **100,000.00** | **100,000.00** | **493,423.00** | **993,423.00** |
| | | | | | | | |
| ***Expenses*** | | | | | | | |
| Incurred & Billed [1] | 9,858.53 | 199.38 | 5,670.64 | 49.60 | 3,930.47 | 5,873.75 | 25,582.37 |
| Paid | (9,858.53) | ($199.38) | (5,670.64) | (49.60) | (3,930.47) | - | (19,708.62) |
| Unpaid | - | - | - | - | - | **5,873.75** | **5,873.75** |
| | | | | | | | |
| ***Total Fees and Expenses*** | | | | | | | |
| Incurred & Billed | 509,858.53 | 500,199.38 | 505,670.64 | 500,049.60 | 503,930.47 | 499,296.75 | 3,019,005.37 |
| Paid | (409,858.53) | (400,199.38) | (405,670.64) | (400,049.60) | (403,930.47) | - | (2,019,708.62) |
| **Unpaid** | **$100,000.00** | **$100,000.00** | **$100,000.00** | **$100,000.00** | **$100,000.00** | **$499,296.75** | **$999,296.75** |

Notes:
(1) After considering voluntary reduction.
(2) The March 2011 monthly fee has been pro-rated for 29 days out of 31 days in March. The period also includes time incurred for preparation of the March Fee Statement and this Final Fee Application.

EXHIBIT E

**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**SUMMARY OF HOURS BY PROFESSIONAL**
*FOR THE PERIOD JUNE 3, 2009 T0 MARCH 29, 2011* [(1)]

| Professional | Position | Total Hours |
|---|---|---|
| Barovick, Barry | Senior Managing Director | 8.5 |
| Beckman, David J | Senior Managing Director | 142.0 |
| Donoghue, Patrick | Senior Managing Director | 92.7 |
| Eisenband, Michael | Senior Managing Director | 768.8 |
| Granger, Simon | Senior Managing Director | 13.0 |
| Gray, DeLain E | Senior Managing Director | 147.5 |
| Griesmer, Paul | Senior Managing Director | 105.1 |
| Hershman, Richard | Senior Managing Director | 20.1 |
| Hewitt, Kevin | Senior Managing Director | 12.0 |
| Joffe, Steven | Senior Managing Director | 62.0 |
| Koskiewicz, John A. | Senior Managing Director | 22.0 |
| Phillips, Anna | Senior Managing Director | 3,238.6 |
| Selwood, Michael J | Senior Managing Director | 107.5 |
| Shapss-Herringer, Wendy | Senior Managing Director | 55.3 |
| Smalstig, David | Senior Managing Director | 173.3 |
| Star, Samuel | Senior Managing Director | 20.9 |
| Stern, Philip H. | Senior Managing Director | 3.5 |
| Tully, Conor | Senior Managing Director | 1,341.1 |
| Watson, Gregory | Senior Managing Director | 1.0 |
| Woodward, David | Senior Managing Director | 166.5 |
| Braun, Richard | Managing Director | 411.3 |
| Chin, Gregory | Managing Director | 188.7 |
| Cordasco, Michael | Managing Director | 1.2 |
| Cristiano, John | Managing Director | 18.6 |
| Diaz, Matthew | Managing Director | 3.8 |
| Eaton, Mark | Managing Director | 94.9 |
| Ellis, Melissa | Managing Director | 295.4 |
| Flaharty, William | Managing Director | 4.1 |
| Hain, Danielle | Managing Director | 8.4 |
| Hansen, Paul A | Managing Director | 419.9 |
| Jernigan, Steve | Managing Director | 28.7 |
| Michael, Matthew | Managing Director | 20.2 |
| Rosenberg, Jeffrey | Managing Director | 23.4 |
| Santambrogio, Juan | Managing Director | 3,702.6 |
| Siris, John | Managing Director | 1.1 |
| Siwinski, Steven | Managing Director | 330.1 |
| Dunec, Mark | Manager | 35.1 |
| Lake, Brett | Manager | 67.2 |
| Rizvi, Tabish | Manager | 73.3 |
| Booth, Roy | Director | 228.6 |
| Chalmers, Robert | Director | 4.2 |
| Coogan, Ronda | Director | 90.4 |
| Decaro, Peter Michael | Director | 1.9 |
| Eversmann, Thomas | Director | 23.5 |
| Fonda, Jeffrey | Director | 1.2 |
| Fosbinder, Brandon | Director | 7.5 |
| Gonzalez, Robert | Director | 69.5 |
| Hofstad, Ivo J | Director | 22.5 |
| Korn, Gary | Director | 544.5 |
| Manalo, Caroline | Director | 188.6 |
| Martz, Peter | Director | 46.5 |
| Noorigian, Andrew | Director | 191.5 |
| Nores, Juan | Director | 2,741.4 |
| Rickelton, Lisa | Director | 3.5 |
| Shah, Amit | Director | 51.5 |
| Aboona, Sana | Senior Consultant | 41.4 |
| Belczyk, Joshua | Senior Consultant | 7.0 |
| Bernsohn, Sean | Senior Consultant | 28.4 |
| Brokmeier, Christopher | Senior Consultant | 152.7 |
| Couladis, George | Senior Consultant | 128.6 |
| Crowder, Mark | Senior Consultant | 349.0 |
| Farber, Arnold | Senior Consultant | 3.7 |
| Graybeal, Brian | Senior Consultant | 59.4 |
| Heller, Justin | Senior Consultant | 254.7 |
| Joyce, Brendan | Senior Consultant | 14.1 |
| Kim, Jin Tae | Senior Consultant | 166.4 |

