Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- x
                        :

In re:                         :     Chapter 11
                         :

MOTORS LIQUIDATION COMPANY, *et al.,* :     Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*     (Jointly Administered)
                         :

           Debtors.       :     Honorable Robert E. Gerber
                         :
-------------------------------------------------------- x

## SUMMARY SHEET PURSUANT TO UNITED STATES TRUSTEE
## GUIDELINES FOR REVIEWING APPLICATIONS FILED UNDER
## 11 U.S.C. § 330 FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

### FINAL FEE APPLICATION

| | |
|---|---|
| Name of Applicants: | Brady C. Williamson, Fee Examiner |
| | Godfrey & Kahn, S.C., Counsel to the |
| | Fee Examiner |
| Time Period: | December 28, 2009 through March 29, 2011 |
| Fifth and Sixth Interim Periods:[1] | Total Fees Requested:  $363,138.25 |
| | (October 1, 2010 through March 29, 2011) |
| | Total Expenses Requested:  $43,833.74 |
| | (November 1, 2010 through March 29, 2011) |
| Entire Retention Period: | Total Fees Requested:  $1,475,820.50 |
| | Total Expenses Requested:  $108,988.93 |

---

[1] This application includes fees and expenses not previously requested for the fifth interim period (October 1, 2010 through January 31, 2011) and the sixth interim period (February 1, 2011 through March 29, 2011, the Confirmation Date).  All of the Retained Professionals, the Fee Examiner and his counsel have, by consensus, incorporated the fifth and sixth interim periods (October 1, 2010 through March 29, 2011) in their final fee applications.

Prior Applications:

| Date Application Filed | Docket No. | Compensation Period | Fees Requested | Expenses Requested | Fees Allowed | Expenses Allowed | Holdback |
|---|---|---|---|---|---|---|---|
| 9/27/2010 | 7134 | December 28, 2009 through May 31, 2010 | $673,271.50 | $59,699.73 | $673,271.50 | $59,699.73 | $67,327.15 |
| 11/16/2010 | 7798 | June 1, 2010 through September 30, 2010 | $439,410.75 | $5,455.46 | $439,410.75 | $5,455.46 | $43,941.08 |

Interim Monthly Payments from Debtors:     None

Payments actually received pursuant to court order:  $1,066,569.21 (fees and expenses)

### Summary of Professionals and Paraprofessionals Providing Services

**Fifth and Sixth Interim Periods**
**October 1, 2010 through March 29, 2011**

| Name of Professional | Practice Group(s) and Year of Attorney Admission | | Hourly Billing Rate | Total Billed Hours | Total Proposed Compensation |
|---|---|---|---|---|---|
| **Shareholders** | | | | | |
| Brady C. Williamson | Bankruptcy | 1975 | $495 | 115.15 | $56,999.25 |
| Katherine Stadler | Litigation/Bankruptcy | 1997 | $410 | 171.2 | $70,192.00 |
| Eric J. Wilson | Litigation | 1994 IL 2003 WI | $390 | 86.3 | $33,657.00 |
| **Special Counsel** | | | | | |
| Carla O. Andres | Bankruptcy | 1989 OH 1993 WI | $350 | 223.7 | $78,295.00 |
| **Associates** | | | | | |
| Monica Santa Maria | Litigation | 2008 | $205 | 109.7 | $22,488.50 |
| Peggy L. Heyrman | Bankruptcy | 2009 | $205 | 83.5 | $17,117.50 |
| **Paraprofessionals** | | | | | |
| Jamie Kroening | Research | | $110 | .9 | $99.00 |
| Jill Bradshaw | Research | | $170 | 5.0 | $850.00 |
| Zerithea G. Raiche | Bankruptcy paralegal | | $160 | 324.1 | $51,856.00 |
| Nicole Talbot Settle | Litigation paralegal | | $160 | 162.5 | $26,000.00 |
| Maribeth Roufus | Bankruptcy paralegal | | $160 | 34.9 | $5,584.00 |
| | | | | **TOTAL** | $363,138.25 |

### Blended Hourly Rates:

**All attorneys: $354.05**

**All professionals: $275.74**

### Summary of Professionals and Paraprofessionals Providing Services

**Entire Retention Period**
**December 28, 2009 through March 29, 2011**

| Name of Professional | Practice Group(s) and Year of Attorney Admission | | Hourly Billing Rate | Total Billed Hours | Total Proposed Compensation |
|---|---|---|---|---|---|
| **Shareholders** | | | | | |
| Brady C. Williamson | Bankruptcy | 1975 | $495 | 422.05 | $208,914.75 |
| Katherine Stadler | Litigation/Bankruptcy | 1997 | $410 | 682.3 | $279,743.00 |
| Eric J. Wilson | Litigation | 1994 IL 2003 WI | $390 | 411.8 | $160,602.00 |
| Timothy F. Nixon | Bankruptcy | 1991 | $450 | 18.5 | $8,325.00 |
| **Special Counsel** | | | | | |
| Carla O. Andres | Bankruptcy | 1989 OH 1993 WI | $350 | 998.6 | $349,510.00 |
| **Associates** | | | | | |
| Monica Santa Maria | Litigation | 2008 | $205 | 441.6 | $90,528.00 |
| Claire K. Finando | Corporate | 2008 | $205 | 18.6 | $3,813.00 |
| Peggy L. Heyrman | Bankruptcy | 2009 | $205 | 270.2 | $55,391.00 |
| **Paraprofessionals** | | | | | |
| Jamie Kroening | Research | | $110 | 2.0 | $220.00 |
| Jill Bradshaw | Research | | $170 | 31.2 | $5,304.00 |
| Zerithea G. Raiche | Bankruptcy paralegal | | $160 | 1084.2 | $173,472.00 |
| Nicole Talbot Settle | Litigation paralegal | | $160 | 592.70 | $94,832.00 |
| Maribeth Roufus | Bankruptcy paralegal | | $160 | 168.6 | $26,976.00 |
| Jenna Stiegler | Litigation paralegal | | $150 | 163.2 | $24,480.00 |
| | | | | **TOTAL** | $1,482,110.75[2] |

**Blended Hourly Rates:**

**All attorneys:  $354.46**

**All professionals:  $279.35**

---

[2] The hours and blended rates set forth on this fee detail *do not* reflect the deduction, discussed at paragraph 33(C), *infra*, for FTI-related time.  That deduction, in the aggregate, totals $6,290.25.

