**HARTER SECREST & EMERY LLP**  Hearing Date: **July 11, 2011**
1600 Bausch & Lomb Place  Time: **9:45 a.m.**
Rochester, NY 14604-2711
Tel: (585) 232-6500
Fax: (585) 232-2152
Mark C. Smith

Attorney for Maguire Family Properties, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>MOTORS LIQUIDATION COMPANY, *et al.*,<br>f/k/a GENERAL MOTORS CORP., *et al.*,<br><br>DEBTORS. | CHAPTER 11<br>CASE NO. 09-50026 (REG)<br>(JOINTLY ADMINISTERED) |

**MOTION OF MAGUIRE FAMILY PROPERTIES, INC. TO PERMIT
FILING OF LATE CLAIM PURSUANT TO 11 U.S.C. § 105 AND
RULE 9006 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

Maguire Family Properties, Inc. ("Maguire Family Properties"), by and through its undersigned attorney, hereby files this motion (the "Motion")[1] seeking entry of an order (i) deeming Maguire Family Properties proof of claim against the debtors and debtors in possession (the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") to be timely filed pursuant to Rule 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and section 105 of title 11 of the United States Code (the "Bankruptcy Code") on the grounds that Maguire Family Properties never received notice of the Bar Dates (as defined below), and (ii) granting such other and further relief as this Court deems just and proper. In support of the Motion, Maguire Family Properties respectfully states as follows:

---

[1] This Motion is further supported by the proof of claim filed by Maguire Family Properties in these Chapter 11 Cases on or around May 26, 2011 (together with all exhibits, the "Proof of Claim"). A copy of the Proof of Claim is attached hereto as Exhibit A.

792716_7

**Background**

A.   **The Site, Order of Consent and Environmental Agreement**

1.   Prior to 1994, General Motors Corporation ("GM") owned and operated a manufacturing facility known as the Delco Chassis facility located at 1555 Lyell Avenue in the City of Rochester, Monroe County, New York (the "Site").  *See* Order on Consent by and between GM and the New York State Department of Environmental Conservation ("NYSDEC"), Index # B8-0543-98-08 (the "Order on Consent"), ¶ 2A.[2]

2.   In 1994, ITT Automotive Electrical Systems, Inc. ("ITT Automotive") purchased the Site and continued to conduct substantially the same operations and processes at the facility as had GM.  *See Id.* at ¶ 2B.  In connection with the transfer of the Site to ITT Automotive, GM entered into that certain Rochester Facility Environmental Agreement Between General Motors Corporation and ITT Automotive Electrical Systems, Inc. (the "Environmental Agreement"),[3] dated March 31, 1994, wherein GM and ITT Automotive set forth the environmental terms and conditions applicable to each party going forward, including, but not limited to, GM's obligation to perform certain environmental investigation and remediation activities at the site and indemnify ITT Automotive for certain Losses (as defined in the Environmental Agreement) related to environmental issues at the Site.  *See* Environmental Agreement, 15.

3.   In September of 1998, ITT Industries, Inc., the parent to ITT Automotive, conveyed its interest in ITT Automotive to Valeo S.A. by stock transfer.  *See* Order on Consent, ¶2B.  As a result of the transfer, ITT Automotive changed its name to Valeo Electrical Systems, Inc. ("Valeo").  *See Id.*  As part of that same transaction, ITT automotive assigned its rights

---

[2] A copy of the Order on Consent is attached to the Proof of Claim as Exhibit A.
[3] A copy of the Environmental Agreement is attached to the Proof of Claim as Exhibit B.

-2-

792716_7

under the Environmental Agreement to Valeo.  *See* Assignment of Environmental Agreement (the "Assignment Agreement"), [4] by and between Valeo and Maguire Family Properties, ¶ 1.

4. In July of 2002, GM entered into the Order on Consent with the New York State Department of Environmental Conservation ("NYSDEC"), Index # B8-0543-98-08, wherein, among other things, GM agreed to conduct studies in order to identify the extent of environmental contamination at the Site and take certain remedial measures in connection with same.  *See* Order on Consent. at ¶ I-III.

