~ K -

~ K -



OFFICE OF THE ATTORNEY GENERAL
LEMON LAW ARBITRATION PROGRAM

110 Southest 6th Street, 10th Floor
    Fort Lauderdale, FL 33301

    Case Number: 2009-0034/WPB


In Re: Board Meeting

SHERIF RAFIK KODSY,

Plaintiff.

vs

HUMMER,

Defendant.

_____/ .


                    Thursday, March 5th, 2009

                    Commencing at: 1:30 p.m.

                    Concluding at: 4:00 p.m.


        BOARD MEETING

Taken at City of Delray Beach, 100 Northwest 1st
Street, Delray Beach, FL. 33444.



ERRATA SHEET

| PAGE | LINE | CHANGE FROM: | CHANGE TO: |
|------|------|--------------|-----------|
| 92 | 23 | 11,138 | 11,128 |

23rd June 2009



JACQUELINE DePAOLI
Notary Public, State of Florida
Commission# DD832214
My comm. expires Dec. 09, 2012

```
 1                     A P P E A R A N C E S
 2

 3    BOARD MEMBERS:

 4    PAUL TUCK, Chairman

 5    HAGERENESH SIMMONS, Board Attorney

 6    LEONARD WOLFER

 7    BERNARD FERNANDEZ

 8

 9    GENERAL MOTORS REPRESENTATIVES:

10    TOM THORNTON
      5784 Northwest 127th Terrace
11    Coral Springs, FL. 33076

12    JOE BARDILL
      470 Southeast 8th Avenue
13    Pompano Beach, FL. 33060

14    MARIO LOPEZ

15

16                        Also Present:

17                        SHERIF RAFIK KODSY, Plaintiff
                          15968 Laurel Oak Circle
18                        Delray Beach, FL. 33484

19                        HILLARY HOBBS, Progressive Insurance Agent
                          4063 Lake Tahoe Circle
20                        West Palm Beach, FL. 33409

21
                              *  *  *  *  *
22

23

24

25
```

1

2

3          (Thereupon, the following proceedings

4     were had.)

5          MR. TUCK:  This is case number

6     2009-034/WPB.  The matter of Kodsy against

7     Hummer.

8          Is that the way you pronounce your

9     name, Kodsy?

10          MR. KODSY:  Kodsy.

11          MR. TUCK:  It's being held on Thursday,

12     March 5th, 2009 in Delray Beach.  My name is

13     Paul Tuck.  I will be the chair.  With me

14     are Bernard Fernandez, Leonard Wolfer

15     (phonetic) for the Board.  Hager Simmons

16     would be the Board attorney.

17          As you can see the hearing is being

18     tape-recorded, actually it's digitally

19     recorded now.  We don't use tape recorders

20     anymore.  That recording will be the

21     official transcript of the hearing if one is

22     needed.

23          What we're going to start out doing is

24     having everybody, starting with the people

25     from the consumer side, introduce yourselves

1    giving your name and your address.  Each

2    time you speak starting from here on out,

3    we're going to ask you to identify yourself

4    because whoever is transcribing the hearing

5    can't tell all the time who is speaking.

6         So, would you give us your name and

7    your address?

8         MS. HOBBS:  Hillary Hobbs.  My address

9    is 4063 Lake Tahoe Circle, West Palm Beach.

10   33409.

11        MS. SIMMONS:  Would you spell your last

12   name?

13        MS. HOBBS:  H-O-B-B-S.

14        MS. SIMMONS:  And your first name is?

15        MS. HOBBS:  Hillary with two L's.

16   H-I-L-L-A-R-Y.

17        MR. TUCK:  Next?

18        MR. KODSY:  Sherif Kodsy.  Do you want

19   my address?

20        MR. TUCK:  Yes, please.

21        MR. KODSY:  15968 Laurel Oak Circle,

22   Delray Beach, Florida.  33484.

23        MR. TUCK:  Next?

24        MR. THORNTON:  Tom Thornton.

25   T-H-O-R-N-T-O-N.  Address 5784 Northwest

1        127th Terrace, Coral Springs, Florida.

2        33076.

3             MS. SIMMONS:  Your title, Mr. Thornton?

4             MR. THORNTON:  District Service Manager

5        for General Motors.

