Sherif R. Kodsy
15968 Laurel Oak Circle
Delray Beach, Florida 33484
561-666-0237

May 26, 2011

The Honorable Robert E. Gerber
United States Bankruptcy Court
One Bowling Green
New York, New York 10004-1408

Re: MOTORS LIQUIDATION COMPANY, et al., 09-50026 (REG)
f/k/a General Motors Corp., et al., response to the opposition letter filed by defendants' for appeal without prepayment of fees.

Dear judge Gerber,

I am writing to you in response to the debtors' opposition for my application in forma pauperis. I would appreciate the inclusion of this letter with any documents provided to the United States District Court for the Southern District of New York for its consideration of my appeal.

My poverty is the result of the debtors' malicious intent to cause harm and discrimination to my credibility as a human being, which suffered disabling injuries from their defective product which almost killed me, which was without warnings and with continued malice to force me to accept their product as non defective, which further increased my injuries, causing extreme pain and suffering.

I was forced to close my successful business a few months after the purchase of the subject vehicle due to escalating disabling health issues, which my savings was exhausted through this legal battle with this large company that further caused me mental anguish and stress due to my mere existence as a consumer with limited means, that had made an important investment for earning a living, as the subject motor vehicle was a major needed instrument in a business such as mine, due to the extensive driving needed daily to earn a living as a specialty contractor and microbial remediation expert and health and safety technician.

1

I am currently receiving government assistance in the form of food stamps and I am in debt way over my head to friends, family and financial institutions, and I do not own a motor vehicle and several of my past investments are being foreclosed upon, as further I cannot afford to file a bankruptcy, which this litigation herein has put me in the poor house and in bankruptcy status, as I further lost all assets due to the inability to maintain stability and due to the inability to maintain employment from the injurie sustained, a brain injury, a herniated neck and back, a stomach hernia and a knee injury, in addition to compromised vision and neurological disorders.

The debtors agents proceeded to crucify me for filing a complaint against them, which they used their eccentric status to try and discredit me and conspired against me for my limited knowledge of the law, as their intentional negligence was with intent to injure or kill me due to their bad faith and gross negligence.

They further conspired to extend to deny the inherent defects of the subject vehicle's bio-mechanical non-conformities, which they never actually tested the disabling magnitude of vibration that was transferred through my body.

My claim for $15million was a mere fraction of their obligation to me for the injuries, pain and permanent suffering I incurred and will continue to incur from the extreme elevated vibration exposures.

My claim was requesting punitive damages, which was not addressed by this court and could not be addressed if this claim was classified as an unsecured claim, the punitive damages claim requested was to send a message to the continuing debtor/manufacturer of producing motor vehicles, so they can start addressing the bio-mechanical issues in a recognized and professional manor, not the purported allegations of an undermined repair but for actually testing the vibration and bio-mechanical non-conformity magnitude in the field, when it arises to prevent further injuries to the consuming public and to prevent inevitable unexplained death to others in the public sector, if I was an attorney I would have pursued a class action suit.

> Section 523(a) of the Bankruptcy Code provides that a discharge under Chapter 11 does not discharge certain enumerated debts, including those for money . . . obtained by false pretenses, a false representation, or actual fraud . . . ." 11 U.S.C.A. § 523(a)(2)(A) (West 1993 & Supp. 2001). Exceptions to discharge are strictly construed against the objecting creditor, who must

2

prove each of the following elements by a preponderance of the evidence:
(1) The debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth;

**The debtors alleged the subject vehicle was an off-road vehicle, therefore its elevated design was intentional, which it did not have an on or off switch as also designed for street applications, which a bio-mechanical safety concern was falsely advertised and misrepresented.**

(2) The debtor intended to deceive the creditor;
(3) The creditor justifiably relied on the misrepresentation; and
(4) The creditor's reliance was the proximate cause of its loss.

See **Rembert v. AT&T Universal Card Servs., Inc. (In re Rembert), 141 F.3d 277, at 280-81 (6th Cir. 1998). Under § 523(a)(2)(A),** damages caused by the misrepresentation, plus other costs and damages flowing from the misrepresentation, are nondischargeable. See **Cohen v. De la Cruz, 118 S. Ct. 1212, 1218-19 (1998)** (including consequential damages, court costs, treble damages, and attorney fees if otherwise authorized).

The next § 523(a)(2)(A) element, fraudulent intent, is measured by a subjective standard. See **Rembert, 141 F.3d at 281**. Subjective intent can be especially difficult to establish because parties will rarely admit an intention to defraud. See id. at 282. Such purpose may therefore be inferred from the totality of a defendant's conduct. See **Burleson Constr. Co. v. White (In re White), 106 B.R. 501, 505-06 (Bankr. E.D. Tenn. 1989).**

There are obvious and numerous disparities between the Defendant's pre-sale representations and vehicle's actual condition.

It cannot seriously be doubted that the exclusive right to retain an equity interest in a business enterprise is "property" within the meaning of Section 1129(b)(2)(B)(ii). "[W]hile the Code itself does not define what 'property' means as the term is used in § 1129(b), the relevant legislative history suggests that Congress' meaning was quite broad," and included "'both tangible and intangible property.'" **Ahlers, 485 U.S. at 208 (quoting H.R. Rep. No. 95-595, at 413 (1977)).** Thus, "[e]ven where debts far exceed the current value of assets, a debtor who retains his equity interest in the enterprise retains 'property.'" Id. at 207-208. See also, e.g., **Kham & Nate's**

3

*Shoes No. 2, Inc. v. First Bank*, 908 F.2d 1351, 1360 (7th Cir. 1990) ("[a]n option to purchase stock also is 'property'" under § 1129(b)).

