**PRESENTMENT DATE AND TIME: June 13, 2011 at 12:00 noon (Eastern Time)**
**OBJECTION DEADLINE:  June 13, 2011 at 11:30 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Post-Effective Date Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re                                                                 :         **Chapter 11 Case No.**
                                                                         :
**MOTORS LIQUIDATION COMPANY,** *et al.*,   :         **09-50026 (REG)**
  f/k/a **General Motors Corp.,** *et al.*                  :
                                                                         :
                                      Debtors.              :         **(Jointly Administered)**
                                                                         :
------------------------------------------------------------x

## NOTICE OF PRESENTMENT OF PROPOSED
## ORDER APPROVING SETTLEMENT AGREEMENT

PLEASE TAKE NOTICE that Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as post-effective date debtors, will present the attached proposed order (the "**Proposed Order**") approving that certain settlement agreement annexed to the Proposed Order (the "**Settlement Agreement**"), between Responsible Environmental Solutions Alliance ("**RESA**" and together with MLC, the "**Parties**") and MLC regarding the disbursement of proceeds to MLC resulting from a settlement between the Parties and Chemical Waste Management, Inc. to the Honorable Robert E. Gerber, United States Bankruptcy Judge, for signature on **June 13, 2011 at 12:00 noon**.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Proposed

US_ACTIVE:\43723142\02\72240.0639

Order must be made in writing and received in the Bankruptcy Judge's chambers and by the undersigned not later than **11:30 a.m. on June 13, 2011**.  Unless objections are received by that time, the Proposed Order may be signed.

Dated: New York, New York
       June 7, 2011

                                           /s/ Stephen Karotkin
                                           Harvey R. Miller
                                           Stephen Karotkin
                                           Joseph H. Smolinsky

                                           WEIL, GOTSHAL & MANGES LLP
                                           767 Fifth Avenue
                                           New York, New York 10153
                                           Telephone: (212) 310-8000
                                           Facsimile: (212) 310-8007

                                           Attorneys for Debtors
                                           and Post-Effective Date Debtors

**PRESENTMENT DATE AND TIME: June 13, 2011 at 12:00 noon (Eastern Time)**
**OBJECTION DEADLINE: June 13, 2011 at 11:30 a.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
In re                                                       :        Chapter 11 Case No.
                                                            :
**MOTORS LIQUIDATION COMPANY**, *et al.*,                   :        09-50026 (REG)
    f/k/a General Motors Corp., *et al.* :
                                                            :
        Debtors.     :        (Jointly Administered)
                                                            :
---------------------------------------------------------------x

## ORDER APPROVING SETTLEMENT AGREEMENT

**WHEREAS** Responsible Environmental Solutions Alliance ("**RESA**") and Motors Liquidation Company ("**MLC**" and together with RESA, the "**Parties**") entered into that certain settlement agreement annexed hereto (the "**Settlement Agreement**") regarding the disbursement of proceeds to MLC resulting from a settlement between the Parties and Chemical Waste Management, Inc. (the "**CWM Settlement Proceeds**"), all as more fully described in the Settlement Agreement;

**WHEREAS** pursuant to the terms of the Settlement Agreement, the Settlement Agreement shall become effective upon entry of a final order of this Court approving the Settlement Agreement;

**WHEREAS** due and proper notice of the presentment of this Order has been provided, and no objections having been received;

**NOW**, after due deliberation and sufficient cause appearing therfor, it is

**ORDERED** that the Settlement Agreement is approved; and it is further

**ORDERED** that MLC is authorized to enter into the Settlement Agreement; and it is further

US_ACTIVE:\43723142\02\72240.0639

**ORDERED** that the Settlement Agreement shall be effective as of the date that this Order becomes a final order; and it is further

**ORDERED** that RESA shall pay, by wire transfer, to MLC the amount of $161,263.63 as provided in the Settlement Agreement; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2011

_____
United States Bankruptcy Judge

Privileged & Confidential
Attorney Work Product

## SETTLEMENT AGREEMENT

Responsible Environmental Solutions Alliance (for the purposes of this Settlement Agreement: "RESA," an unincorporated association of companies that are signatories to the Tremont City Barrel Fill Amended Superfund Site Participation Agreement dated June 18, 2010 ("Amended Agreement"), comprised of DPH – DAS LLC (f/k/a Delphi Automotive Systems LLC), The Procter & Gamble Company, PPG Industries, Inc., International Paper Company, Franklin International, Inc., Strebor Inc., and Worthington Cylinder Corporation), together with Motors Liquidation Company ("MLC," f/k/a General Motors Corporation) (collectively, the "Parties"), hereby enter into this Settlement Agreement dated March 29, 2011 (referred to hereafter as the "Settlement Agreement") as to the disbursement of proceeds from a settlement between the Parties and Chemical Waste Management, Inc. ("CWM").

