Hearing Date and Time: June 22, 2011 at 9:45 a.m. (Prevailing Eastern Time)
Objection Date and Time: June 15, 2011 at 4:00 p.m. (Prevailing Eastern Time)

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------- x
                                                        :
In re:                                                  :   Chapter 11
                                                        :
MOTORS LIQUIDATION COMPANY, *et al.,*                   :   Case No. 09-50026
   f/k/a General Motors Corp., *et al.,*                :   (Jointly Administered)
                                                        :
              Debtors.                                  :   Honorable Robert E. Gerber
                                                        :
------------------------------------------------------- x

**FEE EXAMINER'S STATEMENT WITH RESPECT TO AP SERVICES, LLC'S**
**APPLICATION FOR APPROVAL OF DISCRETIONARY FEES**

TO:   THE HONORABLE ROBERT E. GERBER
      UNITED STATES BANKRUPTCY JUDGE

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), by his counsel, Godfrey & Kahn, S.C., responds with this statement of no objection to the *Application by AP Services, LLC as Crisis Managers to the Debtors for Approval of Discretionary Fees* [Docket No. 10143] ("**Application for Discretionary Fees**"), requesting three separate awards: (i) $7.0 million upon confirmation of the Debtors' plan of liquidation; (ii) $2.5 million upon distribution of stocks and warrants under the Debtors' plan; and (iii) up to $5.0 million for claim reductions (collectively, the "**Discretionary Fees**"). The award for $9.5 million of the requested $14.5 million would be virtually immediate—with the award

arising from claim reductions to be paid subsequently in one or more installments upon verification from the General Unsecured Claims ("GUC") Trustee that the ultimate level of claim reductions warrants the additional fees.

## SUMMARY STATEMENT

The Fee Examiner does not object to the award of the Discretionary Fees in the aggregate amount of up to $14.5 million to AP Services, LLC ("APS"). Whether or not the Fee Examiner has standing to object, the objective criteria for the award of $9.5 million have been met by the occurrence of the triggering events—the Debtors' plan has been confirmed and the requisite amount of stocks and warrants has been issued. The third element of the application for Discretionary Fees is linked to the Debtors' reduction of claims against the estate. This award is also rests on objective criteria: a graduated payment based on the level of verified claim reductions up to a maximum of $5.0 million.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. The Debtors' chapter 11 cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Federal Rule of Bankruptcy Procedure 1015(b). The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

2. On June 3, 2009, the United States Trustee for the Southern District of New York appointed the statutory committee of unsecured creditors pursuant to 11 U.S.C. § 1102 (the "**Creditors' Committee**").

3. On December 23, 2009, the United States Trustee, the Debtors, and the Creditors' Committee proposed by stipulation the appointment of Brady C. Williamson as examiner (the

2

"**Fee Examiner**") and, without objection and through the Fee Examiner Order entered that same day, the Court approved the appointment of the Fee Examiner to review and assess all fee applications filed by Retained Professionals subject to the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Fee Examiner Order**").

4.      In its *Amended Order Authorizing the Debtors to Employ and Retain AP Services, LLC as Crisis Managers and to Designate Albert A. Koch as Chief Restructuring Officer, Nunc Pro Tunc to the Petition Date*, dated July 2, 2009 [Docket No. 2949] (the "**Retention Order**"), the Debtors were authorized to retain APS pursuant to section 363 of the Bankruptcy Code. The Court's order provided that APS would *not* be required to submit fee applications for its hourly services pursuant to sections 330 and 331, ordering as well, however, that "APS and its personnel shall be required to: (i) maintain contemporaneous time records in tenth of an hour increments and (ii) conform to any schedule of hourly rates contained in the Engagement Letter...." *Id.*, p. 3.

5.      In addition, the original success fee and any discretionary fees (as defined in the Retention Order) were "subject to review under the reasonableness standards of sections 330 and 331 of the Bankruptcy Code, including the filing of appropriate fee applications (which shall include time records)." *Id.*, p. 5-6.

6.      Whether or not the Fee Examiner was required, under the terms of the Fee Examiner Order, to review any of APS's applications for reasonableness, he filed on April 22, 2010, the *Fee Examiner's Statement Concerning Fee Application of AP Services* [Docket No. 5567]. It reserved the right to audit or file an objection to APS compensation reports and fee applications if appropriate and/or required under the terms of the Retention Order or the Fee

3

Examiner Order. *Id.*, Summary Statement, p. 2. APS filed its Response [Docket No. 5627], and this Court held: "[T]he dispute isn't yet ripe for a decision as the fee examiner hasn't tried to audit or object to AP Services' fees and the fee examiner hasn't responded to the points AP Services made in its objection….[E]ach side will now have a reservation of rights with respect to these issues." *In re Motors Liquidation Company*, First Interim Fee Hr'g Tr. at 42:9-13, 17-19; No. 09-50026 (Bankr. S.D.N.Y. Apr. 29, 2010, 5:24 P.M.) [Docket No. 5699].

