Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Post-Effective Date
Debtors and Motors Liquidation GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | |
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
| f/k/a **General Motors Corp.**, *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

**NOTICE OF HEARING ON CROSS-MOTION OF POST-EFFECTIVE DATE
DEBTORS AND MOTORS LIQUIDATION COMPANY GUC TRUST
IN OPPOSITION TO RELIEF SOUGHT BY CLAIMANT AND FOR
ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 1142(B)
AND FED R. BANKR. P. 7012(B) AND 9014(C) (I) ENFORCING SETTLEMENT
AGREEMENT WITH CLAIMANT BARRY H. SPENCER, JR.;
(II) STRIKING DOCUMENTS FILED BY CLAIMANT; AND (III) ENJOINING
CLAIMANT FROM FURTHER ACTION AGAINST THE DEBTORS,
POST-EFFECTIVE DATE DEBTORS, MOTORS LIQUIDATION COMPANY
GUC TRUST, AND THEIR OFFICERS AND PROFESSIONALS**

PLEASE TAKE NOTICE that upon the annexed Cross-Motion, dated July 7,

2011 (the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and

its affiliated debtors, as post-effective date debtors (collectively, the "**Debtors**") and Motors

Liquidation Company GUC Trust (the "**GUC Trust**"), for an order, pursuant to sections 105(a)

and 1142(b) of title 11, United States Code (the "**Bankruptcy Code**") and Rules 7012(b) and

9014(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an

order (i) enforcing a settlement agreement with claimant Barry H. Spencer, Jr. ("**Claimant**"); (ii)

striking documents filed by Claimant; and (iii) enjoining Claimant from further action against the

Debtors, the GUC Trust, and their officers and professionals, all as more fully set forth in the

Motion, a hearing will be held before the Honorable Robert E. Gerber, United States Bankruptcy

Judge, in Room 621 of the United States Bankruptcy Court for the Southern District of New

York, One Bowling Green, New York, New York 10004, on **September 26**, **2011 at 9:45 a.m.**

**(Eastern Time),** or as soon thereafter as counsel may be heard.

        PLEASE TAKE FURTHER NOTICE that any responses or objections to this

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors and Post-Effective Date Debtors and the GUC Trust, 767 Fifth Avenue,

New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph

H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old

Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii)

General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S.

Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States

Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.), (xii) Gibson, Dunn & Crutcher LLP, attorneys for Wilmington Trust Company as GUC Trust Administrator and for Wilmington Trust Company as Avoidance Action Trust Administrator, 200 Park Avenue, 47th Floor, New York, New York 10166 (Attn:  Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust Monitor and as the Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree

3

Street, Suite 500, Atlanta, Georgia 30309 (Attn: Anna Phillips); (xiv) Crowell & Moring LLP,

attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590 Madison

Avenue, 19th Floor, New York, New York 10022-2524 (Attn: Michael V. Blumenthal, Esq.);

(xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard,

Austin, Texas 78703, (xvi) Barry H. Spencer, Jr., Offender ID A115500, MCI-Concord, 965 Elm

Street, P.O. Box 9106, Concord, MA 01742, as the Claimant, and (xvii) Sylvester R. Spencer,

P.O. Box 91128, Roxbury, MA 02119, as agent/personal representative of Claimant, so as to be

received no later than **September 19**, **2011, at 4:00 p.m. (Eastern Time)** (the "**Objection**

**Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated: New York, New York
       July 7, 2011

                                              /s/ Joseph H. Smolinsky
                                              Harvey R. Miller
                                              Stephen Karotkin
                                              Joseph H. Smolinsky

                                              WEIL, GOTSHAL & MANGES LLP
                                              767 Fifth Avenue
                                              New York, New York 10153
                                              Telephone: (212) 310-8000
                                              Facsimile: (212) 310-8007

                                              Attorneys for Debtors and Post-Effective Date
                                              Debtors and Motors Liquidation GUC Trust

