# LEGAL NOTICES

GLOBAL, NATIONAL, REGIONAL
TO ADVERTISE CALL 1.800.366.3975
FAX: 214.640.7900
ADVERTISING.WSJ.COM

## BANKRUPTCIES

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

In re : Chapter 11 Case No.
MOTORS LIQUIDATION COMPANY : 09-50026 (REG)
f/k/a GENERAL MOTORS CORPORATION, et al., :
Debtors. : (Jointly Administered)

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 | 38-0572515 | General Motors Corporation; GMC Truck Division; NAO Fleet Operations; GM Corporation; GM Corporation-GM Auction Department; National Car Rental; National Car Sales; Automotive Market Research |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 | 38-2577506 | Saturn, LLC; Saturn Corporation; Saturn Motor Car Corporation; GM Saturn Corporation; Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.; CKS of Harlem |

PLEASE TAKE NOTICE THAT, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Court"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "Debtors") entered an order (the "Bar Date Order") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("Proof of Claim") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "503(b)(9) Claim"), against any of the Debtors (the "General Bar Date"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "Governmental Bar Date" and, together with the General Bar Date, the "Bar Dates").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.

**1. WHO MUST FILE A PROOF OF CLAIM**

You MUST file a Proof of Claim to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to June 1, 2009, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before June 1, 2009 may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to June 1, 2009.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:
(a) Your claim is listed on the Schedules (as defined below) and (i) is not described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do not dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do not dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;
(b) Your claim has been paid in full;
(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided, however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;
(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however**, 503(b)(9) Claims are subject to the General Bar Date as provided above. Section 503(b)(9) provides in part: "...there shall be allowed administrative expenses...including...(9) the value of any goods received by the Debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date;**
(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;
(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);
(g) You are a Debtor in these cases having a claim against another Debtor;
(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;
(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or
(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "Debt Claim") governed by any debt security issued by any of the Debtors pursuant to an indenture (together, the "Debt Instruments") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is thirty days following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or If by first-class mail, to:
The Garden City Group, Inc. The Garden City Group, Inc.
Attn: Motors Liquidation Company Attn: Motors Liquidation Company
Claims Processing Claims Processing
5151 Blazer Parkway, Suite A P.O. Box 9386
Dublin, Ohio 43017 Dublin, Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 (the "**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, shall be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to such claim) and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "Schedules"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to The Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.

DATED: September 16, 2009 BY ORDER OF THE COURT
New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 370456EAG3, 370445EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442AB0, 370442B16, 370442774, 370442766, 370442758, 370442741, 370442717, 370442725, 370442807, 370442BT1, 370442717, 370442BW4, 370442835, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Refunding Revenue Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

## BANKRUPTCIES

Delphi Legal Information Hotline: Delphi Legal Information Website:
Toll Free: (800) 718-5305 http://www.delphidocket.com
International: (248) 813-2698

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

In re : Chapter 11
DELPHI CORPORATION, et al. : Case No. 05-44481 (RDD)
Debtors. : (Jointly Administered)

**NOTICE OF (A) ORDER APPROVING MODIFICATIONS TO FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION AND (B) OCCURRENCE OF EFFECTIVE DATE**

1. **Confirmation Of The Plan.** On January 25, 2008 (the "Confirmation Date"), the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order confirming the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession, dated January 25, 2008 (the "Confirmed Plan"), in the Chapter 11 Cases of Delphi Corporation and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

2. **Approval Of Modifications To The Confirmed Plan.** On July 30, 2009 (the "Modification Approval Date"), the Bankruptcy Court entered an order (the "Modification Approval Order") approving certain modifications to the Confirmed Plan embodied in the First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession (As Modified) (the "Modified Plan"), attached as Exhibit A to the Modification Approval Order. Unless otherwise defined in this Notice Of (A) Order Approving Modifications To First Amended Joint Plan Of Reorganization Of Delphi Corporation And Certain Affiliates, Debtors And Debtors-In-Possession And (B) Occurrence Of Effective Date, capitalized terms and phrases used herein have the meaning(s) given to them in the Modified Plan and the Modification Approval Order.

3. **Effective Date.** On October 6, 2009, the Effective Date of the Modified Plan occurred. The Modified Plan was substantially consummated at a closing that occurred at the offices of Skadden, Arps, Slate, Meagher & Flom LLP in New York City, New York; **provided, however**, that all of the transactions contemplated by the Master Disposition Agreement and related agreements to occur at the closing are effective for tax and accounting purposes as of 11:58 p.m., local time, on the Closing Date as defined in the Master Disposition Agreement.

4. **Discharge Of Claims And Termination Of Interests.** Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Modified Plan, Confirmation Order, or Modification Approval Order, the distributions and rights that are provided in the Modified Plan shall be in complete satisfaction, discharge, and release, effective as of the Effective Date, of Claims and Causes of Action, whether known or unknown, against, liabilities of, liens on, obligations of, rights against, and Interests in the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Modified Plan on account of such Claims, rights, and Interests, including, but not limited to, Claims and Interests that arose before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not (a) a proof of claim or interest based upon such Claim, debt, right, or Interest is filed or deemed filed under section 501 of the Bankruptcy Code, (b) a Claim or Interest based upon such Claim, debt, right, or Interest is allowed under section 502 of the Bankruptcy Code, or (c) the holder of such a Claim, right, or Interest accepted the Modified Plan. Due to the occurrence of the Effective Date, the Modification Approval Order shall be a judicial determination of the discharge of all Claims against and Interests in the Debtors.

5. **Injunctions.**
(a) Subject to Article 11.13 of the Modified Plan, the satisfaction, release, and discharge pursuant to Article XI of the Modified Plan shall act as an injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim, Interest, or Cause of Action satisfied, released, or discharged under the Modified Plan to the fullest extent authorized or provided by the Bankruptcy Code, including, without limitation, to the extent provided for or authorized by sections 524 and 1141 thereof.
(b) By accepting distributions pursuant to the Modified Plan, each Holder of an Allowed Claim shall be deemed to have specifically consented to the injunctions set forth in Article XI of the Modified Plan.

6. **Release By Holders Of Certain Parties.** Pursuant to section 1123(b) (3) of the Bankruptcy Code, but subject to Article 11.13 of the Modified Plan, effective as of the Effective Date, each Debtor, in its individual capacity and as a debtor-in-possession for and on behalf of its Estate, shall release and discharge and be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any and all claims or Causes of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Modified Plan, the business or contractual arrangements between any Debtor and any Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to any such Claims, Interests, restructuring, or the Chapter 11 Cases. The Reorganized Debtors, including Reorganized DPH Holdings, and any newly formed entities that will be continuing the Debtors' businesses after the Effective Date, shall be bound, to the same extent the Debtors are bound, by the releases and discharges set forth above. Notwithstanding the foregoing, nothing in the Modified Plan shall be deemed to release (i) any of the Debtors or GM from their obligations under the Delphi-GM Definitive Documents or the transactions contemplated thereby, except to the extent set forth in the Master Disposition Agreement, (ii) any of the Debtors, the Unions, or GM from their obligations under the Union Settlement Agreements or the transactions contemplated thereby, (iii) any of the Buyers from their obligations under the Master Disposition Agreement, or (iii) any of the Debtors or the Plan Investors or their affiliates from their obligations under the Investment Agreement or the transactions contemplated thereby.

7. **Release By Holders Of Claims And Interests.** On the Effective Date, (a) each Person who votes to accept the Modified Plan and (b) to the fullest extent permissible under applicable law, as such entry (other than a Debtor) which has held, holds, or may hold a Claim against or Interest in the Debtors, in consideration for the obligations of the Debtors and the Reorganized Debtors under the Modified Plan and Cash, the New General Unsecured MDA Distribution, and other contracts, instruments, releases, agreements, or documents to be delivered in connection with the Modified Plan (each, a "Release Obligor"), shall have conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged all Released Parties for and from any claim or Cause of Action existing as of the Effective Date in any manner arising from, based on, or relating to, in whole or in part, the Debtors, the subject matter of, or the transaction or event giving rise to, the claim of such Release Obligor, the business or contractual arrangements between any Debtor and Release Obligor or any Released Party, the restructuring of the claim prior to the Chapter 11 Cases, or any act, omission, occurrence, or event in any manner related to such subject matter, transaction, obligation, restructuring, or the Chapter 11 Cases, including, but not limited to, any claim relating to, or arising out of the Debtors' Chapter 11 Cases, the negotiation and filing of the Modified Plan, the filing of the Chapter 11 Cases, the formulation, preparation, negotiation, dissemination, filing, implementation, administration, confirmation, or consummation of the Modified Plan, the Disclosure Statement, the Plan Exhibits, the Delphi-PBGC Settlement Agreement, the Credit Bid, the Master Disposition Agreement, the Union Settlement Agreements, any employee benefit plan, instrument, release, or other agreement or document created, modified, amended or entered into in connection with either the Modified Plan or any other agreement with the Unions, including but not limited to the Union Settlement Agreements, or any other act taken or not taken consistent with the Union Settlement Agreements in connection with the Chapter 11 Cases; **provided, however**, that (A) Article 11.5 of the Modified Plan is subject to and limited by Article 11.13 of the Modified Plan and (B) 11.5 of the Modified Plan shall not release any Released Party from any Cause of Action held by a governmental entity existing as of the Effective Date based on (i) the Internal Revenue Code or other domestic state, city, or municipal tax code, (ii) the environmental laws of the United States or any domestic state, city, or municipality, (iii) any criminal laws of the United States or any domestic state, city, or municipality, (iv) the Securities Act, or other securities laws of the United States or any domestic state, city, or municipality, (v) the Employee Retirement Income Security Act of 1974, as amended, or (vi) the laws and regulations of the Bureau of Customs and Border Protection of the United States Department of Homeland Security. Notwithstanding the foregoing, all releases given by GM to (i) the Debtors and the Debtors' Affiliates shall be as set forth in the Delphi-GM Global Settlement Agreement and (ii) the Unions shall be as set forth in the Union Settlement Agreements.

