09-50026-mg    Doc 10601-5    Filed 07/20/11    Entered 07/20/11 15:49:47    Exhibit C - Cert of Pub - pt 3    Pg 1 of 3

# CRITICS 'We pay the money back'

**CONTINUED FROM B1**

"It's not provocation. There simply is no viable aircraft being produced in that specific market niche – that's all," Beaudoin said.

Besides, he noted, despite all the talk about putting a new and more efficient engine on Airbus 320s and Boeing 737s, it would not work.

"They're much, much heavier planes and could not match the 20 per cent operating cost savings (the CSeries expects to offer after its scheduled launch in 2013.)"

As for Brazilian rival **Embraer,** whose president, Frederico Fleury Curado, told The Gazette last week that he would scrutinize CSeries launch aid Bombardier received from the British government, Beaudoin said succinctly: "There are many things about Embraer that are not well-known."

Regarding Boeing, Beaudoin turned the table around.

"If we in Canada had anything remotely resembling a fraction of the military contracts given to (companies like Boeing), we wouldn't begin to need any government aid. Everyone in the world does it – everyone, no matter what they say.

"These military contracts in the U.S. pay for the totality of aircraft programs. They're totally paid for (by government). And then the commercial side gets the benefits of the (defence contracts). Airbus (in Europe) does the same thing."

Besides, he added, the investment formula of one-third, one-third, one-third (shouldered by companies, suppliers and governments for launching new aircraft programs), under which the CSeries was financed, is legal and accepted by all trade organizations that regulate the aerospace industry.

"And we pay the money back," Beaudoin said.

"It's pretty funny, all this focus by companies on their competitors," he concluded. "There's a place in the sun for everyone."

fshalom@thegazette.canwest.com

# Bombardier gets on track for rail modernization in Europe

## Lands $383M deal for locomotives

**Bombardier Inc.** is strengthening its role in Europe's massive rail-modernization program with the help of technology acquired with the 2001 takeover of Germany's **Adtranz** from **Daimler AG.**

Bombardier Transportation, its Berlin-based rail equipment subsidiary and the world's biggest builder of electric locomotives, yesterday pulled in a $383-million U.S. follow-up contract for 100 of its E464 line for **Trenitalia** (Italian Railways), together with an option for 50 more.

Trenitalia already has ordered 638 of the E464 locos, of which 480 are in commercial service. It recently announced a $3-billion U.S. program to modernize and expand its regional system.

The latest order guarantees delivery from 2010 to 2012 and Trenitalia will boast one of Europe's largest single-type fleets and benefit from the E464's lower operating and maintenance costs, and environmental performance.

Bombardier said the new order will strengthen its manufacturing presence in Italy. The loco bodies and propulsion systems will be supplied from specialized Bombardier plants in Poland and Spain for assembly at Vado Liguri in Italy.

Bombardier's diesel/electric TRAXX locos are operating in several European countries. More than 4,000 Bombardier locomotives have been sold worldwide.

Bombardier was a rail-car builder in Europe before buying Adtranz – the deal brought it locomotive technology, including propulsion and control systems, besides research and design facilities and manufacturing plants, analysts said.

## ■ In the NEWS

### PORTER FLYING AGAIN TO MONT TREMBLANT

Toronto's **Porter Airlines** is returning to the Mont Tremblant resort north of Montreal for the third winter skiing season. There will be eight flights weekly, up from five last year, and available Wednesday through Sunday starting Dec. 19 and running to April 4, 2010. Porter said flight time from Toronto City Centre Airport is just over one hour. Flights also will be available from Thunder Bay, Ont., Boston, Chicago and New York. Porter said in December there will be three round-trip flights, in January/February 2010 five weekly round-trip flights and in February to April 4 eight weekly round trips. "We expect the strongest demand since we started the service two years ago," said Porter CEO Robert Deluce in a statement. Porter is partnering with **Ultimate Ski Vacations** to provide all-inclusive packages, including lift tickets and accommodation, starting at $329 per person (double occupancy). Ski Magazine has rated **Intrawest's** Mont Tremblant as the leading ski resort in eastern North America for the 13th consecutive year.

