Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 09-50026-reg

5  - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  MOTORS LIQUIDATION COMPANY, et al.,

9  f/k/a General Motors Corporation, et al.,

10

11         Debtors.

12

13  - - - - - - - - - - - - - - - - - - - - -x

14

15              U.S. Bankruptcy Court

16              One Bowling Green

17              New York, New York

18

19              July 28, 2011

20              12:03 PM

21

22  B E F O R E:

23  HON. ROBERT E. GERBER

24  U.S. BANKRUPTCY JUDGE

25

Page 2

2    Telephonic Hearing re: Motion to File Proof of Claim After
3    Claims Bar Date by Judd Wiesjahn and Annalisa Sand

24   Transcribed by: Hana Copperman

1

2  A P P E A R A N C E S :

3  WEIL GOTSHAL & MANGES LLP

4      Attorneys for the Debtors

5      767 Fifth Avenue

6      New York, NY 10153

7

8  BY:   JOSEPH H. SMOLINSKY, ESQ. (TELEPHONICALLY)

9

10

11 WEIL GOTSHAL & MANGES LLP

12     Attorneys for the Debtors

13     1300 Eye Street NW

14     Suite 900

15     Washington, DC 2005

16

17 BY:   BRIANNA N. BENFIELD, ESQ. (TELEPHONICALLY)

18

19

20 THE LAW OFFICES OF GILBERT R. GEILIM

21     Attorneys for Annalisa Sand and Judd Wiesjahn

22     14560 Friar Street

23     Van Nuys, CA 91411

24

25 BY:   GILBERT R. GEILIM, ESQ. (TELEPHONICALLY)

1
2  THE GARDEN CITY GROUP
3       1985 Marcus Avenue
4       Lake Success, NY 11042
5
6  BY:    ANGELA FERRANTE (TELEPHONICALLY)
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

1                P R O C E E D I N G S
2           THE COURT:  Hello.  This is Robert Gerber.  We have an
3    on the record call in Motors Liquidation.  Who do I have on the
4    phone?
5           MR. GEILIM:  Yes.  My name is Gilbert Geilim.  I'm an
6    attorney in California, and I am appearing for Mr. Martin
7    Stanley.
8           THE COURT:  I'm sorry.  I couldn't hear your name,
9    sir.
10          MR. GEILIM:  Gilbert.  Last name Geilim.
11          THE COURT:  Your last name again, please?
12          MR. GEILIM:  G-E-I-L-I-M.
13          THE COURT:  Geilim?
14          MR. GEILIM:  Right.
15          THE COURT:  All right, Mr. Geilim.
16          MR. SMOLINSKY:  Good afternoon, Your Honor.  Joe
17   Smolinsky from Weil, Gotshal & Manges for the debtors.
18          THE COURT:  All right, Mr. Smolinsky.  Anyone else?
19          MS. FERRANTE:  Angela Ferrante from The Garden City
20   Group.
21          THE COURT:  All right.  Thank you.
22          MS. BENFIELD:  And this is Brianna Benfield, also from
23   Weil, Gotshal & Manges.
24          THE COURT:  Okay.  Ladies and gentlemen, I found all
25   three witnesses credible, and though the matter is close I'm

09-50026-mg    Doc 10666    Filed 07/29/11    Entered 08/09/11 10:07:47    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 6 of 15

Page 6

1  finding as a fact that Mr. Stanley did not get actual notice of
2  the bar date in time to respond to it in a timely manner.
3              I further find as a fact, or as a mixed question of
4  fact and law, that his motion to file the late claim was not
5  unreasonably sluggish after he learned of the need to do so,
6  and as a mixed question of fact and law I determine that Motors
7  Liquidation's most legitimate concern and defense, that of
8  opening the floodgates to the many other late claims, shouldn't
9  be that big a concern, because the facts here are, as Mr.
10 Stanley argues, a perfect storm reflecting a confluence of
11 facts that are unlikely to be duplicated again in my judicial
12 lifetime.
13             The starting point for my findings is my personally
14 eyeballing Mr. Stanley and Mr. Lamb and gauging their demeanor.
15 Their testimony was credible.  I don't believe that either
16 timely saw the bar date notice.  Each spoke directly and
17 without hesitation on the matters relating to receipt.  Mr.
18 Lamb seemed to be choosing his words very carefully on whether
19 there had been other instances of late filing, though not on
20 matters involving a bar date or statute of limitations, but
21 this was not the issue, and I'm inclined to think Mr. Lamb did
22 so to take pains to be truthful on a matter that might
23 potentially be embarrassing but wasn't really the point.
24             While I've considered the possibility that one or more
25 bar date packages came into their office and didn't get opened

