Page 1

1

2  UNITED STATES BANKRUPTCY COURT

3  SOUTHERN DISTRICT OF NEW YORK

4  Case No. 09-50026(REG)

5  - - - - - - - - - - - - - - - - - - - - - -x

6  In the Matter of:

7

8  MOTORS LIQUIDATION COMPANY, et al.,

9  f/k/a GENERAL MOTORS CORP., et al.

10          Debtors.

11

12  - - - - - - - - - - - - - - - - - - - - - -x

13

14              U.S. Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              July 27, 2011

19              9:54 AM

20

21  B E F O R E:

22  HON. ROBERT E. GERBER

23  U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    HEARING re Trustee's report on final fees.

3

4    HEARING re Debtors' 147th Omnibus objection to claims (claims

5    for equity interests).

6

7    HEARING re Debtors' 148th Omnibus objection to claims (claims

8    for equity interests).

9

10    HEARING re Debtors' 151st Omnibus objection to claims (claims

11    for equity interests).

12

13    HEARING re Debtors' 152nd Omnibus objection to claims (claims

14    for equity interests).

15

16    HEARING re Debtors' 154th Omnibus objection to claims (claims

17    for equity interests).

18

19    HEARING re Debtors' 155th Omnibus objection to claims (claims

20    for equity interests).

21

22    HEARING re Debtors' 169th Omnibus objection to claims (Welfare

23    benefits claims of retired and former salaried and executive

24    employees).

25

Page 3

1      HEARING re Debtors' 176th Omnibus objection to claims (Welfare

2      benefits claims of retired and former salaried and executive

3      employees).

4

5      HEARING re Debtors' 177th Omnibus objection to claims (Welfare

6      benefits claims of retired and former salaried and executive

7      employees).

8

9      HEARING re Debtors' 178th Omnibus objection to claims (Welfare

10     benefits claims of retired and former salaried and executive

11     employees).

12

13     HEARING re Debtors' 187th Omnibus objection to claims

14     (qualified defined benefits pension benefits claims of former

15     salaried and hourly employees).

16

17     HEARING re Debtors' 210th Omnibus objection to claims (claims

18     for equity interests).

19

20     HEARING re Debtors' 211th Omnibus objection to claims (tax

21     claims assumed by General Motors LLC).

22

23     HEARING re Debtors' 214th Omnibus objection to claims

24     (Administrative proofs of claim for equity interests).

25     Transcribed by:  Penina Wolicki

Page 4

1

2   A P P E A R A N C E S :

3   WEIL, GOTSHAL & MANGES, LLP

4         Attorneys for Debtors

5         767 Fifth Avenue

6         New York, NY 10153

7

8   BY:   JOSEPH H. SMOLINSKY, ESQ.

9

10

11   STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, P.C.

12         Attorneys for Dean M. Trafelet

13         2323 Bryan Street

14         Suite 2200

15         Dallas, TX 75201

16

17   BY:   HEATHER PANKO, ESQ. (TELEPHONICALLY)

18

19   GODFREY & KAHN, S.C.

20         Examiner

21         One East Main Street

22         Suite 500

23         Madison, WI 53701

24

25   BY:   BRADY C. WILLIAMSON, ESQ. (TELEPHONICALLY)

Page 5

1

2    ALSO PRESENT:

3         HUGO ANDERSON, Pro Se (TELEPHONICALLY)

4         CLAUDETTE ELLISON, Pro Se

5         JOHN A. MALLES, Pro Se (TELEPHONICALLY)

6         STELLA MALLES, Pro Se (TELEPHONICALLY)

7         LARRY MASSEY, Pro Se (TELEPHONICALLY)

8         DAVID A. RADKE, Pro Se (TELEPHONICALLY)

9         DALE R. SPIRNAK, Pro Se (TELEPHONICALLY)

10         SARAH THOMPSON, Barclays Capital, Inc. (TELEPHONICALLY)

11         CAROLL WATERS, Pro Se (TELEPHONICALLY)

12         ALAN C. ZAK, Pro Se (TELEPHONICALLY)

13

14

15

16

17

18

19

20

21

22

23

24

25

1                P R O C E E D I N G S

2          THE CLERK:  All rise.

3          THE COURT:  Good morning.  Have seats.

4          Okay, General Motors Corporation, Motors Liquidation

5     Company.  Mr. Smolinsky?

6          UNIDENTIFIED SPEAKER:  Hello?  Hello?

7          THE COURT:  I need quiet on the telephone, gentlemen.

8          UNIDENTIFIED SPEAKER:  Hello?

9          UNIDENTIFIED SPEAKER:  Yes, this is --

10         THE COURT:  Gentlemen, this is the judge.  Did I make

11    myself clear?  I need quiet on the telephone.

12         Go ahead, Mr. Smolinsky.

13         MR. SMOLINSKY:  Good morning, Your Honor.  Joseph

14    Smolinsky of Weil, Gotshal & Manges for the debtors and post

15    effective date debtors as well as the Motors Liquidation

16    Company GUC trust.

17         The matters on this morning's calendar fall into two

18    buckets.  All of them are claims objections.  The first

19    category are claims asserted by equity holders.  And the second

20    category are claims asserted by employees for lost welfare

21    benefit claims.

22         Your Honor, we've made every effort to advise

23    claimants of Your Honor's former rulings on these matters,

24    including at the June 22nd hearing where these similar matters

25    were taken up.  What I'd like to do is just go through the

09-50026-mg   Doc 10667   Filed 08/03/11   Entered 08/09/11 10:21:53   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 7 of 54

Page 7

1   agenda and give everyone an opportunity to be heard with

2   respect to their objection.

3          THE COURT:  Okay.

4          MR. SMOLINSKY:  Your Honor, the first matter on the

5   agenda is the debtors' 147th omnibus objection to claims.

6   That's a motion seeking disallowance of claims for equity

7   interests.

8          THE COURT:  Just a minute please, Mr. Smolinsky.

9          I need quiet on the telephones.  CourtCall, I don't

10  know if it's coming from your callers or from you, but if we

11  can't solve this problem, we're going to end CourtCall access

12  to the court.

13         Go ahead, Mr. Smolinsky.

14         MR. SMOLINSKY:  Thank you, Your Honor.  There are

15  three responses to be taken up this morning.  One of them is

16  the Ellison response.  Ms. Ellison is actually in the courtroom

17  today.  We had an opportunity to speak to her before the

18  hearing.  This was an informal response, meaning that no

19  documents or papers were submitted.  But we had been in

20  telephone contact with her.

21         She's trying to figure out what transpired with her

22  mother's estate.  And we're trying to help her in that regard.

23     (Alarm sounding)

24         THE COURT:  Ashley, would you please try to found out

25  if this is real or if this is --

Page 8

```
 1        (Fire alarm announcement)

 2           THE COURT:  Mr. Smolinsky, I think it's unlikely that

 3    this is real, but I'm required to bring the hearing to an

 4    interruption, to take this seriously.

 5        (Recess from 9:57 a.m. until 10:17 a.m.)

 6           THE COURT:  Continue, please, Mr. Smolinsky.

 7           MR. SMOLINSKY:  I believe Mr. Radke was about to

 8    present his case.

 9           THE COURT:  Okay.  Mr. Radke?

10           MR. RADKE:  Yes, this is David Radke.  And as the

11    lawyer for the debtor suggested, my claim was objected to

12    solely on the basis of an equity interest claim.  In my view,

13    it's more than that.  Just some background.  Just I'm not sure

14    how much you know about the case right now or what's in front

15    of you, but this loss of over 500,000 dollars in my case,

16    represents basically a very serious investment in GM's 401(k)

17    plan.  And with that loss in a 401(k) plan, I can have -- you

18    can take it from a tax loss matter.

19           But what makes it different from an equity interest

20    claim or a pure equity interest claim is that there's some

21    other several things.  Within the plan, Pergamite even

22    purchased the GM stock, which the first purchase was in

23    December of 2007, GM Fidelity who was the manager of the plan,

24    made modifications to what was in the plan with GM's input to

25    remove several of the mutual funds that they used to invest in,
```

09-50026-mg   Doc 10667   Filed 08/03/11   Entered 08/09/11 10:21:53   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 9 of 54

Page 9

1   you know, Fidelity, Diversified International and -- amongst

2   others.  And so I had to liquidate out of those.  And at the

3   time, they were basically modifying the plan so there wasn't

4   many good things to invest in.  And my assumption was that they

5   removed these plans too, on the basis of that they were too

6   risky.

