**Hearing Date and Time:  September 26, 2011 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  September 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

Katherine Stadler
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
P.O. Box 2719
Madison, Wisconsin 53701-2719
Telephone: (608) 257-3911
Facsimile: (608) 257-0609

*Attorneys for the Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------- x
                                                          :
In re                                                     :    Chapter 11
                                                          :
MOTORS LIQUIDATION COMPANY *et al.,*      :    Case No. 09-50026 (REG)
        f/k/a General Motors Corp. *et al.,*              :    (Jointly Administered)
                                                          :
                Debtors.                                  :    Honorable Robert E. Gerber
                                                          :
--------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STIPULATED STATEMENT ON FINAL FEE**
**APPLICATION OF HONIGMAN MILLER SCHWARTZ AND COHN LLP**

**TO:   THE HONORABLE ROBERT E. GERBER**
**UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company),

appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Stipulated*

*Statement* in connection with the *Second Interim and Final Application of Honigman Miller*

*Schwartz and Cohn LLP for Allowance of Compensation for Services Rendered and*

*Reimbursement of Expenses* (the "**Initial Final Fee Application**") [Docket No. 10313] and the

*Supplement to Second Interim and Final Application of Honigman Miller Schwartz and Cohn*

*LLP  for Allowance of  Compensation for Services Rendered and Reimbursement of Expenses*

(the "**Amended Final Fee Application**") [Docket No. 10762] (collectively, the "**Final Fee**

**Application**").  With this report, the Fee Examiner identifies $1,964.32 in fees and $165.53 in

expenses, from a total of $54,539.40 requested for the period from October 1, 2009 through

March 29, 2011 (the "**Interim Period**"), that are objectionable.

## SUMMARY STATEMENT

The Final Fee Application—covering the period from the firm's *nunc pro tunc* retention

on June 1, 2009 through March 29, 2011 (the "**Final Fee Period**")—requests a total of

$52,415.25 in fees for the Interim Period and a total of $2,332,872.17 in fees for the Final Fee

Period.  On August 31, 2011, the Fee Examiner sent Honigman Miller Schwartz and Cohn LLP

("**Honigman Miller**") a draft of this report and, on September 1, 2011, the parties reached a

consensual resolution.  This table summarizes the amounts Honigman Miller has requested and

the amounts allowed, to date, in these proceedings:

| Fee Application | Fees Requested | Interim Fees Disallowed | Interim Fees Approved or Recommended | Fees Held Back | Expenses Requested | Interim Expenses Disallowed or Recommended | Interim Expenses Allowed or Recommended |
|---|---|---|---|---|---|---|---|
| **First Fee Application** (06/01/2009 to 09/30/2009) | $2,297,160.00 | $16,703.08 | $2,280,456.92 | $228,045.69 | $16,799.46 | $569.01 | $16,230.45 |
| **Interim Period** (10/01/2009 to 03/29/2011) | $52,415.25 | $1,964.32[1] | $50,450.93[2] | $21,707.85[3] | $2,124.15 | $165.53[1] | $1,958.62[2] |
| **TOTALS:** | **$2,349,575.25** | **$18,667.40** | **$2,330,907.85** | **$249,753.54** | **$18,923.61** | **$ 734.54** | **$18,189.07** |

Honigman Miller was primarily retained—and served—as the Debtors' counsel in

connection with the management of the Debtors' vendor relationships and completed nearly all

---

[1] Stipulated reduction.

[2] Proposed/pending.

[3] Calculated as 20 percent of Honigman Miller's requested compensation of $108,539.25 in the Initial Final Fee Application.

of the substantive work it had performed for the Debtors by July 9, 2009. *See* Final Fee

Application at 2 and ¶ 28. Accordingly, Honigman Miller has not filed any other interim fee

applications and, instead, its final fee application includes a combined request for compensation

for services rendered and expenses incurred for all interim periods from October 1, 2009 through

March 29, 2011.[4]

The Fee Examiner notes that Honigman Miller does not identify the amounts of

compensation—if any—it has received or which remains unpaid pursuant to the *Order Pursuant*

*to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and*

*Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**").

### BACKGROUND

1.     Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates

("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. On

August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket

Nos. 6829 and 6830].[5] The Plan was confirmed on March 29, 2011 [Docket No. 9941] (the

"**Confirmation Date**") with an effective date of March 31, 2011.

