**Hearing Date and Time: September 26, 2011 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time: September 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for the Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------- x
                                                           :
In re:                                                     :    Chapter 11
                                                           :
MOTORS LIQUIDATION COMPANY, *et al.,*                      :    Case No. 09-50026
    f/k/a General Motors Corp., *et al.,*          :    (Jointly Administered)
                                                           :
                       Debtors.   :    Honorable Robert E. Gerber
                                                           :
---------------------------------------------------------- x

**FEE EXAMINER'S REPORT AND STATEMENT OF LIMITED OBJECTION TO**
**FIFTH INTERIM AND FINAL FEE APPLICATION OF FTI CONSULTING, INC.**

# **TABLE OF CONTENTS**

**Page**

SUMMARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................ 3

APPLICABLE STANDARDS ........................................................................................... 7

COMMENTS ...................................................................................................................... 8

Current Interim Periods ...................................................................................................... 8

      Compensation Structure ........................................................................................ 8

      Scope of Work ....................................................................................................... 9

      Project Categories ................................................................................................ 10

      Multiple Attendees .............................................................................................. 10

      Vague Communications ...................................................................................... 10

      Block Billing ....................................................................................................... 11

      Clerical and Administrative ................................................................................ 11

      Fee Applications and Fee Examiner Issues ....................................................... 11

      Expenses ............................................................................................................. 12

The Completion Fee .......................................................................................................... 12

Final Fee Period ................................................................................................................ 13

      Previous Reductions ........................................................................................... 13

      Carve Out Amounts ............................................................................................ 14

      Services Provided Outside of the Final Fee Period ........................................... 14

CONCLUSION .................................................................................................................. 15

# **TABLE OF AUTHORITIES**

*Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) .................................................................................................. 7

*Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A .............................. 7, 11

**TO: THE HONORABLE ROBERT E. GERBER**
**UNITED STATES BANKRUPTCY JUDGE**

FTI CONSULTING, INC. ("**FTI**") HAS RECEIVED A FIXED MONTHLY FEE FOR ITS SERVICES FOR THE CREDITORS' COMMITTEE. THIS *REPORT AND STATEMENT OF LIMITED OBJECTION* IS INTENDED TO ADDRESS THE CONCERNS THAT HAVE SPANNED THE COURSE OF THIS PROCEEDING AND NOW COME TO THE COURT'S ATTENTION IN CONNECTION WITH FTI'S FINAL FEE APPLICATION. ALTHOUGH INTERIM REPORTS ALSO CALLED ATTENTION TO EXPENSES THAT DID NOT COMPLY WITH THE APPLICABLE RULES AND GUIDELINES, THE FEE EXAMINER HAD NOT ASKED AND DOES NOT ASK FOR ANY INTERIM REDUCTIONS IN FTI'S COMPENSATION.

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Report and Statement of Limited Objection* in connection with the *Final Application of FTI Consulting, Inc. (I) for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period from October 1, 2010 Through March 29, 2011 and (II) for Final Approval of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period from June 3, 2009 Through March 29, 2011* [Docket No. 10265] (the "**Final Fee Application**"). With this report, the Fee Examiner identifies $41,140.17 in objectionable fees and expenses, from a total of $8,019,005.37 requested, for the periods from October 1, 2010 through March 29, 2011 (the "**Current Interim Periods**"). In light of FTI's fixed monthly fee arrangement, however, the Fee Examiner does not recommend any deduction. Included in FTI's request is a $5,000,000.00 Completion Fee (the "**Completion Fee**").

**SUMMARY STATEMENT**

In general, the Final Fee Application—covering the period from the firm's retention on June 3, 2009 through March 29, 2011 (the "**Final Fee Period**"), appears substantively sound.

