**Hearing Date and Time:  September 26, 2011 at 9:45 a.m. (Prevailing Eastern Time)**
**Objection Date and Time:  September 12, 2011 at 4:00 p.m. (Prevailing Eastern Time)**

Timothy F. Nixon
Carla O. Andres (*Pro Hac Vice*)
GODFREY & KAHN, S.C.
780 North Water Street
Milwaukee, Wisconsin 53202
Telephone: (414) 273-3500
Facsimile: (414) 273-5198

*Attorneys for the Fee Examiner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.,* | Case No. 09-50026 |
| f/k/a General Motors Corp., *et al.,* | (Jointly Administered) |
| Debtors. | Honorable Robert E. Gerber |

**FEE EXAMINER'S SECOND REPORT AND STATEMENT OF LIMITED OBJECTION TO FIRST AND FINAL FEE APPLICATION OF EVERCORE GROUP, L.L.C.**


# **TABLE OF CONTENTS**

Page

SUMMARY STATEMENT ................................................................................................ 1

BACKGROUND ................................................................................................................. 1

APPLICABLE STANDARDS ............................................................................................ 6

THE SECTION 363 SALE AND DIP FINANCING ......................................................... 6

COMMENTS ....................................................................................................................... 7

    Prepetition Payments ............................................................................................. 7

    Monthly Fees ......................................................................................................... 7

    The NewCo Transaction Fee ................................................................................. 7

    Expenses ................................................................................................................ 9

CONCLUSION .................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page**

## **CASES**

*In re DPH Holdings Corp. et al.,* No. 05-44481 (Bankr. S.D.N.Y. 2010) ..................................... 4

*In re XO Commc'ns, Inc.*, 398 B.R. 106 (Bankr. S.D.N.Y. 2008)............................................. 8, 9

*In re Yablon*, 136 B.R. 88 (Bankr. S.D.N.Y. 1992) ....................................................................... 8

## **OTHER AUTHORITIES**

*Amended Guidelines for Fees and Disbursements for Professionals in Southern
    District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr.
    S.D.N.Y. Nov. 25, 2009) ....................................................................................... 6, 9, 10

Bankruptcy Code, Section 328(a) ................................................................................................ 8

Bankruptcy Code, Section 330(a) ................................................................................................ 8

Bankruptcy Code, Section 363 .................................................................................................... 6

*Guidelines for Reviewing Applications for Compensation and Reimbursement of
    Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A.............................. 6, 10

**TO:  THE HONORABLE ROBERT E. GERBER**
        **UNITED STATES BANKRUPTCY JUDGE**

The Fee Examiner of General Motors Corporation (n/k/a Motors Liquidation Company), appointed on December 23, 2009 (the "**Fee Examiner**"), submits this *Second Report and Statement of Limited Objection* in connection with the *First and Final Application of Evercore Group, L.L.C. for Compensation and Reimbursement of Expenses* [Docket No. 4453] (the "**Final Fee Application**").  For these proceedings altogether, the Fee Examiner does not contest an award of $16,029,032.00 in fees and $1,878.28 in expenses for the period from the firm's retention on June 1, 2009 through July 10, 2009 (the "**Final Fee Period**").

## SUMMARY STATEMENT

In general, the Final Fee Application appears substantively sound.  It requests a total of $16,031,952.62 for the Final Fee Period, which includes a pro-rated monthly flat fee and a series of fixed fees.  This Court already has found that the fee is not unreasonable.

For the entire period of its engagement, from June 1, 2009 to July 10, 2009, Evercore Group, L.L.C. ("**Evercore**"), has requested compensation and expense reimbursement totaling $16,031,952.62.  By agreement or order, that amount previously has been reduced by $1,042.34 to bring the total final award proposed to $16,030,910.28.  Of the total amount requested, $4,333,000.00 has not yet been paid.  With Court approval, the approved unpaid amounts can be paid.

Evercore was retained as the Investment Banker and Financial Advisor to the Debtors.

