Hearing Date and Time: September 26, 2011 at 9:45 am

Eric Goldberg, Esq.
Kahn & Goldberg, LLP
708 Third Avenue – 19th Fl.
New York, New York 10017
(212) 687-5066

Attorneys for claimant
Seneca Insurance Company, Inc.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————X

In re

MOTORS LIQUIDATION COMPANY, *et al.,*
    f/k/a General Motors Corp., *et al.*

               Debtors.

———————————————————X

Chapter 11

Case No. 09-50026 (REG)

(Jointly Administered)

## CLAIMANT SENECA INSURANCE COMPANY, INC.'s AFFIRMATION IN OPPOSITION TO DEBTORS' 242ND OMNIBUS OBJECTION TO CLAIMS

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Seneca Insurance Company, Inc. ("Seneca"), by its attorneys, Kahn & Goldberg,

LLP, hereby submits this Affirmation in Opposition to the Debtors' 242nd omnibus

objection to claims pursuant to 11 U.S.C. §502(e)(1)(B) which seeks an Order of this

Court disallowing and expunging claim no. 216 (among others) filed by Seneca in this

proceeding. For the reasons stated herein, the Debtor's objection as to Seneca's claim

should be denied in its entirety and Seneca's claim in this proceeding should be allowed.

Seneca should also be awarded costs and reasonable attorney's fees for having to oppose

the Debtor's motion, which misapplies applicable law to Seneca's claim and fails to specifically address Seneca's proof of claim.

## Background

1.      Seneca Insurance Company, Inc. is a commercial and property insurance carrier licensed to sell policies in fifty states including the State of Illinois, and has its principal place of business at 160 Water Street, 16th Floor, New York, NY.

2.      As of February 28, 2009, Seneca insured entities known as "Ronald B. Shipka, Enterprise Development", which owned the property located at 1301-29 West Fletcher, Chicago, IL (the "Premises"). *See* Declaration pages of Seneca policy no. SCC 2041267, annexed hereto as Exhibit A. The Premises is a high-rise residential building with ground floor retail and a basement parking garage.

3.      The Seneca insurance policy insures Ronald B. Shipka and Enterprise Development (the "Insured" or "Subrogor") as owner of the Premises against property damages, loss and related expenses. *See* Exhibit A. Under the insurance policy between Seneca and its Insured, Seneca was obligated to pay any insurance claims submitted for damages to the Premises which are covered under the terms of the policy.

4.      On or about February 28, 2009, a fire occurred at the Premises (the "fire"). *See* Property Loss Notice dated March 2, 2009, annexed hereto as Exhibit B; and Chicago Fire Incident Report dated February 28, 2009, annexed hereto as Exhibit C.

5.      As a result of the fire, Seneca's Insured sustained extensive financial damages for the loss of property, and the cost of repair, replacement, cleaning services, etc. at the Premises. Subsequent to the fire, Seneca's Insured made an insurance claim to Seneca

for the damages to the Premises caused by the fire.  Under the contract of insurance

between Seneca and its Insured, Seneca paid the amount of $166,948.93 on the insurance

claim submitted for damages to the Premises as a result of the fire.  As a result of

Seneca's payment to its Insured, Seneca is subrogated to the extent to its payment, to the

rights of its subrogor, and against all individuals and entities responsible for the loss and

resulting damage.  *See* Allstate Ins. Co. v. Stein, 1 N.Y.3d 416, 422 (2004); In re Estate

of Scott, 567 N.E.2d 605 (Ill. App. Ct. 1991).

6.      Seneca investigated the cause and origin of the fire at the Premises in order to

preserve its subrogation rights.  The cause and origin investigation conclusively

established that a 2000 Pontiac GTP (VIN no. 1G2WR121XYF189524) (the "Vehicle")

ignited shortly after being parked in the garage at the Premises, thereby causing fire and

smoke damage to the Premises.  The vehicle was owned by Megan McArthur, who

resided in an upstairs apartment at the Premises.  *See* Reports of C. Roberts Consulting

Engineers, Inc., annexed hereto as Exhibit D.

