**Hearing Date and Time: September 26, 2011 at 9:45 a.m. (Eastern Time)**

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA
A PROFESSIONAL CORPORATION
Sander L. Esserman (Admitted *Pro Hac Vice*)
Robert T. Brousseau (Admitted *Pro Hac Vice*)
Peter C. D'Apice
Jo E. Hartwick (Admitted *Pro Hac Vice*)
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900
Facsimile:  214-969-4999

Counsel for Dean M. Trafelet in his
Capacity as Legal Representative for Future Asbestos
Personal Injury Claimants

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------X
|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 |
|  | ) |  |
| MOTORS LIQUIDATION COMPANY, *et al.,* | ) | Case No. 09-50026 (REG) |
|  | ) |  |
| f/k/a General Motors Corp., *et al.* | ) |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |

-------------------------------------------------------------X

**RESPONSE OF ANALYSIS RESEARCH PLANNING CORPORATION TO**
**OBJECTIONS TO ITS THIRD INTERIM AND FINAL FEE APPLICATION**

# TABLE OF CONTENTS

BACKGROUND ............................................................................................... 1

   A.   The Debtors Commence these Bankruptcy Cases and the Court
Appoints a Fee Examiner. ....................................................................... 1

   B.   At the Debtors' Request, the Court Appoints the Future Claimants'
Representative to Represent the Interests of the Future Claimants in
Connection with the Entire Plan Process up to and Including
Confirmation. .......................................................................................... 2

   C.   The Future Claimants' Representative Retains ARPC to Assist Him
in Fulfilling his Duties to the Future Claimants. ..................................... 2

   D.   ARPC and the Future Claimants' Representative Repeatedly Sought
Access to Data Necessary to the Review and Analysis of the
Debtors' Asbestos-Related Liabilities. .................................................... 4

   E.   Incomplete Claims Data was Provided over a Period of Several
Months. .................................................................................................... 4

   F.   The Estimation Proceeding is Set for March 1, 2011. ............................. 6

   G.   The Debtors Continue to Produce Incomplete Data Sets. ........................ 6

   H.   ARPC Receives 1,100,000 Additional Pages of Claims Related
Materials. ................................................................................................. 7

   I.   The Stipulation and Order Bound Only its Signatories and Remained
Subject to Court Approval Until February 24, 2011. ............................... 7

   J.   The Future Claimants' Representative's Role in Representing Future
Claimants Did Not End With the Resolution of the Amount of the
Asbestos Trust Claim. .............................................................................. 8

   K.   Even After the Stipulation and Order was Approved by the Court,
Confirmation of the Debtors' Plan Remained Contested. ........................ 9

   L.   The Future Claimants' Representative Consulted with ARPC
Regarding its Continued Work After the Stipulation and Order was
Approved. ................................................................................................. 9

   M.   Confirmation Was Contested Until the Court Entered the
Confirmation Order on March 29, 2011. ................................................ 11

   N.   ARPC Seeks Compensation for the Valuable Services Rendered to
the Future Claimants' Representative. .................................................... 12

   O.   The Fee Examiner and the Debtors Use the Wrong Standard to
Erroneously Assert that ARPC's Services were Unnecessary. ............... 12

RESPONSE ................................................................................................... 13

A.   ARPC Provided Valuable Services to the Future Claimants'
Representative and His Constituency. ........................................................................13

B.   Upon Approval of the Stipulation and Order, ARPC Sought
Guidance from the Future Claimants' Representative Before
Continuing its Analysis............................................................................................15

C.   The Debtors' Requested Disallowance Is Inflated...................................................17

**CONCLUSION** ..................................................................................................................... 17

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Analysis Research Planning Corporation ("**ARPC**"), asbestos claims valuation consultant

to Dean M. Trafelet (the "**Future Claimants' Representative**") in his capacity as the legal

representative for future asbestos personal injury claimants (the "**Future Claimants**"), submits

this response (the "**Response**") to the (1) *Debtors' Limited Objection to the Third Interim and*

*Final Fee Application of Analysis Research Planning Corporation* (the "**Debtors' Objection**")

(Docket No. 10843) and the (2) *Fee Examiner's Report and Limited Objection to Third Interim*

*and Final Fee Application of Analysis Research Planning Corporation* (the "**Fee Examiner's**

**Objection**") (Docket No. 10827) and respectfully states as follows:

## BACKGROUND

**A.     The Debtors Commence these Bankruptcy Cases and the Court Appoints a Fee Examiner.**

1.      On June 1, 2009 (the "**Petition Date**"), Motors Liquidation Company (f/k/a

General Motors Corporation) and several of its affiliates (collectively, the "**Initial Debtors**")

commenced this case under chapter 11 of the Bankruptcy Code.  On October 9, 2009,

Remediation and Liability Management Company, Inc. and Environmental Corporate

Remediation Company, (the "**REALM/ENCORE Debtors**", and together with the Initial

Debtors, the "**Debtors**") commenced voluntary cases under chapter 11 of the Bankruptcy Code.

The Debtors' cases are jointly administered under Case Number 09-50026.

2.      On December 23, 2009, the Court appointed Brady C. Williamson as the Fee

Examiner, pursuant to the Stipulation and Order with Respect to Appointment of a Fee Examiner

(Docket No. 4708).

**B.     At the Debtors' Request, the Court Appoints the Future Claimants' Representative to Represent the Interests of the Future Claimants in Connection with the Entire Plan Process up to and Including Confirmation.**

3.     On April 8, 2010, the Court entered an order (the "**FCR Appointment Order**") (Docket No. 5459) appointing Dean M. Trafelet as the Future Claimants' Representative in these cases.  At the Debtors' request, the Court appointed Mr. Trafelet to represent and protect the interests of Future Claimants "[i]n connection with the formulation, negotiation and confirmation of a chapter 11 plan."  *See Motion Pursuant to Sections 105 and 1109 of the Bankruptcy Code for an Order Appointing Dean M. Trafelet as Legal Representative for Future Asbestos Personal Injury Claimants*, ¶ 6 (Docket No. 5214).  The Court granted Mr. Trafelet standing "to be heard as a party in interest in all matters relating to the Debtors' chapter 11 cases."  See FCR Appointment Order page 2.

**C.     The Future Claimants' Representative Retains ARPC to Assist Him in Fulfilling his Duties to the Future Claimants.**

4.     On April 2, 2010, the Future Claimants' Representative filed an application (the "**ARPC Retention Application**") (Docket No. 5413) seeking authorization to retain and employ ARPC as his asbestos claims valuation consultant in these cases.  In the ARPC Retention Application, ARPC agreed to provide various services to the Future Claimants' Representative including but not limited to

> a.     consult[ing] with respect to the estimation of the number and value in total and by disease of present and future asbestos related claim;
>
> …
>
> d.     Assess proposals made by other parties, including without limitation proposals from the Debtors and the Unsecured Creditors' Committee, the estimation of claims and or the formulation and funding of the trust to be established to pay current and future asbestos personal injury claims;

> …
>
> g.    *Assist the Future Claimants' Representative in the preparation of testimony or reports he wishes or is required to make* and in the evaluation of reports and testimony by other experts and consultants;
>
> …
>
> j.    *Such other advisory services as may be requested by the Future Claimants' Representative from time to time.*

ARPC Retention Application, pg. 7 (emphais added).  By order signed on April 21, 2010, this Court authorized the Future Claimants' Representative's retention of ARPC as his asbestos claims valuation consultant.

