**HEARING DATE AND TIME: September 26, 2011 at 2:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Post-Effective Date
Debtors and Motors Liquidation GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                            :
**In re**                                   :        **Chapter 11 Case No.**
                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.,*   :        **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.* :
                                            :
                **Debtors.**                :        **(Jointly Administered)**
                                            :
------------------------------------------------------------x

## REPLY TO CLAIMANT BARRY H. SPENCER, JR.'S OPPOSITION TO CROSS-MOTION OF POST-EFFECTIVE DATE DEBTORS AND MOTORS LIQUIDATION COMPANY GUC TRUST FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 1142(B) AND FED R. BANKR. P. 7012(B) AND 9014(C) (1) ENFORCING SETTLEMENT AGREEMENT WITH CLAIMANT BARRY H. SPENCER, JR.; (2) STRIKING DOCUMENTS FILED BY CLAIMANT; AND (3) ENJOINING CLAIMANT FROM FURTHER ACTION AGAINST THE DEBTORS, POST-EFFECTIVE DATE DEBTORS, MOTORS LIQUIDATION COMPANY GUC TRUST, AND THEIR OFFICERS AND PROFESSIONALS

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as post-effective date debtors (collectively, the "**Debtors**") and Motors

Liquidation Company GUC Trust (the "**GUC Trust**"), file this reply (the "**Reply**") to the

opposition (ECF No. 10737, the "**Opposition**") filed by Claimant Barry H. Spencer, Jr.

("**Claimant**") in connection with the Cross-Motion of Post-Effective Date Debtors and Motors

Liquidation Company GUC Trust for Entry of Order Pursuant to 11 U.S.C. §§ 105(a) and

1142(b) and Fed. R. Bankr. P. 7012(b) and 9014(c) (I) Enforcing Settlement Agreement with

Claimant Barry H. Spencer, Jr.; (II) Striking Documents Filed by Claimant; and (III) Enjoining

Claimant From Further Action Against the Debtors, Post-Effective Date Debtors, Motors

Liquidation Company GUC Trust, and Their Officers and Professionals (ECF No. 10737, the

"**Motion**") and respectfully represent:

## Background

1.        On July 7, 2011, the Debtors and the GUC Trust filed the Motion seeking

entry of an order (i) enforcing a settlement agreement with Claimant; (ii) striking documents

filed by Claimant; and (iii) enjoining Claimant from further actions against the Debtors, the GUC

Trust, and their officers and professionals.

2.        On August 22, 2011, Claimant filed the Opposition to the Motion seeking

to invalidate the Spencer Settlement Agreement[1] as an illegal contract, asserting that the

agreement does not meet the "legal criteria of a contract," was based upon "fraud, deceit and

collusion," and was withdrawn by Claimant.  Opposition at 1.

3.        The Opposition is difficult to decipher and fails to rebut the Motion.

Accordingly, the Debtors and the GUC Trust stand by the Motion, reiterate their positions, and

state as follows:

## The Spencer Settlement Agreement Should Be Enforced by the Court

4.        The Spencer Settlement Agreement was the result of extensive, arm's

length negotiation between Claimant and the Debtors pursuant to the ADR Procedures

established by this Court.  As set forth in the Smolinsky Declaration, Claimant executed the

Spencer Settlement Agreement after Debtors' counsel explained the expected proposed treatment

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

of allowed unsecured claims under the Debtors' soon-to-be proposed chapter 11 plan and provided anecdotal information on the expected market value of the stock to be distributed on account of allowed claims.  (*See* Smolinsky Dec., ¶¶ 7-8.)

5.    Despite being engaged and capable of understanding the information conveyed by Debtors' counsel prior to execution of the settlement (*see* Smolinsky Dec., ¶ 8), Claimant now asserts that "sales tax, fees and other charges to dispose of the GM warrants, or at the time to be subjected to a 75%-85% loss on the sale of $200,000.00 worth of stock warrants" serves to "compound" the alleged injury underlying the Spencer Claims and result in "post-bankruptcy acts of fraud, deceit, [and] barratry."  Opposition ¶ 1.

6.    Claimant cites to *In re Sure-Snap Corp.*, 983 F. 2d 1015 (11th Cir. 1993) for the proposition that "[b]ankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the debtor from the costs of post-bankruptcy acts."  Opposition ¶ 1 (citing *Sure-Snap*, 983 F.2d at 1018).  Unlike the post-confirmation attorneys' fees at issue in *Sure-Snap*, Claimant's claims are purely prepetition claims based upon, among other things, a prepetition personal injury claim.  (*See* Smolinsky Dec., Ex. 1 and 2.)  Claimant cannot demonstrate any injury based upon the post-bankruptcy acts of the Debtors.

