**Mark Schlachet**
3637 South Green Road, 2d Floor
Cleveland, Ohio 44122
P: (216) 896-0714
F: (216)514-6406
mschlachet@gmail.com

*Attorney for Creditor-Plaintiffs*
*Additional Counsel Listed on Signature Page*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                            :
In re:                                                      : Chapter 11
                                                            :
MOTORS LIQUIDATION COMPANY, *et al.*,                       : Case No. 09-50026 (REG)
f/k/a GENERAL MOTORS CORP., *et al.*,                       :
                                                            :
Debtors.                                                    : (Jointly Administered)
-----------------------------------------------------------X
                                                            :
**JOHN MORGENSTEIN, MICHAEL JACOB,**                        :
as Executor of the Estate of Doris Jacob,                   :
and **ALANTE CARPENTER** individually                       :
and on behalf of all others similarly situated,             :
                                                            :
          Plaintiff,                                        :
                                                            : Adversary Proceeding No. _____
     v.                                                     :
                                                            :
**MOTORS LIQUIDATION COMPANY**                              :
**f/k/a GENERAL MOTORS CORPORATION**,                       :
a Delaware Corporation,                                     :
                                                            :
Defendant.                                                  :
-----------------------------------------------------------X

## COMPLAINT FOR REVOCATION OF DISCHARGE

Plaintiffs, John Morgenstein, Michael Jacob, as executor of the estate of Doris Jacob, and Alante Carpenter ("Plaintiffs"), being creditors/parties in interest of the above-captioned debtors and debtors-in-possession in these chapter 11 cases (collectively, the "**Creditors**"), seek a limited revocation of the confirmation order entered herein on March 29, 2011, pursuant to

Section 1144 of the Bankruptcy Code, and Bankruptcy Rules 7001 and 7003, fashioned in this Court's equitable discretion so as to leave intact and undisturbed the rights of all innocent parties whose positions have changed in reliance on said Confirmation Order and, while affording Plaintiffs the relief they pray, leaving all unsecured creditors in the positions they occupied just prior to entry of the confirmation order. Accordingly, Plaintiffs allege as follows upon personal knowledge, information and belief:

## NATURE OF ACTION

1. The Plaintiffs bring this action for limited, carefully crafted plan revocation based upon the Debtors' fraud in the chapter 11 Schedules and in the procurement of a bankruptcy confirmation order. In their schedules and disclosure statement (the "Chapter 11 Documents"), the Debtors falsely omitted disclosure of its obligations to an entire class Impala Owners / Lessees (hereinafter 'Impala Owners") Debtors knew of this class of creditors ("Known Creditors"). Known Creditors knew nothing of Debtors' obligation to address their claims because the design defect in their respective vehicles was a latent defect of which GM gave no notice. Had Known Creditors been afforded appropriate fiduciary disclosure, their rights as "future claimants" would have strictly paralleled those of asbestos future claimants under the Confirmed Plan (as well as other general unsecured creditors), making equality of treatment mandatory under the confirmation standard of Section 1129 of the Bankruptcy Code. Accordingly, the confirmation Order was procured by bad faith, breach of fiduciary relationship and fraud, i.e. an impairment of the adjudicatory process occasioned by the suppression of material facts.

2. The underlying claim of Known Creditors arose from Debtors' introduction, marketing, and sale and/or lease of 2007 and 2008 model year Chevrolet Impalas, which were primarily manufactured and produced by Defendant, although some may have been produced,

marketed, and sold and/or leased by the successor in interest to Defendant, non-party General Motors Company ("New GM").[1] New GM purchased substantially all of the assets of Old GM after Old GM initiated Chapter 11 bankruptcy proceedings in June 2009. This action seeks to enforce the rights of Plaintiffs and the other Class members against the bankruptcy estate of Old GM.

3. Model year 2007 and 2008 Chevrolet Impalas ("Impalas"), which were all designed, manufactured, and sold and/or leased by GM or its successor, have defective suspensions. More specifically, the Impalas have defective rear wheel spindle rods. This defect causes rear wheel misalignment resulting in excessive, abnormal, and premature wear to the inboard side of the Impalas' rear tires.

4. GM knew of the defective rear wheel spindle rods in the Impalas generally, and, in or about June and July 2008, issued a bulletin as part of its customer satisfaction program directing GM dealers to replace the rear wheel spindle rods, align the rear wheels, and replace rear tires if they had insufficient tread depth on the inboard side – **but only for those Impalas equipped with a "police package**. ("Police Package Impalas").

