**HEARING DATE AND TIME: October 28, 2011 at 9:45 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
  Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ------------------------------------------------------------x | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |
| ------------------------------------------------------------x | | |

**MOTORS LIQUIDATION COMPANY GUC TRUST'S REPLY TO RESPONSE TO
DEBTOR'S OBJECTION TO PROOF OF CLAIM NO. 45631 FILED BY STEVEN
NEWMAN ON BEHALF OF THE ESTATE OF MICHAEL GREEN**

**TABLE OF CONTENTS**

**Page**

Background .................................................................................................................................. 1

The Bankruptcy Court Should Retain Jurisdiction to Disallow and Expunge the Newman
Claim .................................................................................................................................. 2

The Newman Claim is by its Nature a Punitive Damages Claim ................................................ 4

         A.      Damages for "Lost" Potential Punitive Damages ................................................... 7

         B.      Damages for Pain and Suffering/Medical Care ...................................................... 7

         C.      Costs of the Second Trial in Green Lawsuit .......................................................... 8

         D.      Income and Interest from First Green Trial Through Date of Payment ................ 9

         E.      Actual Punitive Damages Claim ........................................................................... 10

         F.      Treble Damages Under New Jersey RICO Statute .............................................. 10

The Court Should Disallow The Newman Claim ..................................................................... 12

Conclusion ............................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Continental Sec. Corp. v. Shenandoah Nursing Home P'ship*,
    188 B.R. 205 (W.D. Va. 1995) ...............................................................................3

*Genty v. RTC*,
    937 F.2d 899 (3d Cir. 1991)..................................................................................10

*Green v. Gen. Motors Corp.*,
    709 A.2d 205 (N.J. Sup. Ct. App. Div. 1998)..................................................5, 7, 9

*In re Celotex Corp.*,
    204 B.R. 586 (Bankr. M.D. Fla. 1996) ................................................................12

*In re Infiltrator Sys.*,
    248 B.R. ...............................................................................................................3, 4

*In re Manville Forest Prods. Corp.*,
    896 F.2d 1384 (2d Cir. 1990)..................................................................................2

*In re Roman Catholic Archbishop*,
    339 B.R. 215 (Bankr. D. Or. 2006).......................................................................12

*Jim Walter Homes, Inc. v. Adams* (*In re Hillsborough Holdings Corp.*),
    146 B.R. 1015 (Bankr. M. D. Fla. 1992) ..............................................................12

*Liberty Mut. Ins. Co v. Land*,
    186 N.J. 163 (N.J. 2006) ......................................................................................11

*Mfts. Trust Co. v. Becker*,
    338 U.S. 304 (1949)................................................................................................3

*Pepper v. Litton*,
    308 U.S. 295 (1939)................................................................................................3

*S.G. Phillips Constructors, Inc. v. City of Burlington*
    (*In re S.G. Phillips Constructors, Inc.*),
    45 F.3d 702 (2d Cir. 1995).....................................................................................2

*St. James v. Future Fin.*,
    342 N.J. Super. 310 (N.J. Sup. App. Div 2001).....................................................11

*Stern v. Marshall*,
    131 S. Ct. 2594 (2011)............................................................................................2

*United States v. Noland*,
    517 U.S. 535 (1996)..................................................................................................................3

**STATUTES**

11 U.S.C. § 724(a)(4)...............................................................................................................12

28 U.S.C. § 157..........................................................................................................................2

28 U.S.C. § 157(b)(2)(B) ...........................................................................................................2

N. J. Stat. Ann. § 2A:15-5.10......................................................................................................6

N.J. Stat. Ann. § 2A:15-5.12(a) ...........................................................................................11, 12

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**")[1] in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or modified from time to time, the "**Plan**"), respectfully represents:

## Background

1.      On April 5, 2011, the Debtors filed an objection (the "**Objection**")[2] (ECF No. 10048) pursuant to section 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking entry of an order disallowing and expunging Proof of Claim No. 45631 (the "**Newman Claim**") filed by Steven Newman ("**Claimant**") on behalf of the estate of Michael Green.[3]

2.      Following a hearing and correspondence between the parties and the Court, on September 20, 2011, the Court entered an order (ECF No. 10910) adjourning the objection, directing Claimant to file a response to the Objection no later than seven (7) calendar days from entry of the order (the "**Final Response Deadline**"), and directing that if a response was filed by the Final Response Deadline, the deadline for the Debtors and the GUC Trust to respond would be October 14, 2011.

