**HEARING DATE AND TIME: October 28, 2011 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and
Post-Effective Date Debtors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                          :
In re                                     :   Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :   09-50026 (REG)
     f/k/a General Motors Corp., et al.   :
                                          :
                              Debtors.    :   (Jointly Administered)
                                          :
------------------------------------------------------------x
```

### DEBTORS' REPLY TO THE RESPONSE
### OF ANALYSIS RESEARCH PLANNING CORPORATION TO
### OBJECTIONS TO THIRD INTERIM AND FINAL FEE APPLICATION

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as post-effective date debtors, in the above-captioned chapter 11 cases (collectively, the "**Debtors**"),[1] submit this Reply to the Response of Analysis Research Planning Corporation ("**ARPC**") to Objections to ARPC's Third Interim and Final Fee Application (ECF No. 10918) (the "**Response**"), and respectfully represent:

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to them in the Debtors' Limited Objection to the Third Interim and Final Fee Application of Analysis Research Planning Corporation (ECF No. 10843) (the "**Debtors' Objection**").

**PRELIMINARY STATEMENT**

1. ARPC, in its Response, explains to the Court that it continued to conduct its analysis of the proper valuation of future asbestos claims after settlement was reached in large part because it was instructed to do so by the Future Claimants' Representative to protect against the possibility that the Stipulation and Order was not approved or the Plan was not confirmed. The question is not whether a professional is directed to do unnecessary work, but whether it was reasonable to comply with that direction. To the extent an activity is of no obvious benefit to the client or the estates, the professional needs to question the appropriateness of the direction, particularly where the work is substantial and ongoing. Approximately half of ARPC's work during these cases was performed after the Stipulation and Order was executed.

2. In contrast to ARPC, of the three other asbestos valuation consultants retained in these cases,[2] the consultant for the Asbestos Claimants' Committee billed 32.9 hours in total after the Stipulation and Order was executed on January 21, 2011 and the consultants for the Debtors and the Creditors' Committee each billed zero hours after that time.[3] In comparison,

---

[2] The other consultants are Bates White, LLC ("**Bates White**") for the Creditors' Committee, Hamilton, Rabinovitz & Associates, Inc. ("**HRA**") for the Debtors, and Legal Analysis Systems, Inc. ("**Legal Analysis Systems**") for the Asbestos Claimants' Committee.

[3] This information was obtained from the time records annexed to the final fee applications of Bates White, HRA and Legal Analysis Systems. ECF Nos. 10264, 10266, 10269. The version of HRA's final fee application that is filed on the docket does not include time records. However, the Debtors have a copy of the full version of HRA's final fee application.

ARPC astoundingly billed in excess of 3,700 hours[4] after January 21, 2011. In fact, it would appear that ARPC accelerated work after the Stipulation and Order was executed.[5]

3. In order to justify that many hours, ARPC offered several explanations in its Response. It asserts that the asbestos data that it received prior to January 21, 2011 should have been provided to it earlier, that it was only following the orders of the Future Claimants' Representative, that its services would have been needed if the Stipulation and Order or the Plan were successfully challenged, and that ARPC's services in question also served to assist the Future Claimants' Representative in performing certain other functions.

4. The first explanation tendered by ARPC is simply irrelevant. The remaining explanations must be addressed within the context of section 330 of the Bankruptcy Code. In light of the fact that retained professionals are paid from the limited resources of the bankruptcy estate rather than the party that retains them, section 330 prohibits the compensation to professionals of certain services that are too far removed from the administration of bankruptcy cases to justify payment from the estate. The relevant inquiry is whether the services in questions are "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. 330(a)(4)(A). In this case, the monumental cost of continuing to analyze the Debtors' already-resolved asbestos liability upon the mere possibility that it might again resurface is simply a cost that would be unfair for the Debtors' estates to bear.

---

[4] This amount does not include approximately 170 hours spent after the Confirmation Date that appears on ARPC's time records attached to its fee application. As ARPC correctly noted in its Response, ARPC is not seeking compensation for such time.

