TOGUT, SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Scott E. Ratner
Richard K. Milin
Michael D. Hamersky

Conflicts Counsel to the
Reorganized Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) ) | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, | ) ) ) ) | Case No. 09-50026 (REG) |
| Reorganized Debtors. | ) ) ) | (Jointly Administered) |

**STIPULATION AND AGREED ORDER APPROVING A
PARTIAL RESOLUTION OF CERTAIN CLAIMS ASSERTED
AGAINST THE REORGANIZED DEBTORS BY CHARTIS SPECIALTY
INSURANCE COMPANY AND LEXINGTON INSURANCE COMPANY**

Reorganized Debtors Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated entities in the above-captioned cases (collectively, and with successor in interest Motors Liquidation Company GUC Trust, "**MLC**") and Chartis Specialty Insurance Company and Lexington Insurance Company (together, "**Chartis**" and, together with MLC, the "**Parties**"), each by their undersigned counsel, respectfully submit this Stipulation and Agreed Order Approving a Partial Resolution of Certain Claims Asserted Against the Reorganized Debtors by Chartis U.S. (the "**Stipulation**"), and state:

**WHEREAS,** on June 1, 2009 (the "**Commencement Date**"), General Motors Corporation and certain affiliates (the "**Debtors**") commenced voluntary cases under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**");  and

**WHEREAS**, on March 29, 2011, the Bankruptcy Court entered an order confirming the Debtors' Second Amended Joint Chapter 11 Plan (the "**Plan**"); and

**WHEREAS**, all of the conditions to the occurrence of the effective date of the Plan were met or waived on March 31, 2011, thereby making the Plan effective as of that date; and

**WHEREAS,** as of November 29, 2009, Chartis filed four substantively identical Proofs of Claim, designated as Claims Nos. 59680, 59681, 59682 and 59697 (the "**Proofs of Claim**"), against different Debtors; and

**WHEREAS,** Chartis designated its Proofs of Claim as unliquidated but as secured by "right of setoff"; and

**WHEREAS**, on December 3, 2010, the Debtors objected to the Proofs of Claim in their 110th Omnibus Objection to Claims; and

**WHEREAS**, on March 4, 2011, Chartis and certain affiliates filed the Response of Granite State Insurance Company, *et al.* to the Debtors' 110th Omnibus Objection to Claims with Respect to Claim Nos. 59680, 59681, 59682 and 59697 (the "**Response**"); and

**WHEREAS**, on October 6, 2011, MLC filed the Reorganized Debtors' (1) Supplemental Claim Objection and (2) Motion To Enforce the Plan Injunction and Automatic Stay and To Enjoin Chartis U.S. From Continuing To Retain More Than $20 Million It Improperly Seized from the Reorganized Debtors (the "**Supplemental Objection**"); and

**WHEREAS,** MLC and Chartis have reviewed and evaluated their respective positions with respect to Chartis's Proofs of Claim and have engaged in negotiations concerning resolution of the issues raised in MLC's Supplemental Objection to the Proofs of Claim; and

2

**WHEREAS**, Chartis has represented that it has authority to act for Lexington Insurance Company and Chartis's other affiliates in entering into this Stipulation; and

**WHEREAS**, the Parties have agreed, in an effort to avoid unnecessary litigation and reduce their respective costs, to resolve many of the issues raised by Chartis's Proofs of Claim and MLC's Supplemental Objection;

**NOW, THEREFORE**, in consideration of the foregoing, the Parties hereby stipulate and agree that:

1. <u>Initial Return of MLC Funds</u>.  Chartis shall return not less than $11,959,282 to MLC (i) within three business days of the date this Stipulation is executed or (ii) by November 4, 2011, whichever is earlier.  The exact amount returned shall be equal to all of the funds in which MLC has an interest that Chartis or its affiliates hold or control in connection with the "Old GM Insurance Agreements" referenced in (i) a certain Assumption and Collateralization Agreement between Chartis Specialty Insurance Company and General Motors LLC and Motors Liquidation Company (f/k/a General Motors Corporation) effective as of July 10, 2009 or (ii) a certain Letter Agreement between Lexington Insurance Company and General Motors LLC and Motors Liquidation Company (f/k/a General Motors Corporation) effective as of July 10, 2009 (together the "MLC Funds"), but minus the sum of $8,612,204.

