| | |
|---|---|
| **Status Conference:** | **November 22, 2011 at 9:45 a.m.** |
| **Hearing Date and Time:** | **January 18, 2012 at 9:45 a.m.** |
| **Response Deadline:** | **December 1, 2011 at 4:00 p.m.** |
| **Reply Deadline:** | **December 22, 2011 at 4:00 p.m.** |

TOGUT SEGAL & SEGAL LLP
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Facsimile: (212) 967-4258
Scott E. Ratner
Richard K. Milin

Conflicts Counsel to the Reorganized Debtors

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| MOTORS LIQUIDATION COMPANY, | ) | Case No. 09-50026 (REG) |
| *et al.*, | ) |  |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**REORGANIZED DEBTORS' AMENDED SUPPLEMENTAL OBJECTION
TO PROOF OF CLAIM NUMBER 71242 ASSERTED BY CHARTIS
SPECIALTY INSURANCE COMPANY ON THE GROUND THAT THE
CLAIM IS NOT PROPERLY SECURED BY A VALID RIGHT OF SETOFF**

**[CLAIM NO. 71242]**

<u>**TABLE OF CONTENTS**</u>

<u>Page</u>

PRELIMINARY STATEMENT ..................................................................................1

JURISDICTION AND VENUE ...............................................................................6

FACTUAL BACKGROUND ....................................................................................6

    A.      The Chapter 11 Cases ................................................................6

    B.      The Chartis Proofs of Claim ...................................................7

    C.      Chartis's Seizure of the Reorganized Debtors' Property ......................8

    D.      Chartis Refuses To Return the Seized Property ..................................11

RELIEF REQUESTED ...........................................................................................12

ARGUMENT.........................................................................................................12

               The Court Should Hold that Chartis's Amended Claim
               Is Unsecured Because Chartis Lacks the Right of Setoff It Asserts..12

RESERVATION OF RIGHTS..............................................................................18

CONCLUSION ....................................................................................................19

**REORGANIZED DEBTORS' AMENDED SUPPLEMENTAL OBJECTION
TO PROOF OF CLAIM NUMBER 71242 ASSERTED BY CHARTIS
SPECIALTY INSURANCE COMPANY ON THE GROUND THAT THE
CLAIM IS NOT PROPERLY SECURED BY A VALID RIGHT OF SETOFF**

Reorganized Debtor Motors Liquidation Company, formerly known as General

Motors Corporation ("**Old GM**"), and its affiliated reorganized debtors (collectively, the

"**Reorganized Debtors**"), respectfully submit their amended supplemental objection to

proof of claim number 71242 asserted by Chartis Specialty Insurance Company on the

ground that the claim is not properly secured by a valid right of setoff and, in support

hereof, respectfully represent as follows:

**PRELIMINARY STATEMENT**

1.      The Reorganized Debtors respectfully submit this amended supple-

mental claim objection (the "**Amended Objection**") to ask the Court to determine that

Claim No. 71242 (the "**Amended Claim**"), asserted by Chartis Specialty Insurance

Company and certain of its affiliates ("**Chartis**"), is not entitled to secured status

because Chartis cannot properly exercise the right of setoff it asserts.

2.      Chartis's Amended Claim arises by right of *subrogation*, not from

Old GM's insurance program with Chartis (the "**Insurance Program**"). (*See* Amended

Claim, Exhibit B (stating that Chartis's Amended Claim is based on Chartis's issuance

of "Pollution Legal Liability Select policy number PLS 2645055 … to Bristol Center

LLC" and that Chartis, "[a]s the subrogee of Bristol Center LLC, … stands in the shoes

of Bristol Center LLC").)

3.      Chartis's Amended Claim explains that Bristol Center LLC

("**Bristol**") purchased an environmentally contaminated property from Old GM, and

when Old GM became unable to pay for environmental remediation, Bristol became

liable instead.  Bristol turned to its insurer, which happened to be Chartis, and Chartis

1

assertedly has paid for and will pay for the remediation pursuant to an insurance policy it issued to Bristol.  Chartis then asserted a claim against Old GM on the ground that Old GM would be liable to Bristol, and because Chartis had paid Bristol's debt, that Old GM was liable to Chartis by right of subrogation.  (*See* Amended Claim, Exhibit B.)

