> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS YOUR CLAIM(S)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
 Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                    :
In re                               :      Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :      09-50026 (REG)
      f/k/a General Motors Corp., et al. :
                                    :
                      Debtors.      :      (Jointly Administered)
                                    :
-------------------------------------------------------------x
```

**NOTICE OF 263RD OMNIBUS OBJECTION TO CLAIMS**
**(Welfare Benefits Claims of Retired and Former Salaried and Executive Employees)**

       **PLEASE TAKE NOTICE** that on November 18, 2011, the Motors Liquidation

Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively,

the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated

March 18, 2011, filed their 263rd omnibus objection to disallow and expunge certain

compensation and welfare benefits claims of retired and former salaried and executive

employees (the "**263rd Omnibus Objection to Claims**"), and that a hearing (the "**Hearing**") to

consider the 263rd Omnibus Objection to Claims will be held before the Honorable Robert E.

Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for

the Southern District of New York, One Bowling Green, New York, New York 10004, on

**December 20, 2011 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.


**PARTIES RECEIVING THIS NOTICE SHOULD REVIEW THE 263RD OMNIBUS OBJECTION TO CLAIMS TO SEE IF THEIR NAME(S) AND/OR CLAIM(S) ARE LOCATED IN THE OMNIBUS OBJECTION AND/OR IN EXHIBIT "A" ANNEXED THERETO.**

**PLEASE TAKE FURTHER NOTICE** that any responses or objections to this

263rd Omnibus Objection to Claims must be in writing, shall conform to the Federal Rules of

Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the

Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be

found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system,

and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable

document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with

the customary practices of the Bankruptcy Court and General Order M-399, to the extent

applicable, and served in accordance with General Order M-399 and on (i) Weil, Gotshal &

Manges LLP, attorneys for the GUC Trust, 767 Fifth Avenue, New York, New York 10153

(Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the

Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370,

Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400

Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv)

Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the

Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi,

Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room

2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys

for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019

(Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis &

Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the

Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt,

Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86

Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and

Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of

unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York,

New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas

Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C.

Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation,

attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos

personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L.

Esserman, Esq. and Robert T. Brousseau, Esq.), (xii) Gibson, Dunn & Crutcher LLP, attorneys

for Wilmington Trust Company as GUC Trust Administrator and for Wilmington Trust

Company as Avoidance Action Trust Administrator, 200 Park Avenue, 47th Floor, New York,

New York 10166 (Attn: Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust

Monitor and as the Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree

Street, Suite 500, Atlanta, Georgia 30309 (Attn: Anna Phillips); (xiv) Crowell & Moring LLP,

attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590 Madison

Avenue, 19th Floor, New York, New York 10022-2524 (Attn: Michael V. Blumenthal, Esq.);

and (xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard,

Austin, Texas 78703, so as to be received no later than **December 13, 2011, at 4:00 p.m.**

