Page 1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 09-50026(REG)

5    Adv. Proc. Case No. 11-09409

6    - - - - - - - - - - - - - - - - - - - - - - -x

7    In the Matter of:

8

9    MOTORS LIQUIDATION COMPANY, et al.

10   f/k/a General Motors Corporation, et al.,

11

12              Debtors.

13

14   - - - - - - - - - - - - - - - - - - - - - - -x

15

16              United States Bankruptcy Court

17              One Bowling Green

18              New York, New York

19

20              November 22, 2011

21              10:00 AM

22

23   B E F O R E:

24   HON. ROBERT E. GERBER

25   U.S. BANKRUPTCY JUDGE

1

2  Adv: 1-11-09409 John Morgenstein vs Motors Liquidation Co. Et

3  Al Pretrial Conference

4

5  1-09-50026 General Motors Corporation

6  Debtors' 119th Omnibus Objection to Claims (Duplicate Debt

7  Claims)

8

9  Debtors' 121st Omnibus Objection to Claims (Duplicate Debt

10  Claims)

11

12  Debtors' 122nd Omnibus Objection to Claims (Duplicate Debt

13  Claims)

14

15  Debtors' 126th Omnibus Objection to Claims (Duplicate Debt

16  Claims)

17

18  Debtors' 135th Omnibus Objection to Claims (Eurobond Deutsche

19  Debt Claims)

20

21  Debtors' 137th Omnibus Objection to Claims (Eurobond Deutsche

22  Debt Claims)

23

24  Debtors' 140th Omnibus Objection to Claims (Eurobond Deutsche

25  Debt Claims)

1

2   Debtors' 143rd Omnibus Objection to Claims (Eurobond Deutsche

3   Debt Claims)

4

5   Debtors' 199th Omnibus Objection to Claims (Claims for

6   Preferred Stock)

7

8   Debtors' 203rd Omnibus Objection to Claims (Duplicate Debt

9   Claims)

10

11   Debtors' 213th Omnibus Objection to Claims (Duplicate Debt

12   Claims - Wilmington Trust Bonds)

13

14   242nd Omnibus Objection to Claims (Contingent Co-Liability

15   Claims)

16

17   252nd Omnibus Objection to Claim(s) Number: filed by Barry N.

18   Seidel on behalf of Motors Liquidation Company GUC Trust.

19

20   253rd Omnibus Objection to Claim(s)Number filed by Barry N.

21   Seidel on behalf of Motors Liquidation Company GUC Trust.

22

23   254th Omnibus Objection to Claim(s) Number filed by Barry N.

24   Seidel on behalf of Motors Liquidation Company GUC Trust.

25

Page 4

1    255th Omnibus Objection to Claim(s) Number filed by Barry N.

2    Seidel on behalf of Motors Liquidation Company GUC Trust

3

4    256th Omnibus Objection to Claim(s) Number filed by Barry N.

5    Seidel on behalf of Motors Liquidation Company GUC Trust

6

7    Hearing on Motion by Dr. Terrie Sizemore to GM's Enforcing 363

8    Sale Order - To Be Adjourned

9

10   Reorganized Debtor (I) Supplemental Claim Objection and (II)

11   Motion to enforce the Plan Injunction and Automatic Stay and to

12   Enjoin Chartis U.S. from Continuing to Retain More than $20

13   Million It Improperly Seized from the Reorganized Debtors -

14   Status Conference.

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Ellen S. Kolman

Page 5

1

2    A P P E A R A N C E S :

3    WEIL GOTSHAL & MANGES LLP

4        Attorneys for the Post-Effective Date Debtors and Motors

5         Liquidation GUC Trust

6        767 Fifth Avenue

7        New York, NY 10153

8

9    BY:  JOSEPH H. SMOLINSKY, ESQ.

10

11

12   TOGUT, SEGAL & SEGAL LLP

13       Attorneys for Motors Liquidation Counsel, a/k/a General

14        Motors

15       One Penn Plaza

16       New York, NY 10119

17

18   BY:  SCOTT E. RATNER, ESQ.

19

20

21

22

23

24

25

1

2    DICKSTEIN SHAPIRO LLP

3         Attorneys for the Motors Liquidation GUC Trust, Successor

4          to the Official Committee of Unsecured Creditors of Old

5          GM

6         1633 Broadway

7         New York, NY 10019

8

9    BY:  SHAYA M. BERGER, ESQ.

10

11

12   CLIMACO, WILCOX, PECA, TARANTINO & GAROFOLI CO., L.P.A.

13        Attorneys for Morgenstein Group

14        55 Public Square

15        Cleveland, OH

16

17   BY: JOHN A. PECA, ESQ.

18

19

20

21

22

23

24

25

Page 7

1

2  NEBLETT, BEARD & ARSENAULT

3      Attorneys for Morgenstein Group

4      2220 Bonaventure Court

5       P.O. Box 1190

6       Alexandria, Louisiana 71309

7

8  BY:  SRIVATSA V. GUPTA, ESQ.

9

10

11  MARK SCHLACHET LAW FIRM

12      Attorney for Morgenstein Group

13      3637 Green Road

14      Beachwood, OH 44122

15

16  BY:  MARK SCHLACHET, ESQ.

17

18

19  WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP

20      Attorneys for Morgenstein Group

21      270 Madison Avenue

22  New York, New York 10016

23

24  BY:  MICHAEL JAFFE, ESQ.

25

Page 8

1

2   ZEICHNER ELLMAN & KRAUSE LLP

3       Attorneys for Chartis Entities

4       575 Lexington Avenue

5       New York, NY 10022

6

7   BY:  BRYAN D. LEINBACH, ESQ.

8

9

10   ALSO APPEARING TELEPHONICALLY

11   PATRICIA BENJAMIN appearing on behalf of Cecil Benjamin

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    P R O C E E D I N G S

2              THE COURT:  Folks, it's my impression that the General

3    Motors matters that were scheduled for 9:45 after the Park East

4    matters are going to move fairly quickly.  Did I see Mr.

5    Smolinsky there?  Do you think that's likely to be so, Mr.

6    Smolinsky?

7              MR. SMOLINSKY:  Yes, Your Honor.

8              THE COURT:  Come on up then, please.

9              THE CLERK:  All parties, Your Honor?

10             THE COURT:  On GM matters, yes.

11             MR. SMOLINSKY:  Thank you, Your Honor.

12             COURTCALL OPERATOR:  Excuse me, Your Honor?

13             THE COURT:  Yes.

14             COURTCALL OPERATOR:  (Indiscernible) scheduled

15   Nicholas Martin to appear, he has not made an appearance at

16   CourtCall.

17             THE COURT:  Nicholas Martin?

18             COURTCALL OPERATOR:  Yes, Your Honor.

19             THE COURT:  On GM?

20             COURTCALL OPERATOR:  Yes.

21             THE COURT:  Okay.  That was scheduled for 9:45.  Am I

22   correct Mr. -- Madam CourtCall?

23             COURTCALL OPERATOR:  Yes, Your Honor.

24             THE COURT:  All right.  It's now 10 o'clock.  Keep

25   your line open but we're going to proceed anyway.

