Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Post-Effective Date
Debtors and Motors Liquidation Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                          :
**In re**                                  :        **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY**, *et al.*,  :        **09-50026 (REG)**
     **f/k/a General Motors Corp.**, *et al.*  :
                                          :
                       **Debtors.**        :        **(Jointly Administered)**
                                          :
------------------------------------------------------------x

**NOTICE OF HEARING ON MOTION OF**
**POST-EFFECTIVE DATE DEBTORS AND MOTORS**
**LIQUIDATION COMPANY GUC TRUST FOR ENTRY OF ORDER PURSUANT**
**TO 11 U.S.C. §§ 105(A) AND 1142(B) AND FED R. BANKR. P. 7012(B) AND 9014(C)**
**(I) DIRECTING THE TULLISES TO DISMISS THE DEBTORS AND**
**THEIR ATTORNEYS FROM PENDING ACTION WITH PREJUDICE; AND**
**(II) ENFORCING PRIOR ORDERS OF THIS COURT BY**
**ENJOINING THE TULLISES FROM FURTHER ACTION AGAINST THE**
**DEBTORS, POST-EFFECTIVE DATE DEBTORS, MOTORS LIQUIDATION**
**COMPANY GUC TRUST, AND THEIR OFFICERS AND PROFESSIONALS**

PLEASE TAKE NOTICE that upon the annexed Motion, dated December 6,

2011 (the "**Motion**"), of Motors Liquidation Company (f/k/a General Motors Corporation) and

its affiliated debtors, as post-effective date debtors (collectively, the "**Debtors**") and Motors

Liquidation Company GUC Trust (the "**GUC Trust**"), pursuant to sections 105(a) and 1142(b)

of title 11, United States Code (the "**Bankruptcy Code**") and Rules 7012(b) and 9014(c) of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") for entry of an order (i)

directing Clinton and Margaret Tullis (the "**Tullises**") to dismiss the Debtors and their attorneys

from an action in the Superior Court of the State of Washington in and for the County of King

under Case No. 10-2-25699-7 KNT with prejudice; and (ii) enforcing prior orders of this Court

by enjoining the Tullises from further action against the Debtors, the GUC Trust, and their

officers and professionals, all as more fully set forth in the Motion, a hearing will be held before

the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United

States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York,

New York 10004, on **January 18, 2012 at 9:45 a.m. (Eastern Time),** or as soon thereafter as

counsel may be heard.

            PLEASE TAKE FURTHER NOTICE that any responses or objections to this

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP,

attorneys for the Debtors and Post-Effective Date Debtors and the GUC Trust, 767 Fifth Avenue,

New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph

H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old

Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii)

General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.), (xii) Gibson, Dunn & Crutcher LLP, attorneys for Wilmington Trust Company as GUC Trust Administrator and for Wilmington Trust Company as Avoidance Action Trust Administrator, 200 Park Avenue, 47th Floor, New York,

New York 10166 (Attn: Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust

Monitor and as the Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree

Street, Suite 500, Atlanta, Georgia 30309 (Attn: Anna Phillips); (xiv) Crowell & Moring LLP,

attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590 Madison

Avenue, 19th Floor, New York, New York 10022-2524 (Attn: Michael V. Blumenthal, Esq.);

(xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard,

Austin, Texas 78703; and (xvi) Clinton and Margaret Tullis, 16300 184th Ave. SE, Renton, WA

98058-0903, so as to be received no later than **January 11, 2012, at 4:00 p.m. (Eastern Time)**

(the "**Objection Deadline**").

     PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the Debtors may, on or after the Objection Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Motion, which order may be entered with no further notice or opportunity to be heard offered to

any party.

Dated: New York, New York
   December 6, 2011

         /s/ Joseph H. Smolinsky
         Harvey R. Miller
         Stephen Karotkin
         Joseph H. Smolinsky

         WEIL, GOTSHAL & MANGES LLP
         767 Fifth Avenue
         New York, New York 10153
         Telephone: (212) 310-8000
         Facsimile: (212) 310-8007

         Attorneys for Debtors and Post-Effective Date
         Debtors and Motors Liquidation GUC Trust

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Debtors and Post-Effective Date
Debtors and Motors Liquidation GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                  :
In re                             :     Chapter 11 Case No.
                                  :
MOTORS LIQUIDATION COMPANY, et al.,  :     09-50026 (REG)
      f/k/a General Motors Corp., et al.  :
                                  :
                    Debtors.      :     (Jointly Administered)
                                  :
------------------------------------------------------------x
```

## MOTION OF POST-EFFECTIVE DATE DEBTORS AND MOTORS LIQUIDATION COMPANY GUC TRUST FOR ENTRY OF ORDER PURSUANT TO 11 U.S.C. §§ 105(A) AND 1142(B) AND FED R. BANKR. P. 7012(B) AND 9014(C) (I) DIRECTING THE TULLISES TO DISMISS THE DEBTORS AND THEIR ATTORNEYS FROM PENDING ACTION WITH PREJUDICE; AND (II) ENFORCING PRIOR ORDERS OF THIS COURT BY ENJOINING THE TULLISES FROM FURTHER ACTION AGAINST THE DEBTORS, POST-EFFECTIVE DATE DEBTORS, MOTORS LIQUIDATION COMPANY GUC TRUST, AND THEIR OFFICERS AND PROFESSIONALS

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and

its affiliated debtors, as post-effective date debtors (collectively, the "**Debtors**") and Motors

Liquidation Company GUC Trust (the "**GUC Trust**," and together with the Debtors, the

"**Movants**"), respectfully represent:

### Relief Requested

1.        On July 16, 2010, Clinton M. Tullis and Margaret L. Tullis (the

"**Tullises**") commenced an action in the Superior Court of the State of Washington in and for the

County of King under Case No. 10-2-25699-7 KNT (the "**Pending Action**") against Motors

Liquidation Company ("**MLC**") and Cornforth-Campbell Dealership, a GM dealership located in

Puyallup, WA ("**Cornforth**," and together with MLC, the "**Initial Defendants**").  The Pending

Action asserts a number of civil and criminal causes of action relating to alleged defects on a

brake control system on a 1999 GM Suburban vehicle the Tullises purchased from Cornforth in

2003.  The Tullises seek remedies including, among other things, $87 million in damages.

Because the Pending Action arises exclusively from prepetition events, it was commenced in

direct violation of the automatic stay extant in these chapter 11 cases pursuant to section 362 of

chapter 11 of the United States Code (the "**Bankruptcy Code**").  On July 30, 2010, Weil,

Gotshal & Manges LLP ("**Weil**"), as counsel to MLC, sent a letter notifying the Tullises of the

automatic stay and requesting that the Pending Action be dismissed as to MLC.  The Tullises did

not dismiss the Pending Action, and in December 2010, the Tullises purported to amend the

complaint in the Pending Action to name Weil and two individual Weil attorneys and to seek $5

million from the law firm.

2.      By this Motion, Movants requests entry of an order pursuant to sections 105(a) and 1142(b) of the Bankruptcy Code and Rules 7012(b) and 9014(c) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), substantially in the form annexed hereto as **Exhibit "A,"** (i) directing the Tullises to withdraw the Pending Action as to MLC and Weil, its attorneys, and (ii) enforcing orders of this Court, including the subsequently issued order confirming the Debtors' Second Amended Joint Chapter 11 Plan (the "**Plan**"), that enjoin claimants from taking any further action against the Debtors, the GUC Trust, and their officers and professionals.

### Jurisdiction

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

### Background

**A.      The Prior State Court Action**

4.      On January 17, 2008, the Tullises commenced an action against General Motors Corporation and Cornforth in the Superior Court of the State of Washington in and for the County of Pierce, under Case No. 08-2-04425-0 (the "**Prior State Court Action**").  The Prior State Court Action related to damages the Tullises allegedly suffered as a result of a motor vehicle accident that occurred on or about July 18, 2004.  The Pierce County Superior Court dismissed the Prior State Court Action with prejudice on April 4, 2008, finding that the "plaintiffs' claims against defendants for damages proximately caused by this motor vehicle collision are barred by the applicable statute of limitations."  A copy of the order dismissing the Prior State Court Action is annexed hereto as **Exhibit "B."**

5.      Following the dismissal of the Prior State Court Action, the Tullises

repeatedly attempted to reopen the Prior State Court Action, filing a motion to vacate the

dismissal of the Prior State Court Action on November 26, 2008, a motion to vacate judgment on

February 10, 2009, a further motion to vacate dismissal on March 10, 2009, a motion for order to

show cause on January 21, 2010, and a further motion for order to show cause on February 8,

2010.  Each of these attempts to resurrect the Prior State Court Action were unsuccessful.

**B.**      **The District Court Action**

6.      In addition to the Tullises' attempts to resurrect the Prior State Court

Action, on June 15, 2009, the Tullises filed a complaint (the "**District Court Complaint**") in the

United States District Court for the Western District of Washington (the "**District Court**"), Case

Number 09-5352RJB (the "**District Court Action**") against General Motors Corporation and

Cornforth.  The District Court Complaint is nearly identical to the complaint filed in the Prior

State Court Action, but includes handwritten notes delineating the case number from the Prior

State Court Action, Case No. 08-2-04425-0, and stating "continuance of this case," and "this

case is removed from Pierce County Superior Court."

7.      The Debtors were never served with a copy of the District Court

Complaint.  Nevertheless, on June 16, 2009, the Tullises filed a copy of the District Court

Complaint with this Court (ECF No. 1977), demonstrating that the Tullises were aware that

General Motors Corporation was a debtor in a pending chapter 11 cases at the time the action

was filed.

8.      On June 19, 2009, the District Court entered an order (the "**Remand**

**Order**") remanding the District Court Action to Pierce County Superior Court and noting that

"only defendants may remove civil cases filed in state court to federal court."  A copy of the

Remand Order is annexed hereto as **Exhibit "C."** The Remand Order also appears on the docket

of the Prior State Court Action, which, as noted above, had already been dismissed with

prejudice.

### C.    The Bar Date Order

9.    By order dated September 16, 2009 (ECF No. 4079), the Bankruptcy

Court established November 30, 2009 as the bar date for creditors to file proofs of claim based

on prepetition liabilities against the Initial Debtors.[1] The Tullises did not file a proof of claim in

these chapter 11 cases despite having received actual notice of the bar date (see relevant portion

of the Affidavit of Service annexed hereto as **Exhibit "D"**).

### D.    The Pending Action

10.    Notwithstanding the Tullises' knowledge of these chapter 11 cases, on

July 16, 2010, the Tullises filed the Pending Action in direct violation of the automatic stay. A

copy of the summons and complaint in the Pending Action (the "**Initial Complaint**") is annexed

hereto as **Exhibit "E."**

11.    On July 30, 2010, Weil, on behalf of the Debtors, sent the Tullises a letter,

a copy of which is annexed hereto as **Exhibit "F"** (the "**Stay Violation Notice**"), advising the

Tullises that the Pending Action was commenced in violation of the automatic stay and

requesting that the Tullises withdraw the Pending Action within five business days.

---

[1] "Initial Debtors" refers to the four entities that filed voluntary petitions for relief under chapter 11 of the
Bankruptcy Code on June 1, 2009:

- Motors Liquidation Company (f/k/a General Motors Corporation)
- MLCS, LLC (f/k/a Saturn, LLC)
- MLC Distribution Corporation (f/k/a Saturn Distribution Corporation)
- MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.)

12.    On August 2, 2010, counsel for the Debtors filed a notice, a copy of which

is annexed hereto as **Exhibit "G"** (the "**Suggestion of Bankruptcy**"), in the Pending Action

advising all parties in interest in the Pending Action of the existence of the Debtors' chapter 11

cases and stating that any action taken by the Tullises in violation of the automatic stay against

the Debtors may result in a finding of contempt against the Tullises.

13.    On December 30, 2010, in blatant disregard for the automatic stay, the

Stay Violation Notice, and the Suggestion of Bankruptcy, the Tullises filed a revised complaint

(the "**Revised Complaint**") in the Pending Action naming Weil and two individual Weil

attorneys (collectively, the "**Weil Defendant**s") as defendants.  In an apparent attempt to

penalize Weil for sending the Tullises the Stay Violation Notice and filing the Suggestion of

Bankruptcy, the Revised Complaint seeks a $5 million fine and/or criminal sanctions against the

Weil Defendants.  A copy of the Revised Complaint is annexed hereto as **Exhibit "H."**

14.    The Revised Complaint was not served on the Debtors or the Weil

Defendants.  Neither party had notice of the Tullises' continued filings in the Pending Action

until May 20, 2011, when the Tullises filed with this Court a document styled Status of

Defendants and Cause of Action (ECF No. 10299) (the "**May 20, 2011 Filing**"), reiterating

portions of the Revised Complaint.  The May 20, 2011 Filing states that Weil "recently informed

Plaintiffs to send Plaintiffs Claim to the United States Bankruptcy Court officiating Judge."[2]

The May 20, 2011 Filing goes on to state that "Plaintiffs have a law suit commenced against the

---

[2] The Debtors are unaware of the instruction to which the Tullises are referring and have no record of any
communications between Debtors' counsel and the Tullises since August 2010.  The Debtors can only speculate that
perhaps the Tullises are referring to the Notice of (I) Entry of Order Confirming Debtors' Second Amended Joint
Chapter 11 Plan and (II) Occurrence of Effective Date (ECF No. 10151), sent to all creditors on April 27, 2011.

Above mentioned DEFENDANTS and will not surrender the case until it properly financially

resolved." (May 20, 2011 Filing at 2:16 – 19.)

15.      On August 3, 2011, the Tullises filed a Disclosure of Possible Primary

Witnesses in the Pending Action, a copy of which is annexed hereto as **Exhibit "I."**  On August

5, 2011, the Claimants filed with this Court an identical copy of the Disclosure of Possible

Primary Witnesses filed in the Pending Action (ECF No. 10688).  On October 6, 2011, the

Tullises filed with this Court a document styled Motion for Order re: On the Merits to Pay the

Sum that the Petitioners Ask for (ECF No. 11022), further reiterating the Tullises' grievances

with the Debtors and the Weil Defendants.  It is not clear that any of the Tullises' filings in these

chapter 11 cases request any specific relief from this Court.

### B.      The Plan and Confirmation Order

16.      On March 29, 2011, this Court entered its Findings of Fact, Conclusions

of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020

of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint

Chapter 11 Plan (ECF No. 9941) (the "**Confirmation Order**"), which, among other things,

confirmed the Plan.

17.      The Confirmation Order and the Plan include an exculpation provision

which provides that, subject to limited exceptions (not applicable here), neither the Debtors, the

GUC Trust Administrator (as defined in the Plan), the GUC Trust Monitor (as defined in the

Plan), nor their respective officers or professionals "shall have or incur any liability to any holder

of a Claim or Equity Interest for any act or omission in connection with, related to, or arising out

of the Chapter 11 Cases" (Confirmation Order ¶ 52, Plan § 12.6).  In addition, the Plan provides

for an injunction against interference with the implementation or consummation of the Plan:

> Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

(Plan § 10.7.)

18.    The Plan and the Confirmation Order specify that the Bankruptcy Court retains exclusive jurisdiction to consider claims such as those asserted by Tullises and to provide the relief sought herein.  Section 11.1 of the Plan provides, in pertinent part:

> The Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan  . . . for, among other things, the following purposes
>
> . . . .
>
> (b)  To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced before or after the Confirmation Date . . . .;
>
> (c)  To ensure that distributions to holders of Allowed Claims are accomplished as provided herein;
>
> (d)  To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim;
>
> . . . .
>
> (f) To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court . . . .

(Plan § 11.1(b), (c), (d), (f)).  In addition, the Confirmation Order and the Plan provide that the Bankruptcy Court retains exclusive jurisdiction to consider any and all claims against the Debtors, the GUC Trust, and their respective officers, counsel and professionals "involving or

relating to the administration of the Chapter 11 Case [and] the decisions and actions taken during the Chapter 11 Cases." (Confirmation Order ¶ 52, Plan § 12.6).

### The Tullises Should Be Directed to Dismiss the Debtors and their Attorneys From the Pending Action and Enjoined from Taking Further Action Against the Debtors, the GUC Trust, and Their Officers and Professionals

19.     The Tullises' actions are in direct violation of the automatic stay, the Plan, and the Confirmation Order, and therefore, this Court should direct them to dismiss the Pending Action and enjoin them from taking any further action against the Debtors, the GUC Trust, and their officers and professionals.  Section 362(a) of the Bankruptcy Code provides that the filing of a chapter 11 petition shall serve as an automatic stay applicable to "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate" and "any act to create, perfect, or enforce any lien against property of the estate."  11 U.S.C. § 362(a)(3),(4).  The Tullises have elected not to file a proof of claim with this Court and accordingly may not participate in distributions under the Plan.

20.     Moreover, as stated above, the Plan provides that holders of Claims "shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan."  (Plan § 10.7.)  The Plan further provides that neither the Debtors, the GUC Trust, nor their officers and professionals shall have any liability to any Claimant "for any act or omission in connection with, related to, or arising out of the Chapter 11 Cases."  (Plan § 12.6.)  Further, the Plan specifies that the Bankruptcy Court retains exclusive jurisdiction "to issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan, the Confirmation Order, or any other order of the Bankruptcy Court."  (Plan § 11.1(f).)

21.     Section 1142(b) of the Bankruptcy Code provides the Court with the authority to issue orders necessary to implement the terms of a confirmed plan.  11 U.S.C. § 1142(b) ("The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act . . . that is necessary to the consummation of the plan"); s*ee also Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 7 F.3d 32, 34 (2d Cir. 1993) (finding that bankruptcy courts retain postconfirmation jurisdiction to the extent provided by the plan); *Penthouse Media Group v. Guccione* (*In re Gen. Media, Inc.*), 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) (finding that bankruptcy courts retain post-confirmation jurisdiction to matters related to the implementation of a plan); *In re Petition of Board of Dirs. of Hopewell Int'l Ins., Ltd.,* 272 B.R 396, 407 n.11 (Bankr. S.D.N.Y. 2002) ("[T]he Court may direct parties to perform any act necessary to consummate the plan.")(citing 11 U.S.C. § 1142(b)).  In addition, Bankruptcy Rule 3020(d) provides that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate."  Fed. R. Bankr. P. 3020(d).

22.     The Tullises' continued efforts to pursue the Pending Action and interfere with the distributions provided for under the Plan and the winding up of the Debtors' affairs are in direct violation of the Plan injunction.  (Plan § 10.7.)  Further, the Tullises have asserted a spurious $5 million claim against the Weil Defendants, which, if allowed to proceed, would result in such professionals being required to divert their attention from these chapter 11 cases so they can defend themselves in the Pending Action.  The Weil Defendants have done nothing to support a claim against them, and the Tullises' attempts to end run the bankruptcy process should not be countenanced.

23.     Through the Prior State Court Action, the District Court Action, and the Pending Action, the Tullises have shown no compunction in abusing the legal process to achieve their desired objectives.  Despite having their complaint dismissed in the Prior State Court Action and multiple failed attempts to have the decision dismissing the Prior State Court Action overturned, the Tullises attempted to pursue the same matter in others court through the District Court Action, the Pending Action, and documents filed with this Court, all in blatant disregard of the Automatic Stay and the claims procedures in these chapter 11 cases.  Additionally, the Tullises' attempts to exert undue leverage on the Debtors by seeking civil and criminal penalties against the Weil Defendants for simply providing the Tullises notice of the automatic stay should not be tolerated.  The Debtors and the GUC Trust, therefore, have no choice but to request that this Court direct the Tullises to withdraw the Pending Action as to the Debtors and the Weil Defendants and enjoin the Tullises from pursuing further actions against the Debtors, the GUC Trust, and the Weil Defendants so that such professionals do not incur unnecessary costs and are not distracted from their important work assisting in the administration of these chapter 11 cases.

24.     Accordingly, in furtherance of the exculpation and injunction provisions in the Plan (Plan §§ 10.7, 12.6), and the Confirmation Order (Confirmation Order ¶ 52) in conjunction with the automatic stay, the Debtors and the GUC Trust respectfully request that the Court enter an order (i) directing the Tullises to withdraw the Pending Action as to the Debtors and the Weil Defendants forthwith, and (ii) enjoining the Tullises from further action against the Debtors, the GUC Trust, and their officers and professionals, without further leave of this Court.

25.     While the Debtors and the Weil Defendants do not request monetary sanctions against the Tullises at this time, they reserve their rights to request sanctions should the Tullises continue to violate this Court's orders.

## The Tullises' Filings with this Court Do Not Constitute an Informal Proof of Claim

26.    Although the Tullises have not asserted that any of their filings with this

Court constitute an informal proof of claim, out of an abundance of caution, Movants submit that

such assertion would fail as a matter of law.  For a filing to qualify as an informal proof of claim,

the filing "must have (1) been timely filed with the bankruptcy court and have become part of the

judicial record, (2) state the existence and the nature of the debt, (3) state the amount of the claim

against the estate, and (4) evidence the creditor's intent to hold the debtor liable for the debt."  *In

re Enron Corp.*, 370 B.R. 90, 99 (Bankr. S.D.N.Y. 2007).  "Mere notice of a claim alone is not to

be called an informal proof of claim and does not excuse the absence of a proper, timely proof

where the law requires."  *In re Int'l Horizons, Inc.*, 751 F.2d 1213, 1217 (11th Cir. 1985); *see

also Wilkens v. Simon Bros., Inc.*, 731 F.2d 462, 465 (7th Cir. 1984) (a debtor's "[m]ere

knowledge of the existence of the claim . . .  is insufficient").  The purported informal proof of

claim must assert "an intent to share in a distribution of [the estate's] assets."  *In re Fink*, 366

B.R. 870, 878 (Bankr. N.D. Ind. 2007).  "[C]ourts which have allowed the amendment of a

previously filed informal proof of claim uniformly require that the proof of claim *explicitly*

demonstrate the creditor's demand and the intention of the creditor to hold the bankruptcy estate

liable for the scheduled debt."  *In re Glick*, 136 B.R. 654, 657 (Bankr. W.D. Va. 1991); *see also

In re Carmelo Bambace, Inc.*, 134 B.R. 125, 129 (Bankr. S.D.N.Y. 1991) (an informal proof of

claim must "clearly elucidate" the creditor's "intent to hold the debtor liable").  Courts have held

that the listing of a contingent, disputed, unliquidated claim on the debtor's schedules cannot

qualify as an informal proof of claim.  *In re L.F. Rothschild Holdings, Inc.*, 143 B.R. 335, 336-37

(S.D.N.Y. 1992); *In re Dove House, Inc.*, 233 B.R. 230, 232 (Bankr. D. Conn. 1999).  Where a

creditor has intentionally elected not to file a proof of claim, it cannot later seek to establish an

informal proof of claim. *Houbigant, Inc. v. ACB Mercantile (In re Houbigant, Inc.)*, 190 B.R.

185, 188 (Bankr. S.D.N.Y. 1995) (such a creditor "cannot have it both ways. Equity mandates

that it be bound by its tactical decision").

        27.     First, it would be improper to base an informal proof of claim on a filing

from the District Court Action because the District Court Action was improperly commenced

and was remanded to the Prior State Court Action; the Prior State Court Action had already been

dismissed with prejudice on statute of limitations grounds.[3] Furthermore, the Pierce County

Superior Court denied all of the Tullises' various attempts to reinstate the Prior State Court

Action. Bankruptcy courts may not reopen a case that is dismissed on statute of limitations

grounds where applicable state law affords the applicable state judgment res judicata effect. *In*

*re Delafield 246 Corp.*, 368 B.R. 285, 292 (Bankr. S.D.N.Y. 2007) ("Once a plaintiff has entered

the state court system, she is bound by the preclusion rules governing that system, and the federal

courts in turn must respect the finality of the judgments that issue from the state courts.")

(quoting *Bray v. N.Y. Life Ins.,* 851 F.2d 60, 62 (2d Cir. 1988)). A dismissal with prejudice, even

where the dismissal is based on a statute of limitations grounds, meets the res judicata

requirements. *See Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 228 (1995); *Goulsby v.*

*Waddington*, C07-5139 RBL/KLS, 2008 WL 2996999, at *5 (W.D. Wash. Aug. 1, 2008);

*Langdon v. Cy. of Columbia*, 98-CV-173, 1999 WL 504911 (N.D.N.Y. July 14, 1999).

        28.     Second, the copy of the District Court Complaint filed with this Court on

June 16, 2009 (ECF No. 1977) cannot constitute a valid informal proof of claim because it does

not assert or clearly elucidate an intent to share in a distribution of the estate's assets. *See In re*

---

[3] For the same reason, the assertion of any informal proof of claim would be futile as a court of competent
jurisdiction has already disposed of the claim or statute of limitation grounds.

*Carmelo Bambace, Inc.*, 134 B.R. at 129.  Rather, it merely puts the Debtors on notice of the

District Court Action and mere notice of the existence of a cause of action is insufficient to

constitute an informal proof of claim.  *See In re Int'l Horizons, Inc.*, 751 F.2d at 1217.

29.     Third, the May 20, 2011 Filing and the Tullises' filings with this Court

on August 5, 2011 and October 6, 2011, do not meet the standard for informal proofs of claim

because they were filed after the Bar Date and similarly do not demonstrate an intent to share in

a distribution of the estate's assets.  *See In re Enron Corp.*, 370 B.R. at 99.  Indeed, the May 20,

2011 Filing specifically disavows any intent to pursue a claim in these chapter 11 cases in that it

states that Weil "recently informed Plaintiffs to send Plaintiffs Claim to the United States

Bankruptcy Court officiating Judge . . . Plaintiffs have a law suit commenced against the Above

mentioned DEFENDANTS and will not surrender the case until it properly financially resolved."

(sic)  (May 20, 2011 Filing at 2:16 – 19.)  As noted above, in a similar case in which a creditor

intentionally failed to file a proof of claim to avoid subjecting itself to the claims allowance

process of the bankruptcy court, this Court held that the creditor's subsequent attempt to

establish an informal proof of claim must be denied because the creditor "cannot have it both

ways.  Equity mandates that it be bound by its tactical decision."  *In re Houbigant, Inc.*, 190 B.R.

at 188.  Here, the Tullises have admittedly refused to participate in the claims process despite

having actual notice of these chapter 11 cases and notice of the Bar Date, and therefore, they

must be bound by their tactical decisions and cannot now claim an informal proof of claim

against the Debtors' estates.

## Notice

30.     Notice of this Motion has been provided to the Tullises and parties in

interest in accordance with the Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R.

Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated May 5,

2011 (ECF No. 10183).  The Debtors and the GUC Trust submit that such notice is sufficient and

no other or further notice need be provided.

    31.  No previous request for the relief sought herein has been made by the

Debtors or the GUC Trust to this or any other Court.

**Conclusion**

    WHEREFORE the Debtors and the GUC Trust respectfully request entry of an

order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
   December 6, 2011

          /s/ Joseph H. Smolinsky
          Harvey R. Miller
          Stephen Karotkin
          Joseph H. Smolinsky

          WEIL, GOTSHAL & MANGES LLP
          767 Fifth Avenue
          New York, New York 10153
          Telephone: (212) 310-8000
          Facsimile: (212) 310-8007

          Attorneys for Debtors
          and Post-Effective Date Debtors and Motors
          Liquidation Company GUC Trust

## EXHIBIT A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                         :
In re                                    :          **Chapter 11 Case No.**
                                         :
**MOTORS LIQUIDATION COMPANY**, *et al.*, :          **09-50026 (REG)**
        **f/k/a General Motors Corp.**, *et al.*   :
                                         :
                **Debtors.**             :          **(Jointly Administered)**
                                         :
---------------------------------------------------------------x

**ORDER PURSUANT TO 11 U.S.C. §§ 105(a)**
**AND 1142(b) AND FED. R. BANKR. P. 7012(B) AND 9014(C)**
**(I) DIRECTING THE TULLISES TO DISMISS THE DEBTORS AND**
**THEIR ATTORNEYS FROM PENDING ACTION WITH PREJUDICE; AND**
**(II) ENFORCING PRIOR ORDERS OF**
**THIS COURT BY ENJOINING THE TULLISES**
**FROM FURTHER ACTION AGAINST THE DEBTORS,**
**POST-EFFECTIVE DATE DEBTORS, MOTORS LIQUIDATION**
**COMPANY GUC TRUST, AND THEIR OFFICERS AND PROFESSIONALS**

Upon the Motion, dated December 6, 2011 (the "**Motion**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as post-

effective date debtors (collectively, the "**Debtors**") and Motors Liquidation Company GUC

Trust (the "**GUC Trust**"), pursuant to sections 105(a) and 1142(b) of title 11, United States

Code (the "**Bankruptcy Code**") and Rules 7012(b) and 9014(c) of the Federal Rules of

Bankruptcy Procedures (the "**Bankruptcy Rules**"), for entry of an order (i) directing Clinton and

Margaret Tullis (the **"Tullises"**) to dismiss the Debtors and the Weil Defendants from the

Pending Action with prejudice; and (ii) enforcing prior orders of this Court by enjoining the

Tullises from further action against the Debtors, the GUC Trust, and their officers and

---
[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

professionals, all as more fully described in the Motion; and due and proper notice of the Motion

having been provided, and it appearing that no other or further notice need be provided; and the

Court having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates, creditors, the GUC Trust and all parties in interest and that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that in consideration of, among other things, the automatic stay

created by section 362 of the Bankruptcy Code, Sections 10.7 and 12.6 of the Plan, and this

Court's Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(b) and (b) of

the Bankruptcy Code and Rule 3020 of the Federal Rules of  Bankruptcy Procedure Confirming

Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9941), the Tullises are (i) directed to

dismiss the Debtors and the Weil Defendants from the Pending Action forthwith; and (ii)

enjoined from taking further action against the Debtors, the GUC Trust, and their officers and

professionals in any forum, without further leave of this Court; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
          [_____], 2011

_____
United States Bankruptcy Judge

**EXHIBIT B**

Filed
4/4/08

HON. K.A. VAN DOORNINCK

FILED
IN OPEN COURT
DEPT 20

APR 0 4 2008

PIERCE COUNTY, Clerk
By
DEPUTY

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF PIERCE

CLINTON M. TULLIS and MARGARET L.
TULLIS and their Palimony Community
comprised thereof;

              Pro Se-Plaintiffs,

    vs.

GENERAL MOTORS CORPORATION and
CORNFORTH CAMPBELL Agency-
Dealership,

              Defendants.

NO.   08-2-04425-0

ORDER GRANTING
DEFENDANTS' MOTION TO
DISMISS PURSUANT TO
CR 12(b)(6)

**Clerk's Action Required**

THIS MATTER has come on for consideration by the undersigned judge of the above-entitled court on Defendant General Motors Corporation's Motion to Dismiss pursuant to CR 12(b)(6). Defendant Cornforth-Campbell Motors, Inc. joined in this motion to dismiss. The Court has heard argument from the parties, and considered the following written submissions:

    1.    Defendant General Motors Corporation's Motion to Dismiss.

    2.    Defendant Cornforth Campbell Motors, Inc.'s Joinder in Defendant GMC's CR 12(b)(6) Motion to Dismiss.

    3.    *Pro Se* Plaintiffs Amended Brief to Deny Defendants Motion to Dismiss and Motions This Case to Continue Through a Grand Jury Trial.

ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS PURSUANT TO CR 12(b)(6) - 1

LAW OFFICE OF WILLIAM J. O'BRIEN
999 Third Avenue, Suite 805
Seattle, WA 98104
Telephone: (206) 515-4800/ Fax: (206) 515-4848

4.    *Pro Se* Plaintiffs' Complaint and Cause of Action, including the exhibits thereto, filed January 17, 2008.

Plus the following additional submissions:

**FILED**
IN OPEN COURT
DEPT 20

**APR 0 4 2008**

PIERCE COUNTY, Clerk
By_____
DEPUTY

The Court now deems itself fully advised. Now, therefore,

The Court finds that *pro se* plaintiffs' asserted claims for damages in this matter relate to damages allegedly suffered as a result of a motor vehicle accident that occurred on or about July 18, 2004. The Court further finds that pro se plaintiffs' claims against defendants for damages proximately caused by this motor vehicle collision are barred by the applicable statute of limitations, which expired on or about July 18, 2007. Plaintiffs did not file the instant action until January 17, 2008. Based upon these findings, it is therefore,

ORDERED that the joint motion to dismiss filed by defendants be and hereby is GRANTED. All claims against defendant General Motors Corporation and Cornforth-Campbell Motors, Inc. (named as "Cornforth-Campbell Dealership" in *pro se* plaintiffs' Complaint) in this matter are hereby dismissed with prejudice.

DONE IN OPEN COURT this ___4ᵗʰ___ day of April 2008.

/s/
_____
Kitty-Ann van Doorninck
Hon. Kitty-Ann van Doorninck
Pierce County Superior Court Judge

ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS PURSUANT TO CR 12(b)(6) - 2

LAW OFFICE OF WILLIAM J. O'BRIEN
999 Third Avenue, Suite 805
Seattle, WA 98104
Telephone: (206) 515-4800/ Fax: (206) 515-4848

1
2  **Presented by:**

3  LAW OFFICE OF WILLIAM J. O'BRIEN

4

5  By: /s/ JJ Hutson
6       J.J. Hutson, WSBA No. 16328
     Attorneys for Defendant
7    Cornforth-Campbell Motors, Inc.

8  **Copy received; approved as to form;**
   **notice of presentation waived:**
9
   MARTIN, BISCHOFF, TEMPLETON,
10   LANGSLET & HOFFMAN, LLP

11

12  By:      /s/
13       Mary-Ann S. Rayburn, WSBA No. 19647
     Attorneys for Defendant
14   General Motors Corporation

15

16

17

18  By: DID NOT WANT TO SIGN
19       Clinton M. Tullis,
         Plaintiff *pro se*

20

21

22

23

24

25

ORDER GRANTING DEFENDANTS' MOTION TO        LAW OFFICE OF WILLIAM J. O'BRIEN
DISMISS PURSUANT TO CR 12(b)(6)  - 3              999 Third Avenue, Suite 805
                                                   Seattle, WA  98104
                                          Telephone:  (206) 515-4800/ Fax: (206) 515-4848

**EXHIBIT C**

1

2

3

4

5

6

7

8                              UNITED STATES DISTRICT COURT
                              WESTERN DISTRICT OF WASHINGTON
9                                         AT TACOMA

10

11    CLINTON M. TULLIS AND MARGARET
      L TULLIS and the palimony relationship              Case No.  C09-5352RJB
12    thereof Pro Se

13                       Plaintiff,                       ORDER REMANDING CASE TO
                                                          PIERCE COUNTY SUPERIOR
14               v.                                       COURT

15    GENERAL MOTORS CORPORATION and
16    CORNFORTH-CAMPBELL DEALERSHIP
      THEREOF,
17
                         Defendants.
18

19        This matter comes before the court upon review of the file.

20        On June 15, 2009, plaintiffs Clinton M. Tullis and Margaret L. Tullis filed a Complaint, stating that

21    "This case is removed from Pierce County Superior Court."  Dkt. 1-2.  An Application to Proceed *In*

22    *Forma Pauperis* was also filed, but was signed only by Mr. Tullis. Dkt. 1. The Complaint provided a case

23    number, 08-2-04425-0, apparently from the case that had been filed in Pierce County Superior Court.  Dkt.

24    1-2 at 1.

25        The complaint against defendants General Motors Corporation and Cornforth-Campbell Dealership

26    alleges that plaintiffs purchased an automobile from defendants on June 4, 2003, and were provided with a

27    service or warranty agreement.  It appears that plaintiffs allege that the automobile was defective, that the

28    service was defective, and that they were injured as a result.

ORDER
Page - 1

1    Cases may be removed to federal court pursuant to 28 U.S.C. § 1441.  However, only defendants

2    may remove civil cases filed in state court to federal court.  The removal provisions do not provide

3    plaintiffs, who have chosen their forum to request civil relief in the state courts, the opportunity to remove

4    those cases to federal court.  *American International Underwriters, (Philippines), Inc. v. Continental*

5    *Insurance Company*, 843 F.2d 1253, 1261 (9th Cir. 1988); *Oregon Egg Producers v. Andrew,* 458 F.2d

6    382, 383 (9th Cir. 1972).  This case should be remanded to Pierce County Superior Court.

7    Because this case should be remanded to state court, the Application to Proceed *In Forma*

8    *Pauperis* should be denied.

9    Therefore, it is hereby

10    **ORDERED** that this case is **REMANDED to Pierce County Superior Court**.  The Application

11    to Proceed *In Forma Pauperis* (Dkt. 1) is **DENIED**.

12    The Clerk of the Court is directed to send uncertified copies of this Order to all counsel of record

13    and to any party appearing *pro se* at said party's last known address. The Clerk is further directed to send

14    certified copies of this order to the Clerk of the Court for Pierce County Superior Court.

15    DATED this 19th day of June, 2009.

16

17

18    ROBERT J. BRYAN
       United States District Judge

19

20

21

22

23

24

25

26

27

28

ORDER
Page - 2

**EXHIBIT D**

| Name | Address1 | Address2 | Address3 | Address4 | City | State | Zip |
|------|----------|----------|----------|----------|------|-------|-----|
| TULISH FREDERICK (ESTATE OF) (510191) | ANGELOS PETER G LAW OFFICES OF | 100 PENN SQUARE EAST , THE WANAMAKER BUILDING | | | PHILADELPHIA | PA | 19107 |
| TULKKI, BRIAN M | 7192 WIGGINS RD | | | | HOWELL | MI | 48855-9256 |
| TULKKI, DONALD W | 4140 W COMMERCE RD | | | | MILFORD | MI | 48380-3116 |
| TULKKI, DONALD WILLIAM | 4140 W COMMERCE RD | | | | MILFORD | MI | 48380-3116 |
| TULL JR, DONALD R | 712 HALLELUJAH TRL | | | | KELLER | TX | 76248-4203 |
| TULL JR, DONALD RICHARD | 712 HALLELUJAH TRL | | | | KELLER | TX | 76248-4203 |
| TULL SAM | 6500 N SHILOH RD | | | | CORINTH | MS | 38834-9657 |
| TULL, CARMAN M | 1050 TOM OSBORNE RD | | | | COLUMBIA | TN | 38401-6738 |
| TULL, CLORA E | 6931 GOLDENGATE DR APT 602 | | | | CINCINNATI | OH | 45244-4127 |
| TULL, DAISY C | 1375 MASTER ST APT 207 | | | | CORBIN | KY | 40701-2510 |
| TULL, DELOS L | 332 OAK LEAF CIR | | | | HOOVER | AL | 35244-4321 |
| TULL, FRANCIS O | 3713 ALDON LN | | | | FLINT | MI | 48506-2692 |
| TULL, GODFREY C | C/O CROMER | 870 COLUMBUS AVE AP 3H | | | NEW YORK | NY | 10025 |
| TULL, JOHN J | 2623 RIVER RD | | | | ATCHISON | KS | 66002-5132 |
| TULL, JOYCE A | 1230 JOHN ST | | | | ATCHISON | KS | 66002-2675 |
| TULL, PAUL L | 1044 HCR 2203 | | | | AQUILLA | TX | 76622-2624 |
| TULL, ROBERT G | 1018 ALMOND DR | | | | MANSFIELD | TX | 76063-2910 |
| TULL, ROBERT GARY | 1018 ALMOND DR | | | | MANSFIELD | TX | 76063-2910 |
| TULL, ROBERT L | 26626 S TRURO DR | | | | SUN LAKES | AZ | 85248-7141 |
| TULL, THOMAS S | PO BOX 46070 | | | | MOUNT CLEMENS | MI | 48046-6070 |
| TULL, VIRGINIA B | 9341 DOWNING RD | | | | BIRCH RUN | MI | 48415-9734 |
| TULL, WILLIAM R | 444 LEISURE PL | | | | LAKELAND | FL | 33801-3365 |
| TULL, WILLIAM RAY | 444 LEISURE PLACE | | | | LAKELAND | FL | 33801-3365 |
| TULLAHOMA CITY | PO BOX 807 | | | | TULLAHOMA | TN | 37388-0807 |
| TULLAR JR, JAMES W | PO BOX 210112 | | | | AUBURN HILLS | MI | 48321-0112 |
| TULLAR JR, JAMES WILLIAM | PO BOX 210112 | | | | AUBURN HILLS | MI | 48321-0112 |
| TULLAR, CINDY L | 11 BRIXTON LN | | | | CROSSVILLE | TN | 38558-2711 |
| TULLAR, FRANKLIN A | 6788 HIGHLAND DR | | | | LAINGSBURG | MI | 48848-9231 |
| TULLAR, FRANKLIN ANTHONY | 6788 HIGHLAND DR | | | | LAINGSBURG | MI | 48848-9231 |
| TULLAR, HARRY J | 923 W DIVISION ST | | | | BOYNE CITY | MI | 49712-9733 |
| TULLAR, JESSIE E | 1569 N HICKORY | | | | OWOSSO | MI | 48867-9489 |
| TULLAR, MARK T | 11 BRIXTON LN | | | | CROSSVILLE | TN | 38558-2711 |
| TULLAR, RICHARD B | 507 N VASSAR DR | | | | DURAND | MI | 48429-1380 |
| TULLAR, ROBERT J | 210 ROOSEVELT AVE | | | | JANESVILLE | WI | 53546-3204 |
| TULLAR, THOMAS S | 7591 JONQUIL CT | | | | BRIGHTON | MI | 48116-6206 |
| TULLEDGE THOMAS | 630 S FRONTAGE RD | | | | NIPOMO | CA | 93444-9148 |
| TULLER RIDGE CORPORATE CTR | C\O MATHEWS CLICK BAUMAN INC | 50 W BROAD ST 28TH FL | | | COLUMBUS | OH | 43215 |
| TULLER ROBERT | 1006 RAM AVE | | | | FORT MORGAN | CO | 80701-3890 |
| TULLER, DANIEL G | 962 NANETTE ST | | | | TAWAS CITY | MI | 48763-9310 |
| TULLER, DOROTHY H | 331 SYCAMORE VLY | | | | MIAMISBURG | OH | 45342-5732 |
| TULLER, IDA G | 229 JACKSON ST | | | | CLINTWOOD | VA | 24228-7700 |
| TULLER, MARYMARGARET S | PO BOX 66017 | | | | NEWPORT | MI | 48166 |
| TULLETT, BRIAN H | 15535 OAK ST | | | | ALLENTON | MI | 48002-3514 |
| TULLEY BUICK-PONTIAC COMPANY, INC. | JOHN TULLEY | 147 DANIEL WEBSTER HWY | | | NASHUA | NH | 03060-5224 |
| TULLEY BUICK-PONTIAC-GMC TRUCK-BMW | 147 DANIEL WEBSTER HWY | | | | NASHUA | NH | 03060-5224 |
| TULLEY, JAMES DONALD | 103A LENGENDARY PLACE | | | | HOT SPRINGS | AR | 71913-6957 |
| TULLGREN, MARTHA | 123 E CENTRAL AVE | | | | SAN GABRIEL | CA | 91776-3005 |
| TULLIO, CYNTHIA D | 4275 TAYLOR CT | | | | BRUNSWICK | OH | 44212-2179 |
| TULLIO, EUDOXIE A | 7408 PINEHURST CT | | | | CLEVELAND | OH | 44130-5533 |
| TULLIS RALPH (459408) | GLASSER AND GLASSER | CROWN CENTER, 580 EAST MAIN STREET, SUITE 600 | | | NORFOLK | VA | 23510 |
| TULLIS, CLINTON | 16300 184TH AVE SE | | | | RENTON | WA | 98058-0903 |
| TULLIS, DAVID R | RT 5 BOX 9582 POINT DR | | | | MONTICELLO | KY | 42633 |
| TULLIS, DONNIS J | 1266 OLD FOUNTAIN RD | | | | LAWRENCEVILLE | GA | 30043-3917 |

| Name | Address1 | Address2 | Address3 | Address4 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| TULLIS, GARY D | 12871 TABEAU CT | | | | PINE GROVE | CA | 95665-9652 |
| TULLIS, GLADSTON A | 5081 BAY CREEK CHURCH RD | | | | LOGANVILLE | GA | 30052-3568 |
| TULLIS, J D | 1520 S STATE ROUTE 721 | | | | LAURA | OH | 45337-9784 |
| TULLIS, JANE W | 6358 S HUNTERS RUN | | | | PENDLETON | IN | 46064-8709 |
| TULLIS, JOHN R | 2924 SHETLAND RD | | | | TOLEDO | OH | 43617-1522 |
| TULLIS, KARL K | 235 WALNUT ST | | | | WASHINGTONVILLE | OH | 44490-9737 |
| TULLIS, KENNETH L | 6358 S HUNTERS RUN | | | | PENDLETON | IN | 46064-8709 |
| TULLIS, MARGARET | 16300 184TH AVE SE | | | | RENTON | WA | 98058-0903 |
| TULLIS, RICHARD | 1218 BROOKSIDE AVE | | | | UNION | NJ | 07083-6228 |
| TULLIS, WAYMON D | 5120 BAY CREEK CHURCH RD | | | | LOGANVILLE | GA | 30052-3570 |
| TULLIS, WILLIAM J | 114 BITTERSWEET LN | | | | PORTLAND | IN | 47371-9292 |
| TULLIUS, MARIE | 6677 ELLEN DR | | | | ROSCOMMON | MI | 48653-9533 |
| TULLIUS, ROBERT | 2501 CEDAR LANE CT | | | | HARTLAND | MI | 48353-3201 |
| TULLOCH JR., QUINTIN | # 410 | 1962 EAST 73RD STREET | | | CHICAGO | IL | 60649-2902 |
| TULLOCH SR., QUINTIN L | 906 JOLIET ROAD | | | | LA GRANGE HIGHLANDS | IL | 60525 |
| TULLOCH, CARLTON Q. | 302 HERBERT ST | | | | SYRACUSE | NY | 13208-2908 |
| TULLOCH, JAMES P | 4 ORBIT LN | | | | SAN PEDRO | CA | 90732-4461 |
| TULLOCH, JOAN M | 6404 MAINSAIL CT | | | | ORLANDO | FL | 32807-5931 |
| TULLOCK, GRANVILLE E | 1635 RUE JEANETTE | | | | BONNE TERRE | MO | 63628-9237 |
| TULLOCK, KAREN S | 165 CEDAR ST | | | | WETHERSFIELD | CT | 06109-1407 |
| TULLOCK, ROZETTA J | 21945 HWY N | | | | WAVERLY | MO | 64096-9719 |
| TULLOS VINCENT | 3905 SHELBY CT | | | | WATERFORD | MI | 48328-1269 |
| TULLOS, ARCHIE L | 2425 BANCROFT ST | | | | SAGINAW | MI | 48601-1514 |
| TULLOS, JEFFREY L | 3271 ELMERS DR | | | | SAGINAW | MI | 48601-6916 |
| TULLOS, PATRICIA K | 2425 BANCROFT ST | | | | SAGINAW | MI | 48601-1514 |
| TULLOS, RAY B | 3271 ELMERS DR | | | | SAGINAW | MI | 48601-6916 |
| TULLOS, SHIRLEY J | 3271 ELMERS DR | | | | SAGINAW | MI | 48601-6916 |
| TULLOS, THEOJUANA | 49367 CLINTON TERRACE DR | | | | MACOMB | MI | 48044-9704 |
| TULLOS, THEOJUANA M | 49367 CLINTON TERRACE DR | | | | MACOMB | MI | 48044-9704 |
| TULLOS, TORRI L | 49367 CLINTON TERRACE DR | | | | MACOMB | MI | 48044-9704 |
| TULLOS, TRAVIS F | 577 VZCR 1208 | | | | CANTON | TX | 75103 |
| TULLOS, VERNON R | 437 CHARLESTON LN | | | | LAWRENCEVILLE | GA | 30045-5607 |
| TULLOUS JR, FERMAN L | 271 HOLLY RD | | | | FRANKLIN | TX | 77856-5633 |
| TULLSEN, B R | 17271 N 87TH AVE APT 1052 | | | | PEORIA | AZ | 85382-2781 |
| TULLY CLOUD | 6048 TURNER HILL RD | | | | WOODSTOCK | GA | 30188-1984 |
| TULLY III, JOHN J | 2563 COUNTRY SIDE DR | | | | FLEMING ISLAND | FL | 32003-4972 |
| TULLY JAMES (470667) | CLIMACO LEFKOWITZ PECA WILCOX & GAROFOLI | 1228 EUCLID AVE , HALLE BLDG 9TH FL | | | CLEVELAND | OH | 44115 |
| TULLY LAWRENCE R (452781) | WEITZ & LUXENBERG P.C. | 180 MAIDEN LANE | | | NEW YORK | NY | 10038 |
| TULLY MICHAEL (448337) | BEVAN & ASSOCIATES | 10360 NORTHFIELD ROAD , BEVAN PROFESSIONAL BLDG | | | NORTHFIELD | OH | 44067 |
| TULLY MICHAEL (448338) | BEVAN & ASSOCIATES | 10360 NORTHFIELD ROAD , BEVAN PROFESSIONAL BLDG | | | NORTHFIELD | OH | 44067 |
| TULLY SULLIVAN | 3203 DORITHAN RD | | | | BALTIMORE | MD | 21215-7501 |
| TULLY SUSAN | 7437 A1A S | | | | SAINT AUGUSTINE | FL | 32080-8202 |
| TULLY THOMAS | TULLY, MELISA | KIMMEL & SILVERMAN PC | 1930 E MARLTON PIKE SUITE Q29 | | CHERRY HILL | NJ | 08003 |
| TULLY THOMAS | TULLY, THOMAS | 1930 E MARLTON PIKE SUITE Q29 | | | CHERRY HILL | NJ | 08003 |
| TULLY THOMAS (431476) | THALER STEVEN | 115 BROADWAY FRNT 3 | | | NEW YORK | NY | 10006-1638 |
| TULLY, ALBERT M | 5464 NORTHWAY RD | | | | PLEASANTON | CA | 94566-5447 |
| TULLY, BLANCHE | APT 214 | 5000 WEST 75TH AVENUE | | | WESTMINSTER | CO | 80030-4655 |
| TULLY, EDWARD J | 24619 SCOTT BLVD | | | | OLMSTED FALLS | OH | 44138-3804 |
| TULLY, EDWARD J | 414 GARDENIA AVE | | | | ROYAL OAK | MI | 48067-3647 |
| TULLY, GORDON E | APT 214 | 5000 WEST 75TH AVENUE | | | WESTMINSTER | CO | 80030-4655 |
| TULLY, JANE K | 1302 CHIMNEY ROCK DR | | | | ROANOKE | TX | 76262-9313 |
| TULLY, JUDITH A | 7374 OAKSTONE DR | | | | CLARKSTON | MI | 48348-4761 |

**<u>EXHIBIT E</u>**

FILED

10 JUL 16 PM 3:27

KING COUNTY
SUPERIOR COURT CLERK
KENT, WA

IN THE KING COUNTY SUPERIOR COURT OF THE STATE OF WASHINGTON,
AT REGIONAL JUSTICE CENTER IN CITY OF KENT, 620 WEST JAMES STREET 98032

CLNTON M. TULLS AND MARGARET L. TULLIS
and the palimony relationship thereof as Pro Se
Plaintiffs

No. 10-2-25699-7 KNT

SUMMONS

GENERAL MOTORS CORPORATION and RECENT
CORNFORTH-CAMPBELL AGENCY DEALERSHIP
THEREOF                              Defendants

I.
SUMMONS

**TO THE DEFENDANTS:** GENERAL MOTORS CORPORATIION and AGENCY OF CORNFORTH
CAMPBELL A lawsuit has been commenced against you in the above entitled court by Clinton and
Margaret Tullis plaintiffs. Plaintiffs claim is stated in the written complaint to each, a copy of which has
been served upon you along with this summons as (No.1.) and Cornforth Campbell with this complaint
and summons as (No.2.). Two copies of Summons and complaint will be delivered to each.

**In order to defend against this law suit, you must respond to the complaint by stating your
defense in writing, and by each Defendant serving a copy upon the parties signing this summons:**
( No 1.) within 60 days For out of state residents) after the service of this summons, excluding the day of
service;
and (No.2.) The former Agency at the city of Puyallup, located in the State of Washington, shall have 20
days after the service of this summons excluding day of service, to answer.

Each party must answer or a default Judgment may be delivered against you without notice. A default
judgment is one where Plaintiff is entitled to what he asks for because you have not responded. If you
serve a notice of appearance on the undersigned person, you are entitled to notice before a default
judgment may be entered.

You may demand that the Plaintiffs file this lawsuit with the court. If you do so, the demand must be in
writing and must be served upon the persons signing this summons. Within 14 days after you serve the
demand, the plaintiff must file this lawsuit with the court, or the service upon you of this summons and
complaint will be void.

This Summons and Complaint shall be sent by certified mail, return receipt requested, addressed to
(No. 1.) General Motors Corporation Chairman of the Board, believed to be to be Mr. Ed Whittaker.
(No.2) Cornforth Campbell Agency last known address of 400-Valley Ave. NE, Puyallup, Washington
98032, and also delivered by the Pierce County Sheriff if proper address is found.

SUMMONS _1 of 1              [JUL 16 2010]    x  _Clinton M. Tullis_

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184th ave, S E Renton, WA. 98058-0903

FILED

10 JUL 16 PM 3: 27

KING COUNTY
SUPERIOR COURT CLERK
KENT. WA

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
IN AND FOR THE COUNTY OF KING

CLINTON M. TULLIS AND MARGARET L. TULLIS
and the palimony relationship thereof as Pro Se

Plaintiffs

**10-2-25699-7 KNT**

COMPLAINT

GENERAL MOTORS CORPORATION and RECENT
CORNFORTH-CAMPBELL AGENCY DEALERSHIP
THEREOF.

Defendants

## I.
### COMPLAINT

1.1. At all times material hereto, Pro-Se Plaintiffs/Complainants, Clinton M. Tullis and Margaret L. Tullis

for approximately " Fifty Six years" have been in total companionship inclusive of the last thirty years.

1.2. Plaintiffs have resided at 16300-184th Ave., SE, city of Renton, County of King, State of Washington,

zip code: 98058-0903 since October of 1991 and within the State of Washington since 1954.

1.3. The conspiring Defendants were believed to be, and therefore alleged to be, all doing business

and officially responsible of safety performance of new and used vehicles as a General Motors

Corporation Agency advertised as a GMC Mr. Good Wrench Dealership operated by Cornforth Campbell

recently ordered to vacate its dealership by General Motors Corporation and immediately closed its doors

at 400 Valley Avenue N.E.;  PO Box 537; city of Puyallup, County of Pierce, State of Washington, former

zip code: 9 8 3 71.

1.3a. Present location of the former General Motors Corporation Agency Dealership of Cornforth

Campbell personnel is presently unknown to Plaintiffs even though the property now has an Automobile

COMPLAINT _   !

Clinton M  Tullis and Margaret L  Tullis
and the palimony relationship thereof as ProSe
16300-184th ave, S E. Renton, WA. 98058-0903

Company doing business and the personnel and name is not a familiarity or a concern to this case. .

1.3b. The dual responsibility of the original Corporation and Agency is a responsibility of General Motors Corporation and has been the GMC responsibility from complicity, from the beginning and very similar in most of the States of the United States as GMC recently ordered several of its Agency's to close its relationship.

1.3c. The factor of responsibility of Corporation and Agency is a dual responsibility with the most serious policing and policy assurances are the responsibility of the Corporation relationship as expressed in Plaintiffs RCW's: (Rules of the Court in the State of Washington).

1.3d. The controlling, leading Responsible conspiring Defendants believed to be and therefore alleged to be General Motors Corporation, PO Box 33172 in the city of Detroit, State of Michigan 48232-5172. No.71-537248-740; Phone No. 1-866-790-5700. Certified Mail To be served to the Chairman of the Board, believed to presently be Mr. Ed Whittaker.

1.3e. Plaintiffs now properly and legally plan to have this case resolved in King County Superior Court of the State of Washington at the city of KENT, which is very much more convenient for plaintiffs than the long distance and busy highways to Tacoma, Washington

1.3f This Legal Case Action is filed with the Maleng Regional Justice Center Superior Court in the City of Kent, County of King, State of Washington, address of "620-West James Street, Kent, WA. 98032.

1.3g.The ridiculous untruths of Defendants former "Attorneys" briefs were bullying technique and their inappropriate designated Statute of limitations and lies of responsibility of parties of which legally allows Plaintiffs to file a law suit within ten years because of the crimes committed by the complicity between General Motors Corporation through its Agency of Cornforth-Campbell GMC Mr. Good Wrench.

**1.3h. Conspiracy: A combination of two or more persons, etc. to commit a criminal or unlawful act or to commit a lawful act by Criminal or Unlawful Means; or a Combination of two or more persons to accomplish an unlawful purpose, or some purpose not in itself unlawful by an unlawful means. 1.3i. Accessory: One who aids or contributes in a secondary way or assists in or contributes to crime as a subordinate. See 216So. 2d 829,831 The failure to report the commission of a crime of a felony is sometimes itself a crime. An accessory does acts which facilitate others in commission or attempted commission of Crime or avoid apprehension for a crime.**

**1.3j. COMPLICITY: Accomplice: An individual who voluntarily engages with another in the commission or attempted commission of a crime. See 165 N.E. 2d 814; One who is liable for the identical offense charged against the Defendant, See 233 p2d 347, Liability is shared.**

COMPLAINT - 2

**1.3k. Criminal Liability: of a Corporation: RCW 90.08.030; RCW. 9A.28.040: Criminal Conspiracy RCW 9A.28.020: Criminal attempt of Agent of Corporation: Class B. Felony when the crime attempted is a class A felony other than an offense listed in A of this subsection must be commenced within a "ten year" statute of limitations unless action on a State or Federal Judgment period is extended for an additional ten years.**

**1.3l. STATUTE OF LIMITATIONS: Ten Years and could extend for another ten years if needed.**

**1.3m. Criminal Negligence: A Person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the same situation.**

1.4. All acts stated to have been performed by the Agency or denied to be performed of or by the Defendants to Plaintiffs as complained of herein were committed by Employees and Leaders of the GMC Agency Dealership of Cornforth-Campbell, backed by GMC: Mr. Good-wrench advertisements and responsibility of General Motors Corporation.

**1.4a. Vicarious Liability: imputation of Liability of one person for actions of another.**

1.5. All of the above acts along with the following in this brief; applied to various notifications of deliberate neglect and or consequences of which, were performed and jointly responsible by the Defendants.

1.5a. Plaintiffs have *incorporated exhibits with the Briefs* that make declarations and assurances for perfected conditions of Plaintiffs Suburban purchased from the GMC Mr. Good Wrench affiliated Agency of Cornforth Campbell and those declarations and assurances were ignored; absolute conspired lies, not becoming to supervision or affiliates inclusive of General Motors Corporation.

1.6. All acts of Plaintiffs/Complainants shall be referred to by the use of either phrase, of which we will primarily apply singularly as Plaintiffs from hereon.

1.6a. All highlighted references to Plaintiffs designated and numbered Complaints in this brief, etc. are facts of applicable laws resulting and recently updated by Plaintiffs research at the King County Regional Justice Center Library, located in the city of Kent, Washington. All of which have been thoroughly retained or updated through discovery of many referances and assurances of reliable annual application of research completed in the year of 2010 by Washington State Legal Officials. There is many RCWs based on the Penalties to be relied upon for Defendants Criminal assisted Acts.

1.6b.The terms as produced and interjected to Plaintiffs by Defendants, are high-lighted in this brief, primarily intended to implement the benefit to a jury for the introduction to and fully qualifying the

COMPLAINT – 3

Criminal Infractions of Defendants in this case.        **Infractions: Breach, Violations**

1.6c.Thus, Defendants have created a series of Special Proceeding injuries, resulting in Unlimited

physical, hearing and mental Damages to Plaintiffs that cannot be denied.

II.
## DEFENDANTS DECEPTIVE PRACTICES

2.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1 through 1.6c. herein.

2.2. Defendants Cornforth-Campbell; An affiliated General Motors Corporation Agency-Dealership,

negotiated a sale  to Plaintiff's on June 4, 2003, of a 1999 GMC 4 wheel drive Suburban.

2.3.The GMC Corporation, Agency Dealership of Cornforth-Campbell afforded Plaintiffs with: A General

Motors Corporation High-lighted Advertisement of GMC MR. Good-Wrench, as a declaration of reliable

Service, to be provided by the Agency personnel. **Subornation of perjury.  Exhibit # 1: {GMC Mr.**
**GOOD WRENCH]**

**2.3a. Perjury: Any False Swearing in a legal Instrument or legal setting that the Suborner knew or**
**should have known that such oath or testimony would be false.        A CRIMINAL ACT**

2.3b.This was an Egregious, Erroneously and Conversely implied sales pitch with questionable power of

which the Agency: Cornforth-Campbell denied responsibility to comply. **To Define: See  # 2.7a below.**

2.3c.This created Injury's to Plaintiffs that were performed or lacked performance as to be brought forward

and explained within this Brief of Plaintiffs; verified by available exhibits and high-lighted copies of

various Rules as explained within the above mentioned Law Book Dictionary's in compliance with rules

afforded Plaintiffs by West Law on the 2007-2008 Rules of Courts within the State of Washington.

2.3d. Laws applicable to Defendants Performance and Criminal neglect.

2.4. Defendant Cornforth - Campbell issued an assurance as GMC with a logo heading of Nice is Better

and as a "Quality Pre-owned Vehicle" with following assurances: 1.This Vehicle Has Passed A Rigid

Inspection; 2. Has Been Reconditioned To The Highest Standards.    **Fraud in Fact:  Exhibit # 2**
**& Exhibit # 9**
**2.4a. Fraud In Fact; Positive Fraud: Fraud: Willful Malicious Conduct: Cannot take bankruptcy or**
**find other means to hide values. Fraud embraces all the human ingenuity one can devise to get**
**an advantage over another.**

2.5.Defendants perpetrated a Warranty assurance of vehicle performance to care and cure of mechanical

deficiencies for two thousand (2,000) miles or sixty (60) days from date of the purchase signed thereof.

**2.5a. Abuse of Process: Fraud: Intentional deception resulting in injury to another and Derivative**
**Tort: An action in Tort based on the criminal conduct of defendants which resulted in injury's to**

COMPLAINT − 4

Clinton M. Tullis and Margaret L. Tullis
and the palimony relationship thereof as ProSe
16300-184th ave, S E. Renton, WA. 98058-0903

Plaintiffs, and for which injury's Plaintiffs seek compensation. The term also applies to liability

imposed on the principal for wrongs committed by his agent.

2.5b. Defendants positively breached their Warranty and commitment disclosures of perfected conditions

of the Suburban in general                                              **Exhibit # 2**

2.6. Defendants were informed and ignored the vehicle was to be used pulling a Recreational Trailer, 30

foot plus in length, owned by Plaintiffs, that weighed approximately 7,000 pounds (31/2 tons) unloaded.

2.7. The Defendants egregiously perpetrated to Plaintiff's of the GMC Suburban 4 wheel drive vehicle

being in excellent, stable condition throughout. **Deceit: The Tort of Fraudulent Representation.**

**2.7a. Egregious = Flagrant, Remarkably Bad Behaviour; Perpetrated = To Commit Something Bad, Especially Crime; Conversely = Wrongful Intent which can result in Punitive Damages. Erroneous = Wrong, Incorrect, Inaccurate.**

2.8. Defendants convinced Plaintiffs, if any mechanical problems should arise, the problems would be

cured under the existing mileage warranty of which defendants bypassed in denial of inadequacies.

2.8a. **Continued Abuse of Process and Breach of Warranty.**                **Exhibit # 2**

**2.9. The Suburban was not yet equipped with a differentiator: (A Transducer or circuit whose output is Proportional to the rate of change of the input signal). An electronic brake control unit used to activate the Trailer brakes in unison with each application of the towing vehicle hydraulic brakes. This unit is mounted on the bottom inside edge of a towing vehicle dash board to the drivers right side for occasional testing and adjustment of trailer brakes response.**

2.9a. Cornforth - Campbell Agency Purchased and installed an Electronic Trailer Brake Control,

(Differentiator) onto the Dashboard of the Plaintiffs Suburban; and egregiously **convincing** Plaintiffs to

believe the vehicle was conversely ready for Plaintiffs intended usage; thus binding Plaintiffs agreement

to close the purchase of the Suburban vehicle.     **Despotism: A Criminal abuse of Discretion.**

**2,9a. False Swearing: Statement of What One Does Not Know to Be True. Every Unqualified Statement of What One Does Know to Be True Is Equivalent To That He Knows To Be False.**

2.9b. An Official of Cornforth-Campbell partially instructed Plaintiff on the use of the Differentiator in

coordinating the Trailer brakes in unison with the application of the Suburban Hydraulic Brakes.

2.10. The Cornforth-Campbell GMC Salesman and Office personnel implied to Plaintiffs that the Agency

did not have a manual for the new Differentiator, nor the GMC Suburban and that they had prepared an

order to acquire the respective manuals to be readily delivered in the very near future. **Moral Certainty**

2.10a. Plaintiffs later learned from a Recreational Trailer Dealership that the Differentiator should come

COMPLAINT - 5

from the factory with a manual explaining the use and comparison of capabilities of each differentiator.

**Exhibit # 3**

2.11. Plaintiffs made many trips in Vain, to Cornforth Campbell Agency to attempt to get some of the GMC Suburban mechanical problems corrected and to also get the manuals.

2.11a. No repairs were ever corrected and the Agency implied nothing but excuses to Defendants about the manuals being on order of which Plaintiffs have not received to this day. .

2.11b1.If Plaintiffs would have received the book on the model of Differentiator placed into the Suburban by Cornforth-Campbell; Plaintiffs would not have accepted the purchase of the Suburban until a reliable Differentiator was installed.

2.11b2. Plaintiffs would not have any need to pursue this cause of action for injuries.

2.11b3.The subject installation, attached logo was "Activator" of which Plaintiffs have been advised was the name given to the first manufacturing of a trailer brake control, many years prior to Plaintiffs purchase of the GMC Suburban.

2.11b4.Plaintiffs would remain a proud owner of their 1999 Suburban purchased from Cornforth Campbell

2.11c. This may have also negated Plaintiffs, in the trust of Cornforth-Campbell Vehicles, as has definitely been interposed as of date of discovery of the inadequacy of performance in mechanical repairs of the Suburban and of the subject limited brake control not being classified as a differentiator; that was the unnecessary cause of serious injury's and a very dangerous collision that could very well have included many others as will be accentuated within this brief.

**2.11d. Constructive Fraud: The Defendants Constructive Fraud, results when a fiduciary obligation is breached, despite of the motives or intent and gives cause to Exemplary Damages.**

2.12. Three times, a mechanics coordinator (boss), took a drive to test the Suburban brakes of which Plaintiff complained; was on occasion, pulling the Suburban to the left front on applying to slow down.

2.12a. Each time the coordinator stated he could not get any wrong movement from his brake application.

2.12b. This statement was disappointing and not acceptable to Plaintiffs continuing discovery's, after learning the true deficiencies bypassed, and hidden by Cornforth-Campbell Agency Dealership of GMC. of which will be exposed throughout this Brief.    **Defendants False Swearing**

2.13. The vehicle pitch to the left upon applying the brakes, was not, as **yet**, prominent, but occasionally

COMPLAINT —6

Chinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184ᵗʰ ave, S E. Renton, WA. 98058-0903

happened to Plaintiffs

2,14. On one occasion a mechanic, General Motors Corporation Mr. Good-Wrench was told by his

coordinator, to remove the left front wheel and show the Rotor, Caliper and pads to Plaintiff.

2.14a. The mechanic stated  he did not want to take the time to pull off  the right front wheel as he

declared to Plaintiff that the two front wheel assemblies were appropriately the same. **Wrong Intent.**

2.14b. As will be shown later under following paragraphs; Amid other brake deficiencies, the front rotors

· were improperly installed.

2.14b1. The Caliper Pins  were badly worn and not lubricated.                **See exhibit # 6**

2.14c. The mechanic conversely stated: It was one-heck of a job to unnecessarily pull off the back wheels.

2.14d. Plaintiff agreed that the left front rotor and pad did not look bad. The new pad was  deceiving.

2.14e. Unfortunately, Plaintiff had no comparison because of not being enabled to compare the right front

brake and thus could not deny the farce.

2.14f. The following definitions represent the total and purpose of the brakes assembly.

**The Calipers are the Cylinders holding the brake fluid that comes through filled brake lines from**
**a small tank full of reserve brake fluid.The pressure applied by a vehicle driver to the brake pedal,**
**forces the Calipers to press the pads that are attached to the Calipers and placed free on both**
**sides of the Solid Round Rotors which are Attached to the Vehicle Wheels. The pads grip the**
**rotors to slow down or stop the vehicle depending on the pressure applied by the Vehicle Driver.**
**(Often called Disk Brakes).**
_  **A shoe type brake system uses cylinders attached solidly to the axle instead of calipers.**

2.15. Cornforth-Campbell: Mr. Good Wrench mechanic explained that all the vehicles brakes were in good

shape and the entire vehicle had been thoroughly inspected or repaired to a condition of excellence.
**Perjury: False Swearing: Statement of what one does not know to be true: Every unqualified**
**statement of that which one does not know to be true is equivalent to that he knows to be false.**

2.15a1.  Plaintiff later found that the newly installed metallic pad on the left front of the Suburban was

attached to the floating caliper on the axle frame with badly worn pins and approximately 3/16ths of an

inch thinner rotor than the right front rotor and the Pins had not been lubricated.

2.15a2. This new metallic pad was disintegrating and dug chunks out of the left front rotor during  Plaintiffs

first trips of a few hundred miles to Idaho and then to the Oregon Coast in the summer month of July of

2003 and then to Spokane in the early spring of 2004 equaling about 1800 miles The left front brake was

really pulling hard left by then.

2.15a3. Prior to going to Spokane; Plaintiff had again appealed (the fourth time); to the shop supervisor for

COMPLAINT – 7

curing the Suburban brakes from pulling to the left on light or heavy application and was denied as was

confirmed by Number 2.15 above; The day Plaintiffs received the response from the shop mechanic.

2.15a4. Plaintiffs obtained a Chilton mechanics manual and personally performed a complete brake job on

front and rear of the suburban upon finding that the front Caliper pins were extremely worn. **Exhibit # 10**

2.15a5. The Pins mount the Calipers to the front axel and are required to slide back and forth very gently.

2.15a6. When the Caliper Pins are badly worn; they oscillate; thus are not totally cooperative in the

slowing or stopping of the vehicle.

2.15a7. Plaintiff installed two new combination sets of calipers and Pins and lubricated them as required

by the Chilton Manual                                            **Exhibit # 6**

2,15a8. Plaintiff, not happy with the performance of the left front metallic break pad that broke off in

chunks and charred the surface of the left front Rotor; Plaintiff then had the rotors polished by a city of

Renton machinist and then installed new fiber pads and the brakes were excellent in response.

2.15a9. Plaintiff also found that the Cornforth-Campbell Agency Dealership of General Motors

Corporation Mr. Good Wrench Mechanics diagnosis of the rear wheels being very difficult to remove

was a sign of **Subornation of perjury**. The crime of procuring another to make a false oath.

2.15a10. The rear wheels did  not appear as though they had been removed since leaving the factory

and did not have new brake pads until Plaintiff installed them in April of 2004. **Receipts : Exhibit # 10**

2.16. In vain, Plaintiff complained about the headlights being extremely dim.

2.16a. On at least two occasions. Plaintiff Clinton received egregious implications by other Cornforth -

Campbell Agency Personnel in the mechanics department, that they had brand new GMC Vehicles

recently received from the factory with dim head lights and they indicated it was to be an expected

performance.

2.16b. This appears to Plaintiffs as a slam at General Motors Corporation Assembled Products.

2.17.The Cornforth-Campbell personnel must think anyone purchasing from them must be novices.

                                **See Plaintiffs Mechanics Resume: Exhibit # 5.**

2,18. If Plaintiffs would have received the Electronic Brake Control Manual; Plaintiff would not have

pulled the trailer the first 10 feet, until Plaintiff would take the Suburban to a Recreational Vehicle Dealer

and have the newly installed activator replaced by a positive action differentiator/ativator.

2.19. As will later be defined: Plaintiff is quite certain that if Plaintiff had not Purchased a Chilton

COMPLAINT - 8

Clinton M  Tullis and Margaret L  Tullis
and the palimony relationship thereof as ProSe
16300-164th ave, S E. Renton, WA. 98058-0903

mechanics manual from an Auto Parts dealer on the Suburban and then Personally performed a

complete brake job on the suburban; Plaintiffs and most probably, several other emergency stopped
Freeway I-5 travelers, would have succumbed in a horrible fiery death. **Chilton Manual: Exhibit # 6.**

2.20. Absolutely, None of the much needed repairs, were ever corrected by Cornforth Campbell GMC Mr.

Good-Wrench; and the Agency implied nothing but excuses for repairs or the owner manual on the

Suburban or the Actrivator for the Trailer Brake Control.    **Differentiator Manual Book: Exhibit # 3**

2.20a. The Activator installed and lack of a promised book on functioning and reliability is one of the

major criminal factors in this law suit.                    **Willful and Malicious Conduct**

2.21. After considerable driving and discovering the many needs and denials of those needs of repair and

replacement contrary to Cornforth-Campbell Notices of perfect condition of the Suburban prior to sale;
                                                        **Exhibit # 2**
2.21a. Defendants theory and performance could not be trusted. Plaintiffs did not purchase the vehicle to

set on display.

2.21b.The vehicle should not have been allowed on the road in its un-stable condition at time of Purchase.

2.22. The Flyers on the Suburban along with the denial of a differentiator manual and Sales and

Mechanics departments Perjured Analysis of Brakes and Lights conditions along with vehicles faulty

battery causing engine faltering, was criminal subversion and an absolute denial of Facts by Cornforth

Campbell GMC Agency.                    **Malpractice and Vicarious Liability**

**2.22a. Malpractice: A Professionals improper or immoral conduct in the performance of duties,
either intentionally or through carelessness or ignorance.**

III.
## DEFENDANTS CONTINUED NEGLECT AND RESULTS

3.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1. through 2.22a. herein.

3.2. In Early July of 2003; Plaintiff went to a Parts dealer and procured installation of two (2) new

light bulbs to enhance night vision prior to Plaintiffs going on vacation to Silver Creek Hot Springs Resort

on a mountain top above the Payette River, and about a hundred miles East of Boise, Idaho.

3.3. From Silver Creek, Plaintiffs left for the Oregon Coast to join our Youngest Daughter Melanie and

Husband Ken and family of four children for one week of which we usually met and Camped at Bandon,

Oregon for one week.

3.4. Plaintiffs chose to drive along the Snake and then the Columbia Rivers to Portland, Oregon, then

COMPLAINT - 9

Clinton M Tullis and Margaret L Tullis
and the patimony relationship thereof as ProSe
16300-184th ave, S E. Renton, WA, 98058-0903

South on the Freeway I-5 to Salem, Oregon; Then Westerly to the Coast and Bandon, Oregon.

3.4a. When we arrived at Pendleton, Oregon; It was a real clear night and Plaintiffs chose to drive through

the night and enjoy the beautiful Full-Moon.

3.4b. This was on a Sunday evening and the traffic was very scarce; mostly Trucks; whom kept signaling

all night to us to Dim our Lights of which were already on dim.

3.4c. We finally stopped at the Dalles, Oregon and camped in a station lot until day-light and then on to

Bandon in the early A.M.

3.4d. Plaintiff checked the Headlamp Lens to see if either one was broken. It had appeared as though the

Lens were broken during our driving of which was not the event.

3.4e. Upon arriving home at the end of the week and with no other night driving; Plaintiff then went back to

the Dealer from whom we had procured our bulbs and then purchased mounting of two new Lens.

3.4f. The headlamps are called Lens. And the bulbs come separate except in a new lens purchase.

3.4g. Because of little night traveling at home; Plaintiff did not realize of the distorted head-lamps from age

or possible past heat exposure until truckers complained by blinking their lights and Plaintiffs passed

enough Oregon Trees to see the distorted lights were shinning partially on the road,  but mostly in the

trees.                                      **Headlight "Lens" Purchase Receipt: Exhibit # 10**

3.4h. No wonder they were dim. Thanks to Cornforth-Campbell and GMC Mr. Good-Wrench.

3.4i. Plaintiff did learn of the lights being dim and consequently had paid a parts dealership to install new

bulbs after complaining the fact to Cornforth-Campbell whom chose to ignore the dangers of dim or

distorted head-lights in abuse of General Motors declaration of Mr. Good Wrench of which appears to

only be considered as an "inspiration to buyers confidence".                **Exhibit # 1**

3.5. The engine had stalled during warranty and about five miles from Plaintiffs residence; Plaintiff reacted

and coaxed the vehicle to a near by: Schucks Auto Parts Dealership at Covington, Washington.

3.5a. Plaintiff could not properly test the vehicle as it was turning dark; Plaintiff Clinton then called a tow

truck to move the vehicle to Plaintiffs residence where Plaintiff had equipment to analyze the problem.

3.6. The battery had a dead cell and would not take a charge.

3.6a. Plaintiff then checked the spark Plugs and determined need to install new spark plugs.

3.6b. Plaintiff purchased and personally installed a Heavy duty battery and all new spark plugs.

                                                        **Exhibit # 10**

COMPLAINT – 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

3.7. Plaintiffs soon found the GMC Suburban Vehicle had many other perpetrated performance problems.

3.8. Plaintiffs had found the battery life had been exceeded and was the cause of the engine erratic

actions; especially in starting the engine.

3.8a.  Plaintiffs found the engine overheated to 280 degrees.

3.8b. Plaintiffs were told by Cornforth Campbell personnel in the mechanics Department, that the water

temperature of 280 degrees was good for the motor, thus declining service.  .                    **Perjury**

3.8c. Plaintiffs purchased and installed a 180 degree thermostat and a new radiator cap and never again

witnessed any temperatures above 180 degrees.                              **Exhibit #  10**

3.9. Plaintiff reiterates that receipt of the trailer brake control (Differentiator) manual could have

informed Plaintiffs of an unacceptable, contemptible performance by Defendants in the installation of an

inferior Activator and again in procrastinating about not having a manual to explain the quality and use of

the Activator, as disclosure from the manual, could most probably, not have met Plaintiffs approval and

most probably negate the sale.                              **Differentiator Manual: Exhibit #  3.**

3.10. The Activator short response, caused a very serious wreck, severely injuring both Plaintiffs.

3.10a. Caused Plaintiff, Clinton M. Tullis to have  serious Body Injury's  involving casts and major

surgery's for most of two years.                              **Medical History: Exhibit # 8**

3.11. The surgery performed in 2005 was performed only after stabilizing Plaintiff: Clinton M. Tullis

Heart injury conditions maximized by the Collision. .

3.11a.The surgery was to repair two huge lower inguinal "hernias" procured during the collision that were

caused to rupture during the collision and protruded Completely across Plaintiffs  lower stomach.

3.11b, Plaintiff; Clinton also pulled the ligaments loose from his left wrist in fighting to turn the Suburban

to the right and off the vehicle in front of which contained a young mother and her pre-teen daughter.

3.11c.Clinton wore a cast on his left arm for about one and one-half  (11/2) years and cannot

completely fold his left index finger as yet without pain.                    **Medical Attention: Exhibit # 8**

3.12.The suburban Air bags had broken and Clinton thought Plaintiffs were going to die in a fire; fed by

almost forty gallons of gas procured in Vancouver, Washington on the way home from vacation on the

Oregon Coast. Clinton was determined not to take others with Plaintiffs, if at all possible. .

3.13. As it turned out; the air bags exploding produced the smoke and fire appearance.

COMPLAINT – 11

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

3.14. The collision severely reduced the mental and physical stamina required in Plaintiff Clinton Real Estate Profession.

3.15. Plaintiff remains strained in catching up in Plaintiffs home yard and garden upkeep

3.16. All for which Plaintiffs are remaining suffering and most possibly will never fully recover.

3.17. Plaintiff: Margaret L. Tullis was severely injured with the air bags burst and the sudden impact of the Suburban onto the pavement as Plaintiffs successfully escaped the vehicle we had contacted and luckily, the right lane had cleared enough to allow Plaintiffs the room.

3.18. Plaintiff Margaret previously had a slight hernia of the upper stomach which expanded in the collision and remains an increased problem with her hopes of curing, slightly shattered by being told "that type" of operation is very dangerous.

3.19. Plaintiff Margaret spent a miserable night at the Centralia Hospital, even given excellent care.

3.20. All of the above mechanical problems could have easily been cured, if Defendants were capable or serious of performing a proper analysis and considerations, in lieu of the Cornforth Campbell GMC Agency dealership, employees procrastination and denial of proper service to Plaintiffs.

3.20a. The absolute responsibility of the Dealership and General Motors Corporation Criminal infractions.

**3.20b. Defendants actions resulting in this Lawsuit qualify as: Special Proceeding Damages. Damages beyond other damages; A Proceeding providing extraordinary Relief Such as Exemplary Damages.**

**3.21. Defendants Acts of Deceit: The Tort of Fraudulent Representation; Concealing Something or Making false Representation with an evil intent. (Scienter) when it causes Injury to another.**
**Willful - Malicious Conduct**

3.22. None of the egregious promises or mechanical corrections was ever performed by Cornforth Campbell, regardless of being within the time frame of the Vehicle Warranty provided to Plaintiffs on date of Purchase.

3.23. In regards to Plaintiffs Purchase from Cornforth-Campbell; The Agency "Declaration of Mr. Good-Wrench" is void of proper supervision by General Motors Corporation. Apparently only utilized by Defendants as a hot Sales Pitch. **Breach of Warranty: Exhibit # 2; & Mr. Good-Wrench: Exhibit # 1.**

3.24. The agency utilizing the GMC add of Mr. Good Wrench, along with the Agency denying the Electric Trailer Brake Control "supplied manual", was erroneously denying consideration to the Public and Plaintiffs as severe endangerment.
**Tortious Conduct**

COMPLAINT – 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

**I V.**
## DEFENDANTS INEXCUSABLE NEGLECT AND EFFECTIVE COMPARISON

4.1. Plaintiffs re-allege each and every allegation contained in paragraphs No.1.1. through 3.27a. herein.

4.2. After the collision and desperately needing the Trailer Brake Control for probable proof of all details;

4.3. Plaintiff called the people Plaintiffs had Purchased the Wilderness Trailer from and they informed us
of a Tacoma Dealership and address for us to see about a differentiator manual.

4.3a. Plaintiff went to the agency, of whom the private individual we purchased the trailer from, had in
fact originally purchased the Wilderness Trailer from and asked for their assist in locating us a manual
describing the particular differentiator that we were so reluctantly denied by Cornforth-Campbell Agency
city of  Puyallup Dealership of General Motors Corporation and Mr. Good-Wrench.

4.3b. Plaintiffs performed three trips to a South Tacoma Recreational Vehicle dealer and a party working
in supplies had taken it upon himself to order and procure two (2) manuals for Plaintiffs dilemma.

**Exhibit # 3**

4.3c. Upon analyzing the information in the manual; Plaintiff (Clinton M. Tullis) was exonerated from
any blame whatsoever at the collision responsibility trial in Chehalis, Washington.    **Exhibit # 7**

4.4. Plaintiffs had used the trailer for vacations to the Oregon Coast and to Idaho Payette Lakes, for and
during the three previous years, prior to Plaintiffs purchasing the subject 1999 GMC Suburban.

4.5.  Plaintiffs Son in Law: Ken Kalliainen, had pulled the trailer for those three years with his ¾  ton Ford
pickup, as Plaintiffs were vacationing with Ken and our youngest daughter "Melanie" and their family of
four children.

4.6. Each trip, Plaintiffs followed the Kalliainens and we did not encounter any problems; no matter how
rapidly  Ken was forced to stop, or how rough the terrain we were negotiating, or how heavy the load.

4.6a. At that time; Plaintiffs loaded Wilderness Trailer had the load of at least six bicycles, family tents and
lots of Kalliainens family camping gear, general provisions, camping tools, cook-ware, mechanics tools,
wrecking bars for emergency use and often "some fire wood and parking blocks, along with tow chains,
work and dress clothes and bedding etc. on the trailer, readily sustaining necessary travel speed so as
not to delay or bother other vehicles traveling in back of us or wanting to pass us.

4.6b. The trailer load was much heavier than that pulled by Plaintiffs as the Kalliainens determined to pull
a U-Haul Trailer for extra convenience of loading and unloading and two "side by side parking spaces.

COMPLAINT  -  13

Clinton M  Tullis and Margaret L  Tullis
and the palimony relationship thereof as ProSe
16300-184ᵗʰ av/e, S E. Renton, WA. 98058-0903

4.6c..Plaintiffs were always within 200 feet behind the Kalliainens and Plaintiffs Trailer to vacation points, mostly on the Oregon Coast for the three years of 1999 - 2002 inclusive.

4.6d. Several times Ken had to brake down rapidly as someone coming towards us may be passing in a restricted area. Ken's differentiator (electric trailer brake control) always performed absolute response at any and all times in necessitating a stop, whether sudden or casual, no matter whether day or night or how badly or roughly Ken was challenged.

4.6e. Ken's trailer brake control had been installed upon purchase of his vehicle, by whom he purchased his ¾ ton vehicle from and never hesitated on any need to respond, during Ken's towing Plaintiffs 30 plus foot Wilderness Trailer for approximately four thousand miles of all types of terrain and road conditions, prior to Plaintiffs purchasing their own vehicle: (The subject 1999 GMC Four wheel drive Suburban from Cornforth-Campbell GMC Agency-Dealership).

4.6f.The Trailer Brakes were excellent and always responded to any demand.

4.7. The trailer was perfect for Plaintiffs, as it was large enough and constructed to have privacy when necessary, even when others visited or stayed in the fore half, which was often, and well loved and of which we readily joined prior to or after our rest. Plaintiffs and the Kalliainen family really miss the trailer.

4.8..Thus, Plaintiffs had been easy to convince that the GMC Suburban was capable of like performance.

4.9. Plaintiffs didn't dream of the GMC dealership; in applying a new " trailer brake differentiator"(Activator) on our acquired vehicle would perform any different.      An absolute:  **Breach of Trust**

4.10. Plaintiffs became easy victims of  Cornforth-Campbell agency dealership Warranty's and GMC Corporation bragging Mr. Good Wrench.      **Willful Malicious Conduct & Vicarious Liability**

4.11.Cornforth Campbell **denied** their commitment to **Specific Performance.  Exhibit # 9: [Plaintiffs: Letter to Dealer]**

4.12. Defendants GMC and Cornforth - Campbell have given Plaintiffs the opinion of the dealers believing: every one dealt with, must be unknowledge able as to the actual performance and upkeep in the vehicles they purchase. They also appeared to treat Plaintiffs as Aged and incapable of lengthy travel. Their overwhelming promises to Plaintiffs were deluded lack of consideration and appears to be perpetrated only for purposes of sales.      **Criminal Acts**

**Wash. App. Div. 2 1996. "Criminal Act" May be described as both affirmative act, or omission of possible and legally required performance.—State v. Chester, 918 P 2d. 514, 82 Wash App. 422,**

COMPLAINT – 14

Clinton M Tullis and Margaret L Tullis
and the patrimony relationship thereof as ProSe
16300-164ᵗʰ ave, S E. Renton, WA. 98058-0903

review granted 928 P. 2d 412, 130 Wash.2d 1016, affirmed 940 P2d 1374, 133 Wash. 2d 15.--Crim Law 26.

4.13.They also appear to believe that every one on the road stays near home or can vacation in a motel or hotel if they break down on the road and that any repairs they may need will only cost a few dollars even on holidays, weeks or week-ends, a short stay on their way, with Pleasure Time to spare, and not giving consideration of short vacations with defined essential procedures.

**Breach of Warranty Exhibit # 2**

4.14. Defendants unreasonably and thoughtlessly, seriously endangered Plaintiffs and Publics lives.

4.15. Should we look at the entire organization as being sadists, resolved to test results of their Fraud.

**Criminal Wrongful Intent**

**V.**
**HISTORY INCIDENTAL TO DEFENDANTS DECEPTION**

5.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1. through 4.15.

5.2. Plaintiffs is quite positive; The improvement of the Suburban brakes by Plaintiff Clinton; Is the only reason that Plaintiffs and most probably others remain alive that were involved in or near Plaintiffs Collision on Northbound, Freeway I—5 near Centralia, Washington in July of 2004.

5.2a. The GMC Agency - Dealership of Cornforth-Campbell could have been the cause of the death of several people in that collision for their neglect of curing the malfunctioning GMC Suburban Brakes under Warranty.

5.2b. Plaintiffs, beyond a reasonable doubt, swear that it is highly probable that some of us would have perished in a fiery collision of which most likely would have included both vehicles in front of Plaintiffs and others already stopped bumper to bumper in the right Lane.

5.2c. Plaintiffs were in the left Lane where the two Parties contacted by Plaintiffs; were already bound together and only one-half off the left lane awaiting Authorities to analyze their prior collision.

5.2c1. NOTE: Those parties were right next to a concrete barrier and could not clear the road in entirety.

5.3. Defendants knew the (Activator), Trailer Electric Brake Control was questionable or they should have known. (Plaintiff is informed the manual becomes part of the Unit Purchase and the manual explains the ability of a differentiator to activate on demand or otherwise under certain circumstances.

5.3a. The manual gives a line for operation showing that the Activator installed by GMC Agency Dealership of Cornforth Campbell; was known to be slow in responding and was known to collapse

COMPLAINT - 15

during the first second of hard use.                                   **Exhibit # 3**

5.3b. The Book shows: At 60 Miles per hour, a vehicle travels at 88 feet per second; Plaintiffs were

Traveling at 50-55 miles per hour;

5.3b1. The vehicle speed appeared to drop to about 15 miles per hour in the first second of hard use;

Meaning the differentiator appeared to activate, then quit after the first 30 to 50 feet of travel.

5.3b2. Meaning the trailer brakes were not working after the first 30- 50 feet and the trailer was pushing

the Suburban for the last 150 -185 feet.

5.3c. This is the way it felt to Plaintiffs and shows by the bent trailer ball hitch.      **Exhibit # 4**

53c1. The extra heavy duty ball hitch, bent forward for at least (1/2) one half of an inch.

53d. The Suburban suddenly felt as though Plaintiffs were floating on Air, from the immense pressure of

the Trailer without working brakes.

5.3e. The Trailer pushed so hard; The Trailers full length of: (2 Steel Channel Frames) folded in the center

and did so much incidental damage to the trailer, that the Trailer was not repairable: A total Loss.

5.4. This type of Differentiator had not been used for over twenty years by the Recreational Vehicle

Dealership, whom supplied Plaintiffs with the 2 books prior to Plaintiffs appearing in the Chehalis District

Court for determination of fault.                                       **Exhibit # 1.**

5.5. The heavily loaded trailer pushed the *skidding Suburban for about (150 to 185) feet* before the

Suburban left front wheel slowly climbed upon the center of a heavy 4-wheel drive vehicle # 2 that had

also collided into another heavy Pickup or Suburban # 1, in front of the vehicle Plaintiffs contacted.

5.5a. Plaintiffs Suburban; Vehicle N0 3; Suddenly tilted to the right and Plaintiff could see the left front

wheel very slowly climbing up over the rear bumper of the vehicle in the immediate front of Plaintiffs.

5.6. Margaret was leaning slightly forward and Plaintiff Clinton, grabbed her by the shoulder and pulled

her away from the *right front doors glass window, just as the air bags broke* and forced her back far

enough to be somewhat protected by the right door frame beside her seat.

5.6a. The Air Bags Exploded and Plaintiff thought we were on fire.

5.6b. Plaintiff could see a Blonde woman on the drivers side of a Red Pickup in front # 1 and a small

Blonde Girl on the right side of the Red Pickup in front; as Plaintiffs Suburban was now tilted to a 30 to

45 degree angle and Plaintiff was able to see down through their back window

COMPLAINT – 16

5.6c. Plaintiff was certain we were to die in the fire and didn't want others to join us if possible to prevent.

5.6d. Plaintiff defied the Air Bag and turned the Suburban Steering Wheel hard right, hoping to escape the vehicle we climbed upon. Plaintiff again, applied extreme pressure on the Suburban Brakes.

5.6e. The Suburban Right Front Wheel Grabbed the Pavement and threw Plaintiffs to the right and off the vehicle Plaintiffs had climbed upon; This working, also kept the Suburban from laying over on its side.

5.7. With Plaintiffs Engine still running, Plaintiffs slowly drove around the No. 2 attached vehicle to a very slow stop along side of No. 1 vehicle.

5.7a. Plaintiffs Suburban Broke the frame just behind the back door and the Suburban Front Wheels also broke their framework and each wheel now pointed in opposite directions.

5.8. Plaintiff Clinton climbed out of the Suburban and ran around to the right front door to assist Plaintiff Margaret in getting out.

5.8a. Then seeing there was no fire, commenced helping Margaret towards the trailer where she could lay in bed until an Ambulance could arrive.

5.8b. A lady Plaintiffs believes was Keri Knorr, driver of vehicle No. 1, immediately came to assist in getting Margaret to the rear door of the Trailer and to get Margaret onto the bed and see if she could help her relax in any way possible.

5.8c. The lady (Keri ?) asked Clinton if we had collided with No. 2 vehicle. Clinton answered with yes, we had. slowly crawled upon vehicle No. 2. (Keri ?) stated she thought so as she had felt a slight thump.

5.9. The collisions were created by about a dozen vehicles in front making sudden stops, one just right after the other and luckily only the left lane had any known collisions, as the vehicles in the right Lane, were able to move aside soon enough to allow Plaintiffs the room to get off the contacted vehicles.

5.10. A long line of Vehicles ranging from 50 to 70 miles per hour and suddenly stopping is bound to procure contact even though reactions from most drivers are comparatively instant.

5.11. Plaintiffs left two (2) wide lines of deeply burned Asphalt tracks for about two hundred (200) feet in length from the Suburban Braking of which it could not capably stop prior to collision.

5.12. The differentiator manual, Plaintiff finally procured from a Recreational Vehicle Agency, after the wreck (collision) absolutely states that the manufactures differentiator placed in Plaintiffs Vehicle; was known to collapse within one to three seconds of heavy usage.

**Exhibit # 3**

COMPLAINT – 17

Clinton M Tullis and Margaret L Tullis
and the patrimony relationship thereof as ProSe
15300-184th ave, S E. Renton, WA. 98058-0903

5.13. Plaintiffs reiterate;Tthe Recreational Vehicle Dealer; that afforded two books on the various

Differentiators inclusive of the type installed on Plaintiffs Suburban by Cornforth-Campbell; Had not

supplied or used this type of Differentiator (termed as activator), for at least twenty years.

5.14. Plaintiffs were doing approximately 50-55 miles per hour when attempting to stop quickly of which

at the very first, slowed to about one-third or 15 miles per hour, and then continued very slowly; slowing

down and unbelievable at not completely stopping, but was like very slowly floating on air as Plaintiffs

could feel the heavy pushing effect from the trailer.

5.15. Margaret got a bad beating, from the Air Bag Explosion and spent a very bad night at the

Centrailia Hospital even though she had excellent care.

5.15a. Margaret became paranoid to travel on a Freeway and occasionally freaks out when she sees

another vehicle in front of or coming towards us.

5.15b. Both Plaintiffs are remaining slowly improving in overcoming the physical set-backs.

5.15c. Our yard work and House maintenance has been neglected of which Plaintiff Clinton can only

perform from two to three hours at a time, and which has also slowed down Plaintiffs planning Real

Estate Projects.

5.16.The damaged trailer has a thin skin of aluminum or plastic siding on its entire exterior. This was only

slightly dented to less than a quarter of an inch deep on only two (2) of the four (4) inch siding slats that

rubbed number 2 vehicle for a length of about two (2) feet. A person could dent the trailer that much with

his fingers.

5.17. Plaintiffs had not had any experience or knowledge of and with a differentiator. It had been about

thirty years since Plaintiff pulled a "light over-night trailer" of a friends that insisted on our using it on a

vacation trip to California, and did not have any trailer brakes.

5.18. Plaintiff needed reference of a book on the differentiator brake and comparable systems to be able

to know what was sufficient or the most efficient and proper usage and reliability.

5.19. Plaintiff would have complied to change accordingly, Cornforth-Campbell and General Motors

Corporation Mr. Good-Wrench assist that appears not to  properly perform maintenance or repairs as

per Warranty and perpetrated assurances to Purchasers of their GMC vehicles.

COMPLAINT - 18

Clinton M  Tullis and Margaret L  Tullis
and the patimony relationship thereof as ProSe
16300-184th ave, S E, Renton, WA. 98058-0903

## VI.
## PRAYER FOR RELIEF

6.1. Plaintiffs re-allege each and every allegation contained in paragraphs No.1.1. through 5.19 herein

6.2. Plaintiffs Pray for relief from this Court, for Summary Judgment in consideration of the Summation of the evidence of indisputable facts of Injuries afflicted upon Plaintiffs referenced throughout Plaintiffs Brief in this Law Suit against Defendants: General Motors Corporation, *and trusted agency* dealership of Cornforth-Campbell in denial of declared specific performance and consequently performing criminal fraud and derivative torts for which Plaintiffs deserve Special Proceeding damages for Injuries from the many criminal infractions of Defendants non-becoming to the quality of leadership and responsibility, rightfully expected by the Public for General Motors Corporation and Agency Dealership of Cornforth-Campbell whom perpetrated Warranty's, and fictional assurances of conditions of Plaintiffs Purchase; Then denying maintenance and influence of General Motors Corporation through their advertised "GMC MR Good-Wrench, thus severely endangering Clients and the General Public safety and welfare.

6.3. Defendants continuously *denied advertised* expert maintenance and care to assist Plaintiffs that could or would have prevented Plaintiffs GMC Suburban from having a collision that very nearly could have cost Plaintiffs and others their lives in a deadly fiery crash and resulted in Plaintiffs losses including severe body injury's, loss of stamina, loss of time with family and friends and loss of income, for which.Defendants continually manipulated to avoid all visual rules of law pertaining to their acts of deceit analogous to Defendants perpetrated warranty and assurances of genuine conditions of the Suburban; along with installation of a non-conforming, inadequate "trailer brake control" and refusing any factory reference to its capabilities and rightfully concluded as criminal actions of an egregious Fiduciary.

6.4. The Suburban was not in a condition that it should be on the highway and Plaintiffs were assured that it was in positively excellent condition guaranteed by a sixty day Warranty.

6.5. The body was beautiful and deceitful.

6.6. The mechanical functions were negative, inclusive of the braking system being dangerous.

## VII.
## NOTE FOR MOTION

7.1.Plaintiffs re-allege each and every allegation contained in Paragraphs Nos.1.1. through 6.6. herein.

COMPLAINT – 19

Clinton M Tullis and Margaret L Tullis
and the pelimony relationship thereof as ProSe
16300-184th ava, S E. Renton, WA. 98058-0903

7.2. Plaintiffs/Claimants motion for this Court to order summary judgment as special proceeding and

compensatory damages in summation of the crimes committed in this case; and giving consideration of

the overwhelming moral certainty of Plaintiffs/ Complainants beyond all reasonable doubt, of Derivative

torts continually, dangerously performed by Defendants; needlessly causing Plaintiffs/Complainants

injuries, including income and property losses of the past, present and future and for the crippling,

ruinous, tortuous, personal, mental, physical and monetary injuries; of which can only be partially

repaired or satisfied by monetary reparable damages from Defendants willful - malicious conduct and

derivative torts to Plaintiffs; Properly amounting to payment to Plaintiffs by Defendants of eighty two

million and no/100 Dollars ($82,000,000.00) for said Injuries prevailing; Applicable to  the Defendants

continuously manipulating with malice, to avoid all visual rules of law in specific performance as

per advertisements and promises pertaining to their acts in denial of assist to Plaintiffs that could have

prevented Plaintiffs from having a collision resulting in and continuing Plaintiffs multitude of serious

Injuries multiplying Plaintiffs struggle for survival..

7.3. On this _____day of _____; This Court does hereby rule this case in favor

of: Clinton M. Tullis, ProSe and Margaret L. Tullis, ProSe and the community comprised thereof.

The Defendants known as: Cornforth-Campbell and General Motors Corporation are hereby ordered to

pay what Plaintiffs ask for; in the sum of Eighty Two Million and No/100ths Dollars to be paid within

_____days from this _____day of _____20_____,after which time interest will

accrue @ 1&1/2 % per month from date of Court signature on this documented brief.



_____
Judge/Commissioner

_____
Clinton M. Tullis ProSe            date

_____
Margaret L. Tullis ProSe           date

_Clinton M. Tullis_
16300-184th ave.; S.E. Renton, Wa. 98058-0903
Phone and Fax (425) 226-7399

_Margaret L. Tullis_
16300-184th ave. S.E, Renton, Wa. 98058-0903
Phone & Fax:    425-226-7399

_Kathleen S. Hayny_
_Kathleen S. Hayny_ being a
Notary Public in and for the State of Washington
do hereby swear that on this ___16th___ day of _July 2010_
_____ I witnessed the Tullis's
signatures on this portion of this document.
My commission expires on ___4-28-12___

COMPLAINT – 20

Clinton M. Tullis and Margaret L. Tullis
and the palimony relationship thereof as ProSe
16300-184th ave, S. E. Renton, WA. 98058-0903

PLAINTIFFS HAVE PREVIOUSLY DELIVERED COPIES OF ALL EXHIBITS AS REFERENCED IN AND TO BE INFERRED IN THIS CASE TO DEFENDANTS AND WILL GATHER TOGETHER AND SUPPLY ALL EXHHIBITS TO THE SUPERIOR COURT CLERK at KING COUNTY COURTHOUSE INCLUSIVE OF EXHIBITS FOR A CHOSEN JUDGE THAT IS CONSTITUTIONAL OR HAS TAKEN THE OATH ALONG WITH AGREEMENT TO ACCEPT GRAND JURY DETERMINATION. All PRIOR TO THE REQUIRED SIXTY DAYS AFTER THE DATE OF RECEIPT by Defendants OF THE SUMMONS AND COMPLAINT FROM PLAINTIFFS TO BE DATED AND SIGNED BY A GENERAL MOTORS EXECUTIVE OR TRUSTED EMPLOYEE, AND immediately RETURNED TO PLAINTIFFS TO BE NOTED WITH THE Superior Court Clerk for date of commencing the Trial.

Plaintiffs cannot supply notice to the Defendants Prior Attorneys as General Motors Corporation has new leadership and may change Attorneys. Two sets of Summons and Complaint are in the mail to GENERAL MOTORS CORPORATION.

Exhibits and locations in order.

| Numbers: | Definitions |
|----------|-------------|
| 1. | Mr. Good Wrench |
| 2. | Warranty & Declarations of Conditions |
| 3. | Differentiator Book (Manual). |
| 4. | Bent Trailer Hitch |
| 5. | Plaintiffs mechanics resume |
| 6. | Chilton "Mechanics Manual" |
| 7. | Chehalis District Court |
| 8. | V.A. medical history |
| 9. | Letter to Cornforth-Campbell after several denials of Warranted service and disillusion cure for guaranty of perfect condition of vehicle |
| 10. | Headlamp Lens and Bulbs replacement |
| | Brakes, Battery, and engine repair, parts, supplies, etc. |

| | | | | |
|---|---|---|---|---|
| 2. 2.8a | # 2 | | | |
| 2.3. | # 1 | 3.10 a. | # 8 | |
| 2.4. | # 2 & 9 | 3.10 b. | # 3 | |
| 2.5 b. | # 2 | 3.11 c, | # 8 | |
| 2.10a. | # 3 | 3.11e.xxxx | # 3 | |
| 2.14b 1. | # 6 | 3.23. | # 1 | |
| 2.15a 4. | # 10 | 4.3 b. | # 3 | |
| 2.15 a7. | # 6 | 4.3 c. | # | |
| | | 4.11. | # 9 | |
| | | 4.12. Criminal Act of Washington | | |
| 2.15a10 | # 10 | 4.13. | # 2 | |
| 2.17 | # 5 | 5.3 a. | # 3 | |
| 2.19 | # 6 | 5.3 c. | # 4 | |
| 2.20 | # 3 | 5,4 | # 3 | |
| 2.21 | # 2 | 5.7a. | # 3 | |
| 3.4g. | # 10 | 5.7c. . | # 4 | |
| 3.4L | # 1 | 5.8. | # 1 | |
| 3.6b | # 10 | 5.12. | # 3 | |
| 3.8c | # 10 | 5.16. | # 3 | |
| 3.9 | # 3 | Thirty Six total exhibits. | | |

COMPLAINT – 21

**<u>EXHIBIT F</u>**

## WEIL, GOTSHAL & MANGES LLP

1300 I STREET, N.W.
SUITE 900
WASHINGTON, D.C. 20005
(202) 682-7000
FAX: (202) 857-0940

BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW

DIRECT LINE
202-682-7206
brianna.benfield@weil.com

July 30, 2010

**BY FEDEX**

Clinton M. Tullis
Margaret L. Tullis
16300-184th Avenue, SE
Renton, WA 98058-0903

    Re:   **Clinton and Margaret Tullis v. General Motors, et al.**
           Case No. 10-2-25699-7 KNT

Dear Mr. and Mrs. Tullis :

       I write to inform you that on June 1, 2009, (the "Commencement Date"), Motors Liquidation Company (f/k/a General Motors Corporation) and certain of its subsidiaries, (collectively, the "Debtors"), filed voluntary petitions seeking bankruptcy protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The chapter 11 cases have been consolidated for procedural purposes and bear case no. 09-50026 (REG). Enclosed herewith is a copy of the Debtors' chapter 11 petition.

       Your attention is directed to section 362(a) of the Bankruptcy Code, entitled "Automatic Stay." Pursuant to section 362(a) of the Bankruptcy Code, an automatic stay went into effect on the Commencement Date, prohibiting the commencement or continuation of any actions or proceedings against the Debtors. The automatic stay expressly prohibits the following:

               the commencement or continuation, including the issuance or employment
               of process, of a judicial, administrative, or other action or proceeding

WEIL, GOTSHAL & MANGES LLP

Clinton M. Tullis
Margaret L. Tullis
July 30, 2010
Page 2

against the debtor that was or could have been commenced before the
commencement of the case under [the Bankruptcy Code.]

11 U.S.C. § 362(a)(1).

Accordingly, the above-captioned action was filed in violation of the
automatic stay. All actions taken in violation of the automatic stay are void and, pursuant
to established case law, parties may be held in contempt of court for violating the
automatic stay. See, e.g., Bartel v. Eastern Airlines, 133 F.3d 906 (2d cir. 1998); Fidelity
Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47 (2d cir. 1976), cert. denied,
429 U.S. 1093 (1977). In light of the foregoing, Motors Liquidation Company requests
that you withdraw the complaint filed against it and confirm that you have done so within
five business days. Motors Liquidation Company reserves all rights and remedies.

If you have any questions with respect to this matter, please do not hesitate
to contact me.

Sincerely,

Brianna Benfield

Enclosure

**<u>EXHIBIT G</u>**

# WEIL, GOTSHAL & MANGES LLP

1300 I STREET, N.W.
SUITE 900
WASHINGTON, D.C. 20005
(202) 682-7000
FAX: (202) 857-0940

AUSTIN
BEIJING
BOSTON
BUDAPEST
DALLAS
DUBAI
FRANKFURT
HONG KONG
HOUSTON
LONDON
MIAMI
MUNICH
NEW YORK
PARIS
PRAGUE
PROVIDENCE
SHANGHAI
SILICON VALLEY
WARSAW

DAVID R. BERZ
PARTNER
DIRECT LINE (202) 682-7190
david.berz@weil.com

July 30, 2010

**BY FEDERAL EXPRESS**

Clerk of Court, Civil Division
King County Superior Court
King County Courthouse
516 3rd Ave, E609
Seattle, WA 98104-2386

      Re:    Case No. 10-2-25699-7 KNT

Dear Clerk of Court:

      Enclosed please find a Notice of Bankruptcy of Motors Liquidation Company (f/k/a General Motors Corporation) ("Debtor") a defendant in the above-captioned case. As indicated in the Notice, on June 1, 2009, Debtor filed a voluntary petition seeking bankruptcy protection under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. The chapter 11 case bears case no. 09-50026 (REG). Under section 362 of the Bankruptcy Code, all actions pending against the Debtor are automatically stayed.

      If you have any questions with respect to the foregoing, please do not hesitate to call me.

      Respectfully submitted,

      David R. Berz

1    David R. Berz
     WEIL, GOTSHAL & MANGES, LLP
2    1300 Eye Street, N.W., Suite 900
     Washington, DC 20005
3    Telephone: (202) 682-7000
     Facsimile: (202) 857-0940

4

5

6

7

8                    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

9                         IN AND FOR THE COUNTY OF KING

10

11    CLINTON AND MARGARET TULLIS,           | Case No. 10-2-25699-7 KNT

12                     Plaintiffs,

13              v.                            | NOTICE OF BANKRUPTCY

14    GENERAL MOTORS, et al.,

15                     Defendants.

16
             PLEASE TAKE NOTICE that, on June 1, 2009, (the "Commencement Date"), Motors
17
18    Liquidation Company (f/k/a/ General Motors Corporation) ("MLC") filed a voluntary petition

19    seeking bankruptcy protection under chapter 11 of title 11 of the United States Code (11 U.S.C.

20    § 101 *et seq.*) ( "Bankruptcy Code") in the United States Bankruptcy Court for the Southern

21    District of New York ( "Bankruptcy Court"). The bankruptcy case has been assigned Case No.

22    09-50026 (REG). A copy of MLC's chapter 11 petition is attached hereto as Exhibit A.

23
             PLEASE BE ADVISED that, as of the Commencement Date, any new or further action
24
25    against MLC is stayed pursuant to section 362 of the Bankruptcy Code (the "Automatic Stay"),

26    which provides that the filing of the petition, among other things, "operates as a stay, applicable

27    to all entities, of ...the commencement or continuation, including the issuance or employment of

28    process, of a judicial, administrative, or other action or proceeding against the debtor that was or

1    could have been commenced before the commencement of the case under this title, or to recover a

2    claim against the debtor that arose before the commencement of the case under this title ...." and

3    of "any act to obtain possession of property of the estate or of property from the estate or to

4    exercise control over property of the estate."  11 U.S.C. § 362(a)(1) & 362(a)(3).

5

6         PLEASE BE FURTHER ADVISED that any action taken against MLC without obtaining

7    relief from the Automatic Stay from the Bankruptcy Court may be void ab initio and may result in

8    a finding of contempt against Plaintiffs.  MLC reserves and retains its statutory right to seek relief

9    in the Bankruptcy Court from any judgment, order, or ruling entered in violation of the Automatic

10   Stay.

11

12   Dated: July 29, 2010                    Respectfully Submitted,

13

14                                           David Berz /BB
                                             David R. Berz

15                                           WEIL, GOTSHAL & MANGES LLP
                                             1300 Eye Street, NW Suite 900
16                                           Washington, DC 20005
                                             Telephone: (202) 682-7000

17
                                             Attorney for Defendant
18                                           Motors Liquidation Company

19

20

21

22

23

24

25

26

27

28

**United States Bankruptcy Court**
**Southern District of New York**

**Voluntary Petition**

| | |
|---|---|
| **Name of Debtor (if individual, enter Last, First, Middle):**<br>**GENERAL MOTORS CORPORATION** | **Name of Joint Debtor (Spouse) (Last, First, Middle):**<br>N/A |
| **All Other Names used by the Debtor in the last 8 years**<br>(include married, maiden, and trade names):<br>**See Schedule 1 Attached** | **All Other Names used by the Joint Debtor in the last 8 years**<br>(include married, maiden, and trade names):<br>N/A |
| **Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all):**<br>**38-0572515** | **Last four digits of Soc. Sec. or Individual-Taxpayer I.D. (ITIN) No./Complete EIN (if more than one, state all):**<br>N/A |
| **Street Address of Debtor (No. and Street, City, and State):**<br>**300 Renaissance Center** | **Street Address of Joint Debtor (No. and Street, City, and State):**<br>N/A |
| **Detroit, Michigan**    **ZIP CODE 48265-3000** | **ZIP CODE** |
| **County of Residence or of the Principal Place of Business:** **Wayne County** | **County of Residence or of the Principal Place of Business:** N/A |
| **Mailing Address of Debtor (if different from street address):**    **ZIP CODE** | **Mailing Address of Joint Debtor (if different from street address):** N/A    **ZIP CODE** |

**Location of Principal Assets of Business Debtor (if different from street address above):**

**767 Fifth Avenue, New York, New York**    **ZIP CODE 10153**

| **Type of Debtor**<br>(Form of Organization)<br>(Check one box.) | **Nature of Business**<br>(Check one box.) | **Chapter of Bankruptcy Code Under Which**<br>**the Petition is Filed (Check one box)** |
|---|---|---|
| ☐ Individual (includes Joint Debtors)<br>*See Exhibit D on page 2 of this form.*<br>☒ **Corporation (includes LLC and LLP)**<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | ☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101 (51B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☒ Other<br><u>**Automotive Manufacturing**</u><br>**Tax-Exempt Entity**<br>(Check box, if applicable.)<br>☐ Debtor is a tax-exempt organization under Title 26 of the United States Code (the Internal Revenue Code). | ☐ Chapter 7    ☐ Chapter 15 Petition for Recognition of a Foreign Main Proceeding<br>☐ Chapter 9<br>☒ **Chapter 11**    ☐ Chapter 15 Petition for Recognition of a Foreign Nonmain Proceeding<br>☐ Chapter 12<br>☐ Chapter 13<br><br>**Nature of Debts (Check one box)**<br>☐ Debts are primarily consumer debts, defined in 11 U.S.C. § 101(8) as "incurred by an individual primarily for a personal, family, or household purpose."    ☒ **Debts are primarily business debts.** |

| **Filing Fee (Check one box)** | **Chapter 11 Debtors**<br>**Check one box:** |
|---|---|
| ☒ **Full Filing Fee attached**<br>☐ Filing Fee to be paid in installments (applicable to individuals only) Must attach signed application for the court's consideration certifying that the debtor is unable to pay fee except in installments. Rule 1006(b). See Official Form 3A.<br>☐ Filing Fee waiver requested (applicable to chapter 7 individuals only). Must attach signed application for the court's consideration. See Official Form 3B. | ☐ Debtor is a small business debtor as defined in 11 U.S.C. § 101(51D).<br>☒ **Debtor is not a small business debtor as defined in 11 U.S.C. § 101(51D).**<br>**Check if:**<br>☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,190,000.<br>- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -<br>**Check all applicable boxes:**<br>☐ A plan is being filed with this petition.<br>☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b). |

| **Statistical/Administrative Information** | **THIS SPACE IS FOR COURT USE ONLY** |
|---|---|
| ☒ Debtor estimates that funds will be available for distribution to unsecured creditors.<br>☐ Debtor estimates that, after any exempt property is excluded and administrative expenses paid, there will be no funds available for distribution to unsecured creditors. | |

**Estimated Number of Creditors (on a Consolidated Basis)**

| ☐<br>1-49 | ☐<br>50-99 | ☐<br>100-199 | ☐<br>200-999 | ☐<br>1,000-5,000 | ☐<br>5,001-10,000 | ☐<br>10,001-25,000 | ☐<br>25,001-50,000 | ☐<br>50,001-100,000 | ☒<br>Over 100,000 |
|---|---|---|---|---|---|---|---|---|---|

**Estimated Assets (on a Consolidated Basis)**

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $100 million | ☐<br>$50,000,001 to $500 million | ☐<br>$100,000,001 to $1 billion | ☐<br>$500,000,001 to $1 billion | ☒<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

**Estimated Liabilities (on a Consolidated Basis)**

| ☐<br>$0 to $50,000 | ☐<br>$50,001 to $100,000 | ☐<br>$100,001 to $500,000 | ☐<br>$500,001 to $1 million | ☐<br>$1,000,001 to $10 million | ☐<br>$10,000,001 to $50 million | ☐<br>$50,000,001 to $100 million | ☐<br>$100,000,001 to $500 million | ☐<br>$500,000,001 to $1 billion | ☒<br>More than $1 billion |
|---|---|---|---|---|---|---|---|---|---|

ial Form 1) (1/08)                                                                                    FORM B1, Page 2

| (Official Form 1) | Name of Debtor(s): |
|---|---|
| tentary Petition | **GENERAL MOTORS CORPORATION** |
| *is page must be completed and filed in every case)* | |

**All Prior Bankruptcy Case Filed Within Last 8 Years (If more than two, attach additional sheet.)**

| cation here Filed: | N/A | Case Number: N/A | Date Filed: N/A |
|---|---|---|---|
| cation here Filed: | N/A | Case Number: N/A | Date Filed: N/A |

**Pending Bankruptcy Case Filed by any Spouse, Partner or Affiliate of this Debtor (If more than one, attach additional sheet.)**

| ame of ebtor: | **Chevrolet-Saturn of Harlem, Inc.** | Case Number: As filed | Date Filed: **June 1, 2009** |
|---|---|---|---|
| istrict: **outhern District of New York** | | Relationship: **Wholly-Owned Direct Subsidiary of General Motors Corporation** | Judge: **Undetermined** |

| Exhibit A | Exhibit B |
|---|---|
| | (To be completed if debtor is an individual whose debts are primarily consumer debts.) |
| To be completed if debtor is required to file periodic reports (e.g., forms 10K and 10Q) with the Securities and Exchange Commission pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 and is requesting relief under chapter 11.) | I, the attorney for the petitioner named in the foregoing petition, declare that I have informed the petitioner that [he or she] may proceed under chapter 7, 11, 12, or 13 of title 11, United States Code, and have explained the relief available under each such chapter. I further certify that I have delivered to the debtor the notice required by § 342(b). |
| | X _____ _____ |
| ☒ Exhibit A is attached and made a part of this petition. | Signature of Attorney for Debtor(s)        Date |

**Exhibit C**

Does the debtor own or have possession of any property that poses or is alleged to pose a threat of imminent and identifiable harm to public health or safety?

☐ Yes, and Exhibit C is attached and made a part of this petition.

☒ No.

**Exhibit D**

(To be completed by every individual debtor. If a joint petition is filed, each spouse must complete and attach a separate Exhibit D.)

☐ Exhibit D completed and signed by the debtor is attached and made a part of this petition.

If this is a joint petition:

☐ Exhibit D also completed and signed by the joint debtor is attached and made a part of this petition.

**Information Regarding the Debtor – Venue**
(Check any applicable box.)

☐ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in this District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.]

☒ There is a bankruptcy case concerning debtor's affiliate, general partner, or partnership pending in this District.

☐ Debtor is a debtor in a foreign proceeding and has its principal place of business or principal assets in the United States in this District, or has no principal place of business or assets in the United States but is a defendant in an action or proceeding [in a federal or state court] in this District, or the interests of the parties will be served in regard to the relief sought in this District.

**Certification by a Debtor Who Resides as a Tenant of Residential Property**
(Check all applicable boxes)

☐ Landlord has a judgment against the debtor for possession of debtor's residence. (If box checked, complete the following.)

_____
(Name of landlord that obtained judgment)

_____
(Address of landlord)

☐ Debtor claims that under applicable nonbankruptcy law, there are circumstances under which the debtor would be permitted to cure the entire monetary default that gave rise to the judgment for possession, after the judgment for possession was entered, and

☐ Debtor has included with this petition the deposit with the court of any rent that would become due during the 30-day period after the filing of the petition.

☐ Debtor certifies that he/she has served the Landlord with this certification. (11 U.S.C. § 362(1)).

al Form 1) (1/08)

**GENERAL MOTORS CORPORATION**
Name of Debtor(s):

ntary Petition

*page must be completed and filed in every case)*

## Signatures

### Signature(s) of Debtor(s) (Individual/Joint)

declare under penalty of perjury that the information provided in this petition is true and
rect.

petitioner is an individual whose debts are primarily consumer debts and has chosen to
: under chapter 7] I am aware that I may proceed under chapter 7, 11, 12 or 13 of title
United States Code, understand the relief available under each such chapter, and
iose to proceed under chapter 7.

no attorney represents me and no bankruptcy petition preparer signs the petition] I have
:ained and read the notice required by 11 U.S.C. § 342(b).

:quest relief in accordance with the chapter of title 11, United States Code, specified in
:s petition.

_____
Signature of Debtor

_____
Signature of Joint Debtor

_____
Telephone Number (if not represented by attorney)

_____
Date

### Signature of a Foreign Representative

I declare under penalty of perjury that the information provided in this petition is
true and correct, and that I am the foreign representative of a debtor in a foreign
proceeding, and that I am authorized to file this petition.

(Check only one box.)

☐  I request relief in accordance with chapter 15 of title 11, United States Code.
Certified copies of the documents required by 11 U.S.C. § 1515 are attached.

☐  Pursuant to 11 U.S.C. § 1511, I request relief in accordance with the chapter of title
11 specified in this petition. A certified copy of the order granting recognition of
the foreign main proceeding is attached.

X _____
(Signature of Foreign Representative)

_____
(Printed Name of Foreign Representative)

_____
Date

### Signature of Attorney*

c /s/ Stephen Karotkin
_____
Signature of Attorney for Debtor(s)

Stephen Karotkin
_____
Printed Name of Attorney for Debtor(s)

Weil, Gotshal & Manges LLP
_____
Firm Name

767 Fifth Avenue
_____
Address

New York, New York 10153
_____

(212) 310-8000
_____
Telephone Number

June 1, 2009
_____

* In a case in which § 707(b)(4)(D) applies, this signature also constitutes a certification that the attorney
has no knowledge after an inquiry that the information in the schedules is incorrect.

### Signature of Debtor (Corporation/Partnership)

I declare under penalty of perjury that the information provided in this petition is true and
correct, and that I have been authorized to file this petition on behalf of the debtor.

The debtor requests the relief in accordance with the chapter of title 11, United States
Code, specified in this petition.

x /s/ Frederick A. Henderson
_____
Signature of Authorized Individual

Frederick A. Henderson
_____
Printed Name of Authorized Individual

President and Chief Executive Officer
_____
Title of Authorized Individual

June 1, 2009
_____
Date

### Signature of Non-Attorney Bankruptcy Petition Preparer

I declare under penalty of perjury that: (1) I am a bankruptcy petition preparer as defined in 11
U.S.C. § 110; (2) I prepared this document for compensation and have provided the debtor with
a copy of this document and the notices and information required under 11 U.S.C. §§ 110(b),
110(h), and 342(b); and (3) if rules or guidelines have been promulgated pursuant to 11 U.S.C.
§ 110(h) setting a maximum fee for services chargeable by bankruptcy petition preparers, I
have given the debtor notice of the maximum amount before preparing any document for filing
for a debtor or accepting any fee from the debtor, as required in that section. Official Form 19B
is attached.

_____
Printed Name and title, if any, of Bankruptcy Petition Preparer

Social-Security number (If the bankruptcy petition preparer is not an individual, state the
Social-Security number of the officer, principal, responsible person or partner of the bankruptcy
petition preparer.) (Required by 11 U.S.C. § 110.)

_____
Address

x _____

_____
Date

Signature of bankruptcy petition preparer or officer, principal, responsible person, or partner
whose Social-Security number is provided above.

Names and Social-Security numbers of all other individuals who prepared or assisted in
preparing this document unless the bankruptcy petition preparer is not an individual:

If more than one person prepared this document, attach additional sheets conforming to the
appropriate official form for each person.

*A bankruptcy petition preparer's failure to comply with the provisions of title 11 and the
Federal Rules of Bankruptcy Procedure may result in fines or imprisonment or both. 11 U.S.C.
§ 110; 18 U.S.C. § 156.*

NY2:\1991951\11\16_ZZ11!.DOC\72240.0635

## Schedule 1

### All Other Names Used By the Debtor in the Last 8 Years

1. GMC Truck Division
2. NAO Fleet Operations
3. GM Corporation
4. GM Corporation-GM Auction Department
5. National Car Rental
6. National Car Sales
7. Automotive Market Research

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
––––––––––––––––––––––––––––––––––––x
In re                               :    Chapter 11 Case No.
                                    :
GENERAL MOTORS CORPORATION,         :    09-_____ (    )
                                    :
                                    :
            Debtor.                 :
––––––––––––––––––––––––––––––––––––x
```

## CONSOLIDATED LIST OF CREDITORS
## HOLDING 50 LARGEST UNSECURED CLAIMS[1]

Following is the consolidated list of the creditors of General Motors Corporation and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), holding the 50 largest noncontingent unsecured claims as of May 31, 2009.

Except as set forth above, this list has been prepared in accordance with Rule 1007(d) of the Federal Rules of Bankruptcy Procedure and Rule 1007-1 of the Local Rules of Bankruptcy Procedure. This list does not include persons who come within the definition of "insider" set forth in section 101(31) of chapter 11 of title 11 of the United States Code.

---

[1] The information herein shall not constitute an admission of liability by, nor is it binding on, the Debtors. All claims are subject to customary offsets, rebates, discounts, reconciliations, credits, and adjustments, which are not reflected on this Schedule.

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claims who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim (if secured also state value of security) |
|---|---|---|---|---|
| 1.  Wilmington Trust Company | Attn: Geoffrey J. Lewis<br><br>Phone: (302) 636-6438<br>Fax: (302) 636-4145 | Bond Debt | | $22,759,871,912[1] |
| Rodney Square North<br>1100 North Market Street<br>Wilmington, DE 19890<br>United States | Rodney Square North<br>1100 North Market Street<br>Wilmington, DE 19890<br>United States | | | |
| 2.  International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW) | Attn: Ron Gettlefinger<br><br>Phone: (313) 926-5201<br>Fax: (313) 331-4957 | Employee Obligations | | $20,560,000,000[2] |
| 8000 East Jefferson<br>Detroit, MI 48214<br>United States | 8000 East Jefferson<br>Detroit, MI 48214<br>United States | | | |
| 3.  Deutsche Bank AG, London As Fiscal Agent | Attn: Stuart Harding<br><br>Phone:(44) 207 547 3533<br>Fax:  (44) 207 547 6149 | Bond Debt | | $4,444,050,000[3] |
| Theodor-Heuss-Allee 70<br>Frankfurt, 60262<br>Germany | Winchester House<br>1 Great Winchester Street<br>London EC2N 2DB<br>England | | | |

[1]    This amount consolidates Wilmington Trust Company's claims as indenture trustee under the indentures, dated December 7, 1995 ($21,435,281,912) and November 15, 1990 ($1,324,590,000).

[2]    This liability is estimated as the net present value at a 9% discount rate of future contributions, as of January 1, 2009, and excludes approximately $9.4 billion corresponding to the GM Internal VEBA.

[3]    The amount includes outstanding bond debt of $4,444,050,000, based on the Eurodollar exchange rates of $1.39.

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| 4.  International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers -- Communications Workers of America (IUE-CWA)<br><br>3461 Office Park Drive Kettering, OH 45439 United States | Attn: Mr. James Clark<br><br>Phone: (937) 294-9764 Fax: (937) 298-633<br><br>2701 Dryden Road Dayton, OH 45439 United States | Employee Obligations | | $2,668,600,000[4] |
| 5.  Bank of New York Mellon<br><br>One Wall Street New York, NY 10286 United States | Attn: Gregory Kinder<br><br>Phone: (212) 815-2576 Fax: (212) 815-5595<br><br>Global Corporate Trust, 101 Barclay, 7W New York, NY 10286 United States | Bond Debt | | $175,976,800 |
| 6.  Starcom Mediavest Group, Inc.<br><br>35 W. Wacker Drive Chicago, IL 60601 United States | Attn: Laura Desmond<br><br>Phone: (312) 220-3550 Fax: (312) 220-6530<br><br>35 W. Wacker Drive Chicago, IL 60601 United States | Trade Debt | | $121,543,017 |
| 7.  Delphi Corp.<br><br>5725 Delphi Drive Troy, MI 48098 United States | Attn: Rodney O'Neal<br><br>Phone: (248) 813-2557 Fax: (248) 813-2560<br><br>5725 Delphi Drive Troy, MI 48098 United States | Trade Debt | | $110,876,324 |

---

[4]   This liability estimated as the net present value at a 9% discount rate.

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim (if secured also state value of security) |
|---|---|---|---|---|
| 8.   Robert Bosch GmbH | Attn: Franz Fehrenbach<br><br>Phone: (49 71) 1 811-6220<br>Fax: (49 71) 1 811-6454 | Trade Debt | | $66,245,958 |
| 38000 Hills Tech Drive<br>Farmington Hills, MI 48331<br>United States | Robert-Bosch-Platz 1 / 70839<br>Gerlingen-Schillerhoehe,<br>Germany | | | |
| 9.   Lear Corp. | Attn: Robert Rossiter<br><br>Phone: (248) 447-1505<br>Fax: (248) 447-1524 | Trade Debt | | $44,813,396 |
| 21557 Telegraph Road<br>Southfield, MI 48033<br>United States | 21557 Telegraph Road<br>Southfield, MI 48033<br>United States | | | |
| 10.   Renco Group, Inc. | Attn: Lon Offenbacher<br><br>Phone:  (248) 655-8920<br>Fax: (248) 655-8903 | Trade Debt | | $37,332,506 |
| 1 Rockefeller Plaza,<br>29th Floor<br>New York, NY 10020<br>United States | 1401 Crooks Road<br>Troy, MI 48084<br>United States | | | |
| 11.   Enterprise Rent A Car | Attn: Greg Stubblefiled<br><br>Phone: (314) 512 3226<br>Fax: (314) 512 4230 | Trade Debt | | $33,095,987 |
| 6929 N Lakewood Ave<br>Suite 100<br>Tulsa, OK 74117<br>United States | 600 Corporate Park Drive<br>St. Louis, MO 63105<br>United States | | | |

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| 12. Johnson Controls, Inc.<br><br><br>5757 N. Green Bay Avenue<br>Glendale, WI 53209<br>United States | Attn: Stephen A. Roell<br><br>Phone: (414)-524-2223<br>Fax: (414)-524-3000<br><br>5757 N. Green Bay Avenue<br>Milwaukee, WI 53201<br>United States | Trade Debt | | $32,830,356 |
| 13. Denso Corp.<br><br><br>24777 Denso Drive<br>Southfield, MI 48086<br>United States | Attn: Haruya Maruyama<br><br>Phone: (248) 350-7500<br>Fax: (248) 213-2474<br><br>24777 Denso Drive<br>Southfield, MI 48086<br>United States | Trade Debt | | $29,229,047 |
| 14. TRW Automotive<br>Holdings, Corp.<br><br><br>12025 Tech Center Dr.<br>Livonia, MI 48150<br>United States | Attn: John Plant<br><br>Phone: (734) 855-2660<br>Fax: (734) 855-2473<br><br>12001 Tech Center Drive<br>Livonia, MI 48150<br>United States | Trade Debt | | $27,516,189 |
| 15. Magna International, Inc.<br><br><br>337 Magna Drive<br>Aurora, ON L4G 7K1<br>Canada | Attn: Don Walker<br><br>Phone: (905) 726-7040<br>Fax: (905) 726-2593<br><br>337 Magna Drive<br>Aurora, ON L4G 7K1<br>Canada | Trade Debt | | $26,745,489 |
| 16. American Axle & Mfg<br>Holdings, Inc.<br><br><br>One Dauch Drive<br>Detroit, MI 48211-1198<br>United States | Attn: Richard Dauch<br><br>Phone: (313) 758-4213<br>Fax: (313) 758-4212<br><br>One Dauch Drive<br>Detroit, MI 48211<br>United States | Trade Debt | | $26,735,957 |

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| **17.  Maritz Inc.**<br><br>1375 North Highway Drive<br>Fenton, MO 63099<br>United States | Attn: Steve Maritz<br><br>Phone: (636) 827-4700<br>Fax: (636) 827-2089<br><br>1375 North Highway Drive<br>Fenton, MO 63099<br>United States | Trade Debt | | $25,649,158 |
| **18.  Publicis Groupe S.A.**<br><br>133 Ave des Champs Elysees<br>Paris, 75008<br>France | Attn: Maurice Levy<br><br>Phone: (33 01) 4 443-7000<br>Fax: (33 01) 4 443-7550<br><br>133 Ave des Champs-Elysees<br>Paris, 75008<br>France | Trade Debt | | $25,282,766 |
| **19.  Hewlett Packard Co.**<br><br>3000 Hanover Street<br>Palo Alto, CA 94304<br>United States | Attn: Mike Nefkens<br><br>Phone: (313) 230 6800<br>Fax: (313) 230 5705<br><br>500 Renaissance Center,<br>MC:20A Detroit, MI 48243 | Trade Debt | | $17,012,332 |
| **20.  Interpublic Group of Companies, Inc.**<br><br>1114 Avenue of the Americas<br>New York, NY 10036<br>United States | Attn: Michael Roth<br><br>Phone:  (212) 704-1446<br>Fax: (212) 704.2270<br><br>1114 Avenue of the Americas<br>New York, NY 10036<br>United States | Trade Debt | | $15,998,270 |
| **21.  Continental AG**<br><br>Vahrenwalder Str. 9<br>D-30165 Hanover,<br>Germany | Attn: Karl-Thomas<br><br>Phone: 49-69-7603-2888<br>Fax: 49-69-7603-3800<br><br>Guerickestrasse 7, 60488<br>Frankfurt 60488<br>Germany | Trade Debt | | $15,539,456 |

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim (if secured also state value of security) |
|---|---|---|---|---|
| 22. Tenneco Inc. | **Attn:** Gregg Sherrill<br><br>Phone: (847) 482-5010<br>Fax: (847) 482-5030 | Trade Debt | | $14,837,427 |
| 500 North Field Drive<br>Lake Forest, IL 60045<br>United States | 500 North Field Drive<br>Lake Forest, IL 60045<br>United States | | | |
| 23. Yazaki Corp. | **Attn:** George Perry<br><br>Phone: (734) 983-5186<br>Fax: (734) 983-5197 | Trade Debt | | $13,726,367 |
| 6801 Haggerty Road<br>Canton, MI 48187<br>United States | 6801 Haggerty Road, 48E<br>Canton, MI 48187<br>United States | | | |
| 24. International Automotive<br>Components | **Attn:** James Kamsickas<br><br>Phone: (313) 253-5208<br>Fax: (313) 240-3270 | Trade Debt | | $12,083,279 |
| 5300 Auto Club Drive<br>Dearborn, MI 48126<br>United States | 5300 Auto Club Drive<br>Dearborn, MI 48126<br>United States | | | |
| 25. Avis Rental Car | **Attn:** Robert Salerno<br><br>Phone: (973) 496-3514<br>Fax: (212) 413-1924 | Trade Debt | | $12,040,768 |
| 6 Sylvan Way<br>Parsippany, NJ 07054<br>United States | 6 Sylvan Way<br>Parsippany, NJ 07054<br>United States | | | |
| 26. FMR Corp. | **Attn:** Robert J. Chersi<br><br>Phone: (617)563-6611<br>Fax: (617) 598-9449 | Trade Debt | | $11,980,946 |
| 82 Devonshire St<br>Boston, MA 02109<br>United States | 82 Devonshire St<br>Boston, MA 02109<br>United States | | | |

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| 27.  AT&T Corp.<br><br><br>208 South Akard Street<br>Dallas, TX 75202<br>United States | Attn: Richard G. Lindner<br><br>Phone: (214) 757-3202<br>Fax: (214) 746-2102<br><br>208 South Akard Street<br>Dallas, TX 75202<br>United States | Trade Debt | | $10,726,376 |
| 28.  Union Pacific Corp.<br><br><br>1400 Douglas Street<br>Omaha, NE 68179<br>United States | Attn: Robert M. Knight, Jr.<br><br>Phone: (402) 544-3295<br>Fax: (402) 501-2121<br><br>1400 Douglas Street<br>Omaha, NE 68179<br>United States | Trade Debt | | $10,620,928 |
| 29.  Warburg E M Pincus & Co., Inc.<br><br><br>466 Lexington Ave<br>New York, NY 10017<br>United States | Attn: Joseph P. Landy<br><br>Phone:  (212) 878-0600<br>Fax:  (212) 878-9351<br><br>466 Lexington Ave<br>New York, NY 10017<br>United States | Trade Debt | | $10,054,189 |
| 30.  Visteon Corp.<br><br><br>One Village Center Drive<br>Van Buren Township, MI 48111<br>United States | Attn: Donald J. Stebbins<br><br>Phone: (734) 710-7400<br>Fax: (734) 710-7402<br><br>One Village Center Drive<br>Van Buren Twp., MI 48111<br>United States | Trade Debt | | $9,841,774 |
| 31.  US Steel<br><br><br>600 Grant Street Room 1344<br>Pittsburgh, PA 15219<br>United States | Attn: John Surma<br><br>Phone: (412) 433-1146<br>Fax: (412) 433-1109<br><br>600 Grant Street<br>Room 1344<br>Pittsburgh, PA 15219<br>United States | Trade Debt | | $9,587,431 |

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| 32.  Arcelor Mittal | Attn: Lakshmi Mittal<br><br>Phone: 44 20 7543 1131<br>Fax: (44 20) 7 629-7993 | Trade Debt | | $9,549,212 |
| 19, Avenue De La Liberte<br>Luxembourg,  L-2930<br>Luxembourg | Berkley Square House, 7th Floor Berkley Square House<br>London, England W1J6DA | | | |
| 33.  AK Steel Holding, Corp. | Attn: Jim Wainscott<br><br>Phone: (513) 425-5412<br>Fax: (513) 425-5815 | Trade Debt | | $9,116,371 |
| 9227 Centre Pointe Drive<br>Westchester, OH 45069<br>United States | 9227 Centre Pointe Drive<br>Westchester, OH 45069<br>United States | | | |
| 34.  CSX Corp. | Attn: Oscar Muñoz<br><br>Phone: (904) 359-1329<br>Fax: (904) 359-1859 | Trade Debt | | $8,884,846 |
| 500 Water Street, 15th Floor<br>Jacksonville, FL 32202<br>United States | 500 Water Street, 15th Floor<br>Jacksonville, FL 32202<br>United States | | | |
| 35.  Hertz Corporation | Attn: Elyse Douglas<br><br>Phone: (201) 450-2292<br>Fax: (866) 444-4763 | Trade Debt | | $8,710,291 |
| 14501 Hertz Quail Springs<br>Parkway<br>Oklahoma City, OK 73134<br>United States | 225 Brae Boulevard Park Ridge, NJ 07656<br>United States | | | |

8

| Name of creditor and complete mailing address including zip code | Name, telephone number, and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed or subject to setoff | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| 36.  Alpha S.A. de C.V.<br><br><br><br><br>Ave. Gómez Morín No. 1111 Sur Col. Carrizalejo San Pedro Garza García, N. L. C.P. 66254 Mexico | Attn: Manuel Rivera<br><br>Phone: (52 81) 8 748 1264<br>Fax: (52 81) 8 748-1254<br><br><br>Ave. Gómez Morín No. 1111 Sur Col. Carrizalejo San Pedro Garza García, N. L. C.P. 66254 Mexico | Trade Debt | | $8,209,133 |
| 37.  Voith AG<br><br><br><br>2200 N. Roemer Rd Appleton, WI United States | Attn: Hubert Lienhard<br><br>Phone: 49 7321 372301<br><br><br>St. Poltener Strasse 43 Heidenheim, D-89522 Germany | Trade Debt | | $7,146,187 |
| 38.  Goodyear Tire & Rubber Co.<br><br><br><br>1144 E Market St Akron, OH 44316-0001 United States | Attn: Robert Keegan<br><br>Phone: (330) 796-1145<br>Fax: (330) 796-2108<br><br><br>1144 East Market Street Akron, OH 44316-0001 United States | Trade Debt | | $6,807,312 |
| 39.  Manufacturers Equipment & Supply Co.<br><br><br><br>2401 Lapeer Rd Flint, MI 48503-4350 United States | Attn: Greg M. Gruizenga<br><br>Phone: (800) 373-2173<br>Fax: (810) 239-5360<br><br><br>2401 Lapeer Rd Flint, MI 48503 United States | Trade Debt | | $6,695,777 |
| 40.  Severstal O A O<br><br><br><br>4661 Rotunda Drive P.O. Box 1699 Dearborn, MI 48120 United States | Attn: Gregory Mason<br><br>Phone: (313) 317-1243<br>Fax: (313) 337-9373<br><br><br>14661 Rotunda Drive, P.O. Box 1699 Dearborn, MI 48120 United States | Trade Debt | | $6,687,993 |

9

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim, trade debt, bank loan, government contract, etc. | Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | Amount of claim (if secured also state value of security) |
|---|---|---|---|---|
| 41.  Exxon Mobil Corp. | **Attn:** James P. Hennessy<br><br>**Phone:** (703) 846-7340<br>**Fax:** (703) 846-6903 | Trade Debt | | $6,248,959 |
| 5959 Las Colinas Boulevard<br>Irving, TX 75039<br>United States | 3225 Gallows Road<br>Fairfax, VA 22037<br>United States | | | |
| 42.  Hitachi Ltd. | **Attn:** Yasuhiko Honda<br><br>**Phone:** (81 34) 564-5549<br>**Fax:** (81 34) 564-3415 | Trade Debt | | $6,168,651 |
| 955 Warwick Road<br>P.O. Box 510<br>Harrodsburg, KY 40330<br>United States | Akihabara Daibiru Building 18-13, Soto-Kanda, 1-Chome<br>Chiyoda-Ku, Tokyo, 101-8608<br>Japan | | | |
| 43.  Mando Corp. | **Attn:** Zung Su Byun<br><br>**Phone:** (82 31) 680-6114<br>**Fax:** (82 31) 681-6921 | Trade Debt | | $5,459,945 |
| 4201 Northpark Drive<br>Opelika, AL 36801<br>United States | 343-1, Manho-Ri ,Poseung-Myon, Pyongtaek Kyonggi,<br>South Korea, Korea | | | |
| 44.  General Physics Corp. | **Attn:** Sharon Esposito Mayer<br><br>**Phone:** (410) 379-3600<br>**Fax:** (410) 540-5302 | Trade Debt | | $5,208,070 |
| 1500 W. Big Beaver Rd.<br>Troy, MI 48084<br>United States | 6095 Marshalee Drive, St. 300<br>Elkridge, MD 21075<br>United States | | | |
| 45.  Sun Capital Partners, Inc. | **Attn:** Mr. Kevin<br><br>**Phone:** (561) 948-7514<br>**Fax:** (561) 394-0540 | Trade Debt | | $4,747,353 |
| 5200 Town Center Circle,<br>Suite 600<br>Boca Raton, FL 33486<br>United States | 5200 Town Center Circle, Suite 600 Boca Raton, FL 33486<br>United States | | | |

NY2:\1991951\11\16_ZZ111.DOC\72240.0635

| Name of creditor and complete mailing address including zip code | Name, telephone number and complete mailing address, including zip code, of employee, agent, or department of creditor familiar with claim who may be contacted | Nature of claim (trade debt, bank loan, government contract, etc.) | Indicate if claim is contingent, unliquidated, disputed, or subject to setoff | Amount of claim [if secured also state value of security] |
|---|---|---|---|---|
| 46. Jones Lang Lasalle, Inc.<br><br>200 East Randolph Drive<br>Chicago, IL 60601<br>United States | Attn: Colin Dyer<br><br>Phone: (312) 228-2004<br>Fax: (312) 601-1000<br><br>200 East Randolph Drive<br>Chicago, IL 60601<br>United States | Trade Debt | | $4,651,141 |
| 47. McCann Erickson<br><br>238 11 Avenue, SE<br>Calgary, Alberta T2G OX8<br>Canada | Attn: Gary Lee<br><br>Phone: (646) 865 2606<br>Fax: (646) 865 8694<br><br>622 3rd Avenue<br>New York, NY 10017<br>United States | Trade Debt | | $4,603,457 |
| 48. Flex-N-Gate Corp.<br><br>1306 East University Ave.<br>Urbana, IL 61802<br>United States | Attn: Shahid Khan<br><br>Phone: (217) 278-2618<br>Fax: (217) 278-2318<br><br>1306 East University<br>Urbana, IL 61802<br>United States | Trade Debt | | $4,490,775 |
| 49. Bridgestone Corp.<br><br>535 Marriott Drive<br>Nashville, TN 37214<br>United States | Attn: Shoshi Arakawa<br><br>Phone: (81 33) 567 0111<br>Fax: (81 33) 567 9816<br><br>10-1 Kyobashi 1-chome Chuo-ku, Tokyo, Japan 104<br>Japan | Trade Debt | | $4,422,763 |
| 50. Cap Gemini America Inc<br><br>623 Fifth Avenue, 33rd Floor<br>New York, NY 10022<br>United States | Attn: Thierry Delaporte<br><br>Phone: (212) 314-8327<br>Fax: (212) 314-8018<br><br>623 Fifth Avenue, 33rd Floor<br>New York, NY 10022<br>United States | Trade Debt | | $4,415,936 |

$4,4 5,93

## DECLARATION UNDER PENALTY OF PERJURY:

I, the undersigned authorized officer of the corporation named as Debtor in this case, declare under penalty of perjury that I have reviewed the foregoing Consolidated List of Creditors Holding the 50 Largest Unsecured Claims and that the list is true and correct to the best of my information and belief.

Dated: June 1, 2009

/s/ Frederick A. Henderson
Signature

NAME:  Frederick A. Henderson

TITLE:  President and Chief Executive Officer

09-50026-mg    Doc 11212    Filed 12/06/11    Entered 12/06/11 main Document Main Document
09-50026-reg    Doc 1    Filed 06/01/09    Entered 06/01/09 07:57:06 Main Document Main Document
Pg 18 of 24    Pg 80 of 201

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
GENERAL MOTORS CORPORATION,               :        09-____ (__)
                                          :
                    Debtor.               :
                                          :
-------------------------------------------------------x

## EXHIBIT "A" TO VOLUNTARY PETITION

1.  The debtor's securities are registered under Section 12 of the Securities and Exchange Act of 1934, and the SEC file number is 1-143.

2.  The following financial data is the latest available information and refers to the debtor's condition on March 31, 2009.

    a.  Total assets on a consolidated basis: _____$82,290,000,000_____

    b.  Total debts on a consolidated basis (including debts listed in 2.c., below): _____
        $172,810,000,000

                                                          Approximate
                                                          number of
                                                          holders.

    c.  Debt securities held by more than 500 holders.

        secured    unsecured    subordinated
        ☐          ☒            ☐              $21,694,000,000[1]   Greater than 500

        secured    unsecured    subordinated
        ☐          ☒            ☐              $3,221,000,000[2]    Greater than 500

        secured    unsecured    subordinated
        ☐          ☒            ☐              $1,388,000,000[3]    Greater than 500

    d.  Number of shares of preferred stock: _____6,000,000 shares authorized; no shares issued and outstanding.

---

[1] Issued pursuant to Senior Indenture, dated as of December 7, 1995.

[2] Issued pursuant to Senior Indenture, dated as of July 3, 2003.

[3] Issued pursuant to Senior Indenture, dated as of November 15, 1990.

e.    Number of shares of common stock: _____2,000,000,000 shares authorized,_____
800,937,541 shares issued, and 610,505,273 shares outstanding, all as of March
31, 2009.

3.    Brief description of debtor's business: __The debtor, together with its affiliates, is__
engaged in the manufacturing, marketing, and distribution of cars and trucks
worldwide.

4.    List the names of any person who directly or indirectly owns, controls, or holds, with
power to vote, 5% or more of the voting securities of debtor: ___State Street Bank__
and Trust Company (17.0%)

## APPROVAL OF BANKRUPTCY FILING, 363 SALE AND RELATED MATTERS

WHEREAS, at this meeting and at prior meetings, the Board of Directors (the "Board") of General Motors Corporation (the "Corporation") has extensively reviewed the alternatives available to the Corporation and its direct and indirect subsidiaries Saturn, LLC, Saturn Distribution Corporation and Chevrolet-Saturn of Harlem, Inc. (the "Filing Subsidiaries") and has determined that the commencement of a Chapter 11 case in the United States by each of the Corporation and the Filing Subsidiaries presents the only opportunity for preserving and maximizing the value of the enterprise for the benefit of the Corporation's stakeholders and other interested parties;

## COMMENCEMENT OF BANKRUPTCY CASES

RESOLVED, that the Corporation and each of the Filing Subsidiaries be, and it hereby is, authorized and directed to file a petition seeking relief under the provisions of Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code");

RESOLVED, that each of the Proper Officers (it being understood that, for the purposes of these resolutions, the "Proper Officers" shall include, without limitation, the President and Chief Executive Officer, any vice president of the Corporation (including executive or group vice presidents), the Controller and Chief Accounting Officer, the Secretary, any Assistant Secretary, the Treasurer, any Assistant Treasurer and any other officer of the Corporation determined by the Legal Staff of the Corporation to be an appropriate officer with respect to the action taken) is hereby authorized and directed, in the name and on behalf of the Corporation, to execute, verify, and file all petitions under Chapter 11 of the Bankruptcy Code and to cause the same to be filed in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") at such time as such Proper Officer shall determine;

RESOLVED, that in connection with the commencement of the Chapter 11 case by the Corporation, each Proper Officer is hereby authorized, in the name and on behalf of, the Corporation, to negotiate, execute, and deliver such notes, security and other agreements, and instruments as such Proper Officer considers appropriate to enable the Corporation to utilize cash collateral on the terms and conditions such Proper Officer or Proper Officers executing the same may consider necessary, proper, or desirable, and to consummate the transactions contemplated by such notes, security and other agreements and instruments on behalf of the Corporation, subject to Bankruptcy Court approval;

RESOLVED, that each Proper Officer is hereby authorized and directed, in the name and on behalf of the Corporation, to cause the Corporation to enter into, execute, deliver, certify, file and/or record, negotiate, and perform, any and all petitions, schedules, lists, motions, certifications, agreements, instruments, affidavits, applications, including without limitation, applications for approvals or rulings of governmental or regulatory authorities, or other documents and to take such other actions, as in the judgment of such Proper Officer shall be or become necessary, proper, or desirable in connection with the Corporation's Chapter 11 case;

RESOLVED, that the Board sees no objection to each of the Filing Subsidiaries taking any and all action, including authorizing a filing in the Bankruptcy Court, and to executing and delivering all documents, agreements, motions and pleadings as are

3

necessary, proper, or desirable to enable such Filing Subsidiary to carry out the filing in Bankruptcy Court contemplated hereby;

RESOLVED, that the Board sees no objection to a filing by GMCL, if determined to be appropriate by the Board of Directors of GMCL, for protection from its creditors under the Companies' Creditors Arrangement Act (the "CCAA") or to any actions taken by GMCL as are necessary, proper, or desirable to enable GMCL to carry out such filing;

## EXECUTION OF MASTER SALE AND PURCHASE AGREEMENT

RESOLVED, that the Board finds that the sale of substantially all of the assets of the Corporation to Auto Acquisition Corp., a new entity formed by the United States Department of the Treasury, in accordance with the Purchase Agreement (as defined below), is expedient and in the best interests of the Corporation;

RESOLVED, that the form, terms and provisions of the proposed Master Sale and Purchase Agreement (the "Purchase Agreement") by and among the Corporation, the Filing Subsidiaries and Vehicle Acquisition Holdings LLC., in substantially the form reviewed by the Board, are hereby approved, and the sale of substantially all of the assets of the Corporation set forth in the Purchase Agreement on the terms set forth in the Purchase Agreement be, and hereby is, authorized and approved;

RESOLVED, that each of the Proper Officers, or any of them, is hereby authorized and directed to execute and deliver the Purchase Agreement, with such changes therein or revisions thereto as the Proper Officer or Officers executing and delivering the same may in his or their sole and absolute discretion approve consistent with these Resolutions and with the advice of the Corporation's Legal Staff, and to cause the Corporation to carry out the terms and provisions thereof;

RESOLVED, that each of the Proper Officers, or any of them, is hereby authorized and directed to approve, execute and deliver from time to time such amendments, changes or modifications to the Purchase Agreement as any such Proper Officer shall, consistent with these Resolutions and with the advice of the Corporation's Legal Staff, deem necessary, proper or advisable;

RESOLVED, that if the Corporation determines no later than the due date (including any extensions) of the Corporation's tax return for the taxable year in which the sale contemplated by the Purchase Agreement is closed that an Agreed G Transaction (as defined in the Purchase Agreement) has occurred, (i) the Purchase Agreement will be deemed to constitute a "plan" of the Corporation for purposes of Sections 368 and 354 of the Internal Revenue Code of 1986, as amended (the "Tax Code"), and (ii) the Corporation shall treat the transactions contemplated in the Purchase Agreement, in combination with the subsequent liquidation of the Corporation and the Filing Subsidiaries (as defined in the Purchase Agreement), as a tax-free reorganization pursuant to Section 368(a)(1)(G) of the Tax Code (with any actual or deemed distribution by the Corporation qualifying solely under Sections 354 and 356 of the Tax Code but not under Section 355 of the Tax Code);

## EXECUTION OF LOAN FACILITIES – U.S. AND CANADA

RESOLVED, that in connection with the commencement of the Chapter 11 case by the Corporation, each of the Proper Officers, or any of them, is hereby authorized to

negotiate, execute, deliver and cause the Corporation to perform its obligations under (i) a secured superpriority debtor–in–possession credit agreement (the "Credit Agreement"), among the Corporation, a debtor and debtor in possession under Chapter 11 of the Bankruptcy Code, as borrower, certain subsidiaries of the Corporation listed therein, as guarantors, the United States Department of the Treasury, as lender, and Export Development Canada, as lender, substantially in the form and on the terms and conditions presented to the Board; (ii) one or more notes ("Notes") providing for loans under the Credit Agreement in an aggregate principal amount not to exceed $65 billion plus the principal amount of any Additional Notes (as defined in the Credit Agreement), in each case together with interest thereon at the rate specified in the Credit Agreement and (iii) the other agreements contemplated by the Credit Agreement, including, pledge agreements, security agreements, mortgages, financing statements and any other similar documents in connection with granting a security interest in or a pledge of the Corporation's assets as collateral to secure the Obligations (as defined in the Credit Agreement) and any other agreements or documents (the documents described in this clause (iii) collectively described herein as the "Other Financing Documents"), as any Proper Officer determines is necessary, proper, or desirable to consummate the transactions contemplated by the Credit Agreement and the Other Financing Documents, in each case consistent with these Resolutions and the advice of the Corporation's Legal Staff, as evidenced by the execution thereof by the Proper Officer;

RESOLVED, that each of the Proper Officers, or any of them, is hereby authorized to grant a security interest in and pledge assets as collateral under the Guaranty and Security Agreement, the Equity Pledge Agreement and each Other Financing Document to which the Corporation is party;

RESOLVED, that the Board sees no objection to the issuance by all or any of the direct or indirect subsidiaries of the Corporation of guarantees of the Obligations and the granting of a security interest in or the pledge of any assets by such subsidiaries as collateral to secure the Obligations by entering into the Guaranty and Security Agreement and the Equity Pledge Agreement, in each case substantially in the form reviewed by the Board, together with the Other Financing Documents to which such subsidiary is party;

RESOLVED, that the Board sees no objection (a) to the execution and delivery by GMCL of an amended and restated loan agreement with Export Development Canada ("EDC") as lender (the "Canadian Credit Agreement") amending the loan agreement between GMCL and EDC, among other parties, dated as of April 29, 2009 (the "April EDC Credit Agreement") or (b) to the provision of secured guaranties of certain obligations of GMCL under the Canadian Credit Agreement to be given by 1908 Holdings Limited, Parkwood Holdings Limited, and GM Overseas Funding LLC, each of which is a direct or indirect subsidiary of GMCL;

RESOLVED, that the Corporation's guarantee of certain obligations of GMCL under the Canadian Credit Agreement secured by the pledge of some or all of its ownership interest in GMCL is approved on terms to be approved by the CFO, which may include the Corporation's participation in the Canadian Credit Agreement as a borrower, consistent with the advice of the Corporation's Legal Staff;

RESOLVED, that the Corporation's guarantee of GMCL's obligations under the April EDC Credit Agreement as approved at the meeting of the Board on April 24, 2009 will continue to be valid, binding and enforceable until the effectiveness of the Canadian Credit Agreement, and in connection with the foregoing, the Proper Officers, or any Proper Officer, is authorized to execute and deliver a Confirmation and Acknowledgment (the "Acknowledgment") stating that the April EDC Credit Agreement may be modified or supplemented by EDC and GMCL without the Corporation's participation;

RESOLVED, that the Proper Officers, or any Proper Officer, is hereby authorized to execute and deliver the guaranty and any other agreements or documents to which the Corporation is a party or to take any other actions that he determines are necessary, appropriate or advisable to consummate the transactions contemplated by the Canadian Credit Agreement;

## GENERAL AUTHORIZATION AND RATIFICATION

RESOLVED, that each Proper Officer is authorized and directed, consistent with these Resolutions and with the advice of the Corporation's Legal Staff: (i) to negotiate, execute, deliver, certify, file and/or record, and perform, any and all of the agreements, documents, and instruments referenced herein, and such other agreements, documents, and instruments and assignments thereof as may be required or as such Proper Officer deems appropriate or advisable, or to cause the negotiation, execution, and delivery thereof, as the case may be, in such form and substance as such Proper Officer may approve, together with such changes and amendments to any of the terms and conditions thereof as such Proper Officer may approve, (ii) to negotiate, execute, deliver, certify, file and/or record, and perform any agreements, documents, certificates, consents, filings, and applications relating to the Resolutions adopted and matters ratified or approved herein and the transactions contemplated thereby, and amendments and supplements to any of the foregoing, and to take such other action as may be required or as such Proper Officer deems appropriate or advisable in connection therewith, and (iii) to do such other things as may be required, or as may in such Proper Officer's judgment be necessary, proper, or desirable, to carry out the intent and effectuate the purposes of the Resolutions adopted and matters ratified or approved herein and the consummation of the transactions contemplated hereby; and

RESOLVED, that all actions taken by the Proper Officers, or any of them, prior to the date of the foregoing Resolutions adopted at this meeting and within the authority conferred, are hereby ratified, confirmed, approved in all respects as the act and deed of the Corporation.

\* \* \* \* \*

## ASSISTANT SECRETARY'S CERTIFICATE

## GENERAL MOTORS CORPORATION

May 31, 2009

As a duly elected and appointed Assistant Secretary of General Motors Corporation, a Delaware corporation (the "Corporation") I, Anne T. Larin, certify that a true and complete copy of resolutions duly adopted by the Board of Directors of the Corporation on May 31, 2009 is attached to this Certificate and that such resolutions have not been modified, rescinded or amended and are now in full force and effect.

IN WITNESS WHEREOF, I have executed this certificate as of the date written above.

_____

Name:  Anne T. Larin
Title:   Assistant Secretary

## AFFIRMATION OF SERVICE BY FIRST CLASS MAIL

Brianna Benfield, an attorney duly admitted to practice law before the Courts of the State of Virginia, hereby affirms the following to be true under penalty of perjury:

I am over the age of eighteen (18) years, am employed by the law firm of Weil, Gotshal & Manges LLP, and am not a party to this action.

On the 30th day of July, 2010, I served a copy of the foregoing Notice of Bankruptcy in the above-captioned action upon:

> Clinton Tullis
> Margaret Tullis
> 16300 184th Avenue SE
> Renton, Washington 98058-0903
>
> *Plaintiffs (Pro Se)*
>
> William J. O'Brien,
> Law Office of William J. O'Brien
> 999 3rd Avenue, Suite 805
> Seattle, WA 98104-4019
>
> *Counsel for Defendant Cornforth-Campbell Dealership*

by depositing true copies of the same in a properly addressed pre-paid envelope and sent via First Class US Mail.

Dated: July 30, 2010

_(signature)_

**EXHIBIT H**

FILED

10 DEC 30 PM 3: 23

KING COUNTY
SUPERIOR COURT CLERK
KENT, WA

HONORABLE JUDGE HILL

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY
OF KING AT MALENG REGIONAL JUSTICE CENTER LOCATED IN CITY OF KENT

CLINTON M. TULLIS AND MARGARET L. TULLIS
and the palimony relationship thereof as Pro Se
                                    Plaintiffs

No. 10-2-25699-7 KNT

GENERAL MOTORS CORPORATION and AGENCY OF
CORNFORTH-CAMPBELL DEALERSHIP THEREOF.
WEIL, GOTSHAL & MANGES LLP, DAVID R BERG, &
BRIANNA BENFIELD of or For MOTORS LIQUIDATION CO.
on behalf of:                    Defendants

COMPLAINT
REDRESSED FOR TRIAL

## I.
### PARTIES AND STATUS OF DEFENDANTS

1.1. Defendants challenge Washington State Criminal Laws and could be "forever denied" Vehicle

business in Washington State as inferred in Washington State RCWs, within this Plaintiffs brief.

1.1a. At all times material hereto, Pro-Se Plaintiffs/Complainants, Clinton M. Tullis and Margaret L. Tullis

for approximately " Fifty Six years" have been in total companionship inclusive of the last thirty years.

1.2. Plaintiffs have resided at 16300-184th Ave., SE, city of Renton, County of King, State of Washington,

zip code: 98058-0903 since October of 1991 and within the State of Washington since 1954.

1.2a. The conspiring Defendants were believed to be, and therefore alleged to be, all doing business

and officially responsible of safety performance of new and used vehicles as a General Motors

Corporation Agency advertised as a GMC Mr. Good Wrench Dealership operated by Cornforth

**Exhibits # 1 & 2**

Campbell, at 4300 Valley Avenue N.E.; PO Box 537; Puyallup, WA. 98371. Service was ordered to

vacate its dealership by General Motors Corporation, and immediately closed its Doors.

**1.2b. Pierce County Sheriff's Office served Plaintiffs recent Summons and Complaint to Cornforth
Campbell at 305, 2nd St. S.E., Puyallup, WA, on July 21, 2010 to assistant Manager: Kurt Johnson.
1.2c. Cornforth-Campbell then transferred their case to their Insurance Company of:
ZURICH: Universal Underwriters Insurance Company Claims Adjuster: Rashelle Woolcott 3249
Quality DR., Suite 300: Rancho Cordova, Ca. 95670.** Plaintiffs reserve the right to personal contact.

Complaint _ 1
Redressed for trial

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

1.3 The dual responsibility of the original Corporation and Agency is again, a responsibility of General Motors Corporation whom has commenced immediately to restructuring its operations and with Government assist, have rearranged its operations with Cornforth Campbell as one of GMC special chosen Locations and management considered to perform as a premium sales activities Agency.

**Exhibit # 11**

1.3a1. Cornforth Campbell should, as of now, be demanded to positive understanding of its total responsibilities inclusive, of absolute truth in stability and performance declared in written contract, of each and all vehicles in every transaction of any nature to clients                              **Exhibit # 2.**

1.3a2. Washington State Legislature should now design perfected Rules for all Automobiles, prior to any Sales to users, by Manufacturers, Agency's or Individuals, to be examined by State Licensed Mechanics And Shops, In the Similar format and time, as applied by Emission Control Centers; to guaranty absolute safe conditions to be on any and all roads at any time or place. Before issuing positive title transfers of vehicles in or outside of the State of Washington. The Present "Open-Fields" type of Sales is the major factor in Highway Deaths, and is backed by the use of Speed Controls; Whether on Shopping Malls areas, City or County Residential Areas, County or State Highways, or Freeways.

**Exhibits # 2 & 14.**

1.3b. They must be brought to realize that ignoring their responsibility, also subjects them to road injury and all citizens should not have to fear their vehicles, or conditions of others vehicles during travels.

1.3c.The responsibility of the original Corporation and Agency is a responsibility of General Motors Corporation and has been the GMC responsibility of complicity, from the beginning of this case.

**Exhibit # 13**

1.3d.The factor of responsibility of Corporation and Agency is a dual responsibility with the most serious policing and policy assurances are the responsibility of the Corporation relationship as expressed in Plaintiffs RCW's (Rules of the Court in the State of Washington) emphasizing Complicity.  **Exhibit # 11.**

1.3e. No.1 conspiring Defendants believed to be and therefore alleged to be General Motors Corporation, PO Box 33172 in the city of Detroit, State of Michigan 48232-5172; Service of former request.

**1.3e1. 537248-740, phone No. 1-866-790-5700 and Now in Chapter 11, Bankruptcy being officiated by the Law firm of Weil, Gotshal & Manges. LLP. To Attention of: Brianna Benfield: & David R. Berg. MLC. 1300 i Street, NW; Suite 900.Washington, D.C. 20005. Ph: (202) 682-7000 Motors Liquidation Company reserves all rights and remedies. Contact recommended to Brianna Benfield** NOTE:  Plaintiffs reserve the right to personal conduct of questions and answers to these: Parties.
**1.3e2. This firm has been properly informed by Plaintiffs; That because of Washington State RCW laws on Willful, Malicious Conduct of Defendants as described in this brief of Plaintiffs; Cannot take bankrupcy or use other means to hide values.**                           **Exhibit # 18**
**1.3f.The Threat of placing Plaintiffs in jail within five days, if Plaintiffs did not drop the case; Did not and does not comply with Washington State Law under RCW Rules. Defendants firm is now**

Complaint - 2
Redressed for trial

16300-184th ave. S.E Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

waiting to receive further notice on Trial Dates, etc. from Plaintiffs applicable to Washington State, King County Superior Court Instructions and For which Plaintiffs will and does demand a Grand Jury Trial if denied a Summary Judgment. Either would comply with this case.    **Exhibit # 18.**

1.3g. This Law Suit is filed with the Maleng Regional Justice Center, Superior Court in the City of

Kent, County of King, State of Washington, address of "620-West James Street, Kent, WA. 98032.

1.3h.The ridiculous untruths of Defendants former "Attorneys" briefs were bullying techniques that

Plaintiffs learned to handle years ago; and their inappropriate designated Statute of limitations of which

legally allows Plaintiffs to file this law suit within ten years because of the crimes committed by the

complicity between General Motors Corporation through its Agency of Cornforth-Campbell GMC Mr.

Good Wrench.                                                                              **Exhibit # 11**

**1.3i. Conspiracy:** A combination of two or more persons, etc. to commit a criminal or unlawful act or to commit a lawful act by Criminal or Unlawful Means; or a Combination of two or more persons to accomplish an unlawful purpose, or some purpose not in itself unlawful by an unlawful means.
                                                                                        **Exhibit # 1**

**1.3j. Accessory:** One who aids or contributes in a secondary way or assists in or contributes to crime as a subordinate. See 216So. 2d 829,831 The failure to report the commission of a crime of a felony is sometimes itself a crime. An accessory does acts which facilitate others in commission or attempted commission of Crime or avoid apprehension for a crime.    **Exhibit # 1**

**1.3k. COMPLICITY:** Accomplice: An individual who voluntarily engages with another in the commission or attempted commission of a crime. See 165 N.E. 2d 814; One who is liable for the identical offense charged against the Defendant, See 233 p2d 347, Liability is shared. **Exhibit # 11**

**1.3l. Criminal Liability:** of a Corporation: RCW 90.08.030; RCW. 9A.28.040: Criminal Conspiracy RCW 9A.28.020: Criminal attempt of Agent of Corporation: Class B. Felony when the crime attempted is a class A felony other than an offense listed in A of this subsection must be commenced within a "ten year" statute of limitations unless action on a State or Federal Judgment period is extended for an additional ten years. RCW 9A.04.110    **Exhibit # 12**

**1.3m. STATUTE OF LIMITATIONS:** Ten Years and could extend for another ten years if needed.
                                                                                        **Exhibit # 12**

**1.3n. Criminal Negligence:** A Person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation.    **Perjured : Exhibits # 1 & 2**

**1.3.o. ASSEMBLY'S OF GENERAL MOTORS VEHICLES;** {AS OF RECEIVING COMPLAINTS FROM CLINTON M. TULLIS FOR COURT ACTION}; HAS LED GENERAL MOTORS CORPORATION TO PLACING STRONGER CHANNEL FRAMES AND BETTER WELDING FOR VEHICLE STABILITY AND STEERING CONTROL, AS IS STATED ON the ADMISSION SENT TO PLAINTIFFS. By Former Chief Chairman: Mr. Rick Waggoner whom positively, instantly did a big favor for GMC and for the General Public, whom would be occasioned to meet on some of the nations roads Plaintiff was also thanked for bringing the facts to the Chieftains attention.    **Exhibit # 13**

1.3p. Plaintiffs have received notices from at least three GMC sales managers, thanking Plaintiffs for immediately causing the above improvements of stability on all of GMC vehicles and of which the Company is now using to impress the Public with all GMC Vehicles manufactured. Exhibit # 13

Complaint- 3
Redressed for trial

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

**1.3q.**Copys shall be afforded with this brief. Plaintiff has in mind of obtaining annual checkup on all vehicles old and new, to assure the Public of being safer on the roads. This will place more people at work within all nations receiving any and all vehicles. and should be demanded at all vehicle assembly lines as well as the used vehicles to have annual inspections for safety.

**Exhibut # 12**

**1.3r.** I also believe the cruise controls should be removed. You cannot turn off a cruise control if you are bouncing around inside of a vehicle because of an outside contact or a slick road.

**Exhibut # 2**

**1.3s.** Inherent Defects in Assemblies on GMC Vehicle Frames and Steering Assembly's, Plaintiffs recently brought to Attention of General Motors Chieftains, of GMC Manufactured Vehicles, has led to GMC placing heavier and better grade of steel of Channel Frames and stronger steering Assemblies plus better welding for vehicle stability and steering ability as is stated on admissions sent to Plaintiffs along with apology's to Plaintiffs and assurance of subsidies to Plaintiffs of $15,000 to $25,000 offers on a purchase of a newly manufactured Vehicle.    **Exhibit # 13**

**1.3t.**The standard of care that a reasonable person doing inspections and repairs would exercise in the same situation. Discovery of GMC weak frame and steering and brakes, could also be the major cause of most of the vehicles in the United States, etc. in surprising, crashing, injuring , and killing tolls of citizens. All Manufactured vehicles older than two years should have their steering and front frames examined for every ones safety and to crush the manufacturing of any type or style of any vehicle that shows weakness in the two years from delivery date of the manufacturer. The WA. State should establish 2 year check stations, similar, or joint mechanical shops qualified and appointed for inspections and cures of all vehicle front ends and steering assemblies, brakes, wiring, etc., and to establish responsible mechanical groups to do the inspections in similarity to the present exhaust emissions tests of which are not nearly as essential as public road safety.

**Exhibit # 2.**

**1.3u.** A report on the nations automobile created deaths and injuries in 2008: found that the State of Washington computed to average as many automobile accident deaths as any other five states Combined; during 2008. These were not accidents. They were reckless incidents    Exhibit # 13

1.4.All acts stated to have been performed by the Agency or denied to be performed of or by the

Defendants to Plaintiffs as complained of herein were committed by Employees and Leaders of the

GMC Agency Dealership of Cornforth-Campbell, backed by GMC: Mr. Good-wrench advertisements

and responsibility combined with General Motors Corporation: Vicarious Liability. **Exhibit # 1 & 2**

**1.4a. Vicarious Liability:** imputation of Liability of one person for actions of another in denying

clients their constitutional protection of honesty and privileges.        **Exhibits  # 14 & 9.**

**1.4b.** This case must be officiated by Judgment that is in full consideration of Plaintiffs Injuries and Citizenship rights of honesty, to be procured and assured through the Constitutional "Oath of Office" honoring decision making by determination through a Grand Jury Trial and backed by properly expected, honorable COURT PROCEDURE impressed by a former meeting of honorable Judge Hollis Hill or another Judge if she makes that determination.    **Exhibit # 15**

1.5. All of the above acts along with the following in this brief, applied to various notification of deliberate

neglect and or consequences of which, were performed and jointly responsible by the Defendants.

**Exhibits # 11 & 14**

1.5a. Plaintiffs have incorporated exhibits that are retained to disclose during trial of this case with the

Brief producing declarations and assurances for perfected conditions of Plaintiffs Suburban purchased

Complaint- 4
Redressed for trial

Sinton M. and Margueritte J. urbans
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

from the GMC Mr. Good Wrench affiliated Agency of Cornforth Campbell and those Mr. Good Wrench

declarations and assurances were absolute conspired fraud, not becoming of Proper supervision or

performance, inclusive of General Motors Corporation and their Agency        **Exhibits # 1 & 2**

1.6. All acts of Plaintiffs/Complainants shall be referred to by the use of either phrase, of which we will

primarily apply singularly as Plaintiffs from hereon.

1.6a. All highlighted references to Plaintiffs designated and numbered Complaints in this brief, etc. are

facts of applicable laws resulting and recently updated by Plaintiffs research at the King County

Regional Justice Center Library, located in the city of Kent, Washington. All of which have been

thoroughly updated through discovery of many changes and assurances of reliable - 2010 RCWs:

(Rules Of The Courts in the State of Washington; And based on the Penalties to be relied upon for

Defendants Criminal assisted Acts endangering every person in this State & Court Room..

**Exhibit # 11**

1.6b.The terms as produced and interjected to Plaintiffs by Defendants, are high-lighted in this brief,

primarily intended to implement the benefit to a jury for the introduction to and fully qualifying the

Criminal Infractions of Defendants in this case.        **Infractions: Breach, Violations**

1.6c.Thus, Defendants have created a series of Special Proceeding injuries, resulting in Unlimited

physical, hearing and mental Damages to Plaintiffs that cannot be denied.

## II.
## CAUSE OF ACTION

2.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1 through 1.6c. herein.

2.2. Defendants Cornforth-Campbell; An affiliated General Motors Corporation Agency-Dealership,

negotiated a sale to Plaintiffs on June 4, 2003, of a 1999 GMC 4 wheel drive Suburban.

2.3.The GMC Corporation, Agency Dealership of Cornforth-Campbell afforded Plaintiffs with: A General

Motors Corporation High-lighted Advertisement of {GMC Mr. Good-Wrench}, as a declaration

of reliable service, to be provided by the Agency personnel.    **Criminal Acts. Exhibits  # 1 & 11**

**2.3a.. Crimes committed: Any False Swearing in a legal Instrument or legal setting that the**
**Suborner knew or should have known that such oath or testimony would be false.**
**A CRIMINAL ACT OF FRAUD: of which voids a statute of limitations and cannot take**
**bankruptcy.or find other means to hide values.**        **Exhibit # 2**

2.3b.This was an Egregious, Erroneously and Conversely implied sales pitch with questionable power of

which the Agency: Cornforth-Campbell denied responsibility to comply. **To Define: Exhibit # 17**

2.3c.This created Injury's to Plaintiffs that were performed or lacked performance as to be brought forward

Complaint - 5
Redressed for trial

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

and explained within this Brief of Plaintiffs; verified by available exhibits and high-lighted copies of

various Rules as explained within the Law Book Dictionary's in compliance with rules afforded to

Plaintiffs, commenced by West Law on Rules of Courts within the State of Washington.

2.3d. The King County Court Librarian assisted in Plaintiffs locating, Laws applicable to Defendants

Performance and Criminal neglect. The WA rules of Court are expanded and very definite.

2.4. Defendant Cornforth - Campbell issued an assurance as GMC with a logo heading of Nice is Better

and as a "Quality Pre-owned Vehicle" with following assurances: 1.This Vehicle Has Passed A Rigid

Inspection; 2. Has Been Reconditioned To The Highest Standards. Fraud in Fact: Exhibits # 2 & 9

2.4a. **Fraud In Fact; Positive Fraud: Fraud: Willful Malicious Conduct: Cannot take bankruptcy or find other means to hide values. Fraud embraces all the human ingenuity one can devise to get an advantage over another.**                    **Exhibit # 18**

2.5.Defendants perpetrated a Warranty assurance of vehicle performance to care and cure of mechanical

deficiencies for two thousand (2,000) miles or sixty (60) days from date of the purchase signed thereof.

2.5a. **Abuse of Process: Fraud: *Intentional deception resulting in injury to another and Derivative Tort: An action in Tort based on the criminal conduct of defendants which resulted in injury's to Plaintiffs, and for which injury's Plaintiffs seek compensation. The term also applies to liability imposed on the Principal for wrongs committed by his agent;*     Exhibits No. 11 & 12 & 17**

2.5b. Defendants positively breached their Warranty and Commitment Disclosures of perfected conditions

of the Suburban in general. Defendants former Attorneys and Personnel that received the briefs, were

given copies of all of Plaintiffs Exhibits and the exhibits or Pictures will be afforded this King County Court

and Jurists                              **Exhibits # 2 & 14**

2.6. Defendants were informed and ignored, the vehicle was to be used pulling a Recreational Trailer, 30

foot plus in length, owned by Plaintiffs, that weighed approximately 7,000 pounds (31/2 tons) unloaded.

2.7.The Defendants egregiously perpetrated to Plaintiff's of the GMC Suburban 4 wheel drive vehicle

being in excellent, stable condition throughout. **Deceit: The Tort of Fraudulent Representation.**   .
                              **Exhibit # 14**

2.7a. **Egregious = Flagrant, Remarkably Bad Behavior; Perpetrated = To Commit Something Bad, Especially Injury's: Crime; Conversely = Wrongful Intent which can result in Punitive Damages. Erroneous = Wrong, Incorrect, Inaccurate and  Crushing of Plaintiffs Health     Exhibit # 16**

2.8. Defendants convinced Plaintiffs, if any mechanical problems should arise, the problems would be cured under the existing mileage warranty of which defendants bypassed in denial of inadequacies **promoting dangers to Plaintiffs and all persons walking or driving near Plaintiffs travels. Continued Abuse of Process and Breach of Warranty.**               **Exhibit # 2**

Complaint  6
Redressed for trial

Clinton M. and Margaret L. Tullis Pr0Se
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

**2.9. The Suburban was not yet equipped with a differentiator: (A transducer or circuit whose output is Proportional to the rate of change of the input signal). An electronic brake control unit; used to activate the Trailer brakes in unison with each application of the towing vehicle hydraulic brakes. This unit is mounted on the bottom inside edge of a towing vehicle dash board, for occasional testing and adjustment of trailer brakes response.**                    **Exhibit # 17**

2.9a. Cornforth - Campbell Agency Purchased and installed an Electronic Activator.Trailer Brake Control, onto the Dashboard of the Plaintiffs Suburban and egregiously convincing Plaintiffs to believe the vehicle was positively ready for Plaintiffs intended usage; thus binding Plaintiffs agreement to close the purchase of the Suburban vehicle. Plaintiff was not familiar with different manufactured trailer brake controls and later found that an activator unit had not been reccomended by Recreational Vehicle Sales Dealers for about twenty years. Cornforth Campbell did not have a manual for Plaintiffs to diagnose the installation and promised Plaintiffs that the manual was on order from the factory and soon would be afforded to Paintiffs. This never happened.. **Despotism: A Criminal abuse of Discretion.  Exhibit # 15.**

**2,9a1. False Swearing: Statement of What One Does Not Know to Be True. Every Unqualified Statement of What One Does Know to Be True Is Equivalent To That He Knows To Be False.**
                                        **Defendants Quarry to Plaintiffs   Exhibit # 14**
2.9b. An Official of Cornforth-Campbell partially instructed Plaintiff on the use of the Activator in coordinating the Trailer brakes in unison with the application of the Suburban Hydraulic Brakes.
                **Plaintiffs later discovered the Activator was not capable of this performance.  Exhibit # 2**
2.10. The Cornforth-Campbell GMC Salesman and Office personnel implied to Plaintiffs that the Agency did not have a manual for the new Differentiator, nor the GMC Suburban and that they had prepared an order to acquire the respective manuals to be readily delivered in the very near future. **Moral Certainty**
                                                                            **Exhibit # 15**
2.10a. Cornforth Campbell did not know that Plaintiff Clinton had spent several years (earlier in life) as a line mechanic for a large freight firm, plus many years with tractors and machinery of all sorts and of course Automobiles. .                                **Exhibit # 5**

2.10b. Plaintiffs later learned from a Recreational Trailer Dealership that all Differentiators should come from the factory with a manual explaining the use and comparison of capabilities of each differentiator.
                                                                            **Exhibit # 3**
2.11. Plaintiffs made many trips in Vain, to Cornforth Campbell Agency to attempt to get some of the GMC Suburban mechanical problems corrected and to also get the manuals.                **Exhibit # 1**

2.11a. No repairs were ever corrected and the Agency implied nothing but excuses to Defendants about the manuals being on order of which Plaintiffs have not received to this day.          **Exhibit # 15**

2.11b1.If Plaintiffs would have received the book on the model of Differentiator placed into the Suburban by Cornforth-Campbell; Plaintiffs would not have accepted the purchase of the Suburban until a

Clinton M. and Margaret C. Yates-Pease
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

Complaint– 7
Redressed for trial

reliable Differentiator was installed.                                          Exhibit # 17

2.11b2. Plaintiffs would not have any need to pursue this cause of action for injuries.      Exhibit # 16

2.11b3.The subject installation, attached logo was "Activator" of which Plaintiffs have been advised was

the name given to the first manufacturing of a trailer brake control, many years prior to Plaintiffs

purchase of the GMC Suburban.

2.11b4.Plaintiffs would remain a proud owner of their 1999 Suburban purchased from Cornforth Campbell

2.11c. This may have also negated Plaintiffs, in the trust of Cornforth-Campbell Vehicles, as has definitely

been interposed as of date of discovery of the inadequacy of performance in mechanical repairs of the

Suburban and of the subject limited brake control not being classified as a differentiator; that was the

unnecessary cause of serious injury's and a very dangerous collision that could very well have included

many others as will be accentuated within this brief.                          Exhibit # 2

**2.11d. Constructive Fraud: The Defendants Constructive Fraud, results when a fiduciary obligation
is breached, despite of the motives or intent and gives cause to Exemplary Damages.**
                                                                              Exhibit # 17
2.12. Three times, a mechanics coordinator (boss), took a drive to test the Suburban brakes of which

Plaintiff complained; was on occasion, pulling the Suburban to the left front in applying to slow down.

2.12a. Each time the coordinator stated he could not get any wrong movement from his brake application.
                                                                              Exhibit # 1
2.12b. This statement was disappointing and not acceptable to Plaintiffs continuing discovery's, after

learning the true deficiencies bypassed, and hidden by Cornforth-Campbell Agency Dealership of

GMC. of which will be exposed throughout this Brief.          **Defendants  False Swearing**
                                                                              Exhibit # 18
2.13. The vehicle pitch to the left upon applying the brakes, was not, as **yet**, prominent, but occasionally

happened to Plaintiffs

2.14. On one occasion a mechanic, General Motors Corporation Mr. Good-Wrench was told by his

coordinator, to remove the left front wheel and show the Rotor, Caliper and pads to Plaintiff.

2.14a.The mechanic stated  he did not want to take the time to pull off  the right front wheel as he

declared to Plaintiff that the two front wheel assemblies were appropriately the same. **Wrong Intent.**
                                                              Mr. Good Wrench   **Exhibit # 1**
2.14b. As will be shown later under following paragraphs; Amid other brake deficiencies, the front rotors

were improperly installed and almost totally useless.                          Exhibit # 6

2.14c.The mechanic conversely stated: It was one-heck of a job to unnecessarily pull off the back wheels.
                                                                              Exhibit # 14
2.14d. Plaintiff agreed that the left front rotor and pad did not look bad. The new pad was depleting.

Complaint¯ 8

Redressed for trial

Cornforth and Margaret Campbell
16300-184ᵗʰ ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

Exhibit # 17

2.14e. Unfortunately, Plaintiff had no comparison because of not being enabled to compare the right front brake and thus could not deny the farce.

2.14f. The following definitions represent the total and purpose of the brakes assembly.

2.14g. The Calipers are the Cylinders holding the brake fluid that comes through filled brake lines from a small tank full of reserve brake fluid. The pressure applied by a vehicle driver to the brake pedal, forces the Calipers to press the pads that are attached to the Calipers and placed free on both sides of the Solid Round Rotors which are Attached to the Vehicle Wheels. The pads grip the rotors to slow down or stop the vehicle depending on the pressure applied by the Vehicle Driver. (Often called Disk Brakes).                                                    Exhibit # 6

2.14h. A shoe type brake system uses cylinders attached solidly to the axle instead of calipers.
                                                                                                        Ex # 5

2.15 Cornforth-Campbell: Mr. Good Wrench mechanic explained that all the vehicles brakes were in good shape and the entire vehicle had been thoroughly inspected or repaired to a condition of excellence. Perjury: False Swearing: Statement of what one does not know to be true: Every unqualified statement of that which one does not know to be true is equivalent to that he knows to be false.                                                                                        Exhibit # 17

2.15a1. Plaintiff later discovered that the newly installed metallic pad on the left front of the Suburban was attached to the floating caliper on the axle frame with badly worn pins and about 3/16ths inch thinner rotor than the right front rotor and the Pins had not been lubricated and the ends of the metal shoes holding the pads, were chewing up the disks.   Exhibit # 1

2.15a2. This new metallic pad was disintegrating and dug chunks out of the left front rotor during Plaintiffs first trips of a few hundred miles to Idaho and then to the Oregon Coast in the summer month of July of 2003 and then to Spokane in the early spring of 2004 equaling about 1800 miles The left front brake was really pulling hard left by then.                                   Exhibit # 17

2.15a3. Prior to going to Spokane; Plaintiff had again appealed (the fourth time); to the shop supervisor for curing the Suburban brakes from pulling to the left on light or heavy application and was denied as was confirmed by Number 2.15 above; The day Plaintiffs received the response from the shop (?) mechanic.                                                          Exhibit # 1

2.15a4. Plaintiffs had ordered a Chilton mechanics manual and upon notice from the Auto Parts Dealer of receiving the manual; It only took a quick look at the manual and I really realized that I had dealt with an Auto Agency of Professional Crooks or Plain Idiots; and Plaintiff personally performed a complete brake job, front and rear on the Suburban. All of the cylinders, Pins and pads were immediately, easily replaced. The front disks were taken to a Renton Machinist, and smoothly trimmed . Plaintiff was all finished with all four wheels in less than two hours including travel time to the machinist. The front calipers, Pins and left front rotor, and the rear cylinders, were absolutely dangerous to be on the Roads.                                          Exhibits # 5 & 6

2.15a5. The Pins mount through the Calipers on the front axels and are required to slide back and forth very gently. When the Caliper Pins are badly worn; they oscillate; thus are not totally cooperative in the  slowing or stopping of the vehicle at any time or condition.   Exhibit # 14

+ 2.15a6 GMC Corporations Mr. Good Wrench Mechanics diagnosis of the rear wheels being very difficult to remove was a sign of Subornation of perjury. The crime of procuring another to make a false oath.                                                                                            Exhibit # 5

2.16. In vain, Plaintiff had complained about the headlights being extremely dim. On at least two

Complaint- 9
Redressed for trial

Clinton M. and Margaret L. Tullis PrOSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

occasions. Plaintiff Clinton received egregious implications by other Cornforth-Campbell Agency Personnel in the mechanics department, that they had brand new GMC Vehicles recently received from the factory with dim head lights and they indicated it was to be an expected natural performance.

Exhibit # 2

2.16a. This appears to Plaintiffs as a slam at General Motors Corporation Assembled Products. It occurred to Plaintiff Clinton that a suggestion to GMC may have benefitted every one:, as a promoter of this type would soon be dismissed  I don't believe this Is anything to sell or anything to brag about and therefore is a stupid way or means for idiots to discourage purchaser from expecting any assistance from their shop. Any how: Plaintiffs were not impressed.

Exhibit # 11

2.17.You might as well, Place a large turkey gobbler into a chicken hen house to match the Agency crew intelligence; or maybe they are the ones whom wrote and promoted the Agency's business of phony warranty's and Assurances in favor of discrepancies.

Exhibit No.14.
..

2.16a. This appears to Plaintiffs as a slam at General Motors Corporation Assembled Products.

2,18. If Plaintiffs would have received the Electronic Brake Control Manual; Plaintiff would not have pulled the trailer the first 10 feet, until Plaintiff would take the Suburban to a Recreational Vehicle Dealer and have the newly installed activator replaced by a positive action differentiator/activator..

2.19. As will later be defined: Plaintiff is quite certain that if Plaintiff had not Purchased a Chilton mechanics manual from an Auto  Parts dealer on the Suburban and then Personally performed a complete brake job on the suburban; Plaintiffs and most probably, several other emergency stopped Freeway I-5 travelers, would have succumbed in a horrible fiery death. **Chilton Manual: Exhibit # 6.**

2.20. Absolutely, None of the much needed repairs, were ever corrected by Cornforth Campbell GMC Mr. Good-Wrench; and the Agency implied nothing but excuses for repairs or the owner manual on the Suburban or the Activator for the Trailer Brake Control.  **Differentiator Manual Book: Exhibit # 3 & 17**

2.20a. The Activator installed and lack of a promised book on functioning and reliability is one of the major criminal factors in this law suit. **Cannott Take Bankruptcy to Cure: Willful and Malicious Conduct or find other means to hide values.**

Exhibit # 18

2.21. After considerable driving and discovering the many needs and denials of those needs of repair and replacement contrary to Cornforth-Campbell Notices of perfect condition of the Suburban prior to sale;

2.21a. Defendants theory and performance could not be trusted. Plaintiffs did not purchase the vehicle to set on display.

2.21b.The vehicle should not have been allowed on the road in its un-stable condition at time of Purchase.

2.22. The Flyers on the Suburban along with the denial of a differentiator manual and Sales and Mechanics departments Perjured Analysis of Brakes and  Lights conditions along with vehicles faulty

Complaint - 10
Redressed for trial

Clinton M. and Margaret L. Tullis PrOSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

battery causing engine faltering, was criminal subversion and an absolute denial of Facts by Cornforth

Campbell GMC Agency.                                    **Malpractice and Vicarious Liability**

**2.22a. Malpractice: A Professionals improper or immoral conduct in the performance of duties, either intentionally or through carelessness or ignorance.**                    **Exhibit # 14**

I I I
**DEFENDANTS DANGEROUS NEGLECT AND RESULTS**

3.1. Plaintiffs re-allege each and every allegation contained in paragraphs *1.1. through 2.22a. herein.*

3.2. In Early July of 2003; Plaintiff went to a Parts dealer and procured installation of two (2) new

light bulbs to enhance night vision prior to Plaintiffs going on vacation to Silver Creek Hot Springs Resort

on a mountain top above the Payette River, and about a hundred miles East of Boise, Idaho.

3.3. From Silver Creek, Plaintiffs left for the Oregon Coast to join our Youngest Daughter Melanie and

Husband Ken and family of four children for one week of which we usually met and Camped at Bandon,

Oregon for one week.

3.4. Plaintiffs chose to drive along the Snake and then the Columbia Rivers to Portland, Oregon, then

South on the Freeway I-5 to Salem, Oregon; Then Westerly to the Coast and Bandon, Oregon.

3.4a. When we arrived at Pendleton, Oregon; It was a real clear night and Plaintiffs chose to drive through

the night and enjoy the beautiful Full-Moon.

3.4b. This was on a Sunday evening and the traffic was very scarce; mostly Trucks; whom kept signaling

all night to us to Dim our Lights of which were already on dim.

3.4c. We finally stopped at the Dalls, Oregon and camped in a station lot until day-light and then on to

Bandon in the early A.M.

3.4d. Plaintiff checked the Headlamp Lens to see if either one was broken. It had appeared as though the

Lens were broken during our driving of which was not the event.

3.4e. Upon arriving home at the end of the week and with no other night driving; Plaintiff then went back to

the Parts Dealer from whom we had procured  our bulbs and then purchased mounting of two new Lens.

3.4f. The headlamps are called Lens. And the bulbs come separate except in a new lens purchase.

3.4g. Because of little night traveling at home; Plaintiff did not realize of the distorted head-lamps from age

or possible past heat exposure until truckers complained by blinking their lights and Plaintiffs passed

enough Oregon Trees to see the distorted lights were shinning partially on the road,  but mostly in the

trees.

Headlight "Lens" Purchase Receipt: Exhibit # 10

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

Complaint- 11
Redressed for trial

3.4h. No wonder they were dim. Thanks to Cornforth-Campbell and GMC Mr. Good-Wrench.

3.4i. Plaintiff did learn of the lights being dim and consequently had paid a parts dealership to install new

bulbs after complaining the fact to Cornforth-Campbell whom chose to ignore the dangers of dim or

distorted head-lights in abuse of General Motors declaration of Mr. Good Wrench of which appears to

only be considered as an "inspiration to override buyers confidence".                    **Exhibit # 1**

3,5, The engine had stalled during warranty and about five miles from Plaintiffs residence; Plaintiff reacted

*and coaxed the vehicle to a near by:* Schucks Auto Parts Dealership at Covington, Washington.

3.5a. Plaintiff could not properly test the vehicle as it was turning dark; Plaintiff Clinton then called a tow

truck to move the vehicle to Plaintiffs residence where Plaintiff had equipment to analyze the problem.

3.6. The battery had a dead cell and would not take a charge.

3.6a. Plaintiff then checked the spark Plugs and determined need to install new spark plugs.

3.6b. Plaintiff purchased and personally installed a Heavy duty battery and all new spark plugs.
                                                                          **Exhibit # 10**
3.7. Plaintiffs soon found the GMC Suburban Vehicle had many other perpetrated performance problems.

3.8. Plaintiffs had found the battery life had been exceeded and was the cause of the erratic Actions.

3.8a.  Plaintiffs found the engine overheated to 28O degrees.

3.8b. *Plaintiffs were told by Cornforth Campbell personnel in the mechanics Department, that the water*

temperature of 280 degrees was good for the motor, thus declining service. **Perjury**      **Exhibit # 9**

3.8c. Plaintiffs purchased and installed a 180 degree thermostat and a new radiator cap and never again

witnessed any temperatures above 180 degrees. (212 degrees is the boiling point)  *Exhibit # 10*

3.9. Plaintiff reiterates that receipt of the trailer brake control (Differentiator) manual could have

informed Plaintiffs of an unacceptable, contemptible performance by Defendants in the installation of an

inferior Activator and again in procrastinating about not having a manual to explain the quality and use of

the Activator, as disclosure from the manual, could most probably, not have met Plaintiffs approval and

most probably negate the sale.                    **Differentiator Manual: Exhibit # 3.**
                                                                 *3.10. The*
Activator short response, caused a very serious wreck, severely injuring both Plaintiffs.

3.10a. Caused Plaintiff, Clinton M. Tullis to have  serious Body Injury's  involving casts and major

surgery's for most of two years, since transformed into occasional survival assists from the injuries.
                                      **Portions of Medical History: Exhibit # 8**
3.11. The surgery performed on April 25, 2005 was performed only after stabilizing Plaintiff. Clinton.

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

Complaint - 12
Redressed for trial

M. Tullis Heart injury conditions maximized by the Collision.

3.11a. The surgery was to repair two huge lower inguinal "hernias" procured during the collision that were caused to rupture during the collision and protruded Completely across Plaintiffs lower abdomen..

3.11b, Plaintiff; Clinton also pulled the ligaments loose from his left wrist in fighting to turn the Suburban to the right and off the vehicle in front of which contained a young mother and her pre-teen daughter.

3.11c. Clinton wore a cast on his left arm for about one and one-half (11/2) years and cannot completely fold his left index finger as yet without pain.                    **Medical Attention: Exhibit # 8**

3.12. The suburban Air bags had broken and Clinton thought Plaintiffs were going to die in a fire; fed by almost forty gallons of gas procured in Vancouver, Washington on the way home from vacation on the Oregon Coast. Clinton was determined not to take others with Plaintiffs, if at all possible. .**Exhibit # 4**

3.13. As it turned out; the air bags exploding produced the smoke and fire appearance.

3.14. The collision severely reduced the mental and physical stamina required in Plaintiff Clinton Real Estate Profession.

3.15. Plaintiff remains strained in catching up in Plaintiffs home yard and garden upkeep

3.16. All for which Plaintiffs are remaining suffering and most possibly will never fully recover. **Exhibit #14**

3.17. Plaintiff: Margaret L. Tullis was severely injured with the air bags burst and the sudden impact of the Suburban onto the pavement as Plaintiffs successfully escaped the vehicle we had contacted and luckily, the right lane had cleared enough to allow Plaintiffs the room.                    **Exhibit # 4**

3.18. Plaintiff Margaret previously had a slight hernia of the upper stomach which expanded in the collision and remains an increased problem with her hopes of curing, slightly shattered by being told "that type" of operation is very dangerous.                    **Exhibit # 11**

3.19. Plaintiff Margaret spent a miserable night at the Centralia Hospital, even given excellent care.

3.20. All of the above mechanical problems could have easily been cured, if Defendants were capable or serious of performing a proper analysis and considerations, in lieu of the Cornforth Campbell GMC Agency dealership, employees procrastination and denial of proper service to Plaintiffs.

3.20a. The absolute responsibility of the Dealership and General Motors Corporation Criminal infractions.

**3.20b. Defendants actions resulting in this Lawsuit qualify as: Special Proceeding Damages. Damages beyond other damages; A Proceeding providing extraordinary Relief Such as Exemplary Damages.**                    **Exhibit # 7**

Complaint- 13
Redressed for trial

Clinton M. and Margaret L. Tullis PrOSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

**3.21. Defendants Acts of Deceit: The Tort of Fraudulent Representation; Concealing Something or Making false Representation with an evil intent. (Scienter) when it causes Injury to another. Willful -Malicious Conduct : (FRAUD)=Can not take bankruptcy or find other means to hide values**

**Exhibit # 13**

3.22. None of the egregious promises or mechanical corrections was ever performed by Cornforth Campbell, regardless of being within the time frame of the Vehicle Warranty provided to Plaintiffs on date of Purchase.

3.23. In regards to Plaintiffs Purchase from Cornforth-Campbell; The Agency "Declaration of Mr. Good-Wrench" is void of proper supervision by General Motors Corporation. Apparently only utilized by Defendants as a hot Sales Pitch. **Breach of Warranty: Exhibit # 2; & Mr. Good-Wrench: Exhibit # 1.**

3.24. The agency utilizing the GMC add of Mr. Good Wrench, along with the Agency denying the Electric Trailer Brake Control "supplied manual", was erroneously denying consideration to the Public and Plaintiffs as severe endangerment.

**Tortious Conduct Exhibit # 3**

**I V.**

## DEFENDANTS INEXCUSABLE NEGLECT AND EFFECTIVE COMPARISON

4.1. Plaintiffs re-allege each and every allegation contained in paragraphs No.1.1. through 3.24. herein.

4.2. After the collision and desperately needing the Trailer Brake Control for probable proof of all details;

4.3. Plaintiff called the people Plaintiffs had Purchased the Wilderness Trailer from and they informed us of a Tacoma Dealership and address for us to see about a differentiator manual.

4.3a. Plaintiff went to the agency, of whom the private individual we purchased the trailer from, had in fact originally purchased the Wilderness Trailer from and asked for their assist in locating us a manual describing the particular differentiator that we were so reluctantly denied by Cornforth-Campbell Agency city of Puyallup Dealership of General Motors Corporation and Mr. Good-Wrench.

4.3b. Plaintiffs performed three trips to a South Tacoma Recreational Vehicle.dealer and a party working in supplies had taken it upon himself to order and procure two (2) manuals for Plaintiffs dilemma.

**Exhibit # 3**

4.3c. Upon analyzing the information in the manual; Plaintiff (Clinton M. Tullis) was exonerated from any blame whatsoever at the collision responsibility trial in Chehalis, Washington.    **Exhibit # 7**

4.3d.Plaintiffs had used the trailer for vacations to the Oregon Coast and to Idaho Payette Lakes, for and during the three previous years, prior to Plaintiffs purchasing the subject 1999 GMC Suburban.

4.5. Plaintiffs Son in Law: Ken Kalliainen, had pulled the trailer for those three years with his ¾ ton Ford pickup, as Plaintiffs were vacationing with Ken and our youngest daughter "Melanie" and their family of

Complaint - 14
Redressed for trial

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

four children.

4.6 Each trip, Plaintiffs followed the Kalliainens and we did not encounter any problems; no matter how rapidly Ken was forced to stop, or how rough the terrain we were negotiating, or how heavy the load.

4.6a. At that time; Plaintiffs loaded Wilderness Trailer had the load of at least six bicycles, family tents and lots of Kalliainens family camping gear, general provisions, camping tools, cook-ware, mechanics tools, wrecking bars for emergency use and often "some fire wood and parking blocks, along with tow chains, work and dress clothes and bedding etc. on the trailer, readily sustaining necessary travel speed so as not to delay or bother other vehicles traveling in back of us or wanting to pass us.

4.6b. The trailer load was much heavier than that pulled by Plaintiffs as the Kalliainens determined to pull a U-Haul Trailer for extra convenience of loading and unloading and two "side by side parking spaces.

4.6c..Plaintiffs were always within 200 feet behind the Kalliainens and Plaintiffs Trailer to vacation points, mostly on the Oregon Coast for the three years of 1999 - 2002 inclusive.

4.6d. Several times Ken had to brake down rapidly as someone coming towards us may be passing in a restricted area. Ken's differentiator (electric trailer brake control) always performed absolute response at any and all times in necessitating a stop, whether sudden or casual, no matter whether day or night or how badly or roughly Ken was challenged.

4.6e. Ken's trailer brake control had been installed upon purchase of his vehicle, by whom he purchased his ¾ ton vehicle from and never hesitated on any need to respond, during Ken's towing Plaintiffs 30 plus foot Wilderness Trailer for approximately four thousand miles of all types of terrain and road conditions, prior to Plaintiffs purchasing their own vehicle: (The subject 1999 GMC Four wheel drive Suburban from Cornforth-Campbell GMC Agency-Dealership).

4.6f.The Trailer Brakes were excellent and always responded to any demand.

4.7. The trailer was perfect for Plaintiffs, as it was large enough and constructed to have privacy when necessary, even when others visited or stayed in the fore half, which was often, and well loved and of which we readily joined prior to or after our rest. Plaintiffs and the Kalliainen family really miss the trailer.

4.8..Thus, Plaintiffs had been easy to convince that the GMC Suburban was capable of like performance.

4.9. Plaintiffs didn't dream of the GMC dealership; in applying a new " trailer brake differentiator"(Activator) on our acquired vehicle would perform any different.                   An absolute:  **Breach of Trust**

Complaint - 15
Redressed for trial

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

4.10. Plaintiffs became easy victims of Cornforth-Campbell agency dealership Warranty's and GMC

Corporation bragging Mr. Good Wrench.   **Willful Malicious Conduct & Vicarious Liability**

4.11.Cornforth Campbell **denied** their commitment to **Specific Performance. Plaintiffs Letter to Dealer**
**Exhibit # 9**

4.12. Defendants GMC and Cornforth - Campbell have given Plaintiffs the opinion of the dealers

believing: every one dealt with, must be unknowledge able as to the actual performance and upkeep in

the vehicles they purchase. They also appeared to treat Plaintiffs as Aged and incapable of lengthy

travel. Their overwhelming promises to Plaintiffs were deluded lack of consideration and appears to be

perpetrated only for purposes of sales.   **Criminal Acts**

**Wash. App. Div. 2 1996. "Criminal Act" May be described as both affirmative act, or omission of possible and legally required performance.—State v. Chester, 918 P 2d. 514, 82 Wash App. 422, review granted 928 P. 2d 412, 130 Wash.2d 1016, affirmed 940 P2d 1374, 133 Wash. 2d 15. Criminal Law 26.**

4.13.They also appear to believe that every one on the road stays near home or can vacation in a motel

or hotel if they break down on the road and that any repairs they may need will only cost a few dollars

even on holidays, weeks or week-ends, a short stay on their way, with Pleasure Time to spare, and not

giving consideration of short vacations with defined essential procedures.
**Breach of Warranty Exhibit # 2**

4.14. Defendants unreasonably and thoughtlessly, seriously endangered Plaintiffs and Publics lives.

4.15. Should we look at the entire organization as being sadists, resolved to test results of their Fraud.
**Criminal Wrongful Intent**

4.15a.The Dealers are in as much danger as anyone. They may be ok in their vehicle but that does not

apply to their meeting others, passed on the road in questionable vehicles, no matter which direction

they are traveling..

**V.**
**HISTORY INCIDENTAL TO DEFENDANTS DECEPTION**

5.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1. through 4.15a..

5.2. Plaintiffs is quite positive; The improvement of the Suburban brakes by Plaintiff Clinton; Is the only

reason that Plaintiffs and most probably others remain alive that were involved in or near Plaintiffs

Collision on Northbound, Freeway I—5 near Centralia, Washington in July of 2004.   **Exhibit # 5**

5.2a. The  GMC Agency - Dealership of Cornforth-Campbell could have been the cause of the death of

several people in that collision for their neglect of curing the malfunctioning GMC Suburban Brakes

under Warranty   **Exhibit # 14.**

5.2b. Plaintiffs, beyond a reasonable doubt, swear that it is highly probable that some of us would have

Complaint- 16
Redressed for trial

16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

perished in a fiery collision of which most likely would have included both vehicles in front of Plaintiffs

and others already stopped bumper to bumper in the right Lane.                    **Exhibit # 14**

5.2c. Plaintiffs were in the left Lane where the two Parties contacted by Plaintiffs; were already bound

together and only one-half off the left lane awaiting Authorities to analyze their prior collision.

5.2c1. NOTE: Those parties were right next to a concrete barrier and could not clear the road in entirety.

5.3. Defendants knew the (Activator), Trailer Electric Brake Control was questionable or they should

have known. (Plaintiff is informed the manual becomes part of the Unit Purchase and the manual

explains the ability of a differentiator to activate on demand or otherwise under certain circumstances.

5.3a. The manual gives a line for operation showing that the Activator installed by GMC Agency

Dealership of Cornforth Campbell; was known to be slow in responding and was known to collapse

during the first second of hard use.                                      **Exhibit # 3**

5.3b. The Book shows: At 60 Miles per hour, a vehicle travels at 88 feet per second; Plaintiffs were

Traveling at 50-55 miles per hour;

5.3b1. The vehicle speed appeared to drop to about 15 miles per hour in the first second of hard use;

Meaning the differentiator appeared to activate, then quit after the first 30 to 50 feet of travel.

5.3b2. Meaning the trailer brakes were not working after the first 30- 50 feet and  the trailer was pushing

the Suburban for the last 150 -185 feet.

5.3c.This is the way it felt to Plaintiffs and shows by the bent trailer ball hitch.        **Exhibit # 4**

53c1. The extra heavy duty ball hitch, bent forward for at least (1/2) one half of an inch.

53d. The Suburban suddenly felt as though Plaintiffs were floating on Air, from the immense pressure of

the Trailer without working brakes.

5.3e. The Trailer pushed so hard; The Trailers full length of: (2 Steel Channel Frames) *folded in the center*

and did so much incidental·damage to the trailer, that the Trailer was not repairable: A total Loss.

5.4.This type of Differentiator had not been used for over twenty years by the Recreational Vehicle

Dealership, whom supplied Plaintiffs with the 2 books prior to Plaintiffs appearing in the Chehalis District

Court for determination of fault.                                        **Exhibit # 1.**

5.5. The heavily loaded trailer pushed the skidding Suburban for about (150 to 185) feet before the

Suburban left front wheel slowly climbed upon the center of a heavy 4-wheel drive vehicle # 2 that had

Complaint- 17
Redressed for trial

Clinton M. and Margaret L. Tullis PrOSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

also collided into another heavy Pickup or Suburban # 1, in front of the vehicle Plaintiffs contacted.

5.5a. Plaintiffs Suburban; Vehicle NO 3; Suddenly tilted to the right and Plaintiff could see the left front wheel very slowly climbing up over the rear bumper of the vehicle in the immediate front of Plaintiffs.

5.6. Margaret was leaning slightly forward and Plaintiff Clinton, grabbed her by the shoulder and pulled her away from the right front doors glass window, just as the air bags broke and forced her back far enough to be somewhat protected by the right door frame beside her seat.

5.6a. The Air Bags Exploded and Plaintiff thought we were on fire.

5.6b. Plaintiff could see a Blonde woman on the drivers side of a Red Pickup in front # 1 and a small Blonde Girl on the right side of the Red Pickup in front; as Plaintiffs Suburban was now tilted to a 30 to 45 degree angle and Plaintiff was able to see down through their back window

5.6c. Plaintiff was certain we were to die in the fire and didn't want others to join us if possible to prevent.

5.6d. Plaintiff defied the Air Bag and turned the Suburban Steering Wheel hard right, hoping to escape the vehicle we climbed upon. Plaintiff again, applied extreme pressure on the Suburban Brakes.

5.6e. The Suburban Right Front Wheel Grabbed the Pavement and threw Plaintiffs to the right and off the vehicle Plaintiffs had climbed upon; This working, also kept the Suburban from laying over on its side.

5.7. With Plaintiffs Engine still running, Plaintiffs slowly drove around the No. 2 attached vehicle to a very slow stop along side of No. 1 vehicle.

5.7a. Plaintiffs Suburban Broke the frame just behind the back door and the Suburban Front Wheels also broke their framework and each wheel now pointed in opposite directions.        **Exhibit # 3**

5.8. Plaintiff Clinton climbed out of the Suburban and ran around to the right front door to assist Plaintiff Margaret in getting out of the smashed vehicle.

5.8a. Then seeing there was no fire, commenced helping Margaret towards the trailer where she could lay in bed until an Ambulance could arrive.

5.8b. A lady Plaintiffs believes was Keri Knorr, driver of vehicle No. 1, immediately came to assist in getting Margaret to the rear door of the Trailer and to get Margaret onto the bed and see if she could help her relax in any way possible.

5.8c. The lady (Keri ?) asked Clinton if we had collided with No. 2 vehicle. Clinton answered with yes, we had. slowly crawled upon vehicle No. 2.  (Keri ?) stated she thought so as she had felt a slight thump.

Complaint- 18
Redressed for trial

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

5.9. The collisions were created by about a dozen vehicles in front making sudden stops, one just right after the other and luckily only the left lane had any known collisions, as the vehicles in the right Lane, were able to move aside soon enough to allow Plaintiffs the room to get off the contacted vehicles.

5.10. A long line of Vehicles ranging from 50 to 70 miles per hour and suddenly stopping is bound to procure contact even though reactions from most drivers are comparatively instant.

5.11. Plaintiffs left two (2) wide lines of deeply burned Asphalt tracks for about two hundred (200) feet in length from the Suburban Braking of which it could not totally stop prior to collision.

5.12. The differentiator manual, Plaintiff finally procured from a Recreational Vehicle Agency, after the wreck (collision) absolutely states that the manufactures differentiator placed in Plaintiffs Vehicle; was known to collapse within one to three seconds of heavy usage.                    **Exhibit # 3**

5.13. Plaintiffs reiterate; The Recreational Vehicle Dealer; that afforded two books on the various Differentiators inclusive of the type installed on Plaintiffs Suburban by Cornforth-Campbell; Had not supplied or used this type of Differentiator (termed as activator), for at least twenty years.

5.14. Plaintiffs were doing approximately 50-55 miles per hour when attempting to stop quickly of which at the very first, slowed to about one-third or 15 miles per hour, and then continued very slowly; slowing down and unbelievable at not completely stopping, but was like very slowly floating on air as Plaintiffs could feel the heavy pushing effect from the trailer.

5.15. Margaret got a bad beating, from the Air Bag Explosion and spent a very bad night at the Centrailia Hospital even though she had excellent care.

5.15a. Margaret became paranoid to travel on a Freeway and occasionally freaks out when she sees Another vehicle in front or a vehicle coming towards us.                    **Exhibit # 8**

5.15b. Both Plaintiffs are remaining slowly improving in overcoming the physical set-backs of which will Never be totally overcome.                    **See Exhibit # 17**

5.15c. Plaintiff Clinton: received two Huge: "Lower Inguinal Hernias" from the wreck; of which it required Most of eight months and constant visiting to the hospital in preparation for the surgery, before Plaintiff could physically recover enough to have surgery performed. This injury was a terrific strain to Plaintiffs heart and required considerable recovery before doctors considered plaintiff would benefit to have a Pacemaker installed. The injury received from the collision considerably reduced Plaintiffs stamina,

Complaint- 19
Redressed for trial

Clinton M. and Margaret L. Tullis PrOSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

Therefore really reducing the time Plaintiff could apply to his Real Estate Profession, thus denying Plaintiffs much needed income for survival. Our yard work and House maintenance has been neglected of which Plaintiff Clinton can only perform from two to three hours at a time, and which has also slowed down Plaintiffs planning Real Estate Projects which mostly has to be performed with family and friends.

5.16. The damaged trailer has a thin skin of aluminum or plastic siding on its entire exterior. This was only slightly dented to less than a quarter of an inch deep on only two of the four inch siding slats that rubbed number 2 vehicle for a length of about two feet. A person could dent the trailer that much with his fingers.

5.17. Plaintiffs had not had any experience or knowledge of and with a differentiator. It had been about thirty years since Plaintiff pulled a "light over-night trailer" of a friends that insisted on our using it on a vacation trip to California, and did not have any trailer brakes.

5.18. Plaintiff needed reference of a book on the differentiator brake and comparable systems to be able to know what was sufficient or the most efficient and proper usage and reliability.     **Exhibit # 3**

5.19. Plaintiff would have complied to change accordingly, Cornforth-Campbell and General Motors Corporation Mr. Good-Wrench assist that appears not to properly perform maintenance or repairs as per Warranty and perpetrated assurances to Purchasers of their GMC vehicles. **Exhibits: #s 11 to 18.**

**V I.**
**CLAIM AND PRAYER FOR RELIEF**

6.1. Plaintiffs re-allege each and every allegation contained in paragraphs No.1.1. through 5.19 herein

6.2. Plaintiffs Pray for relief from this Court, for Summary Judgment in consideration of the Summation of the evidence of indisputable facts of Injuries afflicted upon Plaintiffs referenced throughout Plaintiffs Brief in this Law Suit against Defendants: General Motors Corporation, and trusted agency dealership of Cornforth-Campbell in denial of declared specific performance and consequently performing criminal fraud and derivative torts for which Plaintiffs deserve Special Proceeding damages for Injuries from the many criminal infractions of Defendants non-becoming to the quality of leadership and responsibility, rightfully expected by the Public for General Motors Corporation and Agency Dealership of Cornforth-Campbell whom perpetrated Warranty's, and fictional assurances of conditions of Plaintiffs Purchase; Then denying maintenance and influence of General Motors Corporation through their advertised "Mr. Good-Wrench, thus severely endangering Clients, trusting Plaintiffs and the Public health and welfare.

6.3. Defendants continuously denied advertised expert maintenance and care to assist Plaintiffs that

Complaint- 20
Redressed for trial

Clinton M. and Margaret L. Tullis PrOSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

could or would have prevented Plaintiffs GMC Suburban from having a collision that very nearly could have cost Plaintiffs and others their lives in a deadly fiery crash and resulted in Plaintiffs losses including severe body injury's, loss of stamina, loss of time with family and friends and loss of income, for which Defendants continually manipulated to avoid all visual rules of law pertaining to their acts of deceit, analogous to Defendants perpetrated warranty and assurances of genuine conditions of the Suburban; along with installation of a non-conforming, inadequate "trailer brake control" and refusing any factory reference to its capabilities and rightfully concluded as criminal actions of an egregious Fiduciary.

6.4. The Suburban was not in a condition that it should be on the highway and Plaintiffs were assured that it was in positively excellent condition.                     **Exhibits Nos.11-14-15-17-18**

6.5. The body was beautiful and deceitful.

6.6. The mechanical functions were negative, inclusive of the braking system being dangerous.

6.7. Payment to Plaintiffs and shaming Defendants for their dangerous acts to the citizens of the United States and their visitors, should show our Legislators that their is a dire necessity of changing the rules pertaining to each and every vehicle used in any manor on any of the nations roads and decision is to also examine every vehicle coming into our nation whether by ship, plane or just being driven or hauled by neighboring country citizens.

**VII.**
**NOTE FOR MOTION**

7.1.Plaintiffs re-allege each and every allegation contained in Paragraphs Nos.1.1. through 6.7. herein.

7.2. Plaintiffs/Claimants motion for this Court to order summary judgment as special proceeding and compensatory damages in summation of the crimes committed in this case; and giving consideration of the overwhelming moral certainty of Plaintiffs/ Complainants beyond all reasonable doubt, of Derivative torts continually, dangerously performed by Defendants; needlessly causing Plaintiffs/Complainants injuries, including income and property losses of the past, present and future and for the crippling, ruinous, tortuous, personal, mental, physical and monetary injuries; of which can only be partially repaired or satisfied by monetary reparable damages from Defendants willful - malicious conduct and derivative torts to Plaintiffs; Properly amounting to payment to Plaintiffs by Defendants of Eighty Two Million and no/100 Dollars ($82,000,000.00) for said Injuries prevailing; Applicable to the Defendants continuously manipulating with malice, to avoid all visual rules of law in specific performance

Complaint- 21
Redressed for trial

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

as per advertisements and promises pertaining to their acts in denial of assist to Plaintiffs that could

have prevented Plaintiffs from having a collision resulting in and continuing Plaintiffs multitude of Injuries.

7.3. As a result from the Unnecessary Accident, Plaintiff Clinton has consistently been notified to keep

an essential appointment with the VA Hospital to check and keep Plaintiff in as good a shape as

possible for his survival.

7.4. THE OFFICIATING JUDGE OF THIS CASE AGREES TO SWEAR TO THE OATH OF OFFICE
AS INITIATED BY THE CONSTITUTIONAL LAWS: MAINLY: THE SEVENTH AMENDMENT TO
THE UNITED STATES CONSTITUTION.  (See Paragraph Number 1.4b., Page 3. of this Brief.)

7.5. On this _____day of _____; This Court does hereby rule this case in favor

of: Clinton M. Tullis, ProSe and Margaret L. Tullis, ProSe and the community comprised thereof.

No.1.Defendants known as: Cornforth-Campbell; now officiated by the Insurance Company to be provided

To the Judge on Commencement of Trial; To be  resolved as provided for and accepted by Plaintiffs on

Plaintiffs Satisfaction of details of argued negotiations of at least, their one-half responsibility.

NO.2. General Motors Corporation is hereby ordered to pay what Plaintiffs ask for; in the balancing sum

of Eighty Two Million and No/100ths Dollars, in the results of the same requirements as no. One.above.

No.3.Defendants, In addition to above; The Threatening, Bullying,  Improvised, Unknowledgeable  listed

Defendants in charge of Motors Liquidation Company on behalf of General Motors Corporation

Bankruptcy Procedures, are Personally, hereby ordered to Pay an additional Five Million and No/100

Dollars to Plaintiffs for their illegal interference, accusations and threats to Plaintiffs All of the payments

are completely due _____days from this _____day of _____20_____, If Payments

are effected, after this  time and recognized for a short term; Interest will accrue @ 1% per month from

date of Court signature on this documented brief until payments are paid in full .and shall double if

continued For not more than an additional 90 days.

_____
Judge/Commissioner

_____
Clinton M. Tullis ProSe          date

_____
Margaret L. Tullis ProSe          date

Complaint- 22
Redressed for trial

Clinton M. and Margaret L. Tullis PrOSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

Clinton M. Tullis
16300-184th ave.; S.E. Renton, Wa. 98058-0903

Phone and Fax (425) 226-7399

Margaret L. Tullis
16300-184th ave. S.E, Renton, Wa. 98058-0903
Phone & Fax:   425-226-7399

I_____being a
Notary Public in and for the State of Washington
do hereby swear that on this _____day of
November, 2010; I witnessed the Tullis's
signatures on this portion of this document

My commission expires on _____

| Exhibits and locations in order | Numbers | Definitions | Numbers | Definitions |
|---|---|---|---|---|

1). MR. Good Wrench & Nations Agency's       (9).   Letter to Cornforth-Campbell after several denials of
(2).   Warranty & Declarations of Conditions               needs of  Service and disillusioned cure for perjured
guaranty of .    (3).    Differentiator Book (Manual)      perfect condition of vehicle.
(4).   Bent Trailer Ball Hitch                           (10).   Headlamp Lens and Bulb replacements, Brakes,.
(5).   Plaintiffs Mechanics Resume                             Battery, Engine repairs, Parts, Supplies, etc.
(6).  Chilton "Mechanics Manual"                     (11). Dual Responsibility-Complicity (Corporation & Agency's)
(7).   Chehalis District Court              ( 12) Obligations of Manufacturers in assembly of all motor vehicles.
(8).   V.A. Medical History       **(13)**. Upon General Motors receiving Plaintiffs first Complaint; Mr Rick Van
Waggoner immediately ordered stronger qualitys of metal and welding in all vehicle frames and steering
assembly's of all General Motors new vehicles. He sent Plaintiffs a notice of the order and contributed the
change to Plaintiffs understanding, plus offered $15,000 to Plaintiffs on any new purchase of a GMC
Vehicle. We have had the same response from three other GMC Leaders offering $25,000 reduction
offers to Plaintiffs from any GMC vehicle purchase by Plaintiffs.

**(14). Cornforth Campbell Agency perjured advertising  and Supervising on false repairs.**

**(15).Plaintiffs:** Call for Grand Jury Determination in event of any denias! of  Plaintiffs Summary Judgment.

**(16). The** Crushing of Plaintiffs health; with delayed, doubled: huge Lower Inguinal surgery's, arm and
wrist slings & wrap supports, medicines, Ex-rays, Scans and a Heart Pace Maker and continual
examinations; essential for survival through efforts at the Veterans Hospital  All from neglect of
proper surveillance and questionable survival conditions Defendants perjured; In anxiety to rid the
one-half portion of their responsibility to Plaintiffs through recently transferring their total Agency
responsibility inclusive of the most recent Summons and Complaint of this Case to their Insurance
Company in California of whom has made contact with Plaintiffs and is waiting for Plaintiffs decision of
which Plaintiffs will place this brief and Exhibits to Defendants assistants inclusive of trial dates for
finality of each Defendant.

**(17). Defendant Cornforth Campbell: Willful, Malicious Conduct, declaring Plaintiff's Purchase**
passed a rigid inspection and has been reconditioned to the highest standards,

**(18), Willful, Malicious Conduct in pressing for new sales through advertising of GMC Mr. Good
Wrench at all of GMC U.S. Agency's; Cannot take Bankruptcy, or find other Means to hide Values.**

Complaint— 23
Redressed for trial

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

Exhibits & Numbers in order:

| | | |
|---|---|---|
| 1.2a. ——— # 1 & 2 | 2.9——— # 17 | 2.22a—— # 14 |
| 1.3——— # 11 | 2.9a——— # 15 | 3.4g——— # 10 |
| 1.3a1——# 2 | 2.9a1——— # 14 | 3.4i——— # 1 |
| 1.3a2———#2 & 14 | 2.9b — # 2 | 3.6b——— # 10 |
| 1.3c —— # 13 | 2.10 —— # 15 | 3.8b——— # 9 |
| 1,3d —— # 11 | 2.10a—— # 5 | 3.8c— # 10 |
| 1.3e2—— # 18 | 2.10b —— # 3 | 3.9——— # 3 |
| 1.3f —— # 18 | 2.11 —— # 1 | 3.10a ——8 |
| 1.3h——— # 11 | 2.11a—— # 15 | 3.11C—#8 |
| 1.3i —— # 1 | 2.11b1 —— # 17 | 3.12—# 4 |
| 1.3J —— # 13 | 2.11b2— # 16 | 3.16—# 14 |
| 1.3K —— # 11 | 2.11c—— # 2 | 3.17—# 4 |
| 1.3L —— # 12 | 2.11d—— # 17 | 3.18—# 11 |
| 1.3M—— # 12 | 2.12a— # 1 | 3.20b— # 7 |
| 1.3N — # 1 & 2 | 2.12b— # 18 | 3.21— # 13 |
| 1.30 —— # 13 | 2.14a ——— # 1 | 3.23—# 1 & 2 |
| 1.3p —— # 13 | 2.14b—— # 6 | 3.24— # 3 |
| 1.3q —— # 12 | 2.14c—— # 14 | 4.3b—# 3 |
| 1.3r —— # 2 | 2.14d——— # 17 | 4.3c—# 7 |
| 1.3s —— # 13    1.3t— # 2 | 2.14g— # 6 | 4.11—# 9 |
| 1.4 ——— # 1 & 2  1.3u – # 13 | 2.14h—— # 5 | 4.13— # 2 |
| 1.4a ——— # 14 & 9 | 2.15——— # 17 | 5.2—# 5 |
| 1.4b —— # 15 | 2.15a1— # 1 | 5.2a—# 14 |
| 1.5 ——— # 11 & 14 | 2.15a2— # 17 | 5.2b — # 14 |
| 15a —— # 1 & 2 | 2.15a3— # 1 | 5.3a—# 3 |
| 1.6a ——# 11 | 2.15a4— # 5 & 6 | 5.3c—# 4 |
| 1.6c—# 11 # 17 | 2.15a5— # 14 | 5.4—# 1 |
| 2.3—# 1 & 11 | 2.15a6— # 5 | 5.7a—# 3 |
| 2.3a——# 2    2.3b—# 17 | 2.16—— # 2 | 5.12—— # 3 |
| 2.4——— # 2-9-18 | 2.16a —# 11 | 5.15 –a & b # 8 each |
| 2.4a ——# 18 | 2.17 —# 14 | 5-18——# 3 |
| 2.5a –# 11-12-17 | 2.19 —# 6 | 5.19—— # 11-12-13-14-18 |
| 2.5b——2 & 14 | 2.20 —# 3-& 17 | 6..4 ——— # 11-14-15-17-18 |
| 2.7——# 14 | 2.20a—# 1`8 | |
| 2.7a—— # 16 | | |
| 2.8 —— # 2 | | |

Plaintiffs have presented these listed exhibits and locations in the original sloppy commencement action case of  Pierce County and the exhibits were furnished for  Defendants. Plaintiffs will have the exhibits available for Jurors and the trial Court of Judge Hill and will include added consequences of the Corporations lesson learned from Plaintiffs harm exposed from the collapse of the Heavy Duty Suburban Vehicle Weak Frame and inadequate steering assembly of the General Motors Suburban.

Complaint- 24
Redressed for trial

Clinton M. and Margaret L. Tullis Pr0Se
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

**EXHIBIT I**

HONORABLE JUDGE HILL

*Judge may be changed*
*may be Criminal Court*

IN THE SUPERIIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY
OF KING AT MALENG REGIONAL JUSTICE CENTER LOCATED IN TH CITY OF KENT.

| | |
|---|---|
| CLINTON M TULLIS AND MARGARET L. TULLIS<br>and the Palimony Relationship thereof ProSe<br>**PLAINTIFFS** | No. 10-2-25699-7 KNT<br><br>PRIMARY WITNESS'ES |
| # 1. GMC AGENCY: CORNFORTH CAMPBELL -------------<br>A DEALERSHIP AT PUYALLUP, WASHINGTON<br>**DEFENDANTS** | No.#1 Responsibility of Washington State<br>Agency: as Underwriters Insurance<br>Company Agent Rashelle Woolcott |
| #2.a. Law Firm of WEIL,GOTSHALL & MANGES, LLP _____<br>Representing GMC through: Motors Liquidation Co.<br>#2.b. Now officiated BY Bankruptcy Court Judge<br>HONORABLE ROBERT E. GERBERT for DISPOSITION<br>OF GENERAL MOTORS BANKRUPTCY DEBTS. | No.2.a.Law Firm:Willful-Malicious Conduct<br>of Criminal order to Plaintiffs: to cancel<br>Case within five days or be prosecuted. |
| # 3. GENERAL MOTORS CORPORATION<br>Washington State Criminal Laws: RCW 9A.08.030<br>RCW 9A.28.040, RCW 9A.28.020<br>**DEFENDANTS** | No.3. Cannot Take Bankruptcy or find other<br>means to hide Values. |

. . 1 .

### DISCLOSURE OF PRIMARY WITNESSES

1. Disclosure of Primary Witnesses: Son in Law: Ken Kalliainen, Daughter: Mellanie D. Kalliainen and

two Children: Amanda Kalliainen now 19 years of age and Alexandria Kalliainen.now 17 years of age.

1a.. The primary witnesses and two smaller children ; all rode in Kens Ford Truck that pulled Plaintiffs

Trailer to a Camp Ground near the city of Bandon- Oregon; on the Oregon Coast for three years.

1b. Plaintiffs followed the Kalliainens in Plaintiffs Mercury Sedan, with two bicycles loaded on the back.

1c. The trailer was loaded with Plaintiffs.clothes, cooking supplies, four bicycles and Plaintiffs Tools.

1d. Several times on a curve or on a narrow road; The Travelers coming from behind or from the other

direction, caused Ken to have to suddenly hesitate and had no problems controlling the situation.

1e. Plaintiffs were led to believe that the General Motors Suburban and Trailer Brake Control Purchased

from Cornforth Campbell would afford the same accommodation.

Clinton M. Tullis and Margaret L. Tullis<br>
and the palimony relationship thereof as ProSe<br>
16300-184th ave, S.E. Renton, WA. 98058-0903

2. Unknown to Plaintiffs: Neither, the suburban or the trailer Brake Control were safe and actually capable

of fully responding In an emergency and affording such security on the fast highways of that time.

2a.. Plaintiffs Trailer brake control, mounted as an inspiration to Plaintiffs to purchase the Suburban;

was The Major cause of a very serious collision on Interstate No. Five coming North towards

Centrailia, Washington, at about 1 PM on a very clear day.

2b.This also led to discovery that the GMC Suburban Steel Channel Frames and Steering assembly

would not hold together in a light contact.

2c. We all enjoyed the Camping privileges of the Trailer; Including the Loaded Bicycles, eating

accommodations, and sometimes a protection from a Lite-ning Storm.

2c1. Plaintiff enjoyed waking up and finding from one to three children sitting at our table

waiting for Grandmothers Pan-Cakes, Cereals and eggs. Then telling Gramps that it was time

to take a bicycle ride through the camping area, then to the sandy playgrounds for Swings,

Climbing and sliding, and occasionally a bicycle ride for a couple miles to play in the ocean

sands and also finding special rocks on the beaches etc. This Grandpa and Grandma have

certainly missed ever since our accident.

2c2. We Question whether any of the four children have forgotten some of the

aspects of these glorious adventures. No matter how young they were. They all joined in some

details of the adventures on the Oregon Coast including shopping and dining and the sands.

Plus the Wild Animal Park and of course, learning how to use a Fishing pole and catch some

Nice Lake Trout.

2.c3. These are some of the memories that will be remembered, if they would care to answer

a juror's question from facts he or she (the juror) already has been exposed, because Grand

Pa will have a copy of this letter in the Judges and Juries hands along with the files of the

Defendants Perjury's such as:

2c4. ("This is a "Quality Pre-Owned Vehicle." Has Passed A Rigid Inspection, Has Been

Reconditioned To The highest Standards, Extended Service Agreement May Be Available.)

2d. The day of Plaintiffs dilemma of the Suburban collapsing in the middle; Our Kalliainen family

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184th avq S E Renton, WA 98058-0903

2

Showed up after the accident and quickly went to the near hospital in Centralia  to check on Margaret

whom was badly injured and was delivered to the hospital by Ambulance, to be medically examined

-and given a good Nights rest.                    **111.**
**TRANSPORTATION**

3. After finding Margaret would be ok, Kalliainens  went to their home at Bonnie Lake Washington to

unload and spend their night at home.

3a. The next morning, Kalliainen's drove back to Centralia, to get Plaintiffs and all of our Camping

and Traveling Equipment, from the Suburban, and Trailer; Both having collapsed in the center, caused

from the Trailer brake control failure. .

3b. We were later informed by a Recreational Vehicles Sales Manager, that the Trailer Brake Control

Installed by Cornforth Campbell was known to collapse within seconds of an emergency use.

3c. Defendants: Cornforth Campbell had promised Plaintiffs a Booklet on the Trailer Brake Control that

had been ordered and should arrive soon. This was a continuance of their Perjury as; on the perfected

conditions of the Suburban Plaintiffs had purchased from Cornforth Campbell. See Exhibit nos. 2 – 7.

It was difficult for the Kalliainen Family to believe the Trailer had collapsed

3d. The afore-mentioned dilemma is the result of Plaintiffs "well qualified" Law Suit.

3e. The Kalliainen's are well qualified as witnesses.

Court Judge

Date_____

To Later Be Determined

No 1 _____  witness

KEN KALLIAINEN  _____   Phone No. 253-261-8593 = Cell No.

The older girls have discovered Summer Jobs, making it difficult
to take time off. Their mother is their TAXIE SERVICE. Plaintiff
believes that Ken should be adequate for assistance in this case.
Plaintiffs believe that we should only need Ken for the 2nd or 3rd
day and even this could be by phone. He is willing to show on the
day picked by the Court.

Clinton M. and Margaret L Tullis ProSe
16300-184th ave. S.E. Renton, Wa. 98058
phone: 425-226-7399 or 206-713-4950

3

CLINTON M TULLIS AND MARGARET L. TULLIS
and the Palimony Relationship thereof ProSe

No. 10-2-25699-7 KNT

PLAINTIFFS

**# 1. GMC AGENCY: CORNFORTH CAMPBELL** ------------ Responsibility of This Washington
A DEALERSHIP AT PUYALLUP, WASHINGTON     Dealership Agency: is out of State Underwriters
DEFENDANTS     Insurance Company Agent:Rashelle Woolcott

**# 2. Law Firm of WEIL,GOTSHALL & MANGES, LLP** -------Law Firm:Willful-Malicious Conduct, Directed
Representing GMC through: Motors Liquidation Co.     a Criminal order to Plaintiffs: to cancel this
DEFENDANTS     Case within five days or be prosecuted

**# 3. GENERAL MOTORS CORPORATION**     No.3. Cannot Take Bankruptcy or find other means
Combined with No1 above     **DEFENDANTS**     to hide Values: Defied Wa. State Criminal Laws
RCW.9A.08.030, RCW 9A.28.040, RCW 9A.28.020

---

**#2.Above:Defendants, Recently Transmitted GMC**     No.4.All Business to the Judge shall be filed through
Defendants to Officiating Bankruptcy Court Judge:     the United States Clerk of the Bankruptcy Court
HONORABLE ROBERT E.GERBERT     for the Southern District of New York at
To dispose of General Motors Bankruptcy Debts     Alexander Hamilton Custom House, "One
(" **Bankruptcy Courts Web Sight**")     Bowling Green", New York, New York 10004.
(**www.nysb.uscourts.gov.**) for all parties at (www.motorsliquidationdocet.com).

---

**A & B : Nos. 1,2 & 3**
**ACTION OF DEFENDANTS**

.(A): The Nos. 1 & 3 above conspiring Defendants were believed to be, and therefore alleged to be, all
Doing business and officially responsible of safety performance of new and used vehicles as a
General Motors Agency advertised as a GMC Mr. Good-Wrench Dealership, operated by Cornforth
Campbell in the City of Puyallup, State of Washington.

(B): The No.2 above conspiring "Defendants Law Firm"; is positively ordered to pay an additional Five
Million Dollars to Plaintiffs from the Law Firms, Criminal order, to Plaintiffs to cancel General Motors
Debt To Plaintiffs within five days or be incarcerated. Nothing Printed in Washington State Law Books
have Honored Criminals, or those assisting in Criminal acts such as performed by Defendants.

**C.**
**DEFENDANTS CRIMINAL (CULPABLE) NEGLIGENCE**
C. Such Negligence is necessary to incur Criminal Liability; In most jurisdictions , culpable (Criminal)
negligence is something more than the slight negligence necessary to support a civil action for
damages: 133 N. Y. C., 2d 423, 427. Thus Culpable Negligence, under "Criminal Law", is Recklessness
or Carelessness resulting in Injury or Death, as imports a thoughtless disregard of consequence or a
heedless indifference to the Safety and Rights of Others, 855.E.2d 337,332; See Also Perkins and Boyce
Criminal Law 841 (3d ed,1982). Reference to (Cornforth-Campbell acts)

1. Plaintiffs Motion For Trial Dates to change to September (9-19-11) or October (10-17- 11).

2. Plaintiffs Demand a Grand Jury Trial and to Retain: Requested Monetary Assists for Injuries.

3. Plaintiffs Contemplate Termination of this Case within Five Days & There is a Month End of an
Additional Four Days if Questionably Needed.

4. Plaintiffs Motion for the Honorable Judge to take: JUDICIAL OATH OF OFFICE.

P– 1

Clinton M. and Margaret L Tullis ProSe
16300-184th ave. S.E. Renton, Wa. 98058
phone: 425-226-7399 or 206-713-4950

Case No. 10-2-25699-7 KNT

This Day; Plaintiffs have sent New Briefs and the Main: "Bundled Exhibits" showing Defendants Declarations of Perfect Condition of A GMC Suburban to influence Plaintiffs in Purchasing same, meaning to Improve Plaintiffs Periodic Vacationing, with a Wilderness Trailer to Join Family Members in Eastern and Western Oregon and in Idaho and Colorado.

The Bundled Exhbits are being sent to the General Motors Bankruptcy Court and originally were bundled to quell the Legal Firm of Weil, Gotshall and Manges that had suddenly threatened Plaintiffs declaring that their Bankruptcy Court ordered an "Automatic Stay of Proceedings", and they would throw Plaintiffs in Jail if We did not Drop our case within Five Days.

Plaintiff Immediately sent to the Legal Firm, The Bundled Exhibits showing the Defendants Criminal Acts and that their Stay was not honored in Washington State Law.

This offered confusion as I also delivered a Bundle of Exhibits to the Clerk of the Court of which I had no original intent of doing; but Plaintiff knew that the Superior Court Rules were to send the Court Clerks examples of each delivery to Defendants and even though, Plaintiff did not desire to turn our bundle of Exhibits over to the Clerk, Plaintiffs thought we had an obligation to do so as we were sending a copy of the bundled Exhibits to the Bullying Legal Firm of Weil, Gotshal and Manges and we were caught in the middle of immediately thwarting their illegal intent. Plaintiff also immediately in a Brief, Sent them a Brief containing an additional result of their actions to be $5,000,000.00 Penalty to their Firm.

Plaintiff, A short time later contacted Defendants=Cornforth-Campbell Insurance Agent in California and She told Plaintiffs that the Honorable Judge Hill had told her that she had closed our Case.

Plaintiff has not as yet been informed of this and I am not certain of whether she "Honorable Judge Hill Remains on the Case. Plaintiffs are not too impressed with the thought of her blowing her Cork without first finding out why Plaintiff had given a copy of our Briefs to the Court Clerk, that absolutely are remaining as the best determination of closing in Plaintiffs favor with or without our planned Jury Trial. This upset Judge Hill when I took her a copy and of course she had a large room of personnel sitting on a case she was in the middle of; She had her assistant that had came from her Court room and accepted the bundle of exhibits for and to her. She had him run back to the door and give the bundle back to me. She screamed to me that I should have the Defendants Prosecuted of which was not my privilege and We do not desire to lose our deserved monetary retribution for the massive injuries and physical and mental suffering which appears to remain during the rest of our lives. Change of Court remains a privilege And we will welcome this privilege if so desired, and it remains our extension of the original case as formatted within our Briefs. We have a right to collect payment of requested monetary values as submitted through-out Plaintiffs briefs of which also contain many Washington State Laws on the Crimes Committed By Defendants.

Hopefully; Plaintiffs case will result in Washington State Laws and Rules to Automobile Manufacturers and Sales Agency's to be held responsible for all vehicles being in first class construction and Condition. Of Frames and Steering or their right to function within this State will forever be barred. This also Negates Vehicles purchased outside of Washington and are brought within Washington State Boundaries and will result in confining whether Automobiles, Trucks, Pick-ups, etc. They should be stopped and incarcerated. This is multiplied as more valuable than emission control to our citizens. All and any of us are placed in dangers of vehicles that the public trusts to be ready for use. Speed Controls mounted on vehicles should also be removed. They are also responsible for many accidents and injuries. You cannot turn off Speed Controls with Air Bags forcing you away from the Dash-Board.

Clinton M. and Margaret L. Tullis Pr0Se
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

*there will be no omnibus hearings,
Defendants have heavily abused process from their
trusted business
they cannot escape their crimes
committed*

*this may be changed*

HONORABLE JUDGE HILL

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON IN AND FOR THE COUNTY OF KING AT MALENG REGIONAL JUSTICE CENTER LOCATED IN CITY OF KENT

CLINTON M. TULLIS AND MARGARET L. TULLIS
and the palimony relationship thereof as Pro Se
Plaintiffs

No. 10-2-25699-7 KNT

No.1. GENERAL MOTORS CORPORATION ---- ------AGENCY PERJURED QUALITY PARTNERSHIP
Defendants

No.2. DEALERSHIP of CORNFORTH-CAMPBELL ----PURJURED DANGEROUS VEHICLE SALE TO
Defendants                                PLAINTIFFS; NEVER ENDING CAUSE OF
                                          SURGERYS, PACE MAKER, EYES, EARS and
*All Criminal acts*                       BODY, MEDICAL CARE FOR SURVIVAL
*WA. Laws could lead to Incarceration*
*abuse looking at WA, State criminal laws*

NO.3. Law Firm of WEIL,GOTSHAL,& MANGES, LLP.    ---(THREAT TO JAIL PLAINTIFFS IF CASE
Representing GMC through Motors Liquidation Company ----NOT ERASED FOR GENERAL MOTORS)
& Its Affiliated Debtors        Defendants    **Have recently Transferred the total**
**Responsibility:**

**To: HONORABLE FEDERAL JUDGE "ROBERT- E. GERBERT"---Through The United States Clerk
of the Bankruptcy Court for the Southern District of New York at Alexander Hamilton Custom
House, One Bowling Green, New York, New York 10004. Bankruptcy Court's Web Sight.
(www.nysb.uscourts.gov.) for all parties at: (www.motorsliquidationdocet.com).**

I.

## DEFENDANTS CRIMINAL ACTS & RESULTS

1.a. The Nos. 1 & 3 above conspiring Defendants were  believed to be, and therefore alleged to be, all

doing business and officially responsible of safety performance of new and used vehicles as a General

Motors Agency advertised as a GMC Mr. Good Wrench Dealership operated by Cornforth Campbell,

In the city of Puyallup, State of Washington.

1a1.No. 3:  Law conspiring Defendants Firm, listed above as Weil, Gotshall, & Manges,LLP; Representing

GMC through: Motors Liquidation Company, ordered Plaintiffs  to cancel General Motors Debt to

Plaintiffs within five Days or go to jail.

PERJURED VEHICLE SALES

P-1

1a2. Plaintiffs responded with the fact that Defendants were not knowledgeable of Washington State Laws

and Plaintiffs declared an order to Defendants to pay Plaintiffs Five Million Dollars for their treachery.

**1a3. Pierce County Sheriff's Office served Plaintiffs recent Summons and Cmplaint to Cornforth Campbell at 305, 2nd St. S.E., Puyallup, Washington on July 21, 2010 to assistant Manager: Kurt Johnson on behalf of Cornforth-Campbell Dealership.**

1a4. Cornforth Campbell upon receiving no.1.a. above; turned over its criminal status of the Summons and

Complaint to Underwriters Insurance Company: Now under the Responsibility of Rashelle Woolcott.

1a5.The dual responsibility of the original Corporation and Agency is again, a responsibility of General

Motors Corporation whom has commenced immediately to restructuring its operations and with

Government assist, have rearranged its operations with Cornforth Campbell as one of GMC special

chosen Locations and  management considered to perform as a  premium sales activities Agency.

1.5a. Cornforth Campbell should, as of now, be understanding of its responsibilities of honesty in                    Exhibit # 11

performance, of all transactions acquired in agreement to this, only if the Agency properly considers the

proper care and truth of conditions of its sold used and maintenance of  new and used vehicles sold.

1.5b. They must be brought to realize that ignoring their responsibility, also subjects them to road                    **Exhibit # 2**

injury and all citizens should not have to fear their or others conditions of vehicles on the road.

1.5c. The responsibility of the original Corporation and Agency is a responsibility of General Motors

Corporation and has been the GMC responsibility of complicity, from the beginning of this case.

1.5d.The factor of responsibility of Corporation and Agency is a dual responsibility with the most serious                    **Exhibit # 13**

policing and policy assurances are the responsibility of the Corporation relationship as expressed in

Plaintiffs RCW's (Rules of the Court in the State of Washington) emphasizing Complicity.  **Exhibit # 11.**

1.5e. No.1 conspiring Defendants believed to be and therefore alleged to be General Motors Corporation:

**1.5f.This Law Suit is filed with The Maleng Regional Justice Center,Superior Court in City of Kent**

**County of King, State of Washington,  address of "620-West James Street, Kent, WA. 98032.**

1.5g.The ridiculous untruths of Defendants former "Attorneys" briefs were bullying techniques that

Plaintiffs learned to handle years ago; and their inappropriate designated Statute of limitations of which

legally allows Plaintiffs to file this law suit within ten years  because of the crimes committed by the

complicity between General Motors Corporation through its Agency of Cornforth-Campbell GMC **Mr.**                    **Good Wrench. Exhibit # 13**

**1.5h. Conspiracy: A combination of two or more persons, etc. to commit a criminal or unlawful act**

Clinton M  Tullis and Margaret L  Tullis
and the palimony relationship thereof
16300-184th ave  S E  Renton  WA  98056-0903

or to commit a lawful act by Criminal or Unlawful Means; or a Combination of two or more persons to accomplish an unlawful purpose, or some purpose not in itself unlawful by an unlawful means.

Exhibit # 12

**1.5i. Accessory:** One who aids or contributes in a secondary way or assists in or contributes to crime as a subordinate. See 216So. 2d 829,831 The failure to report the commission of a crime of a felony is sometimes itself a crime. An accessory does acts which facilitate others in commission or attempted commission of Crime or avoid apprehension for a crime.

Exhibit # 12

**1.5j. COMPLICITY:** Accomplice: An individual who voluntarily engages with another in the commission or attempted commission of a crime. See 165 N.E. 2d 814; One who is liable for the identical offense charged against the Defendant, See 233 p2d 347, Liability is shared. Exhibit # 11

**1.5k. Criminal Liability:** of a Corporation: RCW 90.08.030; RCW. 9A.28.040: Criminal Conspiracy RCW 9A.28.020: Criminal attempt of Agent of Corporation: Class B. Felony when the crime attempted is a class A Felony other than an offense listed in A of this subsection must be commenced within a "ten year" statute of limitations unless action on a State or Federal Judgment period is extended for an additional ten years.

Exhibit # 12

**1.5l. Criminal Negligence:** A Person is criminally negligent or acts with criminal negligence when he fails to be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial risk constitutes a gross deviation.

Exhibit # 2

**1.5.m. ASSEMBLY'S OF GENERAL MOTORS VEHICLES ARE;** {AS OF RECEIVING COMPLAINTS FROM CLINT-M. TULLIS FOR COURT ACTION}; HAS LED GENERAL MOTORS CORPORATION TO PLACING STRONGER CHANNEL FRAMES AND Stronger Steering Assembly's, & BETTER WELDING FOR VEHICLE STABILITY AND STEERING CONTROL, AS IS STATED ON ONE ADMISSION SENT TO PLAINTIFFS. By then: Chief Chairman: Mr. Rick Waggoner, whom positive-ly did a big favor for GMC and for the General Public, whom would be occasioned to meet on some of the nations roads

Exhibit # 12

**1.5n.** Plaintiff has in mind of obtaining annual checkup on all vehicles old and new to assure the Public of being safer on the roads. This will place more people at work within all nations receiving any and all vehicles. and should be demanded at all vehicle assembly lines as well as the used vehicles to have annual inspections for safety.

**1.5o.** I also believe the cruise controls should be removed. You cannot turn off a cruise control if you are bouncing around inside of a vehicle because of an outside contact. Extremely dangerous to use in city traffic and Residential Areas.

**1.5p.** Assemblies on its vehicles has led to GMC placing heavier Channel Frames and better welding for vehicle stability and steering ability as is stated on one admission sent to Plaintiff from the standard of care that a reasonable person doing inspections and repairs would exercise in the same situation. Discovery of GMC weak frame and steering and brakes, could be the major cause of most of the used vehicles in the United States, etc. in surprising, crashing, injuring, and killing tolls of citizens.

Exhibit # 12

**1.5q.** New Midget type vehicles up to the standard size of vehicles were placed on the automobile floors in the Display Rooms and as far as the public knows, They may not be very well protected when you see these people adoring them and zipping past you from either direction. When they hit wind, rain, ice or snow, they are not prepared for this. On the highways, they just become lighter in weight. A vehicle that can handle 60 miles per hour loses some of their weight where those small vehicles may lose a very high percent of their weight.

PERJURED VEHICLE SALES
P-3

1.5r..There has already been too many deaths and serious injury's in automobile accidents this year.

1.5r1. Yes, I was learning mechanics from the date of five years old and spent many years in automobiles, trucks, cranes, Construction equipment and 6 years Freight Trucks and trailer repairs. I am now 86 years old and remain occasionally doing some automobile surgery,

1.5s. All acts stated to have been performed by the Agency or denied to be performed of or by the Defendants to Plaintiffs as complained of herein were committed by Employees and Leaders of the GMC Agency Dealership of Cornforth-Campbell, backed by GMC: Mr. Good-wrench advertisements And responsibility of General Motors Corporation: Vicarious Liability.

**1.5t. Vicarious Liability: imputation of Liability of one person for actions of another in denying clients their constitutional protection.**                                   **Exhibit # 13**

1.5u. All of the above acts plus the following in this brief; applied to various notifications of deliberate neglect and or consequences of which, were performed and jointly responsible by the Defendants.

1.5v. Plaintiffs have incorporated exhibits that are retained to disclose during trial of this case with the Brief that make declarations and assurances for perfected conditions of Plaintiffs Suburban purchased from the GMC Mr. Good Wrench affiliated Agency of Cornforth Campbell and those Mr. Good Wrench declarations and assurances were absolute conspired fraud, not becoming of Proper supervision or performance, inclusive of General Motors Corporation and their Agencies.

1.6. All acts of Plaintiffs/Complainants shall be referred to by the use of either phrase, of which we will primarily apply singularly as Plaintiffs from hereon.

1.6a. All highlighted references to Plaintiffs designated and numbered Complaints in this brief, etc. are facts of applicable laws resulting and recently updated by Plaintiffs research at the King County Regional Justice Center Library, located in the city of Kent, Washington. All of which have been thoroughly updated through discovery of many changes and assurances of reliable - 2010 RCWs: (Rules Of The Courts in the State of Washington; And based on the Penalties to be relied upon for Defendants Criminal assisted Acts.                                   **Exhibit # 13**

1.6b. The terms as produced and interjected to Plaintiffs by Defendants, are high-lighted in this brief, primarily intended to implement the benefit to a jury for the introduction to and fully qualifying the Criminal Infractions of Defendants in this case.                   **Infractions: Breach, Violations**

1.6c. Thus, Defendants have created a series of Special Proceeding injuries, resulting in Unlimited

PERJURED VEHICLE SALES

P~4

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof
16300-184th ave S E Renton, WA 98055-0903

physical, hearing and mental Damages to Plaintiffs that cannot be denied.

## II.
## CAUSE OF ACTION

2.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.a. through 1.6c. herein.

2.2. Defendants Cornforth-Campbell; An affiliated General Motors Corporation Agency-Dealership, negotiated a sale to Plaintiff's on June 4, 2003, of a 1999 GMC 4 wheel drive Suburban.

2.3.The GMC Corporation, Agency Dealership of Cornforth-Campbell afforded Plaintiffs with: A General Motors Corporation High-lighted Advertisement of {GMC Mr. Good-Wrench}, as a declaration of reliable service, to be provided by the Agency personnel.          **Criminal Acts. Exhibit # 1**

2.3a.. **Crimes committed: Any False Swearing in a legal Instrument or legal setting that the Suborner knew or should have known that such oath or testimony would be false. A CRIMINAL ACT OF FRAUD: of which voids a statute of limitations and cannot take bankruptcy.or find other means to hide values to cure.**          **Exhibit # 1**

2.3b.This was an Egregious, Erroneously and Conversely implied sales pitch with questionable power of which the Agency: Cornforth-Campbell denied responsibility to comply. **To Define: See  # 2.7a below.**

2.3c.This created Injury's to Plaintiffs that were performed or lacked performance as to be brought forward and explained within this Brief of Plaintiffs; verified by available exhibits and high-lighted copies of various Rules as explained within the Law Book Dictionary's in compliance with rules afforded to Plaintiffs and examined at the Regional Justice Center Library, Years and Years of new Law Books Purchased, and examining various Public Libraries for the better part of Thirty Five years And vigorous study's on Rules of Courts within the State of Washington.

2.3d. The King County Court Librarian assisted in Plaintiffs locating, Laws applicable to Defendants Performance and Criminal neglect. The RCW's are expanded and very definite.

2.4. Defendant Cornforth - Campbell issued an assurance as GMC with a logo heading of Nice is Better and as a "Quality Pre-owned Vehicle" with following assurances: <u>1.This Vehicle Has Passed A Rigid Inspection; 2. Has Been Reconditioned To The Highest Standards.</u>          **Fraud in Fact:  Exhibit # 2 & Exhibit # 9**

2.4a. **Fraud In Fact; Positive Fraud: Fraud: Willful Malicious Conduct: Cannot take bankruptcy or find other means to hide values. Fraud embraces all the human ingenuity one can devise to get an advantage over another.  Cannot take bankruptcy or find other means to hide values..**

2.5.<u>Defendants perpetrated Warranty assurance of vehicle performance to care and cure of mechanical deficiencies for two thousand (2,000) miles or sixty (60) days from date of the purchase signed thereof.</u>

2.5a. **Abuse of Process: Fraud: Intentional deception resulting in injury to another and Derivative**

PERJURED VEHICLE SALES

P–5

**Tort: An action in Tort based on the criminal conduct of defendants which resulted in injury's to Plaintiffs, and for which injury's Plaintiffs seek compensation. The term also applies to liability imposed on the Principal for wrongs committed by his agent; Can not take Bankruptcy or find other means to hide values..**

2.5b. Defendants positively breached their Warranty and commitment disclosures of perfected conditions

of the Suburban in general                                                    **Exhibit # 2**

1    Defendants Attorneys and Personnel that received the commencement briefs, were given copies

2    of all of Plaintiffs Subject Matters. The Pictures were filed with the King County Court. Plaintiffs did not

3    plan on filing any exhibits with the Court Clerk until Plaintiffs were forced by the Firm of (Weil, Gotshall

4    & Manges, Now Defendants) whom ordered Plaintiff to cancel GMC as Defendants from our list, or go

5    to Jail within five days. I had no time to organize against their threats until later checking Federal and
                                                                            Washington State Laws.

6    2.5c. This will not injure our trial as Plaintiffs have Copies for Grand Jury, Judge, Witnesses and Self

7    along with a very Good Brief on the positive damages created by defendants on the road accident, and

8    Eight Months precluding gain of health enough for Abdominal Injuries Surgery, extended: Never ending

9    Eye, Ear and Heart Problems to Plaintiffs. The Jury will not know of any previous Exhibits until Trial and

10   Defendants will attempt to ignore the facts.

11   2.6. Defendants were informed and ignored the vehicle was to be used pulling a Recreational Trailer, 30

12   foot plus in length, owned by Plaintiffs, that weighed approximately 7,000 pounds (3½ tons) unloaded.

13   2.7.The Defendants egregiously perpetrated to Plaintiff's of the GMC Suburban 4 wheel drive vehicle

14   being in excellent, stable condition throughout. **Deceit: The Tort of Fraudulent Representation.**
                                                                            **Exhibit # 14**
15   **2.7a. Egregious = Flagrant, Remarkably Bad Behaviour; Perpetrated = To Commit Something Bad, Especially Crime; Conversely = Wrongful Intent which can result in Punitive Damages. Erroneous = Wrong, Incorrect, Inaccurate.**
                                                                            **Exhibit # 16**
16   2.8. Defendants convinced Plaintiffs, if any mechanical problems should arise, the problems would be

17   cured under the existing mileage warranty of which defendants bypassed in denial of inadequacies.

18   **2.8a. Continued Abuse of Process and Breach of Warranty.**            **Exhibit # 2**

19   2.9. The Suburban was not yet equipped with an differentiator: (A transducer or circuit whose output is Proportional to the rate of change of the input signal). An electronic brake control unit: used to activate the Trailer brakes in unison with each application of the towing vehicle hydraulic brakes. This unit is mounted on the bottom inside edge of a towing vehicle dash board, for occasional testing and adjustment of trailer brakes response.
                                                                            **Exhibit # 15**
20   2.9a. Cornforth - Campbell Agency Purchased and installed an Electronic Activator.Trailer Brake Control,

PERJURED VEHICLE SALES
P–6

onto the Dashboard of the Plaintiffs Suburban; and egregiously convincing Plaintiffs to believe the

vehicle was conversely ready for Plaintiffs intended usage; thus binding Plaintiffs agreement to close

the purchase of the Suburban vehicle. An Activator is known to fail in 1 to 3 seconds of emergency use.

**Despotism: A Criminal abuse of Discretion.    Exhibit # 15.**

**2,9a1. False Swearing: Statement of What One Does Not Know to Be True. Every Unqualified Statement of What One Does Know to Be True Is Equivalent To That He Knows To Be False.**

**Exhibit # 14**

2.9b. An Official of Cornforth-Campbell partially instructed Plaintiff on the use of the Activator in

coordinating the Trailer brakes in unison with the application of the Suburban Hydraulic Brakes.

**The Activator was not capable of this performance        Exhibit # 15**

2.10. The Cornforth-Campbell GMC Salesman and Office personnel implied to Plaintiffs that the Agency

did not have a manual for the new Differentiator, nor the GMC Suburban and that they had prepared an

order to acquire the respective manuals to be readily delivered in the very near future. **Moral Certainty**

**Exhibit # 16**

2.10a. Cornforth Campbell did not know that Plaintiff Clinton had spent several years (earlier in life) as a

line mechanic for a large freight firm, plus many years with tractors and machinery of all sorts and of

course Automobiles. .

**Exhibit # 5**

2.10a. Plaintiffs later learned from a Recreational Trailer Dealership that the Differentiator should come

from the factory with a manual explaining the use and comparison of capabilities of each differentiator.

**Exhibit # 3**

2.11. Plaintiffs made many trips in Vain, to Cornforth Campbell Agency to attempt to get some of the GMC

Suburban mechanical problems corrected and to also get the manuals.                    **Exhibit # 1**

2.11a. No repairs were ever corrected and the Agency implied nothing but excuses to Defendants about

the manuals being on order of which Plaintiffs have not received to this day.              **Exhibit # 16**

2.11b1.If Plaintiffs would have received the book on the model of Differentiator placed into the Suburban

by Cornforth-Campbell; Plaintiffs would not have accepted the purchase of the Suburban until a

reliable Differentiator was installed.

2.11b2. Plaintiffs would not have any need to pursue this cause of action for injuries.

2.11b3.The subject installation, attached logo was "Activator" of which Plaintiffs have been advised was

the name given to the first manufacturing of a trailer brake control, many years prior to Plaintiffs

purchase of the GMC Suburban.

2.11b4.Plaintiffs would remain a proud owner of their 1999 Suburban purchased from Cornforth Campbell

2.11c. This may have also negated Plaintiffs, in the trust of Cornforth-Campbell Vehicles, as has definitely

PERJURED VEHICLE SALES
P-7

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof
16300-184th ave S E Renton, WA 98058-0903

been interposed as of date of discovery of the inadequacy of performance in mechanical repairs of the Suburban and of the subject limited brake control not being classified as a differentiator; that was the unnecessary cause of serious injury's and a very dangerous collision that could very well have included many others as will be accentuated within this brief.

**2.11d. Constructive Fraud: The Defendants Constructive Fraud, results when a fiduciary obligation is breached, despite of the motives or intent and gives cause to Exemplary Damages.**

2.12. Three times, a mechanics coordinator (boss), took a drive to test the Suburban brakes of which Plaintiff complained; was on occasion, pulling the Suburban to the left front on applying to slow down.

2.12a. Each time the coordinator stated he could not get any wrong movement from his brake application.

2.12b. This statement was disappointing and not acceptable to Plaintiffs continuing discovery's, after learning the true deficiencies bypassed, and hidden by Cornforth-Campbell Agency Dealership of GMC. of which will be exposed throughout this Brief.        **Defendants  False Swearing**

2.13. The vehicle pitch to the left upon applying the brakes, was not, as **yet**, prominent, but occasionally happened to Plaintiffs

2.14. On one occasion a mechanic, General Motors Corporation Mr. Good-Wrench was told by his coordinator, to remove the left front wheel and show the Rotor, Caliper and pads to Plaintiff.

2.14a.The mechanic stated  he did not want to take the time to pull off  the right front wheel as he declared to Plaintiff that the two front wheel assemblies were appropriately the same. **Wrong Intent.**

2.14b. As will be shown later under following paragraphs; Amid other brake deficiencies, the front rotors were improperly installed.

2.14b1. The Caliper Pins  were badly worn and not lubricated.        **See exhibit # 6**

2.14c.The mechanic conversely stated: It was one-heck of a job to unnecessarily pull off the back wheels.

2.14d. Plaintiff agreed that the left front rotor and pad did not look bad. The new pad was  deceiving.

2.14e. Unfortunately, Plaintiff had no comparison because of not being enabled to compare the right front brake and thus could not deny the farce.

2.14f. The following definitions represent the total and purpose of the brakes assembly.

<u>The Calipers are the Cylinders holding the brake fluid that comes through filled brake lines from a small tank full of reserve brake fluid.The pressure applied by a vehicle driver to the brake pedal, forces the Calipers to press the pads that are attached to the Calipers and placed free on both sides of the Solid Round Rotors which are Attached to the Vehicle Wheels. The pads grip the rotors to slow down or stop the vehicle depending on the pressure applied by the Vehicle Driver.</u>

PERJURED VEHICLE SALES
P-8

**(Often called Disk Brakes),**

- **A shoe type brake system uses cylinders attached solidly to the axle instead of calipers.**

2.15. Cornforth-Campbell: Mr. Good Wrench mechanic explained that all the vehicles brakes were in good shape and the entire vehicle had been thoroughly inspected or repaired to a condition of excellence.

**Perjury: False Swearing: Statement of what one does not know to be true: Every unqualified statement of that which one does not know to be true is equivalent to that he knows to be false.**

2.15a1. Plaintiff later discovered that the newly installed metallic pad on the left front of the Suburban was attached to the floating caliper on the axle frame with badly worn pins and approximately 3/16ths of an inch thinner rotor than the right front rotor and the Pins had not been lubricated.

2.15a2. This new metallic pad was disintegrating and dug chunks out of the left front rotor during Plaintiffs first trips of a few hundred miles to Idaho and then to the Oregon Coast in the summer month of July of 2003 and then to Spokane in the early spring of 2004 equaling about 1800 miles The left front brake was really pulling hard left by then.

2.15a3. Prior to going to Spokane; Plaintiff had again appealed (the fourth time); to the shop supervisor for curing the Suburban brakes from pulling to the left on light or heavy application and was denied as was confirmed by Number 2.15 above; The day Plaintiffs received the response from the shop mechanic.

2.15a4. Plaintiffs obtained a Chilton mechanics manual and personally performed a complete brake job on front and rear of the suburban upon finding that the front Caliper pins were extremely worn. **Exhibit # 10**

2.15a5. The Pins mount the Calipers to the front axel and are required to slide back and forth very gently.

2.15a6. When the Caliper Pins are badly worn; they oscillate; thus are not totally cooperative in the slowing or stopping of the vehicle.

2.15a7. Plaintiff readily installed two new combination sets of calipers and Pins as required by the Chilton Manual.

                                                                    **Exhibit # 6**

2,15a8. Plaintiff, not happy with the performance of the left front metallic break pad that broke off in chunks and charred the surface of the left front Rotar; Plaintiff then had the rotors polished by a city of Renton machinist and then installed new fiber pads and the brakes were excellent in response.

2.15a9. Plaintiff also found that the Cornforth-Campbell Agency Dealership of General Motors Corporation Mr. Good Wrench Mechanics diagnosis of the rear wheels being very difficult to remove was a sign of **Subornation of perjury**. The crime of procuring another to make a false oath.

PERJURED VEHICLE SALES
P-9

2.15a10. The rear wheels did  not appear as though they had been removed since leaving the factory and did not have new brake pads until Plaintiff installed them in April of 2004. **Receipts : Exhibit # 10**

2.16. In vain, Plaintiff complained about the headlights being extremely dim.

2.16a. On at least two occasions. Plaintiff Clinton received egregious implications by other Cornforth - Campbell Agency Personnel in the mechanics department, that they had brand new GMC Vehicles recently received from the factory with dim head lights and they indicated it was to be an expected performance.

2.16b. This appears to Plaintiffs as a slam at General Motors'Corporation Assembled Products.

2.17.The Cornforth-Campbell personnel must think anyone purchasing from them must be novices.

2.18. If Plaintiffs would have received the Electronic Brake Control Manual; Plaintiff would not have **See Plaintiffs Mechanics Resume: Exhibit # 5.** pulled the trailer the first 10 feet, until Plaintiff would take the Suburban to a Recreational Vehicle Dealer and have the newly installed activator replaced by a positive action differentiator/activator.

2.19. As will later be defined: Plaintiff is quite certain that if Plaintiff had not Purchased a Chilton mechanics manual from an Auto  Parts dealer on the Suburban and then Personally performed a complete brake job on the suburban; Plaintiffs and most probably, several other emergency stopped Freeway I-5 travelers, would have succumbed in a horrible fiery death. **Chilton Manual: Exhibit #  6.**

2.20. Absolutely, None of the much needed repairs, were ever corrected by Cornforth Campbell GMC Mr. Good-Wrench; and the Agency implied nothing but excuses for repairs or the owner manual on the Suburban or the Actrivator for the Trailer Brake Control.    **Differentiator Manual Book: Exhibit # 3**

2.20a. The Activator installed and lack of a promised book on functioning and reliability is one of the major criminal factors in this law suit. **Cant Take Bankruptcy to Cure: Willful and Malicious Conduct, or find other means to hide values.**

2.21. After considerable driving and discovering the many needs and denials of those needs of repair and replacement contrary to Cornforth-Campbell Notices of perfect condition of the Suburban prior to sale;

2.21a. Defendants theory and performance could not be trusted. Plaintiffs did not purchase the vehicle to set on display.

2.21b.The vehicle should not have been allowed on the road in its un-stable condition at time of Purchase.

2.22. The Flyers on the Suburban along with the denial of a differentiator manual and Sales and Mechanics departments Perjured Analysis of Brakes and  Lights conditions along with vehicles faulty

PERJURED VEHICLE SALES

P-10

battery causing engine faltering, was criminal subversion and an absolute denial of Facts by Cornforth Campbell GMC Agency.

**Malpractice and Vicarious Liability**

**2.22a. Malpractice: A Professionals improper or immoral conduct in the performance of duties, either intentionally or through carelessness or ignorance.**                    **Exhibit # 14**

III.

**DEFENDANTS DANGEROUS NEGLECT AND RESULTS**

3.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1. through 2.22a. herein.

3.2. In Early July of 2003; Plaintiff went to a Parts dealer and procured installation of two (2) new light bulbs to enhance night vision prior to Plaintiffs going on vacation to Silver Creek Hot Springs Resort on a mountain top above the Payette River, and about a hundred miles East of Boise, Idaho.

3.3. From Silver Creek, Plaintiffs left for the Oregon Coast to join our Youngest Daughter Melanie and Husband Ken and family of four children for one week of which we usually met and Camped at Bandon, Oregon for one week.

3.4. Plaintiffs chose to drive along the Snake and then the Columbia Rivers to Portland, Oregon, then South on the Freeway I-5 to Salem, Oregon; Then Westerly to the Coast and Bandon, Oregon.

3.4a. When we arrived at Pendleton, Oregon; It was a real clear night and Plaintiffs chose to drive through the night and enjoy the beautiful Full-Moon.

3.4b. This was on a Sunday evening and the traffic was very scarce; mostly Trucks; whom kept signaling all night to us to Dim our Lights of which were already on dim.

3.4c. We finally stopped at the Dalles, Oregon and camped in a station lot until day-light and then on to Bandon in the early A.M.

3.4d. Plaintiff checked the Headlamp Lens to see if either one was broken. It had appeared as though the Lens were broken during our driving of which was not the event.

3.4e. Upon arriving home at the end of the week and with no other night driving; Plaintiff then went back to the Dealer from whom we had procured our bulbs and then purchased mounting of two new Lens.

3.4f. The headlamps are called Lens. And the bulbs come separate except in a new lens purchase.

3.4g. Because of little night traveling at home; Plaintiff did not realize of the distorted head-lamps from age or possible past heat exposure until truckers complained by blinking their lights and Plaintiffs passed enough Oregon Trees to see the distorted lights were shinning partially on the road, but mostly in the trees.

**Headlight "Lens" Purchase Receipt: Exhibit # 10**

PERJURED VEHICLE SALES

P-11

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof
16300-184th ave S E Renton, WA 98055-0903

3.4h. No wonder they were dim. Thanks to Cornforth-Campbell and GMC Mr. Good-Wrench.

3.4i. Plaintiff did learn of the lights being dim and consequently had paid a parts dealership to install new bulbs after complaining the fact to Cornforth-Campbell whom chose to ignore the dangers of dim or distorted head-lights in abuse of General Motors declaration of Mr. Good Wrench of which appears to only be considered as an "inspiration to override buyers confidence".          **Exhibit # 1**

3,5, The engine had stalled during warranty and about five miles from Plaintiffs residence; Plaintiff reacted and coaxed the vehicle to a near by: Schucks Auto Parts Dealership at Covington, Washington.

3.5a. Plaintiff could not properly test the vehicle as it was turning dark; Plaintiff Clinton then called a tow truck to move the vehicle to Plaintiffs residence where Plaintiff had equipment to analyze the problem.

3.6. The battery had a dead cell and would not take a charge.

3.6a. Plaintiff then checked the spark Plugs and determined need to install new spark plugs.

3.6b. Plaintiff purchased and personally installed a Heavy duty battery and all new spark plugs.

3.7. Plaintiffs soon found the GMC Suburban Vehicle had many other perpetrated performance problems.          **Exhibit # 10**

3.8. Plaintiffs had found the battery life had been exceeded and was the cause of the engine erratic actions; especially in starting the engine.

3.8a. Plaintiffs found the engine overheated to 280 degrees.

3.8b. Plaintiffs were told by Cornforth Campbell personnel in the mechanics Department, that the water temperature of 280 degrees was good for the motor, thus declining service.          **Perjury**

3.8c. Plaintiffs purchased and installed a 180 degree thermostat and a new radiator cap and never again witnessed any temperatures above 180 degrees. (212 degrees is the boiling point)   **Exhibit # 10**

3.9. Plaintiff reiterates that receipt of the trailer brake control (Differentiator) manual could have informed Plaintiffs of an unacceptable, contemptible performance by Defendants in the installation of an inferior Activator and again in procrastinating about not having a manual to explain the quality and use of the Activator, as disclosure from the manual, could most probably, not have met Plaintiffs approval and most probably negate the sale.

**Differentiator Manual: Exhibit # 3.**

3.10. The Activator short response, caused a very serious wreck, severely injuring both Plaintiffs.

3.10a. Caused Plaintiff, Clinton M. Tullis to have serious Body Injury's involving casts and major surgery's for most of two years.

**Medical History: Exhibit # 8**

PERJURED VEHICLE SALES

P-12

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300 184th ave, S E Renton, WA. 98058-0903
phone: 425-226-7399

3.11. The surgery performed on April 28, 2005 was performed only after stabilizing Plaintiff: Clinton.

M. Tullis Heart injury conditions maximized by the Collision.

3.11a. The surgery was to repair two huge lower inguinal "hernias" procured during the collision that were caused to rupture during the collision and protruded Completely across Plaintiffs lower abdomen..

3.11b, Plaintiff; Clinton also pulled the ligaments loose from his left wrist in fighting to turn the Suburban to the right and off the vehicle in front of which contained a young mother and her pre-teen daughter.

3.11c. Clinton wore a cast on his left arm for about one and one-half (11/2) years and cannot completely fold his left index finger as yet without pain.    **Medical Attention: Exhibit # 8**

3.12. The suburban Air bags had broken and Clinton thought Plaintiffs were going to die in a fire; fed by almost forty gallons of gas procured in Vancouver, Washington on the way home from vacation on the Oregon Coast. Clinton was determined not to take others with Plaintiffs, if at all possible. ..**Exhibit # 4**

3.13. As it turned out; the air bags exploding produced the smoke and fire appearance.

3.14. The collision severely reduced the mental and physical stamina required in Plaintiff Clinton Real Estate Profession.

3.15. Plaintiff remains strained in catching up in Plaintiffs home yard and garden upkeep

3.16. All for which Plaintiffs are remaining suffering and most possibly will never fully recover. **Exhibit #14**

3.17. Plaintiff: Margaret L. Tullis was severely injured with the air bags burst and the sudden impact of the Suburban onto the pavement as Plaintiffs successfully escaped the vehicle we had contacted and luckily, the right lane had cleared enough to allow Plaintiffs the room.    **Exhibit # 4**

3.18. Plaintiff Margaret previously had a slight hernia of the upper stomach which expanded in the collision and remains an increased problem with her hopes of curing, slightly shattered by being told "that type" of operation is very dangerous.    **Exhibit # 11**

3.19. Plaintiff Margaret spent a miserable night at the Centralia Hospital, even given excellent care.

3.20. All of the above mechanical problems could have easily been cured, if Defendants were capable or serious of performing a proper analysis and considerations, in lieu of the Cornforth Campbell GMC Agency dealership, employees procrastination and denial of proper service to Plaintiffs.

3.20a. The absolute responsibility of the Dealership and General Motors Corporation Criminal infractions.

**3.20b. Defendants actions resulting in this Lawsuit qualify as: Special Proceeding Damages.**

PERJURED VEHICLE SALES
    P-13

Clinton M Tullis and Margaret L Tullis
and the patrimony relationship thereof as ProSe
16300-184th ave, S E Renton, WA, 98058-0903
phone: 425-226-7399

Damages beyond other damages; A Proceeding providing extraordinary Relief Such as Exemplary Damages.                                                                    **Exhibit # 7**

3.21. **Defendants Acts of Deceit: The Tort of Fraudulent Representation; Concealing Something or Making false Representation with an evil intent. (Scienter) when it causes Injury to another. Willful -Malicious Conduct : (FRAUD)=Can not take bankruptcy or find other means to hide values**

3.22. None of the egregious promises or mechanical corrections was ever performed by Cornforth                                                                             **Exhibit # 13**

Campbell, regardless of being within the time frame of the Vehicle Warranty provided to Plaintiffs on

date of Purchase.

3.23. In regards to Plaintiffs Purchase from Cornforth-Campbell; The Agency "Declaration of Mr. Good-Wrench" is void of proper supervision by General Motors Corporation. Apparently only utilized by Defendants as a hot Sales Pitch. **Breach of Warranty: Exhibit # 2; & Mr. Good-Wrench: Exhibit # 1.**

3.24. The agency utilizing the GMC add of Mr. Good Wrench, along with the Agency denying the Electric Trailer Brake Control "supplied manual", was erroneously denying consideration to the Public and Plaintiffs as severe endangerment.                                                          **Tortious Conduct Exhibit # 3**

## IV.
## DEFENDANTS INEXCUSABLE NEGLECT AND EFFECTIVE COMPARISON

4.1. Plaintiffs re-allege each and every allegation contained in paragraphs No.1.1. through 3.24. herein.

4.2. After the collision and desperately needing the Trailer Brake Control for probable proof of all details;

4.3. Plaintiff called the people Plaintiffs had Purchased the Wilderness Trailer from and they informed us of a Tacoma Dealership and address for us to see about a differentiator manual.

4.3a. Plaintiff went to the agency, of whom the private individual we purchased the trailer from, had in fact originally purchased the Wilderness Trailer from and asked for their assist in locating us a manual describing the particular differentiator that we were so reluctantly denied by Cornforth-Campbell Agency city of Puyallup Dealership of General Motors Corporation and Mr. Good-Wrench.

4.3b. Plaintiffs performed three trips to a South Tacoma Recreational Vehicle dealer and a party working in supplies had taken it upon himself to order and procure two (2) manuals for Plaintiffs dilemma.

4.3c. Upon analyzing the information in the manual; Plaintiff (Clinton M. Tullis) was exonerated from          **Exhibit # 3**

any blame whatsoever at the collision responsibility trial in Chehalis, Washington.          **Exhibit # 7**

4.4. Plaintiffs had used the trailer for vacations to the Oregon Coast and to Idaho Payette Lakes, for and during the three previous years, prior to Plaintiffs purchasing the subject 1999 GMC Suburban.

4.5. Plaintiffs Son in Law: Ken Kalliainen, had pulled the trailer for those three years with his ¾ ton Ford

PERJURED VEHICLE SALES
P-14

Clinton M. and Margaret L. Tullis ProSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

pickup, as Plaintiffs were vacationing with Ken and our youngest daughter "Melanie" and their family of four children.

4.6. Each trip, Plaintiffs followed the Kalliainens and we did not encounter any problems; no matter how rapidly  Ken was forced to stop, or how rough the terrain we were negotiating, or how heavy the load.

4.6a. At that time; Plaintiffs loaded Wilderness Trailer had the load of at least six bicycles, family tents and lots of Kalliainens family camping gear, general provisions, camping tools, cook-ware, mechanics tools, wrecking bars for emergency use and often "some fire wood and parking blocks, along with tow chains, work and dress clothes and bedding etc. on the trailer, readily sustaining necessary travel speed so as not to delay or bother other vehicles traveling in back of us or wanting to pass us.

4.6b. The trailer load was much heavier than that pulled by Plaintiffs as the Kalliainens determined to pull a U-Haul Trailer for extra convenience of loading and unloading and two "side by side parking spaces.

4.6c..Plaintiffs were always within 200 feet behind the Kalliainens and Plaintiffs Trailer to vacation points, mostly on the Oregon Coast for the three years of 1999 - 2002 inclusive.

4.6d. Several times Ken had to brake down rapidly as someone coming towards us may be passing in a restricted area. Ken's differentiator (electric trailer brake control) always performed absolute response at any and all times in necessitating a stop, whether sudden or casual, no matter whether day or night or how badly or roughly Ken was challenged.

4.6e. Ken's trailer brake control had been installed upon purchase of his vehicle, by whom he purchased his ¾ ton vehicle from and never hesitated on any need to respond, during Ken's towing Plaintiffs 30 plus foot Wilderness Trailer for approximately four thousand miles of all types of terrain and road conditions, prior to Plaintiffs purchasing their own vehicle: (The subject 1999 GMC Four wheel drive Suburban from Cornforth-Campbell GMC Agency-Dealership).

4.6f.The Trailer Brakes were excellent and always responded to any demand.

4.7. The trailer was perfect for Plaintiffs, as it was large enough and constructed to have privacy when necessary, even when others visited or stayed in the fore half, which was often, and well loved and of which we readily joined prior to or.after our rest. Plaintiffs and the Kalliainen family really miss the trailer.

4.8..Thus, Plaintiffs had been easy to convince that the GMC Suburban was capable of like performance.

4.9. Plaintiffs didn't dream of the GMC dealership; in applying a new " trailer brake differentiator"(Activator)

PERJURED VEHICLE SALES
P-15

Clinton M. and Margaret L. Tullis Pr0Se
16300-184ᵗʰ ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 206-713-4950

on our acquired vehicle would perform any different.                An absolute:  **Breach of Trust**

4.10. Plaintiffs became easy victims of Cornforth-Campbell agency dealership Warranty's and GMC

Corporation bragging Mr. Good Wrench.      **Willful Malicious Conduct & Vicarious Liability**

4.11.Cornforth Campbell **denied** their commitment to **Specific Performance. Plaintiffs Letter to Dealer**
**Exhibit # 9**
4.12. Defendants GMC and Cornforth - Campbell have given Plaintiffs the opinion of the dealers

believing: every one dealt with, must be unknowledge able as to the actual performance and upkeep in

the vehicles they purchase. They also appeared to treat Plaintiffs as Aged and incapable of lengthy

travel. Their overwhelming promises to Plaintiffs were deluded lack of consideration and appears to be

perpetrated only for purposes of sales.                          **Criminal Acts**

**Wash. App. Div. 2 1996. "Criminal Act" May be described as both affirmative act, or omission of**
**possible and legally required performance.—State v. Chester, 918 P 2d. 514, 82 Wash App. 422,**
**review granted 928 P. 2d 412, 130 Wash.2d 1016, affirmed 940 P2d 1374, 133 Wash. 2d 15.**
**Criminal Law 26.**

4.13.They also appear to believe that every one on the road stays near home or can vacation in a motel

or hotel if they break down on the road and that any repairs they may need will only cost a few dollars

even on holidays, weeks or week-ends, a short stay on their way, with Pleasure Time to spare, and not

giving consideration of short vacations with defined essential procedures.
                                         **Breach of Warranty Exhibit # 2**
4.14. Defendants unreasonably and thoughtlessly, seriously endangered Plaintiffs and Publics lives.

4.15. Should we look at the entire organization as being sadists, resolved to test results of their Fraud.
                                                    **Criminal Wrongful Intent**
4.15a.The Dealers are in as much danger as anyone. They may be ok in their vehicle but that does not

apply to their meeting others, passed on the road in questionable vehicles, no matter which direction

they are traveling..

## V.
## HISTORY INCIDENTAL TO DEFENDANTS DECEPTION

5.1. Plaintiffs re-allege each and every allegation contained in paragraphs 1.1. through 4.15a..

5.2. Plaintiffs is quite positive; The improvement of the Suburban brakes by Plaintiff Clinton; Is the only

reason that Plaintiffs and most probably others remain alive that were involved in or near Plaintiffs

Collision on Northbound, Freeway I—5 near Centralia, Washington in July of 2004.

5.2a. The GMC Agency - Dealership of Cornforth-Campbell could have been the cause of the death of

several people in that collision for their neglect of curing the malfunctioning GMC Suburban Brakes

under Warranty.

PERJURED VEHICLE SALES
P-16

Clinton M. Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300·184ᵗʰ ave, S E Renton, WA. 98058-0903
phone:  425-226-7399

5.2b. Plaintiffs, beyond a reasonable doubt, swear that it is highly probable that some of us would have perished in a fiery collision of which most likely would have included both vehicles in front of Plaintiffs and others already stopped bumper to bumper in the right Lane.

5.2c. Plaintiffs were in the left Lane where the two Parties contacted by Plaintiffs; were already bound together and only one-half off the left lane awaiting Authorities to analyze their prior collision.

5.2c1. NOTE: Those parties were right next to a concrete barrier and could not clear the road in entirety.

5.3. Defendants knew the (Activator), Trailer Electric Brake Control was questionable or they should have known. (Plaintiff is informed the manual becomes part of the Unit Purchase and the manual explains the ability of a differentiator to activate on demand or otherwise under certain circumstances.

5.3a. The manual gives a line for operation showing that the Activator installed by GMC Agency Dealership of Cornforth Campbell; was known to be slow in responding and was known to collapse during the first second of hard use.

**Exhibit # 3**

5.3b. The Book shows: At 60 Miles per hour, a vehicle travels at 88 feet per second; Plaintiffs were Traveling at 50-55 miles per hour;

5.3b1. The vehicle speed appeared to drop to about 15 miles per hour in the first second of hard use; Meaning the differentiator appeared to activate, then quit after the first 30 to 50 feet of travel.

5.3b2. Meaning the trailer brakes were not working after the first 30- 50 feet and the trailer was pushing the Suburban for the last 150 -185 feet.

5.3c. This is the way it felt to Plaintiffs and shows by the bent trailer ball hitch.

**Exhibit # 4**

53c1. The extra heavy duty ball hitch, bent forward for at least (1/2) one half of an inch.

53d. The Suburban suddenly felt as though Plaintiffs were floating on Air, from the immense pressure of the Trailer without working brakes.

5.3e. The Trailer pushed so hard; The Trailers full length of: (2 Steel Channel Frames) folded in the center and did so much incidental damage to the trailer, that the Trailer was not repairable: A total Loss.

5.4. This type of Differentiator had not been used for over twenty years by the Recreational Vehicle Dealership, whom supplied Plaintiffs with the 2 books prior to Plaintiffs appearing in the Chehalis District Court for determination of fault.

**Exhibit # 1.**

5.5. The heavily loaded trailer pushed the skidding Suburban for about (150 to 185) feet before the

PERJURED VEHICLE SALES
P-17

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184th ave, S E Renton, WA. 98058-0903
phone: 425-226-7399

Suburban left front wheel slowly climbed upon the center of a heavy 4-wheel drive vehicle # 2 that had

also collided into another heavy Pickup or Suburban # 1, in front of the vehicle Plaintiffs contacted.

5.5a. Plaintiffs Suburban; Vehicle N0 3; Suddenly tilted to the right and Plaintiff could see the left front

wheel very slowly climbing up over the rear bumper of the vehicle in the immediate front of Plaintiffs.

5.6. Margaret was leaning slightly forward and Plaintiff Clinton, grabbed her by the shoulder and pulled

her away from the right front doors glass window, just as the air bags broke and forced her back far

enough to be somewhat protected by the right door frame beside her seat.

5.6a.The Air Bags Exploded and Plaintiff thought we were on fire.

5.6b. Plaintiff could see a Blonde woman on the drivers side of a Red Pickup in front # 1 and a small

Blonde Girl on the right side of the Red Pickup in front; as Plaintiffs Suburban was now tilted to a 30 to

45 degree angle and Plaintiff was able to see down through their back window

5.6c. Plaintiff was certain we were to die in the fire and didn't want others to join us if possible to prevent.

5.6d.Plaintiff defied the Air Bag and turned the Suburban Steering Wheel hard right, hoping to escape

the vehicle we climbed upon. Plaintiff again, applied extreme pressure on the Suburban Brakes.

5.6e.The Suburban Right Front Wheel Grabbed the Pavement and threw Plaintiffs to the right and off the

vehicle Plaintiffs had climbed upon; This working, also kept the Suburban from laying over on its side.

5.7. With Plaintiffs Engine still running, Plaintiffs slowly drove around the No. 2 attached vehicle to

a very slow stop along side of No. 1 vehicle.

5.7a. Plaintiffs Suburban Broke the frame just behind the back door and the Suburban Front Wheels also

broke their framework and each wheel now pointed in opposite directions.              **Exhibit # 3**

5.8. Plaintiff Clinton climbed out of the Suburban and ran around to the right front door to assist Plaintiff

Margaret in getting out of the smashed vehicle.

5.8a. Then seeing there was no fire, commenced helping Margaret towards the trailer where she could

lay in bed until an Ambulance could arrive.

5.8b. A lady Plaintiffs believes was Keri Knorr, driver of vehicle No. 1, immediately came to assist in

getting Margaret to the rear door of the Trailer and to get Margaret onto the bed and see if she could

help her relax in any way possible.

5.8c. The lady (Keri ?) asked Clinton if we had collided with No. 2 Vehicle. Clinton answered with yes, we

and the patrimony relationship thereof as ProSe
16300 184th ave. S E Renton, WA. 98058-0903
phone: 425-226-7399

PERJURED VEHICLE SALES
P-18

had. slowly crawled upon vehicle No. 2.  (Keri ?) stated she thought so as she had felt a slight thump.

5.9.The collisions were created by about a dozen vehicles in front making sudden stops, one just right

after the other and luckily only the left lane had any known collisions, as the vehicles in the right Lane,

were able to move aside soon enough to allow Plaintiffs the room to get off the contacted vehicles.

5.10. A long line of Vehicles ranging from 50 to 70 miles per hour and suddenly stopping  is bound to

procure contact even though reactions from most drivers are comparatively instant.

5.11. Plaintiffs left two (2) wide lines of deeply burned Asphalt tracks for about two hundred (200)

feet in length from the Suburban Braking of which it could  not capably stop prior to collision.

5.12.The differentiator manual, Plaintiff finally procured from a Recreational Vehicle Agency, after the

wreck (collision) absolutely states that the manufactures differentiator placed in Plaintiffs Vehicle; was

known to collapse within one to three seconds of  heavy usage.                    **Exhibit # 3**

5.13. Plaintiffs reiterate;Tthe Recreational Vehicle Dealer; that afforded two books on the various

Differentiators inclusive of the type installed on Plaintiffs Suburban by Cornforth-Campbell; Had not

supplied or used this type of Differentiator (termed as activator), for at least twenty years.

5.14. Plaintiffs were doing approximately 50-55 miles per hour when attempting to stop quickly of which

at the very first, slowed to about one-third or 15 miles per hour, and then continued very slowly; slowing

down and unbelievable at not completely stopping, but was like very slowly floating on air as Plaintiffs

could feel the heavy pushing effect from the trailer.

5.15. Margaret got a bad beating, from the Air Bag Explosion and spent a very bad night at the

Centrailia Hospital even though she had excellent care.

5.15a. Margaret became paranoid to travel on a Freeway and occasionally freaks out when she sees

another vehicle in front of or coming towards us.

5.15b. Both Plaintiffs are remaining slowly improving in overcoming the physical set-backs.

5.15c. Our yard work and House maintenance has been neglected of which Plaintiff Clinton can only

perform from two to three hours at a time, and which has also slowed down Plaintiffs planning Real

Estate Projects.

5.16.The damaged trailer has a thin skin of aluminum or plastic siding on its entire exterior. This was only

slightly dented to less than a quarter of an inch deep on only two (2) of the four (4) inch siding slats that

rubbed number 2 vehicle for a length of about two (2) feet. A person could dent the trailer that much with his fingers.

5.17. Plaintiffs had not had any experience or knowledge of and with a differentiator. It had been about thirty years since Plaintiff pulled a "light over-night trailer" of a friends that insisted on our using it on a vacation trip to California, and did not have any trailer brakes.

5.18. Plaintiff needed reference of a book on the differentiator brake and comparable systems to be able to know what was sufficient or the most efficient and proper usage and reliability.    **Exhibit # 3**

5.19. Plaintiff would have complied to change accordingly, Cornforth-Campbell and General Motors Corporation Mr. Good-Wrench assist that appears not to properly perform maintenance or repairs as per Warranty and perpetrated assurances to Purchasers of their GMC vehicles.

## V I.
## CLAIM AND PRAYER FOR RELIEF

6.1. Plaintiffs re-allege each and every allegation contained in paragraphs No.1.1. through 5.19 herein

6.2. Plaintiffs Pray for relief from this Court, for Summary Judgment in consideration of the Summation of the evidence of indisputable facts of Injuries afflicted upon Plaintiffs referenced throughout Plaintiffs Brief in this Law Suit against Defendants: General Motors Corporation, and trusted agency dealership of Cornforth-Campbell in denial of declared specific performance and consequently performing criminal fraud and derivative torts for which Plaintiffs deserve Special Proceeding damages for Injuries from the many criminal infractions of Defendants non-becoming to the quality of leadership and responsibility, rightfully expected by the Public for General Motors Corporation and Agency Dealership of Cornforth-Campbell whom perpetrated Warranty's, and fictional assurances of conditions of Plaintiffs Purchase; Then denying maintenance and influence of General Motors Corporation through their advertised "Mr. Good-Wrench, thus severely endangering Clients, trusting Plaintiffs and the Public health and welfare.

6.3. Defendants continuously denied advertised expert maintenance and care to assist Plaintiffs that could or would have prevented Plaintiffs GMC Suburban from having a collision that very nearly could have cost Plaintiffs and others their lives in a deadly fiery crash and resulted in Plaintiffs losses including severe body injury's, loss of stamina, loss of time with family and friends and loss of income, for which Defendants continually manipulated to avoid all visual rules of law pertaining to their acts of deceit analogous to Defendants perpetrated warranty and assurances of genuine conditions of the

PERJURED VEHICLE SALES

P-20

Clinton M. Tullis and Margaret L. Tullis
and the palimony relationship thereof as ProSe
16300-184th ave. S E Renton. WA. 98058-0903

Suburban; along with installation of a non-conforming, inadequate"trailer brake control"and refusing any

factory reference to its capabilities and rightfully concluded as criminal actions of an egregious Fiduciary.

6.4. The Suburban was not in a condition that it should be on the highway and Plaintiffs were assured that

it was in positively excellent condition.

6.5. The body was beautiful and deceitful.

6.6. The mechanical functions were negative, inclusive of the braking system being dangerous.

6.7. Payment to Plaintiffs and shaming Defendants for their dangerous acts to the citizens of the

United States and their visitors, should show our Legislators that their is a dire necessity of changing

the rules pertaining to each and every vehicle used in any manor on any of the nations roads and

decision is to also examine every vehicle coming into our nation whether by ship, plane or just being

driven or hauled by neighboring country citizens.

### VII.
### NOTE FOR MOTION

7.1.Plaintiffs re-allege each and every allegation contained in Paragraphs Nos.1.1. through 6.7. herein.

7.2. Plaintiffs/Claimants motion for this Court to order summary judgment as special proceeding and

compensatory damages in summation of the crimes committed in this case ; and giving consideration of

the overwhelming moral certainty of Plaintiffs/ Complainants beyond all reasonable doubt, of Derivative

torts continually, dangerously performed by Defendants; needlessly causing Plaintiffs/Complainants

injuries, including income and property losses of the past, present and future and for the crippling,

ruinous, tortuous, personal, mental, physical and monetary injuries; of which can only be partially

repaired or satisfied by monetary reparable damages from Defendants willful - malicious conduct and

derivative torts to Plaintiffs; Properly amounting to payment to Plaintiffs by Defendants of

Eighty Seven Million and no/100 Dollars ($87,000,000.00) for said Injuries prevailing; Applicable to  the

Defendants continuously manipulating with malice, to avoid all visual rules of law in specific performance

as  per advertisements and promises pertaining to their acts in denial of assist to Plaintiffs that could

have prevented Plaintiffs from having a collision resulting in and continuing Plaintiffs multitude of serious

Injuries.

7.3. As a result from the Unnecessary Accident, Plaintiff Clinton has consistently been notified to keep

an essential appointment with the VA Hospital to check and keep Plaintiff in as good a shape as

possible for his survival.

PERJURED VEHICLE SALES
P~21

Clinton M Tullis and Margaret L Tullis
and the palimony relationship thereof as ProSe
16300-184th AVe. S.E. Renton, WA. 98058-0903

7.4. On this _____day of _____; This Court does hereby rule this case in favor

of: Clinton M. Tullis, ProSe and Margaret L. Tullis, ProSe and the community comprised thereof.

The Defendants known as: Cornforth-Campbell and General Motors Corporation are hereby ordered to

pay what Plaintiffs ask for; in the sum of Eighty Seven Million and No/100ths Dollars to be paid within

_____days from this _____day of _____20_____, If Payments are effected,

after this time and recognized for a short term; Interest will accrue @ 1&1/2 % per month from date of

Court signature on this documented brief until payments are paid in full.

THE OFFICIATING JUDGE OF THIS CASE AGREES TO SWEAR TO THE OATH OF OFFICE
AS INITIATED BY THE CONSTITUTIONAL LAWS: MAINLY, THE SEVENTH AMENDMENT.
SEE PARAGRAPH NO. 1.4b., Page # 3.

_____
                                              Judge/Commissioner

_____
Clinton M. Tullis ProSe          date

_____
Margaret L. Tullis ProSe          date

*Clinton M. Tullis*
Clinton M. Tullis
16300-184th ave.; S.E. Renton, Wa. 98058-0903
Phone and Fax (425) 226-7399

*Margaret L. Tullis*
Margaret L. Tullis
16300-184th ave. S.E, Renton, Wa. 98058-0903
Phone & Fax:   425-226-7399

I *Irene Balbuena*_____being a
Notary Public in and for the State of Washington
do hereby swear that on this *2nd* day of :
AUGUST 2011;   I witnessed the Tullis's
signatures on this portion of this document

My commission expires on *05/01/2012*

IRENE M. BALBUENA
COMMISSION EXPIRES
NOTARY
PUBLIC
05-01-12
STATE OF WASHINGTON

PERJURED  VEHICLE  SALES
P-22

| Points and locations in order | Numbers Definitions | Numbers Definitions |
|---|---|---|

1. Mr. Good Wrench & Nations Agency's    (9). Letter to Comforh-Campbell after several denials of
2. Warranty & Declarations of Conditions    needs of Service and disillusioned cure for perjured
guaranty of .  (3).  Differentiator Book (Manual)    perfect condition of vehicle.
(4). Bent Trailer Ball Hitch    (10).  Headlamp Lens and Bulb replacements, Brakes..
(5).  Plaintiffs Mechanics Resume    Battery, Engine repairs, Parts, Supplies, etc.
(6).  Chiton "Mechanics Manual"    (11). Duel Responsibility-Complicity (Corporation & Agency's)
(7).  Chehalis District Court    ( 12) Obligations of Manufacturers in assembly of all motor vehicles.
(8).  V.A. Medical History    (13). Upon General Motors receiving Plaintiffs first Complaint: Mr. Rick Van
Wagoner immediately ordered stronger qualitye of metal and welding in all vehicle frames and steering
assembly's of all General Motors new vehicles. He sent Plaintiffs a notice of the order and contributed the
change to Plaintiffs understanding, plus offered $15,000 to Plaintiffs on any new purchase of a GMC
Vehicle. We have had the same response from three other GMC Leaders offering $25,000 reduction
offers to Plaintiffs from any GMC vehicle purchase by Plaintiffs.
(14). Comforth Campbell Agency perjured advertising and Supervising on false repairs.
(15).Plaintiffs: Call for Grand Jury Determination in event of any denial of Plaintiffs Summary Judgment
(16). The Crushing of Plaintiffs health; with delayed, doubled, huge Lower Inguinal surgery's, arm and
wrist slings & wrap supports, medicines, Ex-rays, Scans and a Heart Pace Maker and continual
examinations; essential for survival through efforts at the Veterans Hospital. All from neglect of
proper surveillance and questionable survival conditions Defendants perjured; In anxiety to rid the
one-half portion of their responsibility to Plaintiffs through recently transferring their total Agency
responsibility inclusive of the most recent Summons and Complaint of this Case to their Insurance
Company in California of whom has made contact with Plaintiffs and is waiting for Plaintiffs decision of
which Plaintiffs will place this brief and Exhibits to Defendants assistants inclusive of trial dates for
finality of each Defendant.

(17). Defendant Comforth Campbell: Willful, Malicious Conduct, declaring Plaintiff's Purchase
passed a rigid inspection and has been reconditioned to the highest standards.
(18). Wilful, Malicious Conduct in pressing for new sales through advertising of GMC Mr. Good
Wrench at all of GMC U.S. Agency's; Cannot take Bankruptcy, or find other Means to hide Values.

(19). Willful, Malicious Conduct of Weil, Gotshal & Manges LLP
becoming responsible for Motors Liquidation Company  and
Representing General Motors Corporation to Federal Government
in Chapter 11 Bankruptcy. Chapter 11 is certain when it can be
allowed to a party/Organization, etc. that has an income and
history of capability to make payments on their Debts.
General Motors is and has been an Accesory to its Agency of
Cornforth-Campbell in Puyallup, WASHINGTON THAT Committed many
Criminal Acts and Injuries to Plaintiffs amidst an enormous
sum of PeRjury about perfection of a GMC Suburban purchased
from Cornforth-Campbell that caused lifelong hearing  & heart
damages to Clinton along with eight months of Super "Lower
Inguinal Hernias, not being overcome by SuRgery for eight
months because of the enormous damages AND IF Clinton had not
been a mechanic for many years; would have led to the deaths
OF SEVERAL CAR LOADS OF PEOPLE STOPPED FOR EMERGENCY ON THE
Chehalis and Centralia portion  of I-5 Super Highway. Plaintiff
Margaret had to spend the balance of the day and all night at the
Centralia Hospital for bruises encountered from Plaintiffs
contact of the vehicle nearest and waiting in front because of a
earlier contact caused from about a quarter of a mile ahead
vehicles suddenly having emergency stops  She has not completely
overcome her injuries and fright to date. We have well earned more
than we have asked for.    WE WILL NOT QUIT UNTIL PAID.

*So hardly*
*will get off*
*easy by paying*
*fair Bill.*

Exhibits & Facts
for actionable briefs
Numbers 1-19
Page 23

Clinton M Tullis and Margaret L Tullis
and the patimony relationship thereof as ProSe
16300·184ᵗʰ avg S E Renton WA 98058·0903

| DOCUMENT NUMBERS | EXHIBITS | | NO.S | EXHIBITS | | NOS. | EXHIBITS |
|---|---|---|---|---|---|---|---|
| 1.2a ----- | # 1 & 2 | | 2.9----- | # 17 | | 2.22a----- | # 14 |
| 1.3----- | # 11 | | 2.9a------ | # 15 | | 3.4g------ | # 10 |
| 1.3a1----- | # 2 | | 2.9a1----- | # 14 | | 3.4i------- | # 1 |
| 1.3a2----- | # 2 & 14 | | 2.9b ---- | # 2 | | 3.6b----- | # 10 |
| 1.3c ----- | # 13 | | 2.10 ----- | # 15 | | 3.8b----- | # 9 |
| 1.3d ----- | # 11 | | 2.10a----- | # 5 | | 3.8c----- | # 10 |
| 1.3e2 ----- | # 18 | | 2.10b ---- | # 3 | | 3.9------- | # 3 |
| 1.3f ----- | # 18 | | 2.11 ----- | # 1 | | 3.10a ---- | 8 |
| 1.3h----- | # 11 | | 2.11a----- | # 15 | | 3.11C---- | # 8 |
| 1.3I ----- | # 1 | | 2.11b1 ---- | # 17 | | 3.12---- | # 4 |
| 1.3J ----- | # 13 | | 2.11b2----- | # 16 | | 3.16---- | # 14 |
| 1.3K ----- | # 11 | | 2.11c----- | # 2 | | 3.17----- | # 4 |
| 1.3L ----- | # 12 | | 2.11d------- | # 17 | | 3.18----- | # 11 |
| 1.3M----- | # 12 | | 2.12a----- | # 1 | | 3.20b----- | # 7 |
| 1.3N----- | # 1 & 2 | | 2.12b----- | # 18 | | 3.21----- | # 13 |
| 1.3O----- | # 13 | | 2.14a----- | # 1 | | 3.23---- | # 1 & 2 |
| 1.3p----- | # 13 | | 2.14b----- | # 6 | | 3.24---- | # 3 |
| 1.3q----- | # 12 | | 2.14c----- | # 14 | | 4.3b---- | # 3 |
| 1.3r----- | # 2 | | 2.14d----- | # 17 | | 4.3c---- | # 7 |
| 1.3s----- | # 13    1.3t----- # 2 | | 2.14g----- | # 6 | | 4.11----- | # 9 |
| 1.4----- | # 1 & 2    1.3u -- # 13 | | 2.14h----- | # 5 | | 4.13----- | # 2 |
| 1.4a----- | # 14 & 9 | | 2.15----- | # 17 | | 5.2----- | # 5 |
| 1.4b----- | # 15 | | 2.15a1---- | # 1 | | 5.2a---- | # 14 |
| 1.5----- | # 11 & 14 | | 2.15a2--- | # 17 | | 5.2b ---- | # 14 |
| 15a----- | # 1 & 2 | | 2.15a3---- | # 1 | | 5.3a---- | # 3 |
| 1.6a----- | # 11 | | 2.15a4---- | # 5 & 6 | | 5.3c----- | # 4 |
| 1.6c---- | # 11 # 17 | | 2.15a5--- | # 14 | | 5.4----- | # 1 |
| 2.3----- | # 1 & 11 | | 2.15a6--- | # 5 | | 5.7a----- | # 3 |
| 2.3a---- | # 2    2.3b---- # 17 | | 2.16----- | # 2 | | 5.12----- | # 3 |
| 2.4----- | # 2-9-18 | | 2.16a----- | # 11 | | 5.15 -a & b # 8 each | |
| 2.4a---- | # 18 | | 2.17 ---- | # 14 | | 5-18----- | # 3 |
| 2.5a---- | # 11-12-17 | | 2.19 ----- | # 6 | | 5.19----- | # 11-12-13-14-18 |
| 2.5b----- | 2 & 14 | | 2.20 -- # 3-& 17 | | | 6..4 ----- | # 11-14-15-17-18 |
| 2.7----- | # 14 | | 2.20a---- | # 1 8 | | | |
| 2.7a---- | # 16 | | | | | | |
| 2.8----- | # 2 | | | | | | |

*our home phone leave message cnt*

Complaint- 24
Redressed for trial

Clinton M. and Margaret L. Tullis PrOSe
16300-184th ave. S.E. Renton, WA 98058-0903
Phone & Fax: 425-226-7399 or ph. 205-713-4950

*Rashell: You have no right to contact the Judge for any reasons other than when you receive notice of Trial and are at the hearing. This letter not increase my problems prior to Jury Trial. You will be sent a notice when the time appear!*

*Clint Tullis*

Draw a diagram of the accident showing the direction of the vehicles and the point of accident. Show street names and location of street signs, stop signs, lights, etc.

**OTHER VEHICLE:**
☐ Stopped in traffic
☐ Moving
☐ Legally parked

Describe any other damage or pertinent information below:

W

N

S

E

exhibit #1

AAA
Washington
Approved Auto
Body Repair

**ACCIDENT RECORD**

# COLLISION CENTER

In case of an accident, be prepared with this handy record keeper.

PONTIAC · BUICK · GMC
Corlett
Campbell
PUYALLUP

**COMPLIMENTS OF:**
Kurt Johnson, Manager
Cornforth-Campbell Collision Center
Corner of East Pioneer & 2nd St. S.E.
in downtown Puyallup

**PHONE:**
(253) 848-7139

**HOURS:**
Monday-Friday 8 AM-5:15 PM

AAA
Washington
Approved Auto
Body Repair

*exhibit #A-1*
*# A-1*

## THE CONSTITUTION OF THE UNITED STATES

1. Amendment No. 5:
   No Person shall be held nor be deprived of life, Liberty, or property without due process of law; nor shall private property be taken for public use without just compensation.

2. AMENDMENT IX
   The enumeration of certain rights shall not be construed to deny or disparge others retained by the people.

3. AMENDMENT VII
   In all suits of common law, where the value in controversy shall exceed $20.00, the right of Jury shall be preserved. No fact tried by Jury shall be otherwise reexamined in any Court of the U.S., than according to the rules of common Law.

4. AMENDMENT XIV
   No state shall make or enforce any law which will abridge the privileges or immunities of citizens of the United States, nor shall any state deprive any person of life, liberty or property without due process of law; nor deny to any person within its jurisdiction, the equal protection of the laws.
   Section v: The congress shall have the power to enforce by appropriate legislation, the provisions of this Article.

NOTE:
   The first 10 Amendments (Bill of rights) were ratified, effective December 15, 1791
   The 14th Amendment was ratified July 9, 1868.

### WITH CONSTITUTIONAL PROTECTED PROPERTY RIGHTS:

1. The just compensation clause is self-actuating and a debt is owed.
   (a) Actions taken by Governmental Officials that result in a physical invasion or occupancy of private property, and regulations imposed on private property that substantially affect its value or use, may constitute a taking of property;
   P 3 of 4

   (b) Further, Governmental action may amount to a taking even though the action results in less than a complete deprivation of all use or value, or of all seperate and distinct interests in the same private property and even if the action constituting a taking is temporary in nature.

   (c) The just Compensation clause is self-actuating, requiring that compensation be paid whenever governmental action results in a taking of Private property, regardless of whether the underlying authority for the action contemplated a taking or authorized the payment of compensation.

   (d) Accordingly, governmental action that may have a significant impact on the use or value of Private property should be scrutinized to avoid undue or unplanned burdens on the public fisc. (Fisc=The Treasury of a political entity).

**FURTHER** FOR AN AFTER-THOUGHT: On December 10, 1948, The General Assembly of the United Nations adopted and proclaimed The Universal Declaration of Human Rights:
Article 17: (1) Everyone has the right to own property alone as well as in association

1

# PONTIAC · GMC · RECOMMENDED MAINTENANCE

CHECK 4 WHEEL ALIGNMENT - PRINTOUT PROVIDED, ADJUSTMENTS EXTRA COST ......... $ 66.00
    RECOMMENDED EVERY 15,000 MILES
REPLACE FRONT DISC BRAKE PADS - LABOR ONLY ......... $ 80.00
REPLACE REAR DISC BRAKE PADS - LABOR ONLY ......... $ 112.00
REPLACE REAR DRUM BRAKE SHOES - LABOR ONLY ......... $ 80.00
    ADD TO RESURFACE 2 ROTORS ......... $ 80.00
    ADD TO RESURFACE 2 DRUMS ......... $ 50.00
REPLACE FUEL FILTER - LABOR ONLY. RECOMMENDED EVERY 15,000 MILES. DIESEL EXTRA COST ... $ 40.00
CLEAN FUEL INJECTION SYSTEM. RECOMMENDED EVERY 24,000 MILES ......... $ 124.65
COOLING SYSTEM FLUSH: INCLUDES FLUSH, PRESSURE TEST, VISUALLY CHECK HOSES, CAP,
    AND CONNECTIONS, INSTALL FRESH COOLANT AND CORROSION CONTROL KIT.
    CARS ......... $ 99.95
    TRUCKS ......... $ 118.70
AUTOMATIC TRANSMISSION FLUSH - INCLUDES FLUSH OF COOLER, TORQUE CONVERTER, AND
    TRANSMISSION USING CLEANER TO REMOVE VARNISH AND SLUDGE.
    REPLACE WITH NEW FLUID AND CONDITIONER.  PARTS AND LABOR.
    FILTER REPLACEMENT EXTRA COST. RECOMMENDED EVERY 30,000 MILES
    CARS ......... $ 127.95
    TRUCKS ......... $ 139.95
POWER STEERING SYSTEM FLUSH ......... $ 92.75
AIR CONDITIONING SERVICE - INSPECT SYSTEM, CLEAN CONDENSER, CHECK OPERATION ......... $ 56.00
SUPERCHARGER SERVICE ......... $ 18.95

Prices Subject To Change • All Prices Are Plus Tax
Some Recommended Services May Exceed Manufacturers Requirements



Approved Auto Repair — AAA

GM Goodwrench

Approved AUTOMOTIVE TECHNICIAN — ASE CERTIFIED

**SERVICE HOURS**
MONDAY THROUGH FRIDAY
7:30A.M. TO 6:00P.M.
SATURDAY
8:00A.M. TO 4:00P.M.

PHONE (253) 845-8881
TOLL FREE 1-800-573-8881
www.cornforthcampbell.com
Email: service@cornforthcampbell.com

B' Exhibit # [handwritten]
AD 1/A

The agency complete and deliver
the must have prove was filed on the way
and delivered [handwritten notes]
the subject Vehicle -



PONTIAC  Fuel for the Soul

GMC

WE ARE PROFESSIONAL GRADE™

**RECOMMENDED MAINTENANCE SCHEDULE**

Cornforth Campbell
PONTIAC BUICK GMC
PUYALLUP

SERVICE EXCELLENCE SINCE 1938



Agency Location
400 VALLEY AVE. N.E.
PUYALLUP, WA 98372

Mailing Address
P.O. BOX 537
PUYALLUP , WA 98371-0172

PHONE (253) 845-8881
TOLL FREE 1-800-573-8881
www.cornforthcampbell.com
Email: service@cornforthcampbell.com



# CORNFORTH - CAMPBELL STRONGLY RECOMMENDS THE FOLLOWING MAINTENANCE SCHEDULE TO PROTECT YOUR VEHICLE INVESTMENT



Approved Auto Repair



ASE CERTIFIED
AUTOMOTIVE TECHNICIAN

## SERVICE # 1
EVERY 3,000 MILES

CHANGE ENGINE OIL AND FILTER
LUBRICATE CHASSIS
VISUALLY INSPECT VEHICLE INCLUDING TIRES,
   SHOCKS, EXHAUST, HOSES, BELTS AND LIGHTS
CHECK ALL FLUIDS
CLEAN ALL GLASS
VACUUM INTERIOR
INSPECT INTAKE AIR FILTER
INSPECT WIPER BLADES

## SERVICE #2
DUE @ 6,000/21,000/36,000/51,000/
66,000/81,000/99,000 MILES

CHANGE ENGINE OIL AND FILTER
LUBRICATE CHASSIS
INSPECT FRONT AND REAR BRAKE SYSTEMS
ROTATE TIRES
VISUALLY INSPECT VEHICLE INCLUDING TIRES,
   SHOCKS, EXHAUST, HOSES, BELTS AND LIGHTS
CHECK ALL FLUIDS
CLEAN ALL GLASS
VACUUM INTERIOR
INSPECT INTAKE AIR FILTER
INSPECT WIPER BLADES
CHECK COOLANT PH AND
   FREEZE PROTECTION

## SERVICE #3
DUE @ 15,000/45,000/
75,000/105,000 MILES

CHANGE ENGINE OIL AND FILTER
LUBRICATE CHASSIS
INSPECT FRONT AND REAR BRAKE SYSTEMS
ROTATE TIRES
CHECK 4 WHEEL ALIGNMENT
REPLACE FUEL FILTER
VISUALLY INSPECT VEHICLE INCLUDING TIRES,
   SHOCKS, EXHAUST, HOSES, BELTS AND LIGHTS
CHECK ALL FLUIDS
CLEAN ALL GLASS
VACUUM INTERIOR
INSPECT INTAKE AIR FILTER

## SERVICE #4
DUE @ 24,000/48,000/
72,000/96,000 MILES

CHANGE ENGINE OIL AND FILTER
LUBRICATE CHASSIS
SERVICE THROTTLE BODY
CLEAN FUEL INJECTION SYSTEM
LUBRICATE DOOR HINGES AND
   WEATHERSTRIPS
VISUALLY INSPECT VEHICLE INCLUDING TIRES,
   SHOCKS, EXHAUST, HOSES, BELTS AND LIGHTS
CHECK ALL FLUIDS
CLEAN ALL GLASS
VACUUM INTERIOR
INSPECT CABIN AND INTAKE AIR FILTER
INSPECT WIPER BLADES
CHECK COOLANT PH AND
   FREEZE PROTECTION

## SERVICE #5
DUE @ 30,000/60,000/90,000 MILES

CHANGE ENGINE OIL AND FILTER
LUBRICATE CHASSIS
INSPECT FRONT AND REAR BRAKE SYSTEMS
ROTATE TIRES
CHECK 4 WHEEL ALIGNMENT
REPLACE AIR FILTER
REPLACE FUEL FILTER
FLUSH AUTOMATIC TRANSMISSION AND
   REPLACE FLUID
REPLACE PCV VALVE
INSTALL FUEL SYSTEM CLEANER ADDITIVE
VISUALLY INSPECT VEHICLE INCLUDING TIRES,
   SHOCKS, EXHAUST, HOSES, BELTS AND LIGHTS
CHECK ALL FLUIDS
CLEAN ALL GLASS
VACUUM INTERIOR
* * * * * * * * * * *
REPLACE SPARK PLUGS - SOME MODELS
   @ 100,000 MILES ONLY - ADDT'L COST, ASK FOR QUOTE
REPLACE TRANSMISSION FILTER AS NEEDED,
   ADDT'L COST, ASK FOR QUOTE.
FLUSH AND REPLACE ENGINE COOLANT
   -SOME MODELS @ 100,000 MILES ONLY -
   ADDT'L COST, ASK FOR QUOTE.



GM GoodWrench

Some Recommended Services May Exceed Manufacturers Requirements

Shuttle Service Available

**We Accept**
**All Major**
**Credit Cards**

Service Hours
Monday Through Friday
7:30a.m. To 6:00p.m.
Saturday
8:00a.m. To 4:00p.m.

Phone (253) 845-8881
Toll Free 1-800-573-8881

www.cornforthcampbell.com
Email: service@cornforthcampbell.com

*exhibit p #1*

# CORNFORTH-CAMPBELL

  GMC

*# 1C*

## PUYALLUP

### "NICE IS BETTER"

...EY AVE. N.E. • P.O. BOX 537 • PUYALLUP, WASHINGTON 98372-2516
SALES/SERVICE/BODY SHOP (253) 845-8881

GM Parts

*this sloppy left front brake repair ex... of was performed by GMC mr hood wrench at Agency of Cornforth - Campbell*

| ADVISOR | | TAG NO | INVOICE DATE | | INVOICE NO |
|---|---|---|---|---|---|
| JOHN YUZAMAS | 25 | | | | PNCS19046 |
| | LICENSE NO | MILEAGE | COLOR | | STOCK NO. |
| | | 55622 | DK BLUE/ | | 03082A |
| YEAR / MAKE / MODEL | | | DELIVERY DATE | | DELIVERY MAY MILES |
| 99/GMC/SUBURBAN/SLT 4X4 K25 | | | 06/02/03 | | 53473 |
| VEHICLE I.D. NO. | | | SELLING DEALER NO | | PRODUCTION DATE |
| 3GKGK26J2XG532591 | | | | | |
| MBI NO. | | | R.O. DATE | | |
| | | | 07/02/03 | | |
| NE | COMMENTS | | | | |
| | | | | | MO: 55622 |

---

CUSTOMER CAN SEE BRAKES, PER RAY AND PADS
TECH(S):10     INTERNAL

---DESCRIPTION---
CALIPER A 4.665    •UNIT PRICE•    INTERNAL
CALIPER A 4.665             INTERNAL
PAD KIT 5.017             INTERNAL
         TOTAL - PARTS    0.00

JOB# 1 JOURNAL PREFIX PNCS JOB# 1 TOTAL    0.00

---
...ILITY    TECH(S):10    INTERNAL
CHECK ENGINE LIGHT IS ON AND RUNS ROUGH
D

JOB# 2 JOURNAL PREFIX PNCS JOB# 2 TOTAL    0.00

---
ODAY, YOU MAY RECEIVE A SURVEY
...ANSWERS AND THE RETURN OF THIS
...
...
...CONTENT/DAY ... INTERPRET
F YOU ARE UNABLE TO MARK THAT AREA
...TUNITY TO ADDRESS YOUR CONCERNS.
...RNFORTH-CAMPBELL MOTORS AS YOUR
BUSINESS!!!!!

| TOTAL LABOR | 0.00 |
|---|---|
| TOTAL PARTS | 0.00 |
| TOTAL SUBLET | 0.00 |
| TOTAL G.O.G. | 0.00 |
| TOTAL MISC CHG. | 0.00 |
| TOTAL MISC DISC | 0.00 |
| TOTAL TAX | 0.00 |
| TOTAL INVOICE $ | 0.00 |

*this repair job was sloppy & had to be replaced*

****** PRE-INVOICE ******

*this is the only adjusting or repairs performed by Cornforth - Campbell!*

*all the advertisements and correspondence to Plaintiff was absolutely perfect*

*the calipers ~~too~~ and pins needed replacing, were extremely bad.*

CUSTOMER COPY        [ END OF INVOICE ]

---

### YOUR SATISFACTION IS OUR GOAL

Thank you for this opportunity to serve you. It is our goal to perform all repairs requested on this repair order to your complete satisfaction.

If our service was satisfactory tell your friends; if not, please tell us immediately. All claims for adjustment must be accompanied by this invoice within 90 days or 4,000 miles, whichever comes first.

### DISCLAIMER OF WARRANTIES

Any warranties on the product sold hereby are those made by the manufacturer. The seller hereby expressly disclaims all warranties, either express or implied, including any implied warranty of merchantability or fitness for a particular purpose, and the seller neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products. Any limitation contained herein does not apply where prohibited by law.

The information contained on the estimate, worksheet and/or repair order is incorporated herein by reference.

\*SUPPLIES—A token charge equivalent to 7% of the labor charge on mechanical repairs is included for supplies used on your vehicle. Maximum charge is $25.00. Example supply items are nuts, bolts, washers, tape, solvent, towels, cleaners, solder, wire, sealers, etc.

### TERMS

No returns on electrical or special ordered items. No returns after 24 hours or without this invoice. A 20% handling charge will be applied on all merchandise returned for credit. Items purchased by check require 10 working days before refund will be issued.

## *Thank You*

04:31pm



SELLING DEALER NO.    PRODUCTION DATE
MBI NO.
3GKGK26J2XG6S...
R.O. DATE
07/02/03

COMMENTS

MO: 55622

**YOUR SATISFACTION IS OUR GOAL**
Thank you for this opportunity to serve you. It is our goal to perform all repairs requested on this repair order to your complete satisfaction.
If our service was satisfactory tell your friends; if not, please tell us immediately. All claims for adjustment must be accompanied by this invoice within 90 days or 4,000 miles, whichever comes first.

CUSTOMER CAN SEE BRAKES, PER RAY    TECH(S) 10    INTERNAL
AND PADS

DESCRIPTION    UNIT PRICE
CALIPER A 4.86P    INTERNAL
           4.86P    INTERNAL
PAD KIT 5.017    INTERNAL
TOTAL - PARTS    0.00

**DISCLAIMER OF WARRANTIES**

**TERMS**

Thank You

04:31pm

[ handwritten notes ]

*the comp to campbell the caliper ... oscillating of the left front Pad chewed heavily into the rotor. our vehicle was not safe to be on the road none of the brakes front or rear were capable of any emergency stopping until Plaintiff did the total job. over. this labor & improper installation of the front brakes would prepare customers for a date to this portion of their company*

CUSTOMER COPY    [ END OF INVOICE ]

# NFORTH-CAMPBELL MOTORS

### Contact Information For Your Next Visit

Collision Center

Ray Rossman
Parts & Service Director

Collision Center
Corner of Pioneer and 2nd St SE
Downtown Puyallup

Kurt Johnson
Manager

...day Service"

Service Hours
Monday - Friday
7:30 am to 6:00 pm
Saturday
8:00 am to 4:00 pm

...bell.com

Direct Phone
(253) 848-7139

Hours
Monday - Friday
8:00am to 5:15pm



400 Valley Ave. NE
P.O. Box 537
Puyallup, WA 98371

Forwarding Service
Requested



*Sept. 30 — 03*

*exhibit #*

## SERVICE REMINDER

OUR COMPUTER SERVICE RECORD SUGGESTS THAT
YOUR VEHICLE IS DUE FOR **ROUTINE MAINTENANCE.**
PLEASE CHECK YOUR MAINTENANCE LOG AND CONTACT US.

### *"You Are A Valued Customer."*

PLEASE CALL US BY 10/07/03
PHONE (253)845-8881 OR TOLL FREE 1-800-573-8881

RE. 99 GMC SUBURBAN
#3GKGK26J2XG532591                CLINTON TULLIS
                                 16300 184TH AVE SE
*1 month after warranty*          RENTON,WA 98058-0903
           *expired*

*P #6*

*exhibit # 2-A*
*2 pages*

# LIMITED WARRANTY

Dealer sells to purchaser the motor vehicle identified below subject to the terms and conditions of the Limited Warranty as outlined.

| PURCHASER (Buyer) | SELLER (Dealer) | VEHICLE IDENTIFICATION |
|---|---|---|
| Name CLINTON M TULLIS | Name CORNFORTH-CAMPBELL MOTORS INC | Year 1999 |
| Address 16300 164TH AVE SE | Address 400 VALLEY AVE. NE. POB 53 | Make GMC |
| City RENTON | City PUYALLUP | Model SUBURBAN 4X4 |
| State WA | State WA | IDN 3GKGK26J2XG532591 |
| Phone (425)226-7399 | Phone (253)845-8881 | |

Date of Vehicle Delivery: 2nd JUNE          2003   Odometer Reading: _____ 53473 _____ Miles

Date of Sale: 6-2-03

## TERMS OF THIS LIMITED WARRANTY

**A.** **TO WHOM IS THIS WARRANTY ISSUED?** The dealer offers and extends this limited warranty on mechanical defects on the components and parts described in Section B below to the original purchaser only and applies only with respect to the motor vehicle described hereon and it cannot be transferred to any other person during the duration of the limited warranty.

**B.** **WHAT PARTS OF THE VEHICLE ARE COVERED BY THE LIMITED WARRANTY?** The Coverage of this warranty shall be limited to the covered components and parts thereof as checked below:

**ENGINE GROUP**
- Engine Block
- Cylinder Heads & Assemblies
- Internal Engine Components
- Engine Thermostat ⟶ *Bad*
- Manifold & Gaskets (Intake & Exhaust)
- Water Pump
- Crankshaft Pulley
- Flywheel
- Vibration Damper
- Engine Mounts
- Oil Pump

**TRANSMISSION GROUP**
- Drive Shaft
- Universal Joints
- Transmission Oil Cooler
- Transmission & all internal transmission
- parts except manual transmission clutch assembly
- All Gaskets & Seals

**DIFFERENTIAL GROUP**
- Differential Housing & Internal Parts
- Drive Axles
- Wheel Bearings
- Gaskets & Seals

**FUEL SYSTEM GROUP**
- Carburetor
- Fuel Pump
- Fuel Gauge (Tank)
- Emission Control System

**EXHAUST SYSTEM GROUP**
- Muffler
- Exhaust Pipe
- Tail Pipe

**STEERING GROUP**
- Steering Gear
- Power Steering Pump & Valve
- Steering Linkage
- Hoses & Fittings

**BRAKE GROUP** *all Bad*
- Master Cylinder
- Power Brake Cylinder
- Brake Calipers
- Wheel Cylinder
- Rotors
- Brake Drums
- Parking Brake-except brake shoes or lining

**SUSPENSION GROUP**
- Front Suspension & Shocks
- Rear Suspension & Shocks
- Front Wheel Bearings & Seals

**ELECTRICAL GROUP**
- Battery ⟶ *Bad*
- Generator or Alternator
- Starter Motor
- Voltage Regulator
- Windshield Wiper Motor
- Heater Motor
- Distributor
- Light Assemblies-except bulbs
- Turn Signal Switch
- Horn
- Head Lamp Switch
- Drive Belts
- Instrument Panel Gauges

**COOLING SYSTEM GROUP** *Bad*
- Radiator *bad radiator cap*
- Radiator Hoses *& thermostat*

**OTHER**
_____
_____

**Express Statement of Exclusion:**
ALL COMPONENTS AND PARTS NOT SPECIFICALLY CHECKED ABOVE ARE NOT COVERED BY THIS LIMITED WARRANTY.
Any part of the vehicle otherwise covered by this Limited Warranty which has been subjected to misuse, negligence, alteration or accident is not covered by this Limited Warranty.

**C.** **WHAT PERCENTAGE OF REPAIR CHARGES ARE COVERED?** This limited warranty covers _____ % of parts and _____ % of labor for repairs under section B above.

**D.** **HOW LONG DOES LIMITED WARRANTY RUN?** This limited warranty begins on the date of delivery and extends for ___ days or _____ miles beyond odometer reading stated above, whichever comes first.

**E.** **WHAT ARE THE VEHICLE OWNER'S OBLIGATIONS?** In the event of a mechanical defect, the purchaser should return the described vehicle to the above dealer. If you are not able to return to said dealer, call the dealer at the above telephone number, without charge, and you will receive advice as to the proper procedure. Purchaser must authorize and pay the applicable percentage due, plus state and local taxes, on each covered repair under Section B above in cash. If the purchaser is dissatisfied because he feels the dealer has failed to conform to this warranty, he should contact:

XXXXXX

_____ Phone No. (___) _____
(Dealer or personal representative)

at CORNFORTH-CAMPBELL MOTORS INC          (253)845-8881
(print dealer name and address)

**F.** **WHAT IS THE SELLING DEALER'S OBLIGATION?** The obligation of the seller issuing this warranty is expressly limited to replacement or repair of the defective part or parts at his place of business, and does not include bills contracted by the purchaser elsewhere, or towing charges. This warranty must be presented by the purchaser with any claim.

**G.** **LIMITATION ON IMPLIED WARRANTIES, CONSEQUENTIAL AND INCIDENTAL DAMAGES.**
ALL IMPLIED WARRANTIES, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HERBY LIMITED TO THE SAME DURATION OF TIME AS THE LIMITED WARRANTY ABOVE STATED. SOME STATES DO NOT ALLOW

A.    TO WHOM AND HOW LONG DOES... The dealer offers and extends this limited warranty on mechanical defects on the components and parts described in Section B below to the original purchaser only and applies only with respect to the motor vehicle described hereon and it cannot be transferred to any other person during the duration of the limited warranty.

B.    **WHAT PARTS OF THE VEHICLE ARE COVERED BY THE LIMITED WARRANTY?** The Coverage of this warranty shall be limited to the covered components and parts thereof as checked below:

**ENGINE GROUP**
- Engine Block
- Cylinder Heads & Assemblies
- Internal Engine Components
- Engine Thermostat → *Bad*
- Manifold & Gaskets (Intake & Exhaust)
- Water Pump
- Crankshaft Pulley
- Flywheel
- Vibration Damper
- Engine Mounts
- Oil Pump

**TRANSMISSION GROUP**
- Drive Shaft
- Universal Joints
- Transmission Oil Cooler
- Transmission & all internal transmission parts except manual transmission clutch assembly
- All Gaskets & Seals

**DIFFERENTIAL GROUP**
- Differential Housing & Internal Parts
- Drive Axles
- Wheel Bearings
- Gaskets & Seals

**FUEL SYSTEM GROUP**
- Carburetor
- Fuel Pump
- Fuel Gauge (Tank)
- Emission Control System

**EXHAUST SYSTEM GROUP**
- Muffler
- Exhaust Pipe
- Tail Pipe

**STEERING GROUP**
- Steering Gear
- Power Steering Pump & Valve
- Steering Linkage
- Hoses & Fittings

**BRAKE GROUP**  *all Bad*
- Master Cylinder
- Power Brake Cylinder
- Brake Calipers
- Wheel Cylinder
- Rotors
- Brake Drums
- Parking Brake-except brake shoes or lining

**SUSPENSION GROUP**
- Front Suspension & Shocks
- Rear Suspension & Shocks
- Front Wheel Bearings & Seals

**ELECTRICAL GROUP**
- Battery  *Bad*
- Generator or Alternator
- Starter Motor
- Voltage Regulator
- Windshield Wiper Motor
- Heater Motor
- Distributor
- Light Assemblies-except bulbs
- Turn Signal Switch
- Horn
- Head Lamp Switch
- Drive Belts
- Instrument Panel Gauges

**COOLING SYSTEM GROUP**  *Bad*
- Radiator  *Bad   radiator cap*
- Radiator Hoses  *& thermostat*

**OTHER**
_____
_____
_____

**Express Statement of Exclusion:**
**ALL COMPONENTS AND PARTS NOT SPECIFICALLY CHECKED ABOVE ARE NOT COVERED BY THIS LIMITED WARRANTY.**
Any part of the vehicle otherwise covered by this Limited Warranty which has been subjected to misuse, negligence, alteration or accident is not covered by this Limited Warranty.

C.    **WHAT PERCENTAGE OF REPAIR CHARGES ARE COVERED?** This limited warranty covers _____ % of parts and _____ % of labor for repairs under section B above.

D.    **HOW LONG DOES LIMITED WARRANTY RUN?** This limited warranty begins on the date of delivery and extends for ____ day 90 or _____ miles beyond odometer reading stated above, whichever comes first.

E.    **WHAT ARE THE VEHICLE OWNER'S OBLIGATIONS?** In the event of a mechanical defect, the purchaser should return the described vehicle to the above dealer. If you are not able to return to said dealer, call the dealer at the above telephone number, without charge, and you will receive advice as to the proper procedure. Purchaser must authorize and pay the applicable percentage due, plus state and local taxes, on each covered repair under Section B above in cash. If the purchaser is dissatisfied because he feels the dealer has failed to conform to this warranty, he should contact:

_____    Phone No. ( )_____
(Dealer or personal representative)

at the above dealer's address
CORINTH CAR & DEEL MOTORS INC                    (253)845-8881

F.    **WHAT IS THE SELLING DEALER'S OBLIGATION?** The obligation of the seller issuing this warranty is expressly limited to replacement or repair of the defective part or parts at his place of business, and does not include bills contracted by the purchaser elsewhere, or towing charges. This warranty must be presented by the purchaser with any claim.

G.    **LIMITATION ON IMPLIED WARRANTIES, CONSEQUENTIAL AND INCIDENTAL DAMAGES.**
ALL IMPLIED WARRANTIES, INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE HERBY LIMITED TO THE SAME DURATION OF TIME AS THE LIMITED WARRANTY ABOVE STATED. SOME STATES DO NOT ALLOW LIMITATIONS ON HOW LONG AN IMPLIED WARRANTY LASTS, SO THE ABOVE LIMITATION MAY NOT APPLY TO YOU. PURCHASER SHALL NOT BE ENTITLED TO RECOVER FROM THE SELLING DEALER ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFITS, OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES. SOME STATES DO NOT ALLOW THE EXCLUSION OR LIMITATION OF INCIDENTAL OR CONSEQUENTIAL DAMAGES, SO THE ABOVE LIMITATION OR EXCLUSION MAY NOT APPLY TO YOU.

H.    **PURCHASER'S LEGAL RIGHTS.**
This warranty gives you specific legal rights, and you may also have other rights which vary from state to state. No action arising out of this warranty may be brought by the purchaser more than _____ year(s) after the cause of action arises. (Not less than one year, nor more than four years.)

There is no other express agreement between the dealer and the purchaser.

Purchaser acknowledges that he has read, understands and accepts all of the provisions of this limited warranty covering the motor vehicle described above.

Date: _____
BUYER'S SIGNATURE  *JUNE  _____  2003*
CO-BUYER'S SIGNATURE: *Margaret _____*      WITNESS: _____
DEALER'S SIGNATURE: _____    WITNESS: _____
                    (Not valid unless signed by dealer or his authorized representative.)

WSADA Form #5
This Form is Property of WSADA and is Not to be Reproduced or Copied.  Copyright Pending                    Revised 11/00



# "Nice Is Better"





cornforthcampbell.com          800-573-8881

## 1999 GMC Suburban 2500 SLT Suv 4WD
### 7.4 Liter V-8 Throttle Body Inj.

| | |
|---|---|
| Mileage : 53,447 | Transmission : Automatic |
| Color : Blue | V.I.N. : 3GKGK26J2XG532591 |
| Stock # : 03082A | |

## Quality Pre-Owned Vehicle

**This Vehicle Has Passed A Rigid Inspection**

**Has Been Reconditioned To The Highest Standards**

**Extended Service Agreement May Be Available**

**Credit Problems?**

**We Are Partners With Many Financing Institutions To Help Get You On The Road!**

### COMFORT EQUIPMENT AND ACCESSORIES

Power Steering
Power Door Locks
Power Driver's Seat
Cassette Player
Cd Player
Front Bucket Seats
Lumbar Seat Supports
Gauge Cluster
Tachometer
Tilt Steering Wheel
Tinted Glass
Dual Power Mirrors
Rear Air Condition Or Ctl.
Beverage Holder

Power Brakes
Power Windows
AM/FM Stereo Radio
Premium Sound System
Leatherette Or Leather Trim
Reclining Seats
Center Storage Console
Trip Odometer
Air Conditioning
Cruise Control
Power Access Outlet
Trip Computer Or Compass
Overhead Console
Running Boards

### OTHER ACCESSORIES

Fold Down Rear Seat
Rear Defroster
Remote Trunk Lid
Anti-lock Braking System
Ball Or Receiver Hitch
Fender Flares
Premium Wheels

Interval Wipers
Rear Window Wiper
Dual Air Bags
Roof Rack-luggage Rack
Side Molding
Radial Tires
Step Bumper

**Please Ask Your Sales Consultant For More Information on Pricing, Financing, and Trade-Ins**

**"Media Reviews" - Comments about this vehicle...** It holds the most & offers the most brute force. [Consumer Review] The Suburban is still the cowboy limousine [Car & Driver]

### Blue Book: $24,820

# Cornforth Campbell: $20,995

ATTENTION BUYERS: VERIFY ALL EQUIPMENT & ACCESSORIES PRIOR TO SALE.
Dealer Specialties COS disclaims any warranty as to the accuracy or to the working condition of the equipment listed above.
Any purchaser or prospective purchaser should independently verify with a salesperson of the dealership listed above the
accuracy of all listed information provided on this label. Price does not include state & local taxes, licence & title fees, doc
fee or finance charges, if any.  Dealer Specialties COS (800) 647-2422

#184232 Copyright © 1996 - Dealer Specialties, Inc.-All Rights Reserved

11

*This perjury is the worst I have ever heard of. & when you corelate it to facts.*

P 2 Ad
#



DEAL # 10801

# CORNFORTH-CAMPBELL
MOTORS, INC.

X6532591

PHONE: 425-226-1399

# DUE BILL

## WORK PROMISED TO BE PERFORMED AT TIME OF SALE

| 06/02/03 | 1995 GMC SUBURB | CLINTON M TULLIS | KEN NIELSEN | 030B2A |

## PRESENT THIS ORDER WHEN WORK IS TO BE COMPLETED

1. TRAILER BRAKE (Included)
2.
3. INSTA
4.
5.
6.
7.

I HEREBY ACCEPT THIS DUE BILL WITH THE UNDERSTANDING THAT IT IS VALID FOR ONLY (30) THIRTY DAYS FROM DATE OF ISSUANCE.

NOTE: THE ABOVE PROMISED WORK IS THE ONLY WORK TO BE PERFORMED FREE OF CHARGE. ANY ADDITIONAL WORK WILL BE CHARGED FOR IN ACCORDANCE WITH THE TYPE OF WARRANTY ISSUED AT TIME OF SALE, AND WILL BE CASH ON DELIVERY. ALL WORK MUST BE DONE IN OUR SHOP, AND YOU MUST MAKE AN ADVANCE APPOINTMENT WITH THE SERVICE DEPARTMENT BEFORE THE ABOVE WORK CAN BE PERFORMED.

Signed: Sales Mgr. X                    Signed: Customer X  Clinton M Tullis

## DUE TO INSURANCE REGULATIONS — NO LOAN CARS AVAILABLE

Form # 2045

*ex hibit 2 of 3*

# BUYERS GUIDE

IMPORTANT: Spoken promises are difficult to enforce. Ask the dealer to put all promises in writing. Keep this form.

| GMC | Suburban 2500 SLT | 1999 | 3GKGK26J2XG532591 |
|---|---|---|---|
| VEHICLE MAKE | MODEL | YEAR | VIN NUMBER |

03082A                                                    03134
DEALER STOCK NUMBER (OPTIONAL)

**WARRANTIES FOR THIS VEHICLE:**

## ☐ AS IS-NO WARRANTY

**YOU WILL PAY ALL COSTS FOR ANY REPAIRS.** The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle.

## ☑ WARRANTY

☐ FULL ☑ LIMITED WARRANTY. The dealer will pay __100*__ % of the labor and __100*__ % of the parts for the covered systems that fail during the warranty period. Ask the dealer for a copy of the warranty document for a full explanation of warranty coverage, exclusions, and the dealer's repair obligations. Under state law, "implied warranties" may give you even more rights.

**SYSTEMS COVERED:**                                      **DURATION:**
                                          60 Days or 2,000 Miles

### Systems Covered:

**ENGINE - TRANSMISSION - DRIVESHAFT
DIFFERENTIAL - TRANSAXLE - IF SO EQUIPPED
SUSPENSION - COOLING - ELECTRICAL - BRAKES
STEERING - FUEL AND EXHAUST**

CAMPBELL MOTORS, INC.

P.O. BOX 51
MISSOULA, MONTANA



☑ **SERVICE CONTRACT.** A service contract is available at an extra charge on this vehicle. Ask for details as to coverage, deductible, price, and exclusions. If you buy a service contract within 90 days of the time of sale, state law "implied warranties" may give you additional rights.

**PRE PURCHASE INSPECTION: ASK THE DEALER IF YOU MAY HAVE THIS VEHICLE INSPECTED BY YOUR MECHANIC EITHER ON OR OFF THE LOT.**

**SEE THE BACK OF THIS FORM** for important additional information, including a list of some major defects that may occur in used motor vehicles.

## More responsive controls

Advances in technology have created improved electronic trailer braking systems. They are inertia-activated devices that deliver power to trailer brakes in direct proportion to the actual, physical deceleration of a tow vehicle. As the driver depresses the brake pedal, an adjustable motion detector inside the unit measures the change in speed. When properly set they send a proportional electrical signal to the trailer's brakes, which respond with just the right amount of braking force. The trailer decelerates smoothly at the same speed as the tow vehicle.

*(See chart 2 opposite)*

Properly adjusted proportional controls maximize brake efficiency and minimize brake wear. Stopping is much smoother, too. Notice how inertia-activated devices gradually reduce power after the initial onset of the braking event. Proportional controls normally prevent over-braking as the need for deceleration ends and the stop is nearly complete.



(6.)



**Chart 2**

*full response in less than 1 second*
*total stop in less than 88 ft.*

PERCENT PRESET POWER TO TRAILER BRAKES

100 · 75 · 50 · 25 · 0

TIME (SECONDS)   0 1 2 3 4 5 6 7

*inertia activated proportional control*

*Proportional braking power builds quickly and then gradually tapers off as the system responds to changes in tow vehicle's speed.*

9

this type of trailer brake control was absolutely the only catagory considered by Recreational Vehicle Sales People in the several years preceding Plaintiffs Dilemma.

exhibit #3
P-1 of 3



stopping under control

## Some things are constant.

All types of trailer brake controls require the user to "tell" them "what" and "the condition of" the trailer brakes they will actuate during a stopping event. This is typically achieved by:

- Towing the trailer over a level surface between 25-30 MPH.

- The driver then independently actuates the trailer brakes using (squeezing) a manual override lever normally located on the front of the control.

- With the override fully engaged the driver is instructed to increase the power output of the brake control to a point "just before trailer wheel lock-up". This process is designed to set the control for maximum power delivery without losing control of the trailer during stops.

②

A. Power Knob

B. Manual Slide Knob

C. Bi-Colored Light

D. Level Knob

A. Power Knob

B. Manual Slide Knob

C. Bi-Colored Light

*timed
accuated
brake contr
no good
in emergence*



Example of a Proportional Brake Control

Example of a Time Accuated Brake Control

*No! good*

*known to
quit in
1- to 3 seconds
of emergency
use.*



400 Valley Ave. NE
P.O. Box 537
Puyallup, WA 98371

Forwarding Service
Requested

*Sept. 30 — 03*
*exhibit #4*

## SERVICE REMINDER

OUR COMPUTER SERVICE RECORD SUGGESTS THAT
YOUR VEHICLE IS DUE FOR **ROUTINE MAINTENANCE.**
PLEASE CHECK YOUR MAINTENANCE LOG AND CONTACT US.

### *"You Are A Valued Customer."*

PLEASE CALL US BY 10/07/03
PHONE (253)845-8881 OR TOLL FREE 1-800-573-8881

RE. 99 GMC SUBURBAN
#3GKGK26J2XG532591

*1 month after warranty expired*

CLINTON TULLIS
16300 184TH AVE SE
RENTON, WA 98058-0903









**400 Valley Ave. NE, Puyallup**

SERVICE HOURS
MONDAY THROUGH FRIDAY
7:30 A.M. TO 6:00 P.M.
SATURDAY
8:00 A.M. TO 4:00 P.M.

PHONE (253) 845-8881
TOLL FREE 1-800-573-8881

www.cornforthcampbell.com
Email: service@cornforthcampbell.com

**Collision Center Direct Phone**
(253) 848-7139

Where Nice is Better



Approved
Auto Repair





EXHIBIT No 7

We had purchased our GM Suburban in ~~May~~ *June* of 2003 at Cornforth-Campbell Buick and GM in Puyallup, Wa.
One of the conditions of Purchase was that the Suburban would be equipped to supply the towing and
braking essential for a 30 foot Wilderness Trailer that weighed 7000 pounds before loading.
WE WERE THEN PROMISED THAT CORNFORTH-CAMPBELL WOULD FURNISH US THE BOOK
ON USE AND MAINTENANCE OF THE SUBURBAN AND ON THE EQUIPMENT ATTACHED.

The salesman showed me the newly mounted Trailer Electric Control and told me that I only needed to slide
the "side switch forward or back" to get expected response on the brakes. This was the way to feel if the
trailer would pull back on the suburban without applying the Suburbans brakes. You should then slide the
switch in the opposite direction to barely release the pull back and that would give you full breakage when the
Suburbans brakes were applied. Also, to check the trailer brakes activating after making the above
adjustment.
We were advised to "slide the activator located on the front of the control", back and forth and it would indicate
the ability of the trailer to assist in stopping. This was occasionally performed and we were confident of the
trailer controlling its own weight in stopping

[Prior to going on vacation to Oregons Southwest "Coast city" of Bandon, Oregon. Upon returning
from a three day trip to Spokane, Washington, to a granddaughters graduation at Eastern
Washington University; I pulled the wheels off of the trailer to make certain the lining and
electric brakes were in good condition. and repacked the wheel bearings. I then adjusted
the brakes to the recommendations of our trailer manual. The brakes linings and electric
activators were in excellent condition as prescribed by the manual.]
RECEIPT OF THE PROMISED MANUAL ON THE ACTIVATOR WOULD HAVE AVOIDED
PLAINTIFFS ACCIDENT AS PLAINTIFFS WOULD HAVE IMMEDIATELY REPLACED IT.
The Timed Activator is not actively comparable to Inertia-activator
with proportional sensors which take less than one-second to deliver
100%(one -hundred percent)of their full stopping power.
*Inertia activator more commonly known as a differentiator*
I made four trips to Cornforth-Campbell to pick up the owners manuals and never was afforded one ~~of~~
which they continued to ignore as they also ignored maintenance to be provided to the Suburban under
the warranty. The battery went dead, the starter failed, the headlights needed and received replacement.
the lighting system had a loose wire at the battery terminal of which I completely soldered together. I
cured the radiator water flow which caused overheating of the engine  and I completely repaired the braking
system as was recommended by the new Chilton"Mechanics Manual" of which I purchased from an Auto
Parts store. The Suburban brakes had been pulling to the left when traveling on wet pavement.
The improved Suburban Brakes were excellent. The Trailer Brakes were excellent. It was the trailer control
that malfunctioned.

Unknown to us; the "Trailer Brake Control" newly installed by Cornforth-Campbell was not used by
most, if any RV installers; as Tacoma RV explained to us on the third trip we made to contact them
after the accident; Stated that Tacoma RV had not installed that type in years. They then gave us a
book on the different types that are available.
The book then explained that the type of control on our vehicle, could completely malfunction and fail
under heavy application in an emergency situation and that the digital controls or even a partial digital
control was essential on Recreational trailers.

Respectfully.

Clinton M. Tullis ProSe
16300-18th ave. S.E.
Renton, Wa. 98058-0903
Phone and Fax (425) 226-7399
Cellular (206) 713-950

*Clinton M. Tullis*

For Lewis County Court
On The Traffic Collision.
Where Plaintiffs:(Then Defendants)
Were Exonerated and dismissed.

P 1 of 2

Clinton M. and Margaret L Tullis ProSe
16300-184th ave. S.E. Renton, Wa. 98058
phone: 425-226-7399 or 206-713-4950

EXHIBIT No. 7

On July 18, 2004

At about 12 Noon, We drove through Portland Oregons heavy traffic at "a Miles per hour" initiated by others ahead of us. Even though, there was constant vehicles coming onto the Main North-South freeway, and occasionally a vehicle leaving the North South freeway onto a Portland residential or commercial area; There was never a vehicle that attempted to recklessly enter the lane in which we were traveling; which mostly "always is the right lane.

Upon entering Washington, We stopped in North Vancouver, Washington and loaded our forty gallon tank with gasoline. We then entered back onto Interstate 5, and proceeded North towards our home and destination. All traffic was very courteous and well respected by all trafficers; including us. On the hill, going North from Kelso. There was a Truck and Trailer that was heavily loaded and was traveling up the grade at about 45 Miles per hour. We followed him until reaching the top of the hill and then elected to pass the Truck and then pull back into the right lane to proceed to our destination.

Many a vehicle passed us and then pulled into the right lane or proceeded North in the left lane, whichever supplied their need or desire. We continued in the right Lane at whatever speed the vehicles in front of us were running, keeping from one hundred to one hundred seventy five feet behind. All of a sudden, The faster vehicles from the left lane cut in front of us to take advantage of the free space between our vehicle and the vehicle we were following; To then speed ahead and then cut back into the left lane to continue their traveling. We would drop back to assure a safer distance and then move up when the vehicles turned back into the left lane.

In the meantime, there was a large rig that sped past us and turned into the right lane ahead of us. When the traffic allowed, I pulled into the left lane and passed the big rig (truck and trailer) and then after passing several vehicles, when clear, I pulled back into the right lane to continue, holding my distance behind the vehicles in front of me.

At the Chehalis "North bound" turn off; A speeding vehicle cut about (5) five feet in front of me from the left lane, at about a 45 degree angle and onto the Chehalis turn-off. Then as we arrived at the Chehalis "North bound" on ramp, (2) two vehicles (one behind the other, cut in just in front of me. The second vehicle did not clear me more than 3 to.5 feet and entered into the left lane, totally ignoring the dangerous maneuver.

Knowing that at Centrailia, We would be confronted by the same type of road access possibly under llike conditions to and from I-5, I determined that it may be safer to travel in the left lane until we cleared the area. I reasoned that it was after one O'Clock and Travelers may be going to, or returning to the freeway from and for lunch. Residents from the area would more than likely avoid the dangerous maneuvers that we had been subjected to. We continued in the left lane, keeping a distance of 150 to 175 feet behind the vehicles in front of us.

Just outside of Centrailia, I seen a vehicle suddenly pull left at about a 45 degree angle towards the concrete barrier and immediately applied the brakes; gradual at first; then realizing the road WAS BLOCKED, I applied full force on the brakes. I and Margaret both felt very comfortable about the distance between us and the stopped vehicles, being ample to completely control the stopping of our vehicle.

At this point, to my surprise, the trailer brakes did not appear to assist at all. I reached down and slid the trailer control to the full braking position and the control did not respond. Regardless, It seemed that we were slowing rapidly enough that we would not impact the vehicles in front of us but as it turned out, the trailer brakes not responding; overpowered us.

Unknown to us; We did not have enough weight for the Suburban to be able to completely, immediately stop; with only the Suburban Brakes. A Condition we could have easily remedied if we had known we had a trailer without brakes; by Loading three or four bags of sand; or we could have loaded all of our tools and equipment in the back of the Suburban instead of the convenience of the trailer compartments. Every day we towed the trailer, we would check the trailer brakes to make certain, the control was functioning.

P 2 of 2

Clinton M. and Margaret L Tullis ProSe
16300-184th ave. S.E. Renton, Wa. 98058
phone: 425-226-7399 or 206-713-4950

*exhibit #9*

**cornworth-campbell**

400 Valley Avenue N.E
P.O. Box 537
Puyallup, Wa. 98371

1-800-573-8881
Fax 253-845-6084

April 03, 2003

1
2   Mr. Rob Campbell,
3   Sales Manager
4   Dear Sir,
5        In regard to your recent letter of inquiry:
6   No. 1.  Mr. Ken Neilson was informed that the vehicle had all new brakes, of which was relayed
7        to us to influence purchase.
8        This was not so and after many complaints as to problems with the braking being uneven
9   (pulling to the left), and Service taking the attitude that I didn't know what I was talking about;
    *First trip to Idaho;   second trip to — — — Spokane, WA;*
10       We took our second trip of pulling our trailer and went to ~~Spokane, WA~~. On the trip, I
11  was forced to make a hard stop and the vehicle pulled so hard to the left that I had to make a
    quick release and reapply the brakes to keep the vehicle from jack-knifing, while really holding
12  the steering to the right, to control.
13       **This happened twice in heavy traffic.**
14       I thought the trailer might be the problem, so when I got to where I could test the system, I
    disconnected the trailer  system and then at 60 mph, I applied the brakes hard and the Suburban
15  again pitched hard left. I had thought it might be the trailers fault; but now know; it was the
    improper balance of the Suburbans braking system.My son in law pulled our trailer three
16  different years to the Southwest Oregon Coast FOR US, with his FORD PICKUP and never had
    any trouble handling it. THIS SUBURBAN IS PLENTY HEAVY AND HAS AMPLE POWER
17  TO HANDLE THE TRAILER. The problem we had should be rectified by Cornforth-Campbell.
18       I had felt the suburbans slightly, braking to the left; and complained to your Service
19  department. Each time the manager tried it out, he failed to find it was a problem. Three times, I
20  complained about the left brake, and was denied three times.
21       The first time, I complained about the vehicle pulling strongly to the right;  your service
    found that the front disk brakes were not GM factory built and the right brake was changed to
22  compensate. The left brake remains lousy or maybe it is the rear brakes.
23       I inquired about this to your mechanic and your shop manager; and was informed that
24  *P-1 —of 6*
25

COMPLAINT

Clinton M. and Margaret L Tullis ProSe
16300-184th ave. S.E. Renton, Wa. 98058
phone: 425-226-7399 or 206-713-4950

there remained about a quarter inch of lining on the rear brakes and it was a heck of a job to change the rear brakes, which should not be my problem when the vehicle was supposed to have new brakes, when we purchasesd it. **I have also had to add brake fluid twice.** *I also found it was an easy matter to remove wheels and repair front & rear brakes.*

I had also complained about the headlights being too dim, The vehicl;e was supposed to be on warranty and all of the problems should have been resolved for safetys sake.

After denying the lights were not adequate and stating that some of the new vehicles were the same way; I went to a parts dealer in Edgewood and purchased two new light bulbs. This improved the lighting considerably. However, The right front lens distorts the beam and should be replaced. The light splits and throws off to the right The vehicle was supposed to be like new. "God Forbid".

We also had a problem with the vehicle overheating on our first trip, which was to S.W. Idaho. This was answered twice, with a sales comment from your Service Department, that the vehicle was supposed to run hot. B.S.; I put in a new Thermostat and only had the vehicle heat exceed 180 degrees once and this was when arriving home from Oregon and backing the trailer into our yard 2 weeks ago. I now realize this was because of a defective Radiater Cap of which I will replace today.

Also, The fourth time I brought the vehicle to your shop, They noticed that the vehicle was idling rough. They supposedly tuned the vehicle up. It now kicks back with too fast a timing, and idles 300 RPM faster than it should and got about two less miles per gallon of gas than we got on our first trip, which was to Idaho,.

In the past, I worked as a mechanic on heavy equipment for a couple of years and worked as a line mechanic on trucks of all types, heavy and light, for five and a half years. I did considerable brake work on Air-Brakes and Hydraulic. I have had to add a full or partial spring leaf to balance front axels for steering and braking. I have done miles of trailer and truck wiring. I have had to diagnose weak lights and rectify the problem. One Quarter of an inch thick lining was not adequate on any of our pick-ups or light trucks.

I think we have "been had" and the engine on this vehicle is too much for me to cope with.I cant hang over them any more.

It looks like I do not have any choice and will have to pull the wheels and repair my own brakes. The tune up and right head lamp lens will have to be taken care of by someone I hope my grandson may know. They will certainly be bound with a contract before they touch this vehicle. If I pull the wheels, I will know the brake problem of which I now know is highly inadequate.

Cornforth-Campbell should rectify the problems which are not massive for knowledgeable people to cure.

Your service appears to make a good vehicle into a lemon at this time. I will not further argue with them and the fact is, that we only had a short warranty that should have been adequate if the vehicle was as it was purported to be.

Last but not least; My window washer has quit. It hasn't worked for three weeks.

P – 2 – of – 8

COMPLAINT

Clinton M. and Margaret L Tullis ProSe
16300-184th ave. S.E. Renton, Wa. 98058
phone: 425-226-7399 or 206-713-4950

This is the second time I have mailed you this letter. If no answer from you,

The next time, the letter will be sent to the ~~Attorney Generals office~~ *waste of time* to see if the lemon law may apply.

I may choose to have another Company do the updating and then apply to the Municipal Court to see whom pays the bill. I would have sent this follow up letter much sooner, but have had a lot of apartment management business and Real Estate business to attend to.

### SINCERELY YOURS

Clinton . M. Tullis

16300-184th ave. S.E.
Renton, Wa. 98058
Ph.&Fax (425)226-7399
Cell:(206) 713-4950

P.S. We have really had good service recently, with Scarf Ford of Auburn and also in years past; with Good Chevrolet of Renton.

Below; I will copy a hand written letter given to your Service Department on about June 16, 2003; Just after the purchase:

To Cornforth Buick of Puyallup:

1. The engine in a 6 m ile run from East of Kent to Maple Valley Heights (Pulling a 7,000 pound trailer); ran the temperature to 280 degrees.

2. I want the fan belt and the thermostat removed, then the water jacket reinstalled. Fill with water, run the motor against its brakes until hot and check for head or ? leak by seeing if the water bubbles in the radiater. If not:
*I know the thermostats only come in 180 & 190 Degree. I wanted an answer*
3. Replace the thermostat with a 165 or 170 degree, not a 190 degree plus thermostat.
   Getting an engine hot is not a problem; eeping it cool or at proper running temperaures is a problem; regardless of engineering reccomendations.

4. Then: I want the top and bottom of the radiator flow checked from pressure off the bottom of the radiator to the top. The radiator may be plugged.

5. Replace the radiator cap with a new pressure release cap.

6. If this doesn't suffice; Replace the radiator with a new higher capacity radiator.

7. Make certain the air flow in the radiator is tops. This could also be a problem. The radiator may need a boil out, by an accredited radiator shop. or maybe in your hot-tank.

*p - 3 - of - 6*

8.  We must have the vehicle by Thursday evening. If it blows up on us on pulling a 7000 plus pound trailer for which we purchased the vehicle; then we will be one hell of a problem to Cornforth-Campbell.

I certainly hope this does not ruin our short vacation plans to the Idaho Cascade Lakes.

We trusted you people or we wouldn't have purchased the vehicle at any price.

P.S. After we left your shop without getting any reprieve or consideration on the heating or on the brakes; The vehicle again heated on me and the lights were remaining very dim.

Consequently, First, I went to a parts dealer, purchasesd and installed new lights and then after the vehicle again heated on me, I determined the problem was most likely with a faulty thermostat that only worked part time and went to another parts store and purchased a new thermostat. This took care of the entire heating problem on the trip, but upon arriving home; the vehicle again heated to the boiling point upon backing the trailer into our yard. The next day, I again went to Schucks Auto Parts store, Where I purchased and installed a radiator cap.

(1).  Since, We have spent two weeks running up and down the Oregon Coast. The temperature has not risen above 180 to 190 degrees in extremeely hot weather. No thanks to your Service

(2)  Our lights are considerably brighter even though the battery does not seem to be in the best condition, except the right headlamp appears to be distorting the right beam.

(3) The engine:  1.  Always kicks back when starting, showing that the timing is a little fast.
                        2. Idles 300 RPM too fast.

*(3) the Battery was the fault and Plaintiff replaced Battery, the lights were corrected upon purchase of Head lamps*

(4) The Window Washer Does Not Work.

(5) The brakes are now adjusted fairly even and give me good braking on full pedal. (I have not tried them under a heavy trailer load).  I also had to add quite a bit of hydraulic fluid after bleeding and adjusting the brakes. This is the fourth time I have had to add brake fluid.

I should not have to personally remedy any of the Nos  (2), (3), (4), or (5) if the master cylinder, a wheel cylinder, or whatever is leaking the fluid.

This type of work is too much on me any more and I will have to hire it done if Cornforth-Campbell renigs on the service to which I feel they owe me.

Sincerely ours,

Clinton M. Tullis
16300-184th ave, S.E.
Renton, Wa. 98058-0903
Phone and fax (425) 226-7399
Cell (206) 713-4950

*P-4   2 + calipers and pins were replaced on the front wheels, new brake pads were installed on all wheels, the F-vant ROTORS were balanced + cleaned.*

*P-4-OF-6*

*Plaintiffs took a trip to Spokane for graduation of granddaughter in 2004, the vehicles brakes (Suburban Brakes) again pulled to hard left on application. upon arriving home plaintiff pulled off all wheels of the Suburban. The caliper were riding on bad pins and causing loss of brake fluid. 1 front ROTOR 3/32nds thinner than right front wheel. All this a no no.*

We trusted you people or we wouldn't have purchased the vehicle at any price.

P.S. After we left your shop without getting any reprieve or consideration on the heating or on the brakes; The vehicle again heated on me and the lights were remaining very dim.

Consequently, First, I went to a parts dealer, purchasesd and installed new lights and then after the vehicle again heated on me, I determined the problem was most likely with a faulty thermostat that only worked part time and went to another parts store and purchased a new thermostat. This took care of the entire heating problemn on the trip, but upon arriving home; the vehicle again heated to the boiling point upon backing the trailer into our yard. The next day, I again went to Schucks Auto Parts store, Where I purchased and installed a radiator cap.

(1).    Since, We have spent two weeks running up and down the Oregon Coast. The temperature has not risen above 180 ~~degree~~ degrees in extremeely hot weather. No thanks to your Service

(2)  Our lights are considerably brighter even though the battery does not seem to be in the best condition, except the right headlamp appears to be distorting the right beam.

(3) The engine: 1.  Always kicks back when starting, showing that the timing is a little fast.
     2. Idles 300 RPM too fast.(I HAVE BEEN INFORMED THAT THE FACTORY RECOMMENDS 800 rpm). THIS DOESN'T CURE "THE KICK-BACK IN TIMING" THOUGH *500 to 600 RPM sufficient for gas engines*
    (4) The Window Washer Does Not Work.

(5) The brakes are now adjusted fairly even and give me good braking on full pedal. (I have not tried them under a heavy trailer load). I also had to add quite a bit of hydraulic fluid after bleeding and adjusting the brakes. This is the fourth time I have had to add brake fluid.

I should not have to personally remedy any of the Nos (2), (3), (4), or (5) if the master cylinder, a wheel cylinder, or whatever is leaking the fluid.

This type of work is too much on me any more and I will have to hire it done if Cornforth-Campbell renigs on the service to which I feel they owe me.

Additionally, Yesterday; Wednesday, September 10th , 2003; I drove the vehicle about 60 miles in the rain. The left front wheel grabbed and chattered and did not brake good in the wet weather. It also skidded a little on the braking application; I BELIEVE IT IS NOT A NON-SKID (NON-LOCK) BRAKE ON THE LEFT FRONT OF THE VEHICLE, AS IT IS SUPPOSESD TO WARRANT.

Sincerely Yours,

*Plaintiff performed the repairs*

Clinton M. Tullis    *Clinton M. Tullis*
16300-184th ave, S.E.
Renton, Wa. 98058-0903
Phone and Fax : (425) 226-7399
Cell (206) 713-4950

P 5 of 6

*now*
*Plaintiffs*

(We) had purchased our GM Suburban in May of 2003 at Cornforth-Campbell Buick and GM in Puyallup, Wa. *June 4 ~ 2003*
One of the conditions of Purchase was that the Suburban would be equipped to supply the towing and braking essential for a 30 foot Wilderness Trailer that weighed 7000 pounds before loading.
WE WERE THEN PROMISED THAT CORNFORTH-CAMPBELL WOULD FURNISH US THE BOOK
ON USE AND MAINTENANCE OF THE SUBURBAN AND ON THE EQUIPMENT ATTACHED.

The salesman showed me the newly mounted Trailer Electric Control and told me that I only needed to slide the "side switch forward or back" to get expected response on the brakes. This was the way to feel if the trailer would pull back on the suburban without applying the Suburbans brakes. You should then slide the switch in the opposite direction to barely release the pull back and that would give you full breakage when the Suburbans brakes were applied. Also, to check the trailer brakes activating after making the above adjustment.
We were advised to "slide the activator located on the front of the control". back and forth and it would indicate the ability of the trailer to assist in stopping. This was occasionally performed and we were confident of the trailer controlling its own weight in stopping.

[Prior to going on vacation to Oregons Southwest "Coast city" of Bandon, Oregon. Upon returning from a three day trip to Spokane, Washington, to a granddaughters graduation at Eastern Washington University; I pulled the wheels off of the trailer to make certain the lining and electric brakes were in good condition. and repacked the wheel bearings. I then adjusted the brakes to the recommendations of our trailer manual. The brakes linings and electric activators were in excellent condition as prescribed by the manual.]
RECEIPT OF THE PROMISED MANUAL ON THE ACTIVATOR WOULD HAVE AVOIDED
PLAINTIFFS ACCIDENT AS PLAINTIFFS WOULD HAVE IMMEDIATELY REPLACED IT.
The Timed Activator is not actively comparable to Inertia-activator
with proportional sensors which take less than one-second to deliver
100%(one -hundred percent)of their full stopping power.
*now*
*plaintiffs*
I made four trips to Cornforth-Campbell to pick up the owners manuals and never was afforded one ☞
which they continued to ignore as they also ignored maintenance to be provided to the Suburban under the warranty. The battery went dead, the starter failed, the headlights needed and received replacement. the lighting system had a loose wire at the battery terminal of which I completely soldered together. I cured the radiator water flow which caused overheating of the engine  and I completely repaired the braking system as was recommended by the new Chilton"Mechanics Manual" of which I purchased from an Auto Parts store. The Suburban brakes had been pulling to the left when traveling on wet pavement. The improved Suburban Brakes were excellent. The Trailer Brakes were excellent. It was the trailer control that malfunctioned.

Unknown to us; the "Trailer Brake Control" newly installed by Cornforth-Campbell was not used by most, if any RV installers; as Tacoma RV explained to us on the third trip we made to contact them after the accident; Stated that Tacoma RV had not installed that type in years. They then gave us a book on the different types that are available.
The book then explained that the type of control on our vehicle, could completely malfunction and fail under heavy application in an emergency situation and that the digital controls or even a partial digital control was essential on Recreational trailers.

Respectfully,

Clinton M. Tullis ProSe          *Clinton M. Tullis*
16300-18th ave. S.E.
Renton, Wa. 98058-0903
Phone and Fax (425) 226-7399
Cellular (206) 713-950

*this accounting was produced for the
Centralia Dist Court where Plaintiffs (then defendants)
were exonorated from false accusations.
from injustified accusations.*

*P.5.
of-5*

*Auto repr* (handwritten)

*exhibits [0-12]* (handwritten, circled)

*for Cornforth
also Purchased
a 180° thermostat* (handwritten)

**Schuck's Auto
Supply**    *7-22/03*

17789 SE 272nd Street
Covington WA 98042    STORE#04349
(253) 631-5645   07/22/03    5:23 pm
REGISTER 02 2   5948 CASHIER# 032647-02

```
PA 6308043   WATER OUTLET GASKT
                                1.39
             824
PA 6574529   WATER OUTLET GASKT
                                1.39       thermostat
             680
PA 6144612   SUPERSTAT
                                8.99
             65848        plus tax 9.80
Limited Lifetime*

             SUBTOTAL       11.77
             TAX 8.40%       0.99
             TOTAL          12.76

**DEBIT CARD SALE**         -12.76

CHANGE DUE                    0.00
```

TRANSACTION#00345367

Refunds & exchanges must be made within
60 days with original sales receipt.

THANK YOU!    *12176*
Visit Us On-Line At
WWW.SCHUCKS.COM

*See warranty brochure for
additional terms of warranty

PRIMARY

157859
Card # XXXXXXXXXXXX0258
Approval: 002477

<<CUSTOMER COPY>>

**BIG WHEEL AUTO PARTS**    606013
25416 104TH SE
KENT WA 98031
253-859-4510        *8-23/03*

1 CASH CUSTOMER    CW 11:49 08/23/03

```
*   99 GMC TRUCK    C&K2500 SUBURBAN
    V8-350  5.7L    5.43 with tax
    1 STA 10231.5    4.99      4.99 T
      RADTR CAP
    1 FRA PH5        4.99      4.99 T
      OIL FILTER
      CHECK                   10.86
      DISPLAY # 5
                  Subtotal     9.98
Labor             Core
Fright            Tax          0.88
Disc              Total       10.86

TENDER       10.86 CHANGE
```

A RESTOCKING FEE MAY BE        *Radiator cap*
ASSESSED ON NEW RETURNS

MOST COMPLETE AUTO PARTS STORES

B AUTO PARTS, INC.
RAINIER AVE. NO.
ENTON, WA 98055
206-772-6380

4-3-04

SHIP TO:

SOLD FROM RENTON STORE

| | AUBURN 2703 Auburn Way N. (253) 854-0464 | KENMORE 6340 N.E. Bothell Way (425) 488-2007 |
| | BELLEVUE 10505 Main Street (425) 454-2495 | REDMOND 16115 Redmond Way (425) 885-4146 |
| | BURIEN 14307 1st Ave. S. (206) 243-2444 | RENTON 401 Rainier Ave. N. (206) 772-6380 |
| | FEDERAL WAY 1610 341st Pl., Ste. A (253) 661-7222 | TACOMA 215 S. 72nd Street (253) 475-9018 |

Suburban Brake repair

1489539

PAGE
INV. NO.

| WEIGHT | | | | ORDER DATE | | INV. DATE | | INV. NO. |
|---|---|---|---|---|---|---|---|---|
| | 02:28 PM | | | 04/03/04 | | 04/03/04* | | |
| DESCRIPTION | | CORE | | LIST | | SELL | | EXTENDED | T | D |
| KE SPRING | | | | 5.48 | | 3.99 | | 3.99 | T | |
| SPRG TOOL | | | | 8.98 | | 4.99 | | 4.99 | T | |
| HEX BIT | | | | | | 1.99 | | 1.99 | T | |
| M AXLE SKT | | | | 22.80 | | 8.99 | | 8.99 | T | |

- Special Order Returns are subject to a 20% restocking fee.
- Freight Charges are non-refundable.

| SUB-TOTAL | 19.96 |
| CORE | |
| TAX | 1.76 |
| LABOR | |
| FREIGHT | |
| TOTAL | 21.72 PICK |

B&B AUTO PARTS, INC.
401 RAINIER AVE. NO.    601242
RENTON, WA 98055
206-772-6380
4-3-04

6 CASH SALE. THAN ER 02:30 04/03/04

1 WIL W159C      3.99    3.99 T
   BRAKE SPRI
1 WIL W00622     4.99    4.99 T
   BRK SPRG T
1 WIL W1334      1.99    1.99 T
   5/8 HEX BI
1 WIL W154       8.99    8.99 T
   36MM AXLE
   Cash    $ 21.72
   DISPLAY # 17    50.00

Labor         Subtotal    19.96
Frght         Core
Disc          Tax         1.76
              Total       21.72
TENDER        50.00 CHANGE    28.28

on record
05/27/04

Schucks Auto Supply

17620 108th SE
Renton WA 98055    STORE#04329
(425) 228-6226    05/27/04    4:46 pm
REGISTER 04 2    3576 CASHIER:057394-03

PA 8322372  QUIET STOP PADS
                        59.99
   Brake pads
            PGD370QS
Ltd Lifetime Warranty Excludes Wear
PA 6089189  80/85W-90 GEAR OIL
                        3.49
            831
PA 6008205  SYNTHETIC GEAR OIL
            75W90       8.99

            SUBTOTAL    72.47
            TAX 8.80%    6.38
            TOTAL       78.85

**DEBIT CARD SALE**    -78.85

CHANGE DUE              0.00

Items Sold    :  3

TRANSACTION #00464300

Refunds & exchanges must be made within
60 days with original sales receipt.

THANK YOU

More Green

B&B AUTO PARTS, INC.
401 RAINIER AVE. NO.    601293
RENTON, WA 98055
206-772-6380
4-3-0

6 CASH SALE. THAN GF 04:05 04/03/04

1 TRW 14-370-12  41.79    41.79 T
   BRAKE PAD
1 LUB 11300      2.99     2.99 T
   16 OZ WB G
   ATM/Debit
   DISPLAY # 17    48.72

Labor         Subtotal    44.78
rght          Core
sc            Tax         3.94
              Total       48.72
DER           48.72 CHANGE    48.72
                    FOR SHIPPING PART

exhibits 10-12

3-31-09 (?)

# Cedar Rapids Towing

18015 S.E. Maple Valley Hwy.
Renton, WA 98058
**PHONE** (425) 255-6255

**37334**

24 hour

Date 03 / 31 / 09    WDL # _____

WO # _____    PO # _____

Bill to: Clinton Tarus

Address: Renton

City, State: Renton, WA 98055-0963

Owner: _____

Address: _____    Tel: _____

| YR 99 | MAKE GMC | MODEL Suburban | LIC # 223-RCC |
| VIN # | | | ODOMETER |
| DRIVER 107 | TRUCK 10 | GLASS 2 | WSP□ AGC□ IMP□ INS.□ |
| | | | PD□ PVT□ COM□ |

Tow From 18051 - 8272

Tow To _____

| Extra Services | Dolly | Wheel Lift | Driving Removal | Car Carrier | Standby |
|---|---|---|---|---|---|

Winching _____

2nd Tow _____    Driver    Truck Class

Storage    Days Outside
Mileage Finish    Time Finish
Mileage Start    Time Start
Total Miles    Per Mile    Total Time

After Hours Release _____    Keys

Comments _____

Advance Charges
Tolls Paid
Sub Total    85 oc
Sales Tax    6 16

Check No. 2522    Bank Card □
Date Released _____    Cash □
Released By _____    Charge □    **TOTAL**    91 16

AUTHORIZATION
TO TOW
VEHICLE    Clinton M. Tarus

electrical failed couldn't start
vehicle . had to have it towed
home so I could run tests, analysis
& repair



BED LINERS
TRAILER HITCHES
• • •
623 MERIDIAN E.
EDGEWOOD, WA 98371

# EDGEWOOD NATIONAL INC.

4WD, TRUCK and RV PARTS and ACCESSORIES



Complete Truck & RV
Installation Facility
www.edgewoodnational.com

**PHONE: (253) 927-3388**

DISCLAIMER OF WARRANTIES. All warranties on the products sold hereby are those made my the manufacturer. The Seller, Edgewood National, Inc. hereby expressly disclaims all warranties either expressed or implied, including any implied warranty of merchantability or fitness for a particular purpose, and Edgewood National, Inc. neither assumes nor authorizes any other person to assume for it any liability in connection with this sale. CHECK ALL PARTS BEFORE INSTALLING. EDGEWOOD NATIONAL, INC. WILL NOT BE RESPONSIBLE FOR MISLABELED OR MISPACKED PARTS.

NO ELECTRICAL PARTS RETURNED • NO RETURNS AFTER 30 DAYS OF SALE

*exhibits 10/11/12*

CASH ONLY WHOLESALE        CUSTOMER #  500   CASH   INVOICE # 78079-A
                                          CODES: D 1 C.O.D.
                                          DATE : 07/02/03   03
                                          10:00 AM PAGE: 1 A

| QUANTITY | LINE | PART NUMBER | DESCRIPTION | CORE | LIST EA. | YOUR COST | EXTENSION | TAX |
|---|---|---|---|---|---|---|---|---|
| 1 | PHO | H9006XPP2 | BULB ST LEGAL | | | 24.15 | 24.15 | T. |

*2 bulbs*
*1- Right Front*
*1- Left Front*      *7/02/03*

CHECK      :$   26.30
CHECK # 2591

|  |  |  |  |  |  | 24.15 | 2.15 |
|---|---|---|---|---|---|---|---|
| TOTAL UNITS | FREIGHT | LABOR | MISC | CORE TOTAL | LIST TOTAL | NON-TAXABLE | TAXABLE | TOTAL TAX |

NO REFUND WITHOUT THIS INVOICE • RETURNED MERCHANDISE IS SUBJECT TO 15% HANDLING CHARGE • NO MATERIAL ACCEPTED FOR CREDIT THAT HAS BEEN INSTALLED FOR TESTING.

RECEIVED BY: X

PAY THIS AMOUNT ▶    26.30    CUSTOME

---

EDGEWOOD TRUCK TOYZ

• • •

623 MERIDIAN E.
EDGEWOOD, WA 98371

Complete Truck & SUV
Installation Facility
www.edgewoodtrucktoyz.com

**PHONE: 253•927•3388**
**FAX: 253•927•4519**

*12-26-03*

NO ELECTRICAL PARTS RETURNED          NO RETURNS AFTER 30 DAYS OF SALE

CLINT        *Edgewood performed the head-light installation*

OPEN   INVOICE # 88702-A
CODES: D 1
PH #425 226-7393  DATE : 12/26/03   02
REF: W/O 2#416   4:03 PM PAGE: 1 A

| QUANTITY | LINE | PART NUMBER | DESCRIPTION | CORE | LIST EA. | YOUR COST | EXTENSION | TAX |
|---|---|---|---|---|---|---|---|---|
| 1 | HHA | 24065 | GM FULLSIZE PU | | | 16.49 | 16.49 | T. |
| 1 | PCH | C2583A | RIGHT LIGHT ASSY | | | 79.95 | 79.95 | T X |
| 1 |  | C2582A | LEFT LIGHT ASSY | | | 79.95 | 79.95 | T X |
| 1 | 999 | LO-5 | LABOR PER HOUR | | | 60.00 | 60.00 | T. |

*Plaintiffs replaced entire head lamps*
*12-26-03*

|  |  | 60.00 |  |  |  | 236.39 | 20.81 |
|---|---|---|---|---|---|---|---|
| TOTAL UNITS | FREIGHT | LABOR | MISC | CORE TOTAL | LIST TOTAL | NON-TAXABLE | TAXABLE | TOTAL TAX |

NO REFUND WITHOUT THIS INVOICE • RETURNED MERCHANDISE IS SUBJECT TO 15% HANDLING CHARGE • NO MATERIAL ACCEPTED FOR

RECEIVED BY:      257.20

PAY THIS AMOUNT ▶  ***NON-FINAL***
ORIGINAL

| QUAN. | JOB CODE | LABOR INSTRUCTIONS | | EACH | TOTAL |
|---|---|---|---|---|---|
| 1 | 999 | LO-5 Labor | | | 60 00 |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | OUTSIDE WORK | | | |
| | | TOTAL LABOR | | | |

| QUAN. | LINE CODE | PART NUMBER | DESCRIPTION | EACH | TOTAL |
|---|---|---|---|---|---|
| 1 | PCH | C2583A | Right Light | | 79 95 |
| 1 | " | C2582A | Left Light | | 79 95 |
| 1 | HHA | 24065 | Book (maintenance Vehicle) | | 16 49 |

NAME Clint Tullis

**EDGEWOOD TRUCK TOYZ**

623 MERIDIAN E.
EDGEWOOD, WA 98371

*Complete Truck & SUV*
*Installation Facility*
www.edgewoodtrucktoyz.com

**Truck Toyz**
OFFROAD & SUV ACCESSORY CENTER

PHONE: 253•927•3388
FAX: 253•927•4519

**NO ELECTRICAL PARTS RETURNED**

**NO RETURNS AFTER 30 DAYS OF SALE**

CLINT TULLIS    12-26-03    CASH    INVOICE #38702-A
CODES: D 1
PH #425-226-7399    DATE : 12/26/03    03
REF: W/O 21415    4425 FN PAGE: 21 A

| QUANTITY | LINE | PART NUMBER | DESCRIPTION | CORE | LIST EA. | YOUR COST | EXTENSION | TAX |
|---|---|---|---|---|---|---|---|---|
| 1 | HHA | 24065 | GM FULLSIZE PU | | | 16.49 | 16.49 | T |
| 1 | PCH | C2583A | RIGHT LIGHT ASSY | | | 79.95 | 79.95 | T X |
| 1 | | C2582A | LEFT LIGHT ASSY | | | 79.95 | 79.95 | T X |
| 1 | 999 | LO-5 | LABOR PER HOUR | | | 60.00 | 60.00 | T |

CHECK    : $   257.20
CHECK # 1199

257.20

| | | FREIGHT | LABOR 60.00 | MISC. | CORE TOTAL | LIST TOTAL | NON TAXABLE | TAXABLE 236.39 | TOTAL TAX 20.81 |

NO REFUND WITHOUT THIS INVOICE • RETURNED MERCHANDISE IS SUBJECT TO 15% HANDLING CHARGE • NO MATERIAL ACCEPTED FOR CREDIT THAT HAS BEEN INSTALLED FOR TESTING.

RECEIVED BY: X

PAY THIS AMOUNT ▶ 257.20    CUSTOMER

**Warrantee Disclaimer**    ANY WARRANTIES ON THE PRODUCTS SOLD HEREBY ARE THOSE MADE BY THE MANUFACTURER. THE SELLER (EDGEWOOD NATIONAL INC.) HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EITHER EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF SAID PRODUCTS.

**Work Authorization**    I HEREBY AUTHORIZE THE ABOVE WORK TO BE DONE ALONG WITH NECESSARY MATERIALS. YOU AND YOUR EMPLOYEES MAY OPERATE ABOVE VEHICLE FOR PURPOSES OF TESTING, INSPECTION OR DELIVERY AT YOUR RISK. AN EXPRESS MECHANIC'S LIEN IS ACKNOWLEDGED ON ABOVE VEHICLE TO SECURE THE AMOUNT OF REPAIRS THERETO. YOU WILL NOT BE HELD RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLE OR ARTICLES LEFT IN VEHICLE IN CASE OF FIRE, THEFT, ACCIDENT OR ANY OTHER CAUSE BEYOND YOUR CONTROL.

Work Authorized By Clinton M. Tullis

**EDGEWOOD NATIONAL INC.**
623 MERIDIAN E.

**No. 21415**

**MOST COMPLETE AUTO PARTS STORES**

B AUTO PARTS, INC.
401 RAINIER AVE. NO.
RENTON, WA 98055
206-772-6380

4-3-04

SHIP TO:

SOLD FROM RENTON STORE

Suburban Brake Repair

**1489539**

| AUBURN | KENMORE |
| 2703 Auburn Way N. | 6340 N.E. Bothell Way |
| (253) 854-0464 | (425) 486-2007 |
| BELLEVUE | REDMOND |
| 10505 Main Street | 16115 Redmond Way |
| (425) 454-2495 | (425) 885-4146 |
| BURIEN | RENTON |
| 14307 1st Ave. S. | 401 Rainier Ave. N. |
| (206) 243-2444 | (206) 772-6380 |
| FEDERAL WAY | TACOMA |
| 1610 341st Pl., Ste. A | 215 S. 72nd Street |
| (253) 661-7222 | (253) 475-9018 |

PAGE   1

| WEIGHT | | ORDER DATE | INV. DATE | INV. NO. |
|---|---|---|---|---|
| 02:28 PM | | 04/03/04 | 04/03/04 | |

| DESCRIPTION | CORE | LIST | SELL | EXTENDED | T | D |
|---|---|---|---|---|---|---|
| KE SPRING | | 5.48 | 3.99 | 3.99 | T | |
| SPRG TOOL | | 8.98 | 4.99 | 4.99 | T | |
| HEX BIT | | | 1.99 | 1.99 | T | |
| M AXLE SKT | | 22.80 | 8.99 | 8.99 | T | |

- **Special Order Returns** are subject to a 20% restocking fee.
- **Freight Charges are non-refundable.**

| SUB-TOTAL | 19.96 |
| CORE | |
| TAX | 1.76 |
| LABOR | |
| FREIGHT | |
| TOTAL | 21.72   PICK |

---

B&B AUTO PARTS, INC.        601242
401 RAINIER AVE. NO.
RENTON, WA 98055
206-772-6380
4-3-04

6 CASH SALE.  THAN ER 02:30 04/03/04

| 1 WIL W159C | 3.99 | 3.99 T |
| BRAKE SPRI | | |
| 1 WIL W80622 | 4.99 | 4.99 T |
| BRK SPRG T | | |
| 1 WIL W1334 | 1.99 | 1.99 T |
| 3/8 HEX BI | | |
| 1 WIL W154 | 8.99 | 8.99 T |
| 38MM AXLE | | |
| Cash | DISPLAY # 17 | 50.00 |

| Labor | Subtotal | 19.96 |
| Frght | Core | |
| Disc | Tax | 1.76 |
| | Total | 21.72 |

TENDER    50.00 CHANGE    28.28

on record
05/27/04

---

Schuck's Auto Supply

17620 108th SE
Renton, WA 98055    STORE#04329
(425) 226-6226   05/27/04  4:46 pm
REGISTER 04  2   3576 CASHIER: 057394-03

PA 8322372  QUIET STOP PADS    59.99
PGD3700S
Ltd Lifetime Warranty Excludes Wear
PA 6089189  80/85W-90 GEAR OIL    3.49
831
PA 6008205  SYNTHETIC GEAR OIL    8.99
75W90

| SUBTOTAL | 72.47 |
| TAX 8.80% | 6.38 |
| TOTAL | 78.85 |

**DEBIT CARD SALE**    -78.85

CHANGE DUE    0.00

**Items Sold    :    3**

TRANSACTION #00464300

Refunds & exchanges must be made within
60 days with original sales receipt.

THANK YOU!

---

B&B AUTO PARTS, INC.        601293
401 RAINIER AVE. NO.
RENTON, WA 98055
206-772-6380
4-3-0

6 CASH SALE.  THAN GF 04:05 04/03/04

| 1 TRW 14-370-12 | 41.79 | 41.79 T |
| BRAKE PAD | | |
| 1 LUB 11380 | 2.99 | 2.99 T |
| 16 OZ WB G | | |
| ATM/Debit | DISPLAY # 17 | 48.72 |

| bor | Subtotal | 44.78 |
| ht | Core | |
| sc | Tax | 3.94 |
| | Total | 48.72 |

DER    48.72 CHANGE

Suburban



*Exhibit 10-12*



**The West's Largest Independent Tire Dealer**

SOLD TO CLINTON TULLIS

146200

LES SCHWAB TIRE CENTER
17235 SE 272nd Street
Kent, WA 98042 4965
253-638-0940

*no date on tire*

*on the Suburban*

| ACCT | 386  99998 | INVOICE | 279911 |
| --- | --- | --- | --- |

DATE  07-22-2003   TIME   6:03:57 PM

| SOLD BY | TRANSACTION TYPE | WORK ORDER # | CUSTOMER PO # | LICENSE | MILEAGE | YEAR / MAKE / MODEL |
| --- | --- | --- | --- | --- | --- | --- |
| JEFF | CASH | 186737 | | 223-REC | 56949 | |

| QTY. | PRODUCT CODE | PRODUCT DESCRIPTION | PRICE | FET | AMOUNT |
| --- | --- | --- | --- | --- | --- |
| 1 | 02117046 | All Parts New Unless Specified | | | |
| 1- | 02117046 | LT245/75R-16/10 TRAILCAT ALL SEASONS BLACKWALL | 97.00 | | 97.00 |
| | | LT245/75R-16/10 TRAILCAT ALL SEASONS BLACKWALL | 97.00 | | 97.00- |
| | | Adjustment: D 100% Sidewall Separation | | | |

*Plaintiff only
use super tires*

Customer certifies there are no personal injury or other claims of any type whatsoever relating in any way to the above-described merchandise. Customer understands Les Schwab is relying on this certification to grant credit, or make a product adjustment and to dispose of the merchandise together with certain records, without further investigation. If any claims relating to the merchandise are made, customer releases, indemnities and holds harmless Les Schwab therefrom.

**NOTICE: The following conditions apply to all sales except where Seller issues a written warranty.**
SELLER ASSIGNS TO PURCHASER ALL RIGHTS AND REMEDIES UNDER MFRS. EXPRESS AND IMPLIED WARRANTIES, BUT OTHERWISE EXCLUDES ALL LIABILITY FOR WARRANTY DAMAGES. SPECIAL AND CONSEQUENTIAL DAMAGES FOR LES SCHWAB MFRD. PRODUCTS EXCLUDED TO EXTENT LAW ALLOWS. ALL CLAIMS AND RETURNED GOODS MUST BE ACCOMPANIED BY THIS INVOICE. Purchaser acknowledges having received the goods described above and having read and received a copy of the Security Agreement and Warning (when applicable) contained on the reverse side hereof.

**PURCHASER X**

| SALES TAX | .00 |
| --- | --- |
| DISPOSAL TAX | .00 |
| **TOTAL** | .00 |

**CUSTOMER COPY**



‹‹CUSTOMER COPY››

# East Auto Parts

INVOICE

ET, RENTON, WASHINGTON 98059
228-6364

SALES DRAFT

HIGHLAND EAST AUTO-MART
4616 NE 4TH ST
RENTON, WA 98059
TERMINAL 52003B9

B40982342
04/03/2004    15:43:00
DEB XXXXXXXXX0258
INVOICE    63007 DP2
AUTH. CODE  631920

SALE TOTAL            $32.64

CUSTOMER COPY

Prt#:PRT002
Term:CRT004
User:naf
Loc: 1
Page: 1

Schucks Auto Parts

307 Rainier Avenue S
Renton WA 98055
(425) 235-9972    STORE#W0318
04/27/04    4:13 pm
REGISTER #: 1    7674 CASHIER 065319-04

PA 6180053 HAVOLINE 10W40      20.20
12 @ 1.69
12 @ -0.50
Customer Satisfact 6180053      6.00
PA 6733399 HAVOLINE 10W30      20.20
12 @ 1.69
12 @ -0.50
Customer Satisfact 6733399      6.00

Items Sold     :     24

SUBTOTAL              28.56
TAX  8.80%             2.51
TOTAL                31.07

**DEBIT CARD SALE**
CHANGE DUE             0.00
                    -31.07

THANK YOU!
Visit Us On-Line At
WWW.SCHUCKS.COM

PRIMARY
Card # XXXXXXXXXXXX0258
Approval: 658248
061543

Refunds & exchanges must be made within
60 days with original sales receipt.

TRANSACTION #040498713

‹‹CUSTOMER COPY››

## Plaintiffs Mechanical Resume.

1. Plaintiff: Clinton M. Tullis performed mechanical work from childhood; On farm equipment, tractors, family and friends automobiles; Activating stalled trucks and loaders in shipyards that had refused to function because of world war 2 shortage of parts; Then tuning military officers and cadre vehicles at the Camp Roberts, California Infantry Training Center where I took seventeen weeks rugged infantry training in 1945 in preparation for the invasion of Japan, thwarted by the atomic bomb,; Then on farm equipment until I was thirty two years of age.

2. This latter was performed during Plaintiffs marriage and commencement of our family; and after two seasons of heavy hail storms out of four, costing heavy losses of our row crops; We decided to move to Margarets home town of Seattle to allow our children to choose their own destiny.

3. Plaintiff Clinton then worked as a Line mechanic for a freight Company for several years where I performed dozens and dozens of brake repairs and sometimes total replacements on Air Brakes, and Hydraulic brake systems and of course engine, transmission and power train rebuilding and/or vehicle general tune-ups inclusive of steering assemblies and balancing steering actions on the vehicles.

4. This was just prior to entering the Real Estate Industry for which Plaintiff is remaining self employed since 1967.

5. For one year prior to working for a large freight Company; Plaintiff Clinton worked for Mack Truck until a Christmas Layoff for several mechanics to wait for spring business to pick up. During this employment, I stripped a couple Logging Trucks that had been badly damaged ; I stripped them to the rails and even removed the cross-members of the channel frames, Corrected the bends and dents and completely reconstructed the entire trucks inclusive of reusing all of the wiring, etc.

6. I refused to go back to Mack Truck as I could not afford to gamble on seasonal layoffs and didn't admonish having to work on several part time jobs including splitting days and weeks with other employees at Mack Truck in lieu of the winter lay-off to provide for my family. I didn't believe it was right for me to interfere with anothers seniority.

I also met the same rehtoric at two different tractor company's including a Michigan Equipment Co. and decided to apply for a job at Coast Lee and Estes Freight company where I stayed for five years prior to joining a Washington Building Firm as a Sub-Contractor in remodeling houses and Commercial Structures.

7. All of above to explain that I soon understood Cornforth Campbell deceit and really didn't know how to overcome it as we had already purchased and paid for the 1999 GMC Suburban before discovering their Warranty's and intent of negating performance to their promises was all a myth applied to performance of sales.

8. I do know that perjury is a crime and that the statute of limitations does not apply to Crimes of which Cornforth Campbell and GMC Advertisements are deliberate blow-ups of deceit to cause potential purchasers to drop their guard applicable to Mr. Good-Wrench and the flyers induced with and on the vehicle. Acts of Hypocracy and extended criminology.

9. A recent acquired Washington State Commitment of Law states: There is no limitation on litigation awards to an injured party. General Motors and agency of Cornforth Campbell have over-cooked their Turkey.

10. This is qualified as to AID AND ABET: To actively, knowingly, or purposely facilitate or assist another individual in the attempted or attempted commission of a crime. Aiding and abetting is characterized by Affirmative Criminal Conduct and is not established as a result of omissions or negative acquisance. 24 A 2d 85, 87. Compare Accessory: One who Aids or contributes in a secondary way or assists in or contributes to crime as subordinate. See 216 So. 2d 829, 831. The failure to report the commission of a felony is sometimes itself a crime. An accessory does acts which facilitate others in commission or attempted commission of Crime or Avoiding Apprehension for Crime. (Apprehension: To seize, to arrest, to understand, to fear, filled with dread, suspicious). Complicity "mens rea" Accomplice; Liability is shared. Common "Mens rea": and Criminal Purpose is shared between Agent and Principal; See 233 P 2d 347.

11. All of above relating to Criminal Acts of Defendants was copied from Blacks Law Dictionary Eighth Edition by Garner and received from West Publishing Company.

P 1 of 2
PLAINTIFFS RESUME
AND COMPLAINT

EXHIBIT No 5

12. Plus: Crimes Applied to Clinton And Margaret Tullis by Cornforth Campbell and added to, by General
Motors Advertising as Mr. Good Wrench, falls under:
Chapter 9A RCW of Washington Criminal Code; Chapter 9A.04.110 which lists the many Crimes
committed by the Agency of Cornforth Campbell as

(a)ntent: A person acts with intent or intentionally when he acts with the objective or purpose to
accomplish a result which constitutes a crime

(b) Knowledge: A person knows or acts knowingly or with knowledge when: (1) he is aware of a fact,
facts, or circumstances or result described by a statute defining an offense; or (II) he has information
which would lead a reasonable man in the same situation to believe that facts exist which facts are
described by a statute defining an offense.

( c ) Recklessness: A person is reckless or acts recklessly when he knows of or disregards a substantial
risk that a wrongful act may occur and his disregard of such a substantial risk is a gross deviation from
conduct that a reasonable man would exercise in the same situation.

(1) Criminal Negligence: A person is criminally negligent or acts with criminal negligence when he fails to
be aware of a substantial risk that a wrongful act may occur and his failure to be aware of such substantial
risk constitutes a gross deviation from the standard of care that a reasonable man would exercise in the
same situation.

(2) Substitute for Criminal Negligence: Recklessness and Knowledge. When a statute provides that
criminal negligence suffices to establish an element of an offense , such element also is established if a
person acts intentionally, knowingly, or recklessly. When recklessness suffices to establish an element,
such element also is established when a person acts intentionally or knowingly. When acting knowingly
suffices to establish an element, such element also establishes if a person acts intentionally.

Chapter 9A.08.020; which advocates the Liability for Conduct of another: Complicity.

(1)A person is guilty of a Crime if it is committed by the conduct of another person for which he is legally
accountable.This also applies to Agency and Corporations

P. 2 OF 2.

PLAINTIFFS RESUME
AND COMPLAINT                    Clinton M. Tullis



**9-8 BRAKES**

*Plaintiff had to apply #3 below on the left Front Brake. see attached siding.*

*Exhibit #8*

*Page 4 of 4*

## 5 Brake disc - inspection, removal and installation



5.2 Hang the caliper out of the way with a piece of wire - don't let it hang by the brake hose!



5.3 The brake pads on this vehicle were obviously neglected, as they wore down completely and cut deep grooves into the disc - wear this severe means the disc must be replaced



5.4a To check disc runout, mount a dial indicator as shown and rotate the disc

*This page is from the Haltier Repair manual.*

### INSPECTION

♦ **Refer to illustrations 5.2, 5.3, 5.4a, 5.4b, 5.5a and 5.5b**

1   Loosen the wheel lug nuts, raise the vehicle and support it securely on jackstands. Remove the wheel and install the lug nuts to hold the disc in place.

➥**Note: If the lug nuts don't contact the disc when screwed on all the way, install washers under them.**

2   Remove the brake caliper. It isn't necessary to disconnect the brake hose. After removing the caliper bolts, suspend the caliper out the way with a piece of wire (see illustration).

3   Visually inspect the disc surface for score marks and other damage. Light scratches and shallow grooves are normal after use and may not always be detrimental to brake operation, but deep scoring requires disc removal and refinishing by an automotive machine shop. Be sure to check both sides of the disc (see illustration). If pulsating has been noticed during application of the brakes, suspect disc runout.

4   To check disc runout, place a dial indicator at a point about 1/2 inch from the outer edge of the disc (see illustration). Set the indicator to zero and turn the disc. The indicator reading should not exceed the specified allowable runout limit. If it does, the disc should be refinished by an automotive machine shop.

➥**Note: When replacing the brake pads, it's a good idea to resurface the discs regardless of the dial indicator reading, as this will impart a smooth finish and ensure a perfectly flat surface, eliminating any brake pedal pulsation or other undesirable symptoms related to questionable discs. At the very least, if you elect not to have the discs resurfaced, remove the glaze from the surface with emery cloth or sandpaper, using a swirling motion (see illustration).**

5   It's absolutely critical that the disc not be machined to a thickness under the specified minimum thickness. The minimum wear (or discard) thickness is cast into the underside of front discs (see illustration) and on the outside of rear discs. The disc thickness can be checked with a micrometer (see illustration).



5.4b Using a swirling motion, remove the glaze from the disc with sandpaper or emery cloth

*exhibits #11 = Positive*
*#12 = without isa — Comparison Positivism*
*#13a*

## portfolio                287                potable

**port·fo·li·o** (pōrt-fō′·li·ō) n. case for holding loose documents, drawings, etc.: office of a minister of state [L. *portare*, to carry; *folium*, a leaf].

**port·hole** (pōrt′·hōl) n. window in side of ship [L. *porta*, gate].

**por·ti·co** (por′·ti·kō) n. (Archit.) a row of columns in front of the entrance to a building: a covered walk [L. *porticus*].

**por·tion** (pōr′·shan) n. a piece; a part; a share; a helping of food; destiny; lot; a dowry. v.t. to divide into shares; to give a dowry to. **-less** a. [L. *portio*].

**por·tray** (pōr·trā′) v.t. to represent by drawing, painting, acting, or imitating; to describe vividly in words. **-al** n. the act of portraying; the representation. **-er** n. **portrait** (pōr′·trāt) n. picture of a person, esp. of the face; a graphic description of a person in words. **portraiture** n. the art of portrait painting [L. *protrahere*, to draw forth].

**Por·tu·guese** (pōr′·cha·gēz′) a. pert. to Portugal, its inhabitants, or language.

**pose** (pōz) n. attitude or posture of a person, natural or assumed; a mental attitude or affectation; v.t. to place in a position for the sake of effect; to lay down or assert; v.i. to assume an attitude; to affect or pretend to be of a certain character [Fr. *poser*, to place].

**pose** (pōz) v.t. to puzzle; to embarrass by a difficult question. **-r** n. [short fr. *oppose*].

**pos·it** (pàz′·it) v.t. to place or set in position; to lay down as a fact or principle [L. *ponere*, *positum*, to place].

**po·si·tion** (pa·zish′·an) n. place; situation; the manner in which anything is arranged; posture; social rank or standing; employment [L. *ponere positum*, to place].

**pos·i·tive** (pàz′·a·tiv) a. formally laid down; clearly stated; absolute; dogmatic; of real value; confident; not negative; plus; (Math.) pert. to a quantity greater than zero; (Gram.) denoting the simplest value of an adjective or adverb; (Colloq.) utter; downright; n. the positive degree of an adjective or adverb, i.e. without comparison; in photography, a print in which the lights and shadows are not reversed (as in the negative). **-ly** adv. **-ness** n. **positivism** n. the philosophical system which recognizes only matters of fact and experience. **positivist** n. a believer in this doctrine. **—pole,** of a magnet, the north-seeking-pole. **— sign,** the sign (+ read *plus*) of addition [L. *ponere, positum*, to place].

**pos·i·tron** (pàz′·a·trän) n. particle differing from an electron in that it has positive electrical charge; a positive electron.

**pos·se** (pàs′·i·) n. a company or force, usually with legal authority; men under orders of the sheriff, maintaining law and order [L. *posse*, to be able].

**pos·sess** (pa·zes′) v.t. to own or hold as property; to have as an attribute; to enter into and influence, as an evil spirit or passions. **-ed** a. influenced, as by an evil spirit; demented. **-ion** n. the act of possessing; ownership; actual occupancy; the state of being possessed; the thing possessed. **-ive** a. denoting possession; n. (Gram.) the possessive case or pronoun. **-ively** adv. **-or** n. [L. *possidere, possessum*, to possess].

**pos·si·ble** (pàs′·a·bl) a. capable of being or of coming into being; feasible. **possibly** adv. **possibility** n. [L. *possibilis*].

**pos·sum** (pàs′·am) n. (Colloq.) an opossum. **to play possum,** to feign; to pretend; to deceive [fr. *opossum*].

**post** (pōst) n. a piece of timber or metal, set upright as a support; a prop or pillar; v.t. to attach to a post or wall, as a notice or advertisement. **-er** n. one who posts bills; a large placard for posting [L. *postis*].

**post** (pōst) n. a fixed place; a military station or the soldiers occupying it; an office or position of trust, service, or emolument; a trading settlement; formerly, a stage on the rond for riders carrying mail; v.t. to station or place; v.i. to inform; to travel with speed. **-age** n. the cost of conveyance by mail. **-al** a. pert. to the post office or mail service. **-man** n. one who delivers mail. **-mark** n. a post office mark which cancels the postage stamp and gives place and time of mailing. **-master** n. the manager of a post office. **-master general** n. the chief of the post office department of a government. **— card** n. a stamped card on which a message may be sent through the mail. **-haste** adv. with great speed. **— office** n. an office where letters and parcels are received for distribution; the government postal department. **-age stamp** n. an adhesive stamp, affixed to mail to indicate payment [L. *ponere*, to place].

**post-** (pōst) adv. and prefix fr. L. *post*, after, behind, used in many compound words. **-date** v.t. to put on a document, letter, etc., a date later than the actual one. **-diluvian** a. living or happening after the Flood. **-graduate** a. of academic study, research, etc., undertaken after taking a university degree. **-impressionism** n. a movement in painting, sculpture, etc. which aims at artistic self-expression, or subjective as opposed to objective representation of things. **-mortem** a. after death; n. the dissection of a body after death; an autopsy. **-natal** a. after birth. **-primary** a. of education, beyond the elementary school.

**pos·te·ri·or** (pàs·ti′·ri·er) a. coming after; situated behind; later; hinder; n. the rump. **-ly** adv. **-ity** n. the state of being later or subsequent. **posterity** (pàs·ter′·at·i·) n. future generations [L. *posterus*, behind].

**pos·tern** (pōs′·tern) n. a back door or gate; a. rear; private [L. *posterus*, behind].

**post·hu·mous** (pàs′·cha·mas) a. born after the death of the father; published after the death of the author; occurring after death. **-ly** adv. [L. *postumus*, last, but confused with L. *humus*, the ground].

**pos·til·ion, postillion** (pōs·til′·yan) n. the rider mounted on the near horse of a team drawing a carriage [Fr. *postillon*].

**post·pone** (pōst·pōn′) v.t. to put off till a future time; to defer; to delay. **-ment** -r n. [L. *post*, after; *ponere*, to place].

**post·pran·di·al** (pōst·pran′·di·al) a. after-dinner [L. *post*, after; *prandium*, repast].

**post·script** (pōst′·skript) n. something added to a letter after the signature; abbrev. **P.S.** [L. *post*, after; *scribere, scriptum*, to write].

**pos·tu·late** (pàs′·chu·lāt) v.t. to assume without proof; to lay down as self-evident; to stipulate; n. a prerequisite; a proposition assumed without proof. **postulant** n. one who makes a request or petition; a candidate, esp. for admission to a religious order. **postulation** n. [L. *postulare*, to demand].

**pos·ture** (pàs′·cher) n. the position of a body, figure, etc. or of its several members; attitude; v.i. to assume an artificial or affected attitude. **postural** a. [L. *ponere, positum*, to place].

**po·sy** (pō′·zi·) n. a bouquet; a flower [poesy].

**pot** (pàt) n. a rounded vessel of metal, earthenware, etc., used for cooking, holding fluids, plants, etc.; the contents of a pot; (Slang) a large sum of money; v.t. to plant in pots; to preserve (as jam, chutney, etc.). **-ting** pa.p. and pa.t. **-ted**. **-bellied** a. corpulent. **-hole** n. cavity formed in rock by action of stones in the eddy of a stream; a hole in the roadway. **-luck** n. whatever may happen to have been provided for a meal. **-shot** n. a shot at random [O.E. *pott*].

**po·ta·ble** (pō′·ta·bl) a. drinkable. **potation**

P

*P.# 1 - B*

utes does not mean they are identical. Thus, laws in one area, though broadly designed to regulate one general field may be aimed at different portions of that field, and still be in genere. The term imports singleness in general purpose but permits diversity of individual purposes.

**INGRESS AND EGRESS** the entering upon and departure from the lands in question, and the means of entering and leaving; the right of lessee to enter and leave leasehold. See easement.

**IN GROSS** at large. See **easement** (EASEMENT IN GROSS).

**IN HAEC VERBA** (*in hēc ver'ba*)— Lat: in these words.

**INHERENT DEFECT** a defect that exists in an item regardless of the use made of that item. Although an inherent defect may not be readily detectable, a manufacturer is nonetheless strictly liable for any injury caused by it. Prosser, Law of Torts 656, 657. (4th ed. 1971). Synonymous with **latent defect.**

**INHERENT POWERS** those powers an authority such as a court or a government must have in order to achieve the purposes for which it was created. See 437 N.E. 2d 164, 168.

**INHERENT CONSTITUTIONAL POWERS** the federal government possesses "all those inherent and implied powers which, at the time of adopting the Constitution, were generally considered to belong to every government as such, and as being essential to the exercise of its functions." 12 Wall. 457, 556. These powers include the ability to conduct foreign affairs, 299 U.S. 304, 315-16; to exclude and deport aliens, 142 U.S. 651, 659; to protect persons in federal custody or employment, 135 U.S. 1; to protect federal elections, 110 U.S. 651; to protect federally created or fed-

erally guaranteed rights, 112 U.S. 76. Antieau, Modern Constitutional Law §§11:5 to 11:12 (1969).

**INHERENT RIGHT** a right that exists by reason of an individual's status as an individual and is not derived from any other source.

**INHERIT** technically, to take as an heir at law solely by **descent**, rather than by **devise.** More commonly used to signify taking either by devise, i.e., by **will,** or by descent, i.e., from one's ancestor as a matter of law. See 113 U.S. 340.

**INHERITANCE** real or personal property which is inherited by **heirs** according to the laws of descent and distribution. 216 P. 446, 449. 154 S.E. 2d 37, 39. **Real property** vests in the inheritor immediately on the death of the ancestor, subject to the rights of creditors. 70 P. 2d 1059, 1060. A nontechnical meaning of "inheritance" refers to the estate passed by **will.** 277 S.W. 197, 198.

**IN HOC** (*in hōk*)—Lat: in this; respecting this.

**IN INVITUM** (*in in-vē'-tŭm*)—Lat: against the will of the other party.

**INJUNCTION** a judicial **remedy** awarded for the purpose of requiring a party to refrain from doing or continuing to do a particular act or activity. 104 A. 2d 884. Injunctions were first used by the **courts of equity** to restrain parties from conduct contrary to **equity** and good conscience. 344 S.W. 2d 257. Today, with the widespread merger of law and equity, injunctions are used as well in general **courts of law** whereas law courts were formerly constrained to use the writ of **mandamus.**

The injunction is a preventative measure which guards against future injuries rather than affording a remedy for past injuries.

Types of injunctions include:

As our left front wheel slowly climbed upon the center of the vehicle in front of us I quickly released the brake pedal to allow the front wheel to rotate & climb instead of impacting. I then forced the steering to the full right turn & jammed the brake pedal down hard & the right wheel grabbed into the pavement & threw us off the vehicle in front & we slowly cropped around & along side of the vehicle in our immediate front. Margarets head was against the right door window glass & I reached over & pulled her head back for the protection from the vehicle frame work between the two right side doors. I thought we may go down on our right side half way over a roll. thus holding the steering hard right with only my left hand which (strained) my left hand & wrist, also injured & pressured from the response of an air-bag explosion,

I was really in fear of Margaret getting her head impacted & possibly through the glass.

Luckily, our vain attempt at stopping the forward motion of our vehicle & trailer gave the car in the right lane enough time to pull out of the way to make room for us to pass the vehicles on the left lane who were sitting still as they had already impacted. We both thought we were on fire and I was afraid of an explosion from a full 40 gallon tank of gas procured about ¼ hour earlier.

Clinton M. Tullis

P2 of 2

## ENDANGERMENT TO THE ENTIRE PUBLIC

(1). Neglect of GMC Leadership and many other Manufacturers of vehicles "World Wide" should have responsibility adhered to in the extreme for dollars gained by Agencies through False Advertising and Crucial Neglect of keeping Vehicles safe for use on State, County and City Roadways, Disregarding the threats to the Publics safety and Lives towards sudden Death or horrendous Injury's prevailing through their incompetant, negative actions and considerations.

(2). They should not only be held monetarily accountable, but should also serve time in jail to accommodate their unnecessary criminal acts by negating proper production.

(3). All vehicles, whether new or used, must be examined thoroughly and brought up to safety standards before turning loose on our roads.

(4). Our judges and Politicians, whether heads of Policing Agencies that deny or avoid the matters or similar matters should be positively instantly removed and denied their retirement funds. Penalty's analagious to Judges and Politicians causng or bypassing causes of injury's and injuring citizens mentally or physically should not be tolerated at all, under any conditions.

(5). Advertisements by Automobile manufacturers and their Agency's World Wide,should be based on Truths; Not just on Public Trusts.

(6). They should be denied their product sales in any city, county, or state for at least One-Year, on each and every discovery of improper assembly or repairs.

(7). I personally called (after much trouble in locating), a sales manager for Toyota and told him "My Suv" was assured of doing 16 Miles per Ga;llon of gasoline and I was only getting ten Miles Per Gallon.

(8). I told him, I wanted a phone number or address of an official at the United States Plant to make a personal appointment for driving my Suv to his Factory and have the engine tuned to deliver my travels increased, to sixteen Miles Per Gallon.

(9). He laughed and told me that they could not or would not accommodate me; as the Miles per gallon was only a part of legal sales pitches to sell vehicles of which there is no violations of law. *He evidently has not heard of perjury = Fraud.*
(9a). In other words, don't believe what you hear; It is only to over-whelm other agency's and increase purchases to the ignorant Public.

(10). This has got to stop. Both new and used vehicles to be sold; Do increase and enhance the highways and road deaths.

(11). An assist to control the population count. WE WANT THE ENTIRE GOVERNMENTs Procedures, TO RETURN OUR NATION TO ITS FOUNDATION, and of which it will influence the major portion of other nations to follow suit; with demanded honesty and complete expected proper assembly of vehicles to comply with honest advertisements.

P. 1 of 3.

that were no properly

(12). REMEMBER: Our Nation: A Republic for which it stands: One Nation Indivisible, with Liberty and Justice for All. (12a). Lets take it back to the people and the Pride of the World.

(13). Lets enforce our Attorneys and Judges with belief in proper principals (Honesty);
(13a). Lets hit our teaching of Lawyers and Judges to conform with honesty;  Not over-whelming by Power and Seduction of our innocent..
(13b). Fire the Crumbs including canceling our Tax Money to the Colleges, etc. that preach to Do whatever is necessary to win. The stupid Judges love a good show and should be home looking at TV programs, while the judges neighbors are running over their Kids with vehicles that should not have been on the road because of inapproriate control being hidden by the winner. in sales.

(14). In our World today; We are overloaded with Politicians, and Political Proponents and Advisors that may not even know or realize that they are also amoungst the endangered Public that fall victim to the errors and known discrepancies,  that Auto Dealerships, Agency's and Manufacturers can bypass by, paying for individual Political Status votes and filling each others wallets.
(14a). They should look at every one they meet, travel alongside of,  or pass; may at any moment blow a tire, lose their steering control, find their brakes insufficient, their lights to go out, anything to thwart their arriving at their previous planned destination and all too often to arrive at their unplanned journey to a hospital or final stop at a morgue.

(15). Injurys or Deaths caused by automobiles are on TV stations and in news papers daily. Most of this is because of vehicle problems ignored by Dealers,and not completed at or by Agencys because of moving through the assembly llines so fast, with out proper supervision or enough mechanics to properly complete the assembly's and are sent to the trust of unknowledgeable purchaseres.

(16). Please don't take this in as ignorance. I was a darned good mechanic earlier in life and realize when something is neglected of which very few on the roads know until it is too late.

(17). TO BEGIN WITH,: REMOVE  THE CRUISE CONTROLS.
(17a). They are a big cause of roads and residential areas deadly accidents.
(17b). You cant turn them off when fighting airbags.
(17c). You cant turn them off when someone else is forcing you sideways of which you cant always get to the brakes that may also not be in proper condition for sudden control.
(17d). If you are too tired to operate the throttle with your foot, you are too tired to travel and this will help shorten your life span no matter what you try.

(18). Before you buy; Take your exciting vehicle to a mechanic to check out underneath for the steering, tires and wheels and the engine etc. under the hood after which; have him take you for a few miles run on the freeway for his final test. If the dealer will not allow this; You have already won a good cause and better go to another dealer.

P. 2 of 3.

19. This information is meant for everyone driving a vehicle to consider; No matter how old or how new, ignoring the truth, subjects the drivers and anyone they meet or pass is in danger of serious injury's or sudden death, for abuse or use as expressed above.

2o. The Politicians have established, vehicle "Emision Control Inspections' of vehicles; and are provided with equipment and personell to determine the condition of whether the vehicles need nurtured to supposedly save the climate.

21. They should develop or appoint shops for thorough examinations on each vehicle sold whether new or used, before allowing any of them to be used on the roads or to place any party, lot, or agency in a heavy monetary punishment penalty if they sell a vehicle that should not be on the roads and highways.

22. I am planning on bringing the above to Washington State Legislature for hopfuly igniting new laws and restrictions of new and used vehicle dealerships or individuals methods of sales of a vehicle not in condition to be used on the roads and highways of the State.

23. This is not a game to be playing. An automobile Insurance policy cannot bring those killed or injured, back to their former plane of survival.

THE ABOVE HAS ALL TOO OFTEN HAD PORTIONS TO BE OVERLOOKED AND /OR BYPASSED BY POLITICIANS, WHOM WERE FINANCIALLY SUBSIDIZED BY THE AUTOMOBILE DEALERSHIPS, CRIMES OF UNNECESSARY ENDANGERMENT TO THE PUBLIC.

Clinton M. Tullis
16300-184th ave. S.E.
Renton, Wa. 98058-0903
425-226-7399 or 206-713-4950
ccmtullis@juno.com

Plaintiffs would be delighted if the Court and the Jurors would all sign their names, addresses and phone numbers on the back of PLAINTIFFS COPIES FOR TRANSITION TO Olympis.
This would not be the first time I have asked for help from citizens and received an absolute response from a Governmental Agency to change their Policies.
Maybe, One of you would be glad to be the courier of this list and I will be glad to assistif you desire.
So that you can diagnose what my assist would perform; I am the party that pulled the Seattle Parks Supervisor and the Maintenance Leaders to the Delridge Way Parks Building for a three hours of details on thwe inadequacy of the functioning of Lighting the Parks and of constructing proper timing of Ball Players, etc. so the fields were ready for intended use and facilities for public use were open and strong enough for clean-ness, etc. Recreation Departments since have given the maintenance the use rosters and every thing has been on time and in top condition ever since.
Another time, I came into the West Seattle Boat Ramp in the
P. 3 of 3. dark and found an angry crowd with their vehicles all tagged with a big bill from Diamond Parking. Within two Weeks, The Seattle Parks agreed to clean up all Parking and Boating needs and establish a reasonable use fee for new manicured boat ramps and Boat Locks, Library and other facilities that

Juno e-mail printed Thu, 29 Apr 2010 17:51:58 , page 1 of 1

exhibit
#13-A

**Dear Clinton,**

We are proud to announce we have repaid our government loan – in full. with interest. five years ahead of the original schedule. We realize we still have more to do. Our goal is to exceed every expectation you've set for us. We're designing, building and selling the best cars and trucks in the world. Like the award-winning Chevy Malibu, the all-new Buick LaCrosse, the versatile Cadillac CTS Sport Wagon and the innovative GMC Terrain, just to name a few. We invite you to learn more about the new GM and join our community, by visiting gm.com.

Susan E. Docherty
Vice President, U.S. Marketing

General Motors Company

This is an e-mail advertisement.
If you prefer not to receive any unsolicited marketing e-mails regarding GM products and services, please click here.
To view our privacy statement. click here. We cannot reply to all responses to this e-mail
©2010 General Motors | 100 Renaissance Center | 482 A00 MAR | Detroit, MI 48265

© 2010 General Motors
(100 Renaissance Center) 482 A 00 Mar (Detroit Mi 48265

exhibit
#13-A

Dear Clinton,

We are proud to announce we have repaid our government loan – in full, with interest, five years ahead of the original schedule. We realize we still have more to do. Our goal is to exceed every expectation you've set for us. We're designing, building and selling the best cars and trucks in the world. Like the award-winning Chevy Malibu, the all-new Buick LaCrosse, the versatile Cadillac CTS Sport Wagon and the innovative GMC Terrain, just to name a few. We invite you to learn more about the new GM and join our community, by visiting gm.com.

Susan E. Docherty
Vice President, U.S. Marketing

General Motors Company

This is an e-mail advertisement.
If you prefer not to receive any unsolicited marketing e-mails regarding GM products and services, please click here.
To view our privacy statement, click here. We cannot reply to all responses to this e-mail.
©2010 General Motors | 100 Renaissance Center | 482 A00 MAR | Detroit, MI 48265

©2010 General Motors
(100 Renaissance center) 482 A00 Mar (Detroit Mi 48265

EXHIBIT # #11 &
# 13 &#16

I was sitting on the Passenger side of the front seat. I thought we were stopping and then suddenly it felt like we were floating down the road. Then we were climbing over the back right end of the vehicle in front of us. Then our vehicle dropped down. Thats when the air bag hit my chest. It was very painful. There was a lot of smoke I thought our suburban was on fire; but it was from the air bag. I belive the seat belt grabbed me across my left breast and under my left arm, because it was very sore and tender for a long time. I was not able to lay on my left side. I had bruises on the front of my breast and another bruise underneath of my left breast. It was about two months before I was able to sleep comfortable again.

Margaret L. Tullis

P. # 3 of 3
11 & #13 & #16

*Exhibit 98 11*

🌺
**Holiday Inn**
**EXPRESS**
OF CENTRALIA
1233 Alder Street
Centralia, WA 98531
360/330-9441

Name & Address

MARGARET TULLIS
16300 184TH AVE SE

RENTON        WA 980580903

| | |
|---|---|
| Room | 116-11 |
| Arrive Date | 07/18/04 |
| Dept. Date | 07/19/04 |
| Folio # | 0 |
| Room Rate | 89.95 |
| Account | 2-CVISA |
| Mkt/Seg | 0-TRAN |

Page 1

Independently owned and operated by Akita, Inc.

I authorize you to bill the full balance of my account to my credit card which was presented upon registration.

SIGNATURE        **Rapid Check-Out**™

The management is not responsible for any valuables not secured in safety deposit boxes provided at the front office. I agree that my liability for the charges is not waived and agree to be held personally liable in the event that the indicated person, company or association fails to pay for any part or the full amount of such charges.

X
SIGNATURE

| DATE | CODE | REFERENCE | ID | DESCRIPTION | CHARGE | PAYMENT | BALANCE |
|---|---|---|---|---|---|---|---|
| 0718 | 111 | 0718000 | DKT | GUEST ROOM | 89.95$ | .00$ | 89.95$ |
| 0718 | 811 | 0718001 | DKT | SALES TAX | 7.02$ | .00$ | 96.97$ |
| 0718 | 812 | 0718002 | DKT | OCCUPANCY TAX | 1.80$ | .00$ | 98.77$ |
| 0719 | 918 | 0719000 | DKT | VISA | .00$ | -98.77$ | .00$ |
| | | | | ***TOTAL*** | | | .00$ |

*Filed
W Rederk
2-25-09*



*Holiday Inn
EXPRESS*

*Margarets night
at Hospital
after colision*

| | |
|---|---|
| ACCT. NO. VS ************9983    0705 | |
| CARD MEMBER NAME TULLIS/MARGARET L | |
| ESTABLISHMENT NO. & LOCATION | EXTABLISHMENT AGREES TO TRANSMIT TO CARD ISSUER FOR PAYMENT |
| H.I. Express - Centralia | |
| 1233 Alder Street Centralia, WA 98531 | |
| CARD MEMBER'S SIGNATURE X  *Margaret J Tullis* | |
| PURCHASER USE OF SERVICES PURCHASED OF THE CARD SHALL NOT BE ABSOLUTELY REFUNDED FOR A CASH REFUND | |

| DATE OF CHARGE | FOLIO NO./CHECK NO. |
|---|---|
| 07/19/04 | HI- 51872-0/ |

| AUTHORIZATION | | I.D. |
|---|---|---|
| 029359 | 117.00$ | DKT |
| | .00$ | |
| | .00$ | |

| PURCHASES & SERVICES | |
|---|---|
| | 98.77$ |

| TOTAL AMOUNT | |
|---|---|
| | 98.77$ |

exhibit 10-12

| CUSTOMER'S ORDER NO. | | DEPARTMENT | | DATE | |
|---|---|---|---|---|---|
| NAME | *Trailer to haul our* | | | | |
| ADDRESS | *gear from wreck.* | | | | |
| CITY, STATE, ZIP | | | | | |
| SOLD BY | | CASH | C.O.D. | CHARGE | ON ACCT. | MDSE RETD | PAID OUT |

| QUANTITY | | DESCRIPTION | PRICE | AMOUNT |
|---|---|---|---|---|
| 1 | 1 | *light adaptor* | | 5 95 |
| 2 | | | | |
| 3 | 1 | *Hitch & Ball used* | | 20 — |
| 4 | | | | |
| 5 | 1 | *Pin* | | 3 95 |
| 6 | | | | |
| 7 | | | | 29 90 |
| 8 | | | | |
| 9 | | | | 9 95 |
| 10 | | | | |
| 11 | | | | 39 85 |
| 12 | | | | |
| 13 | | | | 3 11 |
| 14 | | | | |
| 15 | | | | 42 96 |
| 16 | | | | |
| 17 | | | | |
| 18 | | | | |
| 19 | | | | |
| 20 | | | | |

```
          DATE  267747442882        TIME
       07/18/2004   0LEB          18:17:46

          RENTALS ETC. INC.
          700 SOUTH TOWER
          CENTRALIA WA 98531
          (360) 736-8257
             THANK YOU

             CREDIT SALE

       TRANS #      001
       AUTH  #      020249

       VISA ACCOUNT #         EXP DATE
       4428680001639383         0507

       SALE AMOUNT       $42.96

       I AGREE TO PAY ABOVE TOTAL AMOUNT
       ACCORDING TO CARD ISSUER AGREEMENT
       MERCHANT AGREEMENT IF CREDIT VOUCHER
```

7/18/04

RECEIVED BY

adams
5805

*exhibit F115*

*Procedure following sequired diagnosing stability of plaintiffs Heart for surgery (if possible) and of which surgery diagnosis and performance was applied.*

# Consult Request

Printed On Dec 22, 2008

APPOINTMENT.

Diagnosis: bilateral inguinal hernias

Planned Procedure: laparaoscopic bilateral inguinal hernia repair

Requesting Provider: Hammill

Requested Appointment Date: Apr 21,2005

Requested OEC Appointment Date: Apr 21,2005

Planned Surgery Date: Apr 25,2005   ← *date of surgery*

*released from hospital on 4/28/05*

Was the History and Physical Completed in Clinic? No

Was Informed Consent Completed in Clinic? No

Known Consult Needs (complete electronic consult scheduling will be done
with OEC): Medicine Consult

ASA Status: II  Mild Systemic Disease, no functional limitations

Additional Instructions: please make oec medicine and oec for April 21

Weight: 223.2 lb [101.5 kg] (12/02/2004 14:26)
Height: 74.5 in [189.2 cm] (08/05/2004 15:15)

*Plaintiffs heart never returned to normal and was determined to cure by surgery and followed april 30 09 with a pace maker installation, this resulted in an infection and most of another week in the hospital taking questions to remove the incoming grout particles until may 1, 2009 and considered safe for plaintiffs release from hospital on may 12, 2009. sow was very difficult to mentally function properly on this case. all of this should never have happened, if agency; Comforts Campbell & combine of EMC a shoddy assembly on the 1999 Suburban had not easily collapsed. this may not have been put to the test if agency of Comforth Campbell had performed the perfected condition of the Suburban, they lied about inclusive of their cheap mounting of their improper trailer brake*

Patient Allergies: Patient has answered NKA

Any new allergies: None

ORDERS:

1. Medications:

   Drug:Dose:
   Route:
   Schedule:
   Additional Comments:

   Drug:Dose:
   Route:
   Schedule:
   Additional Comments:

*ACTIVATOR*

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

TULLIS, CLINTON
16300 184TH AVE SE
RENTON, WASHINGTON   98058-0903
519224876

*P. 1 of 8*

VISTA Electronic Medical Documentation

*as a result; Plaintiffs discovered the Suburban Frame (channel) was too Frail and the steering assembly was both inclined of too weak of structure causing Plaintiffs both to take a beating when the front end collapsed*

Printed at Seattle

Page 20

# Consult Request

*exhibit # 6*



Printed On Dec 22, 2008

Note# 9316146

Note: TIME ZONE is local if not indicated

--------------------------------------------------

LOCAL TITLE: PRE-OP MEDICINE CONSULT REPORT TEMPLATE
STANDARD TITLE: INTERNAL MEDICINE CONSULT
DATE OF NOTE: APR 21, 2005@16:56   ENTRY DATE: APR 21, 2005@16:56:55
  AUTHOR: CORNIA,PAUL B      EXP COSIGNER:
  URGENCY:                    STATUS: COMPLETED

PATIENT AGE: 80     GENDER: MALE
PLANNED PROCEDURE (& SIDE):laparoscopic BIH repair
PLANNED PROCEDURE DATE:4/25/05

*actual surgery : 4/28/05*
*date released from hospital*
*April 25 ~ 05 surgery*

--------------------------------------------------
                    HISTORY
1) Cardiac risk factors: age
2) Cardiac studies: none
3) Functional status: no prior cardiac history. he reports that he is quite
physically active in his daily life - gardens, mows the lawn, repairs cars,
manages an apt complex, etc. he has mild, stable dyspnea on exertion and denies
chest pain, as well as orthopnea, pnd and leg swelling.

Problem list:(per dr bryson)
   1)  Fiberglass exposure, dyspnea on exertion, no current
          pulmonary disease.
       11/04 pfts: mild airflow obstruction, fev1 2.9L
   2)  Benign prostatic hypertrophy, elevated PSA, biopsy negative
       1997.
   3)  First degree AV block.
   4)  Ascending aortic aneurysm, 5.3 cm, stable.
   5)  Degenerative joint disease hips, right greater than left.
   6)  s/p R hip replacement.
   7)  L hand injury from MVA - triquetral fx of uncertain age (8/3/04)
Current Medications:
   1) Ibuprofen 400mg i po TID prn
--------------------------------------------------
                  PHYSICAL EXAMINATION
--------------------------------------------------
HEIGHT: 74 in [188.0 cm] (04/21/2005 13:46)   (04/21/2005 13:46)
[104.1 kg] (04/21/2005 13:46)                          WEIGHT: 229 lb
TEMPERATURE: 97.6 F [36.4 C] (04/21/2005 13:46)
(04/21/2005 13:46)
BP: 141/57 (04/21/2005 13:46)                  PULSE:  70

--------------------------------------------------
PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)   | VISTA Electronic Medical Documentation

TULLIS, CLINTON
16300 184TH AVE SE
RENTON, WASHINGTON  98058-0903
519224876                                      Printed at Seattle

*page 2 of 8*

Page 23

*all from July/04    prior to 2 lower inguinal*
*collision             4/25/05 — 5 surgery*

# Consult Request *all because of*
*trailer activator failure)*

Printed On Dec 22, 2008

Significant Findings:   Unknown

Facility
Activity                    Date/Time/Zone        Responsible Person    Entered By
-----------------------------------------------------------------------------------------------
  CPRS RELEASED ORDER      03/29/05 07:11       HAMMILL, FRED         WILBER, EILEEN M
  PRINTED TO ORDERS 2E     03/29/05 07:11
  COMPLETE/UPDATE          03/16/08 17:46       TANG, CAITLYN N       TANG, CAITLYN N
Consult completed as requested by service.


Note: TIME ZONE is local if not indicated

Significant Findings: Unknown
-------------------------------------------------------------------------------------------------
No local TIU results or Medicine results available for this consult
=================================================================================================
============================== END ===============================

Current Pat. Status:     Outpatient
Primary Eligibility:         NSC

Order Information
To Service:              OEC MEDICAL CLEARANCE
From Service:            SPC GEN SURG (50100)
Requesting Provider:     HAMMILL, FRED
Service is to be rendered on an OUTPATIENT basis
Place:                   Consultant's choice
Urgency:                 Routine
Orderable Item:          OEC MEDICAL CLEARANCE
Consult:                 Consult Request
Reason For Request:
Patient with 1st degree AV block needs pre-op medical eval prior to
laparoscopic BIH repair

Inter-facility Information
This is not an inter-facility consult request.

Status:                  COMPLETE
Last Action:             COMPLETE/UPDATE

Facility
Activity                    Date/Time/Zone        Responsible Person    Entered By
-----------------------------------------------------------------------------------------------
  CPRS RELEASED ORDER      03/29/05 07:11       HAMMILL, FRED         WILBER, EILEEN M
  PRINTED TO ORDERS 2E     03/29/05 07:11
  COMPLETE/UPDATE          04/21/05 17:13       CORNIA, PAUL B        CORNIA, PAUL B

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

TULLIS, CLINTON
16300 184TH AVE SE
RENTON, WASHINGTON   98058-0903
519224876

*P. 3 of 8*

VISTA Electronic Medical Documentation

Printed at Seattle

*In lower informal surgery*
*canceled by trailer activator failure*
*by Comforth Campbell*

# Consult Request

Printed On Dec 22, 2008

GENERAL APPEARANCE AND MENTAL STATUS:

```
            NORMAL   NOT NORMAL   COMMENTS:
            ------   ---------    --------
CARDIAC     [xx]     []rrr s1 s2 occ ectopy, no mgr
LUNGS       [xx]     []cta no wrr
EXTREMITIES [xx]     []no edema
```

--------------------------------------------------------------
-------------------------- LABS & STUDIES --------------------------

```
Hct: 42.7 %          (04/21/2005 14:23)
WBC: 8.8 K/uL        (04/21/2005 14:23)
Platelets: 251 K/uL       (04/21/2005 14:23)
PT: ____
PTT: ____
INR: ____
Na:  139 mEq/L       (04/21/2005 14:23)
Cl:  104 mEq/L       (04/21/2005 14:23)
BUN: 16 mg/dL       (04/21/2005 14:23)
Glucose: 96 mg/dL       (04/21/2005 14:23)
K: 4.2 mEq/L       (04/21/2005 14:23)
HCO3: ____
Cr:  0.8 mg/dL       (04/21/2005 14:23)
CO2: 26.0 mEq/L        (04/21/2005 14:23)
ECG: nsr, 1st degree avb, no q waves
```

--------------------------------------------------------------
-------------------------- ASSESSMENT/PLAN --------------------------

Problem 1:Preoperative cardiac risk assessment
        Clinical predictors - minor (age)
        Type of surgery - low/intermediate risk
        Functional status - Good > 4 METs (self report)

Recommendations:
-According to AHA/ACC guidelines, this patient may proceed to surgery without
further cardiac testing.
-Cardiac risk <1 % (Revised cardiac risk index - Lee et al).

Thank you for this consultation, please call with questions.

/es/ PAUL B CORNIA
Attending MD, GIMC
Signed: 04/21/2005 17:13
===================================================================
======================== END =====================================

Current Pat. Status:   Outpatient

--------------------------------------------------------------

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

TULLIS, CLINTON
16300 184TH AVE SE
RENTON, WASHINGTON   98058-0903
519224876

*P-4 of 8*

**VISTA Electronic Medical Documentation**

Printed at Seattle

*#8*                    *Page ( of )*

# Surgical Information

Packing:  NONE

Blood Loss: 0 ml                          Urine Output: 0 ml

Postoperative Mood:          SEDATED
Postoperative Consciousness:  AWAKENING
Postoperative Skin Integrity: INTACT


Sequential Compression Device: YES

Nursing Care Comments:
    see preop nursing assessment note on chart.pt verified id, npo, nkda
    operative procedure as bilateral inguinal hernia repair. pt to or bed per
    self w/ minimal assistance supine w/ pillow under head, bilateral arms
    padded and secured at sides by cook rn and tatum md. pillow under knees
    and lower legs, foam under ankles floating heels. 1gm cefazolin to
    anesthesia for preop infusion. pt hard of hearing, amplified and
    earphones used to facilitate communication. after induction, 16fr foley
    inserted w/o difficulty, balloon tested, clear yellow return to urimeter
    after balloon inflated. continues to flow clear yellow at 0830.
    ted and scd applied to bilateral legs.
    0.25% bupivicaine w/ 1:200,000 epinephrine to sterile field, 8cc
    infiltrated by surgeons.
    implants:
    davol, bard 3DMax mesh right medium 8.5cmx 13.7cm ref#0115320 lot#
    43GOD329 exp 2007-07.
    davol, bard 3DMax mesh left medium 8.5cm x 13.7cm ref#0115310 lot#
    43HOD306 exp 2007-08.


/es/ BARBARA M COOK
rn
Signed: 04/25/2005 10:02


04/28/2005 ADDENDUM                     STATUS: COMPLETED

The Anesthesia Technique(s) subfile was changed as follows:

   The following Anesthesia Technique was ADDED:
     Anesthesia Technique: GENERAL

/es/ JOYCE S HENDERSON
SUPERVISORY PROGRAM ASSISTANT
Signed: 04/28/2005 08:25
------------------------------------------------------------------------
                Addendum to NURSE INTRAOPERATIVE REPORT
------------------------------------------------------------------------
  LOCAL TITLE: Addendum

---

PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available) | **VISTA Electronic Medical Documentation**

TULLIS, CLINTON
16300 184TH AVE SE
RENTON, WASHINGTON   98058-0903          Printed at Seattle
519224876

*page 5 of 8*

# Surgical Information

Printed On Dec 22, 2008

Valid Consent/ID Band Confirmed By: COOK,BARBARA M
Mark on Surgical Site Confirmed: YES
  Marked Site Comments: NO COMMENTS ENTERED

Preoperative Imaging Confirmed:  YES
  Imaging Confirmed Comments: NO COMMENTS ENTERED

Time Out Verification Completed: YES
  Time Out Verified Comments:
  cook rn, price md, tatum md @ 0744.

Skin Prep By: COOK,BARBARA M            Skin Prep Agent: IODINE & ALCOHOL
Preop Shave By: DROESCH,JOHN

Surgery Position(s):
  SUPINE
                                        Placed: N/A

Restraints and Position Aids:
  SAFETY STRAP
                                        Applied By: N/A

Electrocautery Unit:         11
ESU Coagulation Range:       0-25
ESU Cutting Range:           0-25
Electroground Position(s): RIGHT POST THIGH

Tubes and Drains:
  none

Irrigation Solution(s):
  LACTATED RINGERS

Sponge Count Correct:      YES
Sharps Count Correct:      YES
Instrument Count Correct: NOT APPLICABLE
Counter:                   BALDWIN,GAYLE S
Counts Verified By:        COOK,BARBARA M

Dressing: Dermabond
Packing:  NONE

Blood Loss: 0 ml                        Urine Output: 0 ml

Postoperative Mood:         SEDATED
Postoperative Consciousness: AWAKENING
Postoperative Skin Integrity: INTACT

---

**PATIENT NAME AND ADDRESS (Mechanical Imprinting, if available)**

TULLIS, CLINTON
16300 184TH AVE SE
RENTON, WASHINGTON  98058-0903
519224876

**VISTA Electronic Medical Documentation**

Printed at Seattle

# Surgical Information

*preparation for Right & left lower inguinal surgery*

Printed On Dec 22, 2008

Sequential Compression Device: YES

Nursing Care Comments:
  see preop nursing assessment note on chart.pt verified id, npo, nkda
operative procedure as bilateral inguinal hernia repair. pt to or bed per
self w/ minimal assistance supine w/ pillow under head, bilateral arms
padded and secured at sides by cook rn and tatum md. pillow under knees
and lower legs, foam under ankles floating heels. 1gm cefazolin to
anesthesia for preop infusion. pt hard of hearing, amplified and
earphones used to facilitate communication. after induction, 16fr foley
inserted w/o difficulty, balloon tested, clear yellow return to urimeter
after balloon inflated. continues to flow clear yellow at 0830.
ted and scd applied to bilateral legs.
0.25% bupivicaine w/ 1:200,000 epinephrine to sterile field, 8cc
infiltrated by surgeons.
implants:
davol, bard 3DMax mesh right medium 8.5cmx 13.7cm ref#0115320 lot#
43GOD329 exp 2007-07.
davol, bard 3DMax mesh left medium 8.5cm x 13.7cm ref#0115310 lot#
43HOD306 exp 2007-08.


/es/ BARBARA M COOK
rn
Signed: 04/25/2005 10:02

04/25/2005 ADDENDUM                           STATUS: COMPLETED

The Nursing Care Comments field was changed
  >> from original Nursing Care Comments text:
    see preop nursing assessment note on chart.pt verified id, npo, nkda
operative procedure as bilateral inguinal hernia repair. pt to or bed per
self w/ minimal assistance supine w/ pillow under head, bilateral arms
padded and secured at sides by cook rn and tatum md. pillow under knees
and lower legs, foam under ankles floating heels. 1gm cefazolin to
anesthesia for preop infusion. pt hard of hearing, amplified and
earphones used to facilitate communication. after induction, 16fr foley
inserted w/o difficulty, balloon tested, clear yellow return to urimeter
after balloon inflated. continues to flow clear yellow at 0830.
ted and scd applied to bilateral legs.
0.25% bupivicaine w/ 1:200,000 epinephrine to sterile field, 8cc
infiltrated by surgeons.
implants:
davol, bard 3DMax mesh right medium 8.5cmx 13.7cm ref#0115320 lot#
43GOD329 exp 2007-07.
davol, bard 3DMax mesh left medium 8.5cm x 13.7cm ref#0115310 lot#
43HOD306 exp 2007-08.
  >> to updated Nursing Care Comments text:
    see preop nursing assessment note on chart.pt verified id, npo, nkda

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

TULLIS, CLINTON
16300 184TH AVE SE
RENTON, WASHINGTON   98058-0903
519224876

*p. 7 of 8*

**VISTA Electronic Medical Documentation**

Printed at Seattle

# Surgical Information

Printed On Dec 22, 2008

STANDARD TITLE: ADDENDUM
DATE OF NOTE: APR 28, 2005@08:25:39   ENTRY DATE: APR 28, 2005@08:25:39
   AUTHOR: HENDERSON, JOYCE S   EXP COSIGNER:
   URGENCY:
   SUBJECT: Case #: 88659                    STATUS: COMPLETED

The Anesthesia Technique(s) subfile was changed as follows:

   The following Anesthesia Technique was ADDED:
   Anesthesia Technique: GENERAL

/es/ JOYCE S HENDERSON
SUPERVISORY PROGRAM ASSISTANT
Signed: 04/28/2005 08:25

=================================================================

--- Original Document ---

04/25/05 NURSE INTRAOPERATIVE REPORT:
Operating Room: OR 3
                                          Surgical Priority: ELECTIVE
Patient in Hold: APR 25, 2005  06:56
Operation Begin: APR 25, 2005  08:12     Patient in OR: APR 25, 2005  07:35
                                         Operation End: APR 25, 2005  09:55
                                         Patient Out OR: APR 25, 2005  10:00
Major Operations Performed:              *Surgery performed*
Primary: LAPAROSCOPIC BIH REPAIR         *Plaintiff was released*
                                         *from hospital on 4/28/05*
Wound Classification: CLEAN
Operation Disposition: PACU (RECOVERY ROOM)
Discharged Via: STRETCHER

Surgeon: DROESCH, JOHN
Attend Surg: TATUM, ROGER P              First Assist: MORLOCK, ASHLEY
Anesthetist: PRICE, CHRISTINE H          Second Assist: N/A
                                         Assistant Anesth: N/A
OR Support Personnel:
   Scrubbed
   BALDWIN, GAYLE S ()                   Circulating
                                         COOK, BARBARA M ()
                                         MCISAAC, MARY K ()

Other Persons in OR:
   wedlock, lois (autosuture)

Preop Mood:       ALERT
Preop Skin Integ: INTACT                 Preop Consc:     ALERT-ORIENTED
                                         Preop Converse: N/A

---

PATIENT NAME AND ADDRESS (Mechanical imprinting, if available)

TULLIS, CLINTON
16300 184TH AVE SE
RENTON, WASHINGTON  98058-0903
519224876

*Page 8 of 8*

VISTA Electronic Medical Documentation

Printed at Seattle



EXHIBIT # 4



EXHIBIT # 4

# COLLISION CENTER

## ACCIDENT RECORD

In case of an accident, be prepared with this handy record keeper.

**COMPLIMENTS OF:**

Kurt Johnson, Manager
Cornforth-Campbell Collision Center
Corner of East Pioneer & 2nd St. S.E.
in downtown Puyallup

**PHONE:**
(253) 848-7139

**HOURS:**
Monday-Friday 8 AM-5:15 PM

Washington
Approved Auto
Body Repair

PONTIAC · BUICK · GMC
Cornforth Campbell
PUYALLUP

Draw a diagram of the accident showing the direction of the vehicles and the point of accident. Show street names and location of street signs, stop signs, lights, etc.

N
E
W
S

**OTHER VEHICLE:**
☐ Stopped in traffic
☐ Moving
☐ Legally parked

Describe any other damage or pertinent information below:

_handwritten notes:_

Sig. distctn => does not seem possible

This appears to be preparation for the future SAP for parties purchasing vehicles from Cornforth Campbell.

Plaintiff filed this exh... after proclaimer to the court.

exhibit # 1



**WESTERN WASHINGTON FAIRGROUNDS**

To Tacoma ← → River Road
Railroad
Pioneer
Meridian
2nd St. S.E.
To Tacoma Hwy. 512
N →
To Auburn Hwy. 167 →

**COLLISION CENTER**

**CORNFORTH • CAMPBELL MOTORS COLLISION CENTER**

Corner of East Pioneer & 2nd St. S.E.
in downtown Puyallup
Phone (253) 848-7139

**Cornforth Campbell Collision Center Offers:**

- Over 30 years of experience serving the paint and collision repair needs of greater Pierce County
- Computerized estimate and digital photo transmission capability to speed insurance claim handling
- I-CAR, ASE, and General Motors Trained Technicians
- AAA Approved
- Full frame and unibody repairs
- Factory original paint finishes produced in a state-of-the-art downdraft spray booth that bakes finish coatings at 145
- 4 wheel alignments to prevent premature tire wear after collision repair
- Environmentally friendly handling and recycling of all hazardous waste materials

## ACCIDENT INFORMATION

**When did the accident happen?**
Date
Time

**Where did it happen?**
Street(s)
City

**Was anyone injured?**
Pedestrian?
Your Passenger?
Other?
Name
Address

**Was there a witness?**
Name
Address

**Was there a police report taken?**
Department
Report #
Officer _____ Badge #

### THE OTHER PARTY
Name
Address
Phone
DL#
DOB
Registered owner of vehicle:

Insurance Company
Policy Number

### THE OTHER AUTO
License #
State
Year _____ Make/Model
Color
Number of passengers

## More performance when you expect it.

Most stops aren't emergencies. They're part of everyday driving, and a proportional control can make everyday driving much more enjoyable. During normal stops, inertia-activated devices sense the slower reduction in reduced forward motion. As the brakes are applied, you get smooth, gradual stopping power every time. (a)

Timed devices, on the other hand, can't sense a change in speed. Once you put your foot on the brake, they deliver full preset braking power. If a driver has a tendency to ride the brake, timed devices can cause brake pads to glaze. This decreases braking efficiency and increases brake wear. (b)





**Chart 4  An example of a typical stopping situation**

*Proportional controls stop trailers at lower speeds by applying only the amount of power required to gradually slow the trailer at the same rate as the tow vehicle.*

**stopping under control**

## Frequently asked questions (continued)

**How does the brake control operate?** It is electrically connected to the tow vehicle's battery, stop (brake) lamp circuit, and to the brakes on a trailer through the electric trailer connector. A properly-installed control activates a trailer's electric brakes each time the brakes on the tow vehicle are applied. It can also be used to apply trailer brakes independently from the tow vehicle using a manual override.

**What is a "sync" switch?** Some timed brake control manufacturers allow the driver to adjust the time required to reach full preset power output when the vehicle's brake pedal is depressed. The adjustment can range from 1 to 6 seconds.



...ne" only name in trailer brake controls

## Self-leveling proportional brake control

### PRODIGY®

*Very Best*

- Motion control technology similar to the system in guided missiles
- Consistently applies power to brakes in proportion to vehicle's deceleration
- The only inertia control that works proportionately when backing up
- Controls brakes on one- to four-axle trailers
- Constantly adjusts to varying terrains
- Exclusive boost feature for more initial braking power when towing loaded trailers
- Digital display shows voltage delivery during braking
- Continuous diagnostic program checks for proper connection and operation
- Limited lifetime warranty



*Prodigy*





15



RECEIVED
AUG 15 2011

RETURN RECEIPT
REQUESTED

PRIORITY
MAIL ®

UNITED STATES
POSTAL SERVICE ®

Visit us at usps.com

Label 107R, January 2008

7007 2560 0000 6263 4884

FROM: Christian M. Bellino
16300 - 180th Pl. S.E.
Renton, WA 98058-0903

TO: United States Bankruptcy
Court of the Honorable to
at Responsible Hamilton Custom
one bankruptcy forum
New York, New York
New York, New York 10004-1408

to out to try Video Thomas — for Judge Robert to exist

et NC — responsibility