Page 1

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

Case No. 09-50026(REG)

- - - - - - - - - - - - - - - - - - - - -x

In the Matter of:

MOTORS LIQUIDATION COMPANY, et al.,

f/k/a GENERAL MOTORS CORP., et al.

              Debtors.

- - - - - - - - - - - - - - - - - - - - -x

           United States Bankruptcy Court

           One Bowling Green

           New York, New York

           December 8, 2011

           9:35 AM

B E F O R E:

HON. ROBERT E. GERBER

U.S. BANKRUPTCY JUDGE

Page 2

1
2  Motion of the Revitalizing Auto Communities Environmental
3  Response Trust For An Order Pursuant to 11 U.S.C. Sections 105
4  and 1142 To Enforce Debtors' Payment Obligation Under the
5  Second Amended Joint Chapter 11 Plan And The Confirmation Order
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25 Transcribed by: Penina Wolicki

```
 1
 2    A P P E A R A N C E S :
 3    WEIL, GOTSHAL & MANGES LLP
 4         Attorneys for Debtors
 5         1300 Eye Street NW
 6         Suite 900
 7         Washington, DC 20005
 8
 9    BY:  DAVID R. BERZ, ESQ.
10
11
12    OFFICE OF THE ATTORNEY GENERAL
13         Environmental Protection Bureau
14         The Capitol
15         Albany, NY 12224
16
17    BY:  MAUREEN F. LEARY, AAG
18
19    CROWELL & MORING LLP
20         Attorneys for Revitalizing Auto Communities Environmental
21         Response Trust
22         590 Madison Avenue, 19th Floor
23         New York, NY 10022
24
25    BY:  MICHAEL V. BLUMENTHAL, ESQ.
```

09-50026-mg    Doc 11249    Filed 12/09/11    Entered 12/19/11 14:38:01    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 4 of 17

Page 4

```
 1                  P R O C E E D I N G S
 2            THE COURT:  General Motors, is everybody here on the
 3   9:45 or do we need to wait for people?
 4            MR. BERZ:  David Berz for the debtors.  I'll get the
 5   other parties.
 6            THE COURT:  All right.  Thank you.  Okay.  Well,
 7   Deltech is at 9:45 -- but I think GM may be short.  And if it
 8   is, I want to get that taken care of.
 9            Now, folks we're here ten minutes early on GM.  Is
10   everybody who would want to be heard on GM already here?  Can
11   you guys tell?
12            MR. BERZ:  I believe so, Your Honor, unless there are
13   people who are participating telephonically that I don't know
14   about.
15            THE COURT:  Well the only telephonic appearance I have
16   is on Adelphia.  So --
17            MR. BERZ:  We have the other parties represented by
18   counsel in here.
19            THE COURT:  Okay.  I'm aware of the stip that was
20   provided to my chambers either last night or very early this
21   morning, which seems inoffensive to me.  But I see a lot of
22   people here anyway, so help me understand where we are.
23            MR. BERZ:  Good morning, Your Honor.  David Berz;
24   Weil, Gotshal & Manges for the debtors.  We're here before you
25   this morning to essentially set up a process for resolving the
```

1   stipula -- and presenting to you a stipulation and order
2   regarding the motion of the RACER Trust that was filed last
3   week.  And the purpose of the stipulation is to set out a
4   schedule of the disposition of the dispute that doesn't impede
5   the dissolution of MLC, which is scheduled for as soon as
6   December 15th, consistent with the master sale and purchase
7   agreement of assets to what is now New GM and the plan.
8           And the stipulation has two important features.
9   First, it sequesters or sets aside money in an escrow so that
10  the money is protected, pending resolution of the dispute
11  whether by court or some other means.  And it also calls for or
12  recognizes the need to identify a, if you will, successor or
13  entity that will wind down the affairs of MLC, post-
14  dissolution.
15          We have a number of not all that significant, but
16  assets, that need to be bundled together, most likely in a
17  trust, and we'll need some entity to manage those and also be
18  responsible for overseeing how this dispute proceeds, if in
19  fact it proceeds post dissolution.
20          The stipulation you have, Your Honor, reflects an
21  agreement of the parties.  But we have tweaked it, but very
22  slightly, and we have those interlineations available.  And --
23          THE COURT:  By that, you mean since the last time I
24  saw it?
25          MR. BERZ:  Yes, since what was sent to your chambers

