# EXHIBIT 1

CHARTIS SPECIALTY INSURANCE COMPANY

(A Capital Stock Company, herein called the Company)

175 Water Street

New York, NY 10038

## STORAGE TANK THIRD-PARTY LIABILITY, CORRECTIVE ACTION AND CLEAN-UP COSTS POLICY

### DECLARATIONS

**THIS IS A CLAIMS-MADE AND REPORTED POLICY. PLEASE READ CAREFULLY.**

NOTE:  ALL TAXES ARE THE RESPONSIBILITY OF THE NAMED INSURED AND THE INSURANCE BROKER.  THE NAMED INSURED IS ADVISED TO SEEK PROFESSIONAL ADVICE REGARDING ANY AND ALL TAXES, INCLUDING (BUT NOT LIMITED TO) SURPLUS LINES PREMIUM TAX AND STAMPING OFFICE FEES (IF ANY).

NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK
AND IS NOT SUBJECT TO ITS SUPERVISION

POLICY NUMBER:      7146278

RENEWAL NUMBER:      0907326

Item 1. NAMED INSURED:  **Motors Liquidation Company**

ADDRESS:   **500 Renaissance Center**
**Detroit, MI  48243**

Item 2.    POLICY PERIOD:   **FROM 04/01/2010 TO 04/01/2011**
12:01 AM Standard Time at the Address of the Named Insured shown above

Item 3.    LIMIT OF LIABILITY: $**1,000,000** EACH INCIDENT LIMIT
$**2,000,000** AGGREGATE LIMIT

Item 4.    DEDUCTIBLE:    $**1,000,000** EACH INCIDENT

Item 5.     COVERED STORAGE TANK SYSTEM(S): See Storage Tank Schedule

Item 6.    RETROACTIVE DATE:   **09/01/1989**

Item 7.    POLICY PREMIUM:   $ Per Policy and Funding Schedule Indemnity

Item 8.    FORMS, ENDORSEMENTS AND SCHEDULES ATTACHED TO THIS POLICY: 81051 (08/04), 86250 (07/04), 81017 (10/02), Underground Storage Tank Schedule-Endt. #1, Above Ground Storage Tank Schedule-Endt. #2, 89644 (07/05), Additional Insured Endorsement-Endt. #3

NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION

BROKER:     Aon Risk Services, Inc. of MI
            3000 Town Center, Ste. 3000
            P.O. Box 5156
            Southfield, MI 48075
            Producer Code: 7431

By _____
        AUTHORIZED REPRESENTATIVE
    Or countersignature (in states where applicable)

8   51 (08/04)                Copyright, American International Group, Inc., 2002
CI2555

**NOTICE: THIS INSURER IS NOT LICENSED IN THE STATE OF NEW YORK AND IS NOT SUBJECT TO ITS SUPERVISION**

AMERICAN INTERNATIONAL COMPANIES®

**Chartis Specialty Insurance Company**

**STORAGE TANK THIRD-PARTY LIABILITY, CORRECTIVE ACTION AND CLEAN-UP COSTS POLICY**

**NOTICE: THIS IS A CLAIMS-MADE-AND-REPORTED POLICY. PLEASE READ CAREFULLY. ADDITIONALLY, THIS POLICY HAS CERTAIN PROVISIONS AND REQUIREMENTS UNIQUE TO IT AND MAY BE DIFFERENT FROM OTHER POLICIES THE INSURED MAY HAVE PURCHASED. DEFINED TERMS, OTHER THAN HEADINGS, APPEAR IN BOLD FACE TYPE.**

**THE DESCRIPTIONS IN ANY HEADINGS OR SUB-HEADINGS OF THIS POLICY ARE INSERTED SOLELY FOR CONVENIENCE AND DO NOT CONSTITUTE ANY PART OF THE TERMS OR CONDITIONS HEREOF.**

In consideration of the payment of the premium, in reliance upon the statements in the Declarations and the Application, annexed hereto and made a part of this Policy or, if not annexed hereto, which are deemed to be annexed hereto and made a part of this Policy, and pursuant to all of the terms of this Policy, the Company agrees with the **Named Insured** as follows:

I.   **INSURING AGREEMENT**

   1.  **COVERAGES:**

   COVERAGE A - THIRD PARTY BODILY INJURY AND PROPERTY DAMAGE DUE TO A STORAGE TANK RELEASE

   To pay on behalf of the **Insured**, **Loss** that the **Insured** becomes legally obligated to pay as a result of **Claims** for **Bodily Injury** or **Property Damage** resulting from **Pollution Conditions** from a covered **Storage Tank System**, provided such **Claims** are first made against the **Insured** and reported to the Company in writing during the **Policy Period** or during the **Extended Reporting Period**, if applicable. The **Pollution Condition** must commence on or after the Retroactive Date as shown in Item 6 of the Declarations.

   **COVERAGE B - CLEAN-UP COSTS OR CORRECTIVE ACTION DUE TO A STORAGE TANK RELEASE**

   To pay on behalf of the **Insured**, **Clean-Up Costs** or **Corrective Action** that the **Insured** becomes legally obligated to pay as a result of a **Confirmed Release** from a covered **Storage Tank System**, provided such **Confirmed Release** is first reported to the Company in writing during the **Policy Period** or during the **Extended Reporting Period**, if applicable. The **Pollution Condition** must commence on or after the Retroactive Date as shown in Item 6 of the Declarations.

