Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 09-50026(REG)

5   - - - - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   MOTORS LIQUIDATION COMPANY, et al.

9   f/k/a General Motors Corporation, et al.,

10

11            Debtors.

12

13   - - - - - - - - - - - - - - - - - - - - - - - -x

14

15            United States Bankruptcy Court

16            One Bowling Green

17            New York, New York

18

19            December 20, 2011

20            9:48 AM

21

22

23   B E F O R E:

24   HON. ROBERT E. GERBER

25   U.S. BANKRUPTCY JUDGE

Page 2

1

2   Motion for Reconsideration/Rehearing of Offer Filed by Jake W.

3   Rodd

4   Motion for Enforcement of Offer Order

5

6   244th Omnibus Objection to Claims and Motion Requesting

7   Enforcement of Bar Date Orders (Late-Filed Claims)

8

9   257th Omnibus Objection to Claims (Duplicate Claims)

10

11   258th Omnibus Objection to Claims (Insufficient Documentation)

12

13   259th Omnibus Objection to Claims and Motion Requesting

14   Enforcement of Bar Date Orders (Late-Filed Claims)

15

16   260th Omnibus Objection to Claims and Motion Requesting

17   Enforcement of Bar Date Orders (Late Filed Claims Post-

18   Effective Date)

19

20   261st Omnibus Objection to Claims (No Liability Claims)

21

22   262nd Omnibus Objection to Claims (Pension Benefits Claims of

23   Former Salaried and Hourly Employees)

24

25

1

2      263rd Omnibus Objection to Claims (Welfare Benefits Claims of

3      Retired and Former Salaried and Executive Employees)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      Transcribed by:  Lisa Bar-Leib

Page 4

1

2   A P P E A R A N C E S :

3   WEIL GOTSHAL & MANGES LLP

4       Attorneys for the Post-Effective Date Debtors and Motors

5        Liquidation GUC Trust

6       767 Fifth Avenue

7       New York, NY 10153

8

9   BY:  JOSEPH H. SMOLINSKY, ESQ.

10

11   DICKSTEIN SHAPIRO LLP

12       Attorneys for the Motors Liquidation GUC Trust, Successor

13        to the Official Committee of Unsecured Creditors of Old

14        GM

15       1633 Broadway

16       New York, NY 10019

17

18   BY:  STEFANIE BIRBROWER GREER, ESQ.

19

20   ALSO APPEARING:

21   JAKE RODD, PRO SE CLAIMANT

22   111 East 1st Street, #26

23   Jacksonville, FL 32206

24

25

09-50026-mg    Doc 11279    Filed 12/30/11    Entered 12/30/11 13:41:24    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 5 of 24

Page 5

1                    P R O C E E D I N G S

2              THE COURT:  Good morning.  Have seats, please.  Okay.

3       GM.  As far as I know, the only contested disputed matter we

4       have is the Jake Rodd matter.  But I gather we have quite a

5       number of other things.  Mr. Smolinsky, do you have a

6       recommendation as to how to proceed?

7              MR. SMOLINSKY:  Your Honor, besides Mr. Rodd's motion

8       -- Joe Smolinsky, Weil Gotshal & Manges, for Motors Liquidation

9       Company GUC Trust.  Other than Mr. Rodd's motion, we only have

10      omnibus claims objections which are going forward in the usual

11      fashion with no contested hearings.  So we don't care whether

12      you want to handle those first so Ms. Greer could get on her

13      way and then we can handle Mr. Rodd.

14             THE COURT:  I'm sorry.  I couldn't hear that over the

15      noise.

16             MR. SMOLINSKY:  Ms. Greer has several of the matters.

17      So if we handle those first perhaps she can move on to other

18      things.

19             THE COURT:  Okay.  Ms. Greer?

20             MS. GREER:  Good morning, Your Honor.  Stephanie Greer

21      from Dickstein Shapiro on behalf of the --

22             MR. RODD (TELEPHONICALLY):  Hello.

23             MS. GREER:  Hello.

24             THE COURT:  Just a minute, please, Mr. Rodd.  We'll

25      get to you in just a moment.

