# Exhibit A

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: ) | |
| ) | Case No. 09-50026 (REG) |
| MOTORS LIQUIDATION COMPANY, *et al.*, ) | Chapter 11 |
| f/k/a General Motors Corp., *et al.*, ) | (Jointly Administered) |
| ) | |
| <u>       Debtors.       </u> ) | |

ENVIRONMENTAL RESPONSE TRUST
CONSENT DECREE AND SETTLEMENT AGREEMENT
AMONG DEBTORS,
THE ENVIRONMENTAL RESPONSE TRUST ADMINISTRATIVE TRUSTEE,
THE UNITED STATES,
THE STATES OF DELAWARE, ILLINOIS, INDIANA, KANSAS, MICHIGAN,
MISSOURI, NEW JERSEY, NEW YORK, OHIO, WISCONSIN, COMMONWEALTH
OF VIRGINIA, THE LOUISIANA DEPARTMENT OF ENVIRONMENTAL
QUALITY, THE MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL
PROTECTION, THE DEPARTMENT OF ENVIRONMENTAL PROTECTION OF
THE COMMONWEALTH OF PENNSYLVANIA AND THE SAINT REGIS
MOHAWK TRIBE

Environmental Response Trust's completion of a sale of such Property or personalty. After Debtors execute this Settlement Agreement, Debtors shall not further encumber the Properties or Debtors' other interests therein and shall maintain the Properties, including the improvements thereon and the fixtures thereto that are related to Environmental Actions in the condition that they exist as of the date of such execution, except to the extent that ongoing Environmental Actions require otherwise or, with respect to demolition activities at Properties with existing and prospective contracts for demolition activities listed on Attachment B. Notwithstanding anything to the contrary herein or in the Plan, the lenders under the DIP Credit Agreement shall maintain any and all liens on any Collateral (as defined in the DIP Credit Agreement) and any transfer of that Collateral to the Environmental Response Trust shall not be made free and clear of the liens of the lenders under the DIP Credit Agreement, provided however that the Required Lenders hereby consent to the expenditure or sale of all Collateral securing those liens, claims and interests if such sale is made in accordance with the approved annual budget and the provisions of this Settlement Agreement, the Trust Agreement and the Plan.

32. On the Effective Date, and subject to adjustments as provided in Paragraph 36 of this Settlement Agreement as applicable, Debtors shall make a payment to fund the Environmental Response Trust in the amount of no less than $641,434,945; and the Debtor shall pay or cause to be paid to the Expendable Trust as defined in Paragraph 79 of this Agreement in the amount of $786,944, and the 807 Trust Fund as defined in Paragraph 80 of this Agreement in the amount of $102,390. The Environmental Response Trust funding amount consists of (i) a Minimum Estimated Property Funding Account containing funding with respect to each Property as set forth on Attachment A Column 2 attached hereto and totaling $295,036,131,

15

(ii) a Reserve Property Funding Account containing funding with respect to each Property as set forth on Attachment A Column 3 attached hereto and totaling $52,065,197, (iii) a Long Term OMM Property Funding Account containing funding (if any) for each Property as set forth in Attachment A Column 4 attached hereto and totaling $84,099,794; (iv) the Cushion Funding Account totaling $68,233,823; (v) the Administrative Funding Account in an amount of no less than $102 million; and (vi) the Administrative Funding Reserve Account totaling $40 million.

33. Environmental Response Trust funding of the Minimum Estimated Property Funding Accounts, Reserve Property Funding Accounts, and Long Term OMM Property Funding Accounts shall be held in trust in segregated trust subaccounts for each Property as provided in this Settlement Agreement and the Trust Agreement. Environmental Response Trust funding with respect to the Administrative Funding Account and the Cushion Funding Account each shall be held in trust in a segregated trust subaccount as provided in this Settlement Agreement. Funding from a subaccount for a Property may not be used for another Property except as otherwise expressly provided by and in accordance with this Settlement Agreement.

34. All interest earned in a subaccount shall be retained in such subaccount and used only for the same purposes as the principal in that subaccount as provided in this Settlement Agreement, subject to any reallocation provided for in accordance with the terms of this Settlement Agreement.

