# Exhibit C

# Motors Liquidation Company

c/o AlixPartners LLP
2000 Town Center, Suite 2400
Southfield, Michigan 48075

Phone: 248.262.8445
Fax: 248.262.8491
E-Mail: akoch@alixpartners.com

November 8, 2011

Mr. David Berz, Partner
Weil Gotshal & Manges
1300 I Street
Washington, DC 20005-3314

<u>M. Hill Email re Funding of RACER at Closing</u>

Dear Mr. Berz:

On October 12, 2011 Mr. Michael Hill of RACER Trust emailed you concerning an "apparent underfunding" of the Trust at closing. In his email Mr. Hill appears to be asserting that net book value of U.S. Treasury TIPS securities was an inappropriate valuation of required closing date funding. Instead, Mr. Hill asserts that a fair market value or "mark to market" was required. You have asked that I comment on Mr. Hill's email.

<u>Background</u>
Environmental liability was a topic that consumed enormous time and resources to estimate and obtain consensus of all interested parties before MLC could confirm its plan of liquidation. This included estimating the anticipated timing of spending remediation and administrative monies and "cushions" associated in connection therewith. These estimates received intense scrutiny from MLC and its advisors, the U.S. Treasury, the Official Committee of Unsecured Creditors and its advisors as well as Federal and state government environmental agencies and their consultants. Consensus was reached.

<u>Matching Funding Cash to Projected Environmental Spending</u>
Projected environmental spending by year was projected for 100 years and was discounted to its NPV using Congressional Budget Office inflation estimates. As managers of the MLC wind-down, the

Mr. David Berz
November 8, 2011

impact of expected inflation over 100 years required that we give careful attention to earning a rate of return on monies that were held by us so as to mitigate the impact of inflation when these monies and environmental liabilities were turned over to the environmental trustee that eventually would be selected by the U.S. Government and 14 states.

We examined a number of possibilities in considering how best to match rate of return with inflation. We concluded that the most attractive option was to make extensive use of U.S. Treasury Inflation-Protected Securities or "TIPS". The terms of a TIPS security provide that its principal amount is increased with inflation and decreased by deflation, as measured by the Consumer Price Index. At the same time as TIPS principal is adjusted for inflation, a TIPS security pays a stated interest rate based on the inflation adjusted principal. At maturity, the securities will be redeemed at the greater of their inflation-adjusted principal or par value at original issue.

By adopting a laddered portfolio of TIPS securities linked to the expected timing of environmental spending we would, in all material respects, defease the risk of inflation. In other words, if actual inflation exceeded estimated inflation, the TIPS investment principal would be similarly increased. Therefore, available monies would continue to appropriately match the expected cost of remediating environmental liabilities. We believe that this is a major mitigation of risk that inures to the benefit of the Trust.

Because the bond maturities are matched to the timing of expected environmental spending we concluded that the appropriate accounting was to treat the U.S. Treasury securities as assets to be held to maturity that should be carried at amortized cost plus accrued interest. This is the basis upon which MLC prepared its monthly operating reports; quoted market values were disclosed in a footnote. These monthly reports were filed both with the Bankruptcy Court and the Securities and Exchange Commission.

2 | Page

Mr. David Berz
November 8, 2011

### The Approval Process

After concluding that investing in a laddered portfolio of TIPS securities would defease inflation risk we met with the U.S. Treasury to explain our conclusion and the rationale for that decision. We provided significant supporting material to the Treasury and after a period of internal review we were advised that the U.S. Treasury concurred with our decision.

We made similar presentations to the U.S. Trustee for the Southern District of New York and advisors to the Official Committee of Unsecured Creditors. Both concurred in our recommendation. Thereafter, as required by our Debtor-in-Possession Credit Agreement, notice of a proposed amendment thereto providing for investment in U.S. Treasury securities with maturities of up to 15 years was filed with the Bankruptcy Court as required by the order that approved the DIP Credit Facility.

### Discussions with Messrs. Laws and Hill in Preparation for the Closing

We spent extensive time with Mr. Laws and Mr. Hill in helping them to understand the scope of the operation they would be assuming from MLC as well as the detail surrounding it. This included detailed presentations on environmental remediation, properties to be transferred, administration of the organization and MLC's accounting and treasury operations. We began this process soon after their appointment and it continued with varying degrees of intensity until MLC's emergence from bankruptcy. In presentations and numerous writings it was always abundantly clear that the Trust would be funded with TIPS securities.

One of the issues that we covered on more than one occasion was the investment strategy that is outlined above. I personally made a presentation on this topic to Mr. Hill at a two-day orientation meeting. I explained the strategy and how it had been implemented and why we, the U.S. Treasury, and others had concluded that it provided the most optimal risk remediation for the Trustee.

Mr. David Berz
November 8, 2011

At a subsequent meeting my colleagues, Jim Selzer and Brian Rosenthal, again presented the entire investment portfolio and rationale behind it in extensive detail.

At no time during our meetings or after Mr. Hill's review of documents was a question raised as to the efficacy of the approach or the accounting that we had adopted.

Mr. Hill's Assertions
Mr. Hill appears to be suggesting that the assets should have been marked to market, thereby reducing their value from amortized cost without also recasting the liabilities to which the investments were matched. I believe that a mark to market approach on investments also would need to be accompanied by a similar revaluation of the environmental liability. This was not done because, as noted, the assets and liabilities had already been matched.

As noted, the U.S. Treasury concurred with MLC's investment strategy with matching TIPS to expected environmental spending. Accordingly, to now suggest that the Treasury should add an additional $13.5 million to RACER's coffers seems patently unfair particularly since, in my opinion, it is based on specious reasoning.

Mr. Hill's Claim for Additional Funding
The apparent claim being made by Mr. Hill in his email is that RACER was entitled to receive cash at closing. As a consequence of the portfolio's short-term market value having dipped below amortized cost, Mr. Hill appears to be making a claim for additional funding of $13.5 million as a consequence of that temporary market decline. MLC, on the other hand, had explained to Mr. Hill in extensive detail how and why it had pursued the investment approach selected and always made full and complete disclosure of the difference between carrying value and market value. As previously stated Mr. Hill's view is inconsistent with the investment objectives of the Trust and the approved risk mitigation strategy that was deployed by MLC prior to the establishment of the Trust.

4 | Page

Mr. David Berz
November 8, 2011

It is interesting that the market value[1] today of the very securities about which Mr. Hill is concerned has increased in value by $36.3 million since April 2, 2011.  So, instead of a shortfall, the market value today of RACER's TIPS securities that have not yet matured exceeds amortized cost by $22.2 million as of October 25, 2011.  Thus it appears that what RACER is effectively seeking is a windfall of additional cash from the U.S. Treasury.  For the reasons set forth in this letter we believe that request should be denied.

Very truly yours,

A. A. Koch
President

---

[1] Accrued interest is excluded from all current market value calculations as well as at April 2, 2011.

5 | Page