**Hearing Date: February 9, 2012 at 11:45 a.m.**

GREENBERG TRAURIG, LLP
Bruce R. Zirinsky, Esq.
Nancy A. Mitchell, Esq.
John H. Bae, Esq.
Gary D. Ticoll, Esq.
MetLife Building
200 Park Avenue
New York, New York 10166
Telephone: (212) 801-9200
Facsimile: (212) 801-6400
Email: zirinskyb@gtlaw.com
   mitchelln@gtlaw.com
   baej@gtlaw.com
   ticollg@gtlaw.com

*Counsel for Certain Noteholders of General Motors Nova Scotia Finance Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
                  :
**In re**              :  Chapter 11
                  :
**MOTORS LIQUIDATION COMPANY,** *et al.*, :  Case No. 09-50026 (REG)
  **f/k/a General Motors Corp.,** *et al*.,   :
                  :
      **Debtors.**       :  (Jointly Administered)
                  :
------------------------------------------------------------------ x

**OBJECTION OF CERTAIN NOTEHOLDERS OF GENERAL MOTORS NOVA SCOTIA FINANCE COMPANY TO MOTION OF WILMINGTON TRUST COMPANY, (I) AS GUC TRUST ADMINISTRATOR, TO (A) LIQUIDATE NEW GM SECURITIES FOR THE PURPOSE OF FUNDING FEES, COSTS AND EXPENSES OF THE GUC TRUST AND THE AVOIDANCE ACTION TRUST, AND (B) TRANSFER NEW GM SECURITIES TO THE AVOIDANCE ACTION TRUST FOR THE PURPOSE OF FUNDING FUTURE TAX LIABILITIES, AND (II) AS AVOIDANCE ACTION TRUST ADMINISTRATOR, TO APPROVE AN <u>AMENDMENT TO THE AVOIDANCE ACTION TRUST AGREEMENT</u>**

**Hearing Date: February 9, 2012 at 11:45 a.m.**

## TABLE OF CONTENTS

I.   PRELIMINARY STATEMENT ................................................................................... 1

II.  BACKGROUND ........................................................................................................... 3

III. OBJECTION .................................................................................................................. 4

IV.  CONCLUSION ............................................................................................................ 12

NY 241,794,196v9 2-2-12

...

**Hearing Date: February 9, 2012 at 11:45 a.m.**

## TABLE OF AUTHORITIES

**Federal Cases**

*First Hawaiian Bank v. Anderson (In re Central Pacific Boiler & Piping, Ltd.)*, 88 B.R. 277 (Bankr. D. Haw. 1988) .................................................................................................. 5

*In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833 (3d Cir. 1994) ...................................... 5

*In re Keene Corp.*, 205 B.R. 690 (Bankr. S.D.N.Y. 1997) ............................................... 5

*In re Kohl*, 421 B.R. 115 (Bankr. S.D.N.Y. 2009) .......................................................... 5

*In re Mesa Air Group, Inc.*, 449 B.R. 441 (Bankr. S.D.N.Y. 2011) ................................ 5

Hearing Date: February 9, 2012 at 11:45 a.m.

The Nova Scotia Noteholders (as defined below)[1], which hold Notes of General Motors Nova Scotia Finance Company ("GM Nova Scotia"), submit this objection (the "Objection") to the Motion of Wilmington Trust Company ("WTC"), (I) as GUC Trust Administrator, to (A) Liquidate New GM Securities for the Purpose of Funding Fees, Costs and Expenses of the GUC Trust and the Avoidance Action Trust, and (B) Transfer New GM Securities to the Avoidance Action Trust for the Purpose of Funding Future Tax Liabilities, and (II) as Avoidance Action Trust Administrator, to Approve an Amendment to the Avoidance Action Trust Agreement (the "Motion"); and in support of the Objection, respectfully represent as follows:

## I. PRELIMINARY STATEMENT

1. By its Motion, WTC is asking the Court to approve, *inter alia*, the sale of New GM Securities valued at over $57,000,000 to create a slush fund to pay fees to itself and its professionals in some instances more than 800% in excess of the budget approved by this Court as part of the confirmation of the Plan (the "Initial Budget"). The over-budget amounts requested by WTC include: (i) $17,866,537 for excess fees and expenses of the GUC Trust in 2011 and 2012 ("GUC Trust Fees & Expenses"); and (ii) $13,714,000 for excess fees and expenses of the Avoidance Action Trust ("Avoidance Action Trust Fees & Expenses"). WTC also is asking the Court to approve the transfer of approximately $17,000,000 in New GM Securities from the GUC Trust to the Avoidance Action Trust to fund its potential future tax liabilities.

