**Hearing Date and Time:April 12, 2012 at 9:45 A.M.
Response Deadline: February 3, 2012**

Maureen F. Leary
Assistant Attorney General
New York State Office of the Attorney General
Environmental Protection Bureau
The State Capitol
Albany, New York  12224-0341
Telephone: (518) 474-7154
Facsimile: (518) 473-2534
*Counsel for the State of New York and*
*The New York State Department of Environmental Conservation*

**UNITED STATE BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| **In re**<br><br>**MOTORS LIQUIDATION COMPANY, et al.,**<br>**f/k/a General Motors Corp., et al.,**<br><br>          **Debtors.** | **Chapter 11 Case No. 09-50026(REG)**<br><br><br>**(Jointly Administered)** |

**JOINDER OF THE STATES OF NEW YORK, ILLINOIS, INDIANA,
KANSAS, MICHIGAN, MISSOURI, NEW JERSEY, OHIO,
THE MASSACHUSETTS DEPARTMENT OF ENVIRONMENTAL PROTECTION,
AND THE ST. REGIS MOHAWK TRIBE,
IN THE REVITALIZING AUTO COMMUNITIES ENVIRONMENTAL
RESPONSE TRUST'S MOTION FOR AN ORDER PURSUANT TO
11 U.S.C. §§ 105 AND 1142 TO ENFORCE DEBTORS' PAYMENT
OBLIGATIONS UNDER THE SECOND AMENDED JOINT
CHAPTER 11 PLAN AND CONFIRMATION ORDER, AND MOTION TO
ENFORCE CONSENT DECREE AND SETTLEMENT AGREEMENT**

**ERIC T. SCHNEIDERMAN
Attorney General of the State of New York**

**MAUREEN F. LEARY
Assistant Attorney General**

         **Of Counsel**

# TABLE OF CONTENTS

<u>Page</u>

Table of Authorities ...................................................................................................................... ii

Preliminary Statement...................................................................................................................1

Argument ......................................................................................................................................1

Conclusion ..................................................................................................................................12

# TABLE OF AUTHORITIES

Page

<u>CASES</u>

*Brennan v. Nassau County,*
    352 F.3d 60 (2d Cir. 2003)..................................................................... 11

*In re 1597 Broadway Ownership Associates,*
    202 B.R. 549 (S.D.N.Y. 1996)............................................................. 10

*Readco, Inc. v. Marine Midland Bank,*
    81 F.3d 295 (2d Cir. 1996)..............................................................10-11

*Taitt v. Chemical Bank,*
    810 F.2d 29 33 (2d Cir. 1987).................................................................. 6

*United States v. Local 359, United Seafood Workers,*
    55 F.3d 64 (2d Cir. 1995) ..................................................................... 10

*United States v. O'Rourke,*
    943 F.2d 180 (2d Cir. 1991).................................................................... 6

*Warren v. Hudson Pulp & Paper Corp.,*
    477 F.2d 229 (2d Cir. 1973).................................................................. 10

## <u>OTHER AUTHORITIES</u>

Financial Accounting Standards Board ("FASB")
Statement No. 140, "Standards of Financial Accounting and Reporting,
Accounting for Transfers and Servicing of Financial Assets"
(http://www.fasb.org/summary/stsum140.shtml) ......................................9-10

Accounting Standards Codification, 320-10-25-1,
*Classification of Investment Securities* .....................................................9n.8

## PRELIMINARY STATEMENT

The undersigned States and the St. Regis Mohawk Tribe, as sovereign governmental

entities (hereinafter collectively "Governmental Entities"), hereby join[1] in the Motion by the

Revitalizing Auto Communities Environmental Response  ("RACER") Trust for an Order

Pursuant to 11 U.S.C. §§ 105 and 1142 to Enforce the Debtors' Payment Obligations Under the

Second Amended Joint Chapter 11 Plan and Confirmation Order, and submit this joinder reply

brief in response to the Motors Liquidation Company/Debtor-In-Possession Lender (collectively

"MLC") Response to the Motion.  The RACER Trust's Motion essentially seeks enforcement of

the October 2010 Environmental Response Trust Consent Decree and Trust Agreement

(collectively "Consent Decree") approved by this Court, and on which the Governmental Entities

are signatories.  As such, the Governmental Entities not only join in the RACER Trust's Motion

to enforce the terms and provisions of the Plan and Confirmation Order, but seek enforcement of

the Consent Decree as well.

## ARGUMENT

1.    MLC's Response fails to adequately address or answer the most important issue

presented in this dispute:  whether the value of the consideration transferred to the RACER Trust

on March 31, 2011 was in compliance with the payment requirement set forth in this Court's

Consent Decree and Confirmation Order.  MLC also fails to address the Governmental Entities'

position that they *never* agreed that the Trust could be funded with securities valued at less than

the amount set forth in the Consent Decree, specifically, $641 million in cash (minus certain

---

[1] The Governmental Entities' initial filing in this contested matter was captioned as a "Statement in Support" of the RACER Trust's Motion.  At the time of the filing, the Governmental Entities understood that MLC and the Trust were seriously discussing settlement of this dispute.  Since settlement has not been reached, however, and the Governmental Entities continue to sustain prejudice as a result of the dispute, they now formally join in the Motion.

adjustments not at issue here).  Regardless of what MLC alleges the United States Department of

the Treasury ("Treasury") and the RACER Trust agreed to or approved, the Governmental

Entities did not agree to any change in the Consent Decree's funding requirement or to a post-

confirmation modification of the Plan and Confirmation Order that authorized underfunding of

the RACER Trust by $13.5 million.

