CROWELL & MORING LLP
590 Madison Avenue
New York, New York 10022
Telephone: (212) 223-4000
Fax: (212) 223-4134
Michael V. Blumenthal
Steven B. Eichel

HILL & KEHNE, LLC
2300 Wisconsin Avenue, N.W.
Washington, DC 20007
Telephone: (202) 558-2100
Fax: (202) 558-2127
Jeffrey P. Kehne

Attorneys for the Revitalizing Auto
Communities Environmental Response Trust
f/k/a Environmental Response Trust

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case No. 09-50026 (REG) |
| MOTORS LIQUIDATION COMPANY, et al., f/k/a General Motors Corp., et al, | |
| Debtors. | (Jointly Administered) |

## DECLARATION OF MICHAEL O. HILL IN SUPPORT OF MOTION OF THE REVITALIZING AUTO COMMUNITIES ENVIRONMENTAL RESPONSE TRUST FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 1142 TO ENFORCE DEBTORS PAYMENT OBLIGATIONS UNDER THE SECOND AMENDED JOINT CHAPTER 11 PLAN AND THE CONFIRMATION ORDER

Michael O. Hill, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am the Chief Operating Officer and General Counsel of the Revitalizing Auto

Communities Environmental Response Trust ("RACER" or "Trust").[1]  I respectfully submit this

declaration to provide the Court with the information set forth below.

---

[1] Unless otherwise defined herein, capitalized terms used herein have the definitions set forth in RACER's November 21, 2011 Motion and RACER's Reply in support of the Motion.

2.        On or about August 22, 2010, I was selected to serve as Chief Operating Officer and General Counsel of what ultimately became the RACER Trust.  Between August 22, 2010 and March 31, 2011, I worked closely with Elliott Laws — who was then selected to be, and who on March 31, 2011 became, the Managing Member of EPLET, LLC, the Administrative Trustee of the Trust — in preparation for managing the Trust upon and following its Effective Date.

3.        Beginning in August 2010, Mr. Laws and I participated in the Settling Governments' and Debtors' discussions surrounding:  (a) finalization of the Settlement Agreement, which was signed and lodged with the Court on or about October 20, 2010; and (b) completion of the Trust Agreement, which was lodged with the Court in draft form as Attachment C to the Settlement Agreement on or about October 20, 2010, and resubmitted to the Court, in final, fully executed form on March 18, 2011 as an attachment to the Debtors' Second Amended Joint Chapter 11 Plan.  As lodged on October 20, 2010 and in its final form, the Trust Agreement specified (at ¶ 1.1.23) that MLC was, on the Effective Date, to fund the Trust with "Cash in the amount of no less than $641,414,653 million [sic], as adjusted pursuant to Paragraphs 36 and 37 of the Settlement Agreement."

4.        On or about January 26, 2011, and having been told by representatives of MLC that MLC intended to use U.S. Treasury securities to meet at least part of MLC's Effective Date funding obligations, I asked Brian Rosenthal, a member of MLC's financial management team, and Jim Selzer, MLC's Vice President, Treasurer and acting Chief Financial Officer, about this apparent conflict with the language of the Trust Agreement.   Mr. Rosenthal told me that MLC's counsel had assured him that U.S. Treasury securities were equivalent to Cash and therefore allowed under the Trust Agreement; however, Mr. Rosenthal gave no indication that MLC

intended to value the U.S. Treasury securities provided to the Trust in lieu of cash at greater than fair market value.

5.      The same day, I sent an email to Mark Dowd, who was then RACER's primary contact at the U.S. Treasury Department ("Treasury"), to ask that he and I — as well as another Treasury official named Alan Fu — speak the next day "so I can ask a Treasury/cash question." Annexed hereto as Attachment A is a true and accurate copy of my January 26, 2011 email to Mr. Dowd.

6.      Mr. Dowd, Mr. Fu, and I spoke two days later, on January 28, 2011.  During that conversation, Mr. Dowd and Mr. Fu stated that, in Treasury's view, U.S. Treasury securities were the equivalent of Cash for purposes of the Trust Agreement.  Neither Mr. Dowd nor Mr. Fu gave any indication that Treasury envisioned or supported the valuation of U.S. Treasury securities to be provided to the Trust in lieu of cash at greater than fair market value.

7.      Beginning in November 2010, I assisted in the selection of US Bank to hold RACER's Cash and securities.  I was never informed, however, that MLC intended to transfer these securities to RACER at anything other than fair market value on the date of the transfer.

8.      On the recommendation of MLC's Chief Executive Officer Al Koch and President Ted Stenger, Mr. Laws and I, in December 2010, identified Scott Hamilton, MLC's Controller at the time, as the person RACER likely would hire to serve as the Trust's Chief Financial Officer beginning on the Trust's Effective Date.  On or about February 10, 2011, Mr. Koch informed me for the first time that MLC would need half of Mr. Hamilton's time for 45-60 days after the Effective Date and that MLC would need Mr. Hamilton to remain an MLC employee during that time period.  Although neither Mr. Laws nor I believed such an arrangement to be ideal for the Trust, we agreed to it.

9.      On April 1, 2011, I received from Mr. Hamilton — who was then still employed as MLC's Controller while also serving, on a part-time basis, as RACER's Chief Financial Officer — an MLC-prepared summary of the cash and U.S. Treasury securities assets that MLC had transferred to RACER's accounts on or about the Effective Date.  A copy of MLC's summary was attached as Attachment A to Mr. Hamilton's November 21, 2011 Declaration in support of RACER's Motion.

10.     On April 11, 2011, I sent Mr. Hamilton a chart comparing MLC's stated valuation of the financial assets it had transferred to RACER on the Effective Date with the requirements of the Confirmation Order and Settlement Agreement.  The chart listed figures that MLC had provided for the "Net Book Value" of the U.S. Treasury Securities that it transferred to RACER on the Effective Date.  At the end of the chart I included a note stating that it was "Unclear to [me] whether 'Net Book Value' is the appropriate measure."  Annexed hereto as Attachment B is a true and accurate copy of an April 11, 2011 email from me to Mr. Hamilton including the chart.

11.     In May 2011, I received a copy of RACER's April 30, 2011 statement from US Bank.  US Bank serves as custodian of RACER's Cash and U.S. Treasury Securities and, as such, received those assets directly from MLC on the  Effective Date.  The US Bank statement listed April 1, 2011"Market Values" for the U.S. Treasury securities that totaled $14,961,335 less than the "Net Book Value" that  MLC provided to RACER in its March 31, 2011 Funds Flow Summary.  (Further discussion of the US Bank statement is in paragraph 13, below).

12.     On June 17, 2011, and in anticipation of a June 20, 2011 meeting that Mr. Laws, Mr. Hamilton, and I were to have with Mr. Dowd and Mr. Fu of Treasury, Mr. Laws sent an

email to Mr. Dowd (with copies to Mr. Fu, Mr. Hamilton and myself), which included the

following statement:

> … I would also like to raise a recently identified discrepancy between US
> Bank's market-based valuation of the bonds that [were] transferred by MLC to
> the Trust on the Effective Date and the value that MLC assigned to those
> bonds. This $15 million  discrepancy was identified during our review of US
> Banks' April statements.

 Annexed hereto as <u>Attachment C</u> is a true and correct copy of Mr. Laws' June 17,

2011 email to Mr. Dowd and Mr. Fu.

13.    During the June 20, 2011 meeting with Mr. Dowd, in which Mr. Fu participated

by telephone for the first portion, I handed Mr. Dowd highlighted excerpts of the April 2011 US

Bank Statements discussed in paragraph 11, above.  True and accurate copies of those

highlighted excerpts are annexed hereto as <u>Attachment D</u>.  At that time, I explained that RACER

was concerned about the apparent underfunding.  The participants did not resolve the issue but

agreed to continue the discussion.

