CROWELL & MORING LLP

590 Madison Avenue

New York, New York 10022

Telephone:  (212) 223-4000

Fax:  (212) 223-4134

Michael V. Blumenthal

Steven B. Eichel

HILL & KEHNE, LLC

2300 Wisconsin Avenue, N.W.

Washington, DC  20007

Telephone:  (202) 558-2100

Fax:  (202) 558-2127

Jeffrey P. Kehne

Attorneys for the

Revitalizing Auto Communities Environmental Response Trust

f/k/a Environmental Response Trust

UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | |
| | Chapter 11 Case No. 09-50026 (REG) |
| MOTORS LIQUIDATION COMPANY, et al., f/k/a General Motors Corp., et al, | |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL DECLARATION OF SCOTT R. HAMILTON IN SUPPORT OF
MOTION OF THE REVITALIZING AUTO COMMUNITIES ENVIRONMENTAL
RESPONSE TRUST FOR AN ORDER PURSUANT TO 11 U.S.C. §§ 105 AND 1142 TO
ENFORCE DEBTORS PAYMENT OBLIGATIONS UNDER THE SECOND AMENDED
JOINT CHAPTER 11 PLAN AND THE CONFIRMATION ORDER**

Scott R. Hamilton, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am the Chief Financial Officer of the Revitalizing Auto Communities

Environmental Response Trust ("RACER" or "Trust").  I am providing this Supplemental

Declaration to address assertions contained in the Motors Liquidation Company DIP Lenders

Trust's Amended Response in Opposition to Motion of the Revitalizing Auto Communities

Environmental Response Trust for an Order Pursuant to 11 U.S.C. §§ 105 and 1142 to Enforce

Debtors Payment Obligations Under the Second Amended Joint Chapter 11 Plan and the

Confirmation Order ("Response").  This Supplemental Declaration augments information

provided in my November 21, 2011 Declaration in support of the Motion Of The Revitalizing

Auto Communities Environmental Response Trust For An Order Pursuant To 11 U.S.C. §§ 105

And 1142 To Enforce Debtors Payment Obligations Under The Second Amended Joint Chapter

11 Plan And The Confirmation Order ("Motion").

       2.      I served as Controller of Motors Liquidation Company ("MLC") from July 10,

2009 through May 13, 2011.  (While serving as MLC Controller, I was an employee of

AlixPartners LLP assigned to the Motors Liquidation Company engagement.  I resigned from

AlixPartners LLP effective May 13, 2011.)  In that capacity, I worked on a regular basis with

Brian Rosenthal, who performed cash management and investment analysis work for MLC, and

Jim Selzer, MLC's Vice President, Treasurer and Chief Financial Officer.

       3.      In the summer and fall of 2010, I became aware that MLC was actively

considering the purchase of a portfolio of long-term U.S. Treasury securities for transfer to the

contemplated environmental response trust (now RACER) following approval of the

reorganization plan in the General Motors Corporation bankruptcy proceeding.  Although I did

not have a decision making role in the selection of this portfolio of securities, I was informed of

the portfolio's composition shortly before it was purchased.

       4.      My responsibilities as MLC Controller included accounting for and reporting on

MLC's securities holdings.  The portfolio of U.S. Treasury securities that MLC acquired for

transfer to RACER included six different issues of Treasury Inflation Protected Securities

("TIPS") with varying maturity dates, selected to align future U.S. Treasury repayments of

inflation-adjusted principal amounts (made at maturity) with RACER's anticipated cash needs.

5.       From MLC's purchase of the TIPS in October 2010 through its funding of

RACER on March 31, 2011, I drafted MLC's Monthly Operating Reports to the Bankruptcy

Court and the U.S. Trustee.  These Reports, which were reviewed and often revised by MLC

senior management before release, were also filed with the U.S. Securities and Exchange

Commission as attachments to MLC's monthly Form 8-K filings.  They were prepared to satisfy

Debtors' monthly reporting obligations in connection with the chapter 11 proceeding.  MLC was

not required to prepare financial statements in accordance with accounting principles generally

accepted in the United States of America ("GAAP") and did not do so.  Each Monthly Operating

Report included a clear disclosure, in a note captioned "Basis of Presentation," that the financial

information contained in the Report was preliminary and unaudited and that it was not intended

to present MLC's financial statements in accordance with GAAP.  Annexed hereto as

Attachment A is a true and accurate excerpt from MLC's Monthly Operating Report for the

Month Ending February 28, 2011 which includes "Note 2 – Basis of Presentation."  All of the

MLC Monthly Operating Reports that I worked on contained a substantially identical basis of

presentation note.

