Page 1

1

2     UNITED STATES BANKRUPTCY COURT

3     SOUTHERN DISTRICT OF NEW YORK

4     Case No. 09-50026-reg

5     - - - - - - - - - - - - - - - - - - - - -x

6     In the Matter of:

7

8     GENERAL MOTORS CORPORATION, ET AL.,

9

10                 Debtors.

11

12     - - - - - - - - - - - - - - - - - - - - -x

13

14                 United States Bankruptcy Court

15                 One Bowling Green

16                 New York, New York

17

18                 January 18, 2012

19                 9:49 AM

20

21     B E F O R E:

22     HON. ROBERT E. GERBER

23     U.S. BANKRUPTCY JUDGE

24

25

1

2    Debtors' Eighty-Third Omnibus Objection to Claims (Welfare

3    Benefits Claims of Retired and Former Salaried and Executive

4    Employees) - Only Cobble Claim

5

6    Motion for Objection to Claim(s) Number:  70860 and 70869 Filed

7    by Tracy Woody and Motion Requesting Enforcement of Court

8    Orders Setting Deadlines to File Proofs of Claim

9

10   Motion of Post-Effective Date Debtors and Motors Liquidation

11   Company GUC Trust for Entry of Order Pursuant to 11 U.S.C.

12   Sections 105(A) and 1142(B) and Fed R. Bankr. P. 7012(B) and

13   9014(C)(I) Directing the Tullises to Dismiss the Debtors and

14   Their Attorneys from Pending Action with Prejudice; and (II)

15   Enforcing Prior Orders of this Court by Enjoining the Tullises

16   from Further Action Against the Debtors, Post-Effective Date

17   Debtors, Motors Liquidation Company GUC Trust, and Their

18   Officers and Professionals

19

20

21

22

23

24

25   Transcribed by:  Aliza Chodoff

```
                                                        Page 3

 1

 2    A P P E A R A N C E S :

 3    WEIL GOTSHAL & MANGES LLP

 4          Attorneys for Debtors

 5          767 Fifth Avenue

 6          New York, NY 10153

 7

 8    BY:   JOSEPH H. SMOLINSKY, ESQ.

 9

10

11    DICKSTEIN SHAPIRO LLP

12          Attorneys for the Motors Liquidation Company GUC Trust

13          1633 Broadway

14          New York, NY 10020

15

16    BY:   STEPHANIE GREER, ESQ.

17

18

19    ALSO PRESENT:

20          JOSEPH COBBLE, Claimant, In Pro Se (Telephonically)

21          CLINTON M. TULLIS, Claimant, In Pro Se (Telephonically)

22

23

24

25
```

09-50026-mg    Doc 11387    Filed 01/19/12    Entered 02/06/12 10:10:41    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 4 of 41

Page 4

1                    P R O C E E D I N G S

2              THE COURT:  Have seats, please.  Okay.  General

3    Motors, Motors Liquidation.  I know of three matters that we

4    have disputed, and I sense we have some others that we need to

5    take care of even though there may not be opposition.  Mr.

6    Smolinsky, are you taking the lead?  You want to give me an

7    update on where we stand?

8              MR. SMOLINSKY:  Good morning, Your Honor.  Joe

9    Smolinsky of Weil Gotshal & Manges, for the Motors Liquidation

10   Company GUC Trust.

11             I believe this morning we have four matters on.  Two

12   of them relate to Tracy Woody.  I don't believe there are

13   other -- any other matters on the calendar.  I do not believe

14   that Ms. Woody signed up for CourtCall.  And rather than go in

15   the order of the agenda, to the extent that the Woody matter is

16   uncontested, perhaps we should start there.

17             THE COURT:  Um-hum.  Ms. Woody, are you on the phone?

18   No.  Anybody in the court here on behalf of Ms. Woody?  No.

19             MR. COBBLE:  (Indiscernible)

20             THE COURT:  Yes, Mr. Cobble.  If I'm not mistaken, you

21   have a pension or a welfare benefit related claim, which we'll

22   be dealing with shortly.  But before that, Mr. Cobble, I want

23   to deal with Ms. Woody if Ms. Woody is on the phone or

24   somebody's on on her behalf.  All right.  I hear no response.

25             Mr. Smolinsky, I think the brief on Ms. Woody was

GENERAL MOTORS CORPORATION, ET AL.

Page 5

1   submitted by Ms. Greer.  Are you going to be handing off to her

2   on that or --

3           MR. SMOLINSKY:  Yes, Your Honor.

4           THE COURT:  Okay.  Ms. Greer.

5           MS. GREER:  Good morning, Your Honor.  Stephanie Greer

6   from Dickstein Shapiro, on behalf of the Trust.

7           As you said, Your Honor, we're here on the Tracy Woody

8   claims this morning.

9           THE COURT:  Can you come closer to the microphone,

10  please, Ms. --

11          MS. GREER:  Sure.

12          THE COURT:  -- Greer?

13          MS. GREER:  It's always a problem.  Your Honor, we set

14  forth in the pleadings the basis for the objection to Ms.

15  Woody's claims.  Each of the claims were filed late; the first

16  two in accordance with the bar date order, and the second two

17  in accordance with this Court's order.  Ms. Woody's pleadings

18  haven't satisfied her burden of excusable neglect, and so I'm

19  happy to rest on our pleadings or answer whatever questions

20  Your Honor may have.

21          THE COURT:  Well, I read the papers, Ms. Greer.  Do

22  we -- not we -- do you have any understanding as to why she

23  blew the second bar date; the deadline I'd given her of thirty

24  days, but only did it by -- missed it by a few days?

25          MS. GREER:  Your Honor, I don't know.  And there's a

09-50026-mg   Doc 11387   Filed 01/19/12   Entered 02/06/12 10:10:41   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 6 of 41

Page 6

1    few facts that I would like to bring this Court's attention --

2    to this Court's attention before you make a ruling.  And the

3    first is that Ms. Woody did file an affidavit of service with

4    her second group of claims, which was dated February 5th.  The

5    deadline to file was February 7th.  Of course, the order says

6    it has to be received by the Court by the 7th.  We didn't

7    receive it -- or the trust, Garden City Group, didn't receive

8    it until the 10th.  So technically, the claims were late.

9        Ms. Woody has been nonresponsive to our request for

10   more information as to why the claims were late and to --

11   talking to her about potential resolution of the claims.  So we

12   were at sort of a loss to resolve them on our own, and that's

13   why we had to file these pleadings because the obje -- the

14   claims were technically late.

15       THE COURT:  She mailed it in time, but it wasn't

16   received in time?

