**HEARING DATE AND TIME: March 1, 2012 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE: February 23, 2012 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                          :
In re                                     :        **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.*, :        **09-50026 (REG)**
       **f/k/a General Motors Corp.,** *et al.* :
                                          :
                  **Debtors.**            :        **(Jointly Administered)**
                                          :
---------------------------------------------------------------x

**NOTICE OF MOTION OF MOTORS LIQUIDATION**
**COMPANY GUC TRUST TO SUPPLEMENT AMENDED**
**ORDER PURSUANT TO 11 U.S.C. § 105(a) AND GENERAL ORDER**
**M-390 AUTHORIZING IMPLEMENTATION OF ALTERNATIVE**
**DISPUTE PROCEDURES, INCLUDING MANDATORY MEDIATION**

PLEASE TAKE NOTICE that upon the annexed Motion, dated February 13,

2012, of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to

Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors

(collectively, the "**Debtors**"), for an order supplementing the Amended Order Pursuant to

11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative

Dispute Procedures, Including Mandatory Mediation, dated October 25, 2010 (ECF No. 7558)

(the "**Amended ADR Order**"), by approving, pursuant to 11 U.S.C. § 105(a) and General Order

M-390, the order annexed to the Motion as **Exhibit "1"** (the "**Second Amended ADR Order**"),

all as more fully described in the Motion, a hearing will be held before the Honorable Robert E.

Gerber, United States Bankruptcy Judge (the "**Bankruptcy Court**"), in Room 621 of the United

States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York,

New York 10004, on **March 1, 2012, at 9:45 a.m. (Eastern Time)**, or as soon thereafter as

counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in text-searchable portable

document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with

the customary practices of the Bankruptcy Court and General Order M-399, to the extent

practicable, and served in accordance with General Order M-399, and on (i) Weil, Gotshal &

Manges LLP, attorneys for the GUC Trust, 767 Fifth Avenue, New York, New York 10153

(Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the

Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370,

Birmingham, Michigan  48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400

Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv)

Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the

Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi,

Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room

2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys

for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019

(Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis &

Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the

Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt,

Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86

Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and

Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of

unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York,

New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas

Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C.

Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation,

attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos

personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L.

Esserman, Esq. and Robert T. Brousseau, Esq.), (xii) Gibson, Dunn, Crutcher LLP, attorneys for

Wilmington Trust Company as GUC Trust Administrator and for Wilmington Trust Company as

Avoidance Action Trust Administrator, 200 Park Avenue, 47th Floor, New York, New York

10166 (Attn: Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust Monitor and as the

Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree Street, Suite 500,

Atlanta, Georgia  30309 (Attn: Anna Phillips); (xiv) Crowell & Moring LLP, attorneys for the

Revitalizing Auto Communities Environmental Response Trust, 590 Madison Avenue, 19th

Floor, New York, New York 10022-2524 (Attn:  Michael V. Blumenthal, Esq.); and (xv) Kirk P.

Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard, Austin, Texas

78703, so as to be received no later than **February 23, 2012 at 4:00 p.m. (Eastern Time)** (the

"**Objection Deadline**").

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and

served with respect to the Motion, the GUC Trust may, on or after the Objection Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Motion, which may be entered with no further notice or opportunity to be heard offered to

any party.

Dated:  New York, New York
  February 13, 2012

        /s/ Joseph H. Smolinsky
        Harvey R. Miller
        Stephen Karotkin
        Joseph H. Smolinsky

        WEIL, GOTSHAL & MANGES LLP
        767 Fifth Avenue
        New York, New York 10153
        Telephone: (212) 310-8000
        Facsimile: (212) 310-8007

