**Hearing Date and Time: February 27, 2012, 9:45 A.M.**
**Response Deadline: February 21, 2012 (by consent)**

NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
Maureen F. Leary
Assistant Attorney General
Environmental Protection Bureau
The Capitol
Albany, New York 12224-0341
Telephone: (518) 474-7154
Facsimile: (518) 473-2534
*Counsel for the State of New York and*
*The New York State Department of Environmental Conservation*

**UNITED STATE BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | |
| **MOTORS LIQUIDATION COMPANY, et al.,** f/k/a General Motors Corp., et al., | Chapter 11 Case No. 09-50026(REG) |
| **Debtors.** | (Jointly Administered) |

**LIMITED OBJECTION OF THE STATE OF NEW YORK TO WILMINGTON TRUST COMPANY'S MOTION (I)(A) TO LIQUIDATE NEW GM SECURITIES FOR THE PURPOSE OF FUNDING FEES, COSTS, AND EXPENSES OF THE GUC AND AVOIDANCE ACTION TRUSTS, AND (I)(B) TO TRANSFER NEW GM SECURITIES TO THE AVOIDANCE ACTION TRUST FOR THE PURPOSE OF FUNDING FUTURE TAX LIABILITIES; AND (II) TO APPROVE AN AMENDMENT TO THE AVOIDANCE ACTION TRUST AGREEMENT**

                                      **ERIC T. SCHNEIDERMAN**
                                      **Attorney General of the State of New York**

**MAUREEN F. LEARY**
**Assistant Attorney General**

                    **Of Counsel**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ................................................................................................ 1

ARGUMENT .......................................................................................................................... 5

    The Relief Sought is Not Entirely Ripe........................................................................... 5

    Section 1142(b) Is Not the Appropriate Basis for the Relief Requested ........................ 6

    The Trust's Motion Has a Potential Discriminatory Impact on Trust Beneficiaries ....... 6

    The Trust's Motion Fails to Show That the Relief is in Beneficiaries' Best Interest ...... 7

    The Requested Price Fluctuation and Contingency Reserves are Unwarranted ............. 8

    The Need for Closer Scrutiny of Professional Fees and Expenses ................................. 9

    A Rule 6004(h) Waiver of Stay is Inappropriate ........................................................... 11

CONCLUSION ..................................................................................................................... 11

## TABLE OF AUTHORITIES

Page

CASES

*In re Adelphia Communications Corp.*,
    361 B.R. 337 (S.D.N.Y. 2007) ................................................................................. 7

*In re Joint Eastern and Southern District Asbestos Litigation*,
    878 F.Supp. 473 (E.D.N.Y. 1995) ........................................................................... 7

*In re Motors Liquidation Co.*,
    447 B.R. 198 (S.D.N.Y. 2011) ................................................................................. 7

*In re Resorts Int'l, Inc.*,
    145 B.R. 412 (Bankr. D.N.J. 1990) ....................................................................... 10

*In re River Village Assocs.*,
    61 B.R. 127 (Bankr. E.D.Pa. 1993) ....................................................................... 10

*In re Texaco Inc.*,
    84 B.R. 893 (Bankr. S.D.N.Y.),
    *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988) ................................................... 10

STATUTES

United States Code ("U.S.C.")
    11 U.S.C. § 105(a) ............................................................................................... 1,6
    11 U.S.C. § 363 ..................................................................................................... 11
    11 U.S.C. § 1123(a)(4) ............................................................................................ 7
    11 U.S.C. § 1129(a)(4) .......................................................................................... 10
    11 U.S.C. § 1142(b) ............................................................................................. 1,6

Rule 6004(h) ................................................................................................................. 11

MISCELLANEOUS

GUC Trust Agreement
    § 6.1 ......................................................................................................................... 8
    § 6.1(a)(i) ............................................................................................................. 8,9
    § 6.2(m) .................................................................................................................. 8

