Hearing Date and Time: March 3, 2011 at 9:45 a.m.
Response Deadline: February 23, 2011 at 4:00 p.m. (by permission of Court)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**MOTORS LIQUIDATION COMPANY,** *et al.*<br>    (f/k/a General Motors Corp., *et al.*)<br><br>                                    **Debtors.** | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

**LIMITED RESPONSE OF WILMINGTON TRUST COMPANY AS
INDENTURE TRUSTEE TO THE OBJECTIONS OF (I) THE CALIFORNIA
DEPARTMENT OF TOXIC SUBSTANCES CONTROL, (II) THE
STATE OF NEW YORK, AND (III) THE TOWN OF SALINA
TO THE DEBTORS' AMENDED JOINT CHAPTER 11 PLAN**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York  10166
Telephone:  (212) 351-4000
Facsimile:  (212) 351-4035
Matthew J. Williams (MW-4081)
Keith R. Martorana (KM-2878)

ATTORNEYS FOR WILMINGTON TRUST COMPANY AS
INDENTURE TRUSTEE

February 23, 2011

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ............................................................................................................................ 4

LIMITED RESPONSE .................................................................................................................. 7

      A.    The Indenture Trustee Payment Provision Is Customary, Appropriate, and Supported by Applicable Law ........................................................................ 7

      B.    The Proposed Roles of WTC Do Not Present a Conflict of Interest ...................... 9

      C.    The Proposed Oversight and Control Over the GUC Trust Is Sufficient ............ 11

CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

### Cases

*In re Adelphia Commc'n Corp.*,
  441 B.R. 6 (Bankr. S.D.N.Y. 2010) ................................................................................. 8

*In re Delta Air Lines, Inc.*,
  Case No. 05-17923 (Bankr. S.D.N.Y.) ............................................................................ 9

*In re General Growth Properties, Inc.*,
  Case No. 09-11977 (Bankr. S.D.N.Y.) ............................................................................ 9

*In re Loehmann's Holdings, Inc.*,
  Case No. 10-16077 (Bankr. S.D.N.Y.) ............................................................................ 9

*In re Lyondell Chemical Company*,
  Case No. 09-10023 (Bankr. S.D.N.Y.) ............................................................................ 8

*In re Trans World Airlines, Inc.*,
  185 B.R. 302 (Bankr. E.D. Mo. 1995) ............................................................................. 8

### Statutes

11 U.S.C. § 1123 ..................................................................................................................... 8

Wilmington Trust Company as Indenture Trustee ("**WTC**"), by and through its undersigned counsel hereby submits this Limited Response (the "**Response**") to the Objections of (i) the California Department of Toxic Substances Control ("**DTSC**") to Debtors' Joint Plan (the "**DTSC Objection**") [Docket No. 9199], (ii) the State of New York on behalf of the New York State Department of Environmental Conservation ("**New York State**") to Debtors' Motion for Entry of an Order Confirming Liquidation Plan and GUC Trust (the "**New York State Objection**") [Docket No. 9208], and (iii) the Town of Salina ("**Salina**," and together with DTSC and New York State, the "**Objectors**") to Amended Joint Chapter 11 Plan Proposed by Motors Liquidation Company f/k/a General Motors Corporation (the "**Salina Objection**," and together with the DTSC Objection and the New York State Objection, the "**Objections**") [Docket No. 9197]. In support of its Response, WTC represents as follows:[1]

## PRELIMINARY STATEMENT

1. The Objectors assert that the Debtors' Amended Joint Chapter 11 Plan dated December 7, 2010 (the "**Plan**") should not be confirmed because, *inter alia*, (i) the Plan improperly provides for the cash payment of the prepetition and post-petition fees and expenses of WTC as indenture trustee, (ii) WTC, as proposed trust administrator for the GUC Trust and AA Trust (each as defined below) is subject to disabling conflicts of interest that render the Plan

---

[1] WTC files this Response solely for the limited purpose of addressing the specific concerns raised by each of the Objectors with respect to (i) the appropriateness of the cash payment of WTC's prepetition and post-petition fees, (ii) the ability of WTC to serve as administrator of the trusts created under the Plan, and (iii) the sufficiency of the oversight and control over such trusts. WTC anticipates that the Debtors and/or the Committee (each as defined below) will respond to all objections concerning distribution mechanics, equality of distribution and other issues related to the Plan and the trusts created thereunder. In order to avoid duplication of effort, WTC limits its Response to only the issues raised which directly implicate WTC.

non-confirmable, and (iii) the GUC Trust lacks sufficient oversight and controls to protect unsecured creditors.

