# **REPLY EXHIBIT C**

[New York State Objection Chart]

## Response to Certain Arguments of State of New York

| New York State Objection | Response |
|---|---|
| The relief sought with respect to the transfer of $17 million of New GM Securities to the Avoidance Action Trust to cover a potential future tax liability is not ripe. New York State Objection ¶¶ 15-16. | The request for this relief has been withdrawn without prejudice. *See* Reply ¶ 10, n. 7. |
| The relief sought with respect to the sale of New GM Securities to fund fees and expenses related to the No-Action Relief is not ripe. New York State Objection ¶¶ 15-16. | The request to sell New GM Securities to fund "future projected" Reporting and Transfer Costs is a right specifically afforded to the GUC Trust Administrator by the GUC Trust Agreement. *See* GUC Trust Agreement § 6.1(c). As such, the relief requested is currently ripe. As noted in the Motion, to the extent that any of the proceeds of the sales of New GM Securities related to the Reporting and Transfer Costs are deemed unnecessary, such funds will be distributed to holders of Trust Units (*see* Motion ¶ 46 n. 14). <br><br>A significant portion of what constitutes Reporting and Transfer Costs are unrelated to the No-Action Relief and will continue to be incurred regardless of whether the Staff grants the No-Action Relief (*see* Motion ¶¶ 10, 32, 44 – components of Reporting and Transfer Costs include the Creditors' Committee's ongoing litigation of the Term Loan Ownership Ruling and application to the IRS for a private letter ruling). As such, the relief requested with respect to these fees, costs and expenses are ripe for adjudication. <br><br>With respect to fees and costs directly associated with the No-Action Relief, certain of these costs have already been incurred in preparing for the potential grant of No-Action Relief, and are thus ripe for adjudication. *See* Motion ¶¶ 22, 32. With respect to anticipated future fees and costs directly associated with the No-Action Relief, expenses are and will continue to be incurred in connection with negotiations with the SEC and preparation of reporting obligations and additional internal controls. *See* Motion ¶ 45. |
| The Motion essentially seeks to amend the Plan, Confirmation Order, GUC Trust Agreement and Initial Budget. Under the guise of § 1142(b) of the | The Motion does not seek to amend the Plan, Confirmation Order, GUC Trust Agreement or Initial Budget. Rather, the Motion seeks to implement the procedures that were specifically approved by this Court for funding the current and projected cash needs of the Trusts in excess of the Initial Budget. *See* Confirmation Order ¶ 15. |

| New York State Objection | Response |
| --- | --- |
| Bankruptcy Code, the GUC Trust attempts to obtain relief that is not specifically provided in the Plan or Confirmation Order. New York State Objection ¶ 16. | Section 1142(b) of the Bankruptcy Code provides statutory support for the relief requested by the Motion because it permits the Court to authorize the "transfer of property dealt with by a confirmed plan, and to perform any other act… that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). The proposed sale of New GM Securities to fund the current and projected fees, costs and expenses of the Trusts is "dealt with" under the Plan,(the Confirmation Order expressly provides the GUC Trust Administrator with the authority to sell New GM Securities for such purposes:<br><br>The GUC Trust Agreement provides that the GUC Trust Administrator or Post-Effective Date MLC, as applicable, may sell New GM Securities that are held by the GUC Trust or Post-effective Date MLC, as applicable, under certain limited circumstances, such as to fund Reporting and Transfer Costs (as defined in the GUC Trust Agreement) and where the Wind-Down Budget Cash (as defined in the GUC Trust Agreement) is not sufficient to satisfy the current and projected fees, costs, and expenses of the GUC Trust.<br><br>Confirmation Order ¶ 15. |
| The request of authority to liquidate a 10% price fluctuation and contingency reserve, if necessary, is inappropriate because holders of Disputed General Unsecured Claims have not, and will not, benefit from the same protections against disparate treatment. New York State Objection ¶ 23-24. | There is no disparate treatment among holders of Allowed General Unsecured Claims. The GUC Trust distributes property, in the form of New GM Securities, on a *pro rata* basis among all holders of Allowed General Unsecured Claims regardless of when such claims are allowed. The value of such New GM Securities at the time of distribution is not relevant to the GUC Trust's stated purpose of making distributions of property pursuant to the Plan evenly among all holders of Allowed Class 3 General Unsecured Claims.<br><br>The concerns of New York State are informed by a basic misunderstanding of the relative rights of holders of claims versus Trust Professionals. Holders of Allowed General Unsecured Claims are entitled to receive property (New GM Securities) under the Plan, with no regard to its value. By contrast, Trust Professionals are entitled to receive fair and reasonable compensation for their services, priced at a specific value. The 10% price fluctuation/contingency reserve is not a "protection" for Trust Professionals – they will be entitled to the value of their services regardless of the New GM price fluctuations. Rather, the 10% price fluctuation is intended to avoid the need of the GUC Trust to file another motion seeking authority to liquidate New GM Securities in the near future in the event that the |

2

| New York State Objection | Response |
|---|---|
| | price of such New GM Securities decreased significantly between January 20, 2012 (the date the Motion was filed) and February 28, 2012 (the hearing date of the Motion). |
| Rule 6004(h) is inapplicable to the requested relief, and therefore a waiver of the stay is inappropriate. New York State Objection ¶ 30. | The Trust Administrator agrees that the stay imposed by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure is inapplicable. As such, the Trust Administrator should be permitted to exercise its authority pursuant to the proposed order immediately upon entry. However, the Trust Administrator requested the Rule 6004(h) waiver out of an abundance of caution in the event that any party in interest were to argue that the relief requested in the Motion constituted the "use or sale" of property of the estate.<br><br>Despite the existence of the 10% price fluctuation reserve, a waiver of the stay imposed by Rule 6004(h), in the event that such stay is applicable, is warranted. Any negative movement in the price of New GM Securities during any applicable stay will increase the likelihood that the Trust Administrator will need to utilize the 10% price fluctuation reserve. As discussed in the Motion, the Trust Administrator will only liquidate the 10% price fluctuation reserve to the extent necessary. Motion ¶ 14, n. 8. As such, a waiver of the stay imposed by Rule 6004(h), to the extent applicable, will benefit the holders of Allowed General Unsecured Claims. |

3