**Hearing Date and Time: March 1, 2012, 9:45 A.M.**
**Response Deadline: February 23, 2012**

NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
Maureen F. Leary
Assistant Attorney General
Environmental Protection Bureau
The Capitol
Albany, New York  12224-0341
Telephone: (518) 474-7154
Facsimile: (518) 473-2534
*Counsel for the State of New York and*
*The New York State Department of Environmental Conservation*

**UNITED STATE BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **In re** | |
| **MOTORS LIQUIDATION COMPANY, et al.,** **f/k/a General Motors Corp., et al.,** | **Chapter 11 Case No. 09-50026(REG)** |
| **Debtors.** | |
| | **(Jointly Administered)** |

**LIMITED OBJECTION OF THE STATE OF NEW YORK TO THE GUC TRUST'S**
**MOTION TO SUPPLEMENT AMENDED ORDER AND GENERAL ORDER M-390**
**AUTHORIZING IMPLEMENTATION OF ALTERNATIVE DISPUTE PROCEDURES,**
<u>**INCLUDING MANDATORY MEDIATION**</u>

**ERIC T. SCHNEIDERMAN**
**Attorney General of the State of New York**

**MAUREEN F. LEARY**
**Assistant Attorney General**

**Of Counsel**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ...................................................................................................i

PRELIMINARY STATEMENT ............................................................................................. 1

FACTUAL BACKGROUND................................................................................................... 1

     The Court's Original ADR Order ................................................................................ 2

     The GUC Trust's Motion............................................................................................. 3

     The Amended ADR Order and ADR Procedures ........................................................ 5

ARGUMENT ........................................................................................................................... 6

     The GUC Trust's Motion Is Unfair And Does Not Foster Consensual Resolution ......... 6

     There is a Need to Broaden the Roster of Mediators ....................................................... 9

     The Requirement that States Share in Funding Mediation Will
     Be a Substantial Hardship ............................................................................................... 9

     The ADR Procedures Injunction Violates Section 362(b)(4) ..................................... 10

     The State's Environmental Claims Involve Construction of Federal law, Are Not Core
     Proceedings, and May be Subject to Withdrawal of the Reference .............................. 11

CONCLUSION...................................................................................................................... 12

# TABLE OF AUTHORITIES

Page

<u>CASES</u>

*City of New York v. Exxon Corp.,*
     932 F.2d 1020 (2d Cir. 1991)...............................................................................................9

*In re Dana Corp.,*
     379 B.R. 449, 462 (S.D.N.Y. 2007).................................................................................10

*In re Chemtura Corp.,*
     2010 WL 1379752 (S.D.N.Y. 2010)...............................................................................10

<u>STATUTES</u>

United States Code ("U.S.C.")
     11 U.S.C. § 105(a) .............................................................................................................1
     11 U.S.C. § 362(b) .............................................................................................................8
     11 U.S.C. § 362(b)(4) ........................................................................................................8

## PRELIMINARY STATEMENT

1.      The State of New York submits this Limited Objection to the Motion of the GUC

Trust pursuant to 11 U.S.C. § 105(a) to Supplement Amended Order and General Order M-390

and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures,

Including Mandatory Mediation.  For the reasons set forth below, the motion should be denied

insofar as it seeks to force State sovereign entities to fund mandatory mediation related to

Environmental Claims and mediate them only in New York City.  New York favors the concept

of mediation, but only if it is fair and equitable.  The GUC Trust's Motion ignores the

fundamental premise of successful mediation: it must be fair and consensual between the parties.

The one-sided ADR Procedures, the unilateral selection of mediators, and the untenable

requirement that New York - with its $2 billion deficit and State-wide travel and other resource

restrictions – must fund the mediation of its remaining Environmental Claims, does not foster an

equitable, consensual or successful resolution of those Claims.  Indeed, the Motion may make it

more difficult to achieve resolution.

## FACTUAL BACKGROUND

2.      On or about October 29, 2009, New York filed timely proofs of claim related to

the acts and omissions of General Motors Corporation's ("GM's") environmental contamination

of real property in the State ("Environmental Claims").[1]  In September 2011, New York and

MLC entered into a Stipulation to resolve some of those Claims ("Resolved Claims").[2]  New

---

[1] On or about February 28, 2011, New York filed timely amendments to certain claims.

