**HEARING DATE AND TIME: March 1, 2012 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                      :
In re                                 :     Chapter 11 Case No.
                                      :
MOTORS LIQUIDATION COMPANY, et al.,   :     09-50026 (REG)
       f/k/a General Motors Corp., et al. :
                                      :
                      Debtors.        :     (Jointly Administered)
                                      :
------------------------------------------------------------x
```

<div align="center">

**MOTORS LIQUIDATION COMPANY GUC TRUST'S
REPLY TO RESPONSES TO THE 83rd OMNIBUS OBJECTION
TO CLAIMS (WELFARE BENEFITS CLAIMS OF RETIRED
AND FORMER SALARIED AND EXECUTIVE EMPLOYEES)**

</div>

# <u>TABLE OF CONTENTS</u>

**Page**

Preliminary Statement ........................................................................................................... 1

The Claims Should Be Disallowed and Expunged ................................................................ 3

      (A)     The Claims Should Be Disallowed  As Debtors Had Right to Amend or
              Terminate Each Welfare Benefit Plan ................................................................ 3

      (B)     Ongoing Benefits Have Been Assumed by New GM .......................................... 4

The Responses ...................................................................................................................... 5

(A)     Claim No. 30614: Alfred McMullen ............................................................... 5

(B)     Claim Nos. 36256 and 36257: Darlene M. Schneider ..................................... 6

(C)     Claim No. 51346: Robert R. Hickman.............................................................. 7

(D)     Claim No. 62922: Linda K. Bellaire ............................................................... 7

Conclusion ........................................................................................................................... 9

US_ACTIVE:\43765389\06\72240.0639

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

CASES

*Curtiss-Wright Corp. v. Schoonejongen*,
   514 U.S. 73 (1995)..................................................................................................4

*Moore v. Metro. Life Ins. Co.*,
   856 F.2d 488 (2d Cir. 1988)...................................................................................3

*In re Oneida, Ltd.*,
   400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC),
   2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) ............................................................5

*Sprague v. Gen. Motors Corp.*,
   133 F.3d 388 (6th Cir. 1998) ..................................................................................3

STATUTES

29 U.S.C. § 1051(1) ...................................................................................................3

Employee Retirement Income Security Act of 1974 ....................................................3

OTHER AUTHORITIES

"Your Benefits in Retirement Summary Plan Description: A Handbook for Salaried
   Retirees in the United States" ...................................................................................8

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

    The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the

above-captioned debtors (collectively, the "**Debtors**")[1] in connection with the Debtors' Second

Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or

modified from time to time), files this reply (the "**Reply**") to the Responses (defined below)

interposed to the 83rd Omnibus Objections to Claims (Welfare Benefits Claims of Retired and

Former Salaried and Executive Employees) (ECF No. 6740) (the "**Omnibus Objection**"), and

respectfully represents:

## Preliminary Statement

    1.  On August 20, 2010, the Debtors filed the Omnibus Objection.  The

Omnibus Objection seeks the disallowance and expungement of certain compensation and

welfare benefits claims of retired and former salaried and executive employees of the Debtors on

the basis that such claims (a) are related to unvested welfare benefits that were capable of being

modified or terminated by the Debtors at will pursuant to the terms of the operative documents

governing such welfare benefits, and were modified or terminated in accordance with such

operative documents, and (b) to the extent modified, have otherwise been assumed by New GM[2]

pursuant to the terms of the Master Purchase Agreement and, as described in the Omnibus

Objection, are not the responsibility of the Debtors or the GUC Trust and therefore should be

disallowed and expunged from the claims register.

---

[1]  The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Omnibus Objection.

2.      Responses to the Omnibus Objection were due by September 17, 2010 at
4:00 p.m..  The responses listed on **Annex "A"** hereto and described further herein were filed
with respect to the Omnibus Objection (collectively, the "**Responses**") by Alfred McMullen,
Darlene M. Schneider, Robert R. Hickman, and Linda K. Bellaire (individually, a "**Responding
Party**" and collectively, the "**Responding Parties**") relating to their individual claims (the
"**Claims**").

3.      The Responses are generally not substantive, but are critical of the
reduction or termination of welfare benefits provided to retired and former salaried and executive
employees of the Debtors.  After reviewing the Responses, the GUC Trust[3] respectfully reiterates
the Debtors' position in the Omnibus Objection, and submits that the Responding Parties have
failed to provide any legal or factual support for the Claims.  Notwithstanding the Responding
Parties' opposition, the Responses should be dismissed because (i) the Debtors had a right to
amend or terminate the employee welfare benefit plans (the "**Welfare Benefits Plans**")
providing medical, dental, vision, and life insurance benefits (the "**Welfare Benefits**"), including
those on which the Claims are based, without further liability, and in all relevant instances did
so, and (ii) New GM otherwise assumed Welfare Benefits as they existed on the Commencement
Date and continues to provide Welfare Benefits as modified prior to their assumption by New
GM, and consequently the Debtors and the GUC Trust have no liability for the Claims.
Accordingly, the GUC Trust files this Reply in support of the Omnibus Objection and
respectfully requests that the Claims be disallowed and expunged from the claims register.

---

[3] While the Omnibus Objection was filed by the Debtors, this Reply is being filed by the GUC Trust because,
pursuant to the Plan, the GUC Trust now has the exclusive authority to prosecute and resolve objections to Disputed
General Unsecured Claims (as defined in the Plan).

4.      The Debtors and the GUC Trust are, of course, sympathetic with the impact that the financial problems of the Debtors have had on the Responding Parties' welfare benefits.  However, in view of the Debtors' liquidation and under applicable law, there should be no other outcome.

## The Claims Should Be Disallowed and Expunged

5.      The Responding Parties have failed to demonstrate the validity of their Claims and, thus, the Claims should be disallowed and expunged.  *See, e.g.*, *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (claimant has burden to demonstrate validity of claim when objection is asserted refuting claim's essential allegations).

**(A)      The Claims Should Be Disallowed
As Debtors Had Right to Amend or Terminate Each Welfare Benefit Plan**

6.      In their Responses, the Responding Parties have not demonstrated that the Debtors were bound by any legal or contractual requirement to continue to provide them, or other retired and former salaried and executive employees, with the Welfare Benefits on a permanent basis.  The Omnibus Objection explains that the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), comprehensively regulates employer-provided welfare benefit plans, and that ERISA does not require an employer to provide or to vest welfare benefits.  Welfare benefits provided under the terms of a welfare benefit plan may therefore be reduced or forfeited in accordance with the terms of the applicable welfare benefit plan.  29 U.S.C. § 1051(1); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998).

7.      In addressing claims similar to the Responding Parties' Claims, the Sixth Circuit has noted that welfare plans such as the Welfare Benefit Plans are specifically exempted

from vesting requirements (to which pension plans are subject) under ERISA, and accordingly, employers "*are generally free under ERISA, for any reason at any time, to adopt, modify or terminate welfare plans.*"  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (emphasis added) (citing *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir. 1990)).  As noted in the Omnibus Objection, however, the Sixth Circuit has recognized that once welfare benefits are vested, they are rendered forever unalterable.

8.     Thus, the Responding Parties bear the burden of showing that the Debtors intended to vest Welfare Benefits provided by the Welfare Benefits Plans, and did *in fact* vest the Welfare Benefits, such that each Responding Party has a contractual right to the perpetual continuation of their Welfare Benefits at a contractually specified level.

9.     In their Responses, the Responding Parties have not provided any evidence that contradicts the Debtors' common practice of advising participants of the Welfare Benefits Plans of the Debtors' right to amend or terminate the Welfare Benefits at any time. Moreover, the Responding Parties have not provided any evidence of a separate, affirmative contractual obligation on the part of the Debtors to continue to provide the Welfare Benefits specifically to the Responding Parties.  Therefore, the Debtors and the GUC Trust do not have any liability with respect to the reduction in or discontinuation of the Welfare Benefits.

**(B)     Ongoing Benefits Have Been Assumed by New GM**

10.     On the Closing Date, New GM completed its purchase of certain assets in accordance with the Master Purchase Agreement.  Pursuant to Section 6.17(e) of the Master Purchase Agreement (*Assumption of Certain Parent Employee Benefit Plans and Policies*), New GM assumed the plans specified in a disclosure schedule, and the Welfare Benefit Plans are set forth on that schedule.  New GM assumed the obligation to provide the Welfare Benefits to the extent required to be provided under the terms of the applicable Welfare Benefits Plan in effect

on the Closing Date, including both responsibility for all claims incurred prior to the Closing

Date and all future claims properly payable pursuant to the terms of the applicable Welfare

Benefit Plan in effect when such claims are incurred.  Therefore, the Debtors and the GUC Trust

do not have any liability with respect to Welfare Benefits that have been assumed by New GM,

and the Responding Parties have not provided any credible factual or legal basis to suggest

otherwise.

## The Responses

**(A)     Claim No. 30614: Alfred McMullen (the "McMullen Claim")**

11.     On September 17, 2010, a response was filed on behalf of Alfred

McMullen (the "**McMullen Response**"), stating opposition to the relief sought in the Omnibus

Objection with respect to the McMullen Claim.  (*See* Proof of Claim and McMullen Response at

**Exhibit 1** attached hereto).  In the McMullen Response, Mr. McMullen opposes the

disallowance and expungement of the McMullen Claim on the basis that such a course of action

contradicts the way in which welfare benefits were presented to Mr. McMullen by General

Motors Corporation when granted.  Alternatively, Mr. McMullen argues that it would be a

breach of good faith to reduce, modify or eliminate welfare benefits if such a right was not

specifically explained to Mr. McMullen at the time such benefits were granted.  No additional

documentation is provided in either the McMullen Claim or the McMullen Response to support

these assertions.  Further, the GUC Trust is not aware of any documentation or facts supporting

the McMullen Claim.

12.     The McMullen Response further asserts that Mr. McMullen should have

received similar treatment with respect to his Welfare Benefits as hourly employees represented

by The International Union, United Automobile, Aerospace and Agricultural Implement Workers

of America ("**UAW**").  The assumption by New GM of modified collective bargaining

agreements dictates New GM's obligations on account of UAW Welfare Benefits. There is no statutory obligation under ERISA or otherwise to treat employees of the same. Moreover, New GM is a different entity than the Debtors, and New GM made its own decisions as to the desired level of Welfare Benefits for particular employees.

13.    The McMullen Response asserts that welfare benefits were generally presented to Mr. McMullen in a way that differed from the plan documents. Mr. McMullen provides no support for this assertion, and the GUC Trust is not aware of any facts or documents to support Mr. McMullen's position. The Debtors clearly and unambiguously reserved their right to amend or terminate Mr. McMullen's welfare benefits both in the plan documents and in the summary plan descriptions of the welfare benefit plans provided and made available to Mr. McMullen both during his employment period and regularly after he retired. Paragraph 11 of the Omnibus Objection explains that welfare benefits provided under the terms of a welfare benefit plan may be reduced or forfeited in accordance with the terms of the applicable welfare benefits plan, as has occurred with respect to Mr. McMullen's welfare benefits.

14.    The McMullen Response further asserts that no evidence has been provided by the Debtors to Mr. McMullen of the fact that Welfare Benefits were indeed reduced, modified or terminated. Modifications to Mr. McMullen's medical benefits were approved by the Board of Directors on July 14, 2008 and went into effect on January 1, 2009. Modifications to Mr. McMullen's life insurance benefits were approved by the Employee Benefits Plans Committee of the Board of Directors (who had been delegated by the Board of Directors to act on its behalf in such matters) on June 17, 2009 and went into effect on August 1, 2009 (as enacted by New GM following its assumption of the life insurance plan). As illustrated by the relevant portion of the transcript of the Motors Liquidation Company hearing of January 18,

2012 annexed as **Exhibit 2** hereto, this Court has in the past expunged similar claims of former employees based on the Debtors' modification of such plans.

15.     The McMullen Response provides no additional support for the McMullen Claim.  For the reasons set out above, the Debtors respectfully submit that the McMullen Response should be overruled, and the McMullen Claim should be disallowed and expunged.

**(B)**     **Claim Nos. 36256 and 36257: Darlene M. Schneider (the "Schneider Claims")**

16.     On September 8, 2010, Darlene M. Schneider contacted the Debtors to request an extension of the September 17, 2010 response deadline for the 83rd Omnibus Objection to Claims, which was duly granted.  Thereafter, Ms. Schneider provided the Debtors with a Response (the "**Schneider Response**") stating opposition to the relief sought in the Omnibus Objection with respect to the Schneider Claims.  (*See* Proofs of Claim and Schneider Response at **Exhibit 3** attached hereto).  In the Schneider Response, Ms. Schneider opposes the disallowance and expungement of the Schneider Claims on the basis that such a course of action will leave Ms. Schneider in a vulnerable financial position, and will subject her to undue hardship.  Further, Ms. Schneider notes in the Schneider Response that allowing the Schneider Claims would provide funding necessary to provide for alternative income to compensate for her loss, and to support her permanently disabled husband.  Ms. Schneider asserts that she relied on communications from officers of General Motors Corporation in planning her career and retirement, and relied on the benefits as a significant component of this retirement planning.

17.     The Schneider Response provides no additional documentation to support the Schneider Claims.  Further, the GUC Trust is not aware of any documentation or facts supporting the Schneider Claims.  For the reasons set out above, the Debtors respectfully submit that the Schneider Response should be overruled, and the Schneider Claims should be disallowed and expunged.

**(C)**    **Claim No. 51346: Robert R. Hickman (the "Hickman Claim")**

18.    On September 8, 2010, Robert R. Hickman contacted the Debtors to

request a thirty-day extension to the September 17, 2010 response deadline for the 83rd Omnibus

Objection to Claims, which was duly granted.  (*See* Proof of Claim at **Exhibit 4** attached hereto).

Thereafter, Mr. Hickman did not file a response to the 83rd Omnibus Objection to Claims with

respect to the Hickman Claim.  On July 18, 2011 at 3:00 p.m., an attorney for the GUC Trust

contacted Mr. Hickman by email and by telephone, to confirm whether Mr. Hickman would file

a response.  To date, no response has been received from Mr. Hickman.

19.    The GUC Trust is not aware of any documentation or facts supporting the

Hickman Claim.  For the reasons set out above, the Debtors respectfully submit that the Hickman

Claim should be disallowed and expunged.

