HEARING DATE AND TIME: March 1, 2012 at 9:45 a.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                     :
In re                                :     Chapter 11 Case No.
                                     :
MOTORS LIQUIDATION COMPANY, et al.,  :     09-50026 (REG)
      f/k/a General Motors Corp., et al.  :
                                     :
                  Debtors.           :     (Jointly Administered)
                                     :
-------------------------------------------------------------x
```

**OMNIBUS REPLY OF THE MOTORS LIQUIDATION**
**COMPANY GUC TRUST TO OBJECTIONS TO ITS MOTION TO**
**SUPPLEMENT AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a)**
**AND GENERAL ORDER M-390 AUTHORIZING IMPLEMENTATION OF**
**ALTERNATIVE DISPUTE PROCEDURES, INCLUDING MANDATORY MEDIATION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ............................................................................... 1

REPLY .................................................................................................................... 4

    The GUC Trust Will Permit Joint Mediation and Resolution of the Environmental Claims ................................................................................................................ 4

    The ADR Procedures Serve to Efficiently and Expeditiously Liquidate Claims .............. 5

    The ADR Procedures Do Not Prevent the Enforcement of Police and Regulatory Authority ........................................................................................................... 6

    The GUC Trust Has Shared, and Will Continue to Share, Relevant Information ............ 7

    The GUC Trust Should Have the Right to Terminate the ADR Process ........................... 7

    The Proposed Mediator Panel Has the Requisite Environmental Expertise ..................... 8

    The Costs and Expenses of the ADR Procedures Generally Should Be Shared Equally ............................................................................................................... 8

    New York, New York Is an Appropriate Mediation Location .......................................... 9

    The Proposed ADR Procedures Would Benefit All Holders of Environmental Claims .............................................................................................................. 10

    The State of New York's Claims Are Core Proceedings that Should be Mediated ........ 10

CONCLUSION ....................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*In re Damas Corp.*,
379 B.R. 449 (S.D.N.Y. 2007)................................................................................................10

## STATUTES

11 U.S.C. § 105(a) ....................................................................................................................1, 4

11 U.S.C. § 362(b)(4) ...................................................................................................................6

28 U.S.C. § 157(b)(2) .................................................................................................................10

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor

to Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors

(collectively, the "**Debtors**"), file this omnibus reply (the "**Reply**") to the objections interposed

to the motion (the "**Motion**"),[1] dated February 13, 2012, for an order (the "**Second Amended

ADR Order**") supplementing the Amended Order Pursuant to 11 U.S.C. § 105(a) and General

Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including

Mandatory Mediation, dated October 25, 2010 (ECF No. 7558), by approving, pursuant to 11

U.S.C. § 105(a) and General Order M-390, the alternative dispute resolution procedures annexed

to the Second Amended ADR Order and revised as discussed herein (the "**ADR Procedures**"),

and respectfully represent:

## PRELIMINARY STATEMENT

1.    The proposed Second Amended ADR Order and ADR Procedures are

intended to aid the GUC Trust and all affected claimants in resolving, with maximum efficiency

and as expeditiously as possible, the Environmental Claims, Patent Claims, and Lower Tier

Claims, all of which would otherwise be excluded under the current ADR Procedures.[2]   But

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the Motion, the Revised Proposed Order, and the ADR Procedures.

[2] The proposed Second Amended ADR Order applies the ADR Procedures to (i) environmental claims that constitute prepetition unsecured claims (including claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters and claims asserted by state and local governments ("**Environmental Claims**"); (ii) patent claims ("**Patent Claims**"); and (iii) claims that assert liquidated amounts between $100,000 and $500,000 ("**Lower Tier Claims**").  However, the proposed Second Amended ADR Order inadvertently excluded from the ADR Procedures claims filed by federal governments, to which the revised ADR Procedures were intended to apply.  The GUC Trust has notified the United States Department of Justice (the "**USDOJ**") of its intent that claims brought by the United States of America and its agencies be subject to the ADR Procedures, and it has extended the USDOJ's deadline to file an objection until February 28, 2012, at 4:00 p.m. (Eastern) while the parties work to resolve the claims at issue.  Accordingly, a revised proposed order (the "**Revised Proposed Order**") that no longer excepts from the ADR Procedures claims by the United States of America and its agencies is annexed hereto as **Exhibit "A."**

despite the fact that the ADR Procedures have lead to the successful resolution of billions of

dollars of unliquidated claims that otherwise could have been resolved only though costly

litigation and unnecessary expenditure of judicial and estate resources, certain claimants holding

Environmental Claims have objected to the inclusion of Environmental Claims within the ADR

Procedures (collectively, the "**Objecting Environmental Claimants**").[3]  Since the filing of the

Motion, the GUC Trust has participated in ongoing discussions with the Objecting

Environmental Claimants in an attempt to address their concerns and, as discussed herein, the

GUC Trust believes that those concerns that are reasonable and legitimate either have been, or

should have been, addressed.  Where appropriate, the GUC Trust has agreed to certain

modifications to the proposed Second Amended ADR Order and ADR Procedures in order to

accommodate the Objecting Environmental Claimants, which modifications are included in the

Revised Proposed Order and ADR Procedures annexed hereto as **Exhibit A.**  In addition, a

blackline showing changes to the Revised Proposed Order and ADR Procedures is annexed

hereto as **Exhibit "B."**  Because no objections were filed concerning the inclusion of the Patent

Claims and Lower Tier Claims within the ADR Procedures, this Reply is limited to a discussion

of the Objecting Environmental Claimants' objections.

    2.  Generally, the Objecting Environmental Claimants raised the following

points in their objections to the Motion:  (i) the ADR Procedures fail to specify whether the

Objecting Environmental Claimants can or must proceed with mediation on a joint basis; (ii) the

ADR Procedures prevent the liquidation of claims and infringe on a government agency's

exception from the automatic stay for the enforcement of police and regulatory authority; (iii) the

---

[3] Objections were filed by the Town of Salina, New York (the "**Town of Salina**") (ECF No. 11437), Onondaga
County, New York ("**Onondaga**") (ECF No. 11440), the State of New York (ECF No. 11443), and United
Technologies Corporation ("**United Technologies**") (ECF No. 11449), which joins in the objections filed by the
Town of Salina, Onondaga, and the State of New York.

ADR Procedures do not provide for complete discovery and exchange of information between the parties, and the GUC Trust should be required to provide documentation substantiating its valuation and assessment of the Environmental Claims; (iv) the Objecting Environmental Claimants have not had the opportunity to evaluate the proposed environmental mediators' credentials, and they should be allowed to seek alternative mediators or broaden the mediator panel if they feel it appropriate; (v) the GUC Trust should be required to bear all costs of mediation; and (vi) the proposed ADR Procedures have been and will be wasteful of resources. In addition, the State of New York argues that its claims involve federal law, are not core proceedings, and may be subject to withdrawal of the reference, that they should be allowed to unilaterally terminate the ADR process at any time, and that the location of the mediation should not be in New York City, but should instead be determined by the venue of the property or the primary location of the environmental claimant. Finally, United Technologies argues that its claims, along with certain claims filed by the Town of Salina, Onondaga, and the State of New York, should not be mediated before related claims filed by the United States Environmental Protection Agency (the "**EPA**") are resolved.

3.    The Objecting Environmental Claimants' objections to the Motion should be overruled, and this Court should enter the Revised Proposed Order. Application of the ADR Procedures to the Environmental Claims will expedite, in a fair and judicious manner, the resolution of such claims to the benefit of all holders of Environmental Claims, *including the Objecting Environmental Claimants*. Absent the ADR Procedures' application to the Environmental Claims, full scale litigation of such claims will be required and will unnecessarily consume judicial hours and this Court's resources, as well as cause the expenditure of substantial

funds of the estate.  Litigating the Environmental Claims would serve no useful purpose and would do nothing but increase costs for all involved and drain the assets of a liquidating estate.

4.        This Court has the power, pursuant to section 105(a) of title 11, United States Code and the Court's General Order M-390, to apply the ADR Procedures to the Environmental Claims, and this Court should exercise its discretion to do so.  For the reasons set forth in the Motion and this omnibus Reply, this Court should overrule the Objecting Environmental Claimants' objections and enter the Revised Proposed Order authorizing implementation of the revised ADR Procedures.

## REPLY

5.        In large part, the Objecting Environmental Claimants' objections stem from the incorrect presumption that the GUC Trust will act unfairly in its use of the ADR Procedures or in ways not designed to encourage the resolution of the Environmental Claims.  That is simply not the case.  The GUC Trust's interests lie in fostering a successful resolution of the Environmental Claims.  To date, the GUC Trust and the Debtors combined have amicably resolved billions of dollars of unliquidated claims held by both governmental and private parties relating to environmental liabilities and, as discussed herein, the GUC Trust intends to seek an equitable and consensual resolution of those few remaining environmental-related claims under the ADR Procedures.

### The GUC Trust Will Permit Joint Mediation and Resolution of the Environmental Claims

6.        The GUC Trust included the Environmental Claims as Designated Claims within the ADR Procedures with the intent to resolve the claims in a fair, expedient, and efficient manner.  Accordingly, the GUC Trust has consistently expressed its willingness to mediate related claims together if it would lead to a more productive process.  Specifically, the Town of Salina may seek to resolve its claims together with claims held by the State of New York and the

New York State Department of Environmental Conservation.[4]  The GUC Trust will also

accommodate the joint mediation and resolution of Onondaga's claims should Onondaga wish to

proceed in that manner.  United Technologies may seek to resolve its claims along with related

claims brought by the EPA, the Town of Salina, Onondaga, and the State of New York.  Simply

put, this objection to the ADR Procedures is a non-issue and should be overruled.

### The ADR Procedures Serve to Efficiently and Expeditiously Liquidate Claims

7.    The ADR Injunction is not overbroad, nor does it prevent the liquidation

of claims.[5]  On the contrary, the ADR Procedures serve the exact opposite purpose and their

application has caused billions of dollars of unliquidated and/or litigation claims to be reduced

and fixed as allowed claims.  Indeed, the entire purpose behind the ADR Procedures is to

effectuate the swift and efficient liquidation of claims.  To that end, the ADR Procedures provide

that, subject to certain carve outs, claimants are enjoined from commencing or continuing any

action or proceeding concerning the subject claims other than through the ADR Procedures or

pursuant to the Debtors' Second Amended Joint Chapter 11 Plan.  (*See* Revised Proposed Order

at I.C. (Ex. A.).)  This provision is specifically designed to focus the claims resolution process in

one forum, where the claim can be resolved quickly and without the attendant costs of full-scale

litigation, though streamlined ADR Procedures.  It is without question that the ADR Procedures

have accomplished this result and would do so equally well when applied to the Environmental

Claims.  Moreover, because the ADR Procedures contain tight timelines once initiated, there is

no prejudice to compelling parties to finish the ADR process before taking action in another

---

[4] The Town of Salina's claims are subject to disallowance under 11 U.S.C. § 502(e)(1)(b) once the State of New York's claim with respect to the site is resolved.  That aside, the GUC Trust has always maintained that it has no objection to the State of New York's, including the Town of Salina's, participation in any negotiations.

[5] As discussed below, the GUC Trust will agree to certain modifications to the ADR Injunction to permit a government agency's enforcement of police and regulatory powers and, where appropriate, to permit a claimant to withdraw the reference, *after* non-binding mediation, should such mediation prove unsuccessful.

court.  Because the Objecting Environmental Claimants can provide no example of how the

ADR Procedures would preclude the liquidation of their claims, this objection should be

overruled.

**The ADR Procedures Do Not Prevent the Enforcement of Police and Regulatory Authority**

8.      The Town of Salina baldly asserts that the ADR Procedures infringe on

the exception to the automatic stay provided by 11 U.S.C. § 362(b)(4) for governmental entities

seeking to enforce police or regulatory powers.  But the Town of Salina provides no examples of

how this exception to the automatic stay applies to its claims, and it fails to illustrate how it

could take any action directed at preventing or discontinuing a violation of environmental

protection laws.  Indeed, this exception *does not* apply to the Town of Salina, which is merely a

landowner with no discernible police or regulatory powers that seeks to recover monies spent to

remediate its own property.[6]  The GUC Trust also notes that the subject Environmental Claims

are not sites owned or operated by the Debtors or the GUC Trust, and therefore the need for the

exercise of police and regulatory powers is highly unlikely.

9.      However, with respect to the State of New York's claims and other claims

by government agencies with actual police or regulatory powers, the GUC Trust is amenable to

carving out from the ADR Injunction activities seeking to enforce police and regulatory

authority.  Accordingly, the Revised Proposed Order makes clear that the ADR Injunction is

subject to the provisions set forth in 11 U.S.C. § 362(b)(4) concerning the police and regulatory

powers of a governmental unit or organization.  (*See* Revised Proposed Order at I.C. (Ex. A.).)

The ADR Procedures further provide that the GUC Trust and the Designated Claimant may

---

[6] The Town of Salina conveniently omits the fact that its claims relate to prepetition activities that occurred on property that is not, and never has been, a part of these chapter 11 estates.  The Town of Salina's attempt to invoke 11 U.S.C. § 362(b)(4) is only a thinly veiled attempt to except their claims from the ADR Procedures and enhance their bargaining position vis-à-vis other creditors.

discuss at mediation, or at any point prior to the expiration of the ADR Injunction, any asserted

police powers, regulatory powers, or other sovereign rights.  (*See id.*)

### The GUC Trust Has Shared, and Will Continue to Share, Relevant Information

10.     The Objecting Environmental Claimants' alleged need for the GUC Trust

to provide additional discovery, purportedly so that they can evaluate their claims, is simply not

legitimate.  The Objecting Environmental Claimants have had more than two-and-a-half years

since the filing of the bankruptcy to fully evaluate and finalize the extent and amount of their

claims, and the Debtors and the GUC Trust have previously engaged in legitimate settlement

negations with these claimants, during which time information has been shared equally on both

sides of the table.  The GUC Trust fully expects this two-way flow of information to continue as

part of the ADR process.  In fact, the Objecting Environmental Claimants' fears that the GUC

Trust will not provide information are irrational.  The GUC Trust has every reason to share

information because information sharing will allow the parties to consensually resolve their

disputes.

11.     To the extent that the Objecting Environmental Claimants seek unlimited

discovery in the ADR Process, it is simply unworkable.  To grant that request would serve to

undo the efficiencies that the ADR Procedures are designed to create.  It is in the GUC Trust's

*and* the Objecting Environmental Claimants' best interests to resolve the Environmental Claims

as fast and efficiently as possible, and the ADR Procedures will accomplish that goal as drafted.

### The GUC Trust Should Have the Right to Terminate the ADR Process

12.     Under the ADR Procedures, the GUC Trust, not the Designated Claimant,

may terminate the ADR process.  This provision has served as an effective fail-safe in the event

that the claim resolution process drags along without result or otherwise does not prove effective

with respect to a particular claim.  This provision should remain unchanged, as the Debtors and

the GUC Trust have been able to successfully resolve billions of dollars of claims with this mechanism in place. Moreover, the GUC Trust submits that, if given the right to unilaterally terminate the ADR process, the Objecting Environmental Claimants may never participate in non-binding mediation or in any aspect of the ADR process. The GUC Trust has demonstrated its willingness to fairly and effectively resolve billions of dollars worth of unliqudiated claims, and the ADR Procedures should continue to provide that the GUC Trust may terminate the ADR Process at its discretion.

### The Proposed Mediator Panel Has the Requisite Environmental Expertise

13.      The proposed mediators for the Environmental Claims have the requisite expertise in the environmental and regulatory arena. Peter H. Woodin served as Expert Consultant and Reporter to the Presidential Commission on Catastrophic Nuclear Accidents, where he co-drafted the Commission's Final Report to Congress, and Eugene I. Farber has mediated cases involving environmental claims for more than 25 years, including several multi-million dollar disputes involving federal and state agencies. To suggest that either mediator lacks the expertise to facilitate the resolution of the Environmental Claims is incongruous. However, to the extent that the Objecting Environmental Claimants offer reasonable and constructive mediator suggestions, the GUC Trust will in good faith consider alternative mediators. The GUC Trust is willing to work with the Objecting Environmental Claimants in the hopes of establishing a mutually-agreeable mediator panel. This objection does not present a legitimate concern and should be overruled.

### The Costs and Expenses of the ADR Procedures Generally Should Be Shared Equally

14.      The Objecting Environmental Claimants argue that the costs and expenses of the ADR Procedures should be borne by the GUC Trust. With respect to the State of New York's argument that the State would suffer a severe financial burden if required to share in the

costs of mediation, the GUC Trust agrees to waive the cost sharing requirement.  The GUC Trust

will cover the costs of mediation with the State of New York provided that the mediation is

conducted by a mediator on the current panel or an alternative mediator agreed upon by the

parties whose fees are similar and the mediation occurs in New York, New York.  The GUC

Trust will also give similar consideration to requests made by other governments or government

agencies.  But the GUC Trust firmly believes that, in general, equal sharing of the mediator's

fees and the costs of mediation, which are not significant on an individual case basis, is

reasonable, creates an environment where both parties will be incentivized to take the maximum

benefit from mediation, and overall results in more active participation by claimants.  In any

event, the ADR Procedures have always authorized the GUC Trust to waive the obligation to

share costs of non-binding mediation to the extent that a claimant establishes that sharing of such

expenses would constitute a substantial hardship.

15.    The GUC Trust will continue to fairly apply its discretion to waive the

fees and costs of mediation on a case-by-base basis, taking into account the circumstances

unique to each claimant who complains of a hardship.  But a blanket imposition on the GUC

Trust to cover all the costs and expenses of mediation is unreasonable, because both the GUC

Trust and holders of Environmental Claims will benefit from attempting to resolve the

Environmental Claims consensually and without full-blown litigation.

16.    General Order M-390 provides in section 4.0 that "[in] the event that the

mediator and the parties cannot agree on terms of compensation, then the court shall fix such

terms as are *reasonable and just*."  (emphasis added).  The GUC Trust respectfully submits that

it is within the sound discretion of this Court to direct that the costs of mediation be shared.

