Page 1

1

2   UNITED STATES BANKRUPTCY COURT

3   SOUTHERN DISTRICT OF NEW YORK

4   Case No. 09-50026-reg

5   - - - - - - - - - - - - - - - - - - - - -x

6   In the Matter of:

7

8   GENERAL MOTORS CORPORATION, ET AL.,

9

10                Debtors.

11

12   - - - - - - - - - - - - - - - - - - - - -x

13

14                United States Bankruptcy Court

15                One Bowling Green

16                New York, New York

17

18                February 9, 2012

19                9:49 AM

20

21   B E F O R E:

22   HON. ROBERT E. GERBER

23   U.S. BANKRUPTCY JUDGE

24

25

Page 2

```
 1

 2    Debtors' Eighty-Ninth Omnibus Objection to Claims and Motion

 3    Requesting Enforcement of Bar Date Orders (Late-Filed Claims)

 4    Henderson Claim #70303

 5

 6    Debtors' 165th Omnibus Claim to Claims and Motion Requesting

 7    Enforcement of Bar Date Orders (Late-Filed Claims) Dalton Claim

 8    #70180 Venable Claim #70342

 9

10    245th Omnibus Objection to Claims and Motion Requesting

11    Enforcement of Bar Date Orders Evans Claim #71170 Stelmach

12    Claim #71140 Truxall Claim #71193

13

14    246th Omnibus Objection to Claims Erma Jean Buckley - Claim

15    #66268

16

17    253rd Omnibus Objection to Claim(s) Number Filed by Barry N.

18    Seidel on Behalf of Motors Liquidation Company GUC Trust

19    Bruster Claim #70400 Chapman Claim #69688

20

21    264th Omnibus Objection to Claim(s)

22

23    265th Omnibus Objection to Claim(s)

24

25
```

1

2     **Motion by MTech Associates LLC to Deem Claim Allowed**

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25     **Transcribed by:  Aliza Chodoff**

Page 4

1

2   A P P E A R A N C E S :

3   DICKSTEIN SHAPIRO LLP

4        Attorneys for Motors Liquidation GUC Trust

5        1633 Broadway

6        New York, NY 10019

7

8   BY:   STEFANIE BIRBROWER GREER, ESQ.

9        COURTNEY E. TOPIC, ESQ.

10

11

12   ALSO PRESENT:

13        ALBERTA BRUSTER, Pro Se

14        ERMA JEANINE BUCKLEY, Pro Se

15        LONNIE CHAPMAN, Pro Se

16        BETTY DALTON, Pro Se

17        JESMER EVANS, Pro Se

18        MONTY HENDERSON, Pro Se

19        LISA HENDERSON, Pro Se

20        MICHAEL STELMACH, Pro Se

21        STEPHEN TRUXALL, Pro Se

22        SUDIE M. VENABLE, Pro Se

23

24

25

09-50026-mg    Doc 11461    Filed 02/13/12    Entered 02/27/12 16:27:26    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 5 of 47

Page 5

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Good morning.  Have your seats, please.

 3    Okay.  Good morning, everybody.  We're here on General Motors;

 4    now called Motors Liquidation Corporation.  The principal

 5    matter of business we have today are, as I understand it, eight

 6    disputed claims objected to for late filing for having failed

 7    to meet the deadline.  Let me get appearances from those in the

 8    courtroom, and then ascertain whether there's anything of an

 9    undisputed nature that we should deal with first before I get

10    on to hearing the arguments on the disputed claims.

11              I will have some preliminary comments before that

12    argument begins.  But let's hear where we stand.

13              MS. GREER:  Good morning, Your Honor.  Stefanie Greer

14    from Dickstein --

15              THE COURT:  Ms. Greer, a lot of people are listening

16    in on the telephone.  I need you to come to the main lectern,

17    please.

18              MS. GREER:  Understood, Your Honor.  Sorry about that.

19    Stefanie Greer from Dickstein Shapiro, on behalf of the Motors

20    Liquidation Company GUC Trust.  I hear -- I have here with me

21    today my colleagues, Courtney Topic and Edime Carmel (ph.),

22    also from Dickstein.

