**HEARING DATE AND TIME: March 6, 2012 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
  Company GUC Trust

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                                   :    **Chapter 11 Case No.**
                                                            :
**MOTORS LIQUIDATION COMPANY**, *et al.*,                   :    **09-50026 (REG)**
    f/k/a General Motors Corp., *et al.*                    :
                                                            :
                              Debtors.                      :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY GUC TRUST'S
REPLY TO RESPONSE OF LORIN W. TATE OPPOSING
DEBTORS' OBJECTION TO ADMINISTRATIVE PROOF OF CLAIM NO. 70908**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the

above-captioned debtors (collectively, the "**Debtors**")[1] in connection with the *Debtors' Second*

*Amended Joint Chapter 11 Plan* dated March 18, 2011, respectfully represents:

1.  The GUC Trust submits this reply to the response of Lorin W. Tate

("**Tate**") to the Debtors' objection (the "**Objection**") to Tate's administrative expense claim.

---

[1] The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc. ("**REALM**"), and Environmental Corporate Remediation Company, Inc. ("**ENCORE**").

Tate filed a proof of claim in the amount of $2,142,343[2] plus 4% per annum interest (the "**Tate Claim**"), which he alleges is an administrative expense claim for finders' fees tied to recovering assets belonging to Motors Liquidation Corporation (f/k/a General Motors Corporation) ("**MLC**" or "**GM**") during MLC's chapter 11 case, pursuant to the terms of that certain *Recovery Agreement*, dated August 30, 2007, between Tate and MLC (the "**MLC Recovery Agreement**"). The Debtors objected to the Tate Claim because Tate did not provide any evidence that (a) he recovered any assets on behalf of MLC, (b) MLC received such assets, and (c) MLC benefited from such assets during the chapter 11 case.

2. There are two primary issues before the Court: (a) whether the MLC Recovery Agreement provided for finders' fees for recovering assets owned by entities other than MLC, such as General Motors Acceptance Corp. ("**GMAC**") (n/k/a Ally Financial Inc.), and (b) whether MLC actually received such assets in accordance with the terms of the Recovery Agreement during the chapter 11 case. The first issue is primarily an issue of contract interpretation and should be a threshold issue with respect to reconciliation of the Tate Claim given the relative insignificance of the amounts MLC allegedly recovered compared to the amounts the non-debtors allegedly recovered. Of the $27.6 million in allegedly recoverable assets, only approximately $67,000 are identified as belonging to MLC. If the Court finds that the MLC Recovery Agreement only governs assets belonging to MLC, Tate's 8% fee becomes at most a $5,360 issue as opposed to a potential $2.1 million issue. Accordingly, the GUC Trust requests that the Court first consider whether the MLC Recovery Agreement grants Tate finders' fees for entities other than MLC. This would permit the GUC Trust to better evaluate whether to engage in an evidentiary hearing or simply allow the claim at $5,360.

---

[2] Tate originally alleges a claim of $2.2 million. In paragraph three of Tate's response, Tate concedes the Debtors have paid him a total of $65,656.44, reducing his claim to a balance of $2,142,343.

3. In support of this reply, the GUC Trust submits the *Declaration of David Head, Managing Director of AlixPartners* (the "**Head Declaration**").

## Factual Background

### The MLC Recovery Agreement

4. The MLC Recovery Agreement is an agreement between MLC and Tate. It does not reference any other legal entity or affiliate. Instead, the MLC Recovery Agreement provided that "[Tate] has[] identified Assets, **as contained on the attached Schedule A (the "Assets") that GM is entitled to claim.**" A true and correct copy of the Recovery Agreement, including Schedule A, is annexed as Exhibit "A" to the Head Declaration, filed concurrently herewith. Schedule A specifically identifies "Assets," as the term is used throughout the MLC Recovery Agreement, as assets involving "General Motors Corporation" as the payee. Schedule A does not list any other legal entities as payee or otherwise include any other legal entities in the definition of Assets.

5. Despite the plain language of the MLC Recovery Agreement, Tate continues to insist that the MLC Recovery Agreement governs assets recovered on behalf of non-MLC entities, including GMAC. In direct contradiction to such assertion, Tate filed a claim with the U.S. Bankruptcy Court for the Northern District of Florida in the bankruptcy case of Arthur Howard Earl, seeking to recover assets on behalf of GMAC. (*See* Head Declaration, Exhibit "B"). In an exhibit to his filing, Tate submits a power of attorney referencing "the Recovery Agreement of GMAC LLC" (the "**GMAC Recovery Agreement**"). The GUC Trust submits that, to the extent Tate recovered assets from GMAC, a separate and distinct agreement with GMAC must exist that governs any fees in connection therewith.

6. The MLC Recovery Agreement itself does not refer to payment of any amount should any entity other than MLC receive funds. The MLC Recovery Agreement, which expired by its own terms on October 15, 2009, provides in pertinent part:

> In consideration of the services described above, GM agrees to pay [Tate] a fee as set forth next to the Asset value per each item listed on Schedule A, **only when such amounts are actually received by GM**. . . . Both [p]arties agree that [Tate] is not entitled to any advance fee but **will only be paid the above fee contingent upon GM's receipt of said funds.**

(Recovery Agreement ¶ 3) (emphasis supplied).

