Hearing Date and Time: March 29, 2012 at 9:30 a.m. (ET)<br>
Objection Deadline: March 22, 2012

PREET BHARARA
United States Attorney for the
Southern District of New York
DAVID S. JONES
NATALIE N. KUEHLER
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No.:  (212) 637-2741
Fax No.:  (212) 637-2750

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY *et al.*, | Case No. 09-50026 (REG) |
| f/k/a GENERAL MOTORS CORP. *et al.*, | Jointly Administered |
| Debtors. | |

**NOTICE OF HEARING ON THE UNITED STATES OF AMERICA'S**
**MOTION TO APPROVE ENVIRONMENTAL SETTLEMENT AGREEMENT**

PLEASE TAKE NOTICE that upon the annexed Memorandum of Law in Support of Motion to Approve Settlement Agreement Between the Debtors and the United States, dated March 7, 2012, of the United States of America (the "**United States**"), a hearing (the "**Hearing**") to consider the Motion will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **March 29, 2012 at 9:30 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the GUC Trust, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors, LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Motion, the United States may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated:    New York, New York
            March 7, 2012

                        PREET BHARARA
                        United States Attorney for the
                        Southern District of New York
                        Attorney for the United States of America

            By:    */s/ Natalie N. Kuehler*
                        DAVID S. JONES
                        NATALIE N. KUEHLER
                        Assistant United States Attorneys
                        86 Chambers Street, 3rd Floor
                        New York, New York 10007
                        Telephone: (212) 637-2541
                        Facsimile: (212) 637-2750
                        Email: natalie.kuehler@usdoj.gov

                        ALAN S. TENENBAUM
                        National Bankruptcy Coordinator
                        PATRICK CASEY
                        Senior Counsel
                        Environment and Natural Resources Division
                        Environmental Enforcement Section
                        U.S. Department of Justice

Hearing Date and Time: March 29, 2012 at 9:30 a.m. (ET)
Objection Deadline: March 22, 2012

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY *et al.*, | Case No. 09-50026 (REG) |
| f/k/a GENERAL MOTORS CORP. *et al.*, | Jointly Administered |
| Debtors. | |

**UNITED STATES' MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO APPROVE SETTLEMENT AGREEMENT
BETWEEN THE DEBTORS AND THE UNITED STATES OF AMERICA**

PREET BHARARA
United States Attorney for the
Southern District of New York
DAVID S. JONES
NATALIE N. KUEHLER
Assistant United States Attorneys
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel. No.: (212) 637-2741
Fax No.: (212) 637-2750

*Counsel for the United States*

**PRELIMINARY STATEMENT**

The United States of America (the "**United States**"), on behalf of the United States Environmental Protection Agency ("**EPA**"), respectfully submits this memorandum of law in support of its Motion for an Order Approving the Consent Decree and Settlement Agreement between the United States of America and the Debtors (the "**Non-Owned Site Settlement Agreement**" or "**Settlement Agreement**"). The proposed Settlement Agreement resolves environmental liabilities of the Debtors asserted by the United States on behalf of EPA, under the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended ("**CERCLA**"), 42 U.S.C. §§ 9601 – 9675, for response costs in connection with three hazardous waste sites and facilities in New Jersey, Maryland, and Missouri (the "**Settled Non-Owned Sites**"). Under the Settlement Agreement, the United States, on behalf of EPA, will receive an allowed general unsecured claim in the total amount of $20,902,000. In addition, the United States, on behalf of EPA, will receive work up to the amount of $2,896,334 million in accordance with bond requirements. The proposed Settlement Agreement is annexed as Exhibit 1.

Pursuant to federal environmental laws, public notice of the proposed Settlement Agreement was published in the Federal Register, 77 Fed. Reg. 23 at 5569 (February 3, 2012), (the "**Federal Register Notice**"). The United States received no comments concerning the Settlement Agreement.

Under prior orders of this Court, the Motors Liquidation GUC Trust and the Debtors' estates are authorized to enter this agreement without obtaining the Court's approval under Bankruptcy Rule 9019, because the resolved claim amount is less than $50 million. *See In re Motors Liquidation Co.*, Ch. 11 Case No. 09-50026 (REG), Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of

the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan, dated March 29, 2011, Docket No. 9941 (Bankr. S.D.N.Y.). The Court's approval is required, however, under federal environmental laws. Such approval is warranted here. As explained more fully below, the United States has determined that the proposed Settlement Agreement is fair, reasonable and consistent with environmental law. The settlement was reached after lengthy negotiation of its terms among sophisticated counsel. In addition, the parties weighed the merits, costs, risks and delays that litigation would entail against the value of settlement.

