## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY *et al.*,<br><br>f/k/a GENERAL MOTORS CORP. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

### CONSENT DECREE AND SETTLEMENT AGREEMENT BETWEEN THE DEBTORS AND THE UNITED STATES OF AMERICA

### I. BACKGROUND

WHEREAS, on June 1, 2009, Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors (collectively, the "**Initial Debtors**"), commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), Case No. 09-50026 (REG);

WHEREAS, on October 9, 2009, two additional debtors, REALM and ENCORE (together with the Initial Debtors, the "**Debtors**"), commenced voluntary cases under chapter 11 of the Bankruptcy Code;

WHEREAS, the chapter 11 cases filed by the Initial Debtors, REALM and ENCORE have been consolidated for procedural purposes and are being administered jointly as Case No. 09-50026 (REG) (the "**Bankruptcy**");

WHEREAS, the United States of America (the "**United States**"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, on behalf of the United States Environmental Protection Agency ("**EPA**"), has alleged that MLC and/or affiliated Debtors are

potentially responsible or liable parties with respect to the Diamond Alkali Superfund Site in

New Jersey, the Kane & Lombard Street Drum Superfund Site in Maryland and the Hayford

Bridge Road Groundwater Superfund Site in Missouri (the "**Settled Non-Owned Sites**");

WHEREAS, the United States on behalf of EPA has alleged that the Debtors are liable

under the Comprehensive Environmental Response, Compensation, and Liability Act

("**CERCLA**"), 42 U.S.C. §§ 9601-9675, to comply with injunctive orders and for costs EPA has

incurred or will incur in response to releases and threats of releases of hazardous substances at or in

connection with the Settled Non-Owned Sites;

WHEREAS on March 29, 2011, the Court issued its Findings of Fact, Conclusions

of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule

3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second

Amended Joint Chapter 11 Plan (the "**Plan of Liquidation**") which, among other things,

confirmed the Debtors' Second Amended Joint Chapter 11 Plan ("**Plan**"), and established

the Motors Liquidation GUC Trust ("**GUC Trust**") pursuant to the Motors Liquidation

Company GUC Trust Agreement;

WHEREAS pursuant to the Plan of Liquidation, the Debtors have dissolved and the

GUC Trust is authorized to resolve all remaining claims on behalf of the Debtors;

WHEREAS, (i) on November 28, 2009, the United States timely filed duplicate

copies of its proof of claim against MLC both in the Bankruptcy Court and directly with

the Debtors' claims agent, and the two copies of the identical proof of claim were assigned

Nos. 67362 and 64064, and (ii) on April 16, 2010, the United States filed proofs of claim

against REALM and ENCORE which were assigned Nos. 70254 and 70255, respectively,

(collectively, the "**First U.S. Proof of Claim**");

WHEREAS, on March 29, 2011, and June 17, 2011, the Bankruptcy Court entered a total of nine previous Consent Decrees and Settlement Agreements Between the Debtors and the United States resolving certain claims of the United States for various sites other than the Settled Non-Owned Sites;

WHEREAS, on April 8, 2011, the United States filed a second proof of claim (the "**Second U.S. Proof of Claim**") against MLC in the Bankruptcy Court that supersedes the First U.S. Proof of Claim;

WHEREAS, the GUC Trust and the United States (collectively, the "**Parties**") have differences of opinion with respect to the claims asserted by the United States regarding the Settled Non-Owned Sites in the Second U.S. Proof of Claim and wish to resolve their differences with respect to the Settled Non-Owned Sites in the Second U.S. Proof of Claim as provided herein;

WHEREAS, the treatment of liabilities provided for herein represents a compromise of the positions of the Parties and is entered into solely for purposes of this settlement;

WHEREAS, this Settlement Agreement is in the public interest and is an appropriate means of resolving these matters;

WHEREAS the claims set forth in the Second U.S. Proof of Claim for all sites other than the Settled Non-Owned Sites which have not been otherwise settled (the "**Surviving Claims**") shall survive and in no way be affected by this settlement, and the GUC Trust retains all existing rights to object to all or some of the Surviving Claims;

NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, and upon the consent and agreement of the parties to this Settlement Agreement by their attorneys and authorized officials, it is hereby agreed as follows:

