# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

|  |  |  |  |
|---|---|---|---|
| _____ | ) | | |
| DONNA M. TRUSKY on behalf of herself | ) | | |
| and all others similarly situated, | ) | **CLASS ACTION** | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| vs | ) | **JURY TRIAL DEMANDED** | |
| | ) | | |
| GENERAL MOTORS COMPANY | ) | | |
| 300 Renaissance Center | ) | Case No. _____ | |
| Detroit, MI 48243 | ) | | |
| | ) | | |
| Defendant. | ) | | |
| _____ | ) | | |

## CLASS ACTION COMPLAINT

> **You are hereby notified to preserve all records and documents in all forms and formats (digital, electronic, film, magnetic, optical, print, etc.) during the pendency of this action that are relevant or may lead to relevant information and to notify your employees, agents and contractors that they are required to take appropriate action to do so.**

Plaintiff, Donna M. Trusky, brings this class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, individually and on behalf all others similarly situated, and alleges the following:

## INTRODUCTION

1.  Model year 2007 and 2008 Impalas were primarily manufactured by General Motors Corporation, although some may have been manufactured by General Motors Company. General Motors Company acquired substantially all of the assets and assumed some of the liabilities of General Motors Corporation, when

1

the former filed for bankruptcy relief in 2009. General Motors Company assumed the express warranty liabilities of General Motors Corporation, including those which Plaintiffs and the class now seek to enforce. General Motors Company is the Defendant in this action and is referred to hereinafter as "GM" or "General Motors."

2.    The model year 2007 and 2008 Impalas were sold with common defective rear spindle rods that caused and continue to cause wheel misalignment and premature tire wear. Even though it has issued a recall bulletin for model year 2007 and 2008 Impalas operated as police vehicles, GM has failed to honor its warranties with Plaintiff and the putative class, by failing to correct the manufacturing defect in their vehicles. There are no relevant material differences between police vehicles and class members' vehicles relating the defective spindle rods.

3.    The fact that GM moved to fix certain Impalas shows that it knew of the defect. Despite this, GM continued to sell and has refused to honor the warranties on hundreds of thousands of defective and potentially unsafe vehicles.

4.    This class action seeks damages, injunctive and declaratory relief on behalf of a class of all persons who purchased model years 2007 and 2008 Chevrolet Impalas.

5.    Through a common uniform course of conduct, GM and General Motors Corporation manufactured, supplied, promoted, and sold model year 2007 and 2008 Chevrolet Impalas with the defective rear spindle rods.

6.    Through a common and uniform course of conduct, GM and General Motors Corporation, acting individually and collectively through their agents and dealers:

    i.   manufactured and sold Impala's with common defective rear spindle rods that caused and continue to cause wheel misalignment and premature tire wear;

    ii.   failed to repair or replace the defective rear spindle rods under their express warranties;

    iii.   caused the 2007 and 2008 Chevrolet Impalas to incur premature and/or abnormal tire wear from the time of sale;

    iv.   failed to adequately disclose to the consuming public the fact that 2007 and 2008 model year Chevrolet Impalas would incur premature and/or abnormal tread wear, often requiring replacement of tires within 10,000 miles of first use;

    v.   issued a recall bulletin for model year 2007 and 2008 Impalas <u>operated as police vehicles; and</u>

    vi.   failed to honor its warranties with Plaintiff and the putative class, by failing to correct the manufacturing defect in their vehicles

## **JURSIDICTION**

7.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, as the claims alleged herein are asserted on behalf of a class of all persons in the United States who purchased model year 2007 and 2008 Chevrolet Impalas.

8.    Venue is proper in this district because Defendant is headquartered in the District and many of GM's actions or decisions relating to the defective Impalas took place in this District.

## THE PARTIES

9.     Plaintiff Donna M. Trusky is a retail consumer residing at 101 7th Street, Blakely, Pennsylvania, 18447.

10.    In February 2008, Plaintiff purchased a new Chevrolet Impala, VIN 2G1WT58N881214824, from Allan Hornbeck Chevrolet, an authorized dealer, located at 400 Main Street, Forest City, Pennsylvania, 18421.

11.    The Goodyear tires were separately warranted by Goodyear to be free of defects in materials, workmanship and design.

12.    Defendant GM is a Delaware corporation headquartered in this District and with its principal executive offices located at 300 Renaissance Center, Detroit, Michigan, 48243.  GM designs, tests, manufactures, distributes, sells or leases Chevrolets throughout the United States.

13.    GM conducts business throughout Michigan and the United States.

## CLASS ALLEGATIONS

14.    Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of herself and all others similarly situated, comprising a class consisting of "all persons in the United States who purchased or leased a model year 2007 and 2008 Chevrolet Impala (the "Class")."

