# EXHIBIT 1

**Appendix of Unpublished Opinions**

2006 WL 2739642
Only the Westlaw citation is currently available.
United States District Court,
D. New Jersey.

Everett ABRAMS, Plaintiff,

v.

GENERAL NUTRITION
COMPANIES, INC., Defendant.

Civil Action No. 06-1820 (MLC). | Sept. 25, 2006.

**Attorneys and Law Firms**

Craig S. Hilliard, Stark & Stark, PC, Princeton, NJ, for Plaintiff.

James V. Marks, Holland & Knight LLP, New York, NY, for Defendant.

**Opinion**

## MEMORANDUM OPINION

COOPER, District Judge.

**\*1** Plaintiff, Everett Abrams ("Abrams"), seeks to certify a class and obtain damages on behalf of himself and others similarly-situated who purchased certain nutritional supplements from defendant, General Nutrition Companies, Inc. ("GNC"), including supplements manufactured and distributed by MuscleTech Research and Development, Inc. and its affiliated entities ("MuscleTech"). (GNC Transfer Br., at 4.) GNC moves to transfer this action to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §§ ("Sections") 1404, 1409, and 1412. (Dkt. entry no. 2.) Abrams, however, cross-moves to remand this action to the New Jersey Superior Court (the "state court") from which it was removed. (Dkt. entry no. 7.) For the reasons stated herein, the Court will (1) grant the motion to transfer, and (2) deny the cross motion to remand.

### BACKGROUND

Abrams commenced this action against GNC in the state court on December 20, 2002. (GNC Transfer Br., at 2.) Abrams alleges that GNC marketed and sold products containing one or more steroid hormones ("Steroid Hormone Products"), including products manufactured by MuscleTech, which were deceptively marketed as effective to promote muscle growth. (Marks Decl., Ex. 1, at ¶ 31.) Abrams further alleges that GNC knew the Steroid Hormone Products did not produce the desired effect of increasing muscle growth and strength, and that if they did produce such desired effect they would be illegal anabolic steroids, but continued to sell them to consumers without providing any qualifying information. (*Id.* at ¶¶ 40-42.) Abrams contends that GNC's misrepresentations, omissions and deceptive trade practices constitute violations of the New Jersey Consumer Fraud Act, and thus, Abrams and those similarly situated are entitled to actual and treble damages, as well as attorneys' fees and costs. (*Id.* at ¶¶ 61-69.) The original complaint named the manufacturers of the Steroid Hormone Products, including MuscleTech, as defendants, but the state court granted GNC's motion to sever the claims against it. (Abrams Br., at ¶ 1.)

The purchase order form GNC used to purchase MuscleTech products for sale in its stores contains an indemnity clause. (GNC Transfer Br., at 2.) The indemnity clause provides:

> The Seller agrees to indemnify the Buyer from and against all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the products or any litigation based thereon, and such indemnity shall survive acceptance of the goods and payment therefore by the Buyer.

(GNC Remand Br., Ex. A, at ¶ 12.) Accordingly, GNC asserts that MuscleTech is obligated to indemnify it for any liability it incurs in connection with this action. (GNC Transfer Br., at 2.)

MuscleTech filed a petition on January 18, 2006 under chapter 15 of the United States Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York. (*Id.* at 3.) Simultaneously, MuscleTech commenced a proceeding under Canada's Companies' Creditors Arrangement Act in Canada's Superior Court of Justice (the "CCAA proceeding"). (GNC Remand Br., at ¶ 4.) The bankruptcy case was subsequently removed to the United States District Court for the Southern District of New York (the "bankruptcy case") and assigned to Judge Jed S. Rakoff (case no. 06-538(JSR)). (GNC Transfer Br., at 3.) Also, on April 18, 2006, GNC removed this action from the state court to this Court asserting that this Court has jurisdiction over the matter because it is "related to" MuscleTech's bankruptcy case. (*Id.* at 2-3.) During the four years this action was pending in the state court, no class was

certified and discovery was not completed. (GNC Remand Br., at ¶ 29.)

 **\*2** Judge Rakoff issued an order in the bankruptcy case on January 18, 2006, staying prosecution of any products liability action against MuscleTech, GNC, and various other parties currently defendants in actions that could indirectly affect the MuscleTech bankruptcy case. (GNC Remand Br., at ¶ 15.) On March 2, 2006, Judge Rakoff issued an order clarifying the scope and extent of the stay, and directed MuscleTech's counsel to file a copy of that order in all products liability actions affected by the order, including this action. (Id. at ¶ 16; Marks Decl., Ex. 2.) Judge Rakoff issued several additional orders further extending the stay, most recently to November 10, 2006. (Case No. 06-538(JSR), dkt entry no. 114). Moreover, on March 3, 2006, the Canadian court in the CCAA proceeding issued an order (the "Proof of Claim Order") directing all persons holding products liability claims against "any of the Subject Parties" to file proofs of claim with the monitor appointed there. (GNC Remand Br., at ¶ 12.) The Proof of Claim Order defines "Subject Parties" as including both MuscleTech and GNC. (Id., Ex. B., at 7, Sch. A and Sch. C.) [1]

GNC now moves to transfer this action to the United States District Court for the Southern District of New York arguing, inter alia, that because this action is "related to" the MuscleTech bankruptcy case, transfer to the district where the bankruptcy case is pending would promote the interest of justice and convenience of the parties. (Dkt. entry no. 2.) GNC also filed motions seeking to transfer similar proceedings pending in Pennsylvania, Illinois, California, and Florida to the Southern District of New York. (GNC Transfer Br., at 4.) According to GNC, the plaintiffs in each of these actions (1) allege the same basic facts, (2) assert the same legal arguments, and (3) are represented by the same law firms, as Abrams. (GNC Remand Br., at ¶ 3.) Abrams, on the contrary, cross-moves to remand this action to the state court asserting that this Court cannot exercise jurisdiction. (Dkt. entry no. 7.)

### DISCUSSION

Abrams argues that this Court lacks bankruptcy jurisdiction over this action because MuscleTech is not a party here and the outcome will not affect the administration of MuscleTech's bankruptcy estate. (Abrams Br., at ¶ 3.) Thus, Abrams argues that this Court should remand this action to the state court due to lack of jurisdiction, or abstain from hearing the matter. (Id. at 1.) GNC contends that this Court can

properly exercise jurisdiction here because GNC's contractual right to be indemnified by MuscleTech is sufficient to deem this action "related to" MuscleTech's bankruptcy case. (GNC Remand Br., at ¶ 6.) GNC further contends that because this action is "related to" the bankruptcy case, it should be transferred to the Southern District of New York. (GNC Transfer Br., at 10.)

### I. Mandatory Remand for Lack of Bankruptcy Jurisdiction

### A. Legal Standards Governing Remand and Bankruptcy Jurisdiction

 **\*3** Section 1447(c) provides, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.... The State court may thereupon proceed with such case." 28 U.S.C. § 1447(c). When a motion for remand is filed, the removing party bears the burden of establishing the elements of subject matter jurisdiction. Russ v. Unum Life Ins. Co., No. 06-1308, 2006 U.S. Dist. LEXIS 50191, at *6 (D.N.J. July 11, 2006); see also Boyer v. Snap-On Tools Corp., 913 F.2d 108, 111 (3d Cir.1990) (noting that "a party who urges jurisdiction on a federal court bears the burden of proving that jurisdiction exists"). Further, the removal statutes "are to be strictly construed against removal and all doubts should be resolved in favor of remand." Boyer, 913 F.2d at 111.

A party may remove an action "to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 ." 28 U.S.C. § 1452(a). Section 1334 gives district courts (1) original and exclusive jurisdiction of all cases brought "under" a chapter of the Bankruptcy Code, (2) original but not exclusive jurisdiction of all civil proceedings "arising under" the Bankruptcy Code, and (3) original but not exclusive jurisdiction of all proceedings "arising in" or "related to" cases under the Bankruptcy Code. 28 U.S.C. § 1334(a) & (b). [2] "Arising under" refers to proceedings expressly created by the Bankruptcy Code. Steel Workers Pension Trust v. Citigroup, Inc., 295 B.R. 747, 750 (E.D.Pa.2003). "Arising in" refers to proceedings involving the administration of the bankruptcy estate. Id. However, a "related to" proceeding is one that exists outside of the bankruptcy process and does not invoke any substantive rights created by the Bankruptcy Code, but its outcome could conceivably affect the bankruptcy estate. Id.

The test for determining whether a federal court can exercise jurisdiction over a proceeding that is simply "related to" a bankruptcy case was originally set forth in *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984). [3] In *Pacor,* John and Louise Higgins ("Higgins") commenced a Pennsylvania state court action against a chemical supplies distributor, Pacor, Inc. ("Pacor"), for damages caused by Mr. Higgins's work-related exposure to asbestos supplied by Pacor. *Id.* at 986. Pacor impleaded the Johns-Manville Corporation ("Johns-Manville"), the original manufacturer of the asbestos. *Id.* Thereafter, Johns-Manville filed a chapter 11 bankruptcy petition in the United States Bankruptcy Court for the Southern District of New York. *Id.* As a result, Pacor simultaneously (1) removed the state court action to the United States Bankruptcy Court for the Eastern District of Pennsylvania, and (2) moved to transfer the action to the Southern District of New York where it could be joined with the Johns-Manville bankruptcy case. *Id.*

**\*4** The Eastern District of Pennsylvania bankruptcy court determined that Pacor's removal petition was untimely, and thus, remanded the case to state court. *Id.* On appeal, the district court stated that Pacor's removal petition was not time-barred, but concluded that Higgins's claims against Pacor were not "related to" the Johns-Manville bankruptcy case. *Id.* Therefore, because the district court determined that the bankruptcy court did not have jurisdiction to address Higgins's claims against Pacor, it remanded that portion of the case to the state court. *Id.* Pacor appealed. *Id.* at 987.

The Third Circuit, in addressing Pacor's appeal, stated, "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Id.* at 994. [4] However, the court noted that a bankruptcy court's jurisdiction over "related to" cases is not unlimited. *Id.* The court stated that the test for determining whether "related to" jurisdiction exists is "whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* The court explained that a proceeding does not necessarily have to be against the debtor or the debtor's property because "related to" jurisdiction exists if the proceeding could alter the debtor's rights or liabilities, or in any way impact the administration of the bankruptcy estate. *Id* . The court concluded that the primary action between Higgins and Pacor was not "related to" the Johns-Manville bankruptcy case, and therefore, the bankruptcy court could not exercise jurisdiction over that action. *Id.* at 995. The

court emphasized that even if the Higgins/Pacor dispute was resolved in favor of Higgins, the Johns-Manville bankruptcy estate would not be affected in any way until Pacor brought a subsequent action seeking indemnification from Johns-Manville. *Id.* The court distinguished those cases where "related to" jurisdiction was founded upon the defendant having an explicit indemnification agreement automatically creating liability for the bankruptcy debtor. *Id.* Thus, because Higgins's action against Pacor was not "related to" the Johns-Manville bankruptcy case, the court affirmed the district court's order remanding the action to state court. *Id.* at 996.

The Third Circuit clarified the test it set forth in *Pacor* in *In re Federal-Mogul Global, Inc.* 300 F.3d 368. In *Federal-Mogul,* thousands of individuals commenced personal injury and wrongful death actions in state courts against various manufacturers and distributors of friction products containing asbestos, including Federal-Mogul Global, Inc. ("Federal-Mogul"), as well as companies that manufactured and sold products containing these friction products. *Id.* at 372. After Federal-Mogul and its affiliates and subsidiaries filed chapter 11 bankruptcy petitions, the plaintiffs began severing or dismissing their claims against them. *Id.* at 372-73. Many of the remaining defendants removed the actions against them to the appropriate federal district court pursuant to Section 1452(a), arguing that these actions were "related to" Federal-Mogul's bankruptcy case. *Id.* at 373. Specifically, the defendants argued that they would be entitled to seek indemnification or contribution from Federal-Mogul if they were found liable because they had purchased some of the friction products at issue in their respective actions from Federal-Mogul. *Id.* The plaintiffs moved for remand in each of these actions. *Id.* at 373. While the motions were pending, many of these cases were transferred to the District of Delaware, which concluded that it lacked jurisdiction, and thus, remanded the cases to the state courts where they were originally commenced. *Id.* at 373-76. The defendants appealed the Delaware district court's order. *Id.* at 376.

