Page 1

1   UNITED STATES BANKRUPTCY COURT

2   FOR THE SOUTHERN DISTRICT OF NEW YORK

3   Case No. 1-09-50026

4   - - - - - - - - - - - - - - - - - - - - - -x

5   In Re:

6

7   GENERAL MOTORS CORPORATION, et al.,

8

9               Debtors.

10

11   - - - - - - - - - - - - - - - - - - - - - -x

12

13               United States Bankruptcy Court

14               Southern District of New York

15               One Bowling Green

16               New York, NY  10004

17

18

19               March 6, 2012

20               9:45 AM

21

22   B E F O R E:

23   HON. ROBERT E. GERBER

24   U.S. BANKRUPTCY JUDGE

25

Page 2

1      Debtors' Objection to Administrative Proof of Claim No. 70908

2      filed by Lorin W. Tate

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25      Transcribed by: Nick Gereffi

1   A P P E A R A N C E S :

2   WELL, GOTSHAL & MANGERS LLLP

3   Counsel for the GUC Trust and

4   General Motors Corporation

5            767 Fifth Avenue

6            New York, New York 10153-0119

7

8   BY:   CONRAY TSENG, ESQ.

9

10  Via Telephone

11  LORIN W. TATE

12          Pro Se Litigant

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 4

1                    P R O C E E D I N G S

2              THE COURT:  Motors Liquidation.  General Motors.

3              MR. TSENG:   Good morning, Your Honor.  Conray --

4              THE COURT:   Good morning.  Just a minute, please.

5    Peggy, I can't believe I did this.  I think I left the purple

6    folder on the round table in Chambers.  I'm sorry.  Thank you.

7              Let me get appearances of both for the GUC Trust for

8    the estate and for the claimant, if he's on the phone or

9    otherwise here.

10             MR. TSENG:   Good morning, Your Honor.  Conray Tseng,

11   Weil, Gotshal & Manges on behalf of the GUC Trust and the

12   debtor.

13             THE COURT:   Was that Dunn?

14             MR. TSENG:   Tseng, T-s-e-n-g.

15             THE COURT:   T-s-e -- I'm sorry, Mr. Tseng.  Okay.

16             MR. TSENG:   And I believe Mr. Tate is on the line.

17             THE COURT:   Mr. Tate, are you on the phone?

18             MR. TATE:   I am on the line.

19             THE COURT:   I'm sorry.  I heard a voice, but it got

20   garbled.  Are you on the phone, Mr. Tate?

21             MR. TATE:   Yes, I am.

22             THE COURT:   Okay.  Thank you.  All right.

23             Gentleman, I've read the papers, and it does appear

24   to me that there's a threshold issue as to whether I should

25   depart from the words of the contract to make Motors

Page 5

1    Liquidation have to pay for benefits to anybody other than the

2    successor to General Motors Corporation, which, at least

3    seemingly, would be Motors Liquidation Company.

4            Mr. Tseng, I'll hear your argument first.

5            MR. TSENG:   Good morning, Your Honor.

6            The issue before the Court, as you mentioned, is

7    whether or not the contract with Mr. Tate should compensate Mr.

8    Tate for recovery of assets other than to Motors Liquidation

9    Corp. or its predecessor, General Motors Corporation.

10           Based on the terms of the contract -- in this

11   particular Schedule A -- it provides specifically that Mr. Tate

12   would be only compensated for assets where Motors Liquidation

13   Corp. or its predecessor, General Motor Corporation, was the

14   payee.  If you examine Mr. Tate's proof of claim, you'll notice

15   that on exhibit -- Attachment 3, excuse me, the vast majority

16   of the line items there are related to entities not known where

17   the payee is listed as Motors Liquidation Corporation or any

18   other DBA listed it.

19           Based on our calculations, only approximately a

20   maximum recovery of $68,000, seven hundred and twenty -- or

21   $68,721.58 was identified as listing General Motors

22   Corporation, GMC, or any other DBA of General Motors

23   Corporation.  The remainder were listing other entities that

24   either had the name General Motors Corporation but were not

25   General Motors Corporation itself; for example, dealerships or

Page 6

1    primarily GMAC, General Motors Acceptance Corporation known as

2    Ally --

3                THE COURT:  Pause, please, Mr. Tseng.

4                The $68,000 you just referred to, was that

5    receivables that would generate $68,000 to Mr. Tate, or was

6    that $68,000 in money that all GM got?

7                MR. TSENG:   That was $68,000 that was potentially

8    recoverable based on Attachment 3.  We do not believe that

9    General Motors received any amounts.  However, if he did

10   recover such amounts, it would result in a recovery to Mr. Tate

11   of approximately $5,497.72 based on an 8 percent commission as

12   set forth in the agreement.

