HEARING DATE AND TIME: May 15, 2012 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: May 8, 2012 at 4:00 p.m. (Eastern Time)

Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Attorneys for Motors Liquidation
Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 Case No. |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

## NOTICE OF OBJECTION TO PROOF OF
## CLAIM NO. 28820 FILED BY ATUL SHAH

**PLEASE TAKE NOTICE** that on April 12, 2012, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011, filed its objection to proof of claim number 28820 filed by Atul Shah (the "**Objection**"), and that a hearing (the "**Hearing**") to consider the Objection will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **May 15, 2012, at 9:45 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Dickstein Shapiro, LLP, attorneys for the GUC Trust, 1633 Broadway, New York, New York, 10019-6708  (Attn: Barry N. Seidel, Esq., and Stefanie Birbrower Greer, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors, LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); (xii) Gibson, Dunn & Crutcher LLP, attorneys for Wilmington Trust Company as GUC Trust Administrator and for Wilmington Trust Company as Avoidance Action Trust Administrator, 200 Park Avenue, 47th Floor, New York, New York 10166 (Attn: Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust Monitor and as the Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree Street, Suite 500, Atlanta, Georgia 30309 (Attn: Anna Phillips); (xiv) Crowell & Moring LLP, attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590 Madison Avenue, 19th Floor, New York, New York 10022-2524 (Attn: Michael V. Blumenthal, Esq.); and (xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard, Austin, Texas 78703, so as to be received no later than **May 8, 2012, at 4:00 p.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection, the GUC Trust may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated:  New York, New York
        April 12, 2012

> /s/ Stefanie Birbrower Greer
> Barry N. Seidel (BS-1945)
> Stefanie Birbrower Greer (SG-2898)
>
> DICKSTEIN SHAPIRO LLP
> 1633 Broadway
> New York, New York 10019-6708
> Telephone: (212) 277-6500
> Facsimile: (212) 277-6501
>
> *Attorneys for Motors Liquidation
> Company GUC Trust*

**HEARING DATE AND TIME: May 15, 2012 at 9:45 a.m. (Eastern Time)**
**RESPONSE DEADLINE: May 8, 2012 at 4:00 p.m. (Eastern Time)**

Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Attorneys for Motors Liquidation*
*Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                          :
In re                                     :        Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :        09-50026 (REG)
        f/k/a General Motors Corp., et al. :
                                          :
        Debtors.                          :        (Jointly Administered)
                                          :
-------------------------------------------------------------x
```

**OBJECTION TO PROOF OF CLAIM**
**NO. 28820 FILED BY ATUL SHAH**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

RELIEF REQUESTED........................................................................................................ 2

JURISDICTION ................................................................................................................... 3

BACKGROUND ................................................................................................................. 3

THE PRE-PETITION ACTIONS......................................................................................... 4

THE CLAIM ........................................................................................................................ 5

ARGUMENT ....................................................................................................................... 5

     A.    As a Threshold Matter, Certain of the Causes of Action  are Procedurally
          Improper or Prohibited by Applicable Law ........................................................... 6

     B.    There is No Legal or Factual Basis for Claims Based on Violations of Title VII,
          the ADEA, or the ELCRA ...................................................................................... 8

     C.    The Damages Sought by Dr. Shah are Unsupported by Applicable Law............. 13

CONCLUSION................................................................................................................... 15

DOCSNY-501394

## <u>TABLE OF AUTHORITIES</u>

Page

<u>Cases</u>

*Bickerstaff v. Vassar Coll.,* 196 F.3d 435 (2d Cir. 1999) ...........................................................12

*Boise v. Boufford*, 121 F. App'x 890 (2d Cir. 2005) ...................................................................15

*Castro v. City of New York*, No. 09-cv-3754, 2012 WL 592408 (S.D.N.Y. Feb. 24, 2012) .........15

*Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656 (S.D.N.Y. 2011)..........................7

*Dean v. Westchester Cnty. Dist. Attorney's Office*, 119 F. Supp. 2d 424 (S.D.N.Y. 2000) ...........8

*Eide v. Kelsey-Hayes Co.*, 427 N.W.2d 488 (Mich. 1988) ..........................................................15

*Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142 (S.D.N.Y. 2008)........................................13

*Glenwright v. Xerox Corp.*, No. 07-cv-6325L, 2011 WL 6209180 (W.D.N.Y. Dec. 14, 2011) .........................................................................................................................................9

*Griffin v. Ambika Corp.*, 103 F.Supp.2d 297 (S.D.N.Y. 2000) ...................................................12

*Hall v. State Farm Ins. Co.*, 18 F. Supp. 2d 751 (E.D. Mich. 1998) .............................................7

*Harrington v. Potter*, No. 09-cv-1322, 2011 WL 709829 (N.D.N.Y. Feb. 22, 2011)....................8

*Hatter v. New York City Hous. Auth.*, No. 97-cv-9351, 1998 WL 743733 (2d Cir. Oct. 22, 1998) .......................................................................................................................................15

*In re A.H. Robins Co., Inc.*, 89 B.R. 555 (E.D. Va. 1988)...........................................................14

*In re Chain*, 255 B.R. 278 (Bankr. D. Conn. 2000).....................................................................6

*In re Ionosphere Clubs, Inc.*, 103 B.R. 416 (S.D.N.Y. 1989).......................................................3

*In re Johns-Manville Corp.*, 68 B.R. 618 (Bankr. S.D.N.Y. 1986) ..............................................14

*In re The Leslie Fay Cos.*, 212 B.R. 747 (Bankr. S.D.N.Y. 1997) .................................................3

*In re Marino*, 90 B.R. 25 (Bankr. D. Conn. 1988) ......................................................................6

*In re Sheehan Mem'l Hosp.*, 377 B.R. 63 (Bankr. W.D.N.Y. 2007) ..............................................3

*In re Worldcom, Inc.*, No. 02-13533, 2005 WL 3875191 (Bankr. S.D.N.Y. Jun. 3, 2005).............3

*In re Worldcom, Inc.*, No. 02-13533, 2006 WL 3860765 (Bankr. S.D.N.Y. Dec. 29, 2006)..........3

*Iverson v. Verizon Communications*, No. 08-cv-8873, 2009 WL 3334796 (S.D.N.Y. Oct. 13, 2009) ........................................................................................................11

*Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich. App. 543, 487 N.W.2d 499 (1992) .............8

*Kern v. City of Rochester*, 93 F.3d 38 (2d Cir.1996) ........................................................9

*Legeno v. Douglas Elliman, LLC*, 311 F. App'x 403 (2d Cir. 2009) ...............................8

*Manson v. Little Rock Newspapers, Inc.*, 200 F.3d 1172 (8th Cir. 2000)..........................6

*Marin v. Bloom Roofing Sys., Inc.*, 795 F. Supp. 2d 634 (E.D. Mich. 2011) ....................9

*Mattera v. JP Morgan Chase Corp.*, 740 F. Supp. 2d 561 (S.D.N.Y. 2010).........................11, 12

*Mekuria v. Bank of Am.*, No. 10-cv-1325, 2011 WL 4430868 (D.D.C. Sept. 23, 2011)..............13

*Milano v. Astrue*, No. 05-cv-652, 2008 WL 4410131 (S.D.N.Y. Sept. 26, 2008).......................12

*Olin Corp. v. Riverwood Int'l Corp.*, 209 F.3d 125 (2d Cir. 2000) ...................................5

*Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552 (1990) ......................................5

*Patane v. Clark*, 508 F.3d 106 (2d Cir. 2007) ...............................................................9

*Petway v. New York City Transit Auth.*, 450 F. App'x 66 (2d Cir. 2011) .........................9

*Prysak v. R.L. Polk Co.*, 483 N.W.2d 629 (Mich. Ct. App. 1992)....................................6

*Rafferty v. Markovitz*, 602 N.W.2d 367 (Mich. 1999)....................................................15

*Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 120 S. Ct. 1951 (2000).......................8

*Ricks v. Conde Nast Pubis., Inc.*, 92 F.Supp.2d 338 (S.D.N.Y. 2000) ............................12

*Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238 (S.D.N.Y. 2001)...............11

*Sanders v. Human Res. Admin.*, 361 F.3d 749 (2d Cir. 2004).......................................9

*Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454 (S.D.N.Y. 2011) ..........7

*Shamilov v. Human Res. Admin.*, No. 10-cv-8745, 2011 WL 6085550 (S.D.N.Y. Dec. 6, 2011) ..............................................................................................................9, 10

*Sibley v. KLM-Royal Dutch Airlines*, 454 F. Supp. 425 (S.D.N.Y. 1978)....................14

*Sutherland v. Mich. Dep't. of Treasury*, 344 F.3d 603 (6th Cir.2003) ...........................9

*Williams v. City of N.Y.*, 508 F.2d 356 (2d Cir. 1974)................................................14

*Williams v. Time Warner Inc.*, No. 09-cv-2962, 2010 WL 846970 (S.D.N.Y. Mar. 3, 2010) ................................................................................................................................13

*Woodcock v. Montefiore Med. Ctr.*, 48 F. Supp. 2d 231 (E.D.N.Y. 1999).....................................7

*Woodland v. Michigan Citizens Lobby*, 423 Mich. 188, 378 N.W.2d 337 (1985) .........................6

Constitutional Provisions

U.S. Const. Amend. I ..............................................................................................................1, 2, 6

Statutes

11 U.S.C. § 105.........................................................................................................................14

11 U.S.C. § 362...........................................................................................................................5

11 U.S.C § 502(b) .......................................................................................................................3

28 U.S.C. § 157...........................................................................................................................3

28 U.S.C. § 1334.........................................................................................................................3

42 U.S.C. § 2000e2(a)(1)............................................................................................................9

29 U.S.C.A. § 623 .......................................................................................................................9

42 U.S.C.A. § 1981(A)(b)(3) ....................................................................................................15

Age Discrimination in Employment Act of 1967 ................................................................ passim

Mich. Comp. Laws Ann. § 37.2202.............................................................................................9

Title VII of the Civil Rights Act of 1964............................................................................. passim

Rules

Fed. R. Bankr. P. 3001(f)............................................................................................................5

Fed. R. Bankr. P. 3007(a) ...........................................................................................................3

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or modified from time to time, the "**Plan**"), objects to proof of claim number 28820 filed by Dr. Atul Shah  (the "**Claim**"), a former contract physician of the Debtors, because the Claim fails to set forth a legal basis sufficient to support any right of payment from the Debtors.  In support of this Objection, the GUC Trust respectfully represents:

## PRELIMINARY STATEMENT

1.      Dr. Shah, a *pro se* litigant, seeks $10 million from the Debtors for damages allegedly suffered in connection with the Debtors' decision to terminate his services contract.  As set forth more fully herein, Dr. Shah's claims – which were previously rejected by the Equal Employment Opportunity Commission (the "**EEOC**") and the Michigan Department of Civil Rights (the "**MDCR**") – should be expunged for failure to set forth a valid legal basis for recovery against the Debtors.

