09-50026-mg    Doc 11604    Filed 04/13/12    Entered 04/13/12 17:06:17    Main Document
HEARING DATE AND TIME: May 15, 2012 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: May 8, 2012 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
     Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                                    :
**In re**                                           :        Chapter 11 Case No.
                                                    :
**MOTORS LIQUIDATION COMPANY,** *et al.,*           :        09-50026 (REG)
     **f/k/a General Motors Corp.,** *et al.*       :
                                                    :
               **Debtors.**                         :        **(Jointly Administered)**
                                                    :
------------------------------------------------------------x

## NOTICE OF MOTION OF MOTORS LIQUIDATION COMPANY GUC TRUST FOR LIMITED MODIFICATION OF THE AUTOMATIC STAY AND THE PLAN INJUNCTION AS TO THE ACTION FILED BY SHERIF RAFIK KODSY

**PLEASE TAKE NOTICE** that upon the annexed Motion, dated April 13, 2012,

of the Motors Liquidation Company GUC Trust (the "**GUC Trust**")[1] for an order authorizing a

limited modification of the Automatic Stay and the Plan Injunction as to the Action filed by

Sherif Rafik Kodsy, all as more fully described in the Motion, a hearing will be held before the

Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004 on **May 15, 2012, at 9:45 a.m. (Eastern Time)**, or as soon thereafter as counsel

may be heard.

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

PLEASE TAKE FURTHER NOTICE that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, preferably in text-searchable portable

document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with

the customary practices of the Bankruptcy Court and General Order M-399, to the extent

practicable, and served in accordance with General Order M-399, and on (i) Weil, Gotshal &

Manges LLP, attorneys for the GUC Trust, 767 Fifth Avenue, New York, New York 10153

(Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the

Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370,

Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400

Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv)

Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the

Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi,

Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room

2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys

for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019

(Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis &

Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the

Americas, New York, New York 10036 (Attn: Thomas Moers Mayer, Esq., Robert Schmidt,

Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States

X:\DOCUMENTS AND SETTINGS\DEROUSSE\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\UW2BZOAA\US_ACTIVE_KODSY MOTION TO LIFT STAY_43947000_5.DOC

2

Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); (xii) Gibson, Dunn, Crutcher LLP, attorneys for Wilmington Trust Company as GUC Trust Administrator and for Wilmington Trust Company as Avoidance Action Trust Administrator, 200 Park Avenue, 47th Floor, New York, New York 10166 (Attn: Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust Monitor and as the Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree Street, Suite 500, Atlanta, Georgia 30309 (Attn: Anna Phillips); (xiv) Crowell & Moring LLP, attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590 Madison Avenue, 19th Floor, New York, New York 10022-2524 (Attn: Michael V. Blumenthal, Esq.); (xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard, Austin, Texas 78703; and (xvi) Sherif Rafik Kodsy, 15968 Laurel Oak Circle, DelRay Beach, Florida, 33484, so as to be received no later than **May 8, 2012 at 4:00 p.m. (Eastern Time)** (the "**Objection Deadline**").

X:\DOCUMENTS AND SETTINGS\DEROUSSE\LOCAL SETTINGS\TEMPORARY INTERNET FILES\CONTENT.OUTLOOK\JW2BZOAA\US_ACTIVE_KODSY MOTION TO LIFT STAY_43947000_5.DOC

3

PLEASE TAKE FURTHER NOTICE that if no objections are timely filed and served with respect to the Motion, the GUC Trust may, on or after the Objection Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Motion, which may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York
     April 13, 2012

                    /s/ Joseph H. Smolinsky
                    Harvey R. Miller
                    Stephen Karotkin
                    Joseph H. Smolinsky

                    WEIL, GOTSHAL & MANGES LLP
                    767 Fifth Avenue
                    New York, New York 10153
                    Telephone: (212) 310-8000
                    Facsimile: (212) 310-8007

                    Attorneys for Motors Liquidation
                      Company GUC Trust

X:\DOCUMENTS AND SETTINGS\DEROUSSE\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\UW2BZOAA\US_ACTIVE_KODSY MOTION TO LIFT STAY_43947000_5.DOC

4

HEARING DATE AND TIME: May 15, 2012 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: May 8, 2012 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
    Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x
                                                           :
**In re**                                                  :        **Chapter 11 Case No.**
                                                           :
**MOTORS LIQUIDATION COMPANY,** *et al.*,                  :        **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*           :
                                                           :
                                **Debtors.**               :        **(Jointly Administered)**
                                                           :
-----------------------------------------------------------x

**MOTION OF MOTORS LIQUIDATION COMPANY GUC TRUST FOR LIMITED**
**MODIFICATION OF THE AUTOMATIC STAY AND THE PLAN INJUNCTION AS**
**TO THE ACTION FILED BY SHERIF RAFIK KODSY**

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES DISTRICT BANKRUPTCY JUDGE:

          The Motors Liquidation Company GUC Trust (the "**GUC Trust**") respectfully

represents:

**Relief Requested**

          1.         The GUC Trust previously designated proof of claim number 69683 (the

"**Claim**"), filed by Sherif Rafik Kodsy ("**Plaintiff**"), for mediation pursuant to the ADR

Procedures.[2] However, on March 7, 2012, the GUC Trust terminated the ADR Procedures with

---

[2] Capitalized terms not defined in this section are defined below.

respect to the Claim because it had become apparent that further settlement negotiations would be futile.

2.    The GUC Trust now requests a limited modification of the Automatic Stay and the Plan Injunction solely to the extent necessary to permit liquidation of the Claim through litigation of the Action in the 15th Judicial Circuit Court in Palm Beach County, Florida, where Plaintiff's Action is pending, subject to the GUC Trust's right to seek removal and/or transfer of venue.

## Jurisdiction

3.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

A.    The Bankruptcy Proceedings and the Automatic Stay

4.    On June 1, 2009 (the "**Commencement Date**"), Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), and certain of its subsidiaries, as debtors in the above-captioned chapter 11 cases (collectively, the "**Debtors**"), commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Court**").

5.    Pursuant to section 362 of the Bankruptcy Code, the automatic stay went into effect on the Commencement Date and barred, *inter alia*, the commencement or continuation of any judicial action or proceeding against the Debtors that was commenced prior to the Commencement Date (the "**Automatic Stay**").

X:\DOCUMENTS AND SETTINGS\DEROUSSE\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\JW2BZOAA\US_ACTIVE_KODSY MOTION TO LIFT STAY_43947000_5.DOC

2

B.    Plaintiff Filed the Claim Based on the Action

6.    A lawsuit styled *Sherif Rafik Kodsy vs. General Motors Corporation,* Case No. 09-CA-011174 (the "**Action**"),[3] is currently pending in the 15th Judicial Circuit Court in Palm Beach County, Florida (the "**Florida Court**"), but has been stayed since the Commencement Date pursuant to the Automatic Stay.

7.    On January 4, 2009, Plaintiff filed the Claim[4] relating to the Action asserting an unsecured claim in the amount of $15,000,000.

C.    The Claim Is Unresolved

8.    On February 23, 2010, this Court entered the Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 (the "**ADR Order**") Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation (the "**ADR Procedures**") (ECF No. 5037).[5]

9.    On March 7, 2012, the GUC Trust terminated the ADR Procedures with respect to the Claim. Accordingly, the Claim is an "Unresolved Designated Claim" pursuant to the ADR Order and the ADR Procedures.

10.    The ADR Order and the ADR Procedures provide that if an Unresolved Designated Claim cannot be adjudicated in the Court as a result of abstention or because of lack of or limitations upon subject matter jurisdiction, litigation of such Unresolved Designated Claim shall proceed in the nonbankruptcy forum where the Unresolved Designated Claim was pending on the date the Debtors commenced their respective voluntary chapter 11 cases, subject to the

---

[3] The Complaint filed by Plaintiff in the Action is annexed hereto as "**Exhibit A**."

[4] The Claim is annexed hereto as "**Exhibit B**."

[5] The ADR Order and ADR Procedures were subsequently amended by the Court on October 25, 2010 (ECF No. 7558). The amended ADR Order and ADR Procedures are annexed hereto as "**Exhibit C**." On February 13, 2012, the GUC Trust filed a motion to supplement the ADR Procedures, and the entry of that order is currently pending. (ECF No. 11413)

Debtors' right to seek removal and/or transfer of venue or in such other forum. (*See* ADR Procedures § II.E.3; ADR Order at 6.)

11.    On March 28, 2011, the Court entered its Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(b) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9941) (the "**Confirmation Order**"). Among other things, the Confirmation Order (i) confirmed the Debtors' Second Amended Joint Chapter 11 Plan (the "**Plan**"), (ii) established the GUC Trust pursuant to that certain Motors Liquidation Company GUC Trust Agreement, (iii) authorized the GUC Trust to resolve certain claims pending against the Debtors' estates, and (iv) enjoined all persons from commencing or continuing in any manner on account of or respecting any claim, debt, right, or cause of action for which the Debtors, the GUC Trust Administrator, or the Avoidance Action Trust Administrator retains sole and exclusive authority to resolve in accordance with the Plan (the "**Plan Injunction**"). (*See* Confirmation Order ¶ 54.)

12.    Pursuant to the ADR Order and the ADR Procedures, the GUC Trust wishes to modify the Automatic Stay and the Plan Injunction solely to the extent necessary to permit the liquidation of the amount of the Claim through litigation of the Action in the Florida Court, subject to the GUC Trust's rights to seek removal and/or transfer of venue.

### The Relief Requested Should Be Approved by the Court

13.    The ADR Procedures provide that if a Designated Claim is not resolved by the ADR Procedures, was pending in a nonbankruptcy forum on the Commencement Date, and cannot be adjudicated by the Court,[6] litigation of such claim shall proceed in that

---

[6] The Claim cannot be adjudicated to judgment by the Court because it is an unliquidated personal injury claim. *See* 28 U.S.C. § 157(b).

nonbankruptcy forum, subject to the Debtors' right to seek removal or transfer of venue. (ADR Procedures § II.E (Ex. B).)

14.    The ADR Order further provides that if litigation of an Unresolved Designated Claim in a forum other than this Court is required, the Automatic Stay shall be modified "solely to the extent necessary to permit the liquidation of the amount of such Unresolved Designated Claim in the appropriate forum." (ADR Order at 6 (Ex. B); *see also* ADR Procedures §§ II.E(3)-(4) (Ex. B).)[7]

15.    Here, pursuant to the ADR Order and the ADR Procedures, the GUC Trust terminated the ADR Procedures, and the Claim was not resolved. Thus, the Claim is an "Unresolved Designated Claim" pursuant to the ADR Order and the ADR Procedures.

16.    Accordingly, pursuant to the ADR Order and Section II.E of the ADR Procedures, the GUC Trust hereby requests that the Court modify the Automatic Stay and the Plan Injunction solely to the extent necessary to enable the Action to proceed to final judgment or settlement in the Florida Court, subject to the Debtors' and/or the GUC Trust's rights to seek removal and/or transfer of venue.

## Notice

17.    Notice of this Motion has been provided to Plaintiff and parties in interest in accordance with the Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures, dated May 5, 2011 (ECF No. 10183). The GUC Trust submits that such notice is sufficient and no other or further notice need be provided.

---

[7] The ADR Procedures further provide that any such liquidated claim "(a) shall be subject to treatment under the applicable chapter 11 plan or plans confirmed in these cases; and (b) shall be treated as a general unsecured nonpriority claim against the Debtor identified in the judgment, unless otherwise determined and ordered by the Bankruptcy Court." (*See* ADR Procedures § II.E(4) (Ex. B).)

X:\DOCUMENTS AND SETTINGS\DEROUSSE\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\JW2BZOAA\US_ACTIVE_KODSY MOTION TO LIFT STAY_43947000_5.DOC

5

18.    No previous request for the relief sought herein has been made by the

GUC Trust to this or any other Court.

WHEREFORE the GUC Trust respectfully requests entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
April 13, 2012

/s/ Joseph H. Smolinsky_____
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
  Company GUC Trust

X:\DOCUMENTS AND SETTINGS\DEROUSSE\LOCAL SETTINGS\TEMPORARY INTERNET
FILES\CONTENT.OUTLOOK\JW2BZOAA\US_ACTIVE_KODSY MOTION TO LIFT STAY_43947000_5.DOC

6

## Exhibit A

**Complaint**

# IN THE CIRCUIT COURT OF THE FIFTEENTH JUDICIAL CIRCUIT, IN AND FOR PALM BEACH COUNTY, FLORIDA

SHERIF RAFIK KODSY

      PLAINTIFF

VS.

                      CASE NO:09-CA-011174

GENERAL MOTORS CORPORATION

      DEFENDANT

## AMENDED TRIAL DE NOVO PLEADING

CALENDARED
✓ Master
___ Atty.
___ Secy.

RECEIVED

OCT 0 9 2009
Orlando Law Offices of
Rumberger, Kirk & Caldwell, P.A

## HEREBY, PLAINTIFF PLEADS AND AMENDS THE TRIAL DE-NOVO PROCEEDING, AND STATES THAT THIS ACTION IS FOR AN ACCESS OF 1-5 MILLIONS, IN DAMAGES, NOT INCLUDING LEGAL FEES AND COSTS....

'The cardinal rule of statutory construction is to ascertain and give effect to the true intent of the legislature. [Citation]' " Schawk, Inc. v. Zehnder, 326 Ill. App. 3d 752, 755, 761 N.E.2d 192, 194 (2001). In divining intent, we presume the legislature did not intend to create absurd, inconvenient, or unjust results. In re B.L.S., 202 Ill. 2d 510, 514, 782 N.E.2d 217, 220 (2002). " 'The best evidence of legislative intent is the language used in the statute itself, which must be given its plain and ordinary meaning. [Citation]' " Schawk, 326 Ill. App. 3d at 755, 761 N.E.2d at 194. " 'The statute should be evaluated as a whole, with each provision construed in connection with every other section. [Citation]' " Schawk, 326 Ill. App. 3d at 755, 761 N.E.2d at 194. " 'If legislative intent can be ascertained from the statute's plain language, that intent must prevail without resort to other interpretive aids. [Citation.] ' " Schawk, 326 Ill. App. 3d at 755, 761 N.E.2d at 194. "Sections of the same statute should be considered *in pari materia* and each section should be construed with every other part or section of the statute to produce a harmonious whole." St. Paul Fire & Marine Insurance Co. v. Smith, 337 Ill. App. 3d 1054, 1060, 787 N.E.2d 852, 856 (2003).

1

THE 2009 FLORIDA STATUTES , 320.61{5}STATES THAT, Any manufacturer, distributor, or importer, who obtains a license under this section, is engaged in business in this state and is subject to the jurisdiction of the courts of this state pursuant to chapter 48. Any manufacturer not licensed under this section, who is a manufacturer of motor vehicles of a recognized line-make which are sold or leased in this state pursuant to a plan, system, or channel of distribution established, approved, authorized or known to the manufacturer, shall be subject to the jurisdiction of the courts of this state in any action seeking relief under or to enforce any of the remedies or penalties provided in ss. 320.60-320.70.

