IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY *et al.*,<br><br>f/k/a GENERAL MOTORS CORP. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

CONSENT DECREE AND SETTLEMENT AGREEMENT BETWEEN
THE GUC TRUST AND THE UNITED STATES OF AMERICA

I.      BACKGROUND

WHEREAS, on June 1, 2009, Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and its affiliated debtors (collectively, the "**Initial Debtors**"), commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), Case No. 09-50026 (REG);

WHEREAS, on October 9, 2009, two additional debtors, REALM and ENCORE (together with the Initial Debtors, the "**Debtors**"), commenced voluntary cases under chapter 11 of the Bankruptcy Code;

WHEREAS, the chapter 11 cases filed by the Initial Debtors, REALM and ENCORE have been consolidated for procedural purposes and are being administered jointly as Case No. 09-50026 (REG) (the "**Bankruptcy**");

WHEREAS, the United States of America (the "**United States**"), by its attorney, Preet Bharara, United States Attorney for the Southern District of New York, on behalf of the United States Environmental Protection Agency ("**EPA**"), has alleged that MLC and/or affiliated Debtors are

potentially responsible or liable parties with respect to the Onondaga Lake Bottom, Salina Landfill, Inland Fisher Guide and Deferred Media, and PCB Dredgings subsites of the Onondaga Lake Superfund Site in New York (collectively, the "**Settled Onondaga Subsites**");

WHEREAS, the United States on behalf of EPA has alleged that the Debtors are liable under the Comprehensive Environmental Response, Compensation, and Liability Act ("**CERCLA**"), 42 U.S.C. §§ 9601-9675, for costs EPA has incurred or will incur in response to releases and threats of releases of hazardous substances at or in connection with the Settled Onondaga Subsites;

WHEREAS on March 29, 2011, the Court issued its Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan (the "**Plan of Liquidation**") which, among other things, confirmed the Debtors' Second Amended Joint Chapter 11 Plan ("**Plan**"), and established the Motors Liquidation GUC Trust ("**GUC Trust**") pursuant to the Motors Liquidation Company GUC Trust Agreement;

WHEREAS pursuant to the Plan of Liquidation, the Debtors have dissolved and the GUC Trust is authorized to resolve all remaining claims on behalf of the Debtors;

WHEREAS, (i) on November 28, 2009, the United States timely filed duplicate copies of its proof of claim against MLC both in the Bankruptcy Court and directly with the Debtors' claims agent, and the two copies of the identical proof of claim were assigned Nos. 67362 and 64064, and (ii) on April 16, 2010, the United States filed proofs of claim against REALM and ENCORE which were assigned Nos. 70254 and 70255, respectively, (collectively, the "**First U.S. Proof of Claim**");

2

WHEREAS, on April 8, 2011, the United States filed a second proof of claim (the "**Second U.S. Proof of Claim**") against MLC in the Bankruptcy Court that supersedes the First U.S. Proof of Claim;

WHEREAS, on March 29, 2011, June 17, 2011, and March 29, 2012, the Bankruptcy Court entered a total of ten previous Consent Decrees and Settlement Agreements between the Debtors and the United States resolving certain claims of the United States for various sites other than the Settled Onondaga Subsites;

WHEREAS, one of these previous Consent Decrees and Settlement Agreements between the Debtors and the United States resolved the Debtors' liabilities to the United States for future response costs at the Inland Fisher Guide and Deferred Media subsite of the Onondaga Lake Site and the PCB Dredgings subsite of the Onondaga Lake Site;

WHEREAS, the GUC Trust and the United States (collectively, the "**Parties**") have differences of opinion with respect to the claims asserted by the United States regarding the Settled Onondaga Subsites in the Second U.S. Proof of Claim and wish to resolve their differences with respect to the Settled Onondaga Subsites in the Second U.S. Proof of Claim as provided herein;

WHEREAS, the treatment of liabilities provided for herein represents a compromise of the positions of the Parties and is entered into solely for purposes of this settlement;

