Page 1

1  UNITED STATES BANKRUPTCY COURT
2  SOUTHERN DISTRICT OF NEW YORK
3  Case No. 09-50026 (REG)
4  - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
5  In the Matter of:
6
7  MOTORS LIQUIDATION COMPANY, et al.,
8      f/k/a General Motors Corp., et al.
9
10          Debtors.
11
12 - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
13
14             U.S. Bankruptcy Court
15             One Bowling Green
16             New York, New York
17
18             April 23, 2012
19             9:00 AM
20
21  B E F O R E :
22  HON ROBERT E. GERBER
23  U.S. BANKRUPTCY JUDGE
24
25

Page 2

1  Hearing re:  Doc# 10048, Debtors' Objection to Proof of
2  Claim #45631, filed by Steven Newman, c/o Michael Green,
3  Deceased

25  Transcribed by:  William Joshua Garling

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 3 of 19

Page 3

```
 1  A P P E A R A N C E S :
 2  WEIL, GOTSHAL & MANGES, LLP
 3       Attorneys for Debtors
 4       767 Fifth Avenue
 5       New York, New York  10153
 6
 7  BY:  JOSEPH H. SMOLINSKY, ESQ. (TELEPHONIC)
 8
 9  LAW OFFICES OF BENJAMIN M. DEL VENTO, P.C.
10       Attorney for Opposition
11
12  BY:  MAURICE J. DONOVAN, ESQ. (TELEPHONIC)
13
14  ALSO PRESENT, DANIEL GRIFFITHS
15
16
17
18
19
20
21
22
23
24
25
```

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 4 of 19

Page 4

```
 1                P R O C E E D I N G S
 2          THE COURT:  Good morning.  This is Robert Gerber.
 3          May I get appearances on the record, please.
 4          MR. DONOVAN:  Good morning, Your Honor.
 5          Maurice (indiscernible).
 6          MR. SMOLINSKY:  Good morning, Your Honor.
 7          (Indiscernible.)
 8          THE COURT:  You guys were either talking over
 9   yourselves or otherwise inaudible.  I couldn't hear.
10          MR. DONOVAN:  Good morning, Your Honor.
11          Maurice J. Donovan, the Law Office of Benjamin Del
12   Vento, appearing on behalf of the opposition.
13          THE COURT:  Okay.
14          MR. SMOLINSKY:  Good morning, Your Honor.
15          Joseph Smolinsky from Weil, Gotshal & Manges, for
16   the reorganized debtors, and I also have Daniel Griffiths on
17   the line.
18          THE COURT:  Okay.  All right.
19          Gentlemen, I have an interlocutory decision on
20   this matter, which I will now dictate into the record.
21          In this contested matter in the jointly
22   administered Chapter 11 cases of Motors Liquidation Company,
23   the debtors, I have before me the claim of Steven Newman on
24   behalf of the estate of decedent, Michael Green, the Guck
25   Trust (ph).  On behalf of the unsecured creditors of old GM,
```

1   under old GM's now confirmed reorganization plan, objects to

2   his claim on the ground that it seeks punitive damages and

3   that allowance of such a claim would be inequitable as it

4   would not punish the wrongdoer, the former GM, and instead,

5   would punish old GM's innocent creditors.

6          Mr. Newman disputes that his claim is for punitive

7   damages and further disputes the Guck Trust contention that

8   allowance of the claim would be inequitable.  He says that,

9   and I'm quoting "The distinction which must be drawn is that

10  the most substantial element of damages in the Newman action

11  is not a punitive damage claim...this claim is not a

12  punitive damages -- damage, singular -- claim, it is a claim

13  for a compensatory damages.  Because it is not a punitive

14  damage claim, the authority cited by the debtor in support

15  of the disallowance of damages derived from an award of

16  punitive damage, is not applicable (sic).  Newman responds

17  paragraph 16 "Not" an original.  Newman does not dispute

18  that to the extent his claim is for punitive damages.  It

19  cannot be allowed, but he characterizes his claim as a claim

20  for compensatory damages.

