Barry N. Seidel (BS-1945)
Deborah P. Kelly (*pro hac vice pending*)
Stefanie Birbrower Greer (SG-2898)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501
*Attorneys for Motors Liquidation*
*Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
: 
**In re**                                              :    **Chapter 11 Case No.**
                                                       :
**MOTORS LIQUIDATION COMPANY,** *et al.***,**          :    **09-50026 (REG)**
    f/k/a **General Motors Corp.,** *et al.*           :
                                                       :
                        Debtors.                       :    (Jointly Administered)
                                                       :
-------------------------------------------------------------x

**REPLY TO RESPONSE FILED BY ATUL SHAH**
**TO OBJECTION TO PROOF OF CLAIM NO. 28820**

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011, files this reply (the "**Reply**") to the response (the "**Response**") filed by Dr. Atul Shah to the GUC Trust's objection (the "**Objection**") to proof of claim number 28820 (the "**Claim**"). In support of this Reply, the GUC Trust respectfully represents:[1]

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Objection.

## **PRELIMINARY STATEMENT**

1. In the Objection, the GUC Trust argues that the Claim should be expunged because each of the Discrimination Claims is fundamentally flawed and is not supported by the facts or applicable law. *See* Objection, at ¶¶ 15, 17, 21 and 23.

2. In the Response, Dr. Shah fails to address the arguments in the Objection, and instead tries to rescue the Claim by providing the Court with additional pages of "facts" which he would have this Court believe support his position that he was terminated by the Debtors as a result of his "Religion, Color and National Origin and Age." Response, at ¶ 6. However, Dr. Shah's efforts do nothing to cure the defects in the Claim or otherwise support an argument that the Claim has any merit.[2]  Specifically:

- Dr. Shah relies on factual allegations (some of which, including those contained in Exhibit B of the Response, were previously unknown to the GUC Trust) which are either conclusory or, as a matter of law, fail to provide sufficient support for his alleged claims.

- Dr. Shah demonstrates a fundamental misunderstanding of the applicable law. For example, he alleges that he was discriminated against because certain doctors at GM "did not like my view about the superior concepts of Eastern Philosophy than current Modern Science including Bio-medical Science." Response, Exhibit B, at 4. However, even if this were true (which it is not), that is not discrimination based on *religion;* it is based upon conflicting views of appropriate medicine, which is not a protected category under applicable law. As set forth more fully below, a valid claim for religious discrimination can only be premised on an allegation that an employee was discriminated against because of his religious beliefs.

3. Dr. Shah also fails to respond to or contest the well-settled law cited in the Objection which, among other things, (i) precludes his First Amendment claim because there is

---

[2] For purposes of the Objection, the GUC Trust requests the Court treat the facts alleged by Dr. Shah as true. However, the GUC Trust reserves the right to challenge such factual allegations, all of which the GUC Trust expressly refutes.

2

no state action or individual right of action necessary to trigger such a claim; (ii) bars the race discrimination and retaliation claims because they were not included in the Charge; and (iii) prohibits him from recovering the $10 million in punitive damages he asserts against the Debtors.[3]

4.    In light of the forgoing, and as more fully set forth in the Objection, Dr. Shah has not (and cannot) satisfy his burden to establish the validity of the Claim. Consequently, the Claim should be expunged.

## ARGUMENT

### A.    The "Facts" Included in the Response Do Not Support the Claim

5.    The Response is primarily a collection of irrelevant "facts" that have no evidentiary value.[4] Response, at ¶ 6. By way of example:

- Dr. Shah asserts that Dr. Burton "started intentionally finding faults with [his] documentation" and "tried to prove that [he was] a bad doctor through an engineered, pretextual and concealed plan." Response, at ¶ 6(d); Response, Exhibit B, at 5. Dr. Shah cites no specific examples to support this broad and accusatory statement.

- Dr. Shah believes that the erroneous renewal of his employment contract "shows that I was not someone who was on any type of termination list or poor performance list." Response, at ¶ 6(g). This statement is clearly conclusory and is not based on any facts.

- Dr. Shah appears to argue that because he is an "expert in understanding and revealing 'Expressed Intentions and Concealed Intentions' of people" he can conclude that he was discriminated against. Response, at ¶¶ 13-17. Indeed, Dr. Shah appears to acknowledge that his conclusions are based on "Passive Inaction

---

[3]    Because Dr. Shah did not address these legal issues, the GUC Trust incorporates the arguments made in the Objection and does not reiterate them here.

[4]    Dr. Shah also argues that the EEOC did not dismiss his claim, as the GUC Trust stated in the Objection. Response, at ¶ 8. This is not subject to dispute; Dr. Shah is simply wrong. The EEOC determined that Dr. Shah could not meet his burden to establish claims against the Debtors for discrimination and dismissed the claim. *Id.*; *see also* Objection, Exhibit E (EEOC notice titled "Dismissal and Notice").

