Eric H. Gibbs
A. J. De Bartolomeo
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

- and -

Paul A. Rachmuth (pr1566)
**GERSTEN SAVAGE LLP**
600 Lexington Avenue
New York , New York  10022
Telephone: (212) 752-9700
Facsimile:  (212) 980-5192
prachmuth@gerstensavage.com

*Class Counsel in General Motors Case,
Anderson v. General Motors*

HEARING DATE : June 14, 2012
9:45 am (Eastern Time)

OBJECTION DEADLINE: June 7, , 2012
4:00 pm (Eastern Time)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>**MOTORS LIQUIDATION COMPANY,** *et al.*,<br>**f/k/a General Motors Corp.,** *et al.*<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

**DECLARATION OF A. J. De BARTOLOMEO IN SUPPORT OF
*ANDERSON* CLASS COUNSEL'S MOTION FOR APPROVAL OF
NOTICE PURSUANT TO FED. R. CIV. P. 23(h) FOR AWARD OF
<u>ATTORNEY'S FEES FROM CLAIM No. 51093 SETTLEMENT FUND</u>**

I, A. J. De Bartolomeo, declare the following to be true:

1.    I am a member in good standing of the State Bar of California and am admitted to

appear *pro hac vice* before this Court.  I am a partner of the law firm of Girard Gibbs LLP,

counsel for Plaintiff Jason Anderson in the above-captioned action.  As such, I am familiar with

1

the facts and circumstances described herein, except as to those facts and circumstances stated upon information and belief.

2.     I make this declaration in support of the *Anderson* Class Counsel's Motion for Approval of Notice Pursuant to Fed. R. Civ. P. 23(h) for Award of Attorney's Fees from Claim No. 51093 Settlement Fund. The following statements are based on my personal knowledge, investigation and review of the discovery and pleading files in this case, and, if called on to do so, I could and would testify competently thereto.

3.     This declaration provides a brief description of the underlying *Anderson* class action settlement and a summary of the significant actions undertaken on behalf of the *Anderson* class claimants by Girard Gibbs LLP (hereinafter, "Girard Gibbs" or "Class Counsel") in this bankruptcy action, including briefing, motion opposition negotiations and practice, settlement efforts, and approval of the allowed class claim.

**A.  May 2004-June 2009: The Underlying *Anderson* Class Case and Settlement**

4.     On May 18, 2004, Girard Gibbs filed a class action on behalf of Jason Anderson and a class of consumers against GM asserting violations of California's Unfair Competition Law and for declaratory relief. The complaint alleged that GM's business policy to offer certain benefits to some consumers, but not others, who own or lease a Silverado with an abnormal engine knock or piston pin or piston pin noise condition is an adjustment program or secret warranty that violates California law (specifically, the Motor Vehicle Warranty Adjustment Program Act), because GM did not notify all class members about the special adjustment program, nor did GM provide all class members with extended coverage under the program. In November 2006, the Court certified a class under the secret warranty statute and appointed Girard Gibbs LLP as Class Counsel. GM appealed the ruling and its appeal was denied.

5.     In September 2008, the parties reached a settlement in the *Anderson* class action. In November 2008, the California Superior Court granted preliminary approval of the settlement, and on March 5, 2009, it entered its order granting final approval of the settlement. The

2

*Anderson* settlement and judgment provided for cash benefits ranging from $1,200 to $2,600 for engine evaluation and for reimbursement of money spent by class claimants for specified engine repairs and the GM protection plans, pursuant to a court-approved claims process.  Also on March 5, 2009, the Superior Court awarded the Class Counsel attorneys' fees and reimbursement of expenses for the work that they did from the start of the case in May 2004 to the final approval of the settlement in March 2009.  Based on the applicable California fee-shifting statute, California Code of Civil Procedure 1021.5, the Court ordered a total of $1,950,000 in attorneys' fees and $212,500 in documented out-of-pocket costs and expenses.

6. Under the terms of the class settlement, GM was the named claims administrator, and all claims were to be sent to a GM post office box, and postmarked by May 22, 2009.

