UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK


RESPONSE FROM MAYA A BROADY AKA KILLINGS


## TABLE OF CONTENTS

Exhibit 1       Response Letter

Exhibit 2       Claims (#70896 & 70925)
                Post Office delivery confirmation – stamp date of 2/12/2011
                Letter to the Garden City Group – dated 2/5/2011

Exhibit 3       E-mail – from Maya Broady dated 1/7/2011

Exhibit 4       E-mail from Attorney Conray Tseng and response letter dated 3/25/2011
                Post Office delivery confirmation of material mailed to Attorney Tseng on
                May 12, 2011 (Note:  The material was also mailed out to Attorney
                Yvanna Custodio on 2/15/2012 per her request on 2/8/2012)

Exhibit5 5      E-mails from Maya Broady to "Debtor's" attorneys
                Statements  - status on claims

Exhibit 6       EEOC complaint
                Sexual harassment material

Exhibit 7       General Motors Benefits (aka Motors Liquidation)

Exhibit 8       Correspondence from General Motors (aka Motors Liquidation)
                (including documents from the claimant)

Exhibit 9       Medical Information

Exhibit 10      Workman's Compensation Information

Exhibit 11      Reply letters from claimant former attorney (Sheldon M. Markel & Assoc)

Exhibit 12      Dex Cool Lawsuit (car damage)

EXHIBIT 1

May 3, 2012

RESPONSE

(Revised copy)

Maya A.Broady aka Killings
238 Sawyer Street
Rochester, New York   14619

United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, New York   10004-1408

TO:   Whom It May Concern:                    Claims No 70896 & 70925

I am asking that my claims not be expunged on 5/31/2012, as the attorney's
representing the "Debtors" aka, Motors Liquidation Company is requesting (DICKSTEIN
SHAPIRO LLP) (Exhibit 1).   From the time that I became ill in 1991 to the present, the
**"Debtors"** have arbitrarily acted in bad faith, and the **"Debtors"** have refused to comply
with the Americans with Disability Act of 1990, and Title VII laws (Exhibits 8 & 9).
 From 1992 to the present, it has been difficult ascertaining vital information from the
"Debtors" attorneys' handling the Motors Liquidation Bankruptcy claims (Exhibit 5,
pages 1 & 2).

My claims should not be expunged based on the following statements:

1.      I originally filed my claims on 2/10/2011, and 2/12/2011 (not 2/12/2011, and
        2/14/2012 as the "Debtors" attorneys' indicated in their objection (Exhibit 2).  To
        my knowledge, I am not aware of any other hearings pertaining to the "276th
        Omnibus Objection to Claims" in order to expunge late filed claims.  I did not
        become privy to this information.  The "Debtors" or their attorneys, had a legal
        obligation in submitting all necessary materials in a timely fashion, and not
        withhold information.

2.      The truth is being guilefully distorted.  On 2/7/2012 (Exhibit 5, page 2), I
        discovered for the **first time** that my case was grouped with other cases that were
        already expunged, and I contacted Attorney Conray Tseng for an explanation.  He
        promised to update me on my claims in an e-mail dated 2/23/2011 (Exhibit 4,
        page 1).   Also, on 2/7/2012, Attorney Tseng informed me that "he could not
        locate my claims on the computer and that he would have someone contact me."

United States Bankruptcy court
Southern District of New York
Page 2 (Revised copy)

3.        The first claim that I filed has a court stamp date of 2/10/2011, and another court
          stamp date of 2/12/2011 (Claim #70896) (Exhibit 2, page 1).  The 2/10/2011 court
          stamp date is correct, but the 2/12/2011 stamp date is incorrect.  The 2/12/2011
          stamp date should have been on the second claim versus the stamp date of
          2/14/2011 (Claim #70925) (Exhibit 2, page 2).   The enclosed certified return
          receipt from the post office will verify that the court received the second claim on
          2/12/2011, not 2/14/2011 (Exhibit 2).

4.        I am obfuscated because of a conversation that I had with Attorney Yvanna
          Custodio on 2/8/2012.  She contacted me on behalf of Attorney Tseng.  Again, I
          asked Attorney Custodio the same question.  Why are my claims grouped with
          other claims that were expunged?  She responded by saying, "My claims are not
          being expunged and that they are under to be resolved."  She requested that I
          resubmit information to her that I had already filed with my claims.  I faxed Ms.
          Custodio a letter dated 3/8/2012, and mailed the bulk of the material out to her on
          2/15/2012 (Exhibit 5, pages 4 & 6).

5.        It is non-coincidental that important information pertaining to my claims has not
          been communicated to me as promised by Attorney Tseng, and expunging the
          claims had already been set in motion before I discovered it on 2/7/2012.  Certain
          information is not being mailed out within a reasonable period giving the creditors
          time to respond (Exhibit 3).  I have experienced many roadblocks, and claims
          were allowed to transient in order to find loopholes to expunge them.   The
          **"Debtors"** failed to negotiate or mediate the claims.   Instead, information
          obtained during their discovery was used to their advantage with this case and not
          my claims.

6.        To expunge my claims or to punish me for allegedly filing late is disparagement
          to the crime committed for a long…long time, and the injustice needs to be
          eradicated, including the discrimination and sexual harassment statements made
          in my original claims.  I worked in a hostile environment, and my former
          employer (General Motors Liquidation aka General Motors) failed to keep me
          safe, therefore, I filed a complaint with the EEOC (Exhibit 6).

**7.**    Most of the telephone information given to me was incorrect or inaccurate (filing
          administrative claim vs. filing secured and un-secured claims).  There was
          misrepresentation pertinent facts related, delays in responding, and exploitation of
          an insured in a venerable position (per se; not have an attorney to represent me).
          Since I do not have an attorney, ascertaining or receiving vital information
          became almost non-existent.  Eventually, I  e-mailed the Debtors on 2/7/2012

United States Bankruptcy Court
Southern District of New York
Page 3 (Revised copy)

> stating that I would contact the judge handling the bankruptcy claims since the
> "Debtors" attorneys' failed to respond to my concerns or update me on my claims
> (Exhibit 5, page 2).

8.    Even though the Dex Cool Class Action Law Suit is over, I am still experiencing
      problems keeping engine coolant in my car.  I have to purchase engine coolant
      every 2 to 3 months since I experienced the problem in 12/06 (Exhibit 12).

I am remonstrating that both claims **not be expunged**, but **approved.**  Furthermore, I am
asking or motioning that my claims be amended that I be able to file a late claim for 2009
and 2010 secured claim and amend any necessary corrections to my present claims based
on the statements that I have provided in my response.  (CLPR 3025 and 3025.15)
(http://public.leginfo.state.ny.us

I am asking that the court fully compensate me for benefits that I am legally and
contractually entitled to under the General Motors Liquation aka General Motors
disability benefits plans that the "Debtors" have refused to administer (Exhibits 7, 10, &
 11). Furthermore, the Debtors be accountable for subjecting me to an hostile environ-
ment, including sexual under both quid pro quo and hostile work environment sexual
harassment (see Mauro v Orville, 259 AD2d  89, 91 - 92 [1999], 1v denied 94 NY2d
759 [2000].

I motion that the court extend or reschedule the hearing in order that I may gather
information to substantiate my response in a timely timeframe.

I have meritorious grounds surrounding my claims, and this misdeed done to me as well
as the willful and malicious acts that have occurred, needs to be corrected.   I am asking
that a precedent be established here in hope to eliminate future misdeeds from happening
to others who have tried to do the thing.

Once again, I employ that the court approve both claims that were filed within the
mandatory timeframe, the "Debtors" be accountable as well as be responsible for their
 bad faith actions, and comply with the Americans with Disability Act of 1990 (Pub. L.
101-336), and Title VII laws.  By the grace and mercy of God, ensure that all individuals
are protected and treated fairly by corporations and institution that violate state and
federal laws.

United States Bankruptcy Court
Southern district of New York
Page 3


Thanks in advance for considering my responses in not expunging my claims.

Regards,



Maya A. Broady



cc:  Debtors Attorneys
      Dickstein Shapiro LLP
      1633 Broadway
      New York, New York   10019-6708

      Attention:  Mr. Barry N. Seidel (PS-1945)
                  Ms. Stefanie Birbrower Greer (SG-2898)

EXHIBIT 2

Exhibit

**UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK**

**ADMINISTRATIVE PROOF OF CLAIM**

Name of Debtor Against Which Administrative Claim is Held: General Motors Company (Corporation)

Case Number: 09-50026 (REG)

Name of Creditor (The person or other entity to whom the debtor owes money or property): Maya A Brady AKA ~Killings

FEB 12 2011

Name and address where notices should be sent:
Maya A Brady,
238 Sawyer St., Rochester, NY 14619
Telephone number: 585-328-2325

THIS SPACE IS FOR COURT USE ONLY

Check here if this claim □ replaces □ amends a previously filed claim, dated

**1 Basis for Claim**
- □ Goods sold
- □ Services performed
- □ Money loaned
- □ Personal injury/wrongful death
- □ Taxes
- ☑ Other Defccool Engine damaged

- □ Retiree benefits as defined in 11 U S C § 1114(a)
- ☑ Wages, salaries, and compensation (fill out below)
Last four digits of SS# 4038
Unpaid compensation for services performed from 10/92 to Present

**2 Date debt was incurred:** 5/88 - Present

**3 If court judgment, date obtained:**

**4 Total Amount of Administrative Expense Claim.** $200,000

□ Check this box if claim includes interest or other charges in addition to the principal amount of the claim

**5 Brief Description of Administrative Expense Claim** (attach any additional information):
1) Unpaid disability. It was determined that I was disabled at the time I was forced to retire from GM in 4/1993. See attachments. I was paid for temporary disability (6 months) but not permanent.
2) Def-cool Engine damage. I had to replace head case in my 2001 pontiac sunfire in 1/2007 due to coolant leakage. (See attached)
3) GM failed to protect me. I worked in a hostile environment. I filed a claim with EEOC. See attached

THIS SPACE IS FOR COURT USE ONLY

**6 Credits:** All payments made on this claim have been credited and deducted for the purpose of making this proof of claim

**7 Supporting Documents:** ...

**8 Date-Stamped Copy:** ...

**Date:** 2/9/11

Sign: Maya Brady

Penalty for presenting a fraudulent claim Fine of up to $500,000 or imprisonment for up to 5 years or both 18 U S C §§ 152 and 3571

FILED - 70896
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP.
09-50026 (REG)

ROCHESTER NY 14692
FEB 10 2011
MAIN

Exhibit

UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

**ADMINISTRATIVE PROOF OF CLAIM**

Name of Debtor Against Which Administrative Claim is Held
General Motors Company (Corporation)

Case Number
09-50026 (REG)

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars

Name of Creditor (The person or other entity to whom the debtor owes money or property):
Maya A Brody
AKA ~ Killings

Name and address where notices should be sent:
Maya A Brody,
238 Sawyer St., Rochester, NY 14619
Telephone number: 585-328-2325

☐ Check box if you have never received any notices from the bankruptcy court in this case
☐ Check box if the address differs from the address on the envelope sent to you by the court

FEB 1 2 2011

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor

Check here
if this claim  ☐ replaces   ☐ amends   a previously filed claim, dated

1. Basis for Claim
   ☐ Goods sold
   ☐ Services performed
   ☐ Money loaned
   ☐ Personal injury/wrongful death
   ☐ Taxes
   ☒ Other Def-cool Engine damaged

☐ Retiree benefits as defined in 11 U S C § 1114(a)
☒ Wages, salaries, and compensation (fill out below)
Last four digits of SS# 4038
Unpaid compensation for services performed
from 10/92 (date) to Present (date)

2. Date debt was incurred: 5/88 - Present

3. If court judgment, date obtained:

4. Total Amount of Administrative Expense Claim. $200,000

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges

5. Brief Description of Administrative Expense Claim (attach any additional information):

1) Unpaid disability. It was determined that I was disabled at the time I was forced to retire from GM in 4/1993. See attachments. I was paid for temporary disability (6 months) but not permanent.
2) Def-cool Engine damage. I had to replace head case in my 2001 Pontiac Sunfire in 1/2007 due to coolant leakage. (See attached)
3) GM failed to protect me. I worked in a hostile environment. I filed a claim with EEOC. See attached.

THIS SPACE IS FOR COURT USE ONLY

6. Credits: All payments made on this claim have been credited and deducted for the purpose of making this proof of claim

7. Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien
DO NOT SEND ORIGINAL DOCUMENTS If the documents are not available, explain If the documents are voluminous, attach a summary

8. Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

Date:

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):
Maya Brody     2/9/11

Penalty for presenting a fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years or both  18 U S C §§ 152 and 3571

FILED - 70896
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP.
SDNY 09-50026 (REG)

ROCHESTER NY 14692
FEB 10 2011
MAIN

Exhibit 2B (1)

February 5, 2011

Ms. Maya A. Broady
238 Sawyer Street
Rochester, New York   14619

The Garden City Group, Inc.
Attention:  Motors Liquidation Company Claims Processing
P. O. ox 9386
Dublinm, Ohio   43017-4286

TO WHOM IT MAY CONCERN:

For many months now, I have been calling your office reference the attached Motors
Liquidation with General Motors.  I have either been disconnected, transferred to the
wrong department, or the customer service representatives could not or did not answer
my questions.

I have also attempted to go on line at www.motorsliquidationdocket.com, but could not
locate the Administrative Poof of Claim Form until recently.

I am filing the following claims:

1)      The Dex cool fluid.  I had to replace my head gasket because the fluid kept
         leaking out of the engine.   I understand that there was a class action
         lawsuit/recall pertaining to this, but I was not contacted, and did not know about
         the lawsuit/recall.  The damage $1/1457.55   .  (See Attachments)

2)      General Motors failed to pay me for my permanent disability from November
         1992 – Present.  When I was forced to leave GM in April 1992, I was still under
         the doctor's care before, during and after leaving General Motors.  It was
         determined that I was permanently disabled and could not return to work.  I did
         contact them and filed for disability benefits, but the Disability Benefits
         Department would not return my calls.  They also stated that they never received
         my claim for disability.  (See attachments)

3)      I feel that I was discriminated against by General Motors.  In 1988, I had to file a
         discrimination complaint with EEOC.  They did find probable cause for
         discrimination. (See Attached)

Therefore, I am filing a claim for $200,000 against General Motors for pain and
suffering, failure to fulfill their disability policies and procedures for long term
disability, forcing me to take an early retirement while I was still under a doctor's
care in April 1992, and creating a hostile environment while working for them from 1988
– 1992 which necessitated me filing a claim with EEOC in 1991?  My employment
started with General Motors in August, 1984 – April 1992.

