Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Attorneys for Motors Liquidation*
*Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
: 
**In re** : **Chapter 11 Case No.**
 : 
**MOTORS LIQUIDATION COMPANY,** *et al.,* : **09-50026 (REG)**
 **f/k/a General Motors Corp.,** *et al.* : 
 : 
 **Debtors.** : **(Jointly Administered)**
 : 
---------------------------------------------------------------x

**REPLY TO RESPONSE FILED BY MAYA A. BROADY**
**TO THE 276TH OMNIBUS OBJECTION (PROOFS OF CLAIM NOS. 70896, 70925)**

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011, files this reply (the "**Reply**") to the response (the "**Response**") filed by Maya A. Broady (a/k/a/ Maya Killings) to the GUC Trust's 276th omnibus objection, which includes an objection (the "**Objection**") to proofs of claim numbers 70896 and 70925 (attached hereto as Exhibit A and Exhibit B, collectively, the "**Claims**") filed on February 12, 2011 and February 14, 2011, respectively, by Ms. Broady on the basis that the Claims were filed after the bar date established for general unsecured claims in the Debtors' cases. In support of this Reply, the GUC Trust respectfully represents:

## PRELIMINARY STATEMENT

1.     In the Objection, the GUC Trust argues that the Claims should be expunged because they were filed after the November 30, 2009 deadline for filing claims in these chapter 11 cases (the "**Original Bar Date**").  *See* Objection, at ¶¶ 5 and 7.  Despite the fact that Ms. Broady was given actual notice of the Original Bar Date, she did not file the Claims until February 2011.  *See* Exhibits A-C.

2.     Though not clear in the Response, it appears that Ms. Broady is arguing that the Claims are administrative claims subject to the February 14, 2011 bar date (the "**Administrative Bar Date**").  As set forth more fully herein, Ms. Broady's claims each arise from events occurring prior to the commencement of the Debtors' chapter 11 cases, and are, as a matter of law, subject to the Original Bar Date.  Given that the Original Bar Date applies, it is Ms. Broady's burden to show why her circumstances satisfy the "excusable neglect" standard required by the Supreme Court in *Pioneer Investment Services Co. v. Brunswick Associates L.P.*, 507 U.S. 380, 395 (1993), and its Second Circuit progeny.  Despite her lengthy Response, Ms. Broady fails to address why the Claims were filed late, and thus has not satisfied her burden.

3.     Based on the foregoing, and given that Ms. Broady was sent actual notice of the Original Bar Date, the Claims should be disallowed and expunged.

## THE CLAIMS

4.     On February 12, 2011, Ms. Broady filed Claim No. 70896 against "General Motors Company/Corporation," which she identifies as a administrative and priority claim.  *See* Exhibit A.  By this claim, Ms. Broady seeks $200,000 for damages arising from alleged "unpaid disability," "Dex-Cool engine damage," and employment discrimination that allegedly took place during her employment with General Motors Co. from August 1984 until April 1992.  *Id.*

5.      On February 14, 2011, Ms. Broady filed Claim No. 70925, also in the amount of $200,000.  This claim appears to substantially identical to Claim No. 70896, except for a hand written note which reads: "original sent on 2/10/11, '2nd Copy'" and the addition of a page to a disability policy.  *See* Exhibit B.  In February 2011, counsel for the Debtors asked Ms. Broady to agree to the disallowance and expungement of this claim, on the basis that it was duplicative of the previously filed claim.  Ms. Broady refused to do so.  Response, Exhibit 4.  Thus, it appears Ms. Broady is seeking separate recovery from the Debtors on account of each of the Claims.

6.      On April 27, 2012, the GUC Trust filed the Objection, in which it asserted that the Claims should be disallowed and expunged because they were filed after the Original Bar Date.  There is nothing on the face of either of the Claims which indicates they are administrative in nature, though they have each been labeled by Ms. Broady as such.

7.      On May 16, 2012, Ms. Broady filed the Response.  In the Response, Ms. Broady focuses on the substance of the Claims and does not directly address the reasons for the late filing.[1]  Ms. Broady alleges, among other things, that she:

- was under "doctor's care throughout 2009-2011." Response, Exhibit 4.

- made various calls to Debtor's counsel from 2009 to 2010 which were not returned or properly handled.  Response at 1-2.

- was discriminated against and sexually harassed and "the injustice needs to be eradicated." Response at 2.

- did not receive accurate or correct information regarding the bankruptcy claims process.  Response at 2-3.

---

[1]      Much of the Response is simply irrelevant to the issue before the Court, and related only to the substance of the Claims.  *See, e.g.*, Response, Exhibit 6 (EEOC complaint and "sexual harassment material"); Exhibit 7 (employer benefits program); Exhibit 8 (correspondence between Ms. Broady and her employer in 1992); Exhibit 9 (Ms. Broady's medical diagnosis); Exhibit 10 (documents related to application for worker's compensation); Exhibit 11 (correspondence from 1993 regarding claim for disability); and Exhibit 12 (a website article documenting the Dex Cool Class Action settlement and a receipt for car repairs).

- does not have an attorney so "ascertaining or receiving vital information became almost non-existent." Response at 2.

- is "still experiencing problems" "even though the Dex Cool Class Action Law Suit [sic] is over." Response at 3.

## NOTICE OF THE BAR DATE

8.     On September 16, 2009, the Court entered an order which, among other things, set the Original Bar Date for November 30, 2009 (the "**Bar Date Order**"). In September, 2009, notice of the Original Bar Date was sent by the Debtors' claims agent (Garden City Group, "**GCG**") to various parties in interest, including Ms. Broady, in accordance with the terms of the Bar Date Order. *See* Exhibit C. The Bar Date Order was sent to Ms. Broady at the following address, which was also the address listed by Ms. Broady in the Claims:

> Broady, Maya
> 238 Sawyer St
> Rochester, NY 14619-1928

As set forth in the attached declaration of Angela Ferrante, attached hereto as Exhibit D, the notice sent to Ms. Broady was not returned to GCG.

9.     On December 14, 2010, the Court entered an order (the "**Administrative Bar Date Order**") which, among other things, set the deadline for filing administrative claims for February 14, 2011 (the "**Administrative Bar Date**"). In December 2012, the Administrative Bar Date Order was served by GCG to various parties in interest, including Ms. Broady. *See* Exhibit E. The Administrative Bar Date Order also went to the address listed above and in the Claims.

## ARGUMENT

**A.  The Claims are General Unsecured Claims Subject to the Original Bar Date**[2]

10.     Ms. Broady asserts administrative claims against the Debtors based on three main theories (i) unpaid disability for the period from 1992 to the present; (ii) discrimination which occurred during the period of her employment from 1984 until 1992; and (iii) Dex-cool engine damage which occurred in 2007.  *See* Exhibits A and B.  None of these claims are administrative claims, as Ms. Broady alleges.  Indeed, each of these is clearly a claim arising from a prepetition relationship with the Debtors and thus, as a matter of law, is subject to the Original Bar Date. *See* Bar Date Order (applying the Original Bar Date to "any unsecured claim, secured claim, priority claim, or claim under section 503(b)(9)" which arose prior to the commencement of the Debtors' chapter 11 cases).

### 1.     Applicable Law

11.     A claim is a prepetition claim where (as here) it arises out of a prepetition relationship recognized in the law of contract or torts.  *See LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995) ("A claim will be deemed pre-petition when it arises out of a relationship recognized in . . . the law of contracts or torts."); *West v. WorldCom, Inc.*, No. 06 Civ. 0748, 2007 U.S. Dist. LEXIS 83924, at *6-7 (S.D.N.Y. Nov. 14, 2007) ("Claims arise before a petition when the parties are engaged in a pre-petition relationship recognized in contract or tort law.").  In contrast, for a debt to be given administrative expense status:  (i) the expense must arise out of a transaction between the creditor and the debtor in possession and (ii) the creditor's consideration for the expense must be both supplied to and

---

[2]     The GUC Trust requests the Court treat the facts alleged by Ms. Broady as the basis for the Claims as true, solely for the purpose of establishing when the Claims arose.  However, the GUC Trust reserves the right to challenge such factual allegations, all of which the GUC Trust expressly refutes.

beneficial to the debtor in possession in the operation of the business.  11 U.S.C. § 503(b)(1)(A).

Two *Trustees of the Amalgamated Ins. Fund v. McFarlin's, Inc.*, 789 F.2d 98, 101 (2d Cir.

1986); *In re Ames Dep't Stores, Inc.*, 306 B.R 43, 55 (Bankr. S.D.N.Y. 2004).

### 2.   The Claims

12.     Here, Ms. Broady is seeking recovery from the Debtors on three separate grounds.

The first two grounds – seeking disability payments and recovery for employment discrimination

– arise from her employment with the Debtors from 1984 to 1992, well prior to the filing of the

Debtors' chapter 11 cases.  *See* Exhibit A.  Ms. Broady's third alleged basis for recovery arises

from engine damage which, by her own admission, occurred in 2007 to her 2001 Pontiac.  *Id.*  It

is clear that each of these claims arose out of a prepetition relationship with the Debtors, and thus

are claims subject to the Original Bar Date.[3]  Additionally, it is manifest that there is nothing in

the Claims or the Response which indicates that the Claims should be entitled to administrative

expense status and, thus, should be subject to the Administrative Bar Date.

## B.  Ms. Broady Cannot Satisfy Her Burden of Showing "Excusable Neglect"

13.     Because Ms. Broady failed to file the Claims before the Original Bar Date, she is

not entitled to recovery on account of the Claims unless and until she can demonstrate

"excusable neglect."  Especially in light of the fact that Ms. Broady received actual notice of the

Original Bar Date, she simply cannot meet this burden.[4]

---

[3]     Even if timely, these Claims would still fail because any such claims would likely be barred by
the applicable statute of limitations, given that Ms. Broady's employment with the Debtors ended over
seventeen years prior to the Petition Date.  Moreover, the claims based on Dex-cool would likely be
barred because those claims were resolved by a prepetition class action.  *See* ECF No. 10172.

[4]     In conversations with counsel, Ms. Broady has asserted that she did not get notice of the Original
Bar Date.  This assertion is, however, belied by the record.  *See supra* at ¶¶ 8-9.  Moreover, Ms. Broady
has not (and cannot) provide evidence overcoming the presumption that a recipient receives an item that
is mailed to the correct address.  *See, e.g.*, *In re Dana Corp.*, No. 06-10354, 2007 WL 1577763 at *4
(Bankr. S.D.N.Y. May 30, 2007) (citations omitted).  As this court has previously held, without such

1.  **Applicable Law**

14.    A proof of claim is not timely filed unless it is filed "prior to a bar date established by order of a bankruptcy court." *In re XO Commc'n, Inc.*, 301 B.R. 782, 791 (Bankr. S.D.N.Y. 2003); Fed. R. Bankr. P. 3003(c)(3).  As a general rule, any creditor who fails to file a proof of claim on or before the applicable bar date "will be forever barred that is, forbidden – from asserting the claim against each of the Debtors and their respective estates." *Bar Date Order* at ¶ 6.  In that regard, the bar date "does not function merely as a procedural gauntlet, but as an integral part of the reorganization process." *In re Hooker Invs., Inc.*, 937 F.2d 833, 840 (2d Cir. 1991) (internal citations and quotation marks omitted).

15.    Bankruptcy Rule 9006(b)(1) provides the court with discretion to enlarge the time to file claims "where the failure to act was the result of *excusable neglect*." Fed. R. Bankr. P. 9006(b)(1) (emphasis added).  The claimant has the burden of establishing excusable neglect.  *In re Enron Corp.*, 419 F.3d 115, 121 (2d Cir. 2005); *In re Andover Togs, Inc.*, 231 B.R. 521, 549 (Bankr. S.D.N.Y. 1999).

16.    In determining whether excusable neglect exists, courts are required to consider the following four factors in accordance with the Supreme Court's decision in *Pioneer*:  "[1] the danger of prejudice to the debtor, [2] the length of the delay and its potential impact on judicial proceedings,[5] [3] the reason for the delay, including whether it was within the reasonable control of the movant, and [4] whether the movant acted in good faith."  507 U.S. 380, 395 (1993).

---

evidence, the claim should be expunged if not timely filed and no excusable neglect has been demonstrated.  Tr. 4/26/12 at 53:9-13.

[5]    In applying the second *Pioneer* factor, this Court previously held in this case that "the longer the delay, the harder it is to justify allowing a late claim to be filed." Tr. 2/9/12 at 30:24-25.

17.     The Second Circuit takes a "hard line" in applying the *Pioneer* factors, placing the greatest weight and focusing primarily "on the third factor, the reason for the delay in filing a proof of claim." *Enron*, 419 F.3d at 122 (internal quotation marks omitted). "[I]nadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute 'excusable' neglect." *Pioneer*, 507 U.S. at 392; *In re Enron Corp.*, 419 F.3d 115, 123 (2d Cir. 2005) (finding that preoccupation does not constitute excusable neglect); *In re Lehman Bros. Holdings Inc.*, 433 B.R. 113, 126 (Bankr. S.D.N.Y. 2010) (finding that creditors who claimed to be unaware of their claims until after the bar date could not demonstrate excusable neglect because they failed to investigate and perform reasonable diligence to identify those claims). In the Second Circuit "[t]he equities will rarely if ever favor a party who fail[s] to follow the clear dictates of a court rule, and where the rule is entirely clear, we continue to expect that a party claiming excusable neglect will, in the ordinary course, lose under the *Pioneer* test." *Enron*, 419 F.3d at 123 (internal citations omitted).

## 2.    The Claims

18.     Here, Ms. Broady has not (and cannot) meet her burden of establishing excusable neglect.[6] In her Response, she focuses primarily on the substance of the claim, and fails to explain why the Claims were filed fourteen months late.

