UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re MOTORS LIQUIDATION COMPANY,
*et al.*, f/k/a General Motors Corporation, *et al.*,

               Debtors.

MARK F. HASSON,

               Appellant,

     -v-

MOTORS LIQUIDATION COMPANY GUC
TRUST,

               Appellee.

Chapter 11 Case No. 09-50026 (REG)
(Jointly Administered)

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-21-12

No. 11 Civ. 8444 (RJS)
MEMORANDUM AND ORDER

RICHARD J. SULLIVAN, District Judge:

     Appellant Mark F. Hasson ("Appellant"), proceeding *pro se*, appeals from the United

States Bankruptcy Court's "Supplemental Order Granting 151st Omnibus Objection to Claims"

(the "Supplemental Order"), entered on July 27, 2011 over Appellant's objection, which

disallowed and reclassified as an equity interest the proof of claim that Appellant filed in the

above-captioned Chapter 11 action. For the reasons that follow, the Court affirms the

Bankruptcy Court's entry of the Supplemental Order over Appellant's objection.

I. BACKGROUND[1]

     On June 1, 2009, Motors Liquidation Company ("MLC") (formerly known as General

Motors Corporation) and certain of its subsidiaries (collectively, "Debtors") each filed for

---

[1] In resolving the instant appeal, the Court has considered Appellant's Brief ("Appellant's Br."), Appellee's Brief ("Appellee's Br."), Appellant's Reply Brief ("Reply"), the Designation of Bankruptcy Record on Appeal and the documents designated therein, the Counter Designation of Bankruptcy Record on Appeal and the documents designated therein ("CD-__"), and Appellant's proof of claim ("Claim No. 60788").

bankruptcy protection under Chapter 11 of the Bankruptcy Code.[2]  (CD-1 ¶ 1.)  Pursuant to

§ 363 of the Bankruptcy Code, the Debtors subsequently consummated the sale of substantially

all of their assets to NGMCO, Inc. (now known as General Motors LLC), a purchaser sponsored

by the United States Department of Treasury.  (CD-2.)

On September 16, 2009, the Bankruptcy Court entered an order setting November 30,

2009 as the deadline for filing proofs of claim against the Debtors.  (CD-8.)  Prior to the

deadline, the Bankruptcy Court received numerous proofs of claim, including one from

Appellant, a retired employee of General Motors ("GM") who had invested in GM's 401k

retirement program during his employment with the company.  (Claim No. 60788 at 2.)

Appellant's proof of claim, filed on November 27, 2009, asserted an unsecured claim against

MLC in the amount of $129,197.04 for losses he sustained as a result of his investment in the

"GM Common Stock Fund" (the "Fund") – a fund that was part of GM's 401(k) retirement

program and, as its name suggests, was comprised principally of the company's common stock.

(*Id.* at 1–2.)  In the cover letter to his proof of claim, Appellant argued that: (1) GM made

"misrepresentations concerning the company's economic viability and financial position";

(2) had GM "provided appropriate disclosure and notice of its economic vulnerability,

[Appellant] would not have continued to have his money invested in the [the Fund]"; and (3) had

GM provided such disclosure and notice *after* his investment in the Fund, "[he] would have

redeemed his units in the . . . Fund."  (*Id.*)

On January 25, 2011, pursuant to 11 U.S.C. § 502(a), the Debtors filed an objection to

Appellant's claim as part of the Debtors' "151st Omnibus Objection to Claims (Claims for

---

[2] The term "Debtors" as used in this Memorandum and Order includes each of the entities that filed for Chapter 11 protection on June 1, 2009 – namely, MLC, MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corp), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) – as well as two additional debtors who commenced Chapter 11 cases on October 9, 2009 – namely, Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc.  The Chapter 11 cases of each of these respective Debtors are jointly administered under Case Number 09-50026 (REG).

Equity Interests)" (the "Objection"), which sought to disallow Appellant's claim and reclassify it as an equity interest. (CD-27.) Appellant filed a response to the Debtor's Objection on February 16, 2011 (the "Response"), asserting once again that "[GM] fraudulently misrepresented the viability of [the] company" and adding that:

> General Motors must have known that the viability of the company was deteriorating months, possibly years, before filing for bankruptcy. I feel that General Motors knew that its stock would eventually be worthless, and rather than notify me or take action to protect me from loss, they chose to take no action. It is my belief that due to fraud and misrepresentation that my claim should not be reclassified as equity interest.

(CD-29.)

