**HEARING DATE AND TIME: June 14, 2012 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
:
In re                                            :        **Chapter 11 Case No.**
:
**MOTORS LIQUIDATION COMPANY**, *et al.*,         :        **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*      :
:
            **Debtors.**                          :        **(Jointly Administered)**
:
-------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY**
**GUC TRUST'S REPLY TO JOSEPH C. SINGER'S RESPONSES**
**TO THE 115TH, 175TH, 181ST, AND 182ND OMNIBUS OBJECTIONS**
**TO CLAIMS (WELFARE BENEFIT CLAIMS OF RETIRED**
**AND FORMER SALARIED AND EXECUTIVE EMPLOYEES)**

# TABLE OF CONTENTS

**Page**

Preliminary Statement........................................................................................................ 1

The Welfare Benefits Claims Should Be Disallowed and Expunged............................ 3

I.    The Welfare Benefits Claims Should Be Disallowed As Debtors Had Right to
Amend or Terminate Each Welfare Benefit Plan .............................................. 4

    (A)    Neither the Debtors' Salaried Life Insurance Plan Nor the Retiree
Servicing Center Letter Provides Mr. Singer with a Permanent Contractual
Right to Continuing Life Insurance Benefits at a Guaranteed Amount................. 6

    (B)    The Retiree Servicing Center Letter Does Not Create A New Contract
With Mr. Singer ................................................................................... 13

II.    Ongoing Benefits Have Been Assumed by New GM.................................... 18

The Singer Responses: Claim Nos. 29996, 29993, 29998 and 29999 ...................... 19

Conclusion ................................................................................................................... 21

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Curtiss-Wright Corp. v. Schoonejongen,*
    514 U.S. 73 (1995)......................................................................................................4

*Devlin v. Empire Blue Cross and Blue Shield,*
    *274 F.3d 76 (2nd Cir. 2001)* .........................................................................5, 15, 17

*In re Oneida, Ltd.,*
    400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd,* No. 09 Civ. 2229 (DC), 2010 WL
    234827 (S.D.N.Y. Jan. 22, 2010)...............................................................................3

*Moore v. Metro. Life Ins. Co.,*
    856 F.2d 488 (2d Cir. 1988)...................................................................................4, 7

*Sprague v. Gen. Motors Corp.,*
    133 F.3d 388 (6th Cir. 1998) ...............................................................4, 9, 10, 11

STATUTES

29 U.S.C. § 1051(1) ...............................................................................................4, 7

Employee Retirement Income Security Act of 1974 ...................................................4

US_ACTIVE:\44008431\4\72240.0639

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**")[1] in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or modified from time to time), files this reply (the "**Reply**") to the Singer Responses (defined below) interposed to the 115th Omnibus Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 8194) (the "**115th Omnibus Objection**"), the 175th Omnibus Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 8857) (the "**175th Omnibus Objection**"), the 181st Omnibus Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 8864) (the "**181st Omnibus Objection**"), and the 182nd Omnibus Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 8865) (the "**182nd Omnibus Objection**," and together with the 115th, 175th, and 181st Omnibus Objections, the "**Omnibus Objections**"), and respectfully represents:

### **Preliminary Statement**

1.      On December 20, 2010, the Debtors filed the 115th Omnibus Objection, and on January 26, 2011, they filed the 175th, 181st, and 182nd Omnibus Objections. The Omnibus Objections seek the disallowance and expungement of certain compensation and welfare benefits claims of retired and former salaried and executive employees of the Debtors on the basis that such claims (a) are related to unvested welfare benefits that were capable of being

---

[1] The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc.

modified or terminated by the Debtors at will pursuant to the terms of the operative documents governing such welfare benefits, and were modified or terminated in accordance with such operative documents, and (b) to the extent modified, have otherwise been assumed by New GM[2] pursuant to the terms of the Master Purchase Agreement and, as described in the Omnibus Objections, are not the responsibility of the Debtors or the GUC Trust and therefore should be disallowed and expunged from the claims register.

2.      Responses to the 115th Omnibus Objection were due by January 27, 2011. Responses to the 175th, 181st, and 182nd Omnibus Objections were due by February 22, 2011. The Singer Responses listed on **Exhibit 1** hereto and described further herein were filed with respect to the Omnibus Objections by Joseph C. Singer relating to his individual claims (the "**Welfare Benefits Claims**," which include "**Continuing Life Insurance Claims**").

3.      The Singer Responses (as defined herein) are generally not substantive, but are critical of the reduction or termination of welfare benefits provided to retired and former salaried and executive employees of the Debtors.  After reviewing the Singer Responses, the GUC Trust[3] respectfully reiterates the Debtors' position in the Omnibus Objections, and submits that Mr. Singer has failed to provide any legal or factual support for his Welfare Benefits Claims. The Singer Responses allege the same facts provided by, and do not take any position different from, the position taken by another former employee of the Debtors, George Cobble Jr., with

---

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Omnibus Objections.

[3] While the Omnibus Objections were filed by the Debtors, this Reply is being filed by the GUC Trust because, pursuant to the Plan, the GUC Trust now has the exclusive authority to prosecute and resolve objections to Disputed General Unsecured Claims (as defined in the Plan).

respect to the alleged vesting of Mr. Cobble's Continuing Life Insurance benefit, which was

disallowed and expunged by an order of the Court, dated February 8, 2012 (ECF No. 11391).[4]

4.       Notwithstanding Mr. Singer's opposition, the Singer Responses should be

overruled because (i) the Debtors had a right to amend or terminate the employee welfare benefit

plans (the "**Welfare Benefits Plans**") providing medical, dental, vision, and life insurance

benefits (the "**Welfare Benefits**"), including those on which the Welfare Benefits Claims are

based, without further liability, and in all relevant instances did so, and (ii) New GM otherwise

assumed Welfare Benefits as they existed on the Commencement Date and continues to provide

Welfare Benefits as modified prior to their assumption by New GM, and consequently the

Debtors and the GUC Trust have no liability for the Welfare Benefits Claims (which, as noted

above, include the Continuing Life Insurance Claims). Accordingly, the GUC Trust files this

Reply in support of the Omnibus Objections and respectfully requests that the Welfare Benefits

Claims be disallowed and expunged from the claims register.

5.       The Debtors and the GUC Trust are, of course, sympathetic with the

impact that the financial problems of the Debtors have had on Mr. Singer's Welfare Benefits.

However, in view of the Debtors' liquidation and under applicable law, there should be no other

outcome.

<u>**The Welfare Benefits Claims Should Be Disallowed and Expunged**</u>

6.       Mr. Singer has failed to demonstrate the validity of his Welfare Benefits

Claims, and the Welfare Benefits Claims should therefore be disallowed and expunged. *See,*

*e.g.*, *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229

---

[4] Mr. Cobble filed Proof of Claim No. 64959, which was objected to in the Debtors' 83rd Omnibus Objection to
Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 6740). Mr.
Cobble's reply to the 83rd Omnibus Objection appears at ECF No. 7074. The GUC Trust's response to Mr. Cobble's
reply is at ECF No. 11283.

(DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (claimant has burden to demonstrate validity

of claim when objection is asserted refuting claim's essential allegations).

**I.      The Welfare Benefits Claims Should Be Disallowed As Debtors
         Had Right to Amend or Terminate Each Welfare Benefit Plan**

   7. In the Singer Responses, Mr. Singer has not demonstrated that the Debtors

were bound by any legal or contractual requirement to continue to provide him, or other retired

and former salaried and executive employees, with the Welfare Benefits on a permanent basis.

The Omnibus Objections explain that the Employee Retirement Income Security Act of 1974, as

amended ("**ERISA**"), comprehensively regulates employer-provided welfare benefit plans, and

that ERISA does not require an employer to provide or to vest welfare benefits.  Welfare benefits

provided under the terms of a welfare benefit plan may therefore be reduced or forfeited in

accordance with the terms of the applicable welfare benefit plan.  29 U.S.C. § 1051(1); *see*

*Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988); *Sprague v. Gen. Motors Corp*.,

133 F.3d 388, 400 (6th Cir. 1998).

   8. In addressing claims similar to Mr. Singer's Welfare Benefits Claims, the

U.S. Supreme Court has noted that welfare plans such as the Welfare Benefit Plans are

specifically exempted from vesting requirements (to which pension plans are subject) under

ERISA, and accordingly, employers "are generally free under ERISA, for any reason at any time,

to adopt, modify or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S.

73, 78 (1995) (emphasis added) (citing *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th

Cir. 1990)). *See also Joyce. v. Curtiss Wright Corp*., 171 F. 3d 130 (2d Cir.  1999) (stating the

general rule that under ERISA an employer welfare plan is not vested and that an employer has

the right to terminate or unilaterally amend the plan at any time).  As noted in the Omnibus

Objections, however, the Sixth Circuit has recognized that once welfare benefits are vested, they

are rendered forever unalterable.  *See also Devlin v. Empire Blue Cross and Blue Shield,* 274

F.3d 76, 82 (2nd Cir. 2001)(quoting *Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods

Corp*, 116 F.3d 976, 980 (2d Cir. 1997) ("If a [plan] document unambiguously indicates whether

retiree … benefits are vested, the unambiguous language should be enforced").

9.    Thus, Mr. Singer bears the burden of showing that the Debtors intended to

vest the Welfare Benefits provided by the Welfare Benefits Plans, and did *in fact* vest the

Welfare Benefits, such that Mr. Singer has a contractual right to the perpetual continuation of his

Welfare Benefits at a contractually specified level.

10.    In the Singer Responses, Mr. Singer has not provided any evidence that

contradicts the Debtors' common practice of advising participants of the Welfare Benefits Plans

of the Debtors' right to amend or terminate the Welfare Benefits at any time.  Moreover, Mr.

Singer has not provided any evidence of a separate, affirmative contractual obligation on the part

of the Debtors to continue to provide the Welfare Benefits specifically to Mr. Singer.  Therefore,

the Debtors and the GUC Trust do not have any liability with respect to the reduction in or

discontinuation of the Welfare Benefits.

11.    The Singer Responses further state opposition to the relief sought in the

Omnibus Objections with respect to Continuing Life Insurance Claims, which relate to the

Debtors' reduction, as of August 1, 2009, of the maximum amount of basic life insurance benefit

("**Continuing Life Insurance**") to $10,000 (self-funded by General Motors Corporation

(hereafter "**GM**") and subsequently by General Motors Company ("**New GM**")), which would

be paid by GM and subsequently New GM to the beneficiaries of eligible deceased retirees to

receive such benefit upon their death (*i.e.*, those whose most recent date of hire (or adjusted

service date) was prior to January 1, 1993).

12.     In the Singer Responses, Mr. Singer opposes the disallowance and expungement of his Continuing Life Insurance Claims on the basis that the Continuing Life Insurance benefits are vested rather than unvested.  In support, Mr. Singer provides a one-page letter from the Debtors to Mr. Singer following his retirement from employment with the Debtors (the "**Retiree Servicing Center Letter**").  Each Retiree Servicing Center Letter generally contains the following standard language:

> As a retiree of General Motors with 10 or more years of participation in the Life and Disability Benefits Program, you are eligible for Continuing Life Insurance.  Our insurance records, as of the date of this letter, show the Continuing Life Insurance has now fully reduced to the ultimate amount of $[*stated amount*].  This ultimate amount will remain in effect for the rest of your life and is provided by General Motors at no cost to you.

13.     In the Singer Responses, Mr. Singer does not provide any explanation for why the Retiree Servicing Center Letter he received should be read as ensuring the vesting of a benefit, rather than a mere acknowledgement by his former employer of the reduction of a lifetime death benefit amount in accordance with the written terms of the applicable life insurance plan then in effect and subject to the plan sponsor's continuing right to change the terms of the life insurance plan.

**(A)     Neither the Debtors' Salaried Life Insurance Plan nor the Retiree Servicing Center Letter Provides Mr. Singer with a Permanent Contractual Right to Continuing Life Insurance Benefits at a Guaranteed Amount**

14.     In the Singer Responses, Mr. Singer provides a copy of a Retiree Servicing Center Letter from the GM National Retiree Servicing Center ("**Retiree Servicing Center**").  GM self-administered its life insurance benefits until some point in the 1990s, at which time it transferred administration of life insurance benefits to MetLife, a third party administrator.  To enable MetLife to be readily identifiable as GM's administrator for life

insurance benefits, GM permitted MetLife to use the prior name of their internal benefits

administrator, the General Motors National Benefits Center and/or Retiree Servicing Center.

15.    The Retiree Servicing Center Letter and letters substantially similar to it

were routinely sent out by mail from the Retiree Servicing Center to each retiree of General

Motors Corporation entitled to a Continuing Life Insurance benefit (which was a continuation of

the retiree's basic life insurance benefit offered to them while they were active employees).  The

letters were routinely sent out at the time that a scheduled reduction to the retiree's Continuing

Life Insurance benefit had reduced to the maximum amount pursuant to the terms then in effect

under the General Motors Life and Disability Benefits Program for Salaried Employees, as

amended from time to time ("**Debtors' Salaried Life Insurance Plan**").

16.    As explained above with respect to the Debtors' right to amend or

terminate other Welfare Benefits, ERISA does not require an employer to provide or to vest life

insurance benefits.  Insurance benefits provided under the terms of a welfare benefit plan may

therefore be reduced or forfeited in accordance with the terms of the applicable welfare benefits

plan.  29 U.S.C. § 1051(1); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988).

