**HEARING DATE AND TIME: June 14, 2012 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                       :
In re                                  :     Chapter 11 Case No.
                                       :
MOTORS LIQUIDATION COMPANY, et al.,    :     09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                       :
                  Debtors.             :     (Jointly Administered)
                                       :
------------------------------------------------------------x
```

**MOTORS LIQUIDATION COMPANY GUC TRUST'S REPLY**
**TO JANE C. BOGUE'S RESPONSE TO THE 181ST OMNIBUS OBJECTION**
**TO CLAIMS (WELFARE BENEFITS CLAIMS OF RETIRED**
**AND FORMER SALARIED AND EXECUTIVE EMPLOYEES)**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................................ 1

The Welfare Benefits Claim Should Be Disallowed and Expunged ........................................... 3

I.     The Welfare Benefits Claim Should Be Disallowed As Debtors Had Right to
Amend or Terminate Each Welfare Benefits Plan ............................................................ 3

     (A)    Neither the Debtors' Salaried Life Insurance Plan Nor the Retiree
Servicing Center Letter Provides Ms. Bogue with a Permanent Contractual
Right to Continuing Life Insurance Benefits at a Guaranteed Amount ................ 6

     (B)    The Retiree Servicing Center Letter Does Not Create A New Contract
With Ms. Bogue ............................................................................................... 13

II.    Ongoing Benefits Have Been Assumed by New GM .................................................... 18

The Bogue Response: Claim No. 3201 ................................................................................... 18

Conclusion ............................................................................................................................. 20

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Curtiss-Wright Corp. v. Schoonejongen*,
514 U.S. 73 (1995)..........................................................................................................4

*Devlin v. Empire Blue Cross and Blue Shield*,
274 F.3d 76 (2nd Cir. 2001) ........................................................................................4, 5, 16

*In re Oneida, Ltd.*,
400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL
234827 (S.D.N.Y. Jan. 22, 2010)...............................................................................3

*Moore v. Metro. Life Ins. Co.*,
856 F.2d 488 (2d Cir. 1988)..........................................................................................4, 7

*Sprague v. Gen. Motors Corp.*,
133 F.3d 388 (6th Cir. 1998) ....................................................................................4,9,10, 11

STATUTES

29 U.S.C. § 1051(1) ...........................................................................................................4, 7

Employee Retirement Income Security Act of 1974 .....................................................4

US_ACTIVE:\44014138\1\72240.0639

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the

above-captioned debtors (collectively, the "**Debtors**")[1] in connection with the Debtors' Second

Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or

modified from time to time), files this reply (the "**Reply**") to the Bogue Response (defined

below) interposed to the 181st Omnibus Objection to Claims (Welfare Benefits Claims of Retired

and Former Salaried and Executive Employees) (ECF No. 8864) (the "**Omnibus Objection**"),

and respectfully represents:

## Preliminary Statement

1.      On January 26, 2011, the Debtors filed the Omnibus Objection. The

Omnibus Objection seeks the disallowance and expungement of certain compensation and

welfare benefits claims of retired and former salaried and executive employees of the Debtors on

the basis that such claims (i) are related to unvested welfare benefits that were capable of being

modified or terminated by the Debtors at will pursuant to the terms of the operative documents

governing such welfare benefits and were modified or terminated in accordance with such

operative documents, and (ii) to the extent modified, have otherwise been assumed by New GM[2]

pursuant to the terms of the Master Purchase Agreement and, as described in the Omnibus

Objection, are not the responsibility of the Debtors or the GUC Trust and, therefore, should be

disallowed and expunged from the claims register.

---

[1] The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Omnibus Objection.

2.      Responses to the Omnibus Objection were due by February 22, 2011. The response listed on **Exhibit "1"** annexed hereto, and described further herein, was filed at ECF No. 9378 with respect to the Omnibus Objection (the "**Bogue Response**") by Jane C. Bogue relating to her claim, Proof of Claim No. 3201 (the "**Welfare Benefits Claim,**" which includes the "**Continuing Life Insurance Claim**"), regarding the reduction of basic life insurance benefits ("**Continuing Life Insurance Benefits**").

3.      The Bogue Response is generally not substantive, but is critical of the reduction or termination of welfare benefits provided to retired and former salaried and executive employees of the Debtors.  After reviewing the Bogue Response, the GUC Trust[3] respectfully reiterates the Debtors' position in the Omnibus Objection and further submits that Ms. Bogue has failed to provide any legal or factual support for the Welfare Benefits Claim, and, as a result, it should be disallowed and expunged.  The Bogue Response alleges the same facts provided by, and does not take any position different from the position taken by another former employee of the Debtors, George Cobble Jr., with respect to the alleged vesting of Mr. Cobble's Continuing Life Insurance Benefit, which was disallowed and expunged by an order of the Court, dated February 8, 2012 (ECF No. 11391).[4]

4.      Notwithstanding Ms. Bogue's opposition, the Bogue Response should be overruled because (i) the Debtors had a right to amend or terminate the employee welfare benefits plans (the "**Welfare Benefits Plans**") providing medical, dental, vision, and life

---

[3] While the Omnibus Objection was filed by the Debtors, this Reply is being filed by the GUC Trust because, pursuant to the Plan, the GUC Trust now has the exclusive authority to prosecute and resolve objections to Disputed General Unsecured Claims (as defined in the Plan).

[4] Mr. Cobble filed Proof of Claim No. 64959, which was objected to in the Debtors' 171st Omnibus Objections to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 6740).  Mr. Cobble's reply to the 171st omnibus objection appears at ECF No. 7074.  The GUC Trust's response to Mr. Cobble's reply is at ECF No. 11283.

insurance benefits (the "**Welfare Benefits**"), including those on which the Welfare Benefits

Claim is based, without further liability, and in all relevant instances did so, and (ii) New GM

otherwise assumed Welfare Benefits as they existed on the Closing Date and continues to

provide Welfare Benefits as modified prior to their assumption by New GM, and consequently

the Debtors and the GUC Trust have no liability for the Welfare Benefits Claim (which, as noted

above, includes a Continuing Life Insurance Claim).  Accordingly, the GUC Trust files this

Reply in support of the Omnibus Objection and respectfully requests that the Welfare Benefits

Claim be disallowed and expunged from the claims register.

5.      The Debtors and the GUC Trust are, of course, sympathetic to the impact

that the financial problems of the Debtors have had on Ms. Bogue's Welfare Benefits.  However,

in view of the Debtors' liquidation and under applicable law, there should be no other outcome.

### The Welfare Benefits Claim Should Be Disallowed and Expunged

6.      Ms. Bogue has failed to demonstrate the validity of her Welfare Benefits

Claim, and it should therefore be disallowed and expunged.  *See, e.g.*, *In re Oneida, Ltd.*, 400

B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827

(S.D.N.Y. Jan. 22, 2010) (claimant has burden to demonstrate validity of claim when objection is

asserted refuting claim's essential allegations).

