**HEARING DATE AND TIME: June 14, 2012 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                        :
**In re**                               :        **Chapter 11 Case No.**
                                        :
**MOTORS LIQUIDATION COMPANY,** *et al.*, :        **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.* :
                                        :
                    **Debtors.**        :        **(Jointly Administered)**
                                        :
------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY GUC TRUST'S REPLY**
**TO GORDON HALL'S RESPONSE TO THE 183rd OMNIBUS OBJECTION**
**TO CLAIMS (WELFARE BENEFITS CLAIMS OF RETIRED**
**AND FORMER SALARIED AND EXECUTIVE EMPLOYEES)**

# TABLE OF CONTENTS

**Page**

Preliminary Statement.................................................................................................................. 1

The Welfare Benefits Claim Should Be Disallowed and Expunged ............................................. 3

I.      The Welfare Benefits Claim Should Be Disallowed As Debtors Had Right to
Amend or Terminate Each Welfare Benefit Plan ............................................................. 3

      (A)    Neither the Debtors' Salaried Life Insurance Plan Nor the Retiree
Servicing Center Letter Provides Mr. Hall with a Permanent Contractual
Right to Continuing Life Insurance Benefits at a Guaranteed Amount................. 6

      (B)    The Retiree Servicing Center Letter Does Not Create A New Contract
With Mr. Hall................................................................................................. 13

II.     Ongoing Benefits Have Been Assumed by New GM.................................................... 18

The Hall Response: Claim No. 63670 ...................................................................................... 18

Conclusion ............................................................................................................................. 19

US_ACTIVE:\44015922\1\72240.0639

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Curtiss-Wright Corp. v. Schoonejongen*,
  514 U.S. 73 (1995)...................................................................................................4

*Devlin v. Empire Blue Cross and Blue Shield*,
  *274 F.3d 76 (2nd Cir. 2001)* ..........................................................................4, 15, 16

*In re Oneida, Ltd.*,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL
  234827 (S.D.N.Y. Jan. 22, 2010)...............................................................................3

*Moore v. Metro. Life Ins. Co.*,
  856 F.2d 488 (2d Cir. 1988)...................................................................................4, 7

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ...............................................................4, 9, 10, 11

STATUTES

29 U.S.C. § 1051(1) ...................................................................................................4, 7

Employee Retirement Income Security Act of 1974 ....................................................4

ii

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the

above-captioned debtors (collectively, the "**Debtors**")[1] in connection with the Debtors' Second

Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or

modified from time to time), files this reply (the "**Reply**") to the Hall Response (defined below)

interposed to the 183rd Omnibus Objection to Claims (Welfare Benefits Claims of Retired and

Former Salaried and Executive Employees) (ECF No. 8864) (the "**Omnibus Objection**"), and

respectfully represents:

## Preliminary Statement

1.     On January 26, 2011, the Debtors filed the Omnibus Objection.  The

Omnibus Objection seeks the disallowance and expungement of certain compensation and

welfare benefits claims of retired and former salaried and executive employees of the Debtors on

the basis that such claims (i) are related to unvested welfare benefits that were capable of being

modified or terminated by the Debtors at will pursuant to the terms of the operative documents

governing such welfare benefits and were modified or terminated in accordance with such

operative documents, and (ii) to the extent modified, have otherwise been assumed by New GM[2]

pursuant to the terms of the Master Purchase Agreement and, as described in the Omnibus

Objection, are not the responsibility of the Debtors or the GUC Trust and, therefore, should be

disallowed and expunged from the claims register.

---

[1] The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Omnibus Objection.

2.      Responses to the Omnibus Objection were due by February 22, 2011. The response listed on **Exhibit "1"** annexed hereto, and described further herein, was filed at ECF No. 9230 with respect to the Omnibus Objection (the "**Hall Response**") by Gordon Hall relating to his claim, Proof of Claim No. 63670 (the "**Welfare Benefits Claim,**" which includes a "**Continuing Life Insurance Claim**"), regarding the reduction of basic life insurance benefits ("**Continuing Life Insurance Benefits**").

3.      The Hall Response is generally not substantive, but is critical of the reduction or termination of welfare benefits provided to retired and former salaried and executive employees of the Debtors.  After reviewing the Hall Response, the GUC Trust[3] respectfully reiterates the Debtors' position in the Omnibus Objection and further submits that Mr. Hall has failed to provide any legal or factual support for the Welfare Benefits Claim.  The Hall Response alleges the same facts provided by, and does not take any position different from the position taken by another former employee of the Debtors, George Cobble Jr., with respect to the alleged vesting of Mr. Cobble's Continuing Life Insurance Benefit, which was disallowed and expunged by an order of the Court, dated February 8, 2012 (ECF No. 11391).[4]

4.      Notwithstanding Mr. Hall's opposition, the Hall Response should be overruled because (i) the Debtors had a right to amend or terminate the employee welfare benefits plans (the "**Welfare Benefits Plans**") providing medical, dental, vision, and life insurance benefits (the "**Welfare Benefits**"), including those on which the Welfare Benefits

---

[3] While the Omnibus Objection was filed by the Debtors, this Reply is being filed by the GUC Trust because, pursuant to the Plan, the GUC Trust now has the exclusive authority to prosecute and resolve objections to Disputed General Unsecured Claims (as defined in the Plan).

[4] Mr. Cobble filed Proof of Claim No. 64959, which was objected to in the Debtors' 171st Omnibus Objections to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 6740).  Mr. Cobble's reply to the 171st omnibus objection appears at ECF No. 7074.  The GUC Trust's response to Mr. Cobble's reply is at ECF No. 11283.

Claim is based, without further liability, and in all relevant instances did so, and (ii) New GM

otherwise assumed Welfare Benefits as they existed on the Closing Date and continues to

provide Welfare Benefits as modified prior to their assumption by New GM, and consequently

the Debtors and the GUC Trust have no liability for the Welfare Benefits Claims (which, as

noted above, include the Continuing Life Insurance Claims).  Accordingly, the GUC Trust files

this Reply in support of the Omnibus Objection and respectfully requests that the Welfare

Benefits Claim be disallowed and expunged from the claims register.

       5.      The Debtors and the GUC Trust are, of course, sympathetic to the impact

that the financial problems of the Debtors have had on Mr. Hall's Welfare Benefits.  However, in

view of the Debtors' liquidation and under applicable law, there should be no other outcome.

### The Welfare Benefits Claim Should Be Disallowed and Expunged

       6.      Mr. Hall has failed to demonstrate the validity of his Welfare Benefits

Claim, and it should therefore be disallowed and expunged.  *See, e.g.*, *In re Oneida, Ltd.*, 400

B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827

(S.D.N.Y. Jan. 22, 2010) (claimant has burden to demonstrate validity of claim when objection is

asserted refuting claim's essential allegations).

**I.**      **The Welfare Benefits Claim Should Be Disallowed As Debtors Had**
           **Right to Amend or Terminate Each Welfare Benefit Plan**

       7.      The Hall Response states opposition to the relief sought in the Omnibus

Objection with respect to the Welfare Benefits Claim, which relates to the Debtors' reduction, as

of August 1, 2009, of the maximum amount of Continuing Life Insurance Benefits to $10,000

(self-funded by General Motors Corporation (hereafter "**GM**") and subsequently by General

Motors Company ("**New GM**")), which would be paid by GM and subsequently New GM to the

beneficiaries of eligible deceased retirees to receive such benefit upon their death (*i.e.*, those whose most recent date of hire (or adjusted service date) was prior to January 1, 1993).

