**HEARING DATE AND TIME: June 14, 2012 at 9:45 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
:
**In re**                                                   :       **Chapter 11 Case No.**
:
**MOTORS LIQUIDATION COMPANY, *et al.*,**      :       **09-50026 (REG)**
        **f/k/a General Motors Corp., *et al.***       :
:
                            **Debtors.**           :       **(Jointly Administered)**
:
----------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY
GUC TRUST'S REPLY TO TIMOTHY J. KUECHENMEISTER'S RESPONSE
TO THE 175TH OMNIBUS OBJECTION
TO CLAIMS (WELFARE BENEFITS CLAIMS OF RETIRED
AND FORMER SALARIED AND EXECUTIVE EMPLOYEES)**

# TABLE OF CONTENTS

**Page**

Preliminary Statement ................................................................................................................. 1

The Welfare Benefits Claims Should Be Disallowed and Expunged ........................................... 3

I.      The Welfare Benefits Claims Should Be Disallowed As Debtors Had Right to
Amend or Terminate Each Welfare Benefit Plan .............................................................. 3

      (A)     Neither the Debtors' Salaried Life Insurance Plan Nor the Retiree
Servicing Center Letter Provides Mr. Kuechenmeister with a Permanent
Contractual Right to Continuing Life Insurance Benefits at a Guaranteed
Amount ................................................................................................................. 6

      (B)     The Retiree Servicing Center Letter Does Not Create A New Contract
With Mr. Kuechenmeister ................................................................................... 13

II.     Ongoing Benefits Have Been Assumed by New GM ..................................................... 18

The Kuechenmeister Response: Claim No. 17941 ................................................................... 19

Conclusion ................................................................................................................................ 19

i

US_ACTIVE:\44020153\1\72240.0639

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Curtiss-Wright Corp. v. Schoonejongen*,
  514 U.S. 73 (1995)...............................................................................................................4

*Devlin v. Empire Blue Cross and Blue Shield*,
  *274 F.3d 76 (2nd Cir. 2001)* ........................................................................................4, 15, 17

*In re Oneida, Ltd.*,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL
  234827 (S.D.N.Y. Jan. 22, 2010)..........................................................................................3

*Moore v. Metro. Life Ins. Co.*,
  856 F.2d 488 (2d Cir. 1988)...............................................................................................4, 7

*Sprague v. Gen. Motors Corp.*,
  133 F.3d 388 (6th Cir. 1998) ...............................................................................4, 9, 10, 11

STATUTES

29 U.S.C. § 1051(1) ...................................................................................................................4, 7

Employee Retirement Income Security Act of 1974 ...................................................................3

ii

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

      The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**")[1] in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or modified from time to time), files this reply (the "**Reply**") to the Kuechenmeister Response (defined below) interposed to the 175th Omnibus Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 8857) (the "**175th Omnibus Objection**"), and respectfully represents:

## Preliminary Statement

      1.     On January 26, 2011, the Debtors filed the Omnibus Objection. The Omnibus Objection seeks the disallowance and expungement of certain compensation and welfare benefits claims of retired and former salaried and executive employees of the Debtors on the basis that such claims (a) are related to unvested welfare benefits that were capable of being modified or terminated by the Debtors at will pursuant to the terms of the operative documents governing such welfare benefits, and were modified or terminated in accordance with such operative documents, and (b) to the extent modified, have otherwise been assumed by New GM[2] pursuant to the terms of the Master Purchase Agreement and, as described in the Omnibus Objection, are not the responsibility of the Debtors or the GUC Trust and therefore should be disallowed and expunged from the claims register.

---

[1] The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Omnibus Objection.

2.      Responses to the 175th Omnibus Objection were due by February 22, 2011.  The Kuechenmeister Response listed on **Exhibit 1** hereto and described further herein was filed with respect to the Omnibus Objection (the "**Kuechenmeister Response**") by Timothy J. Kuechenmeister relating to his individual claims (the "**Welfare Benefits Claims**," which include "**Continuing Life Insurance Claims**").

3.      The Kuechenmeister Response is generally not substantive, but is critical of the reduction or termination of welfare benefits provided to retired and former salaried and executive employees of the Debtors.  After reviewing the Kuechenmeister Response, the GUC Trust[3] respectfully reiterates the Debtors' position in the Omnibus Objection, and submits that Mr. Kuechenmeister has failed to provide any legal or factual support for his Welfare Benefits Claims.  The Kuechenmeister Response alleges the same facts provided by, and does not take any position different from, the position taken by another former employee of the Debtors, George Cobble Jr., with respect to the alleged vesting of Mr. Cobble's Continuing Life Insurance benefit, which was disallowed and expunged by an order of the Court, dated February 8, 2012 (ECF No. 11391).[4]

4.      Notwithstanding Mr. Kuechenmeister's opposition, the Kuechenmeister Response should be overruled because (i) the Debtors had a right to amend or terminate the employee welfare benefits plans (the "**Welfare Benefits Plans**") providing medical, dental, vision, and life insurance benefits (the "**Welfare Benefits**"), including those on which the

---

[3] While the Omnibus Objection was filed by the Debtors, this Reply is being filed by the GUC Trust because, pursuant to the Plan, the GUC Trust now has the exclusive authority to prosecute and resolve objections to Disputed General Unsecured Claims (as defined in the Plan).

[4] Mr. Cobble filed Proof of Claim No. 64959, which was objected to in the Debtors' 83rd Omnibus Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 6740).  Mr. Cobble's reply to the 83rd Omnibus Objection appears at ECF No. 7074.  The GUC Trust's response to Mr. Cobble's reply is at ECF No. 11283.

2

Welfare Benefits Claims are based, without further liability, and in all relevant instances did so, and (ii) New GM otherwise assumed Welfare Benefits as they existed on the Commencement Date and continues to provide Welfare Benefits as modified prior to their assumption by New GM, and consequently the Debtors and the GUC Trust have no liability for the Welfare Benefits Claims. Accordingly, the GUC Trust files this Reply in support of the Omnibus Objection and respectfully requests that the Welfare Benefits Claims be disallowed and expunged from the claims register.

5.        The Debtors and the GUC Trust are, of course, sympathetic with the impact that the financial problems of the Debtors have had on Mr. Kuechenmeister's Welfare Benefits. However, in view of the Debtors' liquidation and under applicable law, there should be no other outcome.

### The Welfare Benefits Claims Should Be Disallowed and Expunged

6.        Mr. Kuechenmeister has failed to demonstrate the validity of his Welfare Benefits Claims, and the Welfare Benefits Claims should therefore be disallowed and expunged. *See, e.g.*, *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (claimant has burden to demonstrate validity of claim when objection is asserted refuting claim's essential allegations).

**I.        The Welfare Benefits Claims Should Be Disallowed As Debtors Had Right to Amend or Terminate Each Welfare Benefit Plan**

7.        In the Kuechenmeister Response, Mr. Kuechenmeister has not demonstrated that the Debtors were bound by any legal or contractual requirement to continue to provide him, or other retired and former salaried and executive employees, with the Welfare Benefits on a permanent basis. The Omnibus Objection explains that the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**"), comprehensively regulates employer-

3

provided welfare benefits plans, and that ERISA does not require an employer to provide or to vest welfare benefits. Welfare benefits provided under the terms of a welfare benefit plan may therefore be reduced or forfeited in accordance with the terms of the applicable welfare benefit plan. 29 U.S.C. § 1051(1); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 400 (6th Cir. 1998).

