HEARING DATE AND TIME: June 28, 2012 at 9:45 a.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
                                                            :
**In re**                                 :   **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.*, :   **09-50026 (REG)**
    f/k/a General Motors Corp., *et al.*  :
                                          :
                    Debtors.              :   (Jointly Administered)
                                          :
------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY**
**GUC TRUST'S REPLY TO J. MICHAEL LOSH'S RESPONSE**
**TO THE 229TH OMNIBUS OBJECTION TO CLAIMS (SUPPLEMENTAL**
**EXECUTIVE RETIREMENT CLAIMS AND WELFARE BENEFITS CLAIMS**
**OF RETIRED AND FORMER SALARIED AND EXECUTIVE EMPLOYEES)**

# TABLE OF CONTENTS

**Page**

Preliminary Statement .................................................................................................................. 1

The Losh Claim ............................................................................................................................ 3

The Debtors' Reduction of Mr. Losh's Retirement Benefits
Was In Accordance With Applicable Plan And Contractual Documentation ............................... 4

The Losh Claim Should Be Disallowed and Expunged ................................................................ 6

Conclusion .................................................................................................................................... 8

US_ACTIVE:\43954533\6\72240.0639

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Oneida, Ltd.*,
  400 B.R. 384 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC),
  2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) .................................................................................6

**STATUTES**

29 U.S.C. §§ 1003, 1051, 1081, 1101..............................................................................................5

Employee Retirement Income Security Act of 1974 ......................................................................5

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**")[1] in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or modified from time to time), files this reply (the "**Reply**") to the Losh Response (defined below) interposed to the 229th Omnibus Objections to Claims (Supplemental Executive Retirement Benefits Claims and Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) (ECF No. 10304) (the "**Omnibus Objection**"), and respectfully represents:

**Preliminary Statement**

        1.     The Omnibus Objection seeks the disallowance and expungement of certain supplemental retirement benefits claims of retired executive employees of the Debtors, on the basis that such claims relate to unvested supplemental retirement benefits that were capable of being reduced by the Debtors pursuant to the terms of the plan documents governing such supplemental retirement benefits, and were reduced in accordance with such governing plan documents, and therefore should be disallowed and expunged from the claims register.

        2.     The Debtors filed the Omnibus Objection on May 20, 2011, and a hearing on the Omnibus Objection was scheduled for June 22, 2011. Responses to the Omnibus Objection were due by June 15, 2011. The response listed on **Exhibit 1** hereto and described further herein was filed with respect to the Omnibus Objection on June 8, 2011 by J. Michael Losh (the "**Losh Response**") relating to Proof of Claim 19563 (the "**Losh Claim**"). The Debtors

---

[1] The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc.

adjourned the hearing on the Omnibus Objection with respect to the Losh Claim so that they could review its substance in further detail.

3. After reviewing the Losh Response, the GUC Trust[2] respectfully reiterates the Debtors' position in the Omnibus Objection and submits that Mr. Losh has failed to provide sufficient legal or factual support for the Losh Claim, and as a result the Losh Claim should be disallowed and expunged.

4. The Losh Claim asserts a general unsecured claim in the amount of $6,190,524 for retirement benefits provided pursuant to an agreement between the Debtors and Mr. Losh dated on or around May 1, 2000, which was executed in conjunction with Mr. Losh's retirement from General Motors Corporation ("**GM**"), a copy of which was filed by Mr. Losh at ECF No. 10409 ("**Retirement Agreement**").[3] Following the filing of the Omnibus Objection, Mr. Losh filed the Losh Response. The Losh Response attempts to distinguish the Losh Claim from other supplemental retirement benefits claims objected to in the Omnibus Objection by the Debtors by simply arguing that the Losh Claim relates to an additional retirement benefit (the "**Additional Payment**") that is provided for in the Retirement Agreement, and which should be considered separately from other supplemental retirement benefits claims.

5. Crucially, the Losh Response fails to address GM's explicit right in the Retirement Agreement itself to reduce the Additional Payment to the same extent that benefits may be reduced under the GM Supplemental Executive Retirement Plan ("**SERP**").

