2222470

PHYSICAL DOCUMENT

ENV_ENFORCEMENT-n2222470-v1

TOWN OF SALINA'S REQUEST FOR REVISIONS TO THE PROPOSED SETTLEMENT AGREEMENT

| | |
|---|---|
| **Author:** | Casey, Pat |
| **Document Type:** | LETTER |
| **LSA(s):** | |
| **Co-Counsel:** | ATENENBA;KLYSKOWS |
| **Counsel LSA(s):** | ICOVINGT |
| **Distribution List:** | ENRD, EESCaseManagement (ENRD); Lattin, Sue (ENRD); Rose, Robert (ENRD); Berman, Lisa (ENRD);Casey, Patrick (ENRD);Tenenbaum, Alan (ENRD);Lyskowski, Kevin (ENRD);Covington, Imogene (ENRD) |
| **Fileroom:** | EES - 6th Floor |
| **DJ#:** | 90-11-3-09754 |
| **Case Name:** | IN RE: MOTORS LIQUIDATION CO. F/K/A GENERAL MOTORS CORPORATION (LEAD CASE) |
| **Court:** | NY Bankr. S.D. N.Y.; 2nd Cir. |
| **Notes:** | |
| **Double-Sided:** | |
| **Received Date:** | 6/4/2012 |
| **Urgent:** | |
| **Oversize:** | |
| **Bound Document:** | |

US 00476



**Town of Salina**
**OFFICE OF THE TOWN SUPERVISOR**
Salina Town Hall
201 School Road – Room 112
Liverpool, NY 13088
(315) 457-6661
Fax: (315) 457-4476
www.salina.ny.us
supervisor@salina.ny.us

Mark A. Nicotra
Town Supervisor
Dina M. DeSocio
Secretary to the Supervisor

Colleen Gunnip
Deputy Town Supervisor

May 30, 2012

***Via U.S. Mail and Electronic Mail***

United States Department of Justice
c/o Ignacia S. Moreno, Assistant Attorney General
Environmental and Natural Resources Division
PO Box 7611
U.S. Department of Justice
Washington, DC  20044-7611

RE: In re: Motors Liquidation Corp., et al., D.J. Ref. 90-11-3-09754
Town of Salina, New York Comments on:
1) Onondaga Non-Owned Site Consent Decree and Settlement Agreement;
2) Lower Ley Creek Non-Owned Site Consent Decree and Settlement Agreement; 3) Stipulation and Agreed Order between the GUC Trust and the United States of     America Involving Offset of Obligations by the Debtors To EPA Under the Lower Ley Creek Consent Decree and Settlement Agreement

To the U.S. Department of Justice:

Pursuant to the notice published in the Federal Register on May 7, 2012, the Town of Salina (the "Town") requests that the specific revisions outlined below be made to the proposed Settlement Agreements referenced above.  In addition to the comments provided herein, the Town supports and incorporates those comments relating to the Debtors' liability for the presence of PCB contamination in the entirety of Ley Creek and its contribution to the contaminated state of Onondaga Lake as submitted to the U.S. Department of Justice (the "DOJ") by the County of Onondaga (the "County") in its response to the published notice.

The proposed Consent Decrees and Settlement Agreements violate the purposes set forth in the Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. § 6901 *et seq.*, as enacted in 1980 ("CERCLA"), to "promote the timely cleanup of hazardous wastes sites and to ensure that the costs of such cleanups [are] borne by those responsible for the contamination." (emphasis added); *See Burlington Northern & Santa Fe Ry. Co. v. United States*, 556 U.S. 599, 129 S.Ct. 1870, 1874 (2009).  CERCLA mandates that consent decrees and settlement agreements by

1

corr
90-11-3-09754
US 00477

reviewed to determine whether they are fair, reasonable, and consistent with its statutory objectives. *See United States v. General Electric*, 460 F. Supp.2d 395, 401 (N.D.N.Y. 2006). A primary objective of CERCLA is to substantively and fairly allocate responsibility amongst those parties determined to be liable for the contamination. *Id.generally.*

