IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>MOTORS LIQUIDATION COMPANY *et al.*,<br><br>f/k/a GENERAL MOTORS CORP. *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 09-50026 (REG)<br><br>(Jointly Administered) |

## DECLARATION OF PAMELA N. TAMES, P.E.

                                            PREET BHARARA
                                            United States Attorney for the
                                            Southern District of New York
                                            Attorney for Defendant
                                            86 Chambers Street
                                            New York, New York 10007
                                            Tel.: (212) 637-2741
                                            Fax: (212) 637-2750

NATALIE N. KUEHLER
DAVID S. JONES
Assistant United States Attorneys
    – Of Counsel–

Pamela N. Tames, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1. I am a Remedial Project Manager in the Emergency and Remedial Response Division of the United States Environmental Protection Agency ("EPA"), Region 2, 290 Broadway, New York, New York 10007.

2. I have been with the Emergency and Remedial Response Division since 1984.

3. I received a Bachelors of Science in Civil Engineering from the University of Buffalo in 1977. I completed additional graduate school coursework in the Department of Applied Science at New York University in 1982. I earned my Professional Engineering license in the State of New York in 1984.

4. As part of my official duties, I developed an estimate of the cost of remediation of the Lower Ley Creek subsite of the Onondaga Lake Superfund Site in Onondaga County, New York. Ley Creek is a tributary to Onondaga Lake and the Lower Ley Creek subsite includes the stretch of the Ley Creek from the Route 11 Bridge to Onondaga Lake, the adjacent floodplains, Old Ley Creek Channel, and a swale area. As the Remedial Project Manager in charge of the Lower Ley Creek subsite, I have reviewed the available information concerning the subsite including: maps, photographs, contractor documents related to the Ley Creek flood control project from the 1970s, historic information concerning releases of hazardous substances, and data collected as part of the remedial investigation at the subsite. The remedial investigation data includes field samples of sediment and fish from Ley Creek and soils from the floodplains, Old Ley Creek Channel, and the swale area.

5. EPA has not yet selected a remedy to address the contamination at the Lower Ley Creek subsite because the remedial investigation and feasibility study are not complete. Because a remedy has not yet been selected, it is difficult to estimate future response costs at the Lower

1

Ley Creek subsite, as there are various alternative remedial actions that might be selected. However, the data collected during the remedial investigation indicates that the subsite is contaminated with high levels of polychlorinated biphenyls ("PCBs") and heavy metals.

6. On October 30, 2009, EPA sent notice letters to the following potentially responsible parties ("PRPs"): Carrier Corporation, Crouse Hinds Division of Cooper Industries, Motors Liquidation Corporation ("MLC"), Niagara Mohawk Power Corporation (d/b/a National Grid), Oberdorfer LLC, Onondaga County, the Town of Salina, and Syracuse China Company. Historic records and sampling data indicate that MLC contributed most of the PCBs at this subsite, but the other parties have been notified as PRPs because they may be owners, operators, generators, or transporters of hazardous substances that contributed to the contamination at this subsite. Available documentation indicates that there may be at least two other sources besides MLC (Carrier Corporation and Salina Landfill) that contributed to the PCB contamination at this subsite. While any allocation of liability is difficult to determine and may be premature at this subsite because the remedial investigation and feasibility study are not yet complete and a remedy has not been selected, based upon available information and for the purposes of this bankruptcy, I estimated that MLC may be liable for the vast majority (over 80%) of the contamination at this subsite.

