Sharon Palmer  Claim #49544   ①

06/11/12

My name is Sharon Palmer. I had a claim against General Motors for malfunctioning air bag. The air bag did not deploy on impact and I received injuries. The front end was severely damaged. This incident started on May 23rd 2012 when I called for a follow-up on my claim. Attorney Makala Whitman called me back and stated Dickstein and Shapiro requested additional information and that the mail was returned to them. She stated a hearing on Thursday May 24th was to dismiss claims with no additional document on the claim. I told her they did not send anything to me by postal service or I would have received it and verified my address with them. I explained to her my address had changed but I changed it thru the post office and all my mail would have been forwarded. After this conversation she requested I send all documents concerning my claim to her. She stated she would have the objection Adjourned. And I received that adjourned paper in the mail.
On May 28th, on or about, I received a call from Attorney Reed Cumming to discuss a settlement. Attorney Cumming started off by saying my claim was not

Sharon Palmer          #49544                                                                     ②

worth very much. Because the air bags wasnot suppose to deploy even though the SUV was severely damaged in the front. My original claim was for $300,000.00 but after he said that we started at $25,000, Attorney Cumming and I agreed on $15,000. I was told last year by Attorney Edward Wu this would not be cash but General Motors Shares (the New GM) Attorney Reed Cumming allowed me to believe I would receive $15,000.00 in shares. At No time did Attorney Cumming explain to me this was pro rata, what pro rata was or what that meant. He did not tell me anything but this is the settlement amount and he would mail me the settlement papers. The conversation ended. He did not mention I would not receive the amount of settlement or how the shares would be distributed. Only when I received the papers dated 06/01/12 I read the papers and saw I would receive 3.6 shares or 3.9 shares per $1000.00 of the settlement amount. I called Makala Whitman and asked her how much is a share and she stated $22.00. I asked her do I receive $66.00/1000.00 She stated I will have the Attorney that settled with you, Call you. I Asked her what was pro rata and she explained. She stated All claimants receive this,

Sharon Palmer           #49544                                    ③

After talking with Attorney Whitman. I read under "Frequently asked Question" NO I would not receive the settlement amount. At that time I knew Attorney Cumming left out the most important part of the settlement. Had he disclosed this imformation I would not have settled on that amount. On 06/06/12 @ 11:29 AM Attorney Cumming called. I asked him why did he not mention prorata and I would only receive 3.6 shares per 1000.00 of the settlement amount. I told him this information would have altered the settlement. I told him he purposely left this information out. Attorney Cumming stated "Well I am telling you now. You will receive 20% of the settlement amount or you will receive nothing. If you donot acept it (20%) I will have your claim explunged." "Are you accepting this amount Ms Palmer?" I told him I would have to call him back. Because the settlement deadline is June 29th 2012. He was trying to force me to take the 20% and I didnot. Attorney Reed Cumming was very unprofessional and disrespectful. How can you make a settlement and the claimant recieve 20% and the firm keeps 80%.

Sharon Palmer     #49544

I also called Judge Gerber office and left a message for Haline Bloom to call me back with the guidelines of the Bankruptcy for Dickstein and Shapiro as well as GM to follow. I have lost all confidence in the attorneys at Dickstein and Shapiro. IN June of 2011 their office failed to notify me of a hearing which at that time they were trying to explunge my claim, but I called and spoke to Edward Wu and he stated my claim was closed. He had no clue of me or my claim and I had to resubmit my papers at that time and it was reopened in 2011. Attorney Wu stated the attorney I sent my information to was no longer with the firm. That Attorney Brooks may have taken my information with him and to resubmit it to him and I did. It seems to me they are purposely not notifying the claimants and then explunging the claims. I caught this twice to keep my claim from being dismissed.

Thank You,
Sharon Palmer
2463 Chauncey Lane
Marietta, Ga 30064

P.S. Please correspond back regarding this matter, Enclosed supporting documents.

| Claimant | Date of Filing | Claim Number | **Allowed Amount** |
|---|---|---|---|
| PALMER, SHARON | 11/25/2009 | 49544 | **$15,000.00** |

If you accept this settlement by signing and returning the page 4 of this letter labeled as "Exhibit A" on or before the deadline to respond, the following terms, provisions, and releases (the "**Settlement Terms**") will apply to you and your Claim.

