SCHEDULE
to the
Master Agreement

dated as of October XX, 2001

between General Motors Nova Scotia Finance Company, a Nova Scotia unlimited liability company, ("Party A"), and General Motors Corporation, a Delaware corporation ("Party B").

Part 1
Termination Provisions

(a)  "Specified Entity" means: Not Applicable

(b)  "Specified Transaction" will mean (a) with respect to any Termination Event consisting of an Illegality, Tax Event, Tax Event Upon Merger or Redemption of Notes, all Swap Transactions affected by the occurrence of such Termination Event and (b) with respect to any other Termination Event, all Swap Transactions.

(c)  The "Cross Default" provisions of Section 5(a)(vi) will not apply to Party A or Party B.

(d)  The "Credit Event Upon Merger" provisions of Section 5(b)(iv) will not apply to Party A or Party B.

(e)  The "Automatic Early Termination" provision of Section 6(a) will not apply to Party A or Party B.

(f)  Payments on Early Termination. For the purpose of Section 6(e) of this Agreement and subject to the provisions of Part 5 of this Schedule:

   (i)   Market Quotation will apply to all Transactions unless otherwise specified in the Confirmation for a particular Transaction.

   (ii)  The Second Method will apply.

(g)  Unless otherwise designated in a Confirmation for a particular Transaction, "Termination Currency" means United States Dollars.

(h)  "Additional Termination Event" will apply.

It shall be an Additional Termination Event with respect to any Transaction if the principal amount of any Related Debt (as identified in the Confirmation for such Transaction) has become due and payable, whether as a result of the exercise of a prepayment right or otherwise, under one or more

1

agreements or instruments relating to such Related Debt, or has been paid in full. Notwithstanding the provision of Section 6(b)(iv) of the Agreement, upon the occurrence of an Additional Termination Event, Party B will be the Affected Party and Party B (and not Party A) may, by not more than 20 days' notice to Party A and provided that the Additional Termination Event is continuing, designate a day not earlier than the day such notice is effective as an Early Termination Date in respect of all Affected Transactions.

Part 2<br>Tax Representations

(a)    <u>Payer Representations</u>. For the purpose of Section 3(e) of this Agreement, Party A will make the following representation and Party B will make the following representation:

It is not required by any applicable law, as modified by the practices of any relevant governmental revenue authority, of any Relevant Jurisdiction to make any deduction or withholding for or on account of any Tax from any payment (other than interest under Section 2(e), 6(d)(ii), or 6(e) of this Agreement) to be made by it to the other party under this Agreement. In making this representation, it may rely on (i) the accuracy of any representations made by the other party pursuant to Section 3(f) of this Agreement, (ii) the satisfaction of the agreement contained in Section 4(a)(i) or (iii) of this Agreement and the accuracy and effectiveness of any document provided by the other party pursuant to Section 4(a)(i) or (iii) of this Agreement, and (iii) the satisfaction of the agreement of the other party contained in Section 4(d) of this Agreement, <u>provided</u> that it shall not be a breach of this representation where reliance is placed on clause (ii) and the other party does not deliver a form or document under Section 4(a)(iii) by reason of material prejudice to its legal or commercial position.

(b)    <u>Payee Representation</u>.

(1)    For the purpose of Section 3(f) of this Agreement, Party A represents that it is not a nonresident alien individual or a foreign corporation (as such terms are used in Sections 871 or 881, respectively, of the Internal Revenue Code of 1986, as amended.

(2)    For the purpose of Section 3(f) of this Agreement, Party B represents that it is a corporation organized and existing under the laws of the State of Delaware.

[End of Page]

CONFIDENTIAL                                                                                       GHW0001616

Part 3
Agreement to Deliver Documents

For the purpose of Sections 4(a)(i) and (ii) of this Agreement, each party agrees to deliver the following documents, as applicable:

(a)   Tax forms, documents, or certificates to be delivered are: None, subject to Section 4(a)(iii) and the table below.

