## MATERIAL CANADIAN FEDERAL INCOME TAX CONSIDERATIONS

The following summary describes the material Canadian federal income tax considerations of the implementation of the exchange offers and the proposed amendments to the debt instruments governing the old GM Nova Scotia notes and the exercise by GM Nova Scotia of the call option, generally applicable to GM Nova Scotia, and to holders of old GM Nova Scotia notes described immediately below. This summary is applicable to a beneficial owner of old Nova Scotia notes who, at all relevant times, for purposes of the application of the *Income Tax Act* (Canada) and the *Income Tax Regulations* (collectively, the "Tax Act"): (1) is not, and is not deemed to be, resident in Canada; (2) holds old GM Nova Scotia notes and GM common stock as capital property; (3) deals at arm's length with us; and (4) does not use or hold, and is not deemed to use or hold, old GM Nova Scotia notes and GM common stock in a business carried on in Canada (a "Non-Canadian Holder"). Special rules, which are not discussed in this summary, may apply to a non-Canadian holder that is an insurer that carries on an insurance business in Canada and elsewhere.

This summary is based on the current provisions of the Tax Act and our understanding of the current administrative policies and assessing practices of the Canada Revenue Agency published in writing prior to the date hereof. This summary takes into account all specific proposals to amend the Tax Act publicly announced by or on behalf of the Minister of Finance (Canada) prior to the date hereof (the "Proposed Legislation") and assumes that all Proposed Legislation will be enacted in the form proposed. However, no assurances can be given that the Proposed Legislation will be enacted as proposed, or at all. We have not requested a ruling from the Canada Revenue Agency or any tax authority, with respect to any of the Canadian tax aspects of the contemplated transactions. This summary does not otherwise take into account or anticipate any changes in law or administrative policy or assessing practice whether by legislative, regulatory, administrative or judicial action nor does it take into account tax legislation or considerations of any province, territory or foreign jurisdiction, which may differ from those discussed herein. This discussion does not apply to any person that acquires GM common stock in the secondary market.

**This summary is of a general nature only and is not, and is not intended to be, legal or tax advice to any particular holder. This summary is not exhaustive of all Canadian federal income tax considerations. Accordingly, holders should consult their own tax advisors having regard to their own particular circumstances.**

We intend to take the position, and the rest of this discussion assumes, that for purposes of the Tax Act, the proposed amendments with respect to the old GM Nova Scotia notes will not result in an exchange or substitution of the obligation evidenced by such notes for a new obligation of GM Nova Scotia. Based on this position, which is not free from doubt, a holder of old GM Nova Scotia notes will not dispose of such notes on the adoption of the proposed amendments, and so will not then realize any income, gain, or loss with respect to such notes as a result of the proposed amendments.

The following discussion assumes that if the proposed amendments to the old GM Nova Scotia notes become effective, then GM Nova Scotia will immediately exercise the call option. We further assume that for purposes of the Tax Act, the value of the consideration received by a Non-Canadian Holder on the exchange of an old GM Nova Scotia note will not exceed the price for which such obligation was issued.

The following discussion assumes that at all relevant times the GM common stock and any interest in any such shares (including an old GM Nova Scotia note as amended pursuant to the proposed amendments), will not constitute "taxable Canadian property" to a Non-Canadian Holder for purposes of the Tax Act. GM common stock and any interest therein would generally only be taxable Canadian property at a particular time if, among other things, at any time during the 60-month period that ends at that time, more than 50% of the fair market value of the GM common stock was derived, directly or indirectly, from a combination of real property situated in Canada, Canadian resource properties, and timber resource properties. GM common stock would not reasonably be expected to satisfy this requirement. In any event, GM common stock would generally not

174

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007539

constitute taxable Canadian property to a Non-Canadian Holder at a particular time provided that (1) the shares are listed at that time on a designated stock exchange (which includes the NYSE), and (2) the Non-Canadian Holder, persons with whom the Non-Canadian Holder does not deal with at arm's length, or the Non-Canadian Holder together with all such persons, have not owned 25% or more of the issued shares of any class or series of the capital stock of GM at any time during the 60-month period that ends at that time.

### Exchange Offer and Exercise of the Call Option

Amounts paid to a Non-Canadian Holder pursuant to the exchange offer for old GM Nova Scotia notes or the exercise of the old GM Nova Scotia notes call option, including amounts on account of accrued interest, will not be subject to Canadian withholding tax. No taxes on income (including taxable capital gains) will be payable by a Non-Canadian Holder in respect of the disposition of old GM Nova Scotia notes pursuant to the exchange offer or exercise of the call option.

### Disposition of GM common stock

A Non-Canadian Holder will not be subject to tax under the Tax Act on any capital gain realized on a disposition of GM common stock, unless such shares are taxable Canadian property to the Non-Canadian Holder for purposes of the Tax Act and the Non-Canadian Holder is not entitled to relief under an applicable income tax convention between Canada and the country in which the Non-Canadian Holder is resident. For the reasons cited above, we assume that the GM common stock will not be taxable Canadian property to a Non-Canadian Holder, and on this basis a Non-Canadian Holder will not be subject to tax under the Tax Act on a disposition of such shares.

### Consequences to GM Nova Scotia

Very generally, the Tax Act provides that the amount of any debt of a taxpayer that is forgiven (the "Forgiven Amount") must first be applied to reduce certain tax attributes of the taxpayer. To the extent that the Forgiven Amount exceeds such tax attributes, the taxpayer may elect with an "eligible transferee," which includes a taxable Canadian corporation that is controlled by the person who controls the taxpayer at the time the Forgiven Amount arises, to apply any such excess Forgiven Amount to reduce certain tax attributes of that corporation. Half of any Forgiven Amount not so applied is included in computing the income of the taxpayer for the taxation year in which the Forgiven Amount arises. However, very generally, the taxpayer may then claim an offsetting deduction in computing its income for the year, to the extent the amount so included in computing the income of the taxpayer is greater than twice the net assets of the taxpayer, as determined as at the end of the taxation year pursuant to the relevant provisions of the Tax Act (the "net asset rule").

GM Nova Scotia is expected to realize a substantial Forgiven Amount resulting from the implementation of the exchange offers for the old GM Nova Scotia notes and exercise of the call option. Very generally, the Forgiven Amount will be the amount determined in Canadian dollars, that is equal to the difference between the aggregate amount of the old GM Nova Scotia notes so settled, and the amount paid in satisfaction of the principal amount of such notes, pursuant to the exchange offer or the exercise of the call option, as applicable. For purposes of determining the Forgiven Amount, all amounts must be converted into Canadian dollars based on exchange rates as determined in accordance with the rules of the Tax Act. It is not certain whether GM Nova Scotia will have sufficient tax attributes against which the Forgiven Amount can be applied for purposes of these rules. In that case, half of any such excess Forgiven Amount realized by GM Nova Scotia on the implementation of the exchange offers and exercise of the call option would be included in computing GM Nova Scotia's income for the taxation year in which the Forgiven Amount is realized (subject to a potential income deduction pursuant to the net asset rule), unless it elects with an eligible transferee to cause the excess Forgiven Amount to be applied to reduce the tax attributes of that transferee.

175

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007540

## NON-U.S. OFFER RESTRICTIONS

This prospectus does not constitute an offer to participate in the exchange offers and the consent solicitations to any person in any jurisdiction where it is unlawful to make such an offer or solicitations. The exchange offers and consent solicitations are being made on the basis of this prospectus and are subject to the terms described herein. Each prospective investor should consult its advisors as needed to make its investment decision and to determine whether it is legally permitted to participate in the exchange offers and consent solicitations under applicable legal investment or similar laws or regulations.

Each prospective investor must comply with all applicable laws and regulations in force in any jurisdiction in which it participates in the exchange offers and consent solicitations or possesses or distributes this prospectus and must obtain any consent, approval or permission required by it for participation in the exchange offers and consent solicitations under the laws and regulations in force in any jurisdiction to which it is subject, and neither we nor the Dealer Managers nor any of our or their respective representatives shall have any responsibility therefor.

No action with respect to the offer of exchange consideration has been or will be taken in any jurisdiction except Austria, the United Kingdom, Belgium, France, Germany, the Netherlands, Spain, Switzerland, Italy and Luxembourg (the "EU Approved Offering Countries") that would permit a public offering in relation to the exchange offers or consent solicitations, or the possession, circulation or distribution of this prospectus or any material relating to us or the exchange consideration where action for that purpose is required. Accordingly, the exchange offers may not be conducted, directly or indirectly, and neither this prospectus nor any other offering material or advertisement in connection with the exchange offers may be distributed or published, in or from any such country or jurisdiction, except in compliance with any applicable rules or regulations of any such country or jurisdiction.

In relation to each Member State of the European Economic Area ("EEA") which has implemented Directive 2003/71/EC of the European Parliament and Council (the "Prospectus Directive") (each, a "Relevant Member State"), other than EU Approved Offering Countries, GM, GM Nova Scotia and each Dealer Manager has represented and agreed that with effect from and including the date on which the Prospectus Directive is implemented in that Relevant Member State (the "Relevant Implementation Date") that neither GM, GM Nova Scotia nor any Dealer Manager has made nor will make an offer of GM common stock to the public in that Relevant Member State prior to the publication of a prospectus in relation to the GM common stock which has been approved by the competent authority in that Relevant Member State other than EU Approved Offering Countries or, where appropriate, approved in another Relevant Member State and notified to the competent authority in that Relevant Member State, all in accordance with the Prospectus Directive and applicable law, except that we may, with effect from and including the Relevant Implementation Date, make an offer of GM common stock to a "non-U.S. qualified offeree" in a Relevant Member State.

For purposes of the exchange offers (and the exercise of the call option), "non-U.S. qualified offeree" means:

(a) a person who is determined by us in our sole discretion to be eligible to receive exchange consideration;

(b) a person who has delivered to the Clearing Systems on or prior to the expiration date (and has not revoked), a validly completed and duly executed letter of transmittal or agent's messages in lieu thereof, or a valid electronic instruction notice certifying that it is a non-U.S. qualified offeree;

(c) legal entities in the EEA that are authorized or regulated to operate in the financial markets in the applicable jurisdiction or, if not so authorized or regulated, whose corporate purpose is solely to invest in securities;

(d) legal entities in the EEA that have two or more of

(i) an average of at least 250 employees during the last financial year,

176

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007541

(ii) a total balance sheet of more than €43,000,000 and

(iii) annual net turnover of more than €50,000,000, as shown in its last annual or consolidated accounts;

(e) any other entity in the EEA in circumstances that do not require the publication of a prospectus by us in the applicable jurisdiction pursuant to Article 3 of the Prospectus Directive as implemented by any Member State of the EEA;

(f) a person or legal entity that is resident in:

(i) the United Kingdom;

(ii) the Grand Duchy of Luxembourg;

(iii) Germany;

(iv) Austria;

(v) France;

(vi) Belgium;

(vii) the Netherlands;

(viii) Spain;

(ix) Italy; or

(x) Switzerland;

provided that any person falling under paragraph (f) above, other than a resident of Switzerland or a person who does not otherwise constitute a non-U.S. qualified offeree pursuant to the provisions of paragraphs (a) to (e) above or (g) below, shall only be deemed to be a non-U.S. qualified offeree subsequent to the provision by the UKLA of the EU Approved Prospectus to the competent authority in the relevant jurisdiction listed in paragraph (f) above pursuant to Articles 17 and 18 of the Prospectus Directive; or

(g) a person or legal entity that is:

(i) resident in Canada, with respect to (i) convertible old notes, any holder; and (ii) old notes other than convertible old notes, a holder who is an "accredited investor" as defined in National Instrument 45-106—Prospectus and Registration Exemptions ("NI 45-106") and who otherwise qualifies for the exemption contained in Section 2.3 of NI 45-106;

(ii) in Finland and a qualified investor (*kokenut sijoittaja*) as defined in, and in accordance with Chapter 1 section 4 subsection 6 of the Securities Markets Act (*Arvopaperimarkkinalaki*) (26.5.1989/495, as amended);

(iii) in Singapore either (a) an existing holder of old notes or (b) and a person to whom an offer of securities may be made pursuant to Section 274 (institutional investors exemption) or Section 275 (accredited investors and other relevant persons exemption) of the Securities and Futures Act Cap. 289 of Singapore;

(iv) resident in Japan (which term as used herein means any person resident in Japan, including any corporation or other entity organised under the laws of Japan) and a qualified institutional investor ("QII") as defined in Article 2, Paragraph 3, Item 1 of the Financial Instruments and Exchange Law of Japan; (Law No. 25 of 1948) (the "FIEA"); provided that in order for a resident of Japan to be deemed a non-U.S. qualified offeree pursuant to this subsection, such resident must acknowledge and agree not to transfer any common stock received pursuant to the exchange offers to any person that is not a QII;

(v) in Hong Kong, and is a "professional investor" as defined in the Securities and Futures Ordinance (Cap. 571) (the "SFO") of Hong Kong and any rules made under the SFO;

(vi) resident in South Korea and (i) an "institutional investor" as referred to in Article 2-4, Paragraph (3), Sub-paragraph 6 of the Presidential Decree to the Securities and Exchange Act of South Korea and (ii) obtains an authorisation for acquisition of New Securities as required under the Foreign Exchange Transaction Act of South Korea;

177

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007542

(vii) resident in the United Arab Emirates but who is not located in the Dubai International Financial Centre;

(viii) otherwise resident in a jurisdiction in which delivery or deemed delivery of exchange consideration to such person would not be unlawful.

The exchange offer period in Italy will only commence following the clearance of the exchange offer by CONSOB pursuant to Article 102 onwards of Legislative Decree No. 58 of February 24, 1998. Should such clearance not be obtained in good time before the commencement of the offer period as specified in this prospectus, the commencement of the offer period in Italy only will be postponed. A notice about the commencement date of the offer period in Italy will be given by publication of an advert in the Italian newspaper *"Il Sole 24 Ore"* as well as by way of press release which shall be sent to two press agencies in Italy and to CONSOB.

Each holder of old notes outside of the United States that submits the letter of transmittal or agrees to the terms of the letter of transmittal pursuant to an agent's message, or that submits an electronic instruction notice will be deemed to represent, warrant and agree that they are a non-U.S. qualified offeree. If you are acquiring any GM common stock for the account of a holder outside of the United States, you will be deemed to represent, warrant and agree that you have full power to acknowledge, on behalf of such account, that such account constitutes a non-U.S. qualified offeree. In addition, each such holder of old notes, or any entity that is acting on behalf of a such a holder of old notes, that submits the letter of transmittal, or agrees to the terms of the letter of transmittal pursuant to an agent's message, or that submits an electronic instruction notice, will be deemed to acknowledge that GM, GM Nova Scotia, the Dealer Managers and others will rely upon the truth and accuracy of your foregoing acknowledgements and representations.

*European Union.* This prospectus has been prepared on the basis that the exchange offers will either be made pursuant to an exemption under the Prospectus Directive (except in the EU Approved Offering Countries), as implemented in member states of the EEA, from the requirement to produce a prospectus for offers of the exchange consideration or by the use of this prospectus, as a prospectus approved by the UKLA and prepared in accordance with the Prospectus Directive and the Prospectus Rules made under section 73A of FSMA. Accordingly, any person making or intending to make any offer of the exchange consideration within the EEA (except in the EU Approved Offering Countries) should only do so in the EU Approved Offering Countries using this prospectus, or, in any other EU jurisdiction, in circumstances in which no obligation arises for GM, GM Nova Scotia or any of the Dealer Managers to produce a prospectus for such offer. Neither GM nor GM Nova Scotia has authorized, nor does it authorize, the making of any offer of the exchange consideration through any financial intermediary.

*Austria.* This prospectus has been drawn up in compliance with the Prospectus Directive and the Commission Regulation (EC) No. 809/2004. The document has been approved by the UKLA and has been notified by the UKLA to the FMA in Austria in accordance with art. 18 of the Prospectus Directive (implemented by sec. 8b of the Capital Market Act) for public offer in Austria. This prospectus has been published on the website of GM and is accessible to investors in Austria through the website of GM.

*Belgium.* This prospectus or any other offering material has not been and will not be submitted for approval or recognition to the CBFA and, accordingly, the exchange offers may not be made in Belgium by way of a public offering, as defined for the purposes of the Belgian Law of April 1, 2007 on public takeover bids or as defined for the purposes of the Belgian Law of June 16, 2006 on the public offer of placement instruments and the admission to trading of placement instruments on regulated markets, each as amended or replaced from time to time. Accordingly, the exchange offers may not be advertised and the exchange offers will not be extended and no memorandum, information circular, brochure or any similar document has or will be distributed, directly or indirectly, to any person in Belgium other than "qualified investors" in the sense of Article 10 of the Belgian Law of June 16, 2006 on the public offer of placement instruments and the admission to trading of placement

178

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007543

instruments on regulated markets (as amended from time to time). This prospectus has been issued only for the personal use of the above qualified investors and exclusively for the purpose of the exchange offers. Accordingly, the information contained herein may not be used for any other purpose or disclosed to any other person in Belgium.

*Canada.* The exchange offers are being made in Canada on the basis of exemptions from the formal issuer bid requirements and the prospectus and dealer registration requirements under applicable Canadian securities laws. The exchange offers and consent solicitations are only being made in Canada to those holders who qualify as non-US qualified offerees pursuant to the description in subparagraph g(i) above. The exchange offers and consent solicitations are being made to such non-US qualified offerees only pursuant to the Canadian Offering Memorandum, which will incorporate this prospectus. No securities commission or similar authority in Canada has reviewed or in any way passed upon the Canadian Offering Memorandum (including this prospectus incorporated therein), or the merits of the securities to be issued in exchange for old notes, and any representation to the contrary is an offence. Canadian Holders of USD old notes must tender their USD old notes through DTC and agree to be bound by the terms of the letter of transmittal. Canadian holders of non-USD old notes must be tendered through Euroclear or Clearstream and agree to be bound by the terms of an electronic instruction notice in accordance with the requirements of the relevant Clearing System. The procedures for tendering old notes held by Canadian holders are further described in the Canadian Offering Memorandum. Holders of old notes resident in Canada are advised to contact the Solicitation and Information Agent for a copy of the Canadian Offering Memorandum.

