statement of a material fact or the omission or alleged omission to state a material fact relates to information supplied by the Company or by the Dealer Managers and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such statement or omissions.

(e) The Company and the Dealer Managers agree that it would not be just and equitable if contribution pursuant to this Section 12 were determined by pro rata allocation (even if the Dealer Managers were treated as one entity for such purpose) or by any other method of allocation which does not take account of the considerations referred to in the immediately preceding paragraph. The amounts paid or payable by an indemnified party as a result of the losses, claims, damages and liabilities referred to in the immediately preceding paragraph shall be deemed to include, subject to the limitations set forth above, any reasonable legal or other expenses reasonably incurred by such indemnified party in connection with investigating or defending any such action or claim. Notwithstanding the provisions of this Section 12 concerning contribution, no indemnifying party shall be required to make contribution in respect of such losses, claims, damages or liabilities in any circumstances in which such party would not have been required to provide indemnification. Nothing herein contained shall be deemed to constitute a waiver by an indemnified party of such party's rights, if any, to receive contribution pursuant to Section 11(f) of the Securities Act or other applicable law. No person guilty of fraudulent misrepresentation (within the meaning of Section 11(f) of the Securities Act) shall be entitled to contribution from any person who was not guilty of such fraudulent misrepresentation. The Dealer Managers' obligations to contribute pursuant to this Section 11 are several and not joint.

(f) The remedies provided for in this Agreement are not exclusive and shall not limit any rights or remedies which may otherwise be available to any person at law or in equity.

(g) The reimbursement, indemnity and contribution obligations of the Company and the Dealer Managers provided for in this Agreement shall be in addition to any liability which the Company or the Dealer Managers may otherwise have and shall be binding upon and shall inure to the benefit of any successors, assigns, heirs and personal representatives of the Company and the Dealer Managers and any other indemnified persons.

13. Your several obligations to act and to continue to act (as the case may be) as Dealer Managers hereunder shall at all times be subject, in your discretion, to the conditions that:

(a) all representations, warranties and other statements of the Company contained herein are now, and as of the Commencement Date, any Withdrawal Date and the Closing Date, with the same effect as if made on each such date (except to the extent that a representation, warranty or statement is by its terms made as of a specified date, in which case such representation, warranty or statement shall be true and correct only on and as of such date), will be, true and correct (without giving effect to any limitation as to "materiality" or "Material Adverse Effect" set forth therein) except (i) as otherwise set forth in the Offer and Solicitation Materials or (ii) where the failure of such representations, warranties or other statements to be true and correct (without giving effect to any limitation as to "materiality" or "Material Adverse Effect" set forth therein) would not, individually or in the aggregate, have a Material Adverse Effect;

-22-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007589

(b) the Company at all times during the Exchange Offers and the Solicitations shall have performed in all material respects all of its obligations hereunder;

(c) no stop order, judgment, order or injunction shall have been issued, entered or enforced by any court, agency, authority or other tribunal which makes illegal, directly or indirectly restrains or prohibits the making or consummation of the Exchange Offers or the Solicitations, the exchange of Old Notes or the other transactions contemplated by the Offer and Solicitation Materials; provided that the issuance, entry or enforcement of a stop order, judgment, order or injunction with respect to a particular Exchange Offer or Solicitation shall not affect your several obligations to act and continue to act with respect to the other Exchange Offers and Solicitations to the extent such stop order, judgment, order or injunction does not make illegal, directly or indirectly, or restrain or prohibit such other Exchange Offers or Solicitations;

(d) (i) the Company shall have filed the Registration Statement and Schedule TO with the Commission not later than the date hereof and the Registration Statement and Schedule TO shall become effective prior to the Expiration Date; and (ii) no stop order refusing or suspending the effectiveness of the Registration Statement or Schedule TO or any post-effective amendment shall have been issued or be in effect and no proceedings for such purpose shall have been instituted or threatened by the Commission;

(e) (i) each Non-U.S. Prospectus shall have been filed with, submitted to, approved by, published and made available to the public (as applicable) in the form (as to form, in all material respects) and manner required by the relevant Non-U.S. Approval Agency within the applicable time period prescribed for such filing by the applicable law, rules and regulations of such Non-U.S. Approval Agency; and (ii) no stop order or similar order preventing or suspending the approval or use of any Non-U.S. Prospectus or any part thereof in any Non-U.S. Approval Jurisdiction, or preventing the use of the Prospectus in any Non-U.S. Exempt Jurisdiction in accordance with the Foreign Jurisdiction Restrictions, shall have been issued, and no proceedings for such purpose shall have been instituted by any Non-U.S. Approval Agency or by any other governmental securities and exchange agency, authority or instrumentality in any Non-U.S. Exempt Jurisdiction; provided, however, that, upon the occurrence of any of the events described in clauses (i) or (ii) in any Non-U.S. Approval Jurisdiction(s), the Dealer Managers' obligations to continue to act as Dealer Managers hereunder shall only cease with respect to those Dealer Manager activities being conducted in such Non-U.S. Approval Jurisdiction(s);

(f) (i) the Company shall have filed the Schedule 14C with the Commission not later than 30 days prior to the Closing Date and shall have distributed the Schedule 14C to all holders of GM Common Stock not later than 20 days prior to the Closing Date; and (ii) no stop order refusing or suspending the effectiveness of the Schedule 14C or any post-effective amendment shall have been issued or be in effect and no proceedings for such purpose shall have been instituted or threatened by the Commission;

-23-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007590

(g) (i) Weil, Gotshal & Manges LLP, counsel to the Company, shall have furnished to you, as Dealer Managers, as of the Effectiveness Date and as of the Closing Date, its opinion, dated the Effectiveness Date or the Closing Date, as applicable, substantially to the effect set forth in Exhibit C-1 on the Effectiveness Date and in Exhibit C-2 on the Closing Date, (ii) Jenner & Block LLP, counsel to the Company, shall have furnished to you, as Dealer Managers, as of the Effectiveness Date and as of the Closing Date, its opinion, dated the Effectiveness Date or the Closing Date, as applicable, substantially to the effect set forth in Exhibit D-1 on the Effectiveness Date and in Exhibit D-2 on the Closing Date, and (iii) Martin Darvick, a member of the Legal Staff of the Company shall have furnished to you, as Dealer Managers, as of the Effectiveness Date and as of the Closing Date, his or her opinion, dated the Effectiveness Date or the Closing Date, as applicable, substantially to the effect set forth in Exhibit E-1 on the Effectiveness Date and in Exhibit E-2 on the Closing Date;

(h) Cahill Gordon & Reindel LLP, counsel to the Dealer Managers, shall have furnished to you, as Dealer Managers, as of the Effectiveness Date and as of the Closing Date, its opinion, dated the Effectiveness Date or the Closing Date, in form and substance reasonably satisfactory to the Dealer Managers;

(i) on or prior to the Closing Date, except as disclosed in the Preliminary Prospectus and the Prospectus, there has been no Material Adverse Effect;

(j) on the Effectiveness Date and at the Closing Date, the Company shall have requested and caused Deloitte & Touche LLP to furnish to the Dealer Managers comfort letters, dated respectively as of the Effectiveness Date and as of the Closing Date, in form and substance reasonably satisfactory to the Dealer Managers;

(k) on the Effectiveness Date and the Closing Date, you shall have received a certificate, dated such date, of the Chief Financial Officer or Treasurer (acting on behalf of the Company and without personal liability) of the Company to the effect that:

(i) except as otherwise disclosed in the Preliminary Prospectus, in the case of the Effectiveness Date, or the Prospectus, in the case of the Closing Date, the representations and warranties in this Agreement are true and correct (without giving effect to any limitation as to "materiality" or "Material Adverse Effect" set forth therein) except where the failure of such representation to be true and correct (without giving effect to any limitation as to "materiality" or "Material Adverse Effect" set forth therein) would not, individually or in the aggregate, have a Material Adverse Effect, as if made on and as of such date (except to the extent that a representation or warranty is by its terms made as of a specified date, in which case such representation shall be true and correct only on and as of such date;

(ii) the Company has performed in all material respects all covenants and agreements and satisfied all conditions on its part to be performed or satisfied at or prior to such date (after giving effect to the Exchange Offers and the Solicitations and the other transactions contemplated by the Offer and Solicitation Material);

-24-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007591

(iii) subsequent to the date as of which information is given in the Offer and Solicitation Material (as amended or supplemented, including the documents incorporated by reference therein), as of the date of such certificate, there has not been any change in such information that would have a Material Adverse Effect; and

(iv) neither the Exchange Offers, the Solicitation nor any of the other transactions contemplated hereby or by the Offer and Solicitation Material has been enjoined (temporarily or permanently);

(l) on or prior to the Closing Date, the Charter Amendment shall have been filed with the Delaware Secretary of State;

(m) on or prior to the Closing Date (i) the requisite amount of Consents of each voting class of Old GM USD Notes necessary to effect the Proposed Indenture Amendments shall have been validly received and not withdrawn and the Supplemental Indentures giving effect to the Proposed Indenture Amendments shall have been executed and shall have become effective and (ii) the Dealer Managers shall have received copies of such executed and effective Supplemental Indentures;

(n) on or prior to the Closing Date, the Dealer Managers shall have received executed copies of each of the other Transaction Documents (to the extent they have not already been received), and all such Transaction Documents shall be in full force and effect; in addition, the Company undertakes to deliver to the Dealer Managers a copy of the opinion delivered to the applicable Existing Trustees in connection with the execution and delivery of the Supplemental Indentures as well as a copy of the Extraordinary Resolutions (as defined in the applicable Paying Agency Agreement) passed pursuant to the applicable Paying Agency Agreement;

(o) on or prior to the Closing Date, the Company shall have received an exemption from the shareholder approval requirement set forth in NYSE Rule 312.03 in respect of the issuance of the New Common Shares, and the Company shall have used its commercially reasonable efforts to have the New Common Shares duly listed on the NYSE (subject to notice of issuance);

(p) on or prior to the Closing Date, the New Securities shall be eligible for clearance and settlement through the applicable Book-entry Transfer Facility;

(q) on or prior to the Closing Date, (i) the Dealer Managers shall have received an executed copy of the binding agreements in respect of the Labor Modifications, (ii) the VEBA Modifications shall have been executed by all relevant parties (and court approval thereof shall have been obtained) and (iii) all other obligations required to be performed by the Company prior to the Closing Date pursuant to the terms of the UST Loan Agreement and the U.S. Treasury Debt Conversion shall have been so performed or duly waived;

-25-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007592

(r) on or prior to the Closing Date, the Company shall have obtained all material consents, approvals, authorizations and orders of, and shall have duly made all material registrations, qualifications and filings with, any court or regulatory authority or other governmental agency or instrumentality required in connection with the making and consummation of the Exchange Offers and the Solicitations and the execution, delivery and performance of this Agreement, except as contemplated by the Escrow Agreement and the actions related thereto; and

(s) on the Closing Date, all conditions to the consummation of the Exchange Offers and the Solicitations set forth in the Offer and Solicitation Material shall have been satisfied in all material respects or waived and all other transactions contemplated by the Offer and Solicitation Material to be consummated simultaneously with or prior to the consummation of the Exchange Offers and the Solicitations shall have been consummated or shall be consummated simultaneously.

