**EXHIBIT E-2**

OPINION OF INTERNAL COUNSEL OF THE COMPANY

To be delivered on the Closing Date

Morgan Stanley & Co. Incorporated
1585 Broadway
New York, New York 10036

Banc of America Securities, LLC
The Hearst Building
214 North Tryon Street
17th Floor
Charlotte, North Carolina 28255

Barclays Capital Inc.
745 Seventh Avenue
New York, New York 10019

Deutsche Bank Securities Inc.
60 Wall Street
New York, New York 10005

Citigroup Global Markets Inc.
390 Greenwich Street
New York, New York 10013

J.P. Morgan Securities Inc.
270 Park Avenue
New York, New York 10017

UBS Securities LLC
677 Washington Boulevard
Stamford, CT 06901

Wachovia Capital Markets, LLC
One Wachovia Center
301 South College Street
Charlotte, NC 28288-0737

Ladies and Gentlemen:

I am issuing this letter in my capacity as a member of the Legal Staff of General Motors Corporation (the "Company") in response to the requirement in Section 14(e) of the

E-2-1

Dealer Managers Agreement dated April 26, 2009 (the "Agreement") by and among the Company and Morgan Stanley & Co. Incorporated, Banc of America Securities LLC, Barclays Capital Inc., Deutsche Bank Securities Inc., Citigroup Global Markets Inc., J.P. Morgan Securities Inc., UBS Securities LLC and Wachovia Capital Markets, LLC (the "Dealer Managers"). Capitalized terms used, but not defined, herein shall have the meanings ascribed to them by the Agreement. The Agreement relates to the offers to exchange (the "Offers") certain notes of the Company and General Motors Nova Scotia (collectively, the "Old Notes") for the Exchange Consideration.

In connection with the preparation of this letter, I have (among other things) read the Agreement, the Registration Statement, the Prospectus, the Prospectus, the resolutions of the Board of Directors of the Company, the Restated Certificate of Incorporation and By-Laws of the Company and copies of all certificates and other documents delivered today in connection with the consummation of the Exchange Offers.

In addition, I have examined and relied on the originals or copies certified or otherwise identified to my satisfaction of all such corporate records of the Company and such other instruments and certificates of public officials, officers and representatives of the Company and such other persons, and I have made such investigations of law as I have deemed appropriate as a basis for the opinions expressed below. I have assumed that there has been no relevant change or development between the dates as of which the information cited in the preceding sentence was given and the date of this letter and that the information upon which I have relied is accurate and does not omit disclosures necessary to prevent such information from being misleading.

Subject to the assumptions, qualifications and limitations which are identified in this letter, I advise you that:

(i) The Company is validly existing as a corporation and in good standing under the laws of the State of Delaware.

(ii) The Company has the corporate power and corporate authority to execute and deliver the Transaction Documents and perform its obligations thereunder.

(iii) The Company has taken all corporate action necessary to authorize the making of the Exchange Offers and the Solicitations.

(iv) The Transaction Documents have been duly authorized by the Company

(v) The authorized, issued and outstanding capital stock of the Company conforms in all material respects as to legal matters to the description thereof contained in the Prospectus.

(vi) The execution and delivery by the Company of the Transaction Documents and the consummation by the Company of the transactions contemplated thereby, including the Exchange Offers and Solicitations, will not violate or conflict with, or result in any contravention of, any Applicable Order.

E-2-2

"Applicable Orders" means those judgments, orders or decrees identified on Schedule I to this opinion.

I have assumed for purposes of this letter the following: each document I have reviewed for purposes of this letter is accurate and complete, each such document that is an original is authentic, each such document that is a copy conforms to an authentic original and all signatures on each such document are genuine; that the Agreement and every other agreement I have examined for purposes of this letter constitutes a valid and binding obligation of each party to that document and that each such party has satisfied all legal requirements that are applicable to such party to the extent necessary to entitle such party to enforce such agreement in accordance with such agreement's terms (except that I make no such assumption with respect to the Company); and that you have acted in good faith and without notice of any fact which has caused you to reach any conclusion contrary to any of the conclusions provided in this letter.

In preparing this letter I have relied without independent verification upon the following: (i) information contained in certificates obtained from governmental authorities; (ii) factual information represented to be true in the Agreement and other documents specifically identified at the beginning of this letter as having been read by me; (iii) factual information provided to me by the other representatives of the Company; and (iv) factual information I have obtained from such other sources as I have deemed reasonable. I have assumed that the information upon which I have relied is accurate and does not omit disclosures necessary to prevent such information from being misleading. For purposes of numbered paragraph (i), I have relied exclusively upon a certificate issued by a governmental authority in the relevant jurisdiction and such opinion is not intended to provide any conclusion or assurance beyond that conveyed by such certificate. I have not undertaken any investigation or search of court records for purposes of this letter.

I confirm that I do not have knowledge that has caused me to conclude that my reliance and assumptions cited in the two immediately preceding paragraphs are unwarranted. Whenever this letter provides advice about (or based upon) my knowledge or awareness of any particular information such advice is based entirely on my conscious awareness at the time this letter is delivered on the date it bears.

I am a member of the Bar of the State of New York and my advice on every legal issue addressed in this letter is based exclusively on the General Corporation Law of the State of Delaware, the laws of the State of New York or the federal law of the United States. I express no opinion with respect to any state securities or "blue sky" laws or regulations, any foreign laws, statutes, governmental rules or regulations or any laws, statutes governmental rules or regulations which in my experience are not applicable generally to transactions of the kind covered by the Agreement.

My advice on each legal issue addressed in this letter represents my opinion as to how that issue would be resolved were it to be considered by the highest court of the jurisdiction upon whose law my opinion on that issue is based. The manner in which any particular issue would be treated in any actual court case would depend in part on facts and circumstances particular to the case, and this letter is not intended to guarantee the outcome of any legal dispute which may arise in the future.

E-2-3

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

This letter speaks as of the time of its delivery on the date it bears. I do not assume any obligation to provide you with any subsequent opinion or advice by reason of any fact about which I did not have knowledge at that time, by reason of any change subsequent to that time in any law, other governmental requirement or interpretation thereof covered by any of my opinions or advice, or for any other reason.

This letter may be relied upon by the Dealer Managers only for the purpose served by the provision in the Agreement cited in the initial paragraph of this letter in response to which it has been delivered. Without my written consent: (i) no person other than the Dealer Managers may rely on this letter for any purpose; (ii) this letter may not be cited or quoted in any financial statement, prospectus, tender offer statement, proxy or information statement or other similar document; (iii) this letter may not be cited or quoted in any other document or communication which might encourage reliance upon this letter by any person or for any purpose excluded by the restrictions in this paragraph; and (iv) copies of this letter may not be furnished to anyone for purposes of encouraging such reliance.

Very truly yours,

Martin I. Darvick

E-2-4

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007642

Exhibit 3.2

CERTIFICATE OF AMENDMENT
TO THE RESTATED CERTIFICATE OF INCORPORATION OF
GENERAL MOTORS CORPORATION

Pursuant to Section 242 of the General Corporation Law
of the State of Delaware

GENERAL MOTORS CORPORATION, a corporation organized and existing under and by virtue of the provisions of the General Corporation Law of the State of Delaware (the "Company"), does hereby certify as follows:

FIRST: Effective as of [●] [a.m./p.m. Delaware time] on [●], 2009, the first sentence of Article FOURTH of the Restated Certificate of Incorporation of the Company is hereby amended and restated to read in its entirety as follows:

The total authorized capital stock of the Corporation is as follows: 62,106,000,000 shares, of which 6,000,000 shares shall be Preferred Stock, without par value ("Preferred Stock"), 100,000,000 shares shall be Preference Stock, $0.10 par value ("Preference Stock"), and 62,000,000,000 shares shall be Common Stock, $0.01 par value ("Common Stock").

SECOND: Effective as of [●] [a.m./p.m. Delaware time] on [●], 2009, Article FOURTH of the Restated Certificate of Incorporation of the Company is hereby amended by inserting the following paragraph immediately after the first sentence of Article FOURTH:

At [●] [a.m./p.m. Delaware time] on [●], 2009 (the "Split Effective Time"), each 100 shares of the Common Stock issued and outstanding immediately prior to the Split Effective Time shall automatically be combined into one validly issued, fully paid and non-assessable share of Common Stock, without any action by the holder thereof, subject to the treatment of fractional interests as described below (the "Reverse Stock Split"). No certificates representing fractional shares of Common Stock shall be issued in connection with the Reverse Stock Split. Stockholders who otherwise would be entitled to receive fractional share interests of Common Stock in connection with the Reverse Stock Split shall, with respect to such fractional interest, be entitled to receive cash, without interest, in lieu of fractional shares of Common Stock, upon the submission of a transmittal letter by a stockholder holding the shares in book-entry form and, where shares are held in certificated form, upon the surrender of the stockholder's Old Certificates (as defined below), in an amount equal to the proceeds attributable to the sale of such fractional shares following the aggregation and sale by the Corporation's transfer agent of all fractional shares otherwise issuable. Each certificate that prior to the Split Effective Time represented shares of Common Stock ("Old Certificates"), shall thereafter represent that number of shares of Common Stock into which the shares of Common Stock represented by the Old Certificate shall have been combined, subject to the elimination of fractional share interests as described above.

THIRD: The foregoing amendments were duly adopted in accordance with the provisions of Sections 242 and 228 (by the written consent of the stockholders of the Company) of the General Corporation Law of the State of Delaware.

IN WITNESS WHEREOF, the Company has caused this Certificate of Amendment to be duly executed in its corporate name as of the [●] day of [●], 2009.

GENERAL MOTORS CORPORATION

By: _____
Name:
Title:

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007643



Exhibit 3.4

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007644

**GENERAL MOTORS CORPORATION**

The following abbreviations, when used in the inscription on the face of this certificate, shall be construed as though they were written out in full according to applicable laws or regulations:

| TEN COM | — as tenants in common | UNIF GIFT MIN ACT — ............ Custodian ............ |
| TEN ENT | — as tenants by the entireties | (Cust)          (Minor) |
| JT TEN | — as joint tenants with right of survivorship and not as tenants in common | under Uniform Gifts to Minors Act ............ (State) |

Additional abbreviations may also be used though not in the above list.

THE CORPORATION WILL FURN SH WITHOUT CHARGE TO EACH STOCKHOLDER WHO SO REQUESTS A STATEMENT OF THE RIGHTS, PRIVILEGES, RESTRICTIONS, VOTING POWERS, LIMITATIONS AND QUALIFICATIONS OF THE SEVERAL CLASSES OF STOCK OF THE CORPORATION. REQUESTS MAY BE DIRECTED TO THE CORPORATION OR THE TRANSFER AGENT.

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY SELLS, ASSIGNS AND TRANSFERS THE SHARES OF THE CAPITAL STOCK REPRESENTED BY THE WITHIN CERTIFICATE, AS FOLLOWS:

AND HEREBY IRREVOCABLY CONSTITUTES AND APPOINTS

........................................ ATTORNEY

TO TRANSFER THE SAID STOCK ON THE BOOKS OF THE WITHIN NAMED CORPORATION WITH FULL POWER OF SUBSTITUTION IN THE PREMISES.

DATED ........................

NOTICE: ............................................................

SIGNATURE(S) GUARANTEED: ............................................................

| AMERICAN BANK NOTE COMPANY | GENERAL MOTORS CORPORATION |
| ... | TRB 321/16 RK |
| | NEW |

PLEASE INITIAL THE APPROPRIATE SELECTION FOR EITHER    OK AS IS    OK WITH CHANGES    MAKE CHANGES AND SEND ANOTHER PROOF

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007645

Exhibit 4.7

## GENERAL MOTORS CORPORATION

### and

### WILMINGTON TRUST COMPANY as

#### Trustee

#### SUPPLEMENTAL INDENTURE

#### Dated as of August 13, 2007

SUPPLEMENTAL INDENTURE, dated as of August 13, 2007, between GENERAL MOTORS CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (the "Company"), and WILMINGTON TRUST COMPANY, a banking corporation duly organized and existing under the laws of the State of Delaware (the "Trustee"). The term "Trustee" shall include any successor trustee appointed pursuant to Article Seven of the Indenture (as defined below).

### WITNESSETH:

WHEREAS, the Company and the Citibank, N.A., as predecessor to the Trustee, have heretofore executed and delivered the Indenture, dated as of December 7, 1995 (the "Indenture"), providing for the issuance from time to time of one or more series of debt securities evidencing unsecured indebtedness of the Company, the First Supplemental Indenture, dated as of March 4, 2002, the Second Supplemental Indenture, dated as of November 5, 2004, the Third Supplemental Indenture, dated as of November 5, 2004 and the Fourth Supplemental Indenture, dated as November 5, 2004. Terms used in this Supplemental Indenture that are defined in the Indenture shall have the meanings assigned to them in the Indenture.

WHEREAS, Appendix A hereto identifies approximately $12.46 billion in U.S. dollar denominated non-convertible debt Securities, represented by 13 series of Securities, issued and outstanding under the Indenture.

