newspaper of general circulation in Luxembourg. Such publication is expected to be made in the Luxemburger Wort. In addition, any notice shall be published in a manner which complies with the rules and regulations of the Luxembourg Stock Exchange. Any such notice shall be deemed to have been given to the Noteholders on the seventh day after the day on which such notice is delivered to Euroclear and/or Clearstream (as the case may be) as aforesaid.

## 4.    ACCOUNTHOLDERS

For so long as all of the Notes are represented by one of the Global Notes and such Global Note is held on behalf of Euroclear and/or Clearstream, each person who is for the time being shown in the records of Euroclear or Clearstream as the holder of a particular principal amount of such Notes (each an "Accountholder") (in which regard any certificate or other document issued by Euroclear or Clearstream, as to the principal amount of such Notes standing to the account of any person shall be conclusive and binding for all purposes) shall be treated as the holder of such principal amount of such Notes for all purposes (including for the purposes of any quorum requirements of, or the right to demand a poll at, meetings of the Noteholders) other than with respect to the payment of principal and interest on such Notes, the right to which shall be vested, as against the Company solely in the bearer of the relevant Global Note in accordance with the subject to its terms. Each Accountholder must look solely to Euroclear or Clearstream (as the case may be) for its share of each payment made to the bearer of the relevant Global Note.

## 5.    PRESCRIPTION

Claims against the Company in respect of principal and interest on the Notes represented by a Global Note will be prescribed after 10 years (in the case of principal) and five years (in the case of interest) from the Relevant Date (as defined in Condition 15).

## 6.    CANCELLATION

Cancellation of any Note represented by a Global Note and required by the Terms and Conditions of the Notes to be cancelled following its redemption or purchase will be effected by endorsement by or on behalf of the Fiscal Agent of the reduction in the principal amount of the relevant Global Note on the relevant part of the schedule thereto.

## 7.    EUROCLEAR AND CLEARSTREAM

References herein to Euroclear and Clearstream shall be deemed to include references to any other clearing system through which interests in the Notes are held.

40

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007689

SCHEDULE 3

FORMS OF GLOBAL AND DEFINITIVE NOTES AND COUPONS,

PART I
FORM OF TEMPORARY GLOBAL NOTE

Common Code No.:
ISIN No.:

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND MAY NOT BE OFFERED OR SOLD DIRECTLY OR INDIRECTLY IN THE UNITED STATES OF AMERICA (INCLUDING THE STATES AND THE DISTRICT OF COLUMBIA), ITS POSSESSIONS, ITS TERRITORIES OR OTHER AREAS SUBJECT TO ITS JURISDICTION (THE "UNITED STATES") OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, ANY CITIZEN OR RESIDENT OF THE UNITED STATES, ANY CORPORATION, PARTNERSHIP OR OTHER ENTITY CREATED OR ORGANIZED IN OR UNDER THE LAWS OF THE UNITED STATES OR ANY POLITICAL SUBDIVISION THEREOF OR THEREIN, AN ESTATE THE INCOME OF WHICH IS SUBJECT TO UNITED STATES FEDERAL INCOME TAXATION REGARDLESS OF ITS SOURCE OR A TRUST IF BOTH A COURT WITHIN THE UNITED STATES IS ABLE TO EXERCISE PRIMARY SUPERVISION OVER ITS ADMINISTRATION AND ONE OR MORE UNITED STATES PERSONS HAVE THE AUTHORITY TO CONTROL ALL OF ITS SUBSTANTIAL DECISIONS OR A TRUST THAT HAS MADE A VALID ELECTION TO BE TREATED AS A DOMESTIC TRUST FOR UNITED STATES FEDERAL INCOME TAX PURPOSES ("UNITED STATES PERSONS"); PROVIDED, HOWEVER, THAT THE TERM "UNITED STATES PERSON" SHALL NOT INCLUDE A BRANCH OR AGENCY OF A UNITED STATES BANK OR INSURANCE COMPANY THAT IS OPERATING OUTSIDE THE UNITED STATES FOR VALID BUSINESS REASONS AS A LOCALLY REGULATED BRANCH OR INSURANCE BUSINESS AND NOT SOLELY FOR THE PURPOSE OF INVESTING IN SECURITIES NOT REGISTERED UNDER THE SECURITIES ACT.

ANY UNITED STATES PERSON WHO HOLDS THIS OBLIGATION WILL BE SUBJECT TO LIMITATIONS UNDER THE UNITED STATES INCOME TAX LAWS, INCLUDING THE LIMITATIONS PROVIDED IN SECTION 165(j) AND 1287 (a) OF THE INTERNAL REVENUE CODE.

THIS NOTE IS A TEMPORARY GLOBAL NOTE WITHOUT COUPONS, EXCHANGEABLE FOR A PERMANENT GLOBAL NOTE WITHOUT COUPONS AT THE MAIN OFFICE OF THE FISCAL AGENT (AS DEFINED HEREIN) IN LONDON. THE RIGHTS ATTACHING TO THIS TEMPORARY GLOBAL NOTE, AND THE CONDITIONS AND PROCEDURES GOVERNING ITS EXCHANGE FOR A PERMANENT GLOBAL NOTE, ARE AS SPECIFIED IN THE FISCAL AND PAYING AGENCY AGREEMENT (AS DEFINED HEREIN).

41

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007690

NEITHER THE HOLDER NOR THE BENEFICIAL OWNERS OF THIS GLOBAL NOTE SHALL BE ENTITLED TO
RECEIVE PAYMENT OF INTEREST HEREON EXCEPT PURSUANT TO THE PROVISIONS HEREOF.

42

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER
NGM000007691

**GENERAL MOTORS CORPORATION**
(incorporated in the State of Delaware, United States of America)

TEMPORARY GLOBAL NOTE
representing

€

% NOTES DUE

This Note is a Temporary Global Note in respect of a duly authorized issue of % Notes Due [date of maturity] (the "Notes") of General Motors Corporation (the "Company"), limited to the aggregate principal amount of Euros (€          ).

This Temporary Global Note is issued subject to, and with the benefit of, the Conditions and a Fiscal and Paying Agency Agreement (as amended from time to time in accordance with its terms, the "Fiscal and Paying Agency Agreement") dated July 3, 2003 and made among the Company, Deutsche Bank AG London (the "Fiscal Agent") and the Paying Agent named therein (the "Paying Agents").

References herein to the Conditions shall be to the Terms and Conditions of Notes as set out in the relevant part of Schedule 1 and 2 to the Fiscal and Paying Agency Agreement as amended by the information set forth on the face of this Note and, in the event of any conflict between the provisions of the Conditions and the information set forth on the face of this Note, the latter will prevail.

For value received, the Company, subject to and in accordance with the Conditions, promises to pay to the bearer hereof on the [Maturity Date], or on such earlier date as the Notes may become due and repayable in accordance with the Conditions, the principal sum of Euros (€          ) and to pay interest annually on [          ] of each year from the date of issuance or the later date to which interest has been paid or provided for at the rate of [ ]% per annum in arrears on the principal amount of the Notes represented by this Temporary Global Note calculated and payable as provided in the Conditions together with any such sums payable under the Conditions, upon presentation and, at maturity, surrender of this Temporary Global Note at the offices of the Fiscal Agent at Winchester House, 1 Great Winchester Street, London EC2N 2DB, England or at the offices of any of the Paying Agent located outside the United States from time to time appointed by the Company in respect of the Notes, but in each case subject to the requirements as to certification provided herein. On any payment of interest being made details of such payment shall be entered by or on behalf of the Company in Schedule One hereto and the relevant space in Schedule One hereto recording such payment shall be signed by or on behalf of the Company.

Prior to the Exchange Date (as defined below), payments of interest on this Temporary Global Note will only be made to the bearer hereof to the extent that there is presented to the Fiscal Agent by Clearstream or Euroclear S.A./N.V., as operator of the Euroclear System a certificate, substantially in the form set out in Schedule Three hereto, to the effect that it has received from or in respect of a person entitled to a particular

43

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007692

principal amount of the Notes (as shown by its records) a certificate from such person in or substantially in the form of Certificate "A" as set out in Schedule Three hereto. After the Exchange Date the holder of this Temporary Global Note will not be entitled to receive any payment of interest or principal hereon.

On or after the date (as extended, as described in the Offering Circular, the "Exchange Date") which is not earlier than 40 days after the Closing Date, this Temporary Global Note may be exchanged in whole or in part (free of charge) for a Permanent Global Note in the form set out in Part II of Schedule 3 to the Fiscal and Paying Agency Agreement, upon presentation of this Temporary Global Note by the bearer hereof at the offices in London of the Fiscal Agent (or at such other place outside the United States as the Fiscal Agent may agree). The Permanent Global Note shall be so issued and delivered in exchange for only that portion of this Temporary Global Note in respect of which there shall have been presented to the Fiscal Agent by Euroclear or Clearstream a certificate, substantially in the form set out in Schedule Three hereto, to the effect that it has received from or in respect of a person entitled to a particular principal amount of the Notes (as shown by its records) a certificate from such person in or substantially in the form of Certificate "A" as set out in Schedule Three hereto. After the Exchange Date the holder of this Temporary Global Note will not be entitled to receive any payment of interest hereon.

On an exchange of the whole of this Temporary Global Note, this Temporary Global Note shall be surrendered to the Fiscal Agent. On an exchange of part only of this Temporary Global Note, details of such exchange shall be entered by or on behalf of the Company in Schedule Two hereto and the relevant space in Schedule Two hereto recording such exchange shall be signed by or on behalf of the Company. If, following the issue of a Permanent Global Note in exchange for some of the Notes represented by this Temporary Global Note, further Notes represented by this Temporary Global Note are to be exchanged pursuant to this paragraph, such exchange may be effected, without the issue of a new Permanent Global Note, by the Company or its Fiscal Agent endorsing Schedule Two of the Permanent Global Note previously issued to reflect an increase in the aggregate principal amount of such Permanent Global Note by an amount equal to the aggregate principal amount of the Permanent Global Note which would otherwise have been issued on such exchange.

Notwithstanding the foregoing, where this Temporary Global Note has been exchanged in part for the Permanent Global Note pursuant to the terms hereof and Definitive Notes and Coupons have been issued in exchange for the total amount of Notes represented by the Permanent Global Note pursuant to its terms because Euroclear and/or Clearstream do not regard the Permanent Global Note to be fungible with such Definitive Notes, then interests in this Temporary Global Note will no longer be exchangeable for interests in the Permanent Global Note and may only thereafter be exchanged for Definitive Notes and Coupons pursuant to the terms hereof.

