# EXHIBIT EE

# ESCROW AGREEMENT

**THIS AGREEMENT** is made and entered into as of June 4, 2009, by and among General Motors of Canada Limited, a Canadian federal corporation ("**GMCL**"), General Motors Nova Scotia Finance Company, a Nova Scotia unlimited company ("**GMNS**"), CIBC Mellon Trust Company, a trust company incorporated under the laws of Canada (the "**Escrow Agent**"), and the Holders (as hereinafter defined).

**RECITALS:**

A.  GMNS has issued £350,000,000 principal amount of 8.375% guaranteed notes, due December 7, 2015 (the "**2015 Notes**") and £250,000,000 principal amount of 8.875% guaranteed notes, due July 10, 2023 (the "**2023 Notes**" and together with the 2015 Notes, the "**Notes**") to certain beneficial owners (the "**Noteholders**"). Each series of Notes are governed by a fiscal and paying agency agreement (the "**Fiscal and Paying Agency Agreement**"), dated as of July 10, 2003, among GMNS, General Motors Corporation, a Delaware corporation ("**GMC**"), Deutsche Bank Luxembourg S.A. (the "**Fiscal Paying Agent**") and Banque Générale du Luxembourg S.A.

B.  Certain Noteholders, including Aurelius Investment, LLC, Drawbridge DSO Securities LLC, Drawbridge OSO Securities LLC, FCOF UB Securities LLC, Appaloosa Investment Limited Partnership I, Palomino Fund Ltd., Thoroughbred Master Ltd., Thoroughbred Fund LP, Elliot International, L.P. and The Liverpool Partnership (the "**Holders**") have agreed, pursuant to the terms of a lock up agreement (the "**Lock Up Agreement**"), dated as of June 1, 2009, among GMNS, GMC, GMCL, GM Nova Scotia Investments Ltd. and the Holders, to vote in favour of an extraordinary resolution (the "**Extraordinary Resolution**"), to be considered at a meeting (the "**Meeting**") of the Noteholders, to amend the Fiscal and Paying Agency Agreement and the global securities representing the Notes in exchange for certain cash payments, including the Escrow Amount (as defined herein).

C.  The Parties wish to set out the terms upon which the Escrow Amount is to be held and disbursed by the Escrow Agent.

D.  The foregoing statements of fact and recitals are made by the parties hereto other than the Escrow Agent.

**THEREFORE**, in consideration of the foregoing and of the mutual covenants hereinafter set forth, the Parties hereto agree as follows:

**1.    Definitions**

Whenever used in this Agreement, the following words and terms have the meanings set out below:

"**Agreement**" means this Escrow Agreement, including all Schedules attached hereto, and all amendments or restatements, as permitted;

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023657

– 2 –

"**Business Day**" shall mean any day other than a Saturday, Sunday or any other day on which the Escrow Agent, in the City of Toronto, Ontario, is authorized or required by law or executive order to remain closed;

"**Escrow Account #1**" means a segregated non-interest bearing (subject to Section 8) £ pound sterling account in the name of the Escrow Agent on behalf of GMCL, GMNS and the Noteholders with CIBC Mellon Trust Company, 320 Bay Street, P.O. Box 1, Toronto, Ontario, M5H 4A6 with account number and wire transfer details set out in Schedule E;

"**Escrow Account #2**" means a segregated non-interest bearing £ pound sterling account in the name of the Escrow Agent on behalf of GMNS with CIBC Mellon Trust Company, 320 Bay Street, P.O. Box 1, Toronto, Ontario, M5H 4A6 with account number and wire transfer details set out in Schedule E;

"**Escrow Amount**" means £223,303,500, which is equal to the aggregate of £366.46 per £1,000 of principal amount of the 2015 Notes outstanding and £380.17 per £1,000 principal amount of the 2023 Notes outstanding;

"**Loan Agreements**" has the meaning set forth in the Lock Up Agreement;

"**Parties**" means, collectively, GMCL, GMNS, the Escrow Agent and the Holders; and "**Party**" means anyone of them; and

"**Requisite Holders**" means Holders representing at least 51% of the outstanding principal amount of each series of 2015 Notes and 2023 Notes, respectively, as indicated by the owned face value amount set out as held by each Holder in Schedule C.

2.    **Appointment of Escrow Agent**

GMCL hereby appoints the Escrow Agent for the purposes set forth herein, and the Escrow Agent hereby accepts such appointment under the terms and conditions set forth herein.

3.    **Deposit of Escrow Amount**

(a)    GMCL shall deposit the Escrow Amount into Escrow Account #1 by initiating a wire transfer of immediately available funds by no later than 10:00 a.m. on June 5, 2009. Upon receipt in Escrow Account #1 of the Escrow Amount, the Escrow Agent shall send a notice of confirmation of such receipt and deposit to each of GMCL and the Holders immediately thereafter. Upon receipt of such notice of confirmation of receipt and deposit, each of the Holders shall deliver the voting instructions referenced in Section 1(a)(ii) of the Lock Up Agreement to its applicable broker and provide notice to GMCL of such delivery. If the voting instructions have not been delivered by each of the Holders to the applicable brokers by 5:00 pm (Toronto time) on June 8, 2009 and the Lock Up Agreement has been terminated, then GMCL may deliver a notice to the Escrow Agent with a copy to the Holders requiring a return of the Escrow Amount. Upon receipt by the Escrow Agent of notice from GMCL that such voting instructions have not been delivered by each of the Holders to the applicable

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023658

– 3 –

brokers by 5:00 pm (Toronto time) on June 8, 2009 and that the Lock Up Agreement has been terminated, the Escrow Agent shall automatically and immediately without further instruction return the Escrow Amount to GMCL into the account specified in Schedule B.

(b)   Each of the Parties agrees to provide the Escrow Agent with all information reasonably required by the Escrow Agent to permit Escrow Account #1 and Escrow Account #2 to be opened as of the date of this Agreement.

(c)   The Escrow Agent acknowledges that it shall have no beneficial interest whatsoever in the funds held in either Escrow Account #1 or Escrow Account #2 and it shall hold the Escrow Amount in Escrow Account #1 in trust for the Parties as their interests may be pursuant to the Lock Up Agreement and this Agreement.  The Escrow Agent shall hold the Escrow Amount in Escrow Account #2 in trust for GMNS and the Fiscal Paying Agent on behalf of the Noteholders.

