# EXHIBIT UU

09-50026-mg Doc 11858-8 Filed 06/20/12 Entered 06/20/12 16:33:10 Exhibit H
09-50026-reg Doc 9941-31 Filed 03/29/11 Entered 03/29/11 10:10:04 Exhibit A Pg 2 of 814
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 2 of 27

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
----------------------------------------------------------------x
                                            :
In re                                       :        Chapter 11 Case No.
                                            :
MOTORS LIQUIDATION COMPANY, et al.,         :        09-50026 (REG)
      f/k/a General Motors Corp., et al.    :
                                            :
                       Debtors.             :        (Jointly Administered)
                                            :
----------------------------------------------------------------x
```

## DEBTORS' SECOND AMENDED JOINT CHAPTER 11 PLAN

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000

Attorneys for Debtors and
Debtors in Possession

09-50026-mg   Doc 11858-8   Filed 06/20/12   Entered 06/20/12 16:33:10   Exhibit U14
09-50026-reg   Doc 9941-1   Filed 03/29/11   Entered 03/29/11 19:10:04   Exhibit A   Pg 3 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 3 of 27

## TABLE OF CONTENTS

Page

Article I.    Definitions and Interpretation ................................................................. 1

1.1    363 Transaction............................................................................................ 1

1.2    Administrative Expenses ............................................................................ 1

1.3    ADR Procedures .......................................................................................... 2

1.4    Allowed......................................................................................................... 2

1.5    Asbestos Claimants' Committee................................................................ 2

1.6    Asbestos Claims.......................................................................................... 2

1.7    Asbestos Insurance Assets ....................................................................... 2

1.8    Asbestos Insurance Assets Trust............................................................. 3

1.9    Asbestos Personal Injury Claim ................................................................ 3

1.10   Asbestos Property Damage Claim ............................................................ 3

1.11   Asbestos Trust............................................................................................. 4

1.12   Asbestos Trust Administrator .................................................................... 4

1.13   Asbestos Trust Agreement ......................................................................... 4

1.14   Asbestos Trust Assets ................................................................................ 4

1.15   Asbestos Trust Claim .................................................................................. 4

1.16   Asbestos Trust Distribution Procedures.................................................. 5

1.17   Asbestos Trust Transfer Date.................................................................... 5

1.18   Avoidance Action ........................................................................................ 5

1.19   Avoidance Action Trust............................................................................... 5

1.20   Avoidance Action Trust Administrative Cash.......................................... 5

1.21   Avoidance Action Trust Administrator ..................................................... 5

1.22   Avoidance Action Trust Agreement .......................................................... 6

1.23   Avoidance Action Trust Assets ................................................................. 6

1.24   Avoidance Action Trust Claims Reserve .................................................. 6

1.25   Avoidance Action Trust Monitor ............................................................... 6

1.26   Avoidance Action Trust Transfer Date...................................................... 6

1.27   Ballot............................................................................................................. 6

1.28   Bankruptcy Code ......................................................................................... 6

i

09-50026-mg   Doc 11859-8   Filed 06/20/12   Entered 06/20/12 16:33:19   Exhibit I-8-14
09-50026-reg   Doc 9944-1   Filed 05/29/11   Entered 05/29/11 10:10:04   Exhibit A   Pg 1 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 4 of 27

## TABLE OF CONTENTS
### (continued)

Page

1.29   Bankruptcy Court ........................................................................... 6

1.30   Bankruptcy Rules ........................................................................... 7

1.31   Budget ............................................................................................ 7

1.32   Business Day ................................................................................... 7

1.33   Cash ................................................................................................ 7

1.34   Causes of Action ............................................................................ 7

1.35   Chapter 11 Cases ............................................................................ 7

1.36   Claim .............................................................................................. 7

1.37   Claim Settlement Procedures ......................................................... 7

1.38   Class ............................................................................................... 8

1.39   Collateral ........................................................................................ 8

1.40   Commencement Date ...................................................................... 8

1.41   Confirmation Date .......................................................................... 8

1.42   Confirmation Hearing ..................................................................... 8

1.43   Confirmation Order ......................................................................... 8

1.44   Creditors' Committee ...................................................................... 8

1.45   Debtors ........................................................................................... 8

1.46   Demand ........................................................................................... 8

1.47   DIP Credit Agreement .................................................................... 8

1.48   DIP Credit Agreement Claims ........................................................ 9

1.49   DIP Lenders .................................................................................... 9

1.50   DIP Lenders' Avoidance Actions ................................................... 9

1.51   DIP Lenders' Avoidance Assets ..................................................... 9

1.52   DIP Lenders' Collateral .................................................................. 9

1.53   Disclosure Statement ...................................................................... 9

1.54   Disputed .......................................................................................... 9

1.55   Distribution Record Date .............................................................. 10

1.56   District Court ................................................................................ 10

1.57   EDC ............................................................................................... 10

ii

09-50026-mg Doc 11858-8 Filed 06/20/12 Entered 06/20/12 16:33:10 Exhibit H-4
09-50026-reg Doc 9941-31 Filed 05/29/11 Entered 05/29/11 10:10:04 Exhibit A Pg 5 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation   Pg 5 of 27

## TABLE OF CONTENTS
### (continued)

Page

| | | |
|---|---|---|
| 1.58 | Effective Date | 10 |
| 1.59 | ENCORE | 10 |
| 1.60 | Encumbrance | 10 |
| 1.61 | Entity | 10 |
| 1.62 | Environmental Action | 10 |
| 1.63 | Environmental Laws | 10 |
| 1.64 | Environmental Response Trust | 11 |
| 1.65 | Environmental Response Trust Administrative Funding Account | 11 |
| 1.66 | Environmental Response Trust Administrative Trustee | 11 |
| 1.67 | Environmental Response Trust Agreement | 11 |
| 1.68 | Environmental Response Trust Assets | 11 |
