**In re:**
**MOTORS LIQUIDATION COMPANY**, *et al.* **Debtor**

**Chapter 11**
**Case no. 09-50026 (REG)**

**Subject:**
**Response to 281st OMNIBUS Objection to Claim # 62969 Filed by John Haack**

**Attached References:**
**(1) Claim 62969**

On 14 June 2012, the GUC Trust filed a 281st Omnibus objection to certain Claims *(see Note 1)*. I, John Haack, object to the GUC Trust's motion to expunge my claim for the reasons stated below.

1. My claim, # 62969, alleges that the 1995 Grand Prix SE vehicle that General Motors manufactured in 1995 has a serious vehicle control safety defect problem. When a rubber vacuum hose that connects the engine's intake manifold to the power brake booster assembly comes loose or fails, the engine's revolutions per minute (RMPs) will instantaneously accelerate to their maximum value. This will occur with the driver's foot completely off of the accelerator pedal. Also, complete failure of the vehicle's power braking system will simultaneously occur. When this safety defect occurs, the driver is faced with a runaway car that they cannot stop with normal braking action. This can be classified as a collateral safety defect because engine and car speed dramatically increase while at the same time braking capability is significantly reduced. The driver must exert a tremendous amount of force on the brake pedal in order to control and stop the runaway vehicle. If the subject safety defect occurs while the occupant of the vehicle is driving on the freeway in heavy traffic moving along at normal traffic speed, the defect could cause a serious traffic accident with consequential bodily injuries and property damage. This collateral safety defect affects numerous GM W-Body vehicles (Chevrolet, Pontiac, Oldsmobile and Buick) equipped with the V6 3.1 liter Vortec engine and power brake booster assembly.

2. I submitted claim 62969 on 11/26/09. That was over 2.5 years ago. As a record of fact, in claim 62969 I stated that I would withdraw my claim if GM fixed this safety defect problem with a robust design implementation, issued a notice of safety defect to all vehicle owners affected, and then implemented repairs to all vehicles affected. As a record of fact, the Debtor (GM) has had full knowledge of this vehicle defect for well over 2.5 years. Further, GM may have been aware of this safety defect for a considerably longer period of time, yet the old/new GM has done nothing to remedy it. Further, no attempt has been made to notify the public of this defect and of its life threatening consequences. The only action the Debtor has taken to date is to expunge my claim and all knowledge of this serious product safety defect.

3. While driving the 1995 Grand Prix SE that I own, I experienced the consequences of the subject safety defect as explained in my claim. By the grace of God, I was not injured when this defect occurred. Just scared to death. Because I suffered no bodily injury or property damage, the Debtor wants to expunge my claim. My position on this matter is simple, the Debtor needs to notify the public of this serious safety defect and

then fix it!!   In short, do what's ethically right!!  I do not want anyone to suffer bodily injury or property damage as a consequence of this safety defect.

In summary, if the Debtor does not want to notify the public of this serious vehicle safety defect, then I propose that the Court award the proceeds of my claim to an independent agency, perhaps another automobile manufacturer, that will use those proceeds to notify the public of this serious product safety defect and take the action necessary to fix it.

As I explained to the GUC Trust Claim Negotiator, the Court may appoint an independent agent to come to my home in Missouri and test drive my car under the defect conditions specified in Claim 62969.  I reserve the right to have certain members of the press attend this test drive.  I reserve the right to have members of the House Energy and Commerce Committee present at this test drive so that they can provide the same oversight and scrutiny that they executed during the recent Toyota accelerator problem investigation.   I reserve the right to have members of the National Highway Traffic Safety Administration present during this test drive.

During the recent Toyota safety issue inquiry, members of Congress posed five questions.  First: Why didn't Toyota's quality-control measures prevent the problems that affected millions of cars?  Second: How quickly will the automaker be able to bring in and fix those cars? Third: Why was Toyota so slow to make the decisions to recall them? Fourth: Did Toyota **cover up** any early knowledge about the defects, or put its finger on the scales of research meant to find problems with its vehicles? And fifth: Should a grand jury issue subpoenas as the Federal Government launches a criminal investigation into the automobile's safety problems?   It is my opinion that if the Debtor is successsful in expunging my claim and all knowledge of this serious product safety defect, this action could be conscrewed as criminal cover up.  This should not be allowed to happen under any circumstance.

