may be approved or authorized by Distributor to be made at Distributor's expense (hereinafter "Policy Service")   Retailer shall perform such repairs and service on each such Saturn Motor Vehicle as and when requested by owner or user (or in the case of policy service when requested by Distributor), without regard to where such Saturn Motor Vehicle was purchased and in accordance with the Saturn Policy and Procedures Manual    Distributor agrees to compensate Retailer for all warranty repairs and policy service, including labor, diagnosis and Genuine Saturn USA Motor Vehicles Parts and Accessories, in accordance with procedures and at rates to be approved from time to time by Distributor.  Unless otherwise approved in advance by Distributor, Retailer shall use only Genuine Saturn USA Motor Vehicle Parts and Accessories when performing Saturn Motor Vehicle warranty repairs and policy service   Warranty repairs and policy service are provided for the benefit of customers, and Retailer agrees that the customer shall not be obligated to pay any charges for such work or any other services for which Retailer is reimbursed by Distributor, except as required by law

3.      **Service / Recall Campaign Inspections and Corrections**

Retailer agrees to perform service/retail campaign inspections and/or corrections for owners or users of all Saturn Motor Vehicles that qualify for such inspections and/or corrections in accordance with Distributor's directives and the applicable procedures in the Saturn Policy and Procedures Manual. Distributor agrees to reimburse Retailer for all replacement parts and/or other materials required and used in connections with such work and for labor according to such directives and the applicable provisions of the Saturn Policy and Procedures Manual.

C      **USE OF PARTS AND ACCESSORIES IN NON-WARRANTY SERVICE**

Subject to the provisions of Sections I L and III.B.2, Retailer has the right to sell, install or use for making non-warranty repair products that are not Genuine Saturn USA Motor Vehicle Parts and Accessories

1      **Quality Standards**

Retailer acknowledges, however, that its customers expect that any parts or accessories that Retailer sells, installs or uses in the sale, repair or servicing of Saturn Motor Vehicles are, or meet the high quality standards of, Genuine Saturn USA Motor Vehicle Parts and Accessories.  Retailer agrees that in sales, repairs or servicing where Retailer does not use Genuine Saturn USA Motor Vehicle Parts and Accessories, Retailer will utilize only such other parts or accessories as:

(i)      Will not adversely affect the safety, structural integrity, performance, mechanical operation or emissions of the Saturn Motor Vehicle being sold, repaired or serviced; and

(ii)    Are equivalent in quality and design to Genuine Saturn USA Motor Vehicle Parts and Accessories. Retailer further agrees that it will not offer to sell any parts or accessories that for reasons of quality or image are reasonably objected to by Distributor or the Manufacturer.

2.    **Retailer's Disclosures as to Use of and Warranties for Non-Genuine Parts and Accessories**

In order to avoid confusion and to minimize potential customer dissatisfaction, in any non-warranty instance where Retailer sells, installs or uses non-Genuine Saturn USA Motor Vehicle Parts or Accessories, Retailer shall disclose such fact to the customer and shall advise the customer that the item is not included in warranties furnished by Distributor or the Manufacturer. Such disclosure shall be written, conspicuous and stated on the customer's copy of the service or repair order or sale document   In addition, Retailer will clearly explain to the customer the extent of any warranty covering the parts or accessories involved and will deliver a copy of the warranty to the customer

D    <u>COMPLIANCE WITH SAFETY AND EMISSION CONTROL REQUIREMENTS</u>

Retailer agrees to comply and operate consistently with all applicable provisions of National Traffic and Motor Vehicle Safety Act of 1966, and the Federal Clean Air Act, as amended, including applicable rules and regulations issued from time to time there under, and all other applicable federal, state, and local motor vehicle safety and emission control statutes, rules, and regulations.

In event that the laws of the state in which Retailer is located require motor vehicle Retailers or distributors to install in new or used motor vehicles, prior to their sale, any safety devices or other equipment not installed or supplied as standard equipment by the Manufacturer, then Retailer, prior to the sale of any Saturn USA New Motor Vehicle or Prior Saturn Motor Vehicles on which such installations are required, shall properly install such devices or equipment on such Saturn USA New Motor Vehicles or Prior Saturn Motor Vehicles   Retailer shall comply at its expense with state and local laws pertaining to the installation and reporting of such equipment

In the interest of motor vehicle safety and emission control, Distributor and Retailer agree to provide to each other such information and assistance as may reasonably be requested by the other   or the Manufacturer in connection with the performance of obligations imposed on either party by the National Traffic and Motor Vehicle Safety Act of 1966, and the Federal Clean Air Act, as amended, and their rules and regulations, and all other applicable federal, state and local motor vehicle safety and emission control statutes, rules and regulations.

Retailer further agrees that should Distributor place any Saturn USA New Motor Vehicle in Retailer's stock on retail hold pending the resolution of any federal or state regulatory compliance issue, Distributor may, but shall not be required to, elect to repurchase said retail held Saturn USA New Motor Vehicle   Should Distributor so elect, Retailer agrees that it shall immediately sell the Saturn USA New Motor Vehicle back to Distributor and

withhold from retail sale all such Saturn USA New Motor Vehicles still in its inventory at
the time of said election as Distributor may reasonably determine.  In the event of such
a repurchase, the price to be paid by Distributor to Retailer shall be only the price paid
by the Retailer to Distributor for said Saturn USA New Motor Vehicle. Distributor shall
not be obligated to reimburse any other costs to Retailer with respect to Retailer's
purchase or Distributor's repurchase of the Saturn USA New Motor Vehicles  Distributor
shall make payment to the Retailer immediately upon transfer of title to the Saturn USA
New Motor Vehicles to Distributor. During the period from Distributor's repurchase of
Saturn USA New Motor Vehicles until the Saturn USA New Motor Vehicles resale to
Retailer, the subject Saturn USA New Motor Vehicles shall remain in the possession,
custody and control of Retailer as bailee of Distributor  Upon the occurrence of the
resolution of the event requiring the issuance of the retail hold and Saturn USA Motor
Vehicles' repurchase via the issuance of appropriate repair instructions to the Retailer,
Distributor shall resell those Saturn USA New Motor Vehicles to Retailer and Retailer
hereby agrees to accept those Saturn USA New Motor Vehicles and further agrees that
it will only retail sell the Saturn USA New Motor Vehicles upon completion of the work
by Retailer required to bring the Saturn USA New Motor Vehicles into regulatory
compliance.

E.    **COMPLIANCE WITH CONSUMER PROTECTION STATUTES, RULES AND REGULATIONS**

Retailer agrees to comply and operate consistently with all applicable provisions of
consumer protection statutes, rules and regulation (hereinafter "Consumer Protection
Laws").  Because certain customer complaints may impose liability upon Distributor
under Consumer Protection Laws, Retailer agrees to provide prompt notice to
Distributor to such complaints and take such other steps as Distributor may require
Retailer also agrees to provide applicable required customer notifications and
disclosures as prescribed by Consumer Protection Laws.  Retailer will do nothing to
affect adversely Distributor's rights under Consumer Protection Laws.

