*14.5.3* Failure of Dealer to conduct customary sales and service operations during customary business hours for seven consecutive business days

*14.5.4* Any misrepresentation to General Motors by Dealer or by any Dealer Operator or owner in applying for this Agreement, or in identifying the Dealer Operator, or record of beneficial ownership of Dealer

*14.5.5* Submission by Dealer of false applications or claims for any payment, credit, discount, or allowance, including false applications in connection with incentive activities, where the false information was submitted to generate a payment to Dealer for a claim which would not otherwise have qualified for payment

Termination for failure to correct other breaches will be according to the procedures outlined in Article 13

## 14 6    Reliance on Any Applicable Termination Provision

The terminating party may select the provision under which it elects to terminate without reference in its notice to any other provision that may also be applicable The terminating party subsequently also may assert other grounds for termination

## 14.7    Transactions After Termination
### 14.7.1 Effect on Orders

If Dealer and General Motors do not enter into a new Dealer Agreement when this Agreement expires or is terminated, all of Dealer's outstanding orders for Products will be automatically canceled except as provided in this Article 14 7

Termination of this Agreement will not release Dealer or General Motors from the obligation to pay any amounts owing the other, nor release Dealer from the obligation to pay for Special Vehicles if General Motors has begun processing such orders prior to the effective date of termination

### 14.7.2    Termination Deliveries

If this Agreement is voluntarily terminated by Dealer or expires or is terminated because of the death or incapacity of a Dealer Operator or death of a Dealer Owner, without a termination or expiration deferral, General Motors will use its best efforts consistent with its distribution procedures to furnish Dealer with Motor Vehicles to fill Dealer's bona fide retail sold orders with customers as of the effective date of termination or expiration, not to exceed, however, the total number of Motor Vehicles invoiced to Dealer for retail sale during the three months immediately preceding the effective date of termination

### 14.7.3 *Effect of Transactions After*
### *Termination*

Neither the sale of Products to Dealer nor any other act by General Motors or Dealer after termination of this Agreement will be construed as a waiver of the termination

# ARTICLE 15.  TERMINATION ASSISTANCE

## 15.1  *Deferral of Effective Date*

If this Agreement is scheduled to expire or terminate because of the death or incapacity of a Dealer Operator or the death of a Dealer Owner and Dealer requests an extension of the effective date of expiration or termination thirty days prior to such date, General Motors will defer the effective date for up to a total of eighteen months after such death or incapacity occurs to assist Dealer in winding up its Dealership Operations

## 15.2  *Purchase of Personal Property*
### 15.2.1  *General Motors*
#### *Obligations*

If this Agreement a) expires or is terminated by Dealer, and General Motors does not offer Dealer or a replacement dealer a new dealer agreement, or b) is terminated by General Motors for cause under the Dealer Agreement, General Motors will offer to purchase the following items of personal property (herein called Eligible Items) from Dealer at the prices indicated

(a) New and unused Motor Vehicles of the current model year purchased by Dealer from General Motors at a price equal to the net prices and charges that were paid to General Motors,

(b) Any signs owned by Dealer of a type recommended in writing by General Motors and bearing any Marks at a price agreed upon by General

Motors and Dealer  If General Motors and Dealer cannot agree on a price, they will select a third party who will set the price,

(c) Any essential tools recommended by General Motors and designed specifically for service of Motor Vehicles that General Motors offered for sale during the three years preceding termination at prices established in accordance with the applicable pricing formula in the Service Policies and Procedures Manual, and

(d) Unused and undamaged Parts and Accessories that (i) are still in the original, re-salable merchandising packages and in unbroken lots (in the case of sheet metal, a comparable substitute for the original package may be used), (ii) are listed for sale in the then current Dealer Parts and Accessories Price Schedules (except those items marked **NOT ELIGIBLE** Parts and Accessories), and (iii) were purchased by Dealer either directly from General Motors or from an outgoing dealer as a part of Dealer's initial Parts and Accessories inventory Prices will be those dealer prices in effect at the time General Motors receives the Parts and Accessories, less any applicable allowances whether or not any such allowances were made to Dealer when Dealer purchased the Parts and Accessories  In addition, an allowance of five percent of dealer price for packing costs and reimbursement for transportation charges to the destination specified by General Motors will be credited to Dealer's account

### 15.2.2 Dealer's Responsibilities

General Motors obligation to purchase Eligible Items is subject to Dealer fulfilling its responsibility under this subsection

Within fifteen days following the effective date of termination or expiration of this Agreement, Dealer will furnish General Motors with a list of vehicle identification numbers and such other information as General Motors may request pertaining to eligible Motor Vehicles Dealer will deliver the eligible Motor Vehicles to a destination determined by General Motors that will be in a reasonable proximity to Dealer's Premises

Within two months following the effective date of termination or expiration of this Agreement, Dealer will mail or deliver to General Motors a complete and separate list of each of the Eligible Items other than Motor Vehicles Dealer will retain the Eligible Items until receipt of written shipping instructions from General Motors Within thirty days after receipt of instructions, Dealer will ship the Eligible Items, transportation charges prepaid, to the destinations specified in the instructions

Dealer will take action and execute and deliver such instruments as necessary to (a) convey to General Motors good and marketable title to all Eligible Items to be purchased, (b) comply with the requirements of any applicable state law relating to bulk sales or transfer, and (c) satisfy and discharge any liens or encumbrances on Eligible Items prior to their delivery to General Motors

### 15.2.3 Payment

Subject to Article 17 10, General Motors will pay for the Eligible Items as soon as practicable following their delivery to the specified destinations Payment may be made directly to anyone having a security or ownership interest in the Eligible Items

If General Motors has not paid Dealer for the Eligible Items within two months after delivery, and if Dealer has fulfilled its termination obligations under this Agreement, General Motors will, at Dealer's written request, estimate the purchase price of the unpaid Eligible Items and all other amounts owed Dealer by General Motors After deducting the amounts estimated to be owing General Motors and its subsidiaries by Dealer, General Motors will pay Dealer 75 percent of the net amount owed Dealer and will pay the balance, if any, as soon as practicable thereafter

