**DICKSTEIN**SHAPIRO LLP

1633 Broadway | New York, NY 10019-6708
TEL (212) 277-6500 | FAX (212) 277-6501 | dicksteinshapiro.com

August 3, 2012

<u>By Electronic Mail and By Hand</u>

Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

      Re:    *In re Motors Liquidation Company,* **Case No. 09-50026 (REG):** *Official Committee of Unsecured Creditors' First Amended Objection to Claims Filed by Green Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and Motion for Other Relief* **(Docket No. 7859)**

            *Motors Liquidation Company GUC Trust v. Appaloosa Investment Ltd. Partnership I, et al.,* **Adv. Pro. No. 12-09802**

Dear Judge Gerber:

      On behalf of the GUC Trust, we write respectfully to ask the Court to exclude any testimony at trial about the content of the supposed version of the Lock-Up Agreement that some witnesses assert was laying on a conference room table in Weil Gotshal's New York offices on the morning of June 1, 2009 at some point before Old GM's bankruptcy petition was filed at 7:57 a.m. Such evidence should be excluded pursuant to Rule 1002 of the Federal Rules of Evidence, made applicable to the above-referenced contested matter and adversary proceeding pursuant to Rule 9017 of the Federal Rules of Bankruptcy Procedure and Rule 1101 of Federal Rules of Evidence, for the simple reason that ***the supposed document described in the proffered and anticipated testimony has never been produced.***

    A.    <u>**Factual Background**</u>

      The key facts relevant to this application are straightforward. At 10:37 a.m. on June 1, 2009, more than two and one-half hours after Old GM's bankruptcy petition was filed, Weil Gotshal sent an email to all of the contracting parties with a PDF version of the Lock-Up Agreement attached, stating: "Please find attached the final Lock Up Agreement executed by all

**DICKSTEIN**SHAPIRO LLP

parties this morning."[1] There is no dispute that the Lock-Up Agreement attached to that email and identified by Weil Gotshal as the final Lock-Up Agreement was *created* after 9:20 a.m. on June 1, 2009, well after Old GM's petition was filed.[2] Based on this evidence, and substantial additional evidence to be introduced by the GUC Trust at trial, the GUC Trust will demonstrate that the Lock-Up Agreement is a postpetition agreement.

As part of their case, the Noteholders and New GM have proffered direct testimony, in which certain witnesses claim that they saw a signed, hard-copy version of the Lock-Up Agreement before the bankruptcy petition was filed; other witnesses so testified at their depositions.[3] The Noteholders and New GM then contend that any changes between the supposed prepetition, hard-copy version of the Lock-Up Agreement and the final agreement circulated by Weil Gotshal at 10:37 a.m. are "'nits and nats'" or "minor 'kinkery'" (Bruce Zirinsky's terms)[4] or "flagrant," "transcription errors" (Lawrence Buonomo's terms).[5]

---

[1] This document has been premarked as Plaintiff Trial Exhibit 16 and no party objects to its admissibility.

[2] In the proffered direct testimony of the Noteholders' computer forensic witness, J. Christopher Racich, which was provided to us yesterday, Mr. Racich states that the final Lock-Up Agreement "was likely created at 9:24 a.m," (Declaration of J. Christopher Racich at ¶ 6(c)). He thus concurs in the conclusion of the GUC Trust's computer forensic expert that the Lock-Up Agreement circulated by Weil Gotshal at 10:37 a.m. was created after 9:20 a.m.

[3] *See* Declaration of Didric Cederholm executed August 2, 2012, ¶ 53 ("I walked into the conference room with Mr. Truong, who reviewed the final document with me. I flipped pages of the Lock-Up Agreement for a few minutes to confirm that the Lock-Up Agreement was complete and that the signature pages for all parties to the agreement were assembled. . ."); Deposition Testimony of Lawrence Buonomo, Volume I, April 18, 2012, Buonomo Tr. at 109:10-25 (Q: "[The] signature pages were in a single pile following the lock-up agreement?" A: "Yes."); Deposition Testimony of Didric Cederholm, March 15, 2012, Cederholm Tr: at 111:22-112:5 ("Sometimes you're not sure whether the last version is what is ultimately being signed, so I reviewed it again in the room to make sure it was substantially the same."); Deposition Testimony of James Bolin, April 11, 2012, Bolin Tr. at 145:6-7 ("I know I reviewed the final copy before I signed it."); Testimony of Bao Truong, April 20, 2012, Truong Tr. at 154:12-22 (Q: "Do you know whether ["Execution Copy"] appeared on the Lock-Up Agreement that was on the conference room table at Weil? And just to avoid any doubt, you know, that same Lock-Up Agreement that you said you observed the Canadian representative reviewing." A: "I did not have a clear view from where I was standing in that room to see whether it contained the words 'execution copy.'"); Deposition Testimony of Daniel Ammann, April 27, 2012, Ammann Tr. at 135:11-12 (". . . there was a document on the table and various signature pages.").

