UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

_____
                                                                    )
In re:                                                              )
                                                                    )          Chapter 11
MOTORS LIQUIDATION COMPANY                                          )
        f/k/a General Motors Corp., *et. al*,                       )          Case No. 09-50026
                                                                    )
                                          Debtors.                  )          Jointly Administered
_____                            )

DECISION ON OBJECTION TO CLAIM OF DR.
ATUL C. SHAH[1]

APPEARANCES:

Atul C. Shah, MD
*Pro se Plaintiff*
2884 Manorwood Drive
Troy, Michigan 48085
By: Atul C. Shah (argued)

DICKSTEIN SHAPIRO LLP
*Counsel for Motors Liquidation Company GUC Trust*
1633 Broadway
New York, New York 10019
By: Stefanie Birbrower Greer (argued)
    Barry N. Seidel

---

[1]    This written decision memorializes and amplifies the decision that was delivered orally, in summary form, in open court. Because it builds upon the decision as then dictated, it has a more conversational tone.

ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

In this contested matter in the chapter 11 case of reorganized debtor Motors Liquidation Company, formerly known as General Motors Corporation ("**Old GM**"), *pro se* claimant Dr. Atul Shah ("**Dr. Shah**"), a contract physician formerly under contract with old GM, seeks allowance of a claim[2] for $10 million.  He seeks compensatory and punitive damages for alleged employment discrimination, asserting that he was unlawfully terminated "because of religion, race, etc."[3]  His claim has been objected to by the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), the trust formed under Old GM's reorganization plan for the benefit of Old GM's creditors.

Dr. Shah bases his claim on alleged:

(1) Denial of First Amendment rights under the constitutions of the United States and Michigan;

(2) Discrimination on the basis of color, national origin, religion, race and/or age, under Title VII of the Civil Rights Act of 1964 ("**Title VII**"), the Michigan Elliot Larson Civil Rights Act (the "**Michigan Civil Rights Law**"), and the Age Discrimination in Employment Act of 1967 (the "**ADEA**"); and

(3) Retaliation for engaging in activity protected by Title VII.

---

[2]    Dr. Shah's proof of claim is related to the same events that gave rise to the Equal Employment Opportunity Commission Charge Dr. Shah filed in 2008 and a Complaint he filed in 2009, in the Eastern District of Michigan, and appears to incorporate the Charge and the Complaint by reference (collectively, the "**Claim**").

[3]    *See* Exh. H of the GUC Trust's Objection ("**Objection**") (ECF #11590), Dr. Shah's Proof of Claim.

1

Most of Dr. Shah's claims must be dismissed as a matter of law.  The First

Amendment Claim must be dismissed because there is no individual right of action

against a private entity (here Old GM) for the violation of an individual's First

Amendment rights.  The race discrimination and retaliation claims are barred as a matter

of law because they were not included in Dr. Shah's EEOC charge.  The punitive damage

claims must be dismissed because they are not recoverable under Title VII, the Michigan

Civil Rights Law, or the ADEA, and for the additional reason that they cannot be

recovered against an estate, like this one, in liquidation.[4]

The remaining claims must be dismissed on undisputed facts.

Dr. Shah's discrimination claims based on religion are lacking in merit.

Undisputed facts establish a difference in views as to medical philosophy, with other

doctors disagreeing with Dr. Shah's view.  Dr. Shah voiced his belief that Eastern

Philosophy had "superior concepts" over current modern science, including bio-medical

science.  But this was a view as to medical practice, not religion, or at least became a

view as to medical practice when doctors at GM were determining how their workers

were to be treated.  Those facts, without more, do not make out a discrimination case, and

here there is no more.

The only close issue is whether I should continue the small portion of his claims

that remain—those for discrimination based on national origin and, perhaps, age—for an

evidentiary hearing, or whether they should be dismissed now.  Reading the entirety of

Dr. Shah's submission, and taking his allegations as true, there are no facts—as

contrasted to conclusions and statements of his own perceptions—from which I could

---

[4]    Additionally, the claims, even if otherwise allowable, would be capped at $500,000, the amount Dr.
Shah seeks in compensatory damages (Objection, Exh. A), or $300,000, which is the damages cap
that Title VII imposes for companies of Old GM's size.  *See* 42 U.S.C.A. § 1981a(b)(3)(D).

2

find any discrimination.  Based on the facts as alleged, I can't even find the claims to be plausible.

Here there are no facts alleged other than those that Dr. Shah is a naturalized U.S. citizen of Indian ancestry, Hindu, and was 59 years old when his contract was terminated by Old GM.  As discussed below, where I flesh out the relevant law, such facts are not sufficient to make the inference that Old GM terminated Dr. Shah's employment contract *because* he was a member of a "protected category."

I considered each of the statements in Dr. Shah's response to ascertain whether, if proven, they would give me a basis for concluding that he had been discriminated against.  I could find none.  That's not enough to make out a claim for $500,000, or $300,000, which is the maximum permissible under the Title VII cap, much less the $10 million that Dr. Shah seeks.  Because Dr. Shah has failed to set forth a valid legal basis for recovery against the Debtors, and for the additional reasons set forth below, Dr. Shah's claims are disallowed.

<u>Facts</u>

For the purpose of this analysis, I take Dr. Shah's factual allegations (but not his conclusions or perceptions) as true.

Dr. Shah is a naturalized American citizen of Indian descent, and, at the time he filed his initial discrimination complaint, openly practiced the Hindu religion and was 59 years old.[5]  He has practiced medicine for approximately 30 years as a general practitioner.  He states that he has treated "more than one hundred twenty thousand

---

[5]    *See* Objection, Exh. A at ¶ 6.

