HEARING DATE AND TIME: September 24, 2012 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: September 14, 2012 at 4:00 p.m. (Eastern Time)

Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Attorneys for Motors Liquidation
Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                    :
In re                               :        Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :        09-50026 (REG)
         f/k/a General Motors Corp., et al. :
                                    :
              Debtors.              :        (Jointly Administered)
                                    :
-------------------------------------------------------------x
```

**NOTICE OF OBJECTION TO PROOF OF**
**CLAIM NO. 70618 FILED BY WOODBURY CADILLAC**

**PLEASE TAKE NOTICE** that, on August 20, 2012, the Motors Liquidation Company

GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the

"**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated

March 18, 2011, filed its objection to proof of claim number 70618 filed by Woodbury Cadillac

(the "**Objection**"), and that a hearing (the "**Hearing**") to consider the Objection will be held

before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the

United States Bankruptcy Court for the Southern District of New York, One Bowling Green,

New York, New York 10004, on **September 24, 2012, at 9:45 a.m. (Eastern Time)**, or as soon

thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Dickstein Shapiro, LLP, attorneys for the GUC Trust, 1633 Broadway, New York, New York, 10019-6708  (Attn: Barry N. Seidel, Esq., and Stefanie Birbrower Greer, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors, LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86

Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and

Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of

unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York,

New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas

Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C.

Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation,

attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos

personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L.

Esserman, Esq. and Robert T. Brousseau, Esq.); (xii) Gibson, Dunn & Crutcher LLP, attorneys

for Wilmington Trust Company as GUC Trust Administrator and for Wilmington Trust

Company as Avoidance Action Trust Administrator, 200 Park Avenue, 47th Floor, New York,

New York 10166 (Attn: Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust

Monitor and as the Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree

Street, Suite 500, Atlanta, Georgia 30309 (Attn: Anna Phillips); (xiv) Crowell & Moring LLP,

attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590 Madison

Avenue, 19th Floor, New York, New York 10022-2524 (Attn: Michael V. Blumenthal, Esq.); and

(xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard,

Austin, Texas 78703, so as to be received no later than **September 14, 2012, at 4:00 p.m.
(Eastern Time)**.

PLEASE TAKE FURTHER NOTICE** that, if no responses are timely filed and served

with respect to the Objection, the GUC Trust may, on or after the Response Deadline, submit to

the Bankruptcy Court an order substantially in the form of the proposed order annexed to the

Objection, which order may be entered with no further notice or opportunity to be heard offered

to any party.

Dated: New York, New York
       August 20, 2012

/s/ Stefanie Birbrower Greer
Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Attorneys for Motors Liquidation
Company GUC Trust*

**HEARING DATE AND TIME: September 24, 2012 at 9:45 a.m. (Eastern Time)**
**RESPONSE DEADLINE: September 14, 2012 at 4:00 p.m. (Eastern Time)**

Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Attorneys for Motors Liquidation*
*Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                                             :
**In re**                                                   :        **Chapter 11 Case No.**
                                                             :
**MOTORS LIQUIDATION COMPANY,** *et al.,*                   :        **09-50026 (REG)**
          **f/k/a General Motors Corp.,** *et al.*          :
                                                             :
                              **Debtors.**                   :        **(Jointly Administered)**
                                                             :
-------------------------------------------------------------x

## OBJECTION TO PROOF OF CLAIM
## NO. 70618 FILED BY WOODBURY CADILLAC, LLC

TO THE HONORABLE ROBERT E. GERBER
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-

captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second

Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or

modified from time to time, the "**Plan**"), objects to proof of claim number 70618 (the "**Claim**",

attached hereto as Exhibit A) filed by Woodbury Cadillac, LLC ("**Woodbury**"), because the

Claim fails to set forth a legal basis sufficient to support any right of payment from the Debtors.

In support of this Objection, the GUC Trust respectfully represents:

## RELIEF REQUESTED[1]

1.      The Claim arises from Woodbury's failed efforts to purchase certain assets of Country Cadillac, Buick, Pontiac and GMC Truck, LLC ("**Country**"), a former General Motors Corporation ("**Old GM**") dealer.  Woodbury argues that Old GM did not approve the sale, which resulted in termination of the agreement between Woodbury and Country and precluded Woodbury from purchasing valuable assets.   By the Claim, Woodbury seeks to recover $1,000,000 from Old GM for tortious interference with contract.

