HEARING DATE AND TIME: September 24, 2012 at 9:45 a.m. (Eastern Time)

Robert W. Schmieder II
Mark L. Brown
**SL CHAPMAN LLC**
330 North Fourth Street, Suite 330
St. Louis, Missouri
Phone : (314) 588-9300
Fax :   (314) 588-9302

S. Alyssa Young
**LEADER & BERKON LLP**
630 Third Avenue
New York, New York 10017
Phone (212) 486-2400
Fax (212) 486-3099

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, f/k/a General Motors Corp., *et al.* | : | 09-50026 (REG) |
| Debtors. | : | (Jointly Administered) |

---

**CLAIMANTS' RESPONSE TO MOTORS LIQUIDATION
COMPANY GUC TRUSTS' OBJECTION TO PROOF OF CLAIM NO. 71060**

**Introduction**

The parties agree that it is within this Court's discretion to permit or to disallow Proof of Claim No. 71060 to be treated as a class claim under Bankruptcy Rules 7023 and 9014. The parties largely are in agreement concerning facts pertaining to events that have transpired to this point, including the fact that thousands of class members already have received substantial recovery totaling more than $36 million as a result of the Class Judgment. (This is because, as explained below, both Old GM and New GM honored the

1

Class Judgment for a period of time, and when New GM stopped doing so after the adversary proceeding was filed, it began offering and continues to offer alternate relief.) The parties disagree, however, as to the standard to be applied by this Court in exercising its discretion.

The objection of Motors Liquidation Company GUC Trust (the "**Trust**") relies almost exclusively on cases in which the courts were asked to consider class treatment of bankruptcy claims submitted by putative classes that had *not* been certified by the district courts in which the claims were pending pre-bankruptcy. In this case, not only was the class certified by the U.S. District Court for the Eastern District of California, and not only did that court enter judgment in favor of the certified class, but that judgment became final and non-appealable prior to the filing of the debtor's bankruptcy petition in this case. Thus, as explained in further detail below, many of the considerations described in the Trust's objection simply do not apply in this context.

What may present a more difficult consideration as the Court exercises its discretion, and what makes this case relatively unique, is this: Thousands of class members already have received reimbursement as a result of the Class Judgment, in an amount exceeding $36 million, because (1) the Class Judgment extended the VTi transmission warranty, essentially providing specific performance as a remedy; (2) Old GM provided complete relief to class members through July 9, 2009; (3) New GM provided complete relief to class members through September 29, 2009; and (4) New GM provided alternate relief thereafter and continues to do so.

There is no evidence or reason to believe that any class member who was otherwise entitled to relief under the Class Judgment and at any time between February of

2009 and January 1, 2012 (the last date for submitting claims pursuant to the underlying Class Judgment) requested reimbursement from either Old GM or New GM was not offered at least some relief in accordance with one of the policies described in detail below.  We do not dispute that the GUC Trust would be entitled to a setoff with respect to such class members.  However, identifying the specific class members as to whom the setoff would apply, and the specific setoff amount for each one, would require an administrative process whose cost in relation to the value of remaining relief (if, in fact, there are entitled class members who did not already receive reimbursement) is unknown.  This information could not be known without incurring the cost of providing additional notice and claim forms to all members of the certified class.

## Statement of Pertinent Facts

1.	General Motors Corporation ("Old GM") sold 83,718 Saturn vehicles with continuously variable transmissions known as VTi transmissions to customers in the United States.  Those Saturn vehicles spanned the 2002 through 2005 model years and included the Vue and Ion models.

2.	At the time of sale, Old GM delivered a 3 years/36,000 mile express written warranty with each Saturn vehicle, in which it promised to "at no cost, correct any vehicle defect related to materials or workmanship within the warranty period." Later, Old GM issued Special Policies 04020 and 04020A, which extended coverage for the VTi transmission to 5 years/75,000 miles.

3.	On October 10, 2007, Plaintiffs filed a class action against Old GM regarding the VTi transmission in the United States District Court for the Eastern District of California, Case No. 2:07-CV-02142 WBS-GGH (the "*Castillo* case").  The parties

reached a class settlement ("Settlement") which replaced coverage for the VTi transmission, essentially providing specific performance of an extended warranty, based upon a number of factors including owner status, mileage, and date of purchase.

