**Subject:** RE: GM
**From:** Davidson, Scott (SDavidson@KSLAW.com)
**To:** albojintx@yahoo.com;
**Date:** Wednesday, July 11, 2012 2:14 PM

Thank you for your e-mail. I will call you tomorrow to discuss this matter.

**Scott I. Davidson | King & Spalding LLP**

Tel: 212.556.2164 | Fax: 212.556.2222 | E-mail: sdavidson@kslaw.com
1185 Avenue of the Americas | New York, New York 10036

The information contained in this e-mail is personal and confidential and is intended for the recipient only. In the event that you have received this message in error, please delete it immediately and inform the sender as soon as possible.

**From:** Linda Mitchell [mailto:albojintx@yahoo.com]
**Sent:** Tuesday, July 10, 2012 9:41 PM
**To:** Davidson, Scott
**Cc:** Steinberg, Arthur
**Subject:** Re: GM

Mr. Davidson,

I appreciate your response and I have contacted the courts to let them know that July 17th @ 9:45am did not work for you. I have set a new court date of August 21st @ 9:45am should we not be able to overcome your clients position by weeks end.

What I find interesting about your position is in our first communication your argument was based on the assumption that I no longer had a valid "glove box" warranty and that I had not filed a lemon law proceeding. I then sent you the verification you requested that clearly refuted those assumptions.

Now you are taking the position under the Sale Order 2.3 (b)ix,ii,xi,iii and xvi as well as 46 and 56 to say that New GM would not be liable. Had you, "not left out a key sentence", I might be inclined to agree. However when I read each section in its entirety they all very clearly state: **Except for the Assumed Liabilities or other than Assumed Liabilities.**

Is it your client's position that they are not obligated to honor consumer laws that give a consumer remedy when a manufacturer's warranty fails in its essential purpose such as the DTPA or Magnuson-Moss Warranty Act?

I would also like to know your clients position with regard to the Co-defendant and any indemnity.

I would also like copies of the insurance claim that was filed in regard to the repurchase order for my truck.

You should know that my position is the same. I ask that your client reconsider stipulation by lifting the stay and allow my case to move forward to completion.
If however a decision by Judge Gerber is my only option than please let me know.

Sincerely,
Linda Mitchell
817-494-4300
*please note phone number change*

---

**From:** "Davidson, Scott" <SDavidson@KSLAW.com>
**To:** 'Linda Mitchell' <albojintx@yahoo.com>
**Cc:** "Steinberg, Arthur" <ASteinberg@KSLAW.com>
**Sent:** Friday, June 29, 2012 8:31 AM
**Subject:** RE: GM

Ms. Mitchell:
Thank you for the information you forwarded to me. While you did commence a Lemon Law action against Old GM pre-petition and were successful, Old GM complied with the ruling in the Lemon Law action and repurchased your vehicle. There is thus no Lemon Law liability that New GM could have assumed in this case in connection with your vehicle.
The jury verdict you obtained was not in connection with a Lemon Law action, but was in connection with a separate action under the Texas Deceptive Trade Practices Act ("TDTPA") commenced after your vehicle was repurchased.
Pursuant to the Master Sale and Purchase Agreement ("MSPA") between Old GM and New GM that was approved by the Bankruptcy Court, New GM did not assume (i) any "Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date" (MSPA, § 2.3(b)(ix)); (ii) any liabilities "to third parties for Claims based upon Contract, tort or any other basis" (MSPA, § 2.3(b)(xi)); or (iii) "implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers" (MSPA, § 2.3(b)(xvi))). This concept was expressly confirmed by the Order of the Bankruptcy Court approving the sale to New GM (the "Sale Approval Order"), which provides that New GM did not assume "responsibility for Liabilities contended to arise by virtue of . . . alleged warranties [not covered by express written warranties], including implied warranties and statements in materials such as, without limitation, individual customer communications, owners manuals, advertisements, and other promotional materials, catalogs and point of

purchase materials." Sale Approval Order, ¶ 56. These are the types of claims that are contained in the jury verdict, none of which were assumed by New GM.

While Old GM may have been found liable for certain things pursuant to the jury verdict, New GM was not found liable for anything. By seeking to assert these claims against New GM based on the jury verdict in the TDTPA action, you are essentially seeking to hold New GM liable for Old GM's conduct under a successor liability theory. That type of claim against New GM is clearly improper pursuant to the Sale Approval Order, which unambiguously states that "all persons and entities, including, but not limited to . . . litigation claimants and [others] holding liens, claims and encumbrances, and other interest of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability . . . are forever barred, stopped, and permanently enjoined . . . from asserting against [New GM], its successors or assigns, its property, or the Purchased Assets, such persons' or entities' [rights or claims], including rights or claims based on any successor or transferee liability." Sale Approval order, ¶ 8 (emphasis added); see also id., ¶ 46 ("the Purchaser shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity, environmental, labor and employment, and products or antitrust liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated." (emphasis added)).

