HEARING DATE:  October 15, 2012 at 9:45 a.m. (Eastern Time)
OBJECTION DATE AND TIME:  October 8, 2012 at 5:00 p.m. (Eastern Time)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Counsel to General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------------x
| | |
|---|---|
| **In re:** : | **Chapter 11** |
| : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.*, : | **Case No.: 09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al*. : | |
| : | **(Jointly Administered)** |
| **Debtors.** : | |

----------------------------------------------------------------x

**OBJECTION BY GENERAL MOTORS LLC TO *PRO SE* MOTION FOR
RELIEF FROM AUTOMATIC STAY OF DEBTORS GENERAL MOTORS
CORPORATION,** *et al.* **AND DEFENDANT NEW GENERAL MOTORS, LLC.
MOTION FOR RELIEF OF AUTOMATIC STAY OF CO-DEFENDANTS
AUTO NATION OF FORT WORTH MOTORS LTD, DBA BANKSTON
<u>CHEVROLET FORT WORTH, AND MOTION TO SEVER CO-DEFENDANTS</u>**

19582735v5

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

BACKGROUND ..................................................................................................................... 4

    A.    The Sale of Assets to New GM ................................................................................. 4

    B.    Movant's Lemon Law Claim and State Court Action ............................................. 7

OBJECTION ............................................................................................................................ 8

    A.    Movant Has No Texas Lemon Law Claim Against New GM ................................. 8

    B.    Movant Has No Express Warranty Claims Against New GM .............................. 11

    C.    The Documents Referenced in the Motion are Irrelevant ..................................... 15

# TABLE OF AUTHORITIES

Page(s)

**FEDERAL CASES**

*Castillo et al. v. General Motors Co.*,
   Adv. Proc. No. 09-00509, Decision After Trial (Bankr. S.D.N.Y. April 17, 2012)....11, 12, 16

*Irwin v. Country Coach Inc.*,
   No. 04:05CV145m 2006 WL 278267 (E.D. Tex. Feb. 3, 2006) ..............................................10


**STATE CASES**

*Dutchmen Manufacturing, Inc. v. Texas Department of Transportation, Motor Vehicle Division*,
   No. 03-11-00116-CV, 2012 WL 3600895 (Tex. App. Aug. 17, 2012) ....................................10

*Greenlee Enterprises, Inc. v. Compass Bank, N.A.*,
   No. 05-1--00490 CV, 2011 WL 6209192 (Tex. App. Dec. 5, 2011).......................................10

*State of Texas v. Elite Med, L.L.C.*,
   No. 04-11-00109-CV, 2011 WL 3610414 (Tex. App. Aug. 17, 2011) ....................................10


**FEDERAL STATUTES**

11 U.S.C. § 363..........................................................................................................................4


**STATE STATUTES**

Texas Deceptive Trade Practices-Consumer Protection Act, Texas Business and
   Commercial Code §§ 17.41-.63 ...............................................................................2, 7, 8, 10

Texas Lemon Law, Tex. Occ. Code. Ann. §§ 2301.601-.613 .............................1, 2, 4, 8, 9, 10, 11

General Motors LLC (f/k/a General Motors Company) ("**New GM**"), by and through its undersigned counsel, hereby submits this objection ("**Objection**")[1] to the *pro se Motion For Relief From Automatic Stay Of Debtors General Motors Corporation, et al. And Defendant New General Motors, LLC. Motion For Relief Of Automatic Stay Of Co-Defendants Auto Nation Of Fort Worth Motors Ltd, DBA Bankston Chevrolet Fort Worth, And Motion To Sever Co-Defendants*, dated September 4, 2012 ("**Motion**"), filed by Linda Mitchell ("**Movant**"). In support of this Objection, New GM respectfully represents as follows:

## INTRODUCTION

1.  While styled as a motion for relief from the automatic stay, what Movant is seeking with respect to New GM is relief from the injunctive provisions contained in this Court's Order, dated July 5, 2009 ("**Sale Order**"), which approved the sale of substantially all of the Debtors' assets to New GM, free and clear of all liens, claims and other encumbrances, except for those expressly assumed by New GM. As explained herein, there is no basis upon which Movant has any claims against New GM (as opposed to Old GM and the dealer defendant), and, as to New GM, the Motion should be denied in its entirety.

