# DICKSTEINSHAPIRO LLP

1633 Broadway | New York, NY 10019-6708
TEL (212) 277-6500 | FAX (212) 277-6501 | dicksteinshapiro.com

*fishere@dicksteinshapiro.com*

October 26, 2012

**By Electronic Mail and By Hand**

Honorable Robert E. Gerber
United States Bankruptcy Judge
United States Bankruptcy Court
Southern District of New York
One Bowling Green
New York, NY 10004-1408

> **Re:** *In re Motors Liquidation Company,* **Case No. 09-50026 (REG):** *Official Committee of Unsecured Creditors' First Amended Objection to Claims Filed by Green Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and Motion for Other Relief* **(Docket No. 7859)**
>
> *Motors Liquidation Company GUC Trust v. Appaloosa Investment Ltd. Partnership I, et al.,* **Adv. Pro. No. 12-09802**

Dear Judge Gerber:

On behalf of the GUC Trust, we write respectfully in reply to the letters of New GM, the Paulson Noteholders and the Greenberg Traurig Noteholders. The issue raised in those letters is whether the Court should permit testimony from a witness who was not identified on the witness list of any party about documents that were not produced in discovery. For the reasons set forth in our October 16, 2012 letter and below, such testimony should be excluded.[1]

First, the proposed testimony is not rebuttal evidence. As part of its direct case, through the trial testimony of Lawrence Buonomo and Dan Ammann, New GM attempted to prove that the $450 million loan was repaid to Old GM.[2] This effort was unsuccessful because Mr.

---

[1]    While New GM and the others make it seem as though the GUC Trust bears the burden of showing why this testimony should be excluded, as a matter of law, it is New GM's burden to show cause as to why the new witness (Tyrone Lopez) should be permitted to testify and why he was not previously identified on any witness list. *See* Case Management Order No. 2 dated Feb. 24, 2011 [ECF No. 9427] at ¶ 5; *see also* Fed. R. Civ. P. 37(c) (party that "fails to provide information" must show that "failure was substantially justified or is harmless").

[2]    New GM argues that the section 502(d) aspect of the GUC Trust's claims objection would be weakened if it could be shown that the $450 million transfer was "repaid" by GM Canada to Old GM. We disagree. In substance, the Noteholders that received the Consent Fee are the transferees of Old

---

**DICKSTEIN**SHAPIRO LLP

Honorable Robert E. Gerber
October 26, 2012
Page 2

Buonomo and Mr. Ammann both lacked personal knowledge of the facts concerning the purported repayment, and Mr. Ammann attempted to testify based upon documents that New GM had never provided to the GUC Trust. The Court properly sustained the GUC Trust's objection to Mr. Ammann's testimony about the purported repayment. *See* Trial Tr. at 2068:8-9 ("Now, that's the price you've got to pay for not giving your opponent documents.") New GM is now attempting to remedy its failure to prove the repayment by identifying a new witness and producing documents that should have been produced more than one year ago.[3] To allow New GM to bolster its direct case in this way would undermine the principles of fair play that are the foundation of this Court's pretrial rules and procedures. *See* Case Management Order No. 2 dated Feb. 24, 2011 [ECF No. 9427] at ¶ 5 (testimony of witnesses not identified on witness list ***"will not be permitted absent a showing of cause and a showing as to why [witness] could not have been previously listed"***) (emphasis added). Certainly, if the GUC Trust were to now identify a new witness and produce additional documents to buttress points we advanced in our direct case, we would expect the Court to preclude such a request as beyond the pale. New GM's disregard of the discovery and pretrial rules should meet the same fate.

Second, preclusion of this new evidence is an appropriate sanction under Fed. R. Civ. P. 37(c). In addition, New GM should more broadly be precluded from supporting its contention that the $450 million transfer was repaid and reference to the alleged repayment should be struck from New GM's pleadings in this case. *See generally* Fed. R. Civ. P. 37(c)(1)(C) and (b)(2)(A)(ii) and (iii). Setting aside New GM's effort to cloud the issue with quibbles about search terms and custodians, New GM was required by subpoena to produce all documents that it planned to rely upon in support of any argument or defense in this case. It failed to do so, and its failure is not "substantially justified or [] harmless." *See* Fed. R. Civ. P. 37(c)(1). New GM's

---

GM's property, and each Noteholder claim must be disallowed "unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under" section 550. 11 U.S.C. § 502(d). Here, there is no evidence that any Noteholder has ever repaid its share of the Consent Fee to Old GM, and thus, this is just one of many reasons, why their claims should be disallowed. Regardless, all parties are free to make their respective arguments on the legal merits of their positions at the conclusion of trial; and the legal merits of the repayment issue are not relevant to this Court's resolution of the evidentiary and case management issue posed by New GM's request to call a previously-unidentified witness.

[3]      A preliminary review of the partial, supplemental production made by New GM to this point demonstrates additional and substantial post-petition agreements entered into by Old GM that were not presented to this Court for approval. These agreements are part of the complex "netting transaction" that New GM now contends reflects that the loan was supposedly repaid.

