Page 1

1   UNITED STATES BANKRUPTCY COURT

2   SOUTHERN DISTRICT OF NEW YORK

3   Case No. 09-50026(REG)

4

5   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6   In the Matter of:

7

8   GENERAL MOTORS CORPORATION,

9

10          Debtor.

11

12   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13               U.S. Bankruptcy Court

14               One Bowling Green

15               New York, New York

16

17               October 15, 2012

18               9:47 AM

19

20

21

22

23   B E F O R E :

24   HON ROBERT E. GERBER

25   U.S. BANKRUPTCY JUDGE

1    Hearing re:  Debtors' 214th Omnibus Objection to Claim

2    (Administrative Proofs of Claim for Equity Interests)

3

4    Hearing re:  Debtors' 215th Omnibus Objection to Claim

5    (Administrative Proofs of Claim for Equity Interests)

6

7    Hearing re:  Motion by Linda Mitchell for Relief from the

8    Automatic Stay

9

10   Hearing re:  Objection to Proof of Claim 28560 filed by

11   Alicia E. Calhoun (Splinter Union Employee Claim)

12

13   Hearing re:  286th Omnibus Objection to Claim(s) Number: (No

14   Liability Claims)

15

16

17

18

19

20

21

22

23

24

25   Transcribed by:  Dawn South

Page 3

1    A P P E A R A N C E S :

2    KING & SPALDING LLP

3         Attorneys for General Motors LLC

4         1185 Avenue of the Americas

5         New York, NY 10036-4003

6

7    BY:  SCOTT DAVIDSON, ESQ.

8

9    DICKSTEIN SHAPIRO LLP

10        Attorneys for GUC Trust

11        1633 Broadway

12        New York, NY 10019-6708

13

14   BY:  STEPHANIE BIRBROWER GREER, ESQ

15

16   WEIL, GOTSHAL & MANGES LLP

17        Attorney for

18        767 Fifth Avenue

19        New York, NY 10153-0119

20

21   BY:  DAVID N. GRIFFITHS, ESQ.

22

23

24

25

Page 4

1   ALSO APPEARED TELEPHONICALLY:

2   AUSTIN VIALL

3   RECECCA VAILL

4   LINDA N. MITCHELL

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2            THE COURT:  Okay.  GM Motors Liquidation.

 3        (Pause)

 4            THE COURT:  I have a New GM presence today don't

 5   I?

 6            MR. DAVIDSON:  Yes, Your Honor, Scott Davidson

 7   from King & Spalding.

 8            THE COURT:  Okay, Mr. Davidson.

 9            And Mr. Griffiths --

10            MR. GRIFFITHS:  Good morning, Your Honor.

11            THE COURT:  And Ms. Greer?

12            MS. GREER:  Good morning, Your Honor.

13            THE COURT:  Good morning.  Okay.  Mr. Griffiths,

14   you came up first, can I get your recommendations as to how

15   to proceed today?

16            MR. GRIFFITHS:  Thank you, Your Honor.

17            Just to check there's no one attending an

18   CourtCall?

19            COURTCALL OPERATOR:  We do have -- Your Honor, we

20   have three participants on CourtCall.  Or actually I'm

21   sorry, we have four at this time.

22            THE COURT:  Okay.  My CourtCall log shows Linda N.

23   Mitchell as being scheduled to be on the phone.

24   Ms. Mitchell, are you on?

25            MS. MITCHELL:  Yes, Your Honor, I am.
```

1          THE COURT:  Okay.  And two others appear to be --

2     well, they say their firm is Weil, Gotshal but they say

3     they're creditors.  Austin Viall?

4          MS. VIALL:  Yes.  It's Austin and Rebecca --

5          THE COURT:  Okay.

6          MS. VIALL:  -- Viall.

7          THE COURT:  How do you pronounce that, ma'am?

8          MS. VIALL:  Viall.

9          THE COURT:  Viall, okay, thank you.

10         MS. VIALL:  Yes.

11         THE COURT:  All right.  Anybody else appearing

12    today in GM who thinks he or she might want to be heard?

13    Okay, I guess not.

14         All right.  Thank you.  Go ahead, please,

15    Mr. Griffiths.

16         MR. GRIFFITHS:  Thank you, Your Honor.  David

17    Griffiths of Weil, Gotshal & Manges for Motors Liquidation

18    Company GUC Trust.

19         Your Honor, items and 1 and 2 on the agenda this

20    morning are the 214th and 215th omnibus objection to claims.

21    They relate to the reclassification of equity interest from

22    the filled statuses administrative proofs of claims.

23         Your Honor, we don't believe that these matters

24    are contention.  I know that Mr. and Mrs. Viall --

25    V-I-A-L-L -- appear in the 215th omnibus objections to

Page 7

1    claims.

2            Mr. and Mrs. Viall appear to have purchased a

3    large amount of stock in General Motors Corporation both

4    prior to and after the filing of the Chapter 11.  They're

5    seeking to recovery on those equity interests both against

6    Motors Liquidation Company and against E*TRADE who is their

7    broker in buying the securities.

8            Obviously Motors Liquidation Company is not

9    seeking to expunge the equity interest, but merely to

10   reclassify them from their status as administrative proof of

11   claim to just a regular equity interest, which as Your Honor

12   well knows, receives no recovery in these Chapter 11 cases.

13           Your Honor, without further adieu I propose to

14   hear from the claimants themselves.  The GUC Trust is happy

15   to rest on their existing submissions.

16           THE COURT:  Okay.  So will I be hearing from

17   Mr. Viall or Ms. Viall?

18           MS. VIALL:  Yes, Ms. Viall.

19           THE COURT:  Okay.  Go ahead, please, Ms. Viall.

20           MS. VIALL:  Okay.  We had purchased the stock as a

21   security for our retirement and were hoping to be able to,

22   you know, have a retirement set us.

23           We were assured or were told by E*TRADE that the

24   stocks would be exchanged for General Motors stock when

25   General Motors went back online.  And consequently, now we

Page 8

