HEARING DATE:  TO BE DETERMINED

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Counsel to General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| **In re:** | **:** | **Chapter 11** |
| | **:** | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | **:** | **Case No.: 09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al*. | **:** | |
| | **:** | **(Jointly Administered)** |
| **Debtors.** | **:** | |

------------------------------------------------------------x

**ANSWER BY GENERAL MOTORS LLC IN OPPOSITION TO MOTION
OF THE TPC LENDERS FOR (I) A DETERMINATION THAT THE
BANKRUPTCY COURT'S DECISION ON VALUATION METHODOLOGY
IS A FINAL ORDER OR, IN THE ALTERNATIVE, (II) LEAVE TO APPEAL
THE BANKRUPTCY COURT'S DECISION ON VALUATION METHODOLOGY**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.    The 363 Sale and the TPC Properties .......................................................... 3

    B.    Relevant Procedural History ......................................................................... 5

ANSWER ............................................................................................................................. 6

    A.    The Valuation Methodology Decision is Not a Final Decision ..................... 7

    B.    Leave to Appeal Should Not Be Granted .................................................... 10

        1.    This Case Does Not Involve a "Controlling Question of Law"............................ 11

        2.    There is Not Substantial Ground for a Difference of Opinion.............................. 12

        3.    An Immediate Appeal Will Not Materially Advance the Litigation .................... 13

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

Cases

*Chase Manhattan Mortg. Corp. v. Rodriguez (In re Rodriguez)*,
    272 B.R. 54 (D. Conn. 2002) ............................................................................8, 12

*Comerica Bank v. Red Mountain Mach. Co. (In re Red Mountain Mach. Co.)*,
    471 B.R. 242 (D. Ariz. 2012)..........................................................................8, 9

*Ellsworth v. Myers (In re Cross Media Mktg. Corp.)*,
    2007 WL 2743577 (S.D.N.Y. Sept. 19, 2007).......................................................13

*Enron Corp. v. Avenue Special Situations Fund II, L.P. (In re Enron Corp.)*, Adv. 05-
    010, 2006 WL 2548592 (S.D.N.Y. Sept. 5, 2006) ........................................10, 12

*In re Complete Retreats, LLC.*,
    No. 07 Misc. 152, 2008 WL 220752 (D. Conn. Jan. 23, 2008)..............................11

*In re Fugazy Express, Inc.*,
    982 F.2d 769 (2d Cir. 1992)..............................................................................7

*In re Futter Lumber Corp.*,
    473 B.R. 20 (E.D.N.Y. 2012) ...........................................................................10

*In re Integrated Resources, Inc.*,
    3 F.3d 49 (2d Cir. 1993).....................................................................................7

*In re Machinery, Inc.*,
    275 B.R. 303 (8th Cir. BAP 2002)...................................................................8, 9

*In re Oxford Health Plans, Inc.*,
    182 F.R.D. 51 (S.D.N.Y. 1998) .........................................................................14

*In re Perry H. Koplik & Sons, Inc.*,
    377 B.R. 69 (Bankr. S.D.N.Y. 2007)..................................................................11

*In re Sonnax Indus., Inc.*,
    907 F.2d 1280 (2d Cir. 1990)..............................................................................7

*In re Worldcom*,
    No. M-47, 2003 WL 21498904 (S.D.N.Y. June 30, 2003)....................................11

*Koehler v. Bank of Bermuda Ltd.*,
    101 F.3d 863 (2d Cir. 1996)..............................................................................10

*Liebert v. Levine (In re Levine)*,
     No. 94-44257, 2004 WL 764709 (S.D.N.Y. April 9, 2004) ....................................................10

*Mount Sinai Hosp. v. Arana*,
     Nos. 11-CV-5360 (RRM), 11-CV-6194 (RRM), 2012 WL 3307357 (E.D.N.Y. Aug.
     12, 2012) .............................................................................................................................11

## FEDERAL STATUTES

28 U.S.C. § 158(a) ...................................................................................................................7

28 U.S.C. § 158(a)(1)................................................................................................................6

28 U.S.C. § 158(a)(3)...............................................................................................................10

28 U.S.C. § 1291.......................................................................................................................7

