HEARING DATE AND TIME: January 17, 2013 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: January 10, 2013 at 4:00 p.m. (Eastern Time)
REPLY DEADLINE: January 14, 2013 at 12:00 noon (Eastern Time)

KING & SPALDING LLP

1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg
Scott Davidson

*Attorneys for General Motors LLC*
*f/k/a General Motors Company*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | Case No.:  09-50026 (REG) |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

-----------------------------------------------------------------x

## MOTION OF GENERAL MOTORS LLC PURSUANT TO
## 11 U.S.C. §§ 105 AND 363 TO ENFORCE THE SALE ORDER

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ....................................................................................................................... 5

    A.    THE SALE OF ASSETS TO NEW GM PURSUANT  TO SECTION 363
        OF THE BANKRUPTCY CODE............................................................................ 5

    B    THE GLOVE BOX WARRANTY FOR THE VEHICLE ................................... 7

    C.    THE STATE COURT ACTION............................................................................ 8

    D.    ELGOHARY'S PROOFS OF CLAIM................................................................. 8

    E.    ALLSTATE PROOF OF CLAIM ....................................................................... 9

    F.    CORRESPONDENCE WITH COUNSEL FOR ELGOHARY ........................... 9

ARGUMENT.......................................................................................................................... 10

    A.    ELGOHARY CANNOT ASSERT ANY WARRANTY CLAIMS
        AGAINST NEW GM ......................................................................................... 10

    B.    ELGOHARY SHOULD BE JUDICIALLY ESTOPPED FROM
        ASSERTING HIS CLAIMS AGAINST NEW GM ........................................... 13

    C.    ELGOHARY MAY NOT BE THE PROPER CLAIMANT .............................. 15

    D.    THIS COURT SHOULD ENFORCE THE SALE ORDER BY
        DIRECTING THAT THE STATE COURT ACTION BE DISMISSED
        WITH PREJUDICE ........................................................................................... 16

NOTICE.................................................................................................................................. 19

## TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

*Allstate Ins. Co. v. Mazzola,*
   175 F.3d 255 (2d. Cir. 1999)................................................................16

*Back v. AM Gen. Corp. (In re Chateaugay Corp.),*
   213 B.R. 633 (S.D.N.Y. 1997)................................................................17

*Balanoff v. Glazier (In re Steffan),*
   97 B.R. 741 (Bankr. N.D.N.Y. 1989) ................................................................19

*DeRosa v. Nat'l Envelope Corp.,*
   595 F.3d 99 (2d Cir. 2010)................................................................14

*In re Cont'l Airlines, Inc.,*
   236 B.R. 318 (Bankr. D. Del. 1999) ................................................................17

*In re General Motors Corp.,*
   407 B.R. 463 (Bankr. S.D.N.Y. 2009)................................................................11

*Jalee Consulting Group, Inc. v. XenoOne, Inc.,*
   No. 11 Civ. 4720 (RJS) (JCF), 2012 WL 4510676 (S.D.N.Y. Sept. 29, 2012)................14, 15

*Travelers Indemn. Co. v. Bailey,*
   129 S. Ct. 2195 (2009)................................................................17

*U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.),*
   68 B.R. 690 (Bankr. S.D.N.Y. 1986)................................................................17

*Wells Fargo Bank N.A. v ESM Fund I, LP,*
   785 F.Supp.2d 188 (S.D.N.Y. 2011)................................................................16

FEDERAL STATUTES

11 U.S.C. § 105................................................................1, 17

11 U.S.C. § 363................................................................1, 5

11 U.S.C. § 502(e)(1)(B) ................................................................9

OTHER AUTHORITIES

BLACK'S LAW DICTIONARY (9th Ed. 2009)................................................................15, 16

09-50026-mg    Doc 12230    Filed 12/03/12    Entered 12/03/12 11:49:04    Main Document
                                Pg 4 of 23

General Motors LLC, f/k/a General Motors Company ("**New GM**"), by its undersigned
counsel, respectfully submits this motion ("**Motion**"), pursuant to 11 U.S.C. §§ 105 and 363, to
enforce the *Order (i) Authorizing Sale of Assets Pursuant to Amended and Restated Master Sale
and Purchase Agreement with NGMCO, Inc., a U.S. Treasury-Sponsored Purchaser; (ii)
Authorizing Assumption and Assignment of Certain Executory Contracts and Unexpired Leases
in Connection with the Sale; and (iii) Granting Related Relief*, entered by the Court on July 5,
2009 (the "**Sale Order**")[1] by (a) directing Ashraf Elgohary ("**Elgohary**") to cease and desist
from further prosecuting, or otherwise pursuing the claims asserted by him in an action ("**State
Court Action**") commenced in the Superior Court of New Jersey, Camden County ("**State
Court**"), Case No. L 975-12, against New GM, and (b) directing Elgohary to dismiss the State
Court Action with prejudice forthwith.   In support of this Motion, New GM respectfully
represents as follows:

