Hearing Date and Time: December 13, 2012 at 9:45 a.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
 Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                            :
**In re**                                  :    **Chapter 11 Case No.**
                                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.*,  :    **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*  :
                                                            :
                            Debtors.        :    **(Jointly Administered)**
                                                            :
-------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY GUC TRUST'S**
**REPLY TO ROLLS-ROYCE CORPORATION'S RESPONSE TO**
**THE SUPPLEMENTAL OBJECTION TO PROOF OF CLAIM NO. 65807**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

    The Motors Liquidation Company GUC Trust (the "**GUC Trust**"),[1] formed by

the above-captioned debtors (collectively, the "**Debtors**") in connection with the *Debtors'*

*Second Amended Joint Chapter 11 Plan*, dated March 18, 2011, files this reply (the "**Reply**") to

the *Response to Supplemental Objection of the Motors Liquidation Company GUC Trust to*

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to such term in the *Motors Liquidation Company GUC Trust's Supplemental Objection to Proof of Claim No. 65807 Filed By Rolls-Royce Corporation* (**ECF No. 12201**) (the "**Supplemental Objection**")**.**

*Proof of Claim No. 65807 Filed by Rolls-Royce Corporation* (**ECF No. 12228**) (the "**Rolls-Royce Response**"), and respectfully represents:

### Preliminary Statement

1. Since the filing of the Supplemental Objection, the parties have consensually resolved all aspects of the Rolls-Royce Claim except the Future Environmental Remediation Portion.[2] As such, the allowance of the Future Environmental Remediation Portion is the only issue currently before the Court.

2. Through the Future Environmental Remediation Portion, the Claimant seeks the reimbursement of contingent remediation costs that have not yet been incurred with respect to the Facility. The Claimant asserts in the Rolls-Royce Response that section 502(e)(1)(B) of the Bankruptcy Code is not applicable to such remediation costs because the Claimant is not co-liable with the Debtors. (Response at 4) Nevertheless, the Claimant acknowledges in the Rolls-Royce Response that, "by operation of law [the Claimant], as the successor owner [of the Facility], became statutorily liable for the remediation of the Facility…" (Response at 4) Under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("**CERCLA**"), codified at 42 U.S.C. §§ 9601 *et seq.*, joint and several liability to governmental authorities is imposed not only on the current owner of a property, such as the Claimant, but also on any person who previously owned or operated the property, such as the Debtors in this instance. *See* CERCLA § 107(a); 42 U.S.C. § 9607(a). As the Claimant and the Debtors are both liable for the remediation of the Facility, the Future Environmental Remediation Portion should be disallowed pursuant to section 502(e)(1)(B).

---

[2] Pursuant to the agreement of the parties, the Claimant will be allowed a general unsecured claim in the amount of $1,404,798 and maintains a disputed general unsecured claim for the Future Environmental Remediation Portion in the amount of $6,144,704.

3.  In connection with the defense of the Rolls-Royce Claim, the Claimant recently issued to the GUC Trust a request for the production of documents relating to the Facility. The Claimant is seeking such discovery to refute the GUC Trust's assertion in the Supplemental Objection that, even assuming the Future Environmental Remediation Portion is not disallowable under section 502(e)(1)(B), the Claimant has not provided sufficient support for the damages calculated by the Claimant in the Schedules. The GUC Trust has begun to comply with the Claimant's discovery request, which is currently due by December 30, 2012. However, as the discovery sought by the Claimant would be moot if the Court disallows the Future Environmental Remediation Portion under section 502(e)(1)(B), the GUC Trust requests that the Court rule on the threshold issue of 502(e)(1)(B) at the hearing on the Supplemental Objection which is currently scheduled for December 13, 2012. In the event that the Court does not disallow the Future Environmental Remediation Portion at that time, the GUC Trust will request a schedule for the completion of discovery. Many, if not all, of the documents sought by the Claimant may be in the possession of General Motors LLC ("**New GM**") and will take time to retrieve.

