HEARING DATE: January 17, 2013 at 9:45 a.m. (Eastern Time)
RESPONSE DATE AND TIME: January 8, 2013 at 5:00 p.m. (Eastern Time) (By Agreement)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone: (212) 556-2100
Facsimile: (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Counsel to General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ---------------------------------------------------------------x | | |
| **In re:** | : | **Chapter 11** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **Case No.: 09-50026 (REG)** |
| **f/k/a General Motors Corp.**, *et al*. | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |
| ---------------------------------------------------------------x | | |

**RESPONSE BY GENERAL MOTORS LLC TO OBJECTION
TO PROOF OF CLAIM OF GENERAL MOTORS LLC
(CLAIM NO. 71111) AND MOTION REQUESTING
<u>ENFORCEMENT OF ADMINISTRATIVE CLAIM BAR DATE ORDER</u>**

19994437v9

# TABLE OF CONTENTS

A.  **The Course Of Dealing Between Old GM And New GM, The Sale Order And The Confirmation Order, All Preserved New GM's Ability To Assert An Administrative Expense Claim Against The Debtors After The First Administrative Bar Date** …………………………………1

B.  **Certain Aspects Of New GM's Administrative Expense Claim** …………………..4

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Pioneer Inv. Services Co. v. Brunswick Assoc. Ltd. P'Ship*, 507 U.S. 380 (1993) ........................10

**FEDERAL RULES**

Rule 30(b)(6) of the Federal Rules of Civil Procedure ..................................................................7

Rule 60(b) of the Federal Rules of Civil Procedure ........................................................4, 5, 7, 8, 9

General Motors LLC (f/k/a General Motors Company) ("**New GM**"), by and through its undersigned counsel, hereby submits this response ("**Response**") to the *Objection To Proof Of Claim Of General Motors LLC (Claim No. 71111) And Motion Requesting Enforcement Of Administrative Claim Bar Date Order*, dated December 6, 2012 ("**Motion**"), filed by the Motors Liquidation Company GUC Trust ("**GUC Trust**").  In support of this Response, New GM respectfully represents as follows:

1. In the Motion, the GUC Trust does not dispute that New GM filed its Administrative Expense Claim on April 25, 2011, prior to the Second Administrative Bar Date.[1] The sole ground in the Motion for objecting to New GM's Administrative Expense Claim is the GUC Trust's assertion that it was filed after the First Administrative Bar Date and was thus, untimely.  The GUC Trust's Motion is premised on the notion that any claim New GM may have against the Debtors is based on the Sale, which closed in July, 2009, during the First Administrative Bar Date period (June 1, 2009 through January 31, 2011).  As demonstrated below, the GUC Trust's analysis is faulty, and New GM's Administrative Expense Claim was timely filed.

A. **The Course Of Dealing Between Old GM And New GM, The Sale Order And The Confirmation Order, All Preserved New GM's Ability To Assert An Administrative Expense Claim Against The Debtors After The First Administrative Bar Date**

2. The Order entered on March 29, 2011 confirming the Debtors' Plan ("**Confirmation Order**") -- which was entered after the First Administrative Bar Date -- specifically recognized that there were continuing obligations between Old GM and New GM, and that various agreements in favor of New GM would continue to be performed by post-Effective Date Old GM and, ultimately, by the Trusts established under the Plan.  In particular,

---

[1] Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Motion.

19994437v9

paragraph 11(b) of the Confirmation Order[2] identified eight agreements which were to be performed by the Environmental Response Trust ("**ERT**").  Paragraph 11(c) of the Confirmation Order stated that there may be other agreements which, prior to the dissolution of post-Effective Date Old GM, were to be assigned by Old GM to the ERT or the GUC Trust.  These provisions clearly demonstrate an agreement by Old GM that, notwithstanding the existence of the First Administrative Bar Date, Old GM would continue to comply with its outstanding obligations to New GM, until such obligations were assigned to the applicable Trusts, after which time they would be performed by the Trusts.  The GUC Trust's Motion, which is reliant on the First Administrative Bar Date, is contrary to the established course of dealing between Old GM and New GM as reflected by the afore-cited provisions of the Confirmation Order.

3.     By way of example, the negotiations between Old GM and New GM regarding certain provisions of the Confirmation Order and which contracts would be assigned to the ERT actually took place after the First Administrative Bar Date, but before the Second Administrative Bar Date.  Moreover, in its Administrative Expense Claim, New GM referenced, as illustrative, a letter agreement it entered into with Old GM, on or about March 28, 2011 ("**March 28 Letter Agreement**"), that concerned a cost-sharing arrangement between the parties regarding the transportation and disposal of hazardous wastes at certain sites.  *See* Administrative Expense Claim, at n. 1.  The March 28 Letter Agreement was entered into after the First Administrative Bar Date, but before the Second Administrative Bar Date.  Clearly, any claim based on the March 28 Letter Agreement would not have arisen until after the First Administrative Bar Date, and, thus, such claim would be governed, if at all, by the Second Administrative Bar Date.

