HEARING DATE AND TIME: January 17, 2013 at 9:45 a.m. (Eastern Time)

Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)
Shaya M. Berger (SB -5387)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
In re                                                        :    **Chapter 11 Case No.**
                                                             :
**MOTORS LIQUIDATION COMPANY**, *et al.*,                    :    **09-50026 (REG)**
    f/k/a General Motors Corp., *et al.*                     :
                                                             :
                        Debtors.                             :    (Jointly Administered)
                                                             :
-------------------------------------------------------------x

**REPLY TO RESPONSE FILED BY GENERAL MOTORS LLC TO OBJECTION TO PROOF OF CLAIM OF GENERAL MOTORS LLC (CLAIM NO. 71111) AND MOTION REQUESTING ENFORCEMENT OF ADMINISTRATIVE CLAIM BAR DATE ORDER**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

    The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or modified from time to time, the "**Plan**"), files this reply (the **"Reply"**) to the response (the "**Response**") filed by General Motors LLC ("**New GM**") to the objection (the "**Objection**") filed by the GUC Trust to Claim No. 71111 (the "**Claim**"), on the basis that the Claim was not timely filed. In support of this Reply, the GUC Trust respectfully represents:

**Preliminary Statement**

1. As set forth in the Objection, under this Court's Administrative Bar Date Order, the deadline for filing administrative expense claims arising between June 1, 2009 and January 31, 2011 was February 14, 2011 (the "**First Administrative Bar Date**"). The deadline for filing administrative expense claims arising between February 1, 2011 and March 31, 2011 was April 30, 2011 (the "**Second Administrative Bar Date**").

2. The Objection sets forth the basis for expunging the Claim – namely, to the extent New GM has any administrative expense claims against the Debtors, such claims arose under the Master Purchase Agreement dated June 26, 2009.[1] Given that the Administrative Bar Date Order required such claims to be filed on or before February 14, 2011, the Claim – which was filed on April 29, 2011 – was untimely.

3. In its Response, New GM does not dispute the basic premise that breach of contract claims arise upon the execution of a contract or that its claims against the Debtors (if any) originated under the Master Purchase Agreement. Indeed, New GM spends the bulk of its Response describing the history of the GUC Trust's request for relief under Rule 60(b) in the Nova Scotia litigation. The remainder of the Response includes various unsupported facts and theories implying that there was some understanding between the Debtors and New GM that the Second Administrative Bar Date applied to the Claim. Such assertions are completely baseless. In short, New GM has not – and cannot – dispute the fact that its claims (if any) against the Debtors arise under the Master Purchase Agreement and are therefore subject to the First Administrative Bar Date.

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Objection.

2

4. Finally, despite New GM's unsubstantiated statements to the contrary, the Claim does not address, and was never intended to seek recovery for, potential claims related to the Nova Scotia litigation. Indeed, in two and a half years of litigation, New GM is only now identifying the Claim as being related to the Nova Scotia litigation. The Response appears to be an attempt by New GM to use the Claim as leverage in that litigation. This matter, however, has nothing to do with the Nova Scotia litigation and simply involves a straightforward objection to a late-filed claim.

5. For the reasons set forth herein and in the Objection, the Claim should be disallowed and expunged on the basis that it was not timely filed.

## Argument

### I. The Claim is Based on a Potential Breach of the Debtors' Obligations Under the Master Purchase Agreement

#### A. The Confirmation Order Does Not Create Obligations to New GM

6. New GM argues that provisions of the Confirmation Order "demonstrate an agreement by Old GM that, notwithstanding the existence of the First Administrative Bar Date, Old GM would continue to comply with its outstanding obligations to New GM, until such obligations were assigned to applicable Trusts, after which time they would performed by the Trust." Response at ¶ 2. Based on the foregoing, New GM concludes, without citing any legal authority, that its claims arise under the Confirmation Order, and the Second Administrative Bar Date therefore applies. *Id*. However, by acknowledging that the Debtors' obligations "continue" under the Confirmation Order, New GM is conceding that such obligations originated in the Master Purchase Agreement and that the Claim thus arose well within the window for claims subject to the First Administrative Bar Date. The Confirmation Order does not create any (let alone "new") obligations by the Debtors to New GM that would change the facts that (i) New

3

GM's claims arise under the Master Purchase Agreement, and (ii) the First Administrative Bar Date applies.

