Page 1

1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 09-50026(REG)

4    - - - - - - - - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    MOTORS LIQUIDATION COMPANY,

8

9             Debtor.

10

11   - - - - - - - - - - - - - - - - - - - - - - - - - - -x

12

13                 U.S. Bankruptcy Court

14                 One Bowling Green

15                 New York, New York

16

17                 January 17, 2013

18                 9:51 AM

19

20   B E F O R E :

21   HON ROBERT E. GERBER

22   U.S. BANKRUPTCY JUDGE

23

24

25

Page 2

1    Hearing re:  Doc #9452 - 215th Omnibus Objection to Claims

2    (Administrative Proofs of Claim for Equity Interests)(going

3    forward solely as to Nika Cojcaj)

4

5    Hearing re:  Doc# 12237 - Motion for Objection to Claim(s)

6    Number: 71111 and Motion Requesting Enforcement of

7    Administrative Claim Bar Date Order

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Jamie Gallagher

1    A P P E A R A N C E S :

2    DICKSTEIN SHAPIRO LLP

3         Attorneys for the GUC Trust

4         1633 Broadway

5         New York, NY 10019-6708

6

7    BY:  STEFANIE BIRBROWER GREER, ESQ.

8         SHAYA M. BERGER, ESQ.

9

10   WEIL, GOTSHAL & MANGES, LLP

11        Attorney for the GUC Trust

12        767 Fifth Avenue

13        New York, NY 10153

14

15   BY:  DAVID N. GRIFFITHS, ESQ.

16

17   KING & SPALDING, LLP

18        Attorney for General Motors, LLC

19        1185 Avenue of the Americas

20        New York, NY 10036

21

22   BY:  ARTHUR J. STEINBERG, ESQ.

23        SCOTT DAVIDSON, ESQ.

24

25

1    ALSO APPEARING:

2    ERIC FISHER, ESQ.

3    THERESA A. FOUDY, ESQ.

4    ANDY GOJCAJ (TELEPHONIC)

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 5

```
 1                    P R O C E E D I N G S

 2              THE COURT:  Good morning.  Have seats, please.

 3              All right, we're here on GM, Motors Liquidation

 4    objections to claims.

 5              I want to deal with any preliminary matters first,

 6    any undisputed matters first.  Then I'll turn to the new GM

 7    fight with the GUC Trust on the proof of claim that was filed

 8    after the first bar date.  I'll have some comments on that

 9    before we begin.  Good morning.

10              MR. GRIFFITHS:  Good morning, Your Honor.

11              THE COURT:  Mr. Griffiths, how are you?

12              MR. GRIFFITHS:  Thank you, Your Honor.  Happy New

13     Year.  David Griffiths, Weil, Gotshal & Manges for the

14     Motors Liquidation Company GUC Trust.

15              Your Honor, item number 2 on the agenda, it is a

16     contested matter, but I don't know if the claimant is on the

17     telephone, Mr. Nika Gojcaj.

18              THE COURT:  Oh yes, I'm sorry.  Go ahead, please.

19     Nika Gojcaj, are you on the phone?

20              MS. GOJCAJ:  Good morning.  This is Andy Gojcaj, I

21     am Nika's daughter-in-law and I'm here with him.

22              THE COURT:  Okay, that will be good enough.  Go

23     ahead, Mr. Griffiths.

24              MR. GRIFFITHS:  Your Honor, in the interest of

25     time, and this is a fairly simple matter that the claimant
```

Page 6

1    had filed a claim for equity interest effectively of the

2    shares that he'd purchased in new GM prior to the petition

3    date.

4            THE COURT:  Okay.  Pause please, Mr. Griffiths.

5    They're going to need to hear you over the phone, and I'm

6    going to need to hear you.  Would you pull that microphone a

7    little closer?

8            MR. GRIFFITHS:  Yes, Your Honor.  Your Honor, this

9    is a matter where Mr. Gojcaj had purchased shares in General

10   Motors Corporation prior to the petition date, has filed a

11   claim, you know, for the shares that he owns.  The GUC

12   Trust, or the debtors, had filed a motion to reclassify the

13   general, unsecured claim as a claim for equity interest.

