HEARING DATE:  February 20, 2013 at 9:45 a.m. (Eastern Time)
RESPONSE DATE AND TIME:  February 15, 2013 at 12:00 noon (Eastern Time)

KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222
Arthur Steinberg, Esq.
Scott Davidson, Esq.

*Counsel to General Motors LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corp., *et al*. | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |

------------------------------------------------------------x

**REPLY BY GENERAL MOTORS LLC TO RESPONSE
TO SUR-REPLY TO OBJECTION TO PROOF OF CLAIM
OF GENERAL MOTORS LLC (CLAIM NO. 71111)**

General Motors LLC (f/k/a General Motors Company) ("**New GM**"), by and through its undersigned counsel, hereby submits this reply ("**Reply**") to the *Response to Sur-Reply to Objection To Proof Of Claim Of General Motors LLC (Claim No. 71111)*, dated January 30, 2013 ("**Response**"), filed by the Motors Liquidation Company GUC Trust ("**GUC Trust**"). In support of this Reply, New GM respectfully represents as follows:

1. In its Response, the GUC Trust makes the assertion that New GM's conduct -- the filing of the Administrative Expense Claim -- demonstrates that New GM believed it was subject to the Administrative Bar Date Order. *See* Response, ¶ 1. That is not true. The terms of the Administrative Expense Claim clearly states that it was filed "out of an abundance of caution to preserve and reserve all of its rights to assert an administrative expense claim against one or

20177796v7

more of the Debtors if the facts and circumstance so warrant." New GM Administrative Expense Claim, ¶ 6.  Indeed, one of the material provisions of New GM's Administrative Expense Claim is the cross-reference to the Confirmation Order, which was entered less than 30 days before the filing of the Administrative Expense Claim.  Citing to a provision already contained in a recently entered order of the Court is indicative of the "abundance of caution" approach referred to in the Administrative Expense Claim.  In short, New GM's conduct as noted by the GUC Trust does not demonstrate that it believed it was subject to the Administrative Expense Bar Date.

2.  Having raised the "intent by conduct" argument in the Response, it is at least equally relevant to examine the conduct of the Debtors and the GUC Trust's predecessor -- the Creditors' Committee -- on this same subject.  After the First Administrative Bar Date, but before the Second Administrative Bar Date, the Debtors and New GM negotiated the inclusion of language in the Confirmation Order that specifically recognized that there were continuing obligations between Old GM and New GM, and that various agreements in favor of New GM would continue to be performed by Post-Effective Date MLC and, ultimately, by the Trusts established under the Plan. *See* Confirmation Order, ¶ 11.  The Creditors' Committee reviewed this language and specifically commented on it prior to the Confirmation Order being submitted and approved by the Court. *See* E-mails from Lauren Macksoud of Kramer Levin, dated March 17, 2011, copies of which are annexed hereto as Exhibit "A."  The Creditors' Committee ultimately approved the form of the Confirmation Order, including the language contained in paragraph 11 of the Confirmation Order (which effectuates the ongoing performance of Old GM and New GM pursuant to the MSPA).  The Debtors presented the Confirmation Order to the Court.  Presumably, the Creditors Committee and the Debtors knew that New GM had not filed an Administrative Expense Claim by the First Administrative Bar Date.  As such, there simply

would have been no reason for them to negotiate, let alone consent to, the language contained in paragraph 11 of the Confirmation Order -- which was entered on March 19, 2011 (after the First Administrative Bar Date) -- if they actually believed that New GM was subject to the First Administrative Bar Date. Moreover, the Creditors Committee/GUC Trust waited approximately twenty months after the Confirmation Order to first raise the issue whether Post-Effective Date MLC or the Trusts should be bound to perform the obligations specified in the Confirmation Order based on the expiration of the First Administrative Bar Date. In short, it is the conduct of the Debtors and the Creditors' Committee which demonstrate that they did not believe that New GM was subject to the Administrative Bar Date Order.

3. The remainder of the Response focuses on paragraph 54 of the Sale Order and allegedly why it is not applicable to New GM's Administrative Expense Claim. As discussed below, the GUC Trust is wrong and paragraph 54 is applicable.

**A.    Paragraph 54 of the Sale Order Grants New GM an
       Administrative Expense Claim for All Claims Arising from the MSPA**

4. Contrary to the GUC Trust's argument, paragraph 54 of the Sale Order does provide that New GM "*shall*" have an administrative expense claim for "[a]ny amounts that become payable by the Sellers to the Purchaser pursuant to the M[S]PA . . . ." While the ***amount*** of that administrative expense claim could be the subject of dispute, the ***priority*** of the claim (*i.e.*, as an administrative expense) was determined by the Court in the Sale Order.

5. In referring to the language of the Administrative Bar Date Order, the GUC Trust asserts that while New GM may have an administrative expense claim pursuant to the Sale Order, it does not have an "allowed administrative expense claim," because the amount of the claim (although never challenged) was not determined at that time. Response, ¶ 4. But this is not what the Administrative Bar Date Order provides. It states that the following persons are not

3

required to file an Administrative Proof of Claim prior to the Administrative Bar Date: "Any person or entity that holds a claim for administrative expenses that has been allowed by an order of this Court entered on or before the Administrative Bar Date." The Administrative Bar Date Order does *not* say any person that holds an "*allowed*" administrative expense claim does not have to file a claim; it says any person that holds an administrative expense that has been allowed by an order of the Court does not have to file a claim. This is precisely what the Sale Order did -- it provided that New GM *shall* have an administrative expense for any amounts payable by Old GM to New GM pursuant to the MSPA. Again, while the *amount* may in the future be disputed, the Court unquestionably determined by the Sale Order that New GM would have an administrative expense claim for all amounts payable under the MSPA.

