HEARING DATE AND TIME: April 4, 2013 at 9:45 a.m. (Eastern Time)

Barry N. Seidel
Eric B. Fisher
Shaya M. Berger
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                                    :    Chapter 11 Case No.
:
**MOTORS LIQUIDATION COMPANY,** *et al.*,                :    09-50026 (REG)
f/k/a General Motors Corp., *et al.*                     :
:
Debtors.                                                 :    (Jointly Administered)
:
------------------------------------------------------------x

**RESPONSE TO REPLY BY GENERAL MOTORS LLC FILED IN CONNECTION
WITH THE OBJECTION TO PROOF OF CLAIM NO. 71111 AND MOTION
REQUESTING ENFORCEMENT OF ADMINISTRATIVE CLAIM BAR DATE ORDER**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the Debtors[1] in connection with the Plan, files this response (the "**Sur-Reply Response II**") to the *Reply filed by General Motors LLC to Response to Sur-Reply to Objection to Proof of Claim of General Motors LLC (Claim No. 7111)* (the "**New GM Reply**"). In support of this Sur-Reply Response II, the GUC Trust respectfully represents:

---

[1] Capitalized terms used herein and not otherwise defined shall have the meanings ascribed to such terms in the *Response to Sur-Reply to Objection to Proof of Claim of General Motors LLC (Claim No. 71111) and Motion Requesting Enforcement of Administrative Bar Date Order* (the "**Sur-Reply Response I**") [ECF Dkt. No. 12304].

**Argument**

1. Paragraph 54 provides that any amounts that become payable by the Debtors pursuant to the Master Purchase Agreement are deemed to have priority status. Sale Order ¶ 54. In the Sur-Reply and the New GM Reply, New GM ignores the plain language of Paragraph 54 and reads into that paragraph words that do not appear so that Paragraph 54, as "rewritten" by New GM: (i) goes beyond granting priority status to actually allow certain claims; and (ii) extends its reach to cover damages incurred by New GM as a result of a breach of the Master Purchase Agreement. New GM's creative reading of Paragraph 54 should be rejected.

A. **Paragraph 54 Does Not "Grant" or "Allow" Any Claims of New GM**

2. As set forth in the Sur-Reply Response I, the exception in the Administrative Bar Date Order for claims allowed by a Court order could not have excused New GM from its obligation to file the Claim before the First Administrative Bar Date because Paragraph 54 did not allow the Claim. Sur-Reply Response I at ¶¶ 4-6. Indeed, it is undisputed that the word "allow" (or any variant thereof) does not appear in Paragraph 54. In response, New GM twice asserts that Paragraph 54 essentially allowed the claim because it "provided that New GM *shall* have an administrative expense" claim. New GM Reply ¶¶ 4, 5 (emphasis in the original).[2]

3. The problem with New GM's argument is that Paragraph 54 says no such thing. Paragraph 54 provides that amounts payable pursuant to the Master Purchase Agreement "shall [] *constitute* administrative expenses," thereby eliminating any future dispute as to the

---

[2] The quote is taken directly from paragraph 5 of the New GM Reply. Paragraph 4 has the same quote, except that it uses the word "provide" and puts the word "shall" in quotes.

2

priority status of such payment obligations.  Sale Order ¶ 54 (emphasis added).  It does not provide that New GM "shall have" any claim, and certainly does not allow one.[3]

4.    New GM also argues that the fact that paragraph 36 of the Sale Order allowed a secured claim by the "TPC Lenders" in an amount to be decided at a subsequent valuation hearing "buttresses New GM's argument[] that a Court order can be construed to 'allow' the claim even if there is no final determination as to the amount."  New GM Reply at ¶ 8.  New GM misses the point because whether the Court could have entered an order allowing the Claim is not the issue; rather, the issue is whether the Court did allow the Claim in Paragraph 54.  On that point, the treatment of the TPC Lenders' secured claim demonstrates the futility of New GM's argument because it shows that when the Sale Order allows a claim, it clearly states that the claimant "shall have an allowed" claim.  Sale Order ¶ 36.  In contrast, Paragraph 54 does not even state that New GM "shall have" a claim, let alone one that is "allowed," and thus, it clearly did not allow the Claim.  *Id*. ¶ 54.

