**HEARING DATE AND TIME: March 28, 2013 at 10:30 a.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
: 
In re                                                         :        **Chapter 11 Case No.**
: 
**MOTORS LIQUIDATION COMPANY,** *et al.,*  :        **09-50026 (REG)**
   **f/k/a General Motors Corp.,** *et al.*   :
: 
        **Debtors.**                           :        **(Jointly Administered)**
: 
------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY GUC TRUST'S**
**REPLY TO RESPONSE OF WALTER J. LAWRENCE TO THE 82ND OMNIBUS**
**OBJECTION TO CLAIMS (CLAIMS RELATING TO FORMER EMPLOYEES**
**REPRESENTED BY UNITED AUTO WORKERS)**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**")[1] in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended, supplemented, or modified from time to time), files this reply (the "**Reply**") to the response at ECF No. 7022 (the "**Response**") interposed to the 82nd Omnibus Objection to Claims (Claims Relating to Former Employees Represented by the United Auto Workers) (ECF No. 6739) (the "**Omnibus Objection**") by Walter J. Lawrence (the "**Claimant**"), and respectfully represents:

<u>Preliminary Statement</u>

1.  New GM has assumed responsibility for all liabilites relating to former employees of the Debtors who were represented by the UAW pursuant to the Master Purchase Agreement.[2] Mr. Lawrence is a former employee of the Debtors who was represented by the UAW, and has asserted a secured claim in the amount of $160,608.00 relating to a "GM/UAW Supplemental Pension Plan (Hourly) Agreement." (*See* Proof of Claim No. 21225, the "**Claim**"). Any liability for Mr. Lawrence's Claim clearly resides with New GM, and this Court should dismiss Mr. Lawrence's Response to the Omnibus Objection and disallow and expunge Mr. Lawrence's Claim from the claims register, while preserving Mr. Lawrence's right to pursue any causes of actions he may have relating to the Claim against New GM.

---

[1] The Debtors are Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**"), MLCS, LLC (f/k/a Saturn, LLC), MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation), MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.), Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc.

[2] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Omnibus Objection.

09-50026-mg   Doc 12365   Filed 03/25/13   Entered 03/25/13 11:37:39   Main Document
Pg 3 of 54

2.    Mr. Lawrence's Response does not address the underlying reason for the Debtors' objection to the Claim, though argues that the Bankruptcy Court was divested of jurisdiction to consider the Claim by Mr. Lawrence's unrelated appeal (the "**Automatic Stay Appeal**") to the District Court for the Southern District of New York of this Court's *Order Denying Motion of Walter J. Lawrence For Relief from the Automatic Stay* dated November 24, 2009 (ECF No. 4524).  Without addressing the merits of the underlying argument, the GUC Trust notes that the District Court for the Southern District of New York's *Memorandum and Opinion Order* dated November 8, 2010 in Case No. 10-CV-00036-RJH affirmed the Bankruptcy Court's denial of Mr. Lawrence's motion for relief from the automatic stay, and dismissed Mr. Lawrence's appeal [App. ECF No. 8] (the "**District Court Order,**" annexed hereto as **Exhibit 1**), rendering moot the fundamental objection raised in Mr. Lawrence's Response.  This Court does have jurisdiction to consider the Claim, and for the reasons set forth in the Omnibus Objection and this Reply, should disallow the Claim and expunge it from the claims register.

3.    Attorneys for the Motors Liquidation Company GUC Trust have repeatedly attempted to contact Mr. Lawrence by mail and telephone to resolve the Claim consensually, but to date have not been successful in reaching the Claimant and have not received any communication from the Claimant.  The Debtors and the GUC Trust are, of course, sympathetic with the impact that the financial problems of the Debtors have had on Mr. Lawrence.  However, in view of the Debtors' liquidation, the fact that New GM assumed responsibility for the Claim under the Master Purchase Agreement, and under applicable law, there should be no other outcome other than disallowance of the Claim.

US_ACTIVE:\44196576\2\72240.0639

## The Claim

4.    On November 9, 2009, Mr. Lawrence filed the Claim in the secured amount of

$160,608.00 asserting liability relating to a "GM/UAW Supplemental Pension Plan (Hourly)

Agreement."[3]  Having reviewed the Claim and determined Mr. Lawrence's status as a former

employee of the Debtors represented by the UAW, the Debtors concluded that the Claim related

to liabilities that have been assumed by General Motors Company ("**New GM**") pursuant to the

terms of that certain Amended and Restated Master Sale and Purchase Agreement (the "**Master**

**Purchase Agreement**"), dated as of June 26, 2009, by and among General Motors Corporation,

Saturn LLC, Saturn Distribution Corporation, Chevrolet-Saturn of Harlem, Inc., and New GM.

As described further in the Omnibus Objection, claims for: (a) the elimination or reduction of

pension or welfare benefits prior to the commencement of these chapter 11 cases, with

continuing effect following the commencement of these chapter 11 cases, (b) the nonpayment of

benefits with respect to such pension or welfare benefits, (c) recognition of employee

suggestions or ideas, (d) nonpayment of salaries or wages and other amounts, and (e) allegations

of discrimination and adverse job action for former employees of the Debtors represented by the

UAW, were assumed by New GM pursuant to the Master Purchase Agreement.  Mr. Lawrence's

Claim falls squarely within the type of UAW-related liabilities assumed by New GM pursuant to

the Master Purchase Agreement.  Accordingly, on August 20, 2010, the Debtors filed the

Omnibus Objection.

5.    Responses to the Omnibus Objection were due by September 17, 2010.  On

September 14, 2010, Mr. Lawrence filed his Response to the Omnibus Objection opposing the

---

[3] Mr. Lawrence originally filed three Proofs of Claim, numbers 3319, 9597 and 21225.  Proofs of Claim
number 3319 and 9597 were affected by the Debtors' First Omnibus Objection to Claims (ECF No. 4622)
and ordered amended and superseded by Proof of Claim 21225 on January 14, 2010 (ECF No. 4806).

US_ACTIVE:\44196576\2\72240.0639

relief being sought by the Debtors with respect to the Claim, and a hearing on the Claim was

adjourned. Having further investigated the Claim, the GUC Trust confirms that the Claim

asserted by Mr. Lawrence is for liabilities that, even if valid, have been assumed by New GM

under the Master Purchase Agreement, and that the Claim should be disallowed and expunged

from the claims register.

6. Mr. Lawrence's Claim is based on a complex series of event relating to his

pension payments, and which were litigated in a suit filed by Mr. Lawrence captioned *Lawrence

v. General Motors Hourly-Rate Emp. Pension Plan*, No. 5:07-cv-408-Oc-10(KRS), slip op.

(M.D. Fla. Sept. 27, 2010) (the "**ERISA Suit**"), in which Mr. Lawrence brought an ultimately

unsuccessful action against the General Motors Hourly-Rate Employees Pension Plan and

General Motors Corporation.

7. While the proceedings involving General Motors Corporation in the ERISA

Suit were stayed as a result of GM's bankruptcy filing, the United States District Court for the

Middle District of Florida, Ocala Division, granted the General Motors Hourly-Rate Employees

Pension Plan's cross-motion for summary judgment and entered judgment in favor of the

General Motors Hourly-Rate Employees Pension Plan and against Mr. Lawrence as to all claims,

by order dated September 24, 2010 (the "**ERISA Suit Order**," annexed hereto as **Exhibit 2**).

The ERISA Suit Order further provides that all further proceedings against General Motors

Corporation are stayed, and because the remaining claims in the case are dormant, the District

Court Clerk was directed to terminate any and all pending motions as they relate to General

Motors Corporation and dismiss the ERISA Suit, subject to the right of any party to move to

reopen the case upon a showing that the bankruptcy stay has been lifted, or for other good cause

shown (ERISA Suit Order at 33, paragraph 17).

4

8.    What is clear from the Claim and the ERISA Suit that the Claim is based on is that the Claim falls squarely within the type of liability that was assumed by New GM pursuant to the Master Purchase Agreement.

### The Claim Should Be Disallowed and Expunged

9.    Mr. Lawrence has  failed to demonstrate the validity of the Claim and, thus, the Claim should be disallowed and expunged.  *See, e.g.*, *In re Oneida, Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009), *aff'd*, No. 09 Civ. 2229 (DC), 2010 WL 234827 (S.D.N.Y. Jan. 22, 2010) (claimant has burden to demonstrate validity of claim when objection is asserted refuting claim's essential allegations).  To the extent valid, the liabilities asserted in the Claim have been assumed by New GM pursuant to the Master Purchase Agreement and are therefore not liabilities of the Debtors or the GUC Trust and should therefore be disallowed and expunged.

### Conclusion

WHEREFORE, for the reasons set forth above and in the Omnibus Objection, the GUC Trust respectfully requests that the Court grant the relief requested in the Omnibus Objection and such other and further relief as is just.

Dated:  New York, New York
         March 25, 2013

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
Company GUC Trust

US_ACTIVE:\44196576\2\72240.0639

## <u>Exhibit 1</u>

**District Court Order**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
In re:                                      :        Chapter 11
                                            :
MOTORS LIQUIDATION COMPANY, et al.,         :        Case No. 09-50026 (REG)
                                            :
              Debtors.                      :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
WALTER J. LAWRENCE,                         :
                                            :
              Appellant,                    :
                                            :
       - v.-                                :        10 Civ. 36 (RJH)
                                            :
                                            :
MOTORS LIQUIDATION COMPANY,                 :
                                            :        **MEMORANDUM**
                                            :        **OPINION AND ORDER**
              Appellee.                     :
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Appellant Walter J. Lawrence, appearing *pro se*, appeals from a judgment of the
United States Bankruptcy Court for the Southern District of New York denying his motion
for relief from the automatic stay pursuant to Section 362 of the Bankruptcy Code.
Appellant seeks relief to proceed with an action he filed against General Motors ("GM"),
the predecessor in interest to Appellee Motors Liquidation Company ("MLC"). Appellant
contends that the Bankruptcy Court lacked subject matter jurisdiction over his motion and
that the Bankruptcy Court erred in denying him relief. For the reasons stated below, the

Court finds that the Bankruptcy Court had jurisdiction to consider Appellant's motion to

lift the stay and did not abuse its discretion in denying that motion.[1]

## BACKGROUND

The following facts are taken from Appellant's motion for relief from the automatic

stay filed in the bankruptcy court. *See In re Motors Liquidation Co.*, Ch. 11 Case No. 09-

50026 (Bankr. S.D.N.Y.) (Docket No. 4202) ("App. Mot."). Appellant was an employee of

GM until he retired on March 1, 1993. (*See* App. Mot. at 2-3.) As such, Appellant was a

beneficiary of the General Motors Hourly-Rate Employees Pension Plan ("the Pension

Plan") which was governed by the General Motors/United Auto Workers Pension Plan

Agreement ("the Agreement"). (*See* App. Mot. at 2-3.)

