HEARING DATE AND TIME: May 14, 2013 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: May 7, 2013 at 4:00 p.m. (Eastern Time)

Barry N. Seidel (BS-1945)
Shaya M. Berger (SB-5387)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                    :
In re                               :    Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al., :    09-50026 (REG)
    f/k/a General Motors Corp., et al.  :
                                    :
                      Debtors.      :    (Jointly Administered)
                                    :
-------------------------------------------------------------x
```

**NOTICE OF OBJECTION TO PROOF OF CLAIM**
**FILED BY JULIE AND DAVID BRITTINGHAM (CLAIM NO. 59867)**

PLEASE TAKE NOTICE that on April 12, 2013, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011, filed its objection to the proof of claim of Julie and David Brittingham (Claim No. 59867) (the "**Objection**"), and that a hearing (the "**Hearing**") to consider the Objection will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **May 14, 2013, at 9:45 a.m. (Eastern Time)**, or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Objection must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Dickstein Shapiro, LLP, attorneys for the GUC Trust, 1633 Broadway, New York, New York, 10019-6708  (Attn: Barry N. Seidel, Esq., and Shaya M. Berger, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors, LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New

York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn: Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn: Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); (xii) Gibson, Dunn & Crutcher LLP, attorneys for Wilmington Trust Company as GUC Trust Administrator and for Wilmington Trust Company as Avoidance Action Trust Administrator, 200 Park Avenue, 47th Floor, New York, New York 10166 (Attn: Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust Monitor and as the Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree Street, Suite 500, Atlanta, Georgia 30309 (Attn: Anna Phillips); (xiv) Crowell & Moring LLP, attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590 Madison Avenue, 19th Floor, New York, New York 10022-2524 (Attn: Michael V. Blumenthal, Esq.); and (xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard, Austin, Texas 78703, so as to be received no later than **May 7, 2013, at 4:00 p.m. (Eastern Time)**.

**PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and served with respect to the Objection, the GUC Trust may, on or after the Response Deadline, submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed to the Objection, which order may be entered with no further notice or opportunity to be heard offered to any party.

Dated:  New York, New York
      April 12, 2013

                                 */s/ Shaya M. Berger*
                                 Barry N. Seidel (BS-1945)
                                 Shaya M. Berger (SB-5387)
                                 DICKSTEIN SHAPIRO LLP
                                 1633 Broadway
                                 New York, New York 10019-6708
                                 Telephone: (212) 277-6500
                                 Facsimile: (212) 277-6501

                                 *Attorneys for Motors Liquidation*
                                 *Company GUC Trust*

Barry N. Seidel (BS-1945)
Shaya M. Berger (SB-5387)
DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Motors Liquidation
Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

----------------------------------------------------------x
                                :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY**, *et al.*, | : | **09-50026 (REG)** |
|     **f/k/a General Motors Corp.**, *et al.* | : | |
| | : | |
|         **Debtors.** | : | **(Jointly Administered)** |
| | : | |

----------------------------------------------------------x

**OBJECTION TO PROOF OF CLAIM FILED BY**
**JULIE AND DAVID BRITTINGHAM (CLAIM NO. 59867)**

TO:  THE HONORABLE ROBERT E. GERBER,
       UNITED STATES BANKRUPTCY JUDGE:

           The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by

the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors'

Second Amended Joint Chapter 11 Plan, dated March 18, 2011 (as may be amended,

supplemented, or modified from time to time, the "**Plan**"), files this objection (the

"**Objection**") to proof of claim number 59867 (the "**Claim**," attached as **Exhibit A**) filed by

Julie and David Brittingham (collectively, the "**Claimants**") on the basis that (i) a final order

dismissing a portion of the Claim has been entered and (ii) that the Claimants have failed to

prosecute the remaining portion of the Claim despite the automatic stay having been lifted for them to do so.  In support of this Objection, the GUC Trust respectfully represents:

## **RELIEF REQUESTED**

1.      Claim No. 59867 was filed jointly by Julie and David Brittingham for an unliquidated amount on November 27, 2009.  Mrs. Brittingham suffers from a lung condition predating and unrelated to her employment at Motors Liquidation Company f/k/a/ General Motors Corporation ("**MLC**").  Nonetheless, the Claimants filed a claim against MLC and the plant doctor employed by MLC claiming that the doctor and MLC were both liable for the doctor's failure to diagnose Mrs. Brittingham's condition during her pre-employment physical examination and improper approval of her for employment.  Mr. Brittingham also claims damages for loss of consortium based upon the same set of facts alleged by Mrs. Brittingham.  An Ohio state court has already finally determined that Mrs. Brittingham's claims are barred by the applicable statute of limitations.  Though Mr. Brittingham's claim survived summary judgment, he has failed to prosecute his claim for more than 20 months.

2.      The GUC Trust seeks an order of this Court Claims pursuant to section 502(b) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 3007(d) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") expunging (i) Mrs. Brittingham's claim based upon the final order issued by the Ohio state court, and (ii) Mr. Brittingham's claim based upon his failure to diligently prosecute it as this Court permitted when it granted the Claimants relief from the automatic stay in August 2010.

## **PROCEDURAL HISTORY**

3.      In 2001, the Claimants filed a complaint (the "**Complaint**") in Ohio state court (the "**Ohio Litigation**") against MLC as the employer of Mrs. Brittingham and the doctor

employed by MLC who conducted the pre-employment physical examination of Mrs. Brittingham. Following the commencement of the Debtors' chapter 11 cases, the Ohio Litigation was stayed.

4.      On July 12, 2010, the Claimants filed a motion asking the Bankruptcy Court to lift the automatic stay to allow them to proceed with the Ohio Litigation (ECF No. 6332). The Bankruptcy Court lifted the stay on August 23, 2010 (ECF No. 6744) (attached hereto as **Exhibit B**).

5.      Following the modification of the automatic stay, the Claimants proceeded in the Ohio Litigation against Dr. Stull and the Debtors. On February 9, 2011, the Ohio Litigation culminated in a grant of summary judgment dismissing the negligence and fraud claims of Mrs. Brittingham because they were barred by the relevant statutes of limitations, but declining to dismiss Mr. Brittingham's loss of consortium claim (the "**Order**") (attached hereto as **Exhibit C**). Both parties appealed the Order. With respect to the Claimants' appeal, the Order dismissing Mrs. Brittingham's claims was affirmed by the Court of Appeals of Ohio for the Second Appellate District (the "**Court of Appeals**") on December 16, 2011 (see **Exhibit D**), and the Supreme Court of Ohio declined jurisdiction to hear the case on July 25, 2012 (see **Exhibit E**), leaving no avenues of appeal remaining. With respect to the Debtors' appeal regarding the denial of summary judgment on Mr. Brittingham's loss of consortium claim, the Order was affirmed by the Court of Appeals on August 8, 2011 (see **Exhibit F**).

6.      To date, no further action has been taken by the Claimants with respect to Mr. Brittingham's loss of consortium claim. Given that over twenty months have passed without any action on behalf of the Claimants with respect to that portion of the Claim, they have failed

3

to prosecute their only remaining viable claim against MLC, and as a result the Claim remains unliquidated despite the grant of relief from the automatic stay.

## JURISDICTION

7.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).[1]

## ARGUMENT

8.    A filed proof of claim is "deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  If an objection refuting at least one of the claim's essential allegations is asserted, the claimant has the burden to demonstrate the validity of the claim.  *See In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009); *In re Adelphia Commc'ns Corp.*, Ch. 11 Case No. 02-41729 (REG), 2007 Bankr. LEXIS 660 at *15 (Bankr. S.D.N.Y. Feb. 20, 2007); *In re Rockefeller Ctr. Props.*, 272 B.R. 524, 539 (Bankr. S.D.N.Y. 2000).  Bankruptcy Rule 3001(f) further provides that a proof of claim is *prima facie* evidence of the validity and amount of such claim.  If the claimant does not allege a sufficient legal basis for the claim, the claim is not considered *prima facie* valid, and the burden remains with the claimant to establish the validity of the claim.  *In re Chain*, 255 B.R. 278, 280, 281 (Bankr. D. Conn. 2000); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988).

9.    For a prepetition claim to be valid, the claimant must demonstrate it possesses a right to payment and that the right arose prior to the filing of the bankruptcy petition. *See Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.)*, 209 F.3d 125, 128 (2d Cir. 2000).  A right to payment is an enforceable obligation.  *Pa. Dep't of Pub. Welfare v.*

---

[1]     "[T]he bankruptcy court must have jurisdiction to make the threshold determination of whether as a matter of law, a claim exists which can be asserted against the debtor, even if the claim sounds in personal injury, tort or wrongful death." *In re Chateaugay Corp.*, 111 B.R. 67, 76 (Bankr. S.D.N.Y. 1997).

*Davenport*, 495 U.S. 552, 559 (1990).  Bankruptcy Rule 3001(f) further provides that a proof of claim is *prima facie* evidence of the validity and amount of such claim.  If the claimant does not allege a sufficient legal basis for the claim, the claim is not considered *prima facie* valid, and the burden remains with the claimant to establish the validity of the claim.  *In re Chain*, 255 B.R. 278, 281 (Bankr. D. Conn. 2000); *In re Marino*, 90 B.R. 25, 28 (Bankr. D. Conn. 1988). A claim is invalid if it seeks recovery arising from an action that has been fully and finally adjudicated.  Further, where a claimant seeks modification of an automatic stay in bankruptcy but fails to prosecute his claim after the modification is granted, such claim should be disallowed and expunged as a matter of law.

10.     Here, the Julie Brittingham's negligence and fraud claims have been dismissed as a matter of law and all avenues of appeal with respect to those claims have been exhausted.  Therefore, the Claimants cannot demonstrate that they have a right to payment with respect to that portion of the Claim.  *Teachers Ins. & Annuity Assn'n. of Am. v. Butler*, 803 F.2d 61, 66 (2d Cir. 1986) (A court may not relitigate "judgments rendered by courts of competent jurisdiction, absent a showing that the judgment was procured by fraud or collusion.").

