**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | : | |
| In re: | : | Chapter 11 |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | Case No. 09-50026 (REG) |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | |

**NOTICE OF FILING OF ANNUAL REPORT AND ACCOUNT OF THE**
**MLC ASBESTOS PI TRUST FOR THE FISCAL YEAR ENDING DECEMBER 31, 2012**

The MLC Asbestos PI Trust (the "Trust") hereby files its Annual Report, Financial

Statements, and Claims Summary for the fiscal year ending December 31, 2012.  The Annual

Report and Financial Statements are attached hereto as Exhibit 1.

Pursuant to the provisions of the MLC Asbestos PI Trust Agreement (the "Trust

Agreement"), the Trust is providing copies of the Annual Report and the Financial Statements to

the Trust Advisory Committee, the Future Claims Representative, and the Office of the United

States Trustee.

Dated:  New York, New York
        April 29, 2013

KLESTADT & WINTERS, LLP
Counsel to the MLC Asbestos PI Trust

By: /s/Patrick J. Orr
        Patrick J. Orr
570 Seventh Avenue, 17th Floor
New York, New York 10018
Tel:  (212) 972-3000
Fax: (212) 972-2245

CAMPBELL & LEVINE, LLC
Counsel to the MLC Asbestos PI Trust
Kathleen Campbell Davis
800 N. King Street, Suite 300
Wilmington, DE 19801
Tel. 302.426.1900
Fax 302.426.9947

Douglas A. Campbell
Stanley E. Levine
1700 Grant Building
Pittsburgh, PA 15219
Tel. 412.261.0310
Fax 412.261.5066

# EXHIBIT 1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| In re: MOTORS LIQUIDATION COMPANY, *et al.*, | ) Chapter 11 Case No. |
| f/k/a General Motors Corp., *et al.*, | ) |
| | ) 09-50026 (REG) |
| | ) |
| | ) (Jointly Administered) |

ANNUAL REPORT AND ACCOUNT OF THE
MLC ASBESTOS PI TRUST
FOR THE FISCAL YEAR ENDING DECEMBER 31, 2012

Kirk Watson, the Asbestos Trust Administrator and Trustee of the MLC Asbestos PI Trust (the "Trust"), created pursuant to the Debtors' Second Amended Joint Chapter 11 Plan (the "Plan") submits this Annual Report, Financial Statements, and Claims Summary for the fiscal year ending December 31, 2012.

I.      INTRODUCTION

The purpose of this Annual Report is to fulfill the reporting requirements of the MLC Asbestos PI Trust Agreement (the "Trust Agreement") and to report to the Court on the actions taken by the Trustee on behalf of the Trust during the period January 1, 2012 to December 31, 2012 (the "Reporting Period").

Section 2.2(c) of the Trust Agreement provides:

The Trustee shall timely account to the Bankruptcy Court as follows:

(i)      The Trustee shall cause to be prepared and filed with the Bankruptcy Court, as soon as available, and in any event within one hundred and twenty (120) days following the end of each fiscal year, an annual report (the "Annual Report") containing financial statements of the PI Trust (including, without limitation, a balance sheet of the PI Trust as of the end of such fiscal year and a statement of operations for such fiscal year) audited by a firm of independent certified public accountants selected by the Trustee and accompanied by an opinion of such firm as to the fairness

of the financial statements' presentation of the cash and investments available for the payment of claims and as to the conformity of the financial statements with generally accepted accounting principles. The Trustee shall provide a copy of such Annual Report to the TAC and the Futures Representative when such reports are filed with the Bankruptcy Court.

(ii)     Simultaneously with the filing of the Annual Report, the Trustee shall cause to be prepared and filed with the Bankruptcy Court a report containing a summary regarding the number and type of claims disposed of during the period covered by the financial statements. The Trustee shall provide a copy of such report to the TAC and the Futures Representatives when such report is filed.

(iii)    All materials required to be filed with the Bankruptcy Court by this Section 2.2(c) shall be available for inspection by the public in accordance with procedures established by the Bankruptcy Court and shall be filed with the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee").

The Trust Agreement further provides for the inclusion of a description of the amounts paid to the Trustees, TAC, and FCR in the accounts filed with the Bankruptcy Court.  See Sections 4.5(c), 5.6, and 6.5.

II.     BACKGROUND

On June 1, 2009,[1] Motors Liquidation Company ("MLC") and its affiliated debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.* in the United States District Court for the Southern District of New York (the "Bankruptcy Court").  On March 29, 2011, the Bankruptcy Court entered an order confirming the Plan.  On March 31, 2011 (the "Effective Date"), the Plan became effective and the Trustee began to operate the Trust.

The purpose of the Trust is to assume the liabilities of MLC and its affiliated debtors for all Asbestos Personal Injury Claims, as defined in the Plan, and to use the Trust's assets and the

---

[1] Remediation and Liability Management Company, Inc. and Environmental Corporate Remediation Company, Inc filed voluntary petitions on October 9, 2009.

