**HEARING DATE AND TIME: August 6, 2013 at 9:45 a.m. (Eastern Time)**
**RESPONSE DEADLINE: July 30, 2013 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
  Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------------------x
                                          :
In re                                     :    Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, et al.,       :    09-50026 (REG)
       f/k/a General Motors Corp., et al. :
                                          :
                      Debtors.            :    (Jointly Administered)
                                          :
---------------------------------------------------------------x
```

## NOTICE OF HEARING ON MOTORS LIQUIDATION COMPANY GUC TRUST'S MOTION TO ESTIMATE PROOF OF CLAIM NO. 27105 FILED BY ROGER L. THACKER, ROGER L. SANDERS, AND THOMAS J. HANSON AND ESTABLISH PROCEDURES THERETO

**PLEASE TAKE NOTICE** that on May 14, 2013, the Motors Liquidation

Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively,

the "**Debtors**") in connection with the *Debtors' Second Amended Joint Chapter 11 Plan*, dated

March 18, 2011, filed the annexed motion (the "**Motion**") seeking entry of an order authorizing

the estimation of Proof of Claim No. 27105 (the "**Thacker Claim**") filed by Roger L. Thacker,

Roger L. Sanders, and Thomas J. Hanson and establishing procedures thereto, and that a hearing

(the "**Hearing**") to consider the Motion will be held before the Honorable Robert E. Gerber,

United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, New York, New York 10004, on **August 6, 2013 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any responses to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the GUC Trust, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers

Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii)

the Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S.

Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007

(Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered,

attorneys for the official committee of unsecured creditors holding asbestos-related claims, 375

Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and

Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:

Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman &

Plifka, A Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal

representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200,

Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.), (xii)

Gibson, Dunn & Crutcher LLP, attorneys for Wilmington Trust Company as GUC Trust

Administrator and for Wilmington Trust Company as Avoidance Action Trust Administrator,

200 Park Avenue, 47th Floor, New York, New York 10166 (Attn:  Keith Martorana, Esq.); (xiii)

FTI Consulting, as the GUC Trust Monitor and as the Avoidance Action Trust Monitor, One

Atlantic Center, 1201 West Peachtree Street, Suite 500, Atlanta, Georgia 30309 (Attn:  Anna

Phillips); (xiv) Crowell & Moring LLP, attorneys for the Revitalizing Auto Communities

Environmental Response Trust, 590 Madison Avenue, 19th Floor, New York, New York 10022-

2524 (Attn:  Michael V. Blumenthal, Esq.); (xv) Kirk P. Watson, Esq., as the Asbestos Trust

Administrator, 2301 Woodlawn Boulevard, Austin, Texas 78703; (xvi) United States

Department of Justice, Civil Division, Post Office Box 261, Ben Franklin Station, Washington

DC 20044 (Attn:  Paul Wogaman); and (xvii) Helmer, Martins, Rice & Popham Co., L.P.A,

US_ACTIVE:\44244862\7\72240.0639

attorneys for Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson, 600 Vine St., Suite

2704, Cincinnati, Ohio 45202 (Attn: James B. Helmer, Jr., Esq.), so as to be received no later

than **July 30, 2013, at 4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

           **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Motion, the GUC Trust may, on or after the Response Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Motion, which order may be entered with no further notice or opportunity to be heard

offered to any party.

Dated: May 14, 2013
      New York, New York

                          /s/ Joseph H. Smolinsky
                          Harvey R. Miller
                          Stephen Karotkin
                          Joseph H. Smolinsky

                          WEIL, GOTSHAL & MANGES LLP
                          767 Fifth Avenue
                          New York, New York 10153
                          Telephone: (212) 310-8000
                          Facsimile: (212) 310-8007

                          Attorneys for Motors Liquidation
                            Company GUC Trust

US_ACTIVE:\44244862\7\72240.0639

HEARING DATE AND TIME: August 6, 2013 at 9:45 a.m. (Eastern Time)
RESPONSE DEADLINE: July 30, 2013 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
    Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                            :
**In re**                                   :        **Chapter 11 Case No.**
                                            :
**MOTORS LIQUIDATION COMPANY,** *et al.,*   :        **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*  :
                                            :
                **Debtors.**                :        **(Jointly Administered)**
                                            :
-------------------------------------------------------------x

## MOTORS LIQUIDATION COMPANY GUC TRUST'S MOTION TO ESTIMATE PROOF OF CLAIM NO. 27105 FILED BY ROGER L. THACKER, ROGER L. SANDERS, AND THOMAS J. HANSON AND ESTABLISH PROCEDURES THERETO

# TABLE OF CONTENTS

**Page**

Relief Requested ...................................................................................................................1

Jurisdiction ...........................................................................................................................2

Background ...........................................................................................................................2

    A.    The Prepetition Action Underlying the Thacker Claim .............................................2

    B.    The Retroactive Amendment to the False Claims Act ...............................................6

    C.    The Debtors' Chapter 11 Cases..................................................................................7

The Relief Requested Should Be Approved by the Court ...................................................8

    A.    The Court is Authorized to Estimate the Thacker Claim Pursuant to the Plan
          and Section 502(c) of the Bankruptcy Code ...............................................................8

    B.    Estimation Contemplates Flexible Procedures ........................................................11

Reservation of Rights.........................................................................................................13

Notice .................................................................................................................................13

Conclusion .........................................................................................................................14

US_ACTIVE:\44244862\7\72240.0639

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Addison v. Lanpaton (In re Brints Cotton Marketing, Inc.)*,
    737 F.2d 1338 (5th Cir. 1984) ................................................................11

*In re Adelphia Bus. Solutions, Inc.*,
    341 B.R. 415 (Bankr. S.D.N.Y. 2003) .....................................................9

*Allison Engine Co. v. United States ex. rel. Sanders*,
    553 U.S. 662 (2008) ..................................................................................5

*In re Baldwin-United Corp.*,
    55 B.R. 885 (Bankr. S.D. Ohio 1985) ....................................................12

*Bittner v. Borne Chem. Co.*,
    691 F.2d 134 (3d Cir. 1982) ...................................................................12

*In re Chemtura Corp.*,
    448 B.R. 635 (Bankr. S.D.N.Y. 2011) ...................................................11

*In re Cont'l Airlines, Inc.*,
    981 F.2d 1450 (5th Cir. 1993) .................................................................9

*In re Enron Corp.*,
    No. 01-16304, 2006 WL 538552 (Bankr. S.D.N.Y. Jan. 6, 2006) .........11

*Hopper v. Solvay Pharm., Inc.*,
    588 F.3d 1318 (11th Cir. 2009) ...............................................................7

*In re Lane*,
    68 B.R. 609 (Bankr. D. Hawaii 1986) .............................................10, 12

*In re Lionel LLC*,
    No. 04-17324, 2007 WL 2261539 (Bankr. S.D.N.Y. Aug. 3, 2007).......9

*United States ex. rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) .................................................................7

*United States ex. rel Kirk v. Schindler Elevator Corp.*,
    601 F.3d 94 (2d Cir. 2010).......................................................................7

*United States ex. rel. Sanders v. Allison Engine Co.*,
    Case No. C-1-95-970, 2005 WL 713569 (S.D. Ohio Mar. 11, 2005).......5

US_ACTIVE:\44244862\7\72240.0639

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*United States ex. rel Yannacopoulos v. Gen. Dynamics*,
  652 F.3d 818 (7th Cir. 2011) ................................................................7

*In re Windsor Plumbing Supply Co*.,
  170 B.R. 503 (Bankr. E.D.N.Y. 1994).................................................12

**Statutes & Regulations**

11 U.S.C. § 362.........................................................................................3

11 U.S.C. § 502(c) .............................................................................1, 8, 9

28 U.S.C. § 157.........................................................................................2

28 U.S.C. § 157(b).....................................................................................2

28 U.S.C. § 1334........................................................................................2

31 U.S.C. § 3729(a)(1)...........................................................................3, 5

31 U.S.C. § 3729(a)(1)(B) .........................................................................6

31 U.S.C. § 3729(a)(2).....................................................................3, 5, 6, 7

31 U.S.C. § 3729(a)(3)...........................................................................3, 5

31 U.S.C. § 3729 *et seq.*.............................................................................2

Fraud Enforcement and Recovery Act of 2009,
  Pub. L. No. 11-21, 123 Stat. 1617 (May 20, 2009) .............................6, 7

Treas. Reg. § 1.468B-2 ............................................................................11

Treas. Reg. § 1.468B-9 ............................................................................11

US_ACTIVE:\44244862\7\72240.0639

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the

above captioned debtors (collectively, the "**Debtors**") in connection with the *Debtors' Second*

*Amended Joint Chapter 11 Plan*, dated March 18, 2011 (as may be amended, supplemented or

modified from time to time, the "**Plan**"), respectfully represents:

### Relief Requested

1.        Concurrent with the filing of this Motion, the GUC Trust is designating Proof

of Claim No. 27105 (the "**Thacker Claim**"), filed by Roger L. Thacker, Roger L. Sanders and

Thomas J. Hanson (collectively, "**Claimants**"), for mediation (the "**Mediation**") pursuant to the

alternative dispute resolution procedures previously authorized by this Court.[1]  In the event that the

Thacker Claim cannot be resolved pursuant to the Mediation, the GUC Trust requests, pursuant to

the Plan and section 502(c) of title 11 of the United States Code (the "**Bankruptcy Code**"), the

entry of an order authorizing the estimation of the Thacker Claim and establishing certain

procedures with respect to such estimation.

