# Index No. 4

- Since the practical combined effect of the U.S. and Canadian tax regimes is to treat the Canadian unlimited company as a branch for U.S. tax purposes, but as a separate company for Canadian tax purposes, the principals behind the corporation enjoy the best of both worlds.

- Canadians emigrating to the U.S. can avoid double taxation on their Canadian holdings and secure a higher cost basis for U.S. tax purposes.

To obtain this treatment, section 301.7701-2(b)(8)(ii)(A) of the *Internal Revenue Code 1986* requires:

> With regard to Canada, any corporation or company formed under any federal or provincial law which provides that the liability of all of the members of such corporation or company will be unlimited.

§2.84 In addition to the tax benefit of unlimited liability incorporation, there are a number of other features of such a corporation that may make it attractive to certain investors.[212] The directors of an unlimited liability company do not have to be resident in Canada, but any such company must have a registered office in Nova Scotia. An unlimited liability company may be incorporated with or without share capital. Where it possesses share capital, changes in the share capital may be made by way of a member resolution that becomes effective immediately. The *Companies Act* also allows the issuance of par value shares (non-par value shares are also allowed). In addition, the Act does not bar an unlimited liability company from owning shares of its parent or prohibit a subsidiary from acquiring shares of its parent.

§2.85 An unlimited liability company is formed by filing with the Registrar of Joint Stock Companies under *Companies Act* a signed memorandum and articles of association. As under the U.K. Act, these documents provide a contractual framework for the eventual company that arises. The memorandum and articles must be accompanied by a lawyer's declaration concerning the propriety of the incorporation. Unlimited liability companies must have a corporate name (as opposed to a number name), and the name must include one of the words or abbreviations "Company", "Co.", "Corporation", "Corp.", "ULC" or "Unlimited Liability Company" at the end of the corporate name. The use of the words "Limited" or "Incorporated" are prohibited.

---

[212] For instance: one of the most surprising uses for an unlimited liability company can be to enhance shareholder protection. A ULC may actually prove to be a more effective device to limit a shareholder's potential personal liability than an limited liability corporation. For instance, unlimited liability may be employed as a substitute for a shareholder guarantee. Such an arrangement may be attractive where the company will have only a single creditor, and the shareholder intends to sell off the company relatively quickly should it be a successful venture. In many cases, it will prove easier to extricate a departing shareholder from liability under an unlimited liability regime, than to extricate the shareholder of a limited liability corporation from liability under a personal guarantee. In England, unlimited liability companies are less regulated, and are exempt from the public disclosure of corporate accounts. If any Ontario regime is drafted to relieve from such provisions applicable to limited liability corporations (*e.g.*, with respect to dividend payment), unlimited companies may prove to have a degree of popularity even where tax benefits are not a consideration.

§2.86 A limited company under the Nova Scotia law may not directly convert to an unlimited company, but such a transition can be accomplished indirectly through amalgamation. (In contrast, U.K. companies can migrate directly from unlimited to limited status.) Under the amalgamation method, the limited company amalgamates with an unlimited company to form an unlimited company. As a prelude to such a transaction, both companies must have been incorporated, continued, or must otherwise exist, under the Nova Scotia *Companies Act.*

§2.87 Somewhat surprisingly, there are a number of measures that can be taken to limit the liability of the members of a supposedly unlimited liability company. Some of these arise under the *Companies Act* itself. In particular, a member is only liable for debts of the company existing at the time he or she ceases to be a member and a past member is not liable to contribute at all if he or she has not been a member for a one-year period prior to the wind-up. In addition, a past shareholder, if potentially liable, is not required to contribute unless existing shareholders are unable to satisfy their obligations to pay. These restrictions on liability generally follow the rules of liability applicable under partnership law.

§2.88 The liability of a member of an unlimited liability company can also be limited contractually, which is a useful device where there are only one or two large lenders and sufficient security is in place to address the debt of the unlimited company. If doing business with the company is sufficiently attractive, such creditors may be prepared to contractually agree to not pursue the shareholder in the event of default. Another technique employed to limit liability is to make use of an "S" corporation under U.S. tax law, as an intermediary between the unlimited liability companies and the ultimate investor.

## (ii) The Alberta Regime

§2.89 Effective, May 17, 2005, Alberta amended its *Business Corporations Act* ("Alberta BCA")[213] to permit the incorporation of unlimited liability corporations. The Alberta legislation weds the unlimited concept to a pre-existing business corporation that closely resembles that in effect under the OBCA and CBCA.

§2.90 There are a number of important differences, however, between the Alberta and Nova Scotia approach. Under the Alberta legislation, the articles of the corporation must include an express statement that the liability of each of its shareholders "for any liability, act or default of the unlimited liability corporation is unlimited in extent and joint and several in nature". Accordingly, a creditor of an AULC will have a direct claim against all shareholders of the corporation for all liabilities owed to the creditor without having to first seek recourse against the AULC or have it wound up. Under the Nova Scotia regime, although the liability of the members of such a company is not limited, the members have no direct liability to creditors. Instead, their responsibility is acti-

---

[213] R.S.A. 2000 c. B-9.