# Index No. 5

AUSTRALIA
The Law Book Company
Sydney

CANADA
The Carswell Company
Toronto, Ontario

INDIA
N. M. Tripathi (Private) Ltd.
Bombay
*and*
Eastern Law House (Private) Ltd.
Calcutta
M.P.P. House
Bangalore
Universal Book Traders
Delhi

ISRAEL
Steimatzky's Agency Ltd.
Tel-Aviv

PAKISTAN
Pakistan Law House
Karachi

# GOWER'S PRINCIPLES OF MODERN COMPANY LAW

FIFTH EDITION

By

**L. C. B. GOWER**, LL.M., F.B.A.
*Solicitor*

With contributions from

**D. D. PRENTICE**, M.A., LL.B., J.D.
*Barrister*
*Allen & Overy Professor of Corporate Law*
*Fellow of Pembroke College, Oxford*

and

**B. G. PETTET**, LL.B.
*Barrister*
*Senior Lecturer in Laws*
*University College London*

LONDON
SWEET & MAXWELL
1992

# CHAPTER 5

# ADVANTAGES AND DISADVANTAGES OF INCORPORATION

## Legal entity distinct from its members

As already emphasised, the fundamental attribute of corporate personality—from which indeed all the other consequences flow—is that the corporation is a legal entity distinct from its members. Hence it is capable of enjoying rights and of being subject to duties which are not the same as those enjoyed or borne by its members. In other words, it has "legal personality" and is often described as an *artificial person* in contrast with a human being, a *natural person*.[1]

As we have seen, corporate personality became an attribute of the normal joint stock company only at a comparatively late stage in its development, and it was not until *Salomon* v. *Salomon & Co.*[2] at the end of the nineteenth century that its implications were fully grasped even by the courts. The facts of this justly celebrated case were as follows:

Salomon had for many years carried on a prosperous business as a leather merchant. In 1892 he decided to convert it into a limited company and for this purpose Salomon & Co. Ltd. was formed with Salomon, his wife and five of his children as members and Salomon as managing director. The company purchased the business as a going concern for £39,000—"a sum which represented the sanguine expectations of a fond owner rather than anything that can be called a businesslike or reasonable estimate of value."[3] The price was satisfied by £10,000 in debentures, conferring a charge over all the company's assets, £20,000 in fully paid £1 shares and the balance in cash. The result was that Salomon held 20,001 of the 20,007 shares issued, and each of the remaining six shares was held by a member of his family, apparently as a nominee for him. The company almost immediately ran into difficulties and only a year later the then holder of the debentures appointed a receiver and the company went into liquidation. Its assets were sufficient to discharge the debentures but nothing was left for the unsecured creditors. In these circumstances Vaughan Williams J. and a strong Court of Appeal held that the whole transaction was contrary to the true intent of the Companies Act and that the company was a mere sham, and an alias, agent, trustee or nominee for Salomon who remained the real proprietor of

---

[1] A company, even if it has only one member, is a "corporation aggregate" as opposed to the somewhat anomalous "corporation sole" in which an office, *e.g.* that of a bishop, is personified.
[2] [1897] A.C. 22, H.L.
[3] *Per* Lord Macnaghten at p 49.

86        *Advantages and Disadvantages of Incorporation*

the business. As such he was liable to indemnify the company against its trading debts. But the House of Lords unanimously reversed this decision. They held that the company has been validly formed since the Act merely required seven members holding at least one share each. It said nothing about their being independent, or that they should take a substantial interest in the undertaking, or that they should have a mind and will of their own, or that there should be anything like a balance of power in the constitution of the company. Hence the business belonged to the company and not to Salomon, and Salomon was *its* agent. In the blunt words of Lord Halsbury L.C.[4]

"Either the limited company was a legal entity or it was not. If it was, the business belonged to it and not to Mr. Salomon. If it was not, there was no person and no thing to be an agent at all; and it is impossible to say at the same time that there is a company and there is not."

Or, as Lord Macnaghten put it[5]:

"The company is at law a different person altogether from the subscribers ... ; and, though it may be that after incorporation the business is precisely the same as it was before, and the same persons are managers, and the same hands receive the profits, the company is not in law the agent of the subscribers or trustee for them. Nor are the subscribers, as members, liable in any shape or form, except to the extent and in the manner provided by the Act."[6]

Of course this decision does not mean that a promoter can with impunity defraud the company which he forms or swindle his existing creditors. In the *Salomon* case it was argued that the company was entitled to rescind in view of the wilful overvaluation of the business sold to it. But the House held that in fact there was no fraud at all since the shareholders were fully conversant with what was being done. Had Salomon made a profit which he concealed from his fellow shareholders the position would have been different.[7] Nor was there any fraud on Salomon's pre-incorporation creditors, all of whom were paid off in full out of the purchase price. Otherwise they or

---

[4] At p. 31.
[5] At p. 51.
[6] For an early statutory recognition of the same principle, see 22 Geo. 3 c. 45, which disqualified those holding Government contracts from election to Parliament but expressly provided (s.3) that the prohibition did not extend to members of incorporated companies holding such contracts.
[7] See below Chap. 12.

