# Index No. 7

*Case Name:*

# Antigonish (Town) v. Antigonish (County)

**Between**
**Town of Antigonish, appellant, and**
**Municipality of the County of Antigonish, respondent**

[2006] N.S.J. No. 85

2006 NSCA 29

241 N.S.R. (2d) 332

19 M.P.L.R. (4th) 155

146 A.C.W.S. (3d) 555

2006 CarswellNS 89

Docket: CA 242677

Nova Scotia Court of Appeal
Halifax, Nova Scotia

**T.A. Cromwell, G.B. Freeman and L.L. Oland JJ.A.**

Heard: September 23, 2005.
Judgment: March 7, 2006.

(67 paras.)

*Municipal law -- Municipalities -- Amalgamation or restructuring -- Dissolution -- Appeal by Town of Antigonish from the decision of the Nova Scotia Utility and Review Board amalgamating the Town and the Municipality of the County of Antigonish dismissed -- The Board had the jurisdiction to order an amalgamation regardless of whether this resulted in the creation of a regional municipality or resulted in the dissolution of the Town.*

Appeal by the Town of Antigonish from the decision of the Nova Scotia Utility and Review Board determining that the amalgamation of the Town and the Municipality of the County of Antigonish

would be in the best interests of the Town and Municipality. The County of Antigonish contained three municipal entities, the Town, the Municipality and Havre Boucher Village Commission. Havre Boucher was not a municipality, but a municipal government. The Town applied to the Board for the annexation of several thousand acres of the Municipality. The Municipality subsequently applied for the amalgamation of it and the Town. The Board considered both the annexation and amalgamation applications. It determined that amalgamation would be in the best interests of the Town and Municipality. The Town argued that the Board erred in finding that it had the jurisdiction to hear an application for amalgamation. It argued that the proposed amalgamation would result in the forced creation of a regional municipality, which was beyond the Board's jurisdiction. The Town also argued that the Board considered irrelevant factors, including the existence of Havre Boucher and eligibility for equalization funding from the Province, and that a Town cannot be amalgamated with another municipality since it resulted in the dissolution of the Town.

HELD: Appeal dismissed. The Utility and Review Board Act contained a strong privative clause regarding the Board's findings of fact. However, there was no requirement of deference to decisions regarding the Board's jurisdiction and the standard of review was one of correctness. The legislative history would suggest that the Board had jurisdiction to order amalgamation. The Town's position ignored the presumption against tautology. There was no genuine conflict or inconsistency between a union of municipalities resulting from the adjudicative process under section 358 of the Municipal Government Act and one resulting from the political process under section 372. Whatever similarities the outcome of a successful amalgamation may have to a regional municipality, it was not a regional municipality. The Act allowed municipalities to be amalgamated, and the definition of municipalities included towns. The Town's argument respecting dissolution ignored the definitions in the Act. There was no conflict between the provisions of section 358 and 394 of the Act, which had different purposes. The possibility of the Havre Boucher continuing was not determinative of the Board's decision.

**Statutes, Regulations and Rules Cited:**

Cape Breton Regional Municipality Act, S.N.S. 1994, c. 3

Halifax Regional Municipality Act, S.N.S. 1995, c. 3, s. 217

Interpretation Act, R.S.N.S. 1989, c. 235, ss. 9(5), 9(5)(e), 9(5)(f)

Municipal Affairs Act, R.S.N.S. 1989, c. 296

Municipal Boundaries Act, S.N.S. 1964, c. 8, s. 20

Municipal Boundaries and Representation Act, S.N.S. 1982, c. 10, s. 20

Municipal Boundaries and Representation Act, R.S.N.S. 1989, c. 298, s. 20

Municipal Government Act, S.N.S. 1998, c. 18, ss. 3(ar) "municipal government", 3(aw) "municipality", 3(be) "regional municipality", 356, 357, 358, 359, 360, 361, 362, 362(2), 362(3), 363(1), 363(2), 363(3), 367, 372, 379(1), 379(2), 383, 394

Municipal Grants Act, R.S.N.S. 1989, c. 302

Queens Municipality Act, S.N.S. 1995, c. 9

Utility and Review Board Act, S.N.S. 1992, c. 11, ss. 26, 30(1)

**Court Summary:**

Statutory interpretation -- Municipal Government Act, S.N.S. 1998, c. 18, s. 358, 372 and 394.

Each of the Town of Antigonish and the Municipality of the County of Antigonish applied to the Nova Scotia Utility and Review Board, the Town for annexation of part of the Municipality and the Municipality for amalgamation with the Town. Both applications were made pursuant to s. 358 of the Municipal Government Act. The Board determined that it had the jurisdiction to hear the amalgamation application. After considering both the annexation and amalgamation applications, it was of the preliminary opinion that the best interests of the Town and Municipality would be served by their amalgamation.

Issue: Whether the Board erred in finding that it had the jurisdiction to hear an application for the amalgamation of the Town and the Municipality.

Result: Appeal dismissed. The existence of both s. 358 concerning amalgamations and annexations and s. 372 which deals with the creation of a regional municipality within the same Act does not amount to an internal conflict, repugnancy or inconsistency such that the presumption of coherence would apply. Each provides a distinct process for joining municipalities and only that under s. 372 results in a "regional municipality" as that term is defined in the statute. There was no evidence that the Legislature intended s. 372 to be exhaustive and to exclude s. 358, which specifically refers to amalgamations, from having any application with respect to amalgamation.

