# Index No. 9

1999 WL 1953263 Page 1
[2000] B.P.I.R. 456 Official Transcript [2000] B.P.I.R. 456 Official Transcript
**(Cite as: 1999 WL 1953263)**

Friday 15th October, 1999

**In the Matter of Glen Express Limited v**

No. 7270 of 1998

High Court of Justice Chancery Division

Mr. Justice Neuberger

**Representation**

- Miss R. Ismail (instructed by Messrs. Kingsford Stacey) appeared on behalf of the Applicant.
- Mr. S. Prentis (instructed by Messrs. Eyton Morris Winfield, Northampton) appeared on behalf of the First Respondent.
- Mr. R. Reed (instructed by Messrs. Butcher Burns) appeared on behalf of the Second and Third Respondents.

**JUDGMENT**

MR. JUSTICE NEUBERGER:

This is an application by the liquidator on Glen Express Ltd. ("the company"), against Mr. Ronald Peiris, a former director of the company, for payment of just under £100,000 on the basis that that sum was due on the directors' loan account of the company at the time it went into liquidation pursuant to a resolution made on 29th May last year.

There were three issues, one of which has been conceded. The first issue was whether Mr. Peiris was liable for this money, subject to this case on the other two issues. That point has been conceded by Mr. Peiris and I say no more about it. The second issue is whether the liquidator has established the precise sum said to be owing. In relation to that issue it seems to me that the liquidator has to establish his case on the balance of probabilities, and, applying that test, I am easily satisfied that this sum was owing. It is undisputed that as at 30th September, 1997, the balance on the directors' loan account was £62,729. The basis for contending that a larger sum is now due is that, since that time, the company's own records of movements in its nominal ledger up to 6th April, 1998, showed that there was slightly more (some £3,000) owing to the company on Mr. Peiris's loan account nine days before 29th May 1998. Mr. Peiris has not called any oral evidence or produced any documents, and although he has given evidence, he has not challenged the amount claimed. I am quite satisfied that subject to his argument on the third issue, to which I now turn, Mr. Peiris is liable for this sum.

Mr. Peiris's third argument is that he had a right of set-off such that the whole of his liability for the sum of just under £100,000 is extinguished. The right of set-off arises out of Rule 4.90 of the Insolvency Rules 1986, which provides: "(1)This Rule applies where, before the company goes into liquidation there have been mutual credits, mutual debts or other mutual dealings between the company and any creditor of the company providing or claiming to prove for a debt in the liquidation. "(2)An account shall be taken of what is due from each party to the other in respect of the mutual dealings, and the sums due from one party shall be set off against the sums due from the other."(3)Sums due from the company to another party shall not be included in the account take under paragraph (2) if that other party had notice at the time they became due that a meeting of creditors had been summoned under section 98 or (as the case may be) a petition for the winding up of the company was pending."(4)Only the balance (if any) of the account is provable in the

© 2011 Thomson Reuters.

09-50026-mg    Doc 12438-9    Filed 05/24/13    Entered 05/24/13 17:52:45    Index 9 Pg 3 of 6

1999 WL 1953263                                                                                                Page 2
[2000] B.P.I.R. 456 Official Transcript [2000] B.P.I.R. 456 Official Transcript
**(Cite as: 1999 WL 1953263)**

liquidation. Alternatively (as the case may be) the amount shall be paid to the liquidator as part of the assets". The effect of that rule was considered authoritatively by the House of Lords in Stein v. Blake [1996] 1 AC 243. In his speech, with which the other members of the House of Lords agreed, Lord Hoffmann also considered the duty of the liquidator to estimate the value of certain debts pursuant to Rule 4.86, which provides: "(1)The liquidator shall estimate the value of any debt which, by reason of its being subject to any contingency or for any other reason, does not bear a certain value; and he may revise any estimate previously made, if he thinks fit by reference to any change of circumstances or to information becoming available to him.He shall inform the creditor as to his estimate and any revision of it."(2)Where the value of a debt is estimated under this Rule, or by the court under section 168(3) or (5), the amount provable in the winding up in the case of that debt is that of the estimate for the time being".The effect of the decision in Stein v. Blakeis that, in insolvency, set-off (a) is mandatory, (b) is pound for pound, (c) is self-executing, (d) operates from the date of insolvency, (e) is to be operated with the benefit of hindsight, so that contingencies which have matured after that date can be properly taken into account and (f) is not dependent on proofs of debt being lodged.

The basis for Mr. Peiris's claim that he has a valid set-off in respect of the whole of the sum claimed arises from the fact that the company borrowed money from the Bank of Ceylon ("the bank"), and Mr. Peiris guaranteed the company's liability to the bank in respect of this account and, indeed, provided security for his guarantee. At the time the company went into liquidation the bank was owed, it would appear, some £170,000 for which it lodged a proof of debt in the normal form, recording that it had the benefit of a guarantee from Mr. Peiris and that it had the benefit of security of three properties which he owned to support the guarantee.

