Hearing date and time: June 26, 2013, 9:45 a.m.
Objection deadline: June 21, 2013

PREET BHARARA
United States Attorney
  for the Southern District of New York
By:    David S. Jones
        Natalie N. Kuehler
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, NY  10007
Tel.: (212) 637-2800
Fax: (212) 637-2730
david.jones6@usdoj.gov
natalie.kuehler@usdoj.gov

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
                                                 :
In re                                          :        Chapter 11 Case No.
                                                 :
MOTORS LIQUIDATION COMPANY, *et al.*,  :        09-50026 (REG)
        f/k/a General Motors Corp., *et al.*     :
                                               :
                          Debtors.           :        (Jointly Administered)
                                               :
-----------------------------------------------------------------x

**JOINT MOTION OF THE UNITED STATES OF AMERICA AND THE STATE OF
NEW YORK FOR AN ORDER APPROVING
THE CONSENT DECREE AND SETTLEMENT AGREEMENT REGARDING
NATURAL RESOURCE DAMAGE CLAIMS BETWEEN
THE GENERAL UNSECURED CREDITORS' TRUST, THE UNITED STATES OF
AMERICA, AND THE STATE OF NEW YORK**

**PRELIMINARY STATEMENT**

       The United States of America, on behalf of the United States Department of the Interior

("**DOI**" or the "**Settling Federal Agency**"), by its attorney, Preet Bharara, United States

Attorney for the Southern District of New York, hereby moves this Court, jointly with the State

of New York as co-trustee for natural resources, for an order approving under applicable

environmental laws the consent decree (the "**NRD Consent Decree**") by and among the United

States, the State of New York (collectively, "**Settling Trustee Parties**"), and the General Unsecured Creditors' ("**GUC**") Trust, the successor to debtor Motors Liquidation Company (f/k/a General Motors Corporation, hereafter, "**MLC**"), its affiliated debtors, and its successors, as debtors (collectively, the "**Debtors")**.  The NRD Consent Decree with April 8, 2013 notice of lodging in this Court is annexed as Exhibit 1 hereto, and a proposed order granting the requested relief is annexed as Exhibit 2 hereto.

As explained below, no Rule 9019 motion is required for this $5.5 million settlement agreement because previous Court orders authorize the GUC Trust to enter settlement agreements that are for amounts less than $50 million without obtaining the Court's approval under Bankruptcy Rule 9019.  The Court's approval is required, however, under federal environmental laws.  Such approval is warranted here.

Under the NRD Consent Decree, the Settling Trustee Parties will be granted allowed natural resource damages ("**NRD**") claims in the total amount of $5,500,000 ("**Onondaga NRD Allowed Claim**").  However, through assertion of a defense in separate tax refund litigation brought against the United States by the "New" General Motors Company (the so-called "New" GM) to which no Debtor or successor is a party, the United States has secured authorization to apply $1,232,323 held by the United States that would otherwise be due to New GM to partially satisfy amounts owed to the United States as a result of the claims being settled through the NRD Consent Decree.  The NRD Consent Decree credits this amount against the allowed claim amount, such that, for distribution purposes, the Settling Trustee Parties will be allowed a general unsecured claim in the combined total amount of $4,267,677, and will receive distributions pursuant to the confirmed Plan of Liquidation based on that amount.

2

As required by the environmental laws, notice of the proposed NRD Consent Decree was published in the Federal Register, and the public comment period has expired. *See* 78 *Fed. Reg.* 22295-96 (Apr. 15, 2013). The United States received no comments concerning the proposed NRD Consent Decree, and believes that the settlement is fair, reasonable, and in the public interest. The United States therefore requests that the Court approve the NRD Consent Decree.

