**HEARING DATE AND TIME: August 1, 2013 at 10:30 a.m. (Eastern Time)**
**RESPONSE DEADLINE: July 25, 2013 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Lori L. Pines
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
  Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-------------------------------------------------------------x
                                    :
In re                               :        Chapter 11 Case No.
                                    :
MOTORS LIQUIDATION COMPANY, et al.,  :        09-50026 (REG)
        f/k/a General Motors Corp., et al.  :
                                    :
                Debtors.            :        (Jointly Administered)
                                    :
-------------------------------------------------------------x
```

### NOTICE OF HEARING ON MOTORS LIQUIDATION COMPANY GUC TRUST'S MOTION TO COMPEL ROGER L. THACKER, ROGER L. SANDERS, AND THOMAS J. HANSON TO PARTICIPATE IN MANDATORY MEDIATION WITH RESPECT TO CLAIM NO. 27105 PURSUANT TO THE SECOND AMENDED ADR ORDER

PLEASE TAKE NOTICE that upon the annexed Motion, dated June 28, 2013, of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), to compel Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson (collectively, the "**Claimants**") to participate in mandatory mediation with respect to Claim No. 27105 pursuant to the *Second Amended Order Granting Motion to Supplement Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation* (ECF No. 11777), all as more fully set forth in the Motion, a hearing (the

"**Hearing**") to consider the Motion will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **August 1, 2013 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

PLEASE TAKE FURTHER NOTICE that any responses to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the GUC Trust, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009 (Attn: Thomas Morrow); (iii) General Motors, LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Cadwalader, Wickersham & Taft LLP, attorneys for the United States Department of the Treasury, One World Financial Center, New York, New York 10281 (Attn: John J. Rapisardi, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer

Levin Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors,

1177 Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq.,

Robert Schmidt, Esq., Lauren Macksoud, Esq., and Jennifer Sharret, Esq.); (viii) the Office of

the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor,

New York, New York 10004 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's Office,

S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S. Jones,

Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the official

committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue, 35th Floor,

New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and

One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq.

and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A Professional

Corporation, attorneys for Dean M. Trafelet in his capacity as the legal representative for future

asbestos personal injury claimants, 2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:

Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); (xii) Gibson, Dunn & Crutcher LLP,

attorneys for Wilmington Trust Company as GUC Trust Administrator and for Wilmington Trust

Company as Avoidance Action Trust Administrator, 200 Park Avenue, 47th Floor, New York,

New York 10166 (Attn:  Keith Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust

Monitor and as the Avoidance Action Trust Monitor, One Atlantic Center, 1201 West Peachtree

Street, Suite 500, Atlanta, Georgia 30309 (Attn:  Anna Phillips); (xiv) Crowell & Moring LLP,

attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590 Madison

Avenue, 19th Floor, New York, New York 10022-2524 (Attn:  Michael V. Blumenthal, Esq.);

(xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard,

Austin, Texas 78703; (xvi) United States Department of Justice, Civil Division, Post Office Box

261, Ben Franklin Station, Washington DC 20044 (Attn: Paul Wogaman); and (xvii) Helmer,

Martins, Rice & Popham Co., L.P.A, attorneys for Roger L. Thacker, Roger L. Sanders, and

Thomas J. Hanson, 600 Vine St., Suite 2704, Cincinnati, Ohio 45202 (Attn: James B. Helmer,

Jr., Esq.), so as to be received no later than **July 25, 2013 at 4:00 p.m. (Eastern Time)** (the

"**Response Deadline**").

      **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Motion, the GUC Trust may, on or after the Response Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Motion, which order may be entered with no further notice or opportunity to be heard

offered to any party.

Dated: New York, New York
     June 28, 2013

                  /s/ Joseph H. Smolinsky
                  Harvey R. Miller
                  Stephen Karotkin
                  Joseph H. Smolinsky
                  Lori L. Pines

                  WEIL, GOTSHAL & MANGES LLP
                  767 Fifth Avenue
                  New York, New York 10153
                  Telephone: (212) 310-8000
                  Facsimile: (212) 310-8007

                  Attorneys for Motors Liquidation
                    Company GUC Trust

US_ACTIVE:\44282427\6\72240.0639

**HEARING DATE AND TIME: August 1, 2013 at 10:30 a.m. (Eastern Time)**
**RESPONSE DEADLINE: July 25, 2013 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Lori L. Pines
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
  Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

-----------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY GUC TRUST'S MOTION**
**TO COMPEL ROGER L. THACKER, ROGER L. SANDERS, AND THOMAS J.**
**HANSON TO PARTICIPATE IN MANDATORY MEDIATION WITH RESPECT**
**TO CLAIM NO. 27105 PURSUANT TO THE SECOND AMENDED ADR ORDER**

# TABLE OF CONTENTS

**Page**

Relief Requested .................................................................................................... 1

Jurisdiction ............................................................................................................ 3

Background ............................................................................................................ 3

    A.    The Thacker Claim ................................................................... 3

    B.    The ADR Order and ADR Procedures ...................................... 4

    C.    Designation of the Thacker Claim under the ADR Procedures ........................... 5

    D.    Claimants' Refusal to Participate in Mediation ....................... 5

The Thacker Claim is Subject to Mandatory Mediation Under the ADR Procedures .................. 6

In the Alternative, the Court Should Order the Claimants to Participate in the Alternative Dispute Resolution Process Under the Second Amended ADR Order .................................. 7

Notice ................................................................................................................... 9

Conclusion .......................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Nat'l Broad. Co., Inc. v. Bear Stearns & Co. Inc.*,
   165 F.3d 184 (2d Cir. 1999)........................................................................................8

**Statutes**

11 U.S.C. § 105(a) ......................................................................................................1, 8

11 U.S.C. § 362 ................................................................................................................3

28 U.S.C. § 157(b) ..........................................................................................................3

28 U.S.C. § 1334 .............................................................................................................3

31 U.S.C. § 3729. ............................................................................................................3

31 U.S.C. § 3730(b)(1) ...................................................................................................7

**Other Authorities**

General Order M-211 (Bankr. S.D.N.Y. Oct. 20, 2009)...................................................8

General Order M-390 (Bankr. S.D.N.Y. Dec. 1, 2009)..............................................1, 8

*Policy on the Use of Alternative Dispute Resolution*, 61 Fed.Reg. 36895, 36899 (1996)...............8

US_ACTIVE:\44282427\6\72240.0639

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

       The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the

above captioned debtors (collectively, the "**Debtors**") in connection with the *Debtors' Second*

*Amended Joint Chapter 11 Plan*, dated March 18, 2011 (as may be amended, supplemented or

modified from time to time, the "**Plan**"), respectfully represents:

**Relief Requested**

       1.     The GUC Trust seeks to enforce this Court's Second Amended ADR

Order (as hereinafter defined)[1] to compel claimants Roger L. Thacker, Roger L. Sanders, and

Thomas J. Hanson (collectively, the "**Claimants**"), who collectively filed Proof of Claim No.

27105 (the "**Thacker Claim**," annexed hereto as **Exhibit "B"**), to participate in mandatory

mediation as to the Thacker Claim.  Alternatively, if the Court determines that the Thacker

Claim is not currently subject to mandatory mediation under the terms of the Second Amended

ADR Order, the GUC Trust requests, pursuant to section 105(a) of title 11 of the United States

Code (the "**Bankruptcy Code**") and General Order M-390, the entry of an order requiring the

Claimants to mediate the Thacker Claim in accordance with the same terms and procedures set

forth in the Second Amended ADR Order.

       2.     While over 70,000 claims have been filed against the Debtors in these

chapter 11 cases, there are now just a few hundred unresolved claims remaining, the vast

majority of which are related to a single adversary proceeding currently pending before this

Court.  One of the largest remaining claims is the Thacker Claim, which was asserted in the

amount of $50 million.  Recognizing that the Thacker Claim may soon stand as an obstacle to the

winding-up of these estates, the GUC Trust has for some time been trying to resolve the Thacker

---

[1] A copy of the Second Amended ADR Order is annexed hereto as **Exhibit "A."**

Claim in an efficient and cost-effective manner that will not unduly delay the administration of these cases or cause the GUC Trust to continue reserving an excessive amount of distributable assets on its account.

3.    On May 14, 2013, the GUC Trust filed a motion (the "**Estimation Motion**")[2] requesting that the Thacker Claim be estimated if it is not consensually resolved by the hearing date for the Estimation Motion in early August.    As the GUC Trust indicated in the Estimation Motion, the GUC Trust believes it is in the interest of all parties that the Thacker Claim be resolved consensually.    For that reason, concurrent with the filing of the Estimation Motion, the GUC Trust designated the Thacker Claim for mediation pursuant to this Court's Second Amended ADR Order.    However, the Claimants have taken the position that the Thacker Claim is not subject to mandatory mediation under the alternative dispute resolution process authorized by this Court.    Counsel for the Claimants has indicated to the GUC Trust that their refusal to participate in any mediation is due to their belief that mediation is unlikely to result in a successful resolution of the Thacker Claim.

4.    While there can be no guarantee that any particular mediation will be successful, the success rate of the mediations in these cases has been exceedingly high to date. Furthermore, the Claimants can be assured based on the historical success rate that the GUC Trust will negotiate in good faith during mediation.    Regardless of whether the Claimants believe mediation should be pursued or whether the mediation will be successful, the GUC Trust submits that the Claimants are bound to participate in mandatory mediation pursuant to the Second Amended ADR Order.

---

[2] *Motors Liquidation Company GUC Trust's Motion to Estimate Proof of Claim No. 27105 Filed by Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson and Establish Procedures Thereto* (ECF No. 12427).

2

## Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### A.      The Thacker Claim

6.      On June 1, 2009, Motors Liquidation Company (f/k/a General Motors

Corporation) and certain of its affiliated Debtors commenced with this Court voluntary cases

under chapter 11 of the Bankruptcy Code, which cases were jointly administered under Case

Number 09-50026 (REG).

7.      On November 16, 2009, the Claimants, as relators under 31 U.S.C. §

3729, *et seq.* (the "**False Claims Act**"),[3] filed the Thacker Claim in the Debtors' chapter 11 cases

in the amount of $50 million.  The allegations underlying the Thacker Claim are also the subject

of a pending prepetition action that was initiated by the Claimants against the Debtors and

certain other defendants in the United States District Court for the Southern District of Ohio (the

"**Thacker Litigation**").[4]  The prepetition action has been stayed against the Debtors due to the

automatic stay under section 362 of the Bankruptcy Code, however, the prepetition action has

been ongoing against the other defendants.

8.      The Thacker Claim seeks damages and civil penalties that are allegedly

owed by the Debtors to the United States of America on account of certain purportedly false or

fraudulent claims made by the Debtors in seeking payment for the production of certain

---

[3] Under the False Claims Act, an action against a defendant may be initiated either by the federal government or a private individual, called a "relator," who brings an action in the government's name and who receives a portion of any recovery.

[4] *United States ex. rel. Sanders, et al. v. Allison Engine Company, et al.*, Case No. C-1-95-970 (S.D. Ohio). The lengthy procedural history of the prepetition action is described in more detail in the Estimation Motion (ECF No. 12427).

generator sets ("**Gen-Sets**") that are used to provide electrical power on certain of the United States Navy's ships from the Arleigh-Burke-class of guided missile destroyers.

**B.     The ADR Order and ADR Procedures**

9.     On February 23, 2010, the Bankruptcy Court entered an order (the "**ADR Order**")[5] authorizing the implementation of certain alternative dispute resolution procedures (as amended, modified or supplemented, the "**ADR Procedures**")[6] for these chapter 11 cases, including the implementation of mandatory mediation with respect to certain claims filed against the Debtors.  The ADR Order was subsequently amended pursuant to the orders entered by this Court on October 25, 2010 (the "**Amended ADR Order**") (ECF No. 7558) and June 4, 2012 (the "**Second Amended ADR Order**") (ECF No. 11777).

10.     The alternative dispute resolution procedures authorized by this Court have been highly successful to date and have resulted in the efficient and amicable resolution of hundreds of claims in a manner that conserves the judicial resources of the Court.  To ensure the success of the alternative dispute resolutions, Section II.F of the ADR Procedures provides that the Court may impose certain sanctions against a claimant that fails to comply with the ADR Procedures:

> F.   Failure to Comply with the ADR Procedures
>
> If a Designated Claimant or the GUC Trust fail to comply with the ADR Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the ADR Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in violation of the ADR Order or, with respect to a Designated Claimant, an abandonment of or failure to prosecute the Designated Claim, or both. Upon such findings, ***the Bankruptcy Court may, among other things,***

---

[5] *Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternate Dispute Procedures, Including Mandatory Mediation* (ECF No. 5037).

[6] The most recent version of the ADR Procedures is annexed to the Second Amended ADR Order as Exhibit "A."

US_ACTIVE:\44282427\6\72240.0639

*disallow and expunge the Designated Claim, in whole or part, or grant such other or further remedy deemed just and appropriate under the circumstances, including, without limitation, awarding attorneys' fees, other fees, and costs to the other party.*

While the GUC Trust is not at this time requesting the imposition of sanctions against the Claimants for failing to comply with the ADR Procedures, the GUC Trust reserves the right to later request such sanctions in the event that the Claimants persist in refusing to comply with the ADR Procedures.

### C.    Designation of the Thacker Claim under the ADR Procedures

11.    On May 15, 2013, the GUC Trust sent a notice (the "**ADR Notice**," annexed hereto as **Exhibit "C"**) to counsel for the Claimants, designating the Thacker Claim for alternative dispute resolution in accordance with the ADR Procedures.  The ADR Notice further made an opening settlement offer to the Claimants (the "**Opening Settlement Offer**").[7]  The ADR Notice should not have come as a surprise to the Claimants as the GUC Trust indicated its intention to mediate the Thacker Claim in the Estimation Motion.

### D.    Claimants' Refusal to Participate in Mediation

12.    By letter dated May 30, 2013 (the "**Claimants' Response to ADR Notice**," attached hereto as **Exhibit "D"**), Counsel for the Claimants responded to the ADR Notice by indicating that the Thacker Claim is not subject to mandatory mediation under the terms of the Amended ADR Order[8] and, therefore, the Claimants would not participate in

---

[7] Pursuant to the ADR Procedures, the GUC Trust is required to first submit an opening settlement offer to a holder a claim that has been designated for mediation.  Under the ADR Procedures, the only permitted responses by a claimant to an opening settlement offer are (i) acceptance of the settlement offer, or (ii) rejection of the settlement offer coupled with a counteroffer.  If the initial offer exchange process does not result in the successful resolution of a designated claim, nonbinding mediation ensues.  (ADR Procedures at 5).

[8] Counsel for the Claimants referenced the Amended ADR Order rather than the more recent Second Amended ADR Order because the ADR Notice that was sent by the GUC Trust to the Claimants had inadvertently referenced the Amended ADR Order rather than the Second Amended ADR Order.

5

mediation.   To support the position that the Thacker Claim is not subject to mandatory

mediation, the Claimants' rely upon the portion of the Amended ADR Order providing that the

ADR Procedures "shall not apply to claims filed by the United States of America or its agencies;

*provided, however*, nothing shall preclude the Debtors from seeking in the future by separate

motion alternative dispute resolutions in connection with any such claims."  As permitted but not

required under the ADR Procedures, the Claimants declined to submit any counteroffer to the

Opening Settlement Offer in an effort to solicit a higher offer from the GUC Trust.

13.     Notwithstanding the GUC Trust's belief that the Thacker Claim is subject

to mandatory mediation, the GUC Trust tried on multiple occasions to persuade the Claimants to

consensually participate in the alternative dispute resolution process without the need for judicial

intervention by this Court.  Despite the GUC Trust's attempt to reassure the Claimants that it

would negotiate in good-faith to obtain an efficient and consensual resolution of the Thacker

Claim, the Claimants ultimately maintained that it would not participate in mediation.

### The Thacker Claim is Subject to Mandatory Mediation Under the ADR Procedures

14.     In the first instance, the reliance by the Claimants on the exception in the

Amended ADR Order for claims "filed by the United States or its agencies" is misplaced given

that the exception was entirely removed in the Second Amended ADR Order, which now

governs the alternative dispute resolutions in these cases.  The removal of the exception in the

Second Amended ADR Order was consistent with the intent of the GUC Trust to broaden the

reach of the ADR Procedures to claims that were previously not subject to the ADR Procedures.

15.     Even if it were possible for the Claimants to avail themselves of an

exception found in the earlier Amended ADR Order, the exception relied upon by the Claimants

is, by its own terms, inapplicable to the Thacker Claim.  While the Amended ADR Order

provides an exception for claims "filed by the United States of America or its agencies," the

6

Thacker Claim was "filed by" the Claimants as opposed to the "United States of America or its agencies."

16.    In addition to being unsupported by the express language in the Amended ADR Order, there is no principled reason as to why the Thacker Claim should be excepted from the ADR Procedures.  It is not the case that participation by the Claimants in mediation will unduly burden the resources or consume the attention of the United States.  The False Claims Act alleviates the United States from such burdens by allowing private individuals, such as the Claimants, to prosecute claims on behalf of the United States in instances where the United States declines to do so itself.  Under the False Claims Act, the United States had the option, which it elected not to exercise, to take over prosecution of the Thacker Litigation.[9]  While the United States must, under the False Claims Act, later approve any proposed settlement between the Claimants and the GUC Trust,[10] the GUC Trust is not aware of any complicating issues that would cause the United States to heavily scrutinize any proposed settlement between the GUC Trust and the Claimants.  For these reasons, it is clear that the Thacker Claim is subject to mandatory mediation under the Second Amended ADR Order.

**In the Alternative, the Court Should Order the Claimants to Participate
in the Alternative Dispute Resolution Process Under the Second Amended ADR Order**

17.    Even if the Court determines that the Claimants are not currently required to participate in mandatory mediation, the Court should now order the Claimants to participate in mandatory mediation.  The Amended ADR Order itself qualifies the exception relied upon by the Claimants by providing that "nothing shall preclude the Debtors from seeking in the future by

---

[9] On May 5, 1999, the United States filed a notice of its election not to take over the prosecution of the Thacker Litigation.  The notice is annexed hereto as **Exhibit "E."**

