# Index No. 1

*Indexed as:*

# Central Trust Co. v. Rafuse

**Central Trust Company, appellant;**

**v.**

**Jack P. Rafuse and Franklyn W. Cordon, respondents.**

[1986] 2 S.C.R. 147

[1986] S.C.J. No. 52

31 D.L.R. (4th) 481

File No: 17753

Supreme Court of Canada

1984: December 6 / 1986: October 9.

**Present: Dickson C.J. and Beetz, Estey, McIntyre, Lamer,
Wilson and Le Dain JJ.**

ON APPEAL FROM THE COURT OF APPEAL FOR NOVA SCOTIA

*Barristers and solicitors -- Professional liability -- Solicitors retained to perform legal services in connection with mortgage transaction -- Mortgage later found void for non-compliance with Companies Act -- Whether solicitors liable in tort or whether liability restricted to contract -- If liable in tort, whether or not action statute-barred -- Whether or not solicitors negligent -- Whether or not contributory negligence -- Whether action not maintainable because based on illegal transaction -- Companies Act, R.S.N.S. 1967, c. 42, s. 96(5) -- The Statute of Limitations, R.S.N.S. 1967, c. 168, s. 2(1)(c).*

*Torts -- Negligence -- Duty of care -- Solicitors -- Solicitors retained to perform legal services in connection with mortgage transaction -- Mortgage later found void for non-compliance with Companies Act -- Whether or not solicitors concurrently liable in tort -- Whether or not contributory negligence -- Whether action not maintainable because based on illegal transaction -- Whether or not action statute-barred.*

*Contracts -- Solicitors -- Solicitors retained to perform legal services in connection with mortgage transaction -- Mortgage later found void for non-compliance with Companies Act -- Whether solicitors' liability founded solely in contract and hence statute-barred -- Whether solicitors concurrently liable in tort, and if so, whether or not action statute-barred.*

Respondent solicitors acted for the purchasers of all the shares in the capital stock of Stonehouse Motel and Restaurant Limited. A condition of the agreement of purchase and sale was that the purchasers would obtain a mortgage on the Stonehouse property. The proceeds of the mortgage were to be paid to the vendor in part [page148] satisfaction of the purchase price of the shares. One of the purchasers on behalf of Stonehouse applied to appellant's predecessor for a mortgage loan and, in accordance with the practice in such cases, the trust company retained the respondents to perform the necessary legal services in connection with the mortgage transaction. The sale closed, a first mortgage on the Stonehouse property and a chattel mortgage on its equipment were executed and the vendor was paid with funds that included the proceeds of the mortgage loan. The mortgage on the property was certified by respondent Cordon as forming a first charge on the property.

Appellant instituted an action for foreclosure against Stonehouse following default on the mortgage. Both Stonehouse and a creditor with registered judgments intervened to oppose the action, raising the defence that the mortgage was void in that it was contrary to s. 96(5) of the Nova Scotia Companies Act. This provision made it unlawful for a company to give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase made or to be made by any person of any shares in the company.

Appellant instituted its action against the respondents for breach of contract aid for negligence after this Court declared the mortgage to be void as a whole as being contrary to s. 96(5). The action was dismissed at trial where respondents were found not to have been negligent. The Court of Appeal found respondents negligent but dismissed the appeal on the ground that the action was statute-barred.

The principal issue in this appeal was whether a solicitor is liable to a client in tort as well as in contract for the damage caused by a failure to meet the requisite standard of care in the performance of services for which the solicitor has been retained. A consequential issue, if the requisite standard of care was not met, was whether the appellant's action against the respondents is statute-barred.

Held:   The appeal should be allowed.

If the respondent solicitors were negligent in the performance of the professional services for which they were retained, they would be liable in tort as well as contract to the appellant, subject to the other defences which they raised.

[page149]

 The common law duty of care that is created by a relationship of sufficient proximity, in accordance with the general principle affirmed by Lord Wilberforce in Anns v. Merton London Borough Council, is not confined to relationships that arise apart from contract. Although the relationships in Donoghue v. Stevenson, Hedley Burne and Anns were all of a non-contractual nature and there was necessarily reference in the judgments to a duty of care that exists apart from or independently of contract, nothing in the statements of general principle in those cases suggests that the principle was to be confined to relationships that arise apart from contract. The question is whether there is a relationship of sufficient proximity, not how it arose. The principle of tortious liability is a general one for reasons of public policy. A common law duty of care may be created by a relationship of proximity that would not have arisen but for a contract.

What is undertaken by the contract will indicate the nature of the relationship that gives rise to the common law duty of care, but the nature and scope of the duty of care that is asserted as the foundation of the tortious liability must not depend on specific obligations or duties created by the express terms of the contract. It is in that sense that the common law duty of care must be independent of the contract. The distinction, in so far as the terms of the contract are concerned, is, broadly speaking, between what is to be done and how it is to be done. A claim cannot be said to be in tort if it depends for the nature and scope of the asserted duty of care on the manner in which an obligation or duty has been expressly and specifically defined by a contract. Where the common law duty of care is co-extensive with that which arises as an implied term of the contract it does not depend on the terms of the contract, and there is nothing flowing from contractual intention which should preclude reliance on a concurrent or alternative liability in tort. The same is also true of reliance on a common law duty of care that falls short of a specific obligation or duty imposed by the express terms of a contract.

A concurrent or alternative liability in tort will not be admitted if its effect would be to permit the plaintiff to circumvent or escape a contractual exclusion or limitation of liability for the act or omission that would constitute the tort. Subject to this qualification, where concurrent liability in tort and contract exists the plaintiff has the right to assert the cause of action that [page150] appears to be most advantageous to him in respect of any particular legal consequence.

These principles apply to the liability of a solicitor to a client for negligence in the performance of the professional services for which he has been retained. There is no sound reason of principle or policy why the solicitor should be in a different position in respect of concurrent liability from that of other professionals.

The basis of the solicitor's liability in tort for negligence and the client's right in such case to recover for purely financial loss is the principle affirmed in Hedley Byrne and treated in Anns as an application of a general principle of tortious liability for negligence based on the breach of a duty of

care arising from a relationship of sufficient proximity. That principle is not confined to professional advice but applies to any act or omission in the performance of the services for which a solicitor has been retained.

The respondent solicitors were negligent in failing to ascertain the existence of s. 96(5) of the Nova Scotia Companies Act, to perceive that it raised a problem concerning the validity of the proposed mortgage and to advise the Nova Scotia Trust Company accordingly. Their negligence was causative of the damage suffered by the trust company.

A solicitor is required to bring reasonable care, skill and knowledge to the performance of the professional service which he has undertaken. The requirement of professional competence that was particularly involved in this case was reasonable knowledge of the applicable or relevant law. A solicitor is not required to know all the law applicable to the performance of a particular legal service but he must have a sufficient knowledge of the fundamental issues or principles of law applicable to the particular work he has undertaken to enable him to perceive the need to ascertain the law on relevant points.

While the solicitor's duty of care has generally been stated in the context of contractual liability as arising as an implied term of the contract or retainer, the same duty arises as a matter of common law from the relationship of proximity created by the retainer. In the absence of special terms in the contract determining the [page151] nature and scope of the duty of care in a particular case, the duties of care in contract and in tort are the same.

Respondent solicitors acted negligently. The fact that the capacity of a corporation to borrow and give security may be limited or subjected to certain conditions by the provisions of the applicable Companies Act is such basic knowledge that a reasonably competent solicitor must be held to possess it, whether he is a general practitioner or a specialist. It is knowledge which a solicitor who undertakes to do the legal work to obtain a mortgage or other security from a corporation must possess, and with it there is a duty to exercise reasonable care and skill to ascertain by an examination of the relevant legislation what limits or conditions it imposes upon the capacity of a corporation to give security. A reasonably competent solicitor, knowing that the mortgage was being given by Stonehouse to obtain a loan to assist in the purchase of its shares, would have recognized that s. 96(5) of the Companies Act raised a serious question concerning the legality or validity of the proposed mortgage. In the existing state of the law in 1968 the reasonably competent solicitor in Nova Scotia in 1968 would have perceived that there was a serious possibility that the mortgage might be held to be void as being contrary to s. 96(5) and would have advised his client accordingly.

The defence of contributory negligence must fail. The executive officers of the Nova Scotia Trust Company and the members of the Executive Committee of the Board of Directors did not have a duty of care with respect to the legal aspects of a transaction other than to retain qualified solicitors to perform the necessary legal services. They might well have been negligent had they relied on

their own legal judgment in such a case.

A solicitor cannot raise the defence of illegality if it is only because of his negligence that the exercise of the professional services for which he was retained results in the carrying out of an illegal transaction. There was no merit in the contention that because the mortgage was illegal appellant's retainer of the respondents was also illegal and thus unenforceable as a basis of the appellant's action for breach of contract and negligence.

Appellant's action for negligence was not statute-barred. A cause of action arises for purposes of a [page152] limitation period when the material facts on which it is based have been discovered or ought to have been discovered by the plaintiff by the exercise of reasonable diligence. That rule should be followed and applied here. There is no principled reason for distinguishing in this regard between an action for injury to property and an action for the recovery of purely financial loss caused by professional negligence. Since the respondents gave the Nova Scotia Trust Company a certificate on January 17, 1969 that the mortgage was a first charge on the Stonehouse property, the earliest that appellant discovered or should have discovered respondents' negligence by the exercise of reasonable diligence was in April or May 1977 when the validity of the mortgage was challenged in the action for foreclosure. Accordingly, appellant's cause of action in tort did not arise before that date and its action against the respondents is not statute-barred.

## Cases Cited

Considered:  Nunes Diamonds (J.) Ltd. v. Dominion Electric Protection Co., [1972] S.C.R. 769; Smith (G.I.) v. McInnis, [1978] 2 S.C.R. 1357; Hedley Byrne & Co. v. Heller & Partners Ltd., [1964] A.C. 465; Elder, Dempster & Co. v. Paterson, Zochonis & Co., [1924] A.C. 522; Scruttons Ltd. v. Midland Silicones Ltd., [1962] A.C. 446; Halvorson v. McLellan & Co., [1973] S.C.R. 65; Nocton v. Lord Ashburton, [1914] A.C. 932; Groom v. Crocker, [1939] 1 K.B. 194; Esso Petroleum Co. v. Mardon, [1976] Q.B. 801; Midland Bank Trust Co. v. Hett, Stubbs & Kemp, [1979] Ch. 384; Aluminum Products (Qld.) Pty. Ltd. v. Hill, [1981] Qd.R. 33; Macpherson & Kelley v. Kevin J. Prunty & Associates, [1983] 1 V.R. 573; Steljes v. Ingram (1903), 19 T.L.R. 534; Finlay v. Murtagh, [1979] I.R. 249; Dominion Chain Co. v. Eastern Construction Co. (1976), 68 D.L.R. (3d) 385; McLaren Maycroft & Co. v. Fletcher Development Co., [1973] 2 N.Z.L.R. 100; Brown v. Boorman (1844), 11 Cl. & F.1, affirming (1842), 3 Q.B. 511; Lister v. Romford Ice and Cold Storage Co., [1957] A.C. 555, affirming [1956] 2 Q.B. 180; Matthews v. Kuwait Bechtel Corp., [1959] 2 Q.B. 57; John Maryon International Ltd. v. New Brunswick Telephone Co. (1982), 141 D.L.R. (3d) 193; Tai Hing Cotton Mill Ltd. v. Liu Chong Hing Bank Ltd., [1985] 2 All E.R. 947, reversing [1984] 1 Lloyd's L.R. 555; Ross v. Caunters, [1980] Ch. 297; Schwebel v. Telekes, [1967] 1 O.R. 541; Sealand of the Pacific v. Robert C. McHaffie Ltd (1974) 51 D.L.R. (3d) 702; Giffels Associates Ltd. v. Eastern Construction Co., [1978] 2 S.C.R. 1346; Messineo v. Beale (1978), 20 O.R. (2d) 49; Jacobson Ford-Mercury Sales Ltd. v. Sivertz (1979), 103 D.L.R. [page153] (3d) 480; Surrey (District of) v. Carroll-Hatch & Associates Ltd. (1979), 101 D.L.R. (3d) 218; Canadian Western Natural Gas Co. v. Pathfinder Surveys Ltd. (1980), 12 Alta. L.R. (2d) 135; Leigh and

Sillivan Ltd. v. Aliakmon Shipping Co., [1985] 2 W.L.R. 289; Wabasso Ltd. v. National Drying Machinery Co., [1981] 1 S.C.R. 578; Thibault v. Central Trust Company of Canada, [1963] S.C.R. 312; Cartledge v. E. Jopling & Sons Ltd., [1963] A.C. 758; Kamloops (City of) v. Nielsen, [1984] 2 S.C.R. 2; Pirelli General Cable Works Ltd. v. Oscar Faber & Partners, [1983] 2 A.C. 1; referred to: Central and Eastern Trust Co. v. Irving Oil Ltd., [1980] 2 S.C.R. 29, affirming (1978), 89 D.L.R. (3d) 374, reversing (1977), 81 D.L.R. (3d) 495; Howell v. Young (1826), 5 B. & C. 259; Bean v. Wade (1885), 2 T.L.R. 157; Smith v. Fox (1848), 6 Hare 386, 67 E.R. 1216; Jarvis v. Moy, Davies, Smith, Vandervell & Co., [1936] 1 K.B. 399; Kelly v. Metropolitan Railway Co., [1895] 1 Q.B. 944; Turner v. Stallibrass, [1898] 1 Q.B. 56; Sachs v. Henderson, [1902] 1 K.B. 612; Edwards v. Mallan, [1908] 1 K.B. 1002; Jackson v. Mayfair Window Cleaning Co., [1952] 1 All E.R. 215; Clark v. Kirby-Smith, [1964] 1 Ch. 506; Bagot v. Stevens Scanlan & Co., [1966] 1 Q.B. 197; Cook v. Swinfen, [1967] 1 W.L.R. 457; Heywood v. Wellers, [1976] Q.B. 446; Russell v. Palmer (1767) 2 Wils. K.B. 325, 95 E.R. 837; Godefroy v. Jay (1831), 7 Bing. 413, 131 E.R. 159; Batty v. Metropolitan Property Realisations Ltd., [1978] Q.B. 554; Photo Production Ltd. v. Securicor Transport Ltd., [1978] 1 W.L.R. 856; Forster v. Outred & Co., [1982] 2 All E.R. 753; Dabous v. Zuliani (1976), 12 O.R. (2d) 230; Donoghue v. Stevenson, [1932] A.C. 562; Hartman v. The Queen in right of Ontario (1973), 2 O.R. (2d) 244; Hall v. Brooklands Auto Racing Club, [1933] 1 K.B. 205; Power v. Halley (1978), 88 D.L.R. (3d) 381; Royal Bank of Canada v. Clark and Watters (1978), 22 N.B.R. (2d) 693, 39 A.P.R. 693; Anns v. Merton London Borough Council, [1978] A.C. 728; Attorney-General of Nova Scotia v. Aza Avramovitch Associates Ltd. (1984), 11 D.L.R. (4th) 588; Consumers Glass Co. v. Foundation Co. of Canada/Compagnie Foundation du Canada (1985), 20 D.L.R. (4th) 126; Margarine Union G.m.b.H. v. Cambay Prince Steamship Co. (The "Wear Breeze"), [1969] 1 Q.B. 219; Rowe v. Turner Hopkins & Partners, [1982] 1 N.Z.L.R. 178; Flint & Walling Mfg. Co. v. Beckett, 79 N.E. 503 (1906); Arenson v. Casson Beckman Rutley & Co., [1977] A.C. 405; Junior Books Ltd. v. Veitchi Co., [1983] 1 A.C. 521; Tracy v. Atkins (1979), 105 D.L.R. (3d) 632; Hett v. Pun Ponq (1890), 18 S.C.R. 290; Bannerman Brydone Folster & Co. v. Murray, [1972] N.Z.L.R. 411; Sparham-Souter v. Town and Country Developments (Essex) Ltd., [1976] Q.B. 858. [page154]

## Statutes and Regulations Cited

Bills of Lading Act, 1855, 18 & 19 Vict., c. 111, s. 1.
Civil Code, art. 1053.
Companies Act, R.S.N.B. 1952, c. 33, s. 37(1).
Companies Act, R.S.N.S. 1967, c. 42, s. 96(5).
Contributory Negligence Act, R.S.A. 1970, c. 65.
Contributory Negligence Act, R.S.B.C. 1960, c. 74.
County Courts Act, 1888, 51 & 52 Vict., c. 43, s. 66.
Limitation Act, 1939, 2 & 3 Geo. 6, c. 21, s. 26.
Limitation Act 1963, (U.K.), c. 47.
Limitations Act, S.B.C. 1975, c. 37, s. 16.
Municipal Act, R.S.B.C. 1960, c. 255, s. 738(2).

