# Index No. 4

ICLR: Chancery Appeal/Volume 7 /In re ORIENTAL COMMERCIAL BANK. Ex parte
EUROPEAN BANK. - (1871) L.R. 7 Ch.App. 99

(1871) L.R. 7 Ch.App. 99

**[COURT OF APPEAL IN CHANCERY]**

**In re ORIENTAL COMMERCIAL BANK. Ex parte EUROPEAN BANK.**

**1871 Nov. 24.**

**SIR G. MELLISH and SIR W. M. JAMES, L.JJ.**

*Winding-up - Double Proof - Letter of Credit - Accommodation Bills - Liability of Drawer to Proof
both by Holder and Acceptor.*

Bills of exchange were accepted by the *E. Company*, at the request of the *O. Company*, upon an
undertaking by the *O. Company* that they would provide funds to meet the bills at maturity. The
bills were indorsed by the *O. Company*, and discounted; but before they arrived at maturity both the
*E.* and *O. Companies* had stopped payment, and were in process of liquidation, and the bills were
dishonoured. The holders of the bills recovered the amount due on them by proofs against the
estates of both companies under their respective windings-up:-

*Held* (reversing the decision of *Bacon*, V.C.), that the *E. Company* were not entitled under the
contract of indemnity to prove as creditors against the *O. Company* for the amount that had been
recovered from the estate by the holders of the bills.

The rule in bankruptcy that there cannot be a double proof against the same estate in respect of the
same debt, *held* to apply in cases of winding-up under the *Companies Act*, 1862.

THIS was an appeal from a decision of Vice-Chancellor *Bacon*, made in the winding-up of
the *Oriental Commercial Bank, Limited* (1). The facts were shortly as follows:-

On the 12th of March, 1866, Mr. *D. Pappa*, the manager of the

(1)    Law Rep. 12 Eq. 501.

*Oriental Commercial Bank*, wrote to the manager of the *European Bank* as follows:-

> "We beg to advise you that our *Galatz* correspondent, Mr. *E. Constantinidi*, has valued upon your establishment for our account in the sum of £15,250, as per particulars at foot, which drafts please honour on presentation for our account, on the usual understanding that we furnish you with funds to meet the same at maturity."

In consequence of this undertaking, Mr. *Constantinidi* drew bills to the amount of £8800, which were accepted by the *European Bank*, and handed to the *Oriental Commercial Bank* as agents of the drawer, and indorsed by them to the *Agra Bank*, who discounted them.

When the bills became due all the three banks had stopped payment, and were in process of liquidation; and as no funds had been provided to the *European*, the bills were dishonoured.

The *Agra Bank*, the holders of the bills, proved against the *European Bank* for £8804 1*s.* 6*d.*, and received a first dividend of 3*s.* 4*d.* in the pound, amounting to £1467 6*s.* 11*d.* They then proved against the *Oriental Commercial Bank*, as the indorsers, for the balance of £7336 14*s.* 7*d.*, and received from their estate a dividend of 13*s.* in the pound. They subsequently received a further dividend of 6*s.* 8*d.* in the pound from the *European Bank* on their original proof. The result was that they recovered the full amount of their debt; half being paid by the *European*, and half by the *Oriental Commercial Bank*.

The *Oriental Commercial Bank* afterwards paid the *European Bank* 13*s.* in the pound on the sum of £1467 6*s.* 11*d.*, and 2*s.* in the pound on the whole amount of the bills; so that they altogether paid 15*s.* in the pound on the whole amount of the bills, which was the amount of dividend paid to their other creditors.

The liquidators of the *European Bank* afterwards sought to be admitted creditors against

the estate of the *Oriental Commercial Bank* for the sum of £4402 0*s.* 9*d.*, which they had been compelled to pay through the breach of the undertaking to provide them with funds to meet the bills at maturity. The Vice-Chancellor

*(1871) L.R. 7 Ch.App. 99 Page 101*

admitted the proof; and the liquidators of the *Oriental Commercial Bank* appealed from this decision.

Mr. *De Gex, Q.C.*, Mr. *Kay, Q.C.*, and Mr. *Jackson*, for the Appellants:-

The effect of the Vice-Chancellor's decision is to fix the *Oriental Commercial Bank* with a double liability, and to make them pay dividends twice over on the same debt. If the *European Bank* had remained solvent, and had paid the bills at maturity in full, they could then have proved against the *Oriental Commercial*, and would have received the same dividend as the other creditors, and the *Oriental Commercial Bank* would have been subject to no claim from the holders of the bills. This claim is contrary to the settled rule in bankruptcy. In the ordinary case of an accommodation bill, where the drawer and acceptor are both bankrupt, the holder of the bill can prove against both estates, but the acceptor cannot prove against the drawer on the implied contract that he would meet the bills at maturity, without giving credit for what the estate of the drawer has paid to the bill holder; and to this extent we have not disputed their right, and have paid them so much as, with the amount which we paid to the *Agra*, makes up the same dividend (15*s.* in the pound) which we have paid to our other creditors: *Byles* on Bills (1); *Ex parte Biddulph* (2); *Ex parte Carne* (3). It can make no difference that the *Oriental Commercial Bank* were not the drawers, but had entered into an express contract with the acceptors, instead of an implied one. The same rule is applied in bankruptcy in the case of the joint and separate estates of partners. It is a reasonable rule, and is applicable to the administration of estates in the winding up of companies, as well as in bankruptcy: *Rigby v. Macnamara* (4); *Companies Act*, 1862, ss. 133, 158.

