# Index No. 5

Judgment.

MACLENNAN, J.A.

county or union of counties for municipal purposes, plus a town separated from a county or union of counties for municipal purposes. The word is used in the Act in a special sense. The Temperance Act was brought into force in the united counties of Leeds and Grenville, and the effect of using the words in the sense of the Act of Parliament was that the municipal territory of Leeds and Grenville, plus the town of Brockville, was a "county" within its meaning.

In that state of things the order-in-council of the 29th of September was passed, and it orders that the penalties received or enforced under the Canada Temperance Act within any city or county which has adopted the said Act which would otherwise belong to the Crown be paid to the treasurer of the city or county as the case may be for the purposes of the Act.

I think it is plain that the Governor-in-Council has used the words "city or county" in the same sense as the Act of Parliament, which was there before him, and that the words "*county which has adopted the said Act*" describes accurately the counties of Leeds and Grenville and the town of Brockville taken together.

Then is there any difficulty with the other words "be paid to the treasurer of the city or county?" In my humble judgment there is none. There were really two treasurers in the county in the present case, the county's treasurer and the town treasurer, each of them being an officer of a "local authority which wholly or in part" was bearing within the county the expenses of administering the Temperance law. The sole defect in the order-in-council as applied to a case like the present is in not determining the proportions in which the penalties are to be divided. I do not see why that difficulty should be serious in any case, but I understand it is agreed in the present case that if the defendants are entitled at all, the sum which they claim is their just proportion.

---

XVIII.]   MARTIN V. M'MULLEN.   559

Judgment.
BURTON, J.A.

The appellants subsequently moved for judgment, showing that the Crown declined to interfere, and BURTON, J.A., then joined in allowing the appeal.

*Appeal allowed with costs,* MACLENNAN, J. A., *dissenting.*

---

MARTIN v. McMULLEN ET AL.

*Principal and surety—Guarantee—Floating balance—Ultimate balance—Bankruptcy and insolvency—Dividends.*

The plaintiff's testator gave a guarantee in the following form: "In consideration of the goods sold by you on credit to M., and of any further goods which you may sell to M. upon credit during the next twelve months from date, I hereby undertake to guarantee you against all loss in respect of such goods so sold or to be sold; provided I shall not be called on in any event to pay a greater amount than $2,500."
M. made an assignment for the benefit of his creditors, being then indebted to the guaranteed creditors in the sum of $5,556.23. They filed their claim therefor with the assignee and afterwards received from the plaintiff the full amount covered by the testator's guarantee.
The plaintiff contended that he was entitled to rank upon the estate for so much of the debt as had been thus paid by him.
*Held,* [OSLER, J. A., dissenting] that the guarantee was one of the whole debt incurred, or to be incurred, with a limitation of the liability to $2,500, and, therefore, that the plaintiff was not subrogated to the rights of the secured creditors or entitled to receive the dividends in respect of that part of their debt which he had paid under the guarantee.
*Per* OSLER, J. A., the guarantee was a continuing guarantee, limited in amount, to secure a floating balance, and so a guarantee of part of the debt only, the dividends on which, the surety having paid it, he was entitled to receive. *Ellis v. Emmanuel,* 1 Ex. D. 157, considered.
Judgment of the Queen's Bench Division, 20 O. R. 257 reversed, and that of STREET, J., at the trial, 19 O. R. 230, restored.

Statement.

THIS was an appeal by the defendants from the judgment of the Queen's Bench Division, reported 20 O. R. 257.

The plaintiff was the executor of one Jonathan Martin and the defendant McMullen was the assignee for the benefit of creditors of the firm of McGachie Bros. This firm were customers of the defendants Ogilvy, Alexander & Anderson, and on the 8th of March, 1888, Martin gave to Ogilvy, Alexander & Anderson, the following guarantee:

Statement.

[VOL. XVIII.]    MARTIN V. M'MULLEN.

