# Index No. 6

Page 1

1943 CarswellAlta 63, [1943] 3 W.W.R. 297

1943 CarswellAlta 63, [1943] 3 W.W.R. 297

I.O.F. v. Lethbridge Northern Irrigation District

Independent Order of Foresters v. Board of Trustees of Lethbridge Northern Irrigation District and Provincial Treasurer for Alberta

Alberta Supreme Court

O'Connor, J.

Judgment: July 10, 1943

© Thomson Reuters Canada Limited or its Licensors (excluding individual court documents). All rights reserved.

Counsel: *G. H. Steer, K.C.*, for plaintiff.

*W. S. Gray, K.C.*, for defendant, board of trustees.

*H. J. Wilson, K.C.*, for defendant, provincial treasurer.

Subject: Corporate and Commercial

Execution --- Priorities among execution creditors — Creditors' Relief Act — In garnishment proceedings.

Power of Court to Deal With Situation According to Equity.

Sec. 6 (*d*) of *The Execution Creditors Act*, 1934, ch. 8 (now R.S.A., 1942, ch. 122) which provides that money paid into Court under garnishee proceedings shall be available for distribution among the execution creditors of the debtor whose debt is garnished, except "(*d*) when it is otherwise ordered by a court or judge," and sec. 12, which provides the order of priority for payment out of moneys received by the sheriff in respect of an execution where they are not sufficient to pay the claims of creditors and the executions with costs in full, are intended to permit the Court to do justice between the parties according to settled principles of law and equity.

The province of Alberta guaranteed payment of the principal and interest of the bonds in question herein. It defaulted

© 2013 Thomson Reuters. No Claim to Orig. Govt. Works

1943 CarswellAlta 63, [1943] 3 W.W.R. 297

on that guarantee. The plaintiff was an execution creditor of the principal debtor, an irrigation district. Its execution was issued on a judgment for interest accrued on the bonds. Under its execution it seized other bonds owned by the district; and by garnishee summons it attached moneys in a bank to the credit of the district. The provincial treasurer was also an execution creditor of the district under a judgment for interest, etc., paid by the province under said guarantee.

*Held* that the provincial treasurer was not entitled by virtue of his judgment and execution to any right under said Act to share with the plaintiff in moneys attached or which may be attached by garnishee summons or realized or which may be realized under executions against the district. *Ex parte Corry; In re Fothergill* (1876) 3 Ch. D. 445, 45 L.J. Bk. 153, and other cases, applied.

**O'Connor J.** :

1    This is a special case to determine questions of law.

2    The plaintiff and the defendant treasurer are both execution creditors of the defendant irrigation district. The plaintiff disputes the right of the treasurer to share with the plaintiff in moneys (*a* ) attached by the plaintiff under a garnishee summons or (*b* ) which may be realized under the plaintiff's execution against the district.

3    The plaintiff contends that as the province of Alberta has guaranteed payment of the irrigation district's debentures held by the plaintiff and as these debentures are a charge on the assets of the defendant district, including the moneys and bonds in question, it is inequitable to permit the defendant treasurer to share in moneys realized under the plaintiff's garnishee and execution. The plaintiff says that the province, having defaulted under the guarantee, should not prevent the plaintiff from realizing on the irrigation district's assets. Counsel for the plaintiff points out that this may result in a multiplicity of actions since if the defendant treasurer takes part of the moneys realized under the plaintiff's garnishee the plaintiff must then realize this sum from the province of Alberta.

4    The plaintiff's execution for $7,181.81 was issued on judgments for interest accrued due on debentures of the irrigation district. The province of Alberta guaranteed payment of principal and interest of the whole debenture issue of $5,400,000. The treasurer's execution for $3,657,920.52 was issued under a judgment for interest paid by the province under this guarantee and for moneys paid into the sinking fund to retire the principal of the debenture issue.

5    The plaintiff's garnishee summons attached moneys held by the Canadian Bank of Commerce at the credit of the defendant irrigation district and the sheriff seized under the plaintiff's execution certain bonds issued by the province of Saskatchewan and held in a safety deposit box in the Canadian Bank of Commerce rented by the defendant irrigation district.

6    (1) The plaintiff claims that as it has a charge on the moneys attached and the bonds seized it is inequitable to permit the defendant treasurer to share in the proceeds thereof. Sec. 37 of *The Irrigation Districts Act* , 1920, ch. 14 (Alta.) is as follows, viz.:

© 2013 Thomson Reuters. No Claim to Orig. Govt. Works

1943 CarswellAlta 63, [1943] 3 W.W.R. 297

> The debentures shall be sufficient when signed by two of the trustees of the district to bind the board and in the hands of any *bona fide* holder thereof shall be a charge or lien upon all the land (including the buildings and improvements thereon) appearing upon the assessment roll, other than land exempt from taxation by the province, and upon all the property of the board and all rates levied under the provisions of this Act in the district; but shall not have any priority over any charges, liens, mortgages or encumbrances upon such land created or coming into existence prior to the issue of such debentures.

7      The province is subrogated to the position of the holders of the debentures it pays under the guarantee. Subsec. (2) of sec. 4 of *The Lethbridge Northern Irrigation District Act, 1921* , ch. 63 (Alta.) is as follows:

> Any payment by the province of principle or interest due under the said debentures, pursuant to the guarantee thereof, shall not in any event be taken to effect the liability of the said district therefor under the said debentures, but such liability shall remain unimpaired and enforceable by the province against the said district. The province shall be subrogated as against the said district to all rights, privileges and powers to which the holders of the debentures, in respect of which principal or interest or both has been so paid, were entitled by virtue of such debentures, prior to payment by the province under its guarantee, and shall with respect to the debentures in respect of which principal or interest or both has been so paid be in the same position as a holder of debentures upon which the district has made default.

8      This subrogation is effective against the district and as each debenture is paid in full the province stands in the place of the former debenture holder.

9      Counsel for the treasurer points out that the plaintiff holds only 3.35 per cent of the debenture issue and it would be inequitable to pay the money to the plaintiff.

10      (2) Counsel for the plaintiff contends that it is inequitable to pay the money to the treasurer since the province has guaranteed payment of the debentures.

