# Index No. 12

## *In re* WHITEHOUSE & CO.

*Company—Voluntary Liquidation—Contributory—Debt due from Company—Right of Set-off against Calls—Companies Act, 1862, ss. 38, 101, 138.*

M. R.
1878
July 27.

Where a limited company is in voluntary liquidation, a contributory cannot set off a debt due to him from the company against calls made against him either by the company before or by the liquidator after the resolution to wind up.

*Brighton Arcade Company* v. *Dowling* (1) disapproved of.

WHITEHOUSE & Co., *Limited*, was a company duly registered under the *Companies Act*, 1862.

Statement.

At a meeting of the company held on the 7th of December, 1877, a resolution was passed for a voluntary winding-up, and a liquidator was appointed.

This was a summons taken out by the liquidator, asking that *David Rose* and *Henry Fulwood Rose*, who had both been settled on the list of contributories, might be ordered to pay respectively the sums of £289 2s. 9d. and £142 7s. alleged to be due from them in respect of calls made, as to part, by the directors of the company shortly before the date of the resolution to wind up, and as to the remainder, by the liquidator since that date.

Against his call *David Rose* claimed to set off the sum of £272 17s. 5d. due to him from the company on two promissory notes; and *Henry Fulwood Rose*, being a creditor of the company for £2500 advanced by him on mortgage, refused to make any payment whatever on account of his call, contending that he was entitled to set off the same against the mortgage debt.

Both contributories were admitted by the liquidator to be creditors of the company for the amounts claimed.

The summons was argued before his Lordship in Chambers, but was, by his Lordship's direction, adjourned into Court for judgment.

*Millar*, for the liquidator, contended that there was no right in a shareholder to set off a debt due to him from the company

Argument.

(1) Law Rep. 3 C. P. 175.

596     CHANCERY DIVISION.    [VOL. IX.

M. R.
1878

*In re*
WHITEHOUSE & CO.

Argument.

against calls in a voluntary winding-up; and cited *Grissell's Case* (1); *Black & Co.'s Case* (2), in which the contrary decision of the Court of Common Pleas in *Brighton Arcade Company* v. *Dowling* (3) was disapproved of; *Gibbs and West's Case* (4); and *Stone* v. *City and County Bank* (5).

*Everitt*, for Messrs. Rose, relied on *Brighton Arcade Company* v. *Dowling* as an authority precisely in point; and also cited *Barnett's Case* (6), in which *Calisher's Case* (7) was discussed.

Judgment.

JESSEL, M.R.:—

This case was argued before me in Chambers, but as it raised a question of very great general importance, and as to which the authorities are conflicting, I said I would give my judgment in Court, and I now give judgment accordingly.

The application was an application under the 138th section of the *Companies Act*, 1862, by the liquidator under a voluntary winding-up of this company, that two contributories of the name of *David Rose* and *Henry Fulwood Rose* might pay sums respectively of £289 2s. 9d. and £142 7s. which were due from them partly in respect of a call made by the company before the winding-up, and partly in respect of a call made by the liquidator in the course of the voluntary winding-up.

The amounts due on the calls were not disputed, but the contributories claimed to be allowed as set-off, as regards *David Rose*, nearly the whole amount of the claim, and as regards *Henry Fulwood Rose*, the whole amount, because he said he was a creditor for a larger sum. The liquidator admitted that the two contributories were creditors for those respective amounts, and therefore the only question that I have to decide is whether, under those circumstances, they were liable to pay the calls, or whether they were entitled to the benefit of the sets-off claimed.

Now the question as regards set-off has been the subject of judicial decision, and no doubt is a matter of the greatest import-

(1) Law Rep. 1 Ch. 528.  (4) Law Rep. 10 Eq. 312.
(2) Ibid. 8 Ch. 254.   (5) 3 C. P. D. 282.
(3) Ibid. 3 C. P. 175.   (6) Law Rep. 19 Eq. 449.
    (7) Law Rep. 5 Eq. 214.

