# Index No. 13

(1871-72) L.R. 5 H.L. 711                                                                                                                          Page 1
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

*711 Francis Webb and Others, Trustees of the Briton Medical, &C. Association v George Whiffin and Others, Liquidators of the Accidental, &C. Insurance Corporation (Limited)

House of Lords

Lord Chancellor    Lord Hatherley, Lord Chelmsford, Lord Westbury, Lord Colonsay,  and Lord Cairns

1872 July 8

Companies Act, 1862—B List of Contributories—No Special Application of their Contributions—"Assets"—Property.

In a winding-up, the funds contributed by the B list of shareholders become part of the general assets of the company, and are not to be applied, preferentially or exclusively, to the payment of those debts which were incurred before the B shareholders retired from the company.

The 38th section of the Companies Act, 1862 (25 & 26 Vict. c. 89), makes the "past members" (persons who have become so by retiring from the company within a year before the date of the winding-up order) liable to contribute to the assets of the company for the payment of the debts and liabilities of the company, but though they are not specifically liable to satisfy debts which have been contracted since they left the company, yet, when they have become liable to contribute to the assets of the company, and have so contributed, their contributions become part of the general assets, and cannot be appropriated exclusively to the payment of those debts which had been incurred before these members retired from the company.

The word "assets" in the 38th section of this statute means the same as the word "property" in the 133rd section, and both alike mean all the unpaid capital recoverable as well as the other property of the company.

Observations by Lord *Cairns* on the duty of the liquidators in making calls on the past members of a company.

THIS was an appeal against an order of Lord Justice *Giffard*, by which a previous order of Vice-Chancellor *Stuart* had been affirmed.

The *Accidental and Marine Insurance Corporation, Limited*, was formed of other companies originally established under other names, which had been duly registered and incorporated under the 7 & 8 Vict. c. 110. By these previous companies were issued on the 9th of March, 1858, and the 10th of May, 1859, two debentures, for the sums of £680 and £170 respectively, in favour of John Weston. The *Accidental and Marine Insurance Corporation* was itself registered on the 5th of August, 1865, under the 25 & 26 *712 Vict. c. 89 (the Companies Act, 1862), and assumed the credits and liabilities of the former companies. The debentures held by *Weston* passed by assignment to *Webb* and others, as trustees of the Briton Medical and General Life Association.

On the 24th of October, 1866, resolutions were passed for a voluntary winding-up up the *Accidental and Maine Insurance Corporation*, and on the 3rd of November, 1866, an order was obtained that it should be wound up under the supervision of the Court.

*Webb* was admitted as creditor of the corporation for the sum of £850, the amount of the two debentures, and interest at the rate of 6 per cent. per annum from the 21st of September, 1867. Dividends of 2s., 1s. 6d., and 6d. in the pound respectively had since been paid by the liquidators, whereby the amount of the principal had been reduced to £680.

The existing members of the corporation were at the time when the corporation came to be wound up

© 2011 Thomson Reuters.

unable to satisfy the required contributions. The past members of the corporation were therefore put into a B list, and considerable sums had been received from them.

The debt, for the balance of which the Appellants are now creditors of the corporation, was contracted before the time at which any one of the "past members" ceased to be a member of the corporation.

On the 10th of March, 1870, Vice-Chancellor *Stuart* refused with costs a motion by the Appellants that the liquidators should divide the contributions received from past members amongst such of the creditors only who became so before the past members had ceased to be members of the corporation. On appeal, before Lord Justice *Giffard*, the decision of the Vice-Chancellor was affirmed1 . The present appeal was thereon presented to this House.

Mr. *Greene*, Q.C., and Mr. *Holl*, for the Appellants:—

The question here is upon the construction to be put on the 38th section of the Companies Act, 1862. The words of the statute have been considered in other cases, but not precisely with the purpose of determining the question raised here. Those cases, however, point to the construction for which the Appellants contend. ***713** Here is a company which is the subject of a voluntary winding-up. The debts found to be due cannot be satisfied by the contributions of the "existing members," those who were members when the winding-up was resolved on. The liquidators have therefore, formed what is called a "B list," that is, a list composed of persons who had retired from the company, but had not retired more than a year before the winding-up. By the 38th section of the 25 & 26 Vict. c. 89, every present and past member of a company which is being wound up is declared liable to contribute to the assets of the company an amount sufficient for the payment of its debts and the costs, but that liability is to be subject to certain qualifications. These are contained in seven sub-sections, the first of which declares that no past member shall be liable if he has retired more than a year; the second that he shall not be liable to contribute in respect of "any debt or liability of the company contracted after the time at which he ceased to be a member:" the third says that "no past member shall be liable to contribute to the assets of the company unless the existing members are unable to satisfy the contributions required." On these enactments the contention of the Appellants is that the contributions of the past members are to be exclusively devoted to satisfy the debts to which the company was liable when these members retired from it. The existing members are to be liable in the first instance, for they have taken possession of the assets of the company; and having secured its advantages must support its burdens. But the Legislature desired to protect the creditors of the company, and therefore, intending, that men should not engage in speculations, thereby incur debts, and then suddenly abandon the speculations, and leave the creditors in the lurch, directed that unless they had retired for above a year they should be liable to contribute to the payment of the debts existing when they retired.

By the ordinary law of partnership a man who ceased to be a partner would be liable to the debts created while he was a partner, but to none created afterwards. The Legislature adopted that principle, but adopted it with modifications suited to the conduct of public companies. If a man quitted a company the man who succeeded him would be, in the first instance, liable to all the debts unpaid at the time when the company was declared to have failed, **714** that is, when it was to be wound up. But he, the existing partner, might not be able to pay all the debts, so it was enacted, in favour of the creditor, that the partner who had quitted the concern within a certain limited period should be liable to contribute to the payment of the debts, but only of the debts which had been incurred while he was a partner. That was the chief object of the statute, and that was the interpretation which the Appellants contend that the statute ought to bear. The liability of past members, and the claims of what might be called past creditors, were in direct relationship

© 2011 Thomson Reuters.