**EXHIBIT E**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**SUMMARY OF HOURS BY PROFESSIONAL**
*FOR THE PERIOD JUNE 3, 2009 T0 MARCH 29, 2011* [1]

| Professional | Position | Total Hours |
|---|---|---|
| Korsman, Lynn | Senior Consultant | 3.6 |
| Lyman, Scott | Senior Consultant | 2.0 |
| Miller, Amanda | Senior Consultant | 79.1 |
| Mischell, David | Senior Consultant | 53.7 |
| Nickerson, Kelly | Senior Consultant | 73.6 |
| Reeves, John | Senior Consultant | 117.8 |
| Rudder, Vanessa | Senior Consultant | 5.0 |
| Sharma, Manjunath | Senior Consultant | 143.2 |
| Terry, Adam | Senior Consultant | 85.3 |
| Walsh, Timothy | Senior Consultant | 264.8 |
| Argiriou, James | Consultant | 15.4 |
| Bhatia, Kunal | Consultant | 406.8 |
| Denyer, Emma | Consultant | 8.0 |
| Finley, Steven | Consultant | 261.1 |
| Henderson, Austin | Consultant | 130.9 |
| Kothari, Aamir | Consultant | 1.8 |
| Lloyd, Brian | Consultant | 9.0 |
| Lundsten, Kirsten | Consultant | 1,827.7 |
| O'Brien, Shawn | Consultant | 127.2 |
| Siskin, Adam | Consultant | 1.0 |
| Thompson, Kimberly | Consultant | 13.5 |
| Vinson, Kelsey | Consultant | 228.0 |
| Wicker, Raven | Consultant | 314.6 |
| Hellmund-Mora, Marili | Associate | 844.1 |
| Herold, Christopher | Associate | 8.0 |
| Johnston, Bonnie | Associate | 64.3 |
| Sutter, Justin | Associate | 43.9 |
| Bagai, Mehak | Intern | 10.3 |
| Ballesteros, Justin | Intern | 2.0 |
| Finan, Ciara | Intern | 33.4 |
| Schwarz, David | Intern | 4.3 |
| Stern, Jeremy | Intern | 20.0 |
| Less: 50% discount for non-working travel time | | (145.5) |
| **Total** | | **22,709.5** |

Notes:

(1) The March 2011 monthly fee has been pro-rated for 29 days out of 31 days in March. The period also includes time incurred for preparation of the March Fee Statement and this Final Fee Application.

**EXHIBIT F**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**SUMMARY OF HOURS BY PROFESSIONAL**
*FOR THE PERIOD OCTOBER 1, 2010 T0 MARCH 29, 2011* [1]

| Professional | Position | Total Hours |
|---|---|---|
| Phillips, Anna | Senior Managing Dir | 1,223.8 |
| Tully, Conor | Senior Managing Dir | 327.3 |
| Beckman, David J | Senior Managing Dir | 2.0 |
| Eisenband, Michael | Senior Managing Dir | 191.0 |
| Joffe, Steven | Senior Managing Dir | 10.5 |
| Shapss-Herringer, Wendy | Senior Managing Dir | 1.7 |
| Star, Samuel | Senior Managing Dir | 0.4 |
| Braun, Richard | Managing Director | 46.6 |
| Flaharty, William | Managing Director | 4.1 |
| Hansen, Paul A | Managing Director | 37.9 |
| Santambrogio, Juan | Managing Director | 1,072.1 |
| Hofstad, Ivo J | Director | 7.5 |
| Korn, Gary | Director | 107.0 |
| Nores, Juan | Director | 904.5 |
| Terry, Adam | Senior Consultant | 25.3 |
| Lundsten, Kirsten | Consultant | 687.0 |
| Hellmund-Mora, Marili | Associate | 73.0 |
| Johnston, Bonnie | Associate | 15.7 |
| **Total** | | **4,737.4** |

Notes:
(1) The March 2011 monthly fee has been pro-rated for 29 days out of 31 days in March. The period also includes time incurred for preparation of the March Fee Statement and this Final Fee Application.

**EXHIBIT G**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**SUMMARY OF HOURS BY PROJECT CODE**
*FOR THE PERIOD JUNE 3, 2009 T0 MARCH 29, 2011* [1]

| Project Code | Description | Total |
|---|---|---|
| 1 | Current Operating Results & Events | 1,351.1 |
| 2 | Cash & Liquidity Analysis | 106.6 |
| 3 | Financing Matters (DIP, Exit, Other) | 435.6 |
| 4 | Trade Vendor Issues | 289.2 |
| 5 | Real Estate Issues | 1,518.5 |
| 6 | Asset Sales | 1,183.4 |
| 7 | Analysis of Business Plan | 869.9 |
| 8 | Valuation and Related Matters | 2,101.0 |
| 9 | Analysis of Employee Comp Programs | 577.5 |
| 10 | Analysis of Tax Issues | 175.2 |
| 11 | Prepare for and Attend Court Hearings | 261.2 |
| 12 | Analysis of SOFAs & SOALs | 170.1 |
| 13 | Analysis of Other Miscellaneous Motions | 398.8 |
| 14 | Analysis of Claims/Liab Subject to Compromise | 2,705.3 |
| 15 | Analyze Interco Claims, RP Trans, SubCon | 284.0 |
| 16 | Analysis, Negotiate and Form of POR & DS | 2,223.3 |
| 17 | Wind Down Monitoring | 2,351.6 |
| 18 | Potential Avoidance Actions & Litigation | 655.1 |
| 19 | Case Management | 543.1 |
| 20 | General Mtgs with Debtor & Debtors' Prof | 622.0 |
| 21 | General Mtgs with UCC & UCC Counsel | 807.1 |
| 22 | Meetings with Other Parties | 560.7 |
| 23 | Firm Retention | 276.6 |
| 24 | Preparation of Fee Application | 1,240.9 |
| 25 | Travel Time [2] | 405.9 |
| 30 | Dealers | 47.7 |
| 31 | Non US Asset/Business Review | 45.1 |
| 32 | Analysis of Insurance Coverage & Claims | 318.1 |
| 33 | Response to Fee Examiner | 185.0 |
| **Total** | | **22,709.5** |

Notes:

(1) The March 2011 monthly fee has been pro-rated for 29 days out of 31 days in March. The period also includes time incurred for preparation of the March Fee Statement and this Final Fee Application.

(2) Travel time includes the 50% reduction for non-working travel time, where taken.