Timothy F. Nixon
Katherine Stadler (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- x
                     :

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.,* | : | Case No. 09-50026 |
| f/k/a General Motors Corp., *et al.,* | : | (Jointly Administered) |
| | : | |
| Debtors. | : | Honorable Robert E. Gerber |
| | : | |

-------------------------------------------------------- x

**FINAL CONSOLIDATED APPLICATION OF BRADY C. WILLIAMSON, FEE**
**EXAMINER, AND GODFREY & KAHN, S.C., COUNSEL TO THE FEE EXAMINER,**
**FOR ALLOWANCE OF COMPENSATION FOR PROFESSIONAL SERVICES**
**RENDERED AND REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM DECEMBER 28, 2009 THROUGH MARCH 29, 2011**[3]

**TO:    THE HONORABLE ROBERT E. GERBER**
       **UNITED STATES BANKRUPTCY JUDGE**

The appointed Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation

Company) (the "**Fee Examiner**") and Godfrey & Kahn, S.C. ("**Godfrey & Kahn**"), Counsel to

the Fee Examiner (collectively, the "**Applicants**"), submit this *Final Consolidated Application of*

*Brady C. Williamson, Fee Examiner, and Godfrey & Kahn, S.C., Counsel to the Fee Examiner,*

---

[3] This application includes fees and expenses not previously requested for the fifth interim period (October 1, 2010 through January 31, 2011) and the sixth interim period (February 1, 2011 through March 29, 2011, the Confirmation Date). All of the Retained Professionals, the Fee Examiner and his counsel have, by consensus, incorporated the fifth and sixth interim periods (October 1, 2010 through March 29, 2011) in their final fee applications.

*for Allowance of Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary Expenses Incurred From December 28, 2009 Through March 29, 2011* (the "**Final Fee Application**") pursuant to 11 U.S.C. §§ 330 and 331 and Fed. R. Bankr. P. 2016.

The Final Fee Application seeks a final award of $1,475,820.50 in compensation for reasonable professional services and $108,988.93 in reimbursement of necessary and actual expenses incurred from December 28, 2009 through March 29, 2011 (the "**Retention Period**"). The application includes a request for allowance of $363,138.25 in compensation for services rendered during the fifth and sixth interim fee periods (October 1, 2010 through March 29, 2011) and $43,833.74 in reimbursement for necessary and actual expenses incurred from November 1, 2010 through March 29, 2011 (the "**Fifth and Sixth Interim Periods**").

## BACKGROUND

1.      Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code.  The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2.      On June 3, 2009, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3.      On August 7, 2009, the Court entered its *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket 3711] (the "**Compensation Order**").

6

4.      As of March 29, 2011, 27 professionals either have or have had interim applications for compensation pending before the Court for approval and now have final applications pending (collectively, the "**Retained Professionals**").

5.      On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as Fee Examiner and, without objection and through the Fee Examiner order entered that same day, the Court approved the appointment.

A.      Pursuant to that order, the Fee Examiner was charged with submitting periodic reports to the Court, the U.S. Trustee, the Debtors, the Creditors' Committee and each Retained Professional applying for interim and final compensation and reimbursement of expenses pursuant to the Compensation Order.

B.      He also was charged with informing each Retained Professional of any issue relating to the professional's application for compensation and expense reimbursement in advance of filing a report or objection regarding that application.

6.      On January 5, 2010, the Fee Examiner submitted an *Application for Authorization to Employ and Retain Godfrey & Kahn, S.C. as Counsel to the Fee Examiner, Nunc Pro Tunc to December 28, 2009* and, without objection, the Court entered an Order authorizing the employment of Godfrey & Kahn on January 19, 2010 [Docket No. 4833].

7.      On January 29, 2010, the Fee Examiner submitted the *Fee Examiner's Application to Authorize the Limited Retention and Employment of the Stuart Maue Firm as Consultant to the Fee Examiner as of January 22, 2010* ("**Stuart Maue**" or the "**Auditor**") [Docket No. 4910].  The Court entered an order authorizing Stuart Maue's limited retention on February 17, 2010 [Docket No. 5005] and, subsequently, twice extended that retention.  *See In re Motors Liquidation Company*, First Interim Fee Hr'g Tr. at 15:1-4, No. 09-50026 (Bankr.

7

S.D.N.Y. April 29, 2010, 5:24 P.M.) [Docket No. 5699]; *In re Motors Liquidation Company*,

Second Interim Fee Ruling Tr. at 38:21-39:2, No. 09-50026 (Bankr. S.D.N.Y. July 6, 2010)

[Docket No. 6369]. The Court also entered orders [Docket Nos. 6342 and 8152] approving

Stuart Maue's applications for interim compensation, totaling $453,671.49 in fees and expenses.