5. Subsequently, in November of 2005, Maguire Family Properties acquired the Site from Valeo (the "Purchase Transaction").  *See* Recitals to Assignment Agreement.  As part of the Purchase Transaction, Valeo and Maguire Family Properties entered into the Assignment Agreement, wherein Valeo assigned its rights and interests as beneficiary under the Environmental Agreement to Maguire Family Properties.  *See* Assignment Agreement, ¶1.

6. On or around December 15, 2005, GM provided its written consent to the Assignment (the "Consent to Assignment").[5]  *See* Consent to Assignment.

7. Following GM's execution of the order on Consent with NYSDEC, GM performed various interim remedial measures at the Site while conducting the required remedial investigation and feasibility study.

8. On behalf of Maguire Family Properties, Day Environment, Inc. submitted a letter dated March 30, 2009 requesting certain action under the Environmental Agreement.  GM responded to such request for action under the Environmental Agreement by letter dated April

---

[4] A copy of the Assignment Agreement is attached to the Proof of Claim as Exhibit C.
[5] A copy of the Consent to Assignment is attached to the Proof of Claim as Exhibit D.

-3-

17, 2009 (the "GM Response Letter").[6] Through the GM Response Letter, only months before the Petition Date, GM acknowledged the existence of the Environmental Agreement and Maguire Family Properties' rights thereunder.

9. As one of the interim remedial measures, GM installed and, on or about April 9, 2009, commenced operation of a sub-slab depressurization system ("SSDS"), which is still running as of this date. By letter dated May 15, 2009 (the "Stantec Notification Letter"),[7] Stantec Consulting Services, Inc., consultant for GM, notified Maguire Family Properties of the commencement of the SSDS and instructed Maguire Family Properties to submit invoices to GM for electric costs.

10. Accordingly, Maguire Family Properties submitted a bill[8] for electrical costs covering the period from May 1, 2009 through April 30, 2010 and this invoice was paid by GM in August of 2009, approximately two months after the Petition Date (as defined below). However, to date, Maguire Family Properties has not received payment from the Debtors for any electrical costs incurred after April 30, 2010.

**B.    Chapter 11 Cases, Bar Date and NYSDEC Claims**

11. On June 1, 2009 (the "Petition Date"), GM and four of its affiliates (the "Initial Debtors") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.

12. On or about September 21, 2009, notwithstanding the Petition Date, Maguire Family Properties received a copy of a progress report (the "Debtors' Progress Report")[9] from BOW Environmental Solutions, on behalf of "Motors Liquidation Company (MLC), formerly

---

[6] A copy of the GM Response Letter is attached to the Proof of Claim as Exhibit E. Notably, the specific matter addressed in the GM Response Letter (*i.e.* a storm water retention pond), is not central to this Motion.
[7] A copy of the Stantec Notification Letter is attached to the Proof of Claim as Exhibit F.
[8] A copy of the invoice is attached to the Proof of Claim as Exhibit G.
[9] A copy of the Debtors' Progress Report is attached to the Proof of Claim as Exhibit H.

-4-
792716_7

known as General Motors Corporation," covering the period from June 1, 2009 through August 31, 2009.  Significantly, nowhere within the progress report did MLC or its consultant state that no further work would occur at the Site or that MLC or GM would in any way attempt to disclaim or reject its responsibilities for the Site or obligations to Maguire Family Properties under the Environmental Agreement.  The Debtor's Progress Report also described sampling performed at the Site after the Petition Date.

13. On October 9, 2009, two additional affiliates of General Motors Corporation (the "Realm/Encore Debtors") commenced voluntary cases under chapter 11 of the Bankruptcy Code.

14. Maguire Family Properties was not listed as a known or potential creditor, or otherwise, on any of the Debtors' schedules.

15. Significantly, however, the Site was listed on Attachment 17a of the Statement of Financial Affairs for Motors liquidation Company ("SOFAs") as the subject of a notice from a governmental agency regarding environmental issues. *See* SOFAs, Attachment 17a.  Likewise, the Site is also listed on Attachment 17b of the SOFAs as a site for which the Debtor had provided notice to the NYSDEC and on Attachment 17c as a site underlying an administrative proceeding involving GM. *See* SOFAs, Attachments 17b and Attachment 17c.

16. On September 16, 2009, the Court entered an Order [Docket No. 4079] establishing November 30, 2009 (the "Initial Bar Date") as the deadline for each person or entity to file a proof of claim in the Initial Debtors' cases.