6             MR. BARDILL:  Joe Bardill.

7        B-A-R-D-I-L-L.  470 Southeast 8th Avenue,

8        Pompano Beach, Florida.

9             MS. SIMMONS:  Your title, Mr. Bardill?

10            MR. BARDILL:  Service manager.

11            MS. SIMMONS:  At where?

12            MR. BARDILL:  Coral Cadillac.

13            MR. TUCK:  Okay.

14            MR. LOPEZ:  Mario Lopez, parts manager

15       for General Motors Corporation.

16            MR. TUCK:  The way these hearings are

17       conducted is informally.  By that, I mean we

18       still have standard rules of courtesy and

19       not subject to the same rules of evidence

20       like you see in a courtroom.  What we're

21       going to be doing is first I will be

22       swearing in everybody who intends to

23       testify, you will be testifying under oath.

24       Then we're going to do what we call marked

25       documents.  It simply means that we're going

1    to compare the documents that all the

2    parties have to make sure everybody is

3    working from the same set of documents.

4        After that, we're going to ask the

5    manufacturer which of any of the allegations

6    in the request for arbitration they can

7    stipulate or agree to.  What they will agree

8    to or stipulate to doesn't have to be

9    further proven by testimony or further

10    documentary evidence.  I'm going to have

11    testimony from the consumer and the

12    consumer's witnesses followed by questions

13    from the manufacturer's side.

14        Then the manufacturer will present any

15    witnesses it chooses to present followed by

16    questions from the consumer.  You can't

17    interrupt each other.  So if you need a

18    pencil and paper feel free to take down any

19    notes while the other party is testifying,

20    so you can remind yourself what questions

21    you may have wanted to ask.

22        After that, we will decide whether or

23    not we need to test drive or inspect the

24    vehicle.  Is the vehicle here today?

25        MR. LOPEZ:  Yes.

1        MR. TUCK:  If we do test drive the

2    vehicle, we'll have more instructions for

3    you at that time.

4        Then we're going to have closing

5    statements followed by our deliberations.

6    You're free to stay in the room while we

7    deliberate, but not to participate unless we

8    have a particular question for somebody.

9    Depending on the results of our

10   deliberations, we either will or will not

11   get into a remedy phase.

12       Any questions?  All right.  Would

13   everybody who is going to testify, please

14   raise their right hands?

15        (Thereupon, the witnesses were duly

16   sworn to testify under oath.)

17       MR. TUCK:  You can put your hands down.

18   Thank you.

19       As a preliminary matter, would the

20   consumer turn to the request for

21   arbitration.  That's the form that looks

22   like this that you signed.  If you go to the

23   last page, page six, there should be a

24   signature there.

25       Is that your signature?

1          MR. KODSY:  Yes.

2          MR. TUCK:  And you placed it there?

3          MR. KODSY:  Yes.

4          MR. TUCK:  Thank you.  Turning now to

5     the various documents that have been

6     presented by the parties.

7          MS. SIMMONS:  Mr. Tuck, before we go

8     through the documents and enter them as an

9     exhibit, I would let the Board know there

10    were late submissions of documents from,

11    what I see, mainly from the consumer side.

12    From the manufacturer side, there is a late

13    submission of prehearing information sheet

14    and a BBB letter.  These things the Board

15    needs to decide of admitting before we start

16    labeling as exhibits.

17         MR. TUCK:  Okay.

18         MS. SIMMONS:  I should let the Board

19    know of the procedural history of getting up

20    to that.  The manufacturer's prehearing

21    information sheet could not have been

22    submitted any other time earlier than when

23    it was done because an inspection did not

24    occur until this week, the 2nd.  That was

25    the reason for the delay and there has been

1    a motion that's been filed in here by the

2    manufacturer asking the Board's assistance

3    in scheduling this and part of the rationale

4    in allowing this inspection to have was that

5    even if it was untimely, that inspection

6    report will be considered admitted to

7    facilitate the hearing happened in the

8    40-day requirements.