See *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, JV*, 209 F.3d 252, 258, 259-60 (3d Cir. 2000) (stating that "[u]nder the rule of ejusdem generis, the term 'other interest' would ordinarily be limited to interests of the same kind as those enumerated, i.e., 'liens, mortgages, security interests, encumbrances, liabilities, [and] claims'"; that "[m]ortgages, security interests, encumbrances and liabilities possess characteristics similar to a lien"; and that "[a] lien is distinct from the obligation it secures ...").

Supporting this conclusion, the Code's definitions suggest that "liens" and "interests in property" are interchangeable, as a "lien" is defined to mean a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(37) (emphasis added). See also, In re *Schwinn Bicycle Co.*, 210 B.R. 747, 761 (Bankr. N.D. Ill. 1997), aff'd, 217 B.R. 790 (N.D. Ill. 1997); In re *Fairchild Aircraft Corp.*, 184 B.R. 910, 917-19 (Bankr. W.D. Tex. 1995), vacated on other grounds, 220 B.R. 909 (Bankr. W.D. Tex. 1998).

### COHEN V. DE LA CRUZ ET AL – 523 U.S. 213-222

### COHEN v. de la CRUZ, Opinion of the Court:

§ 523(a)(2)(A) is best read to prohibit the discharge of any liability arising from a debtor's fraudulent acquisition of money, property, etc., including an award of treble damages for the fraud.

4

The history of the fraud exception reinforces our reading of § 523(a)(2)(A). The Bankruptcy Act of 1898 prohibited discharge of "judgments in actions for frauds, or obtaining property by false pretenses or false representations," § 17, 30 Stat. 550, and an award of punitive damages for fraud plainly fits in the category of "judgments in actions for fraud." The exception was broadened in 1903 to include all "liabilities for obtaining property by false pretenses or false representations," § 5, 32 Stat. 798, language that, *a fortiori*, encompasses liability for punitive damages. See **Brown, 442 U. S., at 138** (interpreting the provision as prohibiting discharge of "all debts arising out of conduct specified" therein); *In re St. Laurent,* **991 F. 2d, at 679** (noting "practice of holding debts for punitive damages nondischargeable"

Under this exception "if the compensatory damages. . . were themselves nondischargeable"). And the Bankruptcy Act of 1978 enacted a "substantially similar" provision, *Brown, supra,* at 129, n. 1, barring discharge of "any debt . . . for obtaining money, property, services, or scope of the fraud exception along the lines suggested by petitioner. If, as petitioner contends, Congress wished to limit the exception to that portion of the debtor's liability representing a restitutionary—as opposed to a compensatory or punitive—recovery for fraud, one would expect Congress to have made unmistakably clear its intent to distinguish among theories of recovery in this manner.

To the extent obtained by . . . false pretenses, a false representation, or actual fraud."

The most straightforward reading of § 523(a)(2)(A) is that it prevents discharge of "any debt" respecting "money, property, services, or . . . credit" that the debtor has fraudulently obtained, including treble damages assessed on account of the fraud. See **Field v. Mans, 516 U. S. 59, 61, 64** (1995) (describing § 523(a)(2)(A) as barring discharge of debts "resulting from" or "traceable to" fraud). First, an obligation to pay treble damages satisfies the threshold condition that it constitute a "debt." **A "debt" is defined in the Code as "liability on a claim,"** § 101(12), a "claim" is defined in turn as a "right to payment," § 101(5)(A), and a "right to payment," "is nothing more nor less than an enforceable obligation." *Pennsylvania* **Dept. of Public Welfare v. Davenport, 495 U. S. 552, 559 (1990).** Those definitions "reflec[t] Congress' broad . . . view of the class of

5

obligations that qualify as a 'claim' giving rise to a 'debt,' " *id.,* at 558, and they plainly encompass treble damages: An award of treble damages is an "enforceable obligation" of the debtor, and the creditor has a corresponding "right to payment."

In 1979, to address a gray area of the fraud exception to discharge statute, the United States Supreme Court promulgated the policy based approach in ***Brown v. Felsen.*57 Brown involved 11 U.S.C.** § 17a58 from the Bankruptcy Act of 1898, the precursor to § 523(a).59 In *Brown*, the parties settled a fraud claim and executed a consent judgment,60 but the judgment failed to state that the settlement was for fraud and whether the debtor admitted or denied wrongdoing.61 Subsequently, the debtor filed for bankruptcy and argued that resjudicata principles barred the creditor in an adversary hearing from reasserting the same claims that could have been resolved in the state claim.62 *Brown* held that bankruptcy policies best serve creditors by allowing them to submit additional evidence to show that the debt arose from a settled fraud claim.63 The Court reasoned that "Congress intended the fullest possible inquiry" into any debt arising from fraud.64 To support the "fullest possible inquiry" statement, the Court noted two demonstrative examples.65 First, the Court remarked that when Congress amended § 17a by replacing the word "judgments" with "liabilities," the broader term suggested that Congress wanted all debts stemming from fraud to be nondischargeable.66 Second, the Court cited the House Report accompanying the amendment, which stated that Congress only wanted "**honest**" debtors with liabilities not related to fraudulent "offenses" to receive a discharge.67

WHEREFORE ,plaintiff Sherif R. Kodsy herein requests recognition as a permanently injured individual as a result of the debtors misrepresentation, fraud and malicious intent which is similar to a conspired manslaughter, without remorse, which this claim #69683, should be a secured claim.

Thank you.

Very truly yours,

Sheriff R. Kodsy

6