### RECITALS:

**WHEREAS**, the U.S. Environmental Protection Agency (the "EPA") has informed the Parties that, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. §§ 9601 *et seq.* ("CERCLA"), they are alleged potentially responsible parties ("PRPs") for environmental response costs (hereinafter the "EPA Claims") at the Tremont City Barrel Fill Superfund Site (the "Site"); and

**WHEREAS**, the EPA, in connection with the EPA Claims, requested that the Parties enter into an Administrative Order on Consent (the "AOC") for the performance of Response Actions (defined as "Work" in the AOC) at the Site consisting of completion of a Site Remedial Investigation (the "RI") and a Site Feasibility Study (the "FS") (collectively, the "RI/FS"); and

**WHEREAS**, RESA made a coordinated and timely response to the EPA Claims, and to avoid litigation amongst themselves and/or the EPA, entered into the AOC with the EPA and thereby incurred response costs in completing the RI/FS and in reimbursement of Agency oversight costs ("AOC Response Costs"); and

**WHEREAS**, the Parties anticipate that the EPA will demand that some of the Parties perform further response actions at the Site; and

**WHEREAS**, RESA and CWM were parties in a matter captioned Responsible Environmental Solutions Alliance v. Waste Management, Inc., et al., Civil No. 3:04-CV-013, which was brought in the United States District Court for the Southern District of Ohio ("District Court") in which RESA sought to recover from CWM certain of the costs of their Response Actions to the EPA Claims, and the District Court entered Judgment in that matter on September 18, 2008, which Judgment was modified by agreement of the Parties, the appeal of the Judgment was withdrawn and the modified Judgment became final, known as Responsible Environmental Solutions Alliance v. Chemical Waste Management, Inc., Civil Nos. 08-4469 and 08-4470 (collectively, the "CWM Litigation"); and

**WHEREAS**, RESA and CWM resolved the claims at issue in the CWM Litigation

1

through settlement, whereby CWM agreed to pay the amount of $ 3,914,948.53 (the "CWM Settlement Proceeds") to resolve its share of AOC Response Costs ("CWM Settlement"); and

**WHEREAS**, MLC, formerly known as General Motors Corporation, which was a signatory to the Tremont City Barrel Fill Superfund Site Participation Agreement dated March 11, 2002 (the "Original Agreement"), is entitled to a portion of the CWM Settlement Proceeds; and

**WHEREAS**, pursuant to the Original Agreement and Amended Agreement, the Parties have paid or will have paid after execution of this Settlement Agreement for their respective shares of AOC Response Costs through the completion of the RI/FS and have agreed to deposit into an escrow account the estimated costs of completion of all AOC Response Action activities or other activities that the Parties may be obligated to perform pursuant to the Amended Agreement, which escrow account is held and managed by Dykema Gossett, PLLC in its client trust account; and

**WHEREAS**, MLC filed a petition under Chapter 11 bankruptcy of the Bankruptcy Code captioned In re Motors Liquidation Company f/k/a General Motors Corporation, et al., Civil No. 09-50026 in the United States Bankruptcy Court for the Southern District of New York ("In re Motors Liquidation Company") (the "Case"), in which Case MLC seeks to discharge certain of its environmental liabilities, including future AOC Response Costs that may be incurred for MLC's alleged liability at the Site; and

**WHEREAS**, the Parties have agreed to resolve both MLC's claim to a portion of the CWM Settlement Proceeds and MLC's liability for any future AOC Response Costs at the Site;

**NOW, THEREFORE**, in consideration of the mutual obligations and conditions contained herein and the payment made pursuant hereto and intending to be legally bound by this Settlement Agreement, the Parties do hereby agree as follows:

1.  Incorporation of Recitals. The foregoing recitals are incorporated into this Settlement Agreement by this reference, as fully and with the same force and effect as if repeated herein verbatim.