7. On July 16, 2010, the Debtors filed the *Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 363 Authorizing the Debtors to Amend the Terms of Their Engagement Letter with AP Services, LLC* [Docket No. 6362][1] (the "**Motion to Amend**"), and APS filed its *Application by AP Services, LLC as Crisis Managers to the Debtors for Approval of the Success Fee* [Docket No. 6363] (the "**Success Fee**").

8. Among the amendments for which APS sought Court approval was a "retroactive" change in hourly rates that, in effect, eliminated the discounted rates previously approved by the Court in connection with the First Amendment. Motion to Amend, ¶ 9(1). "The hourly rate changes shall be retroactive to July 10, 2009, and through April 30, 2010 [the value of] this adjustment aggregates approximately $5.3 million." *Id*. That amount would be payable in a lump sum upon the Court's approval of the June 7, 2010 letter from APS to the Board of Directors of Motors Liquidation Company (the "**Third Amended Engagement Letter**").[2] In addition, the increased hourly rates would continue after April 30, 2010, and would subsequently

---

[1] The initial engagement letter between APS and the Debtors dated May 29, 2009 had twice been amended, once with the approval of this Court on August 18, 2009 [Docket No. 3831] (the "**First Amendmen**t") and once by amendment dated November 12, 2009.

[2] The Third Amended Engagement Letter notes that the "Hourly Rate Changes, as subsequently defined, shall be retroactive to the Closing Date," July 10, 2009. Third Amended Engagement Letter, p. 2.

4

be billed and paid promptly going forward. *Id.* The Motion to Amend also requested approval for discretionary and incentive payments on amended terms.

9. On July 30, 2010, the Creditors' Committee filed the *Limited Objection of the Official Committee of Unsecured Creditors to the Debtors' Motion for an Order Pursuant to 11 U.S.C. § 363 Authorizing the Debtors to Amend the Terms of Their Engagement Letter with AP Services, LLC* [Docket No. 6451].

10. On August 3, 2010, the Fee Examiner filed the *Fee Examiner's Response and Motion to Defer the Consideration of Debtors' Request for an Award to AP Services, LLC of a Success Fee and a Retroactive Hourly Rate Increase* [Docket No. 6497]. The Fee Examiner's Response did not address *per se* the amended discretionary and incentive payments requested in the Motion to Amend but, rather, requested that the matters be deferred until the filing of a plan of reorganization.

11. On August 4, 2010, the U.S. Trustee filed the *Response of the United States Trustee to Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 363 Authorizing the Debtors to Amend the Terms of Their Engagement Letter with AP Services, LLC* [Docket No. 6517] and the *Objection of the United States Trustee to Application of AP Services, LLC as Crisis Managers for the Debtors for Approval of the Success Fee* [Docket No. 6518].

12. On August 30, 2010, the Fee Examiner filed the *Fee Examiner's Supplemental Response and Motion to Defer an Award of a Retroactive Hourly Increase* [Docket No. 6819], requesting supplemental detail related to APS's claim for expense reimbursement.

13. On August 30, 2010, the U.S. Trustee filed the *Response of the United States Trustee Regarding Application by AP Services, LLC, as Crisis Managers to the Debtors for*

5

*Approval of Success Fee and Reimbursement of Expenses* [Docket No. 6820], objecting to certain APS expense reimbursement items.

14. After two hearings and the submission of supplemental affidavit testimony that satisfied the Court, the Creditors' Committee, and the United States Trustee that the Debtors had reasonably exercised their business judgment in agreeing to the amended engagement terms, the Court entered its *Order Pursuant to 11 U.S.C. § 363 Authorizing the Debtors to Amend the Terms of Their Engagement Letter with AP Services* [Docket No. 6966] (the "**Third Amendment Order**") and *Order Granting Application of AP Services, LLC as Crisis Managers to the Debtors for Approval of Success Fee* [Docket No. 6967].

15. The Third Amendment Order authorized the Debtors to make all payments provided for in the Third Amended Engagement Letter. The Third Amendment Order did not, either explicitly or implicitly, authorize the Fee Examiner to review or evaluate APS's fee requests. Nor did it require the submission of detailed time records.