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Post-Effective Date
Debtors and Motors Liquidation GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                      :
In re                                 :       Chapter 11 Case No.
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :       09-50026 (REG)
      f/k/a General Motors Corp., et al. :
                                      :
                      Debtors.        :       (Jointly Administered)
                                      :
------------------------------------------------------------x
```

**CROSS-MOTION OF POST-EFFECTIVE DATE DEBTORS AND MOTORS
LIQUIDATION COMPANY GUC TRUST FOR ENTRY OF ORDER PURSUANT TO 11
U.S.C. §§ 105(A) AND 1142(B) AND FED R. BANKR. P. 7012(B) AND 9014(C)
(I) ENFORCING SETTLEMENT AGREEMENT WITH CLAIMANT BARRY H.
SPENCER, JR.; (II) STRIKING DOCUMENTS FILED BY CLAIMANT;
AND (III) ENJOINING CLAIMANT FROM FURTHER ACTION AGAINST
THE DEBTORS, POST-EFFECTIVE DATE DEBTORS, MOTORS LIQUIDATION
COMPANY GUC TRUST, AND THEIR OFFICERS AND PROFESSIONALS**

# TABLE OF CONTENTS

**Page**

Relief Requested ................................................................................................................... 1

Jurisdiction .......................................................................................................................... 2

Background .......................................................................................................................... 2

    A.     The Bar Date Order ................................................................................... 2

    B.     The Settlement Procedures Order ............................................................ 2

    C.     The ADR Order and ADR Procedures .................................................... 3

    D.     The Spencer Claims ................................................................................. 3

    E.     Designation of Spencer Claim for ADR Procedures, Including Mandatory
           Mediation ................................................................................................. 4

    F.     The Spencer Settlement ............................................................................ 5

    G.     Claimant's Subsequent Filings in This Court ......................................... 6

    H.     The Plan and Confirmation Order ......................................................... 10

The Spencer Settlement Agreement Should Be Enforced by the Court ...................................... 12

The Court Should Strike From the Record the Immaterial and Impertinent Documents
Filed by Claimant .............................................................................................................. 15

Claimant Should Be Enjoined From Taking Further Action Against the Debtors, the GUC
Trust, and Their Officers and Professionals ..................................................................... 19

Notice ................................................................................................................................ 21

Conclusion ........................................................................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Affordable Efficiencies, Inc. v. Bane* (*In re Bane*),
  228 B.R. 835 (Bankr. W.D. Va. 1998) ...................................................................15

*Autera v. Robinson*,
  419 F.2d 1197 (D.C. Cir. 1969) ...........................................................................12

*Bank of New York v. Amoco Oil Co.*,
  35 F.3d 643 (2d Cir. 1994)..................................................................................13

*Brock v. Scheuner Corp.*,
  841 F.2d 151 (6th Cir. 1988) ...............................................................................12

*Brown v. Thompson*,
  886 N.Y.S.2d 66, 2009 WL 997509 (N.Y. Sup. Ct. Mar. 2, 2009) .................................7, 8, 18

*Callie v. Near*,
  829 F.2d 888 (9th Cir. 1987) ...............................................................................12

*In re Cudeyro*,
  213 B.R. 910 (Bankr. E.D. Pa. 1997) ....................................................................14

*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) ....................................................16

*Gleason v. Chain Serv. Rest.*, 300 F. Supp. 1241, 1257 (S.D.N.Y. 1969), *aff'd*, 422 F.2d
  342, 343 (2d Cir. 1970) ......................................................................................16

*Hallock v. State*, 64 N.Y.2d 224 (N.Y. 1984) ...........................................................................13

*Herzog v. Leighton Holdings, Ltd.* (*In re Kids Creek Partners, L.P.*, ), Case No. 94-B-
  23947, 1997 Bankr. LEXIS 215 (Bankr. N.D. Ill. Feb. 28, 1997) ...........................................16

*In re Hillsborough Holdings Corp.*,
  267 B.R. 882 (Bankr. M.D. Fla. 2001) ..................................................................12

*Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp.* (*In re Johns-Manville
  Corp.*),
  7 F.3d 32 (2d Cir. 1993)......................................................................................19

*In re Krypton Broadcasting of Ft. Pierce, Inc.*,
  181 B.R. 657 (Bankr. S.D. Fla. 1995) ...................................................................14

*Kirke v. Howe*, No. 98-9228, 1999 WL 197209, 1999 U.S. App. LEXIS 5697 (2d Cir.
Mar. 26, 1999) ....................................................................................................12

*MacDonald v. Dragone Classic Motors Cars*,
No. 3:95-CV-499, 2003 U.S. Dist. LEXIS 14587 (D. Conn. Apr. 29, 2003).........................14

*Mahoney v. Turner Constr. Co.*,
872 N.Y.S.2d 433 (N.Y. App. Div. 2009..............................................................15

*Mid-South Towing Co. v. Har-Win, Inc.*,
733 F.2d 386 (5th Cir. 1984) ..............................................................................12

*In re Momentum Mfg. Corp.*,
25 F.3d 1132 (2d Cir. 1994)................................................................................13

*Murchison v. Grand Cypress Hotel Corp.*,
13 F.3d 1483 (11th Cir. 1994) ............................................................................12

*Novak & Co. v. New York Convention Ctr. Dev. Corp.*,
202 A.D. 2d 205 (N.Y. App. Div. 1994)  .............................................................13

*Ozyagcilar v. Davis*,
701 F.2d 306 (4th Cir. 1983) ..............................................................................12

*Penthouse Media Group v. Guccione (In re Gen. Media, Inc.)*,
335 B.R. 66 (Bankr. S.D.N.Y 2005)...................................................................19

*In re Petition of Board of Dirs. of Hopewell Int'l Ins., Ltd.*,
272 B.R 396 (Bankr. S.D.N.Y. 2002).................................................................20

*Racanelli v. Constr. Co. v. Tadco Constr. Corp.*,
855 N.Y.S.2d 645 (N.Y. App. Div. 2008) ...........................................................13

*In re River Center Holdings, LLC*,
394 B.R. 704 (Bankr. S.D.N.Y. 2008) (REG) .....................................................13

*Ruffino v. Murphy*,
Case No. 09-cv-1287, 2009 U.S. Dist. LEXIS 117357 (D. Conn. Dec. 16, 2009).................16

*Scelsa v. City Univ. of N.Y.*, 76 F.3d 37 (2d Cir. 1996) .............................................12

*In re Stacker*, Ch. 11 Case No. 10-30262, 2011 Bankr. LEXIS 204 (Bankr. S.D. Ill. Jan.
20, 2011)  ..........................................................................................................15

*In re Stokes*, 198 B.R. 168 (E.D. Va. 1996) .............................................................12

*In re Sure-Snap Corp.*,
91 B.R. 178 (Bankr. S.D. Fla. 1988)..................................................................12

*TouchTunes Music Corp. v. Rowe Int'l Corp.*,
Case No. 07-cv-11450, 2010 U.S. Dist. LEXIS 106353 (S.D.N.Y. Oct. 4, 2010) ..................16

*United States v. Hardage*,
982 F.2d 1491 (10th Cir. 1993) ........................................................................12

*Universal Outdoor, Inc. v. City of New Rochelle*,
286 F. Supp. 2d 268 (S.D.N.Y. 2003)..........................................................12, 13

*Whittlestone, Inc. v. Handi-Craft Co.*,
618 F.3d 970 (9th Cir. 2010) ............................................................................16

*Wilson v. Wilson*,
46 F.3d 660 (7th Cir. 1995) ..............................................................................12

### Statutes

11 U.S.C. § 105(a) .................................................................................1, 3, 13

11 U.S.C. § 362(a) .............................................................................................20

11 U.S.C. § 1142 ........................................................................................1, 19

28 U.S.C. § 157 ..................................................................................................2

28 U.S.C. § 1334 ................................................................................................2

Fed. R. Bankr. P. 1015(c) ................................................................................21

Fed. R. Bankr. P. 3020(d) .........................................................................10, 20

Fed. R. Bankr. P. 7012(b) ..........................................................................1, 15

Fed. R. Bankr. P. 9014(c) ..........................................................................1, 15