8. **Assumption And Assignment Of Executory Contracts And Unexpired Leases.** Subject to the terms of the Modified Plan, Modification Approval Order, and any related Bankruptcy Court orders, upon the occurrence of the Effective Date, each executory contract or unexpired lease assumed, or assumed and assigned, as applicable, pursuant to Article VIII of the Modified Plan, shall vest in and be fully enforceable by the applicable Reorganized Debtor or its assignee in accordance with its terms. On the Effective Date, all executory contracts and unexpired leases as to which any Debtor is a party are deemed automatically assumed by the applicable Reorganized Debtor in accordance with the provisions and requirements of sections 365 and 1123 of the Bankruptcy Code as of the Effective Date, unless such executory contracts or unexpired leases (a) shall have been previously rejected by the Debtors by Final Order of the Bankruptcy Court, (b) are the subject of a motion to reject, or that otherwise authorizes rejection, filed on or before the Modification Approval Date, (c) have been rejected or assumed pursuant to a motion to sell or transfer property or assets filed by the Debtors prior to the Effective Date, (d) have expired or terminated on or prior to the Effective Date (and were not otherwise extended) pursuant to their own terms, (e) are listed on the schedule of rejected contracts on Exhibit 8.1(a) to the Modified Plan, or (f) are otherwise rejected pursuant to the terms of the Modified Plan and/or upon the direction of either Buyer pursuant to the Master Disposition Agreement. Subject to the foregoing sentences, entry of the Modification Approval Order by the Bankruptcy Court approved the rejections, assumptions, and assumptions and assignments contemplated by the Modified Plan, the Modification Approval Order, the Master Disposition Agreement, and related documents pursuant to sections 365 and 1123 of the Bankruptcy Code as of the Effective Date.

9. **Bar Dates.**
(a) **Administrative Bar Date.** Requests for payment of an Administrative Claim (other than as set forth in Article X of the Modified Plan), must be filed with the Claims Agent and served on counsel for the Debtors and the Creditors' Committee no later than November 5, 2009 or shall be disallowed automatically without the need for any objection from the Debtors or Reorganized Debtors. Unless the Debtors or the Reorganized Debtors object to an Administrative Claim on or prior to May 4, 2010 (unless such objection period is extended by the Bankruptcy Court), such Administrative Claim shall be deemed allowed in the amount requested. In the event that the Debtors or the Reorganized Debtors object to an Administrative Claim, the Bankruptcy Court shall determine the allowed amount of such Administrative Claim.
(b) **Professional Claims And Final Fee Applications.** All final requests for payment of Professional Claims and requests for reimbursement of expenses of members of the Statutory Committees must be filed no later than December 31, 2009. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code and prior orders of the Bankruptcy Court, the allowed amounts of such Professional Claims and expenses shall be determined by the Bankruptcy Court. Pursuant to the Bankruptcy Court's prior orders, any requirement that Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered terminated on the Confirmation Date, and the Reorganized Debtors have employed and paid Professionals in the ordinary course of business thereafter.
(c) **Substantial Contribution Bar Date.** Except as otherwise provided in the Modification Approval Order, any Person who requests compensation or expense reimbursement for making a substantial contribution in the Chapter 11 Cases pursuant to sections 503(b)(3), (4), and (5) of the Bankruptcy Code shall file an application with the clerk of the Bankruptcy Court on or before November 20, 2009, and serve such application on counsel for the Debtors, the Creditors' Committee, the United States Trustee for the Southern District of New York, and such other parties as may be decided by the Bankruptcy Court and the Bankruptcy Code on or before November 20, 2009, or be forever barred from seeking such compensation or expense reimbursement.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: /s/ John Wm. Butler, Jr. By: /s/ Kayalyn A. Marafioti
John Wm. Butler, Jr., John H. Lyons, Ron Kayalyn A. Marafioti, Four Times
E. Meisler, 155 North Wacker Drive, Square, New York, New York
Chicago, Illinois 60606, (312) 407-0700 10036, (212) 735-3000

Attorneys for Delphi Corporation, et al., Debtors and Debtors-in-Possession

## BANKRUPTCIES

**NOTICE OF VOTING RIGHTS AND HEARING TO CONSIDER WHETHER TO CONFIRM THE PLAN OF REORGANIZATION OF PITTSBURGH CORNING CORPORATION**

PITTSBURGH CORNING CORPORATION ("PCC") has proposed a Modified Third Amended Plan of Reorganization (the "Plan"). Those with claims against PCC; those with asbestos personal injury claims (as defined in the Plan) against PCC or its parent corporations, **PPG INDUSTRIES, INC.** ("PPG") or **CORNING INCORPORATED** ("Corning") can vote to accept or reject the Plan by **November 16, 2009**. The United States Bankruptcy Court for the Western District of Pennsylvania (the "Court") will consider whether to confirm the Plan at a hearing starting **January 11, 2010**.

A Solicitation Package containing detailed information and ballots for voting on the Plan has been sent to all known claimants or their lawyers, and is available as described below.

**KEY ELEMENTS OF THE PLAN**

The Plan proposes to create a trust to pay asbestos personal injury claims arising from exposure to a former PCC product called Unibestos. An injunction under section 524(g) of the Bankruptcy Code will result in the permanent channeling of asbestos personal injury claims against PCC or any Asbestos Protected Party (as defined in the Plan). This injunction will prohibit people with asbestos personal injury claims from suing the parties protected by the injunction. If you think you may have such an asbestos personal injury claim, you should read the Disclosure Statement and Plan carefully for details about how your rights may be affected.

**VOTING ON THE PLAN**

There is information in the Solicitation Package that describes exactly who can vote and how to vote. You do not have to vote, but you are encouraged to do so if you are eligible. To be counted, a ballot **must be received by the Voting Agent by 5:00 p.m. (Eastern Time) on November 16, 2009**.

**THE HEARING ON THE PLAN**

A hearing to consider confirmation of the Plan will begin before Judge Judith K. Fitzgerald at the **U.S. Bankruptcy Court, Western District of Pennsylvania, in Courtroom A, U.S. Steel Tower, 54th Floor, 600 Grant Street, Pittsburgh PA on January 11, 2010 at 9:30 a.m. (Eastern Time)**. You may attend the hearing but you are not required to do so. Objections, if any, must be **submitted in writing and filed with the Court by November 11, 2009**, as described in the Solicitation Package.

**ADDITIONAL INFORMATION**

If you believe that you have a claim against PCC, and you or your lawyer did not receive a Solicitation Package, you may obtain a Solicitation Package by calling the Voting Agent at (877) 509-3190, visiting www.asbestos-pcc.com or www.loganandco.com, or writing to Logan & Company at 546 Valley Road, Upper Montclair, NJ 07043.

## CLASS ACTIONS

**NOTICE OF PUBLIC AUCTION**

Please take notice that Morgan Stanley & Co. Incorporated ("Morgan Stanley") will be conducting a public auction on October 30, 2009, at 3:00 p.m. (EDT) at 1585 Broadway, Conference Room 6C, New York, NY 10036 of Limited Partnership Interests in (1) the Stillwater Market Neutral Fund II, L.P. formed under the Second Amended and Restated Partnership Agreement dated September 1, 2004 and (2) the Stillwater Asset Backed Fund II, L.P. formed under the Limited Partnership Agreement dated June 3, 2004 (together, the "Auction Assets").

Bidders must register by 5:00 p.m. on October 29, 2009, by sending their name, firm or institution name, address, phone number and e-mail address to Morgan Stanley by fax: 212-507-0717 and/or e-mail: scpauctions@morganstanley.com.

Initial bids must be submitted by October 30, 2009, at 1:00 p.m. to Morgan Stanley & Co. Incorporated, Attention: Morgan Stanley Auctions; fax: 212-507-0717; e-mail: scpauctions@morganstanley.com.