### MINER HIRES GENIVAR FOR IMPACT STUDY

**Canada Lithium Corp.,** which is developing a lithium mining operation 60 kilometres north of Val d'Or, said yesterday it has hired Montreal-based engineering consultants **Genivar** to carry out the project's environmental impact study. The environmental work will be done in conjunction with a pre-feasibility study already begun by **BBA Inc.,** said Canada Lithium. Both have to be completed in time for construction to begin at the target date of 2011. A drilling program is under way at the former **Sullivan Mines** lithium property. Mine engineering starts in the first quarter next year and the final "bankable" feasibility study is due for completion late in 2010. The mine, assuming approval, will produce battery-grade lithium carbonate for sale to makers of new-generation batteries for all-electric cars and hybrid cars.

---

# BREAKING NEWS WEATHER SPORTS

Log on to **montrealgazette.com**

---

## CANADA LANDS COMPANY

**Cameron Charlebois**

Canada Lands Company CLC Limited (CLC) President and CEO Mark Laroche is pleased to announce the appointment of Cameron Charlebois as Vice-President, Real Estate, Québec.

In this role, Mr. Charlebois will be responsible for the company's real estate activities in the Province of Québec. Mr. Charlebois possesses more than 30 years of experience in architecture, real estate development, municipal management and governance in the voluntary sector. He holds degrees in architecture and management from McGill University, as well as a Doctor of Management degree from the University of Hertfordshire in the UK.

Canada Lands Company CLC Limited is a Crown corporation created by the Government of Canada with a mandate to ensure the commercially oriented, orderly disposition of selected surplus federal real properties with optimal financial and community values to Canadians, and the holding of certain properties. For more information, visit www.clc.ca.

www.clc.ca    Canada

---

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re      :    Chapter 11 Case No.
MOTORS LIQUIDATION COMPANY   :    **09-50026 (REG)**
f/k/a GENERAL MOTORS CORPORATION, et al.,   :
     Debtors.    :    (Jointly Administered)

### NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 | 38-0572515 | General Motors Corporation; GMC Truck Division; NAO Fleet Operations; GM Corporation; GM Corporation-GM Auction Department; National Car Rental; National Car Sales; Automotive Market Research |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 | 38-2577506 | Saturn, LLC; Saturn Corporation; Saturn Motor Car Corporation; GM Saturn Corporation; Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.; CKS of Harlem |

**PLEASE TAKE NOTICE THAT,** on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009**.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(b) Your claim has been paid in full;

(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided, however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;

(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g) You are a Debtor in these cases having a claim against another Debtor;

(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;

(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or

(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
P.O. Box 9386
Dublin, Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is **not** described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.

DATED: September 16, 2009     BY ORDER OF THE COURT
New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

### Certain Debt Instruments

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 370442EAG3, 370445EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442BE6, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

---

.swen eht dniheB

Complete daily election coverage in
The Gazette and online at www.montrealgazette.com

**The Gazette**   Words matter

# The Wall Street Journal

DOWJONES WSJ.COM ©2009 DOW JONES & CO., INC. REPRINTED WITH PERMISSION

## LITIGATION

# Two New York investors sue SEC over losses incurred in Madoff scandal

**BY KARA SCANNELL**

Two New York investors are suing the U.S. government, alleging the federal agency responsible for overseeing Bernard Madoff's business failed in its duty to protect investors.

The investors, who filed a lawsuit in federal court in Manhattan, allege the Securities and Exchange Commission was negligent for failing to detect the fraud by Mr. Madoff despite receiving many tips that something was amiss.