Page 7

```
 1   or read I think the likelihood of that is diminished as a
 2   consequence of the small size of their office and the testimony
 3   we heard about reviewing the incoming mail together.
 4           Then, of course, I must consider the ways by which the
 5   mail was addressed.  Motors Liquidation points out,
 6   appropriately, that about forty mailings were addressed to some
 7   variance of 137 Bay Street, Unit #2, Santa Monica, California,
 8   and only three were returned as undeliverable.  But we also
 9   know that three notices of the bar date addressed to 137 Bay
10   Street, Unit #2 but with Wiesjahn, Rachel and Sand, Annalisa,
11   Wiesjahn, Rachel and Wiesjahn, Judd, and Wiesjahn, Rachel
12   appearing twice were returned as undeliverable.  This suggests
13   that sending it to 137 Bay Street, Unit #2 wasn't enough to
14   necessarily ensure delivery to that address.  We also know that
15   three more mailings addressed identically were neither returned
16   as undeliverable nor, according to the testimony of Mr. Stanley
17   and Mr. Lamb, received.
18           That cuts two ways.  While that could, of course, be
19   argued as undercutting their credibility it also calls into
20   question the consistency of the U.S. Postal Service in sending
21   back mail that may not have been delivered.  If three mailings
22   addressed to Wiesjahn, Rachel and Sand, Annalisa, Wiesjahn,
23   Rachel and Wiesjahn, Judd, and Wiesjahn, Rachel were
24   undeliverable why weren't others identically addressed equally
25   undeliverable?  Those facts undercut the reliability that I
```

09-50026-mg    Doc 10666    Filed 07/29/11    Entered 08/09/11 10:07:47    Main Document
Pg 8 of 15
MOTORS LIQUIDATION COMPANY, ET AL.

Page 8

1   might otherwise have in drawing inferences when mail isn't
2   returned.
3           The odds of a screwup were magnified by the
4   transposition of the name Martin Stanley to Stanley Martin,
5   followed by "Law Offices of", putting Mr. Stanley's name only
6   as the third name in the list.  The insertion into the mailing
7   labels of the names of people not located at 137 Bay Street,
8   Unit #2 without also saying "care of" and the fact that the
9   mail was supposed to go into one of sixteen mailboxes all next
10  to each other, as in an apartment building, as compared and
11  contrasted, for instance, to dropping off mail at physically
12  distinct buildings or even physically distinct suites.  In that
13  connection I assume that it's not uncommon for mailing labels
14  to show last names first and to use expressions like "Law
15  Office of" after a name and even, possibly, after a transposed
16  name, even though I would think that best practices would call
17  for reordering the names shown on address labels to correspond
18  to more typical usage.  And I'd be surprised in this day and
19  age if computers are incapable of doing so.  And I'd also
20  assume that many, if not most, employees of the U.S. Post
21  Office would read the entire label, figure out what happened
22  and reason what the appropriate addressees should be and then
23  get the mail delivered to the right address.
24          But the combination of all of these factors here
25  together causes me to be uncomfortable with the presumption of

```
 1  delivery, assuming that Motors Liquidation could otherwise rely
 2  on it, and when balanced against testimony that I find to be
 3  truthful that the mailings weren't received the evidence I
 4  heard from the Motors Liquidation side is insufficient to trump
 5  the testimony to the contrary.
 6           In light of that I don't need to decide whether Motors
 7  Liquidation is entitled to the presumption of delivery upon
 8  mailing in the first place.  I found Ms. Ferrante's testimony
 9  to be fully credible as well, and, to the extent it matters,
10  I'll add that I found her to be very competent and
11  knowledgeable as to her business and the employees she
12  supervised.  But with that said she did not have, by her own
13  admission, knowledge of the specifics of over a million
14  mailings, and she had to rely on statements by subordinates and
15  entries in her computer system that were hearsay or that could
16  strongly be argued to be such.
17           Best practices would suggest bringing in the person
18  who actually did the mailing whenever testimony is required,
19  laying a foundation for reliance on information in computer
20  databases, using Federal Rules of Evidence 8036 and 902(11) to
21  help do so, introducing more robust testimony as to patterns
22  and practices and crafting affidavits of service when they use
23  the words "caused to be mailed," to be drafted in a less
24  ambiguous way with respect to whether the person who caused the
25  mailing to be mailed actually was the one who dropped it off in
```

09-50026-mg    Doc 10666    Filed 07/29/11    Entered 08/09/11 10:07:47    Main Document
Pg 10 of 15
MOTORS LIQUIDATION COMPANY, ET AL.

Page 10

1   the mailbox or in the post office.

2           I also think that best practices would call for at

3   least some review of the quality of the address data that's

4   transmitted to claims agents or that the claims agents let go

5   out the door, because I've seen, in this case and others, where

6   cryptic abbreviations or a computer's presentation of

7   information in the way they arrange it or truncate it

8   materially increased the risks that mail won't properly arrive.