7          Well, they left GM common stock in the plan, but they

8   put no thought or comments as to risk on that.  So I actually

9   began investing in GM at that time for the safety of the --

10  over time would present dividends.  And so I never even saw a

11  chance not as much possible in my plan prior to that.

12         The other contributing factor was the fact that after

13  I had purchased GM stock, the plan, the 401(k) plan put

14  restrictions on trading.  Now, these changes were such that if

15  you bought and sold stock or a mutual fund, any type of

16  investment that was in the plan, within thirty days you

17  couldn't buy it back.  They were trying to limit trading.

18  So -- and if you bought it back within thirty days then they

19  were going to put other trading restrictions on your account

20  for up to a year.

21         So after I bought these GM holdings, and it wasn't

22  pure GM common stock in my account, then I was afraid to sell

23  it because the -- if I sold it then I couldn't buy it back for

24  thirty days, then, you know, any type of market news or rebound

25  in the stock, I would miss out on.  So I ended up, you know,

1    holding on to the stock.  A lot of the reason was because of

2    that.  So that exacerbated my situation.  And the losses

3    snowballed, especially after GM ended up taking out their

4    dividends.  At that time, you know, there seemed to be no

5    other -- you just tried to hold on.

6              So in my view, GM is complicit with the changes that

7    they were making in their 401 plan that limited my ability to

8    trade the stock normally.  This was not an open market

9    situation here.  And so I look at that as being something more

10   different that makes it not just a simple equity claim where I

11   was buying something outside of my account and it traded

12   normally.

13             So you know, if GM was taking out these other bonds

14   for risk, they certainly should have limited GM stock buying or

15   at least noted that at the time.  And I wouldn't have gotten

16   into GM stock at all.  So with this tier selling, you know,

17   that's not a normal market condition.  And when you look at

18   this all told, yeah, there's comments, everything that GM made

19   all through this as well, which, you know, the separate lawyer

20   referred to it was part of the statement, right, that GM

21   necessarily didn't have to go bankrupt.

22             But there's more to my case than just those claims.

23   It's these to this -- a 401 and the modifications that they

24   made to the plan.  And without any input, without correct input

25   on my -- or on their part, from a risk standpoint.  And so I'm

 1    looking at these as more than just equity interest claims, and

 2    I respectfully ask the Court to consider these loses as an

 3    unsecured claim, which they were initially, or that the

 4    original percentage of the claim be approved in turn.  Thank

 5    you.  That's where I'm at.

 6         THE COURT:  All right.  Mr. Smolinsky, do you want to

 7    respond?

 8         MR. SMOLINSKY:  It sounds that if Mr. Radke has a

 9    claim, that claim would be against the plan or against Fidelity

10    as the manager of the plan.  To the extent that he asserts

11    claims that would typically be the type of claims like

12    rescission for -- to reverse the purchase of the stock under

13    510(b) of the Bankruptcy Code, those claims have the same

14    priority as equity.

15         THE COURT:  Okay.  Then I'm going to need to rule.

16    And the bottom line, Mr. Radke -- and I recognize the harshness

17    of the ruling, and I well recognize how hard this bankruptcy

18    has been on many people, but perhaps especially GM's

19    stockholders.

20         I'm required to sustain the debtors' objection to your

21    claim and to expunge it.  The starting point for this analysis,

22    and I'm of course repeating things that I've said in earlier

23    rulings in this courtroom in this case, is that creditors need

24    to be paid ahead of stockholders, and stockholders do not have

25    a right of recovering in a bankruptcy until creditors have been

09-50026-mg    Doc 10667    Filed 08/03/11    Entered 08/09/11 10:21:53    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 12 of 54

Page 12

1   paid.

2           Now, what you have said in substance, Mr. Radke, is

3   that as part of your retirement plan, you got bad advice or

4   indeed may have even been defrauded into acquiring or keeping

5   the GM stock.  But that is for the most part, if not totally --

6   and whether it's only for the most part and not totally is

7   something I don't rule on -- a claim against the plan in which

8   the stock was held or the advisor to the plan, which if I heard

9   you right, is Fidelity Investments.

10          I take no position on the rights, if any, that you

11  might have against Fidelity other than to say explicitly that

12  if you want to go against Fidelity, I'm certainly not stopping

13  you.  I take no position on that either way.

14          But the second element of your claim, if it is against

15  GM, by understanding principles, it's in connection with -- in

16  substance it's a claim for rescission or unwinding the

17  transaction under which you got the stock or for damages

18  arising from your purchase of the stock.

19          There is a section of the Bankruptcy Code called

20  510(b), which provides -- and I'm quoting, "For the purpose of

21  distribution under this Title, a claim arising from rescission

22  of a purchase or sale of a security of the debtor," I'm leaving

23  out a few words, "for damages arising from the purchase or sale

24  of such a security, shall be subordinated to all claims or

25  interests that are senior to or equal the claim or interest

Page 13

1   represented by such security, except that if such security is

2   common stock, such claim has the same priority as common

3   stock."

4          What that means is that if you have a claim for

5   damages or for rescission by reason of your acquisition of the

6   GM stock, it's at the same level as common stock.  The reason

7   for that provision, if I can digress, is that otherwise, people

8   who were defrauded when they acquired the stock would have a

9   way of bootstrapping those claims ahead of other stockholders

10  and would be boosting them up to the creditor level.  And

11  Congress made the decision that that's not fair.

12         So for those reasons, I'm required to and do sustain

13  the debtors' objection, Mr. Radke.  And I'm going to direct the

14  debtors here to settle an order.  Settling an order means

15  submitting a proposed order to the Court for the Court to look

16  at and ultimately sign if he agrees with it or she agrees with

17  it.

18         And you'll have an opportunity to comment on whether

19  or not that form of order fairly and faithfully implements my

20  ruling.  If you do not object to the form of the order, that

21  doesn't affect your right to appeal.  Your time to appeal this

22  determination, if you choose to appeal it, will run from the

23  date that the resulting order is entered, and not from the date

24  that I am dictating this decision.

25         However, you should be aware that in bankruptcy cases,

Page 14

1    the time to file an appeal is shorter than it is in other

2    federal litigation.  It's fourteen days.  So when that order is

3    entered, if you do decide you want to appeal my determination,

4    you may want to consider that deadline, because in the great

5    bulk of cases, those deadlines are enforced.

6           Now, I don't suspect that you're going to be very

7    happy with that ruling Mr. Radke, but you have to understand

8    that I thought about it and that I am ruling as I'm required to

9    do under the law.  And I will say once more, at the risk of

10   repetition, I well understand how hard this case has been on

11   stockholders like you, many others as well, but on you as well.

12          With that said, Mr. Radke, you're free to either stay

13   on the line or drop off as you prefer.  And Mr. Smolinsky, I'll

14   hear you on the next matter.

15          MR. SMOLINSKY:  Thank you, Your Honor.  Also on the

16   147th omnibus objection, the last responder is Dale Spirnak,

17   who submitted a letter that is in your book.  And his assertion

18   is that General Motors fraudulently misrepresented the

19   viability of the company.

20          I rely on my prior arguments, in particular 510(b),

21   which would cause this claim to be consti -- it would

22   constitute an equity claim as well.

23          THE COURT:  My phone log shows Mr. Spirnak as having

24   signed up for the call.  Are you on, Mr. Spirnak?

25          MR. SPIRNAK:  Yes, Your Honor.

Page 15

1            THE COURT:  Would you like to be heard?

2            MR. SPIRNAK:  Yes, Your Honor.

3            THE COURT:  Go ahead.

4            MR. SPIRNAK:  Okay.  My name is Dale Spirnak.  And my

5   position is that GM of course had misrepresented its economic

6   viability and financial position.  I know several months, even

7   before the bankruptcy, the former CEO stated he had over ten

8   million dollars in cash, there's nothing to worry about.

9   However, in reality, it appears that GM knew its stock was

10  essentially worthless, and yet allowed a potentially worthless

11  financial instrument to remain in a 401(k) retirement program.