2.     On November 16, 2009, Honigman Miller filed its *First Application of Honigman*

*Miller Schwartz and Cohn LLP as Special Counsel for the Debtors, for Interim Allowance of*

*Compensation for Professional Services Rendered and Reimbursement of Actual and Necessary*

*Expenses Incurred from June 1, 2009 Through September 30, 2009* [Docket No. 4446] (the

---

[4] The Final Fee Application also includes a request for compensation and reimbursement for some services and expenses incurred during the first interim period—June 1, 2009 through September 30, 2009—for services segregated to four matter numbers: 126286, 64485, 106633 and 125380. In response to the Fee Examiner's inquiry, Honigman has confirmed that these fees are not duplicative and properly billed to Motors Liquidation Company rather than new GM.

[5] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

"**First Fee Application**") seeking fees in the amount of $2,297,160 in fees and $16,799.46 in expenses.

3.        On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of Honigman Miller Schwartz and Cohn LLP* (the "**First Limited Objection**") [Docket No. 5544].  That report is incorporated by reference.

4.        On May 21, 2010, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by Honigman Miller.  *Order Granting Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 Through September 30, 2009* (the "**First Omnibus Order**") [Docket No. 5834].  Through the First Omnibus Order, the Court approved Honigman Miller's First Fee Application authorizing payment of $2,052,411.23 in fees and $16,230.45 in expenses.

5.        On May 23, 2011, Honigman Miller filed the Initial Final Fee Application seeking fees in the amount of $108,539.25 and expenses of $4,661.97.  In response to an inquiry from the Fee Examiner, on August 29, 2011, it filed the Amended Final Fee Application reducing its compensation request to $52,415.25 in fees and $2,124.15 in expenses for the Interim Period due to a billing error.  Pursuant to the Amended Fee Application, Honigman Miller is seeking an aggregate of $2,332,872.17 in fees for the Final Fee Period.

## APPLICABLE STANDARDS

6.        The Final Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement*

*of Expenses Filed Under 11 U.S.C. 330*, 28 C.F.R. Part 58, Appendix A (2010) (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order—including the extent, if any, to which variation has been expressly permitted by order.

7.      On May 4, 2011, the Fee Examiner sent a memorandum to all Retained Professionals that had filed interim applications summarizing the Court's prior rulings on compensation issues and a second memorandum addressing the final fee application process of which this report is a concluding part.

8.      On July 25, 2011, the Fee Examiner filed a *Final Fee Applications – Status Report* [Docket No. 10617], providing additional comments on the final fee review process.

9.      In applying this Court's rulings to the fee applications for the Interim Period and, with respect to that period, the Final Fee Period, the Fee Examiner established a recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

A.      The Fee Examiner does not object to the lesser of: either (i) the first $10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total compensation requested in the pending fee application, whichever is smaller.[6]

B.      For professionals whose applications contain requests for compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner reviewed the time detail, all communications with the professional, the nature of the inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the relative

---

[6] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000. For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

magnitude of the deficiencies in comparison to each other and to the professional's

overall fee request (past and present), and whether the professional "substantially

prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee raised.  On the

basis of this review, the Fee Examiner has calculated a suggested disallowance, ranging

from zero to 50 percent for professionals requesting compensation for Fee Inquiry Time.

**COMMENTS**

**Interim Period**.

10.       **Billing Rates**.  Honigman Miller raised its rates for certain timekeepers during the

Final Fee Period.  On August 5, 2011 the Fee Examiner filed the *Fee Examiner's Limited*

*Objection to Hourly Rate Increases* [Docket No. 10660].  As part of his analysis into rate

increases in these cases, the Fee Examiner's auditor calculates the value of Honigman Miller's

increases to be $616.25.  This *de minimus* amount does not reflect Honigman Miller's reduction

pursuant to the Amended Final Fee Application of $56,124 to address a billing error.  The Fee

Examiner notes, however, that Honigman Miller voluntarily reduced its rates for services in

these cases by five percent—*see* Final Fee Application, ¶ 19—more than offsetting the value of

any rate increases.

*Suggested disallowance for project staffing and billing rates:  none.*

11.       **Vague Tasks and Communications**.  The Fee Examiner has identified entries

that fail to comply with the UST Guidelines.  Specifically, "[t]ime entries for telephone calls,

letters, and other communications should give sufficient detail to identify the parties to and the

nature of the communication."  UST Guidelines at (b)(4)(v).  All time entries must be

sufficiently detailed to allow a party reviewing them to evaluate their reasonableness.

*Agreed disallowance for vague time entries:  $39.38 (15 percent).*

6

12.     **Block Billing**.  Block billing is prohibited by the UST Guidelines.  Time entries

for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent

on each discrete task.  The Fee Examiner identified entries by Honigman Miller professionals,

totaling $5,316.25, that do not comply with this guideline.[7]

*Agreed disallowance for block billing:  $797.44 (15 percent).*

13.     **Invoicing Services**.  Pursuant to this Court's July 6, 2010 decision on

compensation for invoice review, such services are compensable at only half the timekeeper's

standard billing rate.[8]  The Fee Examiner identified $2,255.00 in unreduced services related to

invoice review.