On September 2, 2011, the Fee Examiner sent FTI Consulting, Inc. ("**FTI**"), a draft of this final *Report and Statement of Limited Objection* and, on September 7, 2011, the parties reached a consensual resolution. This table summarizes the amounts FTI has requested and the amounts allowed, to date, for these proceedings:

| Fee Application | Fees Requested | Interim Fees Disallowed | Interim Fees Approved or Recommended | Fees Held Back | Expenses Requested | Interim Expenses Disallowed or Recommended | Interim Expenses Allowed or Recommended |
|---|---|---|---|---|---|---|---|
| **First Fee Application** (06/03/2009 to 09/30/2009) | $4,435,036.25 | $0.00 | $4,435,036.25 | $443,503.63 | $74,500.84 | $1,252.51 | $73,248.33 |
| **Second Fee Application** (10/01/2009 to 01/31/2010) | $2,066,666.00 | $0.00 | $2,066,666.00 | $206,666.60 | $18,756.18 | $67.95 | $18,688.23 |
| **Third Fee Application** (02/01/2010 to 05/31/2010) | $2,000,000.00 | $23,177.44 | $1,976,822.56 | $197,682.26 | $11,713.21 | $768.33 | $10,944.88 |
| **Fourth Fee Application** (06/01/2010 to 09/30/2010) | $2,000,000.00 | $0.00 | $2,000,000.00 | $200,000.00 | $4,827.53 | $0.00 | $4,827.53 |
| **Current Interim Periods** (10/01/2010 to 03/29/2011) | $7,993,423.00[1] | $0.00 | $7,993,423.00 | $598,684.60 | $25,582.37 | $0.00 | $25,582.37 |

---

[1] Includes Completion Fee of $5,000,000.

2

| Fee Application | Fees Requested | Interim Fees Disallowed | Interim Fees Approved or Recommended | Fees Held Back | Expenses Requested | Interim Expenses Disallowed or Recommended | Interim Expenses Allowed or Recommended |
|---|---|---|---|---|---|---|---|
| **Final Fee Period** (06/03/2010 to 03/29/2011) | N/A | $25,681.13[2]<br><br>($23,177.44)[3] | ($25,681.13)[2]<br><br>$23,177.44[3] | N/A | N/A | N/A | N/A |
| **TOTALS:** | $18,495,125.25 | $25,681.13 | $18,469,444.12 | $1,646,537.09 | $135,380.13 | $2,088.79 | $133,291.34 |

FTI was retained as the Financial Advisor to the Committee of Unsecured Creditors. Throughout these proceedings, FTI generally submitted applications consistent with the letter and spirit of the Bankruptcy Code, the U.S. Trustee Guidelines, and the decisions and rules of the Southern District of New York. When asked about entries or practices, it responded promptly.

## BACKGROUND

1. Commencing on June 1, 2009, General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the Bankruptcy Code. On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].[4] The Plan was confirmed on March 29, 2011.

2. On November 16, 2009, FTI filed the *First Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period June 3, 2009 Through September 30, 2009* [Docket No. 4455] (the "**First Fee Application**"), seeking fees and expenses in the amount of $4,509,537.09.

---

[2] Proposed/pending.

[3] The Third Omnibus Order includes an agreed carve-out of $23,177.44 related to compensation for the fee review process, which may now be paid. *See* ¶ 34, below.

[4] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

3

3. On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the First Interim Fee Application of FTI Consulting, Inc.* [Docket No. 5557] (the "**First Objection**"), identifying $191,972.53 in fees and expenses that were objectionable. That report is incorporated by reference.

4. On April 29, 2010, this Court issued an oral ruling that granted FTI's First Fee Application in part but required a continued holdback of 10 percent of FTI's requested fees. On May 21, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered its *Order Granting Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 Through September 30, 2009* [Docket No. 5834] (the "**Omnibus Order**"), approving a series of interim fee applications, including the application submitted by FTI. The Omnibus Order authorized payment to FTI of $4,435,036.25 for fees and $73,248.33 for expenses.

5. On March 16, 2010, FTI filed the *Second Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period October 1, 2009 Through January 31, 2010* [Docket No. 5279] (the "**Second Fee Application**"), seeking fees in the amount of $2,066,666.00 and expenses in the amount of $18,756.18 for total requested compensation of $2,085,422.18.

6. On June 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Second Interim Fee Application of FTI Consulting, Inc.* [Docket No. 6082] (the "**Second Objection**"), identifying $173,990.82 in fees and expenses that were objectionable. That report is incorporated by reference.