## BACKGROUND

1. Commencing on June 1, 2009 (the "**Petition Date**"), General Motors Corp. and certain of its affiliates ("**Debtors**") filed in this Court voluntary cases under chapter 11 of the

Bankruptcy Code. On August 31, 2010, the Debtors filed a Joint Chapter 11 Plan and Disclosure Statement [Docket Nos. 6829 and 6830].[1] The Plan was confirmed on March 29, 2011.

2. On June 12, 2009, the Debtors' counsel filed the *Application for an Order Pursuant to Sections 327(A) and 328(A) of the Bankruptcy Code and Bankruptcy Rule 2014(A) Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 954] (the "**Retention Application**"), attaching a copy of the Debtors' engagement letter with Evercore (the "**Engagement Letter**").

3. That Retention Application triggered a series of objections: by the Ad Hoc Committee of Consumer Victims of General Motors [Docket No. 1892], by the Ad Hoc Committee of Personal Injury Asbestos Claimants [Docket No. 1968], by the United States Trustee [Docket No. 2189] (the **"UST Objection"**), and by the Official Committee of Unsecured Creditors [Docket No. 2232] (the "**Committee Objection**") (collectively, the "**Objections**").

4. The Debtors subsequently filed a *First Supplemental Declaration of William C. Repko in Support of the Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 2435] (the "**Supplemental Repko Declaration**"); the *Response of Debtors to (I) Objection of Ad Hoc Committee of Consumer Victims of General Motors, (II) Objection of the Ad Hoc Committee of Personal Injury Asbestos Claimants, (III) Objection of the United States Trustee, and (IV) Limited Objection of the Official Committee of Unsecured Creditors to the Debtors' Application for an Order Authorizing the Employment*

---

[1] On December 7, 2010, the Debtors filed *Debtors' Amended Joint Chapter 11 Plan* and a *Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan* [Docket Nos. 8014 and 8015].

2

*and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 2441] (the "**Debtors' Response**"); the *Second Supplemental Declaration of William C. Repko in Support of the Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Document No. 3756] (the "**Second Supplemental Repko Declaration**"); and, the *Declaration in Support of the Application for an Order Pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date* [Docket No. 3773 ] (the "**Borst Declaration**" and, together with the Supplemental Repko Declaration and the Second Supplemental Repko Declaration, the "**Declarations**").

5. Evercore Group L.L.C.'s ("**Evercore**") retention was authorized by this Court's *Order Authorizing the Employment and Retention of Evercore Group L.L.C. as Investment Banker and Financial Advisor for the Debtors Nunc Pro Tunc to the Petition Date*, dated October 28, 2009 [Docket No. 4304] (the "**Retention Order**").

6. The Evercore compensation structure is tiered:

    A. A pro-rated monthly fee of $400,000.00 from June 1, 2009 through July 10, 2009 (the "**Retention Period**");

    B. A restructuring fee (the "**Restructuring Fee**") in the amount of $30 million, payable upon the consummation of any restructuring, against which Evercore would credit up to $14 million in monthly and other fees paid to Evercore;

3

   C. A fee ("**NewCo Transaction Fee**") in the amount of $30 million payable upon completion of the NewCo Sale, against which Evercore would credit up to $17 million in monthly and other fees paid to Evercore;

   D. A fee in the amount of $2.5 million for assisting the Debtors in the structuring and implementation of debtor-in-possession ("**DIP**") Financing under the Bankruptcy Code (the "**DIP Structuring Fee**"); and,

   E. A fee (the "**Delphi Fee**") in the amount of $2 million for advisory services related to the Delphi bankruptcy proceeding, *In re DPH Holdings Corp. et al.,* No. 05-44481 (Bankr. S.D.N.Y. 2010), payable upon either the consummation of any plan of reorganization of Delphi Corporation, or the sale or other transfer of all or substantially all of the assets or business of Delphi in a single transaction or series of related transactions. The Delphi Fee cannot be credited against any previously paid fee.