7.      Specifically, Seneca's investigation revealed that the fire ignited in the front of

the Vehicle's engine due to oil leakage through the Vehicle's valve cover gasket.  *See*

Exhibit D.  In March 2008, General Motors Corp., which manufactured Pontiac vehicles,

including the subject Vehicle, acknowledged that oil leakage of this type was a

manufacturing defect subject to recall.  Specifically, General Motors warned that certain

Pontiac vehicles were susceptible to the oil leakage which would in turn ignite a fire.

GM reported that this most often occurred on high-mileage vehicles shortly after they had

been driven and parked (and thus hot), and that the fire is typically discovered within five

to ten minutes after parking the vehicle.  *See* Recall Notice contained in Exhibit D.  Upon

information and belief, the Vehicle had been driven into the garage and parked just minutes before the fire ignited.

8.      On June 1, 2009, the Debtor filed for bankruptcy relief under chapter 11 of Title 11 of the United States Code. On or about June 4, 2009, Seneca filed Proof of Claim no. 216 in this proceeding representing its claim against the Debtor for the damages paid under the insurance policy between it and its Insured for the fire damage to the Premises. *See* Proof of Claim no. 216, annexed hereto as Exhibit E.

**The Debtor's Instant Motion to Expunge Seneca's
Claim no. 216 Pursuant to 11 U.S.C. §502(e)(1)(B)
Should Be Denied in Its Entirety**

9.      By omnibus motion dated August 19, 2011 (the "Motion"), the Debtor seeks to disallow and expunge a multitude of claims pursuant to 11 U.S.C. §502(e)(1)(B), including Seneca's claim no. 216. The Debtor's motion is a disingenuous attempt to paint ordinary tort claims, such as that asserted by Seneca, as being subject to disallowance pursuant to section 502(e)(1)(B).

10.     Section 502(e)(1)(B) is not intended to disallow an ordinary subrogation claim asserted by a liability insurance carrier holding causes of action for negligence against a Debtor. In fact, section 502(e)(1)(B) was enacted "to prevent… competition between a creditor and [its] guarantor for limited proceeds of the estate." *See* H.R. Rep. No. 595, 95th Cong., 1st Sess. 354 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 65 (1978).

11.     Section 502(e)(1)(B) is applicable to a debt owed by a debtor to a creditor which has been guaranteed by a third party. *See* Collier on Bankruptcy P 502.06 (2011). That treatise goes on to explain:

4

"Both the primary obligee and the guarantor have a claim against the debtor that arises from the same debt; the primary obligee has a right to payment from the debtor, and the guarantor has a contingent right to reimbursement or contribution from the debtor which may become noncontingent in the event that it fully satisfies the primary obligee's claim. By disallowing the guarantor's contingent claim for reimbursement or contribution, section 502(e)(1)(B) insures that the estate will not be liable to the primary obligor and the guarantor for the same debt."

*See* Collier on Bankruptcy P 502.06 (2011) [internal citations omitted].

12.    Seneca's claim is not derived from an oblige, guarantor or surety relationship. Rather, Seneca's claim is an ordinary tort subrogation claim asserted by a property insurance carrier that acquired subrogation rights from its insured once it paid its insured for property damage under the terms of an insurance policy.

**Seneca's Subrogation Claim Against the Debtor
Does Not Meet the Three Elements For a Claim
to Be Disallowed Under 11 U.S.C. §502(e)(1)(B)**

13.    By the terms of section 502(e)(1)(B), three elements must be met for a claim to be disallowed: (1) the party asserting the claim must be liable with the debtor on the claim of a third party; (2) the claim must be contingent at the time of its allowance or disallowance; and (3) the claim must be for reimbursement or contribution. In re Lyondell Chem. Co., 442 B.R. 236 (S.D.N.Y. 2011).