5.    Throughout these chapter 11 cases and at the Future Claimants' Representative's request, ARPC worked with the Future Claimants' Representative and his other professionals to determine the information needed to identify, estimate, classify and value the asbestos-related liabilities of the Debtors in order to assist the Future Claimants' Representative in the negotiation of various issues arising during these cases, including discovery disputes, the review and analysis of the Debtors' plan, and the establishment of the trust to which all asbestos personal injury claims are channeled (the "**Asbestos Trust**").  ARPC performed extensive analytical work to assist the Future Claimants' Representative and his counsel in fulfilling his duties to represent and protect the interests of Future Claimants in connection with the entire plan process, including the formulation, negotiation and confirmation of a chapter 11 plan in these cases, to estimate the value of future asbestos claims and negotiate a settlement under the Debtors' plan that would provide compensation to the Future Claimants.  *See Declaration of Amy Brockman in Support of Response of Analysis Research Planning Corporation to Objections to its Third Interim and Final Fee Application* ¶5, attached hereto as Exhibit A (the "**Brockman Declaration**"); *see also*

*Declaration of Dean M. Trafelet in Support of Response of Analysis Research Planning*

*Corporation to Objections to Its Third Interim and Final Fee Application* ¶6, attached hereto as

<u>Exhibit B</u> (the "**Trafelet Declaration**").

**D.** **ARPC and the Future Claimants' Representative Repeatedly Sought Access to Data Necessary to the Review and Analysis of the Debtors' Asbestos-Related Liabilities.**

6.      From March 2010, when ARPC was retained and throughout the remainder of

2010, ARPC and the Future Claimants' Representative repeatedly sought access to various

materials from the Debtors and New GM regarding the Debtors' current and historical asbestos-

related liabilities.  Brockman Declaration ¶¶ 6-7; Trafelet Declaration ¶ 7.

**E.** **Incomplete Claims Data was Provided over a Period of Several Months.**

7.      ARPC received access to the initial claims data in May 2010.  However, the

information provided was incomplete and contained very little demographic or exposure history

information necessary to adequately assess the future claim liability.  ARPC was informed that

the Debtors did not have exposure dates, dates of birth, date of death or date of diagnosis

information.  Brockman Declaration ¶ 8.  ARPC requested additional information regarding the

claims data.

8.      In early June 2010, ARPC was informed that the Debtors would provide

additional claims data.  However, the only new information provided was a table with trial dates

for claims with a trial and a total disposition amount variable.  The new data did not include any

of the information requested by ARPC and necessary information was still missing (i.e.

diagnosis dates, asbestos exposure dates, dates of birth, dates of death, asbestos-related disease,

occupation, exposure worksite information, social security numbers, etc.).  Moreover, there was

no information regarding claims against GM's subsidiaries or foreign claims.  These areas could

have a substantial and material impact on any estimate of liability.  Brockman Declaration ¶ 9.

9.      In August 2010, counsel for the Future Claimants' Representative submitted a discovery request for additional data and the Debtors agreed to provide the Future Claimants' Representative with all case documents for a sample of 650 mesothelioma claimants.  The Debtors also agreed to provide all case documents for a sample of claimants identified by the statutory committee of unsecured creditors (the "**Creditors' Committee**").  Brockman Declaration ¶ 10.

10.      On or about August 25, 2010, ARPC received CDs containing 9,000 pages of documents including complaints, interrogatories, and depositions.  Upon receiving these materials, ARPC began to review and code the documents into computer analyzable form for the purpose of estimating aggregate asbestos-related liabilities.  ARPC also received three databases of claims information that were extremely difficult to match up to the materials that had previously been provided and potentially conflicted with previously provided information.  ARPC reviewed these databases in order to determine whether there was any overlap and/or differences between the new databases and the previously provided information.  Brockman Declaration ¶ 11.

11.      On or about September 13, 2010, ARPC requested clarification of a number of issues relating to the claims information, but did not receive any new information.  At this time, among ARPC's most significant concerns were the lack of exposure information, potential claims from foreign subsidiaries, and whether or not the Debtors were responsible for claims from any of the Debtors' subsidiaries.  Brockman Declaration ¶ 12.

12.      In early October, ARPC received two more DVDs containing approximately 40,000 document pages relating to the claims in the Creditors' Committee's and the Future Claimants' Representative's samples.  Brockman Declaration ¶ 13.

13.    On or about November 22, 2010 ARPC received another DVD containing approximately 2,500 document pages.  Brockman Declaration ¶ 14.

14.    On or about November 30, 2010, ARPC was informed by New GM's counsel that all responsive documents in New GM's possession had been produced and that it did not anticipate any additional production.  Brockman Declaration ¶ 15.

**F.    The Estimation Proceeding is Set for March 1, 2011.**

15.    On December 15, 2010 the Court entered an order (the "**Estimation Order**") (Docket No. 8121) establishing a pre-trial schedule and trial date for the estimation of the Debtors' aggregate liability with respect to Asbestos Personal Injury Claims (the "**Estimation Proceeding**") and set March 1, 2011 as the first hearing date for the Estimation Proceeding.

**G.    The Debtors Continue to Produce Incomplete Data Sets.**

16.    Following entry of the Estimation Order, the Future Claimants' Representative and other parties in interest engaged in extensive negotiations regarding the estimation and valuation of the Debtors' asbestos-related liabilities and the amount of the Asbestos Trust Claim, as that term is defined in the Debtors' Second Amended Joint Chapter 11 Plan (the "**Second Amended Plan**").  In connection with these negotiations, the parties continued to engage in discovery relating to the Debtors' historical asbestos-related liabilities.  ARPC reviewed and analyzed the substantial number of documents and data produced by the Debtors and New GM in order to prepare expert reports and advise the Future Claimants' Representative on various matters in these cases, including the amount of the Asbestos Trust Claim.

17.    Although ARPC was previously informed that the document production was complete, the Debtors continued to produce additional claims materials.  Indeed, on December 29, 2010, ARPC received a copy of an "updated" database, which included three new data tables.

The new tables provided information regarding Indirect Asbestos Claims, defense costs and trial dates.  Brockman Declaration ¶ 16.