7.    In support of his purported post-bankruptcy injuries, Claimant argues that the Debtors' failure to respond to his numerous pleadings violated Claimant's due process rights. In support of this argument, Claimant argues that "notification of legal responsibility is the 'first essential of due process of the law.'"  Opposition ¶ 3 (citing *Connally v. General Construction Co.*, 269 U.S. 386 (1926)).  Claimant's due process argument misconstrues the holding in *Connally*.  In *Connally*, the Court examined whether an ambiguous state penal statute deprived parties of their due process rights and held that "a statue which either forbids or requires the

doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law." *Connally*, 269 U.S. at 291. Due process does not require the Debtors to expend estate resources to respond to each of the Claimant's pleadings and letters while managing their active chapter 11 cases and seeking to resolve more than 80,000 claims.

8.     Claimant further suggests that the Debtors' silence in response to his pleadings can be "equated with fraud where there is a legal or moral duty to speak or where an inquiry left unanswered would be intentionally misleading." Opposition ¶ 3 (citing *United States v. Tweel*, 550 F.2d 297 (5th Cir. 1977)). In *Tweel*, the court held that an Internal Revenue Service agent violated a taxpayer's Fourth Amendment rights against unreasonable searches in failing to apprise the taxpayer of the "obvious criminal nature of [the] investigation" in obtaining consent for the search and held that a "silent misrepresentation was both intentionally misleading and material." *Tweel*, 550 F.2d at 299. Here, unlike in *Tweel*, the Debtors owed no "legal or moral duty to speak" and there was nothing misleading about the Debtors' failure to immediately respond to each of the Claimant's nonsensical pleadings. The Debtors have responded to Claimant's pleadings through the Motion.

9.     Claimant argues that the Spencer Settlement Agreement was the result of undue influence and claims, that "the Debtors . . . utilized a systematic game of control and influence, to make Spencer respond favorably to their demands," and seems to suggest that the Debtors' efforts to get Claimant to keep his brother as an authorized representative amounted to undue influence. Opposition ¶ 5. As explained in the Motion, the Debtors requested that Claimant provide the Debtors with a power of attorney for his brother because Claimant was

incarcerated during the negotiation of the Spencer Settlement Agreement.  Mot. at n.8.  Further,

as Claimant correctly cites:

> Under New York law, a party claiming that it was unduly influenced to enter a contractual relationship must prove that it contracted under circumstances indicating that a 'relationship of control' existed and that the 'stronger' of the two parties had exerted influence over the other to 'destroy the weaker party's free will and substitute it for the will of the [other].'

*Sun Forest Corp. v. Shvili*, 152 F. Supp. 2d 367, 393 (S.D.N.Y. 2001) (quoting *Hoffman v.*

*Spinchorn*, No. 95-CV-0579E (Sc), 1997 U.S. Dist. LEXIS 3130 (W.D.N.Y. Mar. 13, 1997).

However, Claimant fails to note the heavy burden on a party seeking to invalidate a contract:

> The burden is heavy:  a party seeking to invalidate a contract must demonstrate that it was manipulated into signing a contract as a consequence of conduct worse than 'even pressure, no matter how bad' because 'undue influence is tantamount to a species of cheating. . . .
>
> Moreover, a court considering an undue influence defense must find that there was an 'advantage sought and obtained for the actor in whom he has an interest.'

*Id.* (quoting *Kazaras v. Manufacturers Trust Co.*, 4 A.D. 2d 227, 237-38 (1st Dep't 1957)

(Breitel, J.)).    In addition, one of the cases cited by Claimant notes that invalidation of

contractual obligations on the basis of economic duress is an extreme remedy:

> Because an element of economic duress is thus present when many contracts are formed or releases given, the ability of a party to disown his obligations under a contract or release on that basis is reserved for extreme and extraordinary cases.  Otherwise, the stronger party to a contract or release would routinely be at risk of having its rights under the contract or release challenged long after the instrument became effective.

*VKK Corp. v. National Football League*, 244 F.3d 114, 123 (2d Cir. 2001).  Here, Claimant fails

to demonstrate that he was manipulated into signing the Spencer Settlement Agreement by the

Debtors.  No "relationship of control" existed between the Debtors and Claimant, and the

Debtors did not seek to substitute their will for that of the Claimant, as evidenced by the lengthy correspondence leading up to the Spencer Settlement Agreement.  (*See* Smolinsky Dec. Exs. 3, 4, 5, 6.)  In fact, it was Claimant that held the leverage in the negotiation of the Spencer Settlement Agreement, the only reason why the Debtors were willing to provide a settlement offer of $200,000.00 was to avoid the expenditure of resources addressing Claimant's ridiculous $682,000,000.00 claim.[2]

    10. Claimant argues that he has not ratified the settlement because he had no knowledge of the "material particulars and circumstances."  Opposition ¶ 6.  In support of his contention that ratification of the settlement would require "full knowledge of the material particulars and circumstances,"  Claimant relies on an 1878 decision involving a will which prohibited the executors from disposing of the testator's real estate for the purpose of forming a mining corporation.  *See Adair v. Brimmer*, 74 N.Y. 539 (1878)).  In *Adair*, notwithstanding the express prohibition in the will, the executors transferred the lands for the purpose of organizing a mining corporation and argued that the decision had been ratified by the beneficiaries.  The court held that

> To establish a ratification by a [beneficiary], the fact must not only be clearly proved, but it must be shown that the ratification was made with a full knowledge of all the material particulars and circumstances, and also in a case like the present that the [beneficiary] was fully apprised of the effect of the acts ratified, and of his or her legal rights in the matter.