5. On or about June 1, 2008, and July of 2008, GM issued Technical Service Bulletin 08032, National Highway Transportation Safety Administration ("NHTSA") Item Numbers 10026504 and 10026484. In those Technical Service Bulletins, GM noted that conditions on Impalas equipped with a "police package" result in lower tread depth on the inboard side of the rear tires or uneven rear tire wear. The July 1, 2008 Technical Service

---

[1] A Class Action Complaint under Civil Rule (b)(3) will be filed if and when permissible; and a motion for late-filed claim will be filed in due course. The filing of the instant complaint is necessitated by the running of the 180-period, which is strictly construed.

3

Bulletin summary further noted that the correction for such condition was to replace the rear wheel spindle rods.

6.     In or about July 2008, GM issued a Program Bulletin numbered 08032A, a copy of which is attached hereto as Exhibit A.

7.     The subject line of Program Bulletin 08032A reads: "Uneven Police Car Rear Tire Wear – Replace Rear Spindle Rods." This Program Bulletin pertains to model year 2007 and 2008 Chevrolet Impalas equipped with a "police package."

8.     Under the "Condition" heading, the Program Bulletin reads:

> On certain 2007-2008 model year Chevrolet Impala vehicles equipped with a police package (RPO 9C1/9C3), the rear wheel spindle rods cause rear wheel misalignment, resulting in lower tread depth on the inboard side of the rear tire.

9.     To remedy the defect in the cars subject to Program Bulletin 08032A, the "Correction" section states that:

> Dealers are to replace the rear wheel spindle rods, align the rear wheels, and if necessary, replace the rear tires (only) that exhibit lower tread depth on the inboard side. If the tires have already been replaced due to this condition, the customer may request reimbursement for the replacement tires until July 31, 2009. Attached to Program Bulletin 08032A is a form letter dated June 2008 that GM sent to all of its police vehicle customers, notifying them, in part, as follows: We have learned that a condition exists on your 2007 or 2008 model year Chevrolet Impala police vehicle that may cause rear wheel misalignment, resulting in lower tread depth on the inboard side of the rear tires.
>
> Your satisfaction with your 2007 or 2008 model year Chevrolet Impala police vehicle is very important to us, so we are announcing a program to prevent this condition or, if it has occurred, to fix it.
>
> What We Will Do: Your Chevrolet dealer will replace the rear wheel spindle rods, align the rear wheels, and if necessary, replace the rear tires. If you have replaced the original Pirelli tires with four lower speed rated tires, your dealer will install the same brand

4

or comparable tire that you installed. This service will be performed for you at no charge.

10. There are no material differences between the rear wheel spindle rods installed and equipped in Police Package Impalas and the rear wheel spindle rods installed and equipped in Impalas without a police package. ("Consumer Impalas").

11. Despite having warranted all Impalas against rear wheel spindle rod defects, GM has failed to remedy the rear wheel spindle rod defect in Consumer Impalas, causing those Consumer Impalas' owners and/or lessees to sustain significant damages.

12. Despite having provided notice of the known rear wheel spindle rod defect to the owners and/or lessees of Police Package Impalas in June and July 2008, and despite having knowledge of the identities of Impala owners and/or lessees generally, when GM filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 1, 2009, and at all times before and after, GM failed to provide notice of the rear wheel spindle rod defect to Consumer Impala owners and/or lessees and, further, failed to provide them with notice of GM's bankruptcy proceedings and the claim deadlines relating thereto in the Chapter 11 Documents or otherwise.

13. GM's conduct amounted to a "secret warranty," sometimes referred to as a "silent recall," by giving notice as to and fixing only the defective vehicles of Police Package Impala owners. The term "secret warranty" is used to describe the practice by which an automaker establishes a discriminatory policy to pay for repair of a defect as to certain purchasers without making the defect or the policy known to the public at large.

14. Once GM filed for Bankruptcy, went insolvent and had common law and statutory duties of a fiduciary to their creditors, GM's fiduciary duties of full disclosure required

5

giving notice to and of Consumer Impala owners; and its failure to do so was a breach of fiduciary duty as to the class.