---

[1] The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc. ("**REALM**"), and Environmental Corporate Remediation Company, Inc. ("**ENCORE**").

[2] While the Objection was filed by the Debtors, this Reply is being filed by the GUC Trust because, pursuant to the Plan, the GUC Trust now has the exclusive authority to prosecute and resolve objections to Disputed General Unsecured Claims (as defined in the Plan).

[3] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Objection.

3.      On September 26, 2011, Mr. Newman served a response to the Objection

(the "**Response**") on counsel for the GUC Trust asserting that the Newman Claim should not be

disallowed and expunged and urging that "[t]his Court should not retain jurisdiction and should

submit the claim for trial to liquidate the claim and then return it to the Bankruptcy Court."

(Response ¶ 23.)  A hearing to address the Objection and the Response has been scheduled for

October 28, 2011 at 9:45 a.m. (Eastern Time).

**The Bankruptcy Court Should Retain Jurisdiction
to Disallow and Expunge the Newman Claim**

4.      This Court has the constitutional authority to disallow and expunge the

Newman Claim as such decision "would necessarily be resolved in the claims allowance

process." *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011) (holding that in determining whether a

bankruptcy court has the constitutional authority to enter a final judgment in an action, "the

question is whether the action at issue stems from the bankruptcy itself or would necessarily be

resolved in the claims allowance process.").  Congress has granted the Bankruptcy Court

jurisdiction over the "allowance or disallowance of claims against the estate . . . and estimation

of claims or interests." *See* 28 U.S.C. § 157(b)(2)(B).

5.      As set forth in the Objection, by filing a proof of claim in the bankruptcy

cases, Claimant has rendered the resolution of the Newman Claim a core proceeding pursuant to

28 U.S.C. § 157 and submitted himself to the "equitable power of the bankruptcy court to

disallow [the] claim." *See In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1389 (2d Cir.

1990); *see also S.G. Phillips Constructors, Inc. v. City of Burlington* (*In re S.G. Phillips

Constructors, Inc.*), 45 F.3d 702, 703 (2d Cir. 1995) (finding that "when a creditor files a proof

of claim, the bankruptcy court has core jurisdiction to determine that claim, even if it was a

prepetition contract claim arising under state law.").  Here, Mr. Green already liquidated his

personal injury and product liability claims in the Green Lawsuit, therefore, this is not a personal

injury or wrongful death suit and the Court has the authority to liquidate or estimate the claim for

purposes of allowance of disallowance.

6.      Bankruptcy courts have broad equitable powers to "tailor claims to meet

the requirements of justice." *Continental Sec. Corp. v. Shenandoah Nursing Home P'ship*, 188

B.R. 205, 214 (W.D. Va. 1995) (citing *Pepper v. Litton*, 308 U.S. 295, 304 (1939)).  In *Pepper v.*

*Litton*, the Supreme Court held that bankruptcy courts "are essentially courts of equity, and their

proceedings inherently proceedings in equity." 308 U.S. at 304 (internal quotations omitted).

"In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the

circumstances surrounding any claim to see that injustice or unfairness is not done in

administration of the bankrupt estate." *Id.* at 307-8.  "Since the power of disallowance of claims,

conferred on the bankruptcy court by § 2 of the [prior Bankruptcy] Act embraces . . . the

rejection of claims 'in whole or in part, according to the equities of the case,' the court may

undoubtedly require limitation of the amount of claims in view of equitable considerations."

*Mfts. Trust Co. v. Becker*, 338 U.S. 304, 310 n.7 (1949) (quoting *Pepper v. Litton*, 308 U.S. at

304-5).

7.      Equity jurisdiction "permits a [bankruptcy] court to make exceptions to a

general rule when justified by particular facts." *United States v. Noland*, 517 U.S. 535, 540-41

(1996).[4]  The Court, therefore, "may disallow or subordinate any claim for punitive damages

---

[4] In *Noland*, the Supreme Court held that a bankruptcy court could not use its equitable power to
<u>categorically</u> subordinate tax penalty claims under section 510(c)in "derogation of Congress's scheme of
priorities." *See* 517 U.S. at 536 (emphasis added).  The holding in *Noland* does not alter the Court's
equitable power to disallow or subordinate <u>individual</u> claims for punitive damages where supported by the
facts and circumstances at issue and equities of the case. *See id.* at 540-41 (emphasis added); *In re*
*Infiltrator Sys.*, 248 B.R. at 711-12.

only in light of all of the relevant facts and circumstances presented in the matter before it." *In re Infiltrator Sys.*, 248 B.R. 707, 711 (Bankr. D. Conn. 2000) (citing *Noland*).