[5] As evident from ARPC's Third Interim and Final Fee Application (ECF No. 10250), ARPC's invoice for professional services from November 2010 to March 2011 amounted to $17,507, $51,906, $61,770, $116,987 and $204,776, respectively.

## ARPC'S CONTENTION THAT CLAIMS DATA
## SHOULD HAVE BEEN FURNISHED EARLIER IS IRRELEVANT

5.  ARPC repeatedly emphasizes in its Response and the affidavits in support of the its Response that it was initially furnished with incomplete claims data and that either the Debtors or General Motors LLC ("**New GM**") should have furnished such data much earlier to ARPC. Whatever the truth of ARPC's assertion, of which the Debtors do not concede, such contention is simply irrelevant to the question of whether the estates should bear the cost of ARPC's continued analysis of the Debtors' asbestos liability after the Future Claimants' Representative (and all other relevant parties) had already agreed to fix the amount of that liability pursuant to the Stipulation and Order. No matter how late ARPC may have received the asbestos data, the last of which ARPC asserts was received on or about January 13, 2011, the Future Claimants' Representative was later confident enough in his valuation of the Asbestos Personal Injury Claims to sign the Stipulation and Order on January 21, 2011 and bind his constituents. Therefore, the timeframe in which ARPC received the asbestos data, and the fault of the Debtors in not delivering such data earlier, is irrelevant.

## ARPC'S ASSERTION THAT IT WAS ONLY FOLLOWING THE DIRECTIONS
## OF THE FUTURE CLAIMANTS' REPRESENTATIVE IS ALSO IRRELEVANT

6.  ARPC argues that since it was hired by the Future Claimants' Representative, it was not in a position to exercise its own judgment to cease work after the Asbestos Personal Injury Claims were fixed. Regardless of its motivation for performing such services, ARPC's compensation is subject to section 330 of the Bankruptcy Code, as provided in the order authorizing ARPC's retention (ECF No. 5533). The statutory language is clear that compensation shall only be allowed for services that are "reasonably likely to benefit the debtor's estate" or "necessary to the administration of the case." 11 U.S.C. 330(a)(4)(A). No exception is made for professionals who were following the orders of their client. The necessity

- 4 -

of this outcome is clear when it is considered that clients who are unfettered by the burden of paying professional fees may have a perverse incentive to request costly services at the expense of the estate no matter how slim the potential benefit to the client.

7.  Even attorneys, who may be bound by ethical obligations to effectively advocate on behalf of their clients, can have their professional fees disallowed for services that are not likely to benefit the estate or are unnecessary to the administration of the case. *In re Keene Corp*, 205 B.R. 690, 696 n.7 (Bankr. S.D.N.Y. 1997) ("it is not enough for an attorney to work ethically and zealously for a client whose interests may be antithetical to the estate's"); *see also In re Standard Steel Sections, Inc.*, 200 B.R. 511, 514 (S.D.N.Y. 1996) (noting that counsel's services to unsecured creditors' committee must be scrutinized for benefit to the overall estate and its orderly disposition). All professionals are bound by the clear language of section 330. *In re IRH Vintage Park Partners, L.P.*, No. 10-37503, 2011 WL 4537003, at *2 Bankr. S.D. Tex. Sept. 6, 2011) (noting application of section 330(a)(4)(A) to an expert witness); *In re Columbia Aircraft Mfr.*, No. 07-33850, 2008 WL 1337855, at *2 (Bankr. D. Or. April 10, 2008) (application of section 330(a)(4)(A) to a financial advisor).

## ARPC'S SERVICES WERE ILL-ADVISED NOT ONLY IN HINDSIGHT BUT ALSO WHEN ACTUALLY PERFORMED

8.  ARPC contends that its continued services were warranted given that the Stipulation and Order signed by all Parties was subject to Court approval and, even after Court approval was obtained, confirmation of the Plan remained contested and the Debtors could subsequently modify or withdraw their Plan. Even so, section 330(a)(4)(A) focuses on whether services were "reasonably likely" to benefit the estate or, alternatively, whether they were "necessary" to the administration of these cases. Expending substantial resources on a remote contingency is not contemplated by section 330(a)(4)(A). This is particularly true where, as

- 5 -

noted below, there were less costly ways of addressing the contingencies, such as, tolling the litigation schedule.