2. <u>Subsequent Returns of MLC Funds</u>. Chartis shall return the remainder of the MLC Funds to an escrow account or MLC, in an amount not less than $8,612,204, as follows:

    a. <u>Funds Held in Connection with Policy 7146277</u>. Chartis shall return at least $8,000,000 in MLC Funds held in connection with Policy 7146277 to Weil, Gotshal and Manges LLP, as escrow agent

3

("**Escrow Agent**"), for deposit in an escrow account (the "**Escrow Account**") so that it is received no later than 5:00 p.m. on November 9, 2011, unless a loss or claim has been asserted against that policy prior to that time. If a loss or claim has been asserted against Policy 7146277 prior to that time, Chartis shall have the right to retain no more than the amount of MLC Funds specified in the Parties' contracts to protect Chartis's rights with respect to that loss or claim.[1]  Further:

  i. The sum deposited in the Escrow Account (the "**Returned Sum**") shall remain in escrow from its receipt in escrow until the close of business on January 6, 2012 (the "**Escrow Period**") subject to the following conditions.

 ii. If no facially valid loss or claim has been asserted against Policy 7146277 during the Escrow Period, the Escrow Agent will release all of the Returned Sum and any interest thereon to MLC.

iii. If a facially valid loss or claim is asserted against Policy 7146277 during the Escrow Period, then the Escrow Agent shall transfer the Returned Sum and any interest thereon to Chartis within three business days of receiving written notice of that fact from Chartis. However, each of the Parties will retain the right to argue in any appropriate forum for or against the proposition that, in view of all of the circumstances, Chartis' claim has had

---

1   The limits of liability are $4,000,000 each occurrence and $8,000,000 annual aggregate
*(cont'd)*

4

or should be granted a first priority lien on the Returned Sum (and interest thereon, if any). In addition, MLC shall have the right to seek the return of all or part of the Returned Sum in any appropriate forum on any appropriate ground, and all rights of the Parties are preserved.

    b. <u>Funds Held in Connection with Policy 7146279</u>. Chartis shall return all MLC Funds held in connection with Policy 7146279 in the amount of not less than $612,204 within five business days after receiving a copy of a release from the Illinois Environmental Protection Agency that is reasonably satisfactory to Chartis as a release of all claims, losses, risks and obligations relating to Policy 7146279.

    3.     <u>Retained MLC Funds</u>. To the extent that Chartis retains any part of the MLC Funds in its possession, custody or control after December 15, 2011, unless the retention is expressly permitted by this Stipulation and Order, (i) MLC shall have the right to seek the return of all or part of the retained funds in any appropriate forum and on any appropriate terms, and (ii) MLC shall have the right to seek all costs and sanctions sought in the Supplemental Objection as well as any other appropriate remedy. Chartis shall retain the right to oppose MLC's claim and attempts to obtain sanctions or the return of the MLC Funds on any appropriate substantive or procedural ground.

    4.     <u>Allowed Amount of "Bristol Claim."</u> MLC agrees that the allowed amount of Chartis's claim based on the Bristol Center matter described in Exhibit B to

---

*(cont'd from previous page)*
    limits of the Insurer's liability, exclusive of legal defense costs.

5

the Proofs of Claim (the "**Bristol Claim**") shall be $4.5 million, but reserves the right to argue that this amount should be treated as a general unsecured claim as discussed below.  Chartis will not seek more than $4.5 million from MLC in connection with the Bristol Claim, but reserves the right to argue in an appropriate forum as determined by the Court either that the Bristol Claim was a secured claim as of the date of this agreement or that Chartis otherwise was entitled to offset the Bristol Claim against the MLC Funds.

    5. <u>Reservation of Bristol Claim Amount</u>.  In consideration of the release of funds set out herein, MLC shall return assets in its Reserve Account sufficient to pay the Bristol Claim in the full amount in which it would be paid if it is treated as a secured claim under the Plan.  Once it has been determined by the appropriate forum beyond the possibility of appeal whether the Bristol Claim should be treated as a secured claim or otherwise is subject to offset, the Bristol Claim shall either be paid in cash from the Reserve Account or treated as a general unsecured claim under the Plan, in accordance with such determination, and thereafter MLC shall no longer be required to reserve any assets in connection with the Bristol Claim.