4.    The Reorganized Debtors have stipulated to allow Chartis's Amended Claim as a general unsecured claim in the negotiated amount of $4.5 million, but each party has retained the right to dispute whether the Amended Claim should be treated as secured.  (*See* Stipulation and Agreed Order Approving a Partial Resolution of Certain Claims Asserted Against the Reorganized Debtors by Chartis Specialty Insurance Company and Lexington Insurance Company (the "**Stipulation**") between the Reorganized Debtors and Chartis (together, the "**Parties**").)  The Stipulation was submitted to this Court by notice of presentment on November 7, 2011 (Docket No. 11119).

5.    Pursuant to the Stipulation, on November 9, 2011, Chartis filed its Claim No. 71242 as an amended and superseding claim which expressly asserts that Chartis has a right of setoff and that its Amended Claim is secured.  (*See* Amended Claim at 1;  Stipulation ¶ 7.)

6.    Chartis admits – as it must – that its Amended Claim arises from the insurance policy Chartis issued to *Bristol*, and not from the policies Chartis issued to *Old GM*.  Chartis maintains, however, that the Parties' payment agreements (the "**Payment Agreements**") nevertheless give Chartis the right to use the collateral Old GM provided in connection with its obligations under the Insurance Program to pay Chartis's unrelated $4.5 million Amended Claim based on the coverage Chartis provided to Bristol.

7.    As we show below, Chartis is wrong for at least four reasons.  Two of these reasons merit discussion in this Preliminary Statement, however, both because they are dispositive and because they provide an important caution in evaluating Chartis's Amended Claim.

8.    First, Chartis has no valid right to set off against Old GM's collateral because Chartis cannot properly exercise default remedies against Old GM.  Chartis expressly asserts its purported setoff right as a remedy available "[i]n the event of default" under the Payment Agreements.  (*See* Amended Claim at 2.)  Chartis's entire discussion of whether Old GM is actually in default, however, is as follows:  "[Old GM] has acknowledged its default in a supplemental claim objection filed October 6, 2011." (*Id.*)

9.    Chartis's statement that Old GM has "acknowledged" default is unambiguously and undeniably false.  The Reorganized Debtors' October 6, 2001 supplemental claim objection specifically argues that Chartis is not entitled to exercise a right of setoff because Old GM could *not* be treated as in default:

> 52.  For at least four reasons, however, the Payment Agreement's Setoff Remedy does not justify Chartis in using the Reorganized Debtors' collateral to satisfy its Bristol Claim.
>
> 53.  First, Chartis has no right to exercise the Setoff Remedy because it is available only "[i]f default occurs." Chartis has acknowledged to the Reorganized Debtors that, notwithstanding contrary statements in the Chartis Response, *Old GM was not in default on any financial or other affirmative obligations to Chartis as of Old GM's bankruptcy filing*.
>
> 54.  Further, Chartis's Response identifies only $41,956 in alleged monetary defaults in connection with the Insurance Program, which would limit Chartis's remedies to retaining only $41,956 of the Seized Cash.  In addition, Chartis cannot claim to be entitled to exercise default remedies due to Old GM's bankruptcy filing, because the Insurance Program, consisting of various inter-related agreements, is an executory contract and *11 U.S.C. § 365(b)(2) prohibits Chartis from treating Old GM as in default based solely on its bankruptcy filing*.

3

(Reorganized Debtors' (1) Supplemental Claim Objection and (2) Motion To Enforce the
Plan Injunction and Automatic Stay and To Enjoin Chartis U.S. From Continuing To
Retain More Than $20 Million It Improperly Seized from the Reorganized Debtors (the
"**Supplemental Objection and Motion**") (Docket No. 11019) at ¶¶ 52-54.)