**(Eastern Time)** (the "**Response Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the 263rd Omnibus Objection to Claims or any claim set forth thereon, the

GUC Trust may, on or after the Response Deadline, submit to the Bankruptcy Court an order

substantially in the form of the proposed order annexed to the 263rd Omnibus Objection to

Claims, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated: New York, New York
      November 18, 2011

                                  /s/ Joseph H. Smolinsky
                                  Harvey R. Miller
                                  Stephen Karotkin
                                  Joseph H. Smolinsky

                                  WEIL, GOTSHAL & MANGES LLP
                                  767 Fifth Avenue
                                  New York, New York 10153
                                  Telephone: (212) 310-8000
                                  Facsimile: (212) 310-8007

                                  Attorneys for Motors Liquidation
                                   Company GUC Trust

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
 Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                      :
**In re**                                             :          **Chapter 11 Case No.**
                                                      :
**MOTORS LIQUIDATION COMPANY,** *et al.,*             :          **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*      :
                                                      :
       **Debtors.**                :          **(Jointly Administered)**
                                                      :
-------------------------------------------------------------x

## 263RD OMNIBUS OBJECTION TO CLAIMS
### (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees)

---

**THIS OBJECTION SEEKS TO DISALLOW AND EXPUNGE CERTAIN FILED PROOFS OF CLAIM. CLAIMANTS RECEIVING THIS OBJECTION SHOULD LOCATE THEIR NAMES AND CLAIMS ON EXHIBIT "A" ANNEXED TO THIS OBJECTION.**

---

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the

above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second

Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or

modified from time to time, the "**Plan**"), respectfully represents:

## **Relief Requested**

1.      The GUC Trust files this 263rd omnibus objection (the "**263rd Omnibus Objection to Claims**")[1] pursuant to section 502(b) of title 11, United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this Court's order approving procedures for the filing of omnibus objections to proofs of claim filed in these chapter 11 cases (the "**Procedures Order**") (ECF No. 4180), seeking entry of an order disallowing and expunging from the claims register certain welfare benefits claims listed on **Exhibit "A"** annexed hereto, filed by retired and former salaried and executive employees (the "**Salaried and Executive Employees**").[2]

2.      The proofs of claim identified on Exhibit "A" hereto filed by the Salaried and Executive Employees (the "**Welfare Benefits Claims**") include alleged liability for medical, dental, vision, life insurance, short term disability, long term disability, tuition assistance, and extended care coverage, or a combination thereof, offered under the following plans sponsored by the Debtors prior to the Commencement Date (as defined below):  the General Motors Salaried Health Care Program, the General Motors Life and Disability Benefits Program for Salaried Employees, and the Tuition Assistance Program for Salaried Employees in the United States (collectively, the "**Salaried Benefit Plans**").  The Welfare Benefits Claims also assert liability for supplemental life insurance and personal liability insurance under the following plans sponsored by the Debtors prior to the Commencement Date:  the General Motors Supplemental Life Benefits

---

[1] Creditors can obtain copies of the cover page of any proof of claim filed in these chapter 11 cases at www.motorsliquidation.com.  A link to the claims register is located under the "Claims Information" tab.  Creditors without access to the internet may request a copy of the cover page of any proof of claim by mail to The Garden City Group, Inc., Motors Liquidation Company Claims Agent, P.O. Box 9386, Dublin, Ohio 43017-4286 or by calling The Garden City Group, Inc. at 1-703-286-6401.

[2] The GUC Trust reserves all of its rights to object on any other basis to any Welfare Benefits Claims as to which the Court does not grant the relief requested herein.

Program for Executive Employees and the Personal Umbrella Liability Insurance Program