Page 10

1           COURTCALL OPERATOR:  Okay.

2           THE COURT:  Thank you.

3           COURTCALL OPERATOR:  You're welcome.

4           THE COURT:  Mr. Smolinsky, go ahead, please.

5           MR. SMOLINSKY:  Thank you, Your Honor.  Good morning,

6    Joe Smolinsky from Weil Gotshal & Manges for the post-effective

7    date debtors as well as the Motors Liquidation Company GUC

8    Trust.  I think we can go through the calendar very quickly

9    today.

10          The first matter is a pre-trial conference.  This

11   involves an adversary proceeding filed by, what I'll call the

12   Morganstine (sic) -- Morgenstein Group.  This is a class action

13   complaint that was filed seeking to partially revoke the

14   confirmation order and seek to file late claims for a class

15   action arising from product defect.

16          Your Honor, we extended the plaintiffs' time to object

17   to our motion to dismiss the complaint until December 15th.  We

18   did have a pre-trial scheduled for today on the adversary

19   proceeding and thought it might be best to go forward in case

20   Your Honor had any preliminary views.  From our perspective, we

21   think it's a shame that the estate should be spending its

22   resources defending this action.  There is no partial

23   revocation of the confirmation order.  The complaint seems to

24   ignore the prior orders of this court relating to class

25   certification and class claims and we don't see any basis for

Page 11

1    excusable neglect certainly in the context of a class action.

2    So, we'll move forward as quickly as we can with the motion to

3    dismiss but wanted to give Your Honor an opportunity to hear

4    preliminary what this case is about.

5              THE COURT:  All right.  Is counsel for your opponent

6    here?

7              MR. SCHLACHET:  And Your Honor, Mark Schlachet

8    representing the Morgenstein Group.

9              THE COURT:  Okay.  Shaslay (ph.)?.

10             MR. SCHLACHET:  Schlachet, Your Honor.

11             THE COURT:  Could you spell that please?

12             MR. SCHLACHET:  S-C-H-L-A-C-H-E-T.

13             THE COURT:  Okay.  Mr. Schlachet.

14             MR. SCHLACHET:  And with me, Your Honor, I have my

15   cocounsel who I'll ask to introduce themselves because I don't

16   want to get their names wrong.  If I may, Your Honor?

17             THE COURT:  Yes.  Come to microphone, please,

18   gentlemen.

19             MR. PECA:  Good morning, Your Honor.  John Peca,

20   P-E-C-A from the Climaco law firm in Cleveland, Ohio.

21             THE COURT:  Okay.

22             MR. JAFFE:  Good morning, Your Honor.  Michael Jaffe

23   from Wolf Haldenstein Adler Freeman & Herz from here in New

24   York.

25             THE COURT:  Okay.

Page 12

1          MR. GUPTA:  Good morning, Your Honor.  Srivatsa Gupta

2     with Neblett, Beard and Arsenault in Alexandria, Louisiana.

3          THE COURT:  Okay.  Thank you.

4          MR. SCHLACHET:  Good morning, Your Honor.  Your Honor,

5     just briefly I note that Mr. Smolinsky referenced class action

6     rulings of Your Honor in the past on other cases.  The shame of

7     the estate to spend money.  The one thing that Mr. Smolinsky

8     didn't mention is this is an action under 1144 for what we'll

9     call anti-injunctive type relief and those are the issues.

10          THE COURT:  1144 of the Bankruptcy Code?

11          MR. SCHLACHET:  Indeed, Your Honor.

12          THE COURT:  Go on.  Go on, please.

13          MR. SCHLACHET:  The issues of 1144 of the Bankruptcy

14     Code, Your Honor, are the issues that we believe are germane to

15     Your Honor's initial interaction with the case.  Those issues,

16     Your Honor, are serious issues and issues which Your Honor will

17     bring this court's considerable expertise to bear.  But there

18     are a proliferation of issues that have been raised in the

19     motion to dismiss and by way of streamlining, Your Honor, I

20     just wanted to take a moment to explain what we view as the

21     basic layout of the motion to dismiss and why some of the

22     issues may be premature.

23          THE COURT:  All right.  We're talking about -- I asked

24     the question because I had understood the only grounds for

25     revocation and of a discharge under 1144 were fraud.

MOTORS LIQUIDATION COMPANY

Page 13

```
 1              MR. SCHLACHET:  Indeed, they are, Your Honor.

 2              THE COURT:  And you're alleging fraud?

 3              MR. SCHLACHET:  We're alleging fraud on the court.

 4              THE COURT:  All right.  Go on, please.

 5              MR. SCHLACHET:  Your Honor, in this case and I'll --

 6      in light of Your Honor's question, I'll explain the background

 7      of the case just briefly; maybe a minute, a minute and a half,

 8      if I may.

 9              In the General Motors portfolio of automobiles, Your

10      Honor, it was the Chevrolet Impala which folks are very

11      familiar with.

12              THE COURT:  I learned to drive on a '62 Impala.

13              MR. SCHLACHET:  I got my first car, a '58 Impala.

14              THE COURT:  Okay.

15              MR. SCHLACHET:  Your Honor, the spindle rod of the

16      Impalas in 2007, or thereabouts, were defective.  Impala sent

17      out a notice to its fleet users of those Impalas, particular

18      fleet users who had a police package.  They did not disclose

19      the defect --

20              THE COURT:  Police package you mean made them

21      particular suited for police department usage?

22              MR. SCHLACHET:  Yes, Your Honor.

23              THE COURT:  Um-hum.

24              MR. SCHLACHET:  They did not disclose the defect or

25      provide relief to the other Impala owners who had Impalas
```

 1    without the police package.

 2            THE COURT:  When did this take place?

 3            MR. SCHLACHET:  This took place in 2008 that the

 4    defect was discovered evidentially by --

 5            THE COURT:  Before GM's Chapter 11 frame.

 6            MR. SCHLACHET:  Yes, Your Honor.

 7            THE COURT:  On June 1st, 2009.

 8            MR. SCHLACHET:  Yes.

 9            THE COURT:  Go on.

10            MR. SCHLACHET:  And because they didn't disclose it to

11    others until July of this year when somebody filed a case in

12    the Eastern District of Michigan, other Impala owners were

13    ignorant of the defect.  At the time that the Michigan case was

14    filed, certain owners came to Mr. Peca and raised with him the

15    fact that they had heard that an action was filed due to a

16    defect in the spindle rod causing un -- premature tire wear.

17            Mr. Peca's firm engaged an expert to determine whether

18    the police vehicles and the nonpolice vehicles were materially

19    substantially identical and the expert came back and said they

20    were.  At which time, his firm sent a letter to New GM asking

21    if the affected Impala owners could obtain relief from New GM.

22            Sometime thereafter, New GM wrote a letter then

23    indicated that under this Court's order of sale, Section 363,

24    they were not responsible for product defects but only for

25    maintaining the warranty program as to warrantable defects.