1  last night around 7:30 or 8 o'clock.  And the two changes are
2  really fairly straightforward.  One, there's a -- in one of the
3  where -- in the whereas clause that deals with the obligation
4  of MLC to designate a post-dissolution entity to proceed with
5  the litigation, it says that we will designate that entity or
6  person before -- on or before dissolution.
7           And the second tweak to the document is that we have
8  submitted the escrow agreement to JPMorgan Chase.  They had
9  approved one version of it, but there were some technical
10 changes to it that went to them last night.  I'm told by my
11 colleagues that they don't have a problem with them.  But the
12 current stip contemplates that it would have been issued by
13 now, so we're going to just add some language that says that
14 the stipulation is subject to an approved escrow agreement from
15 JPMorgan Chase.
16          THE COURT:  Help me understand, Mr. Berz.  As I
17 understood the stip, it said that JPMorgan would give the money
18 that it was holding in accordance to whatever the court order
19 said.  What's so complicated about that?
20          MR. BERZ:  It's not comp -- it's just the mechanics,
21 Your Honor, of getting JPMorgan to get back to us.  I don't
22 expect a problem.
23          THE COURT:  Um-hum.
24          MR. BERZ:  And we had hoped that we would hear back
25 from them yesterday, but there were some -- as I say, some

09-50026-mg   Doc 11249   Filed 12/09/11   Entered 12/19/11 14:38:01   Main Document
Pg 7 of 17
MOTORS LIQUIDATION COMPANY, ET AL.

Page 7

1  information they needed and some technical changes.

2  THE COURT:  That's all fine.  If you see a weird

3  expression on my face, it looks like this stip is the most

4  plain vanilla stip I've seen in my legal career.

5  MR. BERZ:  It is.

6  THE COURT:  And I don't understand why it engendered

7  having seven lawyers here today.

8  MR. BERZ:  I can only speak for myself as responsible

9  for putting it on the record, Your Honor.

10  THE COURT:  Okay.  Anybody else want to be heard on

11  this?

12  MR. BLUMENTHAL:  Your Honor, Michael Blumenthal from

13  Crowell & Moring.  We represent the RACER, which is the

14  Revitalizing Auto Communities Environmental Response Trust,

15  formally known as the Environmental Response Trust.

16  Your Honor, these negotiations for adjourning the

17  hearing and entering into the stipulation have proceeded over

18  the last week.  We -- the one thing we would do is change

19  paragraph 4, as Mr. Berz has indicated, to reflect that the

20  escrow agreement is -- it would be under the terms of an escrow

21  agreement to be entered into MLC, RACER and JPMorgan Chase,

22  which we would hope would be today.

23  Assuming that there are no glitches with JPMorgan

24  Chase accepting the escrow agreement that has been agreed upon

25  between my firm and Weil, and submitted to JPMorgan yesterday,

09-50026-mg    Doc 11249    Filed 12/09/11    Entered 12/19/11 14:38:01    Main Document
Pg 8 of 17
MOTORS LIQUIDATION COMPANY, ET AL.

Page 8

1  I believe the stip and order that we've submitted to you, which
2  we would just mark up to reflect the comments on the record,
3  would be effective.  The only thing I would ask, Your Honor --
4  I agree that it is plain vanilla.  I can't imagine JPMorgan
5  Chase having any problems with it.
6          THE COURT:  I mean, if you want to deposit the money
7  in court, I'm fine with that as well.  Are they getting paid
8  for holding this money and for complying with a court order?
9          MR. BLUMENTHAL:  There is an administrative fee, Your
10 Honor, that MLC has agreed to pay the first year.  If this goes
11 on beyond that, which I would hope would not be the case, then
12 RACER would pay those administrative fees.
13         We had frankly suggested at one point depositing it to
14 the court.  It was preferred that -- by MLC that an escrow
15 arrangement be set up.  We really had no problems.  I had
16 volunteered that the monies could be put into my IOLA account,
17 subject to directive from Your Honor on a court order.  As long
18 as the money -- and 13.6 million will be deposited in escrow --
19 is in escrow, we're okay with the adjournments that are set
20 forth with a hearing date early February.
21         What I would ask Your Honor, is that if for whatever
22 reason, an acceptable escrow agreement's not worked out, that
23 we have a holding date for -- I don't know what your schedule
24 is next Tuesday -- where we could come down here and then
25 request you to order the money be put into either my firm's

09-50026-mg    Doc 11249    Filed 12/09/11    Entered 12/19/11 14:38:01    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 9 of 17