   2.  **DEFENSE:**

   The Company shall have the right and duty to defend any **Claims** covered under Coverage A or any civil or administrative proceedings or suits which seek to impose a legal obligation upon the **Insured** to undertake **Clean-Up Costs** or **Corrective Action** for a **Confirmed Release** to which Coverage B applies. The Company's duty to defend or continue defending any such **Claims**, civil or administrative proceedings or suits and to pay any **Loss**, **Corrective Action**, **Clean-Up**

86250 (7/04)
CI2326

1

**Costs** or defense costs, charges and expenses, shall cease once the applicable limit of liability, as described in Section **V. LIMITS OF LIABILITY AND DEDUCTIBLE**, has been exhausted.

### 3. INDEPENDENT COUNSEL:

In the event the **Insured** is entitled by law to select independent counsel to defend the **Insured** at the Company's expense, the attorney fees and all other litigation expenses the Company must pay to that counsel are limited to the rates the Company would actually pay to counsel that the Company retains in the ordinary course of business in the defense of similar **Claims** in the community where the **Claim** arose or is being defended.

Additionally, the Company may exercise the right to require that such counsel have certain minimum qualifications with respect to their competency, including experience in defending **Claims** similar to the one pending against the **Insured**, and to require such counsel to have errors and omissions insurance coverage. As respects any such counsel, the **Insured** agrees that counsel will timely respond to the Company's request for information regarding the **Claim**. The **Insured** may at any time, by its signed consent, freely and fully waive its right to select independent counsel.

### 4. SETTLEMENT:

The Company will present any settlement offers to the **Insured**, and if the **Insured** refuses to consent to any settlement within the limits of liability of this Policy recommended by the Company and acceptable to the claimant, the Company's duty to defend the **Insured** shall then cease and the **Insured** shall thereafter negotiate or defend such **Claim** independently of the Company and the Company's liability shall not exceed the amount, less the Deductible or any outstanding Deductible balance, for which the **Claim** could have been settled if such recommendation was consented to.

## II. EXCLUSIONS

### 1. COMMON EXCLUSIONS - APPLICABLE TO ALL COVERAGES:

This Policy does not apply to **Claims**, **Clean-Up Costs** or **Corrective Action**, or **Loss**:

#### A. CRIMINAL FINES, PENALTIES, AND ASSESSMENTS:

Due to any criminal fines, criminal penalties or criminal assessments.

#### B. CONTRACTUAL LIABILITY:

Arising from liability of others assumed by the **Insured** under any contract or agreement, unless the liability of the **Insured** would have attached in the absence of such contract or agreement or the contract or agreement is an **Insured Contract**.

#### C. INTENTIONAL NONCOMPLIANCE:

Arising from **Pollution Conditions** based upon or attributable to any **Responsible Insured's** intentional, willful or deliberate noncompliance with any statute, regulation including those set forth in Title 40 of the Code of Federal Regulations, ordinance, administrative complaint, notice of violation, notice letter, executive order, or instruction of any governmental agency or body.

86250 (7/04)
CI2326

**D. INTERNAL EXPENSES:**

For costs, charges or expenses incurred by the **Insured** for goods supplied or services performed by the staff or salaried employees of the **Insured**, or its parent, subsidiary or affiliate, except if in response to an emergency or pursuant to **Environmental Laws** that require immediate remediation of **Pollution Conditions**, or unless such costs, charges or expenses are incurred with the prior written approval of the Company in its sole discretion.

**E. INSURED vs. INSURED:**

Arising from a **Claim** brought by any **Insured** against any other person or entity who is also an **Insured** under this Policy. This exclusion does not apply to **Claims** initiated by third parties or **Claims** that arise out of an indemnification given by one **Named Insured** to another **Named Insured** in an **Insured Contract**.

**F. EMPLOYER LIABILITY:**

Arising from **Bodily Injury** to an **Insured** or its parent, subsidiary or affiliate arising out of and in the course of employment by the **Insured** or its parent, subsidiary or affiliate. This exclusion applies whether the **Insured** may be liable as an employer or in any other capacity and to any obligation to share damages with or repay third parties who must pay damages because of the injury.

**G. PRIOR KNOWLEDGE/NON-DISCLOSURE:**

Arising from **Pollution Conditions** existing prior to the **Inception Date** and known by a **Responsible Insured** and not disclosed in the application for this Policy, or any previous policy for which this Policy is a renewal thereof.

**H. COST TO CONFIRM A RELEASE FROM A STORAGE TANK SYSTEM:**

For any costs, charges or expenses incurred to investigate or certify that a **Confirmed Release** has taken place.

**I. COST TO REPAIR, REPLACE OR UPGRADE A STORAGE TANK SYSTEM:**

For any costs arising out of the reconstruction, repair, replacement, upgrading or rebuilding of any **Storage Tank System** or for any other improvements, site enhancements or routine maintenance on, within or under the site at which **Storage Tank Systems** are located.

**J. DIVESTED STORAGE TANK SYSTEMS OR SITES:**

Arising from **Pollution Conditions** or **Confirmed Release**s which commence after the date that a covered **Storage Tank System,** or the site at which the **Storage Tank System** is located, is sold, given away, abandoned, or subleased, unless the sublease has been approved in writing by the underwriter prior to the commencement of the sublease.