09-50026-mg    Doc 11279    Filed 12/30/11    Entered 12/30/11 13:41:24    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 6 of 24

Page 6

1          MS. GREER:  Is that better?

2          THE COURT:  A little bit.  Let's see if he -- there's

3     quite a bit of difference when you get very close.

4          MS. GREER:  Okay.  All right.  Better?

5          THE COURT:  Now it is.

6          MS. GREER:  Okay.  Stephanie Greer from Dickstein

7     Shapiro on behalf of the Motors Liquidation Company GUC trust.

8     Your Honor, today we have five omnibus objections to claims.

9     In the usual fashion, we're going forward with the uncontested

10    objections.  We have the 257th omnibus objection which is an

11    objection based on duplicative claims.  One of those has been

12    adjourned and fourteen of them are going forward today.  We

13    have the 258th omnibus objection which is based on insufficient

14    documentation.  Three of those have been adjourned; thirty-

15    three of those are going forward.  We've withdrawn our

16    objection as to one of those.  With respect to the 259th

17    objection on late-filed claims, one of those has been

18    adjourned; two are going forward.  The 260th omnibus objection,

19    also on late-filed, these are claims that were filed after the

20    effective date.  All of those are going forward, Your Honor.

21    And then, finally, we have the 261st omnibus objection which

22    are --

23          THE COURT:  Pause, please, Ms. Greer.  Mr. Rodd, I

24    think you may be the only one on the phone but noise is coming

25    through into the courtroom over the phone.  Would you try to

09-50026-mg   Doc 11279   Filed 12/30/11   Entered 12/30/11 13:41:24   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 7 of 24

Page 7

1    stay as quiet as you can, please?  Go ahead, Ms. Greer.

2         MS. GREER:  Sure.  We have the 261st omnibus objection

3    before the Court.  Those are no-liability claims.  One is

4    adjourned and forty-five are going forward.

5         We also have three adjourned omnibus objections which

6    were situations where the claimant had reached out to us,

7    expressed some response to the initial objection but having

8    talked to them, they decided not to pursue an objection.  So

9    we're going forward with those today on an uncontested basis.

10   All of these are from the 244th omnibus objection which are

11   late-filed claims.  The three that are going forward today are

12   Linda Fisher, Jacob Hall and Christeen Saulters Hinton.  And

13   we'll make sure that when we submit an order, it has all the

14   claim numbers and it's clear that these are adjourned from the

15   244th objection.

16        THE COURT:  Okay.  Well, then everything you said is

17   fine.  So just take care of the paperwork and get it to my

18   chambers at your convenience.

19        MS. GREER:  Okay.  Thank you, Your Honor.

20        THE COURT:  Thank you.  Have a good day.

21        MS. GREER:  May I be excused?

22        THE COURT:  I beg your pardon?

23        MS. GREER:  May I be excused?

24        THE COURT:  Yes, you may.

25        MS. GREER:  Okay.

Page 8

1          THE COURT:  Yes.  Thank you.  Okay.  Are we now up to

2   Mr. Rodd's claim or his motion?

3          MR. SMOLINSKY:  Yes, sir.  And then we can handle two

4   more omnibus motions after that.

5          THE COURT:  Okay.  Mr. Rodd, you're on the phone?

6          MR. RODD:  Yes, sir.

7          THE COURT:  Okay.  Mr. Rodd, did you have a chance to

8   read GM's objection to your claim?  Basically, what they're --

9          MR. RODD:  Yes.  I --

10          THE COURT:  What they're saying is that you don't have

11   any claim at all but they're willing to give you 5,000 bucks to

12   settle the matter.  And putting aside whether or not they're

13   bound to continue to keep the offer on the table, they're still

14   willing to give you 5,000 bucks.  Do you really want me to

15   decide whether your claim is barred by the statute of

16   limitations and you get zero?