35. Notwithstanding any other provision of this Settlement Agreement or the Trust Agreement, "separately dedicated subaccounts" may be accomplished by accounting entries and nothing herein shall preclude the Administrative Trustee from commingling funds solely

for investment or administrative purposes, provided, however, that the Administrative Funding Account and Administrative Reserve Funding Account shall not be commingled with any other accounts under any circumstances.

Funding Adjustments.

36. (a) The amount of funding provided with respect to any Property in the Minimum Estimated Property Funding Account and Reserve Property Funding Account shall be reduced on the Effective Date to reflect actual expenditures by the Debtors at the Property for third party contractor costs for Environmental Actions at the Property (1) that were paid by Debtors between July 1, 2010, and October 31, 2010, except to the extent already credited under Attachment A, provided that the costs for which the Debtors are seeking reduction were approved in writing by the Lead Agency (including approval of an estimate of such costs), and (2) any actual expenditures by the Debtors at the Property for third party contractor costs for Environmental Actions with respect to a Property between November 1, 2010 and the Effective Date will be a reduction provided that such costs were pre-approved in writing by the Lead Agency (including pre-approval of an estimate of such costs). In no event shall any reductions be made for Environmental Actions performed by Debtors between July 1, 2010, and the Effective Date that exceed either the cost for them in the Property's Minimum Estimated Property Funding Account or Reserve Property Funding Account or any approval or pre-approval of such costs. Following completion of any such Environmental Action and payment thereof, Debtors shall provide documentation to the Lead Agency of the exact amount of the expenditure. In no event shall reductions be made for expenditures of Debtors that are not reimbursements of expenditures for and payments to third party contractors. In no event shall reductions be made for expenditures of Debtors on any property that is not related

17

to a Property set forth on Attachment A hereto. Any reductions or payments under this Paragraph are subject to the approval in writing of the Lead Agency that the reductions or payments are consistent with this Paragraph. Any disputes under this Paragraph shall be resolved by the Bankruptcy Court.

(b) The amount of funding provided with respect to the Administrative Funding Account shall be adjusted on the Effective Date to reflect actual expenditures by the Debtors, as a result of any delay in the Effective Date beyond December 31, 2010, for administrative costs that were part of Debtors projected budget for the Administrative Funding Account. Such adjustment shall be subject to the approval of the U.S. Treasury.

37. Debtors shall, on or before the Effective Date, directly reimburse a Lead Agency for costs expended by the Lead Agency for Environmental Actions with respect to a Property between June 1, 2009 and December 31, 2010 for Properties transferred to the Environmental Response Trust by MLC, or October 9, 2009 and December 31, 2010 for Properties transferred to the Environmental Response Trust by REALM or ENCORE, provided that (i) the applicable Debtor, the Lead Agency, and U.S. Treasury agree that the costs for which the Lead Agency is seeking reimbursement were included in the Property's Minimum Estimated Property Funding Account or Reserve Property Funding Account or were for Emergency Environmental Actions within the meaning of Paragraph 49; and (ii) the amount of funding provided with respect to any Property in the Minimum Estimated Property Funding Account and Reserve Property Funding Account is reduced on the Effective Date to reflect actual payments made by the Debtors to the Lead Agency. In the event of a dispute between the relevant Debtor, the United States, and/or Lead Agency regarding the Debtor's reimbursement of costs incurred by the Lead Agency as provided for in this Paragraph, the Bankruptcy Court

18

shall resolve the dispute. Any costs expended by the Lead Agency for Environmental Actions with respect to a Property between January 1, 2011 and the Effective Date will be included in, and reimbursed by the Trust after the Effective Date pursuant to the Property's first approved Annual Cleanup Budget provided that those costs were included in the Property's Minimum Estimated Property Funding Account or Reserve Property Funding Account or were for Emergency Environmental Actions within the meaning of Paragraph 49. Under no circumstances will the Debtors or the Environmental Response Trust under this Paragraph pay any costs expended by the Governments in connection with any work relating to Debtors' bankruptcy proceedings.