2. Coming a mere 9 months after plan confirmation, WTC's request for unfettered access to funds rightfully belonging to all of General Motors unsecured creditors, violates

---

[1] The Nova Scotia Noteholders are Elliott Management Corporation ("Elliott") and Fortress Investment Group LLC ("Fortress"), each on behalf of its managed entities, and Morgan Stanley & Co. International PLC ("MS") (collectively, the "Nova Scotia Noteholders").

1

bedrock principles that should be the hallmark of any post-confirmation fiduciary: transparency, accountability and the incurrence of only those expenses that are necessary and reasonably calculated to increase recoveries for unsecured creditors. Having failed to satisfy these principles, the Motion, in its present form, should be denied, except for the request for $8,648,781 to fund WTC's efforts to obtain no-action letters from the SEC that would permit the GUC Trust to issue Trust Units that are transferrable without having to be registered under Section 12(g) of the Securities Exchange Act of 1934 ("Reporting Costs").[2]

3.　In connection with the Plan Confirmation Hearing, WTC represented in writing that "the fees and expenses of the GUC Trust, including the fees and expenses of any professionals retained by the GUC Trust will be *tightly constrained by a detailed and inflexible budget* which will be initially approved by the U.S. Treasury, the Debtors and the Committee . . . ." (WTC Resp. to Confirmation Objections at ¶ 4 [Docket No. 9390] (emphasis added).) As explained in greater detail below, WTC's requested budget amounts exceed the Initial Budget in aggregate by 70%. Inexplicably, WTC fails to provide any detail about how or why it has so greatly exceeded the approved budget or to articulate how these additional expenses will translate into actual benefits to the estates. Indeed, the Nova Scotia Noteholders' direct experience has shown that the GUC Trust's approach to litigation has been wasteful of estate resources and is likely representative of excessive cost overruns and the reason for seeking a huge budget increase. This Court should hold WTC to its prior representations regarding the tight constraint of a "detailed and inflexible budget."

---

[2] The Nova Scotia Noteholders do not object to this portion of the Motion, insofar as WTC has identified specific benefits that will accrue to the estates' beneficiaries, and the efforts of the WTC have been transparent.

4.  The Nova Scotia Noteholders respectfully request that the Court deny the Motion in the absence of an explanation by WTC why it exceeded the budget so excessively and a tangible explanation of how its efforts are realistically expected to benefit the estates. The Nova Scotia Noteholders also request that the Court require WTC to submit its fees and expenses and those of all of its retained professionals for review and scrutiny by the Court and the Office of the United States Trustee before they can be paid by the estates. WTC and its professionals must be answerable to independent parties that can objectively review their fees and expenses to assess whether their efforts are reasonable and beneficial to the estates. Under the current construct, WTC and its professionals are not answerable to anyone, and as demonstrated by the request to exceed the Initial Budget by 70%, there are no checks and balances in place to monitor their fees and expenses. For these reasons, the Nova Scotia Noteholders respectfully request that the Court: (i) require WTC and its professionals to present a record to the Court to justify the increases to the Initial Budget they seek; and (ii) require WTC and its professionals to be subject to oversight to ensure that their fees and expenses are benefiting the estates.

## II.    BACKGROUND

5.  The Nova Scotia Noteholders are holders of two series of publicly traded notes issued by GM Nova Scotia on July 10, 2003 in the aggregate principal amount of £600,000,000 (the "Notes"). Payment of the principal, interest and other amounts due and owing under the Notes was unconditionally guaranteed by Motors Liquidation Company, f/k/a General Motors Corporation ("MLC"). The Nova Scotia Noteholders timely filed proofs of claim against MLC on account of the guaranty (the "Guaranty Claims").[3]

---

[3] On November 9, 2009, Greenberg Traurig, LLP ("GT") filed a motion in connection with the bar date order on behalf of Aurelius Capital Management, LP, Drawbridge Special Opportunities Advisors, LLC, Fortress Credit Opportunities Advisors, LLC, Appaloosa Management L.P., Elliott Associates, LP, Perry Partners, L.P. and Perry

3

6. On July 2, 2010, the statutory committee of unsecured creditors (the "Committee") filed an objection to the claims of the Nova Scotia Noteholders, raising allegations of bad faith and avoidance claims that the estates no longer own (the "Claims Objection"). Upon the effective date of the Debtors' Plan, WTC, acting as the GUC Trust Administrator, inherited the Claims Objection and has continued its prosecution.[4] By the Claims Objection, WTC seeks to, among other things, unwind the June 1, 2009 Lock-Up Agreement (the "Lock-Up Agreement").[5] The Nova Scotia Noteholders believe the Claims Objection is without merit and will present to the Court their full defenses to the Claims Objection in due course.