2.      Neither MLC nor Treasury shared with the Governmental Entities the side

"agreement" they purportedly had regarding the acquisition of securities for the Trust (the

Treasury Inflation Protected Securities or "TIPS" and other non-inflation protected securities),

(*see* Koch Decl. ¶ 2-3), which so clearly deviates from the Consent Decree's express requirement

to fund the Trust with cash on the Effective Date.[2]  Until November 15, 2011, the Governmental

Entities knew nothing of MLC's decision to fund the Trust with TIPS, or to value them on any

basis other than at their fair market value, thereby underfunding the Trust.[3]

3.      Notably, MLC makes no factual assertion that Treasury ever agreed to MLC's net

book valuation methodology upon the TIPS transfer to the RACER Trust on the Effective Date.

Indeed, it is undisputed that there never has been such an agreement with Treasury or any other

signatory to the Consent Decree.  MLC unilaterally valued the TIPS on a net book basis and

thereby transferred less value than was required under the Consent Decree.

---

[2]  On information and belief, the United States Department of Justice and Environmental
Protection Agency also were unaware of the side "agreement" Treasury purportedly reached with
MLC in this regard, as suggested by MLC's January 23, 2011 Amended to its Response (¶ 4, p.
3-4; and ¶ 47, p. 24).

[3]  MLC implies that the Notice of Third Amendment to the DIP Credit Facility (Docket Entry
6846) provided notification of MLC's intent to use TIPs to fund the RACER Trust (MLC
Response, ¶ 27, p. 15).  This Notice makes no statement about the RACER Trust, let alone a
statement that the TIPs "would ultimately be transferred to RACER," as MLC asserts.
Moreover, the Notice does not state that the TIPs would be valued on the effective date at net
book value rather than fair market value when transferred to the Trust.

4.      MLC's asserts that its development of an inflation-protected investment portfolio

for the Trust, which would be valued on an amortized cost basis upon transfer to the Trust, was

"transparent" and "crystal clear and fully disclosed" to the Governmental Entities (MLC

Response ¶¶ 47-48, pp. 23-24).  This assertion is simply false.  If all the Governmental Entities

and the other parties to the Consent Decree were aware of the use and net book valuation of the

TIPS to fund the Trust, it does not make sense that MLC would submit and have the Court

approve a Plan and Confirmation Order that still required funding the Trust with cash.

5.      At this point, MLC's decision to fund the Trust with TIPS cannot be unwound,

despite MLC's cavalier suggestion (MLC Response, ¶ 51).  Reversing the entire deal at this point

is not a legitimate or feasible option.  The Trust would sustain a significant loss if the transfer

was rescinded.  The benefit the Trust has otherwise gained from the TIPS since the Effective

Date, despite the underfunding, would be lost.  (RACER Trust Motion, ¶ 6, pp. 4-5).  But the

issue of MLC short-changing the Trust *can* be addressed by the Court at this time.

6.      Besides being expressly stated in the Consent Decree and the relevant Plan

documents, the Governmental Entities unquestionably expected the Trust to be funded with no

less than $641 million in cash (minus adjustments not at issue).  The full funding of the Trust

was the *quid pro quo* for the Governmental Entities granted MLC a full release from the

injunctive environmental liability obligations MLC so clearly had at various contaminated sites it

owned, all of which were transferred to the Trust (*See e.g.,* Consent Decree ¶¶ 6; 60-61).

7.      The RACER Trust, the Governmental Entities and MLC all agree that the

controlling language for MLC's payment obligations are found in the Consent Decree, the Plan

and the Confirmation Order, and the relevant provisions are set forth below:

> Purposes and Formation of the Environmental Response Trust.  … On the
> Effective Date, and subject to adjustments as provided in Paragraph 36 of this

3

Settlement Agreement as applicable, Debtors shall make a payment to fund the Environmental Response Trust *in the amount of no less than $641,434,945*... (Consent Decree, ¶¶ 32, pp. 15-16) (emphasis added).

Funding.  On the Effective Date, the Settlors [MLC] *shall transfer* or cause to be transferred to the Environmental Response Trust [RACER Trust] or at the direction of the Environmental Response Trust Administrative Trustee *cash in the amount of $641,414,653, which constitutes the Environmental Response Trust Funds*" (Trust Agreement, ¶ 2.5.1, pp. 10-11) (emphasis added).