14.    From June 20 to October 5, 2011, communications continued between Treasury

officials and RACER, with Mr. Laws or Mr. Hamilton participating for RACER.

15.    On October 5, 2011, I attempted to discuss the underfunding issue with Mr. Dowd

when he and I (along with Mr. Laws and Mr. Hamilton) met together on other Trust business in

Ypsilanti, Michigan.  Mr. Dowd said he did not have time to discuss the underfunding issue that

day but agreed to meet shortly thereafter to discuss it in Washington, DC.  I stated that, given

MLC's anticipated dissolution in mid-December 2011, it was important to discuss and resolve

the issue as soon as possible.

16.     On October 11, 2011, Mr. Dowd, Mr. Laws, Mr. Hamilton and I met in Washington to discuss the underfunding issue.  During that meeting, Mr. Dowd disagreed with RACER's position that the Trust had been underfunded.

17.     On October 12, 2011 – after having informed Mr. Dowd on October 11 that I intended to do so – I called and emailed attorneys at the U.S. Department of Justice ("DOJ") to apprise them of the underfunding issue.  My email of the same date explained that I was contacting DOJ in its "role as a Settlement Agreement signatory and as counsel to EPA as well as Treasury."  I did this to ensure that RACER understood the position of its beneficiary as a whole, identified in paragraph 38 of the Settlement Agreement as the "United States."  Annexed hereto as Attachment E is a true and accurate copy of my October 12, 2011 email to DOJ (without attachments).

18.     Also on October 12, 2011 and, again, after having informed Mr. Dowd on October 11 that I intended to do so, I summarized the underfunding issue in a voicemail and email to counsel for MLC.  Annexed hereto within Attachment F is a true and accurate copy of my October 12, 2011 email (without attachments) to MLC's counsel, as well as MLC counsel's non-substantive email response to me of the same date confirming receipt of my email and stating that he would get back to me "shortly."

19.     On October 27, 2011, I sent another email to counsel for MLC to inquire whether he had an update to his October 12 response.  On October 28, I emailed counsel for MLC again, mentioning the underfunding issue again and also asking that he approve the "square-up" of the $28.2M in pre-Effective Date funds that, per paragraph 7 of the Confirmation Order, MLC had been allowed to hold back from Effective Date transfers pursuant to paragraph 36 of the

Settlement Agreement. True and accurate copies of my October 27 and 28 emails are also included within Attachment F.

20.     On November 3, 2011, I again wrote counsel for MLC to make clear that the MLC square-up payment required under paragraph 7 of the Confirmation Order and discussed in my October 28 email would not be in satisfaction of the underfunding issue detailed in my October 12, 2011 email.  I copied that email to DOJ.  Annexed hereto as <u>Attachment G</u> is a true and accurate copy of my November 3, 2011 email to counsel for MLC.

21.     On November 10, 2011, I received an email from counsel for MLC attaching a November 8, 2011 letter from Mr. Koch.  Annexed hereto as <u>Attachment H</u> is a true and accurate copy of MLC counsel's November 10, 2011 email to me (without attachment, but which attachment Mr. Koch submitted to this Court on January 5, 2012 as Attachment C to his Declaration).

22.     On November 14, 2011, I sent an email to counsel for MLC, with copies to DOJ, responding to MLC's counsel's November 10 email and Mr. Koch's accompanying November 8 letter.  Among other things, my email stated the following:

> While I take issue with many of the letter's factual assertions, we need not address those assertions. Regardless of what MLC believes would have been the most efficient form of asset transfer -- or says any of the Settling Parties or other persons agreed was the most efficient form -- the issue is whether MLC's Effective Date transfers met MLC's legal obligations under the Court's Confirmation Order, the Plan, and related documents. That issue is simply ignored.

> Thus, I ask that your firm, as MLC's counsel, explain the <u>legal</u> basis for MLC's transferring bonds in lieu of Cash <u>where</u> the reduced fair market value ("FMV") of the bonds on the Effective Date resulted in the transfers being $13.5M less than the Cash required to be transferred on that date. Such a position seems squarely at odds with the plain language of the Court documents. <u>See</u> Plan at ¶ 1.68 (Debtors must provide "Cash in the amount of …."); <u>id.</u> at ¶ 1.33 ("Cash means legal tender of the United States of America"); <u>see also id.</u> at ¶ 6.4(c); Confirmation

Order at ¶ 7; Settlement Agreement at ¶¶ 32, 36; and Trust Agreement at ¶¶ 1.1.23, 2.5.1.

\* \* \*

As for the valuation question, it is, of course, irrelevant whether the bonds' value may have increased since the Effective Date, just as it would be irrelevant if the value had decreased. The only way for the Trust to be made whole – or to make whole the U.S., the 14 States, [and] the St. Regis Mohawk Tribe, all of whom are Parties to the Settlement Agreement ("SA") and have a right to ensure that the SA-mandated transfers were made on the Effective Date – is for MLC to pay the Trust now the underfunded amount adjusted to reflect the change in value since the Effective Date. Please provide the legal basis for MLC's position so that we may address the legal issues in an effort to reach agreement. [Emphasis in original.]

Annexed hereto as <u>Attachment I</u> is a true and accurate copy of my November 14, 2011 email to counsel for MLC.

23.    On November 15, 2011, I received an email from DOJ stating that the U.S. had "determined that [it] will take no position on the issue at this time." Annexed hereto as <u>Attachment J</u> is a true and accurate copy of the email that I received from DOJ on November 15, 2011.

24.    On November 17, 2011, I received an email and letter of the same date from MLC's counsel responding to my email of November 14. A true and accurate copy of MLC's counsel's November 17, 2011 email and letter is annexed hereto and included within <u>Attachment K</u>.

25.    Also included within Attachment K is a copy of my November 17, 2011 email forwarding MLC counsel's November 17 email and letter to counsel for the United States and the other Settling Governments. My November 17 email stated that

[MLC's proposal that] RACER return the TIPS to MLC now in exchange for "the cash MLC believes the RACER Trust is entitled to" … ignores the risk that MLC's believe as to what RACER is entitled to may differ from what the Order requires. The letter gives not even an estimate as to what specific amount it

8

[MLC] believes the Trust is entitled to; as I said Nov. 9 (when this idea was first proposed to us), reaching agreement on such a number could take weeks even as between RACER and MLC, and RACER has no authority to agree to a [substitute] number in any event since <u>all</u> of the Settling Parties are entitled to ensure that MLC has met its funding obligations.  Thus, at a minimum, MLC's proposal must be evaluated by all of the Settling Parties.  [Emphasis in original.]

26.     As my November 17, 2011 email stated that I would, I conferred with MLC's counsel on Friday, November 18, 2011, in a continuing attempt to settle the issue.  That effort was unsuccessful and so, the following Monday, November 21, 2011 – which was the late date upon which RACER could file its pending underfunding Motion prior to MLC's then-anticipated dissolution – RACER filed the Motion.

27.     The first time I saw or heard of the argument that RACER had – by agreeing on or about June 28, 2012 to a partial set-off of $107,884 – waived its right to the full amount of Cash due to RACER on the Effective Date was January 6, 2012, when I read the Motors Liquidation Company DIP Lenders Trust's January 5, 2012 Response to the Motion.