6.       The Monthly Operating Reports provided two measures of the value of these

securities:  "Amortized Cost" (also referred to as "Expected Net Realizable Value" in the later

Reports) and "Fair Value" (also referred to as "Current Market Value" in the later Reports).

Amortized cost figures were used to record the value of U.S. Treasury securities in each Report's

Statement of Net Assets (Liabilities).  Fair value of the securities was disclosed for purposes of

comparison in each Report, in a note captioned "Basis of Presentation."  Interest that had accrued

on MLC's securities but that had not yet been paid was reported separately as a component of

MLC's "other current assets." The sum of amortized cost plus accrued but unpaid interest was

referred to by MLC, in documents such as the flow of funds spreadsheet that appears as Exhibit

B to Mr. Rosenthal's Declaration, as the "net book value" of MLC's securities.  The sum of fair

value (that is, current market value) and accrued but unpaid interest is referred to in RACER's

November 21, 2011 Motion as "fair market value" (Motion p. 2 n.3).

7.      As part of my work on these reports, I calculated the amortized cost of MLC's

securities.  In performing these calculations, I implemented decisions communicated to me by

Jim Selzer:  (a) that the securities should be classified as held to maturity; and (b) amortized

applying the straightline amortization method to the difference between MLC's purchase price

and the TIP-adjusted principal at the date of MLC's purchase (or par value in the case of the non-

TIP securities).  The amortized cost figures set out in the Monthly Operating Reports were not

intended to reflect contemporaneous cash values in the market for U.S. Treasury Securities. To

determine current market values, MLC used price quotes provided by JP Morgan.

8.      During the period from October 2010 through March 2011 market values of

MLC's portfolio of U.S. Treasury securities declined.  In about February 2011, I became aware

that MLC management intended to transfer those securities to the environmental response trust at

net book value (that is, at amortized cost plus accrued but unpaid interest), rather than at fair

market value.  It was clear to me in early 2011 that the decision to value the portfolio at net book

value could prove controversial in light of the substantial disparity between net book value and

fair market value at that time.  I recall discussing the growing disparity between net book value

and current market value -- and the prospect of a controversy on this point -- with Mr. Rosenthal

during February 2011.

9.      In mid-March 2011, I agreed to leave MLC and accept a position as RACER's Chief Financial Officer ("CFO") following the Effective Date. I became an employee of RACER on May 14, 2011. During the last two months of my tenure as MLC's Controller, from March 31, 2011, through May 13, 2011, I divided my time between work for MLC and work for RACER. This arrangement was based on provisions of a Transition Services Agreement between MLC and RACER under which RACER reimbursed MLC for my work.

10.     On May 9, 2011, I sent an email to Mr. Rosenthal concerning correction of the TIP-adjusted principal amounts that MLC had used in a March 28, 2011 computation of the net book values of the securities it was preparing to transfer to RACER on March 31, 2011. Attached to my email was an analysis showing that TIP-adjusted principal values of the transferred securities on the Effective Date were $107,883.90 higher than MLC had previously estimated. I sent this email from my MLC email account in my capacity as MLC Controller. My email did not address an additional correction for interest that accrued between March 28 and March 31, 2011.

11.     A true and accurate copy of my May 9, 2011 email to Mr. Rosenthal is reproduced as Exhibit F to the Rosenthal Declaration (Response Ex. 1).

12.     During the period from May 14 through June 30, 2011, I worked with Mr. Selzer, in my capacity as RACER CFO, on issues relating to MLC's transfer of funds and property management responsibilities to RACER. My work with Mr. Selzer during this period included efforts to implement two sets of interim adjustments to the MLC-RACER accounts: (a) corrections for MLC's post-Effective Date receipt of payments owed to RACER (including rent paid by General Motors LLC for the use of RACER properties) and for MLC's payment of expenses properly charged to RACER; and (b) correction of the inaccurate TIP-adjusted

principal estimates that MLC had relied upon to compute net book values of the investments

transferred to RACER on the Effective Date.