17       MS. GREER:  That's right, Your Honor.  And while we're

18   on the subject, Your Honor, I -- with respect to the first

19   claims, there's also a slight factual issue I wanted to bring

20   to your attention.  As an officer of the court, despite the

21   fact that Ms. Woody hasn't raised it herself, and that is that

22   there was -- there is at least some question as to whether she

23   got actual notice of the original bar date order.

24       THE COURT:  I had that concern at the last hearing.

25       MS. GREER:  Yeah.  And we went back and looked at the

09-50026-mg   Doc 11387   Filed 01/19/12   Entered 02/06/12 10:10:41   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 7 of 41

Page 7

1     facts, and it looked like there was a package mailed to her

2     address.  However, upon looking at it even fur -- more closely,

3     it looks like there was a mistake in the way that the address

4     was -- somehow ended up on the envelope.  So I think there is

5     at least some question as to whether she had actual notice.

6            Now, Ms. Woody was involved in litigation with GM at

7     the time, and so it's certainly possible that she had actual

8     notice.  And I think based on the facts that we know likely

9     that she had actual notice.  But as far as the service, there's

10    certainly are some issues there that I wanted to bring to your

11    Court -- the Court's attention.

12          THE COURT:  Yeah.  If you had a commercial claimant, I

13    would throw this out at this point in the blink of an eye.  But

14    the additional fact that you brought my attention today, which

15    I hadn't picked up from the papers, about her having mailed it

16    before the deadline and just not having arrived at the time,

17    coupled with the lack of prejudice to the Motors Liquidation

18    estate on a very small claim of this size, it's a matter of

19    concern to me.

20          MS. GREER:  Your Honor, what we would ask -- and I

21    understand the Court's view, and we wouldn't object to deeming

22    the claims timely for the purpo -- for -- solely for this

23    purpose for Ms. Woody.  But what we would ask the Court to do

24    is reclassify the claims.  The claims are filed as secured

25    priority claims, which is part of why we haven't just been able

09-50026-mg    Doc 11387    Filed 01/19/12    Entered 02/06/12 10:10:41    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 8 of 41

Page 8

1    to resolve them.  These are claims that arose from an allegedly

2    defective SUV, and so clearly they're unsecured claims.  So if

3    the Court is inclined to allow them as -- or deem them timely

4    filed, we'd ask that the Court reclassify the claims.  And that

5    way we can just resolve them fully and finally.

6            THE COURT:  Ironically, this is the exact same issue

7    upon I was affirmed yesterday by Judge Buchwald in the district

8    court on another person who had a car accident, who was trying

9    to get secured status.  And Judge Buchwald agreed with me that

10   whatever it was, it wasn't a secured claim.  I think that's

11   very fair, Ms. Greer.

12           Settle an order in accordance with what you just said,

13   but additionally provide that it is ordered that she has to

14   respond to any existing settlement offers you have or tee up

15   her matter for ADR within a time certain -- you pick a

16   reasonable time.  You got a little bit of flexibility to do

17   that.  Failing which, her claim will be dismissed for lack of

18   prosecution.

19           MS. GREER:  Thank you, Your Honor.

20           THE COURT:  She's got to -- your willingness to not

21   throw her out is commendable, but she's got to do what it takes

22   to allow this case to move forward.

23           MS. GREER:  Understood, Your Honor.

24           One --

25           THE COURT:  Okay.

09-50026-mg   Doc 11387   Filed 01/19/12   Entered 02/06/12 10:10:41   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 9 of 41

                                                                    Page 9

1          MS. GREER:  -- more thing.  Ms. Woody did file a

2    motion seeking sanctions against --

3          THE COURT:  That's denied.

4          MS. GREER:  Thank you.

5          THE COURT:  On the papers.

6          MS. GREER:  Thank you very much.

7          THE COURT:  Oh, put a decretal paragraph in the order

8    that says that in baby talk.

9          MS. GREER:  Thank you.  Will do.

10          THE COURT:  Okay.

11          MS. GREER:  Your Honor, what Mr. Smolinsky points out

12    to me, and I think is consistent with my understanding as well,

13    I think the cli -- our client is inclined to allow the claim in

14    the full amount as long as it's allowed as an unsecured claim

15    in the interest of efficiency.

16          THE COURT:  Very good, okay.

17          MS. GREER:  Thank you, Your Honor.

18          THE COURT:  Make it happen then.

19          Back to you, Mr. Smolinsky.

20          MR. SMOLINSKY:  Thank you, sir.  The two remaining

21    matters:  we have the Tullis matter.  I'm not sure that I heard

22    Mr. Tullis on the phone, but I believe after speaking with him

23    yesterday he planned on attending.

24          THE COURT:  He's on my phone log.  Let's pause for a

25    second.  Mr. Tullis, are you on the phone?

GENERAL MOTORS CORPORATION, ET AL.

Page 10

1          MR. TULLIS:  Yeah.

2          THE COURT:  Oh, okay.  We're going to -- is it your

3    recommendation, Mr. Smolinsky, that we deal with Mr. Tullis'

4    claim next?

5          MR. SMOLINSKY:  Yes.

6          MR. TULLIS:  Don't talk too fast.  I can't hear

7    (indiscernible) my hearing aids (indiscernible).  Is this the

8    Honorable Robert E. Gerber, or is this (indiscernible)?

9          THE COURT:  This is the judge, Mr. Tullis.  My name is

10   Robert Gerber.

11         MR. TULLIS:  I appreciate that.  (indiscernible)

12   Okay, sir.  I appreciate that, and I'll do my best, but I am

13   hard of hearing and am wearing hearing aids.

14         THE COURT:  Okay.  Mr. Smolinsky, the lawyer for GM,

15   you may proceed.

16         MR. SMOLINSKY:  Thank you.  Clinton and Margaret

17   Tullis has been pursuing claims against General Motors

18   Corporation since 2008 relating to a 2004 motor vehicle

19   accident.  Our motion and reply describe a web of litigation

20   that -- in state and federal court that goes well beyond a

21   judicial determination that was previously made in state court

22   that his claims are barred by the statute of limitations.

23         We have tried to inform Mr. Tullis that his continued

24   litigation is in violation of the various orders of this Court,

25   including the bar date order, the plan of confirmation and the

GENERAL MOTORS CORPORATION, ET AL.

Page 11

1    exculpation provisions.  But in fact, Mr. Tullis continues to

2    file various papers and pleadings in state court in Washington.

3    Our understanding is that he might have filed additional

4    pleadings as recently as yesterday in those actions.