        Attorneys for Motors Liquidation
        Company GUC Trust

HEARING DATE AND TIME: March 1, 2012 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: February 23, 2012 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------------x
                                           :
In re                                      :      Chapter 11 Case No.
                                           :
MOTORS LIQUIDATION COMPANY, et al.,        :      09-50026 (REG)
        f/k/a General Motors Corp., et al. :
                                           :
                            Debtors.       :      (Jointly Administered)
                                           :
-------------------------------------------------------------x
```

### MOTORS LIQUIDATION COMPANY GUC TRUST'S MOTION TO SUPPLEMENT AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a) AND GENERAL ORDER M-390 AUTHORIZING IMPLEMENTATION OF ALTERNATIVE DISPUTE PROCEDURES, INCLUDING MANDATORY MEDIATION

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor

to Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors

(collectively, the "**Debtors**"), respectfully represent:

### Relief Requested

1.      The GUC Trust respectfully requests that the Court supplement the

Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing

Implementation of Alternative Dispute Procedures, Including Mandatory Mediation, dated

October 25, 2010 (ECF No. 7558) (the "**Amended ADR Order**")[1] by approving, pursuant to

11 U.S.C. § 105(a) and General Order M-390, the order annexed hereto as **Exhibit "1"**

(the "**Second Amended ADR Order**").  The proposed Second Amended ADR Order would

supplement the Amended ADR Order and the alterative dispute resolution procedures annexed

there as **Exhibit "A"** (the "**ADR Procedures**") by including the following as additional covered

claims:  (i) environmental claims that constitute prepetition unsecured claims (including claims

for damages arising from the rejection of executory contracts that relate primarily to

environmental matters and claims asserted by state and local governments ("**Environmental

Claims**"); (ii) patent claims ("**Patent Claims**"); and (iii) claims that assert liquidated amounts

between $100,000 and $500,000 ("**Lower Tier Claims**," and together with the Environmental

Claims and Patent Claims, the "**Proposed Additional Designated Claims**").[2]

       2.     For the Court's convenience, a blackline version marked to show changes

from the Amended ADR Order is annexed hereto as **Exhibit "2."**

## Jurisdiction

       3.     This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Basis for Relief Requested

       4.     On February 23, 2010, this Court entered the Order Pursuant to 11 U.S.C.

§ 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion of Debtors for Entry of Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation, dated January 11, 2010 (ECF No. 4780) and the Exhibit "A" attached thereto, entitled "Alternative Dispute Resolution Procedures."

[2] The proposed Second Amended ADR Order and ADR Procedures have also been revised to reflect the fact that the Debtors' Second Amended Joint Chapter 11 Plan (the "**Plan**") was confirmed and that the GUC Trust is now the party in interest in the ADR Procedures.

Procedures, Including Mandatory Mediation (ECF No. 5037) (the "**Original ADR Order**").

The Original ADR Order approved and implemented the ADR Procedures and applied the ADR

Procedures to certain categories of claims.[3]  The Original ADR Order specifically excluded the

following types of Excluded Claims:  (i) Environmental Claims; (ii) patent infringement claims;

and (iii) claims asserted in liquidated amounts of $500,000 or less.  (*See id.* at I.B.)

      5.      On October 25, 2010, this Court entered the Amended ADR Order.  The

Amended ADR Order included minor revisions to the ADR Procedures such as adding Chicago,

Illinois as a mediation location in addition to the four original mediation locations across the

United States (New York, New York; Detroit, Michigan; Dallas, Texas; and San Francisco,

California) and making certain modifications to the original Schedule of Mediators.  (*See* Am.

ADR Order (ECF No. 7558).)

      6.      Over the last two years, the ADR Procedures have facilitated the efficient

resolution of hundreds of unliquidated and/or litigation claims filed against the Debtors, while

safeguarding the procedural rights of the holders of these claims.  Indeed, the Offer Exchange

Procedures and mediations have caused billions of dollars of unliquidated and/or litigation

claims to be reduced and fixed as allowed general unsecured nonpriority claims, to the benefit of

all creditors and the estates in these chapter 11 cases.

---

[3] Under the Original ADR Order and ADR Procedures, Designated Claims included the following types of claims: (i) personal injury claims; (ii) wrongful death claims; (iii) tort claims; (iv) product liability claims; (v) claims for damages arising from the rejection of an executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code (excluding claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters); (vi) indemnity claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions and excluding indemnity claims relating to asbestos liability); (vii) lemon law claims, to the extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended; (viii) warranty claims, to the extent applicable under section 6.15 of the MPA; and (ix) class action claims.  (*See* Original ADR Order, Exhibit A (ADR Procedures) at I.A. and I.B (ECF No. 5037).)

7.      As the mediation program progresses, the GUC Trust has determined that the Proposed Additional Designated Claims would benefit from inclusion as Designated Claims under the ADR Procedures.  The inclusion of the Proposed Additional Designated Claims under the ADR Procedures would result in the efficient resolution of numerous claims that otherwise would be excluded under the current ADR Procedures.

8.      Accordingly, the GUC Trust respectfully requests that the Court enter the Second Amended ADR Order.

**I.      <u>The Proposed Additional Designated Claims</u>**

9.      The ADR Procedures for the Proposed Additional Designated Claims would be substantially the same as those already in place.  However, a few modifications have been made to maximize efficiencies.  For example, the proposed Second Amended ADR Order limits the mediation locations and modifies slightly the Offer Exchange Procedures for Environmental and Patent Claims.  In addition, the proposed Second Amended ADR Order implements separate procedures for Lower Tier Claims, which procedures serve to benefit the interests of the Debtors' estates as well as holders of such claims.

10.      There are a number of reasons why the GUC Trust is now seeking to expand the ADR Procedures to claims that were previously excluded, as more fully set forth below.

*a.  Environmental Claims*

11.      Initially, the Debtors excluded the Environmental Claims from the ADR Procedures to allow the Debtors to move forward on a minimally contested basis on the bulk of the unliquidated/litigation claims.  A number of parties had objected to the use of the ADR Procedures for Environmental Claims.  Generally, the following points were raised in objections

to the inclusion of the Environmental Claims as Designated Claims: (i) the Environmental

Claims were not ripe for determination and could not be resolved until claimants were able to

conduct additional testing and take discovery to determine the Debtors' liability and the extent

and amounts of the claims; (ii) the Environmental Claims are factually and legally complex and

interrelated to other claims at a particular site that should be addressed together; (iii) the

proposed panel of mediators at each mediation location did not appear to have the requisite

environmental expertise, as no panel member was uniquely designated by the Debtors to handle

environmental claims; (iv) the Debtors should be required to pay the costs of mediation; and (v)

the ADR Procedures do not provide a mechanism for assuring funds will be available for the

Environmental Claims and no reserve was established for "off-site" contamination.

      12.    These objections either have been addressed or are no longer relevant.

The Environmental Claims are now ripe for determination as environmental claimants have had

more than two-and-a-half years since the filing of the bankruptcy to fully evaluate and finalize

the extent and amount of their claims and the GUC Trust's liability. Moreover, since this Court

entered the Original ADR Order, the Debtors and the GUC Trust have had a significant amount

of success in resolving the majority of the Environmental Claims without mediation. Currently,

only a handful of the Environmental Claims remain unresolved, and applying the ADR

Procedures to those claims, many of which concern the same property located in New York,

would allow the GUC Trust the opportunity to efficiently resolve related claims within a

reasonable time frame, under consistent procedures. Further, under the Plan, appropriate

reserves have been made for all such claims.

      13.    Importantly, the proposed Second Amended ADR Order and ADR

Procedures now provide that the mediation of all Environmental Claims will occur in New York,

New York, before a mediator with the requisite environmental expertise.  (*See* Second Am. ADR

Order, Ex. A (ADR Procedures) at II.B.2.(a). (Ex. 1).)  Peter H. Woodin is currently a member of

the New York mediation panel, and he has extensive experience in the environmental/regulatory

arena.  He served as Expert Consultant and Reporter to the Presidential Commission on

Catastrophic Nuclear Accidents, where he co-drafted the Commission's Final Report to

Congress.  Eugene I. Farber, also a current member of the New York mediation panel, has

mediated cases involving environmental claims for more than 25 years, including several multi-

million dollar disputes involving federal and state agencies.

14.      The ADR Procedures continue to provide that, except for mediations of

Lower Tier Claims, the mediator's fees and the costs of any mediation for a Designated Claim

shall be shared equally by the GUC Trust and the Designated Claimant, subject to the Sharing

Cap (if applicable).  (*See id.* at II.B.3.(b). (Ex. 1).)  The GUC Trust believes that this provision is

reasonable and results overall in more active participation by claimants.

15.      Accordingly, and in light of the foregoing, the application of the ADR

Procedures to the Environmental Claims would be a fair, expedient, and efficient manner of

resolving those few Environmental Claims that remain unresolved.

b.  *Patent  Claims*

16.      The Patent Claims will also benefit from efficient resolution under the

ADR Procedures.  The Patent Claims were initially excluded from the ADR Procedures because

they constituted only a handful of claims and because the Debtors were not sure of the level of

intellectual property expertise on the mediation panel in each location.  Since this Court's entry

of the Original ADR Order and ADR Procedures, the GUC Trust has confirmed that the current

mediation panel in Dallas, Texas has the requisite level of patent expertise.  The mediation panel

in Dallas, Texas includes Judge Harlan A. Martin, who has successfully resolved several

intellectual property matters, including disputes involving patents, Walter E. "Rip" Parker, who

has extensive background in dealing with patent disputes and has proven to have a vast

knowledge of the subject matter, and Jerry Grissom, whose expertise includes more than 15

years of experience resolving matters involving intellectual property and patent disputes.  The

GUC Trust has therefore included in the ADR Procedures that all Patent Claims shall be

mediated in Dallas, Texas.  (*See id.* at II.B.2.(a). (Ex. 1).)  Of course, to the extent that traveling

to Dallas would constitute a hardship for the holder of a Patent Claim, the GUC Trust would

consider having one of the aforementioned mediators travel to a more convenient location.

(*See id.* at II.B.2.(c). (Ex. 1).)  Accordingly, the GUC Trust respectfully requests that the Patent

Claims be included as Designated Claims under the ADR Procedures and that, in the absence of

hardship, the mediations involving such claims occur in Dallas, Texas.

       17.    The proposed Second Amended ADR Order and ADR Procedures modify

the Offer Exchange Procedures with respect to any Counteroffer made by the holder of an

Environmental or Patent claim.  The proposed Second Amended ADR Order and ADR

Procedures provide that a Counteroffer made by a Designated Claimant holding a Environmental

or Patent Claim shall, among other things, state the dollar amount of the offer with an

explanation of the calculation and basis for the offer (the "**Proposed Claim Amount**

**Explanation**"), which Proposed Claim Amount Explanation shall include, without limitation, all

available documentation and any such other information evidencing and/or substantiating the

actual calculation of the Proposed Claim Amount.  (*See id.* II.A.3. (Ex. 1).)  This modification is

respectfully requested in order to allow the GUC Trust to more expeditiously and efficiently

evaluate the Environmental and Patent Claims, and the requested modification is made in light of

the fact that the Environmental and Patent Claims more readily lend themselves to calculation of the Proposed Claim Amount than product liability or personal injury claims.

       *c.  Lower Tier Claims*

      18.    The GUC Trust further respectfully requests that the ADR Procedures be modified to include as Designated Claims the Lower Tier Claims.  The Debtors and the GUC Trust have had enormous success in resolving billions of dollars of unliquidated and/or litigation claims under the ADR Procedures, and the GUC Trust has now determined that the remaining Lower Tier Claims will also benefit from efficient resolution within the framework of the ADR Procedures.

      19.    The proposed Second Amended ADR Order and ADR Procedures provide for certain modifications with respect to the location of the mediation, the choice of mediator, and the mediator's fees.  The proposed Second Amended ADR Order and ADR Procedures provide that mediations of Lower Tier Claims shall be conducted at a location designated by the GUC Trust, which shall be within 200 miles of (i) the address listed on the Designated Claimant's most recently filed proof of claim, or (ii) the office of any counsel of record in these cases for the Designated Claimant holding a Lower Tier Claim, unless the parties agree to a different location.  (*See id.* II.B.2.(b). (Ex. 1).)  The GUC Trust shall be permitted to select the mediator from any of the approved mediator lists, and the mediator's fees shall be borne exclusively by the GUC Trust.[4]  (*See id.* at II.B.3.(b). (Ex. 1).)

      20.    These modifications for Lower Tier Claims are respectfully requested in consideration of the lower amounts asserted in Lower Tier Claims and the associated likelihood

---

[4] As with all mediations, a Designated Claimant holding a Lower Tier Claim would be permitted to file a Hardship Motion if such claimant could demonstrate that traveling to the mediation location presents a "substantial hardship." (*See id.* II.B.2.(c). (Ex. 1).)

that claimants holding Lower Tier Claims would have difficulty traveling distances greater than 200 miles and/or sharing in the payment of the mediator's fees.  In addition, allowing the GUC Trust the choice of mediator without limitation based on geographical location would allow the GUC Trust to choose mediators who are familiar with the ADR Procedures and are educated concerning the Debtors' bankruptcy proceedings, which in turn would increase the likelihood of successful mediation and reduce costs to the benefit of the Debtors' estates and all creditors. Indeed, an experienced and educated mediator is paramount to conducting a successful mediation, and a mediator who has resolved numerous other mediations under the ADR Procedures and who has knowledge of and familiarity with the nuances of the Debtors' bankruptcy process would be most likely to conduct an effective and efficient mediation.

21.    The Debtors' goal in advocating that this Court establish the modified ADR Procedures was to conduct an efficient mediation process without unjustifiably inconveniencing the affected claimant.  In fact, it is anticipated that with these modifications, the GUC Trust can handle numerous Lower Tier Claims in the same day at the same location, thus making the ADR Procedures worthwhile for lower dollar claims.  The GUC Trust believes, in the exercise of its business judgment, that entry of the Second Amended ADR Order and ADR Procedures implementing these requested modifications will further that goal.

## Conclusion

22.    No previous request for the relief sought herein has been made by the Debtors or the GUC Trust to this or any other Court, except in connection with the Original ADR Order and the Amended ADR Order.

WHEREFORE the GUC Trust respectfully requests that the Court enter the

Second Amended ADR Order attached hereto as **Exhibit "1"** and grant such other and further

relief as the Court deems just and proper.

Dated:  New York, New York
      February 13, 2012

                   /s/ Joseph H. Smolinsky
                  Harvey R. Miller
                  Stephen Karotkin
                  Joseph H. Smolinsky

                  WEIL, GOTSHAL & MANGES LLP
                  767 Fifth Avenue
                  New York, New York 10153
                  Telephone: (212) 310-8000
                  Facsimile: (212) 310-8007

                  Attorneys for the Motors Liquidation
                  Company GUC Trust

## EXHIBIT 1
**Second Amended ADR Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                    :

In re                               :        **Chapter 11 Case No.**
                                      :

**MOTORS LIQUIDATION COMPANY,** *et al.,*  :        **09-50026 (REG)**
     **f/k/a General Motors Corp.,** *et al.*  :
                                      :

                  **Debtors.**     :        **(Jointly Administered)**
                                      :
------------------------------------------------------------------x

### SECOND AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a) AND GENERAL ORDER M-390 AUTHORIZING IMPLEMENTATION OF ALTERNATIVE DISPUTE PROCEDURES, INCLUDING MANDATORY MEDIATION

Upon the Motion, dated February 13, 2012 (the "**Motion**"),[1] of the Motors

Liquidation Company GUC Trust (the "**GUC Trust**"), for an order, pursuant to section 105(a) of

title 11 of the United States Code and General Order M-390, to supplement the Amended ADR

Order (the "**Second Amended ADR Order**"); and the Court having determined that the relief

sought in the Motion is in the best interests of the GUC Trust, the Debtors' estates, creditors, and

all parties in interest and that the legal and factual bases set for in the Motion establish just cause

for the relief granted herein; and after due and proper notice of the Motion having been provided,

and it appearing that no other or further notice need be provided; and after consideration of any

response pleadings filed; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Amended ADR Order is supplemented as provided herein;

and it is further

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion and the modified ADR Procedures set forth in Exhibit "A" attached hereto.

ORDERED that the modified ADR Procedures set forth in Exhibit "A" attached hereto are approved as provided herein with respect to claims that assert liquidated amounts of $100,000 or more based on (a) personal injury claims; (b) wrongful death claims; (c) tort claims; (d) product liability claims; (e) claims for damages arising from the rejection of an executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code; (f) environmental claims that constitute prepetition unsecured claims (including claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters) and claims asserted by state and tribal governments; (g) patent claims; (h) indemnity claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions and excluding indemnity claims relating to asbestos liability); (i) lemon law claims, to the extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended (the "**MPA**"); (j) warranty claims, to the extent applicable under section 6.15 of the MPA; and (k) class action claims (collectively, the "**Designated Claims**"); and it is further

ORDERED that, notwithstanding anything to the contrary in the Motion, the ADR Procedures shall not apply to claims filed by the United States of America or its agencies; *provided*, *however*, nothing shall preclude the GUC Trust from seeking in the future by separate motion alternative dispute resolutions in connection with any such claims; and it is further

ORDERED that, annexed to this Second Amended ADR Order as **Exhibit "B"** is the schedule of mediators (the "**Schedule of Mediators**"); and it is further

ORDERED that, the GUC Trust from time to time may further modify the Schedule of Mediators by filing a revised Schedule of Mediators with this Court; and it is further

ORDERED that, the GUC Trust is authorized to waive the obligation to share costs of non-binding mediation in their sole discretion to the extent the Designated Claimant establishes, to the satisfaction of the GUC Trust, that sharing of such expenses would constitute a substantial hardship upon such Designated Claimant; and it is further

ORDERED that, within **three (3) business days** of entry of this Order, the GUC Trust shall cause to be mailed a copy of this Order to all known holders of Proposed Additional Designated Claims; and it is further

ORDERED that the GUC Trust is authorized to take any and all steps that are necessary or appropriate to implement the ADR Procedures with respect to the Designated Claims, including, without limitation, by implementing any arbitration awards or settlements with respect to Designated Claims achieved under the terms of the ADR Procedures; *provided, howeve*r, that nothing in this Order or the ADR Procedures shall obligate the GUC Trust to settle or pursue settlement of any particular Designated Claim; *further provided* that any such settlements may be pursued and agreed upon as the GUC Trust believes are reasonable and appropriate in its sole discretion, subject to the terms and conditions set forth in the ADR Procedures; and it is further

ORDERED that, if litigation of an Unresolved Designated Claim in a forum other than this Court is required for any of the reasons forth in Section II.E.3 of the ADR Procedures (as determined by this Court), then the Stay shall be modified subject to the terms and conditions set forth in Section II.E.4 of the ADR Procedures.  Any such modification of the Stay shall be solely to the extent necessary to permit the liquidation of the amount of such Unresolved Designated Claim in the appropriate forum.  If the GUC Trust fails to file a Notice of Stay Modification or a Stay Motion for any reason with respect to an Unresolved Designated Claim,

as set forth in Section II.E.4 of the ADR Procedures, the Stay shall remain in effect with respect to such Unresolved Designated Claim, and the Designated Claimant may seek a determination of this Court regarding whether the Stay must be modified to permit litigation in a non-bankruptcy forum as set forth in Section II.E.3 of the ADR Procedures; and it is further

ORDERED that nothing contained in this Second Amended ADR Order shall be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with the Bankruptcy Code and applicable law; and it is further

ORDERED that nothing in the ADR Procedures, including the ADR Injunction set forth therein, shall preclude the holder of a Designated Claim from commencing or continuing an action against a non-debtor party; and it is further

ORDERED that Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the ADR Procedures; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Second Amended ADR Order and the ADR Procedures.

Dated: New York, New York
_____ __, 2012

_____
United States Bankruptcy Judge

## **Exhibit A**

## **The ADR Procedures**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                               :

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
|     f/k/a **General Motors Corp.**, *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

       The alternative dispute resolution procedures (the "**ADR Procedures**") adopted upon the motion of the Motors Liquidation Company GUC Trust (the "**GUC Trust**") in the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors (collectively, the "**Debtors**"), are set forth below:

## I.     CLAIMS SUBJECT TO THE ADR PROCEDURES AND ADR INJUNCTION

### A.    Claims Subject to the ADR Procedures

       1.     The claims subject to the ADR Procedures (collectively, the "**Designated Claims**") include any and all claims (other than an Excluded Claim as defined below) designated by the GUC Trust under the notice procedures set forth below that assert or involve claims based on one or more of the following theories of recovery, whether or not litigation previously has been commenced by the claimant:  (a) personal injury claims; (b) wrongful death claims; (c) tort claims; (d) product liability claims; (e) claims for damages arising from the rejection of an executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code; (f) environmental claims that constitute prepetition unsecured claims (including claims for damages arising from the rejection of executory contracts that relate primarily to environmental

matters) and claims asserted by state and local governments ("**Environmental Claims**"); (g)

patent claims ("**Patent Claims**"); (h) indemnity claims (excluding tax indemnity claims relating

to leveraged fixed equipment lease transactions and excluding indemnity claims relating to

asbestos liability); (i) lemon law claims, to the extent applicable under section 6.15 of the Master

Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1,

2009, and as amended (the "**MPA**"); (j) warranty claims, to the extent applicable under section

6.15 of the MPA; and (k) class action claims ("**Class Claims**").  Designated Claims that assert

amounts between $100,000 and $500,000 shall be known as "**Lower Tier Claims**."  The GUC

Trust may identify as a Designated Claim any proof of claim asserted in these cases, other than

Excluded Claims as defined in Section I.B below, if the GUC Trust believes, in its business

judgment and sole discretion, that the ADR Procedures would promote the resolution of such