**PRELIMINARY STATEMENT**

1.  The State of New York submits this limited objection to the Motion of Wilmington Trust Company, as both GUC Trust Administrator and Avoidance Action Administrator, for an Order pursuant to 11 U.S.C. §§ 105(a) and 1142(b) authorizing it: (I)(A) To Liquidate New GM Securities for the Purpose of Funding Fees, Costs and Expenses of the GUC Trust and the Avoidance Action Trust; (I)(B) To Transfer New GM Securities to the Avoidance Action Trust to Fund Future Tax Liabilities; and (II) To Amend the Avoidance Action Trust Agreement. For the reasons set forth below, the motion should be denied in part as not ripe, and in part because it fails to show that the relief requested will benefit existing and future Trust beneficiaries and will not result in discrimination. New York does not object to the additional funding for both Trusts, but not to the extent requested and not without sufficient safeguards in place to assure that Trust Assets are expended reasonably.

**FACTUAL BACKGROUND**

2.  On or about October 29, 2009, New York filed timely proofs of claim related to the acts and omissions of General Motors Corporation's ("GM's") environmental contamination of real property in the State.[1] New York's claims have been the subject of not months, but years of on-and-off negotiations between counsel for the Debtors, Motors Liquidation Company ("MLC"), and the New York Attorney General's Office on behalf of the New York State Department of Environmental Conservation. These discussions commenced in August 2009 and resulted in some, but not all, of New York's claims being resolved (as set forth below).

3.  On or about December 7, 2011, MLC proposed an Amended Chapter 11 Plan containing an agreement which created a Trust for the payment of general unsecured creditors

---

[1] On or about February 28, 2011, New York filed timely amendments to certain claims.

("GUC Trust Agreement"), which consisted of New GM common stock and warrants. The Plan also created an Avoidance Action Trust to pursue certain claims on behalf of creditors. On February 3, 2011, the Creditor' Committee filed a revised GUC Trust Agreement containing the budget for 2011-2012 Trust operations that was approved by the United States Treasury ("Initial Budget").

4. The Plan and GUC Trust Agreement gave the Trust the authority, among other things, to object to and resolve claims, to make distributions to allowed claims, and to retain professionals. The Plan proposed to name Wilmington Trust Company ("WTC") as the GUC Trust Administrator. WTC was MLC's largest unsecured creditor and one of the leading members of the General Unsecured Creditors' Committee.

5. During the confirmation process, the States of New York and California, and others, asserted certain Plan Objections related to the absence of controls in the GUC Trust Agreement, specifically with respect to the lack of oversight of the fees and expenses of Trust professionals (New York's Limited Objection to Plan, ¶¶ 10-14) (Exhibit A). In response to these Plan Objections, WTC, as both Creditors' Committee representative and prospective GUC Trust Administrator, asserted:

> Finally, the fees and expenses of the GUC Trust, including *the fees and expenses of any professionals retained by the GUC Trust, will be tightly constrained by a detailed and inflexible budget* which will be initially approved by the U.S. Treasury, the Debtors and the Committee, and then reviewed by the U.S. Treasury and the GUC Trust Monitor on a quarterly basis. As a result of the robust review and approval processes encompassed within the agreement governing the GUC Trust (the "**GUC Trust Agreement**"), the Objectors' concerns regarding the insufficiency of controls should be assuaged.

(WTC Limited Response to Objections, ¶ 4) (emphasis added) (Exhibit B).

2

6. On March 3, 2011, the Court conducted a confirmation hearing on the Plan. On or about March 29, 2011, the Court entered an order confirming the Debtors' Plan of Reorganization, approving the GUC Trust Agreement and Initial Budget, and appointing WTC as the Trust Administrator. The Plan was confirmed by the Court – and voted upon by creditors - in reliance on the GUC Trust Agreement and the Initial Budget proffered at that time.

7. Thereafter, the GUC Trust retained some of MLC's professionals, including Weil Gotshal & Manges as one of the Trust's attorneys, and AP Services as the Trust operations consultant. On information and belief, Weil is in charge of the claim resolution process.

8. On or about April 21, 2011, the GUC Trust distributed approximately 75% of the stock and warrants it held under the Plan (150,000,000 million shares and 273.6 million warrants) to WTC, the GUC Trust Administrator. At the time of the April 21st distribution to WTC, the New GM common stock was trading at $30-31 per share (Exhibit C).