2.      Despite the Objectors' assertions to the contrary, the payment of prepetition and post-petition fees and expenses of indenture trustees is not only appropriate and supported by applicable law, it is also commonplace and customary in the chapter 11 plan context.  Case law interpreting Sections 1123(b)(6) and 1129(a)(4) of title 11 of the United States Code (the "**Bankruptcy Code**") has held that plan provisions which provide for the payment of the fees and expenses of specific creditors, including indenture trustees, are "appropriate" if such fees and expenses are subject to a reasonableness review and approval of the court.  With respect to the fees and expenses of WTC as indenture trustee, the Plan provides that such fees are to be paid only following a reasonableness review to be performed by every major debtor and creditor constituency, with the Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") retaining ultimate authority to hear any disputes regarding such reasonableness.  Moreover, as detailed further below, courts presiding over numerous cases in this and other Districts have confirmed chapter 11 plans containing similar (if not identical) provisions regarding the payment of the fees and expenses of indenture trustees in cash on the effective date of such plans.  As such, the Plan provisions which purport to pay WTC's fees and expenses, as indenture trustee, meet the requirements of Bankruptcy Code Sections 1123(b)(6) and 1129(a)(4) and should not pose an obstacle to confirmation of the Plan.

3.      Similarly, the arguments of the Objectors that the "multiple roles" proposed for WTC under the Plan result in disabling conflicts of interest are overstated and misguided.  If the Plan is confirmed in its current form, WTC will serve as trust administrator to the GUC Trust and the AA Trust after the effective date of the Plan (the "**Effective Date**").  Serving in these

2

two capacities cannot lead to a conflict of interest as the purpose of both of these trusts is the same—to distribute the remaining assets of Motors Liquidation Company ("**MLC**") to creditors of the MLC estate. While WTC currently serves as member and chair of the Official Committee of Unsecured Creditors (the "**Committee**"), it shall resign such posts upon dissolution of the Committee following the Effective Date. In addition, while WTC will continue to serve as indenture trustee after the Effective Date, the scope of its rights and obligations in such capacity will be stripped to all but the ministerial duties of disbursing cash, stock and warrants received as Plan distributions from each of the trusts following the Effective Date. As such, none of the roles to be filled by WTC under the Plan presents a conflict of interest that would prevent confirmation of the Plan.

4.  Finally, the argument of the Objectors that the GUC Trust lacks sufficient oversight and controls reflects a failure to acknowledge or understand the multiple layers of review and approval that form the foundation of the GUC Trust. Each of the Objectors asserts that the monitor for the GUC Trust (the "**GUC Trust Monitor**")—which is responsible for approving all actions of the GUC Trust other than the most ministerial distribution duties—lacks independence because it is selected by WTC. Such assertions are factually inaccurate; the Plan clearly provides that the GUC Trust Monitor be appointed by the Committee, an independent body which was appointed by the U.S. Trustee and represents the interests of all unsecured creditors. Moreover, and as detailed further below, Bankruptcy Court approval is required before the administrator for the GUC Trust can take any actions which might affect recoveries to unsecured creditors. In addition, WTC understands that the GUC Trust will be required to prepare and file with the Bankruptcy Court and with the U.S. Securities and Exchange Commission (the "**SEC**") annual and quarterly reports detailing the activities and financial status

3

of the GUC Trust. Such reports will be available to the public for its review, and will be audited on a yearly basis by an independent auditor. Finally, the fees and expenses of the GUC Trust, including the fees and expenses of any professionals retained by the GUC Trust, will be tightly constrained by a detailed and inflexible budget which will be initially approved by the U.S. Treasury, the Debtors and the Committee, and then reviewed by the U.S. Treasury and the GUC Trust Monitor on a quarterly basis. As a result of the robust review and approval processes encompassed within the agreement governing the GUC Trust (the "**GUC Trust Agreement**"), the Objectors' concerns regarding the insufficiency of controls should be assuaged.