[2]  In March 2011, New York and MLC had a meeting of the minds on resolution of these claims and by June had essentially finalized a stipulation.  In late June 2011, New York inquired of MLC's counsel whether the settlement would be finalized in time for the next distribution

York still has several claims totaling $176.8 million that remain unresolved, as set forth below

("Unresolved Claims").

| Site | POC/Am.POC | POC Am't. |
|------|------------|-----------|
| American Axle | 51047/71023 | $12,341,502 |
| American Axle (Admin Claim - penalties) | 70988 | $832,989 |
| Brillo Landfill | 50639/71034 | $392,902 |
| Brillo Landfill (Admin Claim - penalties) | 70989 | $53,441 |
| IFG (GM - Fisher Guide) | 50587 | $3,299 |
| IFG (Old Ley Creek Channel)* | 50587 | $13,190,162 |
| IFG (Lower Ley Creek)* | 50587 | $64,099,111 |
| IFG/Onondaga Lake NRD* | 50588 | $11,000,000 |
| Old Upper Mountain Road LF | 50827/71026 | $54,275,030 |
| Onondaga Lake NPL (Site-wide) | 50822 | $96,957 |
| Saginaw | 50635/71031 | $1,905,480 |
| Saginaw (Admin Claim - penalties) | 70987 | $163,431 |
| Salina Landfill | 50824 (REALM) | $18,510,361 |
| Grass River (NYSDOH) | 29772 | $5,096 |
| **Total** | | $176,869,761 |

3.      Neither the GUC Trust nor MLC before its dissolution, filed objections to New

York's Unresolved Claims.  It was not until November 22, 2011 that counsel for the GUC Trust

(formerly counsel for MLC) made an offer of settlement for some of the Unresolved Claims set

forth above (American Axle, Brillo, Saginaw and Grass River.  Those claims designated with an

*asterisk* are sites common to New York and the United States, and have been the subject of

ongoing settlement negotiations for over a year, but are still not yet resolved.  New York shares

the Salina Landfill claim with the Town of Salina, which has been performing the remediation,

using the State Superfund and its own municipal funding.  The Salina Landfill claim also has

been the subject of settlement discussions, but remains unresolved.

---

(scheduled for late July 2011).  In response, MLC's counsel said that the GUC Trust had "some
questions relating to the settlement" and "it is not clear that these [questions] will be resolved in
time" for the next distribution.  New York offered to address the questions immediately, but
MLC's counsel did not respond.  It was not until September 16, 2011 that the stipulation was
finalized; and not until late January 2012 that New York received any distribution from the GUC
Trust for the Resolved Claims.

4.      The Court's Original ADR Order.  The GUC Trust's Motion seeks to significantly

amend the Court's February 23, 2010 Order that authorized alternative dispute resolution

("ADR") procedures and  mandatory mediation for certain unsecured claim holders (ECF No.

5037) ("Original ADR Order").  The Original ADR Order provided, among other things, an

exemption from the Order's reach for all State and Federal governmental entities holding

Environmental Claims (Order, p. 3).  The Original ADR Order also provided that nothing in the

Order prevented the Debtors from seeking ADR in the future for Environmental Claims (Order,

p. 3).

5.      The GUC Trust's Motion.   The GUC Trust asks the Court to substitute its name

for that of the Debtors in the Original ADR Order (and other relevant documents), and then asks

the Court to eliminate the exemption initially provided by the Debtors to New York and other

States with Environmental Claims.[3]  The Trust's Motion imposes "mandatory mediation" that

the States would be required to fund with the GUC Trust (Motion ¶¶ 11-14).[4]  The Motion

contains no stated "cap" to the fees and costs for mediation that the States are expected to fund.

The Motion requires all environmental claims to be mediated in New York City, regardless of

the venue of the contaminated sites at issue or the State involved (Motion ¶ 13).