**(D)**    **Claim No. 62922: Linda K. Bellaire (the "Bellaire Claim")**

20.    On September 17, 2010, a response (ECF No. 6972) was filed on behalf of

Linda K. Bellaire (the "**Bellaire Response**"), stating opposition to the relief sought in the

Omnibus Objection with respect to the Bellaire Claim.  (*See* Proof of Claim and Bellaire

Response at **Exhibit 5** attached hereto).

21.    The Bellaire Response argues that welfare benefits were acknowledged by

the Debtors in publication 3.GM-H-425G.104, which is the summary plan description of the

Welfare Benefit Plans provided to retired GM salaried employees.  The publication is entitled

"Your Benefits in Retirement Summary Plan Description:  A Handbook for Salaried Retirees in

the United States," ("**Summary Plan Description**").[4]  The Bellaire Response cites one provision

of the Summary Plan Description stating circumstances that "may result in disqualification,

---

[4] A true and complete copy of the Summary Plan Description will be filed contemporaneously herewith.

ineligibility, denial, loss, offset, suspension, reduction or recovery of benefits."  The

circumstances cited include only those that would deny benefits on the basis of an individual

participant's circumstances, not circumstances of the employer.  In the Bellaire Response, Ms.

Bellaire notes with respect to the cited provisions; "nowhere in the above does bankruptcy

preclude denial or loss of these benefits in place at my retirement time."  However, on page 2 of

the very same Summary Plan Description, the Debtors clearly reserved their broad right to

amend or terminate any of the Welfare Benefits described in the Summary Plan Description, as

follows:  "General Motors Corporation reserves the right to amend, change, or terminate the

Plans and Programs described in this booklet."  The Debtors' right to amend, change, or

terminate such Plans and Programs is without qualification and therefore applies in all cases,

including in the case of Debtor's insolvency or bankruptcy.

           22.     The Bellaire Response further argues that employee claimants with similar

claims had not, as of the date of the Bellaire Response, received objections to proofs of claim

they had filed in these chapter 11 cases.  The GUC Trust notes that it will continue to review

proofs of claim filed in these chapter 11 cases, and to object to such proofs of claim if necessary,

however given the number of claims filed in these chapter 11 cases, it cannot guarantee that

similarly situated creditors will have their claims handled in the same omnibus objection or at the

same hearing.  The Debtors believe they have treated all employee and retiree claims fairly and

consistently.

           23.     The Bellaire Response provides no additional support for the Bellaire

Claim.  The GUC Trust is not aware of any documentation or facts supporting the Bellaire

Claim.  For the reasons set out above, the Debtors respectfully submit that the McMullen

Response should be overruled, and the Bellaire Claim should be disallowed and expunged.

## **Conclusion**

24.    Because (i) ERISA recognizes that employers are free to amend or

terminate welfare benefits, (ii) no contrary contractual right to vested welfare benefits has been

established by the Responding Parties; and (iii) New GM assumed the Welfare Benefit Plans as

modified, the Debtors and the GUC Trust have no liability for the Responding Parties' Claims.

The GUC Trust reiterates that the Responses have not provided any legal or factual support for

the Claims and cannot be afforded prima facie validity under the Bankruptcy Code.

Accordingly, the Claims should be disallowed and expunged in their entirety.

25.    WHEREFORE, for the reasons set forth above and in the Omnibus

Objection, the GUC Trust respectfully requests that the Court grant the relief requested in the

Omnibus Objection and such other and further relief as is just.

Dated: New York, New York
        February 23, 2012

<div style="margin-left:40%">

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

</div>

**Annex A**

| No. | Proof of Claim No. | Response Docket No. | Name | Total Claimed | Summary |
|---|---|---|---|---|---|
| 83rd Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) | | | | | |
| 1. | 30614 | 6968 | Alfred H. McMullen | $215,142.00 (U) | Mr. McMullen's response asserts that the Debtors do not have the right to reduce, modify, or eliminate benefits granted to him by General Motors Corporation due to the way in which such welfare benefits were explained to Mr. McMullen when granted, or alternatively that it would be a breach of good faith to reduce, modify or eliminate welfare benefits if such a right was not specifically explained to Mr. McMullen at the time such benefits were granted.  Mr. McMullen further asserts that no evidence has been provided by the Debtors of the fact that welfare benefits were indeed reduced, modified or terminated.  Mr. McMullen claims that the treatment of welfare benefit claims by the debtors is inconsistent with the treatment of hourly employees by New GM. |
| 2. | 36256 | Informal | Darlene M. Schneider | $182,588.00 (P) | Ms. Schneider's response asserts that expunging her proofs of claim will leave her in a vulnerable financial position and subject her to hardship.  Further, Ms. Schneider notes that compensation would provide funding necessary to provide for alternative income to compensate for her loss, and to support her permanently disabled husband.  Ms. Schneider asserts that she relied on communications from officers of General Motors Corporation in planning her career and retirement, and relied on the benefits as a significant component of this retirement planning. |
| 3. | 51346 | Informal | Robert R. Hickman | $262,716.00 (U) | Mr. Hickman requested and was granted an extension to file an objection, but has not done so. |
| 4. | 62922 | 6972 | Linda K. Bellaire | $241,020.00 (P) $502,053.00 (U) | Ms. Bellaire's response asserts that welfare benefits were acknowledged by the Debtors in publication |

US_ACTIVE:\43765389\06\72240.0639

| | | | | | |
|---|---|---|---|---|---|
| | | | | | 3.GM-H-425G.104.  Ms. Bellaire notes that she was employed by the Debtors for thirty five years prior to her retirement.  Ms. Bellaire further notes that other similarly situated claimants have not, as of the date of her response, received objections to their claims. |

**Exhibit 1**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Your Claim is Scheduled As Follows.**

Name of Debtor (Check Only One)

☒ Motors Liquidation Company (f/k/a General Motors Corporation) — Case No 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC) — 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc) — 09-13558 (REG)

NOTE  *This form should not be used to make a claim for an administrative expense arising after the commencement of the case  but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5)  All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

Name of Creditor (the person or other entity to whom the debtor owes money or property) ALFRED MCMULLEN

Name and address where notices should be sent

ALFRED MCMULLEN

4307 CLIFFWOOD CIRCLE
AUSTIN TX 78759

Telephone number  512 346-9111
Email Address  bearburg a Austin.rr.com

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on  11-17-09

Name and address where payment should be sent (if different from above)

FILED - 30614
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number  512-346-9111

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown  (This scheduled amount of your claim may be an amendment to a previously scheduled amount )  If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1 Amount of Claim as of Date Case Filed, June 1, 2009**  $ 142,496

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2  Basis for Claim**  Life insurance loss; health care benefit losses (see Attached)
(See instruction #2 on reverse side )

**3**  Last four digits of any number by which creditor identifies debtor  6091

**3a**  Debtor may have scheduled account as _____
(See instruction #3a on reverse side )

**4  Secured Claim** (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe

Value of Property $_____   Annual Interest Rate___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any  $_____

Basis for perfection  _____

Amount of Secured Claim  $_____   Amount Unsecured  $_____

**6  Credits**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7  Documents**  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  *(See instruction 7 and definition of ' redacted ' on reverse side )*

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5  Amount of Claim Entitled to Priority under 11 U S C § 507(a)**  If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case - 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

**Amount entitled to priority**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

Date  11-17-09

**Signature**  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any

Alfred McMullen

**FOR COURT USE ONLY**

THE GARDEN CITY GROUP, INC.  NOV 19 2009

Attach 1 p.1
A McMullen

Attach 1

## Life Insurance

Prior to the bankruptcy filing, salaried retirees had a Basic Life Insurance benefit equal to one year's base salary as of date of retirement.  As announced following the bankruptcy filing, effective August 01, 2009, the Company reduced retiree Basic Life Insurance coverage to a maximum of $10,000.  While many retirees continue to pay for Optional and/or Dependent Life Insurance for themselves, their spouse, or their dependents after this date, the amount of the loss in Company-paid life insurance on the retiree should, in our opinion, be claimed as a loss.

*Attach I p. 2*
*A McMullen*

The simplest method to calculate your loss would be to determine the amount of Company-provided Basic Life Insurance in effect prior to the August 1, 2009, reduction. Typically, this would be equivalent to the annualized salary of the employee in effect at the time of retirement. From this amount, simply subtract $10,000. The difference is the amount that you have lost in the value of your life insurance. If an employee / retiree has died since the implementation of any of these reductions, a claim should be completed by the surviving spouse or the executor of the estate.

### Sample Calculation

Annualized Salary at time of retirement
$65,000

Current amount of Company provided Life Insurance
( $10,000 )

Value of Lost Life Insurance
$55,000

*mine AHm*
*118 000*
*10 000*
*108,000*

## Health Care Benefit Losses

For those retirees and/or surviving spouses less than 65 years of age, GM recently announced a substantial increase in cost for continued participation in the GM plan, which also underwent significant plan modifications. Since those under 65 have not completely lost GM-paid health care coverage, it is necessary to first determine a value for the loss prior to age 65, then add that amount to the loss of all coverage beginning at 65 and through the remainder of your life expectancy.

For those who lost health care coverage prior to the bankruptcy filing, consider using the actual date you lost the GM benefit as the start date for calculating your loss. For many this was Jan 01, 2009, or the month in which you became Medicare eligible.

Calculate the amount of loss for the retiree, spouse, and dependents separately, and

*Allack 1 p.3*
*A. McMullen*

then add the individual losses to determine the total loss.

Based on information recently provided by General Motors Company, the average cost of health care for Medical, Prescription, Dental, Vision, and Extended Care Coverage to the company under the salaried cap implemented in 2006/7 was $5500  Based on the announced modifications, the Company has revised the cap and the new average cost to GM to provide GM-paid health care is $4140 annually. GMRA recommends calculating the loss for health care using the difference between these figures, or $1360 per year, per person under 65.

Beginning at 65, the loss per year, per person, would be $5500 minus the $3600 annual Level Benefit through life expectancy, or $1900  This is only one method of determining your health care loss.  If you have estimated costs for your unique situation, consider using those in your calculations.

*Mine*
*1900*
*32,596*

### **Sample Calculation for a Male 58 year old retiree**

All cost figures shown below are estimated!

| | |
|---|---|
| Annual pre-65 benefit loss beginning 2010 | 1360 |
| Number of years remaining until age 65 | X  7 |
| Amount of loss prior to age 65 | $9520 |

Add this amount to the estimate of health care benefit loss from age 65 until full life expectancy:

| | |
|---|---|
| Annual post-65 benefit loss beginning 2017 | $1900 |
| Number of years between 65 and full life expectancy | X  14.97 |
| Amount of loss after age 65 | $28,443 |
| Total Lifetime Loss | $37,963 |

## **Dental Coverage**

ATTAh 1 p.4
A McMullen

Included in health care calculation above

## Vision Coverage

Included in health care calculation above

## Extended Care Coverage (ECC)

Included in health care calculation above

SSA Actuarial Table Data
http //www ssa gov/OACT/STATS/table4c6 html

| Exact Age as of Jan 1, 2009 | Life Expectancy Male | Total | | Life Expectancy Female | Total |
|---|---|---|---|---|---|
| 45 | 32 81 | $51,539 | | 36 79 | $59,101 |
| 46 | 31 93 | $50,407 | | 35 87 | $57,893 |
| 47 | 31 06 | $49,294 | | 34 96 | $56,704 |
| 48 | 30 2 | $48,200 | | 34.05 | $55,515 |
| 49 | 29.34 | $47,106 | | 33 14 | $54,326 |
| 50 | 28 49 | $46,031 | | 32 24 | $53,156 |
| 51 | 27 65 | $44,975 | | 31 35 | $52,005 |
| 52 | 26 83 | $43,957 | | 30 46 | $50,854 |
| 53 | 26 | $42,920 | | 29 57 | $49,703 |
| 54 | 25 19 | $41,921 | | 28 69 | $48,571 |
| 55 | 24 37 | $40,903 | | 27 82 | $47,458 |
| 56 | 23 57 | $39,923 | | 26 94 | $46,326 |
| 57 | 22 77 | $38,943 | | 26.08 | $45,232 |
| 58 | 21 97 | $37,963 | | 25 22 | $44,138 |
| 59 | 21 19 | $37,021 | | 24 37 | $43,063 |
| 60 | 20 42 | $36,098 | | 23 53 | $42,007 |
| 61 | 19 66 | $35,194 | | 22 7 | $40,970 |
| 62 | 18 91 | $34,309 | | 21.88 | $39,952 |

ATTACH 1 P.5
AHM
A McMullen

| | | | | | |
|---|---|---|---|---|---|
| 63 | 18 17 | $33,443 | | 21 08 | $38,972 |
| 64 | 17.44 | $32,596 | | 20 28 | $37,992 |
| 65 | 16.73 | $31,787 | | 19 49 | $37,031 |
| 66 | 16 02 | $30,438 | | 18 7 | $35,530 |
| 67 | 15 32 | $29,108 | | 17 93 | $34,067 |
| 68 | 14 63 | $27,797 | | 17.17 | $32,623 |
| 69 | 13 96 | $26,524 | | 16 42 | $31,198 |
| 70 | 13 3 | $25,270 | | 15 69 | $29,811 |
| 71 | 12 66 | $24,054 | | 14 97 | $28,443 |
| 72 | 12 04 | $22,876 | | 14 27 | $27,113 |
| 73 | 11 43 | $21,717 | | 13 58 | $25,802 |
| 74 | 10.84 | $20,596 | | 12 9 | $24,510 |
| 75 | 10 26 | $19,494 | | 12 24 | $23,256 |
| 76 | 9 7 | $18,430 | | 11 59 | $22,021 |
| 77 | 9 15 | $17,385 | | 10 96 | $20,824 |
| 78 | 8 63 | $16,397 | | 10 34 | $19,646 |
| 79 | 8.11 | $15,409 | | 9 74 | $18,506 |
| 80 | 7 62 | $14,478 | | 9 16 | $17,404 |
| 81 | 7 14 | $13,566 | | 8 59 | $16,321 |
| 82 | 6.68 | $12,692 | | 8.04 | $15,276 |

| Exact Age as of Jan 1, 2009 | Life Expectancy Male | Total | Life Expectancy Female | Total |
|---|---|---|---|---|
| 83 | 6 24 | $11,856 | 7 52 | $14,288 |
| 84 | 5 82 | $11,058 | 7.02 | $13,338 |
| 85 | 5 41 | $10,279 | 6 54 | $12,426 |
| 86 | 5 03 | $9,557 | 6.08 | $11,552 |
| 87 | 4 67 | $8,873 | 5.65 | $10,735 |
| 88 | 4 34 | $8,246 | 5.25 | $9,975 |
| 89 | 4 02 | $7,638 | 4 87 | $9,253 |
| 90 | 3 72 | $7,068 | 4 52 | $8,588 |
| 91 | 3 45 | $6,555 | 4 19 | $7,961 |
| 92 | 3 2 | $6,080 | 3 89 | $7,391 |
| 93 | 2 97 | $5,643 | 3 61 | $6,859 |

Attak 1 P. 6

A. McMullen

| | | | | | |
|---|---|---|---|---|---|
| 94 | 2 77 | $5,263 | | 3 36 | $6,384 |
| 95 | 2 59 | $4,921 | | 3 13 | $5,947 |
| 96 | 2 43 | $4,617 | | 2.93 | $5,567 |
| 97 | 2 29 | $4,351 | | 2 75 | $5,225 |
| 98 | 2 16 | $4,104 | | 2 58 | $4,902 |
| 99 | 2 05 | $3,895 | | 2 43 | $4,617 |
| 100 | 1 94 | $3,686 | | 2 29 | $4,351 |
| 101 | 1 83 | $3,477 | | 2 15 | $4,085 |
| 102 | 1 73 | $3,287 | | 2 02 | $3,838 |
| 103 | 1 63 | $3,097 | | 1 89 | $3,591 |
| 104 | 1 54 | $2,926 | | 1 77 | $3,363 |
| 105 | 1 45 | $2,755 | | 1 66 | $3,154 |
| 106 | 1 37 | $2,603 | | 1 55 | $2,945 |
| 107 | 1 28 | $2,432 | | 1 44 | $2,736 |
| 108 | 1 21 | $2,299 | | 1.34 | $2,546 |
| 109 | 1 13 | $2,147 | | 1.25 | $2,375 |
| 110 | 1 06 | $2,014 | | 1 16 | $2,204 |
| 111 | 0 99 | $1,881 | | 1 07 | $2,033 |
| 112 | 0 92 | $1,748 | | 0 99 | $1,881 |
| 113 | 0 86 | $1,634 | | 0 91 | $1,729 |
| 114 | 0 8 | $1,520 | | 0 84 | $1,596 |
| 115 | 0 74 | $1,406 | | 0 76 | $1,444 |
| 116 | 0 68 | $1,292 | | 0 7 | $1,330 |
| 117 | 0 63 | $1,197 | | 0 63 | $1,197 |
| 118 | 0 58 | $1,102 | | 0 58 | $1,102 |
| 119 | 0 53 | $1,007 | | 0 53 | $1,007 |

If you do not wish to receive emails from us, click here

John A. McMullen (admitted to New York bar)
100 Dorset Street, Suite 15
South Burlington, VT 05403
Telephone: 802-859-9800
Facsimile: 802-859-0826

Attorney for Alfred H. McMullen, a named claimant in Debtors' Eighty-Third Omnibus
Objection to Claims

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
**In re**                                                    :        **Chapter 11 Case No.**
                                                             :
**MOTORS LIQUIDATION COMPANY**, *et al.*,   :        **09-50026 (REG)**
**f/k/a General Motors Corp.,** *et al.*                      :
                                                             :