## New York, New York Is an Appropriate Mediation Location

17.    The Environmental Claims all concern property located in New York. Further, the GUC Trust's counsel is located in New York, New York, as are the environmental mediators on the proposed mediator panel, and the Debtors' bankruptcy is pending before this Court in New York, New York.  Accordingly, New York, New York is a logical venue for mediations of the Environmental Claims, because holding mediations there would greatly reduce travel and related expenses to the benefit of the estates and all creditors.  In any event, the ADR procedures provide for the filing of a Hardship Motion, and to the extent that traveling to New York would constitute a hardship for an Objecting Environmental Claimant, the GUC Trust will consider an alternative location.

## The Proposed ADR Procedures Would Benefit All Holders of Environmental Claims

18.    The inclusion of the Environmental Claims under the ADR Procedures would result in their efficient resolution.  The ADR Procedures have facilitated the resolution of hundreds of unliquidated and/or litigation claims filed against the Debtors totaling billons of dollars, while safeguarding the procedural rights of claimants.  The ADR Procedures will apply equally well to the Environmental Claims to the benefit of the Objecting Environmental Claimants.  This Court should overrule the Objecting Environmental Claimants' objections and apply the ADR Procedures to Environmental Claims.

## The State of New York's Claims Are Core Proceedings that Should be Mediated

19.    The State of New York argues that its claims are not core proceedings simply "because they involve the construction of CERCLA and may be subject to mandatory or discretionary withdrawal."  (*See* Objection ¶ 24 at 11 (ECF No. 11443).)  This assertion plainly is contradicted by 28 U.S.C. § 157(b)(2), which provides a nonexclusive list of core proceedings, including matters concerning the administration of the estate and the allowance or disallowance

of claims against the estate, both of which apply in the instant case.[7]  The State of New York

further argues that its claims may be subject to withdrawal of the reference.[8]  But even if certain

of the Environmental Claims are subject to withdrawal of the reference, the GUC Trust

maintains that it is proper for the Objecting Environmental Claimants to *first* attempt to resolve

their claims in good faith by participating in non-binding mediation under the ADR Procedures

*before* launching into full-blown litigation in some other court.  Indeed, the very purpose of the

application of the ADR Procedures to the Environmental Claims is to foster an efficient and

effective resolution of these claims.  Accordingly, the Revised Proposed Order and ADR

Procedures provide that, *if* the ADR process proves unsuccessful, the Objecting Environmental

Claimants may then move to withdraw the reference where appropriate.  (*See id.* at II.E.2.)

---

[7] The Objecting Environmental Claimants *cite In re Damas Corp.*, 379 B.R. 449, 462 (S.D.N.Y. 2007), to erroneously suggest that the Environmental Claims are not core proceedings.  Remarkably, the Objecting Environmental Claimants omit the fact that, in *In re Damas Corp.*, the court noted that the claimants had failed to cite to *any* case supporting their contention that the resolution of CERCLA claims are non-core proceedings, and the court held that the proceedings were core.  *See id.* at 463.

[8] The GUC Trust takes no position on the State of New York's claims at this time and reserves its rights to object to any motion seeking to withdraw the reference.

## CONCLUSION

WHEREFORE, for the reasons set forth above, the GUC Trust respectfully

requests that the Court (i) overrule the Objecting Environmental Claimants' objections to the

Motion; (ii) approve the Revised Proposed Order and ADR Procedures annexed hereto; and (iii)

grant such other and further relief as is just.

Dated:  New York, New York
       February 27, 2012

                            /s/ Joseph H. Smolinsky
                            Harvey R. Miller
                            Stephen Karotkin
                            Joseph H. Smolinsky

                            WEIL, GOTSHAL & MANGES LLP
                            767 Fifth Avenue
                            New York, New York 10153
                            Telephone: (212) 310-8000
                            Facsimile: (212) 310-8007

                            Attorneys for the Motors
                            Liquidation Company GUC Trust

## Exhibit A

**Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
                                                          :
In re                                                     :          **Chapter 11 Case No.**
                                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.,*                 :          **09-50026 (REG)**
          **f/k/a General Motors Corp.,** *et al.*        :
                                                          :
                          **Debtors.**                    :          **(Jointly Administered)**
                                                          :
------------------------------------------------------------------x

### SECOND AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a) AND GENERAL ORDER M-390 AUTHORIZING IMPLEMENTATION OF ALTERNATIVE DISPUTE PROCEDURES, INCLUDING MANDATORY MEDIATION

Upon the Motion, dated February 13, 2012 (the "**Motion**"),[1] of the Motors

Liquidation Company GUC Trust (the "**GUC Trust**"), for an order, pursuant to section 105(a) of

title 11 of the United States Code and General Order M-390, to supplement the Amended ADR

Order (the "**Second Amended ADR Order**"); and the Court having determined that the relief

sought in the Motion is in the best interests of the GUC Trust, the Debtors' estates, creditors, and

all parties in interest and that the legal and factual bases set for in the Motion establish just cause

for the relief granted herein; and after due and proper notice of the Motion having been provided,

and it appearing that no other or further notice need be provided; and after consideration of any

response pleadings filed; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Amended ADR Order is supplemented as provided herein;

and it is further

---
[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion and the modified ADR Procedures set forth in Exhibit "A" attached hereto.

ORDERED that the modified ADR Procedures set forth in Exhibit "A" attached hereto are approved as provided herein with respect to claims that assert liquidated amounts of $100,000 or more based on (a) personal injury claims; (b) wrongful death claims; (c) tort claims; (d) product liability claims; (e) claims for damages arising from the rejection of an executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code; (f) environmental claims that constitute prepetition unsecured claims (including claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters) and claims asserted by federal, state, and tribal governments; (g) patent claims; (h) indemnity claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions and excluding indemnity claims relating to asbestos liability); (i) lemon law claims, to the extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended (the "**MPA**"); (j) warranty claims, to the extent applicable under section 6.15 of the MPA; and (k) class action claims (collectively, the "**Designated Claims**"); and it is further

ORDERED that, annexed to this Second Amended ADR Order as **Exhibit "B"** is the schedule of mediators (the "**Schedule of Mediators**"); and it is further

ORDERED that, the GUC Trust from time to time may further modify the Schedule of Mediators by filing a revised Schedule of Mediators with this Court; and it is further

ORDERED that, the GUC Trust is authorized to waive the obligation to share costs of non-binding mediation in their sole discretion to the extent the Designated Claimant establishes, to the satisfaction of the GUC Trust, that sharing of such expenses would constitute a substantial hardship upon such Designated Claimant; and it is further

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43933919V2_US_ACTIVE_- REVISED SECOND AMENDED AD.DOC

2

ORDERED that, within **three (3) business days** of entry of this Order, the GUC Trust shall cause to be mailed a copy of this Order to all known holders of Proposed Additional Designated Claims; and it is further

ORDERED that the GUC Trust is authorized to take any and all steps that are necessary or appropriate to implement the ADR Procedures with respect to the Designated Claims, including, without limitation, by implementing any arbitration awards or settlements with respect to Designated Claims achieved under the terms of the ADR Procedures; *provided, howeve*r, that nothing in this Order or the ADR Procedures shall obligate the GUC Trust to settle or pursue settlement of any particular Designated Claim; *further provided* that any such settlements may be pursued and agreed upon as the GUC Trust believes are reasonable and appropriate in its sole discretion, subject to the terms and conditions set forth in the ADR Procedures; and it is further

ORDERED that, if litigation of an Unresolved Designated Claim in a forum other than this Court is required for any of the reasons forth in Section II.E.3 of the ADR Procedures (as determined by this Court), then the Stay shall be modified subject to the terms and conditions set forth in Section II.E.4 of the ADR Procedures.  Any such modification of the Stay shall be solely to the extent necessary to permit the liquidation of the amount of such Unresolved Designated Claim in the appropriate forum.  If the GUC Trust fails to file a Notice of Stay Modification or a Stay Motion for any reason with respect to an Unresolved Designated Claim, as set forth in Section II.E.4 of the ADR Procedures, the Stay shall remain in effect with respect to such Unresolved Designated Claim, and the Designated Claimant may seek a determination of this Court regarding whether the Stay must be modified to permit litigation in a non-bankruptcy forum as set forth in Section II.E.3 of the ADR Procedures; and it is further

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43933919V2_US_ACTIVE_- REVISED SECOND AMENDED AD.DOC

3

ORDERED that nothing contained in this Second Amended ADR Order shall be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with the Bankruptcy Code and applicable law; and it is further

ORDERED that nothing in the ADR Procedures, including the ADR Injunction set forth therein, shall preclude the holder of a Designated Claim from commencing or continuing an action against a non-debtor party; and it is further

ORDERED that Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the ADR Procedures; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Second Amended ADR Order and the ADR Procedures.

Dated: New York, New York

_____ __, 2012

_____
United States Bankruptcy Judge

## **Exhibit A**

## **The ADR Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                              :
In re                                         :          **Chapter 11 Case No.**
                                              :
**MOTORS LIQUIDATION COMPANY,** *et al.*,     :          **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*  :
                                              :
                  **Debtors.**                :          **(Jointly Administered)**
                                              :
-------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

The alternative dispute resolution procedures (the "**ADR Procedures**") adopted

upon the motion of the Motors Liquidation Company GUC Trust (the "**GUC Trust**") in the

chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**")

and its affiliated debtors (collectively, the "**Debtors**"), are set forth below:

### I.   CLAIMS SUBJECT TO THE ADR PROCEDURES AND ADR INJUNCTION

**A.    Claims Subject to the ADR Procedures**

1.      The claims subject to the ADR Procedures (collectively, the "**Designated**

**Claims**") include any and all claims (other than an Excluded Claim as defined below) designated

by the GUC Trust under the notice procedures set forth below that assert or involve claims based

on one or more of the following theories of recovery, whether or not litigation previously has

been commenced by the claimant:  (a) personal injury claims; (b) wrongful death claims; (c) tort

claims; (d) product liability claims; (e) claims for damages arising from the rejection of an

executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code;

(f) environmental claims that constitute prepetition unsecured claims (including claims for

damages arising from the rejection of executory contracts that relate primarily to environmental

matters) and claims asserted by federal, state, and local governments ("**Environmental Claims**"); (g) patent claims ("**Patent Claims**"); (h) indemnity claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions and excluding indemnity claims relating to asbestos liability); (i) lemon law claims, to the extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended (the "**MPA**"); (j) warranty claims, to the extent applicable under section 6.15 of the MPA; and (k) class action claims ("**Class Claims**").  Designated Claims that assert amounts between $100,000 and $500,000 shall be known as "**Lower Tier Claims**."  The GUC Trust may identify as a Designated Claim any proof of claim asserted in these cases, other than Excluded Claims as defined in Section I.B below, if the GUC Trust believes, in its business judgment and sole discretion, that the ADR Procedures would promote the resolution of such claim and serve the intended objectives of the ADR Procedures.

2.       The holders of the Designated Claims are referred to herein as the "**Designated Claimants**."

B.    **Excluded Claims**

The GUC Trust shall not identify as a Designated Claim any proof of claim within any of the following categories (collectively, the "**Excluded Claims**"):  (a) claims for which the automatic stay under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**") was modified by prior order of this Court (the "**Bankruptcy Court**") to allow the litigation of the claim to proceed in another forum; (b) claims asserted in liquidated amounts of less than $100,000; (c) asbestos-related claims (including indemnity claims relating to asbestos liability); (d) tax claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions); and (e) claims subject to a separate order of the Bankruptcy Court providing for arbitration or mediation.  Notwithstanding the foregoing, any of the Excluded Claims, any

disputed postpetition administrative expenses, and any claims or counterclaims asserted by the

GUC Trust may be submitted to the ADR Procedures by agreement of the GUC Trust and the

applicable claimant or by further order of the Bankruptcy Court.

      C.      **The ADR Injunction**

      Subject to the provisions set forth in 11 U.S.C. § 362(b)(4) concerning police and

regulatory powers of a governmental unit or organization, upon service of the ADR Notice (as

defined below) on a Designated Claimant under Section II.A.1 below, such Designated Claimant

(and any other person or entity asserting an interest in the relevant Designated Claim) shall be

enjoined from commencing or continuing any action or proceeding in any manner or any place,

including in the Bankruptcy Court, seeking to establish, liquidate, collect on, or otherwise

enforce the Designated Claim(s) identified in the ADR Notice (collectively, the "**ADR**

**Injunction**") other than (1) through these ADR Procedures, or (2) pursuant to the Debtors'

Second Amended Joint Chapter 11 Plan (the "**Plan**").  The ADR Injunction shall expire with

respect to a Designated Claim only when that Designated Claim has been resolved or after the

ADR Procedures have been completed as to that Designated Claim.  Except as expressly set forth

herein or in a separate order of the Bankruptcy Court, the expiration of the ADR Injunction shall

not extinguish, limit, or modify the automatic stay established by section 362 of the Bankruptcy

Code or upon confirmation of the Plan (the "**Plan Injunction**"), and the automatic stay and the

Plan Injunction shall remain in place to the extent then in effect.  Nothing in these ADR

Procedures shall prevent the GUC Trust and the Designated Claimant from discussing at

mediation, or at any point prior to the expiration of the ADR Injunction, any police or regulatory

powers asserted by a Designated Claimant pursuant to 11 U.S.C. § 362(b)(4) or any other

asserted sovereign right.

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

3

## II.    THE ADR PROCEDURES

### A.    Offer Exchange Procedures

The first stage of the ADR Procedures will be the following offer exchange procedures, requiring the parties to exchange settlement offers and thereby providing an opportunity to resolve the underlying Designated Claim on a consensual basis without any further proceedings by the parties (the "**Offer Exchange Procedures**").  Rule 408 of the Federal Rules of Evidence shall apply to the ADR Procedures.  Except as permitted by Rule 408, no person may rely on, or introduce as evidence in connection with any arbitral, judicial, or other proceeding, any offer, counteroffer, or any other aspect of the ADR Procedures.

1.    *Designation of Designated Claims and Settlement Offer by the GUC Trust*

(a)    At any time following the entry of an order approving the ADR Procedures, as applicable (the "**ADR Order**") and subject to the terms and conditions in Sections I.A and I.B above, the GUC Trust may designate a Designated Claim for resolution through the ADR Procedures by serving upon the Designated Claimant, at the address listed on the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well as to any counsel of record in these cases for the Designated Claimant, the following materials (collectively, the "**ADR Materials**"):  (i) a notice that the Designated Claim has been submitted to the ADR Procedures (an "**ADR Notice**");[1] (ii) a copy of the ADR Order; and (iii) a copy of these ADR Procedures.  For transferred claims, the GUC Trust also will serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim.

---

[1] The form of the ADR Notice is attached hereto as **Annex 1** and incorporated herein by reference.  The GUC Trust anticipates that the ADR Notice will be substantially in the form of Annex 1; however, the GUC Trust reserves the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

(b)    The ADR Notice will (i) advise the Designated Claimant that his or her

Designated Claim has been submitted to the ADR Procedures; (ii) request that the Designated

Claimant verify or, as needed, correct, clarify, or supplement, certain information regarding the

Designated Claim (including the addresses for notices under the ADR Procedures); and (iii)

include an offer by the GUC Trust to settle the Designated Claim (a "**Settlement Offer**").  The

ADR Notice also will require the Designated Claimant to sign and return the ADR Notice along

with the Claimant's Response (as defined in Section II.A.2 below) to the GUC Trust so that it is

received by the GUC Trust no later than twenty-one (21) days[2] after the mailing of the ADR

Notice (the "**Settlement Response Deadline**").

(c)    If the Designated Claimant fails to sign and return the ADR Notice or to

include a Claimant's Response (as defined below) with the returned ADR Notice by the

Settlement Response Deadline, (i) the Offer Exchange Procedures will be deemed terminated

with respect to the Designated Claim and (ii) the Designated Claim will be submitted to

nonbinding mediation.

2.    *The Claimant's Response*

The only permitted responses to a Settlement Offer (the "**Claimant's Response**")

are (i) acceptance of the Settlement Offer, or (ii) rejection of the Settlement Offer coupled with a

counteroffer (as further defined below, a "**Counteroffer**").  If the ADR Notice is returned

without a response or with a response that is not a permitted response, the Designated Claim

shall be treated as set forth in Section II.A.1(c) above.

---

[2] Bankruptcy Rule 9006(a) shall apply to all periods calculated in the ADR Procedures.

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_- MLC- AMENDED ADR ORDER (E.DOC

5

3.    _The Counteroffer_

The Counteroffer shall (i) provide all facts that substantiate the Designated Claim and that are sufficient for the GUC Trust to evaluate the validity and amount of the Designated Claim; (ii) provide all documents that the Designated Claimant contends support the Designated Claim; (iii) state the dollar amount of the Designated Claim (the "**Proposed Claim Amount**"), which may not (A) improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim, or (B) exceed the lesser of the Claim Amount Cap (as defined in the ADR Order), if applicable, or the amount set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim), with an explanation of the calculation and basis for the Proposed Claim Amount (the "**Proposed Claim Amount Explanation**"), which Proposed Claim Amount Explanation shall additionally include, without limitation, for Environmental Claims and Patent Claims, all documentation and any such other information evidencing and/or substantiating the actual calculation of the Proposed Claim Amount; and (iv) provide the name and address of counsel representing the Designated Claimant with respect to the Designated Claim, unless the Designated Claimant is a natural person, in which case the Designated Claimant shall either provide the name of such counsel or state that he or she is appearing without counsel.

The Counteroffer is presumed to offer the allowance of the Designated Claim as a general unsecured claim in the Proposed Claim Amount against the Debtor identified in the applicable proof of claim.  If the GUC Trust accepts the Counteroffer, the Designated Claimant shall not seek recovery from the GUC Trust of any consideration other than the consideration ultimately distributed to holders of other allowed general unsecured claims against the relevant

Debtor.  A Counteroffer may not be for an unknown, unliquidated, or indefinite amount or priority, or the Designated Claim shall be treated as set forth in Section II.A.1(c) above.