23              THE COURT:  Okay.  And I have a number of claimants.

24    Let me just take attendance, so to speak, at this point.

25    Alberta Bruster?
```

1              MS. BRUSTER:  I'm here.  Alberta Bruster.

2              THE COURT:  Thank you.  Lonnie Chapman?  Mr. Chapman,

3    are you on the phone?

4              Okay.  He shows on my phone log.  Court Call, can you

5    hear me?

6              COURT CALL:  Yes, sir.  Mr. Chapman is online.

7              THE COURT:  Okay.  Mr. Chapman, can you hear me?

8              MR. CHAPMAN:  Yes, I do.

9              THE COURT:  Okay, very good.  Thank you.

10             Betty Dalton?

11             MS. DALTON:  Betty Dalton.

12             THE COURT:  Good morning, Ms. --

13             MS. DALTON:  I'm here.

14             THE COURT:  -- Dalton.  Thank you.

15             Jesmer Evans?  Court Call, I --

16             COURT CALL:  No appearance, Your Honor.

17             THE COURT:  I show him on your phone log.  He signed

18   up, but he didn't call in?

19             COURT CALL:  Yes, sir.

20             THE COURT:  Okay.  Thank you.

21             The Hendersons; Monty or Lisa Henderson?

22             COURT CALL:  No appearance, Your Honor.

23             THE COURT:  Okay, thank you.

24             Michael Stelmach?

25             MS. STELMACH:  I'm here, Your Honor.  Anastasia

09-50026-mg   Doc 11461   Filed 02/13/12   Entered 02/27/12 16:27:26   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 7 of 47

Page 7

1       Stelmach for my father, Michael Stelmach.

2                THE COURT:  Okay, thank you.

3                Okay.  Right.  Oh, forgive me.  Yes, it's Anastasia on

4       behalf of your dad, right?

5                MS. STELMACH:  Correct.

6                THE COURT:  Okay, thank you.  Just give me a moment,

7       please.  Cheryl Truxall?  Mr. Stephan Truxall?

8                MR. TRUXALL:  I'm here.

9                THE COURT:  Okay, thank you.

10               Sudie Venable?  Ms. Venable, are you on the phone?

11      Court Call, I show here as having signed up to use your

12      services.  Is she on the line, if you know?

13               COURT CALL:  Yes, Your Honor.  I am showing Ms.

14      Venable online.

15               THE COURT:  All right.  Let me try again.  Ms.

16      Venable, can you hear me?  Well, I'll give you another chance

17      later on when we get to your claim.

18               Okay.  Everybody, I have read the papers, including

19      the letters or other responses filed by each of the folks on

20      the phone.  And I know the law.  When you make your arguments,

21      assume that I have read the papers, because I have.  And there

22      are two things that I want everybody to focus on the most.  One

23      is did you or your family members get notice of the bar date.

24      The bar date is another name for the deadline for filing

25      claims.  And help me understand the reasons why the claims were

09-50026-mg    Doc 11461    Filed 02/13/12    Entered 02/27/12 16:27:26    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 8 of 47

Page 8

1    filed late.

2         Those are the two things that I care about the most.

3    And the way we're going to do it is Ms. Greer, you may, if you

4    wish, make remarks that apply to everybody.  But then, I want

5    you to take them claim-by-claim, person-by-person and focus on

6    each person's individual circumstances.  Then, you're going to

7    stop with respect to that person, and you're going to give the

8    person who you were talking about a chance to be heard.  Then,

9    I'm going to give you a chance to reply to anything the person

10   on the phone says, and -- but limited to anything new that he

11   or she said.  And then, I'm going to let the person on the

12   phone respond to anything new you said, but again, limited to

13   anything new that you said.

14        Okay.  Those are the ground rules on which we're going

15   to proceed, folks.  And Ms. Greer, start.  Keep your voice

16   close to the microphone so that both I and the people on the

17   phone can hear you.

18        MS. GREER:  Yes, Your Honor.  Understood.  I will take

19   you up on making a few remarks related to all of the claimants,

20   and then we'll take them one-by-one starting with Ms. Bruster.

21   I will be brief.  I know you've read the papers, Your Honor.

22        In the Second Circuit, excusable neglect, as we all

23   know, is a very high standard.  It's a hard one to meet.

24        THE COURT:  Keep your voice loud, please, Ms. Greer.

25        MS. GREER:  Yes, sir.  And the burden is on the

09-50026-mg   Doc 11461   Filed 02/13/12   Entered 02/27/12 16:27:26   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 9 of 47

Page 9

1    claimant to meet it.  Under Pioneer, the Supreme Court has made

2    it clear, and in this district in Lehman and Enron, that the

3    focus is on the reason for the delay.  Significantly, to this

4    case, Your Honor, courts generally do not find excusable

5    neglect when there's a failure on a part of a claimant to

6    diligence his potential claims when there's a lack of

7    understanding of the rules.

8           I've spoken to nearly all of the claimants on the

9    phone, or my colleagues have, and each of them no doubt has a

10   sympathetic story to tell.  But none of them, in our view,

11   provides a compelling reason that would satisfy the excusable

12   neglect standard in a way that would avoid the prejudice to the

13   trust.  And I'm just going to say a few words about the

14   prejudice issue here.

15          The prejudice to the estate here results -- is

16   signifi -- is a significant one.  Generally, it's not about one

17   particular claim, but about the collective impact of the

18   claims.  And in this -- in Lehman, the courts faced a similar

19   issue and pointed out that the extraordinary size of the case

20   management project is itself a significant factor in

21   determining prejudice.  Here, over 70,000 claims were filed

22   against the debtors.  Many of them -- many, many of them

23   timely.  The trust is gearing towards completion of the claims

24   reconciliation process.

25          Of that 70,000 claims, we have about 1,000 -- north of

Page 10

1    1,000 that remain in dispute.  It is our goal and anticipation

2    that all of those claims will be resolved at the end -- by the

3    end of June of this year, other than major litigation claims.

4    So Your Honor, it's our view that to allow these claims would

5    slow down that process.  Each of them would need to be

6    substantively reviewed, investigated and either resolved or

7    litigated.  And that's to the detriment of creditors who in

8    fact did understand and file their claims in a timely fashion.

9            But it is our view that the claims process depends on

10   the integrity of the bar date order, which gives predictability

11   to the dispute claims population and allows the claims

12   management process to proceed efficiently.  This is especially

13   true for Stel -- Mr. Stelmach, Truxall and Mr. Evans.  These

14   are unliquidated claims that were filed after the bar -- after

15   the effective date of the plan, so after March of 2011, and

16   these haven't even been reserved for.

17           So as per Your Honor's direction, I'll start going

18   through the individual facts of each claim starting with Ms.

19   Bruster.  This is a situation, Your Honor, where Ms. Bruster

20   contacted GM in April 2010 for the first time after receiving a

21   recall notice.  Her claim was filed ultimately on September

22   17th, 2010; nine months after the bar date.  The injury -- or

23   the accident occurred in May of 2009, so over a year before she

24   filed a claim.  This is a constructive notice situation, Your

25   Honor, that GM was not aware of this claimant at the time of

GENERAL MOTORS CORPORATION, ET AL.

Page 11

```
 1     the bankruptcy.

 2             And it wasn't until she filed the claim that the

 3     company became aware of her.  So if -- we'd like to have Mr.

 4     Bruster (sic) give her side of the story -- actually, Your

 5     Honor, one more thing.  I did want to point out that the trust

 6     hasn't verified the facts as each of these folks has explained

 7     it.  We wanted to proceed here in a way that accepts those

 8     facts as true for the purposes of this argument and allows us

 9     to determine as a matter of law whether there's been excusable

10     neglect.  But I have no way of verifying these facts.  I'm just

11     giving them to you --

12             THE COURT:  I understand.

13             MS. GREER:  -- as she's explained them.

14             THE COURT:  Your point, so that everybody in the

15     courtroom and on the line understands, is you're assuming that

16     these facts as the claimants have told them to you are true for

17     the purpose of this discussion.  And you're asserting that even

18     if they're being fully true and candid you still should win.

19             MS. GREER:  Exactly, Your Honor.  So --

20             THE COURT:  Okay.

21             MS. GREER:  -- with respect to Ms. Bruster, I think

22     the bottom line is that her reasons are failure to diligence,

23     which is not excusable neglect.  And her first contact with

24     Lehman was -- I'm sorry, with GM was after the bar date -- well

25     after the bar date.  And this is sort of consistent with the
```

Page 12

```
 1    Lehman and Enron decisions.  I would submit that there is no

 2    excusable neglect here.

 3              THE COURT:  Okay.

 4              Ms. Bruster, can I get --

 5              MS. BRUSTER:  Yes?

 6              THE COURT:  -- your point of view?

 7              MS. BRUSTER:  Yes, sir.  Alberta Bruster.  I did file

 8    late, and the reason for that was because in April of 2010 when

 9    the reimbursement paper was sent to me and the reason -- you

10    know, the recall notice was sent to me, it was -- I responded

11    to them.  I sent all the paperwork.  I copied everything, you

12    know, telling them and showing them what had happened.  And it

13    took weeks and weeks before I got a respond.  I kept calling,

14    okay, and to make sure.  The last thing I heard was it -- one

15    of the ladies told me -- said someone is going to call you

16    because we can't deal with it, you know, within GM.

17              Okay.  When they did call me, and I stated on the

18    letter, is that you need to go online and get a proof of claim,

19    he say, and filed it.  You probably will be late, but file it

20    anyway.  So that's why I went on and filed a proof of claim.