### Debtors' Objection to Tate's Proof of Claim

7. The Debtors objected to the Tate Claim because Tate could not demonstrate that his actions benefited the Debtors' estates. To support his proof of claim,[3] Tate attached a list of government custodians from whom he allegedly sought to recover assets on behalf of MLC. Tate also attached a list of thousands of recoverable assets ("**Attachment 3**"). Tate, however, provides no documentary evidence that he filed or asserted claims with any governmental custodians or sought to recover the assets on Attachment 3. A review of the Debtors' books and records has not uncovered any payment received on account of these assets.

8. As described above, the vast majority of assets listed in Attachment 3 do not belong to MLC or any debtor entity. Based upon the GUC Trust's review of Attachment 3, the GUC Trust estimates only approximately forty-seven groups of line items—totaling only approximately $67,000—identify MLC or a name MLC previously operated under as owner. Further, certain entries in Attachment 3 contain the dates funds were received and such dates predate the effective date of the MLC Recovery Agreement and the Debtors' chapter 11 cases, further reducing the maximum potential recoveries during MLC's chapter 11 case. In many

---

[3] A copy of the Tate Claim is annexed to the Objection as Exhibit "A".

instances, Attachment 3 only identifies a name and/or an address and provides no amount that the GUC Trust may reconcile against its books and records.

9. In his response to the Objection, Tate alleges approximately $27.6 million worth of assets are no longer listed on the government custodians' databases and, accordingly, MLC must have received payment. (Resp. ¶¶ 2-3). Tate does not identify among the thousands of line items in Attachment 3: (a) which assets are no longer listed on the various databases; (b) which databases the GUC Trust should search to verify the Tate Claim; and (c) whether those assets actually belonged to any of the Debtors.

10. Instead, Tate states the GUC Trust should independently identify whether an asset remains listed and reconcile such assets against its books and records. As set forth in the Head Declaration, the GUC Trust attempted to do so with respect to assets designated as belonging to MLC. Tate, however, insists on a reconciliation of all listed items, including those assets not even designated as belonging to MLC. Such efforts would entail the potential expenditure of significant estate resources to reconcile thousands of line items. A review of MLC's records since the closing of the sale of substantially all its assets was fairly straightforward and as previously indicated, did not uncover any relevant receipts. A review of the Debtors' books and records from the Petition Date on June 1, 2009 to closing of the sale, however, would be a major undertaking that would not be warranted until the Debtors have a better understanding of what is at stake.

### The Recovery Agreement Did Not Provide for Payment of Fees for Assets Not Belonging to MLC

11. Tate primarily argues that because assets listed on Attachment 3 to his proof of claim are no longer listed on various governmental databases, the logical inference is he must have successfully recovered those assets. Before the Court rules on this issue, however, the

GUC Trust submits that a predicate issue of contract interpretation is before the Court, i.e., whether the parties intended the MLC Recovery Agreement to provide for finders' fees for assets Tate recovered on behalf of entities other than MLC, such as GMAC.

12.     If the inquiry involves contract interpretation, the initial focus should be the language of the contract. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 386 (2d Cir. 2007). Contracts should be construed according to the parties' intent and "[t]he best evidence of what parties to a written agreement intend is what they say in their writing." *Lone Star Air Partners, LLC v. Delta Air Lines, Inc.* (*In re Delta Air Lines, Inc.*), No. 08-2825-bk, 2009 WL 577588, at **3 (2d. Cir. Mar. 5, 2009) (internal quotation marks and citations omitted). Contract language is unambiguous if the language used "has a definite and precise meaning, unattended by danger of misconception in the purport of the contract itself and concerning which there is no reasonable basis for a difference in opinion." *Id.* (Internal quotation marks and citations omitted).

13.     Despite the plain language of the MLC Recovery Agreement, Tate states he entered into a contract involving MLC and GMAC, which he broadly defines in his response as "GM." Contrary to Tate's argument, however, the only parties to the MLC Recovery Agreement are Tate and MLC.[4] As noted above and contrary to Tate's allegations, Schedule A of the MLC Recovery Agreement identified only assets where "General Motors Corporation" is the payee. Therefore, there is no basis for the MLC Recovery Agreement to govern any assets allegedly recovered on behalf of GMAC. A more logical conclusion is that the GMAC Recovery Agreement referenced in Tate's own court filings governs GMAC assets.

---

[4] The first sentence of the Recovery Agreement provides: "This Recovery Agreement . . . is entered into on this 30th day of August, 2007, by and between **Lorin W. Tate** . . . and General Motors Corporation, ("GM") a Delaware corporation, (together, the "Parties").