The function of the Court in reviewing motions to approve environmental settlement agreements is not to substitute its judgment for that of the parties to the proposed Settlement Agreement but to confirm that the terms of the proposed Settlement Agreement are "fair and adequate and are not unlawful, unreasonable, or against public policy." *United States v. Hooker Chem. & Plastics Corp.*, 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982), *aff'd*, 749 F.2d 968 (2d Cir. 1984). The Court should also confirm that the proposed Settlement Agreement is consistent with CERCLA's goals. *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1426 (6th Cir. 1991). Finally, in conducting its review, the Court should be deferential to the United States' determination that the settlement is in the public interest. *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). Accordingly, for the reasons set forth herein, the United States respectfully requests that this Court approve and enter the proposed Non-Owned Site Settlement Agreement lodged with this Court on January 30, 2012.

# I. GENERAL STATUTORY/FACTUAL BACKGROUND

## A. CERCLA's Statutory Background

The environmental liabilities that are resolved by the Settlement Agreement derive from a single federal statute, CERCLA. CERCLA was enacted to provide a framework for cleaning up the nation's worst hazardous waste sites. The primary goal of CERCLA is to protect and preserve the environment and public health from the effects of releases or threatened releases of hazardous substances. *See* 42 U.S.C. § 9601(24); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1040 n.7 (2d Cir. 1985); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1386-87 (5th Cir. 1989); *O'Neil v. Picillo*, 682 F. Supp. 706, 726 (D.R.I. 1988), *aff'd*, 883 F.2d 176 (1st Cir. 1989); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986).

The Hazardous Substance Superfund, commonly known as the Superfund, was established pursuant to 26 U.S.C. § 9507 to finance federal response actions undertaken pursuant to section 104(a) of CERCLA, 42 U.S.C. § 9604(a). Although CERCLA authorizes cleanup of sites contaminated with hazardous substances using money provided by the Superfund, the Superfund is a limited source of funding intended for use only when responsible parties are not available to conduct or finance a site's cleanup. *See* S. Rep. No. 96-848, 96th Cong., 2d Sess. at 17-18 (1980), *reprinted in* 1 Sen. Comm. on Env't & Pub. Works, Legislative History of CERCLA 305, 324-25 (1983). The Superfund cannot finance cleanup of all of the many contaminated sites nationwide, so replenishment of expended Superfund monies is crucial to the continuing availability of funds for future cleanups. Thus, the United States is tasked with seeking to ensure that Potentially Responsible Parties ("**PRPs**") perform site cleanups, or, when Superfund monies are expended by the federal government in response to a release or threatened

3

release of hazardous substances, that those monies are recovered from PRPs through the liability scheme set forth in section 107 of CERCLA. *See B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1197-98 (2d Cir. 1992) (one statutory purpose of CERCLA is to hold responsible parties liable for the costs of the cleanup).

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), permits the United States to recover its costs of responding to releases of hazardous substances from PRPs. Pursuant to section 107(a), PRPs include the owners and operators of Superfund sites at the time of the disposal of hazardous substances at the sites, the current owners and operators of Superfund sites, as well as the generators and transporters of hazardous substances sent to Superfund sites. *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 722 (2d Cir. 1993) (describing potential liability for generating hazardous wastes found at a Superfund site); *O'Neil*, 883 F.2d at 178 (distinguishing waste generators from waste transporters); *United States v. Monsanto*, 858 F.2d 160, 168-171 (4th Cir. 1988) (laying out the distinction between owner liability and generator liability).

Sections 104(a) and (b) of CERCLA, 42 U.S.C. § 9604(a)-(b), authorize EPA to use Superfund monies to investigate the nature and extent of hazardous substance releases from contaminated sites and to clean up those sites. Moreover, EPA may also issue unilateral administrative orders to PRPs that require them to clean up sites, may seek injunctive relief through a civil action to secure such relief, or may seek to reach agreements with PRPs through which one or more PRPs agree to perform the necessary cleanup of sites. *See* 42 U.S.C. §§ 9604, 9606, and 9622.