3

## II. <u>DEFINITIONS</u>

1.      Unless otherwise expressly provided herein, terms used in this Settlement Agreement that are defined in CERCLA or its regulations or in the Bankruptcy Code shall have the meaning assigned to them in CERCLA, its regulations, or the Bankruptcy Code.  Whenever terms listed below are used in this Settlement Agreement, the following definitions shall apply:

a.   "**Allowed General Unsecured Claim**" has the meaning set forth in the Plan of Liquidation.

b.   "**Bankruptcy**" has the meaning set forth in the recitals.

c.   "**Bankruptcy Code**" has the meaning set forth in the recitals.

d.   "**Bankruptcy Court**" or the "**Court**" has the meaning set forth in the recitals.

e.   "**CERCLA**" has the meaning set forth in the recitals.

f.   "**Claim**" has the meaning provided in section 101(5) of the Bankruptcy Code.

g.   "**Distribution**" has the meaning set forth in the Plan.

h.   "**Effective Date**" means the date an order is entered by the Bankruptcy Court approving this Settlement Agreement.

i.   "**EPA**" has the meaning set forth in the recitals.

j.   "**EPA Allowed Claim**" means the total amount of Allowed General Unsecured Claims by EPA in settlement and satisfaction of its claims concerning the Settled Non-Owned Sites.

k.   "**Motors Liquidation Company GUC Trust**" has the meaning set forth in the Plan.

l.   "**Hazardous Substance Superfund**" means the Hazardous Substance Superfund established by 26 U.S.C. § 9507.

4

m.  "**MLC**" has the meaning set forth in the recitals.

n.  "**NPL**" means the National Priorities List, 40 C.F.R. Part 300.

o.  "**Parties**" has the meaning set forth in the recitals.

p.  "**Petition Date**" means June 1, 2009, in the case of the Initial Debtors, and October 9, 2009, in the case of REALM and ENCORE.

q.  "**Plan of Liquidation**" or "**Plan**" has the meaning set forth in the recitals.

r.  "**Second U.S. Proof of Claim**" has the meaning set forth in the recitals.

s.  "**Settlement Agreement**" means this Consent Decree and Settlement Agreement between the Debtors and the United States of America.

t.  "**Settled Non-Owned Sites**" has the meaning set forth in the recitals.

u.  "**United States**" means the United States of America and all of its agencies, departments, and instrumentalities, including EPA.

## III.    JURISDICTION

2.    The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334, and 42 U.S.C. §§ 9607 and 9613(b).

## IV.  PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.    This Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the United States, the Debtors' estates, the GUC Trust, their legal successors and assigns, and any other trustee, examiner, or receiver appointed in the Bankruptcy Cases.

## V. ALLOWED CLAIMS

4.    In full settlement and satisfaction of the U.S. Proof of Claim with respect to the Diamond Alkali Superfund Site in New Jersey (the "**Diamond Alkali Site**"), the United States

shall receive an Allowed General Unsecured Claim in the amount of $19,500,000, classified in Class 3 under the Plan of Liquidation.

5.      With respect to the Kane & Lombard Street Drum Superfund Site in Maryland (the "**Kane & Lombard Site**"), MLC was required to maintain financial assurance securing its completion of remedial work.  MLC satisfied its financial assurance obligation by executing a performance bond in the amount of $2,448,334 with Westchester Fire Insurance Company ("**Westchester**"), naming EPA as beneficiary.  EPA has notified Westchester that MLC had stopped performing remedial work at the Kane & Lombard Site and that its obligations under the bond had become due.  In full settlement and satisfaction of the U.S. Proof of Claim with respect to the Kane & Lombard Site, and pursuant to an agreement entered into by EPA and Westchester on April 26, 2011, attached hereto as Exhibit A, Westchester will pay EPA up to $2,448,334, as directed by EPA, for the cost of remedial work at the Kane & Lombard Site.  The United States shall not receive any Allowed General Unsecured Claim for the Kane & Lombard Site under this Settlement Agreement.