15.    Plaintiff is a member of the Class.

16.    Excluded from the Class are judicial personnel involved in considering the claims herein, all persons and entities with claims for personal injury, the defendant, any entities in which the defendant has a controlling interest, and all of their legal representatives, heirs and successors.

17.    It is estimated that the Class consists of thousands of persons throughout the continental United States.  The members of the Class are so numerous that joinder of all members, whether otherwise required or permitted, is impracticable.  The exact number of Class members is presently unknown to Plaintiff, but can easily be ascertained from the sales and warranty claim records of Defendant. Approximately 197,000 model year 2007 Impalas and approximately 226,000 model year 2008 Impalas were sold.

18.    These are numerous questions of law or fact common to the members of the Class, which predominate over any questions affecting only individual members and which make class certification appropriate in this case, including:

a.    Whether all Class members' 2007 and 2008 Impalas had rear spindle rods that are defective;

b.    Whether GM failed to repair or replace the defective rear spindle rods during the warranty period for all Class members;

c.    Whether all Class members' 2007 and 2007 Impalas suffered from a defective spindle rod thus violation GM's breach of its express warranty;

d.    Whether Defendant improperly concealed the defect from class members;

e.    Whether Defendant has breached its warranties with Plaintiff and members of the putative class, by selling cars with defective suspension systems and failing to correct the defect, which manifest during the warranties' durational terms.

19.    The claims asserted by the named Plaintiff are typical of the claims of the members of the Class.

20.   This class action satisfies the criteria set forth in Fed. R. Civ. P. 23(a) and 23(b)(3) in that Plaintiff is a member of the Class; Plaintiff will fairly and adequately protect the interests of the members of the Class; Plaintiff's interests are coincident with and not antagonistic to those of the Class; Plaintiff has retained attorneys experienced in class and complex litigation; and Plaintiff has, through her counsel, access to adequate financial recourses to assure that the interests of the Class are adequately protected.

21.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy because, among other reasons, it is economically impractical for most members of the Class to prosecute separate, individual actions.

22.   Litigation of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to the individual Class members which would substantially impair or impede the ability of other Class members to protect their interests.

23.   Class certification is also appropriate because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate declaratory and/or injunctive relief with respect to the claims of Plaintiff and the Class members.

## **FACTUAL BACKROUND**

24.   Plaintiffs incorporate by reference all preceding paragraphs.

25.   Defendant, or its predecessor in interest, sold model year 2007 and 2008 Chevrolet Impalas throughout the United States which were delivered with

defective rear spindle rods. The defective rear spindle rods have caused rear wheel misalignment and subsequent premature and abnormal tire wear including lower tread depth on the inboard side of the rear tires.

26.   In June and July 2008, Defendant issued Program Bulletins to its dealers numbered 08032 and 08032A pursuant to its customer satisfaction program. A copy of the latter Bulletin is attached as "Exhibit 1" hereto and is hereinafter referred to as "Bulletin 08032A."

27.   The subject line of bulletin 08032A reads "Uneven Police Car Rear Tire Wear – Replace Rear Spindle Rods" which covers model year 2007 and 2008 Chevrolet Impalas equipped with the Police Package. Under the heading "Condition" the bulletin reads, "On certain 2007-2008 model year Chevrolet Impala vehicles equipped with a police package (RPG9C1/9C3), the rear wheel spindle rods cause rear wheel misalignment, resulting in lower tread depth on the inboard side of the rear tire".

28.   To remedy the defect in the cars subject to Bulletin 08032A, "Dealers are to replace the rear wheel spindle rods, align the rear wheels, and if necessary, replace the rear tires (only) that exhibit lower tread depth on the inboard side. If the tires have already been replaced due to this condition, the customer may request reimbursement for the replacement tires until July 31, 2009".

29.   Bulletin 08032A only applied to police vehicles. However, the issues affecting the cars subject to Bulletin 08032A are the same as those affecting members of the Class. The defective rear spindle rods on the cars subject to Bulletin 08032A are the same as those in cars purchased by members of the Class.

30.     In February, 2008, Plaintiff purchased a new Chevrolet Impala equipped with Goodyear tires as part of the original equipment on the car.  Within the first year of ownership and within 6000 miles of travel, the Goodyear tires were unserviceable, as the tread had worn so quickly on the tires that they had become questionable to use any further.

31.     Plaintiff raised the issue of premature tread wear on the tires with Allen Hornbeck Chevrolet, the dealer from whom Plaintiff had purchased the new car. Allen Hornbeck Chevrolet referred Plaintiff to Kost Tire, which replaced the rear tires and provided a front-end realignment. Allen Hornbeck paid for the replacement tires and realignment, but made no mention of any defect in the rear spindle rods, which caused the premature tire wear, nor was any work done to remedy the car free from future defects.