**\*5** The Third Circuit noted, in addressing the appeal, that "Pacor clearly remains good law in this circuit." *Id.* at 381. The court further noted that the Supreme Court had both endorsed the *Pacor* test and acknowledged that nearly all of the courts of appeals have adopted it with little or no variation with the exception of the Second and Seventh Circuits, which adopted slightly different tests. *Id.* (citing *Celotex Corp. v. Edwards,* 514 U.S. 300, 308-09 (1995)). The court then stated, "[t]he test articulated in *Pacor* for whether a lawsuit could 'conceivably' have an effect on the bankruptcy proceeding inquires whether the allegedly related

Westlaw Next © 2012 Thomson Reuters. No claim to original U.S. Government Works.

lawsuit would affect the bankruptcy proceeding without the intervention of yet another lawsuit." *Id.* at 382. Thus, the court established that a right to indemnification from a bankruptcy debtor does not necessarily create "related to" bankruptcy jurisdiction. *Id.; see also Steel Workers Pension Trust,* 295 B.R. at 750 ("An indemnification agreement between a defendant and a non-party bankrupt debtor does not automatically supply the nexus necessary for the exercise of 'related to' jurisdiction. Only when the right to indemnification is clearly established and accrues upon the filing of the civil action is the proceeding related to the bankruptcy case.") Therefore, because any indemnification claims the defendants in the personal injury and wrongful death actions might have against Federal-Mogul had not yet accrued and would require additional actions, the court concluded that it could not exercise "related to" jurisdiction over those cases. *Id.*

*Pacor* established that not all indemnification agreements between a defendant in a personal injury or products liability action and a non-party bankruptcy debtor create a basis for a federal district court to exercise "related to" bankruptcy jurisdiction over a matter pursuant to Section 1334(b). *Steel Workers Pension Trust,* 295 B.R. at 753. The right to indemnification must accrue upon the bringing of the civil action for it to be considered "related to" the bankruptcy case. *Id.* at 750. Thus, a proceeding is sufficiently "related to" a bankruptcy case to establish jurisdiction when a party's right to indemnification from the bankruptcy debtor is express and is not contingent on the commencement of a separate action requiring additional fact-finding. *Id.* at 753; *see also In re Combustion Engr., Inc.,* 391 F.3d 190, 232 (3d Cir.2004) (concluding that "any indemnification claims against [the debtor] resulting from a shared production facility would require the intervention of another lawsuit to affect the bankruptcy estate, and thus cannot provide a basis for 'related to' jurisdiction"); *In re Allegheny Health,* 383 F.3d at 176 n. 7 (finding that "related to" bankruptcy jurisdiction existed over action by party seeking indemnity from a bankruptcy debtor because the indemnity claim had already matured).

### B. Federal Bankruptcy Jurisdiction Here

**\*6** This Court has "related to" bankruptcy jurisdiction over this action under the test articulated in *Pacor.* MuscleTech contractually agreed to indemnify GNC for "all liability, loss and damage including reasonable counsel's fees resulting from the sale or use of the [MuscleTech] products." (GNC Remand Br., Ex. A, at ¶ 12.) This language automatically creates liability for the MuscleTech bankruptcy estate if

Abrams prevails in his claims against GNC. Unlike in *Pacor,* there would be no need for a subsequent action seeking indemnification against MuscleTech before the bankruptcy estate would be affected. Therefore, this action is sufficiently "related to" the MuscleTech bankruptcy case to establish jurisdiction because GNC's right to indemnification from MuscleTech is not contingent upon the filing of an additional complaint, and thus, this action will affect the MuscleTech bankruptcy case if Abrams succeeds in proving his claims.

The orders Judge Rakoff issued staying prosecution of any products liability action against MuscleTech, GNC, and various other parties also indicate that resolution of this action and the other products liability actions against GNC currently pending in other jurisdictions will directly affect the MuscleTech bankruptcy case. (See GNC Remand Br., at ¶ 15.) Because MuscleTech is not a named defendant in these actions, the only plausible basis for staying the products liability actions against GNC is that any recovery the plaintiffs obtain against GNC will automatically increase MuscleTech's liabilities and reduce the amount available for distribution to MuscleTech's creditors. If it was necessary for GNC to bring separate actions seeking indemnity from MuscleTech, then it would be appropriate only for Judge Rakoff to stay those actions rather than the initial proceedings against GNC. Further, the Proof of Claim Order issued in the CCAA proceeding directs all persons holding products liability claims against "any of the Subject Parties", which includes GNC, to file proofs of claim against MuscleTech. (GNC Remand Br., at ¶ 12.) Accordingly, the Canadian court acknowledges that all parties that succeed in their products liability claims against GNC will indirectly receive payment on their claims from the MuscleTech bankruptcy estate in the same manner as creditors holding direct claims against MuscleTech or its affiliates. Thus, Judge Rakoff's stay orders and the Proof of Claim Order reflect that resolution of this action could automatically impact MuscleTech's bankruptcy case. Accordingly, this Court has "related to" bankruptcy jurisdiction over this action.

### II. Mandatory Abstention

Section 1334(c)(2) requires a district court to abstain if the action is (1) based on a state law claim or cause of action, (2) "related to" a case under the Bankruptcy Code, but does not "arise under" or "arise in" a case under the Bankruptcy Code [5], (3) one where federal courts would not have jurisdiction apart from bankruptcy jurisdiction, (4) commenced in a state forum with appropriate jurisdiction, and (5) one that can be timely adjudicated in a state forum. *Stoe*

*v. Flaherty*, 436 F.3d 209, 213 (3d Cir.2006). "On its face [Section 1334] mandates abstention in removed cases as well as those filed initially in federal court." *Id.*

**\*7** Abrams's claims against GNC arise under the New Jersey Consumer Fraud Act, and thus, are based solely on state law. Abrams commenced this action in a New Jersey state court that could appropriately exercise jurisdiction over his claims. Also, as discussed more fully above, this action is "related to" MuscleTech's bankruptcy case, but it does not "arise under" or "arise in" a case under the Bankruptcy Code. Therefore, requirements one, two and four above are met. However, the state court, by no fault of its own, was not able to timely adjudicate this action. After nearly three and a half years, no class was certified and discovery was not complete. (GNC Remand Br., at ¶ 29.) Moreover, although neither party has addressed whether any independent basis for federal jurisdiction exists, it appears diversity jurisdiction would also provide a basis. See 28 U.S.C. § 1332 (stating that district courts have jurisdiction over all actions involving citizens of different states where the amount in controversy exceeds $75,000). [6] GNC is a Pennsylvania corporation with its principal place of business in Pittsburgh (Marks Decl., Ex. 1, at ¶ 6.) Abrams, however, is a citizen of Burlington County, New Jersey. (Marks Decl., Ex. 1, at ¶ 8.) Assuming the amount in controversy exceeds $75,000, which appears likely, it is plausible that this action could have been brought in federal court under Section 1332. Therefore, the third and fifth requirements for mandatory abstention have not been met.

### III. Discretionary Abstention and Equitable Remand

Section 1334(c) provides:

> [e]xcept with respect to a case under [chapter 15 of the Bankruptcy Code], nothing in this section prevents a district court in the interest of justice or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under ... or arising in or related to a case under [the Bankruptcy Code].

28 U.S.C. § 1334(c)(1). Thus, Section 1334(c)(1) gives this Court discretion to abstain from hearing an action that is "related to" a bankruptcy case. *See Jazz Photo Corp. v. Dreier LLP,* No. 05-5198, 2005 U.S. Dist. LEXIS 36396, at *19-*20 (D.N.J. Dec. 23, 2005) (discussing permissive abstention provision of Section 1334 and listing factors for deciding whether to exercise discretionary abstention). The

only exception to this Court's ability to exercise discretionary abstention is that it cannot abstain from hearing a case "under" chapter 15 of the Bankruptcy Code. 28 U.S.C. § 1334(c)(1); 15 Collier on Bankruptcy ¶ 3.05[1] (15th ed. rev.2006). Although MuscleTech filed a chapter 15 bankruptcy petition, as discussed above, this action is only "related to", not "under" that bankruptcy case. Accordingly, the chapter 15 exception to the discretionary abstention doctrine does not apply here.

A court to which a claim or cause of action is removed on the basis of bankruptcy jurisdiction "may remand such claim or cause of action on any equitable ground." 28 U.S.C. § 1452(b). Essentially the same considerations and standards are relevant in determining whether discretionary abstention under Section 1334(c) and equitable remand under Section 1452(b) are appropriate. *Jazz Photo Corp.,* 2005 U.S. Dist. LEXIS 36396, at *19; *Maintainco, Inc. v. Mitsubishi Caterpillar Forklift Am., Inc. (In re Mid-Atlantic Handling Sys., LLC),* 304 B.R. 111, 126 (Bankr.D.N.J.2003) (noting that the doctrines of discretionary abstention and equitable remand require a similar conclusion). There are a number of factors in deciding whether to exercise discretionary abstention and equitable remand, including (1) the effect on the administration of the bankruptcy estate, (2) the extent to which state law issues predominate the action, (3) the difficulty or unsettled nature of applicable state law, (4) comity with state courts, (5) the action's degree of relatedness to the main bankruptcy case, (6) the existence of a right to a jury trial, and (7) prejudice to the involuntarily removed parties. *Jazz Photo Corp.,* 2005 U.S. Dist. LEXIS 36396, at *20; *In re Mid-Atlantic Handling Sys., LLC,* 304 B.R. at 126. Both discretionary abstention and equitable remand are only appropriate to "a narrow sphere of cases." *Balcor/Morristown LP,* 181 B.R. at 793. The court will look to the "reality of the controversy, rather than base [a] decision on superficial features that appear to place it in one category or another." *Id.* at 794.

**\*8** This action has a direct relation to the bankruptcy case. If Abrams prevails against GNC, the judgment in his favor will create automatic liability for MuscleTech's bankruptcy estate. As previously discussed, GNC has an express contractual right to indemnification from MuscleTech for all liability arising from its sale of the MuscleTech products, which is not contingent and does not require proof of any additional facts. Thus, resolution of this action is directly related to MuscleTech's bankruptcy case and could directly affect administration of the bankruptcy estate.

Although state law issues clearly predominate this action, it does not involve any novel or difficult questions of state law that would be inappropriate for a federal court to address. *See Jazz Photo Corp.,* 2005 U.S. Dist. LEXIS 36396, at *20 (noting that state law issues dominated the malpractice action but the action did not involve any novel issues of state law); *see also Balcor/Morristown LP,* 181 B.R. at 793 (stating that "[t]he fact that a matter turns on state law cannot always control [because] [b]ankruptcy courts routinely hear matters of state law"). Moreover, this action was pending in state court for nearly three and a half years, yet no class was certified and discovery was not completed. (GNC Remand Br., at ¶ 29.) Thus, there is no indication that remand to state court would lead to a more efficient and expeditious conclusion to this matter, or that Abrams will be prejudiced if this action were to remain in federal court. Therefore, discretionary abstention or equitable remand is not appropriate in this case. [7]

## IV. Transfer

### A. Transfer Standard

A "proceeding arising under [the Bankruptcy Code] or arising in or related to a case under [the Bankruptcy Code] may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a). A district court may "transfer a case or proceeding under [the Bankruptcy Code] to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412. Although Section 1412 speaks only of proceedings "under" the Bankruptcy Code, it is also applicable for determining whether a proceeding "related to" a bankruptcy case may be transferred. *Mar. Elec. Co., Inc. v. United Jersey Bank,* No. 90-6057, 1992 U.S.App. LEXIS 5144, at *11-*12 (3d Cir. Mar. 24, 1992) (explaining that where a proceeding becomes "related to" a subsequently filed bankruptcy case, the proper method for transfer to the bankruptcy court is to seek a change of venue in the nonbankruptcy forum pursuant to Section 1412 first); *A.B. Real Estate, Inc. v. Bruno's, Inc. (In re Bruno's Inc.),* 227 B.R. 311, 323 (Bankr.N.D.Ala.1998) (concluding that Section 1412 governs transfer of "related to" bankruptcy proceedings because its language refers to the Bankruptcy Code while Section 1404 refers only to a "civil action"); *see also Howard Brown Co. v. Reliance Ins. Co.,* 66 B.R. 480, 482 (E.D.Pa.1986) (transferring proceeding "related to" a bankruptcy case pursuant to Section 1412). More generally, Section 1404(a) permits a district court "[f]or the convenience of parties and witnesses, in the interest of

justice" to transfer an action to another district "where it might have been brought." 28 U.S.C. § 1404(a). An action might have been brought in another district, if (1) venue is proper in the transferee district, and (2) the transferee district can exercise jurisdiction over all the parties. *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970). The movant bears the burden under Section 1412 or Section 1404 of demonstrating that transfer is warranted. *HLI Creditor Trust v. Keller Rigging Constr., Inc. (In re Hayes Lemmerz Int'l, Inc.),* 312 B.R. 44, 46 (Bankr.D.Del.2004). However, the final decision on whether to transfer is committed to the district court's discretion. *Larimi Ltd. v. Yes! Entm't Corp.,* 244 B.R. 56, 61 (D.N.J.2000).

 **\*9**  The determination of whether to transfer venue under Section 1412 or Section 1404 requires the same analysis. *In re Emerson Radio Corp.,* 52 F.3d 50, 55 (3d Cir.1995) ("[S]ection 1412 largely include[s] the same criteria for transfer of cases as section 1404(a), i.e., 'the interest of justice' or the 'convenience of the parties,' yet [it does] not include the limitation that a transfer may be made only to a district where the action might have been brought."); *Hechinger Liquidation Trust v. Fox (In re Hechinger Inv. Co. of Del., Inc.),* 296 B.R. 323, 325 (Bankr.D.Del.2003) ("A determination of whether to transfer venue under § 1412 turns on the same issues as a determination under § 1404(a)."). Additional factors to be considered when addressing a motion to transfer are: (1) the plaintiff's choice of forum; (2) the defendant's forum preference; (3) whether the underlying claim arose elsewhere; (4) the convenience of the parties based on their relative physical and financial condition; (5) the convenience of witnesses; (6) the location of books and records; (7) the enforceability of any judgment obtained by the plaintiff; (8) practical considerations that could make trial easy, expeditious, or inexpensive; (9) administrative difficulty resulting from court congestion; (10) local interest in deciding local controversies; (11) the public policies of each forum; and (12) the familiarity of the trial judge with applicable law. *Larami Ltd.,* 244 B.R. at 61 (citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879-880 (3d Cir.1995)); *In re Hechinger Inv. Co. of Del., Inc.,* 296 B.R. at 325. Generally, the district where the bankruptcy case is pending is the proper venue for all proceedings "related to" that bankruptcy case. *Howard Brown Co.,* 66 B.R. at 482.