13               We have attempted to identify and locate such amounts

14   receivable to General Motors but have not been able to find any

15   such amounts.  We also did attempt to look at the various

16   databases set forth in Mr. Tate's proof of claim, and noticed a

17   number of the assets remain listed there.  Nonetheless, the

18   effort and necessity of reconciling all such amounts against

19   Mr. Tate's proof of claim for an amount which could be no more

20   than -- less -- more than $6,000 would be cost prohibitive to

21   the estate and the GUC Trust itself.

22               THE COURT:  Uh-huh.  Anything else before I give Mr.

23   Tate a chance to be heard?

24               MR. TSENG:  The only other thing we'd like to point

25   out, Your Honor, is that we understand that Mr. Tate was

09-50026-mg    Doc 11509    Filed 03/07/12    Entered 03/08/12 15:52:05    Main Document
General Motors Corporation, et al.
Pg 7 of 31

Page 7

1    engaged by General Motors Acceptance Corporation, or GMAC, to

2    recover assets, and we believe that was done pursuant to a

3    separate agreement.  While we do not have that agreement, we

4    were able to locate an application that Mr. Tate filed with the

5    Northern District of Florida, which was attached to our reply,

6    which makes reference to an attorney of power which sets forth

7    an agreement that specifically references a GMAC Agreement

8    similar to the General Motors agreement.  We would believe that

9    any recovery on behalf of GMAC would be governed by that

10   agreement and not our own.

11           I'd also like to point out, Your Honor, that in 2006,

12   General Motors divested its controlling interest of GMAC and

13   therefore would not be authorized or have the ability to direct

14   Mr. Tate to recover assets on behalf of GMAC as it no longer

15   controlled the controlling interest of GMAC.

16           THE COURT:   Did you say that was in 2006?

17           MR. TSENG:   That was in 2006, Your Honor, and I do

18   believe Mr. Tate's agreement dates back to 2008 or seven.

19           THE COURT:   Uh-huh.  So that, even if there were

20   some liability for pre-2006 activities, by reason of control of

21   GMAC -- putting aside any statute of limitations -- that would

22   be a pre-petition claim and not an administrative claim.

23           MR. TSENG:   That's correct, Your Honor.  But -- to

24   point out also, it would be -- the divestiture of GMAC occurred

25   prior to the agreement with Mr. Tate so, therefore, General

Page 8

 1   Motors Corporation itself would not have the ability to

 2   authorize Mr. Tate to recover assets on behalf of GMAC as GM

 3   did not control GMAC.

 4          THE COURT:   Okay.  Thank you.  Mr. Tate, I'll hear

 5   from you now, your argument.

 6          MR. TATE:   Okay.

 7          Judge, you'll understand that I'm representing myself

 8   now since General Motors has all my money and I can't afford an

 9   attorney (indiscernible- 10:11:55), but I did originally

10   contract with General Motors to receive -- to recover assets

11   entitled to every entity of General Motors, including GMAC.

12          I will acknowledge that the sale of GMAC or GMAC

13   shares did affect my contract, but only in the sense that we

14   needed additional documentation from GMAC in order to recover

15   from entities such as the Bankruptcy Court.  So General Motors

16   officials transported in a GMAC representative to sign off on

17   each and every document regarding assets for GMAC because,

18   quite frankly, they didn't want to sign off on these documents

19   themselves.  I'm literally recovering -- I was responsible for

20   recovering millions of dollars -- I mean, personal response --

21   personal -- I was personally responsible for bringing in more

22   than $25 million, both before the bankruptcy and after the

23   bankruptcy.

24          I was given instructions by both -- by all parties at

25   General Motors before the filing of bankruptcy and after the

09-50026-mg    Doc 11509    Filed 03/07/12    Entered 03/08/12 15:52:05    Main Document
General Motors Corporation, et al.
Pg 9 of 31

Page 9

1    filing of bankruptcy.  There was never a termination of that

2    contract, never a transfer of that contract to the new General

3    Motors Corporation.

4           THE COURT:  Mr. Tate, is there any contract

5    amendment that is not yet before me that substantiates your

6    assertion that the contract covers any entity other than

7    General Motors Corporation, now called Motors Liquidation

8    Company?

9           MR. TATE:  No amendments that I'm aware of, but the

10   original contract did, in fact, include all of the entities,

11   including GMAC.

12          THE COURT:  Where in the contract does it say that?

13          MR. TATE:  Hang on just a second.

14          Well, in services under number one -- I'm looking at

15   the contract that is dated --

16          THE COURT:  Thirty, August 2007?

17          MR. TATE:  Yes.  Yes, correct.

18          In number one, halfway down, "Provider will

19   diligently exercise all necessary efforts to secure the release

20   and recovery of assets for General Motors."