2.      The Claim, which itself lacks any substantive detail, appears to incorporate by reference the charge filed by Dr. Shah with the EEOC and the MDCR (the **"Charge"**), and in the complaint he filed in the United States District Court for the Eastern District of Michigan (the "**Complaint**").  The claims asserted in the Charge and the Complaint include:  (i) denial of First Amendment rights under the constitutions of the United States and Michigan (the "**First Amendment claim**"); (ii) discrimination (collectively, the "**Discrimination Claims**") on the basis of color, national origin, religion, race, and age under, as applicable, Title VII of the Civil Rights Act of 1964 ("**Title VII**"), the Michigan Elliot-Larson Civil Rights Act (the "**ELCRA**"),

and the Age Discrimination in Employment Act of 1967 (the "**ADEA**"); and (iii) retaliation for engaging in activity protected by Title VII.  As described more fully below, it is obvious from the face of the Complaint and the pleadings filed with the EEOC and the MDCR, that such claims fail as a matter of law.  In summary:

- The First Amendment claim fails because there is no individual right of action against a private entity (here, the Debtors) for the violation of an individual's First Amendment rights.

- The race discrimination and retaliation claims are barred as a matter of law because they were not included in the Charge.

- The remaining Discrimination Claims fail because the allegations are insufficient to satisfy the requisite elements of such claims under Title VII, the ELCRA and the ADEA, as applicable.  The vast majority of allegations made by Dr. Shah in the Complaint and the Charge are deficient because they are conclusory and/or are merely a recitation of the applicable legal elements.  The limited facts in the Complaint fail to satisfy even the basic standards required to establish such claims.

3.      Additionally, in seeking recovery of $10 million in punitive damages from the Debtors, Dr. Shah seeks compensation which – even if the Claim had merit –  he would not be entitled to as a matter of law.  Consequently, if the Court does not disallow and expunge the Claims as requested in herein, the Claim should be capped at $500,000 (the asserted amount of compensatory damages), and Dr. Shah should be prohibited from pursuing any recovery from the Debtors beyond such amount.

## **RELIEF REQUESTED**[1]

4.      By this Objection, the GUC Trust seeks entry of an order  disallowing and expunging the Claim pursuant to section 502(b) of title 11 of the United States Code (the

---

[1]      For purposes of the GUC Trust's objection to the Claims, the GUC Trust requests the Court treat the facts alleged by Dr. Shah as true.  However, the GUC Trust reserves the right to challenge such factual allegations.  Additionally, the GUC Trust reserves the right to raise any other objections to the extent this Objection is not sustained.

"**Bankruptcy Code**") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").  Alternatively, the GUC Trust seeks entry of an order limiting Dr. Shah's potential recoveries on account of the Claim, as more fully described herein.

## JURISDICTION

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  *See, e.g.*, *In re Sheehan Mem'l Hosp.*, 377 B.R. 63 (Bankr. W.D.N.Y. 2007); *In re Worldcom, Inc.*, No. 02-13533, 2006 WL 3860765 (Bankr. S.D.N.Y. Dec. 29, 2006); *In re Worldcom, Inc.*, No. 02-13533, 2005 WL 3875191 (Bankr. S.D.N.Y. Jun. 3, 2005); *In re The Leslie Fay Cos.*, 212 B.R. 747 (Bankr. S.D.N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 103 B.R. 416 (S.D.N.Y. 1989).

## BACKGROUND

6.      Dr. Shah first began working with Debtors in 1997.  *See* Exhibit A at ¶ 11. During the relevant period, Dr. Shah's services were governed by a contract dated November 4, 2004 (the "**Contract**").  *See* Exhibit B, Attachment 1.  The Contract did not include any assurances or guarantees that GM would retain Dr. Shah's services for a specified period, nor did it include any obligation by either of the parties to renew the agreement.  *Id.*  As such, either party was free to terminate the Contract at any time.  Dr. Shah remained a contract physician for the Debtors from November 2004 until his contract was terminated in 2008.  *See* Exhibit A ¶ 11; Exhibit C, Attachment 1.

7.      On June 11, 2008, Dr. Stanley Miller, D.O., the Senior Group Medical Director, and Dr. Anthony Burton, MD, Plant Medical Director, informed Dr. Shah that the Contract would be terminated.  *See* Exhibit A ¶ 21.  According to Dr. Shah, Dr. Burton informed him that the Debtor's decision was based on a "problem with documentation and 'other reasons.'"  *Id.* at ¶ 32.

8.      In July 2008, the Debtors mistakenly sent a notice to Dr. Shah that the Contract

had had been extended until December 31, 2009.  *See* Exhibit D at 2.  Dr. Shah was later

informed that the notice was sent due to a clerical error.  *Id*.  The Debtors did not intend to (and

as a matter of law did not) renew the contract.

## THE PRE-PETITION ACTIONS

9.      On December 4, 2008, Dr. Shah filed the Charge, alleging that he was terminated

by the Debtors as a result of discrimination on the basis of color, religion, national origin, and

age.  *See* Exhibit D at 2.  In the Charge, Dr. Shah set forth his discrimination claim as follows:

> On June 11, 2008, I was removed from my position as Contract
> Physician. No explanation was given to me with regards to my removal. I
> had not had any prior disciplinary action filed against me and I was the
> only one removed at this time, In July 2008, I received documentation
> that my contract had been extended until December 31, 2009.  When I
> called with regards to this document, I was told it was a clerical error.
>
> I can only conclude that I have been discriminated against by being
> removed from my position due to my color, age, religion and national
> origin in violation of Title VII of the Civil Rights Act of 1964, as
> amended and the Age Discrimination in Employment Act of 1967, as
> amended.

10.     On July 7, 2009, the EEOC dismissed the EEOC Charge.  *See* Exhibit E.  On

September 16, 2009, the MDCR accepted the EEOC's findings and dismissed the charge under

the ELCRA.  *See* Exhibit F.

11.     On October 13, 2009 – after commencement of the Debtors' chapter 11 cases –

Dr. Shah filed the Complaint against Debtors and a third party, asserting the claims contained in

the Charge, as well as several additional claims.  In 2010, Dr. Shah agreed to voluntarily dismiss

the Complaint, presumably because of the automatic stay under section 362 of the Bankruptcy

Code.  *See* Exhibit G.  In August 2010, the Court dismissed the entire action.  *Id.*

## THE CLAIM

12.    On or about November 17, 2009, Dr. Shah filed a timely claim against the Debtors in the bankruptcy proceeding.  *See* Exhibit H.  In the Claim, Dr. Shah asserts that he was unlawfully terminated "because of religion, race, etc," and seeks "ten million dollars" related to "employment discrimination."  *Id.*  The Claim is related to the same events that gave rise to the Charge and the Complaint, and appears to incorporate specifically the Charge and the Complaint by reference.

## ARGUMENT

13.    For a prepetition claim to be valid, the claimant must demonstrate he possesses a right to payment and that the right arose prior to the filing of the bankruptcy petition.  *See Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000).  A right to payment is an enforceable obligation.  *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990).  Bankruptcy Rule 3001(f) further provides that a proof of claim is *prima facie* evidence of the validity and amount of such claim.  If the claimant does not allege a sufficient legal basis for the claim, the claim is not considered *prima facie* valid, and the burden remains with the claimant to establish the validity of the claim.  *In re Chain*, 255 B.R. 278, 280, 281 (Bankr. D. Conn. 2000); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988).

14.    Each of the causes of action incorporated into the Claim are defective for the reasons set forth in detail below.  Thus, the Claim fails to establish that Dr. Shah has any valid legal right against the Debtors that gives rise to an enforceable obligation.

A.     **As a Threshold Matter, Certain of the Causes of Action
       are Procedurally Improper or Prohibited by Applicable Law**

1.     **Dr. Shah's First Amendment Claims are Barred as a Matter of Law**

15.    The Complaint includes a claim for violation of Dr. Shah's "First Amendment

Rights of Freedom of Speech and Freedom of Religion under the United States and State of

Michigan Constitutions."  *See* Exhibit A ¶ 36.  Given that a private entity cannot violate an

individual's rights under the constitutions of the United States or Michigan, such claims cannot,

as a matter of law, prevail against the Debtors.  *See Manson v. Little Rock Newspapers, Inc.*, 200

F.3d 1172 (8th Cir. 2000) (private entity was legally incapable of violating employee's First

Amendment rights to free speech and association); *Prysak v. R.L. Polk Co.*, 483 N.W.2d 629

(Mich. Ct. App. 1992) (private employer was not bound by constitutional provisions

guaranteeing freedom of speech under Michigan Constitution), citing *Woodland v. Michigan

Citizens Lobby*, 423 Mich. 188, 212, 378 N.W.2d 337, 348 (1985) (Michigan Constitutional

protection of free speech is "limited to protection against state action").  In short, even if these

claims had any substantive merit (which they do not), the First Amendment Claim cannot be

brought against the Debtors as a matter of law, and thus does not establish an enforceable

obligation against the Debtors.