COUNT I
**FRAUD**

A- THE DEFENDANT'S GENERAL MOTORS CORPORATION AND

ITS CONSPIRING AGENTS FROM CORAL CADILLAC INC. THE

SELLING DEALER, DID COMMIT FRAUD ACCORDING TO THE

2009 FLORIDA STATUTES, **IN TORT 768.042 OF THE FLORIDA**

**STATUTES, FOR A VIOLATION OF** RULE 1.120. PLEADING SPECIAL

MATTERS; (b) Fraud, Mistake, Condition of the Mind. In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with such particularity as the circumstances may permit. Malice, intent, knowledge, mental attitude, and other condition of mind of a person may be averred generally.

**IT WAS FURTHER ADMITTED BY DEFENDANTS' THAT THE**

**VEHICLE ASSERTED HEREIN WAS SOLD AS 'USED',**

**CONTRARY TO THE MEANING OF THE TERM USED.**

**SECTION 320.60{13}"Used motor vehicle" means**
any motor vehicle the title to which has been transferred, at least once, by a manufacturer, distributor, importer, or dealer to an ultimate purchaser.

**SEE ATTACHED, CERTIFICATE OF ORIGIN FOR A VEHICLE.,**

2

**AND USED BUYER'S ORDER, FROM CORAL CADILLAC, INC.**

**BY SELLING THE 2008 HUMMER H2, VIN #5GRGN23878H107653,**

**AS USED, WITHOUT DISCLOSURES OF ITS PRIOR LEASED**

**USE, AND DEFECTS, WAS A VIOLATION OF FLORIDA LAW.**

B- FURTHER, THERE WAS NO PRIOR DISCLOSURE FOR THE

ELEVATED VIBRATIONS IN RESPECT TO THE VEHICLE DESIGN

AS TO ITS OFFROAD CAPABILITIES AND AGGRESSIVE DESIGN,

WITH THE ELEVATED ENGINE RPM'S, SLIPPING TRANSMISSION,

HESITANT ENGINE MISS AND SQUEELING BRAKES.. IF THERE

WAS A DISCLOSURE, THE PLAINIFF WOULD HAVE NOT

PURCHASED THE MOTOR VEHICLE. PLAINTIFF WAS NOT

ALERTED OR WARNED ABOUT THE ELEVATED PERFORMANCE

DESIGN, PRODUCING VIBRATIONS AND HIGH PITCHED ENGINE

NOISES, IT REFLECTS SHOW TRUCK CHARACTERISTICS WHICH

WAS UNFORSEEN TO THE CONSUMER AT THE TIME OF THE

PURCHASE. "THE MANUFACTURER, DID ADMIT REPEATEDLY

THAT THE PRESENCE OF THE VIBRATIONS IN THE SUBJECT

VEHICLE WAS INHERENT IN THE DESIGN OF THE VEHICLE", SEE

LEMON LAW TRANSCRIPT, PAGES 77-79., SEE THE ROBERT A

DITMAN LETTERS, AND THE CORAL CADILLAC WORK ORDERS.

3

THE VEHICLE WAS SOLD UNDER FALSE PRETENSES, TO

CONCEAL ITS DEFECTS, AND ITS PRIOR THIRD PARTY USE OF

THE MOTOR VEHICLE, INDICATING MALICE, AND FRAUD

ACCORDING TO FLORIDA LAW. NO DISCLOSURES………

THE VEHICLE WAS A SOUP'D UP <u>SHOW TRUCK</u>, NOT INTENDED

FOR PUBLIC USE, …….. A FRONT LINE REJECT…….

<u>COUNT II</u>
**<u>BREACH OF WARRANTY</u>**

PLAINTIFF ASSERTS THAT THE MANUFACTURER BREACHED ITS

EXPRESSED AND IMPLYED WARRANTIES TO CONFORM THE

SUBJECT VEHICLE TO COMPARABLE MOTOR VEHICLES

STANDARDS OF SAFETY DESIGN AND EXPECTATIONS.

ACCORDING TO THE MACHINERY DIRECTIVE, FIRST

INTRODUCED IN 1989, IT WAS INTENDED TO REMOVE

BARRIERS TO TRADE. [STRICT MECHANICAL COMPLIANCES].

IT PUTS DUTIES ON MANUFACTURERS AND SUPPLIERS WHO

PLACE MACHINERY ON THE EUROPEAN MARKET TO DESIGN

THEIR PRODUCTS TO ELIMINATE OR REDUCE RISKS TO HEALTH

AND SAFETY AND TO WARN THE USER OF ANY RESIDUAL

RISKS, PROVIDING INFORMATION REQUIRED FOR SAFE USE

4

(FOR EXAMPLE, OPERATOR TRAINING, MAINTENANCE AND

SELECTION OF CONSUMABLES). THERE ARE SPECIFIC

REQUIREMENTS FOR MINIMISING RISK FROM VIBRATION IN

THE DESIGN AND CONSTRUCTION OF THE MACHINE AND, IN

THE CASE OF HAND HELD, HAND GUIDED AND MOBILE

MACHINES, FOR DECLARING THE VIBRATION EMISSION. IF THE

DECLARED EMISSION OF A MACHINE IS REPRESENTATIVE OF

THE VIBRATION IN THE REAL-WORLD USE, IT CAN BE

ADEQUATE TO INFORM THE USER OF RESIDUAL VIBRATION

RISKS. THE HARMONIZED STANDARDS DEFINE SAFETY

REQUIREMENTS FOR VARIOUS CATEGORIES OF MACHINE

(INCLUDING THE PROVISION OF USER INFORMATION);

CONFORMITY WITH THE RELEVANT STANDARD CARRIES A

PRESUMPTION OF CONFORMITY WITH THE DIRECTIVE.

1- THE MANUFACTURER THROUGH ITS LIMITED AGENTS FAILED

TO IMPLEMENT  PEAK VIBRATION READINGS IN THE SUBJECT

VEHICLE AND DID NOT PRODUCE TACHOMETER READINGS OR

ANY SORT OF READINGS WHAT SO EVER.

SEE INVOICES #540280, #541007, #541391, #443188, #443510, AND

#543204. THE ELEVATED VIBRATIONS WAS DOCUMENTED TO

5

HAVE HAD EXISTED, <u>TO REQUIRE A SERVICE</u>, NO TECHNICAL
DATA WAS GENERATED FROM TESTING OF THE SUBJECT
VEHICLE TO DOCUMENT CONFORMITIES OR NON
CONFORMITIES OF VIBRATION LEVELS ACCORDING TO THE
INDUSTRY STANDARDS AND EXPECTATIONS. **<u>ACCORDING TO
THE DEPARTMENT OF HEALTH AND HUMAN SERVICES, THE
CENTERS FOR DISEASE CONTROL AND PREVENTION, AND
THE NATIONAL INSTITUTE OF OCCUPATIONAL SAFETY AND
HEALTH.</u>**

THE RULE OF THREE STRIKES, YOUR OUT, MORE THAN APPLIES,
IN THIS INSTANT CASE AS THE MANUFACTURER WAS ALLOWED
TO PROVIDE CONFORMITIES SERVICES TO THE SUBJECT
VEHICLE ON EIGHT DIFFERENT VISITS, AND OVER A YEAR PAST
TO RECALL THE SUBJECT SUV., SEE THE LEMON LAW
TRANSCRIPT, PAGE #81- #85{19-25) AND PG. #86(1-3). MR.
BARDILL ADMITED TO OTHER CO-EXISTANT DEFECTS, THAT
PROVIDES VIBRATION EXPOSURES TO THE VEHICLE
OCCUPANTS, (A RAIL SHAKE).... PLAINTIFF DID NOT COMPLAIN
ABOUT A RAIL SHAKE AS IT IS NOT NORMAL TO EXIST IN A
HUMMER H2. LIKE THE SUBJECT VEHICAL, AND HE FURTHER

STATED THAT THERE IS NOTHING ELSE THAT CAN BE DONE.....

NO FURTHER WARRANTIES...NO REMEDIES, NO CODES...ETC.

2- THE ALLEGED BRAKES REPLACEMENT WAS PERFORMED ON

NOVEMBER 12TH 2008, THE INVOICE STATED,"SPECIAL ORDER

PART ON BACK ORDER", THAT HOWEVER DOES NOT INDICATE

WHY IT WAS REQUIRED TO REPLACE ???  IT MAY SOUND GOOD

AS A SOLUTION FOR THE SQUEEL NOISE !!!! ACCORDING TO THE

" *ALL TECHNICAL SERVICE BULLETINS, RECALL # 07V373000*:

ABS WHEEL SPEED SENSOR WIRING". INDICATING POTENTIAL

NUMBER OF UNITS AFFECTED: **363** , SPEED SENSOR WIRING

SHOULD HAVE BEEN CHECKED AND REPLACED INSTEAD OF

REPLACING NEW PADS........ AND THEN ACCORDING TO THE

INVOICE OF DECEMBER 23RD 2008, PAGE 1, FRONT BRAKES PADS,

DISC BRAKE FRONT R&R OR REPLACE, IT STATED FRONT

BRAKES SQUEEL NEC. TO REPLACE FRONT PADS, BUT IT DID

NOT STATE WHY SUCH A SERVICE IS REQUIRED WITH 6526

MILES ON THE NEW PADS OR THE CAUSE FOR SUCH A

CONCLUSION ??? FALSE DIAGNOSIS , {AN INSTRUMENT FOR

MEASURING VIBRATION OF VEHICLE BRAKE PADS (SQUEEL),

WAS NOT USED TO DETERMINE HOW BADLY A VEHICLE BRAKE
SQUEELS, AND MR JOE BARDIL ADMITED THAT THE ROTORS

WERE SCUFFED WITH A GRINDER, WITHOUT CARE OR

DISCLOSURES, CONTRARY TO COMMON STANDARDS OR

PRACTICES, SINCE ROTORS ARE USUALLY PRECISELY

MACHINED, THIS FAULTY SERVICE WAS DISCOVERED BY THE

GOODYEAR GEMINI DIAGNOSTIC CHECK ON MARCH 13TH 2009,

WITH FURTHER RECOMMENDATIONS FOR THE VIBRATIONS,

WITH REFERENCE TO A GENERAL MOTORS TECHNICAL SERVICE

BULLETIN ISSUED DECEMBER 10TH 2007, **REFERENCE(S):03-06-**

**04-030F** , TITLED, " VARIOUS DRIVEABILITY SYMPTOMS DUE TO

CLOGGED FUEL INJECTORS, {CONTRIBUTES TO VIBRATIONS}.

3- THE UNDER-CARRAIGE RUST WAS A BREACH OF WARRANTY

AS ONLY FRONT AXLE AND TIE ROD ENDS WERE PAINTED

AFTER DISASSEMBLY OF THOSE ITEMS TO CONFORM WITH THE

5 YEAR WARRANTY OF ANTI BODY CORROSION (UNDERBODY

PROTECTION) CLAUSE. THERE ARE OTHER AREAS THAT WAS

NEGLECTED WHICH WAS NOT ADDRESSED AND ARE EXISTANT

IN THE SUBJECT VEHICLE. THE SERVICE MANAGER, MR JOE

BARDILL, FOR CORAL CADILLAC INC., STATED THAT THIS WAS

COMMON TO HAVE RUST IN NEW VEHICLES.THE REFUSAL TO

PROPERLY PROVIDE FURTHER WARRANTIES TO ADDRESS A

8

COMPLAINT WAS A BREACH OF WARRANTY BY ITSELF, YET

THERE WAS OTHER REPAIRS PERFORMED TO CONFORM

WITHOUT A SUCCESSFUL RESOLUSION .

4- AN IMPROVEMENT TO THE TRANSMISSION WAS NOT A

CONFORMITY RESOLUTION AS IT STILL SLIPS BUT LESS THAN IT

WAS, IT IS NOT SUPPOSED TO SLIP AT ALL............ AFTER

THREE ATTEMPTED REPAIRS, INV.# 541391, INV.#540280,

INV.#541007. THEY WERE UNABLE TO FIX SLIPPING 100%.

5- THE VIBRATIONS WAS CONFIRMED TO EXIST EVEN WITH THE

FLYWHEEL DISCONECTED, NO FURTHER REPAIRS WERE

EXTENDED EXCEPT DETACH AND RESET ONLY, THE VIBRATION

MAGNITUDE AND TRANSMISSIBILITY WAS NOT INVESTIGATED

BY A TIME FREQUENCY (T-F) ANALYSIS, WHICH CAN PROVIDE A

BETTER CHARACTERIZATIONS OF SUCH HIGHLY TRANSIENT

VIBRATIONS. THE ANALYTIC WAVELET TRANSFORM (AWT) IS

AN IDEAL T-F ANALYSIS TOOL BECAUSE IT POSSESSES THE

ADVANTAGES OF BOTH THE FOURIER TRANSFORM AND THE

WAVELET TRANSFORM. THE OBJECTIVE OF THIS STUDY WAS

TO EXPLORE THE APPLICATION OF THE AWT METHOD FOR

CHARECTERIZING THE VIBRATIONS AND ASSESSING THEIR

9

EXPOSURE RISK, NO MONITORING WITH AN ECONOMICAL

VIBRATION METER, WAS PERFORMED...

A breach occurs when a party repudiates the contract before performance Is

due. Repudiation may consist of a statement reasonably interpreted to mean

that the party will not or cannot perform the contract. It may also consist of a

voluntary affirmative act which renders the party unable to perform.

## COUNT III
## **BAD FAITH**

1-THE MR. JORGE R. LOPEZ GONZALEZ, WAS THE LAST PERSON

TO INSPECT THE SUBJECT MOTOR VEHICLE FROM GENERAL

MOTORS CORPORATION, DESPITE THE DEFECTS AT TIME OF

INSPECTION MR. GONZALEZ DENIED ALL ALEGATIONS TO

LATER ADMIT THROUGH THE LETTER DATED MARCH

26TH 2009, HE RECOGNIZED THE INDEPENDENT DIAGNOSTIC

CHECK, PERFORMED BY THE BOCA RATON GOODYEAR/GEMINI

STORE IN BOCA RATON FLORIDA. AND REFERENCED THE

**(SECTION 06-ENGINE/PROPULSION SYSTEM),** HOWEVER MR.

BARDILL FROM CORAL CADILLAC SERVICE DEPARTMENT

REFUSED TO PERFORM ANY FURTHER INSPECTIONS, TESTING,

DIAGNOSTICS OR REPAIRS, ONCE CONTACTED, AS REFERENCED

IN THE LETTER.

10

2-THE GENERAL MOTORS HUMMER DIVISION IN DETROIT
WAS CONTACTED MORE THAN A HALF DOZEN TIMES BY
TELEPHONE ON DIFFERENT OCCASIONS ABOUT THE
VIBRATIONS, AND THEY DID INFACT CORRESPOND BY
SENDING TWO LETTERS CONFIRMING THE SET
APPOINTMENT TO ADDRESS THE VIBRATIONS,
ATTACHED LETTERS, ON THE DATE OF INSPECTION
INVOICE# 543204 , PAGE 1 SECTION-C-, IT STATES " ROAD
TESTED 6 MILES, VEHICLE EXHIBITS NORMAL IDLE QUALITY
FOR 6.2 LITRE ENGINE, PREVIOUSLY COMPARED WITH LIKE
VEHICLE". NO INSTRUMENTAL TESTING OF ANY SORT WAS
USED, ONLY A STATEMENT WITHOUT BASIS, BY A NON
EXPERT FOR THE HUMMER BRAND, AS IT WAS CONDUCTED
AT THE CORAL CADILLAC SERVICE DEPARTMENT IN
POMPANO BEACH FLORIDA. WITHOUT ANY DATA LOGGING
INSTRUMENTATION, OR WAS THERE ANY CONCERNS
ALERTED, AFTER EXTENSIVE ATTEMPTED REPAIRS TO
CONFORM... SEE INVOICES ATTACHED. AND INDEPENDENT
INSPECTIONS.