WHEREAS, this Settlement Agreement is in the public interest and is an appropriate means of resolving these matters;

WHEREAS the claims set forth in the Second U.S. Proof of Claim for all sites other than the Settled Onondaga Subsites which have not been otherwise settled (the

3

"**Surviving Claims**") shall survive and in no way be affected by this settlement, and the GUC Trust retains all existing rights to object to all or some of the Surviving Claims;

NOW, THEREFORE, without the admission of liability or the adjudication of any issue of fact or law, and upon the consent and agreement of the parties to this Settlement Agreement by their attorneys and authorized officials, it is hereby agreed as follows:

## II.     DEFINITIONS

1. Unless otherwise expressly provided herein, terms used in this Settlement Agreement that are defined in CERCLA or its regulations or in the Bankruptcy Code shall have the meaning assigned to them in CERCLA, its regulations, or the Bankruptcy Code. Whenever terms listed below are used in this Settlement Agreement, the following definitions shall apply:

   a. "**Allowed General Unsecured Claim**" has the meaning set forth in the Plan.

   b. "**Bankruptcy**" has the meaning set forth in the recitals.

   c. "**Bankruptcy Code**" has the meaning set forth in the recitals.

   d. "**Bankruptcy Court**" or the "**Court**" has the meaning set forth in the recitals.

   e. "**CERCLA**" has the meaning set forth in the recitals.

   f. "**Claim**" has the meaning provided in section 101(5) of the Bankruptcy Code.

   g. "**Distribution**" has the meaning set forth in the Plan.

   h. "**Effective Date**" means the date an order is entered by the Bankruptcy Court approving this Settlement Agreement.

   i. "**EPA**" has the meaning set forth in the recitals.

   j. "**EPA Allowed Claim**" means the total amount of Allowed General Unsecured Claims by EPA in settlement and satisfaction of its claims concerning the Settled Onondaga Subsites.

    k. "**Motors Liquidation Company GUC Trust**" has the meaning set forth in the Plan.

    l. "**Hazardous Substance Superfund**" means the Hazardous Substance Superfund established by 26 U.S.C. § 9507.

    m. "**MLC**" has the meaning set forth in the recitals.

    n. "**NPL**" means the National Priorities List, 42 U.S.C. § 9605.

    o. "**Onondaga Lake Site**" means the Onondaga Lake Superfund Site located in the City of Syracuse and the Towns of Salina, Geddes, and Camillus, New York.

    p. "**Parties**" has the meaning set forth in the recitals.

    q. "**Petition Date**" means June 1, 2009, in the case of the Initial Debtors, and October 9, 2009, in the case of REALM and ENCORE.

    r. "**Plan of Liquidation**" or "**Plan**" has the meaning set forth in the recitals.

    s. "**Second U.S. Proof of Claim**" has the meaning set forth in the recitals.

    t. "**Settlement Agreement**" means this Consent Decree and Settlement Agreement between the Debtors and the United States of America.

    u. "**Settled Onondaga Subsites**" has the meaning set forth in the recitals.

    v. "**United States**" means the United States of America and all of its agencies, departments, and instrumentalities, including EPA.

### III. <u>JURISDICTION</u>

2.     The Bankruptcy Court has jurisdiction over the subject matter hereof pursuant to 28 U.S.C. §§ 157, 1331, and 1334, and 42 U.S.C. §§ 9607 and 9613(b).

### IV.     PARTIES BOUND; SUCCESSION AND ASSIGNMENT

3.      This Settlement Agreement applies to, is binding upon, and shall inure to the benefit of the United States, the Debtors' estates, the GUC Trust, their legal successors and assigns, and any other trustee, examiner, or receiver appointed in the Bankruptcy Cases.