21          I am skeptical of that, but before I can make

22  factual findings as to its nature (which may be deemed to be

23  mixed questions of fact and law) and whether 100 percent of

24  it is for punitive damages, I will give Mr. Newman the

25  Evidentiary Hearing he requested -- on the issue that is

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 6 of 19

Page 6

1  properly before me, which is the extent to which the damages

2  he seeks are compensatory or punitive.  That will be

3  significant because I'm further ruling -- now as an

4  interlocutory matter and as the predicate for the final

5  order after I determine the extent to which the remaining

6  claim is for anything other than punitive damages -- that to

7  the extent the claim is for punitive damages, it must at the

8  least be equitably subordinated if not also disallowed.

9           The bases for this decision -- to be fleshed out

10 further to the extent necessary after the Evidentiary

11 Hearing -- follow.  As facts I find that Michael Green, the

12 decedent, was seriously injured in a car accident involving

13 a T-top Chevrolet Camaro in 1986.  Thereafter, counsel for

14 Mr. Green brought suit against General Motors in New Jersey

15 State Court.  In this first suit, the jury could not reach a

16 verdict.  The case was tried again and Mr. Green was awarded

17 over 17 million in compensatory damages.  This verdict

18 resulted in a $22 million dollar payment to Mr. Green and

19 his lawyers in 1999, which included interest on the

20 judgment.  The payment of $22 million reflected a projected

21 life expectancy to the age of 77, but sadly, Mr. Green

22 passed away in 2001 at the age of 31.

23          After Mr. Green's death, Mr. Newman became the

24 representative of Mr. Green's estate.  Mr. Newman brought a

25 second claim on behalf of Mr. Green's estate, this time in

1  the U.S. District Court for the District of New Jersey
2  alleging that GM had wrongfully failed to produce documents
3  that GM should have produced -- and that if GM had produced
4  those documents in the first lawsuit, then Mr. Green would
5  have been able to seek punitive damages in the first
6  lawsuit.  These documents were discovered after a disclosure
7  in a similar, but unrelated personal injury suit.  In that
8  second suit, that is the one in the Federal Court in New
9  Jersey, Mr. Newman sought damages for spoliation of evidence
10 and statutory treble damages under the New Jersey RICO law.
11 Mr. Newman alleges that at least the majority of damages
12 sought in the second suit are compensatory in nature, while
13 the debtors argue that they are, in reality, punitive.
14            This second New Jersey lawsuit, for additional
15 damages is the basis for Mr. Newman's claim in the debtor's
16 Chapter 11 case, Claim No. 45631.  Although originally filed
17 in an unliquidated amount, Mr. Newman has since agreed to
18 cap the claim at $75 million pursuant to the alternative
19 dispute resolution procedures in place for this case.  I
20 further find as facts, or as mixed questions of fact and
21 law, that the damages in the first lawsuit were compensatory
22 and that to the extent compensatory damages were owing as a
23 consequence of the injury to Mr. Green, his estate was
24 already compensated by the $22 million dollar award in the
25 first action, which was fully paid.

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 8 of 19

Page 8

1          It appears before me on the record so far that

2     whether denominated as for "spoliation" as a "RICO

3     violation" or as for any other kinds of sanctions, the

4     claims in this second action by reason of the underlying

5     claim (that if the documents had not been wrongfully

6     withheld, they would have supported a claim for punitive

7     damages), their predicate (i.e. that there are species of

8     sanctions for wrongful conduct in the first action), their

9     purpose (principally), for punishment (and because the Green

10    estate already got a full compensatory damages award -- are

11    predominately, if not totally, for punitive damages.  But I

12    think I should allow Mr. Newman to put on any evidence he

13    might have to cause me to come to a different view and, if

14    he can, to put on any other evidence tending to show that

15    his claims have a compensatory damages component of which

16    I'm now unaware.

17         The Green estate was already fully compensated for

18    the damages flowing from his injury and death.  It is

19    entitled to put on proof of any other injury and suffering,

20    for which true compensatory damages are due.  But to the

21    extent it cannot show any losses for anything other than

22    punishment (or let's not to put on evidence of such) I'll

23    have to find its claim is, as it now appears to be, for

24    punitive damages alone.

25         Moving on now to my conclusions of law.  The Guck

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
Pg 9 of 19
MOTORS LIQUIDATION COMPANY, et al.