3

      manifesting as Silent and Concealed Discrimination." *Id.* at ¶¶ 18-20 and 24. Dr. Shah's impressions of the "concealed intentions" of the Debtors or their agents are clearly insufficient to establish a discrimination claim. *Id.*

- Throughout his pleadings, Dr. Shah relies, without additional support, on his *belief* that he was discriminated against. *See, e.g.*, Response, at ¶ 25; Response, Exhibit B, at 5. Again, Dr. Shah's beliefs are not proof of and do not support a discrimination claim.

6.     The few arguably factual allegations contained in the Response (even if accepted as true and interpreted in the light most favorable to the claimant) are insufficient to show, as a matter of law, that Dr. Shah has a facially valid legal claim against the Debtors.[5] For example:

- Dr. Shah asserts that his qualifications and those of another physician were "practically the same," but that Dr. Smith, the other physician (who was African American), was hired instead of him. Response, at ¶ 6(e); *see also* Response, Exhibit B, at 4. As a matter of law, the fact that a person of one race is hired in lieu of a person of another race is insufficient to establish a claim.[6] *Duviella v. JetBlue Airways*, 353 F. App'x 476, 478 (2d Cir. 2009) (finding that merely alleging that a co-worker of a different race was promoted instead of the plaintiff was insufficient to establish racial discrimination under Title VII); *Ford v. City of Dearborn*, No. 293040, 2010 WL 4137518 (Mich. Ct. App. Oct. 21, 2010) appeal denied, 489 Mich. 971, 798 N.W.2d 775 (2011) (holding that the fact that plaintiff's replacement was of a different race is not enough to create an inference of discrimination).

- Dr. Shah also takes issue with Dr. Miller's decision to hire Dr. Burton for the position he applied for in 2007. According to Dr. Shah, Dr. Miller hired Dr. Burton because they were friends. Even if that were true, it is not a basis for a valid discrimination claim. Moreover, Dr. Shah does not allege any facts indicating that he was more qualified than Dr. Burton for the position. Finally, Dr.

---

[5]     Dr. Shah alleges that he was one of four contract physicians during his tenure with the Debtors, including, (i) "Dr. Hasan Rehman, MD a Muslim Physician from India"; (ii) "Dr. Orr, MD, a Black Christian Physician from U.S.A"; and (iii) "Dr. Soboloski, MD a White Physician with Christian background." *See* Response, Exhibit B, at 6. Instead of supporting Dr. Shah's claims, these facts show a richness of diversity at the company and a lack of discriminatory hiring practices.

[6]     Dr. Shah contends that he had "better" experience than Dr. Smith. However, Dr. Shah's subjective views of his experience are irrelevant, especially where (as here) he provides no factual support for such belief. Response, at ¶ 6(e); *see Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999).

    Shah's contention that Dr. Oteyza (who was not making the hiring decision) recommended him for the position is simply irrelevant. Response, at ¶ 6(b).

- Dr. Shah cites various other "Factual Examples of Injustice and Discrimination." Response, at ¶ 6. Many of such examples occurred before February 9, 2008 and therefore should not be considered by the Court. *See, e.g., Ford v. Bernard Fineson Dev. Center*, 81 F. 3d 304, 307 (2d Cir. 1996) (a claim must be brought within 300 days of the occurrence of the alleged act).

- Dr. Shah alleges that Dr. Burton and Dr. Miller failed to "help me get another plant physician position." Response, at ¶ 6(f). Dr. Shah does not allege that the Debtors assisted others in obtaining future employment. As a matter of law, the Debtors were not required to assist Dr. Shah. *Duncan v. AT & T Communications, Inc.*, 668 F. Supp. 232, 235 (S.D.N.Y. 1987) (finding no discrimination when the employer failed to take affirmative steps to help find employee find new employment), citing *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715, 103 S.Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (inquiry in Title VII case is whether employer is treating some people less favorably than others because of race). Thus, this allegation is not probative with respect to the Claim.

- Dr. Shah also alleges that, when he was hired, Dr. Burton immediately "started intentionally finding faults" with Dr. Shah's documentation. *See* Response, at ¶ 6(d). Notably, Dr. Shah does not deny that there *were faults* with the documentation – but takes issue with the (alleged) fact that Dr. Burton *intentionally* found them. Even if that were the case, again that is not the basis of a discrimination claim where Dr. Shah has not – and cannot – allege any facts to indicate that Dr. Burton's alleged actions were taken *because of* any of the myriad of protected categories applicable to Dr. Shah. *See Milano v. Astrue*, No. 05-cv-652, 2008 WL 4410131 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 382 F. App'x 4 (2d Cir. 2010) (merely disagreeing with supervisor's assessment of performance is insufficient to raise an issue of fact regarding pretext); citing *Griffin v. Ambika Corp.*, 103 F.Supp.2d 297, 309 (S.D.N.Y. 2000) (that employee disagrees with employer's assessment of her performance is insufficient to show that employer's proffered reason for an adverse action was pretextual).