7. On June 1, 2009, GM filed a petition for bankruptcy.

8. At the time of the bankruptcy filing, GM did not review, analyze, or process any of the *Anderson* claim forms. GM did not prepare or send out any settlement payments to the *Anderson* claimants. And GM did not provide any claims statistics or other claims administration reporting information to Class Counsel.  Under the terms of the settlement, GM was to have possession of the claims submitted by class members.

9. The *Anderson* claim forms were in GM's sole and exclusive possession when it filed for bankruptcy on June 1, 2009.

**B. July 2009-November 2009: Preservation of Evidence and Claim Forms Requested; Stipulation for Class Proof of Claim; Retention of New York Bankruptcy Counsel; Analysis and Assessment of Value for Class Claim; Filing of Class Proof of Claim.**

10. In July 2009, Class Counsel requested an in-person meeting with GM's bankruptcy counsel to discuss the resolution of the *Anderson* class recovery and to confirm that the claim forms and any accompanying documents or evidence would be preserved.   Over the next three months, Class Counsel communicated with GM's bankruptcy counsel regularly regarding the *Anderson* matter and the resolution of the class's claim.  On September 11, 2009,

3

Class Counsel sent GM's bankruptcy counsel a letter memorializing GM's failure to provide Class Counsel with the *Anderson* claim statistics, GM's failure to provide Class Counsel with any claims administration reporting information, and repeating Class Counsel's request for the preservation of all claim forms received, timely or not.

11. From September 2009 through November 2009, Class Counsel negotiated with GM's bankruptcy counsel to allow the filing of a single class proof of claim for the *Anderson* class.

12. In November 2009, Class Counsel retained New York bankruptcy counsel to advise us on issues specific to bankruptcy law.

13. On November 25, 2009, Class Counsel submitted the timely *Anderson* Proof of Claim, which was based on the *Anderson* class settlement and filed in accordance with the bankruptcy Court's September 16, 2009 order. The *Anderson* Proof of Claim asserted a claim in the amount of $10,000,000.00, for class consideration due pursuant to the *Anderson* class settlement and it was assigned claim number 51093. Class Counsel filed the class Proof of Claim after conducting research and analysis into the legal bases for a class proof of claim and after completing a detailed review and analysis of the data, information and discovery in the *Anderson* action to estimate the value of the *Anderson* class claim.

14. Class members continued to call and email Class Counsel with questions about their *Anderson* claims after the June 1, 2009 GM bankruptcy. Class Counsel and our staff continued to respond to the class members, as well as to send an email update and to post the update on the official *Anderson* class settlement website as to the status of our efforts in the bankruptcy proceeding.

C. **December 2009-June 2010**:  **Class Counsel's Pro Hac Vice Application; Claim Form Inquiries Continue; Rule 2004 Exam Requested; Motion for Mandatory ADR Procedures; ADR Process Carve Out Negotiated.**

15. In December 2009, Class Counsel filed a *pro hac vice* application through our New York bankruptcy counsel.

4

16.    From December 2009 to February 2010, Class Counsel and GM bankruptcy counsel continued discussions and email exchanges regarding the location of the *Anderson* claim forms that GM had received in its original role as claims administrator.  Class Counsel sent a formal request to GM counsel requesting a Rule 2004 exam to seek testimony as to the location and status of the *Anderson* claim forms.

17.    On January 12, 2010, the Debtor filed a motion asking the bankruptcy court to authorize the use of Alternative Dispute Resolution ("ADR") procedures, including the use of mandatory mediation to resolve the bankruptcy claims filed, including the *Anderson* class claim.

18.    Class Counsel maintained that the GM proposed ADR procedures should not apply to the *Anderson* class Proof of Claim.  On February 3, 2010, Class Counsel prepared and filed their objection to the January 12, 2010 motion on various grounds, including that the *Anderson* class Proof of Claim represented a pre-petition settlement and consent judgment from a court-approved class action lawsuit against GM and subjecting a court-approved settlement to another mediation process would be wasteful and inefficient, expensive, and only result in the further delay of the resolution of the class Proof of Claim.