Exhibit 28, Pg 2

Once again, I am sending this letter because I am unable to gather the proper claim form, and could not obtain them.

Sincerely,


Maya A. Broady

Attachments





UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

Maya A. Broady
238 Sawyer St.
Rochester, NY 14619

EXHIBIT 3



(GM2) Client Home    Exhibit 1C                                      Page 1 of 1

Attachment # 6

Claim Question? Call: 646 282 2400    Technical Support Question? Call: 800 794 4430                    Guest | Sign In

epiq    debtorMatrix                    MOTORS LIQUIDATION COMPANY
SYSTEMS                                 OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY
                                        (FORMERLY GENERAL MOTORS CORPORATION)
                                        GM (n/k/a Motors Liquidation Company) Creditors' Committee
                                                                                Change Client

Client Home    Docket    Key Documents

Home » Client Home                                                      Bookmark this Page

# MOTORS LIQUIDATION COMPANY

## OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF MOTORS LIQUIDATION COMPANY
### (FORMERLY GENERAL MOTORS CORPORATION)

YOUR USE OF THIS COMMITTEE WEBSITE IS SUBJECT TO THIS DISCLAIMER.

| General Information | Contact Information | Frequently Asked Questions | Chapter 11 Overview | Buying and Selling Unsecured Claims | Important Dates | **Submit an Inquiry** |

## Submit an Inquiry

You may submit an inquiry below or call the GM Committee Hotline at: (212) 715-3275

First Name           Maya
Last Name            Broady
Organization
Street Address       238 Sawyer Street
City, State Zip      Rochester          , NY ▼    14619
Country              United States ▼
Email Address        sdunham3@triad.rr.co
Phone                585-328-2325
Fax
Relationship to Debtor  former employee
Type of Inquiry      Other ▼

Notes                Please contact me at the above address and telephone
                     number. I need to know what types of claims I can
                     submit. The documentation that I recently received this
                     year does not specify the types of claims, it very vagued,
                     and not specific. It would be best if you CALLLED ME AT
                     585-328-2325 AFTER 3:00 P.M. Monday thru Friday.

[Submit]    [Reset]

Information for bondholders on whether to file a proof of claim:

Wilmington Trust Company is successor indenture trustee to Citibank NA, the 1990 and 1995 Indenture. The outstanding series of notes issued pursuant to these Indentures are represented by CUSIP numbers: 370442AN5; 370442AJ4; 370442AR6; 37045EAG3; and 37045EAS7; 370442AT2; 370442AU9; 370442AV7; 370442AZ8; 370442BB0; 370442816; 370442774; 370442766; 370442758; 370442741; 370442733; 370442725; 370442BQ7; 370442BT1; 370442717; 370442BW4; 370442BS3; 370442121; and 370442691.

Wilmington Trust has placed a list of Frequently Asked Questions on its website. Those Questions and Answers are attached here. **The web site indicates that Wilmington Trust will be filing the proof of claim and all supporting documentation on behalf of the bondholders it represents.** If you have questions for Wilmington Trust, you may call them at (866) 521-0079 Monday through Friday from 8:00 a.m. to 5:30 p.m. (Eastern). If you are calling from outside the United States, please call (302) 636-4130. Or, you can access their web site at www.wilmingtontrust.com/gmbondholders/faqs.html.

Law Debenture Trust Company of New York is the proposed successor trustee to The Bank of New York Mellon under seven different Indentures. The outstanding series of notes issued pursuant to those Indentures are represented by CUSIP numbers: 594693AQ6; 616449AA2; 616445AB0; 455329AB8; 67759G AU2; 67759ABC2; and 34927ZAT1.

COMPANY INFORMATION AND SERVICES | FORMS | CORPORATE | HOME | CONTACT | SUBSCRIBE | SITE MAP | DISCLAIMER | TERMS OF USE | PRIVACY STATEMENT | SAFE HARBOR | RSS FEEDS
© Epiq Systems, Inc. All Rights Reserved.

Epiq Bankruptcy Solutions, LLC ("Epiq") maintains this website for the public's convenience. While Epiq makes every attempt to assure the accuracy of the information contained herein, this website is not the website of the United States Bankruptcy Court and does not contain the complete, official record of the Bankruptcy Court. All documents filed with the Bankruptcy Court are available for inspection at the office of the Clerk of the Bankruptcy Court during its normal business hours or online on the Bankruptcy Court's website. Use of this website is also subject to our TERMS OF USE and END USER LICENSE AGREEMENT. Please review our PRIVACY STATEMENT for additional information regarding the data maintained on this website.

EXHIBIT 4

Page 1 of 1

*Exhibit 4*

*Attachment #1*

**Adrianne Killings**

| | |
|---|---|
| **From:** | "Tseng, Conray" <conray.tseng@weil.com> |
| **To:** | <sdunham3@triad.rr.com> |
| **Cc:** | "Griffiths, David" <David.Griffiths@weil.com> |
| **Sent:** | Wednesday, February 23, 2011 11:26 AM |
| **Subject:** | MLC - PoC 70896/70925 Maya Brody |

Ms. Brody

Per our phone conversation, your two claims (one with addendum and one without) will be combined into a single surviving proof of claim 70925 of $200,000.

We reserve all rights and defenses with respect to your claim.  If you agree with the above, please respond back confirming your agreement.

Also, as promised, we will provide you notice by mail and telephone when we will schedule your claim for hearing and resolution before the bankruptcy court.

Please feel free to give me a call if you have any questions or concerns.  Thank you for your assistance with this matter.

**Weil**

**Conray C. Tseng**
Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
conray.tseng@weil.com
+1 212 310 8601 Direct
+1 212 310 8007 Fax

The information contained in this email message is intended only for use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please immediately notify us by email (postmaster@weil.com), and destroy the original message. Thank you.

2/24/2011

Exhibit 4    134

March 25, 2011

Ms. Maya Broady                    Revised 4/18/2011
238 Sawyer Street
Rochester, New York   14619

Mr. Conray Tseng
The Garden City Group, Inc.
Attn:  Motors Liquidation Company Claims Processing
P. O. Box 9386
Dublin, Ohio   43017-4286

Dear Mr. Tseng:

I am responding to the telephone call you made to me on 2/22/2011, and your email dated 2/23/2011
referencing the General Motors Liquidation claims that I filed dated 2/9/2011. (Attachment # 1).

On 2/22/2011, you contacted me and recommended that I combine both claims filed on 2/9/2011.  You
also stated that providing I combine both claims filed on 2/9/2011, as well as cancel them, that you
would open up the 2009/2010 claim against Motors Liquidation Company on my behalf.    I asked that
you put these changes in writing and mail or email them to me.  After receiving your email on
2/23/2011, you confirmed everything we discussed, but you neglected to confirm our conversation
pertaining to filing the 2009/2010 claim on my behalf.  I contacted you reference to the contents of the
email, you indicated to me over the telephone that your superior recommended that you not include me
or open up the 2009/2010 claim on my behalf.

In the last few weeks, I did some research pertaining to my permanent and total disability claims, and
uncovered the following information:

1)    The Americans with Disability Act of 1990 "is a civil right law protecting individual with
      disabilities from discrimination in the workplace."  My doctor who examined me before,
      during, and after my illness, as well as the judge who approved my disability on 7/8/1993, and
      determined that I was indeed permanently disabled on or before April 15, 1992.

2)    The Americans with Disability Act of 1990:  §325-8.5    Improper influence or involvement in
      medical treatment.    My superiors at General Motors became aware of my illness around
      September 1991- 1992.  I feel that they hindered me from seeking crucial medical assistance,
      including not allowing me to take a medical leave of absence and trying to force me to relocate
      out of town, and set up job interviews knowing that I was ill.  I also feel that they contributed to
      my illness by initiating a hostile working environment, sexual harassment, and racial
      discrimination.  You have certain documents in your possession that I mailed with my claim on
      2/9/2011 and I have included additional back up information with this letter.  (Attachment # 2).

3)    The American with Disability Act of 1990.  See 42 U.S.C.  §§ 12201-12213 -Title V –
      Miscellaneous Provision.  "The prohibition against retaliation or coercion applies broadly to
      any individual or entity that seeks to prevent an individual from exercising his or her rights or

Exhibit 4 2g4

Page 2
C. Tseng

to retaliate against him or her for having exercised right.  Any form of retaliation or coercion, including threats, intimidation, or interference is prohibited if it is intended to interfere." I was retaliated against for filing the complaints with the EEOC in 1988, and my superiors at General Motors **constantly coerced, and forced** me into taking the early retirement on April 15, 1992, which is a violation.

NYS Workers 'Compensation Disability Benefit Law -  **§ Section 120,** Benefits.  It states, "An employee filing a claim against his or her employer for retaliatory discrimination or discharge under NYS Workman's Compensation Law 120, I can obtain the following benefits." C)  " Payment from the employer for loss of compensation because of the unlawful discrimination."

A Guide to Disability Rights Law -  **Section 504**.  "No qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under."    I was denied unemployment benefits as well as disability benefits after leaving the company because my superiors claimed that they were not aware of my illness, and that I had voluntarily accepted the early retirement.  This is incorrect.  I was coerced.  I provided documentation to the unemployment office here in Rochester, NY in 1992 to substantiate my claim.   They suggested that I file for disability benefits, which I did.

4)     The American with Disability Act of 1990:  **Section 287.200.**  It states that "then in addition to the compensation for which the employer is liable and after the completion of payment of the compensation by the employer, the employee shall be paid the remainder of the compensation that would be due for permanent total disability under **Section 287.200."**

5)     NYS Workers Compensation Disability Benefit Law:  **§10.6** – Eligibility Entitlement.  It states that "an employee is entitled to disability benefits whenever he/she is a full time employee after four consecutive weeks."  I was employed full time from 9/84 – 4/92 (7 ½ years at General Motors).

6)     NYS Workers Compensation Disability Benefit Law – Modification of awards/decision or errors:  **§15.9, §10.9 Claim Filing.**  It is up to the chair/judge to re-open or modify late claims and award the employee retroactive benefits.  Based upon this law, therefore; I am asking the judge to automatically include me in the 2009/2010 claim against General Motors Liquidation because the attorney's handling the Motors Liquidation Claim did not return any or my telephone calls during that period of time.  I had to send an e-mail on 1/7/2011 in order to receive a response from the lawyer's firm handling the General Motors Liquidation claims (See the attached e-mail, # 1).  I was also under a doctor's care for stress and medical concerns.

7)     NYS Worker's Compensation Disability Benefit Law  §10.6, $217 - #7 – Payment of Benefits.  My employer at General Motors had prior knowledge of my disability and Supplemental Disability Benefits were eventually paid after I filed a complaint with the NYS Worker's Compensation Board, but they refused to pay me for permanent disability.

Exhibit 4D 3g4

Page 3
C. Tseng

8)    <u>NYS Worker's Compensation Disability Benefit Law</u> -  §220 Penalties – This law "mandates that employers become responsible in paying any disability benefits to their employees required by law."  Proof of my disability was filed within the timeframe; 26 weeks before as well as after I became disabled in 1992.

§217 - My supervisor at General Motors failed to enforce all disability rules and regulations, and  I feel that they willfully and intentionally failed to make provisions in paying me disability benefits that I was/am entitled to under the NYS Worker's Compensation Disability Law and The American with Disability Act of 1990.  After General Motors approved my Supplemental Disability Benefits, they should have continued to pay for permanent and total disability benefits according to the General Motors Plan outlined in their GM Benefits booklet.  (See Attachment # 2, 3)

Based upon all the evidence I have provided and submitted, I am not combining or closing any of the claims that I filed against General Motors Liquidation.  I am also asking that the judge includes me in the 2009/2010 claim based on the following reasons:

- The law firm, Weil, Gotshal & Manages LLP failed to respond to all my telephone calls made to their law firm in 2009/2010, as well as some calls in 2011.

- They failed to directly answer the questions pertaining to the types of claims I could file in 2009/2010, and when I did talk with them in 2011 before filing my claim on 2/9/2011, they reluctantly answered my questions and avoided some of them.

- They only contacted me when I sent them an email on 1/7/2011. (Attachment # 6)

- I was under the doctor's care throughout 2009 – 2011 for emotional stress and various illnesses.'  I have constantly been under a doctor's care since and after my illness in April 1992.

Under the General Motors Disability Income Brochure, I should have received monthly installments or payments of my basic Life Insurance following the expiration of my extended disability providing if I had less then 10 years of credit service when I became totally and permanently disabled.  General Motors failed to comply by all disability laws, and to my knowledge, they failed to file a "Special Form C-8 to notify NYS Workman's Compensation (Law §25(d) notifying them that they had suspended payments for future benefits. On 2/9/2011, I filed another claim pertaining to the additional benefits that I should have received under the General Motors Disability Plan.  For some reason, you sent it back to me in the self-addressed/stamped envelope I sent with the claim. (See Attachments # 4).

Even though the Dex Cool Class action lawsuit is over, I am still experiencing problems keeping engine coolant in my car, and I have to purchase engine coolant every 2 to 3 months since I experienced the problem in December, 2006.

Exhibit D 434

Page 4
C. Tseng

In summary, my superiors at General Motors had prior knowledge of my illness before, during, and after my employment with them. I was forced to work in a hostile environment, and subjected to constant harassment, including sexual, and was forced into an early retirement after I filed a complaint with the EEOC. They constantly setup roadblocks in preventing me from obtaining disability benefits that I was/am entitled to under the American with Disability Act of 1990 as well as the NYS Workman's Compensation Disability Law after I became disabled. Therefore, I am asking that the judge approve my claims for disability benefits, as well as my Dex Cool claim, and make by disability benefits retroactive from October 1992 to the present that I should have received under the General Motors Disability Benefits Plan.