---

[6]     The GUC Trust has a fiduciary duty to ensure the Bar Date Order is enforced as to all claimants who cannot show excusable neglect. Ms. Broady's *pro se* status does not change this approach. Indeed, while courts hold *pro se* litigants to less stringent standards than trained attorneys, a *pro se* litigant is nevertheless required to be aware of and comply with procedural rules and substantive law. *See, e.g.*, *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (A claimant's *pro se* status does not exempt the claimant from "compliance with relevant rules of procedural and substantive law."); *In re Hongjun Sun*, 323 B.R. 561, 566 (Bankr. S.D.N.Y. 2005) (finding that *Pioneer* and the Second Circuit's more stringent standards likewise apply to *pro se* claimants); *In re Klein*, 64 B.R. 372, 376 (Bankr. E.D.N.Y. 1986) (rejecting argument that literate *pro se* creditor should be excused from compliance with bar date because he did not understand the bar date notice received). Notably, the vast majority of the claims filed against the Debtors were timely filed in advance of the Bar Date. Thousands of creditors therefore understood the notice given and their obligation to comply with the Bar Date. Allowing the Claims would be unfair to all of the creditors that complied with the Court's deadlines. *In re Dana Corp.*, No. 06–10354, 2008 WL

19.     It appears that Ms. Broady also seeks to blame Debtors' counsel and GCG for her failure to file a timely claim.  Response at 1-3; Response, Exhibit 4.  However, all of the allegations related to counsel's alleged failure to respond occurred in 2011 and 2012, well after the Original Bar Date.  Response at 2-3.  Moreover, if anything, the documents Ms. Broady filed with the Response indicate that GCG was quite responsive to her inquiries.  *See, e.g.*, Response, Exhibit 4 (documenting a message sent to Ms. Broady regarding her claims); Response, Exhibit 5 at 3 (same).  Thus, none of these allegations would support a finding of "excusable neglect."

20.     Ms. Broady also appears to be arguing that the Claims were filed late because she was preoccupied with her medical care and was unable to file a claim in 2009 or 2010.  Response, Exhibit 4 at 3.  Even if such allegations were true, preoccupation does not render a mistake excusable.  *See In re Enron Corp.*, 419 F.3d 115, 123 (2d Cir. 2005).

21.     In short, nothing in the Response indicates that Ms. Broady's late filing should be excused.  Especially given Ms. Broady received actual notice of the Bar Date, she cannot satisfy her burden of excusable neglect.

---

2885901, at *6 (Bankr. S.D.N.Y. July 23, 2008) (finding that allowing the late-filed claim would be "unfair to those claimants who respected the Bar Date and would potentially open a floodgate of other late claimants seeking the same relief.").

## CONCLUSION

For the reasons set forth above and in the Objection, this Court should enter an order

expunging the Claims and granting such other and further relief as is just and proper.

Dated: New York, New York
      May  24, 2012

                             */s/ Stefanie Birbrower Greer*     
                             Barry N. Seidel (BS-1945)
                             Stefanie Birbrower Greer (SG-2898)
                             DICKSTEIN SHAPIRO LLP
                             1633 Broadway
                             New York, New York 10019-6708
                             Telephone: (212) 277-6500
                             Facsimile: (212) 277-6501

                             Attorneys for Motors Liquidation
                             Company GUC Trust

# EXHIBIT A

| UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK | **ADMINISTRATIVE PROOF OF CLAIM** |
|---|---|

| Name of Debtor Against Which Administrative Claim is Held | Case Number |
|---|---|
| General Motors Company (corporation) | 09-50026 (REG) |

**Name of Creditor** (The person or other entity to whom the debtor owes money or property): Maya A Brady AKA -Killings

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

**Name and address where notices should be sent:**
Maya A Brady
238 Sawyer St., Rochester, NY 14619
Telephone number: 585-328-2325

☐ Check box if you have never received any notices from the bankruptcy court in this case

☐ Check box if the address differs from the address on the envelope sent to you by the court

THIS SPACE IS FOR COURT USE ONLY

[stamp] CITY GROUP INC  FEB 1 2 2011

Account or other number by which creditor identifies debtor:

**Check here** if this claim ☐ replaces ☐ amends a previously filed claim, dated

**1  Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☒ Other Def-cool Engine damaged

☐ Retiree benefits as defined in 11 U S C § 1114(a)
☒ Wages, salaries, and compensation (fill out below)
Last four digits of SS# 4038
Unpaid compensation for services performed
from 10/92 to Present

**2.** Date debt was incurred: 6/88 - Present   **3.** If court judgment, date obtained:

**4** Total Amount of Administrative Expense Claim: $200,000

☐ Check box if claim includes interest or other charges in addition to the principal amount of the claim Attach itemized statement of all interest or additional charges

**5** Brief Description of Administrative Expense Claim (attach any additional information):

1) Unpaid Disability. It was determined that I was disabled at the time I was forced to retire from GM in 4/1993. See attachments. I was paid for temporary disability (6 months) but not permanent.

2) Def-cool Engine damage. I had to replace head cases in my 2001 Pontiac Sunfire in 1/2007 due to coolant leakage. (See attached)

3) GM failed to protect me. I worked in a hostile environment. I filed a claim with the EEOC. See attached

**6.** Credits: All payments made on this claim have been credited and deducted for the purpose of making this proof of claim

THIS SPACE IS FOR COURT USE ONLY

**7.** Supporting Documents: Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien DO NOT SEND ORIGINAL DOCUMENTS If the documents are not available, explain If the documents are voluminous, attach a summary

**8.** Date-Stamped Copy: To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

Date: | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any): Maya Brady  2/9/11

*Penalty for presenting a fraudulent claim* Fine of up to $500,000 or imprisonment for up to 5 years or both 18 U S C §§ 152 and 3571



FILED - 70896
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SPNR      26 (REG)

[stamp] ROCHESTER NY 14692  FEB 10 2011  MAIN

February 5, 2011


Ms. Maya A. Broady
238 Sawyer Street
Rochester, New York   14619


The Garden City Group, Inc
Attention:  Motors Liquidation Company Claims Processing
P. O. ox 9386
Dublinm, Ohio   43017-4286

TO WHOM IT MAY CONCERN:

For many months now, I have been calling your office reference the attached Motors
Liquidation with General Motors.  I have either been disconnected, transferred to the
wrong department, or the customer service representatives could not or did not answer
my questions.

I have also attempted to go on line at www.motorsliquidationdocket.com, but could not
locate the Administrative Poof of Claim Form until recently

I am filing the following claims.

1)      The Dex cool fluid.  I had to replace my head gasket because the fluid kept
         leaking out of the engine.   I understand that there was a class action
         lawsuit/recall pertaining to this, but I was not contacted, and did not know about
         the lawsuit/recall.  The damage $1,___ (See Attachments)

2)      General Motors failed to pay me for my permanent disability from November
         1992 – Present.  When I was forced to leave GM in April 1992, I was still under
         the doctor's care before, during and after leaving General Motors.  It was
         determined that I was permanently disabled and could not return to work   I did
         contact them and filed for disability benefits, but the Disability Benefits
         Department would not return my calls.  They also stated that they never receivedd
         my claim for disability.  (See attachments)

I feel that I was discriminated against by General Motors   In 1988, I had to file a
discrimination complaint with EEOC   They did find probable cause for
discrimination. (See Attached)

Therefore, I am filing a claim for $200,000 against General Motors for pain and
suffering, failure to fulfill their disability policies and procedures for long term
disability, forcing me to take an early retirement while I was still under a doctor's
care in April 1992, and creating a hostile environment while working for them from 1988
– 1992 which necessitated me filing a claim with EEOC in 1988   My employment

started with General Motors in August, 1984 – April 1992.

Once again, I am sending this letter because I am unable to gather the proper claim form, and could not obtain them.

Sincerely,



Maya A. Broady

Attachments

# SAVINGS·STOCK PURCHASE PROGRAM



**MARY**
**GRAM**



## Total Value of your Account at the end of 1989

U S Savings Bonds (at cost) ..............
Cash Balance in Bond Fund ..............
Diversified U S Securities @ ...........
GM Common Stock ....................
 • $1-2/3 Par Value @ $642¢31 ........
 • Class E @ .......
 • Class H @ $25¢25 ...........
Income Fund @ ...........
Equity Index Fund @ ...........
Profit Sharing - GIC* ....................

Total ..............

The statement below shows your account status  Regular savings are displayed in the upper half of each investment option section. Plus Savings are displayed in the lower half. GIC is all Plus Savings Shares of GM stock purchased with GM's contributions and with dividends on GM's contributions during 1987, 1988, and 1989, are subject to a required retention period, in accordance with the terms of the Program  Note: Plus and Regular Savings have been reduced by the amount of any outstanding loan(s) you have.

YOU HAD AN OUTSTANDING LOAN BALANCE OF $4,745.

## Annual Statement Of Account



| OPTION | Unrestricted Assets | Assets Subject To Required Retention Period | | | TOTAL |
|---|---|---|---|---|---|
| | | 1987 | 1988 | 1989 | |
| Your Savings | $29576.00 | | | | $29576.00 |
| | $833.85 | | $1266.03 | $2,524.00 | $4,621.88 |
| 1. U.S. Savings Bonds | | | | | |
| Cash Balance and Interest in Bond Fund | | | | | |
| 2. Diversified U.S. Securities | | | | | |
| 3. GM Common Stock $1-2/3 Par Value | $13,931 | $4725 | $20,9638 | $29,9638 | $68,5348 |
| 4. Income Fund | $1,458.32 | | | | $1,458.32 |
| | $3,262.16 | | | $1,911.37 | $5,173.65 |
| 5. Equity Index Fund | | | | | |
| 6. GM Class E Stock | | | | | |
| 7. GM Class H Stock | 1.0376 | | | | 1.0376 |
| 8. Profit Sharing GIC* | | | | | |
| Purchased with GM Contributions GM Common Stock $1-2/3 Par Value** | .0001 | 38.5581 | 41.2091 | 41.9148 | 121.6821 |

*Guaranteed Income Contract
**Including dividends thereon

ou and your family.
of the finest total

rough these benefit
M team  Several of
he Comprehensive
at the forefront in
e that all of these
down health care
ntinue to enjoy the



ENROLLED
ED CHOICE
GRAM

care program  The
er persons covered

FAMILY



ccounts)

Assuming (1) you contribute 10% of your current salary to age 65, (2) no withdrawals or loans, and (3) an annual growth factor of 8 65%, your S-SPP account could grow to  $612,514  at age 65





*1990*

# PERSONAL BENEFIT SU

## YOUR SHARE OF THE GM BENEFIT P

### PREPARED FOR.



Based on your personal data as of December 31, 1989.

General Motors is pleased to provide you with this annual summary of your GM benefits as they appl
Your GM benefits continue to represent a significant addition to your salary and add up to
compensation packages available in American industry

Our People Philosophy affirms that our employes are our most valued resource GM's investment in
programs, together with your salary, demonstrates that you are indeed highly valued as a member o
these programs, such as the Savings-Stock Purchase Program, Part B of the Retirement Program
Medical Expense Program, apply exclusively to GM salaried people and help put you and your f
comparison to the compensation offered by our competitors. We must, however, continue to
programs are utilized in a prudent and cost efficient manner We especially need your help in h
expense which represents one of the fastest growing cost elements facing GM today May all of
personal and financial security which these exceptional benefits provide

Chain

# HEALTH CARE (Informed Choice Plan)

SINCE JANUARY 1, 1990 YOU AND ENROLLED FAMILY MEMBERS HAVE B
IN THE HEALTH MAINTENANCE ORGANIZATION (HMO) OPTION OR THE IN
PLAN AND IN THE MAJOR MEDICAL/COMPREHENSIVE MEDICAL EXPENSE

In most cases, any health care costs you incur for covered services are paid by GM through your
approximate total annual cost to GM of supplying these coverages for you, your dependents, and
by our health care programs during 1989 is shown below.



|  |  |  |
|---|---|---|
| HEALTH CARE COVERAGES | | $2,918,08 |
| (EXCEPT CMEP) | | |
| CMEP | | $11,60 |
| | Total | $2,929,68 |

The average 1989 annual cost to GM of health care coverages for you and others was $5,202

COVERAGE

# FLEX '90 (Flexible Compensation Spending

For each pay period in 1990, you chose to make before-tax deposits to Flex spending accounts, as

|  |  |
|---|---|
| Health Care | |
| Dependent Care | |

# DISABILITY INCOME

## Monthly Payments

If you become disabled, you may be eligible to receive salary continuation and/or disability ber...



If you remain disabled, you may be eligible for continuing disability benefits from ...
per month to age... Thereafter, you may be eligible for continuing So...
per month plus GM retirement* benefits of ... per month payable for lif...

In addition, if you have a dependent spouse and/or one or more children, they could receive up to
per month from Social Security

*Retirement benefits are shown only for employes with ten or more years of credited service

---

I Never received any
Payments for Disability.
My permed

2/9/11



---

# SURVIVOR BENEFITS

In the event of your death while employed by GM, the following payments are available to your d...

## Monthly Payments

**From the Life and Disability Program*:**
For up to 24 months, $400 in Survivor Income Benefit
Insurance (SIBI) may be payable to an eligible survivor
($225 if certain Social Security benefits are payable)
After 24 months, your spouse 1) who, upon your death,
was at least age 45, or 2) whose age, when added to your
years of participation totals 55 or more, could be eligible
for up to $400 a month until the earlier of (1) age 62,
(2) remarriage, or (3) entitlement to unreduced Social
Security because of your death. (Refer to note on back.)

**From the Retirement Program*:**
A noncontributory benefit of NOT MARRIED
for your spouse's lifetime  Contributory bene-
fits of NOT MARRIED would begin
immediately for your spouse's lifetime in lieu of return of
your contributions.

**From Social Security:**
Social Security could pay a surviving spouse and/or
children as much as NOT MARRIED



## Available Payments



Basic Lif
Optional
Savings-
Retireme
Social S

**Total**
Plus, if d
-Extra Ad
-Extra Ad
(while ...

**Plus**
GM will pay for health care c
and eligible children if you die
provided you:
 1) Had in effect the Retirem
    surviving spouse coverag
    of credited service, or
 2) Were eligible to retire vo
    ages 55 and 60 when you
    total less than 85).

**Dependent Life Insurance (Emp**
Spouse
Each child

Contributory Personal Accident Insurance, which provides additional coverage for death, dismem
conditions resulting from bodily injury sustained in an accident, also is available to you

*Assumes you have been married at least one year and your spouse is the same age as you

---

**INCOME SECURIT...**
IF YOU ARE LAID OFF, YOU MAY BE ELIGIBLE FOR 12 SEMI-MONTHL...
OF $798.25 UNDER THE LAYOFF BENEFIT PLAN. THEREAFTER, YOU ...
ELIGIBLE FOR 12 SEMI-MONTHLY PAYMENTS OF $639.00 ...
THESE PAYMENTS WILL BE REDUCED BY UNEMPLOYMENT COMPENSATION ...
YOU ARE ENTITLED STATE DISABILITY BENEFITS AND ANY GM PAY R...
AND 75% OF ANY EARNINGS RECEIVED FROM ANOTHER EMPLOYER OR FR...
SELF-EMPLOYMENT

# RETIREMENT BENEFITS



Through December 31, 1989, your total credited service is ▓▓ YEARS AND 4 MONTHS ▓▓

Your contributions are
Prior to 7-1-77     . . . . . .
7-1-77 to 10-1-79 . . . . . .
After 10-1-79.   . . . . . .