On June 17, 2011, pursuant to its authority under the Debtors' Second Amended Chapter 11 Plan (the "Plan"),[3] GUC Trust replied to Appellant's Response as part of its "Omnibus Reply to Responses 147th, 148th, 151st through 156th, 210th[,] and 214th Omnibus Objections to Claims" (the "Omnibus Reply"). (CD-40.) In its Omnibus Reply, GUC Trust asserted that Appellant "fail[ed] to specify any specific misleading statements made by the Debtors," thereby failing to plead a prima facie claim for securities fraud, and that, in any event, Appellant's claim should be "subordinated to all claims against the Debtors pursuant to section 510(b) of the Bankruptcy Code." (*Id.* ¶ 6.)

On June 22, 2011, the Honorable Robert E. Gerber, United States Bankruptcy Judge, held a hearing on the Objection in which Appellant participated telephonically (the "Hearing"). (CD-42.) The Bankruptcy Court sustained the Debtors' Objection, holding that Appellant's claim should be disallowed and reclassified as an equity interest. (*Id.* at 23:23–28:8.) As the Bankruptcy Court stated:

---

[3] Although the Debtors filed the Objection to Appellant's claim, the Motors Liquidation Company GUC Trust (the "GUC Trust") – formed by the Debtors pursuant to the Plan – has the exclusive authority as of March 31, 2011 to prosecute and resolve objections to "Disputed General Unsecured Claims" (*see* CD-38), such as Appellant's proof of claim here.

3

American bankruptcy law, and as far as I know, the bankruptcy law of every other country, as well, dishes out whatever a company has available to satisfy claims against it in the order of priorities. After certain special priorities are taken care of, most significantly for certain types of employee wages and taxes and a few other things, creditors then share based upon their claims, but the creditors must be paid in full before the next level – which is stock – can get paid.

(*Id.* at 25:1–8.) The Bankruptcy Court went on to explain that because the creditors' claims in this case had priority and were not paid in full, the stockholders could not yet receive payment. (*Id.* at 25:24–26:10.) In addressing Appellant's proof of claim in particular, the Bankruptcy Court explained:

[Appellant] didn't ask for payment as a stockholder alone but he said that GM owes him as a creditor rather than as a stockholder, because GM was guilty of what I'll call in shorthand, securities fraud, for failing to tell him the facts concerning [GM's] condition.

Assuming for the purposes of the analysis that GM was not fully truthful or fully disclosing its financial condition to its stockholder community[,] and I don't make that finding but I simply assume it for the purpose of the analysis, the Bankruptcy Code has a special provision that deals with that[,] and it's called [§] 510(b). And it arises because for better or worse, securities fraud is fairly common in the cases that we bankruptcy judges see. And that if you could get a double recovery, once on your debt and a second time for the securities fraud, you'd get a leg up over creditors if you were defrauded when you bought a debt security, like a bond or a note.

Under the same principle, if a stockholder who would normally have to get paid only after the creditors were paid in full, could in essence bootstrap that into a creditor claim, that stockholder would be getting a leg up over other stockholders who might have been subject to the same information and[,] in any event, it would be a way of getting around the normal requirements of the Bankruptcy Code. And that's the reason why Congress in 1979 put in this provision, [§] 510(b) . . . which is in substance, an anti-bootstrapping provision.

(*Id.* at 26:11–27:14.)

Following the Hearing, the Debtors submitted a proposed order consistent with Judge Gerber's oral ruling. (CD-43.) Appellant filed an objection to the proposed order, reiterating the arguments set forth in his Response. (CD-45.) The Bankruptcy Court entered the Supplemental Order on July 27, 2011, codifying its oral order and reclassifying Appellant's claim as an equity interest. (CD-47.)

4

On September 21, 2011, Appellant appealed from the Supplemental Order (Doc. No. 1), and on December 6, 2011, Appellant filed his opening brief, making substantially the same arguments as he had in his proof of claim and in his Response (Doc. No. 4).[4]  In addition, Appellant argued that the Fund included bonds – as well as stocks – and that "when action was finally taken to liquidate [his] funds to protect [him] from [GM's] lack of prudence, 100% of the remaining value was held in bonds." (*Id.*)  The appeal was fully briefed as of January 17, 2012.

## II. STANDARD OF REVIEW

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)(1).  Specifically, "Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case." *In re Fugazy Exp., Inc.*, 982 F.2d 769, 775 (2d Cir. 1992) (internal quotation marks omitted).  The district court reviews the Bankruptcy Court's conclusions of law *de novo* and its findings of fact for clear error. *In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998).