17.    ERISA provides that the contractual rights established under a welfare

benefits plan must be in writing and contained in the plan document for the welfare benefits plan,

and furthermore, requires that a welfare benefits plan sponsor provide a summary plan

description (and as necessary, summaries of material modifications) of the plan and the terms of

benefits provided under the plan to participants of the plan; however, the summary plan

description does not establish any contractual rights not provided by the plan document.  *Cigna*

*Corp. v. Amara*, 000 U.S. 09-804 (2011) (holding that a summary plan description has no

contractual authority because it does not constitute a part of the plan document; however, plan

participants may seek appropriate equitable relief in the case of a false or misleading summary

plan description).  Communications from the plan sponsor to plan participants, such as the

Retiree Servicing Center Letter received by Mr. Singer, are neither summary plan descriptions

nor summaries of material modifications.  Even so, by the reasoning of *Amara*, the Retiree

Servicing Center Letter does not supersede the terms of the Debtors' Salaried Life Insurance

Plan, which provided the Debtors the right to amend, modify or terminate the Continuing Life

Insurance benefits at any time.

18.     The Debtors clearly and unambiguously reserved their right to amend or

terminate the Continuing Life Insurance benefit under the terms of the plan documents and the

summary plan descriptions of the Debtors' Salaried Life Insurance Plan provided and made

available to Mr. Singer during his employment period, and therefore, neither the Retiree

Servicing Center Letter received by Mr. Singer nor the plan documents create any vested

contractual rights to the Continuing Life Insurance benefits.  Section 3.05 of the most recent

restatement of the Debtors' Salaried Life Insurance Plan, as amended effective January 1, 2007,

provides:

> The Corporation reserves the right to amend, modify, suspend or
> terminate the Program in whole or in part, at any time by action of
> its Board of Directors or other committee or individual expressly
> authorized by the Board to take such action.  The benefits available
> to Employees are determined solely by the terms of this Program.
> Absent express delegation of authority from the Board of
> Directors, no one has the authority to commit the Corporation to
> any benefit or benefit provisions not provided under the terms of
> this Program.

Because ERISA does not require the vesting of welfare benefits, such provision reserved the

Debtors' right to modify Continuing Life Insurance benefits by amendment of Debtor's Salaried

Life Insurance Plan.  Moreover, the Debtors could terminate the plan.  Clearly, no vested rights

were created under the plan.  The following reservation of rights to amend or terminate benefits

is prominently stated on the second page of a recent benefits handbook for salaried retirees

containing the summary plan description of Debtors' Salaried Life Insurance Plan:

> General Motors Corporation reserves the right to amend, change, or terminate the Plans and Programs described in this booklet. The Plans and Programs can be amended only in writing by an appropriate committee or individual as expressly authorized by the Board of Directors. No other oral or written statements can change the terms of a benefit Plan or Program.

The same or substantially similar reservation of rights language is prominently stated on the

second page of benefits handbooks for salaried retirees issued by the Debtors in 1996, 2000, and

2005. Mr. Singer was therefore clearly on notice of this reservation of rights, as he will have

seen it prominently displayed in the benefits handbooks for salaried retirees that they received

along with every other retiree with such benefits.

19.    On the basis of such language, the Sixth Circuit in *Sprague* reviewed the

plan documents and summary plan descriptions of certain of the Debtors' salaried welfare

benefits plans, as contained in benefits handbooks regularly provided by Debtors to their

employees and retirees, and concluded that the Debtors' salaried welfare benefits plans explicitly

permitted the Debtors to unilaterally amend, terminate or modify the salaried welfare benefits

provided under such plans. The Sixth Circuit's opinion in *Sprague* contains the following

description of the Debtors' reservation of rights to change or terminate health care benefits at any

time, which reservation would have equally pertained to the right to change or terminate life

insurance benefits, the summary plan description of which was contained in the same booklet as

contained the summary plan description of the health plan:

> GM has long made it a practice to inform its salaried employees
>
> and retirees of their health care coverage by providing them
>
> booklets containing summaries of the company's health insurance

policies and programs.  Prior to 1974 GM put out a booklet entitled

"The GM Insurance Program for Salaried Employees."  After

ERISA took effect in 1974 the booklet became "Highlights of

Your GM Benefits."  Beginning in 1977, GM also issued a booklet

called "Your Benefits in Retirement."  Each of these publications

went through a series of different editions […] and most of the

booklets also put plan participants on notice of GM's right to

change or terminate the health care plan at any time:

> "General Motors believes wholeheartedly in this Insurance
> Program for GM men and women, and expects to continue
> the Program indefinitely. However, GM reserves the right
> to modify, revoke, suspend, terminate, or change the
> Program, in whole or in part, at any time...." The General
> Motors Insurance Program for Salaried Employees (1965,
> 1968, and 1971).
>
> "General Motors Corporation reserves the right to amend,
> change or terminate the Plans and Programs described in
> this booklet."  Your GM Benefits (1985).
>
> "The Corporation reserves the right to amend, modify,
> suspend, or terminate its benefit Plans or Programs by
> action of its Board of Directors."  Your Benefits in
> Retirement (1985).

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) at
400.[5]

20.    As evidenced by the description set forth in *Sprague* and as confirmed by

the Debtors, GM had a long-term practice of providing explicit notice to participants of their

reservation of rights to amend or terminate salaried welfare benefits at any time through the

---

[5] The Sixth Circuit found: "Most of the summary plan descriptions unambiguously reserved GM's right to amend or terminate the plan.  For example: 'General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet.'  Your GM Benefits (1984) [and] 'The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time, by action of its Board of Directors.'  Your Benefits in Retirement (1985)." 133 F.3d at 400.

issuance of benefits handbooks to both active and retired employees on a regular basis spanning

over a period of 47 years or more (*i.e.*, since at least 1965).  This means that Mr. Singer would

have been on notice from the start of and through the end of his career with General Motors

Corporation that his employer had reserved its rights to amend or terminate his basic life

insurance benefit and/or their Continuing Life Insurance benefit.

21.    The Second Circuit has held that an employer's reservation of rights to

amend or to terminate insurance benefits was sufficient to preclude such insurance benefits from

being susceptible to being interpreted as promises of vested lifetime insurance benefits:

> Here … we have [SPD or Summary Plan Description] language
> that both appears to promise lifetime life insurance coverage at a
> particular level and clearly reserves Empire's right to amend or
> terminate such coverage. Because the same document that
> potentially provided the 'lifetime' benefits also clearly informed
> employees that these benefits were subject to modification, we
> conclude that the language contained in the 1987 SPD is not
> susceptible to an interpretation that promises vested lifetime life
> insurance benefits.
>
> The Sixth Circuit has similarly concluded, where a group of
> General Motors retirees challenged a reduction in health coverage,
> that the relevant SPD provided that lifetime health coverage would
> be provided at no cost. *See Sprague v. Gen. Motors Corp., 133
> F.3d 388, 401 (6th Cir. 1998) (en banc)*. The same SPD also
> provided that 'General Motors Corporation reserves the right to

amend, change or terminate the Plans and Programs described in

this booklet.' *Id.* The Sixth Circuit reasoned:

> "We see no ambiguity in a summary plan description that
> tells participants both that the terms of the current plan
> entitle them to health insurance at no cost throughout
> retirement and that the terms of the current plan are subject
> to change.... As the Third Circuit explained in a similar
> case, `the promise made to retirees was a qualified one: the
> promise was that retiree medical benefits were for life
> provided the company chose not to terminate the plans,
> pursuant to clauses that preserved the company's right to
> terminate the plan under which those benefits are
> provided.' *Id.* (quoting *In re Unisys Corp. Retiree Med.
> Benefit ERISA Litig.*, 58 F.3d 896, 904 n.12 (3d Cir.
> 1995))." *Abbruscato v. Empire Blue Cross and Blue
> Shield*, 274 F. 3d 90, 99-100 (2nd Cir. 2001)

22.    Each summary plan description of the Debtors' Salaried Life Insurance

Plan contained in the employee handbooks issued over the years has contained a description of

the Continuing Life Insurance benefits and an explanation of the manner in which the Continuing

Life Insurance benefits were to be reduced upon or during the retirement of a retiree. Pursuant to

the terms of the Debtors' Salaried Life Insurance Plan, the Continuing Life Insurance benefit

was, upon retirement or age 65, subject to reduction in the case of all of the Debtors' retirees

eligible for such benefit depending on when the retiree retired. In addition to notice provided by

the summary plan descriptions, the Debtors were in the practice of notifying retirees of such

reductions in the form of the Retiree Servicing Center Letters.

23.    In connection with their insolvency, following approval by the Employee

Benefits Plans Committee of Debtor's Board of Directors, the Debtors reduced to $10,000 the

maximum amount of the Continuing Life Insurance benefit that would be paid by the Debtors

(and subsequently by New GM) to the beneficiaries of a retiree eligible to receive such benefit

upon death (*i.e.*, those whose most recent date of hire (or adjusted service date) was prior to

January 1, 1993).  The reduction was effected by amendment of the Salaried Life Insurance Plan

made by the Employee Benefits Plans Committee of Debtor's Board of Directors on June 19,

2009, who had been expressly delegated by the Board of Directors the authority to amend the

Debtors' welfare benefit plans.

        24.     Pursuant to the terms of the Debtors' Salaried Life Insurance Plan, upon

attaining age 65, retirees were no longer required to make contributions to maintain their

Continuing Life Insurance benefits.  Reduction of the maximum amount of the Continuing Life

Insurance benefits has not changed this fact.

        25.     Upon reduction of the Continuing Life Insurance benefit in connection

with their insolvency, the Debtors provided retirees with the opportunity to supplement the

reduced amount of their Continuing Life Insurance benefits by enrolling in a voluntary life

insurance program through MetLife.  By virtue of the supplemental program, Mr. Singer was

fully eligible, at his cost, to continue to be covered by the life insurance benefit at the same level

as prior to the reduction in his Continuing Life Insurance benefits.

   **(B)**    **The Retiree Servicing Center Letter Does Not Create A New Contract With Mr. Singer**

        26.     In the Singer Responses, Mr. Singer has not provided any evidence that

contradicts the Debtors' common practice of advising participants of the Debtors' Salaried Life

Insurance Plan of the Debtors' right to amend or terminate the Continuing Life Insurance

benefits at any time.  Moreover, Mr. Singer has not provided any evidence of an affirmative

contractual obligation on the part of the Debtors separate from the terms of Debtors' Salaried

Life Insurance Plan to permanently provide the same level of Continuing Life Insurance benefits

specifically to Mr. Singer.  The Retiree Servicing Center Letter refers to and explains a

"Continuing Life Insurance" benefit, which appearing as a capitalized term explicitly relates to,

and is one and the same with, the basic life insurance benefit provided to Debtors' retirees

pursuant to Debtors' Salaried Life Insurance Plan.  Mr. Singer should readily have recognized

"Continuing Life Insurance" as a defined term of the Debtors' Salaried Life Insurance Plan, of

which he would have been familiar by having read, over the past 47 years or more, employee

benefits handbooks and summary plan descriptions related to the Continuing Life Insurance.

Moreover, the Retiree Servicing Center Letter received by Mr. Singer directly refers to the

applicability of Debtors' Salaried Life Insurance Plan in prefacing eligibility for such Continuing

Life Insurance benefit (which had been reduced) on Mr. Singer status as a "a retiree of General

Motors with 10 or more years of participation in the Life and Disability Benefits Program."

Therefore, the Retiree Servicing Center Letter clearly indicated that the Continuing Life

Insurance benefits were fully subject to the terms of the Debtors' Salaried Life Insurance Plan

and, as such, could not have been subject only to the terms set forth on the single page of the

Retiree Servicing Center Letter.  The Retiree Servicing Center Letter could therefore not serve to

have vested Mr. Singer in any new life insurance obligations on the part of the Debtors.

27.    The Retiree Servicing Center Letter was not approved by the Board of

Directors of GM at any time.  It was not an authorized amendment of the Debtors' Salaried Life

Insurance Plan or modifications of the Continuing Life Insurance benefits.  The Retiree

Servicing Center Letter sent to Mr. Singer was merely a communication with Mr. Singer with

respect to a change in the benefit amounts of their Continuing Life Insurance pursuant to the

terms of Debtors' Salaried Life Insurance Plan.

28.    The Retiree Servicing Center Letter was sent to Mr. Singer after his

retirement, during a period which he was no longer providing services to the Debtors, and

therefore cannot reasonably be construed as an inducement for Mr. Singer to provide new

services to the Debtors, or to retire.  Indeed, Mr. Singer never used the provision of permanent,

unalterable welfare benefits as a form of consideration inducing retirement.  Rather, even for

employees who elected to participate in early retirement window programs (consideration for

which was typically in cash), retiree medical, life insurance and all other welfare benefits would

have been the same following retirement as for regular retirees.  Given such treatment, there

would be no reason to provide any separate communication to window program participants with

respect to their welfare benefits, such as a letter promising permanent lifetime benefits.

29.     The Retiree Servicing Center Letter does not contain any language

establishing it as a new contract between Mr. Singer and his former employer.  To establish the

Retiree Servicing Center Letter as such, under the standard of the Second Circuit, Mr. Singer

"must first identify 'specific written language that is reasonably susceptible to interpretation as a

promise.'" *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 103 (2nd Cir. 2001)

(quoting *Joyce*, 171 F.3d at 134).

30.     The Second Circuit in *Devlin* discussed an example of language offering a

benefit that could have been susceptible to induce employees to perform without having been

negated by the employer's reservation of its right to amend or terminate the benefit (which

Empire's pre-1987 summary plan description had not done) and that is reasonably susceptible to

interpretation as a promise:

> Plaintiffs direct our attention to two sentences within the pre-1987
> [summary plan description]s. The first provides that 'retired
> employees, after completion of twenty years of full-time
> permanent service and at least age 55 will be insured.' J.A. at 522
> (emphasis added).   We believe that this statement can be
> reasonably read as promising such insurance so long as employees
> retire after age 55 and have provided full-time permanent service
> to Empire for at least twenty years.   This provision can be
> construed as an offer that specifies performance as the means of
> acceptance -- sometimes referred to as an offer for a unilateral

contract -- and promises lifetime life insurance benefits upon performance. Therefore, by 'performing' (that is, working for at least twenty years until attaining the age of 55), the plaintiffs accepted this offer. Restatement (Second) of Contracts 45(1) (1981). Where the offeror did not explicitly reserve the power to revoke, such an offer cannot be revoked once the offeree has begun to perform. See id. 45 & cmt. d ('The beginning of performance . . . completes the manifestation of mutual assent and furnishes consideration.'). Therefore, Empire's reliance on its 1987 [summary plan description], 'Your Handbook,' for its reservation of the right to modify the life insurance benefits is unavailing. We reject Empire's argument because after the plaintiffs began performance, pursuant to the pre-1987 [summary plan description]s, Empire was not free to revoke. *Id.* at 84.