**I.      The Welfare Benefits Claim Should Be Disallowed As Debtors Had Right to
Amend or Terminate Each Welfare Benefits Plan**

7.      The Bogue Response states opposition to the relief sought in the Omnibus

Objection with respect to the Welfare Benefits Claim, which relates to the Debtors' reduction, as

of August 1, 2009, of the maximum amount of Continuing Life Insurance Benefits to $10,000

(self-funded by General Motors Corporation (hereafter "**GM**") and subsequently by General

Motors Company ("**New GM**")), which would be paid by GM and subsequently New GM to the

beneficiaries of eligible deceased retirees to receive such benefit upon their death (*i.e.*, those whose most recent date of hire (or adjusted service date) was prior to January 1, 1993).

8.    In the Bogue Response, Ms. Bogue has not demonstrated that the Debtors were bound by any legal or contractual requirement to continue to provide her, or other retired and former salaried and executive employees, with the Welfare Benefits on a permanent basis. The Omnibus Objection explains that the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), comprehensively regulates employer-provided welfare benefits plans, and that ERISA does not require an employer to provide or to vest welfare benefits. Welfare benefits provided under the terms of a welfare benefits plan may therefore be reduced or forfeited in accordance with the terms of the applicable welfare benefits plan. 29 U.S.C. § 1051(1); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998).

9.    In addressing claims similar to Ms. Bogue's Welfare Benefits Claim, the U.S. Supreme Court has noted that welfare plans such as the Welfare Benefits Plans are specifically exempted from vesting requirements (to which pension plans are subject) under ERISA, and accordingly, employers "are generally free under ERISA, for any reason at any time, to adopt, modify or terminate welfare plans." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (citing *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir. 1990)). *See also Joyce. v. Curtiss Wright Corp.*, 171 F. 3d 130 (2d Cir. 1999) (stating the general rule that under ERISA an employer welfare plan is not vested and that an employer has the right to terminate or unilaterally amend the plan at any time). As noted in the Omnibus Objection, however, the Sixth Circuit has recognized that once welfare benefits are vested, they are rendered forever unalterable. *See also Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d

76, 82 (2nd Cir. 2001)(quoting *Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp*,

116 F.3d 976, 980 (2d Cir. 1997) ("If a [plan] document unambiguously indicates whether retiree

… benefits are vested, the unambiguous language should be enforced").

      10.    Thus, Ms. Bogue bears the burden of showing that the Debtors intended to

vest the Welfare Benefits, and did *in fact* vest the Welfare Benefits, such that Ms. Bogue has a

contractual right to the perpetual continuation of her Welfare Benefits at a contractually specified

level.

      11.    In the Bogue Response, Ms. Bogue has not provided any evidence that

contradicts the Debtors' common practice of advising participants of the Welfare Benefits Plans

of the Debtors' right to amend or terminate the Welfare Benefits at any time.  Moreover, Ms.

Bogue has not provided any evidence of a separate, affirmative contractual obligation on the part

of the Debtors to continue to provide the Welfare Benefits specifically to Ms. Bogue.  Therefore,

the Debtors and the GUC Trust do not have any liability with respect to the reduction in or

discontinuation of the Welfare Benefits.

      12.    In the Bogue Response, Ms. Bogue opposes the disallowance and

expungement of her Continuing Life Insurance Claim on the basis that the Continuing Life

Insurance benefits are vested rather than unvested.  In support, Ms. Bogue provides a one-page

letter from the Debtors to Ms. Bogue following her retirement from employment with the

Debtors (the "**Retiree Servicing Center Letter**").  Each Retiree Servicing Center Letter

generally contains the following standard language:

> As a retiree of General Motors with 10 or more years of
> participation in the Life and Disability Benefits Program, you are
> eligible for Continuing Life Insurance.  Our insurance records, as
> of the date of this letter, show the Continuing Life Insurance has
> now fully reduced to the ultimate amount of $[***stated amount***].

This ultimate amount will remain in effect for the rest of your life
and is provided by General Motors at no cost to you.

13.     In the Bogue Response, Ms. Bogue does not provide any explanation for

why the Retiree Servicing Center Letter she received should be read as ensuring the vesting of a

benefit, rather than a mere acknowledgement by her former employer of the reduction of a

lifetime death benefit amount in accordance with the written terms of the applicable life

insurance plan then in effect and subject to the plan sponsor's continuing right to change the

terms of the life insurance plan.

**(A)     Neither the Debtors' Salaried Life Insurance Plan Nor the Retiree Servicing
Center Letter Provides Ms. Bogue with a Permanent Contractual Right to
Continuing Life Insurance Benefits at a Guaranteed Amount**

14.     In the Bogue Response, Ms. Bogue provides a copy of a Retiree Servicing

Center Letter from the GM National Benefit Center ("**Retiree Servicing Center**").  GM self-

administered its life insurance benefits until some point in the 1990s, at which time it transferred

administration of life insurance benefits to MetLife, a third party administrator.  To enable

MetLife to be readily identifiable as GM's administrator for life insurance benefits, GM

permitted MetLife to use the prior name of their internal benefits administrator, the General

Motors National Benefits Center and/or Retiree Servicing Center.

15.     The Retiree Servicing Center Letter and letters substantially similar to it

were routinely sent out by mail from the Retiree Servicing Center to each retiree of General

Motors Corporation entitled to a Continuing Life Insurance Benefit (which was a continuation of

the retiree's basic life insurance benefit offered to them while they were active employees).  The

letters were routinely sent out at the time that a scheduled reduction to the retiree's Continuing

Life Insurance Benefit had reduced to the maximum amount pursuant to the terms then in effect

under the General Motors Life and Disability Benefits Program for Salaried Employees, as amended from time to time ("**Debtors' Salaried Life Insurance Plan**").

16.    As explained above with respect to the Debtors' right to amend or terminate other Welfare Benefits, ERISA does not require an employer to provide or to vest life insurance benefits.  Insurance benefits provided under the terms of a welfare benefits plan may therefore be reduced or forfeited in accordance with the terms of the applicable welfare benefits plan.  29 U.S.C. § 1051(1); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988).

17.    ERISA provides that the contractual rights established under a welfare benefits plan must be in writing and contained in the plan document for the welfare benefits plan, and furthermore, requires that a welfare benefits plan sponsor provide a summary plan description (and as necessary, summaries of material modifications) of the plan and the terms of benefits provided under the plan to participants of the plan; however, the summary plan description does not establish any contractual rights not provided by the plan document.  *Cigna Corp. v. Amara*, 000 U.S. 09-804 (2011) (holding that a summary plan description has no contractual authority because it does not constitute a part of the plan document; however, plan participants may seek appropriate equitable relief in the case of a false or misleading summary plan description).  Communications from the plan sponsor to plan participants, such as the Retiree Servicing Center Letter received by Ms. Bogue, are neither summary plan descriptions nor summaries of material modifications.  Even so, by the reasoning of *Amara*, the Retiree Servicing Center Letter does not supersede the terms of the Debtors' Salaried Life Insurance Plan, which provided the Debtors the right to amend, modify or terminate the Continuing Life Insurance benefits at any time.