8.     In the Hall Response, Mr. Hall has not demonstrated that the Debtors were bound by any legal or contractual requirement to continue to provide him, or other retired and former salaried and executive employees, with the Welfare Benefits on a permanent basis.  The Omnibus Objection explains that the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), comprehensively regulates employer-provided welfare benefits plans, and that ERISA does not require an employer to provide or to vest welfare benefits.  Welfare benefits provided under the terms of a welfare benefit plan may therefore be reduced or forfeited in accordance with the terms of the applicable welfare benefit plan.  29 U.S.C. § 1051(1); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988); *Sprague v. Gen. Motors Corp*., 133 F.3d 388, 400 (6th Cir. 1998).

9.     In addressing claims similar to Mr. Hall's Welfare Benefits Claim, the U.S. Supreme Court has noted that welfare plans such as the Welfare Benefits Plans are specifically exempted from vesting requirements (to which pension plans are subject) under ERISA, and accordingly, employers "are generally free under ERISA, for any reason at any time, to adopt, modify or terminate welfare plans."  *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (citing *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir. 1990)).  *See also Joyce. v. Curtiss Wright Corp*., 171 F. 3d 130 (2d Cir.  1999) (stating the general rule that under ERISA an employer welfare plan is not vested and that an employer has the right to terminate or unilaterally amend the plan at any time).  As noted in the Omnibus Objection, however, the Sixth Circuit has recognized that once welfare benefits are vested, they are rendered forever unalterable.  *See also Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d

76, 82 (2nd Cir. 2001)(quoting *Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp*,

116 F.3d 976, 980 (2d Cir. 1997) ("If a [plan] document unambiguously indicates whether retiree

… benefits are vested, the unambiguous language should be enforced").

10.    Thus, Mr. Hall bears the burden of showing that the Debtors intended to

vest the Welfare Benefits provided by the Welfare Benefits Plans, and did *in fact* vest the

Welfare Benefits, such that Mr. Hall has a contractual right to the perpetual continuation of his

Welfare Benefits at a contractually specified level.

11.    In the Hall Response, Mr. Hall has not provided any evidence that

contradicts the Debtors' common practice of advising participants of the Welfare Benefits Plans

of the Debtors' right to amend or terminate the Welfare Benefits at any time.  Moreover, Mr.

Hall has not provided any evidence of a separate, affirmative contractual obligation on the part of

the Debtors to continue to provide the Welfare Benefits specifically to Mr. Hall.  Therefore, the

Debtors and the GUC Trust do not have any liability with respect to the reduction in or

discontinuation of the Welfare Benefits.

12.    In the Hall Response, Mr. Hall opposes the disallowance and

expungement of his Welfare Benefits Claim on the basis that his Continuing Life Insurance

Benefits are vested rather than unvested.  In support, Mr. Hall provides a one-page letter from

the Debtors to Mr. Hall following his retirement from employment with the Debtors (the

"**Retiree Servicing Center Letter**").  Each Retiree Servicing Center Letter generally contains

the following standard language:

> As a retiree of General Motors with 10 or more years of
> participation in the Life and Disability Benefits Program, you are
> eligible for Continuing Life Insurance.  Our insurance records, as
> of the date of this letter, show the Continuing Life Insurance has
> now fully reduced to the ultimate amount of $[***stated amount***].

This ultimate amount will remain in effect for the rest of your life
and is provided by General Motors at no cost to you.

13.      In the Hall Response, Mr. Hall does not provide any explanation for why

the Retiree Servicing Center Letter he received should be read as ensuring the vesting of a

benefit, rather than a mere acknowledgement by his former employer of the reduction of a

lifetime death benefit amount in accordance with the written terms of the applicable life

insurance plan then in effect and subject to the plan sponsor's continuing right to change the

terms of the life insurance plan.

**(A)      Neither the Debtors' Salaried Life Insurance Plan nor the Retiree Servicing
Center Letter Provides Mr. Hall with a Permanent Contractual Right to
Continuing Life Insurance Benefits at a Guaranteed Amount**

14.      In the Hall Response, Mr. Hall provides a copy of a Retiree Servicing

Center Letter from the GM National Retiree Servicing Center ("**Retiree Servicing Center**").

GM self-administered its life insurance benefits until some point in the 1990s, at which time it

transferred administration of life insurance benefits to MetLife, a third party administrator.  To

enable MetLife to be readily identifiable as GM's administrator for life insurance benefits, GM

permitted MetLife to use the prior name of their internal benefits administrator, the General

Motors National Benefits Center and/or Retiree Servicing Center.

15.      The Retiree Servicing Center Letter and letters substantially similar to it

were routinely sent out by mail from the Retiree Servicing Center to each retiree of General

Motors Corporation entitled to a Continuing Life Insurance Benefit (which was a continuation of

the retiree's basic life insurance benefit offered to them while they were active employees).  The

letters were routinely sent out at the time that a scheduled reduction to the retiree's Continuing

Life Insurance Benefit had reduced to the maximum amount pursuant to the terms then in effect

under the General Motors Life and Disability Benefits Program for Salaried Employees, as

amended from time to time ("**Debtors' Salaried Life Insurance Plan**").

16.     As explained above with respect to the Debtors' right to amend or

terminate other Welfare Benefits, ERISA does not require an employer to provide or to vest life

insurance benefits.  Insurance benefits provided under the terms of a welfare benefit plan may

therefore be reduced or forfeited in accordance with the terms of the applicable welfare benefits

plan.  29 U.S.C. § 1051(1); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988).

17.     ERISA provides that the contractual rights established under a welfare

benefits plan must be in writing and contained in the plan document for the welfare benefits plan,

and furthermore, requires that a welfare benefits plan sponsor provide a summary plan

description (and as necessary, summaries of material modifications) of the plan and the terms of

benefits provided under the plan to participants of the plan; however, the summary plan

description does not establish any contractual rights not provided by the plan document. *Cigna*

*Corp. v. Amara*, 000 U.S. 09-804 (2011) (holding that a summary plan description has no

contractual authority because it does not constitute a part of the plan document; however, plan

participants may seek appropriate equitable relief in the case of a false or misleading summary

plan description).  Communications from the plan sponsor to plan participants, such as the

Retiree Servicing Center Letter received by Mr. Hall, are neither summary plan descriptions nor

summaries of material modifications.  Even so, by the reasoning of *Amara*, the Retiree Servicing

Center Letter does not supersede the terms of the Debtors' Salaried Life Insurance Plan, which

provided the Debtors the right to amend, modify or terminate the Continuing Life Insurance

benefits at any time.

18.     The Debtors clearly and unambiguously reserved their right to amend or terminate the Continuing Life Insurance Benefit under the terms of the plan documents and the summary plan descriptions of the Debtors' Salaried Life Insurance Plan provided and made available to Mr. Hall during his employment period, and therefore, neither the Retiree Servicing Center Letter received by Mr. Hall nor the plan documents create any vested contractual rights to the Continuing Life Insurance Benefits.  Section 3.05 of the most recent restatement of the Debtors' Salaried Life Insurance Plan, as amended effective January 1, 2007, provides:

> The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time by action of its Board of Directors or other committee or individual expressly authorized by the Board to take such action.  The benefits available to Employees are determined solely by the terms of this Program.  Absent express delegation of authority from the Board of Directors, no one has the authority to commit the Corporation to any benefit or benefit provisions not provided under the terms of this Program.