8.    In addressing claims similar to Mr. Kuechenmeister's Welfare Benefits Claims, the U.S. Supreme Court has noted that welfare plans such as the Welfare Benefits Plans are specifically exempted from vesting requirements (to which pension plans are subject) under ERISA, and accordingly, employers "*are generally free under ERISA, for any reason at any time, to adopt, modify or terminate welfare plans.*" *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78 (1995) (emphasis added) (citing *Adams v. Avondale Indus., Inc.*, 905 F.2d 943, 947 (6th Cir. 1990)). *See also Joyce. v. Curtiss Wright Corp.*, 171 F. 3d 130 (2d Cir. 1999) (stating the general rule that under ERISA an employer welfare plan is not vested and that an employer has the right to terminate or unilaterally amend the plan at any time). As noted in the Omnibus Objection, however, the Sixth Circuit has recognized that once welfare benefits are vested, they are rendered forever unalterable. *See also Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 82 (2nd Cir. 2001) (quoting *Am. Fed'n of Grain Millers, AFL-CIO v. Int'l Multifoods Corp*, 116 F.3d 976, 980 (2d Cir. 1997) ("If a [plan] document unambiguously indicates whether retiree … benefits are vested, the unambiguous language should be enforced").

9.    Thus, Mr. Kuechenmeister bears the burden of showing that the Debtors intended to vest the Welfare Benefits provided by the Welfare Benefits Plans, and did *in fact* vest the Welfare Benefits, such that Mr. Kuechenmeister has a contractual right to the perpetual continuation of his Welfare Benefits at a contractually specified level.

4

10.     In the Kuechenmeister Response, Mr. Kuechenmeister has not provided any evidence that contradicts the Debtors' common practice of advising participants of the Welfare Benefits Plans of the Debtors' right to amend or terminate the Welfare Benefits at any time.  Moreover, Mr. Kuechenmeister has not provided any evidence of a separate, affirmative contractual obligation on the part of the Debtors to continue to provide the Welfare Benefits specifically to Mr. Kuechenmeister.  Therefore, the Debtors and the GUC Trust do not have any liability with respect to the reduction in or discontinuation of the Welfare Benefits.

11.     The Kuechenmeister Response further states opposition to the relief sought in the Omnibus Objection with respect to Continuing Life Insurance Claims, which relate to the Debtors' reduction, as of August 1, 2009, of the maximum amount of basic life insurance benefit ("**Continuing Life Insurance**") to $10,000 (self-funded by General Motors Corporation (hereafter "**GM**") and subsequently by General Motors Company ("**New GM**")), which would be paid by GM and subsequently New GM to the beneficiaries of eligible deceased retirees to receive such benefit upon their death (*i.e.*, those whose most recent date of hire (or adjusted service date) was prior to January 1, 1993).

12.     In the Kuechenmeister Response, Mr. Kuechenmeister opposes the disallowance and expungement of his Continuing Life Insurance Claims on the basis that the Continuing Life Insurance benefits are vested rather than unvested.  In support, Mr. Kuechenmeister provides a one-page letter from the Debtors to Mr. Kuechenmeister following his retirement from employment with the Debtors (the "**Retiree Servicing Center Letter**").  Each Retiree Servicing Center Letter generally contains the following standard language:

> As a retiree of General Motors with 10 or more years of participation in the Life and Disability Benefits Program, you are eligible for Continuing Life Insurance.  Our insurance records, as of the date of this letter, show the Continuing Life Insurance has

5

now fully reduced to the ultimate amount of $[**stated amount**]. This amount will remain in effect for the rest of your life and is provided by General Motors at no cost to you.

13.      In the Kuechenmeister Response, Mr. Kuechenmeister does not provide any explanation for why the Retiree Servicing Center Letter he received should be read as ensuring the vesting of a benefit, rather than a mere acknowledgement by his former employer of the reduction of a lifetime death benefit amount in accordance with the written terms of the applicable life insurance plan then in effect and subject to the plan sponsor's continuing right to change the terms of the life insurance plan.

**(A)**      **Neither the Debtors' Salaried Life Insurance Plan Nor the Retiree Servicing Center Letter Provides Mr. Kuechenmeister with a Permanent Contractual Right to Continuing Life Insurance Benefits at a Guaranteed Amount**

14.      In the Kuechenmeister Response, Mr. Kuechenmeister provides a copy of a Retiree Servicing Center Letter from the GM National Retiree Servicing Center ("**Retiree Servicing Center**").  GM self-administered its life insurance benefits until some point in the 1990s, at which time it transferred administration of life insurance benefits to MetLife, a third party administrator.  To enable MetLife to be readily identifiable as GM's administrator for life insurance benefits, GM permitted MetLife to use the prior name of their internal benefits administrator, the General Motors National Benefits Center and/or Retiree Servicing Center.

15.      The Retiree Servicing Center Letter and letters substantially similar to it were routinely sent out by mail from the Retiree Servicing Center to each retiree of General Motors Corporation entitled to a Continuing Life Insurance benefit (which was a continuation of the retiree's basic life insurance benefit offered to them while they were active employees).  The letters were routinely sent out at the time that a scheduled reduction to the retiree's Continuing Life Insurance benefit had reduced to the maximum amount pursuant to the terms then in effect

6

under the General Motors Life and Disability Benefits Program for Salaried Employees, as amended from time to time ("**Debtors' Salaried Life Insurance Plan**").

16.    As explained above with respect to the Debtors' right to amend or terminate other Welfare Benefits, ERISA does not require an employer to provide or to vest life insurance benefits.  Insurance benefits provided under the terms of a welfare benefit plan may therefore be reduced or forfeited in accordance with the terms of the applicable welfare benefits plan.  29 U.S.C. § 1051(1); *see Moore v. Metro. Life Ins. Co.*, 856 F.2d 488, 491 (2d Cir. 1988).

17.    ERISA provides that the contractual rights established under a welfare benefits plan must be in writing and contained in the plan document for the welfare benefits plan, and furthermore, requires that a welfare benefits plan sponsor provide a summary plan description (and as necessary, summaries of material modifications) of the plan and the terms of benefits provided under the plan to participants of the plan; however, the summary plan description does not establish any contractual rights not provided by the plan document.  *Cigna Corp. v. Amara*, 000 U.S. 09-804 (2011) (holding that a summary plan description has no contractual authority because it does not constitute a part of the plan document; however, plan participants may seek appropriate equitable relief in the case of a false or misleading summary plan description).  Communications from the plan sponsor to plan participants, such as the Retiree Servicing Center Letter received by Mr. Kuechenmeister, are neither summary plan descriptions nor summaries of material modifications.  Even so, by the reasoning of *Amara*, the Retiree Servicing Center Letter does not supersede the terms of the Debtors' Salaried Life Insurance Plan, which provided the Debtors the right to amend, modify or terminate the Continuing Life Insurance benefits at any time.