---

[2] While the Omnibus Objection was filed by the Debtors, this Reply is being filed by the GUC Trust because, pursuant to the Plan, the GUC Trust now has the exclusive authority to prosecute and resolve objections to Disputed General Unsecured Claims (as defined in the Plan).

[3] Given the confidential nature of the Retirement Agreement, and upon request by both Debtors' counsel and counsel to Mr. Losh, the Court placed the Retirement Agreement under seal (ECF Nos. 10442 and 10443).

2

6.  As a result of the Debtors' financial distress, benefits under the SERP were uniformly reduced for all beneficiaries of the SERP. The Retirement Agreement specifically provides that Mr. Losh's Additional Payment is subject to and governed by the same terms and conditions as the SERP. As a result of the reduction of benefits being provided to all beneficiaries of the SERP, Mr. Losh's retirement benefits were reduced to $256,082 annually in the aggregate, and the obligation to pay such reduced retirement benefits was assumed by New GM pursuant to the terms of the Master Purchase Agreement.

7.  The Debtors and the GUC Trust are, of course, sympathetic with the impact that the financial problems of the Debtors have had on Mr. Losh's supplemental retirement benefits. However, in view of the Debtors' liquidation, and of the Debtors' contractual right to reduce such supplemental retirement benefits, there should be no other outcome other than the Losh Claim being disallowed and expunged.

**The Losh Claim**

8.  The Losh Claim asserts a claim pursuant to Paragraph 3 of the Retirement Agreement for the difference between $600,000 annually for Mr. Losh's life expectancy (stated to be 13 years), and the reduced aggregate annual amount received by Mr. Losh after reductions effected by GM as a result of its financial distress occurring on May 1, 2009 and August 1, 2009 (such reduced amount equaling to $256,082 annually). Paragraph 3 of the Retirement Agreement provides that:

> Following Mr. Losh's retirement on August 1, 2000 and provided he continues to make all applicable Part B contributions up to his date of retirement (and makes no withdrawals), Mr. Losh will receive payment under: (1) the GM Salaried Retirement Program; (2) the Benefit Equalization Plan; (3) the Supplemental Executive Retirement Program (Regular formula); and (4) the additional payment from GM (the Additional Payment[4]) commencing August 2000. The total of 1, 2,

---

[4] The benefits formula provided under the Retirement Agreement includes four components: (1) qualified defined benefit pension benefits provided under the General Motors Retirement Program for Salaried Employees, (2)

3

3 and 4 will be defined as his Aggregate Retirement Benefits. The Aggregate Retirement Benefits will be $50,000 monthly ($600,000 annually). The Aggregate Retirement Benefits will be reduced by the surviving spouse deduction calculated on the basis set forth in the General Motors Retirement Program for Salaried Employees.

9. During the period from his retirement until May 1, 2009 (when the reduction of the by the Debtors first occurred), Mr. Losh had been receiving aggregate retirement benefit payments of $572,242 annually, representing the $600,000 amount referred to in the Retirement Agreement, less the reduction for the surviving spouse deduction in accordance with the terms of the Retirement Agreement.[5]

### The Debtors' Reduction of Mr. Losh's Retirement Benefits Was In Accordance With Applicable Plan And Contractual Documentation

10. Under the SERP plan document as in effect at the time of Mr. Losh's retirement and in all amended plan documents subsequently thereafter, GM reserved the right to reduce any SERP benefits at any time and in its sole discretion. Article IV, Section I(c) of the SERP plan document, as in effect on the date of Mr. Losh's retirement, provides that:

> The Corporation may, from time-to-time and in its sole discretion, adjust the amount of an executive's credited service used to determine the benefits under this Plan, or <u>the amount of benefits payable to an executive under this Plan</u> (emphasis added).

---

benefits under the GM Benefits Equalization Plan, (3) Regular Formula Benefits under the SERP, and (4) the Additional Payment. Of the four, (1) can never change (except in the event that the applicable plan is terminated and obligations thereunder are assumed by the PBGC) because accrued benefits are vested. The amount of the Additional Payment, if any, is therefore dependent on the amounts of (2) and (3), and the Additional Payment would change if there is any change in the amount of (2) or (3).