The United States has failed to provide any opportunity for the Town or other PRPs to participate in the negotiation of the proposed Consent Decrees and Settlement Agreements that address liabilities of the Debtors regarding their historical contamination of our community. In sum, DOJ proposes a settlement that fails to provide any evidence of how it was reached, despite the Settlements Agreements substantively impacting the rights and obligations of other PRPs named by EPA and DOJ to both the Lower Ley Creek Sub site and the Onondaga Lake Superfund Site. The proposed Settlement Agreements fail to provide even an unsupported estimate of the total cost of cleanup or an assessment of the Debtors' comparative fault to any of the sub sites. With no evidence of how DOJ and EPA estimated the damages by which it calculated this settlement, the fairness and reasonableness of the Consent Decrees and Settlement Agreements cannot be measured as required by CERCLA. *See United States v. Montrose Chemical Corp. of California*, 50 F.3d 741,746 (1995). Pursuant to Section 122 of CERCLA, the United States is thus required to fully disclose to the public, as well as to the Court, sufficient information to permit the public and the Court to determine whether all of the circumstances to the settlement between the parties satisfies CERCLA's mandates.

Unfortunately, the Debtors have a long history of contaminating portions of the Town of Salina. In addition to the improper releases of PCBs to Ley Creek and ultimately Onondaga Lake (as detailed in the County's comment letter), the Debtors' prior industrial activities have contributed overwhelmingly to the hazardous condition of the Salina Landfill Sub site. The Debtors' historical manufacturing at the former Inland Fisher Guide facility (the "IFG Site") located in the Town of Salina along the banks of Ley Creek included plating; buffing; forming and finishing metal automobile parts; junction moldings; painting; and assembling plastic body and trim components for automobiles. According to EPA and NYSDEC, between 1962 and 1973, the Debtors disposed PCBs and PCB-related hazardous wastes at the Salina Landfill Sub site including approximately 640 tons of paint sludge; 22 tons of waste paint thinner and paint reducer; unknown quantities of boiler ash and buffing sludge; and approximately 30 pounds of unadulterated PCBs.

There is no dispute that the Debtors are a party, who by contract, agreement or otherwise, arranged for the disposal of hazardous substances at the Salina Landfill Sub site. A party qualifies as a PRP on an arranger basis under CERCLA when it "takes intentional steps to dispose of a hazardous substance." *See Burlington Northern and Santa Fe Railroad Company v. United States*, 129 Sup.Ct. 1870, 1879 (2009). Although EPA and NYSDEC acknowledge the Debtors' significant role as PRPs to both the Salina Landfill and Lower Ley Creek Subsides, it has not afforded the Town the opportunity to participate in the negotiation of the Settlement Agreements to ensure that the Town's future cost recovery efforts are not jeopardized by the creation of "orphan share" complications.

In light of these foregoing concerns, the Town requests that the following comments be addressed, and the suggested revisions completed, to ensure that the Consent Decrees and Settlement Agreements provide a fair and statutorily compliant resolution, as well as ensure that the Town's future cost recovery efforts relating to the Salina Landfill Sub site are not adversely impacted.

2

US 00478

A.   **The Onondaga Non-Owned Site Consent Decree and Settlement Agreement**

The Town requests that specific revisions be made to the Onondaga Non-Owned Site Consent Decree and Settlement Agreement (the "Onondaga Settlement Agreement"), as follows:

1. The claims being settled with respect to the "Settled Onondaga Subsides" include EPA's claims for unreimbursed past and future oversight costs with respect to the Salina Landfill. Pursuant to paragraph 4(a) of the Onondaga Settlement Agreement, the United States, on behalf of EPA, shall have an allowed General Unsecured Claim in the amount of $113,248.00 for those costs at the Salina Landfill Sub site of the Onondaga Lake Site (the "EPA Landfill Claim").

2. The Town has never been provided with any information or documents supporting the amount of that claim. The Town requests that the Court require the GUC Trust and EPA to provide that documentation prior to the Court approving the Onondaga Settlement Stipulation.