7. To help estimate costs for the Lower Ley Creek subsite for the purposes of this bankruptcy, I considered remedies and response costs incurred or to be incurred at other sites with similar characteristics including: Geddes Brook/Nine Mile Creek subsite of the Onondaga Lake Superfund Site, Hudson River PCBs Superfund Site, and Reynolds Metals Superfund Site. Geddes Brook/Nine Mile Creek is similar in size to Ley Creek and is located on the west side of Onondaga Lake. This subsite is currently in the remedial design phase, as a dredging/capping

remedy was chosen in two records of decision issued in 2009. While this subsite is physically similar to the Lower Ley Creek subsite and in the same geographical area, which is helpful in determining local dredging and capping costs for both labor and materials, the main contaminant of concern at this subsite is mercury. To determine a reasonable and probable remedy for Lower Ley Creek, where PCBs are the main contaminant of concern, I also considered two PCB-contaminated sediment sites. While both Hudson River PCBs and Reynolds Metals are in larger river systems, their ecological and human health risks are similar. Hudson River PCBs is currently undergoing construction. Construction at Reynolds Metals, where I am also the Remedial Project Manager, has been completed and the site is currently in the long-term monitoring and maintenance phase. By examining the construction process of both sites, I was able to ascertain which remedies would or would not work at the Lower Ley Creek subsite.

8. For purposes of the subsite cost estimation, the creek traversing the Lower Ley Creek subsite (the "Creek") was divided into four separate segments. See the attached maps. Section 1, is 1000 feet in length and begins at the Route 11 Bridge. Section 2 is 2500 feet in length, Section 3 is 4000 feet in length, and Section 4 is 2500 feet in length. The Office of the New York State Attorney General, Environmental Protection Bureau prepared a geographic information system analysis which I used to determine the width of the Creek. This analysis indicated that the width of the Creek ranged from 49 to 86 feet across.

9. The sampling data collected in Section 1 during the remedial investigation showed high levels of PCBs at least eight feet down into the sediment, making this the most contaminated segment of the Creek. I assumed that it would not be feasible to completely dredge all the contamination in this area and assumed that the remedy would include limited dredging with a cap designed to limit migration of the remaining PCBs, followed by an armor

3

layer to keep the PCB cap in place and topped with a benthic layer to promote the regrowth of beneficial flora and fauna. My estimate included dredging the sediment to a depth four feet with a one and a half foot cap and armor layer, two and half feet of backfill/benthic layer, and one foot of bank stabilization layer. For the buffer zone of this segment, which is three feet wide on either side, I assumed that there will not be a cap, that the sediment will only be dredged two feet down, and that there will only be two feet of a backfill layer because this area does not have the same depositional properties as the bottom of the Creek. Because this section of the Creek is estimated to be 49 feet wide, I assumed that 6,769 cubic yards of the Creek bottom would need to be dredged at a rate of $165 per cubic yard, with 4397 cubic yards of the backfill/benthic layer at a rate of $25 per cubic yard, and 741 cubic yards of the bank stabilization layer at a rate of $55 per cubic yard. The cap will cost $6.43 per square foot. In total, I estimated that the cost of dredging Section 1 will be $1,267,491.

10. Based upon the sampling data collected in Section 2 during the remedial investigation, I estimated that the sediment would have to be dredged to four feet deep, with a four foot backfill layer and one foot bank stabilization layer. For the buffer zone of this segment, I assumed that there will only be 2 feet of backfill layer. Because this section of the Creek is estimated to be 62 feet wide, I assumed that 21,763 cubic yards of Creek bottom would need to be dredged at a rate of $165 per cubic yard, with 21,763 cubic yards of backfill layer at a rate of $25 per cubic yard, and 1,852 cubic yards of bank stabilization layer at a rate of $55 per cubic yard. In total, I estimated that the cost of dredging Section 2 will be $4,236,815.

11. Based upon the sampling data collected in Section 3 during the remedial investigation, I estimated that the sediment would have to be dredged to three feet deep, with a three foot backfill layer and one foot bank stabilization layer. Because this section of the Creek

4

is estimated to be 86 feet wide, I assumed that 37,417 cubic yards of Creek bottom would need to be dredged at a rate of $165 per cubic yard, with 37,417 cubic yards of backfill layer at a rate of $25 per cubic yard, and 2,963 cubic yards of bank stabilization layer at a rate of $55 per cubic yard. In total, I estimate the cost of dredging Section 3 will be $7,272,109.