**NOTE: THE GUC TRUST IS NOT YOUR LAWYER AND IS NOT PROVIDING YOU WITH ANY LEGAL ADVICE WITH REGARD TO THIS SETTLEMENT OFFER OR THE TERMS OF THE PROPOSED SETTLEMENT. THE GUC TRUST CANNOT TELL YOU WHETHER THE SETTLEMENT OFFER OR THE SETTLEMENT TERMS ARE IN YOUR BEST INTERESTS.**

### SETTLEMENT TERMS

1. The Claimant shall receive distributions on account of the Allowed Amount in the form set forth in and pursuant to the terms of the Second Amended Joint Chapter 11 Plan (the "**Plan**"). Upon receipt of such distributions, the Claim shall be deemed satisfied in full. To the extent that the Settlement covers more than one Claim, the parties hereby stipulate and agree that (i) the aggregate amount of the "Allowed Amounts" has been offered by the GUC Trust and accepted by the Claimants as a global settlement amount for all Claimants, (ii) the Claimants have independently determined how the aggregate of the "Allowed Amounts" has been allocated between them, (iii) the GUC Trust has taken no position with regard to such allocation, and (iv) the consideration offered and accepted as to all Claimants is good, valuable, and adequate.

2. These Settlement Terms, together with the acceptance form attached hereto as **Exhibit A** (collectively, the "**Settlement**"), contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and undertakings between the Parties relating thereto.

3. With respect to the Claim, other than the right to receive distributions on account of the Allowed Claim under the Plan, the Claimant, for himself/herself and on behalf of his/her spouse, heirs, assigns, guardians, successors, executors, administrators, agents, insurers, servants, employees, representatives, trustees and attorneys, hereby releases and irrevocably waives any and all claims (as defined in section 101(5) of the Bankruptcy Code) against, and shall have no further right to payment from, Motors Liquidation Company, the Debtors, the GUC Trust Administrator Parties (as defined in the GUC Trust Agreement), and the GUC Trust, and any of their respective current affiliates, their estates and their respective future successors or assigns, and their past, present and future members, officers, directors, partners, principals, agents, insurers, servants, employees, administrators, executors, trustees and attorneys (collectively, the "**MLC Parties**").

4. **ONLY FOR CALIFORNIA RESIDENTS:** The Claimant hereby acknowledges that he or she has read, is familiar with, and waives the provisions of California Civil Code Section 1542 ("**Section 1542**"), which is set forth below:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE GUC TRUST.

5. The Debtors' claims agent shall be authorized and empowered to adjust the claims register to reflect the Allowed Claim.

6. Claimant represents and warrants that he or she has an obligation to and will seek dismissal with prejudice of General Motors Corporation and any of the MLC Parties from all lawsuits arising from or related to the Allowed Claim, if any, within thirty (30) days of the date the Claimant signs his or her acceptance of the Settlement Offer, and without costs to any of the MLC Parties.

7. Claimant represents and agrees that he/she is solely responsible for and will satisfy any liens related to the Allowed Claim and any and all lawsuits arising from or related to the Allowed Claim, including, but not limited to, Medicare and/or Medicaid liens. Claimant represents and agrees that the MLC Parties shall have no responsibility for any such liens.

8. The Claimant represents and agrees that he or she will complete the Medicare Secondary Payer Questionnaire ("**Questionnaire**") attached hereto as **Exhibit B** and return the Questionnaire as directed on the Questionnaire within thirty (30) days of the date the Claimant signs his or her acceptance of the Settlement Offer.

9. This Settlement comprises claims which are contested and shall not be deemed an admission by the MLC Parties or Claimant as to the merits of any claim or defense. The Parties agree that this Settlement was negotiated in good faith by the Parties and reflects a settlement that was reached voluntarily. The Parties represent and warrant that (i) they are not relying on any statements, understandings, representations, expectations, or agreements other than those expressly set forth herein; (ii) they have been represented and advised by legal counsel, or have had the opportunity to be represented and advised by legal counsel, in connection with this Settlement; (iii) they have made their own investigation of the facts and are relying upon their own knowledge and/or the advice of counsel; and (iv) they knowingly waive any and all claims that this Settlement was induced by any misrepresentation or nondisclosure and knowingly waive any and all rights to rescind or avoid this Settlement based upon presently existing facts, known or unknown. The Parties agree to and stipulate that each party is relying upon these representations and warranties in entering into this Settlement, that these representations and warranties are material inducements to entering into this Settlement, and that these representations and warranties shall survive the execution of this Settlement.