(b)   Other documents to be delivered are:

| Party Required to Deliver Document | Form/Document/ Certificate | Date for Delivery | Covered by Section 3(d) Representation |
|---|---|---|---|
| Party A | Power of Attorney with respect to Party A | As soon as practicable after execution and delivery of Agreement. | Yes |
| Party B | Certified copy of resolution of Board of Directors of Party B or of its relevant committee, authorizing Party B to enter into Agreement and each Transaction entered into under Agreement, and incumbency certificate. | As soon as practicable after execution of Agreement. | Yes |
| Party B | Copy of Form 10-K or the annual report for such party containing audited financial statements for the most recent fiscal year. | Upon request, as publicly available. | Yes |
|  |  |  |  |
|  |  |  |  |

3

CONFIDENTIAL

Part 4
Miscellaneous

(a) <u>Addresses for Notice</u>. For purposes of Section 12(a) of this Agreement:

Address for notices or communications to Party A (for all purposes):

| | |
|---|---|
| Address: | 1908 Colonel Sam Dr.<br>Oshawa, Ontario, L1H 8P7 |
| Attention: | Sharon Y. Pentz |
| Fax No.: | [     ] |
| Telephone No.: | 905-644-5000 |

With a copy to:

| | |
|---|---|
| Address: | 1908 Colonel Sam Dr.<br>Oshawa, Ontario, L1H 8P7 |
| Attention: | Treasury Operations |
| Fax No.: | [     ] |
| Telephone No.: | 905-644-5000 |

Address for notices or communications to Party B (for all purposes):

| | |
|---|---|
| Address: | General Motors Corporation<br>767 Fifth Avenue, 24th Floor<br>New York, New York  10153 |
| Attention: | Director of Domestic Finance |
| Fax No.: | (212) 418-6265 |
| Telephone No.: | (212) 418-6260 |

Any notice under the Agreement given by telephone will be sufficient if given to the telephone number for such party set forth above.

4

CONFIDENTIAL

GHW0001618

(b) <u>Process Agent</u>.

Party A: Not applicable

Party B: Not applicable.

(c) <u>Offices</u>. The provisions of Section 10(a) will apply to this Agreement.

(d) <u>Multibranch Party</u>. For purposes of Section 10(c) of this Agreement:

Party A is not a Multibranch Party.

Party B is not a Multibranch Party.

(e) <u>Calculation Agent</u>. The Calculation Agent is Party A, unless otherwise specified in a Confirmation in relation to the relevant Transaction.

(f) <u>Credit Support Documents</u>. Not Applicable

(g) <u>Credit Support Provider</u>. Not Applicable

(h) <u>Governing Law</u>. This Agreement will be governed by and construed in accordance with the laws of the State of New York (without reference to choice of law doctrine).

(i) <u>Netting of Payments</u>. Subparagraph (ii) of Section 2(c) of this Agreement will not apply to any Transactions or groups of Transactions in each case starting from the date of this Agreement unless otherwise specified as applicable to a Transaction or group of Transactions in the relevant Confirmation(s).

(j) <u>Service of Process</u>. With respect to the third sentence of Section 13(c) of this Agreement, notwithstanding the reference therein to Section 12 of this Agreement, no consent is given by either party to service of process by telex.

(k) <u>Consent to Telephone Recording</u>. Each party hereby agrees that the other party or its agents may electronically record all telephone conversations between officers, employees or Affiliates of the consenting party and the officers, employees or Affiliates of the other party who quote on, agree to, or otherwise discuss terms of interest exchange agreements, currency exchange agreements, caps, collars, floors, and other rate or price protection transactions on behalf of the party. Any such recordings will be used only in connection with any misunderstanding or question arising with respect to any transaction discussed over the telephone by or on behalf of the parties.

(l) "<u>Affiliate</u>" will have the meaning specified in Section 14 of this Agreement.

5

CONFIDENTIAL

GHW0001619

Part 5
Other Provisions

(1) Set Off. Without affecting the provisions of this Agreement requiring the calculation of certain net payment amounts, all payments under this Agreement will be made without setoff or counterclaim, except that each party to this Agreement (such party, "Party X") agrees that, upon an Early Termination Date resulting from an Event of Default with respect to Party X the other party hereto (such other party, a "Non-Defaulting Party") may reduce any amounts due and owing to Party X under this Agreement or any other transactions between Party X (or any Affiliate of Party X) and the Non-Defaulting Party (or any Affiliate of the Non-Defaulting Party) by setting off against such amounts any amounts due and owing to the Non-Defaulting Party (or any Affiliate of the Non-Defaulting Party) by Party X (or any Affiliate of Party X).