*Denmark.* This prospectus does not constitute a prospectus under any Danish laws or regulations and has not been filed with or approved by the Danish Financial Supervisory Authority or any other Danish regulatory authority as this prospectus has not been prepared in the context of a public offering of securities in Denmark within the meaning of the Danish Securities Trading Act or any Executive Orders issued in connection thereto. The GM common stock has not been offered or sold and will not be offered, sold or delivered directly or indirectly in Denmark, except to (i) "qualified investors" (as defined in Section 2 of the Executive Order No. 1232 of October 22, 2007 on Prospectuses for Securities Admitted for Listing or Trade on a Regulated Market, and on the First Public Offer of Securities exceeding EUR 2,500,000) and/or to (ii) less than 100 individuals or legal entities, who are not qualified investors (cf. Section 2 of the Executive Order No. 1232 of October 22, 2007 on Prospectuses for Securities Admitted for Listing or Trade on a Regulated Market, and on the First Public Offer of Securities exceeding EUR 2,500,000) or otherwise in circumstances which will not result in the offer of the GM common stock being subject to the Danish Prospectus requirements of preparing and filing a prospectus (cf. Part 6 or 12 of the Danish Securities Trading Act No. 848 of August 19, 2008 Executive Order No. 1232 of October 22, 2007 on Prospectuses for Securities Admitted for Listing or Trade on a Regulated Market, and on the First Public Offer of Securities exceeding EUR 2,500,000 and Executive Order No. 1231 of October 22, 2007 on Prospectuses for the First Public Offer of Certain Securities between EUR 100,000 and EUR 2,500,000).

*France.* An admission to trading on Euronext Paris is contemplated for the new shares of GM common stock issued upon consummation of the exchange offers. This prospectus constitutes a prospectus (including any amendment or supplement thereto or replacement thereof) prepared in connection with such admission, submitted for clearance to the UKLA, and has been notified to the Autorité Des Marchés-Financiers ("AMF") being the relevant competent authority in France, to be passported into France. In connection with the initial distribution of the new shares of GM common stock on Euronext Paris, no exchange consideration has been offered or sold nor will any exchange consideration be offered or sold, directly or indirectly, to the public in France; neither this prospectus nor any other offering material relating to the exchange consideration has been distributed or caused to be distributed, and this prospectus and any other offering material relating to the exchange consideration will not be distributed or caused to be distributed to the public in France; such offers, sales and distributions have been and shall only be made in France to (i) persons providing investment services relating to portfolio management for the accounts of third parties (*personnes fournissant le service d'investissement de gestion de portefeuilles pour compte de tiers*) and/or (ii) qualified investors (*investisseurs*

179

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

*qualifiés*) or a restricted circle of investors (*cercle restreint d'investisseurs*), all as defined in, and in accordance with, articles L.411-1, L.411-2, D.411-1 to D.411-4, D.744-1, D.754-1 and D.764-1 of the French *Code monétaire et financier*.

**Germany.** Any public offer or solicitation of securities within Germany or any securities which are permitted for trading at an organized market in Germany or elsewhere in the EEA must be in full compliance with the German Securities Prospectus Act (*Wertpapierprospektgesetz* (the "WpPG")), which implements the Prospectus Directive in Germany, and any other applicable laws in the Federal Republic of Germany. The offer and solicitation of securities to the public in Germany requires the prior publication (with specific requirements for a publication being set out in the WpPG) of a prospectus drawn up in accordance with the Prospectus Directive and the WpPG (a "PD-compliant Prospectus") approved by the German Federal Financial Supervisory Authority (*Bundesanstalt für Finanzdienstleistungsaufsicht* (the "BaFin")) or the notification of a PD-compliant Prospectus approved by another competent authority in the EEA in accordance with Art. 17 and Art. 18 of the Prospectus Directive. This prospectus constitutes a PD-compliant Prospectus which has been approved and attested by the UKLA as being a PD-compliant Prospectus and together with a German language summary of the prospectus notified to the BaFin in accordance with Art. 18 of the Prospectus Directive and the WpPG.

This prospectus together with a German language summary of the prospectus constitutes a public offer in Germany. Any investor participating in the exchange offer is solely responsible for ensuring that any offer or resale of old notes under or in connection with the exchange offers, by such investor will occur in compliance with the applicable German laws and regulations. The information in the prospectus is intended only for the use of its recipients. No person located in Germany other than the original recipients of the prospectus may rely on it or its contents.

**Greece.** This prospectus has not been approved by the Hellenic Capital Markets Commission or another EU equivalent authority and consequently is not addressed to or intended for use, in any way whatsoever, by Greek residents. The GM common stock has not been offered or sold and will not be offered, sold or delivered directly or indirectly in Greece, except to (i) "qualified investors" (as defined in article 2(f) of Greek Law 3401/2005) and/or to (ii) less than 100 individuals or legal entities, who are not qualified investors (article 3, paragraph 2(b) of Greek Law 3401/2005), or otherwise in circumstances which will not result in the offer of the new common stock being subject to the Greek Prospectus requirements of preparing a filing a prospectus (under articles 3 and 4 of Greek Law 3401/2005).

**Italy.** This prospectus has been approved by UKLA and has been notified by UKLA to CONSOB, being the competent authority in Italy, pursuant to Articles 17 and 18 of Directive 2003/71/CE and relevant implementing Italian laws and regulations. The offer will be carried out in compliance with Italian applicable laws and regulations, including Articles 102 onwards of Legislative Decree No. 58 of February 24, 1998.

**Japan.** The GM common stock issued pursuant to the exchange offers has not been and will not be registered under Article 4, paragraph 1 of the Financial Instruments and Exchange Act of Japan (Law No. 25 of 1948) (the "FIEA") pursuant to an exemption from the registration requirement applicable to a private placement of securities to a limited number of investors and qualified institutional investors (as defined in Article 2, paragraph 3, item 1 of the FIEA, "QIIs") ("Small Number Private Placement Exemption") under Article 2, paragraph 3, item 1 of the FIEA. Accordingly, the common stock has not been, directly or indirectly, offered, issued or delivered and will not be, directly or indirectly, offered, issued or delivered in Japan or to, or for the benefit of, any resident of Japan or to others for re-offering or re-sale, directly or indirectly, in Japan or to, or for the benefit of, any resident of Japan who is not a QII; and pursuant to the Small Number Private Placement Exemption, any holder who is a QII and initially acquires the common stock by tendering the old notes and each subsequent holder of such new notes or such new common equity may not transfer such common stock to any person that is not a QII.

**Hong Kong.** The contents of the Prospectus have not been reviewed by any regulatory authority in Hong Kong.

180

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007545

**Netherlands.** This document has been drawn up in compliance with the Prospectus Directive and the Commission Regulation (EC) No. 809/2004. The document has been approved by the UKLA and has been notified by the UKLA to the Netherlands Authority for the Financial Market (*Autoriteit Financiële Markten*) in accordance with Article 18 of the Prospectus Directive (implemented by Section 5:11 of the Financial Supervision Act (*Wet op het financieel toezicht*)) for a public offer in The Netherlands. This document has been made generally available by means of publication on the website of GM and is accessible to investors in The Netherlands through the website of GM.

**Spain.** This document has been approved by UKLA and has been notified by UKLA to the CNMV, being the competent authority in Spain, pursuant to Articles 17 and 18 of Directive 2003/71/CE and relevant implementing Spanish laws and regulations. The offer will be carried out in compliance with Spanish applicable laws and regulations, including Section 29 of the Spanish Securities Markets Act 1988 (as amended) and Sections 29 and 30 of Royal Decree 1310/2005.

**Switzerland.** Holders of old notes may only be invited to offer to exchange their old notes for GM common stock pursuant to this exchange offer and the common stock may only be offered in or into Switzerland in compliance with all applicable laws and regulations in force in Switzerland. To ensure compliance with the Swiss Code of Obligations and all other applicable laws and regulations of Switzerland, only this document and the documents deemed to be incorporated by reference in this document may be used in the context of any invitation to holder of old notes to offer to exchange their old notes for GM common stock pursuant to this exchange offer or any offer of the stock in or into Switzerland.

## LEGAL MATTERS

Weil, Gotshal & Manges LLP, our special counsel, will pass upon the validity of the exchange consideration to be delivered to the holders of the old notes in connection with the exchange offers and certain other matters in connection with the exchange offers and consent solicitations. Certain matters in connection with the exchange offers and the consent solicitations will be passed upon by our counsel, Jenner & Block LLP. Cahill Gordon & Reindel LLP will pass upon certain legal matters in connection with the exchange offers and the consent solicitations for the Dealer Managers.

## EXPERTS

The consolidated financial statements and financial statement schedule of General Motors Corporation incorporated in this prospectus by reference from our Annual Report on Form 10-K for the year ended December 31, 2008, and the report on the effectiveness of our internal control over financial reporting, have been audited by Deloitte & Touche LLP, an independent registered public accounting firm, as stated in their reports, which are incorporated herein by reference, which reports express (1) an unqualified opinion on the consolidated financial statements and financial statement schedule and includes explanatory paragraphs relating to (a) the existence of substantial doubt about the Corporation's ability to continue as a going concern, (b) the fair value measurement of certain assets and liabilities; the recognition and measurement of uncertain tax positions; the change in measurement date for defined benefit plan assets and liabilities; and the recognition of the funded status of the Corporation's defined benefit plans, and (c) the sale of a controlling interest in GMAC and (2) an adverse opinion on the effectiveness of GM's internal control over financial reporting because of a material weakness. Such financial statements and financial statement schedule have been so incorporated in reliance upon the reports of such firm given upon their authority as experts in accounting and auditing.

The consolidated financial statements of GMAC incorporated in this prospectus by reference from the General Motors Corporation Annual Report on Form 10-K for the year ended December 31, 2008 have been audited by Deloitte & Touche LLP, an independent registered public accounting firm, as stated in their report, which is incorporated herein by reference. Such financial statements have been so incorporated in reliance upon the report of such firm given upon their authority as experts in accounting and auditing.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007546

### DELIVERY OF LETTERS OF TRANSMITTAL

Manually signed facsimile copies of the letters of transmittal and consents will be accepted. The letter of transmittal and consent and old notes and any other required documents should be sent or delivered by each tendering holder or a beneficial owner's broker, bank, or other nominee or custodian to the Exchange Agent, at its addresses set forth on the back cover of this prospectus.

The Exchange Agent and Solicitation and Information Agent for the exchange offers and consent solicitations is D.F. King & Co., Inc.

182

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007547

ANNEX A

The proposed amendments to the 1990 Indenture and 1995 Indenture will delete the following provisions:

"SECTION 4.06 *Limitations on Liens.* For the benefit of the Securities, the Corporation will not, nor will it permit any Manufacturing Subsidiary to, issue or assume any Debt secured by a Mortgage upon any Principal Domestic Manufacturing Property of the Corporation or any Manufacturing Subsidiary or upon any shares of stock or indebtedness of any Manufacturing Subsidiary (whether such Principal Domestic Manufacturing Property, shares of stock or indebtedness are now owned or hereafter acquired) without in any such case effectively providing concurrently with the issuance or assumption of any such Debt that the Securities (together with, if the Corporation shall so determine, any other indebtedness of the Corporation or such Manufacturing Subsidiary ranking equally with the Securities and then existing or thereafter created) shall be secured equally and ratably with such Debt, unless the aggregate amount of Debt issued or assumed and so secured by Mortgages, together with all other Debt of the Corporation and its Manufacturing Subsidiaries which (if originally issued or assumed at such time) would otherwise be subject to the foregoing restrictions, but not including Debt permitted to be secured under clauses (i) through (vi) of the immediately following paragraph, does not at the time exceed 20% of the stockholders' equity of the Corporation and its consolidated subsidiaries, as determined in accordance with generally accepted accounting principles and shown on the audited consolidated balance sheet contained in the latest published annual report to the stockholders of the Corporation.

The above restrictions shall not apply to Debt secured by (i) Mortgages on property, shares of stock or indebtedness of any corporation existing at the time such corporation becomes a Manufacturing Subsidiary; (ii) Mortgages on property existing at the time of acquisition of such property by the Corporation or a Manufacturing Subsidiary, or Mortgages to secure the payment of all or any part of the purchase price of such property upon the acquisition of such property by the Corporation or a Manufacturing Subsidiary or to secure any Debt incurred prior to, at the time of, or within 180 days after, the later of the date of acquisition of such property and the date such property is placed in service, for the purpose of financing all or any part of the purchase price thereof, or Mortgages to secure any Debt incurred for the purpose of financing the cost to the Corporation or a Manufacturing Subsidiary of improvements to such acquired property; (iii) Mortgages securing Debt of a Manufacturing Subsidiary owing to the Corporation or to another Subsidiary; (iv) Mortgages on property of a corporation existing at the time such corporation is merged or consolidated with the Corporation or a Manufacturing Subsidiary or at the time of a sale, lease or other disposition of the properties of a corporation as an entirety or substantially as an entirety to the Corporation or a Manufacturing Subsidiary; (v) Mortgages on property of the Corporation or a Manufacturing Subsidiary in favor of the United States of America or any State thereof, or any department, agency or instrumentality or political subdivision of the United States of America or any State thereof, or in favor of any other country, or any political subdivision thereof, to secure partial, progress, advance or other payments pursuant to any contract or statute or to secure any indebtedness incurred for the purpose of financing all or any part of the purchase price or the cost of construction of the property subject to such Mortgages; or (vi) any extension, renewal or replacement (or successive extensions, renewals or replacements) in whole or in part of any Mortgage referred to in the foregoing clauses (i) to (v), inclusively; *provided, however,* that the principal amount of Debt secured thereby shall not exceed by more than 115% the principal amount of Debt so secured at the time of such extension, renewal or replacement and that such extension, renewal- or replacement shall be limited to all or a part of the property which secured the Mortgage so extended, renewed or replaced (plus improvements on such property).

SECTION 4.07 *Limitation on Sale and Lease-Back.* For the benefit of the Securities, the Corporation will not, nor will it permit any Manufacturing Subsidiary to, enter into any arrangement with any person providing for the leasing by the Corporation or any Manufacturing Subsidiary of any Principal Domestic Manufacturing Property owned by the Corporation or any Manufacturing Subsidiary on the date that the Securities are originally issued (except for temporary leases for a term of not more than five years and except for leases between the Corporation and a Manufacturing Subsidiary or between Manufacturing Subsidiaries), which property has been or is to be sold or transferred by the Corporation or such Manufacturing Subsidiary to such person, unless either (i) the Corporation or such Manufacturing Subsidiary would be entitled, pursuant to the provisions of the

A-1

covenant on limitation on liens described above, to issue, assume, extend, renew or replace Debt secured by a Mortgage upon such property equal in amount to the Attributable Debt in respect of such arrangement without equally and ratably securing the Securities; provided, however, that from and after the date on which such arrangement becomes effective the Attributable Debt in respect of such arrangement shall be deemed for all purposes under the covenant on limitation on liens described in Section 4.06 and this covenant on limitation on sale and lease-back to be Debt subject to the provisions of the covenant on limitation on liens described above (which provisions include the exceptions set forth in clauses (i) through (vi) of such covenant), or (ii) the Corporation shall apply an amount in cash equal to the Attributable Debt in respect of such arrangement to the retirement (other than any mandatory retirement or by way of payment at maturity), within 180 days of the effective retirement date of any such arrangement, of Debt of the Corporation or any Manufacturing Subsidiary (other than Debt owned by the Corporation or any Manufacturing Subsidiary) which by its terms matures at or is extendible or renewable at the option of the obligor to a date more than twelve months after the date of the creation of such Debt.

SECTION 4.08 *Definitions Applicable to Sections 4.06 and 4.07*. The following definitions shall be applicable to the covenants contained in Sections 4.06 and 4.07 hereof:

(a) "Attributable Debt" means, at the time of determination as to any lease, the present value (discounted at the actual rate, if stated, or, if no rate is stated, the implicit rate of interest of such lease transaction as determined by the chairman, president, any vice chairman, any vice president, the treasurer or any assistant treasurer of the Corporation), calculated using the interval of scheduled rental payments under such lease, of the obligation of the lessee for net rental payments during the remaining term of such lease (excluding any subsequent renewal or other extension options held by the lessee). The term "net rental payments" means, with respect to any lease for any period, the sum of the rental and other payments required to be paid in such period by the lessee thereunder, but not including, however, any amounts required to be paid by such lessee (whether or not designated as rental or additional rental) on account of maintenance and repairs, insurance, taxes, assessments, water rates, indemnities or similar charges required to be paid by such lessee thereunder or any amounts required to be paid by such lessee thereunder contingent upon the amount of sales, earnings or profits or of maintenance and repairs, insurance, taxes, assessments, water rates, indemnities or similar charges; provided, however, that, in the case of any lease which is terminable by the lessee upon the payment of a penalty in an amount which is less than the total discounted net rental payments required to be paid from the later of the first date upon which such lease may be so terminated and the date of the determination of net rental payments, "net rental payments" shall include the then current amount of such penalty from the later of such two dates, and shall exclude the rental payments relating to the remaining period of the lease commencing with the later of such two dates.

(b) "Debt" means notes, bonds, debentures or other similar evidences of indebtedness for money borrowed.

(c) "Manufacturing Subsidiary" means any Subsidiary (A) substantially all the property of which is located within the continental United States of America, (B) which owns a Principal Domestic Manufacturing Property and (C) in which the Corporation's investment, direct or indirect and whether in the form of equity, debt, advances or otherwise, is in excess of $2,500,000,000 as shown on the books of the Corporation as of the end of the fiscal year immediately preceding the date of determination; *provided, however*, that "Manufacturing Subsidiary" shall not include Electronic Data Systems Corporation and its Subsidiaries, Hughes Electronics Corporation and its Subsidiaries, General Motors Acceptance Corporation and its Subsidiaries (or any corporate successor of any of them) or any other Subsidiary which is principally engaged in leasing or in financing installment receivables or otherwise providing financial or insurance services to the Corporation or others or which is principally engaged in financing the Corporation's operations outside the continental United States of America.

(d) "Mortgage" means any mortgage, pledge, lien, security interest, conditional sale or other title retention agreement or other similar encumbrance.