On or before the Effectiveness Date and the Closing Date, the Dealer Managers and their counsel shall have received such further documents, certificates and schedules relating to the business, corporate, legal and financial affairs of the Company and its subsidiaries and the Exchange Offers as reasonably requested by the Dealer Managers or their counsel.

The Company shall furnish to the Lead Dealer Managers such conformed copies of such documents, certificates, schedules and instruments in such quantities as the Lead Dealer Managers shall reasonably request.

14. Subject to Section 18 hereof, this Agreement shall terminate upon the earliest to occur of (i) two (2) days after the Closing Date, (ii) the withdrawal or termination of all Exchange Offers and the Solicitations or (iii) with respect to any Dealer Manager, upon withdrawal by such Dealer Manager pursuant to Section 4 hereof. For the avoidance of doubt, the withdrawal of any one Dealer Manager shall not terminate this Agreement with respect to any remaining Dealer Manager.

15. In the event that any provision hereof shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect or any other provision hereof, which shall remain in full force and effect.

16. This Agreement may be executed and delivered (including by facsimile transmission) in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

17. This Agreement, including any right to indemnity or contribution hereunder, shall inure to the benefit of and be binding upon the Company and you and its and your respective successors and assigns and the officers and directors and controlling persons referred to in Section 12 hereof. Nothing in this Agreement is intended, or shall be construed, to give to any other person or entity any right hereunder or by virtue hereof.

-26-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007593

18. The indemnity and contribution agreements contained in Section 12 and the provisions of Section 7 and Section 20 and the representations and warranties of the Company and the Dealer Managers set forth in this Agreement shall remain operative and in full force and effect, regardless of (i) any failure to commence, or the withdrawal, termination or consummation of, the Exchange Offers and the Solicitations or the termination or assignment of this Agreement, (ii) any investigation made relating to, by or on behalf of the Company, the Dealer Managers or any of the officers and directors and controlling persons referred to in Section 12 hereof and (iii) any withdrawal by you pursuant to Section 4.

**19. THIS AGREEMENT INCORPORATES THE ENTIRE UNDERSTANDING OF THE PARTIES AND (EXCEPT AS OTHERWISE PROVIDED HEREIN) SUPERSEDES ALL PREVIOUS AGREEMENTS, AND SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF NEW YORK AS APPLIED TO CONTRACTS MADE AND PERFORMED IN SUCH STATE. ANY RIGHT TO TRIAL BY JURY WITH RESPECT TO ANY CLAIM OR PROCEEDING RELATED TO OR ARISING OUT OF THIS ENGAGEMENT OR ANY TRANSACTION OR CONDUCT IN CONNECTION HEREWITH, IS WAIVED.**

20. We agree not to use your name or refer to you or your relationship with us without your specific prior written consent to the form of such use or reference (it being understood you agree to the use of such name in the Offer and Solicitation Material in the form furnished to you on the date hereof). There shall be no fee for any such permitted use or reference other than as set forth above. Notwithstanding anything to the contrary contained herein, the Dealer Managers and the Company shall be permitted to disclose the tax treatment and tax structure of any transaction contemplated by this Agreement (including any materials, opinions or analyses relating to such tax treatment or tax structure, but without disclosure of identifying information or, except to the extent relating to such tax structure or tax treatment, any nonpublic commercial or financial information); provided, however, that if such transaction is not consummated for any reason, the provisions of this sentence shall cease to apply with respect to such transaction.

21. The Company acknowledges and agrees that: (i) the services to be provided by the Dealer Managers pursuant to this Agreement are an arm's-length commercial transaction between the Company, on the one hand, and the Dealer Managers, on the other; (ii) in connection with each transaction contemplated hereby and the process leading to such transaction each Dealer Manager is and has been acting solely as a principal and is not the agent or fiduciary of the Company or its affiliates, stockholders, creditors or employees or any other party; (iii) no Dealer Manager has assumed or will assume any fiduciary responsibility in favor of the Company with respect to any of the transactions contemplated hereby or the process leading thereto (irrespective of whether such Dealer Manager has advised or is currently advising the Company on other matters) or any other obligation to the Company except the obligations expressly set forth in this Agreement; (iv) the several Dealer Managers and their respective affiliates may be engaged in a broad range of transactions that involve interests that differ from those of the Company (including, without limitation, as holders of the Old Notes) and that the several Dealer Managers have no obligation to disclose any of such interest by virtue of any fiduciary or advisory relationship; and (v) the Dealer Managers have not provided any legal, accounting,

-27-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007594

regulatory or tax advice with respect to the offering contemplated hereby and the Company has consulted its own legal, accounting, regulatory and tax advisors to the extent it deemed appropriate.

22. The Company acknowledges and agrees that the Dealer Managers may perform the services contemplated by this Agreement in conjunction with their affiliates and that any affiliates of a Dealer Manager performing services hereunder shall be entitled to the benefits and be subject to the terms of this Agreement; provided, however, that the applicable Dealer Manager shall nevertheless remain liable for the performance of any such affiliate.

23. All communications hereunder will be in writing and effective only on receipt, and will be delivered or sent by mail, overnight courier, telex or email as follows:

If to the Dealer Managers, to their respective addresses set forth on Schedule 2.

With a copy (which shall not constitute notice) to:

> Cahill Gordon & Reindel LLP
> 80 Pine Street
> New York, New York 10005
> Attention: James J. Clark, Esq.
>             Noah B. Newitz, Esq.
> Facsimile: (212) 269-5420
> Email: JClark@cahill.com
> Email: NNewitz@Cahill.com

If to the Company:

> General Motors Corporation
> Mail Code 482-C25-D81
> 300 Renaissance Center
> Detroit, Michigan 48265-3000
> Attn.: General Counsel
> Facsimile: (248) 267-4584

With a copy (which shall not constitute Notice to):

> General Motors Corporation
> Treasurer's Office
> 767 Fifth Avenue
> New York, New York 10153
> Attention: Treasurer
> cc: General Counsel
> Facsimile: (212) 418-3630

-28-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007595

Weil, Gotshal & Manges LLP
767 Fifth Avenue
New York, New York 10153
David S. Lefkowitz, Esq.
Corey R. Chivers, Esq.
Todd R. Chandler, Esq.
Fax: (212) 310-8007
david.lefkowitz@weil.com
corey.chivers@weil.com
todd.chandler@weil.com

Jenner & Block, LLP
330 N. Wabash
Chicago, IL 60611
Attention: Joseph P. Gromacki
            Donald E. Batterson
Facsimile: (312) 923-2737
Email: jgromacki@jenner.com
Email: dbatterson@jenner.com

24. The terms that follow, when used in this Agreement, shall have the meanings indicated:

"Commission" shall mean the Securities and Exchange Commission.

"Effectiveness Date" shall mean the date that the Registration Statement is declared effective by the Commission.

"Escrow Agreement" shall mean the agreement dated on or around the Closing Date executed by the Company and the Escrow Agent relating to the delivery into escrow of New Common Shares that cannot be delivered to non-tendering Holders of the Old Non-USD Notes because there is no appropriate exemption from registration in the jurisdictions in which such non-tendering holders are located.

"Exchange Act" shall mean the Securities Exchange Act of 1934, as amended, and the rules and regulations of the Commission promulgated thereunder.

"Labor Modifications" shall have the meaning set forth in the UST Loan Agreement.

"Lead Dealer Managers" shall mean Morgan Stanley & Co. Incorporated and Banc of America Securities LLC.

"Material Adverse Effect" shall mean, with respect to the Company, a material adverse effect on the properties, business, results of operations or financial condition the Company and its subsidiaries, taken as a whole.

"Non-U.S. Approval Agency" shall mean the relevant regulatory agency in each Non-U.S. Approval Jurisdiction.

-29-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007596

"Securities Act" shall mean the Securities Act of 1933, as amended, and the rules and regulations of the Commission promulgated thereunder.

"Settlement Agreement" shall mean the Settlement Agreement, dated February 21, 2008, between the Company, the UAW and the certified class of GM-UAW retirees in *Int'l Union, UAW, et. al. v. General Motors Corp.*, Civil Action No. 07-14074 (E.D. Mich. filed Sept. 9, 2007).

"UAW" shall mean the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America.

"VEBA Modifications" shall have the meaning set forth in the UST Loan Agreement.

"Withdrawal Date" shall mean the "Withdrawal Deadline" as described in the Preliminary Prospectus and the Prospectus, as well as any date that the Company may establish as a deadline for Holders to withdraw tendered Old Notes from the Exchange Offers subsequent to the initial Withdrawal Deadline.