WHEREAS, each series of Securities identified on Appendix A hereto was issued in the form of Global Securities (collectively, the "Global Notes").

WHEREAS, each of the Global Notes is subject to the Indenture and all indentures supplemental thereto, each Global Note containing a paragraph as follows:

"This Global Bond is one of a duly authorized issue of debentures, notes, bonds or other evidences of indebtedness of the Company (hereinafter called the "Securities") of the series hereinafter specified, all issued or to be issued under and pursuant to an indenture dated as of December 7, 1995 (herein called the "Indenture"), duly executed and delivered by the Company to Citibank, N.A. (herein called the "Trustee") to which Indenture and all indentures supplemental thereto reference is hereby made for a description of the rights, limitations of rights, obligations, duties and immunities thereunder of the Trustee, the Company and the holders of the Securities;"

WHEREAS, certain provisions of the Indenture are described in each of the Global Notes.

WHEREAS, the first sentence of the fourth paragraph of each of the Global Notes contains a description of the vote of Holders required by Section 10.02 of the Indenture to enter into certain supplemental indentures, the text of which, up to the first semi-colon, is as follows:

"The Indenture contains provisions permitting the Company and the Trustee, with the consent of the Holders of not less than 66 $^{2}/_{3}$% in aggregate principal amount of the Securities at the time Outstanding (as defined in the Indenture) of all series to be affected (voting as one class), evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or changing in any manner or eliminating any of the provisions of the Indenture or of any supplemental indenture or modifying any manner the rights of the Holders of the Securities of each such series;"

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

WHEREAS, the Global Notes incorrectly summarize Section 10.02 of the Indenture with respect to the percentage in aggregate principal amount of Securities outstanding required to execute such supplemental indentures, the Indenture expressly providing for approval by a majority rather than 66 $^2/_3$% in aggregate principal mount of Securities outstanding, the text of the first paragraph of Section 10.02, up to the first semi-colon, being as follows:

"With the consent (evidenced as provided in Section 8.01) of the Holders of not less than a majority in the aggregate principal amount of the Securities of all series at the time outstanding affected by such supplemental indenture (voting as one class), the Corporation, when authorized by a Board Resolution, and the Trustee may from time to time and at any time enter into an indenture or indentures supplemental hereto for the purpose of adding any provisions to or changing in any manner or eliminating any of the provisions of this Indenture or of any supplemental indentures or modifying in any manner the rights of the Holders of the Securities of each such series or any Coupons appertaining to such Securities;"

WHEREAS, the Company desires to correct this description of the Indenture in the Global Notes.

WHEREAS, the Trustee, pursuant to Section 10.01 of the Indenture, is authorized to join with the Company in the execution of any supplemental indenture made pursuant thereto and to make any further appropriate agreements and stipulations which may be contained therein, which section provides that the Company may enter into a supplemental indenture:

"to cure any ambiguity or to correct or supplement any provision contained herein or in any supplemental indenture which may be defective or inconsistent with any other provision contained herein or in any supplemental indenture; to convey, transfer, assign, mortgage or pledge any property to or with the Trustee; or to make such other provisions in regard to matters or questions arising under this Indenture as shall not adversely affect the interests of the Holders of any series of Securities or any Coupons appertaining to such Securities;"

NOW, THEREFORE, in furtherance of the premises herein, the Company and the Trustee hereby stipulate as follows:

Section 1. The first sentence of the fourth paragraph of each of the Global Notes (or other applicable portion) shall be and hereby is amended, without any further action on the part of the Company, the Trustee or the Holder of any Global Note, by deleting the phrase "66 $^2/_3$%" contained therein and replacing it with the phrase "a majority," so that the paragraph, up to the first semi-colon, shall read as follows:

"The Indenture contains provisions permitting the Company and the Trustee, with the consent of the Holders of not less than a majority in aggregate principal amount of the Securities at the time Outstanding (as defined in the Indenture) of all series to be affected (voting as one class), evidenced as in the Indenture provided, to execute supplemental indentures adding any provisions to or changing in any manner or eliminating any of the provisions of the Indenture or of any supplemental indenture or modifying in any manner the rights of the Holders of the Securities of each such series;"

Section 2. Recitals. The recitals contained herein shall be taken as the statements of the Company and the Trustee assumes no responsibility for their correctness. The Trustee makes no representation as to the validity or sufficiency of this Supplemental Indenture.

Section 3. Counterparts. This Supplemental Indenture may be executed in any number of counterparts, each of which shall be an original; but such counterparts shall together constitute but one and the same instrument.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

Section 4. New York Contract. This Supplemental Indenture shall be deemed to be a contract made under the law of the State of New York, and for all purposes shall be governed by and construed in accordance with the laws of the said State, regardless of the laws that might otherwise govern under applicable New York principles of conflicts of law and except as may otherwise be required by mandatory provisions of law. Any claims or proceedings in respect of this Supplemental Indenture shall be heard in a federal or state court located in the State of New York.

\* \* \* \* \*

IN WITNESS WHEREOF, the parties hereto have caused this Supplemental Indenture to be duly executed.

**GENERAL MOTORS CORPORATION**

By:   /s/ Walter Borst
Name:
Title:

**WILMINGTON TRUST COMPANY,**
**not in its individual capacity but solely as Trustee**

By:   /s/ Geoffrey J. Lewis
Name: Geoffrey J. Lewis
Title:   Financial Services Officer

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

## Appendix A

6 $^3/8$% Notes due May 1, 2008

7.20% Notes due January 15, 2011

7.125% Senior Notes due July 15, 2013

7.70% Debentures due April 15, 2016

8. 250% Debentures due July 15, 2023

8.10% Debentures due June 15, 2024

6 $^3/4$% Debentures due May 1, 2028

8.375% Debentures due July 15, 2033

7.375% Senior Notes due May 15, 2048

7.25% Quarterly Interest Bonds due April 15, 2041

7.50% Senior Notes due July 1, 2044

7.375% Senior Notes due May 23, 2048

7.25% Senior Notes due February 15, 2052

-A-1-

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007649

Exhibit 4.8

## FISCAL AND PAYING AGENCY AGREEMENT

among

### General Motors Corporation,

and

### Deutsche Bank AG London

and

### Banque Générale du Luxembourg S.A.

Dated as of July 3, 2003

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007650

## FISCAL AND PAYING AGENCY AGREEMENT

**THIS FISCAL AND PAYING AGENCY AGREEMENT** is made the 3rd day of July 2003, among:

(1)    General Motors Corporation of 300 Renaissance Center, Detroit, Michigan 48265-3000 (the "Company");

(2)    Deutsche Bank AG London. (the "Fiscal Agent") of Winchester House, 1 Great Winchester Street, London EC2N 2DB, England (which expression shall include any successor fiscal agent appointed in accordance with Clause 18);

(3)    Banque Générale du Luxembourg S.A. of 50 Avenue J.F. Kennedy, L-2951 Luxembourg (together with the Fiscal Agent, the "Paying Agents," which expression shall include any additional or successor Paying Agent appointed in accordance with Clause 20).

**IT IS HEREBY AGREED** as follows:

1.    Definitions and Interpretation

(a) In this Agreement, unless there is something in the subject or context inconsistent therewith the expressions used herein shall have the same meanings as in the Subscription Agreement.

(b) The following expressions shall have the following meanings:

"Month" means calendar month;

"outstanding" means in relation to the Notes, all the Notes issued other than (i) those which have been redeemed in full in accordance with the Conditions, (ii) those in respect of which the date for redemption in accordance with the Conditions has occurred and the redemption moneys therefor (including all interest accrued thereon to the date for such redemption) have been duly paid to the Fiscal Agent as provided in this Agreement (and, where appropriate, notice has been given to the Noteholders in accordance with Condition 12) and remain available for payment against presentation of Notes, (iii) those which have become void under Condition 15, (iv) those which have been purchased and cancelled as provided in Condition 5, (v) those mutilated or defaced Notes which have been surrendered in exchange for replacement Notes pursuant to Condition 13, (vi) (for the purpose only of determining how many Notes are outstanding and without prejudice to their status for any other purpose) those Notes alleged to have been lost, stolen or destroyed and in respect of which replacement Notes have been issued pursuant to Condition 13, (vii) Temporary Global Notes to the extent that they shall have been duly exchanged for Permanent Global Notes and Permanent Global Notes to the extent that they shall have been duly exchanged for Definitive Notes, in each case pursuant to their respective provisions and (viii) Temporary Global Notes and Permanent Global Notes which have become void in accordance with their terms and, provided that for the purpose of the right to attend and vote at any meeting of the Noteholders or any of them,

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

those Notes (if any) which are for the time being held by any person (including but not limited to the Company or any Subsidiary of the Company) for the benefit of the Company or any Subsidiary of the Company shall (unless and until ceasing to be so held) be deemed not to remain outstanding;

"repay" shall include "redeem" and vice versa and "repaid," "repayable" and "repayment" and "redeemed," "redeemable" and "redemption" shall be construed accordingly; and

"Subscription Agreement" means the Subscription Agreement dated July 1, 2003 among the Company and the Managers concerning the purchase of the Notes.

(c) All references in this Agreement to principal and/or interest or both in respect of the Notes or to any moneys payable by the Company under this Agreement shall be deemed to include (a) a reference to any Additional Amounts which may be payable under Condition 6 and (b) any other amounts which may be payable in respect of the Notes.

(d) Expressions defined in the Conditions shall have the same meanings herein unless otherwise stated.

2.    Appointment of Fiscal Agent and other Paying Agents

(a) The Fiscal Agent is hereby appointed as agent of the Company, upon the terms and subject to the conditions set out below, for the purposes of:

(i) completing, authenticating and issuing Notes and the coupons;

(ii) paying sums due on Global Notes;

(iii) arranging on behalf of the Company for notices to be communicated to the Noteholders in accordance with the Conditions;

(iv) receiving notice from Euroclear and/or Clearstream relating to the certificates of Non-U.S. beneficial ownership of the Notes;

(v) determining the date of completion of distribution of the Notes represented by each Temporary Global Note, upon notification from the Managers and notifying such determination to the Company, the Managers and Euroclear and Clearstream;

(vi) ensuring that all necessary action is taken to comply with applicable periodic reporting requirements with respect to the Notes; and

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007652

(viii) otherwise fulfilling its duties and obligations as set forth in the Conditions.

(b) Each Paying Agent is hereby appointed by the Company as Paying Agent of the Company, upon the terms and subject to the conditions set out below, for the purposes of paying sums due on Notes and/or coupons.

3.    Issue of Temporary Global Notes

(a) Upon the execution and delivery of this Agreement, 2013 Notes in an aggregate outstanding principal amount not in excess of €1,000,000,000 and 2033 Notes in an aggregate outstanding principal amount not in excess of €1,500,000,000, may be executed by the Company and delivered to the Fiscal Agent for authentication, and the Fiscal Agent shall thereupon authenticate and deliver such Notes upon the written order of the Company, signed by any authorized officer of the Company without any further action by the Company. Until a Note has been authenticated it shall have no effect.

(b) The Notes initially will be issued in the form of one or more Temporary Global Notes in bearer form without coupons substantially in the form set forth in Schedule 3 Part I, hereto. The Temporary Global Notes shall be signed on behalf of the Company by any authorized officer. The Temporary Global Notes shall be authenticated by the Fiscal Agent upon the same conditions, in substantially the same manner and with the same effect as the Permanent Global Notes or Definitive Notes. The Fiscal Agent will, upon the order of the Company, deposit the Temporary Global Notes with Deutsche Bank AG London., as the common depositary (the "Common Depositary") for Euroclear Bank S.A./N.V., as operator of the Euroclear System ("Euroclear"), and Clearstream Banking, societe anonyme ("Clearstream").

4.    Issue of Permanent Global Notes

Upon the occurrence of any event which, pursuant to the terms of the Temporary Global Notes, requires the issuance of one or more Permanent Global Notes, the Temporary Global Notes may be surrendered to the Fiscal Agent at such office to be exchanged, as a whole or in part, for interests in the Permanent Global Notes substantially in the form set forth in Schedule 3 Part II hereto, in denominations of €1,000, €10,000 or €100,000 or integral multiples thereof without charge, and the Fiscal Agent shall authenticate and deliver, in exchange for such Temporary Global Note or the portions thereof to be exchanged, an equal aggregate principal amount of the Permanent Global Note, but only upon presentation to the Fiscal Agent by the Common Depository of a certificate or certificates (in substantially the form attached to the Temporary Global Note as Schedule Three) of Euroclear or Clearstream with respect to the Temporary Global Note or portions thereof being exchanged, to the effect that it has received in writing or by facsimile a certification or certifications (in substantially the form attached to the Temporary Global Note as Certificate "A") signed by the person appearing in its records as the owner of the Temporary Global Note or portions thereof being exchanged.