44

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007693

Until the exchange of the whole of this Temporary Global Note as aforesaid, the bearer hereof shall in all respects (except as otherwise provided herein) be entitled to the same benefits as if such person were the bearer of Definitive Notes and Coupons in the form set out in the relevant Part of Schedule 3 to the Fiscal and Paying Agency Agreement.

The Company may deem and treat the bearer hereof as the absolute owner of this Temporary Global Note for all purposes (notwithstanding any notice to the contrary and whether or not this Temporary Global Note shall be overdue and notwithstanding any notice of ownership or writing hereon or notice of any previous loss or theft or trust or other interest herein).

Payment of principal, interest and Additional Amounts (if any) on this Global Note will be made in Euros.

This Temporary Global Note shall be governed by, and shall be construed in accordance with, the laws of the State of New York, United States of America, without giving effect to the principles of conflicts of law.

Title to this Temporary Global Note shall pass by delivery. This Temporary Global Note shall not be valid or obligatory until the Certificate of Authentication thereon shall have been duly signed by the Fiscal Agent acting in accordance with the Fiscal and Paying Agency Agreement.

45

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007694

IN WITNESS whereof the Company has caused this Temporary Global Note to be duly executed on its behalf.

GENERAL MOTORS CORPORATION

By: _____

Name:

Duly Authorized Officer

Dated: July    , 2003

46

CERTIFICATE OF AUTHENTICATION

This is the Temporary Global Note described in the within-mentioned Fiscal and Paying Agency Agreement.

> DEUTSCHE BANK AG LONDON,
> as Fiscal Agent without warranty, recourse or liability
>
> By: _____
> Name:
> Title:
> Authorized Officer

47

Schedule One

INTEREST PAYMENTS

| Interest on Payment Date | Date of Payment | Total Amount of Interest Payable | Amount of Interest Paid | Confirmation of Payment by or on Behalf of Company |
|---|---|---|---|---|
| First | | | | |
| Second | | | | |
| Third | | | | |
| Fourth | | | | |
| Fifth | | | | |

48

Schedule Two

SCHEDULE OF EXCHANGES
FOR NOTES REPRESENTED BY A PERMANENT GLOBAL NOTE

The following exchanges of a part of this Temporary Global Note for Notes represented by a Permanent Global Note have been made:

| Date of Exchange | Principal Amount of Permanent Global Notes Issued in Exchange for a Portion of this Temporary Global Note | Remaining Principal Amount of this Temporary Global Note Following such Exchange | Notation Made by or on Behalf of the Company |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

49

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

Schedule Three

[FORM OF CERTIFICATION TO BE GIVEN
BY EUROCLEAR OR CLEARSTREAM]

CERTIFICATION

GENERAL MOTORS CORPORATION

(the "Company")

% Notes due

(the "Notes")

This is to certify that, based solely on certifications we have received in writing, by electronic transmission from member organizations appearing in our records as persons being entitled to a portion of the principal amount set forth below (our "Member Organizations") substantially to the effect set forth in the Fiscal and Paying Agency Agreement relating to the Notes, as of the date hereof,            principal amount of the above-captioned Notes (i) is owned by persons that are not citizens or residents of the United States, domestic partnerships, domestic corporations or any estate or trust the income of which is subject to United States federal income taxation regardless of its source ("United States persons"), (ii) is owned by United States persons that are (a) foreign branches of United States financial institutions (as defined in U.S. Treasury Regulations Section 1.165-12(c)(1)(iv) ("financial institutions") purchasing for their own account or for resale, or (b) United States persons who acquired the Notes through foreign branches of United States financial institutions and who hold the Notes through such United States financial institutions on the date hereof (and in either case (a) or (b), each such United States financial institution has agreed, on its own behalf or through its agent, that we may advise the Company or the Company's agent that it will comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Internal Revenue Code of 1986, as amended, and the regulations thereunder), or (iii) is owned by United States or foreign financial institutions for purposes of resale during the restricted period (as defined in U.S. Treasury Regulations Section 1.163-5(c)(2)(i)(D)(7)), and to the further effect that United States or foreign financial institutions described in clause (iii) above (whether or not also described in clause (i) or (ii)) have certified that they have not acquired the Notes for purposes of resale directly or indirectly to a United States person or to a person within the United States. Any such certification by electronic transmission satisfies the requirements set forth in the United States Treasury Regulations Section 1.163-5(c)(2)(i)(D)(3)(ii). We will retain all certifications from our member organizations for the period specified in the United States Treasury Regulations Section 1.163-5(c)(2)(i)(D)(3)(i) (C). As used herein, "United States" means the United States of America (including the States and the District of Columbia) and its possessions (including the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands).

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007699

We further certify (i) that we are not making available herewith for exchange (or, if relevant, exercise of any rights or collection of any interest) any portion of the Global Note excepted in such Member Organization certifications and (ii) that as of the date hereof we have not received any notification from any of our Member Organizations to the effect that the statements made by such Member Organizations with respect to any portion of the part submitted herewith for exchange (or, if relevant, exercise of any rights or collection of any interest) are no longer true and cannot be relied upon as of the date hereof.

We understand that this certification is required in connection with certain securities and tax laws of the United States. In connection therewith, if administrative or legal proceedings are commenced or threatened in connection with which this certification is or would be relevant, we irrevocably authorize you to produce this certification to any interested party in such proceedings.

Dated:          , 200    *

Yours faithfully,

[EUROCLEAR BANK S.A./NV,
as operator of the Euroclear System]

or

[CLEARSTREAM]

By: _____

———————
*    [To be dated no earlier than the Exchange Date as set forth in the Fiscal and Paying Agency Agreement relating to the Notes.]

51

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007700

CERTIFICATE "A"

[FORM OF PARTICIPANT CERTIFICATION INCORPORATED
BY REFERENCE TO A CERTIFICATION INSTRUCTION]

CERTIFICATE

GENERAL MOTORS CORPORATION

% Notes due

(the "Notes")

This is to certify that as of the date hereof, and except as set forth below, the above-captioned Notes held by you for our account (i) are owned by person(s) that are not citizens or residents of the United States, domestic partnerships, domestic corporations or any estate or trust the income of which is subject to United States federal income taxation regardless of its source ("United States person (s)"), (ii) are owned by United States person(s) that are (a) foreign branches of United States financial institutions (as defined in U.S. Treasury Regulations Section 1.165-12(c)(1)(iv) ("financial institutions") purchasing for their own account or for resale, or (b) United States person(s) who acquired the Notes through foreign branches of United States financial institutions and who hold the Notes through such United States financial institutions on the date hereof (and in either case (a) or (b), each such United States financial institution hereby agrees, on its own behalf or through its agent, that you may advise the Company or the Company's agent that it will comply with the requirements of Section 165(j)(3)(A), (B) or (C) of the Internal Revenue Code of 1986, as amended, and the regulations thereunder), or (iii) are owned by United States or foreign financial institution(s) for purposes of resale during the restricted period (as defined in U.S. Treasury Regulations Section 1.163-5(c)(2)(i)(D)(7)), and in addition if the owner of the Notes is a United States or foreign financial institution described in clause (iii) above (whether or not also described in clause (i) or (ii)), this is to further certify that such financial institution has not acquired the Notes for purposes of resale directly or indirectly to a United States person or to a person within the United States.

As used herein, "United States" means the United States of America (including the States and the District of Columbia) and its possessions (including the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands).

We undertake to advise you promptly by facsimile on or prior to the date on which you intend to submit your certification relating to the Notes held by you for our account to the Fiscal Agent under the Fiscal and Paying Agency Agreement relating to the Notes in accordance with your Operating Procedures if any applicable statement herein is not correct on such date, and in the absence of any such notification it may be assumed that this certification applies as of such date.

52

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007701

This certification excepts and does not relate to [currency amount] of such interest in the above Notes in respect of which we are not able to certify and as to which we understand exchange and delivery of Definitive Notes (or, if relevant, exercise of any rights or collection of any interest) cannot be made until we do so certify.

We understand that this certification is required in connection with certain securities and tax laws of the United States and other jurisdictions. In connection therewith, if administrative or legal proceedings are commenced or threatened in connection with which this certification is or would be relevant, we irrevocably authorize you to produce this certification to any interested party in such proceedings.

Dated:      , 200   *

Name of Person Making Certification

By: _____

* To be dated no earlier than 15 days prior to the Certification Date.

53

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

PART II

FORM OF PERMANENT GLOBAL NOTE

Common Code No.:
ISIN No.:

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND MAY NOT BE OFFERED OR SOLD DIRECTLY OR INDIRECTLY IN THE UNITED STATES OF AMERICA (INCLUDING THE STATES AND THE DISTRICT OF COLUMBIA), ITS POSSESSIONS, ITS TERRITORIES OR OTHER AREAS SUBJECT TO ITS JURISDICTION (THE "UNITED STATES") OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, ANY CITIZEN OR RESIDENT OF THE UNITED STATES, ANY CORPORATION, PARTNERSHIP OR OTHER ENTITY CREATED OR ORGANIZED IN OR UNDER THE LAWS OF THE UNITED STATES OR ANY POLITICAL SUBDIVISION THEREOF OR THEREIN, AN ESTATE THE INCOME OF WHICH IS SUBJECT TO UNITED STATES FEDERAL INCOME TAXATION REGARDLESS OF ITS SOURCE OR A TRUST IF BOTH A COURT WITHIN THE UNITED STATES IS ABLE TO EXERCISE PRIMARY SUPERVISION OVER ITS ADMINISTRATION AND ONE OR MORE UNITED STATES PERSONS HAVE THE AUTHORITY TO CONTROL ALL OF ITS SUBSTANTIAL DECISIONS OR A TRUST THAT HAS MADE A VALID ELECTION TO BE TREATED AS A DOMESTIC TRUST FOR UNITED STATES FEDERAL INCOME TAX PURPOSES ("UNITED STATES PERSONS"); PROVIDED, HOWEVER, THAT THE TERM "UNITED STATES PERSON" SHALL NOT INCLUDE A BRANCH OR AGENCY OF A UNITED STATES BANK OR INSURANCE COMPANY THAT IS OPERATING OUTSIDE THE UNITED STATES FOR VALID BUSINESS REASONS AS A LOCALLY REGULATED BRANCH OR INSURANCE BUSINESS AND NOT SOLELY FOR THE PURPOSE OF INVESTING IN SECURITIES NOT REGISTERED UNDER THE SECURITIES ACT.