**4.**   **Release of Escrow Amount upon passing of Extraordinary Resolution**

(a)   Upon receipt by the Escrow Agent of the scrutineer's report for the Meeting in the form attached as Exhibit A or similar report of the voting results of the Meeting reporting that the Extraordinary Resolution has been duly passed by the requisite majority of holders of Notes in accordance with the Fiscal and Paying Agency Agreement, the Escrow Agent shall forthwith cause the Escrow Amount to be transferred from Escrow Account #1 into Escrow Account #2.

(b)   Upon deposit of the Escrow Amount into Escrow Account #2, GMNS shall be deemed to have acknowledged and agreed that all amounts outstanding under the Loan Agreements shall have been settled and compromised in full, subject to the terms of the Lock-Up Agreement.

(c)   Immediately upon the deposit of the Escrow Amount into Escrow Account #2, the Escrow Agent shall immediately and automatically, without further instruction, release the Escrow Amount and cause the Escrow Amount to be transferred to the Fiscal Paying Agent by depositing the Escrow Amount into the account specified on Schedule A attached to this Agreement for distribution by the Fiscal Paying Agent to holders of Notes in accordance with the Extraordinary Resolution.

**5.**   **Release of Escrow Amount to GMCL**

(a)   The Escrow Agent shall cause the Escrow Amount to be transferred from Escrow Account #1 to GMCL and deposited into the account specified by GMCL on Schedule B attached to this Agreement, in the following circumstances:

(i)   Upon receipt by the Escrow Agent of notice from each of GMNS and all of the Holders advising that the Meeting called for the passage of the

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023659

– 4 –

Extraordinary Resolution has failed to occur prior to July 9, 2009 due to circumstances which are outside of GMNS's control and the Lock Up Agreement has been terminated by the Holders; or

(ii)    upon receipt by the Escrow Agent of the scrutineer's report for the Meeting in the form attached as Exhibit B or similar report of the voting results of the Meeting reporting that the Meeting was held and the Extraordinary Resolution failed to be passed by the requisite majority of holders of Notes in accordance with the Fiscal Paying and Agency Agreement.

## 6.    Release of Escrow Amount to Noteholders

(a)    Upon receipt of notice by the Requisite Holders of any of the events set out in 6(a)(i), (ii) or (iii), the Escrow Agent shall cause the Escrow Amount to be transferred from Escrow Account #1 to the Holders by transferring the Escrow Amount to each Holder into such accounts as may be specified in <u>Schedule C</u> in the following proportions:

In respect of 2015 Notes held by such Holder, the amount of 366.46/1000 X £350,000,000 X % of Group Total of 2015 Notes held by such Holder as set out in Schedule C; and

In respect of 2023 Notes held by such Holder, the amount of 380.17/1000 X £250,000,000 X % of Group Total of 2023 Notes held by such Holder as set out in Schedule C.

The events are:

(i)    any case or proceeding under the Bankruptcy Code (or any proceedings therein), under any Canadian insolvency statutes, the Companies' Creditors Arrangement Act (Canada), the Bankruptcy and Insolvency Act (Canada), or any statute, law, legislation, rule or regulation in respect of corporate reorganization or which provides for the appointment of an interim receiver, receiver, receiver and manager or liquidator, or any similar proceeding, of GMNS initiated directly or indirectly or fomented in any way by GMNS or one of its affiliates;

(ii)    any case or proceeding under the Bankruptcy Code (or any proceedings therein), under any Canadian insolvency statutes, the Companies' Creditors Arrangement Act (Canada), the Bankruptcy and Insolvency Act (Canada), or any statute, law, legislation, rule or regulation in respect of corporate reorganization or which provides for the appointment of an interim receiver, receiver, receiver and manager or liquidator, or any similar proceeding, of GMCL initiated directly or indirectly or fomented in any way by GMCL or one of its affiliates; or

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023660

– 5 –

(iii)   a failure to hold the Meeting by July 9, 2009 due to circumstances which are within GMNS's control.

## 7.   Release if Disputed Material Breach

If there has been an allegation of material breach of the provisions of the Lock Up Agreement by any of GM Nova Scotia Investments Limited ("GM Investments") GMCL, GMNS or GMC, notice of such allegation shall be provided to the Escrow Agent by the Requisite Holders and the Escrow Agent shall continue to hold the Escrow Amount in Escrow Account #1 pursuant to the provisions of this Agreement until the earlier of: (i) receipt by the Escrow Agent of a written direction signed by GMCL and each of the Holders directing the Escrow to release the funds to the persons and the accounts specified in such written direction, in which case the Escrow Agent shall release the Escrow Amount in accordance with such written direction, and (ii) receipt by the Escrow Agent of a final order of a court of competent jurisdiction determining that a material breach of the Lock Up Agreement has occurred, in which case the Escrow Agent shall release the Escrow Amount in Escrow Account #1 in a manner consistent with such court order.  For greater certainty, the Parties acknowledge that the Escrow Amount shall be released to the Holders if such court order determines that a material breach of the Lock Up Agreement has occurred by any of GM Investments, GMCL, GMNS or GMC.  For purposes of this Section 7, a material breach of the provisions of the Lock Up Agreement shall not include the events described in Section 6, which Section 6 events shall trigger the immediate transfer requirements as set out therein.

## 8.   Interest on Escrow Amount

The Escrow Agent may hold cash balances constituting part or all of the funds in an account, and may, but need not, invest same in its deposit department, the deposit department of one of its Affiliates or the deposit department of Canadian Imperial Bank of Commerce, but the Escrow Agent, its Affiliates or Canadian Imperial Bank of Commerce shall not be liable to account for any profit to any parties to this Escrow Agreement or to any other person or entity other than at a rate, if any, established from time to time by the Escrow Agent, its Affiliates or Canadian Imperial Bank of Commerce.

Following June 30, 2009, if the Escrow Amount remains in Escrow Account #1, the Parties shall negotiate in good faith to establish an appropriate rate of interest for the Escrow Amount based on then current market terms and the Escrow Amount shall thereafter bear interest at such rate and on terms to be agreed among the Parties and the Escrow Agent, acting reasonably, but which shall be limited to a maximum annual rate of 10 basis points, which interest shall be payable to the Party ultimately entitled to the Escrow Amount.

The Parties may agree to amend this maximum rate of interest by agreement in writing among all of the Parties, but are under no obligation to do so unless the Escrow Amount remains in Escrow Account #1 for a period of at least 185 days, in which case the parties shall negotiate in good faith to reach an amendment to the maximum annual rate for an agreed term which is reasonable in the market conditions existing at that time. Alternatively, the Parties may, in such good faith negotiations, agree upon a program to invest the Escrow Amount on terms satisfactory to all parties, it being acknowledged that such terms will include reasonable and customary custodial terms and conditions and reasonable and customary custody fees payable to the Escrow Agent.