| 1.69 | Environmental Response Trust Consent Decree and Settlement Agreement | 12 |
| 1.70 | Environmental Response Trust Parties | 12 |
| 1.71 | Environmental Response Trust Properties | 12 |
| 1.72 | Environmental Response Trust Transfer Date | 12 |
| 1.73 | Equity Interest | 12 |
| 1.74 | Eurobond Claim | 12 |
| 1.75 | Final Order | 12 |
| 1.76 | Fiscal and Paying Agency Agreements | 13 |
| 1.77 | Fiscal and Paying Agents | 13 |
| 1.78 | Future Claimants' Representative | 13 |
| 1.79 | General Unsecured Claim | 13 |
| 1.80 | Governmental Authorities | 13 |
| 1.81 | GUC Trust | 13 |
| 1.82 | GUC Trust Administrative Fund | 13 |
| 1.83 | GUC Trust Administrator | 14 |
| 1.84 | GUC Trust Agreement | 14 |
| 1.85 | GUC Trust Assets | 14 |
| 1.86 | GUC Trust Monitor | 14 |

09-50026-mg   Doc 11858-8   Filed 06/20/12   Entered 06/20/12 16:33:10   Exhibit U-14
09-50026-reg   Doc 9941-3   Filed 08/29/11   Entered 08/29/11 10:10:04   Exhibit A   Pg 9 of 814
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 6 of 27

## TABLE OF CONTENTS
### (continued)

Page

1.87    GUC Trust Transfer Date ........................................................................ 14

1.88    GUC Trust Units ..................................................................................... 14

1.89    Indentures ............................................................................................... 14

1.90    Indenture Trustee/Fiscal and Paying Agent Reserve Cash ..................... 16

1.91    Indenture Trustees ................................................................................... 16

1.92    Indirect Asbestos Claim .......................................................................... 16

1.93    Initial Debtors ......................................................................................... 17

1.94    Medical Liens .......................................................................................... 17

1.95    MLC ........................................................................................................ 17

1.96    MSPA ...................................................................................................... 17

1.97    New GM ................................................................................................... 17

1.98    New GM Securities .................................................................................. 18

1.99    New GM Stock ......................................................................................... 18

1.100   New GM Warrants ................................................................................... 18

1.101   Note Claim .............................................................................................. 18

1.102   Nova Scotia Guarantee Claims ............................................................... 18

1.103   Nova Scotia Wind-Up Claim .................................................................. 19

1.104   Person ...................................................................................................... 19

1.105   Plan .......................................................................................................... 19

1.106   Plan Supplement ..................................................................................... 20

1.107   Post-Effective Date MLC ........................................................................ 20

1.108   Priority Non-Tax Claim .......................................................................... 20

1.109   Priority Order Sites ................................................................................. 20

1.110   Priority Order Sites Consent Decrees and Settlement Agreements ......... 20

1.111   Priority Tax Claim ................................................................................... 20

1.112   Pro Rata Share ......................................................................................... 20

1.113   Property or Properties ............................................................................. 21

1.114   Property Environmental Claim ............................................................... 21

1.115   Protected Party ........................................................................................ 21

09-50026-mg   Doc 11858-8   Filed 06/20/12   Entered 06/20/12 16:33:10   Exhibit U
09-50026-reg   Doc 994   Filed 08/29/11   Entered 08/29/11 10:10:04   Exhibit A Pg 11 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 7 of 27

# TABLE OF CONTENTS
### (continued)

|  |  | Page |
|---|---|---|
| 1.116 | REALM | 22 |
| 1.117 | Registered Holder | 22 |
| 1.118 | Residual Wind-Down Assets | 22 |
| 1.119 | Schedules | 22 |
| 1.120 | Secured Claim | 22 |
| 1.121 | Solicitation Procedures | 23 |
| 1.122 | Tax Code | 23 |
| 1.123 | Term Loan Avoidance Action | 23 |
| 1.124 | Term Loan Avoidance Action Beneficiaries | 23 |
| 1.125 | Trusts | 23 |
| 1.126 | Unliquidated Litigation Claim | 23 |
| 1.127 | U.S. Treasury | 23 |
| 1.128 | U.S. Trustee | 23 |
| 1.129 | Voting Deadline | 23 |
| Article II. | Administrative Expenses and Priority Tax Claims | 24 |
| 2.1 | Administrative Expenses | 24 |
| 2.2 | Compensation and Reimbursement Claims | 24 |
| 2.3 | Priority Tax Claims | 24 |
| 2.4 | DIP Credit Agreement Claims | 24 |
| 2.5 | Special Provisions Regarding Fees and Expenses of Indenture Trustees and Fiscal and Paying Agents | 26 |
| Article III. | Classification of Claims and Equity Interests | 26 |
| Article IV. | Treatment of Claims and Equity Interests | 27 |
| 4.1 | Class 1 – Secured Claims | 27 |
| 4.2 | Class 2 - Priority Non-Tax Claims | 27 |
| 4.3 | Class 3 - General Unsecured Claims | 27 |
| 4.4 | Class 4 – Property Environmental Claims | 30 |
| 4.5 | Class 5 – Asbestos Personal Injury Claims | 30 |
| 4.6 | Class 6 - Equity Interests in MLC | 31 |
| Article V. | Provisions Governing Distributions | 32 |

09-50026-mg Doc 11858-8 Filed 06/20/12 Entered 06/20/12 16:33:10 Exhibit U-14
09-50026-reg Doc 9941-31 Filed 08/29/11 Entered 08/29/11 10:10:04 Exhibit A Pg 8 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation Pg 8 of 27

## TABLE OF CONTENTS
### (continued)

**Page**

| | | | |
|---|---|---|---|
| 5.1 | | Distribution Record Date | 32 |
| 5.2 | | Method of Distributions Under the Plan | 32 |
| | a. | Payments and Transfers on Effective Date | 32 |
| | b. | Repayment of Excess Cash to DIP Lenders | 33 |
| | c. | Payment of Cash or Certain Assets to Charitable Organizations | 34 |
| | d. | Distributions of Cash | 35 |
| | e. | Sale of New GM Warrants About to Expire | 35 |
| 5.3 | | Delivery of Distributions and Undeliverable Distributions | 35 |
| 5.4 | | Withholding and Reporting Requirements | 36 |
| 5.5 | | Time Bar to Cash Payments | 37 |
| 5.6 | | Minimum Distributions and Fractional Shares or Units | 37 |
| 5.7 | | Setoffs | 38 |
| 5.8 | | Transactions on Business Days | 38 |
| 5.9 | | Allocation of Plan Distribution Between Principal and Interest | 38 |
| 5.10 | | Surrender of Existing Publicly-Traded Securities | 39 |
| 5.11 | | Class Proofs of Claim | 39 |
| Article VI. | | Means for Implementation and Execution of the Plan | 40 |
| 6.1 | | Substantive Consolidation | 40 |
| 6.2 | | The GUC Trust | 40 |
| | a. | Execution of GUC Trust Agreement | 40 |
| | b. | Purpose of GUC Trust | 40 |
| | c. | GUC Trust Assets | 41 |
| | d. | Governance of GUC Trust | 41 |
| | e. | GUC Trust Administrator and GUC Trust Monitor | 41 |
| | f. | Role of GUC Trust Administrator | 42 |
| | g. | Role of GUC Trust Monitor | 41 |
| | h. | Transferability of GUC Trust Interests | 42 |
| | i. | Cash | 42 |
| | j. | Costs and Expenses of GUC Trust Administrator | 42 |

09-50026-mg   Doc 11858-8   Filed 06/20/12   Entered 06/20/12 16:33:10   Exhibit U-14
09-50026-reg   Doc 9941-1   Filed 05/29/11   Entered 05/29/11 10:04   Exhibit A   Pg 9 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation   Pg 9 of 27

# TABLE OF CONTENTS
## (continued)

Page

|   | k. | Compensation of GUC Trust Administrator | 42 |
|---|---|---|---|
|   | l. | Distribution of GUC Trust Assets | 43 |
|   | m. | Retention of Professionals by GUC Trust Administrator and GUC Trust Monitor | 43 |
|   | n. | U.S. Federal Income Tax Treatment of GUC Trust | 43 |
|   | o. | Dissolution | 44 |
|   | p. | Indemnification of GUC Trust Administrator and GUC Trust Monitor | 44 |
|   | q. | Closing of Chapter 11 Cases | 45 |
| 6.3 | The Asbestos Trust | | 45 |
|   | a. | Execution of Asbestos Trust Agreement | 45 |