*Note 1:*  The GUC Trust never notified me of the 281st OMNIBUS Objection to my claim.  This violates Federal Rules of Bankruptcy Procedure.  If a third party Law firm (not connected with this case) in New York had not advised me of the 281st OMNIBUS Objection to my claim, I would not have been unaware of this objection and I would not have been able to respond to this objection.  For this reason alone, the GUC Trust's objection to my claim should be over ruled.

# REFERENCE 1

# CLAIM 62969

# PROOF OF CLAIM

**UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

Name of Debtor (Check Only One):

- [X] Motors Liquidation Company (f/k/a General Motors Corporation) — Case No. 09-50026 (REG)
- [ ] MLCS, LLC (f/k/a Saturn, LLC) — 09-50027 (REG)
- [ ] MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) — 09-50028 (REG)
- [ ] MLC of Harlem, Inc. (f/k/a Chevrolet Saturn of Harlem, Inc.) — 09-13558 (REG)

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case, but may be used for purposes of asserting a claim under 11 U.S.C. § 503(b)(9) (see Item # 5). All other requests for payment of an administrative expense should be filed pursuant to 11 U.S.C. § 503.

**Name of Creditor** (the person or other entity to whom the debtor owes money or property): John A. Haack

**Name and address where notices should be sent:**
JOHN A. HAACK
2500 VILLAGE LN
FORISTELL, MO 63348-2422

Telephone number: Home 636-673-2030
Email Address: Bus: 314-232-1818

Name and address where payment should be sent (if different from above):

- [ ] Check this box to indicate that this claim amends a previously filed claim.

Court Claim Number: _____ (If known)

Filed on: _____

- [ ] Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.
- [ ] Check this box if you are the debtor or trustee in this case.

Your Claim is Scheduled As Follows:

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown. (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor, you do not need to file this proof of claim form, EXCEPT AS FOLLOWS: If the amount shown is listed as DISPUTED, UNLIQUIDATED, or CONTINGENT, a proof of claim MUST be filed in order to receive any distribution in respect of your claim. If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

1. **Amount of Claim as of Date Case Filed, June 1, 2009:** $1,000,000.00

   If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4. If all or part of your claim is entitled to priority, complete item 5. If all or part of your claim is asserted pursuant to 11 U.S.C. § 503(b)(9), complete item 5.

   - [ ] Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

2. **Basis for Claim:** Product Defect Liability (See Attachement 1)
   (See instruction #2 on reverse side.)

3. **Last four digits of any number by which creditor identifies debtor:** _____
   3a. Debtor may have scheduled account as: _____
   (See instruction #3a on reverse side.)

4. **Secured Claim** (See instruction #4 on reverse side.)
   Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

   Nature of property or right of setoff: [ ] Real Estate  [ ] Motor Vehicle  [ ] Equipment  [ ] Other
   Describe:
   Value of Property: $ _____   Annual Interest Rate ____ %
   Amount of arrearage and other charges as of time case filed included in secured claim, if any: $ _____
   Basis for perfection: _____
   Amount of Secured Claim: $ _____   Amount Unsecured: $ _____

5. **Amount of Claim Entitled to Priority under 11 U.S.C. § 507(a).** If any portion of your claim falls in one of the following categories, check the box and state the amount.

   Specify the priority of the claim.
   - [ ] Domestic support obligations under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).
   - [ ] Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U.S.C. § 507(a)(4).
   - [ ] Contributions to an employee benefit plan – 11 U.S.C. § 507(a)(5).
   - [ ] Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507(a)(7).
   - [ ] Taxes or penalties owed to governmental units – 11 U.S.C. § 507(a)(8).
   - [ ] Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U.S.C. § 503(b)(9) (§ 507(a)(2))
   - [ ] Other – Specify applicable paragraph of 11 U.S.C. § 507(a)(__).

   Amount entitled to priority:
   $ _____

   *Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.