F.    **INSURANCE REQUIREMENTS**

Retailer shall maintain, at Retailer's expense, adequate fire, general liability, garage
keepers liability, product liability, completed operations liability, automobile liability,
workers compensation and casualty insurance issued by an insurer of recognized
responsibility satisfactory to Distributor with coverage for each occurrence and in an
aggregate amount acceptable to Distributor, and providing coverage for, among other
things, death, bodily injury, property damage and loss of income claims that might arise
under the doctrine of products liability and any other claims that might arise in
connection with the Retail Operations. All insurance shall be placed with a reputable
insurance company having a Financial Size Category equal to or greater than 1x and
Policyholders Rating of 'A+', 'A-' or 'B++' as assigned by Alfred M. Best and Company,
Inc., or any other insurance company approved by Distributor  Each insurance policy
shall list Distributor as an additional insured, shall provide for thirty (30) day's notice to
Distributor prior to cancellation of such insurance, and shall give Distributor the right to
pay any premium due to avoid cancellation of such insurance    The Retailer shall
reimburse Distributor immediately upon demand for any amount paid by Distributor on
behalf of the Retailer to maintain an insurance policy.  Upon request, Retailer shall
furnish Distributor with certificates of insurance, proof of payment of premiums and

copies of insurance policies which evidence the Retailer's compliance with the requirements of this paragraph   Prior to the expiration of any existing policy, the Retailer shall provide proof of the renewal of such policy or the acquisition of a replacement or substitute policy   In addition, the Retailer shall provide proof of insurance within five (5) days of any request by Distributor   Such Insurance shall be maintained In full force and effect at Retailer's sole cost throughout the term of this Agreement (and throughout any period during which Distributor has permitted Retailer to continue any of the Retail Operations despite the expiration or termination of this Agreement)

## IV.    RETAILER'S SERVICE AND PARTS ORGANIZATION

### A.    ORGANIZATION AND STANDARDS

Retailer agrees to organize and maintain a complete service and parts organization of the highest quality, including a qualified service manager, parts manager, diagnostic specialists, technicians and a sufficient complement of qualified service and parts personnel as may be recommended by Distributor. Retailer's personnel will meet the educational, management and technical training standards reasonably established by Distributor and, at Retailer's expense, will complete all service, parts and customer satisfaction training courses prescribed by Distributor.

### B    SERVICE EQUIPMENT AND SPECIAL TOOLS

Anything herein to the contrary notwithstanding, if Distributor determines that Retailer requires specialized tools and service equipment provided by Distributor to its Saturn Retailers (the "Special Tools/Service Equipment") to service a model of Saturn Motor Vehicles,  Retailer acknowledges that it has no right to purchase such model from Distributor unless and until it has acquired all such  Special Tools/Service Equipment and completed all related training courses prescribed by Distributor

Retailer agrees to purchase from Distributor all Special Tools/Service Equipment as may be reasonably required by Distributor and which are the minimum required for the service, maintenance, and repair of Saturn Motor Vehicles regardless of size. Delivery of Special Tools/Service Equipment by Distributor to Retailer will be automatic and via a timetable determined appropriate by Distributor in its reasonable discretion   Retailer may also acquire, at its own discretion, Special Tools/Service Equipment for larger scale repairs.

Retailer agrees to maintain all Special Tools/Service Equipment in operational condition and in calibration as designated by Distributor. Retailer will manage the inventory of Special Tools/Service Equipment using a storage and inventory management system specified by Distributor. Retailer agrees that such inventory and/or physical inventory documentation will be subject to periodic inspection by Distributor

In the event a Retailer utilizes its own body shop, Retailer agrees to acquire Special Tools/Service Equipment for use in the repair of Saturn Motor Vehicles as specified by the Distributor's repair procedure   If Retailer sublets body shop repairs, Retailer shall

monitor, advise, and ensure that these locations are equipped with the necessary Special Tools/Service Equipment, repair instructions, training support and any other items or information necessary to perform the repairs.

**C.    PARTS STOCKING AND SERVICE LEVELS**

Retailer agrees to maintain its parts stock at minimum stocking and service levels reasonably established by Distributor

**D.    ASSISTANCE PROVIDED BY DISTRIBUTOR**

1.    **Service Manuals and Materials**
Distributor agrees to make available in print or online to Retailer copies of such service manuals and bulletins, publications, computer software and technical data as Distributor shall deem to be necessary for the needs of Retailer's service and parts organization. Retailer shall be responsible for keeping such manuals and materials current and available for consultation by its employees.

2.    **Field Personnel Assistance**
To assist Retailer in handling its responsibilities under this Agreement, Distributor agrees to make available, as determined by Distributor in its reasonable discretion, qualified field personnel who will, from time to time, advise and counsel Retailer on service-related subjects determined by Distributor in its reasonable discretion, including service policies, product and technical adjustments, repair and replacement of product components, customer relations, warranty administration, service and parts merchandising, and personnel/management training.

**E.    EVALUATION OF RETAILER'S SERVICE AND PARTS PERFORMANCE**

Distributor will periodically evaluate Retailer's· (i) service performance in areas such as Retailer's service of Saturn Motor Vehicles as a percentage of registrations of Saturn Motor Vehicles in Retailer's AOR, customer satisfaction, warranty administration, service repairs, service management, facilities, operating procedures and new vehicle pre-delivery service; and (ii) parts purchases, sales, operations, facilities, tools and equipment Distributor will review such evaluations with Retailer, and Retailer shall take prompt action to improve the service and parts performance to satisfactory levels as Distributor may require. Such action shall, if requested by Distributor, include an action plan by Retailer for improvement of service and parts performance within a specific time period approved by Distributor, including but not limited to the establishment of additional space, facilities or locations for such operations.

**F.    ADDITIONAL FACILITIES OR LOCATIONS**

If, with Distributor's prior written consent, Retailer establishes additional facilities or locations for its service and parts operations, Retailer shall meet the facilities,

Identification, organizational, equipment, parts stocking and other standards reasonably established by Distributor from time to time for such facilities or locations

## V.    CUSTOMER SATISFACTION RESPONSIBILITIES

Distributor and Retailer intend to conduct their respective businesses in a manner with a goal of achieving the highest levels of customer satisfaction by marketing the finest products and providing the best service in the automotive industry.

### A.    RETAILER'S CUSTOMER SATISFACTION OBLIGATIONS

Retailer agrees to meet or exceed certain customer satisfaction requirements as prescribed by the Distributor on a periodic basis. Retailer will be responsible for satisfying Saturn Motor Vehicle customers in all matters except those that are directly related to product design and manufacturing. Retailer will take all reasonable steps to ensure that each customer is completely satisfied with Saturn Motor Vehicle Products and the services and practices of Retailer. Retailer will not engage in any practice or method of operation if its nature or quality may impair the reputation of Distributor or Saturn Motor Vehicle Products or the Manufacturer.