### 15.2.4 Replacement Dealer

If Dealer intends to terminate its Dealer Agreement and General Motors has approved a replacement dealer, the Dealer or replacement dealer may submit electronically to General Motors prior to the closing a listing of the Dealer's parts inventory, and General Motors will advise the Dealer or replacement dealer within thirty days what parts General Motors is willing to repurchase under General Motors policies and procedures then in effect upon Dealer's termination of its Dealer Agreement General Motors will assist the replacement dealer in establishing an appropriate Motor Vehicle inventory as provided in Article 6 4 1

### 15.3    Assistance on Premises

#### 15.3.1  General Motors Obligation

Subject to Article 17 10, General Motors agrees to give Dealer assistance in disposing of the Premises as provided below if (i) this Agreement expires for any reason or is terminated by General Motors under Articles 13 2 or 14 4 and (ii) Dealer is not offered a new Dealer Agreement Such assistance shall be given only on Premises that are described in the Location and Premises Addendum and only if

(a) they are used solely for Dealership Operations (or similar dealership operations under other agreements with    General Motors which will be terminated simultaneously with this Agreement), and

(b) they are not substantially in excess of space requirements at the time of termination or, if they are substantially in excess, they became excessive because of a reduction in the requirements applicable to Dealer's facilities

Any Dealer request for such assistance must be in writing and received by General Motors within thirty days of the expiration or termination of this Agreement

Premises that consist of more than one parcel of property or more than one building, each of which is separately usable, distinct and apart from the whole or any other part with appropriate ingress or egress, shall be considered separately under this Article 15 3

#### 15.3.2  Owned Premises

General Motors will provide assistance on owned Premises by either (a) locating a purchaser who will offer to purchase the Premises at a reasonable price, or (b) locating a lessee who will offer to lease the Premises If General Motors does not locate a purchaser or lessee within a reasonable time, General Motors will itself either purchase or, at its option, lease the Premises for a reasonable term at a reasonable rent If the cause of termination or expiration is a death or the incapacity of the Dealer Operator, General Motors may instead pay Dealer a sum equal to a reasonable rent for a period of twelve months immediately following the effective date of termination or expiration of this Agreement

### 15.3.3 Leased Premises

General Motors will provide assistance on leased Premises by either

(a) locating a tenant(s), satisfactory to lessor, who will sublet for the balance of the lease or assume it, or

(b) arranging with the lessor for the cancellation of the lease without penalty to Dealer, or

(c) reimbursing Dealer for the lesser of the rent specified in the lease or settlement agreement or a reasonable rent for a period equal to the lesser of twelve months from the effective date or termination or expiration of the balance of the lease term

Upon request, Dealer will use its best efforts to effect a settlement of the lease with the lessor subject to General Motors prior approval of the terms General Motors is not obligated to reimburse Dealer for rent for any month during which the Premises are occupied by Dealer or anyone else, after the first month following the effective date of termination or expiration

### 15.3.4  Rent and Price

General Motors and Dealer will fix the amount of a reasonable rent and a reasonable price for the Premises by agreement at the time Dealer requests assistance The factors to be considered in fixing those amounts are

(a) the adequacy and desirability of the Premises for a dealership operation, and

(b) the fair market value of the Premises If General Motors and Dealer cannot agree, the fair market value will be determined by the median appraisal of three qualified real estate appraisers, of whom Dealer and General Motors will each select one and the two selected will select the third The cost of appraisals will be shared equally by Dealer and General Motors

### 15.3.5  Limitations on Obligation to Provide Assistance

General Motors will not be obligated to provide assistance on Premises if Dealer

(a) fails to accept a bona fide offer from a prospective purchaser, sub-lessee or assignee,

(b) refuses to execute a settlement agreement with the lessor if the agreement would be without cost to Dealer,

(c) refuses to use its best efforts to effect a settlement when requested by General Motors, or

(d) refuses to permit General Motors to examine Dealer's books and records if necessary to verify claims of Dealer under this Article

Any amount payable by General Motors as rental reimbursement or reasonable rent shall be proportionately reduced if the Premises are leased or sold to another party during the period for which such amount is payable Payment of rental reimbursement or reasonable rent is waived by Dealer if it does not file its claim therefor within two months after the expiration of the period covered by the payment Upon request, Dealer will support its claim with satisfactory evidence of its accuracy and reasonableness

## ARTICLE 16.  DISPUTE RESOLUTION PROCESS

Dealer and General Motors recognize that it is desirable to resolve disputes in a fair, prompt, and cost efficient manner Therefore, except for the matters specified below, and except as otherwise specifically agreed upon in writing between Dealer and General Motors, Dealer and General Motors agree to mediate any dispute arising under this Agreement or applicable law using the General Motors Dispute Resolution Process then in effect, a copy of which has been provided to Dealer, before

using other remedies available under federal, state or local law The matters ineligible for mediation include (i) terminations due to insolvency, a dealer's failure to conduct customary sales and service operations during customary business hours for at least seven consecutive business days, license revocation, fraud or felony convictions, (ii) disputes requiring participation by a third party who does not agree to participate in the mediation, and (iii) disputes of General Motors Policies or Procedures as

applied to dealers generally Dealer or General Motors may file simultaneously with a court or administrative agency if necessary to retain its rights under applicable law Mediation under the General Motors Dispute Resolution Process is mandatory, but mediation is not binding on the parties unless the parties agree upon a solution If a dispute is not resolved through mediation, Dealer and General Motors may agree to resolve this dispute through voluntary binding arbitration available under the

General Motors Dispute Resolution Process

The General Motors Dispute Resolution Process is set forth in a separate booklet, and this Process will be administered by a Joint Mediation/Arbitration Committee composed of dealers and General Motors representatives General Motors may amend the Process from time to time, but will consult with the Joint Mediation/Arbitration Committee before making any changes