[4] Deposition Testimony of Bruce Zirinsky, dated April 12, 2012, Tr. at 116:19; 121:3.

[5] Deposition Testimony of Lawrence Buonomo, Volume I, dated April 18, 2012, Buonomo Tr. at 112:12; 110:22-23.

2

**DICKSTEIN**SHAPIRO LLP

The GUC Trust has made diligent efforts to obtain a copy of this supposed document, seeking its production both in written discovery requests to the Noteholders and to Weil Gotshal[6] and at numerous depositions. To our knowledge, the GUC Trust is the only party to these proceedings that has used discovery tools to attempt to locate the supposed document. Given what is at stake, the failure of the other parties to procure and produce the document at issue strongly suggests that it either never existed, or that it was considered by the parties to be another interim draft (and it was therefore not necessary to preserve it). Regardless, as set forth below, no witness should be permitted to testify about the content of a document that has never been produced.

B.  **Testimony About The Content Of The Supposed Prepetition Version Of The Lock-Up Agreement Is Inadmissible**

Because the purported prepetition version of the Lock-Up Agreement has not been produced, no witness should be permitted to testify about its alleged content. Rule 1002 provides in relevant part that "[a]n original writing, recording or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." Fed. R. Evid. 1002. Under this rule, a witness may not provide testimony as to the contents of a document without introducing the actual document into evidence. *See Allstate Ins. Co. v. Administratia Asigurarilor De Stat,* 948 F. Supp. 285, 305 (S.D.N.Y. 1996) (a party seeking to prove the contents of a writing must establish a proper excuse for the non-production of the document and that the original did exist); *In re Macmillan, Inc.,* 186 B.R. 35, 47 (Bankr. S.D.N.Y. 1995) ("the rule requires that parties that seek to prove what the contents of a writing are must produce the original writing unless a federal statute or another evidence rule affords them an exception"); *Acumed LLC v. Advanced Surgical Services, Inc.,* 561 F.3d 199 (3d Cir. 2009) (testimony as to contents of party's contract with third parties was excluded); *U.S. v. Miller,* 248 Fed. Appx. 426, 429 (3d Cir. 2007) (hard copy of bank's security policies, rather than internal investigator's testimony, was best evidence to prove substance of bank's policies). For purposes of Rule 1002, an "original" is defined as the writing "or any counterpart intended to have the same effect as the person who executed or issued it." F. R. Evid. 1001(d). Here, no party has produced an original of the purported prepetition version of the Lock-Up Agreement, and the best evidence rule, as set forth in Rule 1002, therefore prohibits witness testimony about its contents.

---

[6] The GUC Trust has sought the supposed document from Weil Gotshal because witnesses have identified Weil Gotshal as most likely to have possession of the document. *See* Deposition Testimony of Lawrence Buonomo, Volume I, dated April 18, 2012, Buonomo Tr. at 110:8-11 (Q: "Is there someone who you think – If someone has that document, who do you think it would be?" A: "Weil Gotshal."); Deposition Testimony of Bruce Zirinsky, dated April 12, 2012, Tr. at 125:6-20 (Q "When you -- when you left Weil's offices on the morning of June 1, 2009, did you have any understanding as to what steps were going to be taken to circulate to everyone who was involved a final fully executed version of the lock-up agreement?" A. "I was tired. I was tired, just wanted to go home, and, you know, frankly, was leaving in the good hands of Weil Gotshal and my colleagues to figure all of that out.") To be clear, Weil Gotshal has never claimed that such a document existed. That claim has been advanced by the Noteholders and New GM.