(120,000) medical patients including twelve thousand (12,000) psychiatric patients in the United States."[6]

Dr. Shah first began working with Old GM in 1997.[7]  During the relevant period, his services were governed by a contract dated November 4, 2004 (the "**Contract**").[8] The Contract did not include any assurances or guarantees that GM would retain his services for a specified period, nor did it include any obligation by either of the parties to renew the agreement.[9]  In other words, the Contract was an "at-will" contract that either party could terminate at any time.

Dr. Shah remained a contract physician for Old GM until his contract was terminated in June 2008.[10]  Dr. Shah alleges that he was one of four contract physicians during his tenure with the Debtors, including: (i) "Dr. Hasan Rehman, MD a Muslim Physician from India"; (ii) "Dr. Orr, MD, a Black Christian Physician from U.S.A."; and (iii) "Dr. Soboloski, MD a White Physician with Christian background."[11]

On June 11, 2008, Dr. Stanley Miller, the Senior Group Medical Director, and Dr. Anthony Burton, the Medical Director at Old GM's Ypsilanti, Michigan Willow Run Plant (and Dr. Shah's supervisor), informed Dr. Shah that the Contract would be terminated.[12]  According to Dr. Shah, Dr. Burton informed Dr. Shah that GM's decision was based on a "problem with documentation and 'other reasons.'"[13]

---

[6]   *See id*. at ¶ 14.

[7]   *See id*. at ¶ 11.

[8]   *See* Objection, Exh. B, Attachment 1.

[9]   *Id.*

[10]  *See* Objection, Exh. A at ¶ 11; Exh. C, Attachment 1.

[11]  *See* Dr. Shah's Response ("**Response**") (ECF #11696), Exh. B at 6.

[12]  *See* Objection, Exh. A at ¶¶ 21-30.

[13]  *Id.* at ¶ 32.

4

Then in July 2008, GM mistakenly sent a notice to Dr. Shah stating that his Contract had been extended until December 31, 2009.[14] Dr. Shah was later informed that this notice was sent by clerical error.[15] Old GM did not intend to (and did not) renew the contract.

On December 4, 2008, about six months later, Dr. Shah filed a charge (the "**Charge**") with the EEOC alleging that he was terminated by GM as a result of discrimination on the basis of color, religion, national origin and age.[16] In his Charge, Dr. Shah stated:

> On June 11, 2008, I was removed from my position as Contract Physician. No explanation was given to me with regards to my removal. I had not had any prior disciplinary action filed against me and I was the only one removed at this time. In July 2008, I received documentation that my contract had been extended until December 31, 2009. When I called with regards to this document, I was told it was a clerical error.
>
> *I can only conclude* that I have been discriminated against by being removed from my position due to my color, age, religion and national origin in violation of Title VII of the Civil Rights Act of 1964, as amended, and the Age Discrimination in Employment Act of 1967, as amended.[17]

On July 7, 2009, the EEOC dismissed the Charge.[18] On September 16, 2009, about two months later, the Michigan Civil Rights Department accepted the EEOC's findings and also dismissed the Charge under the Michigan Civil Rights Law.[19]

---

[14]    *See* Objection, Exh. D at 2.

[15]    *Id.*

[16]    *Id.*

[17]    *Id.* (emphasis added).

[18]    *See* Objection, Exh. E (EEOC notice titled "Dismissal and Notice of Rights").

[19]    *See* Objection, Exh. F.

Dr. Shah argues that the EEOC did not dismiss his charge, based on language in

the EEOC's determination.[20]    But I cannot agree.    The language upon which Dr. Shah

relies stated:

> The EEOC issues the following determination:
> Based upon its investigation, the EEOC is unable to
> conclude that the information obtained establishes
> violation of the statutes.    This does not certify that
> the respondent is in compliance with the statutes.
> No finding is made as to any other issues that might
> be construed as having been raised by this charge. [21]

But before reciting the quoted language, the EEOC stated that the EEOC has

closed its "file on this charge for the following reason." [22]

While failing to make a finding of a violation of law, the EEOC made clear that

Dr. Shah had the right to sue in state or federal court based on the claims alleged in the

Charge.[23]    In other words, the EEOC did not find a violation, and thus dismissed his

complaint there, but without prejudice to his right to assert his claims in a court.

On October 13, 2009, after the Debtors' chapter 11 case was commenced, Dr.

Shah filed a plenary lawsuit against Old GM and Bashen Corporation, an affiliate of Old

GM, in the United States District Court for the Eastern District of Michigan, asserting the

claims contained in the Charge, as well as several additional claims.[24]    In August 2010,

the Michigan District Court granted Bashen Corporation's motion to dismiss and/or for

summary judgment.    Presumably by reason of the automatic stay, Dr. Shah agreed to

---

[20]     Response at ¶ 8.

[21]     *See* Objection, Exh. E (EEOC notice titled "Dismissal and Notice of Rights").

[22]     *Id.*

[23]     *Id*.

[24]     *See* Objection, Exh. A.

voluntarily dismiss the Michigan action against Old GM. The Michigan District Court dismissed Dr. Shah's entire action.[25]

On November 17, 2009, Dr. Shah filed a timely proof of claim against the Debtors in Old GM's bankruptcy case.[26] The proof of claim is related to the same events that gave rise to the EEOC Charge and the complaint filed in the Eastern District of Michigan, and incorporates the charge and the complaint by reference.