2.      As a matter of law, the Claim fails to establish a *prima facie* claim for tortious interference, and is thus insufficient to establish a right of payment against the Debtors. Accordingly, by this Objection, the GUC Trust seeks entry of an order disallowing and expunging the Claim pursuant to section 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007(a) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## JURISDICTION

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## BACKGROUND

4.      Prior to the Debtors' bankruptcy filing, Old GM and Country were parties to that certain Dealer Sales and Service Agreement effective November 1, 2005 (the "**Country Franchise Agreement**").

---

[1]     For purposes of this Objection, the GUC Trust requests the Court treat the facts alleged by Woodbury in the Claim as true.  However, the GUC Trust reserves the right to challenge such factual allegations.

5.      Pursuant to that certain Contribution and Asset Purchase Agreement (the "**Sale Agreement**") executed on December 11, 2008, by Woodbury and Country, Woodbury was to purchase, among other things, certain Cadillac assets, in exchange for providing Country with a 17.5% membership interest in Woodbury.  *See* Claim, Exhibit B.

6.      The conditions to Country's obligation to perform under the Sale Agreement are contained in section 7.2 of the Sale Agreement.  Such conditions include, among other things, attaining any "consents required to be obtained in order to consummate the transactions contemplated by this Agreement," "Franchise Approval" and "Floor Plan Financing" from "General Motors."  Claim, Exhibit B, § 6.1; 7.2 (vii), (viii), (xi).  The Sale Agreement expressly provides that it may be terminated by Country "if the Closing shall not have occurred on or before March 1, 2009, by reason of the failure of any condition preceded under Section 7.2." Claim, Exhibit B, § 8.1(iii).

7.      The Closing did not occur before March 1, 2009.  The Sale Agreement was terminated by Country on or before March 10, 2009, and a formal termination letter was sent on March 10, 2009 (the "**Termination Letter**").  Claim, Exhibit C.  In the Termination Letter, Country states that it was informed by the Cadillac Division of Old GM that it would not approve the "transfer of rights" to Woodbury, and that Old GM was going to terminate Country's franchise rights effective on March 16, 2009 (the "**Franchise Termination Date**").

8.      On March 13, 2009, prior to the Franchise Termination Date, Woodbury filed with the Supreme Court of the State of New York (Nassau County) (the "**State Court**") an order to show cause why Old GM should not be enjoined from taking action to prevent Country for performing its obligations under the Agreement (the "**Order to Show Cause**").  The Order to Show Cause was scheduled for a hearing on March 27, 2009, though it is unclear whether that

3

hearing actually occurred.  In the meantime – and, it appears, without a hearing or notice to Old

GM – the State Court entered an order temporarily enjoining and prohibiting Old GM from

"transferring, assigning, pledging or otherwise disposing of the assets" that are the subject of the

Agreement and from terminating its franchise agreement with Country (the "**TRO**").  Based on

the content of the Claim and information available to the GUC Trust, there does not appear to be

any valid legal or factual basis for the TRO.[2]

## THE CLAIM

9.      On or about January 14, 2011, Woodbury filed a claim against the Debtors in the

bankruptcy proceeding.  *See* Exhibit A.  The Claim was filed late – over a year after the

November 30, 2009 bar date in these chapter 11 cases.  The GUC Trust has a pending objection

to the Claim on the basis that it is late-filed (the "**Late-Filed Objection**"). [3]

10.     By the Claim, Woodbury seeks damages of $1,000,000 for harm suffered "as a

result of GM's tortuous interference" with the Agreement.  Claim, p. 3.

## ARGUMENT

11.     For a prepetition claim to be valid, the claimant must demonstrate he possesses a

right to payment and that the right arose prior to the filing of the bankruptcy petition.  *See Olin*

---

[2]      The basis for the State Court's decision to enter the TRO is unclear, as there are no records
available from the State Court.  It is also unknown whether Old GM was served with the Order to Show
Cause or the TRO.  The GUC Trust was informed by the clerk of the State Court that the file on the case
does not contain any documents, and that it does not have access to any documents regarding the matter.
The GUC Trust also does not have any information regarding the Order to Show Cause in its files.
Inexplicably, counsel of record for Woodbury has not responded to several requests from the GUC
Trust's counsel for the documents.  In any event, the TRO should not have been granted and does not
have any bearing on the disposition of the Claim.

[3]      The GUC Trust reserves all rights with respect to the Late-Filed Objection.  Because Woodbury
insists that its counsel failed to receive actual notice of the Bar Date (which the GUC Trust can show is
false), and an evidentiary hearing would be required to resolve that issue, the GUC Trust determined it
would be more efficient to first file the Objection, given the Claim fails to meet even the *prima facie*
standard necessary to establish the asserted claim.  The GUC Trust also reserves the right to raise any
other objections to the Claim.

*Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000). A right to payment is an enforceable obligation. *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 559 (1990). Bankruptcy Rule 3001(f) further provides that a proof of claim is *prima facie* evidence of the validity and amount of such claim. If the claimant does not allege a sufficient legal basis for the claim, the claim is not considered *prima facie* valid, and the burden remains with the claimant to establish the validity of the claim. *In re Chain*, 255 B.R. 278, 280, 281 (Bankr. D. Conn. 2000); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988).

12.    As demonstrated below, Woodbury fails to meet its burden to show that Old GM's decision not to approve the transfer of the assets contemplated by the Agreement constitutes "tortious interference." Thus, Woodbury has no valid legal right against the Debtors that gives rise to an enforceable obligation.

## A.    Woodbury Cannot Establish the Elements of a Tortious Interference Claim

### 1.    Applicable Law

13.    Under New York law, a claimant seeking recovery for tortious interference with contract claim must establish: (i) the existence of a contract between plaintiff and a third party; (ii) that defendant had knowledge of the contract; (iii) that defendant intentionally procured the third party's breach of the contract; (iv) the procurement was without justification; (v) actual breach of the contract; and (iv) plaintiff was damaged as a result. *See Lama Holding Co. v. Smith Barney*, 88 N.Y.2d 413, 424 (1996) (citations omitted). Here, the Claim submitted by Woodbury does not include any allegations which would provide even a *prima facie* basis to satisfy elements (iii), (iv), (v) or (vi).

5

09-50026-mg    Doc 12021    Filed 08/20/12    Entered 08/20/12 16:53:20    Main Document
Pg 10 of 15

1.    <u>**Country Did Not Breach the Agreement**</u>

14.    In order to establish a claim for tortious interference, Woodbury must be able to show a breach of the Agreement.  However, Woodbury has not (and cannot) show such a breach, because there was none.

15.    Old GM's consent was a condition to Country's obligation to perform under the Agreement.    Claim, Exhibit B, § 7.2 ("The obligations of [Country] to consummate the transactions to be performed by them in connection with the Closing is subject to satisfaction of the following conditions," which conditions include obtaining any required consents).  Because no consent was obtained from Old GM, Country was not obligated to perform under the Agreement. *Id.*  Absent an obligation to perform, there can be no breach. *Romanello v. Intesa Sanpaolo S.p.A.*, 97 A.D.3d 449, 455 (N.Y. App. Div. 2012) ("In the absence of an actual breach of a contract, no claim will lie against a third party . . . for tortious interference with that contract.").

16.    Moreover, where, as here, an agreement specifically contemplates that a required consent might not be obtained, and excuses a party's obligation to perform under those circumstances, there can be no claim for tortious interference.  *See* Claim, Exhibit B, § 8.1 (Country may terminate the agreement by reason of "the failure of any condition precedent" in the Agreement); *see also 2626 Bway LLC v. Broadway Metro Assocs., LP*, No. 105586/2010, 2011 WL 3631959 (N.Y. Sup. Aug. 11, 2011) (refusal to consent to a lease is not a basis for a claim for tortious interference where the lease contemplated that consent could be withheld); *Jim Ball Chrysler LLC v. Marong Chrysler-Plymouth, Inc.*, 19 A.D.3d 1094 (N.Y. App. Div 2005) (no tortious interference when performance was excused by the non-occurrence of a condition

precedent); *Morse v. Ted Cadillac, Inc.*, 146 A.D.2d 756 (N.Y. App. Div. 1989) (no valid claim

for tortious interference when an express condition to performance was not met).

### 2.    Old GM Did Not Intentionally Procure a Breach of the Agreement

17.    Even if there was a breach of the Agreement (which there was not), Woodbury

has not provided *any* facts which show that Old GM intentionally caused such alleged breach.

Indeed, there is nothing whatsoever in the record that shows Old GM acted improperly in

determining not to provide its consent to the Agreement.    In fact, the record supports the

conclusion that Old GM's determination was an outcome contemplated by the parties, and was a

risk the parties understood in entering into the Agreement.

18.    For example, absent Old GM's consent, Country had the express right to

terminate the Agreement without any resulting liability. *See* Claim, Exhibit B, §§ 7.2, 8.1, 8.2 (if

the Agreement is terminated, "all rights and obligations of the parties hereunder shall terminate

without any liability of any person to any other Person").    Here, when Country terminated the

Agreement, it did so consistent with its contractual right to do so, without any improper action or

inducement by Old GM.    *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566,

589 (2d Cir. 2005) (holding that a claim alleging tortious interference with a contract fails when

the claim alleges nothing more than defendant's exercise of its contractual right).