4.      The *Castillo* district court granted preliminary approval of the Settlement. Beginning on January 9, 2009, the court-approved notice ("Notice") was mailed to over 149,000 class members who currently owned or had owned a class vehicle. In conjunction with the Notice, Class Counsel purchased a separate phone number, established a dedicated email address, and created a special page on Class Counsel's web-site to communicate with and/or provide information to Class Members. Class Counsel also hired additional personnel to respond to Class Member inquiries. To date, at least 5,000 Class Members have contacted Class Counsel and the web-site has had more than 47,000 visits to the *Castillo*-related content.

5.      After Notice was mailed, Old GM agreed to process VTi warranty claims in accordance with the Settlement. On February 3, 2009, Old GM issued GM Administrative Message G_0000020717, which instructed its authorized dealers to follow the Settlement terms "without the delay in waiting for ultimate final settlement approval." Class Counsel then forwarded all Class Member inquiries to the GM Customer Assistance Center to resolve any warranty issues (while continuing to answer questions from individual class members).

6.      On April 14, 2009, the *Castillo* district court signed the final judgment approving the Settlement ("**Class Judgment**"). By May 18, 2009, the time to appeal the Class Judgment had expired, and it became final.

7.      On June 1, 2009, Old GM filed for bankruptcy protection. There was a

proposed sale pursuant to 11 U.S.C. § 363 with General Motors LLC ("**New GM**"), which included the Saturn brand. As part of the proposed sale, Old GM obtained court permission to continue its warranty programs pending the sale. With bankruptcy court permission, Old GM continued to pay VTi warranty claims pursuant to the terms of the Class Judgment.

8. On July 5, 2009, the bankruptcy court approved the 363 transaction with New GM. On July 10, 2009, the Sale Order became final and the Closing occurred.

9. From February 3, 2009 through July 9, 2009, Old GM paid $14,813,016.66 to process 4,218 claims by Class Members under the terms of the Settlement and/or Class Judgment.

10. After the bankruptcy filing, Class Counsel updated its website to include copies of the Bankruptcy Claim Form, Instructions for Filling Out Bankruptcy Claim Form, and Attachment A to Bankruptcy Claim Form.

11. On August 26, 2009, Plaintiffs filed a declaratory judgment action that became styled as the adversary proceeding *Castillo et al. v. General Motors Company*, United States Bankruptcy Court for the Southern District of New York, Adv. Case No. 09-0509 (the "**Adversary Proceeding**"). In the Adversary Proceeding, Plaintiffs sought a declaration that New GM assumed the liability for the Class Judgment.

12. From July 10, 2009 through September 28, 2009, New GM paid $5,857,133 to process 1,636 claims by Class Members under the terms of the Class Judgment. On September 29, 2009, New GM issued the "Saturn VTi Transmission Settlement Clarification," reverting back to Special Policies 04020 and 04020A.

13. On November 7, 2009, New GM issued Special Policy 09280 and mailed

5

it to the approximately 149,000 members of the class. Special Policy 09280 provided VTi coverage similar to the Class Judgment along with a new car incentive option ("Special Policy"). The Special Policy provided that:

> [W]ithin 8 years or 100,000 miles [], whichever occurs first, from the date the vehicle was originally placed in service, regardless of ownership, [New] GM will pay 50% of eligible transmission repair expenses…Customers…may elect to receive a customer credit from [New] GM for their vehicle instead of the repair…If the customer elects this option, the vehicle will be purchased for a $5,000 credit (less any lien) towards the purchase of a new GM vehicle…

From November 9, 2009 through May 1, 2012, New GM paid $6,806,034.16 to process 3,233 Class Member claims pursuant to the repair option of Special Policy 09280. During that same time, New GM paid $8,712,642.04 to issue credits to 1,766 Class Members pursuant to the credit option of Special Policy 09280.

14. From February 3, 2009 through May 1, 2012, class members have received a total $36,188,826.23 through 10,853 separate instances of reimbursement.

15. On November 18, 2009, the Bankruptcy Court issued a verbal temporary restraining order (the "**TRO**") enjoining New GM from telling customers that the adversary proceeding between the Class Representatives and New GM had been dismissed. In the same verbal order the Bankruptcy Court reiterated that New GM has "committed to me that it won't take the position that if consumer class members take advantage of the new deal that New GM is offering them, such would be deemed to be [an] accord and satisfaction or other release of their rights under the Eastern District of California settlement. . . . But New GM has told me that it won't do so, and in the unlikely event that this becomes a matter of controversy, I'll hold it to its word."