Please call me if you would like to discuss this further or have additional questions.

Thank you

Scott Davidson

**Scott I. Davidson | King & Spalding LLP**

Tel: 212.556.2164 | Fax: 212.556.2222 | E-mail: sdavidson@kslaw.com
1185 Avenue of the Americas | New York, New York 10036

The information contained in this e-mail is personal and confidential and is intended for the recipient only. In the event that you have received this message in error, please delete it immediately and inform the sender as soon as possible.

**From:** Linda Mitchell [mailto:albojintx@yahoo.com]
**Sent:** Wednesday, June 27, 2012 10:19 AM
**To:** Davidson, Scott
**Subject:** Re: GM

Mr Davidson,

The attachments have the information you requested. I will contact the court and let them know the 17th does not work for you and that we will reschedule if need be.

Sincerely,

Linda Mitchell
817-946-6906


**From:** "Davidson, Scott" <SDavidson@KSLAW.com>
**To:** "albojintx@yahoo.com" <albojintx@yahoo.com>
**Sent:** Tuesday, June 26, 2012 4:56 PM
**Subject:** RE: GM

Ms. Mitchell:

Thank you for your e-mail. While I believe that you are confusing what Old GM did and was found liable for, with what New GM assumed as part of the Sale Approval Order and Master Sale and Purchase Agreement (which is limited), initially I do have a couple of questions based on your e-mail below. First, you say that you "did file a lemon law claim and won repurchase." Please send me the documents that demonstrate that you followed the lemon law procedures in Texas. In addition, as offered, please send me a copy of the warranty that you are referring to. Once I have these documents, I can review this matter with my client and get back to you.

If we cannot resolve this matter and you want to proceed with your motion, I ask that we discuss an adjournment of the hearing date you selected as July 17th is not a good date for me.

Thank you
Scott Davidson

**Scott I. Davidson | King & Spalding LLP**

---

Tel: 212.556.2164 | Fax: 212.556.2222 | E-mail: sdavidson@kslaw.com
1185 Avenue of the Americas | New York, New York 10036

---

The information contained in this e-mail is personal and confidential and is intended for the recipient only. In the event that you have received this message in error, please delete it immediately and inform the sender as soon as possible.

**From:** Linda Mitchell [mailto:albojintx@yahoo.com]
**Sent:** Tuesday, June 26, 2012 3:50 PM
**To:** Davidson, Scott
**Subject:** Re: GM

Mr Davidson,

Thank you for sending this information via email to me. With my hearing impairment it is always hard over the phone to get everything.

It seems we have a few misunderstandings.

- I did file a lemon law claim and won repurchase.

- The warranty that I received with the purchase of my new commercial truck that is relevant here was a 5 year 100,000 mile warranty on the 6.6L Duramax Diesel Engine. Plus I would have had an additional 6 months added because of the time my truck was at the service center. So that would take us into March of 2011. I can send you a copy of my book if you need me too.

- My truck only had a little over 27,000 miles and was in the service center on more than 7 occasions in which each time GM was unable to repair.

- My warranty also gives me the right to recover under state laws when the manufacture is unable to conform the vehicle.

- 
- State laws in Texas allow me to recover additional damages when it can be proved. And three times my damages when it can be proved that intentional actions of the defendants caused the damages. I was able to prove that with hard copy evidence.

- 
- Also in my jury verdict General Motors was found guilty of
- **Failing to comply with the express warranty.**
- GM limited warranty failed in it's essential purpose.
- Engaging in such conduct Knowingly constituting a failure to comply with the warranty.
- Unconscionable actions.
- Failure to comply with implied warranty of merchantability.
- 

I would think this should be more than sufficient to confirm that General Motors was found guilty of breaching it's express warranty.

```
With this added information that you now have if New GM
position is to not stipulate the stay then I will have no
choice but to have Judge Gerber address the issues.

Given that I have a hearing date of July 17, 2012 9:45am
with Judge Gerber I will need your response pretty quickly.

Thank you for your attention to this matter.

Sincerely,

Linda Mitchell
817-946-6906
```

**From:** "Davidson, Scott" <SDavidson@KSLAW.com>
**To:** "albojintx@yahoo.com" <albojintx@yahoo.com>
**Sent:** Thursday, June 21, 2012 2:42 PM
**Subject:** GM

Ms. Mitchell:

As we discussed this morning, New GM was a defendant in a litigation in the bankruptcy court that addressed similar issues raised by you against General Motors LLC ("New GM"), the entity that purchased substantially all of the assets of General Motors Corporation ("Old GM"). The Bankruptcy Court, in Castillo et. al. v. General Motors Company, has recently issued a Decision After Trial ("Decision"), which is attached below. While the issues addressed in the Castillo matter are not identical to the issues raised by you, certain of the Bankruptcy Court's findings and conclusions are applicable to your situation. For example, the Bankruptcy Court found that "it was the intent and structure of the 363 Sale, as agreed on by the Auto Task Force and Old GM, that New GM would start business with as few legacy liabilities as possible, and that presumptively, liabilities would be left behind and not assumed." Decision, p. 5. Later in the Decision, the Bankruptcy Court further found that "by the end of the 363 Sale hearing it was clear not only to Old GM and Treasury, but also to the Court and to the public, that the goal of the 363 Sale was to pass on to Old GM's purchaser— what thereafter became New GM—only those liabilities that were commercially necessary to the success of New GM." Id. at 8.