2.  The Motion seeks to hold New GM liable for damages incurred by Movant in connection with a 2005 Chevrolet Kodiac ("**Vehicle**") purchased from General Motors Corp. (n/k/a Motors Liquidation Company) ("**Old GM**") on October 14, 2005, which was found to be a "lemon" under Texas' lemon laws ("**Texas Lemon Law**") by an Administrative Law Judge in a decision issued in January, 2007 ("**ALJ Decision**").[2] What Movant does not disclose in her Motion, however, is that pursuant to the ALJ Decision, Old GM *repurchased* Movant's vehicle for approximately $47,500 in February, 2007 -- ***over two years prior to*** the bankruptcy of Old

---

[1] This Objection is filed on behalf of New GM, and not Old GM or the Dealer (each as defined below).
[2] A copy of the ALJ Decision is annexed hereto as Exhibit "A."

GM and the sale ("**363 Sale**") of substantially all of Old GM's assets to New GM. Old GM, thus, fully complied with its Texas Lemon Law obligations in 2007. Accordingly, there was no unsatisfied Texas Lemon Law obligation that New GM could have assumed as part of the 363 Sale in July, 2009.

3.   While Movant did commence a subsequent action ("**State Court Action**") against, *inter alia*, Old GM in Texas State Court in May, 2007 -- after the repurchase of her Vehicle by Old GM -- that action was ***not*** commenced pursuant to the Texas Lemon Law, but was based on another state statute; specifically, various sections of the Texas Deceptive Trade Practices-Consumer Protection Act, which is not part of and is completely independent of the Texas Lemon Law. As is clear from the Sale Order and the MSPA (defined below),[3] New GM did not assume any liabilities based on statutory law (other than Lemon Laws, to the extent applicable) or common law. As Movant's claims are premised solely on statutes outside of the Texas Lemon Law, such claims could not have been assumed by Old GM and assigned to New GM as part of the 363 Sale.

4.   New GM only assumed obligations of Old GM in connection with certain "express written warranties of [the Debtors] that are specifically identified as warranties and delivered in connection with the sale of" specified vehicles. Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009 ("**MSPA**") § 2.3(a)(vii)). This is commonly referred to as the "Glove Box Warranty" offered by Old GM to its customers upon sale. The Glove Box Warranty is a typical "repair and replacement" warranty. If a vehicle manifests a defect in materials or workmanship that is covered, and its owner presents the vehicle to a New GM dealer within the warranty period (whether or nor the sale of the vehicle was pre- or post-petition), then the owner would receive repairs or replacement parts.

---

[3]  Copies of the Sale Order and MSPA are collectively annexed hereto as Exhibit "B."

5.  As Old GM repurchased Movant's Vehicle in 2007, Movant no longer had any rights under the Glove Box Warranty because she was no longer the owner of the Vehicle. New GM could not assume any liabilities to Movant associated with the Vehicle's Glove Box Warranty since her rights under the Glove Box Warranty ceased over two years prior to the 363 Sale when she sold the Vehicle back to Old GM. Movant's claims are, thus, barred by the Sale Order.

6.  Even if the Glove Box Warranty on Movant's Vehicle were still outstanding, notwithstanding that the Vehicle was repurchased over two years prior to the 363 Sale (which simply cannot be the case), the Glove Box Warranty is expressly limited to repair of specific defects in material and workmanship if the vehicle is presented to an authorized dealer within the express time and distance limitations of the warranty. The Glove Box Warranty specifically provides that performance of repairs and needed adjustments is the Movant's exclusive remedy.[4] Multiple provisions of the MSPA and Sale Order confirm that New GM simply did not assume other and additional liability claims relating to alleged warranties, including liability for economic loss, out-of-pocket expenses or other damages. These are the types of claims and the basis for the damages awarded to Movant by a jury in the State Court Action. Thus, under the Sale Order and MSPA, New GM did not assume any civil liability for the damages Movant sought in the State Court Action as a result of Old GM's alleged breach of warranty.