**DICKSTEIN**SHAPIRO<sub>LLP</sub>

Honorable Robert E. Gerber
October 26, 2012
Page 3

effort to remedy that failure by producing documents mid-trial is as good an example as any of the "sandbagging" that Rule 37(c) is designed to prevent.[4]

Third, preclusion of this new evidence is fair to all parties. The Greenberg Traurig Noteholders, the Paulson Noteholders, and any other participant in this case are all free to call any witness identified on their witness lists. No party identified Tyrone Lopez of New GM as a trial witness. On that basis alone, the Greenberg Traurig Noteholders and the Paulson Noteholders are precluded from calling him now. Preclusion of this testimony will not penalize them for New GM's discovery abuses. The pretrial rules well known to all parties require preclusion of this evidence. No party would be genuinely surprised and no party would be prejudiced if this Court were to enforce those rules and preclude testimony from a witness who had never before been identified on any witness list. To the contrary, surprise and prejudice would result only if the Court were to now exempt the parties from the consequences of failing to abide by the rules.[5]

Fourth, there is nothing confusing about the GUC Trust's position regarding the issue of the purported repayment of the loan. Going into the trial, the only evidence concerning repayment of the loan was whatever meager evidence New GM had decided to share with the GUC Trust, notwithstanding its obligations under the subpoena to provide all responsive information. We had a healthy dose of skepticism about the truth of the assertions being made by New GM, borne of our experience in prior dealings with New GM, but the GUC Trust did not have concrete evidence to directly contradict those assertions. All relevant evidence was in New GM's possession. In that regard, the GUC Trust was hemmed in with respect to its ability to dispute New GM's assertions. At trial, using what little and partial evidence New GM had

---

[4]    In addition to the supplemental New GM production of which this Court is aware, just two days ago, New GM continued to dribble out to the GUC Trust additional documents that were inexplicably not previously produced in response to the subpoena. Many of the documents are from custodians whose files were supposedly searched in connection with New GM's response to the subpoena more than one year ago, including Mr. Lopez and Ms. Ogle. Further, it has now become clear that, in a number of instances, New GM relied on employees to search their own files, rather than conduct a forensically-sound collection effort. If necessary to resolve this matter, the GUC Trust seeks leave to file a formal motion for relief against New GM under Fed. R. Civ. P. 37(c) and other applicable authority and also reserves the right to seek relief that includes but is not limited to the payment of expenses and reasonable attorney's fees caused by New GM's failures. *See* Fed. R. Civ. P. 37(c)(1)(A).

[5]    It is notable that the Greenberg Traurig Noteholders and the Paulson Noteholders never sought discovery from New GM. This is another reason why they cannot now complain about the preclusion of belated information produced by New GM.

**DICKSTEIN**SHAPIRO<sub>LLP</sub>

Honorable Robert E. Gerber
October 26, 2012
Page 4

provided to the GUC Trust, we cross-examined New GM's witnesses with the goal of showing that they were not competent to prove the purported repayment of the loan. That is all. There was nothing inconsistent, surprising or confusing about the manner in which the GUC Trust conducted itself before or during the trial.[6]

Finally, and in the alternative only, if this Court excuses New GM's failure to comply with the applicable pretrial procedures, overlooks New GM's discovery abuses and permits the additional witness to testify, then New GM should be required to make Mr. Lopez available to be deposed and also required to once and for all provide complete information about all circumstances concerning the $450 million transfer. Notwithstanding the strong evidence of sanctionable discovery conduct that has now come to light, New GM continues to evade this responsibility, suggesting to the Court, for example, that it will voluntarily provide June and July 2009 bank statements to the GUC Trust, but refusing to produce the May 2009 bank statements. If New GM's proposed additional testimony is permitted, then, in connection therewith, New GM should be compelled to provide all relevant information about the $450 million transfer and its purported repayment.

Respectfully,

Eric B. Fisher

cc:    Arthur Steinberg, Esq.
       Kevin Finger, Esq.
       Bruce Zirinsky, Esq.
       Sean O'Donnell, Esq.
       Steven Reisman, Esq.

---

[6] The argument advanced by the Greenberg Traurig Noteholders that the GUC Trust is judicially estopped from contesting repayment of the loan is not a serious argument. Their argument is based upon a mischaracterization of deposition testimony offered in response to poorly-phrased deposition questions that were objected to at the time and that were posed to a witness with no first-hand knowledge of the information sought by the questions. Their position is also based on a misreading of attorney colloquy during the deposition. If the estoppel argument were a serious one and the GUC Trust were really estopped from contesting the repayment, then certainly the Greenberg Traurig Noteholders would not be piling onto the bandwagon in support of New GM's effort to put on belated testimony from a previously-unidentified witness. In any event, the Greenberg Traurig Noteholders are free to make their judicial estoppel argument in their closing argument and/or post-trial brief. The judicial estoppel argument has nothing to do with the evidentiary and trial management issue currently before the Court.