```
 1    are told that it's -- it will not be and we're asking that

 2    it be.

 3                  THE COURT:  Ms. Viall, I understand the hardship

 4    on you.  Do you want to make any legal points as to whether

 5    your claim for stock should be treated as a creditor claim

 6    instead?

 7                  MS. VIALL:  I don't exactly understand what you're

 8    asking.  I'm sorry.

 9                  THE COURT:  Okay.  I wanted to give you chance to

10    be heard on any legal arguments because the general rule is,

11    as Mr. Griffiths stated in his papers, that despite the

12    hardship stockholders of a company under bankruptcy law

13    aren't allowed to get distributions, that is property out of

14    the estate, until the creditors have been paid in full.

15                  And the sad reality I'm confronting is -- and I

16    don't have the exact figures -- but I think the creditors

17    are in the 15 to 25 percent range in terms of getting paid

18    back, and unfortunately stockholders have to wait until the

19    creditors have been paid in full before stockholders can get

20    anything.

21                  MS. VIALL:  Okay.  So you're telling me that we

22    have no alternative.

23                  THE COURT:  Sadly, yes.

24                  MS. VIALL:  Yeah, we've --

25                  THE COURT:  I'll give you a full ruling in a
```

Page 9

1    minute, Ms. Viall --

2           MS. VIALL:  Okay.

3           THE COURT:  -- but I do want to give you a full

4    and fair chance to be heard with any legal points if you

5    have anything further you'd like to tell me.

6           MS. VIALL:  Okay, let me just check one second,

7    please.

8           THE COURT:  Of course.

9       (Pause)

10          MR. VIALL:  Judge?

11          THE COURT:  Yes, sir.  Is this Mr. Viall?

12          MR. VIALL:  What I can't understand,

13   (indiscernible -00:22:52) take our money, is that we

14   purchased the stock through General Motors, they changed --

15   they changed our stock to Motors Liquidation, and then they

16   bought -- when they sold us the stock they -- Motors

17   Liquidation had already gone into bankruptcy and we didn't

18   know it, and we didn't know they were in bankruptcy until a

19   year and a half or so later.

20          And I -- to me that's just about as much

21   (indiscernible - 00:23:30) as can be done.  But I don't know

22   the law, I have no idea about the law, but I know right from

23   wrong.

24          THE COURT:  I understand, sir.

25          MR. VIALL:  Sir?  Sir?

Page 10

1           THE COURT:  Yes, sir?

2           MR. VIALL:  I heard you say something.  I'm kind

3    of hard of hearing.

4           THE COURT:  Okay.  I'll speak real loud when I

5    issue my ruling.

6           MR. VIALL:  Thank you.

7           THE COURT:  Certainly.

8           Mr. Griffiths, do you want to reply orally?

9           MR. GRIFFITHS:  Your Honor, only to say that these

10   proceedings don't affect the claimant's rights as against

11   E*TRADE, and of course we can put that in the order if Your

12   Honor so chooses.

13          THE COURT:  You were reading by mind,

14   Mr. Griffiths.

15          I am going to rule now, and for the record, just

16   in case there's a desire to appeal, I would like to

17   incorporate my earlier explanations of my rulings with

18   respect to Old GM stockholders in any record on appeal, but

19   I am forced to disallow -- excuse me -- to reclassify these

20   claims from creditor claims to equity claims.  And while

21   these are technically conclusions of law, I want to explain

22   it in more everyday talk than I might otherwise.

23          A large company like GM has both creditors who it

24   owes money to and has stockholders who are in a sense

25   partial owners of a company, and under bankruptcy law the

Page 11

```
 1    creditors of a company have to be paid first before those

 2    who are owners of the company can get paid or can get paid

 3    distributions.  Because in essence as a matter of law all

 4    that they own is really after the creditors have been taken

 5    care of.