28 U.S.C. § 1292(b) ............................................................................................................10, 11

General Motors LLC (f/k/a General Motors Company) ("**New GM**"), by and through its undersigned counsel, hereby submits this answer ("**Answer**") in opposition to the *Motion Of The TPC Lenders For (I) A Determination That The Bankruptcy Court's Decision On Valuation Methodology Is A Final Order Or, In The Alternative, (II) Leave To Appeal The Bankruptcy Court's Decision On Valuation Methodology*, dated October 30, 2012 [Docket No. 12165] ("**Motion**"), filed by Wells Fargo Bank Northwest, N.A., as Agent ("**Agent**") for the TPC Lenders (as defined in the Motion).  In support of this Answer, New GM represents as follows:

## INTRODUCTION

1.    A large portion of the Motion is dedicated to contesting the merits of the Bankruptcy Court's *Decision on Valuation Methodology for TPC Lenders' Collateral*, dated October 16, 2012 ("**Valuation Methodology Decision**").  Those arguments are not only incorrect, but also irrelevant to the narrow issue presented by the Motion; that being (i) whether the Valuation Methodology Decision is a "final decision," appealable as of right, or (ii) whether the Valuation Methodology Decision is "interlocutory", and leave to appeal should be granted.

2.    As will be demonstrated herein, the Valuation Methodology Decision is not a "final decision" as it does not -- as is required by Second Circuit precedent -- finally resolve the "discrete claim" for relief sought by the TPC Lenders against New GM.  In this contested matter, the TPC Lenders seek to value the TPC Properties in order to fix the allowed amount of their secured claim.  Once done, the TPC Lenders will seek to access certain funds that were previously placed in escrow by New GM in connection with its purchase of substantially all of the assets of General Motors Corporation ("**Old GM**").  Significantly, the Valuation Methodology Decision does not finally address all of the issues surrounding the TPC Lenders' secured claim; it merely provides that the "fair market" value standard is the appropriate valuation method that should be used to value the TPC Properties.  The actual fair market value

of the TPC Properties, whether certain equipment should be included within the defined term "TPC Properties," and, if so, what the value of that equipment is, are all open issues, not yet determined, and subject to dispute. Without a resolution of all of these issues, the value of the TPC Lenders' secured claim has not been finally determined. Accordingly, the Valuation Methodology Decision is not a final decision, appealable as of right by the TPC Lenders.

3.      Moreover, the TPC Lenders should not be granted leave to appeal the Valuation Methodology Decision, which is an interlocutory decision. The relevant standard that the TPC Lenders must satisfy in order to obtain leave to appeal is: (1) the appeal must involve a controlling question of law; (2) there must be a substantial ground for difference of opinion with respect to that controlling question of law; and (3) the immediate appeal will materially advance the ultimate termination of the litigation. Leave to appeal an interlocutory decision is not favored in the Second Circuit. Exceptional or extraordinary circumstances must exist in order for leave to be granted. No such exceptional or extraordinary circumstances are present here.

4.      Specifically, there is no "pure" question of law involved in this appeal, as is required by Second Circuit law. The Valuation Methodology Decision was based on a mixed question of fact and law wherein the Bankruptcy Court analyzed, among other things, the factual context surrounding (a) the 363 Sale (as defined below), and (b) the language used in the Sale Order (as defined below) regarding the TPC Properties.

5.      Moreover, there is no substantial ground for difference of opinion with respect to a controlling issue of law in the Valuation Methodology Decision. Simply put, the Bankruptcy Court applied uncontroversial legal precedent to the factual context of the matter (363 Sale) which he administered.

2

6.       Finally, as noted, the Bankruptcy Court has yet to address other material issues relating to the valuation of the TPC Properties.  The resolution of these additional issues may, themselves, be subject to an appeal.  Therefore, to avoid a piecemeal resolution of this litigation, any appeal of the Valuation Methodology Decision should await the ultimate resolution of all of the issues surrounding the TPC Lenders' secured claim.

## BACKGROUND

**A.       The 363 Sale and the TPC Properties**

7.       On June 1, 2009 ("**Commencement Date**"), Old GM and certain of its subsidiaries (collectively, the "**Debtors**") commenced voluntary bankruptcy cases under Chapter 11 of the Bankruptcy Code.