## PRELIMINARY STATEMENT

1.      According to the complaint ("**Complaint**")[2] filed by Elgohary in the State Court
Action, a fire occurred in Elgohary's vehicle in January, 2008 -- approximately 18 months before
this bankruptcy case was commenced.  The vehicle -- a 2007 Chevrolet Express Van ("**Vehicle**")
-- was purchased by Elgohary approximately two years prior to the bankruptcy filing.  The fire
rendered the Vehicle inoperable.  Elgohary never brought the Vehicle to an Old GM (as herein
defined) or New GM service center for repair.  On these facts, Elgohary asserts claims against
New GM in the State Court Action based on an express warranty theory and implied warranty
theories, and seeks money damages and other charges, including attorneys' fees.

---

[1]   A copy of the Sale Order is annexed hereto as Exhibit "A."

[2]   A copy of the Complaint is annexed hereto as Exhibit "B."

2.     All of Elgohary's claims asserted in the Complaint against New GM are barred by the Sale Order.  Specifically, New GM acquired substantially all of the assets of former General Motors Corporation ("**Old GM**") on July 10, 2009 in a transaction approved by this Court.  The scope and limitations of New GM's responsibilities are defined in the Amended and Restated Master Sale and Purchase Agreement, dated as of June 26, 2009 ("**MSPA**") and the Sale Order, which is a final, binding Order.  In particular, the Sale Order provides that, with the exceptions of certain identified liabilities which were expressly assumed, the assets acquired by New GM were transferred to it "free and clear of all liens, claims, encumbrances, and other interests of any kind or nature whatsoever . . . including rights or claims based on any successor or transferee liability . . . ." *Id.* ¶ 7.

3.     New GM only assumed obligations of Old GM in connection with certain "express written warranties of [the Debtors] that are specifically identified as warranties and delivered in connection with the sale of" specified vehicles.  MSPA, § 2.3(a)(vii)).  This is commonly referred to as the "Glove Box Warranty" offered by Old GM to its customers upon sale.[3]  The Glove Box Warranty is a typical "repair and replacement" warranty.  If a vehicle manifests a defect in materials or workmanship that is covered, and its owner presents the vehicle to a New GM dealer within the warranty period (whether or nor the sale of the vehicle was pre- or post-petition), then the owner would receive repairs or replacement parts.  The Glove Box Warranty obligations assumed by New GM were thus limited to funding and otherwise supporting the standard limited warranties of repair issued by Old GM.  The Sale Order makes clear that New GM only assumed the obligations of Old GM "pursuant to and subject to

---

[3]   The Glove Box Warranty for the Vehicle is annexed hereto as Exhibit "C."

conditions and limitations contained in [Old GM's] express written warranties" delivered at the time of sale of the vehicle.  Sale Order, ¶ 56.

4.      The fact that New GM only assumed obligations specifically identified in the express written warranties is further supported by the definition of "Retained Liability" (*i.e.*, a liability not assumed by New GM) contained in the MSPA: "all Liabilities arising out of or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." MSPA, § 2.3(b)(xvi).  The MSPA also expressly excludes from liabilities assumed by New GM all "Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date." *Id.* § 2.3(b)(ix).[4]

5.      Moreover, New GM did not assume any liability that was specifically excluded from the Glove Box Warranty.  Here, the Glove Box Warranty expressly excluded from coverage damage caused by fire, as well as all economic losses incurred by a vehicle's owner in connection therewith.  All of Elgohary's claims fall squarely within these exclusions.  Thus, under the Sale Order, New GM did not assume any liability for the damages Elgohary seeks in his Complaint.

6.      Elgohary apparently recognized that his claims were more appropriately against Old GM, and filed proofs of claim against Old GM in its bankruptcy case.  Elgohary's claims were objected to, but one of his claims was reduced and allowed by an Order of this Court. Under the framework of the MSPA, either Old GM or New GM is liable for Elgohary's claims. Elgohary, having chosen to file a claim against Old GM and having it allowed in Old GM's

---

[4]   A copy of the MSPA is annexed hereto as Exhibit "D."

bankruptcy case, is now estopped from asserting any claim against New GM based on damages relating to the Vehicle.

7.      There are some questions regarding the proper owner of the Vehicle; whether it is Elgohary or a business named "Door Quest" (which, upon information and belief, Elgohary is affiliated with). A proof of claim was filed against Old GM by Allstate New Jersey Insurance Company ("**Allstate**"), as subrogee of Door Quest. In this proof of claim, Allstate seeks a claim based on the same damages caused to the Vehicle as those referenced in the Complaint and in Elgohary's proofs of claim. Since it appears that Allstate has stepped into Elgohary's shoes regarding any claim based on the damages to the Vehicle, then Elgohary should not be permitted to assert any claims against New GM based on the same set of facts.