### The Claimant Incorrectly Asserts in its Response that it is Not Co-Liable with the Debtors Under Section 502(e)(1)(B)

4.  To support the assertion that the Claimant is not co-liable with the Debtors as to the Future Environmental Remediation Portion, the Claimant cites solely to the case of *In re Allegheny International, Inc.* 126 B.R. 919 (W.D. Pa. 1991).[3] In *Allegheny,* a current owner of contaminated land filed a claim against a bankrupt former owner for future remediation costs. *In re Allegheny International, Inc.* 126 B.R. at 920-921. The *Allegheny* court found that the

---

[3] The Claimant asserts in its response that the GUC Trust deliberately avoided addressing the *Allegheny* decision in the Supplemental Objection. However, the GUC Trust did not discuss the decision because of a good faith desire to avoid revealing the positions asserted by the Claimant during the course of settlement discussions.

claim did not seek to recover sums owed to a third party, such as the Environmental Protection Agency ("**EPA**"), but instead sought to recover sums the claimant would itself expend in the future to remediate the contaminated property. In holding that such a claim was a direct claim that could not be disallowed under section 502(e)(1)(B), the court stated that "[c]ontrary to debtor's contention . . . the distinction between a cleanup performed by [the creditor] and a cleanup performed by the EPA is crucial." *Id* at 923.

5. While the facts in *Allegheny* are admittedly similar to those presented here, this Court has on more than one occasion joined other courts from around the country in expressly disagreeing with and rejecting the *Allegheny* holding. *See, e.g., In re Lyondell*, 442 B.R. 236 (Bankr. S.D.N.Y. 2011); *In re Chemtura Corp.*, 443 B.R. 601, 622 (Bankr. S.D.N.Y. 2011); *In re Drexel Burnham Lambert Group, Inc.,* 148 B.R. 982, 988 (Bankr. S.D. N.Y. 1992); *In re Eagle Picher Indus.,* 164 B.R. 265, 271 (S.D. Ohio 1994); *In re Cottonwood Canyon Land Co.*, 146 B.R. 992, 996 (Bankr. D. Colo. 1992).

6. Rather than follow the *Allegheny* decision, most courts analyzing the issue of co-liability, including this Court, have followed the holding in *Cottonwood Canyon*, which addressed facts similar to those presented both here and in *Allegheny*. In *Cottonwood Canyon,* a current landowner filed a claim against a debtor for future remediation costs that were due to the current owner pursuant to the property sale agreement between the parties, which provided that the debtor would indemnify the current owner for any contamination that existed at the time of the sale. *In re Cottonwood Canyon Land Co.*, 146 B.R. at 994. In that case, the claimant also raised the *Allegheny* decision in defense to an objection brought by the debtor under section 502(e)(1)(B). While the claimant argued that its claim for reimbursement of future cleanup costs was a direct claim against the debtor, the *Cottonwood Canyon* court disagreed:

> It would clearly appear that a claim for reimbursement or contribution under either the California statute, CERCLA or the indemnification provisions of the contract is, by definition, a claim to recover costs incurred by reason of [the claimant's] liability for cleanup as the "owner" of the site, which is the same liability [the debtor] has for cleanup as the party which deposited the hazardous substances in the first instance. Such a claim would necessarily be one for liability for which both [the debtor] and [the claimant] are responsible and would fall within the ambit of 11 U.S.C. § 502(e).

*Id.* at 996. The *Cottonwood Canyon* court found the claimant to be co-liable with the debtor and disallowed the claim pursuant to section 502(e)(1)(B).

    7.  Consistent with the reasoning in *Cottonwood Canyon*, the Future Environmental Remediation Portion should be disallowed under section 502(e)(1)(B). Given that the Debtors previously owned and operated the Facility, which is contaminated with hazardous substances, EPA does have a claim against the Debtors under CERCLA for any associated cleanup costs. EPA also has a claim under CERCLA against the Claimant as the current owner of the contamination Facility. The fact that EPA could bring claims against both the Claimant and the Debtors under CERCLA for the same environmental contamination at the same Facility clearly demonstrates the co-liability that the Claimant is at pains to deny.