4.     New GM's Administrative Expense Claim specifically noted the reality set forth in the Confirmation Order that Old GM would continue to perform obligations owed to New GM

---

[2] The relevant sections of the Confirmation Order are annexed hereto as Exhibit "A."

2

after the First Administrative Bar Date, and that "there may be agreements between one or more of the Debtors and New GM that in the future may not be fully performed, or which may not be assigned to the Environmental Response Trust or the GUC Trust before Old GM ceases to exist in accordance with the Plan."  Administrative Expense Claim, ¶ 6.

5. New GM thus filed its Administrative Expense Claim "out of an abundance of caution to preserve and reserve all of its rights to assert an administrative expense claim against one or more of the Debtors if the facts and circumstance so warrant." *Id.*

6. Tellingly, as of this date, the Master Lease Agreement (Subdivision Properties) ("**MLA-SP**") referenced in paragraph 11(b) of the Confirmation Order has not been fully performed by the ERT.  For example, for certain of the sites referenced in the MLA-SP, the ERT has not been able to transfer title to New GM as required by the MLA-SP.  New GM continues to work with the ERT to obtain title to all property that is to be transferred to New GM pursuant to the MLA-SP. In addition to the MLA-SP, other agreements also referenced in paragraph 11(b) of the Confirmation Order have not been fully performed by the ERT, including, among others, (i) the Master Lease Agreement (Excluded Manufacturing Assets); and (ii) the Access Agreement for lender equipment at Parma, Ohio, and the Letter Agreement, dated February 24, 2011,[3] which amended and supplemented the Access Agreement.  Moreover, it should be noted that, since its formation, the ERT has entered into other contracts with New GM to address environmental issues between Old GM and New GM.

7. Aside from the Confirmation Order, the Sale Order stated that the Plan or the Confirmation Order could not derogate from the provisions of the MSPA or the Sale Order.  *See* Sale Order, ¶ 6.  The clear intent of that provision was that obligations incurred by Old GM

---

[3] This Letter Agreement, which amended and supplemented the Access Agreement, was entered into after the First Administrative Bar Date, but before the Second Administrative Bar Date.  This illustrates that it was never Old GM's intention that New GM would be bound by the First Administrative Bar Date.

3

under the Sale Order would not be curtailed (without the consent of New GM) in a subsequent order of the Court. The GUC Trust's Motion, based on the First Administrative Bar Date, is contrary to the intent of the aforementioned provision of the Sale Order.

8. In sum, (a) the negotiations and agreements between Old GM and New GM which occurred after the First Administrative Bar Date, and (b) the provisions of the Confirmation Order and Sale Order, clearly demonstrate that neither Old GM nor New GM believed that New GM's entitlement to enforce its obligations against Old GM was governed by the First Administrative Bar Date. As such, the Motion, which seeks to strike the Administrative Expense Claim as being untimely because it was filed after the First Administrative Bar Date, should be denied.

B. **Certain Aspects Of New GM's Administrative Expense Claim**

9. Counsel for the GUC Trust called counsel for New GM prior to filing the Motion, as a courtesy, and indicated that it would be filing an objection to New GM's Administrative Expense Claim. Counsel for New GM urged counsel for the GUC Trust not to do so at this time, since the *GM Nova Scotia* trial was pending, and it believed that there may be issues relating to the Administrative Expense Claim which could overlap with issues raised at the *GM Nova Scotia* trial. In particular, counsel for New GM expressed a concern with whether the GUC Trust was seeking, in the *GM Nova Scotia* trial, relief relating to the Sale Order pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. If it were, or was otherwise seeking to undo the benefit of the bargain obtained by New GM under the Sale, New GM's Administrative Expense Claim would include the damages arising therefrom. Notwithstanding this expressed concern, the GUC Trust filed the Motion.

4

10. The remaining paragraphs in this Section B are not intended to argue the merits of the portion of New GM's Administrative Expense Claim that relate to damages which may arise as a result of the *GM Nova Scotia* trial. Rather, it is intended to address the unfairness and inappropriateness of striking this aspect of the Administrative Expense Claim merely because New GM filed the Administrative Expense Claim after the First Administrative Bar Date.