7. Specifically, New GM argues that the Confirmation Order creates new obligations under eight agreements referenced in paragraph 11(b) of the Confirmation Order. Response, ¶ 2. However, each of these agreements was entered into, and the obligations therein thus arose, pursuant to the Master Purchase Agreement. *See, e.g.,* Confirmation Order, ¶ 11(b) (referring to such agreements as "[Master Purchase Agreement]-Related Agreements"); Master Purchase Agreement § 6.27(a), Ex. L (the Master Lease Agreement (Subdivision Properties)); § 7.2(c)(ix), Ex. T (the Transition Service Agreement); §7.2(c)(xiv), Ex. X (the Master Lease Agreement (Excluded Manufacturing Assets)); §2.3(b)(iv) (provision making certain environmental obligations "Retained Liabilities" of the Debtors, which are the subject of the various letter agreements relied on by New GM).

8. New GM also points to a March 28, 2011 letter agreement (the "**Letter Agreement**") in support of its argument that the Second Administrative Bar Date applies. But that too does not involve new obligations. Rather, the Letter Agreement reflects rights and obligations previously agreed to by the parties under the Master Lease Agreement (Excluding Manufacturing Assets) dated July 9, 2010, which is part of the Master Purchase Agreement. Claim, n.1.

B. The Nova Scotia Litigation Does Not Create Obligations to New GM

9. New GM also argues that, because the Claim is based on potential claims related to the Nova Scotia litigation, and such claims were not known to New GM until after the First Administrative Bar Date, the Second Administrative Bar Date should apply. Response ¶¶

4

17, 22. This argument is completely meritless on its face and is nothing more than an "after the fact" justification by New GM.

10.     First, the Claim does not mention the Nova Scotia litigation or the Rule 60(b) relief.[2] If New GM had truly learned something between the First Administrative Bar Date and the Second Administrative Bar Date, as it now claims, that created a concern and justified application of the Second Administrative Bar Date, it was not reflected in the Claim. *See, e.g.*, Claim at ¶ 3 (referring specifically to the Transition Services Agreement, certain leases and "other contractual arrangements between the parties" arising out of the Master Purchase Agreement and Sale); ¶ 4 (referring to specific agreements identified in paragraph 11(b) of the Confirmation Order and other obligations of the Debtors under the Master Purchase Agreement that could be assigned to the Environmental Response Trust pursuant to paragraph 11(c) of the Confirmation Order).[3] The Claim is clearly intended to reserve only specific claims that might arise under the Master Purchase Agreement, which claims are plainly subject to the First Administrative Bar Date. New GM's arguments to the contrary have no basis in law or fact.

11.     Second, even if New GM had a claim against the Debtors which arose as a consequence of the Rule 60(b) relief sought by the GUC Trust, such claim would not be a "new"

---

[2] Given that such claims were not expressly included in or preserved by the Claim, New GM's efforts to assert them now should be treated as an improper amendment to the Claim. *See In re Enron Corp.*, 328 B.R. 75, 89 (Bankr. S.D.N.Y. 2005) aff'd sub nom. 2006 U.S. Dist. Lexis 66681 (S.D.N.Y. 2006) (rejecting claimant's "amendment that would change the nature of the original claims by significantly different factual and legal allegations"). In order to file such a claim at this stage of the case, New GM would have a substantial burden of showing excusable neglect, among other things. *See In re U.S. Lines, Inc.*, No. 04-CV-6614, 2006 WL 1559237, at *5 (S.D.N.Y. June 7, 2006) (affirming order expunging untimely claim because claimant did not carry the burden of showing claims were timely filed) (citation omitted).

[3] Notably, certain of the events cited by New GM to support application of the Second Administrative Bar Date happened well-after the Second Administrative Bar Date and are thus completely irrelevant. Response at ¶ 17 ("Based on statements made by the GUC Trust *after the expiration of the Second Administrative Bar Date*, New GM became concerned and formally sought status as a party with the right to be heard in the Claims Objection proceeding. Thereafter, approximately *six months later* . . . it appeared that the GUC Trust could be seeking some form of Rule 60(b) relief . . .) (emphasis added); ¶¶ 18, 19 (referring to hearing conducted on July 10, 2012 and a brief filed on July 27, 2012, respectively).