14           As Your Honor well knows, equity interest receives

15   no recover in these Chapter 11 cases.  However, to the

16   extent that a recovery does flow to equity interest, than

17   the claimant would receive their pro rata recovery in that

18   class.

19           Your Honor, the GUC Trust is happy to rest on its

20   papers.

21           THE COURT:  Okay.  I'll hear from the Gojcaj

22   family.  And unless Mr. Griffiths raises an objection, I'll

23   allow any family member to be heard on the member, whether

24   or not he or she is a lawyer, and whether or not he or she

25   is the claimant.

Page 7

```
 1              Did you folks understand the nature of the

 2       objection?

 3              MS. GOJCAJ:  Not fully, but I think we have, you

 4       know, the general idea.

 5              THE COURT:  Okay.  Would you like to be heard?

 6              MS. GOJCAJ:  Yeah.  The reason that, you know,

 7       we're here and that we wanted the opportunity to speak is

 8       that my father-in-law believes that GM should have issued

 9       guidance that the stock would be issued -- would become

10       worthless sooner than it did.  He bought the stocks fairly

11       late in October of 2008, and does believe that there are

12       people at GM at that point that would have been aware of the

13       likelihood that the stock was going to be worthless.

14              So, he did want the opportunity to bring that

15       position forward and make sure that everyone is aware that,

16       you know, he disagrees with this position that the

17       stockholders would not receive any sort of settlement.

18              THE COURT:  Okay.  Did I understand you to say

19       that you were Mr. Gojcaj's daughter-in-law, or are you a

20       daughter?

21              MS. GOJCAJ:  I'm his daughter-in-law.

22              THE COURT:  Okay.  May I ask your last name,

23       please?

24              MS. GOJCAJ:  Same last name, Gojcaj.

25              THE COURT:  Oh okay, fair enough.  All right.  Do
```

Page 8

1    you have anything further you'd like to say before I give

2    Mr. Griffith's a chance to reply if he wants to?

3              MS. GOJCAJ:  My father-in-law's indicating he'd

4    also like me to let you know that, you know, he really -- he

5    believed in the whole stock market and that the company

6    itself, you know, he really wouldn't have any idea or any

7    notion that there is even a possibility for a company like

8    GM to go bankrupt.  So, it was very, for him, unexpected

9    that he would invest in one of the founding -- you know,

10   founding companies of America.  It's one of our greatest

11   companies, and then it would then go bankrupt.

12             THE COURT:  Uh-huh.  Okay, I understand.  I'm

13   going to give Mr. Griffiths a chance to reply now if he

14   chooses to, unless you'd like to add anything further.

15             MS. GOJCAJ:  No, thank you.

16             THE COURT:  Okay.  Mr. Griffiths, do you wish to

17   reply?

18             MR. GRIFFITHS:  Your Honor, just to say that the

19   GUC Trust is, of course, sympathetic to the financial

20   hardship caused by the loss of equity in old GM, but

21   otherwise we'll rest on our papers.

22             THE COURT:  Okay.  Folks, this matter is

23   effectively identical to one that I've addressed before in

24   this case.  And is one of the many cases that I have where

25   former stockholders of GM, in contrast of creditors of GM,

Page 9

1    are amongst the thousands of people who were injured as a

2    consequence of GM's bankruptcy.

3           The claim here is one by a stockholder, as

4    contrasted to a creditor, and in substance what the GM

5    estate has said is that as hard as the consequences have

6    been on the stockholders of GM, stockholders in a

7    bankruptcy, under our bankruptcy system, can't recover until

8    the creditors of the company have been paid in full.  This

9    is a very fundamental principle of bankruptcy law, which

10   bankruptcy judges don't have the power to change.

11          The result of that is that unless and until the

12   creditors of GM are paid in full, which I suppose anything

13   is possible, but which in this case is very, very, very

14   unlikely, stockholders will not get a recovery in the case.