6.     The GUC Trust's attempt to use the Plan's definition of "allowed" in this context is clearly inappropriate. The Plan was approved over three months *after* the Administrative Bar Date Order was entered, and the Administrative Bar Notice does not reference any definition for the term "allowed."[1]

7.     In any event, New GM has satisfied the GUC Trust's definition of allowed because it had obtained "a final order specifically allowing the claim." As noted, the Sale Order specifically allowed as an administrative expense any claim New GM may have against Old GM based on amounts payable pursuant to the MSPA. In addition, the Confirmation Order was entered before the "Administrative Bar Date,"[2] and, since the MSPA had not been fully performed (and, thus, paragraph 54 payment obligations not finally resolved), it specified that

---

[1]  The Plan definition of "allowed" is also not appropriate in this context because no administrative expense claim could ever be set forth in the Debtors' schedules as such claims do not arise, by definition, until after the Petition Date.

[2]  In this context, the Administrative Bar Date Order uses the term "Administrative Bar Date" without reference to whether it means the First Administrative Bar Date or the Second Administrative Bar Date. Therefore, for these purposes, the term must contemplate the later (Second) Administrative Bar Date.

4

there would be ongoing obligations to be performed by Post-Effective Date MLC and the Trusts.³ Whether such ongoing obligations are technically administrative expenses or something else, there clearly was an express agreement entered into between the First Administrative Bar Date and the Second Administrative Bar Date, reflected in an order approved by the Court (*i.e.*, the Confirmation Order), that such obligations (which, by definition, are part of the paragraph 54 payment obligations) would be performed by Post-Effective Date MLC or the Trusts, and the Court would retain jurisdiction to resolve any dispute relating thereto.

8. Moreover, the GUC Trust's reference to paragraph 36 of the Sale Order actually supports New GM's position. Paragraph 36 of the Sale Order was part of a resolution of a dispute between certain lenders (the "**TPC Lenders**") and the Debtors regarding liens on property being sold to New GM. Although not fully cited by the GUC Trust in its Response, the relevant text of paragraph 36 of the Sale Order provides as follows: "the TPC Lenders shall have an allowed secured claim in a total amount equal to the fair market value of the TPC Property on the Commencement Date under section 506 of the Bankruptcy Code . . ., as determined at a valuation hearing conducted by this Court or by mutual agreement of the Debtors, the Purchaser, and the TPC Lenders . . . ." Just like New GM's Administrative Expense Claim, the *priority* of the TPC Lenders' claim (as secured) was fixed by the Court, but the *amount* was not. The use of the term "allowed" buttresses New GM's argument, that a Court order can be construed to "allow" the claim even if there is no final determination as to the amount.⁴

---

³ Section 10.1 of the Plan (a copy of which is attached hereto as Exhibit "B") contemplated that, as part of the Plan, there would be obligations performed by Post-Effective Date MLC or the Trusts that were not specifically set forth in the Plan, but would later be incorporated by reference to provisions in the Confirmation Order.

⁴ The GUC Trust's reference to *In re Theatre Row Phase II Associates,* 385 B.R. 511 (Bankr. S.D.N.Y. 2008) is misplaced. *Theatre Row* stands for the unremarkable proposition that "[a]n allowable claim for an expense of administration must have a satisfactory basis in law other than Code § 503(a)(1), such as contract or tort, as well as factual validity." *Id.* at 521. Here, New GM's Administrative Expense Claim is clearly rooted in the MSPA, and any amounts payable pursuant to that contract "shall . . . constitute administrative expenses of the Debtors' estates." Sale Order, ¶ 54.

**B.     Paragraph 54 of the Sale Order Concerns All Claims New GM
         Has Based on the MSPA, Including Claims for Breach of the MSPA**

9.  The GUC Trust's second argument -- that paragraph 54 of the Sale Order does not cover breaches of the MSPA is clearly wrong.  As noted, paragraph 54 provides that New GM shall have an administrative expense claim for "*[a]ny* amounts that become payable by the Sellers to the Purchaser pursuant to the M[S]PA . . . ." (emphasis added).  As specifically stated in paragraph 3 of New GM's Administrative Expense Claim, "other contractual arrangements between the parties [Old GM and New GM] survived the closing of the 363 Transaction.  Although many of the post petition contractual connections between Old GM and New GM have expired or been fully performed, some remain."  Specifically, these contractual connections (including Article II and Article VI of the MSPA) could be breached which would lead to payment obligations, and thus are covered by paragraph 54 of the Sale Order.

10.  Paragraph 54 does not have an "ordinary course" concept, as concocted by the GUC Trust -- those words do not appear in paragraph 54 of the Sale Order.  Thus, contrary to the GUC Trust's assertion, *any* amounts that become payable pursuant to the MSPA -- which include claims for breach of the MSPA -- clearly fall within paragraph 54 of the Sale Order.

11.  In sum, paragraph 54 preserved all of New GM's administrative expense claims that are premised on the MSPA, including, without limitation, any amounts that may become due and payable to New GM based on (i) any unperformed agreements between New GM and the Trusts, and (ii) any relief the GUC Trust may in the future seek to obtain as against New GM (a good faith purchaser of the Debtors' assets) pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, which relief (if and when made, and if then granted), would constitute a breach of Articles II and VI of the MSPA.

WHEREFORE, New GM respectfully requests that the Court (i) deny the relief requested in the Motion, and (ii) grant to New GM such other and further relief as is just and proper.

Dated: New York, New York
February 7, 2013

KING & SPALDING LLP

By: /s/ Arthur Steinberg
Arthur Steinberg
Scott Davidson
1185 Avenue of the Americas
New York, NY 10036
(212) 556-2100

*Counsel to General Motors LLC*

7