5.    In any event, New GM is incorrect in making the underlying comparison and asserting that if the Court could have allowed the TPC Lenders' secured claim, it could have allowed New GM's Claim.  There was no dispute that the TPC Lenders were entitled to a secured claim in an amount equal to the fair market value of their collateral.  Though the dollar amount of such claim was not fixed since the market value of the collateral had not been determined, that did not make such claim "unliquidated."  As the TPC Lenders' collateral was

---

[3] New GM argues that the GUC Trust's reliance on *Theatre Row* is misplaced because the Claim "is clearly rooted in the MSPA." New GM Reply at n. 4 (distinguishing *In re Theatre Row Phase II Assoc.*, 385 B.R. 511, 521 (Bankr. S.D.N.Y. 2008)).  Although the Claim may be "rooted" in the Master Purchase Agreement, any amount being claimed could be disputed as actually being owed under the Master Purchase Agreements and could only be allowed if proven to be a valid amount.  That is exactly why the GUC Trust relies on *Theatre Row,* to show that a claimant asserting a type of claim that would constitute a necessary cost or expense of the estate does not have an allowed claim unless and until it can show a factual and legal basis to support the claim.

identifiable, its fair market value was readily ascertainable, and therefore, the Court could – and did – allow the TPC Lenders a secured claim in an amount equal to the value of their collateral (Sale Order ¶ 36). *See Mazzeo v. United States (In re Mazzeo)*, 131 F.3d 295, 304 (2d Cir. N.Y. 1997) (defining a claim as liquidated where the value of the claim is readily or easily ascertainable). Paragraph 54, on the other hand, addresses potential and unidentified payment obligations that could become due pursuant to the numerous provisions of a complex agreement. As any such claim was not readily or easily ascertainable, it was unliquidated. *See Diamond Servs. Mgmt., LLC v. Fable Jewelry Co.*, 12 Civ. 3543, 2012 U.S. Dist. LEXIS 165899 at *19 n. 74 (S.D.N.Y. Nov. 20, 2012) (deeming defendant's counterclaim for breach of the implied covenant of good faith and fair dealing to be an unliquidated claim, as opposed to the plaintiff's liquidated claim for unpaid royalty fees). Accordingly, the Court could not – and did not – allow the Claim.[4] Sale Order ¶ 54.

6. In sum, Paragraph 54 does not grant, and even more importantly, does not allow, any administrative expense claim. Thus, New GM was required to file the Claim before the First Administrative Bar Date.

---

[4] New GM objects to any reliance on the Plan's definition of "allowed" – which excludes claims acknowledged by the Debtors that are contingent, disputed or unliquidated – on the basis that "in this context [the definition] is clearly inappropriate [because t]he Plan was approved over three months *after* the Administrative Bar Date Order was entered" and because "no administrative expense claim could ever be set forth in the Debtor's schedules." New GM Reply at ¶ 6; n. 1 (emphasis in the original). That the Plan was approved after the Administrative Bar Date Order does not negate the implication that in the context of this case, the term "allow" has been understood as described in the Plan. Indeed, regardless of when the Plan was approved, an early version of the Plan with this same definition was filed well before the Administrative Bar Date Order, in August 2010. Debtors' Joint Chapter 11 Plan, dated August 31, 2010, § 1.4. Moreover, the Plan attaches the defined terms "Allowed" and "Administrative Expenses" numerous times, demonstrating that applying the Plan's definition of "Allow" to "Administrative Expenses" is wholly appropriate. Plan §§ 2.1, 2.4. 2.5, 5.2, 6.2, 9.2.