On May 14, 2007, the Pension Plan wrote to Appellant informing him that

Appellant had received $32,985.00 in overpayments and that Appellant was required to

remit such overpayments to the Pension Plan. (*See* App. Mot. at 24.) The Pension Plan

sent Appellant a second notice in September 2007, but Appellant refused to remit the

overpayments. The Pension Plan then began reducing Appellant's ongoing payments to

satisfy the outstanding overpayments. (*See* App. Mot. at 24-25.)

Appellant brought suit against the Pension Plan and GM in the United States

District Court for the Middle District of Florida on October 9, 2007 alleging that GM and

the Pension Plan had violated the Employee Retirement Income Security Act ("ERISA")

by wrongfully reducing his pension payments and diverting some of those payments to the

IRS to satisfy a tax levy against Appellant. (*See Walter J. Lawrence v. General Motors*

---

[1] On September 21, 2010, Appellant also filed a "Motion for the Court to Rule on
Appellant's Pending Appeal from the United States Bankruptcy Court." (Docket No. 8.)
The Court's disposition of Appellant's appeal in this order vitiates Appellant's motion, and
that motion is hereby dismissed as moot.

*Hourly-Rate Employee Pension Plan*, 5:07-CV-408 OC (M.D. Fla.) (Docket No. 1) ("the

ERISA suit").)  Appellant amended his complaint in February 2008 and the parties

subsequently filed cross motions for summary judgment, which remain pending.  (*See*

App. Br. at 11; App. Mot. at 25-26, 31.)[2]

On June 1, 2009, MLC—an entity formed in conjunction with the United States

Treasury to reorganize GM—filed a Title 11 bankruptcy petition in the bankruptcy court in

this district.  Pursuant to 11 U.S.C. § 362(a), the bankruptcy petition triggered the so-called

"automatic stay" of all pre-petition litigation against GM which, in MLC's case, included

the ERISA suit.  Appellant filed a motion in the bankruptcy court for this district seeking

relief from the automatic stay to allow the ERISA suit to proceed.  (*See* App. Mot.; App.

Br. at 7.)  In an opinion from the bench after a hearing on November 6, 2009, Bankruptcy

Judge Gerber denied Appellant's motion and later entered an order to that effect on

November 24, 2009.  (*See id.*; *see also* Tr. of Hr'g, Nov. 6, 2009, *In re Motors Liquidation

Co.*, 09-50026 (Bank. S.D.N.Y.) (Docket No. 4416) ("Hr'g Tr.").) On December 3, 2009,

Appellant filed a notice of appeal of that order to this court.

## STANDARD OF REVIEW

"Pursuant to Bankruptcy Rule 8013, a District Court reviews a bankruptcy court's

conclusions of law de novo and reviews findings of fact for clear error." *In re Cavalry

Const., Inc.*, 428 B.R. 25, 29 (S.D.N.Y. 2010); *see also In re Bayshore Wire Prods. Corp.*,

209 F.3d 100, 103 (2d Cir. 2000) ("Like the District Court, we review the Bankruptcy

---

[2] Appellant also seems to have filed a series of other motions in his ERISA suit, including
motions to strike affirmative defenses, various discovery motions, and a motion for
recusal.  (*See* App. Mot. at 31-33.)  Thereafter, the United States District Court for the
Middle District of Florida entered an order enjoining Appellant from filing any other
documents with that court pending disposition of the parties' motions for summary
judgment.  (*See* App. Mot. at 33.)

Case 1:10-cv-09036-RJH    Document 15    Filed 11/13/10    Page 4 of 12

Court's findings of fact for clear error, [and] its conclusions of law de novo ...." (internal

citations omitted).  A district court reviews a bankruptcy court's denial of a motion for

relief from the automatic stay for abuse of discretion.  *See In re Dairy Mart Convenience*

*Stores, Inc.*, 351 F.3d 86, 91 (2d Cir. 2003) ("The decision to lift an automatic stay is left

to the discretion of the bankruptcy court...."); *In re Sonnax Indus., Inc.*, 907 F.2d 1280,

1286 (2d Cir. 1990).  In such a review, the district court considers not whether it would

have made the same decision, but only whether the decision was reasonable.  *See In re*

*Jamesway Corp.*, 179 B.R. 33, 39 (S.D.N.Y. 1995).

## DISCUSSION

### A.  Subject Matter Jurisdiction

Despite having moved the bankruptcy court to grant relief from the automatic stay,

Appellant now contends that the bankruptcy court did not have jurisdiction over that

motion.  Appellant argues that, because the terms of the Agreement prohibited GM from

transferring beneficial interests in the Pension Plan, the pension benefits at issue in the

ERISA suit are not part of the bankruptcy estate.

Appellant's arguments are misplaced.  Section 1334 of title 28 of the United States

Code provides that the federal "district courts shall have original but not exclusive

jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases

under title 11."  28 U.S.C. § 1334(b).  Under 28 U.S.C. § 157(a), a "district court may

provide that any or all cases under title 11 and any or all proceedings arising under title 11

or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for

the district."  28 U.S.C. § 157(a).  "In this district, by standing order under 28 U.S.C. §

157(a), the district court refers all cases 'arising under,' 'arising in,' or 'related to' Title 11

proceedings to the bankruptcy court."  *In re 131 Liquidating Corp.*, 222 B.R. 209, 211

(S.D.N.Y. 1998) (citing Order of Acting Chief Judge Robert J. Ward, July 10, 1984).

Accordingly, the bankruptcy court had jurisdiction if Appellant's motion concerned a

proceeding "arising under title 11, or arising in or related to cases under title 11."

Appellant's motion was plainly a proceeding "arising under title 11." Not only

does the provision governing the automatic stay from which Appellant seeks relief appear

in 11 U.S.C. § 362, but Title 11 also defines "motions to terminate, annul, or modify the

automatic stay" as "core proceedings" which reside "at the heart of federal bankruptcy

power." *Norkin v. DLA Piper Rudnick Gray Cary, LLP*, No. 05 Civ. 9137, 2006 WL

839079, at *3 (S.D.N.Y. Mar. 31, 2006). Accordingly, courts in this Circuit have

consistently held that bankruptcy courts have jurisdiction over motions for relief from the

automatic stay. *See*, *e.g.*, *Contemporary Mortg. Bankers, Inc. v. High Peaks Base Camp,*

*Inc.*, 156 B.R. 890, 891 n.2 (N.D.N.Y. 1993) ("A motion to terminate, annul, or modify the

automatic stay is a core proceeding within the meaning of 28 U.S.C. § 157(2)(G) and is,

therefore, a proceeding properly referred to a bankruptcy judge under 28 U.S.C. § 157.");

*In re Gibson & Cushman Dredging Corp.*, 100 B.R. 634, 637 (E.D.N.Y. 1989) ("[A]

motion to modify the automatic stay is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

As such, the Bankruptcy Court was empowered to enter judgment on that branch of the

motion.") The same was true of the bankruptcy court here.

**B.  Relief from the Automatic Stay**

Motions for relief from the automatic stay are governed by 11 U.S.C. § 362(d),

which provides in relevant part:

> (d)  On request of a party in interest and after notice and a hearing, the court
> shall grant relief from the stay provided under subsection (a) of this section,
> such as by terminating, annulling, modifying, or conditioning such stay—

        (1)      for cause, including the lack of adequate protection of an
interest in property of such party in interest;

        (2)      with respect to a stay of an act against property under
subsection (a) of this section, if—

              (A) the debtor does not have an equity in such property; and

              (B) such property is not necessary to an effective
reorganization;

11 U.S.C. § 362(d).

      Apparently challenging the substance of the bankruptcy court's denial of relief,

Appellant argues that he "met his burden of proof under 11 U.S.C. § 362…because Debtor

has no equity in the property that is excluded from the estate as a result of debtor's

agreement with the UAW to include within the term of the GM/UAW ERISA and IRC

supplemental pension plan the anti-alienation and anti-assignment clause." (App. Br. at 2.)

That is, Appellant appears to argue that the provisions of the Agreement prohibiting GM

from transferring beneficial interests in the Pension Plan deprived MLC of any equity in

the property for purposes of Section 362(d)(2).

      This argument is directed at the wrong section of Section 362. "The legislative

history makes clear that § 362(d)(2) is aimed at protecting a creditor's right to foreclosure,

*not* a creditor's right to pursue any form of litigation against the debtor in another court."

*In re Northwest Airlines Corp.*, No. 05-17930, 2006 WL 2583647, at *3 n. 2 (Bankr.

S.D.N.Y. Aug. 28, 2006) (emphasis added); *see also* S. Rep. No. 95-589, at 5 (1978) ("In

cases where the single asset of the debtor is *real property*, the court shall grant relief from

the stay if the debtor has no equity in the collateral, thereby allowing the creditor to

proceed with his foreclosure.") (emphasis added). Since Appellant's ERISA action is not

an action to enforce a secured interest in real property, Section 362(d)(2) does not apply

and his motion for relief from the stay can only be granted for "cause" under Section

362(d)(1). *See Sonnax*, 907 F.2d at 1285 ("Because the instant case concerns a stay of a

judicial proceeding, only Section 362(d)(1) is applicable.")