11.     Further, as to the portion of the Claim encompassing David Brittingham's loss of consortium claim, he has failed to seek the opportunity for relief afforded to him by the Bankruptcy Court.  Specifically, the Bankruptcy Court modified the automatic stay "to permit the Brittinghams to proceed with, liquidate, and prosecute the Ohio Litigation against the Debtors . . ."  See **Exhibit B**.  Mr. Brittingham has failed to take any procedural steps to prosecute his claim despite the fact that it has been nearly two years since his claim survived summary judgment.   Rather, the case's status, according to the court's docket, remains categorized as "CLOSED."  See **Exhibit G**.

5

## **<u>CONCLUSION</u>**

For the reasons set forth above, this Court should enter an order expunging the

Claims and granting such other and further relief as the Court deems just and proper.

Dated: New York, New York
April 12, 2013

*/s/ Shaya M. Berger*
Barry N. Seidel (BS-1945)
Shaya M. Berger (SB-5387)

DICKSTEIN SHAPIRO LLP
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Motors Liquidation
Company GUC Trust

HEARING DATE AND TIME: May 14, 2013 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: May 7, 2013 at 4:00 p.m. (Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                              :
In re                                       :        Chapter 11 Case No.
                                              :
MOTORS LIQUIDATION COMPANY, *et al.*,   :       09-50026 (REG)
       f/k/a General Motors Corp., *et al.*    :
                                                :
                        Debtors.         :       (Jointly Administered)
                                                :
-------------------------------------------------------------x

## ORDER GRANTING OBJECTION TO PROOF OF CLAIM
## FILED BY JULIE AND DAVID BRITTINGHAM (CLAIM NO. 59867)

Upon the objection (the "**Objection**") to the proof of claim filed by Julie and

David Brittingham  (Claim No. 59867) (the "**Claim**"), filed by the Motors Liquidation Company

GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the

"**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated

March 18, 2011 (as may be amended, supplemented, or modified from time to time, the "**Plan**"),

pursuant to section 502(b) of title 11, United States Code (the "**Bankruptcy Code**"), seeking

entry of an order disallowing and expunging the Claim on the basis that (i) a final order

dismissing a portion of the Claim has been entered and (ii) that the Claimants have failed to

prosecute the remaining portion of the Claim despite the automatic stay having been lifted for

them to do so, as more fully described in the Objection; and due and proper notice of the

Objection having been provided, and it appearing that no other or further notice need be

provided; and the Court having found and determined that the relief sought in the Objection is in

the best interests of the Debtors, their estates, creditors, and all parties in interest and that the

legal and factual bases set forth in the Objection establish just cause for the relief granted herein;

and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Objection is granted; and it is further

ORDERED that, pursuant to section 502(b) of the Bankruptcy Code, the Claims are disallowed and expunged; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2013

_____
United States Bankruptcy Judge

2

# EXHIBIT A

| UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF NEW YORK | PROOF OF CLAIM |
|---|---|

**Name of Debtor** (Check Only One)     Case No

☒ Motors Liquidation Company (f/k/a General Motors Corporation)    09-50026 (REG)
☐ MLCS, LLC (f/k/a Saturn, LLC)    09-50027 (REG)
☐ MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation)    09-50028 (REG)
☐ MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc )    09-13558 (REG)

Your Claim Is Scheduled As Follows.

NOTE *This form should not be used to make a claim for an administrative expense arising after the commencement of the case but may be used for purposes of asserting a claim under 11 U S C § 503(b)(9) (see Item # 5) All other requests for payment of an administrative expense should be filed pursuant to 11 U S C § 503*

Name of Creditor (the person or other entity to whom the debtor owes money or property)  Julie and David Brittingham

Name and address where notices should be sent

    Julie and David Brittingham
    c/o Klestadt & Winters, LLP
    292 Madison Ave  17th Floor
    New York, NY 10017
    (Att  Tracy Klestadt & Samir Gebrael)
       (212) 972-3000
Telephone number tklestadt@klestadt com,
Email Address    sgebrael@klestadt com

☐ Check this box to indicate that this claim amends a previously filed claim

Court Claim Number _____
(*If known*)

Filed on _____

Name and address where payment should be sent (if different from above)

FILED - 59867
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
SDNY # 09-50026 (REG)
Telephone number

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

☐ Check this box if you are the debtor or trustee in this case

If an amount is identified above, you have a claim scheduled by one of the Debtors as shown  (This scheduled amount of your claim may be an amendment to a previously scheduled amount.) If you agree with the amount and priority of your claim as scheduled by the Debtor and you have no other claim against the Debtor you do not need to file this proof of claim form EXCEPT AS FOLLOWS  If the amount shown is listed as DISPUTED, UNLIQUIDATED or CONTINGENT  a proof of claim MUST be filed in order to receive any distribution in respect of your claim  If you have already filed a proof of claim in accordance with the attached instructions, you need not file again.

**1 Amount of Claim as of Date Case Filed, June 1, 2009**    $  Unknown (See Rider)

If all or part of your claim is secured, complete item 4 below  however, if all of your claim is unsecured, do not complete item 4  If all or part of your claim is entitled to priority, complete item 5  If all or part of your claim is asserted pursuant to 11 U S C § 503(b)(9) complete item 5

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim  Attach itemized statement of interest or charges

**2 Basis for Claim**  Personal Injury / Malpractice (See Rider)
(See instruction #2 on reverse side )

**3 Last four digits of any number by which creditor identifies debtor** _____

   **3a Debtor may have scheduled account as** _____
      (See instruction #3a on reverse side )

**4 Secured Claim** (See instruction #4 on reverse side )
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information

**Nature of property or right of setoff** ☐ Real Estate   ☐ Motor Vehicle   ☐ Equipment   ☐ Other
Describe

**Value of Property** $_____  **Annual Interest Rate** ____%

**Amount of arrearage and other charges as of time case filed included in secured claim, if any** $_____

**Basis for perfection** _____

**Amount of Secured Claim** $_____    **Amount Unsecured** $_____

**5 Amount of Claim Entitled to Priority under 11 U S C § 507(a)** If any  portion of your claim falls in one of the following categories, check the box and state the amount

Specify the priority of the claim

☐ Domestic support obligations under 11 U S C § 507(a)(1)(A) or (a)(1)(B)

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier – 11 U S C § 507(a)(4)

☐ Contributions to an employee benefit plan – 11 U S C § 507(a)(5)

☐ Up to $2,425* of deposits toward purchase, lease-, or rental of property or services for personal, family, or household use – 11 U S C § 507(a)(7)

☐ Taxes or penalties owed to governmental units – 11 U S C § 507(a)(8)

☐ Value of goods received by the Debtor within 20 days before the date of commencement of the case – 11 U S C § 503(b)(9) (§ 507(a)(2))

☐ Other – Specify applicable paragraph of 11 U S C § 507(a)(__)

**Amount entitled to priority**

$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment*

**6 Credits**  The amount of all payments on this claim has been credited for the purpose of making this proof of claim

**7 Documents**  Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments  mortgages, and security agreements You may also attach a summary  Attach redacted copies of documents providing evidence of perfection of a security interest  You may also attach a summary  (*See instruction 7 and definition of 'redacted' on reverse side* )

DO NOT SEND ORIGINAL DOCUMENTS  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING

If the documents are not available, please explain in an attachment

FOR COURT USE ONLY

**Signature**  The person filing this claim must sign it  Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above  Attach copy of power of attorney, if any

Date 11/17/09

*Julie Brittingham*     *[signature]*

*Penalty for presenting fraudulent claim*  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571
Modified B10 (GCG) (12/08)

THE GARDEN CITY GROUP, INC.
NOV 27 2009

## INSTRUCTIONS FOR PROOF OF CLAIM FORM

The instructions and definitions below are general explanations of the law. In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, there may be exceptions to these general rules. The attorneys for the Debtors and their court-appointed claims agent, The Garden City Group, Inc. are not authorized and are not providing you with any legal advice.

**A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR**

PLEASE SEND YOUR ORIGINAL COMPLETED CLAIM FORM AS FOLLOWS: IF BY MAIL: THE GARDEN CITY GROUP, INC. ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, P.O. BOX 9386 DUBLIN, OH 43017-4286; IF BY HAND OR OVERNIGHT COURIER: THE GARDEN CITY GROUP, INC., ATTN: MOTORS LIQUIDATION COMPANY CLAIMS PROCESSING, 5151 BLAZER PARKWAY, SUITE A, DUBLIN, OH 43017. PROOFS OF CLAIM MAY ALSO BE HAND DELIVERED TO THE UNITED STATES BANKRUPTCY COURT SDNY, ONE BOWLING GREEN, ROOM 534, NEW YORK, NEW YORK 10004. ANY PROOF OF CLAIM SUBMITTED BY FACSIMILE OR E-MAIL WILL NOT BE ACCEPTED.

**THE GENERAL AND GOVERNMENTAL BAR DATE IS NOVEMBER 30, 2009 AT 5:00 P M. (PREVAILING EASTERN TIME)**

**Court, Name of Debtor, and Case Number**
These chapter 11 cases were commenced in the United States Bankruptcy Court for the Southern District of New York on June 1, 2009. You should select the debtor against which you are asserting your claim. A SEPARATE PROOF OF CLAIM FORM MUST BE FILED AGAINST EACH DEBTOR.