2

proceeds and income from such assets to pay both present and future asbestos claimants in accordance with the Trust Agreement and the Trust Distribution Procedures (the "Trust Documents"), in such a way that holders of Asbestos Personal Injury Claims are treated fairly, equitably, and reasonably in light of the finite assets available to satisfy such claims.

On or after the Effective Date, the Trust was funded as provided for in Section 6.3 (d) of the Plan and the Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtors' Estimation Motion approved by this Court on February 14, 2011.

III.    TRUST ADMINISTRATION

A.    Trustees

Kirk Watson served as the sole Trustee of the Trust during the Reporting Period.

1.    Meetings

During the Reporting Period, the Trustee did all of the substantial work required to begin operation of the Trust.  The Trustee held formal meetings, or obtained waivers of the formal meeting requirement, in accordance with the requirements of the Trust Agreement.  In addition to these formal meetings, the Trustee met individually with Trust advisors, held special purpose meetings, and devoted considerable time to Trust matters outside of scheduled meetings. Activities included receiving and deploying trust assets with investment managers, ensuring compliance with the Trust Documents, communicating with claimants, and designing and implementing processes to receive, process, and pay claims pursuant to the Trust Distribution Procedures.

2.    Compensation

The compensation and expenses paid to the Trustee during the Reporting Period are set forth in the Trust's financial statements attached hereto as Exhibit "A."  The inclusion of this

information in the Trust's financial statements satisfies the requirements of Section 4.5 of the Trust Agreement.  All distributions related to Trustee compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines.

B.    Trust Officers

Analysis Research Planning Consulting ("ARPC") served as the Trust's Executive Director during the Reporting Period.

C.    Trust Advisory Committee

Steven Kazan, John Cooney, and Perry Weitz served as Members of the Trust Advisory Committee ("TAC Members") during the Reporting Period. The compensation and expenses paid to the TAC Members during the Reporting Period are set forth in the Trust's financial statements.  The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 5.6 of the Trust Agreement.  All distributions related to TAC Member compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines.

D.    Legal Representative for Future Claimants

Hon. Dean M. Trafelet (Ret.) served as the Legal Representative for Future Claimants (the "FCR") during the reporting period. The compensation paid to the FCR during the Reporting Period is set forth in the Trust's financial statements.  The inclusion of this information in the Trust's financial statements satisfies the requirements of Section 6.5 of the Trust Agreement.  All distributions related to FCR compensation and expense reimbursements were made in accordance with the Trust Agreement guidelines.

E.    Claims Processing

The Trust engaged MFR Claims Processing, Inc. as claims processor for the Trust and began accepting and preliminarily reviewing claims during the Reporting Period.  As the Trust was still working to establish the payment percentage and to obtain certain data from New GM necessary for the evaluation of claims, no claims were paid during the Reporting Period.

F.    Investment Management

Cambridge Associates, LLC of Boston, Massachusetts served as the Trust's investment advisor. Cambridge Associates represents other asbestos settlement trusts and has experience advising such trusts regarding investment management. Cambridge Associates advises the Trustee on the single stock holding/warrants, asset allocation, meeting liquidity needs, and the selection and oversight of individual investment managers for the investable portions of the Trust's portfolio. The Trust Agreement sets forth certain general investment guidelines, primarily addressing credit quality and asset diversification. In accordance with the recommendation of Cambridge Associates, the currently anticipated liquidity needs, and the Trust's status as a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code, the Trust's investable assets are generally allocated among investment categories in the following approximate percentages at year-end 2012: 47% of the Trust's assets are in GM stock or GM warrants (of which 2% are in GM stock and 45% are in GM warrants), 8% to other GM-related securities (MLC GUC Trust), 25% to municipal bonds, 1% to hedge funds, and the remaining 19% of the Trust's assets are held in cash or equivalents (short-term U.S. Treasuries or a U.S. Treasury money market fund).

The Trust continues to retain Income Research & Management as a municipal bond manager, and Force Capital and Taconic Capital as hedge fund managers in 2012.

During the reporting period, the Trustee regularly met with Cambridge Associates to review investment performance and strategy, as well as to receive an update on the current market environment.

G.    General Counsel

Campbell & Levine, LLC of Pittsburgh, Pennsylvania and Wilmington, Delaware served as general counsel to the Trust.

IV.    ANNUAL REPORT AND ACCOUNT

A.    Summary of Claims

As of December 31, 2012, the Trust had begun to accept claims for processing, but had not set a payment percentage.

B.    Financial Information

The Trust's audited financial statements for the Reporting Period are attached hereto as Exhibit "A." The financial statements were audited by BDO USA, LLC.