2.        While over 70,000 claims have been filed against the Debtors in these chapter

11 cases, there are now just a few hundred unresolved claims remaining, most of which are related

to a single litigation currently pending before this Court.  One of the largest remaining claims is the

Thacker Claim, which was asserted in the amount of $50 million.  While the Debtors' chapter 11

Plan was confirmed over two years ago, the GUC Trust is still maintaining a reserve of distributable

assets on account of the Thacker Claim that is sufficient to satisfy an allowed claim in the amount

of $50 million.  Such assets may not be distributed to holders of allowed claims until after the

---

[1] See *Second Amended Order Granting Motion to Supplement Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation* (ECF No. 11777).

Thacker Claim is resolved.  The GUC Trust is thus holding a significant amount of value to reserve

against a claim which the GUC Trust submits is, at minimum, significantly overstated.

3.    Ideally, the GUC Trust prefers to consensually resolve the Thacker Claim.

For that reason, the GUC Trust will first attempt to resolve the Thacker Claim pursuant to the

Mediation.  However, in the event that the Mediation is unsuccessful, an estimation of the Thacker

Claim is necessary because an appropriate liquidation of the claim in the venue in which the

Prepetition Action (as hereinafter defined) is pending may not occur for an extended period of time.

As explained herein, litigation as to the Thacker Claim has been on-going for the past 18 years and

may continue for several additional years.  If the Mediation is unsuccessful and the Thacker Claim

is not estimated, the GUC Trust will continue to hold significant reserves for an indefinite amount

of time, which is clearly to the detriment of holders of allowed claims.  As the GUC Trust resolves

its final claims, the Thacker Claim could soon stand as an obstacle to the winding-up of these

estates.

## Jurisdiction

4.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

**A.    The Prepetition Action Underlying the Thacker Claim**

5.    On November 3, 1995, Claimants commenced a *qui tam* action under 31

U.S.C. §3729 *et seq.* (the "**False Claims Act**") styled *United States ex. rel. Sanders, et al. v. Allison

Engine Company, et al.*, Case No. C-1-95-970 (the "**Prepetition Action**"), in the United States

District Court for the Southern District of Ohio, Western Division (the "**Ohio District Court**").

2

The defendant parties to the Prepetition Action are General Motors Corporation,[2] Allison Engine Company, Inc. ("**Allison Engine**"), General Tool Company ("**GTC**"), and Southern Ohio Fabricators Corporation ("**SOFCO**") (collectively, "**Defendants**").

6.      The False Claims Act imposes treble damages and civil penalties on defendants that are liable under the statute.  At the time the Prepetition Action was commenced,[3] the False Claims Act imposed liability on any person who (i) knowingly "presents, or causes to be presented, to an officer or employee of the [Government or Armed Forces] a false of fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1); (ii) knowingly uses a "false . . . statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2); or (iii) "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," 31 U.S.C. § 3729(a)(3).  A False Claims Act suit may be initiated either by the federal government or a private individual, called a "relator," who brings a *qui tam* action in the government's name and who receives a portion of any recovery.

7.      Claimants assert that Defendants in the Prepetition Action are liable under the False Claims Act in connection with certain allegedly false or fraudulent claims for payment made by Defendants on account of the production and testing of certain generator sets ("**Gen-Sets**") that are used to provide electrical power on certain of the United States Navy's ships from the Arleigh-Burke-class of guided missile destroyers.

8.      Beginning on April 2, 1985, the Navy awarded contracts for the construction of the Arleigh-Burke-class of destroyers to two shipyards, Bath Iron Works and Ingalls

---

[2] General Motors Corporation subsequently changed its name to Motors Liquidation Company upon the filing of these chapter 11 cases.  While the Prepetition Action is currently stayed as to General Motors Corporation pursuant to section 362 of the Bankruptcy Code (the "**Automatic Stay**"), litigation against the other Defendants in the Prepetition Action has been on-going.

[3] As hereinafter explained, the False Claims Act was subsequently amended while the Prepetition Action was pending.

US_ACTIVE:\44244862\7\72240.0639

Shipbuilding, Inc. (collectively, the "**Shipyards**").  The Shipyards then subcontracted a division of

General Motors Corporation, called the "Allison Gas Turbine Division," to build the Gen-Sets for

the destroyers.  General Motors Corporation subcontracted GTC to assemble certain of the Gen-

Sets, and GTC in turn subcontracted SOFCO to weld the bases and enclosures of the Gen-Sets.

Following the completion and delivery of 52 Gen-Sets, in December 1993, General Motors

Corporation sold substantially all of the assets of the Allison Gas Turbine Division to Allison

Engine, which is a separate and distinct legal entity that is unaffiliated with General Motors

Corporation.[4]  After the transfer, the Shipyards continued to subcontract Allison Engine to assemble

the Gen-Sets and General Motors Corporation had no further involvement with the Gen-Sets.

9.      Claimants allege that the invoices submitted by the respective Defendants

with respect to the Gen-Sets were either false or fraudulent in that the invoices sought payment for

work that had not been done in accordance with contract specifications.  Specifically, Claimants

allege, *inter alia*, that certain gearboxes installed on the first 52 Gen-Sets were defective; that one of

the Gen-Sets delivered to the Navy was a prototype instead of an actual production model; that

GTC did not conduct certain quality inspections for specific Gen-Sets; and that SOFCO did not use

properly certified welders or inspectors to perform work on the Gen-Set base and enclosure

assemblies.

10.     On December 31, 1998, the United States declined its right under the False

Claims Act to intervene in the Prepetition Action.[5]

11.     Beginning on February 1, 2005, the Prepetition Action was tried before a jury

in the Ohio District Court.  Over the course of five weeks, the Claimants presented the entirety of

---

[4] Allison Engine is now known as Rolls-Royce Corporation.

[5] The United States later intervened for the purposes of participating in appeals relating to the Prepetition Action.

US_ACTIVE:\44244862\7\72240.0639

their case, calling nearly two dozen witnesses. At the close of the Claimants' case, the Ohio District

Court granted a dispositive motion by Defendants for judgment as a matter of law as to all of the

False Claim Act counts, which obviated the need for the presentation of Defendants' case. *United*

*States ex. rel. Sanders v. Allison Engine Co.*, Case No. C-1-95-970, 2005 WL 713569, at *11 (S.D.

Ohio Mar. 11, 2005). In so ruling, the Ohio District Court held that Sections 3729(a)(1) and (a)(2)

of the False Claims Act required that Claimants establish that Defendants presented a claim for

payment directly to the United States. The Claimants had introduced evidence of claims for

payment submitted by GTC to Allison and by Allison to the Shipyards, but there was no evidence

of any claims presented to the United States. The Ohio District Court further held that since

Claimants could not establish the presentment of a false claim, Defendants could not be liable under

Section 3729(a)(3).

      12.     Claimants appealed the Ohio District Court's ruling as to section 3729(a)(2)

and (a)(3) to the United States Court of Appeals for the Sixth Circuit. The Ohio District Court's

ruling as to section 3729(a)(1) was not appealed. In June 2006, the Sixth Circuit reversed the Ohio

District Court's ruling. The Sixth Circuit held that presentment to the United States of a claim for

payment is not required under section 3729(a)(2) and (a)(3), so long as it can be shown that the

claim was paid with funds ultimately provided by the United States.

      13.     Defendants appealed the Sixth Circuit's ruling to the Supreme Court of the

United States. On June 9, 2008, in a 9-0 decision, the Supreme Court ruled that the Sixth Circuit's

interpretation of the False Claims Act was incorrect. *Allison Engine Co. v. United States ex. rel.*

*Sanders*, 553 U.S. 662, 662-63 (2008). The Supreme Court held that sections 3729(a)(2) requires

proof that a defendant intend a claim to be paid by the United States, rather than another party using

5

funds provided by the government.  *Id.* at 663.  The Supreme Court vacated the Sixth Circuit's

ruling and remanded the case for further proceedings consistent with its opinion.  *Id.* at 673.