*Legal Entity Distinct from its Members* 87

Salomon's trustee in bankruptcy might have been entitled to upset the sale.[8] And today the charge securing the debenture might be invalidated if there was a successful petition for a winding-up or an administration order within two years.[9] But, in this particular case, Salomon seems to have been one of the victims rather than the villain of the piece for he had mortgaged his debentures and used the money to try to support the tottering company. However, the result would have been the same if he had not, and even if he had been the only creditor to receive anything from the business which was "his" in fact though not in law.

This decision opened up new vistas to company lawyers and the world of commerce. Not only did it finally establish the legality of the "one-man" company and showed that incorporation was as readily available to the small private partnership and sole trader as to the large public company, but it also revealed that it was possible for a trader not merely to limit his liability to the money which he put into the enterprise but even to avoid any serious risk to the major part of that by subscribing for debentures rather than shares. This result seems shocking, and the decision has been much criticised.[10] The only justification for it is that the public deal with a limited company at their peril and know, or should know, what to expect. In particular a search of the company's file at Companies House should reveal its latest annual accounts and whether there are any charges on the company's assets.[11] But the accounts will probably be months out of date and, in the case of a small or medium sized company, may be expurgated editions of those circulated to the members.[12] Nor does everyone having dealings with a company have the time or knowledge needed to search the file. The experienced business man with his trade protection associations can take care of himself, but the little man, whom the law should particularly protect, rarely has any idea of the risks he runs when he grants credit to a company with a high-sounding name,[13] impressive nominal capital (not paid up in cash), and with assets mortgaged up to the hilt.[14] Nor is it practical for the

---

[8] Under what are now ss.423 to 425 of the Insolvency Act 1986.
[9] Insolvency Act 1986, s.245.
[10] See, *e.g.* O. Kahn-Freund, *Some Reflections on Company Law Reform* (1944) 7 M.L.R. 54 (a thought-provoking article still well worth study) in which it is described as a "calamitous decision."
[11] But not necessarily the amount secured; most companies grant floating charges to their bankers to secure "all sums due or to become due" on their current overdrafts and the register of charges will not give any indication of the size of the overdraft at any particular time.
[12] Companies Act 1985 ss.247–251: see below Chap. 17.
[13] There are undoubtedly many who think that "Ltd." is an indication of size and stability (which "plc" may be but "Ltd" certainly is not) rather than a warning of irresponsibility.
[14] But no sympathy was wasted on him by the H.L. "A creditor who will not take the trouble to use the means which the statute provides for enabling him to protect himself must bear the consequences of his own negligence": per Lord Watson at p. 40.

88         *Advantages and Disadvantages of Incorporation*

unemployed workman, who is offered a job with a limited company, to decline it until he has first searched the company's file.[15]

Since the Salomon case, the complete separation of the company and its members has never been doubted. As we shall see later,[16] there are cases in which the legislature, and to a very small extent the courts, have allowed the veil of incorporation to be lifted, but in general it is opaque and impassable. The consequences, however, are not necessarily wholly beneficial to the members.[17] For example, if a trader incorporates his business he will cease to have an insurable interest in its assets even though he is the beneficial owner of all the shares. If therefore he forgets to assign the insurance policies, and to obtain any necessary consents of the insurers, nothing will be payable if the assets perish.[18] Similarly, a parent company will not have an insurable interest in the assets of its subsidiary companies even though wholly owned, for the rule that a company is distinct from its members applies equally to the separate companies of a group.[19] In Kahn-Freund's striking phrase[20] "sometimes corporate entity works like a boomerang and hits the man who was trying to use it."

### (1) *Limited liability*

It follows from the fact that a corporation is a separate person that its members are not as such liable for its debts.[21] Hence in the absence of express provision to the contrary the members will be completely free from any personal liability. This is, in fact, the position as regards municipal and ecclesiastical corporations and the modern public corporations, and may be so as regards statutory and chartered companies, the members of which will be under personal liability only if, and to the extent that, the statute or charter so provides.

But as regards a company registered under the Companies Acts a complete absence of any liability is not permitted. Such a company can either be registered as unlimited, in which case the members are in effect guarantors of its obligations without any restriction on amount,[22] or it can be limited by shares or guarantee.[23] In the case of

---

[15] The likely result would be to lose him his unemployment benefit.
[16] Below Chap. 6.
[17] See especially Kiralfy, *Some Unforseen Consequences of Private Incorporation* in (1949) 65 L.Q.R. 231, and Kahn-Freund, *loc. cit.* and below, Chap. 6.
[18] *Macaura v. Northern Assurance Co.* [1925] A.C. 619, H.L.; *Levinger v. Licences, etc. Insurance Co.* (1936) 54 Ll.L.R. 68.
[19] As will be pointed out later, inroads have been made into this principle, but it still remains the general rule though for tax purposes "group relief" had drawn its sting.
[20] *Loc. cit.* p. 56.
[21] This sentence was quoted and relied on by Kerr L.J. in *Rayner (Mincing Lane) Ltd. v. Dept. of Trade* [1989] Ch. 72 at p. 176 as an accurate statement of English law although, as he pointed out, it is not accurate in relation to most Civil Law countries—including Scotland so far as partnerships are concerned—or to international law: at pp. 176–183.
[22] "In effect" because, of course, the *modus operandi* is different; the creditor has no direct right against the member, as he would have against a surety on default by the principal debtor.
[23] The Companies Acts (now 1985 Act, ss.306–307) have always provided that a limited company may have directors with unlimited liability. It is not surprising that these