Section 394 of the Act which pertains to the dissolution of a town does not prevent the amalgamation of a town with another municipality. The Board did not exceed its jurisdiction by relying too heavily upon the possibility of the Havre Boucher Village Commission continuing to exist, nor did it speculate improperly regarding entitlement to equalization funding from the Province.

*[Note: This summary does not form part of the Court's judgment. Quotations must be from the judgment, not this summary.]*

**Counsel:**

John MacPherson, Q.C. and Jack Innes, Q.C., for the appellant

Robert Grant, Q.C. and Nancy Rubin, for the respondent

Bruce Outhouse, Q.C., for the Nova Scotia Utility and Review Board, not present

Edward Gores, Q.C., for the Attorney General of Nova Scotia, not present

Gary Cusack in person, for the Antigonish Chamber of Commerce, not present

---

Held: Appeal dismissed without costs per reasons for judgment of L.L. Oland J.A.; G.B. Freeman and T.A. Cromwell JJ.A. concurring.

**L.L. OLAND J.A.:--**

Introduction

**1**    In May of 2001, the Town of Antigonish (the "Town") applied to the Nova Scotia Utility and Review Board (the "Board") for the annexation of several thousand acres of the Municipality of the County of Antigonish (the "Municipality"). Later that very same month, the Municipality applied to the Board for the amalgamation of it and the Town.

**2**    The public hearing before the Board took 11 days. After determining that it had the jurisdiction to hear the Municipality's amalgamation application, the Board proceeded to consider both the annexation and the amalgamation applications. Its preliminary opinion (2005 NSUARB 12), which issued in February 2005, was that the amalgamation that would be in the best interests of the Town and the Municipality. The Board indicated that after receiving the results of a plebiscite which would be held to measure the public support for an amalgamated municipal unit, it would consider all the evidence and then render its ultimate decision. The holding of the plebiscite was stayed after the Town appealed the Board's preliminary opinion.

**3**    The Town's appeal to this court raises a single issue, namely whether the Board erred in finding that it had the jurisdiction to hear an application for the amalgamation of the Town and the Municipality. For the reasons which follow, I am of the view that it did not so err.

Background

**4**    Three municipal entities lie within the boundaries of the County of Antigonish: the Town, the Municipality, and Havre Boucher Village Commission. As will be seen, the fact that all three exist was considered by the Board in determining whether it could hear the Municipality's amalgamation

application.

**5**     Each of the Town and the Municipality brought its application for annexation or amalgamation respectively pursuant to s. 358 of the Municipal Government Act, S.N.S. 1998, c. 18 (the Act"):

> Amalgamation or annexation
>
> Municipalities may be amalgamated or the whole or part of a municipality may be annexed to another upon application to the Board by
>
> (a)    the Minister;
> (b)    a municipality; or
> (c)    the greater of ten percent or one hundred of the electors in the area proposed to be amalgamated or annexed. (Emphasis added)

**6**     Section 358 falls under Part XVI (Boundaries) of the Act. Each of the Town and the Municipality qualifies as a "municipality" as defined in its s. 3(aw):

> "Municipality" means a regional municipality, town or county or district municipality, except where the context otherwise requires or as otherwise defined in this Act;

**7**     Havre Boucher Village Commission is not a "municipality" as defined in the Act. It comes within the definition of a municipal government in s. 3(ar):

> 3(ar) "municipal government" means a municipal unit, village or service commission in the area to be incorporated as a regional municipality, and includes every authority, board, commission, corporation or other entity of that municipal unit, village or service commission and every joint authority, board, commission, committee or other entity involving that municipal unit, village or service commission;

**8**     The essence of the Town's argument on appeal is that the proposed amalgamation of the Town and the Municipality would result in the forced creation of a regional municipality, which is beyond the Board's jurisdiction. According to s. 3(be) of the Act, a "regional municipality" is a regional municipality established by or continued under the Act. The definition of that term specifically includes the Cape Breton Regional Municipality, the Halifax Regional Municipality, the Region of Queens Municipality, and the area over which each of those bodies corporate has jurisdiction.

**9**     The creation of a regional municipality is set out in s. 372 which falls under Part XVII (Municipal Incorporation) of the Act. That section begins:

Establishment of regional municipality

(1)    The Board may, if requested by all of the councils of the municipalities in a county, undertake a study of the form of municipal government in the county to determine whether a regional municipality would be in the interests of the people of the county.

(2)    Where

(a)    a study of the form of municipal government in a county to determine whether a regional municipality would be in the interests of the people of the county has been undertaken, whether the study was undertaken by the Minister or otherwise prepared; and

(b)    a plebiscite has taken place and its results show that a majority of the electors who voted in the plebiscite are in favour of the establishment of a regional municipality for the county,

the Governor in Council may, on the recommendation of the Minister, order that a regional municipality be established for the county.

Thus a regional municipality can only be created following the requisite approach by all the municipal councils within a county, the submission of a study, the holding of a plebiscite showing a majority of the electors in favour, the Minister of Housing and Municipal Affairs' recommendation and, even then, only if the Governor in Council should so order.

**10**    The Town also argues that in reaching its preliminary conclusion regarding amalgamation, the Board considered irrelevant factors, such as the existence of the Village of Havre Boucher and eligibility for equalization funding from the Province under the Municipal Grants Act, R.S.N.S. 1989, c. 302. Furthermore it submits that a town cannot be amalgamated with another municipality, since this results in the dissolution of the town contrary to s. 394 of the Act. That provision requires an application to the Board by the Minister, the town council, or ten per cent of the electors of the town.