Mr. Peiris has not paid the bank pursuant to his guarantee, nor has he yielded any of the properties secured to the bank in respect of any of the money due from the company to the bank. I have a copy of a letter dated 18th October, 1999, to Mr. Peiris from the bank stating that if he does not pay the amount due to the bank by the end of October 1999, i.e. in some ten days time, the bank "will be compelled to initiate legal action to recover the dues". Apart from the money it claims from Mr. Peiris, the company appears to have no significant assets whatever, according to the evidence of the liquidator.

In those circumstances Mr. Peiris's case is as follows. First, it is clear that the bank will look to him for the payment of the whole of the £170,000. Secondly, he will have to pay the bank the whole of that sum or a substantial proportion. Thirdly, by paying to the bank the sum of £170,000 or thereabouts, he will be subrogated as guarantor of the company's liability to the bank and become a creditor of the company. Fourthly, as a result, he will have a claim against the company which significantly exceeds the claim which the company has against him. Fifthly, in those circumstances the rule of set-off would apply (see Rule 4.90 and Stein v. Blake). Sixthly, in these circumstances, both as a matter of law and as a matter of common sense, he is clearly a contingent creditor of the company. Seventhly, his contingent claim is virtually the whole of the £170,000. Eighthly, he should accordingly be exonerated from liability by the rules of set-off. Ninthly, it would be ridiculous, and unfair if the fact that he has not paid the bank the sums which he is undoubtedly going to have to pay means that he has no right of set-off whatever, whereas if he had paid the bank, at any rate by 28th May 1998, he would undoubtedly have a right of set-off.

On the face of it and viewed from Mr. Peiris's angle, that argument looks, as a matter of principle and commercial reality, formidable. However, the point that is made by Miss Roxanne Ismail, who appears on behalf of the liquidator, is that it is well established that, subject to what the 1986 Insolv-

© 2011 Thomson Reuters.

ency legislation expressly provides, there is a fundamental and overriding principle, namely the rule against double proof. In particular, she says that that rule serves to prevent a guarantor, who has not paid off the creditor of the company, being treated as somebody who is entitled to proof. In other words, only once the guarantor has paid is he entitled to proof. She contends that that submission is supported by the unanimous decision of the Court of Appealin In re Fenton [1931] 1 Ch 85. Consideration of the judgments in that case show different members of the Court of Appeal putting forward somewhat different reasons for their conclusion, but they all appear to me to be agreed on one particular reason, namely the reason against double proof. In his judgment, Lord Hanworth, Master of the Rolls, said at p.109:

"There is another rule which is well founded in bankruptcy, the rule against a double proof. The substance of it is expressed by Mellish L.J. in In re Oriental Commercial Bank (1): 'the true principle is, that there is only to be one dividend in respect of what is in substance the same debt, although there may be two separate contracts'. Now the debt in respect of which the set-off is claimed is the debt in respect of which the banks have a right of proof against the Association. They have a right under s.65 and the rules to come in an tender a proof at any time before a dividend is declared an to be admitted to prove, subject to certain limits imposed by the rules. If two of the banks have not yet exercised their full rights of proof, that is because there appears to be nothing for the unsecured creditors to receive, but their right of proof exists. If the trustee of Fenton's estate were allowed to set off the debt due to the banks which Fenton guaranteed, he would exercise that right in respect of the same debt for which the largest creditor bank has already proved, and the other two can prove. It would in effect be a double proof. But it would be more: it would be an allowance to Fenton's estate in full of a debt due to another which Fenton has not paid himself; with the result that Fenton's general creditors would benefit to the extent of the debt which is primarily due from the Association to the banks. The rule, therefore, against double proof also prevents Fenton's trustee from setting off this liability of Fenton's to the banks which has not crystallized into a debt due to Fenton". Lawrence L.J. said at p.114:

"The reason why, in my opinion, such a claim … cannot be set off is because so long as the estate of the principal debtor remains liable to the principal creditor the surety will not be permitted to prove against the estate of the principal debtor, as such a proof would be a double proof for the same debt, and would therefore be inadmissible as being contrary to the established rule in bankruptcy". In a pithy observation Romer L.J. said to much the same effect at p.120:

"The only reason why Fenton is prevented from proving his claim is that his claim is in respect of the same debt as is that of the banks, and as between him and the banks the latter have the prior right of proof".

Mr. Peiris's argument falls foul of that principle, unless he can in some way get round it. Two arguments have been put forward on his behalf by Mr. Sebastian Prentis. The first is that the rule against double proof cannot, at least in circumstances such as the present, survive the clear code in the 1986 Insolvency legislation and especially Rule 4.90 which has been so fully considered by Lord Hoffmann. In my judgment there is nothing in the reasoning and nothing that necessarily flows from the reasoning of Lord Hoffmann in Stein v. Blaketo lead to the conclusion that In re Fentonis no longer good law. Stein v. Blakewas not concerned in, and did not in any way involve, the rule against double proof.