The function of the Court in reviewing such motions is not to substitute its judgment for that of the parties to the proposed Agreement, but to confirm that the terms of the proposed Agreement are "fair and adequate and are not unlawful, unreasonable, or against public policy." *United States v. Hooker Chem. & Plastics Corp.*, 540 F. Supp. 1067, 1072 (W.D.N.Y. 1982), *aff'd*, 749 F.2d 968 (2d Cir. 1984). The Court should also confirm that the proposed Settlement Agreement is consistent with CERCLA's goals. *See United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1426 (6th Cir. 1991). Finally, in conducting its review, the Court should be deferential to the United States' determination that the settlement is in the public interest. *See United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990). Accordingly, for the reasons set forth herein, the United States respectfully requests that this Court approve and enter the proposed NRD Consent Decree lodged with this Court on April 8, 2013.

## I. GENERAL STATUTORY/FACTUAL BACKGROUND

### A. Statutory Background

Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act ("**CERCLA**"), 42 U.S.C. §§ 9601-9675, to provide a framework for cleanup of the nation's worst hazardous waste sites. The primary goal of CERCLA is to protect and preserve public health and the environment from the effects of releases or threatened releases of hazardous substances to the environment. *See Voluntary Purchasing Groups, Inc. v. Reilly*, 889

F.2d 1380, 1386 (5th Cir. 1989); *Dedham Water Co. v. Cumberland Farms Dairy, Inc.*, 805 F.2d 1074, 1081 (1st Cir. 1986); *New York v. Shore Realty Corp.*, 759 F.2d 1032, 1040, n.7 (2d Cir. 1985).

Section 107(f) of CERCLA, 42 U.S.C. § 9607(f)(2), provides for the designation of governmental trustees who may assert claims for **NRD** on behalf of the public, seeking recovery of assessment and restoration costs necessitated by releases of hazardous substances. DOI is the relevant federal natural resource trustee for the site covered under the proposed NRD Consent Decree; the State of New York is a joint trustee along with DOI at the site at issue.[1] Under CERCLA section 107(f), potentially responsible parties ("**PRPs**") are liable for natural resource damages and assessment costs incurred and to be incurred by natural resource trustees where such damages and/or costs are caused by the PRP's release of hazardous substances to the environment.

Section 107(a) of CERCLA, 42 U.S.C. § 9607(a), permits the Federal and State Trustees to recover natural resource damages, including assessment and restoration costs, from PRPs. Pursuant to Section 107(a), PRPs include the owners and operators of Superfund sites at the time of the disposal of hazardous substances at the sites, the current owners and operators of Superfund sites, as well as the generators and transporters of hazardous substances sent to Superfund sites. *See United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 722 (2d Cir. 1993); *O'Neil*, 883 F.2d at 178; *United States v. Monsanto*, 858 F.2d 160, 168-171 (4th Cir. 1988). Section 107(a) of CERCLA creates strict, joint and several liability where environmental harm is

---

[1] The Onondaga Nation is also a joint trustee at the site at issue, but previously withdrew its only proof of claim and is not, and need not be, a party to this settlement agreement or motion.

4

indivisible. *See Alcan Aluminum Corp.*, 990 F.2d at 722. The United States and the State of New York asserted claims against Debtors under this provision and/or analogous state laws.

Having created the liability system and enforcement tools to allow the United States to pursue responsible parties for Superfund cleanups, Congress expressed a strong preference that the United States settle with responsible parties in order to avoid spending resources on litigation rather than on cleanup. *See* 42 U.S.C. § 9622(a).[2] CERCLA encourages settlements by, *inter alia*, providing parties who settle with the United States protection from contribution claims for matters addressed in the settlement. *See* 42 U.S.C. § 9613(f)(2). This provision provides settling parties with a measure of finality in return for their willingness to settle.[3]

**B.    Overview of NRD Claims at Issue; the Parties' Settlement Negotiations, Drafting and Lodging of the Consent Decree; and Public Notice and Comment Period (During Which No Comments Were Received)**

The United States filed a timely claim (Claim No. 64064, superseded by a second federal proof of claim (Claim No. 71118)) that presented numerous federal environmental claims, and included NRD claims for restoration and/or assessment costs at six sites. NRD claims at five of these six sites were resolved by a previous settlement (ECF No. 10453). The instant Consent