[10] 31 U.S.C. § 3730(b)(1).

7

separate motion alternative dispute resolutions in connection with any such claims." (Amended

ADR Order at 3).

18.    General Order M-390, entered by this Court on December 1, 2009,

provides that the Court "may order assignment of a matter to mediation upon its own motion, or

upon a motion by any party in interest or the U.S. Trustee." In addition, section 105(a) of the

Bankruptcy Code grants bankruptcy courts authority to "issue any order, process, or judgment

that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. §105(a).

19.    The Second Circuit has recognized that there is a "strong federal policy

favoring arbitration [and mediation] as . . . alternative means of dispute resolution[s]." *Nat'l

Broad. Co., Inc. v. Bear Stearns & Co. Inc.*, 165 F.3d 184, 190 (2d Cir. 1999). This policy has

been embraced by this Court which previously noted in General Order M-211 that "the court

wishes to encourage and promote, at appropriate stages in bankruptcy proceedings, the use of

innovative, cost efficient, speedy methods of resolving disputes other than adjudication by a

presiding judge." [11] In fact, even the Department of Justice has adopted a policy of favoring the

use of alternative dispute resolution in cases involving the False Claims Act. *Policy on the Use

of Alternative Dispute Resolution*, 61 Fed.Reg. 36895, 36899 (1996) ("The nature of [False

Claims Act] cases indicate that they are good candidates for ADR mechanisms.").

20.    While there are several alternatives to mediation that the GUC Trust may

pursue to resolve the Thacker Claim, none of the alternatives are promising. While the

automatic stay may be lifted to permit the Thacker Claim to be liquidated in the venue in which

the Claimants' prepetition action is pending, there can be no assurance that any ensuing litigation

in that venue will be resolved without extended delay. Litigation between the Claimants and the

---

[11] General Order M-211 was subsequently amended by General Order M-390.

US_ACTIVE:\44282427\6\72240.0639

various defendants in the prepetition action has been pending for the past 18 years.  The GUC

Trust does not have the resources to engage in a long term ground war.  Furthermore, while the

GUC Trust could object to the Thacker Claim in this Court, resolving the Thacker Claim in that

manner is not preferable because it would likely require a time-consuming and expensive trial.

As such, the most promising option to resolving the Thacker Claim without delaying the final

administration of these cases is to have the Claimants participate in mediation so that a

consensual resolution can be achieved.  Failing that, the GUC Trust would proceed with the

Estimation Motion.

### Notice

21.    Notice of this motion has been provided  to the Claimants and parties in

interest in accordance with *the Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R.

Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May

5, 2011 (ECF No. 10183).  The GUC Trust submits that such notice is sufficient and no other or

further notice need be provided.

22.    No previous request for the relief sought herein has been made by the

GUC Trust to this or any other Court.

9

## Conclusion

WHEREFORE the GUC Trust respectfully requests the entry of an order

requiring the Claimants to participate in mandatory mediation in accordance with the Second

Amended ADR Order, as well as any such other and further relief as is just.

Dated: New York, New York
       June 28, 2013

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
Lori L. Pines

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
  Company GUC Trust

## EXHIBIT A

### Second Amended ADR Order

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                              :
In re                                         :          **Chapter 11 Case No.**
                                              :
**MOTORS LIQUIDATION COMPANY, ET AL**          :
                                              :          **09-50026 (REG)**
    **f/k/a General Motors Corp.,** *et al.*   :
                                              :
             **Debtors.**                :          **(Jointly Administered)**
                                              :
-------------------------------------------------------------x

## SECOND AMENDED ORDER PURSUANT TO 11 U.S.C. § 105(a) AND GENERAL ORDER M-390 AUTHORIZING IMPLEMENTATION OF ALTERNATIVE DISPUTE PROCEDURES, INCLUDING MANDATORY MEDIATION

Upon the Motion, dated February 13, 2012 (the "**Motion**"), [1] of the Motors

Liquidation Company GUC Trust (the "**GUC Trust**"), for an order, pursuant to section 105(a) of

title 11 of the United States Code and General Order M-390, to supplement the Amended ADR

Order (the "**Second Amended ADR Order**"); and the Court having determined that the relief

sought in the Motion is in the best interests of the GUC Trust, the Debtors' estates, creditors, and

all parties in interest and that the legal and factual bases set for in the Motion establish just cause

for the relief granted herein; and after due and proper notice of the Motion having been provided,

and it appearing that no other or further notice need be provided; and after consideration of all

response pleadings filed; and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the Amended ADR Order is supplemented as provided herein;

and it is further

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion and the modified ADR Procedures set forth in Exhibit "A" attached hereto.

ORDERED that the modified ADR Procedures set forth in Exhibit "A" attached hereto are approved as provided herein with respect to claims that assert liquidated amounts of $100,000 or more based on (a) personal injury claims; (b) wrongful death claims; (c) tort claims; (d) product liability claims; (e) claims for damages arising from the rejection of an executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code (excluding claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters); (f) patent claims; (g) indemnity claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions and excluding indemnity claims relating to asbestos liability); (h) lemon law claims, to the extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended (the "**MPA**"); (i) warranty claims, to the extent applicable under section 6.15 of the MPA; and (j) class action claims (collectively, the "**Designated Claims**"); and it is further

ORDERED that, annexed to this Second Amended ADR Order as **Exhibit "B"** is the schedule of mediators (the "**Schedule of Mediators**"); and it is further

ORDERED that, the GUC Trust from time to time may further modify the Schedule of Mediators by filing a revised Schedule of Mediators with this Court; and it is further

ORDERED that, the GUC Trust is authorized to waive the obligation to share costs of non-binding mediation in their sole discretion to the extent the Designated Claimant establishes, to the satisfaction of the GUC Trust, that sharing of such expenses would constitute a substantial hardship upon such Designated Claimant; and it is further

ORDERED that, within **three (3) business days** of entry of this Order, the GUC

Trust shall cause to be mailed a copy of this Order to all known holders of Patent Claims and

Lower Tier Claims; and it is further

ORDERED that the GUC Trust is authorized to take any and all steps that are

necessary or appropriate to implement the ADR Procedures with respect to the Designated

Claims, including, without limitation, by implementing any arbitration awards or settlements

with respect to Designated Claims achieved under the terms of the ADR Procedures; *provided,*

*howeve*r, that nothing in this Order or the ADR Procedures shall obligate the GUC Trust to settle

or pursue settlement of any particular Designated Claim; *further provided* that any such

settlements may be pursued and agreed upon as the GUC Trust believes are reasonable and

appropriate in its sole discretion, subject to the terms and conditions set forth in the ADR

Procedures; and it is further

ORDERED that, if litigation of an Unresolved Designated Claim in a forum other

than this Court is required for any of the reasons forth in Section II.E.3 of the ADR Procedures

(as determined by this Court), then the Stay shall be modified subject to the terms and conditions

set forth in Section II.E.4 of the ADR Procedures.  Any such modification of the Stay shall be

solely to the extent necessary to permit the liquidation of the amount of such Unresolved

Designated Claim in the appropriate forum.  If the GUC Trust fails to file a Notice of Stay

Modification or a Stay Motion for any reason with respect to an Unresolved Designated Claim,

as set forth in Section II.E.4 of the ADR Procedures, the Stay shall remain in effect with respect

to such Unresolved Designated Claim, and the Designated Claimant may seek a determination of

this Court regarding whether the Stay must be modified to permit litigation in a non-bankruptcy

forum as set forth in Section II.E.3 of the ADR Procedures; and it is further

3

ORDERED that nothing contained in this Second Amended ADR Order shall be deemed to preclude any party in interest from objecting to any Designated Claim to the extent such entity has standing to assert an objection in accordance with the Bankruptcy Code and applicable law; and it is further

ORDERED that nothing in the ADR Procedures, including the ADR Injunction set forth therein, shall preclude the holder of a Designated Claim from commencing or continuing an action against a non-debtor party; and it is further

ORDERED that Rule 408 of the Federal Rules of Evidence shall apply to all aspects of the ADR Procedures; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Second Amended ADR Order and the ADR Procedures.

Dated:  New York, New York
        *June 4, 2012*

                                         *s/ Robert E. Gerber*
                                         United States Bankruptcy Judge

# Exhibit A

# The ADR Procedures

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                          :
In re                                     :          **Chapter 11 Case No.**
                                          :
**MOTORS LIQUIDATION COMPANY,** *et al.,*  :          **09-50026 (REG)**
     **f/k/a General Motors Corp.,** *et al.*   :
                                          :
           **Debtors.**           :          **(Jointly Administered)**
                                          :
-------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION PROCEDURES

      The alternative dispute resolution procedures (the "**ADR Procedures**") adopted

upon the motion of the Motors Liquidation Company GUC Trust (the "**GUC Trust**") in the

chapter 11 cases of Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**")

and its affiliated debtors (collectively, the "**Debtors**"), are set forth below:

      **I.**     **CLAIMS SUBJECT TO THE ADR**
              **PROCEDURES AND ADR INJUNCTION**

     **A.**    **Claims Subject to the ADR Procedures**

      1.     The claims subject to the ADR Procedures (collectively, the "**Designated**

**Claims**") include any and all claims (other than an Excluded Claim as defined below) designated

by the GUC Trust under the notice procedures set forth below that assert or involve claims based

on one or more of the following theories of recovery, whether or not litigation previously has

been commenced by the claimant:  (a) personal injury claims; (b) wrongful death claims; (c) tort

claims; (d) product liability claims; (e) claims for damages arising from the rejection of an

executory contract or unexpired lease with a Debtor under section 365 of the Bankruptcy Code

(excluding claims for damages arising from the rejection of executory contracts that relate

primarily to environmental matters); (f) patent claims ("**Patent Claims**"); (g) indemnity claims

09-50026-reg Doc 11747-3 Filed 06/04/12 Entered 06/04/12 09:25:25 Exhibit A-B-C Pg 3 of 38

(excluding tax indemnity claims relating to leveraged fixed equipment lease transactions and excluding indemnity claims relating to asbestos liability); (h) lemon law claims, to the extent applicable under section 6.15 of the Master Sale and Purchase Agreement by and between the Debtors and NGMCO, Inc., dated as of June 1, 2009, and as amended (the "**MPA**"); (i) warranty claims, to the extent applicable under section 6.15 of the MPA; and (j) class action claims ("**Class Claims**").  Designated Claims that assert amounts between $100,000 and $500,000 shall be known as "**Lower Tier Claims**."  The GUC Trust may identify as a Designated Claim any proof of claim asserted in these cases, other than Excluded Claims as defined in Section I.B below, if the GUC Trust believes, in its business judgment and sole discretion, that the ADR Procedures would promote the resolution of such claim and serve the intended objectives of the ADR Procedures.

> 2.      The holders of the Designated Claims are referred to herein as the "**Designated Claimants**."

> B.      <u>**Excluded Claims**</u>

> The GUC Trust shall not identify as a Designated Claim any proof of claim within any of the following categories (collectively, the "**Excluded Claims**"):  (a) claims for which the automatic stay under section 362 of title 11 of the United States Code (the "**Bankruptcy Code**") was modified by prior order of this Court (the "**Bankruptcy Court**") to allow the litigation of the claim to proceed in another forum; (b) claims asserted in liquidated amounts of less than $100,000; (c) asbestos-related claims (including indemnity claims relating to asbestos liability); (d) environmental claims that constitute prepetition unsecured claims (including claims for damages arising from the rejection of executory contracts that relate primarily to environmental matters); (e) tax claims (excluding tax indemnity claims relating to leveraged fixed equipment lease transactions); and (f) claims subject to a separate order of the Bankruptcy Court providing

for arbitration or mediation.  Notwithstanding the foregoing, any of the Excluded Claims, any

disputed postpetition administrative expenses, and any claims or counterclaims asserted by the

GUC Trust may be submitted to the ADR Procedures by agreement of the GUC Trust and the

applicable claimant or by further order of the Bankruptcy Court.

### C.    The ADR Injunction

Subject to the provisions set forth in 11 U.S.C. § 362(b)(4) concerning police and

regulatory powers of a governmental unit or organization, upon service of the ADR Notice (as

defined below) on a Designated Claimant under Section II.A.1 below, such Designated Claimant

(and any other person or entity asserting an interest in the relevant Designated Claim) shall be

enjoined from commencing or continuing any action or proceeding in any manner or any place,

including in the Bankruptcy Court, seeking to establish, liquidate, collect on, or otherwise

enforce the Designated Claim(s) identified in the ADR Notice (collectively, the "**ADR**

**Injunction**") other than (1) through these ADR Procedures, or (2) pursuant to the Debtors'

Second Amended Joint Chapter 11 Plan (the "**Plan**").  The ADR Injunction shall expire with

respect to a Designated Claim only when that Designated Claim has been resolved or after the

ADR Procedures have been completed as to that Designated Claim.  Except as expressly set forth

herein or in a separate order of the Bankruptcy Court, the expiration of the ADR Injunction shall

not extinguish, limit, or modify the automatic stay established by section 362 of the Bankruptcy

Code or upon confirmation of the Plan (the "**Plan Injunction**"), and the automatic stay and the

Plan Injunction shall remain in place to the extent then in effect.  Nothing in these ADR

Procedures shall prevent the GUC Trust and the Designated Claimant from discussing at

mediation, or at any point prior to the expiration of the ADR Injunction, any police or regulatory

powers asserted by a Designated Claimant pursuant to 11 U.S.C. § 362(b)(4) or any other

asserted sovereign right.

3

## II.    THE ADR PROCEDURES

### A.    Offer Exchange Procedures

The first stage of the ADR Procedures will be the following offer exchange procedures, requiring the parties to exchange settlement offers and thereby providing an opportunity to resolve the underlying Designated Claim on a consensual basis without any further proceedings by the parties (the "**Offer Exchange Procedures**").  Rule 408 of the Federal Rules of Evidence shall apply to the ADR Procedures.  Except as permitted by Rule 408, no person may rely on, or introduce as evidence in connection with any arbitral, judicial, or other proceeding, any offer, counteroffer, or any other aspect of the ADR Procedures.

#### 1.    *Designation of Designated Claims and Settlement Offer by the GUC Trust*

(a)    At any time following the entry of an order approving the ADR Procedures, as applicable (the "**ADR Order**") and subject to the terms and conditions in Sections I.A and I.B above, the GUC Trust may designate a Designated Claim for resolution through the ADR Procedures by serving upon the Designated Claimant, at the address listed on the Designated Claimant's most recently filed proof of claim or amended proof of claim, as well as to any counsel of record in these cases for the Designated Claimant, the following materials (collectively, the "**ADR Materials**"):  (i) a notice that the Designated Claim has been submitted to the ADR Procedures (an "**ADR Notice**");[1] (ii) a copy of the ADR Order; and (iii) a copy of these ADR Procedures.  For transferred claims, the GUC Trust also will serve a copy of the ADR Materials on the transferee identified in the notice of transfer of claim.

---

[1] The form of the ADR Notice is attached hereto as **Annex 1** and incorporated herein by reference.  The GUC Trust anticipates that the ADR Notice will be substantially in the form of Annex 1; however, the GUC Trust reserves the right to modify the ADR Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

(b)     The ADR Notice will (i) advise the Designated Claimant that his or her

Designated Claim has been submitted to the ADR Procedures; (ii) request that the Designated

Claimant verify or, as needed, correct, clarify, or supplement, certain information regarding the

Designated Claim (including the addresses for notices under the ADR Procedures); and (iii)

include an offer by the GUC Trust to settle the Designated Claim (a "**Settlement Offer**").  The

ADR Notice also will require the Designated Claimant to sign and return the ADR Notice along

with the Claimant's Response (as defined in Section II.A.2 below) to the GUC Trust so that it is

received by the GUC Trust no later than twenty-one (21) days[2] after the mailing of the ADR

Notice (the "**Settlement Response Deadline**").

(c)     If the Designated Claimant fails to sign and return the ADR Notice or to

include a Claimant's Response (as defined below) with the returned ADR Notice by the

Settlement Response Deadline, (i) the Offer Exchange Procedures will be deemed terminated

with respect to the Designated Claim and (ii) the Designated Claim will be submitted to

nonbinding mediation.

2.     *The Claimant's Response*

The only permitted responses to a Settlement Offer (the "**Claimant's Response**")

are (i) acceptance of the Settlement Offer, or (ii) rejection of the Settlement Offer coupled with a

counteroffer (as further defined below, a "**Counteroffer**").  If the ADR Notice is returned

without a response or with a response that is not a permitted response, the Designated Claim

shall be treated as set forth in Section II.A.1(c) above.

---

[2] Bankruptcy Rule 9006(a) shall apply to all periods calculated in the ADR Procedures.

09-50026-reg    Doc 1777-3    Filed 06/04/12    Entered 06/04/12 09:25:25    Exhibit A B C    Pg 7 of 38

3.    *The Counteroffer*

The Counteroffer shall (i) provide all facts that substantiate the Designated Claim and that are sufficient for the GUC Trust to evaluate the validity and amount of the Designated Claim; (ii) provide all documents that the Designated Claimant contends support the Designated Claim; (iii) state the dollar amount of the Designated Claim (the "**Proposed Claim Amount**"), which may not (A) improve the priority set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim, or (B) exceed the lesser of the Claim Amount Cap (as defined in the ADR Order), if applicable, or the amount set forth in the Designated Claimant's most recent timely filed proof of claim or amended proof of claim (but may liquidate any unliquidated amounts expressly referenced in a proof of claim), with an explanation of the calculation and basis for the Proposed Claim Amount (the "**Proposed Claim Amount Explanation**"), which Proposed Claim Amount Explanation shall additionally include, without limitation, for Patent Claims, all documentation and any such other information evidencing and/or substantiating the actual calculation of the Proposed Claim Amount; and (iv) provide the name and address of counsel representing the Designated Claimant with respect to the Designated Claim, unless the Designated Claimant is a natural person, in which case the Designated Claimant shall either provide the name of such counsel or state that he or she is appearing without counsel.

The Counteroffer is presumed to offer the allowance of the Designated Claim as a general unsecured claim in the Proposed Claim Amount against the Debtor identified in the applicable proof of claim.  If the GUC Trust accepts the Counteroffer, the Designated Claimant shall not seek recovery from the GUC Trust of any consideration other than the consideration ultimately distributed to holders of other allowed general unsecured claims against the relevant

Debtor.  A Counteroffer may not be for an unknown, unliquidated, or indefinite amount or priority, or the Designated Claim shall be treated as set forth in Section II.A.1(c) above.

4.       *Consent to Subsequent Binding Arbitration*