Negligence Act, R.S.O. 1970, c. 296, s. 2(1)(e).
Statute of Limitations, R.S.B.C. 1948, c. 191, s. 38.
Statute of Limitations, R.S.N.S. 1967, c. 168, s. 2(1)(c).
Tortfeasors Act, R.S.N.S. 1967, c. 307.

**Authors Cited**

American Jurisprudence, vol. 38, "Negligence" para. 20. American Jurisprudence, vol. 7, 2nd ed., "Attorneys at Law" para. 200. Charlesworth, John and R.A. Percy.  Charlesworth and Percy on Negligence, 7th ed.  Commonwealth Law Library no. 6. London:  Sweet and Maxwell, 1983. Dugdale, A.M. and K.M. Stanton. Professional Negligence. London:  Butterworths, 1982. Dwyer, John L.  "Solicitor's Negligence -- Tort or Contract?" (1982), 56 A.L.J. 524. Fifoot, Cecil H. Stewart.  History and Sources of the Common Law:  Tort and Contract.  London:  Stevens, 1949. French, Christine. "The Contract/Tort Dilemma" (1983), 5 Otago L.R. 236. Jackson, Rupert M. and John L. Powell.  Professional Negligence.  London:  Sweet and Maxwell, 1982. Mahoney, R.M. "Lawyers -- Negligence -- Standard of Care" (1985), 63 Can. Bar Rev. 221. Prosser, William Lloyd. "The Borderland of Tort and Contract."  In Selected Topics on the Law of Torts. Ann Arbor: University of Michigan Law School, 1953. Prosser, William Lloyd.  Handbook of the Law of Torts, 4th ed.  St. Paul, Minn.:  West Publishing, 1971. Prosser, William Lloyd, John W. Wade and Victor E. Schwartz. Cases and Materials on Torts, 6th ed.  Mineola, N.Y.: Foundation Press, 1976. Winfield, Sir Percy Henry.  Winfield on Tort, 7th ed.  By J.A. Jalowicz and T. Ellis Lewis. London:  Sweet and Maxwell, 1963.
[page155]

APPEAL from a judgment of the Nova Scotia Court of Appeal (1983), 57 N.S.R. (2d) 125, 120 A.P.R. 125, 147 D.L.R. (3d) 260, 28 R.P.R. 185, dismissing an appeal from a judgment of Hallett J. (1982), 53 N.S.R. (2d) 69, 109 A.P.R. 69, 139 D.L.R. 385, dismissing appellant's action. Appeal allowed.

R.A. Cluney, Q.C., and R.G. Belliveau, for the appellant.
Arthur R. Moreira, Q.C., Alexander S. Beveridge and Colin D. Bryson, for the respondents.

Solicitor for the appellant: R.A. Cluney, Halifax.
Solicitor for the respondents: Arthur W.R. Moreira, Halifax.

---

The judgment of the Court was delivered by

**1    LE DAIN J.**:-- The principal question in this appeal is whether a solicitor is liable to a client in

tort as well as in contract for the damage caused by a failure to meet the requisite standard of care in the performance of the services for which the solicitor has been retained. The consequential issue in the appeal is whether, if there was a failure to meet the requisite standard of care, the appellant's action against the respondents is statute-barred.

**2**    The appeal is by leave of the Nova Scotia Supreme Court, Appeal Division, from the judgment of the Appeal Division on March 30, 1983 dismissing the appeal from the judgment of Hallett J. in the Trial Division on August 9, 1982, which dismissed the appellant's action in damages against the respondent solicitors for breach of contract and negligence in failing to advise their client that a mortgage might, if challenged, be held to be void, as it was later held by this Court, because of a statutory provision making it unlawful for a company to give financial assistance in connection with a purchase of its shares.

I

**3**    The relationship of solicitor and client arose in the following manner. The respondent solicitors were acting for persons who had agreed to purchase all the shares in the capital stock of Stonehouse Motel and Restaurant Limited (hereinafter [page156] referred to as "Stonehouse") for $315,000. It was a condition of the agreement of purchase and sale that the purchasers would obtain a mortgage on the property of Stonehouse for not less than $225,000, the proceeds of which would be paid to the vendor in part satisfaction of the purchase price of the shares. An application for the mortgage loan was made by one of the purchasers on behalf of Stonehouse to the Nova Scotia Trust Company, and in accordance with the practice in such cases the respondents were retained by the trust company to perform the necessary legal services in connection with the mortgage transaction. A letter dated December 12, 1968 from the trust company to the respondent Rafuse, which confirmed the approval of the mortgage loan to Stonehouse, said: "We would therefore ask you to kindly search the title to the property in question ensuring it is good and valid for our purposes and provide us with your Certificate." The mortgage loan was approved and the instructions given to the respondent solicitors on behalf of the trust company by persons who had had legal training.

**4**    At the closing of the sale on December 31, 1968 the purchasers of the shares, acting as the new officers of Stonehouse, executed a first mortgage on the real property and a chattel mortgage on the equipment of the company as security for a loan of $225,000 from the trust company. The respondent Cordon, acting for both the purchasers and the trust company, gave the solicitors for the vendor a cheque in the amount of $300,000, the funds for which included the proceeds of $225,000 from the mortgage loan, in payment for the shares. On January 17, 1969 the respondent Cordon, reporting on behalf of his firm to the trust company concerning the mortgage transaction, said: "We hereby certify that the title to the above property is free and clear of all encumbrances and that the mortgage from Stone-House Motel and Restaurant Limited forms a first charge on the property, and that all taxes have been paid to December 31, 1969."

[page157]

**5**    The appellant, Central Trust Company, is the successor of the Nova Scotia Trust Company. On April 21, 1977 it instituted an action against Stonehouse for foreclosure of the mortgage. Irving Oil Limited, a creditor of Stonehouse with registered judgments, intervened to oppose the action. Both Stonehouse and Irving raised the defence that the mortgage was void as being contrary to s. 96(5) of the Nova Scotia Companies Act, R.S.N.S. 1967, c. 42, which provided:

> 96.    ...

> (5) Subject to this Section, it shall not be lawful for a company to give, whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of or in connection with a purchase made or to be made by any person of any shares in the company.

**6**    By judgment on November 25, 1977 in Central and Eastern Trust Co. v. Stonehouse Motel and Restaurant Ltd. (1977), 81 D.L.R. (3d) 495, the Nova Scotia Supreme Court, Trial Division (Hart J.), held that the mortgage was not void by reason of s. 96(5) and granted an order for foreclosure. On appeal from this judgment the Supreme Court of Nova Scotia, Appeal Division (Coffin, Macdonald and Pace JJ.A.), held on July 10, 1978 in Irving Oil Ltd. v. Central and Eastern Trust Co. (1978), 89 D.L.R. (3d) 374, that the mortgage was void by reason of s. 96(5) except for the amount by which the obligations of Stonehouse were to be reduced by application of the proceeds of the mortgage loan. On appeal from that judgment this Court held on April 22, 1980 in Central and Eastern Trust Co. v. Irving Oil Ltd., [1980] 2 S.C.R. 29, that the mortgage was void as a whole as being contrary to s. 96(5).

**7**    On October 28, 1980, following the judgment of this Court declaring the mortgage to be void, the appellant instituted its action against the respondents for breach of contract and negligence. It alleged negligence in failing to appreciate and advise the Nova Scotia Trust Company that the mortgage might be held to be void as being contrary [page158] to s. 96(5) of the Companies Act because it was given by Stonehouse to provide financial assistance in connection with the purchase of shares in the company.

**8**    In their defence the respondents contended: (a) that their liability, if any, was in contract only and not in tort; (b) that they had not been negligent, particularly in view of the conflicting judicial opinion on the question of the validity of the mortgage; (c) that there was contributory negligence on the part of the Nova Scotia Trust Company or those for whom it was responsible because of the approval of the mortgage loan and the instructions to the respondents by persons of legal training; (d) that the contract between the Nova Scotia Trust Company and the respondents, having as its object an illegal transaction, was itself illegal and could not therefore be the basis of an action in damages; and (e) the appellant's action was barred by The Statute of Limitations, R.S.N.S. 1967, c.

168.

**9**    Hallett J. in the Trial Division (1982), 139 D.L.R. (3d) 385, dismissed the appellant's action on the ground that the respondents had not been negligent. He did not deal with the other issues.

**10**    The Appeal Division (Cooper, Pace and Jones JJ.A.) (1983), 147 D.L.R. (3d) 260, held that the respondents had been negligent but dismissed the appeal on the ground that the action was barred by The Statute of Limitations. The Court of Appeal was of this view whether or not the appellant's action could be based on tort as well as contract, a question on which it did not express an opinion.

**11**    It was conceded by the appellant in this Court that if the respondent solicitors were liable in contract only the appellant's action was statute-barred. The issues in the appeal, in the order in which I propose to deal with them to the extent necessary for the disposition of the appeal, may be summarized as follows:

> 1.    Can a solicitor be liable to a client in tort as well as in contract for negligence in the [page159] performance of the professional services for which the solicitor has been retained?
> 2.    Were the respondent solicitors negligent in carrying out the mortgage transaction for the Nova Scotia Trust Company?
> 3.    Was there contributory negligence on the part of the Nova Scotia Trust Company or those for whom it was responsible?
> 4.    Is the appellant prevented from bringing its action because of the illegality of the mortgage?
> 5.    Is the appellant's action barred by The Statute of Limitations?

**12**    The parties are agreed on the quantum of damages if the respondents are liable. The terms of their agreement were noted by Hallett J. in his judgment as follows: "The defendants have agreed as to the quantum of the plaintiff's claim which consists of $424,434.04 outstanding on the mortgage for principal, interest and taxes, plus interest accruing daily after April 14, 1982, at the rate of $156.93 and legal fees of $56,759.46 incurred by the plaintiff in attempting to enforce the mortgage." This agreement as to quantum was reaffirmed by the parties in their factums in this Court.

## II

**13**    The question whether there can be concurrent liablity in contract and in tort for negligence in the performance of professional services has been the subject of conflicting judicial opinion and a great deal of academic commentary which has been overwhelmingly in favour of the recognition of concurrent liability in such a case. Important legal consequences have turned on the differences in the rules applicable to contractual and tortious liability. The three most important areas in which these differences have been reflected in the decisions on the question of concurrent liability are

limitation of actions, measure of damages and apportionment of liability. Although there has been an increasing judicial disposition to apply similar rules, or at least to reach similar results, with respect to these issues under the two kinds of [page160] liability, there are likely to remain differences of result in certain cases flowing from inherent differences between contract and tort. Although an assimilation of the rules or results under the two kinds of liability has been advocated as one response to the issue of concurrent liability, the question is unlikely to be rendered wholly academic by this clearly discernible development in the law. It has been the important difference of result, particularly in the three areas referred to, that has given the question of concurrent liability its policy focus and interest in the abundant judicial and academic opinion on the subject.

**14**    At least three major considerations are reflected in that body of opinion. The first is the view of those who oppose concurrent liability that where persons have entered into a contractual relationship their liability for an act or omission which constitutes a breach of contract should be governed entirely by the law of contract. The relationship, which would not have existed but for the contract, should not be held to give rise to a common law duty of care. It would be unfair to add a tortious liability to the contractual liability which the parties may be presumed to have contemplated. This view appears to rest on an implied contractual intent as much as on the scope of tortious liability. The second consideration that one finds reflected in the opinion on the question of concurrent liability is the view of those who favour concurrent liability that a common law duty of care is created by certain kinds of relationship, whether or not the relationship has its origin in contract. On this view, there is nothing in the leading cases affirming the conditions under which a common law duty of care arises to suggest that it is confined to non-contractual relationships. This view recognizes that tortious liability may be limited or excluded by the express or implied terms of a contract but denies that there is any basis for [page161] reading an implied term into every contract that liability is to be governed entirely by the law of contract. This view is really an assertion of the scope of tortious liability in contrast to an assertion of the scope of contractual intention by the opposing view. The third major consideration reflected in the opinion on the issue of concurrent liability is the view, also of those who favour concurrent liability, that to deny that a retained solicitor may be liable to a client in tort as well as in contract for negligence in the performance of the professional services for which he has been retained is to place the solicitor's liability to a client in an anomalous position with resulting injustice. The question of justice, which is urged by the proponents of both views on the issue of concurrent liability, is not free from ambiguity or ambivalence. What may appear just to one party may appear unjust to the other. Take, for example, the limitation of actions, which is a measure for the protection of defendants. There are obviously considerations of justice applicable to both parties. So also with the measure of damages. Perhaps contributory negligence and apportionment of liability is the area in which the question of justice is clearest and least ambiguous: that a person who is only partially liable should not be held to be wholly liable.

**15**    These, it would seem, are the major policy considerations underlying the issue of concurrent liability. Consideration of the authorities on this issue must begin in this Court with the judgment of Pigeon J. on behalf of the majority in J. Nunes Diamonds Ltd. v. Dominion Electric Protection Co.,

[1972] S.C.R. 769, and his dissenting opinion in Smith v. McInnis, [1978] 2 S.C.R. 1357.


[page162]


**16**    In Nunes Diamonds the issue of concurrent liability was whether the respondent, Dominion Electric Protection Company ("D.E.P."), which had undertaken to provide a burglar alarm service for the appellant diamond merchants ("Nunes"), was liable in tort to Nunes for negligent misrepresentations concerning the functioning of the alarm system despite the existence of a contract containing a limitation of liability. The contract provided that D.E.P. was not an insurer, that the rates charged were based on the probable value of the burglar alarm service, and that in the event of loss resulting from a failure to perform the service the liability of D.E.P. would be limited to $50 as liquidated damages. It also provided that no conditions, warranties or representations had been made by D.E.P., its officers, servants or agents other than those set out in writing in the contract. The alleged misrepresentations that the alarm system had not been and could not be circumvented were made several months after the contract was entered into, following a burglary at the premises of another diamond merchant, who was also using the D.E.P. alarm system. Some time later a burglary occurred at the premises of Nunes, and a large quantity of diamonds was stolen. The alarm system failed to sound because it had been circumvented. Nunes sued D.E.P. for breach of contract and negligence. The trial court, the Ontario Court of Appeal and this Court were all of the opinion that there had not been a breach of contract. The issue was whether there had been negligent misrepresentation concerning the functioning of the alarm system for which D.E.P. was liable in tort on the basis of the principle affirmed in Hedley Byrne & Co. v. Heller & Partners Ltd., [1964] A.C. 465. The trial court and the Court of Appeal were of the opinion that there had not been misrepresentation for which D.E.P. was liable. The majority of this Court appear also to have been of this view but, assuming that there had been a misrepresentation, they held that there could not be liability in tort for it because of the existence of [page163] the contract. Pigeon J., with whom Martland and Judson JJ. concurred, said at pp. 777-78:

> Furthermore, the basis of tort liability considered in Hedley Byrne is inapplicable to any case where the relationship between the parties is governed by a contract, unless the negligence relied on can properly be considered as "an independent tort" unconnected with the performance of that contract, as expressed in Elder, Dempster & Co. Ltd. v. Paterson, Zochonis & Co., Ltd. [[1924] A.C. 522], at p. 548. This is specially important in the present case on account of the provisions of the contract with respect to the nature of the obligations assumed and the practical exclusion of responsibility for failure to perform them.

It appears to have been assumed by the majority, as had been held by the trial judge, that the clause in the contract limiting liability in the case of loss to $50 did not cover negligence and also that the

clause respecting representations did not apply to representations made after the contract was entered into. Pigeon J. said that if D.E.P. were to be liable in tort, despite the limitation of liability in the contract, it would effect a fundamental alteration of the contract. He also said that the representations relied on as the basis of tortious liability were not acts independent of the contractual relationship between the parties because they would not have been made had the parties not been in a contractual relationship. Spence J. dissenting, with whom Laskin J. (as he then was) concurred, held that there had been negligent misrepresentation concerning the functioning of the burglar alarm system for which D.E.P. was liable in tort on the basis of Hedley Byrne. On the question whether there could be liability in tort where there was a contractual relationship, he said at pp. 810-11: "I cannot agree that the mere existence of an antecedent contract foreclosed tort liability under the Hedley Byrne principle."