Mr. *Eddis, Q.C.*, and Mr. *Graham Hastings*, for the European Bank:-

This is different from the ordinary case of an accommodation

(1)    10th Ed. p. 450.

(2)    3 De G. & Sm. 587; 6 D. M. & G. 795.


(3)    Law Rep. 3 Ch. 463.


(4)    2 Cox. 415.


*(1871) L.R. 7 Ch.App. 99 Page  102*

bill, in which the implied contract is, that the acceptor shall be borne harmless: *Reynolds v. Doyle* (1). Here the bills were accepted upon the undertaking that before they arrived at maturity a sum sufficient to meet them should be lodged with the acceptors. The holders could not have proved at all against the *Oriental Commercial Bank* unless they had indorsed the bills. The case, therefore, turns upon this special contract, not upon the ordinary relationship of debtor and creditor: *Prehn v. Royal Bank of Liverpool* (2); *Yates v. Hoppe* (3). The essence of the rule against double proof is the identity of the debt; but here the debts are totally distinct. The contract was, in fact, broken before the bills came to maturity, and we are entitled to prove for the damage sustained by the breach of that contract.


**SIR G. MELLISH L.J. , after shortly stating the facts of the case, continued:-**


It is quite obvious that if this proof is allowed the *Oriental Commercial Bank* will pay a double dividend on the same debt. It appears to me clearly that it is substantially the same debt; because if all parties had been solvent, whatever sums the *Oriental Commercial Bank* might have paid to the *Agra Bank*, although they would have paid it, no doubt, for the purpose of performing the contract they had entered into by their indorsement, yet, substantially, whatever sums they might have paid to the *Agra Bank* would have gone in reduction of the sum which the *Oriental Commercial Bank* had promised to pay to the European Bank. In that case the *Oriental Commercial Bank* could never have been called upon to pay these bills twice over. It would have made no difference that they had entered into two contracts with two separate parties that they would pay the bills - namely, with the *European Bank* as acceptors, and with the *Agra Bank* as holders. It is clear that they would have performed both contracts by paying the bills once, because they had guaranteed the acceptors; and, in fact, the acceptance having been an acceptance for their use, their payment to the *Agra Bank* would, in substance and in point of law, have been a payment by the acceptors.

(1)   2 Scott, N. R. 45.

(2)   Law Rep. 5 Ex. 92.

(3)   9 C. B. 541.

*(1871) L.R. 7 Ch.App. 99 Page  103*

Then the question is, whether, the parties being insolvent, the *Oriental Commercial Bank* can be liable to pay two dividends on the same debt? It has been the law for a great number of years with reference to proofs in bankruptcy, that if an acceptor accepts bills for the accommodation of the drawer, and the drawer enters into a contract, either express or implied (and I do not think there is any difference between the two), that he will provide for the bills when they become due, and then the drawer becomes bankrupt, there cannot be a double proof against his estate, namely, one proof by the holder of the bill, and the other proof by the acceptor of the bill on the contract of indemnity. Then the real question before us is this: Does it make any distinction that the *Oriental Commercial Bank* were not drawers, but entered into the contract with the acceptors, and afterwards became liable for the bills as indorsers? It appears to me that that ought not to make any distinction, although I do not find any precise decision upon the point. The case of *Rigby v. Macnamara* (1) tends to shew that this rule against double proof applies in the Court of Chancery as well as in the Court of Bankruptcy, and therefore would apply equally where companies are being wound up. It seems to me that the principle is a perfectly sound one. Authorities have been cited to shew that there cannot be double proof against joint and separate estates. That is really carrying the same principle still further, for in that case the proof is not twice against the same estate, but against different estates though belonging to the same person. As to that application of the principle, some Judges have said that it should not be carried any further. But the principle itself - that an insolvent estate, whether wound up in Chancery or in Bankruptcy, ought not to pay two dividends in respect of the same debt - appears to me to be a perfectly sound principle. If it were not so, a creditor could always manage, by getting his debtor to enter into several distinct contracts with different people for the same debt, to obtain higher dividends than the other creditors, and perhaps get his debt paid in full. I apprehend that is what the law does not allow; the true principle is, that there is only to be one dividend in respect of what is in substance the same debt, although there

(1)    2 Cox, 415.

*(1871) L.R. 7 Ch.App. 99 Page  104*

may be two separate contracts. Therefore, upon the whole, with great respect to the Vice-Chancellor, I am of opinion that this proof should not be allowed.


**SIR W. M. JAMES, L.J. :-**


I entirely concur.

Solicitors for the *Oriental Commercial Bank*: Messrs. *Uptons, Johnson, & Co*.

Solicitors for the *European Bank*: Messrs. *Argles & Rawlins*.