"Dear Sirs:—In consideration of the goods sold by you on credit to McGachie Bros., of Woodstock, and of any further goods which you may sell to McGachie Bros. upon credit during the next twelve months from date, I hereby undertake to guarantee you against all loss in respect of such goods so sold or to be sold, provided I shall not be called on in any event to pay a greater amount than twenty-five hundred dollars. You shall have the right to accept and release collateral securities, to release securities, to extend the time for payment, to take notes or bills in settlement for goods sold or to be sold, and renew same, compromise or compound the said indebtedness or any part thereof, either during the said period or afterwards without notice to me."

At the time of McGachie Bros.' assignment, they owed $5,556.23 to Ogilvy, Alexander & Anderson, who duly filed their claim for that amount. Ogilvie & Co. also called upon the plaintiff to make payment under the guarantee, and received from him $2,500. The plaintiff then filed a claim against the estate for the $2,500, paid by him; but this claim was disputed and this action was thereupon brought to establish the right to rank.

The action was tried before STREET, J., at Woodstock, on the 14th of March, 1890, who subsequently dismissed it with costs, holding that the guarantee was one to secure an ultimate balance. This judgment was reversed by the majority of the Queen's Bench Divisional Court, and this appeal by the defendants from the judgment of the Divisional Court, came on to be heard before this Court [HAGARTY, C. J. O., BURTON, OSLER, and MACLENNAN, JJ.A.] on the 3rd of June, 1891.

*Geo. C. Gibbons*, Q. C., for the appellants.
*W. Nesbitt*, and *A. W. Aytoun-Finlay*, for the respondent.

---

561

Judgment.
HAGARTY, C.J.O.

September 15th, 1891, HAGARTY, C. J. O.:—

The case rests upon the law as laid down by Lord Hatherley in *Hobson v. Bass*, L. R. 6 Ch. 792, and by Lord Blackburn, delivering the judgment of himself, Lord Cairns and the present Master of the Rolls, in *Ellis v. Emmanuel*, 1 Ex. D. 157.

The distinction is pointed out between the two classes of guarantees, one where the contract is to be construed as a security for a part only of the debt, and the other where it is to be construed as a security for the whole amount due or to become due with a provision limiting the surety's liability to pay any amount beyond a named sum.

I am compelled on the authorities to hold that the guaranty before us belongs to the latter class. The distinction between the two classes is admitted to be both artificial and technical, but as we are bound to hold that it is distinctly recognized as existing and to govern, we cannot refuse to act upon it. The words used seem to me to clearly shew a suretyship for the whole debt due or to become due of the principal debtors, and an indemnity against loss thereon, limiting the ultimate liability of the guarantor to the named sum.

I regret having to arrive at this conclusion, as I cannot believe that two ordinary contracting parties could possibly have contracted with the knowledge of this artificial distinction. The common understanding would naturally have been that, in the event of the debtor's insolvency, the guarantor would have the right to rank on his estate for the amount he would have to pay, and the creditor for the uncovered portion of his claim.

Of course, the Ogilvy firm had a clear right to prove for their whole claim, nothing having then been paid on the guaranty, and to receive dividends thereon.

BURTON, J. A.:—

The whole question in this case turns upon the construction to be given to the guarantee, and upon the state of things existing at the time it was given.

562    ONTARIO APPEAL REPORTS.    [VOL.

Judgment.
Burton,
J.A.

MARTIN v. M'MULLEN.

If this guarantee was a guarantee of the whole debt incurred, or to be incurred, with a limitation of the liability to $2,500, the judgment of my brother Street was correct, and should be restored. If on the contrary, the true construction is, "I will be liable to that extent only upon the goods you may supply," it is a guarantee of that part only, and upon payment the surety would be subrogated to the rights of the principal as to that part.

I am hardly disposed to agree with my brother Street that the distinction is a narrow one, and entirely of form and not of substance; on the contrary, I incline to regard it as a most substantial distinction.