11      A surety who compromised, at 4s. on the pound, his liability for his principal's debt, was held not to be entitled to share in a dividend of debentures which the creditor had obtained in the bankruptcy of the principal debtor: *Ex parte Corry; In re Fothergill* (1876) 3 Ch. D. 445 , 45 L.J. Bk. 153. James, L.J. said (p. 155):

> In this case, the surety has paid 4s. in the pound. What is his equity against the creditor? If the surety has paid 20s. in the pound, he may exercise whatever right the principal debtor had against the creditor. But the creditor may first require payment of 20s. in the pound, and all that the surety can say is 'You have got something very valuable under the arrangement. I am willing to discharge my obligation to you by paying 20s. in the pound and when I have done that you must hand me over the security.' That seems to me to be the sole equity.

12      In *In re Coughlin & Co.*, [1923] 3 W.W.R. 1179, 33 Man. R. 499, 4 C.B.R. 294 , Fullerton, J.A. said, p. 1179:

> In considering the right of a surety who has made payment to rank upon the estate the cases draw a distinction

© 2013 Thomson Reuters. No Claim to Orig. Govt. Works

1943 CarswellAlta 63, [1943] 3 W.W.R. 297

    between two classes of guarantees, one where the contract is to be construed as a security for a part only of the debt and the other where it is to be construed as a security for the whole amount due or to become due with a provision limiting the surety's liability to pay any amount beyond a named sum. ... In a case of a guarantee of the latter class the creditor is entitled to rank for the whole amount as the surety cannot be permitted to compete with the creditor for dividends in respect of a debt which the surety himself has guaranteed.

13    Dennistoun, J.A., said p. 1182:

    It is to be noted that it is the 'debt' which is provable. There may be several claimants in respect to the 'debt,' but there is only one debt, and double proof in respect to it is not permitted.

14    The principle is not limited to bankruptcy.

15    In *In re Oriental Commercial Bank; Ex parte European Bank* (1872) L.R. 7 Ch. 99 , 41 L.J. Ch. 217, Mellish, L.J. said, p. 218:

    Upon the main question the case of *Rigby v. Macnamara* (1795) 2 Cox Eq. Cas. 415, tends to show that the rule in bankruptcy against double proof applies also in the Court of Chancery, and consequently applies in case of companies being wound up.

16    In *Martin v. McMullen* (1891) 18 O.A.R. 559 , Maclennan, J.A. said, p. 565:

    The cases which have been cited are cases in which the creditor had proved or had obtained dividends on the bankruptcy of the debtor, but the principle involved seems to be a general principle of equity, applicable to all cases of suretyship.

17    See also *In re Sass; Ex parte National Provincial Bank of England*, [1896] 2 Q.B. 12 , 65 L.J.Q.B. 481.

18    (3) Counsel for the plaintiff further contends that if the treasurer is excluded from participation in the moneys attached and the proceeds of the bonds seized, this will save multiplicity of actions, and cites clause (*g* ) of sec. 34 of *The Judicature Act* , R.S.A., 1942, ch. 129, in support of the Court's jurisdiction to do this. He cites sec. 3 of *The Execution Creditors Act* , 1934, ch. 8 [now R.S.A., 1942, ch. 122] and, as to the garnishee, sec. 6, and, as to the execution, sec. 12 of the said Act, which sections are as follows:

    3. Except only in the cases where it is otherwise specifically provided by this Act, all property seized or attached by virtue of any writ of execution, writ of attachment, garnishee proceedings or proceedings in the nature of equitable execution shall be deemed to have been attached on behalf of all creditors who are entitled by this Act to share in any money received by the sheriff by reason of such seizure or attachment; and all moneys realized thereby shall be dealt with and distributed by the sheriff of the district in which such seizure or attachment is made under the provisions of this Act.

© 2013 Thomson Reuters. No Claim to Orig. Govt. Works

1943 CarswellAlta 63, [1943] 3 W.W.R. 297

    6. Where any money is paid into court under any garnishee proceedings in the Supreme Court of Alberta or any District Court, the same shall be available for distribution by the sheriff amongst the execution creditors of the debtor whose debt is garnished except only in each of the following cases, namely:

    (*a* ) When the money paid into Court is not liable to attachment;

    (*b* ) When the amount paid into court does not exceed the sum of twenty-five dollars;

    (*c* ) When by virtue of any statute or Rule of Court the money is required to be paid to the debtor as being exempt from attachment; and

    (*d* ) When it is otherwise ordered by a court or judge.

    12. When the amount received by the sheriff in respect of an execution is not sufficient to pay the claims of creditors and the executions with costs in full, the sheriff shall firstly retain his fees, and secondly, in the event of any creditor being entitled under the provisions of this Act to priority for costs, the sheriff shall pay such costs to that creditor, and thirdly, shall pay the claim of any person who is entitled to be paid in preference to any other creditor, and fourthly, shall distribute the balance (if any) rateably amongst such execution creditors as are entitled to share therein under the provisions of this Act.

19    The cases of *Tobin v. Commercial Inv't Co.* (1916) 10 W.W.R. 123, 22 B.C.R. 481, 34 W.L.R. 23 ; *Knight v. Knight* (1734) 3 P. Wms. 334, 24 E.R. 1088 , and *McGowan v. Middleton* (1883) 11 Q.B.D. 464 , 52 L.J.Q.B. 355, show that the Court will adapt its procedure to prevent multiplicity of actions but the plaintiff's right to prevent the defendant from sharing in the moneys in the hands of the sheriff must depend on substantive law. It is not a question of procedure.

20    It is contended that sec. 6, clause (*d* ), permits the Court to do justice between the parties. Counsel for the defendant treasurer argues that clause (*d* ) is intended to permit the Court to order payment to a garnishee creditor in cases where it is obvious that the other execution creditors would not be entitled to the money under the Act; for example, where there were no subsisting writs of execution in the sheriff's hands, or where the garnishing creditor was a wage carner or was otherwise entitled to be paid the money in priority to other claims. He relies on *Bowerman v. Phillips* (1888) 15 O.A.R. 679 , in which it was held that the Ontario *Creditors Relief Act* did not permit one creditor to attack the judgment of another if the debt was *bona fide* .