M. R.
1878
*In re*
WHITEHOUSE
& Co.
—
Judgment.

ance. On the one side there is an authority, which I must consider in point, cited on behalf of the contributories; and on the other side there are certain authorities cited—and to which I shall refer—questioning the soundness of that authority.

The case cited on behalf of the contributories was the case of the *Brighton Arcade Company* v. *Dowling* (1). The chief cases cited on behalf of the liquidator were the well-known case of *Grissell* (2) and the case of *Black & Co.* (3), which certainly throw very great doubt on the decision of the Court of Common Pleas.

On considering the matter, I came to the conclusion that it was open to me to decide the case, notwithstanding the case in point decided by the Court of Common Pleas, and notwithstanding that the case was decided ten years ago, and was a decision of the full Court of Common Pleas.

Now the real point, I think, should be first considered on principle; then I will consider one or two sections of the Act of Parliament, and then the authorities.

First of all, it must be remembered that at common law there was originally no right of set-off at all, and it was not till the statutes of set-off in the beginning of the reign of *George* II. that there was any such right established; and when we look at the terms of those Acts of Parliament—there were two of them (4) —it is plain they only applied to what was then an action at common law—and so it has been held—and that they only applied to the case of mutual debts, whatever they might be. That was followed by the Courts of Equity and extended; that is to say, certain cases were held to be within the equity of the statutes, although not within their actual words. Courts of Equity allowed set-off, but the Court of Equity, following the spirit of the statutes, would not allow a man to set off, even at law, where there was an equity to prevent his doing so; that is to say, where the rights, although legally mutual, were not equitably mutual.

That being the state of the law, it is obvious that when you have a demand at law to set off against a Plaintiff, it must be

---

(1) Law Rep. 3 C. P. 175.
(2) Ibid. 1 Ch. 528.
(3) Ibid. 8 Ch. 254.
(4) 2 Geo. 2, c. 22, s. 13, and 8 Geo. 2, c. 24, ss. 4, 5.

M. R.
1878
*In re*
WHITEHOUSE
& Co.,

Judgment.

a demand of something due from the Plaintiff to the Defendant, otherwise there would be nothing to set off. If the claim against the Plaintiff were assigned or otherwise disposed of for value, the set-off would not arise at all; and the same principle applies in other cases where the legal demand is transferred or assigned. We have often had the well-known illustration of a bill of exchange indorsed over for value before it is due, so as no longer to be in the hands of the Defendant at the time of action brought. That being so, a question would immediately arise, if one of the parties became bankrupt, as to whether there was any set-off or not. In the case of bankruptcy the moneys due to the bankrupt before the bankruptcy would be distributable amongst the creditors and no longer payable to the bankrupt; and inasmuch as the Bankruptcy Acts enabled the assignee, who is now called a trustee, to sue in his own name—for he took under a legal assignment—of course, if he sued a Defendant, there was no debt due from him to the Defendant, although there might be a debt due from the bankrupt to the Defendant, and consequently, in terms, this form of set-off would not apply. It was to avoid that injustice that in the Bankruptcy Acts clauses of set-off were inserted, and which clauses are in fact rather wider than the Statutes of Set-off. I only observe upon that to shew that, in disposing of the bankrupt's rights as against his debtors, the Legislature found it necessary, in order to ascertain what should be included in the assets for the payment of creditors generally, to insert special provisions for set-off, otherwise there might be none.