09-50026-mg    Doc 12469-14    Filed 07/11/13    Entered 07/11/13 19:38:32    Index No 13
Pg 4 of 18

(1871-72) L.R. 5 H.L. 711 Page 3
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

with each other, and that relationship was exclusive. It did not and could not exist as to creditors who came in afterwards. On that principle Brett's Case 2 had been decided. *Brett* bought up all the past debts, that is, all those which existed when he ceased to be a shareholder, and it was held that no call could be made on him for any others. This case had then been decided3 , and was mentioned but not approved of there, or in Morris' Case 4 , which followed and adopted the principle in Brett's Case 5 . There Lord Justice *James* observed that "the liabilities of the ex-shareholders and the rights of the creditors who were creditors at the time when they ceased to be shareholders concerned only those two classes." The 102nd section of the Companies Act, 1862, is relied on by the other side. That gives the power to the Court to make calls before as well as after ascertaining the sufficiency of the assets of the company, but that has nothing to do with any particular classes of contributories, the contributions they are to make, or the special application of those contributions. The 133rd section is also relied on by the other side. That relates to the consequences ensuing on a voluntary winding-up. The 1st sub-section there says, that "the property of the company shall be applied in satisfaction of its liabilities *pari passu*." No doubt the contributions of each class are to be distributed among the creditors of that class *pari passu*, but not among all the classes of creditors. The 9th sub-section is plainly one which treats exclusively of the liabilities and contributions of those who are *primâ facie* liable, that is, the existing members, to satisfy the debts of the company, the last part of the sub-section ***715** expressly speaking of the liquidators taking into consideration the probability of the contributors being unable wholly or in part to pay, a consideration which, in the ordinary course of things, must be antecedent to the formation of a B list. The 98th section, which enacts that the Court shall cause the assets of the company to be collected and applied in discharge of its liabilities, only lays down a general proposition, but does not in any way say that the contributions of the old members, who have retired, shall be employed to relieve the liabilities of the existing members as to debts incurred since the retirement of the old members. A different rule from that which the Appellants contend for would be, in fact, making them contribute to the payment of liabilities from which the 38th section itself has expressly exempted them, whereas the plain meaning of the words is, if you are not liable to the debts you shall not contribute to the payment of them.

Mr. *J. N. Higgins*, Q.C., and Mr. *R. Romer*, for the Respondents:—

The point here is short and simple. The statute intended to afford protection to creditors, and therefore made not only all the existing members of a company liable to contribute to the assets of a company on its being wound up, but provided that if their contributions should not be sufficient to satisfy the debts, then that other and older members, their transferors in short, should be made liable to assist them. But the Legislature imposed this liability with a restriction. It was confined to members who had retired not more than one year before the winding-up. These recently retired members were made liable to contribute. But to contribute to what? To the assets of the company, not to any particular assets; not to assets which were to be employed in the payment of the particular claims of *A., B.*, and *C.*, but to the general claims of the creditors of the company, all of whom were to be paid *pari passu*. There was no selection by the statute of any particular creditors to be satisfied out of any particular fund. All the creditors were, if possible, to be satisfied, and all the members of the company who had been members within a certain date, before the period of the order for winding-up, were made liable to be called on to satisfy them.

The assets thus contributed are general assets. If not, what are ***716** they? There is nothing in the statute which assigns them to a particular purpose or directs them to be employed in a particular manner. The past member may not be required to contribute anything; but when the existing members are unable to pay the debts of the company, certain of the past members become liable to be called on to

© 2011 Thomson Reuters.

09-50026-mg    Doc 12469-14    Filed 07/11/13    Entered 07/11/13 19:38:32    Index No 13
                                                      Pg 5 of 18

(1871-72) L.R. 5 H.L. 711                                                                                    Page 4
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

assist in doing so, and not for the purpose of satisfying any one class of creditors, but of contributing to the assets of the company to satisfy the liabilities of the company. Brett's Case 6 merely shews that if there were no debts at all when "past members" retired, such past members may not be called on to contribute to debts which have been wholly incurred since they retired; but it does not shew that if they are liable to be called on, what they do contribute shall be exclusively applied to debts contracted before they retired. In Andrews' Case 7 the principle was considered, but cannot be said to have been decided, nor was it decided when that case afterwards went before Lord Justice *Rolt*8 , except that he expressed an opinion against the idea of marshalling assets in such a case. In Helbert's Case 9 the Master of the Rolls expressly said that past members liable to contribute at all were liable to contribute to "all the debts and liabilities 'of the company and the costs,'" and his decision was affirmed in this House10 .

The case was ordered to be argued a second time before a larger Court, and it was again argued on July 8, and then before the Lord Chancellor (Lord *Hatherley*), Lord *Chelmsford*, Lord *Westbury*, Lord *Colonsay*, and Lord *Cairns*.

Mr. *Greene*, Q.C., and Mr. *Holl*, were again heard for the Appellants, and repeated the arguments which they had before addressed to the House, on the principles of construction to be applied to the statute, and on the cases already decided. They farther illustrated their arguments by reference to similar provisions in other statutes. The statute meant to say to past members, If you are not liable to debts you shall not contribute to them. They were not liable to debts contracted after they left the company, and therefore their ***717** contributions were not to be employed in the payment of debts so contracted. To make them liable would simply be to impose liability on them in order to relieve the existing members.

Mr. *Higgins*, Q.C., and Mr. *R. Romer*, for the Respondents, relied on the 133rd section of the statute,

as presenting with regard to this case an essential difference between it and Brett's Case 11 . No principle applicable to a common law partnership applied here; this was a statutory liability, and could only be governed by the rules which the statute had created, and the statute made no separation of the fund into classes when the fund had once been constituted.

Mr. *Greene* replied.

THE LORD CHANCELLOR (Lord Hatherley):—

My Lords, this is an appeal from an order of the late Lord Justice *Giffard* affirming a decision of Vice-Chancellor *Stuart* with reference to the position of the claim of a certain class of creditors of a joint stock company which was being wound up. The claim of those creditors has been to be paid to the exclusion of the subsequent creditors of the company, by means of the sums which are recoverable from a class of shareholders who are ordinarily in these cases called B shareholders, namely, shareholders who, having retired within a year from the company, remain still liable in respect, at all events, of debts accrued anterior to the time of their ceasing to be members of the company. The question which the Appellants raise is this—they say that, by the true construction of the Act of 1862 with reference to joint stock companies, and especially with reference to the construction of the 38th section of that Act, inasmuch as the persons who have retired from the partnership are not to be called on to contribute to the debts which have accrued since their retirement, therefore the sums which they do contribute ought to be paid and applied in satisfaction of those debts which had accrued before their retirement in preference and priority to any payment to creditors who had become so subsequently.

The question arises entirely upon a clause, which is not very ***718** happily worded, in the 25 & 26 Vict. c. 89, the Companies Act of 1862. There are directions, in the first instance, that all the shareholders shall contribute to the assets of the company for the payment of the costs and of the debts of the com-

© 2011 Thomson Reuters.