**EXHIBIT H**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**SUMMARY OF HOURS BY PROJECT CODE**
*FOR THE PERIOD OCTOBER 1, 2010 T0 MARCH 29, 2011* [1]

| Project Code | Description | Total |
|---|---|---|
| 1 | Current Operating Results & Events | 192.1 |
| 2 | Cash & Liquidity Analysis | 3.7 |
| 3 | Financing Matters (DIP, Exit, Other) | 160.7 |
| 5 | Real Estate Issues | 78.2 |
| 8 | Valuation and Related Matters | 460.4 |
| 10 | Analysis of Tax Issues | 73.8 |
| 11 | Prepare for and Attend Court Hearings | 156.9 |
| 13 | Analysis of Other Miscellaneous Motions | 1.5 |
| 14 | Analysis of Claims/Liab Subject to Compromise | 690.4 |
| 16 | Analysis, Negotiate and Form of POR & DS | 1,473.5 |
| 17 | Wind Down Monitoring | 387.2 |
| 18 | Potential Avoidance Actions & Litigation | 113.4 |
| 19 | Case Management | 11.5 |
| 20 | General Mtgs with Debtor & Debtors' Prof | 20.0 |
| 21 | General Mtgs with UCC & UCC Counsel | 118.5 |
| 22 | Meetings with Other Parties | 421.8 |
| 23 | Firm Retention | 1.4 |
| 24 | Preparation of Fee Application | 199.9 |
| 25 | Travel Time | 128.4 |
| 32 | Analysis of Insurance Coverage & Claims | 9.2 |
| 33 | Response to Fee Examiner | 34.9 |
| **Total** | | **4,737.4** |

Notes:
(1) The March 2011 monthly fee has been pro-rated for 29 days out of 31 days in March. The period also includes time incurred for preparation of the March Fee Statement and this Final Fee Application.

**EXHIBIT I**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**SUMMARY OF EXPENSES BY CATEGORY**
*FOR THE PERIOD JUNE 3, 2009 T0 MARCH 29, 2011*

| Expense Category | Total |
|---|---|
| Coach Class Airfare | - |
| Lodging | 36,353.38 |
| Business Meals | 6,011.01 |
| Ground Transportation | 26,130.55 |
| Other - Research/Postage | 5,219.94 |
| **Total Out-of-Pocket Expenses** | **$73,714.88** |

**EXHIBIT J**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**SUMMARY OF EXPENSES BY CATEGORY**
*FOR THE PERIOD OCTOBER 1, 2010 T0 MARCH 29, 2011*

| Expense Category | Total |
|---|---|
| Coach Class Airfare | $11,697.33 |
| Lodging | 8,781.72 |
| Business Meals | 636.46 |
| Ground Transportation | 4,281.21 |
| Other - Research/Postage | 185.65 |
| **Total Out-of-Pocket Expenses** | **$25,582.37** |

**EXHIBIT K**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**DETAIL OF EXPENSES**
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| | | *FOR THE PERIOD OCTOBER 1, 2010 TO OCTOBER 31, 2010* | | | | | | |
| Eisenband, Michael | 10/26/10 | Ground Transportation: Roundtrip subway to/from SDNY court for hearing. | $4.50 | | | | | $4.50 |
| Eisenband, Michael Total | | | 4.50 | | | | | 4.50 |
| Nores, Juan | 10/7/10 | Airfare: Coach - Atlanta - Detroit, 10/07/2010 - 10/07/2010. Meeting with GM. | | 635.40 | | | | 635.40 |
| Nores, Juan | 10/7/10 | Ground Transportation: Taxi from GM office to Detroit Airport. Meeting with GM. | 50.00 | | | | | 50.00 |
| Nores, Juan | 10/7/10 | Ground Transportation: Mileage $28.00, Parking $32.00, Tolls $1.00.  Meeting with GM. | 61.00 | | | | | 61.00 |
| Nores, Juan | 10/14/10 | Airfare - Coach/Economy - Atlanta - New York, 10/14/2010 - 10/14/2010.  Meeting with Morgan Stanley and JPMorgan re: GM. | | 771.40 | | | | 771.40 |
| Nores, Juan | 10/14/10 | Ground Transportation: Mileage $28, Parking $32, Toll $1.00. Meeting in NY with Morgan Stanley and JPMorgan re: GM. | 61.00 | | | | | 61.00 |
| Nores, Juan | 10/14/10 | Ground Transportation: Taxi from LGA airport to NY office. Meeting with Morgan Stanley and JPMorgan re: GM. | 43.32 | | | | | 43.32 |
| Nores, Juan | 10/14/10 | Ground Transportation: Taxi from NY office to LGA airport. Meeting with Morgan Stanley and JPMorgan re: GM. | 38.19 | | | | | 38.19 |
| Nores, Juan | 10/20/10 | Ground Transportation: Mileage $28, Parking $68.00, Toll $1.00. GM Disclosure Statement Hearing in NY. | 97.00 | | | | | 97.00 |

**EXHIBIT K**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**DETAIL OF EXPENSES**
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| Nores, Juan | 10/20/10 | Lodging in NY 10/22/2010 - 10/22/2010. GM Disclosure Statement Hearing. | | | 450.00 | | | 450.00 |
| Nores, Juan | 10/20/10 | Ground Transportation: Taxi from LGA airport to hotel. GM Disclosure Statement Hearing. | 38.91 | | | | | 38.91 |
| Nores, Juan | 10/20/10 | Meals: Travel Related. Dinner at airport for self. | | | | 11.95 | | 11.95 |
| Nores, Juan | 10/20/10 | Airfare: Coach from Atlanta to New York, 10/20/2010 - 10/21/2010. GM Disclosure Statement Hearing. | | 663.40 | | | | 663.40 |
| Nores, Juan | 10/21/10 | Meals: Travel Related. Breakfast for self while in NY for hearing. | | | | 9.35 | | 9.35 |
| Nores, Juan | 10/21/10 | Ground Transportation: Taxi from SDNY Court to NY office. GM Disclosure Statement Hearing. | 15.20 | | | | | 15.20 |
| Nores, Juan | 10/21/10 | Ground Transportation: Taxi from NY office to LGA Airport. GM Disclosure Statement Hearing. | 57.00 | | | | | 57.00 |
| Nores, Juan | 10/21/10 | Meals: Travel Related. Dinner at airport for self while in NY for statement hearing. | | | | 20.00 | | 20.00 |
| **Nores, Juan Total** | | | **461.62** | **2,070.20** | **450.00** | **41.30** | | **3,023.12** |
| Phillips, Anna | 10/1/10 | Travel Agent Fees flight to Detroit for GM Business Plan presentation. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 10/4/10 | Airfare: Coach - Atlanta-Detroit-Atlanta, 10/07/2010 - 10/08/2010. Travel for GM Business Plan presentation in Detroit. | | 635.40 | | | | 635.40 |
| Phillips, Anna | 10/7/10 | Ground Transportation: Taxi from Detroit Airport to GM. | 60.00 | | | | | 60.00 |
| Phillips, Anna | 10/7/10 | Meals: Travel Related. Breakfast for self while in Detroit for GM Business Plan presentation. | | | | 15.00 | | 15.00 |
| Phillips, Anna | 10/7/10 | Ground Transportation: Car Service from home to Atlanta Airport. Business Plan presentation in Detroit. | 115.07 | | | | | 115.07 |