8.    On September 27, 2010, the Fee Examiner and Godfrey & Kahn filed their first

consolidated interim fee application [Docket No. 7134] (the "**First Fee Application**"), seeking

fees in the amount of $673,271.50 for the period from December 28, 2009 through May 31, 2010

and expenses in the amount of $59,699.73 for the period from December 28, 2009, through

August 31, 2010. There was no objection to the First Fee Application, and it is incorporated here

by reference.

9.    On October 26, 2010, the Court entered an order approving the First Fee

Application. *See Order Granting the First Consolidated Application of Brady C. Williamson,*

*Fee Examiner, and Godfrey & Kahn, S.C., Counsel to the Fee Examiner, For Interim Allowance*

*of Compensation for Professional Services Rendered from December 28, 2009 through May 31,*

*2010 and Reimbursement of Actual and Necessary Expenses Incurred from December 28, 2009*

*through August 31, 2010* [Docket No. 7571]. The order authorized payment to the Fee Examiner

and Godfrey & Kahn of $673,271.50 for fees (which included a 10 percent holdback) and

$59,699.73 for expenses, which the Debtors paid on October 29, 2010, less the holdback.

10.    On November 16, 2010, the Fee Examiner and Godfrey & Kahn filed their second

consolidated interim fee application [Docket No. 7798] (the "**Second Fee Application**"),

seeking fees in the amount of $439,410.75 for the period from June 1, 2010 through

September 30, 2010 and expenses in the amount of $5,455.46 for the period from September 1,

2010 through October 31, 2010. There was no objection to the Second Fee Application, and it is

incorporated here by reference.

8

11.      On December 17, 2010, the Court entered an order approving the Second Fee

Application.  *See Order Granting the Second Consolidated Application of Brady C. Williamson,*

*Fee Examiner, and Godfrey & Kahn, S.C., Counsel to the Fee Examiner, For Interim Allowance*

*of Compensation for Professional Services Rendered from June 1, 2010 through September 30,*

*2010 and Reimbursement of Actual and Necessary Expenses Incurred from September 1, 2010*

*through October 31, 2010.*  [Docket No. 8154].  The order authorized payment to the Fee

Examiner and Godfrey & Kahn of $439,410.75 for fees (which included a 10 percent holdback)

and $5,455.46 for expenses, which the Debtors paid on December 28 and 29, 2010, less the

holdback.

12.      On December 30, 2010, in the interests of economy and efficiency, the Fee

Examiner filed the Fee Examiner's *Motion to Amend the Stipulation and Order with Respect to*

*Appointment of a Fee Examiner for the Fifth and Subsequent Interim Periods* [Docket No. 8355].

The Court entered an order approving the motion [Docket No. 8561], granting the Fee Examiner

authorization to limit his review of any subsequently-filed interim fee applications and to

incorporate a detailed review of any such interim applications with his review of the Retained

Professionals' final fee applications.

13.      By consensus, the Retained Professionals did not file any subsequent interim

applications.  Accordingly, the Court has yet to approve any compensation for any services by

any Retained Professional or reimbursement of expenses for the period from October 1, 2010

through March 29, 2011.

14.      On March 29, 2011 (the "**Confirmation Date**"), the Court entered its *Findings of*

*Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy*

*Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second*

*Amended Joint Chapter 11 Plan* [Docket No. 9941] (the "**Confirmation Order**").  Under the

Confirmation Order, the bar date for filing final fee applications for professional services in these cases is May 16, 2011.

15.     AP Services on April 29, 2011 [Docket No. 10143] filed an application for up to $14.5 million in discretionary fees.  That application has been scheduled for a hearing on June 22, 2011 with a June 15, 2011 objection deadline.

16.     In a May 2, 2011 e-mail, the Debtors' counsel notified the Retained Professionals that the final fee applications would be heard on June 27.  The Fee Examiner has responded, for himself and the U.S. Trustee, that the notional date provides insufficient time to review the applications, prepare a report on each application, and discuss them with each Retained Professional before filing a final report with objections, if any.

17.     The Court has not yet set a hearing date on the final fee applications.

### SUMMARY STATEMENT

This fee application covers the Fee Examiner's work, and that of his legal counsel, from December 28, 2009 through March 29, 2011, including the interim periods for which the Applicants have not yet sought approval from the Court.  *See* nn.1, 3, *supra*.  The Court conducted a hearing on interim applications on October 26, 2010 and, during November and December, the Fee Examiner and his counsel continued their analysis and reporting on the fourth round of fee applications, submitted by 19 Retained Professionals, which were ultimately heard on December 15, 2010.  The Court last approved an interim application by the Fee Examiner and his counsel—their second—on December 15.

Over the course of these proceedings, the Fee Examiner reviewed more than 70 interim applications from some 27 Retained Professionals requesting, in the aggregate and on their face, a total of $79,889,687.28 in fees and $3,076,085.51  in expenses for the services provided from June 1, 2009, through September 30, 2010.  In response to those applications and responding, in

part, to the Fee Examiner's objections and reports, the Court conducted five hearings in open

court:  on April 29, June 29, October 26, December 15, 2010, and January 11, 2011.  The Court

accepted many, though not all, of the recommendations submitted by the Fee Examiner and his

counsel.

18.    The Fee Examiner and his counsel request Court approval—pursuant to the U.S.

Bankruptcy Code, the U.S. Trustee Guidelines, and the orders approving the Fee Examiner's

retention and that of his counsel—of a total of $1,475,820.50 in fees and $108,988.93 in

expenses.