17. On December 2, 2009, the Court entered an Order [Docket No. 4586] establishing February 1, 2010 (the "Realm/Encore Bar Date", and together with the Initial Bar Date, the "Bar Dates") as the deadline for each person or entity to file a proof of claim in the Realm/Encore

Debtors' cases (except governmental units for which the Court set June 1, 2010 as the deadline to file proof of claims).

18. On or around November 29, 2009, the NYSDEC filed a proof of claim assigned number 50587 ("Claim 50587") in the claims register in the Chapter 11 Cases asserting a claim against the Debtors estates based upon, among other things, GM's liability in connection with the Site pursuant to the Order on Consent. *See* Claim 50587.

19. Subsequently, the NYSDEC amended Claim 50587 by filing, among others, claims numbered 50828 ("Claim 50828") and 70129 ("Claim 50828", and together with Claim 50587 and Claim 50828, the "NYSDEC Claims") on the claims register in the Chapter 11 Cases.

20. Among other things, the NYSDEC Claims assert liability based on GM's environmental remediation obligations in connection with the Site under the Order on Consent.

21. In or around March of 2011, Maguire Family Properties was made aware of the possibility that NYSDEC would be taking control of all environmental remedial actions at the Site. Significantly, this was the first time Maguire Family Properties was made aware that the Debtors may seek to avoid their obligations in connection with the Site.

22. To date, and despite correspondence between the parties concerning the Environmental Agreement less than one and one half months prior to the Petition Date, Maguire Family Properties has received no notice of the Petition Date or any subsequent event or filing deadlines in these Chapter 11 Cases, including, but not limited to, the Bar Dates or the solicitation process for votes for acceptance of rejection of a chapter 11 plan of reorganization. Accordingly, Maguire Family Properties was never given notice of the potential impact the Chapter 11 Cases might have on GM's obligations to Maguire Family Properties under the

-6-

792716_7

Environmental Agreement, including whether such obligations give rise to a claim against the Debtors or are subject to rejection under the relevant provisions of the Bankruptcy Code.

23. Due to the Debtors' continued performance under the Environmental Agreement (through post-petition payment of invoices and providing periodic reports pursuant to the agreement's terms) and lack of any notice regarding the Chapter 11 Cases potential impact on their rights under the Environmental Agreement, Maguire Family Properties was unable to timely ascertain the potential impact the Chapter 11 Cases might have on its claims against the Debtors and rights under the Environmental Agreement.

24. On or around May 26, 2011 Maguire Family Properties filed the Proof of Claim asserting claims against the Debtors estates based on the Environmental Agreement and GM's various remediation and other obligations thereunder (the "Claim").

## Relief Requested

25. By this Motion, Maguire Family Properties, Inc. respectfully requests entry of an order: (i) deeming Maguire Family Properties' Proof of Claim against the Debtors to be timely under Bankruptcy Rule 9006(b); and (ii) granting such other and further relief as this Court deems just and proper.

## Jurisdiction and Venue

26. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

27. The statutory predicates for the relief requested herein are section 105 of the Bankruptcy Code and Bankruptcy Rule 9006(b)(1).

792716_7

**Discussion**

28. Pursuant to Bankruptcy Rule 9006(b)(1), the Court may permit a claim to be filed after the bar date if the claimant's failure to comply with the deadline was the result of "excusable neglect." *See* Fed. R. Bankr. Proc. 9006(b)(1) (2011). Excusable neglect is not defined by either the Bankruptcy Rules or Federal Rules of Civil procedure, nor is it defined in the Bankruptcy Code.

29. The standard for permitting late filed claims for excusable neglect under Bankruptcy Rule 9006(b)(1) was established by the Supreme Court in *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship.*, 507 U.S. 380 (1993). In *Pioneer*, the Supreme Court stated that the excusable neglect standard is an "elastic concept" that "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at 392, 395.

30. The Supreme Court set forth four factors that should be considered in the excusable neglect analysis:

> [1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings, [3] the reason for delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith.

*See id.* at 395; *see also Canfield v. van Atta Buick/GMC Truck, Inc.*, 127 F.3d 248, 250-51 (2d Cir. 1997) (*Pioneer* established a more liberal standard for determining excusable neglect, and court should engage in an equitable determination taking into account all relevant factors)(internal citations and quotations omitted).