9        MR. TUCK:  I understand.

10        MS. SIMMONS:  Just to let you know

11    what's been submitted, a late submission

12    from the consumer side is a consumer

13    prehearing information sheet, amended

14    prehearing information sheet.  From the

15    exhibit side of the consumer, there is a

16    certificate of service, medical report, and

17    GM checklist.

18        From the manufacturer's side, as far as

19    pleadings, there is a late submission of

20    manufacturer prehearing information sheet

21    which I talked about.  From the exhibit

22    side, there is a BBB letter.

23        MR. TUCK:  Let's briefly hear from the

24    parties first.  Both sides have submitted

25    untimely documents.  It doesn't mean they're

1    wrong.  It just means that the other side is

2    supposed to have at least five or seven days

3    beforehand to review these things.  Since

4    you both did it, would you both agree to

5    allow the evidence to be considered by the

6    Board?

7         MR. LOPEZ:  I don't have a problem as

8    long as the Board decides.  I'm trying to be

9    open as I have always been with the Boards.

10   Whatever you decide will be okay, but as Ms.

11   Simmons states we had some issues with the

12   inspection.  We couldn't agree on a date and

13   then the consumer refused to go to their

14   inspection.  That's why we requested it.

15        MR. TUCK:  Have you seen the documents

16   that the consumer submitted?

17        MR. LOPEZ:  I'm not sure because --

18        MR. TUCK:  Can we show them to them and

19   see if there is anything that might be

20   unduly prejudicial.

21        MS. SIMMONS:  Sure.  Let me see, which

22   is the consumer's amended prehearing

23   information sheet.

24        Mr. Kodsy, I'm going to be showing to

25   the manufacturer what you faxed over to us.

1       The consumer prehearing information sheet

2       was faxed on the 2nd.  That's one from the

3       pleading side.  Here, it has the witness

4       list on the bottom.

5           MR. TUCK:  Has the consumer been served

6       with the documents that the manufacturer is

7       looking to submit?

8           MS. SIMMONS:  They were instructed to

9       both fax to each other whenever they filed

10      documents to the Board, so I'm assuming --

11          MR. TUCK:  Did you receive those

12      documents?

13          MR. KODSY:  I'm not sure what documents

14      we're talking about.

15          MS. SIMMONS:  From the manufacturer's

16      side, what they submitted was the prehearing

17      inspection report.  Did you get a copy of

18      that?

19          MR. KODSY:  From Schumacher?  On a

20      Schumacher, letterhead, yes.

21          MS. SIMMONS:  I don't know if it's a

22      letterhead.  It's dated March 2nd.  This

23      document.

24          MR. TUCK:  Have you seen that?

25          MR.. KODSY:  Yes.

1      MS. SIMMONS:  Then the BBB report was

2      another document that was submitted by the

3      manufacturer.  I will show that to Mr. Kodsy

4      to see if he has seen it, I assume it was

5      faxed over.  Actually, there is no BBB.  I

6      misspoke.

7      MR. LOPEZ:  The only one that was late

8      submission was the prehearing inspection --

9      MS.. SIMMONS:  Prehearing inspection

10     report.

11     MR. TUCK:  Do you have any objection to

12     us taking the documentation that he just

13     submitted into consideration?

14     MR. KODSY:  Not at all.

15     MR. TUCK:  Do you have any objection to

16     taking those documents into consideration?

17     MR. LOPEZ:  Can I have a copy of that?

18     MS. SIMMONS:  I thought you said it was

19     already faxed to you, the March 2nd

20     prehearing information sheet?

21     MR. LOPEZ:  The last one?  This is the

22     last one that I got, so I'm not sure if

23     that's the one that --

24     MS. SIMMONS:  I will show it to you.

25     This is one, the amended prehearing

1    information sheet and then consumer's

2    objection -- it's a written objection, it's

3    a two-page document, and consumer's

4    statement.

5         MR. LOPEZ:  This one I got.

6         MS. SIMMONS:  You've already gotten the

7    amended prehearing report.

8         MR. KODSY:  We faxed some more

9    documents yesterday, consumer statement.

10        MS. SIMMONS:  Yes, that's what I'm

11   showing him, the consumer statement and the

12   consumer written objection.

13        MR. TUCK:  There is no objection?

14        MR. LOPEZ:  I don't have any objection

15   to that.

16        MR. TUCK:  With the consent of both

17   parties, does the Board have any objection

18   to seeing the documents that have been

19   submitted untimely?