2.  Payment by RESA. On or before the third business day after the order in the Case approving this settlement and authorizing MLC to execute this Settlement Agreement (the "Approval Order") has been entered and is no longer subject to any form of appellate review (including, without limitation, review by the United States Supreme Court following grant of a petition for certiorari) (a "Final Order"), RESA will pay MLC the $161,263.63 (the "Settlement Amount") that MLC would receive from the CWM Settlement Proceeds, pursuant to the Disbursement Plan (attached hereto as Exhibit A). RESA's payment to MLC of the Settlement Amount shall be in full settlement and satisfaction of all of MLC's claims to the CWM Settlement Proceeds. The Approval Order shall be in form and substance, satisfactory to RESA's counsel in the exercise of its sole discretion.

2

**Privileged & Confidential**
**Attorney Work Product**

3. <u>Rights and Obligations of MLC</u>.

    a. Following payment of the Settlement Amount, MLC shall be relieved of any future obligations and expenses which MLC would incur if it executed the Amended Agreement.

    b. MLC hereby agrees to RESA's recoupment of MLC's portion of Shared Costs, as that term is defined in the Original Agreement, in the amount of $35,213.30, from MLC's share of the CWM Settlement Proceeds. For the sake of clarity, MLC hereby acknowledges and agrees that the Settlement Amount reflects RESA's recoupment of MLC's unpaid Shared Costs in the amount of $35,213.30.

    c. MLC hereby waives all claims against any of the trust funds that have been or will be established pursuant to the CWM Settlement. Those trust funds consist of: (i) past costs, including, without limitation, $136,165.50 to fund 2009 EPA oversight costs; and (ii) future costs, including, without limitation (A) $56,560.00 to fund 2010 EPA oversight costs; (B) $200,000.00 in RESA funds for shared future costs; (C) $149,000.00 to pay for future remediation costs; and (D) $437,225.93 to be distributed to RESA members for their individual pro rata shares of AOC Response Costs after adjustment pursuant to a final allocation agreement.

    d. MLC will submit to RESA its notice of withdrawal from the Original Agreement pursuant to Paragraph 9.4 of the Original Agreement on or before the second business day after the Approval Order becomes a Final Order.

4. <u>Scope of Agreement</u>. It is the intention of the Parties to this Settlement Agreement that the agreements and releases given herein are limited to the Tremont Barrel Fill Superfund Site RI/FS work, and claims arising in connection with the Tremont Barrel Fill Superfund Site RI/FS work, and shall in no way affect the liabilities the Parties may have to one another relating to other sites.

5. <u>Entire Agreement</u>. This Settlement Agreement constitutes the entire agreement between the Parties, and supersedes any and all prior agreements or understanding, both oral and written, between and among the Parties and/or their respective counsel, with respect to the Tremont Barrel Fill Superfund Site as to the matters addressed herein.

6. <u>Modifications.</u> This Settlement Agreement shall remain in full force and effect, and shall not be modified unless in a writing signed by the Parties, and shall be binding on and inure to the benefit of the Parties and each of their respective successors and assigns, including without limitation, any Chapter 11 or Chapter 7 bankruptcy trustee in the Case.

7. <u>Knowing and Voluntary</u>. The undersigned agents on behalf of the Parties acknowledge that they have read this Settlement Agreement, have consulted with counsel concerning it, and are familiar with its terms. They acknowledge that they enter into this Settlement Agreement voluntarily and without any Party admitting any liability to any other

3

party, and nothing contained herein shall be deemed to be admissible to prove any fact or liability other than for purposes of enforcing this Settlement Agreement. The undersigned agents further acknowledge that they enter into this Settlement Agreement in good faith for the purpose of resolving any potential claims between the Parties as described herein without the expense and uncertainty of further litigation, and not as a result of any requirement, coercion or intimidation.

8. <u>Headings</u>. The headings set forth herein are inserted for the convenience of the Parties only, and shall not be used to interpret or construe or in any way affect the meaning of the terms and provisions of this Settlement Agreement.

9. <u>Neutral Construction.</u> The Parties agree that each of them had an opportunity to participate in the drafting of the Settlement Agreement and, therefore, that neither the Settlement Agreement nor any of its terms should be construed against either Party.

10. <u>Counterparts</u>. This Settlement Agreement may be executed in any number of counterparts, each of which shall be an original and all of which, when taken together, shall constitute one and the same document. The signatures on this Settlement Agreement may be exchanged by the Parties by simultaneous service via facsimile and certified mail, return receipt requested.