16. On March 29, 2011, the Court confirmed the Second Amended Joint Chapter 11 Plan of Motors Liquidation Company (the "**Plan**").

17. On April 29, 2011, APS filed its Application for Discretionary Fees totaling as much as $14.5 million.

**STANDARDS**

18. The Retention Order, entered pursuant to 11 U.S.C. § 363, provides that APS shall submit quarterly reports of compensation earned and that parties in interest shall have the right to object to fees and expenses under the reasonableness standards of sections 330 and 331

6

of the Bankruptcy Code within 20 days after APS filed each of those reports.[3]  In connection with the success fees and discretionary fees described in the Retention Order, however, there was a complementary requirement for a fee application, including time records.  This requirement appeared superseded by the language of the Third Amendment Order, which authorizes the Debtors to make payments as provided in the Third Amended Engagement Letter.

19.     Pursuant to section 363(b), the court may grant an application for a chapter 11 debtor to use property of the estate other than in the ordinary course of business upon a showing of "some articulated business justification, other than appeasement of major creditors." *In re Lionel*, 722 F.2d 1063, 1070 (2d Cir. 1983).  In entering the Third Amendment Order, the Court concluded that the Debtors, through their board of directors, had reasonably exercised their business judgment in agreeing to the Discretionary Fees.

20.     Once a court pre-approves compensation—under section 328(a) of the Bankruptcy Code, for example—it generally does not revisit that determination unless the compensation can be shown to be "improvident in light of developments not capable of being anticipated at the time of fixing such terms and conditions." *In re XO Commc'ns, Inc.*, 398 B.R. 106, 11213 (Bankr. S.D.N.Y. 2008) (quoting 11 U.S.C. § 328(a)).  The "improvidence" standard is difficult to meet, and courts rarely disturb the original terms of employment.  *Id.* at 113; *see In re Yablon*, 136 B.R. 88, 92 (Bankr. S.D.N.Y. 1992).  The Fee Examiner is unaware of any circumstances that might rise to this standard here.

21.     Similarly, even assuming that the Discretionary Fees are subject to section 330(a) review, the Bankruptcy Code authorizes a court to award professionals "reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1)(A).  When

---

[3] APS' quarterly reports, with or without objection, have been summary in fashion.  They do not contain the fee detail or time records normally associated with fee application approval or disapproval based on the statutory and administrative reasonableness standards.  APS has filed neither interim nor final fee applications.

7

evaluating a professional's request for fees, courts distinguish between fees earned upon accomplishing a stated goal, such as consummation of a transaction (i.e., "transaction," "restructuring," or "success" fees), and fees reflecting an upward departure from contract compensation as a result of performance and results. (i.e., "fee enhancements"). *In re XO Commc'ns*, 398 B.R. at 113 n.8.

22.     Here, the requested fees are tied to specific goals in the Third Engagement Letter and do not reflect a fee enhancement; hence, they generally satisfy the reasonableness standard under section 330 of the Bankruptcy Code so long as they comport with "prevailing market practices." *Id*. at 117.

    A.    The triggering events for the fees requested by APS—plan confirmation, asset distribution, and claims resolution—are not uncommon compensation mechanisms for financial and workout firms, and they are often part of the market-based structure for turnaround and restructuring services. *See*, *e.g.*, *In re XO Commc'ns*, 398 B.R. at 110 (differing payment terms depending on which plan ultimately confirmed).

    B.    Their total, moreover, is reasonable in the context of the services provided by APS in a proceeding where the total compensation requested by all of the professionals, not including APS, approaches $125 million.

## CONCLUSION

In light of the Third Amendment Order and the events triggering the payment of the Discretionary Fees, the Fee Examiner does not object to APS' request for immediate payment of $9.5 million in Discretionary Fees and an additional amount, up to $5.0 million, in one or more installments at the time that APS and the GUC Trustee verify that the final claims reductions warrant the additional Discretionary Fees.

8

Dated: Milwaukee, Wisconsin
       June 15, 2011.

                                GODFREY & KAHN, S.C.

By:      /s/ *Carla O. Andres*
     Carla O. Andres
     Timothy F. Nixon

     GODFREY & KAHN, S.C.
     780 North Water Street
     Milwaukee, Wisconsin 53202
     Telephone: (414) 273-3500
     Facsimile: (414) 273-5198
     E-mail: candres@gklaw.com
              tnixon@gklaw.com

     *Attorneys for Fee Examiner*

6445103_5

9