Fed. R. Civ. P. 12(f) .........................................................................................15

### Other Authorities

The Lawless Ones:  The Resurgence of the Sovereign Citizen Movement, Anti-Defamation
League (Aug. 9, 2010), *available at*
http://www.adl.org/learn/sovereign_movement/sovereign_citizens_movement_report.
pdf .....................................................................................................................7

Federal Bureau of Investigation, Two Plead Guilty to Mail Fraud (Jan. 13, 2011),
    *available at* http://www.fbi.gov/albany/press-releases/2011/alfo011311.htm .........................8

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as post-effective date debtors (collectively, the "**Debtors**") and Motors

Liquidation Company GUC Trust (the "**GUC Trust**"), respectfully represent:

**Relief Requested**

1.       In September 2010, claimant Barry H. Spencer, Jr. ("**Claimant**") and the

Debtors entered into a settlement agreement resolving Claimant's claims asserted against the

Debtors (the "**Spencer Settlement Agreement**").[1]  Claimant seeks to disavow the Spencer

Settlement Agreement and reinstate his claims, assert new claims, and encumber the property of

the Debtors, the GUC Trust, and certain officers and professionals, by filing numerous pleadings

and documents with this Court, including "Notices of Maritime Liens," which name the Debtors

and certain officers and professionals as the "vessels" on which such liens are sought, and a

petition for warrants for issuance of arrest of the Debtors, the GUC Trust, and certain of their

officers and professionals.

2.       By this Cross-Motion, the Debtors and the GUC Trust request entry of

order pursuant to sections 105(a) and 1142(b) of title 11, chapter 11 of the United States Code

(the "**Bankruptcy Code**") and Rules 7012(b) and 9014(c) of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), substantially in the form annexed hereto as **Exhibit "A,"**

enforcing the terms of the Spencer Settlement Agreement, striking Claimant's inappropriate

---

[1] A copy of the Spencer Settlement Agreement is attached as Exhibit 6 to the Declaration of
Joseph H. Smolinsky ("**Smolinsky Dec.**") filed concurrently herewith.

filings, and enjoining Claimant from taking any further action against the Debtors, the GUC

Trust, and their officers and professionals.

## Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### A.      The Bar Date Order

4.      By order dated September 16, 2009 (ECF No. 4079), the Bankruptcy

Court established November 30, 2009 as the bar date for creditors to file proofs of claim based

on prepetition liabilities against the Initial Debtors.[2]

### B.      The Settlement Procedures Order

5.      On or about October 6, 2009, the Court entered an order establishing

procedures for settling certain claims (ECF No. 4180) (the "**Settlement Procedures Order**"),

which authorized the Debtors to settle certain claims asserted against them without prior

approval of the Court.  The Settlement Procedures Order provides that the Bankruptcy Court

retains jurisdiction to hear and determine all matters arising from the implementation of the

Settlement Procedures Order.  (Settlement Procedures Order at 4.)

---

[2] "Initial Debtors" refers to the four entities that filed voluntary petitions for relief under chapter 11 of the
Bankruptcy Code on June 1, 2009:

- Motors Liquidation Company (f/k/a General Motors Corporation)
- MLCS, LLC (f/k/a Saturn, LLC)
- MLC Distribution Corporation (f/k/a Saturn Distribution Corporation)
- MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.)

C.    **The ADR Order and ADR Procedures**

6.    On February 23, 2010, the Bankruptcy Court entered the Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternate Dispute Procedures, Including Mandatory Mediation (ECF No. 5037).  On October 25, 2010, the Bankruptcy Court entered the Amended Order (the "**ADR Order**") Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternate Dispute Procedures, Including Mandatory Mediation (the "**ADR Procedures**") (ECF No. 7558), which amended the earlier order with respect to the list of available mediators and approved mediation locations.  The ADR Order provides that the Bankruptcy Court retains jurisdiction to hear and determine all matters arising from or related to the ADR Order and the ADR Procedures.  (ADR Order at 7.)

D.    **The Spencer Claims**

7.    On November 30, 2009, Claimant filed two duplicate proofs of claim, each asserting claims in the amount of $682,000,000.00 ($125,000,000.00 of which was designated secured, and $557,000,000.00 of which was designed unsecured), based on, among other things, a prepetition personal injury claim, which were assigned claim numbers 64658 and 64659 for administrative purposes.  (*See* Smolinsky Dec., Exs. 1 and 2.)  The proofs of claim include an offer to resolve Claimant's claims in exchange for the following:

> (3) Cadillac Trucks fully equipted (*sic*) & (TV, CD-Movies, Music video games) are delivered to Tamika N. Scott with one Title in her name in (*sic*) two in Mine.  A Check is Drafted in the Amount of $100,000.00 for Tamika N. Scott is sent to her to exhaust her claim(s) (this will be Subtracted from the $12,500,000.00[3])  Ensure

---

[3] It is unclear which $12,500,000.00 the Claimant's settlement offer refers to.  Claimant's proof of claim refers to a writ of attachment in Massachusetts state court in the amount of $12,500,000.00 (*see* Smolinsky Dec., Ex. 2 at 2) and also indicates "[n]otibly (sic), to ensure my true intent regarding this assumpsit commercial debt in DISHONOR and DEFAULT (UCC 3-502), I am selling this debt at

the Vehicles are insured for 7 years reasonable corporate rate (I will provide names of other drivers for mine).

The remainder of the money about $12,250,000.00 I would like to invest $3,000,000.00 into GM by Stock dividend reinvestment. I then want an escrow account made for $7,000,000.00 interest and bonds. The remainder I want in an account bearing my name with access, I would want to two additional family members with access. Also in good faith I would expect a check for $100,000.00 sent to me.

(*See* Smolinsky Dec., Ex. 2 at 4.)

8.      Pursuant to the ADR Procedures, by letter agreement dated July 9, 2010, Claimant agreed to (i) expunge Claim No. 64659 as a duplicate of Claim No. 64658, and (ii) cap the surviving claim (Claim No. 64658) (the "**Spencer Claim**") for all purposes at $9 million. The letter agreement also provided for a claim settlement floor of $200,000.00. (*See* Smolinsky Dec., Ex. 3).[4]

**E.      Designation of Spencer Claim for ADR Procedures, Including Mandatory Mediation**

9.      On July 19, 2010, the Debtors sent a notice to Claimant submitting the Spencer Claim to alternate dispute resolution pursuant to the ADR Order (the "**ADR Notice**"). (*See* Smolinsky Dec., Ex. 4). The ADR Notice included a settlement offer to resolve the Spencer Claim and all other potential claims for a general unsecured, nonpriority claim against MLC

---

$12,500,000.00 (Twelve Million, and Five Hundred Thousand)." However, a handwritten correction seems to indicate that Claimant may have intended the number to read $112,500,000.00. (*See id.*, Ex. 2 at 3.)

[4] The Debtors have very little information about Claimant's claims other than the fact that they arise from an automobile accident. The Debtors took the highly unusual step of assuring Claimant that the Debtors would agree to an allowed claim settlement of at least $200,000 after considering the time and expense that would be incurred in defending the ludicrous $682 million claim initially asserted by Claimant and the benefits to be derived by other creditors in obtaining a $9,000,000 cap in the event the claim could not be settled.

equal to $200,000.00.  (*See id.*)  Per the ADR Procedures, the deadline for Claimant to respond

to the ADR Notice was August 9, 2010.  (*See id.*)

       10.      On or about July 24, 2010, Claimant responded to the ADR Notice

rejecting the settlement offer and proposing a counteroffer of an allowed priority claim of $9

million. (*See* Smolinsky Dec., Ex. 5.)

      **F.**     **The Spencer Settlement**

       11.      Counsel for the Debtors subsequently engaged in good faith, arm's-length

negotiations with Claimant explaining, among other things, the treatment of unsecured claims

under the Debtors' then-proposed chapter 11 plan and providing anecdotal information from the

secondary market for the Debtors' claims as a possible measure of the expected market value of

the stock and warrants to be distributed under the plan on account of allowed claims.  (*See*

Smolinsky Dec., ¶ 7.)

       12.      Following these negotiations, the Debtors and Claimant reached an

agreement to resolve the Spencer Claim for an allowed general unsecured claim against MLC in

the amount of $200,000.00 to be paid in the form set forth in and pursuant to the terms of a

confirmed chapter 11 plan in these chapter 11 cases (the "**Allowed Claim**").  In early September

2010 the Debtors and Claimant executed the Spencer Settlement Agreement setting forth the

foregoing.

       13.      Pursuant to the Spencer Settlement Agreement, and in exchange for the

Allowed Claim, Claimant waived any future rights to additional payment from the Debtors, and

any and all claims against the Debtors in existence as of the execution of the Spencer Settlement

Agreement.  Specifically, paragraph 4 of the Spencer Settlement Agreement provides:

With respect to the Claims, other than the right to receive distributions on account of the Allowed Claims under the Plan, the Claimant and its affiliates, successors and assigns, and its past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, representatives, administrators, executors, trustees and attorneys (collectively, the "Claimant Parties"), shall have no future right to payment from the Debtors, their affiliates, their estates or their respective successors or assigns (collectively, the "Debtor Parties"). With respect to the Claims, except as set forth in this Stipulation and Settlement, the Claimant Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code) against any of the Debtor Parties, and are hereby barred from asserting any and all claims whatsoever, whether known or unknown, presently existing, whether or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Stipulation and Settlement by the Parties.

(*See* Smolinsky Dec., Ex. 6, ¶ 4.)

14. The Spencer Settlement Agreement specifies that the Bankruptcy Court shall retain exclusive jurisdiction "over any and all disputes arising out of or otherwise relating to the [Spencer Settlement Agreement]." (*See* Smolinsky Dec., Ex. 6, ¶ 10.)

### G.    Claimant's Subsequent Filings in This Court

15. Subsequent to the parties' execution of the Spencer Settlement Agreement, Claimant filed at least six pleadings with this Court seeking to invalidate the Spencer Settlement Agreement and purporting to encumber the property of the Debtors, the GUC Trust, and certain of their officers and professionals.[5]

16. On or about September 27, 2010, Claimant filed a "Verified Declaration in nature of an Affidavit of Truth in Commerce, Rejection of Settlement Offer and Contract for Waiver of Tort," which again sought to invalidate the Spencer Settlement Agreement based on

---

[5] Prior to the parties' execution of the Spencer Settlement Agreement, on August 2, 2010, this Court entered an endorsed order denying Claimant's Motion for Objection and for Sanctions for Visitation and Bad Faith on Behalf of the Debtors, in Breach of ADR Proceedings (ECF No. 6482).

the allegation that the Spencer Settlement Agreement was "offered under subtle threats, coercion

and intimidation" and the assertion that "the allowed claim has no value and the Market created

for the Allowed Claims, are only offering cash payout at a rate of 20 – 25%."  (ECF No. 7249).

Claimant's verified declaration also attaches a UCC Financing Statement naming Motors

Liquidation Company and General Motors Corporation as debtors and asserting a claim for

$39,000,000.00 "validated and confirmed by private contract and security agreement . . . giving

[Claimant] a total assignment for $39,000,000.00 . . . in prior and newly formed General Motors

Corporations" along with a filing receipt indicating that the financing statement was filed with

the Massachusetts Secretary of the Commonwealth on September 21, 2010.  (*See id.*)  A hearing

on these requests was never scheduled nor requested.

> 17.    On or about January 7, 2011, Claimant filed a pleading comprised of (a) a

"Motion to Accept Indemnity & Discharge Bonds"; (b) an "Affidavit of Negative Averment,

Opportunity to Cure, and Counterclaim"; (c) a "Notice of Final Determination and Judgment in

NIHIL Decit"; (d) three demands for payment from the Debtors each accompanying a "Notice of

International Commercial Claim Within the Admiralty ad initio Administrative Remedy"; and

(e) seven Notices of Claim of Maritime Lien each in the amount of $39,000,000.00 naming the

Debtors and their officers and professionals as "vessels" (e.g., "U.S. M/V Motor Liquidation

Company" and "U.S. M/V Harvey R. Miller") (ECF No. 8793).[6]  A hearing on these requests

was never scheduled nor requested.

---

[6] Certain of the documents filed by Claimant refer to Claimant as a "sovereign" (*see, e.g.*, ECF No. 7249),
a term often employed by the followers of the "sovereign citizen movement."  *See, e.g.*, *Brown v.
Thompson*, 886 N.Y.S.2d 66, 2009 WL 997509, at *4 (N.Y. Sup. Ct. Mar. 2, 2009) (rejecting
respondent's reference to being "sovereign"); "The Lawless Ones:  The Resurgence of the Sovereign
Citizen Movement," Anti-Defamation League (Aug. 9, 2010) at 16, *available at*
http://www.adl.org/learn/sovereign_movement/sovereign_citizens_movement_report.pdf (describing
bogus liens filed by "sovereign citizens").

18.     On or about February 7, 2011, Claimant filed (a) an "Original Motion to Hear the Substance Breach of Contract Fraud of Established Contracts – Rejection of Disclosure"; (b) an Administrative Proof of Claim in the amount of $1,300,300.00 for the expenses incurred in filing Claimant's claim and other filings; (c) a "Motion to Hear Substance of Established Contracts"; and (d) duplicate copies of each of the documents previously filed on September 27, 2010 and January 7, 2011, respectively (ECF No. 9150).  Claimant's February 7, 2011 filing asserts that the Spencer Settlement Agreement was "rescinded, revoked and cancelled . . based upon the fraud, conspiracy, commercial fraud, deceit, barratry and acts of bad faith, because the claim was only worth 1/6 of its value" and requests that the Court allow Claimant's counteroffer to resolve the dispute through delivery of  "(1) fully equipt (sic) Cadillac SUV – DVD, CD, TV, sunroof, perks [and] (2) "$1,500,000 USD."  (*Id*.)  A hearing on these requests was never scheduled nor requested.

19.     On or about February 9, 2011, Claimant filed a letter to the Court in which he "accept[s] the oaths of office of all state and federal Officers of the legislative, executive and judicial branches and designees in all matter past, present and future, the same creating indemnity bonds to guarantee that the public is not harmed, nor [Claimant] by these actors" and

---

While it is unclear whether Claimant is a member of the sovereign citizen movement, so-called "sovereign citizens" have been known to file false Notices of Maritime Liens and UCC-1 Financing Statements against public officials as a means of harassment.  *See Brown*, 2009 WL 997509, *5 (noting that "making false UCC-1 filings is a practice employed with some regularity by inmates, criminal defendants and disgruntled litigants against public officials as a means of harassment"); *see also Chrystal v. Huntington Nat'l Bank*, Case No. 6:10-cv-668-Orl-31GJK (M.D. Fla. May 17, 2010) (granting motion to strike documents filed by "sovereign citizen" including Notices of Maritime Lien) (annexed hereto as **Exhibit "B"** with discussion of procedural history in accordance with this Court's Case Management Order);  Press Release, Federal Bureau of Investigation, Two Plead Guilty to Mail Fraud (Jan. 13, 2011), *available at* http://www.fbi.gov/albany/press-releases/2011/alfo011311.htm.

Upon information and belief, Claimant is presently incarcerated at a state correctional facility located in Concord, Massachusetts.

attaches a "Motion to Hear the Substance of the Established Contracts," which requests that the

Court rule on the so-called "letter of the contract" with respect to several of the previously filed

documents including those filed at ECF Nos. 7249 and 8793 as described in paragraphs 16 and

17 above (ECF No. 9152).  A hearing on these requests was never scheduled nor requested.

20.    On May 2, 2011, Claimant filed a pleading comprised of, among other

documents:  (a) a surety bond, (b) a petition to intervene, (c) a Petition for Warrant for Issuance

of Arrest,[7] which requests that the Court "take jurisdiction of the subject matter by arrest of the

vessels and/or juristic persons and issue ordo attachiamentorum" for the Debtors, the GUC Trust,

and their officers and professionals; and (d) a Motion for a Default Judgment (ECF No. 10169).

This pleading also includes various documents sent to the Massachusetts Secretary of the

Commonwealth purporting to relate to Claimant's "Expatriation of State and Federal

Citizenship" along with a "Notices of Maritime Lien" filed against Wilmington Trust Company,

the GUC Trust Administrator (ECF No. 10169).  A hearing on these requests has neither been

scheduled nor requested.

21.    On May 12, 2011, Claimant filed a copy of the parties' July 9, 2010 letter

agreement related to the Spencer Claims, a durable power of attorney form assigning power of

---

[7] Claimant has filed similar pleadings in an action before the United States District Court for the District of Massachusetts.  *See Spencer v. Obama*, Civ. Action No. 11-10591 (NMG) (D. Mass. April 7, 2011).  In *Spencer v. Obama*, Claimant filed five petitions (including a "Petition for Issuance of Warrant for Arrest" seeking the arrest of thirty-two "juristic person or vessels") naming President Barack H. Obama and thirty-two other parties as respondents relying on the so-called "Admiralty Jurisdiction" of the District Court, which appear to involve his current detention and the state court proceedings against him.  On April 27, 2011, Judge Nathaniel M. Gorton issued a memorandum opinion and order dismissing the action and denying the petitions, holding that the petitions "do not set forth a cognizable basis for relief . . . are unclear and confusing, and Spencer's invocation of admiralty jurisdiction has no relevance."  *See* Memorandum and Order, *Spencer v. Obama*, Civ. Action No. 11-10591 (NMG) (D. Mass. April 27, 2011) (ECF No. 10) (annexed hereto as **Exhibit "C,"** along with a discussion of the procedural history in accordance with this Court's Case Management Order).

attorney to his brother Sylvester Spencer, a "Proof of Claim Rejection of Settlement," and

duplicate copies of several previously filed documents (ECF No. 10253).[8]