Each qualified bidder must be a financial institution or other entity that has the financial wherewithal to purchase the Auction Assets at the purchase price for the Auction Assets in immediately available U.S. funds no later than the sixth business day following the auction date. A purchaser of the Auction Assets must be a Qualified Purchaser as defined in the Investment Company Act of 1940, as amended, an "eligible contract participant" under the Commodity Exchange Act, as amended, and an Accredited Investor as defined in the Securities Act of 1933, as amended, and will be required to provide satisfactory representations to that effect.

The Auction Assets are being sold "AS IS, WHERE IS" with no representations or warranties.

Any purchaser must (i) in all events be acceptable to Morgan Stanley in its reasonable discretion and (ii) complete and return to the General Partner of each of the Stillwater Market Neutral Fund II, L.P. and the Stillwater Asset Backed Fund II, L.P. subscription documents for such fund.

Morgan Stanley reserves the right to bid for and purchase the Auction Assets or any portion thereof. Morgan Stanley further reserves the right prior to the sale to sell any or any portion of the Auction Assets in a private sale, or to adjourn the auction or withdraw any portion of the Auction Assets from the public sale, without further publication.

For additional information please send a fax to: Morgan Stanley Auctions at 212-507-0717. The fax must include the name of the interested institution and the name, address, phone number and e-mail address of the person at such institution that Morgan Stanley may contact in order to provide further information regarding the Auction Assets and the auction.



## Get Noticed.

Legal Notices. Advertise Today.
Call 1-800-845-9720

# Anxiety in Canada Over Near Parity With U.S. Dollar

**By IAN AUSTEN**

OTTAWA — For Canadians looking to escape winter's premature arrival in many parts of the country by visiting the United States, the equally unexpected movement of the Canadian dollar toward parity with its American counterpart is welcome news. For corporate Canada, however, the development is less inspiring.

At Cascades, a producer of cardboard used to make boxes and tissue paper, every cent the Canadian dollar gains shaves 4 million Canadian dollars from its operating earnings.

With 40 percent of the Canadian economy dependent on trade, mostly with the United States, the prospect of the two currencies being at par for the second time since 2007 probably creates more anxiety than joy in Canada. And while currencies around the world have been rising against the United States dollar, many are laggards compared with Canada's. Since mid-March the Canadian dollar has risen 27 percent, closing on Wednesday at 97.30 cents, up from 76.53 cents.

"The Canadian dollar is a strong threat to the economy," said David Watt, a vice president and senior currency strategist at the Royal Bank of Canada. "Once the Canadian dollar starts getting to levels like parity, the recovery scenario goes from assured to dicey."

Most economists and businesses had forecast that the Canadian dollar would appreciate this year and had set their budgets and, in the case of large corporations, their currency hedging strategies appropriately. But few if any of them anticipated that the rise would be as rapid and that the result would most likely be parity.

Mr. Watt was among the surprised. He cites the usual reasons for the Canadian dollar's rise: increased prices for oil and other Canadian commodities as well as the worldwide disfavor that has fallen upon the United States dollar. But the speed and rate of the change, he said, came from unexpectedly high demand from China for Canadian commodities.

Thomas J. Velk, an economics

---

*The Canadian dollar has risen 27% since the middle of March.*

---

professor at McGill University in Montreal, said he believes that the Canadian currency's movement also reflects the perceptions by the currency markets of the economic prospects of the United States.

"It's a very loud and clear statement about the failure of Obama's policies," he said. That dissatisfaction is causing some capital movement from the United States to Canada, in Professor Velk's analysis. And that trend, he added, is amplified by recent investments in Canadian mining and energy companies by their Chinese customers.

In 2007, exports were strong when Canadian companies were confronted by a high dollar. That, however, is no longer the case partly because Canada's manufacturing sector is particularly dependent on the American automotive industry.

Since July 2008, Canadian exports have fallen 21.3 percent by volume, and export prices are down 16.3 percent, according to Statistics Canada, a government agency.

Economists looking for good news two years ago said that the strong dollar would make it easier for Canadian companies to increase their productivity, which lags behind that of the United States, by reducing the cost of new machinery and systems. About 80 percent of machinery and computer systems used in Canada are imported, Craig Alexander, an economist with the Toronto-Dominion Bank estimates, and most of that is priced in United States dollars regardless of its country of origin.

That investment generally did not happen, however. Capital investment by Canadian companies rose 4.38 percent in 2007, compared with 10 percent the year earlier. The increase was just 0.5 percent last year as companies struggled with the recession, Mr. Alexander said.

Not every company, however, avoided adjustments. Didier Filion, the director of investor relations for Cascades, based in Kingsey Falls, Quebec, said that the previous move of the dollar to parity prompted the company to permanently close underperforming mills and expand automation in those that remained.

Cascades also shifted production of some products it mainly sold in the United States to mills in that country. Still the United States accounts for about 45 percent of the sales of Cascades but only 33 percent of its production.

"The first time in 2007 was a practice round," Mr. Filion said. "This time we're ready to face it."

In speeches over the last several months, Mark J. Carney, the governor of the Bank of Canada, has warned currency markets that he will take action if the Canadian dollar, as he put in it a recent interview with the Canadian Broadcasting Corporation "appears to move away from fundamentals."

If and when that time comes, Mr. Carney said he may resort to "quantitative easing, the printing of money" given that he has effectively exhausted interest rate cuts.

Mr. Carney has avoided defining what exchange rate might prompt action.

But several business groups in Canada argue that the time has come.

"The recent movements up and down look more like a penny stock than a currency," said Avrim Lazar, the president and chief executive of the Forest Products Association of Canada. "The time for talking the dollar down has passed. This is the sort of thing that will just suck the life out of the recovery."



— TAKE THEM FOR —
# A WALK TEST.

**J&M WALK TEST**

To see how comfortable our shoes are, take our 10-day Walk Test. Try any of our select styles for 10 days during the month of October. If for any reason you're not completely satisfied, return the shoes with the receipt to the original store they were purchased from, and we'll give you a full refund. After all, we want you to be comfortable.

**JOHNSTON & MURPHY.**
johnstonmurphy.com/walktest
800.213.5259

STRICKLIN MOC $140
SHULER SIDE GORE $125

©2009 A GENESCO COMPANY. JOHNSTON & MURPHY® AND J&M® ARE REGISTERED TRADEMARKS OF GENESCO INC.

---

# Obama Seeks $250 Check For Retirees And Veterans

**By JACKIE CALMES**

WASHINGTON — President Obama urged Congress on Wednesday to authorize a second $250 stimulus check to be sent early next year to an estimated 57 million Social Security recipients, veterans and people with disabilities.

In effect, the payment would be in lieu of a cost-of-living increase for Social Security beneficiaries next year. The White House request, and receptive statements from Congressional Democratic leaders, anticipated an announcement on Thursday from the Social Security Administration that there would be no cost-of-living adjustment for 2010 because the inflation rate has been negative as the recession has driven down prices.

By contrast, a year ago the cost of living adjustment was 5.8 percent, reflecting strong inflation and high energy prices.

White House officials put the cost of the checks at $13 billion.

---

*Money in lieu of a cost-of-living increase in Social Security.*

---

The first $250 checks went out in May as part of the $787 billion two-year stimulus package. As with that package, the officials said Mr. Obama would not ask Congress to offset the cost with other savings because the checks were intended to stimulate the economy, and budget cuts or tax increases would defeat that.

The money would go to all Social Security beneficiaries, regardless of their income, as well as disabled veterans, those eligible for railroad retirement payments and people who receive federal and state government pensions instead of Social Security.

Mark Zandi, chief economist of Moody's Economy.com, said the checks would not add a lot to economic growth early next year. But, he added, "It is symbolic of policy makers' willingness to provide more temporary help to the economy, which I believe is appropriate."

Support for the additional payments is certain to be bipartisan, given the political influence of older Americans, but Republicans will almost certainly seize the opportunity to draw attention to persistent economic woes.

"This regrettably shows that families and seniors continue to struggle in this severe economic downturn, and that the 'stimulus' has failed to live up to its billing," said Antonia Ferrier, a spokeswoman for John A. Boehner, Republican of Ohio and the House minority leader.

---

*No day is complete without The New York Times.*

[Legal notices: NOTICE OF ORDER APPROVING MODIFICATIONS TO FIRST AMENDED JOINT PLAN OF REORGANIZATION OF DELPHI CORPORATION AND CERTAIN AFFILIATES, DEBTORS AND DEBTORS-IN-POSSESSION AND (II) OCCURRENCE OF EFFECTIVE DATE — United States Bankruptcy Court, Southern District of New York, Case No. 05-44481 (RDD). Delphi Legal Information Hotline and Website details provided.

NOTICE OF VOTING RIGHTS AND HEARING TO CONSIDER WHETHER TO CONFIRM THE PLAN OF REORGANIZATION OF PITTSBURGH CORNING CORPORATION ("PCC") — Modified Third Amended Plan of Reorganization, hearing January 11, 2010, U.S. Bankruptcy Court, Western District of Pennsylvania, 54th Floor, 600 Grant Street, Pittsburgh PA. Ballots to be received by 5:00 p.m. Eastern Time on November 16, 2009.

UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK — In re MOTORS LIQUIDATION COMPANY f/k/a GENERAL MOTORS CORPORATION, et al., Debtors — Chapter 11 Case No. 09-50026 (REG) (Jointly Administered). NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE). Bar Date: November 30, 2009 at 5:00 p.m. (Eastern Time) for General Bar Date; June 1, 2009 for Governmental Bar Date.

Table of Debtors:
| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 | 38-0572515 | General Motors Corporation; GMC Truck Division; NAO Fleet Operations; GM Corporation; GM Corporation-GM Auction Department; National Car Rental; National Car Sales; Automotive Market Research |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 | 38-2577506 | Saturn, LLC; Saturn Corporation; Saturn Motor Car Corporation; GM Saturn Corporation; Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.; CKS of Harlem |

Contact: The Garden City Group, Inc., Attn: Motors Liquidation Company Claims Processing, 5151 Blazer Parkway, Suite A, Dublin, Ohio 43017; or P.O. Box 9386, Dublin, Ohio 43017-4286. Telephone 1-703-286-6401.

Certain Debt Instruments table (CUSIP/ISIN/Swiss Security Numbers) — various Indentures and Trust Indentures between GM, Citibank, and various municipal authorities (Michigan Strategic Fund, Fort Wayne IN, Moraine OH, Indianapolis IN, etc.), dated from 1984 through 2002.]

The New York Times
**Knowledge Network**
nytimes.com/knowledge

## Cover story

# 'Generalized' farce keeps Python relevant

**Continued from 1D**

awards.' Otherwise, you're stuck with these extremely tedious things where people tell you about yourself," says Idle, who isn't necessarily keen about reminiscing. "It's like talking about sex. It's more fun to do than to talk about."

Others would think awards are fitting for a group that hasn't performed together in more than 25 years yet remains popular across cultures and generations. "I keep bumping into people with children and they all keep saying, 'Oh, my kid, he just discovered Python.' And I say, 'How old is he?' And, invariably, 11 is the number," Gilliam says.

In addition to the original show and films including *The Life of Brian*, *Monty Python and the Holy Grail*, and *And Now for Something Completely Different*, Python fans have seen comic bits reassembled in the Tony-winning *Spamalot* and a limited run of *An Evening Without Monty Python*, testament to the timeless stew of absurdity, whimsy and farce with sides of edge and erudition.

Idle, with composer John Du Prez, was behind both shows. Of the original works in *Evening*, he says: "We decided to put them out there and see if they were still funny. The answer is yes." Gilliam's fatalistic take: "If we're going to be ripped off, it might as well be one of us doing it."

Hank Azaria became a Python fan at 11; later, he starred in *Spamalot*. "I think it's fair to call their stuff timeless and classic," says the actor, noting that *Holy Grail* bits in the musical drew a great audience response. "Good writing really holds up."

### Interviews, films, sketches

The six-hour *Almost the Truth* tracks the six from their youth — five hail from the U.K., Gilliam from Minnesota — to the four-season TV series, *Monty Python's Flying Circus*, to the films. The IFC "Python-a-thon" also will feature *Holy Grail*, *Brian* and *Monty Python Live at the Hollywood Bowl*.

The documentary contains extensive interviews with surviving members, archival footage of Chapman and comments by Jimmy Fallon, Eddie Izzard, Stephen Merchant, Lorne Michaels and others. It shows the collaboration — and the conflicts and troubles, such as Gilliam's and Jones' directorial struggles on *Holy Grail* and Chapman's alcohol problem.

DVD and Blu-ray versions, out Oct. 27, include some legendary sketches, including The Parrot Sketch, The Cheese Shop, Spanish Inquisition, The Fish Slapping Dance, The Lumberjack Song and the Ministry of Silly Walks.

What made them classics? "The dead parrot became a classic because of the brilliance of my writing, and the Silly Walk sketch became a classic because of the brilliance of my performance, in spite of Michael Palin's performances," Cleese harrumphs in an e-mail interview.

Four Pythons will continue to celebrate the Ruby Jubilee (as Idle calls it) when Gilliam, Jones and Palin join Idle for the oratorio *Not the Messiah (He's a Very Naughty Boy)*, rooted in *Brian*, on Oct. 23 at London's Royal Albert Hall. They will be missing Cleese. "Well, maybe not," Idle says. "He can be a bit grumpy on those occasions."

Any get-together is a rare event. Jones, Palin and Gilliam, now a British citizen, live in England, Idle and Cleese in California. "There's a balance in nature, clearly," Gilliam says. "One American equals two Englishmen."

Says Cleese, "I still contact my Python friends, whenever I remember their names — some are more difficult than others, but none of them is easy."

Jones is surprised at Python's durability. "I don't think any of us thought when we made the TV shows that we would still be doing interviews about the show and films 40 years later. It's a bit of luck it's happened."

### No current events, 'just antics'

Specifically, he says, Pythonmania almost ended before it started. *Flying Circus* premiered just after BBC1 switched to color, Jones says. A black-and-white series could have quickly become dated and lost appeal to later generations, he says. More significantly, the videotapes containing the shows were scheduled to be erased and reused.

"So we smuggled the tapes out of the BBC and made VCR tapes of them," Jones says. "For six months, I thought the only record of the shows was going to be in my cellar." But after the British run ended in 1974, Python found a huge new audience on U.S. public television.

Cleese attributes Python's longevity to a combination of original work and comic stereotypes recognizable in other cultures.

Python tweaked a still-stuffy British society but avoided topical humor, which lets today's fans enjoy it without having a knowledge of, say, English politics in the 1970s. "We followed a satire boom in England, and therefore, we couldn't do satire," Idle says. "Our humor had to be generalized, so it was satire about generalized comedy figures rather than particular names" future generations might not recognize.

Says Palin: "There was a lot of pure farce, just antics. You didn't have to know anything about the Spanish Inquisition. You'd just see guys coming in at the wrong time and getting the words wrong."

Save for some precincts of cable (along with Fox's *Family Guy*), Gilliam says performers today don't have as much creative room. "Here were six guys doing what they wanted," he says. "No managers, no agents, no studio executives, no marketing people saying, 'Go for this demographic, go for that audience.' Six guys making each other laugh and having the freedom to do so, and the BBC's willingness to put it on the air."

As far as Pythonic signs in today's performers, Gilliam sees kinship with *Family Guy* and *South Park*. *South Park* creators Trey Parker and Matt Stone "say they're my children in animation. They continue to be far more outrageous than Python."

Conversely, Jones says there is much comic talent today but no Python descendants. "I don't really see it. I think we kind of stultified other people. They'd say, 'Oh well, they've done that.' "

Cleese doesn't, either, "but that's because I don't watch much comedy these days, as I get better laughs from Sean Hannity's show."

*Test your Python IQ and see a clip from Almost the Truth at life.usatoday.com.*

For all the silliness, the Oxford- and Cambridge-heavy troupe has eclectic skills and interests, too. Palin, the host of numerous travel documentaries, is president of the Royal Geographical Society. Gilliam's latest directorial effort, *The Imaginarium of Dr. Parnassus* with Heath Ledger, Johnny Depp, Jude Law and Colin Farrell, opens at Christmas.

Jones, a writer and lecturer who feels "a burning need" to restore the reputation of King Richard II, says his interest in the Middle Ages dovetailed with *Holy Grail*. "In the original screenplay, half took place in medieval times and half took place in the present day. I think they found the Holy Grail in Harrods because that's the store that has everything," Jones says. "I suggested to the others, 'Why don't we set it all in the Middle Ages?' And to my surprise, everybody agreed."

They didn't always; Cleese and Jones could agitate each other. "I think John knew he could wind me up because I tended to explode, and he liked playing games with people," Jones says. But "because we all thought a lot of what each other did, everybody had a respect for the other writers. So if they said it's not funny, well, you thought, 'Oh, it's not funny.' "

But one endeavor they could all agree on: "We all enjoyed getting into drag," Palin says. "Whatever they might say, we enjoyed slipping a dress on and wrestling in the mud."

---

## The original troupers: Pythonesque to this day

The founding members of the Monty Python troupe — who they are, what they like, and what they're doing today:


*IFC*

### Terry Jones, 67

**Favorite Python moment:** Pianist Sviatoslav Richter playing a concerto while escaping from a straitjacket, six padlocks and a sack. "In the end, it was the films I enjoyed most, and directing the movies."
**Comedy favorites:** Eddie Izzard, Ricky Gervais. "I think the genius of the cinema is Woody Allen."
**Projects and releases:** Working on a screenplay from 2001 that he once gave up on; writing an opera for the Royal Opera House. "It's quite a departure for the Royal Opera House."


*IFC*

### John Cleese, 69

**Best Python moments:** "The nature documentary (in the pantomime horse episode); reading Cheese Shop and causing Michael Palin to fall off his chair laughing."
**Comedy favorites:** Jerry Seinfeld, Eddie Izzard, Bill Bailey, Jay Leno, Bill Maher.
**Projects and releases:** Tuesday's release of the remastered *Fawlty Towers* DVD (favorite scene: Fire Bell sequence in the "Germans" episode); a musical version of *A Fish Called Wanda* he's writing with daughter Camilla; a movie script with Lisa Hogan.