The investors, Phyllis Molchatsky, a retired office worker, and Steven Schneider, a physician, invested with Mr. Madoff years ago. After the fraud was discovered in December, 2008, Ms. Molchatsky lost $1.7-million (U.S.) from her retirement savings, while Dr. Schneider lost $750,000, according to the lawsuit.

"Bernard Madoff is obviously the chief culprit in the scheme that imploded so shockingly in December, 2008. However, the SEC must be held accountable and responsible for its own negligent actions and inactions that directly and proximately caused the loss of billions of investor funds," the lawsuit states.

SEC spokesman John Heine said, "Based on our initial understanding of the matter, we believe there is no merit to the complaint."

The lawsuit follows an administrative claim Ms. Molchatsky filed against the SEC in December. The SEC didn't negotiate to settle the administrative claim, opening the door for a lawsuit.

The doctrine of sovereign immunity limits the kind of cases in which a U.S. citizen can sue the government for damages. In an attempt to get around those limits, the lawsuit cites a report by the SEC's inspector general, who found the agency's staff didn't follow up on tips and didn't verify basic data on trades that Mr. Madoff purportedly made.

The report found no evidence that the SEC staff had been influenced by Mr. Madoff or any of his family members.

SEC chairman Mary Schapiro has said she regrets the failure to detect the fraud and has taken steps to address problems, including rules aimed at tightening regulatory holes that Mr. Madoff used.

The lawsuit accuses the SEC of failing to follow its own procedures and says the agency "cannot evade accountability with a shield of immunity that is designed to be reserved for policy decisions."

## CONGLOMERATES



GE expects to lose up to $2-billion from 2008 to 2010 on its subprime U.K. mortgages. BLOOMBERG NEWS

# GE's bottom line hit by U.K. subprime losses

### 15.8% of $23-billion mortgage portfolio 90 days behind payment

**BY PAUL GLADER**

One of the biggest hits to **General Electric Co.**'s earnings tomorrow will likely be its ongoing losses on subprime British mortgages. But unlike its quick exit from U.S. mortgages, GE plans to hold steady in Britain in the hope of capitalizing on a projected housing shortage.

The looming losses on British mortgages highlight ongoing weakness in GE's finance unit, known as GE Capital, which investors will be watching tomorrow when GE reports third-quarter financial results.

Losses and writedowns at GE Capital have hobbled the conglomerate in the past two years.

Analyst Scott Davis of Morgan Stanley expects quarterly profit at GE Capital to fall 94 per cent from a year ago, contributing to a projected 57-per-cent decline in GE earnings.

GE said it expects to lose as much as $2-billion (U.S.) between 2008 and 2010 on subprime U.K. mortgages.

As of July 28, 15.8 per cent of its $23-billion British mortgage portfolio value was 90 days behind payment, the company said.

That's more than six times the 2.4-per-cent delinquency rate on all U.K. mortgages, according to the Council of Mortgage Lenders.

But it is lower than other British subprime lenders.

GE's industrial businesses, meanwhile, which make such things as gas turbines, wind turbines and aircraft engines, have kept the frim earning money despite major losses at GE Capital, which in addition to mortgage losses has taken hits on its private-label credit cards and $80-billion commercial real estate portfolio.

GE's stock price, dragged down by the finance unit, has rebounded from a low of $6 in March to trade at $16.84 at yesterday's close, near the price it started the year.

The company is also expected to be one of the biggest recipients of money from the U.S. government's stimulus plan, aiming for as much as $100-billion from stimulus spending in the next three years for big-ticket items such as building a "smart" power grid, health-care technology and renewable energy.

GE Capital's consumer finance unit, GE Money, acquired a series of British lenders beginning in 2001. The U.K. became GE's largest market for mortgage lending, accounting for roughly half its $60-billion global portfolio by 2008.

The British operation dwarfed GE's move into U.S. mortgages, where it bought subprime lender WMC Mortgage in 2004, before selling it in 2007 after about $1-billion in losses. GE says it has a more conservative model in the U.K., where regulation is stricter on brokers and lenders.