9           But there's a big difference, of course, between best

10  practices and that which is required to meet minimum standards

11  of persuasiveness.  And here I don't need to make a finding as

12  to whether mailing of the bar date notice was satisfactorily

13  proven, as my problem isn't so much with respect to the fact of

14  mailing as it is with my lack of confidence under the

15  particular facts presented to me here that bar date notices

16  that were, in fact, mailed actually found their way into the

17  Law Offices of Martin Stanley mailbox.  The presumption of

18  delivery is still rebuttable in those rare cases like this one

19  where denial coupled with extrinsic facts is so strong in

20  rebutting the presumption.

21          To repeat, and for the avoidance of doubt, my concern

22  arises because of my assumption, for the sake of analysis, that

23  the mail did go out but my many doubts as to whether the

24  mailing, once it went out, found its way to the recipient.

25          Finally, I agree with Old GM that floodgate concerns

09-50026-mg    Doc 10666    Filed 07/29/11    Entered 08/09/11 10:07:47    Main Document
Pg 11 of 15

MOTORS LIQUIDATION COMPANY, ET AL.

Page 11

1  are a very major concern in Chapter 11 cases and easily satisfy

2  the prejudice requirement when estate representatives are

3  opposing late-filed proofs of claim.  See, for example, Judge

4  Gonzalez's decision in In re Creditors Recovery Corp., 370 B.R.

5  90, 109 (Bankr. S.D.N.Y. 2007). I frequently noted this in

6  denying leave to file late claims, though in oral decisions

7  that haven't found their way into print or into electronic

8  publication.  But here the floodgate concerns aren't very

9  strong as the facts here do, indeed, give rise to the "perfect

10 storm".  It will be difficult, if not impossible, for other

11 claimants to put together a similar factual picture, or,

12 indeed, anything close.  Floodgate concerns just aren't a

13 material factor here.

14         In my view the creditors' reasons for its delay and

15 the prejudice to the debtor, the two factors I just discussed,

16 are the most important of the Pioneer factors.  The third

17 factor, the time between learning of the bar date and the

18 filing of the motion, which here is a few months, is,

19 essentially, a nonfactor, as it's been satisfactorily explained

20 and is not particularly long.

21         The last two Pioneer factors, based on assumptions I

22 can and do make, are now insufficient to trump the conclusions

23 that would result from the first two, though if the facts

24 relevant to them were otherwise they could.  There here will be

25 no material delay in judicial proceedings, as the claims will

VERITEXT REPORTING COMPANY

212-267-6868          www.veritext.com          516-608-2400

```
 1  be going to ADR and they're not likely to have a material
 2  effect on the distributions to the other creditors, especially
 3  given the facts underlying the merits of the claim, which
 4  include one or more drunken drivers whose conduct may well be
 5  found to have had much more of an effect on the underlying
 6  accident than Old GM's manufacture of the vehicle.  And if, as
 7  I expect, Mr. Stanley participates as he should in the ADR I'll
 8  have no reason to doubt the last factor, whether the creditor
 9  has acted in good faith.  Of course, given how close this
10  decision is, if either of the latter two assumptions upon which
11  I've here ruled turns out not to be true Old GM has leave to
12  file a motion for reconsideration of this determination.
13           Accordingly, after considering the evidence and the
14  Pioneer factors, I find the requisite excusable neglect and
15  will permit the late filing of the proofs of claim.  Mr.
16  Stanley and his clients well then go into the ADR procedures
17  that were previously set up for other products liability
18  claimants in this case.
19           If they do not participate, or if they do not
20  participate in good faith that will call into question the
21  premises upon which I issued this ruling and Old GM will be
22  permitted to file a motion to reconsider.
23           You're to try to agree upon a form of order
24  implementing this discernmination (sic) without prejudice to
25  either side's right to appeal.  If you cannot agree upon a
```

09-50026-mg    Doc 10666    Filed 07/29/11    Entered 08/09/11 10:07:47    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 13 of 15

Page 13

1  mutually satisfactory form of order that faithfully implements
2  this ruling, any part of it, including the leave to reconsider
3  it, either side may settle an order on no less than two
4  business days notice by hand, fax or e-mail, or an extra two
5  weeks if traditional U.S. mail is to be used.
6          We're adjourned.
7       (Whereupon these proceedings were concluded at 12:22 PM)

Page 14

```
 1
 2                         I N D E X
 3
 4                         RULINGS
 5                                              Page      Line
 6   Granting of Motion to File Proof of Claim    12        15
 7   After Claims Bar Date by Judd Wiesjahn and
 8   Annalisa Sand
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 15

C E R T I F I C A T I O N

I, Hana Copperman, certify that the foregoing transcript is a true and accurate record of the proceedings.

*Hana Copperman*

Digitally signed by Hana Copperman
DN: cn=Hana Copperman, o, ou, email=digital1@veritext.com, c=US
Date: 2011.07.29 10:49:33 -04'00'

HANA COPPERMAN

AAERT Certified Electronic Transcriber CET**D 487

Veritext

200 Old Country Road

Suite 580

Mineola, NY 11501

Date:  July 29, 2011