12          They took out other risky investments but chose to

13  leave theirs in there as if everything was okay.  And this

14  retirement program used to be called a savings stock purchase

15  program.  We held actually here as stock at the time, Fidelity

16  became a manager of it maybe around ten years ago or so.  I'm

17  estimating.  They changed it to a stock fund which was about

18  ninety-five percent stock and five percent cash.  State Street

19  Bank was the fiduciary of GM stock.  And without our knowledge

20  and for the betterment of GM, State Street Bank liquidated all

21  the shares of stock in the fund without our knowledge.  And

22  Fidelity was complicit in this transaction.

23          I know I had called that man.  And based on everything

24  it was fine.  But it certainly was not fine.  Everything was

25  liquidated for GM's benefit and not for the benefit of the

Page 16

1   people who were investing.  And I know your -- I was listening

2   to you about these laws.  It's unfortunate.  I was given the

3   impression that the powerful get taken care of and the honest

4   people, you know, you're left dangling in the wind.  I hate to

5   put it that.  I'm saying it with all due respect to you, Your

6   Honor.

7           But I still think this is a fraud and

8   misrepresentation at the highest level.  And I think if this is

9   allowed to stand then all 401(k)s are vulnerable.  As far as

10  I'm concerned, my 401(k) was stolen from me.  I think you're

11  going to set a precedent to allow that to happen in the future.

12  And thank you for letting me speak my say in court, sir.

13          THE COURT:  Very well.  Mr. Smolinsky, do you wish to

14  be heard further?

15          MR. SMOLINSKY:  I have nothing further, Your Honor.

16          THE COURT:  Okay.

17          MR. SPIRNAK:  Your Honor?

18          THE COURT:  Yes.  I will now rule, Mr. Spirnak.  And

19  unfortunately, the facts of your situation are very, very

20  similar to those of Mr. Radke, whose claim I just ruled on.

21  And they have to be dealt with the same way.

22          Once again, I don't take any position on your rights

23  against the plan or Fidelity or in this case, State Street.  At

24  one time, State Street might have been affiliated with Fidelity

25  or it may just have been in the same city.  I'm not sure.  But

MOTORS LIQUIDATION COMPANY, ET AL.

Page 17

```
 1    in any event, my ruling doesn't affect your rights, if any,

 2    against them.

 3         But it is impacted by the same section of the

 4    Bankruptcy Code, 510(b) that I ruled on a moment ago.  In

 5    substance your claim is that you were defrauded by false

 6    statements made either when you acquired your GM stock or when

 7    it was sold or both.  And those are exactly the kinds of claims

 8    that are covered by 510(b).

 9         So once again, I'll note that I feel very badly for

10    the stockholders in GM, but I'm constrained to act in

11    accordance with the law.  The frustration of many members of

12    the American public with the way that financial institutions

13    acted in the last several years is another concern that I share

14    as an American, but which is above my pay grade to deal with as

15    a judge.

16         As a practical matter and as a legal one, I'm required

17    to make these calls based upon the law.  And all of us who are

18    troubled by what happened back then have our remedies as

19    citizens in the voting booth.  But they can't come into the

20    courtroom.

21         Mr. Smolinsky, I'm going to direct you to enter a --

22    excuse me, settle a similar order to the one that we just

23    talked about with respect to Mr. Radke.  In each of the two

24    orders, I would like you to add a sentence that while it

25    doesn't put a bull's eye on anybody else, makes it clear that
```

Page 18

1   I'm only ruling on the debtor.  So put in a sentence that says

2   in substance that this order is without prejudice to the

3   rights, if any, that the claimant has against any third party

4   other than Motors Liquidation Company.

5           And once again, the time to appeal will run from the

6   time of the resulting order, and not from the time of this

7   dictated decision.  Finally -- excuse me for just a second.

8   Let me finish my thought.

9           MR. SPIRNAK:  Okay.

10          THE COURT:  And that is that because I am making

11  reference to my earlier more extensive ruling with Mr. Radke,

12  if there is an appeal, the record on appeal should include not

13  just what I'm saying with respect to Mr. Spirnak, but also my

14  earlier ruling with respect to Mr. Radke.

15          Okay, Mr. Spirnak, you wanted to say something further

16  I think?

17          MR. SPIRNAK:  Yes, please.  This time to appeal, is

18  there going to be a date on a letterhead, for example, that I'd

19  know when the starting time is?

20          THE COURT:  Well, there's going to be an electronic

21  filing on the docket which will reflect when it's entered.  Do

22  you have Internet access, Mr. Spirnak?

23          MR. SPIRNAK:  Well, I just have a new provider, so I'm

24  a little worried about getting the proper information through

25  the Internet.

1           THE COURT:  Okay.

2           MR. SPIRNAK:  My provider has changed in the past few

3      days.

4           THE COURT:  Mr. Smolinsky, do me a favor.  When the

5      order is entered, detail one of your paralegals or staff to

6      give Mr. Spirnak a call to tell him that.

7           Mr. Spirnak, for that to happen, you've got to meet

8      him halfway and provide Mr. Smolinsky with a phone number that

9      he can use.  Do you have voice mail on that line?

10          MR. SPIRNAK:  Yes, I do.

11          THE COURT:  Okay.

12          MR. SPIRNAK:  Are you ready?

13          THE COURT:  Yes, go ahead.

14          MR. SPIRNAK:  Okay.  My home phone number is 412-461-

15     5195.  There is voice mail on that line.

16          THE COURT:  Fair enough.  I notice that that's also

17     the phone number that's reflected on my telephone appearance

18     log.

19          MR. SPIRNAK:  Yes, that's the phone I'm on now

20     currently, sir.

21          THE COURT:  Okay.  Thank you very much Mr. Spirnak.

22     I'm going to tell you the same thing I told Mr. Radke.  You're

23     free to drop off the line if you wish or you can stay on.

24          MR. SPIRNAK:  Thank you, sir.

25          THE COURT:  Very well.  Have a good day.

MOTORS LIQUIDATION COMPANY, ET AL.

Page 20

1          MR. SPIRNAK:  You too, sir.

2          THE COURT:  Mr. Smolinsky?

3          MR. SMOLINSKY:  Your Honor, that concludes all matters

4   on the 147th omnibus objection to claims.  Item number 2 on the

5   agenda is the debtors' 148th omnibus objection to claims, also

6   an objection seeking to reclassify claims for equity interests.

7   I'll note, Your Honor, and I apologize, that the response in

8   your book is actually a response of Thomas Jarusinski, where

9   the schedule to the motion lists FBO Patricia Jarusinski.

10  Patricia and Thomas Jarusinski filed numerous claims for either

11  equity or for welfare benefit claims.  So, Your Honor, if

12  you're following along in the book, behind this objection is

13  the improper response.  The response that perhaps you should be

14  looking at is one that's in your book behind tab 4A.

15         THE COURT:  Well, I'm not following along with the

16  book as we go on, but I understand the underlying concept.

17         MR. SMOLINSKY:  Okay.  So just to quickly read the

18  letter, it's two sentences, from Patricia Jarusinski.  It says,

19  "To Whom this Concerns, I proudly purchased General Motors

20  stock to fund our retirement.  I seek settlement for my claims

21  of loss of value and dividend income due to the bankruptcy

22  situation for General Motors.  I want my stock ownership, which

23  represents my belief in and loyalty to the company -- my

24  husband worked for thirty-seven years -- to be acknowledged."

25         To the extent that this is an objection, we, of

09-50026-mg   Doc 10667   Filed 08/03/11   Entered 08/09/11 10:21:53   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 21 of 54

Page 21

1   course, are sympathetic, but nevertheless must object to the

2   claim and seek to reclassify it as an equity interest.

3          THE COURT:  I understand.  My phone log doesn't

4   reflect her as being on the line.  Was that Jarusulsky?

5          MR. SMOLINSKY:  Jarusinski.

6          THE COURT:  Jarusinski, excuse me.  Ms. Jarusinski,

7   are you on the line?

8          Record will reflect no response.  And it's obvious to

9   me by looking out there that she's not in the courtroom either,

10  but for the sake of good order, I'll ask is anybody here on

11  behalf of Ms. Jarusinski?

12         All right.  No response.  Mr. Smolinsky, I need to and

13  do expunge this claim for the reasons that I stated in earlier

14  hearings in this case and earlier today.  And I'll need you to

15  settle an order implementing this ruling at your convenience.

16         MR. SMOLINSKY:  Yes, Your Honor.  Thank you.  And that

17  completely resolves omnibus claims motion number 148.

18         Item number 3 on the agenda is the debtors' 151st

19  omnibus objections to claim.  Also an objection for claims that

20  assert equity interests.  There are two informal responses, one

21  by Lindell Estes and one by Barney Rosso that we wish to go

22  forward with.  We have not received any documentation or

23  writings supporting the objection.

24         THE COURT:  All right.  Are the claimants on the

25  phone?  I don't see them on my log, but let me ask.

Page 22

1          No response.  Or are they represented in the

2      courtroom?