*Agreed disallowance for invoicing services:  $1,127.50 (50 percent).*

14.     **Substantive Services Provided Post Sale Confirmation**.  Honigman Miller was

retained to counsel the Debtors with the management of its vendors and supply chain and

services to the Debtors were largely concluded after July 9, 2010—the date of the sale

confirmation.  Final Fee Application, ¶¶ 27, 28.  In particular, Honigman Miller reported that

following that date, its primary services on behalf of the Debtors would be paid by new GM.  *Id.*

¶ 28.

15.     Through the Final Fee Application, Honigman Miller requests compensation for

at least $17,619.75 in substantive services provided after July 9, 2010 and including services

---

[7] The Fee Examiner notes that Honigman Miller's fee request varies the billing rate for certain timekeepers, without explanation.  The rates noted in each exhibit attached to this report are the rates identified by Honigman Miller in its fee detail.

[8] Since that decision, the issue has been addressed by at least one other court in a published decision, which took a slightly different approach.  *See*, *e.g.*, *In re Mesa Air Group, Inc.*, 449 B.R. 441, 446 (Bankr. S.D.N.Y. 2011) (citing *In re CCT Commc'ns, Inc.*, No. 07-10210, 2010 WL 3386947, *9 (Bankr. S.D.N.Y. Aug. 24, 2010)).  "[T]he review and editing of time records—as opposed to fee applications—is not compensable."  *In re Mesa*, 449 B.R. at 445 (citation and internal punctuation omitted).

provided during the first interim period.  Honigman Miller has confirmed to the Fee Examiner

that such services are properly billed to Motors Liquidation Company and not new GM.

*Suggested disallowance post confirmation services:  none.*

16.      **Fee Inquiry Time**.  Honigman Miller failed to identify the amount of time it

spent corresponding with the Fee Examiner and his counsel or responding to his concerns.  The

Fee Examiner calculates that the firm requests at least $2,749.00 in Fee Inquiry Time, which is

within the safe harbor.

*Suggested disallowance for fee inquiry time:  none.*

17.      **Retainer**.  Honigman Miller reports that it continues to hold $314,547.40 in trust

for the Debtors in a pre-petition retainer.  Final Fee Application, Exhibit G.  Honigman Miller

seeks authorization to apply the retainer against $965.00 in unpaid pre-retention fees for services

performed for Motors Enterprises, Inc.; the firm's post-retention services for this entity were

paid for by the Debtors during the Final Fee Period.  Honigman Miller did not provide any

explanation for the delay in identifying the unpaid service.

*Honigman Miller should apply the retainer against the unpaid fees and expenses,
promptly returning the balance to the Debtors.*

18.      **Expenses**.  Honigman Miller requests compensation for two travel related

expenses related to the April 29 interim fee hearing.  Upon review, the Fee Examiner concludes

that the meal request exceeds the $20.00 per person per meal cap and the second expense does

not contain sufficient detail to determine its compensability.

*Agreed disallowance for excessive or unexplained travel expenses:  $165.53.*

**Final Fee Period**

19.      **Previous Reductions**.  Honigman Miller filed only one interim fee application in

these cases.  In his review of that application, the Fee Examiner identified several areas of

concern, including summer associate services and unproductive travel time.  The Fee Examiner

has reviewed, again, the areas of concern highlighted in the First Limited Objection in light of all

the services provided by the professional in these cases and does not recommend that any

adjustment to the previously awarded fees is warranted.


> *Total fees suggested for disallowance:  $1,964.32.*
>
> *Total expenses suggested for disallowance:  $165.53.*
>
> *Total Fees and Expenses Suggested for Disallowance:  $2,129.85.*


## CONCLUSION

This *Report and Stipulated Statement* is intended to advise the Court, interested parties,

and the U.S. Trustee of the basis for the limited objection to the Final Fee Application.  All

professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee

Examiner has made every effort to apply standards uniformly across the universe of

professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Stipulated*

*Statement* on the Final Fee Application.

Dated: Madison, Wisconsin
       September 10, 2011.

GODFREY & KAHN, S.C.

By:        */s/ Katherine Stadler*
            Katherine Stadler

            GODFREY & KAHN, S.C.
            One East Main Street, Suite 500
            P.O. Box 2719
            Madison, Wisconsin 53701-2719
            Telephone: (608) 257-3911
            Facsimile: (608) 257-0609
            E-mail: kstadler@gklaw.com

            *Attorneys for the Fee Examiner*

6804831_1

10