7. On July 6, 2010, this Court issued an oral ruling that granted FTI's Second Fee Application in part but required a continued holdback of 10 percent of FTI's requested fees. On

July 22, 2010, in accordance with the specific findings made by the Court in its bench ruling, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by FTI. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 Through January 31, 2010 and (II) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2009 Through September 30, 2009* [Docket No. 6402] (the "**Second Omnibus Order**"). The Second Omnibus Order authorized payment to FTI of $2,066,666.00 for fees and $18,688.23 for expenses.

8. On August 5, 2010, FTI filed the *Third Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period February 1, 2010 Through May 31, 2010* [Docket No. 6536] (the "**Third Fee Application**"), seeking fees in the amount of $2,000,000.00 and expenses of $11,713.21 for total requested compensation of $2,011,713.21.

9. On October 19, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Third Interim Fee Application of FTI Consulting, Inc.* [Docket No. 7419] (the "**Third Objection**"), identifying $72,888.29 in fees and expenses that were objectionable. That report is incorporated by reference.

10. On November 24, 2010, the Court entered an omnibus order approving a series of interim fee applications for the period from February 1, 2010 through May 31, 2010 (the "**Third Interim Period**"), including the application submitted by FTI. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from February 1, 2010 Through May 31, 2010 and (II) the Application of*

5

*LFR, Inc. for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from October 1, 2009 Through January 31, 2010* [Docket No. 7910] (the "**Third Omnibus Order**"). Through that order, the Court approved FTI's Third Fee Application in the amount of $1,976,822.56 in fees and $10,944.88 in expenses and provided for an agreed "carve-out" of $23,177.44, pending resolution of a disputed fee issue (the "**Carve Out**").

11. On November 15, 2010, FTI filed the *Fourth Interim Application of FTI Consulting, Inc. for Allowance of Compensation and for Reimbursement of Expenses for Services Rendered in the Case for the Period June 1, 2010 Through September 30, 2010* [Docket No. 7775] (the "**Fourth Fee Application**"), seeking fees in the amount of $2,000,000.00 and expenses in the amount of $4,827.53 for total requested compensation of $2,004,827.53.

12. On December 8, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to Fourth Interim Fee Application of FTI Consulting, Inc.* [Docket No. 8041] (the "**Fourth Objection**"), identifying $36,178.19 in fees and expenses that were objectionable. That report is incorporated by reference.

13. On December 23, 2010, the Court entered an omnibus order approving a series of interim fee applications, including the application submitted by FTI. *Order Granting (I) Applications for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from June 1, 2010 Through September 30, 2010 and (II) the Application of LFR, Inc. for Allowance of Interim Compensation for Professional Services Rendered and Reimbursement of Expenses Incurred from February 1, 2010 Through May 31, 2010* [Docket No. 8289] (the "**Fourth Omnibus Order**"). Through that order, the

6

Court approved FTI's Fourth Fee Application in the amount of $2,000,000.00 in fees and $4,827.53 in expenses.

14. On May 16, 2011, FTI filed its Final Fee Application, seeking fees in the amount of $2,993,423.00 and expenses of $25,582.37, plus a $5,000,000.00 Completion Fee, for total requested compensation of $8,019,005.37 for the Current Interim Periods. For these entire proceedings, FTI has requested $18,495,125.25 in fees and $135,380.13 in expenses.

## APPLICABLE STANDARDS

15. The Final Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order—including the extent, if any, to which variation has been expressly permitted by order.

16. On May 4, 2011, the Fee Examiner sent a memorandum to all Retained Professionals that had filed interim applications summarizing the Court's prior rulings on compensation issues and a second memorandum addressing the final fee application process of which this report is a concluding part.

17. On July 25, 2011, the Fee Examiner filed a *Final Fee Applications – Status Report* [Docket No. 10617], providing additional comments on the final fee review process.

18. In applying this Court's rulings to the fee applications for the Current Interim Periods and, with respect to that period, the Final Fee Period, the Fee Examiner established a

7

recommended "safe harbor" for fees related to Fee Examiner and U.S. Trustee inquiries and objections ("**Fee Inquiry Time**").