These rates, assertedly, are comparable to compensation charged by investment banking and financial advisory firms similar to Evercore. *See* Retention Application, ¶ 15.[2]

  7. The Retention Order states, "… [T]he terms of the GM Engagement Letter are reasonable terms and conditions of employment and are approved, as hereinafter modified …." Retention Order, p. 2.

  8. Pursuant to the Retention Order, the NewCo Transaction Fee apparently had an outstanding balance of $13 million, expressly subject to the United States Trustee's right to object to Evercore's Final Fee Application. The NewCo Transaction Fee was ordered to be paid as follows: (1) $8,667,000.00 due and payable upon entry of the Retention Order; and (2) the

---

[2] The Fee Examiner notes that in light of the volume of legal work generated by the Debtors and the unusual nature of the debtor-in-possession financing, several retained professionals discounted their hourly rate structures.

4

remaining balance of $4,333,000.00 payable upon entry of an order confirming a plan of reorganization.

9. On November 16, 2009, Evercore filed the Final Fee Application seeking approval of fees in the amount of $16,029,032.00 and expenses in the amount of $2,920.62, for total requested compensation in the amount of $16,031,952.62, for services rendered during the 40-day Retention Period.[3] As a result of the Court's *Order Pursuant to 11 U.S.C. §§ 105(a) and 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals* [Docket No. 3711] (the "**Compensation Order**"), Evercore had previously been paid $11,167,000.00 in fees, subject to Court review and approval, leaving a combined request of unpaid fees and expenses in the amount of $4,864,952.62, as of the date of the Final Fee Application. *See* Final Fee Application, ¶ 7.

10. On April 22, 2010, the Fee Examiner filed the *Fee Examiner's Report and Statement of Limited Objection to the Fee Application of Evercore Group, L.L.C. and Motion to Adjourn Fee Application Hearing* [Docket No. 5549] (the "**First Objection**"), identifying $1,042.34 in expenses that were objectionable and requesting a deferral of consideration of the Final Fee Application in part because the plan of reorganization had not yet been confirmed. That report is incorporated by reference.

11. On April 28, 2010, Evercore filed the *Reply of Evercore Group, L.L.C. to Fee Examiner's Report and Limited Objection to First and Final Fee Application* [Docket No 5635].

12. On April 29, 2010, this Court issued an oral ruling that granted the Fee Examiner's request to adjourn the hearing on Evercore's Final Fee Application.

---

[3] Evercore correctly points out that while the Retention Agreement authorized the Restructuring Fee and the Delphi Fee under particular circumstances, those circumstances did not come to pass, and Evercore has not requested the Restructuring Fee or the Delphi Fee in its Fee Application.

5

## APPLICABLE STANDARDS

13. The Final Fee Application has been evaluated for compliance with the *Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases*, Administrative Order M-389 (Bankr. S.D.N.Y. Nov. 25, 2009) (the "**Local Guidelines**"), the *Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330*, 28 C.F.R. Part 58, Appendix A (the "**UST Guidelines**"), the *Fee Examiner's First Status Report and Advisory* [Docket No. 5002] (the "**First Advisory**"), and the *Fee Examiner's Second Status Report and Advisory* [Docket No. 5463] (the "**Second Advisory**"), as well as this Court's Compensation Order—including the extent, if any, to which variation has been expressly permitted by order.

## THE SECTION 363 SALE AND DIP FINANCING

14. At the commencement of the Debtors' chapter 11 cases, the United States Treasury (the "**Treasury**") had taken the lead in proposing and sponsoring the immediate restructuring plan for Debtors. The Debtors proposed to sell substantially all of their assets pursuant to section 363 of the Bankruptcy Code to a government-sponsored and -funded purchaser (the "**Government-Funded Purchaser**"). To facilitate this sale (the **"363 Sale"**), the government provided approximately $50 billion in prepetition loans and debtor-in-possession financing.