**The First Element:  The Debtor and Seneca
Are Not Both Liable on the Claim of a Third Party**

14.    The Debtor and Seneca are not both liable on the claim of a third party. Nor do they share the same liability for the fire at the Premises. The Debtor's vehicle ignited the fire at the Premises. *See* Exhibits B-D. Thus, the Debtor is liable in negligence for the

resulting property damages. On the other hand, Seneca's only liability sounds in contract

to its own insured, via the insurance policy. *See* Exhibit A. Seneca's liability, if it can

even be called that, is entirely separate and distinct from the Debtor's liability for actually

causing the fire.

15.    Thus, there is no shared liability for purposes of section 502(e)(1)(B). In Dant &

Russell, Inc. v. Burlington N.R.R. Co., 951 F.2d 246 (9th Cir. 1991), the Court reached

the same result where a property owner's claim against debtor for environmental cleanup

costs was not barred by section 502(e)(1) because the property owner was asserting

private right of action against the debtor and was not liable with the debtor to the third-

party creditor. Here, Seneca is similarly asserting a private right of action that it acquired

under principles of subrogation when it paid a property damage claim submitted by its

insured. *See also* In re Allegheny Int'l, Inc., 126 B.R. 919 (W.D.Pa 1991) [creditor's

private right of action against debtor for environmental cleanup costs not disallowed

because there was no shared liability with the debtor to a third-party creditor]; In re

Chateaugay Corp., 154 B.R. 416, 420 (S.D.N.Y. 1993) [where retirement fund was liable

to retirees, and debtor was liable to retirement fund, but not individual retirees, a shared

liability did not exist and section 502(e)(1) did not apply.]

16.    With respect to the fire at the Premises, Seneca "stands in the shoes" of its insured

to seek repayment from the Debtor (via tort causes of action) whose product caused the

loss to the insured which the insurer was obligated to cover. Jefferson Ins. Co. v.

Travelers Indem. Co., 92 N.Y.2d 363, 373 (1998). Once Seneca makes payment on the

insurance claim to its insured, and the insured's "shoes" are passed to Seneca (by way of

equitable principles of subrogation as well as execution of a Subrogation Receipt, *see*

Exhibit F annexed hereto), the insured property owner, having been made whole, is

completely divested of its claim against the wrongdoer tortfeasor (here, the Debtor

vehicle manufacturer). The claim has since been passed to Seneca, which by paying its

Insured's claim for property damage, has now ultimately bore the loss and may now

pursue the wrongdoer / tortfeasor.


**The Second Element:  The Claim is Not Contingent**

17.    In order for a claim to be subject to disallowance under section 502(e)(1)(B), it

must be "contingent at the time of its allowance or disallowance." In re Lyondell Chem.

Co., 442 B.R. 236 (S.D.N.Y. 2011). A claim is contingent if "the debtor's legal duty to

pay does not come into existence until triggered by the occurrence of a future event."

Pearl-Phil GMT (Far East) Ltd. v. Caldor Corp., 266 B.R. 575, 580 (S.D.N.Y. 2001)

*citing* Mazzeo v. US (In re Mazzeo), 131 F.3d 295, 303 (2nd Cir. 1997); *see also* In re

GCO, 324 B.R. 459, 466 (S.D.N.Y. 2005) ["A claim is contingent where it has not yet

accrued and … is dependent upon some future event that may never happen."]

18.    Seneca's claim is not contingent – there is no future event that could bear on its

already existing claim. Seneca paid $166,948.93 (including the insured's $1,000

deductible) for the fire damage at the Premises. That amount was paid by two checks in

August 2009 and June 2010. *See* Checks paid by Seneca to Ronald Shipka / Enterprise

Development, annexed hereto as Exhibit G.