18.      The data made available from the Debtors and from New GM remained incomplete during this entire period.  Throughout this time period, ARPC and the Future Claimants' Representative were seeking to affirm or negate certain confidential legal and factual theories affecting the Future Claimants' Representative's opinion by examining all claim information available to the Future Claimants' Representative.  Brockman Declaration ¶ 17; Trafelet Declaration ¶ 7.

**H.      ARPC Receives 1,100,000 Additional Pages of Claims Related Materials.**

19.      Finally, on or about January 13, 2011, ARPC received thirteen DVD's containing 1,100,000 images of complaints and other legal documents.  Brockman Declaration ¶ 18; Trafelet Declaration ¶ 8.  These documents contained information on 950 injured parties alleging mesothelioma (of which the documents for only two injured parties were reviewed in earlier discovery submissions) and 6,452 injured parties who allege non-mesothelioma injuries or did not provide injury information.  Brockman Declaration ¶ 18; Trafelet Declaration ¶ 8.  Upon receipt of these documents, ARPC began reviewing and coding the documents using the same protocol that was used to review and code all other asbestos-related claim records received in this case for the purpose of assisting the Future Claimants' Representative in his review and analysis of the Debtors' asbestos-related liabilities.  Brockman Declaration ¶ 18; Trafelet Declaration ¶ 8.

**I.      The Stipulation and Order Bound Only its Signatories and Remained Subject to Court Approval Until February 24, 2011.**

20.      While ARPC was reviewing the newly produced claims materials, the negotiations regarding the amount of the Asbestos Trust Claim continued.  On January 20, 2011

and January 21, 2011, certain parties to the bankruptcy case entered into the *Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtors' Estimation Motion* (the "**Stipulation and Order**") (Docket No. 9214) which established the amount of the Asbestos Trust Claim.

21.    Although the Stipulation and Order was agreed to by the signatory parties, the Stipulation and Order remained subject to Court approval and by its own terms, was of "no force and effect unless and until it is so approved."  Stipulation and Order ¶ 12.  In addition, the time for objecting to the plan had not yet passed.

**J.    The Future Claimants' Representative's Role in Representing Future Claimants Did Not End With the Resolution of the Amount of the Asbestos Trust Claim.**

22.    As stated by the Future Claimants' Representative in the Trafelet Declaration, his "representation of the Future Claimants did not end with the resolution of the Asbestos Trust Claim.  [His] duty to the Future Claimants was to represent their interests in all aspects of the Debtors' cases, including confirmation of the Debtors' plan and the establishment of the Asbestos Trust."  Trafelet Declaration ¶ 13.  The Future Claimants' Representative instructed ARPC to continue working on its review and analysis of the Debtors' aggregate asbestos-related liabilities because the bankruptcy case remained contested and the possibility remained that the Court might disapprove the Stipulation and Order, or that the Debtors might withdraw the plan as a result of negotiations with other parties.  During this time, ARPC and the Future Claimants' Representative were having confidential discussions regarding certain legal and factual theories that needed to be tested in light of a critical analysis of all available data.  Trafelet Declaration ¶ 10.  Neither ARPC nor the Future Claimants' Representative could risk placing the Future Claimants' Representative in the untenable position of having an incomplete analysis of the Debtors' asbestos liabilities if the estimation of the Debtors' asbestos-related liabilities went to trial, if confirmation was contested, or the Court requested testimony regarding the Future

8

Claimants' Representative's opinion on the Stipulation and Order or on any issue in the case,

especially issues relating to the Asbestos Trust, the plan injunctions, and the MLC Asbestos PI

Trust Distribution Procedures.  Trafelet Declaration ¶¶ 11, 13; Brockman Declaration ¶ 19.

Thus, ARPC continued to work on its review and analysis of the Debtors' aggregate asbestos-

related liabilities and the recently produced documents.  Brockman Declaration ¶ 19.

**K.      Even After the Stipulation and Order was Approved by the Court, Confirmation of
the Debtors' Plan Remained Contested.**

23.      The Stipulation and Order was approved by the Court on February 14, 2011.

24.      During February 2011, approximately thirteen (13) objections to confirmation of

the Debtors' plan were filed with the Court and the case remained contested.

25.      On February 22, 2011, the Future Claimants' Representative and the Debtors filed

their respective memorandums of law in support of confirmation of the Debtors' plan (Docket

Nos. 9338 and 9389, respectively).

**L.      The Future Claimants' Representative Consulted with ARPC Regarding its
Continued Work After the Stipulation and Order was Approved.**

26.      Following the approval of the Stipulation and Order, ARPC sought guidance from

the Future Claimants' Representative and his counsel as to how to proceed with the unfinished

analysis of the substantial number of recently produced asbestos claim records.  Brockman

Declaration ¶ 20; Trafelet Declaration ¶ 12.  The Future Claimants' Representative instructed

ARPC to continue working on the documents in order to finalize an expert opinion for the Future

Claimants' Representative regarding the settlement and to prepare for potential deposition and

trial testimony in connection with confirmation of the Debtors' plan.  Brockman Declaration ¶

22; Trafelet Declaration ¶ 12.

27.     As outlined in the following time entries appearing in the Future Claimants'

Representative's February 2011 and March 2011 invoices, ARPC remained in frequent contact

with the Future Claimants' Representative regarding the progress of its work.

| | |
|---|---|
| 02/17 | Teleconference with J. Brophy/ARPC re: status of claim history data and TDP issues (.50) |
| 02/18 | Reply memo to S. Esserman with directions for continued retention of ARPC's analysis and claim projections (.40) |
| 02/21 | Teleconf. with J. Brophy/ARPC re: status and schedule re: claims estimation analysis (.30) |
| 02/23 | Memo to ARPC re: finalization of claims research and estimations (.25) |
| 03/02 | Meeting with ARPC re: updating and status of finalizing claims estimations and research on marine and rail exposures (.70) and research and modeling system issues (.40) |

See Exhibit F to the *Third Interim and Final Application of Dean M. Trafelet in his Capacity as*

*Legal Representative for Future Asbestos Personal Injury Claimants, for Allowance of*

*Compensation and Reimbursement of Expenses Incurred for the Interim Period From October 1,*

*2010 through March 29, 2011, and the Final Period From November 13, 2009 Through March*

*29, 2011* (Docket No. 10247); Brockman Declaration ¶ 21.

28.     ARPC was instructed to continue working on the documents in order to finalize

an expert opinion for the Future Claimants' Representative regarding the settlement and to

prepare for potential deposition and trial testimony in the event of a contested confirmation

hearing.  Brockman Declaration ¶ 22.  Until the plan was confirmed the possibility remained that

another party could file a late objection to the estimation of the Asbestos Trust Claim or some

other material aspect of the plan, that the Court would not confirm the plan, that the Debtors

might withdraw the plan in response to negotiations with other parties, or that the Court would

require the Future Claimants' Representative's testimony regarding the treatment of future

asbestos personal injury claims under the plan.  Brockman Declaration ¶ 22; Trafelet Declaration

¶ 13.