---

[2] An implied warranty claim against the dealer arising from the same motor vehicle accident upon which the Spencer Claims are based was dismissed for failure to demonstrate a defect to the automobile in question.  *See Spencer v. Expressway Toyota, Inc.*, Case No. 09-P-336, 2009 Mass. App. Unpub. LEXIS 1305 (Mass. App. Ct. Dec. 16, 2009)  Accordingly, the Spencer Claims assert a variety of bizarre bases such as, Disrespect by Judge or Officer ($2,000,000.00), Unlawful Distraint or Encroachment of Public Hazard Bond Injury and Damage ($342,000,000.00), Freedom or Speech ($2,000,000.00).etc.  (*See* Smolinsky Dec. Exs. 1 and 2 at pp. 3 of 6 and 4 of 6.)

*Id.* at 554.  Here, Claimant is not merely a beneficiary of the Spencer Settlement Agreement, he is a party to the agreement itself.  Claimant ratified the terms of the settlement through execution on September 1, 2010, at which point he had been fully advised of the terms of the settlement and the expected treatment of allowed unsecured claims under the Debtors' chapter 11 plan.

11.    Claimant recognizes that "generally, a party who makes an informed choice will not be relieved of the consequences when it subsequently develops that the choice was unfortunate."  *Dal Int'l Trading Co. v. Sword Line, Inc.*, 286 F.2d 523, 525 (2d Cir. 1961).[3] Claimant asserts that the instant case is different because the Debtors violated a purported duty to disclose all material facts in connections with the settlement, such as "the facts, the laws pertaining to the contract and how it will be dealt with by the Court."[4]  As set forth in the Smolinsky Declaration and described above, the Debtors disclosed all material facts relating to the settlement agreement and the Debtors' attorneys bear no duty to educate a claimant on the law relating to settlement agreements.  Having voluntarily entered into a binding settlement agreement, Claimant should not be permitted to rescind the Spencer Settlement Agreement based on afterthought and change of mind.  *See Rivera v. Slate*, 115 A.D.2d 431, 431 (N.Y. 1985) (finding that claimant failed to meet burden to show good cause to justify setting aside a

---

[3] In *Dal*, a creditor sought to set aside a stipulation signed expunging its claims based on the creditors' ability to bring the claims in admiralty, after the creditor later determined that such claims were factually inadequate to bring in admiralty.  The Court held that the plaintiff "should not be able to test the legal consequences of another theory of the facts after the first, which led it into a stipulation on the strength of which defendant's arrangement was completely consummated, proved faulty."  *Id.*

[4] Claimant cites to *Insurance Co. North America v. Whitlock*, 216 A.D. 78, 1926 N.Y. App. Div. LEXIS 9160 (N.Y. App. Div. 1926) as the basis for the Debtors purported duty to disclose all material facts.  In *Insurance Co.*, the defendants bore a fiduciary duty to the plaintiff which created a duty "to disclose to plaintiff all material facts connected with the matters in charge of the defendants."  1926 N.Y. App Div. LEXIS 9160, at *17.

settlement where record indicated no fraud, overreaching, mutual mistake or any good cause, and "nothing but afterthought and change of mind.").[5]

12.     While acknowledging that in New York, settlements are "strongly favored and may not be lightly cast aside," Claimant asserts that, there is "cause sufficient to invalidate [the Spencer Settlement Agreement]" including "post-bankruptcy fraud, deceit, collusion that has caused mistake or accident."  Opposition ¶ 8-9.  Claimant provides only blanket assertions of fraud without any support and has failed to meet his burden to show good cause to justify the rescission of the Spencer Settlement Agreement.  It is well established that "[a]ny fraud must be pled with particularity."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005).  To sufficiently establish a fraud claim, claimant must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).  "A court may not set aside a settlement where allegations of duress are not substantiated by the record."  *Willergerodt v. Hohn*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997). Claimant has made no showing of fraud, and the Court should enforce the Spencer Settlement Agreement.

---

[5] Claimant also cites to *Ungrich v. Ungrich*, 141 A.D. 485 (N.Y. App. Div. 1910) where the Court held that a beneficiary who induced the trustee to purchase lands and then formally approved, ratified and confirmed such arrangement, was estopped from asserting that the purchase was a breach of trust.

## Conclusion

WHEREFORE, the Debtors and the GUC Trust respectfully request entry of an

order granting the relief requested in the Motion and such other and further relief as is just.

Dated:  New York, New York
September 21, 2011

/s/ Joseph H. Smolinksy
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors
and Post-Effective Date Debtors and Motors
Liquidation Company GUC Trust