15. The "fix" for the alleged defect is known as the "Rod Kit," being replacement part no. 19208347. The Rod Kit has an approximate cost of $250, and requires an estimated 2.5 hours of technician time for installation at a cost of approximately $200, for a total of $450.00. Replacement tires (225/60R16) for the Consumer Impalas (due to spindle/suspension related premature tire wear) ranged from $80.99 to $169.99 apiece according to a recent Pep Boys quotation. The claims of Known Creditors are not *de minimus*.

**EFFORTS TO RESOLVE PLAINTIFFS' DILEMMA WITHOUT LITIGATION**

16. The defect in spindle rods was not known to Plaintiffs at all times prior to Plain Confirmation on March 29, 2011, or to the public generally, until an unrelated suit was filed against New GM in July 2011 in the Eastern District of Michigan. Plaintiffs quickly sought counsel, and that counsel made a demand upon New GM, which denied any and all warranty liability vis-à-vis the design defect at issue.

17. Plaintiffs then approached Debtors' c*ounsel, seeking a consensual late-filing of class claim, subject to all* defenses, procedural and substantive, which Old GM has or may have to the instant claims.

18. In an effort to avoid protracted, adversarial litigation, Plaintiffs suggested immediate referral to the ADR Program which this Court has authorized, thus minimizing expense to the estate and requiring none of this Court's time.

19. GM has acted or refused to act on grounds generally applicable to this Class.

20. Debtors did not pursue Plaintiffs suggestions, but rather, dismissed them out of hand. In fact, Debtors' counsel abruptly directed Plaintiffs to this Court.

6

**JURISDICTION AND VENUE**

21.    On June 1, 2009, (the "Petition Date"), all Debtors with material assets filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code"). On March 29, 2011, the Court entered an order (the "Confirmation Order") confirming the Plan.

22.    This is an adversary proceeding pursuant to Rules 7001 and 7003 of the Federal Rules of Bankruptcy Procedure.

23.    The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1334(b), in that this is a civil proceeding arising in or related to cases under title 11 of the United States Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b) (2).

24.    Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

**PARTIES**

**Plaintiffs**

25.    John Morgenstein is a resident of Olmsted Township, Ohio. Mr. Morgenstein is a citizen of the State of Ohio. Mr. Morgenstein owns a Consumer Impala – specifically, a 2008 Chevrolet Impala that he purchased new in November 2007 at Serpentini Chevrolet, located at 15303 Royalton Road, in Strongsville, Ohio ("Morgenstein's Impala"). Mr. Morgenstein has been damaged as a result of Defendant's wrongful conduct, as alleged herein. Among his damages is the fact that, due to excessive and premature wear and tear, caused by Defendant's wrongful conduct, the rear-wheel tires on Morgenstein's Impala had to be replaced after only approximately 28,000 to 30,000 miles and will again require replacement after only another 15,000 miles.

26.    Michael Jacob, as Executor of the Estate of Doris Jacob, is a resident of the State

of Wisconsin, as was the decedent. Mr. Jacob was the owner of a Consumer Impala – specifically, a 2008 Chevrolet Impala, purchased new by Doris Jacob from Gustman Chevrolet Sales Inc., in or about September 2007 in the State of Wisconsin ("Jacob's Impala"). Mr. Jacob has been damaged as a result of Defendant's wrongful; conduct, as alleged herein. Among his damages is the fact that, due to excessive and premature wear and tear, caused by Defendant's wrongful conduct, the rear-wheel tires on Jacob's Impala had to be replaced after only 21,000 miles, at a cost of over $600.

27. Alante Carpenter is a resident of the State of Illinois. Ms. Carpenter is the owner of a Consumer Impala – specifically, a 2008 Chevrolet Impala, which she purchased new, from Midway Dodge, in the State of Illinois ("Carpenter's Impala"). Ms. Carpenter has been damaged as a result of Defendant's wrongful conduct, as alleged herein. Among her damages is the fact that, due to excessive and premature wear and tear, caused by Defendant's wrongful conduct, the rear-wheel tires on Carpenter's Impala need to be replaced, after only 14,000 miles.

*Defendant*

28. Motors Liquidation Company f/k/a General Motors Corporation is a corporation organized under the laws of Delaware with its principal place of business and headquarters at 401 South Old Woodward, Suite 370, Birmingham, Michigan 48009.