8.      In the present case, where Mr. Green's estate already has been made whole by the prior judgment, the totality of the damages sought are effectively punitive, rather than remedial, damages, the allowance of which is highly questionable on legal and equitable grounds.  As such, it would not be an efficient use of judicial or estate resources to conduct a lengthy jury trial necessitating 123 fact witnesses and eight (8) experts[5] only to return to the Bankruptcy Court to determine whether such claims ultimately should be allowed under federal bankruptcy law.  In the interest of judicial economy and efficiency and in order to preserve the estate's resources for distribution to similarly-situated creditors, the Bankruptcy Court should retain jurisdiction to consider the disallowance of the Newman Claim.

## The Newman Claim is by its Nature a Punitive Damages Claim

9.      Although the Newman complaint and the Newman Claim are unclear as to which claims are for compensatory damages and which seek punitive damages, Claimant now asserts in the Response that the "[the] Newman claim consists of mostly compensatory claims, not punitive damages, which even under the Debtor's interpretation of the law are not subject to dismissal." (Response ¶ 2.)  The Response attempts to recharacterize the nature of the claims asserted as a means to avoid the arguments set forth in the Objection with respect to disallowance of punitive damages.

10.      Claimant's argument that additional compensatory damages are warranted ignores the undisputed facts of this case.  The Green Lawsuit initially went to trial on January

---

[5] The final pretrial order in the Newman Lawsuit includes 43 fact witnesses for the plaintiff, 80 fact witnesses for the defendant, four (4) expert witnesses for the plaintiff, four (4) expert witnesses for the defendant.  *See* Smolinsky Dec., Ex. 1 at pp 23/62 to 33/62.

19, 1993.  On February 16, 1993, following a full trial, a mistrial was declared when the jurors

reported that they could not agree on a verdict.  (Smolinsky Dec., Ex. 1 ¶ 56.)  Following

additional discovery, the Green Lawsuit was retried before a jury beginning on February 8, 1996

and ending on March 5, 1996 (*Id.* ¶¶ 61, 63) with a verdict in favor of Green.  Mr. Green's

damages were assessed and judgment was entered in the amount of $17,767,175.35, exclusive of

prejudgment interests, costs and certain credits.  The damages awarded included:  $13,000,000

for future medical expenses, $149,315 for loss of past income, $305,860.35 for loss of future

income, and $4,000,000 for pain and suffering, as well as stipulated damages for Green's past

medical expenses of $312,000.00.  *See Green v. Gen. Motors Corp.*, 709 A.2d 205, 207 (N.J.

Sup. Ct. App. Div. 1998).  Together with prejudgment interest and costs, and a credit for a settlement

with other defendants included, the verdict totaled $25,110,484.90.  *Green v. General Motors Corp.*, 709

A.2d 205, 207 (N.J. Sup. Ct. App. Div. 1998).

11.     The damages awarded were based on Mr. Green's then-projected life

expectancy of approximately 48 years (to age 77).  (Obj. ¶ 3.)  Mr. Green died on March 18,

2001, 46 years prior to the life expectancy upon which is future damages were based.  (*Id.*)

12.     GM appealed the award and the appellate court affirmed the jury's finding of

liability and modified and affirmed the damages verdict except for the award of post-judgment medical

expenses and earnings which were remanded with directions that the trial judge "enter a remittitur after

further argument, with or without proofs, reflecting the present value of those awards."  (Smolinsky Dec.,

Ex. 1 ¶ 73) (quoting *Green*, 709 A.2d at 225).  Following the denial of certification by the New Jersey

Supreme Court and the mandated remand proceedings, on May 2¸1999, an amended final judgment was

ultimately entered in Green's favor in the amount of $14,126,013.83.  (Smolinsky Dec., Ex. 1 ¶ 75.)  With

interest, GM paid Mr. Green and is attorneys nearly $22 million.  (Obj. ¶ 3.)

13.    Sometime after the appellate briefs had been filed, the parties learned that certain GM documents produced in a Tennessee state court action, captioned *Johnson v. GM*, had not been produced in discovery in the Green Lawsuit. (*Id.* ¶¶ 67-68.) Following an order entered in *Johnson v. GM* on December 17, 1997, the relevant documents were provided to Green's attorneys. (*Id.* ¶¶ 67-68.) The Newman Lawsuit was filed in November 2001, and the claim asserted underlie the Newman Claim at issue here.