9. The continued services of ARPC were not "reasonably likely" to benefit the estates or even the Future Claimants' Representative and his constituents. Beyond the Creditors' Committee, the Asbestos Claimants' Committee, the Future Claimants' Representative, and the Debtors, each of whom executed the Stipulation and Order, it is difficult to imagine who could have successfully objected to the fixing of the Asbestos Personal Injury Claims. In its Response, ARPC articulates no more than the mere possibility, however remote, that the Stipulation and Order could have been successfully challenged. Without more, ARPC's explanation seems tantamount to an acknowledgement that the Stipulation and Order would likely have been approved and that the continued review by ARPC constituted contingency planning. Even when scrutinized as part of a contingency plan, there is simply no reason why ARPC's review should not have been deferred until it was needed, if ever. After the Stipulation and Order was entered, the continued analysis of ARPC of the asbestos claims data rather than its deferral is even more inexplicable in light of certain protections provided to the Future Claimants' Representative's constituents in the Stipulation and Order, as more fully discussed in the Debtors' Objection. (Debtors' Objection at 7.)[6] There was not one objection to the asbestos settlement or to the treatment of asbestos claims under the Plan.

10. It is telling that, of the four asbestos valuation consultants retained in these cases, ARPC alone continued to review and analyze the Asbestos Personal Injury Claims after the Stipulation and Order was entered on January 21, 2011. As evident from the time

---

[6] Specifically, the Stipulation and Order provides that the Plan could not be modified in an adverse manner with respect to the allowance and treatment of asbestos claims.

records annexed to the final fee applications of the these other consultants,[7] the consultant for the Asbestos Claimants' Committee billed 32.9 hours in total after January 21, 2011 and the consultants for the Debtors and the Creditors' Committee each billed zero hours. This supports the Debtors' recollection that at the time the Stipulation and Order was finalized, the Parties discussed and agreed that all work would cease and, in the unlikely event the Stipulation and Order was not approved, the scheduled trial date would be moved to accommodate the completion of the experts' work. In fact, Paragraph 12 of the Stipulation and Order provides in relevant part:

> [U]pon execution of this Stipulation and Order by all of the Parties, the deadlines set forth in paragraphs (c) through (g) of the [the Estimation Order (ECF No. 8121) relating to deadlines for the exchange of expert reports, pre-trial briefs and taking of depositions] shall be tolled until such time as the Bankruptcy Court approves or disapproves of this Stipulation and Order.

Billing over 3,700 hours to analyze asbestos data in the face of these protections from unforeseen contingencies is simply unconscionable.

11.     While ARPC contends that its continued services were required for the Future Claimants' Representative to discharge responsibilities other than analyzing the Asbestos Personal Injury Claims, such a purpose is not evident from the actual time records of ARPC for the relevant time period. As reprinted on Exhibit "A" annexed to the Debtors' Objection, ARPC's time entries almost invariably were vaguely described as "Continued to review GM case documents supplied in response to FCR and ACC requests."[8] There are no time entries that

---

[7] (ECF Nos. 10264, 10266, 10269.)

[8] Where ARPC specifically provided in a time entry that such work related to the Asbestos Trust as opposed to work towards valuing the Asbestos Personal Injury Claims, the Debtors made a concerted effort to exclude that entry from the Debtors' Objection and such fees have been allowed by Order of this Court (ECF No. 11029).

discuss review of Plan provisions or preparation for testimony. Moreover, the great disparity between the number of hours expended by ARPC and the other consultants belie such a contention, as does a review of the time records of counsel to the Future Claimants' Representative that show that work performed after January 21, 2011 was geared mostly toward supporting confirmation of the Plan, not preparing for a valuation trial.

## **CONCLUSION**

WHEREFORE the Debtors respectfully request entry of an order granting the relief requested in the Debtors' Objection and such other and further relief as is just.

Dated:  October 21, 2011
        New York, New York

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

Attorneys for Debtors and
Post-Effective Date Debtors