    6. <u>Renick Claim</u>.  The Parties and Chartis's affiliates, including Lexington Insurance Company, will reserve their respective rights with respect to the Renick Cadillac, Inc. matter described in Exhibit A to the Proofs of Claim (the "**Renick Claim**"), except that:  (a) the Renick Claim shall be a general unsecured claim;  (b) Chartis and its affiliates will not seek any sums due with respect to the Renick Claim from MLC unless they determine in good faith that they will be unable to receive compensation for the claim from General Motors Company;  and  (c) neither Chartis nor its affiliates will seek to recover sums allegedly due from MLC in connection with the Renick Claim at any time after June 30, 2012 unless they have already reasserted the

6

Renick Claim in good faith, by amendment or otherwise, after the date of the Amended Proof of Claim discussed below.

7. No later than three business days after this Stipulation is fully executed, Chartis shall file an amended proof of claim (the **"Amended Proof of Claim"**) that supersedes all of the existing Proofs of Claim. The Amended Proof of Claim (i) shall assert only the Bristol Claim, and (ii) shall be asserted only against Motors Liquidation Company. Chartis shall retain the right to assert new or amended claims against Motors Liquidation Company in good faith to the extent, but only to the extent, that these claims are (a) based on the Renick Claim, can be asserted consistent with paragraph 6 of this Stipulation and Order, and are substantively identical to the Renick Claim as it was asserted in the Proofs of Claim, or (b) based on circumstances justifying a retention of MLC Funds under Paragraphs 2(a) or 2(b) of this Stipulation and Order or a loss or claim asserted against Policy 7146277 before the end of the Cancellation Period.

8. No later than seven business days after the Amended Proof of Claim has been filed, MLC shall file an Amended Supplemental Objection responding to the Amended Proof of Claim.

9. No later than ten business days after the Amended Supplemental Objection has been filed, Chartis shall file any response to the Amended Supplemental Objection.

10. No later than fifteen business days after Chartis's Response to the Amended Supplemental Objection has been filed, MLC shall file any reply in further support of its Amended Supplemental Objection.

11. The Parties shall have the right to amend the deadlines specified in this Stipulation for filing the Amended Proof of Claim, Amended Supplemental Objection, response to the Amended Supplemental Objection and reply in further

7

support of the Amended Supplemental Objection (the "**Claim Filings**") without obtaining leave from the Bankruptcy Court.

12.     The issues addressed in the Claim Filings shall be presented to the Court at the earliest date in January on which the Court is available, consistent with the foregoing schedule.  Nothing herein shall be deemed to prejudice either Party from arguing before the Bankruptcy Court in favor of, or in opposition to, the proposition that the issues of whether the Bristol Claim was secured or otherwise subject to offset are subject to arbitration.

13.     This Stipulation may be executed in counterparts which together shall constitute one and the same agreement.

14.     This Stipulation constitutes the entire agreement between the Parties with respect to the matters addressed herein.  Its terms may not be amended or modified in any manner except by a writing signed by each of the Parties or their counsel.

15.     Each Party and signatory to this Stipulation represents and warrants to each other Party and signatory hereto that it has full power, authority and legal right and has obtained all approvals and consents necessary to execute, deliver and perform all actions required under this Stipulation.

16. The Bankruptcy Court shall retain jurisdiction to hear any matters or disputes arising from or relating to this Stipulation.


Dated: New York, New York  
       November 3, 2011

MOTORS LIQUIDATION COMPANY, *et al.*  
By their Conflicts Counsel,  
TOGUT, SEGAL & SEGAL LLP  
By:

/s/Richard K. Milin  
Scott E. Ratner  
Richard K. Milin  
One Penn Plaza, Suite 3335  
New York, New York 10119  
(212) 594-5000

Dated: New York, New York  
       November 3, 2011

CHARTIS U.S.  
By its Counsel,  
ZEICHNER ELLMAN & KRAUSE LLP  
BY:

/s/Michael S. Davis  
Michael S. Davis  
575 Lexington Avenue  
New York, New York 10022  
(212) 826-5311


**SO ORDERED**

This ___ day of _____, 2011  
in New York, New York

_____  
HONORABLE ROBERT E. GERBER  
UNITED STATES BANKRUPTCY JUDGE