10.     Further, the foregoing quoted paragraphs contain only a brief dis-
cussion of the alleged $41,956 in monetary defaults because the Supplemental Objection
and Motion had already explained why Chartis's Amended Claim for that sum was
without merit:

> 40.  The Chartis Proofs of Claim state that: "the Debtors are indebt-
> ed to Claimant for premiums, deductibles, and other related fees,
> expenses and obligations or, among other things, insurance coverages and
> services …." (*Id*. at  1 ¶ 1.)
>
> 41.  Chartis has provided no documentation to substantiate these
> Insurance Program Claims, and the Claims cannot be reconciled with Old
> GM's books and records, which show nothing due.  Further, the Reorgan-
> ized Debtors understand that Chartis has acknowledged that no premi-
> ums, deductibles, related fees, expenses or obligations are actually due.…
> Accordingly, Chartis's Insurance Program Claims should be disallowed in
> their entirety.

(Supplemental Objection and Motion at ¶¶ 40-41.)

11.     Thus, the Reorganized Debtors' Supplemental Objection and
Motion did not "acknowledge default."  To the contrary, it expressly *rejected* Chartis's
contention that Old GM could be treated as in default.

12.     Further, this Court must conclude that there has in fact been no
actionable default.  Chartis's Amended Claim alleges no facts to show that Old GM
defaulted on its payment obligations, and Chartis did not seek to preserve a claim for
non-payment of insurance premiums in the Stipulation.  (*See* Stipulation ¶¶ 4-7 (super-
seding Chartis's prior proofs of claim and limiting the bases for any potential future
proofs of claim).)

13.     A second dispositive reason why Chartis is not entitled to exercise a setoff against Old GM's property is that the Payment Agreements required Old GM to post collateral only to satisfy Old GM's "Payment Obligation." Chartis's Amended Claim, because it is based on a right of subrogation and not on the Insurance Program, is not part of Old GM's "Payment Obligation."

14.     The Payment Agreements required Old GM to provide collateral to Chartis, but specify, in a passage Chartis quotes in its Amended Claim, that, "You direct us to hold *all* … collateral for *Your Payment Obligation* as [it] may be payable now or may become payable in the future." (Amended Claim at 2 (quoting Payment Agreements at 6).)

15.     According to Chartis, this provision means that Old GM "granted Claimant a first priority security interest in certain collateral and a contractual right to use and apply such collateral to satisfy *any obligations that MLC owes to Claimant*…." (Amended Claim at 1 (emphasis added).)

16.     In a passage that Chartis does *not* quote, however, the Payment Agreements define "Payment Obligation" in terms that exclude the Amended Claim: it means "the amounts that you must pay us for the insurance and services in accordance with the terms of the Policies, this Agreement, and any similar primary casualty insurance policies and agreements with us incurred before the inception date hereof." (Payment Agreements at 4.)

17.     The Payment Agreements' definition of "Payment Obligation," which the Reorganized Debtors relied on in their Supplemental Objection and Motion but Chartis somehow fails to mention, is dispositive of Chartis's purported right of setoff. "All" of Old GM's collateral was held as collateral for its Payment Obligation, and its Payment Obligation did not include sums due to Chartis by right of subrogation,

because those sums did not arise from "insurance and services" provided in accord with Old GM's "policies and agreements" with Chartis.  (*See* Payment Agreements at 4; Supplemental Objection and Motion at ¶ 57 (asserting that the Payment Agreements' definition of "Payment Obligation" precludes Chartis from exercising a setoff).)

18.    The Payment Agreements' definition of "Payment Obligation" also shows that Chartis's assertion that it has a right of setoff is based on a second premise – that Old GM provided collateral for "any obligations that [Old GM] owes to Claimant" – which is unambiguously and undeniably false.

19.    Additional relevant facts, and additional reasons why Chartis has no right of setoff, are discussed below.

## JURISDICTION AND VENUE

20.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b).  The relief sought herein constitutes a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## FACTUAL BACKGROUND

**A.    The Chapter 11 Cases**

21.    On June 1, 2009 (the "**Commencement Date**"), Motors Liquidation Company (f/k/a General Motors Corporation), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), and MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) (collectively, the "**Initial Debtors**") commenced voluntary cases in this Court under chapter 11 of the Bankruptcy Code.  On October 9, 2009, Remediation and Liability Management Company, Inc. and Environ-mental Corporate Remediation Company (the "**REALM/ENCORE Debtors**" and, together with the Initial Debtors, the "**Debtors**") commenced voluntary cases in this

Court under chapter 11 of the Bankruptcy Code, which cases are jointly administered under Case Number 09-50026 (REG).  On September 15, 2009, the Initial Debtors filed their schedules of assets and liabilities and statements of financial affairs, which were amended on October 4, 2009.  On October 15, 2009, the REALM/ENCORE Debtors filed their schedules of assets and liabilities and statements of financial affairs.