(together with the Salaried Benefit Plans, the "**Benefit Plans,**" and the benefits provided under the

Benefit Plans, the "**Welfare Benefits**").

        3.      Representatives of the GUC Trust have examined the Welfare Benefits

Claims and have determined that they are not liabilities of MLC, the other Debtors, or the GUC

Trust, as they are amounts that (a) have been assumed by General Motors LLC ("**New GM**")

pursuant to the terms of that certain Amended and Restated Master Sale and Purchase Agreement

(the "**Master Purchase Agreement**"), dated as of June 26, 2009, by and among General Motors

Corporation, Saturn LLC, Saturn Distribution Corporation, Chevrolet-Saturn of Harlem, Inc., and

New GM, or (b) are related to unvested benefits and, as described herein, are not the responsibility

of the Debtors or the GUC Trust and, therefore, should be disallowed and expunged from the

claims register.

<u>**Jurisdiction**</u>

        4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

<u>**Background**</u>

        5.      On June 1, 2009 (the "**Commencement Date**"), Motors Liquidation

Company (f/k/a General Motors Corporation), MLCS, LLC (f/k/a Saturn, LLC), MLCS

Distribution Corporation (f/k/a Saturn Distribution Corporation), and MLC of Harlem, Inc. (f/k/a

Chevrolet-Saturn of Harlem, Inc.) (collectively, the "**Initial Debtors**") commenced with this

Court voluntary cases under chapter 11 of the Bankruptcy Code, and on October 9, 2009,

Remediation and Liability Management Company, Inc. and Environmental Corporate

Remediation Company, (the "**REALM/ENCORE Debtors**") commenced with this Court

voluntary cases under chapter 11 of the Bankruptcy Code, which cases are jointly administered

3

under Case Number 09-50026 (REG).  On September 15, 2009, the Initial Debtors filed their

schedules of assets and liabilities and statements of financial affairs, which were amended on

October 4, 2009.  On October 15, 2009, the REALM/ENCORE Debtors filed their schedules of

assets and liabilities and statements of financial affairs.

6.      On September 16, 2009, this Court entered an order (ECF No. 4079)

establishing November 30, 2009 as the deadline for each person or entity to file a proof of claim

in the Initial Debtors' cases, including governmental units.  On December 2, 2009, this Court

entered an order (ECF No. 4586) establishing February 1, 2010 as the deadline for each person or

entity to file a proof of claim in the REALM/ENCORE Debtors' cases (except governmental

units, as defined in section 101(27) of the Bankruptcy Code, for which the Court established April

16, 2010 as the deadline to file proofs of claim).

7.      On October 6, 2009, this Court entered the Procedures Order, which, *inter

alia*, authorizes "the Debtors, and other parties in interest" to file omnibus objections to 100

claims at a time, under various grounds, including those set forth in Bankruptcy Rule 3007(d) and

certain additional grounds set forth in the Procedures Order.

8.      On March 29, 2011, this Court entered an order confirming the Plan (ECF

No. 9941).  Section 6.2 of the Plan provides for the creation of the GUC Trust to administer

certain responsibilities after the Effective Date (as defined in the Plan), including resolving

outstanding Disputed General Unsecured Claims (as defined in the Plan).  All conditions to the

occurrence of the Effective Date were met or waived on March 31, 2011, thereby making the Plan

effective as of that date.

## The Welfare Benefits Claims

9.      The Welfare Benefits Claims assert liabilities arising out of either (a) the failure to provide certain accrued Welfare Benefits required to be provided pursuant to the terms of the applicable Benefit Plan as in effect at the time of the alleged failure (the "**Accrued Benefits Claims**"), or (b) the reduction or elimination of Welfare Benefits prior to the Commencement Date (the "**Benefit Modification Claims**"), or a combination thereof.

**(A)      Accrued Benefits Claims Have Been Assumed by New GM**

10.      On July 10, 2009 (the "**Closing Date**"), New GM completed its purchase of substantially all of the Debtors' assets in accordance with the Master Purchase Agreement. Pursuant to Section 6.17(e) of the Master Purchase Agreement (*Assumption of Certain Parent Employee Benefit Plans and Policies*), New GM assumed certain employee benefit plans specified in a disclosure schedule, i.e., the "Assumed Plans," and the Benefit Plans were included on that schedule.  The Master Purchase Agreement provides, at Section 6.17(e):