Page 15

1          They directed Mr. Peca's firm to Old GM.  At that

2     point, Mr. Peca called me which was about one week or two weeks

3     before this complaint was filed and as I looked at the

4     complaint, sure enough in order to -- in order to comport with

5     the very strictly construed 188 80-day deadline for filing a

6     Section 1144 complaint based on the fact that GM did not list

7     these creditors in their schedules, they did not disclose the

8     creditors to the Court in the disclosure statement and as a

9     result they obtained a confirmation order on what we believe

10    are false pretenses because we do not believe that had this

11    Court known about this entire class, we believe it's about

12    450,000 vehicles, this entire class of creditors, this Court

13    would have seen that, one, there was a failure to meet the

14    fiduciary standards of 1107, a failure to meet the good faith

15    standards of 1123 and, therefore, obtaining the confirmation

16    order on what we believe were false pretenses.

17          So, we filed the action on what amounts to the

18    calendar, 181st day, but because the 179th and 180th day fell

19    on the weekend under Federal Rule of Civil Procedure 6(b)

20    applicable to these proceedings, we were within the rule by a

21    hair.

22          The important thing that I want to stress, Your Honor,

23    is just two things.  One, I believe Mr. Peca and his firm were

24    diligent and will account for their time.  There was no

25    prejudice during the lapse of time between July and when we

Page 16

1    filed the case to any party and the debtors' motion for -- to

2    dismiss, as Mr. Smolinsky just encapsulated, doesn't really --

3    except the word "partial revocation" address the complaint

4    itself as to issues that are presently before the Court.

5            Presently before the Court is whether that complaint

6    states a claim if all the inferences on the plausible

7    allegations, not just conclusory presumptuous all -- the

8    plausible allegations.  If those allegations aren't true

9    whether the complaint states a plausible case for relief is the

10   issue on a motion to dismiss.

11           There are -- we believe there are six issues, major

12   issues, and a host of collateral issues raised in the motion to

13   dismiss.

14           The issues of excusable neglect to file a late claim

15   is not before this Court at this time.

16           The issue of striking the class allegations, except in

17   rare circumstances would not be appropriate for a motion to be

18   under 12(b)(6).  Those circumstances are not present in this

19   case.  This is not a case which on its face warrants summary

20   rejection by this Court. It may down the road and this Court

21   may impose -- and I've read Your Honor's rather prodigious

22   decisions, particularly the Aparte (ph.) decision, we are fully

23   aware that this Court will superimpose bankruptcy

24   considerations on the ordinary Rule 23 criteria.  But at this

25   point in time, on a 12(b)(6) motion, and there's much authority

MOTORS LIQUIDATION COMPANY

Page 17

1    to this effect, this is not the time to address that.

2          And addressing the notion of the criteria under Rule

3    23(b)(3) which requires a predominance of common issues over

4    individual issues, that is a certification issue pure and

5    simple.  That would not be, in this case, ever.  So, many of

6    the issues that are raised -- but there are meaty issues in the

7    case.  The first is whether a partial revocation, as the debtor

8    calls it, what we call a limited revocation with this Court

9    exercising its authority under 1144(1) to make such conditions

10   as will assure no prejudice to those who relied on the

11   confirmation order, that is a legitimate issue before the

12   Court.

13         The issue of whether -- of whether we have pled

14   nonconclusory allegations which will support a claim for fraud

15   on the Court, that is an issue presently before the Court which

16   needs to be addressed.  The issue of equitable mootness is an

17   issue before the Court which needs to be addressed on a

18   12(b)(6) motion.  Those issues are major meaty issues for Your

19   Honor's consideration at this time.

20         We suggest, Your Honor, in your discretion that it

21   would be better to take the premature issues, three of them,

22   which will only increase the rueful expense to the estate.

23   Take those and push them aside until their time comes up in the

24   due process of law.

25         THE COURT:  What do you perceive to be the premature

Page 18

```
 1    issues?

 2              MR. SCHLACHET:  The --

 3              THE COURT:  The Pioneer issue of late proof of claim?

 4              MR. SCHLACHET:  Yes.

 5              THE COURT:  Suitability for class action?  And the

 6    adversary proceeding is just to revoke the dischar -- to revoke

 7    the confirmation order?

 8              MR. SCHLACHET:  That is correct, Your Honor.

 9              THE COURT:  And you articulated or I thought you were

10    about to articulate three things that you thought were

11    premature on the debtors' 12(b)(6).  One, Pioneer.  The second,

12    what, the class action allegations --

13              MR. SCHLACHET:  Striking the class action allegations.

14              THE COURT:  And what was the third -- or was there a

15    third?

16              MR. SCHLACHET:  The Rule 23(b)(3) criteria.  Those

17    are -- those two last issues are under (V).

18              THE COURT:  Well, 23(b)(3) deals with predominance of

19    common issues in it being the best way to deal with a class

20    action controversy.

21              MR. SCHLACHET:  Yes, Your Honor.

22              THE COURT:  And you're saying that what I should do is

23    separate the underlying confirmation from the class action

24    issues?

25              MR. SCHLACHET:  Correct.
```

Page 19

1          THE COURT:  And have you filed a motion for class

2     certification yet?

3          MR. SCHLACHET:  We have not, Your Honor.

4          THE COURT:  Is there a reason why you haven't?

5          MR. SCHLACHET:  The debtor responded with a motion to

6     dismiss and I was -- I was -- we were within what we regard as

7     the earliest time practicable and we, frankly, never seriously

8     considered a motion for class certification.  We do believe

9     that a motion for class certification based on what we see

10    emerging from the motion to dismiss would require appropriately

11    some class discovery.  That discovery will go --

12         THE COURT:  Class discovery before or after you've

13    made your motion?

14         MR. SCHLACHET:  Class discovery before we've made our

15    motion.

16         THE COURT:  Um-hum.  Okay, Mr. Schlachet.

17         MR. SCHLACHET:  Yes, Your Honor.

18         THE COURT:  Am I pronouncing it wrong?  Forgive me.

19         I'm thinking and digesting here because when I've

20    dealt with other class proofs of claim, they were all timely

21    whatever there other strengths and weaknesses might be.

22         Okay.  Other thoughts before I give Mr. Smolinsky a

23    chance to respond?

24         MR. SCHLACHET:  I don't think so, Your Honor.

25         THE COURT:  Okay.  Mr. Smolinsky.

Page 20

1          MR. SCHLACHET:  Thank you, Your Honor.

2          MR. SMOLINSKY:  I hate to say this is nonsense, but

3    this is nonsense.  The cars that we're talking about here were

4    manufactured and sold between 2007 and 2008.  Those are the two

5    model years that are the prime subject of the action.

6          The police package is a completely different car and

7    that could be established later but that's a question of fact.

8    What remains is the fact that we're not aware of one proof of

9    claim being timely filed with respect to this product defect.

10   Your Honor has heard before this court many claims asserting

11   product defects.  Of this 450,000 potential claimants, not a

12   one.

13         I just replaced tires on my 2010 car.  This is 2007,

14   2008 and to file a -- on the last day of a motion to revoke a

15   discharge, which I think -- we didn't get a discharge, so it's

16   not really an action --

17         THE COURT:  Oh, was it a motion to -- I thought it was

18   a motion to irrevocate the confirmation order rather than the

19   discharge.

20         MR. SMOLINSKY:  It wasn't clear.  There was some

21   language in the complaint and maybe they'll fine tune that to

22   address that issue but we did brief that on a motion to

23   dismiss.