Page 9

1  IOLA account or the court -- or deposited with the court.  I
2  hope there won't be any further problems with this arrangement.
3           THE COURT:  All right.  Anybody else want to be heard?
4           Ms. Leary, good morning.
5           MS. LEARY:  Good morning, Your Honor.  Maureen Leary
6  on behalf of the State of New York.  My colleague John
7  Dickenson from the State of New Jersey, just arrived.  The PATH
8  trains were down, so he's -- I'm apologizing for his brief
9  lateness.  I --
10          THE COURT:  Well, actually, he's five minutes early.
11          MS. LEARY:  We started early.  And as Your Honor
12 knows, and I appreciate your courtesies in allowing the Court
13 (sic) to file its papers late.  And I understand you need an
14 electronic copy of the motion, and I will certainly get that to
15 you.
16          I'm not going to second guess the trustee here, but I
17 bring to the Court really what the states have been looking at
18 from the sidelines.  And I really want to try to shed some
19 light on our perspective in what's going on here, because
20 there's a lot of questions that remain unanswered.  I'm not
21 sure the stipulation is --
22          THE COURT:  Pause please, Ms. Leary.  I understand the
23 underlying controversy.  But I have more difficulty
24 understanding what is such a big deal about teeing up the
25 matter for a judicial decision and just taking the disputed

09-50026-mg   Doc 11249   Filed 12/09/11   Entered 12/19/11 14:38:01   Main Document
Pg 10 of 17
MOTORS LIQUIDATION COMPANY, ET AL.

Page 10

1   amount in controversy and throwing it in a pot, subject to
2   further court order.  Is that what you're addressing, or are
3   you trying to give me a preview for matters that are going --
4           MS. LEARY:  No.
5           THE COURT:  -- to be litigated sometime down the road?
6           MS. LEARY:  I don't think it would be fair to go to
7   the merits today.  So I'm not necessarily going to do that.  I
8   really would like sort of some answers of the Court to see if
9   we can get some answers.  I have -- we have not really been a
10  party to any of this.  But we do see, as I set forth, some
11  level of dollars being spent from the trust, that are frankly
12  quite scarce.
13          And the trustee has been forced to do that because of
14  the dispute, and in good faith, has done it.  And I -- when I
15  heard about a stipulation, I was very excited, but then I found
16  out it was just a stipulation to punt.  And I wasn't that
17  excited about that, because what that entails is more
18  litigation, another entity, more expense, more complications.
19  And frankly, I see potentially, a mess at this Court's door,
20  and -- that involves everybody, and lots of lawyers and so
21  forth.
22          So you know, I just looked at this -- I had to go in
23  the office this morning at 5:30 because this stipulation came
24  in at 8 last night.  And now I don't even have the most recent
25  version.  But it would be great if I did.

09-50026-mg    Doc 11249    Filed 12/09/11    Entered 12/19/11 14:38:01    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 11 of 17

Page 11

```
 1           The biggest thing, I look at this and see that you
 2   know, a) you don't have the escrow agreement; but there's a
 3   party or parties that are interested in opposing the motion.  I
 4   don't understand what that means.  It might mean that there's
 5   going to be a new entity created that will oppose the motion or
 6   respond to it or negotiate or something.  I'm not really clear
 7   on what that means.
 8           And frankly, does the plan envision the creation of
 9   another entity if the debtor -- does it authorize that, if the
10   debtor hasn't wrapped things up?  And then I see a big push
11   into 2012, potentially all during that year for this to be
12   litigated before the trust ever gets its money.
13           So I'm puzzled about this, and really don't know how
14   long it takes.  And I'm just really interested, on behalf of
15   the states, in protecting the trust and in getting some level
16   of efficiency.  If we need the Court to decide the motion,
17   let's do it.  Let's do it and be done with it, get the appeals.
18   You know, it doesn't seem to make a lot of sense to me to
19   unnecessarily complicate this.
20           And that's really, you know, sort of the nuts and
21   bolts.  There is a prejudice to the trust.  I can tell you that
22   there -- when we entered into the consent decree, we had an
23   expectation.  It's clear to me that there's a question about
24   whether that expectation was met, whether we get got the
25   benefit of the bargain.  That clearly goes to the merits, but
```

09-50026-mg    Doc 11249    Filed 12/09/11    Entered 12/19/11 14:38:01    Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 12 of 17

Page 12

1    there's so little money in the trust anyway that it needs more

2    protection than this may necessarily do.

3             This is up to the trustee.  But I bring the states'

4    perspective today because of the fact that there's really very

5    little money to do the job.  It's not as if the federal

6    taxpayer will be stuck at the end of the day when the trust is

7    exhausted.  The states will have to take on that task of

8    monitoring, maintenance, operation, or whatever remedial work

9    is not done.

10            So I'm really trying to protect the dollars, and

11   that's essentially what I would hope ultimately will happen.

12   If we're here in January and February and March, and all the

13   lawyers in the room, this Court will see the kind of

14   expenditure that the trust is being forced to make, that I'm

15   not sure was really necessary, particularly, in my view, that

16   it would be very easy to have this Court issue a decision in a

17   straightforward way before dissolution.