**K. STORAGE TANK SYSTEM CONTENTS:**

1. Arising from physical injury, including but not limited to contamination, of the contents of a **Storage Tank System**; or

2. Arising out of **Property Damage** due to physical injury, including but not limited to contamination, of the contents of a **Storage Tank System**; or

86250 (7/04)
CI2326

3

3. For any costs arising out of the removing, replacing or recycling of the contents of any **Storage Tank System**.

### L. WAR

Arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

## III. NOTICE REQUIREMENTS AND CLAIM PROVISIONS

The **Insured** shall provide the Company with notice of **Confirmed Release**, **Claim** and **Pollution Conditions**, as follows:

1. In the event of a **Confirmed Release**, **Claim** or **Pollution Condition**, the **Insured** shall give written notice to:

   Manager, Pollution Insurance Products Unit
   AIG Technical Services, Inc.
   Environmental Claims Department
   101 Hudson St. - 31st Floor
   Jersey City, NJ 07302
   Fax:  201-631-5051
   or other address(es) as substituted by the Company in writing.

2. The **Insured** shall give written notice of **Claims**, a **Confirmed Release** or **Pollution Conditions** as soon as possible, but in any event during the **Policy Period** or during the **Extended Reporting Period**, if applicable. Notice under all coverages shall include, at a minimum, information sufficient to identify the **Named Insured**, the **Storage Tank System**, the names of persons with knowledge of the **Pollution Conditions** and all known and reasonably obtainable information regarding the time, place, cause, nature of and other circumstances of the **Pollution Conditions**. The **Insured** shall forward the following to the Company as soon as possible:

   (a) All reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the claimant(s) and available witnesses;
   (b) All correspondence between the **Insured** and any third party Claimant, including but not limited to any **Implementing Agency**; and all demands, summonses, notices or other process or papers filed with a court of law, administrative agency, **Implementing Agency** or an investigative body; and
   (c) Other information in the possession of the **Insured** or its hired experts which the Company reasonably deems necessary.

86250 (7/04)
CI2326

## IV. RIGHTS OF THE COMPANY AND DUTIES OF THE INSURED IN THE EVENT OF POLLUTION CONDITIONS

### A. The Company's Rights

The Company shall have the right but not the duty to clean up or mitigate **Pollution Conditions** upon receiving notice as provided in Section **III**. of this Policy. Any sums expended in taking such action by the Company will be deemed incurred or expended by the **Insured** and shall be applied against the limits of liability and deductible under this Policy.

### B. Duties of the Insured

The **Named Insured** shall have the duty to clean up **Pollution Conditions** to the extent required by **Environmental Laws**, by retaining competent professional(s) or contractor(s) mutually acceptable to the Company and the **Named Insured**. The Company shall have the right but not the duty to review and approve all aspects of any such clean-up. The **Named Insured** shall notify the Company of actions and measures taken pursuant to this Paragraph.

## V. LIMITS OF LIABILITY AND DEDUCTIBLE

Regardless of the number of **Claims**, Claimants, **Confirmed Releases**, **Pollution Conditions** or **Insureds** under this Policy, the following limits of liability apply:

### A. Coverage A and B Aggregate

The Company's total liability for all **Loss** covered under Coverage A and **Clean-Up Costs** and **Corrective Action** covered under Coverage B shall not exceed the "Aggregate Limit" stated in Item 3 of the Declarations.

### B. Each Incident Limit

Subject to Paragraph V.A. above, the most the Company will pay for all **Loss** and **Clean-Up Costs** and **Corrective Action** arising from the same, related or continuous **Pollution Conditions** is the "Each Incident" limit of coverage stated in Item 3 of the Declarations. "Each Incident" as used within this Policy shall mean each same, related or continuous **Pollution Condition**.

### C. Related Claims

1. If the **Insured** first reports a **Claim**, **Confirmed Release** or discovers **Pollution Conditions** during the **Policy Period** and reports them to the Company in accordance with Section III., all continuous or related **Pollution Conditions** reported to the Company under a subsequent policy issued by the Company or its affiliate providing substantially the same coverages as this Policy shall be deemed to have been first discovered and reported during this **Policy Period** and shall be subject to the same Limit of Liability.

2. All **Claims** and reports of **Confirmed Releases** made during one or more policy periods issued by the Company or its affiliate providing substantially the same coverages, resulting in **Loss**, or **Clean-Up Costs** or **Corrective Action**, or in any combination thereof, and arising out of the same,  or continuous or related **Pollution Conditions**, shall be considered one incident and will be subject to the same Limit of Liability. Such **Claims** or reports of **Confirmed Releases** shall be deemed first reported to the Company during the policy period in which the first such **Claim** or report of **Confirmed Release** was reported to the Company or an affiliate and will be subject to the Limit of Liability applicable to that policy period.

86250 (7/04)
CI2326

5

D. **Deductible**

Subject to Paragraphs V. A.. and V. B. above, this Policy will pay **Clean-Up Costs, Corrective Action** or **Loss** in excess of the Deductible amount stated in Item 4 of the Declarations up to but not exceeding the applicable "Each Incident" limit of coverage.

The **Insured** shall promptly reimburse the Company for advancing any element of **Clean-Up Costs** or **Corrective Action** or **Loss** falling within the Deductible.

## VI. CONDITIONS

A. **Assignment** - This Policy may be assigned with the prior written consent of the Company, which consent shall not be unreasonably withheld or delayed. Assignment of interest under this Policy shall not bind the Company until its consent is endorsed thereon.

B. **Subrogation** - In the event of any payment under this Policy, the Company shall be subrogated to all the **Insured's** rights of recovery therefor against any person or organization and the **Insured** shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights including without limitation, assignment of the **Insured's** rights against any person or organization who caused **Pollution Conditions** on account of which the Company made any payment under this Policy. The **Insured** shall do nothing to prejudice the Company's rights under this Paragraph subsequent to **Loss**.