17          MR. RODD:  Yes, sir.  I do.

18          THE COURT:  Why is that?

19          MR. RODD:  Because, sir, in looking at the U.S.C.

20   code, right, I found that there was some mitigating

21   circumstances to my case.  For instance, Mr. Smolinsky failed

22   to tell you that in the process, I filed my initial claim with

23   GM through my attorney at the time, a Mr. Dexter van Davis

24   (ph.).  And during that course of time, Your Honor, I never

25   received a letter of rejection.  In fact, I received a letter

Page 9

1    from Ms. Cudsworth of their ESIS firm, January 3rd, 2008.  And

2    in that letter, she was saying that I wished to continue my

3    claim.  Well, Your Honor, if I had a claim in process with the

4    insurance company and I was awaiting an answer then there would

5    be no need for me to file a litigation.  I was given the

6    impression that my claim was given process with ESIS as per

7    this letter which is contained in your records.  And the fact

8    of the matter is, sir, that Mr. Smolinsky said to me that an

9    insurance claim is different than a legal action.  Well, if I

10   was in the middle of an insurance claim, there would have been

11   no need for me to file a legal action constituting that I never

12   received a letter of rejection from ESIS and nor have I

13   received a letter of rejection from Mr. Smolinsky.  And in --

14   through their review of the situation, there should be no

15   information to substantiate that.

16        So I'm thinking that as for the U.S.C. code proof of

17   claim that my claim would still be valid because a court action

18   was done on February the 23rd, 2010 and signed off by yourself

19   as further agreement with Mr. Smolinsky and myself.  And in

20   reading the Code, my interpretation was that any time that a

21   legal action was done thirty days after the legal action has

22   taken place that it becomes a matter of record that the claim

23   would be accepted.

24        THE COURT:  All right.

25        MR. RODD:  I mean, I could be misinterpreting the Code

Page 10

```
 1    but that's why I requested that it -- would know you review it.
 2            THE COURT:  Well, I think you might be misinterpreting
 3    the law.  And I'm going to allow Mr. Smolinsky and invite Mr.
 4    Smolinsky to respond.  And then I'm going to explain the law
 5    and I'm going to give you one last chance to get the 5,000
 6    dollars before you almost certainly -- I'll take out the
 7    "almost" -- before you certainly will get nothing.
 8            Mr. Smolinsky --
 9            MR. RODD:  Okay.  Then I'll do this, Your Honor.
10            THE COURT:  -- go ahead and make your response,
11    please.
12            MR. SMOLINSKY:  Thank you, Your Honor.  And just to
13    clarify, the settlement was for a general unsecured claim in
14    the amount of 5,000 dollars not 5,000 dollars in cash.
15            THE COURT:  Right.
16            MR. SMOLINSKY:  Your Honor, one of the most difficult
17    aspects of the wind-down of these estates is the large number
18    of pro se individual claimants.  And we've been very sensitive
19    to that issue.  We spent an inordinate amount of time
20    explaining legal principles which are oftentimes difficult to
21    comprehend for individuals who are not trained in the law.
22    And, of course, at every turn, we advised claimants to seek
23    legal counsel.
24            Mr. Rodd has been in discussions with our firm since
25    the beginning of the case.  But at the end of the day, we do
```

MOTORS LIQUIDATION COMPANY, et al.

Page 11

1    see a statute of limitations defense to this claim.  Mr. Rodd

2    argues that ESIS, which is a claims company managed by General

3    Motors, had an open claim.  We don't have access to ESIS'

4    records but when the open claims were delivered to General

5    Motors Corporation at the time of the filing, there was no

6    record of Mr. Rodd's claim.

7            Regardless of that issue, the statute of limitations

8    clearly requires the commencement of a legal action in order to

9    perfect that claim.  And as a result, we always try to provide

10   something to claimants even if it's just a proxy for the amount

11   that it would cost the estate to prosecute an objection.

12   That's what we did in this case.  Mr. Rodd approved it and then

13   disavowed the settlement.  We have no intention of being viewed

14   as bullying any individual and that's why we have not sought to

15   enforce the settlement at this time.

16           In terms of the discovery that's been requested, that

17   discovery doesn't really go to the issue of the statute of

18   limitations defense or the issue of whether Mr. Rodd is

19   entitled to mediation.  We've evaluated all of the cases to

20   decide whether mediation was an appropriate course.  It is, of

21   course, at the discretion of the debtors to designate a claim

22   for mediation.  As a practical matter, we have not designated

23   any claims under a million dollars simply because the cost

24   didn't justify it certainly at this time.  And as a result,

25   this claim, especially given what our parameters were for

09-50026-mg   Doc 11279   Filed 12/30/11   Entered 12/30/11 13:41:24   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 12 of 24

Page 12

1    settlement, didn't make sense to burden Mr. Rodd with the costs

2    of conducting a mediation in Dallas which would be the nearest

3    mediation center to his home in Florida.