38. The United States shall be the sole beneficiary of the Environmental Response Trust.

39. The United States, the States, and the Tribe shall have the rights and powers set forth in this Settlement Agreement and the Trust Agreement, and nothing shall limit their ability to enforce those rights and powers, including but not limited to (i) the right to file suit against Debtors or the Administrative Trustee for failure to fund on the Effective Date the Environmental Response Trust's Minimum Estimated Property Funding Accounts, Reserve Property Funding Accounts, Long Term OMM Property Funding Accounts and Cushion Funding Account as set forth in this Settlement Agreement; (ii) the right to file suit against the Environmental Response Trust or the Environmental Response Trust Protected Parties at any time for fraud or willful misconduct (with all funds recovered in any such action to be restored to the Environmental Response Trust subaccount from which they were taken); or (iii) the right to file suit against the Administrative Trustee as set forth in Paragraphs 50, 101, 102, and 103 of this Settlement Agreement, provided, however, that the Bankruptcy Court shall have exclusive jurisdiction over any issues relating to (a) approval of budgets and

Effective Date, this Settlement Agreement shall be void and have no further force and effect. Any changes, revisions or amendments to the Settlement Agreement in response to public comment are subject to the approval of all Parties.

### XI.    JUDICIAL APPROVAL

108.    The settlement reflected in this Settlement Agreement shall be subject to approval by the Bankruptcy Court pursuant to Bankruptcy Rule 9019. Debtors shall move promptly for court approval of this Settlement Agreement and shall exercise commercially reasonable efforts to obtain such approval.

### XII.    PLAN

109.    The Debtors shall incorporate this Settlement Agreement into the Plan by reference and approval of this Settlement Agreement shall be a condition precedent to confirmation of the Plan. The Debtors shall not file a Plan or amend the Plan in a manner inconsistent with the terms and provisions of this Settlement Agreement, take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of this Settlement Agreement, or propose terms for any order confirming the Plan that are inconsistent with this Settlement Agreement. The Governments shall not oppose any term or provision of the Plan or an order confirming the Plan that is addressed by and is consistent with this Settlement Agreement. The Parties reserve all other rights or defenses that they may have with respect to the Plan. In the event of any inconsistency between the Plan, any order confirming the Plan, and this Settlement Agreement, the terms of this Settlement Agreement shall control.

### XIII.    RETENTION OF JURISDICTION

110.    The Bankruptcy Court shall retain jurisdiction over both the subject matter of this Settlement Agreement and the parties hereto, for the duration of the performance of the terms

ATTACHMENT A
Environmental Response Trust Property Funding for Environmental Activities