### III.  OBJECTION

7. By this Motion, WTC asks the Court to approve, *inter alia,* the sale of New GM Securities valued at over $57,000,000 to fund costs and expenses in excess of the Initial Budget approved by the Court as part of the Plan. The over-budget amounts requested by WTC include $17,866,537 for the GUC Trust Fees & Expenses and $13,714,000 for the Avoidance Action Trust Fees & Expenses. In addition, WTC seeks authority to liquidate additional New GM

---

Partners International, Inc. (the "Original GT-Represented Nova Scotia Noteholders"). At a hearing held on November 20, 2009, the Court ruled that the Original GT-Represented Nova Scotia Noteholders and any other Nova Scotia Noteholders that had communicated with GT (the "Contacting Nova Scotia Noteholders") were required to file individual proofs of claim. The Court also authorized GT to file a group proof of claim for holders of Notes other than the Original GT-Represented Nova Scotia Noteholders and the Contacting Nova Scotia Noteholders (the "Other Nova Scotia Noteholders"). An order consistent with the Court's bench ruling was entered on December 23, 2009. Consistent with Court's ruling, (i) the GT-Represented Nova Scotia Noteholders and the Contacting Nova Scotia Noteholders filed the following claims: Nos. 67498, 66265, 67428, 67500, 66266, 67499, 67429, 66217, 69347, 69346, 67430, 66267, 66216, and 67501 (collectively, the "Individual Noteholder Claims") and (ii) GT filed a global proof of claim (claim no. 69551) on behalf of the Other Nova Scotia Noteholders in the amount of $1,072,557,531.72 less the aggregate amount of the Individual Noteholder Claims (the "Global Noteholder Claim"). In addition, certain other claims have been filed by other holders of Notes which may be duplicative in part of the claims covered by the Global Noteholder Claim.

[4] Pursuant to section 12.1 of the Plan, the Committee was dissolved on the effective date of the Plan. Under section 6.2(f) of the Plan, the GUC Trust Administrator has the power to prosecute and resolve objections to disputed general unsecured claims.

[5] The Lock-Up Agreement was entered into between and among certain holders of the Notes (including Elliott and Fortress), MLC, GM Nova Scotia, GM Canada, and GM Investments Ltd.

Securities valued at approximately $17,000,000 to fund a potential Avoidance Action Trust tax liability.[6] The Court should deny the Motion to increase the Initial Budget by these amounts unless WTC is able to articulate exactly how and why it has so greatly exceeded the Initial Budget and explain how these additional expenses will benefit the Nova Scotia Noteholders and other beneficiaries of the GUC Trust.

8.  Courts uniformly have held that fees and expenses of retained professionals of the estate must be scrutinized and that their services be evaluated to ensure that they serve the best interests of the estate. *See In re Busy Beaver Bldg. Ctrs., Inc.*, 19 F.3d 833, 844 (3d Cir. 1994) (holding that the "bankruptcy court must protect the estate, lest overreaching attorneys or other professionals drain it of wealth which by right should inure to the benefit of unsecured creditors"); *In re Mesa Air Group, Inc.*, 449 B.R. 441, 443 (Bankr. S.D.N.Y. 2011) ("[B]ankruptcy courts have…an important duty to scrutinize applications before approving requests for fees and reimbursement of expenses."); *In re Kohl*, 421 B.R. 115, 125 (Bankr. S.D.N.Y. 2009) (noting a bankruptcy court's duty to evaluate services in the context of whether they provide a benefit to estate); *In re Keene Corp.*, 205 B.R. 690, 695 (Bankr. S.D.N.Y. 1997) (quoting and applying the same requirement as stated above in *Busy Beaver* to partially disallow fees); *see also First Hawaiian Bank v. Anderson (In re Central Pacific Boiler & Piping, Ltd.)*, 88 B.R. 277, 278 (Bankr. D. Haw. 1988) (finding that a chapter 7 trustee has a "sworn obligation and duty to keep the administrative expenses of the estate at a minimum").