"Environmental Response Trust Assets" means the funding placed in the Environmental Response Trust Accounts and the assets transferred to the Environmental Response Trust in accordance with this Agreement, the Settlement Agreement [Consent Decree] and Plan.…  The *Environmental Response Trust Assets are comprised of (i) Cash in the amount of $641,434,945*…. (Trust Agreement, ¶ 1.1.23, p. 5) (emphasis added).

Environmental Response Trust Assets.  … The Environmental Response Trust Assets *shall be comprised of (i) Cash in the amount of $641,434,945*, less any deductions made pursuant to Paragraph 36 of the Environmental Response Trust Consent Decree and Settlement Agreement… (Plan ¶ 1.68, p. 11) (emphasis added)

Definitions.  Cash means legal tender of the United States of America.  (Plan ¶ 1.33)

Environmental Response Trust Assets.  The Environmental Response Trust shall consist of the Environmental Response Trust Assets, as described in the Environmental Response Trust Consent Decree and Settlement Agreement.  On the Effective Date, *the Debtors shall transfer all the Environmental Response Trust Assets to the Environmental Response Trust*, as provided in and subject to the provisions of the Environmental Response Trust Consent Decree and Settlement Agreement.  *Such transfer shall include the transfer of Environmental Response Trust Cash in the amount of $641, 434,945,* less any deductions made pursuant to Paragraph 36 of the Environmental Response Trust Consent Decree and Settlement Agreement, which represents the aggregate amounts approved by the Bankruptcy Court to pay the costs that will be incurred by the Environmental Response Trust with respect to the Environmental Actions and the costs of administering the Environmental Response Trust (Plan § 6.4(c), p. 49) (emphasis added).

Environmental Response Trust Agreement and Environmental Response Trust Consent Decree and Settlement Agreement.  On the Effective Date, the Environmental Response Trust Agreement and Environmental Response Trust Consent Decree and Settlement Agreement shall become effective and the

4

> Environmental Response Trust *shall be established and funded…* (Plan § 6.4(a), p. 48) (emphasis added).
>
> <u>Vesting of Assets</u> … (c) the Environmental Response Trust Assets shall be transferred to the Environmental Response Trust .… (Confirmation Order, § 6(c), p. 18)
>
> <u>Approval of Environmental Response Trust Consent Decree and Settlement Agreement</u>. …In accordance with Paragraphs 32 and 36 of the Environmental Response Trust Consent Decree and Settlement [Trust] Agreement, *the Debtors, on and subject to the occurrence of the Effective Date, shall make a Cash payment to fund … the Environmental Response Trust* (Confirmation Order, ¶ 7, p. 20) (emphasis added).[4]

The foregoing provisions clearly define MLC's specific payment obligation on the Effective Date and belie the TIPS valuation theory advanced in MLC's Response. There is no ambiguity in these provisions, or any reasonable dispute among the parties regarding their meaning. On the Effective Date of March 31, 2011, MLC was required to transfer a specific *value* to the RACER Trust.[5] The only question that remains is: What was the value of the consideration MLC in fact transferred to the Trust on the Effective Date? Since fair market value most closely approximates cash value, that is the only appropriate valuation for the TIPS.

8.     In seeking to justify its valuation approach, which resulted in a $13.5 million Trust funding shortfall, MLC asks the Court to consider the DIP Credit Facility Amendment

---

[4] The Confirmation Order (¶ 7) sets forth specific amounts to be paid into separate Trust funding categories under the Consent Decree, but makes no change to the Consent Decree's payment requirement.

[5] MLC attempts to create a conflict among the Consent Decree and Plan documents, but a simple review of the relevant provisions shows there clearly is not one. Each relevant provision states that MLC was required to transfer to the Trust $641 million in cash (minus adjustments not at issue). Furthermore, under the Consent Decree, MLC had an affirmative obligation not to propose conflicting documents, and had an affirmative duty not to "take any other action in the Bankruptcy Cases that is inconsistent with the terms and provisions of the Settlement Agreement" (Consent Decree § 109, p. 65). MLC's improper valuation of the TIPs and its opposition to the Trust's motion is entirely inconsistent with the Consent Decree and the settlement it reached with the Governmental Entities.

Notice (Docket No. 6846); the purported agreement by Treasury; the RACER Trust's allegedly belated objection to the valuation; the Trust's waiver and admission of an "account stated;" the Trust's intention to hold the TIPS to maturity; the alleged June 28, 2011 true-up payment; and other allegations that are extrinsic to the Consent Decree, the Plan, and the Confirmation Order. It would be erroneous for the Court to consider extrinsic evidence beyond the Consent Decree and Plan documents, however, or to interpret extrinsic evidence in a manner that is different from the bargain struck by the parties, as expressly set forth in the Consent Decree and Plan documents. *See United States v. O'Rourke*, 943 F.2d 180, 188-89 (2d Cir. 1991); *Taitt v. Chemical Bank*, 810 F.2d 29, 33 (2d Cir. 1987) (it is "error for the court to interpret [an extrinsic document] in a manner that departs from the bargain struck by the parties and recorded in the decree"). Accordingly, MLC's attempt to introduce extrinsic evidence should be rejected. Nevertheless, none of this evidence goes to the fundamental question of whether MLC complied with the Consent Order and Plan documents and fully funded the Trust. The Governmental Entities submit that MLC did not.