28.     I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 3rd day of February, 2012 in Washington, D.C.


                                                    ___/s/ Michael O. Hill_____
                                                        Michael O. Hill

ATTACHMENT A

EMAIL FROM MICHAEL HILL TO TREASURY
OFFICIALS

(JANUARY 26, 2011)

## Michael O. Hill

| | |
|---|---|
| **From:** | Michael O. Hill |
| **Sent:** | Wednesday, January 26, 2011 5:28 PM |
| **To:** | Mark.Dowd@treasury.gov |
| **Cc:** | David Lewis |
| **Subject:** | call with you and Alan F. in a.m.? |

Hi Mark-  Good luck tonight.  Please give me a call in a.m. with Alan so I can ask a Treasury/cash question?  Thanks, Mike

**Michael O. Hill, Esq.**
**Hill & Kehne, LLC**
**2300 Wisconsin Ave., NW, Suite 300**
**Washington, DC 20007**
**202-558-2100**
**mhill@hillkehne.com**

1

ATTACHMENT B

EMAIL FROM MICHAEL HILL TO SCOTT HAMILTON

(APRIL 11, 2011)

## Mike Hill

| | |
|---|---|
| **From:** | Michael O. Hill |
| **Sent:** | Monday, April 11, 2011 8:57 PM |
| **To:** | shamilton@racertrust.org |
| **Cc:** | David Lewis; Matthew Lehtonen |
| **Subject:** | RACER: MLC-to-RACER asset transfers (SA v. CO v. actual) |

Scott- This is VERY rough, but I'd appreciate your thoughts/input/corrrections on this rough and evolving draft. Mike

| | Settlement Agreement | Confirmation Order | Transferred 3/31 | Difference between transfer and SA | Difference between transfer and CO | $ envisioned for adjustment by July 29(?) per ¶¶ 36(a), (b) and CO ¶ *7 |
|---|---|---|---|---|---|---|
| EA Accounts (Min., Reserve, LT/OMM, + Cushion) | $499,434,945 | $485,134,945 | | | | |
| Cash | | | $34,896,945 | | | |
| "Net Book Value" of Other Assets** | | | $450,236,538 | | | |
| **EA Subtotal** | $499,434,945 | 485,134,945 | $485,133,483 | $14,301,462 | $1462 | $14,300,000 |
| AF Accounts (AFA + AFRA) | >$102,000,000 + $40M | >$100.1M + $40M ($100.1M derived via $102M – part of $13.9 of Jan.-March admin, + >12M for pre-E.D. sales (may increase), + Lansing coll/bond)* | | | | |
| Cash | | | $15,000,000 | | | |
| "Net Book Value" of Other Assets** | | | $125,100,610 | | | |
| **AF Subtotal** | >$142,000,000 | >$140,100,000 (plus some part of $13.9M + Lansing coll/bond)* | $140,100,610*** | | | $13,900,000 |
| Revenues from pre- | | | | | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| E.D. Prop. Sales (real and personal) that are not scheduled for transfer to RACER | | | | | | |
| **Total** | $641,434,945 | $625,234,945(plus some part of $28.2M + Lansing coll/bond)* | $625,234,093 | | | $28,200,000 |

*See C.O. Para. *7 and SA ¶¶ 36(a), (b)

**Unclear to MH whether "Net Book Value" is the appropriate measure.  Need to ask.

***Need to find out value of Lansing collateral/bond.

ATTACHMENT C

EMAIL FROM ELLIOTT LAWS TO TREASURY

(JUNE 17, 2011)

## Michael Hill

| | |
|---|---|
| **From:** | Elliott Laws |
| **Sent:** | Friday, June 17, 2011 6:17 PM |
| **To:** | Mark.Dowd@treasury.gov |
| **Cc:** | Michael Hill; Scott Hamilton; Alan.Fu@treasury.gov |
| **Subject:** | RE: 2011 Administrative Budget and Pre-Effective Date fees - DIAL IN NUMBER |
| **Attachments:** | RACER - 2011 Admin Budget (Personnel and Prof Fee Analysis).xlsx; RACER - Personnel and Prof Fee Comparison (2011 Admin Budget).pdf |

Mark-

In response to your recent email inquiring about personnel costs and professional fee, please see the attached presentation and supporting Excel file.  We will be able to discuss this in more detail on Monday if necessary. As to your specific questions:

•       RACER's $8.9M budget for personnel costs and professional fees is $0.3M above MLC's February 2011 projections.  This increase is due primarily to unbudgeted MLC TSA costs of $756K.  Excluding those costs, budgeted amounts would have decreased by $0.5M (or 6%).

•       We can confirm that employee, Trustee, COO/GC and Tax Officer costs are all pro-rated for the nine months ending December 31, 2011.  Page 5 of the presentation highlights how the Trustee, COO/GC and Tax Officer costs were pro-rated.

•       The specifics on personnel costs and professional fees were included in our April 30 submission but are also reflected and, in some cases, highlighted in the attachments to this email.

As part of our 2011 Administrative Budget discussion on Monday, we should also discuss certain "Environmental Action" costs that have been contemplated in all budgets to date as Administrative Costs.  As you know, it does appear that some or all of these costs meet the Settlement Agreement's definition of Environmental Action (¶ 9). We need to come to some understanding of this issue and whether or not any changes should occur as we foresee some difficulty in the future at some sites.  For example, at  Shreveport pursuant to the March 30, 2011 cost-sharing agreement between MLC and GM – the hand-off from GM to RACER will require the incurrence of hazardous waste transportation and disposal costs.  As you know, Shreveport has an EA budget of $0, and Cushion Funding would not be available.  If we do decide to make some changes it will likely involve discussions with a handful of states.

You have also agreed to discuss with us, after the 2011 Administrative Budget meeting, the status of MLC's January - March Administrative Budget and the reconciliation process.  At that time I would also like to raise a recently identified discrepancy between US Bank's market-based valuation of the bonds that transferred by MLC to the Trust on the Effective Date and the value that MLC assigned to those bonds.  This $15 million  discrepancy was identified during our review of US Banks' April statements.

Thnx for everything Mark and we look forward to seeing you and Alan on Monday.

Elliott


Elliott P. Laws
Managing Member of EPLET, LLC
Administrative Trustee for RACER Trust

# ATTACHMENT D

# EXCERPTS FROM APRIL 2011 US BANK STATEMENT

 Doc 11385   Filed 02/03/12   Entered 02/03/12 22:09:45   Main Document
Pg 18 of 43

00-0-M -K-PF -120-01    000008L1        8
0235969-00-00048-01    Page 8 of 13
ACCOUNT NUMBER: 001050979197
RACER TRUST ENVIORNMENTAL
ACTION INVESTMENTS

This statement is for the period from
April 1, 2011 to April 30, 2011

## RECEIPTS AND DELIVERIES IN KIND AND ADJUSTMENTS (continued)

| Date Posted | Description | Cash | Tax Cost | Market Value |
|---|---|---|---|---|
| 04/01/11 | Received 104,036,837.19 Par Value Market Value Of 116,789,672.69 USD Received From Jp Morgan Chase | | 122,695,555.08 | 116,789,672.69 |
| | **U S Treasury Bond Generic Tint Pmt 02/15/2015 912833DH0** | | | |
| 04/01/11 | Received 9,329,000 Par Value Market Value Of 8,706,289.25 USD Received From Jp Morgan Chase | | 9,000,061.16 | 8,706,289.25 |
| | **U S Treasury Bond Generic Tint Pmt 02/15/2016 912833KG4** | | | |
| 04/01/11 | Received 22,339,000 Par Value Market Value Of 20,014,403.66 USD Received From Jp Morgan Chase | | 21,000,167.20 | 20,014,403.66 |
| | **U S Treasury Note 1.000  07/31/2011 912828LG3** | | | |
| 04/01/11 | Received 189,564,000 Par Value Market Value Of 190,104,257.40 USD Received From Jp Morgan Chase | | 189,658,414.36 | 190,104,257.40 |
| | **Total Assets Received** | **$.00** | **$449,094,493.74** | **$438,941,580.20** |