13.     During May and early June 2011, while I was working with Mr. Selzer on the

above-referenced adjustments to the MLC-RACER accounts, I was also in contact with Elliott

Laws, the Managing Member of RACER's Administrative Trustee, EPLET, LLC, concerning

RACER budget and funding issues.   One topic that Mr. Laws and I discussed at length was the

disparity between the value that MLC assigned to the U.S. Treasury securities that it transferred

to RACER on the Effective Date, based on MLC's net book value computations, and the value

that US Bank assigned to those same securities, based on market prices on that date.

14.     On June 17, 2011, I received a copy of an email that Mr. Laws sent to U.S.

Department of Treasury ("Treasury") officials Mark Dowd and Alan Fu, proposing issues for

discussion in a meeting scheduled for June 20, 2011.   That email included the statement that:

> At that time I would also like to raise a recently identified discrepancy between US
> Bank's market-based valuation of the bonds that transferred by MLC to the Trust on the
> Effective Date and the value that MLC assigned to those bonds. This $15 million
> discrepancy was identified during our review of US Bank['s] April statements.

This email was consistent with my earlier conversations with Mr. Laws concerning RACER's

need to resolve the discrepancy between the net book value and fair market value of the

transferred securities.   Annexed hereto as Attachment B is a true and accurate copy of the email

that I received from Mr. Laws on June 17, 2011.

15.     On June 20, 2011, I attended a meeting with Mr. Laws, Michael Hill (RACER's

General Counsel and Chief Operating Officer), and Mr. Dowd (who was then RACER's primary

contact at the U.S. Department of the Treasury).  Mr. Fu, another Treasury official who worked

on RACER matters, participated by telephone for the first portion of the meeting.  During that

meeting, Mr. Hill pointed out that the Effective Date market values that US Bank provided for

the transferred U.S. Treasury securities were significantly lower than the net book values that

Debtors had used in their flow of funds summary.  The meeting ended without resolution of the

funding shortfall issue.  RACER and Treasury agreed to continue the discussion.

16.      On June 28, 2011, following a series of communications with Mr. Selzer

concerning the above-referenced interim adjustments to RACER-MLC accounts, I agreed to

accept an interim payment from MLC to RACER that included an offset of $107,883.90 to

correct for errors in the TIP-adjusted principal figures used to compute MLC's March 28, 2011

estimates of net book values.  Items addressed in the interim adjustment that Mr. Selzer and I

discussed on June 28 are listed in a schedule captioned "MOTORS LIQUIDATION

CORPORATION Amounts Due (To)/From RACER *(excludes RACER funding adjustment)* June

28, 2011 revised" (emphasis in the original), which Mr. Selzer provided to me by email on that

date.   Annexed hereto as <u>Attachment C</u> is a true and accurate copy of Mr. Selzer's June 28, 2011

email to me, including the attached schedule of interim adjustments.  (The schedule of interim

adjustments that appears as Exhibit G to the Rosenthal Declaration is a later, slightly revised

version of the schedule that Mr. Selzer sent to me on June 28.)

17.      In my June 28, 2011 conversation with Mr. Selzer, I emphasized that RACER was

accepting the $107,883.90 reduction in MLC's interim payment to RACER for the sole purpose

of correcting for MLC's use of inaccurate TIP-adjusted principal figures on the Effective Date

and that the larger issue of whether the securities should have been transferred at net book value

or at fair market value remained to be resolved.  Mr. Selzer agreed that the net book value versus

current market value issue remained open, and that it would have to be resolved by others at

higher levels of our respective organizations.  A payment to complete the interim adjustment that

Mr. Selzer and I addressed was wired from MLC to RACER on June 30, 2011.

18.     Following the June 30, 2011, interim adjustment payment, I worked with Mr.

Selzer and Mr. Rosenthal to complete the true-up of MLC-RACER accounts called for by

paragraph 7 of the Confirmation Order.  This final true-up incorporated adjustments for post-

Effective Date cash receipts and expenses similar to some of the adjustments addressed in the

June 30, 2011 interim adjustment payment.  For example, the final true-up included a

$107,396.53 line item for funds owed to RACER for its portion of reimbursed expenses collected

by MLC from the Hyatt Hills Golf Commission.  The final true-up also included a $192,667.00

line item for funds owed to MLC by RACER for post-Effective Date services provided under the

Transition Services Agreement referenced above.  Annexed hereto as <u>Attachment D</u> is a true and

accurate copy of a schedule captioned "Final Accounting for the $13.9 million Administrative

Funding Account Adjustment and $14.3 million Minimum Estimated Property Funding Account

Adjustment As of December 1, 2011" with the line items discussed above.