5         Our efforts to advise him of his obligations pursuant

6    to these bankruptcy court orders have not been met with a

7    response other than his attempts to assert claims not only

8    against General Motors Corporation, but also against my firm

9    and members and associates of my firm for bringing that to his

10   attention.  At this point, I would advise the Court that Mr.

11   Tullis did not file a proof of claim, although he did seem to

12   file copies of state court pleadings in this court with a

13   caption that references the Southern District of New York.

14        But we do not believe that that -- those pleadings

15   could rise to the level of a -- an informal proof of claim, and

16   they were not timely.  We attached to our papers parts of the

17   affidavit of service showing that both Margaret Tullis and

18   Clinton Tullis received actual notice of the bar date and

19   elected not to file claims in this court.

20        Your Honor, we would ask that you put an end to this

21   litigation and to enforce this Court's prior orders so that we

22   can continue to wrap up these estates.

23        THE COURT:  All right.  Mr. Tullis, I'll hear from you

24   now.  I read the papers.  There seems --

25        MR. TULLIS:  (indiscernible)

09-50026-mg   Doc 11387   Filed 01/19/12   Entered 02/06/12 10:10:41   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 12 of 41

Page 12

1              THE COURT:  -- there seems --

2              MR. TULLIS:  Your Honor?

3              THE COURT:  No, okay.  Please.  One of the things you

4    have to understand, Mr. Tullis, is you can't interrupt me.  The

5    facts that Old GM lays out do not appear to be disputed.  And

6    they're very serious.  They show very serious violations of

7    bankruptcy law.  And while my in -- I'll hear what you have to

8    say.  And while my inclination isn't to throw you in jail or

9    recommend that you be thrown in jail or to have you fined right

10   now, it's to tell you that it's got to come to a stop right

11   here and now.

12             Now, I need you to help me as a matter of either

13   telling me that the facts that they put forward in their papers

14   aren't true, or, as a matter of bankruptcy law, why I shouldn't

15   enter an order saying you've got to stop.  Go ahead, sir.

16             MR. TULLIS:  Your Honor, (indiscernible) here in the

17   state of Washington (indiscernible) there's crimes committed.

18   I cannot (indiscernible).  And Margaret's had her problems

19   because of it, but not as much injury as I took.  And it's

20   something that you need (indiscernible), and you wouldn't want

21   to go through it, either.  And after I filed (indiscernible),

22   General Motors Corporation, telling them what the situation was

23   and that.  They went right out immediately and ordered better

24   steel for their vehicles.

25             They put it out for their framework, and it's much

GENERAL MOTORS CORPORATION, ET AL.

Page 13

1    stronger steel.  And the same for the steering (indiscernible)

2    steering.  And they've sent me many papers out saying that they

3    thank me for bringing those things up so they can take care of

4    them and be proud of the vehicle that they manufacture.  So I

5    hope, again, together on this (indiscernible) Weil Gotshal &

6    Manges tell me that I'm committing a crime by proceeding with

7    my agenda they are off their -- up on the wrong trail.  Are you

8    there, sir?

9            THE COURT:  Yes.  I just didn't want to interrupt you.

10   Are you finished, sir?

11           MR. TULLIS:  Yeah.  Yes, sir.

12           THE COURT:  Okay.  Mr. Smolinsky, do you wish to

13   reply?

14           MR. SMOLINSKY:  While we are sympathetic with Mr.

15   Tullis' injuries and his wife's injuries, Mr. Tullis had his

16   day in court.  It was determined that he had no claim under

17   Washington State law.  His attempts to -- his attempts to

18   criminal law in order to expand the statute of limitations I

19   think evidences confusion on his part as to who can bring

20   criminal actions and prosecute them.

21           My first takes very seriously the allegations that

22   have been leveled against the firm and against individuals.  We

23   attached copies of our letter -- letters.  And as you can see,

24   sir, we did not allege any criminal activity of any kind but

25   were merely pointing out that there orders of this Court which

GENERAL MOTORS CORPORATION, ET AL.

Page 14

1    bar the very things that Mr. Tullis is considering.  I could

2    see this spinning out of control.  And while we don't seek

3    sanctions at this point, we very much as serious about the

4    possibility of seeking sanctions in the future.

5             THE COURT:  All right.  Okay.  I want you to have a

6    seat for a second, Mr. Smolinsky.  Mr. Tullis, you're going to

7    hear a couple of minutes of silence, and then I'm going to

8    rule.

9             MR. TULLIS:  Yes, sir.  Your Honor (indiscernible).

10   Okay.

11            THE COURT:  All right.  Just stand by, please.

12            All right.  Folks, in this contested in the jointly

13   administered cases of Motors Liquidation Company and its

14   affiliates, Motors Liquidation and the GUC Trust move for an

15   order protecting the debtors, the GUC Trust and their officers

16   and professionals from actions initiated by Clinton M. Tullis

17   and Margaret L. Tullis in violations on the Bankruptcy Code's

18   automatic stay.  The injunctions that have been previously put

19   in place and exculpation provision set forth in the debtors'

20   reorganization plan and in the order that I signed confirming

21   the reorganization plan.

22            For the reasons that follow, the debtors' motion is

23   granted.  Turning first to my findings of fact.  On January 17,

24   2008, the Tullises commenced an action against General Motors

25   Corporation in the Superior Court of the State of Washington

GENERAL MOTORS CORPORATION, ET AL.

Page 15

1    for the County of Pierce.  The Pierce County Superior Court

2    dismissed that action with prejudice on April 4th, 2008,

3    finding that that Tullises' claims against the defendants were

4    barred by the applicable statute of limitations.

5            Following this dismissal, the Tullises attempted to

6    resurrect the action with motions to vacate and motions to show

7    cause, and each of these attempts was unsuccessful.

8            On June 1st, 2009, the debtors commenced the Chapter

9    11 case, which is now before me.  The debtors were represented

10   in the Chapter 11 case by the law firm of Weil Gotshal &

11   Manges, which I'll refer to as Weil.  Two weeks after the

12   debtors commenced the Chapter 11 case, the Tullises filed a

13   complaint in the U.S. District Court for the Western District

14   of Washington.  The district court complaint replicates the

15   complaint filed in the Pierce County Superior Court, but with

16   the additional handwritten notes that read "continuance of this

17   case" and "This case is removed from Pierce County Superior

18   Court to federal court; June 5" -- "15, 2009."

19           While the debtors say they were never served with the

20   federal district court complaint, the Tullises did send a copy

21   to the clerk of the bankruptcy court here, and the clerk's

22   office filed it on the debtors' public docket at entry number

23   1977 on June 19, 2009.  That same day, the Washington State

24   Federal District Court entered an order remanding the federal

25   action back to the Pierce County Superior Court.