claim and serve the intended objectives of the ADR Procedures.

      2.      The holders of the Designated Claims are referred to herein as the

"**Designated Claimants**."

    **B.**    **Excluded Claims**

      The GUC Trust shall not identify as a Designated Claim any proof of claim within

any of the following categories (collectively, the "**Excluded Claims**"):  (a) claims for which the

automatic stay under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**")

was modified by prior order of this Court (the "**Bankruptcy Court**") to allow the litigation of

the claim to proceed in another forum; (b) claims asserted in liquidated amounts of less than

$100,000; (c) asbestos-related claims (including indemnity claims relating to asbestos liability);

(d) tax claims (excluding tax indemnity claims relating to leveraged fixed equipment lease

transactions); and (e) claims subject to a separate order of the Bankruptcy Court providing for

arbitration or mediation.  Notwithstanding the foregoing, any of the Excluded Claims, any

disputed postpetition administrative expenses, and any claims or counterclaims asserted by the

GUC Trust may be submitted to the ADR Procedures by agreement of the GUC Trust and the

applicable claimant or by further order of the Bankruptcy Court.

**C.**    **The ADR Injunction**

Upon service of the ADR Notice (as defined below) on a Designated Claimant

under Section II.A.1 below, such Designated Claimant (and any other person or entity asserting

an interest in the relevant Designated Claim) shall be enjoined from commencing or continuing

any action or proceeding in any manner or any place, including in the Bankruptcy Court, seeking

to establish, liquidate, collect on, or otherwise enforce the Designated Claim(s) identified in the

ADR Notice (collectively, the "**ADR Injunction**") other than (1) through these ADR

Procedures, or (2) pursuant to the Debtors' Second Amended Joint Chapter 11 Plan (the "**Plan**").

The ADR Injunction shall expire with respect to a Designated Claim only when that Designated

Claim has been resolved or after the ADR Procedures have been completed as to that Designated

Claim.  Except as expressly set forth herein or in a separate order of the Bankruptcy Court, the

expiration of the ADR Injunction shall not extinguish, limit, or modify the automatic stay

established by section 362 of the Bankruptcy Code or upon confirmation of the Plan (the "**Plan**

**Injunction**"), and the automatic stay and the Plan Injunction shall remain in place to the extent

then in effect.

**II.**    **THE ADR PROCEDURES**

**A.**    **Offer Exchange Procedures**

The first stage of the ADR Procedures will be the following offer exchange

procedures, requiring the parties to exchange settlement offers and thereby providing an

opportunity to resolve the underlying Designated Claim on a consensual basis without any

further proceedings by the parties (the "**Offer Exchange Procedures**").  Rule 408 of the Federal

Rules of Evidence shall apply to the ADR Procedures.  Except as permitted by Rule 408, no

person may rely on, or introduce as evidence in connection with any arbitral, judicial, or other

proceeding, any offer, counteroffer, or any other aspect of the ADR Procedures.

              1.      *Designation of Designated Claims and Settlement Offer by the GUC Trust*

           (a)      At any time following the entry of an order approving the ADR

Procedures, as applicable (the "**ADR Order**") and subject to the terms and conditions in

Sections I.A and I.B above, the GUC Trust may designate a Designated Claim for resolution

through the ADR Procedures by serving upon the Designated Claimant, at the address listed on

the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well

as to any counsel of record in these cases for the Designated Claimant, the following materials

(collectively, the "**ADR Materials**"):  (i) a notice that the Designated Claim has been submitted

to the ADR Procedures (an "**ADR Notice**");[1] (ii) a copy of the ADR Order; and (iii) a copy of

these ADR Procedures.  For transferred claims, the GUC Trust also will serve a copy of the ADR

Materials on the transferee identified in the notice of transfer of claim.

           (b)      The ADR Notice will (i) advise the Designated Claimant that his or her

Designated Claim has been submitted to the ADR Procedures; (ii) request that the Designated

Claimant verify or, as needed, correct, clarify, or supplement, certain information regarding the

Designated Claim (including the addresses for notices under the ADR Procedures); and (iii)

include an offer by the GUC Trust to settle the Designated Claim (a "**Settlement Offer**").  The

ADR Notice also will require the Designated Claimant to sign and return the ADR Notice along

with the Claimant's Response (as defined in Section II.A.2 below) to the GUC Trust so that it is

---

[1] The form of the ADR Notice is attached hereto as **Annex 1** and incorporated herein by reference.  The GUC Trust
anticipates that the ADR Notice will be substantially in the form of Annex 1; however, the GUC Trust reserves the
right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

received by the GUC Trust no later than twenty-one (21) days[2] after the mailing of the ADR

Notice (the "**Settlement Response Deadline**").

(c)    If the Designated Claimant fails to sign and return the ADR Notice or to

include a Claimant's Response (as defined below) with the returned ADR Notice by the

Settlement Response Deadline, (i) the Offer Exchange Procedures will be deemed terminated

with respect to the Designated Claim and (ii) the Designated Claim will be submitted to

nonbinding mediation.

2.    *The Claimant's Response*

The only permitted responses to a Settlement Offer (the "**Claimant's Response**")

are (i) acceptance of the Settlement Offer, or (ii) rejection of the Settlement Offer coupled with a

counteroffer (as further defined below, a "**Counteroffer**").  If the ADR Notice is returned

without a response or with a response that is not a permitted response, the Designated Claim

shall be treated as set forth in Section II.A.1(c) above.

3.    *The Counteroffer*

The Counteroffer shall (i) provide all facts that substantiate the Designated Claim

and that are sufficient for the GUC Trust to evaluate the validity and amount of the Designated

Claim; (ii) provide all documents that the Designated Claimant contends support the Designated

Claim; (iii) state the dollar amount of the Designated Claim (the "**Proposed Claim Amount**"),

which may not (A) improve the priority set forth in the Designated Claimant's most recent

timely filed proof of claim or amended proof of claim, or (B) exceed the lesser of the Claim

Amount Cap (as defined in the ADR Order), if applicable, or the amount set forth in the

Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but

---

[2] Bankruptcy Rule 9006(a) shall apply to all periods calculated in the ADR Procedures.

may liquidate any unliquidated amounts expressly referenced in a proof of claim), with an

explanation of the calculation and basis for the Proposed Claim Amount (the "**Proposed Claim**

**Amount Explanation**"), which Proposed Claim Amount Explanation shall additionally include,

without limitation, for Environmental Claims and Patent Claims, all documentation and any such

other information evidencing and/or substantiating the actual calculation of the Proposed Claim

Amount; and (iv) provide the name and address of counsel representing the Designated Claimant

with respect to the Designated Claim, unless the Designated Claimant is a natural person, in

which case the Designated Claimant shall either provide the name of such counsel or state that he

or she is appearing without counsel.

The Counteroffer is presumed to offer the allowance of the Designated Claim as a

general unsecured claim in the Proposed Claim Amount against the Debtor identified in the

applicable proof of claim.  If the GUC Trust accepts the Counteroffer, the Designated Claimant

shall not seek recovery from the GUC Trust of any consideration other than the consideration

ultimately distributed to holders of other allowed general unsecured claims against the relevant

Debtor.  A Counteroffer may not be for an unknown, unliquidated, or indefinite amount or

priority, or the Designated Claim shall be treated as set forth in Section II.A.1(c) above.

4.    *Consent to Subsequent Binding Arbitration*

As described in Sections II.B and II.C below, in the absence of a settlement at the

conclusion of the Offer Exchange Procedures, Designated Claims shall proceed to nonbinding

mediation and, if such mediation is unsuccessful, upon consent of the parties (including deemed

consent based on prior contractual agreements), to binding arbitration.  A Designated Claimant is

required to notify the GUC Trust whether it consents to, and thereby seeks to participate in,

binding arbitration in the event that its Designated Claim ultimately is not resolved through the

Offer Exchange Procedures and the nonbinding mediation.  A Designated Claimant shall make

an election to either consent or not consent to binding arbitration by checking the appropriate

box in the ADR Notice (an "**Opt-In/Opt-Out Election**").  Any Designated Claimant that does

not consent to binding arbitration in its response to the ADR Notice may later consent in writing

to binding arbitration, subject to the agreement of the GUC Trust.  Consent to binding

arbitration, once given, cannot subsequently be withdrawn without consent of the GUC Trust.

        5.     *The GUC Trust's Response to a Counteroffer*

The GUC Trust must respond to any Counteroffer within fifteen (15) days after

their receipt of the Counteroffer (the "**Response Deadline**"), by returning a written response (as

further defined below, each a "**Response Statement**").  The Response Statement shall indicate

that the GUC Trust (a) accepts the Counteroffer; or (b) rejects the Counteroffer, with or without

making a revised Settlement Offer (a "**Revised Settlement Offer**").

        (a)     *Failure to Respond*

If the GUC Trust fails to respond to the Counteroffer by the Response Deadline,

(i) the Counteroffer will be deemed rejected by the GUC Trust; (ii) the Offer Exchange

Procedures will be deemed terminated with respect to the Designated Claim; and (iii) the

Designated Claim will be submitted to nonbinding mediation.

        (b)     *Revised Settlement Offer*

If the GUC Trust makes a Revised Settlement Offer by the Response Deadline,

the Designated Claimant may accept the Revised Settlement Offer by providing the GUC Trust

with a written statement of acceptance no later than ten (10) days after the date of service of the

Revised Settlement Offer (the "**Revised Settlement Offer Response Deadline**").  If the

Designated Claimant does not accept the Revised Settlement Offer by the Revised Settlement

Offer Response Deadline, the Revised Settlement Offer will be deemed rejected and the

Designated Claim automatically will be submitted to nonbinding mediation.

(c)    *Request for Additional Information*

The GUC Trust may request supplemental or clarification of information supplied in the Designated Claimant's most recently filed proof of claim to assist in a good faith evaluation of any particular Designated Claim.  If the GUC Trust requests additional information or documentation by the Response Deadline, the Designated Claimant shall serve additional information or documentation sufficient to permit the GUC Trust to evaluate the basis for the Designated Claim (with the exception, in the Designated Claimant's sole discretion, of privileged information or information prepared expressly in contemplation of litigation) so that it is received by the GUC Trust within fifteen (15) days after such request.  If the Designated Claimant timely responds, the GUC Trust shall have fifteen (15) days to provide an amended Response Statement, which may include a Revised Settlement Offer as a counter to the Counteroffer.  If the GUC Trust does not provide an amended Response Statement within this period, or if the Designated Claimant fails to provide the requested information or documentation within the time allotted, the Designated Claim will be submitted to nonbinding mediation.

6.    *Offer Exchange Termination Date*

Upon mutual written consent, the GUC Trust and a Designated Claimant may exchange additional Revised Settlement Offers and Counteroffers for up to twenty (20) days after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the applicable timeframes provided for in Section II.A.5(c) above with respect to requesting, receiving, and responding to additional information or documentation.  Otherwise, the Offer Exchange Procedures shall conclude and terminate on the earliest of the following (the "**Offer Exchange Termination Date**"):  (i) the date upon which the Designated Claim automatically advances to nonbinding mediation under the provisions set forth above; (ii) the date that any settlement offer for a Designated Claim is accepted under the procedures set forth above; (iii) the

date upon which a Response Statement was served by the GUC Trust, if the GUC Trust notified

the Designated Claimant in their Response Statement of the GUC Trust's intention to proceed

directly to nonbinding mediation; or (iv) such earlier date as is agreed upon by the GUC Trust

and the Designated Claimant.

7. *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the GUC Trust

to settle a Designated Claim by mutual consent at any time. All such settlements shall be subject

to the terms of Section II.D.2 below.

**B.    Nonbinding Mediation ("Mediation")**

1. *Mediation Notice*

If the GUC Trust and the Designated Claimant do not settle the Designated Claim

through the Offer Exchange Procedures, the GUC Trust shall serve a notice of nonbinding

mediation, with a copy of the Designated Claimant's applicable proof(s) of claim attached, on

the Designated Claimant no later than thirty (30) days after the Offer Exchange Termination

Date, or as soon thereafter as is reasonably practicable.[3]  The Mediation Notice will provide the

Mediation Location (as such term is defined in Section II.B.2 below).

2. *Location and Appointment of the Mediator*

Except for Lower Tier Claims, Environmental Claims, and Patent Claims,

Mediations shall be conducted in either (i) New York, New York; (ii) Detroit, Michigan; (iii)

Dallas, Texas; (iv) San Francisco, California; or (v) Chicago, Illinois (collectively, the

"**Mediation Locations**"), unless the parties agree to a different location.  Except for Mediations

---

[3] The forms of Mediation Notice for Designated Claims and Designated Claims that are Lower Tier Claims are attached hereto and incorporated herein by reference as **Annex 2** and **Annex 3**, respectively.  The GUC Trust anticipates that the Mediation Notice will be substantially in the form of Annex 2 or Annex 3, as applicable; however, the GUC Trust reserves the right to modify the Mediation Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

involving Lower Tier Claims, within ten (10) days after receiving the Mediation Notice, the

Designated Claimant shall choose one of the individuals identified in a list of mediators annexed

to the Mediation Notice and corresponding to the applicable Mediation Location to conduct the

mediation (the "**Mediator**").

(a)    *Environmental Claims and Patent Claims*

Mediations of Environmental Claims shall be conducted in New York, New York,

unless the parties agree to a different location.  Mediations of Patent claims shall be conducted in

Dallas, Texas, unless the parties agree to a different location.  For Environmental Claims and

Patent Claims, within ten (10) days after receiving the Mediation Notice, the Designated

Claimant shall choose the Mediator corresponding to the applicable Mediation Location to

conduct the mediation.

(b)    *Lower Tier Claims*

Mediations of Lower Tier Claims shall be conducted at a location designated by

the GUC Trust, which location shall be within 200 miles of (i) the address listed on proof of

claim form for the Designated Claimant's most recently filed proof of claim, or (ii) the office of

any counsel of record in these cases for the Designated Claimant holding a Lower Tier Claim,

unless the parties agree to a different location.  The GUC Trust shall be permitted to select the

Mediator from one of the individuals identified in the list of mediators annexed to the Mediation

Notice to conduct the mediation.  The GUC Trust shall be permitted to select the Mediator

without regard to the Mediation Location.

(c)    *Hardship*

To the maximum extent practicable, the scheduling and location of Mediation

sessions shall give due consideration to the convenience of the parties and the proximity of the

Designated Claimant.  Notwithstanding the foregoing, within ten (10) business days after service of the Mediation Notice, the Designated Claimant may file a motion with the Bankruptcy Court, on notice to the GUC Trust and any previously appointed Mediator, for an order directing that the Mediation be conducted in a different location (a "**Hardship Motion**") if the Designated Claimant can demonstrate that traveling to any of the Mediation Locations presents a "substantial hardship;" *provided, however,* that (i) for each Mediation, except for Mediations of Lower Tier Claims, there shall be a rebuttable presumption that, absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant if the primary representative for such Designated Claimant resides in a location that is less than 750 miles from the Mediation Location or is less than a three-hour plane trip from the Mediation Location (based on typical commercial schedules for the fastest route, excluding any layovers); and (ii) for each Mediation of a Lower Tier Claim, there shall be a rebuttable presumption that, absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant holding a Lower Tier Claim if the primary representative for such Designated Claimant resides in a location that is within 200 miles or less of the Mediation Location.  While a Hardship Motion is pending, all deadlines under these ADR Procedures shall be suspended.  If a Hardship Motion is granted, any alternative location shall be determined by the Bankruptcy Court, taking into account the convenience of the parties and any agreements reached by the parties.  If the location of the Mediation is changed, (i) any Mediator appointed in the original location may be replaced by a Mediator in the new location, and (ii) the Bankruptcy Court may require that that the GUC Trust and the Designated Claimant share the costs of the Mediation.  Except for Mediations involving Lower Tier Claims, the new Mediator shall be selected by mutual agreement of the

parties or by order of the Bankruptcy Court.  For mediations involving Lower Tier Claims, the

new Mediator shall be selected by the GUC Trust.

        3.     *Mediation Rules*

The Mediation of Designated Claims shall be governed by the Mediator's regular

procedures, except where expressly modified in the ADR Procedures.  In the event of any

conflict, the ADR Procedures shall control.  Any party to a Mediation that fails to participate in

good faith, on the terms described herein, may be subject to sanctions under Section II.F below.

        (a)     *Impartiality and Qualifications of Mediators*

A person appointed as a Mediator must (i) be an impartial, neutral person; (ii)

have no financial or personal interest in the proceedings or, except when otherwise agreed by the

parties, in any related matter; and (iii) upon appointment, disclose any circumstances likely to

create a reasonable inference of bias.  In the event a Mediator discloses circumstances likely to

create a reasonable inference of bias, such Mediator may be replaced at the written request of

either the GUC Trust or the Designated Claimant prior to the mediation.

        (b)     *Fees and Costs for Mediation*

Except for Mediations involving Lower Tier Claims, for each Mediation

conducted under these ADR Procedures, the Mediator selected to preside will be entitled to

charge the mediation fees disclosed to, and agreed to by, the GUC Trust and the Designated

Claimant.  Unless the parties have expressly agreed otherwise in writing (either prepetition or

postpetition) as part of an agreement to submit Designated Claims to Mediation, the Mediator's

fees and the costs of any Mediation shall be shared equally by the GUC Trust and the Designated

Claimant subject to the Sharing Cap (if applicable).

For each Mediation of a Lower Tier Claim conducted under these ADR Procedures, (i) the Mediator will be entitled to charge the mediation fees disclosed to, and agreed to by, the GUC Trust, and (ii) the Mediator's fees shall be borne by the GUC Trust.

For purposes of clarity, the costs referred to in this Section II.B.3.(b). shall not include travel expenses of the parties. All Designated Claimants shall be solely responsible for all travel expenses to participate in the Mediation of a Designated Claim.

(c)     *Pre-Mediation Briefing*

Unless the parties agree otherwise, on or before thirty (30) days prior to the scheduled Mediation, the Designated Claimant shall serve on the Mediator and the GUC Trust by electronic transmission or facsimile, at a minimum, and no later than by 6:00 p.m. (Eastern Time), a nonconfidential, pre-Mediation statement (the "**Opening Statement**") not to exceed fifteen (15) pages, excluding any attachments, setting forth all of the Designated Claimant's claims and identifying each and every cause of action or theory the Designated Claimant asserts, including a short and plain statement of the facts and law upon which the Designated Claimant relies for recovery and maintains entitle it to relief. The Designated Claimant shall include, as exhibits or annexes to the Opening Statement, all documents (or summaries of voluminous documents), affidavits, and other evidentiary materials on which the Designated Claimant relies (with the exception, in the Designated Claimant's sole discretion, of privileged information or information prepared expressly in contemplation of litigation). Unless the parties agree otherwise, on or before fifteen (15) days after service of the Opening Statement, the GUC Trust shall serve on the Mediator and the Designated Claimant, by electronic transmission or facsimile, at a minimum, and no later than by 6:00 p.m. (Eastern Time), a nonconfidential response statement (the "**Mediation Response Statement**") not to exceed fifteen (15) pages, excluding

attachments.  The Designated Claimant shall receive copies of all exhibits to the Mediation

Response Statement (with the exception, in the GUC Trust's sole discretion, of privileged

information or information prepared expressly in contemplation of litigation).  At the Mediator's

discretion and direction, the parties may submit additional, confidential letters or statements to

the Mediator, which shall receive "Mediator's-eyes-only" treatment.

(d)    *The Mediation Session*

Unless otherwise agreed by the parties or as provided herein, the Mediation

session must occur no later than sixty (60) days after the date on which the Mediator is

appointed.  Unless otherwise agreed by the parties, the Mediation session is open only to the

parties and their respective counsel, and insurers (if any).

(e)    *Treatment of Mediation Settlement*

If the Mediation results in a settlement of the Designated Claim, such settlement

shall be subject to the terms of Section II.D below.  If the Mediation of a Designated Claim does

not result in a settlement of the Designated Claim, the Designated Claim shall be subject to

Section II.C or II.E below.

(f)    *Modification of the Mediation Procedures*

The Mediation procedures described herein may be modified upon the mutual

written consent of the GUC Trust and the Designated Claimant.

**C.    Arbitration**

1.    *Binding Arbitration*

If the Designated Claimant and the GUC Trust have consented to binding

arbitration under Section II.A.4 above, the Designated Claim will be arbitrated under the terms

of this Section II.C if such claim is not resolved in the Offer Exchange Procedures or Mediation.

If the Designated Claimant has expressly indicated that it does not consent to binding arbitration

in its response to the ADR Notice and has not subsequently opted in to binding arbitration

pursuant to Section II.A.4 above, the Designated Claim shall be resolved in the Bankruptcy

Court by the GUC Trust's commencement of proceedings pursuant to the Bankruptcy Code,

including without limitation, estimating or objecting to the Designated Claims.  Any party to an

arbitration that fails to participate in the arbitration in good faith, on the terms described herein,

may be subject to sanctions under Section II.F below.

2.        *Arbitration Notice*

To initiate the arbitration process for a Designated Claim, the GUC Trust shall

serve a notice of arbitration (the "**Arbitration Notice**"), with a copy of the Designated

Claimant's applicable proof(s) of claim attached, on the Designated Claimant and the American

Arbitration Association (the "**AAA**").[4]

3.        *Arbitration Rules and Procedures*

For Designated Claims that are not designated by the GUC Trust as Complex

Designated Claims (as defined below), the arbitration of all Designated Claims shall be

conducted by a single arbitrator selected pursuant to the Commercial Arbitration Rules of the

AAA.  The arbitrator shall be governed by the commercial arbitration rules of the AAA then in

effect (the "**Arbitration Rules**"), except where the Arbitration Rules are expressly modified in

the ADR Procedures.[5]

The GUC Trust may, at its discretion, designate certain Designated Claims as

complex designated claims (the "**Complex Designated Claims**").  The arbitration of all

---

[4] The form of the Arbitration Notice is attached hereto as **Annex 4** and incorporated herein by reference.  The GUC Trust anticipates that the Arbitration Notice will be substantially in the form of Annex 4; however, the GUC Trust reserves the right to modify the Arbitration Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[5] In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall control.