9. The GUC Trust made other distributions to Trust Beneficiaries on July 28, 2011, October 28, 2011, and January 13, 2012. New GM common stock was trading at varying amounts on each of those subsequent quarterly distribution dates: July 28, 2011: $28 per share; October 28, 2011: $26 per share; January 13, 2012: $24 per share.[2] Since the initial distribution to WTC, New GM common stock has not traded above approximately $28 per share and has been as low as $19 a share (Exhibit C).

10. On or about September 16, 2011, New York and MLC entered into a Stipulation to resolve some of the State's claims ("Resolved Claims"). On or about January 20 and 23, 2012, New York received distributions of New GM common stock and A and B warrants for the

---

[2] The historical price of New GM "A" and "B" warrants during this time period is not available.

3

Resolved Claims. At the time of the January 20, 2012 distribution to New York, the New GM common stock was trading at approximately $24-25 per share.

11. New York is a Trust beneficiary within the meaning of the GUC Trust motion, but continues to have approximately $179.8 million in unresolved unsecured claims ("Unresolved Claims") arising from GM's contamination of property in New York. The site names, proof of claim numbers, and claim amounts for New York's Unresolved Claims are set forth below:

| Site | POC # | Amended POC Am't. |
|---|---|---|
| American Axle | 51047/71023 | $12,341,502 |
| American Axle (Admin Claim - penalties) | 70988 | $832,989 |
| Brillo Landfill | 50639/71034 | $392,902 |
| Brillo Landfill (Admin Claim - penalties) | 70989 | $53,441 |
| IFG (GM - Fisher Guide) | 50587 | $3,299 |
| IFG (Old Ley Creek Channel) | 50587 | $13,190,162 |
| IFG (Lower Ley Creek) | 50587 | $64,099,111 |
| IFG/Onondaga Lake NRD | 50588 | $11,000,000 |
| Old Upper Mountain Road LF | 50827/71026 | $54,275,030 |
| Onondaga Lake NPL (Site-wide) | 50822 | $96,957 |
| Saginaw | 50635/71031 | $1,905,480 |
| Saginaw (Admin Claim - penalties) | 70987 | $163,431 |
| Salina Landfill | 50824 (REALM) | $18,510,361 |
| Grass River (NYSDOH) | 29772 | $5,096 |
| Total | | $176,869,761 |

Neither the GUC Trust nor MLC before its dissolution, have filed objections to New York's Unresolved Claims.

12. New York also filed timely administrative claims totaling $1 million arising from MLC's violation of State administrative consent orders and its failure to comply with environmental laws of the State post-petition. These Administrative Claims are set forth below:

| Site | POC # | Amended POC Am't. |
|---|---|---|
| American Axle (penalties) | 70988 | $832,989 |
| Brillo Landfill (penalties) | 70989 | $53,441 |
| Saginaw (penalties) | 70987 | $163,431 |
| Total | | $1,049,861 |

4

13. In mid-February 2012, New York learned for the first time from counsel for the GUC Trust (Weil Gotshal), that New York's Administrative Claims are being treated as general unsecured claims subject to satisfaction by the GUC Trust. Counsel provided no explanation for this unilateral change in treatment, of which New York had no notice or opportunity to be heard. Neither the GUC Trust nor MLC before its dissolution, filed objections to New York's Administrative Claims. On information and belief, the administrative claims of all MLC professionals have been paid in full.

14. The GUC Trust's motion states that there are 29.5 million shares of New GM common stock and 53.6 million warrants that currently remain available for distribution (Motion ¶ 7). The Trust acknowledges that, for purposes of paying administrative and reporting costs (including professional fees and expenses), it has already liquidated $5.75 million of New GM securities, and has "held back" from distribution to Trust beneficiaries approximately 1.2 million shares of common stock and 2.1 million "A" and "B" warrants (Motion ¶ 10-13). The Trust says that it needs more, however, and asks the Court to approve the sale and/or transfer of 554,993 additional shares of common stock and more than 1 million warrants (Motion ¶ 15).