## BACKGROUND

5.    WTC is the successor Indenture Trustee for approximately $23 billion in U.S. dollar denominated bonds, debentures and notes (collectively, the "**Bonds**," and the holders of claims arising from the Bonds, the "**Bondholders**") issued by MLC, formerly known as General Motors Corporation.[2]

6.    Beginning on June 1, 2009, the above-captioned debtors and debtors-in-possession (the "**Debtors**") filed petitions with the Bankruptcy Court under chapter 11 of the Bankruptcy Code, commencing these bankruptcy cases (the "**Cases**").

7.    On June 3, 2009, the Office of the United States Trustee appointed WTC and fourteen other members to the Committee.[3] WTC was thereafter selected chairperson of the Committee by the other Committee members (in such capacity, the "**Chairperson**").

---

[2] WTC is the successor Indenture Trustee to Citibank, N.A., under two indenture agreements with General Motors Corporation pursuant to which General Motors Corporation issued senior unsecured debt securities: (i) a Senior Indenture, dated as of December 7, 1995, as amended; and (ii) a Senior Indenture, dated as of November 15, 1990.

[3] Membership on the Committee has since been reduced to eight.

4

8. Throughout the course of these Cases, WTC has been actively involved in representing the interests of both Bondholders, in its capacity as indenture trustee, and general unsecured creditors, in its capacity as Chairperson of the Committee. Indeed, the New York State Objection recognizes the contributions of WTC throughout these cases, stating that "WTC has played a prominent role during the pendency of these cases as a member of the [Committee] and as Indenture Trustee for certain GM bondholders holding one of the largest allowed unsecured claims ($23 billion)." New York State Objection, ¶ 15.

9. On December 7, 2010, the Debtors filed their Plan [Docket No. 8015], which contained the proposed GUC Trust Agreement as an exhibit. *See* Plan Exh. D. Section 2.5 of the Plan provides for the payment, in cash on the Effective Date, of the reasonable prepetition and post-petition fees and expenses of each of the indenture trustees and fiscal and paying agents which have represented a debtholder constituency in these cases (the "**Indenture Trustee Payment Provision**"). Plan § 2.5. The Indenture Trustee Payment Provision would include payment of the reasonable fees and expenses of WTC, but is not exclusive to WTC. The Indenture Trustee Payment Provision requires WTC (together with the other indenture trustees and fiscal and paying agents) to submit documented invoices to the Debtors, the holders of claims arising under the Debtors' debtor-in-possession credit agreement (the "**DIP Lenders**"), and the Committee (with the exclusion of WTC and other indenture trustee Committee members) prior to payment of any fees and expenses. The Plan requires each of these constituencies to review the documented invoices for reasonableness. Any disputes concerning the reasonableness of the fees and expenses would be subject to the Bankruptcy Court's review and approval.

10. In addition, the Plan provides for the establishment of two trusts to provide distributions to creditors of the Debtors' estates: (i) the General Unsecured Creditors' Trust (the

5

"**GUC Trust**"), which will generally provide distributions of the common stock and warrants of General Motors Company ("**New GM**") currently held by MLC to unsecured creditors, and (ii) the Avoidance Action Trust (the "**AA Trust**," and together with the GUC Trust, the "**Trusts**"), which will provide distributions of the proceeds, if any, of the Committee's pending avoidance action lawsuit against JPMorgan Chase Bank, N.A. (and other banks and lending institutions),[4] to either holders of unsecured claims or the DIP Lenders.[5]

11. Recently, WTC has been selected to serve as proposed administrator for the GUC Trust (in such capacity, the "**GUC Trust Administrator**") and the AA Trust (in such capacity, the "**AA Trust Administrator**," and together with the GUC Trust Administrator, the "**Trust Administrators**"). The decision to select WTC as the Trust Administrators was made in part to capitalize on efficiencies associated with WTC's already significant knowledge and understanding of these Cases. By appointing WTC as the Trust Administrators, the Debtors avoid the costs inherent in educating a third-party trust administrator to the intricacies of these Cases. Moreover, as WTC has previously performed distributions to the Bondholders, the largest single creditor constituency in these Cases, there are mechanical synergies associated with WTC serving as administrator of the Trusts.