6.      As justification for adding Environmental Claims to the ADR Order, the GUC

Trust states that the States' prior objections asserted when the Initial ADR Order was entered

---

[3] The United States, the States and tribal entities holding Environmental Claims were
exempted from the Original ADR Order.  As set forth in the Proposed Order (p. 3), only the
United States will continue to be exempted.

[4] Although the GUC Trust is given the discretion to waive an Environmental Claimant's
obligation to share the costs of mediation (Proposed Second Amended Order, p. 4), there is no
criteria for such a waiver.  It is questionable whether the Trust would exercise such discretion in
favor of the States.  To obtain a waiver, the ADR Procedures require a showing of "substantial
hardship," "extraordinary circumstances, and there is a "rebuttable presumption" *against* a claim
of hardship by a Claimant (ADR Procedures § II(B)(2)(c), pp. 13-14 Blackline Version).

"have been addressed or are no longer relevant" (Motion ¶ 11-12).  The Motion fails to disclose

and address the most obvious objection previously asserted, namely, the substantial hardship

imposed on States if they are forced to fund mediation.  In what the Motion states is a "slight

modification" to the ADR Procedures (Motion ¶ 9), the amended ADR Procedures require the

States to provide a "Proposed Claim Amount Explanation" that shall include "all documentation

and any such other information evidencing and/or substantiating the actual calculation of the

Proposed Claim Amount;…."  (Motion Exhibit B, ADR Procedures, Blackline Version, p. 7).[5]

This requirement is imposed regardless of the substantiation provided in proofs of claim or the

additional information provided during settlement discussions.  No similar requirement is

imposed on the GUC Trust to substantiate an offer to settle an Environmental Claim.  To justify

this requirement, the GUC Trust states that it will be able to "more expeditiously and efficiently

evaluate" the Environmental Claims, which "more readily lend themselves to calculation of the

Proposed Claim Amount…." (Motion ¶ 17).  The GUC Trust further states that there are "only a

handful" of unresolved Environmental Claims that would be subject to mediation and the ADR

Procedures (Motion ¶ 12), but does not identify the number of Claims or States affected by the

Motion.  As evidenced above, New York itself has more than a handful of Environmental

Claims.

       7.      Under the ADR Procedures, the GUC Trust would have the right to repeatedly

and without limitation request information from Environmental Claimants (ADR Procedures ¶¶

II(A)(1)(b), p. 5; II(A)(5)(c), p. 9).  The same right to request information is not given to the

---

[5] All references to the Proposed Second Amended Order and appended ADR Procedures
are to the Blackline versions included with the Trust's Motion as Exhibit 2 and Exhibit A, ECF
pp. 59 to 110.

Environmental Claimants.  Moreover, the ADR Procedures set forth no limitation on the number

of mediations that the GUC Trust can initiate at the same time.

8.       The GUC Trust's Motion also proposes that four existing Mediators named in the

Original ADR Order, now be designated as Mediators for Environmental Claims (Motion

Exhibit B, Schedule of Mediators, Blackline Version).  The Motion classifies each of these

Mediators as having "environmental" experience, in addition to their already broadly-stated

experience with "business disputes, products liability, personal injury, and class actions" (Motion

Exhibit B, Schedule of Mediators, Blackline Version).  The Environmental Claimants had no

input in the selection of these Mediators.  They were unilaterally chosen by MLC during the case

without attention to whether they had the appropriate environmental experience (because

Environmental Claims were exempted from the Original ADR Order).

9.       The Trust's Motion includes no background on the environmental experience of

the mediators other than a brief statement that one is a nuclear expert that has served on the

Presidential Commission on Catastrophic Accidents; and the other has mediated several disputes

involving Federal and State agencies (it is unclear whether these were environmental disputes).

The Motion does not state that either has experience mediating hazardous waste site litigation

and cost recovery actions under the Comprehensive Environmental Response, Compensation and

Liability Act ("CERCLA").  Nor is there any stated experience with estimating remedial design

and implementation costs or allocating costs among polluters.  These are the primary issues

involved in the Environmental Claims that now would be subject to ADR.