             **Debtors.**                                    :        **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

**OBJECTION AND MOTION TO REJECT DEBTORS' EIGHTY-THIRD**
**OMNIBUS OBJECTION TO CLAIMS  (Welfare Benefits Claims of Retired and**
**Former Salaried and Executive Employees)**

**PLEASE TAKE NOTICE** that on September 16, 2010, Claimant Alfred H. McMullen,

a retired General Motors executive, filed an objection to the rejection of his claim as

proposed in Debtors' Eighty-Third Omnibus Objection to Claims.

Claimant moves the court to reject Debtors' Eighty-Third Omnibus Objection to Claims

as it relates to his claim for the reasons outlined in the attached motion.

Claimant notes that on August 11, 2010, he duly filed an amendment with The Garden

City Group, Inc. to the claim outlined by Debtors in Exhibit A -- which amendment

raised the claimed amount to $215,142 from $142,496 based on subsequent discovery of

more accurate records forming the basis for the claim.  The methodology for the amended

claim is provided in the materials sent to The Garden City Group, Inc., and subsequently

forwarded onto the Debtors' counsel, Weil, Gotshal & Manges, LLP.


Dated: South Burlington, Vermont
      September 15, 2010

          /s/ John A. McMullen
          John A. McMullen

          100 Dorset Street, Suite 15
          South Burlington, VT  05403
          Telephone: 802-859-9800
          Facsimile: 802-859-0826

          Attorney for Alfred H. McMullen, a named
              claimant in Debtors' Eighty-Third
              Omnibus Objection to Claims

John A. McMullen (admitted to New York bar)
100 Dorset Street, Suite 15
South Burlington, VT  05403
Telephone: 802-859-9800
Facsimile: 802-859-0826

Attorney for Alfred H. McMullen, a named claimant in Debtors' Eighty-Third Omnibus
Objection to Claims

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------x
                                                                :
**In re**                                                       :              **Chapter 11 Case No.**
                                                                :
**MOTORS LIQUIDATION COMPANY,** *et al.*,                        :              **09-50026 (REG)**
**f/k/a General Motors Corp.,** *et al.*                         :
                                                                :
                **Debtors.**                                    :              **(Jointly Administered)**
                                                                :
----------------------------------------------------------------x

**OBJECTION AND MOTION TO REJECT DEBTORS' EIGHTY-THIRD**
**OMNIBUS OBJECTION TO CLAIMS (Welfare Benefits Claims of Retired and**
**Former Salaried and Executive Employees)**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

Debtors' Objection was filed on August 20, 2010, with a very short deadline for the

named Claimants to object of September 17, 2010.  The case is complex and ongoing and

the claimants are new to it since they believed they would be able to settle their claims,

assumed by the New GM, in informal discussions with Weil, Gotshal & Manges LLP.

The Objection in question seeks to void the claims in their entirety causing claimants to

have to scramble on short notice to identify and retain attorneys.  It has taken time for

them to accomplish this further shortening the practical time for response.


Claimant Alfred H. McMullen ("Claimant McMullen") filed Claim No.30614 timely for

$142,496. He subsequently amended that claim when more accurate information came to light. His claim was based on lost life insurance and reduced health benefits. He sent the amended claim to The Garden City Group, Inc. on August 11, 2010, along with the methodology used to compute the amended claim -- and understands that the amended claim was thereafter forwarded to Debtors' attorney, Weil, Gotshal & Manges, LLP. The amended claim is for $215,142.

Claimant McMullen respectfully objects to Debtors' Eighty-Third Omnibus Objection to Claims ("Objection") and moves to reject that Objection as it relates to his particular amended claim for $215,142 for the reasons outlined below.

The Debtors acknowledge that General Motors LLC ("New GM") assumed the accrued benefits claims filed by the Salaried and Executive Employees listed on Exhibit A of its Objection but argue that Debtors had an inferred right to reduce, modify, or eliminate such Welfare Benefits claims by action of the Board of Directors.

Given the way in which these benefits were explained to Claimant McMullen (and presumably the other Exhibit A Salaried and Executive employees) at the time they were conferred by the General Motors Corporation ("Old GM"), Claimant McMullen believes it is a stretch to infer a right for the New GM to reduce, modify, or eliminate such benefits at the discretion of the Board of Directors, notwithstanding cited case law (which is not directly on point)

In addition, Debtors provide no evidence in the Objection of such action by the Board.

Moreover, it would be a breach of good faith to act to drastically reduce or eliminate such

Welfare Benefits claims when the Old GM did not indicate through its benefits

representatives that it contemplated, or had the power to, reduce or eliminate benefits

conferred at the point Claimant McMullen received them, much less eleven years into his

retirement.

Also, an action like this against retired executives such as Claimant McMullen would be

inconsistent with the generous treatment of hourly employees by the New GM.

WHEREFORE Claimant McMullen moves to reject the Debtors' Objection as it relates

to his claim.


Dated: South Burlington, Vermont
         September 15, 2010

                              /s/ John A. McMullen
                              John A. McMullen

                              100 Dorset Street, Suite 15
                              South Burlington, VT  05403
                              Telephone: 802-859-9800
                              Facsimile: 802-859-0826

                              Attorney for Alfred H. McMullen, a named
                                 claimant in Debtors' Eighty-Third
                                 Omnibus Objection to Claims

**<u>Exhibit 2</u>**

Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 09-50026-reg

5   - - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   GENERAL MOTORS CORPORATION, ET AL.,

9

10              Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              January 18, 2012

19              9:49 AM

20

21   B E F O R E:

22   HON. ROBERT E. GERBER

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

1

2    Debtors' Eighty-Third Omnibus Objection to Claims (Welfare

3    Benefits Claims of Retired and Former Salaried and Executive

4    Employees) - Only Cobble Claim

5

6    Motion for Objection to Claim(s) Number:  70860 and 70869 Filed

7    by Tracy Woody and Motion Requesting Enforcement of Court

8    Orders Setting Deadlines to File Proofs of Claim

9

10   Motion of Post-Effective Date Debtors and Motors Liquidation

11   Company GUC Trust for Entry of Order Pursuant to 11 U.S.C.

12   Sections 105(A) and 1142(B) and Fed R. Bankr. P. 7012(B) and

13   9014(C)(I) Directing the Tullises to Dismiss the Debtors and

14   Their Attorneys from Pending Action with Prejudice; and (II)

15   Enforcing Prior Orders of this Court by Enjoining the Tullises

16   from Further Action Against the Debtors, Post-Effective Date

17   Debtors, Motors Liquidation Company GUC Trust, and Their

18   Officers and Professionals

19

20

21

22

23

24

25   Transcribed by:  Aliza Chodoff

Page 3

1

2    A P P E A R A N C E S :

3    WEIL GOTSHAL & MANGES LLP

4         Attorneys for Debtors

5         767 Fifth Avenue

6         New York, NY 10153

7

8    BY:   JOSEPH H. SMOLINSKY, ESQ.

9

10

11   DICKSTEIN SHAPIRO LLP

12        Attorneys for the Motors Liquidation Company GUC Trust

13        1633 Broadway

14        New York, NY 10020

15

16   BY:   STEPHANIE GREER, ESQ.

17

18

19   ALSO PRESENT:

20        JOSEPH COBBLE, Claimant, In Pro Se (Telephonically)

21        CLINTON M. TULLIS, Claimant, In Pro Se (Telephonically)

22

23

24

25

GENERAL MOTORS CORPORATION, ET AL.

Page 23

1          Now, we need to go on to the next matter.  CourtCall:

2     Mr. Tullis can stay on the phone, or he can drop off as he

3     prefers, but I'm directing you to put him on mute.

4          UNIDENTIFIED SPEAKER:  Okay, Your Honor.

5          THE COURT:  Thank you.  All right.  Mr. Smolinsky,

6     next matter, please.

7          MR. SMOLINSKY:  Thank you, sir.  Ms. Greer --

8          MR. COBBLE:  (indiscernible)

9          MR. SMOLINSKY:  Before I get -- begin, Ms. Greer has

10    asked to be excused.

11         THE COURT:  Of course.

12         MR. SMOLINSKY:  The last matter on the agenda --

13         THE COURT:  Mr. Smolinsky, we're still on the record

14    even though Mr. Tullis can no longer speak since we're done

15    with him.  I do of course want the order settled upon him so

16    that he can be heard on the form of the order.  And I want you,

17    even though you might not be required by law to do it, to send

18    him by overnight mail a notice of entry of the resulting order

19    so it is entered, so he is on notice of when his time to appeal

20    starts to run.

21         MR. SMOLINSKY:  Of course, sir.  And if we may, while

22    we do not suppose that Your Honor would be comfortable

23    directing the clerk of any other court to do anything, we would

24    like to send a copy of the transcript of this hearing to the

25    court where the actions are pending.

GENERAL MOTORS CORPORATION, ET AL.

1          THE COURT:  You may do so.

2          MR. SMOLINSKY:  Thank you, sir.

3          The last matter on the calendar is the debtors'

4    eighty-third omnibus objections to claim.  This is a claim

5    seeking to expunge welfare benefit claims of retired and former

6    salaried employees.  We are addressing today one claim filed by

7    Joseph Cobble, Jr., which is a claim for life insurance --

8          THE COURT:  Pause please, Mr. Smolinsky.

9          MR. SMOLINSKY:  Yes.

10         THE COURT:  Mr. Cobble, you are on the phone, and you

11   announced your presence a long time ago.  CourtCall:  I want

12   you to be sure that Mr. Cobble can speak and confirm that he is

13   still on the line, or, Mr. Cobble, you can do that yourself.

14         MR. COBBLE:  Yes, I'm still on the line.

15         THE COURT:  Thank you.  Continue then, please, Mr.

16   Smolinsky.

17         MR. SMOLINSKY:  Thank you, sir.  Mr. Cobble filed a

18   reply to that objection, which Your Honor should have.  And

19   we -- just in terms of context, Your Honor has dealt with

20   hundreds of employee claims in the past.  We have expunged

21   claims.  We've had hearings on disputed claims objections.  We

22   indicated to this Court in the past that there are certain

23   instances in which employees have asserted that they've

24   received letters or other correspondence that may alter the

25   landscape in terms of Your Honor's ruling; although, we

GENERAL MOTORS CORPORATION, ET AL.

Page 25

 1    expressed at the time our view that it didn't alter the law

 2    with respect to your prior rulings.

 3            but I want to put this into context because we are now

 4    moving from plain vanilla objections, where Your Honor has, I

 5    believe, asked the employees, where we had hearings, did you

 6    receive any other documents or do you anything else that you

 7    want to put before the Court, and the answer was no.  These are

 8    situations where often times there have been correspondence

 9    that these employees are relying on.

10            We file -- we did file a fifteen-page reply.  And

11    while Your Honor may think that that's overkill in connection

12    with the one-page response that was filed by Mr. Cobble, we

13    wanted to make sure that Your Honor had a full view and

14    understanding of our position with respect to all of these

15    related types of claims.  And we're happy to answer any other

16    questions surrounding this issue because before we set forth on

17    having hearings with respect to this new round of claims we did

18    go back and do substantial amount of research and consider and

19    review all of the correspondence that have submitted by the

20    various employees.

21            So that's by way of background.  Mr. Cobble attaches

22    to his response a letter that was received by him through the

23    General Motors Retirement Center, which was actually a

24    organization that was created by MetLife, who was administering

25    various retirement plans for General Motors.  And this letter,

1    according to Mr. Cobble, sets out a promise that his

2    entitlement to life insurance would not change.  I do point

3    your attention to the language beneath that statement that says

4    that the coverage is not guaranteed; although, we don't believe

5    that that really has any impact as well.

6           we believe that these -- this letter does not create

7    any separate entitlement to the employee plans that were in

8    place and that were all subject to the company's ability to

9    modify, amend or terminate those plans.  And that's language

10   which we set forth in the objections as well as in the reply,

11   as well as in the -- in other documents that were submitted and

12   circulated to employees from time-to-time.  That includes the

13   employee handbook that was circulated as well as summary plan

14   descriptions, which were updated every five years and sent out

15   to employees and retirees.

16          So regardless of receiving this letter, they would

17   have been on notice periodically of the debtors' obligation --

18   the company's obligation or right to amend, modify or terminate

19   the plans at any time.

20          We cite in our papers the Sprague case, which is a

21   case directly on point because it involves some of these very

22   issues surrounding the GM plans.  And the Court in that case

23   sets out clearly that the reservation of rights to amend,

24   modify or terminate the plans at any time is conclusive without

25   a separate agreement or contract that would vest those rights.

1    And for those reasons, Your Honor, we believe that this letter

2    that was actually sent out after Mr. Cobble retired does not

3    alter the plan or the ability of the debtors to amend or

4    terminate the plan.

5            As Your Honor knows that -- this plan was amended to

6    bring down all employees' life insurance benefits to 10,000

7    dollars.  And New GM, under the master sale and purchase

8    agreement, agreed to assume that liability so that employees

9    could get and retirees could get the 10,000 dollars in cash

10   upon their death.

11           THE COURT:  Okay.  I'll hear from you next, Mr.

12   Cobble.  Make your remarks as you see fit.  But when you do so,

13   I need you to be sure that you discuss the Sixth Circuit Court

14   of Appeals case and Sprague v. General Motors.  And Mr.

15   Smolinsky, tell your associates -- although I think you signed

16   the reply --

17           MR. SMOLINSKY:  The Table of Contents?

18           THE COURT:  -- that I'm supposed to have a table of

19   cases so I don't have to leaf through something to find

20   references to the Sprague case --

21           MR. SMOLINSKY:  Your Honor, I did realize --

22           THE COURT:  -- and a table of contents --

23           MR. SMOLINSKY:  -- that when I reviewed on preparation

24   for the hearing.  And I apologize.  It won't happen again.

25           THE COURT:  All right, thank you.  Mr. Cobble.

GENERAL MOTORS CORPORATION, ET AL.

1          MR. COBBLE:  Yes.

2          THE COURT:  I'll hear your argument now.

3          MR. COBBLE:  Okay.  Now, the other attorney did state

4    (indiscernible).  And when you retire, you go through an exit

5    interview, and you go through all the benefits.  You go through

6    the -- all the pension, any insurance, if it will be extended.

7    So I wasn't aware that this would be a continuing life

8    insurance policy.  It did have some influence on the fact that

9    I did accept the retirement.  I know that -- and I guess I

10   relied on the document.  The document states life insurance

11   (indiscernible) reduced to the ultimate amount (indiscernible)

12   dollars.  The ultimate amount will remain in effect for the

13   rest of your life.

14          I'm not an attorney, but I can give you an engineer's

15   point of view.  If the definition of reduced is to bring to a

16   certain state or condition, and the definition of ultimate is

17   preclusive or final, this document that I received from the

18   retirement center does not contain any reservation or right to

19   modify, much less terminate.  It states it will remain in

20   effect for the rest of your life (indiscernible).  So it did

21   have some affect on my decision, and the extended insurance

22   certainly something that I relied on.

23          As far as I'm concerned, I think that these decisions

24   are irrevocable (indiscernible) age, health and cost of

25   replacing (indiscernible).  And in fact, it does just the

09-50026-mg   Doc 11445   Filed 02/23/12   Entered 02/23/12 19:33:51   Main Document
Pg 39 of 93
GENERAL MOTORS CORPORATION, ET AL.

Page 29