4.    _Consent to Subsequent Binding Arbitration_

As described in Sections II.B and II.C below, in the absence of a settlement at the conclusion of the Offer Exchange Procedures, Designated Claims shall proceed to nonbinding mediation and, if such mediation is unsuccessful, upon consent of the parties (including deemed consent based on prior contractual agreements), to binding arbitration.  A Designated Claimant is required to notify the GUC Trust whether it consents to, and thereby seeks to participate in, binding arbitration in the event that its Designated Claim ultimately is not resolved through the Offer Exchange Procedures and the nonbinding mediation.  A Designated Claimant shall make an election to either consent or not consent to binding arbitration by checking the appropriate box in the ADR Notice (an "**Opt-In/Opt-Out Election**").  Any Designated Claimant that does not consent to binding arbitration in its response to the ADR Notice may later consent in writing to binding arbitration, subject to the agreement of the GUC Trust.  Consent to binding arbitration, once given, cannot subsequently be withdrawn without consent of the GUC Trust.

5.    _The GUC Trust's Response to a Counteroffer_

The GUC Trust must respond to any Counteroffer within fifteen (15) days after their receipt of the Counteroffer (the "**Response Deadline**"), by returning a written response (as further defined below, each a "**Response Statement**").  The Response Statement shall indicate that the GUC Trust (a) accepts the Counteroffer; or (b) rejects the Counteroffer, with or without making a revised Settlement Offer (a "**Revised Settlement Offer**").

(a)    _Failure to Respond_

If the GUC Trust fails to respond to the Counteroffer by the Response Deadline, (i) the Counteroffer will be deemed rejected by the GUC Trust; (ii) the Offer Exchange

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

7

Procedures will be deemed terminated with respect to the Designated Claim; and (iii) the

Designated Claim will be submitted to nonbinding mediation.

       (b)    *Revised Settlement Offer*

       If the GUC Trust makes a Revised Settlement Offer by the Response Deadline,

the Designated Claimant may accept the Revised Settlement Offer by providing the GUC Trust

with a written statement of acceptance no later than ten (10) days after the date of service of the

Revised Settlement Offer (the "**Revised Settlement Offer Response Deadline**").  If the

Designated Claimant does not accept the Revised Settlement Offer by the Revised Settlement

Offer Response Deadline, the Revised Settlement Offer will be deemed rejected and the

Designated Claim automatically will be submitted to nonbinding mediation.

       (c)    *Request for Additional Information*

       The GUC Trust may request supplemental or clarification of information supplied

in the Designated Claimant's most recently filed proof of claim to assist in a good faith

evaluation of any particular Designated Claim.  If the GUC Trust requests additional information

or documentation by the Response Deadline, the Designated Claimant shall serve additional

information or documentation sufficient to permit the GUC Trust to evaluate the basis for the

Designated Claim (with the exception, in the Designated Claimant's sole discretion, of privileged

information or information prepared expressly in contemplation of litigation) so that it is

received by the GUC Trust within fifteen (15) days after such request.  If the Designated

Claimant timely responds, the GUC Trust shall have fifteen (15) days to provide an amended

Response Statement, which may include a Revised Settlement Offer as a counter to the

Counteroffer.  If the GUC Trust does not provide an amended Response Statement within this

period, or if the Designated Claimant fails to provide the requested information or documentation

within the time allotted, the Designated Claim will be submitted to nonbinding mediation.

6.        *Offer Exchange Termination Date*

Upon mutual written consent, the GUC Trust and a Designated Claimant may

exchange additional Revised Settlement Offers and Counteroffers for up to twenty (20) days

after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the

applicable timeframes provided for in Section II.A.5(c) above with respect to requesting,

receiving, and responding to additional information or documentation.  Otherwise, the Offer

Exchange Procedures shall conclude and terminate on the earliest of the following (the "**Offer**

**Exchange Termination Date**"):  (i) the date upon which the Designated Claim automatically

advances to nonbinding mediation under the provisions set forth above; (ii) the date that any

settlement offer for a Designated Claim is accepted under the procedures set forth above; (iii) the

date upon which a Response Statement was served by the GUC Trust, if the GUC Trust notified

the Designated Claimant in their Response Statement of the GUC Trust's intention to proceed

directly to nonbinding mediation; or (iv) such earlier date as is agreed upon by the GUC Trust

and the Designated Claimant.

7.        *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the GUC Trust

to settle a Designated Claim by mutual consent at any time.  All such settlements shall be subject

to the terms of Section II.D.2 below.

B.        **Nonbinding Mediation ("Mediation")**

1.        *Mediation Notice*

If the GUC Trust and the Designated Claimant do not settle the Designated Claim

through the Offer Exchange Procedures, the GUC Trust shall serve a notice of nonbinding

mediation, with a copy of the Designated Claimant's applicable proof(s) of claim attached, on

the Designated Claimant no later than thirty (30) days after the Offer Exchange Termination

Date, or as soon thereafter as is reasonably practicable.[3]  The Mediation Notice will provide the

Mediation Location (as such term is defined in Section II.B.2 below).

2.      <u>*Location and Appointment of the Mediator*</u>

Except for Lower Tier Claims, Environmental Claims, and Patent Claims,

Mediations shall be conducted in either (i) New York, New York; (ii) Detroit, Michigan; (iii)

Dallas, Texas; (iv) San Francisco, California; or (v) Chicago, Illinois (collectively, the

"**Mediation Locations**"), unless the parties agree to a different location.  Except for Mediations

involving Lower Tier Claims, within ten (10) days after receiving the Mediation Notice, the

Designated Claimant shall choose one of the individuals identified in a list of mediators annexed

to the Mediation Notice and corresponding to the applicable Mediation Location to conduct the

mediation (the "**Mediator**").

(a)      *Environmental Claims and Patent Claims*

Mediations of Environmental Claims shall be conducted in New York, New York,

unless the parties agree to a different location.  Mediations of Patent claims shall be conducted in

Dallas, Texas, unless the parties agree to a different location.  For Environmental Claims and

Patent Claims, within ten (10) days after receiving the Mediation Notice, the Designated

Claimant shall choose the Mediator corresponding to the applicable Mediation Location to

conduct the mediation.

---

[3]  The forms of Mediation Notice for Designated Claims and Designated Claims that are Lower Tier Claims are
attached hereto and incorporated herein by reference as **Annex 2** and **Annex 3**, respectively.  The GUC Trust
anticipates that the Mediation Notice will be substantially in the form of Annex 2 or Annex 3, as applicable;
however, the GUC Trust reserves the right to modify the Mediation Notice, as necessary or appropriate, consistent
with the terms of the ADR Procedures.

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_- MLC- AMENDED ADR ORDER (E.DOC

10

(b)    *Lower Tier Claims*

Mediations of Lower Tier Claims shall be conducted at a location designated by the GUC Trust, which location shall be within 200 miles of (i) the address listed on proof of claim form for the Designated Claimant's most recently filed proof of claim, or (ii) the office of any counsel of record in these cases for the Designated Claimant holding a Lower Tier Claim, unless the parties agree to a different location.  The GUC Trust shall be permitted to select the Mediator from one of the individuals identified in the list of mediators annexed to the Mediation Notice to conduct the mediation.  The GUC Trust shall be permitted to select the Mediator without regard to the Mediation Location.

(c)    *Hardship*

To the maximum extent practicable, the scheduling and location of Mediation sessions shall give due consideration to the convenience of the parties and the proximity of the Designated Claimant.  Notwithstanding the foregoing, within ten (10) business days after service of the Mediation Notice, the Designated Claimant may file a motion with the Bankruptcy Court, on notice to the GUC Trust and any previously appointed Mediator, for an order directing that the Mediation be conducted in a different location (a "**Hardship Motion**") if the Designated Claimant can demonstrate that traveling to any of the Mediation Locations presents a "substantial hardship;" *provided, however,* that (i) for each Mediation, except for Mediations of Lower Tier Claims, there shall be a rebuttable presumption that, absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant if the primary representative for such Designated Claimant resides in a location that is less than 750 miles from the Mediation Location or is less than a three-hour plane trip from the Mediation Location (based on typical commercial schedules for the fastest route, excluding any layovers); and (ii) for each

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_- MLC- AMENDED ADR ORDER (E.DOC

11

Mediation of a Lower Tier Claim, there shall be a rebuttable presumption that, absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant holding a Lower Tier Claim if the primary representative for such Designated Claimant resides in a location that is within 200 miles or less of the Mediation Location.  While a Hardship Motion is pending, all deadlines under these ADR Procedures shall be suspended.  If a Hardship Motion is granted, any alternative location shall be determined by the Bankruptcy Court, taking into account the convenience of the parties and any agreements reached by the parties.  If the location of the Mediation is changed, (i) any Mediator appointed in the original location may be replaced by a Mediator in the new location, and (ii) the Bankruptcy Court may require that that the GUC Trust and the Designated Claimant share the costs of the Mediation.  Except for Mediations involving Lower Tier Claims, the new Mediator shall be selected by mutual agreement of the parties or by order of the Bankruptcy Court.  For mediations involving Lower Tier Claims, the new Mediator shall be selected by the GUC Trust.

3.    *Mediation Rules*

The Mediation of Designated Claims shall be governed by the Mediator's regular procedures, except where expressly modified in the ADR Procedures.  In the event of any conflict, the ADR Procedures shall control.  Any party to a Mediation that fails to participate in good faith, on the terms described herein, may be subject to sanctions under Section II.F below.

(a)    *Impartiality and Qualifications of Mediators*

A person appointed as a Mediator must (i) be an impartial, neutral person; (ii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iii) upon appointment, disclose any circumstances likely to create a reasonable inference of bias.  In the event a Mediator discloses circumstances likely to

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_- MLC- AMENDED ADR ORDER (E.DOC

12

create a reasonable inference of bias, such Mediator may be replaced at the written request of either the GUC Trust or the Designated Claimant prior to the mediation.

(b)     *Fees and Costs for Mediation*

Except for Mediations involving Lower Tier Claims, for each Mediation conducted under these ADR Procedures, the Mediator selected to preside will be entitled to charge the mediation fees disclosed to, and agreed to by, the GUC Trust and the Designated Claimant. Unless the parties have expressly agreed otherwise in writing (either prepetition or postpetition) as part of an agreement to submit Designated Claims to Mediation, the Mediator's fees and the costs of any Mediation shall be shared equally by the GUC Trust and the Designated Claimant subject to the Sharing Cap (if applicable).

For each Mediation of a Lower Tier Claim conducted under these ADR Procedures, (i) the Mediator will be entitled to charge the mediation fees disclosed to, and agreed to by, the GUC Trust, and (ii) the Mediator's fees shall be borne by the GUC Trust.

For purposes of clarity, the costs referred to in this Section II.B.3.(b). shall not include travel expenses of the parties. All Designated Claimants shall be solely responsible for all travel expenses to participate in the Mediation of a Designated Claim.

(c)     *Pre-Mediation Briefing*

Unless the parties agree otherwise, on or before thirty (30) days prior to the scheduled Mediation, the Designated Claimant shall serve on the Mediator and the GUC Trust by electronic transmission or facsimile, at a minimum, and no later than by 6:00 p.m. (Eastern Time), a nonconfidential, pre-Mediation statement (the "**Opening Statement**") not to exceed fifteen (15) pages, excluding any attachments, setting forth all of the Designated Claimant's claims and identifying each and every cause of action or theory the Designated Claimant asserts,

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

13

including a short and plain statement of the facts and law upon which the Designated Claimant

relies for recovery and maintains entitle it to relief.  The Designated Claimant shall include, as

exhibits or annexes to the Opening Statement, all documents (or summaries of voluminous

documents), affidavits, and other evidentiary materials on which the Designated Claimant relies

(with the exception, in the Designated Claimant's sole discretion, of privileged information or

information prepared expressly in contemplation of litigation).  Unless the parties agree

otherwise, on or before fifteen (15) days after service of the Opening Statement, the GUC Trust

shall serve on the Mediator and the Designated Claimant, by electronic transmission or facsimile,

at a minimum, and no later than by 6:00 p.m. (Eastern Time), a nonconfidential response

statement (the "**Mediation Response Statement**") not to exceed fifteen (15) pages, excluding

attachments.  The Designated Claimant shall receive copies of all exhibits to the Mediation

Response Statement (with the exception, in the GUC Trust's sole discretion, of privileged

information or information prepared expressly in contemplation of litigation).  At the Mediator's

discretion and direction, the parties may submit additional, confidential letters or statements to

the Mediator, which shall receive "Mediator's-eyes-only" treatment.

> (d)    *The Mediation Session*

Unless otherwise agreed by the parties or as provided herein, the Mediation

session must occur no later than sixty (60) days after the date on which the Mediator is

appointed.  Unless otherwise agreed by the parties, the Mediation session is open only to the

parties and their respective counsel, and insurers (if any).

> (e)    *Treatment of Mediation Settlement*

If the Mediation results in a settlement of the Designated Claim, such settlement

shall be subject to the terms of Section II.D below.  If the Mediation of a Designated Claim does

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_- MLC- AMENDED ADR ORDER (E.DOC

14

not result in a settlement of the Designated Claim, the Designated Claim shall be subject to

Section II.C or II.E below.

(f)    *Modification of the Mediation Procedures*

The Mediation procedures described herein may be modified upon the mutual

written consent of the GUC Trust and the Designated Claimant.

## C.    Arbitration

1.    *Binding Arbitration*

If the Designated Claimant and the GUC Trust have consented to binding

arbitration under Section II.A.4 above, the Designated Claim will be arbitrated under the terms

of this Section II.C if such claim is not resolved in the Offer Exchange Procedures or Mediation.

If the Designated Claimant has expressly indicated that it does not consent to binding arbitration

in its response to the ADR Notice and has not subsequently opted in to binding arbitration

pursuant to Section II.A.4 above, the Designated Claim shall be resolved in the Bankruptcy

Court by the GUC Trust's commencement of proceedings pursuant to the Bankruptcy Code,

including without limitation, estimating or objecting to the Designated Claims.  Any party to an

arbitration that fails to participate in the arbitration in good faith, on the terms described herein,

may be subject to sanctions under Section II.F below.

2.    *Arbitration Notice*

To initiate the arbitration process for a Designated Claim, the GUC Trust shall

serve a notice of arbitration (the "**Arbitration Notice**"), with a copy of the Designated

Claimant's applicable proof(s) of claim attached, on the Designated Claimant and the American

Arbitration Association (the "**AAA**").[4]

---

[4] The form of the Arbitration Notice is attached hereto as **Annex 4** and incorporated herein by reference.  The GUC Trust anticipates that the Arbitration Notice will be substantially in the form of Annex 4; however, the GUC Trust

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_- MLC- AMENDED ADR ORDER (E.DOC

15

3.        *Arbitration Rules and Procedures*

For Designated Claims that are not designated by the GUC Trust as Complex Designated Claims (as defined below), the arbitration of all Designated Claims shall be conducted by a single arbitrator selected pursuant to the Commercial Arbitration Rules of the AAA.  The arbitrator shall be governed by the commercial arbitration rules of the AAA then in effect (the "**Arbitration Rules**"), except where the Arbitration Rules are expressly modified in the ADR Procedures.[5]

The GUC Trust may, at its discretion, designate certain Designated Claims as complex designated claims (the "**Complex Designated Claims**").  The arbitration of all Complex Designated Claims shall be conducted by a panel of three arbitrators selected pursuant to the Commercial Arbitration Rules of the AAA.  The AAA Procedures for Large, Complex Commercial Disputes, in addition to the Commercial Rules of Arbitration, shall be used for arbitration of all Complex Designated Claims; *provided, however*, unless otherwise agreed by the parties, (i) the AAA shall appoint a panel of three (3) arbitrators, as provided in this Section and Section II.C.3(g) and (ii) the arbitration hearing on a Complex Designated Claim must be held no later than ninety (90) days after the date of appointment of the arbitrator(s), as provided in Section II.C.3(k).  Finally, the AAA Supplementary Rules for Class Arbitrations shall also be used for all Class Claims, including those related to class certification and the Class Determination Award (as defined in Rule 5 of the AAA Supplementary Rules for Class Arbitrations), except that the arbitrator(s) shall not make a Clause Construction Award (as

---

reserves the right to modify the Arbitration Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[5] In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall control.

defined in Rule 3 of the AAA Supplementary Rules for Class Arbitrations), or determine that a

Class Claim is not arbitrable for failure for each class member to have entered into an arbitration

agreement, the Court having specifically found that the ADR Procedures are applicable to Class

Claims notwithstanding the absence of a written agreement to arbitrate.[6]

      (a)    *Governing Law*

      The ADR Procedures, as they relate to arbitration proceedings, are governed by

the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. (the "**Federal Arbitration Act**"), and the

enforceability of an arbitration award is governed by Section 9 of the Federal Arbitration Act,

except as modified herein.

      (b)    *Fees and Costs for Binding Arbitration; Sharing*

      Unless the parties expressly have agreed otherwise in writing (either prepetition

or postpetition) as part of an agreement to submit claims to binding arbitration, the fees and costs

charged by the AAA and the arbitrator(s) shall be shared equally by the GUC Trust and the

Designated Claimant; *provided, however*, that the arbitrator(s), in the arbitrator(s)' sole

discretion, may assess fees and costs against any party that the arbitrator(s) finds to be abusing or

unduly delaying the arbitration process.  The AAA shall submit invoices to the Designated

Claimants and the GUC Trust according to the AAA's ordinary invoicing practices then in effect

and subject to the AAA's ordinary payment terms then in effect.  For purposes of clarity, these

costs shall not include travel expenses of the parties.

      (c)    *Impartiality and Qualifications of Arbitrators*

      In designating the arbitrator in accordance with the procedures described below,

the AAA shall review the Arbitration Notice and the applicable Designated Claim.  Any person

---

[6] In the event of any conflict between the AAA Supplementary Rules for Class Arbitrations and the ADR
Procedures, the ADR Procedures shall control.

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

17

appointed as an arbitrator must: (i) be an impartial, neutral person; (ii) be experienced (either

from past arbitrations or former employment) in the law that is the subject of the Designated

Claim; (iii) have no financial or personal interest in the proceedings or, except when otherwise

agreed by the parties, in any related matter; and (iv) upon appointment, disclose any

circumstances likely to create a reasonable inference of bias.  In the event that an arbitrator

discloses circumstances likely to create a reasonable inference of bias, such arbitrator may be

replaced by the AAA at the written request of the GUC Trust or the Designated Claimant within

ten (10) days after such disclosure.