21    And when I did pull everything off the computer, I saw the bar

22    date.  That's when I saw the bar date, you know, and I said it

23    is late.  You know?  And -- but I sent it anyway as I was told

24    to do; to send it anyway, whether I was late or not because

25    they could not handle it.
```

GENERAL MOTORS CORPORATION, ET AL.

Page 13

1         And prior to that, in 2009, when the car was -- when I

2    sent collision, and they said it would happen.  Prior to that,

3    in 2009, when that happened, I was not aware that G -- that

4    there was a recall on the electrical power steering.  But I

5    knew what had happened to the car.  I didn't know anything

6    about the electrical power steering until I received the letter

7    from them in 2010, and it stated that if it went out, it would

8    cause a collision.  My daughter was hurt in that because she --

9    her wrist and thing were messed up because she was trying to

10   steer the vehicle, and that's when I reported back to them in

11   2010 when I knew that it was caused by them.

12         But I didn't know that GM was in bankruptcy, not until

13   I got the call telling me to file a proof of claim.

14         THE COURT:  Ms. Bruster, you live in Vidalia,

15   Louisiana?

16         MS. BRUSTER:  It's right in Farriday, Louisiana, but

17   (indiscernible) Louisiana is right next to there.  I have a

18   home there, but I'm living in Farriday, Louisiana.

19         THE COURT:  What's the nearest big city?

20         MS. BRUSTER:  Natchez, Mississippi.

21         THE COURT:  Uh-huh.  What newspapers do you read?

22         MS. BRUSTER:  I can't understand.

23         THE COURT:  What newspapers are sold in your

24   community?

25         MS. BRUSTER:  Newspaper?

GENERAL MOTORS CORPORATION, ET AL.

1          THE COURT:  Yes, ma'am.

2          MS. BRUSTER:  (indiscernible) and -- let's see.  We

3    have -- you can only get the News World and something

4    (indiscernible).  I'm not a newspaper buyer.

5          THE COURT:  Um-hum.

6          MS. BRUSTER:  I'm not a newspaper buyer.  I don't buy

7    newspapers.

8          THE COURT:  What about the New York Times or the Wall

9    Street Journal?

10         MS. BRUSTER:  The New York Times; I haven't seen it.

11         THE COURT:  Okay.  All right.  Did I cut you off, Ms.

12   Bruster, or did you tell me everything you wanted to tell me?

13         MS. BRUSTER:  That is basically it, sir.  And my

14   reason -- like I said, you know, in my papers I explained why I

15   asked for the letter 1,000 dollars; because of the money that

16   had to be paid out and, you know, what it would have cost for

17   repairs or whatever because all the letter said on the -- the

18   reimbursement paper said what was spent and what was whatever.

19   But all papers that I had from everything happened, even down

20   to the person that pulled my vehicle, all of that was sent to

21   them prior to, you know, me receiving the letter.  I sent all

22   of that as soon as I received the letter.  They received all

23   paperwork from me.

24         THE COURT:  Okay.  Thank you very much.

25         Ms. Greer, you may respond if you wish.

09-50026-mg   Doc 11461   Filed 02/13/12   Entered 02/27/12 16:27:26   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 15 of 47

Page 15

1          MS. GREER:  Your Honor, I just wanted to point out

2     that the trust is exercising its fiduciary duty to enforce the

3     orders of this Court.  I understand where Ms. Bruster is coming

4     from and the difficulties involved here.  I do think the

5     prejudice to the trust is significant resulting from the

6     allowance of any of these claims late filed, and I also point

7     out that there are cases like that --

8          MS. BRUSTER:  Thank you, sir.

9          THE COURT:  Thank you.  Go on, Ms. Greer.

10         MS. GREER:  Sorry, Your Honor.  Cases such as the Hon

11    Johnson (ph.) case in which a pro se litigant was held to the

12    bar date and in addition, the cases which provide that

13    constructive notice by public is sufficient irrespective of the

14    location where the claimant lives.  So Your Honor, we submit

15    that it's appropriate to disallow the claim.  But we're happy

16    to --

17         MS. BRUSTER:  I can't understand this.

18         THE COURT:  You've got to keep --

19         MS. GREER:  I'm sorry.  I --

20         THE COURT:  -- your voice very loud, Ms. Greer.

21         MS. GREER:  I'm sorry.  It's a little tough for me

22    to -- without you in the courtroom, Ms. Bruster.  I apologize.

23    I was just saying to the judge that the trust in an exercise of

24    its fiduciary duties is working hard to resolve claims and act

25    in a way that is efficient and consistent with this Court's

09-50026-mg    Doc 11461    Filed 02/13/12    Entered 02/27/12 16:27:26    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 16 of 47

Page 16

1    orders, and I was going to leave it at that.  And we can move

2    on to the next one.

3            THE COURT:  Okay.  We're going to move on to the next,

4    and I'm going to give you all my rulings at the end.

5            Monty Chapman?  Mr. Chapman, I think you're on the

6    line.  Are you on the line, Mr. Chapman, still on the li --

7            MR. CHAPMAN:  I'm on the line.

8            THE COURT:  Okay.  Ms. Greer, let's talk about your

9    objection to Mr. Chapman's claim.

10           MS. GREER:  Sure.  I've had a couple of discussions

11   with Mr. Chapman, Your Honor, and I do not have any

12   understanding of the reason why the claim is late.  So given

13   the law requires the burden on the claimant, I'd like to hear

14   from him as to the rationale, Your Honor.

15           THE COURT:  Okay.  Mr. Chapman?  Mr. Chapman?

16           MR. CHAPMAN:  I'm here.

17           THE COURT:  Okay.  Your letter didn't -- actually, I'm

18   not even sure if it was a letter.  It looked like a piece of

19   paper from an unrelated matter in the GM case, which the trust

20   considered to be a response.  Do you want to give me any reason

21   why you filed your claim late?

22           MR. CHAPMAN:  Okay, first of all (indiscernible) good

23   morning to you (indiscernible).

24           THE COURT:  Okay.  Thank you.  Ms. Greer, do you want

25   to reply?

09-50026-mg   Doc 11461   Filed 02/13/12   Entered 02/27/12 16:27:26   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 17 of 47

Page 17

1          MS. GREER:  Only to say, Your Honor, that we're

2     certainly sympathetic to Mr. Chapman's situation.  GM did not

3     have any knowledge of Mr. Chapman's claim prior to the

4     bankruptcy.  And so, he was also a situation of constructive

5     notice.

6          THE COURT:  Okay.

7          MS. GREER:  I did research each of these, and I can

8     give you the status of the notice that was given or not given

9     to them, depending on the facts.  But this is based on,

10    obviously, information known to GM at the time.

11         THE COURT:  Um-hum.  Okay.  Next one; Betty Dalton.

12         MS. DALTON:  I'm Betty -- Betty Dalton.  My case

13    number is 70180.  My claim number is -- I would like to explain

14    (indiscernible).

15         THE COURT:  Okay.  Stand by, Ms. Dalton.  Ms. Greer,

16    you speak to Ms. Dalton first, then Ms. Dalton's going to have

17    a chance to respond.

18         MS. GREER:  Yes, Your Honor.  In her papers, Your

19    Honor, Ms. Dalton raised two issues.  One is that she did not

20    receive sufficient notice because she lives in a rural area.

21    And the other is that she didn't know she had a claim until

22    2010 when she saw something on the television which indicated

23    to her that she might have a claim resulting from her late

24    husband's death.

25         The -- Your Honor, we stand by the cases; Adler,

GENERAL MOTORS CORPORATION, ET AL.

Page 18

1    Hamestron (ph.), and others which note that notice by

2    publication is sufficient as long as the notice is published in

3    national newspapers.  And otherwise, I think the notice given

4    by GM was reasonably calculated to reach all potential

5    claimants.  and certainly, under Lehman and similar cases, Ms.

6    Dalton had every opportunity to diligence any potential claims

7    resulting from her husband's accident, which occurred in 2007,

8    while prior to the bar date, Your Honor.

9           THE COURT:  Okay.  Ms. Dalton.

10          MS. DALTON:  (indiscernible)

11          THE COURT:  Ms. Dalton, it's your turn to speak.

12          MS. DALTON:  Okay.  Let me start by saying that I did

13   (indiscernible).

14          THE COURT:  Okay.

15          MS. DALTON:  (indiscernible)

16          THE COURT:  Okay, thank you.  Ms. --

17          MS. DALTON:  Thank you.

18          THE COURT:  -- Greer.

19          MS. GREER:  Your Honor, I'd like to say again that Ms.

20   Dalton has our sympathies.  We're here to apply the law and the

21   rules.  The correspondence that Ms. Dalton had with the trust

22   or -- was well after the bar date in 2010.  The accident, like

23   I said, occurred in 2007.  So while these circumstances are

24   awful and we certainly feel for Ms. Dalton and her family,

25   given the circumstances of the case and our fiduciary duty,

GENERAL MOTORS CORPORATION, ET AL.

1    Your Honor, we think they haven't been able to show an

2    excusable neglect here.

3              THE COURT:  Okay.  Ms. Greer, talk -- turn now to

4    Jesmer Evans.

5              MS. GREER:  Your Honor, this claim was filed post-

6    effective date, so it was filed over nineteen months after the

7    bar date in June of 2011.  Mr. Evans claims that the bar date

8    doesn't apply, but his papers don't indicate why that would be.