14. Pursuant to the terms of the Recovery Agreement, Tate is only entitled to payment for assets recovered on behalf of GM. If this legal premise is accepted by this Court, the GUC Trust's maximum potential liability would then be limited by agreement to the approximate amount of $5,360.

### Tate's Assumption is Incorrect That Assets No Longer Listed Must Have Been Received by MLC or the GUC Trust

15. Tate's assumption that "because an asset is no longer listed, the GUC Trust or MLC must have received the asset" is incorrect. Tate argues that Attachment 3 to the Tate Claim is a list of assets in government databases over which Tate submitted a claim on behalf of MLC. Tate reasons that, because such assets are no longer listed on such databases, it therefore follows that MLC or the GUC Trust received the assets.

16. After reviewing Attachment 3, the GUC Trust was able to only identify approximately forty-seven groups of entries listing "General Motors," "GM," or "GMC". Although Tate's proof of claim does not identify the corresponding government custodian database upon which he relied for each line item, the GUC Trust attempted to identify and search government databases to determine if any allegedly recovered assets remain listed. (If the assets remain listed, then Tate cannot properly claim to have recovered them for the benefit of MLC.) MLC found that many of the assets were still listed.

17. Moreover, there are many possible alternative explanations why the government databases no longer reflect an asset that was formerly listed. One explanation is certain funds may have been escheated to the various state jurisdictions after remaining unclaimed for a prolonged period of time in accordance with the law of the applicable jurisdictions. Therefore, MLC would not have received and benefited from those escheated assets. Another explanation is a subsequent reconciliation by the government custodians may

have also resulted in a change in the records. Again, MLC would not have received and benefited from any assets as a result of the record-reconciliation.

18. No definitive basis exists to conclude that simply because a recoverable asset is no longer listed, MLC or the GUC Trust received such asset (a) as a result of Tate's services, and (b) within the appropriate timeframe as required under the Recovery Agreement.[5]

### The GUC Trust Has Performed the Necessary Diligence to Determine the Debtors' Lack of Actual Receipt

19. Tate concedes receipt by MLC is a precondition to establishing the validity of his claim. (Resp. ¶ 4). The GUC Trust submits that the burden of proving the validity of his claim, including all factual predicates (e.g., actual receipt by MLC) rests with Tate. *See In re Rockefeller Ctr. Props*, 241 B.R. 804, 817 (Bankr. S.D.N.Y. 1999) ("If the objecting party negates the prima facie validity of a proof of claim, the burden shifts back to the claimant who then bears the ultimate burden of persuasion."). To date, Tate proffers no evidence directly establishing such facts. In an abundance of caution and in an exercise of good faith, however, the GUC Trust also diligently reviewed its books and records to determine whether the GUC Trust or MLC actually received any assets allegedly recovered through Tate's services.

20. As set forth in the Head Declaration, the GUC Trust has taken several steps to determine whether MLC or the GUC Trust actually received the allegedly recovered amounts. First, MLC reviewed its database of contracts to determine whether MLC assumed the Recovery Agreement. It did not. Second, MLC reviewed line-by-line Attachment 3 to identify assets listed under MLC or a name MLC previously operated under as owner and compared such

---

[5] In the response, Tate mistakenly notes that the Recovery Agreement was "repeatedly extended through October 15, 2010." Attachment 2 of the Tate Claim contains the agreement governing the extension of the Recovery Agreement and, when read together with the Recovery Agreement, provided that the Recovery Agreement terminates "upon the earlier of[] (i) payment of the fees referenced in Section 3 of this Agreement; or October 15, 2009."

line items against MLC's own books and records. MLC found no matching entries for the period after July 10, 2009. For the period from the commencement date of these chapter 11 cases (i.e., June 1, 2009) to July 10, 2009, General Motors Company ("**New GM**") is now the custodian of MLC's books and records. The GUC Trust conferred with New GM, which informed the GUC Trust that it was unaware of any receipts from the governmental custodians attributable to Tate for that period. Finally, MLC independently examined its own books and records for the post July 10, 2009 period to identify any receivables from the government custodians Tate listed. Although MLC did receive funds from certain custodians, all such receipts were in the ordinary course of business.

21.    The GUC Trust submits it has exercised the necessary diligence and expended substantial effort to demonstrate that MLC did not receive any assets Tate allegedly recovered. Therefore, there is no basis for the allowance of an administrative claim.

**Conclusion**

WHEREFORE, for the reasons set forth above, the GUC Trust respectfully requests the Court consider the fundamental issue whether the Recovery Agreement required MLC to compensate Tate for assets allegedly recovered but owned by entities other than MLC. If the Court finds that the Recovery Agreement did not require MLC to compensate Tate for assets recovered on behalf of non-debtor entities, the GUC Trust respectfully requests the Court find that no fee is owing as MLC did not actually receive such assets and the benefits thereof during the Debtors' chapter 11 cases and in accordance with the terms of the Recovery Agreement. The GUC Trust therefore requests that the Court disallow and expunge the Tate Claim and grant such other and further relief as is just.

Dated: New York, New York
March 1, 2012

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
 Company GUC Trust