Having created the liability system and enforcement tools to allow EPA to pursue responsible parties for Superfund cleanups, Congress expressed a strong preference that the

4

United States settle with responsible parties in order to avoid spending resources on litigation rather than on cleanup. 42 U.S.C. § 9622(a).[1] CERCLA encourages settlements, *inter alia*, by providing parties who settle with the United States protection from contribution claims for matters addressed in the settlement. 42 U.S.C. § 9613(f)(2). This provision was designed to provide settling parties "with a measure of finality in return for their willingness to settle."[2]

**B.    Procedural Background**

On June 1, 2009, General Motors Corp. ("**Old GM**") and three wholly-owned direct or indirect subsidiaries (collectively the "**Debtors**") filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, and on October 9, 2009, REALM and ENCORE each also filed voluntary chapter 11 petitions. On November 28, 2009, the United States timely filed proof of claim No. 64064, asserting environmental liabilities against the Debtors (the "**U.S. Proof of Claim**"). Most of the environmental liabilities asserted in the U.S. Proof of Claim have been resolved through prior settlement agreements, and a revised proof of claim against the Debtors was filed on April 8, 2011 (the "**Second U.S. Proof of Claim**"). This Settlement Agreement resolves the Debtors' environmental liabilities at three of the remaining sites: the Diamond Alkali Site in New Jersey (the "**Diamond Alkali Site**"), the Kane & Lombard Street Drum Superfund Site in Maryland (the "**Kane & Lombard Site**"), and the Hayford Bridge Road Groundwater Superfund Site in Missouri (the "**Hayford Bridge Site**").

---

[1]    *See also In re Cuyahoga Equip.Corp.*, 980 F.2d 110 (2d Cir. 1992) (citing *City of New York v. Exxon Corp.*, 697 F. Supp. 677, 693 (S.D.N.Y. 1988)); *United States v. DiBiase*, 45 F.3d 541, 545-46 (1st Cir. 1995); *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1184 (3d Cir. 1994); *Akzo Coatings*, 949 F.2d at 1436; *Cannons Eng'g*, 899 F.2d at 92; H.R. Rep. No. 99-253, pt. 1, at 80 (1985), *reprinted in* 1986 U.S.C.C.A.N. 2862.

[2]    *Cannons Eng'g*, 899 F.2d at 92; *see also United Techs Corp. v. Browning-Ferris Indus., Inc.*, 33 F.3d 96, 103 (1st Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995); H.R. Rep. No. 99-253, pt. 1, at 80 (1985), *reprinted in* 1986 U.S. C.C.A.N. 2862.

5

The United States and Debtors engaged in intensive, arms'-length negotiations concerning the environmental liabilities at issue in the Settlement Agreement, assisted by retained environmental and economic consultants with expertise in environmental remediation issues. The parties reviewed and debated the significance of, among other things, available technical data and environmental and technical studies at the relevant sites, as well as other relevant literature and studies that shed light on issues raised at various sites. Negotiations involved repeated in-person meetings and many telephone conferences spanning several months. Ultimately, the parties concluded that the negotiated resolution represented a reasonable compromise of the parties' respective positions and the asserted strengths and weaknesses of EPA's claims at each site. The parties then negotiated the precise wording of the Settlement Agreement itself.

On January 30, 2012, the United States lodged the Settlement Agreement with this Court, and the proposed settlement was subject to a 30-day public comment period following the February 3, 2012, publication of notice of the Settlement Agreement in the *Federal Register*. *See* 77 Fed. Reg. 23 (Feb. 3, 2012). The public comment period concluded on March 5, 2012. No comments were received.

**C.    The Settlement Agreement[3]**

    1.    Allowed General Unsecured Claims

The Non-Owned Site Settlement Agreement provides that the United States, on behalf of EPA, will receive an allowed general unsecured claim totaling $20,902,000 to resolve Debtors'

---

[3] This memorandum of law contains an abbreviated summary of the terms and provisions of the Settlement Agreement. If there is any conflict between the description of the settlement contained in this memorandum and the terms and provisions of the Settlement Agreement, the terms and provisions of the Settlement Agreement are controlling.

liabilities for contamination at the Diamond Alkali and Hayford Bridge Sites. The amount of the allowed claim for contamination at each site was determined, for settlement purposes, by taking into account: (1) estimated total past and future response costs; (2) the Debtors' estimated percentage allocation or fair share of liability for the site; and (3) litigation considerations. Based on these considerations, the United States will receive an allowed general unsecured claim of $19,500,000 for the Diamond Alkali Site, and $1,402,000 for the Hayford Bridge Site. In addition, the United States, on behalf of EPA, will receive work up to the amount of $448,000 to address contamination at the Hayford Bridge Site and $2,448,334 at the Kane & Lombard Site in accordance with respective bond requirements at each of these sites.