6.      With respect to the Hayford Bridge Road Groundwater Superfund Site in Missouri (the "**Hayford Bridge Site**"), MLC was required to maintain financial assurance securing its completion of remedial work.  MLC satisfied its financial assurance obligation by executing a performance bond in the amount of $448,000 with Westchester, naming EPA as beneficiary.  Following the Bankruptcy, EPA notified Westchester that MLC had stopped performing remedial work at the Hayford Bridge Site and that its obligations under the bond had become due.  In partial settlement and satisfaction of the U.S. Proof of Claim with respect to the Hayford Bridge Site, and pursuant to an agreement entered into by EPA and Westchester on November 9, 2011, attached hereto as Exhibit B, Westchester will pay EPA up to $448,000, as

directed by EPA, for the cost of remedial work at the Hayford Bridge Site.  The United States

shall also receive an Allowed General Unsecured Claim for the Hayford Bridge Site in the

amount of $1,402,000, classified in Class 3 under the Plan of Liquidation.  The performance bond

in the amount of $448,000 and the Allowed General Unsecured Claim in the amount of

$1,402,000 shall be in full settlement and satisfaction of the U.S. Proof of Claim with respect to

the Hayford Bridge Site.

7.      In light of the foregoing paragraphs 4, 5 and 6 the United States, on behalf of EPA,

shall have an Allowed General Unsecured Claim in the total amount of $20,902,000 (the "**EPA**

**Allowed Claim**").  In accordance with bond requirements the United States, on behalf of EPA,

will also receive up to $2,896,334 for work performed at the Kane & Lombard and Hayford

Bridge Sites.

8.      Upon the Effective Date, the Second U.S. Proof of Claim shall be deemed fully

settled and satisfied as to the Settled Non-Owned Sites only and the claims agent shall be

authorized and empowered to adjust the claims register accordingly.

9.      The Second U.S. Proof of Claim shall be deemed allowed in the respective amounts

set forth herein as to the Settled Non-Owned Sites for purposes of distributions under the Plan of

Liquidation, and shall be entitled to receive payment in the next distribution under the Plan.

10.      As to those sites not resolved by this or any other settlement agreement between the

United States and the GUC Trust, the Second U.S. Proof of Claim shall remain pending and the

post-effective date Debtors and/or GUC Trust reserve all existing rights to object to the Second

U.S. Proof of Claim.

11.     Nothing contained herein shall reduce the ability of the GUC Trust to enforce as to all claimants, other than the United States, Section 7.2 of the Plan requiring that all claims must be resolved before any distribution on account of allowed claims may occur.

12.     The GUC Trust shall reduce the distribution reserve amount to be used by the GUC Trust pursuant to Article VII of the Plan for the remaining unresolved general unsecured claims against Debtors asserted in the Second U.S. Proof of Claim to no less than $200 million.

13.     The allowed claims provided for herein shall be treated as provided under Section 4.3 of the Plan of Liquidation and shall not be subordinated to any other allowed Class 3 Unsecured Claim pursuant to any provision of the Bankruptcy Code or other applicable law that authorizes or provides for subordination of allowed claims, including, without limitation, Sections 105, 510, and 726(a)(4) of the Bankruptcy Code.

14.     Any cash distribution or the proceeds of any non-cash distribution received by EPA on account of an Allowed General Unsecured Claim under this Settlement Agreement shall be deposited in a special account within the Superfund to be retained and used to fund response actions at the Settled Non-Owned Site for which it received the relevant Allowed General Unsecured Claim, or, if no further response action is required, or as otherwise required by EPA policy, transferred by EPA to the Superfund.

15.     Only the amount of cash received by EPA (and net cash received upon sale of any non-cash distributions) pursuant to this Settlement Agreement for any Allowed General Unsecured Claim, and not the total amount of any Allowed General Unsecured Claim, shall be credited by EPA to its account for the Non-Owned Site for which it received an Allowed General

Unsecured Claim, and shall reduce the liability of non-settling potentially responsible parties for

that site by the amount of the credit.

## VI.  PAYMENT INSTRUCTIONS

16.     Cash distributions to the United States pursuant to this Settlement Agreement shall

be made at https://www.pay.gov to the U.S. Department of Justice account in accordance with

instructions provided to the Debtors by the Financial Litigation Unit of the United States

Attorney's Office for the Southern District of New York and shall reference Bankruptcy Case

Number 09-50026 and DOJ File Number 90-11-3-09754.