32.     On November 30, 2010 Plaintiff brought her car in for its annual inspection and was informed that the replacement rear tires were worn and would not pass inspection.  Plaintiff paid $289.77 for a set of rear replacement tires. At the time of inspection, the car had 24,240 miles on it.

33.     In connection with the delivery of the car Plaintiff purchased in February, 2008, Defendant, or General Motors Corporation, delivered to Plaintiff – as it also did for every member of the Class - a written warranty containing affirmations of fact as to the absence of defects in materials and workmanship, including design, and the durability and longevity of the rear spindle rods.  Further, Defendant, or General Motors Corporation, delivered to Plaintiff – as it also did for every

member of the Class - a written warranty in which it promised to repair or replace

warranted parts, including the rear spindle rods, during the warranty period.

34.    In particular, the written  affirmations and warranties stated as follows:

# Bumper-to-Bumper (Includes Tires)

- Coverage is for the first 3 years or 36,000 miles, whichever comes first.

## Powertrain

- Coverage is for 5 years or 100,000 miles, whichever comes first.

## Powertrain Coverage

The powertrain is covered for 5 years or 100,000 miles, whichever comes first, except for other coverages listed here under "What is Covered" and those items listed under "What is Not Covered" later in this section.

**Engine:** Cylinder head, block, timing gears, timing chain, timing cover, oil pump/oil pump housing, OHC carriers, valve covers, oil pan, seals, gaskets, turbocharger, supercharger and all internal lubricated parts as well as manifolds, flywheel, water pump, harmonic balancer and engine mount. Timing belts are covered until the first scheduled maintenance interval.

**Transmission/Transaxle/Transfer Case:** Case, all internal lubricated parts, torque converter, transfer case, transmission/transaxle mounts, seals, and gaskets.

**Drive Systems:** Final drive housing, all internal lubricated parts, axle shafts and bearings, constant velocity joints, axle housing, propeller shafts, universal joints, wheel bearings, locking hubs, front differential actuator, supports, front and rear hub bearings, seals and gaskets.

## Tire Coverage

The tires supplied with your vehicle are covered against defects in material or workmanship under the Bumper-to-Bumper coverage. Any tire replaced will continue to be warranted for the remaining portion of the Bumper-to-Bumper coverage period.

Following expiration of the Bumper-to-Bumper coverage, tires may continue to be covered under the tire manufacturer's warranty. Review the tire manufacturer's warranty booklet or consult the tire manufacturer distributor for specific details.

35.     Defendant, or General Motors Corporation, extended these warranties to all Class members.

36.     At the time of sale, Defendant or General Motors Corporation sold to plaintiff, as with all Class members, an Impala with defective rear spindle rods which failed during the warranty period.

37.     Plaintiff reasonably believes and avers that Defendant, based on the aforesaid recalls, had actual knowledge during their warranty periods that all Class members' vehicles had defective and failed rear spindle rods and that such defective and failed parts would cause failure and/or abnormal and/or premature wear of other parts and systems including wheel alignment and tires.

38.     Defendant failed to comply with the foregoing warranties with respect to the Plaintiff and all Class members. Among other things, Defendant failed to repair or replace the rear spindle rods during the warranty period; and failed to make such other repairs during the warranty period so that premature tire wear and misalignment will not occur.

39.    From the time of purchase of these vehicles by Class members to the present, the defective spindle rods have and will continue to cause real wheel misalignment and premature and abnormal tire wear.

40.    Defendant's refusal to comply with its warranty caused a failure of the essential purpose of the warranty, as that term is used in the Uniform Commercial Code, because Defendant has failed to replace the defective spindle rods with non-defective spindle rods.

41.    Defendant, or General Motors Corporation, failed to disclose at the time they marketed, warranted, sold or delivered the 2007 and 2008 model year Chevrolet Impalas to consumers that the defective spindle rods would cause the tires to be in misalignment resulting in premature tire wear, often requiring replacement tires within the first 10,000 miles of use.  Despite having knowledge of this premature wear problem, Defendant has not recalled the subject cars which has required affected Class members to pay the cost of fixing the defective spindle rods as well as for replacement tires and realignment.  In fact, many Class members have replaced their tires numerous times.

42.    Defendant concealed the existence of the defect from class members, even those who presented their vehicles for repair of the defect.