### B. Transfer as Applied to this Case

Transfer of this action to the Southern District of New York is appropriate. Venue is proper there because: (1) that is the district where the MuscleTech bankruptcy case is pending;

and (2) this action is "related to" that bankruptcy case. See 28 U.S.C. § 1409(a); Howard Brown Co., 66 B.R. at 482. Moreover, transfer of this action to the Southern District of New York would be in the interest of justice. GNC's right to indemnification from MuscleTech is express and in no way contingent upon the commencement of an additional action. Thus, any recovery Abrams obtains against GNC will automatically increase MuscleTech's liabilities and reduce the amount available for distribution to MuscleTech's creditors. The Proof of Claim Order issued in the CCAA proceeding, which directs all persons holding products liability claims against GNC to file proofs of claim in MuscleTech's bankruptcy case, supports the conclusion that this action will impact MuscleTech's bankruptcy estate. (GNC Remand Br., at ¶ 12.) Allowing the court in the Southern District of New York to handle all matters affecting the MuscleTech bankruptcy estate would ultimately promote the efficient administration of the bankruptcy estate, and thus, the interest of justice.

**\*10** This Court also has already determined that this case will not be remanded to the state court, Abrams's chosen forum, and GNC seeks transfer to the Southern District of New York. Further, although Abrams's claims against GNC originated from GNC's marketing and sale of Steroid Hormone Products in New Jersey, GNC was engaging in the same allegedly unlawful acts and omissions across the United States; similar proceedings are currently pending in Pennsylvania, Illinois, California, and Florida. (GNC Remand Br., at ¶ 3.) Accordingly, the claims underlying this action did not arise exclusively in New Jersey.

Neither party has addressed whether court congestion in the Southern District of New York, strong local interest in deciding this matter, or any public policies of this district or the Southern District of New York weigh in favor of keeping this action in this district or transferring it. The familiarity of the trial judge with applicable law also does not weigh heavily for or against transfer, as district courts often interpret and apply state law and this case does not involve any novel or difficult applications of state law. Further, the close proximity of this Court to the Southern District of New York makes the location-of-books-and-records factor neutral, particularly

because most of GNC's books and records will be located at its principal office in Pittsburgh, Pennsylvania. *See Larami Ltd.,* 244 B.R. at 62 (noting that due to the close proximity of the District of New Jersey to the Bankruptcy Court for the District of Delaware, factors four, five and six do not suggest a preference for either district). Similarly, Abrams, a New Jersey resident, will not be significantly inconvenienced by transfer of this action to the Manhattan location of the Southern District of New York.

Practical considerations, however, indicate that transfer would make the resolution of this action more expeditious by eliminating any delays that would be caused by this Court needing to familiarize itself with the relevant facts and circumstances surrounding the sale of Steroid Hormone Products. Transfer of this case to the district where MuscleTech's bankruptcy case is pending would promote judicial efficiency by establishing one forum where all claims arising from the sale of MuscleTech products can be addressed. It will also enable the same court overseeing the MuscleTech bankruptcy case, which may already be familiar with the facts and circumstances surrounding its Steroid Hormone Products, to determine this action. Also, although no potential witnesses have been specifically identified by either party, it is likely that officers and employees of MuscleTech, the manufacturer of one of the steroid hormone products underlying Abrams's claims, could be called to testify in this matter. It would be more convenient for such potential witnesses if this action were pending in the same district where the MuscleTech bankruptcy case is currently pending. Therefore, balancing the various factors, this Court finds that the Southern District of New York is a more appropriate forum.

### CONCLUSION

**\*11** The Court, for the reasons stated *supra,* will (1) grant GNC's motion to transfer this action to the United States District Court for the Southern District of New York, and (2) deny Abrams's cross motion to remand this action to New Jersey Superior Court. The Court will issue an appropriate order and judgment.

Footnotes

1   Although the terms of the Proof of Claim Order permitted Abrams to do so, this Court is not aware of whether he filed a proof of claim in the CCAA proceeding.

2   District courts may provide that all cases "under" the Bankruptcy Code and all proceedings "arising under", "arising in" or "related to" cases under the Bankruptcy Code must be referred to the bankruptcy judges for that district. 28 U.S.C. § 157(a). Proceedings "arising under" the Bankruptcy Code or "arising in" a Bankruptcy Code case are considered core proceedings because they invoke

a substantive right provided by the Bankruptcy Code, or by their nature could arise only in the context of a bankruptcy case. *Copelin v. Spirco, Inc.,* 182 F.3d 174, 180 (3d Cir.1999); *see also* 28 U.S.C. § 157(b)(1). Section 157 provides a non-exhaustive list of core proceedings. 28 U.S.C. § 157(b)(2). Proceedings that are only "related to" a bankruptcy case are considered noncore proceedings. *Copelin,* 182 F.3d at 180. Bankruptcy courts can enter final judgments in core proceedings, subject to the district court's appellate review. *In re Allegheny Health, Educ. & Research Found.,* 383 F.3d 169, 175 (3d Cir.2004); *Copelin,* 182 F.3d at 179. On the contrary, in a noncore proceeding a bankruptcy court can only issue proposed findings of fact and conclusions of law to the district court unless the parties consent to the case being referred to the bankruptcy court. *In re Allegheny Health,* 383 F.3d at 175; *Copelin,* 182 F.3d at 179. The issue here is whether a district court can properly exercise bankruptcy jurisdiction over this action. Thus, the core/noncore distinction set forth in Section 157 and the case law interpreting Section 157 is not relevant. *See In re Allegheny Health,* 383 F.3d at 175 (explaining that whether a proceeding is core or noncore represents an entirely separate question from that of subject-matter jurisdiction).

3      This case appears to be overruled in part on other grounds. *See, e.g., In re Velocita Corp.,* 169 Fed.Appx. 712, 715 (3d Cir .2005) (noting that *Pacor* was overruled on other grounds by *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 134-35 (1995)). *But see In re Federal-Mogul, Inc.,* 300 F.3d 368, 381 (3d Cir.2002) (stating that "Pacor clearly remains good law in this circuit").

4      The *Pacor* court examined the predecessor to Section 1334(b), former Section 1471(b). *Id.* Former Section 1471(b) contained nearly identical language to Section 1334(b), except that it granted jurisdiction to bankruptcy courts rather than district courts over civil proceedings "arising under," or "arising in or related to" the Bankruptcy Code. Thus, the *Pacor* analysis is applicable to jurisdictional questions under Section 1334(b).

5      "Congress, by virtue of its use of the 'arising under' and 'arising in' language in section 1334(c)(2), incorporated the core/non-core distinction into the mandatory abstention test." *Balcor/Morristown LP v. Vector Whippany Assoc.,* 181 B.R. 781, 790 (D.N.J.1995).

6      This Court acknowledges that notice of removal of an action must be filed within thirty days of either service of the summons or the defendant's receipt of the complaint. *See* 28 U.S.C. § 1446(a). Thus, the time period for asserting removal of this action on the basis of Section 1332 has expired. Nevertheless, this Court will still consider whether jurisdiction under Section 1332 could have existed for purposes of determining whether mandatory abstention is appropriate.

7      This Court acknowledges that Abrams's request for a jury trial is one factor supporting remand. However, this Court concludes upon balancing the remaining factors, that permissive abstention and equitable remand are not appropriate here.

**End of Document**                                    © 2012 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 5224136
Only the Westlaw citation is currently available.
United States District Court,
C.D. California.

Rodolfo Fidel MENDOZA

v.

GENERAL MOTORS, LLC.

No. CV 10-2683 AHM (VBKx). | Dec. 15, 2010.

**Attorneys and Law Firms**

Dara Tabesh, Erotech Law Group PC, San Francisco, CA, Payam Shahian, Strategic Legal Practices, APC, Los Angeles, CA, Robert L. Starr, The Law Offices of Robert L. Starr, Woodland Hills, CA, for Plaintiff.

Gregory R. Oxford, Issacs Clouse Crose & Oxford LLP, Torrance, CA, for Defendant.

**Opinion**

A. HOWARD MATZ, District Judge.

*1 Stephen Montes Deputy Clerk

This case is before the court on defendant General Motors, LLC's ("New GM") motion to dismiss plaintiff Rodolfo Fidel Mendoza's ("Plaintiff") First Amended Complaint ("FAC") for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, to transfer this case under 28 U.S.C. section 1412 to the Southern District of New York for referral to the bankruptcy court. For the reasons set forth below, the Court GRANTS New GM's motion to transfer. [1]

**I. INTRODUCTION**

In July 2009, New GM acquired certain assets of General Motors Corporation ("Old GM") through an Amended and Restated Master Sale and Purchase Agreement ("Agreement") as part of Old GM's bankruptcy proceedings, attached as Exhibit 1 to Plaintiff's Request for Judicial Notice ("RJN"). [2] FAC ¶ 2. The United States Bankruptcy Court for the Southern District of New York approved the Agreement in an order issued on July 5, 2009 ("Order"), attached as Exhibit 2 to Plaintiff's RJN. Per the terms of the Agreement and Order, New GM did not assume Old GM's liabilities,

other than as specified in the "Assumed Liabilities" section of the Agreement. Agreement § 2.3.

On April 13, 2010, Plaintiff filed a putative class action in this Court naming New GM as a defendant. On July 15, 2010, Plaintiff filed the FAC, alleging one cause of action under the California Consumer Legal Remedies Act and two causes of action under the California Unfair Business Practices Act. Plaintiff's claims are based on New GM's alleged failure to disclose a water leak defect in Chevrolet Equinox and Pontiac Torrent sport utility vehicles manufactured by or for Old GM from 2005 through 2009. FAC ¶¶ 1, 3, 42. New GM asserts Plaintiffs claims are barred because the Agreement, as enforced by the Order, specifically excluded its assumption of the statutory liabilities asserted by Plaintiff. Memorandum of Points and Authorities in Support of Motion ("MPA in Support"). Not surprisingly, Plaintiff interprets its claims differently and contends that New GM did indeed assume the liabilities at issue. Plaintiff's Opposition ("Opp.") p. 4.

The bankruptcy court's Order approving the Agreement states:

> This Court retains exclusive jurisdiction to enforce and implement the terms and provisions of this Order, [and] the [Agreement] ... in all respects, including, but not limited to, retaining jurisdiction to ... (c) resolve any disputes arising under or related to the [Agreement] ... (d) interpret, implement, and enforce the provisions of this Order, (e) protect the Purchaser against any of the Retained Liabilities or the assertion of any lien, claim, encumbrance, or other interest, of any kind or nature whatsoever, against the Purchased Assets ....

Order ¶ 71.

Based on this language in the Order, New GM argues that "[w]hether this action may proceed against New GM based on the claims plaintiff has attempted to plead in the First Amended Complaint therefore is a question which only the New York Bankruptcy Court has jurisdiction to decide." MPA in Support p. 13. According to New GM, this Court must either dismiss the case entirely for lack of subject matter jurisdiction or transfer it to the Southern District of New York for referral to the Bankruptcy Court. Plaintiff disputes this, arguing "[t]hat [New] GM may interpret provisions of its agreement to assume liabilities differently that [sic] Plaintiff does not invoke the bankruptcy court's jurisdiction." Opp. p. 4.

**\*2** Determining if Plaintiff's claims against New GM are barred requires interpreting and applying the Agreement. The question before this Court is whether that determination is properly within the scope of the bankruptcy court's subject matter jurisdiction.

## II. ANALYSIS

### A. Scope of Bankruptcy Jurisdiction

"Federal district courts have exclusive jurisdiction over all cases under Title 11 of the United States Code, and concurrent jurisdiction over all civil proceedings arising under Title 11, or arising in or related to cases under Title 11." *Maitland v. Mitchell (In re Harris Pine Mills* ), 44 F.3d 1431, 1434 (9th Cir.1995). The district court may refer to the bankruptcy court "all proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 157(a); *Montana v. Goldin (In re Pegasus Gold Corp.),* 394 F.3d 1189, 1193 (9th Cir.2005) (bankruptcy court has jurisdiction over these proceedings).

Cases "arising under Title 11" are "those proceedings that involve a cause of action created or determined by a statutory provision of title 11 .... " *In re Harris,* 44 F.3d at 1435 (quoting *Wood v. Wood (In re Wood* ), 825 F.2d 90, 96-97 (5th Cir.1987)). In contrast, " '[a]rising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Id.* Finally, a proceeding is "related to" a bankruptcy case if *"the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property." *In re Pegasus,* 394 F.3d at 1193 (quoting *Fietz v. Great Western Savings (In re Fietz),* 852 F.2d 455, 457 (9th Cir.1988) (adopting the *"Pacor"* test)).

Proceedings that "arise under" Title 11 or "arise in" cases under Title 11 are "core" bankruptcy matters, and a bankruptcy judge may hear such proceedings and enter final orders and judgments, which may be appealed to the district court. 28 U.S.C. § 157(b)(1). "Related to" proceedings are "non-core" matters, and a bankruptcy judge "may not enter final judgments without the consent of the parties, and its findings of fact and conclusions of law in noncore [sic] matters are subject to de novo review by the district court ...." *In re Harris,* 44 F.3d at 1436 (quoting *Taxel v. Electronic Sports Research (In re Cinematronics* ), 916 F.2d 1444, 1449 (9th Cir.1990)); 28 U.S.C. § 157(c)(1).