21          GMAC -- while they did divest a portion of GMAC --

22   was still an entity of General Motors.  This is backed by

23   conference calls that I had with General Motors at the time.

24   They were a little concerned at their partnership with Cerberus

25   and they didn't want the Cerberus to recovery anything after

09-50026-mg    Doc 11509    Filed 03/07/12    Entered 03/08/12 15:52:05    Main Document
General Motors Corporation, et al.
Pg 10 of 31

Page 10

1    until they identify the -- entitled to General Motors'

2    interest.

3              THE COURT:   Who?

4              MR. TATE:   Cerberus is the company for whom General

5    Motors sold off a portion of GMAC to.

6              THE COURT:   I'm --

7              MR. TATE:   General Motors is finally paying General

8    Motors to retain controlling interest.  Cerberus Capital is who

9    they sold a portion of GMAC to.

10             THE COURT:   Forgive me, Mr. Tate -- is there any

11   place in this contract where GMAC is mentioned?  I could not

12   find it, and I did read the contract in addition to the briefs.

13   I could not see any mention of GMAC.

14             MR. TATE:   Well, none of the subsidiaries are

15   specifically mentioned in the contract.  All of the interests

16   of General Motors were represented in my contract.  You don't

17   see anything for Chevrolet or Cadillac Motors additionally, or

18   GM Warehouse, but I was recovering assets for all of the

19   interests of certain folks.

20             THE COURT:   All right.  Continue please.  You may

21   continue, sir.

22             MR. TATE:   I actually -- hang on just a second.

23             If you were to look at some of the recoveries, there

24   are mediated subsidiaries literally all over the place that are

25   not specifically named.  I was specifically encouraged by

Page 11

1    General Motors to seek and recover any assets titled to any

2    General Motors entity.  So what we utilized was information on

3    8Ks or 10Ks federal filings to identify all the subsidiaries.

4    I was given authorization to recover assets from any General

5    Motors entity.

6              THE COURT:  All right.  Anything else?

7              MR. TATE:  And, again, none of those subsidiaries

8    are specifically named in the contract itself.

9              Your Honor, I'm seeking discovery for all this

10   (indiscernible- 10:17:57) in e-mail form within General Motors.

11   Most of my communication was after the contract was done over

12   the phone.  I've received e-mails from General Motors officials

13   who were obviously talking about my situation and my recovery

14   of these assets for General Motors.  There are taped conference

15   calls.  All of this information is disclosed on.  All can be

16   revealed through discovery.

17             THE COURT:  The long pause was me waiting to hear if

18   you had anything further to say, Mr. Tate.  Is that it?

19             MR. TATE:  Your Honor, may I also add I don't think

20   there's any question that I did the work for General Motors.

21   The only issue at hand is I'm not being compensated for.  I've

22   only been compensated for a fraction of the 8 percent that I

23   was to receive on all the assets in my recovery.

24             THE COURT:  Mr. Tate, when Mr. Tseng was arguing, he

25   said you had a separate contract with GMAC.  Is that so?

09-50026-mg    Doc 11509    Filed 03/07/12    Entered 03/08/12 15:52:05    Main Document
General Motors Corporation, et al.
Pg 12 of 31

Page 12

1          MR. TATE:   I had an additional contract with GMAC,

2     only because I'm willing to do, for instance -- your specific

3     Court is undoubtedly holding assets titled to General Motors,

4     or General Motors entities.   What -- in order for me to

5     retrieve the assets from your Court, your specific Court, you

6     would require documentation on authority in order to receive

7     those assets.   After the sell-off of portion of GMAC, GM

8     officials that I was dealing with were concerned about Cerberus

9     Capital recovering assets that General Motors felt was entitled

10    to them.   So, because the agreement between Cerberus and GMAC,

11    they felt it would be appropriate for an official from GMAC as

12    an entity of General Motors to sign off on the documents for

13    recovery of those specific assets.

14          I could, in turn, present to the Court for the Court

15    to release those assets to General Motors.   It doesn't make any

16    difference who was representing, all of the funds were flowing

17    to General Motors.

18       Again, all of this will be backed by information that

19    General Motors has.

20          THE COURT:   Okay.   Mr. Tate, I've waited about 20 or

21    30 seconds.   Have you completed your argument?

22          MR. TATE:   Sir, that's about the best I can -- I

23    mean, I'm certainly entitled to a portion of the millions of

24    dollars that I brought in for General Motors.

25          I hope you can help me see this through to discovery

09-50026-mg   Doc 11509   Filed 03/07/12   Entered 03/08/12 15:52:05   Main Document
General Motors Corporation, et al.
Pg 13 of 31

Page 13

1    so that we can reveal the facts regarding the case.