2.     **Dr. Shah's Race Discrimination and Retaliation
       Claims are Barred as a Matter of Law**

16.    The Complaint includes claims for race discrimination and retaliation.  *See*

Exhibit A ¶¶ 19, 35.  Such claims also fail as a matter of law, because they were not raised by

Dr. Shah in the Charge.  A discrimination complaint is generally "limited to the scope of the

EEOC investigation reasonably expected to grow out of the charge of discrimination."  *Hall v.

State Farm Ins. Co.*, 18 F. Supp. 2d 751, 765 (E.D. Mich. 1998), *aff'd* 1 F. App'x 438 (6th Cir.

2001) (dismissing plaintiff's sex discrimination claims under Title VII and ELCRA where she

failed to include them in her EEOC charge); *see also Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011) (claim based on national origin discrimination barred where charge alleged only racial discrimination).

17.     A claim filed in court that is "based on a wholly different type of discrimination than that asserted" in the EEOC charge is barred as a matter of law. *Senno v. Elmsford Union Free Sch. Dist.,* 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011) (internal quotations omitted). Here, Dr. Shah asserted a discrimination claim based on national origin in the Charge, but failed to include a racial discrimination claim. Given that a claim of discrimination based on national origin is different from a claim of race discrimination, Dr. Shah's race discrimination claim is invalid on its face. *See Woodcock v. Montefiore Med. Ctr.*, 48 F. Supp. 2d 231, 234 (E.D.N.Y. 1999) (claim of discrimination based on national origin is wholly different from a claim of race discrimination). Additionally, because the Charge did not include a retaliation claim, Dr. Shah also cannot recover against the Debtors through this cause of action. *See Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 677 (S.D.N.Y. 2011) (claim of pre-EEOC retaliation was barred where plaintiff failed to allege claim in EEOC charge).

18.     In light of the foregoing, Dr. Shah cannot rely on either the race discrimination claim or retaliation claim as a basis for recovery against the Debtors.

**B.    There is No Legal or Factual Basis for Claims Based
on Violations of Title VII, the ADEA, or the ELCRA[2]**

19.    The remaining causes of action asserted by Dr. Shah seek recovery under Title

VII, the EEOC and the ADEA based on allegations that the Debtors terminated Dr. Shah because

of his national origin, color, religion, and/or age.  *See* Exhibit A ¶¶ 36-37; Exhibit D.[3]  None of

these claims – under any of the statutes cited – are sufficient to establish a valid legal claim

against the Debtors.  *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S. Ct. 1951,

1955 (2000) (a claim in bankruptcy is evaluated based on the underlying substantive law); *Dean

v. Westchester Cnty. Dist. Attorney's Office*, 119 F. Supp. 2d 424, 430 (S.D.N.Y. 2000) (those

who seek the protection of Title VII and similar statutes "must allege and prove their entitlement

thereto").  Thus, none of the claims asserted by Dr. Shah are sufficient to establish a *prima facie*

claim which would entitle him to any recovery against the Debtors.

---

[2]    Title VII, the ADEA, and the ECLRA apply only to employees and *do not* apply to independent contractors.  *See, e.g., Harrington v. Potter*, No. 09-cv-1322, 2011 WL 709829 (N.D.N.Y. Feb. 22, 2011) (dismissing Title VII action where plaintiff was admittedly an independent contractor); *Legeno v. Douglas Elliman, LLC*, 311 F. App'x 403, 405 (2d Cir. 2009) (dismissing ADEA claim brought by plaintiff who applied for independent contractor position, because independent contractors not covered by the ADEA); *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich. App. 543, 553, 487 N.W.2d 499, 505 (1992) (affirming dismissal of ELCRA complaint brought by physician who was an independent contractor).

Dr. Shah does not allege that he was an employee at the time of his contract termination and, in fact, he admits that he was a "contract physician" (Exhibit A ¶¶ 11, 19, 22, 30) who was "affiliated" with Debtors at the time of his termination (*id.* ¶ 22).  Indeed, the Contract expressly stated that Dr. Shah would "function as an independent contractor and would not have the status of an employee of GM."  *See* Exhibit B, Attachment 1 at page 2.  As such, Dr. Shah's discrimination claims should be dismissed on this ground alone.  However, given that this issue is likely to raise questions of fact, the GUC Trust, at this time, simply reserves all rights to make this argument in the future.  For the purposes of this Objection only, the GUC Trust will assume Dr. Shah is entitled to the benefit of the statutes cited.

[3]    Even if it were determined that Dr. Shah did not waive his race discrimination and retaliation claims, such claims would fail for the same reasons that his other discrimination claims fail.  *See* Section C below.

20.    To state a viable cause of action under Title VII, the ELCRA, and/or the ADEA[4] a plaintiff must allege that:  (i) he belongs to a protected class, (ii) he suffered an adverse employment action, and (iii) the adverse action at issue occurred under circumstances giving rise to an inference of discriminatory intent.[5]  *Shamilov v. Human Res. Admin.*, No. 10-cv-8745, 2011 WL 6085550 (S.D.N.Y. Dec. 6, 2011), citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) and *Sanders v. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004).  The *sine qua non* of a discriminatory action claim is that the alleged adverse action must have occurred *because* plaintiff was in the protected category.   *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (affirming dismissal of Title VII claim where plaintiff failed "to plead any facts that would create an inference that any adverse action taken by defendant was based upon her gender") (internal quotation marks omitted); *see also Petway v. New York City Transit Auth.*, 450 F. App'x 66, 67 (2d Cir. 2011) (affirming dismissal of claims by *pro se* plaintiff where he failed to support the contention that the alleged conduct occurred *because* of his disability).[6]

---

[4]    Under both Title VII and the ELCRA, it is unlawful for an employer to discharge an employee on the basis of, among other characteristics, the employee's race, national origin, color, and/or religion.  *See* 42 U.S.C. § 2000e2(a)(1) (Title VII); Mich. Comp. Laws Ann. § 37.2202 (ELCRA).  Under the ADEA and ELCRA, it is unlawful for an employer to discharge an employee because of his age.  *See* 29 U.S.C.A. § 623 (ADEA); Mich. Comp. Laws Ann. § 37.2202. Claims under Title VII, the ELCRA, and the ADEA are evaluated under the same standard and approach.  *Marin v. Bloom Roofing Sys., Inc.*, 795 F. Supp. 2d 634, 639 (E.D. Mich. 2011), citing *Sutherland v. Mich. Dep't. of Treasury*, 344 F.3d 603, 614 n. 4 (6th Cir.2003) (ELCRA evaluated under same standard as Title VII); *see Glenwright v. Xerox Corp.*, No. 07-cv-6325L, 2011 WL 6209180 (W.D.N.Y. Dec. 14, 2011) (ADEA disparate treatment claims and Title VII discrimination claims addressed together).

[5]    In assessing whether this standard is met, conclusory assertions and formulaic recitations – without factual allegations to support them – are not afforded any weight.  *See, e.g.*, *Kern v. City of Rochester*, 93 F.3d 38, 44 (2d Cir.1996) ("A conclusory allegation without evidentiary support or allegations of particularized incidents, does not state a valid claim.").

[6]    While courts review *pro se* complainants under a more lenient standard than that applied to formal pleadings drafted by lawyers, courts need not accept as true plaintiff's "conclusions of law or unwarranted deductions of fact," *Shamilov v. Human Res. Admin.*, 10–cv-8745, 2011 WL 6085550 (S.D.N.Y. Dec. 6, 2011) (quotations omitted).

21.    Here, the Complaint (which includes the claims made in the Charge) fails to satisfy the required elements to establish a claim under Title VII, the EEOC and/or the ADEA. Instead, the Complaint is rife with legal conclusions or unwarranted deductions of fact.  For example:

- Dr. Shah asserts his contract was terminated "because of his religion and the appropriate practice of that religion in the workplace."  Exhibit A at 2.  However, the Complaint does not indicate that Dr. Shah practiced his religion in the workplace, that the Debtors knew of any such practice, or that any specific actions were taken by the Debtors in response thereto.

- Dr. Shah claims that "[o]n June 11, 2008, [he] was unfairly discriminated against . . ." (*id.* ¶ 17), and that his "removal from the GM Plant as Contract Physician was based upon [his] religion, nationality, color, race and age." *Id.* ¶ 19.  He does not provide any facts which support such conclusions.

- Dr. Shah further asserts that "Dr. Burton did not mention and concealed the purpose of [the June 11] meeting . . . which was to discriminate and retaliate against him." *Id.* ¶ 24.  He further states, without factual support, that the "articulated reasons for [his] termination was just a pretext for discrimination based upon [his] race (Asian), nationality (Indian), religion (Hinduism), age (59) and reprisal." Id. ¶ 35.

- Dr. Shah recites the elements of an intentional discrimination claim, supported not by facts – but only by the circular conclusion that the alleged discrimination was "intentional and willful." *Id.* ¶ 36.

- The Complaint also lists the elements of a disparate treatment claim. *Id.* ¶ 37.[7]  However, nowhere does it include facts which would support a conclusion that such elements can be satisfied.

---

[7]    Dr. Shah supports his disparate treatment claim by stating that he was "treated differently than similarly situated white, American, Christian or Muslim Contract Physicians."  Although an inference of discrimination may arise if plaintiff alleges that similarly situated employees, outside plaintiff's protected class, were treated *preferentially*, conclusory allegations of the type proffered by Dr. Shah are insufficient to raise an inference of discrimination.  *See Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (dismissing Title VII case where plaintiff failed to provide any specific factual allegations to enable Court to evaluate her asserted belief that similarly-situated male employees were treated preferentially).

22.     The few arguably factual allegations contained in the Complaint (even if accepted as true and interpreted in the light most favorable to the claimant) are insufficient to show, as a matter of law, that Dr. Shah has a facially valid legal claim against the Debtors.  For example:

- At the time of his termination, Dr. Shah did not have any prior disciplinary actions filed against him.  *See* Exhibit D; *see also* Exhibit A ¶ 11.  Dr. Shah practiced medicine for thirty years and "has excellent and versatile experiences and medical knowledge in his career as a practicing physician."  Exhibit A ¶¶ 12-15.  Further, "[m]ost of [Dr. Shah's] patients, medical staffs and co-workers were happy with his professional knowledge and attitudes."  *Id.* ¶ 12.