3-THE MR THORNTON, THE DISTRICT SERVICE MANAGER

11

FOR GEOGRAPHY THAT COVERS BROWARD COUNTY AND
DELRAY, SPECIFICALLY STATED, IN THE LEMON LAW
TRANSCRIPT, PAGE #77, THAT THE TIRES ON THE SUBJECT
VEHICLE ARE SOLELY A GREAT SOURCE OF A NON-
CONFORMITY , THE MANUFACTURER SHOULD HAVE
PROVIDED A SAFER MORE CONFORMED TIRE BRAND TO
REDUCE THE DISORDERS FELT IN THE VEHICLE. SEE
INVOICE DATED DECEMBER 8TH 2008, BY SCHUMACKER
HUMMER SERVICE DEPARTMENT, THREE NEW TIRES WERE
PROVIDED TO REPLACE EXISTING, WITHOUT A REASON AS
TO WHY THIS WAS NEEDED, SINCE THE SAME BRAND WAS
SUPPLIED, AS PRE-EXISTING TO REPLACE. NO
IMPROVEMENT WHAT SO EVER WAS EVER INTENDED OR
ACHIEVED FROM THIS SERVICE, A WASTE OF TIME AND
MONEY, A TRICK OR A SHAM??

COUNT IV
**CONSPIRACY**

THE MANUFACTURER CONSPIRED WITH THE DEALERS
INVOLVED TO PASS ON A NONCONFORMED VEHICLE AS
NORMAL FOR THAT TYPE OF VEHICLE, AS USED, WITHOUT
TRUTHFUL AND HONEST DISCLOSURES, AND POOR SERVICE,

12

**WITH LACK OF KNOWLEDGE AND RESOURCES……**

Florida law defines the crime of conspiracy as occurring where a person "agrees, conspires, combines, or confederates with another person or persons to commit any offense[.]" **Â§777.04(3), Fla. Stat.** (2003). "The=2 0crime of conspiracy involves an express or implied agreement between two or more people to commit a criminal offense." **State v. Russell, 611 So. 2d 1265, 1267 (Fla. 2d DCA 1992)**.

**THE PLAINTIFF PROVIDED THE INDEPENDENT INSPECTIONS**

**AFTER THE GENERAL MOTORS CORPORATION AGENTS**

**CLAIMED THAT THE REPAIRS WERE SUCCESSFUL.**

**TRANSCRIPT PG.#37., SEE ATTACHED INSPECTION DOCS,**

**1-THE PROGRESSIVE INSURANCE INSPECTION, DATED**

**12/26/2008**

**2-THE HAGEN RANCH TEXACO, INSPECTION, DATED 01/02/2009**

**3-THE PALM BEACH GARAGE, INSPECTION, DATED 02/20/2009**

**4-THE BOCA RATON GOODYEAR/GEMINI, DIAGNOSTIC,**

**CHECK, WITH RECOMMENDATIONS TO TREAT THE**

**VIBRATIONS SYMPTOMS, DATED 03/13/2009.**

**ALL THE INDEPENDENT INSPECTIONS IDENTIFIED A**

**RESIDUAL FROM VIBRATIONS EXPOSURE PRESENSE AND**

**ALERTED TO RETURN TO DEALER/MANUFACTURER FOR A**

**RESOLUTION DIRECTIVE. INSTEAD THE GENERAL MOTORS**

**CORPORATION CONSPIRED THROUGH ITS OUTLET**

13

DEALERS TO PUSH THE DEFECTS TOWARDS THE VEHICLE

TRAITS AND DESIGN TO REFUSE SERVICE TO FURTHER

AMELIORATE THE PROBLEMS/ISSUES, QUOTED IN THE

ROBERT A. DITMAN LETTER, A REGISTERED AGENT OF

CORAL CADILLAC INC. DATED FEBRUARY 5TH 2009.

COUNT V
NEGLIGENCE AND STRICT LIABILITY

MCPHERSON V. BUICK MOTOR CO., 111 N.E. 1050 (N.Y. 1916),
If the nature of a thing is such that it is reasonably certain to place life and limb in
peril when negligently made, it is then a thing of danger. Its nature gives warning of
the consequence to be expected. If to the element of danger there is added
knowledge that the thing will be used by persons other than the purchaser, and used
without new tests, then, irrespective of contract, the manufacturer of this thing of
danger is under a duty to make it carefully. That is as far as we need to go for the
decision of this case . . . . If he is negligent, where danger is to be foreseen, a liability
will follow.
See Spring Motors Distribs., Inc. v. Ford Motor Co., 489 A.2d 660,
666 (N.J. 1985)

ACCORDING TO ABSTRACTS # 911053 , #911065, AND #911079,

DATED MAY 1991, PUBLISHED BY THE SAE INTERNATIONAL ,

FOR MOTOR VEHICLES AND PASSENGER CARS,

HIGHLIGHTING THE IMPORTANCE OF NOISE AND

VIBRATION CONTROL MEASURES IN THE POWERTRAIN OF

PASSENGER CARS AND THE MOST RECENT PROCEEDINGS OF

THE FIRST AMERICAN CONFERENCE ON HUMAN VIBRATION.

AND HUMAN EXPOSURES TO VIBRATIONS ABSTRACTS,

ATTACHED, <u>THE VIBRATION IN MOTOR VEHICLES HAD BEEN</u>
<u>AN IMPORTANT FACTOR.</u> PROLONGED, EXTENSIVE
EXPOSURE TO HAND-TRANSMITTED VIBRATION COULD
<u>CAUSE A SERIES OF VIBRATION-INDUCED DISORDERS IN THE</u>
<u>VASCULAR, SENSORINEURAL, AND MUSCULOSKELETAL</u>
<u>STRUCTURES OF THE HUMAN HAND ARM SYSTEM, WHICH</u>
<u>HAVE BEEN COLLECTIVELY CALLED HAND ARM VIBRATION</u>
<u>SYNDROME (HAVS).</u> LACK OF QUALITY AWARENESS BY
THE GENERAL MOTORS CORPORATION AND THEIR AGENTS
CONSTITUTE NEGLIGENCE, AND GREAT DISREGARD FOR
HUMAN HEALTH AND SAFETY FROM ITS DESIGN, AS IT WAS
NOT EVEN ABLE TO PROVIDE A QUANTITATIVE
INVESTIGATION TO EVALUATE THE VIBRATIONS
TRANSMITTED<u>, TO PREVENT INJURY(IES) TO OCCUPANTS.</u>
<u>FELDMAN V. LEDERLE LABORATORIES, 97 N.J. 429, 452, (1985):</u>
"NEGLIGENCE AND STRICT LIABILITY IN WARNING CASES MAY
BE DEEMED TO BE FUNCTIONAL EQUIVALENTS…
CONSTRUCTIVE KNOWLEDGE EMBRACES KNOWLEDGE THAT
SHOULD HAVE BEEN KNOWN BASED ON INFORMATION THAT
WAS REASONABLY AVAILABLE OR OBTAINABLE AND SHOULD

15

HAVE ALERTED A REASONABLY PRUDENT PERSON TO ACT. PUT

ANOTHER WAY, WOULD A PERSON OF REASONABLE

INTELLIGENCE OR OF THE SUPERIOR EXPERTISE OF THE

DEFENDANT CHARGED WITH SUCH KNOWLEDGE CONCLUDE

THAT DEFENDANT SHOULD HAVE ALERTED THE CONSUMING

PUBLIC?.

**... FURTHER A MANUFACTURER IS HELD TO THE STANDARD**

**OF AN EXPERT IN THE FIELD....[EMPHASIS ADDED]. A**

**MANUFACTURER SHOULD KEEP ABREAST OF SCIENTIFIC**

**ADVANCES."**

**SEE ALSO <u>CEPEDA V. CUMBERLAND ENGINEERING</u>, 76 N.J. 152, 163 (1978):**

"KNOWLEDGE OF THE DANGEROUS POTENTIALITY OF A
MACHINE DESIGN AS REFLECTED BY THE EVIDENCE AT TRIAL
IS IMPUTABLE TO THE MANUFACTURER, AND THE REMAINING
DETERMINITIVE QUESTION AS TO AFFIRMITIVE LIABILITY IS
WHETHER A REASONABLY PRUDENT MANFACTURER WITH
SUCH FOREKNOWLEDGE WOULD HAVE PUT SUCH A PRODUCT
INTO THE STREAM OF COMMERCE AFTER CONSIDERING THE
HAZZARDS AS WELL AS THE UTILITY OF THE MACHINE..."

**THE PLAINTIFF HAS SHOWN BY A PREPONDERANCE OF**

**EVIDENCE, THAT THERE WERE EXCESSIVE VIBRATIONS**

**FELT IN THE SUBJECT VEHICLE, FROM INDEPENDENT**

**CREDIBLE INSPECTIONS THAT WERE CONDUCTED AFTER**

THE GENERAL MOTORS REPAIR OUTLETS , [CORAL
CADILLAC INC. AND SCHUMACKER HUMMER] HAD
CONCLUDED THEIR LIMITED SUMMARIZED INVOICES
WITHOUT FURTHER CONCERNS, OR DUTY.

**EXCESSIVE VIBRATIONS PRESENCE WAS NOT AS EXPECTED**
**AND IT WAS NOT A COMMON TRAIT TO BE FOUND IN A**
**CONFORMED PASSENGER MOTOR VEHICLE .**

COUNT VI
**PERSONAL INJURY**

ACCORDING TO A DOCUMENTED STUDY BY THE NATIONAL
INSTITUTE FOR OCCUPATIONAL SAFETY AND HEALTH THE
PLAINTIFF RESTS ITS COMPOUNDED COMPLAINTS  BY
PROVIDING THE CUMILATIVE DATA SHOWCASED WITH
RESULTS OF THE STUDY(IES) USING HUMAN AND ANIMAL
SUBJECTS WITH THE VIBRATION EXPOSURES, THERE
WAS SEVERAL STUDIES PERFORMED AND COLLECTIVELY
CONDUCTED IN OBSERVANCE OF WHOLE BODY VIBRATIONS,
AND HAND ARM VIBRATIONS, INDEPENDENTLY AND
COLLECTIVELY, RESEARCHED, TO ILLUMINATE
OPPORTUNITIES FOR THEIR DIAGNOSES, TREATMENT, AND
PREVENTION. SEE EXHIBIT ATTACHED DATED JUNE 2006,

17

**{PROCEEDINGS OF THE FIRST AMERICAN CONFERENCE ON**

**HUMAN VIBRATION}, SEE TRANSCRIPT, PG. 48 AND PG. 49.,**
A CASE STUDY OF WHOLE-BODY VIBRATION EXPOSURES

ASSOCIATED WITH ORDINARY PASSENGER AND

RECREATIONAL VEHICLES DUE TO THE EXTENDED EXPOSURES

OF VIBRATIONS FELT IN A MOTOR VEHICLE. THE PROLONGED

EXPOSURES IDENTIFIED ON PAGE 156, HIGHLIGHTS AN ANIMAL

STUDY WITH APPROX. TIME FOR INJURY(IES) OR DISORDERS TO

COMENCE AND DEVELOP BY REPEATED EXPOSURE SESSIONS,

WITH AND WITHOUT VIBRATION, WERE CONDUCTED 4HR/DAY 5

DAYS/WEEK FOR 5 WEEKS, THE VIBRATION EXPOSED GROUP

SHOWED SIGNS OF PROLONGED VASOCONSTRICTION

FOLLOWING REPEATED VIBRATION EXPOSURES, IN AS LITTLE

AS A FIVE WEEK EXPOSURE, OTHER ABSTRACTS STATE

INJURY(IES) COULD OCCOUR IN AS LITTLE AS TWO DAYS, THE

PLAINTIFF WAS EXPOSED TO ELEVATED VIBRATIONS FOR

MONTHS, WITH A HERNIETED BACK AND NECK, PAIN AND

SUFFERING SINCE AUGUST 19, 2008., AND IN APRIL 2009

PLAINTIFF SUSTAINED A PERMENANT INJURY(IES), AND WAS

EXPERIENCING MIGRAIN HEADACHS, WEAKNESS AND LACK OF

DESIRE. THE PLAINTIFF SUSTAINED MANY DISCOMFORTS AND

ULTIMATLY WAS PERMENANTLY INJURED, ACCORDING TO THE

MRI IMPRESSION RESULTS, 1- STRAIN/ PARTIAL TEAR MCL. 2-

TORN POSTERIOR HORN MEDIAL MENISCUS. 3- SMALL JOINT

EFFUSION WITH SUBCUTANEOUS EDEMA., DATED APRIL 16TH

2009. SEE ATTACHED MEDICAL DOCUMENTS.

SEE ATTACHED **NIOSH TRANSCRIPT** SEE PAGES # 55-56,

PAGE # 64, PAGE # 91 AND PAGES # 70, 72, 73, PAGES # 104, 105,

AND PAGE # 148.

Florida's dangerous instrumentality doctrine originated in
the case of Southern Cotton Oil Co. v. Anderson, 80 Fla.
441,468, 86 So. 629, 638 (1920) one who authorizes and
permits an instrumentality that is peculiarly dangerous in
its operation to be used by another on the public highway,
is liable in damages for injuries to third persons caused
by the negligent operation of such instrumentality on the
highway by one so authorized by the owner.

COUNT VII
PUNITIVE DAMAGES

THE PLAINTIFF'S CLAIM FOR PUNITIVE DAMAGES RELIES ON

THE 2009 FLORIDA STATUTE 768.72 (2)(A),(B), (3)(A,B,C)

TO PREVENT FUTURE INJURIES TO HUMANS EXPOSED TO

ELEVATED VIBRATIONS IN MOTOR VEHICLES.....

 Perlman v. Prudential Ins. Co. of America, 686 So. 2d 1378 (Fla. 3d
DCA 1997), requires, as a matter of law, punitive damages wherever a fraud
claim has been alleged.

In *Schropp v Crown Eurocars, Inc.,* **654 So.2d 1158 (Fla. 1995),** the supreme court reviewed the law concerning corporate liability for punitive damages, and established a clear distinction between vicarious and direct liability. In order to hold a corporation liable for vicarious liability for punitive damages, there must be a willful and malicious act on the part of an employee as well as a finding of independent negligent conduct by the corporation. *Id.* at 1159; *see also* ***Mercury Motors Express, Inc. v Smith,*** **393 So.2d 545 (Fla. 1981).** In order to impose direct liability for punitive damages on a corporation, there must be a showing of willful and malicious action on the part of a managing agent of the corporation. *Id.; see also* ***Bankers Multiple Line Ins. Co. v Farish,*** **464 So.2d 530 (Fla. 1985).** Under the vicarious liability theory, there is no requirement that the independent negligent conduct by the corporation be attributed to a managing agent. *Id.* at 1160-61.