### V.     ALLOWED CLAIM

4.      In full settlement and satisfaction of the Second U.S. Proof of Claim with respect to the Settled Onondaga Subsites, the United States shall receive an Allowed General Unsecured Claim in the total amount of $896,566, classified in Class 3 under the Plan of Liquidation, which shall be allocated as follows:

   a. The United States, on behalf of EPA, shall have an Allowed General Unsecured Claim of $438,448 for its unreimbursed past and future oversight costs at the Onondaga Lake Bottom subsite of the Onondaga Lake Site.

   b. The United States, on behalf of EPA, shall have an Allowed General Unsecured Claim of $113,248 for its unreimbursed past and future costs at the Salina Landfill subsite of the Onondaga Lake Site.

   c. The United States, on behalf of EPA, shall have an Allowed General Unsecured Claim of $234,475 for its unreimbursed past costs at the Inland Fisher Guide and Deferred Media subsite of the Onondaga Lake Site.

   d. The United States, on behalf of EPA, shall have an Allowed General Unsecured Claim of $110,395 for its unreimbursed past costs at the PCB Dredgings subsite of the Onondaga Lake Site.

6

5. Upon the Effective Date, the Second U.S. Proof of Claim shall be deemed fully settled and satisfied as to the Settled Onondaga Subsites only and the claims agent shall be authorized and empowered to adjust the claims register accordingly.

6. The Second U.S. Proof of Claim shall be deemed allowed in the respective amounts set forth herein as to the Settled Onondaga Subsites for purposes of distributions under the Plan of Liquidation, and shall be entitled to receive payment in the next distribution under the Plan.

7. As to those claims not resolved by this or any other settlement agreement between the United States and the GUC Trust, the Second U.S. Proof of Claim shall remain pending and the post-effective date Debtors and/or GUC Trust reserve all existing rights to object to the Second U.S. Proof of Claim.

8. Nothing contained herein shall reduce the ability of the GUC Trust to enforce as to all claimants, other than the United States, Section 7.2 of the Plan requiring that all claims must be resolved before any distribution on account of allowed claims may occur.

9. The allowed claims provided for herein shall be treated as provided under Section 4.3 of the Plan of Liquidation and shall not be subordinated to any other allowed Class 3 Unsecured Claim pursuant to any provision of the Bankruptcy Code or other applicable law that authorizes or provides for subordination of allowed claims, including, without limitation, Sections 105, 510, and 726(a)(4) of the Bankruptcy Code.

10. The GUC Trust shall reduce the distribution reserve amount to be used by the GUC Trust pursuant to Article VII of the Plan for the remaining unresolved general unsecured claims against Debtors asserted in the Second U.S. Proof of Claim by no more than $50 million.

11. Any cash distribution or the proceeds of any non-cash distribution received by EPA on account of an Allowed General Unsecured Claim under this Settlement Agreement may be deposited in a special account within the Superfund to be retained and used to fund response actions at the Settled Onondaga Subsites, or, if no further response action is required, or as otherwise required by EPA policy, transferred by EPA to the Superfund.

12. Only the amount of cash received by EPA (and net cash received upon sale of any non-cash distributions) pursuant to this Settlement Agreement for the Allowed General Unsecured Claim, and not the total amount of the Allowed General Unsecured Claim, shall be credited by EPA to its account for the Onondaga Lake Site, and shall reduce the liability of non-settling potentially responsible parties at each applicable subsite of the Onondaga Lake Site by the amount of cash received for that subsite's Allowed General Unsecured Claim recovery.

## VI. PAYMENT INSTRUCTIONS

13. Cash distributions to the United States pursuant to this Settlement Agreement shall be made at https://www.pay.gov to the U.S. Department of Justice account in accordance with instructions provided to the Debtors by the Financial Litigation Unit of the United States Attorney's Office for the Southern District of New York and shall reference Bankruptcy Case Number 09-50026 and DOJ File Number 90-11-3-09754.