Page 9

1  Trust seems to assume for the purposes of this objection and
2  in any event, I do, that former GM failed to disclose
3  evidence that the former GM should have disclosed and that
4  such might have supported a claim for punitive damages in
5  the first lawsuit.  The Guck Trust contends that any failure
6  was not intentional (a matter that I can't, but don't need
7  to decide now), but the Guck Trust does not challenge the
8  possibility that intentionally withholding such evidence
9  might justify punitive damages (or the equivalent) under New
10 Jersey law.
11            Instead, the Guck Trust seeks disallowance of the
12 Newman claim because of the gross unfairness to all GM's
13 creditors that would result from the allowance of a claim of
14 up to $75 million dollars, which is in the nature of
15 punishment for the former GM's acts, when that company is no
16 longer in business, is liquidating, and the punishment of
17 innocent creditors would do no good.
18            As noted above, Newman disputes those contentions
19 by saying in substance that they are irrelevant.  His claims
20 are for compensatory damages, not punitive ones.  As I'll
21 discuss in a moment, those points are not at all irrelevant.
22 They are critical.  But preliminarily, however, I need to
23 address a procedural matter.  Mr. Newman's claim, that
24 "(t)his Court should not retain jurisdiction and should
25 submit the claim for trial to liquidate the claim and then

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 10 of 19

Page 10

1   return it to the Bankruptcy Court."

2   Response paragraph 23: I cannot agree with such a

3   contention. Here, that would be manifestly inappropriate.

4   Determining the allowance or disallowance of claims is one

5   of the traditional functions of the Bankruptcy Court.

6   Determining the allowance of claims and their priority is

7   the paradigmatic example of the Bankruptcy Court's exercise

8   of its in rem jurisdiction. By filing a claim here,

9   Mr. Newman submitted himself to the jurisdiction of the

10  Bankruptcy Court, and deciding claims matters in the

11  Bankruptcy Court is the norm.

12  Of course, bankruptcy judges occasionally decide

13  that it might be better to liquidate a claim through a trial

14  in another court and then to bring the result back to the

15  Bankruptcy Court to proceed to a determination of whether

16  the judgment should be allowed or disallowed under federal

17  bankruptcy law.

18  We do that when the alternative court has special

19  expertise that it might bring to the table and where that is

20  more efficient, and most importantly, where it matters, but

21  such action is neither necessary or appropriate here.

22  I assume for the purpose of this analysis that a

23  former GM intentionally (or perhaps unintentionally)

24  withheld evidence in the first case, and had never gone into

25  bankruptcy, the former GM could be punished for that and

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 11 of 19

Page 11

1   that the punishment could be substantial.  But the issue
2   here in the Bankruptcy Court is whether Motors Liquidations'
3   innocent creditors should be the ones paying the price.  No
4   useful service would be served -- excuse me -- no useful
5   purpose would be served by liquidating the claim elsewhere
6   because the issue in this court will remain.  The decision
7   here will not turn on how great the punishment for any
8   wrongful discovery violations otherwise would be.  It will
9   be whether given the liquidation of old GM, its cessation of
10  business and the unfairness to innocent creditors, damages
11  to the extent they're punitive -- whether for a farthing or
12  $75 million dollars -- should be allowable pari passu with
13  the claims of other creditors including other accident
14  victims who have not yet been paid more than a modest
15  percentage of their compensatory damages claims.  This
16  claim, like claims generally, will be heard and decided in
17  this court.
18           Then we get to the merits.  It's undisputed here
19  that to the extent the claim is for punitive damages as
20  contrasted to compensatory ones, it is subject to
21  disallowance or subordination, so I need only give this
22  issue a brief mention.
23           Even though section 510(c) of the code expressly
24  authorizes only equitable subordination, equitable
25  disallowance is as permissible as equitable subordination

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
Pg 12 of 19

MOTORS LIQUIDATION COMPANY, et al.