- Dr. Shah reiterates throughout his papers that "[j]ustice is more important than the secondary monetary gain." Response, at ¶ 10. Aside from being irrelevant, this is clearly not an accurate description of Dr. Shah's motives. If this were true, Dr. Shah

5

certainly would not be seeking over $10 million in damages for unidentified losses. Indeed, as set forth in the Objection and in this Court's recent decision, punitive damages are not recoverable where (as here) a debtor is in a liquidation proceeding. *See* April 23, 2012 Tr. of Oral Arguments at 15:11-14 (finding that punitive damages should either be disallowed or equitably subordinated).

### B. Dr. Shah's Religious Discrimination Claim Fails as a Matter of Law

7. In the Response, Dr. Shah focuses on his religious discrimination claim, but does little to substantiate his already weak claims based on race, age, nationality or color. *See* Objection, at ¶¶ 19-24.[7] In so doing, Dr. Shah makes it clear the gravamen of his argument is that he was discriminated against by the Debtors because of his belief that Vedic Literature is superior to modern medicine. Response, at ¶ 16. A difference over theories of medicine is not a difference over a religion or a basis for a religious discrimination claim and therefore should be rejected as a matter of law.

8. To establish a *prima facie* case of religious discrimination, an employee must allege that (i) he held a bona fide religious belief conflicting with an employment requirement; (ii) he informed his employer of belief; and (iii) he was thereafter disciplined for failure to comply with the conflicting employment requirement. *Lytle v. JP Morgan Chase*, No. 08-cv-9503, 2012 WL 393008 (S.D.N.Y. Feb. 8, 2012) *report and recommendation adopted sub nom. Lytle v. JP Morgan Chase*, No. 08-cv-9503, 2012 WL 1079964 (S.D.N.Y. Mar. 30, 2012) (citing *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)).

9. Here, Dr. Shah alleges that the Debtors executed a plan "to be rid of me and my religious beliefs which they felt threatened their medical practice and the practice of medicine in general" and claims that the "superiority of Vedic Literature over Modern Bio-Medical Science

---

[7] Dr. Shah does not cite in the Claim or the Response any facts whatsoever to support an age discrimination claim. Indeed, the documents do not reveal Dr. Shah's age or make even one allegation that he was discriminated against as a result of his age.

6

topic was discussed by me during several General Motors Conferences and that was one of the major reasons for my termination." Response, at ¶ 16; *see also* Response, at ¶ 22 ("[T]hey are unable to comprehend and unable to appreciate that Vedic Literature in Sanskrit language with authoritative English translation are superior to Modern Science and Bio-medical Science."); Response, Exhibit E.

10. Significantly, neither these allegations nor others in the Response and the Claim include any contention by Dr. Shah that (i) his religion required him to practice medicine in a manner that conflicted with the requirements of his contract; (ii) he sought permission to practice medicine according to any tenant of faith; or (iii) he was disciplined for refusing to engage in a medical practice that conflicted with his faith. In other words, he has failed to sufficiently allege *any* of the essential elements of a religious discrimination claim. Instead, his core contention is that the Debtors (and others) rejected his professional medical opinion that Vedic Literature could "provide true Health Reform." Response, Exhibit E, at 3. Simply put, according to Dr. Shah's own contentions, the "views" he shared with the Debtors (in particular Drs. Miller and Burton) were with regard to improving *the practice of medicine* – not his "*religious beliefs*" and or any need for an accommodation to enable him to practice his *beliefs* in the workplace. Therefore, his claim fails as a matter of law.[8]

\* \* \*

11. As set forth in the Objection, if the claimant does not allege a sufficient legal and factual basis for the claim, the claim is not considered *prima facie* valid, and the burden remains

---

[8] Dr. Shah also asserts that his Claim is supported by the fact that that he was not invited to attend conferences that other similarly situated physicians were invited to attend. Response, Exhibit B, at 4 ("I believe that this action of not inviting me . . . was based upon my belief of Eastern Philosophical Concepts which I strongly consider as the super-scientific and accurate than the conventional Modern Science."). As set forth above, even if this were true, no protected category is triggered by different views on medicine and therefore it is irrelevant to any legal claim.

with the claimant to establish the validity of the claim. *In re Chain*, 255 B.R. 278, 280-81 (Bankr. D. Conn. 2000); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988). Here, despite having filed a lengthy response, Dr. Shah has not provided any facts or law which support any of the Discrimination Claims. Moreover, he fails to refute the well established legal principles cited in the Objection which preclude such claims as a matter of law.

## CONCLUSION

For the reasons set forth above and in the Objection, this Court should enter an order expunging the Claim and granting such other and further relief as is just and proper. Alternatively, as set forth in the Objection, the GUC Trust seeks entry of an order precluding Dr. Shah from recovering any punitive damages against the Debtors and capping any potentially allowed claim to compensatory damages permitted under applicable law.

Dated: New York, New York
May 10, 2012

*/s/* Stefanie Birbrower Greer
Barry N. Seidel (BS-1945)
Deborah P. Kelly (*pro hac vice pending*)
Stefanie Birbrower Greer (SG-2898)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501
Attorneys for Motors Liquidation
Company GUC Trust