19.    After months of requesting and not receiving the *Anderson* claim forms and statistical information, GM's bankruptcy counsel continued to maintain that they and their client GM were diligently searching for, but were unable to locate the documents in response to the request.  Class Counsel formally requested a Rule 2004 exam as to the location, possession and status of the *Anderson* claim forms.

20.    On February 8, 2010, in response to Class Counsel's request for a Rule 2004 examination, GM's bankruptcy counsel advised Class Counsel that it had located the claim forms and that Class Counsel would receive copies shortly.  Based on this representation, Class Counsel agreed to continue the Rule 2004 examination.

21.    Very late in the night of February 8, 2010 -- only a few hours before Class Counsel was scheduled to board an early morning plane from San Francisco, California to New York to argue its objections to GM's January 12 motion for ADR procedures -- Class Counsel

5

and GM's bankruptcy counsel resolved the objection. The parties agreed that if GM designated the *Anderson* class Proof of Claim as subject to the mandatory ADR procedures, the *Anderson* class claimants would be entitled to seek a determination from the Bankruptcy Court that their claims were fixed in amount and not susceptible to mandatory mediation.

22. In early March 2010, Class Counsel received a package from GM's bankruptcy counsel that was supposed to be the claim forms. Instead, the package contained *Anderson* class settlement notice packages that were marked "return to sender."

23. On March 12, 2010, Class Counsel sent a letter to GM's bankruptcy counsel reporting that the claim forms GM thought that it had located and taken custody of, were in fact "undeliverable" *Anderson* class settlement notices. As such, the *Anderson* claim forms were still missing in action. Class Counsel requested a telephone conference with GM's bankruptcy counsel to discuss rescheduling the Rule 2004 examination to sort out what had happened to the *Anderson* claim forms.

24. From March 12, 2010 through the middle of July 2010, the parties continued to discuss the missing *Anderson* claim forms. In addition to numerous telephone conferences and email exchanges with bankruptcy counsel, Class Counsel provided GM's counsel with names and addresses for GM personnel who had been identified in discovery in the underlying *Anderson* action and who may have knowledge of the location of the claim forms. GM's bankruptcy counsel also referred Class Counsel to partners at AlixPartners, in order to expand the search for the claim forms. Class Counsel also met and conferred with GM's bankruptcy counsel partners in Texas, to expand the search to additional GM locations.

25. Throughout this time period, Class Counsel and our staff continued to communicate with class members by phone and email, as well as to post status reports on the official *Anderson* class settlement website.

6

D.  **July 2010-December 2010: Further Questions and Negotiations as to the Claim Forms; 6,000 Claim Forms Provided to Class Counsel; Review and Analysis of Claim Forms; Negotiation of the Value of the Class Claim Begin; Notice of Preference Claim.**

26. From March 12, 2010 through the middle of July 2010, GM's bankruptcy counsel continued to report to Class Counsel that GM was diligently searching for the *Anderson* claim forms and that a Rule 2004 examination was not necessary.

27. On July 15, 2010, Class Counsel informed GM's bankruptcy counsel that they would renew their formal request for the 2004 exam of GM.

28. In early August 2010, GM's bankruptcy counsel told Class Counsel that they had finally located the *Anderson* class claim forms that Class Counsel had been trying to obtain for more than a year. In August 2010, GM finally provided copies of the nearly 6,000 *Anderson* claim forms to Class Counsel.

29. Once Class Counsel took possession of the claim forms in August 2010, we began the process of reviewing and analyzing the claim forms for valuation and settlement purposes in order to negotiate Claim No. 51093 into an allowed claim in the bankruptcy. In the first instance, we sorted the claim forms by claim type under the original plan of allocation (e.g. GMPP reimbursement, start noise repair, engine repair, and noise evaluation) and reviewed in detail a sample of over 1,000 of the claim forms and supporting documentation to establish a range of damages based on the individual amounts paid for the GMPPs, the noise repairs and the engine repairs. For claims seeking noise evaluation and follow up repairs, we used the cost values GM provided in discovery during the *Anderson* litigation for such engine repairs. Considering all of the claims data, we then assessed an average cost for each of the valid claims and a portion of that average cost for the submitted incomplete claims.