I am enclosing additional document to further backup my claim filed on 2/9/2011, including an attachment that I mailed with the original claim. (See Attachment # 5 mailed out originally).    I am also asking the judge to include the enclosed documents with the original claim when making his decision.

 Sincerely yours,


Maya  Broady

Attachments:

E-Mail from Conray Tseng (Attachment #1)
General Motors Liquidation Claims (Attachment # 2).
GM Benefits booklet.  (See Attachment # 3 $ 4)
General Motors Disability Benefit information  - Attachments #5
 E-mail from Maya Broady to General Motors Liquidation 1/7/2011.  (Attachment # 6)
Letters from General Motors Personnel Director, etc. (Attachments #7
Letters from my former attorney (Supplemental Disability Claim) (Attachments #8)
Letters from my former doctors (1992) Attachments #9
Documented Harassment records - Attachments #10
Information from NYS Department of Labor - Attachments #11
Letters from General Motors Insurance Carrier (Metropolitan Life) - Attachments #12
Workman's Compensation letter(s) - Attachments 13
Documents from General Motors Benefits Center - Attachments #14
Letters from Maya Broady to General Motors Ins. Carrier (Metropolitan Life Insurance) - Attach. 15
Letters from Maya Broady to former Attorney, Sheldon M. Markel & Assoc., Mr. Windward - Attach. 16
Social Security Disability Letter - Attachments #17
Sexual Harassment Letters - Attachments #18

cc:  Nastalis & Frankel, LLP Counsel (Unsecured Creditors Counsel)





EXHIBIT 5

MLC General Unsecured Creditors Trust          Exhibit   5                    Page 1 of 1



MOTORS LIQUIDATION COMPANY
**GENERAL UNSECURED CREDITORS TRUST**                    WILMINGTON TRUST

Home

News

Key Information

Documents

Claims

Contact Us

Login

Hotline
(800) 414-9607

**Contact Us**

You may use this form to submit any inquiries or document requests, or you may call **(800) 414-9607**.

Submit an Inquiry or Request

Name: Maya Broady (Killings)

Email Address: ladunham3@traid.rr.com

Telephone: 585-328-2325

Street Address 1:

Street Address 2:

City: Rochester          State: NY          Zip/Postal: 14619

Country: United States

Inquiry / Request:
I am writing because I still have not received any updated
information pertaining to my case. I would like to review the
status of my case on line, but I could not locate my name. I would
like for someone to contact me at the above number or write me
pertaining to the status. I was informed last January, 2011, that I
would be kept up-to-date, but this is not the case. I have made all
the calls, and no one has contacted me or mailed out any
correspondence. The case is under Motors Liquidation Company, at

Submit    Reset Form    NOTE: Fields with a yellow background are required.

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.    Please consult an attorney for advice specifically relating to your legal matter.    Do not send confidential information without express consent of one of our case professionals.    The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Home    Login                    Privacy Notice Terms Of Use    January 19, 2012 @ 04:02:46    Copyright ©2011 AlixPartners,    AlixPartners
PM                                  LLP    |  (61)

https://www.mlcguctrust.com/ContactUs.aspx                                    1/19/2012



MLC General Unsecured Creditors Trust                    Exhibit 5                    Page 1 of 1

## MOTORS LIQUIDATION COMPANY
# GENERAL UNSECURED CREDITORS TRUST                    WILMINGTON TRUST

Home
News
Key Information
Documents
Claims
Contact Us
Login

Hotline
(800) 414-9607

### Contact Us

You may use this form to submit any inquiries or document requests, or you may call **(800) 414-9607**.

Submit an Inquiry or Request

Name: Maya A. Broady
Email Address:
Telephone: 585-328-2325
Street Address 1: 238 Sawyer Street
Street Address 2:
City: Rochester          State: NY     Zip/Postal: 14619
Country: Monroe
Inquiry / Request:
I looked at my claim today for the first time.  I noticed that only
one claim was filed for me in the amount of $200,000.  There should
have been two claims for a total of $400,000.  What happened to the
other claim, and why no one contacted me about oneof the claims not
be filed.  Both claims were filed on time.

Please have someone to respond in writing.  I was told to contact

Submit    Reset Form      NOTE: Fields with a yellow background are required.

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.  Please consult an attorney for advice
specifically relating to your legal matter.  Do not send confidential information without express consent of one of our case professionals.  The MLC General Unsecured Creditors Trust and AlixPartners are not
responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Home    Login              February 07, 2012 @ 03:10:32          Copyright ©2011 AlixPartners,    AlixPartners
       Privacy Notice Terms Of Use          PM                   LLP  |  (101)

https://www.mlcguctrust.com/ContactUs.aspx                                        2/7/2012

Page 1 of 2

Exhibit 5

**Adrianne Killings**

| | |
|---|---|
| **From:** | "Shanna D" <sdunham3@triad.rr.com> |
| **To:** | "AGE" <age213@rochester.rr.com> |
| **Sent:** | Wednesday, February 08, 2012 8:08 PM |
| **Subject:** | Fw: Motors Liquidation |

-----Original Message-----
From: info@motorsliquidation.com
Sent: Wednesday, February 08, 2012 1:37 PM
To: SDUNHAM3@TRIAD.RR.COM
Subject: Motors Liquidation

Ms. Broady,

There are 2 pending claims filed according to the website, Claim
#70896 and #70925.

Please watch for any further notices regarding this claim submitted to
you through the mail. Additionally, you will continue to receive
notices as further decisions are made on your claim in the bankruptcy.

Feel free to contact us with further questions via email or at
1-800-414-9603.

Regards,

Motors Liquidation Company GUC Trust

From: SDUNHAM3@TRAID.RR.COM [mailto:SDUNHAM3@TRAID.RR.COM]
Sent: Tuesday, February 07, 2012 3:17 PM

Subject: MLC GUC Trust Contact Us

SDUNHAM3@TRAID.RR.COM submitted a Contact Us request on February 07,
2012 @ 03:17:27

eMail Address: SDUNHAM3@TRAID.RR.COM

Full Name: Maya A. Broady
Phone: 585-328-2325
Address 1: 238 Sawyer Street
Address 2:
City: Rochester
State: NY
Postal / ZIP: 14619
Country: Monroe

2/11/2012



Exhibit 5

Page 2 of 2

Comments: I looked at my claim today for the first time. I noticed that only Only one claim was filed for me in the amount of $200,000. There should have been two claims for a total of $400,000. What happened to the other claim, and why no one contacted me about one of the claims not be filed? Both claims were filed on time. I talked to someone today, but she did not inform me that only one claim was filed. No one has. Please have someone to respond in writing. I was told to contact the judge who is handling this case. Maya Broady

Exhibit 5 (x)
To: Yvanna Custodio

NESTGATE BRANCH
ROCHESTER, New York
146249998
3510280624-0098
02/15/2012 (585)247-5150 05:39:01 PM

Sales Receipt
Product       Sale Unit    Final
Description   Qty Price    Price

NEW YORK NY 10153                    $3.10
Zone-3 First-Class
Large Env
11.70 oz.

Issue PVI:                           $3.10

Total:                               $3.10
Paid by:
Cash                                 $3.10

Confirmation Receipt

BRIGHTEN SOMEONE'S MAILBOX. Greeting cards available for purchase at select Post Offices.

Order stamps at usps.com/shop or call 1-800-Stamp24. Go to usps.com/clicknship to print shipping labels with postage. For other information call 1-800-ASK-USPS.

Get your mail when and where you want it with a secure Post Office Box. Sign up for a box online at usps.com/poboxes.

2/11/2012



MLC General Unsecured Creditors Trust                    Exhibit 1 C                    Page 1 of 1

MOTORS LIQUIDATION COMPANY
**GENERAL UNSECURED CREDITORS TRUST**                    WILMINGTON TRUST

Home

News                    Contact Us

Key Information         You may use this form to submit any inquiries or document requests, or you may call **(800) 414-9607**.

Documents              ┌─ Submit an Inquiry or Request ─────────────────────────────────

Claims                          Name: Maya A. Broady

Contact Us             Email Address: SDUNHAM3@TRAID.RR.COM

Login                     Telephone: 585-328-2325

                      Street Address 1: 238 Sawyer Street

Hotline               Street Address 2:
(800) 414-9607
                              City: Rochester        State: NY    Zip/Postal: 14619

                           Country: US

                                       Thanks for eventually updating me pertaining to my claims. A
                                       correction needs to be made to my middle initial.  It should be "A"
                       Inquiry / Request: not "H"

                                       Maya Broady

                       Submit    Reset Form     NOTE: Fields with a yellow background are required.

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indication of future performance.  Please consult an attorney for advice specifically relating to your legal matter.  Do not send confidential information without express consent of one of our class professionals.   The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through the site.

Home   Login                    Privacy Notice  Terms Of Use   February 12, 2012 @ 01:14:39    Copyright ©2011 AlixPartners,        AlixPartners
                                                              PM                        LLP | (51)

https://www.mlcguctrust.com/ContactUs.aspx                                        2/12/2012



MLC General Unsecured Creditors Trust                 Exhibit 5th                     Page 1 of 1

## MOTORS LIQUIDATION COMPANY
# GENERAL UNSECURED CREDITORS TRUST        ◆ WILMINGTON TRUST

| | |
|---|---|
| Home | **Contact Us** |
| News | You may use this form to submit any inquiries or document requests, or you may call **(800) 414-9607**. |
| Key Information | |
| Documents | ┌─ Submit an Inquiry or Request ─────────────── |
| Claims | Name: Maya A. Broady |
| Contact Us | Email Address: SDUNHAM3@TRAID.rr.com |
| Login | Telephone: 585-328-2325 |
| | Street Address 1: 238 Sawyer Street |
| **Hotline** | Street Address 2: |
| (800) 414-9607 | City: Rochester    State: NY    Zip/Postal: 14619 |
| | Country: US |

Inquiry / Request:
TO:  Ms. Yvanna Custodio

Please let me know if you received the other package that I mailed
out last week.  You should have received it by now.  You can e-mail
me at the above e-mail address.  Also, please inform me if my
case/claim has been reviewed by the judge, etc.  I was told a few
months ago that it would be coming up for review in a few weeks, but

[ Submit ]  [ Reset Form ]    NOTE: Fields with a yellow background are required.

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.  Please consult an attorney for advice specifically relating to your legal matter.  Do not send confidential information without express consent of one of our case professionals.  The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Home   Login      Privacy Notice Terms Of Use   February 21, 2012 @ 05:22:26 PM      Copyright ©2011 AlixPartners, LLP | (51)   AlixPartners

https://www.mlcguctrust.com/ContactUs.aspx                                 2/21/2012

MLC General Unsecured Creditors Trust          Exhibit 5          Page 1 of 1

## MOTORS LIQUIDATION COMPANY
## GENERAL UNSECURED CREDITORS TRUST          WILMINGTON TRUST

| | |
|---|---|
| Home | **Contact Us** |
| News | You may use this form to submit any inquiries or document requests, or you may call **(800) 414-9607**. |
| Key Information | |
| Documents | Submit an Inquiry or Request |
| Claims | Name: Maya A. Broady |
| Contact Us | Email Address: www.sdunham3@traid.rr.com |
| Login | Telephone: 585-528-2325 |
| | Street Address 1: 238 Sawyer Street |
| **Hotline** | Street Address 2: |
| (800) 414-9607 | City: Rochester    State: NY    Zip/Postal: 14619 |
| | Country: Monroe |
| | Inquiry / Request: TO WHOM IT MAY CONCERN: |
| | Could you advise me or inform me if the judge has reviewed my claim or has it been to court since I filed it last year?  This information is needed in order for me to take the next steps reference my claims.  Also, is there a specific person that I need to contact for future references?  Please e-mail me at the above |

Submit    Reset Form    NOTE: Fields with a yellow background are required.

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.  Please consult an attorney for advice specifically relating to your legal matter.  Do not send confidential information without express consent of one of our case professionals.  The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Home   Login          Privacy Notice Terms of Use  April 23, 2012 @ 02:49:03 PM          Copyright ©2011 AlixPartners, LLP | (101)   AlixPartners

https://www.mlcguctrust.com/ContactUs.aspx          4/23/2012



MLC General Unsecured Creditors Trust                Exhibit 5                Page 1 of 1

## MOTORS LIQUIDATION COMPANY
## GENERAL UNSECURED CREDITORS TRUST          WILMINGTON TRUST

**Home**
**News**
**Key Information**
**Documents**
**Claims**
**Contact Us**
**Login**

**Hotline**
**(800) 414-9607**

CLAIMS ROOM

Claims Room

Search By: Claim/Schedule #    includes: 70896    [Search] [View All]

Displaying: Claim / Schedule Number contains 70896

| Claim/Schedule # | Claim/Sc | Creditor Name | Status | Date | Current Total | C/U/U/D | Transfer | Image |
|---|---|---|---|---|---|---|---|---|
| MLC-0070896 | C | MAYA H BROADY AKA KILLINGS | To Be Resolved | 02/12/20 | $200,000.00 | ☐☐☐☐ | ☐ | Download |
| MLC-1708960 | S | BYARS, JOHN | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |
| MLC-1708961 | S | HADLEY, JOHN | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |
| MLC-1708962 | S | RIPLEY, THOMAS | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |
| MLC-1708963 | S | SAWYER, WARDELL | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |
| MLC-1708964 | S | SCHMIDT, ROBERT J | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |
| MLC-1708965 | S | SHUFORD, JERRY W | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |
| MLC-1708966 | S | EYNON, RICHARD J | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |
| MLC-1708967 | S | WATTS, PERTIS RANDES | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |
| MLC-1708968 | S | RAYMAN, KEVIN | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |
| MLC-1708969 | S | ALLSTATE INSURANCE COMPANY | Expunged | | $0.00 | ☑☑☐☑ | ☐ | |

Records per page: 20                Records: 1 - 11 of 11 - Pages:    1

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.    Please consult an attorney for advice specifically relating to your legal matter.    Do not send confidential information without express consent of one of our case professionals.    The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Home  |  Login          Privacy Notice Terms Of Use    February 10, 2012 @ 03:23:00 PM    Copyright ©2011 AlixPartners, LLP  |  (41)    **AlixPartners**

https://www.mlcguctrust.com/ClaimsRoom.aspx                2/10/2012



MLC General Unsecured Creditors Trust                    Exhibit 5                    Page 1 of 1