If you work for GM until age 65, your estimated monthly retirement income would be

From the Retirement Program
—Noncontributory benefits . . . . . .
—Contributory benefits . . . . . . . .
From Social Security
—Yourself . . . . . . . . . . . . . . . .
—Dependent spouse at age 65 . . . . NOT MARRIED

**Total Monthly** . . . . . . . . . . .

Estimated retirement benefits are based on the assumption that (1) your current pay will stay the same until retirement, and (2) you accumulate a full year of credited service for each year until retirement  Retirement payments are for your lifetime only  Your coverage for retirement survivor benefits would reduce these amounts

Estimates of your retirement income at other ages are available upon request from your Personnel Office

## Plus

If you retire from GM
- You may (1) take your Savings-Stock Purchase Program account in a lump sum, (2) defer receipt, and elect instalment payments and/or partial payment, or (3) convert your account to a lifetime annuity
- Your health care coverages will be continued (except if you retire (1) voluntarily between ages 55 and 60 when your age and credited service total less than 85, or (2) at any age with less than 10 years of service — in which cases, coverages may be continued on a self-pay basis)
- A portion of your Basic Life Insurance and Personal Accident Insurance may be continued for your lifetime  Optional Life Insurance may be continued until age 75.

*▓▓ ASSUMES CONTINUED CONTRIBUTIONS TO AGE 65 AND NO WITHDRAWALS ▓▓*

# ADDING IT ALL UP

The combined GM Benefit Plans add significantly to the total pay you receive for the work you do  On an annualized basis,



GM's cost for your benefits is even higher than indicated because you enjoy many benefits for which costs have not been calculated on this summary. These include·

- Salary continuation payments
- Unemployment and Workers Compensation
- Tuition Assistance Plan
- Profit Sharing Plan
- GM layoff or separation allowance benefits
- Suggestion Plan
- New Vehicle Purchase Program

When you add it all up, it is an impressive package—a package that could not be purchased by an individual at the cost shown because of group rates and GM's purchasing power.

Note· Important information is included on the reverse side of this form.



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  58001                    KILLING5           004299

7044

**(585) 546-7082**
**CORCORAN MOTOR'S**
287 Allen St.
ROCHESTER, NY 14608
30 Days or 1,000 Miles Guarantee On All Parts & Labor

NAME  Mayor Brody
ADDRESS
CITY

| YEAR | TYPE OR MODE | MOTOR No | LICENSE NUMBER |
|------|------|------|------|
| 01 | Ford | Tau Ser | ADS6237   7289124   45324 |

DATE 1-8-07
TERMS
CUSTOMER ORDER NO

TIME RECEIVED
TIME PROMISED
PHONE WHEN READ?

## REPAIR ORDER LABOR INSTRUCTIONS

☐ LUBRICATE  ☐ CHANGE OIL  ☐ FLUSH TRANS  ☐ FLUSH DIFF  ☐ WASH  ☐ POLISH

R+R Head + Replace w/W Cracked Head
from Coolant Leak in Heater Hose.
Damage to M for Cause by no Coolant
in system from Hose leak.
Head Cont Be Repaird, Not To
Replac + Tun Chan + Tune Set.

( Note all Damage was Cause
By Colant Leak.

ROCHESTER NY
REMAIN PARTS  FEB 1  DESTROY PARTS

ORDER WRITTEN BY ☐

| TOTAL LABOR | 511 95 |
| TOTAL PARTS | 865 42 |
| GAS, OIL, GREASE | |
| SPECIAL REPAIRS | |
| ENVIRONMENTAL CHARGES | 137737 |
| STATE TAX | 110 18 |
| **TOTAL AMOUNT** | 1487 55 |

I HEREBY AUTHORIZE THE ABOVE REPAIR WORK TO BE DONE, ALONG WITH NECESSARY MATERIALS. YOU AND YOUR EMPLOYEES MAY OPERATE THE ABOVE VEHICLE FOR PURPOSES OF TESTING, INSPECTION OR DELIVERY AT MY RISK. AN EXPRESS MECHANIC'S LIEN IS ACKNOWLEDGED ON ABOVE VEHICLE TO SECURE THE AMOUNT OF REPAIRS THERETO. YOU WILL NOT BE HELD RESPONSIBLE FOR LOSS OR DAMAGE TO VEHICLE OR ARTICLES LEFT IN VEHICLE IN CASE OF FIRE, THEFT, ACCIDENT OR ANY OTHER CAUSE BEYOND YOUR CONTROL.

AUTHORIZED BY  William Brody '13, 7
RECEIVED BY

GAL GASOLINE
QTS OIL
LBS GREASE
TOTAL GAS - OIL - GREASE

---

AL   PARTS INSTALLED ARE NEW UNLESS SPECIFIED OTHERWISE

| QUAN | PART NO. | DESCRIPTION | SALE AMOUNT |
|------|------|------|------|
| 1 | | Head Sat | 180 89 |
| 1 | | Tim Cov Gasket | 34 34 |
| 1 | | Water Pump | 38 95 |
| 1 | | One Ser | 102 92 |
| 1 | | Set Need Bolt | 38 77 |
| 4 | | Plugs | 16 00 |
| 2 | | Gallon DexCool | 22 00 |
| 1 | | Filte | 4 50 |
| 1 | | Seal | 10 00 |
| 1 | | Tenon | 33 30 |
| 1 | | Hose | 11 30 |
| 1 | | Therm + Gast | 16 50 |
| 1 | | Seap | 4 00 |
| 1 | | Used Head | 350 00 |

2/9/11

My Car is still
heating Cooling I sent

| TOTAL PARTS | 865 42 |
| PARTS | 1487 55 |
| LABOR | |

ESTIMATE AMOUNT

ADDL AUTH AMT  BY  Boyce   TIME

ADDL AUTH AMT

ADDL AUTH AMT

**ESTIMATE TOTAL**   787 55

Unless otherwise provided by law, the seller (above named dealership) hereby expressly disclaims all warranties, either express or implied including any implied warranty of merchantability or fitness for a particular purpose, and neither assumes nor authorizes any other person to assume for it any liability in connection with the sale of said products



**consumeraffairs.com**
*knowledge is power*

NEWS   RECALLS   COMPLAINT FORM   SCAM ALERTS   RESOURCES
Small Claims Guide   Class Actions   Lemon Laws   FAQ   Newsletters

☐ SHARE  ⚡📧📄

**Complaint Button**
Complain about a product or service

Automotive   Education   Employment   Electronics   Family   Finance   Health   Homeowners   Insurance   Pets   Shopping   Travel

☐☐ Print This   ☐☐ Email This

SPRING EVENT   0% APR   60 MONTHS   O'Connor Chevrolet   Nobody Beats An O'Connor Deal   Get A Quote

Ads by Google   CA Class Action Suit   GM Service Recalls   Consumer Complaints   Lawsuit Settlement   GM General Motors

[Search field]   Search

NEWS   Latest | Archives | Autos | Cells, etc | Computers | Financial | Health | Homeowners | Parents | Privacy | Scams | Seniors | Travel

# News

## Dex-Cool Class Action Deadline Nears

Complaints must be filed by October 27

By Joe Benton
ConsumerAffairs.com

Ads by Google

**GM Official Site** ›
Our Goal  Exceed Your
Expectations  See Our
Progress at Official
Site
www.GM.com/LoanRepaymen

**Suv Rollover
Lawyer** ›
Get Legal Help From
an Accident Attorney
in Your Area for Free
www.InjuryHelpLineAttorney.e

**Ask a GM Mechanic
Now** ›
12 GMC Mechanics Are
Online  Ask a
Question, Get an
Answer ASAP
GM.JustAnswer.com

**Enclave vs. GX 460** ›
See What the Buick
Enclave Offers That
GX 460 Doesn't  Get
Info
www.Buick.com/BuickEnclave

**Whistleblower
Complaint?** ›
Former feds will help
you prove qui tam
fraud  Nationwide
Practice
www.JamesHoyer.com

September 15, 2008
People who owned or leased General
Motors vehicles damaged by Dex-
Cool have until October 27 to file a
complaint which could lead to a
limited reimbursement for repairs
under the terms of a nationwide
class-action settlement, according to
San Francisco law firm Girard Gibbs

Hundreds of consumers have
written ConsumerAffairs.Com to
report expensive repairs in GM
vehicles which they claimed was
caused by the Dex-Cool used in the
engine cooling system

An Arkansas Chevrolet Blazer owner
reported that Dex-Cool corroded
and destroyed the heater core and
other parts" of his daughter's 1998
Blazer "Despite the vehicle having
only about 30,000 miles, I have been
to multiple GM dealers who all
denied there was any association with their coolant," he wrote

A Pontiac Montana owner told us he replaced the head gasket
and the radiator along with other expensive repairs "all prior to
100,000 miles, due to Dex-Cool " The cooling system, he wrote is
"completely jelled" and needs to be flushed

A Tennessee woman reported her GMC Yukon leaked Dex-Cool,
"causing all sorts of damage "

Consumers who bought or leased certain 1995-2004 model year
GM vehicles with 3 1-liter, 3 4 liter, 3 8-liter, or 4 3-liter engines
are eligible for the reimbursement for Dex-Cool related engine
repairs that occurred within seven years or 150,000 miles,
whichever is earlier, of original vehicle purchase, according to the
law firm

The repairs that are covered under the terms of the settlement
include intake manifold gasket replacements, cooling system
flushes and heater core repairs

While consumers will not be fully compensated for their Dex-
Cool related expenses, people who file their complaints by the
October 27 deadline will be eligible for up to $400 for each repair
that occurred during the first 5 years of ownership, up to $100 per
repair in the sixth year and up to $50 per repair in the seventh
year, according to Girard Gibbs

Advertisement

In some limited circumstances, consumers could be eligible for as

• Dex-Cool Class Action Deadline
Nears
• California Court to Rule on Dex-
Cool Settlement
• GM Owners Still Steaming Over
Dex-Cool
• Consumer Complaints

**GM Official Site** ›
Our Goal  Exceed Your Expectations
See Our Progress at Official Site
www.GM.com/LoanRepayment

**Ask a GM Mechanic Now**
12 GMC Mechanics Are Online  Ask a
Question, Get an Answer ASAP
GM.JustAnswer.com

Ads by Google

**CONSUMER NEWS**

• Toyota Recalling Older Sequoia SUVs
• Airline Consumer Protection Rules Set to Take Effect
• Beware of the Yahoo! Email Scam
• Supreme Court Allows Vioxx Shareholder Suit to
  Proceed
• Home Prices Post Year-Over-Year Gain
• AstraZeneca to Pay Record $520 Million Fine
• We Don't Save or Plan for Aging Moms, Survey
  Shows
• More News

**SAFETY RECALLS**

• 2003 Toyota Sequoia SUVs
• Step2 Basic Rhythms Toy Drums
• Polar Bear Sweatshirts
• SCAN Andersen Wood-Burning Stoves
• Tropical Bedding Mattress Sets
• Trendset Originals Girls' Hooded Jackets
• 2010 Lexus GX 460 SUVs
• Toyota Sienna Mini-Vans
• Le Hing Baby Walkers
• More Recalls

# OSCAR SMUKLER

ATTORNEY AT LAW

SANDRA H. ADAMS
Associate Counsel

1438 Hertel Avenue
Buffalo, New York  14216
716/ 838-5515

FRED K. HEINLE
Legal Assistant

January 14, 1994

Forrest Cummings, Jr
Regional Director
New York State Division of Human Rights
One Monroe Square, 3rd Floor
Rochester, New York  14607

Re· Case Number: 6-E-DORS-92-4700382E

Dear Mr. Cummings:

Please be advised that I have been retained to represent the claimant in the above referenced matter

I will be forwarding a rebuttal to respondent's written response prior to February 15, 1994.

Very truly yours,

SANDRA H. ADAMS



(TITLE VII)                    SDHR COMPL. R NO: _____

                               EEOC CHARGE NO: _____

COMPLAINANT:      MAYA B. KILLINGS

RESPONDENT(S):    GENERAL MOTORS CORPORATION, ROCHESTER PRODUCTS

                  DIVISION

(4)  On December 15, 1987, Mr. Rockafellow asked me if I was comfortable working with him and I said that I was.  I asked him why he asked me that and he responded by saying he wasn't comfortable working with me.  I asked him why and he just repeated that he didn't feel comfortable working with me.

(5)  On February 3, 1988, I went to see Denny Mead after Mr. Rockafellow's discriminatory treatment towards me continued. I explained to Mr. Mead what had been taking place and he, Mr. Rockafellow, and I met at 3:00 P.M. to discuss these matters. Mr. Mead reiterated what I had said, said Mr. Rockafellow and I should work more closely together and he told Mr. Rockafellow that he should watch what he said in front of other people and to correct me in private.  Mr. Rockafellow agreed that he would work more closely with me.

(6)  Approximately 1-week later Mr. Rockafellow began taking my work away from me and giving it to Joyce Mager, who is white and who is a Grade 6 Supervisor.  Mr. Rockafellow also had his subordinates take their work to other clerical people.  He offered no explanation for doing this.  On information and belief, Mr. Rockafellow was planning to move me out of his department. There were times when I had little or no work to do.  Prior to then my work had been backlogged and I was working overtime.

(7)  On Friday, April 15, 1988, Mr. Rockafellow again told me that he was not comfortable working with me.  He also asked me if I would be interested in an efficiency promotion.  On information and belief this was another indication of Mr. Rockafellow not wanting to work with me.

(8)  On information and belief, Mr. Rockafellow's comments towards me and treatment of me when compared to his dealings with non-Black employees shows clearly that he has discriminated against me, as a Black person, because of my race and color.