## III. DISCUSSION

"When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim – *i.e.*, a document providing proof of a 'right to payment,' 11 U.S.C. § 101(5)(A) – against the debtor's estate." *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 449 (2007).  A proof of claim "is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  "Even where a party in interest objects, [however,] the court 'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)," including where "the claim at issue is 'unenforceable against the debtor . . . under any

---

[4] Appellant's Notice of Appeal is dated September 17, 2011, but was not filed with this Court until September 21, 2011.  Moreover, although Appellant lists on the Notice of Appeal that the Supplemental Order was entered on September 9, 2011, as noted above, the order was actually entered on July 27, 2011.

agreement or applicable law.'"  *Travelers Cas. & Sur. Co. of Am.*, 549 U.S. at 449 (quoting

§ 502(b) & (b)(1)).

In performing the required analysis, courts within this Circuit employ a burden-shifting

framework.  *See, e.g.*, *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No.

09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010); *In re Rockefeller Ctr.*

*Properties*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).  Pursuant to this framework, "[a] proof

of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the

initial burden of persuasion."  *In re Oneida Ltd.*, 400 B.R. at 389; *see also* Fed. R. Bankr. P.

3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute

prima facie evidence of the validity and amount of the claim.").  "The burden then shifts to the

claimant if the objector produces 'evidence equal in force to the prima facie case . . . which, if

believed, would refute at least one of the allegations that is essential to the claim's legal

sufficiency.'"  *Id.* (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)).

"When the burden is shifted back to the claimant, [he] must then prove by a preponderance of the

evidence that under applicable law the claim should be allowed."  *Id.*; *accord In re Motors*

*Liquidation Co.*, No. 11 Civ. 4180 (NRB), 2012 WL 124581, at *3 (S.D.N.Y. Jan. 17, 2012); *see*

*also In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 WL 601452, at *5 (Bankr.

S.D.N.Y. Feb. 20, 2007) ("[C]laimant is [then] required to meet the usual burden of proof.").

Under Rule 3007(d)(7) of the Federal Rules of Bankruptcy Procedure, a party in interest

may file an "omnibus objection," such as the Objection filed by Debtors, to claims that are

"interests, rather than claims."  Fed. R. Bankr. P. 3007(d)(7).  As set forth in the Bankruptcy

Code, a "claim" is a "right to payment" or "equitable remedy," 11 U.S.C. § 101(5)(A)–(B),

whereas an "equity security" – a specific type of "interest" separately defined – is, *inter alia*, a

"share in a corporation . . . or similar security," *id.* § 101(16)(A).  Those who have "claims"

6

against the debtors are called "creditors," while those who hold "equity securities" are called "equity security holders." *Id.* §§ 101(10), 101(17). In other words, "[s]imply put, an equity interest is not a claim against the debtor for which the equity holder may assert a right to payment" by filing a proof of claim. *In re Pine Lake Vill. Apartment Co.*, 21 B.R. 478, 480 (Bankr. S.D.N.Y. 1982) (explaining that an equity security holder may file only a "proof of interest"); *see also McGimsey Trust v. USA Capital Diversified Trust Deed Fund, LLC (In re USA Commercial Mortg. Co. USA Capital Realty Advisors, LLC)*, 377 B.R. 608, 615 (B.A.P. 9th Cir. 2007) ("It is axiomatic that an allowed proof of claim requires something more than mere equity ownership.").

Here, there is little question that Appellant's proof of claim was based on his equity ownership of GM common stock within the Fund. (*See* Claim No. 60788.) While acknowledging that his claim would be foreclosed were his investments only in GM common stock, Appellant nevertheless argues that the Fund, in addition to including GM common stock, included certain bonds. (Appellant's Br. at 1; Reply at 3–4.) Therefore, according to Appellant, he held more than a "mere equity ownership in GM" and should be entitled to submit a claim. (Reply at 3–4.)

As an initial matter, although it appears that a GM entity managed the specific fund that purchased the bonds in Appellant's 401(k) account, it does not appear that GM actually issued the bonds in question. (*See* CD-49 Exs. B, D.) In any event, Appellant's proof of claim sought recovery of $129,197.04 – the exact amount of the diminution in value of his equity interest in "GM Common Stock" and not of his interest in any other asset group, whether bonds or otherwise. (Claim No. 60788 at 3 (annexing his securities statement, which indicates losses of $129,197.04 in "GM Common Stock").) Thus, the mere fact that Appellant held bonds in his 401(k) account does not negate the Bankruptcy Court's correct conclusion that Appellant is

7

properly classified as an equity security or interest holder for purposes of his actual claim.