Contrary to the facts with respect to Empire's failure to reserve its right in pre-1987 summary plan descriptions to amend or terminate the life insurance benefit, the Debtors have had a long-term practice over at least the past 47 years, and most likely for an even longer period of time, to provide explicit notice in each of their summary plan descriptions of their right to amend or terminate life insurance benefits at any time. Moreover, by the time that Mr. Singer had received the Retiree Servicing Center Letter in question, he had retired and could no longer be induced to perform any services for the Debtors, nor be induced to retire a second time, and so, the contents of the applicable Retiree Servicing Center Letter could not have been susceptible to interpretation as a promise.

31.    Though Mr. Singer has not made any such argument or suggestion, it cannot be said that Mr. Singer relied on the qualified statement made in the Retiree Servicing Center Letter to his detriment. In order to prevail on a claim of promissory estoppel under ERISA in the Second Circuit, Mr. Singer must establish: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151 (2d Cir. 1999) (quoting *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 79 (2d Cir. 1996). Additionally, "an

ERISA plaintiff must 'adduce[…] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well.'" *Aramony,* 191 F.3d at 151 (quoting *Devlin v. Transp. Comms. Int'l Union,* 173 F.3d 94, 102 (2d Cir. 1999)).  The Second Circuit in *Devlin* cited that "*Schonholz* provides an example of such extraordinary circumstances, where the employer used promised severance benefits to induce the plaintiff to retire." *Devlin,* 274 F.3d at 86 (quoting *Schonholz,* 87 F.3d at 79-80).

32.    With respect to the Continuing Life Insurance Claims, there was no promise to provide permanent basic life insurance benefits at the same level where the Debtors had provided explicit notice to Mr. Singer over the past 47 years or more, that they could amend or terminate the basic life insurance benefits at any time (*i.e.*, in a manner discussed by *Abbruscato*, *supra*).  Because there was no promise of a permanent benefit, there could be no reliance on such promise.  It has been demonstrated that the Retiree Servicing Center Letter itself did not create a separate obligation on the Debtors to provide a benefit separate from benefits offered under Debtors' Salaried Life Insurance Plan, and as such, the Retiree Servicing Center Letter in and of itself could not have created a promise nor could it have been susceptible to interpretation as a promise.

33.    Nor were there any facts that may separately support the existence of extraordinary circumstances in the case of either the Retiree Servicing Center Letter or the reduction in 2009 of the Continuing Life Insurance.  Basic life insurance is a benefit that is commonly provided by employers on an unvested basis, and is accordingly assumed by most employees and retirees to be a benefit that could be lost at any time, absent an extraordinary circumstance, such as a separate, express contractual commitment.  With respect to the

Continuing Life Insurance Claims, Mr. Singer has not suggested any extraordinary

circumstances with respect to his right to Continuing Life Insurance, such as receiving it as an

inducement to enter into employment or to retire early.  No such extraordinary circumstance

could exist where the Debtors have clearly and unambiguously represented to their employees

and retirees over the past 47 years or more of their right to amend or terminate life insurance

benefits at any time.  Moreover, at the time that Mr. Singer received the Retiree Servicing Center

Letter and at the time that the Debtors provided notice in June 2009 to Mr. Singer of the

reduction in their Continuing Life Insurance benefits, Mr. Singer had already retired and could

therefore neither have been induced to perform (*i.e.*, in a manner discussed by *Devlin*, *supra*) or

otherwise made to rely in any manner constituting an extraordinary circumstance.

## II.    Ongoing Benefits Have Been Assumed by New GM

34.    On the Closing Date, New GM completed its purchase of certain assets in

accordance with the Master Purchase Agreement.  Pursuant to Section 6.17(e) of the Master

Purchase Agreement (*Assumption of Certain Parent Employee Benefit Plans and Policies*), New

GM assumed the plans specified in a disclosure schedule, and the Welfare Benefit Plans

(including Debtors' Salaried Life Insurance Plan) are set forth on that schedule.  New GM

assumed the obligation to provide the Welfare Benefits to the extent required to be provided

under the terms of the applicable Welfare Benefits Plan in effect on the Closing Date, including

both responsibility for all claims incurred prior to the Closing Date and all future claims properly

payable pursuant to the terms of the applicable Welfare Benefit Plan in effect when such claims

are incurred.  Therefore, the Debtors and the GUC Trust do not have any liability with respect to

Welfare Benefits (including the Continuing Life Insurance benefits) that have been assumed by

New GM, and Mr. Singer has not provided any credible factual or legal basis to suggest

otherwise.

**The Singer Responses**

**Claim Nos. 29996, 29993, 29998 and 29999**

35.    On January 21, 2011, a response was filed on behalf of Mr. Singer to the

115th Omnibus Objection at ECF No. 8803 (the "**First Singer Response**").  In the First Singer

Response, Mr. Singer opposes the disallowance and expungement of Claim No. 29996 on the

basis that such a course of action contradicts the way in which welfare benefits were presented to

Mr. Singer by General Motors Corporation when granted (*See* Proof of Claim No. 29996 at

**Exhibit 2** hereto and First Singer Response at **Exhibit 3** hereto). No additional documentation is

provided in either Proof of Claim No. 29996 or the First Singer Response to support these

assertions.  Further, the GUC Trust is not aware of any documentation or facts supporting Claim

No. 29996.

36.    The First Singer Response further asserts that Mr. Singer should have

received similar treatment with respect to his Welfare Benefits as hourly employees currently

employed by New GM and represented by The International Union, United Automobile,

Aerospace and Agricultural Implement Workers of America ("**UAW**").  Contrary to Mr. Singer's

assertions, there is no statutory obligation under ERISA or otherwise to treat employees of the

same employer in the same way.  Moreover, New GM is a different entity than the Debtors, and

New GM has made its own decisions as to the desired level of Welfare Benefits for particular

employees and groups of employees.

37.    On February 15 and  February 16, 2011, further responses were filed by

Mr. Singer at ECF No. 9273 (the "**Second Singer Response**"), ECF No. 9271 (the "**Third**

**Singer Response**"), and ECF No. 9270 (the "**Fourth Singer Response**" and with the First,

Second and Third Singer Responses, the "**Singer Responses**"), largely reiterating the First

Singer Response, and further arguing  that both the Debtors and New GM should structure their

benefit program in the same manner as the governments of Michigan and other states.  While the

GUC Trust appreciates Mr. Singer's suggestions, the Debtors have been liquidated and do not

currently sponsor any Welfare Benefit Plans. Moreover, as noted above, New GM is a different

entity and a different employer than the Debtors, and the Debtors cannot influence New GM's

employee benefits policy (*See* Proof of Claim No. 29993 at **Exhibit 4** hereto, Proof of Claim No.

29998 at **Exhibit 5** hereto, Proof of Claim No. 29999 at **Exhibit 6** hereto, the Second Singer

Response at **Exhibit 7** hereto, the Third Singer Response at **Exhibit 8** hereto, and the Fourth

Singer Response at **Exhibit 9** hereto).

38.    On February 24, 2011, Mr. Singer filed an addendum to the Fourth Singer

Response at ECF No. 9486 (the "**Singer Addendum**"), which provided a copy of the Retiree

Servicing Center Letter along with another letter he received at his request from the Retiree

Servicing Center (*See* Singer Addendum at **Exhibit 10** hereto). Mr. Singer does not provide any

explanation for why the Retiree Servicing Center Letter he submitted as additional support for

Proof of Claim No. 29999 should be read as ensuring the vesting of a benefit, rather than a mere

acknowledgement by his former employer of the reduction of a lifetime death benefit amount in

accordance with the written terms of the applicable life insurance plan then in effect and subject

to the plan sponsor's continuing right to change the terms of the life insurance plan, as discussed

in more detail above.

39.    The second letter that Mr. Singer received from the Retiree Servicing

Center, included in the Singer Addendum, provides a summary of Mr. Singer's Welfare Benefits

as of December 9, 1994. The letter plainly states: "Information provided in this letter is subject to

the terms and conditions of the General Motors Life and Disability Benefits Program." Mr.

Singer was therefore clearly on notice that he had to look to the terms of applicable Welfare

Benefits Plans to determine the terms under which such Welfare Benefits were provided.

42. No additional documentation is provided in either the Welfare Benefit

Claims or the Singer Responses to support Mr. Singer's opposition to the reduction of his

Welfare Benefits. Further, the GUC Trust is not aware of any other documentation or facts

supporting the Welfare Benefit Claims.

41. The Singer Responses do not provide any additional support for the

Welfare Benefit Claims. For the reasons set out above, the GUC Trust respectfully submits that

the Singer Responses should be overruled, and the Welfare Benefit Claims should be disallowed

and expunged.

**Conclusion**

42. Because (i) ERISA recognizes that employers are free to amend or

terminate welfare benefits, (ii) the Debtors had explicitly reserved their right to amend, modify

or terminate the Welfare Benefits (including Continuing Life Insurance benefits) at any time, (iii)

the Retiree Servicing Center Letter submitted by Mr. Singer does not establish any contractual

rights to vested Continuing Life Insurance benefits, and (iv) Mr. Singer has not provided

evidence of any permanent contractual right to vested Welfare Benefits (including Continuing

Life Insurance benefits); the Debtors and the GUC Trust have no liability for the Welfare

Benefits Claims (including Continuing Life Insurance Claims). The GUC Trust reiterates that

the Singer Responses have not provided any legal or factual support for the Welfare Benefits

Claims and the Continuing Life Insurance Claims, which cannot be afforded prima facie validity

under the Bankruptcy Code. Accordingly, the Welfare Benefits Claims and the Continuing Life

Insurance Claims should be disallowed and expunged in their entirety.

21

WHEREFORE, for the reasons set forth above and in the Omnibus Objections,

the GUC Trust respectfully requests that the Court grant the relief requested in the Omnibus

Objections and such other and further relief as is just.

Dated: New York, New York
   June 5, 2012

         /s/ Joseph H. Smolinsky    
         Harvey R. Miller
         Stephen Karotkin
         Joseph H. Smolinsky
         WEIL, GOTSHAL & MANGES LLP
         767 Fifth Avenue
         New York, New York 10153
         Telephone: (212) 310-8000
         Facsimile: (212) 310-8007

         Attorneys for Motors Liquidation
         Company GUC Trust

**Exhibit 1**

| No. | Proof of Claim No. | Response Docket No. | Name | Total Claimed | Summary |
|---|---|---|---|---|---|
| 115th, 175th, 181st, and 182nd Omnibus Objections to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) | | | | | |
| 1. | 29996 | 8803 | Singer, Joseph C. | $101,829.00 (U) | Mr. Singer's response notes that he was a General Motors Corporation employee for 40 years, and has been retired for 20 years.  Mr. Singer notes that during briefings by General Motors Corporation on his benefits, there was no mention of secured, unsecured or vested benefits.  In addition, Mr. Singer notes that his retirement papers do not note any ability of General Motors to amend his benefits.  Mr. Singer requests treatment that is the same as hourly workers represented by the UAW. |
| 2. | 29993 | 9273 | Singer, Joseph C. | $7,617.54 (U) | Please see Proof of Claim 29996 above. |
| 3. | 29998 | 9271 | Singer, Joseph C. | $4,122.50 (U) | Please see Proof of Claim 29996 above. |
| 4. | 29999 | 9270 | Singer, Joseph C. | $309,390.00 (U) | Please see Proof of Claim 29996 above. |

**<u>Exhibit 2</u>**

01120581

APS0546445815



| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor** (Check Only One)

☑ Motors Liquidation Company (f/k/a General Motors Corporation) — Case No 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC) — 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) — 09-13558 (REG)

**Your Claim is Scheduled As Follows.**

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

Name of Creditor (the person or other entity to whom the debtor owes money or property)   SINGER JOSEPH C

Name and address where notices should be sent

SINGER JOSEPH C
2166 SANDLEWOOD DR
SHELBY TWP, MI 48316-1053

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(if known)

Filed on _____

Telephone number **248-650-8648**
Email Address

Name and address where payment should be sent (if different from above)

FILED - 29996
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

☑ Check this box if you are the debtor or trustee in this case

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1** Amount of Claim as of Date Case Filed, June 1, 2009:   $ **100,829.00**

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority, complete item 5 If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

**2** Basis for Claim **LOSS OF HEALTH BENEFITS**
(See instruction #2 on reverse side ) **SEE ATTACHED INFORMATION**

**3.** Last four digits of any number by which creditor identifies debtor **0297**

**3a** Debtor may have scheduled account as* _____
(See instruction #3a on reverse side )

**4** Secured Claim (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe

Value of Property $_____   Annual Interest Rate_____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any $_____

Basis for perfection _____

Amount of Secured Claim. $_____   Amount Unsecured. $_____

**6** Credits   The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7** Documents.   Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest   You may also attach a summary (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5** Amount of Claim Entitled to Priority under 11 U S C § 507(a) If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case - 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

Amount entitled to priority*

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

Date **11-14-09**

Signature   The person filing this claim must sign it Sign and print name and title, if any, of the creditor or other person authorized to file this claim State address and telephone number if different from the notice address above Attach copy of power of attorney, if any

*Joseph C Singer*     JOSEPH C SINGER

FOR COURT USE ONLY

Penalty for presenting fraudulent claim   Fine of up to $500,000 or imprisonment for up to 5 years, or both   18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

THE GARDEN CITY GROUP, INC.
NOV 19 2009

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc., are not authorized and are not providing you with any legal advice.*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS. IF BY MAIL: THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P.O. BOX 9386, DUBLIN, OH 43017-4286. IF BY HAND OR OVERNIGHT COURIER: THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5:00 P.M. (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim.
**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

1  **Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

2  **Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

3  **Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

3a **Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

4  **Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

5  **Amount of Claim Entitled to Priority Under 11 U.S.C. § 507(a):**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U.S.C. § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases. (See DEFINITIONS, below.) Attach documentation supporting such claim

6  **Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

7  **Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

Motors Liquidation Company
(f/k/a General Motors Corporation)          09-50026 (REG)
MLCS, LLC
(f/k/a Saturn, LLC)                          09-50027 (REG)
MLCS Distribution Corporation
(f/k/a Saturn Distribution Corporation)      09-50028 (REG)
MLC of Harlem, Inc
(f/k/a Chevrolet-Saturn of Harlem, Inc)      09-13558 (REG)

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101(5). A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc. as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U.S.C. § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's

---

## INFORMATION

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc., please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation.com

<u>GM BENEFITS HEALTH CARE LOSSES</u> FOR MEDICAL, PRESCRIPTIONS, DENTAL, VISION AND EXTENDED CARE COVERAGE FOR JOSEPH C SINGER RETIREE AND SPOUSE BLANCHE V SINGER.