18.    The Debtors clearly and unambiguously reserved their right to amend or terminate the Continuing Life Insurance Benefit under the terms of the plan documents and the summary plan descriptions of the Debtors' Salaried Life Insurance Plan provided and made available to Ms. Bogue during her employment period, and therefore, neither the Retiree Servicing Center Letter received by Ms. Bogue nor the plan documents create any vested contractual rights to the Continuing Life Insurance benefits.  Section 3.05 of the most recent restatement of the Debtors' Salaried Life Insurance Plan, as amended effective January 1, 2007, provides:

> The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time by action of its Board of Directors or other committee or individual expressly authorized by the Board to take such action.  The benefits available to Employees are determined solely by the terms of this Program. Absent express delegation of authority from the Board of Directors, no one has the authority to commit the Corporation to any benefit or benefit provisions not provided under the terms of this Program.

Because ERISA does not require the vesting of welfare benefits, such provision reserved the Debtors' right to modify Continuing Life Insurance benefits by amendment of Debtor's Salaried Life Insurance Plan.  Moreover, the Debtors could terminate the plan.  Clearly, no vested rights were created under the plan.  The following reservation of rights to amend or terminate benefits is prominently stated on the second page of a recent benefits handbook for salaried retirees containing the summary plan description of Debtors' Salaried Life Insurance Plan:

> General Motors Corporation reserves the right to amend, change, or terminate the Plans and Programs described in this booklet.  The Plans and Programs can be amended only in writing by an appropriate committee or individual as expressly authorized by the Board of Directors.  No other oral or written statements can change the terms of a benefit Plan or Program.

The same or substantially similar reservation of rights language is prominently stated on the

second page of benefits handbooks for salaried retirees issued by the Debtors in 1996, 2000, and

2005.  Ms. Bogue was therefore clearly on notice of this reservation of rights, as she would have

seen it prominently displayed in the benefits handbooks for salaried retirees that she received

along with every other retiree with such benefits.

19.     On the basis of such language, the Sixth Circuit in *Sprague* reviewed the

plan documents and summary plan descriptions of certain of the Debtors' salaried welfare

benefits plans, as contained in benefits handbooks regularly provided by Debtors to their

employees and retirees, and concluded that the Debtors' salaried welfare benefits plans explicitly

permitted the Debtors to unilaterally amend, terminate or modify the salaried welfare benefits

provided under such plans.  The Sixth Circuit's opinion in *Sprague* contains the following

description of the Debtors' reservation of rights to change or terminate health care benefits at any

time, which reservation would have equally pertained to the right to change or terminate life

insurance benefits, the summary plan description of which was contained in the same booklet as

contained the summary plan description of the health plan:

> GM has long made it a practice to inform its salaried employees
> and retirees of their health care coverage by providing them
> booklets containing summaries of the company's health insurance
> policies and programs.  Prior to 1974 GM put out a booklet entitled
> "The GM Insurance Program for Salaried Employees."  After
> ERISA took effect in 1974 the booklet became "Highlights of
> Your GM Benefits."  Beginning in 1977, GM also issued a booklet
> called "Your Benefits in Retirement."  Each of these publications

went through a series of different editions [...] and most of the booklets also put plan participants on notice of GM's right to change or terminate the health care plan at any time:

> "General Motors believes wholeheartedly in this Insurance Program for GM men and women, and expects to continue the Program indefinitely. However, GM reserves the right to modify, revoke, suspend, terminate, or change the Program, in whole or in part, at any time...." The General Motors Insurance Program for Salaried Employees (1965, 1968, and 1971).

> "General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet." Your GM Benefits (1985).

> "The Corporation reserves the right to amend, modify, suspend, or terminate its benefit Plans or Programs by action of its Board of Directors." Your Benefits in Retirement (1985).

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) at 400.[5]

20.    As evidenced by the description set forth in *Sprague* and as confirmed by the Debtors, GM had a long-term practice of providing explicit notice to participants of their reservation of rights to amend or terminate salaried welfare benefits at any time through the issuance of benefits handbooks to both active and retired employees on a regular basis spanning over a period of 47 years or more (*i.e.*, since at least 1965).  This means that Ms. Bogue would have been on notice from the start of and through the end of her career with General Motors Corporation that her employer had reserved its rights to amend or terminate her basic life insurance benefit and/or their Continuing Life Insurance benefit.

---

[5] The Sixth Circuit found: "Most of the summary plan descriptions unambiguously reserved GM's right to amend or terminate the plan.  For example: 'General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet.'  Your GM Benefits (1984) [and] 'The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time, by action of its Board of Directors.'  Your Benefits in Retirement (1985)." 133 F.3d at 400.

21.     The Second Circuit has held that an employer's reservation of rights to amend or to terminate insurance benefits was sufficient to preclude such insurance benefits from being susceptible to being interpreted as promises of vested lifetime insurance benefits:

> Here … we have [SPD or Summary Plan Description] language that both appears to promise lifetime life insurance coverage at a particular level and clearly reserves Empire's right to amend or terminate such coverage. Because the same document that potentially provided the 'lifetime' benefits also clearly informed employees that these benefits were subject to modification, we conclude that the language contained in the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits.

The Sixth Circuit has similarly concluded, where a group of General Motors retirees challenged a reduction in health coverage, that the relevant SPD provided that lifetime health coverage would be provided at no cost. *See Sprague v. Gen. Motors Corp., 133 F.3d 388, 401 (6th Cir. 1998) (en banc).* The same SPD also provided that 'General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet.' *Id.* The Sixth Circuit reasoned:

> "We see no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change.... As the Third Circuit explained in a similar case, `the promise made to retirees was a qualified one: the

> promise was that retiree medical benefits were for life
> provided the company chose not to terminate the plans,
> pursuant to clauses that preserved the company's right to
> terminate the plan under which those benefits are
> provided.' *Id.* (quoting *In re Unisys Corp. Retiree Med.
> Benefit ERISA Litig.*, 58 F.3d 896, 904 n.12 (3d Cir.
> 1995))." *Abbruscato v. Empire Blue Cross and Blue
> Shield*, 274 F. 3d 90, 99-100 (2nd Cir. 2001)

22.     Each summary plan description of the Debtors' Salaried Life Insurance

Plan contained in the employee handbooks issued over the years has contained a description of

the Continuing Life Insurance benefits and an explanation of the manner in which the Continuing

Life Insurance benefits were to be reduced upon or during the retirement of a retiree.  Pursuant to

the terms of the Debtors' Salaried Life Insurance Plan, the Continuing Life Insurance Benefit

was, upon retirement or age 65, subject to reduction in the case of all of the Debtors' retirees

eligible for such benefit depending on when the retiree retired.  In addition to notice provided by

the summary plan descriptions, the Debtors were in the practice of notifying retirees of such

reductions in the form of the Retiree Servicing Center Letters.

23.     In connection with their insolvency, following approval by the Employee

Benefits Plans Committee of Debtor's Board of Directors, the Debtors reduced to $10,000 the

maximum amount of the Continuing Life Insurance Benefit that would be paid by the Debtors

(and subsequently by New GM) to the beneficiaries of a retiree eligible to receive such benefit

upon death (*i.e.*, those whose most recent date of hire (or adjusted service date) was prior to

January 1, 1993).  The reduction was effected by amendment of the Salaried Life Insurance Plan

made by the Employee Benefits Plans Committee of Debtor's Board of Directors on June 19,

2009, who had been expressly delegated by the Board of Directors the authority to amend the

Debtors' Welfare Benefits Plans.