Because ERISA does not require the vesting of welfare benefits, such provision reserved the Debtors' right to modify Continuing Life Insurance Benefits by amendment of Debtor's Salaried Life Insurance Plan.  Moreover, the Debtors could terminate the plan.  Clearly, no vested rights were created under the plan.  The following reservation of rights to amend or terminate benefits is prominently stated on the second page of a recent benefits handbook for salaried retirees containing the summary plan description of Debtors' Salaried Life Insurance Plan:

> General Motors Corporation reserves the right to amend, change, or terminate the Plans and Programs described in this booklet.  The Plans and Programs can be amended only in writing by an appropriate committee or individual as expressly authorized by the Board of Directors.  No other oral or written statements can change the terms of a benefit Plan or Program.

The same or substantially similar reservation of rights language is prominently stated on the second page of benefits handbooks for salaried retirees issued by the Debtors in 1996, 2000, and

2005.  Mr. Hall was therefore clearly on notice of this reservation of rights, as he would have

seen it prominently displayed in the benefits handbooks for salaried retirees that he received

along with every other retiree with such benefits.

        19.      On the basis of such language, the Sixth Circuit in *Sprague* reviewed the

plan documents and summary plan descriptions of certain of the Debtors' salaried welfare

benefits plans, as contained in benefits handbooks regularly provided by Debtors to their

employees and retirees, and concluded that the Debtors' salaried welfare benefits plans explicitly

permitted the Debtors to unilaterally amend, terminate or modify the salaried welfare benefits

provided under such plans.  The Sixth Circuit's opinion in *Sprague* contains the following

description of the Debtors' reservation of rights to change or terminate health care benefits at any

time, which reservation would have equally pertained to the right to change or terminate life

insurance benefits, the summary plan description of which was contained in the same booklet as

contained the summary plan description of the health plan:

> GM has long made it a practice to inform its salaried employees
> and retirees of their health care coverage by providing them
> booklets containing summaries of the company's health insurance
> policies and programs.  Prior to 1974 GM put out a booklet entitled
> "The GM Insurance Program for Salaried Employees."  After
> ERISA took effect in 1974 the booklet became "Highlights of
> Your GM Benefits."  Beginning in 1977, GM also issued a booklet
> called "Your Benefits in Retirement."  Each of these publications
> went through a series of different editions […] and most of the

booklets also put plan participants on notice of GM's right to change or terminate the health care plan at any time:

> "General Motors believes wholeheartedly in this Insurance Program for GM men and women, and expects to continue the Program indefinitely. However, GM reserves the right to modify, revoke, suspend, terminate, or change the Program, in whole or in part, at any time...." The General Motors Insurance Program for Salaried Employees (1965, 1968, and 1971).
>
> "General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet." Your GM Benefits (1985).
>
> "The Corporation reserves the right to amend, modify, suspend, or terminate its benefit Plans or Programs by action of its Board of Directors." Your Benefits in Retirement (1985).

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) at 400.[5]

20.    As evidenced by the description set forth in *Sprague* and as confirmed by the Debtors, GM had a long-term practice of providing explicit notice to participants of their reservation of rights to amend or terminate salaried welfare benefits at any time through the issuance of benefits handbooks to both active and retired employees on a regular basis spanning over a period of 47 years or more (*i.e.*, since at least 1965). This means that Mr. Hall would have been on notice from the start of and through the end of his career with General Motors Corporation that his employer had reserved its rights to amend or terminate his basic life insurance benefit and/or their Continuing Life Insurance benefit.

---

[5] The Sixth Circuit found: "Most of the summary plan descriptions unambiguously reserved GM's right to amend or terminate the plan. For example: 'General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet.' Your GM Benefits (1984) [and] 'The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time, by action of its Board of Directors.' Your Benefits in Retirement (1985)." 133 F.3d at 400.

21.    The Second Circuit has held that an employer's reservation of rights to amend or to terminate insurance benefits was sufficient to preclude such insurance benefits from being susceptible to being interpreted as promises of vested lifetime insurance benefits:

Here … we have [SPD or Summary Plan Description] language that both appears to promise lifetime life insurance coverage at a particular level and clearly reserves Empire's right to amend or terminate such coverage. Because the same document that potentially provided the 'lifetime' benefits also clearly informed employees that these benefits were subject to modification, we conclude that the language contained in the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits.

The Sixth Circuit has similarly concluded, where a group of General Motors retirees challenged a reduction in health coverage, that the relevant SPD provided that lifetime health coverage would be provided at no cost. *See Sprague v. Gen. Motors Corp., 133 F.3d 388, 401 (6th Cir. 1998) (en banc).* The same SPD also provided that 'General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet.' *Id.* The Sixth Circuit reasoned:

"We see no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change.... As the Third Circuit explained in a similar case, `the promise made to retirees was a qualified one: the

promise was that retiree medical benefits were for life provided the company chose not to terminate the plans, pursuant to clauses that preserved the company's right to terminate the plan under which those benefits are provided.' *Id.* (quoting *In re Unisys Corp. Retiree Med. Benefit ERISA Litig.*, 58 F.3d 896, 904 n.12 (3d Cir. 1995))." *Abbruscato v. Empire Blue Cross and Blue Shield*, 274 F. 3d 90, 99-100 (2nd Cir. 2001)

22.     Each summary plan description of the Debtors' Salaried Life Insurance Plan contained in the employee handbooks issued over the years has contained a description of the Continuing Life Insurance benefits and an explanation of the manner in which the Continuing Life Insurance benefits were to be reduced upon or during the retirement of a retiree.  Pursuant to the terms of the Debtors' Salaried Life Insurance Plan, the Continuing Life Insurance Benefit was, upon retirement or age 65, subject to reduction in the case of all of the Debtors' retirees eligible for such benefit depending on when the retiree retired.  In addition to notice provided by the summary plan descriptions, the Debtors were in the practice of notifying retirees of such reductions, at the point of the ultimate reduction, in the form of the Retiree Servicing Center Letters.

23.     In connection with their insolvency, following approval by the Employee Benefits Plans Committee of Debtor's Board of Directors, the Debtors reduced to $10,000 the maximum amount of the Continuing Life Insurance Benefit that would be paid by the Debtors (and subsequently by New GM) to the beneficiaries of a retiree eligible to receive such benefit upon death (*i.e.*, those whose most recent date of hire (or adjusted service date) was prior to January 1, 1993).  The reduction was effected by amendment of the Salaried Life Insurance Plan made by the Employee Benefits Plans Committee of Debtor's Board of Directors on June 19, 2009, who had been expressly delegated by the Board of Directors the authority to amend the Debtors' Welfare Benefits Plans.

24.     Pursuant to the terms of the Debtors' Salaried Life Insurance Plan, upon attaining age 65, retirees were no longer required to make contributions to maintain their Continuing Life Insurance benefits.  Reduction of the maximum amount of the Continuing Life Insurance benefits has not changed this fact.

25.     Upon reduction of the Continuing Life Insurance Benefit in connection with their insolvency, the Debtors provided retirees with the opportunity to supplement the reduced amount of their Continuing Life Insurance benefits by enrolling in a voluntary life insurance program through MetLife.  By virtue of the supplemental program, Mr. Hall was fully eligible, at his cost, to continue to be covered by the life insurance benefit at the same level as prior to the reduction in his Continuing Life Insurance benefits.

**(B)     The Retiree Servicing Center Letter Does Not Create A New Contract With Mr. Hall**

26.     In the Hall Response, Mr. Hall has not provided any evidence that contradicts the Debtors' common practice of advising participants of the Debtors' Salaried Life Insurance Plan of the Debtors' right to amend or terminate the Continuing Life Insurance benefits at any time.  Moreover, Mr. Hall has not provided any evidence of an affirmative contractual obligation on the part of the Debtors separate from the terms of Debtors' Salaried Life Insurance Plan to permanently provide the same level of Continuing Life Insurance benefits specifically to Mr. Hall.  The Retiree Servicing Center Letter refers to and explains a "Continuing Life Insurance" benefit, which appearing as a capitalized term explicitly relates to, and is one and the same with, the basic life insurance benefit provided to Debtors' retirees pursuant to Debtors' Salaried Life Insurance Plan.  Mr. Hall should readily have recognized "Continuing Life Insurance" as a defined term of the Debtors' Salaried Life Insurance Plan, of which he would have been familiar by having read, over the past 47 years or more, employee

13

benefits handbooks and summary plan descriptions related to the Continuing Life Insurance.