US_ACTIVE:\44020153\1\72240.0639

18.    The Debtors clearly and unambiguously reserved their right to amend or terminate the Continuing Life Insurance benefit under the terms of the plan documents and the summary plan descriptions of the Debtors' Salaried Life Insurance Plan provided and made available to Mr. Kuechenmeister during his employment period, and therefore, neither the Retiree Servicing Center Letter received by Mr. Kuechenmeister nor the plan documents create any vested contractual rights to the Continuing Life Insurance benefits.  Section 3.05 of the most recent restatement of the Debtors' Salaried Life Insurance Plan, as amended effective January 1, 2007, provides:

> The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time by action of its Board of Directors or other committee or individual expressly authorized by the Board to take such action.  The benefits available to Employees are determined solely by the terms of this Program. Absent express delegation of authority from the Board of Directors, no one has the authority to commit the Corporation to any benefit or benefit provisions not provided under the terms of this Program.

Because ERISA does not require the vesting of welfare benefits, such provision reserved the Debtors' right to modify Continuing Life Insurance benefits by amendment of Debtor's Salaried Life Insurance Plan.  Moreover, the Debtors could terminate the plan.  Clearly, no vested rights were created under the plan.  The following reservation of rights to amend or terminate benefits is prominently stated on the second page of a recent benefits handbook for salaried retirees containing the summary plan description of Debtors' Salaried Life Insurance Plan:

> General Motors Corporation reserves the right to amend, change, or terminate the Plans and Programs described in this booklet.  The Plans and Programs can be amended only in writing by an appropriate committee or individual as expressly authorized by the Board of Directors.  No other oral or written statements can change the terms of a benefit Plan or Program.

8

The same or substantially similar reservation of rights language is prominently stated on the

second page of benefits handbooks for salaried retirees issued by the Debtors in 1996, 2000, and

2005.  Mr. Kuechenmeister was therefore clearly on notice of this reservation of rights, as he will

have seen it prominently displayed in the benefits handbooks for salaried retirees that they

received along with every other retiree with such benefits.

19.     On the basis of such language, the Sixth Circuit in *Sprague* reviewed the

plan documents and summary plan descriptions of certain of the Debtors' salaried welfare

benefits plans, as contained in benefits handbooks regularly provided by Debtors to their

employees and retirees, and concluded that the Debtors' salaried welfare benefits plans explicitly

permitted the Debtors to unilaterally amend, terminate or modify the salaried welfare benefits

provided under such plans.  The Sixth Circuit's opinion in *Sprague* contains the following

description of the Debtors' reservation of rights to change or terminate health care benefits at any

time, which reservation would have equally pertained to the right to change or terminate life

insurance benefits, the summary plan description of which was contained in the same booklet as

contained the summary plan description of the health plan:

> GM has long made it a practice to inform its salaried employees
> and retirees of their health care coverage by providing them
> booklets containing summaries of the company's health insurance
> policies and programs.  Prior to 1974 GM put out a booklet entitled
> "The GM Insurance Program for Salaried Employees."   After
> ERISA took effect in 1974 the booklet became "Highlights of
> Your GM Benefits."  Beginning in 1977, GM also issued a booklet
> called "Your Benefits in Retirement."   Each of these publications

9

went through a series of different editions […] and most of the booklets also put plan participants on notice of GM's right to change or terminate the health care plan at any time:

> "General Motors believes wholeheartedly in this Insurance Program for GM men and women, and expects to continue the Program indefinitely. However, GM reserves the right to modify, revoke, suspend, terminate, or change the Program, in whole or in part, at any time...." The General Motors Insurance Program for Salaried Employees (1965, 1968, and 1971).
>
> "General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet." Your GM Benefits (1985).
>
> "The Corporation reserves the right to amend, modify, suspend, or terminate its benefit Plans or Programs by action of its Board of Directors." Your Benefits in Retirement (1985).

*Sprague v. Gen. Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) at 400.[5]

20.     As evidenced by the description set forth in *Sprague* and as confirmed by the Debtors, GM had a long-term practice of providing explicit notice to participants of their reservation of rights to amend or terminate salaried welfare benefits at any time through the issuance of benefits handbooks to both active and retired employees on a regular basis spanning over a period of 47 years or more (*i.e.*, since at least 1965). This means that Mr. Kuechenmeister would have been on notice from the start of and through the end of his career with General Motors Corporation that his employer had reserved its rights to amend or terminate his basic life insurance benefit and/or their Continuing Life Insurance benefit.

---

[5] The Sixth Circuit found: "Most of the summary plan descriptions unambiguously reserved GM's right to amend or terminate the plan. For example: 'General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet.' Your GM Benefits (1984) [and] 'The Corporation reserves the right to amend, modify, suspend or terminate the Program in whole or in part, at any time, by action of its Board of Directors.' Your Benefits in Retirement (1985)." 133 F.3d at 400.

US_ACTIVE:\44020153\1\72240.0639

21.    The Second Circuit has held that an employer's reservation of rights to amend or to terminate insurance benefits was sufficient to preclude such insurance benefits from being susceptible to being interpreted as promises of vested lifetime insurance benefits:

> Here … we have [SPD or Summary Plan Description] language that both appears to promise lifetime life insurance coverage at a particular level and clearly reserves Empire's right to amend or terminate such coverage. Because the same document that potentially provided the 'lifetime' benefits also clearly informed employees that these benefits were subject to modification, we conclude that the language contained in the 1987 SPD is not susceptible to an interpretation that promises vested lifetime life insurance benefits.

The Sixth Circuit has similarly concluded, where a group of General Motors retirees challenged a reduction in health coverage, that the relevant SPD provided that lifetime health coverage would be provided at no cost. *See Sprague v. Gen. Motors Corp., 133 F.3d 388, 401 (6th Cir. 1998) (en banc).* The same SPD also provided that 'General Motors Corporation reserves the right to amend, change or terminate the Plans and Programs described in this booklet.' *Id.* The Sixth Circuit reasoned:

> "We see no ambiguity in a summary plan description that tells participants both that the terms of the current plan entitle them to health insurance at no cost throughout retirement and that the terms of the current plan are subject to change.... As the Third Circuit explained in a similar case, `the promise made to retirees was a qualified one: the

11

> promise was that retiree medical benefits were for life
> provided the company chose not to terminate the plans,
> pursuant to clauses that preserved the company's right to
> terminate the plan under which those benefits are
> provided.' *Id.* (quoting *In re Unisys Corp. Retiree Med.
> Benefit ERISA Litig.*, 58 F.3d 896, 904 n.12 (3d Cir.
> 1995))." *Abbruscato v. Empire Blue Cross and Blue
> Shield*, 274 F. 3d 90, 99-100 (2nd Cir. 2001)

22.     Each summary plan description of the Debtors' Salaried Life Insurance

Plan contained in the employee handbooks issued over the years has contained a description of

the Continuing Life Insurance benefits and an explanation of the manner in which the Continuing

Life Insurance benefits were to be reduced upon or during the retirement of a retiree.  Pursuant to

the terms of the Debtors' Salaried Life Insurance Plan, the Continuing Life Insurance benefit

was, upon retirement or age 65, subject to reduction in the case of all of the Debtors' retirees

eligible for such benefit depending on when the retiree retired.  In addition to notice provided by

the summary plan descriptions, the Debtors were in the practice of notifying retirees of such

reductions when they occurred in the form of the Retiree Servicing Center Letters.