[5] The Losh Claim does not allege any impropriety in the calculation of the $572,242 aggregate retirement benefit payments actually received by Mr. Losh annually before 2009 and does not include any claim for such $27,758 annual difference for the period before 2009. The Retirement Agreement explicitly provides for a reduction in the aggregate annual amount of $600,000 for a surviving spouse deduction.

4

11.    Paragraph 4 of the Retirement Agreement clearly gives GM the option to reduce the Additional Payment to Mr. Losh to the same extent that benefits may be reduced under the SERP:

> It is further understood that the [employee benefits] committee has the same right to amend, modify, suspend, <u>reduce</u>, or eliminate the Benefit Equalization Plan and/or the Additional Payment as the GM Board of Directors has with respect to the Alternative Formula Benefit under the General Motors Supplemental Executive Retirement Program and that nothing contained in this Agreement in any way modifies this right.  (emphasis added).

12.    Given that, by the express terms of Paragraph 4, the Additional Payment provided for under the Retirement Agreement is subject to amendment, modification, suspension, reduction, or elimination in accordance with the SERP, it follows that no amounts payable with respect to the Additional Payment were at any time permanently vested and nonforfeitable.

13.    The Retirement Agreement and the SERP are unfunded arrangements providing supplemental pension benefits in excess of the amounts permitted under tax-qualified defined contribution and defined benefit pension plans,[6] and accordingly, the Retirement Agreement and the SERP are exempt from vesting, fiduciary, and many other substantive requirements of the Employee Retirement Income Security Act of 1974, as amended ("**ERISA**") (29 U.S.C. §§ 1003, 1051, 1081, 1101).  Participants in the SERP are not entitled to statutory vesting (*i.e.*, a nonforfeitable right) of their accrued benefits under the respective plan, and such

---

[6] Article I, Section I of the SERP plan document provides: "It is intended that this Plan, in relevant part, qualify as an 'excess benefit plan' under Section 3(36) of ERISA and, in relevant part, as a plan 'providing deferred compensation for a select group of management or highly compensated employees' under Section 201(2) of ERISA, commonly called a 'top hat' plan."  The BEP plan document includes a similar provision as included in the SERP plan document, which provides, "It is intended that this Plan, in relevant part, qualify as an 'excess benefit plan' under Section 3(36) of ERISA and, in relevant part, as a plan 'providing deferred compensation for a select group of management or highly compensated employees' under Section 201(2) of ERISA."

5

unvested benefits are subject to forfeiture in accordance with the contractual terms of the respective plan document.

14. As a contractual arrangement covering one individual, the Retirement Agreement and the related Additional Payment are neither subject to, nor protected by, ERISA or any other statutory authority, and as such, Mr. Losh does not have a permanently vested, nonforfeitable right to the Additional Payment except as provided in accordance with the contractual terms of the Retirement Agreement.

15. Neither the Losh Claim nor the Losh Response provide any reasons or evidence establishing Mr. Losh's rights to permanently vested and nonforfeitable supplemental retirement benefits under any basis, whether pursuant to the Retirement Agreement or otherwise. Nor does the Losh Claim or the Losh Response adequately challenge the Debtors' ability to reduce the benefit without creating a claim.

## The Losh Claim Should Be Disallowed and Expunged

16. Mr. Losh has failed to demonstrate the validity of the Losh Claim and, thus, the Losh Claim should be disallowed and expunged. *See, e.g.*, *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (claimant has burden to demonstrate validity of claim when objection is asserted refuting claim's essential allegations).

17. Notwithstanding that Mr. Losh has a right under the Retirement Agreement to an Additional Payment, the Losh Claim is indistinguishable from other claims asserted against the Debtors based on the reduction of benefits under the SERP because the Additional Payment can be reduced to the same extent as benefits under the SERP, and was in fact reduced as discussed above. Like those other claims, the Losh Claim should be disallowed.