3. The Town objects to paragraph 12 that provides: "Only the amount of cash received by EPA (and net cash received upon sale of any non-cash distributions) ....shall reduce the liability of non-settling potentially responsible parties at each applicable subside of the Onondaga Lake Site...." While the Stipulation acknowledges that the post-effective date Debtors are responsible for the full amount of the $113, 248.00 in costs, this provision shifts the burden of paying for the majority of the Debtor's EPA administrative oversight costs to the Town and other potentially responsible parties ("PRPs") without justification. By way of example, if the ultimate cash received on account of the general unsecured distribution equals payment of approximately 30% of that EPA Landfill Claim, the Town's potentially liability has been increased by $79,273.60 as a result of the Onondaga Settlement Agreement. Because EPA has voluntarily chosen to enter into the Onondaga Settlement Agreement and thereby created this "orphan share" deficiency, EPA should be precluded from seeking to recover that deficiency from the Town or any other PRPs in any future proceedings.

4. The Town also objects to the vague and ambiguous nature of paragraph 22 of the proposed Onondaga Settlement Agreement in that it does not expressly carve out the Town's claims for the Salina Landfill and Lower Ley Creek Subsides from the contribution protection being afforded to the GUC Trust and post-effective date Debtors. The Town's claims are independent of EPA's claims, and relate to the response and remedial costs the Town has incurred in addressing contamination caused by the Initial Debtors and/or the Debtors. As a result, the Town requests that the third sentence of Paragraph 22 be revised as follows to expressly exempt the Town's claims from the contribution protection being provided by EPA:

> The "matters addressed" in the Onondaga Settlement Agreement do not include . . . (ii) claims against <u>MLC, the Initial Debtors, the Debtor and/or the GUC Trust</u> for past, <u>present and future</u> response costs incurred by potentially responsible parties<u>, including but not limited to those claims asserted by the Town of Salina regarding the Salina Landfill and Lower Ley Creek Subsides against MLC, the Initial Debtors, the Debtors and/or the GUC Trust</u> prior to the date of lodging this Settlement Agreement with the Bankruptcy Court and included in proofs of claim filed in any the

3

Bankruptcy Cases by potentially responsible parties, <u>including the Town of Salina</u>, with respect to the Settled Onondaga Subsides; . . .

It is imperative that this additional language be included in Paragraph 22 to ensure that the proposed Onondaga Settlement Agreement does not impair the Town of Salina's ability to pursue its claims against MLC and the Initial Debtors as they relate to the Salina Landfill and Lower Ley Creek Subsides.

5. The Town also requests that the Onondaga Settlement Stipulation be revised to clarify that the amounts outlined in the Onondaga Settlement Stipulation are not binding on the Town in the event EPA and/or the DEC ever seek to impose liability for the remediation and cost recovery efforts regarding the Settled Onondaga Subsides. The Onondaga Settlement Stipulation should therefore be revised to include the following language:

> "This Stipulation is without prejudice to the Town of Salina and other potentially responsible parties to dispute the amounts and allocation of environmental liabilities in any proceedings, whether in these bankruptcy cases or in any other appropriate forum."

**B.    Lower Ley Creek Non-Owned Site Consent Decree and Settlement Agreement**

The Town requests that specific revisions be made to the proposed Lower Ley Creek Non-Owned Site Consent Decree and Settlement Agreement (the "Lower Ley Creek Settlement Agreement"), as follows:

1. The claims being settled with respect to the "Lower Ley Creek Site" include the claim of the United States of America, on behalf of the EPA which is being allowed as a general unsecured claim in the amount of $38,344,177.00 ("EPA's Lower Ley Creek Claim"). New York State, on behalf of the Department of Environmental Conservation (the "DEC") will have an Allowed General Unsecured Claim in the amount of $859,257.00 (the "NYS Lower Ley Creek Claim").