12. Because the sampling data collected in Section 4 during the remedial investigation did not show any samples with PCBs greater than 1 part per million, I did not include an estimate for dredging in this segment.

13. Based upon the sampling data collected in the floodplains during the remedial investigation and the flood control contractor documents that Onondaga County provided EPA, I estimated that 67,271 cubic yards of soil in the floodplains adjacent to the Creek will need to be excavated, at a rate of $101 per cubic yard for a total of $6,761,834.

14. Based upon the sampling data collected in the swale area during the remedial investigation and the flood control contractor documents that Onondaga County provided EPA, I estimated that the swale area, which is approximately 375 feet long and 375 feet wide, will have to be excavated 3.5 feet deep. At that depth, 18,229 cubic yards of soil will be excavated at a rate of $101 per cubic yard, or $1,837,039 total.

15. In addition to the cost of dredging the Creek and excavating the floodplains and swale area soils, I estimated that the remedy will require the following additional expenses: investigation and design costs ($1,150,000), access roads and pads (estimated at $1,000,000), mobilization and demobilization (estimated at $550,000), treatment and disposal of substances that qualify as Toxic Substances Control Act waste (estimated at 10% of the soil excavated at a rate of $139 per cubic yard, or $2,105,137), project construction and management costs (estimated at 5% of total costs, or $1,326,471), engineering and administration costs (estimated

5

at 5% of total costs, or $1,326,471), long-term operation and maintenance (estimated at $2,355,975), hand excavation around gas pipelines (estimated at $72,407), and agency oversight (estimated at 10% of total costs, or $3,153,834). I also included EPA and New York State Department of Environmental Conservation ("NYSDEC") past costs ($1,128,933) and a 15% contingency, bringing the total unpaid remedial costs total for the Creek, the floodplains, and the swale area to $41,024,934.

16. Based upon the sampling data collected in Old Ley Creek Channel during the remedial investigation, I estimated that the Old Ley Creek Channel will require the excavation of 21,486 cubic yards of soil at a rate of $101 per cubic yard. In addition, excavation at Old Ley Creek Channel will require investigation and design costs ($250,000), access roads and pads (estimated at $20,000), mobilization and demobilization (estimated at $50,000), treatment and disposal of substances that qualify as Toxic Substances Control Act waste (estimated at 10% of the soil excavated, or 2,149 cubic yards, at a rate of $153 per cubic yard), project construction and management costs (estimated at $140,422), engineering and administration costs (estimated at $140,422), long-term operation and maintenance (estimated at $336,976), and agency oversight (estimated at 10% of total costs, or $342,625.41). For Old Ley Creek Channel, I also included past costs incurred ($320,000) and a 15% contingency bringing the total for this area to $4,654,212.

17. In total, I estimated that the cost of remediation for the Lower Ley Creek subsite would be approximately $45,679,146. Of this amount, $1,103,595 is attributed to NYSDEC's past and future costs. As such, I estimated that EPA may incur $44,574,551 in addressing the remediation at this subsite.

18. I declare under the penalty of perjury that the above following is true and correct.

6



Base map created using color digital orthoimagery of New York state, site survey GPS data.

Map Creation Date: August 2010

Coordinate system: New York State Plane Central
FIPS: 3102
Datum: NAD83
Units: Feet

Data: g:\ArcViewprojects\SERAS\00-007
MXD file: g:\ArcInfoprojects\SERAS\SER00007_Lower Ley Creek/007_UFPQAPP4_2011_Proposed_Sediment_Sample_Locations_f1.mxd

750 0 750 Feet

N W E S

U.S EPA Environmental Response Team
Scientific Engineering Response and Analytical Services
EP-W-09-031
W.A.# 0-007

Figure 1
2011 Proposed Sediment Sampling Locations
Lower Ley Creek Superfund
Syracuse, New York

FIGURE-1: Lower Ley Creek between the creek outlet by Onondaga Lake and the Rt. 11 Bridge