10. The Settlement shall be exclusively governed by and construed and enforced in accordance with the laws of the state of New York, without regard to conflicts of law principles thereof. The Court shall retain exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Settlement.

## ADDITIONAL INFORMATION

Should you have any questions, please do not hesitate to contact us at 800-414-9607 or via email at claims@motorsliquidation.com.

Sincerely,
Motors Liquidation Company GUC Trust

# EXHIBIT A

## CLAIMANT RESPONSE TO SETTLEMENT OFFER

*PLEASE MARK WHETHER YOU "ACCEPT" OR "REJECT"
THE SETTLEMENT OFFER BELOW AND RETURN THIS RESPONSE PAGE
IN THE ENCLOSED PREPAID ENVELOPE **PRIOR TO 6/29/2012***

The Motors Liquidation Company GUC Trust ("**GUC Trust**") offers to resolve the following proof of claim (the "**Claim**") filed on behalf of the claimant(s) (the "**Claimant**") in exchange for an allowed general unsecured claim in the amount set forth below under the heading "Allowed Amount," subject to the Settlement Terms (the "**Settlement Offer**"):

| Claimant | Date of Filing | Claim Number | Allowed Amount |
|---|---|---|---|
| PALMER, SHARON | 11/25/2009 | 49544 | $15,000.00 |

---

*Please indicate below if you accept or reject the Settlement Offer by marking the appropriate box and return this form using the enclosed envelope.*

[reject] ☐ I/we **agree** to and accept the Settlement Offer. I/we understand and acknowledge that this acceptance form, together with the Settlement Terms, the terms of which are incorporated by reference as if fully set forth herein, contain the entire understanding of the parties with respect to the subject matter hereof. I/we further represent and warrant that each person executing this agreement and acceptance on behalf of each Claimant has the authority to do so and that each Claimant has full knowledge of and has consented to the Settlement Terms.

**OR**

[X] I/we **reject** the Settlement Offer.

---

**THE UNDERSIGNED WARRANTS THAT HE OR SHE HAS READ AND UNDERSTANDS THE SETTLEMENT TERMS, HAS HAD THE ADVICE OF COUNSEL OR THE OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING, UNDERSTANDING, AND EXECUTING THE SETTLEMENT TERMS, AND HAS FULL KNOWLEDGE OF THE TERMS, CONDITIONS, AND EFFECTS OF THIS SETTLEMENT**

Sign Here: *Sharon Palmer*
Printed Name: Sharon Palmer
Address: 2463 Chauncey Lane
City and State: Marietta, Georgia 30064
Date: June 5, 2012

 Claim #49544

| 277th Omnibus Objection | | Exhibit A | | | Motors Liquidation Company, et al. Case No. 09-50026 (REG), Jointly Administered |

*OBJECTION ADJOURNED*

| Name and Address of Claimant | Claim # | Debtor | Claim Amount and Priority (1) | Grounds For Objection | Objection Page Reference |
|---|---|---|---|---|---|
| ARNSWALD, KERRY N<br>1587 MARY LN W<br>ARBOR VITAE, WI 54568 | 28328 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$30,000.00 (U)<br>$30,000.00 (T) | Insufficient Documentation | Pgs. 4-5 |
| MAJOR CADILLAC COMPANY, INC<br>DAVID W EDGAR<br>EDGAR LAW FIRM, LLC<br>1032 PENNSYLVANIA<br>KANSAS CITY, MO 64105 | 63340 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$902,357.36 (U)<br>$902,357.36 (T) | Insufficient Documentation | Pgs. 4-5 |
| PALMER, SHARON<br>7058 SHENANDOAH TRL<br>AUSTELL, GA 30168-6699 | 49544 | Motors Liquidation Company | Unliquidated | Insufficient Documentation | Pgs. 4-5 |
| UNIVERSAL UNDERWRITERS INS CO & ITS AFFILIATES<br>C/O FOX HEFTER SWIBEL LEVIN & CARROLL LLP<br>ATTN MARGARET M ANDERSON<br>200 W MADISON ST SUITE 3000<br>CHICAGO, IL 60606 | 70572 | Motors Liquidation Company | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$9,884,703.00 (U)<br>$9,884,703.00 (T)<br>Unliquidated | Insufficient Documentation | Pgs. 4-5 |
| *OBJECTION ADJOURNED* | 4 | | $0.00 (S)<br>$0.00 (A)<br>$0.00 (P)<br>$10,817,060.36 (U)<br>$10,817,060.36 (T) | | |