(2) Definitions. The definitions and provisions contained in the 1991 ISDA Definitions (as published by the International Swaps Association, Inc.) (the "Definitions") are hereby incorporated in this Agreement. In the event of any inconsistency (1) between the provisions of the Definitions and this Agreement, this Agreement will prevail, (2) between the provisions of a Confirmation and the Definitions, the Confirmation will prevail, and (3) between the provisions of a Confirmation and this Agreement, such Confirmation will prevail for the purpose of the relevant Transaction.

(3) Change of Account. Section 2(b) is hereby amended by adding the following at the end thereof:

"and provided that, unless the other party consents (which consent shall not be unreasonably withheld), such new account shall be in the same tax jurisdiction as the original account."

(4) Agreements--Notices. Section 4(d) of this Agreement is hereby deleted in its entirety and replaced by the following:

"(d) Notice. It will give notice of any failure of a representation made by it under Section 3(f) to be accurate and true promptly upon learning of such failure and it will give written notice of the occurrence of any Event of Default or Potential Event of Default promptly upon learning of such event."

(5) Default Under Specified Transactions. The provisions of Section 5(a)(v) of this Agreement are modified by adding, immediately prior to the semicolon at the end thereof, the following:

"provided, however, that it shall not constitute an Event of Default under Section 5(a)(v) if (A) such event of default or failure to pay arises in the ordinary course of business by mistake, oversight, or transfer difficulties and (B) such event of default or failure to pay is remedied on or before the fifth Business Day after the occurrence or existence of such event of default or failure to pay"

(6) Two Affected Parties. If an Early Termination Date is designated pursuant to Sections 5(b)(i) or (ii) of this Agreement, both parties shall be deemed to be Affected Parties for the purpose of determining the Settlement Amount pursuant to Section 6(e)(ii) of this Agreement.

6

CONFIDENTIAL
GHW0001620

CONFIDENTIAL

(7) <u>Two-Way Payments</u>. Section 6(d)(ii) is amended by inserting after the words "Applicable Rate" the following:

> "as to an amount due by the Defaulting Party and at the Default Rate minus 1% per annum as to an amount due by the other party".

(8) <u>Termination Payments by Non-Defaulting Party</u>. Notwithstanding the provisions of Sections 6(d) and (e) of this Agreement, if there is a Defaulting Party, the obligations of the Non-Defaulting Party to pay to the Defaulting Party any amount under Section 6(e) shall not arise until, and shall be subject to the conditions precedent that, (A) the Non-Defaulting Party shall have received confirmation satisfactory to it in its sole discretion (which may include an unqualified opinion of counsel to the Non-Defaulting Party) that (x) all Transactions are terminated in accordance with Section 6(c) and (y) each Specified Swap shall have terminated pursuant to its specified termination date or been terminated through the exercise by a party of a right to terminate and all amounts due under each Specified Swap shall have been fully and finally paid, and (B) all obligations (contingent or absolute, matured or unmatured) of the Defaulting Party and any Affiliate of the Defaulting Party to make any payment to the Non-Defaulting Party or any Affiliate of the Non-Defaulting Party shall have been fully and finally performed; and <u>provided, further</u>, that if under the foregoing provisions it is determined that the Non-Defaulting Party is to make a payment to the Defaulting Party, there shall be deducted from the amount of such payment all amounts which the Defaulting Party may be obligated to pay under Section 11. With respect to the foregoing clause (B), it is expressly agreed that neither the Non-Defaulting Party nor any Affiliate of the Non-Defaulting Party shall have any obligation to exercise any right it may have to terminate a Specified Swap prior to its specified termination date.

(9) <u>Payment Date During Transfer Period</u>. If the parties are required by Section 6(b)(ii) to make efforts to transfer certain obligation under this Agreement in connection with a Termination Event, and a Payment Date (as defined in the related Confirmation) will occur under the relevant Affected Transaction during the period specified in Section 6(b) for those efforts, then the payment(s) due to be made on that Payment Date shall be postponed until the earlier of (i) the Business Day following the day on which a transfer is effected in consequence of such efforts; (ii) the Business Day following the day on which such period ends, if an Early Termination Date is not designated by a party on such day; and (iii) the Early Termination Date for the relevant Affected Transaction, with such postponed amounts then being treated as Unpaid Amounts. In either case, the postponed payment(s) shall bear interest (before as well as after judgment) at the Default Rate less 1% per annum from (and including) such Payment Date to (but excluding) the date of actual payment.