A-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007549

(e)  "Principal Domestic Manufacturing Property" means any manufacturing plant or facility owned by the Corporation or any Manufacturing Subsidiary which is located within the continental United States of America and, in the opinion of the Board of Directors, is of material importance to the total business conducted by the Corporation and its consolidated affiliates as an entity.

(f)  "Subsidiary" means any corporation of which at least a majority of the outstanding stock having by the terms thereof ordinary voting power to elect a majority of the board of directors of such corporation (irrespective of whether or not at the time stock of any other class or classes of such corporation shall have or might have voting power by reason of the happening of any contingency) is at the time owned by the Corporation, or by one or more Subsidiaries, or by the Corporation and one or more Subsidiaries."

The proposed amendments to the 1990 Indenture and 1995 Indenture will delete the following Events of Default in Section 6.01:

"... (c) failure on the part of the Corporation duly to observe or perform any other of the covenants or agreements on the part of the Corporation applicable to such series of the Securities or contained in this Indenture for a period of ninety days after the date on which written notice of such failure, requiring the Corporation to remedy the same, shall have been given to the Corporation by the Trustee, or to the Corporation and the Trustee by the Holders of at least twenty-five percent in aggregate principal amount of the Securities of such series at the time outstanding; or

(d)  a court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Corporation in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of the Corporation or for any substantial part of its property, or ordering the winding-up or liquidation of its affairs and such decree or order shall remain unstayed and in effect for a period of ninety days; or

(e)  the Corporation shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of the Corporation or for any substantial part of its property, or shall make any general assignment for the benefit of creditors;"

The proposed amendments to the 1990 Indenture and 1995 Indenture will change the heading of Article Eleven to "[Reserved]" in the 1990 Indenture and "Certificate of Trustee" in the 1995 Indenture, and in both the 1990 Indenture and the 1995 Indenture will delete the following provisions:

"SECTION 11.01 *Corporation May Consolidate, etc. on Certain Terms.* The Corporation covenants that it will not merge or consolidate with any other corporation or sell or convey all or substantially all of its assets to any person, firm or corporation, unless (i) either the Corporation shall be the continuing corporation, or the successor corporation (if other than the Corporation) shall be a corporation organized and existing under the laws of the United States of America or a state thereof and such corporation shall expressly assume the due and punctual payment of the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on all the Securities and any coupons according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of this Indenture to be performed by the Corporation by supplemental indenture satisfactory to the Trustee, executed and delivered to the Trustee by such corporation, and (ii) the Corporation or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or condition.

SECTION 11.02 *Successor Corporation Substituted.* In case of any such consolidation, merger, sale or conveyance and upon any such assumption by the successor corporation, such successor corporation shall succeed to and be substituted for the Corporation, with the same effect as if it had been named herein as the party of the first part. Such successor corporation thereupon may cause to be signed, and may issue either in its own

A-3

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007550

name or in the name of General Motors Corporation, any or all of the Securities, and any coupons appertaining thereto, issuable hereunder which theretofore shall not have been signed by the Corporation and delivered to the Trustee; and, upon the order of such successor corporation, instead of the Corporation, and subject to all the terms, conditions and limitations in this Indenture prescribed, the Trustee shall authenticate and shall deliver any Securities or coupons which previously shall have been signed and delivered by the officers of the Corporation to the Trustee for authentication, and any Securities or coupons which such successor corporation thereafter shall cause to be signed and delivered to the Trustee for that purpose. All of the Securities, and any coupons appertaining thereto, so issued shall in all -respects have the same legal rank and benefit under this Indenture as the Securities or coupons theretofore or thereafter issued in accordance with the terms of this Indenture as though all of such Securities, and any coupons appertaining thereto, had been issued at the date of the execution hereof.

In case of any such consolidation, merger, sale or conveyance such changes in phraseology and form (but not in substance) may be made in the Securities and coupons thereafter to be issued as may be appropriate.

SECTION 11.03 *Opinion of Counsel to be Given Trustee*. The Trustee, subject to the provisions of Sections 7.01 and 7.02, may receive an Opinion of Counsel as conclusive evidence that any such consolidation, merger, sale or conveyance, and any such assumption, complies with the provisions of this Article Eleven."

A-4

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**ANNEX B**

## NOTICE OF MEETINGS

of the holders of

**General Motors Corporation**

*(incorporated with limited liability under the laws of the State of Delaware, United States of America)*

**EUR 1,000,000,000 7.25 per cent. Notes due 2013 (the "2013 Notes")**

*(ISIN: XS0171942757)*

**EUR 1,500,000,000 8.375 per cent. Notes due 2033 (the "2033 Notes")**

*(ISIN: XS0171943649)*

(the "**Euro Notes**")

and

**General Motors Nova Scotia Finance Company**

*(incorporated under the laws of Nova Scotia)*

**Guaranteed absolutely and unconditionally by**

**General Motors Corporation**

*(incorporated with limited liability under the laws of the State of Delaware, United States of America)*

**£350,000,000 8.375 per cent. Notes due 2015 (the "2015 Notes")**

*(ISIN: XS0171922643)*

**£250,000,000 8.875 per cent. Notes due 2023 (the "2023 Notes")**

*(ISIN: XS0171908063)*

(the "**Sterling Notes**" and, together with the Euro Notes, the "**Non-USD Old Notes**"; each issue of Non-USD Old Notes, a "**Series**")

Upon the terms and subject to the conditions set forth in the prospectus dated April 27, 2009 (the "Prospectus") and the electronic instruction notice (as defined in the Prospectus), General Motors Corporation ("**GM**") is offering to exchange 225 shares of GM common stock (as defined in the Prospectus) for each 1,000 U.S. dollar equivalent of principal amount of Non-USD Old Notes.

In respect of the exchange offers for the Sterling Notes, General Motors Nova Scotia Finance Company ("**GM Nova Scotia**"), a wholly-owned subsidiary of General Motors Corporation, is jointly making the exchange offers with GM.

In addition, (a) GM will pay, in cash, accrued but unpaid interest on the Euro Notes called for redemption pursuant to the call option and (b) GM Nova Scotia will pay, in cash, accrued but unpaid interest on the Sterling Notes called for redemption pursuant to the call option, in each case, from and including the most recent interest payment date to, but not including, the redemption date.

In connection with the exchange offers, GM and, in the case of the Sterling Notes, GM Nova Scotia are also seeking to amend the Euro Note Fiscal and Paying Agency Agreement and the Sterling Note Fiscal and Paying Agency Agreement (each as defined below). The form of the Extraordinary Resolutions effecting such amendments are set out in the following notice of meeting.

NOTICE IS HEREBY GIVEN that, with respect to,

(a)   the 2013 Notes, pursuant to Condition 11 of the 2013 Notes and the provisions of Schedule 4 to the fiscal and paying agency agreement dated as of July 3, 2003 (as made among, *inter alia*, General Motors Corporation, Deutsche Bank AG London (the "**Euro Note Fiscal Agent**") and Banque

B-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

Générale du Luxembourg (the "**Euro Note Paying Agent**") (the "**Euro Note Fiscal and Paying Agency Agreement**")), a meeting (the "**2013 Meeting**") of the holders of the 2013 Notes (the "**2013 Holders**") convened by General Motors Corporation will be held at 1:00 p.m. (London time) on May 27, 2009 at the offices of Weil, Gotshal & Manges located at One South Place, London EC2M 2WG for the purpose of considering and, if thought fit, passing the following resolutions which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Euro Note Fiscal and Paying Agency Agreement;

(b) the 2015 Notes, pursuant to Condition 12 of the 2015 Notes and the provisions of Schedule 4 to the fiscal and paying agency agreement dated as of July 10, 2003 (as made among, *inter alia*, General Motors Nova Scotia Finance Company, General Motors Corporation, Deutsche Bank Luxembourg S.A. (the "**Sterling Note Fiscal Agent**") and Banque Générale du Luxembourg (the "**Sterling Note Paying Agent**") (the "**Sterling Note Fiscal and Paying Agency Agreement**")), a meeting (the "**2015 Meeting**") of the holders of the 2015 Notes (the "**2015 Holders**") convened by General Motors Nova Scotia Finance Company will be held at 1:30 p.m. (London time) on May 27, 2009 at the offices of Weil, Gotshal & Manges located at One South Place, London EC2M 2WG for the purpose of considering and, if thought fit, passing the following resolutions which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Sterling Note Fiscal and Paying Agency Agreement;

(c) the 2023 Notes, pursuant to Condition 12 of the 2023 Notes and the provisions of Schedule 4 to the Sterling Note Fiscal and Paying Agency Agreement, a meeting (the "**2023 Meeting**") of the holders of the 2023 Notes (the "**2023 Holders**") convened by General Motors Nova Scotia Finance Company will be held at 2:30 p.m. (London time) on May 27, 2009 at the offices of Weil, Gotshal & Manges located at One South Place, London EC2M 2WG for the purpose of considering and, if thought fit, passing the following resolutions which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Sterling Note Fiscal and Paying Agency Agreement; and

(d) the 2033 Notes, pursuant to Condition 11 of the 2033 Notes and the provisions of Schedule 4 to the Euro Note Fiscal and Paying Agency Agreement, a meeting (the "**2033 Meeting**") of the holders of the 2033 Notes (the "**2033 Holders**") convened by General Motors Corporation, will be held at 2:00 p.m. (London time) on May 27, 2009 at the offices of Weil, Gotshal & Manges located at One South Place, London EC2M 2WG for the purpose of considering and, if thought fit, passing the following resolutions which will be proposed as Extraordinary Resolutions in accordance with the provisions of the Euro Note Fiscal and Paying Agency Agreement.

The 2013 Meeting, the 2015 Meeting, the 2023 Meeting and the 2033 Meeting are referred to in this Notice of Meetings as the "**Meetings**" and each, a "**Meeting**". The 2013 Holders, the 2015 Holders, the 2023 Holders and the 2033 Holders are referred to in this notice as the "**Holders**" and each, a "**Holder**".

EXTRAORDINARY RESOLUTIONS TO BE CONSIDERED BY THE 2013 MEETING, THE 2015 MEETING, THE 2023 MEETING AND THE 2033 MEETING

Set out below in a combination form is the text of the Extraordinary Resolutions to be considered at the above-listed Meetings. For clarity, the opening text for the Extraordinary Resolutions in respect of each Series has been set out separately.

*For the 2013 Notes:*

"THAT THIS MEETING (the "**2013 Meeting**") of the holders (the "**2013 Holders**") of the EUR 1,000,000,000 7.25 per cent. Notes due 2013 issued on July 3, 2003 of General Motors Corporation (the "**Company**") and benefiting from the provisions of the fiscal and paying agency agreement among General Motors Corporation, Deutsche Bank AG London (the "**Euro Note Fiscal Agent**") and Banque Générale du

B-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007553

Luxembourg (the "**Euro Note Paying Agent**") dated as of July 3, 2003 (the "**Euro Note Fiscal and Paying Agency Agreement**") by Extraordinary Resolutions (as defined in the Euro Note Fiscal and Paying Agency Agreement) (these "**Extraordinary Resolutions**") HEREBY:"

*For the 2015 Notes:*

"THAT THIS MEETING (the "**2015 Meeting**") of the holders (the "**2015 Holders**") of the £350,000,000 8.375 per cent. Notes due 2015 issued on July 10, 2003 of General Motors Nova Scotia Finance Company (the "**Company**") and benefiting from the provisions of the fiscal and paying agency agreement among General Motors Corporation, General Motors Nova Scotia Finance Company, Deutsche Bank Luxembourg S.A. (the "**Sterling Note Fiscal Agent**") and Banque Générale du Luxembourg (the "**Sterling Note Paying Agent**") dated as of July 10, 2003 (the "**Sterling Note Fiscal and Paying Agency Agreement**") by Extraordinary Resolutions (as defined in the Sterling Note Fiscal and Paying Agency Agreement) (these "**Extraordinary Resolutions**") HEREBY:"

*For the 2023 Notes:*

"THAT THIS MEETING (the "**2023 Meeting**") of the holders (the "**2023 Holders**") of the £250,000,000 8.875 per cent. Notes due 2023 issued on July 10, 2003 of General Motors Nova Scotia Finance Company (the "**Company**") and benefiting from the provisions of the fiscal and paying agency agreement among General Motors Corporation, General Motors Nova Scotia Finance Company, Deutsche Bank Luxembourg S.A. (the "**Sterling Note Fiscal Agent**") and Banque Générale du Luxembourg (the "**Sterling Note Paying Agent**") dated as of July 10, 2003 (the "**Sterling Note Fiscal and Paying Agency Agreement**") by Extraordinary Resolutions (as defined in the Sterling Note Fiscal and Paying Agency Agreement) (these "**Extraordinary Resolutions**") HEREBY:"

*For the 2033 Notes:*

"THAT THIS MEETING (the "**2033 Meeting**") of the holders (the "**2033 Holders**") of the EUR 1,500,000,000 8.375 per cent. Notes due 2033 issued on July 3, 2003 of General Motors Corporation (the "**Company**") and benefiting from the provisions of the fiscal and paying agency agreement among General Motors Corporation, Deutsche Bank AG London (the "**Euro Note Fiscal Agent**") and Banque Générale du Luxembourg (the "**Euro Note Paying Agent**") dated as of July 3, 2003 (the "**Euro Note Fiscal and Paying Agency Agreement**") by Extraordinary Resolution (as defined in the Euro Note Fiscal and Paying Agency Agreement) (these "**Extraordinary Resolutions**") HEREBY:"

*For the 2013 and 2033 Notes (each series voting separately):*

**RESOLVES** by special quorum an Extraordinary Resolution in accordance with the proviso to paragraph 5 of Schedule 4 of the Euro Note Fiscal and Paying Agency Agreement to authorise and direct the following:

(i)    the addition of a new provision at the end of, and forming part of, Condition 5 as follows:

"*(f) Redemption at the option of the Company*

The Notes (excluding Notes accepted for exchange pursuant to the exchange offers (as such term is defined in prospectus dated April 27, 2009 (the "Prospectus"))) may be redeemed at the option of the Company (such option, the "call option") in whole but not in part on any business day for the exchange consideration (as such term is defined in the Prospectus (*i.e.*, 225 shares of GM common stock per 1,000 U.S. dollar equivalent of principal amount of non-USD old notes)) effective immediately upon the Issuer giving notice to the Noteholders (which notice may be given on the business day prior to the effectiveness of this Condition) (notwithstanding Clause (d) of Condition 5). For the avoidance of doubt, for purposes of determining the consideration to be delivered pursuant to the call option, the U.S. dollar principal amount of the Notes called for redemption pursuant to the call option will be

B-3

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007554

determined as set forth in the Prospectus based on the relevant exchange rate in effect on the business day prior to the expiration date of the exchange offers. In addition, the Company will pay, in cash, accrued but unpaid interest on the Notes called for redemption pursuant to the call option from and including the most recent interest payment date to, but not including, the redemption date. This Condition shall become effective on the settlement date (as such term is defined in the Prospectus). From and after the time this Condition becomes effective and the Company has provided notice to the Noteholders of its intent to redeem the Notes pursuant to this Condition, (1) the Notes will be deemed to be discharged, (2) the Notes will not be transferable and (3) no Noteholder shall have any right in respect of Notes to be redeemed other than the right to receive payment of exchange consideration and accrued but unpaid interest as aforesaid.";

**RESOLVES** by ordinary quorum an Extraordinary Resolution in accordance with paragraph 5 of Schedule 4 of the Euro Note Fiscal and Paying Agency Agreement to authorise and direct the following:

(i)    the removal of Condition 7 with the addition of the words "Condition 7 [intentionally omitted]" in substitution therefor; and

(ii)    the removal of paragraphs (c), (d) and (e) in Condition 8 "Events of Default" and references thereto anywhere else in the Condition; and

(iii)    the removal of Condition 10 with the addition of the words "Condition 10 [intentionally omitted]" in substitution therefor.

*For the 2015 and 2023 Notes (each series voting separately)*

**RESOLVES** by special quorum an Extraordinary Resolution in accordance with the proviso to paragraph 5 of Schedule 4 of the Sterling Note Fiscal and Paying Agency Agreement to authorise and direct the following:

(i)    the addition of a new provision at the end of, and forming part of, Condition 6 as follows:

**"Redemption at the option of the Issuer**

The Notes (excluding Notes accepted for exchange pursuant to the exchange offers (as such term is defined in prospectus dated April 27, 2009 (the "Prospectus"))) may be redeemed at the option of the Company (such option, the "call option") in whole but not in part on any business day for the exchange consideration (as such term is defined in the Prospectus (*i.e.*, 225 shares of GM common stock per 1,000 U.S. dollar equivalent of principal amount of non-USD old notes)) effective immediately upon the Company giving notice to the Noteholders (which notice may be given on the business day prior to the effectiveness of this Condition) (notwithstanding the first paragraph set forth under "Notice of Redemption" in Condition 6). For the avoidance of doubt, for purposes of determining the consideration to be delivered pursuant to the call option, the U.S. dollar principal amount of the Notes called for redemption pursuant to the call option will be determined as set forth in the Prospectus based on the relevant exchange rate in effect on the business day prior to the expiration date of the exchange offers. In addition, the Company will pay, in cash, accrued but unpaid interest on the Notes called for redemption pursuant to the call option from and including the most recent interest payment date to, but not including, the redemption date. This Condition shall become effective on the settlement date (as such term is defined in the Prospectus). From and after the time this Condition becomes effective and the Company has provided notice to the Noteholders of its intent to redeem the Notes pursuant to this Condition, (1) the Notes will be deemed to be discharged, (2) the Notes will not be transferable and (3) no Noteholder shall have any right in respect of Notes to be redeemed other than the right to receive payment of exchange consideration and accrued but unpaid interest as aforesaid.";

**RESOLVES** by ordinary quorum an Extraordinary Resolution in accordance with paragraph 5 of Schedule 4 of the Sterling Note Fiscal and Paying Agency Agreement to authorise and direct the following:

(i)    the removal of Condition 8 with the addition of the words "Condition 8 [intentionally omitted]" in substitution therefor; and

B-4

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007555

(ii) the removal of paragraphs (c), (d) and (e) in Condition 9 "Events of Default" and references thereto anywhere else in the Condition; and

(iii) the removal of Condition 11 with the addition of the words "Condition 11 [intentionally omitted]" in substitution therefor.