"We" or "us" shall mean the Company.

"You" or "your" shall mean the Dealer Managers.

-30-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007597

Please indicate your willingness to act as Dealer Managers on the terms set forth herein and your acceptance of the foregoing provisions by signing in the space provided below for that purpose and returning to us a copy of this Agreement, whereupon this Agreement shall constitute a binding agreement between the Company and the Dealer Managers.

Very truly yours,

GENERAL MOTORS CORPORATION

By:    /s/ Walter Borst
Name:    Walter Borst
Title:    Treasurer

-31-

Accepted as of the date first above written:

MORGAN STANLEY & CO. INCORPORATED

By:    /s/ Brooke H. Cooper
Name: Brooke H. Cooper
Title:   Vice President

BANC OF AMERICA SECURITIES LLC

By:    /s/ Andrew C. Karp
Name: Andrew C. Karp
Title:   Managing Director

BARCLAYS CAPITAL INC.

By:    /s/ Edward Witz
Name: Edward Witz
Title:   Managing Director

DEUTSCHE BANK SECURITIES INC.

By:    /s/ Roger Heine
Name: Roger Heine
Title:   Managing Director

By:    /s/ Edwin E. Roland
Name: Edwin E. Roland
Title:   Managing Director

CITIGROUP GLOBAL MARKETS INC.

By:    /s/ Michael Zicari
Name: Michael Zicari
Title:   Managing Director

-32-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

J.P. MORGAN SECURITIES INC.

By:    /s/ David B. Walker
Name:  David B. Walker
Title:   Managing Director

UBS SECURITIES LLC

By:    /s/ Hu Yang
Name:  Hu Yang
Title:   Executive Director

By:    /s/ Jeffery Dorst
Name:  Jeffery Dorst
Title:   Executive Director

WACHOVIA CAPITAL MARKETS, LLC

By:    /s/ Daniel A. Nass
Name:  Daniel A. Nass
Title:   Managing Director

-33-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007600

# SCHEDULE 1

| CUSIP/ISIN | Outstanding Principal Amount | Title of Old Notes to Be Tendered |
|---|---|---|
| *Old GM USD Notes* | | |
| 370442691 | USD 1,001,600,875 | 1.50% Series D Convertible Senior Debentures due June 1, 2009 |
| 370442BB0 | USD 1,500,000,000 | 7.20% Notes due January 15, 2011 |
| 37045EAS7 | USD 48,175,000 | 9.45% Medium-Term Notes due November 1, 2011 |
| 370442BS3 | USD 1,000,000,000 | 7.125% Senior Notes due July 15, 2013 |
| 370442AU9 | USD 500,000,000 | 7.70% Debentures due April 15, 2016 |
| 370442AJ4 | USD 524,795,000 | 8.80% Notes due March 1, 2021 |
| 37045EAG3 | USD 15,000,000 | 9.4% Medium-Term Notes due July 15, 2021 |
| 370442AN5 | USD 299,795,000 | 9.40% Debentures due July 15, 2021 |
| 370442BW4 | USD 1,250,000,000 | 8.25% Senior Debentures due July 15, 2023 |
| 370442AV7 | USD 400,000,000 | 8.10% Debentures due June 15, 2024 |
| 370442AR6 | USD 500,000,000 | 7.40% Debentures due September 1, 2025 |
| 370442AZ8 | USD 600,000,000 | 6 3/4% Debentures due May 1, 2028 |
| 370442741 | USD 39,422,775 | 4.50% Series A Convertible Senior Debentures due March 6, 2032 |
| 370442733 | USD 2,600,000,000 | 5.25% Series B Convertible Senior Debentures due March 6, 2032 |
| 370442717 | USD 4,300,000,000 | 6.25% Series C Convertible Senior Debentures due July 15, 2033 |
| 370442BT1 | USD 3,000,000,000 | 8.375% Senior Debentures due July 15, 2033 |
| 370442AT2 | USD 377,377,000 [1] | 7.75% Discount Debentures due March 15, 2036 |
| 370442816 | USD 575,000,000 | 7.25% Quarterly Interest Bonds due April 15, 2041 |
| 370442774 | USD 718,750,000 | 7.25% Senior Notes due July 15, 2041 |
| 370442121 | USD 720,000,000 | 7.5% Senior Notes due July 1, 2044 |
| 370442725 | USD 1,115,000,000 | 7.375% Senior Notes due May 15, 2048 |

(1)   Represents the principal amount at maturity

SCHED 1-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007601

| CUSIP/ISIN | Outstanding Principal Amount | Title of Old Notes to Be Tendered |
|---|---|---|
| 370442BQ7 | USD 425,000,000 | 7.375% Senior Notes due May 23, 2048 |
| 370442766 | USD 690,000,000 | 7.375% Senior Notes due October 1, 2051 |
| 370442758 | USD 875,000,000 | 7.25% Senior Notes due February 15, 2052 |
| | *Old GM Euro Notes* | |
| XS0171942757 | EUR 1,000,000,000 | 7.25% Notes due July 3, 2013 |
| XS0171943649 | EUR 1,500,000,000 | 8.375% Notes due July 5, 2033 |
| | *Old GM Nova Scotia Notes* | |
| XS0171922643 | GBP 350,000,000 | 8.375% Guaranteed Notes due December 7, 2015 |
| XS0171908063 | GBP 250,000,000 | 8.875% Guaranteed Notes due July 10, 2023 |

SCHED 1-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007602

## SCHEDULE 2

### Dealer Managers

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036
Attention: Liability Management Group
Facsimile: (212) 507-6014

Banc of America Securities LLC
Hearst Tower
214 North Tryon Street
Charlotte, North Carolina 28255
Attention: Debt Advisory Services
Facsimile: (704) 388-0830

Barclays Capital Inc.
745 Seventh Avenue
New York, New York 10019
Attention: Liability Management Group
Facsimile: (646) 834-0584

Deutsche Bank Securities Inc.
60 Wall Street
New York, New York 10005
Attn: Liability Strategies Group
Fax: (212) 797-2206

Citigroup Global Markets Inc.
390 Greenwich Street
New York, New York 10013
Attention: Liability Management
Fax Number: (212) 723-8971

J.P. Morgan Securities Inc.
270 Park Avenue
New York, New York 10017
Attention: Brian Tramontozzi
Facsimile: 212-270-1063

SCHED 2-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

UBS Securities LLC
677 Washington Boulevard
Stamford, CT 06901
Attention: Liability Management Group
Fax: 203-719-7139

Wachovia Capital Markets, LLC
One Wachovia Center
301 South College Street
Charlotte, NC 28288-0737
Attention: Liability Management Group
Facsimile: (704) 715-6810

SCHED 1-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

## ANNEX A

### CALCULATION OF FEE

In consideration of the services provided hereunder as Dealer Managers, the Company shall pay the Dealer Managers:

(i) upon consummation of the Exchange Offers and Solicitations on the Closing Date, a cash fee equal to 0.50% of the aggregate principal amount (or, in the case of Old Notes that are discount notes, accreted value) of Old Notes that are (x) accepted pursuant to the Exchange Offers and (y) are able to be redeemed pursuant the exercise of the Call Option; or

(ii) if the Exchange Offers and Solicitations are not consummated but 67% or more of the aggregate principal amount (or, in the case of Old Notes that are discounted notes, accreted value) of Old Notes are tendered and not withdrawn (including, for purposes of the clause (ii), all Old Non-USD Notes not tendered in each series of Old Non-USD Notes for which a sufficient amount of Old Non-USD Notes were tendered for approval of the Proposed Paying Agency Agreement Amendments), on the date the Exchange Offers and Solicitations are terminated, a cash fee equal to 0.15% of the aggregate principal amount (or, in the case of Old Notes that are discount notes, accreted value) of such Old Notes tendered and not withdrawn.

The Fee shall be payable 20% to Morgan Stanley & Co. Incorporated, 20% to Banc of America Securities LLC, 20% to Citigroup Global Markets Inc., 20% to J.P. Morgan Securities Inc., 8.5% to Barclays Capital Inc., 8.5% to Deutsche Bank Securities Inc., 1.5% to UBS Securities LLC and 1.5% to Wachovia Capital Markets, LLC.

With respect to the Fee contemplated above, in the event any Dealer Manager withdraws under the Agreement and thus is not entitled to its respective Fee specified above (a "Forfeited Fee"), the other Dealer Managers shall not be entitled to receive the Forfeited Fee and the obligation of the Company to pay the respective Fee under the Agreement shall be reduced by the amount of the Forfeited Fee.

For purposes of this Annex A, in determining the principal amount of Old Non-USD Notes, an equivalent U.S. dollar principal amount of such series of Old Notes shall be used, which shall be determined by converting the principal amount of such Old Notes to U.S. dollars using the applicable currency exchange rate in the Statistical Release H.10 published by the Federal Reserve System on the applicable expiration date (as defined in the Prospectus).

ANNEX A-1

## ANNEX B

### NON-U.S. APPROVAL JURISDICTIONS

Austria
Belgium
France
Germany
Italy
Luxembourg
The Netherlands
Switzerland
Spain
United Kingdom

ANNEX B-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**ANNEX C**

<u>NON-U.S. EXEMPT JURISDICTIONS</u>

Andorra

Anguilla

Australia

The Bahamas

Bermuda

Brazil

British Virgin Islands

Canada

Cayman Islands

Chile

China

Costa Rica

Cyprus

Czech Republic

Denmark

Dutch Antilles

Egypt

Finland

Gibraltar

Greece

Guernsey

Hong Kong

Hungary

India

Ireland

Israel

Japan

Jersey

Jordan

ANNEX C-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

Lebanon

Liechtenstein

Lithuania

Malaysia

Malta

Mexico

Monaco

New Zealand

Nigeria

Norway

Panama

Philippines

Poland

Portugal

Romania

Russia

San Marino

Saudi Arabia

Singapore

South Africa

Sweden

Syria

Taiwan

Turkey

United Arab Emirates

Uruguay

Venezuela

ANNEX C-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007608

# ANNEX D

## DEALER MANAGER FOREIGN COUNSEL

Linklaters LLP

Stewart, McKelvey

Webster Dyrud Mitchell

Pöech Krassnigg Rechtsanwälte GmbH

APPLEBY

Maples and Calder

Aninat Schwencke & Cia.