4

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007653

5.  Issue of Definitive Notes

Upon the occurrence of any event which, pursuant to the terms of the Permanent Global Notes, requires the issuance of one or more Definitive Note(s), the Permanent Global Note shall be surrendered to or to the order of the Fiscal Agent. In exchange for the Permanent Global Note, the Company will deliver to the relevant Holders, or procure the delivery of, in either case at its own expense, an equal aggregate principal amount of Definitive Notes substantially in the form set forth in Schedule 3 Part III hereto, in denominations of €1,000, €10,000 or €100,000 (having attached to them all Coupons in respect of interest which has not already been paid on the Permanent Global Note), printed in accordance with any applicable legal and stock exchange requirements and in or substantially in the form set out in this Agreement.

6.  Exchanges

Upon any exchange of all or a portion of an interest in a Temporary Global Note for an interest in a Permanent Global Note or upon any exchange of a Permanent Global Note for Definitive Notes, the relevant Global Note shall be endorsed to reflect the reduction of its principal amount by the aggregate principal amount so exchanged. Until exchanged in full, the holder of an interest in any Global Note shall in all respects be entitled to the same benefits under this Agreement as the holder of Notes and Coupons authenticated and delivered hereunder, subject as set out in the Conditions. The Fiscal Agent is hereby authorized on behalf of the Company (i) to endorse or to arrange for the endorsement of the relevant Global Note to reflect the reduction in the principal amount represented thereby by the amount so exchanged, and sign in the relevant space on the relevant Global Note recording such exchange and (ii) in the case of a total exchange, to cancel or arrange for the cancellation of the relevant Global Note.

7.  Payment

(a) The Company shall, on each date on which any payment in respect of any of the Notes becomes due, transfer to an account outside the United States specified by the Fiscal Agent such amount in Euros as shall be sufficient for the purposes of such payment in funds settled through such payment system as the Fiscal Agent may designate.

(b) The Company shall ensure that no later than two Business Days immediately preceding the date on which any payment is to be made to the Fiscal Agent pursuant to subclause (a) above, the Fiscal Agent shall receive a copy of an irrevocable payment instruction to the bank through which the payment is to be made. For purposes of this Agreement, "Business Day" means a day other than a Saturday or Sunday that is not (a) a day on which banks and foreign exchange markets in London, New York City and the place where such Note or Coupon, as the case may be, is presented for payment to a Paying Agent are generally authorized or obligated by law or executive order to close and (b) not a day on which the Trans-European Automated Real-Time Gross Settlement Express Transfer System ("TARGET") is closed.

5

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER
NGM000007654

(c) Subject to the Fiscal Agent or, as the case may be, the relevant other Paying Agents being satisfied in its sole discretion that payment will be duly made as provided in subclause (a) above, the Fiscal Agent and each other Paying Agent shall pay or cause to be paid on behalf of the Company the amounts of principal and interest due on the Notes in the manner provided in the Conditions. Payments on Temporary Global Notes will be made only to the extent that certification that the beneficial owners are not certain United States persons has been received by Euroclear or Clearstream. If any payment provided for in subclause (a) above is made late but otherwise in accordance with the provisions of this Agreement, the Fiscal Agent and each other Paying Agent shall nevertheless make payments in respect of the Notes as aforesaid following receipt by it of such payment from the Company.

(d) If for any reason the Fiscal Agent considers in its sole discretion (exercised in good faith) that the amounts to be received by the Fiscal Agent pursuant to subclause (a) above will be, or the amounts actually received by it pursuant thereto are, insufficient to satisfy all claims in respect of all payments then falling due on the Notes, neither the Fiscal Agent nor any other Paying Agent shall be obliged to pay any such claims until the Fiscal Agent has received the full amount of all moneys due and payable in respect of such Notes.

(e) Without prejudice to subclauses (c) and (d) above, and without any requirement to do so, if the Fiscal Agent pays any amounts to the Noteholders or to any other Paying Agent at a time when it has not received payment in full in respect of such Notes in accordance with subclause (a) above (the excess of the amounts so paid over the amounts so received being the "Shortfall"), the Company shall, in addition to paying amounts due under subclause (a) above, pay to the Fiscal Agent on demand interest at a rate determined by the Fiscal Agent to represent its cost of funding the Shortfall for the relevant period (with proof thereof if requested by the Company) (or the unreimbursed portion thereof) until the receipt in full by the Fiscal Agent of the Shortfall.

(f) The Fiscal Agent shall on demand promptly reimburse each Paying Agent for payments in respect of Notes properly made by such Paying Agent in accordance with this Agreement and the Notes unless the Fiscal Agent shall have notified such Paying Agent prior to the opening of business in the location of the office of such Paying Agent through which payment on the Notes can be made on the due date of payment under such Notes that the Fiscal Agent does not expect to receive sufficient funds to make payment of all amounts falling due in respect of such Notes.

(g) While any Notes are represented by Global Notes, all payments due in respect of such Notes shall be made to, or to the order of, the holder of the Global Notes, subject to and in accordance with the provisions of the Global Notes. On the occasion of any such payment, the Paying Agent, on behalf of the Company, to which the Global Note was presented for the purpose of making such payment shall cause the relevant Part of Schedule One to the relevant Global Note to be annotated so as to evidence the amounts and dates of such payments of principal, and/or interest as applicable.

6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007655

If the amount of principal, and/or interest then due for payment is not paid in full (otherwise than by reason of a deduction required by law to be made therefrom), the Paying Agent to which a Global Note is presented for the purpose of making such payment shall make a record of such shortfall on the relevant Part of Schedule One to the relevant Global Note and such record shall, in the absence of manifest error, be prima facie evidence that the payment in question has not to that extent been made.

8.    Notice of any Withholding or Deduction

If the Company is, in respect of any payment of principal or interest in respect of the Notes, compelled to withhold or deduct any amount for or on account of taxes, duties, assessments or governmental charges as specifically contemplated under the Conditions, the Company shall give notice thereof to the Fiscal Agent as soon as it becomes aware of the requirement to make such withholding or deduction and shall give to the Fiscal Agent such information as the Fiscal Agent shall require to enable it to comply with such requirement.

9.    Duties of the Fiscal Agent in Connection with Redemption of Notes

If the Company decides to redeem all the Notes for the time being outstanding in accordance with the Conditions, it shall give notice of such decision to the Fiscal Agent a reasonable length of time (at least 40 days) before the relevant redemption date to enable the Fiscal Agent to undertake its obligations herein and in the Conditions.

10.    Receipt and Publication of Notices

(a) Forthwith upon the receipt by the Fiscal Agent of a demand or notice from any Noteholder in accordance with Condition 8, the Fiscal Agent shall forward a copy thereof to the Company.

(b) On behalf of and at the request and expense of the Company, the Fiscal Agent shall cause to be given in accordance with the Conditions, all notices required to be given by the Company to the Noteholders under the Conditions or this Agreement.

11.    Cancellation of Notes and Coupons

(a) All Notes which are redeemed or exchanged (together with all unmatured Coupons attached thereto or delivered therewith) and all Coupons which are paid shall be cancelled by the Paying Agent by which they are paid. Each of the Paying Agents shall give to the Fiscal Agent details of all payments made by it and shall deliver all cancelled Notes and Coupons to the Fiscal Agent or as the Fiscal Agent may specify. Where Notes are purchased by or on behalf of the Company, the Company may, at its option, procure that such Notes (together with all unmatured Coupons appertaining thereto) are promptly surrendered to the Fiscal Agent or its authorized agent for cancellation.

7

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007656

(b) The Fiscal Agent shall (unless required by law or otherwise instructed by the Company in writing and save as provided in Clause 13(a) below) destroy all cancelled Notes and Coupons and, upon request, furnish the Company with a certificate of destruction containing serial numbers of the Notes and the number of Coupons so destroyed.

12.    Issue of Replacement Notes or Coupons

(a) The Company shall cause a sufficient quantity of additional forms of Notes to be available, upon request, to the Fiscal Agent at its specified office for the purpose of issuing replacement Notes or Coupons as provided below.

(b) The Fiscal Agent shall, subject to and in accordance with the Conditions and the following provisions of this Clause 12, cause to be authenticated and delivered any replacement Notes or Coupons which the Company and the Fiscal Agent may determine to issue in place of Notes or Coupons which have been lost, stolen, mutilated, defaced or destroyed.

(c) In the case of a mutilated or defaced Note, the Fiscal Agent shall ensure that (unless otherwise covered by such indemnification as the Company may require) any replacement Note only has attached to it Coupons corresponding to those attached to the mutilated or defaced Note which is presented for replacement.

(d) The Fiscal Agent shall obtain verification, in the case of an allegedly lost, stolen or destroyed Note in respect of which the serial number is known, that such Note or Coupon has not previously been redeemed or paid. The Fiscal Agent shall not issue any replacement Note or Coupon unless and until the Fiscal Agent and the Company agree that the applicant therefor has:

(i) paid such costs as may be incurred in connection therewith;

(ii) furnished it with such evidence and indemnification as the Company and the Fiscal Agent may reasonably require; and

(iii) in the case of any mutilated or defaced Note or Coupon, surrendered it to the Fiscal Agent.

(e) The Fiscal Agent shall cancel any mutilated or defaced Notes or Coupons in respect of which replacement Notes or Coupons have been issued pursuant to this Clause 12. The Fiscal Agent shall furnish the Company with a certificate stating the serial numbers of the Notes or Coupons received by it and cancelled pursuant to this Clause 12 and shall, unless otherwise required by the Company, destroy all such Notes and Coupons and furnish the Company with a destruction certificate containing the information specified in Clause 11(b) above.

8

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007657

(f) The Fiscal Agent shall, on issuing any replacement Note or Coupon, forthwith inform the Company and the Paying Agent of the serial number of such replacement Note or Coupon issued and (if known) of the serial number of the Note or Coupon in place of which such replacement Note or Coupon has been issued.

(g) Whenever any Note or Coupon for which a replacement Note or Coupon has been issued and of which the serial number is known is presented to any of the Paying Agents for payment, the relevant Paying Agent shall immediately send notice thereof to the Company and the Fiscal Agent; no payment shall be made on such cancelled Note or Coupon.

13.   Records and Certificates

(a) The Fiscal Agent shall (i) keep a full and complete record of all Notes and Coupons and of their redemption, purchase, cancellation or payment (as the case may be) and of all replacement Notes or Coupons issued in substitution for lost, stolen, mutilated, defaced or destroyed Notes or Coupons and (ii) in respect of the Coupons, retain until the expiry of five years from the Relevant Date (as defined in Condition 15) in respect of such Coupons either all paid Coupons or a list of the total number of Coupons of that maturity still remaining unpaid. The Fiscal Agent shall at all reasonable times make such records and Coupons available to the Company.

(b) A certificate stating (i) the aggregate principal amounts of Notes which have been redeemed and the aggregate amounts in respect of Coupons which have been paid, (ii) the serial numbers of such Notes, (iii) the total numbers of each denomination of such Coupons, (iv) the serial numbers of those Notes (if any) which have been purchased by or on behalf of the Company or any of its Subsidiaries and cancelled (subject to delivery thereof to the Fiscal Agent) and the total number of Coupons attached thereto or surrendered therewith and (v) the aggregate principal amounts of Notes and the aggregate amounts in respect of Coupons which have been surrendered and replaced and the serial numbers of such Notes and the total numbers by maturity date of such Coupons shall be given to the Company by the Fiscal Agent as soon as possible and in any event within three months after the date of such redemption, purchase, payment or replacement (as the case may be).

(c) The Fiscal Agent shall submit (on behalf of the Company) such reports or information as may be required from time to time by applicable law, regulations and guidelines in connection with this Agreement.

9

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007658

14.  Copies of this Agreement Available for Inspection

(a) The Fiscal Agent and the Paying Agents shall hold copies of this Agreement available for inspection by Noteholders and Couponholders. For this purpose, the Company shall furnish the Fiscal Agent and the Paying Agents with sufficient copies of this Agreement.

15.  Fees and Expenses

(a) The Fiscal Agent shall be entitled to the compensation to be agreed upon with the Company for all services rendered by it, and the Company agrees to pay such compensation promptly and to reimburse the Fiscal Agent and the Paying Agents for reasonable out of pocket expenses (including reasonable fees and expenses of counsel pursuant to Clause 18(b) below) reasonably incurred by either of them in connection with the services rendered by them hereunder.

(b) The Company shall pay to the Fiscal Agent such fees in respect of the services of the Paying Agents under this Agreement as shall be agreed between the Company and the Fiscal Agent. The Company shall not be concerned with the apportionment of payment among the Paying Agents.

(c) In respect of the said fees the Company shall also pay to the Fiscal Agent such sum as is appropriate in respect of value added tax together with all reasonable expenses (including, inter alia, postage expenses) reasonably incurred by the Paying Agents in connection with their said services.

(d) The fees under subclause (b) above shall be paid in U.S. Dollars. The Fiscal Agent shall arrange for payment of the fees due to the Paying Agents and arrange for the reimbursement of their expenses promptly after receipt of the relevant moneys from the Company.

(e) At the request of the Fiscal Agent, the parties hereto may from time to time during the continuance of this Agreement review the fees agreed initially pursuant to subclause (b) above with a view to determining whether the parties hereto can mutually agree upon changes therein.