ANY UNITED STATES PERSON WHO HOLDS THIS OBLIGATION WILL BE SUBJECT TO LIMITATIONS UNDER THE UNITED STATES INCOME TAX LAWS, INCLUDING THE LIMITATIONS PROVIDED IN SECTION 165(j) AND 1287 (a) OF THE INTERNAL REVENUE CODE

THIS NOTE IS A PERMANENT GLOBAL NOTE WITHOUT COUPONS, EXCHANGEABLE FOR DEFINITIVE NOTES WITH COUPONS AT THE MAIN OFFICE OF THE FISCAL AGENT (AS DEFINED HEREIN) IN LONDON. THE RIGHTS ATTACHING TO THIS PERMANENT GLOBAL NOTE, AND THE CONDITIONS AND PROCEDURES GOVERNING ITS EXCHANGE FOR DEFINITIVE NOTES, ARE AS SPECIFIED IN THE FISCAL AND PAYING AGENCY AGREEMENT (AS DEFINED HEREIN).

54

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007703

NEITHER THE HOLDER NOR THE BENEFICIAL OWNERS OF THIS GLOBAL NOTE SHALL BE ENTITLED TO RECEIVE PAYMENT OF INTEREST HEREON EXCEPT PURSUANT TO THE PROVISIONS HEREOF.

55

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

GENERAL MOTORS CORPORATION

(incorporated in the State of Delaware, United States of America)

PERMANENT GLOBAL NOTE

representing

% NOTES DUE

This Note is a Permanent Global Note in respect of a duly authorized issue of % Notes Due          (the "Notes") of General Motors Corporation (the "Company"), limited to the aggregate principal amount of          Hundred Million Euros (€          ).

This Permanent Global Note is issued subject to, and with the benefit of, the Conditions and a Fiscal and Paying Agency Agreement (as amended from time to time in accordance with its terms, the "Fiscal and Paying Agency Agreement") dated July 3, 2003 and made among the Company, Deutsche Bank AG London (the "Fiscal Agent") and the Paying Agent named therein (the "Paying Agent").

References herein to the Conditions shall be to the Terms and Conditions of Notes as set out in Schedule 1 and 2 to the Fiscal and Paying Agency Agreement as amended by the information set forth on the face of this Note and, in the event of any conflict between the provisions of the Conditions and the information set forth on the face of this Note, the latter will prevail.

For value received, the Company, subject to and in accordance with the Conditions, promises to pay to the bearer hereof on the Maturity Date, or on such earlier date as the Notes may become due and repayable in accordance with the Conditions, the principal sum of          Euros (€          ) and to pay interest annually [    ] of each year from the date of issuance or the later date to which interest has been paid or provided for at the rate of [    ]% per annum in arrears on the principal amount of the Notes represented by this Permanent Global Note, calculated and payable as provided in the Conditions together with any such sums payable under the Conditions, upon presentation and, at maturity, surrender of this Global Note at the offices of the Fiscal Agent at Winchester House, 1 Great Winchester Street, London EC2N 2DB, England or at the offices of any of the Paying Agents located outside the United States from time to time appointed by the Company in respect of the Notes. On any payment of interest being made details of such payment shall be entered by or on behalf of the Company in Schedule One hereto and the relevant space in Schedule One hereto recording such payment shall be signed by or on behalf of the Company. On any redemption and cancellation of any of the Notes represented by this Global Note, details of such redemption or purchase and cancellation shall be entered by or on behalf of the Company in Schedule Two hereto and the relevant space in Schedule Two hereto recording any such redemption and cancellation shall be signed by or on behalf of the Company. Upon any such redemption or purchase and cancellation the principal amount of this Global Note and the Notes represented by this Global Note shall be reduced by the principal amount so redeemed or purchased and canceled.

56

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007705

The Notes represented by this Permanent Global Note were originally represented by a Temporary Global Note. Unless such Temporary Global Note was exchanged in whole on the issue hereof, such Temporary Global Note may be further exchanged, on the terms and conditions set out therein, for this Permanent Global Note. If any such exchange occurs following the issue hereof, the Company or its Fiscal Agent shall endorse Schedule Two hereto to reflect the increase in the aggregate principal amount of this Permanent Global Note due to each such exchange, whereupon the principal amount hereof shall be increased for all purposes by the amount so exchanged and endorsed.

This Permanent Global Note may be exchanged (free of charge) in whole but not in part, under certain circumstances as set forth in the Conditions. Subject as aforesaid and to at least 45 days' written notice being given to the Fiscal Agent by Euroclear S.A./N.V., as operator of the Euroclear System or by Clearstream, this exchange will be made upon presentation of this Permanent Global Note by the bearer hereof on any day on which banks are open for business in London at the offices of the Fiscal Agent at the address aforesaid.

Until the exchange of the whole of this Permanent Global Note as aforesaid, the bearer hereof shall in all respects be entitled to the same benefits as if he were the bearer of Definitive Notes and Coupons in the form set out in Parts III and IV respectively of Schedule 3 to the Fiscal and Paying Agency Agreement.

Upon exchange in full of the Permanent Global Note for Definitive Notes, the Permanent Global Note shall become void; provided, however, that if the Company does not perform or comply with any one or more of its obligations under any Definitive Notes, then any right or remedy relating in any way to the obligation(s) in question may be exercised or pursued on the basis of the Permanent Global Note despite its stated cancellation after its exchange in full, as an alternative, or in addition, to the Definitive Notes (or the Coupons appertaining to them as appropriate).

The Company may deem and treat the bearer hereof as the absolute owner of this Permanent Global Note for all purposes (notwithstanding any notice to the contrary and whether or not this Permanent Global Note shall be overdue and notwithstanding any notice of ownership or writing hereon or notice of any previous loss or theft or trust or other interest herein).

Payment of principal, interest and Additional Amounts (if any) on this Global Note will be made in Euros.

This Permanent Global Note shall be governed by, and shall be construed in accordance with, the laws of the State of New York, United States of America, without giving effect to the principles of conflicts of law.

Title to this Permanent Global Note shall pass by delivery. This Permanent Global Note shall not be valid or obligatory until the Certificate of Authentication thereon shall have been duly signed by the Fiscal Agent acting in accordance with the Fiscal and Paying Agency Agreement.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007706

IN WITNESS whereof the Company has caused this Permanent Global Note to be duly executed on its behalf.

GENERAL MOTORS CORPORATION

By: _____

Name:

Duly Authorized Officer

Dated: July    , 2003

58

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007707

CERTIFICATE OF AUTHENTICATION

This is the Permanent Global Note described in the within-mentioned Fiscal and Paying Agency Agreement.

DEUTSCHE BANK AG LONDON,
    as Fiscal Agent without warranty, recourse or
    liability

By: _____

Name:

Title:

59

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007708

Schedule One

INTEREST PAYMENTS

| Interest on Payment Date | Date of Payment | Total Amount of Interest Payable | Amount of Interest Paid | Confirmation of Payment by or on Behalf of Company |
|---|---|---|---|---|
| First | | | | |
| Second | | | | |
| Third | | | | |
| Fourth | | | | |
| Fifth | | | | |

60

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007709

Schedule Two

SCHEDULE OF EXCHANGES
FOR NOTES REPRESENTED BY A TEMPORARY GLOBAL NOTE

The following exchanges of a part of a Temporary Global Note for Notes represented by this Permanent Global Note have been made:

| Date of Exchange | Principal Amount of Permanent Global Notes Issued in Exchange for a Portion of this Temporary Global Note | Remaining Principal Amount of this Temporary Global Note Following such Exchange | Notation Made by or on Behalf of the Company |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

61

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

PART III

FORM OF DEFINITIVE NOTE

THIS NOTE HAS NOT BEEN AND WILL NOT BE REGISTERED UNDER THE UNITED STATES SECURITIES ACT OF 1933, AS AMENDED (THE "SECURITIES ACT") AND MAY NOT BE OFFERED OR SOLD DIRECTLY OR INDIRECTLY IN THE UNITED STATES OF AMERICA (INCLUDING THE STATES AND THE DISTRICT OF COLUMBIA), ITS POSSESSIONS, ITS TERRITORIES OR OTHER AREAS SUBJECT TO ITS JURISDICTION (THE "UNITED STATES") OR TO, OR FOR THE ACCOUNT OR BENEFIT OF, ANY CITIZEN OR RESIDENT OF THE UNITED STATES, ANY CORPORATION, PARTNERSHIP OR OTHER ENTITY CREATED OR ORGANIZED IN OR UNDER THE LAWS OF THE UNITED STATES OR ANY POLITICAL SUBDIVISION THEREOF OR THEREIN, AN ESTATE THE INCOME OF WHICH IS SUBJECT TO UNITED STATES FEDERAL INCOME TAXATION REGARDLESS OF ITS SOURCE OR A TRUST IF BOTH A COURT WITHIN THE UNITED STATES IS ABLE TO EXERCISE PRIMARY SUPERVISION OVER ITS ADMINISTRATION AND ONE OR MORE UNITED STATES PERSONS HAVE THE AUTHORITY TO CONTROL ALL OF ITS SUBSTANTIAL DECISIONS OR A TRUST THAT HAS MADE A VALID ELECTION TO BE TREATED AS A DOMESTIC TRUST FOR UNITED STATES FEDERAL INCOME TAX PURPOSES ("UNITED STATES PERSONS"); PROVIDED, HOWEVER, THAT THE TERM "UNITED STATES PERSON" SHALL NOT INCLUDE A BRANCH OR AGENCY OF A UNITED STATES BANK OR INSURANCE COMPANY THAT IS OPERATING OUTSIDE THE UNITED STATES FOR VALID BUSINESS REASONS AS A LOCALLY REGULATED BRANCH OR INSURANCE BUSINESS AND NOT SOLELY FOR THE PURPOSE OF INVESTING IN SECURITIES NOT REGISTERED UNDER THE SECURITIES ACT.

ANY UNITED STATES PERSON WHO HOLDS THIS OBLIGATION WILL BE SUBJECT TO LIMITATIONS UNDER THE UNITED STATES INCOME TAX LAWS, INCLUDING THE LIMITATIONS PROVIDED IN SECTIONS 165(j) AND 1287 (a) OF THE INTERNAL REVENUE CODE.

€1,000/€10,000/€100,000

62

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007711

## GENERAL MOTORS CORPORATION

(incorporated under the laws of the State of Delaware, United States of America)

€

% NOTES DUE

GENERAL MOTORS CORPORATION, a Delaware corporation (the "Company"), for value received, hereby promises to pay to the bearer on [Maturity Date], upon surrender hereof, the principal amount of

**One Thousand/Ten Thousand/One Hundred Thousand Euros**
€1,000/€10,000/€100,000

and to pay interest at the rate of     % per annum in arrears from the date of issuance or the later date to which interest has been paid or provided for on said principal amount annually on each         , beginning         , 2004, until payment of said principal amount has been made or duly provided for, but only, in the case of interest due on or before maturity, upon presentation and surrender of interest coupons attached hereto (the "Coupons") as they shall severally mature. Such payments shall be made in Euros.