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023661

– 6 –

For the purposes of this Section 8, "Affiliate" means affiliated companies within the meaning of the Business Corporations Act (Ontario) ("OBCA"); and includes Canadian Imperial Bank of Commerce, CIBC Mellon Global Securities Services Company and The Bank of New York Mellon. and each of their affiliates within the meaning of the OBCA.

9. **Disposition and Termination**

 (a) The disposition of the amounts held by the Escrow Agent of the amounts held by it in escrow pursuant hereto in accordance with Sections 4, 5, 6, 7, and 8 shall be deemed to be the disposition and delivery of the Escrow Amount by the Escrow Agent.

 (b) Upon the disposition and delivery of the Escrow Amount by the Escrow Agent, this Agreement shall terminate, subject to the provisions of Sections 12 and 13.

10. **Escrow Agent**

 (a) The Escrow Agent shall have only those duties as are specifically and expressly provided herein, which shall be deemed purely ministerial in nature, and no other duties shall be implied. The Escrow Agent shall neither be responsible for, nor chargeable with knowledge of, nor have any requirements to comply with, the terms and conditions of any other agreement, instrument or document between the Parties, in connection herewith, if any, including without limitation the Lock Up Agreement, nor shall the Escrow Agent be required to determine if any person or entity has complied with any such agreements, nor shall any additional obligations of the Escrow Agent be inferred from the terms of such agreements, even though reference thereto may be made in this Agreement. In the event of any conflict between the terms and provisions of this Agreement, those of the Lock Up Agreement, or any other agreement between GMNS, GMCL and the Noteholders, the terms and conditions of this Agreement shall apply. The Escrow Agent may rely upon and shall not be liable for acting or refraining from acting upon any written notice, document, instruction or request furnished to it hereunder and believed by it to be genuine, acting reasonably, and to have been signed or presented by the proper party or parties without inquiry and without requiring substantiating evidence of any kind. The Escrow Agent shall be under no duty to inquire into or investigate the validity, accuracy or content of any such document, notice, instruction or request. The Escrow Agent shall have no duty to solicit any payments which may be due it, including, without limitation, the Escrow Amount nor shall the Escrow Agent have any duty or obligation to confirm or verify the accuracy or correctness of any amounts deposited with it hereunder. The Escrow Agent shall have no duty or obligation to make any calculations of any kind hereunder. The Escrow Agent shall not be obligated to act hereunder unless and until its fees and expenses are paid.

 (b) The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it, except to the extent that a final adjudication of a court of competent jurisdiction determines that the Escrow Agent's gross negligence or

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023662

– 7 –

willful misconduct was the cause of any loss to GMCL, GMNS, or the Noteholders. The Escrow Agent may execute any of its powers and perform any of its duties hereunder directly or through agents or attorneys, and shall be liable only for its gross negligence or willful misconduct (as finally adjudicated in a court of competent jurisdiction) in the selection of any such agent or attorney. The Escrow Agent may consult with counsel, accountants and other skilled persons to be selected and retained by it.. The Escrow Agent shall not be liable for any action taken, suffered or omitted to be taken by it in accordance with, or in reliance upon, the advice or opinion of any such counsel, accountants or other skilled persons. In the event that the Escrow Agent shall be uncertain or believe there is some ambiguity as to its duties or rights hereunder or shall receive instructions, claims or demands from any party hereto which, in its opinion, conflict with any of the provisions of this Agreement, it shall be entitled to refrain from taking any action and its sole obligation shall be to keep safely all property held in escrow until it shall be given a direction in writing by the Parties which eliminates such ambiguity or uncertainty to the satisfaction of Escrow Agent or by a final and non-appealable order or judgment of a court of competent jurisdiction. GMCL agrees to pursue any redress or recourse in connection with any dispute without making the Escrow Agent a party to the same. Anything in this Agreement to the contrary notwithstanding, in no event shall the Escrow Agent be liable for special, incidental, punitive, indirect or consequential loss or damage of any kind whatsoever (including but not limited to lost profits), even if the Escrow Agent has been advised of the likelihood of such loss or damage and regardless of the form of action.

**11. Succession**

(a)   The Escrow Agent may resign and be discharged from its duties or obligations hereunder by giving thirty (30) days advance notice in writing of such resignation to the Parties specifying a date when such resignation shall take effect. The Parties shall jointly appoint a successor escrow agent. If the Parties have jointly failed to appoint a successor escrow agent prior to the expiration of thirty (30) days following receipt of the notice of resignation, the Escrow Agent may petition any court of competent jurisdiction (at the expense of GMCL) but subject to Section 11(b) for the appointment of a successor escrow agent or for other appropriate relief, and any such resulting appointment shall be binding upon all of the parties hereto. The Escrow Agent's sole responsibility after such thirty (30) day notice period expires shall be to hold the Escrow Amount (without any obligation to reinvest the same) and to deliver the same to a designated substitute escrow agent, if any, or in accordance with the directions of a final order or judgment of a court of competent jurisdiction, at which time of delivery Escrow Agent's obligations hereunder shall cease and terminate, subject to the provisions of Sections 12 and 13 hereunder.

(b)   Any entity into which the Escrow Agent may be merged or converted or with which it may be consolidated, or any entity to which all or substantially all the escrow business may be transferred, shall be the Escrow Agent under this Agreement without further act.

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023663

– 8 –

**12.    Compensation and Reimbursement**

(a)    GMCL will (i) pay the Escrow Agent upon execution of this Agreement and from time to time thereafter reasonable compensation for the services to be rendered hereunder, which unless otherwise agreed in writing shall be as described in Schedule D attached hereto, and (ii) pay or reimburse the Escrow Agent upon request for all expenses, disbursements and advances, including, without limitation reasonable attorney's fees and expenses, incurred or made by it in connection with the preparation, negotiation, execution, performance, delivery, modification and termination of this Agreement.    The obligations contained in this Section 12 shall survive the termination of this Agreement and the resignation, replacement or removal of the Escrow Agent.

(b)    Notwithstanding Section 12(a), any fees and expenses paid by GMCL to the Escrow Agent arising in connection with any court proceedings shall be reimbursed by the Escrow Agent to the extent that such fees and expenses are expressly carved out of GMCL's indemnification obligations set out in Section 13.