|   | b. | Purpose of Asbestos Trust | 45 |
|   | c. | Assumption of Certain Liabilities by Asbestos Trust | 45 |
|   | d. | Asbestos Trust Assets | 45 |
|   | e. | Governance of Asbestos Trust | 46 |
|   | f. | The Asbestos Trust Administrator | 46 |
|   | g. | Role of Asbestos Trust Administrator | 46 |
|   | h. | Nontransferability of Asbestos Trust Interests | 46 |
|   | i. | Cash | 46 |
|   | j. | Costs and Expenses of Asbestos Trust | 46 |
|   | k. | Resolution of Asbestos Personal Injury Claims | 46 |
|   | l. | Distribution of Asbestos Trust Assets | 47 |
|   | m. | Retention of Professionals by Asbestos Trust Administrator | 47 |
|   | n. | U.S. Federal Income Tax Treatment of Asbestos Trust | 47 |
|   | o. | Dissolution | 48 |
|   | p. | Indemnification of Asbestos Trust Administrator | 48 |
| 6.4 | The Environmental Response Trust | | 48 |
|   | a. | Environmental Response Trust Agreement and Environmental Response Trust Consent Decree and Settlement Agreement | 48 |

09-50026-reg Doc 11858-2 Filed 06/20/12 Entered 06/20/12 16:38:10 Exhibit A(1) Exhibit A
09-50026-reg Doc 9941 Filed 03/29/11 Entered 03/29/11 10:10:04 Exhibit A Pg 10 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation   Pg 10 of 27

# TABLE OF CONTENTS
## (continued)

Page

| | | | |
|---|---|---|---|
| | b. | Purpose of Environmental Response Trust | 49 |
| | c. | Environmental Response Trust Assets | 49 |
| | d. | Governance of Environmental Response Trust | 50 |
| | e. | Role of Environmental Response Trust Administrative Trustee | 50 |
| | f. | Nontransferability of Environmental Response Trust Interests | 50 |
| | g. | Cash | 50 |
| | h. | Indemnification of Environmental Response Trust Administrative Trustee | 50 |
| | i. | U.S. Federal Income Tax Treatment of Environmental Response Trust | 51 |
| 6.5 | | The Avoidance Action Trust | 51 |
| | a. | Execution of Avoidance Action Trust Agreement | 51 |
| | b. | Purpose of Avoidance Action Trust | 52 |
| | c. | Avoidance Action Trust Assets | 52 |
| | d. | Governance of Avoidance Action Trust | 52 |
| | e. | Avoidance Action Trust Administrator and Avoidance Action Trust Monitor | 52 |
| | f. | Role of Avoidance Action Trust Administrator | 52 |
| | g. | Role of Avoidance Action Trust Monitor | 53 |
| | h. | Nontransferability of Avoidance Action Trust Interests | 53 |
| | i. | Cash | 53 |
| | j. | Distribution of Avoidance Action Trust Assets | 53 |
| | k. | Costs and Expenses of Avoidance Action Trust | 54 |
| | l. | Compensation of Avoidance Action Trust Administrator | 54 |
| | m. | Retention of Professionals by Avoidance Action Trust Administrator and Avoidance Action Trust Monitor | 54 |
| | n. | U.S. Federal Income Tax Treatment of Avoidance Action Trust | 54 |
| | o. | Dissolution | 58 |

09-50026-reg Doc 11858-2 Filed 06/20/12 Entered 06/20/12 16:38:10 Exhibit U(b)
09-50026-reg Doc 9941 Filed 03/29/11 Entered 03/29/11 19:70:04 Exhibit A Pg 11 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 11 of 27

## TABLE OF CONTENTS
### (continued)

Page

|  | p. | Indemnification of Avoidance Action Trust Administrator and Avoidance Action Trust Monitor | 59 |

6.6 Securities Law Matters ................................................................ 59

6.7 Cancellation of Existing Securities and Agreements ............................ 60

6.8 Equity Interests in MLC Subsidiaries Held by the Debtors ................... 61

6.9 Administration of Taxes ............................................................... 61

6.10 Dissolution of the Debtors .......................................................... 61

6.11 Determination of Tax Filings and Taxes ......................................... 62

6.12 Books and Records ................................................................... 63

6.13 Corporate Action ...................................................................... 64

6.14 Effectuating Documents and Further Transactions ............................. 64

6.15 Continued Applicability of Final Order Approving DIP Credit Agreement ............................................................................... 65

Article VII. Procedures for Disputed Claims ............................................. 65

7.1 Objections to Claims and Resolution of Disputed Claims ..................... 65

7.2 No Distribution Pending Allowance ............................................... 66

7.3 Estimation .............................................................................. 67

7.4 Allowance of Disputed Claims ..................................................... 67

7.5 Dividends ............................................................................... 67

Article VIII. Executory Contracts and Unexpired Leases .............................. 67

8.1 Executory Contracts and Unexpired Leases ..................................... 67

8.2 Approval of Rejection of Executory Contracts and Unexpired Leases ................................................................................... 68

8.3 Rejection Claims ...................................................................... 68

Article IX. Effectiveness of the Plan ..................................................... 68

9.1 Condition Precedent to Confirmation of Plan ................................... 68

9.2 Conditions Precedent to Effective Date .......................................... 68

9.3 Satisfaction and Waiver of Conditions ........................................... 69

9.4 Effect of Nonoccurrence of Conditions to Consummation ................... 69

Article X. Effect of Confirmation ........................................................ 70

09-50026-reg Doc 11858-2 Filed 06/20/12 Entered 06/20/12 16:38:10 Exhibit H(b)
09-50026-reg Doc 9941-1 Filed 03/29/11 Entered 03/29/11 19:10:04 Exhibit A Pg 12 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 12 of 27

# TABLE OF CONTENTS
## (continued)

**Page**

| | | |
|---|---|---|
| 10.1 | Vesting of Assets | 70 |
| 10.2 | Release of Assets | 70 |
| 10.3 | Binding Effect | 70 |
| 10.4 | Term of Injunctions or Stays | 71 |
| 10.5 | Term Loan Avoidance Action; Setoffs | 71 |
| 10.6 | Injunction | 71 |
| 10.7 | Injunction Against Interference with Plan | 71 |
| 10.8 | Special Provisions for Governmental Units | 71 |
| Article XI. | Retention of Jurisdiction | 72 |
| 11.1 | Jurisdiction of Bankruptcy Court | 72 |
| Article XII. | Miscellaneous Provisions | 74 |
| 12.1 | Dissolution of Committees | 74 |
| 12.2 | Substantial Consummation | 75 |
| 12.3 | Effectuating Documents and Further Transactions | 75 |
| 12.4 | Exemption from Transfer Taxes | 75 |
| 12.5 | Release | 76 |
| 12.6 | Exculpation | 76 |
| 12.7 | Post-Confirmation Date Fees and Expenses | 77 |
| | a. Fees and Expenses of Professionals | 77 |
| | b. Fees and Expenses of GUC Trust Administrator, Asbestos Trust Administrator, Environmental Response Trust Administrative Trustee, and Avoidance Action Trust Administrator | 78 |
| 12.8 | Payment of Statutory Fees | 78 |
| 12.9 | Modification of Plan | 78 |
| 12.10 | Revocation or Withdrawal of Plan | 78 |
| 12.11 | Courts of Competent Jurisdiction | 79 |
| 12.12 | Severability | 79 |
| 12.13 | Governing Law | 79 |
| 12.14 | Exhibits | 79 |

x

## TABLE OF CONTENTS
### (continued)

**Page**

12.15   Successors and Assigns............................................................................ 79

12.16   Time ........................................................................................................ 79

12.17   Notices .................................................................................................... 80

09-50026-reg Doc 11858-2 Filed 06/20/12 Entered 06/20/12 16:38:10 Exhibit A Pg 14 of 14
09-50026-reg Doc 9941 Filed 03/29/11 Entered 03/29/11 16:09:04 Exhibit A Pg 14 of 27
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 14 of 27

the Creditors' Committee, the Asbestos Claimants' Committee, and the Future Claimants' Representative or (ii) ordered by the Bankruptcy Court, which, when fixed by Final Order or settlement, shall be treated as an Allowed General Unsecured Claim in Class 3 for purposes of distribution from the GUC Trust and the Avoidance Action Trust, as applicable.  For the avoidance of doubt, prior to the determination of the Allowed amount of the Asbestos Trust Claim, the Asbestos Trust Claim is not and shall not be treated as a Disputed General Unsecured Claim, except with respect to determining the Pro Rata Share of New GM Securities to be distributed hereunder.