6. **Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

7. **Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. You may also attach a summary. (See instruction 7 and definition of "redacted" on reverse side.)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain in an attachment.

**Date:** 11/26/09   **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.

John A. Haack

FOR COURT USE ONLY

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.
Modified B10 (GCG) (12/08)

4

Attachment 1

***COMPLAINT FOR LOSS OF VECHICLE CONTROL PRODUCT DEFECT
JURY TRIAL IS REQUESTED AND DEMANDED, NOTIFICATION OF
TRIAL DATE TO BE PROVIDED TO PLAINTIFF 30 DAYS BEFORE TRIAL
DATE.***

**In re:         GENERAL MOTORS CORPORATION / MOTORS
                 LIQUIDATION   COMPANY, ET AL. -  LOSS OF VECHICLE
                 CONTROL PRODUCT DEFECT
DEFENDANT: GENERAL MOTORS CORPORATION / MOTORS
                 LIQUIDATION COMPANY, ET AL.
PLAINTIFF:    JOHN A. HAACK**

1. My claim alleges that the 1995 Grand Prix SE that General Motors manufactured in 1995 has a serious vehicle control defect problem.  The Defendant did not notify vehicle owners of this defect nor did they implement a corrective action to fix the problem.  Note, I own and presently drive a 1995 Grand Prix SE vehicle.  It is equipped with a 3.1 liter engine.

2. Description of the Problem – If the rubber vacuum hose that connects the engine intake manifold to the power brake booster assembly comes loose or fails, the engine's revolutions per minute (RMPs) will instantaneously accelerate to their maximum value.  This will occur with the driver's foot completely off of the accelerator pedal.  Complete loss of the vehicle's power braking function will also simultaneously occur.   When this problem occurs, the driver is faced with a runaway car that they cannot stop with normal braking action.   A tremendous amount of force must be applied to the brake pedal by the driver in order to control and stop the runaway vehicle.

   This defect revealed itself to me one day when I was leaving work.  My car had been parked on a parking lot all day long.  I started the engine, put the transmission in drive and took off.  While I was still exiting the parking lot the engine suddenly went to its maximum RPMs, even with my foot completely removed from the accelerator pedal.  When I tried to stop the vehicle, there was no braking action.   I had to bear down on the pedal with all of my might to slow down the vehicle.  I could not completely stop the vehicle, only slow it down. Fortunately I kept my wits about myself and was able to grab the ignition key and turn off the engine.  This stopped the vehicle.  There was no engine fault light indication or fault code generated.

   If this had happened to me on the freeway while I was driving in heavy traffic moving along at normal traffic speed, I could have been in a serious fatal accident due to loss of vehicle control.

3. Cause of the Problem - There is a rubber hose than goes between the engine intake manifold and the power brake booster assembly (see Figure 1).  In my case, the rubber vacuum hose had completely detached itself at the power brake booster assembly end (see Figure 2).   I determined that the spring clamp that secures the hose to the power brake booster assembly inlet nozzle did not have sufficient clamp

5

pressure to adequately secure the hose/nozzle connection.  I replaced the spring clamp with a radiator hose screw type clamp to fix the problem.  I check the subject hose and clamps periodically to ensure robust connections and that the hose is in good condition.   My fix can be classified as a patch fix at best.  The proper fix would be to redesign the engine control computer's software.  When the control software detects a significant loss in engine vacuum, the control software should turn off the engine and generate an engine code failure.



Figure 1 – Vacuum hose that connects intake manifold to power brake booster

6



Figure 2 – Location where hose came loose from power brake booster assembly

3. I am claiming damages of $1,000,000 as I got the living daylights scared out of me when the subject defect occurred and put my vehicle in an out of control condition. I could have been in a serious fatal accident due to loss of vehicle control if this had happened to me on the freeway. In short, I could have been killed by this defect.

   I will withdraw my claim, with prejudice, if GM fixes this problem with a robust design implementation, issues a notice of defect to all vehicle owners affected, and then implements repairs to their vehicles.

4. Attached below is my car title proving that I own the subject defective vehicle.



8