1.    **Retailer's Customer Satisfaction Plan**
Upon Distributor's request, Retailer shall provide a detailed plan of Retailer's customer satisfaction program to Distributor and shall implement such program on a continuous basis. This plan shall include an ongoing system for emphasizing customer satisfaction to all Retailers' employees, for training Retailer employees and for conveying to customers that Retailer is committed to the highest possible level of customer satisfaction

2.    **Employee Training**
Retailer agrees to participate and to have its employees participate, at Retailer's expense, in Saturn customer satisfaction training as required by Distributor.

3.    **Customer Assistance Response System**
If required by Distributor, Retailer agrees to implement a system approved by Distributor that will respond immediately to requests for customer assistance from Distributor.

### B    EVALUATION OF RETAILER'S CUSTOMER SATISFACTION PERFORMANCE

Distributor periodically will evaluate Retailer's customer satisfaction performance based on the following considerations and efforts by Retailer.

1    Distributor will provide Retailer with Customer Relationship Index reports or such other equivalent data as will permit Retailer to access its performance and maintain the highest level of customer satisfaction. Retailer agrees to review with its employees on a regular basis the results of the customer satisfaction reports or other data it receives

2.      Retailer shall continuously develop and implement specific action plans to improve its customer satisfaction performance and results  The plans are to be reviewed with Distributor on a basis that Distributor deems appropriate. Retailer will respond on a timely basis to requests from Distributor to take action on unsatisfactory customer satisfaction matters and to commit necessary resources to remedy deficiencies reasonably specified by Distributor.

## VI.   RETAIL FACILITIES AND IDENTIFICATION

### A.   LOCATION AND FACILITIES

Retailer shall provide Retail Facilities at the Approved Location(s) that (i) will enable Retailer to effectively perform its responsibilities under this Agreement, (ii) are satisfactory in space, appearance, layout, equipment, and corporate identification, and (iii) are otherwise substantially in accordance with the Retail Capacity Addendum, Facility Image Standards, and such other standards as Distributor may establish from time to time.  Retailer shall conduct its Retail Operations only from the Approved Location(s)  If the Approved Location(s) is of more than one place of business, Retailer shall use each such place of business only for the purposes specified therefore in Paragraph E and the Final Paragraph of this Agreement and, if applicable, in the Retail Capacity Addendum  Retailer agrees to use the Approved Locations and Retail Facilities exclusively for conducting the sales and service of Saturn Motor Vehicle Products. Retailer's inventory of Saturn USA New Motor Vehicles must be located and displayed in a distinct location adjacent to the showroom and cannot be commingled with any other brand.

### B.   CHANGES AND ADDITIONS

Retailer shall not move, relocate or change the designated usage or function of the Approved Location(s) or any of the Retail Facilities, or substantially modify any of the Retail Facilities, nor shall Retailer or any person named in the Final Paragraph of this Agreement directly or indirectly establish or operate any other locations or facilities for the sale or servicing of Saturn Motor Vehicle Products or for the conduct of any other of the Retail Operations contemplated by this Agreement, without the prior written consent of Distributor. Any changes in the Approved Location(s) or the Retail Facilities that may be agreed to by Distributor and Retailer may be reflected in a new agreement or in a new Retail Capacity Addendum

In particular, Retailer acknowledges that the addition of sales, service or parts operations for another line of vehicles to the Retail Facilities or at the Approved Location(s) could adversely affect Retailer's sales, service and parts performance with respect to Saturn Motor Vehicle Products  Accordingly, Retailer agrees that it will not enter into any agreement or letter of intent with respect to the addition of any Non-Saturn sales, service or parts operations to the Retail Facilities or at the Approved Location(s)

C       **RETAILER'S OPERATING HOURS**

Retailer agrees to conduct Retail Operations during all days and hours that are customary and lawful for such operations in the community or locality in which Retailer is located and in accordance with industry standards   In addition, when necessary to accommodate customer needs, Retailer shall extend its operating hours.

D.      **CORPORATE IDENTITY/SIGNS**

Subject to applicable governmental statutes, ordinances and regulations, Retailer agrees to erect, display and maintain, at Approved Location(s) only and at Retailer's sole expense, such standard authorized product and service signs and other corporate identity elements as specified in the Facility Image Standards or otherwise required by Distributor from time to time.

E.      **EVALUATION OF RETAIL FACILITIES**

Distributor will periodically evaluate the Retail Facilities.  In making such evaluations, Distributor may consider, among other things  the actual building and land provided by Retailer for the performance of its responsibilities under this Agreement, compliance with Distributor's current requirements for Retail Operations; the appearance, condition, layout and signage of the Retail Facilities, and such other factors as in Distributor's opinion may relate to Retailer's performance of its responsibilities under this Agreement.  Distributor will discuss such evaluations with Retailer, and Retailer shall take prompt action to comply with Distributor's recommendations and minimum facility standards.

F.      **OWNERSHIP AND USE OF SATURN MARKS**

1       **Validity and Exclusive Ownership of Saturn Marks**

Retailer acknowledges the validity and Distributor's exclusive ownership of the Saturn Marks, and agrees not to contest the same during the term of the Agreement or at any time thereafter   Retailer and Distributor agree to cooperate with each other in preventing any acts of trademark infringement or unfair competition with respect to any Saturn Mark, but Distributor shall have sole control over all actions and legal proceedings to redress infringement of or any unfair competition with respect to any Saturn Mark

2.      **Use by Retailer**

Distributor grants Retailer a non-exclusive license to use the Saturn Marks subject to the terms and conditions of the Agreement and the Facility Image Standards  Retailer agrees that it will use the Saturn Marks only in connection with the sale and servicing of Saturn Motor Vehicle Products and only in such manner, at such location, to such extent, and for such purposes as Distributor may specify from time to time   Retailer shall promptly change or discontinue its use of any Saturn Marks upon Distributor's request.  Retailer shall not use the

Saturn Marks as part of its corporate or business name without Distributor's prior written consent   Retailer shall transfer ownership to Distributor of any domain names registered by Retailer which include the Saturn name.

3.    **Discontinuance of Use**

Upon termination of this Agreement, Retailer agrees that it shall immediately·

(i)    Discontinue the use of the word Saturn and the Saturn Marks, or any semblance of same, including without limitation, the use of all website, stationary, telephone directory listing and other printed material referring in any way to Saturn or bearing any Saturn Marks;

(ii)    Discontinue the use of the word Saturn or the Saturn Marks, or any semblance of same, as part of its business or corporate name, and file a change or discontinuance of such name with appropriate authorities;

(iii)    Remove all product signs bearing said word(s) or Saturn Marks at Retailer's sole cost and expense;

(iv)    Cease representing itself as an authorized Saturn Motor Vehicle Retailer; and

(v)    Refrain from any action, including without limitation, any advertising, stating or implying that it is authorized to sell or distribute Saturn Motor Vehicle Products

4.    **Enforcement**

In the event Retailer fails to comply with the terms and conditions of this Section VI F, Distributor shall have the right, in its sole discretion, to effect compliance through litigation and/or to enter upon Retailer's premises and remove, without liability, all such product signs and identification bearing the word Saturn or any Saturn Mark. Retailer agrees that it shall reimburse Distributor for any costs and expenses incurred in such litigation and/or removal, including reasonable attorney fees and expenses