# ARTICLE 17.  GENERAL PROVISIONS

## 17.1  No Agent or Legal Representative Status

This Agreement does not make either party the agent or legal representative of the other for any purpose, nor does it grant either party authority to assume or create any obligation on behalf of or in the name of the others No fiduciary obligations are created by this Agreement

## 17.2  Responsibility for Operations

Except as provided in this Agreement, Dealer is solely responsible for all expenditures, liabilities and obligations incurred or assumed by Dealer for the establishment and conduct of its operations

## 17.3  Taxes

Dealer is responsible for all local, state, federal, or other applicable taxes and tax returns related to its dealership business and will hold General Motors harmless from any related claims or demands made by any taxing authority

## 17.4  Indemnification by General Motors

General Motors will assume the defense of Dealer and indemnify Dealer against any judgment for monetary damages or rescission of contract, less any offset recovered by Dealer, in any lawsuit naming Dealer as a defendant relating to any Product that has not been altered when the lawsuit concerns

### 17.4.1  Breach of the General Motors warranty related to the Product, bodily injury or property damage claimed to have been caused solely by a defect in the design, manufacture, or assembly of a Product by General Motors (other than a defect which should have been detected by Dealer in a reasonable inspection of the Product),

### 17.4.2  Failure of the Product to conform to the description set forth in advertisements or product brochures distributed by General Motors because of changes in standard equipment or material component parts unless Dealer received notice of the changes prior to retail delivery of the affected Product by Dealer, or

*17.4.3* Any substantial damage to a Product purchased by Dealer from General Motors which has been repaired by General Motors unless Dealer has been notified of the repair prior to retail delivery of the affected Product

If General Motors reasonably concludes that allegations other than those set forth in 17 4 1, 17 4 2, or 17 4 3 above are being pursued in the lawsuit, General Motors shall have the right to decline to accept the defense or indemnify dealer or, after accepting the defense, to transfer the defense back to Dealer and withdraw its agreement to indemnify Dealer

Procedures for requesting indemnification, administrative details, and limitations are contained in the Service Policies and Procedures Manual under "Indemnification" The obligations assumed by General Motors are limited to those specifically described in this Article and in the Service Policies and Procedures Manual and are conditioned upon compliance by Dealer with the procedures described in the Manual This Article shall not affect any right either party may have to seek indemnification or contribution under any other contract or by law and such rights are hereby expressly preserved

## 17.5    Trademarks and Service Marks

General Motors or affiliated companies are the exclusive owners or licensees of the various trademarks, service marks, names and designs (Marks) used in connection with Products and services

Dealer is granted the non-exclusive right to display Marks in the form and manner approved by General Motors in the conduct of its dealership business Dealer agrees to permit any designated representative of General Motors upon the Premises during regular business hours to inspect Products or services in connection with Marks

Dealer will not apply to register any Marks either alone or as part of another mark, and will not take any action which may adversely affect the validity of the Marks or the goodwill associated with them Dealer will not apply to register any name which includes a Mark as an Internet domain name without General Motors prior written approval

Dealer agrees to purchase and sell goods bearing Marks only from parties authorized or licensed by General Motors

Marks may be used as part of the Dealer's name with General Motors written approval Dealer agrees to change or discontinue the use of any Marks upon General Motors request

Dealer agrees that no company owned by or affiliated with Dealer or any of its owners may use any Mark to identify a business without General Motors written permission

Upon termination of this Agreement, Dealer agrees to immediately discontinue, at its expense, all use of Marks Thereafter, Dealer will not use, either directly or indirectly, any Marks or any other confusingly similar marks in a manner that General Motors

determines is likely to cause confusion or mistake or deceive the public

Dealer will reimburse General Motors for all legal fees and other expenses incurred in connection with action to require Dealer to comply with this Article 17.5

### 17.6  Notices

Any notice required to be given by either party to the other in connection with this Agreement will be in writing and delivered personally or by first class or express mail or by facsimile, or electronically as provided in this Agreement Notices to Dealer will be directed to Dealer or its representatives at Dealer's principal place of business and, except for indemnification requests made pursuant to Article 17.4, notices by Dealer will be directed to the appropriate Regional General Manager of General Motors

### 17.7  No Implied Waivers

The delay or failure of either party to require performance by the other party or the waiver by either party of a breach of any provision of this Agreement will not affect the right to subsequently require such performance

### 17.8  Assignment of Rights or Delegation of Duties

Dealer has not paid any fee for this Agreement Neither this Agreement nor any right granted by this Agreement is a property right

Except as provided in Article 12, neither this Agreement nor the rights or obligations of Dealer

may be sold, assigned, delegated, encumbered or otherwise transferred by Dealer

General Motors may assign this Agreement and any rights, or delegate any obligations, under this Agreement to any affiliated or successor company, and will provide Dealer written notice of such assignment or delegation Such assignment or delegation shall not relieve General Motors of liability for the performance of its obligations under this Agreement

### 17.9  No Third Party Benefit Intended

This Agreement is not enforceable by any third parties and is not intended to convey any rights or benefits to anyone who is not a party to this Agreement

### 17.10  Accounts Payable

All monies or accounts due Dealer are net of Dealer's indebtedness to General Motors and its subsidiaries In addition, General Motors may deduct any amounts due or to become due from Dealer to General Motors or its subsidiaries, or any amounts held by General Motors, from any sums or accounts due or to become due from General Motors, or its subsidiaries

### 17.11  Sole Agreement of Parties

Except as provided in this Agreement or in any other unexpired written agreements executed by both parties, General Motors has made no promises to Dealer, Dealer Operator, or dealer owner and there are no other agreements or understandings, either oral or written, between the parties affecting this

Agreement or relating to any of the subject matters covered by this Agreement

Except as otherwise provided herein, this Agreement cancels and supersedes all previous agreements between the parties that relate to any matters covered herein, except as to any monies which may be owing between the parties and any other unexpired written agreements executed by both parties