3

**DICKSTEIN**SHAPIRO LLP

### C. The Exceptions To The Best Evidence Rule Do Not Apply

Although there are recognized exceptions to the requirements of Rule 1002, they cannot be satisfied here. While Rule 1003 permits the admissibility of a duplicate of a writing, no duplicate of the alleged prepetition version of the Lock-Up Agreement has ever been produced.[7]

Furthermore, while Rule 1004 permits "other evidence of the content of a writing" to prove its contents under limited circumstances, those circumstances are not present here. Rule 1004 provides that an original is not required, and other evidence of its content is admissible, if "(a) all the originals are lost or destroyed, and not by the proponent acting in bad faith; (b) an original cannot be obtained by any available judicial process; (c) the party against whom the original would be offered had control of the original; was at that time put on notice, by pleadings or otherwise, that the original would be a subject of proof at the trial or hearing; and fails to produce it at the trial or hearing; or (d) the writing, recording, or photograph is not closely related to a controlling issue." Fed. R. Evid. 1004. None of these exceptions, however, would permit testimony or other evidence about the content of the alleged prepetition version of the Lock-Up Agreement.

First, to prove that the alleged document was lost or destroyed, a party must offer direct evidence of its loss or destruction, or prove that the party conducted an adequate search for the document. *See U.S. v. England*, 480 F.2d 1266, 1268 (5th Cir. 1973); *Wright v. Farmers Co-Op of Arkansas and Oklahoma*, 681 F.2d 549 (8th Cir. 1982). Of course, a necessary predicate to proving that a document was lost or destroyed is that the alleged document existed in the first place. As explained above, the circumstances strongly suggest that the document either did not exist, or was not considered important enough to preserve. But in any event, the Noteholders and New GM have not offered an explanation for their inability to procure or produce the version of the Lock-Up Agreement that, they contend, was agreed to prior to the filing of the petition, notwithstanding the GUC Trust's repeated requests for the production of that document.

Second, the Noteholders and New GM cannot satisfy the requirements of Rule 1004(2), which allows secondary evidence concerning the content of a writing if an original cannot be obtained by any available judicial process or procedure. Again, in order to avail themselves of this exception to the best evidence rule, the Noteholders and New GM must demonstrate that they made a reasonable, diligent, and unsuccessful inquiry for the original. *U.S. ex rel Magid v. Wilderman*, No.96-CV-4346, 2004 WL 1987219, at *5 (E.D. Pa. Aug. 18, 2004). Here, there is no indication that they have even attempted to obtain the alleged prepetition version of the Lock-Up Agreement through any available judicial process or procedure.

---

[7] In any event, a duplicate of a document is inadmissible when the proponent fails to produce the original in response to a proper discovery request. *See Von Brimer v. Whirlpool Corp.*, 362 F.Supp. 1182, 1186 (N.D. Cal. 1973) (no proper foundation was laid for admission into evidence of a copy of a document, in light of the offering party's failure to adequately explain the absence of any of the originals, or to show that a diligent effort to ascertain their location had been made, notwithstanding repeated requests for production of originals.).

4

**DICKSTEIN**SHAPIRO LLP

Third, Proponents cannot satisfy the requirements of Rule 1004(3) because the GUC Trust, the "party against whom the original would be offered," has never been in possession or control of the alleged pre-petition version of the Lock-Up Agreement. Fed. R. Evid. 1004(3).

Finally, Rule 1004(4) is inapplicable here, because the content of the Lock-Up Agreement is closely related to a controlling issue in this case. Fed. R. Evid. 1004(4).

Accordingly, because the purported prepetition version of the Lock-Up Agreement has never been produced, and because none of the exceptions to the best evidence rule apply, any testimony or other evidence about its content is inadmissible, and the GUC Trust respectfully requests that the Court preclude the introduction of any such testimony or evidence in these proceedings.

*   *   *

Finally, as a matter of trial planning and scheduling, we note that the issues raised in this application are not implicated in the anticipated testimony of Peter Wedlake, who is the first witness we plan to call to testify on Tuesday morning. Aside from what he may have been told by others, Mr. Wedlake does not have knowledge about the circumstances surrounding the negotiation and execution of the Lock-Up Agreement. Thus, this important issue need not be addressed at the very outset of the trial. In the event that the Court wishes to proceed immediately with trial testimony, we have asked Mr. Wedlake to be available to testify, beginning at 9:45 a.m. on Tuesday.

We thank the Court for its attention to this letter.

Respectfully,

*[signature]*

Eric B. Fisher

cc:   Kevin Finger, Esq.
      Bruce Zirinsky, Esq.
      Barry Sher, Esq.
      Arthur Steinberg, Esq.
      Sean O'Donnell, Esq.
      Edward Friedman, Esq.