Though Dr. Shah did not address it in his submissions, the GUC Trust has introduced uncontradicted evidence of Old GM's dissatisfaction with Dr. Shah's performance as a physician, including evidence of failures to correctly diagnose and treat work-related injuries, poor documentation, and lack of thoroughness. More specifically, in approximately March 2008, Dr. Shah failed to recognize an employee's non-displaced distal radius fracture, for which Dr. Shah did not provide a splint.[27] That same month, Dr. Shah wrote restrictions for an employee without evaluating the employee's job to determine if the restrictions were necessary.[28] Then, on at least two occasions during April 2008, Dr. Shah failed to accurately document parties' medical histories.[29] Dr. Shah also misdiagnosed an employee's knee pain as arthritis, which was subsequently determined to be a meniscus tear that required surgery.[30]

More important is what Dr. Shah does not allege. I don't doubt that he feels discriminated against by reason of his national origin, or perhaps his religion or age, but I

---

[25] *See* Objection, Exh. G.

[26] *Id*.

[27] *See* Objection, Exh. C & Attachment 1.

[28] *Id.*

[29] *Id*.

[30] *Id*.

see no actual facts, as contrasted to conclusions, evidencing such discrimination.  He

asserts that complaints about his patient care, and other dissatisfaction with his work,

were pretextual (*i.e.*, purported reasons given to conceal discriminatory intentions behind

an adverse employment action), but no facts have been alleged that support such an

inference.

<u>Discussion</u>

While I have little doubt that Dr. Shah sincerely feels that he has been victimized,

I must conclude that his claims lack factual basis and are ungrounded in the law.  Dr.

Shah asserted in his EEOC Charge that "*I can only conclude* that I have been

discriminated against by being removed from my position due to my color, age, religion

and national origin . . . ."[31]  But even on the most favorable reading of the facts alleged, I

cannot draw a like conclusion, nor can I find that if facts of the type he articulated were

fleshed out further, any of those facts would support a claim of discrimination.

For a prepetition claim to be valid, the claimant must demonstrate that he

possesses a right to payment and that the right arose prior to the filing of the bankruptcy

petition.[32]  Fed.R.Bankr.P. 3001(f) further provides that a proof of claim is *prima facie*

evidence of the validity and amount of such claim.  However, if the claimant does not

allege a sufficient legal basis for the claim, the claim is not considered *prima facie* valid,

and the burden remains with the claimant to establish its validity.[33]  As shown below, Dr.

---

[31]    *See* Objection, Exh. D at 2.

[32]    *See Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000) (citing *LTV Steel Co. v. Shalala (In re Chateaugay Corp.)*, 53 F.3d 478, 497 (2d Cir. 1995)).

[33]    *In re Chain*, 255 B.R. 278, 280-81 (Bankr. D. Conn. 2000); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988).

Shah fails to establish the validity of any of his claims and, therefore, that he has any

valid legal right against the Debtors giving rise to an enforceable obligation.

1.  *First Amendment Claims*

The Claim includes an allegation that Old GM violated Dr. Shah's "First

Amendment Rights of Freedom of Speech and Freedom or Religion under the United

States and State of Michigan Constitutions."[34]  But a private entity cannot violate an

individual's rights under the constitutions of the United States or Michigan.[35]  Therefore,

even if I were to otherwise find facts that might give rise to an inference of a denial of

rights of free speech or religion, they would not give rise to relief under the First

Amendment.

2.  *Race Discrimination and Retaliation*

Dr. Shah's race discrimination and retaliation claims also fail as a matter of law,

because Dr. Shah did not raise them in the EEOC Charge filed on December 4, 2008.  A

discrimination complaint is generally "limited to the scope of the EEOC investigation

reasonably expected to grow out of the charge of discrimination."[36]  A claim filed in

court that is "based on a wholly different type of discrimination than that asserted" in the

---

[34]    Objection, Exh. A at ¶ 26.

[35]    *See Manson v. Little Rock Newspapers, Inc.*, 200 F.3d 1172, 1173 (8th Cir. 2000) (private entity was
legally incapable of violating employee's First Amendment rights to free speech and association);
*Prysak v. R.L. Polk Co.*, 483 N.W.2d 629, 634 (Mich. Ct. App. 1992) (private employer was not
bound by constitutional provisions guaranteeing freedom of speech under Michigan Constitution)
(citing *Woodland v. Michigan Citizens Lobby*, 423 Mich. 188, 212, 378 N.W.2d 337, 348 (Mich.
1985) (Michigan Constitutional protection of free speech is "limited to protection against state
action")).

[36]    *Hall v. State Farms Ins. Co.*, 18 F. Supp. 2d 751, 764-765 (E.D. Mich. 1998), *aff'd*, 1 F. App'x 438
(6th Cir. 2001) (dismissing plaintiff's sex discrimination claims under Title VII and the Michigan
Civil Rights Law where she failed to include them in her EEOC charge); *see also Senno v. Elmsford
Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 469 (S.D.N.Y. 2011) (claim based on national origin
discrimination barred where charge alleged only racial discrimination).

9

EEOC charge is barred as a matter of law.[37]  Here, Dr. Shah asserted a discrimination

claim based on *national origin* in the Charge, but failed to include a racial discrimination

or a retaliation claim.[38]  Discrimination claims based on national origin are not the same

as race discrimination claims.[39]  Thus, Dr. Shah's race discrimination and retaliation

claims cannot be asserted here.

3.   *Violations of Title VII, the ADEA, or the Michigan Civil Rights Law*[40]

        The remaining causes of action asserted by Dr. Shah seek recovery under Title

VII, the Michigan Civil Rights Law, and the ADEA based on allegations that the Debtors

terminated Dr. Shah because of his national origin, color, religion, and/or age.[41]  But Dr.