19.    Finally, the law is well-settled that a legal or economic justification for an action

will immunize a defendant from liability for tortious interference.    *Foster v. Churchill*, 87

N.Y.2d 744 (1996).    There is no doubt that, if necessary, Old GM could (and would) show that

its decision to terminate the Country Franchise Agreement was consistent with the terms of that

agreement.    (Among other things, the Agreement included a problematic relocation request and

would result in a substandard facility.    Moreover, Country had a history of poor performance.)

09-50026-mg    Doc 12021    Filed 08/20/12    Entered 08/20/12 16:53:20    Main Document
Pg 12 of 15

However, the burden is on Woodbury to establish facts showing improper acts by Old GM in the first instance, and they have not (and cannot) do so.

### 3.      Woodbury Has Not Established Damages

20.      To establish a *prima facie* claim for tortious interference with a contract, a claimant must show he suffered damages giving rise to a claim and those damages may not be speculative.  *Kenford Co. v. County of Erie*, 67 N.Y.2d 257, 261, (1986) ("[D]amages may not be merely speculative, possible or imaginary, but must be reasonably certain and directly traceable to the breach, not remote or the result of other intervening causes.").  Here, Woodbury fails to provide any documentation showing the basis for the amount of damages sought, and relies solely on the general statement that it "suffered irreparable harm and has been damaged."  Claim at 3.  Clearly, this is insufficient to satisfy the applicable standard.

21.      Additionally, given there is no other alleged basis for the $1,000,000 claim, Woodbury may in fact be seeking punitive damages from the Debtors.  Such damages are not available where, as here, the debtor is liquidating and there is no deterrent purpose or effect. Indeed, under such circumstances, recovery of punitive damages by one creditor would deplete recovery of other creditors.  In such cases, courts (including this Court) have regularly exercised their equitable power pursuant to section 105 of the Bankruptcy Code to disallow or subordinate punitive damage claims.  *See, e.g.*, Decision on Objection to Claim of Dr. Atul C. Shah, *In re Motors Liquidation Co.*, No. 09-50026 (Bankr. S.D.N.Y. 2012), ECF No. 12001; *In re Johns-Manville*, 68 B.R. 618, 627 (Bankr. S.D.N.Y. 1986); *In re A.H. Robins Co., Inc.*, 89 B.R. 555, 562 (E.D. Va. 1988).

*      *      *

22.    Based on the foregoing, Woodbury does not have any legal right to payment from the Debtors.  Therefore, the Claim is not *prima facie* valid and the Debtors have no enforceable obligations to  Woodbury.

## CONCLUSION

For the reasons set forth above, this Court should enter an order expunging the Claim and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
       August 20, 2012

                              */s/ Stefanie Birbrower Greer*

                              Barry N. Seidel (BS-1945)
                              Stefanie Birbrower Greer (SG-2898)
                              DICKSTEIN SHAPIRO LLP
                              1633 Broadway
                              New York, New York 10019-6708
                              Telephone: (212) 277-6500
                              Facsimile: (212) 277-6501

                              Attorneys for Motors Liquidation
                              Company GUC Trust

HEARING DATE AND TIME: September 24, 2012 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: September 14, 2012 at 4:00 p.m. (Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
|  | : |  |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
| f/k/a **General Motors Corp.**, *et al.* | : |  |
|  | : |  |
| **Debtors.** | : | **(Jointly Administered)** |
|  | : |  |

------------------------------------------------------------x

## ORDER GRANTING OBJECTION TO PROOF
## OF CLAIM NO. 70618 FILED BY WOODBURY CADILLAC, LLC

Upon the objection to proof of claim number 70618 (the "**Claim**") filed by Woodbury Cadillac, LLC, dated August 20, 2012 (the "**Objection**"), of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or modified from time to time, the "**Plan**"), pursuant to section 502(b) of title 11, United States Code (the "**Bankruptcy Code**"), seeking entry of an order disallowing and expunging the Claim on the basis that such claim fails to set forth facts necessary to establish any legal or factual basis for the alleged claim, all as more fully described in the Objection; and due and proper notice of the Objection having been provided, and it appearing that no other or further notice need be provided; and the Court having found and determined that the relief sought in the Objection is in the best interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set forth in the Objection establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted to the extent provided herein; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Claim is disallowed and expunged; and it is further

ORDERED that this Order has no res judicata, estoppel, or other effect on the validity, allowance, or disallowance of, and all rights to object on any basis are expressly reserved with respect to the Claim; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
            _____, 2012


_____
United States Bankruptcy Judge