16. On November 28, 2009, class counsel submitted a timely proof of claim

6

(#62908) on behalf of the class members for the Class Judgment. In the "amount of claim" and "basis for claim" sections of the claim form, the submitted form incorporated (among other things) an "Attachment 1" as follows:

> Currently, there is an adversary proceeding pending against General Motors Company ("New GM") styled *In re General Motors Corp., et al., Debtor, Kelly Castillo, et al., Plaintiffs v. General Motors Company, f/k/a New General Motors Company, Inc., Defendants*, United States Bankruptcy Court, S.D.N.Y, Chapter 11 Case No. 09-50026 (REG), Adv. Proc. No. 09-00509. It is alleged that New GM assumed the liabilities of Debtor in connection with the Saturn VTi class action settlement and resulting final judgment included with this Proof of Claim. This claim is submitted in the alternative to the action against New GM, without waiver of any right to full compensation from New GM pursuant to the attached final judgment in the event it is determined that New GM assumed Old GM's obligations under the Saturn VTi settlement.

17. In its 29th Omnibus Objection dated July 2, 2010, Old GM objected to the classification of claim 62908 as a secured claim. On March 11, 2011, class counsel submitted a revised proof of claim on behalf of the class members (#71060), reclassifying the claim as unsecured.

18. At least 24 Class Members have submitted bankruptcy claims.

19. Without providing claim forms to each of the approximately 149,000 class members, we know of no way to determine which (if any) of the class members who have not already received their share of the more than $36 million already reimbursed by Old GM or New GM may be entitled to additional relief under the Class Judgment. Nor can we specify the dollar value of any such remaining relief. This is because the Class Judgment essentially required specific performance of an extended warranty, and there is no way to know how many class members experienced unreimbursed transmission failures during the pendency of the bankruptcy.

20. On May 2, 2012, this Court entered a judgment in the Adversary

Proceeding in favor of New GM. That judgment was appealed on May 16, 2012 and remains on appeal.

21.     Old GM was aware of the Adversary Proceeding almost from the beginning and, by extension, the Class Judgment and the corresponding bankruptcy proof of claim submitted in the alternative. *See*, *e.g.*, the "Notice of Agenda of Matters Scheduled for Hearing on November 18, 2009 at 2:00 p.m." submitted by Old GM's counsel in the Adversary Proceeding pertaining to the motion for TRO. (http://www.motorsliquidationdocket.com/5_00509.pdf).

### Discussion

The Bankruptcy Code itself does not explicitly describe a mechanism for handling proofs of claim on a class-wide basis and, to our knowledge, the Second Circuit has not yet addressed the issue. However, the courts of this district have followed the lead of the Seventh Circuit in *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988), announcing that a bankruptcy court may exercise its discretion to apply Rule 23, Fed.R.Civ.P., to a contested matter in bankruptcy. *See*, *e.g.*, *In re Chateaugay Corp. v. LTV Aerospace and Defense Co.*, 104. B.R. 626 (1989) (S.D.N.Y. 1989) (reversing bankruptcy court's order expunging proof of claim on behalf of class). The basis is that Bankruptcy Rule 7023 states: "Rule 23 F.R.Civ.P. applies in adversary proceedings," and Bankruptcy Rule 9014 states that in any "contested matter in a case under the Code not otherwise governed by these rules . . . [t]he court may at any stage in a particular matter direct that one or more of the rules in Part VII [which includes Rule 7023] shall apply."

The problem with the Trust's analysis, however, is that it treats the class claim in this case as being on equal footing with other cases in which nothing more than a

complaint had been filed as of the date of the bankruptcy petition; it ignores that the class members are judgment creditors, and it approaches their proof of claim as though the underlying merits had not already been conclusively resolved and would need to be litigated from scratch.