In connection with warranty claims, the Bankruptcy Court found in Castillo that only certain types of express warranty claims (the "glove box" warranty clam of repair) were assumed by New GM. "Section 2.3(b)(xvi) [of the MSPA], therefore, was intended to clarify the outer limits of section 2.3(a)(vii)(A) by noting that only

express warranty claims were taken on by New GM." Decision, p. 12. The Bankruptcy Court explained that this was "entirely logical. New GM recognized that providing express warranties would make good business sense (and might be important to protecting its brand), but would want clarity as to exactly what it was taking on." Id. at p. 12 n. 33. The Bankruptcy Court also read Paragraph 56 of the Sale Approval Order "as having emphasized, once again, that New GM would be assuming only express warranties that were delivered upon the sale of vehicles —and as having been intended to exclude other kinds of warranty-related claims." Id. at p. 13. Moreover, the Bankruptcy Court found that the "Assumed Liabilities" (those liabilities assumed by New GM) are "described as the express warranties that customers receive which are 'delivered in connection with the sale of new, certified used, or pre-owned vehicles . . . .' They do not, in any commonly understood way, cover litigation obligations (especially for attorneys' fees) that were undertaken because the express warranties had expired." Id. at p. 21. The Bankruptcy Court also "reiterated the general rule in the Second Circuit "that an express warranty does not cover repairs made after the applicable time or mileage periods." Id.

As reflected in the Bankruptcy Court's Decision in Castillo, the liabilities assumed by New GM are limited to those that were commercially necessary to the success of New GM. For purposes herein, these Assumed Liabilities included only claims based on the express written warranties that customers received in their glove box upon purchase of their vehicles. The express warranty was a warranty of repair only and did not provide for any type of money damages. In addition, claims outside the express mileage and time limitations contained in the express written warranty were, as found by the Bankruptcy Court in Castillo, not assumed by New GM.

Here, according to your state court complaint, your vehicle was purchased in October, 2005 so the express glove box warranty would have likely expired in October, 2007 -- over a year before Old GM's bankruptcy filing. Moreover, the allegations regarding repairs state that they were performed or requested in 2006 -- approximately 2 1/2 to 3 years prior to Old GM's bankruptcy filing and the sale to New GM. In addition, as the warranty at issue is only a warranty of repair (and does not provide for money damages), the damages awarded by the jury in your case against Old GM cannot be asserted against New GM. There was also nothing in the jury verdict that suggests there was a breach of the express glove box warranty (the state court's instruction clearly indicate that the express warranty claim was not so limited).

You also referenced during our call New GM's assumption of obligations under a State's lemon laws. Initially, I note that you did not seek relief under Texas' lemon law statutes, which provides for an administrative proceeding with express procedures. Such a proceeding could not be commenced now. In any event, while the Master Sale and Purchase Agreement between Old GM and New GM does provide that New GM also assumed "all obligations under Lemon Laws" (MSPA, § 2.3(a)(vii)(B)), the term "Lemon Laws," is defined under the MSPA as "a

state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute." MSPA, § 1.1. This definition, therefore, limits the standard to the "express written warranty," as discussed above. In other words, New GM only assumed the repair obligations in Old GM's limited warranties (as limited by the mileage and duration limitations) and not any additional liability for damages. Accordingly, New GM would not be liable under Texas' lemon law statutes.

I understand that you are contemplating filing a motion for relief from stay to attempt to enforce your jury verdict against New GM. As stated above, any claims that you may have had were against Old GM -- New GM did not assume these types of liabilities when it purchased Old GM's assets. To the extent that you do file such motion, please be advised that New GM will object to any relief requested by you, and reserves all of its rights in this regard.

Please let me know if you intend to proceed with your motion and, if you do so, please send me a copy at this e-mail address.

Thank you
Scott Davidson
**Scott I. Davidson| King & Spalding LLP**

Tel: 212.556.2164 | Fax: 212.556.2222 | E-mail: sdavidson@kslaw.com
1185 Avenue of the Americas | New York, New York 10036

The information contained in this e-mail is personal and confidential and is intended for the recipient only. In the event that you have received this message in error, please delete it immediately and inform the sender as soon as possible.

King & Spalding Confidentiality Notice:

This message is being sent by or on behalf of a lawyer. It is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged or confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately by e-mail and delete all copies of the message.

IRS Circular 230 Notice:
To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.