7.  For the avoidance of the doubt, the MSPA expressly defines as a "Retained Liability" (*i.e.*, a liability not assumed by New GM), all liabilities (i) based on implied warranties or other implied obligation arising under statutory or common law (*see* MSPA, § 2.3(b)(xvi)); and (ii) "to third parties for Claims based upon Contract, tort or any other basis" (MSPA, §

---

[4] As noted, New GM did also agree to assume the additional remedy that was provided by the applicable Lemon Law.

3

2.3(b)(xi)). The MSPA and Sale Order also expressly exclude alleged express warranty claims based upon writings and statements other than the Glove Box Warranty. *See* MSPA, § 2.3(b)(xvi); Sale Order, ¶ 56. Movant's allegations fall squarely within these exclusions.

8. Accordingly, as New GM has not assumed the liabilities asserted by Movant, and no Texas Lemon Law claim exists as against New GM, the Motion, as it pertains to New GM, should be denied in its entirety.

## BACKGROUND

**A.    The Sale of Assets to New GM**

9. On June 26, 2009, Old GM and certain of its affiliates (collectively, the "**Debtors**") entered into the MSPA with New GM. On July 5, 2009, the Court entered the Sale Order, and on July 10, 2009, the Debtors consummated the 363 Sale. Pursuant to the 363 Sale, New GM acquired substantially all of the assets of the Debtors pursuant to Section 363 of the Bankruptcy Code and assumed certain, specifically-defined liabilities. The scope and limitations of New GM's responsibilities with respect to Old GM's liabilities are defined in the MSPA and the Sale Order. The Sale Order is a final, binding Order and not subject to appeal.

10. Specifically, the Sale Order provides that, with the exception of certain limited liabilities expressly assumed under the relevant agreements, the assets acquired by New GM were transferred "free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever . . . including rights or claims based on any successor or transferee liability." *Id.*, ¶ 7.

11. Moreover, the Sale Order permanently enjoined claimants from attempting to enforce liabilities against New GM *other than Assumed Liabilities*, as follows:

> [A]ll persons and entities … holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing … are forever barred, estopped, and permanently enjoined … from asserting against [New GM] … such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.

Sale Order, ¶ 8 (emphasis added); *see also* ¶ 9 ("This Order (a) shall be effective as a determination that, as of the Closing, (i) no claims other than Assumed Liabilities, will be assertable against the Purchaser, its affiliates, their present or contemplated members or shareholders, successors, or assigns, or any of their respective assets (including the Purchased Assets); (ii) the Purchased Assets shall have been transferred to the Purchaser free and clear of all claims (other than Permitted Encumbrances) . . . ").

12. In addition, paragraph 46 of the Sale Order provides as follows (emphasis added):

> Except for the Assumed Liabilities expressly set forth in the [MSPA] … *[New GM] … shall [not] have any liability for any claim that arose prior to the Closing Date, relates to the production of vehicles prior to the Closing Date, or otherwise is assertable against [Old GM] … prior to the Closing Date …. Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability,* de facto merger or continuity … and products … liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

5

*See also* Sale Order, ¶ 47 ("Effective upon the Closing … all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action … against [New GM] … with respect to any (i) claim against [Old GM] other than Assumed Liabilities).

13. "Assumed Liabilities" was defined in Section 2.3(a) of the MSPA. Specifically, Section 2.3(a)(vii) provides that Assumed Liabilities includes:

> (A) all Liabilities arising under express written warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (B) all obligations under Lemon Laws;

MSPA, § 2.3(a)(vii).

14. Moreover, Section 6.15(b) of the MSPA provides as follows:

> From and after the Closing, Purchaser shall be responsible for the administration, management and payment of all Liabilities arising under (i) express written warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of new, certified used or pre-owned vehicles or new or remanufactured motor vehicle parts and equipment (including service parts, accessories, engines and transmissions) manufactured or sold by Sellers or Purchaser prior to or after the Closing and (ii) Lemon Laws. In connection with the foregoing clause (ii), (A) Purchaser shall continue to address Lemon Law Claims using the same procedural mechanisms previously utilized by the applicable Sellers and (B) for avoidance of doubt, Purchaser shall not assume Liabilities arising under the law of implied warranty or other analogous provisions of state Law, other than Lemon Laws, that provide consumer remedies in addition to or different from those specified in Sellers' express warranties.