 6           So under the Bankruptcy Code we have priorities

 7    which establish different priorities among different kinds

 8    of creditors, and then if all of those creditors have been

 9    taken care of, stockholders, who are called equity holders,

10    can recover.

11           Here, as I indicated in argument on the motion,

12    Old GM's creditors haven't been paid in full.  I don't know

13    the exact amount that they would be getting under the plan,

14    but I do know absolutely positively it's less than 100

15    percent.  And until the creditors are paid I can't treat

16    stockholders like creditors.

17           Technically speaking the claims filed by the Viall

18    family aren't being disallowed, they're not being thrown

19    out, but they're being reclassified to what we call equity,

20    which is stockholder claims mainly.

21           But I do have to tell you that based on the facts

22    as I know now -- as I now know them there's practically zero

23    chance that there's going to be enough value in this estate

24    to pay stockholders.

25           I well recognize the hardship on this to the Viall
```

                                                            Page 12

1    family and to all of the other literally thousands of GM

2    stockholders, but unfortunately, I've got to comply with the

3    law.

4            Now, I do want to say for the avoidance of doubt

5    that my reclassifying this claim as equity has nothing to do

6    whatever with any claims the Viall family might have against

7    any stockbroker who caused them to buy their GM stock.

8            And I want to take you up on your offer,

9    Mr. Griffiths, to say in plain English, that nothing in this

10   order affects any rights the Viall family might have against

11   anybody other than Old GM.  Am I correct that no claim was

12   asserted against New GM?

13           MR. GRIFFITHS:  Yes, Your Honor.

14           THE COURT:  Okay.  I want you to be very clear in

15   the order that you present to me what I'm holding on the one

16   hand and what I'm not addressing on the other.  And in

17   essence what I'm saying is what you said to me, perhaps in

18   slightly different words.

19           Okay, Mr. and Mrs. Viall?

20           MR. VIALL:  Yes, sir.

21           THE COURT:  I can't take reargument because I was

22   forced to rule, but do you understand my ruling?

23           MR. VIALL:  Well, yes, sir, I don't like it, but I

24   do understand it.  And I appreciate -- I appreciate your

25   information and I appreciate what you've done for us.

1           But now my wife talked to the Attorney General of

2    the State, and he told her that as soon as this got out of

3    Federal Court that he could get our money.  But it had to

4    get out of Federal Court first before he could do anything.

5           THE COURT:  Well, I didn't hear every word that

6    you said, Mr. Viall, because of the quality of the phone,

7    but I think I got most of it.

8           What state are you calling, from, sir?

9           MR. VIALL:  Alabama.

10          THE COURT:  Uh-huh.  Okay.  I am not ruling in any

11   way on what the Alabama Attorney General can do or can't do,

12   although I am saying that neither your family nor the

13   Alabama Attorney General can get anything out of the general

14   -- Old General Motors' estate -- what we call Old GM, except

15   the same way that any other stockholder will ultimately be

16   able to get anything out of the estate.

17          MR. VIALL:  Yes, sir.

18          THE COURT:  Okay.

19          MR. VIALL:  Well, I want to thank you, sir, very

20   much.  I appreciate it.

21          THE COURT:  I wish you well, sir, and your wife as

22   well.

23          MS. VIALL:  Thank you, sir, I appreciate that.

24   God bless.

25          THE COURT:  God bless you.  You may stay on or

1    stay off as you prefer.

2              MR. VIALL:  Thank you, sir.

3              MS. VIALL:  Thank you.

4              THE COURT:  Okay.  Mr. Griffiths, your next

5    matter, please.

6              MR. GRIFFITHS:  Thank you, Your Honor.

7              Just to confirm that you're ruling applies to

8    Mr. Timothy G. Mayer, M-A-Y-E-R, in the 214th omnibus

9    objection?

10             THE COURT:  These are people with the same facts

11   but who didn't orally argue?

12             MR. GRIFFITHS:  Correct, Your Honor.

13             THE COURT:  Yes, sir.

14             MR. GRIFFITHS:  Thank you, Your Honor.

15             Lastly before moving to the last contested matter

16   on the agenda this morning I have one uncontested matter

17   that we are handling, which is item number 1 in Section 2,

18   it is an objection to proof of claim 28560 filed by

19   Ms. Calhoun, C-A-L-H-O-U-N.

20             Ms. Calhoun was a former employee of the debtors

21   who was represented by the IUE CWA union, her claim, which

22   was for a wrongful termination and payment of wages, is

23   covered under a settlement agreement that was entered into

24   between Old GM and various what we call splinter unions on

25   September 3rd, 2009, and therefore her claim, we

Page 15

1   respectfully request permission to enter an order

2   disallowing and expunging her claim.

3            THE COURT:  I heard part of what you said, but I

4   didn't hear it all.

5            She had a settlement agreement that was entered

6   into in September 2009?

7            MR. GRIFFITHS:  Your Honor, the various --

8   settlement agreements were entered into by various unions

9   representing former employees of the debtors.  As Your Honor

10  well knows, the UAW had the -- a master settlement agreement

11  with the debtors.  Various smaller unions --

12           THE COURT:  Those that were sometimes called

13  splinter unions?

14           MR. GRIFFITHS:  Correct, Your Honor.  Represented

15  their constituents to enter into a settlement agreement

16  whereby New GM would provide retiree medical benefits to any

17  eligible participants who weren't receiving Medicaid and

18  Medicare, and then -- and as a result any proofs of claims

19  filed by those claimants could then be disallowed and

20  expunged by the Court.

21           THE COURT:  Okay.  So these claimants will get

22  whatever their union got for them as part of the deal that

23  was -- for the splinter -- that particular splinter union,

24  but you're saying that their additional claim has to be

25  disallowed for that reason and for reasons you argued in

Page 16