8.       On the Commencement Date, the Debtors filed a motion ("**Sale Motion**") requesting, *inter alia*, an order ("**Sale Order**") approving, among other things, the sale of substantially all of their assets to New GM pursuant to a Master Sale and Purchase Agreement, free and clear of liens, claims and other interests ("**363 Sale**").  The sale to New GM was subject to higher and better offers.

9.       In response to the Sale Motion, the TPC Lenders filed a limited objection ("**Limited Sale Objection**") to the 363 Sale to preserve their rights  as holders of secured claims against the TPC Properties.

10.       A hearing ("**Sale Hearing**") on the Sale Motion took place between June 30, 2009 and July 2, 2009.  During the course of the Sale Hearing, the Limited Sale Objection was resolved and agreed-upon language was added to the Sale Order, which was ultimately entered by the Bankruptcy Court on July 5, 2009.

3

11.     Pursuant to the Sale Order, the TPC Properties were transferred from Old GM to New GM free and clear of all liens, claims and other interests, including the TPC Lenders' secured liens.  *See* Sale Order, ¶ 36.  As adequate protection for the TPC Lenders' secured claim, New GM placed $90.7 million in the TPC Escrow Account (as defined in the Sale Order).  *See id*. ¶ 37.  If the fair market value of the TPC Properties turned out to be less than $90.7 million, the Sale Order provides that the balance remaining in the TPC Escrow Account after satisfying the secured claim of the TPC Lenders is to be returned to New GM.  *See id.*, ¶ 39.

12.     Particularly relevant to this dispute, the Sale Order contained the following agreed-upon language:

> As a result of Debtors' interest in the TPC Property being transferred to the Purchaser free and clear of all liens, claims, interests and encumbrances (other than Permitted Encumbrances), including, without limitation, the TPC Lenders' Liens and Claims, pursuant to section 363(e) of the Bankruptcy Code, the TPC Lenders shall have an allowed secured claim in ***a total amount equal to the fair market value of the TPC Property on the Commencement Date*** under section 506 of the Bankruptcy Code . . ., as determined at a valuation hearing conducted by this Court or by mutual agreement of the Debtors, the Purchaser and the TPC Lenders . . . .

Sale Order, ¶ 36 (emphasis added).

13.     After entry of the Sale Order, New GM and the TPC Lenders engaged in negotiations regarding the fair market value of the TPC Properties, seeking to reach a consensual arrangement for the disbursement of the TPC Escrow Account.  As part of these negotiations, both New GM and the TPC Lenders obtained appraisals for the TPC Properties.  Consistent with the Sale Order, New GM obtained an appraisal utilizing a "fair market value" standard.  The TPC Lenders also obtained an appraisal utilizing the "fair market value" standard.  However, in addition to a value based on "fair market value," the TPC Lenders' appraisals also contain a

value for the TPC Properties utilizing the so-called "value in use" method (which has a higher valuation than the fair market value standard).

14.     The TPC Lenders took the position that the separate and distinct "value in use" standard should be followed in valuing the TPC Properties.  New GM disputed that this different valuation standard was relevant to the present dispute.

## B.    **Relevant Procedural History**

15.     With no resolution regarding the TPC Lenders' secured claim, on January 14, 2011, the Agent filed a motion ("**Valuation Proceedings Motion**") with the Bankruptcy Court to institute proceedings ("**Valuation Proceedings**") to value the TPC Properties.  On February 3, 2011, New GM filed its response ("**New GM Response**") to the Valuation Proceedings Motion, requesting that, prior to the Bankruptcy Court establishing a discovery and trial schedule for the Valuation Proceedings, the Bankruptcy Court first resolve the issue regarding the appropriate valuation standard to use to value the TPC Properties ("**Valuation Standard Issue**").