8.      Accordingly, as the State Court Action violates the Sale Order and the injunctive provisions contained therein, and Elgohary and/or his successor has previously asserted claims against Old GM based on the claims asserted in the Complaint and one such claim has been allowed, Elgohary should be directed to (a) cease and desist from further prosecuting or otherwise pursuing the claims asserted by him in the State Court Action, and (b) dismiss the State Court Action with prejudice forthwith.

9.      On various occasions, New GM previously provided notice to Elgohary of the applicable provisions of the Sale Order and the MSPA and demanded that the State Court Action be dismissed; New GM also informed Elgohary that this Court -- and not the State Court -- has exclusive jurisdiction to interpret and enforce the Sale Order. Despite this knowledge, Elgohary has refused to dismiss the State Court Action. New GM, therefore, reserves its rights to seek to recoup the costs and expenses (including attorneys' fees) from Elgohary incurred in connection with the State Court Action and bringing this Motion.

4

## BACKGROUND

A.    **The Sale of Assets to New GM Pursuant to Section 363 of the Bankruptcy Code**

10.    On June 1, 2009, Old GM and certain of its affiliates (collectively, the "**Debtors**") commenced cases under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York ("**Bankruptcy Court**" or "**Court**").

11.    On June 26, 2009, the Debtors entered into the MSPA with New GM.  On July 5, 2009, the Court entered the Sale Order, and on July 10, 2009, the Debtors consummated the sale from Old GM to New GM (the "**363 Sale**").  Pursuant to the 363 Sale, New GM acquired substantially all of the assets of the Debtors and assumed certain, specifically-defined liabilities.

12.    The Sale Order permanently enjoined claimants from attempting to enforce liabilities against New GM *other than Assumed Liabilities*, as follows:

> [A]ll persons and entities … holding liens, claims and encumbrances, and other interests of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability, against [Old GM] or the Purchased Assets (whether legal or equitable, secured or unsecured, ***matured or unmatured***, contingent or noncontingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to [Old GM], the Purchased Assets, the operation of the Purchased Assets prior to the Closing … are forever barred, estopped, and permanently enjoined … from asserting against [New GM] … such persons' or entities' liens, claims, encumbrances, and other interests, including rights or claims based on any successor or transferee liability.

Sale Order, ¶ 8 (emphasis added); *see also id.* ¶ 9 ("This Order (a) shall be effective as a determination that, as of the Closing, (i) no claims other than Assumed Liabilities, will be assertable against the Purchaser, its affiliates, their present or contemplated members or shareholders, successors, or assigns, or any of their respective assets (including the Purchased Assets); (ii) the Purchased Assets shall have been transferred to the Purchaser free and clear of all claims (other than Permitted Encumbrances) . . . ").

13.      In particular, paragraph 46 of the Sale Order provides as follows (emphasis added):

> Except for the Assumed Liabilities expressly set forth in the [MSPA] … *[New GM] … shall [not] have any liability for any claim that arose prior to the Closing Date, relates to the production of vehicles prior to the Closing Date, or otherwise is assertable against [Old GM] … prior to the Closing Date ….* Without limiting the foregoing, [New GM] shall not have any successor, transferee, derivative, or vicarious liabilities of any kind or character for any claims, including, but not limited to, under any theory of successor or transferee liability, de facto merger or continuity … and products … liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

See also Sale Order, ¶ 47 ("Effective upon the Closing … all persons and entities are forever prohibited and enjoined from commencing or continuing in any manner any action … against [New GM] … with respect to any (i) claim against [Old GM] other than Assumed Liabilities).

14.      "Assumed Liabilities" was defined in Section 2.3(a) of the MSPA, which provided, in pertinent part, that New GM would assume the repair obligations of Old GM in connection with certain "express warranties of Sellers that are specifically identified as warranties and delivered in connection with the sale of" new vehicles.  MSPA, § 2.3(a)(vii). However, New GM did not assume any "Retained Liabilities," which includes liabilities "arising out of, relating to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to Sellers."  *Id.* §. 2.3(b)(xvi). The MSPA also expressly excludes from liabilities assumed by New GM all "Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date." *Id.* § 2.3(b)(ix).

15.     As confirmed by the Sale Order, New GM's warranty responsibilities were strictly limited to the express conditions and limitations contained in the Glove Box Warranty:

> The Purchaser is assuming the obligations of the Sellers pursuant to and subject to conditions and limitations contained in their express written warranties, which were delivered in connection with the sale of vehicles and vehicle components prior to the Closing of the 363 Transaction and specifically identified as a "warranty." The Purchaser is not assuming responsibility for Liabilities contended to arise by virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs, and point of purchase materials.