    8.  While the EPA did not file a claim in these bankruptcy cases as to the Facility, the Claimant and the Debtors are nevertheless co-liable to EPA for the Future Environmental Remediation Portion. As this Court stated in *In re Wedtech Corp.*:

> Contrary to claimants' argument that the co-liability of debtor and claimant requirement of § 502(e)(1)(B) permits that section to apply only where the underlying plaintiff has filed a claim in the bankruptcy case and that claim has been allowed, the statutory language of § 502(e)(1)(B) contains no such requirement. In enacting the provision, Congress merely provided for disallowance of contingent claims for reimbursement filed by persons liable with the debtor. To be sure, the legislative history concerning § 502(e) indicates that a principal purpose of the entire subsection is to prevent a double payment by the estate, and there can be no such

> double payment if the plaintiff fails to file a claim. But the language of § 502(e)(1)(B) is, unlike § 502(e)(1)(A), not so limited. That § 502(e)(1)(A), in mandating disallowance of claims for contribution to the extent that the creditors' claims against the estate are disallowed, does contain such a requirement indicates that Congress knew how to enact such a provision. Its failure to do so in § 502(e)(1)(B) indicates that the purpose of disallowing contingent indemnity and contribution claims is precisely because they are so contingent. Section 502(e)(2) supports that notion by enabling allowance of reimbursement and contribution claims seeking fixed amounts and are thus no longer contingent.

*In re Wedtech Corp.,* 85 B.R. 285, 290 (Bankr.S.D.N.Y.1988); *In re Chemtura Corp.* 436 B.R. 286, 294 (Bankr. S.D.N.Y. 2010) ("In simple terms, section 502(e)(1)(B) is applicable whether the underlying claimant files a proof of claim or not."); *see* Transcript of May 31, 2012 Hearing at 73-74, *In re Motors Liquidation Company, et al.*, Case No. 09-50026 (Bankr. S.D.N.Y. May 31, 2012) (ECF No. 11803)[4] (disallowing claim pursuant to section 502(e)(1)(B) despite the absence of an underlying claim by the government); *In re Cottonwood Canyon Land Co.*, 146 B.R. at 997 ("Section 502(e) is not premised on the actual filing of multiple claims but, rather, on the existence of such claims.").

9. The Rolls-Royce Response provides no additional arguments refuting the GUC Trust's allegations in the Supplemental Objection that the Future Environmental Remediation Portion is subject to disallowance under section 502(e)(1)(B). For the reasons set forth above and in the Supplemental Objection, the GUC Trust respectfully submits that the Future Environmental Remediation Portion should be disallowed pursuant to section 502(e)(1)(B).

---

[4] A copy of this transcript from the May 31, 2012 hearing is annexed to the Supplemental Objection.

## The Claimant Incorrectly Asserts that the Future Environmental Remediation Portion Should Not be Discounted Beyond the Inflation Rate

10. The GUC Trust stated in its Supplemental Objection that, even if the Future Environmental Remediation Portion is not disallowed under section 502(e)(1)(B), the $6,144,704 sought by the Claimant on account of such portion is overstated because the amount was not discounted to present value despite the Claimant's assertion that such remediation costs will be incurred over the next 30 years. *See In re Trace Int'l Holdings Inc.*, 284 B.R. 32, 39 (Bankr. S.D.N.Y. 2002) ("Any portion of a claim that is unmatured as of the petition date must . . . be discounted to its value as of the petition date.") (citations omitted).

11. In response, the Claimant states that the Future Environmental Remediation Portion assumes a 2.83% discount rate, which equals the prevailing 30-year yield on U.S. Treasury Bonds. However, the Claimant asserts that such discount is completely offset after taking into account inflation. (Rolls-Royce Response at 5-6) The position taken by the Claimant is unreasonable given that the EPA's policy on the use of discount rates is that a 7% "real" rate, which is already reduced on account of inflation, should be used by parties in developing cost estimates for remedial actions. NCP, 55 Fed. Reg. 8666-01, 8722 (March 8, 1990) (codified at 40 C.F.R. Pt. 300); OSWER Directive 9355.3-20, "*Revisions to OMB Circular A-94 on Guidelines and Discount Rates for Benefit-Cost Analysis*" (EPA 1993). The appropriate discount rate and inflation rates will be addressed in discovery through any trial or post-trial submissions.

**Conclusion**

WHEREFORE, the GUC Trust respectfully requests that the Court disallow and expunge the Future Environmental Remediation Portion and grant such other and further relief as is just.

Dated: New York, New York
December 7, 2012

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
 Company GUC Trust