11. From inception, it has been unclear whether there has been an actual request made by, first the Committee, and then the GUC Trust, under Rule 60(b) to vacate a portion of the Sale Order. As described below, the imprecise way in which this issue has been raised militates in favor of New GM's Administrative Claim being governed by the Second Administrative Bar Date -- and not the First Administrative Bar Date.

12. Specifically, a review of the Claims Objection filed by the Committee, and the events that have taken place since its filing, demonstrate the *bona fides* of New GM's position. The Committee first sought to "void" the Sale Order in the Claims Objection, but only in what it called a "protective" fashion, and only to the limited extent that it affected the allowance of claims filed by the Nova Scotia Noteholders or the GM Nova Scotia Trustee. Prior to the First Administrative Bar Date, neither Old GM nor New GM (the contract parties to the Sale) was made a party to the Claims Objection. The GUC Trust did not cite to a section of Rule 60(b) in the Claims Objection to support its position, and the entire discussion of Rule 60(b) was contained in one paragraph at the end of the Claims Objection.[4]

13. In December, 2010, New GM, although not technically a party to the Claims Objection, filed a pleading setting forth, among other things, its understanding that the Committee was only seeking Rule 60(b) relief to counter the Noteholders' anticipated argument that the assumption and assignment of the Lock-Up Agreement translated into the deemed

---
[4] The relevant excerpt of the Claims Objection discussing Rule 60(b) is annexed hereto as Exhibit "B."

5

"allowance" of certain claims against Old GM.  During this hearing, New GM stated that it did not believe this was the Noteholders' position as the Lock-Up Agreement specifically stated that the claims are valid and enforceable, but only "to the fullest extent permitted under applicable law."  Thus, it was self-evident that the issue regarding the allowance of these claims remained open for the Court to determine.

14. The Committee confirmed New GM's understanding as to its concerns at the initial hearing ("**December 16 Hearing**") on the Claims Objection, stating as follows:

> And we see now from the papers that were filed on Monday what we expected to see, which is that at least some of the parties are arguing that the assumption of the lockup agreement by Old GM means that there was a judicial finding that the lockup agreement was a reasonable exercise of the debtors' business judgment. They're trying to use the assumption itself to bootstrap arguments on the merits and to argue that the lockup agreement in its entirety is insulated from review.

Transcript of Hearing held on December 16, 2010, at 52:2 - 52:10.

15. Later on at the December 16 Hearing, the Committee stated as follows:

> But if that's the meaning of assumption, if the only meaning is that Mr. Karotkin and Weil Gotshal is not allowed to say anything bad about the lockup agreement, *I think we can live with that*. But that's not what they're going to argue the only meaning is. They're going to argue that the meaning of the assumption is that this was a reasonable exercise of Old GM's business judgment. And we certainly can't accept that there's already been a judicial finding as to that, since the creditors' committee and Your Honor was never apprised of what the consequences of this assumption and assignment were.

*Id.* at 54:4 - 54:13 (emphasis added).  Since it seemed clear, after the hearing in December, 2010, that no party was arguing that the assumption and assignment of the Lock-Up Agreement was any type of "judicial finding," as of the time of the First Administrative Bar Date, it did not seem

6

that, based on statements made by the Committee's counsel at the December 16 Hearing, that the Committee was still seeking Rule 60(b) relief relating to the Sale Order.

16.     Moreover, as noted, the Committee had labeled its Rule 60(b) request as "protective." By labeling the Rule 60(b) request in this novel way (as "protective"), it was not clear, at the time of the First Administrative Bar Date, whether anything was actually being then asserted by the Committee.[5]

17.     This issue (as to what the Committee/GUC Trust is asserting relating to Rule 60(b) relief) has only become murkier since the time of the First Administrative Bar Date. Based on statements made by the GUC Trust after the expiration of the Second Administrative Bar Date, New GM became concerned and formally sought status as a party with a right to be heard in the Claims Objection proceeding. Pursuant to an Order of the Court dated October 31, 2011, New GM was granted such status.[6] Thereafter, approximately 6 months later, at the deposition of David Vanaskey (the Rule 30(b)(6) witness for Wilmington Trust Company, the GUC Trust Administrator and the chairman of the Committee), it appeared that the GUC Trust could be seeking some form of Rule 60(b) relief based on a not fully articulated theory. As a result, New GM sought and received permission to file a summary judgment motion prior to the commencement of the *GM Nova Scotia* trial. In response to New GM's motion for summary judgment seeking dismissal of the GUC Trust's Rule 60(b) request, the GUC Trust stated that New GM's motion should be "denied because there is not yet a controversy with regard to Rule 60(b) and there may never be one." *GUC Trust's Memorandum of Law in Opposition to Summary Judgment Motion filed by General Motors LLC*, dated June 29, 2012, at ¶ 8.