5

claim, as New GM states, but one which arose under the Master Purchase Agreement. Specifically, as New GM's counsel has acknowledged, if the GUC Trust were to prevail under Rule 60(b), its claims, if any, against the Debtors would be for a breach of covenants under the Master Purchase Agreement. Response at ¶ 9 (the Claim includes damages to the extent New GM is deprived of the benefit of its bargain in the Sale); *id.* ¶ 21 ("If relief is granted to the GUC Trust such that it affects, *inter alia*, the assets of GM Canada [] or any other assets purchased by New GM under the Sale Order, New GM will not have received what it bargained for as a good faith purchase of old GM's assets.").[4]

        12.     Third, New GM argues that Rule 60(b) was raised in an "imprecise way," which "militates in favor of New GM's Admin Claim being governed by the Second Administrative Bar Date – and not the First Administrative bar date." Response at ¶ 11. New GM's focus on Rule 60 is misguided. New GM's obligation to file a claim for any potential breach of the Master Purchase Agreement arose irrespective of whether there was an actual claim pending against New GM in the Nova Scotia litigation or otherwise. *See, e.g., In re Suncruz Casinos LLC,* 342 B.R. 370, 379 (Bankr. S.D. Fla. 2006) (concluding that creditor was required to file a timely claim by the administrative bar date even though the claim was contingent and unliquidated at the time of the bar date); *see also Allstate Ins. CO. v. Credit Suisse Securities (USA) LLC*, No. 11-CV- 2232(NB), 2011 WL 4965150 at *5 (S.D.N.Y. October 19, 2011). Moreover, New GM cites no facts to support the proposition that New GM learned anything in between the First Administrative Bar Date and the Second Administrative Bar Date that would justify application of the later deadline. Among other things, the Nova Scotia claims objection,

---

[4] The Sale Order was entered on July 5, 2009, which is also well before the First Administrative Bar Date. In any event, New GM's rights are based on the agreement it entered into with the Debtors – the Master Purchase Agreement – and not the order approving such agreement.

6

which included a clear request for Rule 60(b) relief (*See* Official Committee of Unsecured Creditors' Objection to Claims Filed by Green Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and Motion for Other Relief (Docket No. 6248) at ¶ 70) was filed on July 2, 2010, well before the First Administrative Bar Date. Consequently, the fourteen paragraphs of the Response in which New GM argues that the Claim is timely because it was filed only upon learning about the Rule 60 claim, are both irrelevant and unsubstantiated.[5]

## II. There is No "Course of Dealing Defense" to a Late Filed Claim

13. New GM implies that even if the First Administrative Bar Date technically applied to the Claim, the parties engaged in a "course of dealing" that authorized New GM to file its claim after the First Administrative Bar Date. Response at ¶ 8. New GM cites no legal or factual basis for this position because none exists. To the contrary, the law is clear that a "course of conduct" does not relieve a party from compliance with a bar date order, which "is akin to a statute of limitations, and must be strictly observed." *In re Musicland Holding Corp.*, 356 B.R. 603, 607 (Bankr. S.D.N.Y. 2006)). Moreover, New GM fails to submit any evidence as to any such agreement or "course of conduct" which would support a finding that the Second Administrative Bar Date should apply – and indeed there is none. New GM's argument should be rejected.

---

[5] New GM itself contradicts this argument, noting that it only filed the Claim when "[c]onfronted with a final administrative bar date," not in response to becoming aware of a Rule 60(b) claim. Response at ¶ 20.

**Conclusion**

For the reasons set forth above and in the Objection, this Court should enforce the Administrative Bar Date Order and enter an order disallowing and expunging the Claim, and granting such other and further relief as is just and proper.

Dated: New York, New York
January 14, 2013

      /s/ Stefanie Birbrower Greer
Barry N. Seidel (BS-1945)
Stefanie Birbrower Greer (SG-2898)
Shaya M. Berger (SB -5387)

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Motors Liquidation
Company GUC Trust