15          Now, what I heard on behalf of the Gojcaj family

16   is a variant of that.  The claim, as articulated this

17   morning, and I might add, as it was articulated by at least

18   one, if not more than one other stockholders who were

19   injured in a very similar way, is that the family was

20   injured as a consequence of a fraud, separate and apart from

21   the fact that the -- what was purchased was stock, because

22   of failures on the part of GM to warn the investing public

23   of its impending bankruptcy, or otherwise to disclose to

24   purchasing stockholders, like this family, the severe

25   financial consequences, and the severe financial condition

Page 10

1       that would ultimately result in the filing of Chapter 11

2       Bankruptcy for GM.

3               The Code has a special provision that deals with

4       this.  It's in the subordination provisions.  And it's

5       Section 510.  And it provides that when a creditor has been

6       so defrauded, the creditor's claim is subordinated, that is

7       put below, the claims of other creditors.  And if the person

8       who was defrauded in the purchaser's sale of securities was

9       a purchaser of stock, than it's again treated -- it's simply

10      treated as stock.  That's a paraphrase, but that's an

11      explanation of it in plain English.

12              And what that means is that you can't -- and I

13      don't say it personally because there are many, many people

14      who had the same hope and desire, and I can't blame them --

15      to, in essence, elevate claims for the purchase of stock

16      into creditor claims because of the alleged fraud.  Whether

17      or not there were failures to disclose, and whether or not

18      there was even intentional fraud, the Code tells me that

19      what I've got to do under those circumstances is treat it as

20      equity anyway.

21              So, like Mr. Griffiths, I'm very sensitive and

22      sympathetic to the losses here as I was to the other people

23      who were injured similarly, but also as to whom their cases

24      are precedent, because I can't treat this family any

25      differently or any better than the others.  I am compelled

Page 11

1    to reclassify the claim from a claim for normal creditor

2    recoveries into one for recovery on an equity interest, an

3    equity interest being the way the Code describes claims for

4    stock.

5          The estate -- the GM estate is to settle an order

6    in accordance with this ruling, stating in substance that

7    for the reasons set forth on the record, and in the earlier

8    proceedings in the GM case where the same issue was already

9    addressed, the claim is reclassified.

10         And this order may be appealed.  The time to

11   appeal this order is going to run from the date of entry of

12   the resulting order and not from the date of this dictated

13   decision.

14         Ms. Gojcaj, I can't entertain re-argument because

15   I have ruled, but if you have any questions, I'll give you a

16   chance to ask them.

17         MS. GOJCAJ:  Thank you.  We appreciate the

18   sympathy of both GM and the Court.  You know, it certainly

19   doesn't replace the loss of $10,000, which is significant

20   for Nika, but again we do appreciate the time, Judge Gerber,

21   your taking the time to review this.

22         THE COURT:  Okay.  I'm grateful for that.  Okay,

23   thank you.  Now, Ms. Gojcaj, you may either remain on the

24   phone or drop off as you prefer.

25         MS. GOJCAJ:  We'll drop off.  Thank you.

Page 12

```
 1              THE COURT:  Okay, thank you.  Mr. Griffiths?

 2              MR. GRIFFITHS:  Thank you, Your Honor.  And my co-

 3       counsel, Stefanie Greer of Dickstein Shapiro will handle

 4       item number 1 on the agenda.

 5              THE COURT:  Okay.  Ms. Greer?  Ms. Greer, I don't

 6       have a copy of the agenda, but I sense from everybody who is

 7       coming up that this is the new GM claim?

 8              MS. GREER:  Yes, Your Honor.

 9              THE COURT:  Okay.  All right.  At this point, I

10       know you all, or I know everybody, at least who I expect

11       would be speaking.

12              This matter has been a frustration to me, folks.

13       If not also, a little bit annoying, because it looked to me

14       based on reading the papers, and I read as I always do the

15       objection, the response, the reply.  And then I get a

16       letter, which is effectively a surreply from Mr. Steinberg

17       that raises no less than four new issues.

18              That raises an important threshold issues, folks,

19       as to what I should do.  Should I continue this matter to

20       give you a chance, Ms. Greer, to file a response to all of

21       the new stuff that came in in the surreply at the expense of

22       new GM?  Should I hear argument on it today and award you

23       the expense of filing a reply, which dealt with one -- a

24       bunch of grounds for objection, but which did not then

25       address new GM's strongest point or what?  Do you want a
```

Page 13

1    continuance, which I'll grant you in a heartbeat?  Or do you

2    want to argue it today?