4

### B.  The Word "Any" Does Not Alter the Limited Application of Paragraph 54

7.  In the Sur-Reply Response I, the GUC Trust also established that Paragraph 54 is limited to "amounts that become payable by the Seller to the Purchaser pursuant to" the Master Purchase Agreement, and thus excludes claims for damages arising out of a potential breach. Sur-Reply Response I at ¶¶ 7-8 (citing Sale Order ¶ 54). That exclusion is evident from the fact that Paragraph 54 uses the specific and narrow description of "amounts that become payable," but not the more common and general term "claim." Moreover, the restrictive term "pursuant to" was chosen over the more inclusive phrase "arising out of" or "under."

8.  In response, New GM concedes the Claim is for a potential breach, but argues that the GUC Trust "is clearly wrong" because Paragraph 54 uses the word "*[a]ny.*" New GM Reply ¶ 9 (emphasis in the original). In further support of its argument that Paragraph 54 includes breach of contract claims, New GM relies on the fact that Paragraph 54 did not use the words "ordinary course." *Id.* ¶ 10. However, New GM does not adequately address the actual language that excludes the Claim, and New GM does not explain how a *claim arising out of a breach* can be considered a "*payment obligation . . . pursuant to*" the Master Purchase Agreement. Thus, New GM is advocating that the Court ignore the language of Paragraph 54 that limits its application to a specific category of claims – payment obligations pursuant to the Master Purchase Agreement – simply because the word "any" precedes the word "amounts." There is no basis for doing so and Paragraph 54 should be limited to its terms.

### C.  New GM's Remaining Arguments Are Meritless

9.  New GM offers two other arguments, neither of which have merit. First, New GM maintains that by filing the Claim before the Second Administrative Bar Date, New GM did not demonstrate that it believed that it was required to comply with the deadlines set

forth in the Administrative Bar Date Order. New GM Reply ¶ 1. New GM argues that the Claim explicitly states that it was only filed "out of an abundance of caution to preserve and reserve all of its rights," which shows that New GM did not necessarily believe that it was bound by the Administrative Bar Date Order. *Id*. (citing Claim at ¶ 6). However, the Claim states that it is being filed "out of an abundance of caution" because "New GM is not aware of any administrative expense claim that it may have against the Debtors," not because the Administrative Bar Date might not apply. Claim at ¶ 6. Moreover, in the preceding paragraph of the Claim, New GM explicitly references the Administrative Bar Date Order and indicates that it believes the Second Administrative Bar Date applies. Claim at ¶ 5. Thus, while New GM presents an imaginative argument, the Claim's "out of an abundance of caution" reservation does not refute the implication that New GM believed it was subject to the Administrative Bar Date Order when it filed the Claim.

10. New GM also submits emails to augment the argument it made in its Response to the Objection, namely that because the parties recognized in the Confirmation Order that certain of the Debtors' obligations would continue past the Effective Date, the Claim was timely filed. New GM Reply at ¶ 2; Response at ¶¶ 2-8. This point was improperly raised because the GUC Trust did not address the parties' understanding as to whether the Debtors' obligations would continue past the Effective Date in the Sur-Reply Response I. *See* Hearing Transcript at p. 25. In any event, New GM adds nothing to its prior meritless arguments because the GUC Trust does not dispute that the Debtors had certain obligations arising out of the Master Purchase Agreement that continued past the Effective Date. In fact, all New GM has done is continue to confirm that the Claim is based on obligations that arose from the Master Purchase Agreement and thus the Claim is untimely.

**Conclusion**

For the reasons set forth above and in the Objection, Reply and Sur-Reply Response I, this Court should enforce the Administrative Bar Date Order and enter an order disallowing and expunging the Claim, and granting such other and further relief as is just and proper.

Dated: New York, New York
February 19, 2013

/s/ Barry N. Seidel
Barry N. Seidel
Eric B. Fisher
Shaya M. Berger

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Motors Liquidation
Company GUC Trust