     In considering whether "cause" exists to grant relief from an automatic stay under

Section 362(d)(1), courts in this Circuit apply a multifactor test pursuant to the Second

Circuit's decision in *In re Sonnax Industries, Inc.*, 907 F.2d 1280 (2d Cir. 1990).  In

*Sonnax*, the Second Circuit identified twelve factors relevant to a "cause" determination:

> (1) whether relief would result in a partial or complete resolution of the
> issues; (2) lack of any connection with or interference with the bankruptcy
> case; (3) whether the other proceeding involves the debtor as a fiduciary; (4)
> whether a specialized tribunal with the necessary expertise has been
> established to hear the cause of action; (5) whether the debtor's insurer has
> assumed full responsibility for defending it; (6) whether the action primarily
> involves third parties; (7) whether litigation in another forum would
> prejudice the interests of other creditors; (8) whether the judgment claim
> arising from the other action is subject to equitable subordination; (9)
> whether movant's success in the other proceeding would result in a judicial
> lien avoidable by the debtor; (10) the interests of judicial economy and the
> expeditious and economical resolution of litigation; (11) whether the parties
> are ready for trial in the other proceeding; and (12) impact of the stay on the
> parties and the balance of harms.

*Id.* at 1286.  The bankruptcy court here concluded that the *Sonnax* factors weighed strongly

against granting Appellant relief from the automatic stay.  That decision was not an abuse

of discretion.

     Focusing on the second, seventh, and twelfth *Sonnax* factors, the bankruptcy court

found that the *Sonnax* factors weighed against relief because, regardless of whether

beneficial interests in the Pension Plan were property of the MLC estate, allowing

Appellant to proceed with the ERISA suit would force MLC to expend estate resources to

defend that action.  Hence the bankruptcy court found that relief "would prejudice the

interests of other creditors" and that there was no "lack of any connection with or

interference with the bankruptcy case." (*See* Hr'g Tr. at 39:25-41:3.) By the same token,

in assessing the "impact of the stay on the parties and the balance of harms," the

bankruptcy court noted that denying Appellant relief would conserve the resources of the

MLC estate without prejudicing Appellant because the ERISA suit against MLC could and

would be adjudicated as part of the claims allowance process under Title 11. (*See* Hr'g Tr.

at 41:4-42:4.) Far from an abuse of discretion, that reasoning accorded with the general

rule that, "[g]enerally, unsecured claims should not be granted relief from the stay because

to do so would result in a violation of one of the fundamental concepts of bankruptcy

law[:] that there should be an equality of distribution among creditors. An unsecured

claimant should not be entitled to obtain a distributive advantage over other unsecured

claimants who are similarly enjoined from seeking distribution by any method other than

in accordance with the distributive scheme under the Bankruptcy Code." *In re Leibowitz*,

147 B.R. 341, 345 (Bankr. S.D.N.Y.1992).

The bankruptcy court also found that the first *Sonnax* factor, "whether relief would

result in a partial or complete resolution of the issues", weighed against relief because

allowing the ERISA suit to proceed would merely enable the United States District Court

for the Middle District of Florida to resolve the pending cross motions for summary

judgment. (Hr'g Tr. at 42:5-19.) The outcome of those motions is at best uncertain, and it

seems unlikely that the Florida court will grant a *plaintiff's* motion for summary judgment.

*Cf. Norden v. Samper*, 503 F.Supp.2d 130, 136 (D.D.C. 2007) ("This is that rare case in

which a plaintiff wins on summary judgment."). Hence the bankruptcy court reasonably

found that granting Appellant relief from the stay would more likely expose MLC to

protracted litigation rather than speedily resolve the ERISA suit.

For much the same reason, the bankruptcy court found that the parties were not ready for trial in the ERISA action and that the eleventh *Sonnax* factor weighed against relief. (*See* Hr'g Tr. at 46:19-23.) That analysis, too, was far from an abuse of discretion. Appellant contends that he has completed discovery and that the "the district judge is right on the doorstep of resolving this case" (Hr'g Tr. at 25:7-8), but the dispositive motions filed in the ERISA suit were pending for over a year before the automatic stay came into effect, hardly an indication that the case was ready for trial.

The bankruptcy court also found that the United States District Court for the Middle District of Florida was not a "specialized tribunal" with any unique expertise in adjudicating ERISA actions. (*See* Hr'g Tr. at 43:9-14.) That decision was more than reasonable, for this Court has found bankruptcy courts well-equipped to adjudicate statutory actions involving employee benefits. *See, e.g.*, *See In re Bally Total Fitness of Greater New York, Inc.*, 411 B.R. 142, 1471-148 (S.D.N.Y. 2009) (finding no need for a specialized tribunal in wage and hour class action). *Cf. In re White Motor Corp.*, 42 B.R. 693, 705-706 (N.D. Ohio 1984) (finding no need for bankruptcy court to withdraw under Section 157 from suit involving ERISA and tax issues).

In addition, the bankruptcy court found that the presence of the Pension Plan as a defendant in Appellant's ERISA suit weighed against relief because the automatic stay would not apply to a suit against the Pension Plan alone. (Hr'g Tr. at 43:22-44:13.) *Cf. Buchanan v. Golden Castin Corp. Hourly Health Benefit Plan*, No. No. 4:03-CV-151, 2003 WL 22951936, at *3 (S.D.Ind. Oct. 10, 2003) (holding that "a stay of claims against the employer does not stay claims against the employee benefit plan") (citing *Brengettys v. LTV Steel Hourly Pension Plan*, 241 F.3d 609, 609 n. 1 (7th Cir.2001)). Accordingly,

9

Appellant could vitiate the effect of the automatic stay by severing the ERISA suit into two actions, one against the Pension Plan alone in the Middle District of Florida and another against MLC in the bankruptcy court. The fact that Appellant has the power to move his ERISA suit forward weighs strongly in favor of denying him relief.

Finally, the bankruptcy court found that "the interests of judicial economy and the expeditious and economical resolution of litigation" weighed against relief because allowing Appellant to proceed with his classic pre-petition action would open the "floodgates" to thousands of other litigants with garden variety claims against the MLC estate. (*See* Hr'g Tr. at 44:20-45:10.) That would usher in the very state of affairs the automatic stay was enacted to prevent. *See In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 989 (2d Cir. 1990) ("[T]he automatic stay allows the bankruptcy court to centralize all disputes concerning property of the debtor's estate in the bankruptcy court so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas.").

In making these findings, the bankruptcy court clearly did not abuse its discretion. "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy." S. Rep. No. 95-989, at 54-55 (1978). The only reason related to the *Sonnax* factors that Appellant has advanced as to why MLC should be stripped of the fundamental debtor protection embodied in the stay is that doing so would prevent the bankruptcy court from being "further burdened by more motions for pro hac

vice attorneys to come in here and try to hear issues…that have already been heard by the district court judge in Ocala, Florida….” (Hr'g Tr. at 23:9-24:13.) However, the minimal benefit, if any, of freeing the bankruptcy court of such routine motions is dwarfed by the burden on MLC of defending the ERISA suit outside the established claims process. Under *Sonnax*, that conclusion strongly militates against relief, particularly where Appellant could vitiate any burden to any party by severing his suit. In reaching the same conclusion, the bankruptcy court did not abuse its discretion.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's denial of Appellant's motion for
relief from the automatic stay is AFFIRMED, Appellant's appeal [1] is DISMISSED, and
Appellant's motion [8] to decide this appeal is DISMISSED as moot. The Clerk is
directed to close this case.


SO ORDERED.


Dated: New York, New York
~~October~~ ___, 2010
November 8,

_____
Richard J. Holwell
United States District Judge

12

## **Exhibit 2**

**ERISA Suit Order**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WALTER J. LAWRENCE,

Plaintiff,

-vs-                                      Case No.  5:07-cv-408-Oc-10GRJ

GENERAL  MOTORS  HOURLY-RATE
EMPLOYEES  PENSION  PLAN,
GENERAL MOTORS CORPORATION,

Defendant.
_____/

## **O R D E R**

Plaintiff Walter J. Lawrence, proceeding *pro se*, is a beneficiary and participant

in the General Motors Hourly-Rate Employees Pension Plan (the "GM Plan").

Lawrence alleges that the GM Plan and its Plan Administrator, General Motors

Corporation ("GMC") violated his rights under the Employee Retirement Security Act

of 1974, 29 U.S.C. § 1001 *et seq* ("ERISA"), when GMC and the GM Plan reduced

Lawrence's monthly pension benefits to recoup an accidental overpayment.

Lawrence has filed two motions for summary judgment (Docs. 35, 68), and the

Defendants have filed a cross-motion for summary judgment (Doc. 51), to which the

Parties have filed responses and reply briefs.  The Parties have also filed a host of

other assorted motions, all of which are ripe for disposition.  As discussed in more

detail below, the Court concludes that Lawrence's motions for summary judgment are

due to be denied, the GM Plan's cross-motion for summary judgment is due to be
granted, and all other motions are due to be denied.

## Undisputed Material Facts and Procedural History

I.      Undisputed Material Facts

Lawrence was a 31-year hourly-employee of GMC. As such, he was a member
of the International Union, United Auto Workers, and his terms and conditions of
employment were governed by the GM-UAW Collective Bargaining Agreements and
their supplements. Lawrence retired from GMC in 1993, and he began receiving
monthly pension benefits under the GM Plan as of March 1, 1993. The Plan
Administrator and Named Fiduciary for the GM Plan is GMC.