**Creditor's Name and Address**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case. Please provide us with a valid email address. A separate space is provided for the payment address if it differs from the notice address. The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1   Amount of Claim as of Date Case Filed**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2   Basis for Claim**
State the type of debt or how it was incurred. Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if the debtor, trustee or another party in interest files an objection to your claim

**3   Last Four Digits of Any Number by Which Creditor Identifies Debtor**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor, if any

**3a   Debtor May Have Scheduled Account As**
Use this space to report a change in the creditor's name, a transferred claim or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**4   Secured Claim**
Check the appropriate box and provide the requested information if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured (See DEFINITIONS below.) State the type and the value of property that secures the claim, attach copies of lien documentation, and state annual interest rate and the amount past due on the claim as of the date of the bankruptcy filing.

**5   Amount of Claim Entitled to Priority Under 11 U S.C § 507(a)**
If any portion of your claim falls in one or more of the listed categories, check the appropriate box(es) and state the amount entitled to priority. (See DEFINITIONS, below.) A claim may be partly priority and partly non-priority. For example, in some of the categories, the law limits the amount entitled to priority.

For claims pursuant to 11 U S C § 503(b)(9) indicate the amount of your claim arising from the value of any goods received by the debtor within 20 days before June 1, 2009, the date of commencement of these cases (See DEFINITIONS below). Attach documentation supporting such claim.

**6   Credits**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the Debtor credit for any payments received toward the debt.

**7   Documents**
Attach to this proof of claim form redacted copies documenting the existence of the debt and of any lien securing the debt. You may also attach a summary. You must also attach copies of documents that evidence perfection of any security interest. You may also attach a summary. FRBP 3001(c) and (d). If the claim is based on the delivery of health care goods or services, see instruction 2. Do not send original documents, as attachments may be destroyed after scanning

**Date and Signature**
The person filing this proof of claim must sign and date it. FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. Attach a complete copy of any power of attorney. Criminal penalties apply for making a false statement on a proof of claim

---

### DEFINITIONS

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case
The Debtors in these Chapter 11 cases are

| | |
|---|---|
| Motors Liquidation Company (f/k/a General Motors Corporation) | 09-50026 (REG) |
| MLCS, LLC (f/k/a Saturn, LLC) | 09-50027 (REG) |
| MLCS Distribution Corporation (f/k/a Saturn Distribution Corporation) | 09-50028 (REG) |
| MLC of Harlem, Inc (f/k/a Chevrolet-Saturn of Harlem, Inc ) | 09-13558 (RLG) |

**Creditor**
A creditor is the person, corporation, or other entity owed a debt by the debtor on the date of the bankruptcy filing

**Claim**
A claim is the creditor's right to receive payment on a debt that was owed by the debtor on the date of the bankruptcy filing See 11 U S C § 101(5). A claim may be secured or unsecured

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with The Garden City Group, Inc. as described in the instructions above and in the Bar Date Notice

**Secured Claim Under 11 U S C § 506(a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be

paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien that may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien. A claim also may be secured if the creditor owes the debtor money (has a right to setoff)

**Section 503(b)(9) Claim**
A Section 503(b)(9) claim is a claim for the value of any goods received by the debtor within 20 days before the date of commencement of a bankruptcy case in which the goods have been sold to the debtor in the ordinary course of such debtor's business

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien

**Claim Entitled to Priority Under 11 U S C § 507(a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor should redact and use only the last four digits of any social-security, individual's

tax-identification, or financial-account number, all but the initials of a minor's name and only the year of any person's date of birth

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing from The Garden City Group, Inc. please provide a self-addressed, stamped envelope and a copy of this proof of claim when you submit the original claim to The Garden City Group, Inc

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documents or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. The creditor has no obligation to sell its claim. However if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e) and applicable provisions of the Bankruptcy Code (11 U S C § 101 et seq), and any applicable orders of the bankruptcy court

**Additional Information**
If you have any questions with respect to this claim form please contact Alix Partners at 1 (800) 414-9607 or by e-mail at claims@motorsliquidation com

### INFORMATION

LAW OFFICES

# KLESTADT & WINTERS, LLP

292 MADISON AVENUE
17TH FLOOR
NEW YORK, NY 10017-6314

TRACY L KLESTADT (NY & NJ BARS)
IAN R WINTERS
JOHN E JURELLER JR (NY & NJ BARS)
SEAN C SOUTHARD

TELEPHONE (212) 972-3000
TELEFAX (212) 972-2245

NEW JERSEY OFFICE
15 WARREN STREET
HACKENSACK NJ 07601
(201) 833-5151

STACY E BUSH (NY & NJ BARS)
PATRICK J ORR (NY & NJ BARS)
BRENDAN M SCOTT (NY, NJ & PA BARS)
SAMIR P GEBRAEL

OF COUNSEL
JON YARD ARNASON

November 25, 2009

**Via FedEx**

The Garden City Group, Inc
Attn Motors Liquidation Company Claims Processing
5151 Blazer Parkway, Suite A
Dublin, Ohio 43017

Re    Motors Liquidation Company, *et al* , (fka General Motors Corp , *et al* ),
        Chapter 11, Case No 09-50026

Dear Sir or Madam

    We represent the Federal Republic of Germany ("FRG") and Julie and David Brittingham (the "Brittinghams") in filing their general unsecured claims against the Motors Liquidation Company

    Enclosed please find

1)  The Proof of Claim for the FRG, together with the Rider  An extra copy of the Proof of Claim in a self addressed and stamped envelope, please file stamp and return the extra copy to our office

2)  The Proof of Claim for the Brittinghams, together with the Rider  An extra copy of the Proof of Claim in the same self addressed and stamped envelope, please file stamp and return the extra copy to our office

Feel free to contact us if you have any questions regarding the aforementioned

Yours truly,

Samir Gebrael, Esq

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------

In re

MOTORS LIQUIDATION COMPANY f/k/a
GENERAL MOTORS CORP , et al,

Debtors

Chapter 11

Case No  09-50026 (REG)

(Jointly Administered)

-----------------------------------------------------

## RIDER TO THE BRITTINGHAMS'
## PROOF OF CLAIM

     1     Julie Brittingham and her husband, David Brittingham (hereinafter, collectively, the "Brittinghams" or "Claimants"), by their counsel, hereby assert a claim against the debtors in the above captioned bankruptcy cases, as set forth in the attached official proof of claim form and this Rider (collectively, the "Proof of Claim")

     2     On June 1, 2009 (the "Petition Date"), Motors Liquidation Company ("MLC") (fka General Motors Corp ) and certain of its affiliates (collectively, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code  On June 1, 2009, the Court entered an order directing the joint administration of the Debtors' Chapter 11 cases The Debtors' cases are consolidated for procedural purposes only

     3     On June 5, 2009, an order was entered approving the sale of substantially all of MLC's assets to a new and independent company ("New GM") under Section 363 of the Bankruptcy Code  The sale closed on July 10, 2009 and was consummated according to the Master Sale & Purchase Agreement ("MPA") between the Debtors and New GM

     4     On February 8, 2001, through Meyer & Williams, P C , the Brittinghams commenced an action against, inter alia, MLC and Dr Virginia Stull ("Dr Stull") in the Common Pleas Court of Montgomery County, Ohio, Brittingham v General Motors Corporation, et al , Case No 2001 CV 00664 ("Ohio State Case"), seeking damages based upon certain causes of action against the defendants therein, inter alia, for negligently performing Julie Brittingham's pre-employment physical, for failing to notify her that her lung function was severely abnormal, for negligently approving her for employment for which she was not physically fit, and for failing to refer her to a qualified physician, as Debtors' policies and procedures required  Debtors are already in possession of a copy of the Complaint filed in the Ohio State Case, however, upon request, a copy of the Complaint shall be produced.[1]

---

[1] The information contained herein related to the causes of action in the Ohio State Case is only meant to be descriptive and it does not replace or amend any of those causes of action  In the event of any discrepancy, the Complaint in the Ohio State Case shall control

5      The Ohio State Case has been in litigation since 2001  Julie Brittingham's lung condition has since gotten markedly worse and she is currently waiting to get a lung transplant

6      In the Ohio State Case, Julie Brittingham seeks damages personal to her such as pain, suffering, medical expense, decreased life expectancy, disability, loss of consortium, loss of enjoyment of life, mental and emotional anguish, loss of wages, transportation, and other expenses, and David Brittingham seeks damages for loss of consortium  The Brittinghams have alleged damages in a reasonable amount which amount is currently contingent and unliquidated

7      According to certain Master Separation Agreement ("MSA") between Delphi Corporation ("Delphi") and MLC, and as previously verified by Debtors' counsel, Delphi is contractually obligated, and has acknowledged this obligation, to indemnify MLC for any damages owed to the Brittinghams and as such, had assumed the defense of and financial responsibility for the Ohio State Case on behalf of MLC  However, according to a certain Master Disposition Agreement ("MDA") between MLC and Delphi, and as further alleged by MLC's counsel, attempts were apparently made to transfer Delphi's obligation, to defend certain litigation matters (including the Ohio State Case) pursuant to the terms of the MSA, back to MLC upon the effective date of the MDA  Notwithstanding, the MLC remains primarily obligated to the Brittinghams [2]

8      Furthermore, based on representations by Debtors' counsel and the MPA, after Delphi's plan became effective on October 6th, 2009, Delphi's defense in the Brittinghams action has been allegedly transferred to the Debtors – not New GM[3]  This is apparently due to the fact that according to the MPA, New GM did not assume any employment-related obligations for "non-UAW hourly employees" such as Julie Brittingham[4]

9      As a result, as of the Petition Date, the Brittinghams had a contingent and unliquidated claim against the Debtors in an amount that should be at least several million dollars

10     By filing this Proof of Claim, the Brittinghams (a) do not waive (and expressly reserve) all of their procedural and substantive rights, claims and defenses, (b) do not waive (and expressly reserve) any right of the Brittinghams to any other claim, right, or right of action that the Brittinghams have or might have against the Debtors, their estates, any successor entities, or any other person, whether such claim, right, or action arises prior to, upon, or after the Petition Date, and (c) do not waive (and expressly reserve) any and all other rights that the Brittinghams may have pursuant to applicable law or agreement  The claims asserted herein

---

[2] The Claimants reserve all rights with respect to such alleged transfers and as to any applicable insurance policies covering such action  Nothing contained herein shall be deemed a waiver by Claimants of any rights as against Dr Stull, New GM, MLC, Delphi or any applicable insurance policies or coverage

[3] The Claimants reserve all rights with respect to such alleged transfers and as to any applicable insurance policies covering such action

[4] This information is based on a representation by MLC's counsel, nothing contained herein shall be deemed to confirm or deny Julie Brittingham's employee status

against the Debtors shall in no way limit any other claim possessed by the Claimants against any entity other than the Debtors

11      The Brittinghams reserve their right to  (a) amend, update, or supplement this Proof of Claim (including, without limitation, to add additional amounts due and owing) at any time and in any respect, and (b) file additional proofs of claim

# EXHIBIT B

HEARING DATE AND TIME: August 6, 2010 at 9:45 a.m. (Eastern Time)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
:
In re                                               :          Chapter 11 Case No.