KLESTADT & WINTERS, LLP              CAMPBELL & LEVINE, LLC
Counsel to the MLC Asbestos PI Trust        Counsel to the MLC Asbestos PI Trust
                                            Kathleen Campbell Davis
By: /s/Patrick J. Orr                       800 N. King Street, Suite 300
        Patrick J. Orr                      Wilmington, DE 19801
        Brendan M. Scott                    Tel. 302.426.1900
570 Seventh Avenue, 17th Floor              Fax 302.426.9947
New York, New York 10018
Tel:  (212) 972-3000                        Douglas A. Campbell
Fax: (212) 972-2245                         Stanley E. Levine
                                            1700 Grant Building
                                            Pittsburgh, PA 15219
                                            Tel. 412.261.0310
                                            Fax 412.261.5066

# MLC ASBESTOS PI TRUST

AUDITED SPECIAL-PURPOSE
FINANCIAL STATEMENTS WITH
SUPPLEMENTARY INFORMATION

DECEMBER 31, 2012 AND 2011

The report accompanying these financial statements was issued by
BDO USA, LLP, a Delaware limited liability partnership and the U.S. member
of BDO International Limited, a UK company limited by guarantee.



MLC ASBESTOS PI TRUST

AUDITED SPECIAL-PURPOSE FINANCIAL STATEMENTS WITH SUPPLEMENTARY INFORMATION

DECEMBER 31, 2012 AND 2011

## CONTENTS

|  | Page |
|---|---|
| **Independent Auditor's Report** | 1 - 2 |
| **Financial Statements** | |
| Special-Purpose Statements of Assets, Liabilities and Net Assets Available for the Payment of Claims | 3 |
| Special-Purpose Statements of Changes in Net Assets Available for the Payment of Claims | 4 |
| Special-Purpose Statements of Cash Flows | 5 |
| Notes to the Special-Purpose Financial Statements | 6 - 11 |
| **Supplementary Information** | |
| Independent Auditor's Report on Supplementary Information | 12 |
| Supplementary Schedule of Operating Expenses | 13 |



Tel: 703-893-0600          8405 Greensboro Drive
Fax: 703-893-2766          Suite 700
www.bdo.com                McLean, VA 22102

## INDEPENDENT AUDITOR'S REPORT

Trustees
MLC Asbestos PI Trust
Wilmington, Delaware

We have audited the accompanying special-purpose financial statements of MLC Asbestos PI Trust (the Trust) (a statutory Trust created under the laws of the State of Delaware), which comprise the special-purpose statement of assets, liabilities, and net assets available for the payment of claims as of December 31, 2012, and the related special-purpose statement of changes in net assets available for the payment of claims and the special-purpose statement of cash flows for the year then ended, and the related notes to the special-purpose financial statements.

### Management's Responsibility for the Financial Statements

Management is responsible for the preparation and fair presentation of the special-purpose financial statements in accordance with the special-purpose basis of accounting described in Note 2; this includes the design, implementation, and maintenance of internal control relevant to the preparation and fair presentation of special-purpose financial statements that are free from material misstatement, whether due to fraud or error.

### Auditor's Responsibility

Our responsibility is to express an opinion on these special-purpose financial statements based on our audit. We conducted our audit in accordance with auditing standards generally accepted in the United States of America. Those standards require that we plan and perform the audit to obtain reasonable assurance about whether the special-purpose financial statements are free from material misstatement.

An audit involves performing procedures to obtain audit evidence about the amounts and disclosures in the special-purpose financial statements. The procedures selected depend on the auditor's judgment, including the assessment of the risks of material misstatement of the special-purpose financial statements, whether due to fraud or error. In making those risk assessments, the auditor considers internal control relevant to the entity's preparation and fair presentation of the special-purpose financial statements in order to design audit procedures that are appropriate in the circumstances, but not for the purpose of expressing an opinion on the effectiveness of the entity's internal control. Accordingly, we express no such opinion. An audit also includes evaluating the appropriateness of accounting policies used and the reasonableness of significant accounting estimates made by management, as well as evaluating the overall presentation of the special-purpose financial statements.

We believe that the audit evidence we have obtained is sufficient and appropriate to provide a basis for our audit opinion.

### Opinion

In our opinion, the special-purpose financial statements referred to above present fairly, in all material respects, the financial position of MLC Asbestos PI Trust as of December 31, 2012, and the results of its operations and its cash flows for the year then ended in accordance with the basis of accounting described in Note 2.

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

**Basis of Accounting**

We draw attention to Note 2 of the special-purpose financial statements, which describes the basis of accounting. As described in Note 2 to the special-purpose financial statements, the special-purpose financial statements were prepared on a special-purpose basis of accounting which is a basis of accounting other than accounting principles generally accepted in the United States of America. Our opinion is not modified with respect to this matter. The special-purpose basis of accounting has been used in order to communicate the amount of net assets presently available to fund current and future claimants.

**Other Matter**

The 2011 special-purpose financial statements of the Trust were audited by other auditors whose report dated April 17, 2012, expressed an unmodified opinion on those statements.

**Restriction of Use**

Our report is intended solely for the information and use of the management of the Trust, the Trustees, the Future Claimants' Representative, the Trust Advisory Committee, the beneficiaries of the Trust, and the United States Bankruptcy Court for the District of Delaware and is not intended to be and should not be used by anyone other than these specified parties. This restriction is not intended to limit the distribution of this report which, upon filing with the United States Bankruptcy Court for the District of Delaware, is a matter of public record.