### B.    The Retroactive Amendment to the False Claims Act

14.    On May 20, 2009, in response to the Supreme Court's decision, Congress

enacted the Fraud Enforcement and Recovery Act of 2009 ("**FERA**")[6] to amend the False Claims

Act.  Prior to FERA, section 3729(a)(2) of the False Claims Act imposed liability on a party that

"knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or

fraudulent claim paid or approved by the Government."   As a result of FERA, that section was

replaced by section 3729(a)(1)(B), which now imposes liability on a party that "knowingly makes,

uses, or causes to be made or used, a false record or statement material to a false or fraudulent

claim."  Thus, among other things, FERA eliminated the legal element under former section

3729(a)(2) that a defendant intend that the United States itself pay or approve a false claim.

15.    FERA became effective while the Prepetition Action was still pending.  In

section 4(f)(1) of FERA, Congress provided that the new section 3729(a)(1)(B) would apply "to all

claims under the False Claims Act . . . that are pending on or after [June 7, 2008]," *i.e.* two days

before the Supreme Court rendered its decision in this matter.  Defendants moved in the Ohio

District Court to preclude retroactive application of section 3729(a)(1)(B).  The Ohio District Court

granted Defendants' motion based on the reasoning that (i) there were no "claims" pending on June

7, 2008 since all claims had been submitted no later than 1996;[7] and (ii) the retroactive application

of section 4(f)(1) of FERA violates the Constitution's prohibition against imposing punishment for

---

[6] Pub. L. No. 11-21, 123 Stat. 1617 (2009).

[7] In contrast to the use of the word "claims" in section 4(f)(1) of FERA, Congress specifically provided in section 4(f)(2) of FERA with respect to amendments that are irrelevant to the present discussion that such amendments shall apply to "cases pending on the date of enactment."  The Ohio District Court noted that while the instant "case" was still pending on June 7, 2008, section 4(f)(1) of FERA expressly applies to "claims" rather than "cases."

US_ACTIVE:\44244862\7\72240.0639

past acts and constitutes an Ex Post Facto law.  Accordingly, the Ohio District Court again

dismissed the case, but certified its decision for interlocutory review.

16.     On November 2, 2012, the Sixth Circuit again reversed the decision of the

Ohio District Court.  The Sixth Circuit interpreted section 4(f)(1) of FERA to apply to cases

pending on June 7, 2008.  The Sixth Circuit explained that while Congress used the term "claims"

in section 4(f)(1) of FERA whereas certain other provisions of FERA specifically use the term

"cases," the inconsistent usage of the terms is due to the fact that the provisions were drafted in

different chambers of Congress and at different times.  The Sixth Circuit became the fifth Court of

Appeals to rule on the interpretation of section 4(f)(1) of FERA.[8]  The Sixth Circuit further held that

the retroactive application of the section 3729(a)(2) FERA amendment does not violate the Ex Post

Facto Clause of the Constitution.

17.     On February 22, 2013, Defendants, with the exception of General Motors

Corporation,[9] collectively filed a petition for writ of certiorari to the Supreme Court, which is still

under consideration.

**C.      The Debtors' Chapter 11 Cases**

18.     Commencing on June 1, 2009, the Debtors filed with this Court voluntary

cases under chapter 11 of Bankruptcy Code, which cases were jointly administered under Case

Number 09-50026 (REG).

19.     On November 16, 2009, Claimants filed the Thacker Claim in these chapter

11 cases in the amount of $50 million.  The attachment to the Thacker Claim does not detail the

---

[8] The other appellate cases to have addressed this issue are: (i) *United States ex. rel Yannacopoulos v. Gen. Dynamics*, 652 F.3d 818, 822 n.2 (7th Cir. 2011) ("Cases" pending); (ii) *United States ex. rel Kirk v. Schindler Elevator Corp.*, 601 F.3d 94, 113 (2d Cir. 2010) ("Cases" pending); (iii) *United States ex. rel Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F. 3d 1047, 1051 n.1 (9th Cir. 2011) ("Claims" pending); and (iv) *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1327 n.3 (11th Cir. 2009) ("Claims" pending).

[9] Due to the Automatic Stay, General Motors Corporation is not participating in the appeal.

components of the $50 million amount asserted by Claimants.  The attachment to the Thacker

Claim summarily provides that Claimants hold a contingent and unliquidated claim based on the

Prepetition Action.  (*See* Claim, annexed hereto as **Exhibit "A"**)

20.    On March 23, 2011, the Court entered the *Order Estimating Maximum

Amount of Certain Claims for Purposes of Establishing Claims Reserves Under the Debtors'

Amended Chapter 11 Plan* (the "**Claim Reserves Order**") (ECF No. 9877).  The Claim Reserves

Order established a maximum amount for the allowance of certain partially unliquidated claims in

order to permit the GUC Trust to provide initial distributions to holders of allowed claims after the

confirmation of the Plan.  Pursuant to the Claims Reserves Order, a maximum amount of $50

million was established with respect to the Thacker Claim.

21.    On March 29, 2011, the Court entered its *Findings of Fact, Conclusions of

Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the

Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11

Plan* (ECF No. 9941) (the "**Confirmation Order**").  Among other things, the Confirmation Order

(i) confirmed the Plan, (ii) established the GUC Trust pursuant to that certain Motors Liquidation

Company GUC Trust Agreement, and (iii) authorized the GUC Trust to resolve certain claims

pending against the Debtors' estates.

### The Relief Requested Should Be Approved by the Court

**A.    The Court is Authorized to Estimate the Thacker Claim Pursuant to the Plan
and Section 502(c) of the Bankruptcy Code**

22.    Section 7.3 of the Plan, entitled "*Estimation*," provides that the Court has the

authority to estimate any Disputed Claim (as defined in the Plan) pursuant to section 502(c) of the

Bankruptcy Code.  Section 7.3 provides in pertinent part:

> The Debtors or the GUC Trust Administrator, as applicable, may at any time
> request that the Bankruptcy Court estimate any contingent, unliquidated, or

8

Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the GUC Trust Administrator previously objected to such Claim, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtors or the GUC Trust Administrator, as applicable, may pursue supplementary proceedings to object to the allowance of such Claim. All the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another."

Pursuant to Section 1.54 of the Plan, a Disputed Claim is generally defined as a claim that has not been allowed pursuant to the Plan or a final order of this Court. Under that definition, the Thacker Claim clearly constitutes a Disputed Claim that may be estimated pursuant to the Plan.

23.    Additionally, section 502(c) of the Bankruptcy Code authorizes the Court to estimate "any contingent or unliquidated claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c). Estimation "provides a means for a bankruptcy court to achieve reorganization, and/or distributions on claims, without awaiting the result of legal proceedings that could take a very long time to determine." *In re Adelphia Bus. Solutions, Inc*., 341 B.R. 415, 422 (Bankr. S.D.N.Y. 2003) (citing *In re Cont'l Airlines, Inc*., 981 F.2d 1450, 1461 (5th Cir. 1993)); *In re Lionel LLC*, No. 04-17324, 2007 WL 2261539, at *2 (Bankr. S.D.N.Y. Aug. 3, 2007) (noting that, without estimation, lengthy proceedings result in "delayed distributions, which in turn, greatly devalue the claim of all creditors as they cannot use the assets until they receive them") (citation omitted).

24.    Estimation is appropriate in these circumstances because awaiting the resolution of the Prepetition Action will unduly delay the administration of this case. The history of the Prepetition Action strongly indicates that a liquidation of the Thacker Claim outside of these

9

chapter 11 cases will not occur in a reasonable amount of time.  The Prepetition Action has now

been ongoing for approximately 18 long years and may take several additional years to end.

Furthermore, the Supreme Court of the United States has not decided whether it will grant certiorari

for the second time.  If it does not, the case will be remanded to the Ohio District Court with the

likely prospect of further protracted litigation and appeals.  *In re Lane*, 68 B.R. 609, 613 (Bankr. D.

Hawaii 1986) (In determining whether undue delay would occur absent estimation, a bankruptcy

court considers the time necessary to resolve appeals).  If the Supreme Court does grant certiorari

again, not only may the Supreme Court take a year to issue its ruling, but there can be no assurance

that the Supreme Court will rule in a manner that resolves the Thacker Claim without further

protracted litigation.

            25.      Section 5.5 of the GUC Trust Agreement provides that the GUC Trust is

required, except under certain exceptions, to maintain a reserve of assets to distribute to the holders

of disputed claims that subsequently become allowed claims.  The GUC Trust is presently

maintaining a reserve of assets on account of the Thacker Claim that is sufficient to satisfy an

allowed claim in the amount of $50 million.  At this late stage of these chapter 11 cases, the

Thacker Claim accounts for a significant portion of the reserves currently being held on account of

all of the remaining disputed general unsecured claims that are not currently being addressed as part

of the adversary proceedings styled *Motors Liquidation Company GUC Trust v. Appaloosa

Investment Limited Partnership I*, Case No. 12-09802 (the "**Nova Scotia Adversary Proceeding**")

or *Official Comm. of Unsecured Creditors of General Motors Corp. v. JPMorgan Chase Bank, N.A.