*Legal Entity Distinct from its Members*     89

a company limited by shares each member is liable to contribute when called upon to do so the full nominal value of the shares held by him in so far as this has not already been paid by him or any prior holder of those shares. In the case of a guarantee company each member is liable to contribute a specified amount to the assets of the company in the event of its being wound up while he is a member or within one year after he ceases to be a member. In effect, therefore, the member, without being directly liable to the company's creditors, is in both cases a limited guarantor of the company.

When, therefore, obligations are incurred on behalf of a company, the company is liable and not the members, though the company may ultimately be able to recover a contribution from them to enable it to discharge its obligations. If the company is an unlimited one their liability to contribute will be unlimited; if it is limited by shares their liability will be limited to the unpaid nominal value of their shares and in practice their shares are today likely to be fully paid up so that they will be under no further liability. If the company is limited by guarantee they will be under no liability until it is wound up, and then, in practice, only for a derisory sum.[24] In contrast an unincorporated association, not being a legal person, cannot be liable, and obligations entered into on its behalf can bind only the actual officials who purport to act on its behalf, or the individual members if the officials have actual or apparent authority to bind them. In either event the persons bound will be liable to the full extent of their property unless they expressly or impliedly restrict their responsibility to the extent of the funds of the association, as the officials may well do. Hence the extent to which the member will be liable depends on the terms of the contract of association. In the case of a club, and presumably the same applies to learned and scientific societies, there will generally be implied a term that the members are not personally liable for obligations incurred on behalf of the club. But very different is the position of members of a partnership, an association carrying on business for gain. Each partner is an agent of all the others and his acts done in "carrying on in the normal way business of the kind carried on by the firm" bind the partners.[25] Only if the creditor knows of the limitation placed on the partners' authority will the other members escape liability.[26] Moreover, an attempt to restrict the partners' liability to partnership funds by a provision to that effect in the partnership agreement will

---

provisions have long been a dead letter except occasionally in relation to professions which permit their members to practise as incorporated companies but only if the directors accept personal liability.
[24] See Chap. 1, p. 11 n. 36 above.
[25] Partnership Act 1890, s.5. This applies equally to Scotland thus largely negativing the consequence of recognising the Scottish firm as a separate person.
[26] *Ibid.* ss.5 and 8.

be ineffective even if known to the creditors[27]; they will only be able to restrict their financial liability, in respect of acts otherwise authorised, by an express agreement to that effect with the creditor concerned.[28]

There is, it is true, now a method whereby liability can be limited without forming an incorporated company; namely, by a limited partnership under the Limited Partnerships Act 1907. But this has many disadvantages in comparison with a company. In particular, it is not possible to limit the personal liability of all the partners but only some of them.[29] Moreover, even the limited partners lose their privilege of limited liability if they take any part in the management of the business.[30] This latter rule is especially inconvenient, for although a person who puts money into a business may be happy to leave the running of it to his colleagues while all goes well, he will probably want to be able to intervene if things go wrong. If a limited partner does so, his attempt to salvage the wreck may well result in the whole of his fortune sinking with it.

Hence a limited company is generally found preferable. It enables the liability of all the members to be limited without restriction on the part which they play in the management, and, although it involves somewhat greater formality, publicity and expense, these are not very onerous. In practice, therefore, limited partnerships are used only where for some reasons an incorporated company is inappropriate (*e.g.* in the case of certain professions which companies are not allowed to practise) but one member of the firm is not prepared to accept full liability for its debts or the other partners do not want him to play any part in the management. This may occur on the retirement from active participation of a senior partner whom it is wished to retain as a consultant or for the prestige value of his name and reputation. Save in these rare cases where limited partnerships are appropriate, the only practical alternatives are either complete personal liability or limited liability through the medium of a company.

In the case of small private limited companies the members' freedom from personal liability may, in practice, prove to be largely illusory. Banks and others who grant the company formal credit facilities are likely to require the members, or such of them as are directors, personally to guarantee the company's indebtedness. If, then, the company becomes insolvent, members or directors face personal liabilities which may bankrupt them. Limited liability protects them only in respect of claims by trade creditors who have

---

[27] *Re Sea, Fire and Life Insurance Co.* (1854) 3 De G.M. & G. 459.
[28] *Hallett v. Dowdall* (1852) 21 L.J.Q.B. 98. It is a criminal offence to carry on business under a name ending with "Limited" unless duly incorporated with limited liability: Companies Act 1985 s.34.
[29] Limited Partnership Act 1907, s.4(2).
[30] *Ibid.* s.6(1). They may only "advise with the partners."