**11**    The issues argued before the Board which concerned its jurisdiction to hear an amalgamation application under s. 358 of the Act were as follows:

(a)    Does s. 372 which deals with the establishment of a regional municipality implicitly prohibit the amalgamation of all municipalities in a county under s. 358?

(b)    Does s. 394 which deals with the dissolution of a town implicitly prohibit the amalgamation of two or more municipalities if one of them is a town?

> (c)     Since the Village of Havre Boucher does not necessarily cease to exist
> under an amalgamation order, is the form of government which results
> from an amalgamation under s. 358 a "regional municipality" as
> contemplated by section 372?

**12**     The Board responded to each of these issues in the negative. At para. 86 of its decision, it
stated its conclusion on the issue of jurisdiction thus:

> The Board has found that the result of an amalgamation under s. 358 is that,
> unlike under s. 372, Havre Boucher may continue to exist. Even if this were not
> so, however, the Board also considers that while a similar result (i.e., combining
> the municipal units) may be achieved by two different avenues under the Act,
> that does not mean that the result should only be achieved by using one of the
> methods, to the exclusion of the other. The Board considers that nothing, explicit
> or implicit, in the legislation compels such a conclusion, nor does any principle
> of statutory interpretation of which it is aware. Based on the Board's conclusions
> on questions (a) to (c) described above, it finds that it has the jurisdiction to
> consider the Municipality's application to amalgamate the Municipality and the
> Town. (Emphasis added)

Issues

**13**     The core issue on this appeal, namely whether the Board erred in finding that it had the
jurisdiction to hear an application for the amalgamation of the Town and the Municipality pursuant
to s. 358 of the Act, requires consideration of the following:

> 1.     To what extent should debates in the Legislature and legislative history be
> considered in determining the intent of the Legislature in enacting certain
> provisions of the Act?
> 2.     Is the result of a s. 358 amalgamation application the creation of a regional
> municipality?
> 3.     Does the Board have jurisdiction where an amalgamation would result in
> the dissolution of the Town contrary s. 394 of the Act?
> 4.     Did the Board exceed its jurisdiction by considering irrelevant factors
> when rendering its decision?

Before addressing these matters, I must first determine the correct standard of review.

Standard of Review

**14**     In dealing with the question of its jurisdiction to hear the Town's amalgamation application,
the Board stated:

> para. 52 ... the Board views the task before it as strictly one of statutory interpretation. As a result, the statutory framework and the applicable provisions are of primary significance. In this case, all provisions under review are contained in one statute, i.e., the Municipal Government Act.

**15**    According to the Town, the standard of review of the Board's decision in respect of a matter of statutory interpretation is one of correctness. In its view, Myers v. Windsor (Town), [2003] N.S.J. No. 197, 2003 NSCA 64 which concerned the Board's interpretation of a provision pertaining to amendment of land-use by-laws is a complete answer. There Hamilton, J.A. wrote:

> 16 The standard of review on appeal of a Board decision to this Court on questions of law and jurisdiction is one of correctness. Heritage Trust of Nova Scotia et al. v. Nova Scotia (Utility and Review Board), [1994] N.S.J. No. 50 (C.A.). The Board's interpretation of the legislation that confers jurisdiction on the Board is afforded no deference.

**16**    While the Town suggests that Myers, supra, is determinative, Canadian jurisprudence requires an analysis under the pragmatic and functional approach whenever the court conducts a judicial review of an administrative tribunal's decision: see, for example, Dr. Q. v. College of Physicians and Surgeons of British Columbia [2003] 1 S.C.R. 226 at paras. 24-35. In Creager v. Provincial Dental Board of Nova Scotia, [2005] N.S.J. No. 32, 2005 NSCA 9, Fichaud, J.A. recounted the applicable factors in assessing the appropriate level of curial deference as follows:

> para. 15 ... Under the pragmatic and functional approach, the court analyses the cumulative effect of four contextual factors: the presence, absence or wording of a privative clause or statutory appeal; the comparative expertise of the tribunal and court on the appealed issue; the purpose of the governing legislation; and the nature of the question, fact, law or mixed. From this, the court selects a standard of review of correctness, reasonableness, or patent unreasonableness. The functional and practical approach applies even when there is a statutory right of appeal: Dr. Q. v. College of Physicians and Surgeons of British Columbia, [2003] 1 S.C.R. 226, at paras. 17, 21-25, 33; Law Society of New Brunswick v. Ryan, [2003] 1 S.C.R. 247, at para. 21. The approach applies even to pure issues of law, for which the standard of review need not be correctness. The existence of the statutory right of appeal and whether the issue is one of law, are merely factors weighed with the others in the process to select the standard of review: Ryan at paras. 21, 41, 42; Dr. Q. at paras. 17, 21-26, 28-30, 33-34.

**17**    Thus in addition to considering the nature of the question, which I agree is one of statutory interpretation, for which the Board would be accorded scant if any deference, the other contextual factors still must be examined. The first factor concerns the presence or absence of a privative clause or statutory right of appeal. The Utility and Review Board Act, S.N.S. 1992, c. 11 (the

UARB Act) contains a strong privative clause regarding the Board's findings of fact. The finding or determination of the Board upon a question of fact within its jurisdiction is binding and conclusive (s. 26). There is no absolute privative clause, one which would shield the Board's decisions from review. Rather, an appeal lies to this court from an order of the Board upon any question as to its jurisdiction or any question of law (s. 30(1)). This suggests a more searching standard of review with respect to those questions. The subject matter of the appeal here concerns a decision of the Board as to its own jurisdiction.