I am fortified in that conclusion by two text books. The first is **Set Off** by Rory Dereham, second edition, 1996, where he considers the principles relating to double proof at p.226–230 and cites Re Fenton as still being good law (see for instance at p.229 note 38 and p.227 note 22). Even more

© 2011 Thomson Reuters.

09-50026-mg    Doc 12438-9    Filed 05/24/13    Entered 05/24/13 17:52:45    Index 9
Pg 5 of 6

1999 WL 1953263                                                                                                                  Page 4
[2000] B.P.I.R. 456 Official Transcript [2000] B.P.I.R. 456 Official Transcript
**(Cite as: 1999 WL 1953263)**

tellingly, **Rowlatt on Principle and Surety**, fifth edition, 1999, considers in some detail, and summarises, the effect of Stein v. Blake in paragraph 11–20 and then turns to say this at paragraph 11–21:

"Where the surety has made no actual payment to the creditor, he cannot set-off his contingent liability as at the relevant date against debts due to the principal. This is despite the fact that the surety' debt arises out of mutual dealings and is otherwise a provable debt. This was decided by Re Fenton on the basis that such set-off would infringe the rule against double proof since it was always open to the creditor to prove". Despite the identity of the editors of **Rowlatt on Principle and Surety**, it is possible that that passage could be per incuriam, but I have reached the conclusion that the rule against double proof remains good law. It is an overarching principle which still applies to insolvency, and nothing in Stein v. Blake calls it into question.

The second argument raised by Mr. Prentis is that the provisions of rule 4.86 of the Insolvency Rules should apply not merely to valuing Mr. Peiris's claim as a contingent creditor liable under the guarantee, but to the bank's claim. He says that the bank's debt should not be treated as valued at £170,000, as one would have thought it should at first sight, but, because the bank has the benefit of a guarantee supported by security**** that debt, and I quote from rule 486(1):

"By reason of its being subject to any contingency or for any other reason does not bear a certain value". Mr. Prentis says that the value of £170,000, which one would prima facie ascribe to the debt, should be scaled down to take into account the fact that it is in practice secured, albeit that he does not pretend that vis-a-vis the company the bank can be treated as a secured creditor — quite rightly, in the light of the way in which s.248 of the Insolvency Act 1986 is worded.

Ingenious though that argument is, and although it may have obvious attraction to a person in Mr. Peiris's unfortunate position, I cannot accept that argument either. First of all, it does not seem to me to give the natural meaning to the words:

"The value of any debt which by reason of its being subject to any contingency or for any other reason does not bear a certain value". Secondly, it appears to me to be impractical in its effect. As Miss Ismail points out, it would involve a liquidator in a case such as this having to investigate the value of Mr. Peiris's covenant and the value of the property he has provided by way of security. Investigations as to Mr. Peiris's solvency and otherwise may be relatively easy in his particular case, but one can easily imagine many circumstances in which they would be burdensome and difficult or even impossible. Thirdly, it appears to me that valuing a debt in this way could often involve the value of the debt as against the company depending on the solvency of the company. The more solvent the company, the greater the value of the debt. That itself seems to have a commercially unattractive and illogical circularity about it. If the creditor would normally expect to receive 3p in the pound, the debt on Mr. Prentis's argument would be scaled down very substantially so he would only receive a tiny proportion, whereas if the company was solvent the debt may well be valued at a great deal more than if it was insolvent. That seems to me a curious result.

Accordingly, I must reject the contentions put forward on behalf of Mr. Peiris. While I do have some sympathy with his argument of unfairness, it does seem to me that that sympathy should be limited. He was the person controlling the company. He could have ensured that the Bank was paid off on or before 28th May 1988 before the company was put into liquidation. Wisdom of hindsight is a fine thing, but it does seem to me that he could have protected himself. Unfortunately for him, he did not do so. In these circumstances I conclude that the claim brought by the liquidator against Mr. Peiris succeeds in full.

MISS ISMAIL: My Lord, I have got a straightforward application for costs then.

© 2011 Thomson Reuters.

1999 WL 1953263
[2000] B.P.I.R. 456 Official Transcript [2000] B.P.I.R. 456 Official Transcript
**(Cite as: 1999 WL 1953263)**

Page 5

MR. PRENTIS: Which, in a straightforward manner, I cannot resist.

MR. JUSTICE NEUBERGER: I do not think you can, no. Thank you very much. If I am going to assess costs in one I should assess costs in the other.

MISS ISMAIL: My Lord, that is what I was going to ask. I do not have a schedule either.

MR. JUSTICE NEUBERGER: Perhaps you would all liaise.

MISS ISMAIL: We can all liaise.

MR. JUSTICE NEUBERGER: Fine. Thank you very much.
END OF DOCUMENT

© 2011 Thomson Reuters.