---

[2] *See also United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1184 (3d Cir. 1994); *United States v. Akzo Coatings of America, Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991); *In re Cuyahoga Equipment Corporation*, 980 F.2d 110 (2d Cir. 1992) (citing *City of New York v. Exxon Corp.*, 697 F. Supp. 677, 693 (S.D.N.Y. 1988)); *United States v. Cannons Engineering Corp.*, 899 F.2d 79, 92 (1st Cir. 1990); *United States v. DiBiase*, 45 F.3d 541, 545-46 (1st Cir. 1995); H.R. Rep. No. 253, pt. 1, 99th Cong., 1st Sess. 80 (1985), *reprinted in* 1986 U.S. Code Cong. & Ad. News 2862.

[3] *Cannons Engineering*, 899 F.2d at 92; *O'Neil v. Picillo*, 883 F.2d 176, 178-79 (1st Cir. 1989); *United Technologies Corp. v. Browning-Ferris Industries, Inc.*, 33 F.3d 96 (1st Cir. 1994); H.R. Rep. No. 253, pt. 1, 99th Cong., 1st Sess. 80 (1985), *reprinted in* 1986 U.S. Code Cong. & Ad. News 2862.

Decree resolves NRD claims at the one remaining unresolved site. The claims seeking restoration for natural resource damages are joint with the State of New York as co-trustee, which also timely filed an NRD claim (Claim No. 50636). The Trustees also sought reimbursement for their past costs of natural resource damage assessment ("**NRDA**").

All parties to the NRD Consent Decree engaged in intensive, arms'-length negotiations concerning the NRD claims at issue, assisted by experts in natural resource damage issues. The parties reviewed and debated the significance of, among other things, available technical data and environmental and biological studies at the relevant sites, as well as other relevant literature and studies that shed light on issues raised at the site. Negotiations involved repeated in-person meetings and many telephone conferences spanning more than one year. Ultimately, the parties concluded that the negotiated resolution represented a reasonable compromise of the parties' respective positions and the asserted strengths and weaknesses of the NRD claims at the site. The parties then negotiated the precise wording of the NRD Consent Decree document itself.

On April 8, 2013, the United States lodged the NRD Consent Decree with this Court (Dkt. No. 12382, copy annexed hereto as **Exhibit "1"**) and the proposed settlement was subject to a 30-day public comment period following the April 15, 2013 publication of notice of the Settlement Agreement in the *Federal Register*. *See* 78 Fed. Reg. 22295-96 (Apr. 15, 2013). The public comment period concluded on May 15, 2013. No comments were received.

**C.     Terms of the NRD Consent Decree**

Under the NRD Consent Decree, the United States and New York State will receive what would be a General Unsecured Claim in the total amount of $5.5 million in satisfaction of MLC's NRD obligations at the Onondaga Lake NPL Site ("**Settled NRD Site**"); however, as explained *supra* at 2, through separate litigation against non-Debtor party New GM, the United

6

States has obtained a right to offset $1,232,323 that the United States otherwise would owe to New GM to partially satisfy the amounts that give rise to the NRD Consent Decree here. Accordingly, the NRD Consent Decree recognizes this recovery as reducing the total amount owed as a general unsecured claim on account of the settlement to $4,267,677 ($5.5 million less the $1,232,323 offset recovery). Of this amount, New York State is to receive a general unsecured claim distribution based on an allowed claim amount of $10,000 on account of the State's past costs at the site; the remaining $4,257,677 is allowed for distribution purposes to the United States as a general unsecured claim with distributions to be credited to a joint NRDAR account administered by DOI to fund restoration activities at the site. Of the United States' offset recovery, $85,000 will compensate DOI for its past costs at the site, and the remainder will be credited to a specified NRDAR account to be used, along with the distributions on account of the settlement's $4,257,677 unsecured claim component, to fund restoration activities at the site.