As described in Sections II.B and II.C below, in the absence of a settlement at the conclusion of the Offer Exchange Procedures, Designated Claims shall proceed to nonbinding mediation and, if such mediation is unsuccessful, upon consent of the parties (including deemed consent based on prior contractual agreements), to binding arbitration.  A Designated Claimant is required to notify the GUC Trust whether it consents to, and thereby seeks to participate in, binding arbitration in the event that its Designated Claim ultimately is not resolved through the Offer Exchange Procedures and the nonbinding mediation.  A Designated Claimant shall make an election to either consent or not consent to binding arbitration by checking the appropriate box in the ADR Notice (an "**Opt-In/Opt-Out Election**").  Any Designated Claimant that does not consent to binding arbitration in its response to the ADR Notice may later consent in writing to binding arbitration, subject to the agreement of the GUC Trust.  Consent to binding arbitration, once given, cannot subsequently be withdrawn without consent of the GUC Trust.

5.       *The GUC Trust's Response to a Counteroffer*

The GUC Trust must respond to any Counteroffer within fifteen (15) days after their receipt of the Counteroffer (the "**Response Deadline**"), by returning a written response (as further defined below, each a "**Response Statement**").  The Response Statement shall indicate that the GUC Trust (a) accepts the Counteroffer; or (b) rejects the Counteroffer, with or without making a revised Settlement Offer (a "**Revised Settlement Offer**").

(a)      *Failure to Respond*

If the GUC Trust fails to respond to the Counteroffer by the Response Deadline, (i) the Counteroffer will be deemed rejected by the GUC Trust; (ii) the Offer Exchange

7

Procedures will be deemed terminated with respect to the Designated Claim; and (iii) the

Designated Claim will be submitted to nonbinding mediation.

      (b)    *Revised Settlement Offer*

      If the GUC Trust makes a Revised Settlement Offer by the Response Deadline,

the Designated Claimant may accept the Revised Settlement Offer by providing the GUC Trust

with a written statement of acceptance no later than ten (10) days after the date of service of the

Revised Settlement Offer (the "**Revised Settlement Offer Response Deadline**").  If the

Designated Claimant does not accept the Revised Settlement Offer by the Revised Settlement

Offer Response Deadline, the Revised Settlement Offer will be deemed rejected and the

Designated Claim automatically will be submitted to nonbinding mediation.

      (c)    *Request for Additional Information*

      The GUC Trust may request supplemental or clarification of information supplied

in the Designated Claimant's most recently filed proof of claim to assist in a good faith

evaluation of any particular Designated Claim.  If the GUC Trust requests additional information

or documentation by the Response Deadline, the Designated Claimant shall serve additional

information or documentation sufficient to permit the GUC Trust to evaluate the basis for the

Designated Claim (with the exception, in the Designated Claimant's sole discretion, of privileged

information or information prepared expressly in contemplation of litigation) so that it is

received by the GUC Trust within fifteen (15) days after such request.  If the Designated

Claimant timely responds, the GUC Trust shall have fifteen (15) days to provide an amended

Response Statement, which may include a Revised Settlement Offer as a counter to the

Counteroffer.  If the GUC Trust does not provide an amended Response Statement within this

period, or if the Designated Claimant fails to provide the requested information or documentation

within the time allotted, the Designated Claim will be submitted to nonbinding mediation.

      6.     _Offer Exchange Termination Date_

      Upon mutual written consent, the GUC Trust and a Designated Claimant may

exchange additional Revised Settlement Offers and Counteroffers for up to twenty (20) days

after the later of (a) the Revised Settlement Offer Response Deadline or (b) the expiration of the

applicable timeframes provided for in Section II.A.5(c) above with respect to requesting,

receiving, and responding to additional information or documentation.  Otherwise, the Offer

Exchange Procedures shall conclude and terminate on the earliest of the following (the "**Offer**

**Exchange Termination Date**"):  (i) the date upon which the Designated Claim automatically

advances to nonbinding mediation under the provisions set forth above; (ii) the date that any

settlement offer for a Designated Claim is accepted under the procedures set forth above; (iii) the

date upon which a Response Statement was served by the GUC Trust, if the GUC Trust notified

the Designated Claimant in their Response Statement of the GUC Trust's intention to proceed

directly to nonbinding mediation; or (iv) such earlier date as is agreed upon by the GUC Trust

and the Designated Claimant.

      7.     _Ability to Settle Claims_

      Nothing herein shall limit the ability of a Designated Claimant and the GUC Trust

to settle a Designated Claim by mutual consent at any time.  All such settlements shall be subject

to the terms of Section II.D.2 below.

      **B.**     **Nonbinding Mediation ("Mediation")**

      1.     _Mediation Notice_

      If the GUC Trust and the Designated Claimant do not settle the Designated Claim

through the Offer Exchange Procedures, the GUC Trust shall serve a notice of nonbinding

mediation, with a copy of the Designated Claimant's applicable proof(s) of claim attached, on

the Designated Claimant no later than thirty (30) days after the Offer Exchange Termination

Date, or as soon thereafter as is reasonably practicable.[3] The Mediation Notice will provide the

Mediation Location (as such term is defined in Section II.B.2 below).

2. _Location and Appointment of the Mediator_

Except for Lower Tier Claims and Patent Claims, Mediations shall be conducted

in either (i) New York, New York; (ii) Detroit, Michigan; (iii) Dallas, Texas; (iv) San Francisco,

California; or (v) Chicago, Illinois (collectively, the "**Mediation Locations**"), unless the parties

agree to a different location.  Except for Mediations involving Lower Tier Claims, within ten

(10) days after receiving the Mediation Notice, the Designated Claimant shall choose one of the

individuals identified in a list of mediators annexed to the Mediation Notice and corresponding

to the applicable Mediation Location to conduct the mediation (the "**Mediator**").

(a) _Patent Claims_

Mediations of Patent claims shall be conducted in Dallas, Texas, unless the parties

agree to a different location.  For Patent Claims, within ten (10) days after receiving the

Mediation Notice, the Designated Claimant shall choose the Mediator corresponding to the

applicable Mediation Location to conduct the mediation.

(b) _Lower Tier Claims_

Mediations of Lower Tier Claims shall be conducted at a location designated by

the GUC Trust, which location shall be within 200 miles of (i) the address listed on proof of

---

[3] The forms of Mediation Notice for Designated Claims and Designated Claims that are Lower Tier Claims are
attached hereto and incorporated herein by reference as **Annex 2** and **Annex 3**, respectively.  The GUC Trust
anticipates that the Mediation Notice will be substantially in the form of Annex 2 or Annex 3, as applicable;
however, the GUC Trust reserves the right to modify the Mediation Notice, as necessary or appropriate, consistent
with the terms of the ADR Procedures.

claim form for the Designated Claimant's most recently filed proof of claim, or (ii) the office of any counsel of record in these cases for the Designated Claimant holding a Lower Tier Claim, unless the parties agree to a different location (the "**Lower Tier Mediation Location**").  The GUC Trust shall be permitted to select the Mediator from one of the individuals identified in the list of mediators annexed to the Mediation Notice to conduct the mediation.  The GUC Trust shall be permitted to select the Mediator without regard to the Lower Tier Mediation Location.

      (c)    *Hardship*

      To the maximum extent practicable, the scheduling and location of Mediation sessions shall give due consideration to the convenience of the parties and the proximity of the Designated Claimant.  Notwithstanding the foregoing, within ten (10) business days after service of the Mediation Notice, the Designated Claimant may file a motion with the Bankruptcy Court, on notice to the GUC Trust and any previously appointed Mediator, for an order directing that the Mediation be conducted in a different location (a "**Hardship Motion**") if the Designated Claimant can demonstrate that traveling to any of the Mediation Locations presents a "substantial hardship;" *provided, however,* that (i) for each Mediation, except for Mediations of Lower Tier Claims, there shall be a rebuttable presumption that, absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant if the primary representative for such Designated Claimant resides in a location that is less than 750 miles from the Mediation Location or is less than a three-hour plane trip from the Mediation Location (based on typical commercial schedules for the fastest route, excluding any layovers); and (ii) for each Mediation of a Lower Tier Claim, there shall be a rebuttable presumption that, absent other extraordinary facts, there is no "substantial hardship" imposed on a Designated Claimant holding a Lower Tier Claim if the primary representative for such Designated Claimant resides in a

11

location that is within 200 miles or less of the Lower Tier Mediation Location. While a Hardship

Motion is pending, all deadlines under these ADR Procedures shall be suspended. If a Hardship

Motion is granted, any alternative location shall be determined by the Bankruptcy Court, taking

into account the convenience of the parties and any agreements reached by the parties. If the

location of the Mediation is changed, (i) any Mediator appointed in the original location may be

replaced by a Mediator in the new location, and (ii) the Bankruptcy Court may require that that

the GUC Trust and the Designated Claimant share the costs of the Mediation. Except for

Mediations involving Lower Tier Claims, the new Mediator shall be selected by mutual

agreement of the parties or by order of the Bankruptcy Court. For mediations involving Lower

Tier Claims, the new Mediator shall be selected by the GUC Trust.

3.       *Mediation Rules*

The Mediation of Designated Claims shall be governed by the Mediator's regular

procedures, except where expressly modified in the ADR Procedures. In the event of any

conflict, the ADR Procedures shall control. Any party to a Mediation that fails to participate in

good faith, on the terms described herein, may be subject to sanctions under Section II.F below.

(a)       *Impartiality and Qualifications of Mediators*

A person appointed as a Mediator must (i) be an impartial, neutral person; (ii)

have no financial or personal interest in the proceedings or, except when otherwise agreed by the

parties, in any related matter; and (iii) upon appointment, disclose any circumstances likely to

create a reasonable inference of bias. In the event a Mediator discloses circumstances likely to

create a reasonable inference of bias, such Mediator may be replaced at the written request of

either the GUC Trust or the Designated Claimant prior to the mediation.

(b)       *Fees and Costs for Mediation*

Except for Mediations involving Lower Tier Claims, for each Mediation conducted under these ADR Procedures, the Mediator selected to preside will be entitled to charge the mediation fees disclosed to, and agreed to by, the GUC Trust and the Designated Claimant. Unless the parties have expressly agreed otherwise in writing (either prepetition or postpetition) as part of an agreement to submit Designated Claims to Mediation, the Mediator's fees and the costs of any Mediation shall be shared equally by the GUC Trust and the Designated Claimant subject to the Sharing Cap (if applicable).

For each Mediation of a Lower Tier Claim conducted under these ADR Procedures, (i) the Mediator will be entitled to charge the mediation fees disclosed to, and agreed to by, the GUC Trust, and (ii) the Mediator's fees shall be borne by the GUC Trust.

For purposes of clarity, the costs referred to in this Section II.B.3.(b). shall not include travel expenses of the parties. All Designated Claimants shall be solely responsible for all travel expenses to participate in the Mediation of a Designated Claim.

(c)     *Pre-Mediation Briefing*

Unless the parties agree otherwise, on or before thirty (30) days prior to the scheduled Mediation, the Designated Claimant shall serve on the Mediator and the GUC Trust by electronic transmission or facsimile, at a minimum, and no later than by 6:00 p.m. (Eastern Time), a nonconfidential, pre-Mediation statement (the "**Opening Statement**") not to exceed fifteen (15) pages, excluding any attachments, setting forth all of the Designated Claimant's claims and identifying each and every cause of action or theory the Designated Claimant asserts, including a short and plain statement of the facts and law upon which the Designated Claimant relies for recovery and maintains entitle it to relief. The Designated Claimant shall include, as exhibits or annexes to the Opening Statement, all documents (or summaries of voluminous

documents), affidavits, and other evidentiary materials on which the Designated Claimant relies
(with the exception, in the Designated Claimant's sole discretion, of privileged information or
information prepared expressly in contemplation of litigation).  Unless the parties agree
otherwise, on or before fifteen (15) days after service of the Opening Statement, the GUC Trust
shall serve on the Mediator and the Designated Claimant, by electronic transmission or facsimile,
at a minimum, and no later than by 6:00 p.m. (Eastern Time), a nonconfidential response
statement (the "**Mediation Response Statement**") not to exceed fifteen (15) pages, excluding
attachments.  The Designated Claimant shall receive copies of all exhibits to the Mediation
Response Statement (with the exception, in the GUC Trust's sole discretion, of privileged
information or information prepared expressly in contemplation of litigation).  At the Mediator's
discretion and direction, the parties may submit additional, confidential letters or statements to
the Mediator, which shall receive "Mediator's-eyes-only" treatment.

      (d)    *The Mediation Session*

Unless otherwise agreed by the parties or as provided herein, the Mediation
session must occur no later than sixty (60) days after the date on which the Mediator is
appointed.  Unless otherwise agreed by the parties, the Mediation session is open only to the
parties and their respective counsel, and insurers (if any).

      (e)    *Treatment of Mediation Settlement*

If the Mediation results in a settlement of the Designated Claim, such settlement
shall be subject to the terms of Section II.D below.  If the Mediation of a Designated Claim does
not result in a settlement of the Designated Claim, the Designated Claim shall be subject to
Section II.C or II.E below.

      (f)    *Modification of the Mediation Procedures*

14

The Mediation procedures described herein may be modified upon the mutual written consent of the GUC Trust and the Designated Claimant.

**C.      Arbitration**

1.      *Binding Arbitration*

If the Designated Claimant and the GUC Trust have consented to binding arbitration under Section II.A.4 above, the Designated Claim will be arbitrated under the terms of this Section II.C if such claim is not resolved in the Offer Exchange Procedures or Mediation. If the Designated Claimant has expressly indicated that it does not consent to binding arbitration in its response to the ADR Notice and has not subsequently opted in to binding arbitration pursuant to Section II.A.4 above, the Designated Claim shall be resolved in the Bankruptcy Court by the GUC Trust's commencement of proceedings pursuant to the Bankruptcy Code, including without limitation, estimating or objecting to the Designated Claims. Any party to an arbitration that fails to participate in the arbitration in good faith, on the terms described herein, may be subject to sanctions under Section II.F below.

2.      *Arbitration Notice*

To initiate the arbitration process for a Designated Claim, the GUC Trust shall serve a notice of arbitration (the "**Arbitration Notice**"), with a copy of the Designated Claimant's applicable proof(s) of claim attached, on the Designated Claimant and the American Arbitration Association (the "**AAA**").[4]

---

[4] The form of the Arbitration Notice is attached hereto as **Annex 4** and incorporated herein by reference. The GUC Trust anticipates that the Arbitration Notice will be substantially in the form of Annex 4; however, the GUC Trust reserves the right to modify the Arbitration Notice, as necessary or appropriate, consistent with the terms of the ADR Procedures.

3.      *Arbitration Rules and Procedures*

For Designated Claims that are not designated by the GUC Trust as Complex

Designated Claims (as defined below), the arbitration of all Designated Claims shall be

conducted by a single arbitrator selected pursuant to the Commercial Arbitration Rules of the

AAA.  The arbitrator shall be governed by the commercial arbitration rules of the AAA then in

effect (the "**Arbitration Rules**"), except where the Arbitration Rules are expressly modified in

the ADR Procedures.[5]

The GUC Trust may, at its discretion, designate certain Designated Claims as

complex designated claims (the "**Complex Designated Claims**").  The arbitration of all

Complex Designated Claims shall be conducted by a panel of three arbitrators selected pursuant

to the Commercial Arbitration Rules of the AAA.  The AAA Procedures for Large, Complex

Commercial Disputes, in addition to the Commercial Rules of Arbitration, shall be used for

arbitration of all Complex Designated Claims; *provided, however*, unless otherwise agreed by the

parties, (i) the AAA shall appoint a panel of three (3) arbitrators, as provided in this Section and

Section II.C.3(g) and (ii) the arbitration hearing on a Complex Designated Claim must be held no

later than ninety (90) days after the date of appointment of the arbitrator(s), as provided in

Section II.C.3(k).  Finally, the AAA Supplementary Rules for Class Arbitrations shall also be

used for all Class Claims, including those related to class certification and the Class

Determination Award (as defined in Rule 5 of the AAA Supplementary Rules for Class

Arbitrations), except that the arbitrator(s) shall not make a Clause Construction Award (as

defined in Rule 3 of the AAA Supplementary Rules for Class Arbitrations), or determine that a

Class Claim is not arbitrable for failure for each class member to have entered into an arbitration

---

[5] In the event of any conflict between the Arbitration Rules and the ADR Procedures, the ADR Procedures shall
control.

agreement, the Court having specifically found that the ADR Procedures are applicable to Class

Claims notwithstanding the absence of a written agreement to arbitrate.[6]

> (a)   *Governing Law*

The ADR Procedures, as they relate to arbitration proceedings, are governed by

the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* (the "**Federal Arbitration Act**"), and the

enforceability of an arbitration award is governed by Section 9 of the Federal Arbitration Act,

except as modified herein.

> (b)   *Fees and Costs for Binding Arbitration; Sharing*

Unless the parties expressly have agreed otherwise in writing (either prepetition

or postpetition) as part of an agreement to submit claims to binding arbitration, the fees and costs

charged by the AAA and the arbitrator(s) shall be shared equally by the GUC Trust and the

Designated Claimant; *provided, however*, that the arbitrator(s), in the arbitrator(s)' sole

discretion, may assess fees and costs against any party that the arbitrator(s) finds to be abusing or

unduly delaying the arbitration process.  The AAA shall submit invoices to the Designated

Claimants and the GUC Trust according to the AAA's ordinary invoicing practices then in effect

and subject to the AAA's ordinary payment terms then in effect.  For purposes of clarity, these

costs shall not include travel expenses of the parties.

> (c)   *Impartiality and Qualifications of Arbitrators*

In designating the arbitrator in accordance with the procedures described below,

the AAA shall review the Arbitration Notice and the applicable Designated Claim.  Any person

appointed as an arbitrator must: (i) be an impartial, neutral person; (ii) be experienced (either

from past arbitrations or former employment) in the law that is the subject of the Designated

---

[6] In the event of any conflict between the AAA Supplementary Rules for Class Arbitrations and the ADR
Procedures, the ADR Procedures shall control.

Claim; (iii) have no financial or personal interest in the proceedings or, except when otherwise

agreed by the parties, in any related matter; and (iv) upon appointment, disclose any

circumstances likely to create a reasonable inference of bias.  In the event that an arbitrator

discloses circumstances likely to create a reasonable inference of bias, such arbitrator may be

replaced by the AAA at the written request of the GUC Trust or the Designated Claimant within

ten (10) days after such disclosure.

      (d)    *Time and Location of Arbitration Hearings*

All arbitration hearings shall be conducted in either (i) New York, New York; (ii)

Detroit, Michigan; (iii) Dallas, Texas; or (iv) San Francisco, California (collectively, the

"**Arbitration Locations**").  To the maximum extent practicable, the scheduling and location of

arbitration hearings shall give due consideration to the proximity of the Designated Claimant and

to the convenience of the parties to the Arbitration Location.  Within ten (10) days of

appointment, the arbitrator(s) shall conduct a preliminary hearing pursuant to AAA Commercial

Arbitration Rule 20.

      (e)    *Appeals of Arbitration Awards*

All arbitration awards shall be final and binding.  Other than the identities of the

GUC Trust and Designated Claimants, the claims register number(s) assigned to the applicable

arbitrated Designated Claims and the priority and dollar amounts of the Designated Claims as

awarded in the arbitration awards, and except as otherwise required by law or agreed upon by the

parties, all arbitration awards shall be treated as confidential.  No party shall have the right to

appeal an arbitration award except pursuant to the appeal provisions of the Federal Arbitration

Act, in which case any appeal must be to the United States District Court for the Southern