[page164]


**17**    In Elder Dempster, on which Pigeon J. relied for the criterion of an independent tort unconnected with the performance of the contract, the issue was whether shipowners who were sued with charterers for damage to cargo could claim the benefit of an exclusion of liability in the bill of lading for bad stowage. The plaintiff cargo owners sought to hold the shipowners liable in tort for the master's negligence and contended that they could not claim the protection of the bill of lading because they were not parties to it. The House of Lords held that the shipowners were protected by the bill of lading, although opinion differed as to the basis on which it applied to them (cf. Scruttons Ltd. v. Midland Silicones Ltd., [1962] A.C. 446). What the case decided in essence was that the contractual exclusion of liability for bad stowage in the bill of lading could not be circumvented by reliance on a liability in tort where the act or omission complained of was one connected with the performance of the contract. This appears from the speech of Viscount Finlay, cited by Pigeon J. in Nunes Diamonds, where, referring to the contention that the shipowners had a liability in tort that was unaffected by the exclusion of liability in the bill of lading, he said at p. 548:

> This contention seems to me to overlook the fact that the act complained of was done in the course of the stowage under the bill of lading, and that the bill of lading provided that the owners are not to be liable for bad stowage. If the act complained of had been an independent tort unconnected with the performance of the contract evidenced by the bill of lading, the case would have been different. But when the act is done in the course of rendering the very services provided for in the bill of lading, the limitation on liability therein contained must attach, whatever the form of the action and whether owner or charterer be sued. It would be absurd that the owner of the goods could get rid of the protective clauses of the bill of lading, in respect of all stowage, by suing the owner of the ship in tort.

[page165]

**18**    In Smith v. McInnis, however, Pigeon J. referred to the principle affirmed in Nunes Diamonds as one of general application to the question of concurrent liability. The issue turning on concurrent liability in that case was whether there could be apportionment of liability between the defendant solicitors and the third-party solicitors, who had been joined for contribution, for the damage caused by a failure to file proofs of loss and to institute an action in time under a fire insurance policy. The third-party solicitors had been retained by the defendant solicitors, with the approval of the client, to assist the defendant solicitors with preparation of the proofs of loss. The question was whether the third-party solicitors had a duty to advise the defendant solicitors of the time within which to file the proofs of loss and to institute an action. The majority in this Court (Laskin C.J. and Martland, Spence, Dickson and Estey JJ.) held that the third-party solicitors did not have such a duty and that it was therefore unnecessary for the Court to determine whether there could have been apportionment of liability, had they been liable, and for that purpose to consider, as Laskin C.J. put it, "whether a solicitor's liability to his client lies in tort or only in contract." Pigeon J., dissenting, with whom Beetz J. concurred, held that the third-party solicitors were in breach of a duty to advise the defendant solicitors of the time within which to file the proofs of loss. It was contended by counsel for the third-party solicitors that their liability, if any, was in contract and that there was therefore no basis in the applicable contribution legislation for an apportionment of liability. Pigeon J. held that on general principles of contract there could be apportionment of liability for breach of contract, but at the outset of his analysis of this question he expressed the following opinion concerning the nature of a solicitor's liability to a client for negligence in the performance of professional services at p. 1377:

[page166]

       I have to agree that the liability of a solicitor to his client for negligence in his duty to give advice, or otherwise, is in contract only, not in tort. I adhere to the view I have previously expressed in other cases, that a breach of duty may constitute a tort only if it is a breach of a duty owed independently of any contract with the claimant, "an independent tort" as I said in Nunes Diamonds v. Dominion Electric Protection [ [1972] S.C.R. 769], at p. 777. In the case of a solicitor retained to give advice, his duty to advise properly arises only under contract and I do not see how liability can arise otherwise than on a contractual basis as was held in the case of a consulting engineer in Halvorson v. McLellan Co. [[1973] S.C.R. 65], at p. 74. Breach of contract appears to be the basis on which a solicitor was found liable by the House of Lords in Nocton v. Ashburton

[[1914] A.C. 932], and by the English Court of Appeal in Groom v. Crocker [[1939] 1 K.B 194].

I turn to the authority invoked by Pigeon J. in support of this opinion.

**19**    In Halvorson the issue was the liability of consulting engineers for damage caused by their negligence in making design modifications to a winch to be used for hauling cables up a mountainside for the erection of an aerial tramway. After indicating the basis of the contractual relationship between the plaintiff contractor and the defendant engineers, Pigeon J., delivering the judgment of the Court, said at p. 74: "This means also that Halvorson's only possible claim is against McLellan & Co. for negligent performance of its contract for erection services, not in tort as was contended." The proper characterization of the cause of action appears to have been simply a question of pleading and argument, on which no practical consequence turned.

**20**    Nocton v. Lord Ashburton is a case that has been cited in support of concurrent liability. It is admittedly difficult to discern the precise basis on which some of the members of the House of Lords held the solicitor to be liable (cf. Lord Devlin in Hedley Byrne, at p. 520), but in my respectful opinion the case does not support the proposition [page167] that the liability of a solicitor to a client for negligence is in contract only. On the contrary, some of its dicta and the general implications of its reasoning and conclusions support the view that a solicitor may have a liability to a client apart from contract for negligence in the performance of professional services. In that case the client sued the solicitor for advising him to release part of the security of a mortgage to the advantage of a mortgage in which the solicitor was interested, and with the result, contrary to the assurances that had been given by the solicitor, that the remaining security proved insufficient. The issue was whether the allegations of the statement of claim supported liability on a basis other than an action of deceit, requiring proof of actual fraud. A majority in the House of Lords (Viscount Haldane L.C., Lord Atkinson and Lord Dunedin) held the solicitor to be liable in equity for breach of a fiduciary duty, clearly a liability distinct from that at law for breach of contract. In the course of reviewing the various bases on which a solicitor may be liable to a client, Viscount Haldane said at p. 956: "My Lords, the solicitor contracts with his client to be skilful and careful. For failure to perform his obligation he may be made liable at law in contract or even in tort, for negligence in breach of a duty imposed on him. In the early history of the action of assumpsit this liability was indeed treated as one for tort." Lord Dunedin did indicate (p. 965) that while he agreed with Viscount Haldane that there was liability for breach of fiduciary duty his own preference would have been for liability for breach of contract, which he referred to as an "action for negligence" (p. 964). Viscount Haldane, with whom Lord Atkinson concurred, also indicated (p. 958) in his conclusion that there was an alternative liability at law for breach of contract. Lord Parmoor held that there was liability based on negligence, and from the language used by him -- "liable in negligence for breach of duty in his position as solicitor to the plaintiff" (p. 973) and "a charge of negligence for breach of duty of the appellant in his employment as a solicitor" (p. 977) -- it would appear that he was thinking of a breach of the solicitor's contractual duty of care. Lord Shaw held that there was liability for breach of duty created by a relationship "equivalent to [page168]

contract" (pp. 971-72) -- that is, a relationship in which there was an assumption of responsibility and a reliance on it. Despite the use of the words "equivalent to contract", or perhaps because of them, I take it that Lord Shaw was speaking of a liability in tort. At least that appears to have been the view taken of his judgment by Lord Devlin in Hedley Byrne, where Lord Devlin adopted the principle of liability affirmed by Lord Shaw in Nocton as the basis for his own statement of the principle of tortious liability for negligent misrepresentation in Hedley Byrne.

**21**    In contrast, the judgment of the Court of Appeal in Groom v. Crocker was for some forty years clearly authority for the proposition that the liability of a solicitor to a client for negligence in the performance of the services for which he had been retained was in contract only, but at the time Smith v. McInnis was decided its authority had been severely impaired, if not repudiated, by the judgment of the Court of Appeal in Esso Petroleum Co. v. Mardon, [1976] Q.B. 801. Groom v. Crocker was a case in which solicitors retained by an insurer to act for the insured were sued by the latter for the damage caused to him by an admission of liability. In holding that the liability of a solicitor to a client was in contract only, the Court of Appeal said that the solicitor's duty of care had no existence apart from the contractual [page169] relationship. Groom v. Crocker has been criticized both for the authority it relied on and for the authority it apparently did not consider. The earlier cases on which it relied have been the subject of critical analysis in several learned judgments and scholarly articles. See, for example, Midland Bank Trust Co. v. Hett, Stubbs & Kemp, [1979] Ch. 384, at pp. 406-08; Aluminum Products (Qld.) Pty. Ltd. v. Hill, [1981] Qd.R. 33, at pp. 41-42; Macpherson & Kelley v. Kevin J. Prunty & Associates, [1983] 1 V.R. 573, at pp. 575-77; Dwyer, "Solicitor's Negligence -- Tort or Contract?" (1982), 56 A.L.J. 524, at p. 531; and French, "The Contract/Tort Dilemma" (1983), 5 Otago L.R. 236, at pp. 262-63, 294 and 296. I do not think it would serve a useful purpose to attempt to go over that ground in detail here. I content myself with expressing my respectful agreement with the view that Howell v. Young (1826), 5 B. & C. 259, 108 E.R. 97, and the other cases referred to in Bean v. Wade (1885), 2 T.L.R. 157, were not clear authority for the statement in that case, on which Groom v. Crocker relied, that "the right of action in cases of this kind was treated as arising from a breach of contract, and not from negligence apart from contract or from any breach of trust", although Howell v. Young (and Smith v. Fox (1848), 6 Hare 386, 67 E.R. 1216, which applied it) clearly provided authority for the conclusion in Bean v. Wade that the statute of limitations began to run from the date of the breach of duty rather than from its discovery. It has been argued that the necessary inference from that conclusion in Howell v. Young, despite dicta in it which appear to recognize the possibility of concurrent liability, is that the court must have been of the view that the liability was in contract only because of the traditional and well-established distinction between what constitutes a cause of action in contract and a cause of action in tort. I prefer the interpretation of Howell v. Young, admittedly only one of several (see French, op. cit., p. 263), that the court had in mind the usual case where the breach of duty and the damage occur at the same time. In sum, I share the view that the earlier cases relied on in Groom v. Crocker provided a doubtful and somewhat frail basis of [page170] authority for the conclusion it reached on the question of concurrent liability.

**22**    Groom v. Crocker also relied on Jarvis v. Moy, Davies, Smith, Vandervell & Co., [1936] 1

K.B. 399, one of the special category of cases involving the distinction between contract and tort for certain purposes under the successive County Courts Acts. Other cases in this category are Kelly v. Metropolitan Railway Co., [1895] 1 Q.B. 944; Turner v. Stallibrass, [1898] 1 Q.B. 56; Sachs v. Henderson, [1902] 1 K.B. 612; Steljes v. Ingram (1903), 19 T.L.R. 534; Edwards v. Mallan, [1908] 1 K.B. 1002; and Jackson v. Mayfair Window Cleaning Co., [1952] 1 All E.R. 215. The issue which had to be decided in those cases for such purposes as the applicable scale of costs and the transfer of a case from the High Court to a county court, was whether the action was an action founded on contract or an action founded on tort within the meaning of the Act. The courts had to characterize the action, for purposes of the Act, as one or the other; they could not treat it as an action in both contract and tort. The criterion that was adopted for this purpose was the "substance of the matter" (Steljes v. Ingram, pp. 535-36), that is, whether the action was in substance one founded on contract or one founded on tort, which was determined by asking whether or not the plaintiff had to rely on the terms of the contract for his action. This question was answered by distinguishing between a cause of action based on the breach of a special obligation or duty created by the terms of an express contract (referred to as a "special contract") and a cause of action based on the breach of a duty arising both as an implied term of the contract and at common law from the relationship (Edwards v. Mallan, p. 1005). The former [page171] was an action founded on contract for purposes of the Act; the latter was an action founded on tort. This is the sense in which Greer L.J. in Jarvis is understood to have referred to a duty arising independently of contract (see, for example, Midland Bank Trust, at p. 410; and Finlay v. Murtagh, [1979] I.R. 249, at pp. 255-56) in the following statement at p. 405:

> The distinction in the modern view, for this purpose, between contract and tort may be put thus: where the breach of duty alleged arises out of a liability independently of the personal obligation undertaken by contract, it is tort, and it may be tort even though there may happen to be a contract between the parties, if the duty in fact arises independently of that contract.

It has been suggested that this particular category of cases, because of its very special context and character, is not relevant to the general question of concurrent liability. See Macpherson & Kelley, at p. 577. It is true that in those cases the courts could not make a finding of concurrent liability for the purposes of the County Courts Acts, but in concluding that an action may be an action founded on tort, despite the existence of a contract, they lend support to the recognition of concurrent liability in other contexts. Such was the case of Edwards v. Mallan, in which the Court of Appeal held that an action against a dentist, who was alleged to have been "employed for reward", for the negligent extraction of a tooth was an action of tort within the meaning of s. 66 of the County Courts Act, 1888, providing for the transfer of an action of tort from the High Court to a county court where the plaintiff had no visible means, if unsuccessful, of paying the defendant's costs. Those who favour concurrent liability in the case of persons professing skill in a calling have attached particular importance to this case. See, for example, Dominion Chain Co. v. Eastern [page172] Construction Co. (1976), 68 D.L.R. (3d) 385, at pp. 391 and 393; and Midland Bank Trust, at p. 410.

**23**    One explanation that has been suggested for the denial of a concurrent or alternative liability in tort in the solicitor and client relationship prior to Hedley Byrne is that before that case there could not be liability in tort for purely economic or financial loss caused by negligence, which was the damage normally caused by the negligence of a solicitor. In Clark v. Kirby-Smith, [1964] 1 Ch. 506, however, Plowman J. rejected the contention that a solicitor had a concurrent liability in tort on the basis of Hedley Byrne, saying at p. 510, "A line of cases going back for nearly 150 years shows, I think, that the client's cause of action is in contract and not in tort: see, for example, Howell v. Young and Groom v. Crocker ...."

**24**    Greer L.J. in Jarvis and Plowman J. in Clark were quoted with approval by Diplock L.J. in his influential judgment in Bagot v. Stevens Scanlan & Co., [1966] 1 Q.B. 197, where, in holding that an architect could not be concurrently liable to a client in tort, he said at p. 204:

> It seems to me that, in this case, the relationship which created the duty of exercising reasonable skill and care by the architects to their clients arose out of the contract and not otherwise. The complaint that is made against them is of a failure to do the very thing which they contracted to do. That was the relationship which gave rise to the duty which was broken. It was a contractual relationship, a contractual duty, and any action brought for failure to comply with that duty is, in my view, an action founded on contract.

[page173]

That statement has been much relied on by those who have concluded that there cannot be concurrent liability in tort for an act or omission that constitutes a breach of contract. See, for example, McLaren Maycroft & Co. v. Fletcher Development Co., [1973] 2 N.Z.L.R. 100; and the dissenting judgment of Wilson J.A., as she then was, in Dominion Chain.