Whilst I quite agree that where the surety has given a continuing guarantee, limited in amount to secure a floating balance which may from time to time be due and *nothing more*, the *primâ facie* construction is, that it is intended to be security for a part of the debt only, coextensive with the amount of the guarantee, here, however, there is a good deal more. There is a reference to goods already sold, which it was contended on the part of the respondents, was ambiguous and might mean goods then being sold, and not a past sale, which might be of importance if that particular lot of goods formed the consideration for the guarantee.

It formed in fact no part of the consideration, and might be read thus: "I hear that you have sold goods to McGachie Bros. of Woodstock, and in consideration of your continuing to supply them, etc., I hereby undertake to guarantee you against all loss in respect of such goods so sold, or to be sold, provided I shall not be called on in any event to pay a greater amount than $2,500."

There was no necessity for extrinsic evidence for the purpose of deciding whether it was or was not a valid guarantee, but in order now to ascertain whether the guarantee was for the whole debt with a limitation as to the amount, or for a part only of the debt, it becomes necessary to ascertain what the fact was at the time the guarantee was entered into. It was stated before us, and

XVIII.]    MARTIN v. M'MULLEN.    563

Judgment.
Burton,
J.A.

not disputed, that there was at that time an indebtedness exceeding the amount of the guarantee; but if there had been an omission to give evidence of that fact, there could be no difficulty in supplying that omission at any time.

It being then established that the debt then existing exceeded the guarantee, how can it be contended with any hope of success that the guarantee was for a specific part of that indebtedness? It comes within the very words of Lord Blackburn, in *Ellis* v. *Emmanuel*, 1 Ex. D. 157, 168, where he says: "There is no case that I am aware of which lays down that where the suretyship limited in amount is for a debt already ascertained which exceeds that limit, it is *primâ facie* to be construed as a security for part of the debt only. And I have failed to see any principle on which such a *primâ facie* construction ought to be adopted", and I do not see how that is at all weakened by the fact that the guarantee applied also to debts to be afterwards incurred.

I think, with great respect, that Mr. Justice Street's judgment was correct and should be restored.

MACLENNAN, J.A.:—

I am with great respect of opinion that this appeal should be allowed.

The guarantee was on the 8th of March, 1888, and it was against all loss in respect of goods sold, and of goods to be sold during the following twelve months, the surety however not to be called upon in any event to pay a greater amount than $2,500.

The debtor made an assignment for the benefit of creditors under the Ontario Act on the 27th of May, 1889. The creditor proved his claim on the 7th of June following, and it has never been contested. On the 13th of July, 1889, the creditor called on the surety for payment, and on the 3rd of October he paid the $2,500. Having done that, he sought to prove a claim upon the estate for that sum, and the question is whether he can do so. In strictness the

72—VOL. XVIII. A.R.

plaintiff has an undoubted right to prove, for if the estate is sufficient to pay everybody, the plaintiff must be paid as well as others. The real question is how the plaintiff is to rank in respect of dividend, whether he is to take the place of the creditor, and to stand in his shoes in respect of the dividend on $2,500, parcel of the debt, or whether he is excluded altogether from dividend until the creditor has been paid the balance due to him, allowing for what he has received from the surety.

If the plaintiff had paid the $2,500 before the creditors had proved their claims, it must be conceded that the plaintiff could have proved for the $2,500, and Ogilvy & Co. could only have proved for the balance, for to the extent of that sum the latter would have ceased to be creditors, and the plaintiff would have become a creditor in their place.

The matter is entirely different however after Ogilvy & Co. had proved. The moment they had done so they obtained a vested right to a rateable proportion of the trust estate, in proportion to their whole debt, to be applied in satisfaction of it, and that right could not be qualified or impaired by subsequent payment of part by the plaintiff. It is true that the plaintiff upon payment of the amount of his guarantee became a creditor of the principal debtor, and could sue him at once for it, but it does not follow that he could claim a share of the trust estate otherwise than *sub modo* as above indicated, and so as not to interfere with the rights of other creditors, or with those which Ogilvy & Co. acquired by their proof. It would be a violation of the terms of the trust that dividends should be paid to two persons in respect of the same debt or the same part of a debt.