21    I find the sections are intended to permit the Court to do justice between the parties, according to settled principles of law and equity.

22    Secs. 6 and 12 were intended to enable the Court to deal with such a case as this according to law.

23    I find the debenture holders of the irrigation district are exclusively entitled under their charge to the money and bonds of the irrigation district which are now or may hereafter come into the hands of the sheriff.

© 2013 Thomson Reuters. No Claim to Orig. Govt. Works

1943 CarswellAlta 63, [1943] 3 W.W.R. 297

24    I answer the question submitted as follows:

Has the Honourable the Provincial Treasurer by virtue of the said judgment in his favour and the execution issued thereunder a right under *The Execution Creditors Act* to share with the plaintiff in moneys

    (*a*) attached or which may be attached by garnishee summons, or

    (*b*) realized or which may be realized under Writs of Execution against the said Lethbridge Northern Irrigation District,

and if so with respect to what amount and to what extent?

A. (*a*) No. (*b*) No. The plaintiff is entitled to 3.35 per cent of each. The sheriff should hold the balance and pay it to the debenture holders as they establish their claims.

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. Govt. Works



1944 CarswellAlta 8, [1944] 1 W.W.R. 206

Independent Order of Foresters v. Lethbridge Northern Irrigation District

Independent Order of Foresters (Plaintiff) Appellant v. Board of Trustees of Lethbridge Northern Irrigation District and Provincial Treasurer for Alberta (Defendants) Respondents and Cross-Appellants

Alberta Supreme Court, Appellate Division

Harvey, C.J.A., Ford, Lunney, Ewing and Howson, JJ.A.

Judgment: January 21, 1944

© Thomson Reuters Canada Limited or its Licensors (excluding individual court documents). All rights reserved.

Counsel: *G. H. Steer, K.C.*, for plaintiff, appellant.

*W. S. Gray, K.C.*, for Board of Trustees of Lethbridge Northern Irrigation District, defendant, respondent.

*H. J. Wilson, K.C.*, Deputy Attorney-General, for the Provincial Treasurer, defendant, respondent.

Subject: Family

Family law.

Execution Creditors Act — Principal and Surety — Right of Defaulting Guarantor with Judgment to Share With Another Judgment Creditor in Moneys Attached and Seized by Execution — Defaulting Guarantor the Province of Alberta — Special Case Under R. 218 — Powers of Court — Duty of Crown to Obey Law.

Both the plaintiff and the defendant provincial treasurer were execution creditors of the defendant irrigation district. The plaintiff's execution was issued on a judgment for interest due on bonds issued by the district. The bonds had been guaranteed by the province as to both principal and interest, and the treasurer's judgment was for interest paid by the province under this guarantee and for moneys paid into the sinking fund to retire the principal. The province later defaulted under the guarantee. On a special case O'Connor, J. *held* ([1943] 3 W.W.R. 297) that the treasurer was not entitled by virtue of his judgment and execution to any right under *The Execution Creditors Act*, 1934; ch. 8 (now R.S.A., 1942, ch. 122) to share with the plaintiff in moneys it had attached or might attach by garnishee summons or which it might realize under its execution; but he declared, by what is referred to as a "rider," that the plaintiff was entitled to 3.35 per cent of the moneys attached, or which might be attached by garnishee summons, or realized, or which might be realized, under execution against the defendant, and that the balance of

such moneys should be held by the sheriff to be paid to other bondholders as they established their claims. The plaintiff appealed against the "rider," and the defendants, the district and the treasurer, cross-appealed from the whole judgment, but, alternatively, supported the "rider."

*Held* that the plaintiff's appeal should be allowed by varying the judgment with respect to the "rider," and the cross-appeal should be dismissed. The plaintiff was given the costs of both the appeal and cross-appeal to be taxed under double column 5.

When a surety is liable to the creditor for the whole amount of the debtor's liability the surety is not permitted to compete with the creditor in the realization of the assets of the principal debtor. While this principle finds its usual application in bankruptcy it is one of general application, applicable to all cases of suretyship. There is nothing in *The Execution Creditors Act, supra*, which prevents its application where, as here, the surety is attempting to compete with the creditor, whose debt has been guaranteed in full, by a judgment obtained in reliance upon sec. 4 (2) (quoted *infra*) of *The Lethbridge Northern Irrigation District Act*, 1921, ch. 63. The fact that the surety is the province is no obstacle to the application of the principle, and does not prevent the Court from doing justice as between the Crown and a subject.

The contention cannot be sustained that in order to make the declaration involved in a negative answer to the question submitted the Court must necessarily find that the Crown in the right of the province of Alberta owes money to the plaintiff under the guarantee, and that there has been no judicial finding to that effect and that such a finding cannot be made in this issue or otherwise than by petition of right, for which a fiat is required, and that, since no fiat has been obtained, the making of such a finding would be doing indirectly what it is impossible to do directly. It cannot be said that, while the Court might have the right to answer affirmatively, it cannot answer negatively the question which the Crown through its proper officer has joined in submitting for its opinion under Rule 218. Under that Rule the question of law could not have been stated without the concurrence of all parties to the issue. The present case is distinguishable from *Lovibond v. G.T.R. Co.*, [1936] 2 W.W.R. 298 (P.C.), 1936 Can. Abr. 173, 859; and *Royal Trust Co. v. Atty.-Gen. for Alta.*, [1936] 2 W.W.R. 337 (Alta.), 1936 Can. Abr. 861.

"The non-existence of any right to bring the Crown into Court, such as exists in England by petition of right, and in many of the colonies by the appointment of an officer to sue and be sued on behalf of the Crown, does not give the Crown immunity from all law, or authorize the interference by the Crown with private rights at its own mere will ... It is the duty of the Crown and of every branch of the Executive to abide by and obey the law. If there is any difficulty in ascertaining it the Courts are open to the Crown to sue, and it is the duty of the Executive in cases of doubt to ascertain the law, in order to obey it, not to disregard it:" *Eastern Trust Co. v. Mackenzie, Mann & Co.*, [1915] A.C. 750, 84 L.J.P.C. 152, 11 Can. Abr. 12.