So the law stood as regards individuals; and as regards companies there were several Acts of Parliament for winding them up, and finally the Act of 1862. Before going into the details of that Act, I may state the scheme of the Act as regards winding-up—which was this, that the assets of the company were to be collected by the liquidator and distributed among the creditors; and in the case of an insolvent company it was very like bankruptcy; but if the assets were to be so distributed, of course, if the liquidator sued in his own name, he would not be indebted at all to the man to whom the company was indebted, and there would be no strict right of set-off. Whether that was affected or not by the provisions of the Act that enabled him to sue in the name of the com-

| VOL. IX.] | CHANCERY DIVISION. | 599 |

pany, I will consider further on. If he comes under those sections—notably the 138th section—in a voluntary winding-up, he comes in his own name as liquidator to enforce a call, and strictly speaking, there is no actual set-off, because he is not indebted.

If, therefore, you want a set-off at all, you must shew some provision in the Act itself giving the right of set-off, because in principle there is no such right. The debt due to the liquidator is distributable among the creditors, and the debt due to the individual from the company would only rank with the view of obtaining a dividend for the creditor for the amount due. The two debts are not applicable to the same purposes, and could not properly be made the subject of set-off. Therefore it appears to me that the onus lies upon the man who says that there is this right of set-off to point out the provisions in the Act of Parliament giving that right.

Now, when we look at the Act of Parliament, which is the next thing I have to consider, it is plain there is no such right. First of all, it must be remembered that the 38th section of the Act, which directs what is to be paid in the case of a winding-up by the shareholders of a limited company, creates new rights, and rights which did not exist before the passing of the *Companies Act*, 1862, and rights which do not exist till there is a winding-up. That point was decided by the House of Lords in the case of *Webb* v. *Whiffin* (1), that it was in fact a new right, or rather a new liability as regards the shareholders; and that section alone, for this purpose, regulates their liability.

When you come to look at the section you find that it applies to all kinds of winding-up; that is to say, to a winding-up by an order of the Court, to a winding-up voluntarily, and to a voluntary liquidation under the supervision of the Court; there is no distinction. The section says: "In the event of a company formed under this Act being wound up, every present and past member of such company shall be liable to contribute to the assets of the company to an amount sufficient for payment of the debts and liabilities of the company." That is a new liability; he is to contribute; it is a new contribution. It is a mistake to call that a debt due to the company. It is no such thing. It is not,