09-50026-mg    Doc 12469-14    Filed 07/11/13    Entered 07/11/13 19:38:32    Index No 13
        Pg 6 of 18

(1871-72) L.R. 5 H.L. 711                                                                                     Page 5
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

pany. These directions are in the largest and most general terms. Then there are exceptions made by the 38th section with reference to that generality of expression. The first exception is that no person shall be a contributor who has ceased to be a partner for a year before the winding-up. That exception, in fact, takes the whole class of persons who have ceased to be shareholders for a year altogether out of the category of persons who are to pay. Then, secondly, in the case of limited companies, no persons are to pay more than the amount of the shares which they subscribed for. That exception, of course, one would expect to find from the nature of the company, it being a limited liability company. Then there is another provision, that none of those who have ceased to be members of the company within a year—that is to say, that none of those who are said to be on the B list—is to contribute until those who remained members of the co-partnership up to its expiration—that is, persons who constitute the A list—have been exhausted. Then, lastly, comes the provision which has occasioned such difficulty as has arisen in the present case, namely, that those who are on the B list shall not be called upon to contribute in respect of any debt accrued since their ceasing to be members of the company. Then, as regards the assets, when a fund has thus been formed, and there has been this general contribution to the assets, it is provided that the assets are to be distributed, first, in payment of the costs; and, secondly, in payment *pro ratâ* of the several creditors of the company, in which provision no distinction is made as to those who have been creditors at one particular period as distinguished from another particular period.

I have no doubt, that in making provision with respect to the assets of joint stock companies, and especially the assets of limited companies, many circumstances have to be considered which take the case out of the ordinary rule as to the distribution of the assets of a partnership. There is the circumstance that the members of the company have the power of parting with their shares, and **\*719** thereby escaping, after a certain period, at least, from all liability; a state of things entirely contrary to that subsisting in an ordinary partnership. In an ordinary partnership, a person who has once become a partner cannot escape from any liability whatever for the debts by his ceasing to be a member of the co-partnership, except by payment of the debts. That was a point in which it was necessary to distinguish the members (sometimes called the partners) in a corporation or company of this kind from members of ordinary partnerships. The Legislature has been desirous from time to time of encouraging joint stock companies, by giving great facilities for the transfer of shares, which, of course, is a great encouragement to people to enter into companies of this kind, if they are disposed to enter into them at all. One encouragement the Legislature has given is, that of persons being able, on parting with their shares, to relieve themselves, as far as the Legislature allows, from liability in respect of those shares. In the several Joint Stock Companies Acts which preceded the Act of 1862, provisions seem to have been made which recognised, far more distinctly than this Act appears to do, or than the framers of it appear to have desired to do, the analogy of a member of a company to a member of a partnership, and which did make, as it appears to me, a more accurate provision for the distribution of the contributions of its members.

However, when we come to this Act we can only deal with it as we find it, and must act expressly according to the provisions which it contains. Some construction, of course, must be given to those words which say that the old members, the past members, the members classed in the B list, who have parted with their shares within a year anterior to the winding-up of the company, and who are therefore not placed upon the A list, although they have to contribute in some shape or way, yet are not to contribute until all the A list has been exhausted, and are not to contribute to the assets in respect of any debt which may have accrued since they ceased to be members. I apprehend that it is very difficult to give any construction to those words, and I shall be very cautious in all I say upon the subject, inas-

© 2011 Thomson Reuters.

much as I would rather confine myself to the express point we have before us, than enter into any speculation as to what may or may not be the construction of the **\*720** Act in other respects. But with reference to Brett's Case 12 , which was brought before me sitting with the present Lords Justices, and upon which we pronounced an opinion, or a decision, I still continue of the same opinion as far as that is concerned, that you cannot, directly or indirectly, compel the B shareholders to make any contribution to the assets of the company in respect of, or on account of, any debts that may have accrued since they ceased to be members of the company. In other words you must, as regards them, in raising contributions from them to the assets of the company, whatever you may have to do as regards the costs of the winding-up (that is a matter to be considered hereafter), put wholly aside the amount of debt, whatever it may be, that has accrued since they ceased to be members. You have only to consider the debts that existed at the time of their being members, and if those debts are paid, then there is no liability upon them whatever, except as to any possible question that may arise as to the costs. And if they guarantee or secure the company against the debts owing when they ceased to be members (which was the case we had before us), by purchase or otherwise, then they remove out of the way the whole matter (subject to the question of costs) in respect of which they have at all to contribute.

But, my Lords, it does not appear to me at all to follow as a consequence from that, that because their contribution is limited, in the first place, to the extent of the unpaid money due upon the shares which they have transferred, after you have exhausted the means of their transferees and all other A shareholders, and they have to pay in to the fund only that which may be due from them in respect of debts owing at the time they ceased to be members, therefore, what they do so pay in is necessarily to be applied in payment of those debts only which existed at the time they were members. For although it may seem a somewhat singular provision that their liability shall be so limited, and yet that the money they pay in shall not be applied in the direction in which the limitation of their liability would seem to point; yet, on the other hand, looking to the clauses of the Act of Parliament carefully, you find that no mention is made of anything but the assets of the company in a general form. The assets of the company of course **\*721** include all contributions which you are entitled to raise from the members, and these B members are liable to contribute in respect of all the shares they had parted with, in so far as those shares are not paid-up shares, or in so far as the A contributories have not been able to raise funds sufficient for the payment of all the debts of the company. When that is done, a common fund is formed, and you find no direction in the Act whatever, except for the distribution of the common fund so formed.

Then let us see what that distribution is. That distribution is only among all the creditors of the company, without any distinction of class between them. Of course reasons might be given for this, and one must assume that there were reasons for the Act being framed in this way. The Act was so framed as to say, You, the B contributors, shall stand as sureties, as it were, for the company to the public, that is, to those who are dealing and trading with this company; you shall stand as sureties for the formation of a fund towards the payment of the debts, by means of the payments required from you in respect of the shares which you have only parted with within a year. It shall be your business to see that you part with them only to persons of sufficient means to be able to meet the debts which may become due in the course of the year. If you do not do that you shall stand as sureties at least to the extent of making good what may be due upon those shares, or at least to the extent of making it good in respect of all debts that existed while you were a member. We shall not call upon you to remain liable for debts contracted after you parted with your shares, for that would very much indeed depreciate the advantage of being able to part with the shares. We will not call upon you to answer for all that happened after you ceased to have a control er the

© 2011 Thomson Reuters.

09-50026-mg Doc 12469-14 Filed 07/11/13 Entered 07/11/13 19:38:32 Index No 13 Pg 8 of 18

(1871-72) L.R. 5 H.L. 711 Page 7
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

expenditure of the company; but we will say, to the extent of the debts owing at the time you left the company, you shall make good the payment as far as the shares you once held are concerned, and as far as the debts are concerned which you were liable for at the time you left the company. There may be reasons for saying that, without going on to say that the assets which you so pay are to be appropriated only to the payment of the particular debts due to those creditors who were creditors at the time you ceased to belong to the company. They have not chosen **\*722** to call in those debts, they have taken their chance of the solvency of the company as long as it should continue to exist, and there is nothing irrational, at all events, in saying to them, You must come in for a share of the results of the calamities which have befallen the company in common with all the creditors of the company who were creditors at the time of the winding-up, without having any special preference given to you in respect of those sums which have been contributed by persons who were members of the company at the time you became creditors. There is no necessary reason why, unless it is expressly so stated in the Act, a distribution should be made to them from the fund contributed by the B shareholders in preference to the remaining creditors who became so subsequently to the retirement from the company of the B shareholders.