EXHIBIT K
MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026
DETAIL OF EXPENSES
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| Phillips, Anna | 10/7/10 | Ground Transportation: Car Service from Atlanta Airport to | 115.07 | | | | | 115.07 |
| Phillips, Anna | 10/8/10 | Airfare: Coach Detroit to Atlanta 10/08/2010 - 10/08/2010. Flight change fee. GM Business Plan presentation. | | 150.00 | | | | 150.00 |
| Phillips, Anna | 10/11/10 | Airfare: Travel Agent Fees for flight to NY. GM Business Plan Presentation. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 10/11/10 | Airfare: Travel Agent Fees for flight to NY. GM Business Plan Presentation. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 10/9/10 | Ground Transportation: Taxi from Atlanta Airport to home. GM meetings in NY. | 70.00 | | | | | 70.00 |
| Phillips, Anna | 10/13/10 | Lodging in NY 09/13/2010 - 10/13/2010. Hotel fee. GM meeting with underwriters changed at short notice. | | | 417.45 | | | 417.45 |
| Phillips, Anna | 10/13/10 | Airfare: Travel Agent Fees for travel to Atlanta. GM Hearings in NY. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 10/15/10 | Airfare: Coach from Atlanta to LGA NY 10/20/2010 - 10/22/2010. GM Disclosure Statement Hearing. | | 869.20 | | | | 869.20 |
| Phillips, Anna | 10/15/10 | Airfare: Travel Agent Fees for travel to NY. GM Disclosure Statement Hearing. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 10/15/10 | Airfare: Travel Agent Fees for travel from NY to Atlanta. GM Disclosure Statement Hearing. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 10/20/10 | Ground Transportation: Car Service from home to Atlanta Airport. Travel to NY for GM hearings. | 124.78 | | | | | 124.78 |
| Phillips, Anna | 10/20/10 | Meals: Travel Related. Dinner for self while in NY for GM hearings. | | | | 20.00 | | 20.00 |
| Phillips, Anna | 10/21/10 | Meals - Travel Related. Breakfast for self while in NY for GM hearings. | | | | 15.00 | | 15.00 |
| Phillips, Anna | 10/21/10 | Ground Transportation: Taxi from hotel to GM Hearings. | 21.12 | | | | | 21.12 |
| Phillips, Anna | 10/21/10 | Meals - Travel Related - Lunch with T. Mayer, J. Sharrett, L. Macksoud (Kramer Levin). GM Hearing. | | | | 36.30 | | 36.30 |
| Phillips, Anna | 10/21/10 | Lodging: Hotel in NY 10/20/2010 - 10/22/2010. NY GM hearings. | | | 900.00 | | | 900.00 |
| Phillips, Anna | 10/22/10 | Ground Transportation: Taxi from hotel to LGA airport. NY GM hearings. | 34.34 | | | | | 34.34 |
| Phillips, Anna | 10/22/10 | Ground Transportation: Taxi from Atlanta Airport to home. GM meetings in NY. | 70.00 | | | | | 70.00 |
| **Phillips, Anna Total** | | | 610.38 | 1,846.60 | 1,317.45 | 86.30 | | 3,860.73 |
| Santambrogio, Juan | 10/14/10 | Meals: Travel Related - Breakfast at airport with self. Travel to NY for GM Meeting with IPO underwriters. | | | | 6.73 | | 6.73 |
| Santambrogio, Juan | 10/14/10 | Ground Transportation: Mileage $38.00, Parking $16.00, Toll $1.00. Travel to NY for GM Meeting with IPO underwriters. | 55.00 | | | | | 55.00 |
| Santambrogio, Juan | 10/14/10 | Travel Agent Fees Atlanta-NY. GM Meeting with IPO underwriters. | | 32.00 | | | | 32.00 |
| Santambrogio, Juan | 10/14/10 | Airfare - Coach Atlanta - LGA NY, 10/14/2010 - 10/14/2010. GM Meeting with IPO underwriters. | | 750.40 | | | | 750.40 |
| Santambrogio, Juan | 10/14/10 | Airfare: Travel Agent change fee for travel to NY for GM Meeting with IPO underwriters. | | 32.00 | | | | 32.00 |
| Santambrogio, Juan | 10/14/10 | Airfare: Travel Agent change fee for travel to NY for GM Meeting with IPO underwriters. | | 32.00 | | | | 32.00 |
| Santambrogio, Juan | 10/14/10 | Airfare: Travel Agent change fee for travel to NY for GM Meeting with IPO underwriters. | | 32.00 | | | | 32.00 |