19.    The Fee Examiner and his counsel request that the Court approve this final

application, incorporating services and expenses for the Fifth and Sixth Interim Periods (after

October 1, 2010) not yet submitted to the Court, because they have completed their assignment

in a timely, efficient and effective manner.  Their services have provided direct benefit to the

estates, both tangible and intangible, by saving amounts inadvertently, improvidently or

inappropriately billed to the estates.  The services have assisted the Court and the U.S. Trustee in

fulfilling their statutorily-mandated responsibilities, and those same services have encouraged

the Retained Professionals to submit applications for compensation and reimbursement that have

met the letter and the spirit of the U.S. Bankruptcy Code, the U.S. Trustee guidelines and the

local rules of the Southern District of New York.  Not incidentally, the decisions by the Court

that have arisen out of the fee review and approval process have helped develop the law applying

sections 327-331 of the Bankruptcy Code in a way that will continue to provide guidance to

other courts and other professionals.

20.    In response to the first and second interim applications filed by the Fee Examiner

and his counsel, no interested party filed an objection.  The U.S. Trustee supported the

applications, saying: "[t]he detailed review and analyses performed by [the Fee Examiner and his counsel] has been exceptional." [Docket Nos. 7450 and 8094].

21.    The services provided by the Fee Examiner and his counsel neither can be nor should be evaluated quantitatively in terms of documented savings to the estates.  Any "savings" total does not reflect the time or expense saved by the Court, by the U.S. Trustee, or by interested parties and Retained Professionals reviewing each other's fee and expense applications.  Nor does the total reflect the prophylactic effect of the fee review process, which only can be "measured" in fees and expenses never billed to the estates as a result of professional judgment—avoiding scrutiny and objections for fees and expenses that might have been, however improvidently, requested.  Nevertheless, for Retained Professionals' services rendered and costs incurred through September 30, 2010, by negotiation and objection, the Fee Examiner and his counsel can document at least $1,797,452.36 in reductions from fee applications as a result of the review process.[4]

22.    Moreover, it is apparent that the quality of the applications submitted by the Retained Professionals and their compliance with the rules improved, incrementally and significantly, between the first and fourth interim applications.  That saved the Court, the U.S. Trustee, and the estates substantial, though not quantifiable, time and expense.

23.    With the accompanying detailed statement of time spent and expenses incurred, the Fee Examiner and his counsel submit this Final Fee Application and summary, noting:

- In the exercise of billing judgment, the Fee Examiner and his counsel have eliminated more than 700 hours of legal services, representing $215,754.75, to avoid billing the estate for duplicative time or time that may be otherwise non-compensable.  Some of those entries do not appear on the time detail submitted with this application.

---

[4] *See, e.g.*, Docket Nos. 5834, 6402, 7910, 8289.

- Travel time has been discounted 50 percent (pursuant to local practice and this Court's rulings). There are no charges of any kind for local ground transportation, and air travel has been at coach fares.

- Time recorded by transient billers, attorneys who spent fewer than 10 hours on these cases since December 28, 2009, has been eliminated. Paraprofessional time less than 10 hours has been billed because of the discrete nature of the tasks—checking citations, for example.

- There has been no increase—at any time, for any reason—in the hourly rates established in the retention orders. In addition, no timekeeper has been billed at a higher rate for services provided in these cases than their respective rate for Milwaukee-based clients[5] in non-bankruptcy cases. Some timekeepers have been billed at lower rates in these cases than the rates generally applicable to Milwaukee-based clients in non-bankruptcy cases.

- Where the time entries reflect meetings or conferences, whether in person or by telephone, the subject matter of the meeting and the participants are generally noted—unless the meetings are purely internal between or among members of the Godfrey & Kahn team (*see infra*, ¶¶ 29, 45C, 51D), in which case only the subject matter is noted to reduce the redundancy and length of the entry.

- The Final Fee Application includes *no* charges for time spent reviewing, editing, or categorizing daily time records. All such time entries have been denominated "no charge" or eliminated.

- With occasional exception, the Fee Examiner has eliminated charges for the administrative conferences (involving only Godfrey & Kahn attorneys and paraprofessionals) that were charged and approved in the Court's order on Godfrey & Kahn's first interim fee application, from December 28, 2009 to May 31, 2010.

## ADDITIONAL GROUNDS

24.     The Debtors' cases are, by any measure, among the largest chapter 11 filings in history. They are largely funded by U.S. taxpayers. A May 2011 report from the U.S. Government Accountability office describes the context for the proceeding and its significance. GAO, Report to Congressional Committees, *TARP: Treasury's Exit from GM and Chrysler Highlights Competing Goals, and Results of Support to Auto Communities are Unclear.*

---

[5] Godfrey & Kahn, S.C. is a Milwaukee-based law firm.

25.      In light of the size and complexity of the cases and the potential costs and

expenses of administering the compensation system for professionals, the U.S. Trustee proposed

to the Debtors and to the Creditors' Committee that a Fee Examiner be appointed to review

applications for compensation and reimbursement to draft reports and, if appropriate, objections

regarding those fee applications.  The stated goal was to assist the U.S. Trustee and, ultimately,

the Court in determining the compensation for Retained Professionals and to help provide

transparency and accountability in the case administration.

26.      During the Retention Period, the Applicants examined more than 70 first, second,

third, and fourth interim fee applications—consisting of more than 15,000 pages describing the

services provided.  The Applicants reviewed the voluminous time records and the supporting

documentation for expenses.  That review was supported, in some instances, by electronic

auditing by the Stuart Maue firm.  However, many of the applications were not subject to Stuart

Maue audit—with the Fee Examiner and Godfrey & Kahn performing every aspect of bill

review.[6]

27.      The fee review process involved multiple steps.  During the time period covered

by Godfrey & Kahn's first interim fee application (December 28, 2009-May 31, 2010), Godfrey

& Kahn developed a list of potential billing practices of concern—incorporating them into a

protocol for fee and expense review.