31. Moreover, not all of the factors need to weigh in favor of the moving party for relief to be granted. *See In re Enron*, No. 01-16034 (AJG), 2003 WL 21756785, at *4 (Bankr. S.D.N.Y. July 30, 2003) ("[t]he relative weight, however, to be accorded to the factors identified

792716_7

in Pioneer requires recognizing that not all factors need to favor the moving party", granting relief even though the court found against the movant as to the reason for the delay).

32. The decision whether to grant the requested relief rests within the Bankruptcy Court's discretion. *See In re Enron.*, 419 F.3d 115, 125 (2d Cir. 2005 ("[T]he discretion of a bankruptcy court to allow or disallow late filed claims is well established . . . ."). Based on the four-factors outlined in *Pioneer*, the Motion should be granted.

33. *First*, the Claim would not materially prejudice the Debtors. The Claim certainly would not "jeopardize the success of the reorganization." *See Midland Venture Ltd. P'ship v. Enron (In re Enron Corp.)*, 419 F.3d 115, 130 (2d Cir. 2005). The face amount of the Claim (approximately $3.6 million), is, in this case, insignificant given the size of the estates and the overall claims denominator. Additionally, because the Claim is based largely on the indemnification obligations under the Environmental Agreement, to the extent that the Debtors meet their obligations to the NYSDEC under the Order on Consent, the Claim would have practically no impact on the Debtors' estates or distributions.

34. Even to the extent that the claim may have an effect, however small, on the funds available to all creditors, the Second Circuit has found this to be of nominal weight in the determination of prejudice to the debtor. *See In re Enron,* 419 F.3d at 130. Moreover, GM's consent to assignment of the Environmental Agreement, its listing the Site in its SOFAs and the NYSDEC Claims all make it clear that GM has long been aware of its potential liability in connection with the Site, Order on Consent and Environmental Agreement.

35. *Second*, the delay here has been *de minimus*. The delay is *de minimus* because the Debtors presumably are still engaged in the claims review and reconciliation process. Including the Claim among the thousands of filed claims (a substantial portion of which are based on

environmental liabilities such as those at the Site) would in no way disrupt the judicial administration of this case. *See, e.g., Pioneer,* 507 U.S. at 398-99 (permitting filing proof of claim twenty days after the bar date); *In re Sage-Dey, Inc.*, 170 B.R. 46, 52-53 (Bankr. S.D.N.Y. 1994) (permitting filing of proof of claim six months after bar date); *In re Beltrami*, 178 B.R. at 392 (Bankr. M.D. Pa. 1994) (permitting filing of a two-year late proof of claim).

36. *Third*, the facts clearly establish that the delay in filing the Claim is excusable. Notwithstanding GM's Consent to Assignment in 1995, acknowledgment of certain obligations to McGuire Family Properties in the GM Response Letter and the listing of the Site on its SOFAs, the Debtors failed to provide Maguire Family Properties with notice of the Petition Date and any subsequent events during these Chapter 11 Cases, including the Bar Dates and any procedures in connection with solicitation of votes accepting or rejecting the Plan. Thus, it is clear that Maguire Family Properties' failure to file a proof of claim was not an error on the part of Maguire Family Properties, but rather the Debtors error.

37. "In those instances where no prior notice of the bar date has been given, enlargement of the time period may be constitutionally required." *In re Dewey Beach Enterprises, Inc.*, 110 B.R. 681, 684 (Bankr. D. Del. 1990) (citing *In re Harbor Tank Storage Co.*, 385 F.2d 111, 114 (3d Cir. 1967). Furthermore, "if a creditor is not given reasonable notice of the bankruptcy case and the relevant bar dates, its claim cannot be constitutionally discharged." *See In re 0' Shaugnessy*, 252 B.R. 722,729 (Bankr. N.D. Ill. 2000) (quoting In re Glenwood Med. Group, Ltd., 211 B.R. 282,285 (Bankr N.D. Ill. 1997). Constitutional due process requires proper notice. *Mullane v. Cent. Hanover Bank & Trust Co.*, 70 S. Ct. 652, 657 (l950) ("An elementary and fundamental requirement of due process in an proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances to apprise

792716_7

interested parties of the pendency of the action and afford them an opportunity to present their objections.").