20        Mr. Wolfer?

21        MR. WOLFER:  No.

22        MR. TUCK:  No objection, Mr. Fernandez?

23        MR. FERNANDEZ:  No objection to both

24   sides' documents.

25        MR. TUCK:  Then we're unanimous, we

1      will accept them.

2          MS. SIMMONS:  In that case, we have

3      copies of those to the Board.  Here's the

4      final amended list of exhibits.

5          MR. TUCK:  Okay.  So now we're going to

6      try to mark documents.

7          MS. SIMMONS:  Yes.

8          MR. TUCK:  The entry of further

9      documents is officially closed.

10          From the consumer, we have his

11      pleadings, the consumer's request for

12      arbitration, consumer's prehearing

13      information sheet, consumer's amended

14      prehearing information sheet, consumer's

15      objections, and the consumer's statement.

16          As exhibits from the consumer, we have

17      repair orders which will be marked as C1;

18      defect notification, C2; consumer's letter

19      to dealership and return receipt, C3; Better

20      Business Bureau letter, C4; retail

21      installment contract, C5; motor vehicle

22      title reassignment supplement registration,

23      certificate of origin, C6; business card,

24      C7; invoice, C8; insurance information, C9;

25      online vehicle search information, C10; car

1    rental receipts, 11; consumer's appeal to

2    the response of intent to offer settlement,

3    12; e-mail correspondence, C13; consumer's

4    appeal, C14; odometer disclosure statement,

5    C15; used car buyer's order, C16; Better

6    Business Bureau letter, C --

7    MS. SIMMONS:  There's two different

8    letters from the Better Business Bureau.

9    MR. TUCK:  17, this will be the second

10    BBB letter.  Repair invoice, 18; technical

11    service bulletins listing, 19; insurance

12    claim, 20; a second business card, 21;

13    certificate of service, 22; a medical

14    report, 23; GM checklist, 24; additional

15    e-mail correspondence, 25; postage, 26; a

16    third business card, 27; an e-mail, 28.

17    From the manufacturer, we have his

18    pleadings and manufacturer's answer

19    postmarked 2-4-09, manufacturer's prehearing

20    information sheet, and manufacturer's

21    amended prehearing information sheet.

22    As exhibits from the manufacturer, we

23    have prehearing inspection letter which will

24    be marked M1.  General Motors' request for

25    assistant from the Attorney General's

1      Office, M2; prehearing inspection

2      confirmation e-mails; M2; Better Business

3      Bureau letter, M4; prehearing inspection

4      report, M5.

5          Now we're going to turn to the

6      consumer's request for arbitration.  We're

7      going to ask the manufacturer's

8      representative, can you agree to items one,

9      two, and three?

10          MR. LOPEZ:  Yes, sir.

11          MR. TUCK:  Item four?

12          MR. LOPEZ:  Yes, sir.

13          MR. TUCK:  Number five, the consumer is

14      looking for a replacement vehicle?

15          MR. KODSY:  At this point --

16          MR. TUCK:  Or a refund?

17          MR. KODSY:  Whatever the Board decides

18      is the best way to go, probably a refund.

19          MR. TUCK:  That will be your choice,

20      but we'll get to that when we get to the end

21      of our deliberations and see what decision

22      we render.  For now, we'll just leave it

23      open.

24          MS. SIMMONS:  Okay.

25          MR. TUCK:  Can the manufacturer agree

1      to number six?

2            MR. LOPEZ:  Yes, sir.

3            MR. TUCK:  Seven, is it less than

4      10,000 pounds?

5            MR. LOPEZ:  8600 pounds.

6            MR. TUCK:  Eight?

7            MR. LOPEZ:  It's GM manufactured.

8            MR. TUCK:  Nine?

9            MR. LOPEZ:  It's a Hummer H2 2008.

10           MR. TUCK:  Number ten, if that's the

11     correct vehicle identification number, would

12     you please read it into the record?

13           MR. LOPEZ:  Yes, sir.

14     5GRGN23878H107653.

15           MR. TUCK:  Thank you.  12, two parts.

16           MR. LOPEZ:  Number 12, the mileage is

17     correct.  It's 238 miles.  The delivery date

18     when it was sold to him was 8-19, that's

19     correct, but the warranty started on June

20     11th, 2008 because this was a special event

21     vehicle when it was sold to him.