11. <u>Governing Law and Venue</u>. This Settlement Agreement shall be governed by the laws of the State of Ohio. Any and all claims for disputes regarding the validity or enforcement of this Agreement shall be filed exclusively in the United States District Court for the Southern District of Ohio.

12. <u>Effective Date</u>. This Settlement Agreement will be effective when signed by all Parties and when the Approval Order has become a Final Order.

13. <u>Authorization.</u> The Parties to this Agreement agree and acknowledge that they, and the individuals signing this Agreement on their behalf, have the power to enter into and perform this Agreement, and the execution and performance of this Agreement have been duly authorized by all requisite corporate or other action.

**Privileged & Confidential**
**Attorney Work Product**

**IN WITNESS WHEREOF,** the Parties have caused their respective duly authorized representative or agent to execute this Settlement Agreement.

| RESPONSIBLE ENVIRONMENTAL SOLUTIONS ALLIANCE ("RESA")* | MOTORS LIQUIDATION COMPANY ("MLC") |
|---|---|
| Signature: *Jerome I. Maynard* April 25, 2011 | Signature: *Ted Stenger* |
| Printed Name: Jerome I. Maynard | Printed Name: TED STENGER |
| Title: RESA Common Counsel | Title: EVP |

* an unincorporated association consisting of:

DPH – DAS LLC
  (f/k/a Delphi Automotive Systems LLC)
The Procter & Gamble Company
PPG Industries, Inc.
International Paper Company
Franklin International, Inc.
Strebor Inc.
Worthington Cylinder Corporation

CHICAGO\3244207.1
ID\SASA - 085967/0001

## Chart for Distribution of CWM Settlement Funds

| | Balance available for distribution | Initial Allocation Percentage | Subtotal | RESA 50.5% Share of EPA 2009 oversights costs of $269,634.66 = $136,165.50 | RESA 50.5% Share of EPA estimated 2010 Oversight Costs = $112,000 | Unpaid assessments | Amount to be distributed |
|---|---|---|---|---|---|---|---|
| Delphi Automotive Syst | $3,128,722.60 | 61.305% | $1,918,063.39 | $83,476.26 | $34,674.11 | $0.00 | $1,799,913.02 |
| Franklin International | $3,128,722.60 | 3.019% | $94,456.14 | $4,110.84 | $1,707.55 | $0.00 | $88,637.75 |
| General Motors | $3,128,722.60 | 6.692% | $209,374.12 | $9,112.20 | $3,785.00 | $35,213.30 | $161,263.63 |
| International Paper | $3,128,722.60 | 4.676% | $146,299.07 | $6,367.10 | $2,644.75 | $5,667.31 | $131,619.91 |
| PPG Industries | $3,128,722.60 | 6.058% | $189,538.02 | $8,248.91 | $3,426.40 | $0.00 | $177,862.70 |
| Procter & Gamble | $3,128,722.60 | 14.195% | $444,122.17 | $19,328.69 | $8,028.69 | $0.00 | $416,764.79 |
| Strebor | $3,128,722.60 | 2.409% | $75,370.93 | $3,280.23 | $1,362.53 | $2,919.71 | $67,808.46 |
| Worthington Cylinder | $3,128,722.60 | 1.646% | $51,498.77 | $2,241.28 | $930.98 | $1,994.95 | $47,262.54 |
| **TOTALS** | | **100.000%** | **$3,128,722.60** | **$136,165.50** | **$56,560.00** | **$45,795.27** | **$2,891,132.81** |

* - The distribution of the total CWM settlement amount of $3,914,948.53 is as follows:

**$3,914,948.53** - CWM settlement amount.
$437,225.93 - for separate escrow account for final allocation.
$200,000.00 - for existing client trust account for ongoing group costs ($99,000 CWM + $101,000 former PRP Group other than Delphi).
$149,000.00 - for separate escrow account for future RI/FS costs without Delphi.

**$3,128,722.60** - for balance to be distributed to former PRP Group. See above chart.

Note that the this proposal takes the non-Delphi RESA share of the $200,000 Future Shared Costs escrow from $250,000 non Delphi escrow fund, thereby eliminating the need to calculate adjusted interim non Delphi RESA allocation shares.

EXHIBIT A

CH12988427.1 (Rev. 7/14/10)