22.     On June 6, 2011, Claimant filed a motion for relief from the automatic

stay to allow Claimant to foreclose on a purported lien in the amount of $112,500,000.00 (ECF

No. 10413).  On June 13, 2011, the Bankruptcy Court entered an endorsed order denying

Claimant's request for stay relief "for failure to allege a prima facie entitlement to relief."  (ECF

No. 10424).

**H.     The Plan and Confirmation Order**

23.     On March 28, 2011, the Court entered its Findings of Fact, Conclusions of

Law, and Order Pursuant to Sections 1129(b) and (b) of the Bankruptcy Code and Rule 3020 of

the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter

11 Plan (ECF No. 9941) (the "**Confirmation Order**"), which, among other things, confirmed

the Debtors' Second Amended Joint Chapter 11 Plan (the "**Plan**").

24.     The Confirmation Order and the Plan include an exculpation provision

which provides that, subject to limited exception, neither the Debtors, the GUC Trust

Administrator (as defined in the Plan), the GUC Trust Monitor (as defined in the Plan), nor their

officers or professionals "shall have or incur any liability to any holder of a Claim or Equity

Interest for any act or omission in connection with, related to, or arising out of the Chapter 11

Cases" (Confirmation Order ¶ 52, Plan § 12.6).  In addition, the Plan provides for an injunction

against interference with the implementation or consummation of the Plan:

---

[8] At the request of the Debtors and because of Claimant's previous incarceration, Claimant provided the
Debtors with a power of attorney for his brother (ECF No. 10253 at 3) and later revoked such
appointment.

10

> Upon the entry of the Confirmation Order, all holders of Claims
> and Equity Interests and other parties in interest, along with their
> respective present or former employees, agents, officers, directors,
> or principals, shall be enjoined from taking any actions to interfere
> with the implementations or consummation of the Plan

(Plan § 10.7.)

25.    Consistent with the Spencer Settlement Agreement, the Plan and the

Confirmation Order specify that the Bankruptcy Court retains exclusive jurisdiction to consider

claims such as those asserted by Claimant and to provide the relief sought herein.  Section 11.1

of the Plan provides:

> The Bankruptcy Court shall retain exclusive jurisdiction of all
> matters arising under, arising out of, or related to the Chapter 11
> Cases and the Plan  . . . for, among other things, the following
> purposes
>
> . . . .
>
> (b)  To determine any motion, adversary proceeding,
> application, contested matter, and other litigated matter pending on
> or commenced before or after the Confirmation Date . . . .;
>
> (c)  To ensure that distributions to holders of Allowed
> Claims are accomplished as provided herein;
>
> (d)  To consider Claims or the allowance, classification,
> priority, compromise, estimation, or payment of any Claim;
>
> . . . .
>
> (f) To issue injunctions, enter and implement other orders,
> and take such other actions as may be necessary or appropriate to
> restrain interference by any person with the consummation,
> implementation, or enforcement of the Plan, the Confirmation
> Order, or any other order of the Bankruptcy Court . . . .

(Plan § 11.1(b), (c), (d), (f)).  In addition, the Confirmation Order and the Plan provide that the

Bankruptcy Court retains exclusive jurisdiction to consider any and all claims against the

Debtors, the GUC Trust, and their officers, counsel and professionals "involving or relating to

the administration of the Chapter 11 Case [and] the decisions and actions taken during the

Chapter 11 Cases." (Confirmation Order ¶ 52, Plan § 12.6).

## **The Spencer Settlement Agreement Should Be Enforced by the Court**

26.     It is well settled that a federal court retains jurisdiction to enforce

settlement agreements. *See In re Hillsborough Holdings Corp.*, 267 B.R. 882, 889 (Bankr. M.D.

Fla. 2001).

> Where . . . a settlement agreement is executed under the auspices
> of the Bankruptcy Court, is approved by that court, and
> subsequently becomes a basis for an order confirming a proposed
> plan of reorganization, the Bankruptcy Court undoubtedly has
> jurisdiction to enforce the Settlement Agreement under the
> foregoing principles as well as pursuant to the powers conferred
> upon the Bankruptcy Court pursuant to 11 U.S.C. § 105(a).

*Id.* (citing *In re Stokes*, 198 B.R. 168, 175 (E.D. Va. 1996)).  Indeed, the majority of circuits have

uniformly held that a district court, and hence a bankruptcy court under the general reference

conferred to it, has the inherent or equitable power to enforce any agreement to settle a matter

pending before it.  *See, e.g.*, *Universal Outdoor, Inc. v. City of New Rochelle*, 286 F. Supp. 2d

268, 272 (citing *Kirke v. Howe*, No. 98–9228, 1999 WL 197209, at *3, 1999 U.S. App. LEXIS

5697, at *6 (2d Cir. Mar. 26, 1999); *Scelsa v. City Univ. of N.Y.*, 76 F.3d 37, 40 (2d Cir. 1996));

*Wilson v. Wilson*, 46 F.3d 660 (7th Cir. 1995); *Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d

1483, 1486 (11th Cir. 1994); *United States v. Hardage*, 982 F.2d 1491, 1496 (10th Cir. 1993);

*Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988); *Callie v. Near*, 829 F.2d 888, 890

(9th Cir. 1987); *Mid-South Towing Co. v. Har-Win, Inc.*, 733 F.2d 386, 389-90 (5th Cir. 1984);

*Ozyagcilar v. Davis*, 701 F.2d 306, 308 (4th Cir. 1983); *Autera v. Robinson*, 419 F.2d 1197,

1200 (D.C. Cir. 1969).

12

27.     Settlement agreements are to be interpreted and governed by the law of contracts.  *In re Sure-Snap Corp.*, 91 B.R. 178, 180 (Bankr. S.D. Fla. 1988).  Under New York law, settlement agreements are interpreted according to general principles of contract law.  *See Bank of N.Y. v. Amoco Oil Co.*, 35 F.3d 643, 661 (2d Cir. 1994) ("Under the law of New York a settlement agreement in writing between parties [is] essentially, a contract . . . "subject to the rules governing the construction of contracts") (internal citations omitted); *Universal Outdoor, Inc. v. City of New Rochelle*, 286 F. Supp. 2d 268, 274 (S.D.N.Y. 2003) ("In New York, the meaning of a settlement agreement is construed according to general principles of contract law"); *Novak & Co. v. N.Y. Convention Ctr. Dev. Corp.*, 202 A.D. 2d 205, 206 (N.Y. App. Div. 1994) (holding that stipulation "entered into in 'open court' . . . is enforceable as a contract binding on all parties thereto and is governed by general contract principles").  Settlement agreements are judicially-favored and are not cast aside unless there is "cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident."  *Racanelli v. Constr. Co. v. Tadco Constr. Corp.*, 855 N.Y.S.2d 645, 646 (N.Y. App. Div. 2008) (citing *Hallock v. State*, 64 N.Y.2d 224, 230 (N.Y. 1984)).

28.     Pursuant to section 105(a) of the Bankruptcy Code, a bankruptcy court is expressly authorized to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title [and] tak[e] any action or mak[e] any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process." 11 U.S.C. § 105(a).  The Second Circuit has held that section 105(a) should be "construed liberally to enjoin actions that might impede the reorganization process."  *In re Momentum Mfg. Corp.*, 25 F.3d 1132, 1136 (2d Cir. 1994) (internal quotations omitted); *see also In re River Center Holdings, LLC*, 394 B.R. 704, 711 (Bankr. S.D.N.Y. 2008) (REG) (granting

13

request to enforce settlement agreement and finding that "[a]lthough there are some significant limits to a bankruptcy court's ability to use section 105(a) of the Code . . . section 105(a) plainly may be used 'to enforce and implement' earlier orders.").

29.    As set forth in detail above, the Spencer Settlement Agreement was the result of lengthy, arm's-length negotiations conducted in good faith. Claimant entered into the Spencer Settlement Agreement freely after discussions with Debtors' counsel regarding the proposed Plan treatment of allowed general unsecured claims and the potential market value of such recovery. Claimant's numerous pleadings fail to demonstrate any evidence of fraud or other compelling circumstances which would warrant invalidating the Spencer Settlement Agreement. That Claimant now seeks to rescind the Spencer Settlement Agreement and demands additional consideration based on a change of heart is not grounds to invalidate the Spencer Settlement Agreement. This would be true even if the settlement had not yet been executed by the parties. *See In re Cudeyro*, 213 B.R. 910, 921 (Bankr. E.D. Pa. 1997) ("The [settlement] agreement remains binding even if a party has a change of heart after he or she has agreed to its terms but before the terms are reduced to writing"); *see also MacDonald v. Dragone Classic Motors Cars*, No. 3:95-CV-499, 2003 U.S. Dist. LEXIS 14587, at *6 (D. Conn. Apr. 29, 2003) (same).

30.    As discussed in paragraph 13 above, under the Spencer Settlement Agreement, and in exchange for the Allowed Claim, Claimant waived any and all claims against the Debtors in existence as of the execution of the Spencer Settlement Agreement. (*See* Smolinsky Dec., Ex. 6, ¶ 4.) Claimant's filings in this Court since the parties' execution of the Spencer Settlement Agreement are in direct violation of the Spencer Settlement Agreement. The Debtors reserve all rights to seek sanctions in connection with Claimant's willful violation of the

Spencer Settlement Agreement, the Settlement Procedures Order, and the ADR Order.  *See In re*