*IFC*

### Michael Palin, 66

**Favorite Python sketch:** "I think The Fish-Slapping Dance is quintessential Python. It's short, silly, but it has a certain formality that makes it funny each time."
**Comedy curiosity:** "The comedy of observation like *The Office* and Steve Coogan, who does the *Alan Partridge* shows. They take a different tack from Python."
**Projects and releases:** *Halfway to Hollywood*, his diaries of the 1980s, which include *Monty Python Live at the Hollywood Bowl*, *Life of Brian* and *Meaning of Life*; writing follow-up to 1994 novel.


*IFC*

### Eric Idle, 66

**Favorite Python scenes:** Playing jailer (Gilliam) and jailer's assistant (Idle) in *Life of Brian*; sketches included in *An Evening Without Monty Python*: The Spanish Inquisition and The Argument.
**Comedy favorites:** The Mighty Boosh; *Flight of the Conchords*; *Nurse Jackie*.
**Projects and releases:** *Not the Messiah (He's a Very Naughty Boy)*, an oratorio to be performed with three other Pythons Oct. 23; edited the book *Monty Python Live!*; *Spamalot*, created with John Du Prez, is finishing its tour.


*By Todd Plitt, USA TODAY*

### Terry Gilliam, 68

**Favorite Python sketch:** The one in which Cleese drags a bag with his dead mother into a funeral home, trying to figure out whether "to cremate, bury or possibly eat her. It's the most outrageous, offensive, horrible kind of idea, and I'm proud we got that through."
**TV favorites:** *South Park*, *Family Guy*, *Dexter*, *The Simpsons*.
**Projects and releases:** The director has *The Imaginarium of Dr. Parnassus* in December. Upcoming film project: *The Man Who Killed Don Quixote*.


*IFC*

### Graham Chapman, died 1989

**Thoughts on Chapman:**
**Palin.** "I look at the work he did, especially the central performances in *Grail* and *Brian*, and I think there's some of the best, if not the best, sustained acting in any of the Python shows."
**Idle.** "He was the empathetic one. He brought a certain peaceful quality. Graham was the interpreter or the glue who kept people together. ... He absolutely had his personal issues, which were difficult. When he cleaned up, he was wonderful."

*By Joe Mahoney, AP*

---

## MARKETPLACE TODAY

www.rja-ads.com/usatoday | Hours of operation: Mon. - Fri., 8:30 am - 6:00 pm [EST] | To advertise call 1.800.397.0070 Toll-free in the U.S. only

### NOTICES
### LEGAL NOTICE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re : Chapter 11 Case No.
MOTORS LIQUIDATION COMPANY : 09-50026 (REG)
f/k/a GENERAL MOTORS CORPORATION, et al., :
Debtors. : (Jointly Administered)

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 | 38-0572515 | General Motors Corporation GMC Truck Division NAO Fleet Operations GM Corporation GM Corporation-GM Auction Department National Car Rental National Car Sales Automotive Market Research |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 | 38-2577506 | Saturn, LLC Saturn Corporation Saturn Motor Car Corporation GM Saturn Corporation Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc. CKS of Harlem |

**PLEASE TAKE NOTICE THAT,** on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a Proof of Claim to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009**.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:
(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;
(b) Your claim has been paid in full;
(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided, however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;
(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above.** Section 503(b)(9) provides in part: "...there shall be allowed administrative expenses...including...(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date;**
(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;
(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);
(g) You are a Debtor in these cases having a claim against another Debtor;
(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;
(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or
(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however,** that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
P.O. Box 9386
Dublin, Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

**Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.**

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.

DATED: September 16, 2009     BY ORDER OF THE COURT
        New York, New York
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors and Debtors in Possession

### Certain Debt Instruments

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 370445EAG3, 370445EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442BE4, 370442BG9, 370442BS3, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and JPMorgan Chase Bank as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of July 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM, Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

(Classified ads: IMPORTS, HOT RODS/CLASSICS, SPORTS CARS, LEGAL NOTICE/BIDS/PROPOSALS, CEMETERIES & MONUMENTS, LOST & FOUND, ANNOUNCEMENTS, DATING SERVICES, ADULT ENTERTAINMENT, PETS, BIRDS, CATS, DOGS & KENNELS — omitted individual listings)

**WIN $5,000 IN GAS $2,500 GRAND PRIZE** +5 WEEKLY WINNERS OF $100 (25 total) — Detroit Free Press promotion. Mail to: GAS UP!, PO BOX 31-0198 Detroit, MI 48231.

Find the perfect apartment right from my phone? Another reason why it's always a good move with apartments.com.

Fur, Fins & Feathers — To advertise call 1-800-WANT-ADS

## LEGAL NOTICE/BIDS/PROPOSALS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re: MOTORS LIQUIDATION COMPANY f/k/a GENERAL MOTORS CORPORATION, et al., Debtors.

Chapter 11 Case No. 09-50026 (REG) (Jointly Administered)

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 | 38-0572515 | General Motors Corporation; GMC Truck Division; NAO Fleet Operations; GM Corporation; GM Corporation-GM Auction Department; National Car Rental; National Car Sales; Automotive Market Research |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 | 38-2577506 | Saturn, LLC; Saturn Corporation; Saturn Motor Car Corporation; GM Saturn Corporation; Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.; CKS of Harlem |

PLEASE TAKE NOTICE THAT, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Court"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "Debtors") entered an order (the "Bar Date Order") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("Proof of Claim") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "Governmental Bar Date" and, together with the General Bar Date, the "Bar Dates").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**If you have any questions relating to this Notice, please feel free to contact Allen Partners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You MUST file a Proof of Claim to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to June 1, 2009, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that occurred before June 1, 2009 may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to June 1, 2009.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, claims under section 503(b)(9) Claims (as defined in Section 2(d) below).

**YOU SHOULD NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:
(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do not dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do not dispute that the claim is an obligation of the specific Debtor against which the claim is listed in the Schedules;
(b) Your claim has been paid in full;
(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided, however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;
(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however**, 503(b)(9) Claims are subject to the General Bar Date as provided above. Section 503(b)(9) provides in part: "...there shall be allowed administrative expenses...including...(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date;
(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;
(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);
(g) You are a Debtor in these cases having a claim against another Debtor;
(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;
(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or
(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "Debt Claim") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "Debt Instruments") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will forever be barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company
Claims Processing
P.O. Box 9386
Dublin, Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to the Official Bankruptcy Form No. 10 ("Proof of Claim Form"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred — that is, forbidden — from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "Schedules"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company, P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered by this Notice, such as whether the holder should file a Proof of Claim.

DATED: September 16, 2009
New York, New York
BY ORDER OF THE COURT

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AB6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442BA2, 370442AY1, 370442766, 370442754, 370441711, 370442725, 370442BQ7, 370442BV6, 370442BT1, 370442BW4, 370442BS3, 370442121, 370442AB5 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, between State of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A. ($11,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Trust Indenture, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759QABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($51,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM, Nova Scotia Finance Company, GM, as fiscal agent and paying agent, Deutsche Bank Luxembourg S.A., as fiscal agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

N1981492.pdf

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
(Tribunal fédéral des faillites pour le district Sud de New York)

| En l'affaire<br>Motors Liquidation Company<br>anciennement connu sous le nom de<br>GENERAL MOTORS CORPORATION et consorts,<br>Débiteurs. | Chapitre 11, affaire n°<br>09-50026 (REG)<br><br>(Administré conjointement) |
|---|---|

**AVIS DE DÉLAIS DE DÉPOSE DE PREUVE DE RÉCLAMATION (Y COMPRIS DES RÉCLAMATIONS AU TITRE DE LA SECTION 503(b)(9) DU CODE DES FAILLITES)**

À L'ATTENTION DE TOUTE PERSONNE, PHYSIQUE ET MORALE, AYANT DES RÉCLAMATIONS (Y COMPRIS DES RÉCLAMATIONS AU TITRE DE LA SECTION 503(b)(9) DU CODE DES FAILLITES) À L'ENCONTRE D'UN DÉBITEUR INDIQUÉ CI-DESSOUS :

| Nom du Débiteur | Numéro de l'affaire | Numéro d'identification fiscale | Autres noms utilisés par les Débiteurs au cours des 8 dernières années |
|---|---|---|---|
| Motors Liquidation Company (anciennement connu sous le nom de **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (anciennement connu sous le nom de **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (anciennement connu sous le nom de **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (anciennement connu sous le nom de **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

**VEUILLEZ NOTER QUE**, le 16 septembre 2009, le United States Bankruptcy Court for the Southern District of New York (Tribunal fédéral des faillites pour le district Sud de New York) (le « Tribunal »), ayant compétence pour statuer sur les instances relevant du chapitre 11 de Motors Liquidation Company (anciennement connu sous le nom de Général Motors Corporation) et de ses débiteurs affiliés, en qualité de débiteurs en possession (collectivement, les « **Débiteurs** »), a rendu une ordonnance (l'« **Ordonnance de date limite** ») établissant (i) le **30 novembre 2009 à 17 h 00 (heure normale de l'Est)** comme date et heure limites auxquelles toute personne, physique ou morale, (y compris et de manière non limitative, les personnes physiques, les sociétés de personnes, les sociétés par actions, les coentreprises et les fiducies) doit déposer une preuve de réclamation (« **Preuve de réclamation** ») basée sur les réclamations antérieures à la demande de mise en faillite, y compris une réclamation au titre de la section 503(b)(9) du Code des faillites, comme décrit de façon plus détaillée ci-après (une « **Réclamation au titre de la section 503(b)(9)** »), à l'encontre des Débiteurs (la « **Date limite générale** ») et (ii) le **30 novembre 2009 à 17 h 00 (heure normale de l'Est)** comme date et heure limites auxquelles chaque entité gouvernementale (telle que définie dans la section 101(27) du Code des faillites) doit déposer une Preuve de réclamation basée sur les réclamations antérieures à la demande de mise en faillite à l'encontre des Débiteurs (la « **Date limite applicable au gouvernement** », et conjointement avec la Date limite générale, les « **Dates limites** »).