Britain's property boom matched that of the U.S. Mortgage debt as a per cent of gross domestic product in the U.K. topped 80 per cent in 2007, similar to the U.S., and was up from 40 per cent in 1987.

In 2007, 45 per cent of British mortgage borrowers didn't have to verify their income, according to the Financial Services Authority.

The subsequent 25-per-cent plunge in British home prices effectively wiped out lenders such as Northern Rock PLC, now controlled by the U.K. government; HBOS PLC, now part of Lloyds Banking Group PLC; and Abbey National PLC, now part of Santander Group.

The companies GE Money acquired were aggressive lenders, specializing in loans to borrowers with patchy credit histories, loans where borrowers didn't have to verify income and mortgages for rental property, according to several mortgage experts in the U.K. GE says it improved the companies' lending practices.

"We compare very favourably" to other subprime lenders, says GE spokesman Russell Wilkerson.

Fitch Ratings says 25 per cent of mortgages to U.K. borrowers with impaired credit histories were more than 90 days delinquent in June, up from 13 per cent in December.

GE says it employs sophisticated risk-management practices and was among the first British lenders to consider borrowers' previous debts, as well as income, in making loans.

Mr. Wilkerson says GE limited its self-certification loans to self-employed borrowers, and subjected those to some reviews.

Earlier this year, GE ramped up foreclosures to get delinquent mortgages off its books.

Nonetheless, Mr. Wilkerson says GE is "committed to maintaining a presence in the U.K.," even as competitors such as Citigroup Inc. and several British lenders have scaled back new business.

"We believe the specialist mortgage market will recover, and this will be helped by the housing shortage in the U.K.," he says.

Analysts are mixed on the outlook for the British market.

"Home prices appear to have stabilized … and [U.K.] repossessions are already close to peaking," wrote JPMorgan analyst Bruce Kasman in a recent report.

But analysts at Fitch Ratings say "rising unemployment in Europe has not yet worked through" to delinquencies and foreclosures, particularly for subprime and nonconforming portfolios.

GE issued $26-million in U.K. mortgages in the first half of this year, compared with $5-billion in all of 2008. Worldwide, GE said it plans to originate $1-billion or less in mortgages this year, down from $13.8-billion in 2008 and $25.4-billion in 2007.

## ANIMAL HEALTH MARKET

# FTC sees no competition concerns, gives Pfizer green light to buy Wyeth

**BY BRENT KENDALL** WASHINGTON

The Federal Trade Commission yesterday cleared Pfizer Inc.'s $68-billion cash-and-stock deal to acquire rival Wyeth, but required the companies to divest assets in the animal-health market as a condition of government approval.

With the antitrust clearance, Pfizer said it expects to close the transaction today.

The FTC said the divestitures will protect competition in the market for animal vaccines and other animal-health products.

The commission found no competitive concerns about the merger's effect on human-health products, saying the deal likely wouldn't harm consumers in any prescription-drug market.

The FTC said the two companies' product portfolios are highly complementary.

"Although the commission, based on the evidence gathered, determined that this transaction did not raise anti-competitive concerns in the markets for human pharmaceuticals, the commission remains dedicated to ensuring that pharmaceutical markets are competitive," the commission said in a written statement.

The Pfizer-Wyeth deal, disclosed in January, received approval from the European Commission and from Wyeth stockholders in July.

"We are pleased to have received all of the requisite regulatory approvals for our combination with Wyeth," said Jeffrey Kindler, Pfizer's chief executive.

"We now look forward to combining the two companies so that we can achieve meaningful results for patients, customers and the communities we serve, as well as for our shareholders," he said.

Pfizer has said it expects a 15-per-cent reduction in the combined entity's work force.

A spokesman for Wyeth, of Madison, N.J., said the company was making preparations for the deal's closing.