3          Again, no response.

4          MR. SMOLINSKY:  For the record, Your Honor, we did

5      send a letter to both of them advising them of today's hearing.

6          THE COURT:  Okay.  The claims are expunged.

7          MR. SMOLINSKY:  Thank you, Your Honor.

8          Item number 4, the debtors' 152nd omnibus claims,

9      there are two responses that are going forward.  One is

10     Patricia Jarusinski, the same party that we discussed earlier,

11     and the second is Bauer-Rollandin -- Nelly Bauer-Rollandin.

12     She had stated in her letter which was addressed to Weil

13     Gotshal, that she will probably not appear at the hearing and

14     asked that we hand up the letter.

15         I did notice that it is docketed, so I don't know if

16     Your Honor needs another copy of that letter.  These are equity

17     interest claims for the same reasons stated before.

18     Unfortunately the Bankruptcy Code dictates and the plan

19     dictates that we need to reclassify these claims as equity

20     claims.

21         THE COURT:  And equity claims need to be expunged for

22     reasons that I've now stated both in earlier hearings and this

23     Chapter 11 case and earlier this morning.  Settle an order

24     accordingly, Mr. Smolinsky.

25         MR. SMOLINSKY:  Thank you, Your Honor.  And that

MOTORS LIQUIDATION COMPANY, ET AL.

Page 23

1    completely resolves omnibus 152.

2            Item number 5 on the agenda is an objection -- the

3    153rd omnibus objection.  We were going to go forward with the

4    claims of Daniel Plouffe.  But as we notified your chambers,

5    that matter has been adjourned at Mr. Plouffe's request.

6            Item number 6 on the agenda, the debtors' 154th

7    omnibus objection, this is also a claim seeking to reclassify

8    equity claims asserting equity interests.  The matter is going

9    forward with respect to one response, and that is by Caroll

10   Waters.

11           THE COURT:  Okay.  Now, here I do show Caroll Waters

12   on my phone log.  Do you know if Caroll -- which is apparently

13   with two L's, is a guy or woman?

14           MR. SMOLINSKY:  I do not know, Your Honor.

15           MR. WATERS:  It's a man.

16           THE COURT:  Okay.  Mr. Waters --

17           MR. WATERS:  Yes.

18           THE COURT:  -- do you wish to be heard?

19           MR. WATERS:  Well, I guess I can't say much.

20   Actually, my name is Caroll R. Waters.  But from what I've

21   heard you say before and so forth, and the ruling and the law

22   that you have to rule under and so forth, that it doesn't sound

23   like there's much light at the end of the tunnel, actually no

24   light.  The door's been closed automatically.

25           But I will say this.  I mean, I worked for General

Page 24

1    Motors for many years.  And candidly, I knew how they were

2    operating and so forth, and the reason I invested with them is

3    I entrusted these executives to get my savings.  But apparently

4    they carelessly mishandled it and also took a great hundred

5    year old company and ran it into bankruptcy.  I think my

6    reckless judgment broke the agreement they had with me as well

7    as with all of the other investors.  I don't know what they

8    hope to seek in the future by doing this.  It certainly doesn't

9    put any kind of precedent and any kind of regard for their

10   standing in the global industry.

11          I don't know if I can say much more, Your Honor.  I've

12   heard your rulings, so I've got a hunch what I'm going to get.

13   That's what I have to say.

14          THE COURT:  All right.  Thank you.

15          Once again, I do well understand the frustration and

16   perhaps even anger of former GM stockholders and perhaps even

17   especially employees who invested in the company they were

18   working for, looking to their management to steer the company

19   appropriately.

20          But with that said, as you understood, Mr. Waters, I

21   am constrained by the requirements of the law.  And I

22   necessarily must expunge the claim for the reasons that I

23   stated in earlier hearings in this case and in my earlier

24   rulings with respect to Mr. Radke and Mr. Spirnak.

25          So once more, please, Mr. Smolinksy, settle an order

Page 25

1    in accordance with this ruling.

2         MR. SMOLINSKY:  Yes, Your Honor.  Item number 7 on the

3    agenda is the debtors' 155th omnibus objections to claim.  Also

4    an objection seeking to disallow claims for equity interests.

5    The agenda reflects two claims going forward, the Hugo Anderson

6    claim and the Daniel Plouffe claim.  As I indicated earlier, we

7    have adjourned the matter, I believe to August 16th with

8    respect to Mr. Plouffe.  So we wish to go forward on the Hugo

9    Anderson claim.

10        Hugo Anderson submitted a letter.  There were no

11   specifics as to why he believes a claim as opposed to an equity

12   interest is appropriate.

13        THE COURT:  Okay, Mr. Anderson, my phone log shows you

14   having signed up on the call.  Are you on?

15        MR. ANDERSON:  Yes, Your Honor.

16        THE COURT:  Okay.  Would you like to be heard?

17        MR. ANDERSON:  Yes, Your Honor.

18        THE COURT:  Okay, go ahead.

19        MR. ANDERSON:  Yeah.  Just like the prior guy said,

20   you've got to go by -- I heard your past rulings, whatever.

21   The only comment I wanted to make is, I worked for GM for 41.3

22   years and had 80,000 invested in GM.  And it wasn't in their

23   401(k) plan, but I sent you a letter.  I bought GM stock at

24   forty dollars down to five around 2/07.  It's now -- you know,

25   it's worthless, as quite a bit of my retirement.  And I feel

MOTORS LIQUIDATION COMPANY, ET AL.

Page 26

1    like what I read in some of the other people's statements and

2    GM misrepresented itself like the board of directors and the GM

3    executives in saying that, you know, they were going to get a

4    bail out from the government and not have to go bankrupt.  And

5    you got to go by the, I guess, the corporate bankruptcy code,

6    the laws.  But I guess I sort of feel that if none of these

7    shareholders are going to get anything back, the corporate

8    bankruptcy code should be changed.

9         I mean, common stockholders have been losing money

10   every since they started red alerts.  I can remember in seventh

11   grade math class talking about it, you know.  And preferred

12   stockholders, I guess, in this case, are going to get ten

13   percent of their money back, where common stockholders are not

14   going to get anything.  But preferred stockholders get a

15   guaranteed high dividend where a common stockholder, you know,

16   they're hoping the stock will go up and I get a smaller

17   dividend.

18        But I just feel GM misrepresented stockholders in

19   saying they're going to get a government bail out without going

20   bankrupt.  And, you know, I can't prove it, but I'm sure the

21   board of directors and GM executives, GM stock paid -- you

22   know, they had inside information, and I'm sure that they got

23   rid of their stock, you know, bailing out for forty dollars

24   down to five, and I just -- I hung on even when in it went into

25   bankruptcy, because you know, I kept -- the stock kept going

MOTORS LIQUIDATION COMPANY, ET AL.

Page 27

1    down and I figured I would end up getting something.  But I

2    don't know if there's any possibility that -- I think the GM

3    board of directors and executives, you know, misrepresented

4    having any possibility that maybe the common stockholders could

5    have a class action suit or whatever.

6            I just feel that the preferred stockholders, they're

7    not getting as much dividend as they did.  But I should -- I

8    think that all the debtors (sic) should, you know, get the same

9    percentage.  But I guess, you know, that's not the way the laws

10   read.  I just wish they'd change the laws and I just wanted my

11   day in court.  And that's all I have to say, sir -- Your Honor.

12           THE COURT:  I understand, sir.  And again, as I'm -- I

13   think you said you understood, I'm required to live by the

14   requirements of the law as it's been written.  And that

15   requires me to rule the same way.  I appreciate your courtesy

16   and your respect, Mr. Anderson.  But as I said, the ruling is

17   one as to which my hands are tied.

18           So once again, Mr. Smolinsky, you'll have to settle an

19   order in accordance with Mr. Anderson's situation as well.  And

20   Mr. Anderson, the time to appeal that order will be from the

21   date that it's entered.  So keep your eyes peeled for that.

22   It'll be on the Internet.

23           MR. ANDERSON:  How will I know that, sir?

24           THE COURT:  Mr. Smolinsky, again, as a favor to me, I

25   would appreciate it for these mom and pop folks, that you

Page 28

1     detail a member of your staff to give them a call when the

2     order is entered.

3            Mr. Anderson, I show your phone number as 269-694-

4     6393.  Is that your home phone?

5            MR. ANDERSON:  Yes, Your Honor.

6            THE COURT:  And do you have a voice mail or an

7     answering machine on that in case you're not home.