      A.    The Fee Examiner does not object to the lesser of: either (i) the first $10,000 of Fee Inquiry Time or (ii) Fee Inquiry Time calculated as 20 percent of the total compensation requested in the pending fee application, whichever is smaller.[5]

      B.    For professionals whose applications contain requests for compensation for "fees on fees" beyond the amount of this safe harbor, the Fee Examiner has reviewed the time detail, all communications with the professional, the nature of the inquiry or deficiencies raised in the Fee Examiner's or U.S. Trustee's objection, the relative magnitude of the deficiencies in comparison to each other and to the professional's overall fee request (past and present), and whether the professional "substantially prevailed" on each inquiry or deficiency the Fee Examiner or U.S. Trustee raised. On the basis of this review, the Fee Examiner has calculated a suggested disallowance, ranging from zero to 50 percent for professionals requesting compensation for Fee Inquiry Time.

## COMMENTS

**Current Interim Periods**

19.    **Compensation Structure**. FTI's compensation structure, approved in an *Order Authorizing the Employment and Retention of FTI Consulting, Inc., as Financial Advisor to the Official Committee of Unsecured Creditors, Effective as of June 3, 2009* [Docket No. 3829] (the "**Retention Order**"), provides for payment of a $500,000 fixed fee (the "**Monthly Fixed Fee**") for each month of service during the defined "Compensation Period." During the Monthly Fixed Fee period, FTI was required to maintain time records only in half hour increments. In addition

---

[5] In other words, the safe harbor for Fee Inquiry Time spent in connection with any application where total compensation exceeds $50,000 will be $10,000. For any application where that compensation is less than $50,000, the safe harbor will be 20 percent of the total compensation requested.

8

to the Monthly Fixed Fee, FTI is entitled to receive reimbursement of reasonable, actual, and necessary expenses. For the purposes of calculating potential disallowances, the Fee Examiner has used FTI's blended rate from its First Fee Application of $588.26 (the "**Blended Rate**").[6]

One accepted approach to evaluating a flat fee for reasonableness is to divide the flat fee by the hours of service provided for the flat fee period. During the period of time covered by the Monthly Fixed Fee in the First Fee Application, this calculation yielded $475.46 an hour. In the Second and Third Fee Application, this calculation yielded $588.21 and $677.83, respectively, and in the Fourth and Final Fee Applications, this calculation yielded $617.19 and $631.87, respectively, if no disallowances occurred.

20.     **Scope of Work**. FTI has been the financial consultant for the Committee of Unsecured Creditors (the "**Creditors' Committee**"), working on a Monthly Fixed Fee for the vast majority of its representation of the Creditors' Committee. Previously, the Fee Examiner expressed concerns about the scope of the work to be performed by FTI in light of the Creditors' Committee's defined statutory role and the unique nature of this proceeding. *See* Second Objection, ¶ 13; Third Objection, ¶¶ 16-17; and, Fourth Objection, ¶¶ 22-23.

21.     In connection with the Second and Third Fee Applications, for example, the Fee Examiner noted FTI's focus on understanding GM sales programs, marketing campaigns, current operating results, and wind down monitoring. This concern continued in the Fourth Fee Application and the Final Fee Application as 167.3 and 192.1 hours, respectively, were spent on operating results and events—all for "New GM." In total, 386.3 and 460.4 hours were billed to valuation and related matters, and 436.9 and 387.2 hours were described as "wind down" monitoring.

---

[6] FTI was engaged on an hourly basis between June 3 and July 10, 2009. *See* Second Fee Application at ¶ 8.

9

FTI elaborates on the need for these services as follows:

- At the request of the Committee, FTI undertook a very detailed analysis of New GM's financial information and other IPO related issues to enable the Committee to make an informed decision on whether to execute tag-along rights. In addition, FTI reviewed and analyzed New GM's operating results and market performance.

- FTI reviewed and analyzed New GM's public filings of financial statements and other financial updates from underwriters and other parties to assess the implications for the IPO process.