15. The Debtors proposed to consummate the 363 Sale within 30 days of the Petition Date. The motion to approve the sale was scheduled for hearing on June 30, 2009, and the Government-Funded Purchaser was the "stalking horse" bidder although, in this case, that term of art lacked its ordinary meaning.

16. As more fully set forth in the Committee Objection, there was no reasonable likelihood that an alternative and comparable purchaser would emerge. *See* Committee

6

Objection, ¶ 11. The Treasury pre-negotiated the Debtors' chapter 11 cases to ensure an expeditious bankruptcy process—in large part because it was determined to be in the national interest. Towards that end, and to prevent the Debtors' liquidation, the U.S. Treasury had already agreed to provide DIP Financing to the Debtors.

**COMMENTS**

17. **Prepetition Payments**. Prepetition, beginning in June 2008, the Debtors already had paid Evercore $24,530,368.16 in connection with Evercore's restructuring efforts. *See* Supplemental Repko Declaration, ¶ 8(a).

18. **Monthly Fees**. Evercore contracted for an initial pro-rated monthly fee of $400,000.00. During the period covered by the Final Fee Application, monthly fees totaled $529,032.00. Evercore does not bill its clients based on the number of hours expended by its professionals. *See* Final Fee Application, ¶ 18. However, the arithmetic division of the monthly fee by the hours reported as expended (a total of 1,247.5 hours) yields an average rate of $424.00 per hour. This monthly fee is reasonable.

19. **The NewCo Transaction Fee**. While the NewCo Transaction Fee was initially a "success fee" payable upon the closing of the 363 Sale, the Retention Order directs that approximately one-third of the NewCo Transaction Fee be withheld until a plan of reorganization containing specific criteria has been confirmed. The Debtors' plan of reorganization has now been confirmed.

> A. AP Services, LLC; FTI Consulting, Inc. ("**FTI**"); and Evercore all have entered into engagement agreements—albeit with differing terms—providing for substantial success fees based upon the closing of this same transaction and/or the confirmation of a plan of reorganization. The success fee of AP Services, LLC has been awarded, *see Order Granting Application by AP Services, LLC as Crisis Managers to the*

7

*Debtors for Approval of Discretionary Fees* [Docket No. 10551], and the Fee Examiner has not objected to the "completion" fee requested by FTI. *See Fee Examiner's Report and Statement of Limited Objection to Fifth Interim and Final Fee Application of FTI Consulting, Inc.* [Docket No. 10829].

    B.    The triggering event for the fees requested by Evercore—closing of the 363 Sale and plan confirmation—are not uncommon compensation mechanisms for financial and workout firms, and they are often part of the market-based structure for turnaround and restructuring services. *In re XO Commc'ns, Inc.*, 398 B.R. 106, 110 (Bankr. S.D.N.Y. 2008) (quoting 11 U.S.C. § 328(a)) (differing payment terms depending on plan ultimately confirmed).

    C.    Until an order confirming the plan of reorganization had been entered, the reasonableness of the fees requested could not be evaluated. Any evaluation, particularly as it relates to a success fee or premium, was properly deferred until final fee applications had been submitted by all of the parties seeking success fees.

20.    Once a court pre-approves compensation—under section 328(a) of the Bankruptcy Code, for example—it generally does not revisit that determination unless the compensation can be shown to be "improvident in light of developments not capable of being anticipated at the time of fixing such terms and conditions." *Id*. at 112-13. The "improvidence" standard is difficult to meet, and courts rarely disturb the original terms of employment. *Id.* at 113; *see In re Yablon*, 136 B.R. 88, 92 (Bankr. S.D.N.Y. 1992). The Fee Examiner is unaware of any circumstances that might rise to this standard here.

21.    Similarly, even assuming that the NewCo Transaction Fee is subject to section 330(a) review, the Bankruptcy Code authorizes a court to award professionals

8

"reasonable compensation for actual, necessary services rendered." 11 U.S.C. § 330(a)(1)(A). When evaluating a professional's request for fees, courts distinguish between fees earned upon accomplishing a stated goal, such as consummation of a transaction (i.e., "transaction," "restructuring," or "success" fees), and fees reflecting an upward departure from contract compensation as a result of performance and results. (i.e., "fee enhancements"). *In re XO Commc'ns*, 398 B.R. at 113 n.8.