19.    It may be true that at the time Seneca's proof of claim was filed (June 2009 –

Exhibit E), it had not yet finally adjusted the insured's claim for the property damage. As

of August 2009 the property damage portion of the claim had been adjusted and paid; and

the insured's business interruption claim was adjusted and paid as of June 2010. Thus,

presently, the claim is not contingent. *See* In re GCO, *supra.*

### The Third Element: The Claim is Not
### For Reimbursement or Contribution

20.    Movant is again wrong by claiming that Seneca is co-liable with the Debtor on a

third party's claim, and that Seneca is seeking reimbursement and/or contribution from

Debtor with respect to the third party claim. As explained above, Seneca's claim sounds

in subrogation, and Seneca "stands in the shoes" of its policyholder to whom Seneca paid

amounts under an insurance policy for fire damage to the Premises. Jefferson Ins. Co. v.

Travelers Indem. Co., *supra.* There is no contractual relationship between Seneca and

the Debtor as to any third party claim. Seneca merely paid an insurance claim, and by

doing so, acquired the rights of its policyholder to pursue the party ultimately liable for

the fire damage at the Premises – in this case, the Debtor vehicle manufacturer.

21.    Seneca's claim against the Debtor is one sounding in negligence and products

liability, and has no relation to the types of contractual claims for reimbursement and

contribution that section 502(e)(1)(B) is concerned with. Seneca is not a surety of the

Debtor, and has no different rights against the Debtor that any other injured tort plaintiff

with a claim against Debtor's estate. As this Honorable Court stated in a recent decision:

> "In enacting the provision, Congress merely provided for disallowance of
> contingent claims for reimbursement filed by persons liable with the debtor. To
> be sure, the legislative history concerning §502(e) indicates that a principal
> purpose of the entire subsection is to prevent a double payment by the estate, and
> there can be no such double payment if the plaintiff fails to file a claim."

In re Chemtura Corp., 436 B.R. 286 (S.D.N.Y. 2010) *citing* In re Wedtech Corp., 85 B.R.

285, 290 (S.D.N.Y. 1988).

22.    The reasoning stated in In re Chemtura Corp. applies here, where the underlying injured party (the Premises owner) has already been made whole for the fire loss by Seneca under the insurance policy between them.  Seneca's Insured has not filed a claim against the Debtor's estate, and it has no right or basis to do so since it is now whole, and since it assigned its rights against the Debtor to Seneca.  See Subrogation Receipt, Exhibit F.  Disallowing Seneca's claim under section 502(e)(1)(B) is improper and would lead to the perverse result of barring recovery for the tort by Seneca, the insurance carrier which ultimately bore the loss.

**Seneca Should Be Awarded Costs**
**And Reasonable Attorney's Fees**

23.    Seneca should be awarded costs and reasonable attorney's fees for having to oppose the Debtor's motion, which misapplies applicable law and fails to specifically address Seneca's proof of claim.  While Seneca and your Affirmant are mindful of this Court's Order authorizing the Debtor to file omnibus objections to claims, the Debtor should perform some inquiry into the nature of an individual claim before including it in an omnibus motion and forcing the claimholder to expend time and resources defending a valid claim.

24.    This Court has the power to award costs and reasonable attorney's fees under F.R.C.P. 54(d).  Had the Debtor done even a cursory inquiry into Seneca's claim before including it in this omnibus motion, the Debtor might have learned that Seneca's claim is not one for reimbursement or contribution, is not contingent, and that the Debtor and Seneca do not share any liability to a third party.

**Conclusion**

WHEREFORE, for the reasons stated herein, including that Seneca is not co-liable with the Debtor on the claim of a third party, that Seneca's claim is not contingent, and that the claim is not one for reimbursement or contribution, the Debtor's motion to disallow Seneca's claim in this proceeding should be denied in it's entirety; Seneca should be awarded costs and reasonable attorney's fees in opposing the instant motion; and this Court should grant such other and further relief as is deemed just and proper.


Dated: New York, New York
       September 19, 2011            KAHN & GOLDBERG, LLP


                                        s/ Eric Goldberg
                                    Eric Goldberg, Esq.
                                    708 Third Avenue, 19th Floor
                                    New York, New York 10017
                                    Telephone: (212) 687-5066
                                    Facsimile:  (212) 983-8415

                                    Attorneys for Claimant
                                    Seneca Insurance Company, Inc.