29.     ARPC continued to examine and analyze the immense number of documents to

test the confidential legal and factual theories that it was exploring on behalf of the Future

Claimants' Representative in order to prepare him to testify, if necessary, that he had made the

fullest possible review of the available data and to lessen the likelihood that he could be subject

to "gotcha" cross-examination on factual matters contained in the million odd documents given

to his experts in January.  Brockman Declaration ¶ 22; Trafelet Declaration ¶ 13.

30.     During this time, the Future Claimants' Representative was engaged in

negotiations with various parties regarding the terms of the MLC Asbestos PI Trust Distribution

Procedures and the MLC Asbestos Trust Agreement, which were essential to the establishment

of the Asbestos Trust.  These negotiations continued at least up until March 1, 2011.  Trafelet

Declaration ¶ 14.

**M.     Confirmation Was Contested Until the Court Entered the Confirmation Order on
March 29, 2011.**

31.     On March 3, 2011, the Court held a contested confirmation hearing on the

Debtors' plan and on March 7, 2011 the Court entered a bench decision on objections to

confirmation (the "**Bench Decision**") (Docket No. 9638).  In the Bench Decision, the Court

ordered the Debtors to make certain revisions to the plan, stating that the plan would be

confirmed upon receipt of revised plan language in conformity with the Bench Decision.  Bench

Decision, pg. 35.

32.     Notwithstanding the Bench Decision, the State of New York continued to object to the confirmation of the plan and confirmation was contested up until the Court entered its order (the "**Confirmation Order**") (Docket No. 9941) confirming the plan on March 29, 2011.

33.     Thus, until the entry of the Confirmation Order on March 29, 2011, confirmation of the Debtors' plan remained contested.

**N.     ARPC Seeks Compensation for the Valuable Services Rendered to the Future Claimants' Representative.**

34.     On May 16, 2011, ARPC filed its *Third Interim and Final Application of Analysis Research Planning Corporation as Asbestos Claims Valuation Consultant to Dean M. Trafelet in his Capacity as Legal Representative for Future Asbestos Personal Injury Claimants for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period From October 1, 2010 through March 29, 2011 and the Final Period From March 1, 2010 through March 29, 2011* (the "**Third Interim and Final Fee Application**"), seeking compensation in the total amount of $760,038.55 for services rendered to the Future Claimants' Representative during these cases.

**O.     The Fee Examiner and the Debtors Use the Wrong Standard to Erroneously Assert that ARPC's Services were Unnecessary.**

35.     On September 12, 2011, the Fee Examiner filed the Fee Examiner's Objection to the Third Interim and Final Fee Application objecting to $188,035.50 in fees for services rendered by ARPC on valuation matters subsequent to January 21, 2011 because such services were rendered after the Future Claimants' Representative executed the Stipulation and Order. Fee Examiner's Objection, ¶ 16.

36.     On the same day, the Debtors' filed the Debtors' Objection to the Third Interim and Final Fee Application objecting to $351,306.20 in fees for services rendered by ARPC

following the execution of the Stipulation and Order on January 21, 2011.  Debtors' Objection ¶ 7.  The Debtors' assert that it was both unnecessary and unreasonable for ARPC to continue its analysis of the Debtors' asbestos liability after the Future Claimants' Representative had agreed to the amount of the Asbestos Trust Claim.  The Debtors' further argue that at the very latest, ARPC should have ceased its efforts when the Court approved the Stipulation and Order on February 14, 2011.  *Id.* at ¶ 9.

37.    This is the wrong standard.  ARPC rendered valuable services to the Future Claimants' Representative whose role in the case continued until confirmation.  That the Debtors or the Fee Examiner do not now view—in 20/20 hindsight—their services as valuable is not determinative.  The services were valuable to the Future Claimants' Representative and his constituents and were therefore, valuable to the estate.

## RESPONSE

### A.    ARPC Provided Valuable Services to the Future Claimants' Representative and His Constituency.

38.    Both the Fee Examiner and the Debtors seem to assert that the Future Claimants' Representative's job in this case was done when the Future Claimants' Representative executed the Stipulation and Order.  Nothing, however, can be further from the truth.  As outlined above and in the Trafelet Declaration, the Future Claimants' Representative was appointed to protect the interests of Future Claimants in connection with *the formulation, negotiation and confirmation* of a chapter 11 plan in these cases.  Trafelet Declaration ¶ 3.  Thus, the Future Claimants' Representative's work in these cases was not complete until the plan was confirmed and the Asbestos Trust was established.  Trafelet Declaration ¶ 13.

39.    Although the settlement of the amount of the Asbestos Trust Claim was certainly a stepping stone in the progress of these cases, the settlement did not resolve all issues

surrounding confirmation of the Debtors' plan.  Indeed, the Stipulation and Order was only binding on its signatories, and until the Court approved the Stipulation and Order, the settlement was subject to objection by other parties in interest.  In addition, the time for objecting to the plan had not yet passed.

40.     The Future Claimants' Representative instructed ARPC to continue working on its review and analysis of the Debtors' aggregate asbestos-related liabilities because the case remained contested and the possibility remained that the Court might disapprove the Stipulation and Order or that the Debtors might withdraw the plan as a result of negotiations with other parties.  Trafelet Declaration ¶ 10; Brockman Declaration ¶ 19.  ARPC's work was indispensable to the Future Claimants' Representative's duty to protect the interests of the Future Claimants in all aspects of these cases.  Trafelet Declaration ¶ 11.  In the event that the Stipulation and Order was not approved and the estimation of the Debtors' asbestos-liabilities went to trial, or confirmation was contested, or the Court requested testimony regarding the Future Claimants' Representative's opinion of the Stipulation and Order, the Asbestos Trust or the plan itself, the Future Claimants' Representative could not risk being placed in the position of having an incomplete analysis of the materials provided to him and his professionals.  Trafelet Declaration ¶¶ 11, 13.  Moreover, the Future Claimants' Representative and ARPC were obligated to ensure that the materials recently produced by the Debtors did not materially alter the prior analyses of the Debtors' asbestos-related liabilities.  Brockman Declaration ¶ 19; Trafelet Declaration ¶ 11.

41.     As evidenced by the numerous objections filed to confirmation, approval of the Stipulation and Order did not mean that confirmation of the Debtors' plan was guaranteed.  No less than thirteen objections to confirmation were filed and the final objection was not resolved until the Court entered the Confirmation Order on March 29, 2011.