29. On June 1, 2009, Defendant filed a voluntary petition under Chapter 11 of the Bankruptcy Code in the United State District Court for the Southern District of New York, *In re General Motors Corp.*, *et al.*, Chapter 11 Case No. 09-50026 (REG).

30. Shortly thereafter, the United States Department of the Treasury formed non-party New GM as a Delaware limited liability company known as Vehicle Acquisition Holdings LLC.

8

Vehicle Acquisition Holdings LLC subsequently converted to a Delaware corporation named NGMCO, Inc.

31. On July 10, 2009, pursuant to the Amended and Restated Master Sale and Purchase Agreement by and among General Motors Corporation, Saturn LLC, Saturn Distribution Corporation, and Chevrolet-Saturn of Harlem, Inc., as Sellers, and NGMCO, Inc., as Purchaser Dated as of June 26, 2009 (the "Master Sale Agreement"), Defendant sold and NGMCO, Inc. acquired substantially all of the assets and assumed certain liabilities of Old GM.

32. Also on July 10, 2009, NGMCO, Inc. changed its name to General Motors Company ("New GM") and General Motors Corporation changed its name to Motors Liquidation Company, the Defendant herein.

## CLASS ACTION ALLEGATIONS

33. Plaintiffs bring this Complaint on behalf of themselves others Consumer Impala Owners similarly situated ("Class"), defined as: All current and former owners or lessees of Consumer Impalas in the United States.

34. Excluded from the Class are affiliates, officers, directors, and employees; the judge to whom this case is assigned and his or her immediate family members and staff; Police Package Impala owners and/or lessees; and anyone who purchased a Consumer Impala for purposes of resale. Also excluded from the Class are all persons asserting claims for personal injuries arising from the rear wheel spindle rod defects in Consumer Impalas.

35. Certification of Plaintiffs' for classwide treatment under Rule 23(b)(2) is appropriate because GM, i.e. the party opposing the class, has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

9

36. Moreover, prosecuting separate cases under Section 1144 for individual class members would risk adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

37. **Numerosity – Fed. R. Civ. P. 23(a)(1).** Plaintiffs are informed and believe that GM sold over 500,000 Impalas, the overwhelming majority of which are Consumer Impalas, in the United States. Accordingly, the Class consists of many thousands of individuals nationwide, making individual joinder of members of the Class impracticable. The Class can be readily identified using sales records, warranty records, and other information kept by Defendant or third parties in their usual course of business and presently within their control.

38. **Commonality – Fed. R. Civ. P. 23(a)(2)** Questions of law and fact are common to the Class, including:

    a. Whether GM had or has a duty to disclose the defect in the Consumer Impala rear wheel spindle rods to Plaintiffs and the other members of the Class;

    b. Whether Plaintiffs and the other members of the Class are known creditors under the Bankruptcy Code;

    c. Whether GM has a statutory duty to inform such known creditors of the rear wheel spindle rod defect, their status as creditors, and any applicable bar dates for the filing of the claims;

    d. Whether the alleged conduct by GM violated laws as alleged in this Complaint, and more specifically, Sections 1107, 1125 and 1129, 11 U.S.C.

   e. Whether the Confirmation Order in this case was procured by fraud, as that term has been defined within the context of Section 1144, 11 U.S.C.

39. **Typicality – Fed. R. Civ. P. 23(a)(3).** Plaintiffs' claims are typical of the claims of the other members of the Class and arise from the same course of conduct by Defendant. The relief Plaintiffs seek is typical of the relief sought for the other members of the Class.

40. **Adequacy of Representation – Fed. R. Civ. P. 23(a)(4).** Plaintiffs will fairly and adequately represent and protect the interests of all absent members of the Classes. Plaintiffs are represented by counsel competent and experienced in chapter 11 procedure, as well as in consumer protection and class action litigation.

41. **Fed. R. Civ. P. 23(b)(2).** The Class may be certified because GM has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

42. **Fed. R. Civ. P. 23(b)(1).** The Class may be certified because prosecuting separate cases under Section 1144 for individual class members would risk adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

## ADDITIONAL FACTUAL ALLEGATIONS

43. Disclosure is a pivotal concept in a Chapter 11 case. Under a plan, a proponent makes an offer to a captive group of creditors. Only creditors listed in Chapter 11 documents receive notice, i.e. fundamental fairness. To protect the interests of those creditors and the integrity of the chapter 11 process, the Bankruptcy Code requires full disclosure throughout the Bankruptcy process.