14.    In New Jersey, compensatory damages are defined as "damages intended to make good the loss of an injured party, and no more." N. J. Stat. Ann. § 2A:15-5.10. Therefore, once an injured parties loss as been compensated, additional damages no longer compensate the plaintiff, and instead serve to "penalize and provide additional deterrence against a defendant to discourage similar conduct in the future." *Id.* Claimant's attempt to characterize the claims as compensatory damages ignores the fact that Mr. Green's estate has already been made whole by the judgment which compensated Mr. Green for future medical expenses, past medical expenses, loss of past income, loss of future income, pain and suffering, and certain prejudgment interest and costs. In fact, Mr. Green's estate was *overcompensated* due to Mr. Green's untimely death.[6]

15.    In the Response, Claimant asserts the following claims for compensatory damages: (i) claims for "lost" punitive damages that would have been awarded in the first trial; (ii) attorneys' fees and costs of the second trial in the Green Lawsuit; (iii) income and interest from the anticipated judgment in January 1993 to the date of final payment in the second trial; and (iv) Green's pain and suffering from January 1993 until payment of the final judgment

---

[6] If Claimant were to have its way and be permitted to relitigate the state court action to determine whether punitive damages would have been awarded, the Debtors should be entitled to reimbursement for the additional 46 years worth of life care costs that were not used for Mr. Green's care.

because of lack of proper medical care.  This Reply responds to each of these alleged

"compensatory" damages claims as well as Claimant's statutory and punitive damage claims, in

detail below:

### A.    Damages for "Lost" Potential Punitive Damages

16.    The Newman complaint asserts a claim that "Green was deprived of the

opportunity to seek and recover punitive damages in the trial of his personal injury cause of

action."  (Obj., Ex. A, Complaint ¶ 27.)  In the Response, Claimant now argues that he is "not

seeking an award of punitive damages" based on this cause of action, and is instead seeking

compensatory damages based upon "the deprivation of the right to have asserted and prevailed

on a punitive damage claim in the underlying *Green* case."  (Response ¶ 9, 16.)

17.    Claimant's argument is purely semantic and cannot overcome the

substance of the underlying demand.[7]  A claim for damages based upon the alleged inability to

seek punitive damages in the initial Green Lawsuit, is at its core, a claim for punitive damages,

no matter how it is packaged.  As the saying goes, "you can paint stripes on a horse and call it a

zebra, but it is still a horse."  Even if the Court were to find that these "lost" potential punitive

damages claims are compensatory, the same justifications exist for equitable disallowance as

would for punitive claims, as detailed in paragraph 26 through 29 below.

### B.    Damages for Pain and Suffering/Medical Care

18.    The Newman complaint also asserts a cause of action because "Green was

deprived of a judgment and damage award and thus of necessary medical care for the three years

---

[7] Notably, Claimant references no precedent or statutory authority to support the proposition that an
action for the deprivation of a plaintiffs' right to seek punitive damages is a recognized "measure of the
quantum of compensatory damages."  *See* Response ¶ 16 (stating without support "[t]his is not just
wordplay, but substantive law.").

that elapsed between the first and second trials." (Obj., Ex. A, Complaint ¶ 27.)  In the

Response, Claimant characterizes this as a compensatory damages claim for:

> Green's pain and suffering from [the commencement of the first
> trial in] January 1993 to payment of final judgment [in 1999] due
> to lack of proper medical care and necessary life care apparatus
> and equipment together with permanent deficits suffered as a result
> of failure to receive proper and necessary medical care such as
> physical therapy.

(Response ¶ 12.)[8]

19.      Any purported recovery due for such damages for the three years between

the first and second trials would be duplicative of the judgment previously paid by the Debtors,

in particular, the $312,000.00 for past medical expenses and the $4 million awarded for pain and

suffering as part of the original judgment.  The jury assessed damages based on the facts and

circumstances that existed at the time of the second trial, not the first.  There is no basis for a

plaintiff to recover post-trial pain and suffering due to delays of payment caused by pending

appeals.  As set forth above, if anything, the Debtors have *overcompensated* the Green estate for

an additional 46 years worth of life care costs given Mr. Green's untimely death.  To allow

additional funds for Mr. Green's estate which has already been compensated in full, while other

personal injury claimants (who are still alive and requiring care) are not recovering in full on

their claims contravenes the bankruptcy principle that similarly-situated claimants receive equal

treatment.