22.    On September 16, 2009, this Court entered an order (Docket No. 4079) establishing November 30, 2009 as the deadline for each person or entity to file a proof of claim in the Initial Debtors' cases, including governmental units.  On December 2, 2009, this Court entered an order (Docket No. 4586) establishing February 1, 2010 as the deadline for each person or entity to file a proof of claim in the REALM/ENCORE Debtors' cases (except governmental units, as defined in section 101(27) of the Bankruptcy Code, for which the Court established April 16, 2010 as the deadline to file proofs of claim).

23.    On March 29, 2011, this Court entered an order confirming the Debtors' Second Amended Joint Chapter 11 Plan (the "**Confirmation Order**") (Docket No. 9941).  All conditions to the occurrence of the Effective Date were met or waived on March 31, 2011, thereby making the Plan effective as of that date.

**B.    The Chartis Proofs of Claim**

24.    In November 2009, Chartis filed four substantively identical proofs of claim against Motors Liquidation Company and certain affiliated debtors (Claims Nos. 59680, 59681, 59682 and 59697) (the "**Proofs of Claim**").  Chartis designated its Proofs of Claim as unliquidated and secured by "right of setoff."

25.    The Debtors objected to Chartis's Proofs of Claim in their 110th Omnibus Objection to Claims filed on December 3, 2010 (the "**Claim Objection**," Docket No. 8000).  The Claim Objection sought disallowance of the Proofs of Claim

7

under section 502(e) of the Bankruptcy Code on the ground that they were, at best, contingent and unliquidated claims of a co-obligor.  The Claim Objection also expressly reserved the Debtors' right to object to the Chartis Proofs of Claim "on any other basis."

26.    In response to the Claim Objection, Chartis filed a Response dated March 4, 2011 (the "**Chartis Response**," Docket No. 9601) in which Chartis attempted to articulate a basis for certain limited aspects of its Proofs of Claim in more detail.  Chartis provided only three paragraphs of additional detail, however, and did not provide any substantial documentation to support any aspect of its Proofs of Claim.

27.    The Proofs of Claim asserted a right of setoff by stating that "[t]o the extent Claimant holds any cash or other collateral as security for its claim, regardless of whether such cash or collateral is property of the Debtors' estates, Claimant asserts a secured claim and/or a right of setoff and reserves its rights to collect against same by recoupment and/or setoff."  (Proofs of Claim at  3 ¶ 8.)  The Proofs of Claim provided no further justification or description of this purported right of setoff, however.

## C.    Chartis's Seizure of the Reorganized Debtors' Property

28.    As of November 4, 2011, Chartis held at least $20,571,486 that it had received from Old GM as collateral in connection with the Old GM Insurance Program. (*See* Assumption and Collateralization Agreements, attached to the Declaration of Richard K. Milin dated November 17, 2011 in support of the relief sought herein (the "**Milin Decl.**") as Exhibit 2;  Declaration of Thomas A. Morrow dated October 5, 2011 (the **"Morrow Decl."**), annexed to the Milin Declaration as Exhibit 1, ¶ 4;  Stipulation at 1.)  By that time, Chartis had long lacked any basis to assert that it was entitled to keep all of this cash as collateral under Old GM's insurance agreements with Chartis (the "**Old GM Insurance Agreements**").