> As of  the Closing Date, *Purchaser or one of its Affiliates shall assume (i) the Parent Employee  Benefit Plans and Policies set forth on Section 6.17(e) of the Sellers' Disclosure Schedule* as modified thereon, and all assets, trusts, insurance policies and other Contracts relating  thereto, except for any that do not comply in all respects with TARP or as otherwise provided in Section 6.17(h) and (ii) all employee benefit plans, programs, policies,  agreements or arrangements (whether written or oral) in which Employees who are covered by the UAW Collective Bargaining Agreement participate and all assets, trusts, insurance and other Contracts relating thereto (the "**Assumed Plans**"), for the benefit of  the Transferred Employees and Sellers and Purchaser shall cooperate with each other to take all actions and execute and deliver all documents and furnish all notices necessary to  establish Purchaser or one of its Affiliates as the sponsor of such Assumed Plans  including all assets, trusts, insurance policies and other Contracts relating thereto. Other than with respect to any Employee who was or is covered by the UAW Collective  Bargaining Agreement, Purchaser shall have no Liability with respect to any  modifications or changes to Benefit Plans contemplated by Section 6.17(e) of the Sellers' Disclosure Schedule, or changes made by Parent prior to the Closing Date, and

> Purchaser shall not assume any Liability with respect to any such decisions or actions related   thereto, and *Purchaser shall only assume the Liabilities for benefits provided pursuant to the written terms and conditions of the Assumed Plan as of the Closing Date*. Notwithstanding the foregoing, the assumption of the Assumed Plans is subject to Purchaser taking all necessary action, including reduction of benefits, to ensure that the Assumed Plans comply in all respects with TARP.  Notwithstanding the foregoing, but subject to the terms of any Collective Bargaining Agreement to which Purchaser or one of its Affiliates is a party, Purchaser and its Affiliates may, in its sole discretion, amend, suspend or terminate any such Assumed Plan at any time in accordance with its terms.

(emphasis added).  As a result, New GM assumed the Accrued Benefits Claims to the extent required to be provided under the terms of the applicable Benefit Plan as of the Closing Date, including responsibility for all claims incurred prior to the Closing Date and properly payable pursuant to the terms of the applicable Benefit Plan in effect when such claims were incurred. Therefore, neither the Debtors nor the GUC Trust have any liability with respect to the Accrued Benefits Claims.  Any valid claims should have been submitted to New GM and paid in the ordinary course.

**(B)**    **Benefit Modification Claims Should Be Disallowed**
       **As Debtors Had Right to Amend or Terminate Each Benefit Plan**

11.    New GM did not assume any liability for Welfare Benefits to the extent that they were validly reduced or eliminated prior to the Closing Date, and contracted only to assume liability for Welfare Benefits at the level to which they had been modified prior to the Closing Date.  MLC's right to amend or terminate each Benefit Plan was specifically reserved in the applicable plan document such that benefits under each Benefit Plan were not vested and could be reduced or eliminated without continuing liability.  Accordingly, although the Benefit Modification Claims were not assumed by New GM, they are nevertheless not valid claims and must be disallowed.

12.     The Employee Retirement Income Security Act of 1974, as amended

("**ERISA**"), comprehensively regulates employer-provided welfare benefit plans.  Most

importantly, ERISA does not require any vesting of welfare benefits, and therefore, such benefits

may be forfeited in accordance with the terms of the welfare benefit plan.  Welfare benefit plans

of the type at issue in the Welfare Benefits Claims are specifically excluded from the vesting

requirements of ERISA.  29 U.S.C. § 1051(1); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488,

491 (2d Cir. 1988); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998).[3]  As to the

consideration of vested benefits, the Sixth Circuit, in *Sprague*, stated:

> To vest benefits is to render them forever unalterable.  Because
> vesting of welfare plan benefits is not required by law, an
> employer's commitment to vest such benefits is not to be inferred
> lightly; the intent to vest "must be found in the plan documents and
> must be stated in clear and express language.