24         THE COURT:  The point is a liquidating 11 so there

25   'aint a discharge.

MOTORS LIQUIDATION COMPANY

Page 21

```
 1          MR. SMOLINSKY:  It's a liquidating 11; that's right,
 2     Your Honor.
 3          THE COURT:  Yes.  Go on, please.
 4          MR. SMOLINSKY:  So, to file it on the 181st day
 5     following confirmation of a plan over three years after the bar
 6     date, doesn't make sense.  If someone had complained to counsel
 7     about a defective car you'd think that they would have known --
 8     known it before four years after the car was purchased.
 9          So, I don't want to get into the facts.  I don't think
10     we need to today.  I know your calendar is tight.  But we would
11     like to address this in as few hearings as possible and not
12     drag this out over a matter of months.  So, if Your Honor
13     believes that a motion for class certification is necessary to
14     get full and final relief, we would want that filed as soon as
15     possible and consolidate that so we can deal -- address this
16     complaint in one shot.
17          THE COURT:  All right.  Everybody had a chance to
18     speak their piece?
19          Gentlemen, this, of course, is only a status
20     conference and I'm not in a position nor should I do anything
21     more than simply manage the litigation of this.  Mr. Smolinsky,
22     I'm going to permit you to raise as many or as few issues as
23     you choose in your motion to dismiss to which your opponents
24     will respond.  And if they are of the mind when they respond to
25     say that some or all of the issues that you raise aren't yet
```

Page 22

1    ripe, they're free to do it at that time as to which you're

2    going to have to reply.

3          It's premature, Mr. Smolinsky for me to determine the

4    extent, if any, to which their claims are frivolous or

5    inappropriate.  If you're making the motion after I've heard

6    your opponent's views, I'll rule on it.

7          For the time being, there will be no discovery but

8    that's without prejudice for it -- to a request that I permit

9    discovery on some more issues after I have a better handle as

10   to the nature of the controversy what is being asked for, it's

11   bases in law and I'm in a better position to evaluate case

12   management issues going forward.

13         For now, what I need is for both people to lay out

14   their legal positions in writing and not just verbally so I can

15   manage it effectively going forward.  Mr. Smolinsky?

16         MR. SMOLINSKY:  Your Honor, if I may, we extended the

17   plaintiffs' time to respond to our motion to dismiss until

18   December 15th.  Perhaps -- what we'd like to do, if Your Honor

19   is okay with it, is to review the transcript and see whether

20   there are any -- any revisions to the motion to dismiss that

21   may be appropriate to refine in view of this hearing, the

22   issues so that we can tackle as much as we can on the return

23   date of the motion.  So, perhaps giving us until December 7th

24   to -- if it's necessary; I don't think it is but if it is to

25   amend the motion.  In the meantime, we could extend the

Page 23

1    defendant's time to respond one week to the 21st.  And we'd

2    look to have a hearing on this in late January.

3        THE COURT:  Did you have a dialogue with your

4    opponents as to whether they wanted more time to respond to

5    your motion to dismiss and what the timing would be for a

6    replay on your side?

7        MR. SMOLINSKY:  We did, Your Honor.  We understood

8    that there were some significant issues raised in our papers.

9    They contacted us and asked for more time.  We always want to

10   give Your Honor at least a week to read reply papers.  So, we

11   were looking initially at a hearing in early January and that's

12   why we picked December 15th to give us a week to respond.  But

13   in speaking to my litigation partner, he's not available till

14   the end of January anyway so perhaps we can use this time to

15   our advantage to try to resolve as many issues at that motion

16   as we can.

17       THE COURT:  Well, without prejudging the merits of the

18   issues in any way, it seems to me that if the controversy is of

19   the type that was described to me verbally, it will benefit

20   from both more time for your opponent to respond and for a time

21   for you to reply.

22       Mr. Schlachet, do you want to be heard on his request

23   that he be permitted to update his motion if he chooses to do

24   so?

25       MR. SCHLACHET:  Your Honor, if I had a concept of what

Page 24

1      Mr. Smolinsky -- Smolinsky has in mind with respect to a

2      revision of the motion to dismiss, I could then confer with my

3      cocounsel just very briefly and see what their immediate

4      reaction is to it.  I don't know if Mr. Smolinsky is suggesting

5      that there may be issues that can be paired or if there -- if

6      he's suggesting there are going to be issues that could be

7      added.  If I knew that, I certainly would be responsive to the

8      Court.

9            THE COURT:  Well, since I was a litigator for about

10     two decades before I went into the bankruptcy business, I can

11     speculate that he isn't asking me for permission to drop claims

12     down the road that he's more interested in seeing whether

13     anything that you raise causes him additional concerns.  He

14     could have dropped contentions with a one sentence letter.  So,

15     I think that you're on notice that he may wish to broaden his

16     concerns rather than narrow them.  I may be speculating

17     inappropriately but I was a litigator and a bankruptcy

18     litigator for thirty years before I came over to the bench.

19           MR. SCHLACHET:  Well, Your Honor, if we had -- if we

20     had new claims migrating into this action --

21           THE COURT:  But he's not talking about new claims.

22     He's talking about new defenses.  That's what a Rule 12(b)

23     motion is.  He's already got notice of what your claims are

24     except he's trying to figure out whether he needs to massage

25     his motion or not and I'm asked to decide whether I should

Page 25

1    adjust this schedule to let both its sides get out there best

2    legal positions early rather than later.

3          MR. SCHLACHET:  Well, what I would say, Your Honor, is

4    why don't we -- if you're asking me subject to my cocounsel's

5    comments why don't we add -- this is the 22nd.  If we could get

6    Mr. Smolinsky's revised motion to dismiss, say in a week

7    instead of two weeks, it would be better for me personally

8    because I'm going to be in California -- or in Florida and

9    California -- I'm supposed to be there in February and March,

10   so I will have to fly back unless the hearing is set in

11   January, which I will do; it's not a problem.  But if we could

12   get the revisions within a week then I would say that we could

13   possibly get our response -- oh, then, he wants to reply --

14   then he wants to reply.  So, we have December 15th, if we can

15   get it in a week, we would shoot for December 15th.

16          THE COURT:  Forgive me, Mr. Schlachet, I'm not going

17   to allow my courtroom to be used as the place for let's make a

18   deal.  My narrow question was whether you opposed or not.  I

19   think I'm going to take it out of the consensual range.  I'm

20   just going to tell you guys what we're going to do.

21          We're now two days before Thanksgiving.  I'm not going

22   to tell any lawyer in my courtroom that he, she or it has to do

23   stuff over a Thanksgiving weekend and respond in a week.  I'm

24   going to give the estate side, call it Old GM, call it the GUC

25   Trust, whatever, a reasonable time to update its motion if it

1    chooses to or to inform you and your allies that the estate

2    elects not to do it.  The parties are also authorized to give

3    your side a reasonable amount of time to respond and to allow

4    Old GM and the GUC Trust a reasonable time to reply and to get

5    a date for hearing upon which all parties can appear without

6    significant inconvenience and that allows me no less than a

7    business week to read the papers before oral argument.