18            I'm not saying they don't get to respond.  That -- but

19   I think that they've had more than enough time.  And I'm

20   frankly surprised that it took until this morning to actually

21   get -- two and a half weeks it takes to get a stipulation just

22   to adjourn.  Can you imagine what the negotiations are going to

23   look like to try to get the money itself?  And I hope the

24   parties try to do that rather than litigating it.  But, you

25   know, it seems unnecessarily complicated, Your Honor.  And

09-50026-mg   Doc 11249   Filed 12/09/11   Entered 12/19/11 14:38:01   Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 13 of 17

Page 13

```
 1   thank you for your courtesies.
 2                THE COURT:  Okay.  All right.  Anybody else want to be
 3   heard?
 4                All right.  The short answer is, the stip is approved.
 5   The thirteen million bucks will be put into an escrow, and if
 6   it can't be put into an escrow, I'll take it in the court
 7   registry or it might even be simpler, since I'm confident that
 8   any lawyer who appears in this court, if he takes money in his
 9   IOLA account, subject to an order of the Court, is going to
10   comply with an order of the Court.
11                I'm surprised that we're going through all this shtus
12   to put the money in a pot pending a further court order or that
13   a bank is being paid for it, but if you want to do it that way,
14   I guess I don't care.  Just get it done.  And if you can't get
15   it done by Tuesday, I'll deal with this by conference call.
16   But I think we've spent too much time and money on this
17   already, folks.
18                Now the more important issue is teeing it up for a
19   judicial determination.  And consistent with the comments that
20   Ms. Leary made on behalf of New York and I suspect other AGs
21   who share her views, if you can't get this matter resolved, I
22   want it litigated or otherwise teed up for judicial
23   determination as cheaply and efficiently as possible.
24                Okay?  Anything else?
25                MR. BLUMENTHAL:  Your Honor, in that regard, I assume
```

09-50026-mg Doc 11249 Filed 12/09/11 Entered 12/19/11 14:38:01 Main Document
MOTORS LIQUIDATION COMPANY, ET AL.
Pg 14 of 17

Page 14

1  that we will hopefully not need you on Tuesday.  Could we have
2  an early February hearing date, Your Honor?
3            THE COURT:  I imagine.  I don't know if I can do that
4  without my courtroom deputy here.  Oh, wait.  A day has been
5  set for GM on February 9th for some other GM stuff.
6            Mr. Berz, you're not one of the GM folks who regularly
7  appears before me.  Can you speak to your colleagues in terms
8  of what other demands they're going to put on for me on
9  February 9th?
10           MR. BERZ:  When this started, everyone thought I would
11 be the one in front of you the most over the course of this
12 proceeding, because I had the responsibility with regard to the
13 trust --
14           THE COURT:  I'm not talking about this proceeding, I'm
15 talking about --
16           MR. BERZ:  -- but I -- if it's --
17           THE COURT:  -- everything else in the GM case.
18           MR. BERZ:  -- yes, I understand that.  The 9th, I
19 suspect the 9th will work.
20           THE COURT:  All right.  You can have February 9th.
21           Now, I'm going -- this is a contested matter, if I
22 recall?  Nobody bothered to bring on an adversary proceeding?
23 I'm not sure if an adversary proceeding would have been
24 required.
25           Under my case management order, I still require

```
 1   declarations in lieu of direct in advance; designations of
 2   documents and any deposition testimony.  I would have thought
 3   that this would be done on undisputed facts.  But if it can't
 4   be, then you're going to have to get all of your discovery done
 5   between now and then.  And you're going to have to tell me how
 6   much time I have to reserve for cross.  Okay?
 7            I won't require a pre-trial order.  I don't think this
 8   is all that complicated.  Okay.  Anything else?
 9            MR. BERZ:  Thank you.
10            THE COURT:  All right, have a good day.
11       (Whereupon these proceedings were concluded at 9:53 AM)
```

Page 16

**I N D E X**

**RULINGS**

|  | Page | Line |
|---|---|---|
| Stipulation between Motors Liquidation and RACER is approved | 13 | 4 |

C E R T I F I C A T I O N

I, Penina Wolicki, certify that the foregoing transcript is a true and accurate record of the proceedings.

*Penina Wolicki*

Digitally signed by Penina Wolicki
DN: cn=Penina Wolicki, o, ou, email=digital1@veritext.com, c=US
Date: 2011.12.09 12:57:51 -05'00'

_____

**PENINA WOLICKI**

AAERT Certified Electronic Transcriber CET**D-569

Veritext

200 Old Country Road

Suite 580

Mineola, NY 11501

Date:   December 9, 2011