Any recovery as a result of subrogation proceedings arising out of the payment of **Loss, Clean-Up Costs** or **Corrective Action** covered under this Policy shall accrue first to the **Insured** to the extent of any payments in excess of the limit of coverage; then to the Company to the extent of its payment under the Policy; and then to the **Insured** to the extent of its Deductible. Expenses incurred in such subrogation proceedings shall be apportioned among the interested parties in the recovery in the proportion that each interested party's share in the recovery bears to the total recovery.

C. **Cooperation** - The **Insured** shall cooperate with the Company and offer all reasonable assistance in the investigation and defense of **Claims** under the applicable Coverages purchased. The Company may require that the **Insured** submit to examination under oath, and attend hearings, depositions and trials. In the course of investigation or defense, the Company may require written statements or the **Insured's** attendance at meetings with the Company. The **Insured** must assist the Company in effecting settlement, securing and providing evidence and obtaining the attendance of witnesses.

D. **Changes** - Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this Policy or estop the Company from asserting any rights under the terms of this Policy; nor shall the terms of this Policy be waived or changed, except by endorsement issued by the Company to form a part of this Policy.

E. **Voluntary Payments** - No **Insured** shall voluntarily enter into any settlement, or make any payment or assume any obligation unless in response to an emergency or pursuant to **Environmental Laws** that require immediate remediation of **Pollution Conditions**, without the Company's consent which shall not be unreasonably withheld, except at the **Insured's** own cost.

F. **Concealment or Fraud** - This entire Policy shall be void if, whether before or after **Clean-Up Costs** or **Corrective Action** are incurred or a **Claim** is first made, the **Named Insured** has willfully concealed or misrepresented any fact or circumstance material to the granting of

86250 (7/04)
CI2326

coverage under this Policy, including but not limited to, the description of the **Storage Tank System**, or the interest of the **Insured** therein.

**G. Cancellation** - This Policy may be cancelled by the **Named Insured** by surrender thereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. This Policy may be cancelled by the Company only for the reasons stated below by mailing to the **Named Insured** at the address shown in the Policy, written notice stating when, not less than 60 days (15 days for nonpayment of premium or material misrepresentation by the **Insured**), thereafter such cancellation shall be effective. Proof of mailing of such notice shall be sufficient proof of notice.

1. Material misrepresentation by the **Insured**;

2. The **Insured's** failure to comply with the material terms, conditions or contractual obligations under this Policy, including failure to pay any premium when due;

3. A change in operations at a facility containing a **Storage Tank System** during the **Policy Period** that materially increases a risk covered under this Policy.

The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the **Policy Period**. Delivery of such written notice either by the **Named Insured** or by the Company shall be equivalent to mailing. If the **Named Insured** cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the Company cancels, earned premium shall be computed pro-rata. Premium adjustment may be either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

**H. Other Insurance** - If other valid and collectible insurance or funds from any **Tank Fund** are available to the **Insured** for **Loss, Clean-Up Costs** or **Corrective Action** covered by this Policy, the **Insured** shall promptly, upon the request of the Company, provide the Company with copies of all such policies or fund documentation. The Company's obligations are limited as follows:

1. Except as set forth in subparagraph 3. of this Paragraph, this insurance is primary, and the Company's obligations are not affected unless any of the other insurance is also primary. In that case, the Company will share with all such other insurance by the method described in Paragraph 2. below.

2. If all of the other insurance permits contribution by equal shares, the Company will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first. If any of the other insurance does not permit contribution by equal shares, the Company will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

3. This insurance shall apply as excess insurance over any **Tank Fund**, provided that in the event of the receivership, insolvency, or inability to pay of any state fund or program, this insurance shall act as primary insurance. Where this insurance is excess, the Company will pay only its share of the amount of **Loss, Clean-Up Costs** or **Corrective Action,** if any, that exceeds the total amount available through the **Tank Fund**.

86250 (7/04)
CI2326

7

**I. Right of Access and Inspection** – To the extent the **Insured** has such rights, any of the Company's authorized representatives shall have the right and opportunity but not the obligation to interview persons employed by the **Insured** and to inspect at any reasonable time, during the **Policy Period** or thereafter, the **Storage Tank System** or the site at which the **Storage Tank System** is located. Neither the Company nor its representatives shall assume any responsibility or duty to the **Insured** or to any other party, person or entity, by reason of such right or inspection. Neither the Company's right to make inspections, sample and monitor, nor the actual undertaking thereof nor any report thereon shall constitute an undertaking on behalf of the **Insured** or others, to determine or warrant that property or operations are safe, healthful or conform to acceptable engineering practices or are in compliance with any law, rule or regulation. The **Named Insured** agrees to provide appropriate personnel to assist the Company's representatives during any inspection.

**J. Access to Information** - The **Named Insured** agrees to provide the Company with access to any information developed or discovered by the **Insured** concerning **Loss, Clean-Up Costs** or **Corrective Action**, or **Pollution Conditions** covered under this Policy, whether or not deemed by the **Insured** to be relevant to such **Loss, Clean-Up Costs** or **Corrective Action**, or **Pollution Conditions** and to provide the Company access to interview any **Insured** and review any documents of the **Insured**.

**K. Representations** – By acceptance of this Policy, the **Named Insured** agrees that the statements in the Declarations, the Application and, if applicable, the Report/Worksheet are their warranties, agreements and representations, that this Policy is issued in reliance upon the truth of such warranties, agreements and representations and that this Policy embodies all agreements existing between the **Insured** and the Company or any of its agents relating to this insurance.