4             THE COURT:  Okay.  Mr. Rodd, do you wish to reply?

5             MR. RODD:  Yes, Your Honor.  My claim was initially

6    started April 6th, 2006.  It was sent to Lisa Cudsworth, the

7    claims admin of ESIS in Detroit, Michigan.  The file number was

8    49287.  Mr. Smolinsky said he has no record of my claim.  Well,

9    the record is contained in GM's ESIS file on myself.  And I

10   was -- thought that Mr. Smolinsky would be made privy to ESIS'

11   insurance claim.

12            Also, Mr. Smolinsky hired a Jeremy Sloan, a Ms. Hill

13   in 2010, who also investigated my claim.  And he referenced the

14   claim number with GM.  So I was interpreting -- I was thinking

15   that the attorney that he hired might have reviewed the case

16   file because he has the case file number and he was asking me

17   questions relative to the claim.  So I assume that, like I

18   said, the attorney he hired basically (indiscernible).

19            Hello?

20            THE COURT:  Yes.  I'm just listening.

21            MR. RODD:  Of course this phone has a static in here,

22   Your Honor.  I'm sorry.

23            THE COURT:  No --

24            MR. RODD:  And so, when speaking with Mr. Sloan, Mr.

25   Sloan stated that he -- that GM was prepared to give me stock

MOTORS LIQUIDATION COMPANY, et al.

Page 13

1   in exchange in lieu of my injuries, right?  And that fund thing

2   was set up with Wilmington Trust.  And upon contacting

3   Wilmington Trust, it said that a 500,000 dollar payment was

4   established for myself and it was uncontested by the lawyers.

5   It was awaiting the lawyers to take it to relief.  When I

6   contacted Mr. Smolinsky about the issue, he said that they were

7   still in the process and that they would get back with me.

8   Well, some of it is a contradiction to what's being said.

9           Also, Mr. Smolinsky --

10          THE COURT:  Pause, Mr. Rodd.

11          MR. RODD:  -- never --

12          THE COURT:  Mr. Rodd, pause for a minute, please.  You

13  said Wilmington Trust told you your claim had been allowed in

14  the amount of 500,000 dollars?

15          MR. RODD:  Correct, sir, and it was awaiting payment.

16          THE COURT:  What did you understand Wilmington Trust's

17  role in this to be?

18          MR. RODD:  Wilmington Trust's role was a depository

19  where GM had put the funds for everyone to be paid in the case,

20  right?  Like, say, for instance, they had put thirty-seven

21  million or something to that effect for all the claimants in

22  the case, the bankruptcy case, to be paid.  So therefore,

23  that -- I contacted them.

24          THE COURT:  Go on.

25          MR. RODD:  And that was giving me the impression that,

09-50026-mg   Doc 11279   Filed 12/30/11   Entered 12/30/11 13:41:24   Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 14 of 24

Page 14

1   okay, this was going forward with the original claim amount.

2   And also, I never received anything stating that my cap letter

3   has been rejected.  So I was then given an impression still

4   that the case was going forward with the original amount.

5   There was no impression given that a time limit had expired for

6   me filing a claim, filing a legal claim, because we were

7   ongoing with the bankruptcy process as well as the insurance

8   process.  So two years into the bankruptcy process, it's been

9   said that the claim -- the time of the claim has lapsed to file

10  a legal course.  Well, if I'm in the bankruptcy proceeding,

11  right, I'm assuming that that is a legal action.  And if I had

12  filed -- and also, Motors Liquidation notified me in

13  approximately October of 2009 to file a claim with the

14  bankruptcy court because I had an outstanding claim against GM.

15  In fact, the file number on that is GPS0558973365.  This form

16  is also contained in the Court records there.

17          So in doing these things, I assumed by my function was

18  that my claim was valid.  And that's the premise that I've been

19  working under.