| MLC Site ID | Site | 1. Total Property Funding [a] | 2. Minimum Estimated Property Funding | 3. Reserve Property Funding | 4. OMM Property Funding [b] | 5. State | 6. Region | 7. Lead Agency | 8. Support Agency | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Total | $431,201,122 | $295,036,131 | $52,065,197 | $84,099,794 | | | | | |
| 1190 | GMNA Car - Wilmington | $11,728,473 | $9,084,380 | $1,603,126 | $1,040,967 | DE | 3 | State | EPA | |
| 1233 | GMPT - Danville Landfill | $5,258,489 | $3,090,664 | $545,411 | $1,622,414 | IL | 5 | State | EPA | * |
| 1288 | Former GM Delco Plant 5 | $7,268,319 | $5,508,605 | $972,107 | $787,607 | IN | 5 | EPA | State | |
| Various | Bedford Town Sites (60 Properties) | $4,017,597 | $3,352,197 | $591,564 | $73,836 | IN | 5 | EPA | State | |
| 1316 | Manual Transmission of Muncie | $5,695,448 | $3,715,037 | $655,595 | $1,324,816 | IN | 5 | State | EPA | |
| 1191 | Metal Fab - Indianapolis | $3,713,446 | $1,890,167 | $333,559 | $1,489,720 | IN | 5 | State | EPA | |
| 1320 | Delphi I - Anderson/Monroe | $2,811,565 | $2,280,338 | $402,413 | $128,814 | IN | 5 | State | EPA | |
| 1325 | Allison Gas Turbines | $1,668,107 | $416,235 | $73,453 | $1,178,419 | IN | 5 | State | EPA | |
| 1234 | Venture 2000 Property | $0 | $0 | $0 | $0 | IN | 5 | EPA | State | |
| 1329 | 1-Acre Fire Suppression Lot | $0 | $0 | $0 | $0 | IN | 5 | EPA | State | |
| 1289-1 | Fairfax I Plant | $4,786,321 | $3,727,624 | $657,816 | $400,881 | KS | 7 | State | EPA | |
| 1289-2 | Fairfax Parking Lot | $0 | $0 | $0 | $0 | KS | 7 | State | EPA | |
| 1192 | GMVM - Shreveport Assembly (exclude Stamping) | $0 | $0 | $0 | $0 | LA | 6 | State | EPA | |
| 1290 | MCD - Framingham Landfill | $2,325,836 | $623,123 | $109,963 | $1,592,750 | MA | 1 | State | EPA | ** |
| 1199-1 | GMPT - Willow Run | $35,779,454 | $22,761,031 | $4,016,652 | $9,001,771 | MI | 5 | State | EPA | |
| 1295 | GMNA - Buick City | $32,959,117 | $21,258,669 | $3,751,530 | $7,948,918 | MI | 5 | EPA | State | |
| 1197 | Pontiac North | $11,015,247 | $9,025,526 | $1,592,740 | $396,981 | MI | 5 | EPA | State | |
| 1003 | GMPT Saginaw Malleable | $10,725,985 | $7,310,082 | $1,290,014 | $2,125,889 | MI | 5 | State | EPA | |
| 1004 | Saginaw Nodular Iron (PIMS297) | $4,668,779 | $3,510,346 | $619,473 | $538,960 | MI | 5 | EPA | State | |
| 1300-3 | GMNA Car (Fisher Body) - Lansing | $7,736,956 | $5,013,345 | $884,708 | $1,838,903 | MI | 5 | State | EPA | |
| 3064 | Midsize & Luxury Car - Willow Run | $7,573,707 | $5,737,276 | $1,012,460 | $823,971 | MI | 5 | State | EPA | |
| 1302 | Delphi C - Livonia Groundwater | $6,669,037 | $2,734,383 | $482,538 | $3,452,116 | MI | 5 | EPA | State | |
| 1300-1 | GMNA Car - Lansing 2 | $5,509,240 | $3,800,527 | $670,681 | $1,038,032 | MI | 5 | State | EPA | |
| 1300-2 | GMNA Car - Lansing 3 | $5,385,566 | $3,695,404 | $652,130 | $1,038,032 | MI | 5 | State | EPA | |
| 1103 | Delphi I - Coldwater Rd. (Landfill) | $4,250,661 | $1,829,223 | $322,804 | $2,098,634 | MI | 5 | State | EPA | |
| 1198 | Stamping - Grand Rapids | $3,785,208 | $2,212,186 | $390,386 | $1,182,636 | MI | 5 | State | EPA | |
| 1100 | GMPT Bay City | $3,526,770 | $1,018,689 | $179,769 | $2,328,312 | MI | 5 | State | EPA | |
| 1299 | Flint West - Flint River (Bluff Street) | $3,186,069 | $2,708,159 | $477,910 | $0 | MI | 5 | EPA | State | |
| 1107 | Vacant Land South of Van Born (68 acres) | $3,210,644 | $2,609,105 | $460,430 | $141,109 | MI | 5 | EPA | State | |
| 1195 | GMPT - Livonia | $1,861,394 | $1,582,185 | $279,209 | $0 | MI | 5 | EPA | State | |
| 1106 | Greenpoint Landfill | $1,774,460 | $790,276 | $139,460 | $844,724 | MI | 5 | State | EPA | |
| 1291 | Hemphill lot | $1,779,650 | $1,476,984 | $260,644 | $42,022 | MI | 5 | State | EPA | |
| 1327 | Peregrine - Coldwater Rd. (plant) | $1,471,173 | $1,005,992 | $177,528 | $287,653 | MI | 5 | State | EPA | |
| 1001 | Employee Development Center | $1,213,426 | $1,031,412 | $182,014 | $0 | MI | 5 | State | EPA | |
| 1121 | Chevrolet-Pontiac-Canada Pontiac Fiero Assembly Plant | $839,741 | $713,780 | $125,961 | $0 | MI | 5 | EPA | State | |
| 1292 | Davison Road Land | $612,280 | $460,386 | $81,245 | $70,649 | MI | 5 | State | EPA | |
| 1296 | Dort Highway Land | $528,634 | $449,339 | $79,295 | $0 | MI | 5 | EPA | State | |
| 1306-1 | PCC-Validation | $470,639 | $400,043 | $70,596 | $0 | MI | 5 | EPA | State | |
| 1328 | Saginaw PLt 2 Landfill | $374,204 | $318,073 | $56,131 | $0 | MI | 5 | State | EPA | |