9.  Here, WTC and its retained professionals have not been subject to any scrutiny of their fees and expenses. While nothing in the Plan confirmed by this Court requires the fees and expenses of WTC or its professionals to be subject to review, the Committee and WTC made

---

[6] As stated above, the Nova Scotia Noteholders do not object to the $8,648,781 sought in connection to the Reporting Costs matter.

5

important representations that the Initial Budget would be subject to scrutiny and would be "inflexible." (WTC Resp. to Confirmation Objections at ¶ 4.) In connection with Plan confirmation, a number of parties raised concerns about the oversight of the GUC Trust and its professionals. In response, the Committee assured the Court that "the dollars are Treasury's dollars, and you have seen how tightly Treasury has negotiated the post effective date budget. You know how hard it was to negotiate those numbers, and the document is replete with Treasury's budgetary controls over the expenditure of the cash." (Confirmation Hearing Tr. at 146:24-147:3.) WTC has also represented in writing that "the fees and expenses of the GUC Trust, including the fees and expenses of any professionals retained by the GUC Trust, will be *tightly constrained by a detailed and inflexible budget* which will be initially approved by the U.S. Treasury, the Debtors and the Committee . . . ." (emphasis added) (WTC Resp. to Confirmation Objections at ¶ 4 (emphasis added).)

10. As the table below shows, WTC's requested modification of the Initial Budget represents an *increase of 70%*, which hardly reflects the sort of "tightly constrained" and "inflexible" budget that WTC promised:

|  | **Original Budget** | **Revised Request** | **Increase Requested** | **Increase (%)** |
|---|---|---|---|---|
| GUC Trust Fees & Expenses | $43,105,000 | $60,971,500 | $17,866,500 | 41% |
| Avoidance Action Trust | $1,576,000 | $15,290,000 | $13,714,000 | 870% |
| **Total** | **$44,681,000** | **$76,261,500** | **$31,580,500** | **70%** |

11. Despite the substantial size of the extraordinary budget increases sought in the Motion a mere nine months after the Plan's effective date, WTC fails to provide any meaningful or substantive explanation either for the size and scope of its 2011 cost overruns or the

6

monumental increases it seeks for 2012. Indeed, WTC neglects to provide a single detail describing how and why it failed to comply with the Initial Budget to which it had initially agreed or how it intends to spend the estates' money going forward. In only nine months, the GUC Trust has spent 35% of the $52.7 million included in the budget intended to cover all professional fees and expenses for its activities for the entire life of the GUC Trust.

12. WTC has simply disregarded the assurances it provided to the Court and creditors during the confirmation process. Having prematurely exhausted the post-effective date budget it negotiated at arms-length with Treasury, WTC now asks for an additional $57,000,000 to spend on ill-defined "fees, costs, and expenses." (*See* Mot. at ¶ 34.) Neither the Nova Scotia Noteholders nor the Court has any information on how WTC and its professionals arrived at the new proposed budget, and nothing in the Motion suggests that any representative of the GUC Trust beneficiaries participated in whatever negotiations may have taken place. In all likelihood, to the extent negotiated at all, the requested budget was "negotiated" by WTC as GUC Trust Administrator, WTC as Avoidance Action Trust Administrator,[7] the GUC Trust Monitor, the Avoidance Action Trust Monitor (together with the GUC Trust Monitor, the "<u>Monitor</u>"), and WTC's professionals. All of these parties are the ones who will benefit from the budget increases WTC is seeking. For example, according to the Motion, WTC fees will increase by at least $5.2 million (206%) and the Monitor's fees will increase by at least $3.29 million (282%).

13. Under the terms of the GUC Trust, Court approval is required to make payments to professionals in excess of the Initial Budget and to liquidate New GM Securities. Because there is no longer any other disinterested control or oversight of the GUC Trust or the Avoidance Action Trust, the Nova Scotia Noteholders respectfully submit that the Court should carefully

---

[7] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Plan.

7

scrutinize any request for a budget increase, in particular where, as here, the substantial increase sought inures to the benefit of the GUC Trustee itself and the Monitor that purportedly oversees the GUC Trustee rather than to the beneficiaries of the GUC Trust. To that end, WTC should be required to provide a detailed accounting of its past expenses and projections as well as a detailed explanation for the substantial budgetary overruns.