9.     Without any basis in fact or law, or in generally accepted accounting principles ("GAAP"), MLC claims that the acceptable valuation methodology for the TIPS upon transfer to the Trust should be "net book" or amortized value, rather than fair market value. This claim is without merit. Fair market value is the only appropriate valuation approach, given the cash and other language of the Consent Decree and Plan documents, and is the only proper way to judge whether MLC met its payment obligation. It is one thing for MLC to identify on its *own* books the amortized or net book value of the TIPS; it is quite another for MLC to claim that the Consent Decree and Plan documents allow the TIPS to be valued upon transfer to the Trust on a net book basis. Indeed, nothing in the Consent Decree or Plan documents authorize such a

valuation and MLC concedes as much (MLC Response, ¶ 46, p. 23).  The very definition of "Trust Assets" as "cash" in the operable documents contradicts MLC's position (Trust Agreement, ¶ 1.1.23, p. 5; Plan ¶ 1.68, p. 11).  Indeed, the Plan expressly defines "cash" as "legal tender of the United States" (Plan ¶ 1.33, p. 7).

10.    MLC obviously understands the fair market valuation approach because its monthly operating reports value the TIPS at both their "fair value" and their "amortized cost" (Rosenthal Decl. Exhibit C, appended to MLC Response).[6]  MLC did not include the complete operating reports (specifically, the explanatory notes) with the Rosenthal Declaration submitted with its Response.  Interestingly, the notes in MLC's monthly operating reports identify several areas in which the financial statements *depart* from GAAP (*see e.g.*, October 31, November 30 and December 31, 2010 Operating Reports, Note 2, p. 9-10; ECF Nos. 6085, 8534, and 9153).  Nevertheless, MLC uses GAAP to justify its valuation here.  MLC's choice of net book valuation of the TIPS upon transfer to the Trust is simply wrong.

11.    In executing the Consent Decree, the Governmental Entities expected that the RACER Trust would be fully funded *in cash* on March 31, 2011, as provided in the Consent Decree and Plan documents provisions set forth above.  More than five (5) months before the Effective Date, MLC unilaterally, and without the Governmental Entities' knowledge or assent, purchased securities to fund the Trust in contravention of the express cash payment requirement and the Consent Decree's provision giving investment authority solely to the RACER Trustee (Trust Agreement, ¶ 2.8, p. 13).  Even so, the Governmental Entities still had a right to continue to expect that the Trust would be fully funded on the Effective Date.

---

[6] Interestingly, the notes in MLC's monthly operating reports identify several areas in which the financial statements *depart* from GAAP (*see e.g.*, October 31, November 30 and December 31, 2010 Operating Reports, Note 2, p. 9-10; ECF Nos. 6085, 8534, and 9153).

12.     In making the unilateral decision to purchase the TIPS to fund the Trust months before the Effective Date, MLC afforded itself the opportunity to profit before the Effective Date, but also accepted the risk of loss.  It is doubtful that MLC would have provided the Trust with any profits realized, had there been any.  But neither the Governmental Entities nor the Trust agreed to accept the risk of loss from MLC's unilateral decision.  MLC is seeking to transfer to the Trust the loss incurred.  That loss should not be borne by the Trust, not just because the express provisions of the Consent Decree and Plan documents provide otherwise, but because of the obvious inequity in that result.

13.     MLC also argues that principles of GAAP "dictate" and "require" that the TIPS be valued on an amortized net book basis because they were "held-to-maturity securities" (MLC Response, ¶ 3, p. 3; ¶ 8, p. 6; ¶¶ 29-30, p. 15-16).  MLC asserts that the value of the TIPS *if held to maturity* will meet its payment obligations because the full cash amount promised in the Consent Decree and Plan is "guaranteed" (MLC Response ¶ 6, p. 5).  MLC includes the Declaration of Brian Rosenthal in an effort to justify the "held-to-maturity" valuation.  He states:

> MLC purchased the TIPS that would be transferred to RACER with the intent that the investments would be transferred to RACER and held until maturity.  Generally Accepted Accounting Principals [sic] ("**GAAP**") required MLC to value its investments in "held-to-maturity securities" at amortized cost.
>
> *  *  *

(Rosenthal Decl. ¶ 12, p. 5).

14.     This "held to maturity" argument is without merit.  First, MLC improperly seeks to change the unambiguous cash payment obligation on the Effective Date into a simple "guarantee" of future value.  Future value does not equal value on the Effective Date.  The Consent Decree and other relevant documents say nothing about a future guarantee of value, nor did the Governmental Entities agree to such an approach.  Indeed, the very definition of "cash"

8

anticipates immediate rather than future value.[7]  Second, MLC cannot "guarantee" the value of

the TIPS in the future, and indeed cannot control their value or the interest rates and other factors

that drive value.  Third, MLC asks the court to value the TIPS on various future dates - that is, on

the date of maturity for *each* of the TIPS - rather than on the March 31, 2011 Effective Date.