### Adjustments

**U S Treasury
Inflation Protection Security
1.250  07/15/2020
912828NM8**

| 04/13/11 | Fed Basis Adjusted By 26,622.58 USD Old: 12,418,786.93 USD/New: 12,445,409.51 USD Units  Increase To Adjust For Change In CPI | | 26,622.58 | |
| 04/13/11 | Par Value Of U S Treasury I P 1.25% 7/15/20 Adjusted By 26,622.58 Par Value Old Par Value 11,537,974.8/New Par Value 11,564,597.38 Units  Increase To Adjust For Change In CPI | | | |
| 04/27/11 | Fed Basis Adjusted By 28,450.74 USD Old: 12,445,409.51 USD/New: 12,473,860.25 USD Units  Increase To Adjust For Change In CPI | | 28,450.74 | |



ACCOUNT NUMBER: 001050979198
RACER TRUST ENVIRONMENTAL
ACTION INVESTMENTS

This statement is for the period from
April 1, 2011 to April 30, 2011

## RECEIPTS AND DELIVERIES IN KIND AND ADJUSTMENTS (continued)

| Date Posted | Description | Cash | Tax Cost | Market Value |
|---|---|---|---|---|
| 04/01/11 | Received 37,994,609.51 Par Value Market Value Of 42,651,988.74 USD Received From Jp Morgan Chase | | 44,808,837.23 | 42,651,988.74 |
| | **U S Treasury Bond Generic Tint Pmt 02/15/2015 912833DH0** | | | |
| 04/01/11 | Received 5,671,000 Par Value Market Value Of 5,292,460.75 USD Received From Jp Morgan Chase | | 5,471,041.58 | 5,292,460.75 |
| | **U S Treasury Bond Generic Tint Pmt 02/15/2016 912833KG4** | | | |
| 04/01/11 | Received 6,661,000 Par Value Market Value Of 5,967,856.34 USD Received From Jp Morgan Chase | | 6,261,789.41 | 5,967,856.34 |
| | **U S Treasury Note 1.000  07/31/2011 912828LG3** | | | |
| 04/01/11 | Received 36,473,000 Par Value Market Value Of 36,576,948.05 USD Received From Jp Morgan Chase | | 36,491,165.76 | 36,576,948.05 |
| | **Total Assets Received** | $.00 | $124,738,854.80 | $121,435,084.91 |

**Adjustments**

**U S Treasury
Inflation Protection Security
1.250  07/15/2020
912828NM8**

| | | | | |
|---|---|---|---|---|
| 04/13/11 | Fed Basis Adjusted By 14,315.52 USD Old: 6,677,842.37 USD/New: 6,692,157.89 USD Units  Increase To Adjust For Change In CPI | | 14,315.52 | |
| 04/13/11 | Par Value Of U S Treasury I P 1.25% 7/15/20 Adjusted By 14,315.52 Par Value Old Par Value 6,204,211.2/New Par Value 6,218,526.72 Units  Increase To Adjust For Change In CPI | | | |
| 04/27/11 | Fed Basis Adjusted By 15,298.56 USD Old: 6,692,157.89 USD/New: 6,707,456.45 USD Units  Increase To Adjust For Change In CPI | | 15,298.56 | |

ATTACHMENT E

EMAIL FROM MICHAEL HILL TO DOJ

(OCTOBER 12, 2011)

**Michael Hill**

| | |
|---|---|
| **From:** | Michael O. Hill <mhill@racertrust.org> |
| **Sent:** | Wednesday, October 12, 2011 1:32 PM |
| **To:** | Tenenbaum, Alan (ENRD); Patrick M. Casey; Kuehler, Natalie (USANYS); Jones, David (USANYS) |
| **Cc:** | mark.dowd@do.treas.gov; Elliott Laws; jkehne@hillkehne.com |
| **Subject:** | Effective Date transfers to RACER |
| **Attachments:** | US Bank Statement_2011-4_excerpts_highlighted.pdf; US Bank Ltr re. Value of Assets Transferred_2011-7-11.pdf; Flow of Funds Analysis (3 30 11)_SRH_rec'd_2011-4-1.xlsx; MLC Securities Transfer Detail, as sent to US Bank 2011-3-31.xlsx; Flow of Funds_Eff _Date_draft_2011-10-12MH.pdf |

Dear Alan, Pat, Natalie, and David-

Following up on my voice-mail to Alan and my call today with Pat, I would like to discuss with you or others acting on behalf of the U.S. as Trust beneficiary an apparent Effective Date underfunding of the Trust.  The source of the apparent underfunding was MLC's transferring – in lieu of Cash – bonds with a "Net Book Value" that was $14,961,335 less than their Fair Market Value as of the Effective Date.  $1,522,104 of this difference appears to have been off-set by interest that, according to a July 11, 2011 letter from U.S. Bank, had accrued on the bonds as of the Effective Date.  (See April 2011 U.S. Bank Statement, and 7/11/11 US Bank letter, attached).  Still, we are left with what appears to be a $13,439,231 underfunding ($10,137,622 of which is for Environmental Action; $3,301,609 of which is for Administrative).

Elliott and I discussed this issue yesterday with Mark and, with his blessing, I am reaching out to you directly given DOJ's role as a Settlement Agreement signatory and as counsel to EPA as well as Treasury.  I also let Mark know that I will contact MLC's counsel on the issue.

Finally, in case it is helpful, I am also attaching a working chart that has helped me (and may help you) sort through the various funding requirements and transfers made.

Thanks, and I look forward to speaking with you.

Mike
**Michael O. Hill**
**Chief Operating Officer and General Counsel**
*Revitalizing Auto Communities Environmental Response Trust*
**(202) 783-2370**
mhill@racertrust.org

This message may contain privileged or otherwise confidential information intended only for the use of the intended recipient(s).  Do not disseminate, forward or copy this email without prior consent of the RACER Trust.  If you have received this email in error, please notify the sender by return e-mail, and delete the original and all copies of this message from your computer.  Thank you.

1

ATTACHMENT F

EMAILS DGVY GGP  MICHAEL HILL CP F  MLC's COUNSEL

'""'(OCTOBER 34.'49.'cpf '4: .'2011)

**Michael Hill**

---

| | |
|---|---|
| **From:** | Michael O. Hill <mhill@racertrust.org> |
| **Sent:** | Friday, October 28, 2011 4:43 PM |
| **To:** | Berz, David |
| **Cc:** | Jones, David (USANYS); Kuehler, Natalie (USANYS); Tenenbaum, Alan (ENRD); Patrick M. Casey; Jeff Kehne |
| **Subject:** | MCL to RACER transfers:  (1) $13.5M underfunding; (2) pre-Eff. Date spending square-up |
| **Attachments:** | Revised RACER Funding Adj |

David-

In addition to the $13.5M underfunding issue that are the subject of my Oct. 12 and 27 e-mails, we should wrap up the Confirmation Order (CO) ¶ 7 adjustments to the March 31 holdback for pre-Effective Date Environmental (EA) and Administrative Funding Account (AFA) costs.  You likely are aware that RACER and MLC (led by Scott Hamilton and Jim Selzer, respectively) worked together on this and determined that, of the $28.2M held back ($14.3 from the EA account; $13.9M from the AFA), $3,235,111 should be provided to RACER.  (See Jim's 7/29/11 e-mail, attached.)   To this amount should be added interest that was earned on the $3,235,111 during the holdback period (just as we face similar value increases on the roughly $13.5M withheld).