19.     On December 2, 2011, when the paragraph 7 true-up process was completed,

MLC and RACER entered into a Receipt and Partial Release Agreement.  That agreement

specifically reserved the parties' "respective positions with respect to the matters at issue in

RACER's November 21, 2011 Motion before the Bankruptcy Court."  Annexed hereto as

<u>Attachment E</u> is a true and accurate copy of the December 2, 2011 "Receipt and Partial Release

Agreement."

I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 3, 2012 in Ypsilanti, Michigan.


_____/s/ Scott R. Hamilton_____
            Scott R. Hamilton

ATTACHMENT A

EXCERPTS FROM MLC'S MONTHLY OPERATING
REPORT FOR THE MONTH ENDED FEBRUARY 28, 2011

(APRIL 7, 2011)

**UNITED STATES BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x

|   |   |   |
|---|---|---|
| | : | |
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.**, *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------------x

**MONTHLY OPERATING REPORT FOR THE MONTH
ENDED FEBRUARY 28, 2011**

DEBTORS' ADDRESS:          401 S. Old Woodward, Suite 370, Birmingham, MI  48009

I declare under penalty of perjury (28 U.S.C Section 1746) that the report and the attached documents are true and accurate to the best of my knowledge and belief.

*/s/ James Selzer*
James Selzer
Vice President and Treasurer

DATE:  April 7, 2011

**MOTORS LIQUIDATION COMPANY, *ET AL.***
**MONTHLY OPERATING REPORT FOR THE MONTH ENDED FEBRUARY 28, 2011**
**NOTES TO MONTHLY OPERATING REPORT**

On August 31, 2010, the Debtors filed their Joint Chapter 11 Plan (as amended, modified or supplemented, the "***Plan***"), together with a proposed disclosure statement.  On September 3, 2010, the Debtors filed a motion for an order approving the disclosure statement and solicitation procedures for the Plan.  The disclosure statement was approved by order of the Bankruptcy Court dated December 8, 2010.  A hearing on the confirmation of the Plan occurred on March 3, 2011 and on March 29, 2011, the Court entered an order confirming the Plan (Docket Number 9941).  On March 31, 2011, the Debtors announced that all conditions to the occurrence of the Effective Date (as defined in the Plan) were met or waived, thereby making the Plan effective.

**Note 2 – Basis of Presentation**

*General*

This Monthly Operating Report has been prepared solely for the purpose of complying with the monthly reporting requirements applicable in the Debtors' chapter 11 cases and is in a format acceptable to the Office of the United States Trustee for the Southern District of New York.  The financial information contained herein is preliminary and unaudited and does not purport to show the financial statements of any of the Debtors in accordance with accounting principles generally accepted in the United States of America ("***GAAP***"), and therefore may exclude items required by GAAP, such as certain reclassifications, eliminations, accruals, valuations and disclosure items.

The condensed combined statements of operations presented in this Monthly Operating Report are for the month ended February 28, 2011 and the filing to date period ended February 28, 2011.  The condensed combined statement of net assets (liabilities) is presented as of February 28, 2011.  The condensed combined statements of cash flows presented are for the month ended February 28, 2011 and the filing to date period ended February 28, 2011.

These condensed combined financial statements included herein include normal recurring adjustments, but not all of the adjustments that would typically be made for quarterly and annual financial statements prepared in accordance with GAAP.  In addition, certain information and footnote disclosures normally included in financial statements prepared in accordance with GAAP have been condensed or omitted.

Furthermore, the monthly information presented herein, has not been subjected to the same level of accounting review and testing that MLC historically applied in the preparation of its quarterly and annual financial information in accordance with GAAP.  Accordingly, the financial information herein is subject to change and any such change could be material.  The results of operations contained herein are not necessarily indicative of results which may be expected for any other period or the full year and may not reflect MLC's results of operation, net assets and cash flows in the future.