GENERAL MOTORS CORPORATION, ET AL.

Page 16

1       On September 16, 2009, I signed an order establishing

2    November 30, 2009 as the deadline, which is sometimes known as

3    a bar date, for filing claims against the debtors.  The bar

4    date order was served upon the Tullises as indicated of Exhibit

5    D of the GUC Trust motion.  Despite notice of the bar date, the

6    Tullises failed to file any proofs of claim in the Chapter 11

7    case.

8       Notwithstanding full knowledge of the Chapter 11 case,

9    as evidenced, among other things, by their sending the clerk of

10   the bankruptcy court the earlier federal district court

11   complaint, the Tullises commenced yet another action against

12   the debtors on July 16, 2010, once more in Washington State

13   court, but this time in Washington State's Kings -- King

14   County.

15      On July 30, 2010, the debtors' attorneys sent the

16   Tullises a letter advising the Tullises of the bankruptcy and

17   the requirements of the automatic stay, which prohibits the

18   commencement or continuation of actions against any debtor that

19   could have or were commenced prior to such debtors' filing of a

20   petition for bankruptcy relief.

21      On December 30, 2010, the Tullises filed a revised

22   complaint in the federal district court in Washington, adding

23   Weil -- and two Weil attorneys as individual defendants,

24   seeking a five-million-dollar fine and/or criminal sanctions

25   against the Weil defendants.  Though debtors and the Weil

09-50026-mg    Doc 11387    Filed 01/19/12    Entered 02/06/12 10:10:41    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 17 of 41

Page 17

1    defendants were not made aware of the revised complaint until

2    it was filed in the bankruptcy court's docket at GM docket

3    entry 10299.

4            On March 29, 2011, I entered an order confirming the

5    debtors' plan of reorganization.  That confirmation order and

6    the underlying plan both include what are known as exculpation

7    provisions providing that neither the debtors, the GUC Trust,

8    nor their respective officers or professionals, which obviously

9    includes both the Weil law firm and the Weil attorneys, "shall

10   have or incur any liability to any holder of a claim or equity

11   interest for any act or omission in connection with, related to

12   or arising out of the Chapter 11 cases."  See paragraph 52 of

13   the confirmation order and Section 12.6 of the plan.

14           In addition, the plan provides for an injunction

15   against interference with the implementation or consummation of

16   the plan.  See Section 10.7 of the plan.  Both the plan and my

17   confirmation order reserved to this bankruptcy Court, that's

18   me, exclusive jurisdiction to consider matters arising out of

19   or relating to these Chapter 11 cases.  See paragraph 52 of the

20   confirmation order and Sections 11.1 and 12.6 of the plan.

21           Now, turning to my conclusions of law and certain

22   mixed findings of fact and law:  the Tullises' actions -- and

23   please listen to me, Mr. Tullis -- are in direct violation of

24   the automatic stay, my bar date order, the plan and my

25   confirmation order.  I will address each violation in turn.

GENERAL MOTORS CORPORATION, ET AL.

Page 18

1        Section 362(a) of the Bankruptcy Code provides that

2    the filing of a Chapter 11 petition serves as an automatic

3    stay.  Mr. Tullis, a stay is an injunction applicable to the

4    commencement or continuation of an action against the debtor

5    that was or could have been commenced before the petition date.

6    That's Section 362(a)(1) of the Bankruptcy Code.  The

7    pending -- please don't interrupt me, Mr. Tullis.  I'll give

8    you a chance to speak after I have announced my ruling, okay?

9    The pending King County action initiated by the Tullises in

10   July of 2010 over a year after the bankruptcy case was filed

11   clearly, very clearly, violates the automatic stay.

12        The King County action arises out of an automobile

13   accident that occurred sometime around 2003 or 2004 and the

14   subsequent surgery that was performed in 2005; all long before

15   the commencement of the Chapter 11 case.  The claims, if any,

16   are pre-petition claims.  And asserting them in an action,

17   especially one brought after the filing date, violates the

18   automatic stay.  The Tullises clearly knew of the debtors'

19   Chapter cases as early as June of 2009 when the clerk of this

20   bankruptcy court received documents from the Tullises that were

21   filed as docket entry number 1977 in the GM docket.

22        In any case, the debtors promptly notified the

23   Tullises and the King County Court of GM's bankruptcy and the

24   applicability of the automatic stay.  Because the King County

25   action was commenced in violation of the automatic stay, any

GENERAL MOTORS CORPORATION, ET AL.

Page 19

1    and all proceedings in that court are void.  They have no

2    effect.  And that action much be dismissed.  See, for example,

3    E. Refractories Company Inc. v. 48 Insulations Inc.; 157 F.3d

4    169 at page 172, a decision of the Second Circuit Court of

5    Appeals in 1998.  And while I find that the Tullises had actual

6    notice of GM's bankruptcy before they blatantly violated the

7    automatic stay, the law is that violations of the automatic

8    stay are void even without notice.  See for example, in re

9    Heating Oil Partners LP; 422 Fed Appendix 15 at page 18, a

10    decision of the Second Circuit, 2011.

11            Notice is, however, relevant to the bar date and the

12    filing of proofs of claim.  While it's undisputable that the

13    Tullises had notice of the bankruptcy case, because they were

14    sending the bankruptcy court notices since 2009 making explicit

15    reference to the Chapter 11 case, I further find that the

16    Tullises knew of the deadline for filing proofs of claim in

17    these cases because the address on the debtors' bar date list

18    matches the return address on the documents that the Tullises

19    mailed to the bankruptcy court.  But with notice of the bar

20    date, the Tullises failed to file a proof of claim.

21            Having filed -- having failed to file a proof of claim

22    prior to the bar date, the Tullises are barred from asserting

23    any claims against the debtor.

24            MR. TULLIS:  Your Honor?

25            THE COURT:  Just a minute, please, Mr. Tullis.

GENERAL MOTORS CORPORATION, ET AL.

Page 20

1           I further find that the Tullises have violated the

2    debtors' plan of reorganization and my order confirming the

3    plan.  The plan explicitly, that means clearly, enjoins

4    claimants from taking any actions that interfere with the

5    implementation or consummation of the plan.  And under the plan

6    and the confirmation order, people cannot go after the debtor's

7    officers and professionals, either law firms or human beings

8    working for those law firms with respect to any acts or

9    commissions -- or omissions, excuse me, connected with the

10   Chapter 11 cases.

11          I'm not going to move on beyond my official ruling.

12   And Mr. Tullis, I'm saying this very softly.  And I'm not

13   screaming, but you have to understand how serious I am about

14   this, and how serious what you did is.  You have violated the

15   Bankruptcy Code's requirements over and over again.  You have

16   violated my injunction over and over again.  You are very lucky

17   that the debtors aren't asking for sanctions, which is

18   punishment.  They're not asking for damages, and I'm not

19   imposing that.  But I'm telling you in the clearest terms I can

20   that you got to stop.