Complex Designated Claims shall be conducted by a panel of three arbitrators selected pursuant to the Commercial Arbitration Rules of the AAA.  The AAA Procedures for Large, Complex Commercial Disputes, in addition to the Commercial Rules of Arbitration, shall be used for arbitration of all Complex Designated Claims; *provided, however*, unless otherwise agreed by the parties, (i) the AAA shall appoint a panel of three (3) arbitrators, as provided in this Section and Section II.C.3(g) and (ii) the arbitration hearing on a Complex Designated Claim must be held no later than ninety (90) days after the date of appointment of the arbitrator(s), as provided in Section II.C.3(k).  Finally, the AAA Supplementary Rules for Class Arbitrations shall also be used for all Class Claims, including those related to class certification and the Class Determination Award (as defined in Rule 5 of the AAA Supplementary Rules for Class Arbitrations), except that the arbitrator(s) shall not make a Clause Construction Award (as defined in Rule 3 of the AAA Supplementary Rules for Class Arbitrations), or determine that a Class Claim is not arbitrable for failure for each class member to have entered into an arbitration agreement, the Court having specifically found that the ADR Procedures are applicable to Class Claims notwithstanding the absence of a written agreement to arbitrate.[6]

(a)  *Governing Law*

The ADR Procedures, as they relate to arbitration proceedings, are governed by the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. (the "**Federal Arbitration Act**"), and the enforceability of an arbitration award is governed by Section 9 of the Federal Arbitration Act, except as modified herein.

---

[6] In the event of any conflict between the AAA Supplementary Rules for Class Arbitrations and the ADR Procedures, the ADR Procedures shall control.

(b)    *Fees and Costs for Binding Arbitration; Sharing*

Unless the parties expressly have agreed otherwise in writing (either prepetition or postpetition) as part of an agreement to submit claims to binding arbitration, the fees and costs charged by the AAA and the arbitrator(s) shall be shared equally by the GUC Trust and the Designated Claimant; *provided, however*, that the arbitrator(s), in the arbitrator(s)' sole discretion, may assess fees and costs against any party that the arbitrator(s) finds to be abusing or unduly delaying the arbitration process.  The AAA shall submit invoices to the Designated Claimants and the GUC Trust according to the AAA's ordinary invoicing practices then in effect and subject to the AAA's ordinary payment terms then in effect.  For purposes of clarity, these costs shall not include travel expenses of the parties.

(c)    *Impartiality and Qualifications of Arbitrators*

In designating the arbitrator in accordance with the procedures described below, the AAA shall review the Arbitration Notice and the applicable Designated Claim.  Any person appointed as an arbitrator must: (i) be an impartial, neutral person; (ii) be experienced (either from past arbitrations or former employment) in the law that is the subject of the Designated Claim; (iii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iv) upon appointment, disclose any circumstances likely to create a reasonable inference of bias.  In the event that an arbitrator discloses circumstances likely to create a reasonable inference of bias, such arbitrator may be replaced by the AAA at the written request of the GUC Trust or the Designated Claimant within ten (10) days after such disclosure.

(d)      *Time and Location of Arbitration Hearings*

All arbitration hearings shall be conducted in either (i) New York, New York; (ii)

Detroit, Michigan; (iii) Dallas, Texas; or (iv) San Francisco, California (collectively, the

"**Arbitration Locations**").  To the maximum extent practicable, the scheduling and location of

arbitration hearings shall give due consideration to the proximity of the Designated Claimant and

to the convenience of the parties to the Arbitration Location.  Within ten (10) days of

appointment, the arbitrator(s) shall conduct a preliminary hearing pursuant to AAA Commercial

Arbitration Rule 20.

(e)      *Appeals of Arbitration Awards*

All arbitration awards shall be final and binding.  Other than the identities of the

GUC Trust and Designated Claimants, the claims register number(s) assigned to the applicable

arbitrated Designated Claims and the priority and dollar amounts of the Designated Claims as

awarded in the arbitration awards, and except as otherwise required by law or agreed upon by the

parties, all arbitration awards shall be treated as confidential.  No party shall have the right to

appeal an arbitration award except pursuant to the appeal provisions of the Federal Arbitration

Act, in which case any appeal must be to the United States District Court for the Southern

District of New York.  Any appeal shall be governed by the Federal Arbitration Act.  The parties

shall have ten (10) days from the date the arbitration award is served to appeal such award.

Failure to timely appeal shall result in the loss of any appeal rights.  Once any appeal has

concluded or appellate rights are waived, the GUC Trust shall update the claims docket in their

chapter 11 cases accordingly and may file any notice of the liquidated amount of the Designated

Claim that they deem necessary or appropriate for such purpose.

(f)      *Modification of the Arbitration Procedures*

The arbitration procedures described herein may be modified only upon the mutual consent of the GUC Trust and the Designated Claimant.

(g)      *Appointment of the Arbitrator*

Within 5 five days of receiving the applicable Arbitration Notice, the AAA shall commence the following procedures for the appointment of arbitrator(s) (the "**Appointment of Arbitrator(s) Procedures**") by concurrently sending by electronic transmission or facsimile, to the GUC Trust and the applicable Designated Claimant, an identical list of the names of at least eight (8) arbitrator candidates who meet the qualifications necessary for the matter.[7]  The GUC Trust and the applicable Designated Claimant shall have seven (7) business days from the date this list is served to (i) strike two (2) names from the proposed list, (ii) list the remaining names in order of preference, and (iii) return the list to the AAA.  In the event that the Designated Claim is not a Complex Designated Claim, the AAA shall appoint a single arbitrator from the name(s) not stricken, giving consideration first to the preferences of the parties and second to scheduling and the availability of the arbitrator.  In the event that the Designated Claim is a Complex Designated Claim, the AAA shall appoint a panel of three (3) arbitrators from the name(s) not stricken, giving consideration first to the preferences of the parties and second to the scheduling and the availability of the arbitrators.  The AAA shall appoint the arbitrator(s) in accordance with the Appointment of Arbitrator(s) Procedures within ten (10) business days of its receipt of the applicable Arbitration Notice.

(h)      *Pre-Hearing Matters*

---

[7] If, for any reason, there are more than two parties to an arbitration, AAA shall identify a number of potential arbitrators equal to the number of parties, plus one, and the remaining selection proceedings shall otherwise govern. Affiliated entities are considered a single party for this purpose.

Unless otherwise agreed to by the parties, any pre-hearing issues, matters or disputes (other than with respect to merits issues) shall be presented to the arbitrator(s) telephonically (or by such other method agreed to by the arbitrator(s) and the parties) for expeditious, final, and binding resolution.  Upon a party's request, the arbitrator(s) may order that a substantive motion, such as a motion for summary judgment, be heard in person rather than telephonically.  Any pre-hearing issue, matter, or dispute (other than with respect to merits issues) must be presented to the arbitrator(s) not later than fifteen (15) days prior to the arbitration hearing so as to permit the arbitrator(s) to review and rule upon the requests by telephonic or electronic communication at least five days prior to the arbitration hearing.

(i)    *Discovery*

Unless the Designated Claim is a Complex Designated Claim, there shall be no interrogatories.  Any requests for production of documents, electronically-stored information and things ("**Document Requests**") shall be made in writing and shall be limited to no more than twenty (20) requests, including discrete subparts.  Items requested in the Document Requests must be produced within thirty (30) days after service of the Document Requests.  All documents from discovery shall be confidential and shall not be (i) disclosed to any person or party not participating in the arbitration proceeding or (ii) used for any purpose other than in connection with the arbitration proceeding, except as provided herein.

(j)    *Pre-Arbitration Statement*

Unless otherwise agreed by the parties, on or before ten (10) days prior to the scheduled arbitration hearing, each party shall submit to the arbitrator(s) and serve on the other party or parties by overnight mail a pre-arbitration statement not to exceed fifteen (15) pages, excluding any attachments.

(k)      *Arbitration Hearing*

Unless otherwise agreed by the parties and the arbitrator(s) or as provided herein, the arbitration hearing on a Designated Claim must be held no later than ninety (90) days after the date of appointment of the arbitrator(s).  The arbitration hearing is open only to the parties and their respective counsel, insurers (if any), and witnesses.  Nonparty witnesses shall be sequestered.  No posthearing briefs may be submitted, unless the arbitrator(s) requests briefs, in which case such briefing shall be subject to the issues, timing, and page limitations the arbitrator(s) imposes.  There shall be no reply briefs.

(l)      *Awards*

The arbitrator(s) shall issue a written, reasoned opinion and award (the "**Arbitration Award**") within fourteen (14) days after the arbitration hearing.  The arbitrator(s) shall not be compensated for more than eight hours of deliberations on and preparation of the Arbitration Award for a Designated Claim.  Any Arbitration Award shall be an allowed general unsecured nonpriority claim against the Debtor identified in the Arbitration Award (or if no Debtor is identified in the Arbitration Award, the claim shall be deemed to be against the Debtor identified in the Designated Claimant's applicable proof of claim included with the service of the Arbitration Notice, unless otherwise ordered by the Bankruptcy Court).  The Arbitration Award may not award a priority claim or otherwise determine the priority of the claim under the Bankruptcy Code; *provided, however*, that, within thirty (30) days after the issuance of an Arbitration Award, the Designated Claimant may seek relief from the Bankruptcy Court to determine that some or all of the Arbitration Award is subject to treatment as a priority claim if the Designated Claimant's applicable proof of claim filed as of the date of filing of the ADR Order asserted an entitlement to such priority.  Further, no portion of a claim resulting from any

Arbitration Award shall be allowed to the extent that it consists of (a) punitive damages; (b) interest, attorneys' fees, or other fees and costs, unless permissible under section 506(b) of the Bankruptcy Code; (c) an award under any penalty rate or penalty provision of the type specified in section 365(b)(2)(D) of the Bankruptcy Code; (d) amounts associated with obligations that are subject to disallowance under section 502(b) of the Bankruptcy Code; (e) specific performance, other compulsory injunctive relief, restrictive, restraining, or prohibitive injunctive relief or any other form of equitable remedy; or (f) any relief not among the foregoing but otherwise impermissible under applicable bankruptcy or nonbankruptcy law.  The GUC Trust shall have the right within thirty (30) days after the issuance of an Arbitration Awards to file a motion seeking relief from the Bankruptcy Court to enforce the preceding sentence and obtain the disallowance of any portion of a claim included in an Arbitration Award in violation of clauses (a) through (f) herein.  In all cases, the awarded claim shall be subject to treatment in the Debtors' chapter 11 cases as set forth in the Debtors' Second Amended Joint Chapter 11 Plan, or in such other applicable order of the Bankruptcy Court.  The entry of an Arbitration Award shall not grant the Designated Claimant any enforcement or collection rights.

### D.   Settlements of Designated Claims

#### 1.   Settlements Permitted at Any Stage of the ADR Procedures

Designated Claims may be settled by the GUC Trust and a Designated Claimant through the Offer Exchange Procedures, Mediation, or by agreement at any point during these ADR Procedures.  Nothing herein shall prevent the parties from settling any claim at any time.

#### 2.   Settlement Authority and Approvals

Nothing herein shall limit, expand, or otherwise modify the GUC Trust's authority to settle claims pursuant to orders of the Bankruptcy Court then in effect, including without limitation, the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and

9019(b) authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish

Procedures for Settling Certain Claims, entered on October 6, 2006 [Docket No. 4180] (the

"**Claims Procedures and Settlement Order**") and the Bankruptcy Court's March 28, 2011

Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(b) and (b) of the

Bankruptcy Code and Rule 3020 of the Federal Rules of  Bankruptcy Procedure Confirming

Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9941) (the "**Confirmation Order**")

confirming the Plan (collectively, the "**Settlement Authority Orders**").  Any settlements of

claims pursuant to, or in connection with, the ADR Procedures shall be approved consistent with

the terms, conditions, and limitations set forth in the applicable Settlement Authority Orders.

The GUC Trust shall be requested to seek Bankruptcy Court approval of such settlements only to

the extent that (a) such approval is required by the terms of the Settlement Authority Orders or

(b) the settlement falls outside of the authority granted in the Settlement Authority Orders and

otherwise requires Bankruptcy Court approval.

**E.**     **Failure to Resolve a Designated Claim Through ADR Procedures**

1.     *Litigation Generally*

Designated Claims not resolved through the ADR Procedures shall proceed to

litigation for resolution.  Notwithstanding anything herein, the GUC Trust may terminate the

ADR Procedures at any time prior to serving the Arbitration Notice and proceed to litigation of

the Designated Claim as set forth herein.

2.     *Litigation in the Bankruptcy Court*

If the Designated Claim is not resolved by the ADR Procedures (an "**Unresolved**

**Designated Claim**"), litigation of such Unresolved Designated Claim shall proceed in the

Bankruptcy Court by the commencement by the GUC Trust of proceedings consistent with the

terms, conditions, and limitations set forth in the Claims Procedures Order or other applicable

procedures or orders, as soon as reasonably practicable upon completion of the ADR Procedures

for the Unresolved Designated Claim, to the extent that (a) the Bankruptcy Court has subject

matter jurisdiction over the Unresolved Designated Claim and (b) the Unresolved Designated

Claim is not subject to the abstention provisions of 28 U.S.C. § 1334(c).  Disputes over the

subject matter jurisdiction of the Bankruptcy Court or the application of abstention shall be

determined by the Bankruptcy Court.

3.      *Litigation in Other Courts*

If the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy Court as a result of abstention or because of lack of or limitations upon subject matter jurisdiction (as determined by the Bankruptcy Court), then, subject to the terms and conditions set forth in Section II.E.4 below, litigation of such Unresolved Designated Claim shall proceed (a) if the Unresolved Designated Claim was pending in a nonbankruptcy forum on the date the Debtors commenced their respective voluntary chapter 11 cases (the "**Commencement Date**"), then (i) in such nonbankruptcy forum, subject to the GUC Trust's right to seek removal or transfer of venue or (ii) in such other forum as determined by the Bankruptcy Court on request of the GUC Trust;[8] or (b) if the Unresolved Designated Claim was not pending in any forum on the Commencement Date, then in the United States District Court for the Southern District of New York or such other nonbankruptcy forum that, as applicable, (i) has personal jurisdiction over the parties, (ii) has subject matter jurisdiction over the Unresolved Designated Claim, (iii) has in rem jurisdiction over the property involved in the Unresolved Designated Claim (if applicable) and (iv) is a proper venue.  If necessary, any disputes regarding the applicability of this Section II.E.3 shall be determined by the Bankruptcy Court.

4.      *Modification of the Automatic Stay*

If litigation of an Unresolved Designated Claim in a forum other than the Bankruptcy Court is required as set forth in Section II.E.3 above, the ADR Order provides that the automatic stay imposed by section 362 of the Bankruptcy Code, or the Plan Injunction (collectively, the "**Stay**"), shall be modified solely to the extent necessary to permit the

---

[8] The GUC Trust may elect to file a motion pursuant to 28 U.S.C.§ 157(b)(5) to remove to the United States District Court for the Southern District of New York any Unresolved Designated Claim (along with any other unliquidated and litigation claims asserted against the Debtors) where the underlying claim is a personal injury claim or wrongful death claim.

liquidation of the amount of such Unresolved Designated Claim in the appropriate forum;

*provided, however*, that any such liquidated claim (a) shall be subject to treatment under the

Plan; and (b) shall be treated as a general unsecured nonpriority claim against the Debtor

identified in the judgment, unless otherwise determined and ordered by the Bankruptcy Court.

No later than forty-five (45) days after the Bankruptcy Court determines that the terms of Section

II.E.3 above applies to an Unresolved Designated Claim or at such other time as agreed to by the

parties, the GUC Trust shall either (a) file a notice of such modification of the Stay (a "**Notice of**

**Stay Modification**") with the Bankruptcy Court and serve a copy of such notice on the

Designated Claimant or (b) file a motion seeking an order governing the terms upon which the

Stay will be modified (a "**Stay Motion**") and serve such Stay Motion on the Designated

Claimant.  The Stay shall be modified solely to the extent set forth above (a) as of the date that is

forty-five (45) days after the filing of a Notice of Stay Modification, unless the Bankruptcy Court

orders otherwise or the parties otherwise agree; or (b) as ordered by the Court in connection with

a Stay Motion.  If the GUC Trust fails to file a Notice of Stay Modification or a Stay Motion for

any reason with respect to an Unresolved Designated Claim, the Stay shall remain in effect with

respect to such Unresolved Designated Claim and the Designated Claimant may seek a

determination of the Bankruptcy Court regarding whether and on what terms the Stay must be

modified to permit litigation in a nonbankruptcy forum as set forth in Section II.E.3 above.

## F. Failure to Comply with the ADR Procedures

If a Designated Claimant or the GUC Trust fails to comply with the ADR

Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the ADR

Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in

violation of the ADR Order or, with respect to a Designated Claimant, an abandonment of or

failure to prosecute the Designated Claim, or both.  Upon such findings, the Bankruptcy Court

may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant

such other or further remedy deemed just and appropriate under the circumstances, including,

without limitation, awarding attorneys' fees, other fees, and costs to the other party.

<u>ANNEX 1</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
In re                                                        :         **Chapter 11 Case No.**
                                                             :
**MOTORS LIQUIDATION COMPANY**, *et al.*,   :         **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*      :
                                                             :
                        **Debtors.**                    :         **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

<u>**ALTERNATIVE DISPUTE RESOLUTION NOTICE**</u>

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

By this notice (the "**ADR Notice**"), the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") designate the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases and submit the Designated Claim(s) to alternative dispute resolution, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ \_\_\_, 2012.  A complete copy of the ADR Procedures is enclosed for your reference.

The GUC Trust has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offers the amounts set forth below for allowance of your Designated Claim(s) as [a] prepetition general unsecured nonpriority claim(s) in full satisfaction of the Designated Claim(s) (the "**Settlement Offer**").

*You are required to return this ADR Notice with a Claimant's Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.*

In addition, to the extent your most recent proof(s) of claim **[does]/[do]** not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct, and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Claimant's Response.

If you do not return this ADR Notice with the requested information and a Claimant's Response to the Settlement Offer to **[the GUC Trust's Representative]** so that it is received by the Deadline to Respond, your Designated Claim(s) will be subject to mandatory mediation as set forth in Section II.B of the ADR Procedures.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** IF YOUR DESIGNATED CLAIM(S) CANNOT BE SETTLED.  PLEASE MARK THE BOX BELOW INDICATING WHETHER YOU (i) CONSENT TO **BINDING ARBITRATION** OR (ii) **DO NOT** CONSENT TO (AND SEEK TO **OPT OUT** OF) **BINDING ARBITRATION**.  PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.  IN ADDITION, ANY ATTEMPT TO OPT OUT OF **BINDING ARBITRATION** IN THE RESPONSE TO THIS ADR NOTICE SHALL BE INEFFECTIVE IF YOU PREVIOUSLY HAVE CONSENTED IN WRITING (EITHER PREPETITION OR POSTPETITION) TO **BINDING ARBITRATION** AS A MEANS TO RESOLVE YOUR CLAIM(S).

Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**: The GUC Trust offers you an allowed general unsecured, nonpriority claim in the amount of $_____ against **[Name of Debtor]** in full satisfaction of your Designated Claim(s), to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan.

The only permitted response (the "**Claimant's Response**") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "**Counteroffer**").  Accordingly, please select your Claimant's Response below:

---

*Please indicate below if you accept or reject the GUC Trust's Settlement Offer by marking the appropriate box.  If you reject the Settlement Offer, please make your counteroffer where indicated.*

☐ I/we agree to and accept the terms of the Settlement Offer.

**or**

☐ I/we reject the Settlement Offer.  However, I/we will accept, and propose as a Counteroffer, the following allowed claim in full satisfaction of the Designated Claim(s), to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan.

---

Debtor: _____

Amount:  $_____

Priority:  unsecured nonpriority claim (presumed) or ☐ other:*_____

*Note - If you choose a different priority, you must attach an explanation and any relevant documentation.*

 

Section II.A.3 of the ADR procedures sets forth the restrictions on Counteroffers. Your Counteroffer may not (a) improve the priority set forth in your most recent timely-filed proof of claim or amended proof of claim, or (b) exceed the lesser of the Claim Amount Cap (if applicable) or the amount set forth in your most recent timely-filed proof of claim(s) or amended proof of claim(s).  You may not amend your proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority.

 

*Please indicate below whether you consent to binding arbitration for your Designated Claim(s) by marking the appropriate box.*

☐  I/ WE CONSENT TO BINDING ARBITRATION.

**<u>or</u>**

☐  I/WE DO NOT CONSENT TO BINDING ARBITRATION.

 

[Signature of the Designated Claimant's Authorized Representative]

By:  _____

Printed Name

<u>ANNEX 2</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
                                          :
In re                                     :        **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY**, *et al.*, :        **09-50026 (REG)**
        f/k/a **General Motors Corp.**, *et al.*  :
                                          :
                Debtors.                  :        **(Jointly Administered)**
                                          :
--------------------------------------------------------------x

<u>**NOTICE OF NONBINDING MEDIATION**</u>

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

   By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

   As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties agree to a different location.  As further provided in the ADR Procedures, you have ten (10) days to choose one of the individuals identified on the list of mediators enclosed with this Mediation Notice to conduct the mediation.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B. of the ADR Procedures, concerning mediation.

[Signature of the GUC Trust's Authorized Person]

ANNEX 3

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                          :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
|     **f/k/a General Motors Corp.**, *et al.* | : | |
| | : | |
|     **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**NOTICE OF NONBINDING MEDIATION**

Service Date:

Claimant(s):

Claimant(s)' Address:

Lower Tier Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

        By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

        As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties agree to a different location.  As further provided in the ADR Procedures, the GUC Trust shall choose one of the individuals identified on

the list of mediators enclosed with this Mediation Notice to conduct the mediation, and the mediator's fees shall be borne by the GUC Trust.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B. of the ADR Procedures, concerning mediation.

[Signature of the GUC Trust's Authorized Person]

4

## ANNEX 4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :        09-50026 (REG)
        f/k/a General Motors Corp., et al.   :
                                        :
                Debtors.                :        (Jointly Administered)
                                        :
-------------------------------------------------------------x
```