## ARGUMENT

15. <u>The Relief Sought is Not Entirely Ripe</u>. To the extent that the GUC Trust seeks funding for future contingencies, such as the possible fees and expenses related to the No-Action Relief (Motion ¶¶ 51-52) and the potential future Avoidance Action Trust's tax liability (Motion ¶¶ 57-60), the motion is not ripe for adjudication. The Trust claims that if the SEC issues No-Action Relief, additional fees and expenses will be incurred. The Trust acknowledges that the SEC has not acted on the No-Action Relief yet (Motion ¶ 46: "assuming the GUC Trust receives the No-Action Relief…"). The Trust also asserts that there may be certain tax liabilities imposed

5

on Avoidance Action Trust.  The Trust concedes that this tax liability has not arisen yet (Motion ¶ 59: "Given the uncertainty as to whether the Avoidance Action Trust Tax Liability will arise…."). The GUC Trust's speculation about these future events does not justify the Court authorizing the liquidation of additional stock and warrants at this time.  If and when the No-Action Relief is issued, and the Avoidance Action Trust Tax Liability is established, this portion of the relief is not ripe for review.  Until then, the need to transfer or liquidate stock and warrants is based on speculation.

16. <u>Section 1142(b) Is Not Appropriate Basis for the Relief Requested</u>.  The GUC Trust motion essentially seeks to amend the Plan, Confirmation Order, GUC Trust Agreement, and Initial Budget, all of which were approved as part of the confirmation process.  The Trust seeks to revisit the funding provided in the Initial Budget, and requests additional funding that goes well beyond what creditors, the United States Treasury, and this Court believed was the Trust's necessary funding during the confirmation process.  Under the guise of the plan implementation provisions set forth in 11 U.S.C. § 1142(b), the GUC Trust attempts to obtain relief that is not specifically provided in the Plan or Confirmation Order.   Section 1142(b) addresses the Court ordering "the transfer of property dealt with by a confirmed plan."  The additional liquidation of New GM securities for the payment of professionals outside of the approved Initial Budget is not "dealt with" in the Plan or the Confirmation Order.  The Plan and Confirmation Order addressed the transfer of securities and cash to fund the Initial Budget only and to pay allowed claims.  Furthermore, Section 105(a) does not provide authority for the relief requested.  Section 105(a) itself does not create a separate substantive right to the relief the Trust seeks.

17. <u>The Motion Has a Potential Discriminatory Impact on Trust Beneficiaries</u>. If the relief requested in the GUC Trust motion is granted, the full and equitable recovery of both Trust Beneficiaries and creditors holding Unresolved Claims is unclear. The GUC Trust's motion does not address whether further liquidation of New GM stock will result in discrimination (1) between the first allowed claimant/distributee, WTC, and future Trust Beneficiaries now holding Unresolved Claims; or (2) among WTC and existing and future Trust beneficiaries. The GUC Trust's motion fails to make an affirmative showing that the relief requested will not result in disparate treatment.

18. Section 1123(a)(4) mandates that "[a] plan shall provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim agrees to a less favorable treatment of such particular claim or interest." Creditors here have never consented to disparate treatment under the Plan or GUC Trust Agreement. If claims are disputed, reasonable measures should be taken to ensure that same treatment is received by disputed claimants when their claims are finally allowed. *In re Motors Liquidation Co.,* 447 B.R. 198, 215 (S.D.N.Y. 2011). As the Court in *Adelphia Communications* recognized, the Code requires equal treatment of both claims and claimants. *In re Adelphia Communications Corp.*, 361 B.R. 337, 362-63 (S.D.N.Y. 2007) (*citing In re Joint Eastern and Southern District Asbestos Litigation,* 878 F.Supp. 473, 534 (E.D.N.Y. 1995)). The Trust has failed to show that existing and future Trust Beneficiaries will not be adversely impacted by the relief requested.