12. The need to maximize efficiencies and capitalize on synergies is not merely a cost saving measure in the context of these Cases. Administrative costs associated with the Trusts are

---

[4] Such action is styled as *Official Committee of Unsecured Creditors of Motors Liquidation Co. v. JPMorgan Chase Bank, N.A. et al.*, Case No. 09-50026, Adv. No. 09-00504 (Bankr. S.D.N.Y. July 31, 2009) (the "**Term Loan Avoidance Action**").

[5] A determination of the proper beneficiary of the AA Trust cannot be made at this time. Pursuant to this Court's order dated November 4, 2010 [Docket No. 7642], the identity of the proper AA Trust beneficiary can only be ascertained after resolution of the Term Loan Avoidance Action in favor of the plaintiffs therein.

6

funded solely by a wind-down loan from the U.S. Treasury which is subject to a tightly controlled approved budget. Any cost overruns will necessarily need to be funded from the assets that would otherwise be available for distribution to unsecured creditors. The selection of WTC as the Trust Administrators is intended to minimize the possibility of such a contingency coming to fruition.

13. The Plan provides for the continued existence of the indenture trustees and fiscal and paying agents (including WTC) after the Effective Date solely for the limited purposes of receiving the surrendered global notes evidencing the indebtedness and to assist in making distributions to the holders of such indebtedness under the Plan. *See* Plan §§ 5.10, 6.7. The Plan contemplates that the only distributions to be assisted by the indenture trustees shall be the initial distribution from the GUC Trust (all subsequent distributions will be made directly from the GUC Trust Administrator to the beneficial holders of unsecured claims) and the distributions, if any, to be made from the AA Trust to holders of debt claims. *See* Plan §§ 5.3(b). The Plan provides that the indenture trustees (including WTC) shall be entitled to compensation for any distributions made pursuant to the Plan and shall retain their charging lien on such distributions. *See* Plan § 6.7.

## LIMITED RESPONSE

**A.    The Indenture Trustee Payment Provision Is
Customary, Appropriate, and Supported by Applicable Law**

14. In their Objections, DTSC and New York State argue that the Indenture Trustee Payment Provision is inappropriate and is prohibited by the Bankruptcy Code. In support thereof, DTSC cites Section 726 and Section 503(b) of the Bankruptcy Code. Section 726 of the Bankruptcy Code is not applicable in the instant matter as these Cases are not brought pursuant to Chapter 7 of the Bankruptcy Code. Further, Section 503(b) of the Bankruptcy Code does not

7

apply because WTC is not seeking allowance of an administrative expense pursuant to Section 503(b) of the Bankruptcy Code.

15.     While Section 503(b) provides one method for reimbursement of fees and expenses of a creditor in cash and in full, it is not the only method available under the Bankruptcy Code for the payment of such fees and expenses.  *See In re Adelphia Commc'n Corp.*, 441 B.R. 6, 12 (Bankr. S.D.N.Y. 2010).  Section 1123(b)(6) of the Bankruptcy Code provides that a chapter 11 plan "may include any other appropriate provision not inconsistent with the applicable provisions of [the Bankruptcy Code]."  11 U.S.C. § 1123(b)(6).  This Court has interpreted Section 1123(b)(6) to provide a "broad grant of authority" for debtors to "allocate and distribute the value of debtors' estates in a broad array of means." *Adelphia*, 441 B.R. at 19.  In that regard, the *Adelphia* court found that a chapter 11 plan could provide for the cash payment of individual creditor's fees and expenses, without such creditor meeting the requirements of Section 503(b) of the Bankruptcy Code, as long as such fees and expenses were reasonable and were subject to the approval of the court pursuant to Section 1129(a)(4) of the Bankruptcy Code.  *Id.* at 19.  In so finding, the *Adelphia* court considered *In re Trans World Airlines, Inc.*, where the bankruptcy court for the Eastern District of Missouri specifically found that Section 1123(b)(6) provided the debtor in that case with authority to pay indenture trustee fees and expenses pursuant to a chapter 11 plan.  *Id.* at 17 (citing *In re Trans World Airlines, Inc.*, 185 B.R. 302, 313 (Bankr. E.D. Mo. 1995)).