10.      The Amended ADR Order and ADR Procedures.  Although not specifically stated

in the Motion, the States are now subject to several other provisions of the ADR Order and ADR

Procedures.  For example, the ADR Procedures impose a broad injunction barring States from

5

"commencing or continuing any action or proceeding in any manner or any place, including the

Bankruptcy Court seeking to establish, liquidate, collect on, or otherwise enforce" an

Environmental Claim (ADR Procedures ¶ I(C), p. 3-4). Only the GUC Trust may terminate

ADR at any time and proceed to litigation.

11.     In the event that Environmental Claims are not resolved, the ADR Procedures

state that only the GUC Trust may commence litigation in the Bankruptcy Court (ADR

Procedures ¶ II(E)(2), pp. 27-28). There is no provision for withdrawal of the reference for

Environmental Claims involving federal environmental laws even though all of New York's

claims involve the construction of the cost recovery or natural resource damage provisions of

CERCLA Section 107, 42 U.S.C. § 9607.[6]

## ARGUMENT

12.     <u>The GUC Trust's Motion Is Unfair And Does Not Foster Consensual Resolution</u>.

Although laudable in its purpose, the GUC Trust's Motion and the ADR Procedures are one-

sided and inequitable. A true back-and-forth in the exchange in information is not required, as

evidenced by the provisions under which only the Trust may demand information related to

Environmental Claims (ADR Procedures ¶¶ II(A)(1)(b), p. 5; II(A)(5)(c), p. 9) and only the

Environmental Claimants "shall additionally include, without limitation, all available

documentation and any such further information evidencing and/or substantiating the actual

calculation of the Proposed Claim Amount" (ADR Procedures ¶II(A)(3), p. 7). The GUC Trust

need not provide any basis or substantiation of its offer. These provisions are especially unfair to

the States in the context of Environmental Claims.

---

[6] New York's Environmental Claims may also involve pendant State law issues.

13.     First, MLC - and now imputedly the GUC Trust – may have significant information on the Sites at issue, having engaged historically with State regulatory agencies on pollution cleanup problems.  That information should be made available to the Environmental Claimants.  This point is best exemplified by the American Axle site in New York, where MLC was under an administrative order to perform a remedial investigation into the nature and extent of contamination, and then submit reports documenting the contamination and discussing the feasibility and cost of different remedial alternatives.  Thus, the feasibility/cost study contains the *cost* of remedial alternatives for the site that would further substantiate the Environmental Claim and inform the mediation process.  GM/MLC's consultants advised New York that the American Axle feasibility study reports were available would not be submitted to New York.  Despite repeated requests from New York during the case, and the issuance of a Notice of Violation of the consent order, MLC never submitted the feasibility/cost study.  In preparing its proof of claim for American Axle, New York looked to other similar sites with similar contaminants in evaluating and estimating costs and continues to stand behind those estimates.  Nevertheless, the best evidence of the remedial costs, namely the feasibility/cost study, is not in New York's hands.  An open exchange of information by both parties to mediation is more likely to result in the successful resolution of the Environmental Claims.

14.     Second, the ADR Procedures are unfair because, contrary to the GUC Trust's assertion (Motion ¶ 17), Environmental Claims do *not* readily lend themselves to calculations of costs.  Each contaminated site is different with respect to the nature and extent of contamination, and geographical, hydrogeologic, and topographical characteristics.  Remedial costs throughout the State vary.  Most importantly, if the full nature and extent of contamination is not established

through a full remedial investigation/feasibility study and Record of Decision process, there is a degree of uncertainty to a cost estimate.[7]

15.     New York's unresolved Environmental Claims were all well-documented in the proofs of claim, with affidavits, cost records, technical documents, and other exhibits.  With respect to Lower Ley Creek, Ley Creek Channel and Salina Landfill, consultants were retained to aid in the already-attenuated and expensive settlement discussions and additional information was given to MLC/GUC Trust in that process. Unquestionably, a party asserting a claim carries the burden of proving it, but there may be little more to add to the existing proofs of claim documentation and information already provided.  New York believes it has met its burden to substantiate its proofs of claim.  It is time for the GUC Trust to substantiate why the claim amounts continue to be disputed, whether in a mediation forum or otherwise.