```
 1   opposite.  It makes clear that the benefit is fully reduced and

 2   will remain in effect for the rest of my life.  And I guess

 3   (indiscernible).

 4          THE COURT:  Okay.  Thank you.  Mr. Smolinsky, do you

 5   wish to reply?

 6          MR. COBBLE:  Thank you, sir.  Your Honor?

 7          THE COURT:  Yes.  Thank you, sir.

 8          MR. SMOLINSKY:  Your Honor, the language in these

 9   retiree letters is unfortunate, I give you that, to the extent

10   that it led on any employees about what could or could not be

11   done with respect to the coverage.  I do note in this

12   particular letter that it says this is not a guarantee of the

13   coverage amount, and that's pretty clear on its face.

14          With respect to the reliance issue, I would note that

15   the Devlin case, which talks about promissory estoppel and

16   reliance, talk about the rel -- it not being incidental

17   reliance, but real reliance upon which the party acts or

18   changes their course.  And I guess the best example if you work

19   for the next ten years, we will grant you lifetime coverage.

20   In this case, the decision to retire was not based on this

21   letter.  This letter was sent out for information purposes, but

22   the benefits that were promised to him were consistent with the

23   plans that were in place, which all had this reservation of

24   rights language.

25          Mr. Cobble would have received a couple of years later
```

09-50026-mg    Doc 11445    Filed 02/23/12    Entered 02/23/12 19:33:51    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 40 of 93

Page 30

1    the new summary plan description, which would have had all of

2    the material rights to amend or terminate the benefits.  He

3    would have had in his possession, presumably, the employee

4    handbook and the last summary plan description that would have

5    this reservation of rights language.  So under the four-part

6    test that's set in Devlin, I don't believe that this letter

7    gives rise to the kind of reliance that the Devlin Court

8    considered.

9            THE COURT:  Okay.  Both sides -- have a seat, please,

10   Mr. Smolinsky.  Both sides sit in place for a couple minutes.

11        (Pause)

12           THE COURT:  All right.  Gentlemen, in this contested

13   matter in the jointly administered Chapter 11 case of Motors

14   Liquidation Company and its affiliates, the debtor, General

15   Motors Corporation or Old GM, moves to disallow and expunge Mr.

16   Cobble's claim.  For reasons that follow, the debtor's motion

17   must be granted, and Mr. Cobble's claim must be disallowed and

18   expunged.

19            Before I go into the legal reasons, though, and my

20   findings of fact, I do want to note something.  Perhaps it's

21   the obvious.  This matter is very different than the first one

22   on my calendar today.  Here, we do not have in any way, shape

23   or form an individual who has violated the requirements of the

24   Bankruptcy Code or has in any way acted improperly.  The issue

25   isn't about his wrongful conduct.  The issue ultimately is what

09-50026-mg    Doc 11445    Filed 02/23/12    Entered 02/23/12 19:33:51    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 41 of 93

Page 31

1    exactly his contract was with GM, which gave him the claim to

2    the life insurance that he seeks now.  And this is

3    unfortunately one of the many cases where GM simply not having

4    the resources to honor its earlier contracts caused it to amend

5    those contracts.  And the issue is whether or not GM had the

6    right to change the contract in the way in which it did.

7            As I'll continue to point out, in this case, GM's

8    contract with Mr. Cobble gave it the right to change his life

9    insurance coverage.  And therefore, although I recognize the

10   hardship on Mr. Cobble and of course hundreds, if not

11   thousands, of other employees who had to face the same

12   situation, I'm required to comply with the law.

13           So with that, turning first to my findings of fact:

14   on June 1st, 2009, the debtors commenced their Chapter 11 case.

15           On September 16, 2009, I entered an order establishing

16   a deadline for the filing of proofs of claim.  And Mr. Cobble

17   timely, that is in time, submitted a proof of claim for what he

18   seeks.  His proof of claim asserts a claim for 112,049 against

19   Old Gm for "loss for life insurance, salary, retiree."

20   Basically, what he's saying is that he's entitled to the

21   112,049 that would be payable upon his death under the old

22   level of life insurance that he had at times prior to the

23   commencement of the Chapter 11 case.

24           The debtors filed what are called omnibus, covering

25   many people, claims objections to eliminate claims lacking in

1  legal support.  They objected to Mr. Cobble's claim.  Mr.

2  Cobble filed a response, and the debtors replied.

3          In his papers, Mr. Cobble explains that he was

4  employed by Old GM for thirty-two years before he retired in

5  2002.  He explains that his claim if for continuation of an

6  earned and accrued benefit, to wit the continuing lifetime

7  coverage and the future payment at the time of Mr. Cobble's

8  death, of continuing life insurance benefits in the amount

9  122,049 pursuant to the debtors' "life and disability program."

10  Mr. Cobble further asserts that his benefit was acknowledged by

11  the debtor in a writing dated April 18, 2002, which writing Mr.

12  Cobble attaches to his response.

13          I note by way of clarification that, as Mr. Cobble

14  pointed out in his argument today, and this fact is undisputed,

15  the April 8th, 2002 letter came to him a few weeks after he

16  retired rather than before he retired.  The letter has three

17  significant paragraphs.  I'll revise my remarks to say four,

18  although I think the list, although Mr. Cobble relies on it, is

19  not quite as important as he says.

20          Those four paragraphs read, and I'll quote them

21  verbatim, "As a retiree of General Motors with ten or more

22  years of participation in the life and disability benefits

23  program, you are eligible for continuing life insurance.  Our

24  insurance records, as of the date of this letter, show the

25  continuing life insurance has now fully reduced to the ultimate

09-50026-mg   Doc 11445   Filed 02/23/12   Entered 02/23/12 19:33:51   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 43 of 93

Page 33

1    amount of $122,049.00."

2          "This ultimate amount will remain in effect for the

3    rest of your life and is provided by General Motors at no cost

4    to you.  This is not a guarantee of the coverage amount.

5    Important:  you should keep this notice with your other

6    valuable papers."

7          On December 31st, 2011, the Motors Liquidation Company

8    GUC Trust, which was formed under the debtors' plan of

9    reorganization replied to Mr. Cobble's response.  In that

10   reply, the GUC Trust argues that Mr. Cobble's claim must be

11   disallowed because his life insurance benefits were unvested

12   welfare benefits that could be modified under the plan terms

13   governing such welfare benefits and that they were properly

14   modified under those terms.

15         Now, turning to my conclusions of law and certain

16   mixed findings of fact and law:  a proof of claim is prima

17   facie evidence of the validity and amount of the claim, and the

18   objector bears the initial burden of persuasion.  See, for

19   example, in re Oneida Limited; 400 BR. 384, at page 389, a

20   decision by Judge Gropper of this court.  The burden then

21   shifts to the claimant, in this case that's Mr. Cobble, if the

22   objector produces evidence equal in force to the prima facie

23   case, which, if believed, would refute at least one of the

24   allegations that's essential to the claim's legal sufficiency.

25         When the burden is shifted back to the claimant, the

GENERAL MOTORS CORPORATION, ET AL.

Page 34

1    claimant must then prove by a preponderance of the evidence

2    that under applicable law the claim should be allowed.  Here,

3    the objecting debtors have produced evidence at least equal in

4    force to the evidence provided by Mr. Cobble; thus, shifting

5    the burden back to Mr. Cobble.  And then, Mr. Cobble does not

6    satisfy his burden under the law.

7         First, I find that Mr. Cobble has not met his burden

8    to show that his life insurance have vested.  Rather, the

9    documents covering his life insurance reserved the right to

10   change its level.  In dealing with claims of Old GM retirees,

11   which were similar to Mr. Cobble's present claim, the Sixth

12   Circuit Court of Appeals in a case called Sprague v. General

13   Motors Corp.; 133 F.3rd 338, at page 400, explain that to "vest

14   benefits is to render them forever unalterable.  Because

15   vesting of welfare plan benefits is not required by law, an

16   employer's commitment to vest such benefits is not to be

17   inferred lightly.  The intent to vest must be found in the plan

18   documents and must be stated in clear and express language."

19        In their briefing, the debtors point to several

20   welfare plan summaries which include language explicitly

21   reserving the right to amend, modify, suspend or terminate

22   welfare benefits.  And I say by way of explanation that welfare

23   benefits are benefits that employers provide that include,

24   among other things, life insurance.  So life insurance was one

25   of the things that GM had reserved the right to change.  And

09-50026-mg    Doc 11445    Filed 02/23/12    Entered 02/23/12 19:33:51    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 45 of 93

Page 35

1    when GM reserved that right, that became part of Mr. Cobble's

2    contract with Old GM, if you will.  So GM did something that it

3    was authorized to do.

4           Now, that was the state of play when Mr. Cobble

5    retired.  And the letter dated April 8, 2002 doesn't change

6    that result.  Mr. Cobble skipped the key sentence when he read

7    parts of the letter, but didn't read all of it.  He skipped a

8    sentence that said this is not a guarantee of the coverage

9    amount.  But with or without that extra clarification, the

10   terms under which Mr. Cobble worked didn't change over the

11   years that he was a GM employee.

12          Now, thirty-two years is a lot of years to work for a

13   company, and everything in the record indicates that this was

14   faithful employment.  And I understand why Mr. Cobble is upset,

15   and I understand it both from what Mr. Cobble said and what any

16   number of employees said back in June and July of 2009 when

17   this case was first filed.  And I have to deal with these same

18   issues.  It doesn't please me to have to rule that people have

19   to accept a lesser level of life insurance or medical benefits

20   that are subject to similar considerations.  But the fact is

21   that there were limited resources to take care of GM retirees.

22          The letter of April 8, which was sent to him after he

23   retired, explicitly stated it wasn't a guarantee of the

24   coverage amount.  In fact, it also told him of a reduction

25   in -- to his ultimate amount of continuing life insurance

GENERAL MOTORS CORPORATION, ET AL.

Page 36

1    coverage.  The fact that Old GM was able to reduce the ultimate

2    amount of his coverage at this time underscores a fundamental

3    point; that Old GM always had the right to modify the benefits.

4          While it's probably obvious, I make a few other

5    observations to provide greater clarity and for the avoidance

6    of doubt.  The letter of April 8 didn't create a new contract

7    between the debtors and Mr. Cobble.  He had already retired.

8    It can't reasonable interpreted as an offer to which Mr. Cobble

9    could accept, nor is there any evidence in that letter that it

10   includes language reasonably susceptible to interpretation as a

11   promise.  There was no evidence that Old GM promised Mr. Cobble

12   certain life insurance benefits to induce his retirement or

13   other action or inaction by Mr. Cobble.  See, for instance,

14   Devlin v. Empire Blue Cross and Blue Shield; 274 F.3d 76.

15         For those reasons, I am compelled to disallow Mr.

16   Cobble's claim, and I am authorizing and directing the debtor

17   to settle an order consistent with this decision.  The time to

18   appeal my decision will run from the date of entry of the order

19   rather than the date I'm dictating this.  And once more, Mr.

20   Smolinsky, I want you to serve notice of entry on the resulting

21   order in addition to the notice of settlement by an overnight

22   mail mechanism so that Mr. Cobble knows when his time to appeal

23   start to run.

24         Mr. Cobble, the time to appeal a bankruptcy court

25   order is quite short.  It's only fourteen days from the date of

GENERAL MOTORS CORPORATION, ET AL.

Page 37

1    entry of the order.  So if you think about it and decide you do

2    want to appeal, I want you to be aware of that short period of

3    time.  Once more, I underscore in connection with this decision

4    that unlike the first matter on the calendar, Mr. Cobble did

5    nothing wrong.  But here, I am compelled to act in accordance

6    with the law.  So while I'm not happy about having to rule this

7    way, the claim is disallowed.

8         Okay.  Mr. Cobble, I sense that you're an engineer and

9    not a lawyer.  But not by way of reargument, because I have

10   ruled, I will answer any questions you might have if you have

11   any desire for a clarification.

12        MR. COBBLE:  I just have one further question, and

13   that's on a statement that this is not a guarantee of coverage

14   amount.  And in my point of view, I guess, guarantee in

15   coverage, I would say that is an expression of a future

16   happening.  This is a perspective and not a statement of fact,

17   and the rest of body of the letter, which states ultimately

18   reduced and the rest of your life to mean that it's just a

19   statement of fact.  But I understand your points of view, and I

20   certainly appreciate your time going through this.

21        THE COURT:  Very well.  Thank you.  And of course, I

22   appreciate your courtesy, sir.

23        All right.  With that, we're adjourned.  Everybody

24   have a good day.

25        MR. COBBLE:  Okay.

GENERAL MOTORS CORPORATION, ET AL.

1            MR. SMOLINSKY:  Thank you, sir.

2            MR. COBBLE:  Thanks for your time, sir.

3        (Whereupon these proceedings were concluded at 11:02 AM)

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Exhibit 3**

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor (Check Only One)**

| | Case No |
|---|---|
| ☐Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☐MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

*NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

**Your Claim is Scheduled As Follows**

THE GARDEN CITY GROUP, INC.
NOV 23 2009

Name of Creditor (the person or other entity to whom the debtor owes money or property) **Schneider, Dailene M**

Name and address where notices should be sent

**Dailene M Schneider
48611 Lakeview E Lot 82
Shelby Twsp, MI 48317-2737**

Telephone number **586-254-0283**
Email Address **dislandflower@aol.com**

Name and address where payment should be sent (if different from above)

**FILED - 36256
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)**

Telephone number

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
*(If known)*

Filed on _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

*If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions, you need not file again*

**1. Amount of Claim as of Date Case Filed, June 1, 2009:**    $ **182,588**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2 Basis for Claim:** **Reduction/Elimination Medical Benefits**
(See instruction #2 on reverse side)

**3 Last four digits of any number by which creditor identifies debtor** **4389**

**3a. Debtor may have scheduled account as.** _____
(See instruction #3a on reverse side)

**4. Secured Claim** (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

**Nature of property or right of setoff**   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe.

**Value of Property: $** _____   **Annual Interest Rate** ____%

**Amount of arrearage and other charges as of time case filed included in secured claim, if any  $** _____

**Basis for perfection.** _____

**Amount of Secured Claim  $** _____   **Amount Unsecured  $** _____

**6 Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7 Documents** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary (*See instruction 7 and definition of "redacted" on reverse side* )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5** **Amount of Claim Entitled to Priority under 11 U S C § 507(a).** **If any portion of your claim falls in one of the following categories, check the box and state the amount**

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☒ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)
**Amount entitled to priority**

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

| | FOR COURT USE ONLY |
|---|---|
| **Date:** 11-18-09   **Signature**  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address  Attach copy of power of attorney, if any  **Dailene Schneider**  *Dailene M Schneider* | |

*Penalty for presenting fraudulent claim*  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571
**Modified B10 (GCG) (12/08)**



## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc., are not authorized and are not providing you with any legal advice.*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS: **IF BY MAIL** THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P.O. BOX 9386, DUBLIN, OH 43017-4286 **IF BY HAND OR OVERNIGHT COURIER** THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5:00 P.M. (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim
**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1 Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim

**2 Basis for Claim.**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3 Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4 Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5 Amount of Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories the law limits the amount entitled to priority

For claims pursuant to 11 U.S.C. § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases. (See DEFINITIONS, below.) Attach documentation supporting such claim

**6 Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7 Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim

---

| _____ DEFINITIONS _____ | _____ INFORMATION _____ |
|---|---|

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| **Motors Liquidation Company** (f/k/a General Motors Corporation) | 09-50026 (REG) |
| **MLCS, LLC** (f/k/a Saturn, LLC) | 09-50027 (REG) |
| **MLCS Distribution Corporation** (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| **MLC of Harlem, Inc** (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. §101(5). A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U.S.C. § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc., please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation.com

SSA Actuarial Table Data
http //www ssa gov/OACT/STATS/table4c6 html

| Exact Age as of Jan 1, 2009 | Life Expectancy Male | Total | Life Expectancy Female | Total |
|---|---|---|---|---|
| 45 | 32 81 | $51,539 | 36 79 | $59,101 |
| 46 | 31 93 | $50,407 | 35 87 | $57,893 |
| 47 | 31.06 | $49,294 | 34 96 | $56,704 |
| 48 | 30 2 | $48,200 | 34.05 | $55,515 |
| 49 | 29 34 | $47,106 | 33 14 | $54,326 |
| 50 | 28.49 | $46,031 | 32 24 | $53,156 |