        (d)     *Time and Location of Arbitration Hearings*

All arbitration hearings shall be conducted in either (i) New York, New York; (ii)

Detroit, Michigan; (iii) Dallas, Texas; or (iv) San Francisco, California (collectively, the

"**Arbitration Locations**").  To the maximum extent practicable, the scheduling and location of

arbitration hearings shall give due consideration to the proximity of the Designated Claimant and

to the convenience of the parties to the Arbitration Location.  Within ten (10) days of

appointment, the arbitrator(s) shall conduct a preliminary hearing pursuant to AAA Commercial

Arbitration Rule 20.

        (e)     *Appeals of Arbitration Awards*

All arbitration awards shall be final and binding.  Other than the identities of the

GUC Trust and Designated Claimants, the claims register number(s) assigned to the applicable

arbitrated Designated Claims and the priority and dollar amounts of the Designated Claims as

awarded in the arbitration awards, and except as otherwise required by law or agreed upon by the

parties, all arbitration awards shall be treated as confidential.  No party shall have the right to

appeal an arbitration award except pursuant to the appeal provisions of the Federal Arbitration

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_- MLC- AMENDED ADR ORDER (E.DOC

18

Act, in which case any appeal must be to the United States District Court for the Southern

District of New York.  Any appeal shall be governed by the Federal Arbitration Act.  The parties

shall have ten (10) days from the date the arbitration award is served to appeal such award.

Failure to timely appeal shall result in the loss of any appeal rights.  Once any appeal has

concluded or appellate rights are waived, the GUC Trust shall update the claims docket in their

chapter 11 cases accordingly and may file any notice of the liquidated amount of the Designated

Claim that they deem necessary or appropriate for such purpose.

> (f)    *Modification of the Arbitration Procedures*

The arbitration procedures described herein may be modified only upon the

mutual consent of the GUC Trust and the Designated Claimant.

> (g)    *Appointment of the Arbitrator*

Within 5 five days of receiving the applicable Arbitration Notice, the AAA shall

commence the following procedures for the appointment of arbitrator(s) (the "**Appointment of**

**Arbitrator(s) Procedures**") by concurrently sending by electronic transmission or facsimile, to

the GUC Trust and the applicable Designated Claimant, an identical list of the names of at least

eight (8) arbitrator candidates who meet the qualifications necessary for the matter.[7]  The GUC

Trust and the applicable Designated Claimant shall have seven (7) business days from the date

this list is served to (i) strike two (2) names from the proposed list, (ii) list the remaining names

in order of preference, and (iii) return the list to the AAA.  In the event that the Designated

Claim is not a Complex Designated Claim, the AAA shall appoint a single arbitrator from the

name(s) not stricken, giving consideration first to the preferences of the parties and second to

---

[7] If, for any reason, there are more than two parties to an arbitration, AAA shall identify a number of potential
arbitrators equal to the number of parties, plus one, and the remaining selection proceedings shall otherwise govern.
Affiliated entities are considered a single party for this purpose.

scheduling and the availability of the arbitrator.  In the event that the Designated Claim is a

Complex Designated Claim, the AAA shall appoint a panel of three (3) arbitrators from the

name(s) not stricken, giving consideration first to the preferences of the parties and second to the

scheduling and the availability of the arbitrators.  The AAA shall appoint the arbitrator(s) in

accordance with the Appointment of Arbitrator(s) Procedures within ten (10) business days of its

receipt of the applicable Arbitration Notice.

(h)    *Pre-Hearing Matters*

Unless otherwise agreed to by the parties, any pre-hearing issues, matters or

disputes (other than with respect to merits issues) shall be presented to the arbitrator(s)

telephonically (or by such other method agreed to by the arbitrator(s) and the parties) for

expeditious, final, and binding resolution.  Upon a party's request, the arbitrator(s) may order

that a substantive motion, such as a motion for summary judgment, be heard in person rather

than telephonically.  Any pre-hearing issue, matter, or dispute (other than with respect to merits

issues) must be presented to the arbitrator(s) not later than fifteen (15) days prior to the

arbitration hearing so as to permit the arbitrator(s) to review and rule upon the requests by

telephonic or electronic communication at least five days prior to the arbitration hearing.

(i)    *Discovery*

Unless the Designated Claim is a Complex Designated Claim, there shall be no

interrogatories.  Any requests for production of documents, electronically-stored information and

things ("**Document Requests**") shall be made in writing and shall be limited to no more than

twenty (20) requests, including discrete subparts.  Items requested in the Document Requests

must be produced within thirty (30) days after service of the Document Requests.  All documents

from discovery shall be confidential and shall not be (i) disclosed to any person or party not

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_- MLC- AMENDED ADR ORDER (E.DOC

20

participating in the arbitration proceeding or (ii) used for any purpose other than in connection

with the arbitration proceeding, except as provided herein.

        (j)     *Pre-Arbitration Statement*

        Unless otherwise agreed by the parties, on or before ten (10) days prior to the

scheduled arbitration hearing, each party shall submit to the arbitrator(s) and serve on the other

party or parties by overnight mail a pre-arbitration statement not to exceed fifteen (15) pages,

excluding any attachments.

        (k)     *Arbitration Hearing*

        Unless otherwise agreed by the parties and the arbitrator(s) or as provided herein,

the arbitration hearing on a Designated Claim must be held no later than ninety (90) days after

the date of appointment of the arbitrator(s).  The arbitration hearing is open only to the parties

and their respective counsel, insurers (if any), and witnesses.  Nonparty witnesses shall be

sequestered.  No posthearing briefs may be submitted, unless the arbitrator(s) requests briefs, in

which case such briefing shall be subject to the issues, timing, and page limitations the

arbitrator(s) imposes.  There shall be no reply briefs.

        (l)     *Awards*

        The arbitrator(s) shall issue a written, reasoned opinion and award (the

"**Arbitration Award**") within fourteen (14) days after the arbitration hearing.  The arbitrator(s)

shall not be compensated for more than eight hours of deliberations on and preparation of the

Arbitration Award for a Designated Claim.  Any Arbitration Award shall be an allowed general

unsecured nonpriority claim against the Debtor identified in the Arbitration Award (or if no

Debtor is identified in the Arbitration Award, the claim shall be deemed to be against the Debtor

identified in the Designated Claimant's applicable proof of claim included with the service of the

Arbitration Notice, unless otherwise ordered by the Bankruptcy Court). The Arbitration Award

may not award a priority claim or otherwise determine the priority of the claim under the

Bankruptcy Code; *provided, however*, that, within thirty (30) days after the issuance of an

Arbitration Award, the Designated Claimant may seek relief from the Bankruptcy Court to

determine that some or all of the Arbitration Award is subject to treatment as a priority claim if

the Designated Claimant's applicable proof of claim filed as of the date of filing of the ADR

Order asserted an entitlement to such priority. Further, no portion of a claim resulting from any

Arbitration Award shall be allowed to the extent that it consists of (a) punitive damages; (b)

interest, attorneys' fees, or other fees and costs, unless permissible under section 506(b) of the

Bankruptcy Code; (c) an award under any penalty rate or penalty provision of the type specified

in section 365(b)(2)(D) of the Bankruptcy Code; (d) amounts associated with obligations that are

subject to disallowance under section 502(b) of the Bankruptcy Code; (e) specific performance,

other compulsory injunctive relief, restrictive, restraining, or prohibitive injunctive relief or any

other form of equitable remedy; or (f) any relief not among the foregoing but otherwise

impermissible under applicable bankruptcy or nonbankruptcy law. The GUC Trust shall have

the right within thirty (30) days after the issuance of an Arbitration Awards to file a motion

seeking relief from the Bankruptcy Court to enforce the preceding sentence and obtain the

disallowance of any portion of a claim included in an Arbitration Award in violation of clauses

(a) through (f) herein. In all cases, the awarded claim shall be subject to treatment in the

Debtors' chapter 11 cases as set forth in the Debtors' Second Amended Joint Chapter 11 Plan, or

in such other applicable order of the Bankruptcy Court. The entry of an Arbitration Award shall

not grant the Designated Claimant any enforcement or collection rights.

### D.    Settlements of Designated Claims

1.    *Settlements Permitted at Any Stage of the ADR Procedures*

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

22

Designated Claims may be settled by the GUC Trust and a Designated Claimant through the Offer Exchange Procedures, Mediation, or by agreement at any point during these ADR Procedures.  Nothing herein shall prevent the parties from settling any claim at any time.

2.    *Settlement Authority and Approvals*

Nothing herein shall limit, expand, or otherwise modify the GUC Trust's authority to settle claims pursuant to orders of the Bankruptcy Court then in effect, including without limitation, the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and 9019(b) authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish Procedures for Settling Certain Claims, entered on October 6, 2006 [Docket No. 4180] (the "**Claims Procedures and Settlement Order**") and the Bankruptcy Court's March 28, 2011 Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(b) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of  Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9941) (the "**Confirmation Order**") confirming the Plan (collectively, the "**Settlement Authority Orders**").  Any settlements of claims pursuant to, or in connection with, the ADR Procedures shall be approved consistent with the terms, conditions, and limitations set forth in the applicable Settlement Authority Orders. The GUC Trust shall be requested to seek Bankruptcy Court approval of such settlements only to the extent that (a) such approval is required by the terms of the Settlement Authority Orders or (b) the settlement falls outside of the authority granted in the Settlement Authority Orders and otherwise requires Bankruptcy Court approval.

**E.    Failure to Resolve a Designated Claim Through ADR Procedures**

1.    *Litigation Generally*

Designated Claims not resolved through the ADR Procedures shall proceed to litigation for resolution.  Notwithstanding anything herein, the GUC Trust may terminate the

ADR Procedures at any time prior to serving the Arbitration Notice and proceed to litigation of

the Designated Claim as set forth herein.

2.    *Litigation in the Bankruptcy Court*

If the Designated Claim is not resolved by the ADR Procedures (an "**Unresolved**

**Designated Claim**"), subject to a Designated Claimant's right upon completion of the ADR

Procedures for the Unresolved Designated Claim to seek to withdraw the reference for the

Unresolved Designated Claim pursuant to 28 U.S.C. § 157(d), litigation of such Unresolved

Designated Claim shall proceed in the Bankruptcy Court by the commencement by the GUC

Trust of proceedings consistent with the terms, conditions, and limitations set forth in the Claims

Procedures Order or other applicable procedures or orders, as soon as reasonably practicable

upon completion of the ADR Procedures for the Unresolved Designated Claim, to the extent that

(a) the Bankruptcy Court has subject matter jurisdiction over the Unresolved Designated Claim

and (b) the Unresolved Designated Claim is not subject to the abstention provisions of 28 U.S.C.

§ 1334(c).  Disputes over the subject matter jurisdiction of the Bankruptcy Court or the

application of abstention shall be determined by the Bankruptcy Court.

3.    *Litigation in Other Courts*

If the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy

Court as a result of abstention or because of lack of or limitations upon subject matter

jurisdiction (as determined by the Bankruptcy Court), then, subject to the terms and conditions

set forth in Section II.E.4 below, litigation of such Unresolved Designated Claim shall proceed

(a) if the Unresolved Designated Claim was pending in a nonbankruptcy forum on the date the

Debtors commenced their respective voluntary chapter 11 cases (the "**Commencement Date**"),

then (i) in such nonbankruptcy forum, subject to the GUC Trust's right to seek removal or

transfer of venue or (ii) in such other forum as determined by the Bankruptcy Court on request of

the GUC Trust;[8] or (b) if the Unresolved Designated Claim was not pending in any forum on the

Commencement Date, then in the United States District Court for the Southern District of New

York or such other nonbankruptcy forum that, as applicable, (i) has personal jurisdiction over the

parties, (ii) has subject matter jurisdiction over the Unresolved Designated Claim, (iii) has in rem

jurisdiction over the property involved in the Unresolved Designated Claim (if applicable) and

(iv) is a proper venue.  If necessary, any disputes regarding the applicability of this Section II.E.3

shall be determined by the Bankruptcy Court.

4.    *Modification of the Automatic Stay*

If litigation of an Unresolved Designated Claim in a forum other than the

Bankruptcy Court is required as set forth in Section II.E.3 above, the ADR Order provides that

the automatic stay imposed by section 362 of the Bankruptcy Code, or the Plan Injunction

(collectively, the "**Stay**"), shall be modified solely to the extent necessary to permit the

liquidation of the amount of such Unresolved Designated Claim in the appropriate forum;

*provided, however*, that any such liquidated claim (a) shall be subject to treatment under the

Plan; and (b) shall be treated as a general unsecured nonpriority claim against the Debtor

identified in the judgment, unless otherwise determined and ordered by the Bankruptcy Court.

No later than forty-five (45) days after the Bankruptcy Court determines that the terms of Section

II.E.3 above applies to an Unresolved Designated Claim or at such other time as agreed to by the

parties, the GUC Trust shall either (a) file a notice of such modification of the Stay (a "**Notice of

Stay Modification**") with the Bankruptcy Court and serve a copy of such notice on the

Designated Claimant or (b) file a motion seeking an order governing the terms upon which the

---

[8]  The GUC Trust may elect to file a motion pursuant to 28 U.S.C.§ 157(b)(5) to remove to the United States District Court for the Southern District of New York any Unresolved Designated Claim (along with any other unliquidated and litigation claims asserted against the Debtors) where the underlying claim is a personal injury claim or wrongful death claim.

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

25

Stay will be modified (a "**Stay Motion**") and serve such Stay Motion on the Designated

Claimant.  The Stay shall be modified solely to the extent set forth above (a) as of the date that is

forty-five (45) days after the filing of a Notice of Stay Modification, unless the Bankruptcy Court

orders otherwise or the parties otherwise agree; or (b) as ordered by the Court in connection with

a Stay Motion.  If the GUC Trust fails to file a Notice of Stay Modification or a Stay Motion for

any reason with respect to an Unresolved Designated Claim, the Stay shall remain in effect with

respect to such Unresolved Designated Claim and the Designated Claimant may seek a

determination of the Bankruptcy Court regarding whether and on what terms the Stay must be

modified to permit litigation in a nonbankruptcy forum as set forth in Section II.E.3 above.

      **F.**      <u>**Failure to Comply with the ADR Procedures**</u>

        If a Designated Claimant or the GUC Trust fails to comply with the ADR

Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the ADR

Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in

violation of the ADR Order or, with respect to a Designated Claimant, an abandonment of or

failure to prosecute the Designated Claim, or both.  Upon such findings, the Bankruptcy Court

may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant

such other or further remedy deemed just and appropriate under the circumstances, including,

without limitation, awarding attorneys' fees, other fees, and costs to the other party.

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

26

<u>ANNEX 1</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
                                                                 :
In re                                                            :      **Chapter 11 Case No.**
                                                                 :
**MOTORS LIQUIDATION COMPANY,** *et al.,*    :      **09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al.*     :
                                                                 :
          **Debtors.**         :      **(Jointly Administered)**
                                                                 :
-----------------------------------------------------------------x

<u>**ALTERNATIVE DISPUTE RESOLUTION NOTICE**</u>

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

       By this notice (the "**ADR Notice**"), the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") designate the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases and submit the Designated Claim(s) to alternative dispute resolution, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ \_\_\_, 2012.  A complete copy of the ADR Procedures is enclosed for your reference.

       The GUC Trust has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offers the amounts set forth below for allowance of your Designated Claim(s) as [a] prepetition general unsecured nonpriority claim(s) in full satisfaction of the Designated Claim(s) (the "**Settlement Offer**").

       *You are required to return this ADR Notice with a Claimant's Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.*

In addition, to the extent your most recent proof(s) of claim **[does]/[do]** not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct, and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Claimant's Response.

If you do not return this ADR Notice with the requested information and a Claimant's Response to the Settlement Offer to **[the GUC Trust's Representative]** so that it is received by the Deadline to Respond, your Designated Claim(s) will be subject to mandatory mediation as set forth in Section II.B of the ADR Procedures.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** IF YOUR DESIGNATED CLAIM(S) CANNOT BE SETTLED. PLEASE MARK THE BOX BELOW INDICATING WHETHER YOU (i) CONSENT TO **BINDING ARBITRATION** OR (ii) **DO NOT** CONSENT TO (AND SEEK TO **OPT OUT** OF) **BINDING ARBITRATION**. PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN. IN ADDITION, ANY ATTEMPT TO OPT OUT OF **BINDING ARBITRATION** IN THE RESPONSE TO THIS ADR NOTICE SHALL BE INEFFECTIVE IF YOU PREVIOUSLY HAVE CONSENTED IN WRITING (EITHER PREPETITION OR POSTPETITION) TO **BINDING ARBITRATION** AS A MEANS TO RESOLVE YOUR CLAIM(S).

Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**: The GUC Trust offers you an allowed general unsecured, nonpriority claim in the amount of $_____ against **[Name of Debtor]** in full satisfaction of your Designated Claim(s), to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan.

The only permitted response (the "**Claimant's Response**") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "**Counteroffer**"). Accordingly, please select your Claimant's Response below:

*Please indicate below if you accept or reject the GUC Trust's Settlement Offer by marking the appropriate box. If you reject the Settlement Offer, please make your counteroffer where indicated.*

☐ I/we agree to and accept the terms of the Settlement Offer.

**or**

☐ I/we reject the Settlement Offer. However, I/we will accept, and propose as a Counteroffer, the following allowed claim in full satisfaction of the Designated Claim(s), to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan.

Debtor: _____

Amount:  $_____

Priority:  unsecured nonpriority claim (presumed) or ☐ other:*_____

*Note - If you choose a different priority, you must attach an explanation and any relevant documentation.*

 

       Section II.A.3 of the ADR procedures sets forth the restrictions on Counteroffers. Your Counteroffer may not (a) improve the priority set forth in your most recent timely-filed proof of claim or amended proof of claim, or (b) exceed the lesser of the Claim Amount Cap (if applicable) or the amount set forth in your most recent timely-filed proof of claim(s) or amended proof of claim(s).  You may not amend your proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority.