9    The best that I can tell it would be a general unsecured claim,

10   but it's really difficult to know what the claim is about.  So

11   the trust would submit that Mr. Evans just hasn't met his

12   burden of showing excusable neglect and that under these

13   circumstances the claim is so substantially late that it should

14   be disallowed.

15             THE COURT:  Okay.  Am I right that Mr. Evans still

16   isn't on the phone?  Mr. Evans?

17             COURT CALL:  He isn't on the line, Your Honor.

18             THE COURT:  Okay, thank you.  Ms. Greer, turn to the

19   Henderson family.

20             MS. GREER:  Yes, Your Honor.  This is a circumstance,

21   Your Honor, where the Hendersons had contact with GM prior to

22   the bankruptcy.  They did get actual notice of the bar date.

23   They did not file a proof of claim.  They did have a claim that

24   was registered with ECIS (ph.), which is of course why they got

25   actual notice of the bankruptcy case.  It is their position

GENERAL MOTORS CORPORATION, ET AL.

Page 20

1   that because they had the pre-petition contact with the debtor

2   that that should be sufficient, but I think the law is clear,

3   Your Honor, that given that they were given actual notice of

4   the bar date, had that information, they were required to file

5   a timely proof of claim.

6         THE COURT:  Okay.  I think when we took roll call

7   before the Hendersons didn't respond even though they signed up

8   to be on the call.  Court Call, are they on the line yet?

9         COURT CALL:  No, Your Honor.

10         THE COURT:  Okay, thank you.

11         MS. GREER:  And Your Honor, just to be clear, we

12   signed a number of people up after they had contacted us and

13   said they wanted to participate in the hearing.  And of course

14   the trust paid for the cost for the call and arranged it, so

15   I'm not sure the last we heard from them.  But we did have some

16   back and forth with them, and it was our understanding that

17   they were going to participate today.  So --

18         THE COURT:  All right.  Well, I'm going to rule on

19   those, but I want to give anybody who signed up for the call

20   the chance to be heard orally also.

21         MS. GREER:  Certainly, Your Honor.

22         THE COURT:  Okay.  Ms. Anastasia Stelmach on behalf of

23   Michael Stelmach.  Ms. Greer, you want to turn to that one,

24   please?

25         MS. GREER:  Sure, Your Honor.  Similar to the Evans

09-50026-mg    Doc 11461    Filed 02/13/12    Entered 02/27/12 16:27:26    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 21 of 47

Page 21

1    claim, this one was filed well after the effective date of the

2    plan, so this wasn't filed until 2011.  She did -- the

3    Stelmachs did receive notice -- at least Mr. Stelmach, Ms.

4    Stelmach's father did receive notice of the bar date along with

5    other notices of the bankruptcy filing.  And they did not file

6    a proof of cla -- timely proof of claim.

7            THE COURT:  Okay.  Ms. Stelmach?

8            MS. STELMACH:  Yes?

9            THE COURT:  Do you want to speak to me about this?

10           MS. STELMACH:  Yes, Your Honor.  The reason I didn't

11   file (indiscernible) -- excuse me, a year prior to the notices,

12   and I couldn't understand why he received anything with

13   (indiscernible).  And that's exactly what I did.

14           THE COURT:  Okay.  Thank you.  Anything further, Ms.

15   Stelmach, before I give Ms. Greer a chance to respond?

16           MS. STELMACH:  The only thing I can say is if it's

17   pertaining to an injury, my dad was injured (indiscernible)

18   when the car jumped the track.  I think it was prior to his

19   retirement (indiscernible).

20           THE COURT:  Okay.

21           MS. STELMACH:  (indiscernible)

22           THE COURT:  Thank you.

23           MS. STELMACH:  He had several ribs broken, and he

24   couldn't go back to work because he was -- at that time, he was

25   sixty-five.

09-50026-mg   Doc 11461   Filed 02/13/12   Entered 02/27/12 16:27:26   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 22 of 47

Page 22

1             THE COURT:  Okay.  Thank you.  Ms. Greer?

2             MS. GREER:  Nothing, Your Honor, unless you have any

3    questions.

4             THE COURT:  No, I don't have any further questions.

5             Court Call, your log shows that Steven Truxall had

6    signed up for the call.  But when I took roll before, I think I

7    heard that he wasn't on the line.  Is that still the case?

8             COURT CALL:  Yes, Your Honor.  Mr. Truxall is not

9    online.

10            THE COURT:  Okay, thank you.

11            COURT CALL:  You're welcome.

12            THE COURT:  Sudie Venable, Ms. Greer.

13            MS. VENABLE:  Yes, I'm on the line.

14            THE COURT:  Okay, stand by, Ms. Venable.  I'm going to

15   give Ms. Greer the first chance to be heard, and you're going

16   to be next.

17            MS. VENABLE:  Okay, thank you.

18            MS. GREER:  Your Honor, before I get to Ms. Venable,

19   would you like me to say about Mr. Truxall.  He was also an

20   actual notice post-effective date claim, just --

21            THE COURT:  I've --

22            MS. GREER:  -- in short.

23            THE COURT:  -- read the papers on --

24            MS. GREER:  Okay.

25            THE COURT:  -- Mr. Truxall, or his wife on Mr.

GENERAL MOTORS CORPORATION, ET AL.

Page 23

1    Truxall's behalf.  So move on to Ms. Venable, please.

2          MS. GREER:  Yes, Your Honor.  Okay.  Ms. Venable was a

3    situation where GM did not have knowledge of any potential

4    claim.  The -- we're not sure from the face of the claim when

5    the injury occurred, but certainly GM had no knowledge of it.

6    And therefore, it's a constructive notice situation.  Her claim

7    was filed on July 7th, 2010, related to injuries her son

8    sustained in an automobile accident.  Her reasons for filing

9    the claim late are preoccupation with other matters, which --

10   though extraordinarily sympathetic, and I've had discussions

11   with Ms. Venable to this effect, simply don't constitute

12   excusable neglect as a matter of law.

13         THE COURT:  Um-hum.  It wasn't clear to me as to

14   whether Ms. Venable got notice of the -- of bankruptcy and of

15   the bar date.

16         MS. GREER:  No, Your Honor.  With respect to Ms.

17   Venable, it's a constructive notice situation.  GM had no

18   knowledge of Ms. Venable's claim or her son's claim prior to

19   the bankruptcy or prior to the bar date.

20         THE COURT:  Okay.  Ms. Venable?

21         MS. VENABLE:  Yes?

22         THE COURT:  Can I hear your point of view, please?

23         MS. VENABLE:  Okay.  Thank you, Your Honor.  The

24   reason why I filed a claim is because I kept getting these

25   (indiscernible) recall notices.  And I didn't understand why

09-50026-mg    Doc 11461    Filed 02/13/12    Entered 02/27/12 16:27:26    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 24 of 47

Page 24

1    was I getting them because the car was so lost, and my son was

2    left paralyzed from neck down.  and I didn't know -- I didn't

3    know what to do, so I finally decided that I was going to get

4    in touch with the Motorization (sic) Company, just to see how

5    could they help him (indiscernible) in the condition that he's

6    in.

7            He is bedridden.  We (indiscernible) chair, but you

8    have to put him at the lift.  He can't use his hands.  He can't

9    use his feet.  He can't sit up (indiscernible).  So that was my

10   reason for getting in touch with the liquidation because I was

11   thinking that GM was considering trying to help us poor family

12   get things that he needed for him to, you know, to get around

13   in the house.  Someone has to feed him.  He can't go to the

14   bathroom.  You know, he don't have muscle enough to do anything

15   for himself.  So that was my reason for getting in touch with

16   the GM.

17           THE COURT:  Ms. Venable, when did you --

18           MS. VENABLE:  I have --

19           THE COURT:  I'm sorry, go ahead.

20           MS. VENABLE:  -- I have nothing more to say, but that

21   was the reason why I did get in touch.

22           THE COURT:  I have a couple of questions, Ms. Venable.

23           MS. VENABLE:  Yes.

24           THE COURT:  Do you have a lawyer?

25           MS. VENABLE:  No, I don't.

GENERAL MOTORS CORPORATION, ET AL.

1       THE COURT:  Um-hum.  When did you learn about GM's

2   bankruptcy?

3       MS. VENABLE:  Oh, it was after the accident of

4   February the 8th, 2009 (indiscernible) about June, I believe,

5   June or July before I could realize that I said to myself

6   someone's trying to tell me something.  All of these recalls is

7   coming, but they're too late.  The power steering went out with

8   him driving the car, and he couldn't control it.  He couldn't

9   get it back in the road, and so he went an embankment and lucky

10  that he's alive for God's sake.

11      THE COURT:  Okay, thank you.  Ms. Greer --

12      MS. VENABLE:  And I don't have nothing else to say,

13  but that was my reason for getting in touch, because I was

14  thought that GM was the -- was at least giving him something

15  for his pain and suffering.

16      THE COURT:  Okay, thank you.

17      MS. VENABLE:  That's all I have to say.

18      MS. GREER:  Nothing further, Your Honor.

19      THE COURT:  Okay.  Now, we're done with our specific

20  discussion of the eight claimants here, but I need to know a

21  couple of other things that may or may not be relevant.  And

22  I'm not deciding now whether or not they're legally relevant.

23  Ms. Greer, how many more situations do we have where people