The Settlement Agreement further provides that the Debtors may reduce the distribution reserve amount to be used by the GUC Trust pursuant to Article VII of the Plan for the remaining unresolved general unsecured claims against Debtors asserted in the Second U.S. Proof of Claim to no less than $200 million.

2.      Environmental Claims Not Resolved by the Agreements

EPA reserves all rights against Debtors' estates and the GUC Trust with respect to all matters not specifically settled by the Non-Owned Site Settlement Agreement, including (i) all rights with respect to any site that is not a Settled Non-Owned Site; (ii) any criminal liability; (iii) any liability for damages for injury to, destruction of, or loss of natural resources; and (iv) any action to enforce the agreement.

3.      Covenants Not to Sue and Contribution Protection

The Non-Owned Site Settlement Agreement provides Debtors' estates and the GUC Trust with covenants not to sue from EPA with respect to the Settled Non-Owned Sites. The Settlement Agreement also provides reciprocal covenants not to sue from Debtors' estates and

7

the GUC Trust for EPA.  Finally, the Settlement Agreement provides the Debtors' estates and the GUC Trust with contribution protection for matters addressed therein as provided for by section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2).

## II.    ARGUMENT

### The Court Should Approve the Settlement Agreement Because It Is Fair, Reasonable, and Consistent With Environmental Law

**A.    Statement of Relief Requested**

The United States moves for approval under the environmental laws of the proposed Non-Owned Site Settlement Agreement.  As explained below, the Debtors' Settlement Procedures Order (as defined below) does not require Court approval for settlements less than or equal to $50 million, and the Court therefore need not analyze this motion under the rubric of Bankruptcy Rule 9019.  However, under the environmental laws, the United States was required to provide notice and an opportunity for public comment on the proposed settlement, after which, if (as is true here), the Government concludes that the settlement should be approved, the United States must seek Court approval of the settlement under applicable environmental laws.

**B.    Jurisdiction**

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**C.    The Relief Requested Should Be Approved by the Court**

The Court should approve the proposed Settlement Agreement negotiated by the United States because it is fair, adequate, lawful, reasonable, and comports with public policy and the goals of CERCLA.  Under the environmental laws, approval of a settlement agreement is a judicial act committed to the informed discretion of the Court.  *In re Cuyahoga.*, 908 F.2d at 118;

8

*Cannons Eng'g*, 720 F. Supp. at 1035. Judicial review of a settlement negotiated by the United States to protect the public interest is subject to special deference; the Court should not engage in "second-guessing the Executive Branch." *Cannons Eng'g*, 899 F.2d at 84; *In re Cuyahoga*, 980 F.2d at 118 (noting the "usual deference given the EPA"); *New York v. Solvent Chem. Corp.*, 984 F. Supp. 160, 165 (W.D.N.Y. 1997) ("This Court recognizes that its function in reviewing consent decrees apportioning CERCLA liability is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy.") (internal quotation marks omitted). An evidentiary hearing is not required in order to evaluate a proposed CERCLA consent decree because such hearings would frustrate the statutory goal of expeditious settlement; hearing requests are therefore routinely and properly denied. *United States v. Charles George Trucking Inc.*, 34 F.3d 1081, 1085 (1st Cir. 1994); *Cannons Eng'g*, 899 F.2d at 94. This "limited standard of review reflects a clear policy in favor of settlements." *Solvent Chem. Corp.*, 984 F. Supp. at 165.

As discussed below, the Court should approve the Non-Owned Site Settlement Agreement because it is fair, reasonable, in the public interest, and furthers the goals of CERCLA. *See Charles George Trucking*, 34 F.3d at 1084; *Cannons Eng'g*, 899 F.2d at 85; *Solvent Chem. Corp.*, 984 F. Supp. at 166; *Hooker Chem.* 540 F. Supp. at 1073 ("the task has been to examine the proposal and determine whether it is a fair and adequate settlement and whether its implementation will reflect concern for the problems for which Congress has enacted the various environmental statutes."). The merit of this application is highlighted by the fact that no one has submitted adverse comments relating to the proposed Settlement Agreement during the notice and comment process, despite its being publicly docketed since January 30, 2012, in a

9

highly visible bankruptcy that is followed widely by the public and by the environmental and bankruptcy bar.