17.     Non-cash distributions to the United States shall be made to:

> U.S. Environmental Protection Agency
> Attn:  Molly Williams
> Suite 300
> 4411 Montgomery Rd.
> Cincinnati, OH  45212

18.     The GUC Trust shall transmit written confirmation of such cash and non-cash

distributions to the United States at the addresses specified below:

> The United States:
>
> Chief, Environmental Enforcement Section
> Environment and Natural Resources Division
> U.S. Department of Justice
> P.O. Box 7611
> Ben Franklin Station
> Washington, DC  20044
> Ref. DOJ File No. 90-11-3-1-09754
>
> DAVID S. JONES
> NATALIE N. KUEHLER
> Assistant United States Attorney
> Office of the United States Attorney
> for the Southern District of New York
> 86 Chambers Street, Third Floor
> New York, NY  10007

EPA:

CRAIG KAUFMAN
Attorney-Advisor
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC  20460

## VII.  COVENANTS NOT TO SUE AND RESERVATION OF RIGHTS

19.    In consideration of the payments and/or distributions that will be made under the terms of this Settlement Agreement, and except as specifically provided in Paragraphs 21 through 23, the United States on behalf of EPA covenants not to file a civil action or to take any administrative or other civil action against the GUC Trust pursuant to Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or 9607, with respect to the Settled Non-Owned Sites.

20.    These covenants not to sue (and any reservations thereto) shall also apply to the GUC Trust's successors, assigns, officers, directors, employees, and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of the GUC Trust or the post-effective date Debtors is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of the GUC Trust or the post-effective date Debtors.  For purposes of this Paragraph, New GM shall not be considered a successor or assign of the GUC Trust.

21.    The covenants not to sue set forth in this Settlement Agreement shall extend only to the GUC Trust and the persons described in Paragraph 20 above and do not extend to any other person.  Nothing in this Settlement Agreement is intended as a covenant not to sue or a release from liability for any person or entity other than the GUC Trust, the United States, and the persons or entities described in Paragraph 20 above.  The United States and the GUC Trust expressly

reserve all claims, demands, and causes of action, either judicial or administrative, past, present, or future, in law or equity, which they may have against all other persons, firms, corporations, entities, or predecessors of the GUC Trust for any matter arising at or relating in any manner to the Settled Non-Owned Sites.

22.      The covenants not to sue set forth in Paragraph 19 do not pertain to any matters other than those expressly specified therein.

23.      The United States expressly reserves, and this Settlement Agreement is without prejudice to, all rights against the GUC Trust with respect to all matters other than those set forth in Paragraph 19.  The United States also specifically reserves, and this Settlement Agreement is without prejudice to, any action based on (i) a failure to meet a requirement of this Settlement Agreement; (ii) criminal liability; (iii) liability for damages for injury to, destruction of, or loss of natural resources; and (iv) liability with respect to any site other than the Settled Non-Owned Sites.  In addition, the United States reserves, and this Settlement Agreement is without prejudice to, all rights against the GUC Trust with respect to the Settled Non-Owned Sites for liability under federal or state law for acts by the GUC Trust, or their respective successors, or assigns that occur after the date of lodging of this Settlement Agreement.  Nothing in this Settlement Agreement shall be deemed to limit the authority of the United States to take response action under Section 104 of CERCLA, 42 U.S.C. § 9604, or any other applicable law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the United States pursuant to such authority.  Nothing in this Settlement Agreement shall be deemed to limit the information-gathering authority of the United States under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable law or regulation, or to excuse the Debtors or

the GUC Trust from any disclosure or notification requirements imposed by CERCLA or any other applicable law or regulation.

24.       The GUC Trust and the Debtors' estates hereby covenant not to sue and agree not to assert or pursue any claims or causes of action against the United States, including any department, agency, or instrumentality of the United States, with respect to the Settled Non-Owned Sites, including, but not limited to: (i) any direct or indirect claim for reimbursement from the Hazardous Substances Superfund established pursuant to 26 U.S.C. § 9507; (ii) any claim against the United States under Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613; or (iii) any claims arising out of response activities at the Settled Non-Owned Sites. Nothing in this Settlement Agreement shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