43.    As evidence by numerous postings on various internet sites, Class members have experienced similar problems with their vehicles.

a.    *January 25, 2010, 2007 Chevrolet Impala*: I am new to this forum but after reading ALOT of the posts here I feel that I am not alone here. The wife and I got a settlement and bought a 2007 Impala, from Keystone Chevrolet here in Tulsa, so that we wouldnt have to worry about having problems with the car. But after having the car for about 1 1/2 years we have replaced the rear tires at least 2 or 3 times, all because of the same

Case 0:12-cv-01593-JGK   Document 14   Filed 06/29/17   Page 12 of 21

problem. The inside 2 or 3 treads keep wearing out down to the cords. Keystone Chevrolet called us on the phone and told us it was time to bring the car in for regular service work, so I thought it would be a good time to have the problem resolved. I asked for the Supervisor of the Service Department to make sure there wouldnt be a problem with having the rear end aligned, since I found out there was a Technical Service Bulletin on the alignment needing to be done on this car when it comes right from the factory. But I was told that you can buy a brand new 2010 Chevy right now and after 12,000 miles there is nothing they can do with out having us pay for the work and/parts. Even if you get the car brand new and there is still the bumper to bumper warrenty on the car. I told the Supervisor there was a Technical Service Bulletin out on this car and I even gave him the TSB on this car and I was told that they cant do anything unless there was a REACLL on these cars. I really liked what I read on another forum that said it seems like Chevrolet isn't going to do anything for the common people like most of us here, but they would fix the cars with the Police Package on them for free. The person also went on to state that it was more of the common people like most of us on here that make up the sales of the Impalas and that a defect is a defect.
*http://townhall-talk.edmunds.com/direct/view/.f17777c/71*

b.  *March 10, 2010, 2008 Chevrolet Impala, 25,000 miles*: Had to replace 4 tires at 25,000 miles due to excessive inside wear. The dealer said not a GM problem. Had to replace, balance, and align. Never had that occur before on any new vehicle I purchased - at least not with the Ford's I owned.
*http://www.carcomplaints.com/Chevrolet/Impala/2008/wheels_hubs/premature_tire_wear.shtml*

c.  *August 27, 2010, 2008 Chevrolet Impala LTZ V6, 41,000 miles*: ok well at 18,000 miles had to replace my tires. i was told it was because the dealers put on cheap tires to sell the cars and the next set i bought would last way longer than i had to worry about since i leased. well at 41,000 miles again new tires with only 6 months to go on my lease. the wear was so extensive the tires were unsafe..the inside was worn to bare metal showing yet the rest of the tire was fine.... i was told that it is a supension problem and chevy is aware of it.... just to expensive to have a recall...sssoooo that makes th 3rd set of tires in 41,000 miles.. this is the first chevy impala i have owned ...... was completely satisfied with my pontiacs... well i never liked this car from the begining and i will not but another one...just waiting for my lease to run out and i will try a ford this time.. so beware of unsafe wear on your inside (hard to see} of your tires.. take a good look before you trust your family lives ...
*http://www.carcomplaints.com/Chevrolet/Impala/2008/wheels_hubs/premature_tire_wear.shtml*

    d.     *November 1, 2010, 2008 Chevrolet Impala SS*: I believe that there is a greater issue with the 2008 Impala's. I have had to replace my rear tires because they wore completely out in the inside. I have been searching online and it looks like there is a camber issue with these cars. GM needs to look at a possible recall. I was quoted $45 a tire to adjust the camber on my 08 Impala SS by Firestone, but then they stated it would be $500 because they needed some kit. I cannot do this so I had to buy the 2 back tires ($415 for the cheapest ones) and wait. I do have an appointment with the dealership tomorrow. We will see what happens...
*http://townhall-talk.edmunds.com/direct/view/.f17777c/81*

    e.     *February 22, 2011, 2008 Chevrolet Impala*: Purchased new 2008 impala, had to replace tires at 35000. Always rotated and balanced and kept proper pressures. Now at 56000 and am being told by chevy 1800.00 to repair rear alignment. Car is driven 99% on the interstate. Again need new tires whats up??? chevy denies any problems but the web is full of issues surrounding this. Is there no other recourse????
*http://www.aboutautomobile.com/Complaint/2008/Chevrolet/Impala/Rear
+Suspension*

    f.     *July 4, 2010, Chevrolet Impala*: Severe inner surface tire wear on rear wheels of 2007-2008 chevrolet impala vehicles. Technical service bulletin 08032 is on file with general motors, acknowledging the problem, but willing only to pay for necessary repairs to police vehicles, when in fact the flaw exists with all 2007-2008 impala vehicles. We purchased the car as a demo model in 2009 and were not made aware of the problem. We believe the dealer was honest, and also not aware of the problem at the time. We believe this to be a safety issue as well, since handling on wet roads is effected due to the fact the rear tires are contacting the road surface only on 1-2" of the inside surface of the tires.
*http://www.aboutautomobile.com/Complaint/2008/Chevrolet/Impala/Rear
+Suspension*