Plaintiff misunderstands this distinction between "core" and "non-core" matters. He claims that if his case is a proceeding merely "related to" a bankruptcy case, *i.e.,* a "non-core" matter, then the bankruptcy court lacks jurisdiction because Plaintiff demands a jury trial and does not consent to the bankruptcy court entering a final judgment. Opp. p. 21 n. 18. To the contrary, even if Plaintiff's case is a "non-core" matter, the bankruptcy court has jurisdiction over pretrial proceedings and may enter interlocutory orders regardless of whether the parties consent. *Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com* ), 504 F.3d 775, 787-88 (9th Cir.2007) ("A valid right to a Seventh Amendment jury trial in the district court does not mean the bankruptcy court must instantly give up jurisdiction and that the action must be transferred to the district court. Instead, we hold, the bankruptcy court may retain jurisdiction over the action for pre-trial matters.").

**\*3** Here, the Court need only determine whether Plaintiff's case is at least "related to" a case under Title 11:

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings 'arising under', 'arising in a case under', or 'related to a case under', title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least 'related to' the bankruptcy.

*In re Wood,* 825 F.2d at 93 (finding matter was not "core" proceeding, but was "related to" pending bankruptcy case).

### B. Plaintiff's Case Is "Related To" the Old GM Bankruptcy Case [3]

The core of the parties' disagreement is whether New GM assumed liability for Plaintiff's claims under the terms of the Agreement to purchase assets and assume certain liabilities of Old GM. By its very nature, Plaintiff's case could at least "conceivably" have an effect on the estate being administered in bankruptcy. If Plaintiff prevails on the issue of whether New GM assumed liability for his claims (and those of the putative class), then the Agreement will have been interpreted so as to expand New GM's liability. In the alternative, if New GM prevails, then Old GM would remain liable for Plaintiff's claims. Thus, Plaintiff's case is at least "related to" the Old GM bankruptcy case and the bankruptcy court has subject matter jurisdiction. This finding is consistent with the bankruptcy court's express retention of jurisdiction to enforce and implement the terms and provisions of the Order and the

Agreement, to interpret, implement, and enforce the Order, and to protect New GM against retained liabilities or claims against the purchased assets. Order ¶ 71.

There are also sound policy reasons-including judicial economy, consistency, and fairness to litigants-for finding that Plaintiff's case falls within the bankruptcy court's subject matter jurisdiction. Plaintiff's proposed class is limited to citizens of California, but the GM cars at issue were sold throughout the United States. Identical lawsuits can, and likely will, be filed in other states. Each of these lawsuits, and other lawsuits raising similar claims, will require a determination as to whether New GM assumed the liabilities at issue when it purchased Old GM's assets. Unless such actions are transferred to the bankruptcy court, different district courts will be required to interpret the same Agreement, and decide the same dispositive question, perhaps with different results. That would be an inefficient and, more importantly, unjust outcome.

The bulk of Plaintiff's opposition is devoted to arguing this case is not a "core" proceeding because it neither arises under Title 11 nor arises in a case under Title 11. This "core" proceeding argument is irrelevant because Plaintiff's case is at least "related to" the Old GM bankruptcy. Therefore, the bankruptcy court has subject matter jurisdiction. [4] *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266 (3rd Cir.1991) ("Whether a particular proceeding is core represents a question wholly separate from that of subject-matter jurisdiction.").

**\*4** Having established that the bankruptcy court has subject matter jurisdiction, the bankruptcy court itself can enter an interlocutory order regarding whether the proceeding is core or non-core. 28 U.S.C. § 157(b)(3).

## C. Plaintiff's Case Should Be Transferred to the Southern District of New York For Referral to the Bankruptcy Court

New GM moves the Court to dismiss Plaintiff's case entirely (presumably to allow Plaintiff to refile in bankruptcy court) or, in the alternative, to transfer the case under 28 U.S.C. section 1412 to the Southern District of New York for referral to the bankruptcy court. Dismissing the case entirely will entail unnecessary work and consumption of time by the parties that would be avoided by transferring the case.

Under 28 U.S.C. section 1412, a district court "may transfer a case or proceeding under Title 11 to a district court for another district in the interest of justice or for the convenience

of the parties." In the preceding section this Court held that Plaintiff's action is a "related to" proceeding but did not reach the issue of whether it "arises under" Title 11 or "arises in" a case under Title 11. Courts are split on the issue of whether a "related to" proceeding may be transferred under 28 U.S.C. § 1412 or whether it must be transferred under 28 U.S.C. § 1404. Section 1404 provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." It appears that the Ninth Circuit Court of Appeals has not ruled on the issue, and district courts in the Ninth Circuit have transferred "related to" proceedings under both statutes. *Compare Doss v. Chrysler,* 2009 WL 4730932, *5 (D.Ariz. December 7, 2009) ("[T]he present case is 'related to' a Title 11 proceeding, but the Court has not held it arises under Title 11.... [T]he Court has found no authority indicating how the Ninth Circuit would interpret 28 U.S.C. § 1412, [and] the Court will not transfer the case under that statute. The Court will, however, transfer this matter *sua sponte* under 28 U.S.C. § 1404."), *with Senorx, Inc. v. Coudert Bros., LLP,* 2007 WL 2470125, * 1 (N.D.Cal. August 27, 2007) (Citing to a Northern District of Alabama bankruptcy case for the proposition that "28 U.S.C. § 1412 is used to analyze the request for a change of venue in a proceeding related to a bankruptcy case.").

The Court will analyze the transfer under section 1412 because that statute refers specifically to bankruptcy cases, and applying section 1412 appears to be the sounder approach. [5] *See Creekridge Capital, LLC v. Louisiana Hosp. Center, LLC,* 410 B.R. 623, 628-29 (D.Minn.2009) (engaging in extensive analysis and review of authorities from various circuits and concluding that section 1412 applies to transfers of "related to" proceedings). "The party moving for a transfer has the burden to show by a preponderance of the evidence that transfer is warranted." *Id.* at 629. The factors to be considered in analyzing whether a transfer would be in the interest of justice include:

**\*5** (1) the economical and efficient administration of the bankruptcy estate, (2) the presumption in favor of the forum where the bankruptcy case is pending, (3) judicial efficiency; (4) the ability to receive a fair trial, (5) the state's interest in having local controversies decided within its borders by those familiar with its laws, (6) the enforceability of any judgment rendered, and (7) the plaintiff's original choice of forum.

*Id.* (citing *A.B. Real Estate, Inc. v. Bruno's Inc. (In re Bruno's, Inc.),* 227 B.R. 311, 324 nn. 45-51

WestlawNext © 2012 Thomson Reuters. No claim to original U.S. Government Works.

(Bkrtcy.N.D.Ala.1998) (collecting cases in support of each factor)).

The underlying bankruptcy case is venued in the Southern District of New York, so factors one, two, and three weigh in favor of transfer to that district. There is no question that Plaintiff will receive a fair trial in New York and will be able to enforce any judgment he might obtain, so factors four and six favor transfer. Remaining are the state's interest in having local controversies decided within its borders by those familiar with its laws and the plaintiff's original choice of forum. Plaintiff seeks to apply California law and chose California as his forum, but a bankruptcy court in New York is perfectly capable of interpreting and applying California

law, and Plaintiff's choice of forum is heavily outweighed by the other factors. To hold otherwise would be to invite similar litigation throughout the country, with possibly inconsistent outcomes depending on how a particular court interprets the terms of the Agreement and Order as they relate to New GM's assumed liabilities.

### III. CONCLUSION

Based on the foregoing, the Court GRANTS New GM's motion to transfer this action to the Southern District of New York for referral to the bankruptcy court.

No hearing is necessary. Fed.R.Civ.P. 78; L.R. 7-15.

Footnotes

1    Docket No. 15.

2    The Court takes judicial notice of the Amended and Restated Master Sale and Purchase Agreement and the Bankruptcy Court's Sale Approval Order.

3    Plaintiff hardly addresses the issue of whether his case is "related to" a case under Title 11, stating only that "it is not ...." Opp. p. 21.

4    Although the Court need not reach the issue, "core" proceedings include "orders approving the sale of property" (28 U.S.C. § 157(b) (2)(N)) such as the Order entered by the bankruptcy court in the Old GM case, and a number of courts have held that cases requiring the interpretation or application of a bankruptcy court's orders are also "core" proceedings. *E.g., Beneficial Trust Deeds v. Franklin (In re Franklin),* 802 F.2d 324, 326 (9th Cir.1986) (The bankruptcy court had jurisdiction to determine the validity of a foreclosure sale because, "[s]imply put, bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner.")

5    Given the substantial overlap of analysis under the two statutes, the question is largely academic, and the Court would reach the same conclusion under section 1404.

**End of Document**          © 2012 Thomson Reuters. No claim to original U.S. Government Works.

 © 2012 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 868899
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

Scott PERNO, Plaintiff,

v.

CHRYSLER GROUP, LLC, abc Corps,
1-10, John Does 1-10, Defendants.

Civil Action No. 10-5100 (WJM). | March 10, 2011.

**Attorneys and Law Firms**

Maurice W. McLaughlin, McLaughlin & Nardi, LLC,
Totowa, NJ, for Plaintiff.

Mark William Skanes, The Rose Law Firm, PLLC, Albany,
NY, for Defendants.

**Opinion**

### OPINION

FALK, United States Magistrate Judge.

**\*1** Before the Court is a motion by Defendant, Chrysler
Group LLC, to transfer venue pursuant to 28 U.S.C § 1412 to
the United States District Court for the Southern District of
New York ("SDNY") or the Bankruptcy Court for the SDNY.
[CM/ECF No. 3.] The motion is opposed. Oral argument was
not heard. Fed.R.Civ.P. 78(b). For the reasons set forth below,
the motion to transfer is **granted,** and the case is transferred
to the SDNY.

### INTRODUCTION

This case involves Plaintiff's purchase of a Jeep Liberty
automobile, a prior state court lawsuit and settlement, and
the bankruptcy of Chrysler LLC and 24 related affiliates and
subsidiaries.

In August 2010, Plaintiff filed the present complaint in New
Jersey Superior Court for alleged violations of the Magnuson-
Moss Warranty Act, 15 U.S.C. § 2301, *et seq.;* the New Jersey
Consumer Fraud Act, N.J.S.A. 56:8-1, *et seq.;* and state law.
He contends that a Jeep Liberty he purchased from the now
bankrupt Chrysler LLC is covered by a Service Contract to

which the Defendant is the successor in interest. Defendant,
Chrysler Group LLC, the purchaser of bankrupt Chrysler's
assets, counters that it has no liability under the Service
Contract based upon an Order entered by the United States
Bankruptcy Court in the Southern District of New York as
part of the bankruptcy. The issue to be decided is whether this
Court or the SDNY is the most appropriate venue.

### FACTS AND PROCEDURAL HISTORY

**A. *The Prior Suit***

In November 2005, Plaintiff purchased a Jeep Liberty
automobile with a warranty from DaimlerChrysler
Corporation through Franklin Sussex Auto Mall in Sussex,
New Jersey. (Compl.¶ 5.) At some point, the vehicle allegedly
"broke down and ceased running." (Compl.¶ 7.) In April
2008, Plaintiff filed a lawsuit in New Jersey Superior
Court alleging breach of the Jeep's warranty. (Compl. ¶ 9;
Certification of Mark W. Skanes, Esq. ("Skanes Cert.") ¶ 3.)
The case settled; as part of the settlement, Plaintiff was issued
a "Chrysler Maximum Extended Service Contract" (the
"Service Contract") for 100,000 miles and five years with
a "zero deductible and ... a loaner car if the vehicle had to
be kept overnight." (Compl.¶ 9.) The Service Contract was
issued by Chrysler Service Contracts, Inc. (Skanes Cert. ¶ 3.)

**B. *The Bankruptcy Proceeding***

On April 30, 2009, Chrysler LLC, Chrysler Service Contracts,
Inc., and 23 other affiliated companies (the "Debtors) filed for
bankruptcy protection in the United States Bankruptcy Court
for the Southern District of New York, *see In re Old Carco
LLC (f/k/a Chryler LLC),* No. 09-50002 (Bank.S.D.N.Y.).
(Skanes Cert. ¶ 4.) [1]

On May 31, 2009, the Bankruptcy Court issued an opinion
granting the Debtors' motion to sell substantially all of their
assets. *See In re Chrysler LLC,* 405 B.R. 84 (S.D.N.Y.2009),
aff'd 576 F.3d 108 (2d Cir.2009), *vacated as moot sub.
nom. Ind. State Police Pension Tr. v. Chysler LLC,* --- U.S.
----, 130 S.Ct. 1015, 175 L.Ed.2d 614 (2009). On June
1, 2009, in accordance with its Opinion, the Bankruptcy
Court entered an 49 page Order: "(I) Authorizing the Sale
of Substantially All of the Debtor's Assets Free and Clear
of All Liens, Claims, Interests and Encumbrances, (II)
Authorizing the Assumption and Assignment of Certain
Executory Contracts and Unexpired Leases in Connection
Therewith and Related Procedures, and (III) Granting Related
Relief" ("the Sale Order). (*See* Sale Order, attached as

Exhibit B to Def.'s Mot.; CM/ECF No. 3-3.) The Sale Order addressed whether Chrysler Group, LLC-the purchaser in bankruptcy and defendant here-would be responsible for the liabilities of the Debtors:

   **\*2**   Except for the assumed liabilities expressly set forth in the purchase agreement or described therein ... none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any claim that (a) arose prior to the closing date, (b) relates to the production of vehicles prior to the Closing Date or (c) is otherwise assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date. The Purchaser shall not be deemed ... to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors ... (b) have, *de facto,* or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.