2          THE COURT:   Okay.  Mr. Tseng, I'll take reply, if

3    you wish.

4          MR. TSENG:   Just one brief point, Your Honor.

5          THE COURT:   Keep that mic nice and close to you,

6    please.

7          MR. TSENG:   Yes, Your Honor.

8          One brief point, Your Honor; Mr. Tate, by his own

9    admissions, just mentioned that in order to recover assets, he

10   needs to show proper authorization documentation to recover

11   those assets.  You'll notice, on the agreement that he signed

12   with General Motors, the only authorization is for General

13   Motors Corporation, as well as Schedule A, General Motors

14   Corporation.  In order to submit a claim with respect to any

15   other General Motors entity, Mr. Tate would need an

16   authorization signed by duly authorized individual from the

17   specific General Motors subsidiary or affiliate to authorize

18   that.

19         We would ask that Mr. Tate, at least, if he is going

20   to continue down this path, produce such evidence and

21   information.  But, at the end of day, I don't believe that's

22   necessary because, on the face of the contract itself, we are

23   limited to only assets recovered by General Motors Corporation.

24         THE COURT:   All right.  Have a seat, Mr. Tseng, and

25   you stay on the phone, Mr. Tate.  You're going to hear a couple

General Motors Corporation, et al.

Page 14

1    moments of silence.

2              MR. TATE:   Okay.

3              THE COURT:   Folks, this contested matter between

4    claimant Lorin Tate and the Motors Liquidation Company GUC

5    Trust, which is the successor to Motors Liquidation Company and

6    the new name of the old General Motors Corporation, sometimes

7    referred to as Old GM, arises in the Motors Liquidation Chapter

8    11 case.

9              Mr. Tate has filed an administrative expense claim

10   for $2.2 million plus interest, and the GUC Trust has objected

11   on several grounds.  For the reasons that follow, I need to

12   address only the first of those grounds, which raises a

13   threshold issue, and which results in the claim not being

14   disallowed but at least, seemingly, being allowable in a

15   markedly smaller number.

16             And I find that Mr. Tate's claim should be allowed

17   only to the extent that it arises from assets that he recovered

18   on behalf of General Motors Corporation, now known as Motors

19   Liquidation Company.  I do not, today, make a finding regarding

20   the proper amount of Mr. Tate's claim based on the property

21   that General Motors Corporation -- that is, Old GM -- or Motors

22   Liquidation received, and I leave that issue for determination

23   in later proceedings.

24             I, likewise, make no finding as to the extent to

25   which Mr. Tate is entitled to recovery for his services from

Page 15

1    other entities, most significantly GMAC, which I understand to

2    stand for General Motors Acceptance Corporation, a company that

3    GM -- Old GM divested itself of in 2006.

4           As facts, I find that Mr. Tate signed the recovery

5    agreement with General Motors Corporation on August 30, 2007.

6    The contract provided that Mr. Tate's company, which is called

7    Asset Recovery Services, would act on behalf of General Motors

8    to collect unclaimed property held by various jurisdictions.

9    The recovery agreement stated, with respect to compensation,

10   paragraph 3, "In consideration of the services described above,

11   GM agrees to pay provider" -- which without dispute is Mr. Tate

12   and his company -- "a fee as set forth next to the asset value

13   per each item listed on Schedule A only when such amounts are

14   actually received by GM."

15          GM was defined in the introductory paragraph of the

16   recovery agreement as General Motors Corporation, parens in

17   quotes, "GM," right parens -- right quote, right parens, "A

18   Delaware Corporation."  The agreement did not say, in paragraph

19   three, with respect to amounts actually received, that it would

20   also include amounts actually received by subsidiaries,

21   although, using the example that Mr. Tate used in oral argument

22   today -- since, to my understanding, Chevys were made by

23   General Motors Corporation just like Buicks and Pontiacs and

24   other brands then sold by GM, that that would not be a

25   distinction.  But GMAC, being a separate corporation, is not

Page 16

1    GM, and the agreement would have had to have been drafted

2    differently if it were to also cover other companies that were

3    not divisions or products sold by Old GM.

4           Schedule A describes the assets to be recovered by

5    Mr. Tate.  He was authorized to collect all unclaimed assets in

6    the name of General Motors Corporation, and he was to receive a

7    fee equal to 8 percent of the amount collected.  The recovery

8    agreement was eventually extended to its ultimate expiration

9    date of October 15, 2009.