  Prior positive performance is insufficient to create an inference that subsequent discipline is based on pretext.  *See Mattera v. JP Morgan Chase Corp.*, 740 F. Supp. 2d 561, 577 (S.D.N.Y. 2010) ("[P]laintiff's claim of prior favorable performance does not, without more, prove his subsequent poor reviews were unwarranted."), citing *Iverson v. Verizon Communications*, No. 08-cv-8873, 2009 WL 3334796 (S.D.N.Y. Oct. 13, 2009) ("Demonstration of past positive performance is insufficient to raise a genuine issue of disputed fact with respect to pretext.").  Thus, even if Dr. Shah had a perfect performance record prior to the events leading up to the June 2008 termination of his contract, this would not create an inference of discrimination.

- Dr. Miller told Dr. Shah that his contract was being terminated after it "was alleged that there was a problem with documentation and 'other reasons.'"  Exhibit A ¶ 32.  Dr. Miller did not provide Dr. Shah with details or provide documentation supporting the decision to terminate him, and Dr. Shah did not believe the statements made about him were accurate.  *Id.* ¶¶ 33, 34.

  An individual's disagreement with a supervisor's assessment of his performance is insufficient to create an inference of discrimination.  *See Milano v. Astrue*, No. 05-cv-652, 2008 WL 4410131 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 382 F. App'x 4 (2d Cir. 2010) (merely disagreeing with supervisor's assessment of performance is insufficient to raise an issue of fact regarding pretext); citing *Griffin v. Ambika Corp.*, 103 F.Supp.2d 297, 309 (S.D.N.Y. 2000) (that employee disagrees with employer's assessment of her performance is insufficient to show that employer's proffered reason for an adverse action was pretextual); *Ricks v. Conde Nast Pubis., Inc.*, 92 F.Supp.2d 338, 347 (S.D.N.Y. 2000) (same).

11

Therefore, the fact that Dr. Shah took issue with his supervisor's assessment of his performance is not sufficient to show his contract termination was discriminatory.

- Dr. Shah sent articles that he wrote to another doctor at GM, which stated, among other things, that "Vedic Literature in Sanskrit language from India contains superior knowledge than the conventional modern science including Bio-medical science." "Dr. Miller, Dr. Burton and other people from western background did not like this idea and dismissed Dr. Shah." Dr. Shah claims, based on his expertise in "in understanding and revealing 'Expressed Intentions' and 'Concealed Intentions,'" that these articles, together with the Debtors' "concealed and expressed intentions," caused his termination. Exhibit A ¶ 39.

   An employee's subjective feelings and perceptions of being discriminated against simply are not evidence of discrimination. *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999). Therefore, Dr. Shah's apparent perception that Drs. Miller and Burton "did not like" the ideas expressed in his articles does not create an inference of discrimination sufficient to support a claim; nor does Dr. Shah's apparent perception regarding the "concealed and expressed" intentions of Drs. Miller and Burton when they informed him of his termination.

- Dr. Shah was the only contract physician removed at that time (*i.e.*, June 2008). Exhibit C at 2.

   The mere fact that an individual is terminated does not raise an inference of discrimination, regardless of whether the termination occurs due to performance problems, conduct issues – or even without any "cause." *See, e.g.*, *Williams v. Time Warner Inc.*, No. 09-cv-2962, 2010 WL 846970 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) (even if defendant terminated employee for "no reason," such termination does not give rise to inference of discrimination because "there is a distinction between firing Plaintiff for no reason and firing Plaintiff for a prohibited reason"), citing *Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 145 n. 5 (S.D.N.Y. 2008) (upholding the rule that an at-will employee may be "discharged for any nondiscriminatory reason *or no reason at all*" (emphasis added)).

23.    In the Complaint and Charge, Dr. Shah essentially argues that "because he was mistreated and because he is [a member of a laundry list of protected categories], there must be some connection between the two. Such supposition is not enough" to establish even a *prima*

facie claim. *Mekuria v. Bank of Am.*, No. 10-cv-1325, 2011 WL 4430868, at *3 (D.D.C. Sept. 23, 2011). In light of the foregoing, the Claim fails to establish even the minimal allegations necessary to support a claim of discrimination under Title VII, the ADEA, or the ELCRA. As such, the Claim does not provide a legal basis for a valid employment discrimination claim and thus cannot meet the *prima facie* standard under the Bankruptcy Code.

<div align="center">*    *    *</div>

24.    Based on the foregoing, Dr. Shah does not have any legal right to payment from the Debtors. Therefore, the Claim is not *prima facie* valid and the Debtors have no enforceable obligations to Dr. Shah.

## C.    The Damages Sought by Dr. Shah are Unsupported by Applicable Law

25.    Even if Dr. Shah had any valid claims against the Debtors (which he does not), the damages he seeks are well beyond what is supported by law. Indeed, recovery for the causes of action asserted by Dr. Shah is limited to compensatory damages – which here are sought in the amount of $500,000, as explained below. Thus, to the extent the Court finds that Dr. Shah has any valid causes of action against the Debtors, the Claim should be capped and Dr. Shah should be prohibited from seeking any damages from the Debtors in excess of such cap.

### 1.    Punitive Damages Cannot Be Recovered Against a Liquidating Entity

26.    Dr. Shah is not entitled to recover punitive damages from the Debtors. The purpose of punitive damages is to punish wrongdoers and deter future wrongful conduct. *See In re Johns-Manville Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom., Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) (citing *Williams v. City of N.Y.*, 508 F.2d 356 (2d Cir. 1974)); *Sibley v. KLM-Royal Dutch Airlines*, 454 F. Supp. 425 (S.D.N.Y. 1978). However, in a bankruptcy setting where the recovery of punitive damages by some creditors depletes recovery of other creditors, courts have

<div align="center">13</div>

regularly exercised their equitable power pursuant to section 105 of the Bankruptcy Code to disallow or subordinate punitive damage claims. *See, e.g.*, *In re Johns-Manville*, 68 B.R. at 627; *In re A.H. Robins Co., Inc.*, 89 B.R. 555, 562 (E.D. Va. 1988).

27.    Awarding punitive damage claims to certain unsecured creditors in cases where all unsecured creditors are not receiving full satisfaction of their claims in effect forces those impaired creditors to pay for the debtor's wrongful conduct. *See In re Johns-Manville Corp.*, 68 B.R. at 627-28 (stating "it is well within the authority of this court to disallow a claim for punitive damages . . . where allowing such a claim would ill serve the policy of such awards"). Punitive damage claims are particularly inappropriate in instances where, as here, the debtor is liquidating, as there is no deterrent purpose or effect.  Based on the foregoing, the Claim should be limited to the $500,000 in compensatory damages sought by Dr. Shah.

## 2.    Punitive Damages Are Limited Under the Applicable Employment Statutes

28.    Even if the Court were to find, under applicable bankruptcy law, that Dr. Shah was not completely barred from recovering punitive damages based on the Debtors' liquidation, the applicable employment statutes limit any potentially recoverable punitive damages to $300,000.

29.    First, compensatory and punitive damages under Title VII, where permitted, are capped at $300,000.  *See* 42 U.S.C.A. § 1981(A)(b)(3) (§1981A).  Second, the ADEA does not permit *any* recovery for punitive damages.  *See Castro v. City of New York*, No. 09-cv-3754, 2012 WL 592408, at *1 (S.D.N.Y. Feb. 24, 2012) (only ADEA remedies available are "make-whole remedies such as back pay, front pay and reinstatement"), quoting *Hatter v. New York City Hous. Auth.*, No. 97-cv-9351, 1998 WL 743733 (2d Cir. Oct. 22, 1998); *Boise v. Boufford*, 121 F. App'x 890, 892 (2d Cir. 2005) (recognizing that punitive damages are not available under the ADEA).  Finally, punitive damages are also barred under the ELCRA.  *See Eide v. Kelsey-Hayes*

*Co.*, 427 N.W.2d 488, 488 (Mich. 1988); *Rafferty v. Markovitz*, 602 N.W.2d 367, 369-70 (Mich. 1999) (punitive damages may not be imposed under ELCRA).

\*    \*    \*

30.    Based on the foregoing, to the extent the Claim survives this Objection, it should be limited, as a matter of law, to the $500,000 of compensatory damages sought in the Complaint, and Dr. Shah should not be permitted to proceed with any efforts to recover punitive damages.

## CONCLUSION

For the reasons set forth above, this Court should enter an order (i) expunging the Claim and granting such other and further relief as the Court deems just and proper or, (ii) alternatively, capping the Claim and any recovery by Dr. Shah from the Debtors at $500,000.

Dated: New York, New York
      April 12, 2012

/s/ Stefanie Birbrower Greer
Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Attorneys for Motors Liquidation
Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                      :
In re                                                 :        Chapter 11 Case No.