768.72 (2)(a) "Intentional misconduct" means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.

**(b) "Gross negligence" means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.**

3) In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:(a) The employer, principal, corporation, or other legal entity actively and knowingly participated in such conduct;

(b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct; or

(c) The employer, principal, corporation, or other legal entity engaged in conduct that constituted gross negligence and that contributed to the loss,

damages, or injury suffered by the claim.

## SUMMARY JUDGEMENT REQUEST:

## SUMMARY JUDGEMENT IS PROPER IF THERE IS NO GENUINE

## ISSUE OF MATERIAL FACT IF THE MOVING PARTY IS

20

ENTITLED TO A JUDGEMENT AS A MATTER OF LAW.

MENENDEZ V. PALMS WEST CONDOMINIUM ASS'N, 736 SO.2D

58 (FLA. 1ST DCA 1999). THUS THE STANDARD OF REVIEW IS DE

NOVO. THE FIRST PRONG OF THE SUMMERY JUDGEMENT

STANDARD IS EASILY ESTABLISHED IN THE INSTANT CASE ,

BECAUSE NO FACTUAL DISPUTES EXIST. ALTHOUGH

THE PARTIES`DISAGREE ABOUT HOW MUCH VIBRATION WAS

PRODUCED AND FOR HOW LONG, THE DISPUTE

ESSENTIALLY PERTAINS TO A QUESTION OF LAW. INDEED,

"[W]HERE THE DETERMINATION OF THE ISSUES OF A

LAWSUIT DEPENDS UPON THE CONSTRUCTION OF A

WRITTEN INSTRUMENT AND THE LEGAL EFFECT TO BE

DRAWN THEREFROM, THE QUESTION AT ISSUE IS

ESSENTIALLY ONE OF LAW ONLY AND DETERMINABLE BY

ENTRY OF SUMMARY JUDGEMENT." COX V. CSX

INTERMODEL, INC., 732 SO.2D 1092, 1096 (FLA. IST DCA) (QUOTING

ANGELL V. DON JONES INS. AGENCY, 620 SO.2D 1012,1014 (FLA.

2ND DCA, 1993), It is well settled that legislative intent is the polestar that

guides a court's statutory construction analysis. See State v. Rife, 789 So. 2d

288, 292 (Fla. 2001); McLaughlin v. State, 721 So. 2d 1170, 1172 (Fla.

1998). In determining that intent, we have explained that "we look first to the statute's plain meaning." Moonlit Waters Apartments, Inc. v. Cauley, 666 So. 2d 898, 900 (Fla. 1996). Normally, "[w]hen the language of the statute is clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning." Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (quoting A.R.Douglass, Inc., v. McRainey, 137 So. 157, 159 (Fla. 1931)).

**320.60 Definitions for ss. 320.61-320.70.--Whenever used in ss. 320.61-320.70, unless the context otherwise requires, the following word s and terms have the following meanings:**

**(1) "Agreement" or "franchise agreement" means a contract, franchise, new motor vehicle franchise, sales and service agreement, or dealer agreement or any other terminology used to describe the contractual relationship between a manufacturer, factory branch, distributor, or importer, and a motor vehicle dealer, pursuant to which the motor vehicle dealer is authorized to transact business pertaining to motor vehicles of a particular line-make.**

**(2) "Common entity" means a person:**

**(a) Who is either controlled or owned, beneficially or of record, by one or more persons who also control or own more than 40 percent of the voting equity interests of a manufacturer; or**

**(b) Who shares directors or officers or partners with a manufacturer.**

22

(3) "Demonstrator" means any new motor vehicle that is carried on the records of the dealer as a demonstrator and is used by, being inspected or driven by the dealer or his or her employees, or driven by prospective customers for the purpose of demonstrating vehicle characteristics in the sale or display of motor vehicles sold by the dealer.

(4) "Department" means the Department of Highway Safety and Motor Vehicles.

(5) "Distributor" means a person, resident or nonresident, who, in whole or in part, sells or distributes motor vehicles to motor vehicle dealers or who maintains distributor representatives.

(6) "Factory branch" means a branch office maintained by a manufacturer, distributor, or importer for the sale of motor vehicles to distributors or to motor vehicle dealers, or for directing or supervising, in whole or in part, its representatives in this state.

(7) "Importer" means any person who imports vehicles from a foreign country into the United States or into this state for the purpose of sale or lease.

(8) "Licensee" means any person licensed or required to be licensed under s. 320.16.

(9) "Manufacturer" means any person, whether a resident or nonresident of this state, who manufactures or assembles motor vehicles or who manufactures or installs on previously assembled truck chassis special bodies or equipment which, when installed, form an integral part of the motor vehicle and which constitute a major manufacturing alteration. The term "manufacturer" includes a central or principal sales corporation or other entity through which, by contractual agreement or otherwise, it distributes its products.

(10) "Motor vehicle" means any new automobile, motorcycle, or truck, including all trucks, regardless of weight, including "heavy truck" as defined in s. 320.01(1) and "truck" as defined in s. 320.01(9), the equitable or legal title to which has never been transferred by a manufacturer, distributor, importer, or dealer to an ultimate purchaser; however, when legal title is

23

not transferred but possession of a motor vehicle is transferred pursuant to a conditional sales contract or lease and the conditions are not satisfied and the vehicle is returned to the motor vehicle dealer, the motor vehicle may be resold by the motor vehicle dealer as a new motor vehicle, provided the selling motor vehicle dealer gives the following written notice to the purchaser: "THIS VEHICLE WAS DELIVERED TO A PREVIOUS PURCHASER." The purchaser shall sign an acknowledgment, a copy of which is kept in the selling dealer's file.

(11)(a)  "Motor vehicle dealer" means any person, firm, company, corporation, or other entity, who,

1.  Is licensed pursuant to s. 320.27 as a "franchised motor vehicle dealer" and, for commission, money, or other things of value, repairs or services motor vehicles or used motor vehicles pursuant to an agreement as defined in subsection (1), or

2.  Who sells, exchanges, buys, leases or rents, or offers, or attempts to negotiate a sale or exchange of any interest in, motor vehicles, or

3.  Who is engaged wholly or in part in the business of selling motor vehicles, whether or not such motor vehicles are owned by such person, firm, company, or corporation.

(b)  Any person who repairs or services three or more motor vehicles or used motor vehicles as set forth in paragraph (a), or who buys, sells, or deals in three or more motor vehicles in any 12-month period or who offers or displays for sale three or more motor vehicles in any 12-month period shall be prima facie presumed to be a motor vehicle dealer. The terms "selling" and "sale" include lease-purchase transactions.

(c)  The term "motor vehicle dealer" does not include:

1.  Public officers while performing their official duties;

2.  Receivers, trustees, administrators, executors, guardians, or other persons appointed by, or acting under the judgment or order of, any court;

24

3. Banks, finance companies, or other loan agencies that acquire motor vehicles as an incident to their regular business; or

4. Motor vehicle rental and leasing companies that sell motor vehicles to motor vehicle dealers licensed under s.320.27.

(12) "Person" means any natural person, partnership, firm, corporation, association, joint venture, trust, or other legal entity.

(13) "Used motor vehicle" means any motor vehicle the title to which has been transferred, at least once, by a manufacturer, distributor, importer, or dealer to an ultimate purchaser.

(14) "Line-make vehicles" are those motor vehicles which are offered for sale, lease, or distribution under a common name, trademark, service mark, or brand name of the manufacturer of same.

(15) "Sell," "selling," "sold," "exchange," "retail sales," and "leases" includes any transaction where the title of motor vehicle or used motor vehicle is transferred to a retail consumer, and also any retail lease transaction where a retail customer leases a vehicle for a period of at least 12 months. Establishing a price for sale pursuant to s 320.64(24) does not constitute a sale or lease.

(16) "Service" means any maintenance or repair of any motor vehicle or used motor vehicle that is sold or provided to an owner, operator, or user pursuant to a motor vehicle warranty, or any extension thereof, issued by the licensee.

## CERTIFICATE OF SERVICE

**ALL ASSERTIONS MADE IN THE FOREGOING REQUEST, ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF AND THAT A COPY WAS FILED AND SENT TO THE DEFENDANTS ATTORNEY OF RECORD, BY EMAIL AND U.S. MAIL ON OCTOBER 7TH , 2009.**

**SHERIF RAFIK KODSY**
Individual/pro se
**15968 LAUREL OAK CIRCLE**
**DELRAY BEACH FLORIDA 33484**
**561-737-8998 / 800-379-8648**

COPY

## Exhibit B

### Proof of Claim No. 69683

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor (Check Only One)** | **Case No**
☒ Remediation and Liability Management Company, Inc (subsidiary of General Motors Corporation) 09-50029 (REG)
☐ Environmental Corporate Remediation Company, Inc (subsidiary of General Motors Corporation) 09-50030 (REG)

**Your Claim is Scheduled As Follows.**

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for expenses of asserting a claim under 11 USC § 503(b)(9) (see Item 8 5) All other requests for payment of an administrative expense should be filed pursuant to 11 USC § 503

**Name of Creditor (the person or other entity to whom the debtor owes money or property)**

Name and address where notices should be sent
Sherif Rafik Kodsy
15968 Laurel Oak Circle
DelRay Bch. Fl 33484

Telephone number
Email Address  561-6660237

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

Name and address where payment should be sent (if different from above)
FILED - 69683
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor you do not need to file this proof of claim form, EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED UNLIQUIDATED or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1 Amount of Claim as of Date Case Filed, October 9, 2009** $ 15,000,000.00

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority, complete item 5 If all or part of your claim is asserted pursuant to 11 USC § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

**2 Basis for Claim** Personal Injury Conspiracy Fraud Gross Negligence, Strict Liability
(See instruction #2 on reverse side )

**3 Last four digits of any number by which creditor identifies debtor** Punitive Damages

3a Debtor may have scheduled account as _____
(See instruction #3a on reverse side )

**4 Secured Claim (See instruction #4 on reverse side )**
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff  ☐ Real Estate  ☒ Motor Vehicle  ☐ Equipment  ☒ Other
Describe

Value of Property $_____  Annual Interest Rate ___%

Amount of arrearage and other charges as of time case filed included in secured claim, if any $_____

Basis for perfection _____

Amount of Secured Claim $_____  Amount Unsecured $_____

**6 Credits** The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7 Documents** Attach redacted copies of any documents that support the claim, such as promissory notes purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary (See instruction 7 and definition of redacted on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5 Amount of Claim Entitled to Priority under 11 USC § 507(a)** If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim
☐ Domestic support obligations under 11 USC § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 USC § 507(a)(4)
☐ Contributions to an employee benefit plan – 11 USC § 507(a)(5)
☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 USC § 507(a)(7)
☐ Taxes or penalties owed to governmental units – 11 USC § 507(a)(8)
☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case - 11 USC § 503(b)(9) (§ 507(a)(2)) ,
☐ Other – Specify applicable paragraph of 11 USC § 507(a)(__)
Amount entitled to priority
$_____
*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**Date** | **Signature** The person filing this claim must sign it Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above Attach copy of power of attorney, if any
Sherif R. Kodsy

**FOR COURT USE ONLY**

THE GARDEN CITY GROUP, INC. JAN 4 2010

Penalty for presenting fraudulent claim Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 USC §§ 152 and 3571
Modified B10 (GCG) (12/08)

## Exhibit C

**Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing
Implementation of Alternative Dispute Procedures, Including Mandatory Mediation, dated
October 25, 2010 (ECF No. 7558)**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, *et al.*,     :    09-50026 (REG)
        f/k/a General Motors Corp., *et al.*  :
                                          :
                Debtors.                  :    (Jointly Administered)
                                          :
---------------------------------------------------------------x

### ORDER GRANTING MOTION OF MOTORS LIQUIDATION COMPANY GUC TRUST FOR LIMITED MODIFICATION OF THE AUTOMATIC STAY AND PLAN INJUNCTION AS TO THE ACTION FILED BY SHERIF RAFIK KODSKY

Upon the Motion, dated April 12, 2012 (the "**Motion**"),[1] of the Motors

Liquidation Company GUC Trust (the "**GUC Trust**"), for entry of an order providing for a

limited modification of the Automatic Stay and the Plan Injunction as to the Action filed by

Sherif Rafik Kodsky, all as more fully described in the Motion; and due and proper notice of the

Motion having been provided, and it appearing that no other or further notice need be provided;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the GUC Trust, the Debtors, their estates, creditors, and all parties in interest and that

the legal and factual bases set forth in the Motion establish just cause for the relief granted

herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the Automatic Stay and the Plan Injunction are modified solely to

the extent necessary to permit liquidation of the Claim by enabling the Action to proceed to final

judgment or settlement; and it is further

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

ORDERED that pursuant to the ADR Order and the ADR Procedures, the Action shall proceed as to the claim against the Debtors in the Florida Court, subject to the Debtors' and/or the GUC Trust's rights to seek removal and/or transfer of venue or in such other forum as determined by the Court on request of the Debtors and/or the GUC Trust; and it is further

ORDERED that pursuant to the ADR Order and the ADR Procedures, any final judgment in the Action shall be subject to treatment under the Plan and shall be treated as a general unsecured nonpriority claim against the GUC Trust, unless otherwise determined and ordered by this Court; and it is further

ORDERED that, except as provided herein, the provisions of the Automatic Stay, the Plan Injunction, or any provision or injunction created in connection with confirmation of the Plan and the order confirming the Plan, including, without limitation, those provisions prohibiting execution, enforcement, or collection of any judgment that may be obtained against the Debtors, the GUC Trust, and/or assets or property of the Debtors' estates (as defined in section 541 of the Bankruptcy Code), shall remain in full force and effect; and it is further

ORDERED that nothing contained herein shall be deemed or construed as an admission of liability by the Debtors or the GUC Trust with respect to the Action, and the defendants in the Action reserve the right to assert any and all defenses in the Action; and it is further

ORDERED that this Court shall retain jurisdiction and shall be the exclusive forum to resolve any disputes or controversies arising from or relating to this Order.

Dated: New York, New York

_____, 2012

_____
THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
:
**In re**                                                   :      **Chapter 11 Case No.**
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.,*                   :      **09-50026 (REG)**
      f/k/a General Motors Corp., *et al.*  :
                                                            :
           **Debtors.**  :      **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

## AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a) AND GENERAL ORDER M-390 AUTHORIZING IMPLEMENTATION OF ALTERNATIVE DISPUTE PROCEDURES, INCLUDING MANDATORY MEDIATION

Upon the Motion, dated January 11, 2010 (the "**Motion**"),[1] of Motors

Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as

debtors in possession (collectively, the "**Debtors**"), for an order, pursuant to section

105(a) of title 11, United States Code and General Order M-390 (the "**Original ADR**

**Order**"), for authorization to implement alternative dispute procedures, including

mandatory mediation (the "**ADR Procedures**"), all as more fully set forth in the Motion;

and due and proper notice of the Motion having been provided, and it appearing that no

other or further notice need be provided; and the Court having found and determined that

the relief sought in the Motion is in the best interests of the Debtors, their estates,

creditors, and all parties in interest and that the legal and factual bases set forth in the

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion, the Omnibus Reply of the Debtors to Objections to Debtors' Motion for Entry of Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation, and in the ADR Procedures annexed to the Original ADR Order as Exhibit "A."