14. Non-cash distributions to the United States shall be made to:

> U.S. Environmental Protection Agency
> Attn: Molly Williams
> Suite 300
> 4411 Montgomery Rd.
> Cincinnati, OH  45212

15. The GUC Trust shall transmit written confirmation of such cash and non-cash distributions to the United States at the addresses specified below:

<u>The United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC  20044
Ref. DOJ File No. 90-11-3-1-09754

DAVID S. JONES
NATALIE N. KUEHLER
Assistant United States Attorney
Office of the United States Attorney
for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY  10007


<u>EPA</u>:

CRAIG KAUFMAN
Attorney-Advisor
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC  20460

## VII.    **COVENANTS NOT TO SUE AND RESERVATION OF RIGHTS**

16.    In consideration of the payments and/or distributions that will be made under the terms of this Settlement Agreement, and except as specifically provided in Paragraphs 18 through 20, the United States on behalf of EPA covenants not to file a civil action or to take any administrative or other civil action against the post-effective date Debtors or the GUC Trust pursuant to Sections 106 or 107 of CERCLA, 42 U.S.C. §§ 9606 or 9607, with respect to the Settled Onondaga Subsites.

17.    These covenants not to sue (and any reservations thereto) shall also apply to the post-effective date Debtors and the GUC Trust's successors, assigns, officers, directors, employees,

9

and trustees, but only to the extent that the alleged liability of the successor or assign, officer, director, employee, or trustee of the GUC Trust or the post-effective date Debtors is based solely on its status as and in its capacity as a successor or assign, officer, director, employee, or trustee of the GUC Trust or the post-effective date Debtors.  For purposes of this Paragraph, New GM shall not be considered a successor or assign of the GUC Trust.

18.    The covenants not to sue set forth in this Settlement Agreement shall extend only to the GUC Trust, the post-effective date Debtors and the persons described in Paragraph 17 above and do not extend to any other person.  Nothing in this Settlement Agreement is intended as a covenant not to sue or a release from liability for any person or entity other than the GUC Trust, the post-effective date Debtors, the United States, and the persons or entities described in Paragraph 17 above.  The United States and the GUC Trust expressly reserve all claims, demands, and causes of action, either judicial or administrative, past, present, or future, in law or equity, which they may have against all other persons, firms, corporations, entities, or predecessors of the GUC Trust for any matter arising at or relating in any manner to the Settled Onondaga Subsites.

19.    The covenants not to sue set forth in Paragraph 16 do not pertain to any matters other than those expressly specified therein.

20.    The United States expressly reserves, and this Settlement Agreement is without prejudice to, all rights against the GUC Trust and the post-effective date Debtors with respect to all matters other than those set forth in Paragraph 16.  The United States also specifically reserves, and this Settlement Agreement is without prejudice to, any action based on (i) a failure to meet a requirement of this Settlement Agreement; (ii) criminal liability; (iii) liability for damages for injury to, destruction of, or loss of natural resources; (iv) liability for response costs that have been or may be incurred by federal agencies which are trustees for natural resources; and (v) liability

10

with respect to any site other than the Settled Onondaga Subsites.  In addition, the United States reserves, and this Settlement Agreement is without prejudice to, all rights against the GUC Trust with respect to the Settled Onondaga Subsites for liability under federal or state law for acts by the GUC Trust, or their respective successors, or assigns that occur after the date of lodging of this Settlement Agreement.  Nothing in this Settlement Agreement shall be deemed to limit the authority of the United States to take response action under Section 104 of CERCLA, 42 U.S.C. § 9604, or any other applicable law or regulation, or to alter the applicable legal principles governing judicial review of any action taken by the United States pursuant to such authority. Nothing in this Settlement Agreement shall be deemed to limit the information-gathering authority of the United States under Sections 104 and 122 of CERCLA, 42 U.S.C. §§ 9604 and 9622, or any other applicable law or regulation, or to excuse the Debtors or the GUC Trust from any disclosure or notification requirements imposed by CERCLA or any other applicable law or regulation.