Page 12

```
 1   is, though it is imposed less commonly.
 2           The seminal case in this area, Pepper V Litton,
 3   was, in fact, an equitable disallowance case.  In each of
 4   the three courts that have considered the permissibility of
 5   equitable disallowance have found it to be permissible in
 6   appropriate cases.
 7           One was a decision authored by me in an adversary
 8   proceeding in Adelphia, 365B.R.24 at pages 70 to 73.
 9           Another was a decision by Judge Lawrence McKenna
10   of the District Court in this District affirming me as to
11   this issue in Adelphia with his own additional analysis
12   C390B.R.64 at pages 74 to 76.
13           And the third was by Judge Mary Walwrath in
14   Washington Mutual, 461 B.R.200 at 257.
15           As Judge Walwrath put it, and I'm quoting, Here
16   the Court agrees with the well-reasoned decisions of the
17   Bankruptcy Court and District Courts in Adelphia and
18   concludes that it does have the authority to disallow a
19   claim on equitable grounds "in those extreme instances --
20   perhaps very rare -- where it is necessary as a remedy."  Id
21   at 257 (quoting from my decision in Adelphia 365 B.R. at
22   73).
23           I note that although it may not appear if you
24   shepherdize Judge Walwrath's Washington Mutual decision the
25   traditional way, she later vacated her decision when parties
```

VERITEXT REPORTING COMPANY
212-267-6868          www.veritext.com          516-608-2400

1   made a deal in the case.
2           Nevertheless, that reflects thinking on this exact
3   issue by a very respected Judge and frankly I have my
4   reservations as to the extent to which judicial thinking
5   could be vacated and made irrelevant by the decision of
6   parties to make a deal after the decision was issued at
7   least on matters of law as compared and contrasted to
8   disputed issues of fact.
9           But this case is not one of those rare cases where
10  disallowance would be absolutely necessary to grant
11  effective relief because old GM's estate is hopelessly
12  insolvent and there won't be a distribution to equity
13  anyway.  Equitable subordination as contrasted to equitable
14  allowance might well meet the needs and concerns of Motors
15  Liquidations' creditors.  But, in fact, with old GM
16  liquidating and no longer continuing in business, one could
17  make a respectable argument that no useful purpose would be
18  served even by punishing old GM's equity holders since
19  nearly all of them were innocent public stockholders who
20  shouldn't be punished any more than an innocent creditors
21  should.  But whether the defense is denominated as
22  "equitable disallowance," "disallowance" for other reasons
23  (such as there here being nobody to punish) or even supports
24  only equitable subordination, we effectively get to the same
25  result -- the result that Mr. Newman acknowledged that his

1   claim is allowable as a pari passu claim only to the extent

2   that it is for compensatory damages and not for punitive

3   ones.

4          Although Mr. Newman's claim in the New Jersey suit

5   might have some compensatory damages component (of which I'm

6   now unaware, though I think he should be able to show me

7   proof of such if there is any), on the state of the record

8   now, the requested damages are, in substance, either wholly

9   or very nearly wholly punitive.

10         Mr. Green received $22 million dollars in 1999

11  following two trials.  This award reflected a jury's

12  determination of the amount necessary to compensate him for

13  his injuries and to care for him for the remainder of his

14  life.  In fact, this award compensated Mr. Green for an

15  anticipated life span 46 years longer than his actual

16  lifetime, which nobody is asking Mr. Green's estate to

17  return.

18         Additional damages above this amount cannot make

19  Mr. Green or his estate more whole.  They can only serve to

20  punish old GM innocent creditors.  The unfairness of this

21  has been recognized at the Circuit Court of Appeals level.

22  See Novak v Callahan, C-A-L-L-A-H-A-N (in re GAC Corp.), 681

23  F.2nd 1295, 1301 (11th Circuit 1982) ("[T]he effect of

24  allowing a punitive damages claim would be to force innocent

25  creditors to pay for the bankrupt's wrong doing.  Such a

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
Pg 15 of 19
MOTORS LIQUIDATION COMPANY, et al.

Page 15

1  result would be inequitable....").

2           And the Supreme Court has held that "since the

3  power of disallowance of claims, conferred by the Bankruptcy

4  Court by [Section 2 of the then existent Bankruptcy Act]

5  embraces...the rejection of claims' in whole or in part,

6  according to the equities of the case, 'the Court may

7  undoubtedly require limitation of the amount of claims in

8  view of equitable considerations."

9           Manufacturers Trust Company v Becker, B-E-C-K-E-R,

10 338 U.S. 304, 310 note 7 (1949), quoting Pepper v Litton.

11          Punitive damages are particularly inappropriate in

12 instances where, as in the Motors Liquidation case, the

13 debtor is liquidating, as there would be no deterrent

14 purpose or effect.