30. In December 2010, GM asked Class Counsel to present their demand for the *Anderson* class Proof of Claim to assess whether to "allow" the claim in the bankruptcy proceeding.

7

31. Also in December 2010, GM notified Class Counsel that it would ask the Bankruptcy Court to recover the fee payment awarded to Class Counsel in the Anderson settlement. Class Counsel disputed GM's claim and raised numerous defenses.

32. During this time period, Class Counsel and our staff continued to respond to questions from class members.

    E. **January 2011-April 2011: Negotiations of *Anderson* Class Claim Continue; Settlement Reached for *Anderson* Class Claim; Settlement Documents Negotiated and Prepared; Parties Present Settlement To Court for Approval; Settlement Approved By Bankruptcy Court; Negotiations of Preference Claim Continue.**

33. On January 4, 2011, Class Counsel provided a written demand to GM for the resolution of claim No. 51093. Based on the terms of the settlement approved by the California Superior Court and our review of 1,000 of the claim forms as a sample, Class Counsel proffered that an appropriate settlement value for the *Anderson* class Proof of Claim was $8,853,300.00

34. Over the next several weeks, Class Counsel provided additional information to GM's bankruptcy counsel regarding our claims analysis and procedures and more detailed statistical data. Beginning in January 2011 and continuing until the end of February 2011, Class Counsel conducted extensive settlement discussions with GM's bankruptcy counsel, exchanged information, methodologies and analysis as to the claims review, and reached a negotiated settlement with GM on the value of the *Anderson* clams.

35. Class Counsel worked diligently with GM's bankruptcy counsel to prepare and finalize the settlement documents over the next few weeks. GM filed the settlement papers with the Bankruptcy Court on March 14, 2011.

36. On April 26, 2011, the parties appeared before the Bankruptcy Court to present the proposed settlement of the *Anderson* class claim to the Court and obtain its approval. GM's bankruptcy counsel and Class Counsel presented the settlement and responded to questions by the Court. The Bankruptcy Court granted approval of the settlement and the *Anderson* class claim became an approved claim in the amount of $8,853,300.00.

8

37. From January to May 2011, GM and Class Counsel engaged in extensive discussions related to the potential preference action and the possible defenses raised. In order to permit the parties additional time to continue negotiations, we entered into a tolling agreement, which provided that any applicable statute of limitation, statute of repose, or any other time-related defense was tolled through June 30, 2011.

38. Class Counsel and our staff posted the Court's settlement approval on the official *Anderson* class settlement website.

### F. May 2011-December 2011: Submissions to Wilmington Trust Company; Preference Claim Resolved; Banking Compliance; Receipt of Distribution of GM Common Stock and Warrants.

39. After the Court approved the settlement, Class Counsel worked with GM's bankruptcy counsel and then with AlixPartners and the Wilmington Trust Company to position Claim No. 51093 for a bankruptcy distribution.

40. Class Counsel provided the requisite banking and tax information for approved Claim No. 51093 for the claims processing and bankruptcy settlement to Wilmington Trust Company in September 2011 and again in October 2011.

41. Throughout May to June 2011, GM and Class Counsel engaged in good faith, arm's-length discussions and negotiations as to the preference claim and defenses. On June 30, 2011, the parties reached a resolution of all potential claims and disputes relating to the attorneys' fee payment. Class Counsel agreed to pay GM's estate $750,000 to resolve the preference claim.

42. As part of the resolution of the preference claim, GM acknowledged that Class Counsel would submit an application for attorneys' fees and costs for the post-petition services Class Counsel provided to the *Anderson* Claimants and that the application would seek payment of attorneys' fees and costs solely from the proceeds of the settlement fund. GM agreed that they would take no position on the fee application.