## MOTORS LIQUIDATION COMPANY
## GENERAL UNSECURED CREDITORS TRUST    ◆ WILMINGTON TRUST

**CLAIMS ROOM**

**Creditor Summary**                                     Claims Room -> Creditor Summary

Match Code: unmatched-70896-01

| Filed Claims Tally | Count | Secured | Administrative | Priority | Unsecured | Total |
|---|---|---|---|---|---|---|
| As Filed | | $0.00 | $200,000.00 | $0.00 | $0.00 | $200,000.00 |
| Current Status | | $0.00 | $200,000.00 | $0.00 | $0.00 | $200,000.00 |

| Scheduled Claims Tally | Count | Secured | Administrative | Priority | Unsecured | Total |
|---|---|---|---|---|---|---|
| As Filed | 0 | $0.00 | | $0.00 | $0.00 | $0.00 |
| Current Status | 0 | $0.00 | | $0.00 | $0.00 | $0.00 |

**Filed Claims**

| Claim # | Creditor | Date | Total | Status | C/U/U/D | Debtor | Transferred |
|---|---|---|---|---|---|---|---|
| MLC-007C | MAYA H BROADY AKA KILLINGS | 02/12/201 | $200,000.00 | To Be Resolved | ▢▢▢▢ | Motors Liquidation Company | ▢ |

Records per page:  25                                     Records: 1 - 1 of 1 - Pages:  ◄◄ ◄ 1 ► ►►

**Scheduled Liabilities**

| Schedule # | Creditor | Total | Status | C/U/U/D | Debtor | Transferred |
|---|---|---|---|---|---|---|
| | | | There are no records available. | | | |

Records per page:  25                                     Records: 0 - 0 of 0 - Pages:  ◄◄ ◄ 1 ► ►►

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.  Please consult an attorney for advice specifically relating to your legal matter.  Do not send confidential information without express consent of one of our case professionals.  The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Home   Login                    Privacy Notice Terms Of Use  April 10, 2012 @ 03:00:29 PM    Copyright ©2011 AlixPartners, LLP | (121)   AlixPartners

Home
News
Key Information
Documents
Claims
Contact Us
Login
Hotline
(800) 414-9607

https://www.mlcguctrust.com/ClaimRoom-ViewCreditorSummary.aspx?ClaimNumber=M...   4/10/2012



MLC General Unsecured Creditors Trust                          Exhibit 5       Page 1 of 1

**MOTORS LIQUIDATION COMPANY**
**GENERAL UNSECURED CREDITORS TRUST**                    WILMINGTON TRUST

CLAIMS ROOM
View Claim Details                                                    Claims Room → View Claim

| Creditor: MAYA H BROADY AKA KILLINGS | | Claim Number: | MLC-0070896 |
| Debtor: Motors Liquidation Company | | Date Filed: | Feb 12, 2011 |
| Current Claim Status: To Be Resolved | | View Claim Image: | Download |

| Original Filed Amount | Secured | Admin | Priority | Unsecured | Total |
|---|---|---|---|---|---|
| | $0.00 | $200,000.00 | $0.00 | $0.00 | $200,000.00 |
| Current Amount | | | | | |
| | $0.00 | $200,000.00 | $0.00 | $0.00 | $200,000.00 |

Home
News
Key Information
Documents
Claims
Contact Us
Login

Hotline
(800) 414-9607

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.   Please consult an attorney for advice specifically relating to your legal matter.   Do not send confidential information without express consent of one of our case professionals.   The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Home   Login                        Privacy Notice Terms Of Use  April 30, 2012 @ 01:29:34 PM         Copyright ©2011 AlixPartners, LLP  |  (121)    AlixPartners

https://www.mlcguctrust.com/ClaimRoom-ViewClaim.aspx?ClaimNumber=MLC-0070896    4/30/2012



MLC General Unsecured Creditors Trust          Exhibit 5          Page 1 of 1

MOTORS LIQUIDATION COMPANY
**GENERAL UNSECURED CREDITORS TRUST**          ◆ WILMINGTON
                                                   TRUST

Home
News                        CLAIMS ROOM
Key Information             View Claim Details                              Claims Room → View Claim
Documents
Claims          Creditor: MAYA H BROADY AKA KILLINGS      Claim Number:   MLC-0070925
Contact Us       Debtor: Motors Liquidation Company        Date Filed:   Feb 14, 2011
Login           Current Claim
                 Status: To Be Resolved          View Claim Image:   Download

| Original Filed Amount | Secured | Admin | Priority | Unsecured | Total |
|---|---|---|---|---|---|
| | $0.00 | $200,000.00 | $0.00 | $0.00 | $200,000.00 |
| Current Amount | $0.00 | $200,000.00 | $0.00 | $0.00 | $200,000.00 |

Hotline
(800) 414-9607

**Disclaimer:** This material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.   Please consult an attorney for advice specifically relating to your legal matter.   Do not send confidential information without express consent of one of our case professionals.   The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Home    Login          Privacy Notice Terms Of Use    March 15, 2012 @ 05:28:16    Copyright ©2011 AlixPartners,    **AlixPartners**
                                                           PM               LLP  | (61)

https://www.mlcguctrust.com/ClaimRoom-ViewClaim.aspx?ClaimNumber=MLC-00709...    3/15/2012

MLC General Unsecured Creditors Trust                    *Exhibits*              Page 1 of 1



MLC General Unsecured Creditors Trust                    *Exhibit 5*    Page 1 of 1



## MOTORS LIQUIDATION COMPANY
# GENERAL UNSECURED CREDITORS TRUST                    WILMINGTON TRUST

**Home**

**News**                    CLAIMS ROOM

**Key Information**         Claims Room

                           Search By: [Claim/Schedule #] includes: [70925]        [Search] [View All]
**Documents**              Displaying: Claim / Schedule Number contains 70925

**Claims**

**Contact Us**

**Login**

**Hotline**
**(800) 414-9607**

| Claim/Schedul # | Claim/Sch | Creditor Name | Date | Current Total | C/U/U/D | | | | Transfers | Image |
|---|---|---|---|---|---|---|---|---|---|---|
| MLC-0070925 | C | MAYA H BROADY AKA KILLINGS | 02/14/201 | $200,000.00 | ☐ | ☐ | ☐ | ☐ | ☐ | Download |
| MLC-1709250 | S | DOWDY, OSHAY F | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |
| MLC-1709251 | S | ANUFRIEV, KONSTANTIN | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |
| MLC-1709252 | S | ALLSTATE INSURANCE COMPANY | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |
| MLC-1709253 | S | DIETZEL, TODD | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |
| MLC-1709254 | S | LUCAS, FABIAN | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |
| MLC-1709255 | S | LUCAS, JESSICA | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |
| MLC-1709256 | S | ANTKOWIAK, THOMAS PETER | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |
| MLC-1709257 | S | BERNS, BILL C | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |
| MLC-1709258 | S | BURGER, ANNA J | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |
| MLC-1709259 | S | CUFF, GREG | | $0.00 | ☑ | ☑ | ☐ | ☑ | ☐ | |

Records per page: 20                                    Records: 1 - 11 of 11 - Pages:    1

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.  Please consult an attorney for advice specifically relating to your legal matter.  Do not send confidential information without express consent of one of our case professionals.   The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Home  Login                    Privacy Notice Terms Of Use April 30, 2012 @ 01:30:33 PM         Copyright ©2011 AlixPartners, LLP  | (121)  AlixPartners

https://www.mlcguctrust.com/ClaimsRoom.aspx                                    4/30/2012



MLC General Unsecured Creditors Trust                    Exhibt 5        Page 1 of 1

## MOTORS LIQUIDATION COMPANY
## GENERAL UNSECURED CREDITORS TRUST                    WILMINGTON TRUST

**CLAIMS ROOM**

**View Claim Details**                                            Claims Room → View Claim

| | | | | | |
|---|---|---|---|---|---|
| Creditor: MAYA H BROADY AKA KILLINGS | | | Claim Number: | MLC-0070925 | |
| Debtor: Motors Liquidation Company | | | Date Filed: | Feb 14, 2011 | |
| Current Claim Status: To Be Resolved | | | View Claim Image: | Download | |

| Original Filed Amount | Secured | Admin | Priority | Unsecured | Total |
|---|---|---|---|---|---|
| | $0.00 | $200,000.00 | $0.00 | $0.00 | $200,000.00 |
| Current Amount | | | | | |
| | $0.00 | $200,000.00 | $0.00 | $0.00 | $200,000.00 |

Hotline
(800) 414-9807

Home    Login

Disclaimer: The material and information disclosed on this site is for informational purposes only and is not intended to be legal advice or indicative of future performance.  Please consult an attorney for advice specifically relating to your legal matter.  Do not send confidential information without express consent of one of our case professionals.  The MLC General Unsecured Creditors Trust and AlixPartners are not responsible for and make no representations about the content, completeness, or accuracy of any other web sites that are accessible through this site.

Privacy Notice Terms Of Use April 30, 2012 @ 01:31:01 PM        Copyright ©2011 AlixPartners, LLP  |  (121)    AlixPartners

https://www.mlcguctrust.com/ClaimRoom-ViewClaim.aspx?ClaimNumber=MLC-0070925    4/30/2012

EXHIBIT 6

Exhibit 3A    Pg: 124

STATE OF NEW YORK: EXECUTIVE DEPARTMENT
STATE DIVISION OF HUMAN RIGHTS
(State Division of Human Rights on the Complaint of)

EXEC. LAW ART. 15
SDHR COMPLAINT NO:

MAYA B. KILLINGS                          Complainant

        - against -

GENERAL MOTORS CORPORATION,
ROCHESTER PRODUCTS DIVISION               Respondents
and Max E. Rockefellow

TITLE VII
EEOC CHARGE NO:

I,  Maya B. Killings
Residing at  238 Sawyer Street, Rochester, NY 14619
Tel. No.  716-436-3662         charge the above named respondent(s)
whose address(es) is(are)  1000 Lexington Avenue, Rochester, NY 14606
TELEPHONE:  716-254-5050
with an unlawful discriminatory practice relating to  EMPLOYMENT
in violation of Article 15 of the Executive
Law of the State of New York (Human Rights Law) on or about
June 1987 & continuing       because of Race (XX)  Color (XX)
National Origin ( )  Creed ( )  Age ( )  Sex ( )  Disability (X)
Marital Status ( )  Arrest Record(s) ( )  Criminal Conviction(s) ( )
Retaliation (XX)

        The particulars are:

        (1)  I am Black.  I believe that because of this, I am
being denied equal terms, conditions and privileges of employment
by the respondent.

        (2)  I have been employed by the respondent for approximately
3½-years.  My present position is that of Secretary.  My immediate
supervisor is Max E. Rockafellow, Superintendent.  I believe that
I have always been a satisfactory employee based on my performance
appraisals and attendance.

        (3)  Beginning in or about June 1987, Mr. Rockafellow began
treating me in a disparate manner when compared to the treatment
he afforded to my non-Black co-workers.  He deliberately spoke to
me in a loud manner in front of my co-workers; attempted to belittle
me in front of others; was very critical of me in front of others;
led me to believe that he was under the impression that I falsified
overtime on my timecards; and on information and belief, did
not give me the same respect he gave to non-Black employees under
his supervision.  Mr. Rockafellow denied that he had accused me of
falsifying timecards.  Because of the way I was being treated, I
put my concerns into writing and sent them to Ronald Kimbrew,
EEO Officer.  Mr. Kimbrew acknowledged my memo and told me to be
very aggressive with Mr. Rockafellow and that if Mr. Rockafellow
persisted in treating me in that manner, I should go to his
boss, Denny Mead.

        MAINT.2(1of2)
        (2-78)

Exhibit 3A  Pg 2 of 3

(TITLE VII)                        SDHR COMPLAINT NO: _____

                                  EEOC CHARGE NO: _____

COMPLAINANT:    MAYA B. KILLINGS _____

RESPONDENT(S):  GENERAL MOTORS CORPORATION, ROCHESTER PRODUCTS

                DIVISION

     (4)  On December 15, 1987, Mr. Rockafellow asked me if I was
comfortable working with him and I said that I was.  I asked him
why he asked me that and he responded by saying he wasn't comfortable
working with me.  I asked him why and he just repeated that he
didn't feel comfortable working with me.

     (5)  On February 3, 1988, I went to see Denny Mead after
Mr. Rockafellow's discriminatory treatment towards me continued.
I explained to Mr. Mead what had been taking place and he,
Mr. Rockafellow, and I met at 3:00 P.M. to discuss these matters.
Mr. Mead reiterated what I had said, said Mr. Rockafellow and I
should work more closely together and he told Mr. Rockafellow
that he should watch what he said in front of other people and
to correct me in private.  Mr. Rockafellow agreed that he would
work more closely with me.

     (6)  Approximately 1-week later Mr. Rockafellow began taking
my work away from me and giving it to Joyce Mager, who is white
and who is a Grade 6 Supervisor.  Mr. Rockafellow also had his
subordinates take their work to other clerical people.  He
offered no explanation for doing this.  On information and belief,
Mr. Rockafellow was planning to move me out of his department.
There were times when I had little or no work to do.  Prior to
then my work had been backlogged and I was working overtime.

     (7)  On Friday, April 15, 1988, Mr. Rockafellow again told
me that he was not comfortable working with me.  He also asked
me if I would be interested in an efficiency promotion.  On
information and belief this was another indication of Mr. Rockafellow
not wanting to work with me.

     (8)  On information and belief, Mr. Rockafellow's comments
towards me and treatment of me when compared to his dealings with
non-Black employees shows clearly that he has discriminated against
me, as a Black person, because of my race and color.

RA:INT.2 (supplemental)
(8/85)

Exhibit 3A    A 378

(TITLE VII)                                    COMPLAINT  NO: _____

                              EEOC CHARGE  NO: _____

COMPLAINANT: _____ MAYA B. KILLINGS _____

RESPONDENT(S): ___ GENERAL MOTORS CORPORATION, ROCHESTER PRODUCTS __
                   DIVISION

          (9)  Based on the foregoing, I charge the respondent with
an unlawful discriminatory practice relating to employment
because of my race and color, in violation of Section 296 of the
New York State Human Rights Law.