RA:INT.2 (supplemental)
(8/85)

STATE OF NEW YORK: EXECUTIVE DEPARTMENT
STATE DIVISION OF HUMAN RIGHTS                    EXEC. LAW ART.15
(State Division of human Rights on the Complaint of)   SDHR COMPLAINT NO:

MAYA B. KILLINGS                    Complainant

      - against -

GENERAL MOTORS CORPORATION,                    TITLE VII
ROCHESTER PRODUCTS DIVISION        Respondents    EEOC CHARGE NO:
and Max E. Rockefellow

I, _Maya B. Killings_____
Residing at _238 Sawyer Street, Rochester, NY 14619____
Tel. No. _716-436-3662_____ charge the above named respondent(s)
whose address(xx) is (xxxx) _1000 Lexington Avenue, Rochester, NY 14606
TELEPHONE: _716-254-5050_____
with an unlawful discriminatory practice relating to _EMPLOYMENT____
_____ in violation of Article 15 of the Executive
Law of the State of New York (Human Rights Law) on or about
_June 1987 & continuing_____ because of Race (XX) Color (XX)
National Origin ( ) Creed ( ) Age ( ) Sex ( ) Disability (XX)
Marital Status ( ) Arrest Record(s) ( ) Criminal Conviction(s) ( )
Retaliation (XX)

      The particulars are:

      (1)  I am Black.  I believe that because of this, I am
being denied equal terms, conditions and privileges of employment
by the respondent.

      (2)  I have been employed by the respondent for approximately
3½-years.  My present position is that of Secretary.  My immediate
supervisor is Max E. Rockafellow, Superintendent.  I believe that
I have always been a satisfactory employee based on my performance
appraisals and attendance.

      (3)  Beginning in or about June 1987, Mr. Rockafellow began
treating me in a disparate manner when compared to the treatment
he afforded to my non-Black co-workers.  He deliberately spoke to
me in a loud manner in front of my co-workers; attempted to belittle
me in front of others; was very critical of me in front of others;
led me to believe that he was under the impression that I falsified
overtime on my timecards; and on information and belief, did
not give me the same respect he gave to non-Black employees under
his supervision.  Mr. Rockafellow denied that he had accused me of
falsifying timecards.  Because of the way I was being treated, I
put my concerns into writing and sent them to Ronald Kimbrew,
EEO Officer.  Mr. Kimbrew acknowledged my memo and told me to be
very aggressive with Mr. Rockafellow and that if Mr. Rockafellow
persisted in treating me in that manner, I should go to his
boss, Denny Mead.

(TITLE VII)

ELOC CHARGE   NO: _____

COMPLAINANT: ___MAYA B. KILLINGS_____

RESPONDENT(S): ___GENERAL MOTORS CORPORATION, ROCHESTER PRODUCTS___
                   DIVISION

(9)  Based on the foregoing, I charge the respondent with
an unlawful discriminatory practice relating to employment
because of my race and color, in violation of Section 296 of the
New York State Human Rights Law.

"I have not commenced any other civil or criminal action, nor
do I have an action pending before any administrative agency under
any other law of this state based upon this same unlawful discrim-
inatory practice."

/XX/ I also charge the above-named respondent(s) with violating
Title VII of the Civil Rights Act of 1964, as amended (covers race,
color, creed, national origin, sex relating to employment) and
hereby authorize SDHR to accept this verified complaint on behalf
of EEOC subject to the statutory limitations contained in Title VII.

STATE OF NEW YORK        )
COUNTY OF                ) ss:   _____
                                        Signature
                                    MAYA B. KILLINGS
___MAYA B. KILLINGS_____, being duly sworn, deposes and
say: that he/she is the complainant herein; that he/she has read
(or had read to him/her the foregoing complaint and knows the con-
tent thereof; that the same is true of his/her own knowledge except
as to the matters therein stated on information and belief; and
that as to those matters, he/she believes the same to be true.

Subscribed and sworn to before me
this  21st  day of  April  , 19 88   _____
                                       (Signature of Complainant)
                                        MAYA B. KILLINGS

BARBARA M. SIMS
Notary Public, State of New York
Qualified in Erie County
My Commission Expires Mar. 30, 19 ___

RDS:me I

RA 1189-2 (2012)
(R. '85)

**Rochester Products**



Division of General Motors Corporation    P.O. Box 1790    Rochester New York 14632

May 26, 1988

Ms. Julia Day
NY State Division of Human Rights
259 Monroe Avenue
Rochester, NY 14607

RECEIVED

MAY 1988

REGIONAL DIRECTOR

Subject:  Case No. 6ER88127485E

Dear Ms. Day:

    Enclosed is the respondent's Statement of Facts on the above referenced case.  At your convenience please contact me at 647-7419 if there are any additional questions.

Sincerely,

Kathleen M. Langston
Supervisor - Salary Personnel

Enclosure
6122w

STATEMENT OF FACTS

MAYA KILLINGS

vs.

ROCHESTER PRODUCTS

Complainant:    Maya Killings
Complainant No.: 6ER88127485E
Location:   Rochester Products Division
            General Motors Corporation
            Rochester, New York

The complainant is a black employe hired by the respondent August 20, 1984, as a Clerk II. The complainant has received four salary increases and a promotion to Clerk III while in the respondent's employ. The claimant's performance has been and is satisfactory.

The respondent denies any disparate treatment of the claimant by Superintendent Rockafellow. Mr. Rockafellow has in the past approached the complainant at her desk, which is in an open area, and requested that various changes and corrections be made in her work, however Mr. Rockafellow's approach has at all times been professional. Since being advised of the complainant concerns Mr. Rockafellow holds all work-related conversations with complainant in his private office.

As a result of the complainant's performance, and in an effort to recognize her contributions, Mr. Rockafellow recommended that a proficiency promotion be granted to the complainant in 1988. A proficiency promotion is granted to an employe who has had strong previous performance and has shown the ability to assume higher level work. Proficiency promotions are recommended by the employe's supervisor and must be defended before the Plant Staff by the employe's superintendent who in the claimant's case would be Mr. Rockafellow. In a proficiency promotion the employe doesn't change jobs or supervisors. It is a recognition of the individual's high level of contribution in the job that they are presently in. The complainant will be receiving a promotion to Senior Clerk in 1988.

The respondent categorically denies all charges contained in the subject complaint.

mjs
05/24/88



11/27/91
9:15
Jim Whiteorly showed
me this. Said a handy
employee gave it
to him (Sal Cuatin)
Jeff Roth was there
in the meacher
he came to my
desk with it. I
glanced at it & gave
it back to him
Jeff said "Maya
usually don't
look at things
like that, too"
Jim asked why Jeff
said GM must knew.
Maya. I later asked
Jeff why he allowed
his boss to show me
something like this. Jeff's reply
"He is your boss,
knew Pettie
then that
you should see
I up with him.

UNIVERSITY OF

# ROCHESTER

UNIVERSITY HEALTH SERVICE

MEDICAL CARE SECTION

October 8, 1992

Edward M. Braiman
Atorney at Law
45 Exchange Street
Rochester  NY  14614

Re:  **Maya Broady**
     Social Security Claim #~~XXX-XX~~-4038

Dear Mr. Braiman:

     Please refer to my letter of September 10th for the answers
to most of your questions.  I realize that you have added a
couple more questions for me at the bottom of your letter dated
September 22nd.

     After the evaluation by the neurologist in the Multiple
Sclerosis Clinic at Strong Memorial Hospital, it does appear that
Maya Broady has multiple sclerosis.  It is quite possible that
many of the symptoms that were felt to be cervical disc problems
were, in fact, secondary to multiple sclerosis.  It is difficult
at this time to go back those many months, many during which I
was not following her, and know for sure whether the early
symptoms thought to be cervical disc were, in fact, the MS.  I
suspect that most of her distress since August of 1991 has been
the multiple sclerosis.

     I am sure that Mrs. Broady's illness will continue.
Multiple sclerosis may have many patterns of presentation and
many patterns of disease progression.  It is unclear to me at
this time how her disease may progress.  During times when she is
in remission she may well be able to work.  Because she is a
secretarial/clerical worker, and because much of her problems
have been in the upper extremities and neck, she has been totally
disabled since April, 1992 because of pain.  I am unable to
predict how long the total disability will continue or how her
disease will progress.

     I hope that the above will be helpful to you.

                              Very truly yours,

                              Barbara L. Schuster, M.D.

BLS:jmk
cc:  David H. Mattson, M.D.
     Neurology Clinic

cc:  Mrs. Maya Broady

250 Crittenden Boulevard, Box 617
Rochester, New York 14642
(716) 275-2662

DEPARTMENT OF HEALTH & HUMAN SERVICES       Social Security Administration

Refer to: Broady, Maya                      Office of Hearings and Appeals
          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                        3 Fountain Plaza, Room 100
                                             Buffalo, NY  14203-1496

                              NOTE TO PROCESSING CENTER:
                              FURTHER ACTION NECESSARY


Ms. Maya Broady
238 Sawyer
Rochester, NY  14619

            NOTICE OF FAVORABLE DECISION - PLEASE READ CAREFULLY

This Decision is Favorable to You

    Another office will process the decision.  You will receive a notice
    from that office.

    Your local Social Security Office or another office may ask you to
    give more information before you receive the notice.  If so, please
    answer promptly.

    If you hear nothing about this decision for 60 days, please contact
    your local Social Security office.

If You Think This Decision Is Wrong

    You have the right to appeal.  You must file your appeal within 60
    days from the date you receive this notice.  (It will be presumed
    that you received the notice within 5 days after the date shown below,
    unless you did not receive it within the 5-day period.)

    When you appeal, you request the Appeals Council to review the
    decision.  If the Appeals Council grants your request, it will review
    the entire record in your case.  It will review those parts which
    you think are correct and may make them unfavorable to you.  You will
    receive a new decision.

    You (or your representative) have to ask for the appeal in writing.
    You may sign a form HA-520, called "Request for Review by the Appeals
    Council," or write a letter.

    You may submit your appeal to your local Social security office, a
    hearing office, or mail it directly to the Appeals Council, Office
    of hearings and Appeals, P.O. Box 3200, Arlington, VA 22203.

**The Appeals Council May Review the Decision on Its Own Motion**

Within 60 days from the date shown below, the Appeals Council
may review the decision on its own motion.  This could change the
decision.

After the 60-day period, the Appeals Council may reopen and revise
the decision in certain situations.

The Appeals Council will notify you if it decides to review the
decision on its own motion or to reopen and revise the decision.

Unless you request review or the Appeals Council reviews the decision on
its own motion, you may not obtain a court review of your case (sections
205(g), 1631(c)(3) or 1869(b) of the Social Security Act).

This notice and enclosed copy of decision mailed

July 8, 1993

cc:
 Edward M. Braiman
45 Exchange Street
Rochester, NY  14614

<u>NOTE TO PROCESSING CENTER</u>
<u>FURTHER ACTION NECESSARY</u>

DEPARTMENT OF
HEALTH AND HUMAN SERVICES
Social Security Administration
OFFICE OF HEARINGS AND APPEALS

DECISION

<u>IN THE CASE OF</u>                          <u>CLAIM FOR</u>

                                          Period of Disability and
Maya A. Broady                            Disability Insurance Benefits
(Claimant)                                _____

_____              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
(Wage Earner)                             (Social Security Number)

This case is before the Administrative Law Judge upon a request
for hearing, pursuant to Section 205 of the Social Security Act,
as amended.  The claimant, Maya A. Broady, disagrees with the
determination of the Social Security Administration that she is
not entitled to a period of disability and disability insurance
benefits under Title II of the Social Security Act.  After due
notice, a hearing was held in Rochester, New York on May 12, 1993
and the claimant appeared and testified.  She was represented by
Edward M. Braiman, Esq.  Exhibits 1 through 27 have been entered
into the record.

Here, the issue to be resolved is whether the claimant satisfies
the requirements for "disability" under the Social Security Act,
and, if so, as of what date.

After careful consideration of all of the documents identified in
the record as exhibits and the testimony at the hearing it is
concluded that the claimant is "disabled".

The claimant is a 40 year old high school graduate with work
experience as a secretary who alleges disability since April 15,
1992 due to cervical disc disease with right sided radiculopathy.

The medical record shows that the claimant has had fluctuating
symptoms with pain and weakness in her right arm since August of
1991 as well as right sided neck pain and arm paresthesias.  She
was initially evaluated for cervical disc disease and a magnetic

Maya A. Broady
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

2

resonance imaging scan showed a mild disc bulge at C5-6.  Louis
H. Medved, M.D. opined in a March 1992 report that the bulge was
of no clinical consequence since the disc did not compress any
neural structures.  Nevertheless the claimant continued with
right sided neck pain and right facial and oral pain and she was
restricted from work and prescribed a course of physical therapy
to the neck for symptomatic treatment.

Barbara Schuster, M.D., the claimant's treating physician,
indicated that she had first seen the claimant in April of 1992
and because of her continuing symptoms and many symptoms which
did not fit with cervical syndrome the possibility of multiple
sclerosis was investigated.  A magnetic resonance imaging scan of
the brain performed in September of 1992 had findings consistent
with the diagnosis of multiple sclerosis.  Dr. Schuster notes
continuing right upper arm and back and neck pain with
intermittent spasm, insomnia and headaches.  The claimant has
reduced motor strength in the right arm and in a March 1993
examination showed mild left circumduction of gait.  The claimant
has also evidence of patella-femoral syndrome and complains of
knee pain.  Dr. Schuster has opined that because the claimant is
an office worker and because many of her problems have been in
her upper extremities and neck, she has been totally disabled
since April 1992 because of pain (Exhibit 27).

At the hearing the claimant complained of loss of motor function
in her right arm and poor vision.  She tires easily and has
numbness in her fingers and a buckling in her knees with
prolonged walking.

The Administrative Law Judge has considered all of the evidence
in this case and finds that the claimant was a credible witness.
Her treating physician has opined that she is totally disabled
and the evidence has noted disorganization of motor function,
fatigue and motor weakness.  The weight of the evidence in this
case is that the claimant's impairment is equal in severity to
that impairment described in Section 11.09A and C of Appendix 1
to Subpart P of the Regulations and that she is disabled within
the meaning of Title II of the Social Security Act.

Maya A. Broady
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

3

## FINDINGS

After careful consideration of the entire record, the
Administrative Law Judge makes the following findings:

1.   The claimant met the disability insured status
     requirements of the Act on April 15, 1992, the date the
     claimant stated she became unable to work, and
     continues to meet them through December 31, 1995.

2.   The claimant has not engaged in substantial gainful
     activity since April 15, 1992.

3.   The medical evidence establishes that the claimant has
     severe multiple sclerosis and cervical disc disease.

4.   The severity of the claimant's impairments equal the
     requirements of section 11.09A and C of Appendix 1,
     Subpart P, Regulations No. 4 and has precluded her from
     working for at least 12 continuous months (20 CFR
     404.1526).