Nonetheless, Appellant argues that because GM "fraudulently misrepresented the viability of [the] company" (Appellant's Br. at 1), reclassifying his general unsecured claim as an equity interest would inappropriately incentivize companies in financial distress to knowingly mislead investors, "pull out right at the last second[,] and use [b]ankruptcy as a safety route" (Reply at 4).   However, other than Appellant's repeated conclusory statements that GM "fraudulently misrepresented" its viability (*see, e.g.*, Appellant's Br. at 1), Appellant has pointed to no specific material misstatements or omissions that can be attributed to Debtors.

More importantly, even if Appellant were able to state a claim for securities fraud, his proof of claim would still have to be reclassified as an equity interest pursuant to the plain language of the Bankruptcy Code.  The Second Circuit has explained that "[w]hen a corporation becomes bankrupt, the temptation to lay aside the garb of a stockholder, on one pretense or another, and to assume the role of a creditor, is very strong, and all attempts of that kind should be viewed with suspicion." *Jezerarian v. Raichle (In re Stirling Homex Corp.)*, 579 F.2d 206, 213 (2d Cir. 1978) (internal quotation marks omitted).  Thus, as the Bankruptcy Court correctly noted at the Hearing, § 510(b) of the Bankruptcy Code expressly subordinates stockholder fraud claims, providing that:

> [f]or the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal [to] the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b).  "Section 510(b) thus represents a Congressional judgment that, as between shareholders and general unsecured creditors, it is shareholders who should bear the risk of illegality in the issuance of stock in the event the issuer enters bankruptcy." *Rombro v. Dufrayne*

8

*(In re Med Diversified, Inc.)*, 461 F.3d 251, 256 (2d Cir. 2006) (internal quotation marks omitted); *see also Baroda Hill Invs., Ltd. v. Telegroup, Inc. (In re Telegroup, Inc.)*, 281 F.3d 133, 142 (3d Cir. 2002) (explaining that Congress enacted § 510(b) to "prevent disappointed shareholders from recovering their investment loss by using fraud and other securities claims to bootstrap their way to parity with general unsecured creditors in a bankruptcy proceeding"). Accordingly, courts in this Circuit have strictly construed § 510(b) in light of both the clear language and the anti-bootstrapping purpose of the provision and specifically held that the provision applies to a stockholder's equity interest in a retirement account, *In re Worldcom, Inc.*, No. 02-13533 (AJG), 2006 WL 3782712, at *6 (Bankr. S.D.N.Y. Dec. 21, 2006), whether or not the "loss in the value of his stock was caused by a pre-purchase fraud which induced his purchase . . . or a post-purchase fraud . . . which undermined the value of his stock." *In re Worldcom, Inc.*, 329 B.R. 10, 15 (Bankr. S.D.N.Y. 2005).[5]

As explained above, Appellant submitted his proof of claim to recover the losses he sustained from the purchase or sale of GM common stock. However, despite Appellant's allegations of fraudulent misrepresentations or misdeeds on the part of the company, § 510(b) subordinates his fraud claim to the claims of other unsecured creditors. Accordingly, the Bankruptcy Court was correct in disallowing Appellant's claim and classifying it as an equity interest entitled to payment only after the creditors are paid in full.

## IV. CONCLUSION

For the aforementioned reasons, the Court affirms the Bankruptcy Court's entry of the Supplemental Order over Appellant's objection. The Clerk of the Court is respectfully directed

---

[5] Appellant argues that his "securities were not purchased on the open market" and that his participation in the 401(k) was not contingent on the exchange of his actual labor. (Reply at 4.) However, Appellant was a GM employee for thirty years and, as Appellant implicitly acknowledges, only by virtue of his employment could he enroll in GM's 401(k) retirement program. (*See* Claim No. 60788 at 2.) Such an exchange of value is sufficient to satisfy the requisite "purchase" under § 510(b). *See In re Enron Corp.*, 341 B.R. 141, 150 (Bankr. S.D.N.Y. 2006); *In re Worldcom, Inc.*, 2006 WL 3782712, at *6.

to close this case.

SO ORDERED.

Dated:       May 21, 2012
            New York, New York

                                        RICHARD J. SULLIVAN
                                        UNITED STATES DISTRICT JUDGE

A copy of this Memorandum and Order was sent to:

Mark F. Hasson
417 Bute Road
Uniontown, PA 15401