<u>RETIREE AND SPOUSE ELIGIBILITY</u> FOR HEALTH CARE BENEFITS SEE ATTACHED GM DOCUMENT DATED 9-1-1991

<u>CALCULATION ARE FOR LOSS OF HEALTH</u> CARE FOR RETIREE AGE 75 AND SPOUSE AGE 71 UNTIL FULL LIFE EXPECTANCY

<u>ANNUAL BENEFIT LOSS STARTING 1-1-2009</u> RETIRE LOSS PER YEAR WOULD BE 5500.00 MINUS 3600.00 ANNUAL LEVEL BENEFIT THROUGH LIFE EXPECTANCY OR 1900.00. SPOUSE PER YEAR LOSS WOULD BE THE FULL 5500.00

$$\text{RETIREE} \quad 1900. \times {}^{*}10.26 \ = 19,494.00$$
$$\text{SPOUSE} \quad 5500. \times {}^{*}14.97 = \underline{82,335.00}$$
$$161,829.00$$

${}^{*}$ LIFE EXPECTANCY
SSA ACTUARIAL TABLE DATA

AUTHORIZATION OF MONTHLY BENEFITS                          SRP 117

GENERAL MOTORS RETIREMENT PROGRAM FOR SALARIED EMPLOYES

JOSEPH C SINGER                              RETIREMENT NO  R3/0300297
2166 SANDLEWOOD                              DIVISION  CPC HEADQUARTERS
SHELBY TWP            MS 483161053           CISCO  18001

RETIREMENT TYPE  67                          CREDITED SERVICE
   SPECIAL RETIREMENT AGE 53 TO 62             PART A    40-01
RETIREMENT DATE  09-01-1991                    PART B    40-01

              FACTORS        OPTION           BENEFIT CLASS CODE  D
          AGE  OPTION SURVIVOR  CODE          BASIC  BENEFIT RATE  29.10
          %      %       %                    TEMPORARY  BENEFIT RATE  25.00
BASIC       NONE  95.00   60.00   SS
TEMPORARY   NONE  NONE    NONE    NONE         SOCIAL SECURITY NO  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
SUPPLEMENTARY NONE 95.00  60.00   SS           BIRTH DATE  10-29-1933
PRIMARY     NONE  95.00   60.00   SS          SALARY
                                                AVERAGE MONTHLY      5,926.39

                                             EMPLOYE CONTRIBUTIONS
                                                PRIOR TO 07-77       7,556.76
                                                07-77 TO 10-79       1,129.60
                                                10-79 & LATER        7,975.74

                                             AUTHORIZED DEDUCTIONS
                                                12.02 COMP MEDICAL EXPENSE PROG
                                                27.50 DEPENDENT GRP LIFE INSURANCE
                                                   % FEDERAL INCOME TAX
                                                97.28 OPTIONAL GRP LIFE INSURANCE
                                               125.00 STATE TAX-MICHIGAN
************************************************************************
THE FOLLOWING MONTHLY BENEFITS HAVE BEEN AUTHORIZED.  ADDITIONAL INFORMATION
REGARDING YOUR RETIREMENT BENEFITS ARE EXPLAINED ON THE ATTACHED FORM SRP 117A.

          **** AUTHORIZED BENEFITS ****
              COMMENCEMENT           AMOUNT AT      AMOUNT AT
            DATE       AMOUNT         AGE  62        AGE  65
                         $                              $
BASIC       09-01-1991   1,108.11    1,108.11       1,108.11
TEMPORARY   09-01-1991     750.00
SUPPLEMENTARY 09-01-1991 1,148.62    1,148.62       1,148.62
PRIMARY     09-01-1991   1,057.41    1,057.41       1,057.41
SPECIAL INS 11-01-1998                                 29.90
          TOTAL          4,064.14    3,314.14       3,344.04

************************************************************************
          **** SURVIVOR INFORMATION ****
BLANCHE V. SINGER
SOCIAL SECURITY NO  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              BIRTH DATE  05-06-1937
     **** SURVIVOR BENEFITS AT RETIREE COMMENCEMENT DATE ****
                    AMOUNT
                      $
BASIC               664.87
SUPPLEMENTARY       689.17
PRIMARY             634.45
TOTAL             1,988.49

************************************************************************
I UNDERSTAND THIS BENEFIT AUTHORIZATION REFLECTS MY ELECTION OF THE
SURVIVING SPOUSE OPTION.


I AM THE EMPLOYE HEREIN NAMED AND IDENTIFIED.  I HAVE READ AND UNDERSTAND
THE DATA AND CALCULATIONS SHOWN.

                                   X  *Joseph C Singer*              7-30-91
     APPROVED BY                        EMPLOYE SIGNATURE               DATE

   *Deanna Miller*                      7-30-91
SIGNATURE AUTHORIZED DELEGATE             DATE



                              ISSUE DATE AND TIME  07-12-1991   06 49 09

DISTRIBUTION  ORIGINAL-MASTER RETIREMENT FILE   COPY-EMPLOYE

**<u>Exhibit 3</u>**

TO THE HONORABLE ROBERT E. GERBER

UNITED STATES BANKRUPTCY COURT

RESPONSE TO THE 115TH OMNIBUS OBJECTION TO CLAIMS

CHAPTER 11 CASE NO. 09 - 50026 (REG.)


I AM NOT AN ATTORNEY AND AM SELF-REPRESENTED.  PLEASE PUT MY

OBJECTION ON THE DOCKET.


JOSEPH C. SINGER

CLAIM NO. 29996

JOSEPH C. SINGER

CREDITOR RETIRED SALARY EMPLOYEE OF GENERAL MOTORS

SELF REPRESENTED

2166 SANDLEWOOD DR.

SHELBY TWP., MICHIGAN  48316

248-650-8648


NOTICE OF DEBTORS 115 OMNIBUS OBJECTION TO CLAIMS

CLAIMS OF FORMER SALARIED EMPLOYEE

MOTORS LIQUIDATION COMPANY

GENERAL MOTORS CORPORATION

             DEBTORS

CHAPTER 11 CASE NO. 09-50026 (REG)

CLAIM NO. 29996

JOSEPH C. SINGER

2166 SANDLEWOOD DR.

SHELBY TWP., MICHIGAN   483416

248-650-8648

GENERAL MOTORS CORPORATION

CLAIM  #29996

CHAPTER 11 CASE NO. 09-50026 (REG)


NOTICE OF DEBTORS  115  OMNIBUS OBJECTION TO CLAIMS
*(WELFARE BENEFITS CLAIMS OF RETIRED AND FORMER SALARIED AND*
*EXECUTIVE EMPLOYEES)*


I OBJECT AND DISAGREE THAT THE DEBTORS ARE NOT RESPONSIBLE FOR

MY BENEFITS THAT WERE AGREED TO BY GENERAL MOTORS AT THE TIME

OF MY RETIREMENT.  I RETIRED AFTER 40 YEARS OF SERVICE IN 1991 AND

HAVE BEEN RETIRED FOR 20 YEARS.  MY WIFE AND I HAVE DEPENDED ON

THESE EARNED BENEFITS DURING OUR RETIREMENT.

AT THE TIME OF MY RETIREMENT  I ATTENDED  SEVERAL RETIREMENT

CLASSES PRESENTED BY GENERAL MOTORS COVERING BENEFITS AND

SAVINGS.  THERE WAS NO MENTION  OF SECURED, UNSECURED OR

VESTED BENEFITS.  (SEE COPY OF AUTHORIZATION OF MONTHLY

BENEFITS AND COPY OF SUPPLEMENTAL SERP BENEFITS.)  AFTER 40

YEARS OF SERVICE AND 20 YEARS OF RETIREMENT THESE BENEFITS

SHOULD BECOME ASSUMED LIABILITY ON THE PART OF DEBTOR.

WHEN I SIGNED MY RETIREMENT PAPERS, THERE WAS NO TIME LIMIT OF

COVERAGE OR MENTION OF THE CORPORATION RESERVING THE RIGHT

TO AMEND. I BELIEVE THAT MY BENEFITS SHOULD HAVE BEEN GIVEN THE

SAME CONSIDERATION AS THE UAW HOURLY EMPLOYEES. BECAUSE THE

SALARIED BENEFITS WERE NOT VESTED, THE DEBTORS WANT TO BE

RELIEVED OF THEIR OBLIGATIONS.

MY CLASS 3 (GENERAL UNSECURED CLAIMS) SHOULD BE ALLOWED TO GO

FORWARD UNDER THE JOINT CHAPTER 11 "PLAN" OF MOTORS

LIQUIDATION COMPANY:

PLEASE NOTE THAT MY RETIREMENT PAPERS WERE APPROVED BY A

GENERAL MOTORS AUTHORIZED DELEGATE.

AFTER A 60 YEAR RELATIONSHIP WITH GENERAL MOTORS THEY DROPPED

AND REDUCED MY BENEFITS AT THE TIME OF BANKRUPTCY WITHOUT

ANY PROVISIONS TO COMPENSATE. THEY BASE THIS ON THE MASTER

PURCHASE AGREEMENT AND A 25 YEAR OLD EMPLOYEE BENEFIT

HANDBOOK (RESERVE RIGHT TO AMEND).

JUDGE GERBER, I HOPE THAT YOU WILL SEE THIS DIFFERENTLY AND RULE

IN MY FAVOR. SINCE I AM APPROACHING 80 YEARS OF AGE, THE ONLY

HOPE I HAVE IS YOUR FAIRNESS IN THIS MATTER. THANK YOU FOR YOUR

CONSIDERATION.

JOSEPH C. SINGER

jcbvsinger@sbcglobal.net

**Exhibit 4**

01120561
APS0546445815




| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor** (Check Only One)

☑ Motors Liquidation Company (f/k/a General Motors Corporation) — Case No 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC) — 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) — 09-13558 (REG)

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

**Name of Creditor** (the person or other entity to whom the debtor owes money or property) SINGER JOSEPH C

**Name and address where notices should be sent**

SINGER JOSEPH C
2166 SANDLEWOOD DR
SHELBY TWP MI 48316-1053

Telephone number _2 4 8 6 5 6 - 8 6 4 8_
Email Address

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

**Name and address where payment should be sent** (if different from above)

FILED - 29993
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

☑ Check this box if you are the debtor or trustee in this case

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1 Amount of Claim as of Date Case Filed, June 1, 2009** $ _7, 617. 54_

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority, complete item 5 If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

**2 Basis for Claim** _LOSS OF SUPPLEMENT PROGRAM_
(See instruction #2 on reverse side)

**3 Last four digits of any number by which creditor identifies debtor** _0297_

**3a Debtor may have scheduled account as** _____
(See instruction #3a on reverse side)

**4 Secured Claim** (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

**Nature of property or right of setoff** ☐ Real Estate ☐ Motor Vehicle ☐ Equipment ☐ Other
Describe

**Value of Property:** $_____ **Annual Interest Rate___%**

**Amount of arrearage and other charges as of time case filed included in secured claim, if any** $_____

**Basis for perfection**

**Amount of Secured Claim:** $_____ **Amount Unsecured** $_____

**6 Credits** The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7. Documents** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**5. Amount of Claim Entitled to Priority under 11 U S C § 507(a)** If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

**Amount entitled to priority:**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

| Date 11-14-09 | **Signature** The person filing this claim must sign it Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above Attach copy of power of attorney, if any<br><br>_Joseph C Singer_  JOSEPH C SINGER | FOR COURT USE ONLY |
|---|---|---|

Penalty for presenting fraudulent claim Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc. are not authorized and are not providing you with any legal advice

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS IF BY MAIL THE GARDEN CITY GROUP, INC, ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, PO BOX 9386, DUBLIN, OH 43017-4286 IF BY HAND OR OVERNIGHT COURIER THE GARDEN CITY GROUP, INC, ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017 PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004 ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 P M. (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009 You should select the debtor against which you are asserting your claim

**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case Please provide us with a valid email address A separate space is provided for the payment address if it differs from the notice address The creditor has a continuing obligation to keep the court informed of its current address See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing Follow the instructions concerning whether to complete items 4 and 5 Check the box if interest or other charges are included in the claim