24.     Pursuant to the terms of the Debtors' Salaried Life Insurance Plan, upon attaining age 65, retirees were no longer required to make contributions to maintain their Continuing Life Insurance benefits.  Reduction of the maximum amount of the Continuing Life Insurance benefits has not changed this fact.

25.     Upon reduction of the Continuing Life Insurance Benefit in connection with their insolvency, the Debtors provided retirees with the opportunity to supplement the reduced amount of their Continuing Life Insurance benefits by enrolling in a voluntary life insurance program through MetLife.  By virtue of the supplemental program, Ms. Bogue was fully eligible, at her cost, to continue to be covered by the life insurance benefit at the same level as prior to the reduction in her Continuing Life Insurance benefits.

**(B)     The Retiree Servicing Center Letter Does Not Create A New Contract With Ms. Bogue**

26.     In the Bogue Response, Ms. Bogue has not provided any evidence that contradicts the Debtors' common practice of advising participants of the Debtors' Salaried Life Insurance Plan of the Debtors' right to amend or terminate the Continuing Life Insurance benefits at any time.  Moreover, Ms. Bogue has not provided any evidence of an affirmative contractual obligation on the part of the Debtors separate from the terms of Debtors' Salaried Life Insurance Plan to permanently provide the same level of Continuing Life Insurance benefits specifically to Ms. Bogue.  The Retiree Servicing Center Letter refers to and explains a "Continuing Life Insurance" benefit, which appearing as a capitalized term explicitly relates to, and is one and the same with, the basic life insurance benefit provided to Debtors' retirees pursuant to Debtors' Salaried Life Insurance Plan.  Ms. Bogue should readily have recognized "Continuing Life Insurance" as a defined term of the Debtors' Salaried Life Insurance Plan, of which she would have been familiar by having read, over the past 47 years or more, employee

benefits handbooks and summary plan descriptions related to the Continuing Life Insurance.

Moreover, the Retiree Servicing Center Letter received by Ms. Bogue directly refers to the

applicability of Debtors' Salaried Life Insurance Plan in prefacing eligibility for such Continuing

Life Insurance Benefit (which had been reduced) on Ms. Bogue status as a "a retiree of General

Motors with 10 or more years of participation in the Life and Disability Benefits Program."

Therefore, the Retiree Servicing Center Letter clearly indicated that the Continuing Life

Insurance benefits were fully subject to the terms of the Debtors' Salaried Life Insurance Plan

and, as such, could not have been subject only to the terms set forth on the single page of the

Retiree Servicing Center Letter. The Retiree Servicing Center Letter could therefore not serve to

have vested Ms. Bogue in any new life insurance obligations on the part of the Debtors.

27.    The Retiree Servicing Center Letter was not approved by the Board of

Directors of GM at any time. It was not an authorized amendment of the Debtors' Salaried Life

Insurance Plan or modifications of the Continuing Life Insurance benefits. The Retiree

Servicing Center Letter sent to Ms. Bogue was merely a communication with Ms. Bogue with

respect to a change in the benefit amounts of her Continuing Life Insurance pursuant to the terms

of Debtors' Salaried Life Insurance Plan.

28.    The Retiree Servicing Center Letter was sent to Ms. Bogue after her

retirement, during a period which she was no longer providing services to the Debtors, and

therefore cannot reasonably be construed as an inducement for Ms. Bogue to provide new

services to the Debtors, or to retire. Indeed, Ms. Bogue never used the provision of permanent,

unalterable welfare benefits as a form of consideration inducing retirement. Rather, even for

employees who elected to participate in early retirement window programs (consideration for

which was typically in cash), retiree medical, life insurance and all other welfare benefits would

have been the same following retirement as for regular retirees.  Given such treatment, there

would be no reason to provide any separate communication to window program participants with

respect to their welfare benefits, such as a letter promising permanent lifetime benefits.

29.    The Retiree Servicing Center Letter does not contain any language

establishing it as a new contract between Ms. Bogue and her former employer.  To establish the

Retiree Servicing Center Letter as such, under the standard of the Second Circuit, Ms. Bogue

"must first identify 'specific written language that is reasonably susceptible to interpretation as a

promise.'" *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 103 (2nd Cir. 2001)

(quoting *Joyce*, 171 F.3d at 134).

30.    The Second Circuit in *Devlin* discussed an example of language offering a

benefit that could have been susceptible to induce employees to perform without having been

negated by the employer's reservation of its right to amend or terminate the benefit (which

Empire's pre-1987 summary plan description had not done) and that is reasonably susceptible to

interpretation as a promise:

> Plaintiffs direct our attention to two sentences within the pre-1987
> [summary plan description]s.  The first provides that 'retired
> employees, after completion of twenty years of full-time
> permanent service and at least age 55 will be insured.' J.A. at 522
> (emphasis added).   We believe that this statement can be
> reasonably read as promising such insurance so long as employees
> retire after age 55 and have provided full-time permanent service
> to Empire for at least twenty years.   This provision can be
> construed as an offer that specifies performance as the means of
> acceptance -- sometimes referred to as an offer for a unilateral
> contract -- and promises lifetime life insurance benefits upon
> performance.  Therefore, by 'performing' (that is, working for at
> least twenty years until attaining the age of 55), the plaintiffs
> accepted this offer. Restatement (Second) of Contracts 45(1)
> (1981). Where the offeror did not explicitly reserve the power to
> revoke, such an offer cannot be revoked once the offeree has begun
> to perform. See id. 45 & cmt. d ('The beginning of performance . .
> . completes the manifestation of mutual assent and furnishes

> consideration.'). Therefore, Empire's reliance on its 1987 [summary plan description], 'Your Handbook,' for its reservation of the right to modify the life insurance benefits is unavailing. We reject Empire's argument because after the plaintiffs began performance, pursuant to the pre-1987 [summary plan description]s, Empire was not free to revoke. *Id.* at 84.

Contrary to the facts with respect to Empire's failure to reserve its right in pre-1987 summary plan descriptions to amend or terminate the life insurance benefit, the Debtors have had a long-term practice over at least the past 47 years, and most likely for an even longer period of time, to provide explicit notice in each of their summary plan descriptions of their right to amend or terminate life insurance benefits at any time. Moreover, by the time that Ms. Bogue had received the Retiree Servicing Center Letter in question, she had retired and could no longer be induced to perform any services for the Debtors, nor be induced to retire a second time, and so, the contents of the applicable Retiree Servicing Center Letter could not have been susceptible to interpretation as a promise.

31.     Though Ms. Bogue has not made any such argument or suggestion, it cannot be said that Ms. Bogue relied on the qualified statement made in the Retiree Servicing Center Letter to her detriment. In order to prevail on a claim of promissory estoppel under ERISA in the Second Circuit, Ms. Bogue must establish: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151 (2d Cir. 1999) (quoting *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 79 (2d Cir. 1996). Additionally, "an ERISA plaintiff must 'adduce[…] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well.'" *Aramony,* 191 F.3d at 151 (quoting *Devlin v. Transp. Comms. Int'l Union,* 173 F.3d 94, 102 (2d Cir. 1999)). The Second Circuit in *Devlin* cited that "*Schonholz*

provides an example of such extraordinary circumstances, where the employer used promised severance benefits to induce the plaintiff to retire." *Devlin,* 274 F.3d at 86 (quoting *Schonholz,* 87 F.3d at 79-80).