Moreover, the Retiree Servicing Center Letter received by Mr. Hall directly refers to the

applicability of Debtors' Salaried Life Insurance Plan in prefacing eligibility for such Continuing

Life Insurance Benefit (which had been reduced) on Mr. Hall status as a "a retiree of General

Motors with 10 or more years of participation in the Life and Disability Benefits Program."

Therefore, the Retiree Servicing Center Letter clearly indicated that the Continuing Life

Insurance benefits were fully subject to the terms of the Debtors' Salaried Life Insurance Plan

and, as such, could not have been subject only to the terms set forth on the single page of the

Retiree Servicing Center Letter.  The Retiree Servicing Center Letter could therefore not serve to

have vested Mr. Hall in any new life insurance obligations on the part of the Debtors.

27.    The Retiree Servicing Center Letter was not approved by the Board of

Directors of GM at any time.  It was not an authorized amendment of the Debtors' Salaried Life

Insurance Plan or modifications of the Continuing Life Insurance benefits.  The Retiree

Servicing Center Letter sent to Mr. Hall was merely a communication with Mr. Hall with respect

to a change in the benefit amounts of his Continuing Life Insurance pursuant to the terms of

Debtors' Salaried Life Insurance Plan.

28.    The Retiree Servicing Center Letter was sent to Mr. Hall after his

retirement, during a period which he was no longer providing services to the Debtors, and

therefore cannot reasonably be construed as an inducement for Mr. Hall to provide new services

to the Debtors, or to retire.  Indeed, Mr. Hall never used the provision of permanent, unalterable

welfare benefits as a form of consideration inducing retirement.  Rather, even for employees who

elected to participate in early retirement window programs (consideration for which was

typically in cash), retiree medical, life insurance and all other welfare benefits would have been

the same following retirement as for regular retirees.  Given such treatment, there would be no

reason to provide any separate communication to window program participants with respect to

their welfare benefits, such as a letter promising permanent lifetime benefits.

29.    The Retiree Servicing Center Letter does not contain any language

establishing it as a new contract between Mr. Hall and his former employer.  To establish the

Retiree Servicing Center Letter as such, under the standard of the Second Circuit, Mr. Hall "must

first identify 'specific written language that is reasonably susceptible to interpretation as a

promise.'" *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 103 (2nd Cir. 2001)

(quoting *Joyce*, 171 F.3d at 134).

30.    The Second Circuit in *Devlin* discussed an example of language offering a

benefit that could have been susceptible to induce employees to perform without having been

negated by the employer's reservation of its right to amend or terminate the benefit (which

Empire's pre-1987 summary plan description had not done) and that is reasonably susceptible to

interpretation as a promise:

> Plaintiffs direct our attention to two sentences within the pre-1987
> [summary plan description]s. The first provides that 'retired
> employees, after completion of twenty years of full-time
> permanent service and at least age 55 will be insured.' J.A. at 522
> (emphasis added).  We believe that this statement can be
> reasonably read as promising such insurance so long as employees
> retire after age 55 and have provided full-time permanent service
> to Empire for at least twenty years.  This provision can be
> construed as an offer that specifies performance as the means of
> acceptance -- sometimes referred to as an offer for a unilateral
> contract -- and promises lifetime life insurance benefits upon
> performance.  Therefore, by 'performing' (that is, working for at
> least twenty years until attaining the age of 55), the plaintiffs
> accepted this offer. Restatement (Second) of Contracts 45(1)
> (1981). Where the offeror did not explicitly reserve the power to
> revoke, such an offer cannot be revoked once the offeree has begun
> to perform. See id. 45 & cmt. d ('The beginning of performance . .
> . completes the manifestation of mutual assent and furnishes

> consideration.'). Therefore, Empire's reliance on its 1987 [summary plan description], 'Your Handbook,' for its reservation of the right to modify the life insurance benefits is unavailing. We reject Empire's argument because after the plaintiffs began performance, pursuant to the pre-1987 [summary plan description]s, Empire was not free to revoke. *Id*. at 84.

Contrary to the facts with respect to Empire's failure to reserve its right in pre-1987 summary plan descriptions to amend or terminate the life insurance benefit, the Debtors have had a long-term practice over at least the past 47 years, and most likely for an even longer period of time, to provide explicit notice in each of their summary plan descriptions of their right to amend or terminate life insurance benefits at any time. Moreover, by the time that Mr. Hall had received the Retiree Servicing Center Letter in question, he had retired and could no longer be induced to perform any services for the Debtors, nor be induced to retire a second time, and so, the contents of the applicable Retiree Servicing Center Letter could not have been susceptible to interpretation as a promise.

31. Though Mr. Hall has not made any such argument or suggestion, it cannot be said that Mr. Hall relied on the qualified statement made in the Retiree Servicing Center Letter to his detriment. In order to prevail on a claim of promissory estoppel under ERISA in the Second Circuit, Mr. Hall must establish: "(1) a promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced." *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151 (2d Cir. 1999) (quoting *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 79 (2d Cir. 1996). Additionally, "an ERISA plaintiff must 'adduce[…] not only facts sufficient to support the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] 'extraordinary circumstances' requirement as well.'" *Aramony,* 191 F.3d at 151 (quoting *Devlin v. Transp. Comms. Int'l Union,* 173 F.3d 94, 102 (2d Cir. 1999)). The Second Circuit in *Devlin* cited that "*Schonholz* provides an example of such

extraordinary circumstances, where the employer used promised severance benefits to induce the plaintiff to retire." *Devlin,* 274 F.3d at 86 (quoting *Schonholz,* 87 F.3d at 79-80).

32.    With respect to the Continuing Life Insurance Claims, there was no promise to provide permanent basic life insurance benefits at the same level where the Debtors had provided explicit notice to Mr. Hall over the past 47 years or more, that they could amend or terminate the basic life insurance benefits at any time (*i.e.*, in a manner discussed by *Abbruscato*, *supra*).  Because there was no promise of a permanent benefit, there could be no reliance on such promise.  It has been demonstrated that the Retiree Servicing Center Letter itself did not create a separate obligation on the Debtors to provide a benefit separate from benefits offered under Debtors' Salaried Life Insurance Plan, and as such, the Retiree Servicing Center Letter in and of itself could not have created a promise nor could it have been susceptible to interpretation as a promise.

33.    Nor were there any facts that may separately support the existence of extraordinary circumstances in the case of either the Retiree Servicing Center Letter or the reduction in 2009 of the Continuing Life Insurance.  Basic life insurance is a benefit that is commonly provided by employers on an unvested basis, and is accordingly assumed by most employees and retirees to be a benefit that could be lost at any time, absent an extraordinary circumstance, such as a separate, express contractual commitment.  With respect to the Continuing Life Insurance Claims, Mr. Hall has not suggested any extraordinary circumstances with respect to his right to Continuing Life Insurance, such as receiving it as an inducement to enter into employment or to retire early.  No such extraordinary circumstance could exist where the Debtors have clearly and unambiguously represented to their employees and retirees over the past 47 years or more of their right to amend or terminate life insurance benefits at any time.