23.     In connection with their insolvency, following approval by the Employee

Benefits Plans Committee of Debtor's Board of Directors, the Debtors reduced to $10,000 the

maximum amount of the Continuing Life Insurance benefit that would be paid by the Debtors

(and subsequently by New GM) to the beneficiaries of a retiree eligible to receive such benefit

upon death (*i.e.*, those whose most recent date of hire (or adjusted service date) was prior to

January 1, 1993).  The reduction was effected by amendment of the Salaried Life Insurance Plan

made by the Employee Benefits Plans Committee of Debtor's Board of Directors on June 19,

2009, who had been expressly delegated by the Board of Directors the authority to amend the

Debtors' welfare benefits plans.

US_ACTIVE:\44020153\1\72240.0639

24.     Pursuant to the terms of the Debtors' Salaried Life Insurance Plan, upon attaining age 65, retirees were no longer required to make contributions to maintain their Continuing Life Insurance benefits.  Reduction of the maximum amount of the Continuing Life Insurance benefits has not changed this fact.

25.     Upon reduction of the Continuing Life Insurance benefit in connection with their insolvency, the Debtors provided retirees with the opportunity to supplement the reduced amount of their Continuing Life Insurance benefits by enrolling in a voluntary life insurance program through MetLife.  By virtue of the supplemental program, Mr. Kuechenmeister was fully eligible, at his cost, to continue to be covered by the life insurance benefit at the same level as prior to the reduction in his Continuing Life Insurance benefits.

**(B)     The Retiree Servicing Center Letter Does Not Create A New Contract With Mr. Kuechenmeister**

26.     In the Kuechenmeister Response, Mr. Kuechenmeister has not provided any evidence that contradicts the Debtors' common practice of advising participants of the Debtors' Salaried Life Insurance Plan of the Debtors' right to amend or terminate the Continuing Life Insurance benefits at any time.  Moreover, Mr. Kuechenmeister has not provided any evidence of an affirmative contractual obligation on the part of the Debtors separate from the terms of Debtors' Salaried Life Insurance Plan to permanently provide the same level of Continuing Life Insurance benefits specifically to Mr. Kuechenmeister.  The Retiree Servicing Center Letter refers to and explains a "Continuing Life Insurance" benefit, which appearing as a capitalized term explicitly relates to, and is one and the same with, the basic life insurance benefit provided to Debtors' retirees pursuant to Debtors' Salaried Life Insurance Plan.  Mr. Kuechenmeister should readily have recognized "Continuing Life Insurance" as a defined term of the Debtors' Salaried Life Insurance Plan, of which he would have been familiar by having

13

read, over the past 47 years or more, employee benefits handbooks and summary plan descriptions related to the Continuing Life Insurance.  Moreover, the Retiree Servicing Center Letter received by Mr. Kuechenmeister directly refers to the applicability of Debtors' Salaried Life Insurance Plan in prefacing eligibility for such Continuing Life Insurance benefit (which had been reduced) on Mr. Kuechenmeister's status as a "a retiree of General Motors with 10 or more years of participation in the Life and Disability Benefits Program."  Therefore, the Retiree Servicing Center Letter clearly indicated that the Continuing Life Insurance benefits were fully subject to the terms of the Debtors' Salaried Life Insurance Plan and, as such, could not have been subject only to the terms set forth on the single page of the Retiree Servicing Center Letter. The Retiree Servicing Center Letter could therefore not serve to have vested Mr. Kuechenmeister in any new life insurance obligations on the part of the Debtors.

27.    The Retiree Servicing Center Letter was not approved by the Board of Directors of GM at any time.  It was not an authorized amendment of the Debtors' Salaried Life Insurance Plan or modifications of the Continuing Life Insurance benefits.  The Retiree Servicing Center Letter sent to Mr. Kuechenmeister was merely a communication with Mr. Kuechenmeister with respect to a change in the benefit amounts of their Continuing Life Insurance pursuant to the terms of Debtors' Salaried Life Insurance Plan.

28.    The Retiree Servicing Center Letter was sent to Mr. Kuechenmeister after his retirement, during a period which he was no longer providing services to the Debtors, and therefore cannot reasonably be construed as an inducement for Mr. Kuechenmeister to provide new services to the Debtors, or to retire.  Indeed, Mr. Kuechenmeister never used the provision of permanent, unalterable welfare benefits as a form of consideration inducing retirement. Rather, even for employees who elected to participate in early retirement window programs

14

(consideration for which was typically in cash), retiree medical, life insurance and all other

welfare benefits would have been the same following retirement as for regular retirees.  Given

such treatment, there would be no reason to provide any separate communication to window

program participants with respect to their welfare benefits, such as a letter promising permanent

lifetime benefits.

29.    The Retiree Servicing Center Letter does not contain any language

establishing it as a new contract between Mr. Kuechenmeister and his former employer.  To

establish the Retiree Servicing Center Letter as such, under the standard of the Second Circuit,

Mr. Kuechenmeister "must first identify 'specific written language that is reasonably susceptible

to interpretation as a promise.'" *Devlin v. Empire Blue Cross and Blue Shield,* 274 F.3d 76, 103

(2nd Cir. 2001) (quoting *Joyce*, 171 F.3d at 134).

30.    The Second Circuit in *Devlin* discussed an example of language offering a

benefit that could have been susceptible to induce employees to perform without having been

negated by the employer's reservation of its right to amend or terminate the benefit (which

Empire's pre-1987 summary plan description had not done) and that is reasonably susceptible to

interpretation as a promise:

> Plaintiffs direct our attention to two sentences within the pre-1987
> [summary plan description]s. The first provides that 'retired
> employees, after completion of twenty years of full-time
> permanent service and at least age 55 will be insured.' J.A. at 522
> (emphasis added).   We believe that this statement can be
> reasonably read as promising such insurance so long as employees
> retire after age 55 and have provided full-time permanent service
> to Empire for at least twenty years.   This provision can be
> construed as an offer that specifies performance as the means of
> acceptance -- sometimes referred to as an offer for a unilateral
> contract -- and promises lifetime life insurance benefits upon
> performance. Therefore, by 'performing' (that is, working for at
> least twenty years until attaining the age of 55), the plaintiffs
> accepted this offer. Restatement (Second) of Contracts 45(1)

15

> (1981). Where the offeror did not explicitly reserve the power to
> revoke, such an offer cannot be revoked once the offeree has begun
> to perform. See id. 45 & cmt. d ('The beginning of performance
> . . . completes the manifestation of mutual assent and furnishes
> consideration.').    Therefore, Empire's reliance on its 1987
> [summary plan description], 'Your Handbook,' for its reservation
> of the right to modify the life insurance benefits is unavailing. We
> reject Empire's argument because after the plaintiffs began
> performance, pursuant to the pre-1987 [summary plan
> description]s, Empire was not free to revoke.  *Id*. at 84.