6

18. The Losh Response does not contradict the conclusions made by the Debtors in the Omnibus Objection of their right to modify, without further liability, Mr. Losh's supplemental retirement benefits. The Losh Response fails to address the explicit right set forth in Paragraph 4 of the Retirement Agreement of GM to reduce the Additional Payment to the same extent as benefits under the SERP, which is GM's right to reduce benefits at any time and in its sole discretion.

19. The Debtors reduced Mr. Losh's supplemental retirement benefits (including his SERP benefit and his Additional Payment)[7] at the same time as for all other participants pursuant to the same formula as applied to all similarly situated participants.[8] A spreadsheet provided by New GM and made a part of the Losh Claim indicates that, prior to Debtors' reduction of Mr. Losh's supplemental retirement benefits in 2009, Mr. Losh was entitled to an annual benefit of $64,079 under the GM Salaried Retirement Program[9] (a qualified defined benefit pension plan) and $508,163 in supplemental retirement benefits (aggregate payments of $572,242 annually). Mr. Losh's reduced retirement benefits are currently $256,082 annually in the aggregate, and the obligation to pay such reduced retirement benefits have been assumed under retirement plans sponsored by New GM pursuant to the terms of the Master Purchase Agreement.

---

[7] GM combined its several supplemental retirement benefit plans (including the SERP and the General Motors Benefit Equalization Plan (the "**BEP**") into a single plan referred to as the General Motors Executive Retirement Plan (the "**ERP**") as of January 1, 2007 (after the date of Mr. Losh's retirement from GM).

[8] As of May 1, 2009, the ERP Benefits of Retirees entitled to annual ERP Benefits (in combination with qualified pension benefits) equal to or less than $100,000 had been reduced to the level of 90% of what they had been receiving prior to such reduction. As of August 1, 2009, Debtors further reduced the ERP benefits of then current retirees entitled to annual ERP Benefits (in combination with qualified pension benefits) in excess of $100,000 to the level of 1/3 of what they had been receiving prior to such reduction.

[9] Alternatively referred to as the General Motors Retirement Program for Salaried Employees.

7

20. Accordingly, the Debtors have no obligation with respect to the Losh Claim. As stated in the Omnibus Objection, such claim relates to an expectation for benefits that were not vested and for which the Debtors have no obligation. The Losh Claim should therefore be disallowed and expunged in its entirety.

**Conclusion**

21. Because (i) ERISA recognizes that employers are free to adjust or reduce supplemental executive retirement benefits, which includes the Additional Payment, (ii) the Debtors had explicitly reserved their right to adjust, modify, reduce, or eliminate the Additional Payment the same as for any benefits provided under the SERP, (iii) the Retirement Agreement does not otherwise establish Mr. Losh's contractual rights to permanently vested and nonforfeitable supplemental executive retirement benefits under any basis, and (iv) Mr. Losh has not provided evidence of any permanent contractual right to permanently vested and nonforfeitable supplemental executive retirement benefits, the Debtors and the GUC Trust have no liability for the Losh Claim. The GUC Trust reiterates that the Losh Response has not provided any legal or factual support for the Losh Claim and cannot be afforded prima facie validity under the Bankruptcy Code. Accordingly, the Losh Claim should be disallowed and expunged in its entirety.

8

WHEREFORE, for the reasons set forth above and in the Omnibus Objection, the GUC Trust respectfully requests that the Court grant the relief requested in the Omnibus Objection and such other and further relief as is just.

Dated: New York, New York
June 6, 2012

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

9

# Annex 1

| 229th Omnibus Objection to Claims (Welfare Benefits Claims of Retired and Former Salaried and Executive Employees) | | | | | |
|---|---|---|---|---|---|
| No. | Proof of Claim No. | Response Docket No. | Name | Total Claimed | Summary |
| 1. | 19563 | 7074 | J. Michael Losh | $6,190,524 (U) | Mr. Losh's response asserts that he was entitled to an additional amount of supplemental executive retirement benefits pursuant to the terms of a retirement agreement with General Motors, dated May 1, 2000. |