2. There is no information disclosing how the amount of those claims were calculated, or exactly what those amounts represent, whether past, present or future remediation costs, administrative oversight costs, or other fees. The Stipulation merely provides the treatment of liabilities provided for therein "represents a compromise of the positions of the Parties and is entered into solely for purposes of this settlement." It is simply impossible for the Town to assess the Lower Ley Creek Settlement Agreement without information regarding the underlying claims. For example, if EPA originally sought to recover on its Lower Ley Creek Claim in the amount of $90,000,000.00, a settlement for $38,344,177.00 would be objectionable. If, however, EPA originally sought to recover $40,000,000.00 on its Lower Ley Creek Claim, a settlement for $38,344,177.00 would be recommended. The Town has never been provided with information or documents supporting the amount of those claims. The Town requests that the Court require the GUC Trust, EPA and DEC provide documentation substantiating the claims being settled prior to the Court approving the Lower Ley Creek Settlement Agreement.

3. The Town objects to paragraph 11 that provides: "Only the amount of cash received by EPA (and net cash received upon sale of any non-cash distributions) ....shall reduce the

4

liability of non-settling potentially responsible parties for that site by the amount of the credit." While the Stipulation acknowledges that the post effective date Debtors are responsible for the full amount of the $38,344.177.00 in costs, this provision shifts the burden of paying for the majority of the Debtor's liability to the Town and other PRPs without justification. For example, the ultimate cash received on account of the general unsecured claims is approximately 30% of the claims; the Town's potentially liability has been increased by $26,840,923.00 as a result of the Lower Ley Creek Settlement Agreement. Because EPA and DEC have voluntarily chosen to enter into this agreement and thereby created this "orphan share" deficiency, EPA should be precluded from seeking to recover that deficiency from the Town or any other PRPs. The Town is already suffering from the tremendous financial burden resulting from the remediation costs from the Town of Salina Landfill and should not be further burdened as a result of the settlement.

4. The Town also objects to the vague and ambiguous nature of Paragraph 22 of the proposed Consent Decree in that it does not expressly carve out the Town's claims for the Salina Landfill and Lower Ley Creek Subsides from the contribution protection being afforded to the GUC Trust and post-effective date Debtors. The Town's claims are independent of EPA's claims, and relate to the response and remedial costs the Town has incurred in addressing contamination caused by the Initial Debtors and/or the Debtors. As a result, the Town requests that the second and third sentences of Paragraph 22 be revised as follows to expressly exempt the Town's claims from the contribution protection being provided by EPA:

> Subject to the last sentence of this Paragraph, the "matters addressed" in this Consent Decree and Settlement Agreement, as that phrase is used in Section 113(f)(2) of CERCLA, 42 U.S.C. § 9613(f)(2), include, without limitation, claims by EPA, NYSDEC, or potentially responsible parties for response costs at or in connection with the Lower Ley Creek <u>Sub site, including claims related to releases of hazardous substances from any portion of the Lower Ley Creek Sub site and all areas affected by migration of hazardous substances emanating from the Lower Ley Creek Sub site.</u> The "matters addressed" in the Lower Ley Creek Settlement Agreement do not include . . . (ii) claims against <u>MLC, the Initial Debtors, the Debtor and/or the GUC Trust</u> for past, <u>present and future</u> response costs incurred by potentially responsible parties, <u>including but not limited to those claims asserted by the Town of Salina regarding the Salina Landfill and Lower Ley Creek Subsides against MLC, the Initial Debtors, the Debtors and/or the GUC Trust</u> prior to the date of lodging this Settlement Agreement with the Bankruptcy Court and included in proofs of claim filed in any the Bankruptcy Cases by potentially responsible parties, <u>including the Town of Salina</u>, with respect to the Lower Ley Creek Site; . . .

It is imperative that this additional language be included in Paragraph 22 to ensure that the proposed Consent Decrees does not impair the Town of Salina's ability to pursue its claims against MLC and the Debtors and Initial Debtors as they relate to the Salina Landfill and Lower Ley Creek Subsides.