(1) In the "Claim Amount and Priority" column, (S) = secured claim, (A) = administrative expense claim, (P) = priority claim, (U) = unsecured claim and (T) = total claim. The amounts listed are taken directly from the proofs of claim, and thus replicate any mathematical errors on the proofs of claim. Where the claim amount is zero, unliquidated, unidentified, or otherwise cannot be determined, the amount listed is "0.00".
(2) Claims on the exhibit are sorted in alphabetical order based on the creditor name as listed on proof of claim form.

# MOTORS LIQUIDATION COMPANY
# GENERAL UNSECURED CREDITORS TRUST

## Frequently Asked Questions

**1.) Who is the Motors Liquidation Company General Unsecured Creditors Trust?**

General Motors Corporation and certain subsidiaries (together, "**Old GM**") filed bankruptcy on June 1, 2009, in the United States Bankruptcy Court for the Southern District of New York (the "Court"). Soon afterward, Old GM sold substantially all of it operating assets to a new company called General Motors Company ("**New GM**"), and Old GM changed its name to Motors Liquidation Company ("**MLC**"). New GM is in operation today while MLC is in the process of winding down and liquidating. *Your claim was filed against Old GM, which is now known as MLC.*

In exchange for the sale of assets to New GM, MLC received (i) 10% of the common stock of New GM ("**New GM Stock**") (NYSE: GM), and (ii) two series of warrants, each entitling the holder to acquire one share of common stock of New GM, one series with an exercise price of $10.00 per share (subject to adjustment) and an expiration date of July 10, 2016 (the "**New GM $10.00 Warrants**"), and the other with an exercise price of $18.33 per share (subject to adjustment) and an expiration date of July 10, 2019 (the "**New GM $18.33 Warrants**," and together with the New GM $10.00 Warrants, the "**Warrants**").

The MLC confirmed Chapter 11 Plan of Liquidation established a trust for general unsecured claims (the "**GUC Trust**"), and transferred certain claims, including yours, to the GUC Trust. *The GUC Trust is authorized to resolve your Claim.*

**2.) How do distributions to Claimants under the Plan work?**

No unsecured creditor, including you, will ever receive cash for their claims. The only assets available to satisfy your Claim are New GM Stock and the Warrants to purchase New GM Stock.

In order to receive New GM Stock and Warrants, a claimant must first have a claim that is "allowed" by the Court. Your Claim has not been allowed because the GUC Trust disputes the amount of your Claim. However, if you execute this Settlement, your Claim will become "allowed" in the amount shown as "Allowed Amount," and you will be entitled to receive your portion of the New GM Stock and Warrants on the next distribution date.

**3.) If I sign the settlement letter, will I receive stock and warrants equal to the Allowed Amount?**

No, you will not receive stock and warrants equal to the Allowed Amount. You will receive your pro rata share of stock and warrants. As of December 2011, for every $1,000 of allowed claims, unsecured creditors received approximately 3.9 shares of New GM Stock, approximately 3.6 New GM $10.00 Warrants, and approximately 3.6 New GM $18.33 Warrants. Additional follow-up distributions to claimants will likely occur in the future as the GUC Trust continues to resolve claims.

**4.) How will I receive the stock and warrants?**

Once you have an Allowed Claim, Wilmington Trust Company, the Trustee of the MLC GUC Trust, will provide written instructions on how to receive the distribution. You will need to provide a W-8 or W-9 (whichever is applicable) and certain brokerage account information. Your distribution of New GM stock and Warrants will be deposited directly into your account. If you don't have a brokerage account, Wilmington Trust Company will provide instruction on how to open an account.

*[Handwritten annotation in left margin: "DID NOT discuss anything about this paragraph within during settlement Talks"]*