(10) <u>All Confirmations</u>. With respect to each Transaction, Party A will, on or promptly after the Trade Date thereof, send Party B a Confirmation substantially in the form of Confirmation used by Party A or in such other form as agreed by the parties. Party B will promptly thereafter (a) confirm the accuracy of such Confirmation or (b) request the correction of such Confirmation, indicating how the terms of such Confirmation should be correctly stated and such other terms should be added to or deleted from such Confirmation to make it correct.

7

GHW0001621

(11) <u>Transfer</u>. The consent referred to in Section 7 shall not (after consideration of any tax or other consequences to a party of consenting to such assignment) be unreasonably withheld.

(12) <u>Escrow</u>. In the case of currency swaps, if (whether because of the time difference between the cities in which payments are to be made or otherwise) it is not possible for simultaneous payments to be made on any date on which both parties are required to make payments hereunder, either party may on two Business Days' notice elect for payments due to that date to be deposited in escrow. In such case, deposit of the payment due earlier on that date shall be made not later than 2:00 p.m. (local time at the place for the earlier payment) on that date with an escrow agent selected by the notifying party (and to which the other party has not raised a reasonable objection), accompanied by irrevocable payment instructions (i) to release the deposited payment to the intended recipient upon receipt by the escrow agent of the required deposit of the corresponding payment from the other party on the same date accompanied by irrevocable payment instructions to the same effect or (ii) if the required deposit of the corresponding payment is not made on that same date, to return the payment deposited to the party that paid it into escrow. The party that elects to have payments made in escrow shall pay all the costs of the escrow arrangements.

Confirmed as of the date first written.

General Motors Nova Scotia Finance Company

By:_____

Title:_____

GENERAL MOTORS CORPORATION

By:_____

Title:_____

CONFIDENTIAL

GHW0001622

<u>Currency</u><br>
<u>Swaps Confirmation</u>

July 10, 2003

General Motors Nova Scotia Finance Company
1908 Colonel Sam Dr.
Oshawa, Ontario, L1H 8P7

SUBJECT: GBP 350,000,000/CAD $778,204,000 Currency Swaps

Ladies and Gentlemen:

The purpose of this letter agreement is to confirm the terms and conditions of the Transaction entered into between General Motors Nova Scotia Finance Company ("Party A") and General Motors Corporation ("Party B") on the Trade Date listed below (the "Swap Transaction"). This letter constitutes a "Confirmation" as referred to in the ISDA Agreement specified below.

1. The definitions and provisions contained in the 1991 Definitions (the "Definitions"), as published by the International Swap Dealers Association, Inc. ("ISDA"), are incorporated into this Confirmation. In the event of any inconsistency between those definitions and provisions and this Confirmation, this Confirmation will govern. The parties agree that this transaction is a Transaction under the Master Agreement of the parties dated October 15, 2001. The master agreement is comprised of the printed form of such agreement as published by ISDA, as supplemented and modified by a Schedule (the "ISDA Agreement").

   With regards to clause (f) on <u>Payments on Early Termination</u> of the Schedule to the Master Agreement, section (i) the Market Quotation Method will not hold, but instead the parties will pay each other the amounts of the Final Exchange plus any accrued and unpaid amounts.

   This Confirmation constitutes a binding agreement between you and us and will supplement, form part of, and be subject to the ISDA Agreement described above.