*For the remainder of the text of the Extraordinary Resolutions, where there is a choice of years or names in square brackets, only the year or name applicable to a given series of Non-USD Old Notes will appear in the Extraordinary Resolutions for that series:*

(a) assents to and approves and sanctions, upon exercise of the call option, (i) the delivery to the relevant holders of the exchange consideration and accrued but unpaid interest in respect of the [2013 Notes] [2015 Notes] [2023 Notes] [2033 Notes] subject to the call option, provided that such holders have confirmed their status as non-U.S. qualified offerees to the satisfaction of the Company or (ii) (A) the transfer of such exchange consideration and accrued but unpaid interest to the Settlement and Escrow Agent (as defined in the Prospectus) in the case of holders who have not confirmed their status as non-U.S. qualified offerees to the satisfaction of the Company and (B) the implementation of the Escrow Arrangement (if the Company by notice to the [2013 Notes] [2015 Notes] [2023 Notes] [2033 Notes] Holders through Euroclear Bank S.A./N.V. or Clearstream Banking S.A. (together, the "**Clearing Systems**") elects, to implement it), in the case of clauses (A) and (B), upon and subject to the terms and conditions set out in "*Proposed Amendments—Non-USD Old Notes—Escrow Arrangement*" of the Prospectus;

(b) authorises, directs and empowers the [Sterling Note Fiscal Agent] [Euro Note Fiscal Agent] to concur in, approve, and execute, and do all such deeds, instruments, acts and things that may be necessary to carry out and give effect to these Extraordinary Resolutions;

(c) sanctions, assents to and approves the form of Escrow Agreement produced to this Meeting and signed by the chairman of the Meeting for the purposes of identification to carry out and give effect to the potential Escrow Arrangement referred to in paragraph (a)(ii)(B) of these Extraordinary Resolutions if the Company elect to implement it;

(d) sanctions, assents to and approves any necessary or consequential amendment to the [Sterling] [Euro] Fiscal and Paying Agency Agreement to effect these Extraordinary Resolutions; and

(e) acknowledges that capitalised terms used in these Extraordinary Resolutions have the same meanings as those defined in the [Euro] [Sterling] Note Fiscal and Paying Agency Agreement or the Prospectus, as applicable.

## Background

The Prospectus, a copy of which is available as indicated below, explains the background to and reasons for, gives full details of, and invites the holders to vote on (at their respective Meeting), the applicable Extraordinary Resolutions. In order to receive a copy of the Prospectus, each holder will be required to confirm via e-mail to the Company, the Tabulation Agent and the Dealer Managers that it is permitted by applicable law to receive it and is requested to contact the Tabulation Agent (whose contact details are set out at the end of this Notice of Meetings) as soon as possible to obtain further information concerning the relevant procedure.

## Documents Available for Inspection or Collection

Noteholders may, at any time during normal business hours on any weekday (Saturdays, Sundays and bank and other public holidays excepted) prior to the Meeting:

(a) obtain an electronic copy of the Prospectus through the Exchange Agent, provided that such holder is permitted by applicable law to receive it and provides an e-mail certification to the effect to the Company, the Tabulation Agent and the Dealer Managers or inspect a copy of the Prospectus at the specified office of the Tabulation Agent or the registered office of the Company set out below; and/or

B-5

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007556

(b)   inspect copies of the following documents at the specified office of the [Euro] [Sterling] Note Fiscal Agent, as applicable, set out below and at the specified office of the [Euro] [Sterling] Note Paying Agent in Luxembourg being:

    (i)   in respect of the 2013 and 2033 Notes:

- the Euro Note Fiscal and Paying Agency Agreement;

- the Offering Circular dated July 1, 2003 relating to the issue of the 2013 and 2033 Notes;

    (ii)  in respect of the 2015 and 2023 Notes:

- the Sterling Note Fiscal and Paying Agency Agreement;

- the Offering Circular dated July 9, 2003 relating to the issue of the 2015 and 2025 Notes;

## General

**The attention of holders is particularly drawn to the quorum required for their respective Meeting and for an adjourned Meeting which is set out in "*Voting and Quorum*" below. Having regard to such requirements, holders are strongly urged either to attend their respective Meeting or to take steps to be represented at such Meeting, as referred to below, as soon as possible.**

None of Morgan Stanley & Co. Incorporated, Banc of America Securities LLC, Barclays Capital Inc., Citigroup Global Markets Inc., Deutsche Bank Securities Inc., J.P. Morgan Securities Inc., UBS Securities LLC or Wachovia Capital Markets, LLC (the "**Dealer Managers**") nor GM or GM Nova Scotia expresses any view as to the merits of the exchange offers, the consent solicitations or the Extraordinary Resolutions. None of the [Euro] [Sterling] Note Fiscal Agent or any Dealer Manager has been involved in negotiating the Extraordinary Resolutions and none makes a representation that all relevant information has been disclosed to the holders in or pursuant to the Prospectus and this Notice of Meetings. Holders who are unsure of the impact of the exchange offers, the consent solicitations and/or the relevant Extraordinary Resolutions should seek their own independent financial and legal advice.

GM, GM Nova Scotia and the Dealer Managers will each bear certain customary legal, accounting and other professional fees and expenses associated with the exchange offers and the consent solicitations, as described in the Prospectus.

## Voting and Quorum

1.   The provisions governing the convening and holding of the Meetings or any adjourned such Meetings are set out in respect of the 2013 Notes and 2033 Notes, in Schedule 4 to the Euro Note Fiscal and Paying Agency Agreement, and in respect of the 2015 Notes and 2023 Notes, in Schedule 4 to the Sterling Note Fiscal and Paying Agency Agreement, copies of which are available for inspection as referred to above.

2.   Holders who have sent a valid Electronic Instruction Notice pursuant to the Prospectus at least one business day before the time appointed for the holding of their respective Meeting need take no further action in relation to voting at such Meeting. Such Electronic Instruction Notice contains an irrevocable instruction to the relevant Paying Agent to appoint persons nominated by the Tabulation Agent as their proxy in relation to such Meeting and instruct it to vote as directed in the Electronic Instruction Notice.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007557

**Paragraphs 3 to 6 below apply only to Holders who have not sent valid Electronic Instruction Notices at least one business day before the time appointed for their respective Meeting and who wish to vote at such Meeting.**

3.   Holders wishing to attend and vote at their respective Meetings or any adjourned such Meeting in person (or appoint another person other than the Tabulation Agent's nominee as provided above to do so on its behalf) must produce at such Meeting either the relevant Non-USD Old Notes, as applicable, or a valid voting certificate issued by the relevant Paying Agent relating to such Non-USD Old Notes, in respect of which it wishes to vote.

4.   A holder not wishing to attend and vote at their respective Meeting in person (or appoint another person as aforesaid to do so on its behalf) may give a voting instruction as described in paragraph 5(b) below.

5.   The Non-USD Old Notes, as applicable, may, not less than one business day before the time fixed for the relevant Meeting (or, if applicable, any adjourned such Meeting) and within the relevant time limit specified by the relevant Clearing System, be deposited with the relevant Paying Agent or (to its satisfaction) held to its order or under its control by the relevant Clearing System for the purpose of:

(a)   obtaining a voting certificate from such Paying Agent; or

(b)   such Paying Agent completing a block voting instruction in respect of such Non-USD Old Notes appointing a proxy to attend and vote at such Meeting (or, if applicable, any adjourned such Meeting) in accordance with the instructions (including an Electronic Instruction Notice) of the holder. A holder will need to give voting instructions (such voting instructions being neither revocable nor capable of alteration by the holder during the period commencing one business day prior to the time fixed for such Meeting (or, if applicable, any adjourned such Meeting) and within the relevant time limit specified by the relevant Clearing System) on a voting instruction form obtainable from the specified office of a relevant Paying Agent or in the form of an electronic voting instruction in accordance with the standard procedures of the relevant Clearing System (including in either case an Electronic Instruction Notice), to a relevant Paying Agent, not less than one business day before the time fixed for such Meeting (or, if applicable, any adjourned such Meeting) to enable such Paying Agent to complete the block voting instruction.

6.   Non-USD Old Notes so deposited or held will not be released:

(a)   in the case of Non-USD Old Notes in respect of which a voting certificate has been issued, until the first to occur of:

(i)   the conclusion of the Meeting specified in such certificate or, if later, of any adjourned such Meeting; and

(ii)   the surrender of the certificate to the relevant Paying Agent who issued the same; and

(b)   in the case of Non-USD Old Notes in respect of which a block voting instruction has been issued, until the first to occur of:

(i)   the conclusion of the Meeting specified in such document or, if later, of any adjourned such Meeting; and

(ii)   the surrender to the relevant Paying Agent not less than one business day before the time for which such Meeting or any adjourned Meeting is convened of the receipt issued by such Paying Agent in respect of each such deposited Non-USD Old Notes which is to be released or (as the case may require) the Non-USD Old Notes ceasing with the agreement of the Paying Agent to be held to its order or under its control and the giving of notice by the Paying Agent to the Issuer of the necessary amendment to the block voting instruction.

7.   To be passed at the Meetings, the Extraordinary Resolutions (a) to amend Condition 5 of the 2013 and 2033 Notes and Condition 6 of the 2015 Notes and 2023 Notes, in each case, to add the call option

B-7

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007558

requires the affirmative vote of one or more persons present holding Non-USD Old Notes of the applicable Series or voting certificates or being proxies and holding or representing in aggregate not less than 66 2/3 percent of the principal amount of the Non-USD Old Notes of the applicable Series for the time being outstanding (as defined in the Euro Note Fiscal and Paying Agency Agreement or the Sterling Note Fiscal and Paying Agency Agreement, as applicable) and (b) to amend Conditions 7, 8 and 10 of the 2013 and 2033 Notes and Condition 8, 9 and 11 of the 2015 and 2023 Notes, in each case, to remove certain covenants and events of default requires the affirmative vote of one or more persons present holding Non-USD Old Notes of the applicable Series or voting certificates or being proxies and holding or representing in aggregate not less than a clear majority of the principal amount of the Non-USD Old Notes of the relevant Series for the time being outstanding (as defined in the Euro Note Fiscal and Paying Agency Agreement or Sterling Note Fiscal and Paying Agency Agreement, as applicable).

If passed, the Extraordinary Resolutions shall be binding upon all the holders of the Non-USD Old Notes of the relevant Series, whether present or not present at the Meeting and whether or not voting, and upon all holders of interest coupons appertaining thereto.

If, within fifteen minutes after the time appointed for the relevant Meeting, a quorum is not present, the Meeting shall stand adjourned for such period, being not less than 14 days nor more than 42 days, and at such place as may be appointed by the chairman of the relevant Meeting (the "**Chairman**") and approved by the relevant Fiscal Agent. To be passed at an adjourned Meeting, the Extraordinary Resolutions require the affirmative vote of one or more persons present holding Non-USD Old Notes of the applicable Series or voting certificates or being proxies and holding or representing in the aggregate not less than a clear majority of the principal amount of Non-USD Old Notes of the applicable series for the time being outstanding.

8.  Notice of any adjourned Meeting shall be given in the same manner as notice of the original Meeting by 10 days' notice, in each case containing the information required for the notice of the original Meeting and such notice stating the relevant quorum.

9.  Every question submitted to the relevant Meeting shall be decided in the first instance by a show of hands and in case of equality of votes, the Chairman shall both on a show of hands and on a poll have a casting vote in addition to the vote or votes (if any) to which he may be entitled as a holder or as a holder of a voting certificate or as a proxy. A poll may be demanded by the Chairman (before or on the declaration of the result of the show of hands), GM or GM Nova Scotia, as applicable, or two or more persons present holding Non-USD Old Notes of the relevant Series, as applicable, or voting certificates or being proxies and holding or representing not less than one fiftieth of the principal amount of such Non-USD Old Notes. On a show of hands every person who is present in person and produces a Non-USD Old Note of the relevant series, as applicable, or a voting certificate or is a proxy shall have one vote. On a poll every person who is so present shall have one vote in respect of each minimum integral amount of the relevant Series, in each case so produced or represented by the voting certificate so produced or for which he is a proxy.

10.  This Notice of Meetings is governed by, and shall be construed in accordance with, New York law.

11.  The Non-USD Old Notes are listed on the Luxembourg Stock Exchange.

12.  The Sterling Note Fiscal Agent and Sterling Note Paying Agent in respect of the 2015 and 2023 Notes are:

| **Sterling Note Fiscal Agent and Paying Agent** | **Sterling Note Paying Agent** |
| --- | --- |
| Deutsche Bank Luxembourg S.A.<br>2, Bld Konrad Adenauer<br>L-1115 Luxembourg | Banque Générale du Luxembourg<br>50 Avenue J.F. Kennedy<br>L-2951 Luxembourg |

B-8

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER
NGM000007559

13.  The Euro Note Fiscal Agent and Euro Note Paying Agent in respect of the 2013 and 2033 Notes are:

| **Euro Note Fiscal Agent and Paying Agent** | **Euro Note Paying Agent** |
|---|---|
| Deutsche Bank AG London | Banque Générale du Luxembourg |
| Winchester House | 50 Avenue J.F. Kennedy |
| 1 Great Winchester Street | L-2951 Luxembourg |
| London EC2N 2DB | |

14.  The Tabulation Agent with respect to the consent solicitations is:

D.F. King (Europe) Limited
One Ropemaker Street
London EC2Y 9HT

This Notice of Meetings is given by:

**General Motors Corporation and General Motors Nova Scotia Finance Company**

April 27, 2009

This Notice of Meetings does not contain or constitute an offer of, or the solicitation of an offer to buy or subscribe for, securities to any person in any jurisdiction in which such offer or solicitation is unlawful. The offer and sale of the securities referred to herein has not been and will not be registered under the applicable securities laws of Hong Kong or Japan.

Noteholders subject to the jurisdiction of the United States, United Kingdom or Canada and who attend the meeting pursuant to this Notice of Meetings or who provide an electronic instruction notice through Euroclear or Clearstream will be deemed to have acknowledged receiving the U.S. prospectus as filed with the U.S. Securities and Exchange Commission, a separate EU compliant prospectus dated on or about April 27, 2009 as approved by the United Kingdom Listing Authority or a separate Canadian offering memorandum dated April 27, 2009, as applicable. Requests for any prospectus or the Canadian offering memorandum should be directed to D.F. King & Co., Inc. at the postal address noted above or by telephone at +44 20 7920 9700 (banks and brokers only) or in London at 00 800 5464 5464 (all other persons).

A registration statement relating to the securities offered has been filed with the U.S. Securities and Exchange Commission but has not yet become effective. The securities may not be sold nor may offers to buy be accepted prior to the time the registration statement becomes effective.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007560

*You should rely only on the information contained or incorporated by reference in this prospectus. Neither we nor the Dealer Managers have authorized any other person to provide you with different or additional information. If anyone provides you with different or additional information, you should not rely on it. We are not making an offer to sell securities in any jurisdiction where the offer or sale is not permitted. You should assume that the information in this prospectus is accurate as of the date appearing on the front cover of this prospectus only. Our business, financial condition, results of operations and prospects may have changed since that date.*

# General Motors Corporation

*Exchange Offers and Consent Solicitations for any and all of the
Outstanding Notes set forth above*

*Questions, requests for assistance and requests for additional copies of this prospectus may be directed to the Exchange Agent and Solicitation and Information Agent at their respective addresses set forth below:*

*The Global Coordinators for the exchange offers are:*

**MORGAN STANLEY**              **BANC OF AMERICA SECURITIES LLC**

*The Exchange Agent and Solicitation and Information Agent for the exchange offers is:*

**D.F. King & Co., Inc.**                    **D.F. King (Europe) Limited**
**48 Wall Street, 22nd Floor**              **One Ropemaker Street**
**New York, New York 10005**                **London EC2Y 9HT**
**Banks and Brokers call: (212) 269-5550**  **Banks and Brokers call: +44 20 7920 9700**
**All others call toll free: (800) 769-7666**  **All others call toll free: 00 800 5464 5464**
**Email: gm@dfking.com**                     **Email: gm@dfking.com**

*The Settlement and Escrow Agent for the non-USD old notes is:*

**Deutsche Bank AG, London Branch**
**Deutsche Bank AG London**
**Winchester House**
**1 Great Winchester Street**
**London EC2N 2DB**
**Email: xchange.offer@db.com**

*The Luxembourg Exchange Agent for the exchange offers is:*

**Deutsche Bank Luxembourg, S.A.**
**2, Bld Konrad Adenauer**
**L-1115 Luxembourg**
**Email: xchange.offer@db.com**

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007561

# PART II

## INFORMATION NOT REQUIRED IN PROSPECTUS

### Item 20.    Indemnification of Directors and Officers

Under Section 145 of the Delaware Corporation Law, General Motors Corporation ("GM") is empowered to indemnify its directors and officers as provided therein.

GM's Certificate of Incorporation, as amended, provides that no director shall be personally liable to GM or its stockholders for monetary damages for breach of fiduciary duty as a director, except for liability (a) for any breach of the director's duty of loyalty to GM or its stockholders, (b) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law, (c) under Section 174, or any successor provision thereto, of the Delaware General Corporation Law, or (d) for any transaction from which the director derived an improper personal benefit.

Under Article V of its Bylaws, GM shall indemnify and advance expenses to every director and officer (and to such person's heirs, executors, administrators or other legal representatives) in the manner and to the full extent permitted by applicable law as it presently exists, or may hereafter be amended, against any and all amounts (including judgments, fines, payments in settlement, attorneys' fees and other expenses) reasonably incurred by or on behalf of such person in connection with any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (a "proceeding"), in which such director or officer was or is made or is threatened to be made a party or is otherwise involved by reason of the fact that such person is or was a director or officer of GM, or is or was serving at the request of GM as a director, officer, employee, fiduciary or member of any other corporation, partnership, joint venture, trust, organization or other enterprise. GM shall not be required to indemnify a person in connection with a proceeding initiated by such person if the proceeding was not authorized by the board of directors of GM. GM shall pay the expenses of directors and officers incurred in defending any proceeding in advance of its final disposition ("advancement of expenses"); provided, however, that the payment of expenses incurred by a director or officer in advance of the final disposition of the proceeding shall be made only upon receipt of an undertaking by the director or officer to repay all amounts advanced if it should be ultimately determined that the director or officer is not entitled to be indemnified under Article V of the Bylaws or otherwise. If a claim for indemnification or advancement of expenses by an officer or director under Article V of the Bylaws is not paid in full within ninety days after a written claim therefor has been received by GM, the claimant may file suit to recover the unpaid amount of such claim and, if successful in whole or in part, shall be entitled to be paid the expense of prosecuting such claim. In any such action, GM shall have the burden of proving that the claimant was not entitled to the requested indemnification or advancement of expenses under applicable law. The rights conferred on any person by Article V of the Bylaws shall not be exclusive of any other rights which such person may have or hereafter acquire under any statute, any provision of GM's Certificate of Incorporation or of these Bylaws, or of any agreement, vote of stockholders or disinterested directors, or otherwise.