Consortium – Laclé & Gutiérrez

Mouaimis & Mouaimis

Kinstellar

Gorrissen Federspiel Kierkegaard

Spigthoff Attorneys At Law & Tax Advisors

Shalakany Law Office

ROSCHIER

Hassans

KYRIAKIDES GEORGOPOULOS & DANIOLOS ISSAIAS Law Firm

Talwar, Thakore & Associates

A&L Goodbody Solicitors

Prof. Yuval Levy & Co.

Mourant du Feu & Jeune

Ali Sharif Zu'bi

Badri and Salim El Meouchi Law Firm (SP, LLP)

Sele Frommelt & Partners

Lideika, Petrauskas, Valiunas ir partneriai LAWIN

Zaid Ibrahim & Co

Ritch Mueller

Donald Manasse Law Offices

CHAPMAN TRIPP

AELEX

Wiersholm, Mellbye & Bech

MORGAN & MORGAN

Romulo Mabanta Buenaventura Sayoc & de los Angeles

Peli Filip

HOURANI & ASSOCIATES

ANNEX D-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

Allen & Gledhill LLP

HOMBURGER

RUSSIN & VECCHI

Taboglu & Demirhan

GUYER & REGULES

Hoet Pelaez Castillo & Duque

EUROLEX

Allens Arthur Robinson

Omniway

Sarkis & Associates Attorneys At Law

LENNOX PATON

Bowman Gilfillan, Jonathan Lang

Hassan Radhi & Associates

Mamo TCV Advocates

ANNEX D-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

## ANNEX E

### INFORMATION PROVIDED BY THE DEALER MANAGERS TO THE COMPANY FOR USE IN THE OFFER AND SOLICITATION MATERIALS

The third paragraph under Notice to Investors relating to stabilizing activities in the Preliminary Prospectus and the Prospectus

ANNEXE E-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**EXHIBIT A**

**[Preliminary Prospectus]**

A-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**EXHIBIT B**

**[Letter of Transmittal and Consent]**

B-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

## EXHIBIT C-1

Form of Legal Opinion of Weil, Gotshal & Manges LLP, Counsel to the Company,
to be delivered on the Effectiveness Date

[●], 2009

Morgan Stanley & Co. Incorporated
Banc of America Securities LLC
Barclays Capital Inc.
Deutsche Bank Securities Inc.
Citigroup Global Markets Inc.
J.P. Morgan Securities Inc.
UBS Securities LLC
Wachovia Capital Markets, LLC
(at their respective addresses set forth in Schedule A hereto)

Ladies and Gentlemen:

We have acted as counsel to General Motors Corporation, a Delaware corporation (the "**Company**"), in connection with the preparation, execution and delivery of, and the consummation of the transactions contemplated by, the Dealer Managers Agreement, dated April 26, 2009 (the "**Agreement**") among the Company and you. The Agreement is being entered into in connection with offers to exchange (the "**Exchange Offers**") to be made by the Company (or, in the case of the Old GM Nova Scotia Notes (as defined below), by the Company and General Motors Nova Scotia Finance Company ("**GM Nova Scotia**")) for any and all of the (i) outstanding public unsecured bonds denominated in U.S. dollars issued by the Company (the "**Old GM USD Notes**") of each series specified in Schedule B hereto, (ii) outstanding public unsecured bonds denominated in Euro issued by the Company (the "**Old GM Euro Notes**" and together with the Old GM USD Notes, the "**Old GM Notes**") of each series specified in Schedule B hereto and (iii) outstanding public unsecured bonds denominated in GBP issued by GM Nova Scotia (the "**Old GM Nova Scotia Notes**" and together with the Old GM Euro Notes, the "**Old Non-USD Notes**" and the Old GM Notes together with the Old GM Nova Scotia Notes, the "**Old Notes**") of each series listed on Schedule B hereto, in each case validly tendered and not validly withdrawn in the Exchange Offers, for a fixed amount (the "**Exchange Consideration**"), for each $1,000 principal amount of the outstanding Old Notes tendered in the Exchange Offers, of 225 shares of common stock, par value $0.01, of the Company.

Concurrently with the Exchange Offers, the Company will (i) in respect of each series of the Old GM USD Notes, solicit (the "**Indenture Consent Solicitations**") consents of holders of Old GM USD Notes, to amend certain of the terms of the Old GM USD Notes and the indentures governing the Old GM USD Notes; and (ii) in respect of each series of the Old Non-USD Notes, solicit (the "**Paying Agency Agreement Solicitations**" and, together with the Indenture Consent Solicitations, the "**Solicitations**") proxies from such holders of Old Non-USD Notes to approve amendments to certain of the terms of the fiscal and paying agency agreements governing the Old Non-USD Notes.

C-I-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007614

Capitalized terms defined in the Agreement and used (but not otherwise defined) herein are used herein as so defined.

In so acting, we have examined originals or copies (certified or otherwise identified to our satisfaction) of (i) the Agreement; (ii) the registration statement on Form S-4 (File No. 333-[●]), filed on April 27, 2009 (the "**Registration Statement**"); (iii) the prospectus, dated [●], 2009 (the "**Prospectus**") included in the Registration Statement; (iv) the Schedule TO filed on April 27, 2009 (the "**Schedule TO**");and (v) such corporate records, agreements, documents and other instruments, and such certificates or comparable documents of public officials and of officers and representatives of the Company, and have made such inquiries of such officers and representatives, as we have deemed relevant and necessary as a basis for the opinions hereinafter set forth.

In such examination, we have assumed the genuineness of all signatures, the legal capacity of all natural persons, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as certified, conformed or photostatic copies and the authenticity of the originals of such latter documents. As to all questions of fact material to these opinions that have not been independently established, we have relied upon certificates or comparable documents of officers and representatives of the Company and upon the representations and warranties of the Company contained in the Agreement. We have also assumed (i) the valid existence of the Company, (ii) that the Company has the requisite corporate power and authority to enter into and perform the Agreement and (iii) the due authorization of the Agreement by the Company.

Based on the foregoing, and subject to the qualifications stated herein, we are of the opinion that:

1. The Agreement has been duly and validly executed and delivered by the Company.

2. The execution and delivery by the Company of the Agreement and the performance by the Company of its obligations thereunder will not conflict with, constitute a default under or violate (i) any of the terms, conditions or provisions of the Certificate of Incorporation or by-laws of the Company, assuming that the Certificate of Incorporation is amended as contemplated by the Prospectus, (ii) assuming that the consent contemplated by the U.S. Treasury Condition described in the Prospectus and any other consents required from the U.S. Treasury pursuant to the UST Loan Agreement have been obtained, any of the terms, conditions or provisions of any document, agreement or other instrument listed on Schedule C hereto or (iii) the laws of the State of New York, the corporate laws of the State of Delaware or any federal law or regulation (other than federal and state securities or blue sky laws, as to which we express no opinion in this paragraph).

C-1-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007615

3. The Registration Statement (except for the financial statements and related notes thereto, the financial statement schedules and the other financial, statistical and accounting data included or incorporated by reference the Registration Statement or the Prospectus, as to which we express no opinion), when it became effective under the Securities Act of 1933, as amended (the "**Securities Act**"), complied as to form in all material respects with the requirements of the Securities Act and the rules and regulations thereunder.

4. The Schedule TO, when it was filed with the Securities and Exchange Commission (the "**Commission**"), complied as to form in all material respects with the requirements of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**") and the rules and regulations thereunder.

5. The statements in the Prospectus under the caption "Material United States Federal Income Tax Considerations," insofar as they constitute summaries of matters of U.S. federal tax law and regulations or legal conclusions with respect thereto, constitute accurate summaries of the matters described therein in all material respects.

6. No consent, approval, waiver, license or authorization or other action by or filing with any federal governmental authority is required in connection with the execution and delivery by the Company of the Agreement, the consummation by the Company of the transactions contemplated thereby or the performance by the Company of its obligations thereunder, except for the consent contemplated by the U.S. Treasury Condition described in the Prospectus and any other consents required from the U.S. Treasury pursuant to the UST Loan Agreement and the filings and other actions required pursuant to federal securities laws, as to which we express no opinion in this paragraph, and those already obtained.

7. If conducted as contemplated and described in the Prospectus, the Exchange Offers and Solicitations will comply in all material respects with Rule 14e-1 of Regulation 14E under the Exchange Act and, in the case of the Exchange Offers for Old GM Notes that are convertible notes, Rule 13e-4(f) promulgated under the Exchange Act.

The opinions expressed herein are limited to the laws of the State of New York, the corporate laws of the State of Delaware and the federal laws of the United States, and we express no opinion as to the effect on the matters covered by this letter of the laws of any other jurisdiction.

The opinions expressed herein are rendered solely for your benefit in connection with the transactions described herein. Those opinions may not be used or relied upon by any other person, nor may this letter or any copies hereof be furnished to a third party, filed with a governmental agency, quoted, cited or otherwise referred to without our prior written consent.