16.  Indemnification

(a) The Company shall indemnify and keep indemnified each of the Paying Agents and the Fiscal Agent against any losses, liabilities, costs, claims (or actions in respect thereof) and reasonable expenses (including reasonable legal fees) which it may incur or which may be made against it as a result of or in connection with its appointment or the exercise of its powers and duties under this Agreement except such as may result from its own willful default, negligence or bad faith or that of its officers or employees or any of them, or breach by it of the terms of this Agreement. The obligations of the Company under this Clause (a) shall survive the payment of the Notes and the resignation or removal of the Fiscal Agent or any Paying Agent, as the case may be.

10

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

(b) Each of the Paying Agents and the Fiscal Agent shall severally indemnify the Company against any losses, liabilities, costs, claims (or actions in respect thereof) and reasonable expenses (including reasonable legal fees) which the Company may incur or which may be made against the Company as a result of the willful default, negligence or bad faith of that Paying Agent or Fiscal Agent or that of its officers or employees or any of them, or breach by it of the terms of this Agreement.

17.   Repayment by Fiscal Agent

Any monies paid by the Company to the Fiscal Agent or any Paying Agent for payment in respect of any of the Notes or Coupons and remaining unclaimed for two years after the date on which such amounts shall have become due and payable shall then be repaid to the Company and, upon such payment, all liability of the Fiscal Agent or any Paying Agent with respect to such monies shall cease, without, however, relieving the Company of the obligation to pay the amounts in respect of any such Note or Coupon upon the due subsequent presentation thereof to the Company at its registered office until such Notes or Coupons become void. Notes will become void unless presented for payment within periods of ten years and five years, respectively, from the due date for payment thereof, in accordance with the Conditions.

18.   Conditions of Appointment

The Fiscal Agent and each of the Paying Agents accept their obligations set forth herein and in the Notes upon the terms and conditions hereof and thereof, including the following, to all of which the Company agree and to all of which the rights of the holders from time to time of the Notes and Coupons shall be subject:

(a) In acting under this Agreement and in connection with the Notes and Coupons, the Fiscal Agent and the Paying Agents are acting solely as agents of the Company and do not assume any obligation towards or relationship of agency or trust for or with any of the beneficial owners or holders of the Notes and Coupons except that all funds held by the Paying Agents for a payment in respect of the Notes and Coupons shall be held in trust by them and applied as set forth herein and in such Notes, but need not be segregated from other funds held by them, except as required by law; provided that monies paid by the Company to the Paying Agents for payment in respect of any of the Notes and Coupons and remaining unclaimed for two years after the date on which such payment shall have become due and payable shall be repaid to the Company as provided and in the manner set forth in Clause 17 hereof, whereupon the aforesaid trust shall terminate and liability of the Paying Agents to the Company with respect to such monies shall cease.

(b) Each of the Fiscal Agent and the Paying Agents may consult at its own expense (unless the Company has agreed in writing as to the need for such consultation and as to the counsel to be consulted) with counsel satisfactory to it (who may be an employee of or legal advisor to the Company) in its reasonable

11

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

judgment and any advice or written opinion of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted to be taken by any of them hereunder in good faith and in accordance with such advice or opinion.

(c) The Fiscal Agent and the Paying Agents shall be protected and shall incur no liability for or in respect of any action taken or omitted to be taken or being suffered by it in reliance upon any Note, instrument of transfer, notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been presented or signed by the proper party or parties.

(d) Each of the Paying Agents or any agent of the Company or of the Paying Agent, if it is not a United States person as defined in this Agreement or if it is the foreign branch of a U.S. financial institution as defined in U.S. Treasury Regulations Section 1.163-5(c)(2)(i)(D)(6), in its individual capacity or any other capacity, may become the owner of, or acquire any interest in, any Notes or other obligations of the Company with the same rights that it would have if it were not a Paying Agent or any agent of the Company or of the Paying Agent, and each Paying Agent may engage or be interested in any financial or other transaction with the Company, and may act on, or as depositary, trustee or Manager for, any committee or body of holders of Notes or other obligations of the Company, as freely as if it were not a Paying Agent or any agent of the Company or of the Paying Agent.

(e) None of the Fiscal Agent or the Paying Agents shall be under any liability for interest on any monies received by it pursuant to any of the provisions of this Agreement or the Notes except as otherwise agreed with the Company in writing.

(f) The recitals contained in this Agreement and in the Notes or Coupons (except in the Fiscal Agent's certificate of authentication) shall be taken as the statements of the Company, and neither the Fiscal Agent nor any Paying Agent assumes any responsibility for the correctness of the same. Neither the Fiscal Agent nor any Paying Agent makes any representation as to the validity or sufficiency of this Agreement or the Notes, except for their due authorization to execute and perform their obligations under this Agreement. Neither the Fiscal Agent nor any Paying Agent shall be accountable for the use or application by the Company of any of the Notes or by the Company of the proceeds of any Notes.

(g) The Fiscal Agent and the Paying Agents shall be obligated to perform such duties and only such duties as are herein and in the Notes specifically set forth, and no implied duties or obligations shall be read into this Agreement or the Conditions against the Fiscal Agent or any Paying Agent. Neither the Fiscal Agent nor any Paying Agent shall be under any obligation to take any action hereunder which may tend to involve it in any expense or liability, the payment of which within a reasonable time is not, in its reasonable opinion, assured to it.

12

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

(h) The Company shall provide the Fiscal Agent and each other Paying Agent with a copy of the certified list of persons authorized to take action on behalf of the Company in connection with this Agreement (as referred to in paragraph 3 of Appendix A to the Subscription Agreement) and shall notify the Fiscal Agent and each Paying Agent immediately in writing if any of such persons ceases to be so authorized or if any additional person becomes so authorized together, in the case of an additional authorized person, with evidence satisfactory to the Fiscal Agent that such person has been so authorized.

(i) No Paying Agent shall exercise any right of set off or lien against the Company or any Noteholders or Couponholders in respect of any monies payable to or by it under the terms of this Agreement.

(j) To the extent permitted by law, each of the Paying Agents shall be entitled to treat the bearer of any Note or Coupon as the absolute owner thereof (notwithstanding any notice to the contrary and whether or not such Note or Coupon shall be overdue and notwithstanding any notation of ownership or writing thereon or notice of previous loss or theft thereof) for all purposes subject, in relation to any Global Note, as provided in the Conditions.

(k) Each of the Company, the Fiscal Agent and the Paying Agents agree that this Agreement will, subject to the other provisions herein, continue in full force and effect for so long as any of the Notes are outstanding.

19.  Communications with Paying Agents

A copy of all communications relating to the subject matter of this Agreement between the Company and any of the Paying Agents other than the Fiscal Agent shall be sent to the Fiscal Agent.

20.  Termination of Appointment

(a) The Company may terminate the appointment of the Fiscal Agent or any Paying Agent at any time and/or appoint additional or other Paying Agents by giving to the Fiscal Agent or the Paying Agent whose appointment is concerned and, in the case of any Paying Agent other than the Fiscal Agent, the Fiscal Agent at least 60 days' prior written notice to that effect, provided that, so long as any of the Notes are outstanding, (i) such notice shall not expire less than 30 days before any due date for the payment of any Note or Coupon and (ii) notice shall be given in accordance with the Conditions at least 30 days prior to any removal or appointment of the Fiscal Agent or any Paying Agent.

(b) Notwithstanding the provisions of subclause (a) above, if at any time the Fiscal Agent or any Paying Agent becomes incapable of acting, or is adjudged bankrupt or insolvent, or files a voluntary petition in bankruptcy or

13

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER
NGM000007662

makes an assignment for the benefit of its creditors or consents to the appointment of an administrator, liquidator or administrative or other receiver of all or any substantial part of its property, or if an administrator, liquidator or administrative or other receiver of it or of all or a substantial part of its property is appointed, or it admits in writing its inability to pay or meet its debts as they may mature or suspends payment thereof, or if any order of any court is entered approving any petition filed by or against it under the provisions of any applicable bankruptcy or insolvency law or if any public officer takes charge or control of such Fiscal Agent or Paying Agent or of its property or affairs for the purpose of rehabilitation, administration or liquidation, the Company may forthwith without notice terminate the appointment of such Fiscal Agent or Paying Agent, as the case may be, in which event notice thereof shall be given to the Noteholders and the Couponholders in accordance with the Conditions as soon as practicable thereafter.

(c) The termination of the appointment of the Fiscal Agent or any Paying Agent hereunder shall not entitle such Fiscal Agent or Paying Agent to any amount by way of compensation but shall be without prejudice to any amount then accrued due.

(d) The Fiscal Agent or all or any of the Paying Agents may resign their respective appointments hereunder at any time by giving to the Company and (except in the case of resignation of the Fiscal Agent) the Fiscal Agent at least 60 days' prior written notice to that effect. Following receipt of a notice of resignation from the Fiscal Agent or any Paying Agent, the Company shall promptly, but no later than 10 days prior to the expiration of any resignation of the Fiscal or Paying Agent; give notice thereof to the Noteholders and the Couponholders in accordance with the Conditions. The Fiscal Agent and Paying Agent may appoint a replacement Fiscal Agent on behalf of the Company, if the Company has not already done so.

(e) Notwithstanding the provisions of subclauses (a), (b), (c) and (d) above, so long as any of the Notes are outstanding, the termination of the appointment of any Paying Agent (whether by the Company or by the resignation of such Paying Agent) shall not be effective unless upon the expiry of the relevant notice there is (i) a Fiscal Agent and (ii) at least one Paying Agent with a specified office in a European city which, so long as the Notes are listed on the Luxembourg Stock Exchange and the rules of the Luxembourg Stock Exchange so require, shall be Luxembourg.

(f) Any successor Fiscal Agent or Paying Agent appointed hereunder shall execute and deliver to its predecessor, the Company any (unless its predecessor is the Fiscal Agent) the Fiscal Agent, an instrument accepting such appointment hereunder, and thereupon such successor Fiscal Agent or Paying Agent, without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, trusts, immunities, duties and obligations of such predecessor with like effect as if originally named as Fiscal Agent or a Paying Agent under this Agreement.

14

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007663

(g) If the appointment of the Fiscal Agent or any Paying Agent hereunder is terminated (whether by the Company or by the resignation of such Fiscal Agent or Paying Agent), such Fiscal Agent or Paying Agent shall on the date on which such termination takes effect deliver to the Fiscal Agent or the successor Fiscal Agent all Notes and Coupons surrendered to it but not yet destroyed and shall deliver to such successor Paying Agent (or if none, the Fiscal Agent) all records concerning the Notes and Coupons maintained by it (except such documents and records as it is obliged by law or regulation to retain or not to release) and pay to its successor Fiscal Agent or Paying Agent (or, if none, to the Fiscal Agent) the amounts held by it in respect of Notes or Coupons which have become due and payable but which have not been presented for payment, but shall have no other duties or responsibilities under this Agreement.

(h) If the Fiscal Agent or any of the Paying Agent changes its specified office, it shall give to the Company and the Fiscal Agent (if applicable), not less than 45 days' written notice to that effect giving the address of the new specified office. As soon as practicable thereafter and in any event at least 30 days prior to such change, the Fiscal Agent shall give to the Noteholders notice of such change and the address of the new specified office in accordance with the Conditions. The Company reserves the right to approve any change in the specified office of any Paying Agent.

(i) Any corporation into which the Fiscal Agent or any Paying Agent for the time being may be merged or converted or any corporation with which the Fiscal Agent or Paying Agent may be consolidated or any corporation resulting from any merger, conversion or consolidation to which such Fiscal Agent or Paying Agent shall be a party shall, to the extent permitted by applicable law, be the successor Fiscal Agent or Paying Agent under this Agreement without the execution or filing of any paper or any further act on the part of any of the parties hereto. Notice of any such merger, conversion or consolidation shall forthwith be given to the Company and, where appropriate, the Fiscal Agent.

21.    Meetings of Noteholders

(a) The provisions of Schedule 4 hereto shall apply to meetings of the Noteholders and shall have effect in the same manner as if set out in this Agreement.

(b) Without prejudice to subclause (a) above, each of the Paying Agents shall, on the request of any Noteholder, issue voting certificates and block voting instructions together, if so required by the Company, with reasonable proof satisfactory to the Company of due execution thereof on behalf of such Paying Agent in accordance with the provisions of Schedule 4 hereto and shall forthwith give notice to the Company in accordance with the said Schedule 4 of any

15

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

revocation or amendment of a voting certificate or block voting instruction. Each Paying Agent shall keep a full and complete record of all voting certificates and block voting instructions issued by it and shall not later than 24 hours before the time appointed for holding any meeting or adjourned meeting deposit, at such place as the Fiscal Agent shall designate or approve, full particulars of all voting certificates and block voting instructions issued by it in respect of such meeting or adjourned meeting.

22. Communications

All communications shall be by facsimile or letter delivered by hand or (but only where specifically provided in the Appendix hereto) by telephone. Each communication shall be made to the relevant party at the facsimile number or address or telephone number and, in the case of a communication by facsimile or letter, marked for the attention of, or (in the case of a communication by telephone) made to, the person(s) from time to time specified in writing by that party to the other for the purpose. The initial telephone number, facsimile number and address of, and person(s) so specified by, each party are set out on the signature pages of this Agreement.