Reference is made to the further provisions set forth under Terms and Conditions of the Note endorsed on the reverse hereof. Such further provisions shall for all purposes have the same effect as though fully set forth at this place.

Holders of this Note and holders of the Coupons appertaining hereto are deemed to have notice of all of the provisions of the Fiscal and Paying Agency Agreement applicable to them. Copies of the Fiscal and Paying Agency Agreement are available for inspection at the specified offices of the Fiscal Agent.

Title to this Note and to any Coupon appertaining hereto shall pass by delivery. The Company may treat the bearer hereof as the absolute owner of this Note for all purposes (notwithstanding any notice to the contrary and whether or not this Note shall be overdue and notwithstanding any notice of ownership or writing hereon or notice of any previous loss or theft or trust or other interest herein).

Neither this Note nor any Coupon shall be valid or become obligatory for any purpose until the Certificate of Authentication hereon shall have been duly signed by the Fiscal Agent acting in accordance with the Fiscal and Paying Agency Agreement.

63

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007712

IN WITNESS whereof the Company has caused this Note to be duly executed on its behalf.

GENERAL MOTORS CORPORATION

By: _____

Name:

Duly Authorized Officer

Dated: July      , 2003

64

## CERTIFICATE OF AUTHENTICATION

This is one of the Notes described in the within-mentioned Fiscal and Paying Agency Agreement.

DEUTSCHE BANK AG LONDON,
    as Fiscal Agent without warranty, recourse or
    liability

By: _____

Name:

Title:

65

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

PART IV

FORM OF COUPON
[Face of Coupon]

ANY UNITED STATES PERSON WHO HOLDS THIS OBLIGATION WILL BE SUBJECT TO LIMITATIONS UNDER THE UNITED STATES TAX LAWS, INCLUDING THE LIMITATIONS PROVIDED IN SECTIONS 165(j) AND 1287(a) OF THE INTERNAL REVENUE CODE.

### GENERAL MOTORS CORPORATION

*(incorporated under the laws of the State of Delaware, United States of America)*

€

% NOTES DUE

Part A

| This Coupon is payable to bearer, separately negotiable and subject to the Terms and Conditions of the said Notes. | Coupon for<br>[       ]<br>due on<br>[       ] [   ] 20   ] |
|---|---|

Payment of this Coupon will be made upon presentation and surrender hereof at the offices of such Paying Agents as General Motors Corporation shall from time to time appoint. The initial Paying Agents are set out on the reverse hereof.

GENERAL MOTORS CORPORATION

By: _____
Name:
Title:

66

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007715

(Reverse of Coupon)

FISCAL AGENT AND PRINCIPAL PAYING AGENT

Duetsche Bank AG London.
Winchester House
1 Great Winchester Street
London EC2N 2DB
England

PAYING AGENTS

Banque Générale du Luxembourg S.A.
50 Avenue J.F. Kennedy
L-2951 Luxembourg

and/or such other or further Fiscal Agent and other or further Paying Agents and/or specified offices as may from time to time be duly appointed by the Company and notice of which has been given to the Noteholders.

67

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

SCHEDULE 4

PROVISIONS FOR MEETINGS OF NOTEHOLDERS

1. As used in this Schedule the following expressions shall have the following meanings unless the context otherwise requires:

(i) "voting certificate" shall mean an English language certificate issued by a Paying Agent and dated, in which it is stated:

(a) that on the date thereof Notes (not being Notes in respect of which a block voting instruction has been issued and is outstanding in respect of the meeting specified in such voting certificate and any adjourned such meeting) bearing specified serial numbers were deposited with such Paying Agent or (to the satisfaction of such Paying Agent) were held to its order or under its control and that no such Notes will cease to be so deposited or held until the first to occur of:

(1) the conclusion of the meeting specified in such certificate, or, if applicable, any adjourned such meeting; and

(2) the surrender of the certificate to the Paying Agent who issued the same; and

(b) that the bearer thereof is entitled to attend and vote at such meeting and any adjourned such meeting in respect of the Notes represented by such certificate;

(ii) "block voting instruction" shall mean an English language document issued by a Paying Agent and dated, in which:

(a) it is certified that Notes (not being Notes in respect of which a voting certificate has been issued and is outstanding in respect of the meeting specified in such block voting instruction and any adjourned such meeting) have been deposited with such Paying Agent or (to the satisfaction of such Paying Agent) were held to its order or under its control and that no such Notes will cease to be so deposited or held until the first to occur of:

(1) the conclusion of the meeting specified in such document or, if applicable, any adjourned such meeting; and

(2) the surrender to the Paying Agent who issued the same; and not less than 48 hours before the time for which such meeting or any adjourned such meeting is convened of the receipt issued by such Paying Agent in respect of each such deposited Note which is to be released or (as the case may require) the Note or Notes ceasing with the agreement of the Paying Agent to be held to its order or under its control and the giving of notice by the Paying Agent to the Company in accordance with paragraph 17 below of the necessary amendment to the block voting instruction;

68

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007717

(b) it is certified that each holder of such Notes has instructed such Paying Agent that the vote(s) attributable to the Note or Notes so deposited or held should be cast in a particular way in relation to the resolution or resolutions to be put to such meeting or any adjourned such meeting and that all such instructions are during the period commencing 48 hours prior to the time for which such meeting or any adjourned such meeting is convened and ending at the conclusion or adjournment thereof neither revocable nor capable of amendment;

(c) the total number and the serial numbers of the Notes so deposited or held are listed distinguishing with regard to each such resolution between those in respect of which instructions have been given as aforesaid that the votes attributable thereto should be cast in favor of the resolution and those in respect of which instructions have been so given that the votes attributable thereto should be cast against the resolution; and

(d) one or more persons named in such document (each hereinafter called a "proxy") is or are authorized and instructed by such Paying Agent to cast the votes attributable to the Notes so listed in accordance with the instructions referred to in sub-paragraph (c) above as set out in such document.

The holder of any voting certificate or the proxies named in any block voting instruction shall for all purposes in connection with the relevant meeting or adjourned meeting of Noteholders be deemed to be the holder of the Notes to which such voting certificate or block voting instruction relates and the Paying Agent with which such Notes have been deposited or the person holding the same to the order or under the control of such Paying Agent shall be deemed for such purposes not to be the holder of those Notes.

2. The Company may at any time and, upon a requisition in writing of Noteholders holding not less than one tenth of the principal amount of the 2013 Notes or the 2033 Notes for the time being outstanding, convene a meeting of the applicable Noteholders and if the Company is in default for a period of seven days in convening such a meeting the same may be convened by the requisitionists. Whenever the Company is about to convene any such meeting they shall forthwith give notice in writing to the Fiscal Agent of the day, time and place thereof and of the nature of the business to be transacted thereat.

3. At least 21 days' notice (exclusive of the day on which the notice is given and the day on which the meeting is held) specifying the place, day and hour of meeting shall be given to the Noteholders prior to any meeting of the Noteholders in the manner provided by Condition 12. Such notice shall state generally the nature of the business to be transacted at the meeting thereby convened but it shall not be necessary to specify in such notice the terms of any resolution to be proposed. Such notice shall include a statement to the effect that Notes may be deposited with Paying Agents for the purpose of obtaining voting certificates or appointing proxies not less than 1 Business Day before the time fixed for the meeting or, in the case of corporations, may appoint representatives by resolution of their directors or other governing body. A copy of the notice shall be sent by overnight courier to the Company (unless the meeting is convened by the Company).

69

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007718

4. Some person (who need not be a Noteholder) nominated in writing by the Company shall be entitled to take the chair at every such meeting but if no such nomination is made or if at any meeting the person nominated shall not be present within fifteen minutes after the time appointed for holding the meeting the Noteholders present shall choose one of their number to be Chairman.

5. At any such meeting one or more persons present holding the 2013 Notes or the 2033 Notes or voting certificates or being proxies and holding or representing in the aggregate not less than one twentieth of the principal amount of the 2013 Notes or the 2033 Notes shall form a quorum for the transaction of business and no business (other than choosing of a Chairman) shall be transacted at any meeting unless the requisite quorum be present at the commencement of business. An "Extraordinary Resolution" refers to any resolution affecting the interests of the Noteholders, including modification of the Conditions, the 2013 Notes or the 2033 Notes, the Coupons or the Fiscal and Paying Agency Agreement. The quorum at any such meeting for passing an Extraordinary Resolution shall (subject as provided below) be one or more persons present holding Notes or voting certificates or being proxies and holding or representing in the aggregate a clear majority in principal amount of the 2013 Notes or the 2033 Notes (as applicable) for the time being outstanding provided that with respect to any of the following matters:

(i) modification of the Maturity Date of the 2013 Notes or the 2033 Notes or reduction or cancellation of the amount of principal payable upon maturity;

(ii) reduction of the amount payable or modification of the payment date in respect of any Coupons or variation of calculating the rate of interest in respect of the 2013 Notes or the 2033 Notes;

(iii) modification of the currency in which payments under the 2013 Notes or the 2033 Notes and/or the Coupons appertaining thereto are to be made;

(iv) modification of the majority required to pass an Extraordinary Resolution;

(v) alteration of this proviso or the proviso to paragraph 6 below;

the quorum for passing shall be one or more persons present holding Notes or voting certificates or being proxies and holding or representing in the aggregate not less than two-thirds, or at any adjourned such meeting not less than a clear majority, of the principal amount of the 2013 Notes or the 2033 Notes (as applicable) for the time being outstanding. An Extraordinary Resolution passed at any meeting of the holders of Notes will be binding on all holders of the 2013 Notes or the 2033 Notes, as the case may be, whether or not they are present at the meeting, and on all holders of Coupons appertaining to the 2013 Notes or the 2033 Notes (as applicable). Except as otherwise provided herein, the quorum at any meeting for passing any matters other than Extraordinary Resolutions shall be one or more persons present holding or representing in the aggregate not less than a clear majority of the principal amount of the 2013 Notes or the 2033 Notes (as applicable) represented at such meeting.