**13.    Indemnity**

GMCL shall indemnify, defend and save harmless the Escrow Agent and its affiliates and their respective successors, assigns, directors, officers, managers, attorneys, accountants, experts, agents and employees (the "**indemnitees**") from and against any and all losses, damages, claims, liabilities, penalties, judgments, settlements, actions, suits, proceedings, litigation, investigations, costs or expenses (including, without limitation, the fees and expenses of in house or outside counsel and experts and their staffs and all expense of document location, duplication and shipment) (collectively "**Losses**") arising out of or in connection with (i) the Escrow Agent's execution and performance of this Agreement, tax reporting or withholding, the enforcement of any rights or remedies under or in connection with this Agreement, or as may arise by reason of any act, omission or error of the indemnitee, except in the case of any indemnitee to the extent that such Losses are finally adjudicated by a court of competent jurisdiction to have been primarily caused by the gross negligence or willful misconduct of such indemnitee, or (ii) its following any instructions or other directions from GMCL, except to the extent that its following any such instruction or direction is expressly forbidden by the terms hereof.    GMCL hereto acknowledges that the foregoing indemnities shall survive the resignation, replacement or removal of the Escrow Agent or the termination of this Agreement. The obligations contained in this Section 13 shall survive the termination of this Agreement and the resignation, replacement or removal of the Escrow Agent.

**14.    Anti-Money Laundering and Terrorist Financing Regulations**

(a)    Anti-Money Laundering and Terrorist Financing Regulations require the Escrow Agent to implement reasonable procedures to verify the identity of any person that opens a new account with it.    Accordingly, each of the Parties acknowledges that the Escrow Agent's identity verification procedures require the Escrow Agent to obtain information which may be used to confirm such Party's identity including without limitation name, address and organizational documents

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023664

– 9 –

("**identifying information**"). Each of the Parties agrees to provide the Escrow Agent with and consent to the Escrow Agent obtaining from third parties any such identifying information required as a condition of opening an account with or using any service provided by the Escrow Agent.

(b)    The Escrow Agent shall retain the right not to act and shall not be liable for refusing to act if, due to a lack of information or for any other reason whatsoever, the Escrow Agent reasonably determines that such an act might cause it to be in non-compliance with any applicable anti-money laundering or anti-terrorist legislation, regulation or guideline. Further, should the Escrow Agent reasonably determine at any time that its acting under this Agreement has resulted in it being in non-compliance with any applicable anti-money laundering or anti-terrorist legislation, regulation or guideline, it shall have the right to resign on written notice to GMCL and the Holders.

**15.    Notices**

(a)    All communications hereunder shall be in writing and shall be deemed to be duly given and received:

(i)    upon delivery, if delivered personally, or upon confirmed transmittal, if by facsimile;

(ii)    on the next Business Day if sent by overnight courier; or

(iii)    four (4) Business Days after mailing if mailed by prepaid registered mail, return receipt requested, to the appropriate notice address set forth below or at such other address as any party hereto may have furnished to the other parties in writing by registered mail, return receipt requested.

| | |
|---|---|
| If to GMCL: | General Motors of Canada Limited<br>1908 Colonel Sam Drive<br>Oshawa, Ontario<br>L1H 8P7<br>Attention: General Counsel<br><br>Tel No.: 905- 644-5000<br>Fax No.: 905- 644-7772 |
| If to GMNS: | General Motors Nova Scotia Finance Company<br>1300-1969 Upper Water Street<br>Purdy's Wharf Tower II<br>Halifax, Nova Scotia,<br>Canada B3J 3R7<br>Attention: Chief Executive Officer,<br>Chief Financial Officer and Principal Accounting Officer |

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023665

– 10 –

Tel No.: 902-425-6500
Fax No.: 902-425-6350

If to the Escrow Agent:    CIBC Mellon Trust Company
320 Bay Street, P.O. Box 1
Toronto, ON M5H 4A6
Attention: Executive Director, Corporate Trust
Services

Fax No.: 416-643-5570

If to the Holders:    to the address set out beneath the signature of such
Holder on the signature pages to this Agreement

with a copy to:

Blake, Cassels & Graydon LLP
199 Bay Street, Suite 2800
Commerce Court West
Toronto, ON  M5L 1A9
Attention: Nathan Cheifetz

Tel No.: 416-863-2969
Fax No.: 416-863-2653

(b)    Notwithstanding the above, in the case of communications delivered to the
Escrow Agent pursuant to (i), (ii) and (iii) of Section 15(a), such
communications shall be deemed to have been given on the date received by an
officer of the Escrow Agent or any employee of the Escrow Agent who reports
directly to any such officer at the above-referenced office. In the event that the
Escrow Agent, in its sole discretion, shall determine that an emergency exists,
the Escrow Agent may use such other means of communication as the Escrow
Agent deems appropriate.

16.    **Miscellaneous**

(a)    The provisions of this Agreement may be waived, altered, amended or
supplemented, in whole or in part, only by a writing signed by the Parties.
Neither this Agreement nor any right or interest hereunder may be assigned in
whole or in part by any Party without the prior consent of the other Parties.

(b)    This Agreement shall be governed by and construed under the laws of the
Province of Ontario. Each Party irrevocably waives any objection on the
grounds of venue, forum non-conveniens or any similar grounds and irrevocably
consents to service of process by mail or in any other manner permitted by
applicable law and consents to the jurisdiction of the courts located in the
Province of Ontario.

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER    NGM000023666

– 11 –

(c)  Unless otherwise specified, all references to money amounts are to British Pounds.

(d)  No Party to this Agreement is liable to any other Party for losses due to, or if it is unable to perform its obligations under the terms of this Agreement because of, acts of God, fire, war, terrorism, floods, strikes, electrical outages, equipment or transmission failure, or other causes reasonably beyond its control.

(e)  This Agreement may be executed in one or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. All signatures of the parties to this Agreement may be transmitted by facsimile or other electronic transmission, and such facsimile or other electronic transmission will, for all purposes, be deemed to be the original signature of such party whose signature it reproduces, and will be binding upon such party.

(f)  If any provision of this Agreement is determined to be prohibited or unenforceable by reason of any applicable law of a jurisdiction, then such provision shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions thereof, and any such prohibition or unenforceability in such jurisdiction shall not invalidate or render unenforceable such provisions in any other jurisdiction.

(g)  A person who is not a party to this Agreement shall have no right to enforce any term of this Agreement.