     **1.16**    **Asbestos Trust Distribution Procedures** means the distribution procedures to be implemented by the Asbestos Trust Administrator pursuant to the Plan and the Asbestos Trust Agreement to process, liquidate, and pay Asbestos Personal Injury Claims, substantially in the form annexed hereto as Exhibit "B."

     **1.17**    **Asbestos Trust Transfer Date** means the date on which the Asbestos Trust Assets are transferred to the Asbestos Trust, which transfer shall occur on the Effective Date, or as soon thereafter as is reasonably practicable, but shall be no later than December 15, 2011.

     **1.18**    **Avoidance Action** means any action commenced, or that may be commenced, before or after the Effective Date pursuant to section 544, 545, 547, 548, 549, 550, or 551 of the Bankruptcy Code, except to the extent purchased by New GM under the MSPA or prohibited under the DIP Credit Agreement.

     **1.19**    **Avoidance Action Trust** means the trust established under the Plan in accordance with the Avoidance Action Trust Agreement.

     **1.20**    **Avoidance Action Trust Administrative Cash** means the Cash held and maintained by the Avoidance Action Trust Administrator for the purpose of paying the expenses incurred by the Avoidance Action Trust Administrator (including fees and expenses for professionals retained by the Avoidance Action Trust) in connection with the Avoidance Action Trust and any obligations imposed on the Avoidance Action Trust Administrator or the Avoidance Action Trust, including expenses relating to the performance of the Avoidance Action Trust Administrator's obligations under the Avoidance Action Trust Agreement and Section 6.5 hereof.  The Debtors shall reserve $1.6 million for the Avoidance Action Trust Administrative Cash, which shall be transferred to the Avoidance Action Trust, less any amounts expended by Post-Effective Date MLC from and after the Effective Date in respect of the prosecution of the Term Loan Avoidance Action, on the Avoidance Action Trust Transfer Date.

     **1.21**    **Avoidance Action Trust Administrator** means the entity appointed by the Debtors, with the consent of the U.S. Treasury and the Creditors' Committee, to serve as administrator of the Avoidance Action Trust, pursuant to the terms of the Avoidance Action Trust Agreement, or as subsequently may be appointed pursuant to the terms of the Avoidance Action Trust Agreement.  The Avoidance Action Trust Administrator

shall be Wilmington Trust Company.  The Avoidance Action Trust Administrator shall be the successor-plaintiff in the Term Loan Avoidance Action.

     **1.22**    **Avoidance Action Trust Agreement** means that certain Avoidance Action Trust Agreement executed by the Debtors and the Avoidance Action Trust Administrator, substantially in the form annexed hereto as Exhibit "G."

     **1.23**    **Avoidance Action Trust Assets** means the (i) Term Loan Avoidance Action transferred to the Avoidance Action Trust and any proceeds thereof (for the benefit of the Term Loan Avoidance Action Beneficiaries), (ii) the Avoidance Action Trust Administrative Cash, and (iii) the remaining assets of MLC transferred to the Avoidance Action Trust upon the dissolution of MLC as set forth in Section 6.10 hereof.

     **1.24**    **Avoidance Action Trust Claims Reserve** means (i) if the Term Loan Avoidance Action Beneficiaries have not been identified on or prior to the Avoidance Action Trust Transfer Date, the Avoidance Action Trust Assets other than the remaining assets of MLC transferred to the Avoidance Action Trust upon the dissolution of MLC and (ii) any Avoidance Action Trust Assets (to the extent not covered by the preceding clause) allocable to, or retained on account of, Disputed General Unsecured Claims, the Asbestos Trust Claim (but only until the Asbestos Trust Claim is determined, as set forth in Section 1.15 hereof), and the potential General Unsecured Claims arising from any successful recovery of proceeds from the Term Loan Avoidance Action or other Avoidance Actions.

     **1.25**    **Avoidance Action Trust Monitor** means the entity appointed by the Debtors, with the consent of the U.S. Treasury and the Creditors' Committee, to oversee the Avoidance Action Trust, pursuant to the terms of the Avoidance Action Trust Agreement, or as subsequently may be appointed pursuant to the terms of the Avoidance Action Trust Agreement.  The Avoidance Action Trust Monitor shall be FTI Consulting, Inc.

     **1.26**    **Avoidance Action Trust Transfer Date** means the date selected by the Debtors, with the consent of the U.S. Treasury and (a) the Creditors' Committee prior to the Effective Date or (b) the GUC Trust Administrator on or after the Effective Date, as applicable, on which the Avoidance Action Trust Assets are transferred to the Avoidance Action Trust, which transfer shall occur on or before December 15, 2011; *provided, however,* that the transfer of the remaining assets of MLC, if any, shall occur upon the dissolution of MLC as set forth in, and in accordance with, Section 6.10 hereof.

     **1.27**    **Ballot** means the form(s) distributed to holders of impaired Claims on which is to be indicated the acceptance or rejection of the Plan.

     **1.28**    **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases.

## ARTICLE VI.

## MEANS FOR IMPLEMENTATION AND EXECUTION OF THE PLAN

**6.1**    **Substantive Consolidation.**

(a)    Entry of the Confirmation Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of MLC of Harlem, Inc.; MLCS, LLC; MLCS Distribution Corporation; Remediation and Liability Management Company, Inc.; and Environmental Corporate Remediation Company, Inc., and their respective estates, into MLC for voting, confirmation, and distribution purposes under the Plan.  Solely for such purposes, on and after the Effective Date, (i) all assets and all liabilities of the Debtors shall be deemed merged into MLC, (ii) all guaranties of any Debtor of the payment, performance, or collection of obligations of another Debtor shall be eliminated and cancelled, (iii) any obligation of any Debtor and all guaranties thereof executed by one or more of the other Debtors shall be treated as a single obligation, and such guaranties shall be deemed a single Claim against the consolidated Debtors, (iv) all joint obligations of two or more Debtors and all multiple Claims against such entities on account of such joint obligations shall be treated and allowed only as a single Claim against the consolidated Debtors, (v) all Claims between or among the Debtors shall be cancelled, and (vi) each Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the consolidated Debtors and a single obligation of the consolidated Debtors on and after the Effective Date.

(b)    The substantive consolidation and deemed merger effected pursuant to Section 6.1(a) hereof shall not affect (other than for purposes related to funding distributions under the Plan and as set forth in Section 6.1(a) hereof) (i) the legal and organizational structure of the Debtors, (ii) defenses to any Causes of Action or requirements for any third party to establish mutuality to assert a right of setoff, and (iii) distributions out of any insurance policies or proceeds of such policies.

**6.2**    **The GUC Trust.**

(a)    **Execution of GUC Trust Agreement.**  On or before the Effective Date, the GUC Trust Agreement, in a form acceptable to the Debtors, the Creditors' Committee, the U.S. Treasury, as a DIP Lender, and the GUC Trust Administrator, shall be executed, and all other necessary steps shall be taken to establish the GUC Trust and the beneficial interests therein, which shall be for the benefit of the holders of Allowed General Unsecured Claims.  This Section 6.2 sets forth certain of the rights, duties, and obligations of the GUC Trust Administrator.  In the event of any conflict between the terms of this Section 6.2 and the terms of the GUC Trust Agreement, the terms of the GUC Trust Agreement shall govern.

(b)    **Purpose of GUC Trust.**  The GUC Trust shall be established to administer certain post-Effective Date responsibilities under the Plan, including, but not limited to, distributing New GM Securities and resolving outstanding Disputed General

09-50026-mg    Doc 11858-2    Filed 06/20/12    Entered 06/20/12 16:38:10    Exhibit Hdq-14
09-50026-reg    Doc 99418-PP    Filed 03/29/01    Entered 03/29/11 18:10:45    Exhibit A    Pg 54 of 814
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 17 of 27

Unsecured Claims to determine the amount of Allowed General Unsecured Claims that will be eligible for distribution of their Pro Rata Share of New GM Securities under the Plan.  If the Residual Wind-Down Assets are transferred to the GUC Trust upon dissolution of MLC, then the GUC Trust shall administer the resolution of all Disputed Administrative Expenses, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Secured Claims.  The GUC Trust has no objective to continue or engage in the conduct of a trade or business.