VII.    <u>**WARRANTIES**</u>

The only warranties of Distributor or the Manufacturer applicable to Saturn Motor Vehicle Products shall be the New Vehicle Warranty or such other written warranties that may be expressly furnished by Distributor   Distributor makes no warranties and specifically disclaims any warranties with respect to Prior Saturn Motor Vehicles.  Except for its express limited liability under such written warranties expressly provided for in herein, Distributor does not assume any additional warranty obligations or liabilities in connection with any Saturn Motor Vehicle Products.  Retailer is not authorized to assume

any additional obligations or liabilities on behalf of Distributor or the Manufacturer  Any such additional obligations assumed by Retailer shall be the sole responsibility of Retailer

Retailer shall expressly incorporate in full and without modification any warranty furnished by Distributor with a Saturn USA New Motor Vehicle as a conspicuous part of each order form or other contact for the sale of such a motor vehicle by Retailer to any customer  Retailer shall make available to the customer of each Saturn Motor Vehicle Product prior to purchase of such Saturn Motor Vehicle Product, copies of such applicable warranties as maybe furnished by Distributor  Retailer shall also provide to the customer of each Saturn Motor Vehicle Product, in full and without modification, any owner's manual, warranty booklet or other owner information which Distributor may provide to Retailer for delivery with such applicable Saturn Motor Vehicle Product. Retailer agrees to abide by and implement in all other respects Distributor's warranty procedures then in effect as set forth in the Saturn Policy Procedures.

VIII.    **CAPITAL, CREDIT, RECORDS AND UNIFORM SYSTEMS**

A.    **NET WORKING CAPITAL**

Retailer agrees to establish and maintain actual net working capital in an amount not less than the minimum net working capital specified by Distributor  Distributor will have the right to modify the amount of net working capital required, and Retailer agrees promptly to establish and maintain the required amount

B.    **FLOORING AND LINES OF CREDIT**

Retailer agrees to obtain and maintain at all times a confirmed and adequate flooring line with a bank or financial institution or other method of financing acceptable to Distributor to enable Retailer to perform its obligations pursuant to this Agreement  Retailer shall or shall cause its floor plan source to notify Distributor in writing in the event that Retailer is no longer in good standing with its flooring source.

Distributor may increase the required amounts of flooring or lines of credit, and Retailer agrees promptly to establish and maintain the increased amount.

Subject to the foregoing obligations, Retailer is free to do its financing business, wholesale, retail or both, with whomever it chooses and to engage in retail financing activity to the extent it desires.

C.    **PAYMENT TERMS**

All monies or accounts due Retailer from Distributor will be considered net of Retailer's indebtedness to Distributor  Distributor may deduct or offset any amounts due or to become due from Retailer to Distributor, or any amounts held by Distributor, from or against any sums or accounts due or to become due from Retailer to Distributor. Payments by Retailer to Distributor shall be made in such a manner as prescribed by Distributor and shall be applied against Retailer's indebtedness in accordance with Distributor's policies and practices  If Retailer disputes any deduction or offset imposed by Distributor pursuant to this Section VII.C, it shall provide written notice of such

dispute to Distributor within ninety (90) days of the date on which Distributor imposed such deduction or offset. If Retailer fails to provide such written notice to Distributor within that 90-day period, it shall be deemed to have waived any right that it may have to challenge such deduction or offset before any court, administrative agency or governmental body. Retailer's open parts account shall be paid in accordance with Distributor's policy.

D.      **UNIFORM ACCOUNTING SYSTEM**

Retailer agrees to maintain its financial books and records in accordance with any accounting requirements issued by Distributor, from time to time. In addition, Retailer shall furnish to Distributor complete and accurate financial or operating information, including without limitation, a financial and/or operating statement covering the current month and calendar year-to-date operations and showing the true and accurate condition of Retailer's business ("Financial Statements"). Retailer shall promptly furnish to Distributor copies of any adjusted annual statements, including any and all adjusted year-end statements prepared for tax or any other purposes. All such information shall be furnished by Retailer to Distributor via Distributor's electronic communications network and in such format and at such times as prescribed by Distributor. If requested by Distributor, Retailer shall furnish to Distributor an audited annual financial statement. Retailer must provide its Financial Statements to Distributor no later than the 10th business day of each month.

E.      **RECORDS MAINTENANCE**

Retailer agrees to keep complete, accurate and current records regarding its sale, leasing and servicing of *Saturn Motor Vehicle Products and Prior Saturn Motor Vehicles* for a minimum of seven (7) years, exclusive of any retention period required by any government entity. Retailer shall prepare, keep current and retain records in support of requests for reimbursement for warranty and policy work performed by Retailer in accordance with the Saturn Policy and Procedures Manual.

F       **EXAMINATION OF RETAILER ACCOUNTS AND RECORDS**

Distributor and, if approved by Distributor in writing, the Manufacturer shall have the right at all reasonable times and during regular business hours to inspect the Retail Facilities and to examine, audit and reproduce all records, accounts and supporting data relating to all Retail Operations for any line of vehicles conducted in the Retail Facilities or at the Approved Location(s), including without limitation, sales reporting, service and repair of Saturn Motor Vehicle Products by Retailer.

G.      **TAXES**

Retailer shall be responsible for and duly pay all sales taxes, use taxes, excise taxes and other governmental or municipal charges imposed, levied or based upon the purchases or sale of Saturn Motor Vehicle Products and Prior Saturn Motor Vehicles by Retailer, and shall maintain accurate records of the same.

H    **CONFIDENTIALITY**

Distributor agrees that it shall not provide any data or documents submitted to it by Retailer to any third party, other than the Manufacturer, unless authorized by Retailer, required by law, or required to generate composite or comparative data for analytic purposes. Retailer agrees to keep confidential and not to disclose, directly or indirectly, any information that Distributor designates as confidential. In addition, Retailer agrees to comply with all applicable laws relating to the handling, security, and sharing of lead and customer data provided by Distributor or the Manufacturer.

I.    **SATURN COMMUNICATIONS SYSTEM AND PROPRIETARY MANUFACTURER SYSTEMS**

Distributor has established or is authorized to use the Saturn Retailer Communications System ("DCS") to retrieve information from and disseminate information to Retailer. The DCS collects parts, warranty and financial data from Retailer, and provides access to various reports, data bases and administrative messages to Retailer. Retailer shall utilize the DCS to provide such information to Distributor as Distributor shall specify from time to time. Retailer shall acquire, install and maintain at its expense the necessary equipment and systems compatible with the DCS, as well as other proprietary manufacturer systems, which are deemed necessary by Distributor and the Manufacturer to transact business and serve customers in the most efficient manner.

J.    **SALES REPORTING**

Retailer agrees to accurately report to Distributor, with such relevant information as Distributor may reasonably require, the delivery of each Saturn Motor Vehicle and pre-owned Saturn vehicle to an ultimate consumer, and to furnish Distributor with such other reports as Distributor may reasonably require in accordance with Distributor's RDR provisions or such other sales reporting requirements (i.e. reporting of sales, customer traffic, and customer order banks) as Distributor may establish from time to time.