No agreement between General Motors and Dealer which relates to matters covered herein, and no change in, addition to (except the filling in of blank lines) or erasure of any printed portion of this Agreement, will be binding unless permitted under the terms of this Agreement or related documents, or approved in a written agreement executed as provided in this Agreement

## 17 12  Applicable Law Agreement

This agreement is governed by the laws of the State of Michigan However, if performance under this Agreement is illegal under a valid law of any jurisdiction where such performance is to take place, performance will be modified to the minimum extent necessary to comply with such law if it was effective as of the effective date of this Agreement

## 17.13  Superseding Dealer Agreements

If General Motors offers a superseding form of dealer agreement or an amendment to the dealer agreement to General Motors dealers generally at any time prior to expiration of this Agreement, General Motors may terminate this Agreement by ninety days prior written notice to Dealer, provided General Motors offers Dealer a dealer agreement in the superseding form for a term of not less than the un-expired term of this Agreement

Unless otherwise agreed in writing, the rights and obligations of Dealer that may otherwise become applicable upon termination or expiration of the term of this Agreement shall not be applicable if General Motors and Dealer execute a superseding dealer agreement, and the matured rights and obligations of the parties hereunder shall continue under the new agreement

Dealer's performance under any prior agreement may be considered in an evaluation of Dealer's performance under this or any succeeding agreement

# GLOSSARY

**Area of Primary Responsibility** — The geographic area designated by General Motors from time to time in a Notice of Area of Primary Responsibility

**Dealer** — The corporation, partnership, proprietorship, limited liability corporation, or limited liability partnership that signs the Dealer Agreement with General Motors

**Dealer Agreement** — The Dealer Sales and Service Agreement, including the Agreement proper that is executed, the Standard Provisions, and all of the related Addenda

**Dealership Operations** — All operations contemplated by the Dealer Agreement These operations include the sale and service of Products and any other activities undertaken by Dealer related to Products, including rental and leasing operations, used vehicle sales and body shop operations, finance and insurance operations, any electronic commerce, and any service of other General Motors motor vehicles authorized by General Motors, whether conducted directly or indirectly by Dealer

**General Motors** — General Motors Corporation

**Incentives Manual** — The Manual issued periodically which details certain policies and procedures related to dealer or customer incentives or promotions

**Line-Make** — A brand of General Motors Motor Vehicles, or a brand used to badge motor vehicles for another manufacturer For this Dealer Agreement, the General Motors brands are Chevrolet Passenger Vehicles and Light Duty Trucks, Chevrolet Medium Duty Trucks, Pontiac Motor Vehicles, Oldsmobile Motor Vehicles, Buick Motor Vehicles, Cadillac Motor Vehicles, GMC Light Duty Trucks, and GMC Medium Duty Trucks

**Products** — Motor Vehicles, Parts and Accessories

**Motor Vehicles** — All current model types or series of new motor vehicles specified in any Motor Vehicle Addendum incorporated into this Agreement and all past General Motors motor vehicles marketed through Motor Vehicle Dealers

**Service Policies and Procedures Manual** — The Manual issued periodically which details certain administrative and performance requirements for Dealer service under the Dealer Agreement

**Special Vehicles** — Motor Vehicles that have limited marketability because they differ from standard specifications or incorporate special equipment

30

CAUSE NO 2007-73933

| | |
|---|---|
| MARIA DEL ROCIO RODRIGUEZ, § | IN THE DISTRICT COURT OF |
| INDIVIDUALLY AND AS NEXT FRIEND § | |
| OF WILLIAM VASQUEZ, MINOR; SANTIAGO § | |
| VASQUEZ; MACRINA HERNANDEZ, § | |
| INDIVIDUALLY AND AS NEXT FRIEND OF § | |
| XIMENA CHAVEZ AND JOSE CHAVEZ, § | |
| MINORS; JOSE CHAVEZ, ELENA RODRIGUEZ,§ | |
| INDIVIDUALLY AND AS NEXT FRIEND OF § | |
| ESTEFANIA RODRIGUEZ, YESENIA § | |
| RODRIGUEZ, AND JESUS RODRIGUEZ, § | |
| MINORS § | HARRIS COUNTY, TEXAS |
| § | |
| VS § | |
| § | |
| COOPER TIRE & RUBBER COMPANY and § | |
| ELLY M. DAVIS, as Personal Representative § | |
| and/or Heir to the ESTATE OF DUSTIN § | |
| LANGSTAFF, DECEASED,GENERAL § | |
| MOTORS CORPORATION, and KEY SAFETY § | |
| SYSTEMS, INC § | 125TH JUDICIAL DISTRICT |



---

## PLAINTIFFS' SIXTH AMENDED ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT

COME NOW, Plaintiffs, MARIA DEL ROCIO RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF WILLIAM VASQUEZ, MINOR, SANTIAGO VASQUEZ, MACRINA HERNANDEZ, INDIVIDUALLY, AND AS NEXT FRIEND OF XIMENA CHAVEZ AND JOSE CHAVEZ, MINORS, JOSE CHAVEZ AND ELENA RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF ESTEFANIA RODRIGUEZ, YESENIA RODRIGUEZ, AND JESUS RODRIGUEZ, MINORS, complaining of Defendants, COOPER TIRE & RUBBER COMPANY and ELLY M. DAVIS as Personal Representative and/or Heir of the ESTATE OF DUSTIN LANGSTAFF, DECEASED, CHAMPION FORD, INC, and KEY SAFETY SYSTEMS, INC. and for their cause of action would show as follows.