Shah has not sufficiently alleged facts establishing a valid claim, under any of these

statutes, against the Debtors.[42]

---

[37]   *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d at 469 (internal quotations omitted).

[38]   *See Costello v. New York State Nurses Ass'n*, 783 F. Supp. 2d 656, 677 (S.D.N.Y. 2011) (claim of pre-EEOC retaliation was barred where plaintiff failed to allege claim in EEOC charge).

[39]   *Woodcock v. Montefiore Med. Ctr.*, 48 F. Supp. 2d 231, 234 (E.D.N.Y. 1999) (discrimination based on national origin is wholly different from a claim of race discrimination).

[40]   As a preliminary matter, Debtors note in their objection to Dr. Shah's proof of claim that Title VII, the ADEA, and the Michigan Civil Rights Law apply only to employees and *do not* apply to independent contractors. *See, e.g.*, *Harrington v. Potter*, 2011 WL 709829 (N.D.N.Y. Feb. 22, 2011) (dismissing Title VII action where plaintiff was admittedly an independent contractor); *Legeno v. Douglas Elliman, LLC*, 311 F. App'x 403, 404-405 (2d Cir. 2009) (dismissing ADEA claim brought by plaintiff who applied for independent contractor position, because independent contractors are not covered by the ADEA); *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 194 Mich. App. 543, 553, 487 N.W.2d 499, 505 (Mich. 1992) (affirming dismissal of a Michigan Civil Rights Law complaint brought by physician who was an independent contractor).

   Dr. Shah does not allege that he was an employee at the time of contract termination and, in fact, he admits that he was a "contract physician" (Objection, Exh. A ¶¶ 11, 19, 22, 30) who was "affiliated" with Debtors at the time of his termination (*id.* ¶ 22).  Indeed, the Contract expressly stated that Dr. Shah would "function as an independent contractor and would not have the status of an employee of GM." *See* Objection, Exh. B, Attachment 1 at page 2.  As such, Dr. Shah's discrimination claims should be dismissed on this ground alone.  However, a full factual determination has not been made as to whether Dr. Shah was an independent contractor, or an employee.  Therefore, for the purposes of this Opinion only, I will assume Dr. Shah is entitled to the benefits of the statutes cited.

[41]   *See* Objection, Exh. A at ¶¶ 36-37 & Exh. D.

[42]   *See Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000) (a claim in bankruptcy is evaluated based on the underlying substantive law); *Dean v. Westchester Cnty. Dist. Attorney's Office*, 119 F.

Under each of Title VII and the Michigan Civil Rights Law, it is unlawful for an
employer to discharge an employee on the basis of (among other characteristics) the
employee's race, national origin, color, and/or religion.[43]   Under the ADEA and the
Michigan Civil Rights Law, it is unlawful for an employer to discharge an employee
because of his age.[44]   Claims under Title VII, the Michigan Civil Rights Law, and the
ADEA are evaluated under the same standard.[45]   To state a viable cause of action under
Title VII, the Michigan Civil Rights Law, and/or the ADEA, a plaintiff must allege that:
(i) he belongs to a protected class; (ii) he suffered an adverse employment action; (iii) the
adverse action at issue occurred under circumstances giving rise to an inference of
discriminatory intent.[46]

In assessing whether this standard is met, conclusory assertions and formulaic
recitations—without factual allegations to support them—are insufficient.[47]   The *sine qua
non* of a discriminatory action claim is that the alleged adverse action must have occurred
because the plaintiff was in the protected category.[48]

---

Supp. 2d 424, 430 (S.D.N.Y. 2000) (those who seek the protection of Title VII and similar statutes "must allege and prove their entitlement thereto").

[43]   *See* 42 U.S.C.A. § 2000e2(a)(1) (Title VII); MICH. COMP. LAWS ANN. § 37.2202.

[44]   *See* 29 U.S.C.A. § 623 (ADEA); MICH. COMP. LAWS ANN. § 37.2202.

[45]   *Marin v. Bloom Roofing Sys., Inc.*, 795 F. Supp. 2d 634, 639 (E.D. Mich. 2011) (citing *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 n.4 (6th Cir. 2003) (Michigan Elliot Larson Civil Rights Act claims are evaluated under the same standard as Title VII)); *see Glenwright v. Xerox Corp.*, 832 F. Supp. 2d 268, 273 (W.D.N.Y. 2011) (ADEA disparate treatment claims and Title VII discrimination claims addressed together).

[46]   *Shamilov v. Human Res. Admin.*, 2011 WL 6085550, at *5 (S.D.N.Y. Dec. 6, 2011) ("*Shamilov*") (citing *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) and *Sanders v. Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004)).

[47]   While courts review *pro se* complainants' pleadings under a more lenient standard than that applied to formal pleadings drafted by lawyers, courts need not accept as true plaintiff's "conclusions of law or unwarranted deductions of fact." *Shamilov*, 2011 WL 6209180, at *4 (internal citations omitted).

[48]   *Patane v. Clark*, 508 F.3d 106, 112 (2d Cir. 2007) (affirming dismissal of Title VII claim where plaintiff failed "to plead any facts that would create an inference that any adverse action taken by defendant was based upon her gender") (internal quotation marks omitted); *see also Petway v. New*

11

Here, the Complaint fails to satisfy the required elements to establish a claim under Title VII, the EEOC and/or the ADEA, even when the Court employs a more lenient standard of review after taking into account that Dr. Shah has represented himself *pro se*. Instead, Dr. Shah's submissions are replete with legal conclusions, perceptions, and/or unwarranted deductions of fact. More specifically:

1. ***The conclusion that Dr. Shah's contract was terminated because of religion***. Dr. Shah asserts that his contract was terminated "because of his religion and the appropriate practice of that religion in the workplace."[49] However, the GUC Trust points out that Dr. Shah's Complaint does not indicate that Dr. Shah practiced his religion in the workplace; that the Debtors knew of any such practice; or that any specific actions were taken by the Debtors in response to his religion or his practice of it.