The cases on which the Trust relies simply do not address the situation in which a bankruptcy petition is filed after a class judgment becomes final and non-appealable but before payment has been made. This attempt to fit a square peg into a round hole may be understandable in light of the apparent rarity of these circumstances. The research of class counsel revealed two cases (discussed below) in which class judgments had been entered prior to the bankruptcy petition, but none in which appellate rights had expired by that time, as they had in this case. This case is made even rarer by virtue of the more than $36 million that members of the class already have obtained as a result of this litigation. Unfortunately, we are aware of no case law directly on point to guide the Court in the exercise of its discretion in this unusual case, but a *de novo* Rule 23 analysis is neither required nor appropriate. Rather, we suggest that the more sensible approach to exercising the Court's discretion would be to balance (1) the value of identifying those class members experiencing compensable transmission failures who have not yet been reimbursed with (2) the cost of doing so, in light of the prior recovery and the unknown remaining potential recovery, and in light of the Court's obligation to the bankruptcy estate vis-à-vis other creditors. We respectfully request that the Court exercise its discretion in favor of those class members who have not yet recovered, though we recognize the difficulty the Court may face in balancing these competing interests.

### I.  A *de novo* Rule 23 Analysis Is Not Required and Would Not Be Appropriate.

Each of the cases on which the Trust relies is taken from the context of a class claim that was in its infancy at the trial court level before being interrupted by the defendant's bankruptcy.  *See In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 369 (S.D.N.Y. 1997) ("No court has ever certified Sager's class, nor has Sager ever moved for class certification"); *In re Musicland Holding Corp.*, 362 B.R. 644, 647 (S.D.N.Y. 2007) ("The class action was pending . . . when Musicland filed its chapter 11 petition in this Court.  The filing automatically stayed the class action, and a class was never certified"); *In re Thomson McKinnon Sec., Inc.*, 150 B.R. 98, 100 (S.D.N.Y. 1992) (describing "proposed" but presumably not previously certified class); *In re Sacred Heart Hosp. of Norristown*, 177 B.R. 16, 18 (E.D.Pa. 1995) ("we note that the putative class in issue was not certified by a nonbankruptcy court"); *In re Ephedra Prod. Liability Litig.*, 329 B.R. 1, 5 (S.D.N.Y. 2005) ("Pre-certification discovery would be needed. . . . If the classes were then certified, notice to class members followed by discovery on the merits and the bankruptcy equivalent of a trial would further delay distribution"); *In re Computer Learning Centers, Inc.*, 344 B.R. 79, 83 (E.D.Va. 2006) (class claim was certified by state court, but "[n]o notification of the class action lawsuit or individual's membership in the certified class was given to the class members" either pre- or post-bankruptcy); *Reid v. White Motor Corp.*, 886 F.2d 1462 (6th Cir. 1989) (although class was certified, case was still pending at time of bankruptcy, and state court ultimately dismissed for failure to prosecute); *In re Zenith Lab., Inc.*, 104 B.R. 659 (D.N.J. 1989) (class certified less than two months prior to filing of bankruptcy petition).

The infancy of the class litigation in the cases cited by the Trust made them

10

vulnerable to the concerns expressed by those courts about the time-consuming nature of class litigation:

> Although the Bankruptcy Code and Rules give no express guidance for the court's exercise of this discretion, a pervasive theme is avoiding undue delay in the administration of the case. . . . For example, since class litigation is inherently more time-consuming than the expedited bankruptcy procedure for resolving contested matters, class litigation would have to be commenced at the earliest possible time to have a chance of being completed in the same time frame as the other matters that must be resolved before distributing the estate.

*In re Ephedra*, 329 B.R. at 5.

The time-consuming steps inherent in class litigation already are behind us in this case, however. Not only was the class certified, but final judgment was entered on behalf of the class following notice to all class members. That means that there is no need for a redundant and potentially inconsistent Rule 23 analysis and makes this case much more like *In re Livaditis*, 122 B.R. 330 (N.D.IL. 1990), in which a class claim was filed in bankruptcy seeking to recover on a judgment that was entered pre-bankruptcy.

> With respect to evaluating efficiency of the class device, Class Plaintiffs have already been awarded judgment after the requested class was certified. Accordingly, this Court will not be faced with the burdens of hearing a complex contested claim, or maintaining a difficult class action.

*Id*. at 339.

Moreover, when the trial court's class certification has been wrapped into a judgment, that resolves the issue. "The District Court has already determined the propriety of allowing Class Plaintiffs to proceed as a class, and final judgment was entered in favor of the class. The doctrine of collateral estoppel therefore precludes Debtor from relitigating that issue, even though the judgment is now on appeal." *Id.* at 334. *See also In re Trebol Motors Distrib. Corp.*, 211 B.R. 785 (D. Puerto Rico 1997)

11

(permitting class proof of claim on pre-petition judgment; "Because the Bonilla creditors were certified as a class by the district court, this Court concludes that the Bonilla creditors are not required to apply for class certification in the bankruptcy court under Fed.R.Civ.P. 23 in order to file a class proof of claim").