15. New GM agreed to assume certain well-defined liabilities. However, it did not assume any liability "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers." MSPA, at

6

§ 2.3(b)(xvi). Further, New GM did not assume any "Liabilities to third parties for Claims based upon Contract, tort or any other basis." MSPA, § 2.3(b)(xi).

16. As confirmed by the Sale Order, New GM's warranty responsibilities were strictly limited to express conditions of the express written warranty:

> The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty." The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials.

Sale Order, ¶ 56.

B. **Movant's Lemon Law Claim and State Court Action**

17. Movant purchased the Vehicle on October 14, 2005. Subsequent to the purchase of the Vehicle, Movant commenced a "Lemon Law" proceeding with the Texas Department of Transportation, Motor Vehicle Division, against Old GM. Pursuant to the ALJ Decision, Old GM was ordered to repurchase the Vehicle for $47,429.67. In or about February, 2007 -- *over two years prior to the 363 Sale* -- Old GM repurchased the Vehicle for the amount stated in the ALJ Decision.

18. On or about May 7, 2007 -- again, *over two years prior to the 363 Sale* -- and after her Vehicle was repurchased by Old GM, Movant commenced the State Court Action in Texas State Court against Old GM and Autonation Fort Worth Motors, Ltd. d/b/a Bankston Chevrolet Fort Worth (the "**Dealer**") based solely on the Texas Deceptive Trade Practices-Consumer Protection Act. In her State Court Action, Movant sought damages against Old GM

7

and the Dealer based solely on alleged violations of the Texas Deceptive Trade Practices-Consumer Protection Act.

19. A jury trial was conducted in connection with the State Court Action on May 5, 2009, and the jury returned a verdict in Movant's favor on May 7, 2009. *See* Exhibit "B" to the Motion. However, before Movant could seek to enter judgment against Old GM and the Dealer, Old GM commenced its bankruptcy case in this Court. By Order entered by the Texas State Court on September 15, 2009, the State Court Action was stayed as against Old GM and the Dealer by reason of Old GM's bankruptcy.

## OBJECTION

20. As noted, New GM acquired substantially all of the assets of Old GM on July 10, 2009 in a transaction approved by this Court. The scope and limitations of New GM's responsibilities are defined in the Sale Order and MSPA. As set forth below, New GM did not assume the liabilities awarded to Movant in the State Court Action.

### A.  **Movant Has No Texas Lemon Law Claim Against New GM**

21. While the MSPA does provide that New GM assumed "all obligations under Lemon Laws" (MSPA, § 2.3(a)(vii)(B)), the term "Lemon Laws," is defined under the MSPA as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined in the applicable statute." MSPA, § 1.1.

22. While state Lemon Laws create certain additional remedies and procedures, the Sale Order clarified that "[New GM] has assumed [Old GM's] obligations under state 'lemon law' statutes, which require a manufacturer to provide a consumer remedy when the manufacturer is unable to conform the vehicle to the warranty, as defined in the applicable

8

statute, after a reasonable number of attempts as further defined in the statute, and other related regulatory obligations under such statutes." Sale Order, ¶ 56.

23. The contractual arrangement under the MSPA is best understood with reference to the specific statute at issue. The Texas Lemon Law affords consumers rights to seek replacement or refunds for a vehicle through certain procedures within an identified time frame. Movant pursued relief under the Texas Lemon Law against Old GM, and was successful in January, 2007. Old GM satisfied the relief granted to Movant in February, 2007 by repurchasing the Vehicle for the amount stated in the ALJ Decision. Since any remedy obtained by Movant in that proceeding was obtained in 2007, there was no Texas Lemon Law obligation that New GM could have assumed. Stated differently, the consumer remedy set forth in the Texas Lemon Law was provided by Old GM two years prior to the 363 Sale; there is nothing left for New GM to do in this regard.