```
1    earlier cases on the right to modify benefits.

2             MR. GRIFFITHS:  Correct, Your Honor.

3             THE COURT:  Yes.  Is that claimant Calhoun on the

4    phone?

5             MR. GRIFFITHS:  I don't believe so, Your Honor.

6             THE COURT:  Okay.

7             MR. GRIFFITHS:  It was uncontested.

8             THE COURT:  Your motion to disallow is sustained.

9    Put in the order for reasons explained at length in the

10   earlier proceedings in this case.

11            MR. GRIFFITHS:  Yes, Your Honor.

12            And that closes the matters for Weil, Gotshal &

13   Manges.  My co-counsel, Stephanie Greer of Dickstein Shapiro

14   can handle item number 3 on the agenda.

15            THE COURT:  Okay.  Ms. Greer?

16            MR. GRIFFITHS:  Thank you, Your Honor.

17            MS. GREER:  Good morning, Your Honor, Stephanie

18   Greer from Dickstein Shapiro on behalf of the GUC Trust.

19            Your Honor, most of our contested matters -- or

20   actually all of our contested matters got adjourned for

21   today.

22            THE COURT:  I'm going to have to fine tune the

23   sounds.  The good news is the drilling stopped, but would

24   you still speak a little louder, please.

25            MS. GREER:  Sure, Your Honor, sorry about that.
```

Page 17

1              Most of our contested matters -- all of our

2     contested matters have actually been adjourned for today.

3     We're in the process of trying to resolve a fair amount of

4     the claims and also was responding to a request from new

5     counsel to adjourn one of the contested matters on for

6     today.

7              So all I've got, Your Honor, is the 286th omnibus

8     objection which is uncontested, it's a no liability

9     objection.  We had five claims on that objection.  Three of

10    those are going forward, one has been adjourned, and we've

11    withdrawn as to one of those.

12             If Your Honor doesn't have any questions we can

13    submit an order to the clerk later on.

14             THE COURT:  No, I have no questions, Ms. Greer,

15    that's fine.  So just make it happen.

16             MS. GREER:  Thank you, Your Honor.

17             Next I want to turn it over to Mr. Davidson of

18    King & Spalding on behalf of New GM for -- to handle the

19    Linda Mitchell motion for relief from stay.

20             But before I do, Your Honor, I just wanted to

21    point out that Ms. Mitchell has not filed any proof of claim

22    against the debtors, so the debtors don't have any position

23    -- or the GUC Trust does not have any position on the

24    matter.  We'll be here and listen to Ms. Mitchell argue, but

25    I wanted to note for the record that she has not filed a

Page 18

1    proof of claim against the debtors, and so the GUC Trust

2    takes no position.

3              THE COURT:  Okay.  Mr. Davidson?

4              MS. GREER:  Thank you, Your Honor.

5              MR. DAVIDSON:  Good morning, Your Honor, Scott

6    Davidson from King & Spalding for General Motors LLC.

7              This is Ms. Mitchell's motion, I didn't know if

8    you wanted to hear from her first.

9              THE COURT:  Yes, I think I should.

10             Ms. Mitchell, you have a motion for relief from

11   the stay, and I'm a little confused because a motion for

12   relief from the stay means that you want to sue Old GM and

13   yet you don't have a claim against Old GM.  So when you make

14   your remarks please help clarify that for me, please.

15             Ms. Mitchell, I'll hear your argument now?

16   Ms. Mitchell?

17             MS. MITCHELL:  (Indiscernible - 00:36:23) so

18   they're getting to make sure that they are in the microphone

19   and speak very clearly and loudly because of my hearing

20   impairment.

21             THE COURT:  I'm sorry, Ms. Mitchell, but the

22   lawyer for New GM hasn't spoken yet.  The lawyer for Old GM

23   pointed that you filed a claim against Old GM.  And when I

24   spoke I said that I needed help in understanding your motion

25   for relief from the stay because you hadn't filed a claim

Page 19

1    against Old GM.

2            So when you make your argument include responding

3    to that -- that fact, please.

4            MS. MITCHELL:  Okay, I'll do that.

5            My response to the reason that I did not file a

6    claim against Old GM is that when I attempted to I was told

7    through MLC, who was handling everything, that because mine

8    was a warranty issue that it did not belong to Old GM and

9    that I needed to take it up with New GM.  And that is what

10   I've been trying to do is take it up with them.  And so

11   that's why I have not addressed it with Old GM.

12           And even when I talked to them in the last several

13   months they, you know, don't have a position of course with

14   me because they say that the liability got turned over to

15   New GM.

16           THE COURT:  Okay.  Now, New GM talks about what's

17   in the sale order and what New GM agreed to take on and what

18   it did not agree to take on.  Do you want to give me any

19   argument on how you think I should construe that sale order?

20           MS. MITCHELL:  Yes, sir, I most certainly do.

21           The first thing that I would like to do is I would

22   like to address my motion concerning the co-debtors.  Since

23   there has been really no objection to my motion to have them

24   released and separated out of the bankruptcy, and given the

25   fact that Auto Nation did not declare bankruptcy, I would

Page 20