16.     On February 8, 2011, the Agent filed a reply ("**TPC Lenders' Reply**") to the New GM Response, opposing the relief requested by New GM, stating the following:

> As noted, New GM admits that "judicially supervised proceedings" are "necessary," and that such proceedings will require "a briefing schedule, discovery deadlines and an evidentiary hearing date . . ." New GM Resp. ¶¶ 2, 9. This is, of course, exactly what the TPC Lenders have requested in their initial motion and proposed order.  Motion ¶¶ 12-13. Any legal dispute concerning valuation methodology can be briefed, argued and decided while the parties conduct the discovery and prepare for an evidentiary hearing.

TPC Lenders' Reply, ¶ 8.  The TPC Lenders' Reply also (i) raised issues with the methodology and assumptions contained in New GM's fair market appraisals (*id.* at p. 5, n. 4), and (ii) asserted

that the TPC Lenders had security interests in certain equipment located at the TPC Properties, the value of which was not contained in the appraisals (*id.* at p. 6 n. 5).

17.    On February 9, 2011, a hearing was held before the Bankruptcy Court regarding the Valuation Proceedings Motion, at which time the Bankruptcy Court directed the parties to establish a briefing schedule for the Valuation Standard Issue, and deferred consideration for setting any other schedule for the Valuation Proceedings.  A Stipulation and Agreed Order was entered by the Bankruptcy Court on February 17, 2011 establishing the briefing schedule for the Valuation Standard Issue.

18.    Thereafter, the parties briefed the Valuation Standard Issue and, after the Bankruptcy Court held a hearing on April 12, 2011, the Bankruptcy Court rendered the Valuation Methodology Decision on October 16, 2012, finding that the appropriate methodology for valuing the TPC Lenders' collateral was the "fair market value" standard.

19.    In holding that the "fair market value" standard was the correct valuation methodology, the Bankruptcy Court relied on the factual context of the 363 Sale which, among other things,  framed its interpretation of the language used in the Sale Order.  *See* Valuation Methodology Decision, 10-11.

20.    The Motion followed the Bankruptcy Order's issuance of the Valuation Methodology Decision.

## **ANSWER**

21.    As explained below, the Valuation Methodology Decision is not a final order that is subject to appeal as of right pursuant to 28 U.S.C. § 158(a)(1).  In addition, the standard for granting leave to appeal the Valuation Methodology Decision -- an interlocutory decision -- has not been met.  Accordingly, the Motion should be denied.

A.    **The Valuation Methodology Decision is Not a Final Decision**

22.    The TPC Lenders correctly note that 28 U.S.C. § 158(a) provides that the "district courts of the United States shall have jurisdiction to hear appeals (1) from final judgment, orders, and decrees[.]"   In the Second Circuit, immediate appeals to the District Court from the Bankruptcy Court are allowed "in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case." *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1283 (2d Cir. 1990). "Disputes" in this context does not mean "merely competing contentions with respect to separable issues; rather, we apply the same standards of finality that we apply to an appeal under 28 U.S.C. § 1291." *In re Fugazy Express, Inc.*, 982 F.2d 769, 775 (2d Cir. 1992).

23.    The "final order" standard was set forth by the Second Circuit in *In re Integrated Resources, Inc.*, 3 F.3d 49, 53 (2d Cir. 1993), as follows:

> Given the strong federal policy against piecemeal appeals, a "dispute," for appealability purposes in the bankruptcy context, means *at least an entire claim on which relief may be granted.* Thus, with respect to a meritorious claim for damages, the dispute is not completely resolved until the bankruptcy court determines the amount of damages to be awarded.
>
> In sum, for a bankruptcy court order to be final within the meaning of § 158(d), the order need not resolve all of the issues raised by the bankruptcy; *but it must completely resolve all of the issues pertaining to a discrete claim, including issues as to the proper relief.* (first emphasis added, internal quotations and citations omitted).

24.    Based on this standard, the Valuation Methodology Decision is clearly not a "final" decision.  The "discrete claim" in this situation does not *only* include deciding the proper valuation standard to use to value the TPC Properties, but *also* includes (i) a determination of the allowed amount of the TPC Lenders' secured claim after an evidentiary hearing whereat the parties' appraisals will be presented and analyzed (as noted, the TPC Lenders have raised issues

7

with respect to New GM's appraisals, and the parties are at least $12 million apart with respect to their fair market value appraisals); (ii) a determination of what equipment, if any, located at the TPC Properties should be included in the TPC Lenders' secured claim; and (iii) if equipment is to be included when fixing the TPC Lenders' secured claim, what the value of that equipment was as of the Commencement Date.  Accordingly, as the Valuation Methodology Decision does not "completely resolve all of the issues pertaining to a discrete claim," it cannot be a "final" decision subject to an appeal as of right.