Sale Order, ¶ 56.

## B     The Glove Box Warranty for the Vehicle

16.     The Glove Box Warranty at issue here is the "2007 Chevrolet Warranty and Owner Assistance Information" Booklet.  The Glove Box Warranty "covers repairs to correct any vehicle defect related to materials or workmanship occurring during the warranty period." Glove Box Warranty, at 5.  "Economic loss or extra expense is not covered" under the Warranty. *Id.* at 11.

17.     The "Bumper-to-Bumper" coverage under the Warranty is for "the first three years or 36,000 miles, whichever comes first."  Glove Box Warranty, at 3.  Vehicles owners must present their vehicles to a GM dealer in order to trigger the Glove Box Warranty obligations.  *See id*. at 5 ("To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs."); *see also id.* at 24 ("You are responsible for presenting your vehicle to a GM dealer selling your vehicle line as soon as a problem exists.").

7

18.     The Glove Box Warranty does not cover certain damage, including the following: "Collision, **_fire_**, theft, freezing, vandalism, riot, explosion, or objects striking the vehicle." *Id.* at 9 (emphasis added).

## C.     The State Court Action

19.     Elgohary first commence a state court action against Old GM on May 23, 2008. The complaint in that action was substantially similar to the Complaint filed against New GM and contained most of the same allegations.

20.     The Complaint against New GM was filed on or about February 24, 2012.  In his Complaint, Elgohary alleged the following:  (i) the Vehicle was manufactured by New GM (Complaint, ¶ 1) (it was not -- it was manufactured by Old GM); (ii) Elgohary purchased the Vehicle on or about July 6, 2007 (*id.* ¶ 3); and (ii) the Vehicle caught fire on or about January 2, 2008 (*id.* ¶ 9).

21.     The Complaint contains one count, asserting "a breach of contractual and statutory obligations of Defendant, including but not limited to the following: (a) Express Warranty; (b) Implied Warranty of Merchantability; and (c) Implied Warranty of Fitness for a Particular Purpose." *Id.* ¶ 12.  The Complaint sought damages including "the contract price of the vehicle plus all collateral charges, including attorney fees and costs, as well as other expenses, the full extent of which are not yet known." *Id.* ¶ 16.

## D.     Elgohary's Proofs of Claim

22.     On November 25, 2009, Elgohary filed two proofs of claim (Claim Nos. 46626 and 46628) (collectively, the "**Elgohary Proofs of Claim**") against Old GM, each in the amount of $20,598.[5]  Each claim is identical.  The basis for each claim is "Products Liability," and each

---

[5]   Copies of each proof of claim filed by Elgohary are annexed hereto, collectively, as Exhibit "E."

8

concerns the events referenced in the Complaint, namely the damages caused by the fire in the Vehicle.

23.    Claim number 46628 was disallowed as being duplicative by Order of this Court, dated March 15, 2010.  Claim number 46626 was reduced and allowed by the Court in the amount of $10,299.[6]  Elgohary did not object to (i) the disallowance of claim number 46628; or (ii) the reduction and allowance of claim number 46626.

**E.    Allstate Proof of Claim**

24.    On October 26, 2009, Allstate filed a proof of claim ("**Allstate Proof of Claim**") against Old GM, as subrogee of Door Quest, an entity which appears to be affiliated with Elgohary.[7]  The amount of the Allstate Proof of Claim was $19,126.25.  The attachments to the Allstate Proof of Claim concern the same Vehicle and fire as referenced in the Complaint and the Elgohary Proofs of Claim.

25.    The Allstate Proof of Claim was disallowed by Order of the Court dated May 25, 2011 as being a contingent, co-liability claim subject to disallowance pursuant to Section 502(e)(1)(B) of the Bankruptcy Code.  Allstate did not object to the disallowance of its claim.

**F.    Correspondence with Counsel for Elgohary**

26.    Pursuant to informal conversations and letters during March, 2012 through the early part of May, 2012, New GM informed Elgohary's counsel that the claims asserted in the State Court Action were barred by the Sale Order and that the State Court Action should be dismissed.[8]  New GM also informed Elgohary that the Bankruptcy Court retained exclusive

---

[6]  *See Order Granting the 256th Omnibus Objection to Claims*, dated November 22, 2011 [Docket No. 11174], a copy of which is annexed hereto as Exhibit "F."

[7]  A copy of the Allstate Proof of Claim is annexed hereto as Exhibit "G."

[8]  Copies of the relevant correspondence are annexed hereto, collectively, as Exhibit "H."

jurisdiction to enforce and implement the terms of the Sale Order.    Elgohary has refused to

dismiss the State Court Action, thus necessitating the filing of this Motion.