---

[5] It is axiomatic that if the Committee was not seeking any relief directed at New GM, there would have been no Administrative Expense Claim against the Debtors on account of the Committee's actions in the *GM Nova Scotia* trial.

[6] A copy of the October 31, 2011 Order is annexed hereto as Exhibit "C."

18. This Court, in ruling on New GM's summary judgment motion, also found that the Rule 60(b) issue was not "ripe for decision yet and won't be until and unless we know that the GUC Trust will be in fact seeking 60(b) relief from the sale order, and we know the nature of the relief the GUC Trust seeks." Transcript of Hearing held on July 19, 2012, at 79:5 - 79:8.

19. Thereafter, in its pre-trial brief filed in connection with, *inter alia*, the Claims Objection, the GUC Trust appears to have now abandoned its "protective" Rule 60(b) request, stating that the "GUC Trust has not briefed, but reserves all of its rights in connection with, **_any future requests_** for relief from the Sale Order under" Rule 60(b). *GUC Trust's Pretrial Brief in Connection with (I) Official Committee of Unsecured Creditors' First Amended Objection to Claims filed by Green Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and Motion for Other Relief (Docket No. 7859) and (II) Motors Liquidation GUC Trust v. Appaloosa Investments Ltd. Partnership I, et al.*, dated July 27, 2009, at p. 25 n. 6 (emphasis added).

20. As the foregoing chain of events illustrates, the Rule 60(b) request has never been clearly articulated or prosecuted. As of the First Administrative Bar Date, New GM had no administrative expense claim against the **Debtors** based on the obtuse Rule 60(b) "protective" relief suggested by the **Committee** in the Claims Objection (which was asserted against parties other than New GM). Confronted with a final administrative bar date, New GM believed it prudent, along with its other Administrative Claims described in Section A above, "out of an abundance of caution, to preserve and reserve all of its rights to assert an administrative expense claim against one or more of the Debtors if the facts and circumstance so warrant."

21. While New GM does not believe it will or should happen, there is a scenario where New GM could be confronted with new liabilities (which it never assumed under the Sale

8

Order) if the GUC Trust's Rule 60(b) request is resurrected, and the Court grants certain relief which may be requested by the GUC Trust. For example, pursuant to the Sale Order, New GM purchased, among other things, Old GM's subsidiary, General Motors of Canada Limited ("**GM Canada**"). The sale to New GM included all intercompany obligations owed by GM Canada to Old GM, and all claims based on transfers made by Old GM to GM Canada. Thus, the sale to New GM was structured such that GM Canada would be acquired by New GM free and clear of all claims held by Old GM and, derivatively, by Old GM's creditors. In addition, at the time of the Sale Order, GM Canada did not owe any intercompany obligation to General Motors Nova Scotia Finance Company ("**Nova Scotia Finance**") since the Extraordinary Resolution already had been approved by the Noteholders. If relief is granted to the GUC Trust such that it affects, *inter alia*, the assets of GM Canada (including the release obtained from Nova Scotia Finance), or any other assets purchased by New GM under the Sale Order, New GM will not have received what it bargained for as a good faith purchaser of Old GM's assets. In such an unlikely scenario, New GM should have an Administrative Expense Claim against Old GM and/or a claim against the GUC Trust for any damages arising therefrom.

22.     New GM recognizes the unlikelihood of this result. To some extent the GUC Trust would be advocating for a result that would undermine the value of the primary consideration held by it (New GM Stock). Also, the GUC Trust would be simultaneously pursuing a path to equitably subordinate the Noteholders' claims while providing the Noteholders with potentially an even greater opportunity for recovery as against GM Canada. Nevertheless, with the *GM Nova Scotia* trial still pending, and the opaqueness of the GUC Trust's position in this regard, New GM should be permitted to preserve all available remedies,

9

and should not be precluded from doing so by the enforcement of the First Administrative Bar Date against it.[7]

23. Based on all of these circumstances, the filing of New GM's Administrative Expense Claim after the First Administrative Bar Date, but before the Second Administrative Bar Date, should be considered timely.

WHEREFORE, New GM respectfully requests that the Court (i) deny the relief requested in the Motion, and (ii) grant to New GM such other and further relief as is just and proper.

Dated: New York, New York
January 8, 2013

KING & SPALDING LLP


By: /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
1185 Avenue of the Americas
New York, NY  10036
(212) 556-2100

*Counsel to General Motors LLC*

---

[7] To the extent that the Court finds that New GM's Administrative Expense Claim is governed by the First Administrative Bar Date, the Court should find that the late filing was the result of excusable neglect pursuant to the standard set forth in *Pioneer Inv. Services Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380 (1993), and allow New GM's Administrative Expense Claim.