3              Mr. Steinberg, when it's your turn, I need you to

4    help me understand where the reference to paragraph 54 of

5    the sale order was in your first submission, which was the

6    time to address this point.

7              I think both sides also have to address,

8    separately, claims of three different types: those that

9    arise out of the sale agreement, I think a lot of people use

10   the acronym MSPA, master sale and purchase agreement, or

11   something like that; those that arise from other prepetition

12   agreements; and those that arise out of the financial

13   consequences if I were to award 60(b) relief.

14             If we do have an argument on the merits today, and

15   it's up to you, Ms. Greer, because I think you got

16   sandbagged, I'll then need you to address the aspects of

17   Rule 60(b) that provide that if I do grant 60(b) relief, any

18   such order must be on just terms.  And if I were to undo

19   part of the consideration of this sale order, there would at

20   least be an argument, which I wouldn't be inclined to decide

21   today, but which I'd be inclined to grant a reservation of

22   rights on, as to whether just terms would have to include

23   the damage to new GM as the purchaser from undercutting part

24   or all of its purchase, and also, 502(j), which would allow

25   a claim to be reconsidered, claims allowance or

Page 14

1    disallowance, for cause.

2         And unless you can explain to me why I'm wrong, I

3    understand the claim is used in the Code as defined in 1015

4    to be both a prepetition and post-petition claim, in

5    contrast to a creditor, which is only a prepetition

6    creditor, and whether not knowing that the sale order could

7    be under -- overturned as of way back in the spring of 2011,

8    whether not looking for damages for a defective purchase

9    could, upon a subsequent showing, be subject to a claim of

10   excusable neglect, although there are serious ripeness

11   issues with dealing with that today.

12        Three of the four new points that were raised by

13   new GM in its letter, its surreply letter, I regard as

14   frivolous, or at least not having any merit.  But I am very

15   concerned if I do get to the merits about the language in

16   the order in 54(j), which seems to allow an admin claim for

17   any amounts that are due under the MSPA.  Although, at least

18   seemingly, if those on the receiving end of such a claim

19   didn't agree with the amount, they would certainly have a

20   right to get judicial review or determination of what the

21   amount should be.

22        So, I need help from both sides.  After I'd

23   prepared an outline for ruling on this subject, anything

24   that might change that view in oral argument, then I get

25   this reply letter and I see that I have to take my outline

Page 15

1    and throw it in the trash.  And that's an -- if, assuming of

2    course, that I just don't say it's too late to put in new

3    points in a surreply.

4              So, tell me what you would like to do, Ms. Greer?

5              MS. GREER:  Your Honor, I appreciate you giving me

6    the opportunity to speak on this.  I think --

7              THE COURT:  I need you to come closer to the mic.,

8    if you would, please.

9              MS. GREER:  Sorry, Your Honor.

10             From my perspective, I also believe that the

11   surreply is improper.  The surreply is actually not a reply

12   at all because it doesn't respond to the arguments that

13   we've made, it makes new arguments.  But to the extent that

14   the Court would rather consider those rather than strike

15   them, we are prepared to go forward today.

16             But if the Court would prefer an adjournment to

17   sort of revisit the outline, we're also happy to do that, as

18   long as we have, you know, some period to respond and then I

19   need to confer with my client as to when we would need to

20   come back.  I know they are anxious to get this matter

21   resolved.

22             So, in a sense, Your Honor, I'd flip it back to

23   you.  We're more than happy to go forward today if the Court

24   is going to consider the surreply.  Alternatively, we're

25   okay with an adjournment, and we will reply as the Court

Page 16

1    requests.