## A.      The Terms of the Plan

At the time Lawrence began receiving pension benefits, the terms and conditions
of his benefits were governed by the Supplemental Agreement Covering Pension Plan
to the GM-UAW Contract dated September 17, 1990, which was collectively bargained
by and between GMC and the Union. (See Doc. 59, pp. 91, 160, 175). Section 3(a)
of the 1990 Supplemental Agreement, entitled "Board of Administration" established
a six member central Board of Administration (three members appointed by GMC and
three appointed by the Union) to transact the "necessary business" of the GM Plan, and
established a four-member quorum requirement. (Id.). Section 3(c) established that
the Board "shall work out matters" including "the procedures for reviewing applications

-2-

for pensions;" "the handling of complaints regarding the determination of age, service credits, and computation of benefits;" and "procedures for making appeals to the Board." (Doc. 59, p. 180). The 1900 Supplemental Agreement further provided that "[t]here shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union and its members, the employee or employees involved, and on the Corporation." (Id., p. 179).

The Summary Plan Description covering the GM Plan dated September 17, 1990 also discussed the Board of Administration's authority in resolving pension disputes:

> If you do not agree with a GM decision that has been made with respect to (1) your age, (2) the amount of your credited service, or (3) the computation of your benefits, you may appeal this decision to your local pension committee. If (1) the local pension committee is unable to agree on your appeal, or (2) the committee agrees but you do not, your case may be referred to the GM-UAW Pension Board of Administration. If the Board members fail to agree, the Board may appoint an impartial chairman to resolve the dispute. The decision of the (1) Board, or (2) impartial chairman, will be binding on all parties.

GMC and the Union later enacted a new Supplemental Agreement Covering Pension Plan to the GM-UAW Contract dated September 18, 2003 (Doc. 59, p. 1). The 2003 Supplemental Agreement contains a similar Section 3(a), establishing a six member Board of Administration under the same terms and conditions as before, and a similar Section 3(c) authorizing the Board to resolve pension disputes and appeals (Id., pp. 8-9, 11). Section 3(a)(9) further provides:

> There shall be no appeal from any ruling by the Board which is within its authority. Each such ruling shall be final and binding on the Union and its

members, the employee or employees involved, and on the Corporation, subject only to the arbitrary and capricious standard of judicial review.

(Id., p. 9).

The 2003 Supplement Agreement also contains a detailed Appeals Procedure:

1.      Any employee who disputes a determination with respect to such employee's (i) age, (ii) credited service under the Pension Plan, (iii) computation of pension benefits or supplements under the Pension Plan, (iv) partial or complete suspension of supplements, or (v) whether such employee is engaged in gainful employment except for purposes of rehabilitation, may file with the Center a written claim on form BA I, "Employee Claim to Pension Committee." Such claim shall be filed within 60 days, including the 60th day, of receipt of such determination.

2.      In all cases where the employee has filed a claim on form BA 1, the Pension Committee shall review such claim with the employee, return one copy of form BA 1 to the employee with a written answer to the claim and, if the claim is rejected the reason therefor.

3.      If the employee is not satisfied with the answer, such employee may request the Pension Committee, in writing on form BA 1, to refer the case to the Board for decision. Such claim shall be filed with the Pension Committee within 60 days, including the 60th day, of the employee's receipt of such answer. The Pension Committee shall then forward form BA 1, with material pertinent to the case and the answer to the employee's claim, to the Board.

4.      If the Pension Committee should fail to agree upon the disposition of any application or authorization, or of any claim filed by an employee, the case shall be referred to the Board for determination on form BA 2, "Notice of Appeal to Board of Administration." A written signed statement setting forth all the facts and circumstances surrounding the case, and any material pertinent to the case, shall accompany the referral. Such statement may be submitted jointly by the members of the Pension Committee or separate signed statements may be submitted provided such statements are exchanged by the Pension Committee members prior to being submitted to the Board.

-4-

5.    All material with respect to cases referred to the Board shall be submitted in duplicate and shall be mailed to the Secretary, Pension Board of Administration, Mail Code 482-B37-A68, General Motors Global Headquarter, 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000.

6.    The Board shall advise the Pension Committee in writing of the disposition of any case referred to the Board by the Pension Committee. The Pension Committee shall forward a copy of such disposition to the employee.

7.    Forms BA 1 and BA 2 for each appeal must be requested from the Secretary, Pension Board of Administration, Mail Code 482-B37-A68, General Motors Global Headquarter, 200 Renaissance Center, P.O. Box 200, Detroit, Michigan 48265-2000.

(Doc. 59, pp. 72-73).

Both the 1990 and 2003 Supplemental Agreements contain virtually identical

provisions prohibiting the alienation of a beneficiary's pension benefits.

The pension fund shall not in any manner be liable for or subject to the debts or liabilities of any employee, separated employee, retired employee, pensioner or surviving spouse.  No right, benefit, pension or supplement at any time under the Plan shall be subject in any manner to alienation, sale, transfer, assignment, pledge or encumbrances of any kind except in accord with provisions of a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p).  If any person shall attempt to, or shall, alienate, sell, transfer, assign, pledge or otherwise encumber accrued rights, benefits, pensions or supplements under the Plan or any part thereof, or if by reason of bankruptcy or other event happening at any time such benefits would otherwise be received or enjoyed by anyone else, the Corporation may terminate the interest of such employee, pensioner or surviving spouse in any such benefit and instruct the trustee to hold or apply it to or for the benefit of such employee, pensioner or surviving spouse, spouse, children or other dependents, or any of them as the Corporation may instruct; provided, however, that any pensioner, or surviving spouse, entitled to a monthly benefit under the Plan:

-5-

. . . .

(b)    will have Federal and state income tax withheld pursuant to Federal and state statutes or regulations unless, only with respect to Federal income tax, elected otherwise by submitting to the Corporation authorization and direction acceptable to the Corporation.

. . . .

(e)    may have amounts of not less than $80.00 but in no event more than 10% of the retired employee's monthly pension, withheld to repay any outstanding overpayment owing to any benefit plan of the Corporation, pursuant to written authorization and direction acceptable to the Corporation.[1]

(Doc. 59, pp. 47-48, 212-13).

## B.    The Reduction in Lawrence's Benefits

In April 1999, GMC received a Notice of Levy from the Internal Revenue Service ("IRS") stating that Lawrence had unpaid federal income taxes for the tax years 1980 through 1994 in the total amount of $267,928.91 (Doc. 59, p. 300).  Based on the levy, the Defendants began remitting all of Lawrence's monthly pension benefits to the IRS, resulting in a monthly payment to Lawrence of $0.00.  There is no evidence that Lawrence ever contested this levy from 1999 until June 2007.

The Defendants continued to remit Lawrence's monthly pension benefit to the IRS through the end of 2004 without incident.  In January 2005, the GM Plan switched claims administrators from Electronic Data Systems Corporation ("EDS") to Fidelity Investments Institutional Operations Company, Inc. ("Fidelity").  Due to an apparent

_____

[1]The 1990 Supplemental Agreement listed a minimum withheld amount of $40.00.

-6-

mis-communication between EDS and Fidelity, Lawrence's monthly pension benefit in the amount of $1,121.70 was restored to him. However, at the same time, Fidelity continued to remit a monthly payment in the amount of $1,099.50 to the IRS. This resulted in the Defendants making payments to the IRS to reduce Lawrence's tax liabilities without concurrently reducing the pension benefits paid to Lawrence. This "double payment" continued for 30 months from January 2005 through June 2007. By that time, Lawrence had accrued an overpayment in the amount of $32,985.00 (30 months x $1,099.50).  (Doc. 59, p. 234).

On May 14, 2007, after the Defendants discovered this error, the GM Benefits & Services Center sent a letter to Lawrence informing him that his monthly pension benefits had not been adjusted to account for the tax levy amount of $1,099.50 per month, and that there was a total overpayment amount of $32,985.00 (Doc. 59, p. 241). The letter further stated "[b]ecause the Plan is an ERISA qualified Plan, we are required to collect overpayments and return them to the Plan's Trust Fund." (Id.). Accordingly, the letter informed Lawrence that as of July 1, 2007, his monthly benefit (which at the time was $1,045.50) would be reduced to $0.00 to recoup the overpayment. The letter also provided a toll free number for Lawrence to call if he had any questions.

Lawrence's monthly benefits were indeed reduced to $0.00 effective July 1, 2007. In a letter dated September 5, 2007, the GM Benefits & Services Center wrote to Lawrence informing him that as of October 1, 2007, his monthly pension benefit

-7-

would be $837.50, and that beginning on that date, the Defendants would only reduce
his monthly benefit by 50% ($418.75) to continue their recoupment of the overpayment.
(Doc. 59, pp. 237-38; Doc. 50, Ex. A).  The letter stated that Lawrence would receive
a monthly payment of $418.75 from October 1, 2007 through March 1, 2014, and on
April 1, 2014 he would receive a payment of $515.00.  At that point, the Defendants
would have recovered the entire overpayment and Lawrence's monthly benefit of
$837.50 would be restored in full.  The letter again concluded with a toll free number
for Lawrence to call if he had any questions.

## C.    Lawrence's Attempts to Appeal the Reduction in his Benefits

Upon receipt of the May 14, 2007 letter concerning the $32,985.00 overpayment,
Lawrence engaged in several attempts to challenge the decision to reduce his monthly
benefits, with no success.

By letter dated June 16, 2007, Lawrence wrote to the General Motors Benefits
& Service Center and to GMC as Plan Administrator challenging the Defendants'
decision to reduce his monthly pension benefits as laid out in the May 14, 2007 letter.
(Doc 59, pp. 253-327).  Lawrence's letter, which consisted of 45 pages of argument
and 23 exhibits, was entitled "Notice of Administrative Claim and Appeal of the
Decision of The General Motors Corp. Decision Dated May 14, 2007."  (Id., p. 253).
The letter stated that "[t]his is my attempt to exhaust my administrative remedies under
the Supplemental Agreement Covering the GM/UAW pension Plan that was in effect

-8-

at the time that I retired on March 1, 1993." (Id.). In the letter, Lawrence attacked the validity of the original 1999 IRS Notice of Levy, and the Defendants' authority to recover overpayments by reducing his monthly pension benefits.