:
**MOTORS LIQUIDATION COMPANY,** *et al.*,           :          **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*    :
:
                              **Debtors.**          :          **(Jointly Administered)**
:
------------------------------------------------------------x

### ORDER PURSUANT TO 11 U.S.C. § 362(d) MODIFYING THE AUTOMATIC STAY TO ALLOW THE COMPLETION OF THE PENDING PERSONAL INJURY ACTION OF JULIE AND DAVID BRITTINGHAM

Upon the Motion, dated July 12, 2010 ("**Motion**"),* of Julie Brittingham ("**Ms. Brittingham**") and her husband, David Brittingham ("**Mr. Brittingham**", and collectively with Mrs. Brittingham as the "**Brittinghams**"), pursuant to sections 362(d)(1) and 105 of title 11, United States Code (the "**Bankruptcy Code**"), for entry of an order modifying the automatic stay to allow the Brittinghams to proceed with and to liquidate their state law personal injury action, pending in the Court in the Common Pleas of Montgomery County, Ohio, *Brittingham v. General Motors Corporation, et al.*, Case No. 2001 CV 00664 (the "**Ohio Litigation**"); and the Debtors having submitted opposition to the Motion; and the Court having determined that the legal and factual bases set forth in the Motion and on the record of the hearing on this matter establish just cause for the relief granted herein in these limited circumstances; and after due deliberation and sufficient cause appearing therefore, it is hereby

ORDERED that the Motion is granted as provided herein; and it is further

ORDERED that the automatic stay under section 362(a) of the Bankruptcy Code is

---

* Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

hereby modified to permit the Brittinghams to proceed with, liquidate, and prosecute the Ohio

Litigation against the Debtors; provided, however, that any such liquidated claim against the

Debtors, to the extent not satisfied by non-estate assets, including applicable insurance coverage,

if any, shall *not be the subject of any execution or other judgment collection mechanism*

*against assets of the MLC estate, and shall instead be treated like other unsecured claims, and*

be subject to this court's determination of treatment under any applicable chapter 11 plan(s)

confirmed in these cases and applicable bankruptcy law, unless otherwise determined by this

Court; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

disputes arising from or related to this Order.

Dated:  New York, New York
        *August 23, 2010*


                                        *s/ Robert E. Gerber*
                                        United States Bankruptcy Judge

2

# EXHIBIT C

Redacted by Clerk of Court

ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Wednesday, February 09, 2011 1:13:52 PM
CASE NUMBER: 2001 CV 00664 Docket ID: 15853628
GREGORY A BRUSH
CLERK OF COURTS MONTGOMERY COUNTY OHIO

**Montgomery County Common Pleas Court**
General Division

## IN THE COMMON PLEAS COURT OF MONTGOMERY COUNTY
## CIVIL DIVISION

| | | |
|---|---|---|
| JULIE BRITTINGHAM, | : | CASE NO. 2001 CV 00664 |
| | : | |
| Plaintiff, | : | Judge Michael T. Hall |
| | : | |
| -vs- | : | |
| | : | **DECISION, ORDER, AND ENTRY** |
| GENERAL MOTORS CORPORATION, et al., | : | **SUSTAINING IN PART GENERAL** |
| | : | **MOTORS CORPORATION'S MOTION** |
| Defendants. | : | **FOR SUMMARY JUDGMENT AND** |
| | : | **SUSTAINING IN PART PLAINTIFFS'** |
| | : | **CROSS MOTION FOR PARTIAL** |
| | : | **SUMMARY JUDGMENT** |
| | : | |
| | : | **FINAL APPEALABLE ORDER** |
| | : | **(Rule 54(B))** |

This matter is before the Court upon the Motion for Summary Judgment of General Motors Corporation, filed on January 21, 2009. Plaintiffs' Memorandum in Opposition to Defendant General Motors Corporation's Motion and Plaintiffs' Cross Motion for Partial Summary Judgment was filed on February 23, 2009. A Reply Memorandum in Support of Summary Judgment and in Opposition to Plaintiffs' Cross Motion for Partial Summary Judgment was filed by Defendant General Motors Corporation on March 16, 2009. Plaintiffs' Reply to Defendant General Motors Corporation's Memorandum in Opposition was filed on April 3, 2009. Upon consideration thereof, the Court finds as follows:

I.     PROCEDURAL HISTORY

On February 9, 2001, Plaintiffs Julie and David Brittingham (hereinafter "Mrs. and Mr. Brittingham," respectively, or "Plaintiffs," collectively) filed their original complaint in the

1

Montgomery County Court of Common Pleas against Defendants General Motors Corporation (hereinafter "GM") and Virginia Stull, M.D. (hereinafter "Dr. Stull"). On March 15, 2001 the case was removed to the United States District Court for the Southern District of Ohio. In March of 2002 the case was remanded back to the Montgomery County Court of common Pleas only to be removed to federal court again in June 2002.

Plaintiffs and GM filed cross motions for summary judgment with the Distrcit Court regarding whether the statute of limitations had expired. GM also moved for summary judgment on alternative grounds. The District Court held that, because GM does not fit the definition of "hospital" or "clinic" under R.C. 2305.11(D)(1), Plaintiffs claims were not medical claims subject to the one-year statute of limitations; but since a potential employer, under Ohio law, does not have a duty to disclose an applicant's medical condition to her and refer her to a qualified physician, Plaintiffs' claims were dismissed. "Entry and Order Granting Plaintiffs' Motion for Summary Judgment on the Statute of Limitations (Doc. #97); Overruling Defendant General Motors' Motion for Summary Judgment on the Statute of Limitations (Doc. #91) and Granting Defendant General Motors' Motion for Summary Judgment on Alternative Grounds (Doc. #99)," filed on June 28, 2004, in *Brittingham v. General Motors Corp.* (S.D. Ohio 2003), Case No. C-3-02-283.

On appeal, the U.S. Court of Appeals for the Sixth Circuit held that the District Court did not have subject matter jurisdiction and vacated the District Court's judgments. *Brittingham v. General Motors Corp.* (C.A.6, 2008), 526 F.3d 272. The case was remanded to the Montgomery County Court of Common Pleas. Cross Motions for summary judgment are now before the Court.

II.    FACTS

In the summer of 1997, Mrs. Brittingham applied for work at GM. At the request of GM, Mrs. Brittingham underwent a pre-employment physical examination at the GM plant in Moraine on August 1, 1997. Dr. Stull, the plant medical doctor, conducted the physical examination, which included a series of lung function tests. The first pulmonary function test showed Mrs. Brittingham's lung function to be 57% of predicted value and the second test showed it to be 55% of

2

predicted value. Mrs. Brittingham signed a printout of the test results, but she did not read them nor did she receive any explanation of them. (Brittingham Depo., p. 126-127.) Dr. Stull approved Mrs. Brittingham for employment with GM. Mrs. Brittingham was employed by GM from September 11, 1997 until August 1999. In September 1999, Mrs. Brittingham was diagnosed with Alpha-1 Antitrypsin Deficiency ("AAD"), a rare pulmonary condition. Mrs. Brittingham maintains that if GM had declined her employment application, informed her of her impaired lung function, and referred her to a qualified physician, she would have stopped smoking, sought treatment immediately and, as a result, would be engaging in most activities of normal everyday life.

On February 9, 2001, Plaintiffs filed a complaint alleging negligence and intentional misconduct, breach of fiduciary duty and loss of consortium against GM. Plaintiffs' Second Amended Complaint filed on June 9, 2009 alleges claims for negligence, fraud, and loss of consortium. Under the negligence claim, Plaintiffs allege that GM and Dr. Stull breached their duties to 1.) "explain to [Mrs.] Brittingham the significance of the pulmonary function tests she underwent during her GM pre-employment physical," 2.) "refer [Mrs.] Brittingham to a 'qualified physician' for follow up, including without limitation further evaluation, diagnosis and treatment," and 3.) "disapprove [Mrs.] Brittingham for employment with GM, because she was physically unfit for such employment." Plaintiffs' fraud claim alleges that GM and Dr. Stull concealed the significance of Mrs. Brittingham's pulmonary function tests.

GM is seeking summary judgment on Plaintiffs' claims on the basis that GM did not owe Mrs. Brittingham the duty to explain the significance of the tests performed during the pre-employment physical examination, to refer Mrs. Brittingham to another physician for further examination, or to "disapprove" Mrs. Brittingham for employment because she was allegedly physically unfit for employment with GM. GM also argues that Plaintiffs' claims are untimely to the extent Plaintiffs hold GM liable for the conduct of Dr. Stull based on a theory of respondeat superior. Plaintiffs move this Court for partial summary judgment to confirm that prospective employers have a legal duty to communicate to job applicants the significance of adverse medical test results obtained as a result of pre-employment physicals and that the limitations period

3

applicable to the Plaintiffs' negligence claim against GM is the two-year term set forth in R.C. 2305.10(A).