*BDO USA, LLP*

McLean, Virginia
April 18, 2013

## MLC ASBESTOS PI TRUST

### SPECIAL-PURPOSE STATEMENTS OF ASSETS, LIABILITIES AND NET ASSETS AVAILABLE FOR THE PAYMENT OF CLAIMS

### DECEMBER 31, 2012 AND 2011

|  | 2012 | 2011 |
|---|---|---|
| **Assets** |  |  |
| Cash and cash equivalents | $        30,283,570 | $      31,678,748 |
| Investments, at fair value |  |  |
| Equity securities | 88,912,091 | 46,539,251 |
| Investments in bonds | 39,680,017 | 40,000,000 |
| Investments in hedge funds | 2,262,025 | 2,000,000 |
| Interest receivable | 423,592 | 621 |
| Total assets | 161,561,295 | 120,218,620 |
| **Liabilities** |  |  |
| Accrued expenses and accounts payable | 67,700 | 132,962 |
| Total liabilities | 67,700 | 132,962 |
| **Net assets available for the payment of claims** | $     161,493,595 | $     120,085,658 |

The accompanying notes are an integral part of these special-purpose financial statements.

**MLC ASBESTOS PI TRUST**

### SPECIAL-PURPOSE STATEMENTS OF CHANGES IN
### NET ASSETS AVAILABLE FOR THE PAYMENT OF CLAIMS

### YEAR ENDED DECEMBER 31, 2012 AND THE PERIOD FROM
### MARCH 31, 2011 (INCEPTION) THROUGH DECEMBER 31, 2011

|  | 2012 | 2011 |
|---|---|---|
| **Additions** | | |
| Funding under joint plan of reorganization | $       7,875,000 | $     163,362,976 |
| Net appreciation (depreciation) in fair value of investments | 34,663,732 | 0 |
| Interest and dividend income | 462,729 | 9,394 |
| Total additions | 43,001,461 | 163,372,370 |
| **Deductions** | | |
| Net depreciation in fair value of investments | 0 | 41,569,005 |
| Operating expenses | 1,593,524 | 1,717,707 |
| Total deductions | 1,593,524 | 43,286,712 |
| Increase in net assets available for the payment of claims | 41,407,937 | 120,085,658 |
| **Net assets available for the payment of claims** | | |
| Beginning of the year/period | 120,085,658 | 0 |
| End of the year/period | $     161,493,595 | $     120,085,658 |

The accompanying notes are an integral part of these special-purpose financial statements.

4

## MLC ASBESTOS PI TRUST

### SPECIAL-PURPOSE STATEMENTS OF CASH FLOWS

#### YEAR ENDED DECEMBER 31, 2012 AND THE PERIOD FROM
#### MARCH 31, 2011 (INCEPTION) THROUGH DECEMBER 31, 2011

|  | 2012 | 2011 |
|---|---|---|
| **Cash flows from operating activities:** | | |
| Increase in net assets available for the payment of claims | $ 41,407,937 | $ 120,085,658 |
| Adjustments to reconcile increase in net assets available for the payment of claims to net cash (used in) provided by operating activities: | | |
| Trust funding received in stocks, rights and warrants | (7,875,000) | (161,362,976) |
| Net (appreciation) depreciation in fair value of investments | (34,663,732) | 41,569,005 |
| Amortization of premiums on bonds, net | 135,522 | 0 |
| Changes in operating assets and liabilities | | |
| Interest receivable | (422,971) | (621) |
| Accrued expenses and accounts payable | (65,262) | 132,962 |
| Net cash (used in) provided by operating activities | (1,483,506) | 424,028 |
| **Cash flows from investing activities:** | | |
| Unsettled purchase of investments in bonds | 0 | (40,000,000) |
| Unsettled purchase of investments in hedge funds | 0 | (2,000,000) |
| Sales and maturities of bonds | 1,910,228 | 73,254,720 |
| Purchases of bonds | (1,821,900) | 0 |
| Net cash provided by investing activities | 88,328 | 31,254,720 |
| Net (decrease) increase in cash and cash equivalents | (1,395,178) | 31,678,748 |
| Cash and cash equivalents at the beginning of the year/period | 31,678,748 | 0 |
| Cash and cash equivalents at the end of the year/period | $ 30,283,570 | $ 31,678,748 |

The accompanying notes are an integral part of these special-purpose financial statements.