et. al.*, Case No. 09-00504 (the "**JPMorgan Adversary Proceeding**"). To reserve significant assets

without a proper estimation of the Thacker Claim while the Prepetition Action runs its course

"prejudices the interests of the established, bona-fide creditors and the administration of the estate."

*See In re Enron Corp.*, No. 01-16304, 2006 WL 538552, at *3 (Bankr. S.D.N.Y. Jan. 6, 2006).

26.    Additionally, the Thacker Claim should be estimated now because the GUC

Trust exposes itself to adverse tax consequences with respect to any reserves that are unnecessarily

held on account of the Thacker Claim.  The GUC Trust is currently, for U.S. federal income tax

purposes, a "disputed ownership fund" within the meaning of Section 1.468B-9 of the Treasury

Regulations promulgated under title 26 of the United States Code, and is taxable as a "qualified

settlement fund," pursuant to Section 1.468B-9(c)(1)(ii) and Section 1.468B-2 of the Treasury

Regulations.  As such, the GUC Trust recognizes taxable gain and/or loss from distributions of

assets to holders of allowed claims equal to the difference between the market value of such assets

at the time of distribution and the GUC Trust's tax basis of such assets.[10]  A subsequent increase in

the market value of the distributed assets could result in adverse tax implications for the GUC Trust.

The amount necessary to satisfy the tax liability would otherwise be distributed to holders of

allowed claims. Therefore, it is in the interests of the efficient administration of these cases that the

Thacker Claim be appropriately estimated so that an appropriate distribution to creditors can

promptly be made.

**B.    Estimation Contemplates Flexible Procedures**

27.    A court has wide discretion in establishing the method and procedure to be

used in estimation.  *In re Chemtura Corp.*, 448 B.R. 635, 649 (Bankr. S.D.N.Y. 2011) ("For both

procedure and analytical methodology, bankruptcy courts may use whatever method is best suited

to the contingencies of the case."); *Addison v. Lanpaton (In re Brints Cotton Mktg., Inc.)*, 737 F.2d

1338, 1341 (5th Cir. 1984) (citation omitted).

---

[10] The tax implications of distributions by the GUC Trust are more fully explained in the Form 8-K filed by the GUC Trust on May 7, 2012.

11

28.     The courts' discretion in choosing the process for estimating claims ranges from conducting summary trials (*In re Baldwin-United Corp.*, 55 B.R. 885, 899 (Bankr. S.D. Ohio 1985)), to a review of written submissions of proposed facts (*In re Windsor Plumbing Supply Co.*, 170 B.R. 503, 517 (Bankr. E.D.N.Y. 1994)), to a review of pleadings and briefs followed by oral argument of counsel (*In re Lane*, 68 B.R. at 613). Whatever the procedure the bankruptcy court chooses to estimate a claim, it must be consistent with the policy underlying chapter 11, that a "reorganization must be accomplished quickly and efficiently." *Bittner v. Borne Chem. Co.*, 691 F.2d 134, 137 (3d Cir. 1982).

29.     Accordingly, a bankruptcy court need not conduct a full evidentiary trial to estimate a claim. In fact, conducting a time-consuming trial pursuant to all the applicable procedural and evidentiary rules would defeat the purpose of estimation. This Court has the discretion to tailor the estimation proceedings to fit the particular circumstances of this case. Here, the GUC Trust submits that the estimation of the Thacker Claim should be conducted on the basis of a review of pleadings submitted by the parties followed by oral argument. Live examination of witnesses is not necessary because there already exists a record of the trial in the Prepetition Action in which Claimants had a full opportunity to present the entirety of their case. As such, to the extent necessary, the parties may cite to the relevant portions of the trial testimony for the purposes of estimating the Thacker Claim. Likewise, the GUC Trust submits that conducting discovery is not necessary for the purposes of estimating the Thacker Claim because the parties already conducted extensive discovery and completed discovery in the Prepetition Action.

30.     Based on the forgoing, the GUC Trust proposes the following procedures and schedule to estimate the Thacker Claim in the event that it cannot be consensually resolved pursuant to the Mediation:

12

(a) Claimants shall file and serve a pleading detailing and supporting the
components of the $50 million amount asserted in the Thacker Claim by
September 13, 2013.

(b) The GUC Trust shall file and serve a response by September 30, 2013.

(c) Any further pleadings or briefs relating to the estimation of the Thacker
Claim shall be submitted by October 15, 2013.

(d) The hearing on the estimation of the Thacker Claim shall be held on
October 31, 2013, or as soon thereafter as counsel may be heard.

The GUC Trust respectfully proposes that the Court fix the estimation procedures on the first return
date of this motion.

## Reservation of Rights

31.     Pursuant to section 7.3 of the Plan, the GUC Trust reserves the right to object
to the Thacker Claim at a later time.

## Notice

32.     Notice of this Motion has been provided in accordance with the *Sixth
Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007
Establishing Notice and Case Management Procedures*, dated May 5, 2011 (ECF No. 10183).  The
GUC Trust submits that such notice is sufficient and no other or further notice need be provided.

33.     Except as provided herein, no previous request for the relief sought herein
has been made by the GUC Trust to this or any other court.

US_ACTIVE:\44244862\7\72240.0639

## Conclusion

WHEREFORE the GUC Trust respectfully requests entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: May 14, 2013
     New York, New York

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
   Company GUC Trust

14

**EXHIBIT A**

**<u>Proof of Claim No. 27105</u>**

FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court    Southern District of New York | **PROOF OF CLAIM** |
|---|---|

**Name of Debtor**
Motors Liquidation Company (f/k/a General Motors Corp.

**Case Number**
09-50026

NOTE  This form should not be used to make a claim for an administrative expense arising after the commencement of the case  A "request" for payment of an administrative expense may be filed pursuant to 11 U S C  § 503

**Name of Creditor** (The person or other entity to whom the debtor owes money or property)

Roger L  Thacker, Roger L  Sanders, Thomas J  Hanson

❑ Check box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

**Name and address where notices should  be sent**
Helmer, Martins, Rice & Popham Co , L P A
600 Vine St , Suite 2704
Cincinnati, Ohio 45202

FILED - 27105
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP

Telephone number  513-421-2400 SDNY # 09-50026 (REG)

❑ Check box if you have never received any notices from the bankruptcy court in this case

❑ Check box if the address differs from the address on the envelope sent to you by the court

*[stamp: THE GARDEN CITY GROUP, INC. NOV 16 2009]*

**This space is for Court Use Only**

Last four digits of account or other number by which creditor identifies debtor

Check here
if this claim    ❑ replaces    ❑ amends    a previously filed claim, dated _____

**1  Basis for Claim**
☑ Goods sold
❑ Services performed
❑ Money loaned
☑ Personal injury/wrongful death
❑ Taxes
☑ Other  See attached

❑ Retiree benefits as defined in 11 U S C  § 1114(a)
❑ Wages, salaries, and compensation (Fill out below)
Last four digits of your SS# _____
Unpaid compensation for services performed
from _____ to _____
        (date)        (date)

**2  Date debt was incurred**    1986 - 1993

**3  If court judgment, date obtained**

**4  Classification of Claim**  Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed  See reverse side for important explanations

**Unsecured Nonpriority Claim** $ 50,000,000 00
☑ Check this box if  a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority

**Unsecured Priority Claim**
❑ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority
Amount entitled to priority $_____

Specify the priority of the claim
❑ Domestic support obligations under 11 U S C  § 507(a)(1)(A) or (a)(1)(B)
❑ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U S C  § 507(a)(4)
❑ Contributions to an employee benefit plan - 11 U S C  § 507(a)(5)

**Secured Claim**
❑ Check this box if your claim is secured by collateral (including a right of setoff)
Brief Description of Collateral
❑ Real Estate    ❑ Motor Vehicle    ❑ Other_____
Value of Collateral    $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any $_____

❑ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U S C  § 507(a)(7)
❑ Taxes or penalties owed to governmental units - 11 U S C  § 507(a)(8)
❑ Other - Specify applicable paragraph of 11 U S C  § 507(a)(___)
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**5  Total Amount of Claim at Time Case Filed**  $ 50,000,000 00 _____ _____ 50,000,000 00
            (unsecured)    (secured)    (priority)    (Total)
❑ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

**6  Credits.**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim

**7  Supporting Documents**  *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages,  security agreements, and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain  If the documents are voluminous, attach a summary

**8. Date-Stamped Copy**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

This Space is for Court Use Only

**Date**
11-12-09

Sign and print the name and title, if any, of the creditor or other person authorized to file this claim
(attach copy...)