**18**    Next to be taken into account is the expertise of the Board. The UARB Act does not set out any statutorily prescribed expert qualifications for membership on the Board. The Board is an independent quasi-judicial body which has both regulatory and adjudicative functions. The Act gives it the authority to attend to various matters concerning municipalities including, upon application, municipal boundary lines (s. 356 and s. 357) and the incorporation or dissolution (s. 383 and s. 394 respectively) of a town. Before this court it was undisputed that the Board has adjudicated several matters involving the Town and the Municipality, including ones dealing with water utilities, the Town electric utility, land use planning, and municipal electoral boundaries. Although it has not heard any amalgamation application under s. 358 or its predecessors, the Board has heard applications regarding alternation of municipal boundaries by annexation. On this appeal however the question pertains to the Board's own jurisdiction, a question outside its core area of expertise as it concerns municipalities. Relative to this court, it lacks any expertise which is superior in regard to that question.

**19**    The final factor to be considered is the purpose of the legislation. Greater deference is to be given where a statute's purpose requires an administrative body "to select from a range of remedial choices or administrative responses, is concerned with the protection of the public, engages policy issues, or involves the balancing of multiple sets of interests or considerations": Dr. Q., supra, at para. 31. Section 363(1) of the Act provides that the Board may order amalgamation or annexation if satisfied that the order would be in:

> ... the best interests of the inhabitants of the area, taking into account the financial and social implications of the order applied for ...

Here, however, the matter under appeal is not the final determination or even the initial determination of the applications for amalgamation and annexation. Rather, the issue is one pertaining to the Board's authority to even hear the Municipality's application. As a result, this factor does not demand deference to the Board's decision as to its jurisdiction.

**20**    After considering the four contextual factors of the functional and pragmatic approach, it is my view that the standard of review to be applied to the question of the Board's jurisdiction to hear an amalgamation application pursuant to s. 358 of the Act is that of correctness.

Analysis

The Board's Jurisdiction

**21**    In its decision at para. 254, the Board stated that it had no jurisdiction in respect to the creation of a regional municipality. The Town and the Municipality agree that, as the Board itself recognized, the Board lacks the jurisdiction to establish a regional municipality. On this appeal from the Board's decision the Town submits that, both in fact and in law, the application brought by the Municipality for amalgamation, if successful, will create just such a municipality. It says that if the Board's decision is upheld, there will be two methods by which a single government unit within a county can be established.

**22**    The Town's arguments are based on the fact that the Act contains two provisions which refer to amalgamation, namely s. 358 which concerns amalgamations and annexations and s. 372 which deals with the creation of a regional municipality. According to the Town, the Legislature intended the two sections to serve two distinct and separate processes. Its factum urged that:

> ... Section 372 was intended to address the difficulties which had arisen through the "forced" amalgamations in Cape Breton and Halifax and to ensure that any future regional municipalities were created on a voluntary basis with the support of all of the political units contained therein, i.e. the municipal councils (section 372(1)) as well as the electors in the county as confirmed by a plebiscite (372(2)(b)). Section 358 was intended to apply to the "usual" situation in which a municipality applies to annex a portion of a neighbouring municipality. Such annexations were not intended to lead to the creation of regional municipalities.

**23**    The Municipality agrees with the Town's submission that s. 372 and s. 358 were intended to serve different purposes. Where the parties differ is in their interpretation of the authority granted the Board under s. 358. The Town submits that the application of that provision is limited to the "usual" situation of annexation. The Municipality takes the position that a "plain and ordinary" reading of it confirms that the Legislature vested the Board with the authority to hear and to decide amalgamation applications.

Statutory Interpretation

**24**    E.A. Driedger set out the modern principle of statutory interpretation in the Construction of Statutes (2nd ed. 1983), at p. 87 as follows:

> Today there is only one principle or approach, namely, the words of an Act are to be read in their entire context and in their grammatical and ordinary sense harmoniously with the scheme of the Act, the object of the Act, and the intention of Parliament.

This principle has been cited and relied upon in numerous decisions, and has been acknowledged as the preferred approach. See, for example, Rizzo & Rizzo Shoes Ltd. (Re), [1998] 1 S.C.R. 27, at 41;

Bell ExpressVu Limited Partnership v. Rex, [2002] 2 S.C.R. 559 and the cases cited at para. 26; and Bristol-Myers Squibb Co. v. Canada (Attorney General), [2005] S.C.J. No. 26 at para. 95.

**25**    Also to be considered is s. 9(5) of the Interpretation Act, R.S.N.S. 1989, c. 235, as amended which directs that:

> 9(5) Every enactment shall be deemed remedial and interpreted to insure the attainment of its objects by considering among other matters

> (a)    the occasion and necessity for the enactment;
> (b)    the circumstances existing at the time it was passed;
> (c)    the mischief to be remedied;
> (d)    the object to be attained;
> (e)    the former law, including other enactments upon the same or similar subjects;
> (f)    the consequences of a particular interpretation; and
> (g)    the history of legislation on the subject.

I will begin by considering the extent to which the legislative history of s. 358 and s. 372 and the debates in the Legislature may be considered.

Legislative History and Debates in the Legislature

**26**    Professor Ruth Sullivan, Sullivan and Driedger on the Construction of Statutes, 4th ed. (Markham: Butterworths, 2002) states at p. 497 that the general tendency in the modern evolution of statutory interpretation is to move from a rule-based to a principle-based approach and further at p. 499 that:

> ... it is now well accepted that legislative history, Parliamentary debates, and similar material may be quite properly considered as long as it is relevant and reliable and is not assigned undue weight ...