In the NRD Consent Decree, the Settling Trustee Parties covenant not to sue Debtors with respect to NRD claims ("**Settled NRD claims**") at the Settled NRD Site, and the Settling Trustee Parties' proofs of claim with respect to the NRD at the Settled NRD Site will be deemed satisfied upon completion of distributions on account of the allowed claims. The Settling Trustee Parties reserve all other claims against the GUC Trust other than with respect to the settled NRD claims. The GUC Trust covenants not to sue the Settling Trustee Parties concerning the NRD claims at the Settled NRD Site. Further, the NRD Consent Decree affords contribution protection pursuant to 42 U.S.C. § 9613(f)(2). *See* NRD Consent Decree ¶¶ 21, 22.

Additional specific provisions of the NRD Consent Decree are as follows. For claims register purposes only, because the Settling Trustee Parties jointly administer the restoration funds being recovered and both the United States and the State of New York asserted claims for

7

this joint purpose, the Onondaga NRD Allowed Claim shall be reflected as a $2,787,500 allowed claim for the United States on behalf of DOI, and a $2,712,500 allowed claim for the State of New York on behalf of the New York Department of Environmental Conservation ("**DEC**"). These amounts differ solely because the United States' past costs at the site exceed those of the State of New York by $75,000.  Distributions, however, will be made as described in the above paragraph of this motion (and in the consent decree itself, whose terms govern in the event of any conflict with the summary contained in this motion).  Distributions other than on account of DOI's and the State of New York's past costs will go to a specified DOI NRDAR account that will be jointly managed by the Joint Onondaga Trustees (the Department of Interior, New York State, and the Onondaga Nation), and the funds and interest earned thereon will be used for restoration activities at or in connection with the Settled NRD Site as directed by the Joint Onondaga Trustees.  The United States continues to reserve any additional right of offset that is or becomes available pursuant to § 5.7 of Debtors' Plan of Liquidation.  DOI and the State of New York need only credit the amounts actually received on account of this settlement to the Settled Onondaga NRD Site account, and any resulting reduction in the liability of any non-settling potentially responsible party is limited to the amount actually received on account of the claim, and not to the full allowed claim amount if that amount exceeds the amount received.

Simultaneous with the initial distribution on account of the Onondaga NRD Allowed Claim, the GUC Trust is authorized to eliminate the distribution reserve amount to be used by the GUC Trust pursuant to Article VII of the Plan for remaining unresolved general unsecured claims asserted in the United States' and the State of New York's proofs of claim. The NRD Consent Decree by its terms is to be effective upon approval by the Court.

D.      **Status of United States Environmental Claims Against and Settlements With Debtors**

The NRD Consent Decree settles the last outstanding unsecured environmental claim asserted by the United States against Debtors in proof of claim No. 64064 or the superseding claim No. 71118.  The other monetary claims asserted against Debtors in those proofs of claim have been previously settled.

## II.  ARGUMENT

### THE COURT SHOULD APPROVE THE NRD CONSENT DECREE

A.      **Statement of Relief Requested**

The United States, jointly with the State of New York (the other Settling Trustee Party), moves for approval under the environmental laws of the NRD Consent Decree.

B.      **Jurisdiction**

This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.      **The Relief Requested Should Be Approved by the Court**

The GUC Trust, at the time the NRD Consent Decree was executed, had authority to enter into settlements where, as in here, the total settlement amount is less than or equal to $50 million.  *See* Order Pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) Authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish Procedures for Settling Certain Claims (ECF No. 4180) (the "**Settlement Procedures Order**") (authorizing pre-Effective Date Debtors to settle claims for less than $50 million upon notice to and non-objection by the Unsecured Creditors' Committee); Confirmation Order ¶ 31

9

(ECF No. 9941) (eliminating requirement for notice to and non-objection by Unsecured Creditors' Committee). A consent decree and settlement agreement negotiated by the United States to protect the public interest, however, is subject to judicial review under federal environmental laws.