District of New York.  Any appeal shall be governed by the Federal Arbitration Act.  The parties

shall have ten (10) days from the date the arbitration award is served to appeal such award.

Failure to timely appeal shall result in the loss of any appeal rights. Once any appeal has

concluded or appellate rights are waived, the GUC Trust shall update the claims docket in their

chapter 11 cases accordingly and may file any notice of the liquidated amount of the Designated

Claim that they deem necessary or appropriate for such purpose.

(f)     *Modification of the Arbitration Procedures*

The arbitration procedures described herein may be modified only upon the

mutual consent of the GUC Trust and the Designated Claimant.

(g)     *Appointment of the Arbitrator*

Within 5 five days of receiving the applicable Arbitration Notice, the AAA shall

commence the following procedures for the appointment of arbitrator(s) (the "**Appointment of**

**Arbitrator(s) Procedures**") by concurrently sending by electronic transmission or facsimile, to

the GUC Trust and the applicable Designated Claimant, an identical list of the names of at least

eight (8) arbitrator candidates who meet the qualifications necessary for the matter.[7]  The GUC

Trust and the applicable Designated Claimant shall have seven (7) business days from the date

this list is served to (i) strike two (2) names from the proposed list, (ii) list the remaining names

in order of preference, and (iii) return the list to the AAA.  In the event that the Designated

Claim is not a Complex Designated Claim, the AAA shall appoint a single arbitrator from the

name(s) not stricken, giving consideration first to the preferences of the parties and second to

scheduling and the availability of the arbitrator.  In the event that the Designated Claim is a

Complex Designated Claim, the AAA shall appoint a panel of three (3) arbitrators from the

---

[7] If, for any reason, there are more than two parties to an arbitration, AAA shall identify a number of potential arbitrators equal to the number of parties, plus one, and the remaining selection proceedings shall otherwise govern. Affiliated entities are considered a single party for this purpose.

name(s) not stricken, giving consideration first to the preferences of the parties and second to the

scheduling and the availability of the arbitrators.  The AAA shall appoint the arbitrator(s) in

accordance with the Appointment of Arbitrator(s) Procedures within ten (10) business days of its

receipt of the applicable Arbitration Notice.

(h)     *Pre-Hearing Matters*

Unless otherwise agreed to by the parties, any pre-hearing issues, matters or

disputes (other than with respect to merits issues) shall be presented to the arbitrator(s)

telephonically (or by such other method agreed to by the arbitrator(s) and the parties) for

expeditious, final, and binding resolution.  Upon a party's request, the arbitrator(s) may order

that a substantive motion, such as a motion for summary judgment, be heard in person rather

than telephonically.  Any pre-hearing issue, matter, or dispute (other than with respect to merits

issues) must be presented to the arbitrator(s) not later than fifteen (15) days prior to the

arbitration hearing so as to permit the arbitrator(s) to review and rule upon the requests by

telephonic or electronic communication at least five days prior to the arbitration hearing.

(i)     *Discovery*

Unless the Designated Claim is a Complex Designated Claim, there shall be no

interrogatories.  Any requests for production of documents, electronically-stored information and

things ("**Document Requests**") shall be made in writing and shall be limited to no more than

twenty (20) requests, including discrete subparts.  Items requested in the Document Requests

must be produced within thirty (30) days after service of the Document Requests.  All documents

from discovery shall be confidential and shall not be (i) disclosed to any person or party not

participating in the arbitration proceeding or (ii) used for any purpose other than in connection

with the arbitration proceeding, except as provided herein.

(j)      *Pre-Arbitration Statement*

Unless otherwise agreed by the parties, on or before ten (10) days prior to the

scheduled arbitration hearing, each party shall submit to the arbitrator(s) and serve on the other

party or parties by overnight mail a pre-arbitration statement not to exceed fifteen (15) pages,

excluding any attachments.

(k)      *Arbitration Hearing*

Unless otherwise agreed by the parties and the arbitrator(s) or as provided herein,

the arbitration hearing on a Designated Claim must be held no later than ninety (90) days after

the date of appointment of the arbitrator(s).  The arbitration hearing is open only to the parties

and their respective counsel, insurers (if any), and witnesses.  Nonparty witnesses shall be

sequestered.  No posthearing briefs may be submitted, unless the arbitrator(s) requests briefs, in

which case such briefing shall be subject to the issues, timing, and page limitations the

arbitrator(s) imposes.  There shall be no reply briefs.

(l)      *Awards*

The arbitrator(s) shall issue a written, reasoned opinion and award (the

"**Arbitration Award**") within fourteen (14) days after the arbitration hearing.  The arbitrator(s)

shall not be compensated for more than eight hours of deliberations on and preparation of the

Arbitration Award for a Designated Claim.  Any Arbitration Award shall be an allowed general

unsecured nonpriority claim against the Debtor identified in the Arbitration Award (or if no

Debtor is identified in the Arbitration Award, the claim shall be deemed to be against the Debtor

identified in the Designated Claimant's applicable proof of claim included with the service of the

Arbitration Notice, unless otherwise ordered by the Bankruptcy Court).  The Arbitration Award

may not award a priority claim or otherwise determine the priority of the claim under the

Bankruptcy Code; *provided, however*, that, within thirty (30) days after the issuance of an

Arbitration Award, the Designated Claimant may seek relief from the Bankruptcy Court to

determine that some or all of the Arbitration Award is subject to treatment as a priority claim if

the Designated Claimant's applicable proof of claim filed as of the date of filing of the ADR

Order asserted an entitlement to such priority.  Further, no portion of a claim resulting from any

Arbitration Award shall be allowed to the extent that it consists of (a) punitive damages; (b)

interest, attorneys' fees, or other fees and costs, unless permissible under section 506(b) of the

Bankruptcy Code; (c) an award under any penalty rate or penalty provision of the type specified

in section 365(b)(2)(D) of the Bankruptcy Code; (d) amounts associated with obligations that are

subject to disallowance under section 502(b) of the Bankruptcy Code; (e) specific performance,

other compulsory injunctive relief, restrictive, restraining, or prohibitive injunctive relief or any

other form of equitable remedy; or (f) any relief not among the foregoing but otherwise

impermissible under applicable bankruptcy or nonbankruptcy law.  The GUC Trust shall have

the right within thirty (30) days after the issuance of an Arbitration Awards to file a motion

seeking relief from the Bankruptcy Court to enforce the preceding sentence and obtain the

disallowance of any portion of a claim included in an Arbitration Award in violation of clauses

(a) through (f) herein.  In all cases, the awarded claim shall be subject to treatment in the

Debtors' chapter 11 cases as set forth in the Debtors' Second Amended Joint Chapter 11 Plan, or

in such other applicable order of the Bankruptcy Court.  The entry of an Arbitration Award shall

not grant the Designated Claimant any enforcement or collection rights.

     **D.**     **Settlements of Designated Claims**

          1.     *Settlements Permitted at Any Stage of the ADR Procedures*

Designated Claims may be settled by the GUC Trust and a Designated Claimant through the Offer Exchange Procedures, Mediation, or by agreement at any point during these ADR Procedures. Nothing herein shall prevent the parties from settling any claim at any time.

2.     *Settlement Authority and Approvals*

Nothing herein shall limit, expand, or otherwise modify the GUC Trust's authority to settle claims pursuant to orders of the Bankruptcy Court then in effect, including without limitation, the Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 3007 and 9019(b) authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish Procedures for Settling Certain Claims, entered on October 6, 2006 [Docket No. 4180] (the "**Claims Procedures and Settlement Order**") and the Bankruptcy Court's March 28, 2011 Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(b) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan (ECF No. 9941) (the "**Confirmation Order**") confirming the Plan (collectively, the "**Settlement Authority Orders**"). Any settlements of claims pursuant to, or in connection with, the ADR Procedures shall be approved consistent with the terms, conditions, and limitations set forth in the applicable Settlement Authority Orders. The GUC Trust shall be requested to seek Bankruptcy Court approval of such settlements only to the extent that (a) such approval is required by the terms of the Settlement Authority Orders or (b) the settlement falls outside of the authority granted in the Settlement Authority Orders and otherwise requires Bankruptcy Court approval.

E.     **Failure to Resolve a Designated Claim Through ADR Procedures**

1.     *Litigation Generally*

Designated Claims not resolved through the ADR Procedures shall proceed to litigation for resolution. Notwithstanding anything herein, the GUC Trust may terminate the

ADR Procedures at any time prior to serving the Arbitration Notice and proceed to litigation of

the Designated Claim as set forth herein.

2.      *Litigation in the Bankruptcy Court*

If the Designated Claim is not resolved by the ADR Procedures (an "**Unresolved**

**Designated Claim**"), subject to a Designated Claimant's right upon completion of the ADR

Procedures for the Unresolved Designated Claim to seek to withdraw the reference for the

Unresolved Designated Claim pursuant to 28 U.S.C. § 157(d), litigation of such Unresolved

Designated Claim shall proceed in the Bankruptcy Court by the commencement by the GUC

Trust of proceedings consistent with the terms, conditions, and limitations set forth in the Claims

Procedures Order or other applicable procedures or orders, as soon as reasonably practicable

upon completion of the ADR Procedures for the Unresolved Designated Claim, to the extent that

(a) the Bankruptcy Court has subject matter jurisdiction over the Unresolved Designated Claim

and (b) the Unresolved Designated Claim is not subject to the abstention provisions of 28 U.S.C.

§ 1334(c). Disputes over the subject matter jurisdiction of the Bankruptcy Court or the

application of abstention shall be determined by the Bankruptcy Court.

3.      *Litigation in Other Courts*

If the Unresolved Designated Claim cannot be adjudicated in the Bankruptcy

Court as a result of abstention or because of lack of or limitations upon subject matter

jurisdiction (as determined by the Bankruptcy Court), then, subject to the terms and conditions

set forth in Section II.E.4 below, litigation of such Unresolved Designated Claim shall proceed

(a) if the Unresolved Designated Claim was pending in a nonbankruptcy forum on the date the

Debtors commenced their respective voluntary chapter 11 cases (the "**Commencement Date**"),

then (i) in such nonbankruptcy forum, subject to the GUC Trust's right to seek removal or

transfer of venue or (ii) in such other forum as determined by the Bankruptcy Court on request of

the GUC Trust;[8] or (b) if the Unresolved Designated Claim was not pending in any forum on the

Commencement Date, then in the United States District Court for the Southern District of New

York or such other nonbankruptcy forum that, as applicable, (i) has personal jurisdiction over the

parties, (ii) has subject matter jurisdiction over the Unresolved Designated Claim, (iii) has in rem

jurisdiction over the property involved in the Unresolved Designated Claim (if applicable) and

(iv) is a proper venue.  If necessary, any disputes regarding the applicability of this Section II.E.3

shall be determined by the Bankruptcy Court.

4.     *Modification of the Automatic Stay*

If litigation of an Unresolved Designated Claim in a forum other than the

Bankruptcy Court is required as set forth in Section II.E.3 above, the ADR Order provides that

the automatic stay imposed by section 362 of the Bankruptcy Code, or the Plan Injunction

(collectively, the "**Stay**"), shall be modified solely to the extent necessary to permit the

liquidation of the amount of such Unresolved Designated Claim in the appropriate forum;

*provided, however*, that any such liquidated claim (a) shall be subject to treatment under the

Plan; and (b) shall be treated as a general unsecured nonpriority claim against the Debtor

identified in the judgment, unless otherwise determined and ordered by the Bankruptcy Court.

No later than forty-five (45) days after the Bankruptcy Court determines that the terms of Section

II.E.3 above applies to an Unresolved Designated Claim or at such other time as agreed to by the

parties, the GUC Trust shall either (a) file a notice of such modification of the Stay (a "**Notice of

Stay Modification**") with the Bankruptcy Court and serve a copy of such notice on the

Designated Claimant or (b) file a motion seeking an order governing the terms upon which the

---

[8]  The GUC Trust may elect to file a motion pursuant to 28 U.S.C.§ 157(b)(5) to remove to the United States District
Court for the Southern District of New York any Unresolved Designated Claim (along with any other unliquidated
and litigation claims asserted against the Debtors) where the underlying claim is a personal injury claim or wrongful
death claim.

09-50026-reg   Doc 11776-3   Filed 06/04/12   Entered 06/04/12 09:25:28   Exhibit A-B   Pg 27 of
36

Stay will be modified (a "**Stay Motion**") and serve such Stay Motion on the Designated

Claimant.  The Stay shall be modified solely to the extent set forth above (a) as of the date that is

forty-five (45) days after the filing of a Notice of Stay Modification, unless the Bankruptcy Court

orders otherwise or the parties otherwise agree; or (b) as ordered by the Court in connection with

a Stay Motion.  If the GUC Trust fails to file a Notice of Stay Modification or a Stay Motion for

any reason with respect to an Unresolved Designated Claim, the Stay shall remain in effect with

respect to such Unresolved Designated Claim and the Designated Claimant may seek a

determination of the Bankruptcy Court regarding whether and on what terms the Stay must be

modified to permit litigation in a nonbankruptcy forum as set forth in Section II.E.3 above.

## F.    Failure to Comply with the ADR Procedures

If a Designated Claimant or the GUC Trust fails to comply with the ADR

Procedures, negotiate in good faith, or cooperate as may be necessary to effectuate the ADR

Procedures, the Bankruptcy Court may, after notice and a hearing, find such conduct to be in

violation of the ADR Order or, with respect to a Designated Claimant, an abandonment of or

failure to prosecute the Designated Claim, or both.  Upon such findings, the Bankruptcy Court

may, among other things, disallow and expunge the Designated Claim, in whole or part, or grant

such other or further remedy deemed just and appropriate under the circumstances, including,

without limitation, awarding attorneys' fees, other fees, and costs to the other party.

ANNEX 1

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                              :

In re                                 :          Chapter 11 Case No.
                                                :

**MOTORS LIQUIDATION COMPANY**, *et al.*,   :          **09-50026 (REG)**
        f/k/a General Motors Corp., *et al.*     :
                                                :

                  Debtors.           :          **(Jointly Administered)**
                                                :
------------------------------------------------------------x

**ALTERNATIVE DISPUTE RESOLUTION NOTICE**

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

**Deadline to Respond:**

        By this notice (the "**ADR Notice**"), the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") designate the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases and submit the Designated Claim(s) to alternative dispute resolution, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ \_\_\_, 2012.  A complete copy of the ADR Procedures is enclosed for your reference.

        The GUC Trust has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offers the amounts set forth below for allowance of your Designated Claim(s) as [a] prepetition general unsecured nonpriority claim(s) in full satisfaction of the Designated Claim(s) (the "**Settlement Offer**").

        *You are required to return this ADR Notice with a Claimant's Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above.*

In addition, to the extent your most recent proof(s) of claim **[does]/[do]** not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct, and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Claimant's Response.

If you do not return this ADR Notice with the requested information and a Claimant's Response to the Settlement Offer to **[the GUC Trust's Representative]** so that it is received by the Deadline to Respond, your Designated Claim(s) will be subject to mandatory mediation as set forth in Section II.B of the ADR Procedures.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** IF YOUR DESIGNATED CLAIM(S) CANNOT BE SETTLED.  PLEASE MARK THE BOX BELOW INDICATING WHETHER YOU (i) CONSENT TO **BINDING ARBITRATION** OR (ii) **DO NOT** CONSENT TO (AND SEEK TO **OPT OUT** OF) **BINDING ARBITRATION**.  PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.  IN ADDITION, ANY ATTEMPT TO OPT OUT OF **BINDING ARBITRATION** IN THE RESPONSE TO THIS ADR NOTICE SHALL BE INEFFECTIVE IF YOU PREVIOUSLY HAVE CONSENTED IN WRITING (EITHER PREPETITION OR POSTPETITION) TO **BINDING ARBITRATION** AS A MEANS TO RESOLVE YOUR CLAIM(S).

Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

<u>**Settlement Offer**</u>: The GUC Trust offers you an allowed general unsecured, nonpriority claim in the amount of $_____ against **[Name of Debtor]** in full satisfaction of your Designated Claim(s), to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan.

The only permitted response (the "**Claimant's Response**") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled with a counteroffer (a "**Counteroffer**").  Accordingly, please select your Claimant's Response below:

---

*Please indicate below if you accept or reject the GUC Trust's Settlement Offer by marking the appropriate box.  If you reject the Settlement Offer, please make your counteroffer where indicated.*

☐ I/we agree to and accept the terms of the Settlement Offer.

<u>**or**</u>

☐ I/we reject the Settlement Offer.  However, I/we will accept, and propose as a Counteroffer, the following allowed claim in full satisfaction of the Designated Claim(s), to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan.

---

> Debtor: _____
> Amount: $_____
> Priority: unsecured nonpriority claim (presumed) or ☐ other:*_____
>
> *Note - If you choose a different priority, you must attach an explanation and any relevant documentation.*

Section II.A.3 of the ADR procedures sets forth the restrictions on Counteroffers. Your Counteroffer may not (a) improve the priority set forth in your most recent timely-filed proof of claim or amended proof of claim, or (b) exceed the lesser of the Claim Amount Cap (if applicable) or the amount set forth in your most recent timely-filed proof of claim(s) or amended proof of claim(s). You may not amend your proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority.

> *Please indicate below whether you consent to binding arbitration for your Designated Claim(s) by marking the appropriate box.*
>
> ☐ I/ WE CONSENT TO BINDING ARBITRATION.
>
> **or**
>
> ☐ I/WE DO NOT CONSENT TO BINDING ARBITRATION.

[Signature of the Designated Claimant's Authorized Representative]

By: _____

Printed Name

3

ANNEX 2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                               :

In re                                     :          **Chapter 11 Case No.**
                                       :

**MOTORS LIQUIDATION COMPANY,** *et al.,*   :        **09-50026 (REG)**
      **f/k/a General Motors Corp.,** *et al.*   :
                                       :

                        **Debtors.**       :          **(Jointly Administered)**
                                       :

---------------------------------------------------------------x

**NOTICE OF NONBINDING MEDIATION**

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Mediation Location:

        By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2012. The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

        As provided for in the ADR Procedures, mediation shall be conducted in the Mediation Location set forth above, unless the parties agree to a different location. As further provided in the ADR Procedures, you have ten (10) days to choose one of the individuals identified on the list of mediators enclosed with this Mediation Notice to conduct the mediation.

        A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B. of the ADR Procedures, concerning mediation.

        [Signature of the GUC Trust's Authorized Person]

**ANNEX 3**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
--------------------------------------------------------------x
                                               :
In re                                          :        Chapter 11 Case No.
                                               :
MOTORS LIQUIDATION COMPANY, et al.,            :        09-50026 (REG)
        f/k/a General Motors Corp., et al.     :
                                               :
                        Debtors.               :        (Jointly Administered)
                                               :
--------------------------------------------------------------x
```