**25**    The authority of Groom v. Crocker concerning the nature of a solicitor's liability to a client for negligence was reaffirmed by the Court of Appeal in Cook v. Swinfen, [1967] 1 W.L.R. 457, and in Heywood v. Wellers, [1976] Q.B. 446, although with some reservation by Lord Denning in the latter case foreshadowing his judgment in Esso Petroleum Co. v. Mardon. That case was a critical turning point in Anglo-Canadian jurisprudence on the question of the concurrent liability of persons professing skill on which another may reasonably rely. It involved the liability of the petroleum company for a negligent statement concerning the potential throughput of a service station made in pre-contract negotiations by experienced employees of the company holding themselves out as experts. The plaintiff Mardon was induced by the statement, despite his own misgivings, to enter into a tenancy of the service station with eventual loss when the throughput fell far short of that predicted. In an action by the company for possession, money due and mesnes profits Mardon counter-claimed for damages for breach of warranty and negligent misrepresentation. The trial

judge found that there had not been a warranty but upheld the counterclaim for negligent misrepresentation on the basis of Hedley Byrne. The Court of Appeal held that there was liability on the basis of breach of warranty or negligent misrepresentation, a recognition of concurrent or alternative liability in contract and in tort. It was contended by counsel for the petroleum company, citing Clark v. Kirby-Smith, that "when the negotiations between two parties resulted in a contract between them, their rights and duties were governed by the law of contract and not by the law of tort." In rejecting this contention, Lord Denning M.R. held that Groom v. Crocker and the cases which followed it, such as Clark v. Kirby-Smith and Bagot, [page174] had been wrongly decided because they were in conflict with other decisions of "high authority", which did not appear to have been considered by them and which showed that "in the case of a professional man, the duty to use reasonable care arises not only in contract, but is also imposed by the law apart from contract, and is therefore actionable in tort." The authority which Lord Denning cited for this proposition consisted of the statement by Tindal C.J. in Boorman v. Brown (1842), 3 Q.B. 511, at pp. 525-26 concerning the long-established recognition of concurrent liability with respect to the "common callings" and other "status relationships", including various skilled occupations; the statement of Lord Campbell in the House of Lords in the same case (Brown v. Boorman (1844), 11 Cl. & F. 1, at p. 44), suggesting an even broader scope to the well-established principle of concurrent liability to include any contractual relationship of employment; and the dictum of Viscount Haldane L.C. in Nocton v. Lord Ashburton concerning the concurrent liability of the solicitor to a client, which I quoted earlier in the discussion of that case. Lord Denning said that the concurrent liability of the professional person was comparable to that between master and servant, citing Lister v. Romford Ice and Cold Storage Co., [1957] A.C. 555, per Lord Radcliffe at p. 587 and Matthews v. Kuwait Bechtel Corp., [1959] 2 Q.B. 57, at pp. 65-66. The statement by Tindal C.J. in Boorman v. Brown is as follows:

[page175]

> That there is a large class of cases in which the foundation of the action springs out of privity of contract between the parties, but in which, nevertheless, the remedy for the breach, or non-performance, is indifferently either assumpsit or case upon tort, is not disputed. Such are actions against attorneys, surgeons, and other professional men, for want of competent skill or proper care in the service they undertake to render: actions against common carriers, against ship owners on bills of lading, against bailees of different descriptions: and numerous other instances occur in which the action is brought in tort or contract at the election of the plaintiff.

The statement by Lord Campbell is as follows:

> But wherever there is a contract, and something to be done in the course of the

employment which is the subject of that contract, if there is a breach of a duty in the course of that employment, the plaintiff may either recover in tort or in contract.

**26**    The liability in tort in Esso Petroleum was based on the principle affirmed in Hedley Byrne, which Lord Denning said at p. 820 included, when properly understood, the following proposition: "if a man, who has or professes to have special knowledge or skill, makes a representation by virtue thereof to another -- be it advice, information or opinion -- with the intention of inducing him to enter into a contract with him, he is under a duty to use reasonable care to see that the representation is correct, and that the advice, information or opinion is reliable." The other judges in Esso Petroleum, Ormrod and Shaw L.JJ., appear to have been in essential agreement with the views expressed by Lord Denning.

**27**    The so-called "status relationships", including the "common callings", to which I have referred above, have played a prominent role in the consideration [page176] of the question of concurrent liability with reference to various skilled professions and occupations. There is a very good discussion of the subject to be found in French, op. cit., pp. 273 ff. As she indicates, historians have differed as to the occupations that were included in the common callings. She sums up the "traditional view" as follows at p. 274:

> According to prevailing academic opinion, a business was classified as a common calling only if it displayed two characteristics. Its services had to be generally available to the public, and its exercise must have demanded skill. Falling within this category were the carrier, innkeeper, surgeon, apothecary, attorney, veterinary surgeon, smith and barber.

Russell v. Palmer (1767), 2 Wils. K.B. 325, 95 E.R. 837, would appear to be an early example of an attorney's liability in tort for negligence in an action which alleged a contractual relationship. See Fifoot, History and Sources of the Common Law: Tort and Contract, 1949, p. 157. To the same effect would appear to be the case of Godefroy v. Jay (1831), 7 Bing. 413, 131 E.R. 159, which was an action in tort against an attorney for negligence in the conduct of an action. In Steljes v. Ingram, in the course of an instructive statement on the nature and historical basis of the status relationships category of concurrent liability, Phillimore J. said at p. 535 with reference to its extension to include persons professing skill in a calling: "A further step was made when contracts with professional men whose professions were specially protected and affected by law were held to create a similar result of status; and it was said that a surgeon or a solicitor could be sued in tort for a breach of the ordinary duty of a surgeon or solicitor ("Lanphier v. Phipos,' 8 C. and P., 475)." It is with reference to this concurrent liability of persons professing skill in a calling that it is said in Winfield on Tort (7th ed. 1963), p. 6, in a passage [page177] that has been cited on several occasions in the cases:

> A dentist who contracts to pull out my tooth is, of course, liable to me for breach of contract if he injures me by an unskilled extraction. But he is also liable to me

> for the tort of negligence; for every one who professes skill in a calling is bound
> by the law, agreement or no agreement, to show a reasonable amount of such
> skill. I cannot recover damages twice over, but I may well have alternative claims
> for damages under different heads of legal liability.

**28**     Courts have on several occasions referred to the status relationships as a closed or frozen
category of concurrent liability, which arose out of special historical circumstances and should not
be extended to include the modern professions and other skilled occupations. This was the view
taken of the stockbroker in Jarvis (p. 407), the solicitor in Groom v. Crocker (p. 222) and the
architect in Bagot (pp. 204-06). This view has been criticized, although in none of the cases which
have decided in favour of the concurrent liability of particular professions, as I understand them, has
the conclusion been technically rested on an application or extension of the common callings
category. Compare, for example, Dominion Chain, at pp. 392-93 and John Maryon International
Ltd. v. New Brunswick Telephone Co. (1982), 141 D.L.R. (3d) 193, at p. 232. Rather the common
callings and other status relationships, such as that between master and servant, have been invoked
in support of two arguments in favour of concurrent liability: (a) they show that the common law
has not recognized any general objection in principle to concurrent liability, but on the contrary has
recognized concurrent liability in a wide range of cases; and (b) they indicate the extent of the
anomaly that exists if concurrent liability is denied to certain professional relationships. Brown v.
Boorman, which was relied on by Lord Denning in Esso Petroleum in support of his general
statement of principle, has on the whole been treated with considerable caution. There appear to be
two reasons for this: the significance of what it actually [page178] decided, as distinct from its
dicta, and a question about the soundness of the statement by Lord Campbell. The issue, which was
one of pleading raised after verdict on a motion to arrest judgment, was whether the declaration
sufficiently alleged the special contractual duty which the plaintiff linseed crushers were obliged to
rely on for their cause of action against the oil broker for delivering linseed oil to purchasers
without obtaining payment of the price. The established approach of a court to such an issue was
indicated by Lord Brougham ((1844), 11 Cl. & F.1, at p. 38) as follows: "The authorities show that,
after verdict, it is immaterial whether there are or not technical words; if there are clear words to
show that the Defendant has made such contract and has broken it, after verdict everything will be
intended that can be intended to support the verdict." In so far as the statement of Lord Campbell is
concerned, the view has been expressed from time to time that it goes too far if it is to be
understood as meaning that any breach of contractual duty in an employment relationship sounds in
tort as well as contract. See Slesser L.J. in Jarvis, p. 406; Oliver J. in Midland Bank Trust, p. 432;
French, op. cit., p. 290. Moreover, in the modern doctrine of concurrent liability it is not the breach
of contract as such that gives rise to tortious liability, but the breach of a common law duty of care
arising from the relationship created by contract.

**29**     The case of Lister v. Romford Ice and Cold Storage Co. Ltd., which was cited by Lord
Denning in Esso Petroleum with reference to concurrent liability in the master and servant
relationship, and [page179] in particular the speech of Lord Radcliffe to which he referred, also
calls for some comment because it has been cited for opposing views on the question of concurrent

liability. The action by the company against its employee for the damages that the company had been condemned to pay the employee's father, who was negligently injured by his son while acting as his helper, was for breach of the employee's contractual obligation to his employer to exercise due care when driving in the course of his employment. The employee was also sued for contribution as a joint tort-feasor, but that of course was based on the tortious liability of the employee and the employer to the injured third party, not on the nature of the employee's liability to the employer. In their speeches with reference to the nature of the employee's duty of care to the employer, the essential point the members of the House of Lords were making is that they disagreed with the opinion of Denning L.J. in the Court of Appeal, [1956] 2 Q.B. 180, at pp. 187-190, that the employee's duty of care, if any, was in tort only. It was in the course of affirming a contractual duty of care that Viscount Simonds said at p. 573: "It is trite law that a single act of negligence may give rise to a claim either in tort or for breach of a term express or implied in a contract. Of this the negligence of a servant in performance of his duty is a clear example"; and Lord Radcliffe said at p. 587 (the place cited by Lord Denning in Esso Petroleum): "It is a familiar position in our law that the same wrongful act may be made the subject of an action either in contract or in tort at the election of the claimant, and, although the course chosen may produce incidental consequences which would not have followed had the other course been adopted, it is a mistake to regard the two kinds of liability as themselves necessarily exclusive of each other." It is of interest to note that another passage in the speech of Lord Radcliffe on the same page, because of its emphasis on the contractual nature of the relationship between master and servant, was quoted by Lord Scarman in Tai Hing Cotton Mill Ltd. v. Liu Chong Hing Bank Ltd., [1985] 2 All E.R. 947, at p. 957, to which I shall make further reference, in support of his opinion against concurrent liability in the banker and customer relationship. There can be no [page180] doubt, however, that the recognition of concurrent liability in the master and servant relationship is well established. It was reaffirmed in Matthews v. Kuwait Bechtel Corp., the other case cited by Lord Denning in Esso Petroleum, where again the action was for breach of contract, this time by an employee against his employer for injury suffered in the course of his employment, and the issue was whether the cause of action was in contract, within the applicable rule of service out of the jurisdiction, or entirely in tort, in which case the rule would not apply. The Court of Appeal held that while the master owes a tortious duty of care to his servant, such a duty is also an implied term of the contract of employment (citing Lister), and in case of injury the servant may at his option sue for breach of contract or in tort.

**30**    The authority of Esso Petroleum on the question of concurrent liability was affirmed by the Court of Appeal in Batty v. Metropolitan Property Realisations Ltd., [1978] Q.B. 554, where, in a case involving the liability of a development company for breach of warranty and negligence, it was held that the plaintiffs were entitled to have judgment entered in their favour for the tort of negligence as well as for breach of contract. Megaw L.J. held that the principle of concurrent liability recognized in Esso Petroleum was a general one, not confined to the common callings and skilled professions. In Photo Production Ltd. v. Securicor Transport Ltd., [1978] 1 W.L.R. 856, which involved the application of an exclusion of liability in a contract for the provision of a night patrol service for the plaintiff's factory, Lord Denning [page181] referred to the principle of concurrent liability in general terms as follows at p. 862: "But, during the last few years, it has

become plain that, if the facts disclose the self-same duty of care arising both in contract and in tort -- and a breach of that duty -- then the plaintiff can sue either in contract or in tort, as he pleases: see Esso Petroleum Co. Ltd. v. Mardon [1976] Q.B. 801, 818-820 and Batty v. Metropolitan Properties Realisation Ltd. [1978] 2 W.L.R. 500."

**31**    Esso Petroleum and Hedley Byrne were applied in Midland Bank Trust Co. Ltd. v. Hett, Stubbs & Kemp, in which it was held that solicitors were liable to a client in tort as well as in contract for failure to register an option to purchase. It is not possible in these reasons to do justice to the judgment of Oliver J., which remains one of the most thorough and penetrating analyses of the authorities and the issues on the question of concurrent liability to be found in the cases. His essential concern in his canvass of the authorities was to determine whether he was free to find that the solicitors were liable in tort on the basis of Hedley Byrne, despite the existence of a contractual relationship. He concluded, in the light of the interpretation and application that had been given to Hedley Byrne in Esso Petroleum and of his own analysis of the speeches in Hedley Byrne, particularly that of Lord Devlin (to which I have referred in the discussion of Nocton v. Lord Ashburton) that the principle in Hedley Byrne applied to a relationship of the kind described there, whether or not the relationship was created by contract. He said at p. 413: "The inquiry upon which the court is to embark is "what is the relationship between plaintiff and defendant?' not "how did the relationship, if any, arise?"" On this view of Hedley Byrne he concluded that it was in conflict with the premise on which Groom v. Crocker and the cases which followed it had been decided and that he was free to follow Esso Petroleum on the question of concurrent liability. Oliver J. was of the opinion [page182] that Esso Petroleum presented a clear issue of concurrent liability despite the fact that the negligent misrepresentation had been made in pre-contract negotiations. On this point he said at p. 428, "The noticeable feature of this, in the present context, is that the contractual duty found by the Court of Appeal not only covered the same ground as, but was, in practical terms, identical and co-terminous with, the duty arising from a special relationship of the Hedley Byrne type", and at p. 432 he said, "As I read the case it is authority for the proposition that the existence of a contractual duty of care -- in that case created by the warranty which the court found -- does not preclude a parallel claim in tort under the Hedley Byrne principle."

**32**    The judgment of Oliver J. in Midland Bank Trust was referred to with approval by Sir Robert Megarry V.-C. in Ross v. Caunters, [1980] Ch. 297. That was an action for damages by the beneficiary of a will against solicitors of the testator for negligence in failing to warn the testator to whom they sent the will for execution that it should not be witnessed by the spouse of a beneficiary. It was argued on behalf of the solicitors that since a retained solicitor could not be liable to a client in tort, according to Groom v. Crocker and the cases which followed it, he should not be exposed to liability in tort to a third person for negligence in the performance of the services for which he had been retained. In rejecting the premise on which this contention was based, Sir Robert Megarry V.-C. referred to Groom v. Crocker and the cases which followed it on the nature of the solicitor's liability to a client as having been "rejected" in Esso Petroleum and spoke of the judgment of Oliver J. in Midland Bank Trust as follows at p. 308: "I would, indeed, express my most respectful concurrence in an [page183] exhaustive and convincing discussion of a complex

subject." In Forster v. Outred & Co., [1982] 2 All E.R. 753, where it was conceded for purposes of the argument in the Court of Appeal that a retained solicitor could be sued by a client in tort as well as in contract for negligent advice, Dunn L.J. said at p. 764 that he found the reasoning of Oliver J. in Midland Bank Trust "wholly convincing".

**33** I turn now to a consideration of the impact of Esso Petroleum and Midland Bank Trust on the Canadian jurisprudence with respect to the question of concurrent liability. Before Esso Petroleum the views of provincial courts of appeal on the question of concurrent liability are reflected in Schwebel v. Telekes, [1967] 1 O.R. 541, and Sealand of the Pacific v. Robert c. McHaffie Ltd. (1974), 51 D.L.R. (3d) 702. In Schwebel, where the issue was whether an action against a notary public for negligence was statute-barred, Laskin J.A. (as he then was), delivering the judgment of the Ontario Court of Appeal, said at p. 543, "The only circumstance that could bring any duty of the defendant to the plaintiff herein into operation was her contracting for the defendant's assistance." He added, citing Groom v. Crocker and Clark v. Kirby-Smith, that "the duty of care arose by virtue of the contractual relationship and had no existence apart from that relationship." He referred to Brown v. Boorman as reflecting "a line of older authority" on the question of concurrent liability. He concluded, however, referring to Howell v. Young and other cases to similar effect, that it would not have made a difference in the result if the notary public could have been sued in tort as well as in contract because the limitation period began to run when the breach of duty (or damage) occurred and not when it was or ought to have been discovered. In Sealand, the British Columbia Court of Appeal relied on Nunes Diamonds for the view that naval architects could not [page184] be liable in tort, on the basis of Hedley Byrne, for negligent misstatement in the performance of a contract. Seaton J.A. expressed the rationale for the denial of concurrent liability in such a case as follows at p. 705: "If additional duties and liabilities are to be attached, it will have the effect of changing the bargain made by the parties. That would be inappropriate."