The question we have to determine is this: the creditor having before any payment by the surety obtained security for his debt, or part of it, in the form of a proportionate share of the debtor's estate, whether the surety can, upon afterwards paying the amount of his liability, claim to participate in that security before the creditor has been paid in full.

---

The cases which have been cited are cases in which the creditor had proved or had obtained dividends on the bankruptcy of the debtor, but the principle involved seems to be a general principle of equity, applicable to all cases of suretyship.

In *Thornton* v. *M'Kewan*, 1 H. & M. 525, before Lord Hatherley, a case of administration of the estate of a deceased debtor, and not one of bankruptcy, the principle is thus expressed in the head note: "Where a limited guarantee has been given, and the limit has been exceeded by the guarantee, who afterwards receives from the estate of the principal debtor a dividend, the guarantor is entitled to the benefit of a proportional part of that dividend on the amount guaranteed, notwithstanding that the unpaid debt greatly exceed the amount of such guarantee."

This statement of the law is approved by Jessel, M. R., in *Goodwin* v. *Gray*, 22 W. R. 312, and it is stated in similar terms in Coote's Law of Mortgages, 5th ed., p. 1227, and De Colyar on Guarantees, 2nd ed., p. 299.

The sole question here, therefore, is whether this is a guarantee of a limited part of the debt, or a guarantee of the whole debt with a liability limited to $2,500. See the language of Lord Blackburn, *Ellis v. Emmanuel*, 1 Ex. D. at pp. 163-4.

After the most careful consideration of the language of this instrument as applied to the state of matters at the time it was given, I have come to the conclusion that it is a guarantee of the whole debt with a limited liability. It is against all loss in respect of goods sold, or goods to be sold within twelve months from date. I think the instrument is in terms made applicable to the state of the account between the parties at its date, whatever that was. If the surety did not know how the account stood when he signed the guarantee, he took the risk of it whatever it was, and I think we are bound to construe it with reference to the actual state of affairs. Then there is a date named beyond which there is to be no further liability. But as regards goods supplied before the making

Judgment.
MACLENNAN, J.A.

of the instrument, and others supplied during the following twelve months, the surety guarantees the creditor against all loss. I do not know how the parties could have employed stronger language to indicate that the whole of the debt to the end of the twelve months, including the old account, was intended to be secured. Then came the limiting words. It is not that he is only to pay a part of the debt or of the loss, but no greater amount than $2,500. I think the words "against all loss," are entitled to great weight as indicating that it was not merely part of the debt which was to be secured.

Agreeing as I do with the very able judgment of my learned brother Street, it is not necessary for me to repeat what he has said. I think that the appeal should be allowed, but that the original judgment should be varied by allowing the proof of the plaintiff qualified as above indicated.

OSLER, J.A.:—

We have the authority of Lord Cairns, Lord Blackburn and the present Master of the Rolls, in *Ellis v. Emmanuel*, 1 Ex. D. 157, for saying that when there is a limited suretyship to secure a floating balance, the suretyship is *primâ facie* at least to be construed as a security for part of the debt co-extensive with the amount of the guarantee; and that in such a case the ordinary rule applies (which is fully and clearly stated in Burge on Suretyship, p. 326) that when a surety is only surety for part of the debt, and has paid that part, he is entitled to receive the dividend which the principal debtor pays in respect of that sum which the surety has discharged. It is said also that "if a creditor taking a limited security for a floating balance, means it to be a security for the whole of the debt, and not merely for a part, he should take care that this is clearly expressed, for the *primâ facie* construction is the other way." Lord Hatherley's observations in *Hobson v. Bass*, L. R. 6 Ch. 792, are approved of, where he says: "If

Judgment.
OSLER, J.A.

a person guarantees a limited portion of a debt, all the authorities shew that if he pays that portion, he has in respect of it all the rights of a creditor. The question is, whether the guarantee means 'I will be liable for £250 of the amount which A. B. shall owe you,' or 'I will be liable for the amount which A. B. shall owe you, subject to this limitation, that I shall not be called upon to pay more than £250.'"