To give effect, in the present proceeding, to the equities as between the province as surety and the plaintiff as the primary creditor, by answering the question submitted in consonance with the principle stated, does not amount to a setting aside, directly or indirectly, or the impeaching of the judgment obtained by the surety. The point involved in the question is not whether the judgment was properly obtained but whether the judgment creditor, a surety for the whole debt, is entitled, as against the plaintiff, to share in what is realized under the plaintiff's executions and garnishee summonses. Nor does the giving effect, in the present proceeding, to the equities as between the surety and the principal creditor, nullify, "virtually" or at all, the provisions of *The Execution Creditors Act, supra. Bowerman v. Phillips* (1888) 15 O.A.R. 679, 19 Can. Abr. 449, does not assist the defendants.

It was not open to the Judge to deal with the question of the right of the plaintiff to the proceeds to be realized from the property

seized. This question has not been asked and cannot be answered until the issue out of which the special case arose is determined. The question submitted relates solely to the legal rights of the defendant in the issue, the provincial treasurer. The relative rights of the plaintiff and other debenture holders is not involved in either an affirmative or negative answer. Such relative rights cannot be determined in proceedings to which the other debenture holders are not parties, and without there being before the Court sufficient material to determine them. The other debenture holders are not made parties, either by representation or otherwise, and there was no, or no sufficient, material before the Court to determine such relative rights. Furthermore, there is no machinery provided in *The Execution Creditors Act, supra*, for carrying out the direction to divide the proceeds of the property attached as directed by the learned trial Judge. There is no provision in the Act for the sheriff holding such proceeds for an indefinite time, to enable persons, who may or may never advance their claims, to establish them. True it is that the statute modifies the maxim *vigilantibus, non dormientibus, jura subveniunt*, but, subject to the provisions as to preferences, it is only those who establish their claims in accordance with the Act, and within the time fixed thereby, who have the right to share in the sheriff's distribution.

*Semble* said *Execution Creditors Act* makes no provision for one execution creditor contesting the claim of another execution creditor in a summary proceeding before a District Court Judge.

Appeal from part of the judgment of O'Connor, J. ([1943] 3 W.W.R. 297). Appeal allowed; cross-appeal dismissed; costs to the appellant of both the appeal and cross-appeal, to be taxed under double column 5.

**The judgment of the Court was delivered by *Ford, J.A.*:**

1      This is an appeal by the plaintiff and a cross-appeal by the defendants from the judgment of the Honourable Mr. Justice O'Connor: [1943] 3 W.W.R. 297.

2      This is another step in the series of attempts of the Independent Order of Foresters to secure payment of the interest agreed to be paid on bonds or debentures, held by it, issued in May, 1921, by the Lethbridge Northern Irrigation District and guaranteed by the province of Alberta. It is a sequence to the litigation commenced in January, 1937, the earlier history of which may be found in the report of the decision of the Judicial Committee of the Privy Council, in *I.O.F. v. Lethbridge, Nor. Irr. Dist.;* , [1940] 1 W.W.R. 502, [1940] A.C. 513, 109 L.J.P.C. 68 , which, affirming judgments in the Trial Division ([1937] 3 W.W.R. 424, and [1939] 1 W.W.R. 275) and of this Division ([1938] 2 W.W.R. 194, and [1939] 1 W.W.R. 700) held to be *ultra vires The Provincial Guaranteed securities Interest Act*, 1937, ch. 12, which purported to reduce by one-half the interest on securities guaranteed by the province of Alberta; *The Provincial Securities Interest Act, 1937*, ch. 13, which purported to reduce to, in general, half the agreed interest rates; and *The Provincially Guaranteed Securities Proceedings Act*, 1937, ch. 11, which purported to prohibit any proceedings in Alberta for the recovery of money due in respect of guaranteed securities without the consent of the Lieutenant-Governor in Council.

3      After the issuing of the executions and garnishee summonses of the Independent Order of Foresters and the seizures and attachments made thereunder, as well as the execution of His Majesty the King, represented by the Honourable the Provincial Treasurer of Alberta, as set out in the stated case, out of which this appeal arises, an order was made by Mr. Justice Macdonald in action No. 27728, therein referred to, directing an issue as to the effect in law of the judgment of the Independent Order of Foresters and to determine whether the property attached under the executions and garnishee summonses was legally attached. This order was made with the consent of the provincial treasurer.

4    In the issue the Independent Order of Foresters was to be plaintiff and the Board of Trustees of the Lethbridge Northern Irrigation District and the Honourable the Provincial Treasurer of the Province of Alberta were to be defendants.

5    The plaintiff delivered a statement of claim, and both defendants delivered statements of defence.

6    Before the determination of the issue it appeared to counsel for the parties that it might be advisable first to have determined the question as to whether the Crown in the right of the province was entitled to share, with the plaintiff in the issue, in moneys realized by garnishee or under writs of execution. For that purpose a special case was agreed upon and signed by solicitors for all three parties to the issue.

7    I quote the special case, omitting the documents attached thereto:

```
   In The Supreme Court of Alberta
    Judicial District of Edmonton
```

Between:

```
   Independent Order of Foresters,
                                   Plaintiff,

           --and--

   Board of Trustees of the Lethbridge
   Northern Irrigation District and the
   Honourable The Provincial Treasurer
   of The Province of Alberta,
                                   Defendants.
```

**The Special Case**

1. The parties to the above cause concur in stating certain questions of law arising therein in the form of a special case for the opinion of the Court.

2. The facts necessary to enable the Court to decide the questions raised are as follows:

   (*a*) The plaintiff is a body corporate incorporated in accordance with the provisions of *The Independent Order of Foresters Consolidated Act*, 3 and 4, George V (Canada), Chapter 113, being chapter 113 of the Statutes of Canada, 1913; has its head office in the City of Toronto, in the Province of Ontario, and is duly licensed to do business in the Province of Alberta pursuant to the provisions of *The Alberta Insurance Act, 1926*.