M. R.
1878
~~~
*In re*
WHITEHOUSE
& Co.
———
Judgment.

(1) Law Rep. 5 H. L. 711.


---

M. R.
1878

*In re*
WHITEHOUSE & Co.

Judgment.

as has been supposed, in any shape or way a debt due to the company, but it is a liability to contribute to the assets of the company; and when we look further into the Act, it will be seen that it is a liability to contribution to be enforced by the liquidator. It is quite true that a call made before the winding-up—and in the case before me a call was made before the winding-up—is a debt due to the company, but that does not affect this new liability to contribution.

But there are certain limits to the liability. This being a limited company, the only limit which it is necessary to refer to is that stated in the 4th sub-section of the 38th section: "In the case of a company limited by shares, no contribution shall be required from any member exceeding the amount, if any, unpaid on the shares in respect of which he is liable as a present or past member." Now, first of all, as regards the calls made in the winding-up, they being calls for something unpaid on the shares, that is a contribution due by the member under the Act, and is not a debt due to the company. The contribution also under this section applies to the unpaid calls made before the winding-up; because, though that is a debt due to the company, it is not the less an amount unpaid on the shares in respect of which he is liable, and therefore he must be liable to contribute all that is unpaid on his shares. As I said before, it is as much unpaid if he had not paid the calls made before the winding-up, as it is in respect of the amount unpaid on the shares in respect of which no call has been made before the winding-up. It seems to me that the contributories' liability created by the 38th section being only limited to the amount unpaid, it is immaterial, for the purpose of this section, whether the call was made before or after the winding-up, provided the amount is unpaid. That being so, it is a liability to contribute which, in the case of an ordinary winding-up, is of course enforceable by the Court; but so it is in a voluntary winding-up.

Then the 138th section of the Act says that the liquidator may apply to the Court "to exercise, as respects the enforcing of calls, or in respect of any other matter, all or any of the powers which the Court might exercise if the company were being wound up by the Court;" and this summons is taken out under that section.

VOL. IX.]   CHANCERY DIVISION.   601

There is, therefore, no difference whatever; the liquidator may come to the Court in a voluntary winding-up, and say "Enforce the payment of the contributions due from the contributories under the 38th section."

M. R.
1878
*In re*
WHITEHOUSE & Co.
Judgment.

It appears to me there is no possible distinction when you look at those two sections between the duty of the Court when applied to by a voluntary liquidator, and the duty of the Court when applied to by an official liquidator. If there is no debt due from the contributory to the company, how can he set off a debt due from the company to him against the contribution? It is a contribution to the assets enforceable by the liquidator, and not at all a debt. When you look at the Act there is really no question of set-off as between calls—that is, the amount unpaid on the shares—and a debt due by the company to the contributory.

Then there is one other section which I may refer to in addition to the sections that enable the liquidator to sue in the name of the company if he thinks fit. The 101st section—and I think it is the only section which deals in terms with this right of set-off—has an application to debts; but it does not at all interfere with the 38th section as to liability to contribution. The 101st section is this: "The Court may, at any time after making an order for winding up the company, make an order on any contributory for the time being settled on the list of contributories, directing payment to be made, in manner in the said order mentioned, of any moneys due from him or from the estate of the person whom he represents to the company, exclusive of any moneys which he or the estate of the person whom he represents may be liable to contribute by virtue of any call made or to be made by the Court in pursuance of this part of this Act." That excludes calls in the winding-up. It would include a call made before the winding-up. Then it goes on, "And it may, in making such order, when the company is not limited, allow to such contributory by way of set-off any moneys due to him or the estate which he represents from the company on any independent dealing or contract with the company, but not any moneys due to him as a member of the company in respect of any dividend or profit: Provided that when all the creditors of any company, whether limited or unlimited, are paid in full, any moneys due on any account whatever to any

602 CHANCERY DIVISION. [VOL. IX.

M. R.
1878

*In re*
WHITEHOUSE
& Co.

Judgment.

contributory from the company may be allowed to him by way of set-off against any subsequent call or calls."

Therefore this section empowers the Court to direct payment of any debt of the company, and it may allow, where the company is not limited, a set-off. Surely that does not allow the Court to do it where the company is limited. If there is any implication to be drawn from the section at all, it is that set-off is not to be allowed when the company is limited, though I do not think that is wanted, because, as I said before, I can see no ground on principle, on looking at the sections of the statute, for saying that there is a debt due from the contributory to the company, it being in fact the amount of his contribution to the assets for the benefit of the creditors.