What has satisfied my mind most is, that there is no machinery provided for that purpose in the Act. I do not think that is so wholly conclusive as it appeared to be considered by the learned counsel in the course of the argument, for one reason, namely, that there must be some sort of machinery provided, I apprehend, in whatever way the Act is construed, with regard to the shareholders who cease to be shareholders at different times. Because shareholders of Class B, who cease at different times to be members of the company, are, each of them, to be exempted from contributing in respect of any debts that were contracted after they left—and you might go through all the letters of the alphabet, and say *X.* ceased to be a member at one time, *Y.* at another time, and *Z.*, again, at another time—there would be a different amount of debt due at the time of each of those persons ceasing to be a member, and there would, therefore, be a different amount in respect of which each of them respectively would have to contribute. That question may have to be disposed of hereafter. I cannot say that I think the Act extremely easy of construction under any circumstances whatever; but I think I can see my way to this, that there is no special charge given upon the particular assets contributed by the B shareholders to those who were creditors at the time the B shareholders were members of the company, but who continued to be creditors afterwards, and allowed their debts to remain unpaid until the common disaster came, and who, as it appears to me, can only dip into the common **\*723** reservoir which is to satisfy the claims of all those creditors unpaid at the time of the winding-up. I think the mistake has been to consider that because, on the one hand, the liability of the B shareholders is limited by the debts owing by the company at the time of their ceasing to be shareholders, therefore, on the other hand, the amount which they contribute must be paid to those persons only who were creditors of the company at the time of their ceasing to be members of it, and who so continued until the winding-up.

I think, therefore, that the judgment of the Lords Justices, affirming the decision of the Vice-Chancellor, is correct, and that being so, that this appeal must be dismissed with costs.

LORD CHELMSFORD:—

My Lords, the question raised by this appeal is, whether the contributions received from contributories in Class B (that is, from persons who have not ceased to be members of the company for a period of one year prior to the commencement of the winding-up of the company) are to be appropriated exclusively to the satisfaction of the debts contracted whilst they were members of the company, or to form part of the assets of the company, to be applied generally in liquidation of all the debts due at

© 2011 Thomson Reuters.

the time when the winding-up commenced. This question cannot be determined upon any principles derived from the ordinary law of partnership; the answer to it is only to be found in the provisions of the Companies Act, 1862.

In examining the few sections of the Act which apply to the case, it will be seen that they do not deal with the rights of creditors, but regulate and limit the liabilities of shareholders of the company. It is necessary to advert to this, because it is the creditors who are here contending that the liquidators ought to be directed to divide the contributions received from the B contributories amongst such only of the unpaid creditors of the corporation whose debts were contracted before the respective times of such contributories ceasing to be members of the corporation. The 38th section of the Companies Act, 1862, enacts, that "in the event of a company formed under the Act being, wound up, every present and past member of the company shall be liable to contribute ***724** to the assets of the company to an amount sufficient for the payment of the debts and liabilities of the company, and the costs, charges, and expenses of the winding-up, and for the payment of such sums as may be required for the adjustment of the rights of the contributories amongst themselves." Nothing can be more general than these words, embracing, as they do, all present and past members, and rendering them all liable to contribute to the assets of the company, not to be applied differently with any reference to the two classes of shareholders, but, as to both past and present members, to the payment generally of the debts and liabilities of the company.

In the different sections which speak of the liability of the contributories, the expression used is, "to contribute to the assets of the company," as towards a common fund to be afterwards applied in the manner directed. The 133rd section enacts that the property of the company shall be applied in satisfaction of its liabilities *pari passu*. The word "property" means the same thing as "assets" of the company, and, as Lord Justice *James* says, in Morris's Case 13 , the company's assets include all the unpaid capital recoverable from the shareholders. The past shareholders, therefore, are liable to contribute to the assets of the company, to the extent of the amount due upon their shares, towards satisfaction of its liabilities *pari passu*.

But this liability of a past shareholder is limited in the 38th section of the Act by the three following (amongst other) qualifications: 1st, when he has ceased to be a member for a period of one year or upwards prior to the commencement of the winding-up; 2nd, he is not to be liable to contribute in respect of any debt or liability of the company contracted after the time at which he ceased to be a member; 3rd, nor unless it appears that the existing members are unable to satisfy the contributions required to be made by them in pursuance of the Act. The difficulty in the case arises upon the second qualification of a past member's liability. What is the meaning of his not being liable to contribute in respect of any debt or liability contracted after the time at which he ceased to be a member? By the preceding part of the 38th section a past as well as a present member is made liable to ***725** contribute to the assets of the company for payment of its debts and liabilities; and by the 133rd section the property (which we have seen includes the sums due from the shareholders) is to be applied in satisfaction of the liabilities *pari passu*.

There is no marshalling (as it has been improperly called), by the Act, of the contributions of the past members to the payment of the creditors who were such before they left the company, nor are the creditors distinguishable from the rest as creditors of the past members, but all the contributions of both the present and past members are to be carried to a common fund called the assets of the company, and to be applied in satisfaction of the debts and liabilities, not of the members, but of the company. The liability of a past member to be placed upon the list of contributories must be determined in the case of a voluntary winding-up at the time of the resolution authorizing such winding-up. If at that time there

© 2011 Thomson Reuters.

09-50026-mg    Doc 12469-14    Filed 07/11/13    Entered 07/11/13 19:38:32    Index No 13
          Pg 10 of 18

(1871-72) L.R. 5 H.L. 711                                                                                                    Page 9
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

are any debts and liabilities existing which were contracted while he was a member, he appears to me to be made liable by the Act to contribute, not specifically to the payment of those debts and liabilities, but to the assets of the company, to be applied generally in payment of its debts and liabilities. If at the time of the commencement of the winding-up there were no debts or liabilities of the company but those contracted after the time at which he ceased to be a member, the past member would be free from liability to contribute to the assets of the company. But when once upon the list of contributories upon the ground of the existence of unsatisfied debts and liabilities which were contracted while he was a member, I confess that I am unable to see how any dealing with those debts and liabilities, even to the extent of extinguishing them, can discharge a liability to contribute to the assets of the company which had already attached upon him. The argument of the learned counsel for the Appellants failed to establish the analogy between the statutory liability of a shareholder in a company and of a partner in an ordinary partnership, and also the alleged right of the Appellants to have the past members' contributions applied to the payment of their debts in preference to the other creditors. The liability created by the Act is entirely different from that which exists amongst partners, either inter se or with relation to creditors; and the Act, in dealing **\*726** with past members of a company, regulates only their liabilities, and makes no provision for the adjustment of the rights of the creditors of the company as to them.