EXHIBIT K
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
DETAIL OF EXPENSES
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| Santambrogio, Juan | 10/20/10 | Airfare: Travel Agent change fee  fro travel to NY GM Disclosure | | 32.00 | | | | 32.00 |
| Santambrogio, Juan | 10/20/10 | Ground Transportation: Mileage $38.00, Parking $48.00, Toll $1.00.  Travel to NY for GM Disclosure Statement hearing. | 87.00 | | | | | 87.00 |
| Santambrogio, Juan | 10/20/10 | Airfare - Coach/Economy Atlanta to LGA New York 10/20/2010 - 10/22/2010.  Travel for GM Disclosure Statement hearing. | | 869.20 | | | | 869.20 |
| Santambrogio, Juan | 10/20/10 | Lodging: Hotel in NY 10/20/2010 - 10/22/2010.  Travel for GM Disclosure Statement hearing in NY. | | | 917.94 | | | 917.94 |
| Santambrogio, Juan | 10/20/10 | Meals: Travel Related - Breakfast for self at airport.  Disclosure Statement hearing in NY. | | | | 6.84 | | 6.84 |
| Santambrogio, Juan | 10/21/10 | Meals: Travel Related: Breakfast for self.  GM - Disclosure Statement hearing in NY. | | | | 8.32 | | 8.32 |
| Santambrogio, Juan | 10/21/10 | Meals: Travel Related: Dinner w/self.  GM - Disclosure Statement hearing in NY. | | | | 20.00 | | 20.00 |
| Santambrogio, Juan | 10/22/10 | Meals - Travel Related - Breakfast for self at airport.  GM - Disclosure Statement hearing in NY. | | | | 7.62 | | 7.62 |
| Santambrogio, Juan | 10/22/10 | Ground Transportation: Taxi from hotel to Airport.  GM Disclosure Statement hearing in NY. | 43.59 | | | | | 43.59 |
| **Santambrogio, Juan Total** | | | 185.59 | 1,779.60 | 917.94 | 49.51 | | 2,932.64 |
| Tully, Conor | 9/29/10 | Postage Office of the U.S. Trustee Diana G. Adams, Esq. | | | | | 7.03 | 7.03 |
| Tully, Conor | 9/29/10 | Postage Kramer Levin Naftalis & Franke Thomas Moers Maye | | | | | 7.03 | 7.03 |
| Tully, Conor | 9/29/10 | Postage Weil Gotshal & Manges LLP S. Karotkin & J. | | | | | 7.03 | 7.03 |
| Tully, Conor | 9/29/10 | Postage Motors Liquidation Company Mr. Ted Stenger. | | | | | 7.45 | 7.45 |
| Tully, Conor | 10/21/10 | Ground Transportation: Subway roundtrip to/from Office to SDNY Court. | 4.50 | | | | | 4.50 |
| Tully, Conor | 10/26/10 | Ground Transportation: Subway roundtrip to/from SDNY court. | 4.50 | | | | | 4.50 |
| **Tully, Conor Total** | | | 9.00 | 0.00 | 0.00 | 0.00 | 28.54 | 37.54 |
| **Grand Total** | | | **1,271.09** | **5,696.40** | **2,685.39** | **177.11** | **28.54** | **9,858.53** |

**EXHIBIT K**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**DETAIL OF EXPENSES**
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | ***FOR THE PERIOD NOVEMBER 1, 2010 TO NOVEMBER 30, 2010*** | | | | | | |
| Phillips, Anna | 10/25/10 | Ground Transportation: Taxi from LGA to FTI Office for GM Disclosure Statement Hearing. | 50.00 | | | | | 50.00 |
| Phillips, Anna | 11/23/10 | Ground Transportation: Taxi from FTI Office to Court for GM hearing. | 18.00 | | | | | 18.00 |
| Phillips, Anna Total | | | 68.00 | | | | 0.00 | 68.00 |
| Tully, Conor | 10/25/10 | Ground Transportation: Taxi from office to home while working late re: GM matter. | 131.38 | | | | | 131.38 |
| Tully, Conor Total | | | 131.38 | | | | 0.00 | 199.38 |
| **Grand Total** | | | **199.38** | **0.00** | **0.00** | **0.00** | **0.00** | **199.38** |