A.      That protocol has evolved, and the underlying conclusions and research

were periodically updated and shared with the Retained Professionals to address and to

---

[6] Pursuant to the Court's comments at the July 6, 2010 ruling, Stuart Maue's court-approved retention ended with the third interim fee period.  *See In re Motors Liquidation Company*, Second Interim Fee Hr'g Tr. at 36-39, No. 09-50026 (Bankr. S.D.N.Y. July 6, 2010) [Docket No. 6369].  The post-confirmation Debtors have authorized the retention of Stuart Maue to assist in the analysis of the final fee applications.

incorporate their questions and responses to the Fee Examiner as well as this Court's

application of the fee standards in these cases.

       B.      The protocol was applied to each interim fee application to identify an

initial universe of billing practices involving the reasonableness or necessity of work.

The Fee Examiner and his counsel then narrowed the issues.

      28.     The Fee Examiner, through his counsel and directly, engaged in communications

with all of the Retained Professionals regarding their fee applications; sought additional

explanations and supporting documentation from many of them; and negotiated significant

stipulated reductions.  In many instances, these efforts—documented in a series of letters,

advisory reports and filed reports ("**Recommendation Reports**")—avoided the need for a

contested hearing.  Of the 71 interim applications subject to review by the Fee Examiner, the Fee

Examiner and the Retained Professional consensually resolved many points of disagreement and

potential objections.

      29.     Only a small number of Godfrey & Kahn professionals worked on these matters,

and their assignments were designed to reduce, to the extent possible, duplication of effort.[7]  The

bulk of the work has been performed by the Fee Examiner himself along with Katherine Stadler,

Carla O. Andres, Eric J. Wilson, Monica Santa Maria, Peggy L. Barlett,[8] Zerithea G. Raiche, and

Nicole Talbot Settle.

### SUMMARY OF PROFESSIONAL COMPENSATION
### AND REIMBURSEMENT OF EXPENSES

      30.     The Fee Examiner and Godfrey & Kahn seek an award of $1,475,820.50 in

compensation for services rendered and $108,988.93 in reimbursement for actual and necessary

---

[7] The Godfrey & Kahn billing records have been reviewed in detail to try to ensure that duplicative or otherwise unproductive time has not been charged to the estate.

[8] Previously known as Peggy L. Heyrmann.

expenses incurred during the Retention Period, including allowance of $363,138.25 in

compensation for professional services rendered and $43,833.74 in reimbursement for actual and

necessary expenses incurred between October 1, 2010 and March 29, 2011.

31.    Neither the Fee Examiner nor Godfrey & Kahn has sought, received or been

promised any payment from the Debtors pursuant to the Compensation Order, or from any other

entity or source, in connection with these cases for services performed or expenses incurred

during the Retention Period.  Through the Debtors' counsel, the Applicants have been promised

payment from the newly-reorganized Debtors for services rendered and expenses incurred after

the Confirmation Date, including all services performed in connection with reviewing Retained

Professionals' final fee applications.

32.    Neither the Fee Examiner nor Godfrey & Kahn holds any retainer related to these

cases.  Except for the amounts authorized by the Court for payment [Docket Nos. 7571

and 8154], Godfrey & Kahn has received no payments of any kind from the Debtors.

33.    The combined amounts requested, $1,475,820.50 in fees for services rendered and

$108,988.93 in reimbursement for actual and necessary expenses incurred, already reflect the

Applicants' voluntary reductions.

A.    For the convenience of the Court and interested parties, many (but not all)

of the charges and expenses for which the Applicants do not seek compensation or

reimbursement—a total of $215,754.75 in fees—have been nonetheless described in the

detailed time records with a "no charge" notation.

B.    The fees and expenses for which the Applicants generally do not seek

reimbursement include:  travel time and expenses for attorneys without a participating

role at hearings, interoffice travel, most in-house meals and some travel-related meals,

long distance telephone charges, time spent reviewing and generating bills, and secretarial and paralegal overtime.[9]

      C.     In the two interim applications submitted by the Applicants, they affirmatively noted that they were not seeking compensation for specific services—for example, $6,290.25 in services related to the review of FTI's time records.  The applicants do not, now, seek approval retroactively for that or any other foregone time.  They note, however, that they do seek compensation for the $13,300 they paid to Stuart Maue as an expense.  *See* ¶ 26, *supra*.

34.    The fees and expenses billed in these cases are in accordance with Godfrey & Kahn's existing billing rates and practices in effect during the Retention Period.  It is Godfrey & Kahn's standard practice to evaluate its professionals' billing rates for market and seniority-based adjustments that routinely take effect on January 1st of each year; however, the rates disclosed in Godfrey & Kahn's retention application have *not* changed for this engagement.

35.    There is no agreement or understanding between the Fee Examiner or Godfrey & Kahn and any other entity, other than shareholders of Godfrey & Kahn, for the sharing of compensation to be received for services rendered in or in connection with these cases.

36.    Attached to this application as **<u>Exhibit A</u>** is a certification of compliance with Administrative Order M-389.

37.    Attached as **<u>Exhibit B-1</u>** is a chart identifying each professional who provided services after October 1, 2010, organized by project category.

---

[9] As part of the Applicants' standard billing practice, certain fees and expenses—for example, fees incurred for the attendance of a junior attorney at an internal conference where the intended benefit is not primarily to the client—have been removed from the billing records entirely.  Consistent with Administrative Order M-389, however, all such fees are included in the Applicants' calculation of total voluntary reductions.

38.     Attached as **Exhibit B-2** is a chart identifying each professional who provided services during the Retention Period, organized by project category.

39.     Attached as **Exhibit C** are the detailed time records summarizing the services provided by the Applicants after October 1, 2010, separated by project category.