38. "The burden of establishing that a creditor has received adequate notice rests with the debtor." *Massa v. Addona (In re Massa)*, 187 F.3d 292, 296 (2d Cir. 1999). Therefore, in order to satisfy the elements of due process, a debtor's schedules must contain accurate information concerning creditor's address. *SouthTrust Bankcard Ctr. v. Curenton (In re Curenton)*, 205 B.R. 967,970 (Bankr M.D. Ala. 1995); *see also Bonner v. Adams (In re Adams)*, 734 F.2d 1094, 1103 (5th Cir. 1984).

39. Thus, where "a debtor does not afford a creditor due process, either by failing to timely schedule a creditor or by scheduling it incorrectly, the creditor's right to object to the dischargeability of a debt cannot be time barred under *Fed. R. Bankr. P.* 4007(c)." *Chanute Prod. Credit Ass'n v. Schick (In re Schicke),* 290 B.R. 792,800 (B.A.P. 10th Cir. 2003). For these reasons, Maguire Family Properties should be permitted to file its Claim late pursuant to Rule 9006(b)(1).

40. *Lastly*, it is clear that Maguire Family Properties has acted in good faith. But for the Debtors' failure to provide notice of the Bar Dates, Maguire Family Properties would have timely filed its Proof of Claim. This is clearly not a situation where the claimant failed to take the filing deadline seriously. *See Enron*, 419 F.3d at 126-27. Nor was this a tactical, or simply a knowing, decision not to file a timely claim. *In re Delphi Corp.*, 2009 Bankr. LEXIS 571, at * 19-20 (citing *Pioneer*, 507 U.S. at 388, 395)(internal citations omitted).

41. Rather, notwithstanding the fact the Debtors knew or should have known about the Environmental Agreement and potential Claim, the Debtors failed to provide Maguire Family Properties notice of the Bar Dates, or any other relevant proceedings or deadlines, in the Chapter 11 Cases. Given the complexity of these Chapter 11 Cases (multiple petition dates, procedural motions and bar dates) and the Debtors' continued performance under the Environmental Agreement

postpetition, Maguire Family Properties' failure to adhere to the relevant deadlines can be directly linked to the Debtors' failure to provide Maguire Family Properties the notice due process requires, not any wrongdoing on Maguire Family Properties' part.

42. Accordingly, Maguire Family Properties respectfully submits that "the lack of any prejudice to the debtor or to the interests of efficient judicial administration, combined with the good faith of respondents and their counsel, weigh strongly in favor of permitting the tardy claim" and justify the relief sought herein. *Pioneer*, 507 U.S. at 508.

## Memorandum of Law

43. Based on the authority provided herein, Maguire Family Properties respectfully requests that the Court waive the requirement that Maguire Family Properties file a memorandum of law in support of this Motion pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b).

## Notice

44. Maguire Family Properties has provided notice of this Motion pursuant to the Fifth Amended Order Implementing Certain Notice and Case Procedures entered in this case [Docket No. 8360]. Accordingly, Maguire Family Properties respectfully submits that no other or further notice is required.

## Reservation of Rights

45. Notwithstanding any of the relief sought herein or the assertions contained in Maguire Family Properties' Claim, Maguire Family Properties reserves the right to seek additional and further relief in connection with any and all claims it may have against the Debtors, including, but not limited to, asserting that the all or certain claims arose postpetition, are proper rejection damage claims or otherwise objecting to the dischargeability of such claims.

792716_7

**Conclusion**

For the foregoing reasons, Maguire Family Properties, Inc. respectfully requests entry of an order substantially in the form attached hereto as <u>Exhibit B</u> (i) deeming Maguire Family Properties' Proof of Claim against the Debtors to be timely under Bankruptcy Rule 9006(b); and (ii) granting such other and further relief as this Court deems just and proper.

| | |
|---|---|
| Dated:  May 26, 2011<br>Rochester, NY | **HARTER SECREST & EMERY LLP**<br><br>By: /s/ Mark C. Smith<br>Mark C. Smith<br>1600 Bausch & Lomb Place<br>Rochester, NY 14604-2711<br>Tel:  (585) 231-1124<br>Fax:  (585) 232-2152<br><br>*Attorney for Maguire Family Properties, Inc.* |