22           MR. TUCK:  It was a what?

23           MR. LOPEZ:  Special event, a vehicle

24     that is used for a show and then the dealer

25     buys.  It's a new vehicle.  It's not a used

1    vehicle.

2        MR. TUCK:  It's a new vehicle?

3        MR. LOPEZ:  It's a new vehicle, yes,

4    it's a new vehicle.

5        MS. SIMMONS:  Is it a demo?

6        MR. LOPEZ:  Similar to a demo.  It's in

7    the same category, it's just that they call

8    it a special event.  It's been in a show or

9    whatever.  It hasn't been titled in any

10    state.

11        MR. TUCK:  Okay.  Thank you.

12        MR. LOPEZ:  You're welcome, sir.

13        MR. TUCK:  Are we going to call it new

14    or a demonstrator?

15        MS. SIMMONS:  I'm not sure.

16        MR. TUCK:  I thought the testimony said

17    that it was sold as a new vehicle.  It was

18    not used to show to other potential buyers.

19        MR. LOPEZ:  Right.

20        MR. TUCK:  It was used in a single

21    event.

22        MR. LOPEZ:  It was in a single event,

23    exactly.

24        MS. SIMMONS:  So it's not like a demo

25    --

1          MR. LOPEZ:  GM, like they get a new car

2     and they put it in a show for a single event

3     and then the dealer says I want that car so

4     they buy it from you and they sell it.

5          MS. SIMMONS:  So it would be a new

6     vehicle?

7          MR. LOPEZ:  It's a new vehicle.

8          MR. FERNANDEZ:  This is Bernard

9     Fernandez.

10         Good afternoon, Mr. Lopez.  You are

11    here and unequivocally you're saying that

12    the vehicle is new?

13         MR. LOPEZ:  Exactly.

14         MR. FERNANDEZ:  Okay.  Fine with me.

15         MR. TUCK:  15, consumer still possesses

16    the vehicle that's here today?

17         MR. KODSY:  Yes.

18         MR. TUCK:  16 becomes irrelevant.

19         MS. SIMMONS:  What is 16?

20         MR. TUCK:  16, if purchased used.

21         MS. SIMMONS:  Okay.

22         MR. TUCK:  Under 17, can the

23    manufacturer stipulate or agree that on the

24    dates listed there the vehicle was brought

25    to the dealership for the problems listed in

1       lines one through six?

2               MR. LOPEZ:  We can stipulate to some --

3       most of the dates there --

4               MR. TUCK:  Then you take exceptions.

5               MR. LOPEZ:  We'll have to take an

6       exception to a few of them.

7               MR. TUCK:  Why don't you tell us which

8       ones you take exceptions?

9               MR. LOPEZ:  Okay.  We'll start with

10      number one?

11              MR. TUCK:  Yes.

12              MR. LOPEZ:  That one, the first one,

13      10-20-08.

14              MR. TUCK:  Yes?

15              MR. LOPEZ:  That didn't go in for that.

16              MR. TUCK:  It was not in for that?

17              MR. LOPEZ:  It was not in for that.

18              MR. TUCK:  So we'll have to take

19      testimony.

20              MR. LOPEZ:  Yes.  The other one, the

21      next day, I think it is 11-5, it's not

22      11-12.

23              MR. WOLFER:  I'm sorry, it was on 11-5?

24              MR. LOPEZ:  I think it's 11-5.

25              MR. TUCK:  Yes.  We'll look at the

1   repair order.

2       MR.. LOPEZ:  I'm trying to sort the

3   complaints by the repair orders.

4       MR. TUCK:  What he is referring to is

5   on the repair orders is an open date and a

6   ready date.  The dates that we referred to

7   -- there is no reason why you should know

8   this if you haven't done it before.  We

9   always refer to the repair order opening

10  date, so I presume you have no objection to

11  --

12      MR. KODSY:  Correct.

13      MR. LOPEZ:  The other one is --

14      MS. SIMMONS:  When you say other one,

15  is it number three?

16      MR. LOPEZ:  Number three, 12-1-08 is

17  correct.

18      MS. SIMMONS:  You don't stipulate to

19  10-20 and 11-5?