*Krypton Broadcasting of Ft. Pierce, Inc.*, 181 B.R. 657, 663 (Bankr. S.D. Fla. 1995) (granting

motion for sanctions for violation of settlement agreement and confirmation order and stating

that "[c]ivil contempt powers are expressly granted to the bankruptcy courts by 11 U.S.C. 105").

31.     The Debtors and the GUC Trust respectfully request that the Court enforce

the Spencer Settlement Agreement resolving Claimant's claims in the interest of the principles of

equity embodied in the Bankruptcy Code, as well as the "strong public policy considerations

favor[ing] settlement."  *Mahoney v. Turner Constr. Co.*, 872 N.Y.S.2d 433, 437 (N.Y. App. Div.

2009).

### The Court Should Strike from the Record the Immaterial and Impertinent Documents Filed by Claimant

32.     Bankruptcy Rule 7012(b) incorporates Rule 12(f) of the Federal Rules of

Civil Procedure and provides that on motion of either party prior to the filing of a response, the

"court may strike from a pleading an insufficient defense or any redundant, immaterial,

impertinent or scandalous matter."  Fed. R. Bankr. P. 7012(b); Fed. R. Civ. P. 12(f).

33.     Bankruptcy Rule 7012 is applicable in adversary proceedings, but is not

automatically applicable to contested matters.  However, pursuant to Bankruptcy Rule 9014(c),

the "court may at any stage in a particular matter direct that one or more of the other rules in Part

VII shall apply."  Fed. R. Bankr. P. 9014(c).  The Debtors and the GUC Trust request, pursuant

to Bankruptcy Rule 9014(c), that the Court apply Bankruptcy Rule 7012 to Claimant's pleadings.

*See, e.g., In re Stacker*, Ch. 11 Case No. 10-30262, 2011 Bankr. LEXIS 204, at *3-4 (Bankr.

S.D. Ill. Jan. 20, 2011) (citing Bankruptcy Rule 9014(c) as authority for court to direct that Rule

7012 apply in contested matter); *Affordable Efficiencies, Inc. v. Bane* (*In re Bane*), 228 B.R. 835,

837 (Bankr. W.D. Va. 1998) (granting movant's request to apply Bankruptcy Rule 7012 to a

motion brought under Bankruptcy Rule 9014).

34.    The function of a Rule 12 motion to strike is "'to avoid the expenditure of

time and money that must arise from litigating spurious issues.'"  *Whittlestone, Inc. v. Handi-

Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524,

1527 (9th Cir. 1993), *rev'd on other grounds sub nom. Fogerty v. Fantasy, Inc.*, 510 U.S. 517

(1994)).  While motions to strike impertinent or immaterial pleadings are generally disfavored,

such motions may be granted "where the pleading has no relation to the controversy and is

unduly prejudicial."  *Herzog v. Leighton Holdings, Ltd.* (*In re Kids Creek Partners, L.P.*, ), Ch.

11 Case No. 94-B-23947, 1997 Bankr. LEXIS 215, at *7-8 (Bankr. N.D. Ill. Feb. 28, 1997)

(internal citations omitted); *see also TouchTunes Music Corp. v. Rowe Int'l Corp.*, Case No. 07-

cv-11450, 2010 U.S. Dist. LEXIS 106353, at *11 (S.D.N.Y. Oct. 4, 2010) (holding that matter to

be stricken must clearly have "no possible relation to the matter in controversy") (citing *Gleason

v. Chain Serv. Rest.*, 300 F. Supp. 1241, 1257 (S.D.N.Y. 1969), *aff'd,* 422 F.2d 342, 343 (2d Cir.

1970)).  Matters are immaterial where they have "no essential or important relationship to the

claim for relief."  *Ruffino v. Murphy*, Case No. 09-cv-1287, 2009 U.S. Dist. LEXIS 117357, at

*2 (D. Conn. Dec. 16, 2009) (internal citations omitted).

35.    As set forth in paragraphs 15 through 21 above, Claimant has filed

numerous documents with this Court since the execution of the Spencer Settlement Agreement

and has attached thereto "Notices of Claim of Maritime Lien" identifying as "vessels" the

Debtors, the GUC Trust, and their officers and professionals.  However, there are no legally

cognizable claims asserted by Claimant and the "vessels" identified are not subject to a maritime

lien under federal law.  In fact, Claimant's pleadings amount to nothing more than nonsense

clothed in misplaced legal jargon.

       36.      The Debtors already have spent more than sufficient resources dealing

with Claimant.  Claimant is not a party to any agreement with the Debtors, the GUC Trust, or

their officers and professionals that gives rise to any lien or security interest in favor of the

Claimant.  (*See* Smolinsky Dec., ¶ 9.)  Likewise Claimant fails to point to any final judgment

entered by any court against the Debtors, the GUC Trust, or their officers and professionals in

favor of Claimant.  Claimant has failed to assert a legally coherent claim against the Debtors, the

GUC Trust, or their officers and professionals in the documents he filed with this Court.

Claimant's filings bear distinct resemblance to those addressed in a recent federal court decision,

in which the Court stated:

> [t]he documents that are the subject of this motion are a pile of
> legalistic gibberish by which [Claimant] seeks, so far as the Court
> can discern, to recover approximately $2 trillion from [Defendant]
> pursuant to admiralty law, the Uniform Commercial Code, and
> "Convention de La Haye du 5 October 1961," among many other
> purported authorities.  Included are "Notices of Claim of Maritime
> Lien" naming various human beings as the "vessels" on which
> such liens are sought.  The underlying legal theory appears to be
> that if Party A sends a letter demanding trillions of dollars from
> Party B, and Party B fails to respond with the proper magic phrase
> then -- *POOF* – Party B owes Party A trillions of dollars.  To
> paraphrase Wolfgang Pauli, [Claimant's] outlandish contentions
> are so far from correct that they're not even wrong.

*Chrystal v. Huntington Nat'l Bank*, Case No. 06:10-cv-668-Orl-31GJK (M.D. Fla. May 17, 2010) (order granting defendant's motion to strike various documents filed by plaintiff, a so-called "sovereign citizen") (the "**Chrystal Order**").[9]

37.    Claimant's baseless filings, nevertheless, could have far reaching consequences for the improperly-named officers and professionals of the Debtors and the GUC Trust:

> Although these baseless filings are not legally effective to create an enforceable liens, and the filer may be subject to civil and criminal sanctions and penalties, a record of the filing exists in the public database.  Since there appears to be no means for the victim of a bogus lien to completely remove or expunge the unauthorized UCC-1 statement, the filing, though false, may be found by an entity conducting a lien search, and may interfere with the named individual's ability to obtain credit or conduct other financial affairs such as the purchase and sale of property.

*Brown*, 2009 WL 997509, at *3, 5 (internal citations omitted) (declaring UCC-1 financing statements filed by respondent to be "null and void and of no legal effect" and enjoining respondent from "filing or recording, or attempting to file or record, any document or instrument of any description which purports to create a lien or record a security interest of any kind against the person or property of [the public officials] without the prior permission of the court").

38.    Based on the foregoing, the Debtors and the GUC Trust respectfully request that the immaterial and impertinent documents filed by Claimant be (i) stricken with prejudice, (ii) deemed null and void, and (iii) removed from the public records so that the improperly-named parties are not prejudiced by Claimant's actions.  In particular, the Debtors request that the Court strike the Notices of Maritime Lien, UCC-1 Financing Statement, and

---

[9] In accordance with paragraph 32 of this Court's Case Management Order, attached hereto as **Exhibit "B"** is a copy of the *Chrystal* Order along with a discussion of the procedural context of the *Chrystal* Order.

Petition for Warrant for Issuance of Arrest filed by Claimant at ECF Nos. 7249, 8793, 9150, and

10169.

**Claimant Should Be Enjoined from Taking Further Action**
**Against the Debtors, the GUC Trust, and Their Officers and Professionals**

39.     As discussed in paragraph 24 above, the Plan provides that holders of

Claims "shall be enjoined from taking any actions to interfere with the implementation or

consummation of the Plan." (Plan § 10.7.)  In addition, the Plan provides that neither the

Debtors, the GUC Trust, nor their officers and professionals shall have any liability to any

Claimant "for any act or omission in connection with, related to, or arising out of the Chapter 11

Cases"  (*See* Confirmation Order ¶ 52, Plan § 12.6).  Further, the Plan specifies that the

Bankruptcy Court retains exclusive jurisdiction "to issue injunctions, enter and implement other

orders and take such other actions as may be necessary or appropriate to restrain interference by

any person with the consummation, implementation, or enforcement of the Plan, the

Confirmation Order, or any other order of the Bankruptcy Court." (Plan § 11.1(f).)

40.     Section 1142(b) of the Bankruptcy Code provides the Court with the

authority to issue orders necessary to implement the terms of a confirmed plan.  11 U.S.C.

§ 1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver

or to join in the execution or delivery of any instrument required to effect a transfer of property

dealt with by a confirmed plan, and to perform any other act . . . that is necessary to the

consummation of the plan"); s*ee also Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville

Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (finding that bankruptcy courts

retain postconfirmation jurisdiction to the extent provided by the plan); *Penthouse Media Group

v. Guccione (In re Gen. Media, Inc.)*, 335 B.R. 66, 73 (Bankr. S.D.N.Y 2005) (finding that