L'Ordonnance de date limite, les Dates limites et les procédures indiquées ci-dessous pour le dépôt de Preuves de réclamation s'appliquent à toutes les réclamations à l'encontre des Débiteurs (autres que celles indiquées ci-dessous comme étant spécifiquement exclues) qui sont nées avant le 1er juin 2009, date à laquelle les Débiteurs ont entamé les instances dans le cadre du chapitre 11 au titre du Code des États-Unis (le « **Code des faillites** »).

**Pour toute question relative à cet Avis, veuillez contacter AlixPartners au 1-800-414-9607 ou par courriel à l'adresse claims@motorsliquidation.com. En outre, vous pouvez contacter le Comité officiel des créanciers ordinaires par l'intermédiaire de son site Web à l'adresse www.motorsliquidationcreditorscommittee.com ou au 1-212-715-3275.**

**NOUS VOUS RECOMMANDONS DE CONSULTER UN AVOCAT POUR LUI SOUMETTRE TOUTE QUESTION, Y COMPRIS LE POINT DE SAVOIR SI VOUS DEVRIEZ DÉPOSER UNE PREUVE DE RÉCLAMATION.**

**1. QUI DOIT DÉPOSER UNE PREUVE DE RÉCLAMATION ?**

Vous **DEVEZ** déposer une **Preuve de réclamation** pour voter sur un plan au titre du chapitre 11 déposé par les Débiteurs ou pour participer au partage de tout patrimoine des Débiteurs si vous avez une réclamation née avant le 1er juin 2009, y compris une Réclamation au titre de la section 503(b)(9), et qu'elle ne constitue pas une réclamation d'un autre type, décrite dans la Section 2 ci-dessous. Les faits et circonstances antérieurs au 1er juin 2009 peuvent donner lieu à des réclamations à l'encontre des Débiteurs qui doivent être déposées au plus tard à la Date limite applicable, nonobstant le fait que de telles réclamations puissent ne pas être échues, déterminées ou liquides ou certaines avant le 1er juin 2009.

En application de la section 101(5) du Code des faillites et tel qu'utilisé dans cet Avis, le terme « réclamation » signifie : (a) un droit à paiement, qu'un tel droit soit ou non réduit par un jugement, liquide, non liquide, déterminé, conditionnel, échu, non échu, contesté, incontesté, légal, équitable, garanti ou non garanti; ou (b) un droit à une juste réparation au titre d'une inexécution si une telle inexécution donne lieu à un droit à paiement, qu'un tel droit à une juste réparation soit réduit par un jugement, déterminé, conditionnel, échu, non échu, contesté, incontesté, garanti ou non garanti. En outre, les réclamations comprennent les créances non garanties, les créances garanties, les créances prioritaires et les Réclamations au titre de la section 503(b)(9) (telles que définies dans la Section 2(d) ci-dessous).

**2. QUI N'EST PAS TENU DE DÉPOSER UNE PREUVE DE RÉCLAMATION ?**

Vous n'êtes pas tenu de déposer une Preuve de réclamation si :
(a) Votre réclamation est inscrite sur les Inventaires (tels que définis ci-dessous) et (i) **n'est pas** décrite dans les Inventaires comme « contestée », « conditionnelle » ou « non liquide », (ii) vous **ne** contestez **pas** le montant ou la nature de la réclamation inscrite sur les Inventaires et (iii) vous **ne** contestez **pas** que la réclamation est une obligation du Débiteur spécifique à l'encontre duquel la réclamation est inscrite sur les Inventaires;
(b) Votre réclamation a été intégralement payée;
(c) Vous détenez une participation dans un quelconque Débiteur et ladite participation est exclusivement basée sur la propriété d'actions ordinaires ou privilégiées, des participations de membre, des participations dans la société ou des garanties ou des droits d'acheter, de vendre ou de souscrire de telles actions ou participations; **sous réserve, toutefois**, que les détenteurs de participations qui souhaitent faire valoir à l'encontre d'un quelconque Débiteur des réclamations (à la différence des participations) découlant de ou relatives à la propriété ou l'achat d'une participation, y compris des réclamations découlant de ou relatives à la vente, l'émission ou la distribution de la participation, doivent déposer des Preuves de réclamation au plus tard à la Date limite applicable, sauf si une autre exception identifiée dans les présentes s'applique;
(d) Vous détenez une réclamation admise en tant que réclamation administrative dans le cadre des sections 503(b) et 507(a)(2) du Code des faillites, **sous réserve, toutefois, que les Réclamations au titre de la section 503(b)(9) soient sujettes à la Date limite générale comme indiqué ci-dessus**. La section 503(b)(9) dispose notamment : «... il doit exister des charges administratives admises... y compris... (9) la valeur de tout bien, reçu par le débiteur dans les 20 jours précédents la date de l'ouverture d'une instance en vertu de ce titre, à laquelle le bien a été vendu au débiteur dans le cadre normal des affaires d'un tel débiteur. » **En conséquence, si vous avez une Réclamation au titre de la section 503(b)(9), vous devez déposer une Preuve de réclamation au plus tard à la Date limite générale;**
(e) Vous détenez une réclamation qui a été admise par une ordonnance du Tribunal rendue au plus tard à la Date limite applicable;
(f) Vous détenez une réclamation à l'encontre d'un quelconque Débiteur pour laquelle un délai distinct est fixé par le Tribunal (après quoi vous serez requis de déposer une Preuve de réclamation dans ce délai distinct);
(g) Vous êtes un Débiteur dans ces instances ayant une réclamation à l'encontre d'un autre Débiteur;
(h) Vous êtes un affilié (au sens de la section 101(2) du Code des faillites) d'un quelconque Débiteur à la Date limite;
(i) Vous détenez une réclamation pour laquelle vous avez déjà valablement déposé une Preuve de réclamation à l'encontre d'un quelconque Débiteur auprès du greffier du Tribunal ou de The Garden City Group, Inc., l'agent des réclamations des Débiteurs, en utilisant un formulaire de réclamation substantiellement conforme au formulaire de Preuve de réclamation (tel que défini ci-dessous) ou au formulaire officiel 10; ou
(j) Vous détenez une réclamation exclusivement limitée au remboursement du principal, des intérêts et d'autres frais et charges à valoir sur ou en vertu de tout contrat ( une « **Créance** ») régissant tout titre de créance émis par un quelconque Débiteur en vertu d'un contrat synallagmatique (conjointement, les « **Titres de créance** ») si le fiduciaire désigné par l'acte constitutif ou un représentant similaire dans le cadre du contrat synallagmatique applicable ou d'un contrat d'agence fiscale et de paiement dépose une Preuve de réclamation à l'encontre du Débiteur concerné, au plus tard à la Date limite, au titre de toutes les Créances à l'encontre d'un tel Débiteur en vertu des Titres de créance applicables, **sous réserve, toutefois**, qu'il soit exigé de tout détenteur d'une Créance souhaitant faire valoir une réclamation découlant d'un Titre de créance ou relative à un tel Titre de créance, autre qu'une Créance, qu'il dépose une Preuve de réclamation relative à une telle réclamation au plus tard à la Date limite, sauf si une autre exception identifiée dans les présentes s'applique. Les Titres de créance comprennent les contrats énumérés à la fin de cet Avis.