As part of its settlement with the commission, Pfizer has agreed to sell half of Wyeth's Fort Dodge U.S. animal-health business to Boehringer Ingelheim Vetmedica Inc. within 10 days of the acquisition.

Pfizer and Wyeth set the animal-health agreement with Boehringer Ingelheim last month.

Assets to be sold include vaccines for cattle, dogs and cats.

## LEGALS

**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK**

In re: MOTORS LIQUIDATION COMPANY f/k/a GENERAL MOTORS CORPORATION, et al., Debtors.

Chapter 11 Case No. 09-50026 (REG) (Jointly Administered)

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 | 38-0572515 | General Motors Corporation; GMC Truck Division; NAO Fleet Operations; GM Corporation; GM Corporation-GM Auction Department; National Car Rental; National Car Sales; Automotive Market Research |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 | 38-2577506 | Saturn, LLC; Saturn Corporation; Saturn Motor Car Corporation; GM Saturn Corporation; Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.; CKS of Harlem |

**PLEASE TAKE NOTICE THAT**, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "Court"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "Debtors") entered an order (the "Bar Date Order") establishing (i) November 30, 2009, at 5:00 p.m. (Eastern Time) as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("Proof of Claim") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below at (a "503(b)(9) Claim"), against any of the Debtors (the "General Bar Date"); and (ii) November 30, 2009, at 5:00 p.m. (Eastern Time) as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "Governmental Bar Date" and, together with the General Bar Date, the "Bar Dates").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to June 1, 2009.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:
(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;
(b) Your claim has been paid in full;
(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided, however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;
(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however**, **503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;
(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;
(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);
(g) You are a Debtor in these cases having a claim against another Debtor;
(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;
(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or
(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "Debt Claim") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "Debt Instruments") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

| If by overnight courier or hand delivery to: | If by first-class mail, to: |
|---|---|
| The Garden City Group, Inc. Attn: Motors Liquidation Company Claims Processing 5151 Blazer Parkway, Suite A Dublin, Ohio 43017 | The Garden City Group, Inc. Attn: Motors Liquidation Company Claims Processing P.O. Box 9386 Dublin, Ohio 43017-4286 |

**Or** if by hand delivery to: United States Bankruptcy Court, SDNY One Bowling Green, Room 534 New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred — that is, forbidden — from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company, P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered by this Notice, such as whether the holder should file a Proof of Claim.

DATED: September 16, 2009
New York, New York

BY ORDER OF THE COURT
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442B16, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 677599ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

## TAX EVASION

# Thousands of U.S. citizens reveal overseas assets to avoid prosecution

**Some 7,500 wealthy Americans** turned over information about hidden overseas assets, including some valued at more than US$100-million, ahead of a tax amnesty program's deadline today, the top U.S. tax collector said. Doug Shulman, commissioner of the Internal Revenue Service, said his agency would expand its crackdown on offshore tax evasion and will open new criminal investigation offices in Beijing, Panama and Sydney, Australia. "You add all of this up and it means increased risk for anyone still hiding assets offshore," Mr. Shulman said yesterday. Under the amnesty program that began in September, tax cheats can declare offshore accounts and income, pay reduced fines and, in general, get immunity from criminal prosecution. The program turned up undeclared offshore accounts ranging from US$10,000 to more than US$100-million, Mr. Shulman said. *Reuters*


DOW'S DECADE-LONG DANCE WITH 10,000
Oct. 14 close: 10,015.86, +144.80
SOURCE: BLOOMBERG NEWS — JONATHON RIVAIT / NATIONAL POST


BRENDAN MCDERMID / REUTERS
Trader Theodore Weisberg wears a hat from March 1999, the first time the Dow Jones industrial average rose above 10,000, at the New York Stock Exchange yesterday.