8            MR. ANDERSON:  No, I don't.

9            THE COURT:  Do you have an e-mail address?

10           MR. ANDERSON:  Yes.

11           THE COURT:  Would you provide that to Mr. Smolinsky,

12    please?

13           MR. ANDERSON:  Yes.  It's just

14    hugoanderson@hotmail.com.

15           THE COURT:  Is there any space or punctuation or

16    underline or anything like that between the Hugo and the

17    Anderson?

18           MR. ANDERSON:  No, it's just hugoanderson, all

19    together with -- in small letters.

20           THE COURT:  Okay.  Thank you.  Mr. Smolinsky, I know

21    the law doesn't require this, and you're doing me a favor, but

22    for these mom and pop stockholders, I would appreciate you

23    doing it.

24           MR. SMOLINSKY:  We're happy to, Your Honor.

25           THE COURT:  Okay.  Thank you.

Page 29

1          MR. SMOLINSKY:  May I respectfully request, just so

2     the record is clear, that Your Honor, incorporate by reference

3     the Radke decision and the Spirnak decision to all of the

4     matters on the calendar today relating to omnibus objections to

5     equity claims.

6          THE COURT:  Of course.  Request granted.

7          MR. SMOLINSKY:  Thank you, Your Honor.

8          The next matter on the calendar is item number 8.

9     This is the debtors' 169th omnibus objection to claims.  This

10    is an objection to claims of welfare benefit by retirees and

11    former salaried and executive employees.

12         Your Honor, you likewise addressed these types of

13    claims in the past.  GM Corporation has, in the past, amended

14    and modified its executive plans from time to time.  The right

15    to do so is clearly spelled out in the plans themselves.  There

16    have been a number of courts that have written on this issue,

17    in particular, Sprague v. General Motors Corporation --

18         THE COURT:  Out of the Sixth Circuit?

19         MR. SMOLINSKY:  Yes, that's correct, Your Honor.  The

20    Sixth Circuit decision, which found that plans can be freely

21    modified and there has to be some pretty strong evidence

22    otherwise in order to vest benefits.  Likewise, Moore v. Metro

23    Life Insurance Company, which is a Second Circuit case found

24    similar to Sprague

25         In this 169th omnibus objection, we wish to go forward

MOTORS LIQUIDATION COMPANY, ET AL.

Page 30

1   with respect to the Kendziorski claim. That's

2   K-E-N-D-Z-I-O-R-S-K-I.  Melvin Kendziorski.  For the reasons

3   stated above, we believe that this claim should be disallowed

4   as not being properly asserted.

5           THE COURT:  Okay.  Was that one claimant or more than

6   one, Mr. Smolinsky?  It came by kind of fast.

7           MR. SMOLINSKY:  It's one.  Melvin J. Kendziorski.

8           THE COURT:  Okay.  Mr. Kendziorski, I don't see you on

9   my phone log.  Are you on the phone?

10          No response.  And I see my courtroom.  But I'll do it

11  anyway:  anybody here on behalf of Mr. Kendziorski in the

12  court?

13          No response.  Mr. Smolinsky, I'm constrained to and do

14  expunge the claim for the reasons that you articulated and for

15  reasons that I stated earlier -- much earlier in this case.  In

16  fact, I think it was back at the time that there was a request

17  for a committee to be appointed for people with similar

18  concerns.  And accordingly, your motion to expunge is granted.

19          If you wish, you may designate as part of the record

20  for any appeal, my earlier statements and rulings on the

21  subject.

22          MR. SMOLINSKY:  Thank you, Your Honor.  Including the

23  statements made on the record of the June 22, 2011 hearing?

24          THE COURT:  Yes, sir.

25          MR. SMOLINSKY:  Thank you.  Number 9 on the agenda is

MOTORS LIQUIDATION COMPANY, ET AL.

Page 31

1   the debtors' 176th omnibus objections to claim.  That's also a

2   motion relating to welfare benefit claims.  There are two

3   matters going forward.  One is likewise an informal objection

4   interposed by Melvin J. Kendziorski.  And the second is Richard

5   Knoth, K-N-O-T-H.  Is Mr. Knoth on the phone?

6        THE COURT:  I see no indication that he's signed up,

7   but I will ask.  Mr. Knoth, are you on the phone?

8        No response.  Anybody here on behalf of Mr. Knoth in

9   the courtroom?

10       No response.  You may continue, Mr. Smolinsky.

11       MR. SMOLINSKY:  Your Honor, this objection is pretty

12  standard and consistent with other responses that we've seen.

13  I would note that the response itself does have a sentence on

14  page 3 that states, "There is little doubt that many GM

15  documents stated GM reserves the right to amend or terminate

16  benefit plans or similar language."

17       His assertion is that because he accepted early

18  retirement, that he should be entitled to lifetime benefits

19  that were in existence at the time of the voluntary

20  resignation.  Given the fact that, as I stated before, the

21  plans were freely amendable and the case law supports those

22  modifications and amendments, we would ask that this claim be

23  expunged.

24       THE COURT:  And there was no showing in his submission

25  that when he retired any separate additional document was

MOTORS LIQUIDATION COMPANY, ET AL.

Page 32

1    executed that would give him the rights that he now asserts?

2             MR. SMOLINSKY:  No, Your Honor.

3             THE COURT:  Okay.  The claim must be expunged for the

4    reasons previously stated.

5             MR. SMOLINSKY:  Thank you, Your Honor.  And

6    Kendziorski, that's an informal response.  I don't believe he's

7    here.  But the same arguments hold.

8             THE COURT:  And same ruling.

9             MR. SMOLINSKY:  Thank you, Your Honor.  That

10   completely resolves omnibus 176.

11            Item number 10, debtors' 177th omnibus objection to

12   claims, also welfare benefit claims objection.  This is going

13   forward with respect to one claim of Alan C. Zak.  For all the

14   reasons stated earlier, we wish to expunge this claim.

15            Your Honor, Mr. Zak filed a response that is virtually

16   identical to the response that was filed by Mr. Knoth.  And

17   accordingly, we ask that that claim be expunged as well.

18            THE COURT:  I see no indication of Mr. Zak having

19   signed up for the phone.  Are you on, Mr. Zak?

20            MR. ZAK:  Yes, I am, Your Honor.  There was some

21   confusion in the process of the CourtCall, and I apologize that

22   you didn't have that information handy.

23            THE COURT:  Well, you don't need to apologize to me,

24   but that's why I asked the question.  I'll allow you to be

25   heard if you would like to be.

1              MR. ZAK:  Thank you for the opportunity, Your Honor.

2     In late 1976 I was approached by the Buick division of General

3     Motors with the offer of employment.  Cars were starting to be

4     made by computers, and that was my field of expertise, that and

5     electronics.  They were looking for people with that kind of

6     background and experience in the automobile business at the

7     dealership level.  I did not apply to them.  They came to me.

8              At the time I was concerned because the salary they

9     were offering was a good bit less than what I was making in the

10    position that I currently held.  When I discussed this with

11    them, the answer was that while GM paid less than other

12    employers, that the difference was made up with the benefits of

13    health care, insurance and retirement, during employment and on

14    into retirement.  In their words, as a total compensation

15    package.  And total compensation package, Your Honor, is a

16    quote.

17             These benefits would also include my wife and any

18    children.  While my wife and I do not have children, we did not

19    know that at the time we would not.  This was the main reason I

20    took the offer of working with General Motors, a combination of

21    salary and benefits that would protect my family while I was

22    employed with them and on into retirement.

23             As time went on, there were salary increases and

24    promotions in my career.  Whenever the question arose of a

25    dollar figure or larger dollar figure and a salary increase,

Page 34

1    whether associated with a promotion or not, that question was

2    always answered with a reference to the total compensation

3    package and the benefits I was and would be receiving.

4           In spring of 2008, at which point I accrued thirty-one

5    years of service with General Motors, there came an offer for

6    an early retirement package.  Since my age was sixty, and I had

7    the years of service applicable to the program, after serious

8    thought I decided to accept the program.  Included in this

9    package was life insurance for myself and my wife, health care,

10   eye care coverage, dental coverage and prescription coverage.

11          Within six months of the time my retirement became

12   effective, which was November 1, 2008, General Motors

13   substantially reneged on the agreement by discontinuing the

14   dental and eye care coverages, substantially modifying the

15   health care and prescription coverages, with extremely high

16   deductibles, and subsequently reducing the life insurance

17   coverages.

18          As evidenced by books written by former General Motors

19   employees, GM has never been a company to make quick decisions.