- FTI reviewed the Debtors' preliminary business plans and viability plans in order to identify issues critical to unsecured creditors as future equity owners. Using in-house experts, FTI researched industry reports and macro-economic factors impacting the Debtors' business plan. Moreover, FTI analyzed the Debtors' projections relating to business volume and mix, cash flows and cost structure in order to assess and evaluate the Debtors' underlying assumptions made in developing their business plan.

*These services were provided at the request of the Creditors' Committee and were described as a necessary part of the continuing effort to value the assets available for distribution to the unsecured creditors*

*Suggested disallowance: none—in light of the fixed fee nature of the assignment.*

22. **Project Categories**. The project categories utilized by FTI do not include a category for administrative matters as required by the UST Guidelines at section (b)(4)(i). The utilization of these categories facilitates the Court's review. This issue was raised by the Fee Examiner in the Third Objection and the Fourth Objection.

23. **Multiple Attendees.** The number of FTI professionals attending a single meeting or telephone conference continued to decline although multiple attendance remains a concern.

*Suggested disallowance for multiple attendees: none—in light of the fixed fee nature of the assignment.*

24. **Vague Communications.** The Fee Examiner has identified a few specific billing entries that fail to comply with the UST Guidelines. Specifically, "[t]ime entries for telephone calls, letters, and other communications should give sufficient detail to identify the parties to and

10

the nature of the communication." UST Guidelines at section (b)(4)(v). Calls regarding "case status" and "case issues" fail to comply with the UST Guidelines.

*Reasonable disallowance for vague communications: $635.32; however, none requested in light of the fixed fee nature of the assignment.*

25. **Block Billing**. Block billing is prohibited by the UST Guidelines at section (b)(4)(v). "Services should be noted in detail and not combined or 'lumped' together, with each service showing a separate time entry." *Id*. Time entries for multiple tasks in excess of 0.5 hours in aggregate time must identify the amount of time spent on each discrete task. The Fee Examiner identified four entries by FTI professionals that do not comply with this guideline.

*Reasonable disallowance for block billing: $547.08; however, none requested in light of the fixed fee nature of the assignment.*

26. **Clerical and Administrative**. FTI professionals billed 18.3 hours for clerical or administrative services that might more appropriately be charged at a lower billing rate.

*Reasonable disallowance for clerical and administrative tasks: $5,294.34; however, none requested in light of the fixed fee nature of the assignment.*

27. **Fee Applications and Fee Examiner Issues.** FTI reports 34.9 billable hours, representing $20,530.27 in fees at the Blended Rate, billed for Project Code 33, "Response to Fee Examiner." In addition, 199.9 billable hours, representing $117,593.17 at the Blended Rate, were expended on Project Code 24, "Preparation of Fee Application." Many entries in Project Code 24 related to responding to the Fee Examiner.

28. Fees for reviewing bills are compensable at only 50 percent, whereas fees for preparing the fee application itself are compensable at 100 percent. Accordingly, professionals long have been encouraged to segregate in the fee application or time detail the different types of fee application services into appropriate categories. The failure to self-segregate the fees renders the fee review process less efficient.

11

29. Having reviewed the time detail, the Fee Examiner suggests a 25 percent reduction for preparation of the fee application because it appears that approximately half of the time spent relates to the fee application process. Additionally, the amount of $20,530.27 for responding to the Fee Examiner fall outside the $10,000 safe harbor, and $10,530.27 is, therefore, not compensable.

*Reasonable disallowance for fee related services: $34,663.43; however, none requested in light of the fixed fee nature of the assignment.*

30. **Expenses.** FTI's requested expense reimbursements are generally documented and appear to be unobjectionable. *See* Final Fee Application, Exhibit K.

*Agreed disallowance for expenses: none.*

*Total disallowance of fees: none—in light of the fixed fee nature of the assignment.*

*Total suggested disallowance of expenses: none.*

*Total agreed disallowance of fees and expenses: none.*

**The Completion Fee**

31. The Retention Order provides that FTI will be paid a completion fee of $5.0 million (the "**Completion Fee**") upon the successful wind down of the Debtors' estates. The Completion Fee is payable in two parts: (a) $2.5 million upon confirmation of a plan of liquidation, and (b) $2.5 million upon receipt by the unsecured creditors of not less than 70 percent of the equity and warrants received by Debtors as proceeds from the section 363 sale.