22. Here, the requested fees are tied to specific goals in the Engagement Letter, as amended by the Retention Order, and do not reflect a fee enhancement; hence, they generally satisfy the reasonableness standard under section 330 of the Bankruptcy Code as long as they comport with "prevailing market practices." *Id*. at 117. They do.

23. **Expenses**. The Final Fee Application, Exhibit C, contains a Summary of Expenses. The detail of these expenses is insufficient for the expenses to be compensable.

    A. The Final Fee Application seeks $892.65 for local travel expenses. The Fee Examiner has asked for a statement of date, description, name of person incurring the expense, method of computation, and purpose of each such expense. Some transportation requests were vague or duplicative. At least seven reimbursement requests for local transportation were made by individuals that recorded no time working on this matter on the date the transportation expense was incurred.

    *Agreed disallowance for travel expenses: $279.46.*

    B. The Final Fee Application requests $560.35 in reimbursement for meals. The Local Guidelines permit in-house meal charges for "professionals required to work after 8:00 p.m. and for meals taken prior to 8:00 p.m. If the professional returns to the office to work at least one and one-half hours." Evercore's fee application did not disclose enough detail to evaluate compliance with this guideline. However, in

9

recognition of the circumstances surrounding the timing of the 363 Sale, the Fee Examiner has only suggested disallowance for meals charged when less than four hours, or no time at all, was charged to this matter on the date the meal expense was incurred.

*Agreed disallowance for meals:  $85.26.*

C.      Evercore's Final Fee Application requests $465.72 in reimbursement for copies and shipping.  Some of the copying and shipping requests were vague or duplicative.  The expense requests are not documented, do not evidence the necessity for the services, and cannot be properly evaluated.

*Agreed disallowance for copying and shipping expenses:  $465.72.*

D.      The Final Fee Application seeks $105.34 for research expenses.  These expense requests are vague, and the Fee Examiner is unable to evaluate the research performed or the nature of the expense requested.

*Agreed disallowance for research expenses:  $105.34.*

E.      Certain expense requests are identified as "word processing/presentation support" fees in the amount of $106.56.  These administrative fees and markups are not reimbursable expenses under the UST and Local Guidelines.

*Agreed disallowance for administrative fees:  $106.56.*

*Evercore has indicated that, while it disagrees with the suggested expense disallowance, it does not intend to dispute any suggested disallowance in light of the nominal amounts involved.*

**Total suggested disallowance of fees:  none.**

**Total suggested disallowance of expenses:  $1,042.34.**

**Total recommended disallowance of fees and expenses:  $1,042.34**

10

## CONCLUSION

This *Report and Statement of Limited Objection* is intended to advise the Court, interested parties, and the U.S. Trustee of the absence of any basis for objection to the Final Fee Application—except as otherwise stated. All professionals subject to the Fee Examiner's review should be aware, as well, that while the Fee Examiner has made every effort to apply standards uniformly across the universe of professionals in this case, some degree of subjective judgment will always be required.

WHEREFORE, the Fee Examiner respectfully submits this *Report and Statement of Limited Objection* to the Final Fee Application, not contesting an award of $16,029,032.00 in fees and $1,878.28 in expenses for the Final Fee Period.

Dated: Milwaukee, Wisconsin
September 12, 2011.

                                  GODFREY & KAHN, S.C.

By:    */s/ Carla O. Andres*
      Carla O. Andres
      Timothy F. Nixon

      GODFREY & KAHN, S.C.
      780 North Water Street
      Milwaukee, Wisconsin 53202
      Telephone: (414) 273-3500
      Facsimile: (414) 273-5198
      E-mail: candres@gklaw.com
              tnixon@gklaw.com

      *Attorneys for the Fee Examiner*

6791943_2

11