42.    As the estate representative for Future Claimants, the Future Claimants'
Representative could not rest until the plan was confirmed and the Asbestos Trust was
established.  Trafelet Declaration ¶ 13.  Instead, it was his duty to remain abreast of the
developments in the case and to be prepared to defend the interests of his constituents should the
Stipulation and Order be rejected by the Court and the Estimation Proceeding went forward, or in
the event that the Debtors' plan was contested, modified or withdrawn.   Moreover, the Future
Claimants' Representative was obligated to be ready to testify in connection with confirmation
of the plan or any other matter that the Court may request, including the plan itself, the Asbestos
Trust, the plan injunctions, or the MLC Asbestos Trust Distribution Procedures.  In light of his
continuing duties to the Future Claimants in these cases, the Future Claimants' Representative
determined that it was necessary for ARPC to continue its review and analysis of the asbestos
claim records that ARPC received in January.  Trafelet Declaration ¶¶ 11 - 13.  Consequently,
ARPC continued its work.

43.    All services provided by ARPC up to and including March 29, 2011, were
performed at the request of the Future Claimants' Representative in fulfillment of his duty to
protect the interests of the Future Claimants throughout the entire plan process.  Brockman
Declaration ¶ 24; Trafelet Declaration ¶ 16.  These services were valuable to the Future
Claimants' Representative and his constituency and therefore were valuable to an important
creditor component of the estate.  Trafelet Declaration ¶ 16.

**B.    Upon Approval of the Stipulation and Order, ARPC Sought Guidance from the
Future Claimants' Representative Before Continuing its Analysis.**

44.    The Debtors assert that it was ARPC's duty as a case professional to recognize
that the execution of the Stipulation and Order may have rendered its continued analysis
unnecessary and seem to argue that ARPC should have made the independent judgment to stop

working on the valuation of the Debtors' asbestos liabilities.  This argument, however, ignores

the fact that ARPC was hired by the Future Claimants' Representative to assist *him* with *his*

duties in this case.

45.     As explained above and in the Trafelet Declaration and the Brockman

Declaration, after the Court approved the Stipulation and Order, ARPC sought guidance from the

Future Claimants' Representative and his counsel as to how to proceed with the unfinished

analysis of the multitude of New GM and Debtors' asbestos claim records.  Brockman

Declaration ¶ 20-22; Trafelet Declaration ¶ 12.  ARPC was instructed to continue working on the

documents in order to finalize an expert opinion for the Future Claimants' Representative

regarding the settlement and to prepare for potential deposition and trial testimony in connection

with confirmation.  Brockman Declaration ¶ 22; Trafelet Declaration ¶ 12.  The Future

Claimants' Representative did not want to risk being left with an unfinished analysis in the event

that his testimony was required at confirmation or in the event that the plan did not get

confirmed.  Trafelet Declaration ¶ 11.  ARPC's continued work was also necessary to ensure that

there was nothing in the late produced materials that altered the prior analysis of the Debtors'

asbestos liabilities.  Trafelet Declaration ¶ 11; Brockman Declaration ¶ 19.

46.     Thus, ARPC did exactly what the Debtors assert they should have done.  ARPC

sought guidance from the Future Claimants' Representative on whether or not they should

continue their analysis of the Debtors' asbestos liabilities in light of the settlement.  ARPC was

instructed to continue its work and it did just that.  The Future Claimants' Representative

employed ARPC and it was ARPC's job to perform the analysis that he requested.  ARPC should

not be faulted for complying with the instructions of the professional who hired it.

47.     Because ARPC acted reasonably in the continuation of its efforts to review and analyze the Debtors' asbestos-related liabilities at a time when plan confirmation was contested and at the direction of the case professional who hired ARPC, ARPC should be awarded compensation for the services rendered in this case.

### C.     The Debtors' Requested Disallowance Is Inflated.

48.     As noted above, the Debtors have objected to $351,306.20 in fees incurred by ARPC for services rendered after January 21, 2011 and have criticized ARPC for continuing to work post-confirmation.  However, the Debtors' analysis ignores the fact that ARPC has only requested compensation for fees and expenses incurred through and including March 29, 2011. *See* Third Interim and Final Fee Application, pg. 4 n. 2.  As noted in the Brockman Declaration and acknowledged by the Fee Examiner in the Fee Examiner's Objection, the $16,741.00 that ARPC incurred in fees following confirmation of the Second Amended Plan were not included in the fees requested in the Third Interim and Final Fee Application.  Brockman Declaration ¶ 25; Fee Examiner's Objection ¶ 21.  Because ARPC did not request compensation for these services, these fees should not be subtracted from ARPC's total final award in these cases.

49.     A careful review of Exhibit A to the Debtors' Objection also reveals that the Debtor included 5.3 hours and $948.20 in fees in its calculation that relate to services provided before January 21, 2011.  These services are not properly included in the Debtors' Objection and should not be disallowed.

### CONCLUSION

WHEREFORE, ARPC respectfully requests that the Court overrule the Debtors' Objection and the Fee Examiner's Objection, approve its Third Interim and Final Fee

Application as modified by the disallowances agreed to with the Fee Examiner, and grant it such

other and further relief as is just.

Dated: September 21, 2011
      Washington, D.C.           Respectfully submitted,

                      **ANALYSIS RESEARCH PLANNING CORPORATION**

                      By: */s/ B. Thomas Florence*
                                    B. Thomas Florence

                      1220 19th Street, NW, Suite 700
                      Washington, D.C. 20036

                      **Asbestos Claims Valuation Consultant to Dean M. Trafelet in his capacity as Legal Representative for Future Asbestos Personal Injury Claimants**

Dated: September 21, 2011
      Dallas, Texas           **STUTZMAN, BROMBERG, ESSERMAN & PLIFKA, A PROFESSIONAL CORPORATION**

                      /s/ *Sander L. Esserman*
                      Sander L. Esserman (admitted *Pro Hac Vice*)
                      Robert T. Brousseau (admitted *Pro Hac Vice*)
                      Peter C. D'Apice
                      Jo E. Hartwick (Admitted *Pro Hac Vice*)
                      2323 Bryan Street, Suite 2200
                      Dallas, Texas 75201
                      Telephone:  (214) 969-4900
                      Facsimile:  (214) 969-4999

                      **Counsel for Dean M. Trafelet in his Capacity as the Legal Representative for Future Asbestos Personal Injury Claimants**

**EXHIBIT A**

**Hearing Date and Time: September 26, 2011 at 9:45 a.m. (Eastern Time)**

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA
A PROFESSIONAL CORPORATION
Sander L. Esserman (Admitted *Pro Hac Vice*)
Robert T. Brousseau (Admitted *Pro Hac Vice*)
Peter C. D'Apice
Jo E. Hartwick (Admitted *Pro Hac Vice*)
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900
Facsimile:  214-969-4999

Counsel for Dean M. Trafelet in his
Capacity as Legal Representative for Future Asbestos
Personal Injury Claimants

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X
                                              )
In re                                         )         Chapter 11
                                              )
MOTORS LIQUIDATION COMPANY, *et al.,*         )         Case No. 09-50026 (REG)
                                              )
     f/k/a General Motors Corp., *et al.*     )
                                              )
                    Debtors.                  )         (Jointly Administered)
---------------------------------------------------------------X

**DECLARATION OF AMY BROCKMAN**
**IN SUPPORT OF RESPONSE OF ANALYSIS RESEARCH PLANNING**
**CORPORATION TO OBJECTIONS TO ITS**
**THIRD INTERIM AND FINAL FEE APPLICATION**

I, Amy Brockman, do declare and say the following:

1.      I am over the age of 18 years, and am competent and otherwise qualified to make

this declaration.  Unless otherwise stated herein, I have personal knowledge of the facts set forth

in this declaration.