44. Plaintiffs were not listed by Debtors as creditors of the estate, even though GM had previously acknowledged, by its language and its conduct, identically-situated Impala Owners as creditors entitled to relief from GM.

45. The definition of "creditor" includes all holders of claims, i.e. any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured.

46. GM had a duty to list Plaintiffs as scheduled creditors and to disclose Plaintiffs as creditors under and in the context of Sections 1125, 1129(a)(3) and 1107 of the Bankruptcy Code; but GM did not do so.

47. As a fiduciary under Section 1107 Debtors, i.e. insolvents, had a duty to disclose all material information, including the defective nature of Consumer Impalas; but GM concealed that information.

48. Debtor caused the Plan to be confirmed upon materially false information, i.e. material omissions of fact, thereby failing in its fiduciary duty to this Court. Full disclosure would have precluded confirmation due to lack of good faith, discriminatory treatment of similarly-situated creditors, and breach of fiduciary duty, *inter alia*. The Disclosure Statement was executed by an attorney appointed by this Court. The Schedules were executed by attorneys representing GM in this matter.

## **RIGHTS OF THIRD PARTIES**

49. Plaintiffs do not request action of this Court with any potential adverse impact on innocent third parties who or which have changed their position in reliance upon this Court's confirmation order.

50. Plaintiffs seek only a limited revocation of discharge as to Known Creditors' specific, unsecured class claim, thereby having no effect upon any innocent third parties. Similarly situated unsecured creditors shall be returned to precisely the position they occupied prior to plan confirmation. To enjoy a dividend consisting in part of funds rightfully belonging to Known Creditors would be a windfall to allowed unsecured creditors, at the expense of Known Creditors, with no countervailing equities supporting the loss to Plaintiffs.

51. Pursuant to 11 U.S.C. § 1144, the Court may revoke an order of confirmation if such order was procured by fraud.

52. The Debtors' confirmation order was procured by fraud, including disclosure violations under Sections 1125, 1129 and 1107 of the Bankruptcy Code.

## CAUSE OF ACTION FOR PLAN REVOCATION

53. Based on the facts laid out above, the Plaintiffs request that the Court revoke the Debtors' confirmation order on the grounds that it was procured by fraud provided, however, that the revocation shall go only to the denial of discharge as to Known Creditors' class claim, i.e. leaving any and all other events, transfers and transactions wholly unaffected by the Order of Revocation of Discharge as to the Claims of Consumer Impala Owners.

WHEREFORE Plaintiffs on their behalf and on behalf of the class which they represent pray for an Order, pursuant to Section 1144 of the Bankruptcy Code, as hereinbefore described, revoking this Court's Confirmation Order to the extent, and only to the extent, that same precludes Plaintiffs and Plaintiff Class from filing their claims, pursuing their rights, and otherwise taking appropriate action before this Court and within the processes instituted by this Court for claim resolution, together with costs and such other and further relief as may be appropriate in the Court's judgment.

Dated: September 26, 2011

By: Mark Schlachet
Mark Schlachet (N.Y Reg. 3698586)
3637 South Green Road, 2d Floor
Cleveland, Ohio 44122
P: (216) 896-0714
F: (216)514-6406
mschlachet@gmail.com

*Attorney for Creditors-Plaintiffs*

Of Counsel:

John A. Peca (Ohio Bar # 0011447)
(*To be admitted Pro Hac Vice*)
**CLIMACO, WILCOX, PECA,**
**TARANTINO & GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, Ohio 44113
P: 216.621.8484
F: 216.771.1632
japeca@climacolaw.com

Adam J. Levitt (Illinois Bar # 02616433)
(*To be admitted Pro Hac Vice*)
**WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLC**
55 West Monroe Street, Suite 1111
Chicago, Illinois 60603
Tel: (312) 984-0000
Fax: (312) 984-0001
levitt@whafh.com

Joseph J. Siprut (Illinois ARDC# 6279813)
*(To be admitted Pro Hac Vice)*
SIPRUT PC
122 South Michigan Avenue, Suite 1850
Chicago, Illinois 60603
Telephone: (312) 588-1440
Facsimile: (312) 427-1850
jsiprut@siprut.com

*Additional Attorneys of Counsel for Creditors-Plaintiffs*

14