### C.    Costs of the Second Trial in Green Lawsuit

20.      In the Newman complaint, Claimant also seeks damages on the basis that

"Green was required to absorb the costs of a second trial which would not have been necessary

---

[8] Claimant even goes so far as to assert, without support, that Green's "shortened life expectancy" was
attributable to "GM's fraud and spoliation."  (*Id.* ¶ 8.)  Claimant has presented no evidence sufficient to
demonstrate that GM's failure to produce documents led to Mr. Green's shortened life expectancy.

had the full facts bearing on GM's liability been presented at the first trial." (Obj., Ex. A.

Compl. ¶ 27.) In the Response, Claimant asserts that the "compensatory damages" for attorneys'

fees and costs of the second trial were approximately $2 million over the past 18 years.

(Response ¶ 12.)

> 21.    Claimant has failed to make any showing as to causation on this claim and

the claim seems more in line with sanctions than a compensatory damages claim. In order to

succeed on this claim, Claimant would need to show that there would not have been a second

trial *but for* GM's failure to produce the documents at issue. Indeed, Green was able to prevail in

the second trial *without* the documents in question and was awarded nearly $18 million in

damages. (*Id.* ¶ 3.) Claimant has made no showing that the second trial in the Green Lawsuit

was the result of GM's failure to produce the documents prior to the first trial and is not entitled

to the costs of the second litigation.

**D.    Income and Interest from First Green Trial Through Date of Payment**

> 22.    Claimant also seeks "income and interest from the anticipated judgment in

January 1993 to the date of the final payment of the second trial judgment [in 1999]." (Response

¶ 12.) For the reasons set forth in paragraphs 20 to 21 above, Claimant has failed to make any

showing that the second trial was necessitated by GM's failure to produce the documents.

Claimant similarly has failed to demonstrate that the delay of judgment from January 1993

through the completion of the second trial on March 5, 1996 was caused by GM's failure to

produce documents. In fact, the New Jersey appellate court held that the interest between

February 1994 and February 1996 "was caused by plaintiff being required to obtain a new

liability expert after his initial expert suffered incapacitating strokes." *Green*, 709 A.2d at 219.

Moreover, the appellate court affirmed the trial court's decision "not to suspend prejudgment

interest for this two-year period." *Id.*[9]  Therefore, in addition to being punitive damages, any

attempt by Claimant to seek interest from February 1994 through February 1996 would

constitute an impermissible double recovery.

### E.       Actual Punitive Damages Claim

23.       In addition to the claimed compensatory damage claims set forth above,

Claimant concedes that the Newman Claim asserts a "separate and actual" claim for punitive

damages "for GM's willful [*sic*] and wanton failure to disclose and provide pertinent and

relevant discovery; violation of court orders; fraud and disruption of the underlying litigation."

(Response ¶¶ 10, 12.)  In the Response, Claimant argues that such punitive damages are

warranted in order "to sanction the Debtor for the fraudulent concealment/spoliation of the

'smoking gun' evidence."  (*Id.* ¶ 10.)  As set forth in the Objection, there is no basis to award

punitive damages claims if there is no deterrent effect, and given the liquidation of the Debtors

that goal will not be accomplished.

---

[9] The appellate court did, however, vacate the prejudgment interest on the awards for future medical
expenses and future lost income which it likened to punitive damages.  *Green*, 709 A.2d at 219, n.16
(stating that "interest on future medical expenses and earnings has been upheld solely on the basis of an
inducement to settle, and constitutes a *quasi*-punishment for not settling, it stands on a similar footing to a
punitive damage award.") (emphasis added).

F.       **Treble Damages Under New Jersey RICO Statute**

24.       The remainder of the Newman Claim is based upon statutory damages

under the New Jersey RICO statute, "premised upon GM's transmission of fraudulent discovery

material and information through the mail or during telephone calls" for which Claimant seeks

"treble the compensatory damages awarded in the Newman matter, together with attorneys fees

and cost of the Newman litigation."  (Response ¶ 11, 17-18.)