8

29.     Chartis has identified only the following insurance policies (the

"**Identified Policies**") as yielding potential obligations that the Reorganized Debtors

might be required to collateralize and reimburse:

| Policy Type | Insurer | Policy Number | Policy Limited and Collateral |
|---|---|---|---|
| Pollution | Chartis Specialty Insurance Co. | 7146277 | $8,000,000 |
| Storage Tanks | Chartis Specialty Insurance Co. | 7146278 | $2,000,000 |
| Hazardous waste (Ohio Closure/Post Closure) | Chartis Specialty Insurance Co. | 7146282 | $5,822,539 |
| Hazardous Waste (Michigan Corrective Action) | Chartis Specialty Insurance Co. | 7146281 | $3,839,721 |
| Hazardous Waste (New Jersey Closure) | Lexington Insurance Co. | 7146280 | $297,022 |
| Hazardous Waste (Illinois Closure) | Lexington Insurance Co. | 7146279 | $612,204 |

30.     All of the foregoing insurance policies are "claims made" policies

that have expired and, except for Policy No. 7146281, no covered claims could be

asserted under them after April 1, 2011.  (*See* Morrow Decl. ¶¶ 5-6.)

31.     Further, although the claims period for Policy No. 7146281 did not

expire until September 1, 2011, the Reorganized Debtors cancelled that Policy on March

31, 2011.  (*See* Milin Decl., Exh. 3;  Morrow Decl. ¶ 7.)  Consequently, no new claims

against the Reorganized Debtors or Chartis can properly be asserted under any of the

Identified Policies – any such claims would be time-barred.

32.     Also, the vast majority of potential claims under the Identified

Policies were resolved by this Court's Confirmation Order approving the Plan and

Environmental Response Trust incorporated therein.  Decretal Paragraph 7 of the

Confirmation Order states:

> The establishment and funding of the Environmental Response Trust and the transfer of the Environmental Response Trust Assets to the Environmental Response Trust or any entity formed by the Environmental Response Trust Administrative Trustee ***shall be in full settlement and satisfaction of all present and future civil environmental liabilities or obligations of the Debtors to the Governmental Authorities***, other than the claims and rights reserved ….

(*See* Confirmation Order at 19-21 (emphasis added).)

33.     The Environmental Response Trust settlement resolved any potential claims by governmental authorities with respect to all of the sites covered by the Identified Policies except for the site at McCook, Illinois, which was no longer owned by the Debtors as of the Commencement Date.  (*See* Morrow Decl. ¶ 8.)

34.     In addition to being time-barred and resolved by Court order, almost all potential claims that might be asserted in the future under the Identified Policies have been released.  At Chartis's request – and after engaging in months of effort and expending significant resources – the Reorganized Debtors obtained signed releases from all but one of the governmental authorities that, alone, could assert claims covered by the Identified Policies.  The only exception is the Illinois authorities who have not yet provided a signed release for the McCook site.  (*See* Morrow Decl. ¶ 9.)

35.     As the Stipulation reflects, Chartis's potential exposure with respect to the McCook site is limited to – at most – approximately $8.6 million.  The Reorganized Debtors dispute whether this amount is based on a genuine risk, but the Stipulation provides that approximately $8 million will be returned to the Reorganized Debtors from escrow if no relevant claim covered by Chartis materializes as of January 6, 2012.  (*See* Stipulation ¶ 2.)

**D.    Chartis Refuses To Return the Seized Property**

36.    The Debtors requested the return of the approximately $20.6 million in Old GM property that Chartis held as collateral on March 1, 2011.  Chartis refused the request and took control of the property for its own unspecified purposes about two days later.  Chartis also refused numerous subsequent requests by the Reorganized Debtors for the return of this seized property.  (*See* Morrow Decl. ¶ 13.)

37.    The Debtors and the Reorganized Debtors made attempts to reach a negotiated resolution with Chartis after March 1, 2011, both with and without the assistance of counsel.  The attempts were unsuccessful.

38.    During the course of the Parties' negotiations, Chartis requested that the Reorganized Debtors obtain releases letters from the agencies that Chartis contended might have been able to assert claims under the Identified Policies. However, even though Chartis was provided with letters releasing potential claims for all sites except the site at McCook, Illinois, Chartis did not return any of the property it seized from Old GM.  (*See* Morrow Decl. ¶ 18.)

39.    On September 16, 2011, the Reorganized Debtors sent Chartis a formal demand letter setting out why Chartis's actions violated the Confirmation Order and automatic stay and requesting the return of the seized property by September 30, 2011.  (*See* Milin Decl., Exh. 4.)  Chartis failed to respond to the substance of the letter.