133 F.3d at 400 (citing *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 937 (5th Cir. 1993).

13.     In dealing with claims similar to the Welfare Benefits Claims, the Sixth

Circuit has noted that welfare plans such as the Benefit Plans are specifically exempted from

vesting requirements to which pension plans are subject under ERISA, and accordingly,

employers such as MLC, "are generally free under ERISA, for any reason at any time, to adopt,

modify or terminate welfare plans."  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78

---

[3] As the Second Circuit noted in *Moore*, Congress explicitly rejected the concept of automatic vesting for medical benefits for good policy reasons:

> With regard to an employer's right to change medical plans, Congress evidenced
> its recognition of the need for flexibility in rejecting the automatic vesting of
> welfare plans.  Automatic vesting was rejected because the costs of such plans are
> subject to fluctuating and unpredictable variables.  Actuarial decisions concerning
> fixed annuities are based on fairly stable data, and vesting is appropriate.  In
> contrast, medical insurance must take account of inflation, changes in medical
> practice and technology, and increases in the costs of treatment independent of
> inflation.  These unstable variables prevent accurate predictions of future needs
> and costs.  While these plaintiffs would be helped by a decision in their favor,
> such a ruling would not only fly in the face of ERISA's plain language but would
> also decrease protection for future employees and retirees.  856 F.2d at 492.

(1995) (citing *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir. 1990). The Sixth

Circuit recognized that once benefits are vested, they are rendered forever unalterable:

> Because vesting of welfare plan benefits is not required by law, an
> employer's commitment to vest such benefits is not to be inferred
> lightly; the intent to vest "must be found in the plan documents and
> must be stated in clear and express language.

*Sprague*, 133 F.3d at 400. Thus, the Salaried and Executive Employees bear the burden of

showing that MLC intended to vest benefits provided by the Benefits Plans, and the Welfare

Benefits Claims do not discharge this burden, as none of the Welfare Benefits Claims provide any

support to the contention that the Salaried and Executive Employees enjoy vested rights to

benefits.

        14.     ERISA does not require that welfare benefits be vested, and no contractual

right to vesting has been created under the terms of any Benefit Plan or any operative documents

related thereto. The Debtors properly reserved their right to amend or terminate Welfare Benefits

under the terms of the Benefit Plan documents and related plan documents (including summary

plan descriptions), and therefore, the Benefit Plan documents do not create any contractual rights

to the Welfare Benefits. In addition, the Debtors reserved their right to amend or terminate the

Welfare Benefits under various communications to employees, such as in retirement and

termination offer agreements. Further, the Welfare Benefits Claims provide no support showing

contractual rights contradicting the Debtors' common practice of advising welfare plan

participants of the Debtors' right to amend or terminate the Welfare Benefits at any time.

        15.     By way of example, the first section of the plan document summary of the

Health Care Program, dated January 1, 2001, states:

> The Corporation reserves the right to amend, modify, suspend or
> terminate the Program in whole or in part, at any time, by action of
> its Board of Directors or other committee expressly authorized by
> the Board to take such action. No enrollee described in this

Program may be deemed to have any vested right to continued coverage under any or all of the provisions of the Program.

The Summary Plan Description of the Health Care Program, as set forth in the benefits handbook

for salaried retirees states:

General Motors Corporation reserves the right to amend, change, or terminate the Plans and Programs described in this booklet. The Plans and Programs can be amended only in writing by an appropriate committee or individual as expressly authorized by the Board of Directors. No other oral or written statements can change the terms of a benefit Plan or Program.

The plan document for the General Motors Supplemental Life Benefits Program for Executive

Employees, effective January 1, 2006, states at section 3.4(a):