8            I'm not going to micromanage that process beyond that

9    which I just stated.  Instead, you're to prepare a stip or

10   consent order that papers of scheduling deal, without prejudice

11   to your underlying rights and positions in any way, shape or

12   form.  Unless it's unreasonable, I will so order it and you can

13   rely upon the fact that if both sides have agreed to it, it's

14   likely to be reasonable.

15           I do have to caution you all that I have other matters

16   on my plate, both in the GM case and in the other twenty

17   megacases that I have in my docket and the other hundred

18   Chapter 11 cases that I have in my docket and the other 2,000

19   other bankruptcy cases that I have in my docket, so, I don't

20   want anybody to be a jerk about putting his or her or its

21   opponent under pressure for getting this done because you're

22   going to have to accommodate those other needs and concerns

23   anyway.

24           MR. SMOLINSKY:  Thank you, Your Honor.

25           THE COURT:  Okay.  Anything else?  Either side.

Page 27

1       (No response)

2           THE COURT:  Okay.  Mr. Smolinsky, next matter on your

3   calendar, please.  Those who are here just on this matter are

4   free to leave, if they wish.

5           MR. SMOLINSKY:  The next ten matters on the calendar

6   all relate to objections filed, omnibus objections, to

7   duplicate debt claims. These are claims that were filed by

8   bondholders seeking to obtain recoveries outside of our plan.

9   As Your Honor's aware, under our plan we allowed claims on

10  behalf of all of the fiscal paying agents and venture trustees

11  and we've made distributions on account of those claims.

12          As Your Honor is aware, we've been working through

13  these motions.  This should be the last set of duplicate debt

14  claims that are out there except for claims that either

15  partially or totally overlap the Nova Scotia litigation that

16  we've left on the side.  So, if I may, I'd like to go through

17  each one individually and see if there are responses beyond

18  those that were attached to the responsive pleadings.

19          The first is the 119th omnibus objections to claim.

20  There was one remaining response of Johann Conrad Von

21  Waldthausen, W-A-L-D-T-H-A-U-S-E-N.  In our binder, we have

22  included a letter sent in by the claimant.  We're not sure what

23  he's seeking beyond what I described as distributions on

24  account of his claims.

25          THE COURT:  Okay.  Anybody want to be heard in

Page 28

1     opposition?

2         (No response)

3         THE COURT:  Okay.  Now, Mr. Smolinsky, I need to

4     apologize to you.  I think you explained to me that this was a

5     simple expunge for what reason?

6         MR. SMOLINSKY:  They filed claims on behalf of bonds

7     and --

8         THE COURT:  But we're already covered by a proof of

9     claim by an indentured trustee.

10        MR. SMOLINSKY:  Correct.  Or a claim allowed under the

11    plan on behalf of a fiscal agent, on behalf of the entire issue

12    of debt.

13        THE COURT:  Okay.  It was the latter part that

14    confused me.

15        MR. SMOLINSKY:  And we did file, just for the record,

16    an omnibus reply with respect to all ten of these claims.

17        THE COURT:  Right.  Of course.  That's granted.

18        MR. SMOLINSKY:  Thank you.  The next is 121st omnibus

19    objection.  This is an informal objection by Nicholas Martin.

20    That's the gentleman who the CourtCall representative said did

21    not dial in.

22        THE COURT:  Okay.  Pause, please.

23        CourtCall, have you now heard from Mr. Martin?

24        COURTCALL OPERATOR:  No, Your Honor.

25        THE COURT:  Okay.  Am I right, Mr. Smolinsky, that

Page 29

1    this is basically the same issue?

2          MR. SMOLINSKY:  Yes.  I could read his letter.  It's

3    two sentences.

4          THE COURT:  I beg your pardon?

5          MR. SMOLINSKY:  I could read his letter, Your Honor.

6    It's two sentences.

7          THE COURT:  If it's two sentences, why don't you do

8    that?

9          MR. SMOLINSKY:  "Dear Sirs.  I am acting on claim

10   number 1476485 regarding General Motors Liquidation Company.  I

11   have suffered two strokes and am unable to attend the United

12   States bankruptcy hearing court Southern District of New York.

13   If the Court finds that my petition is valid, please send me my

14   proceeds.  Thank you."

15         THE COURT:  Okay.  And if I heard you right, as a

16   bondholder, the indenture trustee went to bat for him, right?

17         MR. SMOLINSKY:  If he was a debtholder of record, he

18   would have received his distributions.

19         THE COURT:  Fine.  Okay.  Your motion is granted.

20         MR. SMOLINSKY:  Thank you.

21         The third item, Debtors' 122nd omnibus objections to

22   claim, this is his one response by Arthur Staple (ph.); same

23   arguments, Your Honor.

24         THE COURT:  And the same ruling.

25         MR. SMOLINSKY:  The next matter is the 126th, omnibus

Page 30

1    objection.  One response by James E. Lockhart (ph.).

2         THE COURT:  Okay.  Anybody here on behalf of Mr.

3    Lockhart?  Same ruling.

4         MR. SMOLINSKY:  Debtors' 135th omnibus objections to

5    claim; one informal response of D. Andreas Hess (ph.).

6         THE COURT:  Same ruling.

7         MR. SMOLINSKY:  Debtors' 137th omnibus objection.

8    There's one objection, Garhard Vote (ph.).  This is a response

9    that was submitted in German.  We had our German office reach

10   out to speak to Mr. Vote unsuccessfully and attached to our

11   reply is a translation of the letter basically seeking the same

12   relief.

13        THE COURT:  Same ruling.

14        MR. SMOLINSKY:  And number 8, debtors' 140 -- I'm

15   sorry; I missed one.  Debtors' 140th omnibus objection.  This

16   is one response by Laborio DeSalvo (ph.).  Mr. DeSalvo has

17   submitted numerous letters.  Hard to tell whether they're

18   substantive relief but he's filed several letters which are

19   attached to the pleadings.

20        THE COURT:  Same ruling.

21        MR. SMOLINSKY:  Number 8, debtors' 143rd omnibus

22   objections.  One response by Paul Schwake, S-C-H-W-A-K-E.

23        THE COURT:  Same ruling.

24        MR. SMOLINSKY:  Debtors' 203rd omnibus objection.  One

25   response filed by Alma G. Haller, H-A-L-L-E-R.

MOTORS LIQUIDATION COMPANY

1          THE COURT:  Same.

2          MR. SMOLINSKY:  Last one, Your Honor, debtors' 213th

3    omnibus objection.  One response filed by Cecil a. Benjamin.

4          THE COURT:  All right.  Same ruling.

5          MR. SMOLINSKY:  Okay.

6          THE COURT:  Wait, just pause please.  Yes, ma'am, you

7    want to come up, please?

8          MS. BENJAMIN:  I'm --

9          THE COURT:  Come to a microphone so that what you say

10   can be heard.

11         MS. BENJAMIN:  I'm sorry.  I'm Patricia A. Benjamin.

12         THE COURT:  Yes, Ms. Benjamin.

13         MS. BENJAMIN:  I'm representing my father, Cecil A.

14   Benjamin.

15         THE COURT:  Okay.  That's a little irregular but I'm

16   going to allow you to be heard.