**L. Action Against Company** - No third-party action shall lie against the Company, unless as a condition precedent thereto there shall have been full compliance with all of the terms of this Policy, nor until the amount of the **Insured's** obligation to pay shall have been finally determined either by judgment against the **Insured** after actual trial or by written agreement of the **Insured**, the claimant and the Company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this Policy to the extent of the insurance afforded by the Policy. No person or organization shall have any right under this Policy to join the Company as a party to any action against the **Insured** to determine the **Insured's** liability, nor shall the Company be impleaded by the **Insured** or his legal representative. Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate shall not relieve the Company of any of its obligations hereunder.

**M. Arbitration** - It is hereby understood and agreed that all disputes or differences that may arise under or in connection with this Policy, whether arising before or after termination of this Policy, including any determination of the amount of **Loss**, may be submitted to the American Arbitration Association ("AAA") under and in accordance with the United States Arbitration Act (9 U.S.C.) and the then prevailing commercial arbitration rules of the AAA. The arbitrators shall be chosen in the manner and within the time frames provided by such rules. If permitted under such rules, the arbitrators shall be three disinterested individuals having knowledge of the legal, corporate management, or insurance issues relevant to the matters in dispute.

Any party may commence such arbitration proceeding and the arbitration shall be conducted in the **Insured's** state of domicile. The arbitrators shall give due consideration to the general principles of the law of the **Insured's** state of domicile in the construction and interpretation of the provisions of this Policy; provided, however, that the terms, conditions, provisions

86250 (7/04)
CI2326

and exclusions of this Policy are to be construed in an evenhanded fashion as between the parties. Where the language of this Policy is alleged to be ambiguous or otherwise unclear, the issue shall be resolved in the manner most consistent with the relevant terms, conditions, provisions or exclusions of the Policy (without regard to the authorship of the language, the doctrine of reasonable expectation of the parties and without any presumption or arbitrary interpretation or construction in favor of either party or parties, and in accordance with the intent of the parties).

The written decision of the arbitrators shall set forth its reasoning, shall be provided simultaneously to both parties and shall be binding on them. The arbitrators' award shall not include attorney fees or other costs. Judgment on the award may be entered in any court of competent jurisdiction. Each party shall bear equally the expenses of the arbitration.

**N. Service of Suit** - It is agreed that in the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the **Insured**, will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Counsel, Legal Department, Chartis Specialty Insurance Company, 175 Water Street, New York, New York 10038, or his or her representative, and that in any suit instituted against the Company upon this contract, the Company will abide by the final decision of such court or of any appellate court in the event of any appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, other officer specified for that purpose in the statute, or his or her successor or successors in office as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf on the **Named Insured** or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above named Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**O. Acknowledgment of Shared Limits** – By acceptance of this Policy, the **Named Insureds** understand, agree and acknowledge that the Policy contains an Aggregate Limit that is applicable to, and will be shared by, all **Named Insureds** and all other **Insureds** who are or may become insured hereunder. In view of the operation and nature of this shared Aggregate Limit, the **Named Insureds** and all other **Insureds** understand and agree that prior to filing a **Claim** or reporting a **Confirmed Release** under the Policy, the Aggregate Limit may be exhausted or reduced by prior payments for other **Claims, Clean-Up Costs** or **Corrective Action** under the Policy.

**P. Separation of Insureds** - It is hereby agreed that except with respect to the Limit of Liability, Section II. E. (Insured vs. Insured exclusion), and any rights and duties specifically assigned to the first **Named Insured,** this insurance applies:

1. As if each **Named Insured** were the only **Named Insured**; and

2. Separately to each **Named Insured** against whom a **Claim** is made.

Misrepresentation, concealment, breach of a term or condition, or violation of any duty under this Policy by one **Named Insured** shall not prejudice the interest of coverage for another **Named Insured** under this Policy. Provided, however, that this Condition shall not

86250 (7/04)
CI2326

apply to any **Named Insured** who is a parent, subsidiary or affiliate of the first **Named Insured**.

## VII. EXTENDED REPORTING PERIOD FOR CLAIMS

The **Named Insured** shall be entitled to an Automatic **Extended Reporting Period**, and (with certain exceptions as described in Paragraph B. of this Section) be entitled to purchase an Optional **Extended Reporting Period** for any Coverages terminated, upon termination of coverage as defined in Paragraph B.3. of this Section. Neither the Automatic nor the Optional **Extended Reporting Period** shall reinstate or increase any of the Limits of Liability of this Policy.

### A. Automatic Extended Reporting Period

Provided that the **Named Insured** has not purchased any other insurance to replace this insurance and which applies to a **Claim** or a **Confirmed Release** otherwise covered hereunder, the **Named Insured** shall have the right to the following: a period of six (6) months following the effective date of such termination of coverage in which to provide written notice to the Company of a **Claim** first made during the **Policy Period** or Automatic **Extended Reporting Period** and first reported within the Automatic **Extended Reporting Period,** or **Confirmed Release** first reported within the Automatic **Extended Reporting Period**.

A **Claim** first made during the **Policy Period** or Automatic **Extended Reporting Period** and first reported within the Automatic **Extended Reporting Period,** or **Confirmed Release** first reported within the Automatic **Extended Reporting Period** will be deemed to have been made on the last day of the **Policy Period**, provided that the **Claim** or **Confirmed Release** arises from **Pollution Conditions** that commenced before the end of the **Policy Period** and is otherwise covered by this Policy. No part of the Automatic **Extended Reporting Period** shall apply if the Optional **Extended Reporting Period** is purchased.