20          THE COURT:  Okay.  All right.  Everybody, sit in place

21  for a second.  Okay.  Mr. Rodd, your motion insofar as you are

22  asking for my approval for authority to withdraw your motion

23  for reconsideration or rehearing of offer is granted and the

24  remainder of your motion is denied.

25          MR. RODD:  Actually, Your Honor --

09-50026-mg    Doc 11279    Filed 12/30/11    Entered 12/30/11 13:41:24    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 15 of 24

Page 15

1          THE COURT:  Forgive me.  I'm going to put a full

2     ruling on the record and then I'll allow you to be heard

3     although you have to understand that once I rule, your remedy

4     is on appeal after the order is entered rather than --

5          MR. RODD:  But --

6          THE COURT:  -- arguing or negotiating with me after

7     I've ruled.

8          MR. RODD:  But, Your Honor, what it is is the new

9     motion that I had filed for enforcement, it was supposed to be

10    a replacement to the reconsideration order.

11         THE COURT:  Okay.  All right.  In any event, I'm now

12    ruling on the new motion.  But, forgive me, Mr. Rodd.  You

13    can't interrupt me a third time.  Okay?

14         MR. RODD:  Oh, yes.  Yes.

15         THE COURT:  All right.  Your newest motion has two

16    main components.  The first is to enforce the order

17    implementing the alternate dispute procedures.  And the second

18    is to subpoena three named individuals one of whom is an

19    attorney at the Weil Gotshal firm and one of whom is the former

20    chairman and CEO of General Motors.

21         With respect to the mediation order, mediation is a

22    voluntary process.  And its purpose is to help people save

23    litigation costs.  As a voluntary process, and under my order,

24    neither side has the right to force the other to mediate if the

25    other doesn't want to subject to certain exceptions that aren't

MOTORS LIQUIDATION COMPANY, et al.

Page 16

1    applicable here.  Under the facts that we have here, GM can't

2    force you to mediate and you can't force GM to mediate.

3    Moreover, it wouldn't be in either side's interest because

4    there is a basic legal issue which I'll speak to in a moment

5    under which if GM wants to fight you on this, you will get

6    nothing.  And therefore, there's nothing to mediate and GM

7    would be entitled to that threshold ruling of law.

8            Notwithstanding that, GM has offered to give you an

9    allowed claim for 5,000 dollars even though you're entitled to

10   nothing because of the costs of dealing with the matter.  Now

11   I'm going to come back to the statute of limitations in a

12   moment.  But the fact is that if you wanted to mediate and if

13   GM were willing to mediate, you then have to each pick up half

14   the costs.  You'd have to go to a distant location.  And it

15   would cost you more to go through the mediation than you could

16   get on a distribution on a 5,000 dollar claim especially since

17   the 5,000 dollars isn't cash but it's in the form of General

18   Motors securities.

19           Now let me get to the legal principle which GM

20   addressed in its brief and which you haven't further addressed.

21   The statute of limitations is a rule of law that says if you

22   don't bring a court action in a timely way, your claim can't be

23   considered by the Court or allowed by the Court even if it

24   otherwise has merit.  I don't know whether or not it has merit

25   but to stop the statute of limitations from running, you have

1    to bring a lawsuit, not just notify your defendant, within the

2    period of time that's set forth under the state's law.

3            The statute of limitations for bringing claims of the

4    type you're talking about in New York is three years.  And in

5    Florida, it's four years.  But even if you took the longer

6    Florida period, your claim would be barred, that is,

7    prohibited, under the statute of limitations.

8            Now for all of those reasons, you don't have the right

9    to the mediation that you're asking for and I have to deny that

10   part of your motion.  I also have to deny the part of the

11   motion that orders me to subpoena the three individuals because

12   the issues that are before me don't require any witnesses.  And

13   in addition, one of the three people who you want to subpoena

14   is outside of the subpoena power of the Court and I couldn't do

15   it even if I wanted to.