Page 1 of 3

## ATTACHMENT A
### Environmental Response Trust Property Funding for Environmental Activities

| MLC Site ID | Site | 1. Total Property Funding [a] | 2. Minimum Estimated Property Funding | 3. Reserve Property Funding | 4. OMM Property Funding [b] | 5. State | 6. Region | 7. Lead Agency | 8. Support Agency |
|---|---|---|---|---|---|---|---|---|---|
| 1308 | Pontiac Centerpoint Campus - West | $215,981 | $183,584 | $32,397 | $0 | MI | 5 | EPA | State |
| 1002 | Powertrain - Romulus Engineering Center | $276,029 | $234,625 | $41,404 | $0 | MI | 5 | State | EPA |
| 1005 | Former Howard W/H - Vacant Land | $248,252 | $211,014 | $37,238 | $0 | MI | 5 | State | EPA |
| 1108 | Textile Road Land | $160,789 | $136,671 | $24,118 | $0 | MI | 5 | EPA | State |
| 1310 | ACC - Penske site | $150,495 | $127,921 | $22,574 | $0 | MI | 5 | State | EPA |
| 1102 | Linden Road Landfill | $167,523 | $72,626 | $12,816 | $82,081 | MI | 5 | State | EPA |
| 1297 | Windiate Park Lots | $143,971 | $80,673 | $14,236 | $49,062 | MI | 5 | State | EPA |
| 1294 | Lot 8 - 6241 Cass Avenue at Amsterdam Ave. | $124,382 | $105,725 | $18,657 | $0 | MI | 5 | State | EPA |
| 1101 | 6560 Cass Ave/GMNA New Center Complex | $59,107 | $50,241 | $8,866 | $0 | MI | 5 | State | EPA |
| 1298-1 | GLTC land (Atherton Landfill/Die Lot Parking) | $223,394 | $189,885 | $33,509 | $0 | MI | 5 | State | EPA |
| 1006 | Vacant Land (76 acres) | $20,924 | $17,785 | $3,139 | $0 | MI | 5 | EPA | State |
| 1104 | Delphia C Livonia Coil & Bumper | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1105 | Land along Stanley Road | $0 | $0 | $0 | $0 | MI | 5 | State | EPA |
| 1116 | Fiero Site (Powerhouse) | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1120 | Flint Flow-through Warehouse | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1194 | GMPT - Flint North #5/#10/#81 | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1196 | GMVM - Pontiac Assembly | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1293 | Midsize & Luxury Car Clark Street | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1301 | Delta Engine Plant | $0 | $0 | $0 | $0 | MI | 5 | State | EPA |
| 1303 | 1831 Grondinwood (residence) | $0 | $0 | $0 | $0 | MI | 5 | State | EPA |
| 1304 | 1394 Oak Hollow (residence) | $0 | $0 | $0 | $0 | MI | 5 | State | EPA |
| 1305 | Pontiac Centerpoint Campus - Central | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1307 | Pontiac Centerpoint Campus - East | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1309 | Centerpoint Land (no Etkin ground lease) | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1311 | Centerpoint Land (Etkin ground lease) | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1312 | 652 Meadow Drive | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1313 | 642 Meadow Drive | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1314 | 631 Meadow Drive | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1315 | 607 Meadow Drive | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1199-2 | Willow Run Engineering Center | $0 | $0 | $0 | $0 | MI | 5 | State | EPA |
| 1306-2 | PCC Validation Southern Parking Lot | $0 | $0 | $0 | $0 | MI | 5 | EPA | State |
| 1007 | Former Leed's Assembly Plant - Northern Parcel | $1,724,806 | $1,166,210 | $205,802 | $352,794 | MO | 7 | State | EPA |
| 1109 | Former Leed's Assembly Plant - Southern Parcel | $0 | $0 | $0 | $0 | MO | 7 | State | EPA |
| 1008 | Hyatt Clark Industries | $14,176,022 | $6,900,785 | $1,217,786 | $6,057,451 | NJ | 2 | State | EPA |
| 1009 | Delphi Interior & Lighting Systems - Trenton | $10,532,047 | $8,422,742 | $1,486,366 | $622,939 | NJ | 2 | State | EPA |
| 1200 | Massena | $120,860,604 | $92,352,887 | $16,297,568 | $12,210,149 | NY | 2 | EPA | State |
| 1010 | GM-IFG Syracuse | $31,121,812 | $17,720,946 | $3,127,226 | $10,273,640 | NY | 2 | State | EPA |
| 1110 | Ley Creek PCB Dredging Site | $1,882,342 | $415,634 | $73,347 | $1,393,361 | NY | 2 | State | EPA |
| 1098 | Tonawanda Engine Landfill | $0 | $0 | $0 | $0 | NY | 2 | State | EPA |
| 1317 | Delphi Harrison - Moraine | $25,759,964 | $19,306,452 | $3,407,021 | $3,046,491 | OH | 5 | EPA | State |
| 1111 | Delphi Interior - Elyria | $7,263,306 | $3,421,417 | $603,780 | $3,238,109 | OH | 5 | State | EPA |