14. For example, to support its single largest request to increase the budget of the Avoidance Action Trust over almost ninefold from $1,576,000 to $15,290,000, the Motion merely states: "The Avoidance Action Trust Administrator must perform a good faith valuation of the Term Loan Avoidance Action in order to establish a tax basis for any future recovery." (*Id.* at ¶ 20.) The Motion provides absolutely no basis for the Court to determine whether the $13,714,000 increase is reasonable, including $3,290,000 in additional fees for WTC and the Monitor.[8]

15. The Avoidance Action Trust only includes one action, the Term Loan Avoidance Action; no other actions were commenced prior to the running of the applicable statutes of limitations. (Motors Liquidation Company GUC Trust Quarterly GUC Trust Reports as of December 31, 2011 at 2-3 ("Quarterly Report") [Docket No. 11358].) But even WTC acknowledges that "[i]t is still unclear whether any amounts actually avoided pursuant to the Term Loan Avoidance Action would be for the benefit of holders of Allowed General Unsecured Claims." (*Id.* at 3.) That is, even WTC is unsure if any of its efforts pursuing the Term Loan Avoidance Action will benefit the unsecured creditors -- the purported beneficiaries of the GUC

---

[8] The request to increase the GUC Trust Reporting budget is the only request for which WTC provides any information upon which the Court can make a determination, as it includes a list of specific benefits that will accrue to the estates' beneficiaries if the No-Action Letter is obtained and the GUC Trust Units are transferable without having to be registered under Section 12(g) of the Securities Exchange Act of 1934. For these reasons, the GUC Trust Beneficiaries do not object to this portion of the Motion.

Trust -- at all. The correlation of the exorbitant request for additional fees for professionals and the potential recovery to the GUC Trust beneficiaries may be zero. WTC cannot justify such a large request to provide additional funds for the Avoidance Action Trust.

16. WTC also seeks an additional $17,866,500 to cover accrued 2011 budget overruns and projected 2012 overruns, a 41% increase over the Initial Budget for GUC Trust Fees and Expenses. Despite the magnitude of this request, the Motion fails to provide any reasonable explanation for why the Initial Budget was purportedly insufficient and why WTC requires such an extraordinary increase (that includes a $1,200,000 increase for WTC and a $1,200,000 increase for the GUC Trust Monitor that purportedly oversees WTC). To justify the requested increase, WTC merely states: (i) the Alternative Dispute Resolution ("ADR") procedures have been slower than anticipated; (ii) resolution of claims filed by *pro se* claimants requires more time and attention than claims of a similar size filed by represented claimants; (iii) new claims have "diverted attention;" (iv) distribution costs have been higher than anticipated because the Trust Units are non transferable; and (v) communication costs have been greater than anticipated. The simple recitation of these factors is insufficient to enable the Court or any of the GUC Trust beneficiaries to evaluate and scrutinize WTC's budget request.

17. The little information available to date to the Nova Scotia Noteholders shows that the Trust spent $5,100,000 on professionals in the last quarter of 2011 and $18,500,000 over the last three quarters of 2011. (Quarterly Report at 17-18.) The reasonableness or purpose of such large expenditures remains unknown and unjustifiable. In the last three quarters of 2011, the Trust's activities have reduced the total claim amount by less than 6% and disputed claims amount by approximately 30.5%. These statistics standing alone provide no information explaining how efficiently any of that money was spent. This information only raises further

questions, such as: (i) was a relatively small portion of that amount spent to achieve most of those reductions and the remainder spent in less successful pursuits?; (ii) did the successful claims objections raise complex issues or were they based on relatively straightforward arguments, such as duplicate or time-barred claims and the like?; or (iii) what is the likelihood of achieving any further significant reductions compared to the budget sought?  There is no indication of what the WTC believes would be considered a success or the risk factors in getting to that result or an actual figure of what total benefit WTC expects to achieve for the beneficiaries of the GUC Trust.

18.    WTC provides no cost-benefit analysis correlating its request for substantial additional sums, what it reasonably hopes to achieve by expending these amounts and the risks associated with each its pursuits.  WTC should be required to delineate in sufficient detail what it hopes to gain from spending these amounts by providing a budget with specific amounts allocated to various efforts and stating a tenable basis for why each amount is reasonable to achieve the task, what the potential recovery would be to the estates if successful and an analysis of the likelihood of success.  Only then can the Court, the United States Trustee, and the beneficiaries of the GUC Trust assess whether WTC and its professionals are providing any foreseeable benefit to the estates by reviewing the sums expended on a periodic basis against the progress that may have been made in that period.