This complex future valuation approach is fundamentally inconsistent with the Consent Decree

and Plan documents.  Finally - and this is the underlying flaw in MLC's position - if TIPS held

by the Trust lose value in the future, the Trust has absolutely no recourse against MLC to further

fund the Trust to the extent of that loss.

     15.    In short, the manner in which MLC accounted for the TIPS on a "held-to-

maturity" basis is entirely unrelated to the question of their value upon transfer on the Effective

Date.  The held-to-maturity concept is also not applicable here because MLC was not in fact

holding the TIPS until maturity and never intended to do so.[8]

---

[7] *See* Definitions of "cash" in:
       http://www.ventureline.com/accounting-glossary/c/cash-definition/;
       http://www.finance-glossary.com/define/cash/221/cash;and
       http://www.investopedia.com/terms/c/cash.asp#axzz1l8cY9dLR.

[8] Besides being irrelevant to the question of the TIPs value on the date of transfer, GAAP
amortized net book basis applies to the TIPS only if, at acquisition, MLC had both the positive
intent and ability to hold the securities to maturity:

     At acquisition, an entity shall classify debt securities and equity securities
    into one of the following three categories:
    a.  Trading Securities.  . . .
    b.  Available-for-sale securities.  . . .
    c.  Held-to-maturity securities.  Investments in debt securities shall be
       classified as held-to-maturity *only if the reporting entity has the positive*
       *intent and ability to hold those securities to maturity*.

*See* Accounting Standards Codification, 320-10-25-1, *Classification of Investment Securities*
(emphasis added).  MLC did not meet the requirements of having the intent and ability to hold
the TIPs to maturity and, in fact, concedes that it acquired the TIPs solely for the Trust (MLC
Response ¶ 29, p. 15).

16.    MLC's GAAP argument as to how it values the TIPS on its books does not apply to how the TIPS are valued upon transfer to the Trust.  In fact, GAAP states that upon transfer of any asset, the recipient of the asset must recognize the asset *on its own books at the asset's fair value.  See* Financial Accounting Standards Board ("FASB") Statement No. 140, "Standards of Financial Accounting and Reporting, Accounting for Transfers and Servicing of Financial Assets" ("The transferee shall recognize all assets obtained and any liabilities incurred and initially measure them at fair value").[9]  Financial accounting standards provide that the transferor of financial instrument assets (such as TIPS) is required to "recognize and measure the fair value" of the financial assets transferred in payment.  *See* FASB Statement 140.  Thus, upon receipt, the Trust must value the TIPS *on its own books at fair value*, which was $13.5 million less value than the Consent Decree required (Hamilton Decl. Ex. B: US Bank Recap of Trust Asset Funding; RACER Motion ¶ 6, 18-20).  In the context of MLC's payment obligation under the Consent Decree and Plan documents, the net book value of the TIPS as carried on MLC's books is simply irrelevant.   MLC accuses RACER of "retroactive" accounting "gimmicks" and "tricks" (MLC Response, ¶¶ 5, 9 and 45), when FASB 140 shows that quite the contrary is true.

17.    MLC's arguments that sound in estoppel (MLC Response ¶ 7, p. 5) or waiver as to the Trust (MLC Response ¶ 62-65, pp. 32-35) are without merit but, in any event, are irrelevant to the fundamental question of the Consent Decree and Plan documents express statements regarding MLC's payment obligation and the Governmental Entities' reasonable expectations.  MLC's argument that the Trust has not sustained damages and would realize a "windfall" because the TIPS have increased in value (MLC Response ¶ 55-61, pp. 27-31) misses the point.  Under the Consent Decree and Plan documents, MLC was required to transfer a

---

[9]  http://www.fasb.org/summary/stsum140.shtml

specific value to the Trust on the Effective Date and failed to do so.  Consequently, the Trust is

underfunded in violation of the Consent Decree and Plan documents.  The fact that the Trust's

investments have increased in value since the Effective Date does not make MLC's

underfunding acceptable or give the Trust a windfall.

18.    Settlement agreements carry an implied duty of good faith and fair dealing.  *In re*

*1597Broadway Ownership Associates,* 202 B.R. 549, 555 (S.D.N.Y. 1996).  Well-settled

principles of estoppel dictate that when a party obtains the benefit of an agreement - here, the

complete resolution of significant environmental liability at GM/MLC-owned sites - it cannot

later reject the attendant burdens of the agreement, namely, the precise payment obligations

required by the Consent Decree.  *Readco, Inc. v. Marine Midland Bank,* 81 F.3d 295, 300-02 (2d

Cir. 1996); *Warren v. Hudson Pulp & Paper Corp.,* 477 F.2d 229, 236 (2d Cir. 1973).   The

Consent Decree here is an order of this Court and thus, by its very nature, vests the Court with

equitable discretion to enforce the obligations imposed on the parties.  *United States v. Local*

*359, United Seafood Workers*, 55 F.3d 64, 69 (2d Cir. 1995).  And until MLC has fulfilled its

express payment obligation, the Court has continuing authority and discretion to ensure

compliance with the Consent Decree's terms.  *See Brennan v. Nassau County,* 352 F.3d 60, 63-

64 (2d Cir. 2003).