I learned only recently that Oct. 31 may be Jim's last day with AlixPartners, and so I wanted to raise this separate issue with you before Jim leaves.  In the interest of time and so we are all on the same page, I am copying counsel for the U.S. on this issue as well.

Thanks David, and I look forward to hearing from you.

Mike

*Michael O. Hill*
*Chief Operating Officer and General Counsel*
*Revitalizing Auto Communities Environmental Response Trust*
**(202) 783-2370**
mhill@racertrust.org

This message may contain privileged or otherwise confidential information intended only for the use of the intended recipient(s).  Do not disseminate, forward or copy this email without prior consent of the RACER Trust.  If you have received this email in error, please notify the sender by return e-mail, and delete the original and all copies of this message from your computer.  Thank you.

**From:** Michael Hill [mailto:mhill@racertrust.org]
**Sent:** Thursday, October 27, 2011 4:22 PM
**To:** Berz, David
**Cc:** jkehne@hillkehne.com
**Subject:** Update as to Effective Date transfers to RACER

David-  Do you have an update?  Thanks, Mike

**From:** Berz, David [mailto:david.berz@weil.com]
**Sent:** Wednesday, October 12, 2011 6:19 PM
**To:** Michael Hill
**Cc:** Elliott Laws; jkehne@hillkehne.com
**Subject:** RE: Effective Date transfers to RACER

Thanks. Will review this tomorrow and get back to you shortly. I need to do some inquiring.

**From:** Michael O. Hill [mailto:mhill@racertrust.org]
**Sent:** Wednesday, October 12, 2011 1:45 PM
**To:** Berz, David
**Cc:** Elliott Laws; jkehne@hillkehne.com
**Subject:** Effective Date transfers to RACER

Dear David-

Following up on my voice-mail to you, I would like to discuss with you or others acting for MLC an apparent Effective Date underfunding of the Trust.  The source of the apparent underfunding was MLC's transferring – in lieu of Cash – bonds with a "Net Book Value" that was $14,961,335 less than their Fair Market Value as of the Effective Date.  $1,522,104 of this difference appears to have been off-set by interest that, according to a July 11, 2011 letter from U.S. Bank, had accrued on the bonds as of the Effective Date.  (See April 2011 U.S. Bank Statement, and 7/11/11 US Bank letter, attached).  Still, we are left with what appears to be a $13,439,231 underfunding ($10,137,622 of which is for Environmental Action; $3,301,609 of which is for Administrative).

In case it is helpful, I am also attaching a working chart that has helped me (and may help you) sort through the various funding requirements and transfers made.

Thanks, and I look forward to speaking with you.

Mike

*Michael O. Hill*
*Chief Operating Officer and General Counsel*
*Revitalizing Auto Communities Environmental Response Trust*
**(202) 783-2370**
**mhill@racertrust.org**

ATTACHMENT G

EMAIL FROM MICHAEL HILL TO MLC's COUNSEL

(NOVEMBER 3, 2011)

**Michael Hill**

| | |
|---|---|
| **From:** | Michael Hill <mhill@racertrust.org> |
| **Sent:** | Thursday, November 03, 2011 3:23 PM |
| **To:** | Berz, David |
| **Cc:** | David.Jones6@usdoj.gov; Kuehler, Natalie (USANYS); Alan.Tenenbaum@usdoj.gov; Casey, Patrick (ENRD); Jeff Kehne |
| **Subject:** | MLC's transfer of: (1) $3.2M under Para. 7; and (2) $13.5M from underfunding |

David-

Responding to Brian Rosenthal's Oct. 31 email below (and as a follow up to my Oct. 28 and other emails to you), RACER is of course anxious to accept MLC's transfer of $3,235,111 pursuant to Paragraph 7 of the Confirmation Order. However, we need to be clear that this transfer would not be full satisfaction of MLC's transfer obligations because it neither includes nor addresses interest earned on the $3,235,111 during the holdback period (that is, since March 31) nor does it address the separate underfunding issue discussed in my October 12 and 28 emails to you.

I would very much appreciate it if you would approve the transfer of the $3,235,111 (Scott Hamilton is hopeful that we will receive it this week), and also advise as to status at your end on consideration of the remaining issues?

Thanks,

Mike

*Michael O. Hill*
*Chief Operating Officer and General Counsel*
*Revitalizing Auto Communities Environmental Response Trust*
(202) 783-2370
mhill@racertrust.org

This message may contain privileged or otherwise confidential information intended only for the use of the intended recipient(s). Do not disseminate, forward or copy this email without prior consent of the RACER Trust. If you have received this email in error, please notify the sender by return e-mail, and delete the original and all copies of this message from your computer. Thank you.

ATTACHMENT H


EMAIL FROM MLC's COUNSEL TO MICHAEL HILL. cpf
LETTER OF NOVEMBER 8, 2011 FROM MLC TO MLC's
COUNSEL

(NOVEMBER : "cpf "l0, 2011)

## Michael Hill

| | |
|---|---|
| **From:** | Berz, David <david.berz@weil.com> |
| **Sent:** | Thursday, November 10, 2011 3:46 PM |
| **To:** | Michael Hill |
| **Cc:** | Laws, Elliott; Jeff Kehne; David (USANYS) Jones (David.Jones6@usdoj.gov); Natalie (USANYS) Kuehler (Natalie.Kuehler@usdoj.gov); Casey, Patrick (ENRD); Tenenbaum, Alan (ENRD); Mark.Dowd@do.treas.gov; Alan.Fu@treasury.gov; Koch, Al; tstenger@alixpartners.com |
| **Subject:** | FW: Funding Inquiry |
| **Attachments:** | AAK to Berz.pdf |

Dear Mr. Hill,

Attached is a response to your inquiry concerning funding of the Racer Trust.  We believe Mr. Koch's  attached letter to me  responds in full to the issues you raised, however, let me know if further discussion is required. Of course, we reserve the opportunity to provide  any additional support for the propriety of how the Trust was funded should this become necessary.  Along with  Mr. Koch and Mr. Stenger,  I am copying other individuals identified in your prior email who may have an interest in  this matter.  If additional individuals are provided copies of this correspondence, please advise me at the earliest possible time and copy me on any transmissions.

Best,

DRB

---

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

# Motors Liquidation Company

c/o AlixPartners LLP
2000 Town Center, Suite 2400
Southfield, Michigan  48075

Phone: 248.262.8445
Fax: 248.262.8491
E-Mail: akoch@alixpartners.com

November 8, 2011

Mr. David Berz, Partner
Weil Gotshal & Manges
1300 I Street
Washington, DC  20005-3314

<u>M. Hill Email re Funding of RACER at Closing</u>

Dear Mr. Berz:

On October 12, 2011 Mr. Michael Hill of RACER Trust emailed you concerning an "apparent underfunding" of the Trust at closing.  In his email Mr. Hill appears to be asserting that net book value of U.S. Treasury TIPS securities was an inappropriate valuation of required closing date funding.  Instead, Mr. Hill asserts that a fair market value or "mark to market" was required.  You have asked that I comment on Mr. Hill's email.

<u>Background</u>
Environmental liability was a topic that consumed enormous time and resources to estimate and obtain consensus of all interested parties before MLC could confirm its plan of liquidation.  This included estimating the anticipated timing of spending remediation and administrative monies and "cushions" associated in connection therewith.  These estimates received intense scrutiny from MLC and its advisors, the U.S. Treasury, the Official Committee of Unsecured Creditors and its advisors as well as Federal and state government environmental agencies and their consultants.  Consensus was reached.