**MOTORS LIQUIDATION COMPANY, *ET AL.***
**MONTHLY OPERATING REPORT FOR THE MONTH ENDED FEBRUARY 28, 2011**
**NOTES TO MONTHLY OPERATING REPORT**

### *Accounting Requirements*

The condensed combined financial statements herein have been prepared in accordance with the guidance in American Institute of Certified Public Accountants Statement of Position 90-7, "Financial Reporting by Entities in Reorganization under the Bankruptcy Code" (SOP 90-7), which is applicable to companies operating under Chapter 11.  SOP 90-7 generally does not change the manner in which financial statements are prepared.  However, it does require that the financial statements for periods subsequent to the filing of the chapter 11 petition distinguish transactions and events that are directly associated with the reorganization from the ongoing operations of the business.

### *Basis of Accounting*

The accompanying Monthly Operating Report has been prepared using the liquidation basis of accounting.  Assets are presented at estimated net realizable amounts based on the Debtors' plans for liquidation.  Liabilities subject to compromise are presented at amounts expected to be allowed as claims and other liabilities are presented at amounts expected to be paid in settlement of the respective obligations.

### *Cash and Cash Equivalents*

Cash and cash equivalents consist of cash and highly liquid investments in U.S. Treasury and U.S. Treasury backed securities with maturities of three months or less when purchased.

### *Property, Plant and Equipment*

Property, plant and equipment are held for sale or disposal.  The estimated realizable values of property, plant and equipment are evaluated and adjusted based on the Debtors' plans for disposition and available information regarding recoverable amounts.  Changes in estimated realizable values are recognized as reorganization items in the period they are identified.

### *Investments in U.S. Treasury Securities*

Investments in U.S. Treasury securities consist of investments in U.S. Treasury  securities with maturities of 15 years or less.   A portion of these investments include U.S. Treasury Inflation Protected Securities ("*TIPS*") with maturities matched to expected future cash outflows required to settle future obligations.  TIPS provide protection against inflation as measured by the Consumer Price Index for All Urban Consumers.

These investments are reflected as investments in U.S. Treasury securities on the accompanying statement of net assets (liabilities), with amounts maturing in one year or less classified as short term investments.  Accrued interest receivable at February 28, 2011 was $935,000 and is included in other current assets.

Case No.: 09-50026 (REG) (Jointly Administered)

**MOTORS LIQUIDATION COMPANY, *ET AL.***
**MONTHLY OPERATING REPORT FOR THE MONTH ENDED FEBRUARY 28, 2011**
**NOTES TO MONTHLY OPERATING REPORT**

The expected net realizable values, maturities and current market values of these investments as of February 28, 2011 are as follows:

(amounts in thousands of U.S. Dollars)

| Maturity | Expected Net Realizable Value | | Current Market Value | | Unrealized gain / (loss) | |
|---|---|---|---|---|---|---|
| Due in one year or less | $ | 346,075 | $ | 346,939 | $ | 864 |
| Due after one year through five years | | 14,460 | | 14,024 | | (436) |
| Due after five years through 10 years | | 165,307 | | 159,492 | | (5,815) |
| Due after 10 years | | 167,078 | | 157,617 | | (9,461) |
| | $ | 692,920 | $ | 678,072 | $ | (14,848) |

### *Investments in Subsidiaries*

The Debtors' interests in subsidiaries, including controlled non-Debtor subsidiaries, are presented at estimated realizable values in liquidation.

### *Environmental Reserves*

Environmental reserves represents estimated costs to remediate, operate, monitor and maintain contaminated sites.   Environmental reserves were previously included in liabilities subject to compromise but have been reclassified to current liabilities as a result of the Environmental Response Consent Decree and Settlement Agreement entered into during October 2010.

### *Reorganization Items*

The Monthly Operating Report presents expenses, gains and losses directly associated with the reorganization as reorganization items.  The amounts presented include professional fees associated with the reorganization, Office of the U.S. Trustee quarterly fees, realized gains and losses from dispositions of assets, changes in the estimated net realizable values of assets and amounts expected to be allowed as claims.

### *Income Taxes*

The Debtors expect that no income tax obligations will be incurred as a result of reorganization operations, disposal of assets or settlement of liabilities.  As a result, the Monthly Operating Report does not include current or deferred income taxes.