21          Now, I am not imposing sanctions.  I'm not referring

22   you to criminal charges.  I'm not making you write a check or

23   threatening to have you jailed, but I am saying it's got to

24   come to a stop.  And your contention that they're doing

25   something illegal and that you can ignore the requirements of

Page 21

1    the Bankruptcy Code or my court orders is not in any way a

2    defense to what you've been doing.  If there is something

3    criminal, that's for the district attorneys or the U.S.

4    attorneys of the world to deal with, not you.  The police power

5    exception under the automatic stay does not apply to

6    individuals who think that they've been legally wronged in some

7    way.

8            The debtor is to settle an order in accordance with

9    what I just dictated.  Mr. Tullis, you're going to have a right

10   to appeal, but you will have only fourteen days to bring that

11   appeal.  The time for bringing that appeal will run from the

12   date of entry of the resulting order and not from the date of

13   this dictated decision.

14           Now, Mr. Tullis, I think several times you interrupted

15   me and you wanted to say something.  Now I'll let you speak.

16   Mr. Tullis, do you want to be heard?  Mr. Tullis?  Mr. --

17           MR. TULLIS:  Sir -- yes, Your Honor (indiscernible).

18           THE COURT:  Yes, sir, I am.  Do you want to be heard?

19           MR. TULLIS:  Well, now, I don't know.  I never knew

20   anything about an automatic stay.  But the rules or laws that I

21   know of here in the state of Washington states that I

22   (indiscernible) or find other means to (indiscernible), not any

23   criminal acts and when you committed a crime.  And when I sent

24   you a (indiscernible).  I don't want to do that.  I don't want

25   to see them do that.  And if they hit me with this automatic

GENERAL MOTORS CORPORATION, ET AL.

Page 22

1   stay and bring it back here, then I'll immediately go down to

2   the governor, who's also -- has been an attorney for years, and

3   we'll see about proceeding with the dismissal of their

4   (indiscernible) rights selling vehicles in the state of

5   Washington.

6           THE COURT:  Mr. Tullis, I can't let you continue

7   anymore.

8           MR. TULLIS:  All right.

9           THE COURT:  I've let you speak and speak without

10  interrupting, but I can't let you speak anymore.  I have ruled.

11          MR. TULLIS:  (indiscernible)

12          THE COURT:  I have ruled --

13          MR. TULLIS:  (indiscernible) --

14          THE COURT:  -- deeming your remarks to be a motion for

15  reargument.  Reargument is denied.  If you still think my

16  ruling is an error, your remedy is in the appellate courts,

17  starting with the United States District for the Southern

18  District of New York.  With all respect -- and I've had many,

19  many consumers who felt very saddened by what happened to them

20  with their vehicles, and I feel their pain.  I really do, but

21  nobody before today, Mr. Tullis, has argued with me after I

22  have ruled.  And they have all understood that if they think

23  that I got it wrong they've got to go to the appellate courts.

24  And again, with all respect and sympathy, sir, that's what I'm

25  telling you that you need to do.

GENERAL MOTORS CORPORATION, ET AL.

Page 23

1          Now, we need to go on to the next matter.  CourtCall:

2    Mr. Tullis can stay on the phone, or he can drop off as he

3    prefers, but I'm directing you to put him on mute.

4          UNIDENTIFIED SPEAKER:  Okay, Your Honor.

5          THE COURT:  Thank you.  All right.  Mr. Smolinsky,

6    next matter, please.

7          MR. SMOLINSKY:  Thank you, sir.  Ms. Greer --

8          MR. COBBLE:  (indiscernible)

9          MR. SMOLINSKY:  Before I get -- begin, Ms. Greer has

10   asked to be excused.

11         THE COURT:  Of course.

12         MR. SMOLINSKY:  The last matter on the agenda --

13         THE COURT:  Mr. Smolinsky, we're still on the record

14   even though Mr. Tullis can no longer speak since we're done

15   with him.  I do of course want the order settled upon him so

16   that he can be heard on the form of the order.  And I want you,

17   even though you might not be required by law to do it, to send

18   him by overnight mail a notice of entry of the resulting order

19   so it is entered, so he is on notice of when his time to appeal

20   starts to run.

21         MR. SMOLINSKY:  Of course, sir.  And if we may, while

22   we do not suppose that Your Honor would be comfortable

23   directing the clerk of any other court to do anything, we would

24   like to send a copy of the transcript of this hearing to the

25   court where the actions are pending.

09-50026-mg    Doc 11387    Filed 01/19/12    Entered 02/06/12 10:10:41    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 24 of 41

Page 24

1          THE COURT:  You may do so.

2          MR. SMOLINSKY:  Thank you, sir.

3          The last matter on the calendar is the debtors'

4     eighty-third omnibus objections to claim.  This is a claim

5     seeking to expunge welfare benefit claims of retired and former

6     salaried employees.  We are addressing today one claim filed by

7     Joseph Cobble, Jr., which is a claim for life insurance --

8          THE COURT:  Pause please, Mr. Smolinsky.

9          MR. SMOLINSKY:  Yes.

10         THE COURT:  Mr. Cobble, you are on the phone, and you

11    announced your presence a long time ago.  CourtCall:  I want

12    you to be sure that Mr. Cobble can speak and confirm that he is

13    still on the line, or, Mr. Cobble, you can do that yourself.

14         MR. COBBLE:  Yes, I'm still on the line.

15         THE COURT:  Thank you.  Continue then, please, Mr.

16    Smolinsky.

17         MR. SMOLINSKY:  Thank you, sir.  Mr. Cobble filed a

18    reply to that objection, which Your Honor should have.  And

19    we -- just in terms of context, Your Honor has dealt with

20    hundreds of employee claims in the past.  We have expunged

21    claims.  We've had hearings on disputed claims objections.  We

22    indicated to this Court in the past that there are certain

23    instances in which employees have asserted that they've

24    received letters or other correspondence that may alter the

25    landscape in terms of Your Honor's ruling; although, we

GENERAL MOTORS CORPORATION, ET AL.

Page 25

1    expressed at the time our view that it didn't alter the law

2    with respect to your prior rulings.