## NOTICE OF BINDING ARBITRATION

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Arbitration Location:

By this Arbitration Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to **binding arbitration**, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures and or through binding mediation.

PLEASE NOTE THAT YOU HAVE CONSENTED (OR ARE DEEMED TO HAVE CONSENTED) TO BINDING ARBITRATION. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR PROCEDURES.

As provided for in the ADR Procedures, an arbitrator will be appointed through the American Arbitration Association ("**AAA**").  The ADR Procedures require you and the GUC

Trust to share the administrative fees and costs of arbitration charged by the AAA and the arbitrator.

A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.C. of the ADR Procedures, concerning binding arbitration.

[Signature of the GUC Trust's Authorized Person]

## Exhibit B

## Schedule of Mediators

### Dallas, Texas

| Name | Experience |
|---|---|
| Burdin, Mary | Personal injury, products liability |
| Damuth, Brenda J. | Personal injury, products liability |
| Grissom, Jerry | Class actions, intellectual property, personal injury, products liability |
| Hale, Earl F. | Complex business disputes |
| Lopez, Hon. Carlos G. | Personal injury, products liability |
| Martin, Hon. Harlan | Complex business disputes, intellectual property, personal injury, products liability |
| Nolland, Christopher | Complex business disputes, class actions |
| Parker, Walter E. "Rip" | Intellectual property, personal injury, products liability, complex disputes |
| Pryor, Will | Personal injury, products liability, complex business disputes |
| Rubenstein, Kenneth J. | Personal injury, products liability, complex business disputes |
| Stoddard, Ross | Personal injury, products liability, complex business disputes |
| Young, James | Class actions, complex business disputes, insurance disputes, personal injury |

### New York, New York

| Name | Experience |
|---|---|
| Carling, Francis | Products liability, personal injury |
| Cyganowski, Melanie | Complex business disputes |
| Ellerin, Hon. Betty | Environmental, complex business disputes, products liability, personal injury, class actions |
| Farber, Eugene I. | Environmental, products liability |
| Feerick, Kevin | Complex business disputes, products liability |
| Gafni, Abraham J. | Complex business disputes, products liability, personal injury |
| Holtzman, Eric H. | Products liability, environmental |
| Hyman, Ms. Chris Stern | Insurance disputes |
| Leber, Bernice K. | Complex business disputes |
| Levin, Jack P. | Class actions, breach of warranty claims, products liability |
| McAllister, Michael T. | Personal injury, products liability |
| McLaughlin, Hon. Joseph T. | Complex business disputes, class actions |
| Ricchiuti, Joseph F. | Complex business disputes, products liability, personal injury, class actions |
| Silbermann, Hon. Jacqueline W. | Complex business disputes, products liability, personal injury, class actions |
| Woodin, Peter H. | Complex business disputes, environmental, products liability, personal injury, class actions |

**Detroit, Michigan**

| Name | Experience |
| --- | --- |
| Connor, Laurence D. | Complex business disputes |
| Harrison, Michael G. | Personal injury |
| Kaufman, Richard C. | Personal injury |
| Muth, Jon R. | Complex business disputes, class actions |
| Pappas, Edward H. | Complex business disputes, products liability |

**San Francisco, California**

| Name | Experience |
| --- | --- |
| Cahill, Hon. William J. | Complex business disputes, products liability, personal injury, class actions |
| Denver, Thomas | Products liability, personal injury |
| Infante, Hon. Edward A. | Complex business disputes |
| Komar, Hon. Jack | Products liability class actions, mass torts |
| Lynch, Hon. Eugene F. | Complex business disputes |
| McLean, William | Complex business disputes, products liability, personal injury |
| McPharlin, Linda Hendrix | Complex business disputes |
| Needham, Craig | Products liability, personal injury |
| Williams, John R. (Jack) | Products liability, personal injury |
| Wulff, Randall W. | Complex business disputes, products liability, class actions |

**Chicago, Illinois**

| Name | Experience |
| --- | --- |
| Anderson, Hon. Wayne R. | Complex business disputes, personal injury, products liability, class actions, mass torts |
| Cohn, Lynn | Personal injury, products liability, class actions |
| DiVito, Hon. Gino | Complex business disputes, products liability, personal injury |
| Dutenhaver, Katheryn M. | Complex business disputes, products liability, personal injury |
| Ginn, Bradley R. | Complex business disputes, products liability, personal injury |
| Neville, Hon. Richard E. | Complex business disputes, personal injury, products liability |
| Nudelman, Hon. Stuart A. | Complex business disputes, personal injury, products liability |
| Sullivan, Hon. James E. | Complex business disputes, personal injury, products liability, class actions |

**EXHIBIT 2**

**Blackline of Proposed Changes to the Amended ADR Order**

1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------x
                                          :
In re                                     :     Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :     09-50026 (REG)
       f/k/a General Motors Corp., et al. :
                                          :
                          Debtors.        :     (Jointly Administered)
                                          :
----------------------------------------------------------x
```

**SECOND AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a)**
**AND GENERAL ORDER M-390 AUTHORIZING IMPLEMENTATION OF**
**ALTERNATIVE DISPUTE PROCEDURES, INCLUDING MANDATORY MEDIATION**

Upon the Motion, dated ~~January 11, 2010~~February 13, 2012 (the "**Motion**"),[1] of the Motors Liquidation Company GUC Trust (~~f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**~~the "**GUC Trust**"), for an order, pursuant to section 105(a) of title ~~11,~~11 of the United States Code and General Order M-~~390 (the "**Original ADR Order**"), for authorization to implement alternative dispute procedures, including mandatory mediation (the "**ADR Procedures**"), all as more fully set forth in the Motion; and~~ ~~due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided~~390, to supplement the Amended ADR Order (the "**Second Amended ADR Order**"); and the Court having ~~found and~~ determined that the relief sought in the Motion is in the best interests of the GUC Trust, the Debtors~~, their~~' estates, creditors, and all parties in interest and that the legal and factual bases set ~~forth~~for in the Motion

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion~~, the Omnibus Reply of the Debtors to Objections to Debtors' Motion for Entry of Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation, and in the ADR Procedures annexed to the Original ADR Order as~~ and the modified ADR Procedures set forth in Exhibit "A~~.~~" attached hereto.

establish just cause for the relief granted herein; and after ~~consideration of the response pleadings filed; and the Court having entered the Original ADR Order; and upon the Debtors' Motion, dated October 8, 2010 (the "**Motion to Amend**") to amend the ADR Order; and the Court having determined since the entry of the Original ADR Order that the Original ADR Order should be modified in certain respects and restated in its entirety as provided herein~~due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and after consideration of any response pleadings filed; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that ~~this~~the Amended ADR Order ~~supersedes in all respects the Original ADR Order~~is supplemented as provided herein; and it is further

ORDERED that ~~notwithstanding anything to the contrary in the Motion or Motion to Amend, the~~the modified ADR Procedures~~, as~~ set forth in Exhibit "A" ~~to this Amended ADR Order,~~attached hereto are approved as provided herein with respect to claims that assert liquidated amounts of $100,000 or more based on (a) personal injury claims~~;~~; (b) wrongful death claims~~;~~; (c) tort claims~~;~~; (d) product liability claims~~;~~; (e) claims for damages arising from the rejection of an executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code ~~(excluding~~; (f) environmental claims that constitute prepetition unsecured claims (including claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters)~~, (f~~ and claims asserted by state and tribal governments; (g) patent claims; (h) indemnity claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions and excluding indemnity claims relating to asbestos liability)~~;~~; (g~~i~~) lemon law claims, to the extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as

amended (the "**MPA**")~~,~~; (~~h~~j) warranty claims, to the extent applicable under section 6.15 of the

MPA~~,~~; and (~~i~~k) class action claims (collectively, the "~~**Initial Subject**~~**Designated** **Claims**"); and

it is further

ORDERED that, notwithstanding anything to the contrary in the Motion, ~~the~~

~~Motion to Amend, or~~ the ADR Procedures~~, the ADR procedures~~ shall not apply to claims filed

by the United States of America or its agencies; *provided*, *however*, nothing shall preclude the

~~Debtors~~GUC Trust from seeking in the future by separate motion alternative dispute resolutions

in connection with any such claims~~; and it is further~~

~~ORDERED that, notwithstanding anything to the contrary in the Motion or the~~

~~ADR Procedures, the ADR Procedures shall not apply to claims filed~~ by state and tribal

governments ~~concerning alleged environmental liabilities; *provided*, *however*, nothing shall~~

~~preclude the Debtors from seeking in the future by separate motion alternative dispute~~

~~resolutions in connection with any such claims; and it is further ORDERED that,~~

~~notwithstanding anything to the contrary in the Motion, the Motion to Amend, or the ADR~~

~~Procedures, the United States of America, nor any state or tribal government shall be in any way~~

~~bound by any determination made pursuant to the ADR Procedures as to any other party or claim~~

~~subject to the ADR Procedures, including any determination with respect to the amount,~~

~~classification, disallowance, or type of claim~~; and it is further

ORDERED that, annexed to this Second Amended ADR Order as **Exhibit "B"** is

~~a revised~~the schedule of mediators (the "**Schedule of Mediators**"); and it is further

ORDERED that, the ~~Debtors~~GUC Trust from time to time may further modify the

Schedule of Mediators~~, in consultation with the Ad Hoc Committee,~~ by filing a revised Schedule

of Mediators with this Court and providing counsel to the Ad Hoc Committee with the Sharing Cap for each additional mediator added to the Schedule of Mediators; and it is further

ORDERED that, the Debtors areGUC Trust is authorized to waive the obligation to share costs of non-binding mediation in their sole discretion to the extent the Designated Claimant establishes, to the satisfaction of the DebtorsGUC Trust, that sharing of such expenses would constitute a substantial hardship upon thesuch Designated Claimant; and it is further

ORDERED that, within thirty (30) days from the date of entry of this Order (the "**Capping Period**"), any holder of an Unliquidated/Litigation Claim that is an Initial Subject Claim filed against any of the Debtors may request the Debtors to initiate the ADR Procedures for such Unliquidated/Litigation Claim by sending a letter (each a "**Capping Proposal Letter**," the form of which is annexed to this Order as **Exhibit "C"**) to the Debtors indicating a willingness to cap its Unliquidated/Litigation Claim at a reduced amount (the "**Claim Amount Cap**"); *provided*, *however*, that with respect to any claim for amounts resulting from the rejection of an executory contract that is rejected pursuant to an order entered after the date of this Order, a Capping Proposal Letter will be deemed timely if it is received within thirty (30) days of the entry of the order authorizing such rejection; and it is further **three (3) business days** of entry of this Order, the GUC Trust shall cause to be mailed a copy of this Order to all known holders of Proposed Additional Designated Claims; and it is further

ORDERED that, upon receiving a Capping Proposal Letter, the Debtors will, if, and only if, the Claim Amount Cap is accepted by the Debtors, initiate the ADR Procedures by designating the Unliquidated/Litigation Claim in accordance with the ADR Procedures and will indicate in the ADR Notice that the Claim Amount Cap has been accepted; and it is further

ORDERED that, if the Claim Amount Cap is accepted by the Debtors, the Claim Amount Cap will become binding on the Designated Claimant, and the ultimate value of his or her Unliquidated/Litigation Claim will not exceed the Claim Amount Cap. To the extent the Debtors accept the Claim Amount Cap, the Debtors will be responsible for all fees and costs associated with any subsequent mediation. If the Claim Amount Cap is not accepted, the Debtors will notify the Designated Claimant that the Claim Amount Cap has been rejected, and the Claim Amount Cap will not bind any party and shall not be admissible to prove the amount of the Unliquidated/Litigation Claim; and it is further

ORDERED that, within one month after the Capping Period has expired, the Debtors will provide to (i) counsel for the statutory committee of unsecured creditors (the "**Creditors' Committee**"), and (ii) counsel for the United States of America, a privileged and confidential report containing information on the status of the Unliquidated/Litigation Claims (the "**Committee Report**"). The Debtors shall provide both the Creditors' Committee and the United States of America with an updated Committee Report once a month; and it is further

ORDERED that the following notice procedures are hereby approved:

1. Within **three (3) days** of entry of this Order, the Debtors shall cause to be mailed a copy of this Order to all known holders of Initial Subject Claims that are subject to the ADR Procedures.

2. The Debtors shall post a form of the Capping Proposal Letter on the website established by GCG for the Debtors' cases: www.motorsliquidationdocket.com;

and it is further

ORDERED that the ~~Debtors are~~GUC Trust is authorized to take any and all steps that are necessary or appropriate to implement the ADR Procedures with respect to the ~~Initial Subject~~Designated Claims, including, without limitation, by implementing any arbitration awards or settlements with respect to Designated Claims achieved under the terms of the ADR

5

Procedures; *provided, howeve*r, that nothing in this Order or the ADR Procedures~~,~~ shall obligate the ~~Debtors~~GUC Trust to settle or pursue settlement of any particular Designated Claim; *further provided* that any such settlements may be pursued and agreed upon as the ~~Debtors believe~~GUC Trust believes are reasonable and appropriate in ~~their~~its sole discretion, subject to the terms and conditions set forth in the ADR Procedures; and it is further

ORDERED that, if litigation of an Unresolved Designated Claim in a forum other than this Court is required for any of the reasons forth in Section II.E.3 of the ADR Procedures (as determined by this Court), then the Stay shall be modified subject to the terms and conditions set forth in Section II.E.4 of the ADR Procedures.  Any such modification of the Stay shall be solely to the extent necessary to permit the liquidation of the amount of such Unresolved Designated Claim in the appropriate forum.  If the ~~Debtors fail~~GUC Trust fails to file a Notice of Stay Modification or a Stay Motion for any reason with respect to an Unresolved Designated Claim, as set forth in Section II.E.4 of the ADR Procedures, the Stay shall remain in effect with respect to such Unresolved Designated Claim, and the Designated Claimant may seek a determination of this Court regarding whether the Stay must be modified to permit litigation in a non-bankruptcy forum as set forth in Section II.E.3 of the ADR Procedures; and it is further

ORDERED that nothing contained in this Second Amended ADR Order shall be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with the Bankruptcy Code and applicable law~~; and it is further~~~~ORDERED that nothing contained in this Order shall alter the Creditors' Committee's rights set forth in this Court's Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and 9019(b) authorizing the Debtors to (i) File Omnibus Claims~~

Objections and (ii) Establish Procedures for Settling Certain Claims, entered on October 6, 2006 [Docket No. 4180]; and it is further

ORDERED that nothing in the ADR Procedures, including the ADR Injunction set forth therein, shall preclude the holder of a Designated Claim from commencing or continuing an action against a non-debtor party; and it is further

ORDERED that Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the Capping Proposal Letter, the ADR Procedures, and the Committee Report; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Second Amended ADR Order and the ADR Procedures.

Dated:  New York, New York
        _____ __, 2012


                                        _____
                                        United States Bankruptcy Judge

Document comparison by Workshare Professional on Monday, February 13, 2012 8:08:07 PM

| Input: | |
|---|---|
| Document 1 ID | file://C:\Documents and Settings\aliseoni\My Documents\GM\Decker filing- amended adr\ORIGINAL.doc |
| Description | ORIGINAL |
| Document 2 ID | file://C:\Documents and Settings\aliseoni\My Documents\GM\Decker filing- amended adr\REVISED.doc |
| Description | REVISED |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 51 |
| Deletions | 66 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 125 |

## Exhibit A

## The ADR Procedures

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------x
                                          :
In re                                     :          Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :          09-50026 (REG)
        f/k/a General Motors Corp., et al.   :
                                          :
                        Debtors.          :          (Jointly Administered)
                                          :
------------------------------------------------------------x
```

<u>**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**</u>

The alternative dispute resolution procedures (the "**ADR Procedures**") adopted upon the motion of the Motors Liquidation Company GUC Trust (the "**GUC Trust**") in the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), are set forth below:

### I.    CLAIMS SUBJECT TO THE ADR PROCEDURES AND ADR INJUNCTION

**A.    Claims Subject to the ADR Procedures**

1.    The claims subject to the ADR Procedures (collectively, the "**Designated Claims**") include any and all claims (other than an Excluded Claim as defined below) designated by the DebtorsGUC Trust under the notice procedures set forth below that assert or involve claims based on one or more of the following theories of recovery, whether or not litigation previously has been commenced by the claimant:  (a) personal injury claims;; (b) wrongful death claims;; (c) tort claims;; (d) product liability claims;; (e) claims for damages arising from the rejection of an executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code (excluding; (f) environmental claims that constitute prepetition unsecured

claims (including claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters), (f and claims asserted by state and local governments (**"Environmental Claims"); (g) patent claims ("Patent Claims"); (h**) indemnity claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions and excluding indemnity claims relating to asbestos liability).; (gi) lemon law claims, to the extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended (the "**MPA**").; (hj) warranty claims, to the extent applicable under section 6.15 of the MPA.; and (ik) class action claims ("**Class Claims**"). The DebtorsDesignated Claims that assert amounts between $100,000 and $500,000 shall be known as "**Lower Tier Claims**." The GUC Trust may identify as a Designated Claim any proof of claim asserted in these cases, other than Excluded Claims as defined in Section I.B below, if the Debtors believeGUC Trust believes, in theirits business judgment and sole discretion, that the ADR Procedures would promote the resolution of such claim and serve the intended objectives of the ADR Procedures.

2.      The holders of the Designated Claims are referred to herein as the "**Designated Claimants**."

B.      **Excluded Claims**

The DebtorsGUC Trust shall not identify as a Designated Claim any proof of claim within any of the following categories (collectively, the "**Excluded Claims**"):  (a) claims for which the automatic stay under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**") was modified by prior order of this Court (the "**Bankruptcy Court**") to allow the litigation of the claim to proceed in another forum; (b) claims asserted in liquidated amounts of $500,000 orless than $100,000; (c) asbestos-related claims (including indemnity claims relating to asbestos liability); (d) environmental claims that constitute prepetition

~~unsecured claims (including~~ ~~claims for damages arising from the rejection of executory contracts~~

~~that relate primarily to environmental matters); (e) patent infringement claims; (f)~~ tax claims

(excluding tax indemnity claims relating to leveraged fixed equipment lease transactions); and

(~~g~~e) claims subject to a separate order of the Bankruptcy Court providing for arbitration or

mediation.  Notwithstanding the foregoing, any of the Excluded Claims, any disputed

postpetition administrative expenses, and any claims or counterclaims asserted by the

~~Debtors~~GUC Trust may be submitted to the ADR Procedures by agreement of the ~~applicable~~

~~Debtor~~GUC Trust and the applicable claimant or by further order of the Bankruptcy Court.

## C.    **The ADR Injunction**

Upon service of the ADR Notice (as defined below) on a Designated Claimant

under Section II.A.1 below, such Designated Claimant (and any other person or entity asserting

an interest in the relevant Designated Claim) shall be enjoined from commencing or continuing

any action or proceeding in any manner or any place, including in the Bankruptcy Court, seeking

to establish, liquidate, collect on, or otherwise enforce the Designated Claim(s) identified in the

ADR Notice (collectively, the "**ADR Injunction**") other than (1) through these ADR

Procedures, or (2) pursuant to ~~a plan or plans confirmed in~~ the ~~applicable~~ Debtors' ~~chapter 11~~

~~cases (collectively,~~ Second Amended Joint Chapter 11 Plan (the "**ADR Injunction**"). ~~Notwithstanding the forgoing, the Debtors shall not be precluded from seeking to estimate any~~

~~Designated Claim not subject to an accepted Claim Amount Cap in connection with confirmation~~

~~or consummation of a plan or plans confirmed in the applicable Debtors' chapter 11 cases, or~~

~~preclude the Designated Claimant from seeking estimation of its Designated Claim solely for~~

~~voting purposes in connection with confirmation of a plan or plans confirmed in the applicable~~

~~Debtors' chapter 11 cases~~**Plan**").  The ADR Injunction shall expire with respect to a Designated

Claim only when that Designated Claim has been resolved or after the ADR Procedures have

been completed as to that Designated Claim.  Except as expressly set forth herein or in a separate

order of the Bankruptcy Court, the expiration of the ADR Injunction shall not extinguish, limit,

or modify the automatic stay established by section 362 of the Bankruptcy Code or ~~any similar~~

~~injunction that may be imposed~~ upon ~~the~~ confirmation ~~or effectiveness of a plan or plans in the~~

~~applicable Debtors' chapter 11 cases (a~~of the Plan (the "**Plan Injunction**"), and the automatic

stay and the Plan Injunction shall remain in place to the extent then in effect.