19. <u>The Trust Fails to Show That the Relief is in Beneficiaries' Best Interests</u>. The GUC Trust has the burden to show that the relief requested benefits Trust beneficiaries, including future beneficiaries. The Trust has not met this burden. The GUC Trust motion certainly will benefit Trust professionals by assuring continued payment of fees and expenses

(regardless of reasonableness), but whether adequate results have been or will be achieved by the professionals as a measure of effectiveness is simply not addressed. The absence of fee caps, and the non-disclosure of billing rates and retention amounts are further reason to require a showing of benefit to Trust Beneficiaries.

20. To justify the liquidation of additional GUC Trust assets, the Trust refers to the Trust Units, and asserts that additional Trust funding will "potentially" allow beneficiaries "to monetize their future Plan distributions immediately to the extent they wish to do so" (Motion ¶ 49). Whether this is any real benefit to Trust Beneficiaries is simply not clear. Notably, the GUC Trust never states that the relief granted in the motion will allow Beneficiaries to receive the Units sooner, or that lower administrative costs will result.

21. In attempting to justify the relief requested, the Trust asserts that paragraphs 15 and 31 of the Confirmation Order, and section 6.1 of the GUC Trust Agreement authorize the liquidation of New GM Securities (Motion ¶ 36). The Plan and GUC Trust require, however, that the fees and expenses paid by the Trust be "reasonable" (Plan § 6.2(m): GUC Trust "may retain and reasonably compensate counsel and other professionals…;" Trust Agreement § 6.1(a)(i): the Administrator may "pay reasonable costs and expenses of the GUC Trust that are incurred in connection with the administration…."). The Trust makes no showing that the fees and expenses, which depleted the Trust in just 9 months and were well beyond the Initial Budget, are in fact reasonable. Nor does the Trust show how it will assure the reasonableness of future fees and expenses.

22. The GUC Trust submits a proposed Revised Budget for approval (Motion Exhibit B). The complete lack of detail in the Revised Budget speaks for itself. The Revised Budget

8

gives neither the Court nor Trust Beneficiaries and creditors any inkling of how the Trust's money will be expended.

23.     The Price Fluctuation and Contingency Reserves are Unwarranted. The GUC Trust requests approximately 10% in excess of its anticipated funding needs as a "price fluctuation reserve" and a "contingency reserve" (Motion p. 10, fn. 8). The price fluctuation reserve is for the stated purpose of protecting the GUC Trust (and its professionals) "against any potential decrease in the value of the New GM stock and warrants between the date of the motion and the date on which the Trust liquidates them. Neither the Trust beneficiaries nor those holding Unresolved Claims have had the benefit of "price fluctuation protection" to protect against disparate treatment between initial recipients of distributions and later recipients. It is not warranted for the Trust either.

24.     The contingency reserve is for the stated purpose of providing "a further cushion" to the Trust if the Revised Trust Budget underestimates anticipated costs and expenses. The Revised Trust Budget submitted with the Trust's motion has such a sharp increase beyond the Initial Budget that it is difficult to understand how a cushion would be necessary. Even if it proved to be necessary, however, the Trust should be required to seek further relief from the Court at that time.

25.     The Need for Closer Scrutiny of Professional Fees and Expenses. Undoubtedly, the payment of professionals is necessary for administration of the Trust. But transparency within the Trust is now called for in light of the significant increase in the Budget. The GUC Trust does not disclose the details of the incurrence of fees and expenses that were so far in excess of the Initial Budget. Moreover, the GUC Trust fails to adequately explain how it intends to control professional fees and expenses in the future. Without additional measures in place to

9

control costs, the Trust beneficiaries remain unprotected against further depletion of Trust assets to pay professionals.

26.  As set forth above (¶ 5), in response to New York's Plan Objections that the GUC Trust lacks sufficient oversight and controls of professional fees to protect creditors, WTC asserted that "*the fees and expenses of any professionals retained by the GUC Trust, will be tightly constrained by a detailed and inflexible budget*" (WTC Response, ¶ 4) (emphasis added). This has not proven to be the case and additional controls are needed.