16.     Moreover, the payment of the prepetition and post-petition indenture trustee fees pursuant to a plan is commonplace and customary in this and in other Districts.  *See, e.g.*, Third Amended Joint Chapter 11 Plan at §§ 13.1(b), 13.1(g), *In re Lyondell Chemical Company*, Case No. 09-10023 (Bankr. S.D.N.Y.) (No. 3990) (providing for the payment of reasonable indenture

8

trustee fees and expenses, including legal fees, as administrative expenses upon the submission of documented invoices to the debtors); Second Amended Joint Plan of Reorganization at Article IV(F)(3), *In re Loehmann's Holdings, Inc.*, Case No. 10-16077 (Bankr. S.D.N.Y.) (No. 396) (providing for the payment of reasonable and documented indenture trustee fees and expenses, including legal fees, in cash in full on the effective date following a review performed by the debtors and the creditors' committee); Joint Plan of Reorganization at Section 6.6 (Exhibit A), *In re Delta Air Lines, Inc.*, Case No. 05-17923 (Bankr. S.D.N.Y.) (No. 5998) (providing for the payment of the reasonable fees and expenses, including counsel fees, of the indenture trustees); Order Confirming the Third Amended Joint Plan of Reorganization at Section 2.6 (Exhibit B), *In re General Growth Properties, Inc.*, Case No. 09-11977 (Bankr. S.D.N.Y.) (No. 6240) (providing for the payment of the reasonable fees and expenses, including counsel fees, of the indenture trustees without application to the court).

17. In the instant case, Section 1123(b)(6) provides ample authority for the Indenture Trustee Payment Provision. The payment of fees and expenses is expressly conditioned on a reasonableness review by every major debtor and creditor constituency appearing in these Cases. If any dispute arises with respect to the reasonableness of WTC's fees and expenses (or the fees and expenses of any other indenture trustee or fiscal and paying agent), such fees and expenses will be subject to the review of the Bankruptcy Court. As such, the requirements of Section 1129(a)(4) of the Bankruptcy Code are met, and the DTSC and New York State Objections with respect to the Indenture Trustee Payment Provision should be overruled.

**B.      The Proposed Roles of WTC Do Not Present a Conflict of Interest**

18. Each of the Objectors attempts to muddy the waters with respect to potential conflicts of interest by identifying, in sum, six separate "roles" for WTC following the Effective

9

Date.[6]  In point of fact, after accounting for duplication by the Objectors, WTC will serve in three separate roles after the Effective Date:  (i) GUC Trust Administrator, (ii) AA Trust Administrator, and (iii) indenture trustee for the prepetition Bonds.[7]

19.     The roles of GUC Trust Administrator and AA Trust Administrator are closely related as both positions require the respective Trust Administrator to maximize the assets of the Debtors' estates (through the claims resolution process and through prosecution of the Term Loan Avoidance Action, respectively) and to distribute such assets to the Debtors' creditor base. While the DTSC and New York State Objections accurately indicate that the beneficiaries to the AA Trust have not yet been determined, such lack of identity is of no moment.  The ultimate beneficiaries to the AA Trust will be either the DIP Lenders or the unsecured creditors, not both. At no point will the AA Trust Administrator be required to choose between two masters—rather, once the proper beneficiary is identified, the AA Trust Administrator will act only in the best interests of that beneficiary, and no other.