16.     The GUC Trust's unilateral right to terminate mediation at any time and commence litigation is also unfair.  The Trust has little incentive to provide meaningful information and work through the difficulties that may arise during mediation.  Given the one-sided nature of the ADR Procedures, it predictably may result in a waste of time and money.

17.     New York's foregoing objections in this regard are readily fixed.  The ADR Procedures should require both the GUC Trust and the Environmental Claimant to substantiate their respective positions in the first and in later steps of the process (when the GUC Trust Offer and Environmental Claimant Counter-Offer are made).  If the GUC Trust has the right to terminate ADR at any time and commence litigation, the Environmental Claimants should be afforded the same right.

---

[7] The uncertainty is routinely addressed by both the New York State Department of Environmental Conservation and the United States Environmental Protection Agency through the use of contingency factors of about 15% of overall costs.

8

18.    <u>There is a Need to Broaden the Roster of Mediators</u>.  New York does not question

the stature and extensive experience of the mediators selected by MLC and adopted by the GUC

Trust.  In searching the background of these mediators on the internet, only one (Peter Woodin)

appears to have relevant experience mediating the kinds of Environmental Claims presented

here.[8]  New York believes that a broader array of mediators suggested by *both* parties would

foster greater confidence – and cost effectiveness - in the mediation process.  The United States

Institute for Environmental Conflict Resolution has numerous mediators in the New York area

who specialize in mediating only environmental matters, with reasonable billing rates between

$150 and $250 per hour (according to their website).

19.    <u>The Requirement that States Share in Funding Mediation Will Be a Substantial</u>

<u>Hardship</u>.  The Court may take judicial notice of the $2 billion deficit under which New York

and its government agencies are operating.  The Governor's 2012-2013 Budget will make further

attempts to close that deficit, resulting in further constraints on State resources.  The fiscal

situation is no different in other States.  New York has had significant budget cuts within its

agencies, including travel and other resource restrictions.  New York has no funding from the

Legislature to share in the cost of mediation, as the ADR Procedures would require.

20.    Moreover, New York has sustained a major financial impact as a result of the GM

bankruptcy.  Both the Resolved and Unresolved Claims (if allowed) will result in the recovery of

only a quarter of the dollars to which New York is otherwise entitled to fund remediation under

applicable environmental laws.  The New York taxpayer is saddled with the multi-million dollar

shortfall in remedial dollars at numerous sites across the State that has resulted from this

---

[8] Mr. Woodin mediated an environmental remediation matter between New York City
and a maritime transport company, in which the City sought to recover its costs of investigation
and remediation under CERCLA.

9

bankruptcy.  To require New York – or any State - to fund mediation will add to New York's

existing significant fiscal hardship.  That provision in the ADR Procedures should be revised to

eliminate the State cost-sharing requirement.

21.	In addition, the single location of the mediation in one of the most expensive

cities in the nation works a hardship on the Environmental Claimants.  The sites underlying New

York's Environmental Claims (and the affiants supporting those Claims) are in the Syracuse and

Buffalo areas.  The New York agency asserting the Claim is located in Albany.  Instead of New

York City, the location of the mediation should be based upon the venue of the property or the

primary location of the Environmental Claimant asserting the Claim.

22.	The ADR Procedures Injunction Violate Section 362(b)(4).  The ADR Procedures

impose a broad injunction barring the States from "commencing or continuing any action or

proceeding in any manner or any place, including the Bankruptcy Court seeking to establish,

liquidate, collect on, or otherwise enforce" an Environmental Claim (ADR Procedures ¶ I(C), p.

3-4).  This provision is in direct conflict with the Code's exemption from the stay for

governmental agencies enforcing police and regulatory authority.  11 U.S.C. § 362(b).  It also

interferes with the State's sovereign rights to protect the public.  The Second Circuit has made

clear that this exemption from the stay applies to any action by a regulatory authority seeking

environmental *cost recovery* under CERCLA.  *See City of New York v. Exxon Corp.,* 932 F.2d

1020, 1024 (2d Cir. 1991).  The Environmental Claims here are the very kind of claims asserted

in *Exxon*.