| 51 | 27.65 | $44,975 | 31 35 | $52,005 |
| 52 | 26 83 | $43,957 | 30 46 | $50,854 |
| 53 | 26 | $42,920 | 29.57 | $49,703 |
| 54 | 25 19 | $41,921 | 28.69 | $48,571 |
| 55 | 24.37 | $40,903 | 27 82 | $47,458 |
| 56 | 23 57 | $39,923 | 26.94 | $46,326 |
| 57 | 22.77 | $38,943 | 26 08 | $45,232 |
| 58 | 21 97 | $37,963 | 25 22 | $44,138 |
| 59 | 21 19 | $37,021 | 24 37 | $43,063 |
| 60 | 20 42 | $36,098 | 23 53 | $42,007 |
| 61 | 19 66 | $35,194 | 22 7 | $40,970 |
| 62 | 18 91 | $34,309 | 21 88 | $39,952 |
| 63 | 18 17 | $33,443 | 21 08 | $38,972 |
| 64 | 17 44 | $32,596 | 20 28 | $37,992 |
| 65 | 16 73 | $31,787 | 19 49 | $37,031 |
| 66 | 16 02 | $30,438 | 18 7 | $35,530 |
| 67 | 15 32 | $29,108 | 17 93 | $34,067 |
| 68 | 14.63 | $27,797 | 17 17 | $32,623 |
| 69 | 13.96 | $26,524 | 16 42 | $31,198 |
| 70 | 13.3 | $25,270 | 15 69 | $29,811 |
| 71 | 12 66 | $24,054 | 14 97 | $28,443 |
| 72 | 12 04 | $22,876 | 14 27 | $27,113 |
| 73 | 11 43 | $21,717 | 13 58 | $25,802 |
| 74 | 10 84 | $20,596 | 12 9 | $24,510 |
| 75 | 10 26 | $19,494 | 12 24 | $23,256 |
| 76 | 9.7 | $18,430 | 11 59 | $22,021 |
| 77 | 9 15 | $17,385 | 10 96 | $20,824 |
| 78 | 8 63 | $16,397 | 10 34 | $19,646 |
| 79 | 8 11 | $15,409 | 9 74 | $18,506 |
| 80 | 7 62 | $14,478 | 9 16 | $17,404 |
| 81 | 7 14 | $13,566 | 8 59 | $16,321 |
| 82 | 6 68 | $12,692 | 8 04 | $15,276 |

83.22

| Exact Age as of Jan 1, 2009 | Life Expectancy Male | Total | Life Expectancy Female | Total |
|---|---|---|---|---|
|  |  |  |  |  |

**GM**

**GM Benefits & Services Center**
gmbenefits com
1-800-489-4646
**International Access**
Dial AT&T Direct® Access Code, then
877-833-9900
**TTY Service for Hearing or Speech Impaired**
1-877-347-5225

August 14, 2009

446 *********************AUTO**3-DIGIT 483
Darlene M Schneider                    T3  P7
48611 Lakeview E Lot 82
Shelby Township, MI 48317-2737
ldludlludludllldlduldlldludludlludlllul

Dear GM Salaried Retiree or Surviving Spouse,

Earlier this year, all GM retirees were notified that effective January 1, 2010, GM will cancel health care coverage for salaried retirees and surviving spouses who are <u>under age 65 and who are eligible for Medicare</u>, and for eligible dependents of retirees and surviving spouses <u>who are under age 65 and who are eligible for Medicare</u>  Although we understand that this change will be challenging for many impacted families, this change was necessitated by the difficult economic challenges facing General Motors

You are receiving this letter because you or one of your dependents is currently eligible for Medicare and will therefore be impacted by this change  On January 1, 2010, health care coverage will be cancelled for the following individual(s)

Donald Schneider                    Date of Birth 08/06/1949

As was communicated to you earlier this year, the coverages that will cancel include medical (which includes prescription drug, hearing aid, durable medical equipment, and behavioral health), dental, vision and Extended Care Coverage  In addition, the $76 20 Medicare Part B Special Benefit will also cancel  In order to offset some of the health care costs that you may incur, GM will establish a Health Reimbursement Account (HRA) Plan for eligible impacted retirees and surviving spouses through Bank of America  Dependent spouses and dependent children who are impacted by this change, or retirees or surviving spouses who are not eligible for GM contributions for health care in retirement are not eligible for the HRA Plan

In addition, GM has contracted with Extend Health to assist with the transition into an individual health care plan that best fits your medical and financial needs

Attachments to this letter include a detailed Question and Answer document as well as an educational brochure that outlines the services that will be made available to you through Extend Health and information about Medicare  These documents will answer many of the questions you have about this change, and will outline additional communications you will receive  If you have additional questions about this change, please contact the GM Benefits & Services Center at 1-800-489-4646

General Motors Company

*General Motors reserves the right to change, amend, modify, suspend or terminate its employment practices, policies, employee benefit plans or programs at any time  This document provides general information only  In the event of a conflict with the official plan documents, the plan documents will control*

3 GM-H-811I 100

Mrs. Darlene Schneider
48611 Lakeview East
Shelby Township, MI 48317
586-254-0283
dislandflower@aol.com                                    November 18, 2009
Proof of Claim. Motors Liquidation (General Motors Corporation)

Based on information recently provided by General Motors Corporation, the average
cost of health care for Medical, Prescription, Dental, Vision and Extended Care
Coverage to the company under the salaried cap implemented in 2006/07 was $5,500
Based on the announced modifications, the Company has revised the cap and the new
average cost to GM to provide GM-paid health care is $4,140 annually   The calculation
of the loss and the amount of this claim is based upon the figures below.

Beginning at 65, the loss per year, per person would be $5,500 minus the $3,600 annual
Level Benefit through life expectancy, or $1,900

Calculation for Female 59 year old retiree
All cost figures are estimated[1]

| | |
|---|---|
| Annual pre-65 benefit loss beginning 2010 | $1,360 |
| Number of years remaining until age 65 | X    6 |
| Amount of loss prior to age 65 | $8,160 |

| | |
|---|---|
| Annual post-65 benefit loss beginning 2016 | $ 1,900 |
| Number of years between 65 and life expectancy | X18 22 |
| Amount of Loss after age 65 | $34,618 |

Total Lifetime Loss ($8,160+$34,618)*          **$42,778**

Calculation for Male 60 year old spouse-Eliminated from Health Insurance
All Cost figures are estimated[11]

| | |
|---|---|
| Annual pre-65 benefit loss beginning 2010 | $5,500 |
| Number of years remaining until age 65 | X    5 |
| Amount of loss prior to age 65 | $27,500 |

| | |
|---|---|
| Annual post-65 benefit loss beginning 2014 | $5,500 |
| Number of years between 65 and life expectancy | X20 42 |
| Amount of Loss after age 65 | $112,310 |

Total Lifetime Loss ($27,500 + $112,310)*          **$139,810**

*Amount of Claim based on Retired employee and Spouse   $182,588

Darlene M  Schneider




| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor  (Check Only One)

☒ Motors Liquidation Company (f/k/a General Motors Corporation)   Case No  09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)                                   09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)   09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc )    09-13558 (REG)

**Your Claim is Scheduled As Follows.**

NOTE  *This form should not be used to make a claim for an administrative expense arising after the commencement of the case  but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5)  All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

Name of Creditor (the person or other entity to whom the debtor owes money or property)   SCHNEIDER  DARLENE M

Name and address where notices should be sent

SCHNEIDER  DARLENE M
48811 LAKEVIEW E LOT 82
SHELBY TOWNSHIP, MI 48317-2737

Telephone number  586-254-0283
Email Address  dislandflower@aol.com

Name and address where payment should be sent (if different from above)

FILED - 36257
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box to indicate that this claim amends a previously filed claim

**Court Claim Number:** _____
*(If known)*

Filed on _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

If an amount is identified above  you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount )  If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1  Amount of Claim as of Date Case Filed, June 1, 2009**  $ 69,900.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2  Basis for Claim** Reduction of Life Insurance
(See instruction #2 on reverse side )

**3  Last four digits of any number by which creditor identifies debtor:** 4389

**3a  Debtor may have scheduled account as** _____
(See instruction #3a on reverse side )

**4  Secured Claim** (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe

Value of Property  $_____  Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any  $_____

Basis for perfection  _____

Amount of Secured Claim  $_____     Amount Unsecured  $_____

**6  Credits**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7  Documents**  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of  redacted  on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5  Amount of Claim Entitled to Priority under 11 U S C § 507(a)  If any portion of your claim falls in one of the following categories, check the box and state the amount**

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☒ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

**Amount entitled to priority**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

| **Date** 11/18/09 | **Signature**  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address  Attach copy of power of attorney, if any | **FOR COURT USE ONLY** |
|---|---|---|

Darlene M Schneider

*Penalty for presenting fraudulent claim*  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law In certain circumstances such as bankruptcy cases not filed voluntarily by the debtor there may be exceptions to these general rules The attorneys for the Debtors and their court-appointed claims agent The Garden City Group Inc are not authorized and are not providing you with any legal advice*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS **IF BY MAIL** THE GARDEN CITY GROUP, INC, ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, PO BOX 9386, DUBLIN, OH 43017-4286 **IF BY HAND OR OVERNIGHT COURIER** THE GARDEN CITY GROUP, INC, ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017 PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004 **ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED**

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 P M    (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These eleven cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009 You should select the debtor against which you are asserting your claim
**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case Please provide us with a valid email address A separate space is provided for the payment address if it differs from the notice address The creditor has a continuing obligation to keep the court informed of its current address See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing Follow the instructions concerning whether to complete items 4 and 5 Check the box if interest or other charges are included in the claim

**2  Basis for Claim**
State the type of debt or how it was incurred Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a  Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured Skip this section if the claim is entirely unsecured (See DEFINITIONS, below) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5  Amount of Claim Entitled to Priority Under 11 U S C § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS, below) A claim may be partly priority and partly non-priority For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U S C § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below) Attach documentation supporting such claim

**6  Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7  Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt You may also attach a summary You must also attach copies of documents that evidence perfection of any security interest You may also attach a summary FRBP 3001(c) and (d) If the claim is based on the delivery of health care goods or services, see instruction 2 Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it FRBP 9011 If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature Print the name and title, if any, of the creditor or other person authorized to file this claim State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices Attach a complete copy of any power of attorney Criminal penalties apply for making a false statement on a proof of claim

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing See 11 U S C § 101(5) A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing The creditor must file the form with The Garden City Group, Inc as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C § 506(a)**
A secured claim is one backed by a lien on property of the debtor The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors The amount of the secured claim cannot exceed the value of the property Any amount owed to the creditor in excess of the value of the property is an unsecured claim Examples of liens on property include a mortgage on real estate or a security interest in a car A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding In some states, a court judgment is a lien A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc , please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims One or more of these entities may contact the creditor and offer to purchase the claim Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor These entities do not represent the bankruptcy court or the debtor The creditor has no obligation to sell its claim However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C § 101 et seq ), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

### INFORMATION



# U.S. Benefit Modifications

Dear GM Retiree

As part of GM's announcements on June 1st, we acknowledged some of the significant sacrifices that our salaried employees and retirees will be making to support the reinvention of General Motors   We also communicated that we would be reducing the obligations for certain retiree benefits by roughly two-thirds.

We have now finalized the changes that we need to make in order to achieve the required two-thirds reduction   As promised, I am sharing this information with you as quickly as possible   These are very difficult changes to make, but unfortunately necessary to position the New GM to win – and win now   These changes are described below.  As always, all benefits are at all times subject to the terms of each plan

## Basic Life Insurance in Retirement

For current retirees eligible for Basic Life Insurance in retirement (those whose service date was prior to January 1, 1993) the amount of Basic Life Insurance provided by GM is being reduced to $10,000 (retirees with less than $10,000 will remain at that level of life insurance).  This change will be effective on the first of the month following the New GM sale closing

Retirees impacted by these reductions will have an opportunity to supplement their remaining employer provided Basic Life Insurance by enrolling in a Voluntary Life Insurance program through MetLife. This program will not require "proof of good health" Enrollment for this program will be in the third quarter of this year.

During the first two years of participation in the program, the death benefit available will be equal to the amount of the premiums paid. Following two years of premium contributions, the full amount of coverage elected will be payable in the event of your death. Details regarding the program will be mailed to you from MetLife in the third quarter

## Non-Medicare Retiree Health Care

Effective January 1, 2010, the General Motors Salaried Health Care Program will be further modified for salaried retirees, surviving spouses and their eligible dependents. Individuals impacted by this change include

- Salaried retirees, surviving spouses and their dependents eligible to enroll or who currently are enrolled in the GM Salaried Health Care Program, and
- Current employees who are eligible to enroll in the GM Salaried Health Care Program upon retirement

The new plan design will include benefits and coverages for medical and prescription drugs only, and dental, vision, and extended care coverage will be cancelled   Cost sharing provisions (e g , monthly contributions, deductibles, coinsurance and out of pocket maximums) will increase substantially



*Sometimes, in order to accurately describe a benefit plan, it is necessary to utilize technical terms. To help you better understand them, the following are brief definitions of some of the most commonly used terms. They are not meant to be all inclusive as each Plan or Program may have specific usages which may vary.*

Programs for GM salaried retirees, referenced here are:

- ☑ Savings-Stock Purchase Program (S-SPP),
- ☑ Salaried Retirement Program (SRP),
- ☑ Salaried Health Care Program (SHCP), and
- ☑ Life and Disability Benefits Program.

**Account** — Assets credited to the participant in the trust fund established under the S-SPP.

**Alternative Dental Plan (ADP)** — A dental plan that provides services on pre-paid or fee-for-service basis to participants in a designated geographic area.

**Ambulance Services** — Medically necessary transportation and life support services furnished within the SHCP provisions to sick, injured, or incapacitated patients by a licensed ambulance provider meeting program standards, utilizing ambulance vehicles, and personnel recognized as qualified to perform such services at the time and place where rendered

**Annual Base Salary** — For the purposes of determining the amounts of various coverages, annual base salary means. (a) 12 times your monthly base salary, or (b) your annual earnings base, if you are compensated wholly or partially on a commission basis, and including any premium for necessary continuous seven-day operations immediately preceding your retirement.

**Approved Facility or Treatment Program** — a facility or a treatment program that has met criteria established by the carrier to provide certain services covered by the GM Health Care Program  The following are examples of facilities and treatment programs which must be approved by the applicable carrier for full benefits to be paid:
- ☑ hospitals
- ☑ skilled nursing facilities
- ☑ outpatient mental health facilities
- ☑ substance abuse treatment facilities
- ☑ outlets for prosthetic or orthotic appliances
- ☑ freestanding physical therapy facilities
- ☑ home health care programs
- ☑ hospice programs
- ☑ freestanding ambulatory surgical centers (FASCs)
- ☑ hemodialysis programs

In addition, certain services are not payable under the GM Health Care Program unless rendered by approved facilities or on approved equipment. Some services also must meet certain medical criteria  The following are examples of services which must be rendered by approved providers
- ☑ magnetic resonance imaging (MRI)
- ☑ extracorporeal shock wave lithotripsy (ESWL)

**117**

3 GM-H-425G 105

GM FAMILY FIRST MEMBERS. GET TALKING AND SAVE!
NOW YOU CAN SAVE UP TO 30% ON ALL ONSTAR
HANDS-FREE CALLING PACKAGES  LEARN MORE AT
ONSTAR.COM. ALL BECAUSE YOU'RE FAMILY

FICA-SS TAX· $ 2.92 FICA-HI TAX· $ .68 ON $ 47 17 OF LIFE INS.

| DRAFT/ DEPOSIT NO | PAY ENDING DATE | SOCIAL SECURITY NO | OVERTIME | | | FEDERAL TAX | | |
|---|---|---|---|---|---|---|---|---|
| | | | Paid Thru | Reg Hrs | Prem Hrs | Status | No Exempt | Supp Ded |
| 5844 | 3/31/2007 | *****4389 | | | | MARRIED | 0 | |

| CURRENT PAY and DEDUCTIONS | AMOUNT | YEAR-TO-DATE | CURRENT PAY and DEDUCTIONS | AMOUNT | YEAR-TO-DATE |
|---|---|---|---|---|---|
| BASE SALARY | 3325.50 | | FICA-HI TAX | 47 81 | 299 68 |
| HEALTH CARE | -54.50 | -327 00 | FEDERAL TAX | 385 99 | 2572.94 |
| FSA-HEALTH | -20 84 | -125 04 | MICHIGAN TAX | 107 91 | 687 55 |
| IMP INC LIFE INS | | 141.51 | FIN  PLANNING | 17 00 | 51 00 |
| BASIC PLUS | -133 00 | 798 00 | CHARITY - 0047 | 15 00 | 90 00 |
| ADDITIONAL PLUS | -67.00 | 399 00 | TOTAL DEDUCTIONS | 778 14 | |
| GROSS PAY | 3050 16 | 19470 47 | NET PAY | 2272 02 | |
| FICA-SS TAX | 204 43 | 1281 37 | | | |

| CORPORATION | GENERAL MOTORS CORPORATION |
|---|---|
| ISSUE/DEPOSIT DATE | 3/30/2007 |
| NET PAY | 2272 02 |
| EMPLOYEE NAME | DARLENE M SCHNEIDER |