 

*Please indicate below whether you consent to binding arbitration for your Designated Claim(s) by marking the appropriate box.*

☐ I/ WE CONSENT TO BINDING ARBITRATION.

**or**

☐ I/WE DO NOT CONSENT TO BINDING ARBITRATION.

 

[Signature of the Designated Claimant's Authorized Representative]

By:  _____

Printed Name

### ANNEX 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                                :

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | **09-50026 (REG)** |
|     f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

### NOTICE OF NONBINDING MEDIATION

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

        By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

        As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties agree to a different location.  As further provided in the ADR Procedures, you have ten (10) days to choose one of the individuals identified on the list of mediators enclosed with this Mediation Notice to conduct the mediation.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B. of the ADR Procedures, concerning mediation.

[Signature of the GUC Trust's Authorized Person]

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

2

<u>ANNEX 3</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                        :

In re                      :        **Chapter 11 Case No.**
                        :

**MOTORS LIQUIDATION COMPANY,** *et al.,*  :        **09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al.*  :
                        :

               **Debtors.**      :        **(Jointly Administered)**
                        :
-------------------------------------------------------------x

<u>**NOTICE OF NONBINDING MEDIATION**</u>

Service Date:

Claimant(s):

Claimant(s)' Address:

Lower Tier Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

       By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

       As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties agree to a different location.  As further provided in the ADR Procedures, the GUC Trust shall choose one of the individuals identified on

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

3

the list of mediators enclosed with this Mediation Notice to conduct the mediation, and the mediator's fees shall be borne by the GUC Trust.

        A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B. of the ADR Procedures, concerning mediation.

        [Signature of the GUC Trust's Authorized Person]

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

4

<u>**ANNEX 4**</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|                                              |   |                              |
|----------------------------------------------|---|------------------------------|
| In re                                        | : | **Chapter 11 Case No.**      |
|                                              | : |                              |
| **MOTORS LIQUIDATION COMPANY,** *et al.,*    | : | **09-50026 (REG)**           |
|         f/k/a General Motors Corp., *et al.* | : |                              |
|                                              | : |                              |
|                         **Debtors.**         | : | **(Jointly Administered)**   |
|                                              | : |                              |

------------------------------------------------------------x

<u>**NOTICE OF BINDING ARBITRATION**</u>

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Arbitration Location:

       By this Arbitration Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to **binding arbitration**, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures and or through binding mediation.

       PLEASE NOTE THAT YOU HAVE CONSENTED (OR ARE DEEMED TO HAVE CONSENTED) TO BINDING ARBITRATION. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR PROCEDURES.

       As provided for in the ADR Procedures, an arbitrator will be appointed through the American Arbitration Association ("**AAA**").  The ADR Procedures require you and the GUC

Trust to share the administrative fees and costs of arbitration charged by the AAA and the arbitrator.

      A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.C. of the ADR Procedures, concerning binding arbitration.

      [Signature of the GUC Trust's Authorized Person]

C:\DOCUMENTS AND SETTINGS\ROBERTSA\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\B8V9475J\#43507773V8_US_ACTIVE_ - MLC- AMENDED ADR ORDER (E.DOC

2

**Exhibit B**

**Schedule of Mediators**

**Dallas, Texas**

| Name | Experience |
| --- | --- |
| Burdin, Mary | Personal injury, products liability |
| Damuth, Brenda J. | Personal injury, products liability |
| Grissom, Jerry | Class actions, intellectual property, personal injury, products liability |
| Hale, Earl F. | Complex business disputes |
| Lopez, Hon. Carlos G. | Personal injury, products liability |
| Martin, Hon. Harlan | Complex business disputes, intellectual property, personal injury, products liability |
| Nolland, Christopher | Complex business disputes, class actions |
| Parker, Walter E. "Rip" | Intellectual property, personal injury, products liability, complex disputes |
| Pryor, Will | Personal injury, products liability, complex business disputes |
| Rubenstein, Kenneth J. | Personal injury, products liability, complex business disputes |
| Stoddard, Ross | Personal injury, products liability, complex business disputes |
| Young, James | Class actions, complex business disputes, insurance disputes, personal injury |

**New York, New York**

| Name | Experience |
| --- | --- |
| Carling, Francis | Products liability, personal injury |
| Cyganowski, Melanie | Complex business disputes |
| Ellerin, Hon. Betty | Environmental, complex business disputes, products liability, personal injury, class actions |
| Farber, Eugene I. | Environmental, products liability |
| Feerick, Kevin | Complex business disputes, products liability |
| Gafni, Abraham J. | Complex business disputes, products liability, personal injury |
| Holtzman, Eric H. | Products liability, environmental |
| Hyman, Ms. Chris Stern | Insurance disputes |
| Leber, Bernice K. | Complex business disputes |
| Levin, Jack P. | Class actions, breach of warranty claims, products liability |
| McAllister, Michael T. | Personal injury, products liability |
| McLaughlin, Hon. Joseph T. | Complex business disputes, class actions |
| Ricchiuti, Joseph F. | Complex business disputes, products liability, personal injury, class actions |
| Silbermann, Hon. Jacqueline W. | Complex business disputes, products liability, personal injury, class actions |
| Woodin, Peter H. | Complex business disputes, environmental, products liability, personal injury, class actions |

**Detroit, Michigan**

| Name | Experience |
|---|---|
| Connor, Laurence D. | Complex business disputes |
| Harrison, Michael G. | Personal injury |
| Kaufman, Richard C. | Personal injury |
| Muth, Jon R. | Complex business disputes, class actions |
| Pappas, Edward H. | Complex business disputes, products liability |

**San Francisco, California**

| Name | Experience |
|---|---|
| Cahill, Hon. William J. | Complex business disputes, products liability, personal injury, class actions |
| Denver, Thomas | Products liability, personal injury |
| Infante, Hon. Edward A. | Complex business disputes |
| Komar, Hon. Jack | Products liability class actions, mass torts |
| Lynch, Hon. Eugene F. | Complex business disputes |
| McLean, William | Complex business disputes, products liability, personal injury |
| McPharlin, Linda Hendrix | Complex business disputes |
| Needham, Craig | Products liability, personal injury |
| Williams, John R. (Jack) | Products liability, personal injury |
| Wulff, Randall W. | Complex business disputes, products liability, class actions |

**Chicago, Illinois**

| Name | Experience |
|---|---|
| Anderson, Hon. Wayne R. | Complex business disputes, personal injury, products liability, class actions, mass torts |
| Cohn, Lynn | Personal injury, products liability, class actions |
| DiVito, Hon. Gino | Complex business disputes, products liability, personal injury |
| Dutenhaver, Katheryn M. | Complex business disputes, products liability, personal injury |
| Ginn, Bradley R. | Complex business disputes, products liability, personal injury |
| Neville, Hon. Richard E. | Complex business disputes, personal injury, products liability |
| Nudelman, Hon. Stuart A. | Complex business disputes, personal injury, products liability |
| Sullivan, Hon. James E. | Complex business disputes, personal injury, products liability, class actions |

**<u>Exhibit B</u>**

**Blackline of the Revised Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 Case No. |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------------------x

### SECOND AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a) AND GENERAL ORDER M-390 AUTHORIZING IMPLEMENTATION OF ALTERNATIVE DISPUTE PROCEDURES, INCLUDING MANDATORY MEDIATION

Upon the Motion, dated February 13, 2012 (the "**Motion**"),[1] of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), for an order, pursuant to section 105(a) of title 11 of the United States Code and General Order M-390, to supplement the Amended ADR Order (the "**Second Amended ADR Order**"); and the Court having determined that the relief sought in the Motion is in the best interests of the GUC Trust, the Debtors' estates, creditors, and all parties in interest and that the legal and factual bases set for in the Motion establish just cause for the relief granted herein; and after due and proper notice of the Motion having been provided, and it appearing that no other or further notice need be provided; and after consideration of any response pleadings filed; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Amended ADR Order is supplemented as provided herein; and it is further

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion and the modified ADR Procedures set forth in Exhibit "A" attached hereto.

ORDERED that the modified ADR Procedures set forth in Exhibit "A" attached

hereto are approved as provided herein with respect to claims that assert liquidated amounts of

$100,000 or more based on (a) personal injury claims; (b) wrongful death claims; (c) tort claims;

(d) product liability claims; (e) claims for damages arising from the rejection of an executory

contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code; (f)

environmental claims that constitute prepetition unsecured claims (including claims for damages

arising from the rejection of executory contracts that relate primarily to environmental matters)

and claims asserted by federal, state, and tribal governments; (g) patent claims; (h) indemnity

claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions

and excluding indemnity claims relating to asbestos liability); (i) lemon law claims, to the extent

applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the

Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended (the "**MPA**"); (j) warranty

claims, to the extent applicable under section 6.15 of the MPA; and (k) class action claims

(collectively, the "**Designated Claims**"); and it is further

~~ORDERED that, notwithstanding anything to the contrary in the Motion, the~~
~~ADR Procedures shall not apply to claims filed by the United States of America or its agencies;~~
~~*provided, however*, nothing shall preclude the GUC Trust from seeking in the future by separate~~
~~motion alternative dispute resolutions in connection with any such claims; and it is further~~

ORDERED that, annexed to this Second Amended ADR Order as **Exhibit "B"** is

the schedule of mediators (the "**Schedule of Mediators**"); and it is further

ORDERED that, the GUC Trust from time to time may further modify the

Schedule of Mediators by filing a revised Schedule of Mediators with this Court; and it is further

ORDERED that, the GUC Trust is authorized to waive the obligation to share

costs of non-binding mediation in their sole discretion to the extent the Designated Claimant

establishes, to the satisfaction of the GUC Trust, that sharing of such expenses would constitute a substantial hardship upon such Designated Claimant; and it is further

ORDERED that, within **three (3) business days** of entry of this Order, the GUC Trust shall cause to be mailed a copy of this Order to all known holders of Proposed Additional Designated Claims; and it is further

ORDERED that the GUC Trust is authorized to take any and all steps that are necessary or appropriate to implement the ADR Procedures with respect to the Designated Claims, including, without limitation, by implementing any arbitration awards or settlements with respect to Designated Claims achieved under the terms of the ADR Procedures; *provided, howeve*r, that nothing in this Order or the ADR Procedures shall obligate the GUC Trust to settle or pursue settlement of any particular Designated Claim; *further provided* that any such settlements may be pursued and agreed upon as the GUC Trust believes are reasonable and appropriate in its sole discretion, subject to the terms and conditions set forth in the ADR Procedures; and it is further

ORDERED that, if litigation of an Unresolved Designated Claim in a forum other than this Court is required for any of the reasons forth in Section II.E.3 of the ADR Procedures (as determined by this Court), then the Stay shall be modified subject to the terms and conditions set forth in Section II.E.4 of the ADR Procedures.  Any such modification of the Stay shall be solely to the extent necessary to permit the liquidation of the amount of such Unresolved Designated Claim in the appropriate forum.  If the GUC Trust fails to file a Notice of Stay Modification or a Stay Motion for any reason with respect to an Unresolved Designated Claim, as set forth in Section II.E.4 of the ADR Procedures, the Stay shall remain in effect with respect to such Unresolved Designated Claim, and the Designated Claimant may seek a determination of this Court regarding whether the Stay must be modified to permit litigation in a non-bankruptcy forum as set forth in Section II.E.3 of the ADR Procedures; and it is further

ORDERED that nothing contained in this Second Amended ADR Order shall be deemed to preclude any party in interest from objecting to any Designated Claim to the extent

such entity has standing to assert an objection in accordance with the Bankruptcy Code and

applicable law; and it is further

ORDERED that nothing in the ADR Procedures, including the ADR Injunction

set forth therein, shall preclude the holder of a Designated Claim from commencing or

continuing an action against a non-debtor party; and it is further

ORDERED that Rule 408 of the Federal Rules of Evidence shall apply to all

aspects of the ADR Procedures; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Second Amended ADR Order and the ADR Procedures.
Dated: New York, New York

_____ \_\_, 2012

_____

United States Bankruptcy Judge

Document comparison by Workshare Professional on Monday, February 27, 2012 10:47:01 AM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://USDMS/US_ACTIVE/43933919/1 |
| Description | #43933919v1<US_ACTIVE> - Revised Second Amended ADR Order |
| Document 2 ID | interwovenSite://USDMS/US_ACTIVE/43933919/2 |
| Description | #43933919v2<US_ACTIVE> - Revised Second Amended ADR Order |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 5 |
| Deletions | 2 |
| Moved from | 0 |
| Moved to | 0 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 7 |

## Exhibit A

## The ADR Procedures

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 Case No. |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

------------------------------------------------------------x

<u>**ALTERNATIVE DISPUTE RESOLUTION PROCEDURES**</u>

The alternative dispute resolution procedures (the "**ADR Procedures**") adopted upon the motion of the Motors Liquidation Company GUC Trust (the "**GUC Trust**") in the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), are set forth below:

## I.    CLAIMS SUBJECT TO THE ADR PROCEDURES AND ADR INJUNCTION

### A.    <u>Claims Subject to the ADR Procedures</u>

1.    The claims subject to the ADR Procedures (collectively, the "**Designated Claims**") include any and all claims (other than an Excluded Claim as defined below) designated by the DebtorsGUC Trust under the notice procedures set forth below that assert or involve claims based on one or more of the following theories of recovery, whether or not litigation previously has been commenced by the claimant:  (a) personal injury claims,; (b) wrongful death claims,; (c) tort claims,; (d) product liability claims,; (e) claims for damages arising from the rejection of an executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code (excluding; (f) environmental claims that constitute prepetition unsecured

claims (including claims for damages arising from the rejection of executory contracts that relate

primarily to environmental matters), (f and claims asserted by federal, state, and local

governments ("**Environmental Claims**"); (g) patent claims ("**Patent Claims**"); (h) indemnity

claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions

and excluding indemnity claims relating to asbestos liability); (gi) lemon law claims, to the

extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between

the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended (the "**MPA**"); (hj)

warranty claims, to the extent applicable under section 6.15 of the MPA; and (ik) class action

claims ("**Class Claims**").  The DebtorsDesignated Claims that assert amounts between $100,000

and $500,000 shall be known as "**Lower Tier Claims**."  The GUC Trust may identify as a

Designated Claim any proof of claim asserted in these cases, other than Excluded Claims as

defined in Section I.B below, if the Debtors believeGUC Trust believes, in theirits business

judgment and sole discretion, that the ADR Procedures would promote the resolution of such

claim and serve the intended objectives of the ADR Procedures.

2.      The holders of the Designated Claims are referred to herein as the

"**Designated Claimants**."

B.      **Excluded Claims**

The DebtorsGUC Trust shall not identify as a Designated Claim any proof of

claim within any of the following categories (collectively, the "**Excluded Claims**"):  (a) claims

for which the automatic stay under section 362 of title 11 of the United States Code (the

"**Bankruptcy Code**") was modified by prior order of this Court (the "**Bankruptcy Court**") to

allow the litigation of the claim to proceed in another forum; (b) claims asserted in liquidated

amounts of $500,000 or less than $100,000; (c) asbestos-related claims (including indemnity

claims relating to asbestos liability); (d) environmental claims that constitute prepetition

unsecured claims (including claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters); (e) patent infringement claims; (f) tax claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions); and (ge) claims subject to a separate order of the Bankruptcy Court providing for arbitration or mediation.  Notwithstanding the foregoing, any of the Excluded Claims, any disputed postpetition administrative expenses, and any claims or counterclaims asserted by the Debtors GUC Trust may be submitted to the ADR Procedures by agreement of the applicable Debtor GUC Trust and the applicable claimant or by further order of the Bankruptcy Court.

### C.    The ADR Injunction

Upon Subject to the provisions set forth in 11 U.S.C. § 362(b)(4) concerning police and regulatory powers of a governmental unit or organization, upon service of the ADR Notice (as defined below) on a Designated Claimant under Section II.A.1 below, such Designated Claimant (and any other person or entity asserting an interest in the relevant Designated Claim) shall be enjoined from commencing or continuing any action or proceeding in any manner or any place, including in the Bankruptcy Court, seeking to establish, liquidate, collect on, or otherwise enforce the Designated Claim(s) identified in the ADR Notice (collectively, the "**ADR Injunction**") other than (1) through these ADR Procedures, or (2) pursuant to a plan or plans confirmed in the applicable the Debtors' chapter 11 cases (collectively, Second Amended Joint Chapter 11 Plan (the "**ADR Injunction**").  Notwithstanding the forgoing, the Debtors shall not be precluded from seeking to estimate any Designated Claim not subject to an accepted Claim Amount Cap in connection with confirmation or consummation of a plan or plans confirmed in the applicable Debtors' chapter 11 cases, or preclude the Designated Claimant from seeking estimation of its Designated Claim solely for voting purposes in connection with confirmation of a plan or plans confirmed in the applicable

~~Debtors' chapter 11 cases~~**Plan")**.  The ADR Injunction shall expire with respect to a Designated Claim only when that Designated Claim has been resolved or after the ADR Procedures have been completed as to that Designated Claim.  Except as expressly set forth herein or in a separate order of the Bankruptcy Court, the expiration of the ADR Injunction shall not extinguish, limit, or modify the automatic stay established by section 362 of the Bankruptcy Code or ~~any similar injunction that may be imposed~~ upon ~~the~~ confirmation ~~or effectiveness of a plan or plans in the applicable Debtors' chapter 11 cases (a~~of the Plan (the "**Plan Injunction**"), and the automatic stay and the Plan Injunction shall remain in place to the extent then in effect.  Nothing in these ADR Procedures shall prevent the GUC Trust and the Designated Claimant from discussing at mediation, or at any point prior to the expiration of the ADR Injunction, any police or regulatory powers asserted by a Designated Claimant pursuant to 11 U.S.C. § 362(b)(4) or any other asserted sovereign right.

## II.    THE ADR PROCEDURES

### A.    Offer Exchange Procedures

The first stage of the ADR Procedures will be the following offer exchange procedures, requiring the parties to exchange settlement offers and thereby providing an opportunity to resolve the underlying Designated Claim on a consensual basis without any further proceedings by the parties (the "**Offer Exchange Procedures**").  Rule 408 of the Federal Rules of Evidence shall apply to the ADR Procedures.  Except as permitted by Rule 408, no person may rely on, or introduce as evidence in connection with any arbitral, judicial, or other proceeding, any offer, counteroffer, or any other aspect of the ADR Procedures.