24  filed late claims, where I'm going to need to rule on them?

25      MS. GREER:  It's -- this is the only group of pro se

GENERAL MOTORS CORPORATION, ET AL.

1     claimants, Your Honor, which is why we deal with them all

2     together, that have reasons similar to this.  I believe that's

3     the case.  There might be one other, or two others, but I think

4     that's pretty much the bulk of it.  After that, I think we have

5     about -- between five and ten additional claims which deal with

6     more complicated factual issues and otherwise, which will be

7     heard -- all hopefully prior to the end of June.

8             THE COURT:  And am I right that now more than two

9     years after the deadline -- after the bar date the new claims

10    have pretty much dried up?

11            MS. GREER:  Well, Your Honor, I filed a motion to that

12    effect, which Your Honor entered the order yesterday -- or on

13    Monday regarding the future claims.  And the reason that we

14    filed that is because we were still getting -- we are still

15    getting some claims trickling in, but I would definitely

16    characterize it as trickling.  A couple here and a couple

17    there, and we just wanted to make sure that we were sort of

18    stop the bleeding so to speak and cut off that process in a way

19    that was not only fair to creditors, but also -- to potential

20    claimants, but also to the other creditors of this estate that

21    did file timely claims.

22            THE COURT:  Okay.  Everybody stand by then.  Ms.

23    Greer, you can sit down at the counsel table.  The folks who

24    are on the line, I want you to stay on the line.  I'm going to

25    be taking a couple of minutes to be considering this.  You're

09-50026-mg    Doc 11461    Filed 02/13/12    Entered 02/27/12 16:27:26    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 27 of 47

Page 27

1    going to hear quiet, but stay on the line, please.  Okay,

2    folks?  Ms. Greer, just have a seat.

3         MS. GREER:  Thank you, Your Honor.

4    (Pause)

5         THE COURT:  Okay.  Folks, let me say at the outset

6    that I'm fully sensitive to the losses and hardships that have

7    been suffered by all GM creditors, but bankruptcy judges are

8    not free to make decisions based on their sympathy for those

9    hardships.  For many reasons, including fairness to other

10   creditors, bankruptcy judges must -- like me, must make their

11   decisions based on rules of law that come from statutes like

12   the laws that Congress enacts and precedents, which are

13   decisions by other courts that have considered similar issues.

14        Certain precedents are binding on us judges, including

15   decisions by the U.S. Supreme Court and the Second Circuit

16   Court of Appeals, which is the appellate court for this part of

17   the United States.  Under those precedents, decisions of the

18   type that I need to make today are within the discretion of the

19   bankruptcy judge.  But under -- when we exercise our

20   discretion, we can't do whatever we feel like.  Rules for

21   exercising our discretion have been laid down by the higher

22   courts, most significantly by the U.S. Supreme Court and by the

23   Second Circuit Court of Appeals.

24        And we, bankruptcy judges, are required to take those

25   precedents into account.  And when they're binding precedents,

GENERAL MOTORS CORPORATION, ET AL.

Page 28

1    we must do exactly what the higher courts have told us.  Based

2    on those precedents, I'm required to and do expunge four of the

3    claims and the remaining four are continued to get more facts.

4    Continued means adjourned.  And the following are the bases for

5    the exercise of my discretion in this regard:  one of the

6    precedents that's binding on me is a decision by the United

7    States Supreme Court in Pioneer Investment Services Company v.

8    Brunswick Associates, whose citation, which is where you can

9    find the case, is 507 U.S. 380.  It was decided in 1993.

10          As the Supreme Court told us in Pioneer, claims filed

11   after the deadline can sometimes be allowed but whether they

12   can or can't be allowed depends on whether the claimant, that's

13   the person or company filing the claim, has shown what's called

14   excusable neglect.  Well, it's all neglect.  The real issue is

15   whether it's excusable or not.  And in making that decision,

16   courts are required to consider four factors.

17          One:  the danger of prejudice to the debtor, which

18   case law has made clear is not just to the debtor, but to other

19   creditors, including the ones who filed on time.  Two:  the

20   length of the delay and its potential impact on judicial

21   proceedings.  Three:  the reason for the delay, including

22   whether it was within the reasonable control of the movant.

23   And four:  whether the movant acted in good faith.  And that's

24   in the Pioneer decision at page 395.

25          Now, the Second Circuit, which is the appellate court

GENERAL MOTORS CORPORATION, ET AL.

Page 29

1    in this part of the country, takes a hard line in applying the

2    Pioneer factors.  And it places the greatest weight, and it

3    focuses mainly on the third factor; the reason for the delay in

4    filing a proof of claim.  Of course, one thing you always need

5    to consider when you're considering the reason for the delay is

6    whether or not the claimant got notice of the need to file the

7    claim and of the deadline, or at least of the existence of the

8    bankruptcy itself.  And we're going to come back to it because

9    the factor of notice is one of the reasons that separates the

10   four that I'm required to disallow now from the four where I

11   need to get more facts.

12        I'm also going to want to get a little more briefing

13   on the matter of notice before I decide what to do on those.

14   The Supreme Court made it pretty clear, however -- in fact, it

15   made it totally clear that inadvertence, ignorance of the rules

16   or mistakes in construing the rules do not usually constitute

17   neglect that is excusable.  I'm reading again from Pioneer at

18   page 392.  And there is a decision in this district, and

19   although I'm not bound by the decisions of other bankruptcy

20   judges in this district I follow them unless they're

21   significantly wrong, and that's in the Lehman Brothers case,

22   whose citation, where you find it in the law books, is 433

23   B.R., Bankruptcy Reporter, at 126.

24        It's also clear that the claimant, that's the person

25   who's trying to recover the claim, has the burden of showing

1    excusable neglect.  That's the Enron case; 419 F.3d at 121, and

2    Andover Togs, a decision in this district; 231 Bankruptcy

3    Reporter at 549.  Applying the Pioneer factors, I assume for

4    the sake of discussion that all eight of the late filing

5    claimants acted in good faith.  I also find with respect to all

6    eight late filing claimants that their claims delude and delay

7    recoveries that would otherwise go to other creditors, and they

8    raise a serious issue that's been recognized in many other

9    cases.

10        If I allow these claims to be allowed, even though

11    they were late filed, that could open the flood gates and many,

12    many other late filing claimants will make the same request and

13    demand the same relief in this situation.  Now, in this case,

14    when it's so late in the case and the claims are, if I heard

15    the right word, down to a trickle, the flood gates concern is

16    not as big a concern as it would be in other cases.  But

17    nevertheless, it's something that judges always must keep in

18    mind.

19        With respect to the second factor, which is how much

20    the delay is, late filed claims present the most sympathetic

21    situation, where the claimant misses the deadline by only a few

22    hours or days.  But it becomes harder and harder to justify a

23    late filed claim as time goes on, or, putting it differently,

24    the longer the delay, the harder it is to justify allowing a

25    late claim to be filed.  Here, several of the delays are six

09-50026-mg   Doc 11461   Filed 02/13/12   Entered 02/27/12 16:27:26   Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 31 of 47

Page 31

1    months or more, and there are two of them of a year and a half

2    or more.  And I'll discuss those more specifically as we go on.

3         I focus principally on the third factor; the reason

4    for the delay, as the Second Circuit tells me to do.  Now,

5    taking the claims in increasing order of difficulty, Jesmer

6    Evans; he filed an unliquidated claim over eighteen months

7    after the bar date.  That's over a year and a half.  The only

8    excuse was an assertion without support that the bar date, that

9    the deadline doesn't apply.  But of course, the deadline

10   applies.  It applies to everybody, and no reasons were set

11   forth, nor could any reasons be set forth as to why it doesn't

12   apply.

13        Claimants can show why they should be excused, which

14   is the main thing we're talking about today, but nobody can say

15   that it doesn't apply to them in the first place.  The Evans

16   claim will be expunged.

17        The Hendersons, Monty and Lisa Henderson, filed a

18   10,000 dollar claim over six months after the bar date.  They

19   explained to me that they had filed a pre-bankruptcy claim with

20   old GM in August of 2008.  But that is very different than

21   filing a claim in the bankruptcy case.  They received actual

22   notice of the bar date, and the bar date notice made it clear

23   that they needed to file a claim if they wanted to recover.  So