### 1. The Settlement Agreement Is Fair

The fairness criterion of a CERCLA settlement integrates both procedural fairness and substantive fairness. *Cannons Eng'g*, 899 F.2d at 86-88. To measure procedural fairness, the Court "should ordinarily look to the negotiation process and gauge its candor, openness, and bargaining balance." *Id.* at 86. The proposed Settlement Agreement is procedurally fair because it was negotiated at arm's length over many months, with good faith participation by governmental actors and parties who were represented by experienced counsel, and involved assistance by technical experts for both sides on matters such as estimating the cost of future response actions. *See id.* at 87 (finding a CERCLA settlement procedurally fair based on criteria including an arms-length negotiation, experienced counsel, and good faith participation by EPA).

To measure "substantive" fairness, the Court considers whether the settlement is "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability . . . according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." *Id.* at 87; *see also United States v. Davis*, 261 F.3d 1, 24 (1st Cir. 2001); *Charles George Trucking*, 34 F.3d at 1087; *DiBiase*, 45 F.3d at 544-45. The proposed Settlement Agreement is substantively fair because the amount of the allowed claim for each site was determined by considering estimated total response costs and Debtors' estimated percentage allocation of liability for the site, taking into account the existence of other PRPs, the circumstances under which the contamination occurred, and multiple other factors. Debtors' liability at the Settled Non-Owned Sites formed the backdrop for lengthy negotiations between the parties regarding the nature, extent, and cost of the cleanup that will be required at the Settled

Non-Owned Sites, and the estimates of future response costs were determined after extensive discussions with environmental experts and/or EPA technical personnel overseeing the cleanup of the sites. The amount of the allowed claim and future work obligation for each site therefore represents a substantively fair resolution of the Debtors' liabilities taking into account the uncertainties and litigation risks involved.

        2.        The Settlement Agreement Is Reasonable

Courts evaluating the reasonableness of CERCLA settlements have considered three factors: (i) technical adequacy of the cleanup work to be performed; (ii) satisfactory compensation to the public for response costs; and (iii) the risks, costs, and delays inherent in litigation. *See Charles George Trucking*, 34 F.3d at 1085; *Cannons*, 899 F.2d at 89-90. Though the first prong of the reasonableness inquiry is not at issue in this settlement, as the Debtors are not performing any cleanup, the Settlement Agreement satisfies the other, necessarily intertwined, considerations relevant to reasonableness. As discussed above, the United States will receive an Allowed General Unsecured Claims totaling more than $20.9 million and work up to the amount of $2,896,334 in accordance with performance bond requirements.

These settlement terms satisfactorily compensate the public while reasonably balancing the strength of the United States' case against the Debtors, the Debtors' bankruptcy, and the need to recover funds for cleanup and minimize the expense and potential delay of protracted litigation. Accordingly, the proposed Settlement Agreement is reasonable.

        3.        The Settlement Agreement Is Consistent with the Goals of CERCLA

The primary goals of CERCLA are to "encourage prompt and effective responses to hazardous waste releases and to impose liability on responsible parties," and to "encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation."

11

*In re Cuyahoga*, 980 F.2d at 119. The Settlement Agreement furthers these statutory goals. As discussed above, the proposed Settlement Agreement accounts for past and estimated future response costs at non-debtor-owned sites. The settlement further meets CERCLA's statutory goal of providing final resolution of liability for settling parties. Moreover, the proposed Settlement Agreement serves CERCLA's goal of reducing, where possible, the litigation and transaction costs associated with response actions, as well as the public policy favoring settlement to reduce costs to litigants and burdens on the courts. *See Solvent Chem. Corp.*, 984 F. Supp. at 165; *Hooker Chem.*, 540 F. Supp. at 1072.

WHEREFORE, the United States respectfully requests entry of the proposed order annexed as Exhibit 2 approving and entering the proposed Non-Owned Site Settlement Agreement.

Dated:   New York, New York
         March 7, 2012

                                        PREET BHARARA
                                        United States Attorney for the
                                        Southern District of New York
                                        Attorney for the United States of America

                        By:    */s/ Natalie N. Kuehler*
                               DAVID S. JONES
                               NATALIE N. KUEHLER
                               Assistant United States Attorneys
                               86 Chambers Street, 3rd Floor
                               New York, New York 10007
                               Telephone: (212) 637-2541
                               Facsimile: (212) 637-2750
                               Email: natalie.kuehler@usdoj.gov

                               ALAN S. TENENBAUM
                               National Bankruptcy Coordinator
                               PATRICK CASEY
                               Senior Counsel
                               Environment and Natural Resources Division
                               Environmental Enforcement Section
                               U.S. Department of Justice

12