### VIII.  CONTRIBUTION PROTECTION

25.       The Parties agree, and by entering this Settlement Agreement the Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that the GUC Trust is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Settlement Agreement. Subject to the last sentence of this Paragraph, the "matters addressed" in this Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), include, without limitation, claims by EPA or potentially responsible parties for response costs at or in connection with the Settled Non-Owned Sites, including claims related to releases of hazardous substances from any portion of the Settled Non-Owned Sites and all areas affected by migration of hazardous substances emanating from the Settled Non-Owned Sites. The

"matters addressed" in this Settlement Agreement do not include claims against the Debtors or the GUC Trust for past response costs incurred by potentially responsible parties prior to the date of lodging this Settlement Agreement with the Bankruptcy Court and included in proofs of claim filed in any of the Bankruptcy Cases by potentially responsible parties with respect to the Settled Non-Owned Sites, nor do such "matters addressed" include any claim for natural resource damages, assessment costs, or restoration costs filed by or on behalf of the United States Department of Interior and/or National Oceanic and Atmospheric Administration.

26.    The GUC Trust and the Debtors' estates each agree that, with respect to any suit for contribution brought against any of them after the Effective Date for matters related to this Settlement Agreement, they will notify the United States within fifteen business days of service of the complaint upon them.  In addition, in connection with such suit, the GUC Trust and the Debtors' estates shall notify the United States within fifteen business days of service or receipt of any Motion for Summary Judgment and within fifteen business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify the United States pursuant to this Paragraph shall not in any way affect the protections afforded under Section VIII of this Settlement Agreement).

## IX.  JUDICIAL APPROVAL AND PUBLIC COMMENT

27.    The GUC Trust shall promptly seek approval of this Settlement Agreement under Bankruptcy Rule 9019 or applicable provisions of the Bankruptcy Code.

28.    This Settlement Agreement shall be lodged with the Bankruptcy Court and shall thereafter be subject to a period of public comment following publication of notice of the Settlement Agreement in the *Federal Register*.  After the conclusion of the public comment period, the United States will file with the Bankruptcy Court any comments received, as well as

the United States' responses to the comments, and at that time, if appropriate, the United States will request approval of the Settlement Agreement. The United States reserves the right to withdraw or withhold its consent if the comments regarding the Settlement Agreement disclose facts or considerations which indicate that the Settlement Agreement is not in the public interest.

29.     If for any reason (i) the Settlement Agreement is withdrawn by the United States as provided in Paragraph 28, or (ii) the Settlement Agreement is not approved by the Bankruptcy Court: (a) this Settlement Agreement shall be null and void and the parties hereto shall not be bound under the Settlement Agreement or under any documents executed in connection herewith; (b) the parties shall have no liability to one another arising out of or in connection with this Settlement Agreement or under any documents executed in connection herewith; and (c) this Settlement Agreement and any documents prepared in connection herewith shall have no residual or probative effect or value.

## X. **NOTICES**

30.     Whenever, under the terms of this Settlement Agreement, written notice is required to be given, or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below via U.S. mail, unless those individuals or their successors give notice of a change of address to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Except as otherwise provided in this Settlement Agreement, written notice as specified herein shall constitute complete satisfaction of any written notice requirement in the Settlement Agreement with respect to the United States and the GUC Trust or the Debtors' estates, respectively.

<u>As to the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
Ref. DOJ File No. 90-11-3-09754

Natalie N. Kuehler
Assistant United States Attorney
Office of the United States Attorney
for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007

Craig Kaufman
Attorney-Advisor
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

<u>As to the GUC Trust and the Debtors' estates</u>:

David A. Vanaskey
Vice President
Wilmington Trust Company
Rodney Square North
1110 North Market Street
Wilmington, DE 19890-1615

David R. Berz
Weil, Gotshal & Manges LLP
Attorneys for Debtors and Debtors in Possession
1300 Eye Street, NW, Suite 900
Washington, D.C. 20005

## XI.  INTEGRATION, AMENDMENTS, AND EXECUTION

31.     This Settlement Agreement constitutes the sole and complete agreement of the parties hereto with respect to the matters addressed herein.  This Settlement Agreement may not be amended except by a writing signed by all parties to this Settlement Agreement.

32.     This Settlement Agreement may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one and the same agreement.

## XII.  RETENTION OF JURISDICTION

33.     The Bankruptcy Court shall retain jurisdiction over the subject matter of this Settlement Agreement and the parties hereto for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the parties to apply at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.