    g.     *June 16, 2010, Chevrolet Impala*: Had to replace rear driver's tire at 17,000 miles due to wear down to the metal. Took the vehicle into the dealer to check wheel alignment and found the rear so misaligned that the adjustment struts had to be elongated. Spoke with GM customer service rep and was told this was not a Warranty issue.
*http://www.aboutautomobile.com/Complaint/2008/Chevrolet/Impala/Rear
+Suspension*

    h.     *May 28, 1010, 2008 Chevrolet Impala*: I own a 2008 chevy impala which I had new tires installed. I also had an alignment done. At my first tire rotation (6000 miles) I was told of excessive wear on the inside of the rear tires. The wear is very obvious. The tires are a 60,000 mile tire(uniroyal)

after contacting the place that aligned my wheels.(ase certified) they did some investigating during which they found GM recalled "police package" vehicles with vin#s falling in a specified range. Which my car also falls in this range. They had defective spindle rods in them, however as a consumer and not a "police" vehicle GM tells me I am responsible for having the proper work done to have my car fixed. Upon searching myself I have found numerous "consumer" complaints regarding premature tire wear on these vehicles. I see this as a considerable safety concern that the manufacturer should be held accountable for regardless of whether it is a civilian or police vehicle.
*http://www.aboutautomobile.com/Complaint/2008/Chevrolet/Impala/Rear+Suspension*

i.  *March 8, 2010, 2008 Chevrolet Impala*: On 2008 chevy impala, the insides of all four tires were worn to the cord. The tires had been rotated regularly. The car was returned to the dealer who claimed the tires had not been rotated and that he had never heard of any defect.. We printed information from this website showing that this problem had been reported several times. The dealer still denied any defect even though one of the workers said he had replaced tires with the same problem.
*http://www.aboutautomobile.com/Complaint/2008/Chevrolet/Impala/Rear+Suspension*

j.  *March 22, 2011, 2007 Chevrolet Impala*: CAR PURCHASED USED WITH NEW TIRES IN MARCH OF 2009. IN APRIL OF 2010 REAR TIRES HAD SEVERE WEAR ON INSIDE TREAD THAT CAUSED BELTS TO SHOW. FOUR NEW TIRES WERE INSTALLED AND A FOUR WHEEL ALIGNMENT WAS DONE. 11 MONTHS LATER REAR TIRES SHOWED THE SAME WEAR, INSIDE OF TIRE. WAS TOLD THERE WAS A SAFETY BULLETIN FROM GM BUT DIDN'T COVER MY CAR SINCE IT WAS NOT A POLICE VERSION. WAS TOLD BY DEALERSHIP THAT GM KNOWS ABOUT THIS PROBLEM AND HAS COME OUT WITH A CAMBER KIT TO FIX PROBLEM BUT I HAD TO PURCHASE IT AND HAVE IT INSTALLED. WHEN ASKED WHY IF IT WAS A MANUFACTURE DEFECT WITH THE VEHICLE CAUSING PREMATURE TIRE WEAR I WAS HAVING TO PAY FOR IT WAS BRUSHED OFF. CALLED CHEVROLET AND FILED A FORMAL COMPLAINT REGARDING THE MATTER AND WAS TOLD THAT IT WAS A MAINTENANCE ISSUE AND I WOULD HAVE TO PAY FOR THE REPAIR. CHEVY KNOWS THAT THERE IS A PROBLEM WITH THIS VEHICLE AND REFUSES TO TAKE RESPONSIBILITY TO REPAIR/FIX PROBLEM AND IS INSTEAD PUSHING THIS OFF ON THE CONSUMER. EXCESSIVE TIRE WEAR IS A SAFETY PROBLEM AND I GUESS PEOPLE HAVE TO DIE FOR ACTION TO BE TAKEN. *http://www-odi.nhtsa.dot.gov/complaints/results.cfm*

14

k.    *November 1, 2010, 2007 Chevrolet Impala, 32,000 miles*: TL*THE CONTACT OWNS A 2007 CHEVROLET IMPALA LT. THE CONTACT STATED THAT WHEN SHE INSPECTED HER VEHICLE SHE NOTICED THAT ALL FOUR TIRES WERE WORN EXCESSIVELY ON THE INSIDE TO THE POINT WHERE THE TREAD WAS VISIBLE. THE VEHICLE WAS NOT INSPECTED NOR HAD IT BEEN REPAIRED. THE DEALER INFORMED HER THAT SHE SHOULD CONSIDER AN ALIGNMENT AND FOUR NEW TIRES. THE FAILURE MILEAGE WAS APPROXIMATELY 32,000.
*http://www-odi.nhtsa.dot.gov/complaints/results.cfm*