(Sale Order ¶ 35.)

The Sale Order also addressed whether Chrysler Group would be liable for state breach of warranty claims and claims under the Magnuson-Moss Warranty Act:

   Notwithstanding anything else contained herein or in the Purchase Agreement, in connection with the purchase of the Debtor's brands and related Purchased Assets, the Purchaser, from and after the Closing, will recognize, honor and pay liabilities under Lemon Laws for additional repairs, refunds, partial refunds (monetary damages) or replacement of a defective vehicle (including reasonable attorneys' fees, if any, required to be paid under such Lemon Laws and necessarily incurred in obtaining those remedies), and for any regulatory obligations under such Lemon Laws arising now, including but not limited to cases resolved pre-petition or in the future, on vehicles manufactured by the Debtor in the five years prior to the Closing (without extending any statute of limitations provided under such Lemon Laws), but in any event not including punitive, exemplary, special, consequential or multiple damages or penalties and not including any claims for personal injury or other consequential damages that may be asserted in relationship to such vehicles under the Lemon Laws. As used herein, "Lemon Law" means a federal or state statute, including, but not limited to, claims under the Magnuson-Moss Warranty Act based on or in conjunction with a state breach of warranty claim, requiring a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle

to the warranty after a reasonable number of attempts as defined in the applicable statute.

(Sale Order ¶ 19.)

The Bankruptcy Court retained jurisdiction to "interpret, enforce, and implement the terms and provisions of [the] Sale Order and Purchase Agreement." (*Id.* at ¶ 43.) The Bankruptcy Court has also made a point of noting that it has "special expertise regarding the meaning of its own order," and that "its interpretation is entitled to deference." *Wolff v. Chrysler Group,* slip op. at 13 (Adv.Proc. No. 10-5007, S.D.N.Y., July 30, 2010) (attached to Def's Mot. at Ex. A; CM/ECF NO. 3-1.)

### C. *Present Suit*

   **\*3**   On August 30, 2010, Plaintiff filed his complaint in New Jersey Superior Court. He alleges that in February 2010, the Jeep required additional repairs totaling forty-two days of service, and that he was charged for the repairs and denied a loaner car in violation of the 2008 Service Contract. (Compl.¶¶ 10-13.) Plaintiff named Chrysler Group, LLC as the sole defendant, taking the position that it is the "successor in interest for Chrysler LLC." (Compl. ¶ 2.)

On October 4, 2010, Defendant removed the case to this Court under 28 U.S.C. §§ 1331, 1334, 1441, and 1452. Defendant claims that outcome of the suit "depends on how the Bankruptcy Court's June 1, 2009 Sale Order is construed," (Notice of Removal, ¶ 9), and therefore, federal jurisdiction is proper under Sections 1334 and 1452, which provide for removal of state court actions that "arise in," "arise[ ] under" or "relate to" a Title 11 bankruptcy proceeding. *See* 28 U.S.C. §§ 1334(b), 1452(a).

### D. *Parties' Arguments on Transfer*

Defendant contends that Chrysler Group LLC did not manufacture Plaintiff's Jeep; did not issue the Service Contract at issue; is not liable under the Service Contract; was not party to the 2008 settlement agreement; and, in fact, did not even *exist* at the time the Service Contract was issued. (Skanes Cert. ¶¶ 8-9.) Defendant contends that the threshold issue to be decided is whether it has somehow "assumed" liability for the bankrupt Chrysler entities, which necessarily requires an interpretation of the Sale Order. (Def.'s Br. 5-6; Reply Br. 5-6.) In short, Defendant contends that it could not be a successor in interest to Chrysler without the bankruptcy, and that, in fact, absent the Sale Order, there would be nothing upon which Plaintiff could support his claim. (Def.'s Reply

Br. 5-6, 10.) Thus, Defendant contends the interests of justice require transfer to the Southern District of New York to ensure that Bankruptcy Judge that issued the Sale Order and retained jurisdiction to enforce it is the Judge that determines liability in this case. (Def.'s Reply Br. 5-6, 10.) Defendant cites at least eight cases that have been transferred to the SDNY for precisely this reason. [2]

Plaintiff argues that this is a localized dispute. The Jeep was purchased in New Jersey by a New Jersey resident and was repaired in New Jersey. Plaintiff further claims that the Sale Order is not implicated because the alleged breach occurred in 2010, which is after the Bankruptcy Court's Order was issued. (Pl.'s Br. 4-5.) Finally, Plaintiff claims that transfer is not proper because this complaint pleads state law claims that do not implicate bankruptcy or Title 11. (Id.)

### DISCUSSION

**A. Legal Standard**

28 U.S.C § 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interests of justice or for the convenience of the parties." *Id.* This provision allows for transfer in the interests of justice or for the convenience of the parties. *See, e.g., Clark v. Chrysler Group, LLC,* No. 10-3030, 2010 WL 4486927, at *5 (E.D.Pa. Nov.5, 2010); *In re Dunmore Homes, Inc.,* 380 B.R. 663, 670 (S.D.N.Y.2008) ("Section 1412 is worded in the disjunctive allowing a case to be transferred under either the interest of rationale or the convenience of parties rationale."). Transfer under Section 1412 is similar to transfer under 1404(a), and courts generally consider similar factors. *See, e.g., In re Emerson Radio Corp.,* 52 F.3d 50, 55 (3d Cir.1995) ("[S]ection 1412 largely includes the same criteria for transfer of cases as section 1404(a) ...").

 **\*4** Defendant moves to transfer under the interests of justice prong. The interests of justice prong is "broad and flexible" and applied on a case-by-case basis. *See Gulf States Exploration Co. v. Manville Forest Prod. Corp.,* 896 F.2d 1384, 1391 (2d Cir.1990). A non-exhaustive list of factors that are may be considered when determining whether transfer in the interests of justice is appropriate under Section 1412 include: (1) the economics of estate administration; (2) a presumption in favor of the home court; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) the enforceability of any judgment;

and (7) plaintiff's choice of forum. *See, e.g., id; Cooper v. Daimler AG,* No. 09-2507, 2009 WL 4730306, at *4 (N.D.Ga. Dec.3, 2009); *In re Bruno's Inc.,* 227 B.R. 311, 324-25 (N.D.Ala.1998).

Generally, courts have concluded that when civil actions are related to a pending bankruptcy proceeding, there is a presumption that the district where the bankruptcy case is pending is the proper venue. *See, e.g., Clark,* 2010 WL 4486927, at *6 (transferring Magnuson-Moss claim against Chrysler Group to Southern District of New York, noting "[w]hen a case in which transfer is sought is one related to a bankruptcy proceeding, the district where the bankruptcy action is pending is generally the appropriate venue."); *Toth v. Bodyonics, Ltd.,* No. 06-1617, 2007 WL 792172, at *2 (E.D.Pa. Mar.15, 2007); *Abrams v. General Nutrition Co.,* No. 06-1820, 2006 WL 2739642, at *9 (D.N.J. Sept.25, 2006); *Krystal Cadillac v. General Motors Corp.,* 232 B.R. 622, 627 (E.D.Pa.1999).

**B.** *Application*

Transfer is appropriate because it is necessary to interpret the Sale Order to determine whether Defendant has assumed any liability in this case. Plaintiff's complaint specifically alleges that Defendant is a successor in interest to Chrysler LLC, (Compl., ¶ 2), and thus has assumed liability for the Service Contract issued as part of the 2008 settlement. Defendant disagrees. Although Plaintiff argues that the bankruptcy order is not implicated, Chrysler Group has been named as a Defendant solely because Plaintiff alleges it now stands in bankrupt Chrysler's shoes. Thus, the scope of the bankruptcy order is clearly at issue. Moreover, the bankruptcy court has expressly retained jurisdiction over the Sale Order to interpret its terms. (Sale Order ¶ 43.) Allowing for different courts in different jurisdictions to interpret the terms of the Sale Order creates the possibility for inconsistent determinations, inconsistent liability to the Defendant, and needless confusion.

Moreover, Defendant cites to eight (8) decisions transferring cases against Chrysler Group to the Southern District of New York for referral to the bankruptcy court. These cases all present similar issues relating to the interpretation and applicability of the Sale Order. These cases demonstrate that uniform interpretation of the Sale Order by the issuing court is of paramount importance.

 **\*5** Finally, there will be no inconvenience to the Plaintiff or to any witnesses due to transfer. Defendant has specifically agreed that "to the extent the Bankruptcy Court finds that

certain claims asserted by Plaintiff in the Complaint were assumed from Chrysler Group," Defendant will "consent to remand those remaining claims to the state court of origin for resolution." (Def.'s Reply Br. 8.) Based on other representations, other courts have transferred Chrysler cases to the Southern District. *See, e.g., Clark,* 2010 WL 4486927, at *9 ("In addition, the Court recognizes that allowing the Bankruptcy Court to interpret its Sale Order to determine the threshold issue regarding Defendant's liability on Plaintiff's claims does not preclude the case from ultimately being returned to a Pennsylvania court for disposition. If the Bankruptcy Court determines that ... Defendant assumed liability for breach of a service contract under the [Magnuson-Moss Act], then the Bankruptcy Court may remand the case back to the Court of Common Pleas of Philadelphia County for resolution of Defendant's liability, if any, to Plaintiff."). Thus, Plaintiff's argument relating to the convenience of the parties and witnesses is not persuasive.[3]

Transfer to the SDNY is appropriate in this case. Rather than transferring directly to the Bankruptcy Court, the Court will adhere to the general rule that transfer should be to the District Court for referral to the Bankruptcy Court in that district. *See Maritime Elec. Co. v. United Jersey Bank,* 959 F.2d 1194, 1212 (3d Cir.1991); *Resource Club, Ltd. v. Designer License Holding Co., LLC,* No. 10-412, 2010 WL 2035830, at *4 (D.N.J. May 21, 2010) ("The Court hereby grants ... transfer ... to the Southern District of New York pursuant to 28 U.S.C. § 1412, which presumably will transfer the case to the Bankruptcy Court."); *Meyers v. Heffernan,* No. 10-862, 2010 WL 1009976, at *1 (D.N.J. Mar.15, 2010) (proper procedure is to transfer to coordinate district court for referral to bankruptcy court).

### CONCLUSION

For the above stated reasons, Defendant's motion to transfer is **granted.** An appropriate Order will be entered.

Footnotes

1    Plaintiff's Jeep Liberty was purchased from was DaimlerChrysler Corporation. DamilerChrysler Corporation became DaimlerChrysler Company LLC and then eventually Chrysler LLC. (Skanes Cert. ¶ 3 n. 1.) Chrysler LLC is now known as "Old Carco LLC." (*Id.*) Likewise, Chrysler Service Contracts, Inc. is now known as "Old Carco Service Contracts, Inc." (Skanes Cert. ¶ 3 n. 2.)

2    These cases include: *Clark v. Chysler Group, LLC,* No. 10-3030, 2010 WL 4486927 (E.D.Pa. Nov.5, 2010); *Shatzki v. Abrams,* No. 09-2046, 2010 WL 148183 (E.D.Cal. Jan.12, 2010); *Doss v. Chrysler Group, LLC,* No. 09-2130, 2009 WL 4730932 (D.Ariz. Dec.7, 2009); *Cooper v. Daimler AG,* No. 09-2507, 2009 WL 4730306 (N.D.Ga. Dec.3, 2009); *Monk v. Daimler AG,* No. 09-2511, 2009 WL 4730314 (N.D.Ga. Dec.3, 2009); *Wolff v. Chrysler Group,* No. 10-34, Slip Op. (C.D.Cal. Feb. 22, 2010) (attached to Def.'s Mot., Ex. F); *Hunyh v. Chrysler Group, LLC,* No. 10-285, Slip Op. (C.D.Cal. May 7, 2010) (Def.'s Mot., Ex. G); *Carpenter v. Chrysler, LLC,* No. 10-289, Slip Op. (W.D.Ok. May 17, 2010) (Def.'s Mot., Ex. H).

3    Plaintiff argues that a presumption in favor of transfer is not appropriate in this case because it does not implicate Title 11. (Pl.'s Br. 5-6.) The Court need not apply a presumption in favor of transfer in order to determine it is appropriate in this case. Putting that aside, this case does implicate Title 11. A civil proceeding "arises under" Title 11 if the action involves the interpretation of a bankruptcy order. *See In re Allegheny Health, Educ. & Res. Found.,* 383 F.3d 169, 175-76 (3d Cir.2004); *In re Franklin,* 802 F.2d 324, 326 (9th Cir.1986). A civil proceeding "arises in" Title 11 if it is a proceeding that is "not based on any right expressly created by Title 11, but nonetheless, would have no existence outside of the bankruptcy." *In re Robbins Co., Inc.,* 86 F.3d 364, 372 (4th Cir.1996) (quotation omitted); *see also U.S. Tr.v. Gryphon at Stone Mason, Inc.,* 166 F.3d 552, 556 (3d Cir.1999). Finally, a civil action "relates to" a bankruptcy proceeding if, among other things, "the outcome could alter the debtors' rights, liabilities, options, or freedom of action ... and which in any way impacts upon the handling and administration of the bankrupt estate." *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). All three grounds are met in this case.

**End of Document**                                    © 2012 Thomson Reuters. No claim to original U.S. Government Works.