10          General Motors filed a Chapter 11 case before me on

11   June 1, 2009.  Mr. Tate submitted Claim No. 70908 on February

12   12, 2011, along with a statement asserting that his company

13   recovered assets in the amount of $27.6 million.  He also

14   attached spreadsheets listing assets he allegedly recovered

15   from various jurisdictions.  Notably, many, if not most, of the

16   individual items Mr. Tate claims he recovered are listed in the

17   name of GMAC, which, as I noted, was divested by GM long before

18   the Chapter 11 case was filed.

19          Old GM initially objected to Mr. Tate's claim on the

20   basis that Old GM had not received any assets as a result of

21   Mr. Tate's efforts.  Mr. Tate responded to the objection with a

22   set of interrogatories designed to result in an investigation

23   of Old GM's records of its accounts receivable to determine

24   whether Old GM had, in fact, received assets claimed by Mr.

25   Tate on Old GM's behalf.  In its reply, the GUC Trust asked me

General Motors Corporation, et al.

Page 17

1  to focus on what it considered to be a gating or threshold

2  issue, whether the GUC Trust should be required to pay Mr. Tate

3  for property collected on behalf of GMAC or other entities that

4  were different companies than Old GM.

5      Because the language of the contract is unambiguous,

6  I'm compelled to agree with the GUC Trust that Mr. Tate should

7  have a claim only for the amounts recovered on behalf of Old

8  GM, General Motors Corporation, the company named in the

9  contract, as stated in the recovery agreement.

10      Turning now to my conclusions of law; under Section

11 502(a) of the Bankruptcy Code, a claim is deemed allowed unless

12 a party in interest objects.  Here, of course, the GUC Trust,

13 on behalf of Old GM, has done that.  A claim for administrative

14 expense priority requires that the creditors satisfy two

15 elements: the expense must arise out of a transaction between

16 the creditor and the bank -- Chapter 11 debtors' trustee, or

17 debtor-in-possession, and it can be considered administrative

18 only to the extent that the consideration supporting the

19 claimant's right to payment was both supplied to and beneficial

20 to the debtor-in-possession in the operation of the business.

21 Trustees of Amalgamated Insurance Fund vs. McFarlin's, Inc.,

22 789, F.2d, at page 101; that's a decision of the Second Circuit

23 Court of Appeals in 1986.  See also my decision in Applied

24 Theory Corporation, 312 B.R. at page 238, a decision that I

25 issued way back in 2004 citing McFarlin's.

09-50026-mg    Doc 11509    Filed 03/07/12    Entered 03/08/12 15:52:05    Main Document
General Motors Corporation, et al.
Pg 18 of 31

Page 18

1          Because the GUC Trust asked me to interpret its

2     contract with Mr. Tate, I also need to address basic

3     principles, well-settled principles of contract law.  The goal

4     of contract interpretation is to ascertain and, quote, "give

5     effect to the expressed intentions of the parties," period,

6     quote.  Hunt Limited vs. Lifschultz Fast Freight, Inc., 889

7     F.2d, at page 1277.  That's another decision of the Second

8     Circuit.

9          The expressed intentions of the parties, when a

10    contract is reduced to writing, appear in that writing.

11    Therefore, when a Court like me is trying to ascertain

12    contractual intent, he or she starts with the writing itself.

13    The Second Circuit has also held that if a contract is not

14    ambiguous, then the Court should assign the, quote, "plain and

15    ordinary meaning to each term and interpret the contract

16    without the aid of extrinsic evidence," end quote.  See

17    International Multi Foods Corporation vs. Commercial Union

18    Insurance Company, 309 F.3d at page 83.  That's another

19    decision of the Second Circuit.

20         Extrinsic evidence means evidence outside the four

21    corners of the contract, such as evidence of things people may

22    have said or events that may have happened.

23         Given the law I have just stated, Mr. Tate's claim

24    can be allowed to a certain extent, but only to that extent.

25    To the extent that he recovered property for General Motors

Page 19

1   Corporation, the entity named in the contract, of course he's

2   entitled to compensation, barring some circumstances that I

3   don't now have any reason to anticipate.  If he recovered

4   property for a division of the corporation, which is still part

5   of the same corporation, he's entitled to that, too.  But

6   General Motors Corporation was defined in the agreement.  It

7   was a defined term -- that's the way you write contracts.  And

8   then the compensation clause, paragraph 3, said in two places

9   that compensation would be available for recoveries only when

10  such amounts are actually received by GM, and indeed, later on,

11  net amounts received by GM.

12          GMAC, to state the most relevant example, is a

13  different company.  If there was a separate contract with GMAC,

14  and I sense that there was, it may very well be that Mr. Tate

15  can go after GMAC for that.  I take no position on it.  I wish

16  him well.  Maybe I shouldn't wish him well, but I certainly

17  have no standing to make a ruling on that, but GMAC is a

18  different corporation.