                                                      :
**MOTORS LIQUIDATION COMPANY,** *et al.,*             :        **09-50026 (REG)**
         f/k/a General Motors Corp., *et al.*         :
                                                      :
                              Debtors.                :        **(Jointly Administered)**
                                                      :
------------------------------------------------------------x

## ORDER GRANTING OBJECTION TO PROOF
## OF CLAIM NO. 28820 FILED BY ATUL SHAH

Upon the objection to Proof of Claim Number 28820 (the "**Claim**") dated April 12, 2012

(the "**Objection**"), filed by the Motors Liquidation Company GUC Trust (the "**GUC Trust**"),

formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the

Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended,

supplemented, or modified from time to time, the "**Plan**"),  pursuant to section 502(b) of title 11,

United States Code (the "**Bankruptcy Code**"), seeking entry of an order disallowing and

expunging the Claim on the basis that such claim fails to set forth facts necessary to establish any

legal or factual basis for the alleged claim, as more fully described in the Objection; and due and

proper notice of the Objection having been provided, and it appearing that no other or further

notice need be provided; and the Court having found and determined that the relief sought in the

Objection is in the best interests of the Debtors, their estates, creditors, and all parties in interest

and that the legal and factual bases set forth in the Objection establish just cause for the relief

granted herein; and after due deliberation and sufficient cause appearing therefor, it is

**ORDERED** that the relief requested in the Objection is granted; and it is further

**ORDERED** that, pursuant to section 502(b) of the Bankruptcy Code, the Claim is disallowed and expunged; and it is further

**ORDERED** that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2012

_____
United States Bankruptcy Judge

# EXHIBIT A

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION


ATUL C. SHAH,

Plaintiff,

-Vs.-

GENERAL MOTORS COMPANY

a/k/a MOTORS LIQUIDATION COMPANY,
formerly known as GENERAL MOTORS
CORPORATION, a Michigan Corporation,
BASHEN CORPORATION, a Texas Corporation
doing business in Michigan and an
affiliate of GENERAL MOTORS CORPORATION.

Case:2:09-cv-14038
Judge: Battani, Marianne O
MJ: Randon, Mark A.
Filed: 10-13-2009 At 08:57 AM
CMP:SHAH V. GENERAL MOTORS COMPANY
(KB)

_____/

ATUL C. SHAH, In Pro Se
2884 Manorwood Drive
Troy, MI., 48085
(248)835-5025


_____/


## COMPLAINT


For his Verified Civil Rights Complaint, Plaintiff, ATUL C. SHAH, In Pro Se,

states unto this Honorable Court as follows.

This case involves discrimination against the Plaintiff for the practice of his religious beliefs and the denial of Plaintiff's First Amendment Rights of Freedom of Speech and Freedom of Religion under the United States and State of Michigan Constitutions.  The discrimination was intentional or the result of disparate treatment in violation of the State of Michigan Elliott-Larsen Civil Rights Act as amended and  Title VII of the Civil Rights Act of 1964, as amended.  Plaintiff was terminated because of his religion and the appropriate practice of that religion in the workplace. Plaintiff was also discriminated against because of his race (Asian), his nationality (Indian), his color (dark) and  his age (54).  General Motors, the Bashen Corporation and other John Doe Defendants have articulated the reasons for his dismissal only after he filed a Complaint against them with the Equal Employment Opportunity Commission, when he was fired; he was given no reason for his dismissal.  The reasons given by the Defendants are only a pretext for the discrimination against the Plaintiff.  Plaintiff also includes pendant state law claims in this Complaint for violation of State Civil Rights Laws, and for wrongful discharge.

## JURISDICTION

1. Jurisdiction of this court arises under State of Michigan Elliott-Larsen Civil Rights Act Title VII of the Civil Rights Act of 1964, as amended.

2

2. Jurisdiction is also based upon Federal Question Jurisdiction.

## PARTIES AND VENUE

3.  Plaintiff ATUL C. SHAH [hereinafter DR. SHAH] is an American citizen residing at 2884 Manorwood Drive in the City of Troy, Oakland County, Michigan.

4.  Defendant, GENERAL MOTORS COMPANY A/K/A MOTORS LIQUIDATION COMPANY, formerly known as GENERAL MOTORS CORPORATION, a Michigan Corporation is upon information and belief currently in U.S. Bankruptcy Court, Southern District, in the State of New York under Chapter 11 proceedings, Case No. 09-50026 (REG).

5.  Defendant BASHEN CORPORATION is upon information and belief, a Texas Corporation, doing business in the State of Michigan at the GENERAL MOTORS WILLOW RUN PLANT and an affiliate of Defendant GENERAL MOTORS.

## GENERAL ALLEGATIONS

6. Plaintiff, DR. SHAH is a naturalized American Citizen of Indian descent, dark in color, whose religion is Hindu and who is 59 years of age.

7. Plaintiff, DR. SHAH practiced medicine for the past thirty years as a General Practitioner and Psychiatrist.

8. In 1974, he graduated from Medical College in India where he practiced medicine for six years.

9. He emigrated to the United States of America in 1982.

10. He has practiced medicine in the United States for about twenty years.

11. Plaintiff, DR. SHAH worked as a Contract Physician with General Motors for eleven years beginning in September, 1997 without any problems until June 11, 2008 when he was unlawfully terminated because of discrimination regarding his race, nationality, color, religion, age and retaliation for having filed an Equal Employment Opportunity Act in the past.

12. Most of Plaintiff, DR. SHAH's patients, medical staffs and co-workers were happy with his professional knowledge and attitudes.

13. DR. SHAH has practiced thirty years in the United States and in India.

14. He has evaluated more than one hundred twenty thousand (120,000) medical patients including twelve thousand (12,000) Psychiatric patients in the United States.

15. DR. SHAH has excellent and versatile experiences and medical knowledge in his career as a practicing physician.

16. DR. SHAH's experiences and medical knowledge include diagnosis, treatment and management of patients in Family Practice, Occupational Medicine and Psychiatric Medicine in the Metro-Detroit/South Eastern Michigan area.

17. On June 11, 2008, SHAH was unfairly discriminated against by GENERAL MOTORS and BASHEN at the General Motors Willow Run Power Train Plant.

18. The discrimination complained of was conducted by Dr. Stanley Miller,

D.O., and Senior Group Director and by Dr. Anthony Burton, MD, Plant

Medical Director and others in the employ of the Defendants or as agents

of the Defendants.

19.  DR. SHAH's removal from the GM Plant as Contract Physician was

based upon DR. SHAH's religion, nationality, color, race and age.  It was

also in retaliation for having filed an employment discrimination claim in the

past which became known to the above named Defendants.

20.  DR. SHAH's discriminatory removal as physician by Dr. Miller was

also supported by General Motors Health Services Administrative staffs,

Willow Run Power-train Plant Manager and Director of Human Resources.

21.  On June 11, 2008 at 2 p.m., DR. SHAH had an unexpected meeting

with Dr. Stanley Miller, D.O. Senior Group Medical Director and Dr.

Anthony Burton, MD Plant Medical Director, DR. SHAH's immediate

supervisor at the Willow Run Plant Medical, for about forty minutes.

22.  DR. SHAH is well educated, intelligent and intuitive and is an expert in

understanding and revealing "Expressed Intentions" and "Concealed

Intentions" of the persons or patients.  In this Complaint, DR. SHAH will

reveal and explain the expressed and concealed intentions of Dr. Stanley

6

Miller and Dr. Anthony Burton to remove or terminate DR. SHAH from his position as Contract Physician with GENERAL MOTORS on June 11, 2008 after DR. SHAH had been affiliated with them for the previous eleven years.

23. Dr. Burton informed DR. SHAH on June 10, 2008, that Dr. Miller is specially coming to see Plaintiff DR. SHAH the next day, June 11, 2008.

24. Dr. Burton did not mention and concealed the purpose of this special meeting between DR. SHAH and Dr. Miller which was to discriminate and retaliate against him.

25. Prior to this meeting, DR. SHAH had been very sick for two months and DR. SHAH had been hospitalized twice in April and May of 2008.

26. Plaintiff DR. SHAH had been on Medical Leave from April 17, 2008 until May 23, 2008 due to an unexpected Medical illness.

27. During his Medical Leave, DR. SHAH continued to keep Dr. Burton and Dr. Miller informed as to his medical status.

28. The discrimination and retaliation complained of happened when DR.

SHAH met with Dr. Miller and Dr. Burton on June 11th, 2008 in the Medical
Department at the Willow Run Plant of GENERAL MOTORS.

29.  Dr. Miller started the meeting by telling DR. SHAH that he was happy
to see DR. SHAH and that he was happy that DR. SHAH had recovered
from his illness and was in good health.

30.  Abruptly, Dr. Miller then told DR. SHAH that DR. SHAH was now
being terminated from GENERAL MOTORS as Contract Physician
effective immediately (June 11, 2008).

31.  Since he had been given no reason for the termination, DR. SHAH
politely asked the reason for his termination after eleven years of service
and employment with GENERAL MOTORS.

32.  Dr. Miller stated that he had been "informed" by Dr. Anthony Burton
and by Dr. Mark Singer, by Plant Manager Mr. Wooten about an alleged
"problem with documentation and "other reasons".

33.  Dr. Miller did not elaborate on the "other reasons" during this meeting
and never did rectify the alleged problem with documentation or other
reasons in writing to date.

34. DR. SHAH told Dr. Miller and Dr. Burton that DR. SHAH has evaluated
and seen more than one hundred and thousand patients in his career as a
Physician and had documented their Medical History and Progress Note
throughout his professional career as a Physician.

35. The articulated reasons for DR. SHAH's termination was just a pretext
for discrimination based upon DR. SHAH's race (Asian), nationality
(Indian), religion (Hinduism), age (59) and reprisal.

36. The discrimination against DR. SHAH was intentional and willful and a
violation of the United States and State of Michigan Constitutions as well
as the Michigan Elliott Larsen Civil Rights Act and Title VII of the Civil
Rights Act of 1964 as amended.

37. The discrimination against DR. SHAH was also the result of disparate
treatment.  He was treated differently than similarly situated white,
American, Christian or Muslim Contract Physicians at GENERAL
MOTORS.

38. As a direct and proximate result of the discrimination and reprisal

38. As a direct and proximate result of the discrimination and reprisal against DR. SHAH, he suffered injury and both monetary and non-monetary damages.

39. Incomplete investigation by Spyridon E. Mellos, Investigator at U.S. Equal Opportunity Commission, Detroit, Michigan. Dr. SHAH repeatedly requested him to review Dr. SHAH's articles addressed to Ronald M. Davis, MD, late past President of American Medical Association, Chicago, Illinois; Apparao Mukkamala, MD, past President of Michigan State Medical Society, Lansing, Michigan and Joel Bender, MD Corporate Medical Director of General Motors and other articles. In these articles Dr. SHAH mentioned that Vedic Literature in Sanskrit language from India contains superior knowledge than the conventional modern science including Bio-medical science. Dr. Miller, Dr. Burton and other people from western background did not like this idea and dismissed Dr. SHAH. Investigator Spyridon E. Mellos may not have enough time to review these articles resulting into incomplete investigation.