Motion establish just cause for the relief granted herein; and after consideration of the

response pleadings filed; and the Court having entered the Original ADR Order; and

upon the Debtors' Motion, dated October 8, 2010 (the "**Motion to Amend**") to amend

the ADR Order; and the Court having determined since the entry of the Original ADR

Order that the Original ADR Order should be modified in certain respects and restated in

its entirety as provided herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that this Amended ADR Order supersedes in all respects the

Original ADR Order; and it is further

ORDERED that notwithstanding anything to the contrary in the Motion or

Motion to Amend, the ADR Procedures, as set forth in **Exhibit "A"** to this Amended

ADR Order, are approved as provided herein with respect to (a) personal injury claims,

(b) wrongful death claims, (c) tort claims, (d) product liability claims, (e) claims for

damages arising from the rejection of an executory contract or unexpired lease with a

Debtor under section 365 of the Bankruptcy Code (excluding claims for damages arising

from the rejection of executory contracts that relate primarily to environmental matters),

(f) indemnity claims (excluding tax indemnity claims relating to leveraged fixed

equipment lease transactions and excluding indemnity claims relating to asbestos

liability), (g) lemon law claims, to the extent applicable under section 6.15 of the Master

Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of

June 1, 2009, and as amended (the "**MPA**"), (h) warranty claims, to the extent applicable

under section 6.15 of the MPA, and (i) class action claims (the "**Initial Subject**

**Claims**"); and it is further

ORDERED that, notwithstanding anything to the contrary in the Motion, the Motion to Amend, or the ADR Procedures, the ADR procedures shall not apply to claims filed by the United States of America or its agencies; *provided, however*, nothing shall preclude the Debtors from seeking in the future by separate motion alternative dispute resolutions in connection with any such claims; and it is further

ORDERED that, notwithstanding anything to the contrary in the Motion or the ADR Procedures, the ADR Procedures shall not apply to claims filed by state and tribal governments concerning alleged environmental liabilities; *provided, however*, nothing shall preclude the Debtors from seeking in the future by separate motion alternative dispute resolutions in connection with any such claims; and it is further

ORDERED that, notwithstanding anything to the contrary in the Motion, the Motion to Amend, or the ADR Procedures, the United States of America, nor any state or tribal government shall be in any way bound by any determination made pursuant to the ADR Procedures as to any other party or claim subject to the ADR Procedures, including any determination with respect to the amount, classification, disallowance, or type of claim; and it is further

ORDERED that, annexed to this Amended ADR Order as **Exhibit "B"** is a revised schedule of mediators (the "**Schedule of Mediators**"); and it is further

ORDERED that, the Debtors from time to time may further modify the Schedule of Mediators, in consultation with the Ad Hoc Committee, by filing a revised

Schedule of Mediators with this Court and providing counsel to the Ad Hoc Committee

with the Sharing Cap for each additional mediator added to the Schedule of Mediators;

and it is further

ORDERED that, the Debtors are authorized to waive the obligation to

share costs of non-binding mediation in their sole discretion to the extent the Designated

Claimant establishes, to the satisfaction of the Debtors, that sharing of such expenses

would constitute a substantial hardship upon the Designated Claimant; and it is further

ORDERED that, within thirty (30) days from the date of entry of this

Order (the "**Capping Period**"), any holder of an Unliquidated/Litigation Claim that is an

Initial Subject Claim filed against any of the Debtors may request the Debtors to initiate

the ADR Procedures for such Unliquidated/Litigation Claim by sending a letter (each a

"**Capping Proposal Letter,**" the form of which is annexed to this Order as **Exhibit "C"**)

to the Debtors indicating a willingness to cap its Unliquidated/Litigation Claim at a

reduced amount (the "**Claim Amount Cap**"); *provided, however*, that with respect to any

claim for amounts resulting from the rejection of an executory contract that is rejected

pursuant to an order entered after the date of this Order, a Capping Proposal Letter will

be deemed timely if it is received within thirty (30) days of the entry of the order

authorizing such rejection; and it is further

ORDERED that, upon receiving a Capping Proposal Letter, the Debtors

will, if, and only if, the Claim Amount Cap is accepted by the Debtors, initiate the ADR

Procedures by designating the Unliquidated/Litigation Claim in accordance with the

ADR Procedures and will indicate in the ADR Notice that the Claim Amount Cap has

been accepted; and it is further

ORDERED that, if the Claim Amount Cap is accepted by the Debtors, the Claim Amount Cap will become binding on the Designated Claimant, and the ultimate value of his or her Unliquidated/Litigation Claim will not exceed the Claim Amount Cap. To the extent the Debtors accept the Claim Amount Cap, the Debtors will be responsible for all fees and costs associated with any subsequent mediation. If the Claim Amount Cap is not accepted, the Debtors will notify the Designated Claimant that the Claim Amount Cap has been rejected, and the Claim Amount Cap will not bind any party and shall not be admissible to prove the amount of the Unliquidated/Litigation Claim; and it is further

ORDERED that, within one month after the Capping Period has expired, the Debtors will provide to (i) counsel for the statutory committee of unsecured creditors (the "**Creditors' Committee**"), and (ii) counsel for the United States of America, a privileged and confidential report containing information on the status of the Unliquidated/Litigation Claims (the "**Committee Report**"). The Debtors shall provide both the Creditors' Committee and the United States of America with an updated Committee Report once a month; and it is further

ORDERED that the following notice procedures are hereby approved:

1. Within **three (3) days** of entry of this Order, the Debtors shall cause to be mailed a copy of this Order to all known holders of Initial Subject Claims that are subject to the ADR Procedures.

2. The Debtors shall post a form of the Capping Proposal Letter on the website established by GCG for the Debtors' cases: www.motorsliquidationdocket.com;

and it is further

ORDERED that the Debtors are authorized to take any and all steps that
are necessary or appropriate to implement the ADR Procedures with respect to the Initial
Subject Claims, including, without limitation, by implementing any arbitration awards or
settlements with respect to Designated Claims achieved under the terms of the ADR
Procedures; *provided, however*, that nothing in this Order or the ADR Procedures, shall
obligate the Debtors to settle or pursue settlement of any particular Designated Claim;
*further provided* that any such settlements may be pursued and agreed upon as the
Debtors believe are reasonable and appropriate in their sole discretion, subject to the
terms and conditions set forth in the ADR Procedures; and it is further

ORDERED that, if litigation of an Unresolved Designated Claim in a
forum other than this Court is required for any of the reasons forth in Section II.E.3 of the
ADR Procedures (as determined by this Court), then the Stay shall be modified subject to
the terms and conditions set forth in Section II.E.4 of the ADR Procedures. Any such
modification of the Stay shall be solely to the extent necessary to permit the liquidation
of the amount of such Unresolved Designated Claim in the appropriate forum. If the
Debtors fail to file a Notice of Stay Modification or a Stay Motion for any reason with
respect to an Unresolved Designated Claim, as set forth in Section II.E.4 of the ADR
Procedures, the Stay shall remain in effect with respect to such Unresolved Designated
Claim, and the Designated Claimant may seek a determination of this Court regarding
whether the Stay must be modified to permit litigation in a non-bankruptcy forum as set
forth in Section II.E.3 of the ADR Procedures; and it is further

ORDERED that nothing contained in this Amended ADR Order shall be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with Bankruptcy Code and applicable law; and it is further

ORDERED that nothing contained in this Order shall alter the Creditors' Committee's rights set forth in this Court's Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and 9019(b) authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish Procedures for Settling Certain Claims, entered on October 6, 2006 [Docket No. 4180]; and it is further

ORDERED that nothing in the ADR Procedures, including the ADR Injunction set forth therein, shall preclude the holder of a Designated Claim from commencing or continuing an action against a non-debtor party; and it is further

ORDERED that Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the Capping Proposal Letter, the ADR Procedures, and the Committee Report; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Amended ADR Order and the ADR Procedures.

New York, New York                    *s/ Robert E. Gerber*
Date: **October 25, 2010**             Honorable Robert E. Gerber
                                       United States Bankruptcy Judge

## Exhibit A

## The ADR Procedures

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                              :

In re                            :           Chapter 11 Case No.
                              :

MOTORS LIQUIDATION COMPANY, *et al.*,  :           09-50026 (REG)
      f/k/a General Motors Corp., *et al.*  :
                              :

                    Debtors.    :           (Jointly Administered)
                              :
------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

        The alternative dispute resolution procedures (the "**ADR Procedures**") adopted

in the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation)

("**MLC**") and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), are set

forth below:

        I.     **CLAIMS SUBJECT TO THE ADR
               PROCEDURES AND ADR INJUNCTION**

      A.     **Claims Subject to the ADR Procedures**

        1.     The claims subject to the ADR Procedures (collectively, the "**Designated**

**Claims**") include any and all claims (other than an Excluded Claim as defined below) designated

by the Debtors under the notice procedures set forth below that assert or involve claims based on

one or more of the following theories of recovery, whether or not litigation previously has been

commenced by the claimant: (a) personal injury claims, (b) wrongful death claims, (c) tort

claims, (d) product liability claims, (e) claims for damages arising from the rejection of an

executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code

(excluding claims for damages arising from the rejection of executory contracts that relate

primarily to environmental matters), (f) indemnity claims (excluding tax indemnity claims

relating to leveraged fixed equipment lease transactions and excluding indemnity claims relating

to asbestos liability), (g) lemon law claims, to the extent applicable under section 6.15 of the

Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of

June 1, 2009, and as amended (the "**MPA**"), (h) warranty claims, to the extent applicable under

section 6.15 of the MPA, and (i) class action claims ("**Class Claims**").  The Debtors may

identify as a Designated Claim any proof of claim asserted in these cases, other than Excluded

Claims as defined in Section I.B below, if the Debtors believe, in their business judgment and

sole discretion, that the ADR Procedures would promote the resolution of such claim and serve

the intended objectives of the ADR Procedures.

       2.      The holders of the Designated Claims are referred to herein as the

"**Designated Claimants**."

    **B.**    **Excluded Claims**

       The Debtors shall not identify as a Designated Claim any proof of claim within

any of the following categories (collectively, the "**Excluded Claims**"): (a) claims for which the

automatic stay under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**")

was modified by prior order of this Court (the "**Bankruptcy Court**") to allow the litigation of

the claim to proceed in another forum; (b) claims asserted in liquidated amounts of $500,000 or

less; (c) asbestos-related claims (including indemnity claims relating to asbestos liability); (d)

environmental claims that constitute prepetition unsecured claims (including claims for damages

arising from the rejection of executory contracts that relate primarily to environmental matters);

(e) patent infringement claims; (f) tax claims (excluding tax indemnity claims relating to

leveraged fixed equipment lease transactions); and (g) claims subject to a separate order of the

Bankruptcy Court providing for arbitration or mediation.  Notwithstanding the foregoing, any of

the Excluded Claims, any disputed postpetition administrative expenses, and any claims or

counterclaims asserted by the Debtors may be submitted to the ADR Procedures by agreement of

the applicable Debtor and the applicable claimant or by further order of the Bankruptcy Court.

C.    **The ADR Injunction**

Upon service of the ADR Notice (as defined below) on a Designated Claimant

under Section II.A.1 below, such Designated Claimant (and any other person or entity asserting

an interest in the relevant Designated Claim) shall be enjoined from commencing or continuing

any action or proceeding in any manner or any place, including in the Bankruptcy Court, seeking

to establish, liquidate, collect on, or otherwise enforce the Designated Claim(s) identified in the

ADR Notice other than (1) through these ADR Procedures, or (2) pursuant to a plan or plans

confirmed in the applicable Debtors' chapter 11 cases (collectively, the "**ADR Injunction**").

Notwithstanding the forgoing, the Debtors shall not be precluded from seeking to estimate any

Designated Claim not subject to an accepted Claim Amount Cap in connection with confirmation

or consummation of a plan or plans confirmed in the applicable Debtors' chapter 11 cases, or

preclude the Designated Claimant from seeking estimation of its Designated Claim solely for

voting purposes in connection with confirmation of a plan or plans confirmed in the applicable

Debtors' chapter 11 cases.  The ADR Injunction shall expire with respect to a Designated Claim

only when that Designated Claim has been resolved or after the ADR Procedures have been

completed as to that Designated Claim.  Except as expressly set forth herein or in a separate

order of the Bankruptcy Court, the expiration of the ADR Injunction shall not extinguish, limit,

or modify the automatic stay established by section 362 of the Bankruptcy Code or any similar

injunction that may be imposed upon the confirmation or effectiveness of a plan or plans in the

applicable Debtors' chapter 11 cases (a "**Plan Injunction**"), and the automatic stay and the Plan

Injunction shall remain in place to the extent then in effect.

## II.    THE ADR PROCEDURES

### A.    Offer Exchange Procedures

The first stage of the ADR Procedures will be the following offer exchange procedures, requiring the parties to exchange settlement offers and thereby providing an opportunity to resolve the underlying Designated Claim on a consensual basis without any further proceedings by the parties (the "**Offer Exchange Procedures**"). Rule 408 of the Federal Rules of Evidence shall apply to the ADR Procedures. Except as permitted by Rule 408, no person may rely on, or introduce as evidence in connection with any arbitral, judicial, or other proceeding, any offer, counteroffer, or any other aspect of the ADR Procedures.

1.    *Designation of Designated Claims and Settlement Offer by the Debtors*

(a)    At any time following the entry of an order approving the ADR Procedures, as applicable (the "**ADR Order**") and subject to the terms and conditions in Sections I.A and I.B above, the Debtors may designate a Designated Claim for resolution through the ADR Procedures by serving upon the Designated Claimant, at the address listed on the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well as to any counsel of record in these cases for the Designated Claimant, the following materials (collectively, the "**ADR Materials**"): (i) a notice that the Designated Claim has been submitted to the ADR Procedures (an "**ADR Notice**"),[1] (ii) a copy of the ADR Order, and (iii) a copy of these ADR Procedures. For transferred claims, the Debtors also will serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim.

---

[1] The form of the ADR Notice is attached hereto as **Annex 1** and incorporated herein by reference. The Debtors anticipate that the ADR Notice will be substantially in the form of Annex 1; however, the Debtors reserve the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

(b)    The ADR Notice will (i) advise the Designated Claimant that his or her Designated Claim has been submitted to the ADR Procedures; (ii) request that the Designated Claimant verify or, as needed, correct, clarify, or supplement, certain information regarding the Designated Claim (including the addresses for notices under the ADR Procedures); and (iii) include an offer by the Debtors to settle the Designated Claim (a "**Settlement Offer**"). The ADR Notice also will require the Designated Claimant to sign and return the ADR Notice along with the Claimant's Response (as defined in Section II.A.2 below) to the Debtors so that it is received by the Debtors no later than twenty-one (21) days[2] after the mailing of the ADR Notice (the "**Settlement Response Deadline**").