21.     Entry of an order approving this Settlement Agreement by the Court shall bar the post-effective date Debtors from asserting or pursing, and the GUC Trust hereby covenants not to sue and agrees not to assert or pursue, any claims or causes of action against the United States, including any department, agency, or instrumentality of the United States, with respect to the Settled Onondaga Subsites, including, but not limited to:  (i) any direct or indirect claim for reimbursement from the Hazardous Substances Superfund established pursuant to 26 U.S.C. § 9507; (ii) any claim against the United States under Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613; or (iii) any claims arising out of response activities at the Settled Onondaga Subsites.  Nothing in this Settlement Agreement shall be deemed to constitute preauthorization of

11

a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

### VIII.  CONTRIBUTION PROTECTION

22. The Parties agree, and by entering this Settlement Agreement the Court finds, that this settlement constitutes a judicially-approved settlement for purposes of Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), and that the GUC Trust and the post-effective date Debtors are entitled, as of the Effective Date, to protection from contribution actions or claims as provided by Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), or as may be otherwise provided by law, for "matters addressed" in this Settlement Agreement.  Subject to the last sentence of this Paragraph, the "matters addressed" in this Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), include, without limitation, claims by EPA or potentially responsible parties for response costs at or in connection with the Settled Onondaga Subsites, including claims related to releases of hazardous substances from any portion of the Settled Onondaga Subsites and all areas affected by migration of hazardous substances emanating from the Settled Onondaga Subsites.  The "matters addressed" in this Settlement Agreement do not include (i) claims by Honeywell International Inc ("**Honeywell**") against the Debtors or the GUC Trust set forth in Honeywell's proof of claim number 45832 that relate to response costs, including investigative and remedial costs, incurred or to be incurred by Honeywell in connection with the Lake Bottom subsite of the Onondaga Lake Site, with the exception of any claims by Honeywell for past unreimbursed or future oversight costs incurred by EPA in connection with the Lake Bottom subsite of the Onondaga Lake Site; (ii) claims against the Debtors or the GUC Trust for past response costs incurred by potentially responsible parties prior to the date of lodging this Settlement Agreement with the Bankruptcy Court and included in proofs of claim filed in any of

12

the Bankruptcy Cases by potentially responsible parties with respect to the Settled Onondaga Subsites; and (iii) claims for natural resource damages, assessment costs, or restoration costs filed by or on behalf of the United States Department of Interior and/or National Oceanic and Atmospheric Administration.

23. The GUC Trust agrees that, with respect to any suit for contribution brought against any it or the post-effective date Debtors after the Effective Date for matters related to this Settlement Agreement, the GUC Trust will notify the United States within fifteen business days of service of the complaint upon them. In addition, in connection with such suit, the GUC Trust, on behalf of itself or the post-effective date Debtors, shall notify the United States within fifteen business days of service or receipt of any Motion for Summary Judgment and within fifteen business days of receipt of any order from a court setting a case for trial (provided, however, that the failure to notify the United States pursuant to this Paragraph shall not in any way affect the protections afforded under Section VIII of this Settlement Agreement).

## IX.    JUDICIAL APPROVAL AND PUBLIC COMMENT

24. The GUC Trust shall promptly seek approval of this Settlement Agreement under Bankruptcy Rule 9019 or applicable provisions of the Bankruptcy Code, if necessary.

25. This Settlement Agreement shall be lodged with the Bankruptcy Court and shall thereafter be subject to a period of public comment following publication of notice of the Settlement Agreement in the *Federal Register*. After the conclusion of the public comment period, the United States will file with the Bankruptcy Court any comments received, as well as the United States' responses to the comments, and at that time, if appropriate, the United States will request approval of the Settlement Agreement. The United States reserves the right to

withdraw or withhold its consent if the comments regarding the Settlement Agreement disclose facts or considerations which indicate that the Settlement Agreement is not in the public interest.

26.     If for any reason (i) the Settlement Agreement is withdrawn by the United States as provided in Paragraph 25, or (ii) the Settlement Agreement is not approved by the Bankruptcy Court: (a) this Settlement Agreement shall be null and void and the parties hereto shall not be bound under the Settlement Agreement or under any documents executed in connection herewith; (b) the parties shall have no liability to one another arising out of or in connection with this Settlement Agreement or under any documents executed in connection herewith; and (c) this Settlement Agreement and any documents prepared in connection herewith shall have no residual or probative effect or value.