15          I'm going to give Mr. Newman the Evidentiary

16 Hearing he requested to give him one more chance to show

17 that some part of this present claim in this second suit is

18 for compensatory damages, and even that the lion's share of

19 the damages now claimed is for compensatory damages, though

20 it now appears that all or nearly all of it is for what I

21 must find to be punitive damages.  I'll give him an

22 Evidentiary Hearing for that purpose, and for that purpose

23 alone, I should say, for the avoidance of doubt, unless he

24 and the Guck Trust can agree upon the amount, in any, to

25 which what is now being sought is compensatory in nature.

1           At such time as the amount of his compensatory
2   damages claim, if any, is fixed, and the punitive damages
3   component is fixed, I'll enter a judgment allowing the
4   compensatory damages component and subordinating the
5   punitive damages component to the claims of other old GM
6   creditors, or, if it turns out that there's some reason for
7   doing so, disallowing it altogether.
8           Gentlemen, this is an interlocutory decision.  I'm
9   going to so order the record, unless either side wants a
10  written order, the two of you should work out mechanisms for
11  Mr. Newman presenting to the Guck Trust side what his
12  contentions are for any component of his damages that might
13  really be compensatory and trying to reach agreement on that
14  if you can.
15          If you can't, or if you agree to disagree, then
16  Mr. Newman can have an Evidentiary Hearing on this.
17          On this date of the record, I see a little, if
18  anything, that would be owing from Motors Liquidation to the
19  Newman estate side by way of discovery that could be
20  relevant, but if the Guck Trust side does want to take
21  discovery of the Newman side as by example it might if it
22  didn't trust any invoices or anything like that, it should
23  have the right to do so.  Although I'll say now for
24  avoidance of doubt that I'm not prejudging any discovery
25  disputes as against the possibility that I might not have

```
 1   thought of something so far.
 2              I would encourage you folks, both sides, this is
 3   not by way of ruling, but advice, that unless there is some
 4   facts that have not been brought to my attention, what we
 5   have left is going to be found to be wholly for punitive
 6   damages.  Nevertheless, I would encourage you to go to the
 7   ADR mechanism to see if you can resolve it.  Failing that,
 8   you'll have the right to your Evidentiary Hearing, if you
 9   choose to have it, and I will also say that if, based on the
10   undisputed facts, the Newman side wants to rest on the
11   showing that it took so far, and to take my ruling up on
12   appeal, and waive the right to the Evidentiary Hearing, it
13   can discuss that with the Guck Trust and notify the Court
14   after which I will more fully flesh out the bases for this
15   decision if it ever turns out to be necessary.
16              But at this juncture, I am willing to hear more
17   facts.  And both sides will have the right to present such
18   additional facts as they regard as appropriate at an
19   appropriate time.
20              Not by way of reargument, are there any open
21   issues?
22              Mr. Smolinsky, first from you.
23              MR. SMOLINSKY:  Nothing, Your Honor.
24              Thank you.
25              THE COURT:  Mr. Donovan?
```

Page 18

1        MR. DONOVAN:  (Indiscernible) Your Honor.

2        THE COURT:  All right.  Very well.

3        Have a good day, gentlemen.

4        We're adjourned.

5        MR. SMOLINSKY:  Thank you.

6        MR. DONOVAN:  Thank you.

7    (Whereupon these proceedings were concluded at 9:36 AM)

09-50026-mg    Doc 11692    Filed 04/30/12    Entered 05/09/12 15:19:16    Main Document
MOTORS LIQUIDATION COMPANY, et al.
Pg 19 of 19

Page 19

1
2        C E R T I F I C A T I O N
3
4   I, William J. Garling certified that the foregoing
5   transcript is a true and accurate record of the proceedings.
6   **William Garling** *(Digitally signed by William Garling; DN: cn=William Garling, o, ou, email=digital1@veritext.com, c=US; Date: 2012.04.30 17:50:30 -04'00')*
7
8   _____
    **WILLIAM J. GARLING**
9
    AAERT Certified Electronic Transcriber CET**D 543
10
11
    Veritext
12
    200 Old Country Road
13
    St. 580
14
    Mineola, NY 1501
15
16
17
    Date:  April 29th, 2012
18
19
20
21
22
23
24
25