43. In November 2011, Wilmington Trust Company distributed the GM common stock and warrants for allowed Claim No. 51093 to the account established at Union Bank of California ("UBOC").

44. Class Counsel have established procedures for calculating the pro rata share of the settlement fund, distributing the settlement checks to the valid claimants, and following up with any claimants whose settlement checks are returned as "undeliverable" or whose settlement checks become stale.

45. As of the date of this declaration, UBOC has advised Class Counsel that the aggregate market value of the securities received for Claim No. 51093 is $1,492,580.

### G. Girard Gibbs's Hours and Lodestar

46. <u>Hours and Lodestar</u>. Since June 1, 2009, the date of the GM bankruptcy filing, Girard Gibbs has devoted 1,325.90 hours of professional time devoted to the prosecution, negotiation and settlement by creation of a common fund for the class claims in the bankruptcy proceeding, claims administration, and the class member support and responses. Based on the current hourly rates, the lodestar value of Girard Gibbs's post-petition time is $516,100.50. *See* **Exhibit A**. The lodestar calculations are based on the firm's current standard billing rates for the post-petition period from June 1, 2009 through April 30, 2012, and were compiled from contemporaneous, daily time record detail regularly prepared and maintained by Girard Gibbs in the ordinary course of business. The hourly rates charged by Girard Gibbs for the partners, attorneys and professional support staff are the same as the regular current rates charged for their services in non-contingent matters and/or have been accepted and approved in other securities, shareholder, consumer class, or bankruptcy litigation. No adjustment was made, notwithstanding the complexity of the matters involved, the opposition encountered, the preclusion of other employment, the expected delay in payment, or other factors present in this case that might justify a higher rate of compensation. For personnel who are no longer employed by Girard Gibbs, the lodestar calculation is based upon the billing rates for his or her final year of

10

employment at Girard Gibbs. No time expended in connection with preparing this application for fees and reimbursement of expenses is included in this lodestar calculation. All of the services performed by Girard Gibbs were reasonably necessary in the prosecution of the actions.

47. <u>Out-of-Pocket Expenses Incurred</u>. Girard Gibbs's lodestar figure does not include charges for expense items. Expense items are billed separately and such charges are not duplicated in the firm's billing rates.

48. As detailed in **Exhibit B**, Girard Gibbs has incurred a total of 8,837.84 in unreimbursed expenses in connection with the post-petition legal services for the *Anderson* claimants since June 1, 2009 through May 1, 2012. The expenses incurred in this action by Girard Gibbs are reflected on the firm's books and records, which are prepared from expense vouchers, check records and other source materials and represent an accurate recordation of the expenses incurred.

49. In the compilation of the expense figures, I directed that the figures reported for telephone, LEXIS, WESTLAW, and messenger charges reflect amounts that Girard Gibbs actually paid, with no mark-up, and that reimbursement sought for airfare be limited to the coach rate. As referenced above in Paragraph 53 below, other courts have approved these methods of calculating expenses as reasonable, and have awarded Girard Gibbs reimbursement of expenses.

50. To ensure that the time and expenses that Girard Gibbs is submitting are complete, accurate, non-duplicative and non-excessive, I reviewed the firm's time and expense records.

51. The Girard Gibbs lodestar and expense figures described herein at ¶¶46-49 <u>do not include</u> hours spent solely researching, defending or negotiating the preference claims or any expenses associated with the preference claims.

52. In total, Class Counsel expended 1,325.90 attorney hours since the commencement of this Chapter 11 proceeding to obtain and distribute the allowed general unsecured claim in the amount of $8,853,300.00 for approved Claim No. 51093 to the *Anderson* Claimants. Class Counsel has received no compensation for these efforts.