          "I have not commenced any other civil or criminal action, nor
do I have an action pending before any administrative agency under
any other law of this state based upon this same unlawful discrim-
inatory practice."

          /XX/  I also charge the above-named respondent(s) with violating
Title VII of the Civil Rights Act of 1964, as amended (covers race,
color, creed, national origin, sex relating to employment) and
hereby authorize SDHR to accept this verified complaint on behalf
of EEOC subject to the statutory limitations contained in Title VII.

STATE OF NEW YORK        )            _____
COUNTY OF                ) ss:                Signature
                         )                 MAYA B. KILLINGS

 MAYA B. KILLINGS _____, being duly sworn, deposes and
say: that he/she is the complainant herein; that he/she has read
(or had read to him/her the foregoing complaint and knows the con-
tent thereof; that the same is true of his/her own knowledge except
as to the matters therein stated on information and belief; and
that as to those matters, he/she believes the same to be true.

Subscribed and sworn to before me
this   21st  day of  April       , 19 88      _____
                                                (Signature of Complainant)
BARBARA M. SIMS                                   MAYA B. KILLINGS
Notary Public, State of New York
Qualified in Erie County
My Commission Expires ...
RDS:me
RA: 1N547 (20of2)
(5/85)

Note:  There is no 4th page.  Only 1 of 3 pages



1-18-91 - 8:20 a.m.

Ad Gate

Exhibit 3A
Pg 1 of 2

Security guard illegally
searched my purse.
I informed him of
this. He said that
he was instructed to
check everything
including purses.
He also checked my
black hand bag.
Upon my arrival at
my desk around
8:37 I called
Security for Bill Gates.
His Sec. Carol answered.
Apparently Mr. Gates
(was at Decatur Rd)
Carol said he's suppose
to check bags only.
Not purses. I informed
her that it was illegal.
She said that she would
call him.



On my way to my desk, I asked
Rose Morris if her purse was
searched first to verify what
the Sec. Guard did. She said
"No" and that it is illegal.
I said I tried to tell the Sec
guard this. She said "that man
is going to bury Rose Morris
against this Co." I said I knew
I walked away (this happened the
second time when I talked w/ Rose Morris

First
Upon taking my daughter to Edison, searched
told he was alone, Upon my return
From Edison High School at 7:35
Tracy Gilmore, from Hourly Personnel,
was standing in the office with the
Security Guard. He observed as the
Sec. Guard checked bags, not
purses. This time, he didn't
check my purse.

Pg 2 of 2



Exhibit 3A

6-25.95

To Whom It May Concern,

This is to verify that Maya Broady asked me to move in her house, because she was taking a position in Syracuse New York. She mentioned to me about harrasement charges by her supervisior. She also told me other things her Supervisior said to her, that were inappropiate to her.

Victoria Sigu

Exhibit 5 6 Pg 1 g 5

# OSCAR SMUKLER

ATTORNEY AT LAW

1438 Hertel Avenue
Buffalo, New York  14216
716/ 838-5515

SANDRA H. ADAMS
Associate Counsel

FRED K. HEINLE
Legal Assistant

February 14, 1994

Forrest Cummings, Jr.
Regional Director
State of New York Executive Department
Division of Human Rights
One Monroe Square
259 Monroe Avenue, 3rd Floor
Rochester, New York  14607

Re:   Maya A. Broady vs. A.C. Rochester, Division of
General Motors Corporation
Case No. 6-E-DORS-92-4700382E

Dear Mr.Cummings:

The following, for your review, is complainant's response to respondent's "statement of facts":

Paragraph 2:  On 11/27/91, at approximately 9:15 A.M. when Superintendent Whiteside showed Ms. Broady the referenced cartoon, co-worker Jeffery Rath was present in the work area and did discuss the incident with Ms. Broady immediately after Mr. Whiteside returned to his office.  In addition to the cartoon, Ms. Broady had previously and repeatedly made Mr. Whiteside aware of sexist and harassing remarks which had been made to her by a co-worker named Neal Rath over a three week period during the summer of '91, including Neal Rath's suggestion to Ms. Broady that she have his baby.  Mr. Whiteside's response when informed of this objectionable behavior was simply, "That Neal is something else."

Paragraphs 3 and 4:  Ms. Broady had heard rumors as early as April 1991 that Mr. Whiteside planned to transfer her to another department.  On several occasions she questioned him about the truth of those rumors, which he denied.

Mr. Whiteside informed Ms. Broady of her transitional status on Tuesday, October 20, 1991, not December 1, 1991.

On 10/24/91, Ms. Broady met with personnel representative Karen Shed to discuss Ms. Broady's transitional assignment to the Security department.  At this time she again asked if there was any truth to the rumor that Mr. Whiteside was going to transfer her.  Ms. Shed responded, "The redeployment just came up in May [1991] and the two are not related."  Ms. Shed then told Ms. Broady that the position in the Security department was to be for six to eight months, possibly longer.  When Ms. Broady discussed this with Mr. Whitehead, he responded that personnel director Jesse Sellers had told him that the Security department position was supposed to be "permanent".

Between 10/91 and 1/92 the employees who had been designated "transitional" were given

Exhibit 6 Pg 295

new and conflicting information by Mr.Sellers on an almost weekly basis.  Although the transitional employees were told that people with least seniority were being placed in transitional status, there were transitional employees with 10-25 years seniority while other employees with only 3-8 years seniority were not selected to be "transitional".

Cynthia Van Meter did not "displace" Ms. Broady until April 1992.  Previous to that, Ms. Van Meter was covering the position of Judith Gell, personnel department, during Ms. Gell's sick leave.

Paragraph 5:  Edward Conover and Jeffrey Rath were present and within hearing distance at 11:10 A.M. on February 18, 1992 when Mr. Whiteside communicated information to Ms. Broady, in an open area, regarding her redeployment.  Approximately one hour later, Ms. Broady informed Mr. Sellers of Mr. Whiteside's unprofessional conduct.

Paragraph 6:  Ms. Broady received a letter from J.J. Powers, Area Personnel Director, dated March 5, 1992,  extending a job offer to the Syracuse branch office, such offer stating, "the effective date of the transfer would be as soon as possible, since our needs are immediate. However, the effective date is flexible and subject to final approval of you, your Division and Chevrolet as well."  On March 19, 1992, Ms. Broady contacted the Syracuse office and informed them of her decision to ACCEPT the offer, and a start date of April 16, 1992 was agreed upon. On April 2, 1992, J.J. Powers wrote Ms. Broady that, "It is our understanding that you are no longer available for redeployment on the previously agreed to effective date of April 16, 1992." Ms. Broady never communicated her alleged "non-availability" for redeployment to anyone.

Ms. Broady declined the Flint, Michigan position for four reasons: she accepted the Syracuse, NY position as it would allow her to remain closer to friends and family; her supervisor in Flint would have been the former supervisor who was the subject of the previous NYSDHR discrimination complaint; her physician advised her not to make the required two day interview at that time due to health problems; and finally, Ms. Broady had received threatening telephone calls relative to the Flint transfer, such calls having been reported to the Rochester Police and to Romulus McCoy, AC Rochester Plant Manager.

Paragraph 7:   Ms. Shed did not outline the three available options on March 1, 1992 as it was a Sunday.  From March 2 through March 6, 1992, Ms. Broady was on sick leave.  The subject meeting occured on March 9, 1992.

Paragraph 8:  Although formally communicated to employees as a "voluntary" program, External Opportunities Procedure (ie. resignation and outplacement) was by no means voluntary-- either Ms. Broady accepted one of the two transfers or she would be forced to resign.

Paragraph 9:  The employer's statement is basically accurate until the events of March 23rd. On March 24, 1992 Mr. Sellers did question Ms. Broady about her employment decision.  Ms. Broady responded that she had already communicated her decision to accept the Syracuse position to Ms. Shed on March 20, having left a note to that effect with Ms. Shed's secretary, Joanne McIwaine, at approximately 4:00 P.M.  Ms. Shed did discuss the content of the note with Ms.

Exhibit 6 Pg 395

Broady later that afternoon.  Ms. Broady repeated to Mr. Sellers that she had accepted the position in Syracuse on March 19, 1992 and had communicated same to Ms. Shed on March 20, 1992. The balance of Paragraph 9 of employer's response is a fabrication.

Paragraph 10:  While no one, including Ms. Broady's three doctors, knew in March and early April, 1992 that Ms. Broady actually had M.S., her employer did know that she was suffering from pain and numbness to her right arm and the right side of her face and neck.  Ms. Broady had incorrectly assumed that this was the result of a root canal performed approximately eight months earlier. On February 26, 1992 Ms. Broady made Messrs. Sellers and Whiteside and Ms. Shed aware that her medical condition prevented her attending a two day interview in Flint, Michigan.

The employer was well aware of lost time due to illness.  Ms. Broady's attendance record during the instant flare-up of MS was as follows:

| | |
|---|---|
| 2/27-3/4/92 | absent due to illness |
| 3/5 | worked |
| 3/6 | absent due to illness |
| 3/9 | worked |
| 3/10-13 | absent due to illness |
| 3/16-26 | worked |
| 3/27 | 1/2 day vacation; MD app't - placed on work restriction til end of April |
| 3/30-4/10 | absent due to illness |
| 4/13 | returned to work but went home sick |
| 4/14 | absent due to illness |
| 4/15 | mandated to return to work or lose job; worked; effective date of termination |

On March 27, Ms. Broady contacted the benefits office on Lexington Avenue to request a disability form.  (Ms. Broady also advised Mr. Sellers by telephone on that date of her work restriction and mailed him a copy of the physician note on 3/30/92.  She gave additional copies to Ms. Shed on 4/13 and the GM physician, Dr. Morton on 4/15.).  After the form was mailed to her, Ms. Broady completed it and submitted it to one of her physicians to complete.  The physician returned the disability form to the employer some time prior to April 8, 1992.

Ms. Broady first sought medical treatment in August 1991 for her condition.  Her physician, Joseph Marino, M.D. referred her to Louis Medved, M.D. for a neurological evaluation on March 4, 1992. On March 17, 1992, Dr. Medved prescribed a six week course of physical therapy, and on March 27, 1992 he restricted her from working until the end of April 1992, at which time he would reevaluate her ability to return to work.

As Ms.Broady had been scheduled for vacation, this sick leave did not begin until March 30, 1992.  Catharine Wheatley contacted Ms.Broady on either 4/1 or 4/2 to advise her that an appointment had been scheduled for her to see the "Independent Medical Observer", Dr. Pette, on April 6, 1992.  Ms. Wheatley stated that the appointment had been arranged at the request of Mr. Sellers.  When Ms. Broady met with Dr. Pette, he expressed surprise that she had been sent for an evaluation so early in the current sick leave.  When Ms. Broady repeated the conversation to Mr.

Exhibit 6  pg. 425

Sellers on April 13, 1992, he replied, "|Dr. Pette| is not paid to give you any information; he is paid to do what we tell him."

After learning that Dr. Pette had determined that she was medically fit to return to work, Ms. Broady wrote him requesting that he forward a copy of the medical findings to her physician. This request has never been honored.

Ms. Broady is permanently and totally disabled due to MS and is currently receiving SSD payments.

Paragraph 11:  While Ms. Broady received the telegram mandating her return to work on April 13, 1992, she had already returned before any attempted delivery of the registered letter (which itself was dated April 13.)

Ms. Broady returned to work on April 13 as instructed, and met with Mr. Sellers early that morning.  Mr. Sellers' did not inform Ms. Broady of the results of Dr. Pette's evaluation until that time.  The telegram did not mention it; the Post Office had not yet attempted to deliver the letter dated April 13, 1992.  Ms. Broady did supply Mr. Sellers with her new number on 4/13/92, said number having been changed due to the harassing calls she had received relative to the Flint transfer.

When Ms. Broady learned of the evaluation result, she immediately requested from Mr. Sellers a disability leave to continue until the end of April, or in the alternative use of her vacation time, in order that she might comply with her doctor's instructions.  Mr. Sellers told Ms. Broady that he would have to check with Mr. McCoy before granting either of those requests, but would let her know later.  Ms. Broady then went home ill.  Not having heard from him, Ms. Broady telephoned Mr. Sellers late that same afternoon and was informed that Mr. McCoy had denied both the requests for disability leave and vacation.

Mr. Sellers then told her that the Syracuse job offer had been rescinded and she now had only two options: the Flint, Michigan position (which she had already turned down) or the External Opportunities Procedure (forced resignation.)

Paragraph 12:  While Ms. Broady had been given EOP papers on March 9, 1992, she had no reason to consult with counsel about this option as she thought she was transferring to Syracuse.  Still seriously ill on April 15, 1992, Ms. Broady again attempted to return to work and was coerced into signing the EOP papers (effective date 4/15/92) or be fired, during a very hostile meeting with Ms. Shed in which Ms. Shed denied ever being advised of Ms. Broady's acceptance of the Syracuse position, or GM's receipt of any medical information regarding Ms. Broady's medical restrictions.

Because Mr. Sellers was concerned about a possible last name confusion on the first EOP form, he instructed Ms. Broady to return to GM on 4/16 to sign a new form.

Paragraph 13:  The employer knowingly and willfully discriminated against Ms. Broady as

Exhibit 6  Pg 5 of 5

to the terms and conditions of her employment on the stated grounds, including the grossly negligent determination that Ms. Broady was medically able to return to work (despite her serious illness and the instructions of her specialist).  The employer has continued to prevent Ms. Broady from collecting Extended Disability Coverage for Health Care, claiming that they never received an annual renewal form for 1992, said form having been submitted 10/91, and despite the fact that the required payroll deductions for said coverage were made quarterly in 1992.

Ms. Broady requests retroactive payments which would have been due her under the Extended Disability Coverage program, together with an amount fully commensable with the severe emotional distress caused by the employer's tortious and discriminatory conduct.