5.   The claimant has been under a "disability," as defined
     in the Social Security Act, since April 15, 1992 (20
     CFR 404.1520(d)).

## DECISION

It is the decision of the Administrative Law Judge that, based on
the application filed on June 22, 1992, the claimant is entitled
to a period of disability commencing April 15, 1992 and to
disability insurance benefits under sections 216(i) and 223,
respectively, of the Social Security Act.

F. Lambert Haley
Administrative Law Judge
3 Fountain Plaza, Room 100
Buffalo, NY  14203-1496

Date:
          July 8, 1993

## LIST OF EXHIBITS

Maya Broady _____        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 _____
(Claimant)                                  (Social Security Number)


_____
(Wage Earner)(Blank in Title XVI
cases or if name is same as above)


| Exhibit No. | Description | No. of Pages |
|---|---|---|
| 1 | Application for Disability Insurance Benefits, filed 6/22/92 | 3 |
| 2 | Social Security Notice, dated 8/5/92 | 3 |
| 3 | Request for Reconsideration, dated 9/21/92 | 3 |
| 4 | State Agency Determinations, dated 11/18/92 and 8/4/92 with attachments | 18 |
| 5 | Notice of Reconsideration, dated 11/19/92 | 3 |
| 6 | Earnings Record, dated 6/22/92 | 2 |
| 7 | Disability Report, dated 6/22/92 | 8 |
| 8 | Report of Contact, dated 6/23/92 | 1 |
| 9 | Report of Contact, dated 8/4/92 | 1 |
| 10 | Reconsideration Disability Report, dated 9/21/92 | 6 |
| 11 | List of Claimant's Medications and Work Background, dated 2/25/93 | 2 |
| 12 | Claimant's Statement, dated 2/24/93 | 2 |
| 13 | Notice of Determination to Claimant from NYS Department of Labor, dated 6/9/92 | 1 |
| 14 | Medical Records from Strong Memorial Hospital, dated 1/5/87 to 8/20/91 | 6 |
| 15 | Medical Records from Rochester Diagnostic Imaging, dated 3/6/92 and Rochester Sports Medicine and Physical Therapy, dated 4/15/92 | 2 |

## LIST OF EXHIBITS

Maya Broady                              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
(Claimant)                               (Social Security Number)

(Wage Earner)(Blank in Title XVI
cases or if name is same as above)

| Exhibit No. | Description | No. of Pages |
|---|---|---|
| 16 | Medical Records from Strong Memorial Hospital, dated 2/18/91 to 6/6/92 | 15 |
| 17 | Medical Report from Barbara Schuster, M.D., dated 7/17/92 and Professional Qualifications | 6 |
| 18 | Medical Reports from Louis H. Medved, M.D., dated 1/2/90 to 9/9/92 and Professional Qualifications | 13 |
| 19 | Medical Report from Strong Memorial Hospital, dated 9/22/92 (Dr. David Mattson) | 3 |
| 20 | Statement from Daniel S. Pettee, M.D., dated 10/21/92 and Professional Qualifications | 2 |
| 21 | Statement from Joseph M. Marino, M.D., dated 10/22/92 and Professional Qualifications | 2 |
| 22 | Medical Report from Barbara Schuster, M.D., dated 10/31/92 | 11 |
| 23 | Letter from Metropolitan Life Insurance Company, dated 11/11/92 with attached reports | 6 |
| 24 | State Agency Medical Advice, dated 11/16/92 | 2 |
| 25 | Report from Barbara Schuster, M.D., dtd. 3/17/93 | 6 |
| 26 | Report from Strong Memorial Hospital, dtd. 10/19/92 | 12 |

SUBMITTED AT THE HEARING

| 27 | Report from Barbara Schuster, M.D., dtd. 9/10/92 | 6 |

2

**GENERAL MOTORS NATIONAL BENEFIT CENTER**
**BENEFIT SERVICES GROUP**
Regional Personnel Administration
P.O. Box 5152
Southfield, Michigan 48086-5152

September 16, 1992

Maya A. Broady
238 Sawyer Street
Rochester, New York   14619

Dear Ms. Broady:

I am writing in regards to your inquiry about the Supplemental Extended Disability Program available through FLEX 92. As you are aware, we have never received an Election form from you, nor have any deductions been taken from your paycheck.

In accordance with the General Motors Flex 92 provisions, your request to enroll for Supplemental Extended Disability has been denied. If you have any further questions, you may contact Renee Barone, Employe Benefits, at (313)556-3263.

Sincerely,

Elaine Hartigan
Flex Administrator

# FLEX '92

**ELECTION FORM**

GM Flex-1
Rev 9/91

28636R

## GENERAL MOTORS FLEXIBLE COMPENSATION PROGRAM
## FOR SALARIED EMPLOYES IN THE UNITED STATES

> Please read carefully the Flex '92 Instructions which accompany this Election Form

### ① FLEX TRADE-INS

Shown below, under "Trade-In Value", are the Flex Credits (cash value) you will receive if you elect to trade in any of the GM benefit coverages listed
To trade in any benefit coverage, check the corresponding box in the "Election" column

| GM Benefit Coverage | Trade-In Value | Election |
|---|---|---|
| • Life/Extra Accident Insurance (one-half of your basic coverage) | $28.51 | ☐ |
| • Survivor Income Benefit Insurance | $5.00 | ☐ |
| • Dental Coverage | $289.00 | ☐ |

### ② FLEX SPENDING ACCOUNTS

| Description | Per Pay Period Deduction | Annual Deduction | Flex Credits | Total Annual Contribution |
|---|---|---|---|---|
| Dependent Care | (1a) _____ | _____ | (1b) _____ | _____ * |
| Health Care | (2a) _____ | _____ | (2b) _____ | _____ |
| TOTAL | _____ | _____ | _____ | _____ ** |

Cash Payment                                                 (3) _____

\* The maximum amount contributed to a Dependent Care Spending Account, per family, may not exceed $5000 ($2500 in the case of a married individual filing a separate income tax return).

\*\* Your combined Total Annual Contribution amount cannot exceed $5000

**NOTE:** Federal law requires that Dependent Care and Health Care Spending Account funds must remain separate and cannot be switched from one account to the other Therefore, if you have any questions related to what type of a spending account you should establish, please contact the National Benefit Center at 1-800-633-3900

### ③ SUPPLEMENTAL EXTENDED DISABILITY BENEFIT COVERAGE

If you will have less than 10 years of credited service on January 1, 1992, you may purchase Supplemental Extended Disability Benefit Coverage, on a pre-tax basis, at an annual cost to you of   **$28.44**   To purchase this coverage for 1992, check the box to the right                                                                        ☒

### ④ AFTER-TAX HEALTH CARE DEDUCTIONS

If you are enrolled for any health care coverage(s) that require employe contributions, your monthly contributions will be deducted automatically from your pay on a before-tax basis This treatment will reduce your taxes and increase your take home pay However, if you want your monthly contributions for such coverages to be taken from your pay on an after-tax basis, check the box to the right                                                                        ☐

### ⑤ ACKNOWLEDGEMENT/SIGNATURE

If you have made an entry in any of the items above, please sign, date and mail this form to the GM National Benefit Center no later than November 30, 1991, at the address shown on the Instruction Sheet. You should make a copy of this form for your records.

I hereby authorize General Motors to reduce my 1992 pay by the amounts required to pay for my pre-tax Flex elections  I understand that any amount(s) remaining in my Spending Account(s) 90 days following the end of the Plan Year will be forfeited by me and used to pay plan administrative expenses I also understand that any Flex elections I made for 1991 will cease to be effective on December 31, 1991, and my 1992 elections will be effective on January 1, 1992. If I have elected to fund a Health Care Spending Account, I agree that in the event I terminate my employment with GM, I will continue to participate in the Health Care Spending Account for the remainder of the Plan Year and hereby authorize GM to deduct any outstanding contributions from my final pay or any other assets held on my behalf.

_____ Signature        (716) 647-7128        10/31/91
                                            Daytime Phone Number        Date

58001    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    3120
MAYA B KILLINGS
238 SAWYER ST
ROCHESTER  NY  14619-192

Maa Brow
238 Sawye.
Rochester
Rochester NY 14619

7010 1060 0000 8639 0234



The Garden City Group Inc.
Attn: Motors Liquidation Company
Claims Processing
P.O. Box 9386
Dublin, OHIO 43017-4286



UNITED STATES
POSTAL SERVICE

1000        43017

U.S. POSTAGE
PAID
ROCHESTER, NY
14652
FEB 10 11
AMOUNT
$6.66
0002705-11

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT SOUTHERN DISTRICT OF NEW YORK

**ADMINISTRATIVE PROOF OF CLAIM**

Name of Debtor Against Which Administrative Claim is Held
*General Motors Company (Corporation)*

Case Number
*09-50026 (REG)*

Name of Creditor (The person or other entity to whom the debtor owes money or property)  *Maya A Brady*
*aka - Killings*

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

Name and address where notices should be sent
*Maya A Brady*
*238 Sawyer St, Rochester, NY 14619*
Telephone number  *585-328-2325*

☐ Check box if you have never received any notices from the bankruptcy court in this case

☐ Check box if the address differs from the address on the envelope sent to you by the court

THE GARDEN CITY GROUP, INC
FEB 1 4 2011

THIS SPACE IS FOR COURT USE ONLY

Account or other number by which creditor identifies debtor
*15 . . . .*

Check here ☐ replaces
if this claim ☐ amends    a previously filed claim  dated

1  Basis for Claim
☐ Goods sold
☐ Services performed
☐ Money loaned
☐ Personal injury/wrongful death
☐ Taxes
☒ Other *Dex-cool Engine damage*

☐ Retiree benefits as defined in 11 U S C § 1114(a)
☒ Wages, salaries, and compensation (fill out below)
Last four digits of SS# *4038*
Unpaid compensation for services performed
from *10/92* to *Present*

2  Date debt was incurred  *6/88 - Present*

3  If court judgment, date obtained

4  Total Amount of Administrative Expense Claim  $*206,000*

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

5  Brief Description of Administrative Expense Claim (attach any additional information)
*1) Unpaid Disability. It was determined that I was disabled at the time I was forced to retire from GM in 4/1993. See attachments. I was paid for temporary disability (6 months) but not permanent.*
*2) Dex-cool Engine damage. I had to replace head case in my 2001 Pontiac Sunfire in 2007 due to coolant leakage. (See attached)*
*3) GM failed to protect me. I worked in a hostile environment. I filed a claim with the EEOC. See attached.*

6  Credits  ☒ All payments made on this claim have been credited and deducted for the purpose of making this proof of claim

7  Supporting Documents  *Attach copies of supporting documents*, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien
DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain  If the documents are voluminous, attach a summary

8  Date-Stamped Copy  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

FILED - 70925
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 1 50026 (REG)

Date  *2/9/11*

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)
*Maya Brady*

Penalty for presenting a fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years or both  18 U S C §§ 152 and 3571

*Original Sent on 2/10/11*
*"2nd Copy"*

*Maya Broady*

*GM also failed to pay me disability benefits under this plan*

*additional informat*

## HEALTH CARE BENEFITS

The General Motors Health Care Program provides protection for you and your eligible dependents against a wide range of health care expenses

Generally basic hospital surgical medical prescription drug and mental health and substance abuse coverages are provided through The Informed Choice Plan (ICP) Dental and vision coverages are also provided Additional coverage is available through the Comprehensive Medical Expense Program (CMEP) If you are covered by the ICP you have a choice among three health care options to the extent approved options are available in your area

* Traditional option
* Preferred Provider Organization (PPO) option
* Health Maintenance Organization (HMO) option

At the time you make your health care election you also may choose between the traditional dental and alternative dental options (if available in your area)

All of the General Motors health care options are designed to provide quality care on a cost-effective basis Descriptive materials concerning benefits provided under each option are available at the office which administers your health care benefits

## FLEXIBLE COMPENSATION PROGRAM

The Flexible Compensation Program provides several options to customize your total compensation For example you can trade in (1) part of your life and extra accident insurance as well as (2) all of your Survivor Income Benefit Insurance and/or (3) dental coverage for credits or cash You can purchase supplemental extended disability benefit coverage if you have under 10 years of credited service You can use pre tax dollars from your pay to fund your contributions (if any) for (1) the Comprehensive Medical Expense Program (CMEP) (2) a Health Maintenance Organization (HMO) and (3) health care coverage for sponsored dependents With credits contributions from your pay or both you can establish Health Care and/ or Dependent Care spending accounts The spending accounts enable you to cover specified expenses in a tax-effective manner

**Effect on Other Benefits**

Although any pre tax contributions you make to Flex will lower your pay for income tax purposes they will not lower your pay for determining pay related GM benefits such as

* Retirement benefits
* Savings Stock Purchase Program (S-SPP)
* Life insurance
* Disability benefits

## SURVIVOR BENEFITS

Insured monthly survivor income benefits are reduced by the amount of any monthly Part A basic retirement benefit paid to an eligible survivor

Contributory Personal Accident Insurance which provides additional coverage for death dismemberment and certain other conditions resulting from bodily injury sustained in an accident also is available to you

## INCOME PROTECTION PLAN

Classified employes with 10 or more years of service at the time of layoff may be eligible to receive Income Protection Plan (IPP) benefits after exhausting benefit entitlement under the Layoff Benefit Plan (LBP) If eligible IPP benefits can continue until retirement or until other General Motors employment becomes available Depending on your years of service semi monthly income benefits can range from 50% to 60% of your base pay as of your last day worked reduced by any (1) earnings you receive and (2) statutory benefits you receive

## DISABILITY INCOME

Depending on your eligibility and enrollment status other benefits may be payable if you become totally and permanently disabled including

* Monthly installment payments of your Basic Life Insurance following expiration of extended disability benefits if you had less than 10 years of credited service when you became totally and permanently disabled
* Monthly installments of any Personal Accident Insurance for which you may be enrolled
* Your entire account balance under the GM Savings Stock Purchase Program including all of GM's contributions