**2  Basis for Claim**
State the type of debt or how it was incurred Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a  Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured Skip this section if the claim is entirely unsecured (See DEFINITIONS, below ) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5  Amount of Claim Entitled to Priority Under 11 U S C  § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS, below ) A claim may be partly priority and partly non-priority For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U S C  § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below) Attach documentation supporting such claim

**6  Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7  Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt You may also attach a summary You must also attach copies of documents that evidence perfection of any security interest You may also attach a summary FRBP 3001(c) and (d) If the claim is based on the delivery of health care goods or services, see instruction 2 Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it FRBP 9011 If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature Print the name and title, if any, of the creditor or other person authorized to file this claim State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices Attach a complete copy of any power of attorney Criminal penalties apply for making a false statement on a proof of claim

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC (f/k/a Saturn, LLC) | 09 50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09 50028 (REG) |
| MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing See 11 U S C  § 101(5) A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing The creditor must file the form with The Garden City Group, Inc as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C  § 506(a)**
A secured claim is one backed by a lien on property of the debtor The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors The amount of the secured claim cannot exceed the value of the property Any amount owed to the creditor in excess of the value of the property is an unsecured claim Examples of liens on property include a mortgage on real estate or a security interest in a car A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding In some states, a court judgment is a lien A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C  § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc , please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims One or more of these entities may contact the creditor and offer to purchase the claim Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor These entities do not represent the bankruptcy court or the debtor The creditor has no obligation to sell its claim However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C  § 101 et seq ), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414 9607 or by e-mail at claims@motorsliquidation com

### INFORMATION



**GM Benefits & Services Center**
gmbenefits com
1-800-489-4646
**International Access**
Dial AT&T Direct® Service Access Code, then 877-833-9900
**TDD Service for the Hearing Impaired**
1-877-347-5225

00197 2537 ***************AUTO**3-DIGIT 483
Joseph C Singer
2166 Sandlewood Dr
Shelby Township, MI 48316-1053

ˡᵘˡˡᵖˡᵘˡˡˡˡˡˡᵖˡˡˡˡˡˡˡˡᵖˡˡˡˡˡˡˡˡˡˡˡˡᵖˡˡᵐˡᵖᵐˡ

August 10, 2009

Re:       **Notification of Permanent 10% Benefit Reduction**
          Executive Retirement Plan "the ERP" (formerly called Supplemental Executive
          Retirement Program) Benefits

Dear Joseph C Singer,

Earlier this year you were notified that effective May 1, 2009, your ERP benefit payments would
be reduced by 10% for the duration of the year through December 31, 2009

On June 1ˢᵗ, we announced that we would be reducing certain retiree benefits by roughly two-
thirds  We have now finalized the changes we need to make in the Executive Retirement Plan to
meet that requirement   As a result, effective August 1, 2009, the 10% reduction in your ERP
benefit payment is now a permanent reduction

If you have any questions, please call the GM Benefits & Services Center toll-free at 1-877-749-
6725, Monday through Friday, between 7 30 a m  and 6 00 p m , Eastern Time zone, to speak
with a Customer Service Associate  From outside the U S , dial your country's toll-free AT&T
Direct® access number then enter 877-833-9900  In the U S , call 1-800-331-1140 to obtain AT&T
Direct access numbers  From anywhere in the world, access numbers are available online at
www att com/traveler or from your local operator

To ensure you receive future mailings, please contact the GM Benefits & Services Center any
time your mailing address changes

Sincerely,

**GM Benefits & Services Center**

3 GM-B-125G 100

SUPPLEMENTAL EXECUTIVE RETIREMENT
PROGRAM (SERP) FOR JOSEPH C SINGER
RETIREE AND SPOUSE BLANCHE V SINGER

SEE ATTACHED G.M. DOCUMENT DATE
7-30-91 AND 7-9-91 FOR AUTHORIZATION
OF SERP BENEFITS WITH SURVIVING SPOUSE.

REDUCTION IN BENEFITS MAY-1-2009
SEE ATTACHED GM LETTER DATE 4-27-2009
PAYMENTS REDUCED BY 10% DURATION
OF YEAR 2009. G.M. LETTER OF 8-10-2009
EFFECTIVE 8-1-2009 10% REDUCTION IS
NOW PERMANENT.

FULL ERP AMOUNT  420.96
REDUCE AMOUNT    378.86
  RETIREE        - 42.10  LOSS
42.10 X 12 = 505.20 PER YR.
505.20 X 10.26 LIFE EXPECTANCY = 5,183.35

  SPOUSE
FULL ERP AMOUNT  252.58
REDUCE AMOUNT    227.35
                - 25.23  LOSS

25.23 X 2 = 302.76 PER YEAR
362.76 X 8.64 = LIFE EXPECTANCY = 2,434.19

SERP-60

## SUPPLEMENTAL EXECUTIVE RETIREMENT PROGRAM (SERP)

## SURVIVING SPOUSE COVERAGE - ELECTION/REJECTION FORM

| | |
|---|---|
| Employe Name: ___Joseph C. Singer___ | Social Security Number: ___378 30 0297___ |
| CISCO Code: ___18001___ | Retirement Date: ___9 1 91___ |

### Section A - Election of Surviving Spouse Coverage

☒   I understand the Coverage described on the reverse side of this form and wish to elect the SERP Surviving Spouse Coverage for my spouse:

| | |
|---|---|
| Spouse Name: ___Blanche V. Singer___ | Spouse Social Security Number: ___370 38 5590___ |
| Spouse Birth Date: ___5 6 37___ | Date of Marriage: ___8 27 60___ |

I also understand if I am not receiving a SERP benefit because the sum of benefits payable to me under the General Motors Salaried Retirement Program, and any other GM-provided benefit program, exceed the monthly SERP benefit amount, the cumulative amount by which my benefits would have otherwise been reduced for this Coverage will accrue during each month the SERP benefit is not payable to me. When the SERP benefit first becomes payable to me, this cumulative amount will be recovered in full, before I receive any SERP payment.

### Section B - Rejection of Surviving Spouse Coverage

☐   Not married.

☐   I have an eligible spouse, and I understand the Survivor Coverage described on the reverse side of this form, but I hereby reject the SERP Surviving Spouse Coverage.

_Joseph C Singer_
Employe Signature

_7-9-91_
Date

Distribution:  Original -- Master Retirement File
Copy 1   -- Employe
Copy 2   -- Metropolitan Life Insurance Company (Recordkeeper)

Rev. 10/90



APS2080870191
01120581

PLEASE COMPLETE THE FOLLOWING

ITEM 1   **Amount of General Unsecured Claim.**  For purposes of voting to accept or reject the Plan, the undersigned holds a General Unsecured Claim against the Debtor listed below in the amount set forth below

| | |
|---|---|
| Claim Amount | $321,130 04 |
| Debtor | MOTORS LIQUIDATION COMPANY |

ITEM 2   **Vote on the Plan.**  The undersigned holder of a Class 3 General Unsecured Claim in the amount set forth in Item 1 above hereby votes to

Check one box    ☒    Accept the Plan

                  ☐    Reject the Plan

*(stamp: THE GARDEN CITY GROUP INC   JAN 26 2011   01-26-11 A09 55 IN)*

ITEM 3   **Acknowledgement and Certification.**  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Disclosure Statement, including all exhibits thereto  The undersigned certifies that (i) it is the holder of the General Unsecured Claim identified in Item 1 above and (ii) it has full power and authority to vote to accept or reject the Plan  The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the Bankruptcy Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein

Print or Type Name of Claimant    *JOSEPH C SINGER*

Social Security or Federal Tax I D  No  of Claimant   *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*

Signature    *Joseph C Singer*

Name of Signatory (if different than claimant)    _____

If by Authorized Agent, Title of Agent    _____

Street Address    _____

City, State, and Zip Code    _____

Telephone Number    _____

E-mail Address    _____

Date Completed    _____

*Please check* <u>*one or both*</u> *of the below boxes, if the above address is a change of address for the purpose(s) of*

☐ future notice mailings, **AND/OR**   ☐ distributions

*BALLOT #1316*

5

1199 / Z 4



APS2080870191
01120581

SINGER  JOSEPH C
2166 SANDLEWOOD DR
SHELBY TWP, MI 48316-1053

1199 / Z 4



**Mr Joseph C. Singer**
2166 Sandlewood Dr
Shelby Township, MI 48316

# BUSINESS REPLY MAIL

FIRST-CLASS MAIL    PERMIT NO. 18    DUBLIN OH

POSTAGE WILL BE PAID BY ADDRESSEE

THE GARDEN CITY GROUP, INC
ATTN. MOTORS LIQUIDATION CO BALLOTING CENTER
PO BOX 9386
DUBLIN OH 43017-9957

METROPLEX MI 480

18 JAN 2011 PM 2 L

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES



**Exhibit 5**

01120581
APS0546445815




| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor** (Check Only One)        Case No

☑ Motors Liquidation Company (f/k/a General Motors Corporation)   09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)   09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)   09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc)   09-13558 (REG)

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 USC § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 USC § 503

**Your Claim is Scheduled As Follows:**

Name of Creditor (the person or other entity to whom the debtor owes money or property)   SINGER JOSEPH C

Name and address where notices should be sent

SINGER JOSEPH C
2166 SANDLEWOOD DR
SHELBY TWP MI 48316-1053

☐ Check this box to indicate that this claim amends a previously filed claim

**Court Claim Number** _____
(If known)

Filed on _____

Telephone number **248-650 8648**
Email Address

Name and address where payment should be sent (if different from above)

FILED - 29998
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

☑ Check this box if you are the debtor or trustee in this case

*(stamp)* THE GARDEN CITY GROUP, INC. NOV 19 2009

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

**1** Amount of Claim as of Date Case Filed, June 1, 2009   $ **4,122.50**

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority, complete item 5 If all or part of your claim is asserted pursuant to 11 USC § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

**2** Basis for Claim **LOSS OF UMBRELLA INSURANCE**
(See instruction #2 on reverse side )

**3** Last four digits of any number by which creditor identifies debtor **0297**

**3a** Debtor may have scheduled account as _____
(See instruction #3a on reverse side )

**4** Secured Claim (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

**Nature of property or right of setoff** ☐ Real Estate ☐ Motor Vehicle ☐ Equipment ☐ Other
Describe

Value of Property $_____ Annual Interest Rate____%

Amount of arrearage and other charges as of time case filed Included in secured claim, if any $_____

Basis for perfection _____

Amount of Secured Claim $_____ Amount Unsecured $_____

**5** Amount of Claim Entitled to Priority under 11 USC § 507(a) If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 USC § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 USC § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 USC § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 USC § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 USC § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 USC § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 USC § 507(a)(___)

Amount entitled to priority
$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**6** Credits The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7** Documents Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

Date **11-14-09**

**Signature** The person filing this claim must sign it Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above Attach copy of power of attorney, if any

*Joseph C Singer* JOSEPH C SINGER

**FOR COURT USE ONLY**

Penalty for presenting fraudulent claim Fine of up to $500,000 or imprisonment for up to 5 years, or both 18 USC §§ 152 and 3571
Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc., are not authorized and are not providing you with any legal advice*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS. IF BY MAIL. THE GARDEN CITY GROUP, INC, ATTN. MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P O BOX 9386, DUBLIN, OH 43017-4286. IF BY HAND OR OVERNIGHT COURIER. THE GARDEN CITY GROUP, INC., ATTN. MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 P.M. (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim
A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1  Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim

**2  Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3  Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a  Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4  Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured (See DEFINITIONS, below). State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5  Amount of Claim Entitled to Priority Under 11 U S C. § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS, below). A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U S C § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below). Attach documentation supporting such claim

**6  Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7  Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing. See 11 U S C § 101(5). A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc. as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc., please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C § 101 et seq ), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

GM - PERSONAL UMBRELLA LIABILITY
INSURANCE PROGRAM

COVERAGE LIMIT — 5 MILLION
ANNUAL PREMIUM — 42500

JANUARY 1, 2010 GM WILL DISCONTINUE
COMPANY CONTRIBUTIONS TOWARD THE
COST OF PERSONAL UMBRELLA LIABILITY
INSURANCE COVERAGE. SEE ATTACHED
LETTERS DATED 10-19-2009.