32.    With respect to the Continuing Life Insurance Claims, there was no promise to provide permanent basic life insurance benefits at the same level where the Debtors had provided explicit notice to Ms. Bogue over the past 47 years or more, that they could amend or terminate the basic life insurance benefits at any time (*i.e.*, in a manner discussed by *Abbruscato*, *supra*).  Because there was no promise of a permanent benefit, there could be no reliance on such promise.  It has been demonstrated that the Retiree Servicing Center Letter itself did not create a separate obligation on the Debtors to provide a benefit separate from benefits offered under Debtors' Salaried Life Insurance Plan, and as such, the Retiree Servicing Center Letter in and of itself could not have created a promise nor could it have been susceptible to interpretation as a promise.

33.    Nor were there any facts that may separately support the existence of extraordinary circumstances in the case of either the Retiree Servicing Center Letter or the reduction in 2009 of the Continuing Life Insurance.  Basic life insurance is a benefit that is commonly provided by employers on an unvested basis, and is accordingly assumed by most employees and retirees to be a benefit that could be lost at any time, absent an extraordinary circumstance, such as a separate, express contractual commitment.  With respect to the Continuing Life Insurance Claims, Ms. Bogue has not suggested any extraordinary circumstances with respect to her right to Continuing Life Insurance, such as receiving it as an inducement to enter into employment or to retire early.  No such extraordinary circumstance could exist where the Debtors have clearly and unambiguously represented to their employees

and retirees over the past 47 years or more of their right to amend or terminate life insurance

benefits at any time.  Moreover, at the time that Ms. Bogue received the Retiree Servicing Center

Letter and at the time that the Debtors provided notice in June 2009 to Ms. Bogue of the

reduction in their Continuing Life Insurance benefits, Ms. Bogue had already retired and could

therefore neither have been induced to perform (*i.e.*, in a manner discussed by *Devlin*, *supra*) or

otherwise made to rely in any manner constituting an extraordinary circumstance.

II.    **Ongoing Benefits Have Been Assumed by New GM**

34.    On the Closing Date, New GM completed its purchase of certain assets in

accordance with the Master Purchase Agreement.  Pursuant to Section 6.17(e) of the Master

Purchase Agreement (*Assumption of Certain Parent Employee Benefit Plans and Policies*), New

GM assumed the plans specified in a disclosure schedule, and the Welfare Benefits Plans

(including Debtors' Salaried Life Insurance Plan) are set forth on that schedule.  New GM

assumed the obligation to provide the Welfare Benefits to the extent required to be provided

under the terms of the applicable Welfare Benefits Plan in effect on the Closing Date, including

both responsibility for all claims incurred prior to the Closing Date and all future claims properly

payable pursuant to the terms of the applicable Welfare Benefits Plan in effect when such claims

are incurred.  Therefore, the Debtors and the GUC Trust do not have any liability with respect to

Welfare Benefits (including the Continuing Life Insurance benefits) that have been assumed by

New GM, and Ms. Bogue has not provided any credible factual or legal basis to suggest

otherwise.

**The Bogue Response**

**Claim No. 3201**

35.    On February 22, 2011, the Bogue Response was filed on behalf of Jane C.

Bogue at ECF No. 9378, stating opposition to the relief sought in the Omnibus Objection with

respect to her Welfare Benefits Claim (*See* Proof of Claim 3201 annexed as **Exhibit "2"** hereto

and Bogue Response annexed as **Exhibit "3"** hereto). In the Bogue Response, Ms. Bogue

opposes the disallowance and expungement of her Welfare Benefits Claim on the basis that she

was promised life insurance for the rest of her life and that the disallowance is "not right."

Included with the Bogue Response is a copy of a Retiree Servicing Center Letter.  Ms. Bogue

does not provide any explanation for why the Retiree Servicing Center Letter should be read as

ensuring the vesting of a benefit, rather than a mere acknowledgement by her former employer of

the reduction of a lifetime death benefit amount in accordance with the written terms of the

applicable life insurance plan then in effect and subject to the plan sponsor's continuing right to

change the terms of the life insurance plan, as discussed in more detail above.

> 36.    Also included with the Bogue Response is a copy of a benefits summary

from Metropolitan Life that Ms. Bogue received in 1989.  The letter clearly states that the

benefits are administered "[u]nder the provisions of the General Motors Life and Disability

Benefits Program."  Ms. Bogue was therefore on notice that the terms of her benefits were

subject to the Welfare Benefits Plan, and it was to the Welfare Benefits Plan that she had to look

to in order to confirm the terms under which her Welfare Benefits were being provided.  During

the course of her employment, Ms. Bogue and all similarly situated employees received

summary plan descriptions describing the terms of their Welfare Benefits each year.  Upon

retirement, Ms. Bogue and similarly situated retirees received a summary plan description every

five years.  In each document, the Debtors reserved the right to modify the terms of the Welfare

Benefits Plan at any time.[6] Ms. Bogue was therefore on notice that her Welfare Benefits were

subject to change, as indicated by the letter that she submitted with her Welfare Benefits Claim.

---

[6] See Declaration of Joseph H. Smolinsky in Support of Motors Liquidation Company GUC Trust's Reply to
Responses to the 83rd Omnibus Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and

37.     No additional documentation is provided in either Proof of Claim No. 3201 or the Bogue Response to support Ms. Bogue's assertions.  Further, the GUC Trust is not aware of any documentation or facts supporting Ms. Bogue's Welfare Benefits Claim. The Bogue Response does not provide any additional support for her Welfare Benefits Claim.  For the reasons set out above, the GUC Trust respectfully submits that the Bogue Response should be overruled, and Ms. Bogue's Welfare Benefits Claim should be disallowed and expunged.

## Conclusion

38.     Because (i) ERISA recognizes that employers are free to amend or terminate welfare benefits, (ii) the Debtors had explicitly reserved their right to amend, modify or terminate the Welfare Benefits (including the Continuing Life Insurance Benefit) at any time, (iii) the Retiree Servicing Center Letter submitted by Ms. Bogue does not establish any contractual rights to vested Continuing Life Insurance Benefits, and (iv) Ms. Bogue has not provided evidence of any permanent contractual right to vested Welfare Benefits;  the Debtors and the GUC Trust have no liability for the Welfare Benefits Claim.  The GUC Trust reiterates that the Bogue Response has not provided any legal or factual support for the Welfare Benefits Claim, which cannot be afforded prima facie validity under the Bankruptcy Code.  Accordingly, the Welfare Benefits Claim should be disallowed and expunged in its entirety.

---

Executive Employees) (Proof of Claim No. 62922 filed by Claimant Linda K. Bellaire) at ECF No. 11453 for a copy of Summary Plan Descriptions sent to General Motors Corporation retirees.  Page 2 of the Summary Plan Description explicitly states, "General Motors Corporation reserves the right to amend, change, or terminate the Plans and Programs described in this booklet."

WHEREFORE, for the reasons set forth above and in the Omnibus Objection, the

GUC Trust respectfully requests that the Court grant the relief requested in the Omnibus

Objection and such other and further relief as is just.