Moreover, at the time that Mr. Hall received the Retiree Servicing Center Letter and at the time

that the Debtors provided notice in June 2009 to Mr. Hall of the reduction in their Continuing

Life Insurance benefits, Mr. Hall had already retired and could therefore neither have been

induced to perform (*i.e.*, in a manner discussed by *Devlin*, *supra*) or otherwise made to rely in

any manner constituting an extraordinary circumstance.

## II.      Ongoing Benefits Have Been Assumed by New GM

34.      On the Closing Date, New GM completed its purchase of certain assets in

accordance with the Master Purchase Agreement.  Pursuant to Section 6.17(e) of the Master

Purchase Agreement (*Assumption of Certain Parent Employee Benefit Plans and Policies*), New

GM assumed the plans specified in a disclosure schedule, and the Welfare Benefits Plans

(including Debtors' Salaried Life Insurance Plan) are set forth on that schedule.  New GM

assumed the obligation to provide the Welfare Benefits to the extent required to be provided

under the terms of the applicable Welfare Benefits Plan in effect on the Closing Date, including

both responsibility for all claims incurred prior to the Closing Date and all future claims properly

payable pursuant to the terms of the applicable Welfare Benefit Plan in effect when such claims

are incurred.  Therefore, the Debtors and the GUC Trust do not have any liability with respect to

Welfare Benefits (including the Continuing Life Insurance benefits) that have been assumed by

New GM, and Mr. Hall has not provided any credible factual or legal basis to suggest otherwise.

### The Hall Response

### Claim No. 63670

35.      On February 10, 2011, the Hall Response was filed on behalf of Gordon

Hall, stating opposition to the relief sought in the Omnibus Objection with respect to the Hall

Claim  (*See* Proof of Claim 63670 annexed as **Exhibit "2"** hereto and Hall Response annexed as

**Exhibit "3"** hereto).  In the Hall Response, Mr. Hall opposes the disallowance and expungement

of his Welfare Benefits Claim on the basis that he was promised life insurance for the rest of his

life. Included with the Hall Response is a copy of a Retiree Servicing Center Letter, along with

annual enrollment confirmation forms from 1998 and 2007, which provide summaries of Mr.

Hall's then-current coverage. Mr. Hall does not provide any explanation for why the Retiree

Servicing Center Letter or the confirmation forms should be read as ensuring the vesting of a

benefit, rather than a mere acknowledgement by his former employer of the reduction of a

lifetime death benefit amount in accordance with the written terms of the applicable life

insurance plan then in effect and subject to the plan sponsor's continuing right to change the

terms of the life insurance plan, as discussed in more detail above.

36.    No additional documentation is provided in either Proof of Claim No.

63670 or the Hall Response to support Mr. Hall's assertions.  Further, the GUC Trust is not

aware of any documentation or facts supporting Mr. Hall's Welfare Benefits Claim. The Hall

Response does not provide any additional support for the Welfare Benefits Claim.  For the

reasons set out above, the GUC Trust respectfully submits that the Hall Response should be

overruled, and the Welfare Benefits Claim should be disallowed and expunged.

## Conclusion

37.    Because (i) ERISA recognizes that employers are free to amend or

terminate welfare benefits, (ii) the Debtors had explicitly reserved their right to amend, modify

or terminate the including Continuing Life Insurance benefits at any time, (iii) the Retiree

Servicing Center Letter submitted by Mr. Hall does not establish any contractual rights to vested

Continuing Life Insurance benefits, and (iv) Mr. Hall has not provided evidence of any

permanent contractual right to vested Continuing Life Insurance benefits;  the Debtors and the

GUC Trust have no liability for the Continuing Life Insurance Claim.  The GUC Trust reiterates

that the Hall Response have not provided any legal or factual support for the Continuing Life

Insurance Claim, which cannot be afforded prima facie validity under the Bankruptcy Code.

Accordingly, the Continuing Life Insurance Claim should be disallowed and expunged in its

entirety.

            WHEREFORE, for the reasons set forth above and in the Omnibus Objection, the

GUC Trust respectfully requests that the Court grant the relief requested in the Omnibus

Objection and such other and further relief as is just.

Dated:  New York, New York
        June 5, 2012

                                    /s/ Joseph H. Smolinsky
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky
                                    WEIL, GOTSHAL & MANGES LLP
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    Attorneys for Motors Liquidation
                                    Company GUC Trust

**Exhibit 1**

| **183rd Omnibus Objection to Claims** <br> **(Welfare Benefits Claims of Retired and Former Salaried and Executive Employees)** | | | | |
|---|---|---|---|---|
| **Proof of Claim No.** | **ECF No.** | **Name** | **Total Claimed** | **Summary** |
| 63670 | 9230 | Hall, Gordon | $147,608.00 (U) | Mr. Hall's response asserts that he is entitled to the welfare benefits provided to him by General Motors Corporation at the time of his retirement. Mr. Hall has submitted a letter from "Retiree Servicing Center" in support of this argument. |

**Exhibit 2**

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK** | **PROOF OF CLAIM**

Name of Debtor (Check Only One)
- ☑ Motors Liquidation Company (f/k/a General Motors Corporation) — Case No 09-50026 (REG)
- ☐ MLCS LLC (f/k/a Saturn LLC) — 09-50027 (REG)
- ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
- ☐ MLC of Harlem Inc (f/k/a Chevrolet-Saturn of Harlem Inc) — 09-13558 (REG)

NOTE: This form should not be used to make a claim for an administrative expense arising after the case but may be used for purposes of asserting a claim under § 11 U S C § 503(b)(9) (see item # 2). All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

Your Claim is Scheduled As Follows:

Name of Creditor (the person or other entity to whom the debtor owes money or property?)
**GORDON HALL**

Name and address where notices should be sent
**GORDON HALL
172 SHERIDAN HILLS RD.
MARBLE, N.C. 28905**

Telephone number **828-835-9420**
Email Address **GORDEI@VERIZON.NET**

- ☐ Check this box to indicate that this claim amends a previously filed claim
  Court Claim Number _____ (if known)
  Filed on _____

Name and address where payment should be sent (if different from above)
**FILED - 63670
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)**

Telephone number _____

- ☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars
- ☐ Check this box if you are the debtor or trustee in this case

THE GARDEN CITY GROUP INC
NOV 30 2009

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED UNLIQUIDATED or CONTINGENT a proof of claim MUST be filed in order to receive any distribution in respect of your claim If you have already filed a proof of claim in accordance with the attached instructions you need not file again

1 Amount of Claim as of Date Case Filed June 1 2009   $ **147,608**

If all or part of your claim is secured complete item 4 below however if all of your claim is unsecured do not complete item 4 If all or part of your claim is entitled to priority complete item 5 If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9) complete item 5
- ☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim Attach itemized statement of interest or charges

2 Basis for Claim **VALUE OF CANCELLED BASIC LIFE INSURANCE**
(See instruction #2 on reverse side)

3 Last four digits of any number by which creditor identifies debtor. **2978**
  3a Debtor may have scheduled account as _____ (See instruction #3a on reverse side)

4 Secured Claim (See instruction #4 on reverse side)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information
Nature of property or right of setoff ☐ Real Estate ☐ Motor Vehicle ☐ Equipment ☐ Other
Describe
Value of Property $_____ Annual Interest Rate ___%
Amount of arrearage and other charges as of time case filed included in secured claim if any $_____
Basis for perfection _____
Amount of Secured Claim $_____ Amount Unsecured $_____

6 Credits The amount of all payments on this claim has been credited for the purpose of making this proof of claim

7 Documents Attach redacted copies of any documents that support the claim such as promissory notes purchase orders invoices itemized statements of running accounts contracts judgments mortgages and security agreements You may also attach a summary Attach redacted copies of documents providing evidence of perfection of a security interest You may also attach a summary (See instruction 7 and definition of redacted on reverse side)