Contrary to the facts with respect to Empire's failure to reserve its right in pre-1987 summary

plan descriptions to amend or terminate the life insurance benefit, the Debtors have had a long-

term practice over at least the past 47 years, and most likely for an even longer period of time, to

provide explicit notice in each of their summary plan descriptions of their right to amend or

terminate life insurance benefits at any time.  Moreover, by the time that Mr. Kuechenmeister

had received the Retiree Servicing Center Letter in question, he had retired and could no longer

be induced to perform any services for the Debtors, nor be induced to retire a second time, and

so, the contents of the applicable Retiree Servicing Center Letter could not have been susceptible

to interpretation as a promise.

        31.    Though Mr. Kuechenmeister has not made any such argument or

suggestion, it cannot be said that Mr. Kuechenmeister relied on the qualified statement made in

the Retiree Servicing Center Letter to his detriment.  In order to prevail on a claim of promissory

estoppel under ERISA in the Second Circuit, Mr. Kuechenmeister must establish:  "(1) a

promise, (2) reliance on the promise, (3) injury caused by the reliance, and (4) an injustice if the

promise is not enforced."  *Aramony v. United Way Replacement Benefit Plan,* 191 F.3d 140, 151

(2d Cir. 1999) (quoting *Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 79 (2d Cir.

1996).  Additionally, "an ERISA plaintiff must 'adduce[…] not only facts sufficient to support

the four basic elements of promissory estoppel, but facts sufficient to [satisfy an] 'extraordinary

16

circumstances' requirement as well.'" *Aramony,* 191 F.3d at 151 (quoting *Devlin v. Transp. Comms. Int'l Union,* 173 F.3d 94, 102 (2d Cir. 1999)). The Second Circuit in *Devlin* cited that "*Schonholz* provides an example of such extraordinary circumstances, where the employer used promised severance benefits to induce the plaintiff to retire." *Devlin,* 274 F.3d at 86 (quoting *Schonholz,* 87 F.3d at 79-80).

32.     With respect to the Continuing Life Insurance Claims, there was no promise to provide permanent basic life insurance benefits at the same level where the Debtors had provided explicit notice to Mr. Kuechenmeister over the past 47 years or more, that they could amend or terminate the basic life insurance benefits at any time (*i.e.*, in a manner discussed by *Abbruscato*, *supra*). Because there was no promise of a permanent benefit, there could be no reliance on such promise. It has been demonstrated that the Retiree Servicing Center Letter itself did not create a separate obligation on the Debtors to provide a benefit separate from benefits offered under Debtors' Salaried Life Insurance Plan, and as such, the Retiree Servicing Center Letter in and of itself could not have created a promise nor could it have been susceptible to interpretation as a promise.

33.     Nor were there any facts that may separately support the existence of extraordinary circumstances in the case of either the Retiree Servicing Center Letter or the reduction in 2009 of the Continuing Life Insurance. Basic life insurance is a benefit that is commonly provided by employers on an unvested basis, and is accordingly assumed by most employees and retirees to be a benefit that could be lost at any time, absent an extraordinary circumstance, such as a separate, express contractual commitment. With respect to the Continuing Life Insurance Claims, Mr. Kuechenmeister has not suggested any extraordinary circumstances with respect to his right to Continuing Life Insurance, such as receiving it as an

17

inducement to enter into employment or to retire early.  No such extraordinary circumstance

could exist where the Debtors have clearly and unambiguously represented to their employees

and retirees over the past 47 years or more of their right to amend or terminate life insurance

benefits at any time.  Moreover, at the time that Mr. Kuechenmeister received the Retiree

Servicing Center Letter and at the time that the Debtors provided notice in June 2009 to Mr.

Kuechenmeister of the reduction in their Continuing Life Insurance benefits, Mr.

Kuechenmeister had already retired and could therefore neither have been induced to perform

(*i.e.*, in a manner discussed by *Devlin*, *supra*) or otherwise made to rely in any manner

constituting an extraordinary circumstance.

## II.    Ongoing Benefits Have Been Assumed by New GM

34.    On the Closing Date, New GM completed its purchase of certain assets in

accordance with the Master Purchase Agreement.  Pursuant to Section 6.17(e) of the Master

Purchase Agreement (*Assumption of Certain Parent Employee Benefit Plans and Policies*), New

GM assumed the plans specified in a disclosure schedule, and the Welfare Benefits Plans

(including Debtors' Salaried Life Insurance Plan) are set forth on that schedule.  New GM

assumed the obligation to provide the Welfare Benefits to the extent required to be provided

under the terms of the applicable Welfare Benefits Plan in effect on the Closing Date, including

both responsibility for all claims incurred prior to the Closing Date and all future claims properly

payable pursuant to the terms of the applicable Welfare Benefit Plan in effect when such claims

are incurred.  Therefore, the Debtors and the GUC Trust do not have any liability with respect to

Welfare Benefits (including the Continuing Life Insurance benefits) that have been assumed by

New GM, and Mr. Kuechenmeister has not provided any credible factual or legal basis to

suggest otherwise.

18

**The Kuechenmeister Response: Claim No. 17941**

35.      On February 14, 2011, a response was filed on behalf of Mr.

Kuechenmeister to the 175th Omnibus Objection at ECF No. 9239 (the "**Kuechenmeister**

**Response**").  The Kuechenmeister Response asserts that Mr. Kuechenmeister's life insurance

policy was promised to him for life, in writing.  He states that the Retiree Servicing Center Letter

"was used as an enticement to take early retirement," and that the objection to his claim is

"unjust and inequitable."  (*See* Proof of Claim No. 17941 at **Exhibit 2** hereto and the

Kuechenmeister Response at **Exhibit 3** hereto).

36.      Mr. Kuechenmeister does not provide any explanation for why the Retiree

Servicing Center Letter he submitted as additional support for Proof of Claim No. 17941 should

be read as ensuring the vesting of a benefit, rather than a mere acknowledgement by his former

employer of the reduction of a lifetime death benefit amount in accordance with the written

terms of the applicable life insurance plan then in effect and subject to the plan sponsor's

continuing right to change the terms of the life insurance plan, as discussed in more detail above.

In addition, the Retiree Servicing Letter plainly states: "This is not a guarantee of the coverage

amount."  Moreover, as previously noted, the Retiree Servicing Letter was sent to Mr.

Kuechenmeister after his retirement, and therefore cannot reasonably be construed as an

inducement for Mr. Kuechenmeister to retire.

37.      No additional documentation is provided in either the Welfare Benefits

Claims or the Kuechenmeister Response to support Mr. Kuechenmeister's opposition to the

reduction of his Welfare Benefits.  Further, the GUC Trust is not aware of any other

documentation or facts supporting the Welfare Benefits Claims.