5. The Lower Ley Creek Settlement Agreement should be clear that the Town and other PRPs, are not bound by the amounts agreed upon by EPA, DEC and the GUC Trust in

5

the Agreement. Thus, the Town requests that the Lower Ley Creek Settlement Agreement be revised to clarify that the amounts outlined in the Lower Ley Creek Stipulation and Setoff Stipulation are not binding on the Town in the event EPA and/or the DEC ever seek to impose liability for the remediation and cost recovery efforts regarding Lower Ley Creek. The Setoff Stipulation and Proposed Order should therefore be revised to include the following language:

> "This Stipulation is without prejudice to the Town of Salina and other potentially responsible parties to dispute the amounts and allocation of environmental liabilities in any future litigation or proceedings between the Town, EPA, DEC and any other potentially responsible parties, whether in these bankruptcy cases or in any other appropriate forum."

**C.    Stipulation and Agreed Order Between The GUC Trust and the United States of America Regarding Offsets By The Debtors To EPA Under the Lower Ley Creek Settlement Agreement**

The Town requests that specific revisions be made to the Stipulation and proposed Order between the GUC Trust and the United States of America regarding offsets by the Debtors to EPA under the Lower Ley Creek Settlement Agreement (the "Setoff Stipulation and Proposed Order") as follows:

1. The Town does not object to the Setoff Stipulation and Proposed Order. However, as outlined above, the Town requests that the Setoff Stipulation and Order be revised to clarify that the amounts outlined in the Lower Ley Creek Stipulation and Setoff Stipulation are not binding on the Town in the event EPA and/or DEC ever seek to impose liability for the remediation and costs recovery efforts regarding Lower Ley Creek. The Setoff Stipulation and Proposed Order should therefore be revised to include the following language:

    > "This Stipulation is without prejudice to the Town of Salina and other potentially responsible parties to dispute the amounts and allocation of environmental liabilities in any future litigation or proceedings between the Town, EPA, DEC or any other potentially responsible parties, whether in these bankruptcy cases or in any other appropriate forum."

**D.    Miscellaneous Comments**

T Town requests that DOJ further consider the following comments relating to the Proposed Lower Ley Creek and Onondaga Non-Owned Sites Settlements:

1. What portion, of any, of the allowed claim is being allocated by the United States to past or future capital and oversight costs? If past costs are included, why are past costs incurred during the life of the bankruptcy not being pursued as administrative costs?

2. Is the United States waiving its RCRA claim?

US 00482

### 3. E. Conclusion

The approval of the Onondaga Settlement Agreement, Lower Ley Creek Settlement Agreement and Setoff Stipulation should not result in any additional financial burden being placed on the Town, or otherwise bind the Town in establishing any portion of the Town's liabilities based on the proposed amounts of EPA and DEC's General Unsecured Claim. The Town's requested revisions and clarifications are reasonable and preserve the Town's rights in any future litigation between the Town, EPA, DEC, the GUC Trust or any other PRPs. As a result, the Town requests the specific revisions outlined above be incorporated into the Stipulations prior to approval by the Bankruptcy Court.

If you have any questions, please do not hesitate to contact me by phone at 457-6661, or by email at supervisor@salina.ny.us.

Sincerely,

Mark A. Nicotra
Supervisor
Town of Salina

cc: Town of Salina Town Board Members
Natalie N. Kuehler, Assistant U.S. Attorney
Maurene Leary, NYS Assistant Attorney General
Joanne M. Mahoney, Onondaga County Executive
Frank C. Pavia, Esq.
Robert D. Ventre, Esq.
Christopher A. Burns, P.G.

7

US 00483

US 00484

**HARRIS BEACH** PLLC
ATTORNEYS AT LAW

WENDY A. KINSELLA
333 WEST WASHINGTON ST., SUITE 200
SYRACUSE, NY 13202

ADDRESS SERVICE REQUESTED

DOJ MAILROOM
JUN 04 2012
X-RAYED

CERTIFIED MAIL™
9171 9690 0935 0024 6102 20

FIRST-CLASS MAIL
Hasler
05/31/2012
US POSTAGE
$04.75⁰
ZIP 13202
011D11612458

United States Department of Justice
c/o Ignacia S. Moreno, Assistant Attorney General
Environmental and Natural Resources Division
PO Box 7611
U.S. Department of Justice
Washington, DC 20044-7611