2. The particular terms of the Underlying Transaction are as follows:

   Transaction Type:      Currency Swap

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000004471

| | |
|---|---|
| Notional Amount: | GBP 350,000,000 |
| Trade Date: | July 10, 2003 |
| Effective Date: | July 10, 2003 |
| Termination Date: | December 7, 2015 |
| Fixed Amounts: | |
|    Fixed Rate Payer: | Party B |
|    Fixed Rate Payer Currency Amount: | GBP 350,000,000. |
|    Fixed Rate Payer Payment Dates: | Each year, beginning on December 7, 2003 and ending on December 7, 2015 subject to adjustment in accordance with following Business Day convention. <u>Business Days</u>: New York, London, Toronto |
|    Fixed Rate: | 8.375% |
|    Fixed Rate Day Count Fraction: | Actual/365 |
| Fixed Amounts: | |
|    Fixed Rate Payer: | Party A |
|    Fixed Rate Payer Currency Amount: | CAD 778,204,000 |
|    Fixed Rate Payer Payment Dates: | Each year, beginning on December 7, 2003, and ending on December 7, 2015, subject to adjustment in accordance with following Business Day convention. <u>Business Days</u>: New York, London, Toronto |
|    Fixed Rate: | 9.07% |

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000004472

|  |  |
|---|---|
| Fixed Rate Day Count Fraction: | Actual/365 |
| Initial Exchange: | |
| Party A Initial Exchange Amount: | GBP 346,871,000 |
| Party B Initial Exchange Amount: | CAD 771,246,856 |
| Final Exchange: | |
| Party A Final Exchange Amount: | CAD 778,204,000. |
| Party B Final Exchange Amount: | GBP 350,000,000 |
| Business Days: | New York, London, Toronto |
| Default Rate: | The rate determined under the option entitled "USD Federal Funds - H.15" plus 1% using daily Reset Dates. The Default Rate will be applied on the basis of Compounding as if the overdue amount were a Notional Amount and using daily Compounding Dates, and interest will accrue and be payable before as well as after judgment. |
| Account Details: | |
| Payments to Party A: | |
| Account for GBP payments: | |
| Bank: | Deutsche Bank Frankfurt |
| Swift Code: | DEUTDEFF |
| Account No: | 961577400 |
| Corresponding Bank: | Deutsche Bank London DEUTGB2L |
| Beneficiary: For Further Credit: | General Motors Coordination Center General Motors Nova Scotia Finance Company |

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000004473

Account for CAD payments:

    Beneficiary: General Motors Nova Scotia Finance Company
Oshawa, Ontario, Canada

    For Credit: Toronto-Dominion Bank
King Street at Simcoe Street – Transit 31842
Oshawa, Ontario, Canada
CDN Account No. 0395-5200772

    Bank ID: SWIFT Code TDOMCATTTOR

Payments to Party B:

Account for GBP payments: Midland Bank PLC
London, England
Sort Code No. 40-50-20
Seift MIDLGB21

    Account of: Bank One, London
Acct. # 00494580
Favor of General Motors Corporation

Account for CAD payments:

    Beneficiary: General Motors Corporation

    For Credit: Bank of Nova Scotia
Toronto, Canada
    Account Of: Bank One N.A., London
    Account No.: 3174-11

    Bank ID: SWIFT Code NOSCCATT

5. Calculation Agent: Party B

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000004474

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing one enclosed copy of this Confirmation and returning it to us.

GENERAL MOTORS CORPORATION

By: _____

Sanjiv Khattri
Assistant Treasurer

Accepted and confirmed as of the date first written:

General Motors Nova Scotia Finance Company

By: _____
Arthur Lim
Assistant Secretary

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000004475

<u>Currency</u>
<u>Swaps Confirmation</u>

July 10, 2003

General Motors Nova Scotia Finance Company
1908 Colonel Sam Dr.
Oshawa, Ontario, L1H 8P7

SUBJECT: GBP 250,000,000/CAD $555,860,000 Currency Swaps

Ladies and Gentlemen:

The purpose of this letter agreement is to confirm the terms and conditions of the Transaction entered into between General Motors Nova Scotia Finance Company ("Party A") and General Motors Corporation ("Party B") on the Trade Date listed below (the "Swap Transaction"). This letter constitutes a "Confirmation" as referred to in the ISDA Agreement specified below.

1.  The definitions and provisions contained in the 1991 Definitions (the "Definitions"), as published by the International Swap Dealers Association, Inc. ("ISDA"), are incorporated into this Confirmation. In the event of any inconsistency between those definitions and provisions and this Confirmation, this Confirmation will govern. The parties agree that this transaction is a Transaction under the Master Agreement of the parties dated October 15, 2001. The master agreement is comprised of the printed form of such agreement as published by ISDA, as supplemented and modified by a Schedule (the "ISDA Agreement").