GM is insured against liabilities which it may incur by reason of Article V of its Bylaws. In addition, directors and officers are insured, at GM's expense, against some liabilities which might arise out of their employment and not be subject to indemnification under Article V of the Bylaws.

Pursuant to a resolution adopted by GM's board of directors on December 1, 1975, GM, to the fullest extent permissible under law, will indemnify, and has purchased insurance on behalf of, its directors or officers and subsidiaries, or any of them, who incur or are threatened with personal liability, including expenses, under the Employee Retirement Income Security Act of 1974, as amended, or any amendatory or comparable legislation or regulation thereunder.

### Item 21.    Exhibits and Financial Statement Schedules

A list of exhibits filed with this registration statement on Form S-4 is set forth on the Exhibit Index and is incorporated herein by reference.

II-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**Item 22.    Undertakings**

(i) The undersigned registrant hereby undertakes:

(1) Insofar as indemnification for liabilities arising under the Securities Act of 1933 may be permitted to directors, officers and controlling persons of the registrant pursuant to the foregoing provisions, or otherwise, the registrant has been advised that in the opinion of the Securities and Exchange Commission such indemnification is against public policy as expressed in the Act and is, therefore, unenforceable. In the event that a claim for indemnification against such liabilities (other than the payment by the registrant of expenses incurred or paid by a director, officer or controlling person of the registrant in the successful defense of any action, suit or proceeding) is asserted by such director, officer or controlling person in connection with the securities being registered, the registrant will, unless in the opinion of its counsel the matter has been settled by controlling precedent, submit to a court of appropriate jurisdiction the question whether such indemnification by it is against public policy as expressed in the Act and will be governed by the final adjudication of such issue.

(2) The undersigned registrant hereby undertakes to respond to requests for information that is incorporated by reference into the prospectus pursuant to Items 4, 10(b), 11, or 13 of this form, within one business day of receipt of such request, and to send the incorporated documents by first class mail or other equally prompt means. This includes information contained in documents filed subsequent to the effective date of the registration statement through the date of responding to the request.

(3) The undersigned registrant hereby undertakes to supply by means of post-effective amendment all information concerning a transaction, and the company being acquired involved therein, that was not the subject of and included in the registration statement when it became effective.

(4) To file, during any period in which offers or sales are being made, a post-effective amendment to this registration statement

(i) To include any prospectus required by Section 10(a)(3) of the Securities Act;

(ii) To reflect in the prospectus any facts or events arising after the effective date of the registration statement (or the most recent post-effective amendment thereof) which, individually or in the aggregate, represent a fundamental change in the information set forth in the registration statement. Notwithstanding the foregoing, any increase or decrease in volume of securities offered (if the total dollar value of securities offered would not exceed that which was registered) and any deviation from the low or high end of the estimated maximum offering range may be reflected in the form of prospectus filed with the Commission pursuant to Rule 424(b) if, in the aggregate, the changes in volume and price represent no more than 20% change in the maximum aggregate offering price set forth in the "Calculation of Registration Fee" table in the effective registration statement; and

(iii) To include any material information with respect to the plan of distribution not previously disclosed in the registration statement or any material change to such information in the registration statement;

(5) that, for the purpose of determining any liability under the Securities Act of 1933, each such post-effective amendment shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof;

(6) to remove from registration by means of a post-effective amendment any of the securities being registered which remain unsold at the termination of the offering;

(7) that, for the purpose of determining liability under the Securities Act of 1933 to any purchaser:

(A) each prospectus filed by the registrant pursuant to Rule 424(b)(3) shall be deemed to be part of the registration statement as of the date the filed prospectus was deemed part of and included in the registration statement; and

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007563

(B) each prospectus required to be filed pursuant to Rule 424(b)(2), (b)(5) or (b)(7) as part of a registration statement in reliance on Rule 430B relating to the exchange offering made pursuant to Rule 415(a)(1)(i), (vii) or (x) for the purpose of providing the information required by Section 10(a) of the Securities Act of 1933 shall be deemed to be part of and included in the registration statement as of the earlier of the date such form of prospectus is first used after effectiveness or the date of the first contract of sale of securities in the offering described in prospectus. As provided in Rule 430B, for liability purposes of the issuer and any person that is at that date an underwriter, such date shall be deemed to be a new effective date of the registration statement relating to the securities in the registration statement to which the prospectus relates, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof. Provided, however, that no statement made in a registration statement or prospectus that is part of the registration statement or made in a document incorporated or deemed incorporated by reference into the registration statement or prospectus that is part of the registration statement will, as to a purchaser with a time of contract of sale prior to such effective date, supersede or modify any statement that was made in the registration statement or prospectus that was part of the registration statement or made in any such document immediately prior to such effective date; and

(8) that, for the purpose of determining liability of the registrant under the Securities Act of 1933 to any purchaser in the initial distribution of the securities, the undersigned registrant undertakes that in a primary offering of securities of the undersigned registrant pursuant to this registration statement, regardless of the underwriting method used to sell the securities to the purchaser, if the securities are offered or sold to such purchaser by means of any of the following communications, the undersigned registrant will be a seller to the purchaser and will be considered to offer or sell such securities to such purchaser:

(i) any preliminary prospectus or prospectus of the undersigned registrant relating to the offering required to be filed pursuant to Rule 424;

(ii) any free writing prospectus relating to the offering prepared by or on behalf of the undersigned registrant or used or referred to by the undersigned registrant;

(iii) the portion of any other free writing prospectus relating to the offering containing material information about the undersigned registrant or its securities provided by or on behalf of the undersigned registrant; and

(iv) any other communication that is an offer in the offering made by the undersigned registrant to the purchaser.

(9) The undersigned registrant hereby undertakes that, for purposes of determining any liability under the Securities Act, each filing of the registrant's annual report pursuant to Section 13(a) or Section 15(d) of the Securities Exchange Act that is incorporated by reference in this registration statement shall be deemed to be a new registration statement relating to the securities offered therein, and the offering of such securities at that time shall be deemed to be the initial bona fide offering thereof.

II-3

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007564

## SIGNATURES

Pursuant to the requirements of the Securities Act, General Motors Corporation has duly caused this registration statement to be signed on its behalf by the undersigned, thereunto authorized, in the City of Detroit, State of Michigan, on April 27, 2009.

General Motors Corporation

By: _____ /S/ FREDERICK A. HENDERSON _____
Frederick A. Henderson
Chief Executive Officer

Pursuant to the requirements of the Securities Act, this registration statement has been signed by the following persons in the capacities and on the dates indicated.

| Signature | Title | Date |
|---|---|---|
| /S/ FREDERICK A. HENDERSON<br>Frederick A. Henderson | Chief Executive Officer (Principal Executive Officer) | April 27, 2009 |
| /S/ RAY G. YOUNG<br>Ray G. Young | Executive Vice President and Chief Financial Officer (Principal Financial Officer) | April 27, 2009 |
| /S/ NICK S. CYPRUS<br>Nick S. Cyprus | Controller and Chief Accounting Officer (Principal Accounting Officer) | April 27, 2009 |
| *<br>Erskine B. Bowles | Director | April 27, 2009 |
| *<br>Armando M. Codina | Director | April 27, 2009 |
| *<br>Erroll B. Davis, Jr. | Director | April 27, 2009 |
| *<br>George M.C. Fisher | Director | April 27, 2009 |
| *<br>E. Neville Isdell | Director | April 27, 2009 |
| *<br>Karen Katen | Director | April 27, 2009 |
| *<br>Kent Kresa | Chairman of the Board and Director | April 27, 2009 |
| *<br>Philip A. Laskawy | Director | April 27, 2009 |
| *<br>Eckhard Pfeiffer | Director | April 27, 2009 |

*    The undersigned, by signing his name hereto, does execute this Registration Statement on behalf of the persons identified above pursuant to a power of attorney.

By: _____ /S/ ROBERT C. SHROSBREE _____
Robert C. Shrosbree
Attorney-in-Fact

S-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007565

## INDEX TO EXHIBITS

| Exhibit Number | Description |
| --- | --- |
| 1.1 | Dealer Managers Agreement dated as of April 26, 2009, by and among General Motors Corporation and Morgan Stanley & Co. Incorporated, Banc of America Securities LLC, Barclays Capital Inc., Citigroup Global Markets Inc., Deutsche Bank Securities Inc., J.P. Morgan Securities Inc., UBS Securities LLC and Wachovia Capital Markets, LLC, as dealer managers. + |
| 3.1 | Restated Certificate of Incorporation dated May 1, 2004, incorporated herein by reference to Exhibit 3(i) to the Annual Report on Form 10-K of General Motors Corporation filed March 11, 2004. |
| 3.2 | Form of Certificate of Amendment to the Restated Certificate of Incorporation of General Motors Corporation. + |
| 3.3 | Specimen Certificate for Shares of Common Stock of General Motors Corporation, incorporated by reference to Exhibit 4(c) to Form S-3ASR Registration Statement No. 333-153332 filed on September 5, 2008. |
| 3.4 | Specimen Certificate for Shares of Common Stock, $0.01 par value, of General Motors Corporation. + |
| 4.1 | Indenture, dated as of November 15, 1990, between General Motors Corporation and Citibank, N.A., Trustee, incorporated herein by reference to Exhibit Amendment No. 1(a) to Form S-3 Registration Statement No. 33-41577 filed July 3, 1991. |
| 4.2 | Indenture, dated as of December 7, 1995, between General Motors Corporation and Citibank, N.A., Trustee, incorporated herein by reference to Exhibit 4(a) to Form S-3 Registration Statement No. 33-64229 filed November 14, 1995. |
| 4.3 | First Supplemental Indenture, dated as of March 4, 2002, between General Motors Corporation and Citibank, N.A., incorporated herein by reference to Exhibit 2 to the Current Report on Form 8-K of General Motors Corporation filed March 6, 2002. |
| 4.4 | Second Supplemental Indenture, dated as of November 5, 2004, between General Motors Corporation and Citibank, N.A., incorporated herein by reference to Exhibit 4.1 to the Current Report on Form 8-K of General Motors Corporation filed November 10, 2004. |
| 4.5 | Third Supplemental Indenture, dated as of November 5, 2004, between General Motors Corporation and Citibank, N.A. incorporated herein by reference to Exhibit 4.2 to the Current Report on Form 8-K of General Motors Corporation filed November 10, 2004. |
| 4.6 | Fourth Supplemental Indenture, dated as of November 5, 2004, between General Motors Corporation and Citibank, N.A., incorporated herein by reference to Exhibit 4.3 to the Current Report on Form 8-K of General Motors Corporation filed November 10, 2004. |
| 4.7 | Supplemental Indenture, dated as of August 13, 2007, between General Motors Corporation and Wilmington Trust Company, as trustee. + |
| 4.8 | Fiscal and Paying Agency Agreement, dated as of July 3, 2003 among General Motors Corporation and Deutsche Bank AG London and Banque Générale du Luxembourg S.A. + |
| 4.9 | Fiscal and Paying Agency Agreement, dated as of July 10, 2003 among General Motors Nova Scotia Finance Company, General Motors Corporation and Deutsche Bank Luxembourg S.A. and Banque Générale du Luxembourg S.A. + |
| 5.1 | Opinion of Weil, Gotshal & Manges LLP. + |
| 5.2 | Opinion of Martin I. Darvick, Esq. , Attorney, legal staff of General Motors Corporation. + |
| 12.1 | Computation of Ratio of Earnings to Fixed Charges. + |
| 23.1 | Consent of Deloitte & Touche LLP. + |
| 23.2 | Consent of Weil, Gotshal & Manges LLP (included in Exhibit 5.1). |
| 23.3 | Consent of Martin I. Darvick, Esq. (included in Exhibit 5.2). |

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

| Exhibit Number | Description |
|---|---|
| 23.4 | Consent of Hamilton, Rabinowitz & Associates, Inc.+ |
| 24.1 | Power of Attorney for Directors of General Motors Corporation.+ |
| 99.1 | Form of Letter of Transmittal. + |
| 99.2 | Form of Letter to Brokers. + |
| 99.3 | Form of Letter to Clients. + |

(+)  Filed herewith.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007567

**Exhibit 1.1**

**Execution Copy**

**GENERAL MOTORS CORPORATION**

**DEALER MANAGERS AGREEMENT**

April 26, 2009

Morgan Stanley & Co. Incorporated
Banc of America Securities LLC
Barclays Capital Inc.
Deutsche Bank Securities Inc.
Citigroup Global Markets Inc.
J.P. Morgan Securities Inc.
UBS Securities LLC
Wachovia Capital Markets, LLC
(at their respective addresses set forth in Schedule 2 hereto)

Ladies and Gentlemen:

General Motors Corporation, a Delaware corporation (the "Company"), plans, on the terms and subject to the conditions described in the Prospectus (as defined below), to make offers to exchange (the "Exchange Offers") any and all of the outstanding (i) public unsecured notes denominated in U.S. Dollars ("USD") of the Company of each series listed on Schedule 1 hereto (the "Old GM USD Notes"), (ii) public unsecured notes denominated in Euro of the Company of each series listed on Schedule 1 hereto ("Old GM Euro Notes" and, together with the Old GM USD Notes, the "Old GM Notes") and (iii) public unsecured notes denominated in Pounds Sterling ("GBP") of GM Nova Scotia Finance Company ("GM Nova Scotia") of each series listed on Schedule 1 hereto (the "Old GM Nova Scotia Notes" and, together with the Old GM Euro Notes, the "Old Non-USD Notes" and the Old Non-USD Notes together with the Old GM Notes, the "Old Notes"), in each case validly tendered and not validly withdrawn in the Exchange Offers, for a fixed amount (the "Exchange Consideration") of newly issued shares (the "New Common Shares" or the "New Securities") of common stock, par value $0.01 (after giving effect to the Par Value Reduction (as defined below)), of the Company (the "GM Common Stock"). Capitalized terms not otherwise defined in Section 24 hereof or otherwise herein are used as defined in the Prospectus.

Not later than 30 days prior to the Closing Date (as defined below), the Company will file with the Commission, and not later than 20 days prior to the Closing Date, the Company will distribute to all holders of GM Common Stock, an information statement on Schedule 14C (the "Schedule 14C") pursuant to Section 14(c) of the Exchange Act, describing, among other things, an amendment (the "Charter Amendment"), in the form authorized by the Company's board of directors, to the Company's restated certificate of incorporation (the "Certificate of Incorporation") to effect (i) the implementation of a reduction in the par value of GM Common Stock (the "Par Value Reduction"), (ii) an increase in the number of authorized shares of GM Common Stock to 62 billion shares (the "Common Stock Increase") and (iii) the implementation of a 1 for 100 reverse split of GM Common Stock (the "Reverse Stock Split").

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

In respect of each voting class of Old GM USD Notes, the Company is also soliciting (the "Indenture Consent Solicitations"), concurrently with the Exchange Offers, consents (the "Consents") of holders of Old GM USD Notes to amend certain of the terms of the indentures governing the Old GM USD Notes (the "Existing Indentures") to (i) remove substantially all material affirmative and negative covenants and events of default, other than those relating to the obligation to pay principal and interest on the Old GM USD Notes (collectively, the "Proposed Covenants Amendments") and (ii) solely with respect to Company's 1.50% Series D Convertible Debentures due June 1, 2009 (the "Series D Old Notes"), to have holders of such Series D Old Notes that tender and do not validly withdraw such Series D Old Notes prior to the initial Withdrawal Date irrevocably agree, in the event the Exchange Offers and Solicitations are extended beyond June 1, 2009, to forbear from taking any action to enforce, or direct enforcement of, and waive any and all of the rights and remedies available to such Holders under the applicable Existing Indenture and to extend the maturity of such tendered Series D Old Notes until the earlier of (a) the termination of the Exchange Offers (including in the event that the Company files a petition for relief under the U.S. Bankruptcy Code) and (b) the Closing Date (the "Series D Forbearance Amendments" and, together with the Proposed Covenant Amendments, the "Proposed Indenture Amendments"), in each case in accordance with the terms and conditions of the applicable Existing Indenture. On or prior to the Closing Date, subject to receipt of the requisite Consents under the applicable Existing Indenture, the Company and the applicable Existing Trustee (as defined below) will execute supplemental indentures (the "Supplemental Indentures") to the Existing Indentures to give effect to the Proposed Indenture Amendments. In respect of each series of the Old Non-USD Notes, the Company (or, in respect of the Old GM Nova Scotia Notes, GM Nova Scotia) is soliciting (the "Paying Agency Agreement Solicitations" and, together with the Indenture Consent Solicitations, the "Solicitations") concurrently with the Exchange Offers, proxies from such holders of Old Non-USD Notes (the "Proxies"), to approve amendments to certain of the terms of the fiscal and paying agency agreements governing the Old Non-USD Notes (the "Paying Agency Agreements"), including (i) the insertion of an early call option (the "Call Option") in such series of Old Non-USD Notes and (ii) the removal of substantially all material affirmative and negative covenants and events of default, other than those relating to the obligation to pay principal and interest on such series of Old Non-USD Notes (collectively, the "Proposed Paying Agency Agreement Amendments" and, together with the Proposed Indenture Amendments, the "Proposed Amendments"), in accordance with the terms and conditions of the applicable Paying Agency Agreement.

The Exchange Offers are part of a larger restructuring by the Company required by that certain loan and security agreement (as may be amended or supplemented and including all ancillary documents related thereto, the "UST Loan Agreement"), dated as of December 31, 2008, by and between the Company, as borrower, and the United States Department of the Treasury, as lender (the "U.S. Treasury"). The UST Loan Agreement contains certain requirements as it relates to the implementation of the Exchange Offers, the Labor Modifications and the VEBA Modifications.