Very truly yours,

C-1-3

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007616

Schedule A

**Dealer Managers**

Morgan Stanley & Co. Incorporated
1585 Broadway New York,
New York 10036

Banc of America Securities LLC
Hearst Tower
214 North Tryon Street
Charlotte, North Carolina 28255

Barclays Capital Inc.
745 Seventh Avenue
New York, New York 10019

Deutsche Bank Securities Inc.
60 Wall Street
New York, New York 10005

Citigroup Global Markets Inc.
390 Greenwich Street
New York, New York 10013

J.P. Morgan Securities Inc.
270 Park Avenue
New York, New York 10017

UBS Securities LLC
677 Washington Boulevard
Stamford, CT 06901

Wachovia Capital Markets, LLC
One Wachovia Center
301 South College Street
Charlotte, NC 28288-0737

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**Schedule B**

Old GM USD Notes

1.50% Series D Convertible Senior Debentures due June 1, 2009

7.20% Notes due January 15, 2011

9.45% Medium-Term Notes due November 1, 2011

7.125% Senior Notes due July 15, 2013

7.70% Debentures due April 15, 2016

8.80% Notes due March 1, 2021

9.4% Medium-Term Notes due July 15, 2021

9.40% Debentures due July 15, 2021

8.25% Senior Debentures due July 15, 2023

8.10% Debentures due June 15, 2024

7.40% Debentures due September 1, 2025

6 3/4% Debentures due May 1, 2028

4.50% Series A Convertible Senior Debentures due March 6, 2032

5.25% Series B Convertible Senior Debentures due March 6, 2032

6.25% Series C Convertible Senior Debentures due July 15, 2033

8.375% Senior Debentures due July 15, 2033

7.75% Discount Debentures due March 15, 2036

7.25% Quarterly Interest Bonds due April 15, 2041

7.25% Senior Notes due July 15, 2041

7.5% Senior Notes due July 1, 2044

7.375% Senior Notes due May 15, 2048

7.375% Senior Notes due May 23, 2048

7.375% Senior Notes due October 1, 2051

7.25% Senior Notes due February 15, 2052

Old GM Euro Notes

7.25% Notes due 2013

8.375% Notes due 2033

Old GM Nova Scotia Notes

8.375% Guaranteed Notes due 2015

8.875% Guaranteed Notes due 2023

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**Schedule C**

1. Indenture, dated as of November 15, 1990, between General Motors Corporation and Citibank, N.A., as Trustee.

2. Indenture, dated as of December 7, 1995, between General Motors Corporation and Citibank, N.A., as Trustee.

3. First Supplemental Indenture, dated as of March 4, 2002, between General Motors Corporation and Citibank, N.A.

4. Second Supplemental Indenture, dated as of November 5, 2004, between General Motors Corporation and Citibank, N.A.

5. Third Supplemental Indenture, dated as of November 5, 2004, between General Motors Corporation and Citibank, N.A.

6. Fourth Supplemental Indenture, dated as of November 5, 2004, between General Motors Corporation and Citibank, N.A.

7. Indenture, dated as of January 8, 2008, between General Motors Corporation and The Bank of New York, as Trustee.

8. First Supplemental Indenture, dated as of February 22, 2008 between General Motors Corporation and The Bank of New York, as Trustee.

9. Amended and Restated Credit Agreement, dated July 20, 2006, among General Motors Corporation, General Motors Canada Limited, Saturn Corporation, and a syndicate of lenders.

10. First Amendment and Consent dated February 11, 2009 to the Amended and Restated Credit Agreement dated as of June 20, 2006 among General Motors Corporation, General Motors of Canada Limited, Saturn Corporation, Citicorp USA, Inc., as administrative agent for the Lenders there under, JPMorgan Chase Bank, N.A., as syndication agent, and the several banks and other financial institutions from time to time parties thereto as lenders.

11. General Motors Corporation $4,372,500,000 principal amount of 6.75% Series U Convertible Senior Debentures due December 31, 2012, dated February 22, 2008.

12. Loan and Security Agreement, dated as of December 31, 2008, by and between General Motors Corporation, as Borrower, the Guarantors parties thereto, and the United States Department of the Treasury, as Lender, including Appendix A, as amended by the Amendment dated March 31, 2009 to Loan and Security Agreement dated as of December 31, 2008

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

13. Guaranty and Security Agreement, dated as of December 31, 2008 , made by certain subsidiaries of General Motors Corporation, as guarantors, in favor of the United States Department of the Treasury.

14. Equity Pledge Agreement, dated as of December 31, 2008, made by General Motors Corporation and certain of the Guarantors, as pledgors, in favor of the United States Department of the Treasury.

15. Warrant Agreement, dated as of December 31, 2008, by and between General Motors Corporation and the United States Department of the Treasury.

16. Warrant, dated as of December 31, 2008, issued pursuant to the Warrant Agreement.

17. Additional Note, dated as of December 31, 2008, executed pursuant to the Warrant Agreement.

18. Loan and Security Agreement, dated as of January 16, 2009, by and between General Motors Corporation, as Borrower, and the United States Department of the Treasury, as Lender, including Exhibit A Form of Note Agreement, as amended by the Amendment dated March 31, 2009 to Loan and Security Agreement dated as of January 16, 2009.

19. Equity Pledge Agreement, dated as of January 16, 2009, made by GM Finance Co. Holdings LLC and GM Preferred Finance Co. Holdings LLC, as pledgors, in favor of the United States Department of the Treasury Agreement.

20. Supplemental Indenture, dated as of August 13, 2007, between General Motors Corporation and Wilmington Trust Company, as successor trustee to Citibank, N.A.

21. Loan and Security Agreement, dated as of October 2, 2006, among General Motors Corporation and Gelco Corporation (d/b/a GE Fleet Services), as Lender, as amended by (i) the First Amendment to the Loan and Security Agreement dated as of September 27, 2007, (ii) the Second Amendment to the Loan and Security Agreement dated as of November 20, 2007 and (iii) the Third Amendment to the Loan and Security Agreement dated as of February 17, 2009.

22. Term Loan Agreement, dated as of November 29, 2006, among General Motors Corporation, Saturn Corporation; the Lenders party thereto and JPMorgan Chase Bank, N.A., as Administrative Agent, as amended by the First Amendment to Term Loan Agreement dated as of March 4, 2009.

23. Fiscal and Paying Agency Agreement, dated as of July 3, 2003, among General Motors Corporation, Deutsche Bank AG London, as Fiscal Agent, and Banque Generale de Luxembourg S.A., together with the Fiscal Agent as Paying Agents.

24. Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between General Motors Nova Scotia Finance Company, as Issuer, General Motors Corporation, as Guarantor, and Deutsche Bank Luxembourg S.A. as Fiscal Agent, and Bank Général du Luxembourg S.A. as Paying Agent.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**EXHIBIT C-2**

Form of Legal Opinion of Weil, Gotshal & Manges LLP, Counsel to the Company,
to be delivered on the Closing Date

[●], 2009

Morgan Stanley & Co. Incorporated
Banc of America Securities LLC
Barclays Capital Inc.
Deutsche Bank Securities Inc.
Citigroup Global Markets Inc.
J.P. Morgan Securities Inc.
UBS Securities LLC
Wachovia Capital Markets, LLC
(at their respective addresses set forth in Schedule A hereto)

Ladies and Gentlemen:

We have acted as counsel to General Motors Corporation, a Delaware corporation (the "**Company**"), in connection with the preparation, execution and delivery of, and the consummation of the transactions contemplated by, the Dealer Managers Agreement, dated April 26, 2009 (the "**Agreement**") between the Company and you. The Agreement is being entered into in connection with offers to exchange (the "**Exchange Offers**") to be made by the Company (or, in the case of the Old GM Nova Scotia Notes (as defined below), by the Company and General Motors Nova Scotia Finance Company ("**GM Nova Scotia**")) for any and all of the (i) outstanding public unsecured bonds denominated in U.S. dollars issued by the Company (the "**Old GM USD Notes**") of each series specified in Schedule B hereto, (ii) outstanding public unsecured bonds denominated in Euro issued by the Company (the "**Old GM Euro Notes**" and together with the Old GM USD Notes, the "**Old GM Notes**") of each series specified in Schedule B hereto and (iii) outstanding public unsecured bonds denominated in GBP issued by GM Nova Scotia (the "**Old GM Nova Scotia Notes**" and together with the Old GM Euro Notes, the "**Old Non-USD Notes**" and the Old GM Notes together with the Old GM Nova Scotia Notes, the "**Old Notes**") of each series listed on Schedule B hereto, in each case validly tendered and not validly withdrawn in the Exchange Offers, for a fixed amount (the "**Exchange Consideration**"), for each $1,000 principal amount of the outstanding Old Notes tendered in the Exchange Offers, of 225 shares of common stock, par value $0.01 per share, of the Company.

Concurrently with the Exchange Offers, the Company will (i) in respect of each series of the Old GM USD Notes, solicit (the "**Indenture Consent Solicitations**") consents of holders of Old GM USD Notes, to amend certain of the terms of the Old GM USD Notes and the indentures governing the Old GM USD Notes; and (ii) in respect of each series of the Old Non-USD Notes, solicit (the "**Paying Agency Agreement Solicitations**" and, together with the Indenture Consent Solicitations, the "**Solicitations**") proxies from such holders of Old Non-USD Notes to approve amendments to certain of the terms of the fiscal and paying agency agreements governing the Old Non-USD Notes.

C-II-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007621

Capitalized terms defined in the Agreement and used (but not otherwise defined) herein are used herein as so defined.

In so acting, we have examined originals or copies (certified or otherwise identified to our satisfaction) of (i) the Agreement; (ii) the Supplemental Indentures; (iii) the Proposed Paying Agency Agreement Amendments; (iv) the Charter Amendment; (v) the Escrow Agreement; (vi) agreements in respect of the Labor Modifications and the VEBA Modifications; (vii) the registration statement on Form S-4 (File No. 333-[●]), filed on April 27, 2009 (the "**Registration Statement**"); (viii) the prospectus, dated [●], 2009 (the "**Prospectus**") included in the Registration Statement; (ix) the Schedule TO filed on April 27, 2009 (the "**Schedule TO**"); (x) the Schedule 14C filed on [●], 2009 (the "**Schedule 14C**"); and (xi) such corporate records, agreements, documents and other instruments, and such certificates or comparable documents of public officials and of officers and representatives of the Company, and have made such inquiries of such officers and representatives, as we have deemed relevant and necessary as a basis for the opinions hereinafter set forth. The agreements specified in (ii), (iii), (v) and (vi) are collectively referred to as the "**Transaction Documents**."