A communication shall be deemed received, (if by facsimile) when an acknowledgment of receipt is received, (if by telephone) when made or (if by letter) when delivered, in each case in the manner required by this Clause 22 provided, however, that if a communication is received after business hours it shall be deemed to be received and become effective on the next Business Day. Every communication shall be irrevocable save in respect of any manifest error therein.

23. Taxes

The Company will pay all stamp or other documentary taxes or duties, if any, to which the execution or delivery of this Agreement or the original issuance of the Notes or Coupons may be subject as a result of compliance with the terms of the Subscription Agreement.

24. Descriptive Headings

The descriptive headings in this Agreement are for convenience of reference only and shall not define or limit the provisions hereof.

25. Amendments

This Agreement, the Notes and the Coupons may be amended by the Company and the Fiscal Agent, without the consent of the Noteholders or the Couponholders so as to modify any of the provisions of this Agreement, the Notes and the Coupons which are of a formal, minor or technical nature in the opinion of the Company or to add any covenant, restriction, condition or provision as the Company shall consider to be for the protection of the Noteholders or is made for the purpose of curing any ambiguity, or correcting or supplementing any provision contained herein or therein which may be defective or inconsistent with any other provision contained herein or therein, or to make

16

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007665

such other provisions in regard to matters or questions arising under this Agreement as shall not adversely affect the interests of the holders of the Notes or Coupons. Any such modification shall be binding on all the Noteholders and the Couponholders, and if the Fiscal Agent so requires, shall be notified to the Noteholders as soon as practicable thereafter in accordance with Condition 12.

26.    <u>Governing Law</u>

This Agreement shall be governed by and construed in accordance with the laws of the State of New York, United States of America, without giving effect to the principles of conflicts of law. Each party to this Agreement irrevocably agrees that any legal action or proceeding against it arising out of or in connection with this Agreement or for recognition or enforcement of any judgment rendered against it in connection with this Agreement may be brought in any Federal or New York State court sitting in the Borough of Manhattan, and, by execution and delivery of this Agreement, such party thereby irrevocably accepts and submits to the jurisdiction of each of the aforesaid courts in person, generally and unconditionally with respect to any such action or proceeding for itself and in respect of its property, assets and revenues. Each party hereby also irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the laying of venue of any such action or proceeding brought in any such court and any claim that any such action or proceeding has been brought in an inconvenient forum. Nothing contained in this Clause 26 shall limit any right to bring any legal action or proceeding in any other court of competent jurisdiction. The Company hereby appoints its New York office as its agent for the service of process in New York.

17

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007666

IN WITNESS WHEREOF the parties hereto have executed this Agreement as of the date first above written.

GENERAL MOTORS CORPORATION

By:    /s/ Warren G. Andersen
Name: Warren G. Andersen
Title:   Assistant General Counsel
and Assistant Secretary

[Signature Page for GM Euro Fiscal and Paying Agency Agreement]

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007667

DEUTSCHE BANK AG LONDON

By:      /s/ CA Morris

Name: CA Morris

Title:  Vice President

By:      /s/ C. Wilson

Name: C. Wilson

Title:  Vice President

BANQUE GÉNÉRALE DU LUXEMBOURG S.A.

By:      /s/ Jean Marie Moes

Name: Jean Marie Moes

Title:  Head of Back-Offices & Securities Handling

By:      /s/ Karine Antignac

Name: Karine Antignac

Title:  Head of Paying Agency Recovery

[Signature Page for GM Euro Fiscal and Paying Agency Agreement]

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007668

SCHEDULE 1

TERMS AND CONDITIONS OF NOTES

*The following are the Terms and Conditions of Notes (sometimes referred to herein as the "Terms and Conditions" or "Conditions") of the Company that (subject to completion and amendment) will be attached to or incorporated by reference into each Global Note and which will be attached to or endorsed upon each Definitive Note.*

This Note is one of the Notes issued subject to, and with the benefit of, the Fiscal and Paying Agency Agreement (as amended from time to time in accordance with its terms, the "Fiscal and Paying Agency Agreement") dated July 3, 2003 and made among General Motors Corporation (the "Company"), Deutsche Bank AG London, as issuing agent and principal Paying Agent (the "Fiscal Agent" which expression shall include any successor as fiscal agent) and Banque Générale du Luxembourg S.A., as Paying Agent (together with the Fiscal Agent, the "Paying Agents" which expression shall include any additional or successor Paying Agents).

The holders for the time being of the Notes (the "Noteholders"), which expression shall, in relation to any Notes be construed to include the holders of the Coupons (as defined below) appertaining to Definitive Notes (the "Couponholders"), are deemed to have notice of, and are entitled to the benefit of, all the provisions of the Fiscal and Paying Agency Agreement, which are binding on them. Words and expressions defined in the Fiscal and Paying Agency Agreement or on the face of this Note shall have the same meanings where used in these Terms and Conditions unless the context otherwise requires or unless otherwise stated. Copies of the Fiscal and Paying Agency Agreement are available from the principal office of the Fiscal Agent and the Paying Agents set out at the end of this Agreement.

## 1.    Form, Denomination and Title

Each of the 2013 Notes and 2033 Notes will be represented initially by one or more Temporary Global Notes in bearer form (each a "Temporary Global Note"), without Coupons, which will be deposited on or about July 3, 2003 with a common depositary of Euroclear Bank S.A./N.V. as operator for the Euroclear System ("Euroclear") and Clearstream Banking, societe anonyme ("Clearstream") for credit to certain accounts maintained by Euroclear or Clearstream.

Interests in Temporary Global Notes will be exchangeable for interests in Permanent Global Notes in bearer form (the "Permanent Global Note") without Coupons, not earlier than 40 days after July 3, 2003 (as extended as described below, the "Exchange Date"). The Company may issue further 2013 Notes and 2033 Notes which shall be consolidated and form a single series with the 2013

Notes and 2033 Notes (as applicable), provided, however, that such further Notes may be issued only if they are fungible with the original Notes for United States federal income tax purposes. If any further 2013 Notes and 2033 Notes are issued prior to the originally scheduled Exchange Date, then the Exchange Date may be extended, without

20

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007669

the consent of the applicable Noteholders, to a date being not earlier than 40 days after the issue of such further Notes. In addition, the exchange of a Temporary Global Note for a Permanent Global Note will only be made upon certification that each beneficial owner of an interest in the Temporary Global Note is not a United States person or, if it is a United States person, that either it is a foreign branch of a U.S. financial institution that meets certain requirements or it acquired the 2013 Notes or 2033 Notes through such a foreign branch and continues to hold such 2013 Notes or 2033 Notes through that financial institution and, if it is a financial institution, that it has not acquired such 2013 Notes or 2033 Notes for resale to any United States person or persons in the United States or its possessions. A Permanent Global Note may be exchanged in whole but not in part for definitive Notes, in bearer form with Coupons, in denominations of €1,000, €10,000 and €100,000, either upon request by any holder of an interest in the Permanent Global Notes or in certain other circumstances set out in the Permanent Global Note as further described below. No Definitive Note delivered in exchange for a Permanent Global Note will be mailed or otherwise delivered to any location in the United States in connection with such exchange.

Title to the Notes and the Coupons will pass by delivery. The holder of each Coupon, whether or not such Coupon is attached to a Note, in the holder's capacity as such, shall be subject to and bound by all the provisions contained in the relevant Note. To the extent permitted by law, the Company, the Fiscal Agent and the Paying Agents, as the case may be, shall be entitled to deem and treat the bearer of any Note and the bearer of any Coupon as the absolute owner thereof (notwithstanding any notice to the contrary and whether or not such Note or Coupon shall be overdue and notwithstanding any notice of ownership or writing thereon or any notice of previous loss or theft or trust or other interest therein) for the purpose of making payment and for all other purposes.

**2.    Status of the Notes**

The Notes and the Coupons appertaining thereto will be unsecured obligations of the Company and will rank equally with all other unsecured and unsubordinated indebtedness of the Company save for that preferred by mandatory provisions of law.

The Fiscal and Paying Agency Agreement and the Notes do not limit other indebtedness or securities which may be issued by the Company and contain no financial or similar restrictions on the Company.

**3.    Interest**

The Notes will bear interest from and including July 3, 2003 to but excluding July 3, 2013 (in the case of the 2013 Notes) and from and including July 3, 2003 to but excluding July 5, 2033 (in the case of the 2033 Notes) at a rate of 7.25 percent per annum, in the case of the 2013 Notes, and 8.375 percent per annum in the case of the 2033 Notes, payable annually in arrears on July 3 (in the case of the 2013 Notes) and July 5 (in the case of the 2033 Notes) in each year the Notes are outstanding. The first payment shall be payable on July 3, 2004 (in the case of the 2013 Notes) and July 5, 2004 (in the case of the 2033 Notes).

21

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007670

Interest will cease to accrue on the Notes on the applicable Maturity Date (as defined below) or on the date the 2013 Notes or the 2033 Notes, as the case may be, are due to be redeemed unless, upon due presentation thereof, payment of principal is improperly withheld or refused, in which event interest will continue to accrue (both before and after judgment) until whichever is the earlier of (i) the day on which all the sums due in respect of the 2013 Notes or 2033 Notes, as the case may be, Notes up to that day are received by or on behalf of the holders of the 2013 Notes or 2033 Notes, as the case may be, and (ii) the day on which the Fiscal Agent has notified the holder thereof (in accordance with Condition 12) of its receipt of all sums due in respect thereof up to that date and that, upon presentation thereof being duly made by the holder of Notes or Coupons, payment will be made, provided that upon presentation thereof being duly made, payment is in fact made.

When interest is required to be calculated in respect of a period of less than a full year, it shall be calculated on the basis of the actual number of days elapsed since the date of issuance of the Notes, or if more recent, the last interest payment date divided by 365 (or if any portion of this period falls in a leap year, the sum of (A) the actual number of days in that portion of the period falling in a leap year divided by 366 and (B) the actual number of days in the portion of the period falling in a non-leap year by 365).

## 4.    Payments

Principal of and interest (which term includes any Additional Amounts, as defined herein, unless the context otherwise requires) on the Notes will be payable in Euros against surrender of such Notes or Coupons, as the case may be, at such paying agencies outside the United States and its possessions as the Company may appoint from time to time or, at the option of the holder, by credit or transfer to a designated Euro account maintained by the payee with a bank located outside the United States and its possessions, subject in each case to all applicable laws and regulations. If the date for payment of any amount in respect of any Note or Coupon is not a Business Day in the relevant place, the holder thereof shall not be entitled to payment until the next following Business Day in the relevant place and shall not be entitled to further interest or other payment in respect of such delay. For these purposes, "Business Day" means a day other than a Saturday or Sunday that is not (a) a day on which banks and foreign exchange markets in London, New York City and the place where such Note or Coupon, as the case may be, is presented for payment to a Paying Agent are generally authorized or obligated by law or executive order to close and (b) not a day on which the Trans-European Automated Real-Time Gross Settlement Express Transfer ("TARGET") System is closed. No payment of principal of, or interest on, any Note may be made at any office of the Fiscal Agent or any other Paying Agent maintained by the Company in the United States, nor may payment be made to any address in the United States or by transfer to an account maintained in the United States.

The Company may at any time terminate the appointment of any Paying Agent and appoint additional or other Paying Agents outside the United States and its possessions, provided that, until all outstanding Notes have been cancelled and delivered to the Fiscal Agent, or monies sufficient to pay the principal of and interest on all

22

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

outstanding Notes have been made available for payment and either paid or returned to the Company, as the case may be, as provided in the Notes, the Company will maintain a Paying Agent in a European city for payments on Notes or Coupons (which will be Luxembourg so long as the Notes are listed on the Luxembourg Stock Exchange and the rules of the Luxembourg Stock Exchange so require). Notice of any such termination or appointment and of any change in the office through which any Paying Agent will act will be given in accordance with Condition 12. The names of the initial Fiscal Agent and the initial Paying Agents and their respective initial offices are set forth at the end of the Fiscal and Paying Agency Agreement.

In case of early redemption, the 2013 Notes or the 2033 Notes (as applicable) should be presented for payment together with all relative unmatured Coupons, failing which the full amount of any such missing unmatured Coupons will be deducted from the sum due for payment. Each amount so deducted will be paid in the manner mentioned above against surrender of the relative missing Coupon at any time before the expiry of five years following the due date for payment of such principal on redemption (whether or not such Coupons would have become unenforceable pursuant to Condition 15).

All monies paid by the Company to the Fiscal Agent for the payment of principal of, or interest on, any Note which remains unclaimed at the end of two years after such principal or interest shall have become due and payable, will be repaid to the Company upon the Company's request and the holder of such Note or any Coupon will thereafter look only to the Company for payment thereof.

## 5. Redemption

### (a) *Maturity*

The Notes are not redeemable before maturity except as provided under this Condition. The Notes will be redeemed by the Company in full at a redemption price equal to 100 percent of the principal amount of the Notes on July 3, 2013 (in the case of the 2013 Notes) and July 5, 2033 (in the case of the 2033 Notes) (in either case, the "Maturity Date") if they have not been otherwise redeemed as described herein.