70

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007719

6. If within fifteen minutes after the time appointed for any such meeting a quorum is not present the meeting shall if convened upon the requisition of Noteholders be dissolved. In any other case it shall stand adjourned to the same day in the next week (or if such is a public holiday the next succeeding Business Day) at the same time and place (except in the case of a meeting at which an Extraordinary Resolution is to be proposed in which case it shall stand adjourned for such period being not less than 14 days nor more than 42 days, and at such place as may be appointed by the Chairman and approved by the Fiscal Agent) and at such adjourned meeting one or more persons present holding Notes or voting certificates or being proxies (whatever the principal amount of the Notes so held or represented by them) shall (subject as provided below) form a quorum and shall (subject as provided below) have power to pass any Extraordinary Resolution or other resolution and to decide upon all matters which could properly have been dealt with at the meeting from which the adjournment took place had the requisite quorum been present provided that at any adjourned meeting the business of which includes any of the matters specified in the proviso to paragraph 5 above the quorum for passing on Extraordinary Resolution shall be one or more persons present holding Notes or voting certificates or being proxies and holding or representing in the aggregate not less than a clear majority of principal amount of the 2013 Notes or the 2033 Notes (as applicable) for the time being outstanding.

7. Notice of any adjourned meeting at which an Extraordinary Resolution is to be submitted shall be given in the same manner as notice of an original meeting but as if 10 were substituted for 21 in paragraph 3 above and such notice shall (except in cases where the proviso to paragraph 6 above shall apply when it shall state the relevant quorum) state that two or more persons present holding Notes or voting certificates or being proxies at the adjourned meeting whatever the principal amount of the Notes held or represented by them will form a quorum. Subject as aforesaid it shall not be necessary to give any notice of an adjourned meeting.

8. Every question, including any Extraordinary Resolution, submitted to a meeting shall be decided in the first instance by a show of hands and in case of equality of votes the Chairman shall both on a show of hands and on a poll have a casting vote in addition to the vote or votes (if any) to which he may be entitled as a Noteholder or as a holder of a voting certificate or as a proxy.

9. At any meeting unless a poll is (before or on the declaration of the result of the show of hands) demanded by the Chairman, the Company or by two or more persons present holding Notes or voting certificates or being proxies and holding or representing in the aggregate not less than one fiftieth part of the principal amount of the 2013 Notes or the 2033 Notes (as applicable) then outstanding a declaration by the Chairman that a resolution has been carried or carried by a particular majority or lost or not carried by a particular majority shall be conclusive evidence of the fact without proof of the number or proportion of the votes recorded in favor or against such resolution.

71

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007720

10. Subject to paragraph 12 below, if at any such meeting a poll is so demanded it shall be taken in such manner and subject as hereinafter provided either at once or after an adjournment as the Chairman directs and the result of such poll shall be deemed to be the resolution of the meeting at which the poll was demanded as at the date of the taking of the poll. The demand for a poll shall not prevent the continuance of the meeting for the transaction of any business other than the motion on which the poll has been demanded.

11. The Chairman may with the consent of (and shall if directed by) any such meeting adjourn the same from time to time and from place to place but no business shall be transacted at any adjourned meeting except business which might lawfully (but for lack of a required quorum) have been transacted at the meeting from which the adjournment took place.

12. Any poll demanded at any such meeting on the election of a Chairman or on any question of adjournment shall be taken at the meeting without adjournment.

13. Any director or officer of the Company and their lawyers and financial advisers may attend and speak at any meeting. Save as aforesaid, but without prejudice to the proviso to the definition of "outstanding" in Clause 1 of the Fiscal and Paying Agency Agreement, no person shall be entitled to attend and speak nor shall any person be entitled to vote at any meeting of the Noteholders or join with others in requisitioning the convening of such a meeting unless he either produces the Note or Notes of which he is the holder or a voting certificate or is a proxy. Neither the Company nor any of its subsidiaries shall be entitled to vote at any meeting in respect of 2013 Notes or 2033 Notes held by it for the benefit of the Company and no other person shall be entitled to vote at any meeting in respect of Notes held by it for the benefit of the Company. Nothing herein contained shall prevent any of the proxies named in any block voting instruction or voting certificate from being a director, officer or representative of or otherwise connected with the Company.

14. Subject as provided in paragraph 13 above, at any meeting:

(a) on a show of hands every person who is present in person and produces a 2013 Note or a 2033 Note or voting certificate or is a proxy shall have one vote; and

(b) on a poll every person who is so present shall have one vote in respect of each minimum integral amount of 2013 Notes or 2033 Notes.

15. The proxies named in any block voting instruction need not be Noteholders.

16. Each block voting instruction together (if so requested by the Company) with proof satisfactory to such Company of its due execution on behalf of the relevant Paying Agent shall be deposited at such place as the Fiscal Agent shall approve not less than 24 hours before the time appointed for holding the meeting or adjourned meeting at which the proxies named in the block voting instruction propose to vote and in default the block voting instruction shall not be treated as valid unless the Chairman of the meeting

72

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007721

decides otherwise before such meeting or adjourned meeting proceeds to business. A notarially certified copy of each block voting instruction shall be deposited with the Fiscal Agent before the commencement of the meeting or adjourned meeting but the Fiscal Agent shall not thereby be obligated to investigate or be concerned with the validity of or the authority of the proxies named in any such block voting instruction.

17. Any vote given in accordance with the terms of a block voting instruction shall be valid notwithstanding the previous revocation or amendment of the block voting instruction or of any of the Noteholders' instructions pursuant to which it was executed provided that no intimation in writing of such revocation or amendment shall have been received from the relevant Paying Agent by the Company at its registered office (or such other place as may have been approved by the Fiscal Agent for the purpose) by the time being 24 hours before the time appointed for holding the meeting or adjourned meeting at which the block voting instruction is to be used.

18. Without limiting the definition of Extraordinary Resolution, the following powers shall be exercisable only by Extraordinary Resolution:

(a) Power to sanction any compromise or arrangement proposed to be made between the Company and the Noteholders and Couponholders or any of them.

(b) Power to sanction any abrogation, modification, compromise or arrangement in respect of the rights of the Noteholders and Couponholders against the Company or against any of its property whether such rights shall arise under these presents, the Notes or the Coupons or otherwise.

(c) Power to assent to any modification of the provisions contained in these presents or the Conditions, the Notes or the Coupons which shall be proposed by the Company.

(d) Power to give any authority or sanction which under the provisions of these presents or the Notes is required to be given by Extraordinary Resolution.

(e) Power to appoint any persons (whether Noteholders or not) as a committee or committees to represent the interests of the Noteholders and to confer upon such committee or committees any powers or discretions which the Noteholders could themselves exercise by Extraordinary Resolution.

(f) Power to sanction any agreement or proposal for the exchange or sale of the Notes for, or as the conversion of the Notes into, or the cancellation of the Notes in consideration of, shares, stock, notes, bonds, debentures, debenture stock and/or other obligations and/or securities of the Company or any other company formed or to be formed, or for or into or in consideration of cash, or partly for or into or in consideration of such shares, stock, notes, bonds, debentures, debenture stock and/or other obligations and/or securities as aforesaid and partly for or into or in consideration of cash.

73

(g) Subject to Condition 10, power to approve the substitution of any entity in place of the Company (or any previous substitute) as the principal debtor in respect of the Notes and the Coupons.

19. Any resolution passed at a meeting of the Noteholders duly convened and held in accordance with these presents shall be binding upon all the Noteholders whether present or not present at such meeting and whether or not voting and upon all Couponholders and each of them shall be bound to give effect thereto accordingly and the passing of any such resolution shall be conclusive evidence that the circumstances justify the passing thereof. Notice of the result of the voting on any resolution duly considered by the Noteholders shall be published in accordance with Condition 12 within 14 days of such result being known provided that the non publication of such notice shall not invalidate such resolution.

Minutes of all resolutions and proceedings at every such meeting as aforesaid shall be made and duly entered in books to be from time to time provided for that purpose by the Company and any such minutes as aforesaid if purporting to be signed by the Chairman of the meeting at which such resolutions were passed or proceedings had shall be conclusive evidence of the matters therein contained and until the contrary is proved every such meeting in respect of the proceedings of which minutes have been made shall be deemed to have been duly held and convened and all resolutions passed or proceedings had thereat to have been duly passed or had.

74

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007723

## SIGNATORIES

The Company

General Motors Corporation
300 Renaissance Center
Detroit, Michigan 48265-2000
United States

Telephone:    313-665-6288
Facsimile:    313-665-6351

The Fiscal Agent

Deutsche Bank AG London
Winchester House
1 Great Winchester Street
London EC2N 2DB
England

Facsimile:    44-20-7547-6149
Attention:    Corporate Trust and Agency Services.

The Paying Agent

Banque Générale du Luxembourg
S.A.
50 Avenue J.F. Kennedy
L-2951 Luxembourg

Telephone:    +352 4242 8068
Facsimile:    +352 4242 2887
Attention:    Documentation, Fiscal and Listing Agencies

75

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007724

Exhibit 4.9

**FISCAL AND PAYING AGENCY AGREEMENT**

among

**General Motors Nova Scotia Finance Company,**

**General Motors Corporation,**

and

**Deutsche Bank Luxembourg S.A.**

and

**Banque Generale du Luxembourg S.A.**

Dated as of July 10, 2003

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

## FISCAL AND PAYING AGENCY AGREEMENT

THIS FISCAL AND PAYING AGENCY AGREEMENT is made the 10th day of July 2003, among:

(1)   General Motors Nova Scotia Finance Company of 1908 Colonel Sam Drive, Oshawa, Ontario L1H 8P7, Canada (the "Company");

(2)   General Motors Corporation of 300 Renaissance Center, Detroit, Michigan 48265-3000 (the "Guarantor");

(3)   Deutsche Bank Luxembourg S.A. (the "Fiscal Agent") of 2 Boulevard Konrad Adenauer, L-1115 Luxembourg (which expression shall include any successor fiscal agent appointed in accordance with Clause 18); and

(4)   Banque Generale du Luxembourg S.A. of 50 Avenue J.F. Kennedy, L-2951 Luxembourg (together with the Fiscal Agent, the "Paying Agents," which expression shall include any additional or successor Paying Agent appointed in accordance with Clause 20).

IT IS HEREBY AGREED as follows:

1.   Definitions and Interpretation

   (a) In this Agreement, unless there is something in the subject or context inconsistent therewith the expressions used herein shall have the same meanings as in the Subscription Agreement.