(h)  Except as expressly provided in Section 13 above, nothing in this Agreement, whether express or implied, shall be construed to give to any person or entity other than the Parties any legal or equitable right, remedy, interest or claim under or in respect of this Agreement or any funds escrowed hereunder.

**[SIGNATURE PAGES FOLLOW]**

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023667

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date set forth above.

**GENERAL MOTORS NOVA SCOTIA
FINANCE COMPANY**

By: _____

    Name: Maurita Sutedja

    Title: Director

**GENERAL MOTORS OF CANADA
LIMITED**

By: _____

    Name:

    Title:

**CIBC MELLON TRUST COMPANY, as
Escrow Agent**

By: _____

    Name:

    Title:

By: _____

    Name:

    Title:

*Signature Page to Escrow Agreement
dated as of June 4, 2009*

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023668

**IN WITNESS WHEREOF**, the parties hereto have executed this Agreement as of the date set forth above.

GENERAL MOTORS NOVA SCOTIA
FINANCE COMPANY

By: _____
        Name:
        Title:

GENERAL MOTORS OF CANADA
LIMITED

By: _____
        Name: _JOHN STAPLETON_
        Title: _CFO/VP FINANCE_

CIBC MELLON TRUST COMPANY, as
Escrow Agent

By: _____
        Name:
        Title:

By: _____
        Name:
        Title:

*Signature Page to Escrow Agreement*
*dated as of June 4, 2009*

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023669

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the date set forth above.

**GENERAL MOTORS NOVA SCOTIA FINANCE COMPANY**

By: _____

    Name:

    Title:

**GENERAL MOTORS OF CANADA LIMITED**

By: _____

    Name:

    Title:

**CIBC MELLON TRUST COMPANY,** as Escrow Agent

By: _____

    Name: **GERALYN KROWLES**
                  **ACCOUNT MANAGER**

    Title:

By: _____

    Name: LINDA WHITFIELD

    Title: AUTHORIZED SIGNATORY

*Signature Page to Escrow Agreement*
*dated as of June 4, 2009*

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023670

**HOLDERS:**

**AURELIUS INVESTMENT, LLC**

By:     Aurelius Capital Management, LP as manager

By:_____

Dan Gropper
Managing Director

Address:   535 Madison Avenue
22nd Floor
New York, NY 10022

Attention:  Dan Gropper
Fax:  212-786-5870

12301865.2

*Signature Page to Escrow Agreement*
*dated as of June 4, 2009*

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023671

**DRAWBRIDGE DSO SECURITIES LLC**

By: _____
     Constantine M. Dakolias
     President

1345 Avenue of the Americas, 46th Floor
New York, NY 10105
Attention: Constantine M. Dakolias
Fax: (212) 798-6099

**DRAWBRIDGE DSO SECURITIES LLC**

By: _____
     Constantine M. Dakolias
     President

1345 Avenue of the Americas, 46th Floor
New York, NY 10105
Attention: Constantine M. Dakolias
Fax: (212) 798-6099

**FCOF UB SECURITIES LLC**

By: _____
     Constantine M. Dakolias
     President

1345 Avenue of the Americas, 46th Floor
New York, NY 10105
Attention: Constantine M. Dakolias
Fax: (212) 798-6099

*Signature Page to Escrow Agreement*
*dated as of June 4, 2009*

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023672

**APPALOOSA INVESTMENT LIMITED
PARTNERSHIP I**

By: _K. Maman_____
　　Name:
　　Title:

Attention: Jim Bolin
Fax: 973-701-7055


**PALOMINO FUND LTD.**

By: ___K. Maman_____
　　Name:
　　Title:

Attention: Jim Bolin
Fax: 973-701-7055

**THOROUGHBRED MASTER LTD.**

By: ___K. Maman_____
　　Name:
　　Title:

Attention: Jim Bolin
Fax: 973-701-7055


**THOROUGHBRED FUND LP**

By: ___K. Maman_____
　　Name:
　　Title:

Attention: Jim Bolin
Fax: 973-701-7055


*Signature Page to Escrow Agreement
dated as of June 4, 2009*

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023673

**ELLIOTT INTERNATIONAL L.P.**

By:  Elliott International Capital Advisors Inc. – As
attorney-in-fact

By: _____

      Name:  Elliot Greenberg
      Title:  Vice President

c/o Elliott Management Corporation
712 Fifth Avenue
New York, NY  10019
Attention:  Didric Cederholm
Fax:  (212) 586-9461


**THE LIVERPOOL LIMITED PARTNERSHIP**

By:  Liverpool Associates Ltd. – As General Partner

By: _____

      Name:  Elliot Greenberg
      Title:  Vice President

c/o Elliott Management Corporation
712 Fifth Avenue
New York, NY  10019
Attention:  Didric Cederholm
Fax:  (212) 586-9461

*Signature Page to Escrow Agreement*
*dated as of June 4, 2009*

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023674

## SCHEDULE A

### Fiscal Paying Agent's Account

In the circumstances described in Section 4(c) of this Agreement, the Escrow Agent shall deposit the Escrow Amount into the following account:

**Deutsche Bank AG, London**
**SWIFT Code:**      **DEUTGB2LXXX**
**Sort Code:**       **40 50 81**
**For Credit:**      **Deustche Bank AG, London**
**Account No.:**     **N/A**
**Reference:**       **GM Nova Scotia**

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023675

## SCHEDULE B

### GMCL's Account

In the circumstances described in Section 5(a) of this Agreement, the Escrow Agent shall deposit the Escrow Amount into the following account:

General Motors of Canada
Limited Bank:  TD Canada Trust
Bank Address:  4 King Street West, Toronto, ON, L1H 7L3
Bank Code:  004
Account Number:  0360-01 3049846
Transit:  31842
Currency:  GBP
Swift Code:  TDOMCATTTOR