     (c)    **GUC Trust Assets.**  The GUC Trust shall consist of the GUC Trust Assets.  On the GUC Trust Transfer Date, the Debtors shall transfer all the GUC Trust Assets (other than (i) the New GM Securities, which shall be transferred to the GUC Trust pursuant to Section 5.2(a) hereof, and (ii) the Residual Wind-Down Assets, which shall be transferred to the GUC Trust in accordance with Section 6.10 hereof) to the GUC Trust free and clear of all liens, claims, and encumbrances, except to the extent otherwise provided herein.

     (d)    **Governance of GUC Trust.**  The GUC Trust shall be governed by the GUC Trust Administrator and the GUC Trust Monitor.

     (e)    **GUC Trust Administrator and GUC Trust Monitor.** Wilmington Trust Company shall be the GUC Trust Administrator.  The GUC Trust Administrator shall retain AP Services, LLC to manage the day-to-day operations of the GUC Trust.  FTI Consulting, Inc. shall be the GUC Trust Monitor.

     (f)    **Role of GUC Trust Administrator.**  In furtherance of and consistent with the purposes of the GUC Trust and the Plan, the GUC Trust Administrator shall (i) have the power and authority to hold, manage, sell, invest, and distribute to the holders of Allowed General Unsecured Claims the GUC Trust Assets, (ii) hold the GUC Trust Assets for the benefit of the holders of Allowed General Unsecured Claims, (iii) have the power and authority to hold, manage, sell, invest, and distribute the GUC Trust Assets obtained through the exercise of its power and authority, (iv) have the power and authority to prosecute and resolve (x) objections to Disputed General Unsecured Claims and (y) subject to obtaining any applicable consent from MLC or Post-Effective Date MLC, as the case may be, and any necessary approval of the Bankruptcy Court, any claims for equitable subordination and recharacterization in connection with such objections, (v) have the power and authority to perform such other functions as are provided in the Plan and the GUC Trust Agreement, (vi) have the power and authority to administer the closure of the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules, and (vii) if the Residual Wind-Down Assets are transferred to the GUC Trust upon the dissolution of MLC, then the GUC Trust Administrator shall have the authority to prosecute, resolve objections, and satisfy the Disputed Administrative Expenses, the Disputed Priority Tax Claims, the Disputed Priority Non-Tax Claims, and the Disputed Secured Claims.  The GUC Trust Administrator shall be responsible for all decisions and duties with respect to the GUC Trust and the GUC Trust Assets and shall file periodic public reports on the status of claims reconciliation and distributions.  In all circumstances, the GUC Trust

09-50026-reg Doc 11858-2 Filed 06/20/12 Entered 06/20/12 16:38:10 Exhibit A Pg 18 of 14
09-50026-reg Doc 9941 Filed 03/29/11 Entered 03/29/11 16:39:04 Exhibit A Pg 52 of 14
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 18 of 27

Administrator shall act in the best interests of all beneficiaries of the GUC Trust and in furtherance of the purpose of the GUC Trust, and in accordance with the GUC Trust Agreement and not in its own best interest as a creditor.  Upon the dissolution of MLC, (i) the Indenture Trustee/Fiscal and Paying Agent Reserve Cash shall be transferred to the GUC Trust and the GUC Trust Administrator shall distribute funds to the Indenture Trustees and the Fiscal and Paying Agents from the Indenture Trustee/Fiscal and Paying Agent Reserve Cash as required and (ii) the Residual Wind-Down Assets shall be transferred to the GUC Trust.

(g)    **Role of GUC Trust Monitor.**  In furtherance of and consistent with the purpose of the GUC Trust and the Plan, the GUC Trust Monitor shall oversee the activities of the GUC Trust Administrator as set forth in the GUC Trust Agreement. The GUC Trust Administrator shall report material matters to, and seek approval for material decisions from, the GUC Trust Monitor, as and to the extent set forth in the GUC Trust Agreement.  Without limiting the foregoing, the GUC Trust Administrator shall obtain the approval of the GUC Trust Monitor with respect to settlements of Disputed General Unsecured Claims above a certain threshold and present periodic reports to the GUC Trust Monitor on the GUC Trust distributions and budget.  In all circumstances, the GUC Trust Monitor shall act in the best interests of all beneficiaries of the GUC Trust, in furtherance of the purpose of the GUC Trust, and in accordance with the GUC Trust Agreement.

(h)    **Transferability of GUC Trust Interests.**  Beneficial interests in the GUC Trust shall be transferable to the extent that the transferability thereof would not require the GUC Trust to register the beneficial interests under Section 12(g) of the Securities Exchange Act of 1934, as amended, and otherwise shall not be transferable except as provided in the GUC Trust Agreement.

(i)    **Cash.**  The GUC Trust Administrator may invest Cash (including any earnings thereon or proceeds therefrom) as would be permitted by the GUC Trust Agreement or as otherwise permitted by an order of the Bankruptcy Court, which may include the Confirmation Order.

(j)    **Costs and Expenses of GUC Trust Administrator.**  The costs and expenses of the GUC Trust, including the fees and expenses of the GUC Trust Administrator and its retained professionals, shall be paid out of the GUC Trust Administrative Fund, subject to the provisions of the Budget and the terms of the GUC Trust Agreement.

(k)    **Compensation of GUC Trust Administrator.**  The GUC Trust Administrator shall be entitled to reasonable compensation, subject to the provisions of the Budget and the terms of the GUC Trust Agreement, in an amount consistent with that of similar functionaries in similar types of bankruptcy cases.  Such compensation shall be payable from the GUC Trust Administrative Fund, subject to the terms of the GUC Trust Agreement.

09-50026-reg  Doc 11858-2  Filed 06/20/12  Entered 06/20/12 16:38:10  Exhibit U(b)
09-50026-reg  Doc 9941-1  Filed 03/29/11  Entered 03/29/11 07:03:04  Exhibit A  Pg 50 of 814
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 19 of 27

(l) **Distribution of GUC Trust Assets.**  Subject to Section 5.2(a) hereof, the GUC Trust Administrator shall distribute quarterly (to the extent there are sufficient assets available for distribution in accordance with the GUC Trust Agreement), beginning on the first Business Day following the Effective Date, or as soon thereafter as is practicable, the appropriate amount of New GM Securities (and other distributions of Cash, if any) to holders of Allowed General Unsecured Claims and/or GUC Trust Units, as applicable.  The GUC Trust Administrator shall utilize in accordance with the GUC Trust Agreement Cash from the GUC Trust Administrative Fund (i) in amounts as reasonably necessary to meet contingent liabilities and otherwise address the expenses of the GUC Trust, (ii) to pay reasonable expenses (including, but not limited to, any taxes imposed on the GUC Trust or in respect of the GUC Trust Assets), and (iii) to satisfy other liabilities incurred by the GUC Trust in accordance with the Plan or the GUC Trust Agreement.

(m) **Retention of Professionals by GUC Trust Administrator and GUC Trust Monitor.**  The GUC Trust Administrator and the GUC Trust Monitor may retain and reasonably compensate counsel and other professionals to assist in their duties as GUC Trust Administrator and GUC Trust Monitor on such terms as the GUC Trust Administrator and the GUC Trust Monitor deem appropriate without Bankruptcy Court approval, subject to notice to the U.S. Treasury, as a DIP Lender, and to the provisions of the GUC Trust Agreement.  The GUC Trust Administrator and the GUC Trust Monitor may retain any professional who represented parties in interest, including the Debtors or the Creditors' Committee, in the Chapter 11 Cases.  All fees and expenses incurred in connection with the foregoing shall be payable from the GUC Trust Administrative Fund subject to the provisions of the Budget and the terms of the GUC Trust Agreement.