IX.    **TRANSFERS**

A.    **SALE OF ASSETS OR OWNERSHIP INTEREST**

This is a personal service agreement that Distributor has entered into in reliance upon personal qualifications, reputation, integrity, expertise and commitment of Owners and Retailer Operator. For this reason, Retailer agrees to obtain Distributor's prior written consent to any proposed sale or transfer of Retailer's principal assets or any ownership interest of Owner, which consent shall not be unreasonably withheld.

Distributor shall not be obligated to execute a new Agreement with a proposed transferee of such assets or ownership interest unless Retailer first makes arrangements acceptable to Distributor to satisfy any outstanding indebtedness to Distributor.

B.     **RIGHT OF FIRST REFUSAL OR OPTION TO PURCHASE**

1     **Rights Granted**

If a proposal to sell Retailer's principal assets or to transfer the majority ownership interest in Retailer is submitted by Retailer to Distributor, or in the event of the death of the majority Owner of Retailer, Distributor has the right of first refusal or option to purchase such assets or ownership interest, including any leasehold interest or realty Distributor's exercise of its right or option under this Section IX.B supersedes Retailer's right to transfer its interest in, or ownership of, Retailer. Distributor's right or option may be assigned by it to any third party and, in such event, Distributor hereby guarantees the full payment to Retailer of the purchase price assigned to such assignee. Distributor shall have the right to disclose the terms of any pending buy/sell agreement and any other relevant Retailer performance information to any potential assignee. Distributor's rights under this section IX B will be binding on and enforceable against any assignee or successor in interest of Retailer or purchaser of Retailer's assets  In the event the proposed sale of assets or transfer in majority interest ("Proposed Sale") includes assets or interests that are not related to Retailer's Saturn business, the right of first refusal shall apply only to portions of the Proposed Sale that relates to the Saturn business.  If the buy/sell agreement does not specifically reference the portion of the purchase price of the Proposed Sale that relates to the Saturn business then Distributor shall reasonably determine the purchase price of the Saturn related portion of the Proposed Sale.  In the event of a transfer of majority ownership interest in a Retailer entity which holds both Saturn and non-Saturn related assets and liabilities, Retailer shall transfer all non-Saturn related assets and liabilities from the Retailer entity prior to the closing of the transaction so that at the closing Distributor or its assignee is acquiring the ownership interest of an entity that holds only Saturn related assets and liabilities.

Anything herein to the contrary notwithstanding, Distributor shall not have a right of first refusal or option to purchase Retailer's principal assets or the majority interest in Retailer if the proposed transferee is the spouse or a child of an Owner and such spouse or child meets the criteria then currently used by Distributor in qualifying owners of Saturn Retailers  If the proposed transferee fails to meet such criteria due to insufficient personal qualifications or expertise, or otherwise Distributor may, in its sole discretion, approve the transfer subject to the proposed transferee's successful completion of such training as Distributor may require.  If the proposed transferee fails to complete such training successfully or otherwise fails to meet the criteria then currently used by Distributor in qualifying such owners within the time period prescribed by Distributor, Distributor may thereafter exercise its right of first refusal or option to purchase under this section IX.B.

2    **Exercise of Distributor's Rights**

Distributor shall have sixty (60) days from the later of any of the applicable following events within which to exercise its option to purchase or right of first refusal: (i) Distributor's receipt of all data and documentation customarily required by it to evaluate a proposed transfer of ownership including, without limitation a full and complete copy of the executed buy/sell document with all schedules, exhibits, amendments, side letters and all of the related documentation; (ii) Distributor's receipt of notice from Retailer of the death of the majority Owner of Retailer, or (iii) Distributor's disapproval of any application submitted by Owner's heirs pursuant to Section X  Distributor's exercise of its right of first refusal under this Section IX.B neither shall be dependent upon nor require its prior refusal to approve the proposed transfer

3.    **Right of First Refusal**

If Retailer has entered into a bona fide written buy/sell agreement for its Retailer business or assets, Distributor's right under this Section IX B is a right of first refusal, enabling Distributor to assume the buyer's rights and obligations under such buy/sell agreement, and to cancel this Agreement and all rights granted Retailer Upon Distributor's request, Retailer agrees to provide other documents relating to the proposed transfer and any other information which Distributor deems appropriate, including, but not limited to, those reflecting other agreements or understandings between the parties to the buy/sell agreement  If Retailer refuses to provide such documentation or to state in writing that no such documents exist, it shall be conclusively presumed that the buy/sell agreement is not a bona fide agreement  If Retailer withdraws its proposal in writing within ten (10) days following Retailer's receipt of Distributor's notice exercising its right of first refusal, such right shall be null and void.

4.    **Option to Purchase**

In the event of the death of the majority Owner, if Retailer submits a proposal which Distributor determines is not bona fide or in good faith, Distributor has the option to purchase the principal assets of Retailer utilized in Retail Operations, including real estate and leasehold interest, and to cancel this Agreement and the rights granted Retailer hereunder  The purchase price of the Retailer assets will be determined by good faith negotiations between the parties

5    Retailer's Obligations

Upon Distributor's exercise of its right or option and tender of performance under the buy/sell agreement or upon whatever terms may be expressed in the buy/sell agreement, Retailer shall forthwith transfer the affected real property by warranty deed conveying marketable title free and clear of all liens, claims, mortgages, encumbrances, tenancies and occupancies. The warranty deed shall be in proper form of recording, and Retailer shall deliver complete possession of the property and deed at the time of closing   Retailer shall also furnish to Distributor all copies of any easements, licenses, or other documents affecting the property or Retail Operations and shall assign any permits or license that are necessary or desirable for the use of or appurtenant to the property of the conduct of such operations.  If the affected real property is a leasehold interest, Retailer shall assign all rights and obligations under the Lease provided that all pre-closing date liabilities under such Lease shall remain the responsibility of Retailer   Retailer also agrees to execute and deliver to Distributor instruments satisfactory to Distributor conveying title to all personal property, including leasehold interests, involved in the transfer or sale to Distributor.  If any personal property is subject to any lien or charge of any kind, Retailer agrees to procure the discharge and satisfaction thereof prior to the closing of the sale of such property to the Distributor.