CAUSE NO 2007-73933

| | |
|---|---|
| MARIA DEL ROCIO RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF WILLIAM VASQUEZ, MINOR; SANTIAGO VASQUEZ, MACRINA HERNANDEZ, INDIVIDUALLY AND AS NEXT FRIEND OF XIMENA CHAVEZ AND JOSE CHAVEZ, MINORS; JOSE CHAVEZ, ELENA RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF ESTEFANIA RODRIGUEZ, YESENIA RODRIGUEZ, AND JESUS RODRIGUEZ, MINORS | § § § § § § § § § § § § § IN THE DISTRICT COURT OF |
| VS | § § § § HARRIS COUNTY, TEXAS |
| COOPER TIRE & RUBBER COMPANY and ELLY M DAVIS, as Personal Representative and/or Heir to the ESTATE OF DUSTIN LANGSTAFF, DECEASED, GENERAL MOTORS CORPORATION, and KEY SAFETY SYSTEMS, INC | § § § § § § 125TH JUDICIAL DISTRICT |



---

### PLAINTIFFS' SIXTH AMENDED ORIGINAL PETITION

---

TO THE HONORABLE JUDGE OF SAID COURT

COME NOW, Plaintiffs, MARIA DEL ROCIO RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF WILLIAM VASQUEZ, MINOR, SANTIAGO VASQUEZ, MACRINA HERNANDEZ, INDIVIDUALLY, AND AS NEXT FRIEND OF XIMENA CHAVEZ AND JOSE CHAVEZ, MINORS, JOSE CHAVEZ AND ELENA RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF ESTEFANIA RODRIGUEZ, YESENIA RODRIGUEZ, AND JESUS RODRIGUEZ, MINORS, complaining of Defendants, COOPER TIRE & RUBBER COMPANY and ELLY M DAVIS as Personal Representative and/or Heir of the ESTATE OF DUSTIN LANGSTAFF, DECEASED, CHAMPION FORD, INC., and KEY SAFETY SYSTEMS, INC and for their cause of action would show as follows:

## I.
## DISCOVERY LEVEL

1 1    Plaintiffs intend to conduct discovery in this matter under Level 3 of Rule 190 of the TEXAS RULES OF CIVIL PROCEDURE

## II.
## PARTIES

2 1    Plaintiffs are residents of the State of Texas.

2 2    Defendant, COOPER TIRE & RUBBER COMPANY ("Cooper"), has appeared and answered herein

2 3    ELLY M DAVIS, as Personal Representative and/or Heir of the Estate of Dustin Langstaff, Deceased, has appeared and answered herein.

2 4    Defendant, GENERAL MOTORS CORPORATION ("General Motors") has appeared and answered herein.

2 5    Defendant, KEY SAFETY SYSTEMS, INC has appeared and answered herein

2 6    Defendant, CHAMPION FORD, INC. is a domestic corporation doing business in the State of Texas for the purpose of accumulating monetary profits and may be served with citation through its registered agent, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 701 Brazos Street, Suite 1050, Austin, TX 78701.

## II.
## VENUE

3.1    Venue is proper in Harris County, Texas, by virtue of Section 15 001, TEXAS CIVIL PRACTICE AND REMEDIES CODE, because all or a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Harris County, Texas

2

## IV.
### BACKGROUND FACTS

4 1    On or about October 27, 2007, Dustin Langstaff was driving near the 22000 Block of FM 529 in Harris County, Texas when the right rear tire suffered a catastrophic tread separation    As a result of the tread separation, Dustin Langstaff was unable to maintain a straight line of travel, causing his vehicle to collide with a vehicle driven by Maria Del Rocio Rodriguez and occupied by Yesenia Rodriguez, Estefania Rodriguez, Macrina Hernandez, Ximena Chavez, William Vasquez, Jesus Rodriguez, and Jose Chavez   The Rodriguez vehicle was purchased at Champion Ford, Inc

4 2    As a result of the incident, Jesus Rodriguez, a minor, was rendered paralyzed and is still in intensive care

4 3    As a result of the incident, Macrina Hernandez, suffered a miscarriage while being four (4) months pregnant

4 4    As a result of the incident, Ximena Chavez, a minor, suffered severe head injuries

4 5    As a result of the incident, William Vasquez, a minor, suffered severe head injuries

4.6    As a result of the incident, Estefania Rodriguez, a minor, suffered permanent injuries to her internal organs.

4 7    As a result of the incident, Yesenia Rodriguez, a minor, sustained injuries to both legs

4.8    As a result of the incident, Maria Del Rocio Rodriguez, sustained fractures to both legs and head injuries

4 9    As a result of the incident, Jose Chavez, a minor, sustained injuries which

3

necessitated medical care.

## V.
### CAUSE OF ACTION: STRICT LIABILITY
### (COOPER TIRE & RUBBER COMPANY)

5 1    At all times relevant to this lawsuit, Cooper was in the business of manufacturing,

selling and otherwise placing into the stream of commerce tires such as the subject

P205/70R14 Trendsetter tire     At all times material hereto, as part of its tire business,

Cooper was regularly engaged in business in the United States and in Texas by designing,

manufacturing, and selling tires which are intended to and do reach ultimate consumers

located in Texas, including the subject tire    The tire in question was designed,

manufactured and sold by Cooper, and Cooper is legally liable for defects in said tire

under the doctrine of strict liability in tort

5 2     The tire in question is identified as a Cooper Trendsetter and was manufactured in

Tupelo, Mississippi   Plaintiffs would show that the failed tire in question was designed,

manufactured, and marketed and placed into the stream of commerce by Defendants

Cooper in a defective condition and was substantially unchanged from the time it was

placed into the stream of commerce

5.3    Plaintiffs would show that the tire was unreasonably dangerous as that term is

understood in Texas law.  Cooper defectively designed, marketed, and manufactured the

failed tire, which rendered it unreasonably dangerous for its intended and foreseeable use

and which was the producing cause of this incident, the serious injuries sustained by

Maria Del Rocio Rodriguez, Yesenia Rodriguez, Estefania Rodriguez, Macrina

Hernandez, Ximenia Chavez, William Vasquez, Jesus Rodriguez, and Jose Chavez, the

death of Macrina Hernandez's unborn child, and Plaintiffs' resulting damages herein