2. ***The conclusion that the articulated reasons for Dr. Shah's termination were just pretext for discrimination***. Dr. Shah further asserts that "Dr. Burton did not mention and concealed the purpose of the [June 11] meeting . . . which was to discriminate and retaliate against him."[50] He further states that the "articulated reasons for [his] termination was just a pretext for discrimination based upon [his] race (Asian), nationality (Indian), religion (Hinduism), age (59) and reprisal."[51] But again he pleads only conclusions, without any facts to support such a finding.

3. ***The conclusion that the alleged discrimination was intentional and willful***. Dr. Shah recites the elements of an intentional discrimination claim, supported not by facts but only by the circular conclusion that the alleged discrimination was "intentional and willful."[52] Merely pleading the conclusion, without facts to support it, is insufficient.

4. ***The conclusion that Dr. Shah received disparate treatment***. The Complaint also lists the elements of a disparate treatment claim.[53] But nowhere does it include facts that would support a conclusion that such elements can be

---

*York City Transit Auth.*, 450 F. App'x 66, 67 (2d Cir. 2011) (affirming dismissal of Americans With Disabilities Act claims by *pro se* plaintiff where he failed to support the contention that the alleged conduct occurred *because* of his disability).

[49]    *See* Objection, Exh. A.

[50]    *Id.* at ¶ 24.

[51]    *Id.* at ¶ 35.

[52]    *Id.* at ¶ 36.

[53]    *Id.* at ¶ 37.

satisfied.  Instead, Dr. Shah supports his disparate treatment claim by stating that he was "treated differently than similarly situated white, American, Christian or Muslim Contract Physicians."[54]  Although an inference of discrimination may arise if plaintiff alleges that similarly situated employees outside plaintiff's protected class were treated preferentially, conclusory allegations of the type proffered by Dr. Shah are insufficient to raise an inference of discrimination.[55]  Here there are no facts alleged beyond the conclusions.

5. ***The conclusion that the erroneous contract renewal meant Dr. Shah's employment with Old GM was not supposed to be terminated***.  Dr. Shah contends that the erroneous renewal of his employment contract "shows that I was not someone who was on any type of termination list or poor performance list."[56]  This conclusory statement is not based on any facts.

6. ***The conclusion that Dr. Shah's perception of discrimination is evidence of discrimination***.  Dr. Shah appears to argue that because he is an "expert in understanding and revealing 'Expressed Intentions and Concealed Intentions' of people" he can conclude that he was discriminated against.[57]  Indeed, Dr. Shah appears to acknowledge that his conclusions are based on "Passive Inaction manifesting as Silent and Concealed Discrimination."[58]  Dr. Shah's impressions of the "concealed intentions" of the Debtors or their agents are once again insufficient to establish a discrimination claim.[59]

7. ***Additional unsupported conclusions***.  Throughout his pleadings, Dr. Shah relies, without additional support, on his belief that he was discriminated against.[60]  Again, Dr. Shah's beliefs are not proof of a discrimination claim, and without more cannot support one.  For example, Dr. Shah claims that "[o]n June 11, 2008, [he] was unfairly discriminated against . . ."[61] and that his "removal from the GM Plant as Contract Physician was based upon [his] religion, nationality, color, race and age."[62]  He does not provide any facts that support such conclusions.

---

[54] *Id.*

[55] *See Rose v. Goldman, Sachs & Co., Inc.*, 163 F. Supp. 2d 238, 242 (S.D.N.Y. 2001) (dismissing Title VII case where plaintiff failed to provide any specific factual allegations to enable the court to evaluate her asserted belief that similarly situated male employees were treated preferentially).

[56] Response at ¶ 6(g).

[57] Response at ¶¶ 13-17.

[58] *Id.* at ¶¶ 18-20 and 24.

[59] *Id.*

[60] *See, e.g.*, Response at ¶ 25 & Exh. B at 5.

[61] *See* Objection, Exh. A at ¶ 17.

[62] *Id.* at ¶ 19.

13

Similarly, the few arguably factual allegations in Dr. Shah's Claim (if accepted as true and interpreted in the light most favorable to the claimant) are insufficient to show, as a matter of law, that Dr. Shah has a facially valid legal claim against the Debtors. More specifically:

1. ***No previous disciplinary record.*** For purposes of this motion, I accept as true that at the time of his termination, Dr. Shah did not have any disciplinary record;[63] that Dr. Shah practiced medicine for thirty years and "has excellent and versatile experiences and medical knowledge in his career as a practicing physician;"[64] and that "[m]ost of [Dr. Shah's] patients, medical staffs and co-workers were happy with his professional knowledge and attitudes."[65]

   But prior positive performance is insufficient, without more, to create an inference that subsequent discipline is based on pretext.[66] Thus, even if Dr. Shah had a perfect performance record prior to the events leading up to the June 2008 termination of his contract, this would not create an inference of discrimination.

2. ***Disagreement with supervisor's assessment of performance.*** Once again I accept as true Dr. Shah's allegations that Dr. Miller told Dr. Shah that his contract was being terminated after it "was alleged that there was a problem with documentation and 'other reasons'";[67] that Dr. Miller did not provide Dr. Shah with details or provide documentation supporting the decision to terminate him; and that Dr. Shah did not believe the statements made about him were accurate.[68]

   But once again, an individual's disagreement with a supervisor's assessment of his performance is insufficient, without more, to create an inference of discrimination.[69] Therefore, the fact that Dr. Shah took issue with his

---

[63]  *See* Objection, Exh. D; *see also* Objection, Exh. A at ¶ 11.