This case presents an even more obvious invitation to apply the collateral estoppel doctrine because, unlike in *Livaditis*, the trial court's judgment and certification order are not on appeal; indeed, appellate rights were extinguished prior to the bankruptcy petition in this case.

Although a *de novo* Rule 23 analysis would not be appropriate, one argument raised in the Trust's motion merits a response in order to avoid confusion. The Trust argues that members of the class are not ascertainable. That assertion is demonstrably inaccurate, in that all members of the class already have been identified and have received direct notice from Old GM. However, it is true that the specific identity of those class members (if any) who are entitled under the Class Judgment to reimbursement for compensable transmission failures but who have not yet received any relief (and as to whom no setoff would apply) is currently unknown. Such class members could only be identified, so far as we know, through an additional claims process directed to each of the approximately 150,000 class members. Such notice would necessarily be overly inclusive, though to what extent we would not know until after the process were completed.

## II. Under the Unique Circumstances of This Case, a Prior Motion for Application of Rule 23 Was Unnecessary.

The Trust argues that the class proof of claim should be expunged because no Bankruptcy Rule 9014 motion requesting application of Rule 23 was filed. This

12

argument again ignores the procedural posture of this case and draws from very dissimilar and inapplicable case law in which no class was certified pre-bankruptcy.

First, Bankruptcy Rule 9014(c) provides that the court "may at *any* stage in a particular matter direct" the application of Rule 23 (emphasis added). *This* is any stage, and nothing prevents the Court from exercising its discretion under the rule at this point.

Second, Rule 9014 applies only to contested matters, and there is authority for the proposition that this was not a contested matter until the Trust objected to the class proof of claim.

> The initial decision to apply Rule 23 in a contested matter raises a "chicken and egg" paradox. The claim cannot be allowed as a class claim until the bankruptcy court directs that Rule 23 apply. It can only make this direction in a pending contested matter which the mere filing of the claim does not initiate. In the absence of an objection, however, the proof of claim is deemed allowed. . . .
>
> The answer to the paradox lies in Rule 23 itself. Under Rule 23(c)(1), the court must determine expeditiously whether the matter may proceed as a class action. Prompt certification is particularly important where, as here, the class representative relies on Rule 23(b)(3). Rule 23(c)(2) mandates specific notification to the (b)(3) class which must, *inter alia*, advise each class member of the right to opt out.

*In re Woodward*, 205 B.R. at 369-70. Despite Old GM's awareness of this class claim from the very beginning of the related adversary proceeding against New GM (pleaded in the alternative and seeking a declaration that New GM voluntarily assumed liability for the Class Judgment), the Trust did not object to the class claim until August 23, 2012. Until that time, the proof of claim was deemed allowed. Perhaps even more fundamentally, the urgency of a motion for class treatment described in *Woodward* – so that class members could exercise their right to opt out – simply does not apply here, in that all class members were already judgment creditors and would have no opt-out right

13

in any event.

Later courts (despite the fact that Rule 9014 applies only to contested matters, and that a proof of claim is deemed admitted and not contested until the debtor's objection) have "taken the more practical view that the class representative can move at any time for a declaration that it may file a class proof of claim." *In re Musicland*, 362 B.R. at 651. This is because the "class representative, in this regard, is more likely to be aware of the pendency of the class claim." *Id.* That is not the case here, however, where Old GM was aware from the beginning, not only of the class proof of claim, but also of the related adversary proceeding against New GM. Old GM shared the class members' interest in a judicial declaration that New GM had assumed this liability, and it understandably waited until receiving a ruling on that question before filing the pending motion.

Finally, the Trust's argument again ignores the fact that the class in this case *had* been certified, and that members of the class were judgment creditors. *See In re Trebol*, 211 B.R. at 788 ("Because the Bonilla [judgment] creditors were certified as a class by the district court, this Court concludes that the Bonilla [judgment] creditors are not required to apply for class certification in the bankruptcy court under Fed.R.Civ.P. 23 in order to file a class proof of claim"); *In re Craft*, 321 B.R. 189, (N.D.Tex. 2005) ("If a class is certified and its representation established prepetition, then [a court decision certifying the class, in and of itself, satisfies the requirements of Rule 2019]. But if the class is not yet certified or the class representatives approved, the court faces different issues. . . . ***In those cases*** in which a Rule 23 determination is not made timely in another court, the bankruptcy court must, first decide whether Rule 7023 should be invoked to permit the court, second, to decide whether or not, under Rule 7023, a class should be

14

certified") (emphasis added).