24. Section 6.15 of the MSPA supports this view. It provides that New GM "shall continue to address Lemon Law Claims using the same procedural mechanisms previously utilized by the applicable Sellers . . . ." As the procedural mechanism utilized by Movant concluded two years prior to the 363 Sale, there was nothing for New GM to address after the closing of the 363 Sale.

25. Moreover, Section 6.15 of the MSPA provides that "for avoidance of doubt, [New GM] shall not assume Liabilities arising under the law of implied warranty or other analogous provisions of state Law, other than Lemon Laws, that provide consumer remedies in addition to or different from those specified in Sellers' express warranties." The State Court Action commenced prepetition by the Movant did not assert any Texas Lemon Law claims and were not based on the Texas Lemon Law statute. The statutes that make up the Texas Lemon Law are

9

found in Texas Occupation Code §§ 2301.601 - .613. *See Irwin v. Country Coach Inc.*, No. 04:05CV145m 2006 WL 278267, at *3 (E.D. Tex. Feb. 3, 2006)("Defendants first move to dismiss Plaintiffs' claim for violation of the Texas Lemon Law, TEX. OCC. CODE § 2301.601 *et seq.*"); *Dutchmen Manufacturing, Inc. v. Texas Department of Transportation, Motor Vehicle Division*, No. 03-11-00116-CV, 2012 WL 3600895, at *1 (Tex. App. Aug. 17, 2012) ("The Division ordered Dutchmen to repurchase a travel trailer from its owner, John Kennemer, who sought relief under section 2301.601-.613 of the occupation code. *See generally* Tex. Occ. Code. Ann. §§ 2301.601-.613 (West 2012) (commonly called the 'lemon law').").

26.   In contrast, Movant's State Court Action is premised solely on the Texas Deceptive Trade Practices-Consumer Protection Act, which is found in Texas Business and Commercial Code §§ 17.41-.63. *See Greenlee Enterprises, Inc. v. Compass Bank, N.A.*, No. 05-1--00490 CV, 2011 WL 6209192, at *2 (Tex. App. Dec. 5, 2011) (citing to the Texas Deceptive Trade Practices-Consumer Protection Act); *State of Texas v. Elite Med, L.L.C.*, No. 04-11-00109-CV, 2011 WL 3610414, at *1 (Tex. App. Aug. 17, 2011)(citing to the Texas Deceptive Trade Practices-Consumer Protection Act). The Texas Deceptive Trade Practices-Consumer Protection Act is simply not part of and is completely independent of the Texas Lemon Law.

27.   New GM's argument on this point is succinctly summarized as follows: Movant commenced a Texas Lemon Law action against Old GM, was successful and obtained her remedy pursuant to that action in February, 2007 -- that lawsuit concluded at that time. Movant, thereafter, commenced a new and completely separate lawsuit against, *inter alia*, Old GM, under an entirely different Texas statute (*i.e.*, the Texas Deceptive Trade Practices-Consumer Protection Act). As provided in the MSPA, New GM did not assume liabilities "based upon Contract, tort or any other basis" (MSPA, § 2.3(b)(xi)); or (ii) any "Liabilities arising out of,

10

related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers" (MSPA, § 2.3(b)(xvi)). Movant's claims contained in her State Court Action clearly fail within these enumerated sections of the MSPA, are not Texas Lemon Law claims and, thus, are not Assumed Liabilities, but are Retained Liabilities that remained with Old GM after the 363 Sale.

**B.      Movant Has No Express Warranty Claims Against New GM**

28.     New GM also did not assume liability for the claims asserted by Movant under express warranty theories. Put simply, there could be no express warranty claim based on the Glove Box Warranty for Movant's Vehicle because Movant ceased owning the Vehicle in February, 2007. And, there was nothing for New GM to repair. This should end the inquiry.