```
 1    like to ask the Court if they would grant motion in any

 2    favor to separate out the co-defendants from this bankruptcy

 3    so that I can proceed forward with my case with them in Fort

 4    Worth court.

 5              THE COURT:  Now, by co-defendants you meant

 6    defendants other than either Old GM or New GM?

 7              MS. MITCHELL:  That is correct.

 8              THE COURT:  Uh-huh.  Okay.  And did you name

 9    automation as -- or was that Auto Nation?

10              MS. MITCHELL:  Auto Nation.

11              THE COURT:  Okay.  Were there any others?

12              MS. MITCHELL:  Well, it was defendant's Auto

13    Nation of Fort Worth Motors Ltd. doing business as Bankston

14    Chevrolet Fort Worth.

15              THE COURT:  Uh-huh.  Okay.  Any others?

16              MS. MITCHELL:  No -- no, it's just them and then

17    at the time Old GM.

18              THE COURT:  Right, I'm with you.  Okay.  Do you

19    want to say anything about the words of the sale order and

20    compare that to your warranty claim?

21              MS. MITCHELL:  Yes, sir, I do.

22              New General Motors, you know, has taken the

23    position that they didn't assume the liabilities of my case;

24    however, when you read the sale order, you know, it makes

25    statements such as -- as in paragraph 56, "Notwithstanding
```

Page 21

1    the foregoing the purchaser has assumed the seller's

2    obligations under state lemon law statutes which require

3    manufacturer to provide a customer" -- I mean I'm sorry --

4    "a consumer remedy when the manufacturer is unable to

5    conform the vehicle to warranty as defined in the applicable

6    statute.  After a reasonable number of chance further

7    defined in the statute and other regulated" -- I'm sorry --

8    "and other related regulatory obligations under such

9    statute."

10          THE COURT:  Yeah, but where I'm confused is that

11   GM repurchased your car under the lemon law, they bought

12   your car back.  So what damages do you have left?

13          MS. MITCHELL:  It is true, we did go through the

14   lemon law issue with them, but the problem was is that I

15   didn't get restored whole, because the truck was actually in

16   the service center for 190 days in 2006, and every time I

17   went and picked it up it -- I only got to drive it maybe a

18   day or two before it had to be towed back in again.

19          And at the lemon law hearing when you read the

20   ALJ's decision he talks about in there that I had presented

21   receipts for actual losses and damages of over $100,000, not

22   to mention that when -- as he gave the order it did not pay

23   off the truck.

24          In Texas when you can prove that under the

25   warranty that the manufacturer and the dealer dealt with you

Page 22

1    in a misleading way, in a deceptive way, then you can bring

2    the Texas Deceptive Trade Practices Act.  And everything

3    that I presented at the lemon law hearing I presented as the

4    Deceptive Trade Practices Act.  And in that hearing, through

5    direct testimony from General Motors representatives and the

6    dealer representatives and hard copy evidence of all my work

7    orders, it was proven that both defendants intentionally

8    caused me harm.

9            The dealer caused me harm by withholding

10   information from me about three work orders that had

11   actually been done on the truck prior to me even buying it.

12           The manufacturer exasperated the problems that I

13   was having with the truck and went against their own

14   warranty program and their own standards by which they

15   address their warranty program and that when six months

16   after -- seven months after I had the truck I had a major

17   breakdown in a town called Rock Springs, Wyoming, which I

18   sent you receipts of all of my work orders.

19           Rock Springs, Wyoming I found out after they towed

20   my truck to a dealership there called Great Western

21   Autoplex, was not an authorized service center for my truck.

22   They did not have the tools to work on my truck, they did

23   not have a lift to be able to lift my truck up and get up

24   underneath it, they didn't have a mechanic there that was

25   trained in the knowledge of my truck.

1           And when I found this out the very next day I

2    called the service center back and I said, you can't leave

3    my truck in an unauthorized service center that doesn't know

4    anything about my truck.  This is a commercial truck.  This

5    truck is costing me over $1,000 a month just in notes, not

6    to mention the insurance and everything.  I need it back on

7    the road, so I need someone working on it that knows what

8    they're doing.  And my warranty says that it has to go to an

9    authorized service center.

10           On page of my warranty book it states there -- oh,

11   hold on, I've got it right here -- that -- it talks to the

12   customer after you purchase a vehicle, and when I purchased

13   my vehicle I purchased it brand new, and I purchased it with

14   a glove box warranty, and in this glove box warranty it said

15   to me, "Your selling dealership has made a large investment

16   to insure that you have the proper tools that they" -- I'm

17   sorry -- "that they have the proper tools, training, and

18   parts inventory to make any necessary warranty repairs

19   should they be required during the warranty period.  We ask

20   that you return your selling -- to your selling dealer for

21   warranty repairs.

22           In the event of an emergency repair you may take

23   your vehicle to an authorized GM dealer for warranty

24   repairs; however, certain warranty repairs require certain

25   tools or training that only a dealer selling your brand may

Page 24

1    have.  Therefore, not all dealers are able to perform every

2    repair.

3           If a particular dealership cannot assist you then

4    contact the customer service assistant center."

5           This I did every day.  For 27 days I called the

6    service center.  Because Great Western Autoplex tore my

7    truck completely apart from the top down because they

8    couldn't lift it up, and they were getting service manuals

9    sent to them, and they didn't really know what they were

10   doing, and then they called me on the 27th of June and they

11   said, okay, it's ready.  And when -- I had to fly to Salt

12   Lake City, Utah -- see that's where the closest authorized

13   center was, and General Motors didn't want to tow my truck

14   to Salt Lake City because of the cost.  And so because they

15   were trying to save a few dollars they ended up having my

16   truck at a place that wasn't even authorized to work on my

17   truck, didn't know what they were doing.  And from that

18   point on that truck never ran again right.  I had nothing

19   but trouble after trouble after trouble.

20           And as a matter of fact, when I picked it up in

21   Wyoming it was not ready, the hood latches weren't on, there

22   were bolts missing, the filtering system wasn't put back on,

23   the truck wasn't secured in a secured lot location, it was

24   across the street from the dealership on the lot that was

25   just open and not locked up, but my truck wasn't locked up.

Page 25