25.    The cases cited by the TPC Lenders are inapposite.  *See Chase Manhattan Mortg. Corp. v. Rodriguez (In re Rodriguez)*, 272 B.R. 54 (D. Conn. 2002); *Comerica Bank v. Red Mountain Mach. Co. (In re Red Mountain Mach. Co.)*, 471 B.R. 242 (D. Ariz. 2012).  Unlike the situation here, both cases cited by the TPC Lenders took place prior to confirmation of a plan, and the valuation was to be used as part of a larger context -- the plan confirmation hearing.  *See Rodriguez*, 272 B.R. at 57; *Red Mountain Mach.*, 471 B.R. at 249.  In contrast, confirmation of the Debtors' plan of reorganization took place quite some time ago, and the dispute at issue here is a self-contained dispute, the resolution of which will not affect the confirmation or implementation of the Debtors' plan.

26.    Moreover, the overall dispute between New GM and the TPC Lenders is not limited to the appropriate valuation methodology, but concerns other issues as well.  In such a situation, the decision cannot be final.  *In re Machinery*, *Inc.*, 275 B.R. 303 (8th Cir. BAP 2002) is on point.  There, a secured creditor filed a motion seeking to value its secured claim.  While the secured creditor sought to value certain forms of its collateral, the bankruptcy court determined the value of only one form of collateral (*i.e.*, airlifts).  The secured creditor appealed. The Eight Circuit Bankruptcy Appellate Panel dismissed the appeal.  It found that

> [t]he bankruptcy court left three issues unresolved: the value of the
> accounts receivable, the amount of the cash proceeds relating to
> the lifts, and the determination of the amount of the debt.  The
> litigation on the merits was not final and we find the order valuing
> the secured claim with respect to the lifts to be interlocutory.

*Id.* at 306.

27.    As was the case in *Machinery*, here, the Bankruptcy Court left open various issues surrounding this dispute, including (i) the actual value of the TPC Properties (the TPC Lenders have raised issues with respect to New GM's appraisals and the assumptions contained therein); (ii) whether, and to what extent, the TPC Lenders' secured claim should include equipment located at the TPC Properties; and (iii) if certain equipment is included in the TPC Lenders' secured claim, the value of that equipment.

28.    The finality principle was set forth succinctly in *Red Mountain Mach.* where the court, in quoting the Ninth Circuit, stated:  "Although this finality rule is given additional flexibility in the bankruptcy context, traditional finality concerns nonetheless dictate that 'we avoid having a case make two complete trips through the appellate process.'" 471 B.R. at 249 (quoting *In re Bonham*, 229 F.3d 750, 761 (9th Cir. 2000)).  Given that the Valuation Methodology Decision does not completely resolve all of the issues surrounding the dispute between New GM and the TPC Lenders, allowing an appeal at this juncture would open this matter up to multiple "trips through the appellate process" -- exactly what the "finality" standard is designed to avoid.

29.    Based on the foregoing authorities, the Valuation Methodology Decision is not a "final" decision, and it is not appealable as of right.

B.    <u>Leave to Appeal Should Not Be Granted</u>

30.    Since the Valuation Methodology Decision is not a final decision, the TPC

Lenders must obtain leave from the District Court in order to pursue this appeal.  *See* 28 U.S.C. §

158(a)(3).  Courts in the Second Circuit typically follow the standard set forth in 28 U.S.C. §

1292(b) when deciding a motion seeking leave to appeal a bankruptcy court's order.  In *Enron*

*Corp. v. Avenue Special Situations Fund II, L.P. (In re Enron Corp.)*, Adv. 05-010, 2006 WL

2548592 (S.D.N.Y. Sept. 5, 2006), this District Court set forth the relevant standard as part of a

three part test: "[i]n order to permit an interlocutory appeal pursuant to section 1292(b), the order

being appealed must '(1) involve a controlling question of law (2) over which there is substantial

ground for difference of opinion,' and the movant must also show that '(3) an immediate appeal

would materially advance the ultimate termination of the litigation.'" *Id.* at *3 (quoting 28

U.S.C. § 1292(b)).  Each of these three requirements "must be met for a Court to grant leave to

appeal." *In re Futter Lumber Corp.*, 473 B.R. 20, 26-27 (E.D.N.Y. 2012).