## ARGUMENT

27.    The scope and limitations of New GM's responsibilities are defined in the Sale

Order and MSPA.    As set forth below, New GM did not assume the liabilities asserted by

Elgohary in the State Court Action.

## A.    Elgohary Cannot Assert Any Warranty Claims Against New GM

28.    New GM did not assume liability for the claims asserted by Elgohary under any

warranty theory.    While New GM assumed some obligations of Old GM in connection with

certain "express written warranties of [Old GM] that are *specifically identified as warranties and*

*delivered in connection with the sale* of" specified vehicles (MSPA, § 2.3(a)(vii)), the effect was

that *New GM only assumed the obligation to fund and otherwise support the standard limited*

*warranty of repair issued by Old GM.* (emphasis added). *See* Sale Order, ¶ 56 (New GM

assumed express warranties "subject to conditions and limitations contained" therein).    This

Court previously found as such in *Castillo et al. v. General Motors Co.*, Adv. Proc. No. 09-

00509, Decision After Trial, dated April 17, 2012 ("***Castillo* Decision**"), where it stated that

"[t]he Assumed Liabilities are described as the express warranties that customers receive which

are 'delivered in connection with the sale of new, certified used, or pre-owned vehicles . . . .'"

*Castillo* Decision, at 21.    This is important because, as the Court found in the *Castillo* Decision,

"it was the intent and structure of the 363 Sale, as agreed on by the Auto Task Force and Old

GM, that New GM would start business with as few legacy liabilities as possible, and that

presumptively, liabilities would be left behind and not assumed."    *Id.* at 5-6; *see also id.* at 7

("The goal of the 363 Sale noted above-- with New GM assuming as few liabilities as necessary-

-was expressly stated in open court on the first day of GM's chapter 11 case, on June 1, 2009.").

10

29.     The Court also noted in the *Castillo* Decision that if "the restructuring were to succeed, and New GM were to be viable, New GM would need to take on only those liabilities that were important to its ability to continue the business." *Castillo* Decision, at 4-5.  While New GM agreed to assume obligations under Glove Box Warranties that continued in existence after the closing of the 363 Sale because such obligations were important to New GM and customer satisfaction, the liabilities asserted by Elgohary in the State Court Action were not such claims. It is indisputable that at no time did Elgohary ever present the Vehicle to New GM for repair.

30.     Even if Elgohary had presented the Vehicle for repair to New GM in a timely manner, the Glove Box Warranty would not be implicated.  The exclusions contained therein foreclose the relief Elgohary now seeks.  Specifically, the Glove Box Warranty expressly excludes from coverage damage caused by fire.  *See* Glove Box Warranty, at 9.

31.     Moreover, the fire occurred in the Vehicle in January, 2008, 18 months before New GM purchased Old GM's assets.  The MSPA provides that New GM did not assume liabilities based on accidents or incidents that occurred prior to the closing of the 363 Sale.  *See* MSPA, § 2.3(b)(ix)(New GM did not assume "Product Liabilities arising in whole or in part from any accidents, incidents or other occurrences that happen prior to the Closing Date").  *See also In re General Motors Corp.*, 407 B.R. 463, 499-507 (Bankr. S.D.N.Y. 2009) (overruling objections by tort claimants seeking to preserve claims against New GM).  Here, the incident in question occurred well prior to the closing of the 363 Sale and, thus, cannot be found to have been assumed by New GM.  This result is not altered in any way by New GM agreeing to assume only those liabilities that are expressly referenced in the Glove Box Warranty (here, as note above, the Glove Box Warranty expressly excludes claims based on fire).

32.     In addition, the Glove Box Warranty contains the following additional limitations on Old GM's liability:

11

• "GM shall not be liable for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty or any implied warranty." (Glove Box Warranty, at 11.)

• "Economic loss or extra expense is not covered.  Examples include:

> • Loss of vehicle use
> • Inconvenience
> • Storage
> • Payment for loss of time or pay
> • Vehicle rental expense
> • Lodging, meals, or other travel costs
> • State or local taxes required on warranty repairs" (*Id.*)

• "Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty." (*Id.*)

33.     In short, except for the repair and replacement obligations expressly contained in the Glove Box Warranty, New GM did not assume other liability claims relating to alleged "warranties."  Indeed, to say New GM assumed "warranty liabilities" is misleading and wrong in more contexts than it is correct.    Under the Sale Order, New GM assumed liability only for "repairs and needed adjustments" and not for any other damages, including economic loss or expenses; these types of damages are what Elgohary is seeking in the State Court Action against Old GM.