2              THE COURT:  Well, if I thought all four points

3    were frivolous then it would be very easy to just go

4    forward.  I think the paragraph 54 argument is one that I

5    would need to take into account.

6              I know there are a lot of judges who simply would

7    take the surreply and throw it in the trash.  But I have

8    historically regarded myself as having responsibilities to

9    get it right.  And I'm going to need to decide what I want

10   to do.  If you ever want to file a written response, I think

11   I would prefer that you do that before you orally argue it,

12   because that's the way I analyze everything in cases on my

13   watch.

14             At the very least, I would give you a chance to

15   speak after Mr. Steinberg, or whoever's going to argue on

16   behalf of new GM.  I think that the best thing to do is for

17   you not to decide this second, and for me first to hear from

18   Mr. Steinberg to tell me what happened and why, and whether

19   he will consent to paying your expenses on your supplemental

20   briefing, or on your briefing of the reply and any further

21   briefing you have, or whether I have to simply order it.

22             MS. GREER:  Thank you, Your Honor.

23             THE COURT:  Okay.  Mr. Steinberg?

24             MR. STEINBERG:  Your Honor, to address your

25   question about the argument about paragraph 54 of the MSPA,

Page 17

1    when I read the reply that was filed on Monday, there were a

2    couple of points there that struck me as unusual, because I

3    hadn't think we -- I did not think we had argued that in our

4    reply.  And so that spurred me --

5         THE COURT:  You mean your response.

6         MR. STEINBERG:  I'm sorry, in the response.

7         So, the -- for example, the argument that there --

8    that we were arguing that something must have come up

9    between the first administrative bar date and the second

10   administrative bar date, which we were arguing was the basis

11   upon which we were filing an administrative claim, and we

12   never had argued that.  But it -- and so that got me to

13   saying, well why did we not file an administrative claim on

14   the first time?  What was the basis for it?

15        And I went back, because I had asked that question

16   originally when we were doing our response.  I said, let me

17   look again at the notice that was sent out as to whether

18   there were exceptions, because I couldn't believe that in

19   the same way that the government wouldn't have had to file

20   an administrative claim, I couldn't believe that new GM

21   would have to file an administrative claim.

22        And I saw two provisions that I thought were

23   relevant.  One was the provision that says if an

24   administrative claim hadn't been allowed by a prior order of

25   the Court.  And the second was whether the claim was sort of

Page 18

1    recognized as part of the plan situation.

2            And I went back to review the MSPA personally to

3    see if there were any provisions.  And at that point in

4    time, I said I thought paragraph 54 applied.  And that I

5    thought also, and I know Your Honor has characterized it in

6    a way that I think is -- I necessarily agree with, and

7    hopefully I can convince Your Honor to the contrary.

8            I thought the plan also was a recognition of the

9    fact that any ongoing claims under the MSPA, as approved by

10   the sale order, would be recognized as part of the Chapter

11   11 process.

12           I know Your Honor prepares for hearings.  I could

13   have, in the context of this oral argument, actually try to

14   make this argument, then apologize to Your Honor like I do

15   now, saying that this was something in preparing for the

16   oral argument that I came across.  But I didn't want to

17   sandbag anybody.  I didn't want to sandbag Your Honor.  I

18   wanted to give Your Honor an opportunity to reflect on the

19   thought.

20           So, that's why I think we wrote what I thought was

21   a brief letter.  I could have obviously written longer on

22   it, but I wanted to make it concise, knowing that the

23   hearing was the next day.  I obviously would have consented

24   to any type of adjournment that would have been requested to

25   respond to it.  I certainly wasn't looking to hurt anybody.

1    I was also looking to try to present all of the -- what I

2    thought were the relevant facts to Your Honor, so that Your

3    Honor could rule on this matter.

4              I actually think that if I have the ability, and

5    sometimes when you reflect on after what you write, if I had

6    the ability to write a better paper, I could have written a

7    better paper on this issue, including the recognition that

8    when I colloquially describe it as the Nova Scotia issues,

9    the Nova Scotia trial, what I'm really saying is that the

10   MSPA required that there would be certain ongoing

11   contractual obligations that would not disappear at the

12   closing.  And that would include covenants under the

13   agreement and specifically the preservation of the Article 2

14   purchased assets.