Lawrence sent this letter via certified mail. There is no dispute that the Defendants received the letter. However, there is no evidence that anyone from the GM Plan or GMC ever responded to the letter.

On June 25, 2007, Lawrence sent a second 54-page letter plus exhibits to the General Motors Benefits & Service Center and GMC (Doc. 59, pp. 328-411). This second letter, entitled "Amended and Supplemental Notice of Administrative Claim and Appeal of the Decision of the General Motors Corp. Decision Dated May 14, 2007" again challenged the decision to reduce his monthly pension benefits to recoup the $32,985.00 overpayment. The second letter also reiterated that Lawrence was attempting to exhaust his administrative remedies under the Supplemental Agreement. (Id., p. 329).

The General Motors Benefits & Services Center responded to Lawrence's June 25, 2007 letter on July 11, 2007 (Doc. 59, p. 239). The Center simply repeated the fact that Lawrence had received an overpayment in the amount of $32,985.00, and reiterated the terms by which his monthly benefits would be reduced until the Plan recouped the overpayment. The Center did not acknowledge that Lawrence was attempting to exhaust his administrative remedies and/or dispute the reduction in his

monthly benefits, and did not provide Lawrence with any guidance as to how he could further pursue his administrative remedies.

Lawrence wrote to the General Motors Benefits & Services Center again on June 20, 2007, requesting a copy of the Supplemental Agreement in effect on the date he retired from GMC (Doc. 59, p. 252a).  On July 2, 2007, the Center responded, instructing Lawrence to contact his Union Benefit Representative or Retiree Relations to obtain the document.  (Doc. 59, p. 240).

On July 10, 2007, Lawrence wrote to the Plan Administrator requesting copies of the Summary Plan Description, latest annual report, the collective bargaining agreement in effect in 1993, and any other documents under which the GM Plan was established and operated (Doc. 59, pp. 245-46).  On July 30, 2007, Preston M. Crabill, Director, Pension & Savings Plans for GMC responded to Lawrence's request, and provided Lawrence with a copy of the GM Hourly-Rate Employee Pension Plan and the Summary Plan Description for GM Hourly Retirees and Eligible Survivors (Doc. 59, p. 244).

On July 11, 2007, Lawrence sent a third letter to the General Motors Benefits & Services Center and GMC, entitled "Amended and Supplemental Notice of Administrative Claim and Appeal of the Decision of the General Motors Corp. Decision Dated May 14, 2007" (Doc. 59, pp. 412-550).  The letter again stated that Lawrence was attempting to exhaust his administrative remedies and appeal the decision to reduce his monthly benefits to account for the overpayment.  The letter consisted of

-10-

106 pages of argument attacking the IRS levy and the Defendants' authority to recover overpayments.

There is no evidence that anyone from either the General Motors Benefits & Services Center or GMC responded to Lawrence's July 11, 2007 letter. Lawrence then filed suit in this Court 90 days later.

II.    Procedural History

Lawrence filed his original complaint against the GM Plan and GMC on October 9, 2007 (Doc. 1). He filed an amended complaint on February 29, 2008 (Doc. 47) alleging three claims against the Defendants: (1) a claim under 29 U.S.C. §§ 1056 and 1132(a)(1)(B) to recover the benefits the Defendants have recouped for the overpayment to Lawrence (Count I); (2) a claim against GMC as Plan Administrator for breach of fiduciary duty pursuant to 29 U.S.C. § 1132(a)(3) (Count II); and (3) a claim against GMC as Plan Administrator for failure to provide Lawrence with copies of the Plan documents upon request pursuant to 29 U.S.C. § 1132(c)(1) (Count III).[2] Lawrence seeks monetary damages in the amount of the recouped benefits, liquidated damages, attorney's fees, and costs.

On February 13, 2008, the United States Magistrate Judge held a case management conference. At that hearing, the Magistrate Judge directed the Parties

---

[2]Although Lawrence does not specify which Defendants are the subject of each claim, it is clear that Counts II and III can only be brought against GMC in its role as Plan Administrator and plan fiduciary.

to file memoranda concerning the appropriate standard of review for Lawrence's ERISA claims, and whether Lawrence was entitled to discovery (Doc. 37). After a review of the Parties' submissions (Docs. 45, 50), the Magistrate Judge determined that the appropriate standard of review for this case is the arbitrary and capricious standard, and that Lawrence was not entitled to any discovery outside of the administrative record (Doc. 71). The Defendants filed the administrative record on April 1, 2008. (Doc. 59).

In addition to the standard of review dispute, the Parties have filed cross motions for summary judgment (Docs. 35, 51, 68), and Lawrence has moved to strike two of the Defendants' affirmative defenses (Doc. 65, 79). Lawrence has also filed assorted motions seeking to challenge the IRS levy (Doc. 81), for sanctions against the Defendants (Doc. 88), to reconsider the Magistrate Judge's Order on discovery and the standard of review (Doc. 76), and a motion for recusal based on this Court's delay in ruling on Lawrence's motions (Doc. 90). In response, the Defendants have filed several motions to strike (Docs. 74, 80, 83). All of these motions have been responded to and are ripe for disposition.

Before the Court reached the merits of these motions, GMC filed a Notice of Bankruptcy stating that on June 1, 2009, GMC filed a voluntary petition for bankruptcy protection under Chapter 11 of the Bankruptcy Code (Doc. 93). As such, all claims against GMC, and all further proceedings involving GMC in this case are stayed

pursuant to the automatic stay provisions of 11 U.S.C. § 362(a).  Therefore, the Court

will proceed only on those claims and motions involving the GMC Plan.[3]

### Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(c)(2), the entry of summary

judgment is appropriate only when the Court is satisfied that "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no

genuine issue as to any material fact and that the movant is entitled to judgment as a

matter of law."  In applying this standard, the Court must examine the materials on file

and record evidence "in the light most favorable to the nonmoving party."  <u>Samples on

Behalf of Samples v. Atlanta</u>, 846 F.2d 1328, 1330 (11th Cir. 1988).  As the Supreme

Court held in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), the moving party bears the

initial burden of establishing the nonexistence of a triable issue of fact.  If the movant

---

[3]The only claim asserted against the GMC Plan is Count I – the claim for recovery of benefits under § 1132(a)(1)(B). The Court is aware that in this Circuit claims under §1132(a)(1)(B) for an award of benefits are normally considered claims for equitable relief, which may only be brought against the Plan Administrator. <u>Hunt v. Hawthorne Assoc., Inc.</u>, 119 F.3d 888, 907-08 (11th Cir. 1997). However, this is not such a claim. Lawrence is not seeking an order enjoining GMC or any other entity to award him continuing benefits or to declare that Lawrence is qualified for or entitled to pension benefits. Rather, Lawrence is alleging that the GM Plan's temporary reduction of his existing monthly pension benefits to recover an accidental overpayment of $32,985.00 violates his rights under 29 U.S.C. § 1056, and is seeking recovery of the precise amounts withheld plus interest (<u>See</u> Doc. 47, p. 13). This is clearly a claim for monetary or legal relief, which can be readily calculated and "shall be enforceable only against the plan as an entity and shall not be enforceable against any other person . . . ." 29 U.S.C. §1132(d)(2). Indeed, in the converse situation where a Plan seeks to recoup benefits overpayments, such claims are brought by the Plan itself and are considered claims for legal relief. <u>See</u> <u>International Painters and Allied Trades Industry Pension Fund v. Aragones</u>, 642 F. Supp. 2d 1329 (M.D. Fla. 2008). Thus Lawrence's challenge to the Plan's recoupment actions against him is also a claim for legal relief. Count I may therefore proceed in this Court and is not impacted by GMC's bankruptcy stay.

-13-

is successful on this score, the burden of production shifts to the non-moving party who
must then come forward with "sufficient evidence of every element that he or she must
prove." <u>Rollins v. Techsouth</u>, 833 F.2d 1525, 1528 (11th Cir. 1987).  The non-moving
party may not simply rest on the pleadings, but must use affidavits, depositions,
answers to interrogatories, or other admissible evidence to demonstrate that a material
fact issue remains to be tried.  <u>Celetex</u>, 477 U.S. at 324.  <u>See also</u> Fed. R. Civ. P.
56(e)(2).  The party opposing a motion for summary judgment must rely on more than
conclusory statements or allegations unsupported by facts.  <u>Evers v. Gen. Motors
Corp.</u>, 770 F.2d 984, 986 (11th Cir. 1985) ("conclusory allegations without specific
supporting facts have no probative value").

The material facts of this case are not in dispute and are established by the
Administrative Record.  The only remaining issues are questions of law.  Accordingly,
disposition of this case by summary judgment is appropriate.

## <u>Discussion</u>

Lawrence's claim against the GM Plan for recovery of benefits under
§1132(a)(1)(B) is premised on his argument that the GM Plan improperly reduced his
monthly benefits both to satisfy the IRS levy and to recover the overpayment to
Lawrence, in violation of the terms of the GM Plan and the anti-alienation provisions
of 29 U.S.C. § 1056.[4]  This claim fails for several reasons.

---

[4]29 U.S.C. § 1056 dictates the form and payment of pension benefits.  As it pertains to this
(continued...)

I.    The Standard of Review

Before the Court can address the merits, the Court must first resolve a continuing
dispute over the appropriate standard of review.  On May 12, 2008, the Magistrate
Judge concluded, based on the relevant language of the 2003 Supplemental
Agreement, that the standard of review in this case is the arbitrary and capricious
standard (Doc. 71).  Since that ruling, Lawrence has filed numerous motions and other
papers challenging the Magistrate Judge's decision, and asserting that the standard
of review should be either *de novo* or "deemed exhausted."[5]

In Firestone Fire & Rubber Co. v. Bruch, 489 U.S. 101 (1989), the Supreme
Court held that review of ERISA claims under the arbitrary and capricious standard is
appropriate where "the benefit plan gives the administrator or fiduciary discretionary
authority to determine eligibility for benefits or to construe the terms of the plan."  489
U.S. at 115.  See also Slomcenski v. Citibank, N.A., 432 F.3d 1271, 1279 (11th Cir.
2005); Shaw v. Connecticut General Life Ins. Co., 353 F.3d 1276, 1282 (11th Cir.