III.    STANDARD OF REVIEW

In *Harless v. Willis Day Warehousing Inc.* (1978), 54 Ohio St.2d 64, the Ohio Supreme Court stated that for summary judgment to be appropriate, it must appear that: "(1) There is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." Id. at 66; see also Ohio R. Civ. P. 56(C). Furthermore, the moving party has the burden of showing that there is no genuine issue as to any material fact. *Harless*, 54 Ohio St.2d at 66.

The *Harless* Court also noted that Ohio R. Civ. P. 56(E) requires a party opposing a summary judgment motion to show specific facts demonstrating that there is a genuine issue of material fact. Id. at 65-66. Moreover, in a motion for summary judgment a non-movant may not rest on the mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial. *Van Fossen v. Babcock & Wing Co.* (1988), 36 Ohio St.3d 100, 117. A trial court must examine all appropriate materials filed before ruling on a motion for summary judgment. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358, 1992-Ohio-95.

Ohio R. Civ. P. 56(C) contains an inclusive list of the materials to be considered. "[T]he pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action" are the only appropriate materials a court may examine. Ohio R. Civ. P. 56(c); *Dresher v. Burt*, 75 Ohio St.3d 280, 292-93, 1996-Ohio-107. In considering this motion for summary judgment, inferences drawn from the underlying facts will be viewed in a light most favorable to the non-moving party. Id. at 359; see also *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 333.

4

## IV.    LAW AND ANALYSIS

"It is well-established that in order for an employer to be liable under the doctrine of respondeat superior, the tort of the employee must be committed within the scope of employment. Moreover, where the tort is intentional, *** the behavior giving rise to the tort must be 'calculated to facilitate or promote the business for which the servant was employed ***.'" *Bryd v. Faber* (1991), 57 Ohio St. 3d 56, 58, 565 N.E.2d 584, quoting *Little Miami RR. Co. v. Wetmore* (1869), 19 Ohio St. 110, 132.  Although an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior, the employee who committed the tort is primarily liable for his actions, while the employer is merely secondarily liable.  *Comer v. Risko*, 106 Ohio St. 3d 185, 189, 2005-Ohio-4559, 833 N.E.2d 712.  If there is no liability assigned to the agent, there can be no liability imposed upon the principal for agent's actions.  Id.

In this case, there are no allegations of any direct or independent tortious conduct on the part of GM.  In addition, the alleged behavior giving rise to Plaintiffs' fraud claim was done within the scope of Dr. Stull's employment.  Accordingly, the theory of liability advanced against GM is one of vicarious liability, or respondeat superior, for the alleged tortious conduct of its agent/ employee, Dr. Stull.[1]  Because Plaintiffs' claims against Dr. Stull for negligence and fraud are barred by the one year statute of limitations set for the in R.C. 2305.11(B)(1), Plaintiffs' negligence and fraud claims against GM, as the employer of Dr. Stull, also fail.

While Civ. R. 19.1(A)(2) requires that a spouse's loss of consortium claim be brought in the same action as the claim for personal injuries, the loss of consortium claim "is a distinct cause of action brought by a different party and subject to a different statute of limitations."  *Perry v. Eagle-Picher Industries, Inc.* (1990), 52 Ohio St. 3d 168, 169, 556 N.E.2d 484, citing *Kraut v. Cleveland Ry. Co.* (1936), 132 Ohio St. 125, 5 N.E.2d 324.  After noting that loss of consortium claims are independent causes of action, the Court in *Perry*, held that it was error for the lower court to

---

[1] Plaintiffs concede in their cross motion for summary judgment that GM's liability is the result of vicarious liability as a consequence of Dr. Stull's negligence and fraud.  (Plaintiffs' Memorandum in Opposition to Defendant General Motors Corporation's Motion for Summary Judgment and Plaintiffs' Cross Motion for Partial Summary Judgment, p. 21-22.)

5

dismiss the loss of consortium claim. Id. at 169. Therefore, the Ohio Supreme Court allowed the spouse's loss of consortium claim to continue even after the decedent spouse's claims were dismissed on procedural grounds. Id. Similarly, the Ohio Supreme Court, in *Dean v. Angelas*, 24 Ohio St. 2d 99, 104, affirmed the lower court's dismissal of an injured husband's claims because they were not brought within the limitations period, but reversed the dismissal of the wife's loss of consortium claim, allowing the loss of consortium claim to continue even after the husband's claims were dismissed. Despite some authority to the contrary, this Court finds that, at least in cases where the primary cause of action is dismissed otherwise than on the merits, a spouse's loss of consortium claim may continue as an independent cause of action, subject to the applicable four-year statute of limitations.

Finding that Mr. Brittingham's loss of consortium claim was brought within the applicable four-year statute of limitations provided in R.C. 2305.99, this Court holds that Defendant GM's Motion for Summary Judgment is Overruled as it pertains thereto. Plaintiffs' Motion for Summary Judgment is Sustained, to the extent it relates to the independent viability Mr. Brittingham's loss of consortium claim.

Because Mr. Brittingham will have to establish liability on the part of Dr. Stull to prevail on his claim, the instant decision should be immediately appealable. Therefore, the Court determines that there is no just reason for delay under Civ. R. 54(B).

CONCLUSION

For the reasons detailed herein, the Court hereby    SUSTAINS in part and OVERRULES in part, Defendant Virginia Stull, M.D.'s Motion for Summary Judgment, and SUSTAINS in part, and OVERRULES in part, Plaintiffs' Cross Motion for Partial Summary Judgment.

SO ORDERED:

s/ JUDGE MICHAEL T. HALL

6

**To the Clerk of Courts:**

**Pursuant to Civ. R. 54 (B), please serve the attorneys for each party <u>and</u> each party not represented by counsel with Notice of Judgment and its date of entry upon the journal.**

**s/ JUDGE MICHAEL T. HALL**

Copies of the above were sent to all parties listed below by electronic service notification through the e-Filing system of the Clerk of Courts.

THOMAS J. INTILI
(937) 226-1770
Counsel for Plaintiffs, Julie Brittingham

P. RICHARD MEYER
ROBERT N. WILLIAMS
(307) 733-8300
Counsel for Plaintiffs

JAMES A. COMODECA
(513) 977-8200
Counsel for Defendants, General Motors Corporation

MARILENA R. WALTERS
(614) 628-6880
Counsel for Defendant, Virginia Stull, M.D.

JIM FINNIGAN, Bailiff (937) 496-7951



General Divison

Montgomery County Common Pleas Court

41 N. Perry Street, Dayton, Ohio 45422

**Case Title:**   JULIE BRITTINGHAM vs GENERAL MOTORS
CORPORAITON

**Case Number:**   2001 CV 00664

**Type:**   Decision

So Ordered

*Michael T. Hall*

Michael T. Hall

# EXHIBIT D



FILED
COURT OF APPEALS

2011 DEC 16  AM 8: 53

GREGORY A ISH
CLERK OF COURTS
MONTGOMERY CO OHIO
36

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

JULIE BRITTINGHAM, et al.                          :

    Plaintiffs-Appellants                     :          C.A. CASE NO.   24517

v.                                                 :          T.C. NO.   01CV664

GENERAL MOTORS CORPORATION          :          (Civil appeal from
et al.                                                                Common Pleas Court)

    Defendants-Appellees                       :

                                   :

          . . . . . . . . . .

**O P I N I O N**

Rendered on the __16th__ day of ___December___, 2011.

          . . . . . . . . . .

THOMAS J. INTILI, Atty. Reg. No. 0036843, 40 N. Main Street, 1500 Kettering Tower, Dayton, Ohio 45423
    Attorney for Plaintiffs-Appellants

and

P. RICHARD MEYER, Atty. Reg. No. 0002243 and ROBERT N. WILLIAMS, Atty. Reg. No. 0002244, P. O. Box 2608, Jackson, WY 83001
    Of counsel for Plaintiffs-Appellants

JAMES A. COMODECA, Atty. Reg. No. 0038564, 255 E. 5th Street, Suite 1900, Cincinnati, Ohio 45202

and

2

MARILENA R. WALTERS, Atty. Reg. No. 0011960 and GREGORY P. MATHEWS, Atty. Reg. No. 0078276, 191 West Nationwide Blvd., Suite 300, Columbus, Ohio 43215
Attorneys for Defendants-Appellees

. . . . . . . . . .

DONOVAN, J.

This matter is before the Court on the Notice of Appeal of Julie Brittingham, filed March 4, 2011. The appeal is taken from the trial court's February 9, 2011 "Decision, Order and Entry Sustaining, in part, Defendant Virginia Stull, M.D.'s Motion for Summary Judgment and Sustaining , in part, Plaintiffs' Cross Motion for Partial Summary Judgment," and from the trial court's February 9, 2011 "Decision, Order, and Entry Sustaining in part [GM's] Motion for Summary Judgment and Sustaining in part Plaintiffs' Cross Motion for Partial Summary Judgment."

On February 9, 2001, Julie and David Brittingham filed a complaint against, in part, GMC and Stull. On March 15, 2001, the matter was removed to the United States District Court for the Southern District of Ohio, and the Court allowed the Brittinghams to amend their complaint. In March of 2002, the amended complaint was remanded back to the Montgomery County Court of Common Pleas as an original complaint and subsequently amended. The amended complaint was thereafter removed to federal court.

In July, 2002 the Brittinghams moved to remand the amended complaint to state court, and their motion was denied. The Brittinghams obtained leave to amend their complaint again and moved the court to remand the matter to state court. The District Court determined that it no longer had federal question jurisdiction but denied the Brittinghams' motion to remand.

Stull filed a motion for summary judgment with the District Court arguing that the

3

statute of limitations barred the Brittinghams' claims. The District Court sustained Stull's motion in November, 2003. The Brittinghams appealed the District Court's denial of their motion to remand and the grant of summary judgment against them. The Sixth Circuit found that the District Court lacked subject matter jurisdiction when the matter was removed to federal court for the second time, and it vacated the District Court's judgment and ordered the Court to remand the matter back to state court. *Brittingham v. General Motors Corp.* (C.A. 6, 2008), 526 F.3d. 272.