## MLC ASBESTOS PI TRUST

### NOTES TO THE SPECIAL-PURPOSE FINANCIAL STATEMENTS

### DECEMBER 31, 2012 AND 2011

### NOTE 1 - DESCRIPTION OF THE TRUST

On June 1, 2009, Motors Liquidation Company (MLC) (formerly known as General Motors Corporation) and certain of its subsidiaries (collectively, the Debtors), filed voluntary petitions for reorganization under Chapter 11 of the United States Bankruptcy Code (Bankruptcy Code) in the United States Bankruptcy Court for the Southern District of New York (Bankruptcy Court). On October 9, 2009, two additional Debtors, Remediation and Liability Management Company, Inc. (REALM) and Environmental Corporate Remediation Company, Inc. (ENCORE) filed voluntary petitions for reorganization under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

On December 7, 2010, the Debtors filed a Disclosure Statement (the Disclosure Statement) with the Bankruptcy Court describing the Debtors' Amended Joint Chapter 11 Plan. On March 29, 2011, the Bankruptcy Court confirmed the Second Amended Joint Chapter 11 Plan (the Plan). The Plan has become final and can no longer be appealed.

The essential elements of the Plan include, among other things, the creation of the MLC Asbestos PI Trust (the Trust) on March 31, 2011, pursuant to which the Trust assumes all liabilities for Asbestos Personal Injury Claims in accordance with the Plan. Governance of the Trust is dictated by the terms and provisions of the Trust Agreement, which provides, *inter alia*, for the appointment of a trustee. The processing and payment of Asbestos Personal Injury Claims is, in turn, determined by reference to the detailed provisions of the Trust Distribution Procedures (the TDP).

The trustee is responsible for supervising and administering the Trust and utilizing the Trust's assets and income to pay the holders of all Asbestos Personal Injury Claims in accordance with the Trust Agreement and the TDP in such a way that holders of such claims are treated fairly, equitably, and reasonably in light of the limited assets available to satisfy such claims.

### NOTE 2 - SIGNIFICANT ACCOUNTING POLICIES

#### Basis of presentation

The Trust's financial statements are prepared using special-purpose accounting methods adopted by the Trust, which differ from accounting principles generally accepted in the United States of America (GAAP). The special-purpose accounting methods were adopted in order to communicate to the beneficiaries of the Trust the net assets available for the payment of claims and the related operating expenses of the Trust. Since the accompanying special-purpose financial statements and transactions are not based upon GAAP, the accounting treatment by other parties for these same transactions may differ as to timing and amount. The special-purpose accounting methods include the following:

- Assets are generally recorded when they are received by the Trust and are available for the payment of asbestos claims.

- Future fixed liabilities under contractual obligations and other agreements entered into by the Trust are recorded as deductions from net assets available for the payment of claims in the same period that such contractual obligations or agreements are signed. Under GAAP, liabilities and contractual obligations are recorded over the period that is benefited by the underlying contract or agreement.

- The full amounts of claims will be expensed in the period in which the confirmed claims are settled. A settled claim is a claim that has been allowed by the Trust and accepted by the claimant, with an approved release. Under GAAP, a liability would be recorded for an estimate of the amount to be paid for claims that have been incurred but not yet reported, and for those claims that have been submitted but not yet approved for payment by the Trust. No claims were

settled or paid during the year ended December 31, 2012, and during the period from March 31, 2011 (inception) through December 31, 2011.

- Payments for services to be received over an extended period in the future are expensed as paid because these amounts are no longer available for the payment of claims. Under GAAP, an asset would be recorded and amortized over the period in which the related benefits are received.

- Payments for property and equipment are expensed as incurred. Under GAAP, payments for property and equipment are capitalized and depreciated over the useful lives of the assets. To date, the Trust has incurred no expenses related to purchases of property and equipment.

- Income tax expense is estimated and recorded as incurred in the period in which certain income and expense items affect current federal income taxes payable. Under GAAP, the provision for income taxes is recorded based upon income reported for financial statement purposes, and federal and state income taxes both currently payable and changes in deferred taxes due to differences between financial reporting and tax bases of assets and liabilities. Under GAAP, deferred taxes include a provision for taxes attributable to changes in unrealized gains and losses on investments.

- Under GAAP, for financial statement disclosure purposes all investments would be categorized based on the priority of inputs used to measure fair value. Under GAAP, inputs used in measuring fair value are categorized into three levels. Level 1 includes inputs that are based upon quoted prices for identical instruments traded in active markets. Level 2 includes inputs that are based upon quoted prices for similar instruments in active markets, quoted prices for identical or similar investments in markets that are not active, or models based on valuation techniques for which all significant assumptions are observable in the market or can be corroborated by observable market data for substantially the full term of the investment. Level 3 includes inputs that are generally unobservable and typically reflect management's estimates of assumptions that market participants would use in pricing the asset or liability. The fair values are therefore determined using model-based techniques that include option pricing models, discounted cash flow models, and similar techniques. The accompanying special-purpose financial statements do not categorize investments into these levels.

- Under GAAP, disclosure is made about contractual maturities of investments in debt securities as of the date of the latest balance sheet presented. Such disclosures are not included in these special-purpose financial statements.

### Use of estimates

The preparation of financial statements in conformity with the special-purpose accounting methods described above requires the Trust to make estimates and assumptions that affect the reported amounts of certain assets and liabilities and the disclosures of contingent assets and liabilities at the date of the special-purpose financial statements, as well as the reported amounts of additions and deductions to the net assets available for the payment of claims during the reporting period. Actual results could differ from those estimates and such differences could have a material effect on the net assets available for the payment of claims.