*[signature: James Helmer]*

James B  Helmer, Jr , Trial Attorney

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

**<u>Basis for Claim</u>**

Creditors Roger L Thacker, Roger L. Sanders, and Thomas J. Hanson have a contingent, unliquidated claim as *qui tam* Relators in a False Claims Act case for damages and civil penalties for defective generator sets installed in *Arleigh Burke* class destroyers, *United States ex rel Sanders v Allison Engine Company,* C-1-95-970, currently pending in the Southern District of Ohio. Relators also have claims for attorneys fees and costs pursuant to the False Claims Act fee-shifting provision



**LexisNexis**® *Total Research System*                                    Switch Client | Preferences | Sign Out | ? Help

| My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | Dossier | History |

FOCUS™ Terms                    Search Within  Original Results (1 - 4)    [ ] Go  Advanced

Source: Legal > ... / > U S Supreme Court Cases, Lawyers' Edition [i]
Terms: name(sanders and allison engine) (Edit Search | Suggest Terms for My Search)

✔ Select for FOCUS™ or Delivery
[ ]

*128 S Ct 2123, *, 170 L Ed 2d 1030, **,*
*2008 U S LEXIS 4704, ***, 76 U S L W 4387*

**ALLISON ENGINE** COMPANY, INC , et al , Petitioners v UNITED STATES ex rel ROGER L **SANDERS** and ROGER L THACKER

No 07-214

SUPREME COURT OF THE UNITED STATES

128 S  Ct 2123, 170 L  Ed 2d 1030, 2008 U S  LEXIS 4704, 76 U S L W  4387, 37 A L R  Fed  2d 773, 21 Fla  L  Weekly Fed  S 300

February 26, 2008, Argued
June 9, 2008, Decided

**NOTICE:**

The LEXIS pagination of this document is subject to change pending release of the final published version

**PRIOR HISTORY  [***1]**
ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
United States ex rel. Sanders v. Allison Engine Co., 471 F.3d 610, 2006 U.S. App. LEXIS 31136 (6th Cir.) (6th Cir. Ohio, 2006)

**DISPOSITION:** The Court vacated the judgment and remanded the case for further proceedings consistent with the opinion
Unanimous decision

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Petitioner subcontractors sought certiorari review of a judgment from the United States Court of
Appeals for the Sixth Circuit which reversed the district court's grant of judgment as a matter of law in favor of petitioners in
respondent former employees' qui tam action seeking to recover damages from petitioners under 31 U.S.C.S. § 3729(a)(2) and
(a)(3) of the False Claims Act (FCA), 31 U.S.C.S. § 3729

**OVERVIEW:** In the district court, respondents introduced evidence that petitioners issued certificates of conformance falsely
stating that their work was completed in compliance with U S  Navy specifications for generator sets needed in the construction of
Navy guided missile destroyers and that petitioners presented invoices for payment to the prime contractor shipyards
Respondents, however, did not introduce the invoices that the shipyards submitted to the Navy  The district court found
respondents' evidence legally insufficient under the FCA, but the Sixth Circuit held that claims under 31 U.S.C.S. § 3729(a)(2), (3)
did not require proof of an intent to cause a false claim to be paid by the Government, instead, proof of an intent to cause such a
claim to be paid by a private entity using Government funds was sufficient  Contrary to the Sixth Circuit, the Court held that under
§ 3729(a)(2) respondents were required to prove that petitioners intended that the false statement be material to the
Government's decision to pay or approve the false claim  Similarly, under § 3729(a)(3) respondents were required to show that
petitioners agreed to make use of the false statement to achieve this end

**OUTCOME** The Court vacated the judgment and remanded the case for further proceedings consistent with the opinion
Unanimous decision

**CORE TERMS:** false statement, false claims, fraudulent claim, claim paid, fraudulent, shipyards, defraud, private entity, intend,
conspirators, knowingly, recipient, invoices, subcontracted, destroyer, require proof, specifications, subcontractor, contractor,
asserting, intent to cause, used to pay, conspires, approve, grantee, usage, build, matter of law, funds to pay, prime contractor

**LEXISNEXIS® HEADNOTES**                                                                            ⊟**Hide**
  Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof 🔦
  Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions 🔦
*HN1*⊥It is insufficient for a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. §
3729, to show merely that the false statement's use resulted in obtaining or getting payment or approval of the claim or
that government money was used to pay the false or fraudulent claim  Instead, a plaintiff asserting a claim under 31
U.S.C.S. § 3729(a)(2) must prove that the defendant intended that the false record or statement be material to the
government's decision to pay or approve the false claim  Similarly, a plaintiff asserting a claim under 31 U.S.C.S. § 3729
(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this
end  More Like This Headnote | Shepardize: Restrict By Headnote

  Governments > Legislation > Interpretation 🔦
*HN2*⊥To determine the meaning of a statute, the court starts with the language of the statute  More Like This Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > General Overview

HN3±31 U S.C.S § 3729(a)(2) of the False Claims Act (FCA), 31 U.S.C.S. § 3729, imposes civil liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government Under 31 U.S.C.S. § 3729(a)(2), the defendant must make the false record or statement "to get" a false or fraudulent claim "paid or approved by the Government " "To get" denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim paid or approved by the Government in order to be liable under 31 U.S.C.S. § 3729(a)(2) Additionally, getting a false or fraudulent claim "paid by the Government" is not the same as getting a false or fraudulent claim paid using government funds Under 31 U.S.C.S. § 3729(a)(2), a defendant must intend that the Government itself pay the claim Eliminating this element of intent would expand the FCA well beyond its intended role of combating fraud against the Government More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > General Overview

HN4±Under the definition of the term "claim" in 31 U.S.C.S. § 3729(c) of the False Claims Act, 31 U.S.C.S. § 3729, a request for money or property need not be made directly to the Government in order to constitute a claim Instead, a claim may include a request or demand that is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded 31 U.S.C.S. § 3729(c) This definition of the word "claim" does not alter the meaning of the phrase "by the Government" in 31 U.S.C.S. § 3729(a)(2) Under 31 U.S.C.S. § 3729(c)'s definition of "claim," a request or demand may constitute a claim even if the request is not made directly to the Government, but under 31 U.S.C.S. § 3729(a)(2) it is still necessary for the defendant to intend that a claim be "paid by the Government" and not by another entity More Like This Headnote | Shepardize, Restrict By Headnote

Evidence > Inferences & Presumptions > Presumptions
Governments > Legislation > Interpretation
Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof
Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions

HN5±While 31 U.S.C.S. § 3729(a)(1) of the False Claims Act, 31 U.S.C.S. § 3729, requires a plaintiff to prove that the defendant presented a false or fraudulent claim to the Government, the concept of presentment is not mentioned in 31 U.S.C.S. § 3729(a)(2) The inclusion of an express presentment requirement in 31 U.S.C.S. § 3729(a)(1), combined with the absence of anything similar in § 3729(a)(2), suggests that Congress did not intend to include a presentment requirement in § 3729(a)(2) When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof
Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions

HN6±What 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. § 3729, demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government Therefore, a subcontractor violates 31 U.S.C.S. § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim "by the Government " In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions

HN7±Recognizing a cause of action under the False Claims Act (FCA), 31 U.S.C.S. § 3729, for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute The United States Supreme Court's reading of 31 U.S.C.S. § 3729(a)(2), based on the language of the statute, gives effect to Congress's efforts to protect the Government from loss due to fraud but also ensures that a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof
Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions

HN8±31 U.S.C.S. § 3729(a)(3) of the False Claims Act, 31 U.S.C.S. § 3729, makes liable any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid Under 31 U.S.C.S. § 3729(a)(3), it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government Instead, it must be shown that the conspirators intended "to defraud the Government" Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim More Like This Headnote | Shepardize, Restrict By Headnote

## LAWYERS' EDITION DISPLAY                                                        ⌐Hide

## DECISION

[**1030] False Claims Act plaintiff held required to show (1) under 31 U.S.C.S. § 3729(a)(2), that defendant intended that false

record or statement be material to Federal Government's decision to pay or approve false claim, and (2) under 31 U.S.C.S. § 3729 (a)(3), that conspirators agreed to make use of false record or statement to achieve this end

**SUMMARY**

**Procedural posture:** Petitioner subcontractors sought certiorari review of a judgment from the United States Court of Appeals for the Sixth Circuit which reversed the district court's grant of judgment as a matter of law in favor of petitioners in respondent former employees' qui tam action seeking to recover damages from petitioners under 31 U.S.C.S. § 3729(a)(2) and (a)(3) of the False Claims Act (FCA), 31 U.S.C.S. § 3729

**Overview** In the district court, respondents introduced evidence that petitioners issued certificates of conformance falsely stating that their work was completed in compliance with U S Navy specifications for generator sets needed in the construction of Navy guided missile destroyers and that petitioners presented invoices for payment to the prime contractor shipyards Respondents, however, did not introduce the invoices that the shipyards presented to the Navy The district court found respondents' evidence legally insufficient under the FCA, but the Sixth Circuit held that claims under 31 U.S.C.S. § 3729(a)(2), (3) did not require proof of an intent to cause a false claim to be paid by the Government, instead, proof of an intent to cause such a claim to be paid by a private entity using Government funds was sufficient Contrary to the Sixth Circuit, the Court held that under § 3729(a)(2) respondents were required to prove that petitioners intended that the false statement be material to the Government's decision to pay or approve the false claim [**1031] Similarly, under § 3729(a)(3) respondents were required to show that petitioners agreed to make use of the false statement to achieve this end

**Outcome** The Court vacated the judgment and remanded the case for further proceedings consistent with the opinion Unanimous decision

**LAWYERS' EDITION HEADNOTES**

**[**LEdHN1]**

CLAIMS §101 CONSPIRACY §10