See also Municipal Enterprises Ltd. v. Nova Scotia (Attorney General), [2003] N.S.J. No. 26, 2003 NSCA 10 at para. 65.

> (a)    Legislative History

**27**    The Act is the culmination of the consolidation of earlier legislation governing municipalities and the enactment of new legislation. Previous to its passage in 1998, municipalities could apply to annex portions of adjoining municipalities or to amalgamate with those municipalities under provisions first contained in the Municipal Boundaries Act, S.N.S. 1964, c. 8, s. 20 and thereafter in the Municipal Boundaries and Representation Act, R.S.N.S. 1967, c. 195, s. 18, the Municipal

Boundaries and Representation Act, S.N.S. 1982, c. 10, s. 20 and the Municipal Boundaries and Representation Act, R.S.N.S. 1989, c. 298, s. 20. These provisions were all essentially similar to s. 358 of the Act.

**28**    The Board noted at para. 361 that prior to the Municipality's application, neither those provisions nor s. 358 had been used for amalgamation purposes:

> While the Board occasionally receives applications for annexation, the application for amalgamation is unique in the Board's experience.

**29**    No legislation provided for the establishment of regional municipalities until the enactment of the Halifax Regional Municipality Act, S.N.S. 1995, c. 3, s. 217; the Cape Breton Regional Municipality Act, S.N.S. 1994, c. 3; and the Queens Municipality Act, S.N.S. 1995, c. 9. Those statutes created regional municipalities in each of those counties. They also dissolved the towns contained within those regional municipalities.

**30**    The passage of the Act in 1998 effected a major consolidation of the legislation with respect to municipal governments. The Act repealed 19 statutes and amended many others (see s. 545-583 of the Act). The legislation that was repealed included the Municipal Affairs Act, R.S.N.S. 1989, c. 296, the Municipal Boundaries and Representation Act, supra, the Halifax Regional Municipality Act, supra, the Cape Breton Regional Municipality Act, supra, and the Queens Municipality Act, supra. Section 372 on the creation of regional municipalities first appeared in the Act.

**31**    It is noteworthy that the predecessor of s. 358 as contained in the Municipal Boundaries and Representation Act, supra, did not disappear when the Act was passed by the Legislature. Rather, that provision was transposed to Part XV1 (Boundaries) of the Act as s. 358. It continued to refer to amalgamations as well as to annexations. Moreover, although somewhat modified, the provisions which set out the procedures to be followed regarding preliminary orders for amalgamations or annexations (now s. 359-362), were incorporated in the Act. Indeed, in some instances such as ss. 362(2)(3) [required studies] and s. 367 [effect of annexation or amalgamation "unless the Board otherwise orders"], the Board's powers were increased.

**32**    In my view, the legislative history would suggest a reaffirmation of the Board's jurisdiction to order amalgamation pursuant to s. 358.

    (b)    Legislative Debates

**33**    In support of its submission that the legislative intent behind s. 372 on the creation of regional municipalities was to remedy the "mischief" of forced amalgamations, the Town urged that certain excerpts from Hansard, regarding comments made during the debates in the legislature when the Act was introduced, were relevant and should be considered. To that end, it filed an appeal book volume containing those extracts.

**34**    Much of the material sought to be introduced did not consist of statements or accompanying text supplied by the minister introducing or defending the Act in the Legislature, which can be helpful in establishing legislative intent. Rather, they were statements or comments made by members of the opposition who criticized the lack of consultation prior to the formation of the Cape Breton and Halifax Regional Municipalities. The minister did not say anything which would even suggest that the Act was intended as a response to those criticisms. Furthermore, it is significant that none of the remarks directly address the question of whether or not s. 372 which deals with the creation of regional municipalities, was intended to displace or to be paramount over s. 358 which concerns amalgamations and annexations.

**35**    In my view, the material the Town sought to be introduced does not satisfy the threshold tests of relevance and reliability. Accordingly the volume of Hansard extracts will not be considered in the search for legislative intent.

Whether s. 358 Amalgamation Order Creates a Regional Municipality

**36**    According to the Town, the Board erred in determining that the combining of municipal units "may be achieved by two different avenues under the Act ..." It says that s. 358 is limited to annexations and argues that both in fact and in law, the application for amalgamation under that provision, if successful, will create a regional municipality. The Town added that the evidence before the Board supports the conclusion that the Municipality seeks the establishment of a single regional municipal in the County of Antigonish. At para. 252 of its decision the Board noted that the Warden of the Municipality suggested that "amalgamation could be the first step on the path to regional government." In addition, the Chair of the Havre Boucher Village Commission advised that if the Board should decide to order the amalgamation of the Municipality and the Town:

> ... the Village of Havre Boucher intend to request that it be included in the amalgamation so that the resulting municipality would qualify as a Regional Municipality.

**37**    For convenience, I set out again s. 358 and s. 372 of the Act:

> Amalgamation or annexation
>
> 358 Municipalities may be amalgamated or the whole or part of a municipality may be annexed to another upon application to the Board by
>
> (a)    the Minister;
> (b)    a municipality; or
> (c)    the greater of ten percent or one hundred of the electors in the area proposed to be amalgamated or annexed.

Establishment of regional municipality


372(1) The Board may, if requested by all of the councils of the municipalities in a county, undertake a study of the form of municipal government in the county to determine whether a regional municipality would be in the interests of the people of the county.