Under the environmental laws, approval of a settlement agreement is a judicial act committed to the informed discretion of the Court. *See In re Cuyahoga.*, 908 F.2d at 118; *Cannons Eng'g*, 720 F. Supp. at 1035. Judicial review of a settlement negotiated by the United States to protect the public interest is subject to special deference; the Court should not engage in "second-guessing the Executive Branch." *Cannons Eng'g*, 899 F.2d at 84; *see In re Cuyahoga*, 980 F.2d at 118 (noting the "usual deference given" to the government environmental agency (there, the Environmental Protection Agency); *New York v. Solvent Chem. Corp.*, 984 F. Supp. 160, 165 (W.D.N.Y. 1997) ("This Court recognizes that its function in reviewing consent decrees apportioning CERCLA liability is not to substitute its judgment for that of the parties to the decree but to assure itself that the terms of the decree are fair and adequate and are not unlawful, unreasonable, or against public policy." (internal quotation marks omitted)). An evidentiary hearing is not required in order to evaluate a proposed CERCLA consent decree because such hearings would frustrate the statutory goal of expeditious settlement; hearing requests are therefore routinely and properly denied. *See United States v. Charles George Trucking Inc.*, 34 F.3d 1081, 1085 (1st Cir. 1994); *Cannons Eng'g*, 899 F.2d at 94. This "limited standard of review reflects a clear policy in favor of settlements." *Solvent Chem. Corp.*, 984 F. Supp. at 165.

As discussed below, the Court should approve the NRD Consent Decree because it is fair, reasonable, in the public interest, and furthers the goals of CERCLA. *See Charles George Trucking*, 34 F.3d at 1084; *Cannons Eng'g*, 899 F.2d at 85; *Solvent Chem. Corp.*, 984 F. Supp. at

166; *Hooker Chem.* 540 F. Supp. at 1073 ("the task has been to examine the proposal and determine whether it is a fair and adequate settlement and whether its implementation will reflect concern for the problems for which Congress has enacted the various environmental statutes.").

The merit of this application is highlighted by the fact that no one has commented on (much less objected to) the proposed NRD Consent Decree during a 30-day public notice and comment period, despite its having been published in the Federal Register and also having been publicly docketed since April 8, 2013 in a highly visible bankruptcy that is followed widely in the environmental and bankruptcy bar.

### 1. The NRD Consent Decree Is Fair

The fairness criterion of a CERCLA settlement integrates both procedural fairness and substantive fairness. *Cannons Eng'g*, 899 F.2d at 86-88. To measure procedural fairness, the Court "should ordinarily look to the negotiation process and gauge its candor, openness, and bargaining balance." *Id.* at 86. The proposed NRD Consent Decree is procedurally fair because it was negotiated at arm's length over more than one year, with good faith participation by governmental actors and parties who were represented by experienced counsel, and with the assistance of technical experts on matters such as estimating the extent and cause of ecological and associated harms and the cost of future restoration activities. *See id.* at 87 (finding a CERCLA settlement procedurally fair based on criteria including an arms-length negotiation, experienced counsel, and good faith participation by settling agency).

To measure "substantive" fairness, the Court considers whether the settlement is "based upon, and roughly correlated with, some acceptable measure of comparative fault, apportioning liability . . . according to rational (if necessarily imprecise) estimates of how much harm each PRP has done." *Id.* at 87; *see also United States v. Davis*, 261 F.3d 1, 24 (1st Cir. 2001);

11

*Charles George Trucking*, 34 F.3d at 1087; *DiBiase*, 45 F.3d at 544-45.  The proposed NRD Consent Decree is substantively fair because the amount of the allowed claim for the site at issue was determined by considering actual assessment costs, the parties' best estimates of ecological and associated harms and resulting restoration needs and costs, and Debtors' estimated percentage allocation or fair share of liability for each site.   Often, these estimates were determined after extensive discussions with environmental experts and/or agency technical personnel responsible for the sites.  The amount of the allowed claim for each site therefore represents a substantively fair resolution of the Debtors' liabilities taking into account the uncertainties and litigation risks involved.