**NOTICE OF NONBINDING MEDIATION**

Service Date:

Claimant(s):

Claimant(s)' Address:

Lower Tier Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Lower Tier Mediation Location:

   By this Mediation Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to mediation, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures, or the Offer Exchange Procedures otherwise were terminated as to your Designated Claim(s) as provided for in the ADR Procedures.

   As provided for in the ADR Procedures, mediation shall be conducted in the Lower Tier Mediation Location set forth above, unless the parties agree to a different location. As further provided in the ADR Procedures, the GUC Trust shall choose one of the individuals

3

identified on the list of mediators enclosed with this Mediation Notice to conduct the mediation, and the mediator's fees shall be borne by the GUC Trust.

A complete copy of the ADR Procedures is enclosed for your reference. Please refer to Section II.B. of the ADR Procedures, concerning mediation.

[Signature of the GUC Trust's Authorized Person]

## ANNEX 4

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                    :

In re                              :         **Chapter 11 Case No.**
                                    :

**MOTORS LIQUIDATION COMPANY,** *et al.,*   :         **09-50026 (REG)**
        **f/k/a General Motors Corp.,** *et al.*   :
                                    :

                 **Debtors.**       :         **(Jointly Administered)**
                                    :
-------------------------------------------------------------x

## NOTICE OF BINDING ARBITRATION

Service Date:

Claimant(s):

Claimant(s)' Address:

Designated Claim Number(s):

Amount(s) Stated in Proof(s) of Claim:

Arbitration Location:

        By this Arbitration Notice, the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), as successor to Motors Liquidation Company (f/k/a General Motors Corporation), and its affiliated debtors (collectively, the "**Debtors**") submit the above-identified claim(s) (the "**Designated Claim(s)**") in the Debtors' chapter 11 cases to **binding arbitration**, pursuant to the procedures (the "**ADR Procedures**") established by the Second Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation (the "**ADR Order**") entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on _____ ___, 2012.  The GUC Trust has been unable to resolve your Designated Claim(s) on a consensual basis with you through the Offer Exchange Procedures of the ADR Procedures and or through binding mediation.

        PLEASE NOTE THAT YOU HAVE CONSENTED (OR ARE DEEMED TO HAVE CONSENTED) TO BINDING ARBITRATION. THEREFORE, YOUR DESIGNATED CLAIM(S) WILL PROCEED TO BINDING ARBITRATION, PURSUANT TO THE ADR PROCEDURES.

        As provided for in the ADR Procedures, an arbitrator will be appointed through the American Arbitration Association ("**AAA**").  The ADR Procedures require you and the GUC

Trust to share the administrative fees and costs of arbitration charged by the AAA and the arbitrator.

    A complete copy of the ADR Procedures is enclosed for your reference.  Please refer to Section II.C. of the ADR Procedures, concerning binding arbitration.

       [Signature of the GUC Trust's Authorized Person]

## Exhibit B

## Schedule of Mediators

### Dallas, Texas

| Name | Experience |
| --- | --- |
| Burdin, Mary | Personal injury, products liability |
| Damuth, Brenda J. | Personal injury, products liability |
| Grissom, Jerry | Class actions, intellectual property, personal injury, products liability |
| Hale, Earl F. | Complex business disputes |
| Lopez, Hon. Carlos G. | Personal injury, products liability |
| Martin, Hon. Harlan | Complex business disputes, intellectual property, personal injury, products liability |
| Nolland, Christopher | Complex business disputes, class actions |
| Parker, Walter E. "Rip" | Intellectual property, personal injury, products liability, complex disputes |
| Pryor, Will | Personal injury, products liability, complex business disputes |
| Rubenstein, Kenneth J. | Personal injury, products liability, complex business disputes |
| Stoddard, Ross | Personal injury, products liability, complex business disputes |
| Young, James | Class actions, complex business disputes, insurance disputes, personal injury |

### New York, New York

| Name | Experience |
| --- | --- |
| Carling, Francis | Products liability, personal injury |
| Cyganowski, Melanie | Complex business disputes |
| Ellerin, Hon. Betty | Environmental, complex business disputes, products liability, personal injury, class actions |
| Farber, Eugene I. | Environmental, products liability |
| Feerick, Kevin | Complex business disputes, products liability |
| Gafni, Abraham J. | Complex business disputes, products liability, personal injury |
| Holtzman, Eric H. | Products liability, environmental |
| Hyman, Ms. Chris Stern | Insurance disputes |
| Leber, Bernice K. | Complex business disputes |
| Levin, Jack P. | Class actions, breach of warranty claims, products liability |
| McAllister, Michael T. | Personal injury, products liability |
| McLaughlin, Hon. Joseph T. | Complex business disputes, class actions |
| Ricchiuti, Joseph F. | Complex business disputes, products liability, personal injury, class actions |
| Silbermann, Hon. Jacqueline W. | Complex business disputes, products liability, personal injury, class actions |
| Woodin, Peter H. | Complex business disputes, environmental, products liability, personal injury, class actions |

**Detroit, Michigan**

| Name | Experience |
|---|---|
| Connor, Laurence D. | Complex business disputes |
| Harrison, Michael G. | Personal injury |
| Kaufman, Richard C. | Personal injury |
| Muth, Jon R. | Complex business disputes, class actions |
| Pappas, Edward H. | Complex business disputes, products liability |

**San Francisco, California**

| Name | Experience |
|---|---|
| Cahill, Hon. William J. | Complex business disputes, products liability, personal injury, class actions |
| Denver, Thomas | Products liability, personal injury |
| Infante, Hon. Edward A. | Complex business disputes |
| Komar, Hon. Jack | Products liability class actions, mass torts |
| Lynch, Hon. Eugene F. | Complex business disputes |
| McLean, William | Complex business disputes, products liability, personal injury |
| McPharlin, Linda Hendrix | Complex business disputes |
| Needham, Craig | Products liability, personal injury |
| Williams, John R. (Jack) | Products liability, personal injury |
| Wulff, Randall W. | Complex business disputes, products liability, class actions |

**Chicago, Illinois**

| Name | Experience |
|---|---|
| Anderson, Hon. Wayne R. | Complex business disputes, personal injury, products liability, class actions, mass torts |
| Cohn, Lynn | Personal injury, products liability, class actions |
| DiVito, Hon. Gino | Complex business disputes, products liability, personal injury |
| Dutenhaver, Katheryn M. | Complex business disputes, products liability, personal injury |
| Ginn, Bradley R. | Complex business disputes, products liability, personal injury |
| Neville, Hon. Richard E. | Complex business disputes, personal injury, products liability |
| Nudelman, Hon. Stuart A. | Complex business disputes, personal injury, products liability |
| Sullivan, Hon. James E. | Complex business disputes, personal injury, products liability, class actions |

## **EXHIBIT B**

**The Thacker Claim**

FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court          Southern District of New York | PROOF OF CLAIM |
|---|---|

| | |
|---|---|
| Name of Debtor<br>Motors Liquidation Company (f/k/a General Motors Corp.) | Case Number<br>09-50026 |

NOTE  This form should not be used to make a claim for an administrative expense arising after the commencement of the case  A "request" for payment of an administrative expense may be filed pursuant to 11 U S C  § 503

| | | |
|---|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property)<br><br>Roger L Thacker, Roger L Sanders, Thomas J Hanson | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars | |
| Name and address where notices should  be sent<br>Helmer, Martins, Rice & Popham Co , L P A<br>600 Vine St , Suite 2704<br>Cincinnati, Ohio 45202    **FILED - 27105**<br>**MOTORS LIQUIDATION COMPANY**<br>**F/K/A GENERAL MOTORS CORP**<br>Telephone number  513-421-2400 SDNY # 09-50026 (REG) | ☐ Check box if you have never received any notices from the bankruptcy court in this case<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court | THE GARDEN CITY GROUP, INC.<br>NOV 16 2009<br><br>This space is for Court Use Only |

| | |
|---|---|
| Last four digits of account or other number by which creditor identifies debtor | Check here<br>if this claim    ☐ replaces    a previously filed claim, dated _____<br>                   ☐ amends |

| | |
|---|---|
| 1  **Basis for Claim**<br>☑ Goods sold<br>☐ Services performed<br>☐ Money loaned<br>☑ Personal injury/wrongful death<br>☐ Taxes<br>☑ Other  See attached | ☐ Retiree benefits as defined in 11 U S C  § 1114(a)<br>☐ Wages, salaries, and compensation (Fill out below)<br>Last four digits of your SS# _____<br>Unpaid compensation for services performed<br>from _____    to _____<br>       (date)              (date) |

| 2  **Date debt was incurred**    1986 - 1993 | 3  **If court judgment, date obtained** |
|---|---|

4  **Classification of Claim**  Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed  See reverse side for important explanations

| | |
|---|---|
| **Unsecured Nonpriority Claim** $  50,000,000 00<br>☑ Check this box if  a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority | **Secured Claim**<br>☐ Check this box if your claim is secured by collateral (including a right of setoff)<br>Brief Description of Collateral<br>☐ Real Estate    ☐ Motor Vehicle    ☐ Other_____<br>Value of Collateral    $_____ |
| **Unsecured Priority Claim**<br>☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority<br>Amount entitled to priority  $_____ | Amount of arrearage and other charges at time case filed included in secured claim, if any $_____ |
| Specify the priority of the claim<br>☐ Domestic support obligations under 11 U S C  § 507(a)(1)(A) or (a)(1)(B)<br>☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U S C  § 507(a)(4)<br>☐ Contributions to an employee benefit plan - 11 U S C  § 507(a)(5) | ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U S C  § 507(a)(7)<br>☐ Taxes or penalties owed to governmental units - 11 U S C  § 507(a)(8)<br>☐ Other - Specify applicable paragraph of 11 U S C  § 507(a)(___)<br>*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment |

| 5  **Total Amount of Claim at Time Case Filed**    $  50,000,000 00 _____ _____ 50,000,000 00 |
|---|

|  | (unsecured) | (secured) | (priority) | (Total) |
|---|---|---|---|---|

☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

| | |
|---|---|
| 6  **Credits.**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim<br>7  **Supporting Documents**  Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages,  security agreements, and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain  If the documents are voluminous, attach a summary<br>8.  **Date-Stamped Copy**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim | This Space is for Court Use Only |
| Date<br><br>11-12-09 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)<br>James B Helmer, Jr , Trial Attorney |

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C §§ 152 and 3571

**Basis for Claim**

Creditors Roger L Thacker, Roger L. Sanders, and Thomas J. Hanson have a contingent, unliquidated claim as *qui tam* Relators in a False Claims Act case for damages and civil penalties for defective generator sets installed in *Arleigh Burke* class destroyers, *United States ex rel Sanders v Allison Engine Company,* C-1-95-970, currently pending in the Southern District of Ohio. Relators also have claims for attorneys fees and costs pursuant to the False Claims Act fee-shifting provision



**LexisNexis®** *Total Research System*                                    Switch Client | Preferences | Sign Out | ? Help

| My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | Dossier | History | ? |

FOCUS™ Terms                    Search Within  Original Results (1 - 4)   [ ] Go Advanced

Source Legal > / ...  / > U S Supreme Court Cases, Lawyers' Edition [...]
Terms  name(sanders and allison engine) (Edit Search | Suggest Terms for My Search)

↳ Select for FOCUS™ or Delivery
☐

*128 S  Ct 2123, *, 170 L  Ed  2d 1030, **,*
*2008 U S  LEXIS 4704, ***, 76 U S L W  4387*

**ALLISON ENGINE** COMPANY, INC , et al , Petitioners v  UNITED STATES ex rel  ROGER L  **SANDERS** and ROGER L  THACKER

No  07-214

SUPREME COURT OF THE UNITED STATES

128 S  Ct 2123, 170 L  Ed  2d 1030, 2008 U S  LEXIS 4704, 76 U S L W  4387, 37 A L R  Fed  2d 773, 21 Fla  L  Weekly Fed  S 300

February 26, 2008, Argued
June 9, 2008, Decided

**NOTICE:**

The LEXIS pagination of this document is subject to change pending release of the final published version

**PRIOR HISTORY   [***1]**
ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
United States ex rel  Sanders v  Allison Engine Co., 471 F.3d 610, 2006 U.S. App. LEXIS 31136 (6th Cir.) (6th Cir. Ohio, 2006)

**DISPOSITION:** The Court vacated the judgment and remanded the case for further proceedings consistent with the opinion
Unanimous decision

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Petitioner subcontractors sought certiorari review of a judgment from the United States Court of
Appeals for the Sixth Circuit which reversed the district court's grant of judgment as a matter of law in favor of petitioners in
respondent former employees' qui tam action seeking to recover damages from petitioners under 31 U.S.C.S. § 3729(a)(2) and
(a)(3) of the False Claims Act (FCA), 31 U.S.C.S. § 3729

**OVERVIEW:** In the district court, respondents introduced evidence that petitioners issued certificates of conformance falsely
stating that their work was completed in compliance with U S  Navy specifications for generator sets needed in the construction of
Navy guided missile destroyers and that petitioners presented invoices for payment to the prime contractor shipyards
Respondents, however, did not introduce the invoices that the shipyards submitted to the Navy  The district court found
respondents' evidence legally insufficient under the FCA, but the Sixth Circuit held that claims under 31 U.S.C.S. § 3729(a)(2), (3)
did not require proof of an intent to cause a false claim to be paid by the Government, instead, proof of an intent to cause such a
claim to be paid by a private entity using Government funds was sufficient  Contrary to the Sixth Circuit, the Court held that under
§ 3729(a)(2) respondents were required to prove that petitioners intended that the false statement be material to the
Government's decision to pay or approve the false claim  Similarly, under § 3729(a)(3) respondents were required to show that
petitioners agreed to make use of the false statement to achieve this end

**OUTCOME** The Court vacated the judgment and remanded the case for further proceedings consistent with the opinion
Unanimous decision