**34** Esso Petroleum was followed by a majority of the Ontario Court of Appeal in Dominion Chain Co. v. Eastern Construction Co., and Dabous v. Zuliani (1976), 12 O.R. (2d) 230, where it was held that engineers and architects could be liable in tort for negligence in the performance of a contract. The court also held that a contractor or builder was subject to concurrent liability in such a case. Jessup J.A., with whom Zuber J.A. concurred, dealt in Dominion Chain with the question of concurrent liability in both appeals. With respect to the liability of the engineers in Dominion Chain and the liability of the architect in Dabous, Jessup J.A. said that as a result of Esso Petroleum he was free to follow the "line of older authority" on concurrent liability referred to by Laskin J.A. in Schwebel and reflected, in so far as persons professing skill in a calling are concerned, in the statement of principle in Winfield on Tort (7th ed. 1963), p. 6, which I have quoted above in the discussion of the status relationships, and in which it was said that "every one who professes skill in a calling is bound by the law, agreement or no agreement, to show a reasonable amount of such skill." Jessup J.A. indicated the extent to which he proposed to adopt the principle of concurrent liability supported by the line of older authority, in so far as the liability of the engineers and the architect was concerned. Referring to Esso Petroleum as having approved Brown v. Boorman, [page185] as it applied to "professional men", and quoting from Winfield, he said at pp. 392-93:

I confine myself to the nature of the liabilities of those who do profess skills in a calling which a reasonable man would rely on and leave the case of unskilled employments to another day. However, I can find no justification in principle, authority or policy for the modern English trend, noted by some of the law authors, to close the categories of callings to whom the principle stated by Winfield applies: e.g., Millner, Negligence in Modern Law (1967), at p. 131 et seq. The anachronistic exemption of solicitors from concurrent tort liability has been ended in England by Esso Petroleum Co. Ltd. v. Mardon, where the modern authorities referred to in Schwebel are overruled.

Jessup J.A. based the concurrent liability of the contractor in Dominion Chain and the builder in Dabous on the principle of tortious liability affirmed in Donoghue v. Stevenson, [1932] A.C. 562, from which at one point in his reasons he quoted the following dictum on concurrent liability of Lord Macmillan at p. 610:

The fact that there is a contractual relationship between the parties which may give rise to an action for breach of contract, does not exclude the co-existence of a right of action founded on negligence as between the same parties, independently of the contract, though arising out of the relationship in fact brought about by the contract. Of this the best illustration is the right of the injured railway passenger to sue the railway company either for breach of the contract of safe carriage or for negligence in carrying him.

The observations of Jessup J.A. with reference to Nunes Diamonds and other cases which have applied Elder Dempster to the question of concurrent liability were of particular significance for subsequent consideration of the principle for which those cases stand. He referred to the citation by Estey J.A. in Hartman v. The Queen in right of [page186] Ontario (1973), 2 O.R. (2d) 244, at p. 257 of Hall v. Brooklands Auto Racing Club, [1933] 1 K.B. 205, at p. 213, where Scrutton L.J. said: "Further, in my view, where the defendant has protection under a contract, it is not permissible to disregard the contract and allege a wider liability in tort: Elder, Dempster & Co. v. Paterson, Zochonis & Co." Jessup J.A. said at p. 399 in Dominion Chain that Elder Dempster, Brooklands Auto Racing and Nunes Diamonds were cases that stood for the proposition that a plaintiff cannot escape a contractual exclusion or limitation of liability, whether express or implied, by reliance on a concurrent liability in tort. Wilson J.A., dissenting in Dominion Chain and Dabous on the question of concurrent liability, was of the view that because of the different legal consequences attaching to the distinction between contract and tort the recognition of concurrent liability should not extend beyond the categories for which there was clear historical warrant. She referred to Jarvis, Bagot, Schwebel, and Nunes Diamonds, among other cases, but she appears to have placed particular reliance on the reasoning in Bagot, as indicated by the following passages in her reasons at pp. 408 and 414 respectively:

In other words, it would appear that if the acts or omissions complained of by the

> plaintiff are in relation to the very matters covered by the contract, the essence of
> the plaintiff's action is breach of the contractual duty of care rather than breach of
> the general duty of care owed to one's "neighbour" in tort;
>
> . . .
>
> In this case where negligent supervision is the substance of the allegation and
> supervision is the essence of the contract the action, in my view, is properly
> framed in contract.

Wilson J.A. appears to have regarded Esso Petroleum as distinguishable on the ground that it
[page187] involved a representation in pre-contract negotiations.

**35**    The appeal of the engineers in Dominion Chain to this Court against the rejection of their
claim for contribution from the contractor was dismissed in Giffels Associates Ltd. v. Eastern
Construction Co., [1978] 2 S.C.R. 1346, on the ground that it was an essential condition of the right
to contribution under s. 2 of The Negligence Act of Ontario that the person from whom contribution
is sought should be liable to the plaintiff and in this case the contractor had been found not to be
liable to the plaintiff by reason of provisions in the construction contract excluding or limiting
liability. For this reason the Court found it unnecessary to determine whether the contractor and the
engineers could be liable in tort as well as in contract to the owner. It expressed the view, assuming
that the contractor could have been liable in tort, that the provisions in the construction contract
excluding or limiting liability would have applied to the liability in tort as well as to the liability for
breach of contract. As Laskin C.J. put it at p. 1355: "In the present case, it was the same negligence,
whether regarded as a breach of contract or as a basis for an independent tort claim, which lay at the
base of any claim by the plaintiff against Eastern for damages."

**36**    In 1978, after judgment was pronounced in Smith v. McInnis, on March 7th, there were three
other reported decisions in Canada on the liability of the solicitor to a client which I shall refer to
briefly in in their chronological order. In Power v. Halley (1978), 88 D.L.R. (3d) 381, a solicitor
was sued by a client for breach of the duty to ensure that the client got a good title to certain land,
and the issue turning on the question of concurrent liability was the application of the statute of
limitations. Mifflin C.J.T.D. in the Supreme Court of Newfoundland, Trial Division, applied Esso
Petroleum and Dominion Chain in concluding as [page188] follows at p. 388: "In my view in the
present case the claim of the plaintiff can be said to be equally founded on contract and on tort, and
he can rely on whichever foundation gives him the more favourable position under the statute." In
Royal Bank of Canada v. Clark and Watters (1978), 22 N.B.R. (2d) 693, 39 A.P.R. 693, solicitors
were sued by their client, the bank, for the damage caused by the release of mortgage funds to the
borrower before the mortgage was executed and registered. The action of the solicitors was contrary
to the instructions in the bank's "Requisition to Lawyer" form. Although the plaintiff does not
appear to have asserted a concurrent or alternative liability in tort, the New Brunswick Supreme
Court, Appeal Division, in grounding liability on the solicitor's failure to comply with the client's

instructions respecting release of the mortgage funds, said that the liability of a solicitor to a client was contractual. Hughes C.J.N.B., delivering the judgment of the Appeal Division, said at p. 700: "A solicitor's liability to his client for professional negligence is based on breach of the terms of his engagement, the liability being contractual in nature: See Schwebel v. Telekes, [1967] 1 O.R. 541, per Laskin J.A., at p. 543; Rowswell v. Pettit et al. (1968), 68 D.L.R. (2d) 202. It was the failure by the defendants to follow the instructions which they had been given respecting disbursement from the trust fund which constituted their breach of the contract and entitled the Bank to damages." In Messineo v. Beale (1978), 20 O.R. (2d) 49, a majority of the Ontario Court of Appeal (Arnup and Martin JJ.A.) held that the liability of a solicitor to his client for a negligent failure to discover that a vendor did not have title to a significant part of the land to be purchased by his clients was in contract only. Arnup J.A. said at p. 52: "I agree also that the basis of liability of the defendant solicitor lies in breach of contract. In this respect the cases appear to be uniform." Zuber J.A., concurring in the result, which turned on the measure of damages, since it would not have been different had the solicitor been held to be liable in tort as well as contract, differed from the majority on the question of concurrent liability. He said, citing Esso Petroleum and Dominion Chain, at p. 54: "A solicitor, being one of those [page189] who profess skills in a calling, is liable for failure to exercise those skills both in tort and contract." To these cases may be added Jacobson Ford-Mercury Sales Ltd. v. Sivertz (1979), 103 D.L.R. (3d) 480, in which a solicitor was sued by a client for negligently drafting an option to purchase which proved to be unenforceable. The issue turning on the question of concurrent liability was whether the action was statute-barred. Kirke Smith J. in the British Columbia Supreme Court held, applying Esso Petroleum, Dominion Chain, Midland Bank Trust, and Power, that the solicitor was liable in tort as well as contract and that the action was not statute-barred because the limitation period began to run from the time the damage was discovered or ought reasonably to have been discovered, which was when the client sought to exercise the option and was met by the objection that it was not enforceable. Kirke Smith J. said at p. 484:

> In the result, I conclude that, in the case of a professional man such as the defendant, a plaintiff client can claim either in contract or in tort, basing that claim "on whichever foundation gives him the more favourable position under the statute" to adopt the language of Mifflin, C.J.T.D. (at p. 388), in the Power case.

I am informed that an appeal in Jacobson was abandoned on March 27, 1980.

**37**    In District of Surrey v. Carroll-Hatch & Associates Ltd. (1979), 101 D.L.R. (3d) 218, the [page190] British Columbia Court of Appeal held that an architect was liable in tort as well as contract to the owner of a building for failure to inform the owner, as he had been advised by an engineer retained by him, that a proper soils test was required to determine the load-bearing capacity of the soil. The engineer, who did not have a contract with the owner, was held to be liable in tort to the owner for negligent misstatement in failing, when giving a letter in the nature of a soils report and a certificate of compliance with the national building code, to inform the owner that a proper soils test had not been carried out and that there was a risk in proceeding with the

construction of the building in the absence of such a test. The issue turning on the question of the concurrent liability of the architect was whether there could be apportionment of liability between the architect and the engineer under the Contributory Negligence Act. Hinkson J.A., delivering the unanimous judgment of the Court of Appeal, applied the principle of liability laid down by Lord Shaw in Nocton v. Lord Ashburton in holding that the architect was liable in tort to the owner for failure to warn the owner of the risk of proceeding with the construction upon the basis of an inadequate soils investigation. He held that Nunes Diamonds did not prevent a finding of concurrent liability in tort and contract in this case because there was no contractual limitation of liability in issue and the general question of concurrent liability in tort, where there is a contractual relationship, had been left open by the majority opinion of this Court in Smith v. McInnis. He said at pp. 236-37:

> The decision in J. Nunes Diamonds Ltd. v. Dominion Electric Protection Co., supra, does not prevent the Court from finding Church liable for negligence as well as for breach of contract, in the present circumstances. In the Nunes case, the parties had by their contract agreed on the extent of the liability of the defendant in the event a breach of contract occurred. In those circumstances, it was held that it was not appropriate to rewrite the terms of the agreement between the parties [page191] to impose a greater liability than that agreed upon between the parties. However, it is clear that a party to a contract may, because of the relationship established thereby between the parties, assume common law duties in addition to the obligations imposed by the contract. When such a duty is not performed, it is not then open to the negligent party to attempt to avoid the consequences of his negligence by invoking the contract, if its terms do not limit the liability.

> . . .

> While one view of the Nunes case might be that where the parties have a contractual relationship any claim lies only in contract, in the recent case of Smith et al. v. McInnis et al. (1978), 91 D.L.R. (3d) 190, [1978] 2 S.C.R. 1357, 25 N.S.R. (2d) 272 sub nom. Webb Real Estate Ltd. et al. v. McInnnis et al., the Supreme Court of Canada in dealing with a claim against a solicitor left open the question whether a solicitor's liability to his client lies in tort or only in contract.

**38**    Canadian Western Natural Gas Co. v. Pathfinder Surveys Ltd. (1980), 12 Alta. L.R. (2d) 135, was a case in which concurrent liability was applied in favour of the defendant. The plaintiff gas company brought an action for breach of contract against the defendant surveyors for damage caused by an error in surveying and staking out a natural gas pipeline. The issue turning on the question of concurrent liability was whether the defendants could raise the defence of contributory negligence under The Contributory Negligence Act. A majority of the Alberta Court of Appeal (Prowse and Harradence JJ.A.) held that the defendant was liable to the plaintiff in tort as well as in

contract, and that the plaintiff could not, by framing its action in contract alone, deprive the defendant of the defence of contributory negligence. Haddad J.A., dissenting, held that there had not been contributory negligence on the part of the plaintiff. On the question of concurrent liability Prowse J.A., who delivered the judgment of the majority, framed the issue as follows at p. 151: "The question being considered is whether facts which establish a breach of contract and arise from carelessness in the performance of a contract may be held to constitute a breach of the [page192] common law duty of care set out in Donoghue v. Stevenson and give rise to an action in tort between the parties to the contract." After consideration of the scope of the principle of tortious liability affirmed in that case and in Anns v. Merton London Borough Council, [1978] A.C. 728, and an extensive review of the cases on concurrent liability, including Nunes Diamonds, Esso Petroleum, Midland Bank Trust, and Dominion Chain, Prowse J.A. concluded that a common law duty of care arose from the relationship of proximity or neighbourhood between the parties independently of the contract. He said at p. 152:

> The duty that arises at common law is not connected, in law, with the contract. The contract is only of historical interest and the presence or absence of a contract is not the test for determining whether the duty arises. That is determined by resolving whether the necessary relationship of proximity or neighbourhood is present, for one does not cease being a neighbour merely because he happens to be a party to a contract, unless the contract negates the duty.

Prowse J.A. held that the court should treat the plaintiff's action as being in substance one in tort permitting the defendant to raise the defence of contributory negligence under The Contributory Negligence Act, because that characterization would lead to a just result.

39    In John Maryon International Ltd. v. New Brunswick Telephone Co., the respondent telephone company sued the appellant engineers for breach of contract and negligence in the design of a tower. The trial judge found the engineers liable for breach of contract but held that they could not be concurrently liable in tort. On the appeal to the New Brunswick Court of Appeal the issue which turned on the question of concurrent liability was the time at which the cause of action arose for purposes of determining the applicable statutory provision respecting jurisdiction to award interest. [page193] The Court of Appeal held that there was a cause of action in tort as well as in contract, and that there was as a result jurisdiction to award interest. In the course of his very thorough discussion of the authorities and the issues on concurrent liability, La Forest J.A. (as he then was), who delivered the unanimous judgment of the Court of Appeal, made two points that appear in the earlier decisions to which I have referred. The first, that was emphasized in Esso Petroleum and Midland Bank Trust, is that it would be anomalous if a person who has assumed responsibility gratuitously is subject to the legal consequences of tortious liability for a particular act or omission but a person who has assumed such responsibility under contract is not. The second point, which was made in Dominion Chain and District of Surrey, is that Nunes Diamonds stands for the proposition that "the law of negligence will not be used to give a remedy to a person for a

breach of contract for which he is absolved under the contract." La Forest J.A. concluded that he would rest the concurrent or alternative liability in tort of the engineers on the general principle of tortious liability applicable to their relationship to the owners rather than on an extension of the common callings and skilled professions category of concurrent liability to include the profession of engineer. He concluded on the issue of concurrent liability at pp. 232-33 as follows:

> From the foregoing, I would conclude that N.B. Tel could properly bring an action concurrently in tort and in contract, though as Winfield notes it cannot, of course, recover twice in respect of the same damage. The attempt in the 19th century to create a barrier between tort and contract was contrary to the spirit of the common law which allowed various forms of action to be used in respect of the same facts. This was one of its instruments of growth. So too was the tendency to add to categories that fell within a form of action, a [page194] tendency sought for a time to be reversed in this context. But in England, at least, this tendency could not be resisted indefinitely. Nor could the broad sweep of the rationalizing principle of Donoghue v. Stevenson. The particular duties recognized in earlier law are now simply applications of the duty of care to one's "neighbour".

> For these reasons, while I could dispose of this case by simply adding the profession of structural engineer to the list of common callings and skilled professions, I prefer to base my judgment on the generalized tort of negligence: in this context see the Dominion Chain and Canadian Western cases. I am fortified in the conclusion I have reached by the fact that it also appears to accord with the law in the United States as well as in England (see Brian Morgan, "The Negligent Contract-Breaker", 58 Can. Bar Rev. 299 (1980), and the view is overwhelmingly supported by the legal academic community. For example, Fleming's The Law of Torts, 5th ed. (1977), pp. 176-7, had this to say about the pre-Esso Petroleum and Batty situations:

>> Curiously, the cases reflect a widespread assumption that only one duty, tortious or contractual, can arise out of a particular set of facts: thus the search for the "substance", "gist" or "gravamen" of the action, regardless of the form of pleading. This is certainly out of spirit with the tradition of the old forms of action and the modern procedural policy of permitting a plaintiff to cumulate causes of action or at least elect the one most favourable to him.