Where, however, the suretyship, limited in amount, is for a debt already ascertained which exceeds that limit, the *primâ facie* construction referred to, does not prevail. "In such a case," says Lord Blackburn, "it is a question of construction on which the Court is to say whether the intention was to guarantee the whole debt, with a limitation on the liability of the surety, or to guarantee a part of the debt only."

Taking this instrument simply as it is expressed, it appears to be a limited security for a floating balance in respect of goods already sold, or to be sold during the next succeeding twelve months. Certainly it is not *expressed* in the terms of Lord Hatherley's second example: "I will be liable for the amount which M. shall owe you, subject to this limitation, etc." Is that its meaning? Does its language necessarily require that construction to be placed upon it? With all respect, I think that to give it that construction or meaning is to convert the loose and common terms of a business document into a formal technical expression of liability, involving consequences which neither party ever dreamt of. We are not justified in paraphrasing the simple expression "guarantee you against all loss in respect of such debt," into a formal contract to be liable for the whole debt. The instrument is to be looked at as a whole in order to ascertain whether that was the guarantor's meaning—his clearly expressed intention—and, if there is nothing more than that expression combined with a limitation, however worded, of the guarantor's liability, the general rule, founded on the principle so fully explained (though not applied) in *Ellis v. Emmanuel*,

Judgment.
OSLER, J.A.

1 Ex. D. 157, and other authorities there cited, for the construction of the instrument is that it must be taken to be a guarantee of part of the debt only. We are not to make nice verbal distinctions on the words used, and the ordinary rule—the *primâ facie* construction—must apply, unless the surety has clearly contracted himself out of what would otherwise be his right—unless, in adopting the language of Mellish, L. J., in *Gray* v. *Seckham*, L. R. 7 Ch. 680, we can infer from the form of the contract or the circumstances of the case, that he has agreed that any dividend which he might otherwise be entitled to in the event of the debtor's making an assignment, should go to the secured creditor until he had received one hundred cents in the dollar.

It is certainly remarkable that the distinction referred to has not been held to exist as against the surety in any of the reported cases from *Ex parte Rushforth*, 10 Ves. 409 (1806), down to *Ellis* v. *Emmanuel*, 1 Ex. D. 157, (1876), a strong indication to my mind that, in construing informal instruments of guaranty, such as we are here concerned with, containing no express stipulation in favour of the creditor, the substance of the transaction has always been regarded and the general rule applied and acted on. Mellish, L. J., in the case of *Gray* v. *Seckham*, L. R. 7 Ch. 680, points out that, while it is now not unusual for contracts of guaranty to be expressly worded so as to shew that it is intended that dividends may be retained by the creditor, yet that the introduction of such provisions is a modern invention.

I think we cannot infer that in this guaranty the surety meant to become technically liable for the whole debt and thus to abandon his rights—to contract himself out of his equity as it has been said—merely because it is expressed as being a guaranty "against all loss" in respect of the goods sold or to be sold, or because the limitation comes in as a proviso following the obligatory part of the instrument—the whole being informally and loosely expressed. Apart from its being a guaranty in respect of goods

Judgment.
OSLER, J.A.