(*b*) The first named defendant is a body corporate incorporated pursuant to the provisions of *The Irrigation Districts Act, 1915*, being Chapter 13 of the Statutes of Alberta, 1915. By virtue of the provisions of *The Irrigation Districts Act, 1920*, being Chapter 14 of the Statutes of Alberta, 1920 (R.S.A., 1942, chapter 98), the said defendant was continued and it was provided that it should be subject to the provisions of the said Statute as if it had been formed thereunder.

(*c*) The first named defendant under and by virtue of *The Irrigation Districts Act, 1920*, being chapter 14 of the Statutes of Alberta, was empowered with the written assent of the Minister of Public Works for the Province of Alberta, to raise a loan upon the credit of the District and to issue debentures to secure the repayment thereof.

(*d*) In compliance with all the provisions of *The Irrigation Districts Act, 1920*, being chapter 14 of 1920, and with the written assent of the Minister of Public Works for the Province of Alberta, dated the 30th day of October, A.D. 1920, the first named defendant raised a loan upon the credit of the district and issued debentures to the aggregate principal amount of Five Million, Four Hundred Thousand ($5,400,000.00) Dollars, dated May 2nd, 1921, and thereby and therein promised to pay to the bearers or, if registered, to the registered owners thereof, on the first day of May, A.D. 1921, the principal amount of the said debentures in gold coin of or equivalent to the standard of weight and fineness fixed for gold coins at the date thereof by the laws of the United States of America, with interest thereon at the rate of six per cent (6%) per annum, payable half-yearly on the first day of May and the first day of November in each and every year during the currency thereof in like money according to the tenor of and upon presentation and surrender of the coupons thereto attached as the same severally become payable. It was further provided that payment of both principal and interest would be made at the holders' option at the principal office of the Imperial Bank of Canada in the cities of Toronto, Montreal or Edmonton, in the Dominion of Canada or at the offices of the Bank of Manhattan Company in the City of New York, U.S.A.

(*e*) The plaintiff, at its head office in the City of Toronto, in the province of Alberta, is the bearer, *bona fide* holder and owner of debentures so issued as aforesaid in the aggregate principal amount of One Hundred and eighty-one thousand ($181,000.00) Dollars, each of the said debentures being of the principal amount of One Thousand ($1,000.00) Dollars.

(*f*) Prior to the issue of the said debentures the first named defendant was legally formed and constituted and all the formalities in respect to such loan and the issue of debentures therefor had been fully complied with. All acts, conditions and things necessary to be done and to exist precedent to and in the issuance of the said debentures were properly fulfilled and performed and existed in regular and due form as required by the laws in the Province of Alberta and the Dominion of Canada and by the by-laws and regulations of the Lethbridge Northern Irrigation District and the said debentures are a good and indefeasible security in the hands of the plaintiff.

(*g*) The said debentures were guaranteed as to the payment of principal and interest by the Province of Alberta, by virtue of powers conferred by *The Lethbridge Northern Irrigation District Act, 1921*, being chapter 63 of the Statutes of Alberta, 1921, and constituted securities in which the plaintiff was by law entitled to invest.

(*h*) On or about February 22nd, 1937, the plaintiff in an action numbered in this Court 27728 between it, as plaintiff, and the Board of Trustees of the Lethbridge Northern Irrigation District and L. C. Charlesworth, Official Trustee

thereof, as defendants, recovered judgment against the defendant, The Lethbridge Northern Irrigation District in the sum of $5,430.00 on which said judgment there was due and unpaid as of June 29th, 1942, the sum of Three Thousand Three Hundred Dollars and twenty cents ($3,300.20) in respect of Interest coupons of the said debentures so guaranteed as aforesaid.

(*i*) On or about October 29th, 1937, in an action numbered in this Court 28079 between the plaintiff herein, as plaintiff, and the said Board of Trustees and the said L. C. Charlesworth, as defendants, the plaintiff herein recovered a judgment against the said Board of Trustees for the sum of Five Thousand Four Hundred and Thirty ($5,430.00) Dollars, upon which as of June 29th, 1942, there was due and unpaid the sum of Three thousand eight hundred and fifty-seven dollars and seven cents ($3,857.07) in respect of interest coupons of the said debentures so guaranteed as aforesaid.

(*j*) On or about June 29th, 1942, the plaintiff caused to be issued in the two said actions numbered respectively 27728 and 28079 Garnishee Summonses directed to the Canadian Bank of Commerce at Lethbridge in the Province of Alberta, and on or about July 10th, 1942, the said Garnishee filed replies in the two said actions to the said Garnishee Summonses, which Replies were in the following terms, namely:

At the time of the service of the Garnishee Summons herein upon the Canadian Bank of Commerce the Canadian Bank of Commerce held to the credit of the defendant the Board of Trustees of the Lethbridge Northern Irrigation District a sum sufficient to pay the plaintiff's judgment herein in the sum of $3,300.20 (in action No. 28079 $3,857.07) which said moneys, however, are claimed by the Province of Alberta as its property and which said sum of $3,300.20 (in action No. 28079 $3,857.07) therefore may or may not be attachable.

The sum of $10,000.00 is being held by the said garnishee by agreement of the parties hereto pending the outcome of these proceedings and is to be deemed for the purposes of this special case to be held by the sheriff as having been paid to him pursuant to Section 8, and as being distributed pursuant to Section 31 of *The Execution Creditors Act*. There are no garnishee summonses or Writs of Execution outstanding with respect to debts owing by the defendant Board of Trustees save as herein set out, except an execution for approximately Twenty-five ($25.00) Dollars based on a coupon for interest in respect of the bond issue hereinbefore referred to.

(*k*) On or about August 22nd, 1940, the plaintiff in this issue caused to be issued in the two said actions numbered respectively Nos. 27728 and 28079 Writs of Execution for the sum of Two thousand two hundred and Sixty-two dollars and fifty cents ($2,262.50) with interest and costs and the sum of Two Thousand eight hundred and seventy-seven dollars and forty-four cents ($2,877.44) with interest and costs.