So that, when you look at the 101st section, so far as it goes it strengthens—if that was wanted—the proposition that there is no set-off to be allowed in the case of a limited company, for a sum of money due from the company to a person liable to the company. The proviso shews that when all the creditors are paid you may set off whether the company is limited or unlimited. Here, again, the inference is that you cannot do it before the creditors are paid. So that when you look at the wording of the 101st section, it is quite plain, as it appears to me, that, having regard to that section as well as the other sections of the Act, there is no ground for such a set-off as between the contribution under the 38th section, which includes calls made either before or after the winding-up—that is, anything unpaid on shares—and a debt due by the company to the contributory.

That being so on principle and on the construction of the Act, I must now look at the authorities, because they are somewhat difficult to deal with.

Now in the first case cited on behalf of the liquidator, *Grissell's Case* (1),—in which the company was being wound up under a supervision order—I cannot find any such distinction taken as was afterwards taken by the Court of Common Pleas between a winding-up under an order of the Court and a voluntary winding-up. It is laid down generally, that the shareholder who is also a creditor is not entitled to set off the debt due to him against the

(1) Law Rep. 1 Ch. 528.

VOL. IX.]           CHANCERY DIVISION.                     603

calls made in the winding-up; but I cannot find in Lord *Chelmsford's* judgment any notion that a distinction should be made between a voluntary winding-up and a compulsory winding-up.

Of course the question before the Court being a question of contribution, was treated by Lord *Chelmsford* as one of contribution. He says (1), "The 75th section of the Act enacts, that the liability of any person to contribute to the assets of a company, in the event of its being wound up, 'shall be deemed to create a debt accruing due from such person at the time when his liability commenced, but payable at the time or respective times when calls are made as hereinafter mentioned for enforcing such liability.' Until the call is made there is nothing more than a liability to contribute. This, indeed, creates a debt, but the debt does not accrue due till a call is made. The power to make calls is only to satisfy the debts and liabilities of the company, and the costs, charges, and expenses of winding it up, and for the adjustment of the rights of the contributories amongst themselves. But if the whole of the amount unpaid upon the shares were required to be paid up, more might be raised than would be requisite for these purposes." That shews the limit. The principle in *Grissell's Case* appears to me to cover the case of a voluntary winding-up as much as that of a compulsory winding-up.

The next case in order of date was *Calisher's Case* (2) which was decided a few days before the case before the Court of Common Pleas, and there Lord *Romilly* decided that you could not set off a debt due from the company to the contributory in the absence of special agreement. That latter part of the decision has been overruled, and it has been held that you cannot do so even by special agreement. But, subject to that, so far as the case before the Court went, Lord *Romilly* decided most distinctly that the Court could not, having regard to the terms of the 101st section and the decision of Lord *Chelmsford* in *Grissell's Case*, allow a contributory to set off a debt against a call.

The next case is the one which raises the whole difficulty; it is the case of the *Brighton Arcade Company* v. *Dowling* (3). The liquidator there brought an action for calls, and the full

M. R.
1878
In re
WHITEHOUSE & Co.

Judgment.

(1) Law Rep. 1 Ch. 535.    (2) Law Rep. 5 Eq. 214.
(3) Law Rep. 3 C. P. 175.

M. R.
1878
*In re*
WHITEHOUSE
& Co.

Judgment.

Court of Common Pleas held that the debt due to the contributory from the company was to be set off against the call. The way in which it was put by the Court was this. Lord Chief Justice *Bovill* says (1): "Primâ facie there is a good debt disclosed by the declaration, and a good answer thereto by the fourth plea (of set-off). It lies therefore on the Plaintiffs to shew some law which prevents the application of the set-off."

Inasmuch as it appeared on the face of the action that it was a suit by the liquidator in the name of the company, it was not, as it appears to me, to be treated as if it was an action by the company whilst a going concern, and therefore the ground taken by the Court of Common Pleas fails, and under the provisions of the Act of 1862 there is no set-off—in other words, the obligation of proof is the other way. They assumed there was, under the statute, a right of set-off after the winding-up, unless you could shew it was taken away. There is no such right of set-off under the statute, where there is a contribution of this kind due to the assets of the company, and it is for those who allege set-off to shew it. His Lordship then proceeds to shew that there is an implication, if not an express prohibition, against such a plea, for he says, "If