With respect to the costs, charges, and expenses of the winding-up of the company, there appears to me to be no difficulty. These costs, charges, and expenses are to be payable out of the assets of the company in priority to all other claims. The official liquidator must make calls upon both classes of shareholders to an amount in his judgment sufficient for payment of all the liabilities. The calls upon the existing shareholders are to be first applied in payment of the costs, charges, and expenses of the winding-up. If the amount called for to the whole extent of the liability of this class of shareholders, or their ability to satisfy the calls, is insufficient for this purpose, then, and then only, the past members can be required to contribute, so that there can be no apportionment between these two classes of shareholders with respect to their liability upon this ground. In this case, and also with respect to the payment of the debts and liabilities, the past members of the company are liable only in the event of the existing members being unable to satisfy the contributions required to be made by them in pursuance of the Act.

I think the order appealed from must be affirmed, and the appeal dismissed with costs.

LORD WESTBURY:—

My Lords, this appeal is an attempt to derive from certain clauses in an Act of Parliament relating to joint stock companies (the Consolidating, Act of 1862), which are applicable only to the shareholders or partners in a company, and regulate the rights and liabilities inter se of those partners, a special conclusion, having the effect of appropriating a particular fund to the payment of a preferential class of creditors. Now that would be an entire abuse of the Act. The Act was not intended for any such purpose, nor is any such conclusion legitimately to be derived from it. The Act of Parliament was framed, not with reference to the creditors particularly, but with reference to the rights of the shareholders in partnerships of a more extended character.

By the ordinary law of partnership, as it existed previously to **\*727** these Acts of Parliament, which originated, partially, a long time ago, but which are now consolidated in the existing Act of 1862, two things could not be done. In the first place, a partner could not transfer to another person his share in the partnership. Even if he attempted to do so with the consent of the other partners, it would not be a transfer of his share, it would be in effect the creation of a new partnership. Secondly, by the ordinary law of partnership a partner remains subject to the whole extent of his fortune to the liabilities con-

© 2011 Thomson Reuters.

tracted by the partnership. The Legislature thought that those difficulties in the way of company partnerships ought to be removed, and accordingly set to work in order to create conditions under which a partner in a company might have the power of transferring his share and making the transferee a member of the company or partnership in which he previously stood as a member. Thirdly, the Legislature desired to give the power of limiting the liability of partners, and that was done by one or the other of two or three modes, but ordinarily by making the liability of a partner extend only to the share that he took in the company or partnership which was formed under the Act. But then it became necessary to impose certain conditions upon the right of transfer; because of course it was felt that it would be impossible to permit a man to leave a company that was in a state of insolvency, and to exempt himself from all future liability.

The 38th section of the Act of 1862 is addressed entirely to the last named difficulty, and it is impossible, consistently with justice, to arrive at any conclusion that it is to be applied to a purpose which it did not at all contemplate or think of; and which would be repugnant to other parts of the Act, namely, the purpose of creating, by the rules given touching the liability of past members, a peculiar fund that should be applied exclusively in favour of those creditors who were creditors at the time when each transferring partner left the partnership. The limitations which the Legislature imposed were these:—A man making a transfer at a time which does not precede by a twelvemonth the order for winding up, or the voluntary agreement to wind up the company, shall remain to a certain extent liable; but, then, the extent of that liability can only be measured with reference to the general **\*728** enactment that the existing members of the company (that is, the members of the company *minus* the retiring and transferring partners) shall be first resorted to for the payment of the debts. I apprehend there is no difficulty about the matter, if you will only take the 3rd sub-section of the 38th section, and apply it first, before you come to the second sub-section, which is not happily worded, and which ought to be read as an affirmative proposition, instead of being expressed, as it is now, in negative words.

The 3rd sub-section directs that the existing members shall be first exhausted. Now, exhausted for the benefit of whom? Exhausted for the benefit of all the existing creditors of the partnership. Now, all the existing creditors are creditors whose debts remain unsatisfied, no matter at what time they were contracted. The existing creditors, therefore, who are thus to be regarded with reference to the liability of the existing partners, will be those creditors who remain unpaid, whatever may be the date of their debts, whether they are debts contracted within the last year, or whether they are debts contracted many years ago. The consequences of that direction must be attended to, and they appear to me to remove all possible difficulty. The direction is this:—You will apply all that you can get from the existing members in payment of the existing debts, no matter of what date. If, after you have done that, there remain debts unsatisfied, so that you have to resort to the members who have passed away from the company within a year, then you will be compelled to classify the residuum of the debts so remaining, and ascertain what part of that residuum is to be attributed to past debts; that is, to debts which pre-existed the transfer made by past members, and what portion is to be attributed to the new debts which have arisen subsequently to the date of the last transfer. When you have ascertained the proportion which is attributable to debts which existed when the transfers were made,—then, if there have been several transfers within the year, you will be compelled of necessity to subdivide that portion of the residuum into several portions, according as you find that transfers have been made within the past year. It would be impossible to escape from that difficulty. It is not a difficulty, I think, which, in practice will be found to be of any **\*729** magnitude. It exists only in words, when you have, in an abstract form, to express the rule of distribution.

© 2011 Thomson Reuters.

(1871-72) L.R. 5 H.L. 711
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

09-50026-mg    Doc 12469-14    Filed 07/11/13    Entered 07/11/13 19:38:32    Index No 13
Pg 12 of 18

Page 11

Now, my Lords, that renders the matter perfectly clear, and it is impossible to give to the older creditors any preferential claim, for this plain reason, that they have, with the new creditors, all been admitted to share and to take a portion of the contributions to the uttermost that were obtainable from the existing members. First of all there is a joint stock fund created out of the contributions of the existing members, and that is divided pari passu among all the creditors without regard at all to the date of their debts. The older creditors of the partnership having come in to participate in that fund, it is impossible for them afterwards to claim the benefit of any rule of distribution which would give them anything like a preferential right to a particular portion of the assets remaining still to be distributed.