**EXHIBIT K**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**DETAIL OF EXPENSES**
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| | | ***FOR THE PERIOD DECEMBER 1, 2010 TO DECEMBER 31, 2010*** | | | | | | |
| Phillips, Anna | 12/1/10 | Ground Transportation: taxi from ATL airport to home - flight was cancelled due to inclement weather conditions. | 90.00 | | | | | 90.00 |
| Phillips, Anna | 12/1/10 | Travel Agent Fees. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 12/3/10 | Travel Agent Fees - airfare to NY for GM Hearing. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 12/3/10 | Airfare: Coach Atlanta to NY, 12/15/2010 - 12/16/2010. GM Hearing. | | 811.46 | | | | 811.46 |
| Phillips, Anna | 12/3/10 | Travel Agent Fees - airfare to NY for GM Hearing. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 12/3/10 | Airfare: Coach roundtrip Atlanta to NY 12/06/2010 - 12/08/2010. GM meetings. | | 820.60 | | | | 820.60 |
| Phillips, Anna | 12/6/10 | Lodging in NY - 12/06/2010 - 12/06/2010. GM meetings. | | | 543.67 | | | 543.67 |
| Phillips, Anna | 12/6/10 | Meals - Travel related - Dinner for self. | | | | 20.00 | | 20.00 |
| Phillips, Anna | 12/6/10 | Lodging in NY - 12/13/2010 - 12/13/2010. GM meetings. | | | 543.67 | | | 543.67 |
| Phillips, Anna | 12/6/10 | Ground Transportation: Car Service from home to Atlanta Airport for flight to NY. GM meetings. | 125.86 | | | | | 125.86 |
| Phillips, Anna | 12/7/10 | Ground Transportation: Taxi from GM office to hotel while in NY for GM court hearing. | 8.80 | | | | | 8.80 |
| Phillips, Anna | 12/7/10 | Meals - Travel related - Dinner for self. GM meetings. | | | | 20.00 | | 20.00 |
| Phillips, Anna | 12/8/10 | Ground Transportation: Taxi from hotel to airport while attending GM court hearing. | 38.19 | | | | | 38.19 |
| Phillips, Anna | 12/8/10 | Ground Transportation: Car Service from home to Atlanta airport for GM meetings. | 115.07 | | | | | 115.07 |
| Phillips, Anna | 12/10/10 | Ground Transportation: Car Service from home to Atlanta airport for GM Meetings. | 125.86 | | | | | 125.86 |
| Phillips, Anna | 12/10/10 | Ground Transportation: Car Service from LGA to office for GM meetings. | 50.00 | | | | | 50.00 |
| Phillips, Anna | 12/15/10 | Ground Transportation: Taxi from GM office to court for GM hearings. | 20.12 | | | | | 20.12 |
| Phillips, Anna | 12/15/10 | Meals - Travel Related. Breakfast for self. GM meetings. | | | | 11.96 | | 11.96 |
| Phillips, Anna | 12/16/10 | Lodging in NY - 12/15/2010 - 12/16/2010. GM fee hearing | | | 440.41 | | | 440.41 |
| Phillips, Anna | 12/16/10 | Ground Transportation: Taxi from Atlanta airport to home from attending GM meetings in NY. | 90.00 | | | | | 90.00 |
| Phillips, Anna | 12/17/10 | Ground Transportation: Car Service from home to ATL Airport to attend GM Meetings. | 125.86 | | | | | 125.86 |
| **Phillips, Anna Total** | | | 789.76 | 1,728.06 | 1,527.75 | 51.96 | 0.00 | 4,097.53 |
| Santambrogio, Juan | 12/1/10 | Meals - Travel Related. Breakfast for self. GM meetings. | | | | 9.07 | | 9.07 |
| Santambrogio, Juan | 12/1/10 | Travel Agent Fees - Airfare. GM - Disclosure Statement Hearing. | | 32.00 | | | | 32.00 |
| Santambrogio, Juan | 12/1/10 | Ground Transportation: Taxi from LGA Airport to Hotel. GM hearing. | 38.12 | | | | | 38.12 |
| Santambrogio, Juan | 12/1/10 | Ground Transportation: Roundtrip from home to airport. Mileage $38.00, Tolls $1.00, Parking $32.00. GM meetings. | 71.00 | | | | | 71.00 |
| Santambrogio, Juan | 12/1/10 | Airfare: Coach - 12/01/2010 - 12/02/2010 - Atlanta - New York. GM - Disclosure Statement Hearing. | | 815.20 | | | | 815.20 |
| Santambrogio, Juan | 12/2/10 | Ground Transportation: Taxi from FTI office to court - GM hearing. | 18.38 | | | | | 18.38 |
| Santambrogio, Juan | 12/2/10 | Meals - Travel Related. Dinner for self. GM meetings. | | | | 20.00 | | 20.00 |
| Santambrogio, Juan | 12/2/10 | Meals - Travel Related. Breakfast for self. GM meetings. | | | | 8.10 | | 8.10 |
| Santambrogio, Juan | 12/2/10 | Ground Transportation: Taxi from court to LaGuardia - GM hearing. | 49.35 | | | | | 49.35 |
| Santambrogio, Juan | 12/2/10 | Lodging in NY 12/01/2010 - 12/02/2010. GM hearing. | | | 477.53 | | | 477.53 |
| **Santambrogio, Juan Total** | | | 176.85 | 847.20 | 477.53 | 37.17 | 0.00 | 1,538.75 |
| Tully, Conor | 11/29/10 | Postage Office of the U.S. Trustee. | | | | | 7.13 | 7.13 |
| Tully, Conor | 11/29/10 | Postage Kramer Levin Naftalis & Frankel LLP. | | | | | 9.84 | 9.84 |
| Tully, Conor | 11/29/10 | Postage Motors Liquidation Company Mr. Ted Stenger. | | | | | 7.55 | 7.55 |
| Tully, Conor | 11/29/10 | Postage Weil Gotshal & Manges LLP . | | | | | 9.84 | 9.84 |
| **Tully, Conor Total** | | | 0.00 | 0.00 | 0.00 | 0.00 | 34.36 | 34.36 |
| **Grand Total** | | | 966.61 | 2,575.26 | 2,005.28 | 89.13 | 34.36 | 5,670.64 |

**EXHIBIT K**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**DETAIL OF EXPENSES**
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|

***FOR THE PERIOD JANUARY 1, 2011 TO JANUARY 31, 2011***

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| Phillips, Anna | 12/7/10 | Taxi from office to  Courtroom for GM Hearing. | 17.60 | | | | | |
| Phillips, Anna | 1/7/11 | Travel Agent Fees for the change in flights for December 7, 2010 trip to NY for GM hearing. | 32.00 | | | | | |
| Phillips, Anna Total | | | 49.60 | | | | | |
| **Grand Total** | | | **49.60** | **0.00** | **0.00** | **0.00** | **0.00** | **49.60** |