40.     Attached as **Exhibit D** is a chart identifying the expenses incurred after November 1, 2010 for which the Applicants are seeking reimbursement and the total expense amount for each such category.

41.     Attached as **Exhibit E** are the detailed expense records summarizing the expenses for which the Applicants request reimbursement since November 1, 2010.

42.     Attached as **Exhibit F** is a chart identifying the expense categories for which the Applicants are seeking reimbursement, for the entire Retention Period, and the total amount for each category.

## SUMMARY OF PROFESSIONAL SERVICES RENDERED
## DURING THE COMPENSATION PERIOD

43.     The Applicants provided 6,048.50 hours of services necessary to the administration of the Debtors' cases during the Retention Period.  The services were provided primarily by professionals and paraprofessionals in Godfrey & Kahn's Bankruptcy and Litigation practice groups at billing rates ranging from $150 to $495 an hour.  The Applicants have voluntarily written off more than 700 hours of legal services and seek compensation for only 5,305.5 hours—less than 88 percent of the total value of the services they provided. Allowance of the requested compensation would result in a blended rate for all attorneys of $354.46 and a total blended rate of $279.35 over the Retention Period.

44.     The services for which the Applicants request compensation have been provided in six project categories, summarized here.

18

**Fifth and Sixth Interim Fee Periods**
**October 1, 2010 through March 29, 2011**

45.    Analysis, Reports and Recommendations Regarding Professionals' Fee

Applications:  $268,294.50.

A.    After October 1, 2010, the Applicants reviewed 20 fee applications for

services during the fourth interim fee period and two for the third interim fee period.  Of

these, only eight were reviewed with the assistance of Stuart Maue; the balance was

reviewed manually.  The fee applications were divided into three groups and, to reduce

the likelihood of duplication, each group was assigned to a single supervising attorney.

*See supra*, ¶ 29.

B.    In general, the fee applications and supporting expense or other

documentation were initially reviewed by one attorney for compliance with established

case law, guidelines, local rules and this Court's orders.  Questionable billing practices

were identified—either through Stuart Maue's filtering or through a manual review.

After the initial review, the members of the Godfrey & Kahn team exchanged

information about the practices they had identified.  They also identified mitigating or

aggravating circumstances surrounding each application and winnowed the list of

practices to those that would be brought to each Retained Professional's, the U.S.

Trustee's and the Court's attention.

C.    Godfrey & Kahn professionals regularly kept each other apprised of the

issues in the applications they examined to ensure as consistent an application of the fee

standards as possible.  The majority of these communications was by e-mail.  The

Applicants established a practice of keeping the relatively small team informed of

case-related issues and developments.  To reduce redundancy, the detailed time records

for internal communications and conferences involving the team do not invariably

19

identify each team participant.  External and internal communications *not* involving the

practice team itself are almost always identified both by participant and subject matter in

the detailed billing records.

D.      The Applicants' analysis of the 71 interim fee applications for services

provided before October 1, 2010 have directly resulted in a minimum of $1,797,452.36 in

reductions—whether stipulated or court-ordered.  All applications reviewed during the

fourth interim period were resolved by the Court at the December 15, 2010 and

January 11, 2011 hearings or by stipulated orders thereafter.

E.      For Retained Professionals whose applications have been electronically

audited, a team member reviewed each of the draft exhibits produced by the Auditor.

This review often resulted in the revision of the draft exhibits or regenerated exhibits

applying a more precise standard.  In some cases, the Auditor on request generated new

exhibits and conducted specific follow-up analysis.  This helped ensure that only the

subset of billing practices meriting attention was included in the exhibits, helping ensure

a consistent application of standards.

F.      Retained Professionals received repeated opportunities to comment and

respond to the Fee Examiner's concerns for each application—and many professionals

had a continuing dialogue with the Fee Examiner and his counsel.  Generally, no later

than two weeks before the hearing on interim fee applications, the Godfrey & Kahn

attorney responsible for that Retained Professional's fee application sent it a copy of the

draft report.[10]  Nearly every Retained Professional was also provided with a draft copy of

the Auditor's reports or an itemization of the questioned time entries.  For the first

---

[10] On several occasions, by agreement, a Retained Professional and the Fee Examiner have agreed to slight variances
from this schedule.

52 interim applications, the Fee Examiner's counsel sent an initial letter summarizing concerns even before preparing the draft report.

   G. Some professionals regularly responded—by telephone, e-mail or letter—and either provided additional documentation, explained the billing practice identified, agreed to a voluntary reduction of their fee request, or sought to defer the hearing on their fee application to continue to try to negotiate a consensual resolution.

  46. <u>Prepare for and Attend Hearings: $33,276.00</u>.  The Fee Examiner and his counsel attended the October 26 hearing on the third interim applications in person.  The Fee Examiner or his counsel also attended the December 15, 2010 and January 11, 2011 hearings on the fourth interim fee applications.

  47. <u>Travel: $6,268.25</u>.  Consistent with the practice in the Southern District of New York, charges for all non-working travel time have been reduced by half.  Most travel-related charges were for attendance at the hearings described in ¶ 45, *supra*.

  48. <u>General Case Administration: $29,402.00</u>.  Services provided in this category include general case management activities that do not fit easily into one substantive category—including intermittent meetings where the Applicants discussed procedural as well as substantive issues related to the consistent application of standards.

  49. <u>Firm Retention/Disclosure Issues: $12,099.00</u>.  Services in this category include the preparation and filing of motions to modify the retention of the Fee Examiner and Auditor.

  50. <u>Fee Application Preparation: $13,798.50</u>.  Services provided in this project category include reviewing and helping to prepare interim fee applications and exhibits for the Fee Examiner and his counsel as well as initial activities related to the interim fee applications of the Auditor.