20      MR. LOPEZ:  We would have to take a

21  look at the repair orders to see.

22      MS. SIMMONS:  Number three?

23      MR. TUCK:  Line three.  Wait a second.

24      What line are you on now?  As far as I

25  understand starting with line one, you had a

1    question about the first date under date

2    one.

3         MR. LOPEZ:  Under date two.  That same

4    line, item number one, that's where I am.

5    I'm looking at date one, date two, and date

6    three.

7         MR. TUCK:  All right.  So you're taking

8    exception to all three dates?

9         MR. LOPEZ:  Not the last one, we agree

10   that's --

11        MR. TUCK:  So you're taking exception

12   to 10-20-08 and 11-12-08?

13        MR. LOPEZ:  Yes.

14        MR. TUCK:  Okay.

15        MR. WOLFER:  Are you taking exception

16   to 11-12 because it should be 11-5?

17        MR. LOPEZ:  I think it is, yes.

18        MR. WOLFER:  Okay.

19        MR. FERNANDEZ:  Bernard Fernandez.  I

20   believe the manufacturer had no objection to

21   changing the November 12th date to November

22   5th?

23        MR. TUCK:  That's correct.

24        MR. FERNANDEZ:  Is that correct?

25        MR. TUCK:  Yes.

1    MR. FERNANDEZ:  Okay.

2    MR. TUCK:  So now let's go down to line

3    three.  Is that the same situation with

4    11-12.

5    MS. SIMMONS:  Line two.

6    MR. TUCK:  I thought we just did line

7    two.

8    MR. LOPEZ:  It was line one.

9    MS. SIMMONS:  Complaints, the rough

10   vibration during driving, what dates do you

11   --

12   MR. LOPEZ:  That's number two.

13   MS. SIMMONS:  Yes.  What dates do you

14   stipulate to?

15   MR. LOPEZ:  I couldn't find any rough

16   vibration claim --

17   MS. SIMMONS:  So you don't stipulate to

18   any one of those dates?

19   MR. LOPEZ:  No.

20   MS. SIMMONS:  The third one which

21   states the hopping of vehicle at low speeds.

22   Is there any date that you stipulate to?

23   MR. LOPEZ:  12-1-08, date number three.

24   MR. TUCK:  Line four?

25   MR. LOPEZ:  Vehicle bounces.  I cannot

1    stipulate to the first two.  The third one,

2    we would have to look at it because I'm not

3    sure because he complains about hopping.

4        MR. TUCK:  So you're not going to

5    stipulate to any of these, we'll take

6    testimony.

7        MR. LOPEZ:  Yes, we would have to look

8    at them.

9        MR. TUCK:  Line five?

10        MR. LOPEZ:  Line five would be the

11    12-22.  That one we can stipulate to.

12        MR. TUCK:  That's the only one?

13        MR. LOPEZ:  Yes.

14        MR. TUCK:  Finally, line six?

15        MR. LOPEZ:  Brakes squealing, I can

16    stipulate to 12-22, and I believe the

17    consumer agrees on 11-5 instead of 11-12.

18        MR. TUCK:  Okay.

19        MR. LOPEZ:  We can stipulate to that.

20.        MR. WOLFER:  But not the 10-20?

21        MR. LOPEZ:  Not the 10-20, no.

22        MR. TUCK:  Moving to line 18.

23        MR. LOPEZ:  Yes, sir.

24        MR. TUCK:  On that date, 12-18?

25        MR. LOPEZ:  Yes.

1          MR. TUCK:  Line 19?

2          MR. LOPEZ:  Final repair of 12-22, yes.

3          MR. TUCK:  Under line 20, the days out,

4     27 days?

5          MR. LOPEZ:  I think I just have one day

6     difference, I think I count 26.

7          MR. TUCK:  26.  We'll have to check

8     that later.

9          MR. LOPEZ:  He marked yes on 21, but

10    this is not a conversion.

11         MR. TUCK:  This is not asking that.

12    What it appears to be saying is did the

13    manufacturer or the conversion company or

14    authorized service agent had the opportunity

15    to inspect or repair the vehicle.  So it's

16    the same yes as before.

17         MS. SIMMONS:  Do you stipulate that you

18    had an opportunity to inspect it?