19

bankruptcy courts retain post-confirmation jurisdiction to matters related to the implementation of a plan); *In re Petition of Board of Dirs. of Hopewell Int'l Ins., Ltd.,* 272 B.R 396, 407 n.11 (Bankr. S.D.N.Y. 2002) ("[T]he Court may direct parties to perform any act necessary to consummate the plan.")(citing 11 U.S.C. § 1142(b)).  In addition, Bankruptcy Rule 3020(d) provides that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate."  Fed. R. Bankr. P. 3020(d).

41.     Section 362(a) of the Bankruptcy Code provides that the filing of a chapter 11 petition shall serve as an automatic stay applicable to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to create, perfect, or enforce any lien against property of the estate."  11 U.S.C. § 362(a)(3),(4).

42.     Claimant's continued efforts to invalidate the Spencer Settlement Agreement could interfere with the distributions provided for under the Plan in direct violation of the Plan injunction, which enjoins holders of Claims from taking any action to "interfere with the implementation or consummation of the Plan."  (Plan § 10.7).  In addition, Claimant's continued attempts to file or record documents purporting to create liens or security interests against property of the Debtors, the GUC Trust, and their officers and professionals violate the automatic stay and the Plan exculpation provision.  (Plan § 12.6; Confirmation Order ¶ 52.)

43.     In furtherance of the Plan exculpation and injunctions provisions in the Plan (*see* Plan §§ 10.7 and 12.6), and the Confirmation Order (Confirmation Order ¶ 52) and the automatic stay created by section 362 of the Bankruptcy Code, the Debtors and the GUC Trust respectfully request that the Court enter an order enjoining Claimant from further action against the Debtors, the GUC Trust, and their officers and professionals, including the filing or

20

recording, or the attempt to file or record, any document or instrument of any description which purports to create a lien or record a security interest of any kind against the person or property of the Debtors, the GUC Trust, and their officers and professionals, without further leave of this Court.

### Notice

44.     Notice of this Motion has been provided to Claimant, Claimant's agent/personal representative, and parties in interest in accordance with the Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated May 5, 2011 (ECF No. 10183).  The Debtors and the GUC Trust submit that such notice is sufficient and no other or further notice need be provided.

45.     No previous request for the relief sought herein has been made by the Debtors or the GUC Trust to this or any other Court.

### Conclusion

WHEREFORE the Debtors and the GUC Trust respectfully request entry of an

order granting the relief requested herein and such other and further relief as is just.

Dated:  New York, New York
       July 7, 2011

                      /s/ Joseph H. Smolinsky
                      Harvey R. Miller
                      Stephen Karotkin
                      Joseph H. Smolinsky

                      WEIL, GOTSHAL & MANGES LLP
                      767 Fifth Avenue
                      New York, New York 10153
                      Telephone: (212) 310-8000
                      Facsimile: (212) 310-8007

                      Attorneys for Debtors
                      and Post-Effective Date Debtors and Motors
                      Liquidation Company GUC Trust

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                         :

In re                           :          **Chapter 11 Case No.**
                                           :

**MOTORS LIQUIDATION COMPANY**, *et al.*,   :          **09-50026 (REG)**
      f/k/a **General Motors Corp.**, *et al.*  :
                                         :

                  Debtors.       :          **(Jointly Administered)**
                                         :
-----------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a) AND 1142(b) AND**
**FED. R. BANKR. P. 7012(B) AND 9014(C) (I) ENFORCING SETTLEMENT**
**AGREEMENT WITH CLAIMANT BARRY N. SPENCER, JR.; (II) STRIKING**
**DOCUMENTS FILED BY CLAIMANT; AND (III) ENJOINING CLAIMANT FROM**
**FURTHER ACTION AGAINST THE DEBTORS, THE POST-EFFECTIVE DATE**
**DEBTORS, MOTORS LIQUIDATION COMPANY GUC TRUST,**
<u>**AND THEIR OFFICERS AND PROFESSIONALS**</u>

Upon the Motion, dated July 7, 2011 (the "**Motion**"),[1] of Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as post-effective date

debtors (collectively, the "**Debtors**") and Motors Liquidation Company GUC Trust (the "**GUC**

**Trust**"), pursuant to sections 105(a) and 1142(b) of title 11, United States Code (the

"**Bankruptcy Code**") and Rules 7012(b) and 9014(c) of the Federal Rules of Bankruptcy

Procedures (the "**Bankruptcy Rules**"), for entry of an order (i) enforcing the Stipulation and

Settlement Resolving Claim Nos. 64658 & 64659 dated September 1, 2010 between Claimant

Barry N. Spencer, Jr. ("**Claimant**") and the Debtors (the "**Spencer Settlement Agreement**");

(ii) striking documents filed by Claimant; and (iii) enjoining Claimant from further action against

the Debtors, the GUC Trust, and their officers and professionals, all as more fully described in

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Motion.

the Motion; and due and proper notice of the Motion having been provided, and it appearing that

no other or further notice need be provided; and the Court having found and determined that the

relief sought in the Motion is in the best interests of the Debtors, their estates, creditors, the GUC

Trust and all parties in interest and that the legal and factual bases set forth in the Motion

establish just cause for the relief granted herein; and after due deliberation and sufficient cause

appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that, pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code,

the Spencer Settlement Agreement shall be enforced; and it is further

ORDERED that, pursuant to the Spencer Settlement Agreement, Claim No.

64658 shall be treated as an allowed general unsecured claim against Motors Liquidation

Company in the amount of $200,000.00 (the "**Allowed Claim**") entitled to distributions as set

forth in the Debtors' Second Amended Joint Chapter 11 Plan, dated March, 18, 2011 (ECF No.

9836) (the "**Plan**"); and it is further

ORDERED that, pursuant to the Spencer Settlement Agreement, Claim Nos.

64658 and 64659 shall be satisfied in full by the distributions on account of the Allowed Claim

as set forth in the Plan; and it is further

ORDERED that pursuant to the Spencer Settlement Agreement, except for the

right to receive distributions on account of the Allowed Claim under the Plan, Claimant has

waived (i) any future rights to additional payment from the Debtors, their affiliates, their estates,

or their respective successors or assigns (the "**Debtor Parties**"), and (ii) any and all claims

against the Debtor Parties in existence as of the execution of the Spencer Settlement Agreement;

and it is further

2

ORDERED that, pursuant to Bankruptcy Rules 7010(b) and 9014(c), the

immaterial and impertinent documents filed by Claimant at ECF No. 7249 (UCC Financing

Statement), ECF No. 8793 (Notices of Claim of Maritime Lien and UCC Financing Statement),

ECF No. 9150 (UCC Financing Statement), and ECF No. 10169 (Petition for Warrant for

Issuance of Arrest and Notices of Claim of Maritime Lien) shall be stricken from the public

record with prejudice, such documents are hereby deemed null and void, and any further

attempts by the Claimant to file or record these or similar documents may result in the imposition

of sanctions against the Claimant; and it is further

ORDERED that in consideration of, among other things, the automatic stay

created by section 362 of the Bankruptcy Code and Sections 10.7 and 12.6 of the Plan, and this

Court's Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(b) and (b) of

the Bankruptcy Code and Rule 3020 of the Federal Rules of  Bankruptcy Procedure Confirming

Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9941), Claimant is enjoined from

taking further action against the Debtors, the GUC Trust, and their officers and professionals in

any forum, including filing or recording, or attempting to file or record, any document or

instrument of any description which purports to create a lien or record a security interest of any

kind against the person or property of the Debtors, the GUC Trust, and their officers and

professionals, without further leave of this Court; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
       [_____], 2011


_____
United States Bankruptcy Judge

## EXHIBIT B

### *Chrystal* Order

Order Granting Motion to Strike Documents, *Chrystal v. Huntington Nat'l Bank*,
Case No. 6:10-cv-668-Orl-32GJK (M.D. Fla. May 17, 2010)
(the **"*Chrystal* Order"**)

## Procedural History

On March 9, 2010, plaintiff, Nonnie Chrystal filed a "Registration of foreign judgment" with the United States District Court for the Middle District of Florida against defendant, Huntington National Bank, which included, among other documents, "Notices of Claim of Maritime Lien" naming various individuals as "vessels." The matter was assigned to United States District Judge Gregory A. Presnell.

As noted in the *Chrystal* Order, plaintiff previously had filed the documents in a state court suit (Case No. 05-2009-CA-9891, Circuit Court of Brevard County, Florida) and after the documents were stricken by the state court judge plaintiff filed the documents in the federal district court.