**VOUS NE DEVEZ PAS DÉPOSER UNE PREUVE DE RÉCLAMATION SI VOUS N'AVEZ AUCUNE RÉCLAMATION À L'ENCONTRE DES DÉBITEURS.**

**3. CONTRATS À EXÉCUTER ET BAUX EN COURS**

Si vous détenez une réclamation découlant du rejet d'un contrat à exécuter ou d'un bail en cours, vous devez déposer une Preuve de réclamation basée sur le tel rejet au plus tard (i) à la Date limite applicable ou (ii) à la date correspondant au trentième jour suivant l'ordonnance approuvant un tel rejet, à la dernière échéance. À défaut, il vous sera définitivement interdit de déposer une telle preuve. Nonobstant ce qui précède, si vous êtes partie à un contrat à exécuter ou un bail en cours et que vous souhaitez faire valoir une réclamation au titre de sommes impayées accumulées en date du 1er juin 2009 en vertu dudit contrat à exécuter ou bail en cours (autre qu'une réclamation en dédommagement du rejet), vous devez déposer une Preuve de réclamation pour de telles sommes au plus tard à la Date limite, sauf si une autre exception identifiée ci-dessus s'applique.

**4. QUAND ET OÙ EFFECTUER LE DÉPÔT ?**

Toutes les Preuves de réclamation doivent être déposées de sorte à être **effectivement reçues** au plus tard à la Date limite applicable à l'adresse suivante :

Si par service de messagerie de 24 h ou remise en main propre, à :
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

Si par courrier de première classe, à :
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
P.O. Box 9386
Dublin, Ohio 43017-4286

Ou, si par remise en main propre, à :
United States Bankruptcy Court, SDNY
One Bowling Green
Room 534
New York, New York 10004

Les Preuves de réclamation seront réputées déposées dans les délais uniquement si elles sont **effectivement reçues** par The Garden City Group, Inc. ou le Tribunal au plus tard à la Date limite applicable. Les Preuves de réclamation **ne** peuvent **pas** être délivrées par fac-similé, télécopie ou courrier électronique.

**5. QUOI DÉPOSER ?**

Si vous déposez une Preuve de réclamation, celle-ci doit : (i) être écrite en anglais; (ii) être libellée dans la monnaie légale des États-Unis; (iii) être substantiellement conforme au formulaire officiel des faillites n° 10 (« **Formulaire de preuve de réclamation** »); (iv) indiquer le Débiteur duquel elle est déposée; (v) invoquer de manière détaillée les fondements légaux et factuels de la réclamation alléguée; (vi) inclure des pièces justificatives ou un exposé des raisons pour lesquelles de telles pièces ne sont pas disponibles; et (vii) être signée par le réclamant ou, si le réclamant n'est pas une personne physique, par un représentant autorisé du réclamant.

SI VOUS FAITES VALOIR UNE RÉCLAMATION À L'ENCONTRE DE PLUSIEURS DÉBITEURS, DES PREUVES DE RÉCLAMATION DISTINCTES DOIVENT ÊTRE DÉPOSÉES À L'ENCONTRE DE CHAQUE DÉBITEUR ET VOUS DEVEZ IDENTIFIER LE DÉBITEUR PARTICULIER À L'ENCONTRE DUQUEL VOTRE RÉCLAMATION EST ÉMISE, AINSI QUE LE NUMÉRO DE L'AFFAIRE DE L'INSTANCE DE FAILLITE DE CE DÉBITEUR, SUR VOTRE PREUVE DE RÉCLAMATION. UNE LISTE DES NOMS DES DÉBITEURS ET DE LEURS NUMÉROS D'AFFAIRE EST COMMUNIQUÉE CI-DESSUS.

Des Formulaires de preuve de réclamation supplémentaires peuvent être obtenus à l'adresse www.uscourts.gov/bkforms/ ou www.motorsliquidation.com.

**NOUS VOUS RECOMMANDONS DE JOINDRE À VOTRE FORMULAIRE DE PREUVE DE RÉCLAMATION COMPLÉTÉ DES COPIES DE TOUS LES DOCUMENTS SUR LESQUELS VOTRE RÉCLAMATION EST FONDÉE. NOUS VOUS RECOMMANDONS DE JOINDRE UN RÉSUMÉ SI LES DOCUMENTS SONT VOLUMINEUX.**

**6. CONSÉQUENCE D'UN DÉFAUT DE DÉPÔT DE PREUVE DE RÉCLAMATION AU PLUS TARD À LA DATE LIMITE**

À l'exception des réclamations du type décrit dans la Section 2 ci-dessus, tout créancier qui ne dépose pas une Preuve de réclamation au plus tard à la Date limite sous la forme appropriée et conformément aux procédures décrites dans cet Avis pour toute réclamation qu'un tel créancier détient ou souhaite faire valoir à l'encontre de chacun des Débiteurs, sera à jamais proscrit, c'est-à-dire se verra interdit, de faire valoir la réclamation à l'encontre de chacun des Débiteurs et de leur patrimoine respectif (ou de déposer une Preuve de réclamation relative à la réclamation) et chacun des Débiteurs et leur patrimoine, successeurs et propriété respectifs au titre du chapitre 11 seront à jamais déchargés de tout endettement ou de toute responsabilité quant à la réclamation. Par ailleurs le détenteur de la réclamation ne sera pas autorisé à voter pour accepter ou rejeter tout plan au titre du chapitre 11 déposé dans le cadre de ces instances au titre du chapitre 11, à participer à une quelconque répartition dans le cadre d'une quelconque instance au titre du chapitre 11 des Débiteurs au titre de la réclamation ou à recevoir des avis supplémentaires portant sur une quelconque instance au titre du chapitre 11 des Débiteurs.

**7. LES INVENTAIRES DES DÉBITEURS, LEUR ACCÈS ET LES CONSÉQUENCES DE LEUR MODIFICATION**

Vous pouvez être mentionné comme le détenteur d'une réclamation à l'encontre d'un ou plusieurs Débiteurs dans les Inventaires des actifs et passifs et/ou les Inventaires des contrats à exécuter et des baux en cours (collectivement, les « **Inventaires** »). Si vous vous reposez sur les Inventaires des débiteurs, vous assumez la responsabilité de déterminer si la réclamation est inscrite avec exactitude dans les Inventaires.

Comme indiqué ci-dessus, si vous acceptez la classification et le montant de votre réclamation telle qu'elle est inscrite dans les Inventaires des débiteurs et si vous ne contestez pas le fait que votre réclamation s'applique qu'à l'encontre du Débiteur spécifié et si votre réclamation **n'est pas** décrite comme « contestée », « conditionnelle » ou « non liquide », il n'est pas nécessaire que vous déposiez une Preuve de réclamation. Autrement, ou si vous décidez de déposer une Preuve de réclamation, vous devez agir avant la Date limite, conformément aux procédures exposées dans cet Avis.

Des copies des Inventaires peuvent être consultées par les parties intéressées via le rôle électronique du Tribunal pour les instances au titre du chapitre 11 des Débiteurs. Ce rôle est publié sur Internet aux adresses www.motorsliquidation.com et www.nysb.uscourts.gov (une ouverture de session et un mot de passe PACER sont requis et peuvent être obtenus auprès du Centre de service PACER à l'adresse www.pacer.psc.uscourts.gov). Des copies des Inventaires peuvent aussi être consultées par les parties intéressées entre 9 h 00 et 16 h 30 (heure normale de l'Est) au bureau du greffier du Tribunal des faillites, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Des copies des Inventaires des Débiteurs peuvent aussi être obtenues sur demande écrite auprès de l'agent des réclamations des Débiteurs à l'adresse et au numéro de téléphone indiqués ci-dessous :

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

Dans l'éventualité d'une modification des inventaires par les Débiteurs pour (a) désigner une réclamation comme contestée, conditionnelle, non liquide ou indéterminée, (b) changer le montant d'une réclamation qui y est reflétée, (c) changer la classification d'une réclamation qui y est reflétée ou (d) ajouter une réclamation non inscrite sur les Inventaires, les Débiteurs vous notifieront de la modification. En pareil cas, le délai que vous devrez respecter pour déposer une Preuve de réclamation au titre d'une telle réclamation est (a) la Date limite applicable ou (b) la date correspondant au trentième jour suivant la délivrance d'un avis de modification par les Débiteurs, à la dernière échéance.

Il est recommandé au titulaire d'une réclamation éventuelle à l'encontre des Débiteurs de consulter un avocat à propos à tout sujet non couvert par cet Avis, tel que la question de savoir si le titulaire doit déposer une Preuve de réclamation.