# The punch bowl's out until it's taken away

### FOLK
Continued from Page FP1

Despite all the good news, it is hard not to feel jaded about yesterday's event because it represents the fourth time that the Dow has breached 10,000 with an air of permanence to the move. The sad truth is that in the 10 years before the Dow first crossed 10,000 in March 1999, the index had more than quadrupled. In the 10½ years since, it has returned nothing.

Much like during past rallies, the Dow's latest 10,000-point moment is proof that low interest rates will lift equity markets while risking inflating an asset bubble. The U.S. Federal Reserve has cut interest rates to less than 0.25% and the U.S. federal budget deficit is estimated at more than 11% of gross domestic product this year and 9.6% in 2010.

It's a case of history repeating itself.

The first time that the almighty Dow went through 10,000 the technology bubble was nearing its peak. Like so many other financial manias, irrational expectations by investors were fostered by real technological innovation, and the market eventually succumbed when the Fed eventually hiked rates.

Again, in December 2003, amid an economic recovery that was vigorously taking hold, the Dow burst through the 10,000 barrier for what may have seemed like the last time. A look back at the news offers an eerie parallel to the current market rally. Investors responded favourably to minutes of the Federal Reserve Open Market Committee (FOMC) that stated Fed members would wait for "definitive signs" of economic recovery before they raised interest rates.

This decision to put off monetary tightening played a major part in inflating the housing bubble and creating the current mess we are in. It is also very similar to the current justification by investors for the current Dow 10,000 redux.

Investors are buying the market because they believe that the FOMC will once again sit on its hands and wait for definitive signs that economic recovery is taking hold. Indeed, unless the current economic recovery is stronger than expected, interest rates are likely to stay put until well into 2010, and the market rally could continue.

The early stage of an economic recovery enabled by low interest rates is typically a good time to get invested in the market, and the current policy mix is a cocktail that investors are willing to drink.

William McChesney Martin, former chairman of the Federal Reserve, once said that his job was to take away the punch bowl just as the party gets going. The trick for investors will be to take leave of the party before the Fed cuts them off.

*Financial Post*

# NATIONAL REPORT

### SHELL ENDS MAINTENANCE AT SCOTFORD REFINERY

**Royal Dutch Shell PLC** is starting units at its Scotford refinery in Alberta following a scheduled maintenance turnaround, according to a message on a community hotline. The 100,000-barrel-a-day plant, about 40 kilometres northeast of Edmonton, may have intermittent flaring over the next 48 hours, the company said. The Scotford refinery processes so-called synthetic crude oil produced by Shell's upgrader. The upgrader uses hydrogen-addition technology to break bitumen, or high-viscosity oil sands, into light, sweet synthetic crude. *Bloomberg News*

### NEW-VEHICLE SALES SLIDE LOWER IN AUGUST

New-vehicle sales fell in August as consumers pulled back on purchases of passenger cars, Statistics Canada said yesterday. Sales declined 0.3% to 126,401 units during the month, the agency said, after rising by a revised 5.2% in July. Most economists had expected sales to be flat in August. "Sales of new motor vehicles have generally been rising since the beginning of 2009, following a sharp decline at the end of 2008," Statscan said. "On a year-over-year basis, sales in August were 6.6% lower than in August 2008." Declines occurred in six provinces, with the biggest drop in Saskatchewan, a 5.7% slide to 3,710 units. The largest increase was realized in New Brunswick, a 3.8% advance to 3,068 units. Passenger-car sales totalled 62,425 units in August, a 1% decline, while sales of North American-built cars fell 9.3% to 33,853 units. Overseas-built passenger cars rose 11% to 28,572, offsetting declines in the previous three months. Truck sales, which have exceeded passenger-car sales since May, rose 0.4% to 63,976 units, including minivans, sport-utility vehicles, light and heavy trucks, vans and buses. *Financial Post*