20   To make these changes in that short of a time after my

21   retirement indicates that these were being planned when I

22   agreed to the terms of the early retirement package.  And my

23   question to you, Your Honor, is would this not constitute a

24   fraud?  Offering one set of terms when they knew that they

25   would not be honoring them and would substitute a set of

Page 35

1    inferior terms in just a short while.

2         There was no time -- at no time during my career with

3    them, was there any precedent for this possibility of not

4    honoring their commitments.  And with that, Your Honor, I put

5    that to you as my reason for asking to be a part of this

6    settlement.

7         THE COURT:  Mr. Smolinsky, you may respond.

8         MR. SMOLINSKY:  Your Honor, obviously, I'm unaware of

9    all of the conversations that took place or the promises or the

10   timing of modifications of the plan.  I would only say, and I

11   just want to read a sentence from Sprague v. General Motors

12   Corp., which is actually included in Mr. Zak's papers.  The

13   quote is:  "To vest benefits is to render them forever

14   unalterable.  Because vesting of welfare plan benefits is not

15   required by law, an employee's commitment to vest such benefits

16   is not to be inferred lightly.  The intent to vest must be

17   found in the plan documents and must be stated in clear and

18   express language."

19        So, Your Honor, I'm not aware of the timing of any of

20   the decisions that were made, but I would say that the plans at

21   all time maintained that right to modify them at any time and

22   for any purpose.

23        THE COURT:  Mr. Zak, was anything given to you in

24   writing that promised these lifetime benefits as compared --

25        MR. ZAK:  Unfortunately not that I have retained, Your

MOTORS LIQUIDATION COMPANY, ET AL.

Page 36

1    Honor.

2         THE COURT:  All right.  I do not believe, given the

3    Sprague determination by the Sixth Circuit Court of Appeals,

4    that I can issue a ruling contrary to that for the other

5    employees by reason of anything that was merely expressed

6    orally.  And I don't think, on the state of the record, that I

7    can rule on any intentions that were not made in the form of

8    actual statements, but which may have been undisclosed

9    intentions.

10        In this case and others, when people have had

11   supplemental agreements in writing that can be fairly read as

12   trumping the plan as a whole, I have carved them out from

13   earlier rulings to hear further evidence, and at least in one

14   case, said that the supplemental written agreement would, in

15   fact, trump the plan that otherwise existed.  But I don't have

16   a satisfactory basis for doing it on this state of the record.

17        Again, Mr. Zak, your claim is a variant of one that

18   unfortunately I've heard from quite a number of people, because

19   this case has been harsh on former retirees or on retirees and

20   former employees, just as it's been harsh on stockholders.  But

21   unfortunately my ruling must be the same.

22        MR. SMOLINSKY:  Your Honor, as a matter of disclosure,

23   as we have been winding our way through these claims, there

24   have been a handful of employees that have been able to show us

25   a letter that came from a distribution center that, unlike all

Page 37

```
 1    the other correspondence that GM ever issued, did not say that

 2    these plans are subject at any time to modification or

 3    termination.  It simply says your benefit is X.  And at some

 4    point, we need to address that issue.

 5           There was recently filed a case by certain retirees

 6    against Met Life relating to letters that Met Life issued to

 7    some former GM retirees.  I don't believe that our position is

 8    going to be any different with respect to this letter.  I

 9    believe under Sprague, unless there's a clear indication to

10    vest those benefits, that the absence of a reference to the

11    ability to terminate is not fatal.  But I wanted to bring it to

12    Your Honor's attention, because I don't want Your Honor to

13    believe that we're going to spring this on you at some point

14    that there are letters out there.

15           THE COURT:  Well, that's kind of why I asked the

16    question that I did, Mr. Smolinsky.  Because I would like to

17    know whether there is a principle basis upon which Mr. Zak's

18    claim should be regarded as different than the others.

19           Do you know whether he -- I think he said he didn't

20    know if there was a -- well, I think he answered a different

21    question.

22           Mr. Zak, the question you thought I was asking, which

23    is what I thought I was asking is, is there a supplemental

24    letter that says you have particular benefits.  Is that the

25    question you thought you were answering?
```

1        MR. ZAK:  No, Your Honor.  I was -- I thought I was

2    answering a question from you that asked if I had any written

3    proof as to the conversations I had over the years with my

4    supervisors that indicated that these benefits would be

5    ongoing.

6        THE COURT:  Well, that's similar to what I was asking.

7    Because if there were a promise in writing, that would have, of

8    course, been such proof.

9        Basically, Mr. Smolinsky, I had assumed that Mr. Zak's

10   case was amongst those where GM had reserved the right to

11   modify.  If there was a document that applied to him that

12   didn't have that but was merely silent, it may be that it's

13   controlled by that, but that isn't what I thought I was ruling

14   on.  Do you know if we're in that category or not?

15       MR. SMOLINSKY:  Your honor, we don't know.  There are

16   a handful of those letters that we've seen that have been sent

17   to us as we go through these claims.  There doesn't seem to be

18   any rhyme or reason as to date or names or locations.  We've

19   asked New GM about it.  And they continue to look into it, and

20   now that they were served recently with a copy of the Met Life

21   lawsuit.  But it doesn't appear that anyone who retired after

22   the Sprague decision came out received any of these letters,

23   because people got very careful after the Sprague decision to

24   include that language.

25       So I can't say with any certainty whether that letter

```
 1    was there.  As I said before, I don't think that letter changes

 2    the analysis because all of the plans include those -- that

 3    language that plans are subject to modification or termination.

 4         THE COURT:  Well, I appreciate your candor.  But by

 5    the same token, I wonder if the more prudent thing to do,

 6    because we are affecting, you know, a living human being here,

 7    is to neither grant nor deny the motion to expunge to allow

 8    another few weeks of inquiry to see whether he might be covered

 9    by that or not.  And then if he does have such a different kind

10    of letter applying to him, if you want to make the same motion

11    arguing that the law still requires it, you can do that.  And

12    then he'll have the opportunity to respond and presumably

13    differ with you on that.

14         MR. SMOLINSKY:  Your Honor, I'm told that the letters

15    that I was referring to relate only to life insurance, they

16    don't relate to any other benefit plan.

17         THE COURT:  I see.  Do you have any factual basis for

18    disagreeing with Mr. Smolinsky on what he just said, Mr. Zak?

19         MR. ZAK:  No, I do not, Your Honor.

20         THE COURT:  Okay.  Then your motion will be granted

21    vis-a-vis the health benefits component, but will be continued

22    vis-a-vis the life insurance component.

23         MR. ZAK:  I see.  Thank you, Your Honor.

24         THE COURT:  Okay.  Your next matter, please, Mr.

25    Smolinsky?
```

1          MR. SMOLINSKY:  I'm sorry, Your Honor, I'm just

2     finding my place.

3          THE COURT:  Were you up to 178?

4          MR. SMOLINSKY:  I believe we just tackled 178.  Oh,

5     no --

6          THE COURT:  Are we now up to 187?

7          MR. SMOLINSKY:  -- no, you're right; 178 is also a

8     claim filed by Mr. Zak.

9          THE COURT:  Okay.

10         MR. SMOLINSKY:  I think the same ruling applies.

11         THE COURT:  Is there anything other than what I

12    already dealt with, vis-a-vis Mr. Zak?

13         MR. SMOLINSKY:  I do not believe so, Your Honor.

14         THE COURT:  Okay.  Then are we now up to the 187th?

15         MR. SMOLINSKY:  Yes, Your Honor.

16         THE COURT:  Go ahead.

17         MR. SMOLINSKY:  We are going forward with McConnick

18    and McNutt.

19         THE COURT:  Okay.  Are any of those folks on the

20    phone?  Anybody on their behalf in the courtroom?

21         Mr. Smolinsky, do you have any reason to believe that

22    they're in the category of those letters you were telling me

23    about, those --

24         MR. SMOLINSKY:  I have no reason to believe that they

25    are.

MOTORS LIQUIDATION COMPANY, ET AL.

1          THE COURT:  Okay.  Then your motion to expunge will be

2     granted for those folks.  I have to deal with it that way.  And

3     under those circumstances, we'll move on.

4          MR. SMOLINSKY:  Thank you, Your Honor.  Item number

5     14, that's debtors' 214th omnibus objection to claims -- I'm

6     sorry, I skipped one -- 13 --

7          THE COURT:  What about the 210th and 211th?

8          MR. SMOLINSKY:  I'm sorry, that was McConnick.  We

9     also have McNutt on that 187th omnibus.