32. The plan was confirmed on March 29, 2011, and the initial distribution to unsecured creditors of more than 75 percent of the stock and warrants owned by Debtors was

12

completed on April 21, 2011. Based on the achievement of these objective criteria, set out in the approved Retention Order, the Completion Fee, subject to Court approval, can be paid.

**Final Fee Period**

33. **Previous Reductions**. In his review of this and all prior fee applications, the Fee Examiner has identified block billing, vague time entries, time spent reviewing fee detail, and other specific areas of concern. Most Retained Professionals remedied these concerns or reached agreement with the Fee Examiner on an appropriate reduction. Because of its fixed fee arrangement, FTI did not agree to such reductions and the Court did not order any. FTI's prior fee applications have been the subject of the following suggested reductions of fees:

| | |
|---|---|
| Retention and Compensation Matters: | $188,831.46 |
| Multiple Attendees: | $ 79,232.79 |
| Billing for Compensation Matters: | $ 46,207.82 |
| Fee Application Services: | $ 20,206.73 |
| Fee Review Process: | $ 73,194.45 |
| Clerical and Administrative Tasks: | $ 31,177.78 |
| Vague Communications: | $ 31,093.37 |
| Vague Tasks: | $      829.37 |

The Fee Examiner did not anticipate that the suggested disallowances would result in a reduction of the Monthly Fixed Fee. It is appropriate, however, to consider this analysis in connection with FTI's Final Fee Application and an evaluation of the reasonableness of the requested fees.

For the Final Fee Period, before taking into account any suggested disallowances, FTI's average hourly rate was $600.21 (excluding the Completion Fee). This rate appears reasonable. The Fee Examiner does not contest the award of the flat fee to FTI in accordance with the Retention Order.

13

34. **Carve Out Amounts**. During these proceedings, FTI and the Fee Examiner agreed to the $23,177.44 Carve Out for fees incurred for the fee review and fee inquiry process as requested in the Third Fee Application. *See* Third Omnibus Order. Because the Fee Examiner is not contesting FTI's flat fee retention, the Carve Out can now be paid, subject to Court approval.

35. **Services Provided Outside of the Final Fee Period**. FTI has requested compensation totaling $25,681.13 for services provided outside the Final Fee Period.[7] Pursuant to the confirmed plan, the Post-Confirmation Debtors will be responsible for fees and disbursements after March 29, 2011. *See generally* sections 2.2, 7.1(a), 9.2, 11.1(h) and 12.7(a), Debtors' Second Amended Joint Chapter 11 Plan. That should include the time reasonably spent preparing a final fee application and subsequent discussions and hearings involving the applications (unless contested). The Fee Examiner objects to the payment of any such fees as part of the final fee application process and FTI has agreed to withdraw its request for compensation for services provided outside of the Final Fee Period from its Final Fee Application and to seek compensation for these services from the Post-Confirmation Debtors.

*Agreed disallowance for services provided after the Final Fee Period: $25,681.13.*

***Total agreed disallowance of expenses for Final Fee Period: $2,088.79.***
***Total agreed disallowance of fees for Final Fee Period: $25,681.13.***
***Total suggested disallowance of fees and expenses: $27,769.92.***

---

[7] FTI requests $493,423.00 for the 29 days of March, 2011 and "professional services … incurred in April and May 2011 related to the preparation of the March fee statement and this final fee application." Final Fee Application, ¶ 1. Fees for March 2011 should be $467,741.87, when pro-rated for 29 days.

14

## CONCLUSION

This *Report and Statement of Limited Objection* is intended to advise the Court, interested parties, and the U.S. Trustee of the basis for objection to the Final Fee Application. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Final Fee Application.

Dated: Milwaukee, Wisconsin
September 12, 2011.

GODFREY & KAHN, S.C.

By:     */s/ Carla O. Andres*
Carla O. Andres
Timothy F. Nixon

GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198
E-mail: candres@gklaw.com
tnixon@gklaw.com

*Attorneys for the Fee Examiner*

6420781_9