2.      I submit this declaration in support of the *Response of Analysis Research Planning Corporation to Objections to its Third Interim and Final Fee Application* (the "**Response**").[1]

3.      I am a Vice President of the firm of Analysis Research Planning Corporation ("**ARPC**"), which maintains an office at 1220 19th Street, NW, Suite 700, Washington, D.C. 20036.  I am authorized to execute this declaration on behalf of ARPC.

4.      ARPC is a consulting firm providing analytical services focused on the estimation of claims and the development of claims procedures with regard to payments and assets of claims resolution trusts.  ARPC was retained by Dean M. Trafelet in his capacity as the Future Claimants' Representative to serve as his asbestos claims valuation consultant in these cases.

5.      During the course of these cases and at the Future Claimants' Representative's request, ARPC performed extensive analytical work to assist the Future Claimants' Representative in fulfilling his duties to represent and protect the interests of Future Claimants in connection with the entire plan process, including the formulation, negotiation and confirmation of a chapter 11 plan in these cases, to estimate the value of future asbestos claims and to negotiate a settlement under the Debtors' plan that would provide compensation to such Future Claimants.  ARPC assisted the Future Claimants' Representative with the analysis of voluminous documents and materials necessary to the performance of the Future Claimants' Representative's duties during the entire plan process as well as the establishment and start-up of the Asbestos Trust created under the Debtors' plan.

6.      In connection with the analysis of the Debtors' asbestos related liabilities and the negotiation of the settlement of the Asbestos Trust Claim, the Future Claimants' Representative and his professionals sought access to various materials from the Debtors and New GM

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Response.

regarding the Debtors' current and historical asbestos related liabilities.  ARPC reviewed and

analyzed the various documents and data produced by the Debtors and New GM in order to

prepare expert reports and advise the Future Claimants' Representative on various matters in

these cases, including the amount of the Asbestos Trust Claim.

7.      Throughout the negotiations regarding the Asbestos Trust Claim, ARPC

continued to receive documents and data from various parties in connection with the discovery

related to the estimation of the Debtors' asbestos-related liabilities.  From March 2010, when

ARPC was retained and throughout the remainder of 2010, ARPC and the Future Claimants'

Representative and his attorneys repeatedly sought various items of information from the

Debtors and New GM.

8.      ARPC received access to the initial claims data in May 2010.  However, this

information was incomplete and contained very little demographic or exposure history

information necessary to adequately assess the future claim liability.  ARPC was informed that

the Debtors did not have exposure dates, dates of birth, date of death or date of diagnosis

information.

9.      In early June 2010, ARPC was informed that the Debtors would provide

additional claims data.  However, the only new information provided was a table with trial dates

for claims with a trial and a total disposition amount variable.  The new data did not include any

of the information requested by ARPC and necessary information was still missing (i.e.

diagnosis dates, asbestos exposure dates, dates of birth, dates of death, asbestos-related disease,

occupation, exposure worksite information, social security numbers, etc.).  Moreover, there was

no information regarding claims against GM's subsidiaries or foreign claims.  These areas could

have a substantial and material impact on any estimate of liability.

10.     In August 2010, the Future Claimants' Representative's counsel submitted a discovery request for more data and the Debtors agreed to provide the Future Claimants' Representative with all case documents for a sample of 650 mesothelioma claimants.  The Debtors also agreed to provide all case documents for a sample of claimants identified by the Creditors' Committee.

11.     On or about August 25, 2010, ARPC received CDs containing 9,000 pages of documents including complaints, interrogatories, and depositions.  Upon receiving these materials, ARPC began to review and code the documents into computer analyzable form for the purpose of estimating aggregate asbestos-related liabilities.  ARPC also received three databases of claims information that were extremely difficult to match up to the materials that had previously been provided and potentially conflicted with previously provided information.  ARPC reviewed these databases in order to determine whether there was any overlap and/or differences between the new databases and the previously provided information.

12.     On or about September 13, 2010, ARPC requested clarification of a number of issues relating to the claims information, but did not receive any new information.  At this time, among ARPC's most significant concerns were the lack of exposure information, potential claims from foreign subsidiaries, and whether or not the Debtors were responsible for claims from any of the Debtors' subsidiaries.

13.     In early October, ARPC received two more DVDs containing approximately 40,000 document pages relating to the claims in the Creditors' Committee's and the Future Claimants' Representative's samples.

14.     On or about November 22, 2010 ARPC received another DVD containing approximately 2,500 document pages.

15.     On or about, November 30, 2010, ARPC was informed by New GM's counsel that all responsive documents in New GM's possession had been produced and that it did not anticipate any additional production.

16.     Nonetheless, on December 29, 2010, ARPC received a copy of an "updated" database which included three new data tables.  The new tables provided information regarding Indirect Asbestos Claims, defense costs and trial dates.

17.     The data made available from the Debtors and from New GM remained incomplete during this entire period.  Throughout this time period, ARPC and the Future Claimants' Representative were seeking to affirm or negate certain confidential legal and factual theories affecting the Future Claimants' Representative's opinion by examining all claim information available to the Future Claimants' Representative.

18.     Finally, on or about January 13, 2011,  ARPC received thirteen (13) DVDs containing well over one million pages of complaints and other legal documents, mere days before certain parties to the bankruptcy—but not all parties—executed a Stipulation and Order fixing the Asbestos Trust Claim among those parties.  The Future Claimants' Representative was one of the parties executing the Stipulation and Order.  These last-minute documents contained information on 950 injured parties alleging mesothelioma (of which the documents for only two injured parties were reviewed in earlier discovery submissions) and 6,452 injured parties who allege non-mesothelioma injuries or did not provide injury information.  ARPC began reviewing and coding the documents using the same protocol that was used to review and code all other asbestos-related claim records received in this case for the purpose of assisting the Future Claimants' Representative in his review and analysis of the Debtors' asbestos-related liabilities.