25.       Claimant is not entitled to damages for an alleged RICO violation.  Treble

damages under other RICO statutes have been found to be punitive in nature.  *See Genty v. RTC*,

937 F.2d 899, 913-14 (3d Cir. 1991) (holding that civil claim brought against municipal

corporation under federal RICO statute could not be maintained because "treble damages

provision serve[s] a predominantly punitive purpose"); *see also Liberty Mut. Ins. Co v. Land*,

186 N.J. 163, 186 (N.J. 2006) (holding that under the New Jersey Punitive Damages Act

definition of compensatory and punitive damages, "only one part of a treble damages award

covers compensatory damages, whereas the other two parts comprise punitive damages.").  In

addition, courts in New Jersey have held that awarding punitive damages as well as treble

damages "presents the likelihood of some duplication of exemplary or punitive consequence"

and have reduced the amount of a New Jersey RICO award to reflect the duplicative punitive

aspect of the overall award.  *See St. James v. Future Fin.*, 342 N.J. Super. 310, 343 (N.J. Sup.

App. Div 2001).  These cited cases are not bankruptcy cases, in the bankruptcy context it would

appear inherently inequitable to award one creditor three times it damages, while other creditors

get a single claim.

**The Court Should Disallow The Newman Claim**

26.     As an initial matter, Claimant cannot meet the heavy burden required for a

punitive damages claim under New Jersey law, which requires a plaintiff to establish:

> [B]y clear and convincing evidence, that the harm suffered was the
> result of the defendant's acts or omissions, and such acts or
> omissions were actuated by actual malice or accompanied by a
> wanton and willful disregard of persons who foreseeably might be
> harmed by those acts or omissions.  This burden of proof may not
> be satisfied by proof of any degree of negligence including gross
> negligence.

N.J. Stat. Ann. § 2A:15-5.12(a).

27.     Claimant has failed to make any showing that GM's failure to produce the

documents at issue was "actuated by actual malice" or "accompanied by a wanton and willful

disregard." *Id.*  Indeed, Claimant has stipulated to facts which demonstrate that the failure to

produce the documents in the Green Lawsuit resulted from a series of innocent errors by

paralegals and lawyers working on the case.  (Smolinsky Dec., Ex. 1; Obj. ¶ 11.)  Even if

Claimant could show that GM negligently concealed evidence, the statute makes clear that

negligence, in any degree, is not sufficient to satisfy the burden of proof for punitive damages.

N.J. Stat. Ann. § 2A:15-5.12(a).

28.     "[I]t is clear that even though Chapter 11 of the Bankruptcy Code does not

specifically provide for the treatment of claims based on a fine, penalty or punitive damages, the

bankruptcy courts traditionally have not favored such claims."  *Jim Walter Homes, Inc. v. Adams*

(*In re Hillsborough Holdings Corp.*), 146 B.R. 1015, 1022 (Bankr. M. D. Fla. 1992).  Chapter 11

of the Bankruptcy Code does not specifically address punitive damages.  However, under a

chapter 7 liquidation, punitive damages are given fourth priority, and may only be paid after

other unsecured claims are paid in full.  11 U.S.C. § 724(a)(4); *see also In re Roman Catholic*

*Archbishop*, 339 B.R. 215, 227 (Bankr. D. Or. 2006).

29.     The GUC Trust cannot compensate personal injury claimants for punitive

damages and still treat all similarly-situated general unsecured claimants equitably.  Allowing

Claimant to receive additional remedial damages when the Green estate already has been made

whole by the prior judgment while hundreds of other personal injury claimants are not

recovering in full on their claims essentially forces impaired creditors to cover the cost of the

remedial damages set forth in the Newman Claim.  *See In re Celotex Corp.*, 204 B.R. 586, 613

(Bankr. M.D. Fla. 1996) ("Consequently, payment of punitive damages would prevent the fair

and equitable treatment of the holders of [general unsecured] Claims, would frustrate the fair

distribution of the Trust Assets, and would subvert the stated purposes of the Plan and of public

policy.").

## Conclusion

WHEREFORE, for the reasons set forth above, the GUC Trust respectfully

requests that the Court disallow and expunge the Newman Claim and grant such other and

further relief as is just.

Dated:  New York, New York
        October 14, 2011

                                        _/s/  Joseph H. Smolinsky_____
                                        Harvey R. Miller
                                        Stephen Karotkin
                                        Joseph H. Smolinsky

                                        WEIL, GOTSHAL & MANGES LLP
                                        767 Fifth Avenue
                                        New York, New York 10153
                                        Telephone: (212) 310-8000
                                        Facsimile: (212) 310-8007

                                        Attorneys for Debtors
                                        and Post-Effective Date Debtors and Motors
                                        Liquidation Company GUC Trust