40.    Because the Parties' negotiations continued to be unsuccessful despite Chartis's receipt of the release letters it had requested, the Reorganized Debtors were forced to file their Supplemental Objection and Motion.

41.    After the Reorganized Debtors' Supplemental Objection and Motion was filed, the Parties were able to reach a partial resolution of their dispute, which they embodied in the Stipulation.  Pursuant to the Stipulation, Chartis returned

approximately $12 million to the Reorganized Debtors and deposited approximately $8.6 million into escrow.  Also, approximately $8 million of the escrowed amount is to be returned to the Reorganized Debtors by January 6, 2012 if no facially valid claim is asserted against Chartis under a specified insurance policy.  (*See* Stipulation ¶ 2a.)

42.   In addition, the Stipulation required Chartis to file an amended proof of claim that limited and superseded its four original Proofs of Claim.  The Parties agreed that this superseding proof of claim would only state a claim arising out of the Bristol Center matter, that the claim would be asserted in the allowed amount of $4.5 million, and that Chartis would reserve the right to assert that the $4.5 million should be deemed secured based on Chartis's retention of Old GM's property as of the date the Stipulation was signed.

43.   On November 9, 2011, Chartis filed its Amended Claim and asserted that this Claim should be deemed secured by right of setoff.

## RELIEF REQUESTED

44.   The Reorganized Debtors request that this Court enter an Order holding that Chartis's Amended Claim is a general unsecured claim because Chartis lacks the right to setoff it asserts, and granting the Reorganized Debtors such other and further relief as is just.

## ARGUMENT

### The Court Should Hold that Chartis's Amended Claim Is Unsecured Because Chartis Lacks the Right of Setoff It Asserts

45.   Chartis's Amended Claim asserts that its allowed $4.5 million is "secured by certain collateral Claimant holds in accordance with the Payment Agreements."  (Amended Claim at 3.)  In fact, Chartis yielded possession of that

12

collateral, but the Stipulation provides that Chartis will be permitted to argue that the

Claim "was a secured claim as of the date of [the Stipulation]." (*See* Stipulation ¶ 4.)

46.    Chartis's argument that its Amended Claim is secured appears to

be based on the following four premises:

(1)    Chartis asserts that the Payment Agreements required Old GM to grant Chartis "a first priority security interest in certain collateral and a contractual right to use and apply such collateral to satisfy any obligations that [Old GM] owes to Claimant…." (Amended Claim at 1.)

(2)    Chartis asserts that "[i]n the event of default," the Payment Agreements allow Chartis to:

> draw upon, liquidate, or take ownership of any or all collateral we hold … and hold or apply such amounts to any of Your Payment Obligation under this Agreement or any other premium, surcharge or deductible financing agreement between You and us, or under any Policies.

(Amended Claim at 2 (quoting Payment Agreements at 8). *See also* Payment Agreements at 3 (defining "Policies" to refer exclusively to policies Chartis issued to Old GM).)

(3)    Chartis asserts that "MLC has acknowledged its default in a supplemental claim objection filed October 6, 2011." (Amended Claim at 2.)

(4)    Chartis asserts that "Claimant has the right to: … satisfy Your obligations to us in whole or in part by set-off against any moneys, securities, collateral, consideration or property of Yours received by, pledged to, held by or otherwise available to us in connection with Your Payment Obligation.  You authorize us after any default to charge any account that You maintain with us in connection with Your Payment Obligation in order to satisfy <u>any</u> of Your obligations." (Amended Claim at 2 (quoting, with Chartis's emphasis, Payment Agreements at 8).)

47.    The first of these four premises, as discussed in the Preliminary

Statement, is false.  Chartis's Amended Claim states that Old GM granted Chartis a lien

so that Chartis could "use and apply [Old GM's] collateral to satisfy any obligations

that MLC owes to Claimant." (Claim at 1.)  The Payment Agreements provide, in

contrast, that "all" of the collateral is to be used as "collateral for *Your Payment Obligation*," and the term "Your Payment Obligation" does not include claims for subrogation unrelated to Old GM's policies and agreements with Chartis.  (*See* Claim at 2 (quoting Payment Agreements at 6).  *See also* Payment Agreements at 4 (defining "Your Payment Obligation" as amounts related to policies Chartis issued to Old GM).)