The Company, as the Program Administrator, shall be responsible for the administration of the Program. The Company reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time by action of its Board of Directors or other individual or committee expressly authorized by the Board to take such action. The benefits available to Employees are determined solely by the terms of the Program. Absent an express delegation of authority from the Board of Directors, no one has the authority to commit the Company to any benefit or benefit provisions not provided for under the terms of the Program.

The summary plan description of the Personal Liability Insurance Program, dated February 2008,

reads:

The insurance described briefly herein is subject to the detailed terms and conditions of General Motors Personal Umbrella Liability Insurance (PULl) Program as now constituted or hereafter modified or supplemented and the contracts issued pursuant thereto, which shall govern with respect to all matters referred to in this brochure. General Motors reserves the right to modify, revoke, suspend, terminate, or change the Program, in whole or in part, at any time, except as may be limited by the provisions of the contract, or its supplements, and by the provisions of any applicable federal or state laws.

16.      On the basis of such language, the Sixth Circuit in *Sprague* reviewed the

plan documents and summary plan descriptions of certain of the Salaried Benefit Plans and found

that the Salaried Benefit Plans explicitly permit GM to unilaterally amend or terminate the

Welfare Benefits provided under such plans.  133 F.3d at 400.[4]

17.    In fact, several of the Welfare Benefits Claims include supporting

agreements that clearly reserve the Debtors' rights to amend or terminate the Benefit Plans offered

under such retirement offer agreements.  Indeed, under the terms of retirement offer letters to

employees, the language is as follows:

> This summary presents general information only.  Any reference to
> the payment of benefits is conditioned upon your eligibility to
> receive them.  Each of these programs has its own terms and
> conditions which in all respects control the benefits provided.
> General Motors Corporation reserves the right to amend, change or
> terminate programs described herein.[5]

18.    As described above, the Debtors have expressly reserved the contractual

right to terminate or otherwise modify the Welfare Benefits.  Section 1114 of the Bankruptcy

Code requires a debtor to continue to pay "retiree benefits" under certain circumstances after a

bankruptcy filing.  Courts outside of this Circuit have determined that section 1114 of the

Bankruptcy Code does not apply to benefit plans under which the plan sponsor reserves a right to

amend or terminate such plans or benefits thereunder.  *See In re Doskicil Cos.*, 130 B.R 870

(Bankr. D. Kan. 1991).  While case law exists holding to the contrary outside of the Second

Circuit,[6] recently, in the chapter 11 case of *In re Delphi Corp.*, Ch. 11 Case No. 05-44481 (RDD)

---

[4] The Sixth Circuit found: "Most of the summary plan descriptions unambiguously reserved GM's right to amend or
terminate the plan.  For example: 'General Motors Corporation reserves the right to amend, change or terminate the
Plans and Programs described in this booklet.'  Your GM Benefits (1984) [and] 'The Corporation reserves the right to
amend, modify, suspend or terminate the Program in whole or in part, at any time, by action of its Board of
Directors.'  Your Benefits in Retirement (1985)." 133 F.3d at 400.

[5] Provided by William C. Campbell (Claim Number 60992), Summary Plan Description entitled, "Supplemental Life
Benefits Program Coverage (Effective January 1, 1989 for Certain Executives Who, on January 1, 1984, Were Under
Age 55 and Not Retired)," dated December 1988.

[6] *See IUE-CWA v. Visteon Corp. (In re Visteon Corp.),* 612 F.3d 210 (3d Cir. 2010), where section 1114 was found to
apply even when the sponsor reserved the right to amend or terminate the plan.

2009 Bankr. LEXIS 576 (Bankr. S.D.N.Y. Mar. 10, 2009), Bankruptcy Judge Drain reviewed and

agreed with the rationale of *Doskicil*.  Judge Drain found that "if, in fact, the debtors have the

unilateral right to modify a health or welfare plan, that modifiable plan is the plan that is to be

maintained . . . with the debtors' pre-bankruptcy rights not being abrogated by the requirements of

Section 1114."*Id.* at *19.[7]  Consequently, *Doskicil* is persuasive and should be followed, and

section 1114 should not be construed to provide the Salaried and Executive Employees with more