17         MS. BENJAMIN:  He's right here.  If you want to

18   speak --

19         THE COURT:  No, that's fine.  If you want to speak for

20   him, tell me what's on his mind and yours and I'll decide down

21   the road if it involves anything that would cause me to need to

22   hear from him personally.

23         MS. BENJAMIN:  Okay.  Thank you, Your Honor.

24         THE COURT:  Pull the microphone close to you, please,

25   Ms. Benjamin.

Page 32

1          MS. BENJAMIN:  Thank you, Your Honor, Mr. Gerber.

2     This is a letter explaining my position that the claim is

3     individual bondholder to the bond that is part of my father's

4     retirement.  There should be no duplicative claim to his

5     personal holding in GM stock or bond.  It's a bond which is

6     secured.  It represents part of my father's retirement savings.

7     He filed a legitimate claim on an omnibus response for the

8     property of the GM bond for 50,000 which matured prior to the

9     plan.  There's no legitimate claim or no notice of a claim was

10    filed by GUC Trust, Millington Trust (sic).

11         The basis of this alleged claim is erroneous.  The

12    bond matured on January 15th, 2011.  He has not been paid the

13    face value.  I have an attachment which I would like to submit

14    to the Court.

15         THE COURT:  You may do that, Ms. Benjamin, and then

16    you can finish your remarks but I will then need to better

17    explain what's happening with your dad's claim.

18         MS. BENJAMIN:  Sure.  Okay.

19         The bank informed us of the GM bankruptcy petition on

20    Chapter 11.  We filed a claim as creditor directly with the

21    court and not with the trust or the bank.  The following was

22    listed on the proof of claim one produced by the court and the

23    claim includes a principal and -- well, principal and interest,

24         "I am not a creditor of GUC or a trust or Wilmington

25    Trust the bank of MLC and the bond is not listed as such.

Page 33

```
 1    Furthermore, the bond is not listed as a Eurobond.  Please
 2    review this bond separately as an individual debtholder bond.
 3    I have received no recompense, so far, for this particular
 4    bond.  This is a Fifth Amendment property right and a lawful
 5    taking.  It was set to mature on January 15th, 2011 in full
 6    prior to the plan.  It is not a Eurobond.  I did not consent to
 7    an exchange of conversion of a bond to a Eurobond.  I was not
 8    given proper notice to anything of the contrary.  Therefore,
 9    individual bondholders filed a proof of claim; they should
10    receive a distribution bond to the extent that they have proof
11    as holders of the record prior to the plan.  Mr. Cecil
12    Benjamin's proof of claim is ECF No. 9623.  The Wilmington
13    Trust bond does not have a legitimate debt claim for Mr.
14    Benjamin's personal property and retirement money in the form
15    of the GM bond.  The responding parties are holders of record
16    and have provided documentation.  The claim was made prior to
17    the effective date of the plan.
18            "Cecil Benjamin has already filed a response to the
19    omnibus objection.  For Mr. Benjamin's claim is not duplicate
20    of the GUC Trust or Wilmington Trust claim.  He is unaware of
21    their interest and has not confirmed that any global's proof of
22    the claim filed by the applicable indentured trustee.  These
23    parties acknowledge Mr. Benjamin's response which is dated
24    March 2nd, 2011."
25            The response simply says -- states that he received
```

Page 34

1    information from the Motor Liquidating Company of the

2    duplication from Wilmington Trust which was alleged and is

3    false and erroneous because the bond is registered in his name.

4    There were two errors of misclaim.  Firstly, the bond CUSIP is

5    370442-BB-0 was purchased by Mr. Benjamin on July 17th, 2008.

6    Secondly, the bond matured on January 15th, 2011 and he has not

7    received -- been paid its face value which is 50,000 dollars.

8           He's enclosed a documentation and a confirmation

9    letter.  He has submitted the administrative form to the Motor

10   Liquidation Company on February 10th, 2011.  The address is 105

11   Maxess Road, Melville, New York, 11747, case number 09-50026-

12   reg.  He is requesting full compensation for the value of this

13   bond.  He wanted them to please respond as soon as possible and

14   he gave his phone number.

15           THE COURT:  Okay.  Thank you.  I understand now.

16           MS. BENJAMIN:  Okay.

17           THE COURT:  Mr. Smolinsky -- you stay up where you

18   are, Ms. Benjamin.

19           MS. BENJAMIN:  Okay.

20           THE COURT:  Mr. Smolinsky, am I correct that as far as

21   you know Wilmington Trust is the indentured trustee on the

22   issue of bonds for which Mr. Benjamin is a bondholder?

23           MR. SMOLINSKY:  Yes, Your Honor.  If it's not a

24   Eurobond then it would most likely be Wilmington Trust.

25           THE COURT:  Okay.  I responded very quickly before to

MOTORS LIQUIDATION COMPANY

Page 35

1    the objections that I sustained so I'm explaining this ruling

2    at greater length, Ms. Benjamin, both for you and your dad, Mr.

3    Benjamin; I see you out there, good morning.

4         What GM has done is it hasn't tried to take away your

5    distribution on your bonds.  What it's saying, in essence, is

6    that you can't be paid twice.  As a bondholder, you're

7    protected by a document that was executed that you probably

8    never saw which was called a bond indenture.  And under the

9    law, a trustee, in this case Wilmington Trust, is designated to

10   go to bat for the bondholders.  So, although you filed a proof

11   of claim for your bonds, strictly speaking you didn't have to.

12   You didn't have to for two reasons.  One, because Old GM had

13   acknowledged that it owed its bondholders payment on these

14   bonds and because the indentured trustee even with that

15   acknowledgement had filed its own proof of claim on behalf of

16   all of the bondholders.  So, you will get a distribution on

17   your bonds, at least as much as Old GM can afford which I don't

18   know what the distributions are going to turn out to be,

19   whether they're fifteen cents, twenty-five cents, thirty cents

20   on the dollar or something like that which unfortunately is all

21   that Old GM can afford.  But you will get the same amount on

22   your bonds that all other bondholders are getting as well.

23        Now, the one thing that may or may not have happened

24   is that I don't know if Wilmington Trust knew your address and

25   the information for you to get your distribution.  And Mr.

Page 36

1    Smolinsky, as a request or as a favor to me, if you could

2    detail one of your associates or a smart paralegal to help link

3    Mr. Benjamin up with Wilmington Trust to see that he gets

4    whatever he should have gotten as part of the distributions.

5         But, Ms. Benjamin, the reason that I'm required to

6    sustain Old GM's objection and to disallow the second claim is

7    that your dad is already getting paid once.  It's not that

8    nobody's saying that he can't get paid; it's just that he can't

9    get paid more than once.  Yes.

10        MS. BENJAMIN:  He hasn't received any recompense for

11   this particular bond so far.

12        THE COURT:  And that's why I'm asking as a favor to me

13   that Mr. Smolinsky detail one of his staff to help set up the

14   lines of communication to see that your dad gets paid.

15        MS. BENJAMIN:  Thank you, Your Honor.

16        THE COURT:  Very good.

17        Mr. Smolinsky, I appreciate the courtesy that you and

18   you firm are giving me and to the Davis (sic) family.

19        MR. SMOLINSKY:  Of course we will.

20        The next matter, an uncontested matter, debtors' 199th

21   omnibus objection to claims.  We had one response by Dan.  He

22   was a bondholder.  He did receive his distributions and he does

23   not object to the disallowance of his duplicate claim.