### B. Optional Extended Reporting Period

The **Named Insured** shall be entitled to purchase an Optional **Extended Reporting Period** upon termination of coverage as defined herein (except in the event of nonpayment of premium), as follows:

1. A **Claim** first made during the **Policy Period** or during the Optional **Extended Reporting Period** and first reported during the Optional **Extended Reporting Period**, or a **Confirmed Release** first reported within the Optional **Extended Reporting Period**, if purchased in accordance with the provisions contained in Paragraph 2. below, will be deemed to have been made on the last day of the **Policy Period**, provided that the **Claim** or **Confirmed Release** arises from **Pollution Conditions** that commenced before the end of the **Policy Period** and is otherwise covered by this Policy.

2. The Company shall issue an endorsement providing an Optional **Extended Reporting Period** of up to twelve (12) months from termination of coverage hereunder for all **Storage Tank Systems**, or for a **Storage Tank System** located at a specific facility, provided that the **Named Insured**:

   (a) makes a written request for such endorsement which the Company receives within sixty (60) days after termination of coverage as defined herein; and

   (b) pays when due an amount equal to the premium for the Optional **Extended Reporting Period** plus any premium for the **Policy Period** which is owed and has not yet been paid. If these premiums are paid when due, the **Extended Reporting Period** may not be cancelled, provided that all other terms and conditions of the Policy are met.

86250 (7/04)
CI2326

3. Termination of coverage occurs:

(a) at the end of the **Policy Period**, or

(b) at the time the Policy or renewal policy becomes effective with a decrease in the limit of liability, a reduction of coverage, an increased deductible or self-insured retention, new exclusion or any other change in coverage less favorable to the **Insured**.

4. The Optional **Extended Reporting Period** is available to the **Named Insured** for not more than 100% of the policy premium of this Policy.

## VIII.    DEFINITIONS

A. **Bodily Injury** means physical injury, or sickness, disease, mental anguish or emotional distress sustained by any person including death resulting therefrom.

B. **Claim** means a written demand received by an **Insured** seeking a remedy and alleging liability or responsibility on the part of the **Insured** for **Loss.**

C. **Clean-Up Costs** means:

Reasonable and necessary expenses for the investigation, removal or remediation of **Pollution Conditions** including associated monitoring, or disposal of soil, surfacewater, groundwater or other contamination:

(a) To the extent required by **Environmental Laws**; or

(b) That have been actually incurred by the government or any political subdivision of the United       States of America or any state thereof or Canada or any province thereof, or by third parties.

**Clean-Up Costs** also include **Restoration Costs.**

D. **Confirmed Release** means **Pollution Conditions** from a **Storage Tank System,** including those from an overfill of a **Storage Tank System,** that has been investigated and confirmed by or on behalf of the **Insured** during the **Policy Period** through a system tightness test, site check, or other procedure approved by the **Implementing Agency** in accordance with **Environmental Law.**

E. **Corrective Action** means:

1. Reasonable and necessary costs for response, abatement, investigative, and removal actions resulting from a **Confirmed Release** as legally required by Subpart F of the federal underground storage tank regulations, 40 C.F.R. 280.60 through 280.66, and 280.72, or as legally required by other applicable federal regulations or by other applicable regulations promulgated by a state under an underground storage tank program approved by the United States Environmental Protection Agency in accordance with Section 9004 of the Resource Conservation and Recovery Act of 1976, as amended;

2. Reasonable and necessary costs for the cleanup, pursuant to a written order from the **Implementing Agency** and with the prior written approval of the Company, of **Pollution Conditions** in soil or groundwater due to a **Confirmed Release**, including the preparation, development, modification and implementation of a "corrective action

86250 (7/04)
CI2326

11

plan" as defined in 40 C.F.R. 280.66, and the monitoring, evaluation and reporting of the results of the implementation of such plan.

F. **Environmental Laws** means any federal, state, provincial or local laws (including, but not limited to, statutes, rules, regulations, ordinances, guidance documents, and governmental, judicial or administrative orders and directives) that are applicable to **Pollution Conditions**.

G. **Extended Reporting Period** means either the automatic additional period of time or the optional additional period of time, whichever is applicable, in which to report **Claims** or **Confirmed Releases** following termination of coverage, as described in Section VII. of this Policy.

H. **Implementing Agency** means the Federal Environmental Protection Agency or a state or local agency having jurisdiction pursuant to **Environmental Laws.**

I. **Inception Date** means the first date set forth in Item 2 of the Declarations.

J. **Insured** means the **Named Insured**, and any past or present director, officer, partner or employee thereof, including a temporary or leased employee, while acting within the scope of his or her duties as such.

K. **Insured Contract** means a contract or agreement submitted to and approved by the Company, and listed on a Scheduled Insured Contract Endorsement to this Policy.

L. **Loss** means, under the applicable Coverages:

1. Monetary awards or settlements of compensatory damages; where allowable by law, punitive, exemplary, or multiple damages; and civil fines, penalties, or assessments for **Bodily Injury** or **Property Damage**; or

2. **Clean-Up Costs** or **Corrective Action**.

M. **Named Insured** means the person or entity named in Item 1 of the Declarations acting on behalf of all other **Insureds**, if any, for the payment or return of any premium, payment of any deductible, receipt and acceptance of any endorsement issued to form a part of this Policy, giving and receiving notice of cancellation or nonrenewal, and the exercise of the rights provided in the **Extended Reporting Period** clause.