16           So your motion is going to be and is denied by my

17   decision but it will effectively be denied when an order is

18   entered.  And, Mr. Smolinsky, I'm telling you to settle an

19   order.  Settling an order isn't like settling a case.  Settling

20   an order is to submit a proposed order to me for consideration

21   and you will have -- and, Mr. Smolinsky, you're going to give

22   Mr. Rodd a little more time.  Give him a week to object to the

23   form of the order.  So I'm clear, Mr. Rodd, when you object to

24   the form of the order, that doesn't deal with whether or not

25   you have a right to appeal.  The only issue then before me is

MOTORS LIQUIDATION COMPANY, et al.

1    what form of order best sets forth my ruling and is consistent

2    with my ruling.  And the time to appeal from the decision will

3    run from the time of the entry of the order and not from the

4    time that I'm issuing this ruling today.

5         MR. RODD:  Yes.

6         THE COURT:  Now --

7         MR. RODD:  May I address Your Honor?

8         THE COURT:  You will in just a moment.  I'll let you

9    in just a moment.

10        The matter of the allowability of your claim is not,

11   strictly speaking, before me today.  But the issues have now

12   all been laid out.  Mr. Rodd, I can't give you legal advice.

13        MR. RODD:  Yes.

14        THE COURT:  But I would strongly, strongly, strongly

15   encourage you to take the 5,000 dollar claim even --

16        MR. RODD:  I will, Your Honor.

17        THE COURT:  Okay, because otherwise, you're not going

18   to get anything.  Now I'll hear you --

19        MR. RODD:  I will, Your Honor.

20        THE COURT:  -- Mr. Rodd.  Okay.  I said I'd give you a

21   chance to speak more if you wished, Mr. Rodd.  I want to give

22   you that opportunity now.

23        MR. RODD:  Okay, Your Honor.  I think you've been fair

24   and generous with me.  And you afforded me the opportunity and

25   I appreciate your diligence, sir.  But at this time, I would

1    accept the offer that's before me for the 5,000 dollars.  I'll

2    do that, sir.

3              THE COURT:  Okay.

4              MR. RODD:  And we can close out this issue.

5              THE COURT:  Very well.  Mr. Smolinsky, I assume you

6    can have one of your guys take care of that?

7              MR. SMOLINSKY:  Yes.  I will send Mr. Rodd another

8    copy of the settlement agreement along with the order.

9              MR. RODD:  One question, Your Honor.

10             THE COURT:  Yes, sir.

11             MR. RODD:  Okay.  I would that this be an expeditious

12   payment.  Can we close this out quickly?

13             THE COURT:  I don't know.  Do you, Mr. Smolinsky?

14             MR. SMOLINSKY:  I do know that this quarterly

15   distribution was just closed out about a week ago.  And the

16   next distribution would be in three months.  I could see what I

17   can do but I know that they go through a very lengthy process

18   in order to close out the records and do the math --

19             MR. RODD:  And one other thing --

20             MR. SMOLINSKY:  -- on all the distributions.

21             MR. RODD:  One other thing, Your Honor.

22             THE COURT:  Yes.

23             MR. RODD:  As you noticed, the stock market is highly

24   vulnerable at this time.  Say, for instance, if we agree to a

25   5,000 dollar settlement by today, the stock itself could drop

Page 20

1    maybe ten dollars within a week, hypothetically speaking.

2    Would that be considered into the 5,000 dollar payment?

3            THE COURT:  Unfortunately, no, Mr. Rodd, because,

4    first of all, of course, the stock market goes up, it goes down

5    and nobody knows which way it goes.  But I ruled on this in my

6    written opinion on confirmation I don't know how many months

7    ago it was where I had to deal with this exact issue for other

8    claimants.  And --

9            MR. RODD:  But I --

10           THE COURT:  -- you can't do that because it's not fair

11   to other creditors.  And everybody --

12           MR. RODD:  Right.

13           THE COURT:  -- gets the same amount of stock for per

14   dollar of claim.  And that's the only fair way it can be done

15   and that's the way I ruled in that written opinion.  If you

16   wish, I'm sure one of Mr. Smolinsky's associates or legal

17   assistants can give you a citation to that decision where I

18   dealt with that issue.  But I --

19           MR. RODD:  Oh.

20           THE COURT:  -- have ruled on that issue in the past.

21           MR. RODD:  Yes, sir.  You're very clear and concise

22   and I understand, sir.  Again, thank you for your diligence and

23   I won't hold the Court up anymore.

24           THE COURT:  Very well.  Merry Christmas.

25           MR. RODD:  Merry Christmas to you and your family as

MOTORS LIQUIDATION COMPANY, et al.