## ATTACHMENT A
### Environmental Response Trust Property Funding for Environmental Activities

| MLC Site ID | Site | 1. Total Property Funding [a] | 2. Minimum Estimated Property Funding | 3. Reserve Property Funding | 4. OMM Property Funding [b] | 5. State | 6. Region | 7. Lead Agency | 8. Support Agency |
|---|---|---|---|---|---|---|---|---|---|
| 1201 | Stamping - Mansfield | $2,990,952 | $2,110,204 | $372,389 | $508,359 | OH | 5 | State | EPA |
| 1099 | GMPT - Toledo 103C Landfill | $2,634,063 | $1,087,244 | $191,867 | $1,354,952 | OH | 5 | EPA | State |
| 1203 | GMPT - Parma Complex | $746,705 | $634,699 | $112,006 | $0 | OH | 5 | State | EPA |
| 1011 | Lordstown Excess Land | $0 | $0 | $0 | $0 | OH | 5 | State | EPA |
| 1012 | Moraine Lagoon | $0 | $0 | $0 | $0 | OH | 5 | EPA | State |
| 1202 | Moraine Assembly | $0 | $0 | $0 | $0 | OH | 5 | EPA | State |
| 1204 | Metal Fab - Pittsburgh | $3,299,231 | $2,757,748 | $486,661 | $54,822 | PA | 3 | State | EPA |
| 1205 | GMPT - Fredericksburg | $25,922 | $22,034 | $3,888 | $0 | VA | 3 | State | EPA |
| 1013 | Janesville Training Center | $210,857 | $165,588 | $29,221 | $16,048 | WI | 5 | State | EPA |

**Notes:**

[a] Funding as of August 13, 2010 and subject to the adjustments provided for under paragraph 36 and 37 of the Settlement Agreement.
Present value calculated as of January 2011, using Laddered Treasuries for discount rate (2/10/10) and CBO CPI projection for inflation rate (1/28/10).

[b] Long-term OMM costs after 10 years of remediation.

\* In addition, $102,390 in funding for closure and post-closure activities will be placed in an Illinois trust fund created pursuant to 35 Ill. Adm. Code 807.661.

\*\* In addition, $786,944 in funding for long-term OMM will be placed in a Massachusetts expendable trust account.