19.    Importantly, WTC fails to quantify the costs associated with the budget overruns. WTC neither discloses the cost of any of the five justifications for its request nor provides any detail regarding the expenses.  The Motion provides no explanation at all for the $2,400,000 increase in fees for WTC and the Monitor.  Moreover, other than the additional distribution

costs, the Motion fails to provide any credible explanation for why (or to what extent) the costs were unanticipated.

20. The experience of the Nova Scotia Noteholders in defending against the Claims Objection raises serious questions about whether the WTC is taking necessary and reasonable steps to contain the massive cost overruns. As the Court is aware, the focal point of the Claims Objection is the Lock-Up Agreement and the circumstances surrounding the negotiation and execution of that agreement. With the Claims Objection, WTC (and the Committee before it) took what could have been a straightforward claims objection involving isolated legal issues and converted it into a massive litigation with extensive discovery on topics having nothing to do with the Lock-Up Agreement, requiring the unwarranted expenditure of vast sums of money by the GUC Trust.

21. The Nova Scotia Noteholders' direct experience has shown that the GUC Trust's approach to litigation has been wasteful. Not only has it engaged in (and continues to seek) unnecessary discovery, it continues to pursue claims that have been documented to be without substance and based on false allegations. Despite the fact that discovery to date has unequivocally shown that the GUC Trust's position is meritless, instead of withdrawing or limiting its objections, the GUC Trust instead is attempting to expand the number of defendants and seeking over 30 depositions, in an effort to merely keep the litigation alive without any foreseeable benefit to the beneficiaries of the GUC Trust in whose name this is purportedly being done.

22. If WTC's prosecution of the Claims Objection litigation with the Nova Scotia Noteholders is any indication, it goes a long way to explaining the excessive cost overruns and huge budget increases that WTC seeks in the Motion. Based on WTC's conduct, it is apparent

that the fears expressed at the confirmation hearing have been realized: WTC is conducting litigation in a manner that provides no benefit to the GUC Trust or its beneficiaries, while WTC, the GUC Trust Monitor, and their professionals continue to run up fees and expenses to their own benefit.

23. WTC is a fiduciary of the GUC Trust beneficiaries. The substantial budget increases that WTC is requesting will directly reduce the distributions to all unsecured creditors, including the Nova Scotia Noteholders. In fairness to all the estates' beneficiaries, WTC must provide sufficient information to permit the Court to assess meaningfully whether the proposed increases are reasonable or whether they instead constitute a waste of the GUC Trust's resources. Such a determination can only be made if WTC provides a detailed explanation for any accrued deviations from the Initial Budget, detailed future projections, and a cost-benefit analysis for each increase sought.

24. In addition, the fees and expenses of WTC and its retained professionals must be subject to scrutiny by the United States Trustee's Office and this Court. Absent such scrutiny and oversight, there are no intrinsic safeguards to protect the interest of the GUC Trust beneficiaries. The United States Trustee, therefore, should review any claimed fees and expenses on a monthly basis, and the Court should approve any application for the payment of fees prior to payment.

## IV. CONCLUSION

For all of the foregoing reasons, the Nova Scotia Noteholders respectfully request the Court deny the Motion as presented, require WTC and its professionals to present a factual record to enable the Court to assess whether the requested budget increases serve the best interests of the beneficiaries of the GUC Trust, and grant such other and further relief as is just.

Dated: New York, New York
February 2, 2012

By:   */s/ Bruce R. Zirinsky*

    Bruce R. Zirinsky, Esq.
    Nancy A. Mitchell, Esq.
    John H. Bae, Esq.
    Gary D. Ticoll, Esq.
    GREENBERG TRAURIG, LLP
    MetLife Building
    200 Park Avenue
    New York, New York 10166
    Telephone: (212) 801-9200
    Facsimile: (212) 801-6400
    Email: zirinskyb@gtlaw.com
           mitchelln@gtlaw.com
           baej@gtlaw.com
           ticollg@gtlaw.com

*Counsel for Certain Nova Scotia Noteholders of General Motors Nova Scotia Finance Company*

NY 241,794,196v9 2-2-12