19.    The payment requirement set forth in the Consent Decree, Plan and Confirmation

Order is clear, unambiguous and undisputed.  The Governmental Entities relied on full Trust

funding in entering into the Consent Decree.  The Trust is not fully funded and has suffered a

$13.5 million shortfall.  The shortfall directly harms the Governmental Entities because the

planned activities for remediation of environmental contamination at former GM/MLC sites will

not be funded.  MLC should not be relieved of the funding obligation of the Consent Decree after

11

having gained the benefit of (1) a full and complete release from liability for environmental contamination, and (2) a confirmed Plan. *Readco,* 81 F.3d at 301-302.

20.     The Governmental Entities are responsible for assuring the remediation of the contaminated properties held by the Trust.  That is the overarching objective of the Consent Decree, which is carried throughout the Plan documents.  Achieving this objective is called into question without full RACER Trust funding.  The Government Entities reasonably expected that the Trust would receive the full funding on March 31, 2011 and it did not.  The Government Entities have not received the benefit of the bargain to which they are entitled under the Consent Decree and Plan documents.

## CONCLUSION

On March 31, 2011, the fair value of the TIPS transferred to the Trust was less than the amount MLC was required to pay under the Consent Decree, the Plan, and the Confirmation Order.  MLC underfunded the RACER Trust and thereby violated the letter and spirit of the Consent Decree and this Court's Confirmation Order.  MLC's actions undermine the central purpose of the Consent Decree to fully fund remediation of contaminated properties for which MLC was liable.  The Governmental Entities respectfully request that the Court order MLC to pay the Trust $13,505,874 in cash, plus interest accruing from March 31, 2011, and for such other and further relief that the Court deems just and appropriate.

Dated: February 3, 2012                         ERIC T. SCHNEIDERMAN
                                                Attorney General of the State of New York

                                        BY:     _____
                                                MAUREEN F. LEARY
                                                Assistant Attorney General
                                                The Capitol
                                                Albany, New York 12224
                                                Tel: (518) 474-7154
                                                Maureen.Leary@ag.ny.gov

**FOR THE STATE OF ILLINOIS**

Date:   February 3, 2012

LISA MADIGAN
Attorney General of Illinois


_____/s/_____
JAMES L. MORGAN
Assistant Attorney General
Office of the Attorney General
Environmental Bureau South
500 South Second Street
Springfield, IL  62706
302 West Washington Street
Indianapolis, IN 46204

**FOR THE STATE OF INDIANA**

Date:   February 3, 2012            _____/s/_____
                                   TIMOTHY J. JUNK
                                   Deputy Attorney General
                                   Atty. No. 5587-02
                                   Office of the Attorney General
                                   Indiana Government Center South, Fifth Floor
                                   302 West Washington Street
                                   Indianapolis, IN 46204

**FOR THE STATE OF KANSAS**

Date:   January 26, 2012                      _____/s/_____
                                             Timothy E. Keck
                                             Deputy Chief Counsel
                                             Kansas Department of Health and Environment
                                             1000 SW Jackson, Suite 560
                                             Topeka, KS 66612-1371
                                             785-296-1334
                                             Tkeck@kdheks.gov

**FOR THE STATE OF MICHIGAN**

Date:   February 3, 2012                                   _____/s/_____
                                                          BILL SCHUETTE
                                                          Attorney General

                                                          Celeste R. Gill (P52484)
                                                          Assistant Attorney General
                                                          Environment, Natural Resources and
                                                          Agriculture Division
                                                          6th Floor, G. Mennen Williams Building
                                                          525 West Ottawa Street
                                                          P.O. Box 30755
                                                          Lansing, MI  48909
                                                          Tel.: (517) 373-7540
                                                          Fax: (517) 373-1610
                                                          gillc1@michigan.gov
                                                          Attorneys for the Michigan Department
                                                          Of Environmental Quality

## FOR THE STATE OF MISSOURI

Date: February 3, 2012                    CHRIS KOSTER
                                          Attorney General of Missouri


                    _____/s/_____
                                          Jeff Klusmeier
                                          Assistant Attorney General
                                          P.O. Box 899
                                          Jefferson City, Missouri 65102
                                          (573) 751-4854
                                          (573) 751-4323 Fax
                                          Jeff.klusmeier@ago.mo.gov

**FOR THE STATE OF NEW JERSEY**

Date:   February 3, 2012               JEFFREY S. CHIESA
                                       Attorney General for the State of New Jersey

                                       _____/s/_____
                              By:      Richard F. Engel
                                       Deputy Attorney General
                                       Richard J. Hughes Justice Complex
                                       25 Market Street
                                       P.O. Box 093
                                       Trenton, New Jersey 08625-0093
                                       Tel.:  (609) 984-4863
                                       Fax:  (609) 984-9315