<u>Matching Funding to Projected Environmental Spending</u>
Projected environmental spending by year was projected for 100 years and was discounted to its NPV using Congressional Budget Office inflation estimates.  As managers of the MLC wind-down, the

Mr. David Berz
November 8, 2011

impact of expected inflation over 100 years required that we give careful attention to earning a rate of return on monies that were held by us so as to mitigate the impact of inflation when these monies and environmental liabilities were turned over to the environmental trustee that eventually would be selected by the U.S. Government and 14 states.

We examined a number of possibilities in considering how best to match rate of return with inflation.  We concluded that the most attractive option was to make extensive use of U.S. Treasury Inflation-Protected Securities or "TIPS".  The terms of a TIPS security provide that its principal amount is increased with inflation and decreased by deflation, as measured by the Consumer Price Index.  At the same time as TIPS principal is adjusted for inflation, a TIPS security pays a stated interest rate based on the inflation adjusted principal.  At maturity, the securities will be redeemed at the greater of their inflation-adjusted principal or par value at original issue.

By adopting a laddered portfolio of TIPS securities linked to the expected timing of environmental spending we would, in all material respects, defease the risk of inflation.  In other words, if actual inflation exceeded estimated inflation, the TIPS investment principal would be similarly increased.  Therefore, available monies would continue to appropriately match the expected cost of remediating environmental liabilities.  We believe that this is a major mitigation of risk that inures to the benefit of the Trust.

Because the bond maturities are matched to the timing of expected environmental spending we concluded that the appropriate accounting was to treat the U.S. Treasury securities as assets to be held to maturity that should be carried at amortized cost plus accrued interest.  This is the basis upon which MLC prepared its monthly operating reports; quoted market values were disclosed in a footnote.  These monthly reports were filed both with the Bankruptcy Court and the Securities and Exchange Commission.

Mr. David Berz
November 8, 2011

### The Approval Process

After concluding that investing in a laddered portfolio of TIPS
securities would defease inflation risk we met with the U.S.
Treasury to explain our conclusion and the rationale for that
decision.  We provided significant supporting material to the
Treasury and after a period of internal review we were advised that
the U.S. Treasury concurred with our decision.

We made similar presentations to the U.S. Trustee for the Southern
District of New York and advisors to the Official Committee of
Unsecured Creditors.  Both concurred in our recommendation.
Thereafter, as required by our Debtor-in-Possession Credit
Agreement, notice of a proposed amendment thereto providing for
investment in U.S. Treasury securities with maturities of up to 15
years was filed with the Bankruptcy Court as required by the order
that approved the DIP Credit Facility.

### Discussions with Messrs. Laws and Hill in Preparation for the Closing

We spent extensive time with Mr. Laws and Mr. Hill in helping them
to understand the scope of the operation they would be assuming
from MLC as well as the detail surrounding it.  This included
detailed presentations on environmental remediation, properties to
be transferred, administration of the organization and MLC's
accounting and treasury operations.  We began this process soon
after their appointment and it continued with varying degrees of
intensity until MLC's emergence from bankruptcy.  In presentations
and numerous writings it was always abundantly clear that the
Trust would be funded with TIPS securities.

One of the issues that we covered on more than one occasion was
the investment strategy that is outlined above.  I personally made a
presentation on this topic to Mr. Hill at a two-day orientation
meeting.  I explained the strategy and how it had been
implemented and why we, the U.S. Treasury, and others had
concluded that it provided the most optimal risk remediation for the
Trustee.

Mr. David Berz
November 8, 2011

At a subsequent meeting my colleagues, Jim Selzer and Brian Rosenthal, again presented the entire investment portfolio and rationale behind it in extensive detail.

At no time during our meetings or after Mr. Hill's review of documents was a question raised as to the efficacy of the approach or the accounting that we had adopted.

Mr. Hill's Assertions
Mr. Hill appears to be suggesting that the assets should have been marked to market, thereby reducing their value from amortized cost without also recasting the liabilities to which the investments were matched.  I believe that a mark to market approach on investments also would need to be accompanied by a similar revaluation of the environmental liability.  This was not done because, as noted, the assets and liabilities had already been matched.

As noted, the U.S. Treasury concurred with MLC's investment strategy with matching TIPS to expected environmental spending. Accordingly, to now suggest that the Treasury should add an additional $13.5 million to RACER's coffers seems patently unfair particularly since, in my opinion, it is based on specious reasoning.

Mr. Hill's Claim for Additional Funding
The apparent claim being made by Mr. Hill in his email is that RACER was entitled to receive cash at closing.  As a consequence of the portfolio's short-term market value having dipped below amortized cost, Mr. Hill appears to be making a claim for additional funding of $13.5 million as a consequence of that temporary market decline.  MLC, on the other hand, had explained to Mr. Hill in extensive detail how and why it had pursued the investment approach selected and always made full and complete disclosure of the difference between carrying value and market value.  As previously stated Mr. Hill's view is inconsistent with the investment objectives of the Trust and the approved risk mitigation strategy that was deployed by MLC prior to the establishment of the Trust.

Mr. David Berz
November 8, 2011

It is interesting that the market value[1] today of the very securities about which Mr. Hill is concerned has increased in value by $36.3 million since April 2, 2011.  So, instead of a shortfall, the market value today of RACER's TIPS securities that have not yet matured exceeds amortized cost by $22.2 million as of October 25, 2011.  Thus it appears that what RACER is effectively seeking is a windfall of additional cash from the U.S. Treasury.  For the reasons set forth in this letter we believe that request should be denied.

Very truly yours,

A. A. Koch
President

---

[1] Accrued interest is excluded from all current market value calculations as well as at April 2, 2011.

5 | P a g e

ATTACHMENT I

EMAIL FROM MICHAEL HILL TO MLC's COUNSEL

(NOVEMBER 14, 2011)

**Michael Hill**

| | |
|---|---|
| **From:** | Michael Hill <mhill@racertrust.org> |
| **Sent:** | Monday, November 14, 2011 11:31 AM |
| **To:** | Berz, David |
| **Cc:** | David.Jones6@usdoj.gov; Kuehler, Natalie (USANYS); Alan.Tenenbaum@usdoj.gov; Casey, Patrick (ENRD); Mark.Dowd@do.treas.gov; Roberts.Robert@epamail.epa.gov; Elliott Laws; Scott Hamilton; Jeff Kehne |
| **Subject:** | Response to Nov. 10 e-mail (and its attached 11/8 letter from MLC) |
| **Attachments:** | Ltr_f_MLC_re_bond_transfers_2011-11-8.pdf; Ltr. from MLC re. Notice of Dissolution, 2011-11-10.pdf |
| | |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Dear David-

Thank you for your November 10 e-mail (below) forwarding Mr. Koch's accompanying November 8 letter (attached).  While I take issue with many of the letter's factual assertions, we need not address those assertions.  Regardless of what MLC believes would have been the most efficient form of asset transfer -- or says any of the Settling Parties or other persons agreed was the most efficient form -- the issue is whether MLC's Effective Date transfers met MLC's legal obligations under the Court's Confirmation Order, the Plan, and related documents.  That issue is simply ignored.

Thus, I ask that your firm, as MLC's counsel, explain the legal basis for MLC's transferring bonds in lieu of Cash where the reduced fair market value ("FMV") of the bonds on the Effective Date resulted in the transfers being $13.5M less than the Cash required to be transferred on that date.  Such a position seems squarely at odds with the plain language of the Court documents.  See Plan at ¶ 1.68 (Debtors must provide "Cash in the amount of ...."); id. at ¶ 1.33 ("Cash means legal tender of the United States of America"); see also id. at ¶ 6.4(c); Confirmation Order at ¶ 7; Settlement Agreement at ¶¶ 32, 36; and Trust Agreement at ¶¶ 1.1.23, 2.5.1.