Case No.: 09-50026 (REG) (Jointly Administered)

**MOTORS LIQUIDATION COMPANY, *ET AL.***
**MONTHLY OPERATING REPORT FOR THE MONTH ENDED FEBRUARY 28, 2011**
**CONDENSED COMBINING DEBTORS-IN-POSSESSION STATEMENT OF NET ASSETS (LIABILITIES)**
**AS OF FEBRUARY 28, 2011**
(Unaudited in thousands of U.S. Dollars)

| | 09-50026 Motors Liquidation Company | 09-50027 MLCS, LLC | 09-50028 MLCS Distribution Corporation | 09-13558 MLC of Harlem, Inc. | 09-50029 Remediation and Liability Management Company, Inc. | 09-50030 Environmental Corporate Remediation Company, Inc. | Eliminations | Combined Debtors |
|---|---|---|---|---|---|---|---|---|
| **Assets:** | | | | | | | | |
| Cash and cash equivalents | $ 247,320 | $ - | $ - | $ - | $ - | $ - | $ - | $ 247,320 |
| Short term investments in U.S. Treasury securities | 346,075 | - | - | - | - | - | - | 346,075 |
| Due from affiliates | 8,976 | - | - | - | - | - | (8,949) | 27 |
| Other receivables | 268 | - | - | - | - | - | - | 268 |
| Prepaid expenses | 1,325 | - | - | - | - | - | - | 1,325 |
| Other current assets | 20,673 | - | - | - | - | - | - | 20,673 |
| Total current assets | 624,637 | - | - | - | - | - | (8,949) | 615,688 |
| Property, plant and equipment | | | | | | | | |
| Land and building | 87,915 | - | - | - | 535 | - | - | 88,450 |
| Machinery and equipment | 20,282 | - | - | - | - | - | - | 20,282 |
| Total property, plant and equipment | 108,197 | - | - | - | 535 | - | - | 108,732 |
| Investment in GMC | - | | | | | | | - |
| Investments in U.S. Treasury securities | 346,845 | - | - | - | - | - | - | 346,845 |
| Restricted cash | 65,341 | - | - | - | - | - | - | 65,341 |
| Other assets | 182 | - | - | - | - | - | - | 182 |
| Total assets | $ 1,145,202 | $ - | $ - | $ - | $ 535 | $ - | $ (8,949) | $ 1,136,788 |
| **Liabilities:** | | | | | | | | |
| Debtor-in-possession financing | $ 1,268,184 | $ - | $ - | $ - | $ - | $ - | $ - | $ 1,268,184 |
| Accounts payable | 4,928 | - | - | - | - | - | - | 4,928 |
| Due to GM LLC | 73 | - | - | - | - | - | - | 73 |
| Due to affiliates | 959 | 15 | 16 | 6 | 4,438 | 1,374 | (5,849) | 959 |
| Accrued sales, use and other taxes | 3,300 | - | - | - | - | - | - | 3,300 |
| Accrued professional fees | 35,266 | - | - | - | - | - | - | 35,266 |
| Environmental reserves | 487,412 | - | - | - | 28,766 | 4,932 | - | 521,110 |
| Other accrued liabilities | 8,581 | - | - | - | - | - | - | 8,581 |
| Total current liabilities | 1,808,703 | 15 | 16 | 6 | 33,204 | 6,306 | (5,849) | 1,842,401 |
| Liabilities subject to compromise | 35,018,293 | - | - | - | 2,342 | 2,687 | (3,100) | 35,020,222 |
| Total liabilities | 36,826,996 | 15 | 16 | 6 | 35,546 | 8,993 | (8,949) | 36,862,623 |
| Net assets (liabilities) | $ (35,681,794) | $ (15) | $ (16) | $ (6) | $ (35,011) | $ (8,993) | $ - | $ (35,725,835) |

Case No.: 09-50026 (REG) (Jointly Administered)

ATTACHMENT B

EMAIL FROM ELLIOTT LAWS TO TREASURY

(JUNE 17, 2011)

**Scott Hamilton**

---

| | |
|---|---|
| **From:** | Elliott Laws |
| **Sent:** | Friday, June 17, 2011 6:17 PM |
| **To:** | Mark.Dowd@treasury.gov |
| **Cc:** | Michael Hill; Scott Hamilton; Alan.Fu@treasury.gov |
| **Subject:** | RE: 2011 Administrative Budget and Pre-Effective Date fees - DIAL IN NUMBER |
| **Attachments:** | RACER - 2011 Admin Budget (Personnel and Prof Fee Analysis).xlsx; RACER - Personnel and Prof Fee Comparison (2011 Admin Budget).pdf |

Mark-

In response to your recent email inquiring about personnel costs and professional fee, please see the attached presentation and supporting Excel file.  We will be able to discuss this in more detail on Monday if necessary. As to your specific questions:

•      RACER's $8.9M budget for personnel costs and professional fees is $0.3M above MLC's February 2011 projections.  This increase is due primarily to unbudgeted MLC TSA costs of $756K.  Excluding those costs, budgeted amounts would have decreased by $0.5M (or 6%).