3         but I want to put this into context because we are now

4    moving from plain vanilla objections, where Your Honor has, I

5    believe, asked the employees, where we had hearings, did you

6    receive any other documents or do you anything else that you

7    want to put before the Court, and the answer was no.  These are

8    situations where often times there have been correspondence

9    that these employees are relying on.

10        We file -- we did file a fifteen-page reply.  And

11   while Your Honor may think that that's overkill in connection

12   with the one-page response that was filed by Mr. Cobble, we

13   wanted to make sure that Your Honor had a full view and

14   understanding of our position with respect to all of these

15   related types of claims.  And we're happy to answer any other

16   questions surrounding this issue because before we set forth on

17   having hearings with respect to this new round of claims we did

18   go back and do substantial amount of research and consider and

19   review all of the correspondence that have submitted by the

20   various employees.

21        So that's by way of background.  Mr. Cobble attaches

22   to his response a letter that was received by him through the

23   General Motors Retirement Center, which was actually a

24   organization that was created by MetLife, who was administering

25   various retirement plans for General Motors.  And this letter,

GENERAL MOTORS CORPORATION, ET AL.

Page 26

1    according to Mr. Cobble, sets out a promise that his

2    entitlement to life insurance would not change.  I do point

3    your attention to the language beneath that statement that says

4    that the coverage is not guaranteed; although, we don't believe

5    that that really has any impact as well.

6           We believe that these -- this letter does not create

7    any separate entitlement to the employee plans that were in

8    place and that were all subject to the company's ability to

9    modify, amend or terminate those plans.  And that's language

10   which we set forth in the objections as well as in the reply,

11   as well as in the -- in other documents that were submitted and

12   circulated to employees from time-to-time.  That includes the

13   employee handbook that was circulated as well as summary plan

14   descriptions, which were updated every five years and sent out

15   to employees and retirees.

16          So regardless of receiving this letter, they would

17   have been on notice periodically of the debtors' obligation --

18   the company's obligation or right to amend, modify or terminate

19   the plans at any time.

20          We cite in our papers the Sprague case, which is a

21   case directly on point because it involves some of these very

22   issues surrounding the GM plans.  And the Court in that case

23   sets out clearly that the reservation of rights to amend,

24   modify or terminate the plans at any time is conclusive without

25   a separate agreement or contract that would vest those rights.

Page 27

1    And for those reasons, Your Honor, we believe that this letter

2    that was actually sent out after Mr. Cobble retired does not

3    alter the plan or the ability of the debtors to amend or

4    terminate the plan.

5            As Your Honor knows that -- this plan was amended to

6    bring down all employees' life insurance benefits to 10,000

7    dollars.  And New GM, under the master sale and purchase

8    agreement, agreed to assume that liability so that employees

9    could get and retirees could get the 10,000 dollars in cash

10   upon their death.

11           THE COURT:  Okay.  I'll hear from you next, Mr.

12   Cobble.  Make your remarks as you see fit.  But when you do so,

13   I need you to be sure that you discuss the Sixth Circuit Court

14   of Appeals case and Sprague v. General Motors.  And Mr.

15   Smolinsky, tell your associates -- although I think you signed

16   the reply --

17           MR. SMOLINSKY:  The Table of Contents?

18           THE COURT:  -- that I'm supposed to have a table of

19   cases so I don't have to leaf through something to find

20   references to the Sprague case --

21           MR. SMOLINSKY:  Your Honor, I did realize --

22           THE COURT:  -- and a table of contents --

23           MR. SMOLINSKY:  -- that when I reviewed on preparation

24   for the hearing.  And I apologize.  It won't happen again.

25           THE COURT:  All right, thank you.  Mr. Cobble.

GENERAL MOTORS CORPORATION, ET AL.

Page 28

1           MR. COBBLE:  Yes.

2           THE COURT:  I'll hear your argument now.

3           MR. COBBLE:  Okay.  Now, the other attorney did state

4      (indiscernible).  And when you retire, you go through an exit

5      interview, and you go through all the benefits.  You go through

6      the -- all the pension, any insurance, if it will be extended.

7      So I wasn't aware that this would be a continuing life

8      insurance policy.  It did have some influence on the fact that

9      I did accept the retirement.  I know that -- and I guess I

10     relied on the document.  The document states life insurance

11     (indiscernible) reduced to the ultimate amount (indiscernible)

12     dollars.  The ultimate amount will remain in effect for the

13     rest of your life.

14          I'm not an attorney, but I can give you an engineer's

15     point of view.  If the definition of reduced is to bring to a

16     certain state or condition, and the definition of ultimate is

17     preclusive or final, this document that I received from the

18     retirement center does not contain any reservation or right to

19     modify, much less terminate.  It states it will remain in

20     effect for the rest of your life (indiscernible).  So it did

21     have some affect on my decision, and the extended insurance

22     certainly something that I relied on.

23          As far as I'm concerned, I think that these decisions

24     are irrevocable (indiscernible) age, health and cost of

25     replacing (indiscernible).  And in fact, it does just the

GENERAL MOTORS CORPORATION, ET AL.

Page 29

1    opposite.  It makes clear that the benefit is fully reduced and

2    will remain in effect for the rest of my life.  And I guess

3    (indiscernible).

4            THE COURT:  Okay.  Thank you.  Mr. Smolinsky, do you

5    wish to reply?

6            MR. COBBLE:  Thank you, sir.  Your Honor?

7            THE COURT:  Yes.  Thank you, sir.

8            MR. SMOLINSKY:  Your Honor, the language in these

9    retiree letters is unfortunate, I give you that, to the extent

10   that it led on any employees about what could or could not be

11   done with respect to the coverage.  I do note in this

12   particular letter that it says this is not a guarantee of the

13   coverage amount, and that's pretty clear on its face.

14           With respect to the reliance issue, I would note that

15   the Devlin case, which talks about promissory estoppel and

16   reliance, talk about the rel -- it not being incidental

17   reliance, but real reliance upon which the party acts or

18   changes their course.  And I guess the best example if you work

19   for the next ten years, we will grant you lifetime coverage.

20   In this case, the decision to retire was not based on this

21   letter.  This letter was sent out for information purposes, but

22   the benefits that were promised to him were consistent with the

23   plans that were in place, which all had this reservation of

24   rights language.

25           Mr. Cobble would have received a couple of years later

09-50026-mg    Doc 11387    Filed 01/19/12    Entered 02/06/12 10:10:41    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 30 of 41

Page 30

1    the new summary plan description, which would have had all of

2    the material rights to amend or terminate the benefits.  He

3    would have had in his possession, presumably, the employee

4    handbook and the last summary plan description that would have

5    this reservation of rights language.  So under the four-part

6    test that's set in Devlin, I don't believe that this letter

7    gives rise to the kind of reliance that the Devlin Court

8    considered.