## II.    THE ADR PROCEDURES

### A.    Offer Exchange Procedures

The first stage of the ADR Procedures will be the following offer exchange

procedures, requiring the parties to exchange settlement offers and thereby providing an

opportunity to resolve the underlying Designated Claim on a consensual basis without any

further proceedings by the parties (the "**Offer Exchange Procedures**").  Rule 408 of the Federal

Rules of Evidence shall apply to the ADR Procedures.  Except as permitted by Rule 408, no

person may rely on, or introduce as evidence in connection with any arbitral, judicial, or other

proceeding, any offer, counteroffer, or any other aspect of the ADR Procedures.

1.    *Designation of Designated Claims and Settlement Offer by the* ~~*Debtors*~~*GUC Trust*

(a)    At any time following the entry of an order approving the ADR

Procedures, as applicable (the "**ADR Order**") and subject to the terms and conditions in

Sections I.A and I.B above, the ~~Debtors~~GUC Trust may designate a Designated Claim for

resolution through the ADR Procedures by serving upon the Designated Claimant, at the address

listed on the Designated Claimant's most recently filed proof of claim or amended proof of

claim, as well as to any counsel of record in these cases for the Designated Claimant, the

following materials (collectively, the "**ADR Materials**"):  (i) a notice that the Designated Claim

has been submitted to the ADR Procedures (an "**ADR Notice**");,[1] (ii) a copy of the ADR Order,;

and (iii) a copy of these ADR Procedures.  For transferred claims, the ~~Debtors~~GUC Trust also

will serve a copy of the ADR Materials on the transferee identified in the notice of transfer of

claim.

(b)     The ADR Notice will (i) advise the Designated Claimant that his or her

Designated Claim has been submitted to the ADR Procedures; (ii) request that the Designated

Claimant verify or, as needed, correct, clarify, or supplement, certain information regarding the

Designated Claim (including the addresses for notices under the ADR Procedures); and (iii)

include an offer by the ~~Debtors~~GUC Trust to settle the Designated Claim (a "**Settlement**

**Offer**").  The ADR Notice also will require the Designated Claimant to sign and return the ADR

Notice along with the Claimant's Response (as defined in Section II.A.2 below) to the

~~Debtors~~GUC Trust so that it is received by the ~~Debtors~~GUC Trust no later than twenty-one (21)

days[2] after the mailing of the ADR Notice (the "**Settlement Response Deadline**").

(c)     If the Designated Claimant fails to sign and return the ADR Notice or to

include a Claimant's Response (as defined below) with the returned ADR Notice by the

Settlement Response Deadline, (i) the Offer Exchange Procedures will be deemed terminated

with respect to the Designated Claim and (ii) the Designated Claim will be submitted to

nonbinding mediation.

2.     *The Claimant's Response*

---

[1] The form of the ADR Notice is attached hereto as **Annex 1** and incorporated herein by reference.  The ~~Debtors anticipate~~GUC Trust anticipates that the ADR Notice will be substantially in the form of Annex 1; however, the ~~Debtors reserve~~GUC Trust reserves the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[2] Bankruptcy Rule 9006(a) shall apply to all periods calculated in the ADR Procedures.

The only permitted responses to a Settlement Offer (the "**Claimant's Response**") are (i) acceptance of the Settlement Offer, or (ii) rejection of the Settlement Offer coupled with a counteroffer (as further defined below, a "**Counteroffer**").  If the ADR Notice is returned without a response or with a response that is not a permitted response, the Designated Claim shall be treated as set forth in Section II.A.1(c) above.

3. _The Counteroffer_

The Counteroffer shall (i) provide all facts that substantiate the Designated Claim and that are sufficient for the ~~Debtors~~GUC Trust to evaluate the validity and amount of the Designated Claim; (ii) provide all documents that the Designated Claimant contends support the Designated Claim; (iii) state the dollar amount of the Designated Claim (the "**Proposed Claim Amount**"), which may not (A) improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim, or (B) exceed the lesser of the Claim Amount Cap (as defined in the ADR Order), if applicable, or the amount set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim), with an explanation of the calculation and basis for the Proposed Claim Amount (the "**Proposed Claim Amount Explanation**"), which Proposed Claim Amount Explanation shall additionally include, without limitation, for Environmental Claims and Patent Claims, all documentation and any such other information evidencing and/or substantiating the actual calculation of the Proposed Claim Amount; and (iv) provide the name and address of counsel representing the Designated Claimant with respect to the Designated Claim, unless the Designated Claimant is a natural person, in which case the Designated Claimant shall either provide the name of such counsel or state that he or she is appearing without counsel.

The Counteroffer is presumed to offer the allowance of the Designated Claim as a general unsecured claim in the Proposed Claim Amount against the Debtor identified in the applicable proof of claim.  If the ~~Debtors accept~~GUC Trust accepts the Counteroffer, the Designated Claimant shall not seek recovery from the ~~Debtors~~GUC Trust of any consideration other than the consideration ultimately distributed to holders of other allowed general unsecured claims against the relevant Debtor.  A Counteroffer may not be for an unknown, unliquidated, or

indefinite amount or priority, or the Designated Claim shall be treated as set forth in Section
II.A.1(c) above.

4.      *Consent to Subsequent Binding Arbitration*

As described in Sections II.B and II.C below, in the absence of a settlement at the
conclusion of the Offer Exchange Procedures, Designated Claims shall proceed to nonbinding
mediation and, if such mediation is unsuccessful, upon consent of the parties (including deemed
consent based on prior contractual agreements), to binding arbitration.  A Designated Claimant is
required to notify the ~~Debtors~~GUC Trust whether it consents to, and thereby seeks to participate
in, binding arbitration in the event that its Designated Claim ultimately is not resolved through
the Offer Exchange Procedures and the nonbinding mediation.  A Designated Claimant shall
make an election to either consent or not consent to binding arbitration by checking the
appropriate box in the ADR Notice (an "**Opt-In/Opt-Out Election**").  Any Designated Claimant
that does not consent to binding arbitration in its response to the ADR Notice may later consent
in writing to binding arbitration, subject to the agreement of the ~~Debtors~~GUC Trust.  Consent to
binding arbitration, once given, cannot subsequently be withdrawn without consent of the
~~Debtors~~GUC Trust.

5.      *The ~~Debtors'~~GUC Trust's Response to a Counteroffer*

The ~~Debtors~~GUC Trust must respond to any Counteroffer within fifteen (15) days
after their receipt of the Counteroffer (the "**Response Deadline**"), by returning a written
response (as further defined below, each a "**Response Statement**").  The Response Statement
shall indicate that the ~~Debtors~~GUC Trust (a) ~~accept~~accepts the Counteroffer; or (b) ~~reject~~rejects
the Counteroffer, with or without making a revised Settlement Offer (a "**Revised Settlement
Offer**").

(a)      *Failure to Respond*

If the ~~Debtors fail~~GUC Trust fails to respond to the Counteroffer by the Response

Deadline,

(i) the Counteroffer will be deemed rejected by the ~~Debtors~~GUC Trust; (ii) the Offer Exchange

Procedures will be deemed terminated with respect to the Designated Claim; and (iii) the

Designated Claim will be submitted to nonbinding mediation.

(b)      *Revised Settlement Offer*

If the ~~Debtors make~~GUC Trust makes a Revised Settlement Offer by the

Response Deadline, the Designated Claimant may accept the Revised Settlement Offer by

providing the ~~Debtors~~GUC Trust with a written statement of acceptance no later than ten (10)

days after the date of service of the Revised Settlement Offer (the "**Revised Settlement Offer**

**Response Deadline**").  If the Designated Claimant does not accept the Revised Settlement Offer

by the Revised Settlement Offer Response Deadline, the Revised Settlement Offer will be

deemed rejected and the Designated Claim automatically will be submitted to nonbinding

mediation.

(c)      *Request for Additional Information*

The ~~Debtors~~GUC Trust may request supplemental or clarification of information

supplied in the Designated Claimant's most recently filed proof of claim to assist in a good faith

evaluation of any particular Designated Claim.  If the ~~Debtors request~~GUC Trust requests

additional information or documentation by the Response Deadline, the Designated Claimant

shall serve additional information or documentation sufficient to permit the ~~Debtors~~GUC Trust

to evaluate the basis for the Designated Claim (with the exception, in the Designated Claimant's

sole discretion, of privileged information or information prepared expressly in contemplation of

litigation) so that it is received by the ~~Debtors~~GUC Trust within fifteen (15) days after such

request.  If the Designated Claimant timely responds, the ~~Debtors~~GUC Trust shall have fifteen

(15) days to provide an amended Response Statement, which may include a Revised Settlement

Offer as a counter to the Counteroffer.  If the ~~Debtors do~~GUC Trust does not provide an

amended Response Statement within this period, or if the Designated Claimant fails to provide

the requested information or documentation within the time allotted, the Designated Claim will

be submitted to nonbinding mediation.

6.      *Offer Exchange Termination Date*

Upon mutual written consent, the ~~Debtors~~GUC Trust and a Designated Claimant may exchange additional Revised Settlement Offers and Counteroffers for up to twenty (20) days after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the applicable timeframes provided for in Section II.A.5(c) above with respect to requesting, receiving, and responding to additional information or documentation.  Otherwise, the Offer Exchange Procedures shall conclude and terminate on the earliest of the following (the "**Offer Exchange Termination Date**"):  (i) the date upon which the Designated Claim automatically advances to nonbinding mediation under the provisions set forth above; (ii) the date that any settlement offer for a Designated Claim is accepted under the procedures set forth above; (iii) the date upon which a Response Statement was served by the ~~Debtors~~GUC Trust, if the ~~Debtors~~GUC Trust notified the Designated Claimant in their Response Statement of the ~~Debtors'~~GUC Trust's intention to proceed directly to nonbinding mediation; or (iv) such earlier date as is agreed upon by the ~~Debtors~~GUC Trust and the Designated Claimant.

7.      *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the ~~Debtors~~GUC Trust to settle a Designated Claim by mutual consent at any time.  All such settlements shall be subject to the terms of Section II.D.2 below.

**B.      Nonbinding Mediation ("Mediation")**

1.      *Mediation Notice*

If the ~~Debtors~~GUC Trust and the Designated Claimant do not settle the Designated Claim through the Offer Exchange Procedures, the ~~Debtors~~GUC Trust shall serve a notice of nonbinding mediation, with a copy of the Designated Claimant's applicable proof(s) of claim attached, on the Designated Claimant no later than thirty (30) days after the Offer

Exchange Termination Date, or as soon thereafter as is reasonably practicable.[3]  The Mediation

Notice will provide the Mediation Location (as such term is defined in Section II.B.2 below).

> 2.      *Location and Appointment of the Mediator*

AllExcept for Lower Tier Claims, Environmental Claims, and Patent Claims,

Mediations shall be conducted in either (i) New York, New York; (ii) Detroit, Michigan; (iii)

Dallas, Texas; (iv) San Francisco, California; or (v) Chicago, Illinois (collectively, the

"**Mediation Locations**"), unless the parties agree to a different location.  WithinExcept for

Mediations involving Lower Tier Claims, within ten (10) days after receiving the Mediation

Notice, the Designated Claimant shall choose one of the individuals identified in a list of

mediators annexed to the Mediation Notice and corresponding to the applicable Mediation

Location to conduct the mediation (the "**Mediator**").

> (a)      *Environmental Claims and Patent Claims*

Mediations of Environmental Claims shall be conducted in New York, New York,

unless the parties agree to a different location.  Mediations of Patent claims shall be conducted in

Dallas, Texas, unless the parties agree to a different location.  For Environmental Claims and

Patent Claims, within ten (10) days after receiving the Mediation Notice, the Designated

Claimant shall choose the Mediator corresponding to the applicable Mediation Location to

conduct the mediation.

> (b)      *Lower Tier Claims*

---

[3] The formforms of the Mediation Notice isfor Designated Claims and Designated Claims that are Lower Tier Claims are attached hereto as **Annex 2** and incorporated herein by reference.  The Debtors anticipate as **Annex 2** and **Annex 3**, respectively.  The GUC Trust anticipates that the Mediation Notice will be substantially in the form of Annex 2 or Annex 3, as applicable; however, the Debtors reserveGUC Trust reserves the right to modify the Mediation Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

Mediations of Lower Tier Claims shall be conducted at a location designated by the GUC Trust, which location shall be within 200 miles of (i) the address listed on proof of claim form for the Designated Claimant's most recently filed proof of claim, or (ii) the office of any counsel of record in these cases for the Designated Claimant holding a Lower Tier Claim, unless the parties agree to a different location.  The GUC Trust shall be permitted to select the Mediator from one of the individuals identified in the list of mediators annexed to the Mediation Notice to conduct the mediation.  The GUC Trust shall be permitted to select the Mediator without regard to the Mediation Location.

(c)    *Hardship*

To the maximum extent practicable, the scheduling and location of Mediation sessions shall give due consideration to the convenience of the parties and the proximity of the Designated Claimant.  Notwithstanding the foregoing, within ten (10) business days after service of the Mediation Notice, the Designated Claimant may file a motion with the Bankruptcy Court, on notice to the ~~Debtors~~GUC Trust and any previously appointed ~~mediator~~Mediator, for an order directing that the Mediation be conducted in a different location (a "**Hardship Motion**") if the Designated Claimant can demonstrate that traveling to any of the Mediation Locations presents a "substantial hardship;" *provided, however,* that (i) for each Mediation, except for Mediations of Lower Tier Claims, there shall be a rebuttable presumption that, absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant if the primary representative for ~~a~~such Designated Claimant resides in a location that is less than 750 miles from the Mediation Location or is less than a three-hour plane trip from the Mediation Location (based on typical commercial schedules for the fastest route, excluding any layovers); and (ii) for each Mediation of a Lower Tier Claim, there shall be a rebuttable presumption that, absent other

extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant holding a Lower Tier Claim if the primary representative for such Designated Claimant resides in a location that is within 200 miles or less of the Mediation Location.  While a Hardship Motion is pending, all deadlines under these ADR Procedures shall be suspended.  If a Hardship Motion is granted, any alternative location shall be determined by the Bankruptcy Court, taking into account the convenience of the parties and any agreements reached by the parties.  If the location of the Mediation is changed, (i) any Mediator appointed in the original location may be replaced by a Mediator in the new location (selected by mutual agreement of the parties or order of the Court), and (ii) the Bankruptcy Court may require that that the Debtors GUC Trust and the Designated Claimant share the costs of the Mediation.  Except for Mediations involving Lower Tier Claims, the new Mediator shall be selected by mutual agreement of the parties or by order of the Bankruptcy Court.  For mediations involving Lower Tier Claims, the new Mediator shall be selected by the GUC Trust.

       3.       *Mediation Rules*

The Mediation of Designated Claims shall be governed by the Mediator's regular procedures, except where expressly modified in the ADR Procedures.  In the event of any conflict, the ADR Procedures shall control.  Any party to a Mediation that fails to participate in good faith, on the terms described herein, may be subject to sanctions under Section II.F below.

       (a)       *Impartiality and Qualifications of Mediators*

A person appointed as a Mediator must (i) be an impartial, neutral person; (ii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iii) upon appointment, disclose any circumstances likely to create a reasonable inference of bias.  In the event a Mediator discloses circumstances likely to

create a reasonable inference of bias, such Mediator may be replaced at the written request of either the ~~Debtors~~GUC Trust or the Designated Claimant prior to the mediation.

(b)    *Fees and Costs for Mediation*

~~For~~Except for Mediations involving Lower Tier Claims, for each Mediation conducted under these ADR Procedures, the Mediator selected to preside will be entitled to charge the mediation fees disclosed to, and agreed to by, the ~~Debtors~~GUC Trust and the Designated Claimant.  Unless the parties have expressly agreed otherwise in writing (either prepetition or postpetition) as part of an agreement to submit Designated Claims to Mediation, the Mediator's fees and the costs of any Mediation shall be shared equally by the ~~Debtors~~GUC Trust and the Designated Claimant subject to the Sharing Cap (~~as such term is described in the ADR Order~~if applicable).

For each Mediation of a Lower Tier Claim conducted under these ADR Procedures, (i) the Mediator will be entitled to charge the mediation fees disclosed to, and agreed to by, the GUC Trust, and (ii) the Mediator's fees shall be borne by the GUC Trust.

For purposes of clarity, ~~these~~the costs referred to in this Section II.B.3.(b). shall not include travel expenses of the parties.  All Designated Claimants shall be solely responsible for all travel expenses to participate in the Mediation of a Designated Claim.

(c)    *Pre-Mediation Briefing*

Unless the parties agree otherwise, on or before thirty (30) days prior to the scheduled Mediation, the Designated Claimant shall serve on the Mediator and the ~~Debtors~~GUC Trust by electronic transmission or facsimile, at a minimum, and no later than by 6:00 p.m. (Eastern Time), a nonconfidential, pre-Mediation statement (the "**Opening Statement**") not to exceed fifteen (15) pages, excluding any attachments, setting forth all of the Designated

Claimant's claims and identifying each and every cause of action or theory the Designated

Claimant asserts, including a short and plain statement of the facts and law upon which the

Designated Claimant relies for recovery and maintains entitle it to relief.  The Designated

Claimant shall include, as exhibits or annexes to the Opening Statement, all documents (or

summaries of voluminous documents), affidavits, and other evidentiary materials on which the

Designated Claimant relies (with the exception, in the Designated Claimant's sole discretion, of

privileged information or information prepared expressly in contemplation of litigation).  Unless

the parties agree otherwise, on or before fifteen (15) days after service of the Opening Statement,

the ~~Debtors~~GUC Trust shall serve on the Mediator and the Designated Claimant, by electronic

transmission or facsimile, at a minimum, and no later than by 6:00 p.m. (Eastern Time), a

nonconfidential response statement (the "**Mediation Response Statement**") not to exceed

fifteen (15) pages, excluding attachments.  The Designated Claimant shall receive copies of all

exhibits to the Mediation Response Statement (with the exception, in the ~~Debtors'~~GUC Trust's

sole discretion, of privileged information or information prepared expressly in contemplation of

litigation).  ~~The Debtors shall provide copies of the Opening Statement and Mediation Response~~

~~Statement to counsel to the statutory committee of unsecured creditors (the "**Creditors'**~~

~~**Committee**") upon request, on a confidential basis.~~  At the Mediator's discretion and direction,

the parties may submit additional, confidential letters or statements to the Mediator, which shall

receive "Mediator's-eyes-only" treatment.