27.  Section 1129(a)(4) has been construed to require that all payments of professional fees which are made from estate assets be subject to review and approval by the court as to their reasonableness.  *See River Village Assocs.*, 161 B.R. 127, 141 (Bankr. E.D.Pa. 1993); *In re Resorts Int'l, Inc.,* 145 B.R. 412, 475 (Bankr. D.N.J. 1990); *In re Texaco Inc.*, 84 B.R. 893, 908 (Bankr. S.D.N.Y.), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988).  The payment of GUC Trust professionals clearly should be subject to this or a comparable requirement in light of the depletion of the Trust's Initial Budget (the so-called "burn rate") in such a short period of time and far short of the complete resolution of outstanding claims issues and the Avoidance Action.

28.  The GUC Trust has operated without Bankruptcy Court or United States Trustee oversight.  The reports of the Fee Examiner during the administration of these cases provide the best reason bringing greater oversight to the GUC Trust and its professionals, many of whom the Fee Examiner knows well.

29.  The State has no objection to the Trust being given authority to liquidate a limited amount of New GM securities than requested, but the Trust should not be given unfettered authority to continue spending without reasonable limits and oversight.  If the relief is granted to any extent, the fees and expenses of GUC Trust and Avoidance Action Trust professionals

10

should be subjected to the scrutiny of the United States Trustee (or an independent fee examiner) for reasonableness and compliance with the United States Trustee guidelines. Otherwise, the GUC Trust and its professionals will be rewarded for their undisciplined approach to the Initial Budget. Subsequent Budgets also may be subject to upward revision in the absence of greater control over the activities of the Trust and its professionals.

30. <u>A Rule 6004(h) Waiver of Stay is Inappropriate</u>. The GUC Trust asks the Court to issue a waiver of the 14-day stay of the effectiveness of an Order granting the relief (Motion ¶ 63). The Trust is not seeking relief under 11 U.S.C. § 363, and this is not the use or sale of property of the estate by the Debtors during administration of the case. The Trust's post-confirmation motion instead seeks to revise the provisions of the Plan and Confirmation Order by increasing the Initial Budget. Rule 6004(h) is therefore not applicable. Even assuming for the sake of argument that the Trust's motion can be construed to be related to the use and sale of property under Section 363, the Trust fails to justify the waiver of the stay. It states that the "price fluctuation" of the New GM securities and further delays may leave the Trusts "underfunded, thus necessitating additional reserves and potentially additionally [sic] sales." This rationale is belied by the Trust's request for 10% beyond its anticipated needs for the purpose of protecting against price fluctuations (Motion, p. 10, fn 8).

## CONCLUSION

For the foregoing reasons, New York respectfully requests that the motion be denied in part with respect to the relief requested that is not ripe; and should be granted in part only upon the Trust's showing that the relief is in the best interest of existing and future Trust beneficiaries, and that it will not result in disparate treatment among them. Finally, the relief granted should be conditioned upon the United States Trustee's or a fee examiner's review of fees and expenses

11

incurred and to be incurred by professionals of both the GUC and Avoidance Action Trusts, and a finding of reasonableness made.

Dated: February 21, 2012　　　　　　　　　　ERIC T. SCHNEIDERMAN
　　　　　　　　　　　　　　　　　　　　　　Attorney General of the State of New York

　　　　　　　　　　　　　　　BY:　_____
　　　　　　　　　　　　　　　　　　MAUREEN F. LEARY
　　　　　　　　　　　　　　　　　　Assistant Attorney General
　　　　　　　　　　　　　　　　　　The Capitol
　　　　　　　　　　　　　　　　　　Albany, New York 12224
　　　　　　　　　　　　　　　　　　Tel: (518) 474-7154
　　　　　　　　　　　　　　　　　　Maureen.Leary@ag.ny.gov

## CERTIFICATE OF SERVICE

       Maureen F. Leary, hereby certifies that on the 21st day of February, 2012 that she served a true copy of the States Limited Objection to Wilmington Trust's Motion as the GUC Trust Administrator and Avoidance Action Administrator Order authorizing Liquidation of Securities, Transfer of Securities, and Amendment to the Avoidance Action Trust, upon each of the parties set forth below by electronic or first class mail, postage prepaid, or by the Electronic Case Management Filing System maintained by the United States Bankruptcy Court for the Southern District of New York:

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY 10153
harvey.miller@weil.com
stephen.karotkin@weil.com
Joseph.Smolinsky@weil.com
*Attorneys for Debtors*

David R. Berz
Thomas Goslin
Weil Gotshal & Manges, LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005
david.berz@weil.com
thomas.goslin@weil.com
*Attorneys for General Motors*

Thomas Morrow
c/o Motors Liquidation Company
401 South Old Woodward Ave., Suite 370
Birmingham, Michigan 48009

Ted Stenger, Executive Vice President
Motors Liquidation Company
General Motors LLC
500 Renaissance Center, Suite 1400
Detroit, Michigan 48243
tstenger@alixpartners.com

Lawrence S. Buonomo
General Motors LLC
400 Renaissance Center
Detroit, Michigan 48265

John J. Rapisardi, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, New York 10281
john.rapisardi@cwt.com
*Attorney for the United States Department of Treasury*

Jeffrey Kehne
Hill & Kehne, LLC
2300 Wisconsin Avenue, NW
Suite 300
Washington, DC 20007
jkehne@hillkehne.com
*Attorney for the Environmental Response Trust Administrative Trustee*

Joseph Samarias
United States Department of Treasury
1500 Pennsylvania Avenue NW
Room 2312
Washington, D.C. 20220
Joseph.Samarias@do.treas.gov

Michael J. Edelman
Michael L. Schein
Vedder Price P.C.
1633 Broadway, 47th Floor
New York, NY 10019
mj_edelman@vedderprice.com
m_schein@vedderprice.com
*Attorneys for Export Development Canada*

13

Elliott P. Laws, Administrative Trustee
RACER Trust
2930 Ecourse Road
Ypsilanti, Michigan 48198
ELaws@racertrust.org
*Environmental Response Trust*
*Administrative Trustee*

Thomas Moers Mayer
Robert Schmidt
Lauren Macksound
Jennifer Sharret
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of The Americas
New York, NY 10036
tmayer@kramerlevin.com
rschmidt@kramerlevin.com
lmacksound@kramerlevin.com
jsharret@kramerlevin.com
*Attorneys for Official Committee of*
*Unsecured Creditors*

Tracy Hope Davis
Andrew D. Velez-Rivera
Brian Shoichi Masumoto
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004
andy.velez-rivera@usdoj.gov
Brian.Masumoto@usdoj.gov
*Attorneys for the United States Trustee*

David S. Jones
Natalie Kuehler
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chamber Street, 3rd Floor
New York, NY 10007
David.Jones6@usdoj.gov
Natalie.Kuehler@usdoj.gov
*Attorneys for the United States*

Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
ei@capdale.com
rct@capdale.com
*Attorneys for Asbestos Claimants' Comm.*

Trevor W. Swett III
Kevin C. Maclay
Caplin & Drysdale
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
tws@capdale.com
kcm@capdale.com
*Attorneys for Asbestos Claimants'*
*Committee*

Sander L. Esserman
Robert T. Brousseau
Stutzman, Bromberg, Esserman & Plifka
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
esserman@sbep-law.com
brousseau@sbep-law.com
*Attorneys for Future Claimants'*
*Representative*

Alan Tenenbaum
Patrick M. Casey
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
patrick.casey@usdoj.gov
alan.tenembaum@usdoj.gov
*Attorneys for the United States*

John J. Privitera
Jacob Lamme
McNamee, Lochner, Titus & Williams, P.C.
677 Broadway
Albany, NY 12207-2503
*Attorneys for the Saint Regis Mohawk Tribe*
privitera@mltw.com; lamme@mltw.com

14

Margarita Padilla
Deputy Attorney General
California Office of the Attorney General
P.O. Box 70550
1515 Clay Street
Oakland, CA 94615-0550
Margarita.Padilla@doj.ca.gov

Robert Kuehl
Deputy Attorney General
Delaware Office of the Attorney General
391 Lukens Drive
New Castle, DE 19720
Robert.Kuehl@state.de.us

James L. Morgan
State of Illinois Environmental Control
Environmental Bureau South
500 South Second
Springfield, IL 62706
jmorgan@atg.state.il.us