20.     While WTC will continue to act as indenture trustee for the Bonds, this too fails to create a conflict of interest.  As stated above, following the Effective Date the indentures which govern the rights and duties of WTC as indenture trustee for the Bonds will be cancelled for all purposes other than the ministerial duties of disbursing cash, stock and warrants received

---

[6] The cited roles include (i) GUC Trust Administrator, (ii) AA Trust Administrator, (iii) successor-in-interest Indenture Trustee to Citibank, N.A., (iv) WTC's post and pre-petition roles as indenture trustee, (v) WTC's responsibility to file statements of transfers and tax returns for the GUC Trust, and (vi) unsecured creditor of the MLC estate.

[7] "Roles" (iii) and (iv) above both relate to WTC's role as indenture trustee for the Bonds, "role" (v) above is merely a reference to a duty that must be performed by the GUC Trust Administrator in administering the GUC Trust assets, and "role" (vi) above (status as an unsecured creditor) will be eliminated upon the payment of the outstanding fees and expenses of WTC, as indenture trustee, pursuant to the Indenture Trustee Payment Provision.

10

as Plan distributions from each of the Trusts. Plan § 6.7. As such, the indenture trustees (including WTC) will serve merely as vehicles to assist the Trust Administrators in performing their distribution obligations under the respective Trusts. In this regard, the duties and obligations of WTC as Trust Administrators and WTC as indenture trustee for the Bonds are completely aligned.

21. In a final attempt to fabricate a potential conflict, New York State argues that WTC, as a pre-Effective Date representative of holders of allowed claims (the Bonds) will be incentivized to diligently reduce disputed claims so as to increase the recovery to holders of allowed claims (including the Bonds). This argument fails to recognize that the primary purpose of the GUC Trust is to reduce disputed claims for the purposes of increasing recoveries to holders of allowed claims. This primary function does not present a conflict—the sole beneficiaries of the GUC Trust are holders of allowed claims; the GUC Trust Administrator has no duties to holders of disputed claims unless and until they become allowed claims. This truism would apply to any party serving as GUC Trust Administrator, whether or not they previously (or simultaneously) represented certain holders of allowed claims.

22. For each of the reasons outlined above, the roles proposed by the Plan to be filled by WTC post-Effective Date do not present an actual or potential conflict of interest. As such, the Objections should be overruled.

C.   **The Proposed Oversight and Control Over the GUC Trust Is Sufficient**

23. In its Objection, New York State argues that the Plan should not be confirmed because there is insufficient oversight and control over the GUC Trust and the GUC Trust Administrator. In contrast to this assertion, the Plan and the GUC Trust Agreement contemplate

11

several layers of review for all actions taken by the GUC Trust and GUC Trust Administrator other than those actions associated with purely ministerial duties.

24. As an initial matter, the Plan contemplates that a GUC Trust Monitor will be appointed to review and approve all non-ministerial actions taken by the GUC Trust and the GUC Trust Administrator. *See, e.g.*, GUC Trust Agreement § 3.4(c) (approval necessary to remove Units from DTC); § 5.4(d) (approval necessary to withhold distributions of excess assets upon discovery of previously unknown general unsecured claims); § 5.7(a) (approval necessary to sell expiring warrants in a privately negotiated sale); § 6.2 (GUC Trust Monitor to review all reports prepared by the GUC Trust); § 6.3 (GUC Trust Monitor to review and approve all annual budgets and updates thereto); § 11.3 (approval necessary to resolve disputed claims over $10 million, decisions to retain or terminate employment of trust professionals, incur costs over budget; and amend the GUC Trust Agreement).

25. The Objectors attempt to characterize the review and approval of the GUC Trust Monitor as lacking independence because the GUC Trust Monitor is appointed by the GUC Trust Administrator. Such assertion is simply inaccurate—the Plan provides that the Committee, with the consent of the Debtors, is tasked with selecting the GUC Trust Monitor. *See* Plan § 1.86. As noted above, the Committee, whose members were appointed by the U.S. Trustee, serves as an independent representative of and fiduciary to all unsecured creditors of the Debtors' estates.