23.	The Second ADR Order and the ADR Procedures should make clear that the well-

settled exemption in Section 362(b)(4) remains unaffected  and that the injunction does not apply

to the States' right to pursue an action outside of the mediation forum at any time pursuant to

10

police and regulatory authority.  Good faith dictates that the State not pursue such an action once

mediation begins, but the GUC Trust's option of withdrawing from the mediation at any time -

and for any reason – makes the State's ability to pursue its police and regulatory authority

critical.

24.    <u>The State's Environmental Claims Involve Construction of Federal law, Are Not</u>

<u>Core Proceedings, and May be Subject to Withdrawal of the Reference</u>.  Absent from the GUC

Trust's Motion is any discussion of whether the Environmental Claims are themselves core

proceedings.  The ADR Procedures do not provide any mechanism for a State to seek withdrawal

of the reference by the District Court.  New York submits that the Environmental Claims

fundamentally are not core because they involve the construction of CERCLA and may be

subject to mandatory or discretionary withdrawal.  *See In re Dana Corp.,* 379 B.R. 449, 462

(S.D.N.Y. 2007); *see also In re Chemtura Corp.,* 2010 WL 1379752 (S.D.N.Y. 2010).  The ADR

Procedures allow litigation of Environmental Claims only in (1) the Bankruptcy Court at the

Trust's option; or (2) the District Court of the Southern District of New York or other forum,

which apparently must have all of the following: personal jurisdiction over the parties, subject

matter jurisdiction over the Claim, in rem jurisdiction over the property involved, *and* proper

venue (ADR Procedures ¶ II(E)(3), pp. 27-28).

25.    The ADR Procedures should include a clear mechanism for the States to move to

withdraw the reference prior to litigating the case before this Court.  In addition, the language in

the ADR Procedures related to litigating claims in other courts should simply state that the

choice of forum is governed by the Federal Rules of Civil Procedure or applicable State laws.

## CONCLUSION

For the foregoing reasons, New York respectfully requests that the GUC Trust's Motion

be denied in part with respect to the requirement that New York or other States holding

Environmental Claims share in funding mediation.  The Motion should be granted in part only

upon the revisions to the ADR Procedures as set forth above, which will make the process more

fair, equitable, and likely to succeed.


Dated: February 23, 2012                          ERIC T. SCHNEIDERMAN
                                                  Attorney General of the State of New York

                              BY:     _____

                                                  MAUREEN F. LEARY
                                                  Assistant Attorney General
                                                  The Capitol
                                                  Albany, New York 12224
                                                  Tel: (518) 474-7154
                                                  Maureen.Leary@ag.ny.gov

## CERTIFICATE OF SERVICE

Maureen F. Leary, hereby certifies that on the 23st day of February, 2012 that she served a true copy of the Limited Objection to the Motion of the GUC Trust to Supplement Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation, upon each of the parties set forth below by electronic or first class mail, postage prepaid, or by the Electronic Case Management Filing System maintained by the United States Bankruptcy Court for the Southern District of New York:

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Weil, Gotshal & Manges, LLP
767 Fifth Avenue
New York, NY  10153
harvey.miller@weil.com
stephen.karotkin@weil.com
Joseph.Smolinsky@weil.com
*Attorneys for Debtors*

David R. Berz
Thomas Goslin
Weil Gotshal & Manges, LLP
1300 Eye Street, NW, Suite 900
Washington, DC 20005
david.berz@weil.com
thomas.goslin@weil.com
*Attorneys for General Motors*

Thomas Morrow
c/o Motors Liquidation Company
401 South Old Woodward Ave., Suite 370
Birmingham, Michigan  48009

Ted Stenger, Executive Vice President
Motors Liquidation Company
General Motors LLC
500 Renaissance Center, Suite 1400
Detroit, Michigan 48243
tstenger@alixpartners.com

Lawrence S. Buonomo
General Motors LLC
400 Renaissance Center
Detroit, Michigan  48265