| EMPLOYEE MAILING ADDRESS | 48611 LAKEVIEW EASTLOT 82 |
| | SHELBY TWSP., |
| | MI 48317-0000 |
| ROUTING NO | 27248576* |
| BANK ACCOUNT NO. | ******2-80 |

In accordance with your instructions a deposit has been made on the date indicated
to the bank account designated by you in the amount of net pay reflected on the
attached statement of earnings and deductions Notify your payroll department
immediately in the event of a change in bank account number

## _AN (after-tax)

### Your Monthly Contribution by Family Status

| | Self | Self + Spouse/ Domestic Partner | Self + Child(ren) | Self + Family | Carrier Number |
|---|---|---|---|---|---|
| ёita Dental | $8 00 | $15 00 | $18 00 | $23 00 | 800-870-9988 |
| Care - MI (S) | $8 00 | $15 00 | $18 00 | $23 00 | 800-870-9988 |
| : Concordia - MI (S) | $8 00 | $15 00 | $18 00 | $23 00 | 800-937-6432 |
| for Other GM Coverage | $0 00 | $0 00 | $0 00 | $0 00 | |
| | $0 00 | $0 00 | $0 00 | $0 00 | |

ё) HMO requires the use of network dentists

## .N (after-tax)

### Your Monthly Contribution by Family Status

| | Self | Self + Spouse/ Domestic Partner | Self + Child(ren) | Self + Family | Carrier Number |
|---|---|---|---|---|---|
| : Vision (S) | $1 00 | $2 00 | $2 00 | $3 00 | 800-638-0166 |
| for Other GM Coverage | $0 00 | $0 00 | $0 00 | $0 00 | |
| | $0 00 | $0 00 | $0 00 | $0 00 | |

## PENDING ACCOUNTS (pre-tax)

: responsibility to ensure that Health Care and/or Dependent Care Spending Account elections are consistent with your
year 2007 eligible expenses, as defined under the plan Any Health Care and/or Dependent Care Spending Account
ot used during the plan year are subject to forfeiture Also, if you are married to another GM employee, the maximum
ie Spending Account per employee is $2,500 if both employees are enrolled in coverage

| | Annual Minimum | Annual Maximum |
|---|---|---|
| :pending Account | $48 00 | $5,000 00 |

## INSURANCE

| | Option | Coverage Volume | Your Contribution Per Month |
|---|---|---|---|
| rance - Salaried | 2 X Annual Base Salary | $79,900 | $0 00 |

## FE INSURANCE (after-tax)

| | Option | Coverage Volume | Your Contribution Per Month |
|---|---|---|---|
| isurance - Salaried | 1 X Annual Base Salary | $79,900 | $34 36 |
| isurance - Salaried | 2 X Annual Base Salary | $159,700 | $68 67 |
| | | | $0 00 |

## LIFE INSURANCE – SPOUSE (after-tax)

| | Coverage Volume | Your Contribution Per Month |
|---|---|---|
| Insurance - Spouse | $10,000 | $3 40 |
| Insurance - Spouse | $25,000 | $8 50 |
| Insurance - Spouse | $50,000 | $17 00 |
| Insurance - Spouse | $75,000 | $25 50 |
| Insurance - Spouse | $100,000 | $34 00 |
| | | $0.00 |

ade in Texas, state law mandates that the amount of dependent life coverage you elect may not be greater than the
employee life insurance coverage (Basic Life and Optional Life combined)

## LIFE INSURANCE – CHILD (after-tax)

| | Coverage Volume | Your Contribution Per Month |
|---|---|---|
| Insurance - Child | $5,000 | $0 40 |
| Insurance - Child | $10,000 | $0 80 |
| | | $0 00 |

Mrs Darlene Schneider
48611 Lakeview East
Shelby Township, MI 48317
586-254-0283
dislandflower@aol com                    November 18, 2009

Proof of Claim  Motors Liquidation (General Motors Corporation)

Prior to the bankruptcy filing, salaried retirees have a Basic Life Insurance benefit
equal to one year's base salary as of date of retirement   As announced following
the bankruptcy filing, effective August 01, 2009, the Company reduced retiree
Basic Life Insurance coverage to a maximum of $10,000.

The loss of this coverage and amount of this claim is determined by the following
calculation   The attached paperwork is attached as supporting evidence of the
loss

Annualized Salary at time of retirement·            $79,900

Current amount of Company provided Life Insurance-  $10,000

Value of Lost Life Insurance                        $69,900

Darlene M Schneider

**Exhibit 4**

US_ACTIVE:\43765389\06\72240.0639

02007067

APS0614819369



| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor (Check Only One)**    Case No

☒ Motors Liquidation Company (f/k/a General Motors Corporation)    09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn LLC)    09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)    09-50028 (REG)
☐ MLC of Harlem Inc (f/k/a Chevrolet-Saturn of Harlem Inc)    09-13558 (REG)

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

**Your Claim is Scheduled As Follows**

THE GARDEN CITY GROUP, INC
NOV 2 5 2009

Name of Creditor (the person or other entity to whom the debtor owes money or property)   HICKMAN ROBERT R

Name and address where notices should be sent

HICKMAN, ROBERT R
PO BOX 3894
THOUSAND OAKS CA 91359-0894

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

Telephone number 805-491-3516
Email Address B R Hickman @pwpdbrunner.com

Name and address where payment should be sent (if different from above)

FILED - 51346
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

If an amount is identified above you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED, UNLIQUIDATED or CONTINGENT a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions you need not file again

1 Amount of Claim as of Date Case Filed, June 1, 2009   $ 262,716 ⁿ/₀₀

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority complete item 5 If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9) complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

2 Basis for Claim Loss of Retirement Benefits From Bankruptcy Filing
(See instruction #2 on reverse side)

3 Last four digits of any number by which creditor identifies debtor _____

3a Debtor may have scheduled account as _____
(See instruction #3a on reverse side)

4 Secured Claim (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe

Value of Property $ 262,716 ⁿ/₀₀ Annual Interest Rate 0 %

Amount of arrearage and other charges as of time case filed included in secured claim, if any $ _____

Basis for perfection _____

Amount of Secured Claim $ 262,716 ⁿ/₀₀ Amount Unsecured $ _____

6 Credits The amount of all payments on this claim has been credited for the purpose of making this proof of claim

7 Documents Attach redacted copies of any documents that support the claim, such as promissory notes purchase orders invoices itemized statements of running accounts, contracts, judgments, mortgages and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary (See instruction 7 and definition of redacted on reverse side)

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

5 Amount of Claim Entitled to Priority under 11 U S C § 507(a) If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages salaries or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business whichever is earlier – 11 U S C § 507(a)(4)

☒ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal family or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)

Amount entitled to priority

$ 262,716 ⁿ/₀₀

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

Date 11/8/2009

Signature The person filing this claim must sign it Sign and print name and title if any of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above Attach copy of power of attorney, if any

Robert R Hickman

FOR COURT USE ONLY

Penalty for presenting fraudulent claim  Fine of up to $500 000 or imprisonment for up to 5 years or both  18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc., are not authorized and are not providing you with any legal advice.*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL COMPLETED CLAIM FORM AS FOLLOWS. IF BY MAIL: THE GARDEN CITY GROUP INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P.O. BOX 9386, DUBLIN, OH 43017-4286. IF BY HAND OR BY OVERNIGHT COURIER: THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED.

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5:00 P.M. (PREVAILING EASTERN TIME)

**Court Name of Debtor and Case Number:**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim.
**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1  Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2  Basis for Claim:**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim.

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor if any.

**3a  Debtor May Have Scheduled Account As:**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4  Secured Claim:**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5  Amount of Claim Entitled to Priority Under 11 U.S.C. § 507(a):**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

For claims pursuant to 11 U.S.C. § 503(b)(9), indicate the amount of your claim arising from the value of goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases. (See DEFINITIONS, below.) Attach documentation supporting such claim.

**6  Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt.

**7  Documents:**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature:**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation or other entity that has filed a bankruptcy case.
The Debtors in these Chapter 11 cases are:

| | |
|---|---|
| Motors Liquidation Company | |
| (f/k/a General Motors Corporation) | 09-50026 (RFG) |
| MLCS, LLC | |
| (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation | |
| (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc. | |
| (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101(5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc. as described in the instructions above and in the Bar Date Notice.

**Secured Claim Under 11 U.S.C. § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's

---

## INFORMATION

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc. please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

**Additional Information**
If you have any questions with respect to this claim form please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation.com

November 18, 2009
*Robert R. Hickman*

## UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK --- CASE# 09-50026

I, was employed by General Motors Corporation as a a Salaried Employee for 40 years  November 1968 to November 2008

At the end of my 40th year, I was presented with a General Motors Salaried Employee Retirement Offer, which I accepted
This General Motors Sponsored Salaried Retirement Offer, included a continuation of my Salaried GM/Employee paid Medical, Vision, Dental, Long Term Care, Extended Care, Life Insurance and Prescription Drug Benefits

As a 40 year salaried employee, General Motors sponsored this Medical and Life Insurance Program, with an Employee Co-Pay
I have contributed to these required Co-Pays each and every year, with uninterrupted employee contributions and deductibles

Without warning, and without the benefit of other options, or financial recovery, General Motors cancelled my Salaried Medical and Life Insurance Coverage, which was a stated, and mutually agreed benefit of the Salaried GM Retirement Offer

After 40 years of participation, I have lost the agreed Salaried Retirement Coverage

I would have never considered, nor accepted this General Motors Salaried Retirement Offer, if there was any anticipated loss of Medical or Life Insurance Benefits  These Benefits were clearly spelled out in the General Motors Salaried Retirement Offer
Without this provision, I would have remained in my prior position
My prior Position still exist, exactly as when I held it, and I could have remained in that position, and maintained my Medical and Life Insurance Coverage's

However, by agreeing to the Salaried Retirement Offer, General Motors eliminated these coverage's within six months of accepting the Salaried Retirement Offer, which clearly provided these stated coverage's

Retirement Benefits stated in the Mutual Retirement Offer, were eliminated in violation of the General Motors Salaried / Employee signed agreement

My signed Retirement Offer, included these Accumulated Salaried Benefits, which I had worked for during my 40 years of General Motors employment, and contributed to, during the required years, and in the required monetary amounts
I believe I am entitled to full re-instatement of the Benefits stated in the signed GM Retirement Offer, or monetary compensation in lieu of the violation of the GM Salaried Retirement Agreement

- **Loss of General Motors Salaried Retirement Benefits Currently Due:**

| **Robert R. Hickman** | | **Laurie P. Hickman** | |
|---|---|---|---|
| Basic Life Insurance (Basic Life) paid by Employer | **$121,000.00** | **$121,000.00** | (Beneficiary) |
| Current Amount of Life Insurance paid by Employer | **$10,000.00** | **$10,000.00** | (Beneficiary) |
| Amount of Employee Life Insurance Loss from GM | **$111,000.00 (loss)** | **$111,000.00 (loss)** | (Beneficiary) |

**Medical**
**Prescription Drugs**
**Vision**
**Dental**
**Extended Care**

| **Medical Loss (Summary)** | *(prior to age 65)* **$1360.00** | **$117,760.00** *(Includes prior to and after age 65)* |
|---|---|---|
| | *(life expectances after age 65)* **$32,596.00** | |

- **TOTAL SALARIED MEDICAL AND LIFE INSURANCE LOSS FOR** *ROBERT R. HICKMAN*

- **CLAIM TOTAL DUE TO ELIMINATION OF GENERAL MOTORS SALARIED RETIREMENT BENEFITS.**

- **$262,716.00**

November 18, 20[illegible]
Robert R. Hickman

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK --- CASE# 09-50026**

I was employed by General Motors Corporation as a Salaried Employee for 40 years, November 1968 to November 2008.

At the end of my 40th year I was presented with a General Motors [illegible] Employee Retirement Offer, which I accepted. This General Motors Sponsored Salaried Retirement Offer [illegible] continuation of my Salaried GM Employee [illegible] Vision, Dental, [illegible] Care, Extended [illegible] Life Insurance and [illegible] Drug Benefits.

As a 40 year salaried employee, General Motors sponsored this Medical and Life Insurance Program with an Employee Co-Pay. I have contributed to these required Co-Pays each and every year with [illegible] employee contributions and deductions.

Without warning and without the benefit of other options or financial recovery, General Motors cancelled my Salaried Medical and Life Insurance Coverage, which was [illegible] stated [illegible] of the Signed GM Retirement Offer.

After [illegible] years of participation I have lost the [illegible] Salaried Retirement [illegible].

I would have never considered nor accepted this General Motors Salaried Retirement Offer if there was any anticipated loss of Medical or Life Insurance Benefits. These Benefits were clearly spelled out in the General Motors [illegible] Retirement Offer. [illegible] this provision I would have elected to [illegible].
My prior Position still exists, exactly as [illegible] and I could have remained in [illegible] position and maintained my Medical and Life Insurance Coverage.

However, by agreeing to the Salaried Retirement Offer, General Motors eliminated these coverage's within [illegible] months of accepting the Salaried Retirement Offer which clearly provided these salaried coverages.

Retirement Benefits stated in the Mutual Retirement Offer were eliminated in violation of the General Motors Salaried Employee signed agreement.

My signed Retirement Offer, included these Accumulated Salaried Benefits which I had worked for during my 40 years of General Motors employment and contributed to during the required years from the required monetary amounts.
I believe I am entitled to full re-instatement of the Benefits stated in the signed GM Retirement Offer, or monetary compensation in lieu of this violation of the GM Salaried Retirement Agreement.

Robert R. Hickman ____________________ Laure P. Hickman

| | | |
|---|---|---|
| Basic Life Insurance (Basic Life) paid by Employee | $121,000.00 | $121,000.00 (Beneficiary) |
| Current Amount of Life Insurance paid by Employer | $10,000.00 | $10,000.00 (Beneficiary) |
| Amount of Employee Life Insurance Loss from GM | $111,000.00 (loss) | $111,000.00 (loss) (Beneficiary) |

Medical
Prescription Drug
Vision
Dental
Extended Care
Medical Loss (Summary) [illegible] (to age 65) $[illegible] $117,750.00 (includes prior to and after age 65)
Life expectancies after age 65) $37,[illegible]

TOTAL SALARIED MEDICAL AND LIFE INSURANCE FOR [illegible]

CLAIM TOTAL DUE TO ELIMINATION OF GENERAL MOTORS SALARIED RETIREMENT BENEFITS

## CadillacBob

**From:**   <communications@gmret org>
**To:**     "Robert Hickman" <cadillacbob1968@roadrunner com>
**Sent:**   Sunday, November 01, 2009 11 52 AM
**Subject:** Email Alert - Salaried Retiree Loss Calculations



The GMRA leadership team has completed development of guidance for our members on loss calculation and filing of claims in the GM bankruptcy

Included below in this message is the material you will need to determine your losses   As you perform your loss calculations, remember that the health care calculation is per person, so don't forget to calculate and include the losses for your spouse or other dependent(s)

To provide further assistance with completing your forms, a sample Proof of Claim form has been posted to the GMRA website   The example given is for a life insurance loss   You would complete the form for a health insurance loss in the same way, using your calculated loss total in Item #1 and the verbiage "Value of diminished/cancelled (whichever applies to you) health insurance", or similar words, in Item #2

In Item #3, GMRA recommends use of the last four digits of your Social Security Number, by which Motors Liquidation can identify you as a retiree of General Motors Corporation. Note that Item #7 indicates you should attach copies of documents that support your claim. Such documentation might include a copy of a GM or Metropolitan confirmation of insurance amount prior to June 1, 2009. Send copies only   In the absence of documents, such as in the health insurance loss, attach an explanation   This might include a description of your calculations   Your claim may or may not be considered if you fail to attach support for your claim  Finally, don't forget to date and sign your claim!

The address for first-class mailing of your Proof of Claim form is

   The Garden City Group, Inc

   Attn   Motors Liquidation Company Claims Processing

   P.O. Box 9386

   Dublin, Ohio 43017-4286

Your claims must be actually received by The Garden City Group on or before the Bar Date of November 30, 2009,

11/22/2009

to be considered timely filed. If you wish to receive an acknowledgement of your filing, you must provide a self-addressed, stamped envelope and a copy of the proof of claim form(s) when you submit your claim

Your GMRA leadership team is striving to provide value to our members by providing this guidance, which we have reserved exclusively for GMRA members  Accordingly, this message will not be posted on the website.  Should you inadvertently delete your message, we'll be happy to send an additional communication upon request

We hope you will find this information easy to understand and apply to your own situation  Please help us continue to grow GMRA by letting your active and retired GM friends and family know about our work on behalf of GM retirees

Thanks again for your membership and support!

<!--[endif]-->All the best,

<!--[if !vml]-->

## Salaried Retiree Loss Calculations for GM Bankruptcy Claim Filing

Since the GM Bankruptcy Proof of Claim letters were mailed out many GMRA members have requested our recommendations on filing individual claims for loss  While every retiree has a unique situation, and we can't possibly respond to each individual, we can suggest some general guidelines for you to consider in measuring your loss, and for filing your claim  Typical loss categories include Life Insurance, Health Insurance (including Medical, Prescription, Dental, Vision and Extended Care Coverage) and Executive Supplemental programs  We recommend filing a separate claim for every loss category that applies to your situation