1.    *Designation of Designated Claims and Settlement Offer by the ~~Debtors~~GUC Trust*

(a)    At any time following the entry of an order approving the ADR Procedures, as applicable (the "**ADR Order**") and subject to the terms and conditions in Sections I.A and I.B above, the ~~Debtors~~GUC Trust may designate a Designated Claim for resolution through the ADR Procedures by serving upon the Designated Claimant, at the address listed on the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well as to any counsel of record in these cases for the Designated Claimant, the following materials (collectively, the "**ADR Materials**"):  (i) a notice that the Designated Claim has been submitted to the ADR Procedures (an "**ADR Notice**")~~;~~,[1] (ii) a copy of the ADR Order~~;~~; and (iii) a copy of these ADR Procedures.  For transferred claims, the ~~Debtors~~GUC Trust also will serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim.

(b)    The ADR Notice will (i) advise the Designated Claimant that his or her Designated Claim has been submitted to the ADR Procedures; (ii) request that the Designated Claimant verify or, as needed, correct, clarify, or supplement, certain information regarding the Designated Claim (including the addresses for notices under the ADR Procedures); and (iii) include an offer by the ~~Debtors~~GUC Trust to settle the Designated Claim (a "**Settlement Offer**").  The ADR Notice also will require the Designated Claimant to sign and return the ADR Notice along with the Claimant's Response (as defined in Section II.A.2 below) to the ~~Debtors~~GUC Trust so that it is received by the ~~Debtors~~GUC Trust no later than twenty-one (21) days[2] after the mailing of the ADR Notice (the "**Settlement Response Deadline**").

---

[1] The form of the ADR Notice is attached hereto as **Annex 1** and incorporated herein by reference.  The ~~Debtors anticipate~~GUC Trust anticipates that the ADR Notice will be substantially in the form of Annex 1; however, the ~~Debtors reserve~~GUC Trust reserves the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[2] Bankruptcy Rule 9006(a) shall apply to all periods calculated in the ADR Procedures.

(c)    If the Designated Claimant fails to sign and return the ADR Notice or to
include a Claimant's Response (as defined below) with the returned ADR Notice by the
Settlement Response Deadline, (i) the Offer Exchange Procedures will be deemed terminated
with respect to the Designated Claim and (ii) the Designated Claim will be submitted to
nonbinding mediation.

2.    *The Claimant's Response*

The only permitted responses to a Settlement Offer (the "**Claimant's Response**")
are (i) acceptance of the Settlement Offer, or (ii) rejection of the Settlement Offer coupled with a
counteroffer (as further defined below, a "**Counteroffer**").  If the ADR Notice is returned
without a response or with a response that is not a permitted response, the Designated Claim
shall be treated as set forth in Section II.A.1(c) above.

3.    *The Counteroffer*

The Counteroffer shall (i) provide all facts that substantiate the Designated Claim
and that are sufficient for the ~~Debtors~~GUC Trust to evaluate the validity and amount of the
Designated Claim; (ii) provide all documents that the Designated Claimant contends support the
Designated Claim; (iii) state the dollar amount of the Designated Claim (the "**Proposed Claim
Amount**"), which may not (A) improve the priority set forth in the Designated Claimant's most
recent timely filed proof of claim or amended proof of claim, or (B) exceed the lesser of the
Claim Amount Cap (as defined in the ADR Order), if applicable, or the amount set forth in the
Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but
may liquidate any unliquidated amounts expressly referenced in a proof of claim), with an
explanation of the calculation and basis for the Proposed Claim Amount **(the "Proposed Claim
Amount Explanation"), which Proposed Claim Amount Explanation shall additionally include,
without limitation, for Environmental Claims and Patent Claims, all documentation and any such**

other information evidencing and/or substantiating the actual calculation of the Proposed Claim Amount; and (iv) provide the name and address of counsel representing the Designated Claimant with respect to the Designated Claim, unless the Designated Claimant is a natural person, in which case the Designated Claimant shall either provide the name of such counsel or state that he or she is appearing without counsel.

The Counteroffer is presumed to offer the allowance of the Designated Claim as a general unsecured claim in the Proposed Claim Amount against the Debtor identified in the applicable proof of claim.  If the ~~Debtors accept~~GUC Trust accepts the Counteroffer, the Designated Claimant shall not seek recovery from the ~~Debtors~~GUC Trust of any consideration other than the consideration ultimately distributed to holders of other allowed general unsecured claims against the relevant Debtor.  A Counteroffer may not be for an unknown, unliquidated, or indefinite amount or priority, or the Designated Claim shall be treated as set forth in Section II.A.1(c) above.

4.    *Consent to Subsequent Binding Arbitration*

As described in Sections II.B and II.C below, in the absence of a settlement at the conclusion of the Offer Exchange Procedures, Designated Claims shall proceed to nonbinding mediation and, if such mediation is unsuccessful, upon consent of the parties (including deemed consent based on prior contractual agreements), to binding arbitration.  A Designated Claimant is required to notify the ~~Debtors~~GUC Trust whether it consents to, and thereby seeks to participate in, binding arbitration in the event that its Designated Claim ultimately is not resolved through the Offer Exchange Procedures and the nonbinding mediation.  A Designated Claimant shall make an election to either consent or not consent to binding arbitration by checking the appropriate box in the ADR Notice (an "**Opt-In/Opt-Out Election**").  Any Designated Claimant that does not consent to binding arbitration in its response to the ADR Notice may later consent

in writing to binding arbitration, subject to the agreement of the ~~Debtors~~GUC Trust.  Consent to

binding arbitration, once given, cannot subsequently be withdrawn without consent of the

~~Debtors~~GUC Trust.

>    5.    *The ~~Debtors'~~GUC Trust's Response to a Counteroffer*

The ~~Debtors~~GUC Trust must respond to any Counteroffer within fifteen (15) days

after their receipt of the Counteroffer (the "**Response Deadline**"), by returning a written

response (as further defined below, each a "**Response Statement**").  The Response Statement

shall indicate that the ~~Debtors~~GUC Trust (a) ~~accept~~accepts the Counteroffer; or (b) ~~reject~~rejects

the Counteroffer, with or without making a revised Settlement Offer (a "**Revised Settlement

Offer**").

>    (a)    *Failure to Respond*

If the ~~Debtors fail~~GUC Trust fails to respond to the Counteroffer by the Response

Deadline,

(i) the Counteroffer will be deemed rejected by the ~~Debtors~~GUC Trust; (ii) the Offer Exchange

Procedures will be deemed terminated with respect to the Designated Claim; and (iii) the

Designated Claim will be submitted to nonbinding mediation.

>    (b)    *Revised Settlement Offer*

If the ~~Debtors make~~GUC Trust makes a Revised Settlement Offer by the

Response Deadline, the Designated Claimant may accept the Revised Settlement Offer by

providing the ~~Debtors~~GUC Trust with a written statement of acceptance no later than ten (10)

days after the date of service of the Revised Settlement Offer (the "**Revised Settlement Offer

Response Deadline**").  If the Designated Claimant does not accept the Revised Settlement Offer

by the Revised Settlement Offer Response Deadline, the Revised Settlement Offer will be

deemed rejected and the Designated Claim automatically will be submitted to nonbinding mediation.

(c)    *Request for Additional Information*

The ~~Debtors~~GUC Trust may request supplemental or clarification of information supplied in the Designated Claimant's most recently filed proof of claim to assist in a good faith evaluation of any particular Designated Claim.  If the ~~Debtors request~~GUC Trust requests additional information or documentation by the Response Deadline, the Designated Claimant shall serve additional information or documentation sufficient to permit the ~~Debtors~~GUC Trust to evaluate the basis for the Designated Claim (with the exception, in the Designated Claimant's sole discretion, of privileged information or information prepared expressly in contemplation of litigation) so that it is received by the ~~Debtors~~GUC Trust within fifteen (15) days after such request.  If the Designated Claimant timely responds, the ~~Debtors~~GUC Trust shall have fifteen (15) days to provide an amended Response Statement, which may include a Revised Settlement Offer as a counter to the Counteroffer.  If the ~~Debtors do~~GUC Trust does not provide an amended Response Statement within this period, or if the Designated Claimant fails to provide the requested information or documentation within the time allotted, the Designated Claim will be submitted to nonbinding mediation.

6.    *Offer Exchange Termination Date*

Upon mutual written consent, the ~~Debtors~~GUC Trust and a Designated Claimant may exchange additional Revised Settlement Offers and Counteroffers for up to twenty (20) days after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the applicable timeframes provided for in Section II.A.5(c) above with respect to requesting, receiving, and responding to additional information or documentation.  Otherwise, the Offer Exchange Procedures shall conclude and terminate on the earliest of the following (the "**Offer**

**Exchange Termination Date**"): (i) the date upon which the Designated Claim automatically

advances to nonbinding mediation under the provisions set forth above; (ii) the date that any

settlement offer for a Designated Claim is accepted under the procedures set forth above; (iii) the

date upon which a Response Statement was served by the ~~Debtors~~GUC Trust, if the

~~Debtors~~GUC Trust notified the Designated Claimant in their Response Statement of the

~~Debtors'~~GUC Trust's intention to proceed directly to nonbinding mediation; or (iv) such earlier

date as is agreed upon by the ~~Debtors~~GUC Trust and the Designated Claimant.

7.      *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the

~~Debtors~~GUC Trust to settle a Designated Claim by mutual consent at any time. All such

settlements shall be subject to the terms of Section II.D.2 below.

**B.      Nonbinding Mediation ("Mediation")**

1.      *Mediation Notice*

If the ~~Debtors~~GUC Trust and the Designated Claimant do not settle the

Designated Claim through the Offer Exchange Procedures, the ~~Debtors~~GUC Trust shall serve a

notice of nonbinding mediation, with a copy of the Designated Claimant's applicable proof(s) of

claim attached, on the Designated Claimant no later than thirty (30) days after the Offer

Exchange Termination Date, or as soon thereafter as is reasonably practicable.[3]  The Mediation

Notice will provide the Mediation Location (as such term is defined in Section II.B.2 below).

2.      *Location and Appointment of the Mediator*

---

[3] The ~~form~~forms of ~~the~~ Mediation Notice ~~is~~for Designated Claims and Designated Claims that are Lower Tier Claims are attached hereto ~~as **Annex 2**~~ and incorporated herein by reference. ~~The Debtors anticipate~~ as **Annex 2** and **Annex 3**, respectively. The GUC Trust anticipates that the Mediation Notice will be substantially in the form of Annex 2 or Annex 3, as applicable; however, the ~~Debtors reserve~~GUC Trust reserves the right to modify the Mediation Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

AllExcept for Lower Tier Claims, Environmental Claims, and Patent Claims, Mediations shall be conducted in either (i) New York, New York; (ii) Detroit, Michigan; (iii) Dallas, Texas; (iv) San Francisco, California; or (v) Chicago, Illinois (collectively, the "**Mediation Locations**"), unless the parties agree to a different location. WithinExcept for Mediations involving Lower Tier Claims, within ten (10) days after receiving the Mediation Notice, the Designated Claimant shall choose one of the individuals identified in a list of mediators annexed to the Mediation Notice and corresponding to the applicable Mediation Location to conduct the mediation (the "**Mediator**").

      (a)      *Environmental Claims and Patent Claims*

Mediations of Environmental Claims shall be conducted in New York, New York, unless the parties agree to a different location. Mediations of Patent claims shall be conducted in Dallas, Texas, unless the parties agree to a different location. For Environmental Claims and Patent Claims, within ten (10) days after receiving the Mediation Notice, the Designated Claimant shall choose the Mediator corresponding to the applicable Mediation Location to conduct the mediation.

      (b)      *Lower Tier Claims*

Mediations of Lower Tier Claims shall be conducted at a location designated by the GUC Trust, which location shall be within 200 miles of (i) the address listed on proof of claim form for the Designated Claimant's most recently filed proof of claim, or (ii) the office of any counsel of record in these cases for the Designated Claimant holding a Lower Tier Claim, unless the parties agree to a different location. The GUC Trust shall be permitted to select the Mediator from one of the individuals identified in the list of mediators annexed to the Mediation

Notice to conduct the mediation.  The GUC Trust shall be permitted to select the Mediator without regard to the Mediation Location.

>> (c)      *Hardship*

To the maximum extent practicable, the scheduling and location of Mediation sessions shall give due consideration to the convenience of the parties and the proximity of the Designated Claimant.  Notwithstanding the foregoing, within ten (10) business days after service of the Mediation Notice, the Designated Claimant may file a motion with the Bankruptcy Court, on notice to the ~~Debtors~~GUC Trust and any previously appointed ~~mediator~~Mediator, for an order directing that the Mediation be conducted in a different location (a "**Hardship Motion**") if the Designated Claimant can demonstrate that traveling to any of the Mediation Locations presents a "substantial hardship;" *provided, however,* that (i) for each Mediation, except for Mediations of Lower Tier Claims, there shall be a rebuttable presumption that, absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant if the primary representative for ~~a~~such Designated Claimant resides in a location that is less than 750 miles from the Mediation Location or is less than a three-hour plane trip from the Mediation Location (based on typical commercial schedules for the fastest route, excluding any layovers); and (ii) for each Mediation of a Lower Tier Claim, there shall be a rebuttable presumption that, absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant holding a Lower Tier Claim if the primary representative for such Designated Claimant resides in a location that is within 200 miles or less of the Mediation Location.  While a Hardship Motion is pending, all deadlines under these ADR Procedures shall be suspended.  If a Hardship Motion is granted, any alternative location shall be determined by the Bankruptcy Court, taking into account the convenience of the parties and any agreements reached by the parties.  If the location

of the Mediation is changed, (i) any Mediator appointed in the original location may be replaced by a Mediator in the new location (selected by mutual agreement of the parties or order of the Court), and (ii) the Bankruptcy Court may require that that the ~~Debtors~~GUC Trust and the Designated Claimant share the costs of the Mediation.  Except for Mediations involving Lower Tier Claims, the new Mediator shall be selected by mutual agreement of the parties or by order of the Bankruptcy Court.  For mediations involving Lower Tier Claims, the new Mediator shall be selected by the GUC Trust.

3.    *Mediation Rules*

The Mediation of Designated Claims shall be governed by the Mediator's regular procedures, except where expressly modified in the ADR Procedures.  In the event of any conflict, the ADR Procedures shall control.  Any party to a Mediation that fails to participate in good faith, on the terms described herein, may be subject to sanctions under Section II.F below.

(a)    *Impartiality and Qualifications of Mediators*

A person appointed as a Mediator must (i) be an impartial, neutral person; (ii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iii) upon appointment, disclose any circumstances likely to create a reasonable inference of bias.  In the event a Mediator discloses circumstances likely to create a reasonable inference of bias, such Mediator may be replaced at the written request of either the ~~Debtors~~GUC Trust or the Designated Claimant prior to the mediation.

(b)    *Fees and Costs for Mediation*

~~For~~Except for Mediations involving Lower Tier Claims, for each Mediation conducted under these ADR Procedures, the Mediator selected to preside will be entitled to charge the mediation fees disclosed to, and agreed to by, the ~~Debtors~~GUC Trust and the Designated Claimant.  Unless the parties have expressly agreed otherwise in writing (either

prepetition or postpetition) as part of an agreement to submit Designated Claims to Mediation,
the Mediator's fees and the costs of any Mediation shall be shared equally by the ~~Debtors~~GUC
Trust and the Designated Claimant subject to the Sharing Cap (~~as such term is described in the
ADR Order~~if applicable).

For each Mediation of a Lower Tier Claim conducted under these ADR
Procedures, (i) the Mediator will be entitled to charge the mediation fees disclosed to, and agreed
to by, the GUC Trust, and (ii) the Mediator's fees shall be borne by the GUC Trust.

For purposes of clarity, ~~these~~the costs referred to in this Section II.B.3.(b). shall
not include travel expenses of the parties. All Designated Claimants shall be solely responsible
for all travel expenses to participate in the Mediation of a Designated Claim.

(c)    *Pre-Mediation Briefing*

Unless the parties agree otherwise, on or before thirty (30) days prior to the
scheduled Mediation, the Designated Claimant shall serve on the Mediator and the ~~Debtors~~GUC
Trust by electronic transmission or facsimile, at a minimum, and no later than by 6:00 p.m.
(Eastern Time), a nonconfidential, pre-Mediation statement (the "**Opening Statement**") not to
exceed fifteen (15) pages, excluding any attachments, setting forth all of the Designated
Claimant's claims and identifying each and every cause of action or theory the Designated
Claimant asserts, including a short and plain statement of the facts and law upon which the
Designated Claimant relies for recovery and maintains entitle it to relief. The Designated
Claimant shall include, as exhibits or annexes to the Opening Statement, all documents (or
summaries of voluminous documents), affidavits, and other evidentiary materials on which the
Designated Claimant relies (with the exception, in the Designated Claimant's sole discretion, of
privileged information or information prepared expressly in contemplation of litigation). Unless

the parties agree otherwise, on or before fifteen (15) days after service of the Opening Statement, the ~~Debtors~~GUC Trust shall serve on the Mediator and the Designated Claimant, by electronic transmission or facsimile, at a minimum, and no later than by 6:00 p.m. (Eastern Time), a nonconfidential response statement (the "**Mediation Response Statement**") not to exceed fifteen (15) pages, excluding attachments.  The Designated Claimant shall receive copies of all exhibits to the Mediation Response Statement (with the exception, in the ~~Debtors'~~GUC Trust's sole discretion, of privileged information or information prepared expressly in contemplation of litigation).  ~~The Debtors shall provide copies of the Opening Statement and Mediation Response Statement to counsel to the statutory committee of unsecured creditors (the "Creditors' Committee") upon request, on a confidential basis.~~  At the Mediator's discretion and direction, the parties may submit additional, confidential letters or statements to the Mediator, which shall receive "Mediator's-eyes-only" treatment.

      (d)    *The Mediation Session*

Unless otherwise agreed by the parties or as provided herein, the Mediation session must occur no later than sixty (60) days after the date on which the Mediator is appointed.  Unless otherwise agreed by the parties, the Mediation session is open only to the parties and their respective counsel, and insurers (if any).