24   with regret, that claim must be expunged.

25        Michael Stelmach or Anastasia Stelmach on Mr.

1    Stelmach's behalf:  Ms. Stelmach filed a claim on behalf of her

2    late father eighteen months after the bar date -- after the

3    deadline.  That is a very, very long time.  It's a very serious

4    delay.  More importantly, the undisputed facts reflect that

5    although Mr. Stelmach passed away in April of 2008 his daughter

6    received and viewed the notice.  Unfortunately, Ms. Stelmach's

7    statement that she was preoccupied with other legal matters and

8    that she didn't understand why her late father was receiving

9    bankruptcy notice -- notices simply isn't a satisfactory

10   explanation under the Pioneer case.

11          When people get notice, except in the most

12   extraordinary circumstances, they need to read them.  And when

13   I approve the form of a notice, I require that it state very,

14   very clearly how you need to respond.  So again, with regret,

15   that claim must be expunged.

16          Cheryl Truxall filed a claim nineteen months after the

17   bar date -- that's quite a bite more than a year and a half --

18   on behalf of her late husband, Stephan.  While it's undisputed

19   that Stephan died in August 2010, he received notice of the bar

20   date, which was sent out in 2009, much, much earlier.  And he

21   died many months after the deadline had already passed.  Ms.

22   Truxall's explanation that her claim should be permitted

23   because before her husband died she wasn't privy to any of the

24   notices he received regarding the bankruptcy doesn't account

25   for the fact that he himself had notice.  And there's no

Page 33

1    showing as to why he couldn't meet the deadline with respect to

2    his claim.  So that claim too must be expunged.  What Mr.

3    Truxall, Stephan, got is binding on both him and on his wife.

4    So again with regret, the Truxall claim must be expunged.

5         Now, turning to the claim of Alberta Bruster.  She is

6    the first of several people who failed to make the deadline and

7    who tell me that they didn't have notice of the deadline.  As

8    Ms. Greer, on behalf of the creditors' trust, which is called

9    the GUC Trust, properly observes there is a lot of law out

10   there that says that even if you don't get actual notice that

11   what is called constructive notice meets the requirements.

12   Constructive notice is notice that the law presumes that you

13   got even though you may not have seen it.  But the briefing of

14   the case law on constructive notice in the trust's objection is

15   thin.

16        And nobody has given me the latest in the law in this

17   case, and it's at least seemingly the case that some of the

18   creditors live in rural areas where their local newspapers

19   wouldn't include such a notice.  And if they have to get their

20   notice from Fox & Friends, I'm not confident that they're

21   getting the quality of information they might need.  I need

22   more facts, and I need a little more briefing on that.

23        And now let me talk about the people whose claims are

24   in that category.  Ms. Bruster, Alberta Bruster, filed a 11,000

25   dollar claim over nine months after the bar date.  She says

1    that her claim was late because she wasn't aware of her claim

2    or of the bankruptcy case until April 2010 when she received a

3    recall notice.  Though she may have noticed a notice of the

4    possibility of a claim from the time of the accident, the more

5    serious issue is her claim of lack of knowledge of the

6    bankruptcy case and of her need to file a claim.  In that case,

7    the GUC Trust relies on what the law calls constructive notice

8    because of its publication of notice in national newspapers

9    like the New York Times and the Wall Street Journal.

10           Ms. Bruster's situation is continued.  That means

11   adjourned.  That means neither expunged nor is her claim

12   granted or found to be timely pending an evidentiary hearing to

13   learn more facts, and also to give me a more complete briefing

14   on the present state of the law on constructive notice.

15           Betty Dalton filed a two and a half million claim four

16   months after the bar date with respect to an alleged 2007

17   accident, where her husband was fatally injured allegedly due

18   to airbag nondeployment.  She writes in her letter that her

19   claim was late because she didn't know she had a claim until

20   she watched a TV show in February 2010 that talked about crash

21   tests that included the vehicle involved.  She also contends

22   that she didn't receive notice of the bankruptcy because she

23   lives in a rural area.  That raises two issues; one harder than

24   the other.

25           Ms. Dalton's assertion that she didn't know that she

09-50026-mg    Doc 11461    Filed 02/13/12    Entered 02/27/12 16:27:26    Main Document
GENERAL MOTORS CORPORATION, ET AL.
Pg 35 of 47

Page 35

1    had a claim is very weak when the accident took place about two

2    years before the bankruptcy.  And if the airbags didn't deploy,

3    as she said, that would have been known right away.  But while

4    the assertion is very weak, it's better addressed on a more

5    extensive factual record.  More importantly, we have the issue

6    of whether she got notice and how I should treat constructive

7    notice, especially if she lives in a rural area and wouldn't or

8    couldn't be expected to read the New York Times or Wall Street

9    Journal.  So that one too is continued for an evidentiary

10   hearing; at which I will get more facts.

11            Lonnie Chapman's explanation for why he didn't file

12   was, quite candidly, very difficult for me to follow.  He

13   certainly didn't give me anything in writing that explain that.

14   But from what he said in his oral comments, it's possible that

15   he didn't get actual notice.  if that is true, then it has to

16   be considered in a way similar to the way that I'm going to

17   consider Ms. Bruster and Ms. Dalton.  If on the other hand, it

18   turns out that he did get notice, then he's going to be like

19   the others because he hasn't given me any other reason.  But

20   for the time being, that one is continued also.

21            Lastly, and I think this is the last one, but if I've

22   failed to cover anybody, please somebody tell me, Sudie Venable

23   filed her claim for 100,000 dollars and an additional 50,000 a

24   year for life seven months after the bar date saying that she

25   was preoccupied with caring for her son, who by her oral

Page 36

1    explanation appears to have been disabled as a consequence of

2    the accident, that she did not have time to follow up and that

3    she did not otherwise understand bankruptcy procedures.  the

4    real issue here is not so much how burdensome it might have

5    been to help out her son and take care of him, although I well

6    understand how burdensome or difficult or challenging that

7    might be, especially when the particular nature of his

8    disability was described to me, but it is more likely than not,

9    based on what she told me, even though I couldn't tell from the

10   written papers that this is another constructive notice case.

11        And I need to know what kind of notice she got, if

12   any, and how reasonable it might be that she would have gotten

13   notice living where she does and the like.  And I also need to

14   know under the law whether that matters, and whether it matters

15   when notice is given in the Wall Street Journal and the New

16   York Times and nobody in that time -- in that town reads the

17   New York Times or the Wall Street Journal.  So that one too is

18   continued.

19        Ms. Greer, for the GUC Trust, you are to settle an

20   order -- settling an order for those who aren't lawyers means

21   submitting to me a proposed order -- that disallows the four

22   claims and expunges the four claims that I said I was expunging

23   and says simply that for the reasons stated on the record the

24   claims are expunged.  The order should not deal with the other

25   four that are continued.  We're simply going to deal with them

1    on another day, and I'm so ordering the record, which means I'm

2    simply saying it on this recorded transcript with respect to

3    those that are constructive notice cases.

4         Okay.  Not by way of reargument, because I've ruled,

5    but does anybody have any questions on what I said or what's

6    happening next?  Ms. Greer?

7         MS. GREER:  Your Honor, only one question.  I'm happy

8    to brief the issues -- the constructive notice issues, and in

9    particular the issues as to whether the claimants should have

10   been -- or basically should -- there should be excusable

11   neglect because they did not have access to the papers in which

12   the notice was published, my question is does it make sense for

13   us to do that first, sort of put this in almost a third stage;

14   do that first, have the Court hear that question assuming that

15   it is as the -- all of these claimants have said; that they

16   didn't have knowledge of the bankruptcy and assuming that they

17   didn't have access to these newspapers, and then deal with that

18   issue first before going to an evidentiary hearing as to

19   whether they actually may have had knowledge or not had

20   knowledge or any of that.

21        I mean, does that make sense?  It's entirely up to

22   you.  I just wanted to raise that for your consideration.

23        THE COURT:  Do any of the other people on the phone

24   want to be heard with respect to that before I decide or answer

25   her question?

Page 38