[SIGNATURE PAGE FOLLOWS]

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**

PREET BHARARA
United States Attorney for the
Southern District of New York

_____
Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
      Division
U.S. Department of Justice

David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date: _____

Date: _1/30/2012_

_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: _____

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: _____

17

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**


**FOR THE UNITED STATES:**

Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
         Division
U.S. Department of Justice


Date: 1/30/12

Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: 1/30/12


Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency


Date: _____

PREET BHARARA
United States Attorney for the
Southern District of New York


David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007


Date: _____

17

**THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:**

**FOR THE UNITED STATES:**          PREET BHARARA
                                    United States Attorney for the
                                    Southern District of New York

_____    _____
Robert G. Dreher                    David S. Jones
Acting Assistant Attorney General   Natalie N. Kuehler
Environment and Natural Resources   Assistant U.S. Attorneys
        Division                    86 Chambers St., 3rd Floor
U.S. Department of Justice          New York, NY 10007

Date: _____       Date: _____

_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: _____

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: _____1/30/12_____

**FOR THE GUC TRUST AND THE DEBTORS' ESTATES:**

Date: 1/30/12

Motors Liquidation Company GUC Trust
By Wilmington Trust Company, not in its
individual capacity, but solely as MLC
GUC Trust Administrator

Date: 1/30/12

David R. Berz
Weil, Gotshal & Manges LLP
Attorneys for the post-effective date Debtors
and the GUC Trust
1300 Eye Street, NW, Suite 900
Washington, D.C. 20005
Tel.: (202) 682-7000
Fax: (202) 857-0939
Email: david.berz@weil.com

18

# EXHIBIT A

### Bond Payment Reduction and Discharge Agreement

The parties to this Bond Payment Reduction and Discharge Agreement ("Agreement"), the United States Environmental Protection Agency, Region 3, 1650 Arch Street, Philadelphia, Pennsylvania 19103 (hereafter, "U.S. EPA") and Westchester Fire Insurance Company, c/o ACE USA, 436 Walnut Street, Routing Code WA10A, Philadelphia, Pennsylvania 19106 (hereafter, "Westchester"), hereby enter into this Agreement as of this 26th day of April             , 2011 to resolve the bond claim described herein by payment and discharge as set forth below.

WHEREAS, Westchester issued surety bond number K07593521 in the amount of $2,448,334.00 (the "Bond") on behalf of General Motors Corporation ("GM") in favor of the U.S. EPA in connection with GM's obligations, under a certain Consent Decree entered on November 3, 2006, in the United States District Court for the District of Maryland in a case captioned United States of America and State of Maryland v. Browning-Ferris, Inc., et al. (No. L-06-1134) ("2006 Consent Decree"), to perform remedial action selected by U.S. EPA at the Kane and Lombard Superfund Site;

WHEREAS, GM subsequently defaulted on performance of the work required by the 2006 Consent Decree;

WHEREAS, Westchester is prepared to make payments under the Bond for performance of the work required by the 2006 Consent Decree or to implement any other remedial action selected by U.S. EPA for the Kane and Lombard Site (collectively, the "Work"), provided that such payments will reduce the penal sum of the Bond and, when the full penal sum has been paid, will discharge Westchester from all further liability in connection with the Bond and Westchester's obligations to perform work on behalf of GM pursuant to the terms of the Bond, Westchester and U.S. EPA agree as follows:

1. U.S. EPA will periodically send billing statements with costs incurred for performance of the Work to counsel for Westchester at the address set forth below. Within fifteen (15) business days of receipt of such statements, Westchester shall remit payment in accordance with payment instructions provided with each statement.

2. Upon receipt by U.S. EPA of confirmation of each such payment by the payee designated in each statement, the penal sum of the Bond shall be reduced in the amount of the payment; and

3. Upon the earlier of (i) the Work being completed or (ii) reduction in the penal sum of the Bond to $0.00, Westchester's obligation to remit payment hereunder shall be satisfied, and Westchester shall be released and discharged from any and all obligations, liabilities, costs, expenses or claims arising from or related in any manner to the Bond or GM's performance of the Work including, without limitation, past, present or future claims.