l.    *December 1, 2010, 2007 Chevrolet Impala*: GM 2007 CHEVROLET IMPALA LT2 - GOODYEAR INTEGRITY TIRES VEHICLE MANUFACTURING DETECT CAUSES TIRE CUPPING, UNEVEN TIRE WEAR AND PREMATURE TIRE WEAR OUT. POSSIBLE TIRE FAILURE WHILE DRIVING IF NOT DETECTED. TIRES RATED FOR 50,000 MILES FAILED AT 28,000. 30 JUNE 2007 - 205 MILES: PURCHASED NEW GM 2007 CHEVROLET IMPALA LT2 - GOODYEAR INTEGRITY TIRES 05 FEB 2008 - 7,094 MILES: DEALER ROTATED TIRES - ALL TIRES TREAD GREATER THAN 8/32. 26 DEC 2008 - 14,449 MILES: DEALER ROTATED TIRES - ALL TIRES TREAD GREATER THAN 8/32. 15 JUN 2009- 18,106 MILES: DEALER ROTATED TIRES - ALL TIRES TREAD GREATER THAN 8/32. 25 MAY 2010 - 23,812 MILES: DEALER ROTATED TIRES - ALL TIRES TREAD GREATER THAN 6/32. 01 DEC 2010 - 28,517 MILES: LUBE SHOP ROTATED TIRES - ALL TIRES BADLY CUPPED ON INSIDE TREAD. TIRES WORN OUT AND UNSAFE, MUST BE REPLACED ASAP.STEEL BELTS WILL START TO SHOW. ALL TIRES TREAD LESS THAN 2/32. 23 DEC 2010 - 28,788 MILES: DEALER - AFTER ESCALATION TO SERVICE MANAGER. REAR STRUT BOLT HOLE REQUIRES ELONGATION TO ALLOW PROPER WHEEL ALIGNMENT. UNDER WARRANTY, ELONGATED REAR STRUT BOLT HOLE, REPLACED WITH 4 NEW TIRES, COMPLETE 4 WHEEL ALIGNMENT. *TR
*http://www-odi.nhtsa.dot.gov/complaints/results.cfm*

m.    *March 7, 2011, 2008 Chevrolet Impala*: VEHICLE WON'T HOLD ALLIGNMENT AND WHEN IT DOES IT'S STILL WEARING OUT THE REAR TIRES AT A RATE 1/32 PER 1000 MILES, IT WORE OUT THE REAR TIRES IN 6000 MILES JUST LUCKY THAT I LOOKED AT THEM WHEN I DID. THE VEHICLE HAS 45000 MILES ON IT AND THIS IS THE SECOND SET OF TIRES IN 6000 MILES
*http://www-odi.nhtsa.dot.gov/complaints/results.cfm*

n. *October 15, 2010, 2008 Chevrolet Impala*: SEVERE TIRE WEAR. 2008 CHEVY IMPALA WITH GOODYEAR INTEGRITY TIRES. HAD TO HAVE ALL FOUR TIRES REPLACED AT 33,000 MILES, MIND YOU THESE ARE 50,000 MILES TIRES THAT HAVE BEEN ROTATED AND KEPT AT THE RECOMMENDED PSI. THEY ARE SEVERELY WORN ON THE INNER AND OUTER EDGES AND CAN SEE THE WEAR BARS. WAS TOLD BY THE DEALERSHIP THAT THE TIRES TO BEGIN WITH ARE JUNK! I HAD NO CHOICE BUT TO REPLACE THEM BEING THAT THIS CAR IS A LEASE AND ONLY HAVE 4 MONTHS LEFT WITH IT TILL THE TURN IN DATE. THE UNNAMED TIRE STORE TOLD ME THAT I NEED AN ALIGNMENT BUT THE DEALERSHIP THAT MY CAR GOES TO NEVER SAID ANYTHING ABOUT NEEDING THE ALIGNMENT. *TR
*http://www-odi.nhtsa.dot.gov/complaints/results.cfm*