2010 WL 2035830
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial
staff and not assigned editorial enhancements.**

NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

The RESOURCE CLUB, LTD., Plaintiff,

v.

DESIGNER LICENSE HOLDING CO.,
LLC, 99 Hook Road LLC, Defendants.

Civil Action No. 10-412 (PGS). | May 21, 2010.

**Attorneys and Law Firms**

Richard L. Zucker, Bruce Howard Snyder, Lasser Hochman,
LLC, Roseland, NJ, for Plaintiff.

Daniel L. Schmutter, Farer & Fersko, PA, Westfield, NJ, for
Defendants.

**Opinion**

**REPORT & RECOMMENDATION**

SALAS, United States Magistrate Judge.

 *1  Pending before this Court is a motion by Plaintiff
Resource Club, Ltd. ("Resource" or "Plaintiff") to Transfer
Venue pursuant to 28 U.S.C. § 1412 to the United States
District Court for the Southern District of New York or
the Bankruptcy Court for the Southern District of New
York. (Docket Entry No. 2.) Also pending is Defendant 99
Hook Road LLC's ("99 Hook") Cross-Motion to Remand the
case to New Jersey Superior Court. (Docket Entry No. 5.)
Pursuant to Local Civil Rule 72.1, the Honorable Peter G.
Sheridan, United States District Judge, referred these Motions
to the Undersigned for report and recommendation. For the
reasons set forth below, this Court respectfully recommends
GRANTING Plaintiff's Motion to transfer venue to the
Southern District of New York and transferring 99 Hook's
Motion for remand so it can be decided by the Southern
District of New York.

**I. BACKGROUND AND PROCEDURAL HISTORY**

The facts and procedural history of this case are lengthy and
complicated and as the parties are intimately familiar with the
facts, the Court will recite only those necessary for purposes
of the pending motions. [1]

Resource leased a building from Defendant, 99 Hook, located
at 99 Hook Road, Bayonne, New Jersey. Subsequently,
on or about February 15, 2007, Resource entered into a
Consent to Sublease Agreement with 99 Hook. Resource and
Designer License Holding Company, LLC ("Designer") then
entered into a sublease agreement. On or about December
3, 2007, Designer allegedly complained of strong odors at
the Subleased Premises causing damage to Designer's apparel
inventory and creating an intolerable work environment for its
employees. On or about May 16, 2008, Designer relocated its
inventory and employees. Thereafter, two actions were filed
in New Jersey Superior Court the "Designer Action" and the
"Resource Action."

In the Designer Action, Designer filed a Complaint against
Resource and 99 Hook seeking damages in connection with
Resource's and 99 Hook's alleged failure to cure defects in
the Subleased Premises, which resulted in Designer's alleged
constructive eviction. Resource filed a motion to dismiss
the complaint. Shortly thereafter, 99 Hook also moved to
dismiss the complaint. On October 10, 2008, Judge Shirley
A. Tolentino, J.S.C., dismissed Plaintiff's complaint and
granted Defendants' motions to dismiss. Designer appealed
to the Appellate Division, which upheld the Superior Court's
dismissal.

In the Resource Action, Resource filed a Complaint against
Designer for damages due to Designer's failure to pay rent
pursuant to the Sublease Agreement. Designer has asserted
a defense on the grounds of constructive eviction, making
the same allegations as in the Designer Action. As a result,
Resource amended its complaint to join 99 Hook as a
defendant, arguing that if Designer prevails on its defenses, 99
Hook, as master landlord, should be responsible. On June 1,
2009, 99 Hook filed a motion to dismiss Resource's Amended
Complaint for failure to state a claim. The Superior Court
denied that motion without prejudice and ordered limited
discovery on two provisions of the agreement. After the
discovery was complete, 99 Hook re-filed its motion as a
summary judgment motion. [2]

 *2  In light of the Appellate Division's opinion in the
Designer Action, Resource requested an adjournment of 99
Hook's pending summary judgment motion to allow it time

to decide how to proceed. Thereafter, Resource filed its own summary judgment motion against Designer on December 23, 2009. On December 31, 2009, before the motions could be heard by the Superior Court, Designer filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York. On January 22, 2010, Resource removed the Resource Action from New Jersey state court to New Jersey district court and it is now pending before this Court. On February 1, 2010, Resource filed its motion to transfer and on February 16, 2010, 99 Hook filed its cross-motion to remand. Both motions are currently before this Court.

## II. Analysis

### A. Subject Matter Jurisdiction

At the outset and before addressing the merits of the remand and transfer venue motions, it must be determined whether this Court has subject matter jurisdiction over the proceeding. *Thomason Auto Group v. China American Cooperative Automotive, Inc.,* No. 08-3365, 2009 WL 512195 at *2 (D.N.J. February 27, 2009) (citing *Everett v. Friedman's Inc.,* 329 B.R. 40, 41 (S.D.Miss.2005)). "A party may remove any claim or cause of action in a civil action ... to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). Section 1334 states that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).

The pending action clearly does not "arise under" or "arise in" a case under Title 11. Therefore, the Court limits its discussion to the meaning of "related to." For subject matter jurisdiction to exist ... there must be some nexus between the "related" civil proceeding and the title 11 case. *See Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984), *overruled on other grounds by Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 116 S.Ct. 494, 133 L.Ed.2d 461 (1995). "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Id.* An action is related to bankruptcy "if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." *Id.*

The Court finds that the pending action is "related to" the bankruptcy proceeding before the Southern District of New York Bankruptcy Court. Designer, the entity in bankruptcy, is a party to this case. If a court finds that Designer is liable to Resource for unpaid rent, the bankruptcy estate would owe Resource Club. Further, if a court finds Designer's affirmative defenses persuasive, namely that it was constructively evicted, Resource would look to collect the money owed to Designer from the other defendant, 99 Hook. Therefore, the outcome of the present case would clearly impact the handling and administration of Designer's estate as it would either owe or be owed money.

### B. Transfer of Venue, Remand and Abstention

**\*3** Having determined that the pending action is properly within the jurisdiction of this Court pursuant to 28 U.S.C. § 1334, the Court turns to the motion to transfer venue and cross-motion to remand. 99 Hook argues that the Court should decline jurisdiction of this action and remand the action back to New Jersey Superior Court based on the principle of mandatory abstention under 28 U.S.C. § 1334(c) (2), which states that

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

In the alternative, 99 Hook argues that this Court should abstain from hearing this case under the theory of permissive abstention pursuant to 28 U.S.C. 1334(c)(1). Resource argues that this Court should not even reach the question of abstention/remand because the S.D.N.Y. Bankruptcy Court, as the "home court," is better equipped to make that determination.

### 1. "Home Court"

"Generally, courts defer to the home court of the bankruptcy to decide the issue of remand or abstention." *Thomason Auto Group,* 2009 WL 512195 at *4. In *Thomason,* the Court was faced with the same motions which are pending before this Court. *Id.* The Court relied on an Eastern District of Pennsylvania decision which found that

[T]he weight of authority in this jurisdiction, and in several others, suggests that when a bankruptcy court is simultaneously confronted with (1) a motion to transfer venue or change venue of an action which has been removed to it pursuant to *28 U.S.C. § 1452(a)* and (2) a motion to remand or otherwise abstain from hearing the change of venue action pursuant to *28 U.S.C. § 1334(c)* the action should be transferred to the home court of the bankruptcy to decide the issue of whether to remand or abstain from hearing the action.

*Thomason Auto Group,* 2009 WL 512195 at \*4 (quoting *George Junior Republic in Pennsylvania v. Frances Williams,* Civ. No. 07-4357, 2008 U.S. Dist. LEXIS 22682 at \*14, 2008 WL 763304 (E.D.Pa. March 19, 2008)). "Transferring the case is particularly appropriate 'when the court to which the case has been removed has no interest in the proceedings ...' *Id.* at \*16. (internal quotations omitted).

99 Hook relies primarily on mandatory and/or permissive abstention as its basis for remand. However, mandatory abstention only applies to non-core matters–"that is, proceedings related to a case under Title 11, but not arising under Title 11, or arising in a case under Title 11." *Thomason Auto Group,* 2009 WL 512195 at \*4 (citing *In re Seven Fields Development Corp.,* 505 F.3d 237, 251 (3d Cir.2007) (internal citations omitted). As with the Court in *Thomason,* this Court has already found that while the present case is "related to" a bankruptcy proceeding for purposes of subject matter jurisdiction, this Court has not analyzed each claim to determine whether it is core or non-core. The determination as to whether a proceeding is core or non-core should be made by the bankruptcy court after transfer. *See Meyers v. Heffernan,* No. 10-862, 2010 WL 1009976, at \*1 (D.N.J. March 15, 2010); *see also Certain Underwriters at Lloyd's of London v. Otlowski,* No. 08-3998, 2009 WL 234957, at \*2 (D.N.J. Jan.29, 2009).

**\*4** 99 Hook argues that this Court should not even reach the question of transfer because the question of mandatory abstention must be addressed first and Resource fails to meet those requirements. 99 Hook cites to a 2007 District of New Jersey case as support for its position. *See Royal Indem. Co. v. Admiral Ins. Co. Inc.,* 2007 WL 4171649 (D.N.J. November 19, 2007). Having considered the *Thomason* opinion and the *Royal Indemnity* opinion, the Court finds that the analysis in the more-recently decided *Thomason* is applicable given the similarity of the facts to the instant matter. Further, as the Court said in *Thomason* and 99 Hook recognized in its supplemental briefing, "courts do not apply a *per se* home court presumption but rather apply it on a case-by-case basis." *Thomason,* 2009 WL 512195 at \*4.

Therefore, based on the previous holdings by courts in this Circuit, in the interest of ensuring that a equitable and uniform determination is made and to avoid duplicative or inconsistent rulings, this Court hereby grants Resource's motion to transfer the pending case to the Southern District of New York pursuant to 28 U.S.C. § 1412, which presumably will transfer the case to the Bankruptcy Court. *See Meyers v. Heffernan,* No. 10-862, 2010 WL 1009976, at \*1 (D.N.J. March 15, 2010) (finding that the proper transferee venue is the district court, which will then transfer the proceeding to bankruptcy court). In further support of this Court's presumption, in its supplemental briefing, Resource Club cites to standing order M-61 issued by the chief judge of the United States District Court for the Southern District of New York which states that "any and all proceedings in the Southern District under Title 11 are referred to the bankruptcy judges in the Southern District." (Resource's Supp. Br. 1-2.) 99 Hook's Motion for Remand is also hereby transferred to the Southern District of New York, where the Bankruptcy Court will be in the best position to determine whether the case should be remanded.

## IV. CONCLUSION

For the reasons set forth above, the Court recommends GRANTING Resource's Motion to Transfer Venue to the Southern District of New York and transferring 99 Hook's Motion to Remand. Pursuant to Local Civil Rule 72. 1, the parties have fourteen days from receipt of this Report and Recommendation to file and serve any objections.

Footnotes
1    The following facts are taken from 99 Hook's Brief in Support of its Motion to Remand (Docket Entry No. 5).
2    The Superior Court-Appellate Division's opinion in the Designer Action was issued after 99 Hook filed its summary judgment motion in the Resource Action, but before any oral argument on the motion could be heard.

**End of Document**                                    © 2012 Thomson Reuters. No claim to original U.S. Government Works.

2011 WL 6303290
Only the Westlaw citation is currently available.
NOT FOR PUBLICATION
United States District Court,
D. New Jersey.

Gabriella TATUM, et al., Plaintiffs,
v.
CHRYSLER GROUP, LLC, Defendant.

Civil Action No. 10–4269
(ES)(CLW). | Dec. 16, 2011.

**Attorneys and Law Firms**

Christopher A. Seeger, Scott A. George, Seeger Weiss LLP, Newark, NJ, James E. Cecchi, Lindsey H. Taylor, Carella Byrne Cecchi Olstein Brody & Agnello, P.C., Roseland, NJ, for Plaintiffs.

Kathleen M. Fennelly, Thomas R. Curtin, Graham, Curtin, PA, Morristown, NJ, for Defendant.

**Opinion**

*OPINION and ORDER*

SALAS, District Judge.

**\*1** On October 3, 2011, Magistrate Judge Cathy Waldor issued a Report and Recommendation (D.E.57) recommending that this Court grant Defendant Chrysler Group, LLC's ("Chrysler") Motion to Transfer Venue to the Bankruptcy Court for the Southern District of New York as to Count I, deny Chrysler's Motion to Transfer Venue as to Counts II–IV, and administratively terminate the case pending resolution of Count I.[1] The parties were given notice that they had fourteen days from their receipt of the Report and Recommendation to file and serve any objections pursuant to Local Civil Rule 72.1(c)(2). Plaintiffs timely filed an objection, (D.E.58), and Defendant timely filed a response. (D.E.59). Having carefully reviewed the Report and Recommendation *de novo* and the submissions by the parties, the Court hereby ADOPTS the thoughtful and thorough Report and Recommendation of Magistrate Judge Waldor, attached below. In addition to adopting the facts, the procedural history, the summary of the parties' arguments on transfer, the discussion, and the conclusions of Magistrate Judge Waldor, the Court addresses the Plaintiffs'

main objections and the Defendant's main responses to the Report and Recommendation.