19          Now, Mr. Tate spoke in argument, and also in his

20  papers, about his desire for discovery.  With respect to any

21  property that General Motors actually got, if GM wanted to

22  oppose the claim for anything GM got, I would require GM to

23  provide discovery of that character if GM weren't already

24  giving it to him, but GM cannot be obligated to -- even

25  assuming it has the capability -- to provide information with

09-50026-mg    Doc 11509    Filed 03/07/12    Entered 03/08/12 15:52:05    Main Document
General Motors Corporation, et al.
Pg 20 of 31

Page 20

1    respect to other entities by reason of the threshold issue upon

2    which I just ruled.

3            The GM Trust -- excuse me, the GUC Trust, the

4    successor to Old GM -- has represented that it's under taken

5    sufficient diligence to know that it had not received the great

6    bulk of the property allegedly recovered by Mr. Tate, because

7    on its face, it referred to property that would have been

8    payable to GMAC.

9            If there is still controversy with respect to

10   property that General Motors Corporation actually received,

11   we'll have further proceedings to determine the amount to which

12   Mr. Tate is entitled with respect to that.

13           To summarize -- and Mr. Tate, obviously you have some

14   business experience but, without, in any way, hopefully being

15   patronizing, I want to explain the reasons for my decision.

16   When a contract is unambiguous, as this one is, and when it

17   defines terms in a certain way, you have to live with the

18   unambiguous terms of the contract, and the terms that were

19   defined and the coverage for which the contract provided, and

20   you can't go to what I referred to as extrinsic evidence

21   outside the corners of the contract.  On that basis, you have

22   an entitlement for whatever Old GM got, but if any other

23   entities, most significantly GMAC, got it, you have to get

24   whatever you're entitled to from one of them.

25           Mr. Tseng, you are to settle an order in accordance

09-50026-mg   Doc 11509   Filed 03/07/12   Entered 03/08/12 15:52:05   Main Document
General Motors Corporation, et al.
Pg 21 of 31

Page 21

1   with this ruling that says, in substance, that for the reasons

2   stated on the record, the claim shall be allowed to the extent,

3   but only the extent, to which property that would give rise to

4   commissions was received by General Motors Corporation, a

5   Delaware corporation, thereafter referred to as Old GM and

6   Motors Liquidation Corporation.  This order is without

7   prejudice to any rights Mr. Tate might have to recover any

8   entitlement otherwise appropriate under law from any other

9   entity.  The Court expresses no views as to his rights with

10  respect to any entity other than General Motors Corporation,

11  thereafter referred to as Motors Liquidation Corporation.

12          Mr. Tate, you have a right to appeal my

13  determination.  I do want to bring to your attention that the

14  time to file an appeal is very short when it's a bankruptcy

15  appeal, as compared and contrasted to appeals from orders in

16  other courts.  You have 14 calendar days to do that, but the 14

17  days runs from the time of entry of the order, not from the

18  time of this dictated decision.  If you provide an e-mail

19  address or a fax address to Mr. Tseng, I will direct him to

20  send you e-mailed notice of that order within 24 hours at the

21  time the order is entered.

22          I'm sorry?

23          MR. TATE:   Mr. Tseng already has my e-mail address.

24          THE COURT:   Very well.  All right.  Not by way of

25  re-argument, are there any further matters before us?  Mr.

General Motors Corporation, et al.

Page 22

1    Tseng?

2              MR. TSENG:   Your Honor, consistent with your

3    decision and your request for the order, we ask that the order

4    specifically set and allow Mr. Tate's proof of claim in the

5    amount of $5,497.72, which would be the maximum amount of

6    recovery that Mr. Tate would be entitled to should he recover

7    all assets set forth in his proof of claim to General Motors

8    Corporation or any of its divisions or DBAs.

9              THE COURT:   Let me make sure I heard you right.

10             In essence, you're saying that you consent to entry

11   of an order that says that he does have an admin claim for that

12   $5,000-ish number that you just mentioned?

13             MR. TSENG:   Yes.  That would settle this matter for

14   this --

15             THE COURT:   In other words, instead of trying to

16   settle it, you're just prepared to give him the amount that you

17   think he would be appropriately entitled to in the full amount.