40. Dr. SHAH has great admiration for American Spirit: the relentless pursuit to realize the Absolute Truth. Lets us reveal the truth in democratic spirit.

## RELIEF REQUESTED

WHEREFORE, PLAINTIFF ASKS THIS COURT TO AWARD JUDGMENT IN FAVOR OF THE PLAINTIFF DR. ATUL C. SHAH, REINSTATEMENT TO HIS POSITION AS CONTRACT PHYSICIAN, COMPENSATORY DAMAGES IN THE AMOUNT OF FIVE HUNDRED THOUSAND ($500,000) DOLLARS, PUNITIVE DAMAGES IN AN AMOUNT IN

EXCESS OF TEN MILLION ($10,000,000.00) DOLLARS PLUS
INTEREST COSTS AND ATTORNEY FEES AND WHATEVER OTHER
RELIEF IS DEEMED BY THIS COURT TO BE JUST AND EQUITABLE.

Respectfully submitted,

Dr. Atul C. Shah
Plaintiff, In Pro Se

Date: October 13, 2009

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury in the above captioned cause.

Respectfully submitted,

Dr. Atul C. Shah

Plaintiff, In Pro Se

Date: October 13, 2009

11

# EXHIBIT B


**BASHEN**
**CORPORATION**
building eeo initiative;

# REQUEST FOR INFORMATION

December 22, 2008

Dorothea Jackson
Senior Human Resources Administrator
Ecorse & Wiard Road
Ypsilanti, Michigan 48198

| **RE:** | **Charging Party** | : | **Atul C. Shah** |
|---|---|---|---|
| | **Respondent** | : | **General Motors Corporation** |
| | **EEOC No.** | : | **471-2009-00726** |

Dear Ms. Jackson:

I would greatly appreciate your assistance in compiling copies of the following
information:

1. Mr. Shah's employee file and work history, including disciplinary history;
2. contact information for Mr. Shah's immediate supervisor and any other
   decision makers involved in disciplinary decisions relating to Mr. Shah's
   discharge on June 11, 2008, identified by name, title, color, religion,
   national origin, age, telephone number, address, and email address;
3. any notes, reports, memoranda, or documentation relating to Mr. Shah's
   discharge on June 11, 2008;
4. contact information for any decision makers involved in sending a
   document to Mr. Shah in July 2008 indicating Mr. Shah's contract would
   be extended until December 31, 2009, identified by name, title, color,
   religion, national origin, age, telephone number, address, and email
   address;
5. any notes, reports, memoranda, or documentation relating to the July 2008
   documentation sent to Mr. Shah indicating Mr. Shah's contract would be
   extended until December 31, 2009;
6. a list of all employees in Mr. Shah's department from June 11, 2007,
   through June 11, 2008, identified by name, title, color, religion, national
   origin, and age;

7. a list of all employees disciplined in Mr. Shah's department from June 11, 2007, through June 11, 2008, identified by name, title, color, religion, national origin, age, and reasons for the discipline;

8. if applicable, any internal complaints or grievances filed by Mr. Shah and documentation of any investigation of such complaints;

9. any implicated company policy or procedure prohibiting discrimination in the workplace or regarding the alleged offense; and

10. any other information or documents relevant to Mr. Shah charge.

Please submit the requested information to my attention on or before January 5, 2008. Your assistance is greatly appreciated, and I look forward to working with you on this matter. Should you have any questions, please do not hesitate to contact me at (713) 780-8056.

Respectfully,

Keveney E. Stroup
EEO Consultant

# EXHIBIT C



# POSITION STATEMENT

February 11, 2009

Peter Morelli
Enforcement Supervisor
EEOC – Detroit Field Office
477 Michigan Avenue, Room 865
Detroit, Michigan 48226

**RE:    Charging Party    :    Atul Shah**
**Respondent    :    General Motors Corporation**
**Agency Charge No.:    471-2009-00726**

Dear Mr. Morelli:

The respondent submits its Position Statement and emphatically denies Atul Shah's allegations.    Dr. Shah was legitimately terminated based on poor performance.    Dr. Shah's subjective belief of discrimination is insufficient to sustain a claim.

## COMPANY OVERVIEW

The respondent is General Motors Corporation, an automotive corporation and full-line vehicle manufacturer.    The respondent employs a number of individuals in excess of the minimum jurisdictional requirements under state and federal employment laws.

The respondent's designated representative is Bashen Corporation, 1616 South Voss Road, Suite 300, Houston, Texas 77057, telephone (713) 780-8056, facsimile (713) 780-8206.    The consultant is David Johnston.

## HISTORY

Anthony Burton (white, American, 57, Jewish), Plant Medical Director, has been the Plant Medical Director at the respondent's Ypsilanti facility since November 5,

**Position Statement**
*Atul Shah v. General Motors Corporation*
**EEOC Charge No. 471-2009-00726**
**Page 2 of 3**

2007, and supervised Dr. Shah until Dr. Shah's termination. During that time, Dr. Shah demonstrated an inability to correctly diagnose and treat work-related injuries, poor documentation, and a lack of thoroughness. For example, in approximately March 2008, Dr. Shah failed to recognize an employee's non-displaced distal radius fracture, for which Dr. Shah did not provide a splint. That same month, Dr. Shah wrote restrictions for an employee without evaluating the employee's job to determine if the restrictions were necessary. On at least two occasions during April 2008, Dr. Shah failed to accurately document patient histories. Dr. Shah also misdiagnosed an employee's knee pain as arthritis, which was subsequently determined to be a meniscus tear that required surgery (Exhibit 1: *Dr. Burton's Notes Regarding Dr. Shah's Performance, March – June 2008*). Dr. Burton is unaware of Dr. Shah's religion.

Stanley Miller (white, American, 50, Catholic), Group Medical Director, discharged Dr. Shah on June 11, 2008, based on Dr. Shah's poor performance (Exhibit 2: *Discharge Letter, Undated*). Contrary to Dr. Shah's allegations, Dr. Miller thrice explained to Dr. Shah that Dr. Shah's termination was based on the poor quality of Dr. Shah's patient care (Exhibit 3: *Dr. Miller's Discharge Meeting Notes, June 11, 2008*). Dr. Miller is unaware of Dr. Shah's religion. Dr. Miller denied that Dr. Shah's color, national origin, age or religion was a consideration in Dr. Shah's termination.

During July 2008, the respondent's Purchasing group mistakenly sent to Dr. Shah a letter extending Dr. Shah's contract with the respondent. Dr. Miller called Dr. Shah on July 31, 2008, and explained that Dr. Shah's termination remained effective for the reasons previously discussed with Dr. Shah.

## COMPARATIVE ANALYSIS

Dr. Shah is the only physician within the respondent's Powertrain organization who has been discharged during the relevant period based on patient care concerns.

## CONCLUSION

Dr. Shah's charge is wholly without merit. There is no corroborative evidence that Dr. Shah has been subjected to disparate treatment based on his color, national origin, age or religion. Dr. Shah was legitimately discharged based on the poor quality of his patient care. Furthermore, it is patently false that Dr. Shah did not receive an explanation for his termination, which Dr. Miller explained repeatedly to Dr. Shah.

**Position Statement**
*Atul Shah v. General Motors Corporation*
**EEOC Charge No. 471-2009-00726**
**Page 3 of 3**

Dr. Shah has not been treated differently than similarly situated individuals.  No other physicians in the respondent's Powertrain organization have displayed similar deficiencies in patient care during the relevant period.  Accordingly, Dr. Shah's claim of disparate treatment must fail.  Finally, Dr. Shah has not produced any corroborative evidence that the respondent's articulated reasons for Dr. Shah's discharge are false or merely a pretext for discrimination.

Accordingly, the respondent respectfully requests that the charge be dismissed on a finding that no discrimination occurred.  Should you have any questions, please do not hesitate to contact me.

Sincerely,

David Johnston
Senior Consultant

**EXHIBIT 1**

3-3-08

<div style="border:1px solid black; display:inline-block;">**REDACTED**</div>

case 2008 7551

Disc'd Lorene Patel case : Krtil Shah

Issues :

#1 He suspected a fracture based on level of pain, limited range of motion, hematoma. Per Jerry Cameron, it hurt too much even to put ice on a splint on it.

· I told him that if a fracture was suspected clinically, he was obligated to immobilize the wrist

#2 He failed to recognize a nondisplaced distal radius fracture.

I told him that immobilization would have protected her regardless.

*[signature]*

3-13-08

Discussion w/ Atul Shah on around Jan 10, 2008 re:

**REDACTED**

1st visit was 9-10-07; eval by Dr. Oteyza 9-12-07.
Installed heat pack treatments. Evaluated by
Dr. Shah on 9-27-07 and 10-23-07 and 12-11-07
He advised continued heat packs and return
visit only as needed.
I evaluated her on Jan 10, 2008. I counted
approximately 62 visits for heat packs over
the course of treatment from Sept 10 to
Jan 10

I discussed this case with Dr. Shah. I explained
that 4 months of treatment with nearly
daily heat packs was not an appropriate
management. The problem needed more frequent
evaluation and different interventions. I also
discussed his recommendation that she talk
to the Benefit Center to find out if the
problem was work related, noting that he
did not make his own independent assessment,
based on analysis of her job, history and exam.

R. Buchanan

3-13-08

| REDACTED |
| --- |

Disc'd w/ Atl Shah.

He evaluated her and gave her work restrictions based on her description of the job, but without evaluating the job until I brought him out to see it later in the day. It became clear that her statement that she had to work by "overreaching above the shoulder level" was not true.

He advised "no overreaching work and but 10 LB weight" as restrictions, even though my assessment was that her job did not require activities that would violate those restrictions

I advised the problem was making a determination with first evaluating the job.