(c)    If the Designated Claimant fails to sign and return the ADR Notice or to include a Claimant's Response (as defined below) with the returned ADR Notice by the Settlement Response Deadline, (i) the Offer Exchange Procedures will be deemed terminated with respect to the Designated Claim and (ii) the Designated Claim will be submitted to nonbinding mediation.

2.    *The Claimant's Response*

The only permitted responses to a Settlement Offer (the "**Claimant's Response**") are (i) acceptance of the Settlement Offer, or (ii) rejection of the Settlement Offer coupled with a counteroffer (as further defined below, a "**Counteroffer**"). If the ADR Notice is returned without a response or with a response that is not a permitted response, the Designated Claim shall be treated as set forth in Section II.A.1(c) above.

---

[2] Bankruptcy Rule 9006(a) shall apply to all periods calculated in the ADR Procedures.

3.     *The Counteroffer*

The Counteroffer shall (i) provide all facts that substantiate the Designated Claim
and that are sufficient for the Debtors to evaluate the validity and amount of the Designated
Claim; (ii) provide all documents that the Designated Claimant contends support the Designated
Claim; (iii) state the dollar amount of the Designated Claim (the "**Proposed Claim Amount**"),
which may not (A) improve the priority set forth in the Designated Claimant's most recent
timely filed proof of claim or amended proof of claim, or (B) exceed the lesser of the Claim
Amount Cap (as defined in the ADR Order), if applicable, or the amount set forth in the
Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but
may liquidate any unliquidated amounts expressly referenced in a proof of claim), with an
explanation of the calculation and basis for the Proposed Claim Amount; and (iv) provide the
name and address of counsel representing the Designated Claimant with respect to the
Designated Claim, unless the Designated Claimant is a natural person, in which case the
Designated Claimant shall either provide the name of such counsel or state that he or she is
appearing without counsel.

The Counteroffer is presumed to offer the allowance of the Designated Claim as a
general unsecured claim in the Proposed Claim Amount against the Debtor identified in the
applicable proof of claim.  If the Debtors accept the Counteroffer, the Designated Claimant shall
not seek recovery from the Debtors of any consideration other than the consideration ultimately
distributed to holders of other allowed general unsecured claims against the relevant Debtor.  A
Counteroffer may not be for an unknown, unliquidated, or indefinite amount or priority, or the
Designated Claim shall be treated as set forth in Section II.A.1(c) above.

4.    *Consent to Subsequent Binding Arbitration*

As described in Sections II.B and II.C below, in the absence of a settlement at the

conclusion of the Offer Exchange Procedures, Designated Claims shall proceed to nonbinding

mediation and, if such mediation is unsuccessful, upon consent of the parties (including deemed

consent based on prior contractual agreements), to binding arbitration. A Designated Claimant is

required to notify the Debtors whether it consents to, and thereby seeks to participate in, binding

arbitration in the event that its Designated Claim ultimately is not resolved through the Offer

Exchange Procedures and the nonbinding mediation. A Designated Claimant shall make an

election to either consent or not consent to binding arbitration by checking the appropriate box in

the ADR Notice (an "**Opt-In/Opt-Out Election**"). Any Designated Claimant that does not

consent to binding arbitration in its response to the ADR Notice may later consent in writing to

binding arbitration, subject to the agreement of the Debtors. Consent to binding arbitration, once

given, cannot subsequently be withdrawn without consent of the Debtors.

5.    *The Debtors' Response to a Counteroffer*

The Debtors must respond to any Counteroffer within fifteen (15) days after their

receipt of the Counteroffer (the "**Response Deadline**"), by returning a written response (as

further defined below, each a "**Response Statement**"). The Response Statement shall indicate

that the Debtors (a) accept the Counteroffer; or (b) reject the Counteroffer, with or without

making a revised Settlement Offer (a "**Revised Settlement Offer**").

(a)    *Failure to Respond*

If the Debtors fail to respond to the Counteroffer by the Response Deadline,

(i) the Counteroffer will be deemed rejected by the Debtors; (ii) the Offer Exchange Procedures

will be deemed terminated with respect to the Designated Claim; and (iii) the Designated Claim

will be submitted to nonbinding mediation.

(b)    *Revised Settlement Offer*

If the Debtors make a Revised Settlement Offer by the Response Deadline, the

Designated Claimant may accept the Revised Settlement Offer by providing the Debtors with a

written statement of acceptance no later than ten (10) days after the date of service of the

Revised Settlement Offer (the "**Revised Settlement Offer Response Deadline**"). If the

Designated Claimant does not accept the Revised Settlement Offer by the Revised Settlement

Offer Response Deadline, the Revised Settlement Offer will be deemed rejected and the

Designated Claim automatically will be submitted to nonbinding mediation.

(c)    *Request for Additional Information*

The Debtors **may** request supplemental or clarification of information supplied in

the Designated Claimant's most recently filed proof of claim to assist in a good faith evaluation

of any particular Designated Claim. If the Debtors request additional information or

documentation by the Response Deadline, the Designated Claimant shall serve additional

information or documentation sufficient to permit the Debtors to evaluate the basis for the

Designated Claim (with the exception, in the Designated Claimant's sole discretion, of privileged

information or information prepared expressly in contemplation of litigation) so that it is

received by the Debtors within fifteen (15) days after such request. If the Designated Claimant

timely responds, the Debtors shall have fifteen (15) days to provide an amended Response

Statement, which may include a Revised Settlement Offer as a counter to the Counteroffer. If

the Debtors do not provide an amended Response Statement within this period, or if the

Designated Claimant fails to provide the requested information or documentation within the time

allotted, the Designated Claim will be submitted to nonbinding mediation.

6.    *Offer Exchange Termination Date*

Upon mutual written consent, the Debtors and a Designated Claimant may

exchange additional Revised Settlement Offers and Counteroffers for up to twenty (20) days

after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the

applicable timeframes provided for in Section II.A.5(c) above with respect to requesting,

receiving, and responding to additional information or documentation.  Otherwise, the Offer

Exchange Procedures shall conclude and terminate on the earliest of the following (the "**Offer

Exchange Termination Date**"): (i) the date upon which the Designated Claim automatically

advances to nonbinding mediation under the provisions set forth above; (ii) the date that any

settlement offer for a Designated Claim is accepted under the procedures set forth above; (iii) the

date upon which a Response Statement was served by the Debtors, if the Debtors notified the

Designated Claimant in their Response Statement of the Debtors' intention to proceed directly to

nonbinding mediation; or (iv) such earlier date as is agreed upon by the Debtors and the

Designated Claimant.

7.    *Ability to Settle Claims*

Nothing herein shall limit the ability of a Designated Claimant and the Debtors to

settle a Designated Claim by mutual consent at any time.  All such settlements shall be subject to

the terms of Section II.D.2 below.

B.    **Nonbinding Mediation ("Mediation")**

1.    *Mediation Notice*

If the Debtors and the Designated Claimant do not settle the Designated Claim

through the Offer Exchange Procedures, the Debtors shall serve a notice of nonbinding

mediation, with a copy of the Designated Claimant's applicable proof(s) of claim attached, on

the Designated Claimant no later than thirty (30) days after the Offer Exchange Termination

Date, or as soon thereafter as is reasonably practicable.[3] The Mediation Notice will provide the

Mediation Location (as such term is defined in Section II.B.2 below).

2.    *Location and Appointment of the Mediator*

All Mediations shall be conducted in either (i) New York, New York; (ii) Detroit,

Michigan; (iii) Dallas, Texas; (iv) San Francisco, California; or (v) Chicago, Illinois

(collectively, the "**Mediation Locations**"), unless the parties agree to a different location.

Within ten (10) days after receiving the Mediation Notice, the Designated Claimant shall choose

one of the individuals identified in a list of mediators annexed to the Mediation Notice and

corresponding to the applicable Mediation Location to conduct the mediation (the "**Mediator**").

To the maximum extent practicable, the scheduling and location of Mediation

sessions shall give due consideration to the convenience of the parties and the proximity of the

Designated Claimant.  Notwithstanding the foregoing, within ten (10) business days after service

of the Mediation Notice, the Designated Claimant may file a motion with the Bankruptcy Court,

on notice to the Debtors and any previously appointed mediator, for an order directing that the

Mediation be conducted in a different location (a "**Hardship Motion**") if the Designated

Claimant can demonstrate that traveling to any of the Mediation Locations presents a

"substantial hardship;" *provided, however*, that there shall be a rebuttable presumption that,

absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated

Claimant if the primary representative for a Designated Claimant resides in a location that is less

than 750 miles from the Mediation Location or is less than a three-hour plane trip from the

Mediation Location (based on typical commercial schedules for the fastest route, excluding any

---

[3] The form of the Mediation Notice is attached hereto as **Annex 2** and incorporated herein by reference.  The
Debtors anticipate that the Mediation Notice will be substantially in the form of Annex 2; however, the Debtors
reserve the right to modify the Mediation Notice, as necessary or appropriate, consistent with the terms of the ADR
Procedures.

layovers). While a Hardship Motion is pending, all deadlines under these ADR Procedures shall

be suspended. If a Hardship Motion is granted, any alternative location shall be determined by

the Bankruptcy Court, taking into account the convenience of the parties and any agreements

reached by the parties. If the location of the Mediation is changed, (i) any Mediator appointed in

the original location may be replaced by a Mediator in the new location (selected by mutual

agreement of the parties or order of the Court), and (ii) the Bankruptcy Court may require that

that the Debtors and the Designated Claimant share the costs of the Mediation.

3.    *Mediation Rules*

The Mediation of Designated Claims shall be governed by the Mediator's regular

procedures, except where expressly modified in the ADR Procedures. In the event of any

conflict, the ADR Procedures shall control. Any party to a Mediation that fails to participate in

good faith, on the terms described herein, may be subject to sanctions under Section II.F below.

(a)    *Impartiality and Qualifications of Mediators*

A person appointed as a Mediator must (i) be an impartial, neutral person; (ii)

have no financial or personal interest in the proceedings or, except when otherwise agreed by the

parties, in any related matter; and (iii) upon appointment, disclose any circumstances likely to

create a reasonable inference of bias. In the event a Mediator discloses circumstances likely to

create a reasonable inference of bias, such Mediator may be replaced at the written request of

either the Debtors or the Designated Claimant prior to the mediation.

(b)    *Fees and Costs for Mediation*

For each Mediation conducted under these ADR Procedures, the Mediator

selected to preside will be entitled to charge the mediation fees disclosed to, and agreed to by,

the Debtors and the Designated Claimant. Unless the parties have expressly agreed otherwise in

writing (either prepetition or postpetition) as part of an agreement to submit Designated Claims

to Mediation, the Mediator's fees and the costs of any Mediation shall be shared equally by the

Debtors and the Designated Claimant subject to the Sharing Cap (as such term is described in the

ADR Order. For purposes of clarity, these costs shall not include travel expenses of the parties.

   (c) *Pre-Mediation Briefing*

   Unless the parties agree otherwise, on or before thirty (30) days prior to the

scheduled Mediation, the Designated Claimant shall serve on the Mediator and the Debtors by

electronic transmission or facsimile, at a minimum, and no later than by 6:00 p.m. (Eastern

Time), a nonconfidential, pre-Mediation statement (the "**Opening Statement**") not to exceed

fifteen (15) pages, excluding any attachments, setting forth all of the Designated Claimant's

claims and identifying each and every cause of action or theory the Designated Claimant asserts,

including a short and plain statement of the facts and law upon which the Designated Claimant

relies for recovery and maintains entitle it to relief. The Designated Claimant shall include, as

exhibits or annexes to the Opening Statement, all documents (or summaries of voluminous

documents), affidavits, and other evidentiary materials on which the Designated Claimant relies

(with the exception, in the Designated Claimant's sole discretion, of privileged information or

information prepared expressly in contemplation of litigation). Unless the parties agree

otherwise, on or before fifteen (15) days after service of the Opening Statement, the Debtors

shall serve on the Mediator and the Designated Claimant, by electronic transmission or facsimile,

at a minimum, and no later than by 6:00 p.m. (Eastern Time), a nonconfidential response

statement (the "**Mediation Response Statement**") not to exceed fifteen (15) pages, excluding

attachments. The Designated Claimant shall receive copies of all exhibits to the Mediation

Response Statement (with the exception, in the Debtors' sole discretion, of privileged

information or information prepared expressly in contemplation of litigation). The Debtors shall

    12

provide copies of the Opening Statement and Mediation Response Statement to counsel to the statutory committee of unsecured creditors (the "**Creditors' Committee**") upon request, on a confidential basis. At the Mediator's discretion and direction, the parties may submit additional, confidential letters or statements to the Mediator, which shall receive "Mediator's-eyes-only" treatment.

        (d)    *The Mediation Session*

Unless otherwise agreed by the parties or as provided herein, the Mediation session must occur no later than sixty (60) days after the date on which the Mediator is appointed. Unless otherwise agreed by the parties, the Mediation session is open only to the parties and their respective counsel, and insurers (if any).

        (e)    *Treatment of Mediation Settlement*

If the Mediation results in a settlement of the Designated Claim, such settlement shall be subject to the terms of Section II.D below. If the Mediation of a Designated Claim does not result in a settlement of the Designated Claim, the Designated Claim shall be subject to Section II.C or II.E below.

        (f)    *Modification of the Mediation Procedures*

The Mediation procedures described herein may be modified upon the mutual written consent of the Debtors and the Designated Claimant.

**C.**    **Arbitration**

      1.    *Binding Arbitration*

If the Designated Claimant and the Debtors have consented to binding arbitration under Section II.A.4 above, the Designated Claim will be arbitrated under the terms of this Section II.C if such claim is not resolved in the Offer Exchange Procedures or Mediation. If the Designated Claimant has expressly indicated that it does not consent to binding arbitration in its

          13

response to the ADR Notice and has not subsequently opted in to binding arbitration pursuant to

Section II.A.4 above, the Designated Claim shall be resolved in the Bankruptcy Court by the

Debtors' commencement of proceedings pursuant to the Bankruptcy Code, including without

limitation, estimating or objecting to the Designated Claims. Any party to an arbitration that

fails to participate in the arbitration in good faith, on the terms described herein, may be subject

to sanctions under Section II.F below.

        2.      *Arbitration Notice*

To initiate the arbitration process for a Designated Claim, the Debtors shall serve

a notice of arbitration (the "**Arbitration Notice**"), with a copy of the Designated Claimant's

applicable proof(s) of claim attached, on the Designated Claimant, the Creditors' Committee,

and the American Arbitration Association (the "**AAA**").[4]

        3.      *Arbitration Rules and Procedures*

For Designated Claims that are not designated by the Debtors as Complex

Designated Claims (as defined below), the arbitration of all Designated Claims shall be

conducted by a single arbitrator selected pursuant to the Commercial Arbitration Rules of the

**AAA**. The arbitrator shall be governed by the commercial arbitration rules of the **AAA** then in

effect (the "**Arbitration Rules**"), except where the Arbitration Rules are expressly modified in

the ADR Procedures.[5]

The Debtors may, at their discretion, designate certain Designated Claims as

complex designated claims (the "**Complex Designated Claims**"). The arbitration of all

---

[4] The form of the Arbitration Notice is attached hereto as **Annex 3** and incorporated herein by reference. The Debtors anticipate that the Arbitration Notice will be substantially in the form of Annex 3; however, the Debtors reserve the right to modify the Arbitration Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

[5] In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall control.