## X.     NOTICES

27.     Whenever, under the terms of this Settlement Agreement, written notice is required to be given, or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below via U.S. mail, unless those individuals or their successors give notice of a change of address to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Except as otherwise provided in this Settlement Agreement, written notice as specified herein shall constitute complete satisfaction of any written notice requirement in the Settlement Agreement with respect to the United States and the GUC Trust or the Debtors' estates, respectively.

<u>As to the United States</u>:

Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Ben Franklin Station
Washington, DC 20044
Ref. DOJ File No. 90-11-3-09754

Natalie N. Kuehler
Assistant United States Attorney
Office of the United States Attorney
for the Southern District of New York
86 Chambers Street, Third Floor
New York, NY 10007

Craig Kaufman
Attorney-Advisor
U.S. Environmental Protection Agency
Ariel Rios Building
1200 Pennsylvania Avenue, NW
Washington, DC 20460

<u>As to the GUC Trust</u>:

David A. Vanaskey
Vice President
Wilmington Trust Company
Rodney Square North
1110 North Market Street
Wilmington, DE 19890-1615

### XI.    INTEGRATION, AMENDMENTS, AND EXECUTION

28.    This Settlement Agreement constitutes the sole and complete agreement of the parties hereto with respect to the matters addressed herein.  This Settlement Agreement may not be amended except by a writing signed by all parties to this Settlement Agreement.

29.    This Settlement Agreement may be executed in counterparts, each of which shall constitute an original, and all of which shall constitute one and the same agreement.

15

## XII.     RETENTION OF JURISDICTION

30.     The Bankruptcy Court shall retain jurisdiction over the subject matter of this Settlement Agreement and the parties hereto for the duration of the performance of the terms and provisions of this Settlement Agreement for the purpose of enabling any of the parties to apply at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or interpretation of this Settlement Agreement or to effectuate or enforce compliance with its terms.

[SIGNATURE PAGE FOLLOWS]

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:

FOR THE UNITED STATES:

_____
Robert G. Dreher
Acting Assistant Attorney General
Environment and Natural Resources
   Division
U.S. Department of Justice

Date: 4/27/12

_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: 4/30/12

PREET BHARARA
United States Attorney for the
Southern District of New York

_____
David S. Jones
Natalie N. Kuehler
Assistant U.S. Attorneys
86 Chambers St., 3rd Floor
New York, NY 10007

Date: 4/30/12

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date: _____

17

THE UNDERSIGNED PARTIES ENTER INTO THIS SETTLEMENT AGREEMENT:

FOR THE UNITED STATES:        PREET BHARARA
                              United States Attorney for the
                              Southern District of New York

_____        _____
Robert G. Dreher               David S. Jones
Acting Assistant Attorney General    Natalie N. Kuehler
Environment and Natural Resources    Assistant U.S. Attorneys
    Division                  86 Chambers St., 3rd Floor
U.S. Department of Justice     New York, NY 10007

Date: _____          Date: _____


_____
Alan S. Tenenbaum
National Bankruptcy Coordinator
Patrick Casey
Senior Counsel
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice

Date: _____

_____
Cynthia Giles
Assistant Administrator
Office of Enforcement and Compliance
Assurance
U.S. Environmental Protection Agency

Date:   4/27/12

17

**FOR THE GUC TRUST BY WILMINGTON TRUST COMPANY AS GUC TRUST ADMINISTRATOR:**

Date: 4/30/12

_____
Motors Liquidation Company GUC Trust
By David A. Vanaskey
Vice President
Wilmington Trust Company
Rodney Square North
1110 North Market Street
Wilmington, DE 19890-1615

Date: 4/30/12

_____
David R. Berz
Weil, Gotshal & Manges LLP
Attorneys for the post-effective date Debtors
and the GUC Trust
1300 Eye Street, NW, Suite 900
Washington, D.C.  20005
Tel.: (202) 682-7000
Fax: (202) 857-0939
Email: david.berz@weil.com