11

53.     A sample of the federal and state courts that have approved Girard Gibbs's standard billing rates set forth in **Exhibit A** and reimbursement of the firm's expenses since 2004 include the following matters:

- September 2004, in *In re PayPal Litigation*, Case No. CV-02-01227-JF (PVT) (N.D. Cal.);

- March 2005, in *Landreneau v. Fleet Financial*, Case No. 01-26-B-MI (M.D. La.);

- September 2005, in *In re iPod Cases*, Case No. JCCP 4355 (Cal. Sup. Ct. San Mateo County);

- October 2005 and in June 2006, in *Powers Law Offices, P.C. v. Cable & Wireless, USA*, Case No. 99-CV-12007 (EFH) (D. Mass);

- March 2006, in *Lehman v. Blue Shield of California*, Case No. CGC-03-419349 (Cal. Super. Ct. San Francisco County);

- October 2006, in *Paul, et al. v. HCI Direct, Inc.*, Case No. RG03091369 (Cal. Super. Ct. Alameda County);

- December 2006, in *Natural Gases Anti-Trust Cases I, II, III & IV (Price Indexing),* Case Nos. JCCP 4221, 4224, 4226 and 4228 (Cal. Super. Ct. San Diego County);

- July 2007, in *In re American Express Financial Advisors Securities Litigation*, Case No. 04 Civ. 1773 (DAB) (S.D.N.Y.);

- October 2007, in *Bowen v. Whirlpool*, Case No. CV05-8067 AG (JWJx), (C.D.Cal.);

- April 2008, in *Telstar v. MCI, Inc.*, Case No. 05 Civ. 10672 (JGK), (S.D.N.Y.);

- September 2008, in *Brennan v. AT&T Corp.*, Case No. 04-433 DRH, (S.D.Ill.);

- October 2008, in *General Motors Dex-Cool/Gasket Cases,* Case. No. 4495 (Judic. Counc. Coord. Proc.) (Cal. Super. Ct. Alameda County);

- January 2009, in *Rasnake v. Netzero, Inc.,* Case No. BC356109 (Cal. Sup. Ct., Los Angeles County);

- March 2009, in *Anderson v. General Motors*, Judicial Council No. 4396/Case No. 04CC00554 (Cal. Sup. Ct., Los Angeles County);

- September 2009, in *In re Girls Gone Wild Litigation*, Case No. BC296675 (Cal. Sup. Ct., Los Angeles County);

- June 2010, in *In re H&R Block Express IRA Marketing Litigation Settlement*, MDL No. 1786 (D.Kan.);

- September 2010, in *Odom v. Microsoft*, Case No. 04 2 10618 4 SEA (Wash. Sup. Ct., King County);

- September 2010, in *Parkinson v. Hyundai Motor Am.*, 8:06-CV-00345-AHS-MLG. Doc. No. 330 (C.D. Cal.);

- October 2010, in *Browne v. Am. Honda Motor Co., Inc.*, 2:09-CV-06750-MMM-DTB, Doc. No. 62 (C.D. Cal.);

- October 2010, in *In re Pre-Filled Propane Tank Marketing and Sales Practices Litigation*, MDL No. 2086 (W.D. Mo.);

- August 2011, in *Wixon v. Wyndham Resort Development Corp.*, No. C 07 2361 JSW (BZ) (N.D.Cal.);

- August 2011, in *Billitteri Securities Litigation*, No. 3:09cv-01568-RF (N.D. Tex.);

- September 2011, *In re: Mercedes-Benz Tele Aid Contract Litigation*, No. 07-cv-02720-DRD-MAS (D. N.J.);

- January 2012, *Sugarman v. Ducati North America, Inc.*, No. 10-cv-05246-JF (N.D. Cal.);

- March 2012, in *Berrien v. New Raintree Resorts International, LLC*; Case Number: 10-3125-CW (N.D. Cal.);

- April 2012, in *Parker v. DISH Network L.L.C.*, No. 11-cv-01457-PJH (N.D. Cal.);

- April 2012, in *Khaliki v. Helzberg Diamond Shops, Inc.*, No. 11-cv-00010-NKL (W.D. Mo.);

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 14th day of May, 2012, at San Francisco, California.

/s/ _____
A. J. De Bartolomeo

13