Very truly yours,

*Sandra H. Adams*

SANDRA H. ADAMS

cc:  Maya Broady



Exhibit #6

Documentation of ILLness
and time absent

The employer was well aware of lost time due to illness.  Ms. Broady's attendance record during the instant flare-up of MS was as follows:

| Date | |
|---|---|
| 2/27-3/4/92 | absent due to illness |
| 3/5 | worked |
| 3/6 | absent due to illness |
| 3/9 | worked |
| 3/10-13 | absent due to illness |
| 3/16-26 | worked |
| 3/27 | 1/2 day vacation; MD app't - placed on work restriction til end of April |
| 3/30-4/10 | absent due to illness |
| 4/13 | returned to work but went home sick |
| 4/14 | absent due to illness   worked |
| 4/15 | mandated to return to work or lose job; worked; effective date of termination |





EXHIBIT 7



# While You Are Disabled

If you become disabled and are unable to work, you may be approved for a disability leave of absence. To be granted a disability leave, you must furnish medical evidence satisfactory to GM that you are unable to perform your job responsibilities as a result of disability.

In the usual case, you will continue to receive your regular salary for the first week of your disability. Thereafter, while you remain disabled and furnish medical evidence satisfactory to GM, you may receive salary continuation and sickness and accident benefits up to 12 months. Extended disability benefits may be payable thereafter. Social Security Disability Insurance Benefits also may become payable.

If you are totally and permanently disabled, monthly benefits also may be payable to you from the Life and Disability Benefits Program and the Retirement Program. In addition, you may be eligible to receive a distribution of your account, if any, under the Savings-Stock Purchase Program.

If you lose a body member, or your eyesight, through accidental means, additional benefits may be payable under your extra accident insurance and under the Personal Accident Insurance program.

## SICKNESS AND ACCIDENT BENEFITS

### For Employes in Classified Salaried Positions

#### You Are Covered . . .

for sickness and accident benefits on the first day of the sixth month following the month in which you commence working with GM. If you are not at work on the day your coverage otherwise would start, coverage commences on the day you return to work.

#### While You Are Unable to Work . . .

because of sickness or injury and you are under the care of a doctor, sickness and accident benefits may be payable for as long as 12 months. Sickness and accident benefits also may be payable if you are (1) disabled from surgery for sterilization, or (2) hospitalized for testing to determine your suitability to be a donor for an organ or tissue transplant.

#### To Receive Sickness and Accident Benefits . . .

you must give written notice of any sickness or injury within 20 days after the onset of disability.

#### Sickness and Accident Benefits Begin . . .

after a 7-day waiting period, during which your salary may be continued.

#### Monthly Benefit Amounts . . .

are determined by your monthly base salary. Base salary, for purposes of sickness and accident benefits, includes the premium for necessary continuous 7-day operations, but does not include overtime, night shift premium, or any other payments.

Benefits generally are payable on your regular payday. These benefits are supplemented by salary continuation, as shown in the table on page 33.

Your monthly benefit amount is equal to 75% of your monthly base salary for periods of disability commencing after you attain one year's length of service. Your monthly benefit amount is equal to 60% of your monthly base salary for periods of disability commencing prior to your attainment of one year's length of service.

#### Sickness and Accident Benefits Are Payable . . .

for a period based on your (1) GM length of service, or (2) years of participation under the Life and Disability Benefits Program, if greater (see page 68).

For each month of service, you may receive one monthly benefit, up to a total of 12 monthly benefits.

31

Exhibit 7 pg 1 92

# ADDITIONAL INSURANCE BENEFITS — FOR ACCIDENTAL INJURY

## Your Extra Accident Insurance . . .

is equal to one-half of your basic life insurance (as described on page 57). It provides a lump-sum payment of one-half of your extra accident insurance for bodily injury (severance of a hand at or above the wrist joint, or a foot at or above the ankle joint, or the permanent loss of the sight of an eye) by accidental means. Your full extra accident insurance may be paid to you if you should suffer two or more such losses. Extra accident insurance benefits are payable whether you are injured on or off the job. For benefits to be payable, the loss must occur within two years of the accident, and cannot be due to disease, self-inflicted injury or any act of war.

## To Apply for Extra Accident Insurance Benefits . . .

complete a claim form provided by GM for that purpose and return it to the office which administers your life insurance.

## Personal Accident Insurance . . .

also may provide a lump-sum payment for loss of body members, hearing, speech or eyesight, as the result of an accident. Detailed information and enrollment cards are contained in the booklet, "Personal Accident Insurance".

# OTHER BENEFIT PROGRAM COVERAGES WHILE ON DISABILITY LEAVE

## Health Care Coverages

Your health care coverages, in effect when you go on disability leave, will continue to be provided while you are on an approved disability leave and you are totally and continuously disabled.

You may continue your Comprehensive Medical Expense Program (CMEP) coverage, by paying the usual monthly employe contribution, for as long as your basic coverages remain in effect.

## Savings-Stock Purchase Program

You may continue regular monthly savings, up to one year, while you are on an approved disability leave and while you continue to receive salary continuation payments.

GM matching contributions continue to vest while you remain on disability leave.

## Life and Disability Benefit Coverages

Basic life, extra accident, survivor income benefit, sickness and accident, and extended disability benefit coverages will be continued at no cost to you:

- for any period you are entitled to receive sickness and accident benefits or salary

continuation payments while you are totally disabled;

- and thereafter, while you are totally and continuously disabled and remain on an approved disability leave, but not to exceed a period equal to your years of participation (see page 68) as of the first day of disability.

Also, in the event your disability leave is cancelled because the period of the leave equaled your length of service, such coverages may be continued while you are entitled to receive monthly extended disability benefits. GM will pay the full cost of your coverages during these periods.

If your disability leave is canceled because you recovered, and you again become totally disabled within three working days of the date your leave was canceled, so as to be unable to work, all coverages to which you were entitled will be continued. GM will pay the full cost of your coverages while you remain totally disabled. However, coverage cannot continue beyond the period equal to your years of participation as of your first day of disability.

You will need to pay the required monthly contributions to continue optional and dependent life insurance while your basic life insurance remains in force.

36

## DISABILITY INCOME

### Monthly Payments

If you become disabled, you may be eligible to receive salary continuation and/or disability benefits of

**$2,130 PER MONTH FOR 13 WEEKS AND**
**$1,598 PER MONTH FOR THE NEXT 60 WEEKS.**

If you remain disabled, you may be eligible for continuing disability benefits from several sources, totaling **$1,278** per month to age **41**. Thereafter, you may be eligible for continuing Social Security benefits up to **$1,110** per month plus GM retirement* benefits of per month payable for life.

In addition, if you have a dependent spouse and/or one or more children, they could receive up to **NOT MARRIED** per month from Social Security.

*Retirement benefits are shown only for employes with ten or more years of credited service.

## SURVIVOR BENEFITS

In the event of your death while employed by GM, the following payments are available to your designated beneficiary:

### Monthly Payments

**From the Life and Disability Program*:**
For up to 24 months, $400 in Survivor Income Benefit Insurance (SIBI) may be payable to an eligible survivor ($225 if certain Social Security benefits are payable). After 24 months, your spouse 1) who, upon your death, was at least age 45, or 2) whose age, when added to your years of participation totals 55 or more, could be eligible for up to $400 a month until the earlier of (1) age 62, (2) remarriage, or (3) entitlement to unreduced Social Security because of your death. (Refer to note on back.)

**From the Retirement Program*:**
A noncontributory benefit of **NOT MARRIED** for your spouse's lifetime. Contributory benefits of **NOT MARRIED** would begin immediately for your spouse's lifetime in lieu of return of your contributions.

**From Social Security:**
Social Security could pay a surviving spouse and/or children as much as **NOT MARRIED**

Contributory Personal Accident Insurance, which provides additional coverage for death, dismemberment, and certain other conditions resulting from bodily injury sustained in an accident, also is available to you.

*Assumes you have been married at least one year and your spouse is the same age as you.

### Available Payments

| | |
|---|---|
| $51,200 | Basic Life Insurance |
| $15,000 | Optional Life Insurance |
| $14,707 | Savings-Stock Purchase Program |
| $75 | Retirement Program contributions |
| $255 | Social Security death payment |
| **$81,237** | **Total** |
| | Plus, if death is accidental: |
| $25,600 | -Extra Accident Insurance |
| $25,600 | -Extra Accident Insurance |
| | (while on company business) |

### Plus

GM will pay for health care coverages for your spouse and eligible children if you die while actively employed, provided you:
1) Had in effect the Retirement Program contributory surviving spouse coverage and had 10 or more years of credited service, or
2) Were eligible to retire voluntarily (except between ages 55 and 60 when your age and credited service total less than 85).

*Dependent Life Insurance (Employe Option):*
**$40,000** Spouse
**$8,000** Each child

**INCOME SECURITY**

**IF YOU ARE LAID OFF, YOU MAY BE ELIGIBLE FOR 12 SEMI-MONTHLY PAYMENTS OF $798.75 UNDER THE LAYOFF BENEFIT PLAN. THEREAFTER, YOU MAY BE ELIGIBLE FOR 12 SEMI-MONTHLY PAYMENTS OF $639.00. THESE PAYMENTS WILL BE REDUCED BY UNEMPLOYMENT COMPENSATION TO WHICH YOU ARE ENTITLED, STATE DISABILITY BENEFITS AND ANY GM PAY RECEIVED, AND 75% OF ANY EARNINGS RECEIVED FROM ANOTHER EMPLOYER OR FROM SELF-EMPLOYMENT.**

EXHIBIT 8



# MEMORANDUM

Date: 02/24/92

☐ Action Required

Subject: FLINT, MICHIGAN INTERVIEW INFORMATION

☐ Information Only

From: K. SHED

To: M. BROADY                              cc:  J. Sellers
                                                J. Whiteside

Per our phone conversation on this date, travel arrangements
have been made on your behalf to accomodate a one-day visit
to Flint, MI for the purpose of redeployment interviews.
Based upon the experience of others, we believe you would
greatly benefit from two full working days in the Flint area.
This would provide you with a more relaxed visit in which to
fully assess the real estate market.  You indicated, however,
that personal circumstances conflict with overnight travel.

You are encouraged to make every effort to reconsider this
offer and make the appropriate arrangements to accomodate a
two day visit to Flint as this opportunity will not avail
itself again outside of the formal relocation process.  You
will be required to contact me no later than Monday, March 2,
1992 if you are able to arrange for a two-day visit.
Otherwise, your current travel arrangements for March 6,
1992 are as follows:

| AIRLINE | FLIGHT # | DEPARTURE TIME | ARRIVAL TIME |
|---------|----------|----------------|--------------|
| Skyways | 1081 | 8:00 AM (ROCH) | 9:30 AM (FLINT) |
| Skyways | 1086 | 4:50 PM (FLINT) | 6:10 PM (ROCH) |

Airline tickets and itinerary will be available for you to
pick up on Friday, February 28, 1992 at the TTM office in the
Administration Building.  You may make a request for travel
advance funds through the cashier if necessary.  Flint
representatives will provide necessary transportation between
the Flint airport and work facility on Friday, March 6, 1992.
Be sure to complete an official expense report at the
conclusion of your visit.

I have requested an interview schedule and will forward it to
you as soon as it is available.  You will also be receiving
an informational packet of real estate information for
Flint and surrounding areas.  Once you have reviewed this
information, I will need to know specific data regarding your
preference for types of housing, price ranges, and any other
items which may be helpful to a real estate agent.  A local
agent will use this information to schedule appointments for
available real estate on March 6, 1992.  You may reach me at
extension 7419 with any questions.



**AC Rochester**

# MEMORANDUM

Date:     February 26, 1992

☐ Action Required

Subject:   **INTERVIEW IN FLINT MICHIGAN ON 3/6/92**

☐ Information Only

From:
       Maya Broady *Maya Broady*

To:
       Karen Shed


As I indicated to you over the telephone on Monday, February
24, 1992, I will not be able to stay over at Flint based on
personal reasons.   I also informed you that I am presently
attending college 3 days a week and test are given weekly.

Jesse Seller as well as Jim Whiteside are aware of my medical
problems that I have been experiencing for the past six
months or more.

Based upon the reasons listed above and other personal
reasons, I will not be able to spend the night over in Flint.


cc:   J. Whiteside
      J. Sellers
      T. Stasunas
      W. Warren
      J. Tannehill



Central Office
Chevrolet Motor Division
General Motors Corporation
30007 Van Dyke Avenue, Warren, Michigan 48090-9065

April 2, 1992

Ms. Maya Broady
238 Sawyer Street
Rochester, New York  14619

Dear Maya:

It is our understanding that you are no longer available for
redeployment on the previously agreed to effective date of
April 16, 1992.

As you will recall in our job offer letter to you dated
March 5, 1992, I indicated that our needs were immediate.  You
will also recall that all parties agreed to an April 16, 1992
effective date.

Accordingly, this letter is to advise that our job offer is
withdrawn.

Should you be available for redeployment at a future date and
should you remain interested in Chevrolet, please advise my office
immediately so that you may be given consideration for future
opportunities should they become available.

Very truly yours,

J. J. Powers
Area Personnel Director

c:  K. Shedd
    J. N. Corbett

Date of
this letter _____ 19 ___

**YOU WERE EXAMINED ON:**

58001 W PL

Date   APRIL 6,                    19 92     XX _____

Time   2:00   ☐ A.M. ☒ P.M.  WITH:

Examining Physician/Clinic:                          To:

DR. PETTE                                    NAYA BROADY
220 ALEXANDER ST.                            238 SAWYER ST.
ROCHESTER, NY  14607                         ROCHESTER, NY  14619

☐ The medical examiner, named above, indicated you were found to be unable to work at the time of the
   above examination.

☐ The medical examiner, named above, indicated you were found to be unable to work at the time of the
   above examination.  According to the most recent medical information received from your physician,
   you will be able to return to work on or before _____ .  Therefore, Sickness
   and Accident benefits will continue through _____ .  (However, if you are
   scheduled for a medical examination prior to this date, benefits may be suspended sooner, depending
   on the results of the examination.)

☐ The medical examiner, named above, indicated you were found to be able to work at the time of the
   above examination.  Generally, benefits are not payable after you have been found to be able to work.
   Accordingly, your claim has been referred to Metropolitan Life for review.  You will be hearing from us
   in the near future.