## PERSONAL RETIREMENT INCOME PLAN

You may contribute up to $2000 annually ($2250 if you have a non working spouse $4000 if you have a working spouse who earns at least $2000 annually) to an Individual Retirement Account (IRA) Through the convenience of payroll deduction you can make contributions to the Personal Retirement Income Plan sponsored by Putnam Fund Distributors Inc The amount you contribute may be deductible from your gross income for Federal tax purposes based upon the following schedule

| YOUR ADJUSTED ANNUAL GROSS INCOME $ | PERCENT OF IRA DEDUCTIBLE FOR TAX PURPOSES | | |
|---|---|---|---|
| | SINGLE % | MARRIED* | |
| | | filing jointly % | filing separately % |
| 25,000 or less | 100 | 100 | |
| 25,001 - 30,000 | 100 to 50 | 100 | |
| 30,001 - 35,000 | 50 to 0 | 100 | |
| 35,001 - 40,000 | 0 | 100 | |
| 40,001 - 45,000 | 0 | 100 to 50 | |
| 45,001 - 50,000 | 0 | 50 to 0 | |
| 50,001 and over | 0 | 0 | |

*filing jointly

If you are enrolled in the Personal Retirement Income Plan a quarterly statement of your account is provided to you by Putnam

## NOTE

Eligibility for benefits and the actual amount of payment under all of GM's plans that make up your benefit program must be determined under the legal documents that apply to each plan Further General Motors Corporation reserves the right to amend change or terminate the plans and programs described in this summary according to the legal documents that apply to each plan or program If you do not agree with all of your personal information shown in this summary please bring it to the attention of a representative at the office which administers your GM benefits

Social Security benefits in this statement are estimates only If you earned less than the maximum amount subject to Social Security taxes your Social Security benefits may be lower than the amounts shown on the reverse side



Maya Broady
238 Sawyer St
Rochester NY 14619

ROCHESTER NY 1-41

11 FEB 2011 PM 1 1

The Garden City Group, Inc
Attn, Motors Lquidatic Company
Claim Processing
P.O. Box 9386
Dublin Ohio 43017-4286

ROCHESTER NY
FEB 1 2011

# EXHIBIT C

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | **Chapter 11 Case No.** |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, | : | |
| f/k/a **General Motors Corp.,** *et al.* | : | **09-50026 (REG)** |
| | : | |
| Debtors. | : | **(Jointly Administered)** |

----------------------------------------------------------------x

## <u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK     )
                     ) ss:
COUNTY OF SUFFOLK     )

I, Barbara Kelley Keane, being duly sworn, depose and state:

    1.      I am an Assistant Director with The Garden City Group, Inc., the claims and noticing agent for the debtors and debtors-in-possession (the "Debtors") in the above-captioned proceeding.  Our business address is 105 Maxess Road, Melville, New York 11747.

    2.      Between September 24, 2009 and September 26, 2009, at the direction of Weil, Gotshal & Manges LLP, counsel for the Debtors in the above-captioned case, I caused to be served true and correct copies of the documents identified below addressed to each of the individuals and entities in the service lists attached hereto as Exhibit "A" (all parties listed in the Debtor's Schedules of Assets and Liabilities) and Exhibit "B" (including but not limited to all parties who filed a Notice of Appearance, the master service list, the creditor matrix and all other parties in interest) as follows:

    (i)    **Notice Of Bar Dates for Filing of Proofs of Claim (the "Notice")** and a customized **Proof of Claim** form addressed to each of  the individuals and entities identified in the service list attached hereto as Exhibit "A"; and

    (ii)    **Notice** and a **Proof of Claim** form addressed to each of the individuals and entities identified in the service list attached hereto as Exhibit "B"

by depositing same in sealed, postage paid envelopes at a United States Post Office for delivery by the United States Postal Service via First Class Mail.


                             /s/  Barbara Kelley Keane


Sworn to before me this
14th day of October, 2009

/s/  Eamon Mason
Notary Public – State of New York
No 01MA6187254
My Commission Expires May 19, 2012

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                              :

In re                      :       Chapter 11 Case No.
                                :

MOTORS LIQUIDATION COMPANY     :       09-50026 (REG)
f/k/a GENERAL MOTORS CORPORATION,  :
*et al.*,                    :
                                :

             Debtors.      :       (Jointly Administered)
                                :

------------------------------------------------------------x

### NOTICE OF DEADLINES FOR FILING PROOFS OF CLAIM
### (INCLUDING CLAIMS UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE)

TO ALL PERSONS AND ENTITIES WITH CLAIMS (INCLUDING CLAIMS UNDER SECTION 503(B)(9) OF THE BANKRUPTCY CODE) AGAINST A DEBTOR SET FORTH BELOW:

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation**) | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC**) | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation**) | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc. (f/k/a **Chevrolet-Saturn of Harlem, Inc.**) | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc.<br>CKS of Harlem |

      PLEASE TAKE NOTICE THAT, on September 16, 2009, the United States Bankruptcy Court for the Southern District of New York (the "**Court**"), having jurisdiction over the chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") entered an order (the "**Bar Date Order**") establishing (i) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each person or entity (including, without limitation, individuals, partnerships, corporations, joint ventures, and trusts) to file a proof of claim ("**Proof of Claim**") based on prepetition claims, including a claim under section 503(b)(9) of the Bankruptcy Code, as described more fully below (a "**503(b)(9) Claim**"), against any of the Debtors (the "**General Bar Date**"); and (ii) **November 30, 2009, at 5:00 p.m. (Eastern Time)** as the last date and time for each governmental unit (as defined in section 101(27) of the Bankruptcy Code) to file a Proof of Claim based on prepetition claims against any of the Debtors (the "**Governmental Bar Date**" and, together with the General Bar Date, the "**Bar Dates**").

      The Bar Date Order, the Bar Dates and the procedures set forth below for the filing of Proofs of Claim apply to all claims against the Debtors (other than those set forth below as being specifically excluded) that arose prior to **June 1, 2009**, the date on which the Debtors commenced their cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").

**If you have any questions relating to this Notice, please feel free to contact AlixPartners at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com.  In addition, you may contact the Official Committee of Unsecured Creditors through its website at www.motorsliquidationcreditorscommittee.com or at 1-212-715-3275.**

**YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE ANY QUESTIONS, INCLUDING WHETHER YOU SHOULD FILE A PROOF OF CLAIM.**

1.    **WHO MUST FILE A PROOF OF CLAIM**

You **MUST** file a **Proof of Claim** to vote on a chapter 11 plan filed by the Debtors or to share in any of the Debtors' estates if you have a claim that arose prior to **June 1, 2009**, including a 503(b)(9) Claim, and it is not one of the other types of claims described in Section 2 below.  Acts or omissions of the Debtors that arose before **June 1, 2009** may give rise to claims against the Debtors that must be filed by the applicable Bar Date, notwithstanding that such claims may not have matured or become fixed or liquidated or certain prior to **June 1, 2009.**

Pursuant to section 101(5) of the Bankruptcy Code and as used in this Notice, the word "claim" means:  (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  Further, claims include unsecured claims, secured claims, priority claims, and 503(b)(9) Claims (as defined in Section 2(d) below).

2.    **WHO NEED <u>NOT</u> FILE A PROOF OF CLAIM**

You need not file a Proof of Claim if:

(a)    Your claim is listed on the Schedules (as defined below) and (i) is **not** described in the Schedules as "disputed," "contingent," or "unliquidated," (ii) you do **not** dispute the amount or nature of the claim set forth in the Schedules, and (iii) you do **not** dispute that the claim is an obligation of the specific Debtor against which the claim is listed on the Schedules;

(b)    Your claim has been paid in full;

(c)    You hold an interest in any of the Debtors, which interest is based exclusively upon the ownership of common or preferred stock, membership interests, partnership interests, or warrants or rights to purchase, sell or subscribe to such a security or interest; **provided**, **however**, that interest holders who wish to assert claims (as opposed to ownership interests) against any of the Debtors that arise out of or relate to the ownership or purchase of an interest, including claims arising out of or relating to the sale, issuance, or distribution of the interest, must file Proofs of Claim on or before the applicable Bar Date, unless another exception identified herein applies;

(d)    You hold a claim allowable under sections 503(b) and 507(a)(2) of the Bankruptcy Code as an administrative claim; **provided, however, 503(b)(9) Claims are subject to the General Bar Date as provided above.**  Section 503(b)(9) provides in part: "…there shall be allowed administrative expenses…including…(9) the value of any goods received by the debtor within 20 days before the date of commencement of a case under this title in which the goods have been sold to the debtor in the ordinary course of such debtor's business." **Accordingly, if you have a 503(b)(9) Claim, you must file a Proof of Claim on or before the General Bar Date**;

(e)    You hold a claim that has been allowed by an order of the Court entered on or before the applicable Bar Date;

(f)    You hold a claim against any of the Debtors for which a separate deadline is fixed by the Court (whereupon you will be required to file a Proof of Claim by that separate deadline);

(g)    You are a Debtor in these cases having a claim against another Debtor;

(h)    You are an affiliate (as defined in section 101(2) of the Bankruptcy Code) of any Debtor as of the Bar Date;

(i)     You hold a claim for which you have already properly filed a Proof of Claim against any of the Debtors with the Clerk of the Court or The Garden City Group, Inc., the Debtors' claims agent, utilizing a claim form that substantially conforms to the Proof of Claim Form (as defined below) or Official Form 10; or

(j)     You hold a claim that is limited exclusively to the repayment of principal, interest and other fees and expenses on or under any agreements (a "**Debt Claim**") governing any debt security issued by any of the Debtors pursuant to an indenture (together, the "**Debt Instruments**") if the indenture trustee or similar fiduciary under the applicable indenture or fiscal and paying agency agreement files a Proof of Claim against the applicable Debtor, on or before the Bar Date, on account of all Debt Claims against such Debtor under the applicable Debt Instruments, **provided**, **however**, that any holder of a Debt Claim wishing to assert a claim arising out of or relating to a Debt Instrument, other than a Debt Claim, shall be required to file a Proof of Claim with respect to such claim on or before the Bar Date, unless another exception identified herein applies.  Debt Instruments include those agreements listed at the end of this Notice.

**YOU SHOULD NOT FILE A PROOF OF CLAIM IF YOU DO NOT HAVE A CLAIM AGAINST THE DEBTORS.**

**THE FACT THAT YOU HAVE RECEIVED THIS NOTICE DOES NOT MEAN THAT YOU HAVE A CLAIM OR THAT THE DEBTORS OR THE COURT BELIEVE THAT YOU HAVE A CLAIM.**

**3.      EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

If you hold a claim arising from the rejection of an executory contract or unexpired lease, you must file a Proof of Claim based on such rejection by the later of (i) the applicable Bar Date, and (ii) the date which is **thirty days** following the entry of the order approving such rejection or you will be forever barred from doing so.  Notwithstanding the foregoing, if you are a party to an executory contract or unexpired lease and you wish to assert a claim on account of unpaid amounts accrued and outstanding as of June 1, 2009 pursuant to that executory contract or unexpired lease (other than a rejection damages claim), you must file a Proof of Claim for such amounts on or before the applicable Bar Date unless an exception identified above applies.

**4.      WHEN AND WHERE TO FILE**

All Proofs of Claim must be filed so as to be **actually** **received** on or before the applicable Bar Date at the following address:

If by overnight courier or hand delivery to:          If by first-class mail, to:

The Garden City Group, Inc.                          The Garden City Group, Inc.
Attn: Motors Liquidation Company Claims Processing   Attn: Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A                         P.O. Box 9386
Dublin, Ohio 43017                                   Dublin, Ohio 43017-4286

Or if by hand delivery to:

United States Bankruptcy Court, SDNY
One Bowling Green
Room 534
New York, New York 10004

Proofs of Claim will be deemed timely filed only if **actually** **received** by The Garden City Group, Inc. or the Court on or before the applicable Bar Date.  Proofs of Claim may **not** be delivered by facsimile, telecopy, or electronic mail transmission.

**5.      WHAT TO FILE**

If you file a Proof of Claim, your filed Proof of Claim must: (i) be written in the English language; (ii) be denominated in lawful currency of the United States; (iii) conform substantially to the form provided with this Notice ("**Proof of Claim Form**") or Official Bankruptcy Form No. 10; (iv) state the Debtor against which it is filed; (v) set forth with specificity the legal and factual basis for the alleged claim; (vi) include supporting documentation or an explanation as to why such documentation is not available; and (vii) be **signed** by the claimant or, if the claimant is not an individual, by an authorized agent of the claimant.

IF YOU ARE ASSERTING A CLAIM AGAINST MORE THAN ONE DEBTOR, SEPARATE PROOFS OF CLAIM MUST BE FILED AGAINST EACH SUCH DEBTOR AND YOU MUST IDENTIFY ON YOUR PROOF OF CLAIM THE SPECIFIC DEBTOR AGAINST WHICH YOUR CLAIM IS ASSERTED AND THE CASE NUMBER OF THAT DEBTOR'S BANKRUPTCY CASE.  A LIST OF THE NAMES OF THE DEBTORS AND THEIR CASE NUMBERS IS SET FORTH ABOVE.

Additional Proof of Claim Forms may be obtained at www.uscourts.gov/bkforms/ or www.motorsliquidation.com.

**YOU SHOULD ATTACH TO YOUR COMPLETED PROOF OF CLAIM FORM COPIES OF ANY WRITINGS UPON WHICH YOUR CLAIM IS BASED.  IF THE DOCUMENTS ARE VOLUMINOUS, YOU SHOULD ATTACH A SUMMARY.**

**6.      CONSEQUENCES OF FAILURE TO FILE A PROOF OF CLAIM BY THE APPLICABLE BAR DATE**

*Except with respect to claims of the type set forth in Section 2 above, any creditor who fails to file a Proof of Claim on or before the applicable Bar Date in the appropriate form in accordance with the procedures described in this Notice for any claim such creditor holds or wishes to assert against each of the Debtors, will be forever barred – that is, forbidden – from asserting the claim against each of the Debtors and their respective estates (or filing a Proof of Claim with respect to the claim), and each of the Debtors and their respective chapter 11 estates, successors, and property will be forever discharged from any and all indebtedness or liability with respect to the claim, and the holder will not be permitted to vote to accept or reject any chapter 11 plan filed in these chapter 11 cases, participate in any distribution in any of the Debtors' chapter 11 cases on account of the claim, or receive further notices with respect to any of the Debtors' chapter 11 cases.*

**7.      THE DEBTORS' SCHEDULES, ACCESS THERETO, AND CONSEQUENCES OF AMENDMENT THEREOF**

You may be listed as the holder of a claim against one or more of the Debtors in the Debtors' Schedules of Assets and Liabilities and/or Schedules of Executory Contracts and Unexpired Leases (collectively, the "**Schedules**").  If you rely on the Debtors' Schedules, it is your responsibility to determine that the claim is accurately listed in the Schedules.