ANNUAL PREMIUM TO CONTINUE COVERAGE
OF 5 MILLION — 425.00 X LIFE EXPECTANCY
OF 9.7 YRS = 4,122.50



General Motors Company
Global Human Resources
Mail Code 482-C-32-C66
300 Renaissance Center
PO Box 300
Detroit, MI 48265-3000

| Date | October 19, 2009 |
|---|---|
| Subject | Personal Umbrella Liability Insurance (PULI) Program |
| To | Designated Active or Retired Executive Employees and Active Non-Employee Directors of General Motors Company and its Subsidiaries |

Designated Active or Retired Executive Employees of General Motors of Canada and other GM Canadian Subsidiaries

As previously announced, effective January 1, 2010 GM will discontinue company contributions toward the cost of Personal Umbrella Liability Insurance (PULI) coverage for all active and retired Executives This change reflects our continuing goal to maintain competitive benefit plan offerings while at the same time keeping a focus on cost containment which is vital to the North America turnaround and our company's long-term business success

In lieu of company paid PULI coverage, eligible active and retired Executives and active Non-Employed Directors will have the opportunity to continue their PULI coverage through AON at group rates on a self pay basis

If you would like to learn more about the voluntary self-pay opportunity, please see the enclosed offer or contact Jim Harding-Aon at 1-877-517-2441 or GM_umbrella@aon com

*Gregory E. Lau*
Executive Director
Global Compensation & Corporate Governance

660AONMemo

# Affinity Insurance Services-GM/Aon Personal Umbrella

**159 East County Line Rd, Hatboro PA 19040-1218**
**1-877-517-2441 • (fax) 1-800-701-1596**

1566

October 19, 2009

Joseph C Singer
2166 Sandlewood
Shelby Twp, MI  48316-1053

Re    General Motors Company (GM)–Personal Umbrella Liability Insurance (PULI)
      Federal Insurance Company (A Member of Chubb Insurance Co )
      Certificate No  54125
      Effective 1/1/2010 through 1/1/2011

Dear General Motor's PULI Participant

As previously informed, effective January 1, 2010 GM will no longer provide Personal Umbrella Liability Insurance (PULI) as a company paid benefit for active or retired Executives  Over the years, Aon and GM have developed a comprehensive program affording personal umbrella liability insurance protection against covered third party liability claims for you and the covered members of your household

Although GM will no longer pay for this benefit, Aon is able to offer a continuation of your current coverage, with no changes in coverage features, and with the premium paid by each individual  For the policy period January 1, 2010 through January 1, 2011, we are offering the coverage at the same negotiated premium rate of

| Coverage Limit | Annual Premium |
|----------------|----------------|
| $5 Million | $425 00 |

If you are interested in renewing please fill out the form below and send back by November 9, 2009 in the enclosed return envelope  Upon your election, you will be sent a renewal policy and invoice to renew your coverage  **See reverse side for features.**

Questions - contact Jim Harding at 1- 877-517-2441 or GM_umbrella@aon com

---

## Election to Continue GM – PULI

*Mail in the enclosed envelope today*
*or fax to 1-800-701-1596*

Joseph C Singer
2166 Sandlewood
Shelby Twp, MI  48316-1053
Certificate No  54125
Limit  $5 Million
Annual Premium  $425 00

**___ I Elect to Continue Coverage**

Please indicate any address change

**<u>Exhibit 6</u>**

01120581
APS0546445815

# UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

| | PROOF OF CLAIM |
|---|---|

Name of Debtor (Check Only One)

☑ Motors Liquidation Company (f/k/a General Motors Corporation) — Case No 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC) — 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc) — 09-13558 (REG)

**Your Claim is Scheduled As Follows**

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim against a debtor by reason of 11 U S C § 503(b)(9) (see item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

Name of Creditor (The person or other entity to whom the debtor owes money or property)   SINGER JOSEPH C

Name and address where notices should be sent

SINGER JOSEPH C
2166 SANDLEWOOD DR
SHELBY TWP MI 48316-1053

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

Telephone number   **248-656-8648**
Email Address

*THE GARDEN CITY GROUP INC. — NOV 19 2009*

Name and address where payment should be sent (if different from above)

FILED - 29999
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars

☑ Check this box if you are the debtor or trustee in this case

If an amount is identified above you have a claim scheduled by one of the debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions, you need not file again

| | |
|---|---|
| **1** Amount of Claim as of Date Case Filed, June 1, 2009   $ **309,390.00** | **5** Amount of Claim Entitled to Priority under 11 U S C § 507(a) |

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete item 4 If all or part of your claim is entitled to priority, complete item 5 If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

**2** Basis for Claim   **REDUCED LIFE INSURANCE**
(See instruction #2 on reverse side)   **SEE ATTACHED INFORMATION**

**3** Last four digits of any number by which creditor identifies debtor   **0297**

3a Debtor may have scheduled account as _____
(See instruction #3a on reverse side)

**4** Secured Claim (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

Nature of property or right of setoff   ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe

Value of Property $ _____   Annual Interest Rate _____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any $ _____

Basis for perfection

Amount of Secured Claim $ _____   Amount Unsecured $ _____

If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)

Amount entitled to priority

$ _____

**6** Credits   The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7** Documents   Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

| Date **11-14-09** | Signature   The person filing this claim must sign it   Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above   Attach copy of power of attorney, if any   *Joseph C Singer*   **JOSEPH C SINGER** | FOR COURT USE ONLY |
|---|---|---|

*Penalty for presenting fraudulent claim   Fine of up to $500,000 or imprisonment for up to 5 years, or both   18 U S C §§ 152 and 3571*
**Modified B10 (GCG) (12/08)**

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc. are not authorized and are not providing you with any legal advice*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS. IF BY MAIL. THE GARDEN CITY GROUP, INC., ATTN. MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, PO. BOX 9386, DUBLIN, OH 43017-4286. IF BY HAND OR OVERNIGHT COURIER. THE GARDEN CITY GROUP, INC., ATTN. MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5:00 P.M. (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim
A SEPARATE PROOF OF CLAIM MUST BE FILED AGAINST EACH DEBTOR.

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1 Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing.
Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim

**2 Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3 Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4 Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5 Amount of Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U.S.C. § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below). Attach documentation supporting such claim

**6 Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7 Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary FRBP 3001(c) and (d) If the claim is based on the delivery of health care goods or services, see Instruction 2. Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim

---

## DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. § 101(5). A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc. as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U.S.C. § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's

---

## INFORMATION

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc., please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation.com

GENERAL MOTORS SALARIED RETIREMENT
COMPANY-PAID LIFE INSURANCE PROGRAM.
SEE ATTACHED RETIREE BENEFIT
INFORMATION DOCUMENT-DATE 9-1-1991

CALCULATIONS FOR BASIS OF CLAIM ON
BASE AND SUPPLEMENTAL LIFE INSURANCE

BASE LIFE INSURANCE          91,390.00
AFTER 2% PER MONTH REDUCTION

SUPPLEMENTAL               228,000.00
INSURANCE
                 _____
          TOTAL  319,390.00
CURRENT COMPANY
PROVIDED INSURANCE   — 10,000.00

VALUE OF LOST LIFE
   INSURANCE         309,390.00

## RETIREE BENEFIT INFORMATION SHEET

Name    Joseph Singer                          Retirement Date    9 1 91

Credited Service        40 01

## Health Care Coverages

Traditional/HMO/PPO - Dental - Vision - Hearing Aid
GM pays the premium for your covered dependents. Also, your spouse would have GM paid benefits in the event of your death. You may not add any dependents to your coverage after retirement.

Comprehensive Medical
To continue this coverage, you must pay a small premium per month. This premium is deducted from your retirement check.
Premium: $12.02

## Life Insurance

Basic
This insurance is 2 times your annual salary. Effective at retirement, it will reduce by 2% per month to a minimum of 1-1/2 times your years of credited service. You will receive a letter from Metropolitan Life Insurance Company as to your continuing life insurance.
- Continuing Life Insurance:  $ 91,390
- Amount Prior to Reduction: $152,000

Optional Life
If you have Optional Life Insurance, the premium will be deducted monthly from your retirement check. Your premium will change automatically when you reach a higher age bracket. This insurance will remain full until age 66. At that time, it reduces by 10% per year to -0- at age 75.
- Insurance Amt. $152,000        Premium    $97.28

Dependent Life
Coverage for dependents will remain until retiree's age 70.
- Insurance Amt. $50,000         Premium    $27.50

Supplemental Insurance        $228,000        in full for life.

## Savings-Stock Purchase Program (SSPP)

If you elected to defer your stock, you may elect to receive it at anytime up to age 70-1/2. If you elected not to defer your stock, you will receive it in 6 to 8 weeks.

## Personal Accident Insurance

If you are enrolled in Personal Accident Insurance, you must contact the following to convert your monthly premium to annual payment:

Marsh McLennan Group Associates          Phone 1-800-462-5277
Plan Administration                      Monday - Friday
GM Personal Accident Insurance           9:00 a.m. - 4:30 p.m.
222 So. Riverside Plaza, Suite 3100      Central Time
Chicago, IL  60606

*BEST WISHES IN YOUR RETIREMENT!*

Metropolitan Life Insurance Company
PO Box 14406
Lexington, KY 40511-4406



July 27, 2009

2741
**Joseph C Singer**
2166 Sandlewood Dr
Shelby Township, MI 48316-1053

Dear Salaried Executive Retiree

As you know, General Motors has reduced the amount of Basic Life Insurance it provides to salaried retirees and eliminated Supplemental Life Benefits Program (SLBP) and Supplemental Group Life Insurance (SGLI) coverage for retired executives. General Motors has asked MetLife to provide an alternative arrangement to assist salaried retirees in electing additional life insurance to supplement their remaining employer provided Basic Life Insurance. MetLife is now pleased to offer you the following life insurance enrollment opportunity

From **August 3 through August 14, 2009**, you will be able to elect Voluntary Life Insurance <u>without providing proof of good health</u>. MetLife has determined that the maximum amount of coverage you may elect under this new program is $100,000. $25,000 is available due to the reduction of your Basic Life Insurance and an additional $75,000 is available as a result of the termination of your SLBP or SGLI. If you elect Voluntary Life Insurance during this enrollment period, your participation in the program will become effective on September 1, 2009

The new Voluntary Life Insurance program is not part of any plan offered by General Motors but is a separate offering made available by MetLife. Contributions required for this coverage will be separate from and in addition to your contributions for any other life insurance you may have under the General Motors Life and Disability Benefits Program for Salaried Employees. General Motors will, however, make pension benefit deductions available for the payment of premiums for the new Voluntary Life Insurance. A table of Voluntary Life Insurance rates is included on page 3. The rates for Voluntary Life Insurance will change each year as your age progresses. Your age for each calendar year will be based on your age as of December 31. As a result, your first rate change due to an increase in age will be on January 1, 2010. Subsequent rate changes due to changes in your age will occur on each January 1

Coverage options available under Voluntary Life Insurance are $5,000, $10,000, $15,000, $20,000, $25,000, $50,000, $75,000 and $100,000. The table on page 3 reflects the schedule of coverage options available to you under the Voluntary Life Insurance program. During the first two years of participation in the program, the death benefit available will be equal to the amount of premiums you have paid. Following two years of premium contributions, your coverage will continue as long as you continue to pay the required premiums and the full amount of coverage elected will be payable in the event of your death

**How to Enroll**

**ENROLL** for Voluntary Life Insurance during the enrollment period of **August 3 through August 14, 2009** by calling MetLife's toll-free number, **1-866-607-9794**, Monday through Friday from 8 30 a m to 5 00 p m Eastern Time, to complete your election. Following the enrollment period, MetLife will mail you a confirmation of your election. Deductions from your pension benefits will begin in October 2009. The first month's deduction will be for two months of premium in order to capture the premium owed for both September and October. If you are billed for Voluntary Life Insurance, you will receive your first bill (for two months of premium) in October 2009

**Beneficiary Information**

If you choose to participate, the beneficiary for your Voluntary Life Insurance will automatically be the same as you have designated for your General Motors Basic Life Insurance. If you wish to name a different beneficiary for Voluntary Life Insurance than you have for Basic Life Insurance, please contact MetLife at 1-866-607-9794 during the enrollment period

**Exhibit 7**

JOSEPH C. SINGER

CREDITOR RETIRED SALARY EMPLOYEE OF GENERAL MOTORS

SELF REPRESENTED

2166 SANDLEWOOD DR.

SHELBY TWP., MICHIGAN 48316

248-650-8648


NOTICE OF DEBTORS 175 OMNIBUS OBJECTION TO CLAIMS

CLAIMS OF FORMER SALARIED EMPLOYEE

MOTORS LIQUIDATION COMPANY

GENERAL MOTORS CORPORATION

DEBTORS

CHAPTER 11 CASE NO. 09-50026  (REG)

CLAIM NO. 29993



RECEIVED
FEB 15 2011
U.S. BANKRUPTCY COURT
SO. DIST. OF NEW YORK

JOSEPH C. SINGER

2166 SANDLEWOOD DR.

SHELBY TWP., MICHIGAN   483416

248-650-8648

GENERAL MOTORS CORPORATION

CLAIM  #29993

CHAPTER 11 CASE NO. 09-50026 (REG)


NOTICE OF DEBTORS  175  OMNIBUS OBJECTION TO CLAIMS
*(WELFARE BENEFITS CLAIMS OF RETIRED AND FORMER SALARIED AND
EXECUTIVE EMPLOYEES)*


I OBJECT AND DISAGREE THAT THE DEBTORS ARE NOT RESPONSIBLE FOR

MY BENEFITS THAT WERE AGREED TO BY GENERAL MOTORS AT THE TIME

OF MY RETIREMENT.  I RETIRED AFTER 40 YEARS OF SERVICE IN 1991 AND

HAVE BEEN RETIRED FOR 20 YEARS.  MY WIFE AND I HAVE DEPENDED ON

THESE EARNED BENEFITS DURING OUR RETIREMENT.

AT THE TIME OF MY RETIREMENT  I ATTENDED  SEVERAL RETIREMENT

CLASSES PRESENTED BY GENERAL MOTORS COVERING BENEFITS AND

SAVINGS.  THERE WAS NO MENTION  OF SECURED, UNSECURED OR

VESTED BENEFITS.  (SEE COPY OF AUTHORIZATION OF MONTHLY

BENEFITS AND COPY OF SUPPLEMENTAL SERP BENEFITS.)  AFTER 40

YEARS OF SERVICE AND 20 YEARS OF RETIREMENT THESE BENEFITS

SHOULD BECOME ASSUMED LIABILITY ON THE PART OF DEBTOR.

WHEN I SIGNED MY RETIREMENT PAPERS, THERE WAS NO TIME LIMIT OF

COVERAGE OR MENTION OF THE CORPORATION RESERVING  THE RIGHT

TO AMEND.  I BELIEVE THAT MY BENEFITS SHOULD HAVE BEEN GIVEN THE

SAME CONSIDERATION AS THE UAW HOURLY EMPLOYEES.  BECAUSE THE

SALARIED BENEFITS WERE NOT VESTED, THE DEBTORS WANT TO BE

RELIEVED OF THEIR OBLIGATIONS.

MY CLASS 3 (GENERAL UNSECURED CLAIMS) SHOULD BE ALLOWED TO GO

FORWARD UNDER THE JOINT CHAPTER 11 "PLAN" OF MOTORS

LIQUIDATION COMPANY.  PLEASE NOTE THAT MY RETIREMENT PAPERS

WERE APPROVED BY A GENERAL MOTORS AUTHORIZED DELEGATE.