Dated:  New York, New York
        June 5, 2012

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**Exhibit 1**

| 181st Omnibus Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) | | | | | |
|------|--------------------|----------|---------------|----------------|---------|
| No. | Proof of Claim No. | ECF No. | Name | Total Claimed | Summary |
| 1. | 3201 | 9378 | Bogue, Jane C. | $19,172.00 (U) | Ms. Bogue's response notes that she worked for GMAC for over 32 years, and was promised $29,172 in life insurance for the rest of her life. Mrs. Bogue provided a letter from the General Motors National Benefit Center supporting her response. |

**Exhibit 2**

01148715
APS0549221761




| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor** (Check Only One)

☒ Motors Liquidation Company (f/k/a General Motors Corporation) — Case No 09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC) — 09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) — 09-13558 (REG)

**Your Claim is Scheduled As Follows.**

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

**Name of Creditor** (The person or other entity to whom the debtor owes money or property)   BOGUE JANE C

Name and address where notices should be sent

BOGUE, JANE C
1818 BUCKNER DR
LONGVIEW, TX 75604-2406

Telephone number   903-759-5925
Email Address

Name and address where payment should be sent (if different from above)

FILED - 03201
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box to indicate that this claim amends a previously filed claim

**Court Claim Number** _____
(If known)

Filed on _____

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

THE GARDEN CITY GROUP, INC.
OCT 5 2009

If an amount is identified above  you have a claim scheduled by one of the Debtors as shown (this scheduled amount of your claim may be an amendment to a previously scheduled amount ) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED, UNLIQUIDATED or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions you need not file again

**1  Amount of Claim as of Date Case Filed, June 1, 2009**   $ 19,172.00

If all or part of your claim is secured, complete item 4 below, however, if all of your claim is unsecured, do not complete, item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2  Basis for Claim**  My life ins was #29,178 00 + now they have reduced
(See instruction #2 on reverse side )   it to #10,000.00.

**3  Last four digits of any number by which creditor identifies debtor** _____

3a  Debtor has scheduled account as _____
(See instruction #3a on reverse side )

**4  Secured Claim** (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

**Nature of property or right of setoff**  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe

Value of Property  $_____   Annual Interest Rate _____ %

Amount of arrearage and other charges as of time case filed included in secured claim, if any  $_____

Basis for perfection _____

Amount of Secured Claim  $_____   Amount Unsecured  $_____

**5**  **Amount of Claim Entitled to Priority under 11 U S C § 507(a)** If any  portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages  salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case - 11 U S C § 503(b)(9) § 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)

**Amount entitled to priority**
$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**6  Credits**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7  Documents**  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

**FOR COURT USE ONLY**

**Date**  10-1-09

**Signature**  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any

*Jane C. Bogue*
Jane C. Bogue

*Penalty for presenting fraudulent claim*  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc. are not authorized and are not providing you with any legal advice.*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS: IF BY MAIL, THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P.O. BOX 9386, DUBLIN, OH 43017-4286. IF BY HAND OR OVERNIGHT COURIER: THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED.

### THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5:00 P.M. (PREVAILING EASTERN TIME)

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim.
A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR.

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1 Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2 Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim.

**3 Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any.

**3a Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4 Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured. (See DEFINITIONS, below.) State the type and the value of property that secures the claim, attach copies of lien documentation and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5 Amount of Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

For claims pursuant to 11 U.S.C. § 503(b)(9), indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS, below). Attach documentation supporting such claim.

**6 Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt.

**7 Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning.

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim.

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.
The Debtors in these Chapter 11 cases are:

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing.

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing. See 11 U.S.C. §101(5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc. as described in the instructions above and in the Bar Date Notice.

**Secured Claim Under 11 U.S.C. § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business.

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out or otherwise deleted certain information. A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth.

### INFORMATION

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc., please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 et seq.), and any applicable orders of the bankruptcy court.

**Additional Information**
If you have any questions with respect to this claim form, please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation.com

Met Life
P O Box 14406
Lexington, Ky. 40611-4406

8-11-09

Jane C. Bogue    SS # 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

Ref: Reduction of Basic Life Insurance -
Complaint

T. M.

8-11-09
SS# 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

As you Can see on the enclosed papers, I have been told since 1989 that I would have $29,122.00 in life insurance for the rest of my life — Now, I'm 74 years old & you tell me that I'm really only going to have $10,000.00.

Please tell me you are going to make this right for me or that I need to take some other action—

Sincerely,

June C. Bogue
1818 Buckner
Longview, Tex. 75604
903-759-5925

*Do Not Destroy*

**General Motors National Benefit Center**
**Benefit Services Group**
**Regional Personnel Administration**
**P.O. Box 5152**
**Southfield, MI 48086-5152**

December 10, 1991

JANE C BOGUE
1818 BUCKNER ST
LONGVIEW, TX  75604-2406

Dear JANE C BOGUE,

As a retiree of General Motors with 10 or more years of participation in the
Life and Disability Benefits Program, you are eligible for Continuing Life
insurance.

Our insurance records show your Continuing Life Insurance has now fully
reduced to the ultimate amount of **$29,172.00**.  This ultimate amount will
remain in effect for the rest of your life and is provided by General Motors
at no cost to you.

**IMPORTANT:  YOU SHOULD KEEP THIS NOTICE WITH YOUR OTHER VALUABLE PAPERS.**

If you have any questions regarding this letter, you may call the General Motors
National Benefit Center toll-free, 1-800-633-3900, or write to:

                General Motors National Benefit Center
                Benefit Services Group
                Regional Personnel Administration
                P.O. Box 5152
                Southfield, MI  48086-5152

Retirees currently serviced by the National Retiree Servicing Center may
continue to call that number for assistance.

Always include this Social Security number, **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**, in all your
correspondence.