DO NOT SEND ORIGINAL DOCUMENTS ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available please explain in an attachment

5 Amount of Claim Entitled to Priority under 11 U S C § 507(a) If any portion of your claim falls in one of the following categories, check the box and state the amount
Specify the priority of the claim
- ☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)
- ☐ Wages salaries or commissions (up to $10 950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business whichever is earlier – 11 U S C § 507(a)(4)
- ☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)
- ☐ Up to $2 425* of deposits toward purchase lease or rental of property or services for personal family or household use – 11 U S C § 507(a)(7)
- ☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)
- ☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))
- ☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)
Amount entitled to priority $_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

Date **11/25/09**   Signature The person filing this claim must sign it Sign and print name and title if any of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above Attach copy of power of attorney if any
**P. GORDON HALL (GM RECORDS MAY NOW APPEAR AS GORDAN HALL)**

FOR COURT USE ONLY

Penalty for presenting fraudulent claim Fine of up to $500 000 or imprisonment for up to 5 years or both 18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

Date: Feb. 4, 2011

To: United States Bankruptcy Court

Attn: Honorable Robert E. Gerber,
United States Bankruptcy Judge

Subj: 183rd Omnibus Objection to Claims
Hearing: (Mar. 1, 2011 @ 9:45 AM)

I Respectfully Submit A Copy
of my specific Objections to the
183rd Omnibus Objection to Claims
to your Honor. Copies of my
objections and documentation
thereof have also been submitted
to all required persons
and departments as requested
(9 total mailings as documented
on page 2 of my attached letter
to Motors Liquidation Company).

Respectfully,

Gordon Hall

Pg 1 of 1

# Summary Page (Supporting Documents Attached)

## Life Insurance Loss Calculation

2X Annualized Salary At Retirement
Which is $78,804 X 2 =                    $157608.00

Less Current Amt. Of Company
  Provided Life Ins.                    10,000.00

  Value of Lost Life Ins   $ 147608.00

2 Attachments:
  - 1998 GM Flex Health Care
    Enrollment Which Also Shows
    Life Ins. Amount ($159,200)

  - 2007 GM Annual Health
    Care Enrollment Which Also
    Shows life ins. Amount
    of 2X Annual base Salary
    of $78804.00

*GM FLEX 1998 Enrollment*                                      Print Date  06/11/98

## Personal Information

| | |
|---|---|
| Name | P G HALL    *(GORDON HALL)* |
| SSN | ██-2978 |
| Date of Birth | 02/14/47 |
| GM Service Date | 07/21/65 |
| Annual Pay Rate | $79,560 00 |
| Pay CISCO | 10001 |

## Current Coverage

| | |
|---|---|
| Medical | *100D Kaiser Permanente |
| | -Employee and spouse |
| Dental | *01 Traditional Dental Plan |
| | -Employee and spouse |
| Vision | 1 Vision Plan |
| | -Employee and spouse |
| Health Care Spending Account | $0 00 |
| Dependent Care Spending Account | $0 00 |
| Supplemental Extended Disability | No coverage |
| Employee Life Insurance | $159,200 |
| Spouse Life Insurance | No coverage |
| Child Life Insurance | $10,000 |
| Employee Personal Accident | $50,000 |
| Spouse Personal Accident | $50,000 |
| Child Personal Accident | No coverage |

* If you relocate you may not be eligible to continue with this coverage option

## Benefit Dollars

| | Family Status Categories and Prices | | | | |
|---|---|---|---|---|---|
| | 1–You only | 2–You and your spouse | 3–You and your children | 4–You and your family | 0–No coverage |
| Medical | $1,764.00 | $3,528.00 | $3,048.00 | $4,812.00 | $504.00 |
| Dental | $192.00 | $192.00 | $192.00 | $192.00 | $192.00 |
| Vision | $48.00 | $48.00 | $48.00 | $48.00 | $48.00 |
| Employee Life | $611.28 | $611.28 | $611.28 | $611.28 | $611.28 |
| Total Benefit Dollars | $2,615.28 | $4,379.28 | $3,899.28 | $5,663.28 | $1,355.28 |

1

## Medical Plan

| Option Code | | Family Status Categories and Prices | | | |
|---|---|---|---|---|---|
| | | 1-You only | 2-You and Your Spouse | 3-You and Your Children | 4-You and Your Family |
| 0000 | No coverage | $0 | $0 | $0 | $0 |
| 0001 | Basic Medical Plan | $1,764 | $3,528 | $3,048 | $4,812 |
| 0002 | Enhanced Medical Plan | $2,004 | $4,008 | $3,468 | $5,472 |
| 100D | Kaiser Permanente | $2,076 | $4,152 | $3,588 | $5,664 |

## Dental Plan

| Option Code | | Family Status Categories and Prices | | | |
|---|---|---|---|---|---|
| | | 1-You only | 2-You and Your Spouse | 3-You and Your Children | 4-You and Your Family |
| 00 | No coverage | $0 | $0 | $0 | $0 |
| 01 | Traditional Dental Plan | $216 | $228 | $240 | $252 |

## Vision Plan

| Option Code | | Family Status Categories and Prices | | | |
|---|---|---|---|---|---|
| | | 1-You only | 2-You and Your Spouse | 3-You and Your Children | 4-You and Your Family |
| 0 | No coverage | $0 | $0 | $0 | $0 |
| 1 | Vision Plan | $48 | $48 | $48 | $48 |

2

# 2007 ANNUAL ENROLLMENT

- Review your benefit elections and dependent information in this PERSONAL FACT SHEET carefully.
- To make changes to your benefit elections for 2007, follow the ENROLLMENT INSTRUCTIONS on the next page
- If you do not make changes during the enrollment period, this PERSONAL FACT SHEET will serve as your confirmation statement

4 GM H 501B ENV# GM10015056001001333

P. G. HALL *(Gordon Hall)*
172 SHERIDAN HILLS RD.
MARBLE, NC 28905

**Enrollment Period  October 19–November 2, 2006**

Dear P G HALL

This **PERSONAL FACT SHEET** shows your 2007 benefit elections and the contribution amounts for each option Remember, if you do not make any changes during the enrollment period, this **PERSONAL FACT SHEET** will serve as your confirmation statement

Each year you have the opportunity to review and change certain benefit elections based on your current needs At the close of this enrollment period, you cannot change your 2007 benefit elections, except in the case of a qualified life event change

In addition to your **PERSONAL FACT SHEET**, the enclosed newsletter highlights changes for 2007  Please review these materials carefully when making your benefit enrollment decisions  Additionally, a detailed Health Care Resource Guide is available for review online in the **Reference Library** by clicking the **Enroll Now** icon on **gmbenefits com**, or by calling the GM Benefits & Services Center

**Your current medical option will no longer be available to you. Unless you elect to enroll in a new medical plan during this enrollment period, you will be defaulted into Enhanced PPO (BCBS-US-RS) as shown below.**

## YOUR CURRENT ELECTIONS WITH 2007 CONTRIBUTION AMOUNTS
*This statement reflects your personal information as of September 25, 2006*

| Plan | Option | Family Status/ Coverage Volume | Your 2007 Monthly Contribution After-Tax |
|---|---|---|---|
| Medical | Enhanced PPO (BCBS-US-RS) | Self + Spouse/ Domestic Partner | $110 00 |
| Extended Care Coverage (ECC) | Extended Care Coverage | Self + Spouse/ Domestic Partner | $14 00 |
| Dental | Traditional Delta Dental | Self + Spouse/ Domestic Partner | $15 00 |
| Vision | Cole Managed Vision (S) | Self + Spouse/ Domestic Partner | $2 00 |
| Basic Life Insurance | 2 X Annual Base Salary | $78,804 | $0.00 |
| Dependent Life Insurance – Child | | $10,000 | $0 80 |
| **TOTAL MONTHLY CONTRIBUTIONS** | | | **$141 80** |