38.      The Kuechenmeister Response does not provide any additional support for

the Welfare Benefits Claims.  For the reasons set out above, the GUC Trust respectfully submits

19

that the Kuechenmeister Response should be overruled, and the Welfare Benefits Claims should

be disallowed and expunged.

## Conclusion

39.    Because (i) ERISA recognizes that employers are free to amend or

terminate welfare benefits, (ii) the Debtors had explicitly reserved their right to amend, modify

or terminate the Welfare Benefits (including Continuing Life Insurance benefits) at any time, (iii)

the Retiree Servicing Center Letter submitted by Mr. Kuechenmeister does not establish any

contractual rights to vested Continuing Life Insurance benefits, and (iv) Mr. Kuechenmeister has

not provided evidence of any permanent contractual right to vested Welfare Benefits (including

Continuing Life Insurance benefits); the Debtors and the GUC Trust have no liability for the

Welfare Benefits Claims (including Continuing Life Insurance Claims).  The GUC Trust

reiterates that the Kuechenmeister Response has not provided any legal or factual support for the

Welfare Benefits Claims and the Continuing Life Insurance Claims, which cannot be afforded

prima facie validity under the Bankruptcy Code.  Accordingly, the Welfare Benefits Claims and

the Continuing Life Insurance Claims should be disallowed and expunged in their entirety.

US_ACTIVE:\44020153\1\72240.0639

WHEREFORE, for the reasons set forth above and in the Omnibus Objection,

the GUC Trust respectfully requests that the Court grant the relief requested in the Omnibus

Objection and such other and further relief as is just.

Dated: New York, New York
       June 5, 2012

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

21

## Exhibit 1

| Proof of Claim No. | Response Docket No. | Name | Total Claimed | Summary |
|---|---|---|---|---|
| 17941 | 9239 | Kuechenmeister, Timothy J. | $77,063.00 | Mr. Kuechenmeister's response asserts that his life insurance was promised to him for life, in writing, and provides a copy of a letter dated April 8, 2002 from "Retiree Servicing Center." Mr. Kuechenmeister's response notes that this letter was part of an early retirement package provided to him by General Motors Corporation, and asserts that the objection to his claim is unjust and inequitable. |

**<u>Exhibit 2</u>**

02488122

APS0655436179

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

Name of Debtor (Check Only One)                                    Case No
☑ Motors Liquidation Company (f/k/a General Motors Corporation)    09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)                                    09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)  09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc )      09-13558 (REG)

**Your Claim is Scheduled As Follows**

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item b 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503

Name of Creditor (the person or other entity to whom the debtor owes money or property)    TIMOTHY KUECHENMEISTER

Name and address where notices should be sent

TIMOTHY KUECHENMEISTER
17550 SE 81ST PARNASSUS CT
THE VILLAGES  FL 32162-48/2

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(If known)

Filed on _____

Telephone number
Email Address

Name and address where payment should be sent (if different from above)

FILED - 17941
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)

Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

*[Stamp: THE GARDEN CITY GROUP INC. OCT 30 2009]*

If an amount is identified above  you have a claim scheduled by one of the Debtors as shown (This scheduled amount of your claim may be an amendment to a previously scheduled amount) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor  you do not need to file this proof of claim form EXCEPT AS FOLLOWS If the amount shown is listed as DISPUTED UNLIQUIDATED or CONTINGENT  a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions  you need not file it again

**1 Amount of Claim as of Date Case Filed, June 1, 2009**    $ 77,063.00

If all or part of your claim is secured, complete item 4 below, however if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9), complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2 Basis for Claim**    Lost GM Provided Life Insurance
(See instruction #2 on reverse side )

**3 Last four digits of any number by which creditor identifies debtor**

**3a** Debtor may have scheduled account as _____
(See instruction #3a on reverse side )

**4 Secured Claim** (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

**Nature of property or right of setoff**  ☐ Real Estate  ☐ Motor Vehicle  ☐ Equipment  ☐ Other
Describe

Value of Property  $ _____  Annual Interest Rate ____ %

Amount of arrearage and other charges as of time case filed included in secured claim, if any  $ _____

Basis for perfection _____

Amount of Secured Claim  $ _____    Amount Unsecured  $ _____

**6 Credits** The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7 Documents** Attach redacted copies of any documents that support the claim  such as promissory notes  purchase orders  invoices  itemized statements of running accounts, contracts, judgments  mortgages and security agreements You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (See instruction 7 and definition of "redacted" on reverse side )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available  please explain in an attachment

**5 Amount of Claim Entitled to Priority under 11 U S C § 507(a)** If any portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages  salaries  or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business  whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal  family  or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(___)

Amount entitled to priority

$ _____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**Signature** The person filing this claim must sign it  Sign and print name and title  if any of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney if any

Date 10/21/09

*[signature: Timothy J Kuechenmeister]*

FOR COURT USE ONLY

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

Modified B10 (GCG) (12/08)

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc. are not authorized to provide you with any legal advice.*

### A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR

PLEASE SEND YOUR ORIGINAL, COMPLETED CLAIM FORM AS FOLLOWS. 1) BY MAIL THE GARDEN CITY GROUP INC ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, PO BOX 9386 DUBLIN OH 43017-4286. 11) BY HAND OR OVERNIGHT COURIER THE GARDEN CITY GROUP INC ATTN MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING 5151 BLAZER PARKWAY SUITE A DUBLIN OH 43017. PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT, SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK NEW YORK 10004 ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED

**THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5 00 PM (PREVAILING EASTERN TIME)**

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1 2009 You should select the debtor against which you are asserting your claim
**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case Please provide us with a valid email address A separate space is provided for the payment address if it differs from the notice address The creditor has a continuing obligation to keep the court informed of its current address See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

**1 Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing Follow the instructions concerning whether to complete items 4 and 5 Check the box if interest or other charges are included in the claim

**2 Basis for Claim**
State the type of debt or how it was incurred Examples include goods sold, money loaned services performed personal injury/wrongful death car loan mortgage note and credit card If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3 Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor

**4 Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured Skip this section if the claim is entirely unsecured (See DEFINITIONS below) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing

**5 Amount of Claim Entitled to Priority Under 11 U S C § 507(a)**
If any portion of your claim falls in one or more of the listed categories check the appropriate box(es) and state the amount entitled to priority (See DEFINITIONS below) A claim may be partly priority and partly non-priority For example, in some of the categories, the law limits the amount entitled to priority

For claims pursuant to 11 U S C § 503(b)(9) indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1 2009 the date of commencement of these cases (See DEFINITIONS below) Attach documentation supporting such claim

**6 Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt

**7 Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt You may also attach a summary You must also attach copies of documents that evidence perfection of any security interest You may also attach a summary FRBP 3001(c) and (d) If the claim is based on the delivery of health care goods or services, see instruction 2 Do not send original documents as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it FRBP 9011 If the claim is filed electronically FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature Print the name and title, if any of the creditor or other person authorized to file this claim State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices Attach a complete copy of any power of attorney Criminal penalties apply for making a false statement on a proof of claim

---

### DEFINITIONS

**Debtor**
A debtor is the person corporation or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company | |
| (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC | |
| (f/k/a Saturn LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation | |
| (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc | |
| (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (REG) |