    With regards to clause (f) on <u>Payments on Early Termination</u> of the Schedule to the Master Agreement, section (i) the Market Quotation Method will not hold, but instead the parties will pay each other the amounts of the Final Exchange plus any accrued and unpaid amounts.

    This Confirmation constitutes a binding agreement between you and us and will supplement, form part of, and be subject to the ISDA Agreement described above.

2.  The particular terms of the Underlying Transaction are as follows:

    Transaction Type:        Currency Swap

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000004476

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

| | |
|---|---|
| Notional Amount: | GBP 250,000,000 |
| Trade Date: | July 10, 2003 |
| Effective Date: | July 10, 2003 |
| Termination Date: | July 10, 2023 |
| Fixed Amounts: | |
|    Fixed Rate Payer: | Party B |
|    Fixed Rate Payer Currency Amount: | GBP 250,000,000. |
|    Fixed Rate Payer Payment Dates: | Each year, beginning on July 10, 2003 and ending on July 10, 2023 subject to adjustment in accordance with following Business Day convention. Business Days: New York, London, Toronto |
|    Fixed Rate: | 8.875% |
|    Fixed Rate Day Count Fraction: | Actual/365 |
| Fixed Amounts: | |
|    Fixed Rate Payer: | Party A |
|    Fixed Rate Payer Currency Amount: | CAD 555,860,000 |
|    Fixed Rate Payer Payment Dates: | Each year, beginning on July 10, 2004, and ending on July 10, 2023, subject to adjustment in accordance with following Business Day convention. Business Days: New York, London, Toronto |
|    Fixed Rate: | 9.85% |

NGM000004477

| | |
|---|---|
| Fixed Rate Day Count Fraction: | Actual/365 |
| Initial Exchange: | |
| Party A Initial Exchange Amount: | GBP 248,230,000 |
| Party B Initial Exchange Amount: | CAD 551,924,511 |
| Final Exchange: | |
| Party A Final Exchange Amount: | CAD 555,860,000. |
| Party B Final Exchange Amount: | GBP 250,000,000 |
| Business Days: | New York, London, Toronto |
| Default Rate: | The rate determined under the option entitled "USD Federal Funds - H.15" plus 1% using daily Reset Dates. The Default Rate will be applied on the basis of Compounding as if the overdue amount were a Notional Amount and using daily Compounding Dates, and interest will accrue and be payable before as well as after judgment. |
| Account Details: | |
| Payments to Party A: | |
| Account for GBP payments: | |
| Bank: | Deutsche Bank Frankfurt |
| Swift Code: | DEUTDEFF |
| Account No: | 961577400 |
| Corresponding Bank: | Deutsche Bank London DEUTGB2L |
| Beneficiary: | General Motors Coordination Center |
| For Further Credit: | General Motors Nova Scotia Finance Company |

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000004478

Account for CAD payments:

| | |
|---|---|
| Beneficiary: | General Motors Nova Scotia Finance Company<br>Oshawa, Ontario, Canada |
| For Credit: | Toronto-Dominion Bank<br>King Street at Simcoe Street – Transit 31842<br>Oshawa, Ontario, Canada<br>CDN Account No. 0395-5200772 |
| Bank ID: | SWIFT Code TDOMCATTTOR |

Payments to Party B:

| | |
|---|---|
| Account for GBP payments: | Midland Bank PLC<br>London, England<br>Sort Code No. 40-50-20<br>Seift MIDLGB21 |
| Account of: | Bank One, London<br>Acct. # 00494580<br>Favor of General Motors Corporation |

Account for CAD payments:

| | |
|---|---|
| Beneficiary: | General Motors Corporation |
| For Credit: | Bank of Nova Scotia<br>Toronto, Canada |
| Account Of: | Bank One N.A., London |
| Account No.: | 3174-11 |
| Bank ID: | SWIFT Code NOSCCATT |

5. Calculation Agent:    Party B

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000004479

Please confirm that the foregoing correctly sets forth the terms of our agreement by executing one enclosed copy of this Confirmation and returning it to us.

GENERAL MOTORS CORPORATION

By: _____
Sanjiv Khattri
Assistant Treasurer

Accepted and confirmed as of the date first written:

General Motors Nova Scotia Finance Company

By: _____
Arthur Lim
Assistant Secretary

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000004480