As a condition to the consummation of the Exchange Offers and Solicitations, the U.S. Treasury must agree to accept GM Common Stock in exchange for (a) full satisfaction of at least 50% of the Company's outstanding indebtedness under the UST Loan Agreement at June 1, 2009 and (b) full satisfaction and cancellation of the Company's obligations under the warrant granted to the U.S. Treasury (the "U.S. Treasury Debt Conversion").

-2-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007569

The Exchange Offers and the Solicitations shall be conducted on the terms and subject to the conditions set forth in (i) the preliminary prospectus dated April 27, 2009, attached hereto as Exhibit A (as amended or supplemented and including any documents incorporated by reference therein, the "Preliminary Prospectus") included in the Registration Statement (as defined below) as filed with the Commission on April 27, 2009, (ii) the related letter of transmittal and consent (as amended, modified or supplemented from time to time, the "Letter of Transmittal"), attached hereto as Exhibit B, with respect to Holders tendering Old Notes pursuant to the Exchange Offers, (iii) in respect of the USD Exchange Offer, the tender offer statement on Schedule TO filed with the Commission pursuant to Rule 14d-3 under the Exchange Act, including the required exhibits thereto and any documents incorporated by reference therein (as may be amended or supplemented, the "Schedule TO") and (iv) in respect of the Exchange Offers and the Solicitations conducted in jurisdictions identified in Annex B hereto (the "Non-U.S. Approval Jurisdictions"), one or more prospectus supplements, translations, wraps or similar documents affixed to the Preliminary Prospectus or Prospectus, as the case may be (together with any such documents or exhibits thereto, official notices and circulars in connection therewith, each a "Non-U.S. Prospectus").

The date on which the New Common Shares are issued pursuant to the Exchange Offers shall be referred to herein as the "Closing Date." This agreement between the Company and the Dealer Managers as set forth herein shall hereinafter be referred to as the "Agreement," and all reference to "Holders" of Old Notes refer to holders of Old Notes who have validly tendered and not validly withdrawn their Old Notes in the Exchange Offers. This Agreement, the Supplemental Indentures, the Charter Amendment, the Escrow Agreement, any binding agreement in respect of the Labor Modifications, the VEBA Modifications, the U.S. Treasury Debt Conversion and the Proposed Paying Agency Agreement Amendments hereinafter shall be referred to collectively as the "Transaction Documents."

References to the "Offer and Solicitation Material" shall hereinafter refer to the items in clauses (a) through (i) below, together with all information and documents incorporated by reference therein (such incorporated information and documents collectively, the "Incorporated Documents"): (a) the Registration Statement, (b) the Preliminary Prospectus, (c) the Prospectus, (d) the Letter of Transmittal, (e) the Schedule 14C, (f) each Non-U.S. Prospectus, (g) any press releases or newspaper advertisements of the Company and any other information that the Company may file (including any written communication filed with the Commission pursuant to Rule 425 under the Securities Act) or publicly disseminate or provide to holders of Old Notes, in each case in connection with the Exchange Offers and the Solicitations, as any of them may be amended, modified or supplemented from time to time, (h) any other material furnished by or with the written consent of the Company to holders of the Old Notes in connection with the Exchange Offers and the Solicitations and (i) the Schedule TO.

The Offer and Solicitation Material has been or will be prepared and approved by, and its accuracy and completeness are the responsibility of, the Company, except as otherwise expressly set forth in Section 12(a)(i) and Section 12(b) of this Agreement . The Company shall,

-3-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007570

to the extent permitted by law, use commercially reasonable efforts to disseminate the Offer and Solicitation Material (other than any press releases or newspaper advertisements relating to the Exchange Offers and the Solicitations and the Schedule 14C) to registered holders of Old Notes, as soon as practicable after the Commencement Date (as defined below), and, in respect of the convertible Old GM USD Notes, pursuant to Rule 13e-4 under the Exchange Act, so as to fulfill all requirements thereof as to the commencement of the USD Exchange Offer not later than the date hereof, and comply with its obligations thereunder. You are authorized to use the Offer and Solicitation Material delivered on or prior to the date hereof in connection with the Exchange Offers and the Solicitations in the manner contemplated by the Offer and Solicitation Material along with such other offering materials and information that the Company may approve in writing in advance for use subsequent to the date hereof in connection with the Exchange Offers and the Solicitations (together with any and all information and documents incorporated by reference therein, collectively, the "<u>Additional Material</u>"). You agree to discontinue use of any Offer and Solicitation Material and any Additional Material promptly after written notification by the Company that such Offer and Solicitation Material or Additional Material shall no longer be used in connection with the Exchange Offers and Solicitations.

The Company agrees to furnish to you as many copies as you may reasonably request of the Offer and Solicitation Material and any Additional Material (in each case, as amended or supplemented, if amended or supplemented) in final form for use by you in connection with the Exchange Offers and the Solicitations. The Dealer Managers (as defined below) each hereby agree that, without the prior written consent of the Company (which consent the Company agrees will not be unreasonably withheld), the Dealer Managers will not hereafter disseminate any written materials to holders of Old Notes for or in connection with the solicitation of tenders of Old Notes and Consents and Proxies pursuant to the Exchange Offers, other than the Offer and Solicitation Material and any Additional Material, or make any representations to holders of Old Notes in connection with the solicitation of tenders of Old Notes and Consents and Proxies pursuant to the Exchange Offers, other than as contained in the Offer and Solicitation Material and any Additional Material.

1. The Company hereby engages Morgan Stanley & Co. Incorporated, Banc of America Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., J.P. Morgan Securities Inc., UBS Securities LLC and Wachovia Capital Markets, LLC (collectively, the "<u>Dealer Managers</u>") as exclusive dealer managers in connection with the Exchange Offers and exclusive solicitation agents (collectively, the "<u>Solicitation Agents</u>") in connection with the Solicitations on the terms and subject to the conditions set forth herein; provided, however, that if any Dealer Manager shall withdraw under this Agreement, then the Company shall have the right, in its sole discretion, to appoint a new Dealer Manager. The Company authorizes each of you to act as Dealer Manager and Solicitation Agent in connection with the Exchange Offers and the Solicitations and agrees that you shall act as independent contractors with duties solely to the Company and that your rights and obligations pursuant to this Agreement shall be several and not joint. As a Dealer Manager and Solicitation Agent, you each agree, in accordance with the Exchange Offers and Solicitations and otherwise in accordance with your customary practice and all applicable laws of the United States and those jurisdictions listed on <u>Annex B</u> and <u>Annex C</u>, to perform those services in connection with the Exchange Offers and the Solicitations as are customarily performed by investment banking concerns

-4-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

in connection with Exchange Offers and Solicitations of consents and approvals of like nature, including, but not limited to, (i) using your commercially reasonable efforts to solicit (A) tenders of Old Notes sought to be exchanged by the Company pursuant to the Exchange Offers and (B) deliveries of Consents and Proxies pursuant to the Solicitations and (ii) communicating generally regarding the Exchange Offers and Solicitations with brokers, dealers, commercial banks, trust companies, nominees and other persons. You each understand and agree that the Board of Directors of the Company is not making any recommendation as to whether to accept or participate in the Exchange Offers or Solicitations and therefore, as Dealer Manager, you will not be making any such representation or recommendation. Subject to Section 21 hereof, you each further agree to be regarded as the broker-dealer that is making the Exchange Offers and Solicitations on behalf of the Company in any state of the United States in which it is required that such Exchange Offers and Solicitations be made by or through a registered or licensed broker-dealer, and you each represent that you are a registered or licensed broker-dealer in each of such states. It is understood that nothing in this Agreement nor the nature of your services shall be deemed to create a fiduciary or agency relationship between yourselves and the Company. The Company acknowledges that certain affiliates of the Dealer Managers may perform the services to be provided by the Dealer Managers and the Solicitation Agents under this Agreement in such jurisdictions as may be required in connection with the Exchange Offers and the Solicitations. To the extent that any such affiliates perform such services, they shall be entitled to the benefits of and shall be subject to the terms of this Agreement as if they were a Dealer Manager or Solicitation Agent hereunder, as applicable; provided, however, that the applicable Dealer Manager shall nevertheless remain liable for the performance of any such affiliate.

2. The Company has prepared and filed with the Commission on April 27, 2009, under the Securities Act, a registration statement on Form S-4, including the Preliminary Prospectus, covering the registration of the New Securities. The term "Registration Statement," as used in this Agreement, shall mean such registration statement, including the exhibits thereto and any documents incorporated by reference therein, in the form in which it becomes effective and, in the event of any amendment or supplement thereto after the effective date of such registration statement, shall also mean such registration statement as so amended or supplemented. The final prospectus included in the Registration Statement (including any documents incorporated in such prospectus by reference) is herein called the "Prospectus," except that if the final prospectus furnished to the Dealer Managers for use in connection with the Exchange Offers and the Solicitations differs from the final prospectus set forth in the Registration Statement (whether or not such prospectus is required to be filed pursuant to Rule 424(b)), the term "Prospectus" shall refer to the final prospectus furnished to the Dealer Managers for such use. The terms "supplement" and "amendment" or "supplemented" and "amended" as used herein with respect to the Prospectus shall include all documents that are filed by the Company with the Commission pursuant to the Exchange Act and incorporated by reference into the Prospectus prior to the consummation of the Exchange Offers and the Solicitations.

3. (a) The Company has prepared and filed, or agrees that prior to or on the date of commencement of the Exchange Offers and the Solicitations (the "Commencement Date") it will file, with the Commission under the Exchange Act the Schedule TO in respect of the USD Exchange Offer, including the required exhibits thereto and any documents incorporated by reference therein.

-5-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007572

(b) The Company has prepared and filed, submitted or published, or agrees that it will use its commercially reasonable efforts to file, submit or publish in any such Non-U.S. Approval Jurisdiction, the applicable Non-U.S. Prospectus required to be so filed, submitted or published in such Non-U.S. Approval Jurisdiction in connection with the Exchange Offers and the Solicitations and in accordance with the deadlines therein specified.

(c) The Exchange Offers and Solicitations (other than the Paying Agency Agreement Solicitations) shall be made only in the United States of America, the Non-U.S. Approval Jurisdictions and the jurisdictions identified in Annex C hereto (the "Non-U.S. Exempt Jurisdictions" and, together with the Non-U.S. Approval Jurisdictions, the "Non-U.S. Jurisdictions"), and shall be conducted in the Non-U.S. Jurisdictions (including without limitation in respect of the use and distribution of the Offer and Solicitation Material) in compliance with the laws, rules and regulations applicable in such Non-U.S. Jurisdictions and the limitations and qualifications set forth in the Prospectus under the caption "Non-U.S. Offer Restrictions" (the "Foreign Jurisdiction Restrictions"). No offers, distributions of the Offer and Solicitation Material (unless required by the Paying Agency Agreements) or solicitation shall be made in any other jurisdiction without the prior written consent of the Lead Dealer Managers, which shall not be unreasonably withheld, and the Company's prior written consent. You agree that all Offer and Solicitation Material published in the Non-U.S. Jurisdictions in connection with the Exchange Offers and the Solicitations will be issued on behalf of the Company.

4. The Company agrees that, within a reasonable time prior to using the Offer and Solicitation Material or any Additional Material (in each case, including amendments and supplements thereto, if amended or supplemented), it will provide copies of such material to the Lead Dealer Managers and counsel for the Dealer Managers, Cahill Gordon & Reindel LLP ("Cahill"), and will give reasonable consideration to comments timely received by the Company from the Lead Dealer Managers and their counsel.

With respect to any of you, in the event that (i) the Company uses or permits the use of, or files with the Commission, any Offer and Solicitation Materials (A) that have not been timely submitted to you previously for comment or (B) that have been so submitted, and you or your counsel have provided material comments in a timely manner, but the Company has unreasonably failed to address such comments; (ii) the Company shall have breached, in any material respect, any of its representations, warranties, agreements or covenants contained herein, (iii) the conditions set forth in Section 13 that are to be satisfied on or prior to the Effectiveness Date, any Withdrawal Date and the Closing Date, as the case may be, are not, in any material respect, satisfied as of such applicable date, (iv) all of the Exchange Offers and the Solicitations are terminated or withdrawn by the Company for any reason or (v) any stop order, restraining order, injunction or denial of an application for approval has been issued and not thereafter stayed or vacated, or any proceeding or litigation has been initiated, with respect to or otherwise affecting the Exchange Offers or the Solicitations or any other action or transaction contemplated by the Offer and Solicitation Material, any Additional Material or this Agreement, which such Dealer Manager, in good faith after consultation with the Company, believes renders it inadvisable to continue to act hereunder, then in any such case such Dealer Manager shall be entitled to withdraw as a Dealer Manager without any liability or penalty to you (or any person entitled to indemnification pursuant to Section 12) and without loss of any right to reimbursement for your

-6-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER
NGM000007573

expenses, fees and costs pursuant to Section 7 hereof; provided that in each case such Dealer Manager delivers notice of withdrawal to the Company at least two (2) business days prior to the effective date of such withdrawal. If you withdraw as a Dealer Manager in compliance with this Section 4, the reimbursement for your expenses pursuant to Section 7 hereof through the date of such withdrawal shall be paid to you promptly after such date. The resignation of any Dealer Manager shall not affect the rights or obligations of the other Dealer Managers hereunder.

5. The Company shall pay the Dealer Managers the fees calculated and payable as set forth in Annex A (the "Fees").

6. The Company agrees to pay a soliciting dealer fee (the "Soliciting Dealer Fees") as set forth and in accordance with the procedures described under "Dealer Managers, Exchange Agent, Solicitation and Information Agent, the Settlement and Escrow Agent and Luxembourg Exchange Agent—Fees and Expenses" in the Prospectus. The Company agrees and acknowledges that it shall be solely responsible for the payment of any Soliciting Dealer Fee and that the Soliciting Dealers may only look to the Company for payment of any such Soliciting Dealer Fee. Under no circumstances shall the Dealer Managers be liable for payment of the Soliciting Dealer Fee.

7. The Company agrees to pay all fees and expenses incurred in connection with the Exchange Offers and the Solicitations, including (i) all Soliciting Dealer Fees, (ii) all fees and expenses relating to the preparation, printing, mailing and publishing of the Offer and Solicitation Material and any Additional Material (in each case, as amended or supplemented, if amended or supplemented), (iii) all fees and expenses of the Company's counsel and accountants and of the Depositary, the Information Agent and the Luxembourg Tender Agent (as defined below), (iv) all advertising charges incurred with the prior written consent of the Company, (v) the customary mailing and handling expenses of the brokers and dealers (including you), commercial banks, trust companies and other nominees incurred in forwarding the Offer and Solicitation Material and any Additional Material (in each case, as amended or supplemented, if amended or supplemented) to their customers, (vi) all expenses incident to the issuance and delivery of the New Securities (including all printing and engraving costs), (vii) all filing fees, attorneys' fees and expenses incurred by the Company and all filing fees and reasonable attorneys' fees and out-of-pocket expenses incurred by the Dealer Managers in connection with qualifying or registering (or obtaining exemptions from the qualification or registration of) all or any part of the New Securities under the securities laws of the several states of the United States or of any Non-U.S. Jurisdictions, (viii) any fees payable in connection with the listing of the New Common Shares on the New York Stock Exchange ("NYSE"), and (ix) all fees and expenses (including reasonable fees and expenses of counsel) of the Company in connection with approval of the New Securities by The Depository Trust Company ("DTC") in the United States, Euroclear Bank, S.A./N.V. ("Euroclear") and Clearstream Banking, société anonyme ("Clearstream") outside the United States, as applicable, for "book-entry" transfer, and the performance by the Company of its other obligations under this Agreement. DTC, Euroclear and Clearstream are each referred to herein individually as a "Book-entry Transfer Facility." In addition to your compensation for your services as Dealer Managers as contemplated by Section 5 and clause (vi) above, the Company agrees to also reimburse you for all other reasonable out-of-pocket fees, costs and expenses incurred by you in connection with your services as Dealer Manager, including the reasonable

-7-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007574

fees, costs and expenses of Cahill, those foreign counsel to the Dealer Managers identified on Annex D and, subject to prior written approval of the Company, such other counsel as reasonably required by the Lead Dealer Managers in connection with making the Exchange Offers and Solicitations in jurisdictions outside the United States (collectively with foreign counsel identified on Annex D, "Dealer Manager Foreign Counsel"; Dealer Manager Foreign Counsel together with Cahill, "Dealer Manager Counsel"), whether or not (i) any Old Notes are tendered or exchanged pursuant to the Exchange Offers, (ii) the Company acquires any Old Notes pursuant to the Exchange Offers or otherwise, (iii) the Proposed Amendments are adopted or (iv) any Consents or Proxies are received in the Solicitations; provided, however, that the Company's obligation to reimburse the fees, costs and expenses of Dealer Manager Foreign Counsel shall not, in the aggregate, exceed $750,000. The Dealer Managers agree to provide, in a timely manner, such detailed documentation of expenses (including legal fees and expenses) as may be reasonably requested by the Company. All payments to be made by the Company pursuant to this Section 7 shall be made (i) not later than promptly after the earlier of (x) the Closing Date or (y) the termination of the Exchange Offers or in the case of amounts payable to any of you, your withdrawal as Dealer Manager pursuant to Section 4 (if applicable) or (ii) in the case of the reasonable fees, costs and expenses of Dealer Manager Counsel, (A) on the Commencement Date, in respect of such amount invoiced up to and including the Commencement Date and (B) promptly after the earlier of (x) the Closing Date or (y) the termination of the Exchange Offers or the withdrawal of all Dealer Managers pursuant to Section 4, in respect of such amount invoiced after the Commencement Date.