In such examination, we have assumed the genuineness of all signatures, the legal capacity of all natural persons, the authenticity of all documents submitted to us as originals, the conformity to original documents of all documents submitted to us as certified, conformed or photostatic copies and the authenticity of the originals of such latter documents. As to all questions of fact material to these opinions that have not been independently established, we have relied upon certificates or comparable documents of officers and representatives of the Company and upon the representations and warranties of the Company contained in the Agreement. We have also assumed (i) the valid existence of the Company and the Trustee, (ii) that the Company has the requisite corporate power and authority to enter into and perform the Transaction Documents and the Agreement and (iii) the due authorization of the Transaction Documents and the Agreement by the Company. As used herein, "to our knowledge" and "of which we are aware" mean the conscious awareness of facts or other information by any lawyer in our firm actively involved in the transactions contemplated by the Agreement, after consultation with such other lawyers in our firm, as each such actively involved lawyer has deemed appropriate.

Based on the foregoing, and subject to the qualifications stated herein, we are of the opinion that:

1. Each of the Transaction Documents and the Agreement has been duly and validly executed and delivered by the Company and each of the Transaction Documents (assuming the due authorization, execution and delivery thereof by the other parties thereto) constitutes the legal, valid and binding obligation of the Company, enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and similar laws affecting creditors' rights and

C-II-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007622

remedies generally, and subject, as to enforceability, to general principles of equity, including principles of commercial reasonableness, good faith and fair dealing (regardless of whether enforcement is sought in a proceeding at law or in equity) and except that rights to indemnification and contribution thereunder may be limited by federal or state securities laws or public policy relating thereto.

2. The Schedule TO, when it was filed with the Securities and Exchange Commission (the "**Commission**"), complied as to form in all material respects with the requirements of the Securities Exchange Act of 1934, as amended (the "**Exchange Act**") and the rules and regulations thereunder.

3. The Schedule 14C, when it was filed with the Commission, complied as to form in all material respects with the requirements of the Exchange Act and the rules and regulations thereunder.

4. The Registration Statement has become effective under the Securities Act of 1933, as amended (the "**Securities Act**"), and we are not aware of any stop order suspending the effectiveness of the Registration Statement. To our knowledge, no proceedings therefor have been initiated or overtly threatened by the Commission and any required filing of the Prospectus and any supplement thereto pursuant to Rule 424(b) under the Securities Act has been made in the manner and within the time period required by such Rule.

5. The execution and delivery by the Company of each of the Transaction Documents and the Agreement and, in each case, the performance by the Company of its obligations thereunder will not conflict with, constitute a default under or violate (i) any of the terms, conditions or provisions of the Certificate of Incorporation, as amended, or by-laws of the Company, (ii) assuming that the consent contemplated by the U.S. Treasury Condition described in the Prospectus and any other consents required from the U.S. Treasury pursuant to the UST Loan Agreement have been obtained, any of the terms, conditions or provisions of any document, agreement or other instrument listed on Schedule C hereto or (iii) the laws of the State of New York, the corporate laws of the State of Delaware or any federal law or regulation (other than federal and state securities or blue sky laws, as to which we express no opinion in this paragraph).

6. No consent, approval, waiver, license or authorization or other action by or filing with any federal governmental authority is required in connection with the execution and delivery by the Company of the Transaction Documents, the consummation by the Company of the transactions contemplated thereby or the performance by the Company of its obligations thereunder, except for the consent contemplated by the U.S. Treasury Condition described in the Prospectus and any other consents required from the U.S. Treasury pursuant to the UST Loan Agreement and the filings and other actions required pursuant to federal securities laws, as to which we express no opinion in this paragraph, and those already obtained.

7. The statements in the Prospectus under the captions "Description of the Charter Amendments" and "Description of Our Capital Stock," in each case insofar as such

C-II-3

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007623

statements constitute summaries of the legal matters, documents or proceedings referred to therein, fairly present the information called for with respect to such legal matters, documents and proceedings and fairly summarize the matters referred to therein in all material respects.

8. The statements in the Prospectus under the caption "Material United States Federal Income Tax Considerations," insofar as they constitute summaries of matters of U.S. federal tax law and regulations or legal conclusions with respect thereto, constitute accurate summaries of the matters described therein in all material respects.

9. The New Common Shares have been duly authorized for issuance pursuant to the Certificate of Incorporation, as amended by the Charter Amendment and, when delivered to Holders in exchange for Old Notes as contemplated by the Prospectus, will be validly issued, fully paid and non-assessable.

10. The Exchange Offers and Solicitations comply in all material respects with Rule 14e-1 of Regulation 14E under the Exchange Act and, in the case of the Exchange Offers for Old GM Notes that are convertible notes, Rule 13e-4(f) promulgated under the Exchange Act.

The opinions expressed herein are limited to the laws of the State of New York, the corporate laws of the State of Delaware and the federal laws of the United States, and we express no opinion as to the effect on the matters covered by this letter of the laws of any other jurisdiction.

The opinions expressed herein are rendered solely for your benefit in connection with the transactions described herein. Those opinions may not be used or relied upon by any other person, nor may this letter or any copies hereof be furnished to a third party, filed with a governmental agency, quoted, cited or otherwise referred to without our prior written consent.

Very truly yours,

C-II-4

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**Schedule A**

**Dealer Managers**

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036

Banc of America Securities LLC
Hearst Tower
214 North Tryon Street
Charlotte, North Carolina 28255

Barclays Capital Inc.
745 Seventh Avenue
New York, New York 10019

Deutsche Bank Securities Inc.
60 Wall Street
New York, New York 10005

Citigroup Global Markets Inc.
390 Greenwich Street
New York, New York 10013

J.P. Morgan Securities Inc.
270 Park Avenue
New York, New York 10017

UBS Securities LLC
677 Washington Boulevard
Stamford, CT 06901

Wachovia Capital Markets, LLC
One Wachovia Center
301 South College Street
Charlotte, NC 28288-0737

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**Schedule B**

Old GM USD Notes

1.50% Series D Convertible Senior Debentures due June 1, 2009

7.20% Notes due January 15, 2011

9.45% Medium-Term Notes due November 1, 2011

7.125% Senior Notes due July 15, 2013

7.70% Debentures due April 15, 2016

8.80% Notes due March 1, 2021

9.4% Medium-Term Notes due July 15, 2021

9.40% Debentures due July 15, 2021

8.25% Senior Debentures due July 15, 2023

8.10% Debentures due June 15, 2024

7.40% Debentures due September 1, 2025

6 $^3/4$% Debentures due May 1, 2028

4.50% Series A Convertible Senior Debentures due March 6, 2032

5.25% Series B Convertible Senior Debentures due March 6, 2032

6.25% Series C Convertible Senior Debentures due July 15, 2033

8.375% Senior Debentures due July 15, 2033

7.75% Discount Debentures due March 15, 2036

7.25% Quarterly Interest Bonds due April 15, 2041

7.25% Senior Notes due July 15, 2041

7.5% Senior Notes due July 1, 2044

7.375% Senior Notes due May 15, 2048

7.375% Senior Notes due May 23, 2048

7.375% Senior Notes due October 1, 2051

7.25% Senior Notes due February 15, 2052

Old GM Euro Notes

7.25% Notes due 2013

8.375% Notes due 2033

Old GM Nova Scotia Notes

8.375% Guaranteed Notes due 2015

8.875% Guaranteed Notes due 2023

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

<u>**Schedule C**</u>

1. Indenture, dated as of November 15, 1990, between General Motors Corporation and Citibank, N.A., as Trustee.

2. Indenture, dated as of December 7, 1995, between General Motors Corporation and Citibank, N.A., as Trustee.

3. First Supplemental Indenture, dated as of March 4, 2002, between General Motors Corporation and Citibank, N.A.

4. Second Supplemental Indenture, dated as of November 5, 2004, between General Motors Corporation and Citibank, N.A.

5. Third Supplemental Indenture, dated as of November 5, 2004, between General Motors Corporation and Citibank, N.A.

6. Fourth Supplemental Indenture, dated as of November 5, 2004, between General Motors Corporation and Citibank, N.A.

7. Indenture, dated as of January 8, 2008, between General Motors Corporation and The Bank of New York, as Trustee.

8. First Supplemental Indenture, dated as of February 22, 2008 between General Motors Corporation and The Bank of New York, as Trustee.

9. Amended and Restated Credit Agreement, dated July 20, 2006, among General Motors Corporation, General Motors Canada Limited, Saturn Corporation, and a syndicate of lenders.

10. First Amendment and Consent dated February 11, 2009 to the Amended and Restated Credit Agreement dated as of June 20, 2006 among General Motors Corporation, General Motors of Canada Limited, Saturn Corporation, Citicorp USA, Inc., as administrative agent for the Lenders there under, JPMorgan Chase Bank, N.A., as syndication agent, and the several banks and other financial institutions from time to time parties thereto as lenders.

11. General Motors Corporation $4,372,500,000 principal amount of 6.75% Series U Convertible Senior Debentures due December 31, 2012, dated February 22, 2008.

12. Loan and Security Agreement, dated as of December 31, 2008, by and between General Motors Corporation, as Borrower, the Guarantors parties thereto, and the United States Department of the Treasury, as Lender, including Appendix A, as amended by the Amendment dated March 31, 2009 to Loan and Security Agreement dated as of December 31, 2008

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007627

13. Guaranty and Security Agreement, dated as of December 31, 2008 , made by certain subsidiaries of General Motors Corporation, as guarantors, in favor of the United States Department of the Treasury.

14. Equity Pledge Agreement, dated as of December 31, 2008, made by General Motors Corporation and certain of the Guarantors, as pledgors, in favor of the United States Department of the Treasury.