### (b) *Redemption for Tax Reasons*

If, as the result of any change in or amendment to the laws (including any regulations or rulings promulgated thereunder) of the United States or any political subdivision thereof or therein affecting taxation, including any official proposal for such a change in or amendment to such laws, which became effective after the date of the Offering Circular or which proposal is made after such date, or any change in the official application or interpretation of such laws, including any official proposal for such a change, amendment or change in the application or interpretation of such laws, which change, amendment, application or interpretation is announced or becomes effective after the date of the Offering Circular or which proposal is made after such date, or as the result of any action taken by any taxing authority of the United States which action is taken or becomes generally known after the date of the Offering Circular, or any

23

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007672

commencement of a proceeding in a court of competent jurisdiction in the United States after such date, whether or not such action was taken or such proceeding was brought with respect to the Company, there is, in such case, in the written opinion of independent legal counsel of recognized standing to the Company, a material increase in the probability that the Company has or may become obligated to pay Additional Amounts (as described below in Condition 6), and the Company in its business judgment, determines that such obligation cannot be avoided by the use of reasonable measures available to it, not including assignment of the 2013 Notes or the 2033 Notes, the 2013 Notes and/or the 2033 Notes (as applicable) may be redeemed, as a whole but not in part, at the Company's option at any time thereafter, at a redemption price equal to 100 percent of the principal amount of the 2013 Notes or the 2033 Notes (as applicable) to be redeemed together with (as applicable) accrued and unpaid interest thereon to (but not including) the date fixed for redemption (the "Redemption Price). Before the publication of any notice of redemption of the 2013 Notes or the 2033 Notes (as applicable), pursuant to the foregoing, the Company shall deliver to the Fiscal Agent the opinion of a nationally recognized independent tax advisor to the Company as described above and a certificate setting out facts showing that the conditions precedent to the right of the Company so to redeem have occurred.

(c) *Special Tax Redemption*

If the Company shall determine, based upon an opinion of a nationally recognized independent tax advisor to the Company, that any payment made outside the United States and its possessions by the Company or any of its Paying Agents of principal of or interest on any Note or Coupon would, under any present or future laws or regulations of the United States affecting taxation or otherwise, be subject to any certification, identification, documentation, information or other reporting requirement of any kind with regard to the nationality, residence or identity of a beneficial owner of such Note or of any Coupon who is a Non-U.S. Holder (as defined under Condition 6) (other than such a requirement which can be satisfied by the custodian, nominee or other agent (if any) of the beneficial owner certifying to the effect that such beneficial owner is a Non-U.S. Holder, provided that payment by such custodian, nominee or agent to such beneficial owner is not otherwise subject to any such requirement), the Company shall, at its election, either redeem the 2013 year Notes or 2033 Notes (as applicable) in whole at a redemption price equal to 100 percent of the principal amount of the 2013 year Notes or 2033 Notes (as applicable) together with (as applicable) accrued and unpaid interest to (but not including) the date fixed for redemption, or, if the conditions of the second succeeding paragraph are satisfied, pay the Additional Amounts specified in such paragraph. The Company shall make such determination and election as soon as practicable and publish prompt notice thereof (the "Determination Notice") stating the effective date of such certification, documentation, identification, information or other reporting requirement, whether the Company has elected to redeem the 2013 Notes and/or the 2033 Notes (as applicable) or pay the Additional Amounts specified in the second succeeding paragraph, and (if applicable) the last date by which the redemption of the 2013 year Notes or 2033 Notes (as applicable) must take place, as provided in the next succeeding sentence. If the Company elects to redeem the 2013 Notes or the 2033 Notes (as applicable), such redemption shall take place on such date, not later than one

24

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007673

year after the publication of the Determination Notice, as the Company shall elect by notice to the Fiscal Agent at least 15 days before notice is given to the holders of the 2013 year Notes or 2033 Notes (as applicable) of the date fixed for redemption as described below. Notwithstanding the foregoing, the Company will not so redeem the 2013 year Notes or 2033 Notes if the Company shall subsequently determine, not less than 30 days before the date fixed for redemption, that subsequent payments on the 2013 year Notes or 2033 Notes (as applicable) would not be subject to any such certification, identification, documentation, information or other reporting requirement, in which case the Company shall publish prompt notice of such determination and any earlier redemption notice shall be revoked and of no further effect.

Each notice referred to in the preceding paragraph shall be given in the manner described below under Condition 12.

If, and so long as, the certification, identification, documentation, information or other reporting requirement referred to in the second preceding paragraph would be fully satisfied by payment of a backup withholding tax or similar charge, the Company may elect to pay as Additional Amounts such amounts as may be necessary so that every net payment made outside the United States and its possessions following the effective date of such requirement by the Company or any Paying Agent of principal of, or interest on, any Note or Coupon of which the beneficial owner is a Non-U.S. Holder (but without any requirement that the nationality, residence or identity of such beneficial owner be disclosed to the Company or any Paying Agent or any governmental authority), after deduction or withholding for or on account of such backup withholding tax or similar charge, will not be less than the amount provided for in such Note or Coupon to be then due and payable. However, the Company may elect not to pay such Additional Amounts in respect of any backup withholding tax or similar charge, which (a) would not be applicable to a payment of principal of, or interest on, any Note or Coupon made by the Company or any one of its Paying Agents (i) directly to the beneficial owner or (ii) to a custodian, nominee or other agent of the beneficial owner of such Note if such custodian, nominee or other agent were to certify to the effect that such beneficial owner is a Non-U.S. Holder or (b) is imposed as a result of presentation of such Note or Coupon for payment more than 10 days after the date on which such payment became due and payable or on which payment thereof is duly provided for, whichever occurred later. In the event the Company elects to pay any Additional Amounts pursuant to this paragraph, the Company shall have the right to redeem the 2013 Notes and/or 2033 Notes at any time pursuant to the applicable provisions of the second preceding paragraph, the redemption price of which shall not be reduced for applicable withholding taxes. If the Company elects to pay Additional Amounts pursuant to this paragraph and the condition specified in the first sentence of this paragraph should not be satisfied, then the Company shall redeem the 2013 Notes and/or 2033 Notes pursuant to the applicable provisions of the second preceding paragraph.

(d) *Notice*

Notice of redemption will be given by the Company not less than 30 nor more than 60 days before the date fixed for redemption, which date and the applicable

25

NGM000007674

redemption price will be specified in the notice. Such notice shall be published in accordance with Condition 12 below. Notice having been so given, the 2013 Notes and/or 2033 Notes (as applicable) shall become due and payable on the redemption date upon presentation and surrender thereof (together with all Coupons, if any, maturing subsequent to the redemption date) and will be paid at the redemption price, at the offices or agencies in Luxembourg and in the manner specified therein. Notes shall be presented for redemption accompanied by all unmatured Coupons, if any, failing which the amount of the missing unmatured Coupons will be deducted from the sum due for payment. Any amount of payment so deducted will be paid in the manner mentioned above in Condition 4 against surrender of the related missing Coupons within the period of time set forth in Condition 15.

All unpaid interest installments represented by Coupons which shall have matured on or prior to the date of redemption specified in such notice shall continue to be payable to the holders of such Coupons, and the amount payable to the holders of Notes presented for redemption shall not include such unpaid installments of interest (and any Additional Amounts with respect thereto), unless Coupons representing such installments shall accompany the Notes presented for redemption. From and after the redemption date, if monies for the redemption of all the 2013 Notes or the 2033 Notes (as applicable) shall have been made available as provided herein for redemption on the redemption date, such Notes shall cease to bear interest, the Coupons appertaining thereto maturing subsequent to the redemption date shall be void and the only right of the holders of Notes and Coupons appertaining thereto shall be to receive payment of the applicable redemption price, and all unpaid interest installments represented by Coupons which shall have matured on or prior to the date of redemption, in accordance with the terms hereof. If any Note called for redemption by the Company shall not be so paid upon surrender thereof for redemption, the principal and interest of such Note shall, until paid pursuant to Condition 4 hereof, bear interest from the redemption date at the rate borne by the 2013 Notes or the 2033 Notes, as the case may be.

(e) *Purchase by Company and Subsidiaries*

The Company or any of its subsidiaries may at any time purchase or otherwise acquire Notes in the open market or otherwise. Notes purchased or otherwise acquired by the Company or any of it subsidiaries may be held or, at the discretion of the Company, surrendered to the Fiscal Agent for cancellation (together with (in the case of Definitive Notes) any unmatured Coupons attached thereto or purchased therewith). The Company may not resell or reissue those Notes purchased or otherwise acquired.

6.    **Payment of Additional Amounts**

The Company will pay to the holder of any Note or any Coupon who is a Non-U.S. Holder (as defined below) such additional amounts (the "Additional Amounts") as may be necessary in order that every net payment in respect of the principal of, premium, if any, or interest, if any, on such Note or Coupon, after deduction or withholding by the Company or any Paying Agent for or on account of any present or future tax, assessment or governmental charge imposed upon or as a result of such payment by the United States

26

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007675

or any political subdivision or taxing authority thereof or therein, will not be less than the amount provided for in such Note or in such Coupon to be then due and payable before any such deduction or withholding for or on account of any such tax, assessment or governmental charge; provided, however, that the foregoing obligation to pay Additional Amounts shall not apply to:

(a) any tax, assessment or other governmental charge which would not have been so imposed but for (i) the existence of any present or former connection between such holder (or a fiduciary, settlor, beneficiary, member, or shareholder of, or holder of a power over, such holder, if such holder is an estate, trust, partnership or corporation) and the United States, including, without limitation, such holder (or such fiduciary, settlor, beneficiary, member, shareholder of, or holder of a power) being or having been a citizen or resident or treated as a resident thereof or being or having been engaged in a trade or business therein or being or having been present therein or having or having had a permanent establishment therein, or (ii) such holder's present or former status as a personal holding company or foreign personal holding company or controlled foreign corporation or passive foreign investment company for United States federal income tax purposes or corporation which accumulates earnings to avoid United States federal income tax;

(b) any tax, assessment or other governmental charge which would not have been so imposed but for the presentation by the holder of such Note or Coupon for payment on a date more than 10 days after the date on which such payment became due and payable or the date on which payment thereof is duly provided for, whichever occurs later;

(c) any estate, inheritance, gift, sales, transfer, personal property or excise tax or any similar tax, assessment or governmental charge;

(d) any tax, assessment or other governmental charge which is payable otherwise than by withholding from payments in respect of principal of, premium, if any, or interest, if any, on any Note or Coupon;

(e) any tax, assessment or other governmental charge imposed on interest received by a holder or beneficial owner of a Note or Coupon who actually or constructively owns 10% or more of the total combined voting power of all classes of stock of the Company entitled to vote within the meaning of Section 871(h)(3) of the Code;

(f) any tax, assessment or other governmental charge imposed as a result of the failure to comply with (i) certification, information, documentation, reporting or other similar requirements concerning the nationality, residence, identity or connection with the United States of the holder or beneficial owner of the Note or Coupon, if such compliance is required by statute, or by regulation of the United States Treasury Department, as a precondition to relief or exemption from such tax, assessment or other governmental charge (including backup withholding) or (ii) any other certification, information, documentation, reporting or other similar requirements under United States income tax laws or regulations that would establish entitlement to otherwise applicable relief or exemption from such tax, assessment or other governmental charge;

27

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007676

(g) any tax, assessment or other governmental charge required to be withheld by any Paying Agent from any payment of the principal of, premium, if any, or interest, if any, on any Note or Coupon, if such payment can be made without such withholding by at least one other Paying Agent;

(h) Any Note or Coupon where such withholding or deduction is imposed on a payment to an individual and is required to be made pursuant to any European Union Directive on the taxation of savings implementing the conclusions of the ECOFIN (European Union's Economic and Finance Ministers) Council meeting of 26-27 November 2000 or any law implementing or complying with, or introduced in order to conform to, such Directive;

(i) any Note or Coupon presented for payment by or on behalf of a holder who would have been able to avoid such withholding or deduction by presenting the relevant Note or Coupon to another Paying Agent in a Member State of the European Union; or

(j) any combination of items (a), (b), (c), (d), (e), (f), (g), (h) or (i);

nor will Additional Amounts be paid to any holder who is a fiduciary or partnership or other than the sole beneficial owner of the Note or Coupon to the extent a settlor or beneficiary with respect to such fiduciary or a member of such partnership or a beneficial owner of the Note or Coupon would not have been entitled to payment of the Additional Amounts had such beneficiary, settlor, member or beneficial owner been the holder of the Note or Coupon. The Notes are subject in all cases to any tax, fiscal or other law or regulation or administrative or judicial interpretation applicable to the Notes. Except as specifically provided by this Condition 6 and the paragraph entitled "Special Tax Redemption" in Condition 5, the Company will not be required to make any payment for any tax, assessment or other governmental charge imposed by any government or a political subdivision or taxing authority of or in any government or political subdivision.