   (b) The following expressions shall have the following meanings:

"**Month**" means calendar month;

"**Noteholder**" means the person in whose name a Note is registered in the Note Register (and the expressions "**Noteholders**," "**holder of Notes**" and related expressions shall be construed accordingly);

"**outstanding**" means in relation to the Notes, all the Notes issued other than (i) those which have been redeemed in full in accordance with the Conditions, (ii) those in respect of which the date for redemption in accordance with the Conditions has occurred and the redemption moneys therefor (including all interest accrued thereon to the date for such redemption) have been duly paid to the Fiscal Agent as provided in this Agreement (and, where appropriate, notice has been given to the Noteholders in accordance with Condition 13) and remain available for payment upon surrender of Notes, (iii) those which have been purchased and cancelled as provided in Condition 6, (iv) those mutilated or defaced Notes which have been surrendered in exchange for replacement Notes pursuant to Condition 14, (v) (for the purpose only of determining how many Notes are outstanding and without prejudice to their status for any other purpose) those Notes alleged to have been lost, stolen or destroyed and in respect of which replacement Notes have been issued pursuant to Condition 14, (vi) Global Notes to the extent that they shall have been duly exchanged for Definitive Notes and Definitive Notes to the

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

extent that they shall have been duly exchanged for other Definitive Notes in accordance with this Agreement and (vii) Global Notes which have become void in accordance with their terms and, provided that for the purpose of the right to attend and vote at any meeting of the Noteholders or any of them, those Notes (if any) which are for the time being held by any person (including but not limited to the Company or any Subsidiary of the Company) for the benefit of the Company or any Subsidiary of the Company shall (unless and until ceasing to be so held) be deemed not to remain outstanding;

"**repay**" shall include "**redeem**" and vice versa and "**repaid**," "**repayable**" and "**repayment**" and "**redeemed**," "**redeemable**" and "**redemption**" shall be construed accordingly; and

"**Subscription Agreement**" means the Subscription Agreement dated July 9,2003 among the Company, the Guarantor and the Managers concerning the purchase of the Notes.

"**United States Person**" has the meaning given to it by the United States Internal Revenue Code of 1986, as amended, and the regulations thereunder.

(c) All references in this Agreement to principal and/or interest or both in respect of the Notes or to any moneys payable by the Company under this Agreement shall be deemed to include (a) a reference to any Additional Amounts which may be payable under Condition 7 and (b) any other amounts which may be payable in respect of the Notes.

(d) Expressions defined in the Conditions shall have the same meanings herein unless otherwise stated.

2.    Appointment of Fiscal Agent and other Paying Agents

(a) The Fiscal Agent is hereby appointed as agent of the Company, upon the terms and subject to the conditions set out below, for

(i) completing, authenticating and issuing Notes;

(ii) paying sums due on Global Notes and Definitive Notes;

(iii) arranging on behalf of the Company for notices to be communicated to the Noteholders in accordance with the Conditions;

(iv) determining the date of completion of distribution of the Notes represented by each Global Note, based upon notification from the Managers and notifying such determination to the Company, the Managers and Euroclear and Clearstream;

(v) ensuring that all necessary action is taken to comply with applicable periodic reporting requirements with respect to the Notes; and

(vi) otherwise fulfilling its duties and obligations as set forth in the Conditions and in this Agreement.

2

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007727

(b) Each Paying Agent is hereby appointed by the Company and the Guarantor as Paying Agent of the Company and the Guarantor, upon the terms and subject to the conditions set out herein, for the purposes of paying sums due on Notes.

### 3.    Issue of Global Notes

(a) Upon the execution and delivery of this Agreement, 2015 Notes in an aggregate principal amount not in excess of £350,000,000 and 2023 Notes in an aggregate principal amount not in excess of £250,000,000 may be executed by the Company and delivered to the Fiscal Agent for authentication, and the Fiscal Agent shall thereupon authenticate and deliver such Notes upon the written order of the Company, signed by any authorized officer of the Company without any further action by the Company. Until a Note has been authenticated it shall have no effect. The Notes shall include the terms and conditions included as Schedule 1 hereto and, if applicable, Schedule 2 hereto.

(b) The Notes initially will be issued in the form of one or more Global Notes in registered form without coupons substantially in the form set forth in Schedule 3 Part I, hereto. The Global Notes shall be signed on behalf of the Company by any authorized officer. The Global Notes shall be authenticated by the Fiscal Agent upon the same conditions, in substantially the same manner and with the same effect as the Definitive Notes. The Fiscal Agent will, upon the order of the Company, deposit the Global Notes with BT Globenet Nominees Limited, as the common depositary (the "Common Depositary") for Euroclear Bank S.A./N.V., as operator of the Euroclear System ("Euroclear"), and Clearstream Banking, societe anonyme ("Clearstream"). The aggregate principal amount of Global Notes may from time to time be decreased by adjustments made on the records of the Fiscal Agent, as custodian for the Common Depositary or its nominee, as hereinafter provided.

### 4.    Issue of Definitive Notes

Upon the occurrence of any event which, pursuant to the Terms and Conditions of the Global Notes, requires the issuance of one or more Definitive Note(s), the Global Notes shall be surrendered to or to the order of the Fiscal Agent against delivery of Definitive Notes. The Definitive Notes shall be in denominations of £1,000, £10,000 or £1 00,000 and in integral multiples of £1,000, printed in accordance with any applicable legal and stock exchange requirements and in or substantially in the form set out in this Agreement.

### 5.    Registration, Transfer and Exchange

The Notes are issuable only in registered form. The Company will cause to be kept at the office or agency to be maintained for the purpose as provided in Clause 6 (the "Registrar"), a register (the "Note Register") in which, subject to such reasonable regulations as it may prescribe, it or its agent will register, and will register the transfer of, Notes as provided in this Clause. For the avoidance of doubt, the Notes registered will include Global Notes and Definitive Notes, to the extent Global Notes have been duly exchanged for Definitive Notes. The name and address of the registered holder of each Note and the principal amount of each Note will be recorded in the Note Register. Such Note Register shall be in written form in the English language or in any other form capable of being converted into such form within a reasonable time. Such Note Register shall be open for inspection by the Fiscal Agent during Business Days.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007728

A Noteholder may register the transfer of a Note only by written application to the Registrar and/or the office of the transfer agent referred to in the last sentence of Clause 6 stating the name and address of the proposed transferee and otherwise complying with the terms of this Agreement. No such registration of transfer shall be deemed effected until, and such transferee shall succeed to the rights of a Noteholder only upon, final acceptance and registration of the transfer by the Registrar in the Note Register. Prior to the final acceptance and registration of any transfer by a Noteholder as provided herein, the Company, the Guarantor, the Fiscal Agent and any agent of any of them shall be entitled to treat the person in whose name the Note is registered as the owner thereof for all purposes, whether or not the Note shall be overdue, and none of the Company, the Guarantor, the Fiscal Agent, or any such agent shall be affected by notice to the contrary. Furthermore, any Noteholder of a Global Note shall, by acceptance of such Global Note, agree that transfers of beneficial interests in such Global Note may be effected only through a book entry system maintained by the Noteholder of such Global Note (or its agent) and that ownership of a beneficial interest in the Global Note shall be required to be reflected in a book entry. At the option of the Noteholder, Notes may be exchanged for other Notes of any authorized denomination and of a like aggregate principal amount, upon surrender of the Notes to be exchanged to the Registrar, accompanied by written instructions to such effect acceptable to the Registrar. When Notes are presented to the Registrar with a request to register the transfer or to exchange them for an equal principal amount of Notes of other authorized denominations, the Registrar shall register the transfer or make the exchange as requested if the requirements for such transactions set forth herein are met. To permit registrations of transfers and exchanges, the Company shall execute and the Fiscal Agent shall authenticate Notes at the Registrar's request.

Upon any exchange of an interest in a Global Note for an interest in a Definitive Note, the Global Note shall be endorsed to reflect the reduction of its principal amount by the aggregate principal amount so exchanged. The Fiscal Agent is hereby authorized on behalf of the Company (i) to endorse or to arrange for the endorsement of the relevant Global Note to reflect the reduction in the principal amount represented thereby by the amount so exchanged, and sign in the relevant space on the relevant Global Note recording such exchange and (ii) in the case of a total exchange, to cancel or arrange for the cancellation of the relevant Global Note.

Every Note presented or surrendered for registration of transfer or for exchange shall (if so required by the Company or the Registrar) be duly endorsed, or be accompanied by a written instrument of transfer duly executed, by the Noteholder thereof or his attorney duly authorized in writing in a form satisfactory to the Company and the Registrar and, in connection with any such issuance of a Definitive Note, accompanied by, if applicable, a certification by the transferee on Internal Revenue Service Form W-8BEN or Form W-8ECI, as applicable, under penalties of perjury that it is not a United States Person, and/or such other certification as may then be required under United States tax laws to evidence the transferee's entitlement to an exemption from United States federal withholding tax. Upon registration of any such issuance of a Definitive Note for which the transferee has not provided such tax certification, the Registrar shall promptly notify the Company of any such issuance and provide such information as the Company shall request so that it may comply with its obligations under Condition 8 and United States tax laws.

4

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007729

No holder of a Definitive Note may require the transfer of a Note to be registered during the period of 15 days ending on the due date for any payment of the Redemption Price of the Notes (as defined in Condition 6).

The Company or the Registrar may require payment from a Noteholder of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection with any exchange or registration of transfer of Notes. No service charge to any Noteholder shall be made for any such transaction.

All Notes issued upon any transfer or exchange of Notes shall be valid obligations of the Company, evidencing the same debt and entitled to the same benefits under this Agreement, as the Notes surrendered upon such transfer or exchange.

6.  Offices for Payments, Etc.

So long as any of the Notes remain outstanding, the Company will maintain in the City of London or Luxembourg, the following: (a) an office or agency where the Notes may be presented for payment, (b) an office or agency where the Notes may be presented for registration of transfer and for exchange as provided in this Agreement and (c) an office or agency where notices and demands to or upon the Company in respect of the Notes or of this Agreement may be served. The Company will give to the Fiscal Agent written notice of the location of any such office or agency and of any change of location thereof. The Company hereby initially designates the Luxembourg office of the Fiscal Agent as the office or agency for each such purpose. In case the Company shall fail to maintain any such office or agency or shall fail to give such notice of the location or of any change in the location thereof, presentations and demands may be made and notices may be served at the Luxembourg office of the Fiscal Agent. For so long as the Notes are listed on the Luxembourg Stock Exchange and the rules of the Luxembourg Stock Exchange so require, the Company shall appoint and maintain a paying and transfer agent in Luxembourg, who shall initially be the Paying Agent.

7.  Payment

(a) The Company shall, on each date on which any payment in respect of any of the Notes becomes due, transfer to an account specified by the Fiscal Agent such amount in Pounds Sterling as shall be sufficient for the purposes of such payment in funds settled through such payment system as the Fiscal Agent may designate.