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

## SCHEDULE C

### Holders' Accounts and Ownership

In the circumstances described in Section 6 of this Agreement, the Escrow Agent shall deposit the Escrow Amount into the following accounts and in the following proportions:

| Holder | Wire Transfer Instructions |
|---|---|
| **Aurelius Investment, LLC** | CHAPS CODE:      203253<br>A/C #:                20325340846481<br>BANK NAME:      BARCLAYS BANK PLC<br>CITY:                 LONDON<br>SWIFT CODE:     BARCGB22<br>IBAN A/C#         GB14BARC20325340846481<br>ENTITY NAME:   GOLDMAN SACHS & CO., NY<br>F/C Acct:            Aurelius Investment, LLC<br>F/C Acct #          002433100 |
| **Drawbridge DSO Securities LLC** | CHAPS CODE:      203253<br>BANK NAME:      BARCLAYS BANK PLC<br>CITY:                 LONDON<br>A/C #:                40846481<br>IBAN A/C#         GB14 BARC 2032 5340 8464 81<br>ENTITY NAME:   GOLDMAN SACHS & CO., NY<br>FFCT A/C :          Drawbridge DSO Securities LLC<br>FFCT A/C #:        002365872 |
| **Drawbridge OSO Securities LLC** | CHAPS CODE:      203253<br>BANK NAME:      BARCLAYS BANK PLC<br>CITY:                 LONDON<br>A/C #:                40846481<br>IBAN A/C#         GB14 BARC 2032 5340 8464 81<br>ENTITY NAME:   GOLDMAN SACHS & CO., NY<br>FFCT A/C :          Drawbridge OSO Securities LLC<br>FFCT A/C #:        002365880 |
| **FCOF UB Securities LLC** | CHAPS CODE:      203253<br>BANK NAME:      BARCLAYS BANK PLC<br>CITY:                 LONDON<br>A/C #:                40846481<br>IBAN A/C#         GB14 BARC 2032 5340 8464 81<br>ENTITY NAME:   GOLDMAN SACHS & CO., NY<br>FFCT A/C :          FCOF UB Securities LLC<br>FFCT A/C #:        002337160 |

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023677

| Holder | Wire Transfer Instructions |
|---|---|
| **Appaloosa Investment Limited Partnership I** | CHAPS CODE: 203253<br>BANK NAME: BARCLAYS BANK PLC<br>CITY: LONDON<br>A/C #: 20325340846481<br>IBAN A/C# GB14 BARC 2032 5340 8464 81<br>ENTITY NAME: GOLDMAN SACHS & CO., NY<br>FFCT A/C : Appaloosa Investment LP<br>FFCT A/C #: 002021152 |
| **Palomino Fund Ltd.** | CHAPS CODE: 203253<br>BANK NAME: BARCLAYS BANK PLC<br>CITY: LONDON<br>A/C #: 20325340846481<br>IBAN A/C# GB14 BARC 2032 5340 8464 81<br>ENTITY NAME: GOLDMAN SACHS & CO., NY<br>FFCT A/C : Palomino Fund Ltd.<br>FFCT A/C #: 002026276 |
| **Thoroughbred Master Ltd.** | CHAPS CODE: 203253<br>BANK NAME: BARCLAYS BANK PLC<br>CITY: LONDON<br>A/C #: 20325340846481<br>IBAN A/C# GB14 BARC 2032 5340 8464 81<br>ENTITY NAME: GOLDMAN SACHS & CO., NY<br>FFCT A/C : Thoroughbred Master Ltd.<br>FFCT A/C #: 002360048 |
| **Thoroughbred Fund LP** | CHAPS CODE: 203253<br>BANK NAME: BARCLAYS BANK PLC<br>CITY: LONDON<br>A/C #: 20325340846481<br>IBAN A/C# GB14 BARC 2032 5340 8464 81<br>ENTITY NAME: GOLDMAN SACHS & CO., NY<br>FFCT A/C : Thoroughbred Fund LP<br>FFCT A/C #: 022360055 |
| **Elliott International L.P.** | CHAPS CODE: 609242<br>BANK NAME: JPMORGAN CHASE BANK, NA<br>CITY: LONDON<br>A/C #: 0032596402<br>IBAN A/C# GB44CHAS60924232596402<br>FFCT A/C : Elliott International LP<br>FFCT A/C #: 0032596402 |

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023678

| Holder | Wire Transfer Instructions |
|---|---|
| **The Liverpool Limited Partnership** | **CHAPS CODE:** 609242<br>**BANK NAME:** JPMORGAN CHASE BANK, NA<br>**CITY:** LONDON<br>**A/C #:** 0032596502<br>**IBAN A/C#** GB60CHAS60924232596502<br>**FFCT A/C :** The Liverpool Limited Partnership<br>**FFCT A/C #:** 0032596502 |

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023679

## SCHEDULE C

### General Motors - Nova Scotia Bond Ownership

| | Owned Face Value | % of Issue | % of Group Total | Payment Paid to All Holders | Payment Paid Only to Group | |
|---|---|---|---|---|---|---|
| **2015s:** | | | | | | |
| Aurelius Investment, LLC | £35,246,000 | 10.1% | 11.7% | £12,916,249 | £15,056,511 | |
| Drawbridge DSO Securities LLC | £111,600,000 | 31.9% | 37.2% | £40,896,936 | £47,673,682 | |
| Drawbridge OSO Securities LLC | £12,400,000 | 3.5% | 4.1% | £4,544,104 | £5,297,076 | |
| FCOF UB Securities LLC | £9,500,000 | 2.7% | 3.2% | £3,481,370 | £4,058,244 | |
| Appaloosa Investment Limited Partnership I | £16,454,000 | 4.7% | 5.5% | £6,029,733 | £7,028,878 | |
| Palomino Fund Ltd. | £24,047,000 | 6.9% | 8.0% | £8,812,264 | £10,272,482 | |
| Thoroughbred Master Ltd. | £12,260,000 | 3.5% | 4.1% | £4,492,800 | £5,237,270 | |
| Thoroughbred Fund LP | £11,741,000 | 3.4% | 3.9% | £4,302,607 | £5,015,562 | |
| Elliott International, L.P. | £46,200,000 | 13.2% | 15.4% | £16,930,452 | £19,735,879 | |
| The Liverpool Limited Partnership | £20,800,000 | 5.9% | 6.9% | £7,622,368 | £8,885,417 | |
| **Group Total** | **£300,248,000** | **85.8%** | **100.0%** | **£128,261,000** | **£128,261,000** | |
| 2015s - Total Issue Size | £350,000,000 | | | | | |