(n) **U.S. Federal Income Tax Treatment of GUC Trust.**

(i) **Tax Status of GUC Trust.**  For all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtors, the GUC Trust Administrator, and the holders of General Unsecured Claims) shall treat the GUC Trust as a "disputed ownership fund" within the meaning of Treasury Regulation section 1.468B-9.

(ii) **Delivery of Statement of Transfers.**  Following the funding of the GUC Trust (and in no event later than February 15th of the calendar year following the funding of the GUC Trust), MLC shall provide a "§ 1.468B-9 Statement" to the GUC Trust Administrator in accordance with Treasury Regulation section 1.468B-9(g).

(iii) **Tax Reporting.**

(1) The GUC Trust shall file (or cause to be filed) any other statements, returns, or disclosures relating to the GUC Trust that are required by any governmental unit.

09-50026-reg Doc 4185-2 Filed 06/20/12 Entered 06/20/12 16:38:10 Exhibit 44b
09-50026-reg Doc 9941-P Filed 03/29/01 Entered 03/29/11 18:10:04 Exhibit A Pg 67 of 814
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 20 of 27

(2)    The GUC Trust Administrator shall be responsible for payment, out of the GUC Trust Assets, of any taxes imposed on the GUC Trust or the GUC Trust Assets.

(3) The GUC Trust Administrator may request an expedited determination of taxes of the GUC Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the GUC Trust for all taxable periods through the dissolution of the GUC Trust.

(o)    **Dissolution.**  The GUC Trust Administrator and the GUC Trust shall be discharged or dissolved, as applicable, upon completion of their duties as set forth in the GUC Trust Agreement, including when (i) all Disputed General Unsecured Claims have been resolved, (ii) all GUC Trust Assets have been liquidated, (iii) all distributions required to be made by the GUC Trust Administrator under the Plan and the GUC Trust Agreement have been made, and (iv) if the Residual Wind-Down Assets are transferred to the GUC Trust upon dissolution of MLC, all Disputed Administrative Expenses, Disputed Priority Tax Claims, Disputed Priority Non-Tax Claims, and Disputed Secured Claims have been resolved, but in no event shall the GUC Trust be dissolved later than three (3) years from the Effective Date or such shorter or longer period authorized by the Bankruptcy Court in order to resolve all Disputed General Unsecured Claims.

(p)    **Indemnification of GUC Trust Administrator and GUC Trust Monitor.**  The GUC Trust Administrator and the GUC Trust Monitor (and their agents and professionals) shall not be liable for actions taken or omitted in its or their capacity as, or on behalf of, the GUC Trust Administrator, the GUC Trust Monitor, or the GUC Trust, except those acts found by Final Order to be arising out of its or their willful misconduct (including, but not limited to, conduct that results in a personal profit at the expense of the GUC Trust), gross negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, breach of fiduciary duty (to the extent applicable), or *ultra vires* acts, and each shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its or their actions or inactions in its or their capacity as, or on behalf of, the GUC Trust Administrator, the GUC Trust Monitor,  or the GUC Trust, except for any actions or inactions found by Final Order to be involving willful misconduct (including, but not limited to, conduct that results in a personal profit at the expense of the GUC Trust), gross negligence, fraud, malpractice, criminal conduct, unauthorized use of confidential information that causes damages, breach of fiduciary duty (to the extent applicable), or *ultra vires* acts.  Any indemnification claim of the GUC Trust Administrator, the GUC Trust Monitor, and the other parties entitled to indemnification under this subsection shall be satisfied (i) first from the GUC Trust Administrative Fund, (ii) second from the Other GUC Trust Administrative Cash (as defined in the GUC Trust Agreement), and (iii) third from the GUC Trust Distributable Assets (as defined in the GUC Trust Agreement), as provided in the GUC Trust Agreement.  The GUC Trust Administrator and the GUC Trust Monitor shall be entitled to rely, in good faith, on the advice of its retained professionals.

09-50026-reg Doc 9441-8 Filed 03/29/11 Entered 03/29/11 16:38:10 Exhibit A Pg 22 of 14
09-50026-reg Doc 11858-2 Filed 06/20/12 Entered 06/20/12 16:38:10 Exhibit A Pg 21 of 27
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation   Pg 21 of 27

    **(q)**    **Closing of Chapter 11 Cases.**  When all Disputed Claims (other than Asbestos Personal Injury Claims and Property Environmental Claims) filed against the Debtors have become Allowed Claims or have been disallowed by Final Order, all of the GUC Trust Assets and all Avoidance Action Trust Assets, if applicable, have been distributed in accordance with the Plan, and all Allowed Administrative Expenses (other than the DIP Credit Agreement Claims), Priority Tax Claims, Priority Non-Tax Claims, and Secured Claims have been satisfied in accordance with the Plan, the GUC Trust Administrator shall seek authority from the Bankruptcy Court to close the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules.  If at any time the GUC Trust Administrator determines that the expense of administering the GUC Trust so as to make a final distribution to its beneficiaries is likely to exceed the value of the GUC Trust Assets remaining in the GUC Trust, the GUC Trust Administrator shall apply to the Bankruptcy Court for authority to (i) reserve any amounts necessary to close the Chapter 11 Cases, (ii) repay any Cash balance from the GUC Trust Administrative Fund to the DIP Lenders in accordance with Section 5.2(b) of the Plan, and (iii) unless the Chapter 11 Cases have been closed, close the Chapter 11 Cases in accordance with the Bankruptcy Code and Bankruptcy Rules.  Notice of such application shall be given electronically, to the extent practicable, to those parties who have filed requests for notices and whose electronic addresses remain current and operating.

**6.3**    **The Asbestos Trust.**

    **(a)**    **Execution of Asbestos Trust Agreement.**  On or before the Effective Date, the Asbestos Trust Agreement, in a form reasonably acceptable to the Debtors, the Creditors' Committee, the Asbestos Claimants' Committee, and the Future Claimants' Representative, shall be executed, and all other necessary steps shall be taken to establish the Asbestos Trust and the beneficial interests therein, which shall be for the benefit of the holders of Allowed Asbestos Personal Injury Claims.  In the event of any conflict between the terms of this Section 6.3 and the terms of the Asbestos Trust Agreement, the terms of the Asbestos Trust Agreement shall govern.

    **(b)**    **Purpose of Asbestos Trust.**  The Asbestos Trust shall be established to, among other things, (i) direct the processing, liquidation, and payment of all Asbestos Personal Injury Claims in accordance with the Plan, the Asbestos Trust Distribution Procedures, and the Confirmation Order and (ii) preserve, hold, manage, and maximize the assets of the Asbestos Trust for use in paying and satisfying Asbestos Personal Injury Claims.

    **(c)**    **Assumption of Certain Liabilities by Asbestos Trust.**  In consideration of the Asbestos Trust Assets transferred to the Asbestos Trust under the Plan and in furtherance of the purposes of the Asbestos Trust and the Plan, the Asbestos Trust shall assume all liability and responsibility for all Asbestos Personal Injury Claims and the Debtors shall have no further financial or other responsibility or liability therefor.