X    SUCCESSION RIGHTS UPON DEATH OR INCAPACITY

A    SUCCESSION TO OWNERSHIP AFTER DEATH OF OWNER

In the event that an Owner dies and his or her interest in Retailer passes directly to any person or persons ("Heirs") who wish to succeed to Owner's interest, then Owner's legal representative must notify Distributor within sixty (60) days of the death of Owner of such Heir's or Heirs' intent to succeed Owner   The legal representative also must then designate a proposed Retailer Operator for Distributor's approval.    The effect of such notice from Owner's legal representative will be to suspend any notice of termination provided for in Section XI.B.4 issued hereunder

Upon delivery of such notice, Owner's legal representative shall immediately request any person(s) identified by it as intending to succeed Owner and the designated candidate for Retailer Operator to submit an application and to provide all personal and financial information that Distributor may reasonably and customarily require in connection with its review of such applications   All requested information must be provided promptly to Distributor and in no case later than thirty (30) days after receipt of such request from Owner's legal representative.  Distributor shall have sixty (60) days after its receipt of all requested information in which to: (i) review such application(s) pursuant to the then current criteria generally applied by Distributor in qualifying owners and/or

Retailer operators of Saturn Motor Vehicle Products Retailers and (ii) either approve or disapprove the application(s). If all requested information is not received by Distributor within thirty (30) days of Owner's legal representative's request, Distributor shall have no obligation to review and approve or disapprove such application(s) Owner's Heirs shall be required to meet any selection criteria and complete any selection process that is implemented by Distributor. If Distributor approves the application(s), it shall offer to enter into a new Saturn USA Retailer Agreement with Owner's Heir(s) in the form then currently in use, subject to such additional conditions and for such term as Distributor deems appropriate

In the event that Distributor does not approve the designated Heir(s) or designated candidate for Retailer Operator, or if Owner's legal representative withdraws his or her notice of the intent of Heir(s) to succeed as Owner(s), or if the legal representative or any proposed Owner or Retailer Operator fails to timely provide the required information, Distributor may reinstate or issue a notice of termination. This Section X.A. Is subject to, and shall not be deemed to waive, Distributor's right to exercise its option to purchase as set forth in Section IX.

If Distributor has notified Retailer that it does not plan to continue to have a Saturn Motor Vehicle Retailer in Retailer's AOR, Distributor shall have no obligation to execute a new Saturn USA Retailer Agreement with Owner's Heir(s) pursuant to this Section X

B    **INCAPACITY OF OWNER**

The parties agree that, as used herein, incapacity shall refer to any physical or mental ailment that, in Distributor's opinion, adversely affects an Owner's ability to meet his or her obligations under this Agreement Distributor may terminate this Agreement when an incapacitated Owner also is the Retailer Operator identified herein.

Prior to the effective date of any notice of termination, an incapacitated Owner who is also the Retailer Operator, or his or her legal representative, may propose a new candidate for the position of Retailer Operator. Such proposal shall be in writing and shall suspend any pending notice of termination until Distributor advises Retailer of its approval or disapproval of the new candidate. Upon receipt of such notice, Distributor and Retailer shall follow the qualification procedures set forth in Section X.A

C.    **NOMINATION OF SUCCESSOR PRIOR TO DEATH OR INCAPACITY OF OWNER**

An Owner owning a majority of Retailer's stock may nominate a candidate to assume ownership and/or position of Retailer Operator of the Retailer upon his or her death or incapacity.

As soon as practicable after such nomination, Distributor will request such personal financial information from the nominated Owner and/or Retailer Operator candidate as it reasonably and customarily may require in evaluating such candidates.  Distributor shall apply criteria then currently used by Distributor in qualifying owners and/or Retailer operators of Saturn Motor Vehicle Retailers  Upon receipt of all requested information, Distributor shall either approve or disapprove such candidate.  The Successor Addendum shall remain in effect for the remaining term of the Retailer Agreement if the proposed candidate continues to comply with the then current criteria used by Distributor in qualifying such candidates.  If Distributor does not initially qualify the candidate, Distributor agrees to review the reason(s) for its decision with Owner  Owner is free at any time to renew its nomination  However, in such instances, the candidate must again qualify pursuant to the then current criteria.  Owner may, by written notice, withdraw a nomination at any time, even if Distributor has previously qualified said candidate.

## XI.    TERMINATION

### A    VOLUNTARY TERMINATION BY RETAILER

Retailer shall have the right to terminate this Agreement at any time by sending notice of such termination to Distributor, by certified mail, return receipt requested, telegram, or overnight mail service at least one (1) year in advance of the effective date thereof.

### B    TERMINATION FOR CAUSE

1.    **Immediate Termination**
Retailer and Distributor agree that the following conduct is within Retailer's control and is so contrary to the goals, purposes and objectives of this Agreement as to warrant its immediate termination  Accordingly, Retailer agrees that if it engages in any of the following types of conduct, Distributor shall have the right to terminate this Agreement immediately:

(i)    Any attempted or actual sale, transfer or assignment by Retailer of this Agreement or any of the rights granted Retailer hereunder, or any attempted or actual transfer, assignment or delegation by Retailer of any of the responsibilities assumed by it under this Agreement, without prior written consent of Distributor,

(ii)    Subject to the provisions of Section IX, a change by operation of law or otherwise in the direct or indirect ownership of Retailer, whether voluntary of involuntary, from that set forth in the Final Paragraph of this Agreement, except as expressly permitted herein, without the prior written consent of Distributor;

(iii)    Removal, resignation, withdrawal or elimination from Retailer for any reason of the Retailer Operator; provided, however, Distributor shall give Retailer a reasonable period of time within which to replace such person with a Retailer Operator satisfactory to Distributor;

(iv)    The failure of Retailer to conduct all Retail Operations required by this Agreement during and for not less than the customary and lawful hours of five (5) consecutive business days, except in the event such closure or cessation of operation is caused by some physical event beyond the control of the Retailer, such as strikes, civil war, riots, fires, floods, earthquakes, or other acts of God,

(v)    Any undertaking by Retailer to conduct, directly or indirectly, any of the Retail Operations at a location or facility other than those specified in Paragraph E and the Final Paragraph of this Agreement for that Retail Operation or any attempt by Retailer to operate a Non-Saturn brand automobile dealership at the Approved Location(s),

(vi)    Insolvency of Retailer; voluntary institution by Retailer of any proceeding under the federal bankruptcy laws or under any state insolvency law; institution against Retailer of any proceeding under the federal bankruptcy laws or under any state insolvency law which is not vacated within thirty (30) days from the institution thereof, appointment of a receiver, trustee or other office having similar powers for Retailer or Retailer's business, provided such appointment is not vacated within thirty (30) days of the date of such appointment; execution by Retailer of an assignment for the benefit of creditors; or any levy under attachment, foreclosure, execution or similar process whereby a third party acquires rights to a significant portion of the assets of Retailer necessary for the performance of Retailer's responsibilities under this Agreement or to the operation or ownership of Retailer, which is not within thirty (30) days from the date of such levy vacated or removed by payment or bonding,

(vii)    Any material misrepresentation by Retailer or any person named in the Final Paragraph of this Agreement as to any fact relied on by Distributor in entering into, amending or continuing with this Agreement, including without limitation any representation concerning the ownership, management, or capitalization of Retailer;

(viii)    The conviction in a court of original jurisdiction of Retailer or Owner of a crime affecting the Retail Operations or of any felony, or any willful failure to Retailer to comply with the provisions of any laws, ordinances, rules, regulations, or orders relating to the conduct of Retail Operations;

(ix)    The failure of Retailer to obtain or maintain any license, permit or authorization necessary for the conduct by Retailer of Retail Operations pursuant to this Agreement, or the suspension or revocation of such license, permit or authorization.