This action is therefore brought under Sections 402(A) and 402(B) of the Restatement of

4

Torts, Second

## VI.
### CAUSE OF ACTION: DESIGN DEFECT
### (COOPER TIRE & RUBBER COMPANY)

6.1    The design of the tire was defective and unreasonably dangerous because it did not incorporate available features to resist initiation and growth of separation between the tire's internal components  The design of the tire was defective by design in that it did not incorporate internal components with requisite fatigue resistance to counter the constant centrifugal force incurred in normal and foreseeable operation  The tire was defective by design in that the skim stock rubber was defectively designed  The skim stock did not incorporate an anti-degradant package sufficient to counter degradation as the result of age and as the result of the escape of inflationary gases into the internal structures of the tire.  Moreover, the skim stock was defective in that it prevented bonding between the tire's internal components, thus allowing for unintended movement between the steel belts

6.2    As a result of the defective design of the failed tire, including but not limited to the above identified defects, the failed tire's tread/belt would unexpectedly separate during normal and foreseeable operation  This propensity to suddenly and violently lose the tire's tread/belt under normal and foreseeable conditions will cause the person operating the vehicle to lose total control, thus producing a catastrophic accident as is at issue at present  Comparing the utility versus risk of harm, the tire as sold by the Defendants was defective and unreasonably dangerous with regard to design, manufacture and marketing.  At the time the tire left Cooper's control, there were safer alternative designs that would have prevented this incident and the serious injuries sustained by Maria Del Rocio Rodriguez, Yesenia Rodriguez, Estefania Rodriguez,

5

Macrina Hernandez, Ximenia Chavez, William Vasquez, Jesus Rodriguez, and Jose

Chavez, the death of Macrina Hernandez's unborn child, and Plaintiffs' resulting

damages herein.    Moreover, these alternative designs were economically and

technologically feasible at the time of this incident.

VII.

## CAUSE OF ACTION: MANUFACTURING DEFECT
### (COOPER TIRE & RUBBER COMPANY)

7 1    The tire was manufactured defectively in that it would lose its tread/belt under

normal and foreseeable operating conditions  The tire was manufactured defectively in

that the rubber between the failed tire's components was not manufactured to a

specification that would withstand fatigue caused by the constant centrifugal forces

incurred during normal and foreseeable operation  As a direct result of this inadequate

fatigue resistance, the rubber between the tire's components tear apart, thus causing

catastrophic failure and driver loss of control   Additionally, the failed tire was

manufactured defectively in that the bonding of the rubber components was not uniform

throughout the tire. This bonding failure was a cause of the initial separation between the

tire's internal components, including the steel belts  Because of this initial separation

between the internal components, the separation was permitted to propagate thus leading

to catastrophic failure and driver loss of control  The manufacturing defect was the

producing and proximate cause of this incident and the serious injuries sustained by

Maria Del Rocio Rodriguez, Yesenia Rodriguez, Estefania Rodriguez, Macrina

Hernandez, Ximenia Chavez, William Vasquez, Jesus Rodriguez, and Jose Chavez, the

death of Macrina Hernandez's unborn child, and Plaintiffs' resulting damages.

## VIII.
### CAUSE OF ACTION: MARKETING DEFECT
(COOPER TIRE & RUBBER COMPANY)

8.1    Defendant defectively marketed the failed tire  Defendant failed to give adequate

warnings of the tire's dangers  These dangers include, but are not limited to, the tire's

propensity for tread/belt separation under normal and foreseeable operation and the

dangers associated with aged tires  This failure to warn and/or give adequate instructions

rendered the tire unreasonably dangerous as marketed by Defendant  The marketing

defects were the producing and proximate cause of this incident, the serious injuries

sustained by Maria Del Rocio Rodriguez, Yesenia Rodriguez, Estefania Rodriguez,

Macrina Hernandez, Ximenia Chavez, William Vasquez, Jesus Rodriguez, and Jose

Chavez, the death of Macrina Hernandez's unborn child, and Plaintiffs' resulting

damages

## IX.
### CAUSE OF ACTION: NEGLIGENCE
(COOPER TIRE & RUBBER COMPANY)

9.1    The serious injuries sustained by Maria Del Rocio Rodriguez, Yesenia Rodriguez,

Estefania Rodriguez, Macrina Hernandez, Ximenia Chavez, William Vasquez, Jesus

Rodriguez, and Jose Chavez, the death of Macrina Hernandez's unborn child, and

Plaintiffs' resulting damages were proximately caused by Defendant Cooper's negligent

acts in designing, manufacturing, marketing and/or selling the failed tire as described

more thoroughly herein  Additionally, Defendant failed to adequately test and inspect the

failed tire before its sale  Defendant owed a legal duty of care to Plaintiffs and the public

at large concerning the design, manufacture, marketing and sale of the failed tire  This

duty of care was breached by Defendant in that the failed tire had a propensity to lose its

tread/belt under normal and foreseeable operating conditions  Because this propensity

7

caused the underlying accident, Defendant breached its duty of care legally owed to Plaintiffs This breach was the proximate cause of this incident, the serious injuries sustained by Maria Del Rocio Rodriguez, Yesenia Rodriguez, Estefania Rodriguez, Macrina Hernandez, Ximenia Chavez, William Vasquez, Jesus Rodriguez, and Jose Chavez, the death of Macrina Hernandez's unborn child, and Plaintiffs' resulting damages

## X.
### CAUSE OF ACTION: NEGLIGENCE
### (DUSTIN LANGSTAFF, DECEASED)

10 1    Plaintiffs, in exercising their right to plead in the alternative and in understanding that Defendants often attempt to shift blame to others, bring suit against of Elly M. Davis, as Representative and/or Heir to the Estate of Dustin Langstaff, deceased, for negligence as that term is understood by Texas law

## XI.
### CAUSE OF ACTION: STRICT LIABILITY
### (ELENA RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF JESUS RODRIGUEZ AGAINST DEFENDANTS GENERAL MOTORS AND CHAMPION FORD, INC.)