[64]  Objection, Exh. A at ¶¶ 12-15.

[65]  *Id.* at ¶ 12.

[66]  *See Mattera v. JP Morgan Chase Corp.*, 740 F. Supp. 2d 561, 577 (S.D.N.Y. 2010) ("[P]laintiff's claim of prior favorable performance does not, without more, prove his subsequent poor reviews were unwarranted.") (citing *Iverson v. Verizon Communications*, 2009 WL 3334796, at *5 (S.D.N.Y. Oct. 13, 2009) ("Demonstration of past positive performance is insufficient to raise a genuine issue of disputed fact with respect to pretext.") (internal quotation marks omitted)).

[67]  Objection, Exh. A at ¶ 32.

[68]  *Id.* at ¶¶ 33, 34.

[69]  *See Milano v. Astrue*, 2008 WL 4410131, at *41 (S.D.N.Y. Sept. 26, 2008), *aff'd*, 382 F. App'x 4 (2d Cir. 2010) (merely disagreeing with supervisor's assessment of performance is insufficient to raise an issue of fact regarding pretext) (citing *Griffin v. Ambika Corp.*, 103 F. Supp. 2d 297, 309 (S.D.N.Y. 2000) (that employee disagrees with employer's assessment of her performance is insufficient to show that employer's proffered reason for an adverse action was pretextual; *Ricks v. Conde Nast Publis., Inc.*, 92 F. Supp. 2d 338, 347 (S.D.N.Y. 2000) (same)).

supervisor's assessment of his performance is not sufficient to show his contract termination was discriminatory.

3. ***Subjective belief that supervisor did not "like" ideas expressed in Dr. Shah's articles***. Dr. Shah sent articles he wrote to another doctor at GM which stated, among other things, that "Vedic Literature in Sanskrit language from India contains superior knowledge than the conventional modern science including Bio-medical science." Dr. Shah then alleges "Dr. Miller, Dr. Burton and other people from western background did not like this idea and dismissed Dr. Shah." Dr. Shah asserts, based on his expertise "in understanding and revealing 'Expressed Intentions' and 'Concealed Intentions,'" that these articles, together with Debtors' "concealed and expressed intentions," caused his termination.[70]

But here I can take only those allegations that actually are facts as true for purposes of this motion. Dr. Shah's conclusions and personal inferences cannot receive the same deference. An employee's subjective feelings and perceptions of being discriminated against simply are not evidence of discrimination.[71] Therefore, Dr. Shah's apparent perception that Drs. Miller and Burton "did not like" the ideas expressed in his articles does not create an inference of discrimination sufficient to support a claim, nor does Dr. Shah's apparent perception regarding the "concealed and expressed" intentions of Drs. Miller and Burton when they informed him of his termination.

4. ***Only individual removed during period of termination***. The Debtors' submissions indicate that Dr. Shah was the only contract physician removed at that time (June 2008).[72] But the mere fact that an individual is terminated does not give rise to an inference of discrimination, irrespective of whether the termination occurs due to performance problems, conduct issues, or even without any "cause."[73]

5. ***Hiring someone of a different race***. Dr. Shah asserts that his qualifications and those of another physician were "practically the same," but that Dr. Smith, another physician (who was African American), was hired instead of him.[74] As a matter of law, the fact that a person of one race is hired in lieu of a person of

---

[70] Objection, Exh. A at ¶¶ 22, 39.

[71] *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999).

[72] Objection, Exh. C at 2.

[73] *See, e.g., Williams v. Times Warner Inc.*, 2010 WL 846970, at *4 n.4 (S.D.N.Y. Mar. 3, 2010), *aff'd*, 440 F. App'x 7 (2d Cir. 2011) (even if defendant terminated employee for "no reason," such termination does not give rise to inference of discrimination because "there is a distinction between firing Plaintiff for no reason and firing Plaintiff for a prohibited reason") (citing *Forde v. Beth Israel Med. Ctr.*, 546 F. Supp. 2d 142, 145 n.5 (S.D.N.Y. 2008) (upholding the rule that an at-will employee may be "discharged for any nondiscriminatory reason *or no reason at all*") (emphasis added)).

[74] Response at ¶ 6(e); *see also* Response, Exh. B, at 4.

another race is insufficient without more to establish a claim.[75]  Dr. Shah
contends that he had "better experiences than Dr. Smith who was an African
American Physician."[76]  However, Dr. Shah's subjective views of his experience
are irrelevant, especially where (as here) he provides no factual support for such
belief.[77]

6. ***Hiring another, younger, doctor for a position for which Dr. Shah had applied***.
   Dr. Shah takes issue with Dr. Miller's decision to hire Dr. Burton for the position
   Dr. Shah applied for in 2007, apparently stating that the selection of Dr. Burton is
   the "Best Example"[78] of discrimination based upon race, religion, nationality, and
   color.  According to Dr. Shah, Dr. Miller hired Dr. Burton because they were
   friends.  Even if that were true, it would not be a basis for a valid discrimination
   claim.  Similarly, Dr. Shah asserted in oral argument that Old GM gave priority to
   younger doctors, like Dr. Burton, with respect to promotions.  "Dr. Burton, he's
   younger, well, 15 years younger than me."[79]  It is simply implausible to draw the
   inference that because one doctor, approximately 15 years younger than Dr. Shah,
   received a promotion, Dr. Shah was discriminated against based on his age of 59.
   Moreover, Dr. Shah does not allege any facts indicating that he was more
   qualified than Dr. Burton for the position.  Finally, Dr. Shah's contention that a
   Dr. Oteyza (who was not making the hiring decision) recommended him for the
   position, or that other personnel "were expecting me (Dr. Shah) will be the next
   Plant Medical Director . . ." is not probative, or even relevant in any way.[80]