In this case, an earlier motion seeking redundant application of Rule 23 to the already certified class of judgment creditors would not have advanced any worthwhile purpose, particularly when all parties had an interest in awaiting this Court's recent ruling in the related adversary proceeding against New GM (which remains on appeal to the district court).

### III. In Exercising Its Discretion, the Court May Consider the Substantial Relief Already Obtained by Thousands of Class Members.

The parties do not dispute that class members already have received more than $36 million in relief as a result of this class action litigation. Nor are we aware of a valid basis for opposing the Trust's position that it would be entitled to a setoff for that relief. The difficulty is in knowing which class members, if any, have experienced reimbursable transmission failures for which they have not already been compensated at this point. The only way to identify that subset of the class would be to send claim forms to *all* members of the class, as contemplated in the Class Judgment. This would necessarily be overly inclusive, and its cost in relation to the value of any not-yet-reimbursed claims is unknown and could not be known until claims were mailed and executed claim forms returned. This appears to be a valid consideration for the Court to take into account in exercising its discretion:

> The court does recognize, however, that the costs that would be incurred by mailing notices and proof of claim forms to 180,000 potential class members are high and understands why the debtor would not welcome this added expense. This inconvenience to the debtor must be balanced by the prejudice to the putative class members if their class proofs of claim are rejected.

*In re Entergy New Orleans, Inc.*, 353 B.R. 474 (E.D.La. 2006); *see also In re Thomson*

15

*McKinnon Sec., Inc.*, 133 B.R. 39 (S.D.N.Y. 1991) (Rule 7023 and Rule 23 "give the court substantial discretion to consider the benefits and costs of class litigation"); *In re Ephedra Prod. Liab. Litig.*, 329 B.R. 1 at 9-10 (S.D.N.Y. 2005) ("allowing the consumer class actions would unreasonably waste an estate that was already grossly insufficient to pay the allowed claims of creditors who had filed timely individual proofs of claim. . . . The Court has discretion under Rule 9014 to find that the likely total benefit to class members would not justify the cost to the estate of defending a class action under Rule 23").

### **Conclusion**

Because the class proof of claim at issue was filed on a behalf of an already certified class of judgment creditors, a formal *de novo* Rule 23 analysis would not be appropriate. The Court has discretion to allow the proof of claim on behalf of the class, and case law in the context of classes that were not certified or did not obtain judgments pre-bankruptcy offer little guidance to the Court under these circumstances. In the only two cases we know of in which a proof of claim sought to enforce a pre-bankruptcy class judgment (*Livaditis* and *Trebol*), class proofs of claim were allowed. This case is the only one to our awareness in which a class judgment became non-appealable before bankruptcy or in which members of the class received substantial relief outside the bankruptcy process as a result of the class litigation, rendering the value of identifying a subset of non-reimbursed class members unknown.

We respectfully request that the Court exercise its discretion in favor of permitting the class proof of claim, recognizing that class members already have received more than $36 million in relief as a result of the class litigation, and that the cost of

identifying unreimbursed class members in relation to the value of their unreimbursed claims is unknown.

Dated: September 17, 2012

Respectfully submitted,

By: /s/ Mark L. Brown

Robert W. Schmieder II
Mark L. Brown
**SL CHAPMAN LLC**
330 North Fourth Street, Suite 330
St. Louis, Missouri 63102
Phone : (314) 588-9300
Fax :   (314) 588-9302

S. Alyssa Young
**LEADER & BERKON LLP**
630 Third Avenue
New York, New York 10017
Phone (212) 486-2400
Fax (212) 486-3099

**Attorneys for Claimants**

# **CERTIFICATE OF SERVICE**

      I hereby certify that on September 17, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filings(s) to the following:

Stephen Karotkin, Esq.  
Joseph H. Smolinsky, Esq.  
WEIL, GOTSHAL & MANGES LLP  
767 Fifth Avenue  
New York, New York 10153

      By: /s/ Mark L. Brown

      Robert W. Schmieder II  
      Mark L. Brown  
      **SL CHAPMAN LLC**  
      330 North Fourth Street, Suite 330  
      St. Louis, Missouri 63102