29.     However, even if Old GM's repurchase of the Vehicle two years before the 363 Sale does not end the inquiry (which it should), Movant still is not entitled to seek relief from New GM. While New GM assumed some obligations of Old GM in connection with certain "express written warranties of [Old GM] that are *specifically identified as warranties and delivered in connection with the sale* of" specified vehicles (MSPA, § 2.3(a)(vii)), the effect was that *New GM only assumed the obligation to fund and otherwise support the standard limited warranty of repair issued by Old GM.* (emphasis added). *See* Sale Order, ¶ 56 (New GM assumed express warranties "subject to conditions and limitations contained" therein). This Court previously found as such in *Castillo et al. v. General Motors Co.*, Adv. Proc. No. 09-00509, Decision After Trial, dated April 17, 2012 ("***Castillo* Decision**"), where it stated that

> [t]he Assumed Liabilities are described as the express warranties that customers receive which are "delivered in connection with the sale of new, certified used, or pre-owned vehicles . . . ." They do not, in any commonly understood way, cover litigation obligations

11

>(especially for attorneys' fees) that were undertaken because the express warranties had expired.

*Castillo* Decision, at p. 21. This is important because, as the Court found in the *Castillo* Decision, "it was the intent and structure of the 363 Sale, as agreed on by the Auto Task Force and Old GM, that New GM would start business with as few legacy liabilities as possible, and that presumptively, liabilities would be left behind and not assumed." *Id.* at pp. 5-6; *see also id.* at p. 7 ("The goal of the 363 Sale noted above-- with New GM assuming as few liabilities as necessary--was expressly stated in open court on the first day of GM's chapter 11 case, on June 1, 2009.").

30. The Court also noted in the *Castillo* Decision that if "the restructuring were to succeed, and New GM were to be viable, New GM would need to take on only those liabilities that were important to its ability to continue the business." *Castillo* Decision, pp. 4-5. While New GM agreed to assume obligations under Glove Box Warranties that continued in existence after the closing of the 363 Sale because such obligations were important to New GM and customer satisfaction, the liabilities asserted by Movant in the State Court Action were in no way important to the continued business since Movant ceased owning the Vehicle over two years prior to the 363 Sale.

31. Even if the Glove Box Warranty was somehow applicable in this case (which it is not), the exclusions contained therein forecloses the relief the Movant now seeks against New GM. Specifically, the Glove Box Warranty (annexed as an exhibit to the Motion) contains the following limitations on Old GM's liability:

> • "GM shall not be liable for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty." (Glove Box Warranty, at 8.)

12

- "Economic loss or extra expense is not covered. Examples include:

    - Loss of vehicle use

    - Inconvenience

    - Storage

    - Payment for loss of time or pay

    - Vehicle rental expense

    - Lodging, meals, or other travel costs

    - State or local taxes required on warranty repairs" *(ld.)*

- "Performance of repairs and needed adjustments is the exclusive remedy under this written warranty." *(ld.)*

32. Moreover, except for the repair and replacement obligations expressly contained in the Glove Box Warranty, New GM did not assume other liability claims relating to alleged "warranties." Indeed, to say New GM assumed "warranty liabilities" is misleading and wrong in more contexts than it is correct. Under the Sale Order, New GM assumed liability only for "repairs and needed adjustments" and not for any other damages, including economic loss, expenses, or personal injuries; these types of damages are exactly what Movant sought and was awarded in the State Court Action against Old GM.

33. To be sure, New GM understands that the distinction between the express limited warranty delivered at the time of sale and other concepts that commonly involve use of the word "warranty" (such as "statutory warranties," "implied warranties," and "express warranties" contended to arise by reason of writing or statements other than Old GM's express limited warranty) may be difficult for a *pro se* litigant to understand. However, the Sale Order expressly made this point clear when it provided that New GM "is assuming the obligations of [Old GM] pursuant to and *subject to conditions and limitations contained in* their express written

13

warranties . . . ." Sale Order, ¶ 56 (emphasis added).  Moreover, to avoid confusion, the Sale Order states that New GM "is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs and point of purchase materials." *Id.*  Similarly, the MSPA expressly excluded any liabilities "arising out of, related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]."  MSPA, §2.3(b)(xvi).

34.  In sum, because the Sale Order and the MSPA expressly provide that New GM has not assumed any liability for any alleged breach of Old GM's express warranty *except for* the repair and service of Old GM vehicles, New GM did not assume the liabilities alleged in Movant's State Court Action or found owing by the jury in the State Court Action.  Such categories of damages included (i) loss of income; (ii) out of pocket expenses; (iii) mental anguish; and (iv) loan balance on vehicle.  None of these categories of damages are available under the express terms of the Glove Box Warranty.