```
 1              THE COURT:  Ms. Mitchell, forgive me, I didn't
 2     want to interrupt you for the last five minutes or so, but
 3     the question that I asked back then is do you have anything
 4     else to tell me about the language of the sale order that
 5     determines what obligations New GM took on and what it
 6     didn't?  Do you have any further to tell me on the sale
 7     orders words?
 8              I understand how frustrating this is for you, but
 9     I also understand the truck was bought back.  Do you have
10     anything to tell me about the words of the sale order?
11              MS. MITCHELL:  Well, the -- the sale order says
12     that they assume the liabilities of the warranties, and I
13     had a warranty.  My warranty didn't expire until April of
14     2011.  I still owe a note on that truck, even today I still
15     pay a note on that truck.
16              And -- and in order for me to even file the DTPA
17     case I had to have a warranty recognized by the State of
18     Texas, and they recognize that State of Texas here in the
19     State Court, so I don't know why the Bankruptcy Court can't
20     recognize it as an active warranty when everything arose
21     from that warranty.  All my troubles arose from that
22     warranty.  And because I used everything in my lemon law
23     case to further my case because the ALJ said that I couldn't
24     recover everything under his forum that I needed to take it
25     to the DTPA, that was my next step.  So as soon as he made
```

Page 26

1    his decision I did exactly what he said that I needed to do.

2          Now, GM -- hold on, please -- GM states that in

3    question -- or statement -- hold one moment, please.

4        (Pause)

5          MS. MITCHELL:  GM is also stating that 56 --

6    paragraph 56 prevents them from paying for -- or assuming

7    this obligation.  However, when you look at paragraph 56 it

8    says -- I'm sorry, I lost it.

9          THE COURT:  Well, 56 says:

10          "GM shall not be liable for incidental or

11   consequential damages such as, but not limited to, lost

12   wages or vehicle rental expenses resulting from breach of

13   this written warranty or any implied warranty even if the

14   glove box warranty applies."

15          Doesn't it?  And that includes loss of vehicle

16   use, inconvenience, storage.  Isn't that exactly the kinds

17   of things you're talking about?

18          MS. MITCHELL:  Well, I am talking about those

19   things, and while the sale order eludes to that fact, their

20   (indiscernible - 00:51:55) security doesn't elude to that

21   fact.

22          THE COURT:  All right, thank you.

23          All right, Mr. Davidson, do you want to respond?

24          MR. DAVIDSON:  Yes, Your Honor.

25          As Your Honor pointed out this vehicle was

Page 27