31.    The above cited standard  "is strictly applied as interlocutory appeals from

bankruptcy courts' decisions are 'disfavored' in the Second Circuit."  *Enron*, 2006 WL 2548592,

at *3. As further explained by the court in *Enron*:

> leave to appeal is warranted only when the movant demonstrates
> the existence of "exceptional circumstances" to overcome the
> "general aversion to piecemeal litigation" and to "justify a
> departure from the basic policy of postponing appellate review
> until after the entry of a final judgment."  Interlocutory appeal "is
> limited to 'extraordinary cases where appellate review might avoid
> protracted and expensive litigation,' ... and is not intended as a
> vehicle to provide early review of difficult rulings in hard cases."
> The decision whether to grant an interlocutory appeal from a
> bankruptcy court order lies with the district court's discretion.

*Id.* (footnotes and citations omitted); *see also Koehler v. Bank of Bermuda Ltd.*, 101 F.3d 863,

865 (2d Cir. 1996) (an interlocutory appeal is "a rare exception to the final judgment rule that

generally prohibits piecemeal appeals"); *Liebert v. Levine (In re Levine)*, No. 94-44257, 2004 WL 764709, at *2 (S.D.N.Y. April 9, 2004)("The Second Circuit has repeatedly 'urged the district courts to exercise great care in making a § 1292(b) certification.'").  The situation here is neither exceptional nor extraordinary, and does not justify a departure from the rule postponing appellate review of interlocutory orders.

### 1.    This Case Does Not Involve a "Controlling Question of Law"

32.    In order to satisfy the first prong of the Section 1292(b) standard, the "question of law" at issue "must refer to a 'pure' question of law that the reviewing court could decide quickly and cleanly without having to study the record."  *In re Worldcom,* No. M-47, 2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003).  Moreover, as noted by the District Court in the Eastern District of New York:

> interlocutory review of a bankruptcy court order is extended to pure questions of law which are controlling of the action's outcome.  District courts in this Circuit generally deny leave to appeal interlocutory orders where a review of the bankruptcy court's factual determinations is necessary.  Thus, "where a legal issue is essentially fact based in nature interlocutory appeal is not appropriate."

*Mount Sinai Hosp. v. Arana*, Nos. 11-CV-5360 (RRM), 11-CV-6194 (RRM), 2012 WL 3307357, at *3 (E.D.N.Y. Aug. 12, 2012) (citations omitted). *See also In re Complete Retreats, LLC.*, No. 07 Misc. 152, 2008 WL 220752, at *2 (D. Conn. Jan. 23, 2008) ("where a 'legal' issue is 'essentially fact based in nature' interlocutory appeal is not appropriate");  *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 75 (Bankr. S.D.N.Y. 2007) ("A factual determination by the Bankruptcy Court is accorded deferential review by this Court and is not a question of law as to which an immediate interlocutory appeal is appropriate under § 1292(b).").

11

33.     Here, the Bankruptcy Court determined the correct valuation methodology to use in this dispute based on, among other things, a review of the facts and circumstances surrounding the 363 Sale and the Sale Order.  Specifically, the Bankruptcy Court decided that the "fair market" value standard is the correct valuation methodology because the TPC Properties (as well as all of Old GM's other assets sold to New GM) were the subject of a sale process that was open to, not only New GM, but to other potential purchasers as well.  *See* Valuation Methodology Decision, 10-11.  The Bankruptcy Court came to its conclusion based, in part, on a review of the language used in the Sale Order, *i.e.*, that the TPC Lenders' secured claim would be equal to the fair market value of the TPC Properties on the Commencement Date.  *Id.*  In fact, the Bankruptcy Court specifically noted that the "Court's factual findings support the New GM view."  *Id.* at 11.