34.     To be sure, New GM understands that the distinction between the express limited warranty delivered at the time of sale and other concepts that commonly involve use of the word "warranty" (such as "statutory warranties," "implied warranties," and "express warranties" contended to arise by reason of writing or statements other than Old GM's express limited warranty) may be difficult for a layman to understand.  However, the Sale Order expressly made this point clear when it provided that New GM "is assuming the obligations of [Old GM] pursuant to and *subject to conditions and limitations contained in* their express written warranties . . . ."  Sale Order, ¶ 56 (emphasis added).  Moreover, to avoid confusion, the Sale Order states that New GM "is not assuming responsibility for Liabilities contended to arise by

12

virtue of other alleged warranties, including implied warranties and statements in materials such as, without limitation, individual customer communications, owner's manuals, advertisements, and other promotional materials, catalogs and point of purchase materials." *Id.* Similarly, the MSPA expressly excluded any liabilities "arising out of, related to or in connection with any (A) implied warranty or other implied obligation arising under statutory or common law without the necessity of an express warranty or (B) allegation, statement or writing by or attributable to [Old GM]." MSPA, § 2.3(b)(xvi).

35.     In sum, because (i) the Sale Order and the MSPA expressly provide that New GM has not assumed any liability for any alleged breach of Old GM's express warranty ***except for*** the repair and service of Old GM vehicles, and (ii) damages caused by fire, and other economic losses are specifically excluded from the Glove Box Warranty, New GM did not assume the liabilities alleged in Elgohary's State Court Action.

**B.     Elgohary Should Be Judicially Estopped
From Asserting His Claims Against New GM**

36.     Elgohary's argument in this matter is, essentially, that New GM assumed the liabilities asserted in the Complaint as part of the 363 Sale from Old GM to New GM. If that were true (which it is ***not***, as set forth above), then Old GM could not also be liable for those same liabilities. Yet, Elgohary did not withdraw either of the Elgohary Proofs of Claim, and one of those claims has been allowed (albeit in a reduced amount). Elgohary cannot have it both ways. As one of his claims has been allowed against Old GM by Court Order, Elgohary is now judicially estopped from asserting his claims against New GM.

37.     The elements of judicial estoppel are: "1) a party's later position is "clearly inconsistent" with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would

13

derive an unfair advantage against the party seeking estoppel." *DeRosa v. Nat'l Envelope Corp.*, 595 F.3d 99, 103 (2d Cir. 2010) (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).

38.     The first and third elements of the judicial estoppel test are clearly satisfied here. With respect to the first element, Elgohary, in his Complaint, is asserting that New GM is liable for the liabilities associated with the damage to his Vehicle.  In Old GM's bankruptcy case, he asserted, through the Elgohary Proofs of Claim, that Old GM was liable for the very same liabilities.  Either Old GM is liable or New GM is liable -- they both cannot be liable for the same claims.  Accordingly, Elgohary's position in his Complaint and in the Elgohary Proofs of Claim is "clearly inconsistent."  The first element is, thus, satisfied.

39.     With respect to the third element (*i.e.*, Elgohary deriving an unfair advantage), by filing his claims against Old GM, Elgohary conceded that he had claims against Old GM on the very claims that he is asserting against New GM.  By seeking to also obtain a recovery from New GM through the State Court Action, when he has already obtained an allowed claim against Old GM, would clearly provide an unfair advantage to Elgohary as he will, in essence, receive two recoveries if he is permitted to pursue relief in the State Court Action.  The third element is, thus, also satisfied.

40.     This leaves the second element, *i.e.*, that Elgohary's position with respect to the Elgohary Proofs of Claim has been adopted in some way by this Court.  As stated by the District Court for the Southern District of New York in *Jalee Consulting Group, Inc. v. XenoOne, Inc.*, No. 11 Civ. 4720 (RJS) (JCF), 2012 WL 4510676 (S.D.N.Y. Sept. 29, 2012):

> With respect to the second prong of the test for judicial estoppel, the precise meaning of "adopted" is not well settled. Second Circuit case law provides that a "favorable judgment" constitutes adoption, *see, e.g., Mitchell v. Washingtonville Cent. Sch. Dist.*, 190 F.3d 1, 6 (2d Cir. 1999), but it has not defined what actions short of final judgment constitute adoption. The Supreme Court has suggested in dicta that a final judgment is not the only way a position may be adopted. *See Pegram v. Herdrich*, 530 U.S. 211,

14

227 n. 8 (2000) ("Judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase.").

*Jalee Consulting*, 2012 WL 4510676, at \*9.

41.     Here, this Court allowed claim number 46626, adopted Elgohary's position that he had a valid and enforceable claim against Old GM.  By filing the Elgohary Proofs of Claim, Elgohary necessarily wanted this Court to adopt his argument, *i.e.*, that he has valid claims against Old GM.  By not withdrawing the Elgohary Proofs of Claim, and permitting one of his claims to be allowed in Old GM's bankruptcy case by Court Order, Elgohary has conceded that his claims are against Old GM, and not New GM.  Accordingly, Elgohary is judicially estopped from asserting his purported claims against New GM through the State Court Action.