15             And that's what I -- when I talk about Rule 60(b)

16   and Rule Nova Scotia, that's essentially what I'm talking

17   about, which is the preservation of the rights and

18   obligations that were given to new GM under the MSPA, which

19   were not going to get cut off.

20             So, I know Your Honor had asked me to address the

21   Rule 54 issue.  Frankly, it was something that when

22   preparing for an oral argument, in order to be fully

23   prepared for Your Honor, I went back and read everything

24   again.  And in the context of reading it again, I saw this

25   provision which I thought was relevant, and I wanted to file

1    it before the oral argument so that Your Honor would have an

2    opportunity to review.

3           With regard to whether I'll consent to pay the

4    expenses of a reply, Your Honor says whether I should be

5    ordered to pay the expenses of a reply, I'm not sure whether

6    that is -- whether there's a choice here.

7           I obviously am not trying to prejudice anybody.

8    I'm not looking to try to have this condensed and to try to

9    surprise somebody.  My papers reveal that I had said to

10   them, why don't we defer this until the Nova Scotia trial is

11   concluded so that we're not forcing these issues in front of

12   the judge while he's waiting for the conclusion of the

13   trial.  So, I wasn't trying to press this to be heard

14   immediately.  And I wasn't trying to surprise anybody with

15   arguments.

16          Having said that, if Your Honor doesn't think that

17   that's a sufficient explanation, and Your Honor believes

18   that no matter what I say, or what I've said, that you're

19   going to order us to pay, than I'd obviously rather consent

20   than to be ordered.

21          But I would hope that Your Honor would consider

22   this explanation and, you know, the years that I've

23   practiced before Your Honor to understand that that was my

24   motivation.  It wasn't any kind of nefarious motive or

25   improper motive.  I, too, am trying to get it right.

1      THE COURT:  The explanation for failing to mention

2   what is your strongest point, by far, or is on everything

3   other than the Nova Scotia issues, which raise special

4   concerns is unpersuasive, because the whole bone of

5   contention between you -- you being new GM -- and the

6   estate, now represented by the GUC Trust, was whether claims

7   arising out of the MSPA had to be raised by the first or the

8   second admin expense bar dates.

9      So, I don't find the failure to raise your most

10  important point until a surreply is satisfactorily

11  explained.  Therefore, you're going to have to either choose

12  between abandoning your points in your surreply, or

13  preserving them, but paying the cost for the GUC Trust to

14  respond if they choose by consent or by requiring me to

15  decide whether that's in my inherent authority as a lesser

16  degree of compensation for considering the point abandoned.

17      So, given that interim ruling, you can tell me

18  where your position is, Mr. Steinberg.

19      MR. STEINBERG:  Your Honor, I don't think new GM

20  is prepared to abandon arguments.  And in view of Your

21  Honor's comments, then we would consent if they wanted to

22  put in a reply to address those comments to pay for those

23  expenses.

24      THE COURT:  Okay.  Now, Ms. Greer, do you need

25  time to caucus with your folks, or do you have a position

1    you can tell me?

2              MS. GREER:  I think I can answer.

3              THE COURT:  I'm sorry, I can't hear you.

4              MS. GREER:  I think I can go ahead.

5              THE COURT:  You want to go ahead?

6              MS. GREER:  Sure.

7              THE COURT:  All right, then we're going to do it,

8    but we're going to flip flop the order.

9              MS. GREER:  I'm sorry, Your Honor, I was saying I

10   was going to go ahead and just tell you that what we'd like

11   to do is put in papers.