---

[4](...continued)
case, § 1056 mandates that "[e]ach pension plan shall provide that benefits provided under the
plan may not be assigned or alienated." § 1056(d)(1).  However, a plan participant may voluntarily
enter into a revocable assignment of his or her pension benefits not to exceed 10% of any benefit
payment.  § 1056(d)(2).

[5]Lawrence apparently derived this "deemed exhausted" standard from an ERISA
regulation stating that where a Plan does not provide a reasonable procedure to appeal benefits
decisions, or does not follow those procedures, the Court may "deem" any appeal to be
"exhausted" and the beneficiary may immediately proceed to litigation. See 29 C.F.R. §2560.501-
1(l).  This regulation does not relate to or impact the law governing standards of review for ERISA
benefits claims.

2003).  The 2003 Supplemental Agreement – the Agreement in effect at the time the

decision was made to collect the overpayment from Lawrence's monthly benefits[6] –

clearly delegates to the Board of Administration the responsibility for considering

appeals from decisions concerning benefits, and that such decisions are binding and

enforceable.  (Doc. 59, pp. 9, 11).  The 2003 Supplemental Agreement also explicitly

states that the decisions of the Board are to be reviewed under the "arbitrary and

capricious standard of judicial review."  (Doc. 59, p. 9).

    Lawrence mistakenly refers to the anti-alienation provisions of the GM Plan and

other provisions concerning the Board's lack of authority to modify the terms of the GM

Plan and/or the Supplemental Agreement, and argues that the absence of any

language in those particular sections giving the Board discretion necessarily mandates

a *de novo* standard of review.  However, Lawrence ignores Sections 3(a) and 3(c) of

the 2003 Supplemental Agreement which clearly give the Board the authority to render

decisions concerning pension benefits – without qualification – and states that the

decisions of the Board are final and non-appealable.

_____

    [6]Lawrence urges the Court to limit its consideration to the language in the 1990
Supplemental Agreement, which was in effect at the time Lawrence began receiving pension
benefits.   However, the 1999 Supplemental Agreement was superseded by the 2003
Supplemental Agreement – which was created through the collective bargaining process between
GMC and the Union and is binding on both sides.  (Doc. 59, pp. 6-7).  Therefore, the 2003
Supplemental Agreement – the plan that was in effect at the time the decision being challenged
was made – governs this case.  In any event, this is largely a distinction without a difference as
the 1990 Supplemental Agreement also affords the Board of Administration with discretionary
authority, and states that all rulings by the Board are final and binding on the Union and GMC
(Doc. 59, p. 179).

The language contained in the Agreement concerning the Board's authority is clear and unambiguous, and under applicable Eleventh Circuit precedent, mandates the application of the arbitrary and capricious standard of review. Moreover, the Sixth Circuit has considered this exact language and held that the proper standard of review is arbitrary and capricious. See Lord v. General Motors Corp., 39 F.3d 1182, 1994 WL 592944 at ** 1-2 (6th Cir. 1994); Roberson v. General Motors Corp., Detroit Diesel Allison Div., 801 F.2d 176, 179-180 (6th Cir. 1986). Accordingly, the Court will review the decision to reduce Lawrence's monthly benefits using the arbitrary and capricious standard of review. The portions of Lawrence's summary judgment motions addressing the standard of review (Docs. 35, 68), as well as Lawrence's Motion to Reconsider the Magistrate Judge's Order (Doc. 76) shall be denied.[7]

II.     Exhaustion of Administrative Remedies

Section 503 of ERISA, 29 U.S.C. § 1133, requires that every employee benefit plan include a procedure affording participants review of an adverse decision of a claim for benefits. See also 29 C.F.R. § 2560.503-1(b) (requiring employee benefit plans to establish and maintain "reasonable procedures governing the filing of benefit claims, notification of benefit determinations, and appeal of adverse benefit determinations"). "The law is clear in this circuit that plaintiffs in ERISA actions must exhaust available

---

[7]Lawrence has not argued that a conflict of interest exists such that the heightened arbitrary and capricious standard of review should apply, and there is no evidence of such a conflict. See Bruch, 489 U.S. at 115.

-17-

administrative remedies before suing in federal court." <u>Bickley v. Caremark RX, Inc.</u>, 461 F.3d 1325, 1328 (11th Cir. 2006) (quoting <u>Counts v. Amer. Gen'l Life & Acc. Ins. Co.</u>, 111 F.3d 105, 108 (11th Cir 1997)).  This exhaustion requirement applies equally to claims for benefits and claims for violations of ERISA itself.  <u>Perrino v. S. Bell Tel. & Tel. Co.</u>, 209 F.3d 1309, 1316 n. 6 (11th Cir. 2000).

The GM Plan contends that it is entitled to summary judgment because Lawrence failed to comply with and exhaust the appeals procedure provided for in the Plan.  That procedure is set forth in Section K of Appendix D of the 2003 Supplemental Agreement and requires that an employee who disputes a pension determination must file with the GM Benefits  & Services Center a written claim on form BA 1 "Employee Claim to Pension Committee."  (Doc. 59, p. 72).  If the employee is not satisfied with the Pension Committee's decision, the employee may request the Pension Committee – in writing on form BA 1 – to refer the case to the Board of Administration for decision. (<u>Id.</u>).  If the Pension Committee cannot agree upon the disposition of a claim, the Pension Committee shall refer the claim to the Board on form BA 2 "Notice of Appeal to Board of Administration."  All materials with respect to an appeal must be mailed to the Secretary, Pension Board of Administration, and all requests for forms BA 1 and BA 2 must be made to the Secretary.  (<u>Id.</u>).

In addition, the Summary Plan Description for the GM Plan provides that a beneficiary may appeal a pension decision to his local pension committee.  (Doc. 59, p. 156).  If the beneficiary does not agree with the committee's decision, the beneficiary

-18-

can then appeal to the Board of Administration.[8]  (Id.).  There is no dispute that Lawrence received copies of both the 2003 Supplemental Agreement and the Summary Plan Description from GMC on or about July 30, 2007 (see Doc. 59, p. 244), therefore the Court concludes that Lawrence was aware of the dispute procedures available to him.

The GM Plan argues that Lawrence did not comply with the appeals procedures when he sent three letters to the GM Benefits & Services Center and the Plan Administrator.  It is undisputed that Lawrence never addressed any of his correspondence to the Secretary, Pension Board of Administration or to his local pension committee, and never used forms BA 1 or BA 2.  This Circuit strictly enforces the exhaustion requirement on plaintiffs bringing ERISA claims, Perrino, 209 F.3d at, 1315, therefore, unless Lawrence can establish that resorting to the GM Plan's administrative remedies "would be futile or the remedy inadequate," or that Lawrence was denied "meaningful access" to the administrative review scheme, his claim in this Court must fail. Id., at 1316.  Lawrence has made no such showing – and in fact does not even argue this point.

Instead, Lawrence contends that the appeals and claims procedures do not apply to him because the administrative remedy scheme only mentions "employees,"

---

[8]ERISA mandates that employees and beneficiaries be provided a Summary Plan Description that gives details of the benefits provided by the Plan, and articulates the claims procedure available to present and adjudicate ERISA claims.  See 29 U.S.C. §§ 1021-22; 29 C.F.R. § 2560.503-1(b)(2)(A)-(B).

-19-

and Lawrence is not an "employee" as defined by the 2003 Supplemental Agreement.[9]
Lawrence is correct that the appeals process described in the 2003 Supplemental
Agreement only lists "employees" and does not use the terms "retirees," "former
employees," "ex-employees," or "beneficiaries." Lawrence is further correct that the
Agreement defines "employees" as persons who currently work for GMC and does not
include retirees or former employees. (Doc. 59, pp. 51-52).

However, it is clear that the 2003 Supplemental Agreement covers all current
and former employees – indeed Lawrence himself is seeking to enforce his rights under
the Agreement. It is equally clear that the administrative remedies provisions were
intended to cover retirees and beneficiaries. The provisions expressly describe how
to dispute claims over the computation of pension benefits and supplements, partial or
complete suspension of supplements, and credited service – all issues which would
only impact a retiree. See Bickley, 461 F.3d at 1329-30 (holding that plan participants
who asserted claim for breach of fiduciary duty were not excused from exhausting
administrative remedies even though the plan language did not expressly mention
fiduciary claims); Perrino, 209 F.3d at 1316-17 ("Our prior precedent makes clear that
the exhaustion requirement for ERISA claims should not be excused for technical

---

[9]Lawrence alternatively argues that he complied with the administrative procedures when
he mailed his letters to the Plan Administrator at the address provided in his Summary Plan
Description. However, as the Summary Plan Description and the 2003 Supplemental Agreement
make clear, the claim must be mailed to the GM Benefits & Services Center and appeals mailed
to the Board; not to the Plan Administrator.

violations of ERISA regulations that do not deny plaintiffs meaningful access to an administrative remedy procedure through which they may receive an adequate remedy). Thus, in this case, the 2003 Supplemental Agreement provided Lawrence with meaningful access to an administrative remedy procedure.