On January 21, 2009, Stull and GM separately moved the trial court for summary judgment. On February 23, 2009, the Brittinghams opposed the motions and moved the court for partial summary judgment. Stull filed a Reply on March 16, 2009.

The undisputed facts of this matter are set forth in the trial court's opinions as follows: "In the summer of 1997, Mrs. Bittingham applied for work at GM. At the request of GM, Mrs. Brittingham underwent a pre-employment physical examination at the GM plant in Moraine on August 1, 1997. Dr. Stull, the plant medical doctor, conducted the physical examination, which included a series of lung function tests. The first pulmonary function test showed Mrs. Brittingham's lung function to be 57% of predicted value and the second test showed it to be 55% of predicted value. Mrs. Brittingham signed a printout of the test results, but she did not read them nor did she receive any explanation of them. * * * Dr. Stull approved Mrs. Brittingham for employment with GM. Mrs. Brittingham was employed by GM from September 11, 1997 until August 1999. In September 1999, Mrs. Brittingham was diagnosed with Alpha-1 Antitrypsin Deficiency ("AAD") a rare pulmonary condition. Mrs. Brittingham maintains that if Dr. Stull had declined her employment application, informed her of her impaired lung function, and referred her to a qualified

4

physician, she would have stopped smoking, sought treatment immediately and, as a result, would be engaging in most activities of normal everyday life.

"On February 9, 2001, Plaintiffs filed a complaint alleging medical malpractice and loss of consortium against Dr. Stull. Plaintiffs' Second Amended Complaint filed on June 9, 2009 alleges claims for negligence, fraud, and loss of consortium. Under the negligence claim, Plaintiffs allege that Dr. Stull breached her duties to 1.) 'explain to Mrs. Brittingham the significance of the pulmonary function tests she underwent during her GM pre-employment physical,' 2.) 'refer [Mrs.] Brittingham to a qualified physician for follow-up, including without limitation further evaluation, diagnosis and treatment,' and 3.) 'Disapprove of [Mrs.] Brittingham for employment with GM, because she was physically unfit for such employment.' Plaintiffs' fraud claim alleges that Dr. Stull concealed the significance of Mrs. Brittingham's pulmonary function tests.

"Dr. Stull has filed a motion for summary judgment in which she argues that, under Ohio's one-year medical malpractice statute of limitations, Plaintiffs' claim for negligence and fraud are time barred. Plaintiffs have filed a cross motion for partial summary judgment seeking the Court to confirm that: 1.) the Plaintiffs' negligence claim against Dr. Stull is not a 'medical claim' as defined in former R.C. 2305.11(D)(3); 2.) the Plaintiffs have stated a claim against Dr. Stull for ordinary negligence, not medical malpractice; 3.) the limitations period applicable to the Plaintiffs' negligence claim against Dr. Stull is the two-year term set forth in R.C. 2305.10(A); and 4.) the Plaintiffs' fraud claim against Dr. Stull is timely pursuant to R.C. 2305.09(C)." "Decision, Order, and Entry Sustaining, in Part, Defendant Virginia Stull, M.D.'s Motion for Summary Judgment and Sustaining, in part, Plaintiffs' Cross Motion for Partial Summary Judgment."

5

"On February 9, 2001, Plaintiffs filed a complaint alleging negligence and intentional misconduct, breach of fiduciary duty and loss of consortium against GM. Plaintiffs' Second Amended Complaint filed on June 9, 2009 alleges claims for negligence, fraud and loss of consortium. * * *

"GM is seeking summary judgment on Plaintiffs' claims on the basis that GM did not owe Mrs. Brittingham the duty to explain the significance of the tests performed during the pre-employment physical examination, to refer Mrs. Brittingham to another physician for further examination, or to 'disapprove' Mrs. Brittingham for employment because she was allegedly physically unfit for employment with GM. GM also argues that Plaintiffs claims are untimely to the extent Plaintiffs hold GM liable for the conduct of Dr. Stull based on a theory of respondeat superior. Plaintiffs move this court for partial summary judgment to confirm that prospective employers have a legal duty to communicate to job applicants the significance of adverse medical test results obtained as a result of pre-employment physicals and that the limitations period applicable to the Plaintiffs' negligence claim against GM is the two-year term set forth in R.C. 2305.10(A)." "Decision, Order, and Entry Sustaining in part [GM's] Motion for Summary Judgment and Sustaining in part Plaintiffs' Cross Motion for Partial Summary Judgment."

The trial court determined that the Plaintiffs claims against Dr. Stull for negligence and fraud are medical claims barred by the one year statute of limitations set forth in R.C. 2305.11(B)(1), and that Plaintiffs' claims for negligence and fraud against GM, on the basis of vicarious liability, also fail. Regarding Mr. Brittingham's loss of consortium claims, the court determined that those claims were brought within the applicable statute of limitations set forth in R.C. 2305.99.

6

The Brittinghams assert four assignments of error herein. Their first assigned error is as follows:

"THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT FOR DEFENDANT-APPELLEE VIRGINIA STULL, M.D. AND AGAINST PLAINTIFF-APPELLANT JULIE BRITTINGHAM ON STATUTE OF LIMITATIONS GROUNDS."

"Civ. R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. (Internal citations omitted).  Our review of the trial court's decision to grant summary judgment is de novo." *Cohen v. G/C Contracting Corp.,* Greene App. No. 2006 CA 102, 2007-Ohio-4888, ¶ 20.

"In determining the proper statute of limitations for a cause of action, the court must review the complaint to determine 'the essential character' of the claim.  *Does v. First United Methodist Church* (1994), 68 Ohio St.3d 531 * * *; *Love v. Port Clinton* (1988), 37 Ohio St.3d 98, * * * . '[I]n determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded.  The grounds for bringing the action are the determinative factors, the form is immaterial.' (Citations omitted)." *Grover v. Bartsch,* 170 Ohio App.3d 188, 202, 2006-Ohio-6115, ¶ 52.

The Brittinghams assert that their negligence claim against Dr. Stull is not a medical claim.  "'Medical claim' means any claim that is asserted in any civil action against a

7

physician * * * and that arises out of the medical diagnosis, care, or treatment of any person. 'Medical claim' includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person." R.C. 2305.11(D)(3)(2000). "[A]n action upon a medical * * * claim shall be commenced within one year after the cause of action accrued[.]" R.C. 2305.11(B)(1)(2000).

According to the Brittinghams, the claim against Dr. Stull is not a medical claim because there was no physician-patient relationship between Mrs. Brittingham and Dr. Stull, and because the claim does not arise out of Mrs. Brittingham's medical diagnosis, care or treatment but rather out of Dr. Stull's failure to inform Mrs. Brittingham that her test results were abnormal, to refer her to a physician for follow-up care, and to decline her employment at GM.    The Brittinghams assert that the claim is one for "ordinary negligence." The Brittinghams rely on *Smith v. Katzman* (1992), 81 Ohio App.3d 682, 686 (applying two-year statute of limitations and determining that the "fact that Mr. Smith was required to take the examination as a precondition to Social Security benefits and that its purpose was to obtain information for the Social Security Administration is distinguishable from the diagnosis, care or treatment which constitutes a medical claim"), and *New York Central Rd. Co. v. Wiler* (1931), 124 Ohio St.118, 122-23 (determining that the requirement that an employee be examined to provide information to the employer is distinguishable from the treatment or attempt to cure that creates a physician-patient relationship).

In each of those cases, as the trial court correctly determined, the purpose of the examinations was not to diagnose, treat or cure but to further the purposes of the Social Security Administration, in *Katzman*, and the employer, in *Wiler*. Similarly, the purpose of the examination conducted by Dr. Stull was to further GM's purposes in evaluating Mrs.

Brittingham for prospective employment. When the substance of the negligence claim is analyzed however, it is clearly grounded in medical malpractice. In other words, the claim arises out of the medical evaluation, diagnosis and care of Mrs. Brittingham. According to the negligence claim against Stull, the doctor "had a duty to explain to Julie Brittingham the significance of the pulmonary function tests," and "to refer [her] to a 'qualified physician' for follow up, including without limitation *further evaluation, diagnosis and treatment.*" (Emphasis added).

Regarding the fraud claim, the Brittinghams asserted in their complaint that Stull had a "duty to explain to Julie Brittingham the significance of her GM pre-employment function tests," but instead concealed the significance, leading her to incorrectly believe that her "pulmonary function was normal." Again, the claim involves medical evaluation, diagnosis and treatment. As the trial court noted, the Brittinghams' memorandum in opposition to Stull's motion for summary judgment concedes that if the court were to determine that the negligence claim is a medical claim, then the fraud claim is also bound by the one year statute of limitations. See *Knepler v. Cowden* (Dec. 23, 1999), Montgomery App. No. 17473 (holding that Plaintiff's claim for breach of contract sounded in malpractice as a matter of law, since it "is well settled that the misconduct of medical professionals constitutes malpractice regardless of whether such misconduct is framed in terms of negligence or breach of contract.") See also *Harris v. Ohio State Univ.*, Franklin App. No. 06AP-1092, 2007-Ohio-1812, ¶ 10 (The "statute's definition of 'medical claim' does not permit us to split a fraud theory involving medical treatment off from a professional negligence claim involving medical treatment.")

We conclude that the trial court correctly determined that the negligence and fraud

claims against Dr. Stull are subject to the one year statute of limitations. Since it is undisputed that the Brittinghams filed their complaint more than one year after Mrs. Brittingham was diagnosed with Alpha-1 Antitrypsin Deficiency Disorder, the trial court did not err in entering summary judgment in favor of Dr. Stull on statute of limitations grounds. The Brittinghams' first assignment of error is overruled.