### Cash equivalents

The Trust considers all highly liquid instruments with original maturities of three months or less to be cash equivalents.

### Investments

Investment securities are stated at fair market value. Fair market value for investment securities, other than hedge funds, are based on quoted market prices for identical or similar instruments traded in active markets as of the date of the special-purpose financial statements. The fair market value for hedge funds is based on the Trust's proportionate share of each funds' net assets, as reported as of the date of the special-purpose financial statements. The net appreciation or depreciation in fair market value of investments in the accompanying special-purpose statement of changes in net assets available for the payment of claims consists of realized gains or losses on sales of investments and the changes in

7

unrealized gains or losses on investments held. Investment income is recognized when earned. All interest and dividend income, net of investment expenses, are included in interest and dividend income in the accompanying special-purpose statement of changes in net assets available for the payment of claims. Gains and losses on sales of investment securities are determined using the average cost method.

### Accrued expenses and accounts payable

Accrued expenses and accounts payable consist of accruals and outstanding invoices associated with managing and operating the Trust.

### Operating expenses

Operating expenses of the Trust are paid from the net assets available for the payment of claims when invoices are received.

### Income taxes

The Trust is classified as a Qualified Settlement Fund pursuant to the Internal Revenue Code and Regulations (the Code) thereunder (the Code). The Trust is subject to federal income taxes based on modified gross income, as defined by the Code. In the opinion of the Trustee and advisors, the Trust is not subject to state income taxes and, therefore, the special-purpose financial statements do not include any provision or liability for state income taxes.

Income tax expense is estimated and includes amounts payable or receivable under current federal income taxes.

The Trust records income tax expense (or benefit) associated with amounts payable (or receivable) under current federal income taxes, and does not record a provision for (or benefit from) deferred taxes. Accordingly, there is no provision for deferred taxes associated with changes in cumulative unrealized gains and losses on investments (see Note 4). The income taxes associated with gains on investments will be recorded in the Trust's financial statements when the net gains are realized (i.e. the securities are sold) and the taxes become currently payable.

### Risks and uncertainties

The Trust's assets that are exposed to credit risk consist primarily of cash and cash equivalents and investments in equity securities, municipal bonds, and hedge funds. Cash and cash equivalents are maintained at financial institutions and, at times, balances may exceed federally insured limits. The Trust has never experienced any losses related to these balances. All non-interest bearing cash balances were fully insured at December 31, 2012 due to a temporary federal program in effect from December 31, 2010 through December 31, 2012. Under the program, there is no limit to the amount of insurance for eligible accounts. Beginning in 2013, insurance coverage will revert to $250,000 per depositor at each financial institution, and the Trust's non-interest bearing cash balances may again exceed federally insured limits. Interest-bearing amounts on deposit in excess of federally insured limits at December 31, 2012 approximates $29.4 million.

The Trust invests in a professionally managed portfolio that contains equity securities, municipal bonds, and hedge funds. Such investment securities are exposed to various risks such as interest rate, market, and credit risks. Due to the level of risk associated with certain investments securities, it is at least reasonably possible that changes in the values of investment securities will occur in the near term and that such changes could materially affect the Trust's account balance and the amounts reported in the special-purpose statements of assets, liabilities and net assets available for the payment of claims.

8

**Subsequent events**

The Trust has evaluated its December 31, 2012 special-purpose financial statements for subsequent events through April 18, 2013, the date the special-purpose financial statements were available to be issued. The Trust is not aware of any subsequent events that would require recognition or disclosure in the special-purpose financial statements.

**Reclassifications**

Certain amounts presented in the 2011 special-purpose financial statements have been reclassified to conform to the 2012 presentation. These reclassifications have no effect on the previously recorded increase in net assets available for the payment of claims.

## NOTE 3 - FUNDING UNDER JOINT PLAN OF REORGANIZATION

In accordance with the Plan and Stipulation and Order Fixing Asbestos Trust Claim and Resolving Debtor's Estimation Motion (the Stipulation) entered by the Bankruptcy Court on February 14, 2011, the Trust was funded with the Asbestos Trust Assets that are comprised of cash in the amount of $2,000,000 and an allowed general unsecured claim of $625,000,000. The Plan provides that general unsecured creditors, including the Trust, shall receive a pro rata share of New GM Securities (a combination of General Motors Company common stock, stock rights, and stock warrants) and General Unsecured Trust (the GUC Trust) Units in accordance with the terms of the Motors Liquidation Company GUC Trust Agreement (the GUC Trust Agreement). The initial distribution on the Trust's general unsecured claim was made directly to the Trust rather than through the GUC Trust pursuant to the terms of the Stipulation. All subsequent distributions were made in accordance with the Plan. During the year ending December 31, 2012 the Trust received equity securities with a fair value of $7,875,000 as of the date the securities were transferred to the Trust. During the period from March 31, 2011 (inception) through December 31, 2011, the Trust received cash proceeds of $2,000,000 and equity securities with a fair value of $161,362,976 as of the date the securities were transferred to the Trust. Future distributions from the GUC Trust will be recorded by the Trust when received.