FALSE CLAIMS ACT -- REQUIRED SHOWING

Headnote $^{LEdHN(1)}$⬆[1]

It is insufficient for a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. § 3729, to show merely that the false statement's use resulted in obtaining or getting payment or approval of the claim or that government money was used to pay the false or fraudulent claim Instead, a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(2) must prove that the defendant intended that the false record or statement be material to the government's decision to pay or approve the false claim Similarly, a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this end

**[**LEdHN2]**

STATUTES §164

LANGUAGE

Headnote $^{LEdHN(2)}$⬆[2]

To determine the meaning of a statute, the court starts with the language of the statute

**[**LEdHN3]**

CLAIMS §101

FALSE CLAIMS ACT -- CIVIL LIABILITY

Headnote $^{LFdHN(3)}$⬆[3]

31 U.S.C.S. § 3729(a)(2) of the False Claims Act (FCA), 31 U.S.C.S. § 3729, imposes civil liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government Under 31 U.S.C.S. § 3729(a)(2), the defendant must make the false record or statement "to get" a false or fraudulent claim "paid or approved by the Government " "To get" denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim paid or approved by the Government in order to be liable under 31 U.S.C.S. § 3729(a)(2) Additionally, getting a false or fraudulent claim "paid by the Government " is not the same as getting a false or fraudulent claim paid using government funds Under 31 U.S C S § 3729(a)(2), a defendant must intend that the Government itself pay the claim Eliminating this element of intent would expand the FCA well beyond its intended role of combating fraud against the Government

**[**LEdHN4]**

CLAIMS §101

FALSE CLAIMS ACT -- CLAIM -- PAYMENT

Headnote <sup>LEdHN(4)</sup>[4]

Under the definition of the term "claim" in 31 U S C S § 3729(c) of the False Claims Act, 31 U.S.C.S § 3729, a request for money or property need not be made directly to the Government in order to constitute a claim Instead, a claim may include a request or demand that is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested [**1032] or demanded 31 U.S.C.S § 3729(c) This definition of the word "claim" does not alter the meaning of the phrase "by the Government" in 31 U.S.C.S. § 3729(a)(2) Under 31 U.S.C.S. § 3729(c)'s definition of "claim," a request or demand may constitute a claim even if the request is not made directly to the Government, but under 31 U.S.C.S. § 3729(a)(2) it is still necessary for the defendant to intend that a claim be "paid by the Government" and not by another entity

**[**LEdHN5]**

CLAIMS §101

FALSE CLAIMS ACT -- PRESENTMENT

Headnote <sup>LEdHN(5)</sup>[5]

While 31 U.S.C.S. § 3729(a)(1) of the False Claims Act, 31 U.S.C.S. § 3729, requires a plaintiff to prove that the defendant presented a false or fraudulent claim to the Government, the concept of presentment is not mentioned in 31 U.S.C.S. § 3729(a)(2) The inclusion of an express presentment requirement in 31 U.S.C.S. § 3729(a)(1), combined with the absence of anything similar in § 3729(a)(2), suggests that Congress did not intend to include a presentment requirement in § 3729(a)(2) When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion

**[**LEdHN6]**

CLAIMS §101

FALSE CLAIMS ACT -- RECORD OR STATEMENT

Headnote <sup>LEdHN(6)</sup>[6]

What 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. § 3729, demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government Therefore, a subcontractor violates 31 U.S.C.S. § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim "by the Government " In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability

**[**LEdHN7]**

CLAIMS §101

FALSE CLAIMS ACT -- COVERAGE

Headnote <sup>LEdHN(7)</sup>[7]

Recognizing a cause of action under the False Claims Act (FCA), 31 U.S.C.S. § 3729, for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute Under 31 U.S.C.S. § 3729(a)(3), it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government Instead, it must be shown that the conspirators intended "to defraud the Government " Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim

**[**LEdHN8]**

CONSPIRACY §10

FALSE CLAIMS ACT -- REQUIRED SHOWING

Headnote <sup>LEdHN(8)</sup>[8]

31 U.S.C.S. § 3729(a)(3) of the False Claims Act, 31 U.S.C.S. § 3729, makes liable any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid Under 31 U.S.C.S. § 3729(a)(3), it is not enough for a [**1033] plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government Instead, it must be shown that the conspirators intended "to defraud the Government " Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim

## SYLLABUS

The Navy contracted with two shipyards to build destroyers, each of which needed generator sets (Gen-Sets) for electrical power  The shipyards subcontracted with petitioner Allison Engine Company,  ·Inc (Allison [**1034] Engine), to build Gen-Sets, Allison Engine subcontracted with petitioner General Tool Company (GTC) to assemble them, and GTC subcontracted with petitioner Southern Ohio Fabricators, Inc (SOFCO), to manufacture Gen-Set bases and enclosures  The subcontracts required that each Gen-Set be accompanied by a certificate of conformance (COC) certifying that the unit was manufactured according to Navy specifications  All of the funds paid under the contracts ultimately came from the U S  Treasury

Former GTC employees Sanders and Thacker (hereinafter respondents) brought this *qui tam* suit seeking to recover damages from petitioners under the False Claims Act (FCA), which, *inter alia*, imposes civil liability on any person who knowingly uses a "false statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2), or who "conspires [***2] to defraud the Government by getting a false or fraudulent claim allowed or paid," § 3729(a)(3)  At trial, respondents introduced evidence that petitioners had issued COCs falsely stating that their work was completed in compliance with Navy specifications and that they had presented invoices for payment to the shipyards  They did not, however, introduce the invoices the shipyards submitted to the Navy  The District Court granted petitioners judgment as a matter of law, concluding that, absent proof that false claims were presented to the Government, respondents' evidence was legally insufficient under the FCA  The Sixth Circuit reversed in relevant part, holding, among other things, that respondents' §§ 3729(a)(2) and (3) claims did not require proof of an intent to cause a false claim to be paid by the Government, proof of an intent to cause such a claim to be paid by a private entity using Government funds was sufficient

*Held*

1  It is insufficient for a plaintiff asserting a § 3729(a)(2) claim to show merely that the false statement's use resulted in payment or approval of the claim or that Government money was used to pay the false or fraudulent claim  Instead, such a plaintiff [***3] must prove that the defendant intended that the false statement be material to the Government's decision to pay or approve the false claim  Pp  5-8

(a) The Sixth Circuit's interpretation of § 3729(a)(2) impermissibly deviates from the statute's language, which requires the defendant to make a false statement "to get" a false or fraudulent claim "paid or approved by the Government "  Because "to get" denotes purpose, a person must have the purpose of getting a false or fraudulent claim "paid or approved by the Government" in order to be liable  Moreover, getting such a claim "paid      by the Government" is not the same as getting it paid using "government funds "  Under § 3729(a)(2), a defendant must intend for the Government itself to pay the claim  Eliminating this element of intent would expand the FCA well beyond its intended role of combating "fraud against the *Government* " *Rainwater v. United States*, 356 U.S. 590, 592, 78 S. Ct. 946, 2 L. Ed. 2d 996  Pp  5-6

(b) The Government's contention that "paid      by the Government" does not mean literal Government payment is unpersuasive  The assertion that it is customary to say that the Government pays a bill when a recipient of Government funds uses those funds [***4] to pay involves a colloquial usage of the phrase "paid by" [**1035] that is not customarily employed in statutory drafting, where precision is important and expected  Section 3729(c)'s definition of "claim" does not support the Government's argument  The definition allows a request to be a "claim" even if it is not made directly to the Government, but, under § 3729(a)(2), it is necessary that the defendant intend that a claim be "paid by the Government," not by another entity  Pp  6-7

(c) This does not mean, however, that § 3729(a)(2) requires proof that a defendant's false statement was submitted to the Government  Because the section requires only that the defendant make the false statement for the purpose of getting "a false or fraudulent claim paid or approved by the Government," a subcontractor violates § 3729(a)(2) if it submits a false statement to the prime contractor intending for that contractor to use the statement to get the Government to pay its claim  However, if a subcontractor makes a false statement to a private entity but does not intend for the Government to rely on the statement as a condition of payment, the direct link between the statement and the Government's decision to [***5] pay or approve a false claim is too attenuated to establish liability  The Court's reading gives effect to Congress' efforts to protect the Government from loss due to fraud but also ensures that "a defendant is not answerable for anything beyond the natural, ordinary, and reasonable consequences of his conduct " *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 470, 126 S. Ct. 1991, 164 L. Ed. 2d 720  Pp  7-9