(2)    Where


(a)    a study of the form of municipal government in a county to determine whether a regional municipality would be in the interests of the people of the county has been undertaken, whether the study was undertaken by the Minister or otherwise prepared; and

(b)    a plebiscite has taken place and its results show that a majority of the electors who voted in the plebiscite are in favour of the establishment of a regional municipality for the county,


the Governor in Council may, on the recommendation of the Minister, order that a regional municipality be established for the county.

**38**    Section 358 respecting amalgamations and annexations is followed by various provisions dealing with the application and hearing process. For example, s. 359 sets out the contents of an application for a preliminary order, s. 360 details the notification to be given of the hearing before the Board, s. 361 lists the persons who are to be heard, s. 362 deals with any preliminary order the Board may make, and s. 363(2) the contents of an order. All these provisions, either directly or indirectly, refer to applications or orders for amalgamations and annexations. Section 372, respecting the creation of a regional municipality, is also accompanied by provisions dealing with the application and the process. Those provisions include ones dealing with the transition to a regional municipality.

**39**    Statutory interpretation uses certain rules to guide what may be examined to determine legislative intent and meaning. For example, the analysis may include the application of the "presumption against tautology" which Professor Sullivan in Sullivan and Driedger on the Construction of Statutes, supra, described thus at p. 159:

> ... every word and provision found in a statute is supposed to have a meaning and a function. For this reason courts should avoid, as much as possible, adopting

> interpretations that would render any portion of a statute meaningless or pointless
> or redundant.

She also notes that this presumption applies not only to individual words and phrases but also to
paragraphs and sections.

**40**    The Town's position that s. 358 is limited to annexations ignores the express references to
amalgamations in that provision and in the procedural provisions which follow. It consequently
ignores the presumption against tautology.

**41**    The foundation for the Town's arguments is another principle of statutory interpretation, that
known as the "presumption of coherence." It provides that the various sections of a statute should
and must be read together in a coherent fashion, each portion serving a particular purpose. The
Town submits that the Board erred in failing to consider this presumption.

**42**    Professor Sullivan explained the governing principle underlying the presumption of coherence
thus at pp. 262-263:

> It is presumed that the provisions of legislation are meant to work together, both
> logically and teleologically, as parts of a functioning whole. The parts are
> presumed to fit together logically to form a rational, internally consistent
> framework; and because the framework has a purpose the parts are also
> presumed to work together dynamically, each contributing something toward
> accomplishing the intended goal.

> The presumption of coherence is also expressed as a presumption against internal
> conflict. It is presumed that the body of legislation enacted by a legislature does
> not contain contradictions or inconsistencies, that each provision is capable of
> operating without coming into conflict with any other. As LaForest J. wrote in
> Friends of Oldman River Society v. Canada (Minister of Transport) [[1992] 1
> S.C.R. 3, at p. 38]:

> > ... there is a presumption that the legislature did not intend to make or
> > empower the making of contradictory enactments ...

**43**    The question becomes whether the existence of both sections 358 and 372 within the Act
amounts to an internal conflict, repugnancy or inconsistency. In Toronto Railway Co. v. Paget
(1909), 42 S.C.R. 488, at 499, Anglin, J. stated that:

> It is not enough to exclude the application of the general Act that it deals
> somewhat differently with the same subject-matter. It is not "inconsistent" unless

the two provisions cannot stand together.

If they can "stand together and both operate without either interfering with the other," there is no irreconcilable inconsistency or conflict: Tabernacle Permanent Building Society v. Knight, [1892] A.C. 298, at 302 (H.L.).

**44**    The Act provides for two distinct processes in respect to the joining of municipalities. One, that under s. 358, is essentially adjudicative in nature. Under it, municipalities may apply to the Board for a hearing to determine whether amalgamation would be "in the best interests of the inhabitants of the affected area" (s. 363(1)). The second, under s. 372, is heavily political in nature. Under that process, the Minister must recommend to the Governor in Council the creation of a regional municipality and it is the Governor in Council which determines whether one will be formed. The consent of the municipalities involved and the support of the electors in the area, as expressed through a plebiscite, are also required.

**45**    In my opinion, there is no genuine conflict or inconsistency between a union of municipalities resulting from the "adjudicative" process under s. 358 and one resulting from the "political" process under s. 372.

**46**    According to the Town, a successful s. 358 amalgamation application would result in a regional municipality; consequently, the Board would have exceeded its jurisdiction. It says that if any form of amalgamation is authorized under s. 358, it would be that of one municipality with any other municipality or municipalities, but not all the municipalities in a county. The last would result in a single municipal unit with authority over the entire county. That, the Town submits, is a regional municipality and the only way to create that entity is through s. 372 which calls for a political process entirely removed from the Board.

**47**    The difficulty with this argument is that the two provisions have different objectives and concern different aspects of municipal amalgamation. By definition, s. 358 cannot be used to create a regional municipality. An order pursuant to that provision does not result in a "regional municipality" as that term is defined in the Act. It is s. 372 that must be used to create such a municipality. Quite simply, whatever similarities the outcome of a successful s. 358 application for amalgamation may have to a regional municipality, it is not a regional municipality. Moreover, it is not recognized as a regional municipality. As will be seen in the passage later in this decision dealing with equalization grants, there are practical implications which depend on whether the amalgamated entity was formed under s. 358 or s. 372.

**48**    In my respectful opinion, the situation here is not one to which the internal coherence principle applies. The provisions do not conflict and they are not inconsistent with one another. What they do, is overlap. Each sets out a method whereby municipalities may seek to be combined. Professor Sullivan states at p. 264:

When two provisions are applicable without conflict to the same facts, it is

presumed that each is meant to operate fully according to its terms. So long as overlapping provisions can apply, it is presumed that they are meant to apply. The only issue for the court is whether the presumption is rebutted by evidence that one of the provisions was intended to provide an exhaustive declaration of the applicable law.