    **2.**    **The NRD Consent Decree Is Reasonable**

Courts evaluating the reasonableness of CERCLA settlements have considered three factors: (i) technical adequacy of the work to be performed; (ii) satisfactory compensation to the public; and (iii) the risks, costs, and delays inherent in litigation.  *See Charles George Trucking*, 34 F.3d at 1085; *Cannons*, 899 F.2d at 89-90; *see also United States v. Montrose Chemical Co.*, 50 F.3d 741, 746 (9th Cir. 1996) (Court evaluates whether CERCLA settlement is fair, reasonable, and consistent with CERCLA).

Although the first prong of the reasonableness inquiry is not at issue in this settlement, as the claims derive from past assessment costs as well as anticipated restoration work that will not be performed by the GUC Trust, the NRD Consent Decree satisfies the other, necessarily intertwined, considerations relevant to reasonableness.  As discussed above, the United States and the other Settling Trustee Party will receive Allowed General Unsecured Claims for NRD totaling $5.5 million, a portion of which will be recovered in full by the United States' application of a $1,232,323 offset recovery, with the remaining $4,267,677 receiving

distributions pursuant to the confirmed Plan of Liquidation as an allowed general unsecured claim. This total recovery will both compensate the State of New York and the United States for their past costs at the site (totaling $95,000), and fund natural resource restoration activities at the site.

These settlement terms compensate the public and further the goals of CERCLA's natural resource damage provision. *See* CERCLA § 107(a), (f), 42 U.S.C. § 9607(a), (f). Specifically, the NRD Consent Decree reasonably balances the extent of GUC Trust's liability, the Trustees' need to recover funds for restoration and to compensate for assessment costs, and the need to minimize the expense and potential further delay of protracted litigation. Accordingly, the proposed NRD Consent Decree is reasonable.

### 3. The NRD Consent Decree Is Consistent With the Goals of CERCLA

The primary goals of CERCLA are to "encourage prompt and effective responses to hazardous waste releases and to impose liability on responsible parties," and to "encourage settlements that would reduce the inefficient expenditure of public funds on lengthy litigation." *In re Cuyahoga*, 980 F.2d at 119. The NRD Consent Decree furthers these statutory goals. As discussed above, the proposed NRD Consent Decree accounts for past assessment costs and estimated restoration costs at the sites at issue. The settlement further meets CERCLA's statutory goal of providing final resolution of liability for settling parties. Moreover, the proposed NRD Consent Decree serves CERCLA's goal of reducing, where possible, the litigation and transaction costs associated with response actions by entering into settlements, as well as the public policy favoring settlement to reduce costs to litigants and burdens on the courts. *See Solvent Chem. Corp.*, 984 F. Supp. at 165; *Hooker Chem.*, 540 F. Supp. at 1072.

13

## **No Prior Request**

No prior request for the relief sought in this Motion has been made to this or any other Court.

WHEREFORE, the United States and the State of New York respectfully request entry of an order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
June 10, 2013

        PREET BHARARA
        United States Attorney for the
        Southern District of New York

        /s/ David S. Jones
By:  David S. Jones
      Natalie N. Kuehler
      Assistant United States Attorneys
      86 Chambers St., 3rd Floor
      New York, NY 10007
      Tel. (212) 637-2800
      Fax (212) 637-2730
      david.jones6@usdoj.gov
      natalie.kuehler@usdoj.gov

      ERIC T. SCHNEIDERMAN
      Attorney General

      /s/ Maureen F. Leary
By:  Maureen F. Leary
      Assistant Attorney General
      Chief, Toxics Section
      NYS Department of Law
      Environmental Protection Bureau
      The Capitol
      Albany, New York 12224-0341
      Tel.: (518) 474-7154
      Fax: (518) 473-2534
      maureen.leary@ag.ny.gov