**CORE TERMS:** false statement, false claims, fraudulent claim, claim paid, fraudulent, shipyards, defraud, private entity, intent,
conspirators, knowingly, recipient, invoices, subcontracted, destroyer, require proof, specifications, subcontractor, contractor,
asserting, intent to cause, used to pay, conspires, approve, grantee, usage, build, matter of law, funds to pay, prime contractor

**LEXISNEXIS® HEADNOTES**                                                               ⊟**Hide**
  Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof 🔍
  Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions 🔍
HN1 ± It is insufficient for a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. §
3729, to show merely that the false statement's use resulted in obtaining or getting payment or approval of the claim or
that government money was used to pay the false or fraudulent claim  Instead, a plaintiff asserting a claim under 31
U.S.C.S. § 3729(a)(2) must prove that the defendant intended that the false record or statement be material to the
government's decision to pay or approve the false claim  Similarly, a plaintiff asserting a claim under 31 U.S.C.S. § 3729
(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this
end  More Like This Headnote | Shepardize, Restrict By Headnote

  Governments > Legislation > Interpretation 🔍
HN2 ± To determine the meaning of a statute, the court starts with the language of the statute  More Like This Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > General Overview 🔖
HN3⬆31 U S.C.S § 3729(a)(2) of the False Claims Act (FCA), 31 U.S.C.S. § 3729, imposes civil liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government  Under 31 U.S.C.S. § 3729(a)(2), the defendant must make the false record or statement "to get" a false or fraudulent claim "paid or approved by the Government " "To get" denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim paid or approved by the Government in order to be liable under 31 U.S.C.S. § 3729(a)(2)  Additionally, getting a false or fraudulent claim "paid by the Government" is not the same as getting a false or fraudulent claim paid using government funds  Under 31 U.S.C.S. § 3729(a)(2), a defendant must intend that the Government itself pay the claim  Eliminating this element of intent would expand the FCA well beyond its intended role of combating fraud against the Government   More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > General Overview 🔖
HN4⬆Under the definition of the term "claim" in 31 U.S.C.S. § 3729(c) of the False Claims Act, 31 U.S.C.S. § 3729, a request for money or property need not be made directly to the Government in order to constitute a claim  Instead, a claim may include a request or demand that is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded  31 U.S.C.S. § 3729(c)  This definition of the word "claim" does not alter the meaning of the phrase "by the Government" in 31 U.S.C.S. § 3729(a)(2)  Under 31 U.S.C.S. § 3729(c)'s definition of "claim," a request or demand may constitute a claim even if the request is not made directly to the Government, but under 31 U.S.C.S. § 3729(a)(2) it is still necessary for the defendant to intend that a claim be "paid by the Government" and not by another entity   More Like This Headnote | Shepardize, Restrict By Headnote

Evidence > Inferences & Presumptions > Presumptions 🔖
Governments > Legislation > Interpretation 🔖
Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof 🔖
Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions 🔖
HN5⬆While 31 U.S.C.S. § 3729(a)(1) of the False Claims Act, 31 U.S.C.S. § 3729, requires a plaintiff to prove that the defendant presented a false or fraudulent claim to the Government, the concept of presentment is not mentioned in 31 U.S.C.S. § 3729(a)(2)  The inclusion of an express presentment requirement in 31 U.S.C.S. § 3729(a)(1), combined with the absence of anything similar in § 3729(a)(2), suggests that Congress did not intend to include a presentment requirement in § 3729(a)(2)  When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion   More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof 🔖
Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions 🔖
HN6⬆What 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. § 3729, demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government  Therefore, a subcontractor violates 31 U.S.C.S. § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim  If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim "by the Government " In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability   More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions 🔖
HN7⬆Recognizing a cause of action under the False Claims Act (FCA), 31 U.S.C.S. § 3729, for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute  The United States Supreme Court's reading of 31 U.S.C.S. § 3729(a)(2), based on the language of the statute, gives effect to Congress's efforts to protect the Government from loss due to fraud but also ensures that a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct   More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof 🔖
Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions 🔖
HN8⬆31 U.S.C.S. § 3729(a)(3) of the False Claims Act, 31 U.S.C.S. § 3729, makes liable any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid  Under 31 U.S.C.S. § 3729(a)(3), it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government  Instead, it must be shown that the conspirators intended "to defraud the Government " Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim  It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim   More Like This Headnote | Shepardize, Restrict By Headnote

**LAWYERS' EDITION DISPLAY**                                                                                      ⌐Hide

**DECISION**

[**1030] False Claims Act plaintiff held required to show (1) under 31 U.S.C.S. § 3729(a)(2), that defendant intended that false

record or statement be material to Federal Government's decision to pay or approve false claim, and (2) under 31 U.S.C.S. § 3729 (a)(3), that conspirators agreed to make use of false record or statement to achieve this end

**SUMMARY**

**Procedural posture:** Petitioner subcontractors sought certiorari review of a judgment from the United States Court of Appeals for the Sixth Circuit which reversed the district court's grant of judgment as a matter of law in favor of petitioners in respondent former employees' qui tam action seeking to recover damages from petitioners under 31 U.S.C.S. § 3729(a)(2) and (a)(3) of the False Claims Act (FCA), 31 U.S.C.S. § 3729

**Overview** In the district court, respondents introduced evidence that petitioners issued certificates of conformance falsely stating that their work was completed in compliance with U S Navy specifications for generator sets needed in the construction of Navy guided missile destroyers and that petitioners presented invoices for payment to the prime contractor shipyards Respondents, however, did not introduce the invoices that the shipyards submitted to the Navy The district court found respondents' evidence legally insufficient under the FCA, but the Sixth Circuit held that claims under 31 U.S.C.S. § 3729(a)(2), (3) did not require proof of an intent to cause a false claim to be paid by the Government, instead, proof of an intent to cause such a claim to be paid by a private entity using Government funds was sufficient Contrary to the Sixth Circuit, the Court held that under § 3729(a)(2) respondents were required to prove that petitioners intended that the false statement be material to the Government's decision to pay or approve the false claim **[\*\*1031]** Similarly, under § 3729(a)(3) respondents were required to show that petitioners agreed to make use of the false statement to achieve this end

**Outcome** The Court vacated the judgment and remanded the case for further proceedings consistent with the opinion Unanimous decision

**LAWYERS' EDITION HEADNOTES**

**[\*\*LEdHN1]**

CLAIMS §101 CONSPIRACY §10

FALSE CLAIMS ACT -- REQUIRED SHOWING

Headnote *LEdHN(1)*⬥[1]

It is insufficient for a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. § 3729, to show merely that the false statement's use resulted in obtaining or getting payment or approval of the claim or that government money was used to pay the false or fraudulent claim Instead, a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(2) must prove that the defendant intended that the false record or statement be material to the government's decision to pay or approve the false claim Similarly, a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this end

**[\*\*LEdHN2]**

STATUTES §164

LANGUAGE

Headnote *LEdHN(2)*⬥[2]

To determine the meaning of a statute, the court starts with the language of the statute

**[\*\*LEdHN3]**

CLAIMS §101

FALSE CLAIMS ACT -- CIVIL LIABILITY

Headnote *LEdHN(3)*⬥[3]

31 U.S.C.S. § 3729(a)(2) of the False Claims Act (FCA), 31 U.S.C.S. § 3729, imposes civil liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government Under 31 U.S.C.S. § 3729(a)(2), the defendant must make the false record or statement "to get" a false or fraudulent claim "paid or approved by the Government " "To get" denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim paid or approved by the Government in order to be liable under 31 U.S.C.S. § 3729(a)(2) Additionally, getting a false or fraudulent claim "paid by the Government" is not the same as getting a false or fraudulent claim paid using government funds Under 31 U S C S § 3729(a)(2), a defendant must intend that the Government itself pay the claim Eliminating this element of intent would expand the FCA well beyond its intended role of combating fraud against the Government

**[\*\*LEdHN4]**

CLAIMS §101

FALSE CLAIMS ACT -- CLAIM -- PAYMENT

Headnote $^{LEdHN(4)}$[4]

Under the definition of the term "claim" in 31 U S C S  § 3729(c) of the False Claims Act, 31 U.S.C.S. § 3729, a request for money or property need not be made directly to the Government in order to constitute a claim  Instead, a claim may include a request or demand that is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested [**1032] or demanded  31 U.S.C.S. § 3729(c)  This definition of the word "claim" does not alter the meaning of the phrase "by the Government" in 31 U.S.C.S. § 3729(a)(2)  Under 31 U.S.C.S. § 3729(c)'s definition of "claim," a request or demand may constitute a claim even if the request is not made directly to the Government, but under 31 U.S.C.S. § 3729(a)(2) it is still necessary for the defendant to intend that a claim be "paid by the Government" and not by another entity

[**LEdHN5]

CLAIMS §101

FALSE CLAIMS ACT -- PRESENTMENT

Headnote $^{LEdHN(5)}$[5]

While 31 U.S.C.S. § 3729(a)(1) of the False Claims Act, 31 U.S.C.S. § 3729, requires a plaintiff to prove that the defendant presented a false or fraudulent claim to the Government, the concept of presentment is not mentioned in 31 U.S.C.S. § 3729(a)(2)  The inclusion of an express presentment requirement in 31 U.S.C.S. § 3729(a)(1), combined with the absence of anything similar in § 3729(a)(2), suggests that Congress did not intend to include a presentment requirement in § 3729(a)(2)  When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion

[**LEdHN6]

CLAIMS §101

FALSE CLAIMS ACT -- RECORD OR STATEMENT

Headnote $^{LEdHN(6)}$[6]

What 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. § 3729, demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government  Therefore, a subcontractor violates 31 U.S.C.S. § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim  If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim "by the Government " In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability

[**LEdHN7]

CLAIMS §101

FALSE CLAIMS ACT -- COVERAGE

Headnote $^{LEdHN(7)}$[7]

Recognizing a cause of action under the False Claims Act (FCA), 31 U.S.C.S. § 3729, for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute  The United States Supreme Court's reading of 31 U.S.C.S. § 3729(a)(2), based on the language of the statute, gives effect to Congress's efforts to protect the Government from loss due to fraud but also ensures that a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct

[**LEdHN8]

CONSPIRACY §10

FALSE CLAIMS ACT -- REQUIRED SHOWING

Headnote $^{LEdHN(8)}$[8]

31 U.S.C.S. § 3729(a)(3) of the False Claims Act, 31 U.S.C.S. § 3729, makes liable any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid  Under 31 U.S.C.S. § 3729(a)(3), it is not enough for a [**1033] plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government  Instead, it must be shown that the conspirators intended "to defraud the Government " Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim  It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim

## SYLLABUS

The Navy contracted with two shipyards to build destroyers, each of which needed generator sets (Gen-Sets) for electrical power. The shipyards subcontracted with petitioner Allison Engine Company, Inc (Allison [**1034] Engine), to build Gen-Sets, Allison Engine subcontracted with petitioner General Tool Company (GTC) to assemble them, and GTC subcontracted with petitioner Southern Ohio Fabricators, Inc (SOFCO), to manufacture Gen-Set bases and enclosures. The subcontracts required that each Gen-Set be accompanied by a certificate of conformance (COC) certifying that the unit was manufactured according to Navy specifications. All of the funds paid under the contracts ultimately came from the U S Treasury

Former GTC employees Sanders and Thacker (hereinafter respondents) brought this qui tam suit seeking to recover damages from petitioners under the False Claims Act (FCA), which, inter alia, imposes civil liability on any person who knowingly uses a "false statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2), or who "conspires [***2] to defraud the Government by getting a false or fraudulent claim allowed or paid," § 3729(a)(3). At trial, respondents introduced evidence that petitioners had issued COCs falsely stating that their work was completed in compliance with Navy specifications and that they had presented invoices for payment to the shipyards. They did not, however, introduce the invoices the shipyards submitted to the Navy. The District Court granted petitioners judgment as a matter of law, concluding that, absent proof that false claims were presented to the Government, respondents' evidence was legally insufficient under the FCA. The Sixth Circuit reversed in relevant part, holding, among other things, that respondents' §§ 3729(a)(2) and (3) claims did not require proof of an intent to cause a false claim to be paid by the Government, proof of an intent to cause such a claim to be paid by a private entity using Government funds was sufficient

*Held*

1  It is insufficient for a plaintiff asserting a § 3729(a)(2) claim to show merely that the false statement's use resulted in payment or approval of the claim or that Government money was used to pay the false or fraudulent claim. Instead, such a plaintiff [***3] must prove that the defendant intended that the false statement be material to the Government's decision to pay or approve the false claim. Pp 5-8

(a) The Sixth Circuit's interpretation of § 3729(a)(2) impermissibly deviates from the statute's language, which requires the defendant to make a false statement "to get" a false or fraudulent claim "paid or approved by the Government." Because "to get" denotes purpose, a person must have the purpose of getting a false or fraudulent claim "paid or approved by the Government" in order to be liable. Moreover, getting such a claim "paid      by the Government" is not the same as getting it paid using "government funds." Under § 3729(a)(2), a defendant must intend for the Government itself to pay the claim. Eliminating this element of intent would expand the FCA well beyond its intended role of combating "fraud against the *Government*." *Rainwater v. United States, 356 U.S. 590, 592, 78 S. Ct. 946, 2 L. Ed. 2d 996* Pp 5-6

(b) The Government's contention that "paid      by the Government" does not mean literal Government payment is unpersuasive. The assertion that it is customary to say that the Government pays a bill when a recipient of Government funds uses those funds [***4] to pay involves a colloquial usage of the phrase "paid by" [**1035] that is not customarily employed in statutory drafting, where precision is important and expected. Section 3729(c)'s definition of "claim" does not support the Government's argument. The definition allows a request to be a "claim" even if it is not made directly to the Government, but, under § 3729(a)(2), it is necessary that the defendant intend that a claim be "paid by the Government," not by another entity. Pp 6-7

(c) This does not mean, however, that § 3729(a)(2) requires proof that a defendant's false statement was submitted to the Government. Because the section requires only that the defendant make the false statement for the purpose of getting "a false or fraudulent claim paid or approved by the Government," a subcontractor violates § 3729(a)(2) if it submits a false statement to the prime contractor intending that contractor to use the statement to get the Government to pay its claim. However, if a subcontractor makes a false statement to a private entity and does not intend for the Government to rely on the statement as a condition of payment, the direct link between the statement and the Government's decision to [***5] pay or approve a false claim is too attenuated to establish liability. The Court's reading gives effect to Congress' efforts to protect the Government from loss due to fraud but also ensures that "a defendant is not answerable for anything beyond the natural, ordinary, and reasonable consequences of his conduct." *Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 470, 126 S. Ct. 1991, 164 L. Ed. 2d 720* Pp 7-9

2  Similarly, it is not enough under § 3729(a)(3) for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government. Instead, it must be shown that they intended "to defraud the Government." Where their alleged conduct involved the making of a false statement, it need not be shown that they intended the statement to be presented directly to the Government, but it must be established that they agreed that the statement would have a material effect on the Government's decision to pay the false or fraudulent claim. Pp 8-10

471 F.3d 610, vacated and remanded

Alito, J, delivered the opinion for a unanimous Court

**COUNSEL: Theodore B. Olson** argued the cause for petitioners

**Malcolm L. Stewart** argued the cause for the United States, as amicus curiae, by special leave of court

**James B. Helmer, Jr.** argued the cause for respondents

**JUDGES:** Alito, J, delivered the opinion for a unanimous Court

**OPINION BY: ALITO**

**OPINION**

[*2126] Justice **Alito** delivered the opinion of the Court

The False Claims Act (FCA) imposes [***6] civil liability on any person who knowingly uses a "false record or statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2), and any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," § 3729(a)(3). We granted review in this case to decide what a plaintiff asserting a claim under these provisions must show regarding the relationship between the making of a "false record or statement" and the payment or approval of "a false or fraudulent claim   by the Government."