**40**    The judgment of La Forest J.A. on the issue of concurrent liability in John Maryon was quoted with approval and applied by the Nova Scotia Supreme Court, Appeal Division, in

Attorney-General of Nova Scotia v. Aza Avramovitch Associates Ltd. (1984), 11 D.L.R. (4th) 588, and by the Ontario Court of Appeal in Consumers Glass Co. v. Foundation Co. of Canada/Compagnie Foundation du Canada (1985), 20 D.L.R. (4th) 126. In Avramovitch, where the issue was the right to contribution under the Tortfeasors Act, an architect was held to be liable in tort as well as contract to the owner of a building for negligent location of a sewage system. In [page195] Consumers Glass, where the issue was whether the action was statute-barred, a contractor and engineers were held to be liable to the owner of a wareshed in tort as well as in contract for the damage caused by the collapse of a roof. The Court of Appeal also held, however, that the same test respecting the limitation of actions applied, whether the liability was in contract or in tort: the cause of action did not arise until such time as the plaintiff discovered or ought reasonably to have discovered the facts with respect to which the remedy was being sought.

**41**    Before turning to a consideration of decisions in other common law jurisdictions on the question of concurrent liability it is convenient to refer to the recent expressions of judicial opinion in England having a bearing on this question in Leigh and Sillivan Ltd. v. Aliakmon Shipping Co., [1985] 2 W.L.R. 289 (C.A.), and Tai Hing Cotton Mill Ltd. v. Liu Chong Hing Bank. Leigh and Sillivan involved the effect on a third party's right of action in tort of provisions limiting liability in the contract out of which the alleged relationship of proximity arose. The buyer of goods under a c. and f. contract sued the owners of a vessel that was under a time charter for the loss caused by damage to the goods as a result of bad stowage. The Court of Appeal held that the buyers did not have a right of action in contract against the shipowners because ownership had not passed to the buyers as required by s. 1 of the Bills of Lading Act, 1855 and that there was no implied contract with the shipowners arising from the buyers having taken delivery of the goods upon presentation of the bill of lading because the buyers did so as the agents of the sellers under their agreement with the latter. A majority of the Court (Sir John Donaldson M.R. and Oliver J.) held, applying Margarine Union G.m.b.H. v. Cambay Prince Steamship Co. (The "Wear Breeze"), [1969] 1 Q.B. 219, that the buyers did not have a right of action in tort against the shipowners because they did not have the ownership or a right to immediate possession of [page196] the goods at the time the damage occurred. The majority gave as a further consideration for adhering to the decision in The "Wear Breeze" that to admit a liability in tort in such a case would be to impose on the shipowners a greater liability than they had under the Hague Rules in the contract of carriage, which was the bargain on which they had agreed to carry the goods. The majority were of the view that a tortious duty of care in such a case could not be made subject, as a matter of legal principle, to the contractual provisions limiting liability. Sir John Donaldson put it thus at p. 301:

> I have, of course, considered whether any duty of care owed in tort to the buyer could in some way be equated to the contractual duty of care owed to the shipper, but I do not see how this could be done. The commonest form of contract of carriage by sea is one on the terms of the Hague Rules. But this is an intricate blend of responsibilities and liabilities (Article III), rights and immunities (Article IV), limitations in the amount of damages recoverable (Article IV, r. 5), time bars (Article III, r. 6) evidential provisions (Article III, rr.

4 and 6), indemnities (Article III, r. 5 and Article IV, r. 6) and liberties (Article IV, rr. 4 and 6). I am quite unable to see how these can be synthesised into a standard of care.

Robert Goff L.J. was of the view that contrary to The "Wear Breeze", which he held should be overruled, a c. and f. buyer should have a direct action in tort against a shipowner for damage caused to goods in transit, but that the liability of the shipowner should and would be subject to any exclusions or limitations in the bill of lading. He said that if that were not possible he would not be prepared to recognize a direct action in tort by the [page197] buyer. In this particular case he was of the opinion that the shipowners were not liable in tort for damage caused by the bad stowage because the stowage was the responsibility of the time charterers.

**42**    In Tai Hing the issue of concurrent liability was whether a customer owed a duty of care in tort to his bank to adopt certain procedures with respect to the operation of his current account to prevent and detect forgeries of his cheques. The precise issue was whether, if the customer's duty by reason of the implied terms of the contract with his bank was limited to drawing his cheques in such a manner as not to facilitate fraud or forgery and to advising his bank of any unauthorized cheque drawn on his account as soon as he became aware of it, he had a wider duty in tort, arising from the relationship of proximity to the bank, to take reasonable precautions in the management of his business to prevent forgery and to verify his monthly bank statements to enable him to notify the bank of any unauthorized item. The Hong Kong Court of Appeal, [1984] 1 Lloyd's L.R. 555, held that this wider duty existed both as an implied term of the contract and as a common law duty of care on the basis of the principle affirmed in Anns v. Merton London Borough Council. Reference was also made by Hunter J. to Esso Petroleum and Midland Bank Trust. The Judicial Committee of the Privy Council held that the customer's duty, whether in contract or in tort, was the narrower one indicated above. Lord Scarman, who delivered the judgment of the Judicial Committee, spoke against concurrent liability as a matter of general principle, but held, without deciding whether the customer had a duty in tort as well as in contract, that in any event the duty in tort could not be any greater than that imposed by the implied terms of the contract. After stating that it was, in their Lordship's opinion, "correct in principle and necessary for the avoidance of confusion in the law to adhere to the contractual analysis: on principle because it is a relationship in which the parties have, subject to a few exceptions, [page198] the right to determine their obligations to each other, and for the avoidance of confusion because different consequences do follow according to whether liability arises from contract or tort, eg in the limitation of action" (citing in support of this proposition something said by Lord Radcliffe in Lister v. Romford Ice and Cold Storage Co., at p. 587), Lord Scarman said at p. 957:

> Their Lordships do not, therefore, embark on an investigation whether in the relationship of banker and customer it is possible to identify tort as well as contract as a source of the obligations owed by the one to the other. Their Lordships do not, however, accept that the parties' mutual obligations in tort can be any greater than those to be found expressly or by necessary implication in

their contract. If, therefore, as their Lordships have concluded, no duty wider than that recognised in Macmillan and Greenwood can be implied into the banking contract in the absence of express terms to that effect, the respondent banks cannot rely on the law of tort to provide them with greater protection than that for which they have contracted.

**43**    I turn now to a consideration of decisions in other common law jurisdictions on the question of concurrent liability. In Finlay v. Murtagh, the Supreme Court of Ireland (O'Higgins C.J., Henchy, Griffin, Kenny and Parke JJ.), on appeal from the High Court, held that a solicitor who had been retained by a client to act for him in a claim for damages for personal injury was liable to the client in tort as well as in contract for failure to institute an action within the limitation period. The Court applied the distinction, reflected in the test laid down by Greer L.J. in Jarvis, Moy, Davies, Smith, Vandervell & Co., at p. 405, which I quoted earlier, between a cause of action based on a special obligation or duty created by the express terms of a retainer (sometimes referred to [page199] as a "special contract") and a cause of action based on an implied term of the retainer to exercise reasonable care and skill and a co-extensive common law duty of care. The Court based the tortious liability of a solicitor on the principle affirmed in Hedley Byrne, as applying to a person who "undertakes to show professional care and skill towards a person who may be expected to rely on such care and skill and who does so rely", and it held that the Hedley Byrne principle, as indicated by the speeches in the House of Lords in that case, was not confined to non-contractual relationships. The Court held that since a solicitor may be liable in tort to persons with whom he has no contractual relationship (such as one for whom he acts gratuitously or a third party injured by his negligence) there is no reason in principle why he should not be liable in tort for the same negligence to a client with whom he has a contractual relationship. As Henchy J. put it at p. 257, subject to the qualification for the case of necessary reliance for the cause of action on a special contractual obligation or duty not falling within the scope of the common law duty of care, "For the same default there should be the same cause of action." The Court referred to Midland Bank Trust, Batty and Photo Production in concluding in favour of concurrent liability.

**44**    The position in New Zealand, which has been opposed to concurrent liability for professional negligence, was established in 1972 in McLaren Maycroft & Co. v. Fletcher Development Co., where the Court of Appeal held that the liability of engineers for alleged failure to exercise the requisite professional care and skill in the supervision of the carrying out of an earthwork contract was in contract only. The Court followed Bagot, [page200] quoting the statement from the judgment of Diplock L.J. which I have quoted earlier in these reasons. In Rowe v. Turner Hopkins & Partners, [1982] 1 N.Z.L.R. 178, where a solicitor was held not to have been negligent, Cooke and Roper JJ. in the Court of Appeal expressed the view that McLaren Maycroft required reconsideration in view of later English decisions bearing on the question of concurrent liability, such as Midland Bank Trust. As far as I have been able to ascertain that has not yet been done by the Court of Appeal. There is a very full analysis of McLaren Maycroft and its effect on the New Zealand jurisprudence in French, op. cit., in which the author concludes at pp. 314-15 in favour of concurrent liability.

**45** The Australian position on concurrent liability is reflected in Aluminum Products (Qld.) Pty. Ltd. v. Hill, and Macpherson & Kelley v. Kevin J. Prunty & Associates. In Aluminum Products a majority of the Full Court of the Supreme Court of Queensland (Douglas and Campbell JJ.), Connolly J. dissenting, held on a stated case, following Midland Bank Trust and Ross v. Caunters, that the liability of a solicitor, if any, to a client for the release of mortgage moneys in return for a mortgage executed by a non-existent company would be in tort as well as contract. In his dissenting opinion Connolly J. expressed the view that Groom v. Crocker was correctly decided and that Hedley Byrne did not apply to a contractual relationship. In Macpherson & Kelley, a majority of the Full Court of the Supreme Court of Victoria (Lush and Beach JJ.), Murphy J. dissenting, followed Midland Bank Trust and Aluminum Products in holding that a retained solicitor was liable to a client in tort as well as in contract for failure to institute an action within the limitation period. In his dissenting opinion, in which he referred to McLaren Maycroft, Murphy J. said at p. 587: "I believe that it is unarguable that where there is a contract then it is, together with its incidents both express and implied, the sole measure of the duties of the parties to one another. Irrespective of how the action is pleaded, the plaintiff cannot recover more [page201] than the defendant was obliged to perform under the contractual duties imposed upon him."

**46** Liability in tort for breach of a duty of care arising out of a relationship created by contract, including that between attorney and client, is well established in the United States. See Prosser, Handbook of the Law of Torts (4th ed. 1971), p. 617, where it is said: "The principle which seems to have emerged from the decisions in the United States is that there will be liability in tort for misperformance of a contract whenever there would be liability for gratuitous performance without the contract". A leading case, which has frequently been cited, is Flint & Walling Mfg. Co. v. Beckett, 79 N.E. 503 (Ind. 1906), in which the principle or rationale underlying such liability is stated as follows at p. 505:

> It is, of course, true that it is not every breach of contract which can be counted on as a tort, and it may also be granted that if the making of a contract does not bring the parties into such a relation that a common-law obligation exists, no action can be maintained in tort for an omission properly to perform the undertaking. It by no means follows, however, that this common-law obligation may not have its inception in contract. If a defendant may be held liable for the neglect of a duty imposed on him, independently of any contract, by operation of law, a fortiori ought he to be liable where he has come under an obligation to use care as the result of an undertaking founded on a consideration. Where the duty has its roots in contract, the undertaking to observe due care may be implied from the relationship, and should it be the fact that a breach of the agreement also constitutes such a failure to exercise care as amounts to a tort, the plaintiff may elect, as the common-law authorities have it, to sue in case or in assumpsit.

The following statement of the principle in 38 Am. Jur., Negligence para. 20, is also cited in the cases:

[page202]

> Ordinarily, a breach of contract is not a tort, but a contract may create the state of things which furnishes the occasion of a tort. The relation which is essential to the existence of the duty to exercise care may arise through an express or implied contract. Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract. In such a case, the contract is mere inducement creating the state of things which furnishes the occasion of the tort. In other words, the contract creates the relation out of which grows the duty to use care.

What is not clearly or consistently established is the approach of the courts to the choice of rule or result in a case in which the action may be characterized as being in both contract and tort and different legal consequences flow from the two kinds of liability. This question is very fully examined in Prosser, "The Borderland of Tort and Contract," in Selected Topics on the Law of Torts (1953), where the author sums up the state of the law in his conclusion on pp. 450-51 as follows:

> Taking New York as a typical jurisdiction, and an injury to a passenger at the hands of a carrier as a typical case, the action takes on the color of tort or contract with a facility which a chameleon might envy. It is contract for purposes of jurisdiction, the recovery of interest, survival of the action, the effect of a limiting term of the contract, and of the application of contract rules of the conflict of laws. It becomes tort for purposes of the statute of limitation, the measure of damages, recovery for wrongful death, and of the assignability of the cause of action. Change the state, or make the injury one to goods, and different results follow in many respects. Sometimes the plaintiff is permitted to elect his cause of action; sometimes he is told what it must be; sometimes he is told that it must be contract, sometimes that it must be tort.

[page203]

The situation is described in Prosser, Wade and Schwartz, Cases and Materials on Torts (6th ed. 1976), as follows at pp. 457-58:

> In these situations the courts have proceeded along two different lines. One

is to permit the plaintiff to choose the theory of his action, and dispose of the particular question accordingly....

On the other hand, some courts will not give the plaintiff this latitude. Rather, the court will determine the "gravamen" or "gist" of the action, which is to say the essential facts on which the plaintiff's claim rests

As these cases suggest, there is little consistency in the decisions, even in a single state; although many courts have tended to look to the policy underlying the particular rule of law or statute to be applied in order to assist themselves in making the characterization.

**47**    It should also be noted, at least from the point of view of policy, that the principle of concurrent or alternative liability was applied by this Court to the Quebec civil law in Wabasso Ltd. v. National Drying Machinery Co., [1981] 1 S.C.R. 578, where the issue on a declinatory exception was whether the Superior Court for the District of Trois-Rivières had jurisdiction with respect to an action in damages based on fault in connection with the installation in Trois-Rivières of a machine for processing polyester fibres sold under a contract made in Philadelphia. The fault complained of, which allegedly caused the destruction of the plaintiff's factory by fire, was the failure of the manufacturer's technicians at the time of installation to warn the plaintiff's employees of the danger of fire if the upper part of the machine was not kept clean. The issue of concurrent or alternative liability was whether the plaintiff could base its action on delictual responsibility (which would give the Superior Court for the District of Trois-Rivieres jurisdiction), despite the existence of the contract. The Court held that the plaintiff could base its action on delictual responsibility under art. 1053 of the Quebec Civil Code, although the alleged fault occurred in the performance of the contract. After a review of the civil law authorities on the much debated question of the "joint application of the systems of contractual [page204] and delictual liability and of an election by the creditor of either system", Chouinard J., delivering the unanimous judgment of the Court, concluded at p. 590 as follows:

I conclude that the same fact can constitute both contractual fault and delictual fault, and that the existence of contractual relations between the parties does not deprive the victim of the right to base his remedy on delictual fault.

Chouinard J. quoted with approval a passage from the judgment of Paré J.A. in the Quebec Court of Appeal, in which it was said: "It is therefore necessary that the fault committed within the framework of the contract be in itself a fault sanctioned by art. 1053 C.C. even in the absence of a contract."

**48**    I must now attempt to draw conclusions from what I fear has been a much too lengthy survey of judicial opinion on the question of concurrent liability. My conclusions as to what I conceive,

with great respect, to be the opinion with which I am in agreement on the various issues underlying this question may be summarized as follows.