already sold, it is not fairly distinguishable from the guaranty in *Thornton* v. *McKewan*, 1 H. & M. 525, the words of which were: "In consideration of your advancing to S. the sum of £5,000 from time to time as he may require, I hereby guarantee and hold you harmless *against any loss* that may arise to you in consequence of such advances, and this obligation shall be a continuing guaranty to the extent of £300." Page-Wood, V. C., held that there was nothing sufficiently special in the guaranty to take it out of the general rule. No effect was given to the words "guarantee you against any loss in consequence of such advances" as extending the surety's liability or restricting his rights. They are strictly the equivalent of the expression "guarantee you against all loss in respect of such goods," which seems to be alone relied upon in the able judgment of Street, J., as shewing an intention to guarantee the whole debt. The application of the guaranty to past advances or to goods already sold does not necessarily make a difference in its construction as is shewn by such cases as *Ex parte Rushworth*, 10 Ves. 409; *Paley* v. *Field*, 12 Ves. 435; *Raikes* v. *Todd*, 8 A. & E. 846, and many others which might be referred to.

In what I have said I have dealt, as I understand my learned brother Street to have done, simply with the terms of the guaranty. I hold it to be a continuing guaranty limited in amount to secure the floating balance which may be due to the creditor on the dealings guaranteed, and I find no words in it which take it out of the general rule—the *primâ facie* construction—to be applied to such an instrument in reference to the question which is raised in this action. I refer to *Ex parte Miles*, 1 DeG. 623; *Ex parte Hope*, 3 M. D. & D. 720; *Midland Banking Co.* v. *Chambers*, L. R. 4 Ch. 398, and *Ex parte National Provincial Bank*, 17 Ch. D. 98.

With regard to the state of the principal debtor's account as bearing upon the construction or meaning of the guaranty, my learned brother Street does not refer to it, and the learned Chief Justice says: "No evidence was given at the

Judgment.
Osler, J.A.

trial of the circumstances under which this guaranty was given, nor of the state of accounts at that time existing between Ogilvy & Co. and McGachie Bros., nor whether the guarantor had any knowledge of the state of such accounts." He, therefore, held that the guaranty was to be construed without any extrinsic aid. In this I entirely agree. No such evidence was given at the trial, though the plaintiff's counsel very earnestly pressed upon our attention an exhibit, which is said to have been filed in the Divisional Court, though no member of the Court alludes to it in his judgment. But it carries the case no further. It is not explained or vouched in any way, nor is it self-explanatory. Moreover, even if it could be said (which it cannot) that it shews a debt at the date of the guaranty already ascertained, which exceeded the limit—and it is used for that purpose so as to bring the case within the principle of *Ellis v. Emmanuel*, 1 Ex. D. 157, yet there is no evidence that the surety knew what was the state of the account or what was then due for goods already sold. In the absence of such evidence, no inference unfavourable to the surety can be drawn. Unless he meant formally to guarantee the whole debt restricting his liability, it was of no consequence that he should know the amount of that already incurred, as he would naturally deem himself sufficiently protected by the express limitation, and unless he did know it, there is nothing extrinsic to the guarantee to shew an intention on his part to waive or abandon what, upon its face, I must hold to be his ordinary right. But whether there was a debt exceeding the limitation due at the date of the guarantee or not, the case differs from *Ellis v. Emmanuel*, 1 Ex. D. 157, in this, that the guaranty is nevertheless for the floating balance on that debt and the subsequent dealing between the parties. In *Ellis v. Emmanuel*, 1 Ex. D. 157, the security was given for the whole of an ascertained debt expressed in the instrument, and the Court arrived at the conclusion from the express and special terms used, that the intention of the several sureties was to guarantee the whole with a limitation upon

the liability of each. As regards the power to compromise the debt without affecting the surety's liability, I agree with the learned Chief Justice of the Queen's Bench that it does not control or extend the meaning of the guaranty. It amounts to no more than a permission to the creditors to do what in the absence of such power would have discharged the surety, and merely shews that in the case of a compromise between debtor and creditor, the surety still holds himself liable for the balance of the debt to the extent of $2,500. On the whole, it appears to me that the judgment is right, and that we should dismiss the appeal.

*Appeal allowed with costs*, OSLER, J. A., *dissenting*.

Judgment.
Osler, J.A.