(*l*) On or about June 30th, 1942, the sheriff of the Lethbridge Judicial District caused to be seized under the two said Writs of Execution to satisfy the claim of the plaintiff in this issue amounting to the sum of Seven thousand one hundred and eighty-one dollars and eighty-one cents ($7,181.81) together with the sum of $4.75, his costs, all or sufficient of the bonds of the Province of Saskatchewan, contained in a safety deposit box in the name of the Lethbridge Northern Irrigation District in the Canadian Bank of Commerce, Lethbridge, to satisfy the above claim. For the purpose of this special case, but for no other purpose the said bonds are by agreement between the parties to be deemed to be properly seized and in the hands of the sheriff.

3. In an action in the Supreme Court of Alberta, Judicial district of Lethbridge, His Majesty the King as represented by the Honourable the Provincial Treasurer of Alberta, on or about the 18th day of September, 1942, recovered judgment against the Lethbridge Northern Irrigation District for the sum of Three million, Six hun dred and fifty-seven thousand, nine hundred and twenty dollars and fifty-two cents ($3,657,920.52), and on or about the 18th day of September, 1942, issued execution thereon and placed the same in the hands of the sheriff of the Judicial District of Lethbridge of which the sum of Two million, two hundred and eighty-nine thousand, and sixty-six dollars and two cents ($2,289,066.02) was for money paid pursuant to the said guarantee and the balance amounting to One million, three hundred and eighty-six thousand, eight hundred and fifty-four dollars and fifty cents ($1,386,854.50) was for money paid into a sinking fund to retire the principal of the bonds at maturity.

4. On or about the 25th day of September, 1942, the Independent Order of Foresters recovered judgment against the Board of Trustees of the Lethbridge Northern Irrigation District and P.M. Sauder, Official Trustee of the Lethbridge Northern Irrigation District, in the sum of Sixty-one Thousand five hundred dollars and thirty cents ($61,500.30) and issued execution thereon in respect of interest coupons of the said debentures so guaranteed as aforesaid.

5. Nothing has been paid to the plaintiff on account of any of the said judgments and executions other than the amounts which had been paid into Court by the Provincial Treasurer under the two first mentioned judgments, being the amounts owing on the judgments as hereinbefore set out.

6. Attached hereto as part of this case are:

> (*a*) Statement showing how the sum of Three Million six hundred and fifty-seven thousand nine hundred and twenty dollars and fifty-two cents ($3,657,920.52) representing the judgment in favour of the Provincial Treasurer is made up;
>
> (*b*) A copy of the Order in Council guaranteeing the said bonds;
>
> (*c*) By-Law No. 5 of the Lethbridge Northern is attached.

7. The question of law arising from the foregoing facts is as follows:

> Has the Honourable the Provincial Treasurer by virtue of the said judgment in his favour and the execution issued thereunder a right under *The Execution Creditors Act* to share with the plaintiff in moneys
>
> > (*a*) attached or which may be attached by Garnishee Summons, or
> >
> > (*b*) realized or which may be realized under Writs of Execution against the said Lethbridge Northern Irrigation district,

and, if so, with respect to what amount and to what extent?

Dated at the City of Edmonton, in the Province of Alberta, this 21st day of May, A.D. 1943.

                    Geo. H. Steer,
            Solicitor for the Plaintiff.

                    W. S. Gray,
            Solicitor for the Defendant,
                the Board of Trustees.

                    H. J. Wilson,
            Solicitor for the Defendant,
                the Provincial Treasurer.

8    The special case was considered by the Honourable Mr. Justice O'Connor who, as set out in the formal judgment, found and declared:

I Find and Declare that the answer to the question submitted to me by the said Special Case is 'no,' but that the plaintiff is entitled to 3.35 per cent of moneys attached, or which may be attached by garnishee summons, or realized, or which may be realized under writs of execution against the defendant, Lethbridge Northern Irrigation District, and that the balance of any such moneys is to be held by the sheriff to be paid to other debenture holders as they establish their claims.

9    In his reasons for judgment the learned Judge answered "No" to both parts of the question designated (*a*) and (*b*), but added a "rider" as follows:

The plaintiff is entitled to 3.35 per cent of each. The sheriff should hold the balance and pay it to the debenture holders as they establish their claims.

10    The plaintiff, appellant, confines its appeal to one against what is called the "rider." In all other respects the appellant supports the judgment, contending that the answer to the question should be a simple "no."

11    The defendants, respondents, gave notice of cross-appeal from the whole judgment, claiming that the answer of the learned Judge should have been "yes;" but, alternatively, they support the rider to the judgment. As summarized in the factum on behalf of the provincial treasurer their submissions are as follows:

(1) *The Execution Creditors Act* does not permit the Court to grant priority to one execution creditor at the expense of another except as provided by the Act;

(2) Alternatively, the plaintiff cannot claim priority in respect of the portion of the judgment which does not represent monies paid under the guarantee;

(3) In the further alternative, the learned Trial Judge was right in limiting the plaintiff to realization of 3.35% of the amount

    levied under the execution and garnishee summons.

12    It is stated in the factum on behalf of the irrigation district that:

    This respondent, being the Execution Debtor, is desirous of the proceeds of any of its assets, which may be disposed of under execution, being distributed *pro rata* between the Provincial Treasurer and all the bondholders, as the Provincial Treasurer is the largest creditor of the respondent district.

13    On the hearing of the appeal a further ground of appeal was set up and argument developed thereon. It is contended that, in order to make the declaration involved in a negative answer to the question submitted by the special case, the Court must necessarily find that His Majesty the King in the right of the province of Alberta owes money to the Independent Order of Foresters under the guarantee. It is said that there has been no judicial finding to that effect and that such a finding cannot be made in this issue or in any action other than one by way of petition of right for which a fiat is necessary.

14    It is argued that to make such a finding would be, by indirect means, doing something which it is impossible to do directly, no fiat to sue the Crown having been obtained. In support of this, reliance is placed upon *Royal Trust Co. v. Atty.-Gen. for Alta.* (No. 3) [1936] 2 W.W.R. 337, in which *Lovibond v. G.T.R. Co.*, [1936] 2 W.W.R. 298, 45 C.R.C. 162 (P.C.) was applied.

15    I deal first with the cross-appeal.

16    By par. 2 (*g*) of the special case it is stated, as a fact, that:

    The said debentures were guaranteed as to the payment of principal and interest by the Province of Alberta, by virtue of the powers conferred by *The Lethbridge Northern Irrigation District Act*, by Chapter 63 of the Statutes of Alberta, 1921.