this had been the case of a company which was in course of being wound up by the Court or under the supervision of the Court, I should have had no hesitation in saying that the set-off could not be allowed." Therefore he does take the same view of the Act as I do, with one exception—that he thinks there is a difference in the case of a voluntary winding-up; but his attention was not called to the fact that you would then get this absurd consequence, namely, that under the 138th section the voluntary liquidator could apply for payment to the Court and the Court could exercise all the powers it could exercise under the winding-up; but the liquidator could not get the benefit of the Act, as regards payment by the contributory, in an action; and this extraordinary result would then follow, that he would get his demand, *minus* the set-off, in the action, and then come to the Court under the 138th section for the balance, namely, for that sum which the Court of Common Pleas say should be allowed by way of set-off—which would certainly be remarkable.

(1) Law Rep. 3 C. P. 179.

M. R.
1878
*In re*
WHITEHOUSE
& Co.

Judgment.

It was never intended by the Legislature that the liquidator should, if he chose to proceed by action, amend his action by an order under the 138th section, nor could it be argued that, there being the right under the 38th section to get the whole amount of contribution without set-off, there could be a less right in an action.

That being so, all the argument of the Court of Common Pleas appears to me fallacious. The powers of the Act of Parliament are enforceable on the application of a liquidator. If a company is insolvent a voluntary winding-up is more likely to take place than where a company is solvent; and can there be any reason for such a distinction as is alleged? If there were, you would have this consequence, that every case would have to be brought into Court as to a right of set-off. That is a consideration which it seems to me was not dealt with by the Court of Common Pleas. The whole of the judgments of the Judges of the full Court of Common Pleas proceed, as I said before, on the assumption that the Statute of Set-off applies unless the other side can shew a negative. I think if you examine the Act you can shew the negative, but I do not think it is necessary to shew the negative.

I should have gone into this matter more fully had it not been for the elaborate discussion which the matter received from Lord *Selborne* in *Black & Co.'s Case* (1). That was the case in which the Court overruled the distinction which Lord *Romilly* thought might exist of a special contract, but in the course of it there is an elaborate discussion by Lord *Selborne* of the case of the *Brighton Arcade Company* v. *Dowling* (2), and he so clearly points out his reasons that it would be a work of supererogation on my part to repeat what he has indicated; and I need hardly say I entirely agree with what he says on the subject.

I have only one other case to notice, which is *Gibbs and West's Case* (3), before Vice-Chancellor *Malins;* and there is only one observation of the Vice-Chancellor in that case to which it is necessary for me to refer. After discussing (4) the decision in *Grissell's Case*, he refers (5) to the *Brighton Arcade Company* v.

(1) Law Rep. 8 Ch. 254.        (3) Law Rep. 10 Eq. 312.
(2) Ibid. 3 C. P. 175.             (4) Ibid. 327.
        (5) Law Rep. 10 Eq. 330.

606           CHANCERY DIVISION.           [VOL. IX.

M. R.
1878
*In re*
WHITEHOUSE
& Co.

Judgment.

*Dowling* (1). He says, "I have been referred to the case of the *Brighton Arcade Company* v. *Dowling*, with regard to which I confess, after all that has been said upon it, and after all that learned Judges have said, I am unable to see that it is not in conflict with *Grissell's Case*, which has settled that, where the liability is limited, the right to set-off cannot exist."

I merely cite that to shew that at least one other Judge has considered that there is a direct conflict between the authorities; but I am not by citing that case to be supposed to agree with the decision in other respects. Indeed, the observations I have made shew that I could not agree with it. I cite it merely with reference to that observation.

That being so, I am in this position, that there is a decision of the Court of Common Pleas ten years old which is directly in point, and that decision, as I read it, is in conflict with a prior decision of the Lord Chancellor in *Grissell's Case* (2), and emphatically disapproved of by another Lord Chancellor in *Black & Co.'s Case* (3), and in conflict with the true interpretation of the Act of Parliament. It appears to me that, having regard to the rules by which Courts are bound, I am entitled to say that I am not bound by the decision of the Court of Common Pleas, and that I have a right to decide the case according to my own view of the Act of Parliament, confirmed as it is by the high authority of the two Lord Chancellors in the cases I have cited, and also by the opinion of Vice-Chancellor *Malins* as to the conflict of the case in the Common Pleas with the case of *Grissell*.

That being so, I think that no set-off exists in the present case, and there will therefore be an order against the contributories for payment of the call, and they must pay the costs of the application.

Solicitors for all parties: *Duignan & Smiles*, agents for *Duignan & Co., Walsall.*

(1) Law Rep. 3 C. P. 175.       (2) Law Rep. 1 Ch. 528.
(3) Law Rep. 8 Ch. 254.