The whole of this misapprehension and mistake appears to have arisen from the construction put by the Appellants upon the second sub-section, which says: "No past member shall be liable to contribute in respect of any debt or liability of the company contracted after the time at which he ceased to be a member." The Appellants have read that in this way—they say it provides that the fund that shall be created by the contributions of past members shall be limited only to the amount of the debt existing at the time when the transfer was made by them; and then they say that excludes all the new creditors, and if the fund is to be created with the exclusion of the new or subsequent creditors, of necessity that fund must belong to the older creditors who existed when the B shareholders left the company. But it is in reality only a limitation of the liability of the past members to contribute. The Act of Parliament has the effect of creating two limits of liability. The limit of the liability of the existing members will be the full extent of the shares held by those members in the partnership. The limit of the liability of the past members is the amount of the debts existing at the time of the transfer made by each, subject, of course, to this, that no past member shall be bound to contribute more than to the extent of the shares held by him and transferred by him. The effect of the Act, therefore, is to create two classes of contributories by a minor subdivision, namely, those who *730 contribute to the full extent of the shares held by them, and who, under clause 3, must be first exhausted, and those who are bound to contribute to the extent of (for that is the effect of the words "in respect of") the debts or liabilities of the company existing at the time of the transfer. If you convert the negative proposition contained in the second sub-section into an affirmative proposition, which is the result of the whole of the enactments, although I think it might have been much more happily expressed, there is no difficulty at all in the working of the rule given by this 38th section.

But, as I said repeatedly during the argument, all that we have judicially to do now is to declare whether we can or cannot assent to the proposition of the Appellants. They applied to Vice-Chancellor *Stuart* that it might be declared that the contributions received from persons who were past members, should be divided, exclusively, amongst those creditors of the company only whose debts were contracted before the times of such past members ceasing to be members; that is to say, among creditors claiming, *proprio jure*, under the words of the Act, a right to have that portion of the common fund appropriated exclusively to the payment of their debts. Now, there is nothing in the language of the Act to give a *locus standi* to any creditors for the purpose of maintaining such a proposition. There is nothing in the Act which, either expressly or by any kind of implication, gives them that right. There is nothing either in the Act, or in the machinery for distribution which it creates, that would enure to give this class of creditors any such right. It would be impossible for this class of creditors, who have been compelled to come in and participate in the first fund, which is created by calls on the existing members, to insist, after they have had that participation, that still there shall be appropriated to them alone this second portion of the fund, and that they shall be entitled to claim payment of their own debts out of it to the exclusion of the other creditors.

© 2011 Thomson Reuters.

09-50026-mg Doc 12469-14 Filed 07/11/13 Entered 07/11/13 19:38:32 Index No 13 Pg 13 of 18

(1871-72) L.R. 5 H.L. 711 Page 12
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

The object of the Act of Parliament was to give a limit to the liability of members who had transferred their shares within a definite time, and that liability takes the place of the old liability, which would be a liability limited to the amount of their shares only. Therefore there are now two sets of contributories, one called Class A—that is, all the existing members the limit of **\*731** whose liability is the amount payable upon their shares—and another class, which is to be resorted to only in the event of the contributions of the existing members not being sufficient to answer all the purposes; and if they are resorted to, they are bound to contribute, but with a different limit of liability, namely, the amount required to satisfy the debts existing at the time when they retired from the partnership.

Under these circumstances, my Lords, I think the appeal has been founded altogether upon a groundless misinterpretation of the Act of Parliament, and that the appeal, therefore, must be dismissed with costs.

LORD COLONSAY:—

My Lords, I am of opinion that the contention of the Appellants here, the B creditors, is not supported by the provisions of the Act of 1862, whether read by itself or read in the light of the previous enactments regarding joint stock companies; and in particular I am of opinion that the 38th section, upon which the argument was mainly founded, is a section which is intended to regulate the measure of liability of those members of the company who have retired within a year. The difficulty which arises upon that section seems to me to centre in the words of the 2nd sub-section. Those words are not happily expressed, but I think they are not words from which the Appellants can deduce the inference which they seek to deduce from them; for I think that that sub-section, like the other portions of sect. 38, is intended to give one of the measures of the liability of the members who have retired. There is a difficulty in understanding it, for it is not very accurately expressed; but I think it gives no support to the contention of the Appellants. I am far from saying that there may not arise under it practical difficulties in regard to the sums obtained from the several members who have retired at different periods, in measuring the amount of the debts due at the periods when each of them retired. That is a practical difficulty, but it is altogether away from the question we are now considering, which is, whether the B creditors constitute a preferential set of creditors, entitled to take to themselves the money derived from the B members of the company. I am of opinion that the **\*732** judgment appealed from ought to be affirmed, and that the appeal should be dismissed with costs.

LORD CAIRNS:—

My Lords, it is peculiarly necessary in this case to bear in mind what is the precise point which is brought before your Lordships for decision. The Appellants state it in this way. They seek that the liquidators of the company may be directed to divide the contributions received from persons settled on the B list of contributories among those of the unpaid creditors of the company only, whose debts were contracted before the respective times of such contributories ceasing to be members of the corporation. Your Lordships, therefore, observe at once, that there is no controversy as to the settlement of the list which is called the A list of contributories, namely, the existing members of the company. There is no controversy as to the settlement of the list which is called the B list, namely, the ex-members of the company. There is no controversy as to the inability of the contributories on the A list to satisfy the demands which were justly made upon them, and there is no controversy that the call which has been made upon the ex-members on the B list has been the proper amount or quantum of call. These matters are all removed out of the range of controversy or dispute.

The only question which your Lordships have to determine is, what is to be done with the money which has been levied as contribution from the ex-members on the B list? Is that money to go into the common fund of the company, or is it to be segreg-

© 2011 Thomson Reuters.

ated and set apart for the purpose of paying the particular class or classes of creditors who existed as creditors at the time or times of the retirement of the ex-members?

Now, my Lords, in approaching the consideration of that question, the first observation which naturally occurs upon the contest of the Appellants is this: If they are entitled to the advantage which they desire, namely, to have these contributions from the B list applied in payment of their debts in particular, that advantage has arisen from a simple accident; the accident, namely, that the contributories upon the A list have been unable to satisfy the whole of the contribution which was required of them. The advantage ***733** has not arisen by contract, or by stipulation of any kind. If the contributories on the A list had been able to satisfy the full amount of the contribution which was required of them, it is not denied by the Appellants that those contributions must have been divided rateably among all the creditors of the company, old and new, without any distinction whatever.

The second observation, which occurs at the outset, as proper to be made upon the contest of the Appellants, is this: It is not in dispute but that the Appellants are entitled to receive, and possibly have received, a rateable dividend along with all other creditors out of the fund which has been contributed by the members upon the A list. What they ask for, therefore, is something over and above that dividend which they and all the other creditors have received; they ask to have that other and greater dividend in preference to all whom I may term the modern creditors of the company. They, therefore, contend that the effect of the liquidation, the effect of the circumstance that the company is now being wound up, is such that it has given to the Appellants a preferential debt, whereas before the winding-up most clearly their debt was in no sense a preferential debt against the company. Before the winding-up the Appellants could not have affirmed of their debt that they had taken any particular security for it, or that they had contracted that, as between various portions of the capital of the company, their debt should stand in a better position than any other debt. So long as the company was going on up to the time of the winding-up order, beyond all doubt the debts would have been paid *pari passu*, and no creditor would have been able to affirm that he was in a better position than another creditor.