**EXHIBIT K**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**DETAIL OF EXPENSES**
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |
| | | ***FOR THE PERIOD FEBRUARY 1, 2011 TO FEBRUARY 28, 2011*** | | | | | | |
| Phillips, Anna | 1/25/11 | Postage Kramer Levin Naftalis & Frankel LLP | | | | | 19.73 | 19.73 |
| Phillips, Anna | 1/26/11 | Airfare Coach roundtrip ATL - LGA - ATL. Travel to NY for GM Hearing. | | 820.60 | | | | 820.60 |
| Phillips, Anna | 1/26/11 | Travel Agent Fees - Anna Phillips.  Travel to NY for GM hearing. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 1/31/11 | Meals - Breakfast with self while traveling in NY for GM hearing. | | | | 16.24 | | 16.24 |
| Phillips, Anna | 2/2/11 | Taxi from LGA Airport to FTI Office in NY for GM Hearing. | 50.00 | | | | | 50.00 |
| Phillips, Anna | 2/2/11 | Meals - Dinner w/self while traveling in NY for GM Hearing | | | | 20.00 | | 20.00 |
| Phillips, Anna | 2/3/11 | Lodging - Hotel in NY (01/31/2011 - 02/03/2011) while in NY for GM Hearing | | | 221.34 | | | 221.34 |
| Phillips, Anna | 2/4/11 | Car Service  from home to ATL airport for travel to NY for GM Hearing | 116.10 | | | | | 116.10 |
| Phillips, Anna | 2/17/11 | Airfare Coach roundtrip ATL - LGA- NY.  Travel to NY for GM Hearings | 826.00 | | | | | 826.00 |
| Phillips, Anna | 2/17/11 | Travel Agent Fees - Anna Phillips.  Travel agent fees for trip to NY for GM hearings. | 32.00 | | | | | 32.00 |
| Phillips, Anna | 2/28/11 | Meals - Breakfast with self on way to NY for GM hearings. | | | | 10.36 | | 10.36 |
| Phillips, Anna | 2/28/11 | Lodging - Hotel in NY (02/28/2011 - 03/04/2011) while in NY for GM hearings. | | | 337.13 | | | 337.13 |
| Phillips, Anna | 2/28/11 | Meals - Dinner with self while in NY for GM hearings. | | | | 20.00 | | 20.00 |
| Phillips, Anna Total | | | 1,024.10 | 852.60 | 558.47 | 66.60 | 19.73 | 2,521.50 |
| Santambrogio, Juan | 2/2/11 | Meals - Breakfast with self in NY for GM Hearings. | | | | 6.25 | | 6.25 |
| Santambrogio, Juan | 2/2/11 | Meals - Dinner with self in NY for GM Hearings. | | | | 20.00 | | 20.00 |
| Santambrogio, Juan | 2/3/11 | Ground Transportation:  Mileage to airport. Travel to NY for GM Hearing. | 38.76 | | | | | 38.76 |
| Santambrogio, Juan | 2/3/11 | Taxi -from hotel to Court for GM Hearing. | 21.84 | | | | | 21.84 |
| Santambrogio, Juan | 2/3/11 | Travel Agent Fees - Juan Santambrogio.  GM Hearing. | | 32.00 | | | | 32.00 |
| Santambrogio, Juan | 2/3/11 | Airfare - Coach roundtrip ATL - LGA - ATL.  Travel to NY for GM Hearing. | | 763.90 | | | | 763.90 |
| Santambrogio, Juan | 2/3/11 | Lodging - Hotel in NY (02/02/2011 - 02/03/2011) while in NY for GM Hearing. | | | 352.95 | | | 352.95 |
| Santambrogio, Juan | 2/3/11 | Taxi - from Court - LaGuardia airport.  Travel to NY for GM Hearing. | 39.60 | | | | | 39.60 |
| Santambrogio, Juan | 2/3/11 | Ground Transportation: Parking at airport ($57.00) and Toll ($1.00). | 58.00 | | | | | 58.00 |
| Santambrogio, Juan Total | | | 158.20 | 795.90 | 352.95 | 26.25 | 0.00 | 1,333.30 |
| Tully, Conor | 1/28/11 | Postage Office of the U.S. Trustee. | | | | | 7.42 | 7.42 |
| Tully, Conor | 1/28/11 | Postage Motors Liquidation Company. | | | | | 18.88 | 18.88 |
| Tully, Conor | 1/28/11 | Postage Weil Gotshal & Manges LLP | | | | | 10.42 | 10.42 |
| Tully, Conor | 1/28/11 | Postage Kramer Levin Naftalis & Frankel LLP | | | | | 10.42 | 10.42 |
| Tully, Conor | 2/23/11 | Postage Office of the U.S. Trustee | | | | | 7.49 | 7.49 |
| Tully, Conor | 2/23/11 | Postage Weil Gotshal & Manges LLP | | | | | 10.52 | 10.52 |
| Tully, Conor | 2/23/11 | Postage Kramer Levin Naftalis & Frankel LLP | | | | | 10.52 | 10.52 |
| Tully, Conor Total | | | 0.00 | 0.00 | 0.00 | 0.00 | 75.67 | 75.67 |
| **Grand Total** | | | **1,182.30** | **1,648.50** | **911.42** | **92.85** | **95.40** | **3,930.47** |

**EXHIBIT K**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**DETAIL OF EXPENSES**
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 30, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|