**Entire Retention Period**
**December 28, 2009 through March 29, 2011**

The Applicants previously filed detailed time records for the period December 28, 2009

through September 30, 2010 [Docket Nos. 7134, Ex. C and 7798, Ex. C].  Those billing records

are incorporated, unchanged, by reference.

51.    <u>Analysis, Reports and Recommendations Regarding Professionals' Fee</u>

<u>Applications:  $1,038,097.50</u>.

A.    During the Retention Period, the Applicants developed a protocol to

evaluate Retained Professionals' compliance with the guidelines promulgated by the U.S.

Trustee's office, the Compensation Order, applicable local orders and the requirements of

the Bankruptcy Code and Rules.  The development of the protocol included research into

applicable case law, statutes, rules and regulations and discussions with the Auditor

regarding the technical capabilities of the Auditor's proprietary software.  The protocol

and underlying research were periodically updated to reflect the Court's rulings on fee-

related issues.

B.    The Applicants reviewed 71 fee applications for services rendered during

the first, second, third and fourth interim fee periods.  Of these, only 18 were reviewed

with the assistance of Stuart Maue; the balance was reviewed manually.  The fee

applications were divided into three groups and, to reduce the likelihood of duplication,

each group was assigned to a single supervising attorney.  *See supra*, ¶¶ 29 and 45(A).

C.    In general, the fee applications and supporting expense or other

documentation were initially reviewed by one attorney for compliance with established

case law, guidelines, local rules and this Court's orders.  Questionable billing practices

were identified—either through Stuart Maue's filtering or through a manual review.

After the initial review, the members of the team exchanged information about the

practices they had identified.  They also identified mitigating or aggravating circumstances related to each application and winnowed the list of practices to those that would be brought to each Retained Professional's, the U.S. Trustee's and the Court's attention.

D.      Godfrey & Kahn professionals kept each other apprised of the issues in the applications they examined to ensure as consistent an application of the fee standards as possible.  The majority of these communications was by e-mail.  The Applicants established a practice of keeping the relatively small team informed of case-related issues and developments.  To reduce redundancy, the detailed time records for internal communications and conferences involving the team do not invariably identify each team participant.  External and internal communications *not* involving the practice team itself are identified both by participant and subject matter in the detailed billing records.

E.      For Retained Professionals whose applications have been electronically audited, a team member reviewed each of the draft exhibits produced by the Auditor. This review often resulted in the revision of the draft exhibits or regenerated exhibits applying a more precise standard.  In some cases, the Auditor on request generated new exhibits and conducted specific follow-up analysis.  This helped ensure that only the subset of billing practices meriting attention was included in the exhibits and helped ensure a consistent application of standards.

F.      Retained Professionals received at least one opportunity, and in the earlier interim periods at least two opportunities, to comment and respond to the Fee Examiner's concerns for each application—and many professionals had a continuing dialogue with the Fee Examiner and his counsel.  Nearly every Retained Professional was also provided with a draft copy of the Auditor's reports or an itemization of the questioned time entries

during the discussion and negotiation period.  Some professionals regularly responded—
by telephone, e-mail or letter—and either provided additional documentation, explained
the billing practice identified, or agreed to a voluntary reduction of their fee request.

       G.     The Applicants' analysis of the 71 fee applications reviewed during the
Retention Period have directly resulted in a minimum of $1,797,452.36 in reductions—
whether stipulated or court-ordered.

52.     <u>Prepare for and Attend Hearings:  $93,191.00</u>.  The Fee Examiner and his counsel
attended no fewer than five hearings at which the Court considered fee-related issues.  If
practical, given the issues before the Court, the Fee Examiner and his counsel attended
telephonically to reduce the expense to the estates.

53.     <u>Travel:  $32,186.75</u>.  Consistent with the practice in the Southern District of New
York, charges for all non-working travel time have been reduced by half.  During the Retention
Period, the Applicants traveled to attend meetings with the Debtors' management, the members
of the U.S. Trustee's office and to attend this Court's hearings on fee-related issues.

54.     <u>General Case Administration:  $223,556.50</u>.  Services provided in this category
include general case management activities that do not fit easily into one substantive category—
including meetings where the Applicants discussed procedural as well as substantive issues
related to the consistent application of standards.

55.     <u>Firm Retention/Disclosure Issues:  $45,490.00</u>.  Services in this category include
the preparation and filing of the Applicants' retention application, amended disclosure
statements, and motions to limit or modify the Fee Examiner's retention.  Services in this
category also include the review and filing of retention applications of the Auditor.

56.    Fee Application Preparation:  $49,589.00.  Services provided in this project category include reviewing and helping to prepare the First and Second Fee Applications and assistance to the Auditor in its preparation of its own fee applications.

### SUMMARY OF ACTUAL AND NECESSARY EXPENSES INCURRED
### FIFTH AND SIXTH INTERIM PERIODS
### NOVEMBER 1, 2010 THROUGH MARCH 29, 2011[11]

57.    The Applicants incurred total expenses in the amount of $49,427.16, of which $5,593.42 have been voluntarily assumed and not billed to the estate.  Exhibits D and E contain the expense categories for which the Applicants seek reimbursement and the detailed expense records, respectively.  The expenses for which the Applicants seek reimbursement include only some of those routinely charged to the Applicants' non-bankruptcy clients.  The Applicants are not making a profit on any expense incurred as a result of services provided by a third party, and they have made a reasonable estimate of the actual cost for expenses incurred for any services provided in-house.  The Applicants' charges in these cases are at the same rates or rates lower than those routinely charged to, and paid by, the Applicants' non-bankruptcy clients.