19         MR. LOPEZ:  Yes.

20         MR. TUCK:  Under 22, is there any

21    allegation that the conditions complained

22    about are the result of accident, use,

23    neglect or modification or alteration?

24         MR. LOPEZ:  Not that I know.

25         MR. TUCK:  Under 23, there is a Better

1          Business certified program connected with

2          this vehicle?

3              MR. LOPEZ:  Yes, there was.

4              MR. TUCK:  It's my understanding from

5          the file that the Better Business Bureau

6          declined it because they said there was some

7          report of accident or fire from the

8          consumer?

9              MS. SIMMONS:  There's a second BBB

10         letter, I know you didn't have an

11         opportunity to see it in the file because

12         this is late submission.  Page 80 and 81.

13         On the consumer side, page 80.

14             MR. FERNANDEZ:  Madam Counsel, we just

15         wanted to address your attention to our page

16         22 on the supplemental reports that were

17         received timely.

18             MS. SIMMONS:  Yes.

19             MR. FERNANDEZ:  The very last page that

20         I seem to be reading here is a letter from

21         the BBB received February 27th.

22             MS. SIMMONS:  Page 22?

23             MR. FERNANDEZ:  On our amended -- the

24         final packet that we first received on the

25         very last page.

1          MR. TUCK:  This letter is dated January

2     9th, 2009.

3          MS. SIMMONS:  Yes.

4          MR. TUCK:  It's from the Better

5     Business Bureau?

6          MS. SIMMONS:  Yes.

7          MR. TUCK:  At the end of the first

8     paragraph, it says, "We have determined that

9     your claim is ineligible for arbitration

10    because you have alleged that the defect was

11    caused by an accident --

12         MR. FERNANDEZ:  Has caused an accident.

13         MR. TUCK:  -- has caused an accident or

14    fire that resulted in property damage or

15    bodily injury."

16         MS. SIMMONS:  Yes.  It's also on page

17    36.

18         MR. TUCK:  We already had that.

19         MS. SIMMONS:  We have that.  Thank you.

20    I think that needs to be clarified through

21    testimony what happened as to the BBB.

22         MR. FERNANDEZ:  I agree.

23         MR. TUCK:  Yes.

24         MS. SIMMONS:  On the consumer side, I

25    just want to make sure you have it.  On the

1    packet that we gave you, page 36 has the

2    letter that Mr. Fernandez just pointed out

3    from the BBB.  Page 80, you should have a

4    second letter from the BBB.

5        MR. TUCK:  This is the same letter that

6    we just read from, you have two copies of

7    it?

8        MS. SIMMONS:  No, it should be a

9    different one.

10       MR. TUCK:  In my file it says January

11   9th.

12       MR. WOLFER:  That's 36.  We've got to

13   go to 80.

14       MR. TUCK:  This is the same letter that

15   we just received another copy of.  I just

16   want to clarify that we were just given

17   something as an addition which appears to be

18   the same letter.

19       MS. SIMMONS:  Yes.

20       MR. TUCK:  In place it's circle number

21   22 and another page it's circle number 36.

22       MS. SIMMONS:  They both filed it, both

23   parties.  I just want to make sure, Mr.

24   Tuck, you do have this letter.  Do you have

25   that?

1          MR. TUCK:  Now we're going to circle

2    number eight.  Yes, I have it..

3          MS. SIMMONS:  I just want to make sure

4    you have that.

5          MR. TUCK:  Now we're going to start the

6    consumer's testimony.  Who's going to speak

7    for the consumer?

8          MR. KODSY:  I will.

9          MR. TUCK:  What we're going to ask you

10   to do is starting from when complaints first

11   arose.  I know we have a lot of different

12   issues here.

13         MS. SIMMONS:  I should let the Board

14   know that the witness who is sitting here,

15   Ms. Hobbs, she is here under subpoena.  I

16   don't know if you want to take her out of

17   order or just go ahead.

18         MR. TUCK:  Are you under a time

19   constraint?

20         MS. HOBBS:  Well, I left work to come

21   here so.

22         MR. TUCK:  Do you need to get back?

23         MS. HOBBS:  As soon as I can, yes.

24         MR. TUCK:  All right.

25         With everybody's consent then, why