On April 28, 2010, defendant Huntington National Bank filed a motion to strike the documents filed by plaintiff. Plaintiff did not file a response to the motion to strike but filed two notices asserting that the court lacked the authority to dismiss or alter her claims without her consent.

On May 15, 2010, the district court entered the *Chrystal* Order granting the motion to strike and noting that further attempts to "register" the documents or similar documents would result in the imposition of sanctions, and dismissing the case. There is no indication that a hearing was held on the motion to strike.

**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

NONNIE CHRYSTAL,

                **Plaintiff,**

-vs-                            **Case No.  6:10-cv-668-Orl-31GJK**

HUNTINGTON NATIONAL BANK,

                **Defendant.**

_____

## ORDER

      This matter comes before the Court on the Motion to Strike Documents (Doc. 2) filed by the Defendant, Huntington National Bank ("Huntington").  Huntington seeks to have the Court strike various documents, titled "Registration of Foreign Judgment" (Doc. 1), which were filed by the Plaintiff, Nonnie Chrystal ("Chrystal").  Chrystal has not filed a response to the motion, but she has filed two "Notices" (Doc. 5, 7) in which she asserts, *inter alia*, that this Court lacks the authority to dismiss or alter her claim(s) without her consent.

      She is incorrect.

      Based on her papers, Chrystal – who identifies herself as "Ambassador nonnie: chrystal" of "satellite beach, Florida, Republic; near [32937]" – has fallen in with the Sovereign Citizen/Tax Protestor movement.  In common with other so-called sovereign citizens, she appears to believe that ours is a legal system, not of statutes and precedent, but of sorcery, with parties prevailing as a result of their incantation of out-of-context passages from *Black's Legal Dictionary*.

The documents that are the subject of this motion are a pile of legalistic gibberish by which Chrystal seeks, so far as the Court can discern, to recover approximately $2 trillion from Huntington pursuant to admiralty law, the Uniform Commercial Code, and "Convention de La Haye du 5 October 1961," among many other purported authorities.  Included are "Notices of Claim of Maritime Lien" naming various human beings as the "vessels" on which liens are sought. The underlying legal theory appears to be that if Party A sends a letter demanding trillions of dollars from Party B, and Party B fails to respond with the proper magic phrase then – *POOF* – Party B owes Party A trillions of dollars.  To paraphrase Wolfgang Pauli, Chrystal's outlandish contentions are so far from correct that they're not even wrong.

According to Huntington, Chrystal filed the documents in a state court suit regarding Chrystal's financing of a vehicle through Huntington.  After the state court judge ordered the documents stricken, Chrystal filed them in this forum.  Needless to say, these documents – none of which qualifies as a "judgment," foreign or otherwise – are no more proper in this forum than in state court.  Accordingly, it is hereby

**ORDERED** that the Motion to Strike Documents (Doc. 2) is **GRANTED,** and the Clerk is **DIRECTED** to strike the documents (Doc. 1) from the public record.  Any further attempts to "register" these or similar documents will result in the imposition of sanctions.  And it is further

**ORDERED** that this case is **DISMISSED**.  The Clerk is directed to close the file.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on May 17, 2010.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

-2-

Copies furnished to:

Counsel of Record
Unrepresented Party

## Exhibit C

**_Spencer v. Obama_ Memorandum and Order**

Memorandum and Order of Dismissal, *Spencer v. Obama*,
Civil Action No. 11-10591 (NMG) (D. Mass. April 27, 2011)

## **Procedural History**

On April 7, 2011, Claimant Barry H. Spencer, Jr., filed five petitions including a "Petition Under War Powers Act and Federal Question under the Constitution and Maritime tort Counterclaim for Writ of Habeas Corpus" naming the President and thirty-two other respondents; a "Petition to Move to Federal Court"; a "Petition of Intervention of Right"; a "Petition to Void Judgments of Court, Pre-Existing, Current and Future;" and a "Petition for Issuance for Warrant of Arrest."  Claimant also filed a motion for leave to proceed *in forma pauperis* in the United States District Court for the District of Massachusetts.  The matter was assigned to United States District Judge Nathaniel M. Gorton.

On April 21, 2011, Claimant filed a motion to appoint counsel and an emergency petition for immediate seizure.

On April 27, 2011, Judge Gorton entered a memorandum and order, *sua sponte*, denying all of the petitions filed by Claimant and ordering the action dismissed.  No hearing was held prior to entry of the memorandum and order.

Claimant filed a motion for reconsideration on May 5, 2011 and a notice of appeal on May 13, 2011.  The court entered an endorsed order denying Claimant's motion for reconsideration on June 10, 2011.  The appeal was docketed by the United States Court of Appeals for the First Circuit on June 21, 2011.  *See Spencer v. Obama*, Case No. 11-1695 (1st Cir).  On June 28, 2011, Claimant filed a Motion to stay proceedings pending a decision in a parallel action, *Spencer v. Murphy*, Case No. 11-cv-10983 (D. Mass.), and an affidavit in support thereof.  The appeal currently remains pending.

### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

_____
                                )
BARRY H. SPENCER, JR.,        )
        Petitioner,          )
                                  )      Civil Action No.
        v.                   )      11-10591-NMG
                                  )
BARACK H. OBAMA, et al.,     )
        Respondents.         )
_____)

### MEMORANDUM AND ORDER

GORTON, J.

     For the reasons stated below, the Court dismisses this action.

### I.   Background

     On April 7, 2011, Barry H. Spencer, Jr., who is confined at the Bridgewater State Hospital, filed five petitions and paid a $5.00 filing fee.  He also filed a motion for leave to proceed _in forma pauperis_.

     In his "Petition Under War Powers Act and Federal Question under the Constitution and Maritime tort Counterclaim for Writ of Habeas Corpus" (#1), Spencer names President Barack H. Obama and thirty-two other parties as respondents.  Spencer states that the petition is brought under the "Admiralty Jurisdiction" of the Court at the "War Powers Act."  Although the petition is not clear, it is apparent that Spencer is complaining about his current detention and state court proceedings against him, including a competency proceeding.

It appears that, in the "Petition to Move to Federal Court"
(#3), Spencer is trying to remove pending state criminal
prosecution to federal court.  He claims that federal court is
the proper venue because "the commonwealth does not offer a
remedy even as prescribed by Admiralty Jurisdiction by
Counterclaim or Setoff."  Pet. at 2.

In the "Petition of Intervention of Right" (#4), Spencer
claims he has "a secured interest in the subject matter of the
complaint that supercedes the plaintiff as a lien holder."  Pet.
at 1.

In Spencer's "Petition to Void Judgments of Court, Pre-
Existing, Current and Future" (#5), he claims that "any and all
judgements in Suffolk Superior Court Criminal or Civil, baring My
Juristic person should be deemed **void,** and transfered back to the
Original jurisdiction the united States of America District Court
or the Admiralty Court DISTRICT COURT OF UNITED STATES OF
AMERICA."  Pet. at 5 (as in original).

In the "Petition for Issuance of Warrant for Arrest" (#6),
Spencer asks that the Court issue warrants for arrests against
thirty-two "juristic persons or vessels, " Pet. at 1, including
the President of the United States and the Governor of the
Commonwealth of Massachusetts.

**II.  Discussion**

Under 28 U.S.C. § 2243, if "it appears from the application

2

that the applicant ... is not entitled [to a writ of habeas
corpus]," the district court is not required to order the
respondent "to show cause why the writ [of habeas corpus] should
not be granted."  28 U.S.C. § 2243.

    Spencer has not set forth any grounds for relief.  To the
extent that Spencer seeks relief other than immediate or speedier
release from custody, his claims are not the proper subject of a
habeas petition.  See Preiser v. Rodriquez, 411 U.S. 475, 484
(1973) ("[T]he essence of habeas corpus is an attack by a person
in custody upon the legality of that custody, and . . . the
traditional function of the writ is to secure release . . . .").

    To the extent that Spencer seeks release, the petitions are
denied because they do not set forth a cognizable basis for
relief.  The petitions are unclear and confusing, and Spencer's
invocation of admiralty jurisdiction has no relevance.  Further,
state criminal proceedings are not generally removable, see 28
U.S.C. § 1443, and the Court will not interfere in a state
criminal proceeding, see In re Justices of Superior Court Dept.
of Mass. Trial Court, 218 F.3d 11, 16 (1st Cir. 2000).

### ORDER

    Accordingly, the Court denies all of the petitions filed in
this action and orders that this action be DISMISSED.  The motion
for leave to proceed in forma pauperis is DENIED AS MOOT.

**So ordered.**

                        /s/ Nathaniel M. Gorton
                       Nathaniel M. Gorton
                       United States District Judge

Dated: 4/27/11

3