LE : 16 septembre 2009
New York, New York

SUR L'ORDRE DU TRIBUNAL

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Téléphone : (212) 310-8000
Fax : (212) 310-8007
AVOCATS DES DÉBITEURS ET DÉBITEURS EN POSSESSION

**Certains Titres de créance**

| | Titre de créance | Numéros CUSIP, ISIN ou de sécurité suisse |
|---|---|---|
| 1 | Contrat synallagmatique daté du 15 novembre 1990, entre GM et Citibank en qualité de fiduciaire désigné par l'acte constitutif | n° CUSIP 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Contrat synallagmatique, daté du 7 décembre 1995, entre GM et Citibank en qualité de fiduciaire désigné par l'acte constitutif | n° CUSIP 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Acte de fiducie daté du 1er juillet 1995, entre Michigan Strategic Fund et Dai-Ichi Kangyo Trust Company of New York (obligation-recettes de conversion relatives au contrôle de la pollution à taux interchangeables combinés de 58 800 000 $) | n° CUSIP 594693AQ6 |
| 4 | Acte de fiducie daté du 1er juillet 1994, entre la ville de Moraine, Ohio et Dai-Ichi Kangyo Trust Company of New York (obligation-recettes relatives à l'élimination des déchets solides de 12 500 000 $) | n° CUSIP 616449AA2 |
| 5 | Acte de fiducie daté du 1er juillet 1999, entre la ville de Moraine, Ohio et Dai-Ichi Kangyo Trust Company of New York (obligation-recettes relatives à l'élimination des déchets solides de 10 000 000 $) | n° CUSIP 616449AB0 |
| 6 | Acte de fiducie daté du 1er décembre 2002, entre la ville de Fort Wayne, Indiana, JPMorgan Chase Bank et Bank One Trust Company, N.A., (obligation-recettes de conversion relatives au contrôle de la pollution de 31 000 000 $) | n° CUSIP 349272AT1 |
| 7 | Acte de fiducie daté du 1er mars 2002, entre Ohio Water Development Authority et JPMorgan Chase Bank (obligation-recettes de conversion relatives au contrôle de la pollution de l'État de 20 040 000 $) | n° CUSIP 667596AU2 |
| 8 | Acte de fiducie daté du 1er décembre 2002, entre Ohio Water Development Authority et JPMorgan Chase Bank (obligation-recettes relatives à l'élimination des déchets solides de l'État de l'Ohio de 46 000 000 $) | n° CUSIP 67759ABC2 |
| 9 | Acte de fiducie daté du 1er avril 1984, entre la ville d'Indianapolis, Indiana, Bankers Trust Company et The Indiana National Bank (obligation-recettes relatives au contrôle de la pollution de 1 400 000 $) | n° CUSIP 455329AB8 |
| 10 | Contrat d'agence fiscale et de paiement daté du 3 juillet 2003, entre GM, Deutsche Bank AG London, en qualité d'agent fiscal et d'agent payeur et la Banque Générale du Luxembourg S.A., en qualité d'agent payeur | n° ISIN XS0171942757, XS0171943649 |
| 11 | Contrat d'agence fiscale et de paiement daté du 10 juillet 2003, entre GM Nova Scotia Finance Company, GM, en qualité de garant, Deutsche Bank Luxembourg S.A., en qualité d'agent fiscal et de paiement et Banque Générale du Luxembourg S.A., en qualité d'agent payeur | n° ISIN XS0171922643, XS0171908063 |
| 12 | Contrat d'achat d'obligations et d'agence de paiement daté du 28 mai 1986, entre GM et Credit Suisse | n° de sécurité suisse 876 926 |

D000054993

**300 SERVICES FINANCIERS**

ENDETTÉ?
Libérez-vous!
Proposition ou faillite, vous pourriez:
- Arrêter le harcèlement des créanciers
- Éliminer les intérêts/réduire le capital
- Faire un seul paiement mensuel
Rendez-vous flexible
Visionnez nos vidéos d'information
www.dettes.ca
514 938-2870 ou 1 877 961-0008
Groupe Leblanc Syndic Inc.

**302 OCCASIONS D'AFFAIRES**

DEVENEZ MILLIONNAIRE
www.clubmillionnaires.com
1-866 671-9932

LE PROPRIÉTAIRE d'une usine réfrigérée et certifiée, H.A.C.C.P. de 25,000pi/c., cherche à s'associer avec propriétaire d'une usine en surcapacité avec fort potentiel de croissance ou une personne ayant des contrats potentiels et ayant besoin d'un tel établissement pour la production. Appeler Jack Lamba 514 824-2452

NOUVEAU CONCEPT DE GOUTTIÈRE.
Brevet à vendre. Tél: 450 836-0867
Gilberte & Réal

WWW.MONSIEURCALFEUTRAGE.CA
Léger investissement, très $$$, travail manuel facile. Rod :514 248-6284

WWW.MSD2003.COM
0$ investissement, très payant, succès garantie, 514 838-1137

**314 ENTREPOSAGE**

BÂTIMENT isolé, 120x40, 4 800pi. ca., pour autos, motos ou autres, à louer 800$/mois, 450 793-2964

ENTREPOSAGE autos ou motos, local neuf, chauffé, éclairé avec alarme, 75$/mois. 514 817-8637.

ENTREPOSAGE extérieur clôturé, pour machinerie lourde ou autres , 6000 pi ca., 400$/mois, 514-494-0852

ENTREPOSAGE intérieur pour auto, camion ou autre, chauffé, 100$/mois, réservez dès maintenant! 514-494-0852

**316 CAMIONNAGE TRANSPORT**

DÉMÉNAGEMENTS PERFECTO
514 266-7813, local/long.dist.

Déménagement Dénommé Richer inc.
16p, 28p. Carte de crédit acceptée. couverture, assurance 514 354 7179

GAÉTAN déménagements
Assurance comprise 514 257-9201

LEBRUN transport, déménagement 25$/hres, local/longue dist., couverture et ass. complète. 514 816-3294.

TRANSPORTEUR MARTIN, remorque plateforme, 40 pi., 32 pi. basculaire, 12 t, local/ longue distance, 514 824-0515

**336 ASTROLOGIE CARTOMANCIE**

✱ MÉDIUM QUÉBEC ✱
Les meilleures voyantes du Québec vous parlent au
514 524-6000

✱ GRATUIT ✱
www.MediumQuebec.com
Abonnés Rogers,Bell, ou fido faites le # (carré) 4676

✱✱ MR. BARRY ✱✱
GRAND VOYANT MÉDIUM PRÉDIT
Amour, Travail, Affaire, résous, propriétés, d'avenir, retour immédiat de l'être aimé. Résultat 72 hres, 100% garanti. Sérieux, efficace. Paiement après résultat ✱ (514) 948-4752 ✱

VOYANCEQUÉBEC.COM
Bell Mobilité, Fido & Rogers faites le # futur (38887).
Gratuit le 514 768-0000
accès direct : ( 1 900 451-0088 )

✱ TARO GRAND MÉDIUM ✱
SPÉCIALISTE EN AMOUR,RETOUR IMMÉDIAT DE L'ÊTRE AIMER EN 3 JOURS.
(514) 966-9170 ✱

POUR trouver des solutions à tous vos problèmes, même les cas les plus difficiles. Retour vite, ami-chance au pouvoir affaires-désenvoûtement-impuissance sexuel-protection-etc. Résultats 72 h. Paiement après résultats. 514 625-7454

**340 ESCORTES**


FANTASME xxx enr.
agencefantasme-xxx.com
514- 944-9545
JOUR: Patrick et ses jolies félines attendent votre appel
SOIR: Sabrina - Kina - Sarah - Melissa - Emilie - Maria - Malicia - Maxime - Chanel - Barbara - Alex - Dhana - Alisia - Daisy-Leyla - Mélanie - Chloé - Emma - Brittany - Allison - Jennifer - Malika - Stacey - Vanessa - Destiny - Pamela - Alicia - Jessy - Mya - Kella - Cléopatre

BIENVENUE NOUVELLES VENUES
VIPxxx 24 / 24 VIPxxx
514- 944-9545


VIP FERRARY SERVICE D'ESCORT XXX enr.
ESCORTES XXX enr.
WWW.MONTREALXXX.CA
Bienvenue aux nouvelles venues
OUVERT 7 JOURS 24/24
514 220-0222

PARADISE XXX enr.
514 588-3644
Le meilleur service
514 588-3644
Nous essayer c'est nous adopter
Bienvenue aux nouvelles venues

DOUCE FOLIE XXX
$120$
514 497-4836
www.doucefolie.com
Enr. Top modèle 150$-V.I.P 200$
Bienvenue à nos nouvelles venues.

SATISFACTION XXX enr.
$120$
24/7 V.I.P. NATIONALITÉ, COUPLE
++SÉLECTION même tôt le MATIN
514 -991-4272
✱V.I.P ✱ FILLES #1 DISCRÉTION

WEEK-END GIRLS
514-467-9336 enr. déplacement seulement
514-467-9336
Même tôt le matin

High Class
Enr. Reçoit / Déplace
Voir photos sur notre site:
www.hc-escorts.com
514 569-3695

# MERRILL BRINK
## INTERNATIONAL

State of Minnesota    )
                     )    ss:
County of Ramsey     )

**Certificate of Accuracy**

This is to certify that the content/substance of the following document:

*Bar Date Notice Revisions*

originally written in *English* is, to the best of our knowledge and belief, a true, accurate and complete translation into *French-Canadian..*

Dated: *October 20, 2009*

*[signature]*
Leo Lipnik
Project Manager
Merrill Brink International

Sworn to and signed before
Me this __20th__ day of
__October__, 2009

*[signature] Lori A Wietman*
Notary Public

LORI A WIETMAN
NOTARY PUBLIC – MINNESOTA
MY COMMISSION EXPIRES 1-31-2010

Merrill Brink International Corporation
One Merrill Circles, Building #1455, St. Paul, MN 55108
Phone 651-646-4501, Fax 651-632-4781