### BOMBARDIER WINS US$383M ITALIAN TRAIN DEAL

**Bombardier Inc.** won a contract yesterday to supply Italy's **Trenitalia SpA** with an additional 100 electric locomotives in a deal valued at US$383-million. The order adds to the 638 of the so-called E464 electric locomotives that the Italian railway has already ordered, 480 of which have already been delivered. "We are really proud that our locomotives are the first acquisition decided on by Trenitalia under the recently announced €2-billion (US$2.99-billion) investment plan to reinforce its regional passenger fleet," said Roberto Tazzioli, Bombardier's representative in the country. The locomotives will be manufactured at Bombardier's plant in Vado Ligure, Italy, while the car bodies and propulsion systems will be built in Poland and Spain. The company said it expects the locomotives to delivered between 2010 and 2010. *Scott Deveau, Financial Post*

### $779M COMMITTED TO CARBON-CAPTURE PROJECT

The Alberta and federal governments have announced they will spend $779-million over 15 years to help kick-start a carbon-dioxide capture project west of Edmonton — the kind of effort that's been offered as the answer to international concerns over emissions from the province's energy sector. The funding was announced for **TransAlta Corp.**'s project for its Keephills 3 coal-fired electricity generation plant near Wabamun Lake. Called Project Pioneer, it is intended to capture and store up to one million tonnes of $CO_2$ a year. Last week, the two governments laid down their first big bet in the fight to limit $CO_2$ by promising Shell Energy a total of $865-million for its Quest project near Fort Saskatchewan. The Pioneer Project will utilize leading-edge technology to capture $CO_2$. The $CO_2$ will be used for enhanced oil recovery in nearby conventional fields, or stored almost three kilometres underground. *Financial Post*

---

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

In re:     : Chapter 11 Case No.
MOTORS LIQUIDATION COMPANY     : 09-50026 (REG)
f/k/a GENERAL MOTORS CORPORATION, et al.,     :
Debtors.     : (Jointly Administered)

**NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE)**

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(b)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 | 38-0572515 | General Motors Corporation GMC Truck Division NAO Fleet Operations GM Corporation GM Corporation-GM Auction Department National Car Rental National Car Sales Automotive Market Research |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 | 38-2577506 | Saturn, LLC Saturn Corporation Saturn Motor Car Corporation GM Saturn Corporation Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc. CKS of Harlem |

PLEASE TAKE NOTICE THAT, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com. In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

**1. WHO MUST FILE A PROOF OF CLAIM**

You MUST file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below. Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009**.

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means: (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured. Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

**2. WHO NEED NOT FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:
(a) Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed", "contingent", or "unliquidated", (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;
(b) Your claim has been paid in full;
(c) You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security (an "**interest**"); **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;
(d) You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided**, **however**, that **503(b)(9) Claims are subject to the General Bar Date as provided above**. Section 503(b)(9) provides in part: "... there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;
(e) You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;
(f) You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);
(g) You are a Debtor in these cases having a claim against another Debtor;
(h) You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;
(i) You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or
(j) You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided, however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies. Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**3. EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is thirty days following the entry of the order approving such rejection or you will be forever barred from doing so. Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009, pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4. WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

If by first-class mail, to:
The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing
P.O. Box 9386
Dublin, Ohio 43017-4286

Or if by hand delivery to:
United States Bankruptcy Court, SDNY
One Bowling Green, Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date. Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5. WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to Official Bankruptcy Form No. 10 ("**Proof of Claim Form**"); (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE. A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED. IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6. CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.

**7. THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**"). If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed", "contingent", or "unliquidated", you need not file a Proof of Claim. Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov). Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004. Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc., Attn: Motors Liquidation Company,
P.O. Box 9386, Dublin, Ohio 43017-4286, 1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.

DATED: September 16, 2009     BY ORDER OF THE COURT
New York, New York
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Attorneys for Debtors and Debtors in Possession

**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 370445EAG3, 370445EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442B16, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 349272AT1 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |
| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063 |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