10         THE COURT:  Okay.  Then continue please.

11         MR. SMOLINSKY:  Ms. McNutt submitted a one page

12    response.  There are two paragraphs.  The first paragraph

13    states, "Claimant McNutt has no direct and immediate access to

14    the funds under the plan and is subject to the plan's

15    administration by the debtor, its successors in interest, or

16    that of the plan trustees."

17         Paragraph 2 states, "Claimant has no knowledge whether

18    General Motors LLC has assumed sponsorship of the debtors'

19    claim nor has she received any notices of such sponsorship.

20    Claimant believes the plan is administered by Fidelity

21    Investments.  The only notice claimant has received explaining

22    the plan has been from GM Benefits and Service Center."

23         We don't believe that that constitutes an objection to

24    the relief requested.

25         THE COURT:  I agree.  She's not -- I had called out

09-50026-mg   Doc 10667   Filed 08/03/11   Entered 08/09/11 10:21:53   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 42 of 54

Page 42

1  her name to confirm that she wasn't in the courtroom and on the

2  phone.  Am I correct?

3          MR. SMOLINSKY:  I believe so, Your Honor.

4          THE COURT:  Ms. McNutt, are you here?  No.

5          Objection sustained, because the basis for objecting

6  to the objection, if you will, isn't a legally cognizable one.

7  It doesn't state a defense.

8          MR. SMOLINSKY:  Thank you, Your Honor.  Just for the

9  record, we attempted to contact all claimants by phone.  Ms.

10  McNutt did not provide a phone number.  We did send a letter

11  and we tried using a reverse directory, but we couldn't find a

12  telephone number for Ms. McNutt.

13          THE COURT:  I appreciate that.  I understand.  And

14  your efforts were satisfactory.

15          MR. SMOLINSKY:  Thank you.  Debtors' 210th omnibus

16  objections to claim.  That's a claim going back for equity

17  interests.  We seek to go forward with respect to Dennis and

18  Jill Gallaher.

19          THE COURT:  I see Mr. Gall -- is it Gallagher or

20  Gallaher?  Is it a typo on my log?

21          MR. SMOLINSKY:  His letter says Gallaher, Your Honor.

22          THE COURT:  Gallaher, right.  Mr. Gallaher, are you on

23  the phone?  Mr. Gallaher?

24          No response.  Okay.  This being a claim to expunge an

25  equity interest, I've spoken quite a bit on this today.  The

MOTORS LIQUIDATION COMPANY, ET AL.

Page 43

1   ruling here has to be the same and it will be expunged.

2        MR. SMOLINSKY:  Thank you, Your Honor.  And just for

3   the record, the letter asserts that the claim is based on an

4   equity loan made to GM rather than a purchase of stock.  But it

5   nevertheless is an equity interest.

6        THE COURT:  Right.

7        MR. SMOLINSKY:  Item number 14, debtors' 214th omnibus

8   objections to claim.  Those are administrative proofs of claim

9   that were filed for equity interests.  We are going forward

10  today with respect to Larry S. Massey, Stella Malles,

11  M-A-L-L-E-S, and Ryan D'Amour.

12       THE COURT:  Okay.  I do see a Mr. Massey and a Ms.

13  Malles on my phone log.  Are either of you on the phone?

14       MR. MALLES:  Your Honor, my name is John Malles, I'm

15  representing my mother.  She has poor hearing and would be

16  unable to attend these hearings.  But she had a prepared

17  statement she wanted me to read.

18       THE COURT:  Mr. Smolinsky, I assume you don't object?

19       MR. SMOLINSKY:  I certainly don't object, Your Honor.

20       THE COURT:  Go ahead, Mr. Malles.

21       MR. MALLES:  Good morning, Your Honor.  In March of

22  2009 my uncle had passed away and he had a joint account with

23  my mother.  And after his demise my mother inherited common

24  stock from General Motors however it went into intestate.  And

25  during the time, she would have sold the stock, but she was

MOTORS LIQUIDATION COMPANY, ET AL.

Page 44

1    unable to sell the stock because it was intestate.  General

2    Motors went into bankruptcy and I could not sell.  General

3    Motors Liquidators acquired General Motors stock, and I could

4    still not sell General Motors Liquidators.  So my mother, you

5    know, felt as though she fell into a situation where, you know,

6    due to other laws and whatnot, she was kind of more or less,

7    perhaps more unable to sell the stock due to the -- due to

8    having the account go into intestate status, where she was

9    unable to sell the stock.  So she feels that she's entitled to

10   some type of compensation or at least to be able to keep it

11   without being reclassified, Your Honor.

12           THE COURT:  Um-hum.  Do you want to be heard, Mr.

13   Smolinsky?

14           MR. SMOLINSKY:  Only to say that it sounds like

15   unfortunate circumstances, but it doesn't seem like General

16   Motors Corporation or Motors Liquidation Company are to blame

17   for this.

18           THE COURT:  Yes.  Well, the circumstances are, of

19   course, unfortunate, Mr. Malles.  But I imagine that you were

20   on the phone when I had to rule on claims by other stockholders

21   earlier this morning.

22           MR. MALLES:  Yes, Your Honor.

23           THE COURT:  Unfortunately, some people's

24   circumstances, while they differ in terms of why they weren't

25   able to get rid of the stock at an earlier time, some because

1    they got bad advice, some because they got locked into probate

2    requirements, as yours seem to be, some that may have been for

3    other reasons still, ultimately are telling me that right now

4    they're stockholders and they want to get the compensation that

5    creditors are getting instead of the compensation, which of

6    course is zero, that stockholders are getting.

7          Once again, my hands are tied under the law.  And

8    while once again, I feel the hardship on so many stockholders,

9    all of those that I've heard today are, you know, just middle

10   class Americans, there isn't anything I can do about it other

11   than to express my sympathy, because I'm constrained by my oath

12   to comply with the law.

13         So, this objection will be sustained and the claim

14   will be expunged.  And once again, I'm going to ask you to

15   settle the order, Mr. Smolinsky, and to tell you, Mr. Malles,

16   that your family will be able to appeal if you choose to,

17   within the relatively short time the Bankruptcy Code provides,

18   which is fourteen days, not from today, but from the date that

19   that order is entered.

20         Mr. Malles, do you have Internet access so that you

21   can follow the docket?

22         MR. MALLES:  I do.

23         THE COURT:  Okay.  Mr. Smolinsky, you're going to

24   first settle the order which means you're going to mail the

25   proposed order to Mr. Malles, which will give you a sense, Mr.

Page 46

1    Malles, when you get that notice of settlement, that an order

2    may be following shortly thereafter.  So especially do the

3    checking of the Internet then to note when your time to appeal

4    begins to run.

5            MR. SMOLINSKY:  Your Honor --

6            MR. MALLES:  Thank you, Your Honor.  And my mother --

7    I will certainly take your rulings back to my mother, and I

8    think this will be a good closure to this unfortunate

9    situation.  But I thank you.

10           THE COURT:  Well, I appreciate that Mr. Malles.  I

11   wish I would give you better than closure.

12           MR. MALLES:  Thank you, sir.

13           MR. SMOLINSKY:  -- Your Honor, Ms. Malles filed an

14   objection that relies on an argument under 502(d).  I just want

15   to clarify for the record whether that argument -- that legal

16   argument is being withdrawn, just for purposes of the record

17   and potential appeals, because we did not address that legal

18   argument.

19           THE COURT:  I'm not sure if I follow reliance on

20   502(d), Mr. Smolinsky.  Is that your problem, that you don't

21   understand the basis --

22           MR. SMOLINSKY:  I don't understand either.

23           THE COURT:  Do you want to be heard further in any

24   way, Mr. Malles, beyond what you've already said.

25           MR. MALLES:  I originally -- I read the -- I had read

09-50026-mg    Doc 10667    Filed 08/03/11    Entered 08/09/11 10:21:53    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 47 of 54

                                                              Page 47

1    the docket that came back and I was originally under the

2    assumption I had to produce a statement of law as opposed to

3    just a -- I thought I had to try to find, you know, another

4    case that had that problem.  But I was -- I didn't -- I quoted

5    a statement out of 502(d) as opposed to 502(b), I believe,

6    which was incorrect.

7            THE COURT:  Well, I'm certainly not going to find

8    fault with any of the non-lawyers who are trying to protect

9    their interest.  I don't think you need to worry about that,

10   Mr. Malles.

11           MR. MALLES:  Well, yes, sir, I am a non-lawyer and I

12   was just trying to -- but I certainly understand -- I certainly

13   understand your ruling as to this matter.