19.     The Future Claimants' Representative instructed ARPC to continue to work on its review and analysis as the bankruptcy case remained contested and the possibility remained that the Court might disapprove the Stipulation and Order or that the Debtor might withdraw the plan as a result of negotiations with other parties.  ARPC and the Future Claimants' Representative had confidential discussions regarding certain legal and factual theories that needed to be tested in light of a critical analysis of all available data.  ARPC could not place the Future Claimants' Representative in the untenable position of having an incomplete analysis of the Debtors' asbestos liabilities if the estimation of the Debtors' asbestos-related liabilities went to trial, if confirmation was contested, or the Court requested testimony regarding the Future Claimants' Representative's opinion on the Stipulation and Order or on any issue in the case, especially issues relating to the Asbestos Trust, the plan injunctions, and the MLC Asbestos PI Trust Distribution Procedures.  ARPC also continued to review these materials in order to ensure that the recently received materials did not materially alter the prior confidential analyses that it had provided to its client, the Future Claimants' Representative.

20.     After the Stipulation and Order was approved by the Court, ARPC sought guidance from both the Future Claimants' Representative and his counsel as to how to proceed with the unfinished analysis of the substantial number of New GM and Debtors' asbestos claim records.  As noted below, ARPC was instructed to continue its analysis.

21.     The following time entries appearing in the Future Claimants' Representative's February 2011 and March 2011 invoices show that ARPC was in frequent contact with the Future Claimants' Representative regarding the progress of its work.


02/17            Teleconference with J. Brophy/ARPC re: status
                 of claim history data and TDP issues (.50)

6

| | |
|---|---|
| 02/18 | Reply memo to S. Esserman with directions for continued retention of ARPC's analysis and claim projections (.40) |
| 02/21 | Teleconf. with J. Brophy/ARPC re: status and schedule re: claims estimation analysis (.30) |
| 02/23 | Memo to ARPC re: finalization of claims research and estimations (.25) |
| 03/02 | Meeting with ARPC re: updating and status of finalizing claims estimations and research on marine and rail exposures (.70) and research and modeling system issues (.40) |

*See* Exhibit F to the *Third Interim and Final Application of Dean M. Trafelet in his Capacity as Legal Representative for Future Asbestos Personal Injury Claimants, for Allowance of Compensation and Reimbursement of Expenses Incurred for the Interim Period From October 1, 2010 through March 29, 2011, and the Final Period From November 13, 2009 Through March 29, 2011* (Docket No. 10247).

22.     ARPC was instructed to continue working on the documents in order to finalize an expert opinion for the Future Claimants' Representative regarding the settlement and to prepare for potential deposition and trial testimony in the event of a contested confirmation hearing.  ARPC understood that numerous objections to confirmation were filed during February 2011 and that the case remained contested until early March 2011.  Moreover, until the plan was confirmed, the possibility remained that another party could file a late objection to the estimation of the Asbestos Trust Claim or some other material aspect of the plan, that the Court would not confirm the plan, that the Debtors might withdraw the plan in response to negotiations with other parties, or that the Court would require the Future Claimants' Representative's testimony regarding the treatment of future asbestos personal injury claims under the plan.  ARPC continued to examine and analyze the immense number of documents to test the confidential

legal and factual theories that it was exploring on behalf of the Future Claimants' Representative in order to prepare him to testify, if necessary, that he had made the fullest possible review of the available data and to lessen the likelihood that he could be subject to "gotcha" cross-examination on factual matters contained in the million odd documents given to his experts in January.

23.      Thus, based on the instructions received from the Future Claimants' Representative and counsel, ARPC continued to review and code all of the 1.1 million pages of asbestos claim records in preparation for possible deposition and trial testimony.

24.      It is my understanding that confirmation was contested up until the order confirming the Debtors' Second Amended Plan was entered on March 29, 2011 and that the Debtor had the right to withdraw or modify the plan of reorganization up until that date.  All services performed by ARPC up to March 29 were at the express request of its client, the Future Claimants' Representative and were valuable to him and to his constituency, future asbestos claimants, and therefore were valuable to an important creditor component of the estate.

25.      ARPC acknowledges that the invoices submitted in support of its Third Interim and Final Fee Application include time for services rendered post-confirmation (i.e. services rendered on March 30th and March 31st).  However, as stated in footnote 2 on page 4 of the Third Interim and Final Fee Application, ARPC only requests approval of professional fees and expenses incurred through March 29, 2011.  The $16,741.00 in fees incurred for services rendered after March 29, 2011 are not included in the compensation requested in ARPC's Third Interim and Final Fee Application.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on this 21st day of September 2011, in Washington, D.C.


*/s/ Amy Brockman*
Amy Brockman

**EXHIBIT B**

STUTZMAN, BROMBERG, ESSERMAN & PLIFKA
A PROFESSIONAL CORPORATION
Sander L. Esserman (Admitted *Pro Hac Vice*)
Robert T. Brousseau (Admitted *Pro Hac Vice*)
Peter C. D'Apice
Jo E. Hartwick (Admitted *Pro Hac Vice*)
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
Telephone: 214-969-4900
Facsimile:  214-969-4999

Counsel for Dean M. Trafelet in his
Capacity as Legal Representative for Future Asbestos
Personal Injury Claimants

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X
                                                  )
In re                                             )          Chapter 11
                                                  )
MOTORS LIQUIDATION COMPANY, *et al.*,             )          Case No. 09-50026 (REG)
                                                  )
          f/k/a General Motors Corp., *et al.*    )
                                                  )
                              Debtors.            )          (Jointly Administered)
-----------------------------------------------------------------X

**DECLARATION OF DEAN M. TRAFELET**
**IN SUPPORT OF RESPONSE OF ANALYSIS RESEARCH PLANNING**
**CORPORATION TO OBJECTIONS TO ITS**
**THIRD INTERIM AND FINAL FEE APPLICATION**

I, Dean M. Trafelet, do declare and say the following:

1.      I am over the age of 18 years, and am competent and otherwise qualified to make

this declaration.  Unless otherwise stated herein, I have personal knowledge of the facts set forth

in this declaration.

2.      I submit this declaration in support of the *Response of Analysis Research*

*Planning Corporation to Objections to its Third Interim and Final Fee Application* (the

"**Response**").

3.        I am the duly appointed Future Claimants' Representative in these cases.  I was appointed as the Future Claimants' Representative[1] to represent and protect the interests of Future Claimants in connection with the formulation, negotiation and confirmation of a chapter 11 plan in these cases and was granted standing to be heard as a party in interest in all matters relating to the Debtors' chapter 11 cases, as appropriate.  *See Order Pursuant to 105 and 1109 of the Bankruptcy Code Appointing Dean M. Trafelet as Legal Representative for Future Asbestos Personal Injury Claimants.*

4.        My representation of the Future Claimants in this case included, among other things, reviewing and analyzing the Debtors' plan of reorganization, the disclosure statement accompanying the plan of reorganization, reviewing and analyzing the Debtors' historical and future asbestos-related liabilities, and participating in the establishment of the Asbestos Trust, to which all present and future Asbestos Personal Injury Claims will be channeled for evaluation and payment.