48.     Chartis's second premise is inapplicable to the Amended Claim, because it merely asserts Chartis's rights with respect to Old GM's Payment Obligation upon a default by Old GM.  Old GM's Payment Obligation, as shown above, does not include Chartis's Amended Claim based on subrogation.

49.     Chartis's third premise, as discussed in the Preliminary Statement, is false:  Old GM does not "acknowledge" that it can be treated as in default under the Payment Agreements.  Further, the Amended Claim states no reason other than Old GM's purported "acknowledgement" why Old GM can be treated as in default.

50.     Chartis's fourth and final premise is inapplicable because Chartis has no right to exercise default remedies against Old GM.  Even if it were applicable, moreover, it would not allow Chartis to exercise a setoff.

51.     The default provisions of the Payment Agreements, on which Chartis rely, state in relevant part:

> If default occurs, we may take reasonable and appropriate steps that are necessary to protect our interest. We will exercise good faith consistent with usual and customary commercial and credit practice in selecting and exercising such steps.  We may take steps such as the following:
>
> 1. We may declare the entire unpaid amount of Your Payment Obligation immediately due and payable.
>
> 2. We may change any or all unexpired Policies….

   3.  We may draw upon, liquidate, or take ownership of any or all collateral we hold regardless of the form, and hold or apply such amounts to any of Your Payment Obligation under this Agreement or any other premium, surcharge or deductible financing agreement between You and us, or under any Policies.  However, we will not draw upon, liquidate, or take ownership of more collateral than is reasonably necessary to protect our interest.

   4.  We may require You to deliver to us additional collateral.…

   5.  We may cancel any or all unexpired Policies.…

   6.  We may withhold payment of claims to You.…

   7.  We may satisfy Your obligations to us in whole or in part by set-off against any moneys, securities, collateral, consideration or property of Yours received by, pledged to, held by or otherwise available to us in connection with Your Payment Obligation.  You authorize us after any default to charge any account that You maintain with us in connection with Your Payment Obligation in order to satisfy any of Your obligations.

(Payment Agreements at 8.)

  52. As noted above, the Payment Agreements' definition of "Your Payment Obligation" excludes Chartis's Amended Claim because that Claim is not an amount that Old GM "must pay us for the insurance and services in accordance with the terms of the Policies, this Agreement, and any similar primary casualty insurance policies and agreements with us incurred before the inception date hereof."  (Payment Agreements at 4.)

  53. Chartis has argued, however, that its seventh default remedy as quoted above (the "**Setoff Remedy**") allows Chartis to use Old GM's collateral to satisfy obligations other than Old GM's Payment Obligation because the Payment Agreements state, "We may satisfy *Your obligations* to us in whole or in part by set-off against any moneys, securities, collateral, consideration or property of Yours received

15

by, pledged to, held by or otherwise available to us in connection with Your Payment

Obligation.  You authorize us after any default to charge any account that You maintain

with us in connection with Your Payment Obligation in order to satisfy any of ***Your***

***obligations***." (Payment Agreements at 4 (emphasis added).)  The term "Your

obligations" in the quoted sentences is not specifically defined.

54.    For at least three reasons, even if Old GM could be treated as in

default -- and as discussed above it cannot -- the Payment Agreements' Setoff Remedy

would not justify Chartis in using the Reorganized Debtors' collateral to satisfy its

Amended Claim.

55.    First, the Setoff Remedy specifies that it can be used only with

respect to Old GM property that has been "received by, pledged to, held by or

otherwise available to us in connection with Your Payment Obligation." (Payment

Agreements at 8.)  It appears, however, that Old GM's collateral could only have been

legally held, under the Parties' Assumption and Collateralization Agreements, in a

specified trust, and not by Chartis.  Chartis has provided no documents to show

whether Chartis itself held Old GM's collateral, whether Chartis could legally or

properly hold that property instead of delivering it to a trust or escrow agent, or

whether the property was pledged on terms that would make it available to pay

Chartis's Amended Claim.  Consequently, Chartis has failed to demonstrate a right to

use Old GM's collateral for any Setoff Remedy.