rights than they would have in a non-bankruptcy context.

19.      Because (i) ERISA recognizes that employers are free to amend or

terminate welfare benefits, (ii) no contrary contractual rights to vested welfare benefits has been

established by the Salaried and Executive Employees;[8] and (iii) section 1114 does not apply to the

Welfare Benefits Claims in this context, neither the Debtors nor the GUC Trust have any liability

for the Benefit Modification Claims.

### The Debtors and the GUC Trust Have
### No Liability For the Welfare Benefits Claims

20.      Because (i) New GM assumed the Benefit Plans as they existed on

Commencement Date and continues to provide Welfare Benefits as modified prior to their

assumption by New GM, and (ii) the Debtors otherwise had a right to amend or terminate the

Welfare Benefits prior to the Commencement Date without further liability, and in all relevant

instances did so, the Debtors and the GUC Trust have no liability for the Welfare Benefits Claims.

---

[7] Although Judge Drain agreed with the rationale of *Doskicil* and its related progeny, for reasons not pertinent to the cases at bar, he approved the appointment of a retirees committee for the limited purpose of determining whether there were any retirees holding vested benefits and restricted the costs of the retirees committee to $200,000.

[8] Indeed, the GUC Trust notes the rationale for the amount of the Welfare Benefits Claims is either not supported in the applicable proof of claim, or based on an estimate of the lifetime loss due to the reduction or elimination of benefits or the value of the benefit that is alleged not to have been paid.

### The Relief Requested Should Be Approved by the Court

21.     A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229, 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010); *In re Adelphia Commc'ns Corp.*, No. 02-41729, 2007 Bankr. LEXIS 660, at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).

22.     Section 502(b)(1) of the Bankruptcy Code provides, in relevant part, that a claim may not be allowed to the extent that "such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law."  11 U.S.C. § 502(b)(1).  As described herein, the Debtors and the GUC Trust have compared their books and records with the proofs of claim identified on Exhibit "A" and have determined that the Welfare Benefits Claims are not the responsibility of MLC, the other Debtors, or the GUC Trust, having been assumed by New GM as described above, or amended or terminated as permitted.  To avoid the possibility of multiple recoveries by the same claimant, or recoveries where no recovery is due, the Debtors and the GUC Trust request that the Court disallow and expunge in their entirety the Welfare Benefits Claims.

### Notice

23.     Notice of this 263rd Omnibus Objection to Claims has been provided to each claimant listed on Exhibit "A" and parties in interest in accordance with the Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated May 5, 2011 (ECF No. 10183).  The GUC Trust submits that such notice is sufficient and no other or further notice need be provided.

24.    No previous request for the relief sought herein has been made by the GUC

Trust to this or any other Court.

## Conclusion

WHEREFORE the GUC Trust respectfully requests entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       November 18, 2011

                              /s/ Joseph H. Smolinsky
                             Harvey R. Miller
                             Stephen Karotkin
                             Joseph H. Smolinsky

                             WEIL, GOTSHAL & MANGES LLP
                             767 Fifth Avenue
                             New York, New York 10153
                             Telephone: (212) 310-8000
                             Facsimile: (212) 310-8007

                             Attorneys for Motors Liquidation
                               Company GUC Trust

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------------------------------------x
                                         :
In re                                    :        Chapter 11 Case No.
                                         :
MOTORS LIQUIDATION COMPANY, et al.,      :        09-50026 (REG)
      f/k/a General Motors Corp., et al. :
                                         :
                      Debtors.           :        (Jointly Administered)
                                         :
-----------------------------------------------------------------x
```