24        THE COURT:  Sure, I understand.

25        MR. SMOLINSKY:  242nd omnibus objection to claim.

Page 37

1    That's a contingent coliability claim.  There was one response

2    left by Centerpoint, I believe.  Yes, Centerpoint.  And we have

3    entered into a consensual order which we'll submit to chambers

4    disallowing the claim.

5              THE COURT:  Sure.

6              MR. SMOLINSKY:  That is the remainder of my calendar,

7    Your Honor.  My colleague at Dickstein Shapiro is here to

8    address the other omnibus objections.  There's also a motion

9    regarding Chartis that may be going forward; I'm not quite

10   sure.

11             UNIDENTIFIED SPEAKER:  A status conference.

12             MR. SMOLINSKY:  A status conference, Your Honor.

13             THE COURT:  Okay.

14             MR. SMOLINSKY:  And, Your Honor, if I leave I have an

15   11 o'clock matter by Judge Gonzales so I think I'm through with

16   my calendar.

17             THE COURT:  Of course.  And anybody who's needs have

18   already been addressed, including the Benjamin family, is free

19   to leave too if they want to.

20             Okay.  From Dickstein dealing with the creditors'

21   committee side.

22             MR. BERGER:  Good morning, Your Honor.  Shaya Berger

23   from Dickstein Shapiro.

24             THE COURT:  Sure.  Good morning.

25             MR. BERGER:  I will be presenting the Motors

1    Liquidation GUC Trust on certain omnibus objections.  This

2    morning we have five omnibus objections.  The first omnibus

3    objection is the 252nd omnibus objections for late filed claims

4    covering claims that -- claimants that received actual notice.

5    There were twelve claimants in -- covered by these objections

6    and we received no response and, therefore, we request that an

7    order expunging these claims.

8            THE COURT:  Yes, Mr. Berger, granted.

9            MR. BERGER:  The next omnibus objection is the 253rd

10   omnibus objection which is also a late filed omnibus

11   objections.  It's covering claimants who were unknown and,

12   therefore, received constructive notice of the bar date and

13   filed their claims late.  There were thirty-six claims on

14   our -- on this 253rd omnibus objections.  Four claimants

15   filed -- either filed formal responses or informally responded

16   to the objection.  Those claimants are not going forward.

17   We're adjourning the objection as to those claims.  The other

18   thirty-two, we are going forward with them and we request that

19   an order be entered expunging those thirty-two claims.

20           THE COURT:  Okay.  To the extent you're asking for the

21   order, it's granted.

22           MR. BERGER:  The two -- the next omnibus objection is

23   the 254th omnibus objection.  It is also a late filed omnibus

24   objection.  On this one, there are seven claims that were filed

25   after the effective date under the confirmation order and there

Page 39

1    have been no responses to that and we request that as to these

2    seven claims, the 254th omnibus objection be granted and these

3    claims be expunged.

4            THE COURT:  Yes, it is granted.  Thank you.

5            MR. BERGER:  Your Honor, the next omnibus objection is

6    the 255th omnibus objection.  This omnibus objection covers

7    claimants that either failed to attach any or insufficient

8    documentation to support their claims.  There were twenty-seven

9    claimants listed on the exhibit and were covered by this

10   objection.  Two of those claimants responded, again, either

11   informally or formally filed a response.  As to those two

12   claimants, the order that we will submit to the Court will

13   not -- will have those claims being adjourned.  And as to the

14   other twenty-five claimants who do not respond, we request that

15   the order be granted and those claims be expunged.

16           THE COURT:  Yes.  Granted.

17           MR. BERGER:  Thank you, Your Honor.

18           The final omnibus objection is a 256th omnibus

19   objection.  This omnibus objection is to reduce, allow, and

20   reclassify certain property damage claims.  The substance of

21   the objection is contained in the objection itself.  If the

22   Court would like me to speak to it, I can.  However, there were

23   thirty-seven claims listed on this objection and there were no

24   responses filed.  So, this is an unopposed omnibus objection as

25   well and we request that an order be granted reducing, allowing

Page 40

1    and reclassifying these thirty-seven claims.

2         THE COURT:  You don't need to speak to it further.

3    Motion granted.

4         MR. BERGER:  Thank you very much, Your Honor.  That's

5    all we have for today.

6         THE COURT:  Okay.  Very good.

7         Now, do I have a status conference on the Chartis

8    controversy?

9         MR. RATNER:  Yes.  Yes, Your Honor.  If I may?

10        THE COURT:  Yes, please.

11        MR. RATNER:  Scott --

12        THE COURT:  Let me get appearances from both sides.

13        MR. RATNER:  Scott Ratner of Tovat, Segal & Segal down

14   this morning as conflicts counsel on behalf of Motors

15   Liquidation Corporation.

16        THE COURT:  Good morning.

17        MR. LEINBACH:  Good morning, Your Honor.  Brian

18   Leinbach from Zeichner Ellman & Krause on behalf of the Chartis

19   entities.  And in advance, sorry, I have a bit of a cold today.

20        THE COURT:  Okay.  Mr. Leinbach, you're from the

21   Zeichner firm?

22        MR. LEINBACH:  I am, Your Honor.

23        THE COURT:  Okay.  Thank you.

24        MR. RATNER:  Your Honor, if I may, I'd like to thank

25   the Court for affording us the opportunity for a brief status

1   conference.  We thought it would be prudent given the fact that

2   this claim objection has been pending, next week it will be one

3   year, and I don't believe the parties have ever appeared before

4   the Court.  Notwithstanding the fact that there have been many

5   pleadings filed with the Court and extensive discussions and

6   negotiations have taken place outside the courtroom over the

7   course of the past year.  And, Your Honor, we're here now

8   because we are in a position and we intend to move forward the

9   parties with an issue.  We've narrowed virtually all of the

10  issues that were in dispute regarding the claim itself.  There

11  were four originally filed by Chartis and Lexington and other

12  affiliated insurance companies against a couple of the Old GM

13  entities.  We've narrowed those claim disputes.  We've narrowed

14  the issues regarding the collateral.  And currently, we have

15  one issue in dispute.  And that issue concerns an amended proof

16  of claim that was recently filed by Chartis Lexington and its

17  affiliated entities and is the subject of a supplemental

18  amended claim objection which I believe is on the agenda that

19  appears before the Court today as item number 3.

20          That -- the amended proof of claim was filed on

21  November 11th by the Chartis Insurance entities.  That amended

22  proof of claim --

23          THE COURT:  November 11th, eleven days ago?

24          MR. RATNER:  Yes.

25          THE COURT:  -- pursuant to the stipulation that was so

1    ordered by the Court yesterday.

2         That proof of claim amends and supersedes the four

3    prior proofs of claim which have been the subject of the

4    omnibus claim objection that was filed almost a year ago.  So,

5    what we've done through the stipulation and the amended proof

6    of claim is basically eliminate eighty percent of the issues

7    that had been in dispute and now we're left with one issue.