N. **Policy Period** means the period set forth in Item 2 of the Declarations, or any shorter period arising as a result of:

1. Cancellation of this Policy; or

2. With respect to particular **Storage Tank System(s)**:

   (a) the deletion or addition of such **Storage Tank System** from this Policy by the Company at the **Named Insured's** written request, but solely with respect to that **Storage Tank System**.

   (b) the sale, giving away or abandonment of a **Storage Tank System**, or the sub-leasing of such **Storage Tank System**, unless the sub-lease has been approved in writing by the Company prior to the commencement of the sub-lease.

O. **Pollution Conditions** means the discharge, dispersal, release or escape of any solid, liquid, gaseous or thermal irritant or contaminant, including, but not limited to, smoke, vapors,

86250 (7/04)
CI2326

soot, fumes, acids, alkalis, toxic chemicals, medical waste and waste materials into or upon land, or any structure on land, the atmosphere or any watercourse or body of water, including groundwater, provided such conditions are not naturally present in the environment in the amounts or concentrations discovered.

**P. Property Damage** means:

1. Physical injury to or destruction of tangible property of parties other than the **Insured** including the resulting loss of use thereof;

2. Loss of use of tangible property of parties other than the **Insured** that has not been physically injured or destroyed;

**Property Damage** does not include **Clean-Up Costs** or **Corrective Action**.

**Q. Responsible Insured** means the manager or supervisor of the **Named Insured** responsible for environmental affairs, control or compliance, or any owner or operator of a **Storage Tank System,** or any officer, director or partner of the **Named Insured**.

**R. Restoration Costs** means reasonable and necessary costs incurred by the **Insured** with the Company's written consent, which consent shall not be unreasonably withheld or delayed, to repair, replace or restore real or personal property to substantially the same condition it was in prior to being damaged during work performed in the course of incurring **Clean-Up Costs** or **Corrective Action**. However, such **Restoration Costs** shall not exceed the net present value of such property prior to incurring **Clean-Up Costs** or **Corrective Action**. **Restoration Costs** do not include costs associated with improvements or betterments.

**S. Storage Tank System** means a stationary tank or tanks owned or operated by the **Insured** and shown in Item 5 of the Declarations. **Storage Tank System** includes any on site integral piping or dispensing equipment, ancillary equipment and containment system associated with the tanks.

**T. Tank Fund** means any state storage tank trust fund, state administered insurance program, or restoration funding for **Storage Tank Systems** whose owners qualify for reimbursement, or any self insurance fund established for the purpose of funding **Clean-Up Costs** or **Corrective Action** for **Pollution Conditions** from a **Storage Tank System**.

_____
**AUTHORIZED REPRESENTATIVE**
or countersignature (in states where applicable)

This Policy shall not be valid unless signed at the time of issuance by an authorized representative of the Insurer, either above or on the Declarations page of the policy.

86250 (7/04)
CI2326

13

## ENDORSEMENT

**This endorsement, effective 12:01 AM,**   April 1, 2010

**Forms a part of Policy No:**   7146277

**Issued to:**   Motors Liquidation Company

**By:**   Chartis Specialty Insurance Company

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### SCHEDULE OF COVERED STORAGE TANK SYSTEMS

It is agreed that any previous Schedule of Covered Storage Tank Systems is deleted in its entirety and replaced with the following:

The following **Underground Storage Tank System(s)** are included in **Item 5. COVERED STORAGE TANK SYSTEM(S)** of the Declarations, subject to all of the terms and conditions of the Policy and the **Policy Period** and Retroactive date indicated below.  If no dates are indicated below for **Policy Period** for a subject **Storage Tank System**, the dates indicated in **Item 2 Policy Period** of the Declarations shall apply.  If no date is indicated below for Retro Date for a subject **Storage Tank System**, the date indicated in **Item 6. Retroactive Date** of the Declarations shall apply.  If a Policy Period is indicated below for a subject Storage Tank System, Item 2 **Policy Period** of the Declarations is deleted in its entirety and replaced with the **Policy Period**, below, for such **Storage Tank System**.  If a date is indicated below for Retro Date for a subject **Storage Tank System**, the date indicated in **Item 6. Retroactive Date** of the Declarations is deleted in its entirety and replaced with Retro Date, below, for such **Storage Tank System**.

| Site * # | Tank # | AST/ UST | Install Date | Capacity (Gallons) | Tank Constr uction | Polic y From: | Period To: | Retro Date |
|---|---|---|---|---|---|---|---|---|
| See Endorsement No. 01 | | | | | | | | |

* Site #, name and address are located within the Site Schedule attached to the Policy

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

81017 (10/02)
CI1902

### ENDORSEMENT NO. 1

| | |
|---|---|
| **This endorsement, effective 12:01 AM,** | April 1,2010 |
| **Forms a part of Policy No:** | 7146277 |
| **Issued to:** | Motors Liquidation Company |
| **By:** | Chartis Specialty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Underground Storage Tank Schedule

| Facility | Number of USTs |
|---|---|
| GM Grand Rapids MFD<br>300 36th Street<br>Grand Rapids, MI  49548 | 2 |
| GM Pontiac Center Point Campus-West<br>GM Truck Product Center-West<br>Engineering Operations<br>660 South Boulevard East<br>Pontiac, MI  48341-3128 | 3 |
| GM Powertrain<br>Willow Run CO3 Site<br>Ecorse and Wiard Rds.<br>Ypsilanti, MI  48198 | 4 |
| GM Truck Group<br>Pontiac Center Assembly<br>2100 S. Opdyke Road<br>Pontiac, MI  48058 | 3 |
| Stamping - Pittsburgh<br>1451 Lebanon School Road<br>West Mifflin, Pennsylvania  15122 | 8 |

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

ENDORSEMENT

| | |
|---|---|
| **This endorsement, effective 12:01 AM,** | April 1, 2010 |
| **Forms a part of Policy No:** | 7146277 |
| **Issued to:** | Motors Liquidation Company |
| **By:** | Chartis Specialty Insurance Company |

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### SCHEDULE OF COVERED STORAGE TANK SYSTEMS

It is agreed that Schedule of Covered Above Ground Storage Tank Systems is added to the policy for the State of Delaware.