Page 21

```
 1   well, sir.
 2           THE COURT:  Thank you.
 3           MR. RODD:  Thank you.  Have a good idea.
 4           THE COURT:  Okay.  Very well.  Mr. Rodd, you're free
 5   to either stay on the line or drop off as you prefer.
 6           MR. RODD:  Thank you.  Thank you very much, Your
 7   Honor.
 8           THE COURT:  Okay.  Have a good day.
 9           MR. RODD:  Bye-bye.
10           THE COURT:  Mr. Smolinsky, I think I heard you say you
11   had a couple of other minor matters to deal with.
12           MR. SMOLINSKY:  Yes.  Thank you, sir.  There are two
13   omnibus matters on today.  The first is the 262nd omnibus
14   objection to claims.  Those are claims of pension benefits of
15   former salaried and hourly employees.  There was one response
16   which we'll deal with at the next hearing.  That's of Sheila
17   Marie Whorley.  And other than that, we'd ask that the
18   objection be approved.
19           THE COURT:  You got it.
20           MR. SMOLINSKY:  Then we have the 263rd omnibus
21   objections.  That's the same relief, welfare benefit claims of
22   retired and formerly salaried and executive employees.  There
23   have been no responses and we'd ask that that relief be
24   approved.
25           THE COURT:  Granted.
```

Page 22

1        MR. SMOLINSKY:  Just as a housekeeping matter, Your

2   Honor, and to advise the Court, consistent with the plan,

3   Motors Liquidation Company was dissolved on December 15th.  So

4   Motors Liquidation Company no longer exists.  The obligations

5   to resolve ongoing secured administrative and priority claims

6   will now be dealt with by the Motors Liquidation Company GUC

7   trust.

8        THE COURT:  And the lawyering for the GUC trust will

9   be shared between you and counsel for the former creditors'

10  committee?

11       MR. SMOLINSKY:  That's correct, Your Honor.

12  Additionally, Gibson Dunn has done work for the trust as well

13  in the nature of securities issues as well as some of the

14  distribution issues.

15       THE COURT:  And I assume the Chapter 11 case just

16  continues under the name of Motors Liquidation Company with

17  real party in interest now being the GUC trust or one of the

18  other trusts that was formed.

19       MR. SMOLINSKY:  That's correct, Your Honor.

20       THE COURT:  Okay.  Okay.  Anything else?

21       MR. SMOLINSKY:  That's it.

22       THE COURT:  Okay.  Have a good holiday.  We're

23  adjourned.

24       MR. SMOLINSKY:  You, too, sir.

25       (Whereupon these proceedings were concluded at 10:16 a.m.)

1

2                          I N D E X

3

4                        R U L I N G S

5    DESCRIPTION                                    PAGE    LINE

6    Jake Rodd's motion requesting approval for      14      23

7    authority to withdraw motion for reconsideration

8    or rehearing of offer granted; remainder of motion

9    denied

10   Debtors' 262nd omnibus objection to claims of    21      19

11   pension benefits of former salaried and hourly

12   employees sustained

13   Debtors' 263rd omnibus objection to claims of    21      25

14   welfare benefit claims of retired and formerly

15   salaried and executive employees

16

17

18

19

20

21

22

23

24

25

Page 24

1

2                           C E R T I F I C A T I O N

3

4      I, Lisa Bar-Leib, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7      Lisa Bar-        Digitally signed by Lisa Bar-Leib
                        DN: cn=Lisa Bar-Leib, o, ou,
8      Leib             email=digital1@veritext.com,
                        c=US
9      _____ Date: 2011.12.30 12:18:46 -05'00'

10     LISA BAR-LEIB

11     AAERT Certified Electronic Transcriber (CET**D-486)

12

13     Veritext

14     200 Old Country Road

15     Suite 580

16     Mineola, NY 11501

17

18     Date:  December 21, 2011

19

20

21

22

23

24

25