**FOR THE STATE OF OHIO**

Date:   February 3, 2012                    MICHAEL DEWINE
                                           Attorney General for the State of Ohio


_____/s/_____
Michael Idzkowski
Assistant Attorney General
30 E. Broad Street, 25th Floor
Columbus, Ohio  43215
Tel.:  (614) 466-2766
Email:michael.idzkowski@ohioattorneygeneral.gov

**FOR THE COMMONWEALTH OF MASSACHUSETTS
DEPARTMENT OF ENVIRONMENTAL PROTECTION**

Date:   February 3, 2012            MASSACHUSETTS DEPARTMENT OF
                                      ENVIRONMENTAL PROTECTION
                                    By its attorney,

                                    MARTHA COAKLEY,
                                    ATTORNEY GENERAL

                                    _____/s/_____
                                    Carol Iancu, MA BBO # 635626
                                    Assistant Attorney General
                                    Environmental Protection Division
                                    Massachusetts Office of the Attorney General
                                    One Ashburton Place, 18th Floor
                                    Boston, MA 02108
                                    (617) 963-2428
                                    carol.iancu@state.ma.us

**FOR THE SAINT REGIS MOHAWK TRIBE**

Date:  February 3, 2012     _____/s/_____

            McNAMEE, LOCHNER, TITUS
            & WILLIAMS, P.C.
            John J. Privitera, Esq.
            Jacob F. Lamme, Esq.
            677 Broadway
            Albany, New York 12207
            Tel.:  (518) 447-3200
            Fax:  (518) 426-4260

## CERTIFICATE OF SERVICE

Maureen F. Leary, hereby certifies that on the 3rd day of February, 2012 that she served a true copy of the State and Tribal Governmental Entities' Motion to Join in the RACER Trust's Motion for an Order Enforcing the Amended Plan and Confirmation Order upon each of the parties set forth below by electronic or first class mail, postage prepaid, or by the Electronic Case Management Filing System maintained by the United States Bankruptcy Court for the Southern District of New York:

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153
harvey.miller@weil.com
stephen.karotkin@weil.com
Joseph.Smolinsky@weil.com
*Attorneys for Debtors*

David R. Berz
Thomas Goslin
Weil Gotshal & Manges, LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005
david.berz@weil.com
thomas.goslin@weil.com
*Attorneys for General Motors*

Thomas Morrow
c/o Motors Liquidation Company
401 South Old Woodward Ave., Suite 370
Birmingham, Michigan 48009

Ted Stenger, Executive Vice President
Motors Liquidation Company
General Motors LLC
500 Renaissance Center, Suite 1400
Detroit, Michigan 48243
tstenger@alixpartners.com

Lawrence S. Buonomo
General Motors LLC
400 Renaissance Center
Detroit, Michigan 48265

John J. Rapisardi, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
john.rapisardi@cwt.com
*Attorney for the United States Department of Treasury*

Jeffrey Kehne
Hill & Kehne, LLC
2300 Wisconsin Avenue, NW
Suite 300
Washington, DC 20007
jkehne@hillkehne.com
*Attorney for the Environmental Response Trust Administrative Trustee*

Joseph Samarias
United States Department of Treasury
1500 Pennsylvania Avenue NW
Room 2312
Washington, D.C. 20220
Joseph.Samarias@do.treas.gov

Michael J. Edelman
Michael L. Schein
Vedder Price P.C.
1633 Broadway, 47th Floor
New York, NY 10019
mj_edelman@vedderprice.com
m_schein@vedderprice.com
*Attorneys for Export Development Canada*

Elliott P. Laws, Administrative Trustee
RACER Trust
2930 Ecourse Road
Ypsilanti, Michigan 48198
ELaws@racertrust.org
*Environmental Response Trust*
*Administrative Trustee*

Thomas Moers Mayer
Robert Schmidt
Lauren Macksound
Jennifer Sharret
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of The Americas
New York, NY 10036
tmayer@kramerlevin.com
rschmidt@kramerlevin.com
lmacksound@kramerlevin.com
jsharret@kramerlevin.com
*Attorneys for Official Committee of*
*Unsecured Creditors*

Tracy Hope Davis
Andrew D. Velez-Rivera
Brian Shoichi Masumoto
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004
andy.velez-rivera@usdoj.gov
Brian.Masumoto@usdoj.gov
*Attorneys for the United States Trustee*

David S. Jones
Natalie Kuehler
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chamber Street, 3rd Floor
New York, NY 10007
David.Jones6@usdoj.gov
Natalie.Kuehler@usdoj.gov
*Attorneys for the United States*

Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
ei@capdale.com
rct@capdale.com
*Attorneys for Asbestos Claimants' Comm.*

Trevor W. Swett III
Kevin C. Maclay
Caplin & Drysdale
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
tws@capdale.com
kcm@capdale.com
*Attorneys for Asbestos Claimants'*
*Committee*