As for the Nov. 8 letter's recitations of history, even if one were to assume that Mr. Laws and I, pre-Effective Date, had any authority to (and did) agree to a transfer of bonds in lieu of Cash, the letter ignores whether we did agree (or could have agreed) to a transfer of bonds that, on the Effective Date, had a fair market value that was substantially below the "Net Book Value" used to reach the requirements of the Plan.  Further, if MLC is to contend that Mr. Laws or I: (a) could have and (b) did make such a significant financial concession on behalf of the (then not yet created) Trust, MLC should include in that contention an explanation of why MLC did not ask that Mr. Laws and I to do so in writing of at least some sort, even an e-mail.

As for the valuation question, it is, of course, irrelevant whether the bonds' value may have increased since the Effective Date, just as it would be irrelevant if the value had decreased.  The only way for the Trust to be made whole – or to make whole the U.S., the 14 States, the St. Regis Mohawk Tribe, all of whom are Parties to the Settlement Agreement ("SA") and have a right to ensure that the SA-mandated transfers were made on the Effective Date – is for MLC to pay the Trust now the underfunded amount adjusted to reflect the change in value since the Effective Date.  Please provide the legal basis for MLC's position so that we may address the legal issues in an effort to reach agreement.

In view of MLC's imminent dissolution (see Nov. 10 letter attached) and what I understand is a meeting scheduled for tomorrow between MLC and the United States, it would be very helpful if you would provide some written explanation, however, informal, of your reasoning today so the meeting participants (one of whom is, of course, the Trust's beneficiary) can make as much progress as possible in resolving this issue.

1

Finally, in response to your e-mail, RACER's CFO has (in only rough form, given time constraints) provided me with some financial information that may assist the parties in resolving this issue. It is my understanding that, in connection with certain Qualified Settlement Fund requirements, MLC must, by February 15, 2012, provide to RACER a statement that sets forth:

      (E) The amount of cash transferred; and
      (F) A description of property transferred and <u>its fair market value on the date of transfer.</u>

Treas. Reg. § 1.468B-3(e)(2)(i)(E), (F) (emph. added). If that is the case, could you let me know the fair market value that MLC intends to use for the Treasury bond component(s) of the property transferred on the Effective Date?

In closing, and to be perfectly clear, I want to underscore three points:

- RACER is requesting <u>only</u> those funds that the Court's Order requires, and we do not believe it is within RACER's authority to accept anything less;
- RACER is not challenging the wisdom of using TIPS or other instruments (in fact, had we received all assets in Cash on 3/31, we'd likely have invested in similar Treasury instruments in an effort to match the budgeted cash flows); and
- RACER is not challenging that Net Book Value may be relevant to MLC's own internal accounting requirements under U.S. GAAP. Our point is that, if MLC wished to transfer bonds in lieu of "Cash" as defined by the Plan -- an approach that we do not contend was in itself prejudicial to the Trust or Settling Parties -- then MLC needed to transfer more of those bonds (or provide more Cash) so the fair market value of the Effective Date transfers was equal to the fair market value of the Cash transfers called for by the Plan.

Thank you, David, and I look forward to hearing from you.

Mike
*Michael O. Hill*
*Chief Operating Officer and General Counsel*
*Revitalizing Auto Communities Environmental Response Trust*
**(202) 783-2370**
mhill@racertrust.org

This message may contain privileged or otherwise confidential information intended only for the use of the intended recipient(s). Do not disseminate, forward or copy this email without prior consent of the RACER Trust. If you have received this email in error, please notify the sender by return e-mail, and delete the original and all copies of this message from your computer. Thank you.

ATTACHMENT J

EMAIL FROM DOJ TO MICHAEL HILL

(NOVEMBER 15, 2011)

## Michael Hill

| | |
|---|---|
| **From:** | Jones, David (USANYS) <David.Jones6@usdoj.gov> |
| **Sent:** | Tuesday, November 15, 2011 5:04 PM |
| **To:** | Michael Hill; Jeff Kehne; Elliott Laws |
| **Cc:** | Tenenbaum, Alan (ENRD); Casey, Patrick (ENRD); Kuehler, Natalie (USANYS); Mark.Dowd@do.treas.gov; Roberts.Robert@epamail.epa.gov; Cheng.Lulu@epamail.epa.gov |

Dear Mike and colleagues,

I am writing in response to your request that the United States support the RACER Trust's contention that it was underfunded at its inception, based on the market value as of March 31 of the TIPS securities that were transferred to the trust on or about that date.

We appreciate your outreach on this issue and your work to answer our questions about it.

The United States has considered the issue and, while we will continue to look into it and would like to be kept abreast of developments, we have determined that we will take no position on the issue at this time.

We do encourage the RACER Trust and MLC to speak directly in an attempt to reach a consensual resolution of their apparent differences.

David S. Jones
Deputy Chief, Civil Division
USAO-SDNY
86 Chambers Street, Third Floor
New York, NY  10007
Tel. 212-637-2739
Fax 212-637-2730

ATTACHMENT K

LETTER AND EMAIL FROM MLC's COUNSEL TO
MICHAEL HILL, and FORWARDING EMAIL FROM
MICHAEL HILL TO SETTLING GOVERNMENTS

(NOVEMBER 17, 2011)

## Mike Hill

| | |
|---|---|
| **From:** | Michael O. Hill <mhill@racertrust.org> |
| **Sent:** | Thursday, November 17, 2011 9:01 PM |
| **To:** | Jones, David (USANYS) |
| **Cc:** | Kuehler, Natalie (USANYS); Tenenbaum, Alan (ENRD); Patrick M. Casey; maureen.leary@ag.ny.gov; 'Jeff (Missouri) Klusmeier'; 'Tim (Indiana) Junk'; 'G. (Illinois) Karr'; 'Jim (Illinois) Morgan'; 'Dennis (Missouri) Stinson'; 'Robert (Missouri) Hinkson'; 'Anne(Wisconsin) Murphy'; 'John (New Jersey) Dickinson'; 'Richard (New Jersey) Engel'; 'Ben (NewYork) Conlon'; 'Becky (Illinois) Jayne'; 'James (Illinois) Kropid'; 'Paul (Kansas) Marx'; 'Christopher (Louisiana) Ratcliff'; 'Rachel (New Jersey) Lehr'; 'Celeste (Michigan) Gill'; 'P. (Michigan) Synk'; 'Jacob (St Regis Mohawk Tribe) Lamme'; 'John (St. Regis Mohawk Tribe) Privitera'; 'Kerri (Virginia) Nichols'; 'Dale (Ohio) Vitale'; 'Keith (Delaware) Brady'; 'Robert (Delaware) Kuehl'; 'Carol (Massachusetts) Iancu'; 'Jennifer (Massachusetts) Davis'; 'Robert (Massachusetts) Ritchie'; 'Gaile (Pennsylvania) Myers'; 'Jim (Pennsylvania) Meade'; 'Kathleen (Wisconsin) Strasbaugh'; 'Jack (Missouri) McManus'; cgarvey@racertrust.org; Jeff Kehne; Michael V. Blumenthal |
| **Subject:** | MLC's funding obligations to the RACER Trust -- Nov. 17 e-mail and letter from David Berz on behalf of MLC |
| **Attachments:** | Ltr_f_David_Berz_for_MLC_2011-11-17.pdf |

Dear David-

Please see the e-mail (below) and letter (attached) just received from David Berz on behalf of MLC. As with MLC's November 10 letter that is the subject of my November 14 e-mail response, MLC again ignores the legal question of how MLC could transfer bonds in lieu of Cash <u>where</u> the reduced fair market value ("FMV") of the bonds on the Effective Date resulted in the transfers being $13.5M less than the Cash required to be transferred on that date. <u>See</u> Plan at ¶ 1.68 (Debtors must provide "Cash in the amount of …."); <u>id.</u> at ¶ 1.33 ("Cash means legal tender of the United States of America"); <u>see also id.</u> at ¶ 6.4(c) ("Cash in the amount of …."); Confirmation Order at ¶ 7 ("shall make a Cash payment to fund…."); <u>see also</u> Settlement Agreement at ¶¶ 32, 36; and Trust Agreement at ¶¶ 1.1.23, 2.5.1.