•      We can confirm that employee, Trustee, COO/GC and Tax Officer costs are all pro-rated for the nine months ending December 31, 2011.  Page 5 of the presentation highlights how the Trustee, COO/GC and Tax Officer costs were pro-rated.

•      The specifics on personnel costs and professional fees were included in our April 30 submission but are also reflected and, in some cases, highlighted in the attachments to this email.

As part of our 2011 Administrative Budget discussion on Monday, we should also discuss certain "Environmental Action" costs that have been contemplated in all budgets to date as Administrative Costs.  As you know, it does appear that some or all of these costs meet the Settlement Agreement's definition of Environmental Action (¶ 9). We need to come to some understanding of this issue and whether or not any changes should occur as we foresee some difficulty in the future at some sites.  For example, at  Shreveport pursuant to the March 30, 2011 cost-sharing agreement between MLC and GM – the hand-off from GM to RACER will require the incurrence of hazardous waste transportation and disposal costs.  As you know, Shreveport has an EA budget of $0, and Cushion Funding would not be available.  If we do decide to make some changes it will likely involve discussions with a handful of states.

You have also agreed to discuss with us, after the 2011 Administrative Budget meeting, the status of MLC's January - March Administrative Budget and the reconciliation process.  At that time I would also like to raise a recently identified discrepancy between US Bank's market-based valuation of the bonds that transferred by MLC to the Trust on the Effective Date and the value that MLC assigned to those bonds.  This $15 million  discrepancy was identified during our review of US Banks' April statements.

Thnx for everything Mark and we look forward to seeing you and Alan on Monday.

Elliott


Elliott P. Laws
Managing Member of EPLET, LLC
Administrative Trustee for RACER Trust

ATTACHMENT C

EMAIL FROM JIM SELZER TO SCOTT HAMILTON WITH
SCHEDULE OF INTERIM ADJUSTMENTS

(JUNE 28, 2011)

## Scott Hamilton

| | |
|---|---|
| **From:** | Selzer, Jim <jselzer@alixpartners.com> |
| **Sent:** | Tuesday, June 28, 2011 5:21 PM |
| **To:** | Scott Hamilton |
| **Subject:** | Revised Rent, etc Reimbursement |
| **Attachments:** | RACER Reimbursement for Rent etc (6 28 11)revised.xlsx |

Scott;

Here is a revised schedule for funding which includes the TIPS reconciliation and the Title Source invoice.

Please revise the invoice approval form and I will circulate for approval.

Thanks.  Jim


AlixPartners, LLP
(248) 229-1379 (cell)
(313) 486-2930 (office)

Confidential: This electronic message and all contents contain information from the firm of AlixPartners, LLP and its affiliates which may be confidential or otherwise protected from disclosure. The information is intended to be for the addressee only. If you are not the addressee, any disclosure, copy, distribution or use of the contents of this message is prohibited. If you have received this electronic message in error, please notify us immediately at +1 (248) 358-4420 and destroy the original message and all copies.

**MOTORS LIQUIDATION COMPANY**
**Amounts Due (To)/From RACER**
*(excludes RACER funding adjustment)*
**June 28, 2011 revised**