9            THE COURT:  Okay.  Both sides -- have a seat, please,

10    Mr. Smolinsky.  Both sides sit in place for a couple minutes.

11        (Pause)

12            THE COURT:  All right.  Gentlemen, in this contested

13    matter in the jointly administered Chapter 11 case of Motors

14    Liquidation Company and its affiliates, the debtor, General

15    Motors Corporation or Old GM, moves to disallow and expunge Mr.

16    Cobble's claim.  For reasons that follow, the debtor's motion

17    must be granted, and Mr. Cobble's claim must be disallowed and

18    expunged.

19            Before I go into the legal reasons, though, and my

20    findings of fact, I do want to note something.  Perhaps it's

21    the obvious.  This matter is very different than the first one

22    on my calendar today.  Here, we do not have in any way, shape

23    or form an individual who has violated the requirements of the

24    Bankruptcy Code or has in any way acted improperly.  The issue

25    isn't about his wrongful conduct.  The issue ultimately is what

Page 31

1   exactly his contract was with GM, which gave him the claim to

2   the life insurance that he seeks now.  And this is

3   unfortunately one of the many cases where GM simply not having

4   the resources to honor its earlier contracts caused it to amend

5   those contracts.  And the issue is whether or not GM had the

6   right to change the contract in the way in which it did.

7          As I'll continue to point out, in this case, GM's

8   contract with Mr. Cobble gave it the right to change his life

9   insurance coverage.  And therefore, although I recognize the

10   hardship on Mr. Cobble and of course hundreds, if not

11   thousands, of other employees who had to face the same

12   situation, I'm required to comply with the law.

13          So with that, turning first to my findings of fact:

14   on June 1st, 2009, the debtors commenced their Chapter 11 case.

15          On September 16, 2009, I entered an order establishing

16   a deadline for the filing of proofs of claim.  And Mr. Cobble

17   timely, that is in time, submitted a proof of claim for what he

18   seeks.  His proof of claim asserts a claim for 112,049 against

19   Old Gm for "loss for life insurance, salary, retiree."

20   Basically, what he's saying is that he's entitled to the

21   112,049 that would be payable upon his death under the old

22   level of life insurance that he had at times prior to the

23   commencement of the Chapter 11 case.

24          The debtors filed what are called omnibus, covering

25   many people, claims objections to eliminate claims lacking in

1    legal support.  They objected to Mr. Cobble's claim.  Mr.

2    Cobble filed a response, and the debtors replied.

3         In his papers, Mr. Cobble explains that he was

4    employed by Old GM for thirty-two years before he retired in

5    2002.  He explains that his claim if for continuation of an

6    earned and accrued benefit, to wit the continuing lifetime

7    coverage and the future payment at the time of Mr. Cobble's

8    death, of continuing life insurance benefits in the amount

9    122,049 pursuant to the debtors' "life and disability program."

10   Mr. Cobble further asserts that his benefit was acknowledged by

11   the debtor in a writing dated April 18, 2002, which writing Mr.

12   Cobble attaches to his response.

13        I note by way of clarification that, as Mr. Cobble

14   pointed out in his argument today, and this fact is undisputed,

15   the April 8th, 2002 letter came to him a few weeks after he

16   retired rather than before he retired.  The letter has three

17   significant paragraphs.  I'll revise my remarks to say four,

18   although I think the list, although Mr. Cobble relies on it, is

19   not quite as important as he says.

20        Those four paragraphs read, and I'll quote them

21   verbatim, "As a retiree of General Motors with ten or more

22   years of participation in the life and disability benefits

23   program, you are eligible for continuing life insurance.  Our

24   insurance records, as of the date of this letter, show the

25   continuing life insurance has now fully reduced to the ultimate

GENERAL MOTORS CORPORATION, ET AL.

Page 33

1    amount of $122,049.00."

2          "This ultimate amount will remain in effect for the

3    rest of your life and is provided by General Motors at no cost

4    to you.  This is not a guarantee of the coverage amount.

5    Important:  you should keep this notice with your other

6    valuable papers."

7          On December 31st, 2011, the Motors Liquidation Company

8    GUC Trust, which was formed under the debtors' plan of

9    reorganization replied to Mr. Cobble's response.  In that

10   reply, the GUC Trust argues that Mr. Cobble's claim must be

11   disallowed because his life insurance benefits were unvested

12   welfare benefits that could be modified under the plan terms

13   governing such welfare benefits and that they were properly

14   modified under those terms.

15         Now, turning to my conclusions of law and certain

16   mixed findings of fact and law:  a proof of claim is prima

17   facie evidence of the validity and amount of the claim, and the

18   objector bears the initial burden of persuasion.  See, for

19   example, in re Oneida Limited; 400 BR. 384, at page 389, a

20   decision by Judge Gropper of this court.  The burden then

21   shifts to the claimant, in this case that's Mr. Cobble, if the

22   objector produces evidence equal in force to the prima facie

23   case, which, if believed, would refute at least one of the

24   allegations that's essential to the claim's legal sufficiency.

25         When the burden is shifted back to the claimant, the

GENERAL MOTORS CORPORATION, ET AL.

Page 34

1    claimant must then prove by a preponderance of the evidence

2    that under applicable law the claim should be allowed.  Here,

3    the objecting debtors have produced evidence at least equal in

4    force to the evidence provided by Mr. Cobble; thus, shifting

5    the burden back to Mr. Cobble.  And then, Mr. Cobble does not

6    satisfy his burden under the law.

7          First, I find that Mr. Cobble has not met his burden

8    to show that his life insurance have vested.  Rather, the

9    documents covering his life insurance reserved the right to

10   change its level.  In dealing with claims of Old GM retirees,

11   which were similar to Mr. Cobble's present claim, the Sixth

12   Circuit Court of Appeals in a case called Sprague v. General

13   Motors Corp.; 133 F.3rd 338, at page 400, explain that to "vest

14   benefits is to render them forever unalterable.  Because

15   vesting of welfare plan benefits is not required by law, an

16   employer's commitment to vest such benefits is not to be

17   inferred lightly.  The intent to vest must be found in the plan

18   documents and must be stated in clear and express language."

19         In their briefing, the debtors point to several

20   welfare plan summaries which include language explicitly

21   reserving the right to amend, modify, suspend or terminate

22   welfare benefits.  And I say by way of explanation that welfare

23   benefits are benefits that employers provide that include,

24   among other things, life insurance.  So life insurance was one

25   of the things that GM had reserved the right to change.  And

GENERAL MOTORS CORPORATION, ET AL.