        (d)     *The Mediation Session*

        Unless otherwise agreed by the parties or as provided herein, the Mediation

session must occur no later than sixty (60) days after the date on which the Mediator is

appointed.  Unless otherwise agreed by the parties, the Mediation session is open only to the

parties and their respective counsel, and insurers (if any).

(e)    *Treatment of Mediation Settlement*

If the Mediation results in a settlement of the Designated Claim, such settlement

shall be subject to the terms of Section II.D below.  If the Mediation of a Designated Claim does

not result in a settlement of the Designated Claim, the Designated Claim shall be subject to

Section II.C or II.E below.

(f)    *Modification of the Mediation Procedures*

The Mediation procedures described herein may be modified upon the mutual

written consent of the ~~Debtors~~GUC Trust and the Designated Claimant.

**C.    Arbitration**

1.    *Binding Arbitration*

If the Designated Claimant and the ~~Debtors~~GUC Trust have consented to binding

arbitration under Section II.A.4 above, the Designated Claim will be arbitrated under the terms

of this Section II.C if such claim is not resolved in the Offer Exchange Procedures or Mediation.

If the Designated Claimant has expressly indicated that it does not consent to binding arbitration

in its response to the ADR Notice and has not subsequently opted in to binding arbitration

pursuant to Section II.A.4 above, the Designated Claim shall be resolved in the Bankruptcy

Court by the ~~Debtors'~~GUC Trust's commencement of proceedings pursuant to the Bankruptcy

Code, including without limitation, estimating or objecting to the Designated Claims.  Any party

to an arbitration that fails to participate in the arbitration in good faith, on the terms described

herein, may be subject to sanctions under Section II.F below.

2.    *Arbitration Notice*

To initiate the arbitration process for a Designated Claim, the ~~Debtors~~GUC Trust shall serve a notice of arbitration (the "**Arbitration Notice**"), with a copy of the Designated Claimant's applicable proof(s) of claim attached, on the Designated Claimant~~, the Creditors' Committee,~~ and the American Arbitration Association (the "**AAA**").[4]

3.  *Arbitration Rules and Procedures*

For Designated Claims that are not designated by the ~~Debtors~~GUC Trust as Complex Designated Claims (as defined below), the arbitration of all Designated Claims shall be conducted by a single arbitrator selected pursuant to the Commercial Arbitration Rules of the AAA.  The arbitrator shall be governed by the commercial arbitration rules of the AAA then in effect (the "**Arbitration Rules**"), except where the Arbitration Rules are expressly modified in the ADR Procedures.[5]

The ~~Debtors~~GUC Trust may, at ~~their~~its discretion, designate certain Designated Claims as complex designated claims (the "**Complex Designated Claims**").  The arbitration of all Complex Designated Claims shall be conducted by a panel of three arbitrators selected pursuant to the Commercial Arbitration Rules of the AAA.  The AAA Procedures for Large, Complex Commercial Disputes, in addition to the Commercial Rules of Arbitration, shall be used for arbitration of all Complex Designated Claims; *provided, however*, unless otherwise agreed by the parties, (i) the AAA shall appoint a panel of three (3) arbitrators, as provided in this Section and Section II.C.3(g) and (ii) the arbitration hearing on a Complex Designated Claim must be held no later than ninety (90) days after the date of appointment of the arbitrator(s), as

---

[4] The form of the Arbitration Notice is attached hereto as **Annex** ~~3~~4 and incorporated herein by reference.  The ~~Debtors anticipate~~GUC Trust anticipates that the Arbitration Notice will be substantially in the form of Annex ~~3~~4; however, the ~~Debtors reserve~~GUC Trust reserves the right to modify the Arbitration Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[5] In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall control.

provided in Section II.C.3(k).  Finally, the AAA Supplementary Rules for Class Arbitrations

shall also be used for all Class Claims, including those related to class certification and the Class

Determination Award (as defined in Rule 5 of the AAA Supplementary Rules for Class

Arbitrations), except that the arbitrator(s) shall not make a Clause Construction Award (as

defined in Rule 3 of the AAA Supplementary Rules for Class Arbitrations), or determine that a

Class Claim is not arbitrable for failure for each class member to have entered into an arbitration

agreement, the Court having specifically found that the ADR Procedures are applicable to Class

Claims notwithstanding the absence of a written agreement to arbitrate.[6]

(a)     *Governing Law*

The ADR Procedures, as they relate to arbitration proceedings, are governed by

the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. (the "**Federal Arbitration Act**"), and the

enforceability of an arbitration award is governed by Section 9 of the Federal Arbitration Act,

except as modified herein.

(b)     *Fees and Costs for Binding Arbitration; Sharing*

Unless the parties expressly have agreed otherwise in writing (either prepetition

or postpetition) as part of an agreement to submit claims to binding arbitration, the fees and costs

charged by the AAA and the arbitrator(s) shall be shared equally by the ~~Debtors~~GUC Trust and

the Designated Claimant; *provided, however*, that the arbitrator(s), in the arbitrator(s)' sole

discretion, may assess fees and costs against any party that the arbitrator(s) finds to be abusing or

unduly delaying the arbitration process.  The AAA shall submit invoices to the Designated

Claimants and the ~~Debtors~~GUC Trust according to the AAA's ordinary invoicing practices then

---

[6] In the event of any conflict between the AAA Supplementary Rules for Class Arbitrations and the ADR
Procedures, the ADR Procedures shall control.

in effect and subject to the AAA's ordinary payment terms then in effect.  For purposes of

clarity, these costs shall not include travel expenses of the parties.

      (c)    *Impartiality and Qualifications of Arbitrators*

      In designating the arbitrator in accordance with the procedures described below,

the AAA shall review the Arbitration Notice and the applicable Designated Claim.  Any person

appointed as an arbitrator must: (i) be an impartial, neutral person; (ii) be experienced (either

from past arbitrations or former employment) in the law that is the subject of the Designated

Claim; (iii) have no financial or personal interest in the proceedings or, except when otherwise

agreed by the parties, in any related matter; and (iv) upon appointment, disclose any

circumstances likely to create a reasonable inference of bias.  In the event that an arbitrator

discloses circumstances likely to create a reasonable inference of bias, such arbitrator may be

replaced by the AAA at the written request of the ~~Debtors~~GUC Trust or the Designated Claimant

within ten (10) days after such disclosure.

      (d)    *Time and Location of Arbitration Hearings*

      All arbitration hearings shall be conducted in either (i) New York, New York; (ii)

Detroit, Michigan; (iii) Dallas, Texas; or (iv) San Francisco, California (collectively, the

"**Arbitration Locations**").  To the maximum extent practicable, the scheduling and location of

arbitration hearings shall give due consideration to the proximity of the Designated Claimant and

to the convenience of the parties to the Arbitration Location.  Within ten (10) days of

appointment, the arbitrator(s) shall conduct a preliminary hearing pursuant to AAA Commercial

Arbitration Rule 20.  ~~Notwithstanding anything set forth herein or in the ADR Order to the~~

~~contrary, the Creditors' Committee, through its counsel, shall be permitted to participate in the~~

~~arbitration hearings to the same extent the Creditors' Committee would be permitted to~~

~~participate in claims litigation in the Bankruptcy Court pursuant to sections 502, 1103, 1109(b),~~

~~or any other applicable section of the Bankruptcy Code.~~

        (e)     *Appeals of Arbitration Awards*

        All arbitration awards shall be final and binding.  Other than the identities of the ~~applicable Debtors~~GUC Trust and Designated Claimants, the claims register number(s) assigned to the applicable arbitrated Designated Claims and the priority and dollar amounts of the Designated Claims as awarded in the arbitration awards, and except as otherwise required by law or agreed upon by the parties, all arbitration awards shall be treated as confidential.  No party shall have the right to appeal an arbitration award except pursuant to the appeal provisions of the Federal Arbitration Act, in which case any appeal must be to the United States District Court for the Southern District of New York.  Any appeal shall be governed by the Federal Arbitration Act.  The parties shall have ten (10) days from the date the arbitration award is served to appeal such award.  Failure to timely appeal shall result in the loss of any appeal rights.  Once any appeal has concluded or appellate rights are waived, the ~~Debtors~~GUC Trust shall update the claims docket in their chapter 11 cases accordingly and may file any notice of the liquidated amount of the Designated Claim that they deem necessary or appropriate for such purpose.

        (f)     *Modification of the Arbitration Procedures*

        The arbitration procedures described herein may be modified only upon the mutual consent of the ~~Debtors~~GUC Trust and the Designated Claimant.  ~~In addition, the Debtors shall consult with the Creditors' Committee prior to any modification to the arbitration procedures.~~

        (g)     *Appointment of the Arbitrator*

Within 5 five days of receiving the applicable Arbitration Notice, the AAA shall commence the following procedures for the appointment of arbitrator(s) (the "**Appointment of Arbitrator(s) Procedures**") by concurrently sending by electronic transmission or facsimile, to the ~~Debtors~~GUC Trust and the applicable Designated Claimant, an identical list of the names of at least eight (8) arbitrator candidates who meet the qualifications necessary for the matter.[7]  The ~~Debtors~~GUC Trust and the applicable Designated Claimant shall have seven (7) business days from the date this list is served to (i) strike two (2) names from the proposed list, (ii) list the remaining names in order of preference, and (iii) return the list to the AAA.  In the event that the Designated Claim is not a Complex Designated Claim, the AAA shall appoint a single arbitrator from the name(s) not stricken, giving consideration first to the preferences of the parties and second to scheduling and the availability of the arbitrator.  In the event that the Designated Claim is a Complex Designated Claim, the AAA shall appoint a panel of three (3) arbitrators from the name(s) not stricken, giving consideration first to the preferences of the parties and second to the scheduling and the availability of the arbitrators.  The AAA shall appoint the arbitrator(s) in accordance with the Appointment of Arbitrator(s) Procedures within ten (10) business days of its receipt of the applicable Arbitration Notice.

(h)      *Pre-Hearing Matters*

Unless otherwise agreed to by the parties, any pre-hearing issues, matters or disputes (other than with respect to merits issues) shall be presented to the arbitrator(s) telephonically (or by such other method agreed to by the arbitrator(s) and the parties) for expeditious, final, and binding resolution.  Upon a party's request, the arbitrator(s) may order

---

[7] If, for any reason, there are more than two parties to an arbitration, AAA shall identify a number of potential arbitrators equal to the number of parties, plus one, and the remaining selection proceedings shall otherwise govern. Affiliated entities are considered a single party for this purpose.  ~~The Creditors' Committee shall have no role in the arbitrator selection process.~~

that a substantive motion, such as a motion for summary judgment, be heard in person rather

than telephonically.  Any pre-hearing issue, matter, or dispute (other than with respect to merits

issues) must be presented to the arbitrator(s) not later than fifteen (15) days prior to the

arbitration hearing so as to permit the arbitrator(s) to review and rule upon the requests by

telephonic or electronic communication at least five days prior to the arbitration hearing.

     (i)    *Discovery*

     Unless the Designated Claim is a Complex Designated Claim, there shall be no

interrogatories.  Any requests for production of documents, electronically-stored information and

things ("**Document Requests**") shall be made in writing and shall be limited to no more than

twenty (20) requests, including discrete subparts.  Items requested in the Document Requests

must be produced within thirty (30) days after service of the Document Requests.  All documents

from discovery shall be confidential and shall not be (i) disclosed to any person or party not

participating in the arbitration proceeding or (ii) used for any purpose other than in connection

with the arbitration proceeding, except as provided herein.  ~~Notwithstanding the foregoing, upon~~

~~request of the Creditors' Committee, the Debtors shall provide to the Creditors' Committee, on a~~

~~confidential basis, copies of all discovery materials produced pursuant to this Section II.C.3(i)~~

~~for any particular Designated Claim.~~

     (j)    *Pre-Arbitration Statement*

     Unless otherwise agreed by the parties, on or before ten (10) days prior to the

scheduled arbitration hearing, each party shall submit to the arbitrator(s) and serve on the other

party or parties ~~and the Creditors' Committee~~ by overnight mail a pre-arbitration statement not to

exceed fifteen (15) pages, excluding any attachments.  ~~On or before ten (10) days prior to the~~

~~scheduled arbitration hearing, the Creditors' Committee may submit a short statement, not to~~

~~exceed five (5) pages, to the arbitrator(s) and serve such statement on the parties to the~~

~~arbitration.~~

(k)     *Arbitration Hearing*

Unless otherwise agreed by the parties and the arbitrator(s) or as provided herein,

the arbitration hearing on a Designated Claim must be held no later than ninety (90) days after

the date of appointment of the arbitrator(s).  The arbitration hearing is open only to the parties

and their respective counsel, insurers (if any), and witnesses.  ~~In addition, notwithstanding~~

~~anything else set forth herein or in the ADR Order to the contrary, the Creditors' Committee,~~

~~through its counsel, shall be permitted to attend and participate in the arbitration hearing to the~~

~~same extent the Creditors' Committee would be permitted to participate in claims litigation in the~~

~~Bankruptcy Court, pursuant to sections 502, 1103, 1109(b), and any other applicable section of~~

~~the Bankruptcy Code~~.  Nonparty witnesses shall be sequestered.  No posthearing briefs may be

submitted, unless the arbitrator(s) requests briefs, in which case such briefing shall be subject to

the issues, timing, and page limitations the arbitrator(s) imposes.  There shall be no reply briefs.

(l)     *Awards*

The arbitrator(s) shall issue a written, reasoned opinion and award (the

"**Arbitration Award**") within fourteen (14) days after the arbitration hearing.  The arbitrator(s)

shall not be compensated for more than eight hours of deliberations on and preparation of the

Arbitration Award for a Designated Claim.  Any Arbitration Award shall be an allowed general

unsecured nonpriority claim against the Debtor identified in the Arbitration Award (or if no

Debtor is identified in the Arbitration Award, the claim shall be deemed to be against the Debtor

identified in the Designated Claimant's applicable proof of claim included with the service of the

Arbitration Notice, unless otherwise ordered by the Bankruptcy Court).  The Arbitration Award

may not award a priority claim or otherwise determine the priority of the claim under the

Bankruptcy Code; *provided, however*, that, within thirty (30) days after the issuance of an

Arbitration Award, the Designated Claimant may seek relief from the Bankruptcy Court to

determine that some or all of the Arbitration Award is subject to treatment as a priority claim if

the Designated Claimant's applicable proof of claim filed as of the date of filing of the ADR

Order asserted an entitlement to such priority.  Further, no portion of a claim resulting from any

Arbitration Award shall be allowed to the extent that it consists of (a) punitive damages; (b)

interest, attorneys' fees, or other fees and costs, unless permissible under section 506(b) of the

Bankruptcy Code; (c) an award under any penalty rate or penalty provision of the type specified

in section 365(b)(2)(D) of the Bankruptcy Code; (d) amounts associated with obligations that are

subject to disallowance under section 502(b) of the Bankruptcy Code; (e) specific performance,

other compulsory injunctive relief, restrictive, restraining, or prohibitive injunctive relief or any

other form of equitable remedy; or (f) any relief not among the foregoing but otherwise

impermissible under applicable bankruptcy or nonbankruptcy law.  The ~~Debtors and the Creditors' Committee~~GUC Trust shall have the right within thirty (30) days after the issuance of

an Arbitration Awards to file a motion seeking relief from the Bankruptcy Court to enforce the

preceding sentence and obtain the disallowance of any portion of a claim included in an

Arbitration Award in violation of clauses (a) through (f) herein.  In all cases, the awarded claim

shall be subject to treatment in the Debtors' chapter 11 cases as set forth in ~~any order(s) confirming a chapter 11 plan or plans~~the Debtors' Second Amended Joint Chapter 11 Plan, or in

such other applicable order of the Bankruptcy Court.  The entry of an Arbitration Award shall

not grant the Designated Claimant any enforcement or collection rights.

     **D.**    **Settlements of Designated Claims**

        1.    *Settlements Permitted at Any Stage of the ADR Procedures*

Designated Claims may be settled by the ~~Debtors~~GUC Trust and a Designated Claimant through the Offer Exchange Procedures, Mediation, or by agreement at any point during these ADR Procedures.  Nothing herein shall prevent the parties from settling any claim at any time.

2.   *Settlement Authority and Approvals*

Nothing herein shall limit, expand, or otherwise modify the ~~Debtors'~~GUC Trust's authority to settle claims pursuant to orders of the Bankruptcy Court then in effect, including without limitation, the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and 9019(b) authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish Procedures for Settling Certain Claims, entered on October 6, 2006 [Docket No. 4180] (the "**Claims Procedures and Settlement Order**") and ~~any future order(s) confirming a chapter 11 plan or plans in these cases~~the Bankruptcy Court's March 28, 2011 Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(b) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of  Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9941) (the "**Confirmation Order**") confirming the Plan (collectively, the "**Settlement Authority Orders**").  Any settlements of claims pursuant to, or in connection with, the ADR Procedures shall be approved consistent with the terms, conditions, and limitations set forth in the applicable Settlement Authority Orders.  The ~~Debtors~~GUC Trust shall be requested to seek Bankruptcy Court approval of such settlements only to the extent that (a) such approval is required by the terms of the Settlement Authority Orders or (b) the settlement falls outside of the authority granted in the Settlement Authority Orders and otherwise requires Bankruptcy Court approval.

E.    **Failure to Resolve a Designated Claim Through ADR Procedures**

1.    *Litigation Generally*

Designated Claims not resolved through the ADR Procedures shall proceed to litigation for resolution.  Notwithstanding anything herein, the ~~Debtors~~GUC Trust may terminate the ADR Procedures at any time prior to serving the Arbitration Notice and proceed to litigation of the Designated Claim as set forth herein.