Timothy K. Junk
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South, 5th Fl.
302 West Washington Street
Indianapolis, IN 46204
Tim.Junk@atg.in.gov

Bruce H. Palin
Indiana Dept. of Environmental Mgmt.
MC 50-01, ICGB 1301
Indianapolis, IN 46204
bpalin@idem.in.gov

Robert Moser, Secretary
Kansas Dept. of Health and Environment
Curtis State Office Building
1000 SW Jackson
Topeka, KS 66612
rmoser@kdheks.gov

Herman Robinson, Exec. Counsel
Louisiana Dept. of Environmental Quality
P.O. Box 4312
Baton Rouge, LA 70821-4312
herman.robinson@la.gov

Christopher A. Ratcliff, Attorney
LA Department of Environmental Quality
P.O. Box 4302
602 N. 5th Street (70802)
Baton Rouge, Louisiana 70821-4302
Christopher.ratcliff@la.gov

Carol Iancu
Assistant Attorney General
Environmental Protection Division
Massachusetts Office of Attorney General
One Ashburton Place, 18th Floor
Boston, MA 02108
carol.iancu@state.ma.us

Celeste R. Gill, Assistant Attorney General
Env., Natural Resources, and Agriculture
State of Michigan Attorney General's Office
P.O. Box 30755
Lansing, MI 48909
gillc1@michigan.gov

John McManus, Chief Counsel
Jeff Klusmeir, Assistant Attorney General
Attorney General for the State of Missouri
Agriculture and Environmental Division
P.O. Box 899
Jefferson City, MO 65102
jack.mcmanus@ago.mo.gov
Jeff.klusmeier@ago.mo.gov

John Dickinson
Richard F. Engel
Deputy Attorney General
New Jersey Attorney General's Office
Richard J. Hughes Justice Complex
25 Market St, CN 093
Trenton, NJ 08625
John.Dickinson@dol.lps.state.nj.us
Richard.Engel@dol.lps.state.nj.us

15

Dale T. Vitale
Michael Idzkowski
Assistant Attorney General
Chief, Environmental Enforcement Section
30 E. Broad Street, 25th Floor
Columbus, OH 43215
dale.vitale@ohioattorneygeneral.gov
Michael.Idzkowski@OhioAttorneyGeneral.gov

David J. Raphael, Chief Counsel
Office of Chief Counsel
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA 17101-2301
draphael@pa.gov

Kerri L. Nicholas
Virginia Office of the Attorney General
900 East Main Street
Richmond, VA 23219
knicholas@oag.state.va.us

Anne C. Murphy,
Assistant Attorney General
Wisconsin Attorney General's Office
17 West Main Street
PO Box 7857
Madison, WI 53707-7857
Murphyac@doj.state.wi.us

Michael V. Blumenthal
CROWELL & MORNING LLP
590 Madison Avenue
New York, NY 10022
MBlumenthal@crowell.com
*Attorneys for the RACER Trust*

Matthew J. Williams
GIBSON, DUNN & CRUTHER
200 Park Avenue
New York, New York 10166-0193
mjwilliams@gibsondunn.com

Timothy E. Keck
Deputy Chief Counsel
Kansas Department of Health and Environment
1000 SW Jackson, Suite 560
Topeka, KS 66612-1371
785-296-1334
Tkeck@kdheks.gov

Matthew J. Williams
Gibson, Dunn, Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY 10166
*Attorneys for Wilmington Trust Company as GUC Trust Administrator and Avoidance Action Trust Administrator*
mjwilliams@gibsondunn.com

Anna Phillips
FTI Consulting
One Atlantic Center
1201 West Peachtree, Suite 500
Atlanta, GA 30309
anna.phillips@fticonsulting.com
*GUC Trust and Avoidance Action Trust Monitor*

Kirk P. Watson, Esq.
2301 Woodlawn Boulevard
Austin, Texas 78703
*Asbestos Trust Administrator*

Michael O. Hill,
Chief Operating Officer and
General Counsel
RACER Trust
2930 Ecourse Road
Ypsilanti, Michigan 48198
mhill@racertrust.org

_____
Maureen F. Leary
Assistant Attorney General

16