26. The GUC Trust Agreement further contemplates that a second layer of review and approval, to be performed by the Bankruptcy Court, will be necessary prior to the consummation of any actions of the GUC Trust outside of the ordinary course of its business. *See, e.g.*, GUC Trust Agreement § 2.6(c) (approval necessary to make payments to trust professionals in excess of budget without DIP Lender consent); § 4.1 (approval necessary to extend the duration of the

12

GUC Trust); § 5.10 (approval necessary to make distributions other than as contemplated by the GUC Trust Agreement); § 6.1(b) (approval necessary to sell or use distributable assets to cover administrative costs); § 6.2 (all reports prepared by the GUC Trust to be filed with the Bankruptcy Court).

27. The GUC Trust Agreement additionally provides for a third layer of review to be performed by any interested member of the public. Section 6.2 of the GUC Trust Agreement provides for the preparation of quarterly reports detailing the activities of the GUC Trust and the current financial status of the GUC Trust (including balance sheets, income statements, and statements of cash flows). The GUC Trust Agreement provides that such reports will be filed with the Bankruptcy Court and posted to a generally accessible website. GUC Trust Agreement § 6.2. In addition, WTC anticipates that a forthcoming revision to the GUC Trust Agreement will provide for certain modified reporting to the SEC. While the specifics of such reporting are currently under discussion with the SEC,[8] it is contemplated that the obligations shall include the filing of modified Form 10-Ks, Form 10-Qs, and Form 8-Ks. Contrary to the assertions of the State of New York, the GUC Trust Agreement provides that the financial statements of the GUC Trust will be audited by a third-party independent public auditor on an annual basis. GUC Trust Agreement § 6.2(b).

28. A fourth layer of review is vested in the beneficiaries of the GUC Trust, who have the authority to remove the GUC Trust Administrator and/or the GUC Trust Monitor at any time. Pursuant to Article XII of the GUC Trust Agreement, the holders of a majority of the beneficial

---

[8] Detailed discussions with respect to proposed reporting obligations have been ongoing for months among the SEC, the Debtors, WTC and the Committee.

13

interests in the GUC Trust may remove the GUC Trust Administrator or the GUC Trust Monitor for good cause shown. GUC Trust Agreement, Article XII.

29. In addition, the GUC Trust Agreement contemplates strict controls over the expenses incurred by the GUC Trust, including the fees and expenses of professionals retained by the GUC Trust. The GUC Trust Agreement provides for the establishment of an annual budget (the "**Budget**") which must be approved, initially, by the Debtors, the U.S. Treasury and the Committee. *See* Plan § 1.31; GUC Trust Agreement § 6.3. The Budget will be updated and reviewed on a quarterly basis by the GUC Trust Monitor and the DIP Lenders. GUC Trust Agreement § 6.3. In order to ensure compliance with the Budget, the GUC Trust Agreement requires that the GUC Trust Administrator "hold back" 10% of the overall billings of each of the professionals retained by the GUC Trust on a monthly basis. GUC Trust Agreement § 2.6(c). A failure to comply with the Budget will result in the delayed payment of the "hold-back" of any offending trust professional until the dissolution of the GUC Trust or the termination of the employment of such professional.

30. For each of the reasons outlined above, it is apparent that the Plan and the GUC Trust Agreement contain sufficient oversight and controls over the GUC Trust and the GUC Trust Administrator. As such, the Objections should be overruled.

14

**CONCLUSION**

WHEREFORE, WTC respectfully requests that the Objections be overruled with respect to the issues raised herein, and that the Court grant such other and further relief as is just.

Dated: New York, New York
February 23, 2011

                                        Respectfully submitted,

                                        GIBSON, DUNN & CRUTCHER LLP

                                        /s/ Matthew J. Williams
                                        Matthew J. Williams (MW-4081)
                                        Keith Martorana (KM-2878)
                                        200 Park Avenue, 47th Floor
                                        New York, New York 10166
                                        Telephone: (212) 351-4000
                                        Facsimile: (212) 351-4035

                                        ATTORNEYS FOR WILMINGTON TRUST COMPANY
                                        AS INDENTURE TRUSTEE

15