John J. Rapisardi, Esq.
Cadwalader Wickersham & Taft LLP
One World Financial Center
New York, New York  10281
john.rapisardi@cwt.com
*Attorney for the United States Department of Treasury*

Jeffrey Kehne
Hill & Kehne, LLC
2300 Wisconsin Avenue, NW
Suite 300
Washington, DC  20007
jkehne@hillkehne.com
*Attorney for the Environmental Response Trust Administrative Trustee*

Joseph Samarias
United States Department of Treasury
1500 Pennsylvania Avenue NW
Room 2312
Washington, D.C.  20220
Joseph.Samarias@do.treas.gov

Michael J. Edelman
Michael L. Schein
Vedder Price P.C.
1633 Broadway, 47th Floor
New York, NY  10019
mj_edelman@vedderprice.com
m_schein@vedderprice.com
*Attorneys for Export Development Canada*

Elliott P. Laws, Administrative Trustee
RACER Trust
2930 Ecourse Road
Ypsilanti, Michigan 48198
ELaws@racertrust.org
*Environmental Response Trust*
*Administrative Trustee*

Thomas Moers Mayer
Robert Schmidt
Jennifer Sharret
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of The Americas
New York, NY 10036
tmayer@kramerlevin.com
rschmidt@kramerlevin.com

*Attorneys for Official Committee of*
*Unsecured Creditors*

Tracy Hope Davis
Andrew D. Velez-Rivera
Brian Shoichi Masumoto
Office of the United States Trustee
33 Whitehall Street, 21st Floor
New York, NY 10004
andy.velez-rivera@usdoj.gov
Brian.Masumoto@usdoj.gov
*Attorneys for the United States Trustee*

David S. Jones
Natalie Kuehler
Assistant United States Attorneys
United States Attorney's Office
Southern District of New York
86 Chamber Street, 3rd Floor
New York, NY 10007
David.Jones6@usdoj.gov
Natalie.Kuehler@usdoj.gov
*Attorneys for the United States*

Elihu Inselbuch
Rita C. Tobin
Caplin & Drysdale, Chartered
375 Park Avenue, 35th Floor
New York, NY 10152-3500
ei@capdale.com
rct@capdale.com
*Attorneys for Asbestos Claimants' Comm.*

Trevor W. Swett III
Kevin C. Maclay
Caplin & Drysdale
One Thomas Circle, NW, Suite 1100
Washington, DC 20005
tws@capdale.com
kcm@capdale.com
*Attorneys for Asbestos Claimants'*
*Committee*

Sander L. Esserman
Robert T. Brousseau
Stutzman, Bromberg, Esserman & Plifka
A Professional Corporation
2323 Bryan Street, Suite 2200
Dallas, Texas 75201
esserman@sbep-law.com
brousseau@sbep-law.com
*Attorneys for Future Claimants'*
*Representative*

Alan Tenenbaum
Patrick M. Casey
United States Department of Justice
P.O. Box 7611
Washington, DC 20044-7611
patrick.casey@usdoj.gov
alan.tenembaum@usdoj.gov
*Attorneys for the United States*

John J. Privitera
Jacob Lamme
McNamee, Lochner, Titus & Williams, P.C.
677 Broadway
Albany, NY 12207-2503
*Attorneys for the Saint Regis Mohawk Tribe*
privitera@mltw.com; lamme@mltw.com

14

Margarita Padilla
Deputy Attorney General
California Office of the Attorney General
P.O. Box 70550
1515 Clay Street
Oakland, CA  94615-0550
Margarita.Padilla@doj.ca.gov

Robert Kuehl
Deputy Attorney General
Delaware Office of the Attorney General
391 Lukens Drive
New Castle, DE  19720
Robert.Kuehl@state.de.us

James L. Morgan
State of Illinois Environmental Control
Environmental Bureau South
500 South Second
Springfield, IL  62706
jmorgan@atg.state.il.us

Timothy K. Junk
Deputy Attorney General
Office of the Indiana Attorney General
Indiana Government Center South, 5th Fl.
302 West Washington Street
Indianapolis, IN 46204
Tim.Junk@atg.in.gov