**Note:  the filing deadline for receipt by Motors Liquidation is November 30, 2009, so you should act quickly if you wish to file a claim.**

While GMRA can't give legal or financial counsel, we believe that it can't hurt to file if you feel you have lost significant value  However, you should know that the Unsecured Creditors' Committee of the Motors Liquidation Company ("old GM") will be sorting through literally thousands of claims, and it is generally  expected at this time that claimants will only receive pennies on the dollar -- if anything at all

For the purposes of this letter, we will focus on health benefits and life insurance, because those two areas impact nearly all salaried retirees  Retirees may also consider filing for losses in pension or other benefit programs impacted by the bankruptcy and in the period leading up to the bankruptcy  For example, Health Care benefits were eliminated for all retirees over 65 on January 01, 2009, just five months prior to the bankruptcy filing  Although this preceded the actual bankruptcy filing, the action was effected at a time during which General Motors was insolvent, as illustrated by the federal loans that began to support the company in December 2008  Similarly, many executives were severely impacted by changes in their non-qualified supplemental programs both before and after the bankruptcy filing date

In the next sections of this letter, you will find step-by-step guides on how to calculate losses for health benefits and life insurance  Following these samples, you will find a table wherein GMRA has completed the health benefits calculation for your convenience  Just find your age as of January 1, 2009, and read across to view your Loss

Calculation Total  This table is based on the Social Security Administration's period life table which predicts longevity based on gender and current age  (Please visit http://www.ssa.gov/OACT/STATS/table4c6.html to learn more about the Social Security Administration's period life table )  We suggest that the SSA table be used as a reference for any separate loss calculations you may initiate

GMRA will continue to investigate other options -- legal and otherwise -- on behalf of salaried retirees  In the meantime, use your best judgment on whether this applies to your personal situation, or, if appropriate, consult your attorney for more specific advice regarding your circumstances  If you no longer have your form and wish to submit a claim or your attorney advises you to submit a claim, the form can be obtained here:
http://www.motorsliquidation.com or  http://www.uscourts.gov/bkforms.

## Life Insurance

Prior to the bankruptcy filing, salaried retirees had a Basic Life Insurance benefit equal to one year's base salary as of date of retirement  As announced following the bankruptcy filing, effective August 01, 2009, the Company reduced retiree Basic Life Insurance coverage to a maximum of $10,000  While many retirees continue to pay for Optional and/or Dependent Life Insurance for themselves, their spouse, or their dependents after this date, the amount of the loss in Company-paid life insurance on the retiree should, in our opinion, be claimed as a loss

The simplest method to calculate your loss would be to determine the amount of Company-provided Basic Life Insurance in effect prior to the August 1, 2009, reduction  Typically, this would be equivalent to the annualized salary of the employee in effect at the time of retirement  From this amount, simply subtract $10,000  The difference is the amount that you have lost in the value of your life insurance  If an employee / retiree has died since the implementation of any of these reductions, a claim should be completed by the surviving spouse or the executor of the estate

### Sample Calculation

| | |
|---|---|
| Annualized Salary at time of retirement | $65,000 |
| Current amount of Company provided Life Insurance | - $10,000 |
| Value of Lost Life Insurance | $55,000 |

## Health Care Benefit Losses

For those retirees and/or surviving spouses less than 65 years of age, GM recently announced a substantial increase in cost for continued participation in the GM plan, which also underwent significant plan modifications  Since those under 65 have not completely lost GM-paid health care coverage, it is necessary to first determine a value for the loss prior to age 65, then add that amount to the loss of all coverage beginning at 65 and through the remainder of your life expectancy

11/22/2009

For those who lost health care coverage prior to the bankruptcy filing, consider using the actual date you lost the GM benefit as the start date for calculating your loss. For many this was Jan 01, 2009, or the month in which you became Medicare eligible

Calculate the amount of loss for the retiree, spouse, and dependents separately, and then add the individual losses to determine the total loss

Based on information recently provided by General Motors Company, the average cost of health care for Medical, Prescription, Dental, Vision, and Extended Care Coverage to the company under the salaried cap implemented in 2006/7 was $5500   Based on the announced modifications, the Company has revised the cap and the new average cost to GM to provide GM-paid health care is $4140 annually   GMRA recommends calculating the loss for health care using the difference between these figures, or $1360 per year, per person under 65

Beginning at 65, the loss per year, per person, would be $5500 minus the $3600 annual Level Benefit through life expectancy, or $1900.   This is only one method of determining your health care loss   If you have estimated costs for your unique situation, consider using those in your calculations

### Sample Calculation for a Male 58 year old retiree

All cost figures shown below are estimated[1]

| | |
|---|---|
| Annual pre-65 benefit loss beginning 2010 | 1360 |
| Number of years remaining until age 65 | X  7 |
| Amount of loss prior to age 65 | $9520 |

Add this amount to the estimate of health care benefit loss from age 65 until full life expectancy

| | |
|---|---|
| Annual post-65 benefit loss beginning 2017 | $1900 |
| Number of years between 65 and full life expectancy | X  14 97 |
| Amount of loss after age 65 | $28,443 |
| Total Lifetime Loss | $37,963 |

### Dental Coverage

Included in health care calculation above

### Vision Coverage

Included in health care calculation above

### Extended Care Coverage (ECC)

Included in health care calculation above

11/22/2009

SSA Actuanal Table Data
http //www ssa gov/OACT/STATS/table4c6 html

| Exact Age as of Jan 1, 2009 | Life Expectancy Male | Total | Life Expectancy Female | Total |
|---|---|---|---|---|
| 45 | 32 81 | $51,539 | 36 79 | $59,101 |
| 46 | 31 93 | $50,407 | 35 87 | $57,893 |
| 47 | 31 06 | $49,294 | 34 96 | $56,704 |
| 48 | 30 2 | $48,200 | 34 05 | $55,515 |
| 49 | 29 34 | $47,106 | 33 14 | $54,326 |
| 50 | 28 49 | $46,031 | 32 24 | $53,156 |
| 51 | 27 65 | $44,975 | 31 35 | $52,005 |
| 52 | 26 83 | $43,957 | 30 46 | $50,854 |
| 53 | 26 | $42,920 | 29 57 | $49,703 |
| 54 | 25 19 | $41,921 | 28 69 | $48,571 |
| 55 | 24 37 | $40,903 | 27 82 | $47,458 |
| 56 | 23 57 | $39,923 | 26 94 | $46,326 |
| 57 | 22 77 | $38,943 | 26 08 | $45,232 |
| 58 | 21 97 | $37,963 | 25 22 | $44,138 |
| 59 | 21 19 | $37,021 | 24 37 | $43,063 |
| 60 | 20 42 | $36,098 | 23 53 | $42,007 |
| 61 | 19 66 | $35,194 | 22 7 | $40,970 |
| 62 | 18 91 | $34,309 | 21 88 | $39,952 |
| 63 | 18 17 | $33,443 | 21 08 | $38,972 |
| 64 | 17 44 | $32,596 | 20 28 | $37,992 |
| 65 | 16 73 | $31,787 | 19 49 | $37,031 |
| 66 | 16 02 | $30,438 | 18 7 | $35,530 |
| 67 | 15 32 | $29,108 | 17 93 | $34,067 |
| 68 | 14 63 | $27,797 | 17 17 | $32,623 |
| 69 | 13 96 | $26,524 | 16 42 | $31,198 |
| 70 | 13 3 | $25,270 | 15 69 | $29,811 |
| 71 | 12 66 | $24,054 | 14 97 | $28,443 |
| 72 | 12 04 | $22,876 | 14 27 | $27,113 |
| 73 | 11 43 | $21,717 | 13 58 | $25,802 |
| 74 | 10 84 | $20,596 | 12 9 | $24,510 |
| 75 | 10 26 | $19,494 | 12 24 | $23,256 |
| 76 | 9 7 | $18,430 | 11 59 | $22,021 |
| 77 | 9 15 | $17,385 | 10 96 | $20,824 |
| 78 | 8 63 | $16,397 | 10 34 | $19,646 |
| 79 | 8 11 | $15,409 | 9 74 | $18,506 |
| 80 | 7 62 | $14,478 | 9 16 | $17,404 |
| 81 | 7 14 | $13,566 | 8 59 | $16,321 |
| 82 | 6 68 | $12,692 | 8 04 | $15,276 |

| Exact Age as of Jan 1, 2009 | Life Expectancy Male | Total | Life Expectancy Female | Total |
|---|---|---|---|---|
| 83 | 6 24 | $11,856 | 7 52 | $14,288 |

## CadillacBob

**From:** <communications@gmret org>
**To:** "Robert Hickman" <cadillacbob1968@roadrunner com>
**Sent:** Tuesday, November 03, 2009 6 16 AM
**Subject:** bankruptcy claim update



### IMPORTANT UPDATE TO

### Salaried Retiree Loss Calculations for GM Bankruptcy Claim Filing

In the Health Care Benefit Losses section of GMRA's November 1 Email Alert, a clarification must be made to the following paragraph, which immediately preceded the sample calculation  The change is identified by blue font

Beginning at 65, the loss per year, per ~~person~~ retiree, would be $5500 minus the $3600 annual Level Benefit through life expectancy, or $1900  Since only the retiree/surviving spouse receives this benefit offset payment, the annual loss for a spouse or eligible dependent would be the full $5500  This is only one method of determining your health care loss  If you have estimated costs for your unique situation, consider using those in your calculations

Similarly, the table included in the original message is fully accurate only for the GM retiree/surviving spouse, understating the loss for a spouse / dependent  An additional table follows to address these losses

If you have already filed your claim, you may file an amended claim by submitting an additional form  Check the box in the section to the right of your name and address to indicate your submission is an amendment

GMRA apologizes for this oversight in our original guidance and any resulting inconvenience to our members

11/22/2009

## Spouse/Dependent Health Care Insurance Calculations

SS Actuanal Table
http //www ssa gov/OACT/STATS/table4c6 html

| Exact Age as of Jan 1, 2009 | Male Life Expectancy | Total | Female Life Expectancy | Total |
|---|---|---|---|---|
| 45 | 32 81 | $97,655 | 36 79 | $119,545 |
| 46 | 31 93 | $96,955 | 35 87 | $118,625 |
| 47 | 31 06 | $96,310 | 34 96 | $117,760 |
| 48 | 30 2 | $95,720 | 34 05 | $116,895 |
| 49 | 29 34 | $95,130 | 33 14 | $116,030 |
| 50 | 28 49 | $94,595 | 32 24 | $115,220 |
| 51 | 27 65 | $94,115 | 31 35 | $114,465 |
| 52 | 26 83 | $93,745 | 30 46 | $113,710 |
| 53 | 26 | $93,320 | 29 57 | $112,955 |
| 54 | 25 19 | $93,005 | 28 69 | $112,255 |
| 55 | 24 37 | $92,635 | 27 82 | $111,610 |
| 56 | 23 57 | $92,375 | 26 94 | $110,910 |
| 57 | 22 77 | $92,115 | 26 08 | $110,320 |
| 58 | 21 97 | $91,855 | 25 22 | $109,730 |
| 59 | 21 19 | $91,705 | 24 37 | $109,195 |
| 60 | 20 42 | $91,610 | 23 53 | $108,715 |
| 61 | 19 66 | $91,570 | 22 7 | $108,290 |
| 62 | 18 91 | $91,585 | 21 88 | $107,920 |
| 63 | 18 17 | $91,655 | 21 08 | $107,660 |
| 64 | 17 44 | $91,780 | 20 28 | $107,400 |
| 65 | 16 73 | $92,015 | 19 49 | $107,195 |
| 66 | 16 02 | $88,110 | 18 7 | $102,850 |
| 67 | 15 32 | $84,260 | 17 93 | $98,615 |
| 68 | 14 63 | $80,465 | 17 17 | $94,435 |
| 69 | 13 96 | $76,780 | 16 42 | $90,310 |
| 70 | 13 3 | $73,150 | 15 69 | $86,295 |
| 71 | 12 66 | $69,630 | 14 97 | $82,335 |
| 72 | 12 04 | $66,220 | 14 27 | $78,485 |
| 73 | 11 43 | $62,865 | 13 58 | $74,690 |
| 74 | 10 84 | $59,620 | 12 9 | $70,950 |
| 75 | 10 26 | $56,430 | 12 24 | $67,320 |
| 76 | 9 7 | $53,350 | 11 59 | $63,745 |
| 77 | 9 15 | $50,325 | 10 96 | $60,280 |
| 78 | 8 63 | $47,465 | 10 34 | $56,870 |
| 79 | 8 11 | $44,605 | 9 74 | $53,570 |
| 80 | 7 62 | $41,910 | 9 16 | $50,380 |
| 81 | 7 14 | $39,270 | 8 59 | $47,245 |
| 82 | 6 68 | $36,740 | 8 04 | $44,220 |
| Exact Age as of Jan 1, 2009 | Male Life Expectancy | Total | Female Life Expectancy | Total |
| 83 | 6 24 | $34,320 | 7 52 | $41,360 |

11/22/2009

| 84 | 5 82 | $32,010 | 7 02 | $38,610 |
| 85 | 5 41 | $29,755 | 6 54 | $35,970 |
| 86 | 5 03 | $27,665 | 6 08 | $33,440 |
| 87 | 4 67 | $25,685 | 5 65 | $31,075 |
| 88 | 4 34 | $23,870 | 5 25 | $28,875 |
| 89 | 4 02 | $22,110 | 4 87 | $26,785 |
| 90 | 3 72 | $20,460 | 4 52 | $24,860 |
| 91 | 3 45 | $18,975 | 4 19 | $23,045 |
| 92 | 3 2 | $17,600 | 3 89 | $21,395 |
| 93 | 2 97 | $16,335 | 3 61 | $19,855 |
| 94 | 2 77 | $15,235 | 3 36 | $18,480 |
| 95 | 2 59 | $14,245 | 3 13 | $17,215 |
| 96 | 2 43 | $13,365 | 2 93 | $16,115 |
| 97 | 2 29 | $12,595 | 2 75 | $15,125 |
| 98 | 2 16 | $11,880 | 2 58 | $14,190 |
| 99 | 2 05 | $11,275 | 2 43 | $13,365 |
| 100 | 1 94 | $10,670 | 2 29 | $12,595 |
| 101 | 1 83 | $10,065 | 2 15 | $11,825 |
| 102 | 1 73 | $9,515 | 2 02 | $11,110 |
| 103 | 1 63 | $8,965 | 1 89 | $10,395 |
| 104 | 1 54 | $8,470 | 1 77 | $9,735 |
| 105 | 1 45 | $7,975 | 1 66 | $9,130 |
| 106 | 1 37 | $7,535 | 1 55 | $8,525 |
| 107 | 1 28 | $7,040 | 1 44 | $7,920 |
| 108 | 1 21 | $6,655 | 1 34 | $7,370 |
| 109 | 1 13 | $6,215 | 1 25 | $6,875 |
| 110 | 1 06 | $5,830 | 1 16 | $6,380 |
| 111 | 0 99 | $5,445 | 1 07 | $5,885 |
| 112 | 0 92 | $5,060 | 0 99 | $5,445 |
| 113 | 0 86 | $4,730 | 0 91 | $5,005 |
| 114 | 0 8 | $4,400 | 0 84 | $4,620 |
| 115 | 0 74 | $4,070 | 0 76 | $4,180 |
| 116 | 0 68 | $3,740 | 0 7 | $3,850 |
| 117 | 0 63 | $3,465 | 0 63 | $3,465 |
| 118 | 0 58 | $3,190 | 0 58 | $3,190 |
| 119 | 0 53 | $2,915 | 0 53 | $2,915 |

If you do not wish to receive emails from GMRA, click here

Response to Objection

I am a claimant in the General Motors bankruptcy case (Claim #36256, and #36257), and filing my Objection to Eighty-Third Omnibus Objection to Claims that "Claims to be Disallowed and Expunged."

I respectfully request that the court re-consider that General Motors retains the unilateral right to withhold or eliminate benefits promised to employees during the lifetime career and then post retirement, leaving employee in a vulnerable financial and hardship position based upon these decisions.

Furthermore, it would be greatly appreciated if the court would allow hardship cases to be heard individually and consider a settlement that would bestow compensation that would allow the party to prepare other options or changes that would improve their financial position. In my case, the compensation would provide some funding necessary to provide for alternative income to make up the difference for what I have lost.  The job market is not conducive to hiring an employee at age sixty, and I also worry what lays ahead in my future should General Motors decide to reduce or eliminate additional retirement benefits and/or should our pension fund see a great decline or be taken over by the Pension Benefit Guarantee Corporation (PBGC).

For most of my career, GM would prepare a "Personal Total Compensation Summary," which stated that the benefits were part of my total compensation.  Of course there was the usual disclaimer, but it was taken as a "legalese,' because I don't remember this disclaimer being stated in meetings or discussions as a warning or reminder and it appeared that our leaders were expecting the same, plus there were generations before us who did have what we were promised, so why would we expect anything different.

Total compensation was always portrayed as something to count on and plan for my family's future and my retirement.  These communications came most recently from GM Officer and Human Resources Vice President Katy Barclay.  It emphasizes those benefits that offer health care and financial protection to you and your family in the event of illness, injury or death.  In addition, it provides important information for planning a secure and successful retirement.  These statements which I trusted in General Motors Management was the basis for having a 37 year career with General Motors Corporation, not for the salary ($79,000), but for the benefits that would protect our family and myself and disabled spouse in retirement.  I took a voluntary retirement due to the health condition of my husband, and we are looking towards open heart surgery in the near future as my husband's health continues to deteriorate.

.

The reduction in retirement benefits has caused distress and hardship because my husband has been totally and permanently disabled for virtually most of our married life, and receives Medicare (disability).   In January, my husband was eliminated from GM health care because he is receiving Medicare, but was promised compensation for these benefits in our pension check, however since he is under the age of 65, we do not receive <u>any</u> compensation for this loss and now we also have to pay for Medicare supplement ($183/month) for my husband in addition to my own out of pocket expenses ($3,500) for health care and medication that are no longer covered by the selected health care provider.

In addition, my life insurance benefit was to be equal to one year salary at the time of retirement.  This amount was planned to compensate the difference of the reduction of my pension benefit to my spouse in the case that I predecease him.  As announced following the bankruptcy filing, effective August 1, 2009, the company reduced retiree Basic Life Insurance coverage to a maximum of $10,000.

No mention was ever made by the company to reverse their decision should the new company become profitable.  General Motors was required to reduce their costs due to the bankruptcy proceedings, but retired employees should not have to suffer a lifetime for the brunt of these past losses. As it is, the bankruptcy greatly affected our retirement savings with the loss on the stock market and our investment in General Motors in stock and stock options.  During my career, Stock Options were given in lieu of monetary award, but could not be sold for five years at which time the bankruptcy occurred and was also taken as a loss.

I hope you will consider my plea with the utmost consideration as it is a life altering decision.  My Claim #36256 in the amount of $182,588 for the loss of Health Insurance Coverage and Claim #36257 in the amount of $69,900 for the loss of Basic Life Insurance coverage.

Darlene M. Schneider

**<u>Exhibit 5</u>**





| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor** (Check Only One)
☐ Motors Liquidation Company (f/k/a General Motors Corporation)
☐ MLCS, LLC (f/k/a Saturn, LLC)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc)

**Case No**
09-50026 (REG)
09-50027 (REG)
09-50028 (REG)
09-13558 (REG)

NOTE  *This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5)  All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

**Name of Creditor** (the person or other entity to whom the debtor owes money or property)
BELLAIRE, LINDA K

**Name and address where notices should be sent**
BELLAIRE, LINDA K
1210 LAKE SHORE BLVD
LAKE ORION, MI 48362-3907

Telephone number  248 693 8654
Email Address  dollvintage@email.com

**Name and address where payment should be sent (if different from above)**
FILED - 62922
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box to indicate that this claim amends a previously filed claim

**Court Claim Number** _____
*(If known)*

Filed on _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

**Your Claim is Scheduled As Follows.**

THE GARDEN CITY GROUP, INC.
NOV 28 2009

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount)  If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED UNLIQUIDATED or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1  Amount of Claim as of Date Case Filed, June 1, 2009**  $ 743,073

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2  Basis for Claim**  Employee supplemented benefit program + Contribution based benefits
(See instruction #2 on reverse side )

**3  Last four digits of any number by which creditor identifies debtor**  4087

**3a  Debtor may have scheduled account as** _____
(See instruction #3a on reverse side )