      (e)    *Treatment of Mediation Settlement*

If the Mediation results in a settlement of the Designated Claim, such settlement shall be subject to the terms of Section II.D below.  If the Mediation of a Designated Claim does not result in a settlement of the Designated Claim, the Designated Claim shall be subject to Section II.C or II.E below.

      (f)    *Modification of the Mediation Procedures*

The Mediation procedures described herein may be modified upon the mutual written consent of the ~~Debtors~~GUC Trust and the Designated Claimant.

**C.**     **Arbitration**

1.     *Binding Arbitration*

If the Designated Claimant and the ~~Debtors~~GUC Trust have consented to binding arbitration under Section II.A.4 above, the Designated Claim will be arbitrated under the terms of this Section II.C if such claim is not resolved in the Offer Exchange Procedures or Mediation. If the Designated Claimant has expressly indicated that it does not consent to binding arbitration in its response to the ADR Notice and has not subsequently opted in to binding arbitration pursuant to Section II.A.4 above, the Designated Claim shall be resolved in the Bankruptcy Court by the ~~Debtors'~~GUC Trust's commencement of proceedings pursuant to the Bankruptcy Code, including without limitation, estimating or objecting to the Designated Claims.  Any party to an arbitration that fails to participate in the arbitration in good faith, on the terms described herein, may be subject to sanctions under Section II.F below.

2.     *Arbitration Notice*

To initiate the arbitration process for a Designated Claim, the ~~Debtors~~GUC Trust shall serve a notice of arbitration (the "**Arbitration Notice**"), with a copy of the Designated Claimant's applicable proof(s) of claim attached, on the Designated Claimant~~, the Creditors' Committee,~~ and the American Arbitration Association (the "**AAA**").[4]

---

[4] The form of the Arbitration Notice is attached hereto as **Annex ~~3~~4** and incorporated herein by reference.  The ~~Debtors anticipate~~GUC Trust anticipates that the Arbitration Notice will be substantially in the form of Annex ~~3~~4; however, the ~~Debtors reserve~~GUC Trust reserves the right to modify the Arbitration Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

3.        *Arbitration Rules and Procedures*

For Designated Claims that are not designated by the ~~Debtors~~GUC Trust as

Complex Designated Claims (as defined below), the arbitration of all Designated Claims shall be

conducted by a single arbitrator selected pursuant to the Commercial Arbitration Rules of the

AAA.  The arbitrator shall be governed by the commercial arbitration rules of the AAA then in

effect (the "**Arbitration Rules**"), except where the Arbitration Rules are expressly modified in

the ADR Procedures.[5]

The ~~Debtors~~GUC Trust may, at ~~their~~its discretion, designate certain Designated

Claims as complex designated claims (the "**Complex Designated Claims**").  The arbitration of

all Complex Designated Claims shall be conducted by a panel of three arbitrators selected

pursuant to the Commercial Arbitration Rules of the AAA.  The AAA Procedures for Large,

Complex Commercial Disputes, in addition to the Commercial Rules of Arbitration, shall be

used for arbitration of all Complex Designated Claims; *provided, however*, unless otherwise

agreed by the parties, (i) the AAA shall appoint a panel of three (3) arbitrators, as provided in

this Section and Section II.C.3(g) and (ii) the arbitration hearing on a Complex Designated Claim

must be held no later than ninety (90) days after the date of appointment of the arbitrator(s), as

provided in Section II.C.3(k).  Finally, the AAA Supplementary Rules for Class Arbitrations

shall also be used for all Class Claims, including those related to class certification and the Class

Determination Award (as defined in Rule 5 of the AAA Supplementary Rules for Class

Arbitrations), except that the arbitrator(s) shall not make a Clause Construction Award (as

defined in Rule 3 of the AAA Supplementary Rules for Class Arbitrations), or determine that a

Class Claim is not arbitrable for failure for each class member to have entered into an arbitration

---

[5] In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall
control.

agreement, the Court having specifically found that the ADR Procedures are applicable to Class

Claims notwithstanding the absence of a written agreement to arbitrate.[6]

(a)    *Governing Law*

The ADR Procedures, as they relate to arbitration proceedings, are governed by

the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "**Federal Arbitration Act**"), and the

enforceability of an arbitration award is governed by Section 9 of the Federal Arbitration Act,

except as modified herein.

(b)    *Fees and Costs for Binding Arbitration; Sharing*

Unless the parties expressly have agreed otherwise in writing (either prepetition

or postpetition) as part of an agreement to submit claims to binding arbitration, the fees and costs

charged by the AAA and the arbitrator(s) shall be shared equally by the ~~Debtors~~GUC Trust and

the Designated Claimant; *provided, however*, that the arbitrator(s), in the arbitrator(s)' sole

discretion, may assess fees and costs against any party that the arbitrator(s) finds to be abusing or

unduly delaying the arbitration process.  The AAA shall submit invoices to the Designated

Claimants and the ~~Debtors~~GUC Trust according to the AAA's ordinary invoicing practices then

in effect and subject to the AAA's ordinary payment terms then in effect.  For purposes of

clarity, these costs shall not include travel expenses of the parties.

(c)    *Impartiality and Qualifications of Arbitrators*

In designating the arbitrator in accordance with the procedures described below,

the AAA shall review the Arbitration Notice and the applicable Designated Claim.  Any person

appointed as an arbitrator must: (i) be an impartial, neutral person; (ii) be experienced (either

from past arbitrations or former employment) in the law that is the subject of the Designated

---

[6] In the event of any conflict between the AAA Supplementary Rules for Class Arbitrations and the ADR Procedures, the ADR Procedures shall control.

Claim; (iii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iv) upon appointment, disclose any circumstances likely to create a reasonable inference of bias.  In the event that an arbitrator discloses circumstances likely to create a reasonable inference of bias, such arbitrator may be replaced by the AAA at the written request of the ~~Debtors~~GUC Trust or the Designated Claimant within ten (10) days after such disclosure.

      (d)    *Time and Location of Arbitration Hearings*

All arbitration hearings shall be conducted in either (i) New York, New York; (ii) Detroit, Michigan; (iii) Dallas, Texas; or (iv) San Francisco, California (collectively, the "**Arbitration Locations**").  To the maximum extent practicable, the scheduling and location of arbitration hearings shall give due consideration to the proximity of the Designated Claimant and to the convenience of the parties to the Arbitration Location.  Within ten (10) days of appointment, the arbitrator(s) shall conduct a preliminary hearing pursuant to AAA Commercial Arbitration Rule 20.  ~~Notwithstanding anything set forth herein or in the ADR Order to the contrary, the Creditors' Committee, through its counsel, shall be permitted to participate in the arbitration hearings to the same extent the Creditors' Committee would be permitted to participate in claims litigation in the Bankruptcy Court pursuant to sections 502, 1103, 1109(b), or any other applicable section of the Bankruptcy Code.~~

      (e)    *Appeals of Arbitration Awards*

All arbitration awards shall be final and binding.  Other than the identities of the ~~applicable Debtors~~GUC Trust and Designated Claimants, the claims register number(s) assigned to the applicable arbitrated Designated Claims and the priority and dollar amounts of the Designated Claims as awarded in the arbitration awards, and except as otherwise required by law

or agreed upon by the parties, all arbitration awards shall be treated as confidential.  No party shall have the right to appeal an arbitration award except pursuant to the appeal provisions of the Federal Arbitration Act, in which case any appeal must be to the United States District Court for the Southern District of New York.  Any appeal shall be governed by the Federal Arbitration Act.  The parties shall have ten (10) days from the date the arbitration award is served to appeal such award.  Failure to timely appeal shall result in the loss of any appeal rights.  Once any appeal has concluded or appellate rights are waived, the ~~Debtors~~GUC Trust shall update the claims docket in their chapter 11 cases accordingly and may file any notice of the liquidated amount of the Designated Claim that they deem necessary or appropriate for such purpose.

(f)    *Modification of the Arbitration Procedures*

The arbitration procedures described herein may be modified only upon the mutual consent of the ~~Debtors~~GUC Trust and the Designated Claimant.  ~~In addition, the Debtors shall consult with the Creditors' Committee prior to any modification to the arbitration procedures.~~

(g)    *Appointment of the Arbitrator*

Within ~~5~~ five days of receiving the applicable Arbitration Notice, the AAA shall commence the following procedures for the appointment of arbitrator(s) (the "**Appointment of Arbitrator(s) Procedures**") by concurrently sending by electronic transmission or facsimile, to the ~~Debtors~~GUC Trust and the applicable Designated Claimant, an identical list of the names of at least eight (8) arbitrator candidates who meet the qualifications necessary for the matter.[7]  The ~~Debtors~~GUC Trust and the applicable Designated Claimant shall have seven (7) business days

---

[7] If, for any reason, there are more than two parties to an arbitration, AAA shall identify a number of potential arbitrators equal to the number of parties, plus one, and the remaining selection proceedings shall otherwise govern. Affiliated entities are considered a single party for this purpose.  ~~The Creditors' Committee shall have no role in the arbitrator selection process.~~

from the date this list is served to (i) strike two (2) names from the proposed list, (ii) list the

remaining names in order of preference, and (iii) return the list to the AAA.  In the event that the

Designated Claim is not a Complex Designated Claim, the AAA shall appoint a single arbitrator

from the name(s) not stricken, giving consideration first to the preferences of the parties and

second to scheduling and the availability of the arbitrator.  In the event that the Designated Claim

is a Complex Designated Claim, the AAA shall appoint a panel of three (3) arbitrators from the

name(s) not stricken, giving consideration first to the preferences of the parties and second to the

scheduling and the availability of the arbitrators.  The AAA shall appoint the arbitrator(s) in

accordance with the Appointment of Arbitrator(s) Procedures within ten (10) business days of its

receipt of the applicable Arbitration Notice.

      (h)    *Pre-Hearing Matters*

      Unless otherwise agreed to by the parties, any pre-hearing issues, matters or

disputes (other than with respect to merits issues) shall be presented to the arbitrator(s)

telephonically (or by such other method agreed to by the arbitrator(s) and the parties) for

expeditious, final, and binding resolution.  Upon a party's request, the arbitrator(s) may order

that a substantive motion, such as a motion for summary judgment, be heard in person rather

than telephonically.  Any pre-hearing issue, matter, or dispute (other than with respect to merits

issues) must be presented to the arbitrator(s) not later than fifteen (15) days prior to the

arbitration hearing so as to permit the arbitrator(s) to review and rule upon the requests by

telephonic or electronic communication at least five days prior to the arbitration hearing.

      (i)    *Discovery*

      Unless the Designated Claim is a Complex Designated Claim, there shall be no

interrogatories.  Any requests for production of documents, electronically-stored information and

things ("**Document Requests**") shall be made in writing and shall be limited to no more than

twenty (20) requests, including discrete subparts.  Items requested in the Document Requests

must be produced within thirty (30) days after service of the Document Requests.  All documents

from discovery shall be confidential and shall not be (i) disclosed to any person or party not

participating in the arbitration proceeding or (ii) used for any purpose other than in connection

with the arbitration proceeding, except as provided herein.  Notwithstanding the foregoing, upon

request of the Creditors' Committee, the Debtors shall provide to the Creditors' Committee, on a

confidential basis, copies of all discovery materials produced pursuant to this Section II.C.3(i)

for any particular Designated Claim.

       (j)    *Pre-Arbitration Statement*

Unless otherwise agreed by the parties, on or before ten (10) days prior to the

scheduled arbitration hearing, each party shall submit to the arbitrator(s) and serve on the other

party or parties and the Creditors' Committee by overnight mail a pre-arbitration statement not to

exceed fifteen (15) pages, excluding any attachments.  On or before ten (10) days prior to the

scheduled arbitration hearing, the Creditors' Committee may submit a short statement, not to

exceed five (5) pages, to the arbitrator(s) and serve such statement on the parties to the

arbitration.

       (k)    *Arbitration Hearing*

Unless otherwise agreed by the parties and the arbitrator(s) or as provided herein,

the arbitration hearing on a Designated Claim must be held no later than ninety (90) days after

the date of appointment of the arbitrator(s).  The arbitration hearing is open only to the parties

and their respective counsel, insurers (if any), and witnesses.  In addition, notwithstanding

anything else set forth herein or in the ADR Order to the contrary, the Creditors' Committee,

~~through its counsel, shall be permitted to attend and participate in the arbitration hearing to the same extent the Creditors' Committee would be permitted to participate in claims litigation in the Bankruptcy Court, pursuant to sections 502, 1103, 1109(b), and any other applicable section of the Bankruptcy Code~~.  Nonparty witnesses shall be sequestered.  No posthearing briefs may be submitted, unless the arbitrator(s) requests briefs, in which case such briefing shall be subject to the issues, timing, and page limitations the arbitrator(s) imposes.  There shall be no reply briefs.

(l)       *Awards*

The arbitrator(s) shall issue a written, reasoned opinion and award (the "**Arbitration Award**") within fourteen (14) days after the arbitration hearing.  The arbitrator(s) shall not be compensated for more than eight hours of deliberations on and preparation of the Arbitration Award for a Designated Claim.  Any Arbitration Award shall be an allowed general unsecured nonpriority claim against the Debtor identified in the Arbitration Award (or if no Debtor is identified in the Arbitration Award, the claim shall be deemed to be against the Debtor identified in the Designated Claimant's applicable proof of claim included with the service of the Arbitration Notice, unless otherwise ordered by the Bankruptcy Court).  The Arbitration Award may not award a priority claim or otherwise determine the priority of the claim under the Bankruptcy Code; *provided, however*, that, within thirty (30) days after the issuance of an Arbitration Award, the Designated Claimant may seek relief from the Bankruptcy Court to determine that some or all of the Arbitration Award is subject to treatment as a priority claim if the Designated Claimant's applicable proof of claim filed as of the date of filing of the ADR Order asserted an entitlement to such priority.  Further, no portion of a claim resulting from any Arbitration Award shall be allowed to the extent that it consists of (a) punitive damages; (b) interest, attorneys' fees, or other fees and costs, unless permissible under section 506(b) of the

Bankruptcy Code; (c) an award under any penalty rate or penalty provision of the type specified in section 365(b)(2)(D) of the Bankruptcy Code; (d) amounts associated with obligations that are subject to disallowance under section 502(b) of the Bankruptcy Code; (e) specific performance, other compulsory injunctive relief, restrictive, restraining, or prohibitive injunctive relief or any other form of equitable remedy; or (f) any relief not among the foregoing but otherwise impermissible under applicable bankruptcy or nonbankruptcy law.  The ~~Debtors and the Creditors' Committee~~GUC Trust shall have the right within thirty (30) days after the issuance of an Arbitration Awards to file a motion seeking relief from the Bankruptcy Court to enforce the preceding sentence and obtain the disallowance of any portion of a claim included in an Arbitration Award in violation of clauses (a) through (f) herein.  In all cases, the awarded claim shall be subject to treatment in the Debtors' chapter 11 cases as set forth in ~~any order(s) confirming a chapter 11 plan or plans~~the Debtors' Second Amended Joint Chapter 11 Plan, or in such other applicable order of the Bankruptcy Court.  The entry of an Arbitration Award shall not grant the Designated Claimant any enforcement or collection rights.

    **D.**    **Settlements of Designated Claims**

    1.    *Settlements Permitted at Any Stage of the ADR Procedures*

Designated Claims may be settled by the ~~Debtors~~GUC Trust and a Designated Claimant through the Offer Exchange Procedures, Mediation, or by agreement at any point during these ADR Procedures.  Nothing herein shall prevent the parties from settling any claim at any time.

    2.    *Settlement Authority and Approvals*

Nothing herein shall limit, expand, or otherwise modify the ~~Debtors'~~GUC Trust's authority to settle claims pursuant to orders of the Bankruptcy Court then in effect, including without limitation, the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and

9019(b) authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish

Procedures for Settling Certain Claims, entered on October 6, 2006 [Docket No. 4180] (the

"**Claims Procedures and Settlement Order**") and ~~any future order(s) confirming a chapter 11~~

~~plan or plans in these cases~~the Bankruptcy Court's March 28, 2011 Findings of Fact,

Conclusions of Law, and Order Pursuant to Sections 1129(b) and (b) of the Bankruptcy Code

and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second

Amended Joint Chapter 11 Plan (ECF No. 9941) (the "**Confirmation Order**") confirming the

Plan (collectively, the "**Settlement Authority Orders**").  Any settlements of claims pursuant to,

or in connection with, the ADR Procedures shall be approved consistent with the terms,

conditions, and limitations set forth in the applicable Settlement Authority Orders.  The

~~Debtors~~GUC Trust shall be requested to seek Bankruptcy Court approval of such settlements

only to the extent that (a) such approval is required by the terms of the Settlement Authority

Orders or (b) the settlement falls outside of the authority granted in the Settlement Authority

Orders and otherwise requires Bankruptcy Court approval.

**E.**    **Failure to Resolve a Designated Claim Through ADR Procedures**

1.    *Litigation Generally*

Designated Claims not resolved through the ADR Procedures shall proceed to

litigation for resolution.  Notwithstanding anything herein, the ~~Debtors~~GUC Trust may terminate

the ADR Procedures at any time prior to serving the Arbitration Notice and proceed to litigation

of the Designated Claim as set forth herein.

2.    *Litigation in the Bankruptcy Court*

If the Designated Claim is not resolved by the ADR Procedures (an "**Unresolved**

**Designated Claim**"), subject to a Designated Claimant's right upon completion of the ADR

Procedures for the Unresolved Designated Claim to seek to withdraw the reference for the

Unresolved Designated Claim pursuant to 28 U.S.C. § 157(d), litigation of such Unresolved

Designated Claim shall proceed in the Bankruptcy Court by the commencement by the

~~Debtors~~GUC Trust of proceedings consistent with the terms, conditions, and limitations set forth

in the Claims Procedures Order or other applicable procedures or orders, as soon as reasonably

practicable upon completion of the ADR Procedures for the Unresolved Designated Claim, to the

extent that (a) the Bankruptcy Court has subject matter jurisdiction over the Unresolved

Designated Claim and (b) the Unresolved Designated Claim is not subject to the abstention

provisions of 28 U.S.C. § 1334(c).  Disputes over the subject matter jurisdiction of the

Bankruptcy Court or the application of abstention shall be determined by the Bankruptcy Court.