```
 1              I hear no response.  No, I don't want to do it in
 2      three steps.  I -- this having already been step number one.
 3      You are to work out a time with the four people who are left
 4      for each one -- each side to give me evidence on the issues
 5      that I need additional evidence on.  And you will do a pre-
 6      hearing brief, pointing out what you want to point out on the
 7      constructive notice cases.  And you'll have to work out with
 8      those four people -- I recognize that they're not lawyers.
 9      Give them a chance to respond to your brief beforehand if any
10      of them wants to.
11              MS. GREER:  Understood, Your Honor.
12              THE COURT:  Okay.
13              MS. GREER:  We do have a couple of other -- actually,
14      one was supposed to be contested, but I don't see the claimant
15      in the courtroom, and a couple of other uncontested matters.
16              THE COURT:  Okay.  Stand by for a second.  Do any of
17      the folks who are on the phone have any questions before we
18      move on to the next matter?
19              UNIDENTIFIED SPEAKER:  No.  No, I do not.
20              UNIDENTIFIED SPEAKER:  No, sir.
21              THE COURT:  Okay.  Thank you very much, folks.
22              Okay, Ms. Greer, your other stuff.
23              MS. GREER:  Certainly, Your Honor.  Happy to take the
24      uncontested matters first, if that works.
25              THE COURT:  Sure.
```

GENERAL MOTORS CORPORATION, ET AL.

Page 39

1          MS. GREER:  Your Honor, today we have the 264th

2      omnibus objection, which is simply an objection to securities

3      claims.  Of the sixteen claims objected to in that objection,

4      all of those are going forward today.  We haven't received any

5      objections.

6          On the 265th omnibus objection, that's a reducing,

7      allowing and reclassifying certain property damage claims.  We

8      have adjourned one of those.  We withdrew the objection for

9      three, and thirty -- actually, twenty-nine of those are going

10     forward today.  And we will submit an order to Your Honor's

11     chambers, if that's okay.

12         THE COURT:  Okay.

13         MS. GREER:  We also have an uncontested motion filed

14     by MTech to deem their claim allowed under Section 502(a) and

15     Bankruptcy Rule 3001(f).  I was authorized by counsel for MTech

16     as well as by my co-counsel, Weil Gotshal, to submit up a --

17     submit a stipulation regarding the motion.  The MTech claims

18     arose from a lease rejection and some related claims.  These

19     were resolved pursuant to the stipulation, which provides for

20     an administrative claim as well as an allowed unsecured claim.

21     So I can submit that order unless Your Honor has any

22     substantive questions I can answer.

23         THE COURT:  No.  That'll be fine.

24         MS. GREER:  Okay.  The last matter, Your Honor, is

25     Erma Jean Buckley's (sic) claim.  This was a no liability

Page 40

1    objection filed by the GUC Trust.  Ms. -- shou -- is it okay

2    for me to go ahead?  I think Ms. Buckley is on the phone.

3            THE COURT:  Ms. Buckley, are you on the line?

4            COURT CALL:  No, Your Honor.  She is not on the line.

5            THE COURT:  She is not?

6            COURT CALL:  No, sir.

7            THE COURT:  Even though she had signed up?

8            MS. GREER:  Yeah -- and, Your Honor, I spoke to her

9    yesterday.  She said she was actually coming to the hearing,

10   so --

11           THE COURT:  Physically coming?

12           MS. GREER:  Yeah.  I think she's in New York, so I

13   think, yes, maybe she had a change of heart.

14           THE COURT:  All right.  Well, it was properly noticed,

15   right?

16           MS. GREER:  Most definitely, Your Honor.  And I've

17   spoken to her several times about the time and being clear as

18   far as when this was going forward and where.

19           THE COURT:  Okay.  Go ahead.

20           MS. GREER:  Your Honor, this is a 500,000 dollar

21   claim.  The proof of claim arises from the same exact same set

22   of facts as a litigation that Ms. Buckley commenced pre-

23   petition.  Your Honor went back and looked at the docket of

24   that litigation.  It was fully and finally resolved by jury

25   trial.  The jury issued a decision in favor -- a judgment in

Page 41

 1    favor GM.  Ms. Buckley exercised her right to appeal a

 2    rehearing, even sought a write of certiorari from the Supreme

 3    Court.  And all of those -- at all of those places she was

 4    denied.

 5            She is seeking sort of a second bite at the apple, so

 6    to speak.  I've explained to her and the -- that there is no

 7    claim, and I think her confusion arises out of -- somewhere

 8    along the way.  Summary judgment was denied for GM because it

 9    was found that there was an issue of disputed fact.  So --

10    then, the case of course went to trial, and a judgment was

11    entered in favor of GM.  So I think that is the source of her

12    confusion, but the bottom line is, Your Honor, it was fully and

13    finally resolved.  She exhausted all of her appeals prior to

14    the bankruptcy, and so her -- there's no basis for her claim.

15    It should be expunged.

16            THE COURT:  Yes.  You're plainly correct.  The matter

17    was fully litigated.  In fact, it was litigated far more than

18    many matters I've seen in my tenure on the bench.  The claim

19    will be expunged based on your apparent view that it may have

20    been an innocent mistake, and you're obviously not acting

21    for -- asking for sanctions.  I don't need to address that, but

22    for sure the claim is expunged.

23            MS. GREER:  Your Honor, thank you.  And I would

24    suggest given Ms. Buckley tends to be an active litigator, from

25    what I can tell in other courts, that perhaps if she does

Page 42

1    arrive to have this revisited that perhaps we can put something

2    in the order which says similar to other orders that we've done

3    that the trust does not need to respond unless Your Honor

4    directs us to.

5              THE COURT:  Yes.  You're authorized to do that.  If

6    you feel like you need to go a step farther and to ask for a

7    Martin-Trigona order you can do that.  But -- just a minute,

8    please.  But your request is a modest first step.

9              MS. GREER:  Thank you, Your Honor.

10             THE COURT:  Thank you.

11             Somebody said hello.  Did somebody want to speak to me

12   in the middle of this hearing?  Court Call, do you have any way

13   of telling who it was who said that?

14             COURT CALL:  Mr. Chapman.

15             MR. CHAPMAN:  Yes, I'm still here.

16             THE COURT:  Mr. Chapman, were you trying to say

17   something to me?

18             MR. CHAPMAN:  Yes.  I was trying to say

19   (indiscernible).

20             THE COURT:  I'm sorry, sir?

21             MR. CHAPMAN:  (indiscernible)

22             THE COURT:  If what you were asking me, and I must say

23   that you were a little hard to follow, is do you need to hang

24   on, the answer is no, you don't.  You're excused.

25             MR. CHAPMAN:  (indiscernible)

GENERAL MOTORS CORPORATION, ET AL.

1          THE COURT:  Thank you.  All right.  then, we're

2     adjourned.  Thank you very much.

3          MS. GREER:  Thank you.

4       (Whereupon these proceedings were concluded at 11:06 AM)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 44

1

2                              I N D E X

3

4                              RULINGS

5                                              Page       Line

6    245th Omnibus Objection to Claims and Motion   31        16

7    Requesting Enforcement of Bar Date Orders

8    Evans Claim #71170 Granted

9

10   246th Omnibus Objection to Claims Erma Jean   41        19

11   Buckley - Claim #66268 Granted

12

13   Debtors' Eighty-Ninth Omnibus Objection to   31        24

14   Claims and Motion Requesting Enforcement of

15   Bar Date Orders (Late-Filed Claims)

16   Henderson Claim #70303 Granted

17

18   245th Omnibus Objection to Claims and Motion   32        15

19   Requesting Enforcement of Bar Date Orders

20   Stelmach Claim #71140

21   Granted

22

23   245th Omnibus Objection to Claims and Motion   33        2

24   Requesting Enforcement of Bar Date Orders

25   Truxall Claim #71193 Granted

Page 45