4. Billing statements should be sent to counsel for Westchester at the following physical or e-mail address:

Robert McL. Boote
Ballard Spahr LLP
1735 Market Street, 51st Floor
Philadelphia, PA  19103
boote@ballardspahr.com

     5.  Westchester and U.S. EPA represent and warrant to each other that the signatories to this Agreement have full power and authority to enter into this Agreement to resolve the U.S. EPA bond claim as described herein.  This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

By: _____

Printed Name:

Title: _DIRECTOR, HAZARDOUS SITE
      CLEANUP DIVISION_

Date Executed:  4/20/11

WESTCHESTER FIRE INSURANCE
COMPANY

By _____

   Henry R. Mihissale

Title:  Vice President

Date Executed: 3/29/11

-2-

# EXHIBIT B

<u>**Bond Payment Reduction and Discharge Agreement**</u>

        The parties to this Bond Payment Reduction and Discharge Agreement ("Agreement"), **the United States Environmental Protection Agency, Region 7**, 901 North 5th Street, Kansas City, Kansas 66101 (hereafter, "U.S. EPA") and **Westchester Fire Insurance Company**, c/o ACE USA, 436 Walnut Street, Routing Code WA10A, Philadelphia, Pennsylvania 19106 (hereafter, "Westchester"), hereby enter into this Agreement as of this _9_ day of _Nov_ , 2010 to resolve the bond claim described herein by payment and discharge as set forth below.

        WHEREAS, Westchester issued surety bond number K07734086 in the amount of $448,000.00 (the "Bond") on behalf of General Motors Corporation ("GM") in favor of the U.S. EPA in connection with GM's obligations under a certain Consent Decree entered by the United States District Court for the Eastern District of Missouri on August 16, 2007, in <u>United States et al. v. Findett Real Estate Corp. et al.</u>, Docket No. 07-1215 ("Consent Decree"), for the Hayford Bridge Road Superfund site, which obligations are hereafter referred to as "Work";

        WHEREAS, GM subsequently defaulted on performance of the Work required at the Hayford Bridge Road Superfund site;

        WHEREAS, U.S. EPA submitted a claim under the Bond to Westchester on K07734086 by letter dated April 8, 2010; and

        WHEREAS, Westchester is prepared to make payments under the Bond provided that such payments will reduce the penal sum of the Bond and, when the full penal sum has been paid, will discharge Westchester from all further liability in connection with the Bond, Westchester and U.S. EPA agree as follows:

        1.     U.S. EPA will send billing statements with costs incurred for performance of the Work under the Consent Decree and U.S. EPA's approval of such costs to counsel for Westchester at the address set forth below. Within fifteen (15) business days of receipt of such statements, Westchester shall remit payment to:

                Hayford Bridge Road OU 3 Escrow Account,
                UMB Bank N.A., Corporate Trust Division
                South Broadway, Suite 435
                St. Louis, MO  63102
                Attention:  Richard F. Novosak

        2.     Upon receipt of each such payment by UMB Bank N.A. (on behalf of the signatories to the Hayford Bridge Road OU3 Participation Agreement), the penal sum of the Bond shall be reduced in the amount of the payment; and

        3.     Upon the earlier of (i) the Work being completed or (ii) reduction in the penal sum of the Bond to $0.00, Westchester's obligation to remit payment hereunder shall be satisfied, and Westchester shall be fully and unconditionally released and discharged from any and all obligations, liabilities, costs, expenses or claims, including, without limitation, past,

present or future claims arising from or related in any manner to the Hayford Bridge Road Superfund site and/or the Consent Decree and/or the Bond.

    4.    Billing statements should be sent to counsel for Westchester at the following physical or e-mail address:

> Robert McL. Boote
> Ballard Spahr LLP
> 1735 Market Street, 51st Floor
> Philadelphia, PA  19103
> boote@ballardspahr.com

    5.    Westchester and U.S. EPA represent and warrant to each other that the signatories to this Agreement have full power and authority to enter into this Agreement to resolve the U.S. EPA bond claim as described herein. This Agreement may be executed in multiple counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

By _____
CECILIA TAPIA
Division Director
Superfund Division

Date executed: 11/3/10

WESTCHESTER FIRE INSURANCE
COMPANY

By _____
ROBERT B. COLLINS
Director - Claim

Date executed: 10/25/10