o. *June 28, 2010, 2008 Chevrolet Impala:* NOTICED ABNORMAL AND EXCESSIVE TIRE FEATHERING. HAD RESEARCHED AND FOUND PREVIOUS TO MY OWN EXPERIENCE THAT OTHERS HAD THE SAME PROBLEM, SO I HAD BEEN MONITORING MY OWN TIRES TO SEE IF IT WAS A DESIGN FLAW. ONE MECHANIC TOLD ME AFTER I PURCHASE 4 NEW TIRES, WHICH ONLY HAVE 34,000 MILES ON A 50,000 MILE RATING, HE WOULD TRY AN ALIGNMENT TO SEE IF IT NEED FOUR NEW STRUTS AS HE WAS ASSUMING WAS THE MAIN PROBLEM BEHIND THE TIRE WEAR. I CALLED A LOCAL GM SERVICE CENTER TO SEE IF THEY HAD SUGGESTIONS FOR ME. THE GUY TOLD ME 4 NEW TIRES AND THE FEW OTHERS WE HAVE SERVICED WITH THE SAME PROBLEM, AN ADJUSTMENT HAD TO BE MADE BY ELONGATING THE HOLES TO PULL THE TIRES INTO A GOOD ALIGNMENT, ELIMINATING THE OUTWARD CAMBER. HE FOUND THIS INFO IN A TECHNICAL SERVICE BULLETIN. GM HAS RECALLED PUBLIC SERVICE VEHICLES, IE POLICE CARS, OF THE SAME MAKE AND MODEL, BUT HAS YET TO SEE THE PUBLIC SAFETY HAZARD BEHIND THIS EASILY REMEDIED ISSUE. I WAS TOLD IT WOULD COST ME AT-LEAST $700 FOR PREMATURELY WORN TIRES AND REPAIRS AND ADJUSTMENTS. IMAGINE IF I HAD BEEN AWARE OF THIS PREVIOUS TO MY OWN INCIDENT. I WOULD ASSUME I STILL HAD 15-20000 MILES OF TREAD-LIFE LEFT AND WOULD BE DRIVING MY CAR AS IF THERE WERE NO PROBLEM AT-ALL UNTIL MY TIRES BLEW WHILE DRIVING MY SON BACK TO HIS MOTHERS HOUSE, CAUSING AN ACCIDENT, KILLING MY SON AND I AS WELL AS TWO OTHERS IN ANOTHER VEHICLE. THERE-IN LAYS THE SAFETY ISSUE. A PROMPT AND THOROUGH INVESTIGATION WILL SHOW IT'S A DESIGN FLAW THAT IS PUTTING LIVES AT RISK. THE SOONER THE DEFECT IS

CORRECTED, THE SOONER PEOPLES LIVES AND WALLETS CAN REST AT EASE. I WOULD CERTAINLY BE WILLING TO ANSWER ANY OTHER QUESTIONS REGARDING THIS ISSUE. *TR
*http://www-odi.nhtsa.dot.gov/complaints/results.cfm*

p.    *February 6, 2010, 2008 Chevrolet Impala LTZ:* 2008 IMPALA LTZ THAT I PURCHASED FROM BILL CRAMER MOTORS IN DONALSONVILLE, GEORGIA ON 10/29/2009. ON 2/6/2010 I HAD A TIRE BLOW OUT IN BAINBRIDGE, GEORGIA NEARLY CAUSING A CRASH. AFTER CHANGING MY TIRE, AND RETURNING HOME I DISCOVERED THAT BOTH REAR TIRES WERE WORN DOWN TO THE BELT ON THE INSIDE. AFTER DOING SOME RESEARCH ON THIS ISSUE, I DISCOVERED THAT THIS IS A VERY COMMON ISSUE IN THE LATE MODEL IMPALA¿S. I CALLED THE SHOP TODAY (2/8/2010), AND THEY ADVISED ME THAT THEY ARE UNAWARE OF THIS ISSUE. I ALSO CALLED SOLOMON CHEVROLET IN DOTHAN, ALABAMA (1-866-646-6175). THEY ADVISED ME THAT THEY ARE VERY FAMILIAR WITH THIS ISSUE, AND THAT IT NEEDED A REAR CAMBER BOLT KIT AND A REALIGNMENT TO FIX THIS ISSUE. THE PARTS AND LABOR FOR THE KIT WERE ESTIMATED @ $200.00 AND THE ALIGNMENT @ $70.00. I WOULD ALSO LIKE TO NOTE THAT MY CAR IS STILL UNDER THE 12,000 MILE CERTIFIED WARRANTY. MY CAR HAD 34,861 MILE ON IT WHEN I PURCHASED IT, AND NOW IT ONLY HAS 45,690 MILES ON IT. SO I HAVE PUT A TOTAL OF 10,829 MILES ON IT. THE TIRES THAT ARE ON MY CAR WERE BRAND NEW WHEN I PURCHASED IT. THERE IS NO WAY POSSIBLE THAT I SHOULD HAVE TO BE REPLACING 2 WORN OUT TIRES WITHIN 10,829 MILES¿. THIS IS UNHEARD OF¿ *TR
*http://www-odi.nhtsa.dot.gov/complaints/results.cfm*

44.    At all relevant times, Defendant, or General Motors Corporation, controlled the design, manufacture, marketing, lease and sale of model year 2007 & 2008 Chevrolet Impalas.