First, in their objections to the below Report and Recommendation, Plaintiffs argue that "[a]s a threshold matter, the Court cannot properly grant Chrysler's motion pursuant to 28 U.S.C. § 1412—a statute that governs the transfer of cases already in bankruptcy court" because "this case is not now, nor has it ever been, in bankruptcy." (Pl. Objection at 6). Defendant responds that this case "relates to" a bankruptcy proceeding, and therefore § 1412 provides a proper vehicle for transfer. Defendant further contends, "Plaintiffs refuse to acknowledge the controlling law in this Circuit, and the wealth of opinions from this District, finding that § 1412 is the proper statutory framework for analyzing transfer in a 'related to' proceeding." (Def. Response Br. at 4–5). The Court agrees with Defendant, and adopts the reasoning of Magistrate Judge Waldor, emphasizing the following:

> The Third Circuit and this District, specifically, have consistently applied § 1412 to transfer of "related to" bankruptcy proceedings. *See Johanna Foods, Inc. v. Toobro Holdings TBF LLC,* No. 11–2612, 2011 WL 1791352 (D.N.J. May 10, 2011); *Perno v. Chrysler Grp., LLC,* No. 10–5100, 2011 WL 868899, at \* 4 (D.N.J. Mar.10, 2011); *Donahue v. Vertis, Inc.,* No. 10–2942, 2010 WL 5313312 (D.N.J. Dec.20, 2010); *Clark v. Chrysler Grp., LLC,* No. 10–3030, 2010 WL 4486927, at \*6 (E.D.Pa. Nov.5, 2010); *Abrams v. General Nutrition Cos., Inc.,* No. 06–1820, 2006 WL 2739642 (D.N.J. Sept.25, 2006). Here, Count I of the Complaint requires interpretation of the Bankruptcy Court's Sale Order to determine whether Chrysler has assumed certain liability in this case. As such, the case is "related to" the bankruptcy proceeding and the Court deems it unnecessary to address this argument further.

**\*2** (Report and Recommendation, D.E. 57 at 6 n. 2). Therefore, the Court finds that transfer is proper under § 1412, because § 1412 is an appropriate vehicle for transfer where a case relates to a bankruptcy proceeding, and because Count I is related to such a proceeding.

Second, Plaintiffs argue that "[t]ransfer under Section 1412 is entirely discretionary with the Court," "the moving party bears the heavy burden of establishing the need for transfer," and the factors "weigh strongly against transfer of Count I in this case." (Pl. Objection at 7–8). Defendant responds that the relevant factors favor transfer. (Def. Response Br. at 6–8). Courts are to consider the following non-

exhaustive list of factors when determining whether transfer is appropriate under the interests of justice prong: (1) the economics of estate administration; (2) a presumption in favor of the home court; (3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) the enforceability of any judgment; and (7) plaintiff's choice of forum. *Perno,* 2011 WL 868899, at *3. The Court adopts Magistrate Judge Waldor's careful consideration of the factors, and highlights the following point. In their objections, Plaintiffs argue that "[t]he parties have already invested substantial time and money in proceedings before this Court," and therefore the factor of judicial efficiency weighs in favor of denying transfer. (Pl. Objection Br. at 8). Defendant counters that Magistrate Judge Waldor already "noted [that] Plaintiffs' argument that this Court is more familiar with these proceedings 'is of marginal truth,' due both to the recent reassignment of the case to a new judge and because the Bankruptcy Court has a far superior knowledge of the Sale Order which must be interpreted." (Def. Response Br. at 7). Indeed, the Court finds that transferring a claim related to a Sale Order to the court that retained jurisdiction to interpret it promotes efficiency. This point—along with the Court's independent review of the factors—satisfies the Court that Defendant has met its burden of establishing the need for a transfer.

Third, Plaintiffs argue that "[t]here is no dispute that Counts II–IV are not affected by the Sale Order, and thus they should not be delayed while the Sale Order is interpreted in the Bankruptcy Court," thus, [i]t is paramount that all discovery on this case ... not be frozen *indefinitely* pending the determination on Count I." (Pl. Objection at 11–12). Defendant responds, "[a]bsent a stay, this Court will be faced with the possibility of expending its limited resources presiding over discovery disputes involving some claims, only to have to revisit those disputes if Plaintiffs' 'other' claim is deemed to be viable by the Bankruptcy Court." (Def. Response Br. at 9–10). The Court agrees with Defendant.

Under its inherent power to manage its docket, the Court finds that proceeding with discovery over claims that could be affected by the determination of Count I in the bankruptcy court undermines judicial efficiency and exposes the parties to potentially unnecessary costs. *See, e.g., Int'l Consumer Prods. N.J., Inc. v. Complete,* No. 07–325, 2008 WL 2185340, at *1 (D.N.J. May 23, 2008) (staying action and directing the parties to proceed before the bankruptcy court "even in the absence of the bankruptcy petition" based on the court's "inherent power to control the docket" because "the

interests of judicial economy will be best served by staying this action in its entirety"), *reconsideration denied by* No. 07–325, 2008 WL 4723025 (D.N.J. Oct.24, 2008); *All–Am. Chevrolet, Inc. v. De Santis,* No. 05–5672, 2007 WL 4355477 (D.N.J. Dec.7, 2007) (staying action pending determination in bankruptcy court pursuant to the court's "inherent power to control the docket and in the interests of judicial economy" and granting leave to the parties to move to reopen the case "when appropriate"); *Jackson Hewitt Inc. v. Childress,* No. 06–909, 2008 WL 834386 (D.N.J. Mar.20, 2006) (staying case "pending the outcome of proceedings in the Bankruptcy Court").

**\*3** Finally, the Court addresses Plaintiffs concern that discovery will be stayed indefinitely pursuant to this Order. The Court shares Plaintiffs' concern, and therefore clarifies Magistrate Judge Waldor's recommendation to administratively terminate the case pending a determination of Count I in bankruptcy court. Per the below Order— and pursuant to its inherent power to manage its docket —the Court stays the action *sua sponte* for purposes of avoiding potentially duplicative litigation and discovery. *See, e.g., Rodgers v. U.S. Steel Corp.,* 508 F.2d 152, 162 (3d Cir.1975) ("The district court had inherent discretionary authority to stay proceedings pending litigation in another court."); *Landmark Am. Ins. Co. v. Rider Univ.,* No. 08– 1250, 2010 U.S. Dist. LEXIS 110020, at *27–28, 2010 WL 4063199 (D.N.J. Oct. 14, 2010) ("[The] Court exercises its discretion to *sua sponte* stay this matter and administratively terminate the case pending the outcome of factual discovery in the underlying ... Action pending in Superior Court."); *MEI, Inc. v. JCM Am. Corp.,* No. 09–351, 2009 U.S. Dist. LEXIS 96266, at *12, 2009 WL 3335866 (D.N.J. Oct. 15, 2009) ("Federal courts have inherent power to control their dockets by staying proceedings." (citing *Landis v. N. Am. Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). In light of this stay, the Court shall exercise its discretion to administratively terminate—without prejudice—Defendant's Motion to Dismiss Second Amended Complaint Pursuant to Fed.R.Civ.P. 12(b) (6) and 9(b) (D.E.37) and Defendant's Motion to Dismiss for Lack of Jurisdiction (D.E.38), pending the bankruptcy court's decision on Count I. *See, e.g., SEC v. Infinity Grp. Co.,* 212 F.3d 180, 197 (3d Cir.2000) ("Matters of docket control and scheduling are within the sound discretion of the district court."); *White v. City of Trenton,* Slip. Op. No. 06–5177 (D.N.J. Oct. 14, 2009) (exercising discretion "to administratively terminate Defendant's Motion for Summary Judgment pending a decision on Mr. White's Motion for Reconsideration"). Once the bankruptcy Court has decided Count I, the Court grants leave to re-file the motions.

Additionally, to ensure that the case does not stall indefinitely, below the Court orders that the parties file a one-page joint status letter every ninety days from the date of the below Order until the bankruptcy court reaches a conclusion, addressing the progress of Count I.

### *ORDER*

IT IS on this 15th day of December 2011 ORDERED as follows:

1. The thoughtful and thorough Report and Recommendation of Magistrate Judge Waldor is hereby adopted—as clarified in the above Opinion—as the opinion of this Court;

2. Defendant's Motion to Transfer Venue to the Bankruptcy Court for the Southern District of New York as to Count I is GRANTED;

3. Defendant's Motion to Transfer Venue to the Bankruptcy Court for the Southern District of New York as to Counts II–IV is DENIED;

4. The Court administratively stays this action until the resolution of Count I in bankruptcy court;

**\*4** 5. The Court administratively terminates the following motions, granting leave for them to be re-filed after the resolution of Count I in the bankruptcy court: Defendant's Motion to Dismiss Second Amended Complaint Pursuant to Fed.R.Civ.P. 12(b)(6) and 9(b) (D.E.37) and Defendant's Motion to Dismiss for Lack of Jurisdiction (D.E.38);

6. The Clerk of Court shall administratively terminate the following motion, decided in this Opinion and Order: (D.E.32);

7. The Clerk of Court shall administratively terminate the Report and Recommendation of Magistrate Judge Waldor, adopted in this opinion: (D.E.57);

8. The Court directs the parties to file a one-page joint status letter every ninety days from the date of this Order until the bankruptcy court resolves Count I, addressing the progress of the Count.

### REPORT & RECOMMENDATION

WALDOR, United States Magistrate Judge.

Before the Court is Defendant Chrysler Group LLC's ("Chrysler") motion to transfer venue ("Motion to Transfer Venue") pursuant to 28 U.S.C. § 1412 to the Bankruptcy Court for the Southern District of New York. (Docket Entry No. 32). Plaintiffs Gabriella Tatum and Jamie Meyer ("Plaintiffs") submitted opposition to the motion. (Docket Entry No. 36). Pursuant to Local Civil Rule 72. 1, the Honorable Esther Salas, United States District Judge, referred this motion to the Undersigned for report and recommendation. For the reasons set forth below, this Court respectfully recommends GRANTING in part and DENYING in part Chrysler's Motion to Transfer Venue to the Bankruptcy Court for the Southern District of New York.

### I. FACTS AND PROCEDURAL HISTORY

Plaintiffs filed their original complaint ("Complaint") on August 19, 2010 alleging the existence of a braking defect in model-year 2009 and 2010 Dodge Journey vehicles. Plaintiffs seek relief, in part, for alleged violations of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8–1, *et seq.* This claim is based on alleged acts and omissions occurring before Defendant existed. More specifically, on April 30, 2009, Old Carco LLC (f/k/a Chrysler LLC) and several of its subsidiaries ("Old Carco" and/or "Debtors") filed for bankruptcy protection in the United States Bankruptcy Court for the Southern District of New York. *See In re Old Carco LLC (f/k/a Chrysler LLC),* Case No. 09–50002 (Bankr.S.D.N.Y.). Defendant Chrysler, an entity that did not exist until April 28, 2009, purchased certain assets of Old Carco in the bankruptcy proceeding pursuant to the terms of a 49–page Order entered by the Bankruptcy Court on June 1, 2009 "(I) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith and Related Procedures, and (III) Granting Related Relief" ("the Sale Order"). The Sale Order addressed, in pertinent part, whether Chrysler would be responsible for the liabilities of the Debtors:

**\*5** Except for the assumed liabilities expressly set forth in the purchase agreement or described therein ... none of the Purchaser, its successors or assigns or any of their respective affiliates shall have any liability for any claim that (a) arose prior to the closing date, (b) relates to the production of vehicles prior to the Closing date or (c) is otherwise assertable against the Debtors or is related to the Purchased Assets prior to the Closing Date. The Purchaser

shall not be deemed ... to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors ... (b) have, *de facto,* or otherwise, merged with or into the Debtors; or (c) be a mere continuation or substantial continuation of the Debtors or the enterprise of the Debtors.

(Sale Order ¶ 35.)

The Sale Order also addressed whether Chrysler Group would be liable for state breach of warranty claims under the Magnuson–Moss Warranty Act:

Notwithstanding anything else contained herein or in the Purchase Agreement, in connection with the purchase of the Debtor's brands and related Purchased Assets, the Purchaser, from and after the Closing, will recognize, honor and pay liabilities under Lemon Laws for additional repairs, refunds, partial refunds (monetary damages) or replacement of a defective vehicle (including reasonable attorneys' fees, if any, required to be paid under such Lemon Laws and necessarily incurred in obtaining those remedies), and for any regulatory obligations under such Lemon Laws arising now, including but not limited to cases resolved pre-petition or in the future, on vehicles manufactured by the Debtor in the five years prior to the Closing (without extending any statute of limitations provided under such Lemon Laws), but in any event not including punitive, exemplary, special, consequential, or multiple damages or penalties and not including any claims for personal injury or other consequential damages that may be asserted in relationship to such vehicles under the Lemon Laws. As used herein, "Lemon Law" means a federal or state statute, including, but not limited to, claims under the Magnuson–Moss Warranty Act based on or in conjunction with a state breach of warranty claim, requiring a manufacturer to provide a consumer remedy when the manufacturer is unable to conform he vehicle to the warranty after a reasonable number of attempts as defined in the applicable statute.

(Sale Order ¶ 19.)

The Bankruptcy Court retained jurisdiction to "interpret, enforce, and implement the terms and provisions of [the] Sale Order and Purchase Agreement." (Sale Order ¶ 43.) The Bankruptcy Court has also noted that it has "special expertise regarding the meaning of its own order," and that "its interpretation is entitled to deference." *Wolff v. Chrysler Group,* slip op. at 13 (Adv.Proc. No. 10–5007, S.D.N.Y., July 30, 2010) (attached to Def's Mot. at Ex. H, at 7; CM/ECF No. 32).