18             MR. TSENG:   Correct, Your Honor.

19             THE COURT:   Okay.

20             Mr. Tate, do you have any objection to that?

21             MR. TATE:   I could not hear what he said.

22             THE COURT:   Basically, what he did was he asked that

23   I provide an extra paragraph that says that you would have an

24   allowed administrative claim in an amount -- and forgive me,

25   Mr. Tseng, I keep forgetting the amount.  It's roughly in the

Page 23

```
1     $5,000 order of magnitude.  Could you repeat that?

2             MR. TSENG:   Sure, Your Honor.  The amount is

3     $5,497.72, which would be an 8 percent commission on

4     $68,721.58, or the total amount of recoverable funds set forth

5     on Attachment 3, which lists General Motors Corporation, a

6     division of General Motors Corporation, or any other DBA of

7     General Motors Corporation, as set forth in Mr. Tate's proof of

8     claim.

9             THE COURT:   Did you follow that, Mr. Tate?

10            MR. TATE:  I, again, could not hear what he was

11    saying.

12            THE COURT:   All right.  Part of the problem is he

13    was using the microphone at the counsel table.

14            Mr. Tseng, forgive me.  Come to the main lectern,

15    pull that microphone very close to you, and basically say again

16    what you just said.

17            MR. TSENG:  Yes, Your Honor.

18            We would propose that Mr. Tate have an allowed claim

19    in the amount of $5,497.72, which reflects an 8 percent

20    commission on $68,721.58, or the amounts listing forth in

21    Attachment 3 to Mr. Tate's proof of claim, General Motors

22    Corporation, GMC, or any division of General Motors Corporation

23    or any other DBA setting forth in his attachment.  Therefore,

24    it would be the maximum amount he would be allowed to have or

25    recover if he were to demonstrate that General Motors
```

09-50026-mg   Doc 11509   Filed 03/07/12   Entered 03/08/12 15:52:05   Main Document
General Motors Corporation, et al.
Pg 24 of 31

Page 24

1      Corporation received those funds.

2              THE COURT:   And, if I heard you right, you said GMC,

3      not GMAC.

4              MR. TSENG:   That is correct.  G-M-C.

5              THE COURT:   Okay.  Mr. Tate, do you want to be heard

6      on his recommendation that I add that paragraph?

7              MR. TATE:  Sure.  That's a suggestion that they were

8      only paid $68,000 worth of assets that I have not been

9      compensated on.  That's completely incorrect, so I would object

10     to that type of wording's ability to eliminate me from being

11     compensated on what I duly brought in to General Motors on

12     behalf of the company before or after declaring bankruptcy.

13             THE COURT:   Well, if you don't want it, I'm not

14     going to make you take it now.  I would, if you wanted to, give

15     you that and say it's without prejudice to your rights to

16     appeal if you think you're entitled to more.  But, if you don't

17     want it, I'm not going to force you to take it.

18             Your decision, Mr. Tate

19             MR. TATE:   I am entitled to more.

20             THE COURT:   Well, I understand your position is

21     you're entitled to more, and I understand and will not be

22     insulted if you want to appeal, but I'll give you one more

23     opportunity to take that $5,400, if you want, without prejudice

24     to your right to appeal.  If you choose not to do it, you don't

25     need to.

09-50026-mg    Doc 11509    Filed 03/07/12    Entered 03/08/12 15:52:05    Main Document
General Motors Corporation, et al.
Pg 25 of 31

Page 25

1          Just tell me whether or not you want that included,

2     Mr. Tate, and I'll give it to you either way.

3          MR. TATE:   I don't know my legal options here, Your

4     Honor, other than what you're giving me.  I do know, for a

5     fact, that General Motors benefitted from my efforts on their

6     behalf without me being compensated on more than $68,000.

7          THE COURT:   All right.  Very well.

8          MR. TATE:   I --

9          THE COURT:   Under these circumstances --

10          MR. TATE:   -- was hoping for fairness in this

11     process.

12          THE COURT:   Well, Mr. Tate, whenever people dispute

13     matters before me and I have to make a decision, I do it as

14     fairly as I can based upon my understanding of the law, and

15     after having read the papers with as much care as I possibly

16     can -- and I don't always get it right, but you should know

17     that I tried to get it right, and that I always try to be fair.

18          In any event, Mr. Tseng, given Mr. Tate's response,

19     you are to leave out that paragraph that actually gives him the

20     allowed claim.  However, you are to add a paragraph that says,

21     "This order is without prejudice to Mr. Tate's rights to seek

22     and obtain the $5,400" -- or the exact amount you told me --

23     "at any time he wishes, if he is of a mind to do so.  This

24     right is without prejudice to his rights to seek and obtain

25     appellate review of any aspects of the Court's decision with

09-50026-mg    Doc 11509    Filed 03/07/12    Entered 03/08/12 15:52:05    Main Document
General Motors Corporation, et al.
Pg 26 of 31

Page 26

1   which he disagrees."

2           The legislative history of that extra paragraph,

3   folks, is to help Mr. Tate to protect his rights to appellate

4   review if he wants to do -- get appellate review and, at the

5   same time, to avoid unnecessary litigation before me.