4-2-08 | REDACTED | Visit date 4-1-08

Evaluated by Dr. Shah and presented to me
Diagnosis: resolват (R) shoulder tendinitis; Advised P.T.
Dr. Shah described normal MRI of right
shoulder; abn xray of c-spine

On my history/exam, I obtained history
of normal MRI of left shoulder; history of
left cervical radiculopathy (EMG normal)
treated with epidural steroid injection w/
good response. This was followed in a few
weeks by (R) UE Sx treated with
3 epidurals on the (R) side. My dx history
c/w (R) cervical radx. Patient reported no
shoulder complaints; + shoulder exam was
normal/not significant.

Following my exam, Dr. Shah's documentation
noted "shot in left shoulder in late 2007"
despite hx of epidural injection, not shoulder injection.
Dr. Shah also notes "He had no xray of right
shoulder but he got three shots within last three
months..." despite history of 3 epidural injection,
not shoulder injections.

He expressed surprise & and seemed impressed that I
did such a thorough (albeit standard) exam.

4-4-08    ┌─────────────────┐  inaccurate hx.
          │    REDACTED      │
          └─────────────────┘
          My note + nurses note indicate strp s̄ fall
          Dr. Shah's note : "He had slipped and fell
                         during Feb 2008 ..."


6-17-08   Employee: ┌─────────────────┐  I won't ever want to
                    │    REDACTED      │
                    └─────────────────┘
          see [Dr. Shah] again."
          I hurt my knee. He took an x-ray and told
          me I had arthritis.
          Treatment was ice, ibuprofen, ACE wrap.
          States he went to his pcp who dx'd torn
          meniscus. He ultimately had arthroscopic surgery

**EXHIBIT 2**

# General Motors Corporation

Dr. Atul Shah
2884 Manorwood Drive
Troy, MI 48085

Dear Dr. Shah;

You are employed as a Contract Physician with General Motors Corporation (GM) under the terms and conditions of GMB07187. Clause 13 Standard Terms & Conditions of GMB07187 allows Buyer to terminate for convenience. This letter is notification to you that GM desires to invoke Clause 13.

Effective June, 11 your services under GMB07187 will no longer be required.

Sincerely,

Jay Manor
Purchasing Supervisor
General Motors Health Care Purchasing

# EXHIBIT 3

6-11-08

Today I met with Dr. Atul Shah and Dr. Tony Burton at the GMPT Willow Run Plant. I informed Dr. Shah that effective today we would be terminating the contract employment relationship and that there would be no future relationship with him and GM in any capacity contract or full time. It was explained to him three times during the meeting that there were Quality of patient care concerns, quality of documentation concerns, and quality of thoroughness concerns, including failure to follow up on plant floor investigations and do in plant job site reviews.

This decision was a broad based one including support and input from myself, Dr. Burton, Plant Manager Kingsley Wootton, and Personnel Director Pete Felton. Dr. Joel Bender, GM Corporate Medical Director was also aware and supportive of the decission.

Dr. Shah accused me of selecting Dr. Burton and the Toledo Dr. for employment positions because they were my friends, and he was not. I explained to him that in both of these hires a GM Target Selection process was utilized, and that four individuals were involved in this skills based, experience and qualification based selection process. Therefore his accussion was not correct at all.

7-29-08 Left a message for Dr Shah to call me @ work. [signature] at the number 248 [REDACTED] was were I left the message. Yesterday I found out that a contract renewal was sent to Dr. Shah IN ERROR by the purchasing group. Jay Manor sent an email to, at [REDACTED] @ yahoo-com to clarify this was in error and no further services were to be allowed at GM. [signature]

7-31-08  I was finally successful in reaching Dr. Shah via his mobile phone. I apologized that he had been sent a renewal in error by the purchasing group. I informed him that all of GM Health Services continued to maintain a no hire of his services for reasons discussed in 6-08. [signature]

# EXHIBIT D

EEOC FORM 131 (5/01)

# U.S. Equal Employment Opportunity Commission

| | PERSON FILING CHARGE |
|---|---|
| Mr. Pete Felton<br>Human Resources Director<br>GENERAL MOTORS POWER TRAIN<br>WillowRun<br>GMPT Willow Run<br>Ypsilanti, MI 48197 | **Atul C. Shah** |

THIS PERSON (check one or both)

[X] Claims To Be Aggrieved

[ ] Is Filing on Behalf of Other(s)

EEOC CHARGE NO.
**471-2009-00726**

## NOTICE OF CHARGE OF DISCRIMINATION
*(See the enclosed for additional information)*

This is notice that a charge of employment discrimination has been filed against your organization under:

[X] Title VII of the Civil Rights Act

[ ] The Americans with Disabilities Act

[X] The Age Discrimination in Employment Act

[ ] The Equal Pay Act

The boxes checked below apply to our handling of this charge:

1. [ ] No action is required by you at this time.

2. [ ] Please call the EEOC Representative listed below concerning the further handling of this charge.

3. [X] Please provide by **29-JAN-09** a statement of your position on the issues covered by this charge, with copies of any supporting documentation to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

4. [ ] Please respond fully by _____ to the enclosed request for information and send your response to the EEOC Representative listed below. Your response will be placed in the file and considered as we investigate the charge. A prompt response to this request will make it easier to conclude our investigation.

5. [X] EEOC has a Mediation program that gives parties an opportunity to resolve the issues of a charge without extensive investigation or expenditure of resources. If you would like to participate, please say so on the enclosed form and respond by **22-JAN-09** to **Stephanie E. Perkins, ADR Coordinator, at (313) 226-4623.** If you DO NOT wish to try Mediation, you must respond to any request(s) made above by the date(s) specified there.

For further inquiry on this matter, please use the charge number shown above. Your position statement, your response to our request for information, or any inquiry you may have should be directed to:

Peter N. Morelli,<br>Enforcement Supervisor

*EEOC Representative*

Telephone **(313) 226-3783**

Detroit Field Office<br>477 Michigan Avenue<br>Room 865<br>Detroit, MI 48226

Enclosure(s): [ ] Copy of Charge

CIRCUMSTANCES OF ALLEGED DISCRIMINATION

[ ] RACE  [X] COLOR  [ ] SEX  [X] RELIGION  [X] NATIONAL ORIGIN  [X] AGE  [ ] DISABILITY  [ ] RETALIATION  [ ] OTHER

ISSUES: Discharge

DATE(S) (on or about): EARLIEST: 06-11-2008  LATEST: 06-11-2008

| Date | Name / Title of Authorized Official | Signature |
|---|---|---|
| December 4, 2008 | Danny G. Harter,<br>Director | *[signature]* |

EEOC Form 5 (5/01)

## CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form.

| Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|
| ☐ FEPA | |
| ☒ EEOC | 471-2009-00726 |

Michigan Department Of Civil Rights                                      and EEOC

State or local Agency, if any

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| **Mr. Atul C. Shah** | **(248) 879-0795** | **02-09-1950** |

| Street Address | City, State and ZIP Code |
|---|---|
| **2884 Manorwood Drive, Troy, MI 48085** | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. (If more than two, list under PARTICULARS below.)

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| **GENERAL MOTORS INC** | **500 or More** | **(734) 481-4559** |

| Street Address | City, State and ZIP Code |
|---|---|
| **GMPT Willow Run, Ypsilanti, MI 48197** | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON (Check appropriate box(es).)

☐ RACE   ☒ COLOR   ☐ SEX   ☒ RELIGION   ☒ NATIONAL ORIGIN

☐ RETALIATION   ☒ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

| DATE(S) DISCRIMINATION TOOK PLACE | |
|---|---|
| Earliest | Latest |
| **06-11-2008** | **06-11-2008** |

☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I began my employment with the above named employer as Contract Physician and last worked in the same capacity.

On June 11, 2008, I was removed from my position as Contract Physician. No explanation was given to me with regards to my removal. I had not had any prior disciplinary action filed against me and I was the only one removed at this time. In July 2008, I received documentation that my contract had been extended until December 31, 2009. When I called with regards to this document, I was told it was a clerical error.

I can only conclude that I have been discriminated against by being removed from my position due to my color, age, religion and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended and the Age Discrimination in Employment Act of 1967, as amended.

I authorize the EEOC to use my name during the investigation of this charge.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| **Dec 04, 2008**     *[signature]* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) **12/04/2008** *[signature]* |
| Date     Charging Party Signature | |

# EXHIBIT E

EEOC Form 161 (1/08)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To: **Atul C. Shah**
2884 Manorwood Drive
Troy, MI 48085

From: **Detroit Field Office - 471**
477 Michigan Avenue
Room 865
Detroit, MI 48226

RECEIVED
JUL 1 0 2009

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|
| EEOC Charge No. | EEOC Representative | Telephone No. |
| 471-2009-00726 | **Spyridon E. Mellos, Investigator** | (313) 226-4629 |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ]  The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ]  Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ]  The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ]  Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge.

[X]  The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ]  The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ]  Other (briefly state)

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form )

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

_Kinde K. Schmid_

**Danny G. Harter,
Director**

1-7-09
_(Date Mailed)_

Enclosures(s)

cc:    David Johnston
Bashen Corporation
1616 S. Voss, Suite 300
Houston, TX 77057

Enclosure with EEOC
Form 161 (1/08)

<div align="center">

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

</div>

**PRIVATE SUIT RIGHTS    --    Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice. Therefore, you should **keep a record of this date**. Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it. Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. (Usually, the appropriate State court is the general civil trial court.) Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. Filing this Notice is not enough. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office. If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS    --    Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible. For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008. This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION    --    Title VII and the ADA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer. Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney). Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case. If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice). While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case. Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.** (Before filing suit, any request should be made within the next 90 days.)