Complex Designated Claims shall be conducted by a panel of three arbitrators selected pursuant

to the Commercial Arbitration Rules of the AAA.  The AAA Procedures for Large, Complex

Commercial Disputes, in addition to the Commercial Rules of Arbitration, shall be used for

arbitration of all Complex Designated Claims; *provided, however*, unless otherwise agreed by the

parties, (i) the AAA shall appoint a panel of three (3) arbitrators, as provided in this Section and

Section II.C.3(g) and (ii) the arbitration hearing on a Complex Designated Claim must be held no

later than ninety (90) days after the date of appointment of the arbitrator(s), as provided in

Section II.C.3(k).  Finally, the AAA Supplementary Rules for Class Arbitrations shall also be

used for all Class Claims, including those related to class certification and the Class

Determination Award (as defined in Rule 5 of the AAA Supplementary Rules for Class

Arbitrations), except that the arbitrator(s) shall not make a Clause Construction Award (as

defined in Rule 3 of the AAA Supplementary Rules for Class Arbitrations), or determine that a

Class Claim is not arbitrable for failure for each class member to have entered into an arbitration

agreement, the Court having specifically found that the ADR Procedures are applicable to Class

Claims notwithstanding the absence of a written agreement to arbitrate.[6]

      (a)    *Governing Law*

      The ADR Procedures, as they relate to arbitration proceedings, are governed by

the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "**Federal Arbitration Act**"), and the

enforceability of an arbitration award is governed by Section 9 of the Federal Arbitration Act,

except as modified herein.

---

[6] In the event of any conflict between the AAA Supplementary Rules for Class Arbitrations and the ADR
Procedures, the ADR Procedures shall control.

(b)    *Fees and Costs for Binding Arbitration; Sharing*

Unless the parties expressly have agreed otherwise in writing (either prepetition or postpetition) as part of an agreement to submit claims to binding arbitration, the fees and costs charged by the AAA and the arbitrator(s) shall be shared equally by the Debtors and the Designated Claimant; *provided, however*, that the arbitrator(s), in the arbitrator(s)' sole discretion, may assess fees and costs against any party that the arbitrator(s) finds to be abusing or unduly delaying the arbitration process.  The AAA shall submit invoices to the Designated Claimants and the Debtors according to the AAA's ordinary invoicing practices then in effect and subject to the AAA's ordinary payment terms then in effect.  For purposes of clarity, these costs shall not include travel expenses of the parties.

(c)    *Impartiality and Qualifications of Arbitrators*

In designating the arbitrator in accordance with the procedures described below, the AAA shall review the Arbitration Notice and the applicable Designated Claim.  Any person appointed as an arbitrator must: (i) be an impartial, neutral person; (ii) be experienced (either from past arbitrations or former employment) in the law that is the subject of the Designated Claim; (iii) have no financial or personal interest in the proceedings or, except when otherwise agreed by the parties, in any related matter; and (iv) upon appointment, disclose any circumstances likely to create a reasonable inference of bias.  In the event that an arbitrator discloses circumstances likely to create a reasonable inference of bias, such arbitrator may be replaced by the AAA at the written request of the Debtors or the Designated Claimant within ten (10) days after such disclosure.

(d)    *Time and Location of Arbitration Hearings*

All arbitration hearings shall be conducted in either (i) New York, New York; (ii)

Detroit, Michigan; (iii) Dallas, Texas; or (iv) San Francisco, California (collectively, the

"**Arbitration Locations**"). To the maximum extent practicable, the scheduling and location of

arbitration hearings shall give due consideration to the proximity of the Designated Claimant and

to the convenience of the parties to the Arbitration Location. Within ten (10) days of

appointment, the arbitrator(s) shall conduct a preliminary hearing pursuant to AAA Commercial

Arbitration Rule 20. Notwithstanding anything set forth herein or in the ADR Order to the

contrary, the Creditors' Committee, through its counsel, shall be permitted to participate in the

arbitration hearings to the same extent the Creditors' Committee would be permitted to

participate in claims litigation in the Bankruptcy Court pursuant to sections 502, 1103, 1109(b),

or any other applicable section of the Bankruptcy Code.

(e)    *Appeals of Arbitration Awards*

All arbitration awards shall be final and binding. Other than the identities of the

applicable Debtors and Designated Claimants, the claims register number(s) assigned to the

applicable arbitrated Designated Claims and the priority and dollar amounts of the Designated

Claims as awarded in the arbitration awards, and except as otherwise required by law or agreed

upon by the parties, all arbitration awards shall be treated as confidential. No party shall have

the right to appeal an arbitration award except pursuant to the appeal provisions of the Federal

Arbitration Act, in which case any appeal must be to the United States District Court for the

Southern District of New York. Any appeal shall be governed by the Federal Arbitration Act.

The parties shall have ten (10) days from the date the arbitration award is served to appeal such

award. Failure to timely appeal shall result in the loss of any appeal rights. Once any appeal has

concluded or appellate rights are waived, the Debtors shall update the claims docket in their

chapter 11 cases accordingly and may file any notice of the liquidated amount of the Designated

Claim that they deem necessary or appropriate for such purpose.

(f)    *Modification of the Arbitration Procedures*

The arbitration procedures described herein may be modified only upon the

mutual consent of the Debtors and the Designated Claimant. In addition, the Debtors shall

consult with the Creditors' Committee prior to any modification to the arbitration procedures.

(g)    *Appointment of the Arbitrator*

Within 5 five days of receiving the applicable Arbitration Notice, the AAA shall

commence the following procedures for the appointment of arbitrator(s) (the "**Appointment of

Arbitrator(s) Procedures**") by concurrently sending by electronic transmission or facsimile, to

the Debtors and the applicable Designated Claimant, an identical list of the names of at least

eight (8) arbitrator candidates who meet the qualifications necessary for the matter.[7] The

Debtors and the applicable Designated Claimant shall have seven (7) business days from the date

this list is served to (i) strike two (2) names from the proposed list, (ii) list the remaining names

in order of preference, and (iii) return the list to the AAA. In the event that the Designated

Claim is not a Complex Designated Claim, the AAA shall appoint a single arbitrator from the

name(s) not stricken, giving consideration first to the preferences of the parties and second to

scheduling and the availability of the arbitrator. In the event that the Designated Claim is a

Complex Designated Claim, the AAA shall appoint a panel of three (3) arbitrators from the

name(s) not stricken, giving consideration first to the preferences of the parties and second to the

---

[7] If, for any reason, there are more than two parties to an arbitration, AAA shall identify a number of potential
arbitrators equal to the number of parties, plus one, and the remaining selection proceedings shall otherwise govern.
Affiliated entities are considered a single party for this purpose. The Creditors' Committee shall have no role in the
arbitrator selection process.

scheduling and the availability of the arbitrators. The AAA shall appoint the arbitrator(s) in

accordance with the Appointment of Arbitrator(s) Procedures within ten (10) business days of its

receipt of the applicable Arbitration Notice.

        (h)    *Pre-Hearing Matters*

        Unless otherwise agreed to by the parties, any pre-hearing issues, matters or

disputes (other than with respect to merits issues) shall be presented to the arbitrator(s)

telephonically (or by such other method agreed to by the arbitrator(s) and the parties) for

expeditious, final, and binding resolution. Upon a party's request, the arbitrator(s) may order

that a substantive motion, such as a motion for summary judgment, be heard in person rather

than telephonically. Any pre-hearing issue, matter, or dispute (other than with respect to merits

issues) must be presented to the arbitrator(s) not later than fifteen (15) days prior to the

arbitration hearing so as to permit the arbitrator(s) to review and rule upon the requests by

telephonic or electronic communication at least five days prior to the arbitration hearing.

        (i)    *Discovery*

        Unless the Designated Claim is a Complex Designated Claim, there shall be no

interrogatories. Any requests for production of documents, electronically-stored information and

things ("**Document Requests**") shall be made in writing and shall be limited to no more than

twenty (20) requests, including discrete subparts. Items requested in the Document Requests

must be produced within thirty (30) days after service of the Document Requests. All documents

from discovery shall be confidential and shall not be (i) disclosed to any person or party not

participating in the arbitration proceeding or (ii) used for any purpose other than in connection

with the arbitration proceeding, except as provided herein. Notwithstanding the foregoing, upon

request of the Creditors' Committee, the Debtors shall provide to the Creditors' Committee, on a

confidential basis, copies of all discovery materials produced pursuant to this Section II.C.3(i)

for any particular Designated Claim.

      (j)    *Pre-Arbitration Statement*

      Unless otherwise agreed by the parties, on or before ten (10) days prior to the

scheduled arbitration hearing, each party shall submit to the arbitrator(s) and serve on the other

party or parties and the Creditors' Committee by overnight mail a pre-arbitration statement not to

exceed fifteen (15) pages, excluding any attachments.  On or before ten (10) days prior to the

scheduled arbitration hearing, the Creditors' Committee may submit a short statement, not to

exceed five (5) pages, to the arbitrator(s) and serve such statement on the parties to the

arbitration.

      (k)    *Arbitration Hearing*

      Unless otherwise agreed by the parties and the arbitrator(s) or as provided herein,

the arbitration hearing on a Designated Claim must be held no later than ninety (90) days after

the date of appointment of the arbitrator(s).  The arbitration hearing is open only to the parties

and their respective counsel, insurers (if any), and witnesses.  In addition, notwithstanding

anything else set forth herein or in the ADR Order to the contrary, the Creditors' Committee,

through its counsel, shall be permitted to attend and participate in the arbitration hearing to the

same extent the Creditors' Committee would be permitted to participate in claims litigation in the

Bankruptcy Court, pursuant to sections 502, 1103, 1109(b), and any other applicable section of

the Bankruptcy Code.  Nonparty witnesses shall be sequestered.  No posthearing briefs may be

submitted, unless the arbitrator(s) requests briefs, in which case such briefing shall be subject to

the issues, timing, and page limitations the arbitrator(s) imposes.  There shall be no reply briefs.

(l)    *Awards*

The arbitrator(s) shall issue a written, reasoned opinion and award (the

"**Arbitration Award**") within fourteen (14) days after the arbitration hearing.  The arbitrator(s)

shall not be compensated for more than eight hours of deliberations on and preparation of the

Arbitration Award for a Designated Claim.  Any Arbitration Award shall be an allowed general

unsecured nonpriority claim against the Debtor identified in the Arbitration Award (or if no

Debtor is identified in the Arbitration Award, the claim shall be deemed to be against the Debtor

identified in the Designated Claimant's applicable proof of claim included with the service of the

Arbitration Notice, unless otherwise ordered by the Bankruptcy Court).  The Arbitration Award

may not award a priority claim or otherwise determine the priority of the claim under the

Bankruptcy Code; *provided, however*, that, within thirty (30) days after the issuance of an

Arbitration Award, the Designated Claimant may seek relief from the Bankruptcy Court to

determine that some or all of the Arbitration Award is subject to treatment as a priority claim if

the Designated Claimant's applicable proof of claim filed as of the date of filing of the ADR

Order asserted an entitlement to such priority.  Further, no portion of a claim resulting from any

Arbitration Award shall be allowed to the extent that it consists of (a) punitive damages; (b)

interest, attorneys' fees, or other fees and costs, unless permissible under section 506(b) of the

Bankruptcy Code; (c) an award under any penalty rate or penalty provision of the type specified

in section 365(b)(2)(D) of the Bankruptcy Code; (d) amounts associated with obligations that are

subject to disallowance under section 502(b) of the Bankruptcy Code; (e) specific performance,

other compulsory injunctive relief, restrictive, restraining, or prohibitive injunctive relief or any

other form of equitable remedy; or (f) any relief not among the foregoing but otherwise

impermissible under applicable bankruptcy or nonbankruptcy law.  The Debtors and the

Creditors' Committee shall have the right within thirty (30) days after the issuance of an

Arbitration Awards to file a motion seeking relief from the Bankruptcy Court to enforce the

preceding sentence and obtain the disallowance of any portion of a claim included in an

Arbitration Award in violation of clauses (a) through (f) herein. In all cases, the awarded claim

shall be subject to treatment in the Debtors' chapter 11 cases as set forth in any order(s)

confirming a chapter 11 plan or plans, or in such other applicable order of the Bankruptcy Court.

The entry of an Arbitration Award shall not grant the Designated Claimant any enforcement or

collection rights.

> **D.    Settlements of Designated Claims**
>
> > 1.    *Settlements Permitted at Any Stage of the ADR Procedures*

Designated Claims may be settled by the Debtors and a Designated Claimant

through the Offer Exchange Procedures, Mediation, or by agreement at any point during these

ADR Procedures. Nothing herein shall prevent the parties from settling any claim at any time.

> > 2.    *Settlement Authority and Approvals*

Nothing herein shall limit, expand, or otherwise modify the Debtors' authority to

settle claims pursuant to orders of the Bankruptcy Court then in effect, including without

limitation the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and 9019(b)

authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish Procedures for

Settling Certain Claims, entered on October 6, 2006 [Docket No. 4180] (the **"Claims**

**Procedures and Settlement Order"**) and any future order(s) confirming a chapter 11 plan or

plans in these cases (collectively, the **"Settlement Authority Orders"**). Any settlements of

claims pursuant to, or in connection with, the ADR Procedures shall be approved consistent with

the terms, conditions, and limitations set forth in the applicable Settlement Authority Orders.

The Debtors shall be requested to seek Bankruptcy Court approval of such settlements only to

the extent that (a) such approval is required by the terms of the Settlement Authority Orders or

(b) the settlement falls outside of the authority granted in the Settlement Authority Orders and

otherwise requires Bankruptcy Court approval.

     E.     **Failure to Resolve a Designated Claim Through ADR Procedures**

     1.     *Litigation Generally*

Claims not resolved through the ADR Procedures shall proceed to litigation for

resolution. Notwithstanding anything herein, the Debtors may terminate the ADR Procedures at

any time prior to serving the Arbitration Notice and proceed to litigation of the Designated Claim

as set forth herein.

     2.     *Litigation in the Bankruptcy Court*

If the Designated Claim is not resolved by the ADR Procedures (an "**Unresolved**

**Designated Claim**"), litigation of such Unresolved Designated Claim shall proceed in the

Bankruptcy Court by the commencement by the Debtors of proceedings consistent with the

terms, conditions, and limitations set forth in the Claims Procedures Order or other applicable

procedures or orders, as soon as reasonably practicable upon completion of the ADR Procedures

for the Unresolved Designated Claim, to the extent that (a) the Bankruptcy Court has subject

matter jurisdiction over the Unresolved Designated Claim and (b) the Unresolved Designated

Claim is not subject to the abstention provisions of 28 U.S.C. § 1334(c). Disputes over the

subject matter jurisdiction of the Bankruptcy Court or the application of abstention shall be

determined by the Bankruptcy Court.