☒ The medical examiner, named above, indicated you were found to be able to work at the time of the
   above examination.  Generally, benefits are not payable after you have been found to be able to work.
   Accordingly, your claim has been referred to Metropolitan Life for review.  You will be hearing from us
   in the near future.  Meanwhile, you will receive a check for benefits through    4-9-92    .

**If you have any questions regarding your claim or this examination, contact the office which
administers your disability benefits.**



**WESTERN UNION | TELEGRAM**

```
IPM20NY
1-005969A101 04/10/92
ICS IPMRYNJ RNO
ZCZC 00601 RENO NV 04-10 0134P PDT RYNI
ICS IPM20NY
BT


1-004037S101 04/10/92
ICS IPMRNCZ CSP
  7166477581 FRS TDRN RODCHESTER NY 22 04-10 0335P EST
PMS MRS MAYA BROADY RPT DLY MGM, DLR
238 SAWYER ST
RODCHESTER NY 14619

IT IS IMPERATIVE THAT YOU REPORT FOR WORK ON APRIL 13, 1992 AT 800AM
AND SEE EITHER JESSE SELLERS OR KAREN SHED.

  JESSE SELLERS
  PO BOX-1790
  RODCHESTER NY 14692

1535 EST
```

S-8

Employe _Maya Broady_    Date _4-13-92_

The Sickness and Accident coverage provided under the General Motors
Insurance Program requires that you be under the care and treatment of
a physician during the period you claim disability benefits.

The medical information submitted indicates that you were first treated
by a physician on _4-8-92_    and therefore payment must be made
from this date.

If you received prior medical treatment we will be glad to re-evaluate your
claim provided you present medical certification of treatment and disability.

Insurance Office

G 11461-8-GM

---

Employe _Maya Broady_    Date 4-10-92
Social Security Number _10244/4038_

Please contact the General Motors Benefit Center ( _1 800 553-5628_ ) (immediately) regarding:
                                                    _CX 6883_

☒ Your claim for Sickness & Accident Benefits

Contact with a new phone number. Also your exam
on 4-6-92 was an able exam. Your benefits have
been suspended. Report for immed. rehis thru medical
dept. or call us on the personal dept.
                                    General Motors Benefit Center
                                            Catherine

G.175-1 GMBC  (12-86)  Printed in U.S.A.



Exhibit 8
pg 1 of 2

4-13-92

TO: Jesse Jefferson
From: Maya Broady
Suby: Vacation Request / Medical Leave

Jesse, this is a request to take
the remainder of my vacation I
have to cover my absence
for the next few weeks effective
4-13-92 since Gm is denying
my benefits in light of a medical
report they received from Dr. Pete,
Gm's independent physician.

This vacation is being requested
in order that I can complete my
therapy, even though my neurologist,
Dr. Medved placed me in
restriction until the end of
April, 1992. Copy attached.

As indicated to you my medical doctor
also agreed that the therapy should
be completed.

Dr. Medved will be contacting you or
Karen Shed in light of Dr. Pete's
medical exam on 4/26/92.

I have written to Dr. Pete
requesting copies of his evaluation.



Exhibit 8  Pg 2 of 2

It is imperative that you
contact me this morning before
12:00 noon at 436+045 on
Tuesday, April 14, 1992, and
inform me of your decision to
approve this needed time off,
since you denied my medical leave on
4-13-92, 4:30 PM.

Sincerely,

Maya Broady

Exhibit 8


**AC Rochester**

P.O. Box 1790
Rochester, New York 14692-1790 USA

April 13, 1992

Ms. Maya Broady
238 Sawyer Street
Rochester, NY 14619

Dear Maya:

This correspondence serves to officially notify you of the results of your Independent Medical Observer (IMO) examination occurring on Monday April 6, 1992, in which it was determined that you are able to return to work.  This determination was communicated to our office on Thursday, April 9, 1992, by the National Benefit Center and also to you by registered mail on April 10, 1992.  <u>Sickness and Accident Benefits have been deemed to be payable through April 9, 1992 only.</u>  Our inability to make timely contact with you via telephone was due to the fact that you changed your phone number to an unlisted number in the past several weeks, and failed to notify the Personnel Office until April 13, 1992.

Your attention is directed to the following:

- As indicated in the preceding paragraph, it has been determined by the IMO and concurred with by the Plant Medical Physician, that you were found able to return to work effective April 7, 1992.

- Should you elect not to report to work on Tuesday, April 14, 1992, as a result of advice from your personal physician, you will receive no compensation until such time that you return to work.

Be advised that the compensation you are about to receive effective April 15, 1992 anticipates that you will be at work on April 14 and April 15, 1992.  If you do <u>not</u> report for work on those days, subsequent compensation that you receive from GM may incorporate an appropriate adjustment.

This information was verbally communicated to you by telephone at approximately 4:30 p.m. on Monday, April 13, 1992.

Sincerely,

Jesse C. Sellers
Plant Personnel Director
Rochester Operations



*Exhibit 8*



**AC Rochester**

P.O. Box 1790
Rochester, New York 14692-1790 USA

April 15, 1992

Ms. Maya Broady
238 Sawyer Street
Rochester, NY  14619

Dear Ms. Broady:

The purpose of this correspondence is to ascertain your decision on
continuing your GM career by accepting relocation to a bonafide job
opportunity in Flint, Michigan, or accepting a special separation
through the External Opportunities Procedure (EOP).

In view of the fact that the original time limits for both of these
options have expired, and you have been provided sufficient
opportunity to consider your decision, I regret to inform you that
the time to render this decision cannot be delayed further.

Therefore, you are advised that I am expecting you to inform Karen
Shed or myself of your decision no later than 4:30 p.m. this date.
Failure to contact either of us, or refusal to respond with a
decision will constitute a refusal of both options.  As such, you
will be separated from GM as a "voluntary quit" effective April 16,
1992.

Sincerely,

Jesse C. Sellers
Plant Personnel Director
Rochester Operations

sellers\maya.v2



Exhibit 8

AC Rochester

4-15-92   9:25 am

Maya:

Please call me immediately upon return from your therapy this morning.

Karen Shed
xt. 7419

EXHIBIT 9

LOUIS H. MEDVED, M.D.
30 ERIE CANAL DRIVE
SUITE G
ROCHESTER, NEW YORK 14626

TELEPHONE (716) 227-3950

March 9, 1992

Joseph Marino, M.D.                          RE:  BROADY, Maya
1650 Elmwood Avenue
Rochester, New York 14620

Dear Dr. Marino:

I received a telephone call from Mrs. Broady today complaining of increased pain in the right side of her neck going down her back.  She had been taking the Flexeril as well as Feldene without much relief.

I have not yet received the report from her C-spine MRI scan, although according to a telephone report, she has a small focal disc protrusion at C5-6 centrally. She is due to return for EMG studies in the near future.

By her report, I suspect a strong musculoskeletal component to her neck and back pain.  I have given her a limited prescription for Darvocet N 100 (1 tab. q4 hours prn severe neck pain, maximum daily dose of 6, dispense 50, 0 refills) for symptomatic treatment.  I will be in touch with you after I am able to review her MRI personally as well as complete her electrodiagnostic studies.

Sincerely yours,

Louis H. Medved, M.D.

LHM/njm



**LOUIS H. MEDVED, M.D.**
NEUROLOGY & NEUROELECTROMYOGRAPHY
30 ERIE CANAL DRIVE
ROCHESTER, NY 14626

(716) 227-3950

DEA # AM 2907117
LIC. # 158941

NAME Maya Bready                AGE _____

ADDRESS _____    DATE 3/27/92

Rx

Ms. Bready is restricted
from work until she
completes physical therapy at
end of April. I will re-
evaluate her at that time

_____ MD

THIS PRESCRIPTION WILL BE FILLED GENERICALLY
UNLESS PRESCRIBER WRITES 'd a w' IN THE BOX BELOW

Refill _____ times

NR ____ Label ____

Dispense As Written

NE5010932

LOUIS H. MEDVED, M.D.
30 ERIE CANAL DRIVE
SUITE G
ROCHESTER, NEW YORK 14626
TELEPHONE (716) 227-3950

March 28, 1992

Joseph Marino, M.D.                          RE:  BROADY, Maya
1650 Elmwood Avenue
Rochester, New York 14620

Dear Dr. Marino:

I received a phone call today from Mrs. Broady. Her neck pain has increased,
with radiation to the occipital region of her head.  She continues to complain
of pain down the arm.  She has been to 3 physical therapy sessions.  She was
taking  classes and carrying her books was exacerbating the situation.  Her
teacher's have asked her to stay out of school until she is better.  In addition,
she works as a secretary and she finds that typing  and the use of her right
arm exacerbates her pain.  Therefore, I am medically restricting her until
she completes physical therapy at the end of April.  She has an appointment
to see me after that time and I will re-evaluate her situation.  She will
continue on the Darvocet and anti-inflammatory medications prn.

Sincerely yours,

Louis H. Medved, M.D.

LHM/njm



UNIVERSITY HEALTH SERVICE

MEDICAL CARE SECTION

October 8, 1992

Edward M. Braiman
Atorney at Law
45 Exchange Street
Rochester NY 14614

Re:  Maya Broady
     Social Security Claim ~~███~~-4038

Dear Mr. Braiman:

    Please refer to my letter of September 10th for the answers
to most of your questions.  I realize that you have added a
couple more questions for me at the bottom of your letter dated
September 22nd.

    After the evaluation by the neurologist in the Multiple
Sclerosis Clinic at Strong Memorial Hospital, it does appear that
Maya Broady has multiple sclerosis.  It is quite possible that
many of the symptoms that were felt to be cervical disc problems
were, in fact, secondary to multiple sclerosis.  It is difficult
at this time to go back those many months, many during which I
was not following her, and know for sure whether the early
symptoms thought to be cervical disc were, in fact, the MS.  I
suspect that most of her distress since August of 1991 has been
the multiple sclerosis.

    I am sure that Mrs. Broady's illness will continue.
Multiple sclerosis may have many patterns of presentation and
many patterns of disease progression.  It is unclear to me at
this time how her disease may progress.  During times when she is
in remission she may well be able to work.  Because she is a
secretarial/clerical worker, and because much of her problems
have been in the upper extremities and neck, she has been totally
disabled since April, 1992 because of pain.  I am unable to
predict how long the total disability will continue or how her
disease will progress.

    I hope that the above will be helpful to you.

                              Very truly yours,

                              Barbara L. Schuster, M.D.

BLS:jmk
cc:  David H. Mattson, M.D.
     Neurology Clinic

cc:  Mrs. Maya Broady

250 Crittenden Boulevard, Box 617
Rochester, New York 14642
(716) 275-2662

LOUIS H. MEDVED, M.D.
30 ERIE CANAL DRIVE
SUITE G
ROCHESTER, NEW YORK  14626
TELEPHONE (716) 227-3950

April 9, 1992

Joseph Marino, M.D.                          RE:  BROADY, Maya
1650 Elmwood Avenue                          Date of Visit:  4/8/92
Rochester, New York 14620

Dear Dr. Marino:

I saw Mrs. Broady today in follow-up for cervical strain/radiculopathy.
Because she needed to file for disability. she came in advance of her
scheduled appointment at the end of this month.  She is having some
benefit with physical therapy in terms of regaining strength and also
some pain reduction in the neck and arm.  She saw Dr. Pettee for an
independent medical examination.  His findings are not known.  She
did state that after his exam, her neck and arm pain flared up again,
but things have settled down with medication, physical therapy, and
a heating pad at home.

On examination, she has good strength in the right upper extremity
within the limits of her pain and her reflexes are symmetrical, being
grade 1+ in the biceps, triceps, and brachio-radialis muscles.  There
are no pinprick deficits that correspond to a particular dermatomal
pattern.  The remainder of her neurological examination is normal.

Mrs. Broady will continue with her current treatment.  She will stay
out of work until the end of the month at which time I will re-evaluate her.

The patient also mentioned to me some foot pain and paresthesias,
particularly on the right.  She states that a coworker ran over her
foot with a wheeled chair 2½ years ago, however, her pain and
paresthesias (affecting mainly the last 3 digits) developed only
a couple of months ago.  She also experiences some cold and tingling
senation in the left foot.  Again, her neurological examination relative
to the lower extremities is normal.  I would have a hard time linking
this foot pain to her neck problem, or to the incident 2½ years ago
when her symptoms have just begun only in the last couple of months.
I told Mrs. Broady that at some point we may do nerve conduction studies
to evaluate this, but at the present time, I would prefer to concentrate
on her main problem, namely that of her neck and right arm pain.

Thank you very much for allowing me to participate in Mrs. Broady's
care.

Sincerely yours,

Louis H. Medved, M.D.

LHM/ml

EXHIBIT 10

Exhibit 10
Pg 172

February 16, 1994

Ms. Maya A. Broady
238 Sawyer Street
Rochester, NY    14619

Workers Compensation Board
Disability Benefit Bureau
100 Broadway-Menands
Albany, New York    12241

TO WHOM IT MAY CONCERN:

I am requesting your help and assistance in obtaining my disa-
bility benefits from my former employer, General Motors Cor-
poration.  The carrier for General Motors is Metropolitan Life
Insurance Company.  Even though I am not presently employed by
General Motors Corporation, I was still under their employment
when I became permanently and totally disabled on April 15, 1992.
My disability is multiple sclerosis.  I was eventually diagnosed
in 8/92.

The carrier, Metroplitan Life Insurance, was forced to pay me
New York State Disability (Off-the-job), but has continued to
delay my claim for extended disability which I am entitled to
under General Motors Corporation.

The carrier, Metropolitan Life Ins, sent me disability forms two
times to be completed.  The first form was mailed directly to me
in 8/92, Exhibit #1 attached.  Since Metropolitan Life Ins. never
responded to the first form, I hired an attorney, and he was able
to get a 2nd disability form, Exhibit #2 attached.

Months later, Mr. Larry Rakowicz, Metropolitan Life Ins. Litigation
and Appeals Analyst (the carrier) informed one of the attornies
that I hired in August, 1992, that he needed some information on
the amount I would be getting for Social Security and if my benefits
were approved yet in order for him to effectively process my claim.

Still, after receiving all the information they requested, the
carrier, Metropolitan Life Ins. has continued to procrastinate
in processing my claim after I forwarded the necessary paperwork
to the attorney on 10/93, Exhibit #3 attached.