As set forth above, if you agree with the classification and amount of your claim as listed in the Debtors' Schedules, and if you do not dispute that your claim is only against the specified Debtor, and if your claim is not described as "disputed," "contingent," or "unliquidated," you need not file a Proof of Claim.  Otherwise, or if you decide to file a Proof of Claim, you must do so before the Bar Date in accordance with the procedures set forth in this Notice.

Copies of the Schedules may be examined by interested parties on the Court's electronic docket for the Debtors' chapter 11 cases, which is posted on the Internet at www.motorsliquidation.com and www.nysb.uscourts.gov (a PACER login and password are required and can be obtained through the PACER Service Center at www.pacer.psc.uscourts.gov.).  Copies of the Schedules may also be examined by interested parties between the hours of 9:00 a.m. and 4:30 p.m. (Eastern Time) at the office of the Clerk of the Bankruptcy Court, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 511, New York, New York 10004.  Copies of the Debtors' Schedules may also be obtained by written request to the Debtors' claims agent at the address and telephone number set forth below:

The Garden City Group, Inc.
Attn: Motors Liquidation Company
P.O. Box 9386
Dublin, Ohio 43017-4286
1-703-286-6401

In the event that the Debtors amend their Schedules to (a) designate a claim as disputed, contingent, unliquidated, or undetermined, (b) change the amount of a claim reflected therein, (c) change the classification of a claim reflected therein, or (d) add a claim that was not listed on the Schedules, the Debtors will notify you of the amendment. In such case, the deadline for you to file a Proof of Claim on account of any such claim is the later of (a) the applicable Bar Date and (b) the date that is **thirty days** after the Debtors provide notice of the amendment.

**A holder of a possible claim against the Debtors should consult an attorney regarding any matters not covered in this Notice, such as whether the holder should file a Proof of Claim.**


DATED:  September 16, 2009                              BY ORDER OF THE COURT
New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

ATTORNEYS FOR DEBTORS AND
DEBTORS IN POSSESSION


**Certain Debt Instruments**

| | Debt Instrument | CUSIP, ISIN, or Swiss Security Numbers |
|---|---|---|
| 1 | Indenture, dated as of Nov. 15, 1990, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AN5, 370442AJ4, 370442AR6, 37045EAG3, 37045EAS7 |
| 2 | Indenture, dated as of Dec. 7, 1995, between GM and Citibank as indenture trustee | CUSIP Nos. 370442AT2, 370442AU9, 370442AV7, 370442AZ8, 370442BB0, 370442816, 370442774, 370442766, 370442758, 370442741, 370442733, 370442725, 370442BQ7, 370442BT1, 370442717, 370442BW4, 370442BS3, 370442121, 370442691 |
| 3 | Trust Indenture, dated as of July 1, 1995, between Michigan Strategic Fund and Dai-Ichi Kangyo Trust Company of New York ($58,800,000 Multi-Modal Interchangeable Rate Pollution Control Refunding Revenue Bonds) | CUSIP No. 594693AQ6 |
| 4 | Indenture of Trust, dated as of July 1, 1994, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($12,500,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AA2 |
| 5 | Indenture of Trust, dated as of July 1, 1999, between City of Moraine, Ohio and Dai-Ichi Kangyo Trust Company of New York ($10,000,000 Solid Waste Disposal Revenue Bonds) | CUSIP No. 616449AB0 |
| 6 | Trust Indenture, dated as of Dec. 1, 2002, among City of Fort Wayne, Indiana, JPMorgan Chase Bank and Bank One Trust Company, N.A., ($31,000,000 Pollution Control Revenue Refunding Bonds) | CUSIP No. 455329AB8 |
| 7 | Trust Indenture, dated as of Mar. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($20,040,000 State of Ohio Pollution Control Refunding Revenue Bonds) | CUSIP No. 667596AU2 |
| 8 | Indenture of Trust, dated as of Dec. 1, 2002, between Ohio Water Development Authority and JPMorgan Chase Bank ($46,000,000 State of Ohio Solid Waste Revenue Bonds) | CUSIP No. 67759ABC2 |
| 9 | Trust Indenture, dated as of Apr. 1, 1984, among City of Indianapolis, Indiana, Bankers Trust Company and The Indiana National Bank ($1,400,000 Pollution Control Revenue Bonds) | CUSIP No. 455329AB8 |

| 10 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003, between GM, Deutsche Bank AG London, as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171942757, XS0171943649 |
|---|---|---|
| 11 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between GM Nova Scotia Finance Company, GM, as guarantor, Deutsche Bank Luxembourg S.A., as fiscal agent and paying agent, and Banque Générale du Luxembourg S.A., as paying agent | ISIN Nos. XS0171922643, XS0171908063. |
| 12 | Bond Purchase and Paying Agency Agreement dated May 28, 1986 between GM and Credit Suisse | Swiss Security No. 876 926 |

| Name | Address1 | Address2 | Address3 | Address4 | City | State | Zip |
|---|---|---|---|---|---|---|---|
| BROADWAY GERALD | 4609 NOBILITY CT | | | | CHARLOTTE | NC | 28269-1085 |
| BROADWAY GULF SERVICE | 53 BROADWAY | | | | JERSEY CITY | NJ | 07306-6311 |
| BROADWAY IN CHICAGO | ATTN: EILEEN JACARIO | 151 W RANDOLPH ST | | | CHICAGO | IL | 60601-3108 |
| BROADWAY IN CHICAGO LLC | ATTN LESLEE JONES | 17 N STATE ST STE 810 | | | CHICAGO | IL | 60602-3047 |
| BROADWAY JR, WILLIAM V | 70 CEDAR BLUFF DR APT 16 | | | | LAKE ST LOUIS | MO | 63367-2808 |
| BROADWAY MEDICAL ASSOC INC | 200 BOSTON POST RD | | | | ORANGE | CT | 06477 |
| BROADWAY SAAB | 2700 S ASHLAND AVE | | | | GREEN BAY | WI | 54304-5303 |
| BROADWAY SAAB | CUEHL, KEVIN J. | 2700 S ASHLAND AVE | | | GREEN BAY | WI | 54304-5303 |
| BROADWAY TOWING & RECOVERY | 517 E 73RD ST | | | | NEW YORK | NY | 10021 |
| BROADWAY, ADDIE | 1417 OAKLAWN DR | | | | MONROE | LA | 71202-3035 |
| BROADWAY, ADDIE M | 1417 OAKLAWN DR | | | | MONROE | LA | 71202-3035 |
| BROADWAY, ARDELL | 6306 KAREN DR | | | | FLINT | MI | 48504-1665 |
| BROADWAY, BILLIE FAYE | 201 SOUTHLAND DR | | | | FLORENCE | AL | 35633-7729 |
| BROADWAY, BOBBY L | 201 SOUTHLAND DR | | | | FLORENCE | AL | 35633-7729 |
| BROADWAY, CATHERINE | 407 IRVING DR | | | | WILMINGTON | DE | 19802-1217 |
| BROADWAY, CHARLES W | 9719 S SHORE DR | | | | PIGEON | MI | 48755-9675 |
| BROADWAY, EDWARD J | 40745 SHORE ST | | | | WATERFORD | MI | 48328-1270 |
| BROADWAY, GARY W | 344 N RIVER RD | | | | MUNROE FALLS | OH | 44262-1331 |
| BROADWAY, ILSE-MARIE I | 5 BARTEL CT | | | | TIBURON | CA | 94920-1656 |
| BROADWAY, JAMES E | 5806 RUBIN AVE | | | | BALTIMORE | MD | 21215-3526 |
| BROADWAY, JEWELL R | 2209 DETROIT STREET | | | | FLINT | MI | 48503 |
| BROADWAY, LEONARD G | 180 FRANKLIN CORNER RD | | | | LAWRENCEVILLE | NJ | 08648-2530 |
| BROADWAY, LULA | 8800 DORCHESTER RD UNIT 2902 | | | | NORTH CHARLESTON | SC | 29420-7335 |
| BROADWAY, LULA M | 88000 DORCHESTER RD | UNITE 2902 | | | N CHARLESTON | SC | 29420 |
| BROADWAY, SAMUEL | 205 CRESTVIEW DR | | | | HITCHCOCK | TX | 77563-3828 |
| BROADWAY, WILLARD J | 24 TALLULAH CIR | | | | CHEROKEE VILLAGE | AR | 72529-4938 |
| BROADWAY, WILLIAM V | 11082 W GLEN | | | | CLIO | MI | 48420-1989 |
| BROADWELL, DAVID | 5127 LATIMER ST | | | | W BLOOMFIELD | MI | 48324-1548 |
| BROADWELL, JOHN C | 5127 LATIMER ST | | | | W BLOOMFIELD | MI | 48324-1548 |
| BROADWELL, ROBERT R | 76 PUTNAM ST | | | | BRISTOL | CT | 06010-4945 |
| BROADWICK, MATTHEW A | 37995 SEAWAY CT | | | | HARRISON TOWNSHIP | MI | 48045-2761 |
| BROADWORTH, BOB D | PO BOX 540 | | | | FLINT | MI | 48501-0540 |
| BROADWORTH, BOB DENNIS | PO BOX 540 | | | | FLINT | MI | 48501-0540 |
| BROADWORTH, DONALD J | 7261 REID RD | | | | SWARTZ CREEK | MI | 48473-9465 |
| BROADWORTH, GEORGE C | 900 NORTH CASS LAKE RD. | | | | WATERFORD | MI | 48328 |
| BROADWORTH, JULIE C | 5213 GREENLEAF DR | | | | SWARTZ CREEK | MI | 48473-1133 |
| BROADWORTH, TAMARA L | 10557 W. U.S. 12 | | | | WHITE PIGEON | MI | 49099 |
| BROADY AERIAL | BROADY, AERIAL | PO BOX 785 | | | NEW ALBANY | IN | 47151-0785 |
| BROADY, AERIAL | 3983 W LEOTA RD | | | | SCOTTSBURG | IN | 47170-7228 |
| BROADY, RENNIE R | 2295 HAZELWOOD ST | | | | DETROIT | MI | 48206-2241 |
| BROADY, MAYA | 238 SAWYER ST | | | | ROCHESTER | NY | 14619-1928 |
| BROADY, PAULA ANN | 393 NE 808 ST | | | | OLD TOWN | FL | 32680-8162 |
| BROADY, PAULA ANN | 393 NEW 808 ST | | | | OLD TOWN | FL | 32680-8162 |
| BROAS, DAVID J | 446 APT A SOUTH ST | | | | LOCKPORT | NY | 14094 |
| BROAS, JUDY M | 446 SOUTH ST APT A | | | | LOCKPORT | NY | 14094-3900 |
| BROBBEY, ANNA S | 4640 N. SHERIDAN | | | | CHICAGO | IL | 60640 |
| BROBBEY, ENOCH D | 4640 N. SHERIDAN | | | | CHICAGO | IL | 60640 |
| BROBBEY, ESTHER S | 4640 N. SHERIDAN | | | | CHICAGO | IL | 60640 |
| BROBBEY, JOHN R | 4640 N. SHERIDAN | | | | CHICAGO | IL | 60640 |
| BROBECK HALE & DORR INTERNATIONAL 30TH FL | 1301 AVENUE OF THE AMERICAS FL 30 | | | | NEW YORK | NY | 10019-6036 |
| BROBECK PHLEGER & HARRISON | SPEAR STREET TOWER | 1 MARKET PLZ | | | SAN FRANCISCO | CA | 94105-1313 |
| BROBERG ROBERT E (47 2005) | GLASSER AND GLASSER | CROWN CENTER, 580 EAST MAIN STREET, SUITE 600 | | | NORFOLK | VA | 23510 |
| BROBERG THEODORE P (495687) | GLASSER AND GLASSER | CROWN CENTER, 580 EAST MAIN STREET, SUITE 600 | | | NORFOLK | VA | 23510 |

# EXHIBIT D

Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Attorneys for Motors Liquidation*
*Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
                         :

**In re**                           :       **Chapter 11 Case No.**
                         :

**MOTORS LIQUIDATION COMPANY, *et al.*,**  :       **09-50026 (REG)**
      **f/k/a General Motors Corp., *et al.***  :
                         :

                  **Debtors.**      :       **(Jointly Administered)**
                         :
-----------------------------------------------------------------x

**DECLARATION OF ANGELA FERRANTE IN SUPPORT OF**
**THE REPLY TO THE RESPONSE TO THE 276TH OBJECTION TO CLAIM**
**NOS. 70896 AND 70925 AND RELATED DOCUMENTS FILED BY THE GUC TRUST**

I, Angela Ferrante, hereby declare as follows:

    1.    I am an Assistant Vice President with The Garden City Group, Inc. ("**GCG**")

located at 1985 Marcus Avenue, Suite 200, Lake Success, New York 11042, and am duly

authorized to submit this declaration (the "**Declaration**"). GCG is retained by the Motors

Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors

(collectively, the "**Debtors**")[1] in connection with the Debtors' Second Amended Joint Chapter

11 Plan, dated March 18, 2011 (the "**Plan**"), as the claims and noticing agent for the Debtors.

---
[1]    The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), MLCS, LLC
(f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc.
(f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc. ("**REALM**"), and
Environmental Corporate Remediation Company, Inc. ("**ENCORE**").



# EXHIBIT E

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
In re                              :      Chapter 11
                                    :
**MOTORS LIQUIDATION COMPANY,** *et al.,*  :      **Case No. 09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al*.  :
                                    :
                  **Debtors.**          :      **(Jointly Administered)**
                                    :
-------------------------------------------------------------------x

## <u>AFFIDAVIT OF SERVICE</u>

STATE OF NEW YORK    )
                            ) ss
COUNTY OF SUFFOLK    )

I, Patrick M. Leathem, being duly sworn, depose and state:

1.   I am an Assistant Director with The Garden City Group, Inc. ("**GCG**"), the claims, noticing and solicitation agent for the debtors and debtors-in-possession (the "**Debtors**") in the above-captioned proceeding.  Our business address is 105 Maxess Road, Melville, New York 11747.