 THE GOVERNMENT AND STATES WITH RETIRED EMPLOYEES FACE THE

SAME PROBLEM WITH UNFUNDED BENEFITS.  MICHIGAN HAS A 1.8 BILLION

DOLLAR DEFICIT THIS YEAR, 18 BIILLION DOLLAR UNFUNDED PENSION

LIABILITIES AND 40 BILLION IN UNFUNDED RETIREE HEALTH CARE COST.

THE STATE RESERVES THE RIGHT TO AMEND, CHANGE OR TERMINATE

WITHOUT LIABILITY.  ALL STATE GOVERNMENTS ARE CONTINUING TO

SUPPORT ALL RETIREMENT BENEFITS, SECURED, UNSECURED OR VESTED,

NOT VESTED.

THE STATE GOVERNMENTS ARE DOING THE RIGHT THING TO PROTECT

RETIREE  BENEFITS.

AFTER A 60 YEAR RELATIONSHIP WITH GENERAL MOTORS THEY DROPPED

AND REDUCED MY BENEFITS AT THE TIME OF BANKRUPTCY WITHOUT

ANY PROVISIONS TO COMPENSATE.  THEY BASE THIS ON THE MASTER

PURCHASE AGREEMENT AND A 25 YEAR OLD EMPLOYEE BENEFIT

HANDBOOK (RESERVE RIGHT TO AMEND).

JUDGE GERBER, I HOPE THAT YOU WILL SEE THIS DIFFERENTLY AND RULE

IN MY FAVOR.  SINCE I AM APPROACHING 80 YEARS OF AGE, THE ONLY

HOPE I HAVE IS YOUR FAIRNESS IN THIS MATTER.  THANK YOU FOR YOUR

CONSIDERATION.

JOSEPH C. SINGER

jcbvsinger@sbcglobal.net

SERP-60

## SUPPLEMENTAL EXECUTIVE RETIREMENT PROGRAM (SERP)

### SURVIVING SPOUSE COVERAGE - ELECTION/REJECTION FORM

Employe Name: ___Joseph C. Singer___     Social Security Number: _ _____0297_____

CISCO Code: ___18001___     Retirement Date: _9 1 91_

---

### Section A - Election of Surviving Spouse Coverage

☒  I understand the Coverage described on the reverse side of this form and wish to elect the SERP Surviving Spouse Coverage for my spouse:

Spouse Name: ___Blanche V. Singer___     Spouse Social Security Number: _____ 5590

Spouse Birth Date: ___5 6 37___     Date of Marriage: ___8 27 60___

I also understand if I am not receiving a SERP benefit because the sum of benefits payable to me under the General Motors Salaried Retirement Program, and any other GM-provided benefit program, exceed the monthly SERP benefit amount, the cumulative amount by which my benefits would have otherwise been reduced for this Coverage will accrue during each month the SERP benefit is not payable to me. When the SERP benefit first becomes payable to me, this cumulative amount will be recovered in full, before I receive any SERP payment.

---

### Section B - Rejection of Surviving Spouse Coverage

☐  Not married.

☐  I have an eligible spouse, and I understand the Survivor Coverage described on the reverse side of this form, but I hereby reject the SERP Surviving Spouse Coverage.

---

_Joseph C Singer_     _7-9-91_
Employe Signature     Date

---

Distribution:  Original -- Master Retirement File
              Copy 1   -- Employe
              Copy 2   -- Metropolitan Life Insurance Company (Recordkeeper)

Rev. 10/90

# GM to reward salaried workers

## Bonuses for beating targets OK by U.S.

**By CHRISSIE THOMPSON**
FREE PRESS BUSINESS WRITER

General Motors will pay salaried workers bonuses as a reward for exceeding 2010 profitability and quality targets, people familiar with the situation said Thursday.

GM's enhanced variable pay, which gives white-collar workers a base salary and then extra if the company hits defined goals, has the approval of the U.S. Treasury's pay czar. Managers have discretion in how much to pay; some bonuses will be in the 5%-10% range, the people said.

The bonuses come as the once-bankrupt automaker is preparing to report its first annual profit since 2004. That will likely result in profit-sharing checks for hourly workers that will easily top $3,200, the Free Press has reported.

Bloomberg News first reported the GM bonuses, saying similar payouts also are coming to white-collar workers at Ford and Chrysler.

Ford, which made a profit of $6.6 billion in 2010, already said it is paying $5,000 to its UAW-represented workers. Chrysler is giving an average of $750 to hourly workers, despite its net loss of $652 million in 2010.

**■ SOME AT GM COULD GET 50%. 10A**

---

# GM plans to award $4.5 million in college scholarships

**By CHRIS WOODYARD AND CHRISSIE THOMPSON**
USA TODAY AND FREE PRESS
BUSINESS WRITERS

General Motors plans to award $4.5 million in college scholarships, with an emphasis on disadvantaged students, as it spreads its renewed charitable emphasis from Detroit to the whole U.S.

The program will provide Buick Achievers Scholarships of $2,000 a year to 1,000 outstanding college-bound students. An additional 100 "national scholarships" of $25,000 will go to especially deserving students. The scholarships are renewable for four and, in some cases, five years.

"We are trying to demonstrate that we can be a profitable company ... and at the same time give something back to America," CEO Dan Akerson said.

The funds are being provided through the General Motors Foundation, a charitable entity separate from the automaker, and underscore how now-profitable GM, one of the most generous corporate donors before the decline that led to its 2009 bankruptcy reorganization, is trying to return to serious philanthropy.

**THE BUICK SCHOLARSHIPS ARE RENEWABLE FOR FOUR AND, IN SOME CASES, FIVE YEARS.**

The renewable Buick Achievers Scholarships will focus on students interested in pursuing degrees in science, technology, engineering and mathematics, but also will include design, marketing, accounting and finance. Akerson said he hopes the grants encourage graduates to apply their talents to the auto industry.

Akerson, a graduate of the U.S. Naval Academy, also said he hopes the program will be of particular benefit to the families of military veterans. He said the program also will try to reach students who could be the first in their families to attend college — especially women and minorities.

On a conference call, Akerson said he knows starting such charitable activities could bring criticism since the government still owns about a third of GM, down from 61% before its initial public offering of stock in November.

But he notes that GM hasn't replenished the coffers of its foundation since 2001 and that it now is financially healthy enough to consider resuming donations.

"We've paid back almost $80 billion in dividends," he said. "We hope the government will see the benefit to America with this program."

In December, GM also announced it would pump $27.1 million over the next five years into a United Way project that restructures Detroit schools into small academies and creates centers nearby to prepare children for kindergarten.

**■ CONTACT CHRISSIE THOMPSON:**
CTHOMPSON@FREEPRESS.COM

**Exhibit 8**

JOSEPH C. SINGER

CREDITOR RETIRED SALARY EMPLOYEE OF GENERAL MOTORS

SELF REPRESENTED

2166 SANDLEWOOD DR.

SHELBY TWP., MICHIGAN 48316

248-650-8648


NOTICE OF DEBTORS 181 OMNIBUS OBJECTION TO CLAIMS

CLAIMS OF FORMER SALARIED EMPLOYEE

MOTORS LIQUIDATION COMPANY

GENERAL MOTORS CORPORATION

DEBTORS

CHAPTER 11 CASE NO. 09-50026  (REG)

CLAIM NO. 29998



JOSEPH C. SINGER

2166 SANDLEWOOD DR.

SHELBY TWP., MICHIGAN  483416

248-650-8648

GENERAL MOTORS CORPORATION

CLAIM  #29998

CHAPTER 11 CASE NO. 09-50026 (REG)


NOTICE OF DEBTORS  181  OMNIBUS OBJECTION TO CLAIMS
*(WELFARE BENEFITS CLAIMS OF RETIRED AND FORMER SALARIED AND
EXECUTIVE EMPLOYEES)*

I OBJECT AND DISAGREE THAT THE DEBTORS ARE NOT RESPONSIBLE FOR

MY BENEFITS THAT WERE AGREED TO BY GENERAL MOTORS AT THE TIME

OF MY RETIREMENT.  I RETIRED AFTER 40 YEARS OF SERVICE IN 1991 AND

HAVE BEEN RETIRED FOR 20 YEARS.  MY WIFE AND I HAVE DEPENDED ON

THESE EARNED BENEFITS DURING OUR RETIREMENT.

AT THE TIME OF MY RETIREMENT  I ATTENDED  SEVERAL RETIREMENT

CLASSES PRESENTED BY GENERAL MOTORS COVERING BENEFITS AND

SAVINGS.  THERE WAS NO MENTION  OF SECURED, UNSECURED OR

VESTED BENEFITS.  (SEE COPY OF AUTHORIZATION OF MONTHLY

BENEFITS AND COPY OF SUPPLEMENTAL SERP BENEFITS.)  AFTER 40

YEARS OF SERVICE AND 20 YEARS OF RETIREMENT THESE BENEFITS

SHOULD BECOME ASSUMED LIABILITY ON THE PART OF DEBTOR.

WHEN I SIGNED MY RETIREMENT PAPERS, THERE WAS NO TIME LIMIT OF

COVERAGE OR MENTION OF THE CORPORATION RESERVING THE RIGHT

TO AMEND. I BELIEVE THAT MY BENEFITS SHOULD HAVE BEEN GIVEN THE

SAME CONSIDERATION AS THE UAW HOURLY EMPLOYEES. BECAUSE THE

SALARIED BENEFITS WERE NOT VESTED, THE DEBTORS WANT TO BE

RELIEVED OF THEIR OBLIGATIONS.

MY CLASS 3 (GENERAL UNSECURED CLAIMS) SHOULD BE ALLOWED TO GO

FORWARD UNDER THE JOINT CHAPTER 11 "PLAN" OF MOTORS

LIQUIDATION COMPANY. PLEASE NOTE THAT MY RETIREMENT PAPERS

WERE APPROVED BY A GENERAL MOTORS AUTHORIZED DELEGATE.

THE GOVERNMENT AND STATES WITH RETIRED EMPLOYEES FACE THE

SAME PROBLEM WITH UNFUNDED BENEFITS. MICHIGAN HAS A 1.8 BILLION

DOLLAR DEFICIT THIS YEAR, 18 BIILLION DOLLAR UNFUNDED PENSION

LIABILITIES AND 40 BILLION IN UNFUNDED RETIREE HEALTH CARE COST.

THE STATE RESERVES THE RIGHT TO AMEND, CHANGE OR TERMINATE

WITHOUT LIABILITY. ALL STATE GOVERNMENTS ARE CONTINUING TO

SUPPORT ALL RETIREMENT BENEFITS, SECURED, UNSECURED OR VESTED,

NOT VESTED.

THE STATE GOVERNMENTS ARE DOING THE RIGHT THING TO PROTECT

RETIREE BENEFITS.

AFTER A 60 YEAR RELATIONSHIP WITH GENERAL MOTORS THEY DROPPED

AND REDUCED MY BENEFITS AT THE TIME OF BANKRUPTCY WITHOUT

ANY PROVISIONS TO COMPENSATE. THEY BASE THIS ON THE MASTER

PURCHASE AGREEMENT AND A 25 YEAR OLD EMPLOYEE BENEFIT

HANDBOOK (RESERVE RIGHT TO AMEND).

JUDGE GERBER, I HOPE THAT YOU WILL SEE THIS DIFFERENTLY AND RULE

IN MY FAVOR. SINCE I AM APPROACHING 80 YEARS OF AGE, THE ONLY

HOPE I HAVE IS YOUR FAIRNESS IN THIS MATTER. THANK YOU FOR YOUR

CONSIDERATION.

JOSEPH C. SINGER

jcbvsinger@sbcglobal.net

# GM plans to award $4.5 million in college scholarships

**BY CHRIS WOODYARD**
**AND CHRISSIE THOMPSON**
USA TODAY AND FREE PRESS
BUSINESS WRITERS

General Motors plans to award $4.5 million in college scholarships, with an emphasis on disadvantaged students, as it spreads its renewed charitable emphasis from Detroit to the whole U.S.

The program will provide Buick Achievers Scholarships of $2,000 a year to 1,000 outstanding college-bound students. An additional 100 "national scholarships" of $25,000 will go to especially deserving students. The scholarships are

renewable for four and, in some cases, five years.

"We are trying to demonstrate that we can be a profitable company ... and at the same time give something back to America," CEO Dan Akerson said.

The funds are being provided through the General Motors Foundation, a charitable entity separate from the automaker and underscore how now-profitable GM, one of the most generous corporate donors before the decline that led to its 2009 bankruptcy reorganization, is trying to return to serious philanthropy.

**THE BUICK SCHOLARSHIPS ARE RENEWABLE FOR FOUR AND, IN SOME CASES, FIVE YEARS.**

The renewable Buick Achievers Scholarships will focus on students interested in pursuing degrees in science, technology, engineering and mathematics, but also will include design, marketing, accounting and finance. Akerson said he hopes the grants encourage graduates to apply their talents to the auto industry.

Akerson, a graduate of the

U.S. Naval Academy, also said he hopes the program will be of particular benefit to the families of military veterans. He said the program also will try to reach students who could be the first in their families to attend college — especially women and minorities.

On a conference call, Akerson said he knows starting such charitable activities could bring criticism since the government still owns about a third of GM, down from 61% before its initial public offering of stock in November.

But he notes that GM hasn't replenished the coffers of its

foundation since 2001 and that it now is financially healthy enough to consider resuming donations.

"We've paid back almost $80 billion in dividends," he said. "We hope the benefit to America with this program."

In December, GM also announced it would pump $27.1 million over the next five years into a United Way project that restructures Detroit schools into small academies and create centers nearby to educate children nearly to prepare children for kindergarten.

CONTACT CHRISSIE THOMPSON:
CTHOMPSON@FREEPRESS.COM.