                                **Benefit Services Group**

A01



**Metropolitan Life Insurance Company**
One Madison Avenue, New York, NY 10010-3690

**To**                                                                                      Date   **11/89**

**Subject**       Continuing Life Insurance for Salaried Retirees with 10 or more Years of Participation

Under the provisions of the General Motors Life and Disability Benefits Program, the amount of your Basic Life
Insurance in effect at age 65, or upon retirement, will reduce as follows

- If you last worked prior to July 1, 1985, or if you retire under the total and permanent disability provision of
  any GM Retirement Program regardless of the date you last worked, reductions will commence on the
  first day of the month following the month in which your 65th birthday occurs

- If you last worked on or after July 1, 1985, reductions will commence the earlier of the effective date of your
  retirement (other than for total and permanent disability) and the first day of the month following the month
  in which your 65th birthday occurs

Basic Life Insurance will be reduced by the same amount each month until the fully reduced amount of your
Continuing Life Insurance is reached

Your insurance records, as maintained by Metropolitan Life Insurance Company, show the following
information

1  Retiree's name     **J C BOGUE**

2  Social Security number     **463 46 9143**

3  Years of Participation     **31**

4  Amount of your Basic Life Insurance in effect the month prior to the first reduction $  **62,400.00**

5  Month and year of first reduction     **10/89**

6  Amount of each monthly reduction (2% of Item 4) $   **1,248.00**

7  Month and year of final reduction     **1/92**

8  Fully reduced amount of your Continuing Life Insurance $   **29,172.00**

**Important:** Keep this notice with your other valuable papers

If you have any questions regarding your Continuing Life Insurance, please contact

Metropolitan Life Insurance Company
**14000**

            9            **81900**

G1661 GMS (0288) Printed in U S A                                          18000067934 (0288) Printed in U S A

*Pen Grands 5#*
*1-2/3-09*

*Met Life*
*1-888-543-3461*



## U.S. Benefit Modifications

Dear GM Retiree

As part of GM's announcements on June 1st, we acknowledged some of the significant sacrifices that our salaried employees and retirees will be making to support the reinvention of General Motors  We also communicated that we would be reducing the obligations for certain retiree benefits by roughly two-thirds

We have now finalized the changes that we need to make in order to achieve the required two-thirds reduction  As promised, I am sharing this information with you as quickly as possible  These are very difficult changes to make, but unfortunately necessary to position the New GM to win – and win now  These changes are described below  As always, all benefits are at all times subject to the terms of each plan

### Basic Life Insurance in Retirement

For current retirees eligible for Basic Life Insurance in retirement (those whose service date was prior to January 1, 1993) the amount of Basic Life Insurance provided by GM is being reduced to $10,000 (retirees with less than $10,000 will remain at that level of life insurance)  This change will be effective on the first of the month following the New GM sale closing

*1-2009*

Retirees impacted by these reductions will have an opportunity to supplement their remaining employer provided Basic Life Insurance by enrolling in a Voluntary Life Insurance program through MetLife  This program will not require "proof of good health"  Enrollment for this program will be in the third quarter of this year

During the first two years of participation in the program, the death benefit available will be equal to the amount of the premiums paid  Following two years of premium contributions, the full amount of coverage elected will be payable in the event of your death  Details regarding the program will be mailed to you from MetLife in the third quarter

### Non Medicare Retiree Health Care

Effective January 1, 2010, the General Motors Salaried Health Care Program will be further modified for salaried retirees, surviving spouses and their eligible dependents  Individuals impacted by this change include

- Salaried retirees, surviving spouses and their dependents eligible to enroll or who currently are enrolled in the GM Salaried Health Care Program, and
- Current employees who are eligible to enroll in the GM Salaried Health Care Program upon retirement

The new plan design will include benefits and coverages for medical and prescription drugs <u>only,</u> and dental, vision, and extended care coverage will be cancelled   Cost sharing provisions (e g , monthly contributions, deductibles, coinsurance and out of pocket maximums) will increase substantially



APS2080876884
01148715

**BALLOT # 224**

PLEASE COMPLETE THE FOLLOWING

ITEM 1 **Amount of General Unsecured Claim.** For purposes of voting to accept or reject the Plan, the undersigned holds a General Unsecured Claim against the Debtor listed below in the amount set forth below

| | |
|---|---|
| Claim Amount | $19,172 00 |
| Debtor | MOTORS LIQUIDATION COMPANY |

ITEM 2 **Vote on the Plan.** The undersigned holder of a Class 3 General Unsecured Claim in the amount set forth in Item 1 above hereby votes to

<u>Check one box</u>   ☒   Accept the Plan            01-05-11 P12:03 IN

☐   Reject the Plan

ITEM 3 **Acknowledgement and Certification.** By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Disclosure Statement, including all exhibits thereto The undersigned certifies that (i) it is the holder of the General Unsecured Claim identified in Item 1 above and (ii) it has full power and authority to vote to accept or reject the Plan The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the Bankruptcy Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein

Print or Type Name of Claimant        *Jane C. Bogue*

Social Security or Federal Tax I D No of Claimant    *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*

Signature        *Jane C. Bogue*

Name of Signatory (if different than claimant)    _____

If by Authorized Agent, Title of Agent    _____

Street Address        *1818 Buckner*

City, State, and Zip Code    *Longview, Texas 75604*

Telephone Number    *903-759-5925*

E-mail Address    _____

Date Completed    *12-29-10*

*Please check <u>one or both</u> of the below boxes, if the above address is a change of address for the purpose(s) of*

☐ future notice mailings; **AND/OR**  ☐ distributions

THE GARDEN CITY GROUP INC.
JAN 5 2011

5

249 / Z 6

APS2080876884
01148715

BOGUE, JANE C
1818 BUCKNER DR
LONGVIEW TX 75604-2406

349 / Z 6

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re                                                  :         Chapter 11 Case No.
                                                       :
MOTORS LIQUIDATION COMPANY, *et al.*,                  :         09-50026 (REG)
          f/k/a General Motors Corp., *et al.*         :
                                                       :         (Jointly Administered)
                     Debtors.                          :
                                                       :

-------------------------------------------------------------x

### BALLOT FOR ACCEPTING OR REJECTING AMENDED
### JOINT CHAPTER 11 PLAN OF MOTORS LIQUIDATION COMPANY
### (F/K/A GENERAL MOTORS CORPORATION) AND ITS AFFILIATED DEBTORS

| CLASS 3 (GENERAL UNSECURED CLAIMS) |
|---|

Motors Liquidation Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession (collectively, the "**Debtors**"), each of which is identified below, are soliciting votes with respect to the Debtors' Amended Joint Chapter 11 Plan, dated December 7, 2010 (as it may be amended, the "**Plan**"), from the holders of certain impaired claims against the Debtors All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan If you have any questions on how to properly complete this Ballot, please call the Debtors' voting agent, The Garden City Group, Inc (the "**Voting Agent**"), at 703-286-6401

This Ballot is to be used for voting by holders of Class 3 General Unsecured Claims  **In order for your vote to be counted, the Ballot must be properly completed, signed, and returned to the Voting Agent at the following address, so as to be received no later than February 11, 2011 at 5:00 p.m. (Eastern Time) (the "Voting Deadline"), unless such time is extended by the Debtors:**