**Note·** The (S) or (RS) after a benefit option is used for administrative purposes only
**Note·** If applicable, you may decrease or cancel your contributory life insurance coverages, however, you may not increase your coverage or enroll in new coverage

**Exhibit 3**

DATE: FEB. 4, 2011

TO: THE GARDEN CITY GROUP, INC.
    ATTN: Motors Liquidation Company
    (Claims Processing

Since I originally submitted a claim for Life Ins. on 11/25/2009, I HAVE NOW PROCURED AN ADDITIONAL DOCUMENT DATED JUNE 15, 1998 (immediately AFTER my RETIREMENT), WHICH FURTHER GUARANTEES, in writing, Continuing Life INSURANCE for the REST of my life At no cost to me. THE VALIDITY AND intent of this DOCUMENT CANNOT BE DENIED (EXHIBIT #1).

To Assist you in identifying the Specific Claim, I HAVE Also ENCLOSED the Following:

From my
11/25/09
INITIAL
CLAIM

- My ORIGINAL CLAIM (11/25/09) for CANCELLED Life Ins.
- CALCULATION PAGE for Life Ins Canc. 11/25/09
- 1998 FLEX Entitlement Showing Life Ins. Amt.
- 2007 Entitlement SHOWING 2 TIMES ANNUAL BASE Sal. of 78,804

Additionally, I HAVE enclosed THE cover page of your recent mailing (postmarked Jan. 23, 2011), And THE specific Exhibit A page that Documents your Denial of my claim stating "No liABility". I RESPECTfully submit to you that the single page (Exhibit #1 Dated June 15, 1998), CLEARly And undeniAbly establishes LiAbility "for the rest of my life", As do other documents.

PLEASE CAREfully Review Enrollment STATEMENTS Exhibit #1 And Keep the Specific Good FAith promise made to me by General Motors CorporAtion on June 15, 1998.

Respectfully,

Gordon Hall

C: FiLE
① BANKRuptcy Court
② Attorneys for DeBtors
③ The DeBtors c/o Motors Liq. Co
④ General Motors LLC
⑤ Attnys. for U.S. Dept. of Treasury

⑥ U.S. Dept. of TreAsury
⑦ Attys. for Stat. Comm. of Unsecured CReditor.
⑧ Office of U.S. Trustee for Southern District of N.Y.
⑨ U.S. Attorneys Office, S.D. N.Y.

*Exhibit #1*

*New Document*
*Not previously Submitted,*
*Further Establishes*
*Liability*

**GM NATIONAL RETIREE SERVICING CENTER**
NAO Personnel Administration
P.O. Box 5113
Southfield, Michigan 48086-5113
1-800-828-9236
1-800-872-8682

June 15, 1998

P G Hall
172 Sheridan Hills Road
Marble, NC 28905

*Note* *(2 times Annual)*
*(Base was*
*promised) See*
*Document (2007)*
*And (1998)*

Dear P G Hall,

As a retiree of General Motors with 10 or more years of participation in the Life and Disability Benefits Program, you are eligible for Continuing Life insurance.

Our insurance records, as of the date of this letter, show the Continuing Life insurance has now fully reduced to the ultimate amount of **$78,804.00**. This ultimate amount will remain in effect for the rest of your life and is provided by General Motors at no cost to you.

**IMPORTANT:   YOU SHOULD KEEP THIS NOTICE WITH YOUR OTHER VALUABLE PAPERS.**

If you have any questions regarding this letter, you may call toll-free, **1-800-828-9236** (Telephone Device for the Deaf **1-800-872-8682**), during normal business hours, or write to the address above.

Always include this Social Security number, **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**, in all your correspondence.

**Retiree Servicing Center**

UA01

*MY FILE COPY* 11/25/09

# UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM

| Name of Debtor (Check Only One): | Case No. |
|---|---|
| ☑ Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| ☐ MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| ☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| ☐ MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.) | 09-13558 (REG) |

**Your Claim is Scheduled As Follows:**

Pg. ① of 4
11/25/09

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see item 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.

Name of Creditor (the person or other entity to whom the debtor owes money or property):
**GORDON HALL**

Name and address where notices should be sent:
**GORDON HALL
172 SHERIDAN HILLS RD.
MARBLE, N.C. 28905**

Telephone number: **828-835-9420**
Email Address: **GORDE1@VERIZON.NET**

☐ Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____
(If known)

Filed on: _____

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

Name and address where payment should be sent (if different from above):

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

Telephone number:

**1. Amount of Claim as of Date Case Filed, June 1, 2009:** $ **147,608**

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** ~~VALUE OF CANCELLED BASIC LIFE ENSURANCE~~
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** **2978**

3a. Debtor may have scheduled account as: _____
(See instruction #3a on reverse side.)

**4. Secured Claim** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

Nature of property or right of setoff: ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe:

Value of Property: $ _____  Annual Interest Rate ____%

Amount of arrearage and other charges as of time case filed included in secured claim, if any: $ _____

Basis for perfection: _____

Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a). If any portion of your claim falls in one of the following categories, check the box and state the amount.**

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. § 507(a)(8).

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case in which the goods have been sold to the Debtor in the ordinary course of such Debtor's business - 11 U.S.C. § 503(b)(9).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

Amount entitled to priority:

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain in an attachment.

| Date: **11/25/09** | Signature: The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any. | **FOR COURT USE ONLY** |
|---|---|---|

**P. GORDON HALL** (GM RECORDS MAY NOW APPEAR AS GORDAN HALL)

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
Modified B10 (GCG) (12/09)



★ THESE 4 PGS. ARE
FROM MY ORIG. CLAIM
DATED 11/25/09
REFERENCE

# SUMMARY PAGE (Supporting Documents Attached)

Pg. ②of 4
11/25/09

## LIFE INSURANCE LOSS CALCULATION

2X ANNUALIZED SALARY AT RETIREMENT
WHICH IS $78,804 X2 =          $157608.00

LESS CURRENT AMT. OF COMPANY
PROVIDED LIFE INS.          10 000.00

VALUE OF LOST LIFE INS   $ 147608.00

2 ATTACHMENTS:

- 1998 GM FLEX HEALTH CARE
ENROLLMENT WHICH ALSO SHOWS
LIFE INS. AMOUNT ($159,200)

- 2007 GM ANNUAL HEALTH
CARE ENROLLMENT WHICH ALSO
SHOWS LIFE INS. AMOUNT
OF 2X ANNUAL BASE SALARY
OF $78804.00

**nal Information**

*(GORDON HALL)*    *PG. 3 OF 4*
*11/25/09*

| | |
|---|---|
| Name: | P G HALL |
| SSN: | ▓▓▓-2978 |
| Date of Birth: | 02/14/47 |
| 3M Service Date: | 07/21/65 |
| Annual Pay Rate: | $79,560.00 |
| Pay CISCO: | 10001 |

*1998 GM FLEX*
*HEALTH CARE ENROLLMENT*

## Current Coverage

| | |
|---|---|
| Medical: | *100D Kaiser Permanente |
| | -Employee and spouse |
| Dental: | *01 Traditional Dental Plan |
| | -Employee and spouse |
| Vision: | 1 Vision Plan |
| | -Employee and spouse |
| Health Care Spending Account: | $0.00 |
| Dependent Care Spending Account: | $0.00 |
| Supplemental Extended Disability: | No coverage |
| Employee Life Insurance: | $159,200    *(2 TIMES BASE SALARY)* |
| Spouse Life Insurance: | No coverage |
| Child Life Insurance: | $10,000 |
| Employee Personal Accident: | $50,000 |
| Spouse Personal Accident: | $50,000 |
| Child Personal Accident: | No coverage |

\* If you relocate you may not be eligible to continue with this coverage option.