**Creditor**
A creditor is the person corporation or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the Debtor on the date of the bankruptcy filing See 11 U S C § 101(5) A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing The creditor must file the form with The Garden City Group, Inc as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C § 506(a)**
A secured claim is one backed by a lien on property of the debtor The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors The amount of the secured claim cannot exceed the value of the property Any amount owed to the creditor in excess of the value of the property is an unsecured claim Examples of liens on property include a mortgage on real estate or a security interest in a car A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding In some states, a court judgment is a lien A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification or financial-account number all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage lien certificate of title, financing statement or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group Inc please provide a self-addressed stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims One or more of these entities may contact the creditor and offer to purchase the claim Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor These entities do not represent the bankruptcy court or the debtor The creditor has no obligation to sell its claim However if the creditor decides to sell its claim any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U S C § 101 et seq ) and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

**RETIREE SERVICING CENTER**
P.O. Box 5113
Southfield, Michigan  48086-5113
**1-800-828-9236**
1-800-872-8682
TELECOMMUNICATION DEVICE FOR THE DEAF

Apr 08, 2002

Timothy J Kuechenmeister
4335 Cypress Drive
Troy, MI  48085

Dear Timothy J Kuechenmeister:

As a retiree of General Motors with 10 or more years of participation in the Life and Disability Benefits Program, you are eligible for Continuing Life Insurance.

Our insurance records, as of the date of this letter, show the Continuing Life Insurance has now fully reduced to the ultimate amount of $87,063.00. This ultimate amount will remain in effect for the rest of your life and is provided by General Motors at no cost to you.

This is not a guarantee of the coverage amount.

**IMPORTANT:  YOU SHOULD KEEP THIS NOTICE WITH YOUR OTHER VALUABLE PAPERS.**

If you have any questions regarding this letter, you may call toll-free, **1-800-828-9236** (Telecommunication Device for the Deaf 1-800-872-8682), during normal business hours, or write to the address above.

Always include this Social Security number, 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, in all your correspondence.

**Retiree Servicing Center**

UA01

$87,063.00
-  10,000.00
Lost life insurance  $77,063.00

10/26/2009

# MetLife®

**GM Benefits & Services Center**
**PO Box 14406**
**Lexington, KY 40511-4406**
**1-888-543-3461/ TTY 1-888-688-2860**

10/21/2009

TIMOTHY KUECHENMEISTER
17550 SE 81ST PARNASSUS CT
THE VILLAGES, FL  32162

Re   Coverage Confirmation
         General Motors Corporation

Dear TIMOTHY KUECHENMEISTER

Below is a confirmation of your group life insurance coverage

| Coverage | Amount | Effective Date* |
|---|---|---|
| Basic Life | $10,000 00 | 8/1/2009 |
| Personal Accident- Employee | $100,000 00 | 5/1/2009 |
| Personal Accident- Spouse | $100,000 00 | 5/1/2009 |

*A May 1, 2009 effective date will be displayed for any coverage elections effective on or
before that date  For coverage changes made after May 1, 2009, the new election
effective date will be displayed

Any pending coverage amounts or dependent exceptions are not reflected above
**This letter is not a guarantee of coverage.**

General Motors reserves the right to amend, modify, suspend or terminate any of its
employee benefits plans or programs

If you have any questions, please contact us at 1-888-LIFEGM1 (1-888-543-3461),
Monday through Friday, between 7 30 a m  and 6 00 p m  Eastern Time

Sincerely,

**MetLife, Life Insurance Administrator**
**GM Benefits and Services Center**

E5, E5G and E5S


APS2080929652
02488122

PLEASE COMPLETE THE FOLLOWING:                    **BALLOT #992**

ITEM 1.  **Amount of General Unsecured Claim.**  For purposes of voting to accept or reject the Plan, the undersigned holds a General Unsecured Claim against the Debtor listed below in the amount set forth below.

| Claim Amount | $77,063 00 |
|---|---|
| Debtor | MOTORS LIQUIDATION COMPANY |

ITEM 2.  **Vote on the Plan.**  The undersigned holder of a Class 3 General Unsecured Claim in the amount set forth in Item 1 above hereby votes to:

Check one box:    ☑  Accept the Plan          01-12-11  A09:26  IN

                  ☐  Reject the Plan

ITEM 3.  **Acknowledgement and Certification.**  By signing this Ballot, the undersigned acknowledges that the undersigned has been provided with a copy of the Disclosure Statement, including all exhibits thereto.  The undersigned certifies that (i) it is the holder of the General Unsecured Claim identified in Item 1 above and (ii) it has full power and authority to vote to accept or reject the Plan.  The undersigned further acknowledges that the Debtors' solicitation of votes is subject to all terms and conditions set forth in the Disclosure Statement and the order of the Bankruptcy Court approving the Disclosure Statement and the procedures for the solicitation of votes to accept or reject the Plan contained therein.

Print or Type Name of Claimant:          _TIMOTHY  J  KUECHENMEISTER_

Social Security or Federal Tax I.D. No. of Claimant: _476 - 44 - 7542_

Signature:                               _Timothy J Kuechenmeister_

Name of Signatory (if different than claimant):    _____

If by Authorized Agent, Title of Agent:            _____

Street Address:                          _17550 SE 81st PARNASSUS CT_

City, State, and Zip Code:               _THE VILLAGES, FL 32162-4872_

Telephone Number:                        _352 - 259 - 0719_

E-mail Address:                          _KUECHEN@YAHOO.COM_

Date Completed:                          _01/04/2011_

*Please check* <u>one or both</u> *of the below boxes, if the above address is a change of address for the purpose(s) of:*

☐ future notice mailings; **AND/OR**  ☐ distributions

5

138 / Z5

APS2080929652
02488122

TIMOTHY KUECHENMEISTER
17550 SE 81ST PARNASSUS CT
THE VILLAGES, FL 32162-4872



# BUSINESS REPLY MAIL

FIRST-CLASS MAIL    PERMIT NO. 18    DUBLIN OH

POSTAGE WILL BE PAID BY ADDRESSEE

THE GARDEN CITY GROUP, INC.
ATTN: MOTORS LIQUIDATION CO. BALLOTING CENTER
PO BOX 9386
DUBLIN OH 43017-9957

NO POSTAGE
NECESSARY
IF MAILED
IN THE
UNITED STATES

**<u>Exhibit 3</u>**

Hearing Date and Time: March 1, 2011 at 9:45 a.m. EST

Timothy J. Kuechenmeister
17550 SE 81st Parnassus Ct.
The Villages, FL 32162-4872
(352)259-0714
kuechen@yahoo.com

Retired salaried employee of General Motors
with an unsecured claim for life insurance benefits
Claim No. 17941. Page 16, Exhibit A, Debtor's 175th Omnibus Objection to Claims

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
In re                                                        :        Chapter 11 Case No.
                                                             :
**MOTORS LIQUIDATION COMPANY, et al.,**                      :        **09-50026**
        **f/k/a General Motors Corp., et al.**               :
                                                             :
                    **Debtors.**                             :
-------------------------------------------------------------x

Response to the **NOTICE OF DEBTORS' 175TH OMNIBUS OBJECTION TO CLAIMS**,
dated January 26, 2011.