8. In connection with the Exchange Offers and the Solicitations, the Company has arranged for D.F. King & Co. to serve as depositary and exchange agent (the "Depositary") and, as such, to advise the Company and you at least daily as to such matters relating to the Exchange Offers as you may request, and to serve as information agent (the "Information Agent") and, as such, to advise the Company and you as to such matters relating to the Exchange Offers and the Solicitations as you may reasonably request and to furnish the Company and you with any written reports concerning any such information as either the Company or you may reasonably request. Additionally, in connection with the Exchange Offers and the Solicitations in respect of Old Notes listed on the Luxembourg Stock Exchange, the Company has arranged for Deutsche Bank Luxembourg S.A. to serve as Luxembourg tender agent (the "Luxembourg Tender Agent") and, as such, to advise the Company and you as to such matters relating to such Exchange Offers and Solicitations, as either the Company or you may reasonably request. The Company shall provide the Lead Dealer Managers or use commercially reasonable efforts to cause each of the trustees (each, an "Existing Trustee" and together, the "Existing Trustees") under the Existing Indentures, and the applicable Book-entry Transfer Facility to provide the Lead Dealer Managers with copies of the records or other lists showing the names and addresses of, and principal amounts of Old Notes held by, the record holders of Old Notes as of a recent date and on such subsequent dates as are requested by the Lead Dealer Managers and undertakes, from and after such date, to use commercially reasonable efforts to cause the Existing Trustees and the applicable Book-entry Transfer Facility, to notify the Lead Dealer Managers of all transfers of Old Notes as of such subsequent dates as are requested by the Lead Dealer Managers, such notification consisting of the name and address of the transferor and transferee of any Old Notes and the date of such transfer. On or prior to the Commencement Date, the Company will have made appropriate arrangements, to the extent applicable, with the applicable Book-entry

-8-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007575

Transfer Facility and the Depositary to allow for the book-entry movement of the tendered Old Notes between depositary participants and the applicable Book-entry Transfer Facility during the Exchange Offers.

9. The Company represents and warrants to each of you that:

(a) the Company has been duly incorporated and is validly existing as a corporation in good standing in the State of Delaware with corporate power and authority to own, lease and operate its properties and to conduct its business as described in the Offer and Solicitation Material. The Company is duly qualified to transact business and is in good standing (or equivalent status) in each jurisdiction in which such qualification is required, whether by reason of the ownership or leasing of property or the conduct of business, except for such jurisdictions where the failure to so qualify or to be in good standing would not, individually or in the aggregate, result in a Material Adverse Effect;

(b) the Company has all necessary corporate power and authority and it has taken all necessary corporate action to authorize the making and consummation of the Exchange Offers and the Solicitations, and, as of the expiration date of the Exchange Offers and the Solicitations (the "Expiration Date"), will have taken all actions to authorize the exchange of Old Notes pursuant to the Exchange Offers and all other actions and transactions contemplated in the Offer and Solicitation Material and any Additional Material (in each case, as amended or supplemented, if amended or supplemented);

(c) the Registration Statement, including the Preliminary Prospectus, has been prepared by the Company in conformity in all material respects with the requirements of the Securities Act and has been filed with the Commission as of the Commencement Date and is expected by the Company to become effective not later than the scheduled Expiration Date of the Exchange Offers; the Company will file any amendments to the Registration Statement as may hereafter be required by applicable law and such amendments shall be prepared and filed in conformity in all material respects with the requirements of the Securities Act. No stop order refusing or suspending the effectiveness of the Registration Statement or preventing or suspending the use of any prospectus is in effect, and no proceedings for such purpose have been instituted or are pending before or, to the knowledge of the Company, are threatened by the Commission. The Exchange Offers and the Solicitations satisfy the conditions for use of Form S-4 set forth in the instructions thereto;

(d) the Schedule TO has been prepared by the Company in conformity in all material respects with the requirements of the Exchange Act and has been filed with the Commission as of the Commencement Date; amendments to the Schedule TO as may have been required prior to the date hereof have similarly been prepared and filed with the Commission; and the Company will file additional amendments to the Schedule TO as may hereafter be required by the Exchange Act;

(e) in respect of each Non-U.S. Approval Jurisdiction, each Non-U.S. Prospectus has been (x) prepared by the Company in conformity in all material respects with the requirements of the applicable laws of the relevant Non-U.S. Approval Jurisdiction

-9-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007576

and (y) has been filed or submitted with, approved by, and published or made available to the public (as applicable) in the form and manner specified by, the relevant Non-U.S. Approval Agency in conformity in all material respects with and to the extent required by the applicable laws of the relevant Non-U.S. Approval Jurisdiction; the Company will amend or supplement the applicable Non-U.S. Prospectus in each relevant Non-U.S. Approval Jurisdiction as may hereafter be required and such amendment or supplements shall be prepared, approved, filed, submitted and made available to the public (as applicable) in conformity in all material respects with applicable laws, rules and regulations of the relevant Non-U.S. Approval Jurisdiction in which it was filed, submitted or published. No stop or similar order suspending the approval or use of any Non-U.S. Prospectus has been issued and no proceedings for such purpose have been instituted or are pending before or, to the knowledge of the Company, are threatened by any Non-U.S. Approval Agency;

(f) the Schedule 14C will be prepared by the Company in conformity in all material respects with the requirements of the Exchange Act and will be, not later than 30 days prior to the Closing Date, filed with the Commission, and not later than 20 days prior to the Closing Date, distributed to all holders of GM Common Stock;

(g) (i) the Offer and Solicitation Material complies in all material respects and, as amended or supplemented, if applicable, will comply in all material respects with the Securities Act and the Exchange Act; (ii) the Registration Statement, when it becomes effective, will not contain and as amended or supplemented thereafter, if applicable, will not contain, any untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary to make the statements therein not misleading; and (iii) none of the Preliminary Prospectus, the Prospectus or any other Offer and Solicitation Material other than the Registration Statement, nor any Additional Material, at the Commencement Date contains, and on any Withdrawal Date, the Expiration Date or the Closing Date, as amended or supplemented, if applicable, will contain, any untrue statement of a material fact or omits or will omit to state a material fact necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading; except that the representations and warranties set forth in this Section 9(g) do not apply to statements or omissions in the Offer and Solicitation Material, any Additional Material or any amendment or supplement thereto made in reliance upon or in conformity with information relating to the Dealer Managers furnished to the Company in writing by the Dealer Managers expressly for use therein;

(h) the Incorporated Documents, at the time they were or are hereafter filed with the Commission, complied in all material respects and will comply in all material respects with the requirements of the Securities Act or the Exchange Act, as applicable, and, when read together with the other information in the Registration Statement, Preliminary Prospectus or the Prospectus, as the case may be, do not contain, and at no time prior to or on the Closing Date, will contain, an untrue statement of a material fact or omit to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading;

-10-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007577

(i) no material consent, approval, registration, authorization, order or qualification of or with any federal or other governmental securities and exchange agency, authority or instrumentality, domestic or foreign in any Non-U.S. Exempt Jurisdiction is required for the consummation of the Exchange Offers and Solicitations or the offering, sale or delivery of the Exchange Consideration (including pursuant to the Call Option) as contemplated by this Agreement or the Offer and Solicitation Material;

(j) the GM Common Stock conforms in all material respects to the description thereof contained in the Preliminary Prospectus and the Prospectus and the New Common Shares (upon effectiveness of the Charter Amendment) (i) will conform in all material respects to such description and (ii) will conform to the rights set forth in the Certificate of Incorporation in respect of the New Common Shares; the New Common Shares have been duly authorized for issuance pursuant to the Certificate of Incorporation, and, each New Common Share that is delivered to Holders in exchange for Old Notes, will be validly issued, fully paid and non-assessable;

(k) the Charter Amendment (reflecting the Common Stock Increase and the Reverse Stock Split), upon effectiveness, will conform in all material respects to the description thereof contained in the Preliminary Prospectus and the Prospectus;

(l) the Charter Amendment will comply with applicable Delaware law;

(m) the Proposed Indenture Amendments set forth in each Supplemental Indenture when executed and delivered will conform in all material respects to the description thereof in the Preliminary Prospectus and the Prospectus;

(n) the Proposed Paying Agency Agreement Amendments when approved pursuant to the terms and conditions in the applicable Paying Agency Agreement will conform in all material respects to the description thereof in the Preliminary Prospectus and the Prospectus;

(o) as of the Closing Date, the VEBA Modifications, the Labor Modification and the U.S. Treasury Debt Conversion will conform in all material respects to the description thereof contained in the Preliminary Prospectus and the Prospectus and, with respect to the VEBA Modifications and the Labor Modifications, will comply in all material respects with ERISA (as defined below) and all applicable federal, state or local labor statutes and regulations;

(p) prior to the date hereof, the Company has not distributed any Offer and Solicitation Material in connection with the Exchange Offers and Solicitations;

(q) the statements in the Preliminary Prospectus and the Prospectus under the headings "Description of Our Existing Capital Stock," "Material United States Federal Income Tax Consequences," "Description of the Charter Amendment," and "Proposed Debt Instrument Amendments," insofar as they purport to describe the provisions of the laws, documents and arrangements referred to therein, are accurate in all material respects;

-11-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007578

(r) the Company is not and, after giving effect to the New Securities exchanged for the Old Notes, the VEBA Modifications, the Labor Modifications, the U.S. Treasury Debt Conversion and the Charter Amendment, will not be an "investment company" or any entity "controlled" by an "investment company" as such terms are defined in the U.S. Investment Company Act of 1940, as amended;

(s) this Agreement has been duly authorized, executed and delivered by the Company and is a valid and binding agreement of the Company, enforceable against the Company in accordance with the terms set forth herein, except as enforcement thereof may be limited by (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting creditors' rights generally, (ii) general equitable principles (whether considered in a proceeding in equity or at law), (iii) an implied covenant of good faith and fair dealing and (iv) the enforceability of indemnity provisions due to considerations of public policy (the "Enforceability Exceptions");

(t) each Supplemental Indenture and the Escrow Agreement have each been duly authorized by the Company and, when executed and delivered by the Company and assuming the due authorization, execution and delivery by the applicable Existing Trustee or the escrow agent, as the case may be, will each have been duly executed and delivered on the Closing Date and will constitute a valid and legally binding obligation of the Company, enforceable against the Company in accordance with its terms, except as may be limited by the Enforceability Exceptions;

(u) Deloitte & Touche LLP, which expressed its opinion with respect to the financial statements (which term as used in this Agreement includes the related notes thereto) that will be included or incorporated by reference in the Preliminary Prospectus and the Prospectus, has informed the Company that it is an independent public or certified public accountant within the meaning of Regulation S-X under the Securities Act and the Exchange Act and the rules of The Public Company Accounting Oversight Board, and any non-audit services provided by Deloitte & Touche LLP to the Company have been approved by the appropriate audit committee of the Company;

(v) the financial statements, together with the related schedules and notes, included or incorporated by reference in the Preliminary Prospectus and the Prospectus, present fairly, in all material respects, the financial position of the Company and its subsidiaries as of and at the dates indicated and the results of their operations and their cash flows for the periods presented therein. Such financial statements have been prepared in conformity with generally accepted accounting principles as applied in the United States ("GAAP") applied on a consistent basis throughout the periods involved, except as may be expressly stated therein. All pro forma financial statements or data included or incorporated by reference in the Preliminary Prospectus and the Prospectus comply in all material respects with the requirements of the Securities Act and the Exchange Act, and the assumptions used in the preparation of such pro forma financial statements and data are reasonable, the pro forma adjustments used therein are appropriate to give effect to the transactions or circumstances described therein and the pro forma adjustments have been properly applied to the historical amounts in the compilation of those statements and data;

-12-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007579

(w) at December 31, 2008, on a consolidated basis, after giving pro forma effect to (i) the issuance of the New Securities and the exchange of Old Notes therefor, (ii) the VEBA Modifications, (iii) the Reverse Stock Split, (iv) the Common Stock Increase and (v) the U.S. Treasury Debt Conversion, each as contemplated by the Preliminary Prospectus and the Prospectus, the Company would have an authorized and outstanding capitalization as set forth in the Preliminary Prospectus and the Prospectus, under the caption "Capitalization";

(x) the Exchange Offers and the Solicitations , the VEBA Modifications and all other actions and transactions contemplated in the Offer and Solicitation Material and any Additional Material (in each case, as amended or supplemented, if amended or supplemented), and the execution, delivery of, and the performance of the Company's obligations under the Transaction Documents, (x) will not require any material consent, approval, authorization or filing with or other order of any court, regulatory body, administrative agency or other governmental body having jurisdiction over the Company, except such (i) as may have already been obtained, taken or made, (ii) consents, approvals, authorizations or filings with or other order of any court, regulatory body, administrative agency or other governmental body as are set forth in the Preliminary Prospectus and the Prospectus, (iii) consents, approvals, authorizations or filings as may be required under state securities or blue sky laws or in the Non-U.S. Approval Jurisdictions in connection with the Exchange Offers and Solicitations and (iv) required consents, approvals, authorizations or filings in those jurisdictions relating to securities to be held in escrow pursuant to the Escrow Agreement; (y) complies in all material respects with all applicable provisions of the Exchange Act and the Securities Act; and (z) will not conflict with, or result in a breach or violation or imposition of, any material lien, charge or encumbrance upon any property or assets of the Company pursuant to, (i) the Certificate of Incorporation or bylaws of the Company (the "Bylaws"), (ii) the terms of any indenture or any other material agreement, obligation, condition, covenant or instrument to which the Company is a party or bound or to which its property is subject (including, without limitation, the UST Loan Agreement and all other documentation related thereto) or (iii) any statute, law, rule, regulation, judgment, order or decree applicable to the Company of any court, regulatory body, administrative agency, governmental body, arbitrator or other authority having jurisdiction over the Company or any of its properties, which in the case of (ii) or (iii) would reasonably be expected to have a Material Adverse Effect;

(y) except as disclosed in the Preliminary Prospectus and the Prospectus, the Company and its subsidiaries and, to the knowledge of the Company, their respective officers and directors are in compliance in all material respects with the applicable provisions of the Sarbanes-Oxley Act of 2002, including the rules and regulations of the Commission promulgated thereunder;

(z) (i) except as disclosed in the Preliminary Prospectus and the Prospectus, the Company and its subsidiaries maintain systems of "internal control over financial reporting"

-13-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007580

(as defined in Rule 13a-15(f) of the Exchange Act) that comply in all material respects with the requirements of the Exchange Act and have been designed by, or under the supervision of, their respective principal executive and principal financial officers, or persons performing similar functions, to provide reasonable assurance regarding the reliability of financial reporting and the preparation of financial statements for external purposes in accordance with GAAP and (ii) the Company's internal control over financial reporting includes policies and procedures that (1) pertain to the maintenance of records that, in reasonable detail, accurately and fairly reflect (in all material respects) the transactions and dispositions of the assets of the Company; (2) provide reasonable assurance that transactions are recorded as necessary to permit preparation of the consolidated financial statements in conformity with GAAP, and that material receipts and expenditures of the Company are being made only in accordance with authorizations of management and directors of the Company; and (3) provide reasonable assurance regarding prevention or timely detection of unauthorized acquisition, use or disposition of the Company's assets that could have a material effect on the consolidated financial statements;

(aa) except as disclosed in the Preliminary Prospectus and the Prospectus, the Company has established and maintains "disclosure controls and procedures" (as such term is defined in Rules 13a-15 and 15d-14 under the Exchange Act); such disclosure controls and procedures are designed to ensure that material information relating to the Company and its subsidiaries is made known to the chief executive officer and chief financial officer of the Company by others within the Company or any of its subsidiaries, and such disclosure controls and procedures are reasonably effective to perform the functions for which they were established subject to the limitations of any such control system; the Company's auditors and the appropriate audit committee of the Company have been advised of: (i) any significant deficiencies or material weaknesses in the design or operation of internal controls which could materially adversely affect the Company's ability to record, process, summarize, and report financial data; and (ii) any fraud, whether or not material, that involves management or other employees who have a role in the Company's internal controls;

(bb) except as disclosed in the Preliminary Prospectus and the Prospectus, the operations of the Company and its subsidiaries are and have been conducted at all times in compliance in all material respects with applicable financial recordkeeping and reporting requirements and the money laundering statutes and the rules and regulations thereunder and any related or similar rules, regulations or guidelines, issued, administered or enforced by any governmental agency (collectively, the "Money Laundering Laws") and no action, suit or proceeding by or before any court or governmental agency, authority or body or any arbitrator involving the Company or any of its subsidiaries with respect to the Money Laundering Laws is pending or, to the best knowledge of the Company, threatened;

(cc) except as disclosed in the Preliminary Prospectus and the Prospectus, none of the Company, any of its subsidiaries or, to the knowledge of the Company, any director, officer, agent, employee or affiliate of the Company or any of its subsidiaries is currently subject to any sanctions administered by the Office of Foreign Assets Control of the U.S. Treasury;

-14-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007581

(dd) except as disclosed in the Preliminary Prospectus and the Prospectus, neither the Company nor any of its subsidiaries nor, to the knowledge of the Company, any director, officer, agent, employee or affiliate of the Company or any of its subsidiaries is aware of or has taken any action, directly or indirectly, that would result in a violation by such persons of the Foreign Corrupt Practices Act of 1977, as amended, and the rules and regulations thereunder (the "FCPA"), including, without limitation, making use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay or authorization of the payment of any money, or other property, gift, promise to give, or authorization of the giving of anything of value to any "foreign official" (as such term is defined in the FCPA) or any foreign political party or official thereof or any candidate for foreign political office, in contravention of the FCPA; and the Company, its subsidiaries and, to the knowledge of the Company, its affiliates have conducted their businesses in compliance in all material respects with the FCPA and have instituted and maintain policies and procedures reasonably designed to ensure, and which are reasonably expected to continue to ensure, continued compliance therewith;

(ee) except as disclosed in the Preliminary Prospectus and the Prospectus, (i) there are no outstanding securities convertible into or exchangeable for, or warrants, rights or options issued by the Company to purchase, any shares of GM Common Stock, (ii) there are no statutory, contractual, preemptive or other rights to subscribe for or to purchase any Old Notes or New Securities and (iii) there are no restrictions upon transfer of the Old Notes or the New Securities pursuant to (a) the Company's Certificate of Incorporation or Bylaws or (b) GM Nova Scotia's Memorandum of Association;

(ff) except as disclosed in the Preliminary Prospectus and the Prospectus, the Company and its subsidiaries and any "employee benefit plan" (as defined under the Employee Retirement Income Security Act of 1974 (as amended, "ERISA," which term, as used herein, includes the regulations and published interpretations thereunder)) established, maintained or contributed to by the Company, its subsidiaries or their ERISA Affiliates (as defined below) are in compliance in all material respects with plan terms and the requirements of any applicable statutes, orders, rules and regulations, including but not limited to ERISA and the Internal Revenue Code of 1986, as amended (the "Code," which term, as used herein, includes the regulations and published interpretations thereunder). "ERISA Affiliate" means, with respect to the Company or a subsidiary, any member of any group of organizations described in Section 414 of the Code, of which the Company or such subsidiary is a member. No reportable event (as defined under ERISA) has occurred or is reasonably expected to occur with respect to any "employee benefit plan" established, maintained or contributed to by the Company, its subsidiaries or any of their ERISA Affiliates. Neither the Company, its subsidiaries nor any ERISA Affiliate has incurred, nor reasonably expects to incur, any material liability under Title IV of ERISA (other than PBGC premiums, in the ordinary course and without default), including with respect to termination of, or withdrawal from, any "employee benefit plan." Neither

-15-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007582

the Company, its subsidiaries nor any of their ERISA Affiliates has incurred or reasonably expects to incur any material liability under Sections 4971, 4975 or 4980B of the Code. Each "employee benefit plan" established or maintained by the Company, its subsidiaries or any of their ERISA Affiliates that is intended to be qualified under Section 401 of the Code is so qualified and nothing has occurred, whether by action or failure to act, which would cause the loss of such qualification;

(gg) except as contemplated by this Agreement or as described in the Preliminary Prospectus and the Prospectus, the Company has not paid or agreed to pay to any person any compensation for the solicitation of tenders by holders of the Old Notes pursuant to the Exchange Offers;

(hh) the aggregate amount of GM Common Stock (after taking into account the New Common Shares to be issued) outstanding following the consummation of the Exchange Offers, will not exceed at any one time any limitation thereon which may then be in effect by action of the Board of Directors of the Company; and

(ii) each of the representations and warranties set forth in this Agreement will be true and correct on and as of the Commencement Date, any Withdrawal Date, the Expiration Date and the Closing Date, with the same effect as if made on each such date (except to the extent that a representation or warranty is by its terms made as of a specified date, in which case such representation shall be true and correct only on and as of such date).