15. Warrant Agreement, dated as of December 31, 2008, by and between General Motors Corporation and the United States Department of the Treasury.

16. Warrant, dated as of December 31, 2008, issued pursuant to the Warrant Agreement.

17. Additional Note, dated as of December 31, 2008, executed pursuant to the Warrant Agreement.

18. Loan and Security Agreement, dated as of January 16, 2009, by and between General Motors Corporation, as Borrower, and the United States Department of the Treasury, as Lender, including Exhibit A Form of Note Agreement, as amended by the Amendment dated March 31, 2009 to Loan and Security Agreement dated as of January 16, 2009.

19. Equity Pledge Agreement, dated as of January 16, 2009, made by GM Finance Co. Holdings LLC and GM Preferred Finance Co. Holdings LLC, as pledgors, in favor of the United States Department of the Treasury Agreement.

20. Supplemental Indenture, dated as of August 13, 2007, between General Motors Corporation and Wilmington Trust Company, as successor trustee to Citibank, N.A.

21. Loan and Security Agreement, dated as of October 2, 2006, among General Motors Corporation and Gelco Corporation (d/b/a GE Fleet Services), as Lender, as amended by (i) the First Amendment to the Loan and Security Agreement dated as of September 27, 2007, (ii) the Second Amendment to the Loan and Security Agreement dated as of November 20, 2007 and (iii) the Third Amendment to the Loan and Security Agreement dated as of February 17, 2009.

22. Term Loan Agreement, dated as of November 29, 2006, among General Motors Corporation, Saturn Corporation; the Lenders party thereto and JPMorgan Chase Bank, N.A., as Administrative Agent, as amended by the First Amendment to Term Loan Agreement dated as of March 4, 2009.

23. Fiscal and Paying Agency Agreement, dated as of July 3, 2003, among General Motors Corporation, Deutsche Bank AG London, as Fiscal Agent, and Banque Generale de Luxembourg S.A., together with the Fiscal Agent as Paying Agents.

24. Fiscal and Paying Agency Agreement, dated as of July 10, 2003, between General Motors Nova Scotia Finance Company, as Issuer, General Motors Corporation, as Guarantor, and Deutsche Bank Luxembourg S.A. as Fiscal Agent, and Bank Général du Luxembourg S.A. as Paying Agent.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**EXHIBIT D-1**

Form of Legal Opinion of Jenner & Block LLP, Counsel to the Company
to be delivered on the Effectiveness Date

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036

Banc of America Securities LLC
The Hearst Building
214 North Tryon Street
17th Floor
Charlotte, North Carolina 28255

Barclays Capital Inc.
745 Seventh Avenue
New York, New York 10019

Deutsche Bank Securities Inc.
60 Wall Street
New York, New York 10005

Citigroup Global Markets Inc.
390 Greenwich Street
New York, New York 10013

J.P. Morgan Securities Inc.
270 Park Avenue
New York, New York 10017

UBS Securities LLC
677 Washington Boulevard
Stamford, CT 06901

Wachovia Capital Markets, LLC
One Wachovia Center
301 South College Street
Charlotte, NC 28288-0737

D-1-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

Ladies and Gentlemen:

We are issuing this letter in our capacity as special counsel for General Motors Corporation (the "**Company**") in response to the requirements of Section 14(e) of the Dealer Managers Agreement dated April 26, 2009 (the "**Agreement**") by and among the Company and Morgan Stanley & Co. Incorporated, Banc of America Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., J.P. Morgan Securities Inc., UBS Securities LLC and Wachovia Capital Markets, LLC (collectively, the "**Dealer Managers**"). Every capitalized term that is defined or given a special meaning in the Agreement and which is not given a different meaning in this letter has the same meaning whenever it is used in this letter as the meaning it is given in the Agreement. The Agreement relates to the Exchange Offers and Solicitations.

In connection with the preparation of this letter, we have (among other things) read the Agreement, the Registration Statement, the Preliminary Prospectus and the Prospectus.

Subject to the assumptions, qualifications and limitations which are identified in this letter, we advise you that each document filed pursuant to the Exchange Act and incorporated by reference in the Registration Statement, the Preliminary Prospectus, the Prospectus or any Non-U.S. Prospectus, when filed with the Commission, or at the time of any amendment, appeared on its face to be responsive in all material respects with the requirements of the Exchange Act and the rules and regulations of the Commission thereunder.

. . . . . . . . . . . . . . . . . .

The purpose of our professional engagement was not to establish factual matters and the preparation of the Registration Statement, the Schedule TO, and the Prospectus involved many determinations of a wholly or partially nonlegal character. We make no representation that we have independently verified the accuracy, completeness or fairness of the Registration Statement, the Schedule TO and the Prospectus or that the actions taken in connection with the preparation of these documents (including the actions described in the next paragraph) were sufficient to cause them to be accurate, complete or fair. We are not passing upon and do not assume any responsibility for the accuracy, completeness or fairness of the Registration Statement, the Schedule TO and the Prospectus, except to the extent otherwise explicitly indicated in the immediately preceding paragraph.

We have participated in certain conferences with officers and other representatives of the Company, representatives of the independent accountants of the Company and the Dealer Managers and their counsel at which the contents of the Registration Statement, the Schedule TO and the Prospectus and related matters were discussed, although we were not primarily responsible for the preparation of these documents. We did not participate in the preparation of the documents incorporated by reference into the Registration Statement, the Schedule TO and the Prospectus but have, however, reviewed such documents.

On the basis of such conferences and review, we advise you that no fact came to our attention that caused us to conclude that (i) the Registration Statement, as of the date it was declared effective by the Commission, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements

D-1-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007630

therein, not misleading and (ii) the Schedule TO and the Prospectus, as of their respective date and as of the date hereof, contained or contains an untrue statement of a material fact or omitted or omits to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

. . . . . . . . . . . . . . . . . .

Except for the activities described in the immediately preceding section of this letter, we have not undertaken any investigation to determine the facts upon which the advice in this letter is based.

We are not advising, and we express no view, with respect to any financial statements and schedules, the notes related thereto or other financial, accounting or statistical data derived therefrom and information (including without limitation financial projections), and accounting policies, in each case, included in the Registration Statement, the Schedule TO and the Prospectus or incorporated by reference therein or excluded therefrom.

Our advice in this letter is based exclusively on the federal law of the United States; none of the advice contained in this letter considers or covers any foreign or state securities laws or regulations.

Whenever this letter provides advice about (or based upon) our knowledge or awareness of any particular information such advice is based entirely on the conscious awareness at the time this letter is delivered on the date it bears by the lawyers with Jenner & Block LLP at that time who spent substantial time representing the Company in connection with the preparation of the Registration Statement, including the Preliminary Prospectus, the Prospectus and the Incorporated Documents.

This letter speaks as of the time of its delivery on the date it bears. We do not assume any obligation to provide you with any subsequent opinion or advice by reason of any fact about which we did not have knowledge at that time, by reason of any change subsequent to that time in any law, other governmental requirement or interpretation thereof covered by any of our opinions or advice, or for any other reason.

This letter may be relied upon by the Dealer Managers, solely in their capacity as financial intermediaries, and only for the purpose served by the provision in the Agreement cited in the initial paragraph of this letter in response to which it has been delivered. Without our written consent: (i) no person other than the Dealer Managers may rely on this letter for any purpose; (ii) this letter may not be cited or quoted in any financial statement, prospectus, tender offer statement, proxy or information statement or other similar document; (iii) this letter may not be cited or quoted in any other document or communication which might encourage reliance upon this letter by any person or for any purpose excluded by the restrictions in this paragraph; and (iv) copies of this letter may not be furnished to anyone for purposes of encouraging such reliance.

Sincerely,

Jenner & Block LLP

D-1-3

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007631

## EXHIBIT D-2

Form of Legal Opinion of Jenner & Block LLP, Counsel to the Company
to be delivered on the Closing Date

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036

Banc of America Securities LLC
The Hearst Building
214 North Tryon Street
17th Floor
Charlotte, North Carolina 28255

Barclays Capital Inc.
745 Seventh Avenue
New York, New York 10019

Deutsche Bank Securities Inc.
60 Wall Street
New York, New York 10005

Citigroup Global Markets Inc.
390 Greenwich Street
New York, New York 10013

J.P. Morgan Securities Inc.
270 Park Avenue
New York, New York 10017

UBS Securities LLC
677 Washington Boulevard
Stamford, CT 06901

Wachovia Capital Markets, LLC
One Wachovia Center
301 South College Street
Charlotte, NC 28288-0737

Ladies and Gentlemen:

We are issuing this letter in our capacity as special counsel for General Motors Corporation (the "**Company**") in response to the requirements of Section 14(e) of the Dealer Managers Agreement dated April 26, 2009 (the "**Agreement**") by and among the Company and

D-2-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007632

Morgan Stanley & Co. Incorporated, Banc of America Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., J.P. Morgan Securities Inc., UBS Securities LLC and Wachovia Capital Markets, LLC (collectively, the "**Dealer Managers**"). Every capitalized term that is defined or given a special meaning in the Agreement and which is not given a different meaning in this letter has the same meaning whenever it is used in this letter as the meaning it is given in the Agreement. The Agreement relates to the Exchange Offers and Solicitations.

In connection with the preparation of this letter, we have (among other things) read the Agreement, the Registration Statement, the Preliminary Prospectus, the Prospectus and copies of all certificates and other documents delivered today in connection with the consummation of the Exchange Offers.

Subject to the assumptions, qualifications and limitations which are identified in this letter, we advise you that each document filed pursuant to the Exchange Act and incorporated by reference in the Registration Statement, the Preliminary Prospectus , the Prospectus or any Non-U.S. Prospectus, when filed with the Commission, or at the time of any amendment, appeared on its face to be responsive in all material respects with the requirements of the Exchange Act and the rules and regulations of the Commission thereunder.

. . . . . . . . . . . . . . . . . .

The purpose of our professional engagement was not to establish factual matters and the preparation of the Registration Statement, the Schedule TO and the Prospectus involved many determinations of a wholly or partially nonlegal character. We make no representation that we have independently verified the accuracy, completeness or fairness of the Registration Statement, the Schedule TO and the Prospectus or that the actions taken in connection with the preparation of these documents (including the actions described in the next paragraph) were sufficient to cause them to be accurate, complete or fair. We are not passing upon and do not assume any responsibility for the accuracy, completeness or fairness of the Registration Statement, the Schedule TO and the Prospectus, except to the extent otherwise explicitly indicated in the immediately preceding paragraph.

We have participated in certain conferences with officers and other representatives of the Company, representatives of the independent accountants of the Company and the Dealer Managers and their counsel at which the contents of the Registration Statement, the Schedule TO and the Prospectus and related matters were discussed, although we were not primarily responsible for the preparation of these documents. We did not participate in the preparation of the documents incorporated by reference into the Registration Statement, the Schedule TO and the Prospectus but have, however, reviewed such documents.

On the basis of such conferences and review, we advise you that no fact came to our attention that caused us to conclude that (i) the Registration Statement, as of the date it was declared effective by the Commission, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary in order to make the statements therein, not misleading and (ii) the Schedule TO and the Prospectus, as of their respective

D-2-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007633

date and as of the date hereof, contained or contains an untrue statement of a material fact or omitted or omits to state a material fact required to be stated therein or necessary in order to make the statements therein, in the light of the circumstances under which they were made, not misleading.

. . . . . . . . . . . . . . . . . .

Except for the activities described in the immediately preceding section of this letter, we have not undertaken any investigation to determine the facts upon which the advice in this letter is based.

We are not advising, and we express no view, with respect to any financial statements and schedules, the notes related thereto or other financial, accounting or statistical data derived therefrom and information (including without limitation financial projections), and accounting policies, in each case, included in the Registration Statement, the Schedule TO and the Prospectus or incorporated by reference therein or excluded therefrom.

Our advice in this letter is based exclusively on the federal law of the United States; none of the advice contained in this letter considers or covers any foreign or state securities laws or regulations.

Whenever this letter provides advice about (or based upon) our knowledge or awareness of any particular information such advice is based entirely on the conscious awareness at the time this letter is delivered on the date it bears by the lawyers with Jenner & Block LLP at that time who spent substantial time representing the Company in connection with the preparation of the Registration Statement, including the Prospectus and the Incorporated Documents, and the Schedule TO.

This letter speaks as of the time of its delivery on the date it bears. We do not assume any obligation to provide you with any subsequent opinion or advice by reason of any fact about which we did not have knowledge at that time, by reason of any change subsequent to that time in any law, other governmental requirement or interpretation thereof covered by any of our opinions or advice, or for any other reason.

This letter may be relied upon by the Dealer Managers, solely in their capacity as financial intermediaries, and only for the purpose served by the provision in the Agreement cited in the initial paragraph of this letter in response to which it has been delivered. Without our written consent: (i) no person other than the Dealer Managers may rely on this letter for any purpose; (ii) this letter may not be cited or quoted in any financial statement, prospectus, tender offer statement, proxy or information statement or other similar document; (iii) this letter may not be cited or quoted in any other document or communication which might encourage reliance upon this letter by any person or for any purpose excluded by the restrictions in this paragraph; and (iv) copies of this letter may not be furnished to anyone for purposes of encouraging such reliance.

Sincerely,

Jenner & Block LLP

D-2-3

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007634

**EXHIBIT E-1**

OPINION OF INTERNAL COUNSEL OF THE COMPANY

To be delivered on Effectiveness Date

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036

Banc of America Securities LLC
The Hearst Building
214 North Tryon Street
17th Floor
Charlotte, North Carolina 28255

Barclays Capital Inc.
745 Seventh Avenue
New York, New York 10019

Deutsche Bank Securities Inc.
60 Wall Street
New York, New York 10005

Citigroup Global Markets Inc.
390 Greenwich Street
New York, New York 10013

J.P. Morgan Securities Inc.
270 Park Avenue
New York, New York 10017

UBS Securities LLC
677 Washington Boulevard
Stamford, CT 06901

Wachovia Capital Markets, LLC
One Wachovia Center
301 South College Street
Charlotte, NC 28288-0737

Ladies and Gentlemen:

I am issuing this letter in my capacity as a member of the Legal Staff of General Motors Corporation (the "Company") in response to the requirement in Section 14(e) of the

E-1-1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007635

Dealer Managers Agreement dated April 26, 2009 (the "Agreement") by and among the Company and Morgan Stanley & Co. Incorporated, Banc of America Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., J.P. Morgan Securities Inc., UBS Securities LLC and Wachovia Capital Markets, LLC (the "Dealer Managers"). Capitalized terms used, but not defined, herein shall have the meanings ascribed to them by the Agreement. The Agreement relates to the offers to exchange (the "Offers") certain notes issued by the Company and General Motors Nova Scotia (collectively, the "Old Notes") for the Exchange Consideration.

In connection with the preparation of this letter, I have (among other things) read the Agreement, the Registration Statement, the Prospectus, the resolutions of the Board of Directors of the Company and the Restated Certificate of Incorporation and By-Laws of the Company.

In addition, I have examined and relied on the originals or copies certified or otherwise identified to my satisfaction of all such corporate records of the Company and such other instruments and certificates of public officials, officers and representatives of the Company and such other persons, and I have made such investigations of law as I have deemed appropriate as a basis for the opinions expressed below. I have assumed that there has been no relevant change or development between the dates as of which the information cited in the preceding sentence was given and the date of this letter and that the information upon which I have relied is accurate and does not omit disclosures necessary to prevent such information from being misleading.

Subject to the assumptions, qualifications and limitations which are identified in this letter, I advise you that:

(i) The Company is validly existing as a corporation and in good standing under the laws of the State of Delaware.

(ii) The Company has the corporate power and corporate authority to execute and deliver the Agreement and perform its obligations thereunder.

(iii) The Company has taken all corporate action necessary to authorize the making of the Exchange Offers and the Solicitations.

(iv) The Agreement has been duly authorized by the Company.

(v) The execution and delivery by the Company of the Agreement and the consummation by the Company of the transactions contemplated thereby, including the Exchange Offers and Solicitations, will not violate or conflict with, or result in any contravention of, any Applicable Order.

"Applicable Orders" means those judgments, orders or decrees identified on Schedule I to this opinion.

I have assumed for purposes of this letter the following: each document I have reviewed for purposes of this letter is accurate and complete, each such document that is an original is authentic, each such document that is a copy conforms to an authentic original and all

E-1-2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007636

signatures on each such document are genuine; that the Agreement and every other agreement I have examined for purposes of this letter constitutes a valid and binding obligation of each party to that document and that each such party has satisfied all legal requirements that are applicable to such party to the extent necessary to entitle such party to enforce such agreement in accordance with such agreement's terms (except that I make no such assumption with respect to the Company); and that you have acted in good faith and without notice of any fact which has caused you to reach any conclusion contrary to any of the conclusions provided in this letter.

In preparing this letter I have relied without independent verification upon the following: (i) information contained in certificates obtained from governmental authorities; (ii) factual information represented to be true in the Agreement and other documents specifically identified at the beginning of this letter as having been read by me; (iii) factual information provided to me by the other representatives of the Company; and (iv) factual information I have obtained from such other sources as I have deemed reasonable. I have assumed that the information upon which I have relied is accurate and does not omit disclosures necessary to prevent such information from being misleading. For purposes of numbered paragraph (i), I have relied exclusively upon a certificate issued by a governmental authority in the relevant jurisdiction and such opinion is not intended to provide any conclusion or assurance beyond that conveyed by such certificate. I have not undertaken any investigation or search of court records for purposes of this letter.

I confirm that I do not have knowledge that has caused me to conclude that my reliance and assumptions cited in the two immediately preceding paragraphs are unwarranted. Whenever this letter provides advice about (or based upon) my knowledge or awareness of any particular information such advice is based entirely on my conscious awareness at the time this letter is delivered on the date it bears.

I am a member of the Bar of the State of New York and my advice on every legal issue addressed in this letter is based exclusively on the General Corporation Law of the State of Delaware, the laws of the State of New York or the federal law of the United States. I express no opinion with respect to any state securities or "blue sky" laws or regulations, any foreign laws, statutes, governmental rules or regulations or any laws, statutes governmental rules or regulations which in my experience are not applicable generally to transactions of the kind covered by the Agreement.

My advice on each legal issue addressed in this letter represents my opinion as to how that issue would be resolved were it to be considered by the highest court of the jurisdiction upon whose law my opinion on that issue is based. The manner in which any particular issue would be treated in any actual court case would depend in part on facts and circumstances particular to the case, and this letter is not intended to guarantee the outcome of any legal dispute which may arise in the future.

This letter speaks as of the time of its delivery on the date it bears. I do not assume any obligation to provide you with any subsequent opinion or advice by reason of any fact about which I did not have knowledge at that time, by reason of any change subsequent to that time in any law, other governmental requirement or interpretation thereof covered by any of my opinions or advice, or for any other reason.

E-1-3

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER
NGM000007637

This letter may be relied upon by the Dealer Managers only for the purpose served by the provision in the Agreement cited in the initial paragraph of this letter in response to which it has been delivered. Without my written consent: (i) no person other than the Dealer Managers may rely on this letter for any purpose; (ii) this letter may not be cited or quoted in any financial statement, prospectus, tender offer statement, proxy or information statement or other similar document; (iii) this letter may not be cited or quoted in any other document or communication which might encourage reliance upon this letter by any person or for any purpose excluded by the restrictions in this paragraph; and (iv) copies of this letter may not be furnished to anyone for purposes of encouraging such reliance.

Very truly yours,

Martin I. Darvick

E-1-4

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007638