As used in this Condition 6 and under the paragraph entitled "Special Tax Redemption" in Condition 5, the term "United States" means the United States of America (including the states and the District of Columbia) and its territories, possessions and other areas subject to its jurisdiction; and the term "Non-U.S. Holder" means a person that is for United States federal income tax purposes, a (i) non resident alien individual, (ii) foreign corporation, (iii) non resident alien fiduciary of a foreign estate or trust, or (iv) a foreign partnership one or more members of which is, for United States federal income tax purposes, a non resident individual, a foreign corporation or a non resident alien fiduciary of a foreign estate or trust.

## 7.    Certain Covenants

(a) *Limitation on Liens*. The Company will not, and will not permit any Manufacturing Subsidiary to, issue or assume any Debt secured by a Mortgage upon any

28

Principal Domestic Manufacturing Property of the Company or any Manufacturing Subsidiary or upon any shares of stock or indebtedness of any Manufacturing Subsidiary (whether such Principal Domestic Manufacturing Property, shares of stock or indebtedness are now owned or hereafter acquired) without in any such case effectively providing concurrently with the issuance or assumption of any such Debt that the Notes (together with, if the Company shall so determine, any other indebtedness of the Company or such Manufacturing Subsidiary ranking equally with the 2013 Notes and the 2033 Notes as then existing or thereafter created) shall be secured equally and ratably with such Debt, unless the aggregate amount of Debt issued or assumed and so secured by Mortgages, together with all other Debt of the Company and its Manufacturing Subsidiaries which (if originally issued or assumed at such time) would otherwise be subject to the foregoing restrictions, but not including Debt permitted to be secured under clauses (i) through (vi) of the immediately following paragraph, does not at the time exceed 20% of the stockholders' equity of the Company and its consolidated subsidiaries, as determined in accordance with generally accepted accounting principles in the U.S. and shown on the audited consolidated balance sheet contained in the latest published annual report to stockholders of the Company.

The above restrictions shall not apply to Debt secured by:

(i) Mortgages on property, shares of stock or indebtedness of any corporation existing at the time such corporation becomes a Manufacturing Subsidiary;

(ii) Mortgages on property existing at the time of acquisition of such property by the Company or a Manufacturing Subsidiary, or Mortgages to secure the payment of all or any part of the purchase price of such property upon the acquisition of such property by the Company or a Manufacturing Subsidiary or to secure any Debt incurred prior to, at the time of, or within 180 days after, the later of the date of acquisition of such property and the date such property is placed in service, for the purpose of financing all or any part of the purchase price thereof, or Mortgages to secure any Debt incurred for the purpose of financing the cost to the Company or a Manufacturing Subsidiary of improvements to such acquired property;

(iii) Mortgages securing Debt of a Manufacturing Subsidiary owing to the Company or to another Subsidiary;

(iv) Mortgages on property of a corporation existing at the time such corporation is merged or consolidated with the Company or a Manufacturing Subsidiary or at the time of a sale, lease or other disposition of the properties of a corporation as an entirety or substantially as an entirety to the Company or a Manufacturing Subsidiary;

(v) Mortgages on property of the Company or a Manufacturing Subsidiary in favor of the United States of America or any State thereof, or any department, agency or instrumentality or political subdivision of the United States of America or any State thereof, or in favor of any other country, or any political subdivision thereof, to secure partial, progress, advance or other payments pursuant to any contract or statute or to secure any indebtedness incurred for the purpose of financing all or any part of the purchase price or the cost of construction of the property subject to such Mortgages; or

29

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007678

(vi) any extension, renewal or replacement (or successive extensions, renewals or replacements) in whole or in part of any Mortgage referred to in the foregoing clauses (i) to (v); provided, however, that the principal amount of Debt secured thereby shall not exceed by more than 115% the principal amount of Debt so secured at the time of such extension, renewal or replacement and that such extension, renewal or replacement shall be limited to all or a part of the property which secured the Mortgage so extended, renewed or replaced (plus improvements on such property).

(b) *Limitation on Sale and Lease-backs.* The Company will not, and will not permit any Manufacturing Subsidiary to, enter into any arrangement with any person providing for the leasing by the Company or any Manufacturing Subsidiary of any Principal Domestic Manufacturing Property owned by the Company or any Manufacturing Subsidiary on the date that the Notes are originally issued (except for temporary leases for a term of not more than five years and except for leases between the Company and a Manufacturing Subsidiary or between Manufacturing Subsidiaries), which property has been or is to be sold or transferred by the Company or such Manufacturing Subsidiary to such person, unless either:

(i) the Company or such Manufacturing Subsidiary would be entitled, pursuant to the provisions of the covenant on limitation on liens set forth above, to issue, assume, extend, renew or replace Debt secured by a Mortgage upon such property equal in amount to the Attributable Debt in respect of such arrangement without equally and ratably securing the 2013 Notes and 2033 Notes; provided, however, that from and after the date on which such arrangement becomes effective the Attributable Debt in respect of such arrangement shall be deemed for all purposes under the covenant on limitation on liens set forth above and this covenant on limitation on sale and lease-back to be Debt subject to the provisions of the covenant on limitation on liens described above (which provisions include the exceptions set forth in clauses (i) through (vi) of such covenant); or

(ii) the Company shall apply an amount in cash equal to the Attributable Debt in respect of such arrangement to the retirement (other than any mandatory retirement or by way of payment at maturity), within 180 days of the effective date of any such arrangement, of Debt of the Company or any Manufacturing Subsidiary (other than Debt owned by the Company or any Manufacturing Subsidiary) which by its terms matures at or is extendible or renewable at the option of the obligor to a date more than twelve months after the date of the creation of such Debt.

For purposes of the foregoing, the following definitions shall apply:

(i) "Attributable Debt" means, at the time of determination as to any lease, the present value (discounted at the actual rate, if stated, or, if no rate is stated, the implicit rate of interest of such lease transaction as determined by the chairman,

30

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007679

president, any vice chairman, any vice president, the treasurer or any assistant treasurer of the Company), calculated using the interval of scheduled rental payments under such lease, of the obligation of the lessee for net rental payments during the remaining term of such lease (excluding any subsequent renewal or other extension options held by the lessee). The term "net rental payments" means, with respect to any lease for any period, the sum of the rental and other payments required to be paid in such period by the lessee thereunder, but not including, however, any amounts required to be paid by such lessee (whether or not designated as rental or additional rental) on account of maintenance and repairs, insurance, taxes, assessments, water rates, indemnities or similar charges required to be paid by such lessee thereunder or any amounts required to be paid by such lessee thereunder contingent upon the amount of sales, earnings or profits or of maintenance and repairs, insurance, taxes, assessments, water rates, indemnities or similar charges; provided, however, that, in the case of any lease which is terminable by the lessee upon the payment of a penalty in an amount which is less than the total discounted net rental payments required to be paid from the later of the first date upon which such lease may be so terminated and the date of the determination of net rental payments, "net rental payments" shall include the then current amount of such penalty from the later of such two dates, and shall exclude the rental payments relating to the remaining period of the lease commencing with the later of such two dates.

(ii) "Debt" means notes, bonds, debentures or other similar evidences of indebtedness for money borrowed.

(iii) "Manufacturing Subsidiary" means any Subsidiary (A) substantially all the property of which is located within the continental United States of America, (B) which owns a Principal Domestic Manufacturing Property and (C) in which the Company's investment, direct or indirect and whether in the form of equity, debt, advances or otherwise, is in excess of $2,500,000,000 as shown on the Company's books as of the end of the fiscal year immediately preceding the date of determination; provided, however, that "Manufacturing Subsidiary" shall not include Hughes Electronics Corporation and its Subsidiaries, General Motors Acceptance Corporation and its Subsidiaries (or any corporate successor of any of them) or any other Subsidiary which is principally engaged in leasing or in financing installment receivables or otherwise providing financial or insurance services to the Company or others or which is principally engaged in financing the Company's operations outside the continental United States of America.

(iv) "Mortgage" means any mortgage, pledge, lien, security interest, conditional sale or other title retention agreement or other similar encumbrance.

(v) "Principal Domestic Manufacturing Property" means any manufacturing plant or facility owned by the Company or any Manufacturing Subsidiary which is located within the continental United States of America and, in the opinion of the Company's Board of Directors, is of material importance to the total business conducted by the Company and its consolidated affiliates as an entity.

31

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007680

(vi) "Subsidiary" means any corporation of which at least a majority of the outstanding stock having by the terms thereof ordinary voting power to elect a majority of the board of directors of such corporation (irrespective of whether or not at the time stock of any other class or classes of such corporation shall have or might have voting power by reason of the happening of any contingency) is at the time owned by the Company, or by one or more Subsidiaries, or by the Company and one or more Subsidiaries.

## 8. Events of Default

In case one or more of the following events ("Events of Default") shall have occurred and be continuing:

(a) default in the payment of the principal of the 2013 Notes or the 2033 Notes as and when the same shall become due and payable either at maturity, upon redemption, by declaration or otherwise; or

(b) default in the payment of any installment of interest or in the payment of any Additional Amounts upon the 2013 Notes or the 2033 Notes as and when the same shall become due, and continuance of such default for a period of thirty days; or

(c) failure on the part of the Company duly to observe or perform any other of the covenants or agreements on the part of the Company applicable to the 2013 Notes or the 2033 Notes or contained in the Fiscal and Paying Agency Agreement and the Conditions for a period of ninety days after the date on which written notice of such failure, requiring the Company to remedy the same, shall have been given to the Company by the Fiscal Agent, or to the Company and the Fiscal Agent by the holders of at least 25 percent in aggregate principal amount of the 2013 Notes or the 2033 Notes at the time outstanding (as applicable); or

(d) a court having jurisdiction in the premises shall enter a decree or order for relief in respect of the Company in an involuntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or appointing a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of the Company or for any substantial part of its property, or ordering the winding-up or liquidation of its affairs and such decree or order shall remain unstayed and in effect for a period of ninety days; or

(e) the Company shall commence a voluntary case under any applicable bankruptcy, insolvency or other similar law now or hereafter in effect, or shall consent to the entry of an order for relief in an involuntary case under any such law, or shall consent to the appointment of or taking possession by a receiver, liquidator, assignee, trustee, custodian, sequestrator (or similar official) of the Company or for any substantial part of its property, or shall make any general assignment for the benefit of creditors;

then if an Event of Default described in clause (a), (b) or (c) shall have occurred and be continuing, and in each and every such case, unless the principal amount of all the 2013 Notes or the 2033 Notes, as the case may be, shall have already become due and payable,

32

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007681

the holders of not less than 25 percent in aggregate principal amount of the 2013 Notes or the 2033 Notes affected thereby then outstanding (as applicable) hereunder, by notice in writing to the Company and the Fiscal Agent, may declare the principal amount of the 2013 Notes or the 2033 Notes (as applicable) affected thereby to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, any provision of the Fiscal and Paying Agency Agreement or the Notes contained to the contrary notwithstanding, or, if an Event of Default described in clause (d) or (e) shall have occurred and be continuing, and in each and every such case, the holders of not less than 25 percent in aggregate principal amount of the 2013 Notes or the 2033 Notes then outstanding (as applicable)), by notice in writing to the Company and the Fiscal Agent, may declare the principal of the 2013 Notes or the 2033 Notes (as applicable) to be due and payable immediately, and upon any such declaration the same shall become and shall be immediately due and payable, any provision in the Fiscal and Paying Agency Agreement or in the Notes to the contrary notwithstanding. The foregoing provisions, however, are subject to the conditions that if, at any time after the principal of the 2013 Notes or the 2033 Notes shall have been so declared due and payable, and before any judgment or decree for the payment of the moneys due shall have been obtained or entered as hereinafter provided, the Company shall pay or shall deposit with the Fiscal Agent a sum sufficient to pay all matured installments of interest, if any, and all Additional Amounts, if any, due upon the 2013 Notes or the 2033 Notes (as applicable) and the principal of the 2013 Notes or the 2033 Notes (as applicable) which shall have become due otherwise than by acceleration (with interest, if any, upon such principal and, to the extent that payment of such interest is enforceable under applicable law, on overdue installments of interest and Additional Amounts, if any, at the same rate as the rate of interest specified in the 2013 Notes or the 2033 Notes, as the case may be, to the date of such payment or deposit), and such amount as shall be payable to the Fiscal Agent pursuant to the Fiscal and Paying Agency Agreement, and any and all defaults under the Fiscal and Paying Agency Agreement shall have been remedied, then and in every such case the holders of a majority in aggregate principal amount of the 2013 Notes or the 2033 Notes (as applicable) then outstanding, by written notice to the Company and to the Fiscal Agent, may waive all defaults with respect to the 2013 Notes or the 2033 Notes (as applicable) and rescind and annul such declaration and its consequences; but no such waiver or rescission and annulment shall extend to or shall affect any subsequent default or shall impair any right consequent thereon.

In case the Fiscal Agent shall have proceeded to enforce any right under the Fiscal and Paying Agency Agreement and such proceedings shall have been discontinued or abandoned because of such recession and annulment or for any other reason or shall have been determined adversely to the Fiscal Agent, then and in every such case the Company, the Fiscal Agent and the holders of the 2013 Notes or the 2033 Notes, as the case may be, shall be restored respectively to their former positions and rights hereunder, and all rights, remedies and powers of the Company, the Fiscal Agent and the holders of the 2013 Notes or the 2033 Notes, as the case may be, shall continue as though no such proceedings had been taken.

33

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007682

**9.    Fiscal and Paying Agents**

The Fiscal Agent and each of the Paying Agents will act solely as agents of the Company and will not assume any obligations or relationships of agency or trust towards or with any Noteholder or Couponholder, except that any funds received by the Fiscal Agent for the payment of any sums due in respect of the Notes and the Coupons relating thereto shall be held by it in trust for the relevant Noteholders and Couponholders (as the case may be) until the expiration of the relevant period under Condition 4. The Fiscal and Paying Agency Agreement contains provisions for the indemnification of the Fiscal Agent and for its relief from responsibility in certain circumstances.

**10.    Consolidation, Merger or Sale of Assets**

The Company covenants that it will not merge or consolidate with any other corporation or sell or convey all or substantially all of its assets to any person, firm or corporation, unless (i) either the Company shall be the continuing corporation, or the successor corporation (if other than the Company) shall be a corporation organized and existing under the laws of the United States of America or a state thereof and such corporation shall expressly assume the due and punctual payment of the principal of interest, and Additional Amounts, if any, on the Notes, according to their tenor, and the due and punctual performance and observance of all of the covenants and conditions of the Fiscal and Paying Agency Agreement to be performed by the Company, in an instrument executed and delivered to the Fiscal Agent by such corporation and (ii) the Company or such successor corporation, as the case may be, shall not, immediately after such merger or consolidation, or such sale or conveyance, be in default in the performance of any such covenant or condition.

In case of any such consolidation, merger, sale or conveyance and upon any such assumption by the successor corporation, such successor corporation shall succeed to and be substituted for the Company, with the same effect as if it had been named in the Fiscal and Paying Agency Agreement.

The Fiscal Agent may receive an opinion of counsel (which counsel may be an employee of or counsel to the Company, or who may be other counsel acceptable to the Fiscal Agent) as conclusive evidence that any such consolidation, merger, sale or conveyance, and any such assumption, complies with the provisions of this Condition 10.

**11.    Meetings of Noteholders and Modification**

The Fiscal and Paying Agency Agreement contains provisions for convening meetings of Noteholders to consider matters affecting their interests including modifications by Extraordinary Resolution with respect to the 2013 Notes or the 2033 Notes of the Terms and Conditions of the Notes, the Coupons and the Fiscal and Paying Agency Agreement. The quorum at any such meeting for passing a resolution proposed as an Extraordinary Resolution will be one or more persons holding or representing a clear majority in principal amount of the 2013 Notes or the 2033 Notes (as applicable) for the time being outstanding, except that at any meeting, the business of which includes,

34

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007683

inter alia, (i) modification of the Maturity Date of the 2013 Notes or the 2033 Notes or reduction or cancellation of the principal amount payable upon maturity, (ii) reduction of the amount payable or modification of the payment date in respect of any interest on the 2013 Notes or 2033 Notes, (iii) modification of the currency in which payments under the Notes and/or Coupons are to be made, (iv) modification of the majority required to pass an Extraordinary Resolution or (v) modification of the provisions of the Fiscal and Paying Agency Agreement concerning this exception, the necessary quorum for passing an Extraordinary Resolution will be one or more persons holding or representing not less than two-thirds, or at any adjourned meeting not less than a clear majority, in principal amount of the 2013 Notes or the 2033 Notes (as applicable) for the time being outstanding. Any resolution duly passed at any such meeting shall be binding on all Noteholders (whether or not they were present at such meeting) and on all Couponholders.

The Fiscal Agent may agree with the Company, without the consent of the Noteholders or Couponholders, to any modification to any of the provisions of the Fiscal and Paying Agency Agreement, the Notes or the Coupons which is of a formal, minor or technical nature in the opinion of the Company or to add any covenant, restriction, condition or provision as the Company shall consider to be for the protection of the Noteholders or is made for the purpose of curing any ambiguity, or correcting or supplementing any provision contained therein which may be defective or inconsistent with any other provision contained therein, or to make such other provisions in regard to matters or questions arising under the Fiscal and Paying Agency Agreement as shall not adversely affect the interests of the holders of the Notes or Coupons. Any such modification shall be binding on all the Noteholders and Couponholders, and, if the Fiscal Agent so requires, shall be notified to the Noteholders as soon as practicable thereafter in accordance with Condition 12.

## 12. Notices

Notices to Note holders will be given by publication in a daily morning newspaper in the English language of general circulation in London, England. In addition, so long as the 2013 Notes and 2033 Notes are listed on the Luxembourg Stock Exchange and the rules of such Exchange shall so require, notices to holders of the 2013 Notes or 2033 Notes (as applicable) will be given by publication in a daily newspaper of general circulation in Luxembourg. The terms **"daily morning newspaper"** and **"daily newspaper"** shall be deemed to mean a newspaper customarily published on each Business Day (as defined under Condition 4) (in morning editions, in the case of "daily morning newspaper"), whether or not it shall be published in Saturday, Sunday, or holiday editions. If, by reason of the temporary or permanent suspension of publication of any newspaper, or by reason of any other cause, it shall be impossible to make publication of such notice in a daily morning newspaper in the English language of general circulation in London, England and Luxembourg, then such publication or other notice in lieu thereof as shall be made by the Fiscal Agent shall constitute sufficient publication of such notice, if such publication or other notice shall be in an English language newspaper with general circulation in Europe and, so far as may be possible, shall approximate the terms and conditions of the publication in lieu of which it is given.

35

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007684

In addition, any notice shall be published in a manner which complies with the rules and regulations of the Luxembourg Stock Exchange. Such publication is expected to be made in the *Financial Times* and the *Luxemburger Wort*. Such notice shall be deemed to have been given on the date of publication, or, if published on more than one date, on the date of first publication.

Notices to be given by any Noteholder shall be in writing and given by lodging the same, together with the relevant Note or Notes, with the Fiscal Agent. Couponholders shall be deemed for all purposes to have notice of the contents of any notice given Noteholders in accordance with this Condition 12.

**13. Replacement of Notes and Coupons**

Notes (including any Coupons appertaining to the Notes) that become mutilated, defaced, destroyed, stolen or lost will be replaced by the Company at the expense of the holder upon delivery to the Fiscal Agent (the "Replacement Agent") of such Notes and Coupons or evidence of the loss, theft or destruction thereof satisfactory to the Company and the Replacement Agent. In the case of a mutilated, defaced, destroyed, stolen or lost Note or Coupon, an indemnity and/or security satisfactory to the Replacement Agent and the Company may be required at the expense of the holder of such Note or Coupon before a replacement Note or Coupon, as the case may be, will be issued.

**14. Further Issues**

The Company from time to time without the consent of the holder of any Note or Coupon, to create and issue further 2013 Notes and/or 2033 Notes ranking equally in all respects and on the same terms and conditions in all respects (or in all respects save for the date and amount of the first payment of interest thereon) as so that such issue shall be consolidated and form a single series with the 2013 Notes or the 2033 Notes (as applicable) for all purposes, provided, however, that such further Notes may be issued only if they are fungible with the original Notes for United States federal income tax purposes.

**15. Prescription**

The Notes and Coupons will become void unless presented for payment within a period of 10 years (in the case of principal) and five years (in the case of interest) after the Relevant Date (as defined in this Condition 15).

The "Relevant Date" in respect of any payment means (in the case of Notes) the due date for payment and (in the case of Coupons) the date for payment shown on the Coupons.

**16. Governing Law**

The Fiscal and Paying Agency Agreement, the Notes (including the Terms and Conditions of Notes) and the coupons will be governed by, and construed in accordance with, the laws of the State of New York, United States of America, without giving effect to the principles of conflicts of law.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007685

The Company irrevocably agrees that any legal action or proceeding against them arising out of or in connection with the Notes or the Coupons may be brought in any federal or New York State court sitting in the Borough of Manhattan, and, the Company irrevocably waives, to the fullest extent permitted by law, any objection it may have to the laying of venue of any such action or proceeding brought in any such court and any claim that any such action or proceeding has been brought in an inconvenient forum.

37

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

## SCHEDULE 2

### SUMMARY OF PROVISIONS RELATING TO THE NOTES WHILE REPRESENTED BY THE GLOBAL NOTES

*The following is a summary of certain additional provisions to be contained in the Temporary Global Note and the Permanent Global Note (together, the "Global Notes"), with respect to each of the 2013 Notes and the 2033 Notes, which will apply to, and to the extent that they are inconsistent with modify, the terms and conditions of the Notes set forth under "Terms and Conditions of the Notes".*

### 1.    EXCHANGE

The Temporary Global Note is exchangeable in whole or in part (free of charge to the holder) for interests in the Permanent Global Note not earlier than 40 days after the Closing Date (the "Exchange Date") upon certification as to non-U.S. beneficial ownership in the form set out in the Temporary Global Note. The Company may issue further 2013 Notes and 2033 Notes which shall be consolidated and form a single series with the 2013 Notes or 2033 Notes, as the case may be. If any further Notes are issued prior to the originally scheduled Exchange Date then the Exchange Date may be extended, without the consent of the Noteholders, to a date being not earlier than 40 days after the issue of such further Notes. The Permanent Global Note will be exchangeable in whole but not in part (free of charge to the holder) for Definitive Notes in bearer form, with Coupons, if:

(a) any holder of an interest in the Permanent Global Notes requests such exchange upon 45 days written notice; or

(b) an event of default (as set out in Condition 8 above) has occurred and is continuing; or

(c) the Company has been notified that both Euroclear and Clearstream have been closed for business for a continuous period of 14 days (other than by reason of holiday, statutory or otherwise) or have announced an intention permanently to cease business or have in fact done so and no successor clearing system is available; or

(d) the Company has or will become subject to adverse tax consequences which would not be suffered were the Notes in definitive form.

The occurrence of the circumstances described in (a), (b), (c) or (d) above is referred to herein as an "Exchange Event". In the case of (a) or (b) above, the holder of the Permanent Global Note, acting on the instructions of one or more of the Accountholders (as defined below), may give notice to the Company and the Fiscal Agent and, in the case of (d) above, the Company may give notice to the Fiscal Agent of its intention to exchange the Permanent Global Note for Definitive Notes on or after the Definitive Exchange Date (as defined below).

38

On or after the Definitive Exchange Date the holder of the Permanent Global Note may or, in the case of (d) above, shall surrender the Permanent Global Note to or to the order of the Fiscal Agent. In exchange for the Permanent Global Note the Company will deliver, or procure the delivery of, an equal aggregate principal amount of Definitive Notes (having attached to them all Coupons in respect of interest which has not already been paid on the Permanent Global Note), security printed in accordance with any applicable legal and stock exchange requirements and in or substantially in the form set out in the Fiscal and Paying Agency Agreement. On exchange of the Permanent Global Note, the Fiscal Agent will ensure that it is cancelled and, if the Company so requests, returned to the Company. No Definitive Note delivered in exchange for a Permanent Global Note will be mailed or otherwise delivered to any location in the United States in connection with such exchange.

Transfers of the Notes while represented by the Global Notes will be effected in accordance with the rules and regulations of Euroclear and Clearstream.

"Definitive Exchange Date" means a day specified in the notice requiring exchange falling not less than 45 days after that on which such notice is given, being a day on which banks are open for business in the place in which the specified office of the Fiscal Agent is located and, except in the case of exchange pursuant to (b) above, in the place in which the relevant clearing system is located.

## 2.    PAYMENTS

On and after the Exchange Date, no payment will be made on the Temporary Global Note unless exchange for an interest in the Permanent Global Note is improperly withheld or refused. Payments of principal and interest in respect of Notes represented by a Global Note will, subject as set out below, be made against presentation outside the United States for endorsement and, if no further payment is to be made in respect of the Notes, surrender of such Global Note to the order of the Fiscal Agent or such other Paying Agent as shall have been notified to the Noteholders for such purpose. A record of each payment made will be endorsed on the appropriate part of the schedule to the relevant Global Note by or on behalf of the Fiscal Agent, which endorsement shall be prima facie evidence that such payment has been made in respect of the Notes. Payments of interest on the Temporary Global Note (if permitted by the first sentence of this paragraph) will be made upon certification as to non-U.S. beneficial ownership (as described in Condition 1 above) unless such certification has already been made.

## 3.    NOTICES

For so long as all of the Notes are represented by one or both of the Global Notes and such Global Note(s) is/are held on behalf of Euroclear and/or Clearstream, notices to Noteholders may be given by delivery of the relevant notice to Euroclear and/or Clearstream (as the case may be) for communication to the relative Accountholders rather than by publication as required by Condition 12, provided that, so long as the Notes are listed on the Luxembourg Stock Exchange and the rules of the Luxembourg Stock Exchange so require, notices to Noteholders will be given by publication in a daily

39

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007688