(b) The Company shall ensure that no later than two Business Days immediately preceding the date on which any payment is to be made to the Fiscal Agent pursuant to subclause (a) above, the Fiscal Agent shall receive a copy of an irrevocable payment instruction to the bank through which the payment is to be made. For purposes of this Agreement, "Business Day" means (a) a day other than a Saturday or Sunday that is not a day on which banks and foreign exchange markets in Toronto, London, New York City and, in the case of a payment of principal, the place where such Note is presented for payment to a Paying Agent are generally authorized or obligated by law or executive order to close and (b) not a day on which the Trans-European Automated Real-Time Gross Settlement Express Transfer System ("TARGET") is closed.

5

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007730

(c) Subject to the Fiscal Agent or, as the case may be, the relevant other Paying Agents, being satisfied in its sole discretion that payment will be duly made as provided in subclause (a) above or otherwise, the Fiscal Agent and each other Paying Agent shall payor cause to be paid on behalf of the Company the amounts of principal and interest due on the Notes in the manner provided in the Conditions. If any payment provided for in subclause (a) above is made late but otherwise in accordance with the provisions of this Agreement, the Fiscal Agent and each other Paying Agent shall nevertheless make payments in respect of the Notes as aforesaid following receipt by it of such payment from the Company or the Guarantor, as the case may be.

(d) If for any reason the Fiscal Agent considers in its sole discretion (exercised in good faith) that the amounts to be received by the Fiscal Agent pursuant to subclause (a) above will be, or the amounts actually received by it pursuant thereto are, insufficient to satisfy all claims in respect of all payments then falling due on the Notes, neither the Fiscal Agent nor any other Paying Agent shall be obliged to pay any such claims until the Fiscal Agent has received the full amount of all moneys due and payable in respect of such Notes.

(e) Without prejudice to subclauses (c) and (d) above, and without any requirement to do so, if the Fiscal Agent pays any amounts to the Noteholders or to any other Paying Agent at a time when it has not received payment in full in respect of such Notes (the excess of the amounts so paid over the amounts so received being the "Shortfall"), the Company shall, in addition to paying amounts due under subclause (a) above, pay to the Fiscal Agent on demand interest at a rate determined by the Fiscal Agent to represent its cost of funding the Shortfall for the relevant period (with proof thereof if requested by the Company) (or the unreimbursed portion thereof) until the receipt in full by the Fiscal Agent of the Shortfall.

(f) The Fiscal Agent shall on demand promptly reimburse each Paying Agent for payments in respect of Notes properly made by such Paying Agent in accordance with this Agreement and the Notes unless the Fiscal Agent shall have notified such Paying Agent prior to the opening of business in the location of the office of such Paying Agent through which payment on the Notes can be made on the due date of payment under such Notes that the Fiscal Agent does not expect to receive sufficient funds to make payment of all amounts falling due in respect of such Notes.

(g) While any Notes are represented by Global Notes, all payments due in respect of such Notes shall be made to, or to the order of, the registered holder of the Global Notes, subject to and in accordance with the provisions of the Global Notes~ On the occasion of any such payment of principal, the Paying Agent to which the Global Note was surrendered for the purpose of making such payment, on behalf of the Company, shall cause the relevant Part of Schedule A to the relevant Global Note to be annotated so as to evidence the amounts and dates of such payments of principal.

If the amount of principal, and/or interest then due for payment is not paid in full (otherwise than by reason of a deduction required by law to be made therefrom), the Paying Agent to which a Global Note is presented for the purpose of making such payment shall make a

6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

record of such shortfall on the relevant Part of Schedule A to the relevant Global Note and such record shall, in the absence of manifest error, be prima facie evidence that the payment in question has not to that extent been made.

8.    Notice of any Withholding or Deduction

The Notes are subject to United States withholding tax requirements as described in the Offering Circular. If the Company is, in respect of any payment of principal or interest in respect of the Notes, compelled to withhold or deduct any other amount for or on account of taxes, duties, assessments or governmental charges as specifically contemplated under the Conditions, the Company shall give notice thereof to the Fiscal Agent as soon as it becomes aware of the requirement to make such withholding or deduction and shall give to the Fiscal Agent such information as the Fiscal Agent shall require to enable it to comply with such requirement.

9.    Duties of the Fiscal Agent in Connection with Redemption of Notes

If the Company decides to redeem all the Notes for the time being outstanding in accordance with the Conditions, it shall give notice of such decision to the Fiscal Agent a reasonable length of time (at least 40 days) before the relevant redemption date to enable the Fiscal Agent to undertake its obligations herein and in the Conditions.

10.    Receipt and Publication of Notices

(a) Forthwith upon the receipt by the Fiscal Agent of a demand or notice from any Noteholder in accordance with Condition 9, the Fiscal Agent shall forward a copy thereof to the Company.

(b) On behalf of and at the request and expense of the Company, the Fiscal Agent shall cause to be given in accordance with the Conditions, all notices required to be given by the Company to the Noteholders under the Conditions or this Agreement.

11.    Cancellation of Notes

(a) All Notes which are redeemed shall be cancelled by the Paying Agent by which they are paid. Each of the Paying Agents shall give to the Fiscal Agent details of all payments made by it and shall deliver all cancelled Notes to the Fiscal Agent or as the Fiscal Agent may specify. Where Notes are purchased by or on behalf of the Company, the Company may, at its option, procure that such Notes are promptly surrendered to the Fiscal Agent or its authorized agent for cancellation.

(b) The Fiscal Agent shall (unless required by law or otherwise instructed by the Company in writing and save as provided in Clause 13(a) below) destroy all cancelled Notes and, upon request, furnish the Company with a certificate of destruction containing serial numbers of the Notes so destroyed.

7

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007732

12.  Issue of Replacement Notes

(a) The Company and the Fiscal Agent shall cause a sufficient quantity of additional forms of Notes to be available, upon request, to the Registrar at its specified office for the purpose of issuing replacement Notes as provided below.

(b) The Fiscal Agent shall, subject to and in accordance with the Conditions and the following provisions of this Clause 12, cause to be authenticated and delivered any replacement Notes which the Company and the Registrar may determine to issue in place of Notes which have been lost, stolen, mutilated, defaced or destroyed.

(c) The Registrar shall obtain verification, in the case of an allegedly lost, stolen or destroyed Note in respect of which the serial number is known, that such Note has not previously been redeemed or paid. The Registrar shall not issue any replacement Note unless and until the Registrar and the Company agree that the applicant therefor has:

(i) paid such costs as may be incurred in connection therewith;

(ii) furnished it with such evidence and indemnification as the Company and the Registrar may reasonably require; and

(iii) in the case of any mutilated or defaced Note, surrendered it to the Registrar.

(d) The Registrar shall cancel any mutilated or defaced Notes in respect of which replacement Notes have been issued pursuant to this Clause 12. The Registrar shall furnish the Company with a certificate stating the serial numbers of the Notes received by it and cancelled pursuant to this Clause 12 and shall, unless otherwise required by the Company, destroy all such Notes and furnish the Company with a destruction certificate containing the information specified in Clause 11(b) above.

(e) The Registrar shall, on issuing any replacement Note, forthwith inform the Company, the Fiscal Agent and the Paying Agent of the serial number of such replacement Note issued and (if known) of the serial number of the Note in place of which such replacement Note has been issued.

(f) Whenever any Note for which a replacement Note has been issued and of which the serial number is known is presented to any of the Paying Agents for payment, the relevant Paying Agent shall immediately send notice thereof to the Company, the Fiscal Agent and the Registrar; no payment shall be made on such cancelled Note.

13.  Records and Certificates

(a) The Fiscal Agent and the Registrar shall keep a full and complete record of all Notes and of their redemption, purchase, cancellation or payment (as the case may be) and of all replacement Notes issued in substitution for lost, stolen, mutilated, defaced or destroyed Notes. The Fiscal Agent and the Registrar shall at all reasonable times make such records available to the Company.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007733

(b) A certificate stating (i) the aggregate principal amounts of Notes which have been redeemed, (ii) the serial numbers of such Notes, (iii) the serial numbers of those Notes (if any) which have been purchased by or on behalf of the Company or any of its Subsidiaries and cancelled (subject to delivery thereof to the Fiscal Agent) and (iv) the aggregate principal amounts of Notes which have been surrendered and replaced and the serial numbers of such Notes shall be given to the Company by the Registrar and the Fiscal Agent as soon as possible and in any event within three months after the date of such redemption, purchase, payment or replacement (as the case may be).

(c) The Registrar and the Fiscal Agent shall submit (on behalf of the Company) such reports or information as may be required from time to time by applicable law, regulations and guidelines in connection with this Agreement.

(d) The Registrar and the Fiscal Agent shall cooperate with each other with respect to the provisions contained in Clauses 5, 11, 12 and 13 of this Agreement.

14.   Copies of this Agreement Available for Inspection

The Fiscal Agent and the Paying Agents shall hold copies of this Agreement available for inspection by Noteholders. For this purpose, the Company shall furnish the Fiscal Agent and the Paying Agents with sufficient copies of this Agreement.

15.   Fees and Expenses

(a) The Fiscal Agent shall be entitled to the compensation to be agreed upon with the Company for all services rendered by it, and the Company agrees to pay such compensation promptly and to reimburse the Fiscal Agent and the Paying Agents for reasonable out of pocket expenses (including reasonable fees and expenses of counsel pursuant to Clause 18(b) below) reasonably incurred by either of them in connection with the services rendered by them hereunder.

(b) The Company shall pay to the Fiscal Agent such fees in respect of the services of the Paying Agents under this Agreement as shall be agreed between the Company and the Fiscal Agent. The Company shall not be concerned with, or be liable to any individual Paying Agent with respect to, the apportionment of payment among the Paying Agents.

(c) In respect of the said fees the Company shall also pay to the Fiscal Agent such sum as is appropriate in respect of value added tax together with all reasonable expenses (including, inter alia, postage expenses) reasonably incurred by the Paying Agents in connection with their said services.

(d) The fees under subclause (b) above shall be paid in U.S. dollars. The Fiscal Agent shall arrange for payment of the fees due to the Paying Agents and arrange for the reimbursement of their expenses promptly after receipt of the relevant moneys from the Company.

(e) At the request of the Fiscal Agent, the Company or the Guarantor, the parties hereto may from time to time during the continuance of this Agreement review the fees agreed initially pursuant to subclause (b) above with a view to determining whether the parties hereto can mutually agree upon changes therein.

9

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007734

16.  Indemnification

(a) The Company shall indemnify and keep indemnified each of the Paying Agents and the Fiscal Agent against any losses, liabilities, costs, claims (or actions in respect thereof) and reasonable expenses (including reasonable legal fees) which it may incur or which may be made against it as a result of or in connection with its appointment or the exercise of its powers and duties under this Agreement except such as may result from its own willful default, negligence or bad faith or that of its officers or employees or any of them, or breach by it of the terms of this Agreement. The obligations of the Company under this Clause (a) shall survive the payment of the Notes and the resignation or removal of the Fiscal Agent or any Paying Agent, as the case may be.

(b) Each of the Paying Agents and the Fiscal Agent shall severally indemnify the Company and the Guarantor against any losses, liabilities, costs, claims (or actions in respect thereof) and reasonable expenses (including reasonable legal fees) which the Company or the Guarantor may incur or which may be made against the Company or the Guarantor as a result of the willful default, negligence or bad faith of that Paying Agent or Fiscal Agent or that of its officers or employees or any of them, or breach by it of the terms of this Agreement.

17.  Repayment by Fiscal Agent

Any monies paid by the Company or the Guarantor to the Fiscal Agent or any Paying Agent for payment in respect of any of the Notes and remaining unclaimed for two years after the date on which such amounts shall have become due and payable shall then be repaid to the Company or the Guarantor (as applicable) and, upon such payment, all liability of the Fiscal Agent or any Paying Agent with respect to such monies shall cease, without, however, relieving the Company or the Guarantor (as applicable) of the obligation to pay the amounts in respect of any such Note upon the due subsequent presentation thereof to the Company at its registered office.

18.  Conditions of Appointment

The Fiscal Agent and each of the Paying Agents accept their obligations set forth herein and in the Notes upon the terms and conditions hereof and thereof, including the following, to all of which the Company agree and to all of which the rights of the holders from time to time of the Notes shall be subject:

(a) In acting under this Agreement and in connection with the Notes, the Fiscal Agent and the Paying Agents are acting solely as agents of the Company and the Guarantor and do not assume any obligation towards or relationship of agency or trust for or with any of the beneficial owners or holders of the Notes except that all funds held by the Paying Agents for a payment in respect of the Notes shall be held in trust by them and applied as set forth herein and in such Notes, but need not be segregated from other funds held by them, except as required by law; provided that monies paid by the Company or the Guarantor to the Paying Agents for payment in respect of any of the Notes and remaining unclaimed for two years after the date on which such

10

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

payment shall have become due and payable shall be repaid to the Company or the Guarantor (as applicable) as provided and in the manner set forth in Clause 17 hereof, whereupon the aforesaid trust shall terminate and liability of the Paying Agents to the Company and the Guarantor with respect to such monies shall cease.

(b) Each of the Fiscal Agent and the Paying Agents may consult at its own expense (unless the Company has agreed in writing as to the need for such consultation and as to the counsel to be consulted) with counsel satisfactory to it (who may be an employee of or legal advisor to the Company) in its reasonable judgment and any advice or written opinion of such counsel shall be full and complete authorization and protection in respect of any action taken, suffered or omitted to be taken by any of them hereunder in good faith and in accordance with such advice or opinion.

(c) The Fiscal Agent and the Paying Agents shall be protected and shall incur no liability for or in respect of any action taken or omitted to be taken or being suffered by it in reliance upon any Note, instrument of transfer, notice, direction, consent, certificate, affidavit, statement or other paper or document reasonably believed by it to be genuine and to have been presented or signed by the proper party or parties.

(d) Each of the Paying Agents or any agent of the Company or the Guarantor or of the Paying Agent, in its individual capacity or any other capacity, may become the owner of, or acquire any interest in, any Notes or other obligations of the Company or the Guarantor with the same rights that it would have if it were not a Paying Agent or any agent of the Company or the Guarantor or of the Paying Agent, and each Paying Agent may engage or be interested in any financial or other transaction with the Company or the Guarantor, and may act on, or as depositary, trustee or Manager for, any committee or body of holders of Notes or other obligations of the Company or the Guarantor, as freely as if it were not a Paying Agent or any agent of the Company or the Guarantor or of the Paying Agent; provided that such Paying Agent or agent thereof provides, if applicable, the appropriate United States tax certifications to the Registrar in connection with any acquisition of the Notes.

(e) None of the Fiscal Agent or the Paying Agents shall be under any liability for interest on any monies received by it pursuant to any of the provisions of this Agreement or the Notes except as otherwise agreed with the Company and the Guarantor in writing.

(f) The recitals contained in this Agreement and in the Notes (except in the Fiscal Agent's certificate of authentication) shall be taken as the statements of the Company, and neither the Fiscal Agent nor any Paying Agent assumes any responsibility for the correctness of the same. Neither the Fiscal Agent nor any Paying Agent makes any representation as to the validity or sufficiency of this Agreement or the Notes, except for their due authorization to execute and perform their obligations under this Agreement. Neither the Fiscal Agent nor any Paying Agent shall be accountable for the use or application by the Company of any of the Notes or by the Company of the proceeds of any Notes.

(g) The Fiscal Agent and the Paying Agents shall be obligated to perform such duties and only such duties as are herein and in the Notes specifically set forth, and no implied duties or obligations shall be read into this Agreement or the Conditions against the Fiscal Agent

11

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

or any Paying Agent. Neither the Fiscal Agent nor any Paying Agent shall be under any obligation to take any action hereunder which may tend to involve it in any expense or liability, the payment of which within a reasonable time is not, in its reasonable opinion, assured to it.

(h) The Company shall notify the Fiscal Agent and each other Paying Agent immediately in writing if any of the persons authorized to take action on behalf of the Company in connection with this Agreement ceases to be so authorized or if any additional person becomes so authorized together, in the case of an additional authorized person, with evidence satisfactory to the Fiscal Agent that such person has been so authorized.

(i) No Paying Agent shall exercise any right of set off or lien against the Company, the Guarantor or any Noteholders in respect of any monies payable to or by it under the terms of this Agreement.

(j) Each of the Company, the Fiscal Agent, the Guarantor and the Paying Agents agree that this Agreement will, subject to the other provisions herein, continue in full force and effect for so long as any of the Notes are outstanding.

19.    Communications with Paying Agents

A copy of all communications relating to the subject matter of this Agreement between the Company and any of the Paying Agents other than the Fiscal Agent shall be sent to the Fiscal Agent.

20.    Termination of Appointment

(a) The Company may terminate the appointment of the Fiscal Agent or any Paying Agent at any time and/or appoint additional or other Paying Agents by giving to the Fiscal Agent or the Paying Agent whose appointment is concerned and, in the case of any Paying Agent other than the Fiscal Agent, the Fiscal Agent at least 60 days' prior written notice to that effect, provided that, so long as any of the Notes are outstanding, (i) such notice shall not expire less than 30 days before any due date for the payment of any Note and (ii) notice shall be given in accordance with the Conditions at least 30 days prior to any removal or appointment of the Fiscal Agent or any Paying Agent.

(b) Notwithstanding the provisions of subclause (a) above, if at any time the Fiscal Agent or any Paying Agent becomes incapable of acting, or is adjudged bankrupt or insolvent, or files a voluntary petition in bankruptcy or makes an assignment for the benefit of its creditors or consents to the appointment of an administrator, liquidator or administrative or other receiver of all or any substantial part of its property, or if an administrator, liquidator or administrative or other receiver of it or of all or a substantial part of its property is appointed, or it admits in writing its inability to payor meet its debts as they may mature or suspends payment thereof, or if any order of any court is entered approving any petition filed by or against it under the provisions of any applicable bankruptcy or insolvency law or if any public officer takes charge or control of such Fiscal Agent or Paying Agent or of its property or affairs for the purpose of rehabilitation, administration or liquidation, the Company may forthwith without notice terminate the appointment of such Fiscal Agent or Paying Agent, as the case may be, in which event notice thereof shall be given to the Noteholders in accordance with the Conditions as soon as practicable thereafter.

12

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER
NGM000007737

(c) The termination of the appointment of the Fiscal Agent or any Paying Agent hereunder shall not entitle such Fiscal Agent or Paying Agent to any amount by way of compensation but shall be without prejudice to any amount then accrued due.

(d) The Fiscal Agent or all or any of the Paying Agents may resign their respective appointments hereunder at any time by giving to the Company and (except in the case of resignation of the Fiscal Agent) the Fiscal Agent at least 60 days' prior written notice to that effect. Following receipt of a notice of resignation from the Fiscal Agent or any Paying Agent, the Company shall promptly, but no later than 10 days prior to the expiration of any resignation of the Fiscal or Paying Agent, give notice thereof to the Noteholders in accordance with the Conditions. The Fiscal Agent and Paying Agent may appoint a replacement Fiscal Agent on behalf of the Company, if the Company has not already done so.

(e) Notwithstanding the provisions of subclauses (a), (b), (c) and (d) above, so long as any of the Notes are outstanding, the termination of the appointment of any Paying Agent (whether by the Company or by the resignation of such Paying Agent) shall not be effective unless upon the expiry of the relevant notice there is (i) a Fiscal Agent and (ii) at least one Paying Agent with a specified office in a European city which, so long as the Notes are listed on the Luxembourg Stock Exchange, shall be Luxembourg or such other place as may be approved by the Luxembourg Stock Exchange.

(f) Any successor Fiscal Agent or Paying Agent appointed hereunder shall execute and deliver to its predecessor, the Company, the Guarantor and (unless its predecessor is the Fiscal Agent) the Fiscal Agent, an instrument accepting such appointment hereunder, and thereupon such successor Fiscal Agent or Paying Agent, without any further act, deed or conveyance, shall become vested with all the authority, rights, powers, trusts, immunities, duties and obligations of such predecessor with like effect as if originally named as Fiscal Agent or a Paying Agent under this Agreement.

(g) If the appointment of the Fiscal Agent or any Paying Agent hereunder is terminated (whether by the Company or by the resignation of such Fiscal Agent or Paying Agent), such Fiscal Agent or Paying Agent shall on the date on which such termination takes effect deliver to the Fiscal Agent or the successor Fiscal Agent all Notes surrendered to it but not yet destroyed and shall deliver to such successor Paying Agent (or if none, the Fiscal Agent) all records concerning the Notes maintained by it (except such documents and records as it is obliged by law or regulation to retain or not to release) and pay to its successor Fiscal Agent or Paying Agent (or, if none, to the Fiscal Agent) the amounts held by it in respect of Notes which have become due and payable but which have not been paid, but shall have no other duties or responsibilities under this Agreement.

(h) If the Fiscal Agent or any of the Paying Agent changes its specified office, it shall give to the Company and the Fiscal Agent (if applicable), not less than 45 days' written notice to that effect giving the address of the new specified office. As soon as practicable thereafter and in any event at least 30 days prior to such change, the Fiscal Agent shall give to the Noteholders

13

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000007738