| | Owned Face Value | % of Issue | % of Group Total | Payment Paid to All Holders | Payment Paid Only to Group | |
|---|---|---|---|---|---|---|
| **2023s:** | | | | | | |
| Aurelius Investment, LLC | £80,450,000 | 32.2% | 40.8% | £30,584,677 | £38,765,814 | |
| Drawbridge DSO Securities LLC | £6,400,000 | 2.6% | 3.2% | £2,433,088 | £3,083,918 | |
| Drawbridge OSO Securities LLC | £1,600,000 | 0.6% | 0.8% | £608,272 | £770,980 | |
| FCOF UB Securities LLC | £9,500,000 | 3.8% | 4.8% | £3,611,615 | £4,577,691 | |
| Appaloosa Investment Limited Partnership I | £23,534,000 | 9.4% | 11.9% | £8,946,921 | £11,340,145 | |
| Palomino Fund Ltd. | £34,395,000 | 13.8% | 17.4% | £13,075,947 | £16,573,650 | |
| Thoroughbred Master Ltd. | £19,084,000 | 7.6% | 9.7% | £7,255,164 | £9,195,858 | |
| Thoroughbred Fund LP | £18,277,000 | 7.3% | 9.3% | £6,948,367 | £8,806,995 | |
| Elliott International, L.P. | £2,400,000 | 1.0% | 1.2% | £912,408 | £1,156,469 | |
| The Liverpool Limited Partnership | £1,600,000 | 0.6% | 0.8% | £608,272 | £770,980 | |
| **Group Total** | **£197,240,000** | **78.9%** | **100.0%** | **£95,042,500** | **£95,042,500** | |
| 2023s - Total Issue Size | £250,000,000 | | | | | |

| | Owned Face Value | % of Issue | % of Group Total | Payment Paid to All Holders | Payment Paid Only to Group | |
|---|---|---|---|---|---|---|
| **Combined (2015s + 2023s):** | | | | | | |
| Aurelius Investment, LLC | £115,696,000 | 19.3% | 23.3% | £43,500,926 | £53,822,324 | |
| Drawbridge DSO Securities LLC | £118,000,000 | 19.7% | 23.7% | £43,330,024 | £50,757,600 | |
| Drawbridge OSO Securities LLC | £14,000,000 | 2.3% | 2.8% | £5,152,376 | £6,068,055 | |
| FCOF UB Securities LLC | £19,000,000 | 3.2% | 3.8% | £7,092,985 | £8,635,934 | |
| Appaloosa Investment Limited Partnership I | £39,988,000 | 6.7% | 8.0% | £14,976,654 | £18,369,023 | |
| Palomino Fund Ltd. | £58,442,000 | 9.7% | 11.7% | £21,888,211 | £26,846,133 | |
| Thoroughbred Master Ltd. | £31,344,000 | 5.2% | 6.3% | £11,747,964 | £14,433,128 | |
| Thoroughbred Fund LP | £30,018,000 | 5.0% | 6.0% | £11,250,974 | £13,822,557 | |
| Elliott International, L.P. | £48,600,000 | 8.1% | 9.8% | £17,842,860 | £20,892,348 | |
| The Liverpool Limited Partnership | £22,400,000 | 3.7% | 4.5% | £8,230,640 | £9,656,397 | |
| **Group Total** | **£497,488,000** | **82.9%** | **100.0%** | **£223,303,500** | **£223,303,500** | |
| 2015s+2023s - Total Issue Size | £600,000,000 | | | | | |

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023680

## SCHEDULE D

### Escrow Agent's Compensation

See following  pages entitled "Escrow Agent Services Schedule of Fees for General Motors of Canada Limited"

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023681

**Escrow Agent Services**
**Schedule of Fees**
**for**
**General Motors of Canada**
**Limited**

**June 3, 2009**



Go forward.™

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023682

**Escrow Agent Services**
**Schedule of Fees**
June 3, 2009

### Initial Services Fee

One time fee for review and execution of the draft escrow agreement and
related documents, discussions with counsel,  assuming the
responsibilities as escrow agent and other preliminary matters, payable
in advance at closing.................................................................. $50,000.00

### Closing Attendance Fee (if applicable)

For attending the closing and any subsequent closing,
per hour, per officer (after the first hour)................................. $250.00

### Monthly Administration Fee

For continued responsibility as cash  escrow agent, performing general
administrative duties under the escrow agreement and complying with
regulatory requirements; per month, or any part thereof, payable in
advance at closing...................................................................... $10,000.00

### Account Opening

To establish, maintain and reconcile an Escrow Account

   ▫   for the first Escrow Account ............................................. NIL

   ▫   for the second Escrow Account........................................ $20,000.00

### Release of Escrow Funds/Shares

For release of escrow funds, per transaction............................ $500.00

### FINTRAC

Crime Proceeds law compliance ............................................... $ 250.00

### Reserve Account

For any legal expenses (internal and external counsel) which if not used
during the term of the Escrow Agreement will be returned to GMCL....... $50,000.00

### Custody/Safekeeping Fee .......................................... waived

### Income Tax Reporting

Maintain records required per federal and provincial regulation and
prepare T-5, NR-4, R-3 and T5008 account, minimum..................... $500.00 per account

Duplicate and manually prepared forms...................................... $15.00 each

Prepare and submit summaries (T-5, T-3, NR-4, R-3, T5008, NR-18)........ $500.00

**CIBC Mellon**

Confidential                                                                                     1

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

**Escrow Agent Services Schedule of Fees**

## Corporate Resources Fee

A corporate resources fee will be charged to cover internal professional and consulting services on items including, but not limited to, legal and administrative review, all work related to section 6 and 7 of the Escrow Agreement, preparation and execution of documents, litigation, contentious meetings and corporate actions, charged at an hourly rate of $350.00 to $600.00 per person (subject to a minimum charge of $350.00).

## Expenses

The above fees are exclusive of legal and other out-of-pocket expenses.  These expenses include, but are not limited to, travel costs, postage, stationery, printing, ADP-IC charges, legal fees, telecommunication costs, bank charges, payment of invoices, storage of records, storage of excess material, courier and delivery charges.  Out-of-pocket expenses will be billed to you inclusive of our surcharges for the management, recovery and administration of such expenses.

There will also be charges for late arrival of material, rush requests, or overtime incurred.

## General Notes Applicable to these Fees

This fee schedule and our ability to act are based on the information provided to date and are subject to review and acceptance by our New Business Committee upon receipt of further documentation.  Any changes in requirements, costs, practices, market and/or economic conditions, legislation, or circumstances that result in an increase in expenses, work or responsibility required to perform these services will be adjusted in the existing fee schedule accordingly. All fees, unless specified, are quoted in Canadian currency. All fees and expenses are exclusive of any tax (including without limitation GST) or levy chargeable now or which maybe imposed in the future by any governmental authority.

The Initial Services fee will be charged and is payable whether or not the transaction closes.

Payment, other than charges that are being disputed by the Company in good faith, is due within 30 days of invoice mailing date.  Interest will be charged at the monthly rate of 2% (26.82% per year) on the balance outstanding over 30 days past due.

Due to market conditions, interest will not be paid on this account.

Subject to certain exemptions that may apply, please be advised that CIBC Mellon Trust Company is required under applicable legislation including the provisions of the Proceeds of Crime (Money Laundering) and Terrorist Financing Act (Canada) to ascertain your organization's name, physical address, tax identification or other government registration number.  We may also ask for an Articles of Incorporation or other documents that will help us identify you.  Additionally, we are required to obtain and review certain personal documentation (e.g. passports, drivers licenses, etc.) of the individuals that you authorize to give us instructions relating to the operation of your account.  For background on these requirements, you may contact FINTRAC (http://www.fintrac.gc.ca); the regulatory body responsible for administering this legislation.

This fee schedule is confidential and proprietary to CIBC Mellon Trust Company.  It may only be used for the purpose of furthering the transaction for which it is submitted and may not be disclosed to persons who are not parties to such transaction without CIBC Mellon Trust Company's explicit written consent.

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER
NGM000023684

Escrow Agent Services Schedule of Fees

Accepted by:                              Accepted by:

**General Motors of Canada Limited**       **CIBC Mellon Trust Company**

Per: _____            Per: _____

Date: _____            Date: _June 3/09_____

                                          Per: _____

                                          Date: _June 4/09_____

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023685

## SCHEDULE E

### Escrow Account #1 Details

Account Number:  TTYF0004002

in the name of:  CIBC Mellon Trust Company, as Escrow Agent for GMCL, GMNS and the Noteholders

**Pay to:** Sort Code 70-02-25
The Bank of New York Mellon, London
IRVTGB2X
**Favor:** /3325118260
BSDTGB2X
BNY Mellon Asset Servicing
**FFC:** TTYF0004002
CIBC Mellon Trust Company
**IBAN:**  GB05IRVT70022533251160

### Escrow Account #2 Details

Account Number:  TTYF1005002

in the name of:  CIBC Mellon Trust Company, as Escrow Agent for CMNS and the Fiscal and Paying Agent

**Pay to:** Sort Code 70-02-25
The Bank of New York Mellon, London
IRVTGB2X
**Favor:** /3325118260
BSDTGB2X
BNY Mellon Asset Servicing
**FFC:** TTYF1005002
CIBC Mellon Trust Company
**IBAN:**  GB05IRVT70022533251160

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

## EXHIBIT A

### Scrutineer's Report of passing of Extraordinary Resolution

**To:**   **CIBC MELLON TRUST COMPANY**

A.   GMNS has issued £350,000,000 principal amount of 8.375% guaranteed notes, due December 7, 2015 (the "**2015 Notes**") and £250,000,000 principal amount of 8.875% guaranteed notes, due July 10, 2023 (the "**2023 Notes**" and together with the 2015 Notes, the "**Notes**") to certain beneficial owners (the "**Noteholders**"). Each series of Notes are governed by a fiscal and paying agency agreement (the "**Fiscal and Paying Agency Agreement**"), dated as of July 10, 2003, among GMNS, General Motors Corporation, a Delaware corporation ("**GMC**"), Deutsche Bank Luxembourg S.A. (the "**Fiscal Paying Agent**") and Banque Générale du Luxembourg S.A.

B.   Certain Noteholders, including Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., Drawbridge DSO Securities LLC, Drawbridge OSO Securities LLC, FCOF UB Securities LLC, Appaloosa Investment Limited Partnership I, Palomino Fund Ltd., Thoroughbred Master Ltd., Thoroughbred Fund LP, Elliot International, L.P. and The Liverpool Partnership (the "**Holders**") have agreed, pursuant to the terms of a lock up agreement (the "**Lock Up Agreement**"), dated as of June 1, 2009, among GMNS, GMC, GMCL, GM Nova Scotia Investments Ltd. and the Holders, to vote in favour of an extraordinary resolution (the "**Extraordinary Resolution**"), to be considered at a meeting (the "**Meeting**") of the Noteholders, to amend the Fiscal and Paying Agency Agreement and the global securities representing the Notes in exchange for certain cash payments, including the Escrow Amount (as defined herein).

C.   The Meeting was held today and the Extraordinary Resolution was passed by the Noteholders.

Dated the _____ day of _____, 2009.


_____
Scrutineer of Meeting

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

## EXHIBIT B

### Scrutineer's Report of failure to pass Extraordinary Resolution

**To:** **CIBC MELLON TRUST COMPANY**

A.   GMNS has issued £350,000,000 principal amount of 8.375% guaranteed notes, due December 7, 2015 (the "**2015 Notes**") and £250,000,000 principal amount of 8.875% guaranteed notes, due July 10, 2023 (the "**2023 Notes**" and together with the 2015 Notes, the "**Notes**") to certain beneficial owners (the "**Noteholders**"). Each series of Notes are governed by a fiscal and paying agency agreement (the "**Fiscal and Paying Agency Agreement**"), dated as of July 10, 2003, among GMNS, General Motors Corporation, a Delaware corporation ("**GMC**"), Deutsche Bank Luxembourg S.A. (the "**Fiscal Paying Agent**") and Banque Générale du Luxembourg S.A.

B.   Certain Noteholders, including Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., Drawbridge DSO Securities LLC, Drawbridge OSO Securities LLC, FCOF UB Securities LLC,  Appaloosa Investment Limited Partnership I, Palomino Fund Ltd., Thoroughbred Master Ltd., Thoroughbred Fund LP, Elliot International, L.P. and The Liverpool Partnership (the "**Holders**") have agreed, pursuant to the terms of a lock up agreement (the "**Lock Up Agreement**"), dated as of June 1, 2009, among GMNS, GMC, GMCL, GM Nova Scotia Investments Ltd. and the Holders, to vote in favour of an extraordinary resolution (the "**Extraordinary Resolution**"), to be considered at a meeting (the "**Meeting**") of the Noteholders, to amend the Fiscal and Paying Agency Agreement and the global securities representing the Notes in exchange for certain cash payments, including the Escrow Amount (as defined herein).

C.   The Meeting was held today and the Extraordinary Resolution was not passed by the Noteholders.

Dated the _____ day of _____, 2009.


_____
Scrutineer of Meeting

12301865.6

PRODUCED BY GENERAL MOTORS LLC IN GM NOVA SCOTIA MATTER
CONFIDENTIAL - PRODUCED SUBJECT TO PROTECTIVE ORDER

NGM000023688