    **(d)**    **Asbestos Trust Assets.**  The Asbestos Trust shall consist of the Asbestos Trust Assets.  On the Asbestos Trust Transfer Date, the Debtors shall transfer

09-50026-reg Doc 11858-2 Filed 06/20/12 Entered 06/20/12 16:38:10 Exhibit A Pg 64 of 814
09-50026-reg Doc 9941-P Filed 03/29/11 Entered 03/29/11 03:70:04 Exhibit A Pg 64 of 814
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 22 of 27

        **(i)**      **U.S. Federal Income Tax Treatment of Environmental Response Trust.**

        (i)      **Tax Status of Environmental Response Trust.**  Except as provided in the following sentence, for all U.S. federal and applicable state and local income tax purposes, all parties (including, without limitation, the Debtors, the Environmental Response Trust Administrative Trustee, the DIP Lenders, and the holders of Property Environmental Claims relating to the Environmental Response Trust Properties) shall treat the Environmental Response Trust as a "qualified settlement fund" within the meaning of Treasury Regulation section 1.468B-1.  This provision shall not be binding on the Internal Revenue Service as to the application of Treasury Regulation section 1.468B-1 or any other tax issue with respect to the Environmental Response Trust.

        (ii)      **Delivery of Statement of Transfers.**  Following the funding of the Environmental Response Trust (and in no event later than February 15th of the calendar year following the funding of the Environmental Response Trust), MLC shall provide a "§ 1.468B-3 Statement" to the Environmental Response Trust Administrative Trustee in accordance with Treasury Regulation section 1.468B-3(e).

        (iii)      **Other Statements.**  The Environmental Response Trust shall file (or cause to be filed) any other statements, returns, or disclosures relating to the Environmental Response Trust that are required by any governmental unit.

        (iv)      **Tax Payments**.  The Environmental Response Trust Administrative Trustee shall be responsible for payment, out of the Environmental Response Trust Assets, of any taxes imposed on the Environmental Response Trust or the Environmental Response Trust Assets.

        (v)      **Expedited Determination.**  The Environmental Response Trust Administrative Trustee may request an expedited determination of taxes of the Environmental Response Trust under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Environmental Response Trust for all taxable periods through the dissolution of the Environmental Response Trust.

    **6.5**    **The Avoidance Action Trust.**

        **(a)**      **Execution of Avoidance Action Trust Agreement.**  On or before the Effective Date, the Avoidance Action Trust Agreement, in a form acceptable to the Debtors, the U.S. Treasury, the Creditors' Committee, and the Avoidance Action Trust Administrator, shall be executed, and all other necessary steps shall be taken to establish the Avoidance Action Trust and the beneficial interests therein, which shall be for the benefit of the beneficiaries of the Avoidance Action Trust; *provided, however*, that the Avoidance Action Trust Assets shall not be transferred to the Avoidance Action Trust until the Avoidance Action Trust Transfer Date.  In the event of any conflict between the terms of this Section 6.5 and the terms of the Avoidance Action Trust Agreement, the

terms of the Avoidance Action Trust Agreement shall govern.  The Avoidance Action Trust Agreement may provide powers, duties, and authorities in addition to those explicitly stated in the Plan, but only to the extent that such powers, duties, and authorities do not adversely affect the status of the Avoidance Action Trust (or any applicable portion thereof) as a liquidating trust for federal income tax purposes, subject only to the federal income tax treatment of the Avoidance Action Trust Claims Reserve.

         **(b)**     **Purpose of Avoidance Action Trust.**  The Avoidance Action Trust shall be established for the sole purpose of liquidating and distributing its assets, in accordance with Treasury Regulation section 301.7701-4(d), with no objective to continue or engage in the conduct of a trade or business.

         **(c)**     **Avoidance Action Trust Assets.**  The Avoidance Action Trust shall consist of the Avoidance Action Trust Assets.  On the Avoidance Action Trust Transfer Date (except with respect to the remaining assets of MLC upon its dissolution, which shall be transferred to the Avoidance Action Trust, if accepted by the Avoidance Action Trust in the sole discretion of the Avoidance Action Trust Administrator as set forth in, and in accordance with, Section 6.10 hereof), the Debtors shall transfer the Avoidance Action Trust Assets to the Avoidance Action Trust.  Upon delivery of the Avoidance Action Trust Assets to the Avoidance Action Trust, the Debtors and their successors and assigns shall be released from all liability with respect to the delivery of such assets.

         **(d)**     **Governance of Avoidance Action Trust.**  The Avoidance Action Trust shall be governed by the Avoidance Action Trust Administrator and the Avoidance Action Trust Monitor.

         **(e)**     **Avoidance Action Trust Administrator and Avoidance Action Trust Monitor.**  Wilmington Trust Company shall be the Avoidance Action Trust Administrator, and FTI Consulting, Inc. shall be the Avoidance Action Trust Monitor.

         **(f)**     **Role of Avoidance Action Trust Administrator.**  In furtherance of and consistent with the purpose of the Avoidance Action Trust and the Plan, the Avoidance Action Trust Administrator shall (i) have the power and authority to hold and manage the Avoidance Action Trust Assets, (ii) hold the Avoidance Action Trust Assets for the benefit of the beneficiaries of the Avoidance Action Trust, (iii) have the power and authority to prosecute and resolve (in consultation with the U.S. Treasury so long as the holders of the DIP Credit Agreement Claims continue to be a Term Loan Avoidance Action Beneficiary), in the name of the Debtors and/or the names of the Avoidance Action Trust Administrator, the Term Loan Avoidance Action, (iv) have the power and authority to invest and distribute to the Term Loan Avoidance Action Beneficiaries any proceeds of the Term Loan Avoidance Action, (v) have the power to sell, transfer, prosecute, resolve, or otherwise realize upon all other Avoidance Action Trust Assets, (vi) have the power and authority to invest and distribute to the holders of the DIP Credit Agreement Claims any proceeds of any remaining assets of MLC that are transferred to the Avoidance Action Trust in accordance with Section 6.10 hereof, and (vii) have the

Committee to continue their role as members of the Creditors' Committee, as contemplated by Section 12.1 hereof, (iii) permitting the Indenture Trustees and the Fiscal and Paying Agents to receive payment from the Indenture Trustee/Fiscal and Paying Agent Reserve Cash, and (iv) permitting the Indenture Trustees and the Fiscal and Paying Agents to maintain any rights or liens they may have for fees, costs, expenses, and indemnities under the Indentures and the Fiscal and Paying Agency Agreements, against or recoverable from distributions made under the Plan to the Registered Holders and/or beneficial owners of debt securities with respect to the Note Claims and the Eurobond Claims.  Notwithstanding the foregoing or Section 5.10 hereof, nothing contained herein shall affect any rights that a holder of a Note Claim or an Indenture Trustee may have against Delphi Corporation and/or any of its affiliates or successors with respect to that certain Assumption and Assignment Agreement – Industrial Revenue Bonds, dated as of January 1, 1999, between Delphi Automotive Systems LLC and General Motors Corporation and/or any related agreements or documents.  For the avoidance of doubt, nothing contained herein shall affect the rights of the holders of the Nova Scotia Guarantee Claims to assert direct claims, if any, against General Motors Nova Scotia Finance Company.

**6.8    Equity Interests in MLC Subsidiaries Held by the Debtors.**  On the Effective Date, at the option of the Debtors, each respective Equity Interest in a direct or indirect subsidiary of MLC shall be unaffected by the Plan, in which case the Debtor holding such Equity Interests shall continue to hold such Equity Interests and shall cause any such subsidiaries to be dissolved prior to December 15, 2011.  An amount equal to any net proceeds realized from such dissolutions shall be distributed to the DIP Lenders on account of amounts outstanding.

**6.9    Administration of Taxes.**  Subject to the MSPA and the GUC Trust Agreement, MLC shall be responsible for all tax matters of the Debtors until a certificate of cancellation or dissolution for MLC shall have been filed in accordance with Section 6.10 hereof.

**6.10    Dissolution of the Debtors.**  Within thirty (30) days after its completion of the acts required by the Plan, or as soon thereafter as is practicable, but no later than December 15, 2011, each Debtor shall be deemed dissolved for all purposes without the necessity for any other or further actions to be taken by or on behalf of each Debtor; *provided, however,* that each Debtor shall file with the office of the Secretary of State or other appropriate office for the state of its organization a certificate of cancellation or dissolution; and *provided, further,* that upon the filing of such certificate of cancellation or dissolution, each such Debtor immediately shall cease to be, and not continue as, a body corporate for any purpose whatsoever.  Upon the dissolution of MLC (and therefore no later than December 15, 2011), (i) the Residual Wind-Down Assets shall be transferred to the GUC Trust, (ii) the Indenture Trustee/Fiscal and Paying Agent Reserve Cash shall be transferred to the GUC Trust, and (iii) all remaining assets of MLC shall be transferred to the Avoidance Action Trust at the sole discretion of the Avoidance Action Trust Administrator and shall constitute Avoidance Action Trust Assets, and any remaining assets not transferred to the Avoidance Action Trust shall be deemed

09-50026-mg   Doc 11858-2   Filed 06/20/12   Entered 06/20/12 16:38:10   Exhibit Jjjjjjj
09-50026-reg   Doc 9941   Filed 03/29/11   Entered 03/29/11 03:70:04   Exhibit A   Pg 79 of 814
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 25 of 27

abandoned by the Debtors for all purposes without the necessity for any other or further actions to be taken by or on behalf of the Debtors.

### 6.11    <u>Determination of Tax Filings and Taxes</u>.

**(a)**    Following the filing of a certificate of cancellation or dissolution for MLC, subject to Section 6.16(a) of the MSPA and the GUC Trust Agreement, the GUC Trust Administrator shall prepare and file (or cause to be prepared and filed) on behalf of the Debtors, all tax returns, reports, certificates, forms, or similar statements or documents (collectively, "**Tax Returns**") required to be filed or that the GUC Trust Administrator otherwise deems appropriate, including the filing of amended Tax Returns or requests for refunds, for all taxable periods ending on, prior to, or after the Effective Date.

**(b)**    Each of the Debtors and the GUC Trust Administrator shall cooperate fully with each other regarding the implementation of this Section 6.11 (including the execution of appropriate powers of attorney) and shall make available to the other as reasonably requested all information, records, and documents relating to taxes governed by this Section 6.11 until the expiration of the applicable statute of limitations or extension thereof or at the conclusion of all audits, appeals, or litigation with respect to such taxes.  Without limiting the generality of the foregoing, the Debtors shall execute on or prior to the filing of a certificate of cancellation or dissolution for MLC a power of attorney authorizing the GUC Trust Administrator to correspond, sign, collect, negotiate, settle, and administer tax payments and Tax Returns for the taxable periods described in Section 6.11(a) hereof.

**(c)**    The Debtors and the GUC Trust Administrator shall have the right to request an expedited determination of the tax liability of the Debtors, if any, under section 505(b) of the Bankruptcy Code with respect to any tax returns filed, or to be filed, for any and all taxable periods ending after the Commencement Date through the filing of a certificate of cancellation or dissolution for MLC.

**(d)**    Following the filing of a certificate of cancellation or dissolution for MLC, subject to Section 6.16(a) and (d) of the MSPA, the GUC Trust Administrator shall have the sole right, at its expense, to control, conduct, compromise, and settle any tax contest, audit, or administrative or court proceeding relating to any liability for taxes of the Debtors and shall be authorized to respond to any tax inquiries relating to the Debtors (except with respect to any property and ad valorem taxes relating to the Environmental Response Trust Assets).

**(e)**    Following the filing of a certificate of cancellation or dissolution for MLC, subject to the MSPA, the GUC Trust Administrative Fund shall be entitled to the entire amount of any refunds and credits (including interest thereon) with respect to or otherwise relating to any taxes of any Debtors, including for any taxable period ending on, prior to, or after the Effective Date (except with respect to any property and ad valorem tax refunds and credits relating to the Environmental Response Trust Assets).

09-50026-reg   Doc 11858-2   Filed 06/20/12   Entered 06/20/12 16:38:10   Exhibit A Pg 90 of 914
09-50026-reg   Doc 9941-P   Filed 03/29/11   Entered 03/29/11 03:03:04   Exhibit A Pg 90 of 914
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 26 of 27

or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the GUC Trust Administrator previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection.  In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the GUC Trust Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim.  All the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another.  On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn, or otherwise resolved subsequently, without further order of the Bankruptcy Court.  This Section 7.3 shall not apply to Property Environmental Claims, the Nova Scotia Guarantee Claims, or the Nova Scotia Wind-Up Claim.

**7.4**    **Allowance of Disputed Claims.**  If, on or after the Effective Date, any Disputed Claim becomes, in whole or in part, an Allowed Claim, the Debtors, the GUC Trust Administrator, or the Avoidance Action Trust Administrator, as applicable, shall, on the next applicable distribution date following when the Disputed Claim becomes an Allowed Claim, if all other conditions to such distribution have been satisfied, distribute to the holder thereof the distributions, if any, that such holder would have received had its Claim been Allowed on the Effective Date, except as otherwise provided herein.

**7.5**    **Dividends.**  In the event that dividend distributions have been made with respect to the New GM Securities that are in the GUC Trust, such dividends shall be distributed to holders of Allowed Claims in the same manner and at the same time as the New GM Securities to which such dividends relate are distributed.

**ARTICLE VIII.**

**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**8.1**    **Executory Contracts and Unexpired Leases.**  All executory contracts and unexpired leases to which any of the Debtors are parties shall be deemed rejected as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to the order of the Bankruptcy Court approving the 363 Transaction, (ii) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date, (iii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtors no later than thirty (30) days after the Effective Date, or (iv) constitutes an Environmental Trust Asset.

**8.2**    **Approval of Rejection of Executory Contracts and Unexpired Leases.** Entry of the Confirmation Order shall constitute the approval, pursuant to section 365(a)

09-50026-reg Doc 11858-2 Filed 06/20/12 Entered 06/20/12 16:38:10 Exhibit A (Ju) Pg 27 of 27
09-50026-reg Doc 9941 Filed 03/29/11 Entered 03/29/11 03:10:04 Exhibit A Pg 27 of 814
Relevant Excerpts from the Debtors Confirmed Plan of Liquidation    Pg 27 of 27

of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected as of the Effective Date pursuant to the Plan.

**8.3** **Rejection Claims.**  In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors, the GUC Trust Administrator, the Asbestos Trust Administrator, the Environmental Response Trust Administrative Trustee, and the Avoidance Action Trust Administrator, or any property to be distributed under the Plan, the GUC Trust, the Asbestos Trust, the Environmental Response Trust, and the Avoidance Action Trust unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors, the GUC Trust Administrator, the Asbestos Trust Administrator, the Environmental Response Trust Administrative Trustee, and the Avoidance Action Trust Administrator on or before the date that is sixty (60) days after the Effective Date.

**ARTICLE IX.**

**EFFECTIVENESS OF THE PLAN**

**9.1** **Condition Precedent to Confirmation of Plan.**  The following is a condition precedent to the confirmation of the Plan:

**(a)**    The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors.

**9.2** **Conditions Precedent to Effective Date.**  The following are conditions precedent to the Effective Date of the Plan:

**(a)**    The Confirmation Order shall be in full force and effect, and no stay thereof shall be in effect;

**(b)**    The GUC Trust Agreement, the Asbestos Trust Agreement, the Environmental Response Trust Agreement, and the Avoidance Action Trust Agreement shall have been executed;

**(c)**    The applicable GUC Trust Assets shall have been transferred to the GUC Trust;

**(d)**    The Asbestos Trust Assets shall have been transferred to the Asbestos Trust;

**(e)**    The Environmental Response Trust Consent Decree and Settlement Agreement shall have been approved by order of the Bankruptcy Court, such order shall be in full force and effect, and no stay thereof shall be in effect, and the

68