(x)    Submission of knowingly false or fraudulent report or statement;

(xi)    Submission of knowingly false or fraudulent claim (or statement in support thereof) for payment, reimbursement or for any discount, allowance, refund, rebate, credit or other incentive under any plan that may be offered by Distributor, whether or not Retailer offers or makes restitution;

(xii)    Submission of false financial information;

(xiii)    Submission of false sales reporting data; or

(xiv)    Submission of any false report of statement relating to pre-delivery inspection, testing, warranties, service, repair or maintenance required to the performed by Retailer.

2.    **Termination Upon Sixty Days of Notice**

The following conduct violates the terms and conditions of this Agreement and, if Retailer engages in such conduct, Distributor shall have the right to terminate this Agreement upon sixty (60) days notice if Retailer fails to cure such conduct within the sixty-day period provided in such notice:

(i)    Failure of Retailer to pay Distributor for any Saturn Motor Vehicle Products;

(ii)    Failure of Retailer to establish or maintain the required net working capital or adequate flooring and lines of credit,

(iii)    Any dispute, disagreement or controversy among managers, officers or Owners of Retailer that, in the reasonable opinion of Distributor, adversely affects the ownership, operation, management, business, reputation or interests of Retailer or Distributor;

(iv)    Impairment of the reputation or financial standing of Retailer subsequent to the execution of this Agreement;

(v)    Refusal to permit Distributor to examine or audit Retailer's accounting records or Financial Statements as provided herein upon receipt by Retailer from Distributor of written notice requesting such permission or information;

(vi)    Failure by Retailer to timely furnish accurate sales or financial information and related supporting data, or

(vii)    Breach, default or other violation by Retailer of any other term or provision of this Agreement.

3.    **Termination for Failure of Performance**

If, upon evaluation of Retailer's performance pursuant to Sections II.F, IV.F, V B or VI.E herein, Distributor concludes that Retailer has failed to perform adequately its marketing and sales, service or customer satisfaction responsibilities or to provide adequate Retail Facilities, Distributor shall issue to Retailer a Retailer Improvement Notice notifying it of such failure(s)    Distributor will endeavor to review promptly with Retailer the nature and extent of such failure(s) and will grant Retailer one hundred eighty (180) days or such other period as may be required by law to correct such failure(s). If Retailer fails or refuses to correct such failure(s) or has not made substantial progress towards remedying such failure(s) at the expiration of such period, Distributor may terminate this Agreement upon sixty (60) days notice or such other notice as may be required by law.

4.    **Termination Upon Death or Incapacity**

Subject to certain exceptions identified in Section X, Distributor may terminate this Agreement in the event of the death or an Owner or upon in the incapacity of any Owner's legal representative. Termination upon either of these events shall be effective ninety (90) days from the date of such notice

C    <u>**TERMINATION UPON TERMINATION OF DISTRIBUTORSHIP**</u>

Distributor may terminate this Agreement at any time by written notice to Retailer, such termination to be effective thirty (30) days after receipt of notice by Retailer unless otherwise mutually agreed in writing, if any licensing or distribution agreement pursuant to which Distributor is distributor for Saturn Motor Vehicle Products in the United States of America shall terminate or be terminated without a successor agreement with the same or a different manufacturer.

D    TERMINATION FOR FAILURE OF DISTRIBUTOR TO BE LICENSED

If Distributor fails to obtain or maintain any license, permit, or authorization
necessary for Distributor's performance of its obligations under this Agreement
or if such license, permit or authorization is suspended or revoked, and such
suspension or revocation continues for a period of sixty (60)days, either party
may immediately terminate this Agreement by giving notice to the other party

E.    TERM; AUTOMATIC RENEWAL AND TERMINATION

This Agreement shall terminate after the expiration of the term commencing on
the effective date of this Agreement and expiring on the date set forth in the
Final Paragraph; provided that, this Agreement shall automatically renew and
continue to automatically renew for successive one (1) year terms, unless
Distributor has provided Retailer with a termination notice at least six (6)
months prior to the expiration of the then current term

F.    NOTICE OF TERMINATION

*Any notice of termination under this Agreement shall be in writing and shall be
mailed to the person(s) designated to receive such notice, via overnight mail, or
shall be delivered in person.* Such notice shall be effective upon the date of
receipt.

G    CONTINUANCE OF BUSINESS RELATIONS

Upon receipt of any notice of termination, Retailer agrees to conduct itself and
its operation until the effective date of termination in a manner that will not
injure the reputation or goodwill of the Saturn Marks or Distributor

H    REPURCHASE PROVISIONS

1    Distributor's Obligations

Upon the termination of this Agreement by either party, Distributor
shall have the right to cancel any and all shipments of Saturn Motor
Vehicle Products scheduled for delivery to Retailer   Upon termination
of this Agreement by Distributor, Distributor may elect, at its sole
discretion upon written notice, to repurchase from Retailer all or a
portion of the following *Saturn Motor Vehicle Products*:

(i)    New, unused, unmodified and undamaged Saturn USA New
Motor Vehicles then unsold in Retailer's inventory that are of
the then current model year. The prices of such Vehicles shall
be the same as those at which they were originally purchased

by Retailer, less all prior refunds or other allowances made by Distributor to Retailer with respect thereto.

(ii) New, unused and undamaged Genuine Saturn USA Motor Vehicle Parts and Accessories then unsold in Retailer's inventory that are in good and saleable condition and are listed in the current parts catalog. The prices for such Genuine Saturn USA Parts and Accessories shall be the prices last established by Distributor for the sale of the identical parts or accessories to Saturn motor vehicle Retailers in the area in which Retailer is located less any discounts, allowances or prior refunds provided by Distributor to Retailers.

(iii) Special Tools for the then current model Saturn USA New Motor Vehicles. The prices for such Special Tools will be the price paid by Retailer less depreciation calculated on a straight-line basis over a three-year period, or such other price as the parties may negotiate

(iv) Signs that Distributor has recommended for identification of Retailer and containing Saturn Mark(s). The price of such signs shall be the price paid by Retailer less appropriate depreciation calculated on a straight-line basis over a three-year period, or such other price as the parties may negotiate.

2.    **Retailer's Responsibilities**

If Distributor elects to repurchase all or some of the items pursuant to this Section XI(H); Distributor's repurchase obligations are contingent upon Retailer fulfilling all of the following obligations:

(i) Within thirty (30) days after the effective date of termination of this Agreement, Retailer shall deliver or mail to Distributor a detailed inventory of all items referred to in this Section XI.H that it requests Distributor repurchase and shall certify that such list is true and accurate.

(ii) Retailer shall be entitled to request repurchase of only those items that it purchased from Distributor, unless Distributor agrees otherwise.

(iii) Retailer will deliver to Distributor at Distributor's place of business and at Retailer's expense all Saturn Motor Vehicle Products and Special Tools to be repurchased by Distributor If Retailer fails to do so, Distributor may transfer such items and deduct the cost therefore from the repurchase price

(9/1/2009)    43

(iv)   Retailer will execute and deliver to Distributor instruments satisfactory to Distributor conveying good and marketable title to the aforesaid items to Distributor. If such items are subject to any lien or charge of any kind, Retailer will procure the discharge in satisfaction thereof prior to their repurchase by Distributor Retailer will comply with the requirements of any state or federal laws that relate to the repurchase, including bulk sales or transfer laws

(v)    Retailer will provide to Distributor in writing the names and addresses and any other contact information requested by Distributor of all of its Saturn USA New Motor Vehicle and service customers.

(vi)   Retailer will deliver to Distributor at Distributor's place of business or to a third party designated by the Distributor and at the Retailer's expense any and all sales instruction manuals, promotional materials, technical or service literature, advertising and other printed materials, computer hardware and software or other media relating to Saturn Motor Vehicle Products and Prior Saturn Motor Vehicles and then in Retailer's possession or that were acquired or obtained by Retailer from Distributor

(vii)  Retailer will remove, at its own expense, all signage and corporate identification from Retailer's Approved Location(s), including all Saturn Marks, before it is eligible for payment hereunder and return to the Manufacturer if such signage is owned by the Manufacturer.

3      **Payment by Distributor**

Distributor will pay Retailer for such items as Retailer may request be repurchased subject to the terms of this Section XI (H) and that quantity hereunder as soon as practicable upon Retailer's compliance with all of the obligations set forth herein and upon computation of any outstanding indebtedness of Retailer to Distributor.

Distributor shall have the right to offset from any amounts to Retailer hereunder the total sum of Retailer's outstanding indebtedness to Distributor

If Retailer disagrees with Distributor's valuation of any item herein, and Retailer and Distributor have not resolved their disagreement within ninety (90) days of the effective date of termination of this Agreement, Distributor shall pay to Retailer the amount of which it reasonably believes Retailer is entitled.

(9/1/2009)                              44

XII.    **DEFENSE AND INDEMNIFICATION**

    A.    <u>**DEFENSE AND INDEMNIFICATION BY DISTRIBUTOR**</u>

Distributor agrees to assume the defense of Retailer and to indemnify and hold Retailer harmless as set forth herein in any claims or litigation, whether based on negligence, strict liability or any other legal theory, naming Retailer as a defendant and involving any Saturn USA New Motor Vehicle sold by Distributor to Retailer (a "Product Liability Claim") alleging vehicle defect caused:

1    Damage to third party property;

2.    Property damage solely to the vehicle itself resulting from fire,

3.    Personal injury, or

4.    Death,

*Provided:*

5.    That Retailer delivers to Distributor, in a manner to be designated by Distributor, within twenty (20) days of the service of any summons or complaint, copies of such documents and requests in writing a defense and/or indemnification therein (except as provided in Section XII.D below);

6.    That the complaint does not involve allegations of Retailer misconduct, including but not limited to, improper or unsatisfactory service or repair, misrepresentation, or any claim of Retailer's unfair or deceptive trade practice;

7    That the Saturn USA New Motor Vehicle which is the subject of the lawsuit was not altered by or for Retailer;

8.    That Retailer agrees to cooperate fully in the defense of such action as Distributor may reasonably require; and

9.    Any indemnification hereunder shall be limited to the extent that Manufacturer has, without reservation, assumed the defense of Distributor and actually indemnified or insured Distributor for all costs, liabilities and damages thereunder and, further, to the extent Distributor has actually recovered any indemnification payments or insurance proceeds from the Manufacturer    Distributor shall make reasonable efforts to

(9/1/2009)                45

procure indemnification from or insurance through Manufacturer, however, there can be no assurance any indemnification or insurance coverage will be provided by Manufacturer to Distributor or that Distributor can recover any indemnity payments or insurance proceeds from Manufacturer

Distributor's defense and indemnification obligations hereunder shall not include any claim, liability, damage or lawsuit involving a Saturn Motor Vehicle Product not sold by Distributor to Retailer including those relating to or arising from Prior Saturn Motor Vehicles

8      DEFENSE AND INDEMNIFICATION BY RETAILER

Retailer agrees to assume the defense of Distributor or the Manufacturer and to indemnify and hold them harmless in any lawsuit naming Distributor or the Manufacturer as a defendant when the lawsuit involves allegations of

1.      Retailer's failure to comply, in whole or in part, with any obligation assumed by Retailer under this Agreement,

2      Retailer's negligent or improper inspection, preparation, repair or servicing of a Saturn Motor Vehicle Product, Prior Saturn Motor Vehicle or pre-owned Saturn motor vehicle or such other motor vehicles or equipment as may be sold or serviced by Retailer;

3.      Retailer's alleged breach of any contract or warranty other than that provided by Distributor or the manufacturer;

4      Retailer's alleged misleading statements, misrepresentations, or deceptive or unfair trade practices;

5.      Any modification or alteration made by or on behalf of Retailer to a Saturn Motor Vehicle Product, Prior Saturn Motor Vehicle or pre-owned Saturn motor vehicle except those made pursuant to the express written instruction or with the express written approval of Distributor,

6      Any change in the employment status or in the terms or conditions of employment of any officer, employee, or agent of Retailer or of any Owner or the Retailer Operator, including but not limited to claims for breach of employment contact, wrongful termination or discharge, tortuous interference with contract or economic advantage, and similar claims; and

*Provided:*

(9/1/2009)                              46

7          That Distributor delivers to Retailer, within twenty (20) days of the service of any summons or complaint, copies of such documents, and requests in writing a defense and/or indemnification therein (except as provided in Section XII D below),

8          That Distributor agrees to cooperate fully in the defense of such action such as Retailer may reasonably require; and

9.         That the complaint does not involve allegations of liability premised upon Distributor's separate conduct or omissions

C.   **CONDITIONAL DEFENSE AND/OR INDEMNIFICATION**

In agreeing to defend and/or indemnify each other, Retailer and Distributor may make their agreement conditional on the continued existence of that state of facts as then known to such party and may provide for the withdrawal of such defense and/or indemnification at such time as facts arise which, if known at the time of the original request for a defense and/or indemnification, would have caused either Retailer or Distributor to refuse such request.

The party withdrawing from its agreement to defend and/or indemnify shall give timely notice of its intent to withdraw. Such notice shall be in writing and shall be effective upon receipt. The withdrawing party shall be responsible for all costs and expenses of defense up to the date of receipt of its notice to withdrawal.

D.   **THE EFFECT OF SUBSEQUENT DEVELOPMENTS**

In the event that subsequent developments in a case make clear that the allegations which initially precluded a request or an acceptance of a request for a defense and/or indemnification are no longer at issue therein or are without foundation, any party having a right to a defense and/or indemnification hereunder may tender such request to the other party and the non-tendering party shall be required to agree to such subsequent request for a defense and/or indemnification where the non-tendering party would not be unduly prejudiced by such delay

E.   **TIME TO RESPOND AND RESPONSIBILITIES OF THE PARTIES**

Retailer and Distributor shall have sixty (60) days from the receipt of a request for a defense and/or indemnification to conduct an investigation to determine whether or not, or under what conditions, it may agree to defend and/or indemnify pursuant to this Section.

If local rules require a response to complaint in the lawsuit prior to the time provided hereunder for a response for such request, the requesting party shall take all steps necessary, including obtaining counsel, to protect its own interest