11.1    Defendants GENERAL MOTORS CORPORATION and CHAMPION FORD, INC, developed, designed, manufactured, inspected, distributed, marketed and sold the 2004 Chevrolet Tahoe bearing VIN 1GNEC13Z64J321996 At the time of the incident, the vehicle was in the same condition as it was in when originally manufactured, marketed, distributed and sold by Defendants, General Motors Corporation and Champion Ford, Inc

11.2    The vehicle was unfit and unsafe for its intended use and purposes when it left the control of General Motors Corporation and Champion Ford, Inc because of design, manufacturing, marketing and testing defects Specifically, the vehicle's defects include·

8

a    The removable rear bench seat restraint system was defective in that it
incorporated an inadequate restraint system which was made available to
Jesus Rodriguez and which failed to properly restrain him during the
foreseeable frontal collision,

b.    The middle position of the removable rear bench seat was not provided
with a complete seat position    Instead, this seat was positioned between
the two seats which encompassed the 50/50 rear bench seat split.    The
middle position was therefore inadequate to prevent occupant submarining
due to its lack of anti-submarining countermeasures available for the
design,

c.    The vehicle marketing was defective in that the vehicle was not
accompanied by a proper warning concerning the dangers of the safety
gap in the restraint system as it relates to children who do not meet certain
age, height, and/or weight restrictions,

d.    The removable rear bench seat restraint system was defective in that it
failed, as result of its geometrical design, both in the belts and the seat
itself, to properly restrain Jesus Rodriguez in the foreseeable frontal
collision due to his height and weight;

e.    The removable rear bench seat restraint system was defective in that
height difference between the floor board and the top of the seat
positioned occupants in a manner in which they are prone to submarine
under the belt, thus sustaining spinal injuries

f    The removable rear bench seat and restraint system were not adequately
tested by Defendant;

11 3    There were safer alternative designs that would have prevented these defects.    The

safer alternative designs would have prevented or significantly reduced the risk occupant

submarining and thereby the risk of injury without substantially impairing the vehicle's

utility.    Furthermore, the safer alternative designs were economically and technologically

feasible at the time the vehicle left the control of Defendants, General Motors

Corporation and Champion Ford, Inc., by the application of existing or reasonably

achievable scientific knowledge.    These safer alternative designs include, but are not

limited to, the incorporation of a booster seat, removal of the belt option from the middle

9

position of removable rear bench seat, integrated seatbelt option for the middle position

of removable rear bench seat, incorporation of anti-submarining pan and reinforcement,

increased height difference between the floor board and seat and improved geometrical

designs of the belts and seats  Defendants, General Motors Corporation and Champion

Ford, Inc are strictly liable for these design and manufacturing defects and the resulting

damages to Plaintiffs under Texas law, including Tex Civ Prac & Rem Code § 82 005

The defective design, manufacturing and marketing of the vehicle was a producing cause

of this incident and the injuries and resulting damages sustained by Elena Rodriguez,

Individually and as Next Friend of Jesus Rodriguez.

### XII.
### CAUSE OF ACTION: BREACH OF WARRANTY
#### (ELENA RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF JESUS RODRIGUEZ
#### AGAINST DEFENDANT GENERAL MOTORS AND CHAMPION FORD, INC.)

12.1    Defendants, General Motors Corporation and Champion Ford, Inc , acting by and

through their agents, engaged in a course of advertising, marketing and promoting of the

subject vehicle, which included express and implied misrepresentations of material fact

concerning the character and quality of the subject vehicle.  Plaintiffs justifiably relied

upon Defendants' misrepresentations to their detriment  These misrepresentations were a

producing cause of this incident and Plaintiffs' resulting damages

12 2    The subject vehicle in question is known as "goods" for purposes of the Texas

Uniform Commercial Code ("UCC") and at the time the vehicle was sold, General

Motors Corporation and Champion Ford, Inc were "merchants" with respect to goods of

that kind.  Defendants General Motors Corporation and Champion Ford, Inc. breached

the implied warranty of merchantability set forth in Tex Bus & Comm. Code §2 314 by

selling the subject vehicle in question when the vehicle was not fit for the ordinary

purpose for which such goods are used    This breach of warranty was a proximate cause of this incident and Plaintiffs' resulting damages

12 3    Additionally, General Motors Corporation and Champion Ford, Inc. breached express warranties.    In addition to the warranties described above, General Motors Corporation and and Champion Ford, Inc  warranted the vehicle was safe for passengers situated in the third row, middle seat, and that the vehicle could safely hold seven passengers    These breach of express warranties were the cause of this incident and Plaintiffs' resulting damages and the injuries and resulting damages sustained by Elena Rodriguez, Individually and as Next Friend of Jesus Rodriguez

## XIII.
### CAUSE OF ACTION: NEGLIGENCE
(ELENA RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF JESUS RODRIGUEZ
AGAINST DEFENDANT GENERAL MOTORS AND CHAMPION FORD, INC.)

13 1    Defendant General Motors Corporation and Champion Ford, Inc  developed, designed, manufactured, inspected, distributed, marketed and sold the 2004 Tahoe General Motors Corporation and Champion Ford, Inc  breached the duty of reasonable care that it owed to Plaintiffs, and its negligence included, but is not limited to, the following acts and/or omissions

    a    The removable rear bench seat restraint system was defective in that it incorporated an inadequate restraint system which was made available to Jesus Rodriguez and which failed to properly restrain him during the foreseeable frontal collision;

    b.    The middle position of the removable rear bench seat was not provided with a complete seat position.    Instead, this seat was positioned between the two seats which encompassed the 50/50 rear bench seat split    The middle position was therefore inadequate to prevent occupant submarining due to its lack of anti-submarining countermeasures available for the design;

11

    c  The vehicle marketing was defective in that the vehicle was not accompanied by a proper warning concerning the dangers of the safety gap in the restraint system as it relates to children who do not meet certain age, height, and/or weight restrictions,

    d  The removable rear bench seat restraint system was defective in that it failed, as result of its geometrical design, both in the belts and the seat itself, to properly restrain Jesus Rodriguez in the foreseeable frontal collision due to his height and weight,

    e.  The removable rear bench seat restraint system was defective in that height difference between the floor board and the top of the seat positioned occupants in a manner in which they are prone to submarine under the belt, thus sustaining spinal injuries

    f.  The removable rear bench seat and restraint system were not adequately tested by Defendant,

13 2   The negligence as outlined above proximately caused the resulting damages sustained by Elena Rodriguez, Individually and as Next Friend of Jesus Rodriguez

**XIV.**
**CAUSE OF ACTION: STRICT LIABILITY**
**(ELENA RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF JESUS RODRIGUEZ**
**AGAINST "KEY SAFETY SYSTEMS, INC.)**

14 1   Defendant, Key Safety Systems, Inc. designed, manufactured and/or sold a product which is unreasonably and dangerously defective in its design, manufacture and as marketed.  The specific product in question is the removable rear bench seat and accompanying restraint system of the 2004 Tahoe. The vehicle's removable rear bench seat restrain system's geometry was defectively designed, thus creating an unreasonably dangerous propensity to perform inadequately or wholly fail to provide protection to occupants   Additionally, the system was improperly and inadequately tested by Key Safety Systems, Inc   The defective nature of the product was a proximate and producing cause of the resulting damages sustained by Elena Rodriguez, Individually and as Next Friend of Jesus Rodriguez, thus rendering Defendant strictly liable

12

## XV.
### CAUSE OF ACTION: NEGLIGENCE
#### (ELENA RODRIGUEZ, INDIVIDUALLY AND AS NEXT FRIEND OF JESUS RODRIGUEZ AGAINST "KEY SAFETY SYSTEMS, INC.)

15 1    Defendant, Key Safety Systems, Inc. owed a duty of ordinary care to users of the products it designed and manufactured   That duty was breached as Key Safety Systems, Inc  designed, manufactured and/or sold a product which is unreasonably and dangerously defective in its design, manufacture and as marketed

15 2    The negligence of Key Safety Systems, Inc  included, but is not limited to, the following acts and/or omissions

    a    Improper design of the removable rear bench seat restraint system; and

    b    Improper and inadequate testing of the removable rear bench seat restraint system

15 3    The defective nature of the product and the negligence of Key Safety Systems, Inc. were proximate and producing causes of the resulting damages sustained by Elena Rodriguez, Individually and as Next Friend of Jesus Rodriguez

## XVI.
### GENERAL DAMAGES

16 1    Defendants' wrongful acts, neglect, omissions, and carelessness are the proximate and producing cause of this incident, the serious injuries sustained by Maria Del Rocio Rodriguez, Yesenia Rodriguez, Estefania Rodriguez, Macrina Hernandez, Ximenia Chavez, William Vasquez, Jesus Rodriguez, and Jose Chavez,  the death of Macrina Hernandez's unborn child, and Plaintiffs' resulting damages.  As a result of Defendants' acts and omissions, Plaintiffs have incurred damages, in the past and future, including but not limited to, physical pain, mental anguish, physical impairment, disfigurement, medical expenses, loss of earnings, and loss of earnings capacity.

13

16 2    Plaintiff, Jose Chavez has suffered loss of consortium and loss of services in the past, and will continue to suffer loss of consortium and loss of services in the future, as a result of the serious injuries sustained by his wife, Macrina Hernandez. Additionally, Jose Chavez has suffered mental anguish and will continue to suffer mental anguish in the future as a result of the loss of the unborn child Macrina Hernandez was carrying at the time of this incident

16 3    Plaintiff, Santiago Vasquez, has suffered loss of consortium and loss of services in the past, and will continue to suffer loss of consortium and loss of services in the future, as a result of the serious injuries sustained by his wife, Maria Del Rocio Rodriguez

## XVII.
### EXEMPLARY DAMAGES

17.1    Plaintiffs seek exemplary damages caused by Cooper Tire & Rubber Company, General Motors Corporation and Champion Ford, Inc's malice, gross negligence and willful acts, omissions and gross negligence   Exemplary damages are sought under Section 41 003(a)(2) of the TEXAS CIVIL PRACTICES AND REMEDIES CODE, as defined by Section 41 001(7)  Plaintiffs also seek exemplary damages under Section 41 003(a)(3) of the TEXAS CIVIL PRACTICES AND REMEDIES CODE, as defined by Section 41 001(11)

## XVIII.
### PRE AND POST-JUDGMENT INTEREST

18 1    Plaintiffs would additionally say and show that they are entitled to recovery of pre- and post-judgment interest in accordance with law and equity as part of their damages herein, and Plaintiffs here and now sue for recovery of pre and post-judgment interest as provided by law and equity, under the applicable provision of the laws of the State of Texas

14

WHEREFORE, PREMISES CONSIDERED, Plaintiffs pray that Defendants be cited to appear and answer and that, upon final trial hereof, Plaintiffs have judgment against Defendants, jointly and severally, that they recover their damages in accordance with the evidence, that they recover costs of Court herein expended, that they recover interest, both pre- and post-judgment to which they are entitled under the law, and for such other and further relief, both general and special, legal and equitable, to which they may be justly entitled

Respectfully submitted,

FARRAR & BALL, L.L.P.

KYLE W. FARRAR
State Bar No. 24034828
WESLEY TODD BALL
State Bar No  24038754
1010 Lamar, Suite 1600
Houston, Texas 77002
Telephone.    713 221 8300
Telecopier.    713.221 8301

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing pleading has been forwarded to all counsel of record, via U S  Mail, certified, return receipt requested, and/or hand delivery, and/or facsimile transmission, on the 23rd day of April, 2009

KYLE W. FARRAR

15