7. ***Debtor did not assist Dr. Shah in finding new employment***.  Dr. Shah alleges
   that Dr. Burton and Dr. Miller failed to "help me get another plant physician
   position."[81]  But Dr. Shah does not allege that the Debtors assisted others in
   obtaining future employment.  No showing was made that by reason of law,

---

[75]  *Duviella v. Jet Blue Airways*, 353 F. App'x 476, 478 (2d Cir. 2009) (finding that merely alleging that
a co-worker of a different race was promoted instead of the plaintiff was insufficient to establish
racial discrimination under Title VII); *Ford v. City of Dearborn*, 2010 WL 4137518, at *5 (Mich. Ct.
App. Oct. 21, 2010) *appeal denied*, 489 Mich. 971, 798 N.W.2d 775 (Mich. 2011) (holding that the
fact that plaintiff's replacement was of a different race is not enough to create an inference of
discrimination).

[76]  Response at ¶ 6(e).

[77]  *See Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 456 (2d Cir. 1999).

[78]  Response, Exh. B at 7.

[79]  *See* Tr. of Hrg. on May 15 at 70.  *See also Duviella v. Jet Blue Airways*, 353 F. App'x 476, 478 (2d
Cir. 2009) (the fact that the promotions in question were given to younger people of a different race
is not sufficient).

[80]  Response at ¶ 6(b).  I note also that Dr. Burton's promotion occurred before February 9, 2008, and
therefore should not be considered by the court. *See, e.g.*, *Ford v. Bernard Fineson Dev. Center*, 81
F. 3d 304, 307 (2d Cir. 1996) (a claim must be brought within 300 days of the occurrence of the
alleged act).  In addition, Dr. Shah cites various other "Factual Examples of Injustice and
Discrimination" that are not only irrelevant, but many of such examples occurred before February 9,
2008, and therefore should not be considered by the court.  *See id.*; Response at ¶ 6.

[81]  Response at ¶ 6(f).

contract, or any other reason, the Debtors were required to assist Dr. Shah.[82]
Thus, this allegation is not probative with respect to the Claim.

8. ***Supervisor intentionally found faults with Dr. Shah's work***.  Dr. Shah also
alleges that Dr. Burton immediately "started intentionally finding faults with [his]
documentation" and "tried to prove that [he was] a bad doctor through an
engineered, pretextual and concealed plan."[83]  But Dr. Shah cites no specific
examples to support this generalized accusation.  Notably, the Debtors indicate
that Dr. Shah does not deny that there *were faults* with the documentation.[84]  And
even if Dr. Burton went out of his way to find those faults, there still are no facts
alleged to support the claim that Dr. Burton's alleged actions were taken *because
of* Dr. Shah's membership in any protected category.[85]

*4.  Religious Discrimination Claim*

Finally, I turn to Dr. Shah's religious discrimination claim.  To establish a *prima
facie* case of religious discrimination, an employee must allege that (i) he held a bona fide
religious belief conflicting with an employment requirement; (ii) he informed his
employer of this belief; and (iii) he was thereafter disciplined for failure to comply with
the conflicting employment requirement.[86]

Dr. Shah makes three principal allegations in support of his religious
discrimination claim.  He alleges that the Debtors executed a plan "to be rid of me and
my religious beliefs which they felt threatened their medical practice and the practice of
medicine in general," and claims that the "superiority of Vedic Literature over Modern

---

[82]    *Duncan v. AT&T Communications, Inc.*, 668 F. Supp. 232, 235 (S.D.N.Y. 1987) (finding no
discrimination when the employer failed to take affirmative steps to help employee find new
employment) (citing *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 715,
103 S. Ct. 1478, 1482, 75 L.Ed.2d 403 (1983) (inquiry in Title VII case is whether employer is
treating some people less favorably than others because of race)).

[83]    Response at ¶ 6(d); Response, Exh. B at 5.

[84]    *See* GUC Trust's Reply to Response at ¶ 6.

[85]    *See supra* n.69.

[86]    *Lytle v. JP Morgan Chase*, 2012 WL 393008, at *28 (S.D.N.Y. Feb. 8, 2012) *report and
recommendation adopted sub nom.*, *Lytle v. JP Morgan Chase*, 2012 WL 1079964 (S.D.N.Y. Mar.
30, 2012) (citing *Knight v. Conn. Dep't of Pub. Health*, 275 F.3d 156, 167 (2d Cir. 2001)).

Bio-Medical Science topic was discussed by me during several General Motors Conferences and that was one of the major reasons for my termination."[87] Dr. Shah also asserts that his Claim is supported by the fact that he was not invited to attend conferences that other similarly situated physicians were invited to attend.[88]

But significantly, none of these allegations, nor any others in Dr. Shah's Response or Claim, include any contention by Dr. Shah that (i) his religion required him to practice medicine in a manner that conflicted with the requirements of his contract; (ii) he sought permission to practice medicine according to any tenet of faith; or (iii) he was disciplined for refusing to engage in a medical practice that conflicted with his faith. In other words, he has failed to sufficiently allege any of the essential elements of a religious discrimination claim.

Instead, Dr. Shah's core contention is that the Debtors (and others) rejected his professional medical opinion that Vedic Literature contains superior concepts to modern bio-medical science and is essential to health reform.[89] During oral argument, Dr. Shah asserted that he "was not treating according to the Vedic literature or Eastern Philosophy."[90] But the fact that Dr. Shah was not putting into practice his medical beliefs at issue arguably makes it even less plausible that he was terminated because of them. Simply put, according to Dr. Shah's own contentions, the "views" at issue were

---

[87]  Response at ¶ 16; *see also* Response at ¶ 22 ("[T]hey are unable to comprehend and unable to appreciate that Vedic Literature in Sanskrit language with authoritative English translation are superior to Modern Science and Bio-medical Science."); Response, Exh. E.

[88]  Response, Exh. B at 4 ("I believe that this action of not inviting me . . . was based upon my belief of Eastern Philosophical Concepts which I strongly consider as the super-scientific and [more] accurate than the conventional Modern Science . . . .").

[89]  Objection, Exh. A at ¶ 39; *see also* Response, Exh. E at 3.

[90]  *See* Tr. of Hrg. on May 15, 2012 at 71.

with respect to improving the practice of medicine—not Dr. Shah's "religious beliefs" or any need for an accommodation to enable him to practice his beliefs in the workplace.

## 5. *Damages*

Though I find no claims that would support an award of damages of any amount, I believe it desirable, for the sake of completeness, to discuss the matter of damages. Even if Dr. Shah's employment discrimination claims were otherwise valid, applicable statutes and federal bankruptcy law would dramatically limit the damages he seeks. The $500,000 in compensatory damages and $10 million in punitive damages sought by Dr. Shah are well beyond what is supported by law.

Title VII limits compensatory and punitive damages to $300,000 for a company of Old GM's size.[91] The ADEA does not permit recovery for any punitive damages.[92] Punitive damages are also barred under the Michigan Civil Rights Law.[93] Therefore, even if punitive damages were otherwise acceptable in this context, the statutes under which Dr. Shah brings his Claim would limit the sum of his compensatory and punitive damages to $300,000 on one of his theories, and prohibit punitive damages altogether under the others—all well below the $10 million he seeks.

---

[91]   *See* 42 U.S.C.A. § 1981a(b)(3)(D); *see also Black v. Pan American Laboratories, L.L.C.*, 646 F.3d 254, 264 (5th Cir. 2011) (holding that Title VII's damages cap applies to each party in an action, not to each claim).

[92]   *See Castro v. City of New York*, 2012 WL 592408, at *1 (S.D.N.Y. Feb. 24, 2012) (only ADEA remedies available are "make-whole remedies such as back pay, front pay and reinstatement"), quoting *Hatter v. New York City Hous. Auth.*, 1998 WL 743733, at *1 (2d Cir. Oct. 22, 1998); *Boise v. Boufford*, 121 F. App'x 890, 892 (2d Cir. 2005) (recognizing that punitive damages are not available under the ADEA).

[93]   *See Eide v. Kelsey-Hayes Co.*, 427 N.W.2d 488, 488 (Mich. 1988); *Rafferty v. Markovitz*, 602 N.W.2d 367, 369-70 (Mich. 1999) (punitive damages may not be imposed under the Michigan Civil Rights Law).

Then, the purpose of punitive damages is to punish wrongdoers and deter future wrongful conduct.[94]   However, in a bankruptcy setting where the recovery of punitive damages by some creditors depletes recovery of other creditors, courts have regularly exercised their equitable power to disallow or subordinate punitive damage claims.[95] Disallowance of punitive damages claims is particularly appropriate in a liquidating case, including a liquidating chapter 11 case, where there is no future conduct to deter; the people guilty of the misconduct would not be punished for it; and the victims of the punitive damages would in reality be only other, wholly innocent, creditors.

Awarding punitive damages in cases where all unsecured creditors are not receiving full satisfaction of their claims in effect forces the innocent creditors to pay for the debtor's wrongful conduct.[96]   The unfairness of this was recognized at the Eleventh Circuit Court of Appeals.[97]   It was for that reason that in an earlier matter in this case, I found punitive damage claims to be inappropriate in instances where, as there and here, the debtor is liquidating. [98]   Thus, even if a showing had been made that punitive damages might be appropriate in a non-bankruptcy context, I could not authorize them here.

---

[94]     *See In re Johns-Manville Corp.*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986), *aff'd*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd sub nom.*, *Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988) (citing *Williams v. City of N.Y.*, 508 F.2d 356 (2d Cir. 1974); *Sibley v. KLM-Royal Dutch Airlines*, 454 F. Supp. 425, 428 (S.D.N.Y. 1978)).

[95]     *See, e.g.*, *In re Johns-Manville*, 68 B.R. at 627; *In re A.H. Robins Co., Inc.*, 89 B.R. 555, 562 (E.D. Va. 1988).

[96]     *See In re Johns-Manville*, 68 B.R. at 627-628 (stating "it is well within the authority of this court to disallow a claim for punitive damages . . . where allowing such a claim would ill serve the policy of such awards").

[97]     *See Novak v. Callahan (In re GAC Corp.)*, 681 F.2d 1295, 1301 (11th Cir. 1982) ("[T]he effect of allowing a punitive damages claim would be to force innocent creditors to pay for the bankrupt's wrongdoing. Such a result would be inequitable . . . .").

[98]     *See* Tr. of Hrg. on April 23, 2012 at 15-16.

<u>Conclusion</u>

For the foregoing reasons, the GUC Trust is to settle an order disallowing Dr.

Shah's claims.

Dated:        New York, New York         ___*s/Robert E. Gerber*_____
                August 6, 2012            United States Bankruptcy Judge