35.  Accordingly, all of Movant's claims asserted in the State Court Action, and all damages set forth by the jury, cannot be asserted against New GM.  The Sale Order unambiguously states that "all persons and entities, including, but not limited to . . . *litigation claimants* and [others] holding liens, claims and encumbrances, and other interest of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability . . . are forever ***barred, stopped and permanently enjoined*** . . . from asserting against [New GM], its successors or assigns, its property, or the Purchased Assets, such persons' or entities' [rights or

14

claims], including rights or claims based on any successor or transferee liability." Sale Order, ¶ 8 (emphasis added).

36. Based on all of the foregoing, the liabilities asserted by Movant are not "Assumed Liabilities" as defined in the MSPA and were not transferred to New GM as part of the sale of Old GM's assets.

C. **The Documents Referenced in the Motion are Irrelevant**

37. In her Motion, Movant cites to various documents as support for her argument that New GM somehow assumed the liabilities awarded in the State Court Action. However, these documents do not, in any way, support Movant's position. Specifically, with respect to Amendment Number Four to the Loan and Security Agreement, dated December 31, 2008, this is a pre-petition document that is not binding on New GM. Similarly, the "Bankruptcy Analysis" (annexed to the Motion as Exhibit "H") was Exhibit "L" to Old GM's Restructuring Plan, dated February 17, 2009; again, a pre-petition document not binding on New GM.

38. The same is true for the "first day" motion that sought authority to continue to honor pre-petition customer and warranty obligations ("**Customer Warranty Motion**") -- this motion was filed by Old GM; not New GM. In any event, the Order ("**Customer Warranty Order**") approving the Customer Warranty Motion (Exhibit "L" to the Motion) specifically authorized Old GM "*in its business judgment*" to continue a wide variety of customer programs. The Debtors were, thus, authorized, but not directed, to continue honoring warranty programs, to the extent they existed. Acting voluntarily, Old GM (and New GM) were free to provide reimbursements to some customers, and not others, in accordance with their business judgment. This did not mean, however, that Old GM (or New GM) was accepting all claims that could be

15

asserted under their warranty program. Paragraph 66 of the Customer Warranty Motion makes this clear; it provides:

> Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' right to dispute any claim, or an approval of the assumption of any agreement, contract or lease under section 365 of the Bankruptcy Code.

The Customer Warranty Order further provides that "nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any claim by a customer with respect to any Customer Program . . . ." Here, there can be no claim under any warranty program as Movant's Glove Box Warranty ceased to exist in February, 2007. There simply is nothing for New GM to honor.

39. The references to the notes to the Consolidated Financial Statements ("**Notes**") are also not relevant to the matters addressed in the Motion. What is and what is not an Assumed Liability is set forth in the Sale Order and MSPA. The Notes highlighted by Movant concern both Old GM and New GM, not only New GM. These Notes, in no way, demonstrate that New GM agreed to assume the liabilities awarded to Movant in the State Court Action.

40. As noted by the Court in *Castillo*, it was the "intent and structure of the 363 Sale . . . that New GM would start business with as few legacy liabilities as possible" (*Castillo*, at pp. 5-6), taking on "only those liabilities that were commercially necessary to the success of New GM" (*id.* at p. 8). As there was no business reason for New GM to assume the type of litigation-related liabilities awarded in the State Court Action, such liabilities remained with Old GM. They cannot now be asserted against New GM.

16

WHEREFORE, New GM respectfully requests that the Court (i) deny the relief requested in the Motion as it pertains to New GM, and (ii) grant to New GM such other and further relief as is just and proper.

Dated: New York, New York
October 8, 2012

                    KING & SPALDING LLP

                    By:  /s/ Scott Davidson
                         Arthur Steinberg
                         Scott Davidson
                  1185 Avenue of the Americas
                  New York, NY  10036
                  (212) 556-2100

                  *Counsel to General Motors LLC*