```
 1    repurchased over two years before the bankruptcy filing and
 2    before the 363 sale from Old GM to New GM.  All of the lemon
 3    law obligations were complied with back at that time.  The
 4    ALJ decision mandated that Old GM repurchase the vehicle for
 5    about $47,500; that was done.  That ended the lemon law
 6    claim.
 7              Subsequent to that there was a State Court action
 8    under the Texas Deceptive Trade Practices Consumer
 9    Protection Act, which is not a lemon law action.  That
10    action sought damages that were not assumed by New GM.  The
11    New GM -- New GM did assume glove box warranties, but only
12    those liabilities that are under the glove box warranty.
13              In a normal situation it would be if a car broke
14    down that was sold prepetition but the warranty was still in
15    effect post petition New GM would be obligated to fix that
16    vehicle.  However, this vehicle was repurchased two years
17    before the bankruptcy.  There was no longer a glove box
18    warranty that Ms. Mitchell could assert a claim against New
19    GM -- against New GM.  New GM would have had to have had the
20    opportunity to try to fix the car or do a replacement for
21    parts in the car.  It never had that opportunity.
22              All of this happened way before the bankruptcy
23    filing, way before the 363 sale, and New GM can't be liable
24    for these types of obligations.  I mean that's --
25    unfortunately that's -- that's the way it was.
```

```
 1              I understand Ms. Mitchell's frustration as well,

 2     I've spoken to her on numerous times over the last several

 3     months and we've tried to resolve this matter, but this is

 4     just not a New GM liability.

 5              THE COURT:  All right.  Thank you.

 6              All right, everybody sit in place for a minute.

 7              MS. MITCHELL:  Your Honor?

 8              THE COURT:  Yes, ma'am.

 9              MS. MITCHELL:  May I please say something else?

10     Because my warranty that I purchased, while --

11              THE COURT:  You may say something else limited --

12     please don't talk over me.  You may say something else

13     limited to what Mr. Davidson said, but you can't raise new

14     points now and you can't repeat what you said before now.

15     Under those rules I will let you speak one more time.

16              MS. MITCHELL:  Okay.  Then I need to be able to go

17     back and look at what my cart person wrote, okay?

18              THE COURT:  You need to do what?

19              MS. MITCHELL:  I'm hearing impaired, Your Honor,

20     and so I have a cart person here who is a court reporter

21     similar to your court reporter and she is writing down

22     everything so that I can read what is being said because

23     it's difficult to hear for me over the phone, and --

24              THE COURT:  Okay.

25              MS. MITCHELL:  -- you know, you're wanting me to
```

Page 29

```
 1    -- you're wanting me to, you know, hurry up and respond to,

 2    you know, Mr. Davidson, and this issue about, you know, 56

 3    and I have other issues of law that, you know, what about my

 4    11 U.S.C. 5236 that exempts discharge of a debt that where

 5    malicious and willful conduct took place?  I mean that was

 6    proven in my State Court case.

 7             So is that supposed to just be just disallowed and

 8    just thrown out because, you know, so then, you know,

 9    General Motors, you know, they get it both ways?  They get,

10    you know, a new company and then they get to ignore any laws

11    that they're company broke.

12             And I mean these were unlawful acts that they did.

13    This wasn't just something, you know, that they couldn't,

14    you know, fix my truck.  I mean they deliberately took my

15    truck to -- sent my truck to a place that they knew couldn't

16    fix it, even though I begged them to get it out of there

17    daily.  And it just exacerbated everything.

18             I lost my business, I lost everything -- ended up

19    losing everything that I'd worked eight long years building

20    my business putting it together because of -- simply because

21    I had the misunfortune of buying a General Motors product to

22    help me run my business.

23             And when they take on lemon laws and lemon law

24    statutes in the State of Texas if you don't fully recover

25    and get made whole under the lemon law you're allowed to go
```

Page 30

1    under the DTPA, it's a tie in statute to the lemon law.  And

2    everything that I asked for under my DTPA case had to do

3    with warranty.  Did their warranty fail?  Did their warranty

4    -- did they mislead me?  Every -- if you read my order,

5    which I sent to you, which was Exhibit B and then the

6    Court's charges, you'll find that they were found guilty of

7    everything because we were able -- we were able to prove it

8    through testimony and documentation.

9             And what I'm hearing from you is simply because

10   this sale order says that oh, well, we didn't take on

11   liabilities like that, you know, like defendant stated in

12   question -- statement 30 that New GM agreed to assume

13   obligations under glove box warranties that continued in

14   existence after the closing of the 363 sale, because it was

15   these obligations that were important to New GM, not the

16   warranty liability asserted by me prior to the 363 sale.

17            So does that mean that everybody that had a

18   General Motors product that had problems that we all got

19   written off because we were prior?  Because that's not what

20   the sale order says.  The sale order says that they are

21   responsible for prior to closing, during the bankruptcy, and

22   after the warranty issues.

23            THE COURT:  All right.

24            MS. MITCHELL:  That's what --

25            THE COURT:  Thank you.

1              MS. MITCHELL:  -- that's what it says.

2              THE COURT:  All right.  Forgive me, you're --

3     you're repeating yourself for the second or third time,

4     ma'am, and I think I understand the issues.  Remember that

5     oral argument supplements what people have already said in

6     the briefs.

7              I have one last question for you, Mr. Davidson,

8     before I rule.  Do you care if I rule that she can go

9     against people other than New GM and Old GM?

10             MR. DAVIDSON:  No, Your Honor, I just represent

11    New GM.

12             THE COURT:  I'm sorry.

13             MR. DAVIDSON:  I just represent New GM so --

14             THE COURT:  Okay.

15             MR. DAVIDSON:  -- to the extent there's a --

16             THE COURT:  All right.

17             MR. DAVIDSON:  -- there's another (indiscernible -

18    00:59:18).

19             THE COURT:  Then everybody sit in place for a

20    minute, you're going to hear a moment of silence.

21        (Recess at 10:30 a.m.)

22             THE COURT:  Granting the motion to the extent that

23    it asks for relief from the stay to the extent it's

24    necessary to proceed against entities other than Old GM and

25    New GM, and to the extent necessary, I'm granting permission

Page 32

1    to sever any of those other entities.  But the motion is

2    already -- it's otherwise denied.

3              And I'm further ruling for the avoidance of doubt

4    that New GM is protected under the sale order from claims

5    other than with respect to the lemon law claim.

6              And further ruling that the lemon law claim was

7    fully satisfied two years before the sale under which New GM

8    acquired GM assets.

9              As facts I find an undisputed fact that the

10   vehicle was repurchased under the Texas lemon law back in

11   2007, two years before New GM bought Old GM assets.  The

12   purpose of a lemon law statute is if problems with the

13   vehicle are serious enough to make the manufacturer buy back

14   the car, and that's exact whether I what Old GM did.  I said

15   car, I guess here I should have said truck, but the point

16   remains the same.  There were no lemon law claims left for

17   New GM to perform under.

18             I well understand that a separate claim was raised

19   under the Texas Consuming Procedures Protection Act, but

20   that is not one of the types of claims that New GM

21   contracted to assume.  Rather under paragraph 56 of the sale

22   order New GM assumed only the obligation to honor the

23   standard limited warranty of repair, what we refer to as the

24   glove box warranty, which was meaningless after the vehicle

25   had already been sold back by the consumer.  There was no

Page 33

1    duty then to honor.

2             The terms of the warranty were very limited, and

3    these claims for events that took place long before New GM

4    even existed and before the consumer, which here is

5    Ms. Mitchell, sold back the car to Old GM did not exist to

6    be undertaken when New GM bought the company and are not of

7    the type that New GM undertook to continue to honor after

8    the sale.

9             Now, Mr. Davidson, you are to settle an order in

10   accordance with this ruling.  I do want you to stick in some

11   language similar to that which Mr. Griffiths talked about in

12   connection with an earlier claimant and say that nothing in

13   this order affects the rights, if any, or affects any rights

14   that Ms. Mitchell might have against any entity other than

15   New GM or Old GM.

16            Do we have any further business today,

17   Mr. Davidson?

18            MR. DAVIDSON:  Not from me, Your Honor.

19            THE COURT:  Mr. Griffiths, Ms. Greer?

20            MR. GRIFFITHS:  No, Your Honor.

21            THE COURT:  All right, we're adjourned.  Everybody

22   have a good day.

23            MR. DAVIDSON:  Thank you, Your Honor.

24            MS. GREER:  Thank you, Your Honor.

25         (Whereupon, these proceedings were concluded at 10:35

1    a.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                        I N D E X

 2                       RULINGS

 3    DESCRIPTION                            PAGE      LINE

 4

 5    Debtors' 214th Omnibus Objection to Claim

 6    (Administrative Proofs of Claim for Equity   10       15

 7    Interests)                               14       13

 8

 9    Debtors' 215th Omnibus Objection to Claim

10    (Administrative Proofs of Claim for Equity   10       15

11    Interests)                               14       13

12

13    Objection to Proof of Claim 28560 filed by

14     Alicia E. Calhoun (Splinter Union Employee

15    Claim)                                   16        8

16

17    286th Omnibus Objection to Claim(s) Number:

18    (No Liability Claims)                    17       15

19

20    Motion by Linda Mitchell for Relief from the

21    Automatic Stay                           31       22

22

23

24

25
```

1                       C E R T I F I C A T I O N

2

3       I, Dawn South, certified that the foregoing transcript is a

4       true and accurate record of the proceedings.

5

6

7

8       AAERT Certified Electronic Transcriber CET**D-408

9

10      Veritext

11      200 Old Country Road

12      Suite 580

13      Mineola, NY 11501

14      Date:  October 16, 2012

15

16

17

18

19

20

21

22

23

24

25