34.     Accordingly, as the Valuation Methodology Decision does not concern a "pure question of law," but concerns the Bankruptcy Court's factual findings, leave to appeal should not be granted.

## 2.     There is Not Substantial Ground for a Difference of Opinion

35.     This is not a situation where a question of law is subject to a substantial ground for a difference of opinion.  The TPC Lenders essentially argue that there are no cases on point that address this dispute.  That is not true; there are plenty of cases that provide, in the sale context, a fair market valuation is appropriate.  In fact, in *Rodriguez* -- a case cited by the TPC Lenders in the Motion -- the bankruptcy court there based the value of the secured creditor's claim on the fair market value of the property at issue.  272 B.R. at 55.  However, even if the TPC Lenders were correct, "[t]he mere presence of disputed issue that is a question of first impression, without more, is insufficient to satisfy this prerequisite."  *Enron*, 2006 WL 2548592, at *4.  Moreover, "[m]erely claiming that the bankruptcy court's decision was incorrect is

insufficient to establish substantial ground for a difference of opinion.´ *Ellsworth v. Myers (In re Cross Media Mktg. Corp.)*, 2007 WL 2743577, at *2 (S.D.N.Y. Sept. 19, 2007).

36.     Here, the only way that the TPC Lenders can claim that there is no case directly on point is to argue the unique factual context which affected how the Bankruptcy Court came to its decision.  Having chosen that path, the TPC Lenders automatically fail the relevant standard cited above.  In short, pure issues of law are not controlling, and there is not a substantial ground for a difference of opinion relating to the application of pure legal concepts.  In the end, the TPC Lenders essentially disagree with the Bankruptcy Court's decision.  While that disagreement can be the subject of an appeal, such an appeal should await the conclusion of this entire dispute.

**3.    An Immediate Appeal Will Not Materially Advance the Litigation**

37.     Contrary to the TPC Lenders' contention, an immediate appeal will not advance the litigation between the parties.  When objecting to New GM's request to have the Bankruptcy Court decide the Valuation Methodology Issue first, the TPC Lenders argued that such a process would delay this litigation, stating that "[a]ny legal dispute concerning valuation methodology can be briefed, argued and decided while the parties conduct the discovery and prepare for an evidentiary hearing."  Now, the TPC Lenders are reversing course, arguing that the Valuation Methodology Issue must be resolved now before all other issues.  Such a process will inevitably delay this litigation as the appeal will have to be briefed and argued in this Court and perhaps the Second Circuit.  Only thereafter, will the Bankruptcy Court tackle the other issues relating to the TPC Lenders' secured claim, which likely will also produce other appealable issues (leading to what the Second Circuit disfavors -- multiple trips up the appellate ladder).

38.     Moreover, "an immediate appeal is considered to advance the ultimate termination of the litigation if that appeal promises to advance the time for trial or shorten the

time required for trial." *In re Oxford Health Plans, Inc.*, 182 F.R.D. 51, 53 (S.D.N.Y. 1998). Here, an immediate appeal will not advance the time for trial or shorten the time required for trial. The parties can easily try this case using the valuation methodology contained in the Valuation Methodology Decision.

39. In addition, as noted, there would still be disputes between the parties regarding each party's appraisals and the assumptions contained therein. And, there will still be a dispute about whether the TPC Lenders' secured claim includes equipment and, if so, which equipment should be included and at what value. The ultimate trial on these issues will not be shortened in any way if this appeal is permitted to continue. In fact, the ultimate resolution of this dispute would be delayed months, if not years, by reason of this "piecemeal" appeal.

40. Accordingly, based on the foregoing, the TPC Lenders' Motion seeking leave to appeal the Valuation Methodology Decision should be denied in all respects.

WHEREFORE, New GM respectfully requests that the Court (i) deny the relief requested in the Motion, and (ii) grant to New GM such other and further relief as is just and proper.

Dated: New York, New York
     November 14, 2012            KING & SPALDING LLP


           By:    /s/ Arthur Steinberg   
                Arthur Steinberg
                Scott Davidson
           1185 Avenue of the Americas
           New York, NY 10036
           (212) 556-2100

           *Counsel to General Motors LLC*