**C.     Elgohary May Not Be the Proper Claimant**

42.     As noted, Allstate filed the Allstate Proof of Claim asserting a claim for damages based on the very same facts as those asserted in the Elgohary Proofs of Claim and in the Complaint.  According to the Allstate Proof of Claim, Allstate filed its proof of claim as "subrogee of Door Quest," an entity affiliated with Elgohary.[9]  The Allstate Proof of Claim references the same Vehicle as referenced in the Complaint and in the Elgohary Proofs of Claim (Vehicle Identification No. 1GCGG25V371117652), and sets forth the same facts as detailed in the Complaint and the Elgohary Proofs of Claim (*i.e.*, that Elgohary was driving the Vehicle when it caught on fire on January 2, 2008).

43.     Black's Law Dictionary defines "subrogation" as "[t]he principle under which an insurer that has paid a loss under an insurance policy is entitled to all the rights and remedies belonging to the insured against a third party with respect to any loss covered by the policy."

_____

[9]   It is not clear from a review of the documents who the proper owner of the Vehicle was -- Elgohary or Door Quest.

BLACK'S LAW DICTIONARY (9th Ed. 2009).  *See also Wells Fargo Bank N.A. v ESM Fund I, LP*, 785 F.Supp.2d 188, 197 (S.D.N.Y. 2011)(quoting Black's Law Dictionary definition of "subrogation").  Moreover, "[t]he doctrine of equitable subrogation allows insurers to 'stand in the shoes' of their insured to seek indemnification by pursuing any claims that the insured may have had against third parties legally responsible for the loss." *Allstate Ins. Co. v. Mazzola*, 175 F.3d 255, 258 (2d. Cir. 1999).  As Allstate represented that it stepped into the shoes of Door Quest, Door Quest (and, derivatively, Elgohary) should no longer have any rights against either Old GM or, for that matter, New GM.

**D.    This Court Should Enforce the Sale Order by Directing
That the State Court Action be Dismissed with Prejudice**

44.    As demonstrated above, all of Elgohary's claims asserted in the State Court Action cannot be asserted against New GM.  The Sale Order unambiguously states that "all persons and entities, including, but not limited to . . . ***litigation claimants*** and [others] holding liens, claims and encumbrances, and other interest of any kind or nature whatsoever, including rights or claims based on any successor or transferee liability . . . are forever ***barred, stopped and permanently enjoined*** . . . from asserting against [New GM], its successors or assigns, its property, or the Purchased Assets, such persons' or entities' [rights or claims], including rights or claims based on any successor or transferee liability." Sale Order, ¶ 8 (emphasis added).

45.    Based on the foregoing, the liabilities asserted by Elgohary were never assumed and transferred to New GM as part of the sale of Old GM's assets and, thus, the claims asserted in the Complaint against New GM constitute a violation of the Sale Order and the injunctive provisions contained therein.  *See* Sale Order, ¶¶ 8, 9, 46, 47.  Accordingly, the Court should enforce the terms of the Sale Order by ordering Elgohary to promptly dismiss the State Court Action with prejudice, and to cease and desist from all efforts to assert the claims attempted to be asserted in the State Court Action against New GM.

16

46.    Bankruptcy Courts have the inherent authority to enforce their orders: "[a]ll courts, whether created pursuant to Article I or Article III, have inherent contempt power to enforce compliance with their lawful orders. The duty of any court to hear and resolve legal disputes carries with it the power to enforce the order." *U.S. Lines, Inc. v. GAC Marine Fuels, Ltd. (In re McClean Indus., Inc.)*, 68 B.R. 690, 695 (Bankr. S.D.N.Y. 1986). Section 105 of the Bankruptcy Code also provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out" the Bankruptcy Code's provisions and this section "codif[ies] the bankruptcy court's inherent power to enforce its own orders." *Back v. AM Gen. Corp. (In re Chateaugay Corp.)*, 213 B.R. 633, 640 (S.D.N.Y. 1997); 11 U.S.C. § 105(a).

47.    More specifically, this Court retains subject matter jurisdiction to enforce the Sale Order, as it "is axiomatic that a court possesses the inherent authority to enforce its own orders" and agreements approved by the court. *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("In the bankruptcy context, courts have specifically, and consistently, held that the bankruptcy court retains jurisdiction, *inter alia*, to enforce its confirmation order."), *aff'd*, No. 09-932, Adv. 99-47, Civ. A. 99-795-SLR, 2000 WL 1425751 (D. Del. Sept. 12, 2000), *aff'd*, 279 F.3d 226 (3d Cir. 2002), *cert. denied*, 537 U.S. 944 (2002); *Travelers Indemn. Co. v. Bailey*, 129 S. Ct. 2195, 2205 (2009) ("as the Second Circuit recognized, . . . the Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior orders.").

48.    Additionally, pursuant to Paragraph 71 of the Sale Order and Section 9.13 of the MSPA, this Court retained exclusive jurisdiction "to enforce and implement the terms and provisions of this [Sale] Order [and] the M[S]PA . . . ." *See* Sale Order ¶ 71; MSPA Art. IX, § 9.13. Elgohary's reference to the MSPA in his April 25, 2012 Letter (contained in Exhibit "H" hereto) demonstrates that he was on notice of the MSPA and Sale Order, and the provisions contained therein.

49.    This Court, on previous occasions, has stated that it has exclusive jurisdiction in the first instance to interpret and enforce the provisions of the Sale Order.  *See* Transcript of Hearing held on November 18, 2010, at 28:23 - 29:3 (in connection with a motion by New GM seeking to enforce the Sale Order and certain agreements approved therein, the Court ruled that it "plainly [had] exclusive jurisdiction in the first instance of this dispute and that Ramp should have come to me first in connection with the dispute over the construction of the wind-down agreement [the form of which was approved in the Sale Order] or its enforcement, including most significantly, its desire to get amounts asserted to be due under the wind-down agreement."); *Castillo v. General Motors Company*, Adv. Proc. No. 09-00509 (REG), Transcript of Hearing held on May 6, 2010, at 9:3 - 9:14 ("when you are looking for a declaratory judgment on an agreement that I approved [*i.e.*, the MSPA] that was affected by an order that I entered [*i.e.*, the Sale Order], and with the issues permeated by bankruptcy law as they are, and which also raise issues as to one or more injunctions that I entered, how in the world would you have brought this lawsuit in Delaware Chancery Court.  I'm not talking about getting in personam jurisdiction or whether you can get venue over a Delaware corporation in Delaware.  I'm talking about what talks and walks and quacks like an intentional runaround of something that's properly on the watch of the U.S. Bankruptcy Court for the Southern District of New York.").

50.    New GM has been forced to incur unwarranted costs and expenses and has had to deal with the distraction and imposition of baseless litigation.  In view of the clear provisions of the Sale Order, New GM should not be under any obligation to defend itself and its rights in the State Court Action.  Rather, this Court should enforce the terms and provisions of the Sale Order, and direct Elgohary to dismiss the State Court Action against New GM, with prejudice, forthwith.

51.     Even aside from this indisputable harm, settled law holds that when a party unilaterally violates a Bankruptcy Court order, that violation, standing alone, constitutes the only harm necessary for a new order specifically enforcing the prior order.  *See, e.g.*, *Balanoff v. Glazier (In re Steffan)*, 97 B.R. 741, 746 (Bankr. N.D.N.Y. 1989) (noting that "the usual equitable grounds for relief, such as irreparable damage, need not be shown" in injunctions in bankruptcy cases) (quotation omitted).

52.     As noted above, prior to filing this Motion, New GM requested in writing that Elgohary comply with the Sale Order and dismiss the State Court Action.  Elgohary refused to do so.  New GM, therefore, reserves its rights to seek from Elgohary its costs and expenses (including attorneys' fees) incurred in connection with Elgohary's knowing violation of the Sale Order.

## NOTICE

53.     Notice of this Motion has been provided to (a) counsel for Elgohary and (b) parties in interest in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011 [Docket No. 10183].  New GM submits that such notice is sufficient and no other or further notice need be provided.

54.     No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, New GM respectfully requests that this Court: (i) enter an order substantially in the form attached hereto as Exhibit "I", granting the relief sought herein; and (ii) grant New GM such other and further relief as the Court may deem just and proper.

Dated: New York, New York
　　　　December 3, 2012　　　　　　　　Respectfully submitted,


　　　　　　　　　　　　　　　　　　　___/s/ Scott Davidson_____
　　　　　　　　　　　　　　　　　　　Arthur Steinberg
　　　　　　　　　　　　　　　　　　　Scott Davidson
　　　　　　　　　　　　　　　　　　　KING & SPALDING LLP
　　　　　　　　　　　　　　　　　　　1185 Avenue of the Americas
　　　　　　　　　　　　　　　　　　　New York, New York  10036
　　　　　　　　　　　　　　　　　　　Telephone:  (212) 556-2100
　　　　　　　　　　　　　　　　　　　Facsimile:  (212) 556-2222

　　　　　　　　　　　　　　　　　　　*Attorneys for General Motors LLC*
　　　　　　　　　　　　　　　　　　　*f/k/a General Motors Company*