12             THE COURT:  Oh, forgive me.

13             MS. GREER:  Sorry, Your Honor.

14             THE COURT:  All right.  Fair enough.

15             Then you're to agree on doing this and to make

16   sure that we get this right.  You're to caucus with

17   Mr. Steinberg and to agree upon a schedule under which you

18   will do the next submission.  If Mr. Steinberg wants to

19   respond, he'll have that opportunity, but limited to

20   whatever you have said in your new submission.

21             And if you choose to, you can reply to what

22   Mr. Steinberg said, but limited to what he said in the

23   latest one.  I don't want old fields re-plowed, but I think

24   I need to get this right.

25             Additionally -- not additionally, you can address

Page 23

1    anything you choose, but my real concern is paragraph 54.

2              MS. GREER:  Understood, Your Honor.

3              THE COURT:  Okay.  Mr. Steinberg?

4              MR. STEINBERG:  Your Honor, there -- in reviewing

5    the reply, there were obviously other things that I saw that

6    I didn't put in the letter, but I would want to point out to

7    Your Honor which I thought --

8              THE COURT:  Not anymore.  The train has already

9    left the station.

10             Right now, the lay of the land is the three briefs

11   that were submitted in the traditional fashion plus the

12   surreply.  I'm not going to entertain new points at this

13   point, nor am I going to entertain refinements or expansions

14   of the old one, except insofar as they're intended to

15   clarify or put meat on the bones of matters that have

16   already been addressed.

17             MR. STEINBERG:  Your Honor, perhaps I didn't

18   explain explicitly what I was referring to.

19             In the reply, they actually raised some, what I

20   considered newer concepts, and I have never had a chance to

21   address them.  And specifically what I was referring to was

22   the notion that this was an improper amendment and that the

23   proof of claim that we filed never addressed the fact that

24   there were ongoing obligations under the MSPA that we had

25   essentially claimed, included in our claim, if there had

Page 24

1    been unperformed obligations under the MSPA.

2            I'd like to point out to Your Honor that our claim

3    actually did provide for that and that that was a factual

4    inaccuracy.  It technically wasn't raised in the reply,

5    because I knew that I was filing something the day before,

6    and I wanted to give Your Honor not everything I could

7    possibly say at oral argument, but I would say that at oral

8    argument no matter what, because that would have been my

9    only opportunity to correct a reply if I thought there was a

10   misstatement.

11           THE COURT:  That request is denied.  It is denied

12   because you already filed the surreply when you had the

13   opportunity to deal with that.  And additionally, because it

14   was foreseeable and it was something that I noted in my

15   outline, even before you mentioned it today.

16           I read the original 1911 proof of claim and its

17   attachment with great care, and formed by own views where I

18   don't need additional briefing as to the extent to which it

19   puts your opponent on notice, or failed to put your opponent

20   on notice of what new GM might thereafter claim.

21           If you want to bring that in, you're going to have

22   to do it under the authority subject to the GUC Trust's

23   ability to be heard of paragraph 54, but not because of

24   anything you said in the proof of claim.

25           MR. STEINBERG:  Okay, so, Your Honor, just so I'm

Page 25

1    clear and there's no misunderstanding on Your Honor's

2    ruling, the submission the GUC Trust is making is in

3    response to my surreply, and then whatever opportunities I

4    have is to only respond to whatever their newest pleading

5    would be.  Is that correct?

6              THE COURT:  Yes, exactly.  Okay.  Anything else?

7    Anybody?  Then we're adjourned.

8         (Whereupon these proceedings were concluded at 10:27

9    AM)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 26

1                              I N D E X

2

3                              RULINGS

4                                                Page        Line

5    215th Omnibus Objection to Claims            8           22

6    (Administrative Proofs of Claim for

7    Equity Interests)(going forward solely

8    as to Nika Cojcaj)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 27

1                    C E R T I F I C A T I O N

2

3      I, Jamie Gallagher, certify that the foregoing transcript is

4      a true and accurate record of the proceedings.

5

6

7

8

       Veritext

9

       200 Old Country Road

10

       Suite 580

11

       Mineola, NY 11501

12

13

       Date:  January 18, 2013

14

15

16

17

18

19

20

21

22

23

24

25