The Court is also persuaded by the fact that several other courts have held that language identical to that in the 2003 Supplemental Agreement applies to retirees and other non-employees even though those persons are not specifically identified in the appeals procedure. See Pitchford v. General Motors Corp., 248 F. Supp. 2d 675, 678 n. 1 (W.D. Mich. 2003) (if former employee had properly asserted an ERISA claim, such claim would not be actionable because former employee failed to exhaust administrative remedies set forth in the Supplemental Agreement); Lloyd v. General Motors Hourly Rate Employees Pension Plan, 1 Fed. Appx. 789, 790 (10th Cir. 2001) (retiree's failure to exhaust administrative remedies open to him under the GM Plan barred his claims under ERISA); Duncan v. General Motors Corp., 2006 WL 375343 (W.D. Ark. 2006) (staying case to allow spouse seeking survivor benefits under the GM Plan to exhaust administrative remedies as set forth in the Plan); Moniz v. G.M.C., 2000 WL 1375285 (N.D. Cal. Sept. 18, 2000) (holding that court did not have jurisdiction over the claims of 22 former employees of GMC who failed to exhaust the GM Plan's administrative remedies) .

Accordingly, the Court concludes that summary judgment is warranted in the GM Plan's favor based on Lawrence's failure to exhaust his administrative remedies. Lawrence's motions for summary judgment are also due to be denied.[10]

### III.   The Decision to Reduce Lawrence's Pension Benefits Was Not Arbitrary or Capricious

Even if Lawrence had exhausted his administrative remedies – or established that such exhaustion would be futile – his claim against the GM Plan would fail on its substantive merits.   Lawrence attacks both the GM Plan's initial reduction of his pension benefits to satisfy the 1999 IRS Notice of Levy, and the GM Plan's later reduction of his benefits to account for the $32,985.00 overpayment.  However, in both instances the GM Plan's actions were authorized under applicable federal law and therefore were not arbitrary or capricious.

### A.   The 1999 IRS Notice of Levy

Lawrence is attempting to use his ERISA claims before this Court to challenge the 1999 IRS Notice of Levy.  The Notice of Levy the IRS sent to the Defendants contains a statement that "This levy won't attach funds in IRAs, self-employed individuals' retirement accounts or any other retirement plans in your possession or control, unless it is signed in the block to the right."  (Doc. 59, p. 300).  The block was not signed.  Lawrence thus argues that the Notice of Levy was invalid and that the GM

---

[10]Lawrence's renewed motion to strike the GM Plan's affirmative defense on exhaustion of administrative remedies is also due to be denied for the reasons set forth in the Magistrate Judge's Order of January 28, 2008 (Doc. 28).

Plan violated his ERISA rights when it complied with the Levy and reduced his pension to satisfy the IRS Notice of Levy.

There is no evidence (or argument by Lawrence) that he ever attempted to challenge the Notice of Levy until June 2007. Putting aside any statute of limitations questions, this is not the proper forum in which to challenge – and the GM Plan is not the proper entity to defend – the validity of an IRS Notice of Levy. The GM Plan did not cause the Notice of Levy to issue, it merely complied with its dictates. Any challenges to the Notice of Levy, or to the IRS sending the Notice of Levy to the Defendants, must be brought against the IRS itself. See e.g., 26 U.S.C. § 6331 (authorizing the IRS to collect unpaid taxes by way of levy on a taxpayer's property); 26 U.S.C. § 6330(c)(2) (providing a hearing procedure by which a taxpayer may raise any challenges to a proposed levy); 26 C.F.R. § 301.6331-1(c)(3) (where a levy is complied with, taxpayers and third parties who have an interest in the property surrendered in response to the levy may secure administrative relief from the IRS or bring suit to recover property under 26 U.S.C. §7426). See also Busby v. IRS, 1997 WL 364507, * 3 (S.D. Fla. Feb. 23, 1997) ("However, even if Plaintiff's property was collected in error or the levy was invalid, the recourse for a plaintiff who has been taxed unjustly or in error by the federal government is the above-referenced tax refund suit.").

Moreover, Lawrence has failed to present any legal authority to support his argument that the GM Plan should not have enforced the Notice of Levy and reduced his pension benefits. To the contrary, the law is clear that despite any alleged

-23-

procedural deficiencies in the Notice, the GM Plan was obligated to comply with it upon receipt.  <u>See</u> 26 U.S.C. § 6332(a) (directing any person in possession of property or rights to property subject to levy upon which a levy has been made to surrender such property or rights to the Secretary).  This obligation extends to the levy of pension benefits, and trumps the anti-alienation provisions of § 1056.  Section 6334 of the Internal Revenue Code specifically exempts certain property from levy, but does not exempt pension plan benefits from collection.  26 U.S.C. § 6334.  <u>See</u> <u>also</u> 26 C.F.R. §301.6331-1(a); 26 C.F.R. § 1.401(a)-13(b)(2)(I); <u>Shanbaum v. United States</u>, 32 F.3d 180, 183 (5th Cir. 1994) (finding no merit to plaintiff's argument that ERISA's anti-alienation provisions exempt pension benefits from an IRS levy).

Further, if the GM Plan had refused to honor the levy, it would have been liable to the IRS for the value of Lawrence's pension benefits not surrendered, plus costs and interest from the date of the levy.  <u>See</u> 26 U.S.C. § 6332(d)(1); <u>United States v. Ruff</u>, 99 F.3d 1559, 1563 (11th Cir. 1996).  The GM Plan could also have been subject to an additional penalty of up to 50% of the value of the benefits not surrendered. §6332(d)(2).  An entity such as the GM Plan served with a notice of levy "has two, and only two, possible defenses for failure to comply with the demand:  that it is not in possession of the property of the taxpayer, or that the property is subject to a prior judicial attachment or execution."  <u>United States v. National Bank of Commerce</u>, 472 U.S. 713, 727 (1985).  Lawrence has not alleged either of these conditions precedent; therefore, he cannot now attack the GM Plan's compliance with the Notice of Levy.

Lastly, the law is equally settled that once the GM Plan complied with the IRS

Notice of Levy, it was absolved of all liability:

> Any person in possession of (or obligated with respect to) property or rights to property subject to levy upon which a levy has been made who, upon demand by the Secretary, surrenders such property or rights to property (or discharges such obligation) to the Secretary (or who pays a liability under subsection (d)(1)) shall be discharged from any obligation or liability to the delinquent taxpayer and any other person with respect to such property or rights to property arising from such surrender or payment.

26 U.S.C. § 6332(e).  See also Carmen v. Parsons, 789 F. 2d 1532, 1534 (11th Cir.

1986) (defendant sued for paying out funds pursuant to IRS levies immune from liability

as a matter of law by virtue of 26 U.S.C. § 6332(d)); Busby, 1997 WL 364507 at * ("The

mere fact of compliance . . . with the Notice of Levy filed by the IRS does not give rise

to a claim upon which relief may be granted.").

Accordingly, Lawrence cannot sue the GM Plan, under ERISA or any other

legal theory, based on the GM Plan's compliance with the 1999 IRS Notice of Levy,

regardless of whether any procedural deficiencies existed in the Notice of Levy itself.

Rather, it is clear that the GM Plan's compliance with the Notice of Levy was in

accordance with applicable law, and therefore, its actions were not arbitrary or

capricious.  For this reason, the GM Plan is entitled to summary judgment on the

portion of Lawrence's claim attacking the Notice of Levy.[11]

---

[11]For the same reasons, Lawrence's motion to determine if the statute of limitations has expired on the IRS Notice of Levy (Doc. 81), which is an attack on the merits of the levy itself, is
(continued...)

-25-

**B.      Recoupment of the Overpayment**

Lawrence next challenges the GM Plan's reduction of his monthly pension benefits starting in July 2007 to recoup the $32,985.00 overpayment as violating §1056(d)(1); and 26 CFR § 1.401(a)-13(d)(1)(I); both of which limit a pension plan's assignment or alienation of benefits to 10% of the monthly benefit, and require the beneficiary to acquiesce in the assignment.   Lawrence also points to the 2003 Supplemental Agreement, which contains language tracking the anti-alienation provisions of § 1056 and the 10% limit.  (Doc. 59, pp. 47-48).   According to Lawrence, the GM Plan violated these provisions when it reduced his benefits without receiving his prior written authorization, and in an amount exceeding the 10% cap.

Section 206(d)(1) of ERISA mandates that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated."   29 U.S.C. §1056(d)(1).   In accordance with the mandates of § 1056,  the 2003 Supplemental Agreement contains a lengthy anti-alienation provision which tracks the language of that statute.  In particular, the Agreement states that a retired employee may agree in writing to have an amount of not less than $80.00, but no more than 10% of the retired employee's monthly benefit withheld to repay "any outstanding overpayment owing to any benefit plan of the Corporation."  (Doc. 59, p. 48).   In this case, the GM Plan reduced Lawrence's monthly benefit by 100% for a few months, and then by 50%

_____

[11](...continued)
also due to be denied.

thereafter, without ever receiving any written acquiescence from Lawrence.  Thus, it would seem that the GM Plan has violated both the terms of the 2003 Supplemental Agreement and the dictates of §1056.

In response, the GM Plan states that it has interpreted the anti-alienation provisions contained in the 2003 Supplemental Agreement – in particular the 10% overpayment limitation – to only apply to overpayments made by other benefits plans, and not to overpayments made by the GM Plan itself.  As discussed below, the Court finds that this interpretation of the Agreement's anti-alienation provision is reasonable and in accordance with applicable law, and therefore cannot be arbitrary or capricious. Collins v. American Cast Iron Pipe Co., 105 F.3d 1368, 1370 (11th Cir 1997) ("The first step in reviewing the benefits decision of an ERISA plan administrator is determining whether the administrator's interpretation of the Plan was legally correct. . . .  If the administrator's interpretation was correct, then the inquiry ends."). See also Jett v. Blue Cross & Blue Shield of Ala., Inc., 890 F.2d 1137, 1140 (11th Cir. 1989) ("As long as a reasonable basis appears for [the] decision, it must be upheld as not being arbitrary and capricious, even if there is evidence that would support a contrary decision."); Carnaghi v. Phoenix American Life Ins. Co., 238 F. Supp. 2d 1373 (N.D. Ga. 2002) ("Under the line of cases dealing with the legal interpretation of the plan, if the administrator's interpretation was legally correct, the inquiry ends because the conclusion would be the same under any of the three standards of review.").

-27-

It does not appear that the Eleventh Circuit has directly addressed the intersection of the anti-alienation provisions of 29 U.S.C. § 1056 and the recovery of an overpayment of benefits by the plan itself. The answer instead can be found in the Treasury Regulations, which expressly state that the terms "assignment" or "alienation" for purposes of § 1056 do not include any arrangement for the recovery by the plan of overpayments of benefits previously made to a participant. 26 C.F.R. § 1.401(a)-13(c)(2)(iii). This is so because the anti-alienation provisions apply only to setoffs of the beneficiary's prospective rights and benefits against external claims, not to funds that have been paid out in error (overpayments) by the Plan itself. Thus, nothing is being alienated when a pension plan is merely recovering funds that it previously gave to the beneficiary, and which the beneficiary was never entitled to. A person who owes the plan money is simply treated as having been paid in advance and is not entitled to a resumption of payments until there is a net balance due from the Plan.

Several courts in other Circuits have analyzed this regulation, and have uniformly held that a plan's recoupment of an overpayment made to a beneficiary does not afoul of § 1056's anti-alienation provisions. See Trucking Employees of North Jersey Welfare Fund, Inc. v. Colville, 16 F.3d 52 (3rd Cir. 1994); Coar v. Kazimir, 990 F.2d 1413, 1422 (3rd Cir. 1993); Palmer v. Johnson & Johnson Pension Plan, 2009 WL 3029794 (D.N.J. Sept. 17, 2009); In re Radcliffe, 390 B.R. 881 (N.D. Ind. 2008); Eubanks v. Prudential Ins. Co. Of America, 336 F. Supp. 2d 521, 531-32 (M.D.N.C. 2004); Tucker v. General Motors Ret. Program, 949 F. Supp. 47, 55 (D. Mass. 1996).

-28-

The Court agrees with this body of authority and holds that the GM Plan's recoupment of the $32,985.00 overpayment it made to Lawrence – and the interpretation of the anti-alienation language in the 2003 Supplemental Agreement to apply only to overpayments made by other benefits plans – was both legally correct and not arbitrary and capricious. Accordingly, the Court concludes that both § 1056 and the anti-alienation provisions of the 2003 Supplemental Agreement do not apply to Lawrence and, therefore, his argument that he never gave written authorization to reduce his monthly benefits is without merit.[12]

Lawrence's final argument is that the GM Plan was precluded from recouping its overpayment from his pension benefits by virtue of his 2001 Bankruptcy Petition, filed in the Northern District of Florida. In re: Walter J. Lawrence, Case No. 01-70047-TLH4. In particular, Lawrence points to a May 8, 2001 Order from the United States Bankruptcy Judge stating that the exemptions claimed by Lawrence for various property had been automatically granted. (Doc. 59, p. 323). Included in the exempt property is Lawrence's pension benefits and rights under the GM Plan (Id., p. 324). Because Lawrence's pension benefits and rights were deemed exempt from property of the bankruptcy estate pursuant to 11 U.S.C. § 522, Lawrence claims that his pension

---

[12]Lawrence also alleges, without any evidence in support, that he has voluntarily paid to the IRS the amount of $32,985.00. Even if that is true, such payment has no bearing on the undisputed fact that for 30 months, the GM Plan made payments to the IRS on behalf of Lawrence's tax obligations, while simultaneously paying Lawrence his pension benefits, thereby creating an overpayment which the GM Plan was within its rights to recoup.

benefits were also protected from any recoupment or levy actions on the part of the GM Plan.

This argument fails for several reasons.  First, a tax debt is not dischargeable during bankruptcy and can continue to be collected during the pendency of bankruptcy proceedings.  26 U.S.C. § 523; In re Chastang, 116 B.R. 833, 834 (M.D. Fla. 1990).  Second, Lawrence's pension benefits were admittedly exempt from the bankruptcy estate, and therefore could be subject to levy.  26 C.F.R. § 301.6871(a)-2(a).  See also In re DeMarah, 62 F.3d 1248 (9th Cir. 1995) (debtor cannot avoid federal tax liens on exempt property in bankruptcy).  Thus, to the extent Lawrence is again challenging the GM Plan's enforcement of the 1999 IRS Notice of Levy, that argument is unavailing.

Lawrence also cannot hide behind his bankruptcy to avoid the GM Plan's recoupment of its overpayment.  Recoupments of overpayments do not violate the automatic stay provisions of 11 U.S.C. § 362.  They also are not prohibited by 11 U.S.C. § 542(a)(2), which precludes a creditor from attempting to setoff a debt against personal property of a debtor following a discharge in bankruptcy.  In re Jones, 289 B.R. 188, 191-93 (M.D. Fla. 2002) (attachment of former employee's disability benefits to recover benefit overpayments did not violate discharge injunction).

The most compelling reason for rejecting Lawrence's argument is the fact (notably omitted by Lawrence himself), that his bankruptcy estate was closed on December 28, 2001.  See In re Lawrence, Case No. 01-70047-TLH4 (Docket Entry. 73).  Since that time, Lawrence has filed a host of motions for reconsideration and

-30-

Case 5:07-cv-00405-WHK-RFS Document 96 Filed 03/24/10 Page 51 of 54

appeals, none of which have been successful. The GM Plan's overpayment to Lawrence did not commence until January 2005 – more than three (3) years <u>after</u> Lawrence's bankruptcy estate was closed. Thus, the monies the GM Plan is in the process of recouping did not exist at the time of Lawrence's bankruptcy, and were never part of the bankruptcy estate. For all these reasons, the Court concludes that Lawrence's 2001 Bankruptcy Petition does not preclude the GM Plans' recoupment actions, and does not render those actions arbitrary or capricious.

The GM Plan is entitled to summary judgment in its favor with respect to Lawrence's claims relating to the recoupment of the $32,985.00 overpayment.

### Conclusion

Accordingly, upon due consideration, it is hereby ORDERED as follows:

(1)     Plaintiff's Motion for Summary Judgment (Doc. 35) is DENIED as to Defendant General Motors Hourly-Rate Employees Pension Plan;

(2)     Defendants' Cross-Motion for Summary Judgment (Doc. 51) is GRANTED as to Defendant General Motors Hourly-Rate Employees Pension Plan. The Clerk is directed to enter judgment in favor of Defendant General Motors Hourly-Rate Employees Pension Plan and against Plaintiff Walter J. Lawrence as to all claims. Defendant General Motors Hourly-Rate Employees Pension Plan's request for attorney's fees and costs is DENIED;

(3)	Plaintiff's Request for a Hearing on his Motion for Summary Judgment (Doc. 53) is DENIED AS MOOT;

(4)	Plaintiff's Renewed Motion to Strike Defendants' Affirmative Defense of Failure to Exhaust Administrative Remedies Re: Defendants' Answer to Plaintiff's Amended Complaint (Doc. 65) is DENIED;

(5)	Plaintiff's Second Motion for Summary Judgment Re: Amended Complaint (Doc. 68) is DENIED as to Defendant General Motors Hourly-Rate Employees Pension Plan;

(6)	Plaintiff's Motion to Take Judicial Notice (Doc. 73) is DENIED;

(7)	Defendants' Motion to Strike Plaintiff's Motion for the Court to Take Judicial Notice (Doc. 74) is DENIED AS MOOT;

(8)	Plaintiff's Motion to Reconsider Magistrate Judge's Order (Doc. 76) is DENIED;

(9)	Plaintiff's Motion to Strike Defendants' Affirmative Defense # 6 (Doc. 79) is DENIED;

(10)	Defendants' Motion to Strike Plaintiff's Motion for the Court to Strike Defendant's Affirmative Defense (Doc. 80) is DENIED AS MOOT;

(11)	Plaintiff's Motion to Determine if the Statute of Limitations has Expired Re: IRS Notice of Levy Dated May 19, 1999, and Motion for Hearing   (Doc. 81) are DENIED;

-32-

(12)   Defendants' Motion to Allow Their Counsel to Attend the Pre-Trial Conference by Telephone (Doc. 82) is DENIED AS MOOT;

(13)   Defendants' Motion to Strike Plaintiff's Motion to Determine the Statute of Limitations Re: IRS Levy (Doc. 83) is DENIED AS MOOT;

(14)   Plaintiff's Motion to Sanction Defendants' for Defendants' Failure to Comply With Federal Rule of Civil Procedure, Rule 26(a)(3) and This Court's Case Management and Scheduling Order Entered on the 25th Day of February, 2008 (Doc. 88) is DENIED AS MOOT;

(15)   Plaintiff's Motion to Recuse (Doc. 90) is DENIED for failure to satisfy the standards of 28 U.S.C. §§ 144 and 455. See United States v. Greenough, 782 F. 2d 1556, 1558 (11th Cir. 1986) ("a judge, having been assigned to a case, should not recuse himself on unsupported, irrational, or highly tenuous speculation.").   The affidavit attached to the Plaintiff's motion is also not legally sufficient to warrant recusal under § 144, as it does not allege facts that would convince a reasonable person that bias actually exists.   Christo v. Padgett, 223 F.3d 1324, 1333 (11th Cir. 2000).

(16)   Plaintiff's Motion for the Court to Rule on Plaintiff's Pending Motions (Doc. 92) is DENIED AS MOOT.

(17)   Pursuant to Defendant General Motors Corporation's Notice of Bankruptcy (Doc. 93) and 11 U.S.C. § 362, all claims against Defendant General Motor Corporation and all further proceedings against General Motors Corporation in this case are STAYED.  Because the remaining claims in this case are now dormant, the Clerk is

-33-

directed to terminate any and all pending motions as they relate to General Motors

Corporation and dismiss the case, subject to the right of any party to move to reopen

the case upon a showing that the bankruptcy stay has been lifted, or for other good

cause shown.

      IT IS SO ORDERED.

      DONE and ORDERED at Ocala, Florida this 21st day of September, 2010.

                                          UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record
              Maurya McSheehy