The Brittinghams' second assignment of error is as follows:

"THE TRIAL COURT ERRED WHEN IT CONCLUDED THAT PLAINTIFFS-APPELLANTS HAD NOT ALLEGED 'ANY DIRECT OR INDEPENDENT TORTIOUS CONDUCT ON THE PART OF GM.'"

According to the Brittinghams, "the trial court did not review the second amended complaint, or the Brittinghams' motion against GM for partial summary judgment, before entering summary judgment for GM on statute of limitations grounds."

In their negligence claim against GM, as the trial court specifically noted, the Brittinghams asserted that GM had a duty to explain the pulmonary function tests, a duty to refer Mrs. Brittingham to a physician for follow-up treatment, and a duty to disapprove of her employment. The trial court further noted that the Brittinghams "move this court for partial summary judgment to confirm that prospective employers have a legal duty to communicate to job applicants the significance of adverse medical test results obtained as a result of pre-employment physicals * * * ."

The Brittinghams' rely upon *Murphy v. City of Reynoldsburg* (1992), 65 Ohio St.3d 356, syllabus ("Civ.R. 56(C) places a mandatory duty on a trial court to thoroughly examine all appropriate material filed by the parties before ruling on a motion for summary judgment. The failure of a trial court to comply with this requirement constitutes reversible

error.") In *Murphy*, the trial judge scheduled a hearing on the defendants' motion for summary judgment, and at the start of the hearing, the judge stated, "'Let me be up front with all of you. I haven't read your motion. I haven't read your briefs. So, educate me.'" Id., at 357. After the motion was argued, the court granted the defendants' motion from the bench. Id.

There is nothing before us to suggest that the trial court failed to consider the appropriate materials before it. "[A] general principle of appellate review is the presumption of regularity; that is, a trial court is presumed to have followed the law unless the contrary is made to appear in the record." *Thomas v. Thomas* (Sept. 17, 1999), Clark App. No. 98-CA-55. Since the Brittinghams have not affirmatively demonstrated neglect on the part of the trial court in sustaining in part GM's motion for summary judgment, they are not entitled to a remand of the matter, and their second assigned error is overruled.

The Brittinghams' third assigned error is as follows:

"THE TRIAL COURT ERRED BY FAILING TO ACKNOWLEDGE GM'S LEGAL DUTY TO DISCLOSE TO PLAINTIFF-APPELLANT JULIE BRITTINGHAM THE FACT THAT HER PRE-EMPLOYMENT LUNG FUNCTION TESTS WERE GROSSLY AND OBJECTIVELY ABNORMAL."

The Brittinghams urge us to recognize the duties asserted in their negligence claim against GM based upon certain criteria set forth in *Third National Bank and Trust Co. v. Diamond Savings and Loan Co.* (1989), 43 Ohio App.3d 140, 143, as well as similar principles set forth in the Restatement (Second) of Torts, § 323.

The existence of a duty is a question of law. *Mussivand v. David* (1989), 45 Ohio St.3d 314, 318.

In *Third National Bank,* this Court considered a number of policy considerations upon which the imposition of a legal duty must be balanced, as set forth in *Sun 'n Sand, Inc. v. United California Bank* (1978), 21 Cal. 3d 671, 148 Cal.Rptr. 329, 582, as follows:

"'The most important of these were set forth in *Rowland v. Christian* (1968), 69 Cal.2d 108, 113, [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], and include '* * * the foreseeablility of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' * * *

"'It is settled, however, that the chief element in determining whether defendant owes a duty or an obligation to plaintiff is the foreseeability of the risk * * * .   Citations omitted)."

The Restatement provides,

"One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

"(a) his failure to exercise such care increases the risk of such harm or

"(b) the harm is suffered because of the other's reliance upon the undertaking."

The Brittinghams argue that the above criteria "weigh in favor of establishing a prospective employer's duties" to disclose to an applicant abnormal test results and refer

the applicant to a qualified physician, and to disapprove employment, in that the harm to the applicant is foreseeable; the applicant has suffered injury with certainty; the connection between the failure to disclose and the injury is close; failure to disclose is morally reprehensible; the duty will avoid harm that will otherwise be suffered absent disclosure; the burden on the employer to disclose is slight compared to the benefit to the applicant; the employer is better able to insure against the harm caused by failure to disclose; and there is no legal or moral basis to shift the costs of harm caused by the failure to disclose to the applicant.

The Brittinghams direct our attention to several authorities to support their argument regarding GM's duty to Mrs. Brittingham. In *Union Carbide & Carbon Corp. v. Stapleton* (6th Cir. 1956) 237 F.2d 229, which was not an action for malpractice but for negligence, at issue was whether the defendant had a duty to warn its employee, Stapleton, that he was suffering from tuberculosis. From the time he was first employed in 1944 until 1952, 14 X-rays were taken of Stapleton's chest. The Sixth Circuit noted that the defendant had no obligation to give Stapleton a physical examination but, as his employer, "the appellant became aware that Stapleton had tuberculosis through its voluntary physical examination of him. It then became the appellant's duty in the exercise of ordinary care to inform him of his condition. That duty persisted throughout the period of the employer-employee relationship, the relationship which afforded both the occasion for the appellant's knowledge and the opportunity to impart its knowledge to him." Id., at 234.

In *Coffee v. McDonnell-Douglas Corp.* (1972), 8 Cal.3d 551, 503 P.2d 1366, 105 Cal.Rptr. 358, the Supreme Court of California addressed the issue of when an employer, having required a prospective employee to submit to an examination for physical fitness

for employment, assumes a duty to discover a diseased condition. The court determined that "whether the employer in such instance is liable for not discovering the disease depends upon whether or not in light of all of the circumstances he conducted and completed the examination with due care. Included among the relevant circumstances is the purpose fo the examination." In *Coffee*, the purpose of the physical test was to determine plaintiff's physical fitness as a pilot, and his blood test report, indicating an inflammatory condition, "was never seen by defendant's medical employees because of a corporate procedure allowing the report to be filed without evaluation. The question posed, already answered by the jury in the affirmative, was whether in the exercise of due care, defendant 'should have known' of the results of the blood test. (Citation omitted). Viewed in this context, the failure 'to discover' the inflammatory condition in the plaintiff was the consequence of defendant's own negligence." See also *James v. United States* (N.D. Cal. 1980), 483 F.Supp. 581, 585. (The reasoning of the Coffee decision is dispositive here. Defendant had no duty to discover James' tumor. Having made a chest X-ray an essential part of the preemployment examination to determine an applicant's physical fitness, however, defendant failed to use due care when, through a clerical error, the report on the X-ray was not brought to the attention of the examining physician."); *Dornak v. Lafayette General Hospital* (1981), 399 So.2d 168, 170-71 ("The duty owed was to inform plaintiff of her tubercular condition discovered during a pre-employment physical examination."); *Daly v. United States* (1991), 946 F.2d 1467 (holding, in the context of a pre-employment physical, that an examining physician under Washington law has a duty to inform those examined, in the absence of a doctor patient relationship, of abnormal test results); *McKinney v. Bellevue Hospital* (1992), 183 A.D.2d 563 ("The tendency of the

14

average person, in similar circumstances, to interpret the employer's silence as an indication of good health is so apparent and the consequence of such reliance so potentially serious that we conclude that the law imposes a duty to disclose upon the employer.  In comparison with the harm to be abated, the burden placed upon the employer is slight and promotes the public welfare.")

Finally, the Brittinghams rely upon *Meinze v. Holmes,* (1987), 40 Ohio App.3d 143, wherein the First District, relying in part upon an employer's duty to warn an employee of a "'hidden'" danger, as set forth in *Stapleton*, determined that a "physician, employed by an insurer, who examines an insured and thereby discovers a significant medical condition or information relating to treatment that is unknown to the insured has a duty to disclose such discovery to the insured where a reasonable physician of ordinary skill and diligence would disclose the information in question, even though a doctor-patient relationship does not exist.  This duty is fulfilled by the insurer's transmittal of the pertinent medical information to the insured's attorney."

GM directs our attention in part to *Eaton v. Contintental General* (N.D. Ohio 2001), 147 F.Supp.2d 829, aff'd, (6th. Cir. 2003) 59 Fed.Appx. 719.  Eaton sued a disability insurance provider that had performed a medical examination for the purpose of considering his application for insurance, and the trial court determined that the insurer had no duty under common law to notify him about his HIV positive test result.  The court further determined that the "relationship between an insurance company and an applicant is commercial, not medical."  Id., at 834.

We agree with GM that the above cases relied upon by the Brittinghams do not involve duties nearly as extensive as those the Brittinghams would have this Court impose,

namely to explain the significance of Mrs. Brittingham's test results, refer her to a treating physician, and disapprove her employment. We note that in her affidavit filed in federal court, attached to the Brittinghams' memorandum in opposition to GM's motion for summary judgment, Mrs. Brittingham averred, "I went to the August 1, 1997, physical examination solely for the purpose of seeking employment at GM. * * * ." Mrs. Brittingham's test results indicate "possible severe obstructive disease," and we note there is no suggestion in the record that GM was aware that Mrs. Brittingham specifically suffered from AAD, a condition Mrs. Brittingham herself describes as rare. Further, the Brittinghams do not allege, as in *Meinze*, that GM failed to disclose Mrs. Brittingham's test results; in her second amended complaint she concedes that the printouts of the spirometry results, which indicate "possible severe obstructive disease," were presented to her by Dr. Stull, and she signed them. Further, *Meinze* involved a physician's duty to disclose and not an employer's. Finally, we conclude that the nature of Mrs. Brittingham's relationship with GM was analagous to that of the applicant with the insurer in *Eaton* and commercial in nature.

As GM points out, regarding the voluntary undertaking doctrine set forth in the Restatement, there is nothing in the record to support an assertion that GM gratuitously or for consideration undertook to render services to Mrs. Brittingham.

Regarding the Brittinghams' assertions that GM's written company policy mandates her referral to a treating physician, we note that the "Referral Criteria" section in Policy No: C-ETS 2, Evaluative Testing and Screening, provide that they are "guidelines only," and they do not contain mandatory language requiring referral but are suggestive in nature. Further, as GM asserts, the Brittinghams do not cite to any case law that creates a duty on a prospective employer based on a violation of internal policy. Finally, the policy refers

exclusively to "employees" and not applicants or prospective employees.

The existence of a duty is a question of law and the Brittinghams have not shown as a matter of Ohio law a basis to impose upon GM the duties to explain the significance of Mrs. Brittingham's spirometry results to her, to refer her to a treating physician, or to disapprove employment, and the Brittinghams' third assignment of error is overruled.

The Brittinghams' fourth assignment of error is as follows:

"THE TRIAL COURT ERRED BY ENTERING SUMMARY JUDGMENT FOR DEFENDANT-APPELLEE GENERAL MOTORS CORPORATION AND AGAINST PLAINTIFF-APPELLANT JULIE BRITTINGHAM ON THE GROUNDS THAT THE ONE-YEAR MEDICAL MALPRACTICE STATUTE OF LIMITATIONS INSULATED IT FROM VICARIOUS LIABILITY FOR THE NEGLIGENT ACTS OF ITS EMPLOYEE, VIRGINIA STULL, M.D."

This argument relates directly to the Brittinghams' first assigned error in that any liability on the part of GM due to the conduct of Dr. Stull, based upon a theory of respondeat superior, must fail due to the Brittinghams' failure to timely file their medical claim against Dr. Stull within the one-year period of limitation. "Although a party injured by an agent may sue the principal, the agent, or both, a principal is vicariously liable only when an agent could be held directly liable." *National Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth*, 122 Ohio St.3d 594, 2009-Ohio-3601, ¶ 22. Accordingly, the Brittinghams' fourth assignment of error is overruled.

The judgment of the trial court is affirmed.

. . . . . . . . . .

GRADY, P.J. and FAIN, J., concur.

17

Copies mailed to:

Thomas J. Intili
P. Richard Meyer
Robert N. Williams
James A. Comodeca
Marilena R. Walters
Gregory P. Mathews
Hon. Dennis Adkins

# EXHIBIT E

# The Supreme Court of Ohio

**FILED**

JUL 2 5 2012

CLERK OF COURT
SUPREME COURT OF OHIO

Julie Brittingham et al.

v.

General Motors Corporation et al.

Case No. 2012-0757

E N T R Y

Upon consideration of the jurisdictional memoranda filed in this case, the court declines jurisdiction to hear the case.

(Montgomery County Court of Appeals; No. 24517)

Maureen O'Connor
Chief Justice

# EXHIBIT F





IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

JULIE BRITTINGHAM, et al.                 :     Appellate Case No. 24516

    *Plaintiffs-Appellees*                       :

                                              :     Trial Court Case No.    01-CV-664

v.                                        :

GENERAL MOTORS CORPORATION,               :
et al.                                    :

    *Defendants-Appellants*                     :

                                              :

---

### DECISION AND FINAL JUDGMENT ENTRY
August ___, 2011

---

PER CURIAM:

On June 13, 2011, this Court ordered Appellant, General Motors Corporation ("GM"),

to show cause why the above-captioned appeal should not be dismissed for lack of a final

appealable order.  The record indicates that GM filed a notice of appeal on March 4, 2011

from the February 9, 2011 "Decision, Order, and Entry Sustaining in Part [GM]'s Motion for

Summary Judgment and Sustaining in Part Plaintiffs' Cross Motion for Partial Summary

Judgment."  On June 27, 2011, GM filed a "Memorandum in Response to Show Cause

Order."

The record indicates that Plaintiffs-Appellees, Julie and David Brittingham, filed a

complaint in the Montgomery County Court of Common Pleas alleging negligence, fraud, and loss of consortium. According to Appellees, Julie Brittingham, at the request of GM, underwent a pre-employment physical examination which included a series of lung tests. The plant medical doctor, Virginia Stull, M.D., found that Brittingham's lungs were functioning barely above half capacity. Nevertheless, she was approved for employment. After working at GM for about two years, Brittingham was diagnosed with a rare pulmonary condition. She and her husband brought the claims against GM and Dr. Stull alleging they had a duty to explain the test results, refer Brittingham to a qualified physician for a follow-up, and disapprove her employment.

GM moved for summary judgment on all claims. The trial court granted GM's motion for summary judgment with respect to the negligence and fraud claims, ruling that both were medical claims and subject to a one-year statute of limitations which had expired. The trial court denied GM's motion for summary judgment for the loss of consortium claim. With respect to this claim, the court found that it was separate and distinct from the medical claims and was brought within the applicable four-year statute of limitations under R.C. 2305.99. The order further provided that there is no just reason for a delay of an appeal under Civ.R. 54(B).

GM seeks to challenge the court's decision finding that the loss of consortium claim is an independent cause of action that remains viable. Effectively, GM is appealing that part of the Feb. 9, 2011 order overruling its motion for summary judgment.

"It is well established that an order must be final before it can be reviewed by an appellate court. If an order is not final, then the appellate court has no jurisdiction." *Brookwood Presbyterian Church v. Ohio Dep. of Edn.*, 127 Ohio St.3d 469, 2010-Ohio-

5710, at ¶ 12, citing *Walburn v. Dunlap*, 121 Ohio St.3d 373, 2009-Ohio-1221. When decided if an order is final, a court must take a two-step analysis. *Jacobs v. Jones,* Franklin App. No. 10AP-930, 2011-Ohio-3313, at ¶ 41, citing *Gen. Acc. Ins. Co. v. Ins. Co. of N. Am.* (1989), 44 Ohio St.3d 17, 21. The first step is to determine whether the order is final within the requirements of R.C. 2505.02; the second step is to determine whether Civ.R. 54(B) applies. Id.

Overruling or denying a motion for summary judgment is usually not a final appealable order. *Rhodes v. Paragon Molding, Ltd.,* Montgomery App. No. 23969, 2010-Ohio-6110, at ¶ 32. " 'This is because the denial of the motion does not determine the outcome of the case. The parties both still have the opportunity to prove their case at trial and a judgment in either party's favor is not precluded.' " Id., quoting *International Brotherhood of Electrical Workers, Local Union No. 8 v. Vaughn Industries,* Wood App. No. WD-05-091, 2006-Ohio-475, at ¶ 21.

Here, the trial court denied GM's motion for summary judgment on the loss of consortium claim, leaving said claim unresolved and subject to further proceedings. Because the trial court's denial of GM's motion did not resolve all claims in this matter, and, therefore, determine the outcome of the case, this Court finds that the part of the order addressing Appellees' loss of consortium claim is not final and appealable.

This Court is furthermore not persuaded by GM's argument that the entire decision should be final and appealable because the court included proper Civ.R. 54(B) language. "Pursuant to Civ.R. 54(B), a trial court may separate one or more claims from other pending claims for purposes of appellate review. The claims separated must otherwise have been finally adjudicated. *If the trial court expressly determines that there is no just reason for*

4

*delay, then the claim or claims separated pursuant to Civ.R. 54(B) may be reviewed on appeal, even though other claims remain pending in the trial court.*"  (Emphasis added.) *Ohio Millworks, Inc. v. Frank Paxton Lumber Co.* (June 29, 1994), Montgomery App. No. 14255.

Civ.R. 54(B) certification only pertains to the resolved negligence and fraud claims. Since the loss of consortium claim remains unresolved, it is not appealable at this time.

Accordingly, this Court finds that GM has not satisfied the June 13, 2011 order to show cause.  This matter is hereby DISMISSED.

SO ORDERED.


_____
MIKE FAIN, Judge


_____
MARY E. DONOVAN, Judge


_____
JEFFREY E. FROELICH, Judge

5

Copies to:

Marilena Walters
Gregory Mathews
191 W. Nationwide Boulevard, 3rd Fl.
Columbus, Ohio 43215

James Comodeca
1900 Chemed Center
255 E. Fifth Street
Cincinnati, Ohio 45202

P. Richard Meyer
Robert Williams
P.O. Box 2608
Jackson, WY 83001

Thomas Intili
40 North Main Street
1500 Kettering Tower
Dayton, Ohio 45423

Hon. Dennis J. Adkins
Montgomery County
Common Pleas Court
41 N. Perry Street
Dayton, Ohio 45422

CA3/MM

# EXHIBIT G

**Montgomery County Ohio**
**Clerk Of Courts**
**Gregory A. Brush**
**Public Records Online System Version II**
**2001 CV 00664- JULIE BRITTINGHAM Vs GENERAL MOTORS CORPORAITON**

Party Information

| | |
|---|---|
| PLAINTIFF | JULIE BRITTINGHAM |
| DEFENDANT | GENERAL MOTORS CORPORAITON |
| DEFENDANT | DELPHI AUTOMOTIVE SYSTEMS CORPORATION |
| DEFENDANT | DELPHI AUTOMOTIVE SYSTEMS LLC |
| DEFENDANT | V STULL M D |
| DEFENDANT | JAMES RUFFNER M D |
| DEFENDANT | JOHN CZACHOR M D |
| DEFENDANT | JANE FARLEY M D |
| DEFENDANT | FREDERICK STOCKWELL M D |
| DEFENDANT | MEDICAL SERVICE ASSOCIATES OF XENIA INC |
| DEFENDANT | JOHN DOES 1-X INCLUSIVE |

Judge Information

DENNIS J. ADKINS

Case Information

| | |
|---|---|
| File Date: | 09-FEB-01 |
| Status: | CLOSED |
| Case Descripton: | CIVIL |
| Case Action: | CIVIL ALL OTHER |

Additional Information

Case Comments

2001 CV 00664- JULIE BRITTINGHAM vs GENERAL MOTORS CORPORAITON