## NOTE 4 - INVESTMENTS

Investment securities consist of the following at December 31:

|  | | 2012 | | |
|---|---|---|---|---|
|  | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Market Value |
| Equity securities | $ 96,735,019 | $ 0 | $ (7,822,928) | $ 88,912,091 |
| Municipal bonds | 39,780,525 | 0 | (100,508) | 39,680,017 |
| Hedge funds | 2,000,000 | 262,025 | 0 | 2,262,025 |
|  | $ 138,515,544 | $ 262,025 | $ (7,923,436) | $ 130,854,133 |
|  | | 2011 | | |
|  | Amortized Cost | Gross Unrealized Gains | Gross Unrealized Losses | Fair Market Value |
| Equity securities | $ 88,860,019 | $ 0 | $ (42,320,768) | $ 46,539,251 |
| Municipal bond deposits in transit | 40,000,000 | 0 | 0 | 40,000,000 |
| Hedge funds | 2,000,000 | 0 | 0 | 2,000,000 |
|  | $ 130,860,019 | $ 0 | $ (42,320,768) | $ 88,539,251 |

The Trust recorded realized gains from sales of equity securities of $4,375 and $751,763 during the year ending December 31, 2012 and the period from March 31, 2011 (inception) through December 31, 2011, respectively.

The table below sets forth a summary of changes in the fair value of the Trust's investment in hedge funds for the year ended December 31:

|  | Investment in Hedge Funds | |
| --- | --- | --- |
|  | 2012 | 2011 |
| Balance, beginning of year | $ 2,000,000 | $ 0 |
| Purchases | 0 | 2,000,000* |
| Redemption | 0 | 0 |
| Income allocations, net of fees | 262,025 | 0 |
| Balance, end of year | $ 2,262,025 | $ 2,000,000 |

* Purchases of investments in hedge funds considered to be in-transit.

The major categories of the Trust's hedge fund investments, including general information related to each category, are as follows:

|  | Fair Value | | Redemption Frequency (If Currently Eligible) | First/Next Redemption | Notice Period (days) | Gate |
| --- | --- | --- | --- | --- | --- | --- |
|  | 2012 | 2011 |  |  |  |  |
| (a) Long/short fund ; U.S. Equity | $ 1,168,278 | $ 1,000,000 | Not eligible | December 31, 2014 | 45 | 0% |
| (b) Multi-strategy, event driven; global sector | 1,093,747 | 1,000,000 | Annually | December 31, 2013 | 60 | 10% |
|  | $ 2,262,025 | $ 2,000,000 |  |  |  |  |

(a)     This category includes investments in hedge funds that hold securities traded primarily in the U.S. equity market.  The investment strategy is managed by engaging in short-sale equity transactions based on individual company fundamentals and to a far lesser extent by shorting board market and sector indices.  The fair value of the hedge fund investments in this category was estimated based on  the Trust's proportionate share of each funds' net assets, as reported on the respective funds' financial statements for the year ended December 31, 2012 and 2011.

(b)     This category includes hedge funds that focus on event investment which is defined as investing in securities and instruments of companies undergoing extraordinary events that affect the value of one or more securities of a company.  Mergers and acquisitions, corporate restructurings and spin-offs, credit investments, and capital structure arbitrage are the primary focuses of the hedge funds in this category.  The fair value of the hedge fund investments in this category was estimated based on  the Trust's proportionate share of each funds' net assets, as reported on the respective funds' financial statements for the year ended December 31, 2012 and 2011.

## NOTE 5 - INCOME TAXES

During the year ended December 31, 2012 and the period from March 31, 2011 (inception) through December 31, 2011, the Trust paid no income taxes and recorded no income tax expense.

The Trust has a net operating loss carryforward of approximately $3,100,000 that is available to offset future taxable income from operations and/or realized gains on investments.

## NOTE 6 - CONTINGENT LIABILITIES

The Plan Documents (as defined in the Confirmed Plan) subject the Trust to certain reimbursement and indemnification obligations that may result in future claims against the Trust.

The probability of such claims cannot be reasonably determined. Accordingly, no associated liability has been recorded in the accompanying special-purpose financial statements. Such claims, if any, are not expected to be material. The Trust has obtained insurance for purposes of supporting its obligation to indemnify the Trustee.

## NOTE 7 - TRUST LIABILITY INSURANCE

The Trust purchased liability insurance requiring a premium of $86,100 and $119,147 during the year ended December 31, 2012 and the period from March 31, 2011 (inception) through December 31, 2011 respectively. The current policy term is from March 3, 2012 through March 3, 2013. The Trust's accounting policy is to expense in the current period any amounts that will not be available to pay future Asbestos Personal Injury Trust Claims or expenses of the Trust. Accordingly, $86,100 and $119,147 were recorded as deductions in net assets available for the payment of claims for the year ended December 31, 2012 and during the period from March 31, 2011 (inception) through December 31, 2011, respectively.

## NOTE 8 - TRUSTEE, TRUST ADVISORY COMMITTEE, AND TRUST ADVISORY COMMITTEE COUNSEL

Fees and expenses of the Trustee, Trust advisory committee, and future claimants' representative for the year ended December 31, 2012 and the period from March 31, 2011 (inception) through December 31, 2011 were as follows:

|  | 2012 | | | |
|  | Fees | Retainer | Expenses | Total |
|---|---|---|---|---|
| Trustee | $ 79,088 | $ 81,250 | $ 9,326 | $ 169,664 |
| Trust Advisory Committee Counsel | 59,575 | 0 | 2,350 | 61,925 |
| Trust Advisory Committee | 375 | 0 | 0 | 375 |
| Future Claimants' Representative | 44,275 | 0 | 8,898 | 53,173 |
| Future Claimants' Representative Counsel | 25,438 | 0 | 0 | 25,438 |
|  | $ 208,751 | $ 81,250 | $ 20,574 | $ 310,575 |

|  | March 31, 2011 (inception) through December 31, 2011 | | | |
|  | Fees | Retainer | Expenses | Total |
|---|---|---|---|---|
| Trustee | $ 137,250 | $ 56,250 | $ 11,628 | $ 205,128 |
| Trust Advisory Committee Counsel | 123,318 | 0 | 890 | 124,208 |
| Trust Advisory Committee | 1,234 | 0 | 251 | 1,485 |
| Future Claimants' Representative | 49,525 | 0 | 3,838 | 53,363 |
| Future Claimants' Representative Counsel | 60,983 | 0 | 14 | 60,997 |
|  | $ 372,310 | $ 56,250 | $ 16,621 | $ 445,181 |

The above amounts are included in operating expenses in the special-purpose statements of changes in net assets available for the payment of claims for the years ended December 31, 2012 and the period from March 31, 2011 (inception) through December 31, 2011.

SUPPLEMENTARY INFORMATION



Tel:  703-893-0600          8405 Greensboro Drive
Fax:  703-893-2766          Suite 700
**www.bdo.com**            McLean, VA 22102

## INDEPENDENT AUDITOR'S REPORT ON SUPPLEMENTARY INFORMATION

Trustees
MLC Asbestos PI Trust
Wilmington, Delaware

Our audit of the special-purpose financial statements as of and for the year ended December 31, 2012 included in the preceding section of this report was conducted for the purpose of forming an opinion on those statements as a whole.  The 2012 supplementary information presented in the following section of this report is presented for purposes of additional analysis and is not a required part of those financial statements.  Such information is the responsibility of management and was derived from and relates directly to the underlying accounting and other records used to prepare the 2012 special-purpose financial statements.  The information has been subjected to the auditing procedures applied in the audit of the special-purpose financial statements and certain additional procedures, including comparing and reconciling such information directly to the underlying accounting and other records used to prepare the special-purpose financial statements or to the special-purpose financial statements themselves, and other additional procedures in accordance with auditing standards generally accepted in the United States of America.  In our opinion, the information is fairly stated in all material respects in relation to the 2012 special-purpose financial statements as a whole.

The 2011 supplementary information presented in the following section of this report was included in the 2011 special-purpose financial statements of the Trust, which were audited by other auditors whose report on supplementary information included in those special-purpose financial statements expressed an unmodified opinion on the supplementary information in relation to the 2011 financial statements as a whole.

*BDO USA, LLP*

April 18, 2013

BDO USA, LLP, a Delaware limited liability partnership, is the U.S. member of BDO International Limited, a UK company limited by guarantee, and forms part of the international BDO network of independent member firms.

BDO is the brand name for the BDO network and for each of the BDO Member Firms.

## MLC ASBESTOS PI TRUST

### SUPPLEMENTARY SCHEDULE OF OPERATING EXPENSES

**YEARS ENDED DECEMBER 31, 2012 AND THE PERIOD FROM**
**MARCH 31, 2011 (INCEPTION) THROUGH DECEMBER 31, 2011**

|  | 2012 | 2011 |
|---|---|---|
| Investment manager fees | $ 553,718 | $ 523,067 |
| Consulting expenses | 241,780 | 145,857 |
| Administration and reporting | 198,661 | 96,957 |
| Trustee fees and expenses | 169,664 | 205,128 |
| General legal fees | 107,593 | 214,661 |
| Trust liability insurance | 86,100 | 119,147 |
| Claims processing and analysis | 65,819 | 25,253 |
| TAC counsel fees | 61,925 | 124,208 |
| Future claimants' representative | 53,173 | 53,363 |
| Future claimants' representative counsel | 25,438 | 60,997 |
| Trust meetings and expenses | 13,655 | 18,695 |
| Other legal fees | 8,670 | 118,806 |
| Office expenses | 6,953 | 10,083 |
| TAC fees and expenses | 375 | 1,485 |
| Total operating expenses | $ 1,593,524 | $ 1,717,707 |

See independent auditor's report on supplementary information.