2  Similarly, it is not enough under § 3729(a)(3) for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government  Instead, it must be shown that they intended "to defraud the Government " Where their alleged conduct involved the making of a false statement, it need not be shown that they intended the statement to be presented directly to the Government, but it must be established that they agreed that the statement would have a material effect on the Government's decision to pay the false or fraudulent claim  Pp  8-10

471 F.3d 610, vacated and remanded

Alito, J , delivered the opinion for a unanimous Court

**COUNSEL: Theodore B. Olson** ·argued the cause for petitioners

**Malcolm L. Stewart** ·argued the cause for the United States, as amicus curiae, by special leave of court

**James B. Helmer, Jr.** ·argued the cause for respondents

**JUDGES:** Alito ·, J , delivered the opinion for a unanimous Court

**OPINION BY: ALITO** ·

**OPINION**

[*2126] Justice **Alito** ·delivered the opinion of the Court

https://www.lexis.com/research/retrieve?cc=&pushme=1&tmpFBSel=all&totaldocs=&ta    11/12/2009

The False Claims Act (FCA) imposes [***6] civil liability on any person who knowingly uses a "false record or statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2), and any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," § 3729(a)(3) We granted review in this case to decide what a plaintiff asserting a claim under these provisions must show regarding the relationship between the making of a "false record or statement" and the payment or approval of "a false or fraudulent claim    by the Government "

Contrary to the decision of the Court of Appeals below, we hold that [HN1⊕] [**LEdHR1] [LEdHR(1)⊕][1] it is insufficient for a plaintiff asserting a § 3729(a)(2) claim to show merely that "[t]he false statement's use    result[ed] in obtaining or [**1036] getting payment or approval of the claim," 471 F.3d 610, 621 (CA6 2006) or that "government money was used to pay the false or fraudulent claim," id., at 622 Instead, a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim Similarly, a plaintiff asserting a claim under § 3729(a)(3) [***7] must show that the conspirators agreed to make use of the false record or statement to achieve this end

I

In 1985, the United States Navy entered into contracts with two shipbuilders, Bath Iron Works and Ingalls Shipbuilding (together the shipyards), to build a new fleet of Arleigh Burke class guided missile destroyers Each destroyer required three generator sets (Gen-Sets) to supply all of the electrical power for the ship The shipyards subcontracted with petitioner Allison Engine Company, -Inc (Allison Engine), formerly a division of General Motors, to build 90 Gen-Sets to be used in over 50 destroyers Allison Engine in turn subcontracted with petitioner General Tool [*2127] Company (GTC) to assemble the Gen-Sets, and GTC subcontracted with petitioner Southern Ohio Fabricators, Inc (SOFCO), to manufacture bases and enclosures for the Gen-Sets The Navy paid the shipyards an aggregate total of $1 billion for each new destroyer Of that, Allison Engine was paid approximately $3 million per Gen-Set, GTC was paid approximately $800,000 per Gen-Set, and SOFCO was paid over $100,000 per Gen-Set All of the funds used to pay petitioners ultimately came from the Federal Treasury

The Navy's [***8] contract with the shipyards specified that every part of each destroyer be built in accordance with the Navy's baseline drawings and military standards These requirements were incorporated into each of petitioners' subcontracts In addition, the contracts required that each delivered Gen-Set be accompanied by a certificate of conformance (COC) certifying that the unit was manufactured in accordance with the Navy's requirements

In 1995, Roger L Sanders and Roger L Thacker (hereinafter respondents), former employees of GTC, brought suit in the District Court for the Southern District of Ohio as qui tam relators seeking to recover damages pursuant to § 3729, which renders liable any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government    a false or fraudulent claim for payment or approval," § 3729(a)(1), any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government," § 3729(a)(2), and any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," § 3729(a)(3)

Respondents [***9] alleged that the invoices submitted to the shipyards by Allison Engine, GTC, and SOFCO fraudulently sought payment for work that had not been done in accordance with contract specifications Specifically, respondents claimed that the gearboxes installed by Allison Engine in the first 52 Gen-Sets were defective and leaked oil, that GTC never conducted a required final quality inspection for approximately half of the first 67 Gen-Sets, and that the [**1037] SOFCO welders who worked on the first 67 Gen-Sets did not meet military standards Respondents also claimed that petitioners issued COCs claiming falsely that the Gen-Sets had been built to the contractually required specifications even though petitioners knew that those specifications had not been met

The case was tried to a jury At trial, respondents introduced evidence that petitioners had issued COCs that falsely stated that their work was completed in compliance with the Navy's requirements and that they had presented invoices for payment to the shipyards Respondents did not, however, introduce the invoices submitted by the shipyards to the Navy At the close of respondents' case, petitioners moved for judgment as a matter of law pursuant [***10] to Federal Rule of Civil Procedure 50(a) Petitioners asserted that no reasonable jury could find a violation under § 3729 because respondents had failed to adduce any evidence that a false or fraudulent claim had ever been presented to the Navy The District Court granted petitioners' motion No. 1-.95-cv-970, 2005 U.S. Dist. LEXIS 5612, 2005 WL 713569 (SD Ohio, Mar. 11, 2005) The court rejected respondents' argument that they did not have to present evidence that a claim had been submitted to the Navy because they showed that Government funds had been used to pay the invoices that were presented to the shipyards The District Court concluded that, absent proof that false claims were presented [*2128] to the Government, respondents' evidence was legally insufficient under the FCA 2005 U.S. Dist. LEXIS 5612, [WL] at *10

On appeal, a divided panel of the United States Court of Appeals for the Sixth Circuit reversed the District Court in relevant part 471 F.3d 610 (2006) The majority agreed with the District Court that liability under § 3729(a)(1) requires proof that a false claim was presented to the Government However, the Court of Appeals held that the District Court erred in granting petitioners' motion for judgment as a matter of law with [***11] respect to respondents' §§ 3729(a)(2) and (3) claims The Court of Appeals held that such claims do not require proof of an intent to cause a false claim to be paid by the Government Rather, it determined that proof of an intent to cause a false claim to be paid by a private entity using Government funds was sufficient In so holding, the Court of Appeals recognized that its decision conflicted with United States ex rel. Totten v. Bombardier Corp., 363 U.S. App. D.C. 180, 380 F.3d 488 (CADC 2004) (Totten), cert denied, 544 U.S. 1032, 125 S. Ct. 2257, 161 L. Ed. 2d 1059 (2005)

We granted certiorari to resolve the conflict over the proper interpretation of §§ 3729(a)(2) and (a)(3) 552 U.S.    , 128 S. Ct. 491, 169 L. Ed. 2d 337 (2007)

II

A

We turn first to § 3729(a)(2), and [HN2⊕] [**LEdHR2] [LEdHR(2)⊕][2] "[w]e start, as always, with the language of the statute " Williams v. Taylor, 529 U.S. 420, 431, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000) [HN3⊕] [**LEdHR3] [LEdHR(3)⊕][3]Section 3729(a)(2) imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government "

The interpretation of § 3729(a)(2) that was adopted by the Court of Appeals--and that is endorsed by the respondents and the

Government [**1038] --impermissibly deviates from the statute's language  In [***12] the view of the Court of Appeals, it is sufficient for a § 3729(a)(2) plaintiff to show that a false statement resulted in the use of Government funds to pay a false or fraudulent claim  471 F.3d at 621-622  Under subsection (a)(2), however, the defendant must make the false record or statement "to get" a false or fraudulent claim "paid or approved by the Government "  "To get" denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim "paid or approved by the Government" in order to be liable under § 3729(a)(2)  Additionally, getting a false or fraudulent claim "paid    by the Government" is not the same as getting a false or fraudulent claim paid using "government funds "  Id., at 622  Under § 3729(a)(2), a defendant must intend that the Government itself pay the claim

Eliminating this element of intent, as the Court of Appeals did, would expand the FCA well beyond its intended role of combating "fraud against the Government "  See Rainwater v. United States, 356 U S, 590, 592, 78 S. Ct. 946, 2 L  Ed  2d 996 (1958) (emphasis added)  As the District of Columbia Circuit pointed out, the reach of § 3729(a)(2) would then be "almost boundless  for example, liability could attach [***13] for any false claim made to any college or university, so long as the institution has received some federal grants--as most of them do "  Totten, supra, at 496

B

Defending the Court of Appeals' interpretation of § 3729(a)(2), the Government contends that the phrase "paid    by the [*2129] Government" does not mean that the Government must literally pay the bill  The Government maintains that it is customary to say that the Government pays a bill when a person who has received Government funds uses those funds to pay a bill  The Government provides this example  "'[W]hen a student says his college living expenses are "paid by" his parents, he typically does not mean that his parents send checks directly to his creditors  Rather, he means that his parents are the ultimate source of the funds he uses to pay those expenses '"  Brief for United States as Amicus Curiae 9 (quoting Totten, supra, at 506 (Garland, J , dissenting))

This example is unpersuasive because it involves a colloquial usage of the phrase "paid by"--a usage that is not customarily employed in more formal contexts  For example, if a federal employee who receives all of his income from the Government were asked in a formal [***14] inquiry to reveal who paid for, say, his new car or a vacation, the employee would not say that the Federal Government had footed the bill  In statutory drafting, where precision is both important and expected, the sort of colloquial usage on which the Government relies is not customary

The Government is also wrong in arguing that the definition of the term "claim" in § 3729(c) means that § 3729(a)(2)'s use of the phrase "paid by the government" should not be read literally  HN4 [**LEdHR4] LEdHR(4)[4] Under this definition, a request for money or property need not be made directly to the Government in order to constitute a "claim "  Instead, a "claim" may include a request or demand that is made to "a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of [**1039] the money or property which is requested or demanded "  § 3729(c)  This definition of the word "claim" does not support the Government's argument because it does not alter the meaning of the phrase "by the Government" in § 3729(a)(2)  Under § 3729(c)'s definition of "claim," [***15] a request or demand may constitute a "claim" even if the request is not made directly to the Government, but under § 3729(a)(2) it is still necessary for the defendant to intend that a claim be "paid by the Government" and not by another entity [1]

FOOTNOTES

1 This interpretation of § 3729(a)(2) does not render superfluous the portion of § 3729(c) providing that a "claim" may be made to a contractor, grantee, or other recipient of Government funding  This language makes it clear that there can be liability under §§ 3729(a)(1) and (2) where the request or demand for money or property that a defendant presents to a federal officer for payment or approval, § 3729(a)(1), or that a defendant intends "to get    paid or approved by the Government", § 3729(a)(2), may be a request or demand that was originally "made to" a contractor, grantee, or other recipient of federal funds and then forwarded to the Government

C

This does not mean, however, as petitioners suggest, see Reply Brief 1, that § 3729(a)(2) requires proof that a defendant's false record or statement was submitted to the Government  HN5 [**LEdHR5] LEdHR(5)[5] While § 3729(a)(1) requires a plaintiff to prove that the defendant "present[ed]" a false or fraudulent [***16] claim to the Government, the concept of presentment is not mentioned in § 3729(a)(2)  The inclusion of an express presentment requirement in subsection (a)(1), combined with the absence of anything similar in subsection (a)(2), suggests that Congress did not intend to include a presentment requirement in subsection (a) (2)  "[W]hen Congress includes particular language in one section of a statute but [*2130] omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion "  Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452, 122 S. Ct. 941, 151 L. Ed  2d 908 (2002) (internal quotation marks omitted)

HN6 [**LEdHR6] LEdHR(6)[6] What § 3729(a)(2) demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting "a false or fraudulent claim paid or approved by the Government "  Therefore, a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim [2]  If a subcontractor or another defendant [***17] makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made [**1040] with the purpose of inducing payment of a false claim "by the Government "  In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability  HN7 [**LEdHR7] LEdHR(7)[7] Recognizing a cause of action under the FCA for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute  Our reading of § 3729(a)(2), based on the language of the statute, gives effect to Congress' efforts to protect the Government from loss due to fraud but also ensures that "a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct "  Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 470, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) (internal quotation marks omitted)

FOOTNOTES

2 Section 3729(b) provides that the terms "knowing" and "knowingly" "mean that a person, with respect to information--(1) has actual knowledge of the information, (2) acts in deliberate ignorance of the truth or falsity of the information, or (3) acts **[***18]** in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required " The statutory definition of these terms is easily reconcilable with our holding in this case for two reasons First, the intent requirement we discern in § 3729(a)(g) derives not from the term "knowingly," but rather from the infinitive phrase "to get " Second, § 3729 (b) refers to specific intent with regard to the truth or falsity of the "information," while our holding refers to a defendant's purpose in making or using a false record or statement

III

Respondents also brought suit under § 3729(a)(3), **HNB** **[**LEdHR8]** **IEdHR(8)** [8] which makes liable any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid " Our interpretation of this language is similar to our interpretation of the language of § 3729(a)(2) Under § 3729(a)(3), it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government Instead, it must be shown that the conspirators intended "to defraud the Government " Where the conduct that the conspirators **[***19]** are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's **[*2131]** decision to pay the false or fraudulent claim

This reading of subsection (a)(3) is in accord with our decision in Tanner v. United States, 483 U.S. 107, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987), where we held that a conspiracy to defraud a federally funded private entity does not constitute a "conspiracy to defraud the United States" under 18 U.S.C. § 371 Id., at 129, 107 S. Ct. 2739, 97 L. Ed. 2d 90 In Tanner, the Government argued that a recipient of federal financial assistance and the subject of federal supervision may itself be treated as "the United States " We rejected this reading of § 371 as having "not even an arguable basis in the plain language of § 371 " Id., at 131, 107 S. Ct. 2739, 97 L. Ed. 2d 90 Indeed, we concluded that such an interpretation "would have, in **[***20]** effect, substituted 'anyone receiving federal financial assistance and supervision' for the phrase 'the United States '" Id., at 132, 107 S. Ct. 2739, 97 L. Ed. 2d 90 Likewise, the interpretation urged on us by respondents would in effect substitute "paid or approved by the Government" for the phrase "paid by Government funds " Had Congress intended subsection (a)(3) to apply to anyone who conspired to defraud a recipient of Government funds, it would have so provided

* * *

Because the decision of the Court of Appeals was based on an incorrect **[**1041]** interpretation of §§ 3729(a)(2) and (3), we vacate its judgment and remand the case for further proceedings consistent with this opinion

It is so ordered

**REFERENCES**

31 U.S.C.S. § 3729

2 Federal Contract Management P 13.08 (Matthew Bender)

3 Federal Contract Management P 18.18 (Matthew Bender)

2 Government Contracts  Law, Administration & Procedures §§ 14.30, 14.70 (Matthew Bender)

2 Moore's Federal Practice § 9.03 (Matthew Bender 3d ed )

L Ed Digest, Claims § 101, Conspiracy § 10

L Ed Index, False Claims Act

What is a "claim" against the United States within meaning of Federal False Claims Act (31 U.S.C.S. § 231 [predecessor of 31 U.S.C.S. § 3729]) 19 L Ed 2d 1558

Source  Legal > /   / > U S Supreme Court Cases, Lawyers' Edition i
Terms  name(sanders and allison engine) (Edit Search | Suggest Terms for My Search)
View  Full
Date/Time  Thursday  November 12, 2009 - 12 13 PM EST

* Signal Legend
● - Warning  Negative treatment is indicated
[Q] - Questioned  Validity questioned by citing refs
A - Caution  Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs  With Analysis Available
O - Citation information available
* Click on any Shepard's signal to Shepardize® that case

LexisNexis®  About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc  All rights reserved



**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
 :
In re : Chapter 11 Case No.
 :
**MOTORS LIQUIDATION COMPANY,** *et al.,* : **09-50026 (REG)**
    f/k/a **General Motors Corp.,** *et al.* :
 :
 **Debtors.** : **(Jointly Administered)**
 :
-------------------------------------------------------------x

**ORDER GRANTING MOTORS LIQUIDATION
COMPANY GUC TRUST'S MOTION TO ESTIMATE PROOF
OF CLAIM NO. 27105 FILED BY ROGER L. THACKER, ROGER L.
SANDERS, AND THOMAS J. HANSON AND ESTABLISH PROCEDURES THERETO**

Upon the motion, dated May 14, 2013 (the "**Motion**"),[1] of the Motors Liquidation

Company GUC Trust (the "**GUC Trust**"), formed by the above captioned debtors (collectively,

the "**Debtors**") in connection with the *Debtors' Second Amended Joint Chapter 11 Plan*, dated

March 18, 2011 (as may be amended, supplemented or modified from time to time, the "**Plan**"),

seeking entry of an order authorizing the estimation of Proof of Claim No. 27105 (the "**Thacker**

**Claim**") filed by Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson and establishing

procedures thereto, all as more fully described in the Motion; and due and proper notice of the

Motion having been provided, and it appearing that no other or further notice need be provided;

and the Court having found and determined that the relief sought in the Motion is in the best

interests of the Debtors, their estates, creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the relief granted herein; and after due

deliberation and sufficient cause appearing therefor, it is

---

[1]    Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in
the Motion.

ORDERED that the relief requested in the Motion is granted to the extent provided herein; and it is further

ORDERED that, pursuant to the Plan and section 502(c) of the Bankruptcy Code, the Thacker Claim shall be estimated; and it is further

ORDERED that the following deadlines and procedures shall govern the estimation of the Thacker Claim:

(a) Claimants shall file and serve a pleading detailing and supporting the components of the $50 million amount asserted in the Thacker Claim by September 13, 2013.

(b) The GUC Trust shall file and serve a response by September 30, 2013.

(c) Any further pleadings or briefs relating to the estimation of the Thacker Claim shall be submitted by October 15, 2013.

(d) The hearing on the estimation of the Thacker Claim shall be held on October 31, 2013, or as soon thereafter as counsel may be heard.

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
_____, 2013

_____
United States Bankruptcy Judge

US_ACTIVE:\44244862\7\72240.0639