**49**    There was no evidence before the Board or the court that s. 372, which deals with the creation of regional municipalities, was intended to be exhaustive. Both it and s. 358 contemplate the merger of two or more municipalities. Nothing in the wording of s. 358 suggests that amalgamations, pursuant to its terms, were to be limited as the Town urges. Furthermore, a plain reading of s. 372 does not disclose any prohibition against an amalgamation of all the municipalities in a county pursuant to s. 358. I am not persuaded that s. 372, which pertains to regional municipalities, was intended to exclude s. 358, which specifically refers to amalgamations, from having any application or a restricted application with respect to amalgamations.

**50**    In my view, the Board did not err in failing to rely upon the presumption of coherence or in determining that the Act allows for the combining of municipal units by two different methods.

Dissolution of the Town

**51**    Section 394 of the Act provides:

> A town may be dissolved upon application to the Board by
>
> (a)    the Minister;
> (b)    the council of the town; or
> (c)    ten percent of the electors of the town.

The Town argues that a town cannot be amalgamated with another municipality, since this would result in its dissolution contrary to s. 394, which it maintains is the sole method for the dissolution of a town.

**52**    An amalgamation does result in the loss of the identities of the amalgamating entities and their continuation as a new one. In MacPump Developments Ltd. v. Sarnia (City) (1994), 20 O.R. (3d) 755, the Ontario Court of Appeal stated:

> [38] The word "amalgamation" does not admit of a single meaning. Used in the corporate law context, an amalgamation may extinguish old entities and create new entities in their place, or it may blend those pre-existing entities and continue them under the auspices of the new amalgamated entity. The effect of a particular amalgamation depends on the purpose the amalgamation is intended to promote as discerned by an examination of the agreement or statute bringing about the amalgamation: R. v. Black & Decker Manufacturing Co., [1975] 1

S.C.R. 411; 1 N.R. 299, at pp. 416-418; Witco Chemical Co. v. Oakville (Town), [1975] 1 S.C.R. 273; 1 N.R. 453, at pp. 281-283. In my view, the same assessment must be made where amalgamation occurs in the municipal law context: Municipal Act, R.S.O. 1990, c. M-45; s. 7, Interpretation Act, R.S.O. 1990, c. I-11, s. 27(a).

[39] In pursuing the purpose underlying the statutory amalgamation of two former municipalities, it is important to focus on the overall thrust of the relevant legislation rather than on isolated words in specific provisions. When I read the Sarnia-Lambton Act as a whole and, in particular, those provisions specifically relating to the amalgamation of Old Sarnia and Clearwater, I am satisfied that it was intended that the two former municipalities should be rolled into one and continued as a single undertaking. In the language of Dickson, J., in Black and Decker, supra, at p. 421, "the end result is to coalesce to create a homogeneous whole." Or to use the words of Kelly, J.A., in Stanward Corp. v. Denison Mines Ltd., [1966] 2 O.R. 585 (C.A.), at p. 592, the legislative intent was "to provide that what were hitherto two shall continue as one."

See also Rogers, The Law of Canadian Municipal Corporations, Vol. 1 (Toronto: Carswell, 2003) which states at p. 71:

... An "amalgamation" has been defined as a fusion of two or more legal entities into a continued new union with the obligations, by-laws and assets of the former municipalities ...

**53**    I am, however, not convinced that because the proposed amalgamation will result in the dissolution of the Town, the Board exceeded its jurisdiction by considering the Municipality's amalgamation application.

**54**    After all, s. 358 begins "Municipalities may be amalgamated ..." and, as set out earlier, the term "municipality" is defined at s. 3(aw) to "mean ... a town." The Town's argument that s. 394 prevents amalgamations involving towns completely fails to acknowledge or to apply the statutory definition to the term "municipality" as established by the Legislature in the Act.

**55**    As to the Town's submission that there is no precedent for the dissolution of a town being brought about by the amalgamation application made pursuant to s. 358 this, of course, is nothing more than the natural consequence of the fact that the Municipality's application for amalgamation is apparently the first under that provision.

**56**    The Town then argues that the matter falls under the principle of construction that, within a statute, special provisions prevail over general ones. It says that consequently, s. 358 which deals with amalgamations should give way to s. 394 which deals with the dissolution of a town. Professor

Sullivan set out the principle thus at p. 273:

> Implied exception (generalia specialibus non derogant). When two provisions are in conflict and one of them deals specifically with the matter in question while the other is of more general application, the conflict may be avoided by applying the specific provision to the exclusion of the more general one. The specific prevails over the general; it does not matter which was enacted first.

**57**   In my view, there is no conflict such as that put forward by the Town. Sections 358 and 394 have different purposes. The purpose of the former is to permit the Board to hear applications for the amalgamation or annexation of municipalities. The purpose of the latter is to permit it to hear applications for the dissolution of a town. As discussed earlier, an amalgamation results in the loss of the identities of the amalgamating entities and their continuation as a new one. Again, a conflict arises only if one refuses to ascribe to the term "amalgamation" in s. 358 its plain and ordinary meaning and refuses or fails to apply the statutory definition given to the term "municipality."

**58**   In the result, I am not satisfied that the Board exceeded its jurisdiction because a s. 358 amalgamation would result in the dissolution of the Town.

Irrelevant Factors

**59**   According to the Town, the Board considered irrelevant factors in reaching its preliminary conclusion that amalgamation, rather than annexation, was in the best interests of the inhabitants of the area and thus exceeded its jurisdiction. In particular, the Town says that the Board took into account the existence of the Village of Havre Boucher, and eligibility for equalization funding under the Municipal Grants Act, supra. I will address each in turn.

(a)   The Village of Havre Boucher

**60**   In order to appreciate the Town's argument regarding the Village, it would be helpful to set out the effect of the incorporation of a regional municipality and an order for the amalgamation of all municipalities in a county as it pertains to the Village. In the former situation, the "municipal governments" in the area to be incorporated as a regional municipality are dissolved and their assets and liabilities are vested in the regional municipality (s. 379(1) and (2) of the Act). Since Havre Boucher Village Commission comprises a "municipal government" under s. 3(ar) of the Act, it would be automatically dissolved following the establishment of a regional municipality.

**61**   However, an amalgamation does not have the same effect. In that situation, the Board would have the discretion to determine whether the Village Commission should be dissolved or affected in any another way. Section 363(3) which relates to orders for amalgamation and annexation provides that:

363(3) An order of the Board may

(a)    adjust assets and liabilities among those affected by the order as the Board considers fair;

(b)    annex, amalgamate, continue or dissolve boards, commissions, villages and service commissions and allocate their assets as the Board considers fair; and

(c)    require compensating grants for a period of not more than five years from a benefiting municipality to a municipality that loses assessment as a result of an order. (Emphasis added)

**62**    The Town takes the position that the Board relied heavily upon the continued existence of the Village of Havre Boucher in deciding that it had jurisdiction to consider amalgamation, when that was an irrelevant factor. It points to the following passage in its decision:

> para. 68 Thus, an amalgamated municipal structure clearly falls outside the scope of a regional municipality as contemplated in s. 379(1), since the Village Commission, a "municipal government" as defined in s. 3(ar), does not automatically collapse into a new amalgamated municipal unit. Upon the creation of a regional municipality, a village commission is automatically dissolved, without exception, and its assets and liabilities are assumed by the new municipal entity (s. 379). There is no discretion to do otherwise in the case of a regional municipality. Thus, in the opinion of the Board, the existence of the Havre Boucher Village Commission, and the conflicting operation of ss. 363(3)(b) and 379, prove fatal to the Town's argument. (Emphasis added)

**63**    However, it is clear from its decision that, in the Board's assessment, the possibility of the Village Commission's continuing existence was nowhere near determinative. It stated that even if that were not the case, its decision would have been the same. At para. 86, the last and summary paragraph of its consideration of the jurisdiction issue, the Board wrote:

> The Board has found that the result of an amalgamation under s. 358 is that, unlike under s. 372, Havre Boucher may continue to exist. Even if this were not so, however, the Board also considers that while a similar result (i.e., combining the municipal units) may be achieved by two different avenues under the Act, that does not mean that the result should only be achieved by using one of the methods, to the exclusion of the other. The Board considers that nothing, explicit or implicit, in the legislation compels such a conclusion, nor does any principle of statutory interpretation of which it is aware ... (Emphasis added)

**64**    The Board did not rely upon the existence of the Village Commission, as urged by the Town, in making its determination.

(b)     Equalization Funding

**65**    The second irrelevant factor the Town claims the Board considered in rendering its decision, relates to entitlement to equalization grants under the Municipal Grants Act, supra. At para. 70 of its decision, the Board stated:

> In addition to the impact upon village commissions, the Board notes a second clear distinction between the proposed amalgamated unit and a regional municipality, which relates to the resulting unit's eligibility for equalization funding under the Municipal Grants Act, R.S.N.S. 1989, c. 302. While a regional municipality clearly qualifies for funding as a Class 1 entity under s. 9(1)(a) of the Act, it appears that an amalgamated body comprising all municipalities within a county would not automatically attract similar treatment. Using the example cited above, the Municipality of the County of Victoria (which comprises the only municipality within Victoria County) is designated as a Class II municipality under the Municipal Grants Act, s. 9(1)(b). A different funding formula applies to a county municipality. While the issue of equalization could be a topic of discussion between provincial and municipal officials in the event of amalgamation ... it appears doubtful that an amalgamated unit would be treated in like fashion to a regional municipality under the present legislative structure for equalization funding. (Emphasis added)

**66**    This was not, as the Town submits, improper speculation on the part of the Board as to the level of funding which a new amalgamated entity might receive nor inappropriate reliance on the provisions of the Municipal Grants Act, supra to determine its jurisdiction to consider an application for amalgamation under s. 358 of the Act. The Town was arguing before the Board that the Municipality's amalgamation application would result in a regional municipality. Parts XVI and XVII of the Act and the provisions of the Municipal Grants Act could be argued as indications that the Legislature intended to treat "regional municipalities" as special entities in certain respects. Moreover, s. 9(5)(e) and (f) of the Interpretation Act, supra requires consideration of "the consequences of a particular interpretation." Taking these factors in combination into account, I am not persuaded by the Town's argument that the Board erred in considering the Municipal Grants Act and funding availability.

Disposition

**67**    The standard of review of the Board's decision in respect to its jurisdiction to hear an application pursuant to s. 358 of the Act is that of correctness. Not having been persuaded that it erred in finding that it had such jurisdiction, I would dismiss the appeal. This being an appeal of a tribunal decision, there will be no award of costs.

L.L. OLAND J.A.
 Concurred in:

G.B. FREEMAN J.A.
T.A. CROMWELL J.A.

cp/e/qw/qlmxf/qljxl/qlsxs