Contrary to the decision of the Court of Appeals below, we hold that [**LEdHR1] [1] it is insufficient for a plaintiff asserting a § 3729(a)(2) claim to show merely that "[t]he false statement's use   result[ed] in obtaining or [**1036] getting payment or approval of the claim," 471 F.3d 610, 610 (CA6 2006) or that "government money was used to pay the false or fraudulent claim," id., at 622 Instead, a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim Similarly, a plaintiff asserting a claim under § 3729(a)(3) [***7] must show that the conspirators agreed to make use of the false record or statement to achieve this end

I

In 1985, the United States Navy entered into contracts with two shipbuilders, Bath Iron Works and Ingalls Shipbuilding (together the shipyards), to build a new fleet of Arleigh Burke class guided missile destroyers Each destroyer required three generator sets (Gen-Sets) to supply all of the electrical power for the ship The shipyards subcontracted with petitioner Allison Engine Company,  -Inc (Allison Engine), formerly a division of General Motors, to build 90 Gen-Sets to be used in over 50 destroyers Allison Engine in turn subcontracted with petitioner General Tool [*2127] Company (GTC) to assemble the Gen-Sets, and GTC subcontracted with petitioner Southern Ohio Fabricators, Inc (SOFCO), to manufacture bases and enclosures for the Gen-Sets The Navy paid the shipyards an aggregate total of $1 billion for each new destroyer Of that, Allison Engine was paid approximately $3 million per Gen-Set, GTC was paid approximately $800,000 per Gen-Set, and SOFCO was paid over $100,000 per Gen-Set All of the funds used to pay petitioners ultimately came from the Federal Treasury

The Navy's [***8] contract with the shipyards specified that every part of each destroyer be built in accordance with the Navy's baseline drawings and military standards These requirements were incorporated into each of petitioners' subcontracts In addition, the contracts required that each delivered Gen-Set be accompanied by a certificate of conformance (COC) certifying that the unit was manufactured in accordance with the Navy's requirements

In 1995, Roger L Sanders and Roger L Thacker (hereinafter respondents), former employees of GTC, brought suit in the District Court for the Southern District of Ohio as qui tam relators seeking to recover damages pursuant to § 3729, which renders liable any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government   a false or fraudulent claim for payment or approval," § 3729(a)(1), any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government," § 3729(a)(2), and any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," § 3729(a)(3)

Respondents [***9] alleged that the invoices submitted to the shipyards by Allison Engine, GTC, and SOFCO fraudulently sought payment for work that had not been done in accordance with contract specifications Specifically, respondents claimed that the gearboxes installed in Allison Engine in the first 52 Gen-Sets were defective and leaked oil, that GTC never conducted a required final quality inspection for approximately half of the first 67 Gen-Sets, and that the [**1037] SOFCO welders who worked on the first 67 Gen-Sets did not meet military standards Respondents also claimed that petitioners issued COCs claiming falsely that the Gen-Sets had been built to the contractually required specifications even though petitioners knew that those specifications had not been met

The case was tried to a jury At trial, respondents introduced evidence that petitioners had issued COCs that falsely stated that their work was completed in compliance with the Navy's requirements and that they had presented invoices for payment to the shipyards Respondents did not, however, introduce the invoices submitted by the shipyards to the Navy At the close of respondents' case, petitioners moved for judgment as a matter of law pursuant [***10] to Federal Rule of Civil Procedure 50(a) Petitioners asserted that no reasonable jury could find a violation under § 3729 because respondents had failed to adduce any evidence that a false or fraudulent claim had ever been presented to the Navy The District Court granted petitioners' motion No. 1-.95-cv-970, 2005 U.S. Dist. LEXIS 5612, 2005 WL 713569 (SD Ohio, Mar. 11, 2005) The court rejected respondents' argument that they did not have to present evidence that a claim had been submitted to the Navy because they showed that Government funds had been used to pay the invoices that were presented to the shipyards The District Court concluded that, absent proof that false claims were presented [*2128] to the Government, respondents' evidence was legally insufficient under the FCA 2005 U.S. Dist. LEXIS 5612, [WL] at *10

On appeal, a divided panel of the United States Court of Appeals for the Sixth Circuit reversed the District Court in relevant part 471 F.3d 610 (2006) The majority agreed with the District Court that liability under § 3729(a)(1) requires proof that a false claim was presented to the Government However, the Court of Appeals held that the District Court erred in granting petitioners' motion for judgment as a matter of law with [***11] respect to respondents' §§ 3729(a)(2) and (3) claims The Court of Appeals held that such claims do not require proof of an intent to cause a false claim to be paid by the Government Rather, it determined that proof of an intent to cause a false claim to be paid by a private entity using Government funds was sufficient In so holding, the Court of Appeals recognized that its decision conflicted with United States ex rel. Totten v. Bombardier Corp., 363 U.S. App. D.C. 180, 380 F.3d 488 (CADC 2004) (Totten), cert denied, 544 U.S. 1032, 125 S. Ct. 2257, 161 L. Ed. 2d 1059 (2005)

We granted certiorari to resolve the conflict over the proper interpretation of §§ 3729(a)(2) and (a)(3) 552 U.S.   , 128 S. Ct. 491, 169 L. Ed. 2d 337 (2007)

II

A

We turn first to § 3729(a)(2), and [**LEdHR2] [2] "[w]e start, as always, with the language of the statute " Williams v. Taylor, 529 U.S. 420, 431, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000) [**LEdHR3] [3]Section 3729(a)(2) imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government "

The interpretation of § 3729(a)(2) that was adopted by the Court of Appeals--and that is endorsed by the respondents and the

Government [**1038] --impermissibly deviates from the statute's language  In [***12] the view of the Court of Appeals, it is sufficient for a § 3729(a)(2) plaintiff to show that a false statement resulted in the use of Government funds to pay a false or fraudulent claim 471 F.3d at 621-622  Under subsection (a)(2), however, the defendant must make the false record or statement "to get" a false or fraudulent claim "paid or approved by the Government"  "To get" denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim "paid or approved by the Government" in order to be liable under § 3729(a)(2)  Additionally, getting a false or fraudulent claim "paid    by the Government" is not the same as getting a false or fraudulent claim paid using "government funds " Id., at 622  Under § 3729(a)(2), a defendant must intend that the Government itself pay the claim

Eliminating this element of intent, as the Court of Appeals did, would expand the FCA well beyond its intended role of combating "fraud against the Government " See Rainwater v. United States, 356 U S. 590, 592, 78 S. Ct. 946, 2 L  Ed  2d 996 (1958) (emphasis added)  As the District of Columbia Circuit pointed out, the reach of § 3729(a)(2) would then be "almost boundless  for example, liability could attach [***13] for any false claim made to any college or university, so long as the institution has received some federal grants--as most of them do " Totten, supra, at 496

B

Defending the Court of Appeals' interpretation of § 3729(a)(2), the Government contends that the phrase "paid    by the [*2129] Government" does not mean that the Government must literally pay the bill  The Government maintains that it is customary to say that the Government pays a bill when a person who has received Government funds uses those funds to pay a bill  The Government provides this example  "'[W]hen a student says his college living expenses are "paid by" his parents, he typically does not mean that his parents send checks directly to his creditors  Rather, he means that his parents are the ultimate source of the funds he uses to pay those expenses '" Brief for United States as Amicus Curiae 9 (quoting Totten, supra, at 506 (Garland, J , dissenting))

This example is unpersuasive because it involves a colloquial usage of the phrase "paid by"--a usage that is not customary employed in more formal contexts  For example, if a federal employee who receives all of his income from the Government were asked in a formal [***14] inquiry to reveal who paid for, say, his new car or a vacation, the employee would not say that the Federal Government had footed the bill  In statutory drafting, where precision is both important and expected, the sort of colloquial usage on which the Government relies is not customary

The Government is also wrong in arguing that the definition of the term "claim" in § 3729(c) means that § 3729(a)(2)'s use of the phrase "paid by the government" should not be read literally  HN4 [**LEdHR4] LEdHR(4) [4] Under this definition, a request for money or property need not be made directly to the Government in order to constitute a "claim " Instead, a "claim" may include a request or demand that is made to "a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of [**1039] the money or property which is requested or demanded " § 3729(c)  This definition of the word "claim" does not support the Government's argument because it does not alter the meaning of the phrase "by the Government" in § 3729(a)(2)  Under § 3729(c)'s definition of "claim," [***15] a request or demand may constitute a "claim" even if the request is not made directly to the Government, but under § 3729(a)(2) it is still necessary for the defendant to intend that a claim be "paid by the Government" and not by another entity [1]

FOOTNOTES

1 This interpretation of § 3729(a)(2) does not render superfluous the portion of § 3729(c) providing that a "claim" may be made to a contractor, grantee, or other recipient of Government funding  This language makes it clear that there can be liability under §§ 3729(a)(1) and (2) where the request or demand for money or property that a defendant presents to a federal officer for payment or approval, § 3729(a)(1), or that a defendant intends "to get    paid or approved by the Government", § 3729(a)(2), may be a request or demand that was originally "made to" a contractor, grantee, or other recipient of federal funds and then forwarded to the Government

C

This does not mean, however, as petitioners suggest, see Reply Brief 1, that § 3729(a)(2) requires proof that a defendant's false record or statement was submitted to the Government  HN5 [**LEdHR5] LEdHR(5) [5] While § 3729(a)(1) requires a plaintiff to prove that the defendant "present[ed]" a false or fraudulent [***16] claim to the Government, the concept of presentment is not mentioned in § 3729(a)(2)  The inclusion of an express presentment requirement in subsection (a)(1), combined with the absence of anything similar in subsection (a)(2), suggests that Congress did not intend to include a presentment requirement in subsection (a) (2)  "[W]hen Congress includes particular language in one section of a statute but [*2130] omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion " Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452, 122 S. Ct. 941, 151 L. Ed  2d 908 (2002) (internal quotation marks omitted)

HN6 [**LEdHR6] LEdHR(6) [6] What § 3729(a)(2) demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting "a false or fraudulent claim paid or approved by the Government " Therefore, a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim [2]  If a subcontractor or another defendant [***17] makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made [**1040] with the purpose of inducing payment of a false claim "by the Government " In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability  HN7 [**LEdHR7] LEdHR(7) [7]  Recognizing a cause of action under the FCA for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute  Our reading of § 3729(a)(2), based on the language of the statute, gives effect to Congress' efforts to protect the Government from loss due to fraud but also ensures that "a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct " Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 470, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) (internal quotation marks omitted)

FOOTNOTES

2 <u>Section 3729(b)</u> provides that the terms "knowing" and "knowingly" "mean that a person, with respect to information--(1) has actual knowledge of the information, (2) acts in deliberate ignorance of the truth or falsity of the information, or (3) acts **[***18]** in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required " The statutory definition of these terms is easily reconcilable with our holding in this case for two reasons  First, the intent requirement we discern in <u>§ 3729(a)(2)</u> derives not from the term "knowingly," but rather from the infinitive phrase "to get "  Second, <u>§ 3729 (b)</u> refers to specific intent with regard to the truth or falsity of the "information," while our holding refers to a defendant's purpose in making or using a false record or statement

III

Respondents also brought suit under <u>§ 3729(a)(3)</u>, ^HNB⬥ **[**LEdHR8]** ^IEdHR(8)⬥[8] which makes liable any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid " Our interpretation of this language is similar to our interpretation of the language of <u>§ 3729(a)(2)</u>  Under <u>§ 3729(a)(3)</u>, it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government  Instead, it must be shown that the conspirators intended "to defraud the Government "  Where the conduct that the conspirators **[***19]** are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim  It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's **[*2131]** decision to pay the false or fraudulent claim

This reading of <u>subsection (a)(3)</u> is in accord with our decision in <i>Tanner v. United States</i>, 483 U.S. 107, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987), where we held that a conspiracy to defraud a federally funded private entity does not constitute a "conspiracy to defraud the United States" under <u>18 U.S.C. § 371</u>  <u>Id., at 129, 107 S. Ct. 2739, 97 L. Ed. 2d 90</u>  In <i>Tanner</i>, the Government argued that a recipient of federal financial assistance and the subject of federal supervision may itself be treated as "the United States "  We rejected this reading of <u>§ 371</u> as having "not even an arguable basis in the plain language of <u>§ 371</u> " <u>Id., at 131, 107 S. Ct. 2739, 97 L. Ed. 2d 90</u>  Indeed, we concluded that such an interpretation "would have, in **[***20]** effect, substituted 'anyone receiving federal financial assistance and supervision' for the phrase 'the United States '" <u>Id., at 132, 107 S. Ct. 2739, 97 L. Ed. 2d 90</u>  Likewise, the interpretation urged on us by respondents would in effect substitute "paid or approved by the Government" for the phrase "paid by Government funds "  Had Congress intended <u>subsection (a)(3)</u> to apply to anyone who conspired to defraud a recipient of Government funds, it would have so provided

* * *

Because the decision of the Court of Appeals was based on an incorrect **[**1041]** interpretation of <u>§§ 3729(a)(2)</u> and <u>(3)</u>, we vacate its judgment and remand the case for further proceedings consistent with this opinion

It is so ordered

### REFERENCES

<u>31 U.S.C.S. § 3729</u>

2 Federal Contract Management P <u>13.08</u> (Matthew Bender)

3 Federal Contract Management P <u>18.18</u> (Matthew Bender)

2 Government Contracts  Law, Administration & Procedures <u>§§ 14.30</u>, <u>14.70</u> (Matthew Bender)

2 <u>Moore's Federal Practice § 9.03</u> (Matthew Bender 3d ed )

L Ed Digest, Claims § 101, Conspiracy § 10

L Ed Index, False Claims Act

What is a "claim" against the United States within meaning of Federal False Claims Act (<u>31 U.S.C.S. § 231</u> [predecessor of <u>31 U.S.C.S. § 3729</u>]) <u>19 L. Ed. 2d 1558</u>

Source  <u>Legal</u> > /    / > U S Supreme Court Cases, Lawyers' Edition ⓘ
Terms  **name(sanders and allison engine)** (<u>Edit Search</u> | <u>Suggest Terms for My Search</u>)
View  Full
Date/Time  Thursday November 12, 2009 - 12 13 PM EST

* Signal Legend
⬤ - Warning  Negative treatment is indicated
[Q] - Questioned  Validity questioned by citing refs
⚠ - Caution  Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs  With Analysis Available
Ⓘ - Citation information available
* Click on any Shepard's signal to Shepardize® that case

<u>My Lexis™</u> | <u>Search</u> | <u>Research Tasks</u> | <u>Get a Document</u> | <i>Shepard's®</i> | <u>Alerts</u> | <u>Total Litigator</u> | <u>Transactional Advisor</u> | <u>Counsel Selector</u>
<u>History</u> | <u>Delivery Manager</u> | <u>Dossier</u> | <u>Switch Client</u> | <u>Preferences</u> | <u>Sign Out</u> | <u>Help</u>

https //www lexis com/research/retrieve?cc=&pushme=1&tmpFBSel=all&totaldocs=&ta    11/12/2009

LexisNexis® About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc  All rights reserved



**<u>EXHIBIT C</u>**

**ADR Notice**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

In re                                              :        Chapter 11 Case No.
                                                   :
MOTORS LIQUIDATION COMPANY, *et al.*,              :        09-50026 (REG)
        f/k/a General Motors Corp., *et al.*       :
                                                   :
                        Debtors.                   :        (Jointly Administered)
                                                   :
------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION NOTICE

Service Date: 5/15/2013

Matter Name: Roger L Thacker Roger L Sanders Thomas J Hanson

Notice Address:

HELMER MARTINS RICE & POPHAM CO, LPA
600 VINE ST SUITE 2704
CINCINNATI, OH 45202

| Designated Claim Number | Amount Stated in Proof of Claim | Claim Amount Cap |
|---|---|---|
| 27105 | $50,000,000 | N/A |

**Deadline to Respond: 6/5/2013**

        By this notice (the "**ADR Notice**"), the Motors Liquidation Company GUC Trust (the
"**GUC Trust**") designates the above-identified claim(s) (the "**Designated Claim(s)**") in the
above-referenced chapter 11 cases and submits the Designated Claim to alternative dispute
resolution, pursuant to the procedures (the "**ADR Procedures**") established by the Amended
Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of
Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the
United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy
Court**") on October 25, 2010, and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and
General Order M-390 Authorizing Implementation of Alternative Dispute Resolution
Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010
(together, the "**ADR Order**"). A copy of the ADR Procedures is posted on
www.mlcguctrust.com under the Documents tab. You may also contact the GUC Trust at 1-800-
414-9607 or by e-mail at claims@motorsliquidation.com with questions about this matter.

The GUC Trust has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offer the amounts set forth below for allowance of your Designated Claim(s) as [a] prepetition general unsecured nonpriority claim in full satisfaction of the Designated Claim(s) (the "**Settlement Offer**").

*You are required to return this ADR Notice with a Claimant's Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above* to:

Motors Liquidation Company GUC Trust
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn: ADR Claims Team
claims@motorsliquidation.com

In addition, to the extent your most recent proofs of claim do not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct, and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Claimant's Response.

If you do not return this ADR Notice with the requested information and a Claimant's Response to the Settlement Offer to the GUC Trust so that it is received by the Deadline to Respond, your Designated Claims will be subject to mandatory mediation as set forth in Section II.B of the ADR Procedures.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** IF YOUR DESIGNATED CLAIM CANNOT BE SETTLED.  PLEASE MARK THE BOX BELOW INDICATING WHETHER YOU (i) CONSENT TO **BINDING ARBITRATION** OR (ii) **DO NOT** CONSENT TO (AND SEEK TO **OPT OUT** OF) **BINDING ARBITRATION**.  PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN.  IN ADDITION, ANY ATTEMPT TO OPT OUT OF **BINDING ARBITRATION** IN THE RESPONSE TO THIS ADR NOTICE SHALL BE INEFFECTIVE IF YOU PREVIOUSLY HAVE CONSENTED IN WRITING (EITHER PREPETITION OR POSTPETITION) TO **BINDING ARBITRATION** AS A MEANS TO RESOLVE YOUR CLAIM.

Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**: The Debtors offer you an allowed general unsecured, nonpriority claim in the amount of **$100,000** in full satisfaction of your Designated Claim, to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan.

The only permitted response (the "**Claimant's Response**") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled

with a counteroffer (a "**Counteroffer**"). Accordingly, please select your Claimant's Response below:

> *Please indicate below if you accept or reject the GUC Trust's Settlement Offer by marking the appropriate box. If you reject the Settlement Offer, please make your counteroffer where indicated.*
>
> ☐  I/we agree to and accept the terms of the Settlement Offer.
>
> **or**
>
> ☑  I/we reject the Settlement Offer. However, I/we will accept, and propose as a **Counteroffer**, the following allowed claim in full satisfaction of the Designated Claim(s), to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan:
>
> Debtor: _____
> Amount: $_____
> Priority:  unsecured nonpriority claim (presumed) or ☐ other:*_____
>
> *\*Note - If you choose a different priority, you must attach an explanation and any relevant documentation.*

        Section II.A.3 of the ADR Procedures sets forth the restrictions on Counteroffers. Your Counteroffer may not (a) improve the priority sets forth in your most recent timely-filed proof of claim or amended proof of claim, or (b) exceed the lesser of the Claim Amount Cap (as defined in the ADR Order) or the amount set forth in your most recent timely-filed proof of claim(s) or amended proof of claim. You may not amend your proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority.

> *Please indicate below whether you consent to binding arbitration for your Designated Claim by marking the appropriate box.*
>
> ☐  I/ WE CONSENT TO BINDING ARBITRATION.
>
> **or**
>
> ☑  I/WE DO NOT CONSENT TO BINDING ARBITRATION. *or mediation*

[Signature of the Designated Claimant's Authorized Representative]

By: *James B Helmer*
Printed Name
*James B. Helmer, Jr.*

**<u>EXHIBIT D</u>**

**Claimants' Response to ADR Notice**

# HELMER, MARTINS, RICE & POPHAM
## CO., L.P.A.

### ATTORNEYS AT LAW

600 Vine Street
Suite 2704
Cincinnati, Ohio 45202

James B. Helmer, Jr.*
Paul B. Martins
Julie Webster Popham**
Robert M. Rice
Jennifer L. Lambert
Erin M. Campbell
James A. Tate
*Also D.C. Bar
**Also KY Bar

Telephone: (513) 421-2400
Telecopier: (513) 421-7902

Of Counsel:
Robert Clark Neff, Jr.

May 30, 2013

**Via U.S. Mail**

Motors Liquidation Company GUC Trust
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn: ADR Claims Team

>        **Re:**    *In re: MOTORS LIQUIDATION COMPANY, et al., f/k/a General Motors*
>        *Corp., et al.*, **Chapter 11 Case No. 09-50026 (REG)**

ADR Claims Team:

   This office recently received an Alternative Dispute Resolution Notice ("ADR Notice")
from your office relating to a Proof Of Claim we filed on behalf of Roger L. Thacker, Roger L.
Sanders and Thomas J. Hanson in the above-referenced proceeding (Designated Claim Number
27105 ("Designated Claim")). The ADR Notice states that it submits the Designated Claim to
alternative dispute resolution procedures ("ADR Procedures") pursuant to an October 25, 2010,
Order from the Bankruptcy Court authorizing those ADR Procedures ("ADR Order").

   We have reviewed the ADR Order. By its terms, the ADR Order states that the ADR
Procedures do not apply to the Designated Claim. Specifically, Page 3 of the ADR Order states
that the ADR Procedures do not apply to claims of the United States of America. In addition,
Page 3 of the ADR Order states that the United States of America cannot be bound by any
determination made pursuant to the ADR Procedures as to any other party.

Motors Liquidation Company GUC Trust
ADR Claims Team
May 30, 2013
Page 2 of 2

The ADR Procedures do not apply to the Designated Claim because the Designated Claim is based upon a civil cause of action filed by the undersigned against General Motors Corporation (and others) pursuant to the Federal False Claims Act, 31 U.S.C. § 3729, *et seq.* ("FCA").  As the terms of the FCA make clear, the United States of America is the real-party-in-interest in FCA actions, even when the United States Department of Justice declines to intervene in the action.  Pursuant to the FCA, the United States of America receives at least 70% of any amounts recovered in a successful FCA action.

As such, the Designated Claim is based, at least in part, on claims that we filed on behalf of the United States of America and are pursuing on behalf of the United States of America.  The ADR Procedures therefore do not apply to the Designated Claim.

We therefore are bound to decline any submission of the Designated Claim to resolution pursuant to the ADR Procedures.  We are also bound to decline to consent to binding arbitration, as requested in the ADR Notice.  We are also bound to decline the Settlement Offer contained in the ADR Notice.  An executed copy of the ADR Notice is enclosed.

Should you have any questions, please feel free to contact me.

Sincerely,

James B. Helmer, Jr.

Enclosure

cc:    Paul J. Wogaman, Esq., United States Department of Justice

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                              :

In re                           :          Chapter 11 Case No.
                                :

MOTORS LIQUIDATION COMPANY, *et al.*, :      09-50026 (REG)
     f/k/a General Motors Corp., *et al.*   :

                             :
               Debtors.       :      (Jointly Administered)
                                :
------------------------------------------------------------x

## ALTERNATIVE DISPUTE RESOLUTION NOTICE

Service Date: 5/15/2013

Matter Name: Roger L Thacker Roger L Sanders Thomas J Hanson

Notice Address:

HELMER MARTINS RICE & POPHAM CO, LPA
600 VINE ST SUITE 2704
CINCINNATI, OH 45202

| Designated Claim Number | Amount Stated in Proof of Claim | Claim Amount Cap |
|---|---|---|
| 27105 | $50,000,000 | N/A |

**Deadline to Respond: 6/5/2013**

      By this notice (the "**ADR Notice**"), the Motors Liquidation Company GUC Trust (the "**GUC Trust**") designates the above-identified claim(s) (the "**Designated Claim(s)**") in the above-referenced chapter 11 cases and submits the Designated Claim to alternative dispute resolution, pursuant to the procedures (the "**ADR Procedures**") established by the Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") on October 25, 2010, and the Supplemental Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Resolution Procedures, Including Mandatory Mediation entered by the Bankruptcy Court on April 29, 2010 (together, the "**ADR Order**"). A copy of the ADR Procedures is posted on www.mlcguctrust.com under the Documents tab. You may also contact the GUC Trust at 1-800-414-9607 or by e-mail at claims@motorsliquidation.com with questions about this matter.

The GUC Trust has reviewed your Designated Claim(s) and, pursuant to the ADR Procedures, offer the amounts set forth below for allowance of your Designated Claim(s) as [a] prepetition general unsecured nonpriority claim in full satisfaction of the Designated Claim(s) (the "**Settlement Offer**").

*You are required to return this ADR Notice with a Claimant's Response (as defined below) to the Settlement Offer by no later than the **Deadline to Respond** indicated above to:*

Motors Liquidation Company GUC Trust
2101 Cedar Springs Road, Suite 1100
Dallas, TX 75201
Attn: ADR Claims Team
claims@motorsliquidation.com

In addition, to the extent your most recent proofs of claim do not: (a) state the correct amount of your Designated Claim(s); (b) expressly identify each and every cause of action and legal theory on which you base your Designated Claim(s); (c) include current, correct, and complete contact information of your counsel or other representative; or (d) provide all documents on which you rely in support of your Designated Claim(s), you hereby are requested to provide all such information and documentation with your Claimant's Response.

If you do not return this ADR Notice with the requested information and a Claimant's Response to the Settlement Offer to the GUC Trust so that it is received by the Deadline to Respond, your Designated Claims will be subject to mandatory mediation as set forth in Section II.B of the ADR Procedures.

IN ADDITION, YOU ARE REQUIRED TO INDICATE EXPRESSLY WHETHER YOU CONSENT TO **BINDING ARBITRATION** IF YOUR DESIGNATED CLAIM CANNOT BE SETTLED. PLEASE MARK THE BOX BELOW INDICATING WHETHER YOU (i) CONSENT TO **BINDING ARBITRATION** OR (ii) **DO NOT** CONSENT TO (AND SEEK TO **OPT OUT** OF) **BINDING ARBITRATION**. PLEASE NOTE THAT YOUR CONSENT TO **BINDING ARBITRATION** CANNOT SUBSEQUENTLY BE WITHDRAWN. IN ADDITION, ANY ATTEMPT TO OPT OUT OF **BINDING ARBITRATION** IN THE RESPONSE TO THIS ADR NOTICE SHALL BE INEFFECTIVE IF YOU PREVIOUSLY HAVE CONSENTED IN WRITING (EITHER PREPETITION OR POSTPETITION) TO **BINDING ARBITRATION** AS A MEANS TO RESOLVE YOUR CLAIM.

Details about the arbitration process, including the sharing of fees, are set forth in Section II.C of the ADR Procedures.

YOU MUST RESPOND TO THE FOLLOWING SETTLEMENT OFFER:

**Settlement Offer**: The Debtors offer you an allowed general unsecured, nonpriority claim in the amount of **$100,000** in full satisfaction of your Designated Claim, to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan.

The only permitted response (the "**Claimant's Response**") to the Settlement Offer are (a) acceptance of the Settlement Offer or (b) rejection of the Settlement Offer coupled

with a counteroffer (a "**Counteroffer**").  Accordingly, please select your Claimant's Response below:

> *Please indicate below if you accept or reject the GUC Trust's Settlement Offer by marking the appropriate box.  If you reject the Settlement Offer, please make your counteroffer where indicated.*
>
> ☐ I/we agree to and accept the terms of the Settlement Offer.
>
> **or**
>
> ☑ I/we reject the Settlement Offer.  However, I/we will accept, and propose as a Counteroffer, the following allowed claim in full satisfaction of the Designated Claim(s), to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan:
>
> Debtor: _____
> Amount:  $ _____
> Priority:  unsecured nonpriority claim (presumed) or ☐ other:* _____
>
> *\*Note - If you choose a different priority, you must attach an explanation and any relevant documentation.*

       Section II.A.3 of the ADR Procedures sets forth the restrictions on Counteroffers. Your Counteroffer may not (a) improve the priority sets forth in your most recent timely-filed proof of claim or amended proof of claim, or (b) exceed the lesser of the Claim Amount Cap (as defined in the ADR Order) or the amount set forth in your most recent timely-filed proof of claim(s) or amended proof of claim.  You may not amend your proof of claim solely for the purpose of proposing a Counteroffer of a higher amount or a better priority.

> *Please indicate below whether you consent to binding arbitration for your Designated Claim  by marking the appropriate box.*
>
> ☐ I/ WE CONSENT TO BINDING ARBITRATION.
>
> **or**
>
> ☐ I/WE DO NOT CONSENT TO BINDING ARBITRATION. *or mediation*

       [Signature of the Designated Claimant's Authorized Representative]

By: *James B Helmer*
    Printed Name
*James B. Helmer, Jr.*

## EXHIBIT E

**The United States' Notice of Election to Decline Intervention**

US_ACTIVE:\44282427\6\72240.0639



FILED

MAY 5 1999

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH J. MURPHY, Clerk
CINCINNATI, OHIO

```
UNITED STATES OF AMERICA          :    Case No. C-1-95-970
ex rel. ROGER SANDERS, et al.,    :
                                  :
          Plaintiffs,             :    Judge Weber
                                  :
     v.                           :    UNITED STATES' NOTICE
                                  :    OF ELECTION TO DECLINE
ALLISON ENGINE COMPANY, INC., et al.,: INTERVENTION
                                  :
          Defendants.             :                    RECEIVE
                                  :    FILED UNDER SEAL
                                  :
     - - - - - - - - - - - -           MAY 0 6 199
```

Helmer,
Martins & Morgan Co

        Pursuant to the False Claims Act, 31 U.S.C. § 3730(b)(4)(B),
the United States notifies the Court of its decision not to
intervene in this action with respect to the Amended Complaint
filed under seal by the relators on January 26, 1999.  On
December 31, 1998, the United States notified the Court of its
decision not to intervene herein with respect to the original
Complaint filed by the relators.

        Although the United States declines to intervene, negative
inferences should not be drawn from that declination.  We
respectfully refer the Court to 31 U.S.C. § 3730(b)(1), which
allows the relators to maintain the action in the name of the
United States; providing, however, that the "action may be
dismissed only if the Court and the Attorney General give written
consent to the dismissal and their reasons for consenting."  Id.

        Therefore, should either the relators or the defendants
propose that this action be dismissed, settled, or otherwise

discontinued, the United States requests that this Court solicit the written consent of the United States before ruling or granting its approval.  <u>Searcy v., Phillips Electronics North America Corp.</u>, 117 F.3d 154 (5th Cir. 1997)(United States may veto settlement between relator and defendant); <u>United States ex rel. Gibeault v. Texas Instr. Corp.</u>, 25 F.3d 725 (9th Cir. 1994) (United States entitled to hearing on objections to settlement).

Further, under 31 U.S.C. § 3730(c)(3), the United States requests that all pleadings filed in this action, including notices of deposition and written discovery, be served upon the United States; the United States also requests that orders issued by the Court be sent to counsel.  The United States reserves its right to order any deposition transcripts at its expense and to intervene in this action, for good cause, at a later date.

Also, if the relators further seek to amend the complaint, and identify additional grounds for recovery, any such amended complaint and/or motion to amend the complaint should be filed under seal so that the United States will have the sixty days provided by statute to decide whether to participate in any new allegations.  31 U.S.C. § 3730(b)(2).

Finally, the United States requests that only the original Complaint, the Amended Complaint, the United States' notices to decline intervention, this Court's order of January 7, 1999 and the procedural order requested herein be unsealed and served upon the defendants.  All other contents of the Court's file in this matter (including, but not limited to, any applications filed by

the United States for an extension of the sixty-day investigative period) should remain under seal and not be made public or served upon the defendants.

A proposed order accompanies this notice.

Respectfully submitted,

DAVID W. OGDEN
Acting Assistant Attorney General

SHARON J. ZEALEY
United States Attorney

*Gerald F. Kaminski*

GERALD F. KAMINSKI (0012532)
Assistant United States Attorney
220 Potter Stewart U.S. Courthouse
100 East Fifth Street
Cincinnati, Ohio 45202
(513) 684-3711

*Dennis C. Egan by Gerald F Kaminski*

MICHAEL F. HERTZ
JOYCE R. BRANDA
DENNIS C. EGAN
Attorneys, Civil Division
Department of Justice
P.O. Box 261
Ben Franklin Station
Washington, D.C.  20044
(202) 307-0189

Dated: *May 5, 1999*

3

## CERTIFICATE OF SERVICE

I hereby certify that on this ___5th___ day of May, 1999, I
caused a copy of the United States' Notice of Election to Decline
Intervention and proposed order to be delivered by first-class
mail, postage prepaid, to the following:

> James B. Helmer, Jr., Esq.
> Paul B. Martins, Esq.
> Helmer, Martins & Morgan Co.
> 1900 Fourth & Walnut Centre
> 105 East Fourth Street
> Cincinnati, Ohio 45202

GERALD F. KAMINSKI
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. ROGER SANDERS, et al., | : | Case No. C-1-95-970 |
|  | : |  |
| Plaintiffs, | : | Judge Weber |
|  | : |  |
| v. | : |  |
|  | : |  |
| ALLISON ENGINE COMPANY, INC., et al.,: | | |
|  | : | **ORDER** |
| Defendants. | : |  |
|  | : |  |

- - - - - - - - - - -

The United States having declined to intervene with respect to both the original Complaint and the Amended Complaint filed in this qui tam False Claims Act lawsuit, and having requested a procedural order under 31 U.S.C. § 3730(b)(1) and (c)(3), for good cause shown, it is

ORDERED that the original Complaint, the Amended Complaint, the United States' notices of election to decline intervention, this Court's order of January 7, 1999 and this order shall be unsealed and shall be served upon the defendants; it is

FURTHER ORDERED that all other contents of the Court's file in this action shall remain under seal and not be made public or served upon the defendants; it is

FURTHER ORDERED that the parties shall serve all pleadings, including applications, motions, supporting memoranda, and written discovery upon the United States, as provided for in 31 U.S.C. § 3730(c)(3). The United States may order any deposition

transcripts at its expense and is entitled to intervene in this action, for good cause, at any time; it is

FURTHER ORDERED that all orders of this Court shall be sent to counsel for the United States; it is

FURTHER ORDERED that any further amended complaint alleging new grounds for liability under the False Claims Act, and any motion for leave to file such an amended complaint, be filed under seal by relators to permit the United States to have sixty (60) days to exercise its right to participate or decline to participate under 31 U.S.C. § 3730(b)(2) in any new claims alleged by relators; and, it is

FURTHER ORDERED that should the relators, the defendants, or both propose that this action be dismissed, settled, or otherwise discontinued, the written consent of the United States shall be sought before seeking any ruling from the Court.

IT IS SO ORDERED,

This _____ day of May, 1999.

_____
UNITED STATES DISTRICT JUDGE

2

# PROPOSED ORDER

**HEARING DATE AND TIME: August 1, 2013 at 10:30 a.m. (Eastern Time)**
**RESPONSE DEADLINE: July 25, 2013 at 4:00 p.m. (Eastern Time)**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 Case No. |
| | : | |
| MOTORS LIQUIDATION COMPANY, *et al.*, | : | 09-50026 (REG) |
|      f/k/a General Motors Corp., *et al.* | : | |
| | : | |
|         Debtors. | : | (Jointly Administered) |
| | : | |

--------------------------------------------------------------x

## ORDER GRANTING MOTORS LIQUIDATION COMPANY GUC TRUST'S MOTION TO COMPEL ROGER L. THACKER, ROGER L. SANDERS, AND THOMAS J. HANSON TO PARTICIPATE IN MANDATORY MEDIATION WITH RESPECT TO CLAIM NO. 27105 PURSUANT TO THE SECOND AMENDED ADR ORDER

Upon the motion, dated June 28, 2013 (the "**Motion**"),[1] of the Motors Liquidation

Company GUC Trust (the "**GUC Trust**"), to compel Roger L. Thacker, Roger L. Sanders, and

Thomas J. Hanson (collectively, the "**Claimants**") to participate in mandatory mediation with

respect to Claim No. 27105 (the "**Thacker Claim**") pursuant to the *Second Amended Order*

*Granting Motion to Supplement Amended Order Pursuant to 11 U.S.C. § 105(a) and General*

*Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including*

*Mandatory Mediation* (the "**Second Amended ADR Order**") (ECF No. 11777), all as more fully

set forth in the Motion; and due and proper notice of the Motion having been provided, and it

appearing that no other or further notice need be provided; and the Court having found and

determined that the relief sought in the Motion is in the best interests of the GUC Trust, creditors,

and all parties in interest and that the legal and factual bases set forth in the Motion establish just

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

US_ACTIVE:\44282427\6\72240.0639

cause for the relief granted herein; and after due deliberation and sufficient cause appearing

therefor, it is

ORDERED that the relief requested in the Motion is granted as provided herein;

and it is further

ORDERED that the Claimants are required to participate in mandatory mediation

with respect to the Thacker Claim pursuant to the Second Amended ADR Order; and it is further

ORDERED that the Claimants are directed to comply with the ADR Procedures in

all other respects, including, without limitation, reimbursing the GUC Trust for the Claimants'

share of the costs of conducting the mediation; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all

matters arising from or related to this Order.

Dated: New York, New York
_____, 2013

_____
United States Bankruptcy Judge

US_ACTIVE:\44282427\6\72240.0639