**49**    1. The common law duty of care that is created by a relationship of sufficient proximity, in accordance with the general principle affirmed by Lord Wilberforce in Anns v. Merton London Borough Council, is not confined to relationships that arise apart from contract. Although the relationships in Donoghue v. Stevenson, Hedley Byrne and Anns were all of a non-contractual nature and there was necessarily reference in the judgments to a duty of care that exists apart from or independently of contract, I find nothing in the statements of general principle in those cases to suggest that the principle was intended to be confined to relationships that arise apart from contract. Indeed, the dictum of Lord Macmillan in Donoghue v. Stevenson concerning concurrent liability, which I have quoted earlier, would clearly suggest the contrary. I also find this conclusion to be persuasively demonstrated, with particular reference to Hedley Byrne, by the judgment of Oliver J. in Midland [page205] Bank Trust. As he suggests, the question is whether there is a relationship of sufficient proximity, not how it arose. The principle of tortious liability is for reasons of public policy a general one. See Arenson v. Casson Beckman Rutley & Co., [1977] A.C. 405, per Lord Simon of Glaisdale at p. 417. Junior Books Ltd. v. Veitchi Co., [1983] 1 A.C. 521, in which an owner sued flooring subcontractors directly in tort, is authority for the proposition that a common law duty of care may be created by a relationship of proximity that would not have arisen but for a contract.

**50**    2. What is undertaken by the contract will indicate the nature of the relationship that gives rise to the common law duty of care, but the nature and scope of the duty of care that is asserted as the foundation of the tortious liability must not depend on specific obligations or duties created by the express terms of the contract. It is in that sense that the common law duty of care must be independent of the contract. The distinction, in so far as the terms of the contract are concerned, is, broadly speaking, between what is to be done and how it is to be done. A claim cannot be said to be in tort if it depends for the nature and scope of the asserted duty of care on the manner in which an obligation or duty has been expressly and specifically defined by a contract. Where the common law duty of care is co-extensive with that which arises as an implied term of the contract it obviously does not depend on the terms of the contract, and there is nothing flowing from contractual intention which should preclude reliance on a concurrent or alternative liability in tort. The same is also true of reliance on a common law duty of care that falls short of a specific obligation or duty imposed by the express terms of a contract.

[page206]

**51**    3. A concurrent or alternative liability in tort will not be admitted if its effect would be to permit the plaintiff to circumvent or escape a contractual exclusion or limitation of liability for the act or omission that would constitute the tort. Subject to this qualification, where concurrent

liability in tort and contract exists the plaintiff has the right to assert the cause of action that appears to be most advantageous to him in respect of any particular legal consequence.

**52**    4. The above principles apply to the liability of a solicitor to a client for negligence in the performance of the professional services for which he has been retained. There is no sound reason of principle or policy why the solicitor should be in a different position in respect of concurrent liability from that of other professionals.

**53**    5. The basis of the solicitor's liability in tort for negligence and the client's right in such case to recover for purely financial loss is the principle affirmed in Hedley Byrne and treated in Anns as an application of a general principle of tortious liability for negligence based on the breach of a duty of care arising from a relationship of sufficient proximity. That principle is not confined to professional advice but applies to any act or omission in the performance of the services for which a solicitor has been retained. See Midland Bank Trust Co. v. Hett, Stubbs & Kemp, at p. 416; Tracy v. Atkins (1979), 105 D.L.R. (3d) 632, at p. 638.

**54**    Applying these conclusions to the facts of the case at bar, I am of the opinion that if the respondent solicitors were negligent in the performance of the professional services for which they were retained they would be liable in tort as well as contract to the appellant, subject, of course, to the other defences which they have raised.

[page207]

### III

**55**    I turn now to the question whether the respondent solicitors were negligent in taking a mortgage that was void as being contrary to s. 96(5) of the Companies Act. As I have indicated, the Trial Division and the Appeal Division of the Nova Scotia Supreme Court came to different conclusions on this issue. Hallett J. in the Trial Division held that the respondents had not failed to meet the applicable standard of care. The Appeal Division held that they had been negligent. This difference in conclusion appears to have turned to some extent on a difference of view as to the relevance of some of the expert evidence concerning the practice of solicitors in real estate transactions involving corporations in Nova Scotia in 1968.

**56**    The work which the respondents undertook for the Nova Scotia Trust Company was to perform the necessary legal services to obtain a valid first mortgage on the property of Stonehouse. Although the trust company's letter of December 12, 1968 to the respondent Rafuse and the respondent Cordon's letter of January 17, 1969, to the trust company (from both of which I have quoted at the beginning of these reasons), did not make explicit reference to the validity of the mortgage, the respondent Cordon, in his evidence on discovery, acknowledged that the obligation to the Nova Scotia Trust Company was "to see that there was a valid first mortgage."

**57**     The act or omission which, it is contended, constituted the negligence in this case was the failure of the respondents to know of or discover s. 96(5) of the Companies Act, to perceive that it raised a question concerning the validity of the proposed mortgage and to advise the Nova Scotia Trust Company accordingly. The question is whether this was a failure to meet the applicable standard of care in discharging the professional responsibility which the respondents had assumed.

[page208]

**58**     A solicitor is required to bring reasonable care, skill and knowledge to the performance of the professional service which he has undertaken. See Hett v. Pun Pong (1890), 18 S.C.R. 290, at p. 292. The requisite standard of care has been variously referred to as that of the reasonably competent solicitor, the ordinary competent solicitor and the ordinary prudent solicitor. See Mahoney, "Lawyers -- Negligence -- Standard of Care" (1985), 63 Can. Bar Rev. 221. Hallett J., in referring to the standard of care as that of the "ordinary reasonably competent" solicitor, stressed the distinction between the standard of care required of the reasonably competent general practitioner and that which may be expected of the specialist. It was on the basis of this distinction that he disregarded the evidence of one of the expert witnesses concerning the practice in real estate transactions involving corporations.

**59**     The requirement of professional competence that was particularly involved in this case was reasonable knowledge of the applicable or relevant law. A solicitor is not required to know all the law applicable to the performance of a particular legal service, in the sense that he must carry it around with him as part of his "working knowledge", without the need of further research, but he must have a sufficient knowledge of the fundamental issues or principles of law applicable to the particular work he has undertaken to enable him to perceive the need to ascertain the law on relevant points. The duty in respect of knowledge is stated in 7 Am Jur 2d, Attorneys at Law para. 200, in a passage that was quoted by Jones J.A. in the Appeal Division, as follows: "An attorney is expected to possess knowledge of those plain and elementary principles of law which are commonly known by well-informed attorneys, and to discover those additional rules of law which, although not commonly known, may readily be found by standard research techniques." See Charlesworth and Percy on Negligence (7th ed. 1983), pp. 577-78 to similar effect, where it is said: "Although a solicitor is not bound to know the contents of every statute of the realm, there are some statutes, about which it is his duty to know. The test for deciding [page209] what he ought to know is to apply the standard of knowledge of a reasonably competent solicitor." The duty or requirement of professional competence in respect of knowledge is put by Jackson and Powell, Professional Negligence (1982), at pp. 145-46 as follows: "Although a solicitor is not "bound to know all the law,' he ought generally to know where and how to find out the law in so far as it affects matters within his field of practice. However, before the solicitor is held liable for failing to look a point up, circumstances must be shown which would have alerted the reasonably prudent solicitor to the point which ought to be researched", citing Bannerman Brydone Folster & Co. v. Murray, [1972]

N.Z.L.R. 411. In that case, where a solicitor undertook on very short notice to prepare the necessary document to give effect to an oral agreement providing that a mortgagee would have an option to purchase, the New Zealand Court of Appeal held that it was not negligence to have failed to perceive that making the option to purchase a condition of the mortgage rendered it void or unenforceable as a clog on the equity of redemption. The point was referred to as a rather old and obscure principle which had not been the subject of judicial commentary for many years and was mainly a subject of academic interest. It is clear, however, that the determining considerations in the Court's conclusion were the time available to the solicitor and the fact that the client was already committed to the transaction in the form that proved defective. See Turner J. at p. 427. The decision is nevertheless instructive concerning the duty of a solicitor to perceive problems and to warn the client of them. For a statement of the solicitor's duty "to identify problems and to bring their effect to the attention of the client", with reference to cases in which this duty has been applied, see Dugdale and Stanton, Professional Negligence (1982), p. 203.


[page210]

**60**    While the solicitor's duty of care has generally been stated, for obvious reasons, in the context of contractual liability as arising as an implied term of the contract or retainer, the same duty arises as a matter of common law from the relationship of proximity created by the retainer. In the absence of special terms in the contract determining the nature and scope of the duty of care in a particular case, the duties of care in contract and in tort are the same. See Esso Petroleum, supra, at p. 15; Mahoney, op. cit., p. 223; Dugdale & Stanton, op. cit., p. 218.

**61**    Two solicitors, Mr. S. David Bryson, Q.C., and Mr. Arthur G.H. Fordham, Q.C., gave evidence as to their practice and that of other solicitors in real estate transactions involving corporations. Both stated that it was the practice to determine the capacity of a corporation to give security and for this purpose to examine the provisions of the Companies Act. Mr. Bryson said that he could not be certain that he knew of the existence of s. 96(5) of the Act in 1968, that the transaction handled by the respondents was "a rather unusual one and not in the common run of real estate mortgage transactions", and that he did not recall having encountered a transaction of this kind in his practice. Mr. Fordham said that he was aware of s. 96(5) in 1968. Hallett J. disregarded the evidence of Mr. Fordham as being that of the specialist in commercial real estate transactions. He attached particular importance to the evidence of Mr. Bryson as being more relevant, despite his acknowledged experience and expertise, to the standard of care to be expected of the reasonably competent general practitioner in real estate matters. From the evidence of Mr. Bryson, the fact that persons of legal training in the Nova Scotia Trust Company had approved the loan and instructed the respondents, and the differences of judicial opinion concerning the validity of the mortgage, Hallett J. concluded that the ordinary reasonably competent solicitor in Nova Scotia in 1968 would not have known of s. 96(5) of the Companies Act, and if he did, would not have perceived the possible implications of this [page211] provision for the validity of the proposed mortgage.

**62**    The Appeal Division held that the trial judge erred in disregarding the evidence of Mr. Fordham, that the issue was not whether a reasonably competent solicitor would have known of the existence of s. 96(5) of the Companies Act without an examination of the Act, or would have formed the opinion that the mortgage was void, but rather whether he would have examined the Companies Act to determine if it placed any restrictions on the capacity of a corporation to give security and whether he would have perceived that s. 96(5) raised a problem concerning the validity of the proposed mortgage. In concluding that the respondent solicitors had been negligent, Jones J.A., delivering the unanimous judgment of the Appeal Division, said:

> The solicitor's obligation in the present case was to ensure that the mortgage was valid. As the security was being given by a company it was their duty to be acquainted with those provisions of the Companies Act which might affect the security. Where a solicitor does not have knowledge of the statutes pertaining to a transaction then he has an obligation to inform himself of those provisions. With respect, I find nothing unusual about the provisions of s. 96(5) of the Companies Act. Once a solicitor was aware of that provision, from the language of the section, he would realize that he was faced with a problem. Regardless of the interpretation placed on the provision, he would be under a duty to inform the client. It was the solicitor's duty to exercise reasonable skill and knowledge. That duty was not placed on the officials of the appellant company, who were only concerned with the business aspects of the transaction.

**63**    With respect, I am in agreement with the conclusion of the Appeal Division on the issue of negligence. The fact that the capacity of a corporation to borrow and give security may be limited or subjected to certain conditions by the provisions of the applicable Companies Act is such basic knowledge that a reasonably competent solicitor must be held to possess it, whether he is a general practitioner or a specialist. It is knowledge which a [page212] solicitor who undertakes to do the legal work to obtain a mortgage or other security from a corporation must possess, and with it there is a duty to exercise reasonable care and skill to ascertain by an examination of the relevant legislation what limits or conditions it imposes upon the capacity of a corporation to give security. A reasonably competent solicitor knowing, as the respondent solicitors did, that the mortgage was being given by Stonehouse to obtain a loan to assist in the purchase of its shares would have recognized that s. 96(5) of the Companies Act raised a serious question, to say the least, concerning the legality or validity of the proposed mortgage. With great respect I cannot agree with the trial judge that the reasonably competent solicitor would have concluded that s. 96(5) did not affect the validity of the mortgage, as was later held by Hart J. in the action for foreclosure, and would have said nothing about the matter to his client. In the existing state of the law in 1968 the reasonably competent solicitor in Nova Scotia in 1968 would have perceived that there was a serious possibility that the mortgage might be held to be void as being contrary to s. 96(5) and would have advised his client accordingly. In Thibault v. Central Trust Company of Canada, [1963] S.C.R. 312, some five years before the mortgage transaction in the case at bar, this Court held that a mortgage given by a company to secure the payment by the new owner of the purchase price of his shares in the

company was void as contrary to s. 37(1) of the New Brunswick Companies Act, R.S.N.B. 1952, c. 33, which provides, in words essentially the same as those of s. 96(5) of the Nova Scotia Companies Act, that a company "shall not ... give whether directly or indirectly, and whether by means of a loan, guarantee, the provision of security or otherwise, any financial assistance for the purpose of, or in connection with, a purchase made or to be made by any person of any shares in the company." Martland J., delivering the judgment of the Court, held that the appeal from the judgment of the Appeal Division of the Supreme Court of New Brunswick should be dismissed for the reasons of Ritchie J.A., who said (1962), 33 D.L.R. (2d) 317, at p. 332: "The purpose and result of the mortgage was the creation of a charge on the real property of the [page213] company to secure payment of the price Clavette had agreed to pay Thibault for shares in its capital stock. There was no outstanding indebtedness of the company to Thibault. The company received no consideration for the mortgage, either express or implied." With reference to the effect of s. 37(1) he said at pp. 334-35: "I find in the explicit and unambiguous language of s. 37(1) a clear intention on the part of the legislature to restrict, except as to five specified types of transaction, the powers of any company so as to prevent it giving financial assistance to any person for the purpose of, or in connection with, a purchase of shares in its capital stock. The peremptory nature of the language used is directed to the corporate capacity and so renders the restriction mandatory. The mortgage comes squarely within the wording of the prohibition. In view of such statutory restriction on its corporate powers the mortgage must be held ultra vires the company. No authorization or ratification by the directors or the shareholders could serve to make the mortgage valid." Hart J. in Central and Eastern Trust Co. v. Stonehouse Motel and Restaurant Ltd., drew a distinction, in effect, between a mortgage given, as in Thibault, to secure the payment to the vendor of the purchase price of shares and a mortgage given to secure a loan to the company, the proceeds of which were to be given to the vendor in part payment for the shares. While the reasonably competent solicitor might well be of the view that this distinction, had it occurred to him, might prevail if there were a challenge to the validity of the mortgage, there would have to remain in his view a serious question as to whether the mortgage might be held to be void for the reasons given by Ritchie J. delivering the judgment of this Court in Central and Eastern Trust Co. v. Irving Oil Ltd. Saying that he was unable to accept the view taken of the mortgage transaction by Hart J., Ritchie J. held that it was an unavoidable conclusion from the facts as found by the trial judge and the Court of Appeal that the proceeds of the mortgage loan were never intended to go to the company but were to be paid to the vendor for the shares. A reasonably competent solicitor would in my opinion have seen that this was possibly, if not probably, the view that would ultimately be taken of the mortgage [page214] transaction and would have advised his client for this reason that he could not give any assurance as to the validity of the proposed mortgage. I am therefore of the opinion that the respondent solicitors were negligent in failing to ascertain the existence of s. 96(5) of the Nova Scotia Companies Act, to perceive that it raised a problem concerning the validity of the proposed mortgage and to advise the Nova Scotia Trust Company accordingly, and that their negligence was causative of the damage suffered by the trust company.

IV

**64**    The respondents contend that if they were negligent there was contributory negligence on the part of the Nova Scotia Trust Company or those for whom it was responsible and that accordingly there should be an apportionment of liability between the appellant and the respondents. This contention is based essentially on the fact that the mortgage loan to Stonehouse was recommended and approved by persons of legal training and experience, who knew that the proceeds of the loan were to be used to purchase the shares of the company. Mr. John Mroz, the mortgage manager of the Nova Scotia Trust Company, who recommended the loan to the Executive Committee of the Board of Directors of the trust company, and Mr. D.G. Grant, the President of the company and a member of the Executive Committee, were both graduates in law with some experience in practice before joining the company and members of the Bar of Nova Scotia. Mr. Lorne Clarke, Q.C., one of the members of the Truro Advisory Board which advised the trust company as to whether Stonehouse was a good risk, was an experienced practitioner. At least two members of [page215] the Executive Committee, besides Mr. Grant, who were present at the meeting which approved the loan, were lawyers. Mr. John A. Walker, Q.C., was a prominent and experienced member of the Nova Scotia Bar, although he was apparently retired from practice at the time the loan was approved. Although the testimony on this point was not too clear, the trial judge found that Mr. Mroz and Mr. Grant, and by implication the other members of the Executive Committee, must have known from the documentation that the proceeds of the mortgage loan were to be used to purchase the shares. The loan application contained the words "money required to assist in the purchase (chattel mortgage on equipment)", and the reference to the loan in the minutes of the meeting of the Executive Committee at which the loan was approved contained the words "Purchase price of the Company shares -- $315,000." Jones J.A. in the Court of Appeal said with reference to the company's knowledge of the nature of the transaction at p. 270:

> The second issue concerns the knowledge of the appellant. If the appellant knew that the transaction was invalid then presumably it would be responsible for the loss. It would not be relying on the solicitors for that information. The trial judge found that both parties knew that the proceeds of the loan were to be used to purchase the Stonehouse shares. There was ample evidence to support that conclusion. It was clear on the face of the documents and in the company's minutes that the money was to be used for that purpose. It also appears from the decision that the parties were not aware that the loan was illegal. Certainly there is no finding by the trial judge that the appellant knew that the transaction was illegal.

**65**    In my opinion the defence of contributory negligence must fail. The executive officers of the Nova Scotia Trust Company and the members of the Executive Committee of the Board of Directors did not have a duty of care with respect to the legal aspects of a transaction other than to retain qualified solicitors to perform the necessary legal services. As the testimony of Mr. Mroz and Mr. Grant indicated, they were administrative officers who, despite their legal qualifications, were not expected to provide the company with legal advice. [page216] They and the Executive Committee were concerned with the business or financial aspects of a loan -- whether the borrower

was a good risk -- and quite properly left the legal aspects of a transaction to the retained solicitors. They might well have been negligent had they relied on their own legal judgment in such a case. The fact that neither the executive officers nor the members of the Executive Committee were responsible for the legal aspects of a proposed mortgage loan was acknowledged by the trial judge, who said at p. 391: "Again, I am mindful that it was not the function of the executive committee to decide on legal matters. Their function was to assess the feasibility of making the loan." Although Jones J.A. found it unnecessary, because of his conclusion on the question of limitation, to decide the issue of contributory negligence, he said at p. 270, "It was the solicitor's duty to exercise reasonable skill and knowledge. That duty was not placed on the officials of the appellant company, who were only concerned with the business aspects of the transaction", and at p. 278 he said that the trust company "took the only course open to it to determine the validity of the mortgage, namely, consulting the solicitors." I respectfully agree with these observations.

V

**66**    The respondents further contended that the appellant's action was not maintainable because it was based on an illegal transaction. It was contended that because the mortgage was illegal the appellant's retainer of the respondents was also illegal and thus unenforceable as a basis of the appellant's action for breach of contract and negligence. In my opinion this contention is without merit. It was considered and rejected by the Appeal Division, and I am in respectful agreement with their reasons for doing so. The retainer itself was separate from the mortgage transaction and did not have an unlawful purpose to the knowledge [page217] of either of the parties. A solicitor cannot raise the defence of illegality if it is only because of his negligence that the exercise of the professional services for which he was retained results in the carrying out of an illegal transaction.

VI

**67**    The final issue is whether the appellant's action in tort is statute-barred. As I indicated earlier, the appellant conceded that if its recourse against the respondents was in contract only its action was barred. As will appear, the limitations issue ultimately turns on whether the discoverability rule is to apply to the appellant's cause of action in tort.

**68**    The applicable limitation period is six years after the cause of action arose, as prescribed by s. 2(1)(e) of The Statute of Limitations, R.S.N.S. 1967, c. 168, as follows:

> 2(1) The actions in this Section mentioned shall be commenced within and not after the times respectively in such Section mentioned, that is to say:

> . . .

> (e) all actions grounded upon any lending, or contract, expressed or implied, without specialty, or upon any award where the submission is not by specialty, or for money levied by execution; all actions for direct

> injuries to real or personal property; actions for the taking away or
> conversion of property, goods and chattels; actions for libel, malicious
> prosecution and arrest, seduction, criminal conversation; and actions for all
> other causes which would formerly have been brought in the form of
> action called trespass on the case, except as herein excepted, within six
> years after the cause of any such action arose;

**69**    The relevant dates are as follows: the mortgage was executed by Stonehouse and taken by the respondents as security for the loan on December 31, 1968; the certificate of title stating that the mortgage formed a first charge on the property was given by the respondents on January 17, 1969; [page218] the validity of the mortgage was challenged in the appellant's action for foreclosure instituted on April 21, 1977; the mortgage was held to be void by this Court on April 22, 1980; and the appellant's action for negligence was instituted on October 22, 1980.

**70**    Without deciding whether there was concurrent liability, the Appeal Division of the Nova Scotia Supreme Court held that the appellant's action was statute-barred, whether it was in contract or in tort. It held that the appellant's cause of action for negligence, however characterized, arose for purposes of The Statute of Limitations when the negligence occurred and not when it was discovered or ought to have been discovered by the appellant with the exercise of reasonable diligence. As to when the breach of duty and damage occurred, Jones J.A. said at p. 274: "In this case the negligence occurred when the solicitors gave the certificate of title. As found by the Supreme Court of Canada, the mortgage was void when it was delivered. The loss at that point was the face value of the defective mortgage." In support of his conclusion on the limitations issue Jones J.A. relied particularly on the opinion of Laskin J.A. in Schwebel v. Telekes, in which he held, following Howell v. Young, that whether the cause of action for negligence against the notary public was viewed as being in contract or in tort it arose for purposes of the statute of limitations when the breach of duty occurred and not when it was discovered or should have been discovered. Jones J.A. also referred to Cartledge v. E. Jopling & Sons Ltd., [1963] A.C. 758, in which the House of Lords acknowledged the harshness or injustice of the rule that a cause of action for negligence may arise for purposes of the statute of limitations before the injured party has discovered or could have discovered the negligence but held that the rule could be changed only by legislation. Jones J.A. was of the view that to apply the discoverability rule would be in effect to amend The Statute of Limitations.

[page219]

**71**    The appellant made alternative submissions on the limitations issue: (a) if the rule that should govern is the one applied in Cartledge, that a cause of action for negligence arises when damage occurs whether or not it has been discovered or ought to have been discovered, the appellant's action in tort is not statute-barred because the damage did not occur before the mortgage was declared to

be void by this Court on April 22, 1980; and (b) if the applicable rule, as the appellant contends, is that a cause of action for negligence does not arise for purposes of the statute of limitations before the damage is discovered or ought to have been discovered by the exercise of reasonable diligence, the basis of the appellant's cause of action in tort was discoverable at the earliest in April or May 1977 when the validity of the mortgage was challenged in the action for foreclosure.

**72**    If the discoverability rule were not to apply, I would agree that the cause of action in tort arose when damage occurred, according to the established rule affirmed in Cartledge and applied in Midland Bank Trust Co. v. Hett, Stubbs & Kemp, at p. 433 and Forster v. Outred & Co., to the concurrent liability in tort of solicitors to clients. As I indicated earlier, the reference in Howell v. Young (followed in Schwebel), in the context of a consideration of possible concurrent liability, to the time when the breach of duty, rather than the damage, occurred has been questioned by commentators. The better view, as I have suggested, is that the courts had in mind the usual case of solicitor's negligence where actual damage, if not ultimate financial loss, occurs at the same time as the breach of duty. There would appear to be no reason in principle why the established distinction in this regard between a cause of action in contract and a cause of action in tort should not apply to a case of concurrent liability. This does not, however, in my opinion, assist the appellant. Although the mortgage was not declared by final judgment to be void until April 22, 1980, it was void ab initio and actual damage occurred when the respondents took it on December 31, 1968 because as a result the Nova Scotia Trust Company [page220] acquired no interest in the Stonehouse property as security for its loan. Cf. Forster v. Outred.

**73**    It is necessary then to consider the appellant's alternative submission on the limitations issue. The question raised by this submission, as I see it, is whether there is any reason why the judgment of the majority in City of Kamloops v. Nielsen, [1984] S.C.R. 2, which applied the discoverability rule to the limitation period in s. 738(2) of the Municipal Act, R.S.B.C. 1960, c. 255, should not be followed with respect to the appellant's cause of action in tort under s. 2(1)(e) of the Nova Scotia Statute of Limitations, R.S.N.S. 1967, c. 168.

**74**    Kamloops involved a claim against a municipality for negligent failure to prevent the construction of a house with defective foundations. Section 738(2) of the Municipal Act provided that such an action must be brought within one year "after the cause of such action shall have arisen", and s. 739 provided that notice of the damage must be given to the municipality within two months "from and after the date on which such damage was sustained". Counsel for the municipality conceded that time began to run under both sections from the date the plaintiff actually discovered the damage or ought to have discovered it by the exercise of reasonable diligence. The issue was when he should have discovered it. The British Columbia Court of Appeal accepted this view of the law, citing Sparham-Souter v. Town and Country Developments (Essex) Ltd., [1976] Q.B. 858 (C.A.), in support of the discoverability rule.

[page221]

**75**    Limitation of actions was not an issue when the appeal in Kamloops was argued in this Court but after the decision of the House of Lords in Pirelli General Cable Works Ltd. v. Oscar Faber & Partners, [1983] 2 A.C. 1, the Court called for written submissions on the question. In Pirelli, the House of Lords held that the date of accrual of a cause of action in tort for damage caused by the negligent design or construction of a building was the date when the damage came into existence, and not the date when the damage was discovered or should have been discovered by the exercise of reasonabl8 diligence. Cartledge was applied and Sparham-Souter disapproved on this issue. As in Cartledge, the House of Lords acknowledged the injustice of the established rule but was of the opinion that it could only be changed by legislation. In Cartledge, the House of Lords attached particular importance to s. 26 of the Limitation Act, 1939, which provided that in certain cases of fraud and mistake "the period of limitation shall not begin to run until the plaintiff has discovered the fraud or the mistake, as the case may be, or could with reasonable diligence have discovered it", as indicating the limited application to be given to the discoverability rule. In Pirelli, which involved an action against engineers for negligence with respect to the design of a chimney, the House of Lords had the further expression of legislative intent reflected in the amendment made by the Limitation Act 1963 to remedy the injustice demonstrated by Cartledge in cases of personal injury. Lord Fraser of Tullybelton said at p. 14 that the amendment of 1963, confined as it was to personal injury cases, indicated that "Parliament deliberately left the law unchanged so far as actions for damages of other sorts was concerned." Both Lord Fraser and Lord Scarman, however, adverted to the more general reason for leaving such an important change in the law affecting the limitations of actions to the legislature: the inability of the courts to provide a satisfactory scheme for the accommodation of the competing interests, including the provision of an outside limit or "final longstop date", as Lord Fraser referred to it. Lord Fraser put the general [page222] objection to the judicial introduction of the discoverability rule as follows at p. 19:

> Postponement of the accrual of the cause of action until the date of discoverability may involve the investigation of facts many years after their occurrence -- see, for example, Dennis v. Charnwood Borough Council [1983] Q.B. 409 -- with possible unfairness to the defendants, unless a final longstop date is prescribed, as in sections 6 and 7 of the Prescription and Limitation (Scotland) Act 1973. If there is any question of altering this branch of the law, this is, in my opinion, a clear case where any alteration should be made by legislation, and not by judicial decision, because this is, in the words of Lord Simon of Glaisdale in Miliangos v. George Frank (Textiles) Ltd. [1976] A.C. 443, 480: "a decision which demands a far wider range of review than is available to courts following our traditional and valuable adversary system -- the sort of review compassed by an interdepartmental committee." I express the hope that Parliament will soon take action to remedy the unsatisfactory state of the law on this subject.

Lord Scarman spoke in a similar vein as follows at p. 19:

It is tempting to suggest that in accordance with the Practice Statement (Judicial Precedent) [1966] 1 W.L.R. 1234, the House might consider it right to depart from the decision in Cartledge. But the reform needed is not the substitution of a new principle or rule of law for an existing one but a detailed set of provisions to replace existing statute law. The true way forward is not by departure from precedent but by amending legislation. Fortunately reform may be expected, since the Lord Chancellor has already referred the problem of latent damage and date of accrual of cause of action to his law reform committee.

[page223]

**76**    These considerations were obviously before the Court in Kamloops, yet in spite of them the majority chose to apply the discoverability rule to s. 738(2) of the Municipal Act. While noting the importance attached in Cartledge to s. 26 of the Limitation Act, 1939, they did not suggest that Cartledge and Pirelli were distinguishable because of the particular legislative context in Kamloops. Indeed, it is questionable whether they were distinguishable on that basis. While s. 738(2) was in force, prior to its repeal and replacement by s. 16 of the Limitations Act, S.B.C. 1975, c. 37, which makes express provision for the discoverability rule and an outside limit, the Statute of Limitations, R.S.B.C. 1948, c. 191, afforded a similar basis for an argument as to legislative intent in s. 38, which provided that the right of action for the recovery of any land or rent of which a person may have been deprived by concealed fraud "shall be deemed to have first accrued at and not before the time at which such fraud shall or with reasonable diligence might have been first known or discovered." There is a similar provision in s. 28 of the Nova Scotia Statute of Limitations, R.S.N.S. 1967, c. 168. Although Wilson J., who delivered the judgment of the majority in Kamloops, did not comment explicitly on the opinion that the introduction of the discoverability rule should be left to legislative rather than judicial decision, it is an obvious implication of her reasons and conclusion that she disagreed with the views on this question expressed in Cartledge and Pirelli. She appears to have been led to this conclusion essentially by the acknowledged injustice of the rule applied out of judicial restraint in those cases. Referring to Pirelli, she said at p. 40:

But perhaps the most serious concern is the injustice of a law which statute-bars a claim before the plaintiff is even aware of its existence. Lord Fraser and Lord Scarman were clearly concerned over this but considered [page224] themselves bound by Cartledge. The only solution in their eyes was the intervention of the legislature.

This Court is in the happy position of being free to adopt or reject Pirelli. I would reject it. This is not to say that Sparham-Souter presents no problem. As Lord Fraser pointed out in Pirelli the postponement of the accrual of the cause of

action until the date of discoverability may involve the courts in the investigation of facts many years after their occurrence. Dennis v. Charnwood Borough Council, [1982] 3 All E.R. 486, is a classic illustration of this. It seems to me, however, to be much the lesser of two evils.

**77**    I am thus of the view that the judgment of the majority in Kamloops laid down a general rule that a cause of action arises for purposes of a limitation period when the material facts on which it is based have been discovered or ought to have been discovered by the plaintiff by the exercise of reasonable diligence, and that that rule should be followed and applied to the appellant's cause of action in tort against the respondents under the Nova Scotia Statute of Limitations, R.S.N.S. 1967, c. 168. There is no principled reason, in my opinion, for distinguishing in this regard between an action for injury to property and an action for the recovery of purely financial loss caused by professional negligence, as was suggested in Forster v. Outred, supra, at pp. 765-66. Since the respondents gave the Nova Scotia Trust Company a certificate on January 17, 1969 that the mortgage was a first charge on the Stonehouse property, thereby implying that it was a valid mortgage, the earliest that it can be said that the appellant discovered or should have discovered the respondents' negligence by the exercise of reasonable diligence was in April or May 1977 when the validity of the mortgage was challenged in the action for foreclosure. Accordingly the appellant's cause of action in tort did not arise before that date and its action for negligence against the respondents is not statute-barred.

[page225]

**78**    For these reasons I would allow the appeal, set aside the judgments of the Trial Division and the Appeal Division of the Supreme Court of Nova Scotia and enter judgment against the respondents ordering them to pay to the appellant, in accordance with the agreement of the parties as to quantum, the sum of $424,434.04 outstanding on the mortgage for principal, interest and taxes, plus interest accruing daily after April 14, 1982 at the rate of $156.93 and legal fees of $56,759.46 incurred by the appellant in attempting to enforce the mortgage, the whole with costs in this Court and in the Trial and Appeal Divisions.

qp/cvd