17    The province of Alberta became surety for the whole debt without limitation. Where a surety is liable to the creditor for the whole amount of the debtor's liability there is a principle running through the cases, sufficient of which are referred to in the judgment appealed from, which does not permit of the surety competing with the creditor in the realization of the assets of the principal debtor. While this principle finds its usual application in bankruptcy it is one of general application, applicable to all cases of suretyship.

18    There is, in my opinion, nothing in *The Execution Creditors Act*, R.S.A., 1942, ch. 122, the relevant portion of which is set out in the learned trial Judge's reasons, which prevents the application of this principle, where, as here, the surety is attempting to compete with the creditor, whose debt has been guaranteed in full, by a judgment obtained in reliance upon subsec. (2) of sec. 4 of *The Lethbridge Northern Irrigation District Act, 1921*, ch. 63. This subsection is as follows:

    (2) Any payment by the province of principal or interest due under the said debentures, pursuant to the guarantee thereof, shall not in any event be taken to affect the liability of the said district therefor under the said debentures, but such liability shall remain unimpaired and enforceable by the province against the said district. The province shall be subrogated as against the said district to all rights, privileges and powers to which the holders of the debentures, in respect of which

principal or interest or both has been so paid, were entitled by virtue of such debentures, prior to payment by the province under its guarantee, and shall with respect to the debentures in respect of which principal or interest or both has been so paid be in the same position as a holder of debentures upon which the district has made default.

19  To give effect, in the present proceeding, to the equities as between the province as surety and the plaintiff as the primary creditor, by answering the question submitted in consonance with the principle stated, does not amount to a setting aside, directly or indirectly, or the impeaching of the judgment obtained by the surety, as contended on behalf of the defendants, respondents. The point involved in the question is not whether the judgment was properly obtained but whether the judgment creditor, a surety for the whole debt, is entitled, as against the plaintiff, to share in what is realized under the plaintiff's executions and garnishee summonses.

20  Nor does the giving effect, in the present proceedings, to the equities, as between the surety and the principal creditor, nullify, "virtually" or at all, the provision of *The Execution Creditors Act* as also contended on behalf of the defendants.

21  Reliance is placed upon the decision of the Ontario Court of Appeal in *Bowerman v. Phillips* (1888) [15 O.A.R. 679](). In that case the contest was between two execution creditors one of whom alleged that the judgment of the other had been improperly obtained. The attacking creditor took proceedings, under a provision similar to sec. 21 of our Act, to contest the claim of a creditor who had not obtained judgment but who was proceeding to obtain a certificate which would be equivalent to an execution.

22  The County Court Judge set aside the judgment complained of holding that it was not a *bona-fide* judgment and had been improperly obtained.

23  On appeal Patterson, J.A. held that the order appealed from had been made upon a contestation which was not authorized by the Ontario *Creditors Relief Act*.

24  Osler, J.A. treated the appeal as arising out of a contestation under the Act. Hagarty, C.J.O. and Burton, J.A. simply concurred.

25  All that Patterson, J.A. held, in the passage relied upon, was that:

Whatever power the statute gives to a creditor to contest a claim advanced by another, it does not extend the power to the impeaching of a judgment by a summary proceeding.

26  Osler, J.A. was careful to point out that: "There is no reason to suppose that he [the County Court Judge appealed from] would have held that the plaintiff was not entitled to be ranked in the sheriff's distribution scheme for any other reason" than that, in his opinion, the plaintiff's judgment was not a *bona-fide* one and had been improperly obtained.

27  In my opinion the defendants can derive no assistance from the decision in *Bowerman v. Phillips, supra*.

28  The present appeal does not arise out of a summary proceeding under *The Execution Creditors Act*. In passing I may say

that I am inclined to agree that the Act makes no provision for one execution creditor contesting the claim of another execution creditor in a summary proceeding before a District Court Judge. Secs. 18 to 26 seem to be limited to the contestation of a claim asserted by a creditor who has not obtained judgment but whose debt is overdue, or by a creditor who has allowed an execution against lands to remain unsatisfied for nine months, and who applies for a certificate which may entitle him to share in the sheriff's distribution. Sec. 31 deals with the contestation of the sheriff's scheme of distribution which he is required to make when the money realized is insufficient to pay all claims in full.

29      The present appeal arises upon admitted facts set out in a special case agreed upon by all parties in the issue directed, with the consent of all parties, by Mr. Justice Macdonald, in the action in which one of the plaintiff's judgments was obtained.

30      The stating of the special case is a commendable means of avoiding multiplicity of proceedings and provides the Court with a convenient method of exercising the powers given to it, by *The Judicature Act*, R.S.A., 1942, ch. 129, to prevent multiplicity of actions. I cannot think that parties would have gone to the trouble of stating the facts agreed upon with such care unless it were intended that an answer to the question asked would lead to some result having regard to the ultimate rights of the parties in the light of the equities as between the surety and the principal creditor.

31      If both surety and creditor were allowed to share in the sheriff's distribution, there is, I think, no doubt that the creditor would immediately have the right to take proceedings against the surety to recover the balance due him. Indeed in my opinion, the creditors, having a charge thereon, would have the right to claim the very dividend which the surety has received.

32      In the way the issues have been brought before the Court there is quite as much reason for the Court now preventing the surety ranking inequitably in the sheriff's distribution, as against the creditor, as there is to prevent a surety so ranking in bankruptcy or in a distribution for the benefit of creditors. I find nothing in *The Execution Creditors Act* against the Court's power to do so.

33      I should add that I do not desire to be understood as expressing a definite opinion against the view advanced by counsel for the plaintiff that the special case is to be considered as anticipating and taking the place of a contestation of the scheme of distribution which the sheriff is required to make. The argument, as I understand it, is that it is open to one execution creditor, in contesting under sec. 31 the sheriff's scheme of distribution, to raise and have decided the question now submitted. If this argument is sound there is nothing in the way of the Court answering the question having regard to the equities as between creditor and surety, and, the question having been submitted, any difficulty as to the Crown being the surety disappears.

34      The fact that the surety is the province of Alberta, in my opinion, presents no obstacle to the application of the principle I have stated, and does not prevent the Court from doing justice as between the Crown and the subject.

35      I have stated concisely the argument advanced by counsel for the provincial treasurer to the effect that in the absence of a fiat the Court is powerless to make the declaration involved in an answer to the question submitted by the special case, at all events if answered against the contention of the provincial treasurer. It seems to me a strange thing to say that, while the Court might have the right to answer affirmatively, it cannot answer negatively the question which the Crown, through its proper officer, has joined in submitting for its opinion under Rule 218.[FN1] Under that Rule the question of law could not have been stated without the concurrence of all parties to the issue.

36      The present case is clearly distinguishable from *Lovibond v. G.T.R. Co., supra*, and *Royal Trust Co. v. Atty.-Gen for Alta., supra*. In each of these cases the declarations sought were ancilliary to claims which can only be the subject of a petition of right. In the *Lovibond* case the declaration was asked to rectify the stock register of the railway company with respect to shares the existing title to which was in the Crown, represented by the Minister of Finance for Canada, and in the *Royal Trust* case the declaration was asked in support of a claim that the plaintiff was entitled to recover money in the possession of the province of Alberta which the province claimed as its own.

37      The cases referred to in *Royal Trust Co. v. Atty.-Gen. for Alta., supra*, sufficiently show the distinction between the case at bar and the rule relied upon by the defendants, respondents. I would, however, quote, from one of the cases cited therein, an extract which I think is peculiarly appropriate to the present case.

38      In *Eastern Trust Co. v. Mackenzie, Mann & Co. Ltd.*, [1915] A.C. 750, 84 L.J.P.C. 152, 31 W.L.R. 248, Sir George Farwell, who delivered the judgment of the Judicial Committee of the Privy Council, said at pp. 759-60:

> The non-existence of any right to bring the Crown into Court, such as exists in England by petition of right, and in many of the colonies by the appointment of an officer to sue and be sued on behalf of the Crown, does not give the Crown immunity from all law, or authorize the interference by the Crown with private rights at its own mere will. There is a well-established practice in England in certain cases where no petition of right will lie, under which the Crown can be sued by the Attorney-General, and a declaratory order obtained, as has been recently explained by the Court of Appeal in England in *Dyson v. Atty.-Gen.*, [1911] 1 K.B. 410, 80 L.J.K.B. 531, and in *Burghes v. Atty.-Gen.*, [1912] 1 Ch. 173, 81 L.J. Ch. 105. It is the duty of the Crown and of every branch of the Executive to abide by and obey the law. If there is any difficulty in ascertaining it, the Courts are open to the Crown to sue, and it is the duty of the Executive in cases of doubt to ascertain the law, in order to obey it, not to disregard it. The proper course in the present case would have been either to apply to the Court to determine the question of construction of the contract, and to pay accordingly, or to pay the whole amount over to the receiver and to obtain from the Court an order on the receiver to pay the sums properly payable for labor and supplies, as to the construction of which their Lordships agree with the Supreme Court of Nova Scotia.
>
> The duty of the Crown in such a case is well stated by Lord Abinger in *Deare v. Atty.-Gen.* (1835) 1 Y. & C. 197, at p. 208, 160 E.R. 80. After pointing out that the Crown always appears (in England) by the Attorney-General in a Court of justice, especially in a Court of Equity, where the interest of the Crown is concerned, even perhaps in a bill for discovery, he goes on to say: 'It has been the practice, which I hope never will be discontinued, for the officers of the Crown to throw no difficulty in the way of any proceeding for the purpose of bringing matters before a Court of justice where any real point of difficulty that requires judicial decision has occurred.'

39      The case for the declaration involved in a negative answer to the question now submitted comes within the law as laid down by Farwell, L.J. in *Dyson v. Atty.-Gen., supra*. The estate of the Crown is not directly, bot its interests are only indirectly, affected by such a declaration and as stated by Baron Atkyns in *Pawlett v. Atty.-Gen.* (1667) Hardres 465, 145 E.R. 550, in the passage quoted by Farwell, L.J. in *Dyson v. Atty.-Gen.*, "it would derogate from the King's honour to imagine that what is equity against a common person should not be equity against him."

40      There remains now for consideration the plaintiff's appeal from what has been called the "rider" to the answer to the question stated for the Court's opinion.

41      With great respect I am of the opinion that it was not open to the learned Judge to deal with the question of the right of the plaintiff to the proceeds to be realized from the property seized. This question has not been asked and cannot be answered until the issue out of which the special case arose is determined. The question submitted relates solely to the legal rights of the defendant in the issue, the provincial treasurer. The relative rights of the plaintiff and other debenture holders are not involved in either an affirmative or negative answer. Such relative rights cannot be determined in proceedings to which the other debenture holders are not parties, and without there being before the Court sufficient material to determine them. The other debenture holders are not made parties, either by representation or otherwise, and there was no, or not sufficient, material before the Court to determine such relative rights.

42      Furthermore, there is no machinery provided in *The Execution Creditors Act* for carrying out the direction to divide the proceeds of the property attached as directed by the learned trial Judge. There is no provision in the Act for the sheriff holding such proceeds for an indefinite time to enable persons, who may or may never advance them, to establish their claims.

43      True it is that the statute modifies the maxim *vigilantibus, non dormientibus, jura subveniunt*, but, subject to the provisions as to preferences, it is only those who establish their claims in accordance with the Act, and within the time fixed thereby, who have the right to share in the sheriff's distribution.

44      I would allow the plaintiff's appeal by varying the formal judgment appealed from by striking out from the first operative paragraph thereof all the words after the word "no." I would also dismiss the cross-appeal of the defendants. The plaintiff, appellant, will have its costs of both appeal and cross-appeal to be taxed on the same scale as directed for the trial, namely, double column 5.

> The parties to any cause or matter may at any stage thereof, and the parties to any dispute before any proceedings have been instituted may, by leave of a judge, concur in stating the questions of law arising therein in the form of a special case for the opinion of the court.

FN1 Rule 218 reads:

END OF DOCUMENT