Your Lordships are quite familiar with the fact, that in many cases where you have to administer assets upon an insolvency, or upon a liquidation, claims which before the administration of the assets were preferential are cut down and deprived of their preferential quality or attribute. But I own that it is entirely new to me to hear an argument that the effect of liquidation, which is ordinarily to cut down preferential claims, is to make a claim, which before liquidation was not preferential, emerge into a preferential claim, and assume a quality which it never possessed before. This is a result of the argument of the Appellants, which is so startling ***734** that it would induce your Lordships, I think, to pause, before that argument could be admitted.

It appears to me that the argument of the Appellants, which was urged with great ability and force, is founded altogether upon a fallacy, the statement of which removes every difficulty out of the case. The Appellants proceed upon the assumption that they are entitled to establish a direct relation of creditor and debtor between themselves and certain members of the company. Now, I understand the whole scheme of the Act of 1862 to be entirely at variance with any theory of that kind. As I understand that Act, the relation of creditor and debtor which is established by the Act is established only with regard to that which is the common fund or capital of the company. It was always the habit in ordinary partnerships, and it was the habit in previous Acts, or in almost all previous Acts of Parliament, to constitute more or less of a direct relation between the creditor and the debtor, between the creditor and the particular individual shareholder in the company. In some of the former Joint Stock

© 2011 Thomson Reuters.

09-50026-mg Doc 12469-14 Filed 07/11/13 Entered 07/11/13 19:38:32 Index No 13 Pg 15 of 18

(1871-72) L.R. 5 H.L. 711 Page 14
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

Companies Acts, even although the process had to be taken in the first instance against the company, the creditor was afterwards allowed to take out execution under certain qualifications against an individual shareholder, and in that way, to constitute a direct relation between himself and the individual shareholder. But by the Act of 1862 that state of things is entirely swept away. A capital is created, sometimes limited, sometimes without a limit; but that capital is to be made good in the shape of a common fund, and that common fund it is which is to be the source of the payment of every creditor of the company. And although it is quite true that members and ex-members of the company are placed by the Act under liability, that liability is a liability, not to make payments to creditors, but it is a liability to contribute to and make good what should be the proper amount of the common fund. Then, having got into the common fund every sum which ought to be contributed to it by every person whomsoever, the Legislature takes possession of that common fund, and proceeds to distribute it amongst the creditors of the company.

My Lords, this would be made very clear, I think, by merely reading the 133rd section of the Act of Parliament. It is quite *735 true, as has been observed, that that 133rd section applies to the case of a voluntary winding-up only; but your Lordships will observe, in looking at this Act of Parliament, that it has been thought, and very naturally thought, important in the case of voluntary windings-up to make specific provisions, and to give specific directions as to matters which were supposed to be so plain, and so necessarily consequential upon the general scheme of the Act, that in a winding-up under the order of the Court it was not thought necessary to give express directions upon these matters of detail. An illustration of that might be found in the way in which the provision to be made for costs is dealt with by the same Act of Parliament. In the case of a voluntary winding-up there is an express direction that the costs shall be paid, in the first instance, out of the moneys contributed, that is out of the common fund. In the case of a winding-up under the order of the Court there is no such provision, it being, I suppose, presumed that the Court would see that the justice of the case required that, in the first instance, the costs of winding-up ought to be paid. So, also, with regard to the distribution of the assets, we have this direction given to the liquidators under a voluntary winding-up, who were not, therefore, acting directly and constantly under the orders of Court (and the company now before your Lordships is a company under voluntary liquidation):

"The following consequences shall ensue upon the voluntary winding-up of a company: The property of the company shall be applied in satisfaction of its liabilities *pari passu.*"

Now, I ask the question, are the contributions to be made by the ex-members the property of the company or are they not? Can it be contended for a moment that they are not? Whose property are they, if they are not the property of the company? Is there anything in this Act of Parliament which makes them the property of any other person but the company? It appears to me, my Lords, beyond all doubt, that all unpaid calls, whether from members or from ex-members, are part of the property and the assets of the company; and I certainly cannot read this section as we were told it had been read, as meaning by "the property of the company" the property in specie in the office, or the warehouses, or the stores of the company, at the time of the winding-up, as *736 distinguished from the credits of the company, or the funds coming to the company in respect of unpaid capital. The 133rd section, therefore, my Lords, entirely supports the general theory which I have ventured to submit to your Lordships as the theory upon which the Act of Parliament is framed.

But, then, we were told that the argument of the Appellants was to be supported upon the 38th section of the Act. Now it is necessary to observe that the 38th section consists of two parts. The first part is the affirmative part of the section, which lays down the general principle, that contributions shall

© 2011 Thomson Reuters.

come, so far as is necessary, both from members and from ex-members of the company. And it is worth while observing, although it is by no means an observation which is conclusive of the argument, that this 38th section is headed as a separate division of the Act by the words, "Liability of Members," as if its entire object was to define the amount of liability of members; whereas the *fasciculus* of clauses which commence with the following section, the 39th, is headed in a manner altogether different, namely, "Provisions for Protection of Creditors." It is under these provisions that you would expect to find arrangements made for the special protection of creditors, and not under the 38th section.

Now, the 38th section, applying itself to the liability of members of companies, says: "In the event of a company formed under this Act being wound up, every present and past member of such company shall be liable to contribute to the assets of the company to an amount sufficient for payment of the debts and liabilities of the company, and the costs, charges, and expenses of the winding-up, and for the payment of such sums as may be required for the adjustment of the rights of the contributories amongst themselves, with the qualifications following." Now the observations which naturally arise in one's mind upon that part of the section are these: In the first place, the contribution here spoken of, which is to be a contribution not merely by present, but by ex-members, is to be a contribution not to particular creditors, but to the assets of the company. The second observation is this, that the contribution is not to be merely a contribution for payment of debts and liabilities, but it is also to be a contribution for payment of the costs, charges, and expenses of the winding-up. And the third **\*737** observation is this: that all the subsidiary enactments which occur in the latter part of the clause are here described as "qualifications," namely, qualifications upon the general liability which is here established, that is to say, some enactments which are to be in diminution or restriction of that general liability, and not enactments for the purpose of creating new and separate rights in creditors.

My Lords, I do not dwell upon these qualifications, the meaning of which is perfectly obvious. There is a period of a year, during which alone an ex-member is to be liable. There is a protection to ex-members in this, that it must be first ascertained that the existing members are unable to satisfy the contributions required to be made by them. I only observe upon that, that it is not that you are to wait until the assets raised from the existing members are exhausted, but you are entitled to act the moment it appears to the Court that the existing members are unable to satisfy the contributions required of them. There is also the qualification that in a limited liability company there is no contribution to be required either from a present member or an ex-member exceeding the amount of capital unpaid upon his share. Upon these qualifications no question can arise.

The second qualification, which is supposed to have created the difficulty, is this: "No past member shall be liable to contribute in respect of any debt or liability of the company contracted after the time at which he ceased to be a member." Now, there I ask the question, contribute to what? For upon the answer to that question it appears to me the solution of the whole difficulty depends. Does it mean contribute to the payment of a particular creditor, or a particular class of creditors? Surely not. "Contribute" there is used without the words that follow it in the general enactment at the commencement of the section, namely, to contribute to the assets of the company. Therefore I read the second sub-division of the section as if it stood thus: No past member shall be liable to contribute to the assets of the company in respect of any debt or liability of the company contracted after the time at which he ceased to be a member. Then I find the whole section is harmonious. There are series of limitations upon liability. The liability is a liability to contribute to the assets or the common **\*738** fund of the company. To that fund the contributions must be made. The contribution is to be governed by

© 2011 Thomson Reuters.

(1871-72) L.R. 5 H.L. 711 Page 16
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

09-50026-mg    Doc 12469-14    Filed 07/11/13    Entered 07/11/13 19:38:32    Index No 13
Pg 17 of 18

these qualifications. No new destination is given to the money to be contributed, but that money is to be applied under the 133rd section pari passu amongst all the creditors of the company.

Now, we were pressed very much with this question: but how is the official manager to adjust and define the sum he is to call for from the ex-members of the company? My Lords, I think it is important that it should be borne in mind that any opinion that your Lordships, or any of your Lordships, might express upon this subject, cannot upon this appeal become the order of the House, and cannot, therefore, have the effect of a decision of that question; and in many respects I should have desired not to express even a passing opinion upon the subject, because if it should ever hereafter come in controversy, and be brought before your Lordships, I desire that it should come perfectly unaffected as regards any decision of this Mouse by any extra-judicial expression of opinion which may now take place. I own that, as at present advised (but I repeat that it is entirely open to a reconsideration of the question), I see little or no difficulty in the matter. It appears to me that where the official liquidator, acting under the Court, has ascertained that the existing members are unable to satisfy the contributions required of them, he has then to make a call upon the ex-members, but in making that call he must observe and pay attention to the debts which were in existence at the time each particular ex-member ceased to be a member, and he must disregard the debts which were incurred after that time. Of course the debts to which he must have regard would be old debts continuing to be debts up to the time and at the time of the winding-up.

It was said that this view of the Act of Parliament would be at variance with two decisions of the Court of Chancery, the decision in Brett's Case 14 , and the decision in Morris's Case 15 . Now Brett's Case was a case of great peculiarity. The circumstances in it probably had never occurred before, and possibly may never occur again. I should be unwilling to express any opinion as to whether;

having regard to the peculiarity of those circumstances, that decision could or could not be made to agree with the view which **\*739** I understand the majority or all of your Lordships to entertain on the present appeal. I will only say this about it. It appears to me that there were two points which did not receive, either in the argument, or in the judgment in Brett's Case 16 , the consideration to which I think they were entitled. One of those points was the liability of ex-members to provide for the costs of the winding-up, whether they were past debts, old debts, in respect of which they were liable, or not. The other matter to which I think sufficient attention was not paid was the question whether the debts in respect of which contributions could be called for from ex-members are not what I have called "old debts," subsisting at the date of the winding-up, and whether anything done with regard to those debts after the date of the winding-up could affect or diminish the liability which had once accrued upon the ex-members.

My Lords, with regard to Morris's Case 17 , I own I think the determination of that case cannot subsist with the determination at which your Lordships seem now likely to arrive on the present appeal, and I myself think that the decision in Morris's Case proceeded upon a construction of this Act of Parliament which I am unable to accept.

I therefore concur with your Lordships in thinking that this appeal should be dismissed. In a case of considerable difficulty there might be, under other circumstances, some ground for submitting to your Lordships that the general rule of dismissing an appeal with costs should not apply; but I own that I think that in the present case these Appellants have had at least as much favour shewn to them in the matter of costs as they are entitled to, because I find that the decision of the Vice Chancellor was against them, and the decision of Lord Justice *Giffard* was against them, and yet in both of those Courts their costs were paid out of the assets of the company. They then obtained, after the time for appealing had elapsed, a special leave to appeal, and they appear

© 2011 Thomson Reuters.

09-50026-mg    Doc 12469-14    Filed 07/11/13    Entered 07/11/13 19:38:32    Index No. 13
Pg 18 of 18

(1871-72) L.R. 5 H.L. 711                                                                                    Page 17
(1871-72) L.R. 5 H.L. 711 (1871-72) L.R. 5 H.L. 711
**(Cite as: (1871-72) L.R. 5 H.L. 711)**

also to have obtained an order restraining the payment of any farther dividends to the creditors of the company (although a farther dividend had been declared, and was ready to be paid) until the result of this appeal should be ascertained. They have, therefore, I should think, been the cause of very considerable **\*740** inconvenience and expense in the liquidation of this company, and I think, having had upon two occasions decisions against them, and yet having had on each occasion their costs allowed them out of the assets of the company, there is no course now open to your Lordships but to dismiss this appeal with costs.

---

1. Law Rep. 5 Ch. Ap. 428, nom. Re Accidental and Marine Insurance Corporation.

2. Law Rep. 6 Ch. Ap. 800.

3. Law Rep. 5 Ch. Ap. 428.

4. Law Rep. 7 Ch. Ap. 200.

5. Law Rep. 6 Ch. Ap. 800.

6. Law Rep. 6 Ch. Ap. 800.

7. Law Rep. 4 Eq. 458.

8. Law Rep. 3 Ch. Ap. 161.

9. Law Rep. 6 Eq. 509–511.

10. Law Rep. 5 H. L. 31.

11. Law Rep. 6 Ch. Ap. 800.

12. Law Rep. 6 Ch. Ap. 800.

13. Law Rep. 7 Ch. Ap. 204.

14. Law Rep. 6 Ch. Ap. 800.

15. Law Rep. 7 Ch. Ap. 206.

16. Law Rep. 6 Ch. Ap. 800.

17. Law Rep. 7 Ch. Ap. 200.

END OF DOCUMENT

© 2011 Thomson Reuters.