*FOR THE PERIOD MARCH 1, 2011 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| Phillips, Anna | 3/1/11 | Lodging: hotel in NY 02/28/2011 - 03/04/2011. GM hearings. | | | 337.13 | | | 337.13 |
| Phillips, Anna | 3/1/11 | Taxi from FTI NY office to Court for GM hearings. | 22.25 | | | | | 22.25 |
| Phillips, Anna | 3/1/11 | Taxi from LGA airport to FTI office to attend GM hearings. | 50.00 | | | | | 50.00 |
| Phillips, Anna | 3/1/11 | Meals: Breakfast with self while traveling to NY for GM hearings. | | | | 15.00 | | 15.00 |
| Phillips, Anna | 3/1/11 | Meals: Dinner with self while traveling to NY for GM hearings. | | | | 20.00 | | 20.00 |
| Phillips, Anna | 3/2/11 | Meals: Breakfast with self while traveling to NY for GM hearings. | | | | 15.00 | | 15.00 |
| Phillips, Anna | 3/2/11 | Meals: Dinner with self while traveling to NY for GM hearings. | | | | 20.00 | | 20.00 |
| Phillips, Anna | 3/3/11 | Lodging: hotel in NY 02/28/2011 - 03/04/2011. GM hearings. | | | 337.13 | | | 337.13 |
| Phillips, Anna | 3/3/11 | Lodging: hotel in NY 02/28/2011 - 03/04/2011. GM hearings | | | 337.13 | | | 337.13 |
| Phillips, Anna | 3/3/11 | Meals: Breakfast with self while traveling to NY for GM hearings. | | | | 15.00 | | 15.00 |
| Phillips, Anna | 3/3/11 | Meals: Dinner with self while traveling to NY for GM hearings. | | | | 20.00 | | 20.00 |
| Phillips, Anna | 3/3/11 | Telephone - Anna Phillips. Hotel phone charges while in NY for GM hearings. | | | | | 8.40 | 8.40 |
| Phillips, Anna | 3/3/11 | Airfare - Coach LGA - ATL, 02/28/2011 - 03/04/2011. Fare difference in flight change. | | 9.00 | | | | 9.00 |
| Phillips, Anna | 3/3/11 | Travel Agent Fees for flight change. | | 32.00 | | | | 32.00 |
| Phillips, Anna | 3/4/11 | Taxi from FTI office to NY Court for GM hearings | 10.40 | | | | | 10.40 |
| Phillips, Anna | 3/4/11 | Meals: Dinner with self while traveling to NY for GM hearings. | | | | 18.27 | | 18.27 |
| Phillips, Anna | 3/4/11 | Meals: Breakfast with self while traveling to NY for GM hearings. | | | | 14.40 | | 14.40 |
| Phillips, Anna | 3/4/11 | Taxi  from ATL Airport to home while traveling to NY for GM hearings. | 80.00 | | | | | 80.00 |
| Phillips, Anna | 3/4/11 | Car service from home to ATL Airport  to attend GM hearings. | 80.00 | | | | | 80.00 |
| Phillips, Anna | 3/4/11 | Taxi from Midtown NY to LGA Airport while traveling to NY for GM hearings. | 40.00 | | | | | 40.00 |
| Phillips, Anna | 3/15/11 | Taxi from office to court for GM hearings. | 9.20 | | | | | 9.20 |
| **Phillips, Anna Total** | | | **291.85** | **41.00** | **1,011.39** | **137.67** | **8.40** | **1,490.31** |
| Santambrogio, Juan | 3/1/11 | Taxi from LGA to FTI Office while traveling to NY for GM hearing. | 39.12 | | | | | 39.12 |
| Santambrogio, Juan | 3/1/11 | Meals: Breakfast with self while traveling to NY for GM hearings. | | | | 6.73 | | 6.73 |
| Santambrogio, Juan | 3/1/11 | Mileage $38.76, Tolls $1.00.  Travel to NY for GM Confirmation hearing | 39.76 | | | | | 39.76 |
| Santambrogio, Juan | 3/1/11 | Airfare - Coach ATL - LGA, 03/01/2011 - 03/04/2011.  GM Confirmation hearing | | 523.60 | | | | 523.60 |
| Santambrogio, Juan | 3/1/11 | Travel Agent Fees travel to NY for GM Confirmation hearing | | 32.00 | | | | 32.00 |
| Santambrogio, Juan | 3/1/11 | Taxi from Weil Office to hotel while in NY for GM hearing. | 7.90 | | | | | 7.90 |
| Santambrogio, Juan | 3/1/11 | Lodging hotel in NY 03/01/2011 - 03/04/2011. GM Confirmation hearing. | | | 1,153.74 | | | 1,153.74 |
| Santambrogio, Juan | 3/1/11 | Meals: Dinner with self while in NY for GM Confirmation hearing. | | | | 20.00 | | 20.00 |
| Santambrogio, Juan | 3/2/11 | Meals: Dinner self while in NY for GM Confirmation hearing. | | | | 20.00 | | 20.00 |
| Santambrogio, Juan | 3/3/11 | Change Fees. Travel to NY for GM Confirmation hearing. | | 263.57 | | | | 263.57 |
| Santambrogio, Juan | 3/3/11 | Meals: Breakfast self while in NY for GM Confirmation hearing. | | | | 8.42 | | 8.42 |
| Santambrogio, Juan | 3/3/11 | Taxi from office to  Court for GM confirmation hearing. | 20.30 | | | | | 20.30 |
| Santambrogio, Juan | 3/3/11 | Meals: Dinner self while traveling to NY for GM Confirmation hearing | | | | 20.00 | | 20.00 |
| Santambrogio, Juan | 3/3/11 | Parking ($64) and Toll ($1.00) at airport travel to NY for confirmation hearing. | 65.00 | | | | | 65.00 |
| Santambrogio, Juan | 3/3/11 | Meals: Breakfast with self while in NY for GM Confirmation hearing | | | | 12.71 | | 12.71 |
| Santambrogio, Juan | 3/3/11 | Travel Agent Fees. Travel to NY for GM Confirmation hearing. | | 32.00 | | | | 32.00 |
| Santambrogio, Juan | 3/4/11 | Taxi from Gibson Dunn Office to LGA in NY for GM Confirmation hearing. | 22.70 | | | | | 22.70 |
| Santambrogio, Juan | 3/4/11 | Meals: Dinner with self while in NY for GM Confirmation hearing | | | | 15.43 | | 15.43 |

**EXHIBIT K**
**MOTORS LIQUIDATION COMPANY, CASE NO. 09-50026**
**DETAIL OF EXPENSES**
*FOR THE PERIOD OCTOBER 1, 2010 TO MARCH 29, 2011*

| Professional | Date | Description | Ground Transportation | Airfare | Lodging | Business Meals | Other | Total |
|---|---|---|---|---|---|---|---|---|
| Santambrogio, Juan | 3/4/11 | Meals:  Breakfast self while in NY for GM Confirmation hearing | | | | 6.25 | | 6.25 |
| Santambrogio, Juan | 3/29/11 | Travel Agent Fees.  Travel to NY to attend GM Court hearing on 3/29/2011. | | 32.00 | | | | 32.00 |
| Santambrogio, Juan | 3/29/11 | Airfare - Coach ATL - LGA, 03/28/2011 - 03/30/2011.  Attend GM Court hearing. | | 853.00 | | | | 853.00 |
| Santambrogio, Juan | 3/29/11 | Meals: Dinner while traveling to NY for GM hearing. | | | | 17.58 | | 17.58 |
| Santambrogio, Juan | 3/29/11 | Lodging hotel in NY 03/28/2011 - 03/30/2011.  Attend GM Court hearing. | | | 1,014.50 | | | 1,014.50 |
| Santambrogio, Juan | 3/29/11 | Meals: Breakfast with self while traveling in NY for GM hearing. | | | | 12.58 | | 12.58 |
| Santambrogio, Juan | 3/29/11 | Parking at airport.  Travel to NY for GM hearing. | 32.00 | | | | | 32.00 |
| Santambrogio, Juan | 3/29/11 | Taxi from LGA to hotel while in NY for GM hearing. | 34.92 | | | | | 34.92 |
| Santambrogio, Juan | 3/29/11 | Taxi from office to Court to attend hearing. | 19.92 | | | | | 19.92 |
| Santambrogio, Juan | 3/29/11 | Parking at airport.  Travel to NY to attend GM Court hearing. | 38.76 | | | | | 38.76 |
| Santambrogio, Juan Total | | | 320.38 | 1,736.17 | 2,168.24 | 139.70 | 0.00 | 4,364.49 |
| Tully, Conor | 2/23/11 | Postage Motors Liquidation Company. | | | | | 18.95 | 18.95 |
| Tully, Conor Total | | | 0.00 | 0.00 | 0.00 | 0.00 | 18.95 | 18.95 |
| **Grand Total** | | | **612.23** | **1,777.17** | **3,179.63** | **277.37** | **27.35** | **5,873.75** |
| **Total Interim** | | | **$4,281.21** | **$11,697.33** | **$8,781.72** | **$636.46** | **$185.65** | **$25,582.37** |