58.    The largest expenditure, totaling $24,678.53, was for service of process through the Garden City Group.  The next largest expense was for the assistance of the Auditor, Stuart Maue, with the review and analysis of the fourth interim fee application of Weil, Gotshal & Manges LLP, an expense paid by Godfrey & Kahn and for which it did not seek prior Court approval.

59.    The Applicants are not seeking reimbursement for any staff overtime, or in-house meals.

---

[11] The Court approved the Applicants' request for interim reimbursement of expenses for October 2010 through its order on the Second Consolidated Fee Application.  *See* Docket No. 8154.

60.     The expenses requested are actual, reasonable and necessary in light of the scope of the Applicants' retention to aid in the administration of these cases.

### SUMMARY OF ACTUAL AND NECESSARY EXPENSES INCURRED
### ENTIRE RETENTION PERIOD
### DECEMBER 28, 2009 THROUGH MARCH 29, 2011

61.     The Applicants incurred total expenses in the amount of $133,642.80, of which $24,653.87 have been voluntarily assumed and not billed to the estate.  Exhibit F contains the expense categories for which the Applicants seek reimbursement.[12]  The expenses for which the Applicants seek reimbursement include only some of those routinely charged to the Applicants' non-bankruptcy clients.  The Applicants are not making a profit on any expense incurred as a result of services provided by a third party, and they have made a reasonable estimate of the actual cost for expenses incurred for any services provided in-house.  The Applicants' charges in these cases are at the same rates or rates lower than those routinely charged to, and paid by, the Applicants' non-bankruptcy clients.

62.     Again, the largest expenditure was for process service through Garden City Group.  The next largest expense, was for travel-related costs, primarily for attendance at hearings.

63.     The Applicants are not seeking reimbursement for any staff overtime or in-house meals.

64.     The expenses requested are actual, reasonable and necessary in light of the scope of the Applicants' retention to aid in the administration of these cases.

---

[12] The detailed expense records for expenses incurred prior to November 1, 2010 were filed previously with the court [Docket Nos. 7134, Ex. E and 7798, Ex. E].  They are incorporated here, unchanged, by reference.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

65.    Compensation to professionals is governed by 11 U.S.C. §§ 330 and 331.  The Court is authorized to grant "reasonable compensation for actual, necessary services rendered by the [professional person] and reimbursement for actual, necessary expenses."

66.    The Applicants respectfully maintain that the services provided were actual and necessary to the administration of the fee examination process in these cases.  The fee review process is a statutory mandate in all chapter 11 cases.  Given the size and complexity of these cases, however, the U.S. Trustee proposed the appointment of a fee examiner to aid both the U.S. Trustee and the Court.  The Debtors and Creditors' Committee concurred in the U.S. Trustee's proposal that a fee examiner be appointed.  Neither objected to the Applicants' two interim fee applications.

67.    In reviewing whether a compensation request should be granted, the Court should be guided by the following statutory factors:

> [T]he nature, the extent, and the value of such services, taking into account all relevant factors, including--
>
> (A)    the time spent on such services;
>
> (B)    the rates charged for such services;
>
> (C)    whether the services were necessary to the administration of, or beneficial at the time the services was rendered toward the completion of, a case under this title;
>
> (D)    whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed;
>
> (E)    with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F)    whether the compensation is reasonable, based on the customary compensation charged  by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330.

68.    The requested compensation and reimbursement meet the statutory requirements for allowance.  The Applicants have completed their work in a timely and efficient manner commensurate with the complexity, importance and nature of the issues involved.  The projects were staffed by professionals and paraprofessionals with demonstrated skill in the bankruptcy context, and all work has been assigned consistently with the need to prevent unnecessary duplication and to ensure that work is performed by the least senior person competent to handle the matter efficiently.

69.    Moreover, the requested compensation is reasonable:  it is based on the customary compensation charged by comparably skilled professionals in the Applicants' Milwaukee market and paid by the Applicants' non-bankruptcy clients.  The Applicants have also thoroughly reviewed their time and expense detail and have chosen, in the exercise of billing judgment, not to bill more than $240,000.00 in fees and expenses incurred during the Retention Period.

70.    Accordingly, approval of the requested compensation is warranted.

**NOTICE**

71.    Notice of this Final Fee Application has been provided to parties in interest in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011 [Docket No. 10183].  The Fee Examiner and Godfrey & Kahn submit that such notice is sufficient and no other or further notice need be provided.

72.    No previous request for the relief sought herein, except the previous interim applications, has been made by the Fee Examiner or Godfrey & Kahn to this or any other Court for these matters.

**CONCLUSION**

The Fee Examiner and Godfrey & Kahn request the Court enter a final Order authorizing

(i) final allowance of compensation for professional services rendered during the Compensation

Period in the amount of $1,584,809.43, consisting of $1,475,820.50 in fees and $108,988.93 in

actual and necessary expenses incurred during the Retention Period; (ii) directing payment

forthwith by the Debtors of the amounts authorized (including all unpaid amounts previously

ordered to be held back); and (iii) such other and further relief as is just.

**WHEREFORE**, the Fee Examiner and Godfrey & Kahn respectfully submit this Final

Fee Application and request that the Court grant the relief requested herein and such other and

further relief as is just.

Dated:  Madison, Wisconsin
            May 16, 2011.

GODFREY & KAHN, S.C.


By:       /s/ *Katherine Stadler*
            Katherine Stadler
            Timothy F. Nixon

            GODFREY & KAHN, S.C.
            780 North Water Street
            Milwaukee, Wisconsin 53202
            Telephone: (414) 273-3500
            Facsimile: (414) 273-5198
            E-mail: kstadler@gklaw.com
                        tnixon@gklaw.com

            *Attorneys for Fee Examiner*