14           THE COURT:  Okay.  Thank you, sir.

15           MR. SMOLINSKY:  Thank you for that clarification.

16           MR. MALLES:  Have a nice day.  Thank you.

17           THE COURT:  Thank you.

18           MR. SMOLINSKY:  That leaves us with  the Massey and

19   D'Amour response.  For the same arguments we believe that this

20   claim is an equity claim.

21           THE COURT:  Mr. Massey are you on the line?

22           MR. MASSEY:  Yes, I'm here, Your Honor.

23           THE COURT:  Would you like to be heard, sir?

24           MR. MASSEY:  Yes, I would.  I heard your rulings

25   today, but at the time I bought this GM stock, I bought it in

09-50026-mg   Doc 10667   Filed 08/03/11   Entered 08/09/11 10:21:53   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 48 of 54

Page 48

1    good faith.  On TV they were saying GM was not a world class

2    company and everything wasn't up to the standards of Toyota.  I

3    knew this was wrong, because I went with GM all my life, and I

4    still do.  And I knew they had a world class product and I knew

5    that it couldn't go under, so I bought some GM stock on 4/13.

6         And I really don't understand how I'm able to buy if

7    somebody knew this was going to happen.  Who ever heard of

8    stock going to zero?  And I wished for the best.  I'm still

9    driving a vehicle -- GM vehicles, and I wish there was somebody

10   who could help me but -- that's all I have to say.

11        THE COURT:  I understand.  Mr. Smolinsky, do you wish

12   to respond in any way?

13        MR. SMOLINSKY:  No, Your Honor.  Only to say that in

14   April of 2009, the company had not yet made any determination

15   to file for Chapter 11 and was still attempting to do

16   everything it could to avoid that fate.

17        THE COURT:  Um-hum.  Okay.  Well, I appreciate your

18   courtesy, Mr. Massey, and appreciate your recognition that I've

19   got to comply with the law.  And once again, I want to express

20   my understanding of the frustration and maybe even anger of the

21   stockholder community in GM.  And you've got to believe me when

22   I say that every one of these rulings makes me feel very badly.

23        But nevertheless, I've got to comply with the law, and

24   that's what I'm going to do.  So I appreciate your courtesy and

25   your understanding Mr. Massey, but I must rule the same way in

Page 49

1    your case as I did for the other stockholders.

2            And I'm going to ask you to settle an order

3    accordingly, Mr. Smolinsky.

4            Mr. Massey do you have access to the Internet?

5            MR. MASSEY:  Yes, I do.

6            THE COURT:  Okay. Then keep your eyes peeled for that

7    order.  Your time to appeal will run from the time of the

8    resulting order and not from the time of my oral ruling today.

9            MR. MASSEY:  Okay.  Thank you, Your Honor.

10           THE COURT:  Okay.  Have a good day sir.

11           MR. MASSEY:  Thank you.

12           MR. SMOLINSKY:  Your Honor, at certain times in the

13   past you've asked us to provide for longer settlement periods

14   than we would typically use.  Do you --

15           THE COURT:  Well, you're quite right, I have, Mr.

16   Smolinsky, although I've regarded those as appropriate when the

17   issues were more debatable.  If you want to do that

18   voluntarily, of course, I welcome that, but I'm not making you

19   do it.

20           MR. SMOLINSKY:  Thank you, Your Honor.  And Ryan

21   D'Amour, is he on the phone?

22           THE COURT:  I don't see him on my log, but let me ask

23   you.  Was that Dimore (ph.) or was it D'Amour?

24           MR. SMOLINSKY:  D apostrophe, capital A, M-O-U-R.

25           THE COURT:  Oh, okay.  Mr. D'Amour, are you on the

MOTORS LIQUIDATION COMPANY, ET AL.

                                                                    Page 50

1    phone?

2            No response.  Anybody on Mr. D'Amour's behalf in the

3    courtroom?

4            No response.  Go ahead, Mr. Smolinsky.

5            MR. SMOLINSKY:  I don't believe Mr. D'Amour submitted

6    a written objection.  I think it was an informal objection, so

7    we don't know what his position is, but we would ask, based on

8    Your Honor's prior rulings, that the claim be reclassified as a

9    pre-petition equity interest.

10           THE COURT:  Yes.  That request is granted.

11           MR. SMOLINSKY:  Thank you, Your Honor.  That concludes

12   the contested portion of the calendar.  There's one uncontested

13   matter.  It's the debtors' 211th omnibus objections to claim.

14   Those are tax claims assumed by General Motors LLC or New GM.

15   There is one remaining response, that's by Marion County

16   Treasurer.  They have now agreed with New GM on the amount of

17   the taxes and they have no further objection to the

18   disallowance of this claim.  And this would completely resolve

19   the 211th omnibus objection.

20           THE COURT:  Okay.  That's fine.  Does it need to be

21   papered in any way, or is it self-effectuating?

22           MR. SMOLINSKY:  Your Honor, I would like to submit an

23   order expunging that claim against the debtors.

24           THE COURT:  Okay.  See if you can agree upon a form

25   with Marion County.  And if you can't you can settle it.

MOTORS LIQUIDATION COMPANY, ET AL.

Page 51

1          MR. SMOLINSKY:  Thank you, Your Honor.  That concludes

2    today's formal agenda.

3          THE COURT:  Okay.  I got the letter on behalf of Mr.

4    Williamson's office, and I read the accompanying report, but I

5    have no questions.  So I don't think we need to spend any time

6    on that.

7          Mr. Williamson, are you on the phone, or anybody from

8    his office?  I guess it's academic.

9          Okay.  Then are we done for the day, Mr. Smolinsky?

10          MR. SMOLINSKY:  Yes, sir.

11          THE COURT:  Okay.  Everybody have a good day.  We're

12    adjourned.

13          MR. SMOLINSKY:  Thank you.

14       (Whereupon these proceedings were concluded at 11:32 AM)

15

16

17

18

19

20

21

22

23

24

25

Page 52

```
1

2                           I N D E X

3

4                           RULINGS

5                                           Page      Line

6    Debtors' objection to Mr. Radke's claim is    13        12

7    sustained.  Debtors will settle an order.

8    Debtors' objection to Mr. Spirnak's claim     17        21

9    sustained.  Debtors' will settle an order.

10   Debtors' objection to Ms. Jarusinski's claim  21        13

11   sustained.  Order will be settled.

12   Claims of Mr. Estes and Mr. Rosso are         22        6

13   expunged

14   Claims of Ms. Jarusinski and Ms.              22        21

15   Bauer-Rollandin in omnibus objection 152 are

16   expunged

17   Claim of Mr. Waters is expunged.  Order will  24        22

18   be settled.

19   Mr. Anderson's claim is expunged.  Order will 27        15

20   be settled.

21   Radke decision and the Spirnak decision are   29        6

22   incorporated by reference to all of the

23   matters on the calendar today relating to

24   omnibus objections to equity claims

25   Claim of Mr. Kendziorski is expunged.         30        18
```

Page 53

1                                RULINGS

2                                                        Page      Line

3    Claim of Mr. Knoth in Omnibus objection 176    32        3

4    expunged.

5    Claim of Mr. Kendziorski in omnibus objection  32        8

6    176 is expunged.

7    Mr. Zak's claim is denied re health benefits,  39        21

8    and continued re life insurance benefits.

9    Objection to McConnick claim is                41        1

10   granted.

11   Ms. McNutt's claim is expunged.                42        5

12   Claim of Mr. and Mrs. Gallaher expunged.       43        1

13   Claim of Ms. Malles is expunged.  Order will   45        13

14   be settled.

15   Claim of Mr. Massey is expunged.  Order will   49        2

16   be settled.

17   Mr. D'Amour's claim is reclassified as a       50        10

18   pre-petition equity interest.

19   Claim of Marion County is expunged, by         50        24

20   agreement.

21

22

23

24

25

Page 54

1

2                       C E R T I F I C A T I O N

3

4      I, Penina Wolicki, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7          Penina          Digitally signed by Penina Wolicki
                            DN: cn=Penina Wolicki, o, ou,
                            email=digital1@veritext.com,
8          Wolicki         c=US
                            Date: 2011.08.03 11:21:28 -04'00'

9      PENINA WOLICKI

10     AAERT Certified Electronic Transcriber CET**D-569

11

12     Veritext

13     200 Old Country Road

14     Suite 580

15     Mineola, NY 11501

16

17     Date:  August 3, 2011

18

19

20

21

22

23

24

25