5.        Following my appointment, I sought approval of and the Court granted me authority to retain certain professionals to assist me in my representation of the Future Claimants.  In that regard, I retained Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation ("**SBEP**"), as my counsel, and Analysis Research Planning Corporation ("**ARPC**") as my asbestos claims valuation consultant.

6.        During the course of these cases and at my request, ARPC performed extensive analytical work to assist me and my counsel in fulfilling my duties to represent and protect the interests of Future Claimants in connection with the entire plan process, including the formulation, negotiation and confirmation of a chapter 11 plan in these cases, to estimate the value of future asbestos claims, and to negotiate a settlement under the Debtors' plan that would

---

[1] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the Response.

provide compensation for Future Claimants.  APRC assisted me with the analysis of voluminous

documents and materials necessary to the performance of my duties during the entire plan

process as well as the establishment and start-up of the Asbestos Trust created under the

Debtors' plan.

7.      In connection with my representation of the Future Claimants, my professionals

and I engaged in extensive negotiations with the Debtors, the Creditors' Committee, the

Asbestos Claimants' Committee, and other parties in interest regarding the estimation and

valuation of the Debtors' asbestos-related liabilities and the amount of the Asbestos Trust Claim.

Throughout these negotiations, ARPC continued to receive documents and data from various

parties in connection with the discovery related to the estimation of the Debtors' asbestos-related

liabilities.  From March 2010, when ARPC was retained and throughout the remainder of 2010,

ARPC, my counsel and I repeatedly sought various items of information from the Debtors and

New GM.  As explained in detail in the *Declaration of Amy Brockman in Support of Response of*

*Analysis Research Planning Corporation to Objections to its Third Interim and Final Fee*

*Application*, the claims data was produced in a piecemeal fashion over a period of months and

was inadequate to enable me and my experts to accomplish our duties.  Several pieces of key

information were often missing and requests for clarification or additional information often did

not lead to any new information.  Throughout this time period, ARPC and I were seeking to

affirm or negate certain confidential legal and factual theories affecting my opinion by

examining all claim information available to me.

8.      Finally, on or about January 13, 2011, ARPC received thirteen (13) DVDs

containing well over one million pages of complaints and other legal documents, mere days

before certain parties to the bankruptcy—but not all parties—executed a Stipulation and Order

fixing the amount of the Asbestos Trust Claim among those parties.  I was one of the parties that executed the Stipulation and Order.  These last-minute documents contained information on 950 injured parties alleging mesothelioma (of which the documents for only two injured parties were reviewed in earlier discovery submissions) and 6,452 injured parties who allege non-mesothelioma injuries or did not provide injury information.  APRC began reviewing and coding the documents using the same protocol that was used to review and code all other asbestos-related claim records received in this case for the purpose of assisting me in my review and analysis of the Debtors' asbestos-related liabilities.

9.      Although the Stipulation and Order fixing the Asbestos Trust Claim was executed by the parties to the agreement on January 20, 2011 and January 21, 2011, the Stipulation and Order remained subject to approval of the Court.  In addition, the time for objecting to the plan had not yet passed.

10.      I instructed ARPC to continue working on its review and analysis of the Debtors' aggregate asbestos-related liabilities because the bankruptcy case remained contested and the possibility remained that the Court might disapprove the Stipulation and Order or that the Debtors might withdraw the plan as a result of negotiations with other parties.  ARPC and I had confidential discussions regarding certain legal and factual theories that needed to be tested in light of a critical analysis of all available data.

11.      I considered ARPC's work to be indispensable to my duties as the Future Claimants' Representative as the Stipulation and Order remained subject to Court approval and the plan was subject to objections by other parties in interest.  In the event the Stipulation and Order was not approved and the estimation of the Debtors' asbestos-liabilities went to trial, confirmation was contested, or the Court requested testimony regarding my opinion of the

4

Stipulation and Order, I did not want to be left in the position of having an incomplete analysis

of the materials provided to me.  Consistent with my obligations to the Future Claimants I

represent, I wanted ARPC to continue to review these materials to ensure that the recently

received materials did not materially alter the prior confidential analyses that it had provided to

me.

12.    Following the approval of the Stipulation and Order, ARPC sought guidance from

me and my counsel as to how to proceed with the unfinished analysis of the substantial number

of New GM and Debtors asbestos claim records.  I instructed ARPC to continue working on their

analysis of the documents in order to finalize an expert opinion regarding the settlement and to

prepare for potential deposition and trial testimony in the event of a contested confirmation

hearing.  Numerous objections to confirmation were filed during February 2011 and the case

remained contested until early March 2011.

13.    My representation of the Future Claimants did not end with the resolution of the

amount of the Asbestos Trust Claim.  My duty to the Future Claimants was to represent their

interests in all aspects of the Debtors' cases, including confirmation of the Debtors' plan and the

establishment of the Asbestos Trust.  Until the plan was confirmed, the possibility remained that

another party could file a late objection to the estimation of the Asbestos Trust Claim or some

other material aspect of the plan, that the Court would not confirm the plan, that the Debtors

might modify or withdraw the plan in response to negotiations with other parties, or that the

Court would require my testimony regarding the treatment of future asbestos personal injury

claims under the plan, or any issue relating to the case, especially issues relating to the Asbestos

Trust, the plan injunctions, and the MLC Asbestos Trust Distribution Procedures, all of which

necessitated thorough, ongoing and updated research and analysis essential to fulfilling my

court-appointed fiduciary duties.  Thus, it was necessary for ARPC to continue to examine and

analyze the immense number of documents to test the confidential legal and factual theories that

it was exploring on my behalf.  ARPC's work was also necessary to allow me to prepare to

testify, if necessary, that I had made the fullest possible review of the available data and to lessen

the likelihood that I could be subject to "gotcha" cross-examination on factual matters contained

in the million odd documents given to my experts in January 2011.

14.     ARPC's work was also necessary to my evaluation of the terms of the MLC

Asbestos Trust Agreement and the MLC Asbestos PI Trust Distribution Procedures, which were

continually evolving during this case and were subject to negotiations at least up until March 1,

2011.

15.     Thus, based on my instructions, ARPC continued to review and code all of the 1.1

million pages of asbestos claim records in preparation for possible deposition and trial testimony.

16.     Confirmation of the Debtors' plan was contested up until the Court entered its

order confirming the Debtors' Second Amended Plan on March 29, 2011.  Until the Second

Amended Plan was confirmed, the Debtors had the right to withdraw or modify the plan.  All

services provided by ARPC up to March 29, 2011 were performed at my request, were valuable

to my constituency, the Future Claimants, and me, and therefore were valuable to an important

creditor component of the estate.


[signature page to follow]


6

I declare under penalty of perjury that the foregoing is true and correct.


Executed on this 21st day of September 2011, in Baileys Harbor, Wisconsin.


*/s/ Dean M. Trafelet*
Dean M. Trafelet