56.    Second, it is well established that a subrogee stands in the shoes of

the subrogor and ordinarily can have no greater rights than the subrogor.  Yet, Chartis

appears to maintain that it can avail itself of the Reorganized Debtors' collateral

pledged solely in connection with the Old GM Insurance Program to convert its unre-

lated subrogation claim based on Bristol's unsecured claim against the Reorganized

16

Debtors into a secured claim. Chartis has offered no legal support for this novel theory, and the Reorganized Debtors are aware of none.

57. Third, Chartis's Amended Claim does not fall within the scope of the undefined term "Your obligations to us" used in the Setoff Remedy. In context, the natural reading of "Your obligations to us" is to refer to obligations in connection with the Insurance Program, not unrelated obligations owed for other reasons. To read the term otherwise would be, in effect, to subject insured parties to an unfair and unintended surprise.

58. Also, "Your obligations to us" naturally refers only to Old GM's direct obligations to Chartis, and not to Old GM's obligations to parties like Bristol, who just happen to be insured by Chartis.

59. In addition, and arguably most importantly, other provisions of the Payment Agreements preclude any reading of "obligations to us" that might cover Chartis's Amended Claim. The Payment Agreements specify that Old GM "must deliver collateral acceptable to us to secure Your Payment Obligation," adding that Chartis "may apply any collateral we hold in connection with this or any other similar primary casualty insurance policies or agreements to Your Payment Obligation." (Payment Agreements at 6.) In context, this language suggests that Chartis will "apply any collateral" only to Old GM's Payment Obligation and not to unrelated obligations arising out of Chartis's business dealings with third parties.

60. Moreover, the Payment Agreements unambiguously limit use of the collateral to Old GM's Payment Obligations. These state that "You grant us a possessory security interest in any property You deliver to us to secure Your Payment Obligation" and "direct us to hold *all such sums as collateral for Your Payment Obligation* as [it] may be payable now or may become payable in the future." (Payment

17

Agreements at 6 (emphasis added).)  Because the Payment Agreements direct Chartis to use *all* of the collateral for Old GM's Payment Obligation, Chartis has no right to use that collateral for anything else, such as a subrogation claim.

61.     The Payments Agreement's specific restriction on Chartis's use of Old GM's collateral trumps any potential reading of the vague and undefined term "Your obligations to us" that might allow Chartis to apply the Seized Cash to the Bristol Claim.  This is especially true given that the Payment Agreements must be construed against Chartis as their drafter, and that the phrase "Your obligations to us" is tucked away as the seventh numbered item in a list of default remedies.

62.     In addition, there is every reason to believe that, if Chartis were to convince a Court that the phrase "Your obligations to us" is ambiguous, and if the parties were therefore to conduct discovery concerning its meaning, the result would be the same:  Old GM could not reasonably have understood or intended that Chartis would use its Setoff Remedy as a reason to seize Old GM's collateral and apply it to a subrogation claim unrelated to Old GM's Payment Obligation.

63.     Thus, for the foregoing reasons, Chartis has no valid right of setoff under the Payment Agreements and its Amended Claim should be held to be unsecured.

## **RESERVATION OF RIGHTS**

64.     The Reorganized Debtors expressly reserve their right to object to the Amended Claim on grounds other than those stated in this Objection, including the ground that even if the Payment Agreements did allow Chartis to execute a setoff, Chartis's inequitable conduct -- including its seizure of millions of dollars in Old GM's

18

collateral in violation of the Confirmation Order and automatic stay – should preclude it from executing a setoff.

## CONCLUSION

65.     For all of the foregoing reasons, this Court should hold that Chartis has no valid right of setoff, limit its Amended Claim to a general unsecured claim in the stipulated amount of $4.5 million, and grant the Reorganized Debtors such other and further relief as is just and proper.

DATED:     New York, New York
            November 17, 2011

TOGUT, SEGAL & SEGAL LLP
By:

/s/ Richard K. Milin
SCOTT E. RATNER
RICHARD K. MILIN
One Penn Plaza - Suite 3335
New York, New York 10119
(212) 594-5000

Conflicts Counsel to Reorganized
Debtors Motors Liquidation Company, *et al.*