## <u>ORDER GRANTING 263RD OMNIBUS OBJECTION TO CLAIMS</u>
### (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees)

Upon the omnibus objection to expunge certain compensation and welfare

benefits claims of retired and former salaried and executive employees, dated November 18,

2011 (the "**263rd Omnibus Objection to Claims**"),[1] of the Motors Liquidation Company GUC

Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**")

in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011

(as may be amended, supplemented, or modified from time to time, the "**Plan**"), pursuant to

section 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**"), Rule 3007(d) of

the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and this Court's order

approving procedures for the filing of omnibus objections to proofs of claim filed in these

chapter 11 cases (the "**Procedures Order**") (ECF No. 4180), seeking entry of an order

disallowing and expunging the Welfare Benefits Claims on the ground that each Salaried and

Executive Employee Welfare Benefits Claim is for an obligation for which the Debtors and the

GUC Trust have no liability, all as more fully described in the 263rd Omnibus Objection to

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the 263rd Omnibus Objection to Claims.

Claims; and due and proper notice of the 263rd Omnibus Objection to Claims having been

provided, and it appearing that no other or further notice need be provided; and the Court having

found and determined that the relief sought in the 263rd Omnibus Objection to Claims is in the

best interests of the Debtors, their estates, the GUC Trust, creditors, and all parties in interest and

that the legal and factual bases set forth in the 263rd Omnibus Objection to Claims establish just

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the relief requested in the 263rd Omnibus Objection to Claims is

granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the claims

listed on **Exhibit "A"** (the "**Order Exhibit**") annexed hereto under the heading "*Claims to be*

*Disallowed and Expunged*" are disallowed and expunged from the claims registry; and it is

further

ORDERED that this Order has no res judicata, estoppel, or other effect on the

validity, allowance, or disallowance of, and all rights to object on any basis are expressly

reserved with respect to any claim listed on Exhibit "A" annexed to the 263rd Omnibus

Objection to claims under the heading "*Claims to be Disallowed and Expunged*" that is not listed

on the Order Exhibit; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.


Dated: New York, New York
_____, 2011


_____
United States Bankruptcy Judge

**Exhibit A**

### *CLAIMS TO BE DISALLOWED AND EXPUNGED*

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|---|
| BAMMEL PHILLIP C<br>710 ADAMS ST<br><br>EAST TAWAS, MI 48730-9306 | 61378 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$3,485.00<br>$3,485.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | No Liability; Claims seekrecovery ofamounts for whichthe Debtors are notliable | Pgs. 1-5 |
| DONALD KAUFMAN<br>2105 CRIDER ROAD<br><br>MANSFIELD, OH 44903 | 62927 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$188,397.00<br>$188,397.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | No Liability; Claims seekrecovery ofamounts for whichthe Debtors are notliable | Pgs. 1-5 |
| EDWIN POWELL<br>4400 PEBBLE POND DR.<br><br>CHARLOTTE, NC 28226<br>UNITED STATES OF AMERICA | 62720 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$4,936.54<br>$4,936.54 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | No Liability; Claims seekrecovery ofamounts for whichthe Debtors are notliable | Pgs. 1-5 |
| FENNELL, GILBERT F<br>5634 LEGEND HILLS LN<br><br>BROOKSVILLE, FL 34609-9504 | 63341 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$75,000.00<br>$75,000.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | No Liability; Claims seekrecovery ofamounts for whichthe Debtors are notliable | Pgs. 1-5 |
| JAMES WHITESEL DEPENDENT CHILD<br>JAMES WHITESEL<br>2650 SOLAR DRIVE<br>LAKE ORION, MI 48360<br>UNITED STATES OF AMERICA | 21170 | Motors Liquidation Company | $0.00<br>$0.00<br>$0.00<br>$10,000.00<br>$10,000.00 | (S)<br>(A)<br>(P)<br>(U)<br>(T) | No Liability; Claims seekrecovery ofamounts for whichthe Debtors are notliable | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

**Exhibit A**

### *CLAIMS TO BE DISALLOWED AND EXPUNGED*

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|
| MEYER, BONNIE L<br>4525 WOODLAND AVE<br><br>WESTERN SPRGS, IL 60558-1506 | 38133 | Motors Liquidation Company | $0.00   (S)<br>$0.00   (A)<br>$0.00   (P)<br>$41,553.00  (U)<br>$41,553.00  (T) | No Liability; Claims seek recovery of amounts for which the Debtors are not liable | Pgs. 1-5 |
| Note:  Common Equity Holder | | | | | |
| ***CLAIMS TO BE DISALLOWED AND EXPUNGED*** | **6** | | **$0.00**   (S)<br>**$0.00**   (A)<br>**$0.00**   (P)<br>**$323,371.54**  (U)<br>**$323,371.54**  (T) | | |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.