8    That one issue was briefed by the reorganized debtors just

9    recently.  On November 17th, they filed their amended

10   supplemental objection to the amended proof of claim.  And

11   also, pursuant to stipulation and agreement worked out by the

12   parties and approved by the Court, on December 1 the claimants

13   are supposed to file their reply, their reply to the debtors',

14   the reorganized debtors' response.  We think, based on

15   discussions, that there may be a cross-motion as part of their

16   reply and the cross-motion would seek to compel arbitration of

17   the issue in dispute.  In the event there is a cross-motion,

18   the parties had agreed that the reorganized debtors would have

19   a right to reply and that would -- or respond to the cross-

20   motion.  And our deadline for that would be January 10th.  And

21   the hearing date that's been set, and this is likely to go

22   forward the hearing as a substantive hearing, is January 18th.

23        Now, the one issue, Your Honor, that I was going to

24   just note, the one issue in dispute that would be the subject

25   of the substantive hearing on January 18th, in addition,

Page 43

1   perhaps, to whether or not arbitration is required or

2   appropriate in this circumstance, the one issue that is in

3   dispute is the status of the subrogation claim that the

4   reorganized debtors have now agreed to as to amount.  There is

5   no longer a dispute as to the amount of the subrogation claim

6   which is 4.5 million.  Rather, the dispute concerns the status

7   of that claim and whether it should be treated as a general

8   unsecured claim or as a secured claim under the plan.

9         THE COURT:  Okay.  Before I hand off to Mr. Leinbach,

10  have you and Mr. Leinbach or your designees agreed on a

11  schedule for the entirety of the briefing on everything?

12        MR. LEINBACH:  This is Bryan Leinbach for the Chartis

13  entities.  Yes, Your Honor, we had spoken yesterday with Togut,

14  Segal & Segal and we believe we've come up with a briefing

15  schedule for both; our opposition to their claims objection

16  and, of course, the cross-motion that we intend to file for

17  arbitration.

18        THE COURT:  Including all replies, Mr. Leinbach?

19        MR. LEINBACH:  Yes.  My understanding was that

20  pursuant to the stipulation our opposition date would be

21  December 1st for their claim objection.  We, of course,

22  anticipate filing a cross-motion to -- a cross-motion to seek

23  arbitration.  Pursuant to that cross-motion, their reply would

24  be due, of course, December 22nd.  With a reply would also be

25  an opposition to our motion, our cross-motion for arbitration

Page 44

1    and then there would be a reply which we'd agreed upon which we

2    submit on January 10th in order to make the scheduled January

3    18th hearing.

4         THE COURT:  Um-hum.  Mr. Ratner, give Mr. Leinbach the

5    podium in case he wants to say anything.

6         MR. RATNER:  Yes, sir.  Thank you, Your Honor.

7         THE COURT:  Okay.

8         MR. LEINBACH:  Thank you, Your Honor.  Bryan Leinbach,

9    once again, for the Chartis entities.  I don't have anything to

10   add to Mr. Ratner's statement.  I also -- that leaves -- there

11   was one bit of a factual inaccuracy.  My understanding is that

12   the proof of claim was submitted pursuant to the stipulation on

13   November 8th as opposed to November 11th.

14        THE COURT:  All right.  Have you guys papered your

15   deal on the scheduling of the various briefs?

16        MR. LEINBACH:  Yes.  The actual scheduling of the

17   briefing is set forth in the stipulation which my understanding

18   is being submitted for order by the Court today.  The only

19   thing which is not in the stipulation is the January 10th reply

20   date for our anticipated cross-motion for arbitration.

21        THE COURT:  All right.  You or Mr. Ratner or somebody

22   working under either your direction is to send a letter or e-

23   mail to my chambers that fills out the gaps on anything that

24   wasn't previously given to us so that we know how to understand

25   the schedule.  If I -- I think I may have approved that -- the

1    rest of it already but if I didn't what you guys told me is

2    fine and just get your briefs in gentlemen.

3           Am I correct that at this point it's just questions of

4    law and doesn't involve disputed issues of fact?

5           MR. LEINBACH:  At this moment, we do not believe that

6    they're an issue of fact but, of course, we will have to wait

7    and see once the full briefings are filed with the court.

8           THE COURT:  Mr. Ratner, do you agree with him on that?

9           MR. RATNER:  Yes.  I was going to say ditto, Your

10   Honor.

11          THE COURT:  Okay.

12          MR. RATNER:  Have to wait and see.

13          THE COURT:  All right.  Make it happen, gentlemen.

14          MR. RATNER:  Thank you, Your Honor.

15          MR. LEINBACH:  Thank you.

16          THE COURT:  Thank you.  Am I correct that all GM

17   matters have now been taken care of?

18          Okay.  Anybody who is here on GM is free to go.  Do I

19   have anything now other that Park Eastside Properties?  Yes,

20   Ms. Davis (sic).

21          MS. BENJAMIN:  May I just give you the letter that was

22   written to you with the proof of claim?

23          THE COURT:  Excuse me; I said Davis, I meant Benjamin.

24   I apologize.  But come on up.  I couldn't hear your question.

25          MS. BENJAMIN:  May I submit to you the letter with the

MOTORS LIQUIDATION COMPANY

Page 46

1    proof -- the confirmation notice for Cecil Benjamin to your

2    clerk?

3             THE COURT:  Sure, if you want to.

4             MS. BENJAMIN:  All right.  Thank you.

5             THE COURT:  Okay.  Park Eastside.

6        (Whereupon these proceedings concluded at 10:55 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 47

1                           I N D E X

2                           RULINGS

3                                                Page      Line

4    Morgenstein Group to prepare stip and        26        12

5      include scheduling

6    Debtors' 119th omnibus objection granted     26        13

7    Debtors' 121st omnibus objection granted     29        19

8    Debtors' 122nd omnibus objection granted     29        24

9    Debtors' 126th omnibus objection granted     30        3

10   Debtors' 135th omnibus objection granted     30        6

11   Debtors' 137th omnibus objection granted     30        13

12   Debtors' 140th omnibus objection granted     30        20

13   Debtors' 143rd omnibus objection granted     30        23

14   Debtors' 203rd omnibus objection granted     31        1

15   Debtors' 213th omnibus object granted        31        4

16   Debtors' 252nd omnibus objection and order   38        8

17     to expunge claims granted

18   Debtors' 253rd omnibus objection and order   38        21

19     to expunge thirty-two claims granted

20   Debtors' 254th omnibus objection and order   39        4

21     to expunge seven claims granted

22   Debtors' 255th omnibus objection and order   39        16

23     to expunge twenty-five claims granted

24   Debtors' 256th omnibus object to reduce,     40        3

25     allow and reclassify granted

Page 48

1

2                        C E R T I F I C A T I O N

3

4    I, Ellen S. Kolman, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    Ellen S.                    Digitally signed by Ellen S.
                                  Kolman
     Kolman                      DN: cn=Ellen S. Kolman, c=US
8                                Date: 2011.11.23 13:51:06 -05'00'

9    Ellen S. Kolman (CET**D-568)

10   AAERT Certified Electronic Court Transcriber

11

12   Veritext

13   200 Old Country Road

14   Suite 580

15   Mineola, NY 11501

16

17   Date:  November 23, 2011

18

19

20

21

22

23

24

25