The following **Above Ground Storage Tank System(s)** are included in **Item 5. COVERED STORAGE TANK SYSTEM(S)** of the Declarations, subject to all of the terms and conditions of the Policy and the **Policy Period** and Retroactive date indicated below. If no dates are indicated below for **Policy Period** for a subject **Storage Tank System**, the dates indicated in **Item 2 Policy Period** of the Declarations shall apply. If no date is indicated below for Retro Date for a subject **Storage Tank System**, the date indicated in **Item 6. Retroactive Date** of the Declarations shall apply. If a Policy Period is indicated below for a subject Storage Tank System, Item 2 **Policy Period** of the Declarations is deleted in its entirety and replaced with the **Policy Period**, below, for such **Storage Tank System**. If a date is indicated below for Retro Date for a subject **Storage Tank System**, the date indicated in **Item 6. Retroactive Date** of the Declarations is deleted in its entirety and replaced with Retro Date, below, for such **Storage Tank System**.

| Site * # | Tank # | AST/ UST | Install Date | Capacity (Gallons) | Tank Construction | Policy From: | Period To: | Retro Date |
|---|---|---|---|---|---|---|---|---|

See Endorsement No. 02

* Site #, name and address are located within the Site Schedule attached to the Policy

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

81017 (10/02)
CI1902

ENDORSEMENT NO. 02

| This endorsement, effective 12:01 AM, | April 1, 2010 |
|---|---|
| Forms a part of Policy No: | 7146277 |
| Issued to: | Motors Liquidation Company |
| By: | Chartis Specialty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## Above Ground Storage Tank Schedule

| Tank ID | Capacity (Gal) | Material | Part D Applicability | Notes |
|---|---|---|---|---|
| A | 39,000 | Empty | Yes | Closure status Unknown |
| B | 60,900 | Diesel Fuel | Yes | Doesn't meet <40K gal. Exemption for diesel/heating oil tanks. Currently "Out of Service" |
| C | 40,000 | Gasoline | Yes | No applicable exemption. Currently "Out of Service" |
| D | 250,000 | Water | No | Water Tanks are exempted from regulation. |
| E | 250,000 | Water | No | Water Tanks are exempted from regulation. |
| F | 250,000 | No.6 Fuel Oil | Yes | Doesn't meet <40K gal. Exemption for diesel/heating oil tanks. |
| G | 250,000 | No.6 Fuel Oil | Yes | Doesn't meet <40K gal. Exemption for diesel/heating oil tanks. |
| H | 12,000 | Empty | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| I | 12,000 | Empty | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| J | 12,000 | Empty | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| K | 12,000 | Empty | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| L | 12,000 | Power Steering | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| M | 12,000 | Antifreeze | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| N | 12,000 | Empty | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| O | 12,000 | Empty | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| Z | 12,000 | Gasoline | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| AA | 12,000 | Gasoline | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| P | 6,000 | Waste Solvent | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| Q | 6,000 | Waste Solvent | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| R | 6,000 | Parco Preclean 2960 | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |

| S | 6,000 | Parco 1529R | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| T | 6,000 | Bonderite 958R | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| U | 11,094 | ELPO Resin | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| V | 2,000 | Sulfuric Acid | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| X | 500 | Sodium Hydroxide | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| Y | 500 | Sodium Hypochlorite | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |
| W | 5400 | SUVA 134A | No | Exempted, >12,499 gallon threshold for financial assurance demonstration. |

AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

ENDORSEMENT NO. 03

| | |
|---|---|
| **This endorsement, effective 12:01 AM,** | 04/01/2010 |
| **Forms a part of Policy No:** | 7146277 |
| **Issued to:** | Motors Liquidation Company |
| **By:** | Chartis Specialty Insurance Company |

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED ENDORSEMENT**

It is hereby agreed that the following entity(s) is (are) included as additional insured(s) for Coverage A and B, whichever is applicable, but solely as respects liability arising out of the **Named Insured's** ownership, operation, maintenance or use of the **Storage Tank Systems** designated in Item 5 of the Declarations.

Additional Insured

United States Department of the Treasury
1500 Pennsylvania Avenue, NW, Room 2312
Washington, D.C. 20220
Reference / Attention:  Assistant General Counsel (Banking and Finance)

All other terms, conditions, and exclusions shall remain the same.

_____
AUTHORIZED REPRESENTATIVE
or countersignature (in states where applicable)

PAGE 1 OF 1

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.     04/01/2010

Forms a part of Policy No.: 7146277

Issued to: MOTORS LIQUIDATION COMPANY

By: **Chartis Specialty Insurance Company**

**COVERAGE TERRITORY ENDORSEMENT**

*This endorsement modifies insurance provided under the following:*

Payment of loss under this policy shall only be made in full compliance with
all United States of America economic or trade sanction laws or regulations,
including, but not limited to, sanctions, laws and regulations administered and
enforced by the U.S. Treasury Department's Office of Foreign Assets Control
("OFAC").

_____
AUTHORIZED REPRESENTATIVE

89644 (7/05)