Sander L. Esserman
Robert T. Brousseau
Stutzman, Bromberg, Esserman & Plifka
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
esserman@sbep-law.com
brousseau@sbep-law.com
*Attorneys for Future Claimants'*
*Representative*

Alan Tenenbaum
Patrick M. Casey
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
patrick.casey@usdoj.gov
alan.tenenbaum@usdoj.gov
*Attorneys for the United States*

John J. Privitera
Jacob Lamme
McNamee, Lochner, Titus & Williams, P.C.
677 Broadway
Albany, NY 12207-2503
*Attorneys for the Saint Regis Mohawk Tribe*
privitera@mltw.com; lamme@mltw.com

Margarita Padilla
Deputy Attorney General
California Office of the Attorney General
P.O. Box 70550
1515 Clay Street
Oakland, CA  94615-0550
Margarita.Padilla@doj.ca.gov

Robert Kuehl
Deputy Attorney General
Delaware Office of the Attorney General
391 Lukens Drive
New Castle, DE  19720
Robert.Kuehl@state.de.us

James L. Morgan
State of Illinois Environmental Control
Environmental Bureau South
500 South Second
Springfield, IL  62706
jmorgan@atg.state.il.us

Timothy K. Junk
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South, 5th Fl.
302 West Washington Street
Indianapolis, IN 46204
Tim.Junk@atg.in.gov

Bruce H. Palin
Indiana Dept. of Environmental Mgmt.
MC 50-01, ICGB 1301
Indianapolis, IN  46204

Robert Moser, Secretary
Kansas Dept. of Health and Environment
Curtis State Office Building
1000 SW Jackson
Topeka, KS  66612

Beau James Brock, Assistant Secretary
Louisiana Dept. of Environmental Quality
P.O. Box 4312
Baton Rouge, LA  70821-4312

Christopher A. Ratcliff, Attorney
Louisiana Department of Environmental
Quality
P.O. Box 4302
602 N. 5th Street (70802)
Baton Rouge, Louisiana  70821-4302
Christopher.ratcliff@la.gov

Carol Iancu
Assistant Attorney General
Environmental Protection Division
Massachusetts Office of Attorney General
One Ashburton Place, 18th Floor
Boston, MA  02108
carol.iancu@state.ma.us

Celeste R. Gill, Assistant Attorney General
Env., Natural Resources, and Agriculture
State of Michigan Attorney General's Office
P.O. Box 30755
Lansing, MI 48909
gillc1@michigan.gov

John McManus, Chief Counsel
Jeff Klusmeir, Assistant Attorney General
Attorney General for the State of Missouri
Agriculture and Environmental Division
P.O. Box 899
Jefferson City, MO 65102
jack.mcmanus@ago.mo.gov
Jeff.klusmeier@ago.mo.gov

John Dickinson
Richard F. Engel
Deputy Attorney General
New Jersey Attorney General's Office
Richard J. Hughes Justice Complex
25 Market St, CN 093
Trenton, NJ 08625
John.Dickinson@dol.lps.state.nj.us
Richard.Engel@dol.lps.state.nj.us

Dale T. Vitale
Michael Idzkowski
Assistant Attorney General
Chief, Environmental Enforcement Section
30 E. Broad Street, 25th Floor
Columbus, OH 43215
dale.vitale@ohioattorneygeneral.gov
Michael.Idzkowski@OhioAttorneyGeneral.gov

Susan Shinkman
Chief Counsel
Office of Chief Counsel
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA 17101-2301

Kerri L. Nicholas
Virginia Office of the Attorney General
900 East Main Street
Richmond, VA 23219
knicholas@oag.state.va.us

Anne C. Murphy,
Assistant Attorney General
Wisconsin Attorney General's Office
17 West Main Street
PO Box 7857
Madison, WI 53707-7857
Murphyac@doj.state.wi.us

Michael V. Blumenthal
CROWELL & MORNING LLP
590 Madison Avenue
New York, NY 10022
MBlumenthal@crowell.com
*Attorneys for the RACER Trust*

Timothy E. Keck
Deputy Chief Counsel
Kansas Department of Health and
Environment
1000 SW Jackson, Suite 560
Topeka, KS 66612-1371
785-296-1334
Tkeck@kdheks.gov

Matthew J. Williams
Gibson, Dunn, Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166
*Attorneys for Wilmington Trust Company as*
*GUC Trust Administrator and Avoidance*
*Action Trust Administrator*
mjwilliams@gibsondunn.com

Anna Phillips
FTI Consulting
One Atlantic Center
1201 West Peachtree, Suite 500
Atlanta, GA 30309
*GUC Trust and Avoidance Action*
*Trust Monitor*

Kirk P. Watson, Esq.
2301 Woodlawn Boulevard
Austin, Texas 78703
*Asbestos Trust Administrator*

Michael O. Hill,
Chief Operating Officer and
General Counsel
RACER Trust
2930 Ecourse Road
Ypsilanti, Michigan 48198
mhill@racertrust.org

_____
Maureen F. Leary
Assistant Attorney General