Today's letter makes two proposals. The first is that RACER sell TIPS -- which have increased in value since the Effective Date -- to make up the Effective Date shortfall. This proposal ignores the fact that the Court's Order entitles the Trust and the Settling Parties to: (a) full funding on the Effective Date; <u>and</u> (b) the growth on such full funding since the Effective Date. The second proposal proposal is that RACER return the TIPS to MLC now in exchange for "the cash MLC believes the RACER Trust is entitled to under the terms of the ERT Settlement Agreement." This proposal fails for essentially the same reason as the first, and also ignores the risk that MLC's belief as to what RACER is entitled to may differ from what the Order requires. The letter gives not even an estimate as to what specific amount it believes the Trust is entitled to; as I said Nov. 9 (when this idea was first proposed to us), reaching agreement on such a number could take weeks even as between RACER and MLC, and RACER has no authority to agree to a number in any event since <u>all</u> of the Settling Parties are entitled to ensure that MLC has met its funding obligations. Thus, at a minimum, MLC's proposal must be evaluated by all of the Settling Parties.

It is, of course, unlikely that MLC would offer to provide the Trust additional assets now if, since the Effective Date, the transferred bonds had decreased in value, nor could the Trust ask MLC to do so. Conversely, MLC cannot avoid providing the Trust with what the Court Order required simply because the bonds have increased in value. As with MLC's prior arguments, this is a non-legal argument that should not side-track the legal discussion.

The only hint of a legal argument in today's letter – an assertion that RACER is ignoring "the terms of ERT Settlement Agreement Paragraph 32, Attachment A, and Paragraph 109" – is perplexing because Paragraph 32 requires "a payment

1

to fund the Environmental Response Trust in the amount of no less than $641,434,945; Paragraph 32 has no Attachment A (and the Settlement Agreement's Attachment A reflects dollar amounts, not bond values); and Paragraph 109 prohibits Debtors from submitting a Plan that is inconsistent with the Settlement Agreement, something we doubt MLC is contending it did. These provisions – like MLC's accounting arguments – support RACER's position, not MLC's.

Finally, please be assured that I will follow up on David Berz' offer today to discuss this with him. Please be aware, however, that my attempts (and Michael Blumenthal's attempts) thus far to discuss this with him have been unsuccessful.

In the interest of time -- and in anticipation of your meeting tomorrow with all of the Settling Parties -- I am sending Mr. Berz's letter (and these initial thoughts with regard to it) to the other Settling Parties as well. You or any of them should, of course, feel free to contact me should you want to discuss.

Regards,

Mike

*Michael O. Hill*
**Chief Operating Officer and General Counsel**
*Revitalizing Auto Communities Environmental Response Trust*
**(202) 783-2370**
mhill@racertrust.org

This message may contain privileged or otherwise confidential information intended only for the use of the intended recipient(s). Do not disseminate, forward or copy this email without prior consent of the RACER Trust. If you have received this email in error, please notify the sender by return e-mail, and delete the original and all copies of this message from your computer. Thank you.

**From:** Berz, David [mailto:david.berz@weil.com]
**Sent:** Thursday, November 17, 2011 5:45 PM
**To:** Michael Hill
**Cc:** Blumenthal, Michael V. (MBlumenthal@crowell.com)
**Subject:** RACER Trust Funding

On behalf of MLC, attached is a response to your last email to me regarding funding of the Racer Trust. If you wish to discuss this matter further, please let me know.

DRB

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email, postmaster@weil.com, and destroy the original message. Thank you.

This message may contain privileged or otherwise confidential information intended only for the use of the intended recipient(s). Do not disseminate, forward or copy this email without prior consent of the RACER Trust. If you have received this email in error, please notify the sender by return email, and delete the original and all copies of this message from your computer. Thank you.

This message may contain privileged or otherwise confidential information intended only for the use of the intended recipient(s). Do not disseminate, forward or copy this email without prior consent of the RACER Trust. If you have received this email in error, please notify the sender by return email, and delete the original and all copies of this message from your computer. Thank you.

# Weil, Gotshal & Manges LLP

1300 Eye Street NW, Suite 900
Washington, DC 20005-3314
+1 202 682 7000 tel
+1 202 857 0940 fax

David R. Berz, Esquire
202-682-7190
david.berz@weil.com

November 17, 2011

**VIA EMAIL AND FIRST CLASS MAIL**

Michael O. Hill
Chief Operating Officer and General Counsel
Revitalizing Auto Communities Environmental Response Trust
2300 Wisconsin Avenue, NW
Suite 300
Washington, DC 20007
and
2930 Ecorse Road
Ypsilanti, MI 48198

## Re: <u>RACER Trust Funding</u>

Dear Mr. Hill:

This responds to your latest email questioning the propriety of the methodology used by Motors Liquidation Corporation ("MLC") to fund the RACER Trust on March 31, 2011.

As explained in Mr. Koch's letter of November 8, 2011, the rationale for MLC's funding methodology was entirely consistent with the objectives of the Environmental Response Trust Settlement Agreement and Consent Decree ("ERT Settlement Agreement") and discussed with, and approved by, numerous stakeholders long before the March 31, 2011 funding date. Moreover, the decision to fund RACER Trust, in part with U.S. Treasury Inflation-Protected Securities ("TIPS"), has provided a benefit to the Trust of marketable, now saleable TIPS that have already increased the value of RACER Trust assets by $22.2 million. We also believe your concerns regarding funding ignore the terms of ERT Settlement Agreement Paragraph 32, Attachment A, and Paragraph 109, as well as the details of Mr. Koch's letter of November 8, 2011.

While we disagree with you on these matters, to the extent you are concerned about how the funding of the RACER Trust with TIPS impacts your accounting or reporting obligations, you simply may sell the TIPS to cover any alleged "shortfall" you may perceive in the initial funding as the difference in the current value of the TIPS far exceeds any perceived funding shortfall. Indeed, we urge you to take this step to mitigate any alleged damages you believe have been incurred to the detriment of the RACER Trust.

Michael O. Hill                                                      **Weil, Gotshal & Manges LLP**
November 17, 2011
Page 2


      In the alternative,  you should reconsider the RACER Trust's reported refusal to return the TIPS that MLC provided to the RACER Trust on March 31, 2011.  Promptly upon receipt, MLC will liquidate the securities portfolio and provide RACER Trust with the cash MLC believes the RACER Trust is entitled to under the terms of the ERT Settlement Agreement.  If RACER Trust's "cash at closing" argument has any merit, we see no justification for RACER Trust keeping the TIPS that MLC provided to it on March 31, 2011.  MLC would remit any excess monies from the sale of the TIPS to the U.S. Treasury as part of its wind-down activities.


                        Very truly yours,


                        David R. Berz


DRB/amk
cc:  David Jones, Esquire
      Michael Blumenthal, Esquire