|  | Amount |  |
|---|---|---|
| MLC rec'd GM rent for April in March | (478,860.00) | Rec'd 3/25/11 |
| MLC rec'd GM rent for May in April | (478,859.75) | Rec'd 4/29/11 |
| MLC rec'd GM rent for June in May | (478,860.00) | Rec'd 5/27/11 |
| Reimbursement for GM rent overpaid | 181,606.19 | Per GM letter dated 6/3/11 |
| Flint flow through warehouse | (25,000.00) | Deployment Strategies Group rec'd on 4/20/11 |
| Verizon cell tower rental income for Pontiac for April | (875.51) | Rec'd by MLC from Cass Information Systems on 5/5/11 |
| Verizon cell tower rental income for Pontiac for May | (861.85) | Rec'd by MLC from Cass Information Systems on 6/8/11 |
| Reconciliation of TIPS transfer | 107,883.90 | Based on true up of actual data |
| Title Source | 13,100.00 | Portion of costs related to transfer of properties which are RACER's responsibility |
| Specific invoices that straddle the Effective Date that MLC paid; portion of which is RACER's responsibility | 48,685.86 | As of 5/23/11 |
| License for MAS 90; invoice # 52668A-IN | 11,168.90 | RACER to reimburse since MLC MAS 200 license was transferred to RACER |
| **Total Other** | **(1,100,872.26)** | |

# ATTACHMENT D

# FINAL ACCOUNTING SCHEDULE

# (DECEMBER 1, 2011)

**RACER**
**Final Accounting for the $13.9mm Administrative Funding Account Adjustment and $14.3mm Minimum Estimated Property Funding Account Adjustment**
**As of December 1, 2011**

**Administrative Funding Account Adjustment**

| | | |
|---|---|---|
| Amount due RACER per 7/28/11 analysis prepared by MLC | 2,609,684.00 | |
| Adjustments: | | |
| Plus: | | |
| Portion of Hyatt Hills Golf Commission reimbursement due RACER | 107,396.53 | See email and supporting documentation sent to B. Rosenthal on 9/14/11. |
| Less: | | |
| DTE natural gas invoice - March 2011 | (561,548.00) | Final Willow Run DTE natural gas invoice relating to MLC account. |
| TSA invoice due MLC | (192,667.00) | Adjusted invoice as agreed to by RACER/MLC. |
| Revised administrative funding account adjustment amount due RACER | 1,962,865.53 | Amount to be wired to U.S. Bank Administrative Account # 130114766335. |

**Minimum Estimated Property Funding Account Adjustment (excludes unpaid agency oversight costs)**

| | | |
|---|---|---|
| Amount due RACER per 7/28/11 analysis prepared by MLC | 625,427.00 **[A]** | Amount to be wired to U.S. Bank Minimum Estimated Property Funding Account # 130114766293. |

**[A]** - Minimum estimated property funding account adjustment amount of $625,427 excludes $169,666 of estimated, unpaid agency oversight costs being held by MLC on behalf of RACER.  See Receipt and Partial Release Agreement dated December 1, 2011.

ATTACHMENT E

RECEIPT AND PARTIAL RELEASE AGREEMENT

(DECEMBER 2, 2011)

## RECEIPT AND PARTIAL RELEASE AGREEMENT

In consideration of payment by Motors Liquidation Company ("MLC") to the Revitalizing Auto Communities Environmental Response Trust ("RACER" or "Trust") by December 2, 2011, of $1,962,865.53 to the RACER Administrative Funding Account and $625,427.00 to the RACER Minimum Estimated Property Funding Account, and except as set forth below, RACER shall release MLC in full for all final accounting and payment obligations with respect to, respectively, the $13,900,000 in the Administrative Funding Account and the $14,300,000 in the Minimum Estimated Property Funding Account, withheld by MLC pursuant to Paragraph 7 of the Confirmation Order.

This release does not extend to $169,666 held by MLC as possibly required to pay for agency oversight costs.   MLC and RACER agree to work together in earnest each business day to resolve this agency oversight cost issue, with a goal of resolving it by no later than December 6, 2011.

By signing this release, MLC and RACER do not affect their respective positions and do not waive or otherwise prejudice their respective rights with respect to the matters at issue in RACER's November 21, 2011 Motion before the Bankruptcy Court.


MOTORS LIQUIDATION COMPANY

REVITALIZING AUTO COMMUNITIES
ENVIRONMENTAL RESPONSE TRUST


By: _Ted Stenger 12/2/2011_
Ted Stenger          (Date)
Executive Vice President
Motors Liquidation Company
500 Renaissance Center, Suite 1400
Detroit, MI 48243

By: _____ 12/2/11
Michael O. Hill          (Date)
Chief Operating Officer & General Counsel
Revitalizing Auto Communities
Environmental Response Trust
2930 Ecorse Road
Ypsilanti, MI 48198