Page 35

1    when GM reserved that right, that became part of Mr. Cobble's

2    contract with Old GM, if you will.  So GM did something that it

3    was authorized to do.

4         Now, that was the state of play when Mr. Cobble

5    retired.  And the letter dated April 8, 2002 doesn't change

6    that result.  Mr. Cobble skipped the key sentence when he read

7    parts of the letter, but didn't read all of it.  He skipped a

8    sentence that said this is not a guarantee of the coverage

9    amount.  But with or without that extra clarification, the

10   terms under which Mr. Cobble worked didn't change over the

11   years that he was a GM employee.

12        Now, thirty-two years is a lot of years to work for a

13   company, and everything in the record indicates that this was

14   faithful employment.  And I understand why Mr. Cobble is upset,

15   and I understand it both from what Mr. Cobble said and what any

16   number of employees said back in June and July of 2009 when

17   this case was first filed.  And I have to deal with these same

18   issues.  It doesn't please me to have to rule that people have

19   to accept a lesser level of life insurance or medical benefits

20   that are subject to similar considerations.  But the fact is

21   that there were limited resources to take care of GM retirees.

22        The letter of April 8, which was sent to him after he

23   retired, explicitly stated it wasn't a guarantee of the

24   coverage amount.  In fact, it also told him of a reduction

25   in -- to his ultimate amount of continuing life insurance

1    coverage.  The fact that Old GM was able to reduce the ultimate

2    amount of his coverage at this time underscores a fundamental

3    point; that Old GM always had the right to modify the benefits.

4           While it's probably obvious, I make a few other

5    observations to provide greater clarity and for the avoidance

6    of doubt.  The letter of April 8 didn't create a new contract

7    between the debtors and Mr. Cobble.  He had already retired.

8    It can't reasonable interpreted as an offer to which Mr. Cobble

9    could accept, nor is there any evidence in that letter that it

10   includes language reasonably susceptible to interpretation as a

11   promise.  There was no evidence that Old GM promised Mr. Cobble

12   certain life insurance benefits to induce his retirement or

13   other action or inaction by Mr. Cobble.  See, for instance,

14   Devlin v. Empire Blue Cross and Blue Shield; 274 F.3d 76.

15          For those reasons, I am compelled to disallow Mr.

16   Cobble's claim, and I am authorizing and directing the debtor

17   to settle an order consistent with this decision.  The time to

18   appeal my decision will run from the date of entry of the order

19   rather than the date I'm dictating this.  And once more, Mr.

20   Smolinsky, I want you to serve notice of entry on the resulting

21   order in addition to the notice of settlement by an overnight

22   mail mechanism so that Mr. Cobble knows when his time to appeal

23   start to run.

24          Mr. Cobble, the time to appeal a bankruptcy court

25   order is quite short.  It's only fourteen days from the date of

1   entry of the order.  So if you think about it and decide you do

2   want to appeal, I want you to be aware of that short period of

3   time.  Once more, I underscore in connection with this decision

4   that unlike the first matter on the calendar, Mr. Cobble did

5   nothing wrong.  But here, I am compelled to act in accordance

6   with the law.  So while I'm not happy about having to rule this

7   way, the claim is disallowed.

8        Okay.  Mr. Cobble, I sense that you're an engineer and

9   not a lawyer.  But not by way of reargument, because I have

10  ruled, I will answer any questions you might have if you have

11  any desire for a clarification.

12       MR. COBBLE:  I just have one further question, and

13  that's on a statement that this is not a guarantee of coverage

14  amount.  And in my point of view, I guess, guarantee in

15  coverage, I would say that is an expression of a future

16  happening.  This is a perspective and not a statement of fact,

17  and the rest of body of the letter, which states ultimately

18  reduced and the rest of your life to mean that it's just a

19  statement of fact.  But I understand your points of view, and I

20  certainly appreciate your time going through this.

21       THE COURT:  Very well.  Thank you.  And of course, I

22  appreciate your courtesy, sir.

23       All right.  With that, we're adjourned.  Everybody

24  have a good day.

25       MR. COBBLE:  Okay.

09-50026-mg    Doc 11387    Filed 01/19/12    Entered 02/06/12 10:10:41    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 38 of 41

Page 38

1           MR. SMOLINSKY:  Thank you, sir.

2           MR. COBBLE:  Thanks for your time, sir.

3      (Whereupon these proceedings were concluded at 11:02 AM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                        **I N D E X**

3

4                        RULINGS

5                                              Page      Line

6   Motion Requesting Enforcement of Court Orders  8        12

7   Setting Deadlines to File Proofs of Claim

8   Granted as Modified

9

10  Motion Filed by Ms. Woody Seeking Sanctions    9        3

11  Denied

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 40

1

2   Motion of Post-Effective Date Debtors and      14      23

3   Motors Liquidation Company GUC Trust for

4   Entry of Order Pursuant to 11 U.S.C.

5   Sections 105(A) and 1142(B) and Fed R.

6   Bankr. P. 7012(B) and 9014(C)(I) Directing

7   The Tullises to Dismiss the Debtors and

8   Their Attorneys from Pending Action with

9   Prejudice; and (II) Enforcing Prior Orders

10  Of this Court by Enjoining the Tullises from

11  Further Action Against the Debtors,

12  Post-Effective Date Debtors, Motors

13  Liquidation Company GUC Trust, and Their

14  Officers and Professionals

15  Granted

16

17  Mr. Tullis' Oral Motion for Reargument is      22      15

18  Denied

19

20  Debtors' Eighty-Third Omnibus Objection to      30      17

21  Claims (Welfare Benefits Claims of Retired

22  And Former Salaried and Executive Employees)

23  - Only Cobble Claim Granted

24

25

Page 41

1

2                          C E R T I F I C A T I O N

3

4      I, Aliza Chodoff, certify that the foregoing transcript is a

5      true and accurate record of the proceedings.

6

7

8

9          Aliza          Digitally signed by Aliza Chodoff
                           DN: cn=Aliza Chodoff, o, ou,
           Chodoff         email=digital@veritext.com,
                           c=US
10                         Date: 2012.01.19 11:17:50 -05'00'

11     ALIZA CHODOFF

12     AAERT Certified Electronic Transcriber CET**D-634

13

14     Veritext

15     200 Old Country Road

16     Suite 580

17     Mineola, NY 11501

18

19     Date:  January 19, 2012

20

21

22

23

24

25