2.    *Litigation in the Bankruptcy Court*

If the Designated Claim is not resolved by the ADR Procedures (an "**Unresolved Designated Claim**"), litigation of such Unresolved Designated Claim shall proceed in the Bankruptcy Court by the commencement by the ~~Debtors~~GUC Trust of proceedings consistent with the terms, conditions, and limitations set forth in the Claims Procedures Order or other applicable procedures or orders, as soon as reasonably practicable upon completion of the ADR Procedures for the Unresolved Designated Claim, to the extent that (a) the Bankruptcy Court has subject matter jurisdiction over the Unresolved Designated Claim and (b) the Unresolved Designated Claim is not subject to the abstention provisions of 28 U.S.C. § 1334(c).  Disputes over the subject matter jurisdiction of the Bankruptcy Court or the application of abstention shall be determined by the Bankruptcy Court.

3.    *Litigation in Other Courts*

If the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy Court as a result of abstention or because of lack of or limitations upon subject matter jurisdiction (as determined by the Bankruptcy Court), then, subject to the terms and conditions set forth in Section II.E.4 below, litigation of such Unresolved Designated Claim shall proceed (a) if the Unresolved Designated Claim was pending in a nonbankruptcy forum on the date the Debtors commenced their respective voluntary chapter 11 cases (the "**Commencement Date**"),

then (i) in such nonbankruptcy forum, subject to the ~~Debtors'~~GUC Trust's right to seek removal

or transfer of venue or (ii) in such other forum as determined by the Bankruptcy Court on request

of the ~~Debtors~~GUC Trust;[8] or (b) if the Unresolved Designated Claim was not pending in any

forum on the Commencement Date, then in the United States District Court for the Southern

District of New York or such other nonbankruptcy forum that, as applicable, (i) has personal

jurisdiction over the parties, (ii) has subject matter jurisdiction over the Unresolved Designated

Claim, (iii) has in rem jurisdiction over the property involved in the Unresolved Designated

Claim (if applicable) and (iv) is a proper venue.  If necessary, any disputes regarding the

applicability of this Section II.E.3 shall be determined by the Bankruptcy Court.

    4.    *Modification of the Automatic Stay*

    If litigation of an Unresolved Designated Claim in a forum other than the

Bankruptcy Court is required as set forth in Section II.E.3 above, the ADR Order provides that

the automatic stay imposed by section 362 of the Bankruptcy Code, or ~~any subsequent~~the Plan

Injunction (collectively, the "**Stay**"), shall be modified solely to the extent necessary to permit

the liquidation of the amount of such Unresolved Designated Claim in the appropriate forum;

*provided, however*, that any such liquidated claim (a) shall be subject to treatment under the

~~applicable chapter 11 plan or plans confirmed in these cases~~Plan; and (b) shall be treated as a

general unsecured nonpriority claim against the Debtor identified in the judgment, unless

otherwise determined and ordered by the Bankruptcy Court.  No later than forty-five (45) days

after the Bankruptcy Court determines that the terms of Section II.E.3 above applies to an

Unresolved Designated Claim or at such other time as agreed to by the parties, the ~~Debtors~~GUC

---

[8] The ~~Debtors~~GUC Trust may elect to file a motion pursuant to 28 U.S.C. § 157(b)(5) to remove to the United States District Court for the Southern District of New York any Unresolved Designated Claim (along with any other unliquidated and litigation claims asserted against the Debtors) where the underlying claim is a personal injury claim or wrongful death claim.

Trust shall either (a) file a notice of such modification of the Stay (a "**Notice of Stay**

**Modification**") with the Bankruptcy Court and serve a copy of such notice on the Designated

Claimant ~~and the Creditors' Committee~~ or (b) file a motion seeking an order governing the terms

upon which the Stay will be modified (a "**Stay Motion**") and serve such Stay Motion on the

Designated Claimant ~~and the Creditors' Committee~~.  The Stay shall be modified solely to the

extent set forth above (a) as of the date that is forty-five (45) days after the filing of a Notice of

Stay Modification, unless the Bankruptcy Court orders otherwise or the parties otherwise agree;

or (b) as ordered by the Court in connection with a Stay Motion.  If the ~~Debtors fail~~GUC Trust

fails to file a Notice of Stay Modification or a Stay Motion for any reason with respect to an

Unresolved Designated Claim, the Stay shall remain in effect with respect to such Unresolved

Designated Claim and the Designated Claimant may seek a determination of the Bankruptcy

Court regarding whether and on what terms the Stay must be modified to permit litigation in a

nonbankruptcy forum as set forth in Section II.E.3 above.

>        **F.**    **Failure to Comply with the ADR Procedures**

>                  If a Designated Claimant or the ~~Debtors fail~~GUC Trust fails to comply with the

ADR Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the

ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be

in violation of the ADR Order or, with respect to a Designated Claimant, an abandonment of or

failure to prosecute the Designated Claim, or both.  Upon such findings, the Bankruptcy Court

may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant

such other or further remedy deemed just and appropriate under the circumstances, including,

without limitation, awarding attorneys' fees, other fees, and costs to the other party.

## ANNEX 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                        :
In re                                   :        Chapter 11 Case No.
                                        :
MOTORS LIQUIDATION COMPANY, et al.,     :        09-50026 (REG)
       f/k/a General Motors Corp., et al.    :
                                        :
                 Debtors.               :        (Jointly Administered)
                                        :
-----------------------------------------------------------x
```

## ALTERNATIVE DISPUTE RESOLUTION NOTICE

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

By this notice (the "**ADR Notice**"), the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") designate the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases and submit the Designated Claim(s) to alternative dispute resolution, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010 (together, the "**ADR Order**").2012.  A complete copy of the ADR Procedures is enclosed for your reference.

The Debtors haveGUC Trust has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offeroffers the amounts set forth below for allowance of your

Designated Claim(s) as [a] prepetition general unsecured nonpriority claim(s) in full satisfaction of the Designated Claim(s) (the "**Settlement Offer**").

*You are required to return this ADR Notice with a Claimant's Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above*.

In addition, to the extent your most recent ~~proofs~~proof(s) of claim **[does]/[do]** not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct, and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Claimant's Response.

If you do not return this ADR Notice with the requested information and a Claimant's Response to the Settlement Offer to **[~~Debtor~~the GUC Trust's Representative]** so that it is received by the Deadline to Respond, your Designated ~~Claims~~Claim(s) will be subject to mandatory mediation as set forth in Section II.B of the ADR Procedures.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** IF YOUR DESIGNATED CLAIM(S) CANNOT BE SETTLED.  PLEASE MARK THE BOX BELOW INDICATING WHETHER YOU (i) CONSENT TO **BINDING ARBITRATION** OR (ii) **DO NOT** CONSENT TO (AND SEEK TO **OPT OUT** OF) **BINDING ARBITRATION**.  PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.  IN ADDITION, ANY ATTEMPT TO OPT OUT OF **BINDING ARBITRATION** IN THE RESPONSE TO THIS ADR NOTICE SHALL BE INEFFECTIVE IF YOU PREVIOUSLY HAVE CONSENTED IN WRITING (EITHER PREPETITION OR POSTPETITION) TO **BINDING ARBITRATION** AS A MEANS TO RESOLVE YOUR CLAIM(S).

Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**: The ~~Debtors offer~~GUC Trust offers you an allowed general unsecured, nonpriority claim in the amount of $_____ against **[Name of Debtor]** in full satisfaction of your Designated Claim(s), to be satisfied in accordance with ~~any plan or plans of reorganization confirmed and implemented in~~ the Debtors' ~~chapter 11 cases~~Second Amended Joint Chapter 11 Plan.

The only permitted response (the "**Claimant's Response**") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "**Counteroffer**").  Accordingly, please select your Claimant's Response below:

*Please indicate below if you accept or reject the ~~Debtors'~~GUC Trust's Settlement Offer by marking the appropriate box.  If you reject the Settlement Offer, please make your counteroffer where indicated.*

☐  I/we agree to and accept the terms of the Settlement Offer.

**or**

☐  I/we reject the Settlement Offer.  However, I/we will accept, and propose as a Counteroffer, the following allowed claim in full satisfaction of the Designated Claim(s), to be satisfied in accordance with ~~any plan or plans of reorganization confirmed and implemented in~~ the Debtors' ~~chapter 11 cases:~~ Second Amended Joint Chapter 11 Plan.

Debtor: _____
Amount:  $_____
Priority:  unsecured nonpriority claim (presumed) or ☐ other:*_____

*Note - If you choose a different priority, you must attach an explanation and any relevant documentation.*

Section II.A.3 of the ADR procedures sets forth the restrictions on Counteroffers. Your Counteroffer may not (a) improve the priority set forth in your most recent timely-filed proof of claim or amended proof of claim, or (b) exceed the lesser of the Claim Amount Cap (~~as defined in the ADR Order~~ if applicable) or the amount set forth in your most recent timely-filed proof of claim(s) or amended proof of claim(s).  You may not amend your proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority.

*Please indicate below whether you consent to binding arbitration for your Designated Claim(s) by marking the appropriate box.*

☐  I/ WE CONSENT TO BINDING ARBITRATION.

**or**

☐  I/WE DO NOT CONSENT TO BINDING ARBITRATION.

[Signature of the Designated Claimant's Authorized Representative]

By: _____
     Printed Name

## ANNEX 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
:            
**In re**                     :         **Chapter 11 Case No.**
:  
**MOTORS LIQUIDATION COMPANY**, *et al.*,     :         **09-50026 (REG)**
         **f/k/a General Motors Corp.,** *et al.*     :  
:  
              **Debtors.**          :         **(Jointly Administered)**
:  
-----------------------------------------------------------------x

### NOTICE OF NONBINDING MEDIATION

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

       By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation, (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ __, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010. The Debtors have _, 2012. The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties ~~agrees~~agree to a different location.  As further provided in the ADR Procedures, you have ten (10) days to choose one of the individuals identified on the list of mediators enclosed with this Mediation Notice to conduct the mediation.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.~~C~~B. of the ADR Procedures, concerning mediation.

[Signature of the ~~Debtors'~~GUC Trust's Authorized Person]

**ANNEX 3**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ---------------------------------------------------------------**x** | | |
| | **:** | |
| **In re** | **:** | **Chapter 11 Case No.** |
| | **:** | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | **:** | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | | |
| | **:** | |
| **Debtors.** | **:** | **(Jointly Administered)** |
| | **:** | |
| ---------------------------------------------------------------**x** | | |

**NOTICE OF NONBINDING MEDIATION**

Service Date:

Claimant(s):

Claimant(s)' Address:

Lower Tier Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties agree to a different location.  As further provided in the ADR Procedures, the GUC Trust shall choose one of the individuals identified on

the list of mediators enclosed with this Mediation Notice to conduct the mediation, and the mediator's fees shall be borne by the GUC Trust.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B. of the ADR Procedures, concerning mediation.

[Signature of the GUC Trust's Authorized Person]

**ANNEX ~~3~~4**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
**In re**                          :           **Chapter 11 Case No.**
                                                             :
**MOTORS LIQUIDATION COMPANY,** *et al.,*   :     **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*   :
                                                             :
                        **Debtors.**       :           **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

**NOTICE OF BINDING ARBITRATION**

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Arbitration Location:

        By this Arbitration Notice, the Motors Liquidation Company GUC Trust (the "GUC Trust"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to **binding arbitration**, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation, (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ – ___, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010. The Debtors have ___, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures and or through binding mediation.

        PLEASE NOTE THAT YOU HAVE CONSENTED (OR ARE DEEMED TO HAVE CONSENTED) TO BINDING ARBITRATION. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR PROCEDURES.

As provided for in the ADR Procedures, an arbitrator will be appointed through the American Arbitration Association ("**AAA**").  The ADR Procedures require you and the ~~Debtors~~GUC Trust to share the administrative fees and costs of arbitration charged by the AAA and the arbitrator.

A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.C, of the ADR Procedures, concerning binding arbitration.

[Signature of the ~~Debtors'~~GUC Trust's Authorized Person]

**Exhibit B**

**Schedule of Mediators**

**Dallas, Texas**

| Name | Experience |
|---|---|
| Burdin, Mary | Personal injury, products liability |
| Damuth, Brenda J. | Personal injury, products liability |
| Grissom, Jerry | Class actions, intellectual property, personal injury, products liability |
| Hale, Earl F. | Complex business disputes |
| Lopez, Hon. Carlos G. | Personal injury, products liability |
| Martin, Hon. Harlan | Complex business disputes, intellectual property, personal injury, products liability |
| Nolland, Christopher | Complex business disputes, class actions |
| Parker, Walter E. "Rip" | ~~Personal~~Intellectual property, personal injury, products liability, complex disputes |
| Pryor, Will | Personal injury, products liability, complex business disputes |
| Rubenstein, Kenneth J. | Personal injury, products liability, complex business disputes |
| Stoddard, Ross | Personal injury, products liability, complex business disputes |
| Young, James | Class actions, complex business disputes, insurance disputes, personal injury |

**New York, New York**

| Name | Experience |
|---|---|
| Carling, Francis | Products liability, personal injury |
| Cyganowski, Melanie | Complex business disputes |
| Ellerin, Hon. Betty | ~~Complex~~Environmental, complex business disputes, products liability, personal injury, class actions |
| Farber, Eugene I. | ~~Products~~Environmental, products liability |
| Feerick, Kevin | Complex business disputes, products liability |
| Gafni, Abraham J. | Complex business disputes, products liability, personal injury |
| Holtzman, Eric H. | Products liability, environmental |
| Hyman, Ms. Chris Stern | Insurance disputes |
| Leber, Bernice K. | Complex business disputes |
| Levin, Jack P. | Class actions, breach of warranty claims, products liability |
| McAllister, Michael T. | Personal injury, products liability |
| McLaughlin, Hon. Joseph T. | Complex business disputes, class actions |
| Ricchiuti, Joseph F. | Complex business disputes, products liability, personal injury, class actions |
| Silbermann, Hon. Jacqueline W. | Complex business disputes, products liability, personal injury, class actions |
| Woodin, Peter H. | Complex business disputes, environmental, products liability, personal injury, class actions |

**Detroit, Michigan**

| Name | Experience |
|---|---|
| Connor, Laurence D. | Complex business disputes |
| Harrison, Michael G. | Personal injury |
| Kaufman, Richard C. | Personal injury |
| Muth, Jon R. | Complex business disputes, class actions |
| Pappas, Edward H. | Complex business disputes, products liability |

**San ~~Fancisco~~Francisco, California**

| Name | Experience |
|---|---|
| Cahill, Hon. William J. | Complex business disputes, products liability, personal injury, class actions |
| Denver, Thomas | Products liability, personal injury |
| Infante, Hon. Edward A. | Complex business disputes |
| Komar, Hon. Jack | Products liability class actions, mass torts |
| Lynch, Hon. Eugene F. | Complex business disputes |
| McLean, William | Complex business disputes, products liability, personal injury |
| McPharlin, Linda Hendrix | Complex business disputes |
| Needham, Craig | Products liability, personal injury |
| Williams, John R. (Jack) | Products liability, personal injury |
| Wulff, Randall W. | Complex business disputes, products liability, class actions |

**Chicago, Illinois**

| Name | Experience |
|---|---|
| Anderson, Hon. Wayne R. | Complex business disputes, personal injury, products liability, class actions, mass torts |
| Cohn, Lynn | Personal injury, products liability, class actions |
| DiVito, Hon. Gino | Complex business disputes, products liability, personal injury |
| Dutenhaver, Katheryn M. | Complex business disputes, products liability, personal injury |
| Ginn, Bradley R. | Complex business disputes, products liability, personal injury |
| Neville, Hon. Richard E. | Complex business disputes, personal injury, products liability |
| Nudelman, Hon. Stuart A. | Complex business disputes, personal injury, products liability |
| Sullivan, Hon. James E. | Complex business disputes, personal injury, products liability, class actions |

**Exhibit C**

**Form of Capping Claim Letter**

[Date]

**BY E-MAIL AND FIRST CLASS MAIL**

Motors Liquidation Company
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn.: ADR Claims Team
claims@motorsliquidation.com

Re:    **In re Motors Liquidation Company,** *et al*. **("Debtors")**
**Case No. 09-50026 (REG)    Capping Proposal Letter**

Dear Motors Liquidation Company,

By this letter, I, the undersigned, am the below-referenced claimant, or an authorized signatory for the below-referenced claimant, and hereby submit my claim to the capping procedures established in the Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation (the "**ADR Procedures**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010.

Accordingly, I hereby propose to cap my claim at the amount specified below (the "**Claim Amount Cap**").

| **Claimant's Name** | **Proof of Claim No.** | **Original Filed Amount** | **Claim Amount Cap** |
|---|---|---|---|
|  |  |  |  |

I understand and agree that the Claim Amount Cap includes all damages and relief to which I believe I am entitled, including all interest, taxes, attorney's fees, other fees, and costs.  If the Claim Amount Cap is accepted by the Debtors, I understand that I am required to submit my claim to the ADR Procedures and acknowledge that my claim may be a "Designated Claim" as such term is used under the ADR Procedures.

Very truly yours,

By _____
Address _____
State _____

cc:    Pablo Falabella, Esq.
       Weil, Gotshal & Manges LLP

C:\NRPORTBL\US_ACTIVE\DECKERSA\43507773_7.DOC        3

767 Fifth Avenue, New York, NY 10153
pablo.falabella@weil.com

Document comparison by Workshare Professional on Monday, February 13, 2012
6:26:40 PM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://USDMS/US_ACTIVE/43507773/1 |
| Description | #43507773v1<US_ACTIVE> - MLC- AMENDED ADR Order (Exhibits A B C) |
| Document 2 ID | interwovenSite://USDMS/US_ACTIVE/43507773/7 |
| Description | #43507773v7<US_ACTIVE> - MLC- AMENDED ADR Order (Exhibits A B C) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 218 |
| Deletions | 202 |
| Moved from | 3 |
| Moved to | 3 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 426 |