Bruce H. Palin
Indiana Dept. of Environmental Mgmt.
MC 50-01, ICGB 1301
Indianapolis, IN  46204
bpalin@idem.in.gov

Robert Moser, Secretary
Kansas Dept. of Health and Environment
Curtis State Office Building
1000 SW Jackson
Topeka, KS  66612
rmoser@kdheks.gov

Herman Robinson, Exec. Counsel
Louisiana Dept. of Environmental Quality
P.O. Box 4312
Baton Rouge, LA  70821-4312
herman.robinson@la.gov

Christopher A. Ratcliff, Attorney
LA Department of Environmental Quality
P.O. Box 4302
602 N. 5th Street (70802)
Baton Rouge, Louisiana  70821-4302
Christopher.ratcliff@la.gov

Carol Iancu
Assistant Attorney General
Environmental Protection Division
Massachusetts Office of Attorney General
One Ashburton Place, 18th Floor
Boston, MA  02108
carol.iancu@state.ma.us

Celeste R. Gill, Assistant Attorney General
Env., Natural Resources, and Agriculture
State of Michigan Attorney General's Office
P.O. Box 30755
Lansing, MI 48909
gillc1@michigan.gov

John McManus, Chief Counsel
Jeff Klusmeir, Assistant Attorney General
Attorney General for the State of Missouri
Agriculture and Environmental Division
P.O. Box 899
Jefferson City, MO 65102
jack.mcmanus@ago.mo.gov
Jeff.klusmeier@ago.mo.gov

John Dickinson
Richard F. Engel
Deputy Attorney General
New Jersey Attorney General's Office
Richard J. Hughes Justice Complex
25 Market St, CN 093
Trenton, NJ 08625
John.Dickinson@dol.lps.state.nj.us
Richard.Engel@dol.lps.state.nj.us

15

Dale T. Vitale
Michael Idzkowski
Assistant Attorney General
Chief, Environmental Enforcement Section
30 E. Broad Street, 25th Floor
Columbus, OH 43215
dale.vitale@ohioattorneygeneral.gov
Michael.Idzkowski@OhioAttorneyGeneral.gov

David J. Raphael, Chief Counsel
Office of Chief Counsel
Rachel Carson State Office Building
400 Market Street
Harrisburg, PA  17101-2301
draphael@pa.gov

Kerri L. Nicholas
Virginia Office of the Attorney General
900 East Main Street
Richmond, VA  23219
knicholas@oag.state.va.us

Anne C. Murphy,
Assistant Attorney General
Wisconsin Attorney General's Office
17 West Main Street
PO Box 7857
Madison, WI  53707-7857
Murphyac@doj.state.wi.us

Michael V. Blumenthal
CROWELL & MORNING LLP
590 Madison Avenue
New York, NY  10022
MBlumenthal@crowell.com
*Attorneys for the RACER Trust*

Matthew J. Williams
GIBSON, DUNN & CRUTHER
200 Park Avenue
New York, New York 10166-0193
mjwilliams@gibsondunn.com

Timothy E. Keck
Deputy Chief Counsel
Kansas Department of Health and
Environment
1000 SW Jackson, Suite 560
Topeka, KS 66612-1371
785-296-1334
Tkeck@kdheks.gov

Matthew J. Williams
Gibson, Dunn, Crutcher LLP
200 Park Avenue, 47th Floor
New York, NY  10166
*Attorneys for Wilmington Trust Company as
GUC Trust Administrator and Avoidance
Action Trust Administrator*
mjwilliams@gibsondunn.com

Anna Phillips
FTI Consulting
One Atlantic Center
1201 West Peachtree, Suite 500
Atlanta, GA  30309
anna.phillips@fticonsulting.com
*GUC Trust and Avoidance Action
Trust Monitor*

Kirk P. Watson, Esq.
2301 Woodlawn Boulevard
Austin, Texas  78703
*Asbestos Trust Administrator*

Michael O. Hill,
Chief Operating Officer and
General Counsel
RACER Trust
2930 Ecourse Road
Ypsilanti, Michigan 48198
mhill@racertrust.org

_____
Maureen F. Leary
Assistant Attorney General