**4. Secured Claim** (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

**Nature of property or right of setoff**  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
**Describe**

**Value of Property**  $ _____  **Annual Interest Rate** ___%

**Amount of arrearage and other charges as of time case filed included in secured claim, if any**  $ _____

**Basis for perfection** _____

**Amount of Secured Claim**  $ _____  **Amount Unsecured**  $ _____

**5  Amount of Claim Entitled to Priority under 11 U S C § 507(a)**  If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☒ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase  lease  or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case - 11 U S C § 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

**Amount entitled to priority**
$ 241,020

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**6  Credits**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7  Documents**  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of  redacted  on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**Date** 11/24/09

**Signature**  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any

*Linda K Bellaire*

**FOR COURT USE ONLY**

*Penalty for presenting fraudulent claim*  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571
**Modified B10 (GCG) (12/08)**

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc., are not authorized and are not providing you with any legal advice*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS. **IF BY MAIL** THE GARDEN CITY GROUP, INC, ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, PO BOX 9386, DUBLIN, OH 43017-4286 **IF BY HAND OR OVERNIGHT COURIER** THE GARDEN CITY GROUP, INC, ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017 PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004 **ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED**

**THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 P M  (PREVAILING EASTERN TIME)**

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009 You should select the debtor against which you are asserting your claim
**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case Please provide us with a valid email address A separate space is provided for the payment address if it differs from the notice address The creditor has a continuing obligation to keep the court informed of its current address See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing Follow the instructions concerning whether to complete items 4 and 5 Check the box if interest or other charges are included in the claim

**2  Basis for Claim**
State the type of debt or how it was incurred Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a  Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured Skip this section if the claim is entirely unsecured (See DEFINITIONS below) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5  Amount of Claim Entitled to Priority Under 11 U S C  § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS below) A claim may be partly priority and partly non-priority For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U S C § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1 2009, the date of commencement of these cases (See DEFINITIONS below) Attach documentation supporting such claim

**6  Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7  Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt You may also attach a summary You must also attach copies of documents that evidence perfection of any security interest You may also attach a summary FRBP 3001(c) and (d) If the claim is based on the delivery of health care goods or services, see instruction 2 Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it FRBP 9011 If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature Print the name and title, if any, of the creditor or other person authorized to file this claim State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices Attach a complete copy of any power of attorney Criminal penalties apply for making a false statement on a proof of claim

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing See 11 U S C § 101(5) A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing The creditor must file the form with The Garden City Group, Inc as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C. § 506(a)**
A secured claim is one backed by a lien on property of the debtor The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors The amount of the secured claim cannot exceed the value of the property Any amount owed to the creditor in excess of the value of the property is an unsecured claim Examples of liens on property include a mortgage on real estate or a security interest in a car A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding In some states, a court judgment is a lien A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification, or financial-account number all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc , please provide a self-addressed stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims One or more of these entities may contact the creditor and offer to purchase the claim Some of the written communications from these entities may easily be confused with official court documents or communications from the debtor These entities do not represent the bankruptcy court or the debtor The creditor has no obligation to sell its claim However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C § 101 et seq ), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation.com

---

### INFORMATION

1/11

Bankruptcy Claim Summary

ECC Contribution Value  $ 420
Life Insurance Value    $240,600
    Sub Total            $241,020

Benefit Reductions
Medical Value·   $ 34,964
Dental Value     $ 64,600
ECC Value        $400,000
Vision Value     $ 2,489
   Sub Total        $ 502,053

    Total          $ 743,073



Due to the Federally induced bankruptcy of General Motors, my contribution to Extended Care Coverage, an employee-supplemented benefit, has been suspended  This coverage, had to be maintained for it to continue to apply, in other words, if the benefit was declined, it could never be reinstated

I upheld my contractual requirements, by continuing my contributions, General Motors has not

I have been making contributions to this benefit since 1/1/2003 that will continue 'til 12/31/2009

The dollar value of my contributions to this benefit will be totaling
$420 by 12/31/09

|      |      |
|------|------|
| 2009 | $60  |
| 2008 | $60  |
| 2007 | $60  |
| 2006 | $60  |
| 2005 | $60  |
| 2004 | $60  |
| 2003 | $60  |
|      | $420 |

$5 / mo / per year / individual
per GM annual benefits
Publication. Contributions
confirmed by Met Life per
phone 11/20/09.

3 / 11

## Extended Care Coverage



*Total annual benefit*
*$50,000 / year / individual.*



3 GM-H-425G 104

9 / 11

Due to the Federally induced bankruptcy of General Motors, my ECC coverage is being eliminated   This coverage was provided as a result of my 35 year employment and was a continuation of compensation, not just a benefit of being a retiree   Therefore, I upheld my contractual requirements by continuing my employment and subsequent retirement and contribution to this benefit, prior to the bankruptcy filing

The estimated value of this benefit at $50,000 per year with a life expectancy of 92 years, commencing at 85 would be valued at 8 years X $50,000=

$400,000



5/11

Due to the Federally induced bankruptcy of General Motors, my life insurance, the result of a salaried employee compensation package, has been reduced by $240,600  This coverage was provided as a result of my 35 year employment and was a continuation of compensation, not just a benefit of being a retiree  Therefore, I upheld my contractual requirements by continuing my employment and subsequent retirement prior to the bankruptcy filing

The pre August 1, 2009 value of the policy was $250,600, this has been reduced to $10,000 a difference of $240, 600

This level of reduction is not stated as allowed by the policy in place at my retirement And none of them apply now or at the time of reduction

"The benefits available to you and your eligible survivors are those provided under the Life and Disability Benefits Program in effect when you last worked for General Motors "

## Disqualification, Ineligibility, Denial, Loss, Forfeiture, Suspension, Offset, Reduction or Recovery of Benefits

*Prior insurance value confirmed by Met Life on 11/20/09 to be $250,600.*

The following circumstances may result in disqualification, ineligibility, denial, loss, offset, suspension, reduction or recovery of benefits  The circumstances include but are not limited to  insufficient length of service, insufficient credited service, Impartial Medical Opinion Examinations, offsets due to Social Security, workers' compensation, and retirement benefits, failure to comply with program eligibility rules, falsification of disability claim forms, gainful employment, termination of the plan, any benefit plan overpayments due to any reason, and end of continuance period, and state of residence

6/11

Due to the Federally induced bankruptcy of General Motors, my Medical coverage is being substantially modified to my detriment  This coverage was provided as a result of my 35 year employment and was a continuation of compensation, not just a benefit of being a retiree  Therefore, I upheld my contractual requirements by continuing my employment and subsequent retirement and contribution to this benefit, prior to the bankruptcy filing

The value of this benefit reduction is estimated to be   $34,964
Determined as follows
Increased cost of contribution  to me 11 years X $77 X 12= $10,164
Plus the increased copay/ deductibles are $2500-300= $2200 X 11 = $24,200

11 years = 54 - 65 years.

7/11

## BMP, EMP, PPO and HMO At-A-Glance

| | BMP (1) | EMP (1) | PPO | | HMO |
|---|---|---|---|---|---|
| | | | In-Network (1) | Out-Of-Network (2) | |
| **Monthly contributions** | None | Yes | Varies | Varies | Varies |
| **Annual deductible:** | | | | | |
| Individual | $900 | $450 | $300 | | None |
| Family | $1,800 | $900 | $600 (Combined in and out of Network) | | None |
| **Copayment. (3)** | | | | | |
| Plan pays | 75% | 80% | 90% | 70% PPO Fee | Varies |
| You pay | 25% | 20% | 10% | The balance | Varies |
| **Out-of-pocket maximum: (3)** | | | | | |
| Individual | $2,500 | $1,500 | $1,300 | Not applied to | None |
| Family | $5,000 | $3,000 | $2,600 | maximum | None |

(1) *Annual deductibles, copayments, and out-of-pocket maximums are calculated on the basis of "Reasonable and Customary" (R&C) charges as determined by the carrier For PPOs, and for BMP and EMP in the case of those carriers with "participating" or approved provider arrangements, it is the amount the participating/approved provider has agreed to accept for covered services*

(2) *Except in the case of a bona fide medical emergency, if you use a non-PPO provider without the proper preauthorization, the plan will pay 70% of the lesser of the charge or the PPO's fee schedule and you will pay the rest*

(3) *Deductibles, copayments, and out-of-pocket maximums apply only to covered hospital, surgical, and medical services They do not include mental health/substance abuse coverage or prescription drug coverage PPO out-of-network copayments will not be applied to PPO out-of-pocket maximums*

$2500 = From 2010 GM Salary retirement
Annual deductable per individual

- $ 300 = From above
---
$ 2200



26



3 GM-H-425G 104

8/11

Due to the Federally induced bankruptcy of General Motors, my Dental coverage is being eliminated  This coverage was provided as a result of my 35 year employment and was a continuation of compensation, not just a benefit of being a retiree  Therefore, I upheld my contractual requirements by continuing my employment and subsequent retirement and contribution to this benefit, prior to the bankruptcy filing

The value of this benefit at $1700 per year with a life expectancy of 92 years would be valued at 38 years X $1700=

$64,600



9/11

# What Is Not Covered

Services not covered under dental provisions include, but are not necessarily limited to, the following

- Charges for services covered under other health care coverages,

- Charges for
  - Treatment by someone other than a dentist,
  - Veneers or similar properties of crowns and pontics for certain teeth,
  - Services or supplies that are cosmetic in nature,
  - Prosthetic devices, crowns, inlays, and onlays and their fitting ordered while you were not covered,
  - Replacement of a lost, stolen or missing prosthetic device,
  - Failure to keep a scheduled visit with a dentist,
  - Replacement or repair of an orthodontic appliance,
  - Services or supplies compensable under workers' compensation or employer's liability law,
  - Services rendered through a facility provided or maintained by GM,
  - Services or supplies that the enrollee is not legally obligated to pay or for which no charge would be made in the absence of dental coverage,
  - Services or supplies that are not necessary, recommended, or approved by the attending dentist,
  - Services or supplies that are experimental in nature,
  - Any duplicate prosthetic device or appliance,
  - Completion of any insurance forms,
  - Sealants, oral hygiene and dietary instruction,
  - A plaque control program,
  - Dental implants and/or implantology, or
  - Services or supplies related to periodontal splinting

## A Closer Look at Your Dental Options

| | Traditional Dental Plan | | Alternative Dental Plan (ADP) where available |
|---|---|---|---|
| **Monthly contributions** | Yes | | Yes |
| **Deductible** | None | | None |
| **Copayment·** | Plan Pays* | You Pay* | |
| Preventive | 100% | 0% | |
| Minor restorative | 90% | 10% | |
| Major restorative | 50% | 50% | Copayments, benefit maximums and covered services vary from plan to plan and may differ from the Traditional Dental Plan (Contact the ADPs available in your area for more information ) |
| Orthodontics | 50% | 50% | |
| TMJ dysfunction | 50% | 50% | |
| **Annual maximum benefit** | $1,700 per covered person | | |
| **Lifetime orthodontic maximum benefit** | $2,000 per covered person under age 19 | | |
| **Lifetime TMJ maximum benefit** | $2,000 per covered person | | |
| **Lifetime accidental dental injury maximum benefit** | $12,000 per covered person | | |

*   Plan payments are based on reasonable and customary charge levels as determined by your carrier

3 GM-H-425G 104

*10/11*

Due to the Federally induced bankruptcy of General Motors, my Vision coverage is being eliminated  This coverage was provided as a result of my 35 year employment and was a continuation of compensation, not just a benefit of being a retiree  Therefore, I upheld my contractual requirements by continuing my employment and subsequent retirement and contribution to this benefit, prior to the bankruptcy filing

The value of this benefit at $ 24 + $37 + $70  per 2 years with a life expectancy of 92 years would be valued at 19 years X $ 131 =

$ 2489





11/11

| BENEFIT | FREQUENCY | NETWORK PROVIDER | OUT OF NETWORK | OUT OF AREA* |
|---|---|---|---|---|
| **VISION EXAM**<br><br>Optometrist | Once each calendar year | Covered in full | Enrollee reimbursed $37 | Enrollee reimbursed based on R&C** minus $7 copay |
| Ophthalmologist | | Covered in full | Enrollee reimbursed based on R&C** minus $7 copay | Enrollee reimbursed based on R&C** minus $7 copay |
| **FRAMES** | Once every two consecutive calendar years | Covered in full if selected from designated display (all other frames covered to $24 after 30% discount) | Enrollee reimbursed $24 | Enrollee reimbursed $24 minus a $10 copay, if applicable *** |
| **LENSES** | Once each calendar year | Covered lenses available at no cost  (Additional lens options are not covered) | Enrollee reimbursed based on a fee schedule | Enrollee reimbursed based on R&C** minus $10 copay |
| **CONTACT LENSES** | Once each calendar year in place of regular lenses | Enrollee pays difference between provider's charge and $80 | Enrollee reimbursed $70 | Enrollee reimbursed $80 minus $10 copay |
| **CORRECTIVE EYE SURGERY** | Once every four consecutive years | Enrollee reimbursed $295 **** | Enrollee reimbursed $295 **** | Enrollee reimbursed $295 **** |

  \* *Out of Area occurs when there is no network provider within 25 miles of the enrollee's residence*
  \*\* *R&C stands for reasonable and customary charges*
 \*\*\* *There is a combined annual copayment of $10 for lenses and frames*
\*\*\*\* *An enrollee receiving benefits for corrective eye surgery will be ineligible for maternal benefits (frames, lenses and contact lenses) for three (3) subsequent years   A corrective eye surgery claim form is necessary for reimbursement*



**53**

3 GM-H-425G 104

SEP-16-2010  23:12                                                                    P.01/02
09/16/2010  10:33   2486930654              WILA BEL                    PAGE 01

*Harvey R Miller, Stephen Karotkin, Joseph H Smolinsky*
*212 - 310 - 8007*

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re

**MOTORS LIQUIDATION COMPANY, et al.,**
   **f/k/a/ General Motors Corp., et al**                **Chapter 11 Case No.**
                                                           **09-50026**

         **DEBTORS**                                      **(Jointly Administered)**

_____/

## RESPONSE AND OBJECTION TO DEBTOR'S EIGHTY-THIRD OMNIBUS OBJECTIONS TO CLAIMS

NOW COMES CLAIMANT, LINDA K BELLAIRE, CLAIM NUMBER 62922, and hereby Objects to the Eighty-Third Omnibus Objection to Claims for the following reasons:

1. That the Debtor's Objection is based on the allegation that "the Debtors are not liable" to pay and satisfy your Claimant's claim.

2. That said allegation is incorrect.

3. That the subject claim is for continuation of an earned and accrued benefit, to wit: the continuing lifetime coverage and the future payment at the time of your Claimant's death of Continuing Life Insurance benefits in the amount of $241,020.00 pursuant to the Debtor's Life and Disability Program.

4. That said benefits were earned by your Claimant based upon her thirty-five (35) years of employment with Debtor as an Engineering Group Manager at the time of her retirement in 2008.

5. That said earned and accrued benefit was acknowledged by Debtor in GM publication 3.GM-H-425G.104

6. That a copy of said publication is available for review at claimants address: 1210 Lake Shore Blvd, Lake Orion, MI 48362

7. That other members of my household filed similar claims using identical calculations and said claims were not singled out for denial. And therefore, given this fact, questions the reasoning for the decision to disallow all aspects of said claim by Linda K Bellaire.

WHEREFORE, Claimant respectfully requests this Court Deny Debtor's Eighty-Third Omnibus Objections to Claims and allow Claimant's Claim as previously filed with the Court.

Respectfully submitted,

Linda K Bellaire
Claimant, No. 62922

August 30, 2010

ECC-.GM-H-436A.100

Benefits and Compensation

Per GM publication 3.GM-H-425G.104
Your Benefits in Retirement Summary Plan Description
A Handbook for Salaried Retirees in the United States

"Any retirement benefits you may be eligible to receive as a retired GM employee or surviving spouse are based on the provisions of the GM Salaried Retirement Program in effect when you, or your deceased spouse, retired. However, the benefit amounts may have been increased from time to time, depending on the date you, or your deceased spouse, retired or died."

"Disqualification, Ineligibility, Denial, Loss, Forfeiture, Suspension, Offset, Reduction or Recovery of Benefits

The following circumstances may result in disqualification, ineligibility, denial, loss, offset, suspension, reduction or recovery of benefits. The circumstances include but are not limited to:

☒  Insufficient credited service; Impartial Total & Permanent Disability Retirement Examinations; offsets due to Social Security, workers' compensation; failure to comply with program eligibility rules; gainful employment if receiving total and permanent disability related benefits; termination of the plan; tax levy; any benefit plan overpayments due to any reason."

Nowhere in the above does bankruptcy preclude denial or loss of these benefits in place at my retirement time.