3.    *Litigation in Other Courts*

If the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy

Court as a result of abstention or because of lack of or limitations upon subject matter

jurisdiction (as determined by the Bankruptcy Court), then, subject to the terms and conditions

set forth in Section II.E.4 below, litigation of such Unresolved Designated Claim shall proceed

(a) if the Unresolved Designated Claim was pending in a nonbankruptcy forum on the date the

Debtors commenced their respective voluntary chapter 11 cases (the "**Commencement Date**"),

then (i) in such nonbankruptcy forum, subject to the ~~Debtors'~~GUC Trust's right to seek removal

or transfer of venue or (ii) in such other forum as determined by the Bankruptcy Court on request

of the ~~Debtors~~GUC Trust;[8] or (b) if the Unresolved Designated Claim was not pending in any

forum on the Commencement Date, then in the United States District Court for the Southern

District of New York or such other nonbankruptcy forum that, as applicable, (i) has personal

---

[8] The ~~Debtors~~GUC Trust may elect to file a motion pursuant to 28 U.S.C.§ 157(b)(5) to remove to the United States District Court for the Southern District of New York any Unresolved Designated Claim (along with any other unliquidated and litigation claims asserted against the Debtors) where the underlying claim is a personal injury claim or wrongful death claim.

jurisdiction over the parties, (ii) has subject matter jurisdiction over the Unresolved Designated

Claim, (iii) has in rem jurisdiction over the property involved in the Unresolved Designated

Claim (if applicable) and (iv) is a proper venue.  If necessary, any disputes regarding the

applicability of this Section II.E.3 shall be determined by the Bankruptcy Court.

> 4.    *Modification of the Automatic Stay*

If litigation of an Unresolved Designated Claim in a forum other than the

Bankruptcy Court is required as set forth in Section II.E.3 above, the ADR Order provides that

the automatic stay imposed by section 362 of the Bankruptcy Code, or ~~any subsequent~~the Plan

Injunction (collectively, the "**Stay**"), shall be modified solely to the extent necessary to permit

the liquidation of the amount of such Unresolved Designated Claim in the appropriate forum;

*provided, however*, that any such liquidated claim (a) shall be subject to treatment under the

~~applicable chapter 11 plan or plans confirmed in these cases~~Plan; and (b) shall be treated as a

general unsecured nonpriority claim against the Debtor identified in the judgment, unless

otherwise determined and ordered by the Bankruptcy Court.  No later than forty-five (45) days

after the Bankruptcy Court determines that the terms of Section II.E.3 above applies to an

Unresolved Designated Claim or at such other time as agreed to by the parties, the ~~Debtors~~GUC

Trust shall either (a) file a notice of such modification of the Stay (a "**Notice of Stay**

**Modification**") with the Bankruptcy Court and serve a copy of such notice on the Designated

Claimant ~~and the Creditors' Committee~~ or (b) file a motion seeking an order governing the terms

upon which the Stay will be modified (a "**Stay Motion**") and serve such Stay Motion on the

Designated Claimant ~~and the Creditors' Committee~~.  The Stay shall be modified solely to the

extent set forth above (a) as of the date that is forty-five (45) days after the filing of a Notice of

Stay Modification, unless the Bankruptcy Court orders otherwise or the parties otherwise agree;

or (b) as ordered by the Court in connection with a Stay Motion.  If the ~~Debtors fail~~GUC Trust

fails to file a Notice of Stay Modification or a Stay Motion for any reason with respect to an

Unresolved Designated Claim, the Stay shall remain in effect with respect to such Unresolved

Designated Claim and the Designated Claimant may seek a determination of the Bankruptcy

Court regarding whether and on what terms the Stay must be modified to permit litigation in a

nonbankruptcy forum as set forth in Section II.E.3 above.

   **F.**  **Failure to Comply with the ADR Procedures**

    If a Designated Claimant or the ~~Debtors fail~~GUC Trust fails to comply with the

ADR Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the

ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be

in violation of the ADR Order or, with respect to a Designated Claimant, an abandonment of or

failure to prosecute the Designated Claim, or both.  Upon such findings, the Bankruptcy Court

may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant

such other or further remedy deemed just and appropriate under the circumstances, including,

without limitation, awarding attorneys' fees, other fees, and costs to the other party.

## ANNEX 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                            :
In re                                                       :          Chapter 11 Case No.
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.*,                   :          09-50026 (REG)
         f/k/a General Motors Corp., *et al.*               :
                                                            :
                                 Debtors.                   :          (Jointly Administered)
                                                            :
------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION NOTICE

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

By this notice (the "**ADR Notice**"), the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") designate the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases and submit the Designated Claim(s) to alternative dispute resolution, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010 (together, the "**ADR Order**").2012.  A complete copy of the ADR Procedures is enclosed for your reference.

The Debtors haveGUC Trust has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offeroffers the amounts set forth below for allowance of your

Designated Claim(s) as [a] prepetition general unsecured nonpriority claim(s) in full satisfaction of the Designated Claim(s) (the "**Settlement Offer**").

*You are required to return this ADR Notice with a Claimant's Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.*

In addition, to the extent your most recent ~~proofs~~proof(s) of claim **[does]/[do]** not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct, and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Claimant's Response.

If you do not return this ADR Notice with the requested information and a Claimant's Response to the Settlement Offer to **[~~Debtor~~the GUC Trust's Representative]** so that it is received by the Deadline to Respond, your Designated ~~Claims~~Claim(s) will be subject to mandatory mediation as set forth in Section II.B of the ADR Procedures.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** IF YOUR DESIGNATED CLAIM(S) CANNOT BE SETTLED.  PLEASE MARK THE BOX BELOW INDICATING WHETHER YOU (i) CONSENT TO **BINDING ARBITRATION** OR (ii) **DO NOT** CONSENT TO (AND SEEK TO **OPT OUT** OF) **BINDING ARBITRATION**.  PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.  IN ADDITION, ANY ATTEMPT TO OPT OUT OF **BINDING ARBITRATION** IN THE RESPONSE TO THIS ADR NOTICE SHALL BE INEFFECTIVE IF YOU PREVIOUSLY HAVE CONSENTED IN WRITING (EITHER PREPETITION OR POSTPETITION) TO **BINDING ARBITRATION** AS A MEANS TO RESOLVE YOUR CLAIM(S).

Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**: The ~~Debtors offer~~GUC Trust offers you an allowed general unsecured, nonpriority claim in the amount of $_____ against **[Name of Debtor]** in full satisfaction of your Designated Claim(s), to be satisfied in accordance with ~~any plan or plans of reorganization confirmed and implemented in~~ the Debtors' ~~chapter 11 cases~~Second Amended Joint Chapter 11 Plan.

The only permitted response (the "**Claimant's Response**") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "**Counteroffer**").  Accordingly, please select your Claimant's Response below:

*Please indicate below if you accept or reject the ~~Debtors'~~GUC Trust's Settlement Offer by marking the appropriate box.  If you reject the Settlement Offer, please make your counteroffer where indicated.*

☐  I/we agree to and accept the terms of the Settlement Offer.

**or**

☐  I/we reject the Settlement Offer.  However, I/we will accept, and propose as a Counteroffer, the following allowed claim in full satisfaction of the Designated Claim(s), to be satisfied in accordance with ~~any plan or plans of reorganization confirmed and implemented in~~ the Debtors' ~~chapter 11 cases:~~ Second Amended Joint Chapter 11 Plan.

Debtor: _____
Amount:  $_____
Priority:  unsecured nonpriority claim (presumed) or ☐ other:*_____

*Note - If you choose a different priority, you must attach an explanation and any relevant documentation.*

Section II.A.3 of the ADR procedures sets forth the restrictions on Counteroffers. Your Counteroffer may not (a) improve the priority set forth in your most recent timely-filed proof of claim or amended proof of claim, or (b) exceed the lesser of the Claim Amount Cap (~~as defined in the ADR Order~~ if applicable) or the amount set forth in your most recent timely-filed proof of claim(s) or amended proof of claim(s).  You may not amend your proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority.

*Please indicate below whether you consent to binding arbitration for your Designated Claim(s) by marking the appropriate box.*

☐  I/ WE CONSENT TO BINDING ARBITRATION.

**or**

☐  I/WE DO NOT CONSENT TO BINDING ARBITRATION.

[Signature of the Designated Claimant's Authorized Representative]

By:  _____
Printed Name

<u>ANNEX 2</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                          :
**In re**                                 :          **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.,* :          **09-50026 (REG)**
          **f/k/a General Motors Corp.,** *et al.* :
                                          :
               **Debtors.**               :          **(Jointly Administered)**
                                          :
------------------------------------------------------------x

<u>**NOTICE OF NONBINDING MEDIATION**</u>

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

       By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation, (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ __, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010. The Debtors have _, 2012. The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties ~~agrees~~agree to a different location.  As further provided in the ADR Procedures, you have ten (10) days to choose one of the individuals identified on the list of mediators enclosed with this Mediation Notice to conduct the mediation.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.~~C~~B. of the ADR Procedures, concerning mediation.

[Signature of the ~~Debtors'~~GUC Trust's Authorized Person]

**ANNEX 3**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**-------------------------------------------------------------x**
                                                              **:**
**In re**                                              **:**        **Chapter 11 Case No.**
                                                              **:**
**MOTORS LIQUIDATION COMPANY,** *et al.,*        **:**        **09-50026 (REG)**
          **f/k/a General Motors Corp.,** *et al.*    **:**
                                                              **:**
                     **Debtors.**              **:**        **(Jointly Administered)**
                                                              **:**
**-------------------------------------------------------------x**

**NOTICE OF NONBINDING MEDIATION**

**Service Date:**

**Claimant(s):**

**Claimant(s)' Address:**

**Lower Tier Claim Number(s):**

**Amount(s) Stated in Proof(s) of Claim:**

**Mediation Location:**

By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ____, 2012. The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties agree to a different location. As further provided in the ADR Procedures, the GUC Trust shall choose one of the individuals identified on

the list of mediators enclosed with this Mediation Notice to conduct the mediation, and the mediator's fees shall be borne by the GUC Trust.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B. of the ADR Procedures, concerning mediation.

[Signature of the GUC Trust's Authorized Person]

<u>**ANNEX ~~3~~4**</u>

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**------------------------------------------------------------x**
                                                    :
**In re**                          :          **Chapter 11 Case No.**
                                                    :
**MOTORS LIQUIDATION COMPANY,** *et al.,*    :          **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*    :
                                                    :
                **Debtors.**          :          **(Jointly Administered)**
                                                    :
**------------------------------------------------------------x**

<u>**NOTICE OF BINDING ARBITRATION**</u>

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Arbitration Location:

　　　　By this Arbitration Notice, <u>the Motors Liquidation Company GUC Trust (the "GUC Trust"), as successor to</u> Motors Liquidation Company (f/k/a General Motors Corporation)<u>,</u> and its affiliated debtors~~, as debtors in possession~~ (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to **binding arbitration**, pursuant to the procedures (the "**ADR Procedures**") established by the <u>Second</u> Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation~~,~~ <u>(the "**ADR Order**")</u> entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ <u>– ___,</u> ~~2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010.  The Debtors have~~ <u>___, 2012.  The GUC Trust has</u> been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures and or through binding mediation.

　　　　PLEASE NOTE THAT YOU HAVE CONSENTED (OR ARE DEEMED TO HAVE CONSENTED) TO BINDING ARBITRATION. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR PROCEDURES.

As provided for in the ADR Procedures, an arbitrator will be appointed through the American Arbitration Association ("**AAA**").  The ADR Procedures require you and the ~~Debtors~~<u>GUC Trust</u> to share the administrative fees and costs of arbitration charged by the AAA and the arbitrator.

A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.C<u>.</u> of the ADR Procedures, concerning binding arbitration.

[Signature of the ~~Debtors'~~<u>GUC Trust's</u> Authorized Person]

**Exhibit B**

**Schedule of Mediators**

**Dallas, Texas**

| Name | Experience |
|------|-----------|
| Burdin, Mary | Personal injury, products liability |
| Damuth, Brenda J. | Personal injury, products liability |
| Grissom, Jerry | Class actions, intellectual property, personal injury, products liability |
| Hale, Earl F. | Complex business disputes |
| Lopez, Hon. Carlos G. | Personal injury, products liability |
| Martin, Hon. Harlan | Complex business disputes, intellectual property, personal injury, products liability |
| Nolland, Christopher | Complex business disputes, class actions |
| Parker, Walter E. "Rip" | ~~Personal~~Intellectual property, personal injury, products liability, complex disputes |
| Pryor, Will | Personal injury, products liability, complex business disputes |
| Rubenstein, Kenneth J. | Personal injury, products liability, complex business disputes |
| Stoddard, Ross | Personal injury, products liability, complex business disputes |
| Young, James | Class actions, complex business disputes, insurance disputes, personal injury |

**New York, New York**

| Name | Experience |
|------|-----------|
| Carling, Francis | Products liability, personal injury |
| Cyganowski, Melanie | Complex business disputes |
| Ellerin, Hon. Betty | ~~Complex~~Environmental, complex business disputes, products liability, personal injury, class actions |
| Farber, Eugene I. | ~~Products~~Environmental, products liability |
| Feerick, Kevin | Complex business disputes, products liability |
| Gafni, Abraham J. | Complex business disputes, products liability, personal injury |
| Holtzman, Eric H. | Products liability, environmental |
| Hyman, Ms. Chris Stern | Insurance disputes |
| Leber, Bernice K. | Complex business disputes |
| Levin, Jack P. | Class actions, breach of warranty claims, products liability |
| McAllister, Michael T. | Personal injury, products liability |
| McLaughlin, Hon. Joseph T. | Complex business disputes, class actions |
| Ricchiuti, Joseph F. | Complex business disputes, products liability, personal injury, class actions |
| Silbermann, Hon. Jacqueline W. | Complex business disputes, products liability, personal injury, class actions |
| Woodin, Peter H. | Complex business disputes, environmental, products liability, personal injury, class actions |

## Detroit, Michigan

| Name | Experience |
|---|---|
| Connor, Laurence D. | Complex business disputes |
| Harrison, Michael G. | Personal injury |
| Kaufman, Richard C. | Personal injury |
| Muth, Jon R. | Complex business disputes, class actions |
| Pappas, Edward H. | Complex business disputes, products liability |

## San ~~Fancisco~~ Francisco, California

| Name | Experience |
|---|---|
| Cahill, Hon. William J. | Complex business disputes, products liability, personal injury, class actions |
| Denver, Thomas | Products liability, personal injury |
| Infante, Hon. Edward A. | Complex business disputes |
| Komar, Hon. Jack | Products liability class actions, mass torts |
| Lynch, Hon. Eugene F. | Complex business disputes |
| McLean, William | Complex business disputes, products liability, personal injury |
| McPharlin, Linda Hendrix | Complex business disputes |
| Needham, Craig | Products liability, personal injury |
| Williams, John R. (Jack) | Products liability, personal injury |
| Wulff, Randall W. | Complex business disputes, products liability, class actions |

## Chicago, Illinois

| Name | Experience |
|---|---|
| Anderson, Hon. Wayne R. | Complex business disputes, personal injury, products liability, class actions, mass torts |
| Cohn, Lynn | Personal injury, products liability, class actions |
| DiVito, Hon. Gino | Complex business disputes, products liability, personal injury |
| Dutenhaver, Katheryn M. | Complex business disputes, products liability, personal injury |
| Ginn, Bradley R. | Complex business disputes, products liability, personal injury |
| Neville, Hon. Richard E. | Complex business disputes, personal injury, products liability |
| Nudelman, Hon. Stuart A. | Complex business disputes, personal injury, products liability |
| Sullivan, Hon. James E. | Complex business disputes, personal injury, products liability, class actions |

## Exhibit C

### Form of Capping Claim Letter

[Date]

**BY E-MAIL AND FIRST CLASS MAIL**

Motors Liquidation Company
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn.: ADR Claims Team
claims@motorsliquidation.com

Re:    **In re Motors Liquidation Company**, *et al.* (**"Debtors"**)
Case No. 09-50026 (REG)    Capping Proposal Letter

Dear Motors Liquidation Company,

By this letter, I, the undersigned, am the below-referenced claimant, or an authorized signatory for the below-referenced claimant, and hereby submit my claim to the capping procedures established in the Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation (the "**ADR Procedures**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010.

Accordingly, I hereby propose to cap my claim at the amount specified below (the "**Claim Amount Cap**").

| Claimant's Name | Proof of Claim No. | Original Filed Amount | Claim Amount Cap |
|---|---|---|---|
|  |  |  |  |

I understand and agree that the Claim Amount Cap includes all damages and relief to which I believe I am entitled, including all interest, taxes, attorney's fees, other fees, and costs.  If the Claim Amount Cap is accepted by the Debtors, I understand that I am required to submit my claim to the ADR Procedures and acknowledge that my claim may be a "Designated Claim" as such term is used under the ADR Procedures.

Very truly yours,

By _____
Address _____
State _____

cc:    Pablo Falabella, Esq.
Weil, Gotshal & Manges LLP

767 Fifth Avenue, New York, NY 10153
pablo.falabella@weil.com

Document comparison by Workshare Professional on Monday, February 27, 2012
9:27:25 AM

| Input: | |
|---|---|
| Document 1 ID | interwovenSite://USDMS/US_ACTIVE/43507773/1 |
| Description | #43507773v1<US_ACTIVE> - MLC- AMENDED ADR Order (Exhibits A B C) |
| Document 2 ID | interwovenSite://USDMS/US_ACTIVE/43507773/8 |
| Description | #43507773v8<US_ACTIVE> - MLC- AMENDED ADR Order (Exhibits A B C) |
| Rendering set | standard |

| Legend: | |
|---|---|
| Insertion | |
| Deletion | |
| Moved from | |
| Moved to | |
| Style change | |
| Format change | |
| Moved deletion | |
| Inserted cell | |
| Deleted cell | |
| Moved cell | |
| Split/Merged cell | |
| Padding cell | |

| Statistics: | |
|---|---|
| | Count |
| Insertions | 223 |
| Deletions | 203 |
| Moved from | 4 |
| Moved to | 4 |
| Style change | 0 |
| Format changed | 0 |
| Total changes | 434 |