```
 1

 2    253rd Omnibus Objection to Claim(s) Number      34        10

 3    Filed by Barry N. Seidel on Behalf of Motors

 4    Liquidation Company GUC Trust Bruster Claim

 5    #70400 Denied

 6

 7    Debtors' 165th Omnibus Claim to Claims and      35        10

 8    Motion Requesting Enforcement of Bar Date

 9    Orders (Late-Filed Claims) Dalton Claim

10    #70180 Denied

11

12    253rd Omnibus Objection to Claim(s) Number      35        20

13    Filed by Barry N. Seidel on Behalf of Motors

14    Liquidation Company GUC Trust Chapman Claim

15    #69688 Denied

16

17    Debtors' 165th Omnibus Claim to Claims and      36        18

18    Motion Requesting Enforcement of Bar Date

19    Orders (Late-Filed Claims) Venable Claim

20    #70342 Denied

21

22    264th Omnibus Objection to Claim(s) and 265th   39        12

23    Omnibus Objection to Claim(s) Granted

24

25
```

Page 46

1

2    Motion by MTech Associates LLC to Deem Claim    39        23

3    Allowed Granted

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                              C E R T I F I C A T I O N

3

4     I, Aliza Chodoff, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7

8

9

10    _____

11    ALIZA CHODOFF

12    AAERT Certified Electronic Transcriber CET**D-634

13

14    Veritext

15    200 Old Country Road

16    Suite 580

17    Mineola, NY 11501

18

19    Date:  February 12, 2012

20

21

22

23

24

25