45.    The Owner's Manual provided to consumers failed to disclose the defect in the 2007 & 2008 model year Chevrolet Impalas.

46.    Defendant has not adequately informed the Class about the defective spindle rods which increased cost, servicing requirements and duration and longevity

17

limitations of the 2007 & 2008 model year Chevrolet Impalas, including the premature and abnormal wear characteristics of the tires.

47.    Defendant knew, or should have known, that the design, materials and workmanship utilized for the rear wheel spindle rods were defective, would fail during the warranty period, and were prone to cause rear wheel misalignment resulting in lower tread depth on the inboard side of the rear tire.

48.    Under the Michigan Uniform Commercial Code, MCL 440.2725, an "action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than 1 year but may not extend it." "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach.  A breach of warranty occurs when tender of delivery is made, except that where a warrant explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."

49.    Class members exercising due diligence were unable to discover the nonconformity of the rear wheel spindle rods resulting in premature tire wear and the injury because Defendant did not disclose the premature and abnormal wear characteristics and injury when the vehicles were delivered or brought in for service.

50.    Defendant also breached its express warranties, as the model year 2007 and 2008 Chevrolet Impalas do not have the characteristics, uses and benefits portrayed by

Defendant, and Defendant has failed to repair the rear wheel spindle rods in accordance with the express promises of their written warranties.

## COUNT I – BREACH OF EXPRESS WARRANTY

51.    Plaintiff incorporates by reference all preceding paragraphs.

52.    GM has breached its express warranties to Plaintiff and all other Class members to repair and/or replace the rear wheel spindle rods.

53.    GM's breach of warranties proximately caused damages to Plaintiff and members of the Class.

WHEREFORE, Plaintiffs, individually and on behalf of all Class members, request judgment in their favor and against Defendant, and request the following relief:

a.    certification of the Plaintiff class, the appointment of Plaintiff as class representative, and the appointment of Plaintiff's counsel as class counsel;

b.    compensatory damages for the Class to be determined at trial, together with interest, costs attorneys' fees;

c.    exemplary damages;

d.    injunctive relief enjoining the Defendant from engaging in the unlawful conduct described herein; and

e.    such other relief as may be just, necessary or appropriate.

## COUNT II– INJUNCTIVE AND DECLARATORY RELIEF

54.    Plaintiff incorporates by reference all preceding paragraphs.

55.    GM has jeopardized the safety and security of Plaintiff and the Class and will put them at an increased risk of personal injury and harm.

56.    Plaintiff and the Class will suffer irreparable harm, which may soon be immediate in nature, if GM does not provide them with repairs or replacements of the rear wheel spindle rods.

57.    Plaintiff and the Class lack an adequate remedy at law to compel GM to continue to provide them with functional rear wheel spindle rods.  Plaintiff and the Class cannot obtain such relief from other sources.

58.    Plaintiff and the Class are entitled to injunctive and declaratory relief to compel GM to provide them with or repair and/or replacement of the defective rear wheel spindle rods.


WHEREFORE, Plaintiffs, individually and on behalf of all Class members, request judgment in their favor and against Defendant, and request the following relief:

a.    certification of the Plaintiff class, the appointment of Plaintiff as class representative, and the appointment of Plaintiff's counsel as class counsel;

b.    compensatory damages for the Class to be determined at trial, together with interest, costs attorneys' fees;

c.    exemplary damages;

d.    injunctive relief enjoining the Defendant from engaging in the unlawful conduct described herein; and

e.    such other relief as may be just, necessary or appropriate.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Respectfully submitted,

Dated:  June 29, 2011        By:    _/s/ David H. Fink_____
                                     David Fink (P28235)
                                     Darryl Bressack (P67820)

**FINK + ASSOCIATES LAW**
100 West Long Lake Rd., Suite 111
Bloomfield Hills, Michigan 48304
Phone:     (248) 971-2500
Fax:       (248) 971-2600
dfink@finkandassociateslaw.com

Marc H. Edelson
**EDELSON & ASSOCIATES, LLC**
45 West Court Street
Doylestown, PA 18901
Phone:     (215) 230-8043
Fax:       (215) 230-8735

Jeffrey L. Kodroff
John A. Macoretta
**SPECTOR, ROSEMAN & KODROFF & WILLIS, PC**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Phone:     (215) 496-0300
Fax:       (215) 496-6611

Ronald Jay Smolow
3 Three Ponds Lane
Newtown, PA 18940
Phone:     (215) 579-1111
Fax:       (215) 579-7949

*Attorneys for the Plaintiff and the Class*