On December 22, 2010, Chrysler filed a motion to dismiss ("Motion to Dismiss") pursuant to Fed.R.Civ.P. 12(b)(6), arguing that Chrysler is not liable for obligations that existed prior to the bankruptcy reorganization that created Chrysler as it is presently constituted. (Docket Entry No. 6). On March 28, 2011, Judge Cavanaugh issued an opinion granting in part and denying in part Chrysler's Motion to Dismiss. (Docket Entry No. 13). As it relates to the instant motion, Judge Cavanaugh discussed and analyzed the relevant law relating to successor liability but ultimately reserved decision with respect to whether Chrysler impliedly assumed liability under the Sale Order. *Id.*

**\*6** On May 24, 2011, Plaintiffs filed a Second Amended Complaint ("SAC"). The SAC contains four causes of action: Counts I and II allege violations of the NJCFA; Count III alleges breach of warranty under the Magnuson–Moss Warranty Act; and Count IV alleges breach of express warranty under state law. On May 27, 2011, Chrysler filed the present Motion to Transfer Venue pursuant to 28 U.S.C. § 1412. (Docket Entry No. 32). On June 21, 2011, Plaintiffs filed opposition to Chrysler's Motion to Transfer Venue. (Docket Entry No. 36).

## II. PARTIES' ARGUMENTS ON TRANSFER

Defendant contends that the issue of whether Chrysler assumed the liabilities for the claims made in Count I of Plaintiffs' SAC should be determined by the Bankruptcy Court that issued the Sale Order. (Def's Br. 7). In support, Chrysler argues that several district courts, including courts in this District, have transferred cases brought against Chrysler to the Bankruptcy Court, which has retained jurisdiction to interpret and enforce the Sale Order, when a threshold issue in the case involved a dispute over an alleged assumed liability.[1] *Id.* at 9. Here, Chrysler contends that Plaintiffs' claims raise a threshold issue as to whether Chrysler assumed liabilities arising out of violations of state consumer protection statutes thus requiring an interpretation and application of the Sale Order. As such, it is Chrysler's belief that transfer is appropriate. *Id.* at 10.

Plaintiffs argue that transfer is inappropriate because the only claim that may arguably implicate assumed liability is the Count I NJCFA claim, N.J.S.A. 56:8–1, *et seq.* (Pl's Br. 2). Plaintiffs further claim that because the original Complaint was filed on August 19, 2010, the Court has already invested considerable time becoming familiar with the relevant facts and legal issues thus making this Court the more efficient

forum to handle the litigation. *Id.* Next, Plaintiffs take issue with the means by which Defendant seeks to transfer the case; namely, Plaintiffs argue that 28 U.S.C. § 1412 is inapplicable because the statute governs transfer of cases already pending in bankruptcy court. Finally, Plaintiffs claim that Chrysler's filing of the present motion, more than nine months after the case was filed, is nothing more than a prejudicial attempt to forum-shop. *Id.* at 6.

Neither party disputes that the remaining three counts of the Complaint may be properly and effectively handled by this Court. In fact, Chrysler conceded and stipulated on the record that it assumed liabilities associated with breach of warranty claims arising out of alleged defects in the vehicles at issue. (Def's Br. 1, n. 1). Moreover, Chrysler has explicitly represented and agreed as follows: "If this case is transferred so that the Bankruptcy Court can interpret its own Sale Order on the 'successor liability' issue implicated by the First Count of the SAC, Chrysler Group will not oppose a motion filed by Plaintiffs to remand back to this Court whatever claims may remain after that Court issues its ruling(s) on any legal issues implicated by the SAC." (Def.'s Reply Br. 5).

## III. DISCUSSION

### A. Legal Standard

**\*7** 28 U.S.C. § 1412 provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interests of justice or for the convenience of the parties." *Id.* Section 1412 allows for the transfer of a case either of two situations: in the interests of justice **or** for the convenience of the parties. *Clark v. Chrysler Group, LLC,* No. 10–3030, 2010 WL 4486927, at \*5 (E.D.Pa. Nov.5, 2010) (emphasis added); *In re Dunmore Homes, Inc.,* 380 B.R. 663, 670 (S.D.N.Y.2008) ("Section 1412 is worded in the disjunctive allowing a case to be transferred under either the interest [of justice] rationale or the convenience of parties rationale."); *Perno v. Chrysler Group, LLC,* No. 10–5100, 2011 WL 868899 (D.N.J. Mar.10, 2011). [2]

Defendant moves to transfer under the interests of justice prong. This prong is "broad and flexible" and must be "applied on a case-by-case basis." *Perno,* 2011 WL 868899, at \*3 (citing *Gulf States Exploration Co. v. Manville Forest Prods. Corp.,* 896 F.2d 1384, 1391 (2d Cir.1990). Courts are to consider the following non-exhaustive list of factors when determining whether transfer is appropriate under the interests of justice prong: (1) the economics of estate administration; (2) a presumption in favor of the home court;

(3) judicial efficiency; (4) the ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) the enforceability of any judgment; and (7) plaintiff's choice of forum. *Id.*

A case need not be transferred in whole. Fed.R.Civ.P. 21 provides: "any claim against any party may be severed and proceeded with separately." *See Chrysler Credit Corp. v. Country Chrysler, Inc.,* 928 F.2d 1509, 1518–19 (10th Cir.1991) (holding that claims may be properly severed under Fed.R.Civ.P. 21); *Dao v. Knightsbridge Intern. Reinsurance Group,* 15 F.Supp.2d 567 (D.N.J.1998); *Murray, Wilson and Hunter v. Jersey Boats, Inc.,* No. 91–7733, 1992 WL 37516, at \*2 (E.D.Pa., Feb.21, 1992). A court may order severance of an action on its own initiative. *American Fidelity Fire Ins. Co. v. Construcciones Werl, Inc.,* 407 F.Supp. 164 (D.Vi.1975). *See In re LR Buffalo Creek, LLC,* No. 09–196, 2009 WL 2382285 (W.D.N.C. July 30, 2009) (severing and transferring claim deemed related and critical to the bankruptcy proceeding).

### B. Application

#### 1. Count I: Violation of the New Jersey Consumer Fraud Act

The Court finds that transfer of Count I is appropriate because it is necessary to interpret the Sale Order to determine whether Chrysler has assumed certain liabilities in this case. The relevant § 1412 factors favor transfer. First, courts have concluded that when civil actions are related to a pending bankruptcy, there is a presumption that the district where the bankruptcy case is pending is the appropriate venue. *Toth v. Bodyonics, Ltd.,* No. 06–1617, 2007 WL 792172, at \*2 (E.D.Pa. Mar.15, 2007). To that end, Chrysler asserts, and Plaintiff concedes, that interpretation of the Sale Order is required to determine whether a claim requiring both a breach of warranty **and** bad faith or unfair dealing equates with a claim for breach of warranty, alone, within the meaning of the Sale Order. Second, transfer will promote judicial efficiency. As noted above, the Bankruptcy Court has expressly retained jurisdiction to interpret the terms of its Sale Order. (Sale Order ¶ 43). By transferring the case to the Bankruptcy Court, the Court reduces the risk of inconsistent interpretation of the Sale Order. As Judge Falk noted in *Perno,* "allowing for different courts in different jurisdictions to interpret the terms of the Sale Order creates the possibility for inconsistent determinations, inconsistent liability to [Chrysler], and needless confusion." 2011 WL 868899, at \*4.

**\*8** The Court has considered Plaintiffs' choice of forum, convenience and expedience arguments and the deference afforded to Plaintiffs in litigating in the forum they select. However, these factors are outweighed by those stated above. Specifically, although Plaintiffs argue that this Court is more familiar with these proceedings, that representation is of marginal truth. This case was first referred to this particular Court on August 3, 2011. As such, the Court has had little opportunity to engage in more than a cursory review of the Sale Order. The Bankruptcy Court, however, as the enforcer of the Sale Order at issue, is significantly more familiar with the voluminous Sale Order. Lastly, to the extent Count I requires the application of New Jersey law, Plaintiffs are not precluded from filing a motion to remand the claim back to this Court once the question of Chrysler's liability under the Sale Order is resolved.

Finally, Plaintiffs contend that Chrysler has essentially waived its ability to move to transfer venue because of the purported maturity of this litigation. This Court disagrees. A motion to transfer venue is not deemed to have been waived if not raised in an initial response to the complaint. *McGuire v. Waste Mgmt., Inc.,* No. 09–2591, 2011 WL 692203 (D.S.C. Feb.18, 2011). *See Ins. Co. of N. America v. Ozean/Stinnes–Linien,* 367 F.2d 224, 227 (5th Cir.1966) (holding that a motion to transfer venue could have been made even after a motion to dismiss has been denied); *Campbell v. FMC Corporation,* No. 91–7536, 1992 WL 176417, \*6, n. 6 (E.D.Pa. July 17, 1992) (according no weight to plaintiff's allegation of "dilatoriness" where neither party had progressed far in preparation for trial); *Inter–City Prods. Corp. v. Ins. Co. of N. America,* No. 90–717, 1993 WL 18948, at \*9 (D.N.J. Jan. 26, 1993) (finding that timing did not weigh against transfer). Accordingly, the fact that Defendant first filed its Motion to Transfer Venue nine months after the filing of the original Complaint does not waive its ability to seek relief under § 1412.

## 2. Counts II–IV

The Court does not believe it appropriate to transfer Counts II–IV to the Bankruptcy Court because the remaining claims do not relate to the pending bankruptcy proceeding. The remaining counts are as follows: (1) Count II: Violation of the NJCFA, N.J.S.A. 56:8–1, *et seq.;* (2) Count III: Breach of Written Warranty under the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, *et seq.;* and (3) Count IV: Breach of Express Warranty under State Law. These claims implicate no assumed liability issues. Instead, these claims focus exclusively on breach of warranty claims or rely entirely on allegations related to Chrysler's post-bankruptcy conduct. To that end, Chrysler conceded and stipulated on the record that it assumed the liabilities associated with breach of warranty claims arising out of alleged defects in the vehicles at issue. Additionally, Chrysler has already expressed its willingness to litigate the remaining claims in this forum. Lastly, the Court agrees with Plaintiffs' contention that the balance of factors fails to support transfer. Plaintiffs selected this forum, Named Plaintiff Jamie Meyer's claim arose out of New Jersey, and it would be more convenient and less costly to Plaintiffs to litigate the balance of claims in this District. Accordingly, to the extent Chrysler seeks entry of an Order transferring Counts II–IV to the Bankruptcy Court for the Southern District of New York, this Court recommends that the request be denied.

## IV. CONCLUSION

**\*9** For the reasons set forth above, the Court recommends GRANTING Chrysler's Motion to Transfer Venue to the Bankruptcy Court for the Southern District of New York as to Count I and DENYING Chrysler's Motion to Transfer Venue as to Counts II–IV. In the interest of administrative efficiency, the Court also recommends administratively terminating the case pending resolution of Count I. Pursuant to Local Civil Rule 72. 1, the parties have fourteen days from receipt of this Report and Recommendation to file and serve any objections.

Footnotes

1   Below, the Court adopts a clarified version of this recommendation by Magistrate Judge Waldor. Instead of administratively terminating the case pending a decision on Count I in the bankruptcy court, the Court *stays* the case in this Court pending the bankruptcy court's determination, and this Court administratively terminates the existing motions without prejudice, granting leave to re-file the motions once the case is reactivated.

1   Chrysler specifically points the Court to the following cases: *Perno v. Chrysler Group, LLC,* 2011 WL 868899 at \*3, n. 2 (D.N.J. Mar.10, 2011) at \*3, n. 2; *Shatzki v. Abrams,* No. 09–2046, 2010 WL 148183 (E.D.Ca. Jan.12, 2010); *Clark v. Chrysler Group, LLC,* No. 10–3030, 2010 WL 4486927, \*7–8 (E.D.Pa. Nov.5, 2010); *Doss v. Chrysler Group, LLC,* No. 09–2130, 2009 WL 4730932, \*3 (D.Ariz. Dec.7, 2009); *Cooper v. Daimler AG,* No. 09–2507, 2009 WL 4730306, \*4 (N.D.Ga. Dec.3, 2009).

2    The Court notes Plaintiffs' argument that 28 U.S.C. § 1412 is inapplicable because "the current case was brought against Chrysler Group LLC, a non-bankrupt entity, in federal district court and raises state and federal statutory and common law claims having nothing to do with title 1 1." (Pl. Opp., at 7). However, the Third Circuit and this District, specifically, have consistently applied § 1412 to transfer of "related to" bankruptcy proceedings. *See Perno,* No. 10–5100, 2011 WL 868899 at *4; *Clark,* No. 10–3030, 2010 WL 4486927, at *6; *Johanna Foods, Inc. v. Toobro Holdings TBF LLC,* No. 11–2612, 2011 WL 1791352 (D.N.J. May 10, 2011); *Donahue v. Vertis, Inc.,* No. 10–2942, 2010 WL 5313312 (D.N.J. Dec.20, 2010); *Abrams v. General Nutrition Companies, Inc. .,* No. 06–1820, 2006 WL 2739642 (D.N.J. Sept.25, 2006). Here, Count I of the Complaint requires interpretation of the Bankruptcy Court's Sale Order to determine whether Chrysler has assumed certain liability in this case. As such, the case is "related to" the bankruptcy proceeding and the Court deems it unnecessary to address this argument further.

**End of Document**      © 2012 Thomson Reuters. No claim to original U.S. Government Works.