6           And I appreciate that GM was trying to do the right

7   thing.  I understand and appreciate Mr. Tate's different

8   perspective, and, as I said, folks, I'm just trying to do my

9   job as best I can.

10          MR. TATE:   Your Honor, can I ask a question?

11          THE COURT:   Yes, sir.  I can't give you legal

12  advice, but I can clarify my ruling, if you need to.

13          MR. TATE:   Okay.  Is this eliminating the

14  possibility -- the $68,000 that Mr. Tseng references as by

15  their own calculation?  General Motors has literally all of the

16  documentation regarding what they perceived as not received.

17  Does that eliminate my possibility for discovery?

18          THE COURT:   If you are talking about discovery from

19  GM, I have to balance your right to discovery with undue

20  burden.

21          Certainly, if you think there is actually anything

22  that Old GM got -- that Motors Liquidation got -- that Old GM

23  hasn't given you credit for, I will look to you and Old GM to

24  work out some kind of method so that you can understand how

25  that amount is determined, and if there's anything that you

Page 27

1    think that Old GM got that you didn't get credit for, you can

2    bring that to my attention.

3            I am not, however, at least today, going to authorize

4    a free-form expiration of the entirety of Motors Liquidation's

5    records without some kind of focus that would cost, at least

6    seemingly, hundreds of thousands or millions of dollars.

7            If you have a particular receipt that you want Motors

8    Liquidation to trace, that could be a way to skin the cat.  I'm

9    not going to micro-manage that process now.

10           Also, I've been told that many, if not most of,

11   Motors Liquidation's Records are no longer in the hands of

12   Motors Liquidation, so we would have to --

13           MR. TATE:   So would that change to be at my

14   disadvantage?

15           THE COURT:   Well, I understand that, but, with

16   respect, sir, you know -- I've given you a lot of time, and

17   I've tried very, very hard to be courteous, but there are

18   limits to your entitlement as a matter of law, and I am not

19   today going to order Motors Liquidation to turn the company

20   upside down foraging for stuff unless there's some reason to

21   believe it might be in Motors Liquidation's records, and that's

22   my opinion on that supplemental request.

23           All right, folks.  We're adjourned.

24           MR. TSENG:   Oh, Your Honor, actually --

25           THE COURT:   Yes, Mr. Tseng?

09-50026-mg   Doc 11509   Filed 03/07/12   Entered 03/08/12 15:52:05   Main Document
General Motors Corporation, et al.
Pg 28 of 31

Page 28

1          MR. TSENG:   One last clarification request in terms

2     of next steps.

3          General Motors -- or the Motors Liquidation Trust's

4     calculation of the total amount as set forth in Mr. Tate's

5     proof of claim is $68,721.58.  We would welcome Mr. Tate to

6     provide any further accounting, but, in terms of next steps, we

7     would like to find what would be the best procedure to fix and

8     allow Mr. Tate's proof of claim.

9          We would suggest that Mr. Tate produce any other

10    accounting of his own, based on his own attachments and

11    exhibits in his proof of claim, before we move forward with any

12    discovery or any further steps.

13         THE COURT:  All right.  I'm going to construe that

14    as giving Mr. Tate another opportunity to give Motors

15    Liquidation any substantiation for any additional amounts he

16    thinks that Motors Liquidation got.

17         Mr. Tseng, have you already given him an explanation

18    for how you reached the $68,000 portion?

19         MR. TSENG:   I do believe so. If not, we can happily

20    send him the Excel spreadsheet that sets forth each line item

21    that we've identified and how we came across the $68,000.

22         THE COURT:   Okay.

23         I think each side should provide information at that

24    level of detail to the other side if and to the extent either

25    has not already done so.

General Motors Corporation, et al.

1                    MR. TSENG:    Will do, Your Honor.

2                    THE COURT:    Okay. We're adjourned.

3                    MR. TSENG:    Thank you, Your Honor.

4                    MR. TATE:    Thank you, Your Honor.

5

6              (Whereupon these proceedings were concluded at 10:57 AM)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                          I N D E X

 2

 3                          RULINGS

 4                                              Page    Line

 5    Debtors' Objection to Administrative Proof of  20     13

 6    Claim No. 70908- conditional approval

 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

General Motors Corporation, et al.

Page 31

1

2                        C E R T I F I C A T I O N

3

4     I, Nick Gereffi, certify that the foregoing transcript is a

5     true and accurate record of the proceedings.

6

7

8

9     _____

10    NICK GEREFFI

11

12    Veritext

13    200 Old Country Road

14    Suite 580

15    Mineola, NY 11501

16

17

18    Date:  March 7, 2012

19

20

21

22

23

24

25