<div align="center">

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

</div>

# EXHIBIT F

THIS NOTIFICATION IS ISSUED UNDER THE
AUTHORITY OF ACTS 220 & 453. PA OF 1976 AS
AMENDED

**STATE OF MICHIGAN**

**DEPARTMENT OF CIVIL RIGHTS**

CADILLAC PLACE. SUITE 3-600
3054 WEST GRAND BOULEVARD
DETROIT. MI. 48202

## NOTICE OF DISPOSITION AND ORDER OF DISMISSAL

EEOC #: 471-2009-00726C

MDCR #: 396353

Claimant:

Atul C. Shah
2884 Manorwood Drive
Troy, MI 48085

*RECEIVED*
*SEP 2 1 2009*

Respondent:

General Motors Corporation
c/o Bashen Corporation
1616 South Voss, Suite 300
Houston, TX 77057

**REASON FOR DISMISSAL:**

This complaint, jointly filed with the United States Equal Employment Opportunity Commission (EEOC) and the Michigan Department of Civil Rights, alleges the respondent discriminated against the claimant in violation of the Elliott-Larsen Civil Rights Act and/or the Persons with Disabilities Civil Rights Act.

The EEOC assumed jurisdiction to investigate this jointly filed complaint and has closed its case. The MDCR has accepted the finding of the EEOC.

It is therefore ordered that this complaint be dismissed.

| Date Dismissed : September 15, 2009 | Date Mailed : September 16, 2009 |
|---|---|
| /s/ Lori Vinson/ Director. Civil Rights Operations | |

### RULES OF CIVIL RIGHTS COMMISSION AND DEPARTMENT RELATING TO RECONSIDERATION AND APPEAL

*Rule 7 (1)*  A claimant may request of the department a reconsideration of its refusal to issue a charge  The request shall be in writing, state specifically, the grounds upon which it is based, and be filed within 30 days after the date of mailing of the notice of disposition of which reconsideration is requested. It shall be filed at any office of the department by personal delivery or by mail

(2)  The department may authorize a hearing on the request for reconsideration at such time and place, and before such hearing commissioner or commissioners or hearing referee or referees as it or the director may determine. and notice thereof shall be given to all parties to the proceedings

*Rule 18*  Any party claiming to be aggrieved by a final order of the commission or the department, including without limitation a refusal to issue a charge. may appeal to the circuit court of the State of Michigan having jurisdiction provided by law within 30 days of the date of service of an appealable order.

# EXHIBIT G

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ATUL C. SHAH,

      Plaintiff,                    CIVIL CASE NO. 09-14038

                                         HON. MARIANNE O. BATTANI

v.

GENERAL MOTORS COMPANY a/k/a
MOTORS LIQUIDATION COMPANY,
formerly known as GENERAL MOTORS
CORPORATION, a Michigan Corporation,
BASHEN CORPORATION, a Texas
Corporation doing business in Michigan
and an affiliate of GENERAL MOTORS
CORPORATION,

      Defendants.

_____/

### JUDGMENT FOR DEFENDANT BASHEN CORPORATION

      The Court having entered an Opinion and Order Granting Defendant Bashen

Corporation's Motion to Dismiss Plaintiff's Complaint and/or for Summary Judgment;

**IT IS SO ORDERED** that **JUDGMENT** is entered for Defendant.  Because Plaintiff

agreed to dismiss his case as to Defendant General Motors Company this case is

**DISMISSED** in its entirety.

                               s/Marianne O. Battani_____
                               MARIANNE O. BATTANI
                               UNITED STATES DISTRICT JUDGE

DATED: August 18, 2010

**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by ordinary

mail and electronic filing.

<u>s/Bernadette M. Thebolt</u>
CASE MANAGER

2

# EXHIBIT H

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Your Claim is Scheduled As Follows.**

Name of Debtor (Check Only One)
Case No

- ☒ Motors Liquidation Company (f/k/a General Motors Corporation)    09-50026 (REG)
- ☐ MLCS, LLC (f/k/a Saturn, LLC)    09-50027 (REG)
- ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)    09-50028 (REG)
- ☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc )    09-13558 (REG)

NOTE: This form should not be used to make a claim for an administrative expense arising **after** the commencement of the case  but may be used for purposes of asserting a claim under 11 U S C  § 503(b)(9) (see Item # 5)  All other requests for payment of an administrative expense should be filed pursuant to 11 U S C  § 503

Name of Creditor (the person or other entity to whom the debtor owes money or property)    SHAH ATUL C MD

Name and address where notices should be sent

SHAH ATUL C MD
2884 MANORWOOD DR
TROY  MI 48085-1145



THE GARDEN CITY GROUP, INC.
NOV 17 2009

Telephone number   248-879-0795
Email Address   atul99 Krishna@yahoo.com

- ☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

Name and address where payment should be sent (if different from above)

FILED - 28820
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

- ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

- ☐ Check this box if you are the debtor or trustee in this case

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form  EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED  UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1** Amount of Claim as of Date Case Filed, June 1, 2009:   $ _Ten Millions dollars_

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C  § 503(b)(9), complete item 5

- ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2** Basis for Claim   _Employment DISCRIMINATION_
(See instruction #2 on reverse side )

**3** Last four digits of any number by which creditor identifies debtor _____

   **3a** Debtor may have scheduled account as _____
   (See instruction #3a on reverse side )

**4** Secured Claim (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe

Value of Property $_____   Annual Interest Rate___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any   $_____

Basis for perfection _____

Amount of Secured Claim $_____   Amount Unsecured $_____

**5** Amount of Claim Entitled to Priority under 11 U S C  § 507(a)
If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

- ☐ Domestic support obligations under 11 U S C  § 507(a)(1)(A) or (a)(1)(B)

- ☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C  § 507(a)(4)

- ☐ Contributions to an employee benefit plan – 11 U S C  § 507(a)(5)

- ☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal  family, or household use – 11 U S C  § 507(a)(7)

- ☐ Taxes or penalties owed to governmental units – 11 U S C  § 507(a)(8)

- ☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C  § 503(b)(9) (§ 507(a)(2))

- ☐ Other – Specify applicable paragraph of 11 U S C  § 507(a)(__)
  **Amount entitled to priority**
  $_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**6** Credits  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7** Documents  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements  You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of  redacted  on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING   _See attachment_

If the documents are not available, please explain in an attachment

| Date 11/12/09 | Signature  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any    _(Atul C. Shah, MD)_ | FOR COURT USE ONLY |
|---|---|---|

_Penalty for presenting fraudulent claim_  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C  §§ 152 and 3571
**Modified B10 (GCG) (12/08)**

# INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc. are not authorized and are not providing you with any legal advice*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS **IF BY MAIL** THE GARDEN CITY GROUP, INC , ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, PO BOX 9386, DUBLIN, OH 43017-4286 **IF BY HAND OR OVERNIGHT COURIER** THE GARDEN CITY GROUP, INC , ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017 PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004 ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

**THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 P M  (PREVAILING EASTERN TIME)**

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009 You should select the debtor against which you are asserting your claim
**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case Please provide us with a valid email address A separate space is provided for the payment address if it differs from the notice address The creditor has a continuing obligation to keep the court informed of its current address See, Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1 Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing Follow the instructions concerning whether to complete items 4 and 5 Check the box if interest or other charges are included in the claim

**2 Basis for Claim**
State the type of debt or how it was incurred Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information You may be required to provide additional disclosure if the debtor trustee or another party in interest files an objection to your claim

**3 Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4 Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured Skip this section if the claim is entirely unsecured (See DEFINITIONS, below ) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5 Amount of Claim Entitled to Priority Under 11 U S C § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS, below ) A claim may be partly priority and partly non-priority For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U S C § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below) Attach documentation supporting such claim

**6 Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7 Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt You may also attach a summary You must also attach copies of documents that evidence perfection of any security interest You may also attach a summary FRBP 3001(c) and (d) If the claim is based on the delivery of health care goods or services, see instruction 2 Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it FRBP 9011 If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature Print the name and title, if any, of the creditor or other person authorized to file this claim State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices Attach a complete copy of any power of attorney Criminal penalties apply for making a false statement on a proof of claim

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing See 11 U S C § 101(5) A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the Debtor on the date of the bankruptcy filing The creditor must file the form with The Garden City Group, Inc as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C § 506(a)**
A secured claim is one backed by a lien on property of the debtor The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors The amount of the secured claim cannot exceed the value of the property Any amount owed to the creditor in excess of the value of the property is an unsecured claim Examples of liens on property include a mortgage on real estate or a security interest in a car A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding In some states, a court judgment is a lien A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information A creditor should redact and use only the last four digits of any social-security, individual's

## INFORMATION

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc , please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims One or more of these entities may contact the creditor and offer to purchase the claim Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor These entities do not represent the bankruptcy court or the debtor The creditor has no obligation to sell its claim However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C § 101 et seq ), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

ATTACHMENT TO PROOF OF CLAIM #7  DOCUMENT

The basis of my claim is termination of my employment because of religion,
race, etc   I seek money damages for my unjust and illegal termination

I have filed a complaint as required with the Equal Employment Opportunity
Commission  I have obtained a right to sue letter and I have filed a
suit in the United States for the Eastern District of Michigan Southern
Division, Case No   2 09-cv-14038 assigned to the Honorable Judge  Battani, Marianne O

I also have another year to pursue my case in State Court under the Michigan Civil Rights Act

I have been sent a proof of claim by Motors Liquidation Company (f/k/a General Motors
Corporation

I have not been able to see myself listed in their schedules on the internet because of the
voluminous filings by the debtor and the technical difficulties of accessing this information on the
internet or even over the telephone   Further, my claim is not listed on any schedules according
to the box on the Proof of Claim titled ""Your claim is scheduled as follows"

I am sure that my claim would be considered as contingent, disputed, or unliquidated  But, I take
the fact that I was mailed the proof of claim as an acknowledgment that by the debtor that I may
be owed money for the discrimination I endured


If you need anything further, please call or write or e-mail me at the appropriate entry listed on the
front of my Proof of Claim

11/12/2009

Atul C  Shah, MD
Troy, Michigan, U S A