     3.     *Litigation in Other Courts*

If the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy

Court as a result of abstention or because of lack of or limitations upon subject matter

jurisdiction (as determined by the Bankruptcy Court), then, subject to the terms and conditions

set forth in Section II.E.4 below, litigation of such Unresolved Designated Claim shall proceed

(a) if the Unresolved Designated Claim was pending in a nonbankruptcy forum on the date the

Debtors commenced their respective voluntary chapter 11 cases (the "**Commencement Date**"),

then (i) in such nonbankruptcy forum, subject to the Debtors' right to seek removal or transfer of

venue or (ii) in such other forum as determined by the Bankruptcy Court on request of the

Debtors;[8] or (b) if the Unresolved Designated Claim was not pending in any forum on the

Commencement Date, then in the United States District Court for the Southern District of New

York or such other nonbankruptcy forum that, as applicable, (i) has personal jurisdiction over the

parties, (ii) has subject matter jurisdiction over the Unresolved Designated Claim, (iii) has in rem

jurisdiction over the property involved in the Unresolved Designated Claim (if applicable) and

(iv) is a proper venue. If necessary, any disputes regarding the applicability of this Section II.E.3

shall be determined by the Bankruptcy Court.

4.    *Modification of the Automatic Stay*

If litigation of an Unresolved Designated Claim in a forum other than the

Bankruptcy Court is required as set forth in Section II.E.3 above, the ADR Order provides that

the automatic stay imposed by section 362 of the Bankruptcy Code, or any subsequent Plan

Injunction (collectively, the "**Stay**"), shall be modified solely to the extent necessary to permit

the liquidation of the amount of such Unresolved Designated Claim in the appropriate forum;

*provided, however*, that any such liquidated claim (a) shall be subject to treatment under the

applicable chapter 11 plan or plans confirmed in these cases; and (b) shall be treated as a general

unsecured nonpriority claim against the Debtor identified in the judgment, unless otherwise

---

[8] The Debtors may elect to file a motion pursuant to 28 U.S.C.§ 157(b)(5) to remove to the United States District Court for the Southern District of New York any Unresolved Designated Claim (along with any other unliquidated and litigation claims asserted against the Debtors) where the underlying claim is a personal injury claim or wrongful death claim.

determined and ordered by the Bankruptcy Court. No later than forty-five (45) days after the

Bankruptcy Court determines that the terms of Section II.E.3 above applies to an Unresolved

Designated Claim or at such other time as agreed to by the parties, the Debtors shall either (a)

file a notice of such modification of the Stay (a "**Notice of Stay Modification**") with the

Bankruptcy Court and serve a copy of such notice on the Designated Claimant and the Creditors'

Committee or (b) file a motion seeking an order governing the terms upon which the Stay will be

modified (a "**Stay Motion**") and serve such Stay Motion on the Designated Claimant and the

Creditors' Committee. The Stay shall be modified solely to the extent set forth above (a) as of

the date that is forty-five (45) days after the filing of a Notice of Stay Modification, unless the

Bankruptcy Court orders otherwise or the parties otherwise agree; or (b) as ordered by the Court

in connection with a Stay Motion. If the Debtors fail to file a Notice of Stay Modification or a

Stay Motion for any reason with respect to an Unresolved Designated Claim, the Stay shall

remain in effect with respect to such Unresolved Designated Claim and the Designated Claimant

may seek a determination of the Bankruptcy Court regarding whether and on what terms the Stay

must be modified to permit litigation in a nonbankruptcy forum as set forth in Section II.E.3

above.

      F.     **Failure to Comply with the ADR Procedures**

      If a Designated Claimant or the Debtors fail to comply with the ADR Procedures,

negotiate in good faith, or cooperate as may be necessary to effectuate the ADR Procedures, the

Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the

ADR Order or, with respect to a Designated Claimant, an abandonment of or failure to prosecute

the Designated Claim, or both. Upon such findings, the Bankruptcy Court may, among other

things, disallow and expunge the Designated Claim, in whole or part, or grant such other or

further remedy deemed just and appropriate under the circumstances, including, without

limitation, awarding attorneys' fees, other fees, and costs to the other party.

## ANNEX 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
**In re**                                                    :      **Chapter 11 Case No.**
                                                             :
**MOTORS LIQUIDATION COMPANY**, *et al.*,   :      **09-50026 (REG)**
          f/k/a General Motors Corp., *et al.*    :
                                                             :
                                    **Debtors.**       :      **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION NOTICE

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

   By this notice (the "**ADR Notice**"), Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") designate the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases and submit the Designated Claim(s) to alternative dispute resolution, pursuant to the procedures (the "**ADR Procedures**") established by the Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010 (together, the "**ADR Order**"). A complete copy of the ADR Procedures is enclosed for your reference.

   The Debtors have reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offer the amounts set forth below for allowance of your Designated Claim(s) as [a] prepetition general unsecured nonpriority claim(s) in full satisfaction of the Designated Claim(s) (the "**Settlement Offer**").

*You are required to return this ADR Notice with a Claimant's Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.*

In addition, to the extent your most recent proofs) of claim **[does]/[do]** not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct, and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Claimant's Response.

If you do not return this ADR Notice with the requested information and a Claimant's Response to the Settlement Offer to **[Debtor's Representative]** so that it is received by the Deadline to Respond, your Designated Claims will be subject to mandatory mediation as set forth in Section II.B of the ADR Procedures.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** IF YOUR DESIGNATED CLAIM(S) CANNOT BE SETTLED. PLEASE MARK THE BOX BELOW INDICATING WHETHER YOU (i) CONSENT TO **BINDING ARBITRATION** OR (ii) **DO NOT** CONSENT TO (AND SEEK TO **OPT OUT** OF) **BINDING ARBITRATION**. PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN. IN ADDITION, ANY ATTEMPT TO OPT OUT OF **BINDING ARBITRATION** IN THE RESPONSE TO THIS ADR NOTICE SHALL BE INEFFECTIVE IF YOU PREVIOUSLY HAVE CONSENTED IN WRITING (EITHER PREPETITION OR POSTPETITION) TO **BINDING ARBITRATION** AS A MEANS TO RESOLVE YOUR CLAIM(S).

Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**: The Debtors offer you an allowed general unsecured, nonpriority claim in the amount of $_____ against **[Name of Debtor]** in full satisfaction of your Designated Claim(s), to be satisfied in accordance with any plan or plans of reorganization confirmed and implemented in the Debtors' chapter 11 cases.

The only permitted response (the "**Claimant's Response**") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "**Counteroffer**"). Accordingly, please select your Claimant's Response below:

---

*Please indicate below if you accept or reject the Debtors' Settlement Offer by marking the appropriate box. If you reject the Settlement Offer, please make your counteroffer where indicated.*

☐  I/we agree to and accept the terms of the Settlement Offer.

**or**

---

☐ I/we reject the Settlement Offer.  However, I/we will accept, and propose as a Counteroffer, the following allowed claim in full satisfaction of the Designated Claim(s), to be satisfied in accordance with any plan or plans of reorganization confirmed and implemented in the Debtors' chapter 11 cases:

Debtor: _____
Amount: $_____
Priority:  unsecured nonpriority claim (presumed) or ☐ other:*_____

*Note - If you choose a different priority, you must attach an explanation and any relevant documentation.

Section II.A.3 of the ADR procedures sets forth the restrictions on Counteroffers. Your Counteroffer may not (a) improve the priority set forth in your most recent timely-filed proof of claim or amended proof of claim, or (b) exceed the lesser of the Claim Amount Cap (as defined in the ADR Order) or the amount set forth in your most recent timely-filed proof of claim(s) or amended proof of claim(s).  You may not amend your proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority.

Please indicate below whether you consent to binding arbitration for your Designated Claim(s) by marking the appropriate box.

☐ I/ WE CONSENT TO BINDING ARBITRATION.

**or**

☐ I/WE DO NOT CONSENT TO BINDING ARBITRATION.

[Signature of the Designated Claimant's Authorized Representative]

By:    _____
      Printed Name

## ANNEX 2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                    :
**In re**                                           :       **Chapter 11 Case No.**
                                                    :
**MOTORS LIQUIDATION COMPANY,** *et al.*,           :       **09-50026 (REG)**
         **f/k/a General Motors Corp.,** *et al.*   :
                                                    :
                                    **Debtors.**    :       **(Jointly Administered)**
                                                    :
------------------------------------------------------------x

### NOTICE OF NONBINDING MEDIATION

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

        By this Mediation Notice, Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Amended Order Pursuant to 11 U.S.C. §105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation, entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010. The Debtors have been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

        As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties agrees to a different location. As further

US_ACTIVE:\43507773\01\72240.0639

provided in the ADR Procedures, you have ten (10) days to choose one of the individuals identified on the list of mediators enclosed with this Mediation Notice to conduct the mediation.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.C of the ADR Procedures, concerning mediation.

[Signature of the Debtors' Authorized Person]

ANNEX 3

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
                                            :
In re                                       :        Chapter 11 Case No.
                                            :
MOTORS LIQUIDATION COMPANY, *et al.*,       :        09-50026 (REG)
          f/k/a General Motors Corp., *et al.*  :
                                            :
                        Debtors.            :        (Jointly Administered)
                                            :
----------------------------------------------------------------x

## NOTICE OF BINDING ARBITRATION

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Arbitration Location:

        By this Arbitration Notice, Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to **binding arbitration**, pursuant to the procedures (the "**ADR Procedures**") established by the Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation, entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010.  The Debtors have been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures and or through binding mediation.

        PLEASE NOTE THAT YOU HAVE CONSENTED (OR ARE DEEMED TO HAVE CONSENTED) TO BINDING ARBITRATION. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR PROCEDURES.

As provided for in the ADR Procedures, an arbitrator will be appointed through the American Arbitration Association ("**AAA**"). The ADR Procedures require you and the Debtors to share the administrative fees and costs of arbitration charged by the AAA and the arbitrator.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.C of the ADR Procedures, concerning binding arbitration.

[Signature of the Debtors' Authorized Person]

## Exhibit B

## Schedule of Mediators

**Dallas, Texas**

| Name | Experience |
| --- | --- |
| Burdin, Mary | Personal injury, products liability |
| Damuth, Brenda J. | Personal injury, products liability |
| Grissom, Jerry | Class actions, personal injury, products liability |
| Hale, Earl F. | Complex business disputes |
| Lopez, Hon. Carlos G. | Personal injury, products liability |
| Martin, Hon. Harlan | Complex business disputes, personal injury, products liability |
| Nolland, Christopher | Complex business disputes, class actions |
| Parker, Walter E. "Rip" | Personal injury, products liability, complex disputes |
| Pryor, Will | Personal injury, products liability, complex business disputes |
| Rubenstein, Kenneth J. | Personal injury, products liability, complex business disputes |
| Stoddard, Ross | Personal injury, products liability, complex business disputes |
| Young, James | Class actions, complex business disputes, insurance disputes, personal injury |

**New York, New York**

| Name | Experience |
| --- | --- |
| Carling, Francis | Products liability, personal injury |
| Cyganowski, Melanie | Complex business disputes |
| Ellerin, Hon. Betty | Complex business disputes, products liability, personal injury, class actions |
| Farber, Eugene I. | Products liability |
| Feerick, Kevin | Complex business disputes, products liability |
| Gafni, Abraham J. | Complex business disputes, products liability, personal injury |
| Holtzman, Eric H. | Products liability |
| Hyman, Ms. Chris Stern | Insurance disputes |
| Leber, Bernice K. | Complex business disputes |
| Levin, Jack P. | Class actions, breach of warranty claims, products liability |
| McAllister, Michael T. | Personal injury, products liability |
| McLaughlin, Hon. Joseph T. | Complex business disputes, class actions |
| Ricchiuti, Joseph F. | Complex business disputes, products liability, personal injury, class actions |
| Silbermann, Hon. Jacqueline W. | Complex business disputes, products liability, personal injury, class actions |
| Woodin, Peter H. | Complex business disputes, products liability, personal injury, class actions |

## Detroit, Michigan

| Name | Experience |
|------|------------|
| Connor, Laurence D. | Complex business disputes |
| Harrison, Michael G. | Personal injury |
| Kaufman, Richard C. | Personal injury |
| Muth, Jon R. | Complex business disputes, class actions |
| Pappas, Edward H. | Complex business disputes, products liability |

## San Fancisco, California

| Name | Experience |
|------|------------|
| Cahill, Hon. William J. | Complex business disputes, products liability, personal injury, class actions |
| Denver, Thomas | Products liability, personal injury |
| Infante, Hon. Edward A. | Complex business disputes |
| Komar, Hon. Jack | Products liability class actions, mass torts |
| Lynch, Hon. Eugene F. | Complex business disputes |
| McLean, William | Complex business disputes, products liability, personal injury |
| McPharlin, Linda Hendrix | Complex business disputes |
| Needham, Craig | Products liability, personal injury |
| Williams, John R. (Jack) | Products liability, personal injury |
| Wulff, Randall W. | Complex business disputes, products liability, class actions |

## Chicago, Illinois

| Name | Experience |
|------|------------|
| Anderson, Hon. Wayne R. | Complex business disputes, personal injury, products liability, class actions, mass torts |
| Cohn, Lynn | Personal injury, products liability, class actions |
| DiVito, Hon. Gino | Complex business disputes, products liability, personal injury |
| Dutenhaver, Katheryn M. | Complex business disputes, products liability, personal injury |
| Ginn, Bradley R. | Complex business disputes, products liability, personal injury |
| Neville, Hon. Richard E. | Complex business disputes, personal injury, products liability |
| Nudelman, Hon. Stuart A. | Complex business disputes, personal injury, products liability |
| Sullivan, Hon. James E. | Complex business disputes, personal injury, products liability, class actions |

2

## Exhibit C

## Form of Capping Claim Letter

[Date]

**BY E-MAIL AND FIRST CLASS MAIL**

Motors Liquidation Company
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn.: ADR Claims Team
claims@motorsliquidation.com

        Re:    **In re Motors Liquidation Company, *et al*. ("Debtors")**
               **Case No. 09-50026 (REG) – Capping Proposal Letter**

Dear Motors Liquidation Company,

        By this letter, I, the undersigned, am the below-referenced claimant, or an authorized signatory for the below-referenced claimant, and hereby submit my claim to the capping procedures established in the Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation (the "**ADR Procedures**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2010 and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010.

        Accordingly, I hereby propose to cap my claim at the amount specified below (the "**Claim Amount Cap**").

| Claimant's Name | Proof of Claim No. | Original Filed Amount | Claim Amount Cap |
|---|---|---|---|
|  |  |  |  |

        I understand and agree that the Claim Amount Cap includes all damages and relief to which I believe I am entitled, including all interest, taxes, attorney's fees, other fees, and costs. If the Claim Amount Cap is accepted by the Debtors, I understand that I am required to submit my claim to the ADR Procedures and acknowledge that my claim may be a "Designated Claim" as such term is used under the ADR Procedures.

                Very truly yours,

                By           _____
                Address      _____
                State        _____

cc:    Pablo Falabella, Esq.
       Weil, Gotshal & Manges LLP
       767 Fifth Avenue, New York, NY 10153
       pablo.falabella@weil.com