I contacted Mr. Larry Rakowicz (the person who is handling the claim
for Metropolitan Life Ins.) on November 8, 1993.  Mr. Rakowicz said
that my claim was being delayed "due to the problems they were having
with the hourly employees at General Motors (their contract and the
possibility of striking) and that I should hear from him after the
New Year."

I should note that my status, while employed at General Motors, was salaried, not hourly, therefore, the delay in processing my claim had nothing to do with me.

Metropolitan Life Ins. has continued to delay in processing my disability claim, and has failed to respond for over a year now their status to the claim.

It is my belief and feeling that the carrier, Metropolitan Life Ins. is DELIBERATELY PROCRASTINATING in processing this claim in order to HINDER me from receiving disability benefits which I am entitled to under the General Motors disability plan.

If you need to contact me, please call me at 716-328-0473.

Presently, I don't have an attorney.  I had to let the attorney go who claimed to be representing me effective 2/14/94. But, Ms. Sandra Adams, Attorney, who is presently representing me for something else, can be forwarded any paperwork.  Her address is as follows:

> Ms. Sandra Adams, Attorney
> 1438 Hertle Street
> Buffalo, NY   14216
>
> (716) 838-5515.

Thank you in advance for your assistance and cooperation.

Sincerely yours,

Ms. Maya A. Broady

STATE OF NEW YORK
**WORKERS' COMPENSATION BOARD**              *Exhibit 1D*

# NOTICE OF
## BOARD DECISION

| Case No. DB 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 | Date of Action Rej. 8/26/92 | Social Security Number 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 | Carrier Case No. (118) |
|---|---|---|---|

**Claimant**

Maya Broady
238 Sawyer Street
Rochester, NY  14619

**Employer**

AC Rochester
Division of G.M.
1000 Lexington Avenue
Rochester, NY 14692

Metropolitan Life Ins. Co.
GM S & A Claim
 Referral Unit
PO. Box 5164
Southfield, Mi. 48037-5264

METROPOLITAN LIFE INS.
ONE MADISON AVENUE
NEW YORK NY  10010

Opinion By:
Virginia Hauer
Joseph A. Tauriello
Thomas A. Dunne

PLEASE TAKE NOTICE THAT THE BOARD'S MEMORANDUM OF
DECISION IN THE ABOVE CLAIM IS PRINTED BELOW

## MEMORANDUM OF DECISION

The carrier objects to the Workers' Compensation Law Judge (hereinafter WCLJ) decision filed 12/4/92, finding that the claimant was entitled to disability benefits for the period from 4/10/92 to 5/12/92 at a $170.00 rate.  The carrier contends that the award is not proper as the claimant has already received disability benefits for the maximum period of 26 weeks from 5/13/92 to 11/11/92.  The carrier bases its contention on the trial calendar minutes for 12/3/92.

The trial calendar minutes for 12/3/92 reveal that the WCLJ awarded disability benefits for 26 weeks.  The carrier's representative stated that the awards should commence on 4/10/92.  The representative noted that the 26 weeks have already been paid.

Upon review of the whole record, in particular the trial calendar minutes for 12/3/92 indicating that the WCLJ awarded the claimant 26 weeks of disability benefits and that the disability benefits were paid by the carrier, the Board Panel finds that the claimant is entitled to 26 weeks of disability benefits commencing 5/13/92.

Accordingly, findings are made as indicated in the preceding paragraph. The WCLJ decision filed 12/4/92 is MODIFIED to rescind the awards and to reflect that the claimant was entitled to 26 weeks of disability benefits commencing on 5/13/92.  The carrier is to be credited for any benefits paid during the 26 week period commencing 5/13/92.  As so modified, the decision is AFFIRMED.  The case is closed.

All concur.

Virginia Hauer

Joseph A. Tauriello

Thomas A. Dunne

EXHIBIT 11

Exhibit 11
Pg 182

**WESTERN NEW YORK LAW CENTER**
OF
## Sheldon M. Markel and Associates, P.C.
**ATTORNEYS AT LAW**
43 COURT STREET • SUITE 1111
BUFFALO, NEW YORK 14202-3101
716-856-8004

SHELDON M. MARKEL*
HOWARD S. LIPMAN

CAROLYN M. HENRY
JOSEPH R. BERGEN
*ALSO ADMITTED IN TEXAS AND NEVADA

ROCHESTER OFFICE
TIMES SQUARE BUILDING
45 EXCHANGE BOULEVARD • SUITE
ROCHESTER, NEW YORK 14614-207
716-232-7600

PLEASE REPLY TO ROCHESTER OFFICE

May 17, 1993

Mr. Larry Rakowicz
Metropolitan Life Insurance Company
Sickness and Accident Claims
General Motors Division
660 New Center One
Detroit, Michigan 48202

RE:  Maya Broady
     Social Security Number:    ~~XXX-XX-XXXX~~
     Employer:                  ACR-Rochester
     Our File Number:           WCB 1014/92(R)

Dear Mr. Rakowicz:

I am in receipt of your letter dated May 3rd, 1993, advising that
your investigation is continuing and once again asking me for any
additional information that I believe should be part of the review.
Unfortunately, I do not know what exactly is part of your review
already.  Therefore, I will simply reiterate our position regarding
this matter with basic documentation and ask that if you require
additional information you narrow the scope of that request.

The claimant, Maya Broady, was employed with ACR-Rochester until
April 15th, 1992.  A copy of her last paycheck is enclosed for our
consideration.  Prior to her separation from this employment, Ms.
Broady was under disability due to her multiple sclerosis.  Her
treatments with her physician, Dr. Barbara L. Schuster, began on
April 3rd, 1992 and Dr. Schuster affirmed her disability beginning
April 13th, 1992 (a copy of the form submitted to the Worker's
Compensation Board Disabilities Benefits Bureau containing this
information is enclosed for your consideration.)  You will also
find enclosed a letter from Dr. Schuster, dated October 8th, 1992,
stating that Ms. Broady was in fact disabled since April of 1992.

At that time, Ms. Broady was also treating with a neurologist,
Dr. Louis H. Medved, who likewise determined that Ms. Broady was
disabled and restricted from work.  This restriction dated March
27th, 1992 and which extends to the end of April is enclosed for
your reference.





Exhibit 11, Pg 272

Mr. Larry Rakowicz
May 17, 1993
Page Two

Ultimately, it is our position that Ms. Broady was disabled at the
time that she left employment with ACR-Rochester on April 15th of
1992.  Enclosed are some of the documents in our possession which
support this position.

At this time, I must insist that you clarify for me the issues that

are still in dispute in Ms. Broady's case.  As I understand it, we
need only determine whether or not Ms. Broady was disabled at the
time that she left employment with ACR-Rochester.  I believe that
there is already ample documentation that this is, in fact, the
case.  I would appreciate knowing whether or not there is some
other issue in dispute.  I am of the opinion that entirely too much
time has passed to determine these simple issues and must ask that
you now render a determination in this case.  If I do not hear from
you by the end of this month, I must consider that this claim will
become the subject of litigation.

                              Very truly yours,

                              MARKEL & ASSOCIATES, P.C.


                    By: _____
                        THOMAS WINWARD, ESQ.

TW/jsc

Enclosures

*Exhibit*

## Sheldon M. Markel and Associates, P.C.
### Attorneys at Law
45 Exchange Street, Suite 713
Rochester, New York 14614

———

(716) 232-7600

Sheldon M. Markel
Howard S. Lipman
—
Carolyn M. Henry

August 18, 1993

Mr. Larry Rakowicz
MetLife
Sickness and Accident Claims
General Motors Division
660 New Center One
Detroit, Michigan 48202

        RE:  Maya Broady
             Social Security Number:   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
             Employer:                 ACR-Rochester
             Our File:                 WCB 1014-92(R)

Dear Mr. Rakowicz:

This is a follow-up to your correspondence of June 18th, 1993.
Unfortunately, as of yet, I have not received word on the Social
Security Disability Insurance application and Ms. Broady advises
that she will contact me as soon as a decision on this application
is rendered.

In the meantime, I would ask that you provide me with an update of
a review of her file, and whether or not I may be able to provide
any additional information.

I look forward to hearing from you soon.

                    Very truly yours,

                    MARKEL & ASSOCIATES, P.C.

                    By: _Thomas M. V. Winward_
                        THOMAS M. V. WINWARD, ESQ.

TMVW/jsc

EXHIBIT 12

Page 1 of 1

*Exhibit 12*

| general motors class action lawsuit | Search | Go to Page: http://law.taragana.net/archive/general-... | or Close Permalinks

Related: General Motors Parts · General Motors Recalls · General Motors Timeline

## The Legalizer

Legal news and analysis by the people, for the people…

« Menu Food Ready For Class Action Lawsuit Settlement With Pet Lovers
Pope Finally "Ashamed" of Pedophile Priests; Too Little Too Late? »

### General Motors Settles Class Action Lawsuit Over Coolant Dex-Cool

Angsuman Chakraborty
April 22nd, 2008

*6m General motors coolant Dex-Cool*

**Official GM Site**
Change at GM is Under Way. Visit Official Site to See How.
www.GMReinvention.com

**GM Recall Information**
Speak to a New York Attorney. Free case review. Call toll-free.
www.LemonAuto.com

**Zicam - Get the Facts**
Get the whole story here. The truth about Zicam!
www.zicam.com

The General Motors lawsuit over the use of the coolant Dex Cool, which may effect the 1995 and 2004 model. GM faced allegations like: (i) Dex-Cool in the vehicles listed in the Notice caused problems with the vehicles' engines or cooling systems, and (ii) that certain engine components, such as the nylon/silicone lower intake manifold gaskets installed in certain vehicles, among others. You are included in this proposed **settlement** if you own or lease or previously owned or leased any of the specified repairs related to the use of Dex-cool. Read below for details.

The **settlement** covers, intake manifold gasket failures, engine coolant sealing issues and sludge. However, the lawsuit is yet to be approved in the **court**. The settlement, covered by the lawsuit, covers the Group A, Group B and Group C vehicles. The lawsuit covers areas like replacement of failed nylon/silicone lower intake manifold gasket, repairs necessitated by engine coolant sealing among the other. Under the proposed **settlement**, GM will send cash reimbursements to class members who paid for Covered Repairs performed within seven years or 150,000 miles (whichever is earlier) after the original owner or lessee took delivery of the vehicle, and who submit timely and valid claims. However, the amount of the cash is to be decided depending on the individual case, sources said.
Source:KMBC.com

V V          Ads by Google

**GM Recall Information**
Speak to a New York Attorney. Free case review. Call toll-free.
www.LemonAuto.com

**Zicam - Get the Facts**
Get the whole story here. The truth about Zicam!
www.zicam.com

**Peoria Area Lawsuit**
Local personal injury attorneys Highly skilled & aggressive.
jayjanssenlaw.com

V V          Ads by Google

Filed under Class Action, General Law, Settlements | Tags: class action, Gm, Settlement, settlements | 26 Comments

Related?
Auto Cool is likely to go for a settlement in the lawsuit for product problem

September 3rd, 2008 The age old reputation of the Auto Cool company has come under severe scrutiny when a class action lawsuit was filed against the company. The lawsuit charged the company of false promise it made under an advertising campaign.

Man in Fla. gets life plus 85 years for hijacking, quadruple killings aboard 'Joe Cool' boat

May 6th, 2009 Life plus 85 years in 'Joe Cool' boat killingsMIAMI — A former security guard has been sentenced to life plus 85 years in prison for the 2007 hijacking of the "Joe Cool" charter boat and killings of four people aboard. U.S. District Judge Paul Huck imposed the sentence Wednesday on 21-year-old Guillermo Zarabozo (gee-YEHR'-moh zah-rah-BOH'-zoh), who maintains his innocence.

http://www.ask.com/bar?q=general+motors+class+action+lawsuit&page=1&qsrc=19&ab=...     6/13/



ALL PARTS INSTALLED ARE NEW UNLESS SPECIFIED OTHERWISE

7044          (585) 546-7082

**CORCORAN MOTOR'S**
287 Allen St.
ROCHESTER, NY 14608
30 Days or 1,000 Miles Guarantee On All Parts & Labor

Exhibit 12

NAME *Maya Brody*                    DATE 1-8-07

| QUAN. | PART NO. | DESCRIPTION | SALE AMOUNT |
|---|---|---|---|
| 1 | | Head Set | 180 89 |
| 1 | | Tem Con Gskt | 39 34 |
| 1 | | Water Pump | 58 95 |
| 1 | | Chan + Gea | 102 92 |
| 1 | | Sd Head Bolts | 88 77 |
| 4 | | plugs | 16 00 |
| 2 | gallon | Dexcool | 22 00 |
| 1 | | Filter | 4 50 |
| | | Sp Oil | 10 00 |
| 1 | | Tenson | 33 30 |
| 1 | | Hose | 11 30 |
| 1 | | Thedd + Gskt | 18 50 |
| 4 | | Pump | 4 00 |
| 1 | | Used Head | 350 00 |

REPAIR ORDER — LABOR INSTRUCTIONS

*R+R Head + Replace With Used Head*
*Your Coolant Leak in Heater Hose*
*Damage to Motor Cause by no Coolant*
*existing from Motor Leak.*
*Head Cant Be Repaired. Had To*
*Replace + Ten Chan + Gua Set.*

*(Note all Damage Was Cause*
*By Coolant Leak!)*

$511 95$

| TOTAL PARTS | 865.42 |
|---|---|

| ESTIMATE AMOUNT | | |
|---|---|---|
| ADD'L AUTH AMT | PARTS LABOR | 1487 55 |
| ADD'L AUTH AMT | *Dep'a* | 700 00 |
| ADD'L AUTH AMT | | |
| **ESTIMATE TOTAL** | | 787 55 |

| | |
|---|---|
| TOTAL LABOR | 511 95 |
| TOTAL PARTS | 865 42 |
| GAS, OIL, GREASE | |
| SPECIAL REPAIRS | |
| ENVIRONMENTAL CHARGES | |
| | 1377 37 |
| STATE TAX | 110 18 |
| **TOTAL AMOUNT** | 1487 55 |

RETAIN PARTS ☐   DESTROY PARTS ☐

AUTHORIZED BY *Maya Brody* 1/8/7