2.   On December 22 and 23, 2010, at the direction of Weil, Gotshal & Manges LLP ("**Weil**"), counsel for the Debtors, GCG caused a true and correct copy of the following documents to be served via first class mail on the holders of Class 1[1] Claims (Secured Claims), holders of Class 2 Claims (Priority Non-Tax Claims) and holders of Class 4 Claims (Property Environmental Claims), as set forth on the service list annexed hereto as Exhibit A:

- Notice of (I) Approval of Disclosure Statement; (II) Establishment of Record Date; (III) Hearing on Confirmation of the Plan and Procedures for Objecting to Confirmation of the Plan; and (IV) Procedures and Deadline for Voting on the Plan (the "**Confirmation Hearing Notice**");

---

[1] Capitalized terms that are not otherwise defined herein have the meanings ascribed to such terms in the Plan and Disclosure Statement and/or the Disclosure Statement Approval Order (as defined below).

- Notice of Non-Voting Status To Unimpaired Classes: Class 1 (Secured Claims), Class 2 (Priority Non-Tax Claims), and Class 4 (Property Environmental Claims); and

- Notice of Deadlines for Filing Administrative Proofs of Claim (the "**Administrative Claim Bar Date Notice**").

3.    Between December 23, 2010 and December 28, 2010, also at the direction of Weil, GCG caused a true and correct copy of the following documents to be served via first class mail on the holders of Class 3 Claims (General Unsecured Claims), as set forth on the service list annexed hereto as Exhibit B[2]:

- Confirmation Hearing Notice;

- Disclosure Statement for Debtors' Amended Joint Chapter 11 Plan dated December 8, 2010, with all exhibits thereto, including, among other documents, the Debtors' Amended Joint Chapter 11 Plan, with all exhibits thereto (collectively, the "**Plan and Disclosure Statement**");

- Order (I) Approving Notice of Disclosure Statement Hearing; (II) Approving Disclosure Statement; (III) Establishing a Record Date; (IV) Establishing Notice and Objection Procedures for Confirmation of the Plan; (V) Approving Notice Packages and Procedures for Distribution Thereof; (VI) Approving the Forms of Ballots and Establishing Procedures for Voting on the Plan; and (VII) Approving the Forms of Notices to Non-Voting Classes under the Plan (the "**Disclosure Statement Approval Order**");

- Letter from Official Committee of Unsecured Creditors dated December 10, 2010 (the "**Committee Letter**");

- Administrative Claim Bar Date Notice (collectively with the Confirmation Hearing Notice, Plan and Disclosure Statement, Disclosure Statement Approval Order and Committee Letter, the "**Solicitation Package**"); and

- a customized Ballot for Accepting or Rejecting Amended Joint Chapter 11 Plan of Motors Liquidation Company (f/k/a General Motors Corporation) and Its

---

[2] Exhibit B includes 109 parties whose claims had initially been under consideration for objection, which would have rendered those parties ineligible to vote on the Debtors' Plan.  As those claims were ultimately not objected to prior to the Solicitation Date, those parties were entitled to receive Solicitation Packages with Ballots.  GCG sent the Confirmation Hearing Notice and the Administrative Claim Bar Date Notice via first class mail to those parties on or before December 28, 2010, and sent Solicitation Packages with Class 3 Ballots via overnight courier to those parties on December 30, 2010.  Exhibit B also includes one party, Remy International, Inc., that was served a Solicitation Package with Class 3 Ballot via overnight courier on January 5, 2011 to replace a Solicitation Package with Class 5 Ballot that was served via overnight courier on December 30, 2010, as reflected on Exhibit C hereto.

Affiliated Debtors for Class 3 (General Unsecured Claims), together with a
postage prepaid return envelope (the "**Return Envelope**").

4.   On December 28, 2010, also at the direction of Weil, GCG caused a true and correct copy of

the following documents to be served via first class mail on the holders of individual Class 5

Claims (Asbestos Personal Injury Claims), as set forth on the service list annexed hereto as

Exhibit C[3]:

- the Solicitation Package; and

- a customized Ballot for Accepting or Rejecting Amended Joint Chapter 11 Plan of
  Motors Liquidation Company (f/k/a General Motors Corporation) and Its Affiliated
  Debtors for Class 5 (Asbestos Personal Injury Claims), together with a Return
  Envelope.

5.   On December 23, 2010, also at the direction of Weil, GCG caused a true and correct copy of

the following documents to be served via first class mail on the attorneys representing the

holders of Class 5 Claims (Asbestos Personal Injury Claims), as set forth in the service list

annexed hereto as Exhibit D:

- the Solicitation Package;

- a non-customized individual Ballot for Accepting or Rejecting Amended Joint
  Chapter 11 Plan of Motors Liquidation Company (f/k/a General Motors Corporation)
  and Its Affiliated Debtors for Class 5 (Asbestos Personal Injury Claims); and

- a Master Ballot for Accepting or Rejecting Amended Joint Chapter 11 Plan of Motors
  Liquidation Company (f/k/a General Motors Corporation) and Its Affiliated Debtors
  for Class 5 (Asbestos Personal Injury Claims), together with a Return Envelope.

6.   On December 28, 2010, also at the direction of Weil, GCG caused an appropriate number of

true and correct copies of the following documents to be served via hand delivery to Broadridge

Financial Solutions, Inc., Attn: BSG Special Processing, Job Nos. N38706 & N39053, 51

Mercedes Way, Edgewood, NY 11717 ("**Broadridge**"), together with an instructional letter

---

[3] See Fn. 2.

3

directing Broadridge to distribute the documents to all beneficial owners of interests in Class 6

(Equity Interests in MLC) (*i.e.*, the equity securities bearing CUSIP Numbers 62010A105 and

370442105 (the "**Class 6 Securities**") as of December 7, 2010 (the "**Voting Record Date**")), the

nominees for which Broadridge services:

- Confirmation Hearing Notice;

- Administrative Claim Bar Date Notice; and

- Notice of Non-Voting Status to Impaired Class: Class 6 (Equity Interests in MLC) (collectively with the Confirmation Hearing Notice and Administrative Claim Bar Date Notice, the "**Equity Package**").

7.    On December 28, 2010, also at the direction of Weil, GCG caused an appropriate number of

true and correct copies of the Equity Package to be served via overnight courier to Mediant

Communications LLC, Reorg Center, Attn: Stephanie Fitzhenry, 109 North Fifth Street, Saddle

Brook, NJ 07663 ("**Mediant**"), together with an instructional letter directing Mediant to

distribute the documents to all beneficial owners of the Class 6 Securities as of the Voting

Record Date, the nominees for which Mediant services.

8.    On December 28, 2010, also at the direction of Weil, GCG caused an appropriate number of

true and correct copies of the Equity Package to be served via overnight courier on the known

broker nominees for the beneficial owners of the Class 6 Securities as of the Voting Record Date

that do not employ Broadridge or Mediant as their mailing agent (the "**Non-Broadridge/Mediant Nominees**"), with an instructional letter directing the Non-

Broadridge/Mediant Nominees to distribute the documents to said beneficial owners, as set forth

on the service list annexed hereto as Exhibit E.

9.    On December 22, 2010, also at the direction of Weil, GCG caused an appropriate number of

true and correct copies of the Equity Package to be served via first class mail on the GCG

4

database of United States and Canadian brokers (the "**U.S. and Canadian Brokers**"), with an

instructional letter directing the U.S. and Canadian Brokers to distribute the documents to their

customers, if any, who are beneficial owners of the Class 6 Securities as of the Voting Record

Date, except where Broadridge or Mediant is employed as mailing agent by any of the

aforementioned U.S. and Canadian Brokers, as set forth on the service list annexed hereto as

Exhibit F.

10. On December 23, 2010, also at the direction of Weil, GCG caused a true and correct copy of

the Equity Package to be served via first class mail on the registered holders of the Class 6

Securities, as provided by the transfer agent therefor, and those parties that filed a proof of

interest in these Chapter 11 Cases, as set forth on the service list annexed hereto as Exhibit G.


11. On December 23, 2010, also at the direction of Weil, GCG caused a true and correct copy of

the Solicitation Package to be served via first class mail on (a) the attorneys for the Creditors'

Committee; (b) the attorneys for the Asbestos Claimants' Committee; (c) the attorneys for the

Future Claimants' Representative; (d) the Office of the United States Trustee; (e) the Securities

and Exchange Commission; (f) the Internal Revenue Service; (g) the United States Department

of Justice; (h) the United States Department of the Treasury; and (i) the Pension Benefit

Guaranty Corporation, as set forth on the service list annexed hereto as Exhibit H.

12. Between December 22, 2010 and December 28, 2010, also at the direction of Weil, GCG

caused a true and correct copy of the following documents to be served via first class mail on (a)

each of the parties who filed untimely claims on or before October 21, 2010; (b) the parties

holding Administrative Expense and Priority Tax Claims; (c) the holders of Note Claims,

Eurobond Claims and/or Nova Scotia Guarantee Claims who filed Claims; (d) all parties who

requested notice pursuant to Bankruptcy Rule 2002; and (e) all parties in GCG's creditor

database for these cases that do not fall within any of the categories described in paragraphs "2"

through "11" hereof, as set forth on the service list annexed hereto as Exhibit I:

- Confirmation Hearing Notice; and

- Administrative Claim Bar Date Notice.

/s/ Patrick M. Leathem_____
Patrick M. Leathem

Subscribed and sworn to before me this 14th day of
January, 2011

/s/ Debra Wolther_____
Debra Wolther
Notary Public – State of New York
No. 02WO4853469
Qualified in Nassau County
My Commission Expires 1/27/2014

| Name | Address1 | Address2 | Address3 | Address4 | City | State | Zip |
|------|----------|----------|----------|----------|------|-------|-----|
| BROADY, BENNIE R | 2295 HAZELWOOD ST | | | | DETROIT | MI | 48206-2241 |
| BROADY, LAMONT B | 336 HARRIET ST | | | | DAYTON | OH | 45408-2022 |
| BROADY, MAYA | 238 SAWYER ST | | | | ROCHESTER | NY | 14619-1928 |
| BROADY, PAULA ANN | 393 NE 808 ST | | | | OLD TOWN | FL | 32680-8162 |
| BROADY, PAULA ANN | 393 NEW 808 ST | | | | OLD TOWN | FL | 32680-8162 |
| BROAS, DAVID J | 446 APT A SOUTH ST | | | | LOCKPORT | NY | 14094 |
| BROAS, JUDY M | 446 SOUTH ST APT A | | | | LOCKPORT | NY | 14094-3900 |
| BROBBEY, ANNA | AMU LANRE O | | | | CHICAGO | IL | 60605-1144 |
| BROBBEY, ENOCH | AMU LANRE O | 407 S DEARBORN ST STE 1550 | | | CHICAGO | IL | 60605-1144 |
| BROBBEY, ESTHER | AMU LANRE O | 407 S DEARBORN ST STE 1550 | | | CHICAGO | IL | 60605-1144 |
| BROBBEY, JOHN | AMU LANRE O | 407 S DEARBORN ST STE 1550 | | | CHICAGO | IL | 60605-1144 |
| BROBBEY, JOHN R | 930 FOX RUN LN | | | | ALGONQUIN | IL | 60102 |
| BROBST JR, GARY F | 96 CENTURY DR | | | | SMYRNA | DE | 19977-4474 |
| BROBST JR, GARY FREDERICK | 96 CENTURY DR | | | | SMYRNA | DE | 19977-4474 |
| BROBST, DANIEL D | 9923 SHANKSDOWN RD | | | | WINDHAM | OH | 44288-9524 |
| BROBST, EARL D | 12315 US HIGHWAY 441 LOT 20 | | | | TAVARES | FL | 32778-4588 |
| BROBST, HAROLD M | PO BOX 296 | | | | HORNBROOK | CA | 96044-0296 |
| BROBST, JANE G | 2780 EAST OAKLAND PARK BLVD | | | | FT LAUDERDALE | FL | 33306-1605 |
| BROBST, JEANNE | P O BOX 261 | | | | FRANKTON | IN | 46044 |
| BROBST, JEANNE | PO BOX 261 | | | | FRANKTON | IN | 46044-0261 |
| BROBST, KENNETH | 9980 S 700 W | | | | FAIRMOUNT | IN | 46928-9762 |
| BROBST, KENNETH T. | 9980 S 700 W | | | | FAIRMOUNT | IN | 46928-9762 |
| BROBST, LAURETTE A | 322 PARTRIDGE LN | | | | WHEELING | IL | 60090-3149 |
| BROBST, MIGHNON R | 9930 COLTON RD | | | | WINDHAM | OH | 44288-9500 |
| BROBST, PAUL J | 1391 BRAINARD RD | | | | LYNDHURST | OH | 44124-1456 |
| BROBST, PAUL JAMES | 1391 BRAINARD RD | | | | LYNDHURST | OH | 44124-1456 |
| BROBST, PETER | 1812 PUGET ST NE | | | | OLYMPIA | WA | 98506-3364 |
| BROBST, ROBERT E | 1526 S BROWN PL | | | | TUCSON | AZ | 85710-8637 |
| BROBST, ROGER H | 1508 W 4TH AVE | | | | BRODHEAD | WI | 53520-1816 |
| BROBYN & FORCENO | THE PHILADELPHIA BOURSE, STE 1000 INDEPENDENCE HALL E | | | | PHILADELPHIA | PA | 19106 |
| BROC T SMITH | 424 WINDING TRAIL | | | | XENIA | OH | 45385 |
| BROCAK, ROSE V | 24 MISTY PINE LANE | | | | HAMILTON SQUARE | NJ | 08690-2258 |
| BROCAK, ROSE V | 24 MISTY PINE LN | | | | HAMILTON SQUARE | NJ | 08690-2258 |
| BROCATO, LINDA L | 210 OVERHILL DR | | | | LAKE CHARLES | LA | 70605-6526 |
| BROCCOLI, BRUNO F | 5117 DRAYTON RD | | | | CLARKSTON | MI | 48346-3707 |
| BROCCOLU, JOANNE | 63 PRANGS LANE | | | | NEW CASTLE | DE | 19720-4035 |
| BROCCOLU, JOANNE | 63 PRANGS LN | | | | NEW CASTLE | DE | 19720-4035 |
| BROCHER, ROBERT T | 12251 SHAFFER RD | | | | DAVISBURG | MI | 48350-3739 |
| BROCHETTI, FRANK J | 2275 LESTER RD | | | | VALLEY CITY | OH | 44280-9567 |
| BROCHETTI, FRED J | 4907 FAIRVIEW AVE | | | | NEWTON FALLS | OH | 44444-9419 |
| BROCHETTI, LOUIS R | 8606 PTARMIGAN CT | | | | KIRTLAND | OH | 44094-9330 |
| BROCHETTI, WILLIAM R | 2930 LAMPLIGHT LN | | | | WILLOUGHBY HILLS | OH | 44094-8463 |