---

# GM to reward salaried workers

## Bonuses for beating targets OK by U.S.

**By CHRISSIE THOMPSON**
FREE PRESS BUSINESS WRITER

General Motors will pay salaried workers bonuses as a reward for exceeding 2010 profitability and quality targets, people familiar with the situation said Thursday.

GM's enhanced variable pay, which gives white-collar workers a base salary and then extra if the company hits defined goals, has the approval of the U.S. Treasury's pay czar. Managers have discretion in how much to pay; some bonuses will be in the 5%-10% range, the people said.

The bonuses come as the once-bankrupt automaker is preparing to report its first annual profit since 2004. That will likely result in profit-sharing checks for hourly workers that will easily top $3,200, the Free Press has reported.

Bloomberg News first reported the GM bonuses also are coming to white-collar workers at Ford and Chrysler.

Ford, which made a profit of $6.6 billion in 2010, already said it is paying $5,000 to its UAW-represented workers. Chrysler is giving an average of $750 to hourly workers, despite the net loss of $652 million in 2010.

**I SOME AT GM COULD GET 50%, 10A**

**Exhibit 9**

JOSEPH C. SINGER

CREDITOR RETIRED SALARY EMPLOYEE OF GENERAL MOTORS

SELF REPRESENTED

2166 SANDLEWOOD DR.

SHELBY TWP., MICHIGAN 48316

248-650-8648


NOTICE OF DEBTORS 182 OMNIBUS OBJECTION TO CLAIMS

CLAIMS OF FORMER SALARIED EMPLOYEE

MOTORS LIQUIDATION COMPANY

GENERAL MOTORS CORPORATION

DEBTORS

CHAPTER 11 CASE NO. 09-50026 (REG)

CLAIM NO. 29999



JOSEPH C. SINGER

2166 SANDLEWOOD DR.

SHELBY TWP., MICHIGAN   483416

248-650-8648

GENERAL MOTORS CORPORATION

CLAIM  #29999

CHAPTER 11 CASE NO. 09-50026 (REG)


NOTICE OF DEBTORS  182  OMNIBUS OBJECTION TO CLAIMS
*(WELFARE BENEFITS CLAIMS OF RETIRED AND FORMER SALARIED AND
EXECUTIVE EMPLOYEES)*

I OBJECT AND DISAGREE THAT THE DEBTORS ARE NOT RESPONSIBLE FOR

MY BENEFITS THAT WERE AGREED TO BY GENERAL MOTORS AT THE TIME

OF MY RETIREMENT. I RETIRED AFTER 40 YEARS OF SERVICE IN 1991 AND

HAVE BEEN RETIRED FOR 20 YEARS.  MY WIFE AND I HAVE DEPENDED ON

THESE EARNED BENEFITS DURING OUR RETIREMENT.

AT THE TIME OF MY RETIREMENT  I ATTENDED  SEVERAL RETIREMENT

CLASSES PRESENTED BY GENERAL MOTORS COVERING BENEFITS AND

SAVINGS.  THERE WAS NO MENTION  OF SECURED, UNSECURED OR

VESTED BENEFITS. (SEE COPY OF AUTHORIZATION OF MONTHLY

BENEFITS AND COPY OF SUPPLEMENTAL SERP BENEFITS.)  AFTER 40

YEARS OF SERVICE AND 20 YEARS OF RETIREMENT THESE BENEFITS

SHOULD BECOME ASSUMED LIABILITY ON THE PART OF DEBTOR.

WHEN I SIGNED MY RETIREMENT PAPERS, THERE WAS NO TIME LIMIT OF

COVERAGE OR MENTION OF THE CORPORATION RESERVING  THE RIGHT

TO AMEND.  I BELIEVE THAT MY BENEFITS SHOULD HAVE BEEN GIVEN THE

SAME CONSIDERATION AS THE UAW HOURLY EMPLOYEES.  BECAUSE THE

SALARIED BENEFITS WERE NOT VESTED, THE DEBTORS WANT TO BE

RELIEVED OF THEIR OBLIGATIONS.

MY CLASS 3 (GENERAL UNSECURED CLAIMS) SHOULD BE ALLOWED TO GO

FORWARD UNDER THE JOINT CHAPTER 11 "PLAN" OF MOTORS

LIQUIDATION COMPANY.  PLEASE NOTE THAT MY RETIREMENT PAPERS

WERE APPROVED BY A GENERAL MOTORS AUTHORIZED DELEGATE.

 THE GOVERNMENT AND STATES WITH RETIRED EMPLOYEES FACE THE

SAME PROBLEM WITH UNFUNDED BENEFITS.  MICHIGAN HAS A 1.8 BILLION

DOLLAR DEFICIT THIS YEAR, 18 BILLION DOLLAR UNFUNDED PENSION

LIABILITIES AND 40 BILLION IN UNFUNDED RETIREE HEALTH CARE COST.

THE STATE RESERVES THE RIGHT TO AMEND, CHANGE OR TERMINATE

WITHOUT LIABILITY.  ALL STATE GOVERNMENTS ARE CONTINUING TO

SUPPORT ALL RETIREMENT BENEFITS, SECURED, UNSECURED OR VESTED,

NOT VESTED.

THE STATE GOVERNMENTS ARE DOING THE RIGHT THING TO PROTECT

RETIREE  BENEFITS.

AFTER A 60 YEAR RELATIONSHIP WITH GENERAL MOTORS THEY DROPPED

AND REDUCED MY BENEFITS AT THE TIME OF BANKRUPTCY WITHOUT

ANY PROVISIONS TO COMPENSATE.  THEY BASE THIS ON THE MASTER

PURCHASE AGREEMENT AND A 25 YEAR OLD EMPLOYEE BENEFIT

HANDBOOK (RESERVE RIGHT TO AMEND).

JUDGE GERBER, I HOPE THAT YOU WILL SEE THIS DIFFERENTLY AND RULE

IN MY FAVOR.  SINCE I AM APPROACHING 80 YEARS OF AGE, THE ONLY

HOPE I HAVE IS YOUR FAIRNESS IN THIS MATTER.  THANK YOU FOR YOUR

CONSIDERATION.

JOSEPH C. SINGER

jcbvsinger@sbcglobal.net

# GM to reward salaried workers

## Bonuses for beating targets OK by U.S.

**By CHRISSIE THOMPSON**
FREE PRESS BUSINESS WRITER

General Motors will pay salaried workers bonuses as a reward for exceeding 2010 profitability and quality targets, people familiar with the situation said Thursday.

GM's enhanced variable pay, which gives white-collar workers a base salary and then extra if the company hits defined goals, has the approval of the U.S. Treasury's pay czar. Managers have discretion in how much to pay; some bonuses will be in the 5%-10% range, the people said.

The bonuses come as the once-bankrupt automaker is preparing to report its first annual profit since 2004. That will likely result in profit-sharing checks for hourly workers that will easily top $3,200, the Free Press has reported.

Bloomberg News first reported the GM bonuses, saying similar payouts also are coming to white-collar workers at Ford and Chrysler.

Ford, which made a profit of $6.6 billion in 2010, already said it is paying $5,000 to its UAW-represented workers. Chrysler is giving an average of $750 to hourly workers, despite its net loss of $652 million in 2010.

■ SOME AT GM COULD GET 50%. 10A

# GM plans to award $4.5 million in college scholarships

**By CHRIS WOODYARD**
**AND CHRISSIE THOMPSON**
USA TODAY AND FREE PRESS
BUSINESS WRITERS

General Motors plans to award $4.5 million in college scholarships, with an emphasis on disadvantaged students, as it spreads its renewed charitable emphasis from Detroit to the whole U.S.

The program will provide Buick Achievers Scholarships of $2,000 a year to 1,000 outstanding college-bound students. An additional 100 "national scholarships" of $25,000 will go to especially deserving students. The scholarships are renewable for four and, in some cases, five years.

"We are trying to demonstrate that we can be a profitable company ... and at the same time give something back to America," CEO Dan Akerson said.

The funds are being provided through the General Motors Foundation, a charitable entity separate from the automaker, and underscore how now-profitable GM, one of the most generous corporate donors before the decline that led to its 2009 bankruptcy reorganization, is trying to return to serious philanthropy.

**THE BUICK SCHOLARSHIPS ARE RENEWABLE FOR FOUR AND, IN SOME CASES, FIVE YEARS.**

The renewable Buick Achievers Scholarships will focus on students interested in pursuing degrees in science, technology, engineering and mathematics, but also will include design, marketing, accounting and finance. Akerson said he hopes the grants encourage graduates to apply their talents to the auto industry.

Akerson, a graduate of the U.S. Naval Academy, also said he hopes the program will be of particular benefit to the families of military veterans. He said the program also will try to reach students who could be the first in their families to attend college — especially women and minorities.

On a conference call, Akerson said he knows starting such charitable activities could bring criticism since the government still owns about a third of GM, down from 61% before its initial public offering of stock in November.

But he notes that GM hasn't replenished the coffers of its foundation since 2001 and that it now is financially healthy enough to consider resuming donations.

"We've paid back almost $80 billion in dividends," he said. "We hope the government will see the benefit to America with this program."

In December, GM also announced it would pump $27.1 million over the next five years into a United Way project that restructures Detroit schools into small academies and creates centers nearby to prepare children for kindergarten.

■ CONTACT CHRISSIE THOMPSON:
CTHOMPSON@FREEPRESS.COM

**Exhibit 10**

JOSEPH C. SINGER
CREDITOR RETIRED SALARY EMPLOYEE OF GENERAL MOTORS
SELF REPRESENTED
2166 SANDLEWOOD DR.
SHELBY TWP., MICHIGAN 48316
248-650-8648

NOTICE TO DEBTORS 182 OMNIBUS OBJECTION TO CLAIMS
MOTORS LIQUIDATION COMPANY
GENERAL MOTORS CORPORATION
CHAPTER 11 CASE NO. 09-50026 (REG)
CLAIM NO. 29999

ATTACHMENTS TO BE ADDED TO MY ORIGINAL OBJECTIONS THAT YOU
RECEIVED ON FEBRUARY 15, 2011 AT 12:24 P.M.

PLEASE ADD THE ATTACHED COPIES OF LETTERS FROM GENERAL MOTORS
NATIONAL BENEFIT CENTER TO MY OBJECTION OF NOTICE DEBTORS 182-
CLAIM NO. 29999.
LETTER "A" CLEARLY STATES THAT $91,390.00 WILL REMAIN IN EFFECT
FOR THE REST OF MY LIFE AND IS PROVIDED BY GENERAL MOTORS AT NO
COST TO ME.
ATTACHMENT "B" COVERS ALL OF MY LIFE INSURANCES.  THE
SUPPLEMENTAL LIFE BENEFIT OF $228,000.00 WAS ALSO FOR LIFE AND AT
NO COST TO ME.
ATTACHMENT "A"-"B" WILL HELP SUPPORT MY OBJECTION AND
DISAGREEMENT WITH THE DEBTORS.

JOSEPH C. SINGER
jcbvsinger@sbcglobal.net
FEBRUARY 18, 2011

"A"

**GENERAL MOTORS NATIONAL BENEFIT CENTER**
**BENEFIT SERVICES GROUP**
Regional Personnel Administration
P.O. Box 5152
Southfield, Michigan 48086-5152

March 29, 1993

Joseph C Singer
2166 Sandlewood
Shelby Twp, MI 48316-1053

Dear Joseph C Singer,

As a retiree of General Motors with 10 or more years of participation in the Life and Disability Benefits Program, you are eligible for Continuing Life insurance.

Our insurance records, as of the date of this letter, show the Continuing Life insurance has now fully reduced to the ultimate amount of **$91,390.00**. This ultimate amount will remain in effect for the rest of your life and is provided by General Motors at no cost to you.

**IMPORTANT: YOU SHOULD KEEP THIS NOTICE WITH YOUR OTHER VALUABLE PAPERS.**

If you have any questions regarding this letter, you may call the General Motors National Benefit Center toll-free, 1-800-633-3900, during normal business hours, or write to the address above.

Retirees currently serviced by the National Retiree Servicing Center may continue to call 1-800-828-9236 for assistance.

Always include this Social Security number, ███████-0297, in all your correspondence.

**Benefit Services Group**

UA01

ℬ

**GM NATIONAL RETIREE SERVICING CENTER**
NAO PERSONNEL Administration
P.O. Box 5113
Southfield, Michigan 48086-5113
1-800-828-9236
TDD 1-800-872-8682

December 09, 1994

Joseph C Singer
2166 Sandlewood
Shelby Twp, MI   48316-1053

Dear Joseph C Singer,

As a result of your request, this letter is to confirm your current coverages and amounts in force, provided any required contributions have been paid.  Contribution information can be found on the reverse side of this letter.

Our records, as of the date of this letter, show the following information:

| Coverage | | Amount |
|---|---|---|
| Basic Life Insurance | | $ 91,390 |
| Dependent Life Insurance(Spouse/Child) | $ 30,000 / | 6,000 |
| Optional Life Insurance | | $ 76,000 |
| Personal Umbrella Liability Insurance | | $ 5,000,000 |
| Survivor Income Benefit Insurance | | |
| Supplemental Life Benefits Program | | $ 228,000 |
| Employee Personal Accident Insurance | | $ 50,000 |
| Spouse Personal Accident Insurance | | $ 50,000 |

Information provided in this letter is subject to the terms and conditions of the General Motors Life and Disability Benefits Program.  All insurances are term and have no cash value.

If you have any questions regarding this letter, you may call toll-free, 1-800-828-9236 (Telephone Device for the Deaf 1-800-872-8682), during normal business hours, or write to the address above.

Always include this Social Security number, ▆▆▆▆-0297, in all your correspondence.

**Retiree Servicing Center**

*Indicates that coverage or part of the coverage is owned by someone other than you.

CF00