| If by overnight or hand delivery: | If by standard mailing: |
|---|---|
| The Garden City Group, Inc | The Garden City Group, Inc |
| 5151 Blazer Parkway, Suite A | P O Box 9386 |
| Dublin, OH 43017 | Dublin, OH 43017-4286 |
| <u>Attn</u>  Motors Liquidation Company | <u>Attn</u>  Motors Liquidation Company |
| Balloting Center | Balloting Center |

This Ballot is solely for the purpose of voting to accept or reject the Plan and not for the purpose of allowance or disallowance of or distribution on account of Class 3 General Unsecured Claims

**Identification of Debtor Entities**

| Name of Debtor | Case Number | Tax Identification Number | Other Names Used by Debtors in the Past 8 Years |
|---|---|---|---|
| Motors Liquidation Company (f/k/a **General Motors Corporation)** | 09-50026 | 38-0572515 | General Motors Corporation<br>GMC Truck Division<br>NAO Fleet Operations<br>GM Corporation<br>GM Corporation-GM Auction Department<br>National Car Rental<br>National Car Sales<br>Automotive Market Research |
| MLCS, LLC (f/k/a **Saturn, LLC)** | 09-50027 | 38-2577506 | Saturn, LLC<br>Saturn Corporation<br>Saturn Motor Car Corporation<br>GM Saturn Corporation<br>Saturn Corporation of Delaware |
| MLCS Distribution Corporation (f/k/a **Saturn Distribution Corporation)** | 09-50028 | 38-2755764 | Saturn Distribution Corporation |
| MLC of Harlem, Inc (f/k/a **Chevrolet-Saturn of Harlem, Inc.)** | 09-13558 | 20-1426707 | Chevrolet-Saturn of Harlem, Inc |
| Remediation and Liability Management Company, Inc | 09-50029 | 38-2529430 | Uptown Land Development Corporation |
| Environmental Corporate Remediation Company, Inc | 09-50030 | 41-1650789 | GM National Hawaii, Inc<br>NCRS Hawaii, Inc |

2

249 / Z.6

## VOTING INSTRUCTIONS FOR COMPLETING THE
## BALLOT FOR HOLDERS OF CLASS 3 GENERAL UNSECURED CLAIMS

1    This Ballot is submitted to you to solicit your vote to accept or reject the Plan  The terms of the Plan are described in the Disclosure Statement for the Plan, dated December 8, 2010 (as it may be amended, the "**Disclosure Statement**"), including all exhibits thereto  All capitalized terms used herein but not otherwise defined shall have the meanings ascribed to such terms in the Plan  **PLEASE READ THE PLAN AND THE DISCLOSURE STATEMENT CAREFULLY BEFORE COMPLETING THIS BALLOT.**

2    The Plan will be accepted by Class 3 (General Unsecured Claims) if it is accepted by the holders of two-thirds in dollar amount and more than one-half in number of Claims in Class 3 voting on the Plan  In the event that Class 3 rejects the Plan, the Bankruptcy Court may nevertheless confirm the Plan and thereby make it binding on you if the Bankruptcy Court finds that the Plan does not unfairly discriminate against and accords fair and equitable treatment to the holders of Claims in Class 3 and all other Classes of Claims rejecting the Plan, and otherwise satisfies the requirements of section 1129(b) of the Bankruptcy Code  If the Plan is confirmed by the Bankruptcy Court, all holders of Claims against and Equity Interests in the Debtors (including those holders who abstain from voting on the Plan, those holders who reject the Plan, and those holders who are not entitled to vote on the Plan) will be bound by the confirmed Plan and the transactions contemplated thereby, whether or not they vote and whether or not they accept the Plan

3    **To have your vote counted, you must complete, sign, and return this Ballot to the Voting Agent by no later than February 11, 2011 at 5:00 p.m. (Eastern Time) (the "Voting Deadline"), unless such time is extended in the discretion of the Debtors.** Ballots must be delivered to the Voting Agent at the following address

| If by overnight or hand delivery: | If by standard mailing: |
|---|---|
| The Garden City Group, Inc | The Garden City Group, Inc |
| 5151 Blazer Parkway, Suite A | P O. Box 9386 |
| Dublin, OH 43017 | Dublin, OH 43017-4286 |
| <u>Attn</u>  Motors Liquidation Company | <u>Attn</u>  Motors Liquidation Company |
| Balloting Center | Balloting Center |

**Ballots will not be accepted by telecopy, facsimile, e-mail, or other electronic means of transmission.**

4    To properly complete the Ballot, you must follow the procedures described below·

a    Make sure that the information contained in Item 1 is correct,

b    If you have a Claim in Class 3 (General Unsecured Claims), cast one vote to accept or reject the Plan by checking the appropriate box in Item 2,

c    If you are completing this Ballot on behalf of another entity, indicate your relationship with such entity and the capacity in which you are signing  By submitting the Ballot you are certifying that you have authority to so act and agree to provide documents evidencing such authority upon request (e g , a power of attorney or a certified copy of board resolutions authorizing you to so act),

3

d    If you also hold Claims in a Class other than Class 3 (General Unsecured Claims), you may receive more than one Ballot, labeled for a different Class of Claims   Your vote will be counted in determining acceptance or rejection of the Plan by a particular Class of Claims only if you complete, sign, and return the Ballot labeled for that Class of Claims in accordance with the instructions on that Ballot,

e    If more than one timely, properly completed Ballot is received, only the Ballot that bears the earliest date will be counted, unless the holder of the Claim receives Bankruptcy Court approval to have the Ballot that bears the latest date counted,

f    If you believe that you have received the wrong Ballot, please contact the Voting Agent immediately,

g    Provide your name and mailing address,

h    Sign and date your Ballot, and

i    Return your Ballot with an original signature using the enclosed pre-addressed return envelope

**IF YOU HAVE ANY QUESTIONS REGARDING THE BALLOT, IF YOU DID NOT RECEIVE A RETURN ENVELOPE WITH YOUR BALLOT, IF YOU DID NOT RECEIVE A COPY OF THE DISCLOSURE STATEMENT OR PLAN, OR IF YOU NEED ADDITIONAL COPIES OF THE BALLOT OR OTHER ENCLOSED MATERIALS, PLEASE CONTACT THE DEBTORS' VOTING AGENT AT 703-286-6401.  PLEASE DO NOT DIRECT ANY INQUIRIES TO THE BANKRUPTCY COURT.  THE VOTING AGENT IS NOT AUTHORIZED TO, AND WILL NOT, PROVIDE LEGAL ADVICE.**

4

249 / Z 6



Jane C. Borque
1818 Buchner
Longview, Tex. 75604

LAST TXRB
SERVING FAST TX EVERYDAY
31 DEC 2010 PM

BUSINESS REPLY MAIL
FIRST-CLASS MAIL    PERMIT NO. 18    DUBLIN OH

POSTAGE WILL BE PAID BY ADDRESSEE

THE GARDEN CITY GROUP, INC
ATTN MOTORS LIQUIDATION CO BALLOTING CENTER
PO BOX 9386
DUBLIN OH 43017-9957

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

**Exhibit 3**

Hearing Date and Time: March 1, 2011 at 9:45 a.m. EST

Jane C. Bogue
1818 Buckner St
Longview, Texas 75604-2406

Phone:   903-759-5925
e-mail: janebouge@yahoo.com

Retired salaried employee of General Motors
with unsecured claim for life insurance benefits
Claim No. 3201. Page 2, Exhibit A, Debtor's 181st Omnibus Objection to Claims

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------x
In re                                             :          **Chapter 11 Case No.**
                                                  :
**MOTORS LIQUIDATION COMPANY, et al.,**  :          **09-50026 (REG)**
    **f/k/a General Motors Corp., et al**.  :
                                                  :          **(Jointly Administered)**
        **Debtors.**             :
-----------------------------------------------------------x

Response to the **NOTICE OF DEBTORS' 181st OMNIBUS OBJECTION TO CLAIMS**,
dated January 26, 2010.

I am appealing the reduction in my life insurance. I worked for  GMAC for over 32 years and
was promised that I would have $29,172 in life insurance for the rest of my life. Attached are
letters from Metropolitan Life and GM Benefits that prove this.

I am now 74 years old, retired, widowed and am being told that I have only $10,000 of life
insurance.

Someone should be able to see that this is not right.

I pray that the Court will correct this wrong doing and award me and others enough money to
pay for the life insurance we were promised.

Dated: Longview, Texas
      February 17th, 2011

                                    _/s/ Jane C. Bogue
                                    Jane C. Bogue