## Benefit Dollars

| | 1—You only | 2—You and your spouse | 3—You and your children | 4—You and your family | 0—No coverage |
|---|---|---|---|---|---|
| Medical | $1,764.00 | $3,528.00 | $3,048.00 | $4,812.00 | $504.00 |
| Dental | $192.00 | $192.00 | $192.00 | $192.00 | $192.00 |
| Vision | $48.00 | $48.00 | $48.00 | $48.00 | $48.00 |
| Employee Life | $611.28 | $611.28 | $611.28 | $611.28 | $611.28 |
| Total Benefit Dollars | $2,615.28 | $4,379.28 | $3,899.28 | $5,663.28 | $1,355.28 |

**Family Status Categories and Prices**

1

# 2007 ANNUAL ENROLLMENT

*Pg 4 of 4*
*11/25/09*

4.GM-H-501B ENV# GM10015096001001333

P. G. HALL *(Gordon Hall)*
172 SHERIDAN HILLS RD.
MARBLE, NC 28905

- Review your benefit elections and dependent information in this PERSONAL FACT SHEET carefully.
- To make changes to your benefit elections for 2007, follow the ENROLLMENT INSTRUCTIONS on the next page.
- If you do not make changes during the enrollment period, this PERSONAL FACT SHEET will serve as your confirmation statement.

Dear P. G. HALL:

**Enrollment Period: October 19–November 2, 2006**

This **PERSONAL FACT SHEET** shows your 2007 benefit elections and the contribution amounts for each option. Remember, if you do not make any changes during the enrollment period, this **PERSONAL FACT SHEET** will serve as your confirmation statement.

Each year you have the opportunity to review and change certain benefit elections based on your current needs. At the close of this enrollment period, you cannot change your 2007 benefit elections, except in the case of a qualified life event change.

In addition to your **PERSONAL FACT SHEET**, the enclosed newsletter highlights changes for 2007. Please review these materials carefully when making your benefit enrollment decisions. Additionally, a detailed Health Care Resource Guide is available for review online in the **Reference Library** by clicking the **Enroll Now** icon on gmbenefits.com, or by calling the GM Benefits & Services Center.

**Your current medical option will no longer be available to you. Unless you elect to enroll in a new medical plan during this enrollment period, you will be defaulted into Enhanced PPO (BCBS-US-RS) as shown below.**

## YOUR CURRENT ELECTIONS WITH 2007 CONTRIBUTION AMOUNTS
*This statement reflects your personal information as of September 25, 2006.*

| Plan | Option | Family Status/ Coverage Volume | Your 2007 Monthly Contribution After-Tax |
|------|--------|-------------------------------|------------------------------------------|
| Medical | Enhanced PPO (BCBS-US-RS) | Self + Spouse/ Domestic Partner | $110.00 |
| Extended Care Coverage (ECC) | Extended Care Coverage | Self + Spouse/ Domestic Partner | $14.00 |
| Dental | Traditional Delta Dental | Self + Spouse/ Domestic Partner | $15.00 |
| Vision | Cole Managed Vision (S) | Self + Spouse/ Domestic Partner | $2.00 |
| Basic Life Insurance | 2 X Annual Base Salary | $78,804 | $0.00 |
| Dependent Life Insurance – Child | | $10,000 | $0.80 |
| **TOTAL MONTHLY CONTRIBUTIONS** | | | **$141.80** |

Note: The (S) or (RS) after a benefit option is used for administrative purposes only.
Note: If applicable, you may decrease or cancel your contributory life insurance coverages; however, you may not increase your coverage or enroll in new coverage.



HEARING DATE AND TIME: March 1, 2011 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: February 22, 2011 at 4:00 p.m. (Eastern Time)

> **PLEASE CAREFULLY REVIEW THIS OBJECTION AND THE ATTACHMENTS HERETO TO DETERMINE WHETHER THIS OBJECTION AFFECTS YOUR CLAIM(S)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*✱ THESE 2 PAGES ARE from your most Recent MAILing postmarked Jan. 27, 2011*

Attorneys for Debtors
and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------x

| | |
|---|---|
| In re | : |
| | : |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : |
| f/k/a General Motors Corp., *et al.* | : |
| | : |
| Debtors. | : |
| | : |

Chapter 11 Case No.

09-50026 (REG)

(Jointly Administered)

------------------------------------------------x

### NOTICE OF DEBTORS' 183rd OMNIBUS OBJECTION TO CLAIMS
**(Welfare Benefits Claims of Retired and Former Salaried and Executive Employees)**

   **PLEASE TAKE NOTICE** that on January 26, 2011, Motors Liquidation

Company (f/k/a General Motors Corporation) and its affiliated debtors, as debtors in possession

(the "**Debtors**"), filed their 183rd omnibus objection to expunge certain compensation and

welfare benefits claims of retired and former salaried and executive employees (the "**183rd**

**Omnibus Objection to Claims**"), and that a hearing (the "**Hearing**") to consider the 183rd

Omnibus Objection to Claims will be held before the Honorable Robert E. Gerber, United States

US_ACTIVE:\43612921\02\72240.0639

②

183rd Omnibus Objection

**Exhibit A**

FROM JAN. 27, 2011
MAILING

Motors Liquidation Company, et al.
Case No. 09-50026 (REG), Jointly Administered

## CLAIMS TO BE DISALLOWED AND EXPUNGED

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|
| FREEMAN CARL L<br>1031 PARKERS FORT<br><br>GREENSBORO, GA 30642 | 45954 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$897,720.00 (U)<br>$897,720.00 (T) | No Liability; Claim seek recovery of amounts for which the Debtors are not liable | Pgs. 1-5 |
| FREEMAN CARL L<br>1031 PARKERS FORT<br><br>GREENSBORO, GA 30642 | 45955 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$217,000.00 (U)<br>$217,000.00 (T) | No Liability; Claims seek recovery of amounts for which the Debtors are not liable | Pgs. 1-5 |
| FRENCH, ANTHONY S<br>4300 WARD DR<br><br>MOREHEAD CITY, NC 28557 | 62684 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$69,090.00 (U)<br>$69,090.00 (T) | No Liability; Claims seek recovery of amounts for which the Debtors are not liable | Pgs. 1-5 |
| GEORGE W BAUMANN JR<br>2290 HEMMETER ROAD<br><br>SAGINAW, MI 48603 | 61094 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$80,045.00 (U)<br>$80,045.00 (T) | No Liability; Claims seek recovery of amounts for which the Debtors are not liable | Pgs. 1-5 |
| GORDON HALL<br>172 SHERIDAN HILLS ROAD<br><br>MARBLE, NC 28905 | 63670 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$147,608.00 (U)<br>$147,608.00 (T) | No Liability; Claims seek recovery of amounts for which the Debtors are not liable | Pgs. 1-5 |
| HAROLD ARMSTRONG<br>785 FOX RIVER DRIVE<br><br>BLOOMFIELD HILLS, MI 48304 | 64071 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$890,471.00 (U)<br>$890,471.00 (T) | No Liability; Claims seek recovery of amounts for which the Debtors are not liable | Pgs. 1-5 |

(1)  In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2)  Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.