I object to this request by Motors Liquidation Co. and General Motors to avoid paying this
obligation. The life insurance policy, upon which this claim (#17941) is based, including
lifetime coverage and amount, was promised to me, in writing. This promise letter was used as
an enticement to take early retirement from General Motors Corporation. Their request to deny
this claim is unjust and inequitable.

I respectfully ask the Court to order that a reasonable percentage of my claim, to be determined
by the Court, be honored by Motors Liquidation Co. and General Motors.

Dated: The Villages, FL
        February 9, 2011
1 Attachment

                                    _Timothy J. Kuechenmeister_
                                    Timothy J. Kuechenmeister



## An Enrollment Guide
## to Your Salaried Health Care & Life Insurance
### in Retirement

**Contents**



TRANSITIONING YOUR
COVERAGE ....................2

YOUR ENROLLMENT
ROAD MAP....................4

ELIGIBLE DEPENDENTS..........6

RETIREE HEALTH
CARE BENEFITS ...............6

Medical ......................7

Extended Care
Coverage....................10

Dental........................10

Vision ......................11

Long Term Care..........12

LIFE INSURANCE................12

Congratulations on your retirement! As a GM salaried retiree, you are eligible for a benefits package that includes comprehensive health care and life insurance coverage. These programs also offer you the flexibility of choice and the ability to make periodic changes to your elections.

The enclosed Personal Fact Sheet (PFS) lists the benefit options—and their costs, if any, in which you are eligible to enroll at this time. In making your health care decisions, you should anticipate your family's needs for the entire year, since generally you won't be able to change your benefit elections until the next enrollment period. When you've made your decisions, you can enroll online or by calling a GM Benefits & Services Center Customer Service Associate. Changes to your life insurance coverage can be made at any time following retirement.

## Transitioning Your Coverage

| Plan | What Happens | What You Can Do | How |
|---|---|---|---|
| Medical | Your GM coverage may be continued with Corporation contributions | Generally, you may keep the same medical plan coverage or elect a new plan within 31 days of your retirement date. However, if you are eligible for Medicare and enrolled in a PPO, you must select a new plan. If you are eligible for Medicare and enroll in an HMO, you should verify that your plan coordinates with Medicare. | Enroll within 31 days at gmbenefits.com or by calling the GM Benefits & Services Center. |
| Extended Care Coverage (ECC) | Your GM coverage may be continued, subject to your continued payment of contributions. | You may continue or waive coverage. If you terminate coverage, you generally will not be able to elect ECC again in the future. | Enroll within 31 days at gmbenefits.com or by calling the GM Benefits & Services Center. |
| Special Benefit | If you are retired and enrolled in Medicare Part B, you may be eligible to receive a monthly non-taxable benefit to assist with the cost of Medicare Part B premiums. | After you enroll in Medicare Part B, call the GM Benefits & Services Center with your Medicare ID number. | The GM Benefits & Services Center will confirm your enrollment with the Center for Medicare and Medicaid Services. |
| Dental | Your GM coverage may be continued with Corporation contributions. | You may keep the same dental plan coverage or elect a new plan within 31 days of your retirement date. | Enroll within 31 days at gmbenefits.com or by calling the GM Benefits & Services Center. |
| Vision | Your GM coverage may be continued with Corporation contributions. | You may keep the same coverage or elect no coverage within 31 days of your retirement date. | Enroll within 31 days at gmbenefits.com or by calling the GM Benefits & Services Center. |
| Long Term Care | If you are enrolled, you can continue your Long Term Care Insurance. If you don't have coverage and wish to purchase it, you and your eligible family members may apply at any time by calling John Hancock. | Since your premiums will no longer be deducted from your paycheck, you should contact John Hancock directly to arrange for direct bill payments. | Call John Hancock at 1-800-200-6773 (TTY: 1-800-255-1808). |
| Health Care Spending Account (HCSA) | Your remaining contributions (if any) will be deducted from your final paycheck. | You may submit claims until March 31 of the next year for eligible HCSA expenses incurred through the end of the year in which you retired. | Claim forms are available at gmbenefits.com or by calling 1-800-489-4646. |
| Dependent Care Spending Account (DCSA) | Your contributions (if any) end the day before your retirement. Contributions end after final paycheck. | You may submit claims until March 31 of the next year for eligible DCSA expenses incurred through the end of the year in which you retired. | Claim forms are available at gmbenefits.com or by calling 1-800-489-4646. |
| Basic Life Insurance | If you were covered prior to retirement and your service date is prior to January 1, 1993, your Basic Life Insurance continues. A one-time reduction in your coverage amount will be applied upon retirement. (See your PFS for your new coverage amount.) | Generally, your coverage continues automatically. If contributions are required, you will be notified. | |
| Optional Life Insurance | If you were covered prior to retirement and your service date is prior to January 1, 2001, your coverage continues at the same coverage amount for which you were insured the day prior to retirement. You may not enroll in coverage or increase the amount of this coverage during retirement. | To maintain coverage, you continue to pay the full cost of any Optional Life Insurance through deductions from your monthly retirement check or by arranging for direct payments. You may cancel coverage or convert to an individual policy at any time. | To decrease or cancel coverage, call the GM Benefits & Services Center at 1-800-489-4646 at any time following your retirement. |
| Dependent Life Insurance | If you were covered prior to retirement, your coverage continues at the same coverage amount for which you were insured the day prior to retirement. You may not enroll in coverage or increase the amount of this coverage during retirement. | To maintain coverage, you continue to pay the full cost of any Dependent Life Insurance through deductions from your monthly retirement check or by arranging for direct payments. You may cancel coverage or convert to an individual policy at any time. | To decrease or cancel coverage, call the GM Benefits & Services Center at 1-800-489-4646 at any time following your retirement. |



**RETIREE SERVICING CENTER**
P.O. Box 5113
Southfield, Michigan 48086-5113
**1-800-828-9236**
1-800-872-8682
TELECOMMUNICATION DEVICE FOR THE DEAF

Apr 08, 2002

Timothy J Kuechenmeister
4335 Cypress Drive
Troy, MI 48085

Dear Timothy J Kuechenmeister:

As a retiree of General Motors with 10 or more years of participation in the Life and Disability Benefits Program, you are eligible for Continuing Life Insurance.

Our insurance records, as of the date of this letter, show the Continuing Life Insurance has now fully reduced to the ultimate amount of $87,063.00. This ultimate amount will remain in effect for the rest of your life and is provided by General Motors at no cost to you.

This is not a guarantee of the coverage amount.

**IMPORTANT: YOU SHOULD KEEP THIS NOTICE WITH YOUR OTHER VALUABLE PAPERS.**

If you have any questions regarding this letter, you may call toll-free, **1-800-828-9236** (Telecommunication Device for the Deaf 1-800-872-8682), during normal business hours, or write to the address above.

Always include this Social Security number, **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**, in all your correspondence.

**Retiree Servicing Center**

UA01