It is inappropriate for any person other than you to assume the accuracy of any representation, warranty or agreement of the Company contained in this Agreement. This Agreement is not intended as a document for other persons to obtain factual information about the Company or the transactions contemplated by this Agreement. Other persons should rely instead solely on the Offer and Solicitation Materials (including the information incorporated by reference therein) for information about the Company and the transactions contemplated by this Agreement.

10. Each Dealer Manager severally represents and warrants to the Company and agrees with the Company that:

(a) this Agreement has been duly authorized and validly executed and delivered by such Dealer Manager; and

(b) without the prior written consent of the Company (which consent the Company agrees will not be unreasonably withheld), such Dealer Manager will not hereafter (x) disseminate any written materials to holders of the Old Notes for or in connection with the solicitation of tenders of the Old Notes and Consents and Proxies pursuant to the Exchange Offers, other than the Offer and Solicitation Material and any Additional Material, or (y) make any representations to holders of Old Notes in connection with the solicitation of tenders of Old Notes and Consents and Proxies pursuant to the Exchange Offers, other than as contained in the Offer and Solicitation Material and any Additional Material.

-16-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007583

11. (a) The Company will use its commercially reasonable efforts to cause (x) the Registration Statement to become effective as soon as possible but no later than the Expiration Date, and (y) to advise the Lead Dealer Managers promptly in writing of (i) the receipt of any comments of, or requests for additional or supplemental information from, the Commission or any Non-U.S. Approval Agency relating to the Exchange Offers and the Solicitations, including in relation to the Registration Statement, the Schedule TO, the Schedule 14C, the Prospectus, any Non-U.S. Prospectus or any other Offer and Solicitation Material, (ii) the occurrence of any event which would cause the Company to modify, withdraw or terminate the Exchange Offers or the Solicitations in any jurisdiction or which would permit the Company to exercise any right not to exchange Old Notes tendered for the New Securities, (iii) any requirement to amend or supplement the Offer and Solicitation Material or any Additional Material, (iv) the issuance by the Commission of any stop order preventing or suspending the effectiveness of the Registration Statement, (v) the breach of any representation or warranty of the Company contained in this Agreement, (vi) the issuance of any order or, to the knowledge of the Company, the taking of any other material adverse action by any administrative or judicial tribunal or other governmental agency or instrumentality concerning the Exchange Offers and the Solicitations (and, if in writing, will furnish the Dealer Managers a copy thereof), (vii) any litigation or administrative action with respect to the Exchange Offers or the Solicitations, (viii) any proceedings to remove, suspend or terminate from listing or quotation the New Common Shares from the NYSE, or of the threatening or initiation of any proceedings for any of such purposes and (ix) any other information relating to the Exchange Offers and the Solicitations which the Lead Dealer Managers may from time to time reasonably request. Additionally, the Company agrees that it shall comply with the provisions of Rule 424(b), as applicable, under the Securities Act.

(b) The Company agrees that (i) if any event occurs or condition exists as a result of which the Offer and Solicitation Material (other than the Registration Statement) or any Additional Material would include an untrue statement of a material fact, or omit to state any material fact required to be stated therein or necessary to make the statements therein, in the light of the circumstances under which they are made, not misleading, (ii) if any event occurs or condition exists as a result of which the Registration Statement, after the date the Registration Statement is declared effective by the Commission, includes an untrue statement of a material fact, or omits to state any material fact required to be stated therein or necessary to make the statements therein not misleading and (iii) if, in the opinion of the Company it is necessary at any time to amend or supplement the Offer and Solicitation Material or any Additional Material to comply with applicable law, the Company shall promptly notify the Dealer Managers, prepare an amendment or supplement to the Offer and Solicitation Material or any Additional Material that will correct such statement or omission or effect such compliance, and supply such amended or supplemented Offer and Solicitation Material or Additional Material to you.

(c) Prior to the earlier of the Closing Date or the date of termination of the Exchange Offers and the Solicitations, the Company will not amend or supplement the Offer and Solicitation Material (including by filing documents under the Exchange Act that are incorporated by reference therein) unless the Company has submitted to the Dealer Managers such

-17-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

amendment or supplement or filing a reasonable time prior to the proposed filing or amendment or supplement, and the Company will give reasonable consideration to the timely comments of the Dealer Managers and their counsel, subject in each case to the obligation of the Company to comply with the Securities Act, the Exchange Act and the provisions of this Agreement. The Company will promptly advise the Dealer Managers when any document filed under the Exchange Act that is incorporated by reference in the Offer and Solicitation Material shall have been filed with the Commission.

(d) Prior to the issuance of the New Securities, the Company will use commercially reasonable efforts, and the Dealer Managers shall cooperate in connection therewith, to obtain the registration or qualification of the New Securities under (or to obtain exemptions from the application of) the securities or Blue Sky laws or other laws of the United States, the Non-U.S. Jurisdictions and such other jurisdictions as may be agreed upon by the Lead Dealer Managers and the Company; provided, however, that the Company shall not be required to qualify as a foreign corporation to do business, or to file a general consent to service of process, in any jurisdiction, or to take any other action that would subject it to general service of process or to taxation in respect of doing business in any jurisdiction in which it is not otherwise so subject. The Company will not send New Securities into any jurisdiction where it has not (i) registered or otherwise qualified such New Securities or (ii) assured itself that an exemption from registration or qualification exists. The Company will promptly advise the Dealer Managers of the receipt by the Company of any notification with respect to the suspension of the qualification of any New Securities for sale in any jurisdiction or the initiation or, to the knowledge of the Company, threatening of any proceeding for such purpose.

(e) Old Notes acquired by the Company pursuant to the Exchange Offers or upon exercise of the Call Option will be cancelled upon receipt thereof. The Company will cooperate with the Dealer Managers and use their reasonable best efforts to permit the New Securities to be eligible for clearance and settlement through the applicable Book-entry Transfer Facility.

(f) The Company will give reasonable notice to the Dealer Managers prior to the exercise of the Call Option and will not exercise the Call Option in respect of Old Non-USD Notes held by holders in, or deliver New Securities pursuant to such exercise as contemplated by the Prospectus into, any jurisdiction where such exercise or delivery would violate, conflict with or result in liability under applicable securities laws in such jurisdiction, until such time as the Company has obtained all consents and approvals necessary to exercise the Call Option in respect of such Old Non-USD Notes and deliver New Securities pursuant thereto in compliance with such securities laws; provided, however, that the Company may (i) exercise the Call Option, execute the Escrow Agreement and perform the transactions contemplated by the Escrow Agreement and (ii) make such other arrangements in respect of any such jurisdiction as may be agreed in writing by the Company and the Lead Dealer Managers.

(g) During such period beginning on the date hereof and ending on such date as, in the reasonable opinion of counsel for the Dealer Managers, the Prospectus or any Non-U.S. Prospectus is no longer required by law to be delivered in connection with the Exchange Offers and the Solicitations, the Company will (i) file all documents required to be filed with the Commission

-18-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007585

pursuant to Section 13, 14 or 15 of the Exchange Act in the manner and within the time periods required by the Exchange Act or (ii) file, submit or make available all documents required by law to be filed, submitted or made available in any Non-U.S. Jurisdiction.

(h) The Company will make generally available to its security holders and the Dealer Managers as soon as practicable an earning statement that satisfies the provisions of Section 11(a) of the Securities Act and Rule 158 of the Commission promulgated thereunder covering a period of at least twelve months beginning with the first fiscal quarter of the Company occurring after the Effectiveness Date (it being understood that the Company may satisfy its obligation hereunder by including such earning statement in its periodic reports filed with the Commission pursuant to the Exchange Act).

12.(a) The Company agrees to indemnify and hold harmless each Dealer Manager, its affiliates, each person, if any, who controls (within the meaning of either Section 15 of the Securities Act or Section 20 of the Exchange Act) such Dealer Manager and each of such Dealer Manager's and such person's officers and directors against any and all losses, liabilities, damages, costs or claims (or actions in respect thereof) to which any of them may become subject (including all reasonable costs of investigating, disputing or defending any such claim or action), insofar as such losses, liabilities, costs or claims (or actions in respect thereof) arise out of or in connection with (i) any untrue statement or alleged untrue statement of a material fact contained in the Offer and Solicitation Material and any Additional Material, or any amendment or supplement thereto, or any omission or alleged omission to state therein a material fact required to be stated therein or necessary to make the statements therein not misleading, provided that the Company shall not be liable for any such loss, liability, cost, action or claim arising from any statements or omissions made in reliance on and in conformity with written information furnished by such Dealer Manager to the Company expressly for use in the Offer and Solicitation Material or any Additional Materials or any amendment or supplement thereto (which, for the purposes of this proviso, shall consist solely of the name, address and telephone number of such Dealer Manager on the front cover and back cover of the Preliminary Prospectus and the Prospectus, as the case may be, and the back page of the Letter of Transmittal and such other Information set forth on Annex E), (ii) the Exchange Offers and the Solicitations, the exercise of the Call Option and all other actions contemplated in the Offer and Solicitation Material and any Additional Materials with respect to the Exchange Offers and the Solicitations, (iii) any action taken or omitted to be taken by the Dealer Manager with the consent of the Company or in conformity with the instructions of the Company or pursuant to the obligations of the Dealer Managers under this Agreement, (iv) any breach by the Company of any representation or warranty or failure to comply with any of the covenants and the agreements contained herein, (v) any withdrawal or termination by the Company of, or failure by the Company to commence or consummate, the Exchange Offers or the Solicitations, (vi) any advice or services rendered or to be rendered by an indemnified person pursuant to this Agreement and the transactions contemplated hereby or (vii) the VEBA Modifications, the Labor Modifications or the U.S. Treasury Debt Conversion. The Company shall not, however, be required so to indemnify any indemnified party for any losses, liabilities, costs or claims or expenses related thereto arising under clauses (ii) through (vii) above to the extent that such losses, liabilities, costs or claims or expenses related thereto are finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence, bad faith or willful misconduct of such indemnified party or

-19-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007586

from a material breach by such indemnified party of any of its representations, warranties or covenants in this Agreement. The Company also acknowledges and agrees that no indemnified person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or, without limiting the effect of the foregoing provisions of this paragraph (a), any other person for any act or omission on the part of any broker or dealer in securities or any commercial bank, trust company or other nominee and that no indemnified person shall have any liability (whether direct or indirect, in contract, tort or otherwise) to the Company or any other person for any losses, claims, damages, liabilities or expenses arising from or in connection with any act or omission in performing your obligations hereunder or otherwise in connection with the Exchange Offers or the exchange of Old Notes for the Exchange Consideration pursuant to the Exchange Offers, or any other action contemplated in the Offer and Solicitation Material or any Additional Material, except to the extent that any such losses, claims, damages, liabilities or expenses are finally judicially determined by a court of competent jurisdiction to have resulted from the gross negligence, bad faith or willful misconduct of such indemnified person or from a material breach by such indemnified person of any of its representations, warranties or covenants in this Agreement.

(b) Each Dealer Manager severally agrees to indemnify and hold harmless the Company, its affiliates, each person, if any, who controls (within the meaning of either Section 15 of the Securities Act or Section 20 of the Exchange Act), the Company and each of the Company's and such person's officers and directors from and against any and all losses, liabilities, damages, costs or claims (or actions in respect thereof) to which any of them may become subject (including all reasonable costs of investigating, disputing or defending any such claim or action), insofar as such losses, liabilities, damages, costs or claims (or actions in respect thereof) arise out of or in connection with any untrue statement or alleged untrue statement of a material fact contained in the Offer and Solicitation Material or any Additional Material or any amendment or supplement thereto, or any omission or alleged omission to state therein a material fact necessary to make the statements therein not misleading, only to the extent that such untrue statement or alleged untrue statement or omission or alleged omission was made in reliance on and in conformity with written information furnished to the Company by such Dealer Manager expressly for use in the Offer and Solicitation Material or any Additional Material, or any amendment or supplement thereto (it being understood that such written information shall consist solely of the name, address and telephone number of such Dealer Manager on the front cover and back cover of the Preliminary Prospectus and the Prospectus, as the case may be, and the back page of the Letter of Transmittal and such other information set forth on Annex E).

(c) If any claim, demand, action or proceeding (including any governmental investigation) shall be brought or alleged against an indemnified party in respect of which indemnity is to be sought against an indemnifying party pursuant to the preceding paragraphs, the indemnified party shall promptly notify the indemnifying party in writing, and the indemnifying party, upon request of the indemnified party, shall retain counsel reasonably satisfactory to the indemnified party to represent the indemnified party and any others the indemnified party may designate in such proceeding and shall pay the reasonable fees and expenses of such counsel related to such proceeding; provided, however, that in the event the indemnifying party shall not have employed counsel reasonably satisfactory to the indemnified party to represent the indemnified party within a reasonable time after notice of any such proceeding, the indemnified party

-20-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007587

shall then be entitled to retain counsel reasonably satisfactory to itself and the indemnifying party shall pay the reasonable fees and disbursements of such counsel relating to the proceeding. In any such proceeding, any indemnified party shall have the right to retain its own counsel, but the reasonable fees and expenses of such counsel shall be at the expense of such indemnified party unless (i) the indemnifying party and the indemnified party shall have mutually agreed to the retention of such counsel, (ii) the indemnifying party has failed within a reasonable time to retain counsel reasonably satisfactory to such indemnified party pursuant to the preceding sentence or (iii) the named parties to any such proceeding (including any impleaded parties) include both the indemnifying party and the indemnified party and representation of both parties by the same counsel would be inappropriate due to actual or potential differing interests between them. It is agreed that the indemnifying party shall not, in connection with any proceeding or related proceedings in the same jurisdiction, be liable for the reasonable fees and expenses of more than one separate law firm (in addition to local counsel where necessary) for all such indemnified parties. Such firm shall be designated in writing by the Lead Dealer Managers. The indemnifying party shall not be liable for any settlement of any proceeding effected without its written consent, but if settled with such consent or if there be a final judgment for the plaintiff, the indemnifying party agrees to indemnify the indemnified party from and against any loss or liability by reason of such settlement or judgment. No indemnifying party shall, without the prior written consent of the indemnified party, effect any settlement of any pending or threatened proceeding in respect of which any indemnified party is entitled to indemnification hereunder, unless such settlement includes an unconditional release of such indemnified party from all liability on claims that are the subject matter of such proceeding.

(d) If the indemnification provided for in this Section 12 is unavailable as a matter of law to an indemnified party in respect of any losses, claims, damages or liabilities referred to therein, then each indemnifying party, in lieu of indemnifying such indemnified party in respect of such losses, claims, damages or liabilities, shall contribute to the amount paid or payable by such indemnified party as a result of such losses, claims, damages or liabilities (i) if the indemnifying party is the Company, in such proportion as is appropriate to reflect the relative benefit received by the Company on the one hand and the Dealer Managers on the other from the Exchange Offers and Solicitations, (ii) if a Dealer Manager is the indemnifying party, in such proportion as is appropriate to reflect the Dealer Manager's relative fault on the one hand and that of the Company on the other hand in connection with the statements or omissions or alleged statements or omissions which resulted in such losses, claims, damages or liabilities, or (iii) if the allocation provided by clause (i) or clause (ii) above, as the case may be, is not permitted by applicable law, in such proportion as is appropriate to reflect not only the relative benefit referred to in clause (i) above or the relative fault referred to in clause (ii) above, as the case may be, but also such relative fault (in cases covered by clause (i)) or such relative benefit (in cases covered by clause (ii)) as well as any other relevant equitable considerations. The relative benefit received by the Company on the one hand and the Dealer Managers on the other hand, of the Exchange Offers and the Solicitations shall be deemed to be in the same proportion as the sum of (x) the par value of the New Common Shares determined as of the Closing Date and (y) any additional consideration paid by the Company in exchange for the Old Notes bears to the aggregate fees paid or to be paid to such Dealer Manager under this Agreement. The relative fault of the Company on the one hand and of the Dealer Managers on the other shall be determined by reference to, among other things, and where applicable, whether the untrue statement or alleged untrue

-21-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER