**HEARING DATE AND TIME: August 1, 2013 at 10:30 a.m. (Eastern Time)**
**FILING RELATES TO: Docket No. 12463**

James B. Helmer, Jr., PHV
Helmer, Martins, Rice and Popham
600 Vine Street
Suite 2704
Cincinnati, Ohio 45202
Telephone: (513) 421-2400
Facsimile: (513) 421-7902

*Attorney for Roger L. Thacker,*
*Roger L. Sanders, and Thomas J. Hanson*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | : | Chapter 11 Case No. |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corp., *et al.* | : | 09-50026 (REG) |
| Debtors. | : | (Jointly Administered) |

**OPPOSITION MEMORANDUM OF ROGER L. THACKER, ROGER L. SANDERS, AND THOMAS J. HANSON TO GUC MOTION TO COMPEL MANDATORY MEDIATION OF CLAIM NO. 27105 (DOC. 12463)**

**TABLE OF CONTENTS**

Claim No. 27105. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The False Claims Act.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Claimants Are Not in Violation of Any Court Order.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Claim 27105 is Excluded from the ADR Procedures by the Plain Language of this Court's October 25, 2010 Order, which Remains in Force. . . . . . . . . . . . . . . . . . . . . . . . . . 6

GUC Trust has not Demonstrated a Willingness to Reach a Consensual Resolution of the 27105 Claim.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## TABLE OF AUTHORITIES

**CASES** **PAGE NO.**

*Allison Engine Co., Inc. v. United States ex rel. Sanders*,
553 U.S. 662 (2008), *superseded by statute as recognized in United States ex rel. Sanders v. Allison Engine Co., Inc.*, 703 F.3d 930 (6th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*In re Cardiac Devices Qui Tam Litig.*,
221 F.R.D. 318 (D. Conn. 2004), *rev'd in part and remanded*, *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263 (2d Cir. 2006). . . . . . . . . . . . . . . . . 4

*Cook County Ill. v. United States ex rel. Chandler*,
538 U.S. 119 (2003).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Mason v. Medline Indus.*,
No. 07 C 5615, 2010 U.S. Dist. LEXIS 15260, (N.D. Ill. Feb. 18, 2010). . . . . . . . . . . . . . . 4

*Timson v. Sampson*,
518 F.3d 870 (11th Cir. 2008), *cert. denied*, 555 U.S. 840 (2008). . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Brooks v. Lockheed Martin Corp.*,
237 Fed. Appx. 802 (4th Cir. 2007).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Doyle v. Health Possibilities, P.S.C.*,
207 F.3d 335 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6

*United States ex rel. Eisenstein v. City of New York*,
556 U.S. 928 (2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States ex rel. Feldman v. City of N.Y.*,
808 F.Supp. 2d 641 (S.D.N.Y. 2011).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Harrison v. Savannah River Co.*,
352 F.3d 908 (4th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Jane Doe 1 v. X, Inc.*,
246 B.R. 817 (Bankr. E. D. Va. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Lu v. Ou*, 368 F.3d 773 (7th Cir. 2004), *overruled in part by United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928 (2009).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*,
961 F.2d 46 (4th Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Purcell v. MWI Corp*.,
254 F.Supp. 2d 69 (D.D.C. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Rodgers v. Arkansas,*
154 F.3d 865 (8th Cir. 1998). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*United States ex rel. Sanders v. Allison Engine Co., Inc*.,
No. 1:95-CV-970, 2005 U.S. Dist. LEXIS 5612 (S.D. Ohio May 11, 2005),
*rev'd and remanded*, 471 F.3d 610 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States ex rel. Sanders v. Allison Engine Co., Inc*.,
471 F.3d 610 (6th Cir. 2006), *reh'g en banc denied*, 2007 U.S. App. LEXIS 10114
(6th Cir. 2007), *cert granted*, 552 U.S. 989 (2007), *vacated and remanded*, *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662 (2008)... . . . . . . . . . . . . 2, 5

*United States ex rel. Sanders v. Allison Engine Co., Inc*.,
667 F.Supp. 2d. 747 (S.D. Ohio 2009), *rev'd*, 703 F.3d 930 (6th Cir. 2012),
*reh'g en banc denied,* 2012 U.S. App. LEXIS 26758 (6th Cir. Dec. 5, 2012),
*cert. denied*, 2013 U.S. LEXIS 4850 (June 24, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States ex rel. Sanders v. Allison Engine Co., Inc*.,
703 F.3d 930 (6th Cir. 2012), *reh'g en banc denied*,
2012 U.S. App. LEXIS 26758 (6th Cir. Dec. 5, 2012), *cert. denied*,
2013 U.S. LEXIS 4850 (June 24, 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*United States ex rel. Sanders v. Allison Engine Co., Inc*.,
*cert. denied*, No. 12-1057, 2013 U.S. LEXIS 4850 (June 24, 2013). . . . . . . . . . . . . . . . . . 3

*United States ex rel. Stoner v. Santa Clara Cnty. Office of Educ*.,
502 F.3d 1116 (9th Cir. 2007), *cert. denied*, 552 U.S. 1281 (2008). . . . . . . . . . . . . . . . . . 4

*United States ex rel. Walker v. R & F Properties*,
433 F.3d 1349 (11th Cir. 2005), *cert. denied*, 549 U.S. 1027 (2006). . . . . . . . . . . . . . . . . 4

**STATUTES** **PAGE NO.**

31 U.S.C. §3729(a) (1986). . . . . . . 5

31 U.S.C. §3729(a)(1)(B) (2009). . . . . . . 3

31 U.S.C. §3730(b)(1). . . . . . . 6, 8

31 U.S.C. §3730(d)(1) and (2) (1986). . . . . . . 5

**OTHER PUBLICATIONS** **PAGE NO.**

James B. Helmer, Jr., *False Claims Act: Whistleblower Litigation*, Chap. 3 (6th Ed. Bloomberg/BNA 2012). . . . . . . 4

1. The Motion for mandatory mediation of Claim 27105 should be denied.

2. The claim at issue belongs to and is being prosecuted for the United States. As such it was excepted by this Court's mandatory mediation Order and remains so.

3. Nor is voluntary mediation viable. That was previously attempted with the Debtor at great expense but proved useless. The GUC Trust pursuant to this Court's mediation order has now offered to settle this $50 million claim for approximately $30,000. Our requests that such a non-starter offer be increased to demonstrate some genuine level of interest by the Debtor to resolve this matter have been steadfastly refused. Requiring the claimants to travel to a distant city and bear the expense of another mediation when the possibility of resolution is remote is inappropriate.

**Claim No. 27105**

4. To protect the Supercarriers the NAVY developed AEGIS, an electronic weapons system which permits the tracking and defeat of up to 200 targets simultaneously. The platform for AEGIS was determined to be a new class of fast guided missile destroyers named after former NAVY Admiral Arleigh Burke. The billion dollar plus Arleigh Burke class destroyers are built by two primary contractor shipyards to exacting standards. The AEGIS weapons system requires large quantities of electricity to operate. Thus the generator sets needed to supply such electricity are the single most critical component of the entire ship.

5. The two shipyards subcontracted with the Allison Engine Company to build the generator sets. Allison Engine Company was owned at the time by General Motors Corporation. Allison Engine Company then subcontracted with various other companies to make the

components and to assemble the critical generator sets to the precise NAVY specifications.[1]

6. But the generator sets were not built to the NAVY specifications. They leaked oil, a fire hazard on a combat vessel. Critical final inspections were skipped. And most of the welding was performed by welders who were not qualified to the high military standards required by the NAVY contracts.

7. In 1995 three employees filed suit on behalf of the United States for the hundreds of claims for payment submitted by Allison Engine Company and its subcontractors which falsely certified that the generator sets met all NAVY specifications. The case was eventually tried to a federal jury in Dayton, Ohio for five weeks in 2005. Before the jury could decide the case it was dismissed on a legal basis by the trial court.[2] This decision was later reversed by the United States Court of Appeals for the Sixth Circuit.[3] The Supreme Court of the United States agreed with the Court of Appeals that the trial court had misapplied the False Claims Act, but then interpreted the Act to add an intent requirement heretofore unknown.[4] Congress quickly held hearings and amended the False Claims Act specifically to overturn the Supreme Court's

---

[1] Allison Engine Company is located in Indianapolis, Indiana and manufactures the jet engines which provide the power for the generator sets. The generator sets themselves are all constructed in Cincinnati, Ohio by subcontractors to Allison Engine Company.

[2] *United States ex rel. Sanders v. Allison Engine Co., Inc.*, No. 1:95-CV-970, 2005 U.S. Dist. LEXIS 5612 (S.D. Ohio May 11, 2005), *rev'd and remanded*, 471 F.3d 610 (6th Cir. 2006).

[3] *United States ex rel. Sanders v. Allison Engine Co., Inc.*, 471 F.3d 610 (6th Cir. 2006), *reh'g en banc denied*, 2007 U.S. App. LEXIS 10114 (6th Cir. 2007), *cert granted*, 552 U.S. 989 (2007), *vacated and remanded*, *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662 (2008).

[4] *Allison Engine Co., Inc. v. United States ex rel. Sanders*, 553 U.S. 662 (2008), *superseded by statute as recognized in United States ex rel. Sanders v. Allison Engine Co., Inc.*, 703 F.3d 930 (6th Cir. 2012).

ruling.[5]

8. Meanwhile General Motors filed for bankruptcy. While the automatic stay ceased General Motors' participation in the False Claims Act case, the case continued against other subcontractor defendants, including Allison Engine Company which had been bought in the mid–1990's by Rolls-Royce Corporation.

9. On remand from the Supreme Court the trial court determined that the new provisions of the False Claims Act enacted to overturn the Supreme Court's decision were unconstitutional.[6] The United States Court of Appeals for the Sixth Circuit again reversed the trial court.[7] The Appeals court specifically held that the new amendments are properly applied retroactively in this False Claims Act case. The Supreme Court recently decided to refuse certiorari review of the decision.[8]

10. On July 22, 2013 the trial court in Dayton, Ohio held a scheduling conference, and set trial to begin against the remaining defendants on March 3, 2014.

**The False Claims Act**

11. Unlike the other 70,000 claims filed in this bankruptcy which are referenced by

---

[5] 31 U.S.C. §3729(a)(1)(B) (2009).

[6] *United States ex rel. Sanders v. Allison Engine Co., Inc.*, 667 F.Supp. 2d. 747 (S.D. Ohio 2009), *rev'd*, 703 F.3d 930 (6th Cir. 2012), *reh'g en banc denied,* 2012 U.S. App. LEXIS 26758 (6th Cir. Dec. 5, 2012), *cert. denied*, 2013 U.S. LEXIS 4850 (June 24, 2013).

[7] *United States ex rel. Sanders v. Allison Engine Co., Inc.*, 703 F.3d 930 (6th Cir. 2012), *reh'g en banc denied*, 2012 U.S. App. LEXIS 26758 (6th Cir. Dec. 5, 2012), *cert. denied*, 2013 U.S. LEXIS 4850 (June 24, 2013).

[8] *United States ex rel. Sanders v. Allison Engine Co., Inc., cert. denied*, No. 12-1057, 2013 U.S. LEXIS 4850 (June 24, 2013).

the GUC Trust this claim involves a unique federal statute. The False Claims Act since 1863 has permitted persons to bring actions on behalf of the United States against government contractors who have knowingly provided substandard or out of specification goods. Originally designed to be used against war profiteers, the Act has become America's primary tool for fighting fraud against the government.[9]

12. The unique provisions of the False Claims Act are set forth elsewhere.[10] But the *qui tam* nature of how these cases originate should not obscure that such cases are brought on behalf of the United States, which at all times remains the real party in interest[11] and which

---

[9] *United States ex rel. Milam v. University of Texas M.D. Anderson Cancer Center*, 961 F.2d 46, 49 (4th Cir. 1992).

[10] *See* James B. Helmer, Jr., *False Claims Act: Whistleblower Litigation*, Chap. 3 (6th Ed. Bloomberg/BNA 2012).

[11] *Timson v. Sampson*, 518 F.3d 870, 873 (11th Cir. 2008), *cert. denied*, 555 U.S. 840 (2008); *United States ex rel. Stoner v. Santa Clara Cnty. Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007), *cert. denied*, 552 U.S. 1281 (2008); *United States ex rel. Brooks v. Lockheed Martin Corp.*, 237 Fed. Appx. 802, 803 (4th Cir. 2007) (*per curiam*); *United States ex rel. Walker v. R & F Properties*, 433 F.3d 1349, 1359 (11th Cir. 2005), *cert. denied*, 549 U.S. 1027 (2006); *United States ex rel. Lu v. Ou*, 368 F.3d 773, 774 (7th Cir. 2004), *overruled in part by United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 931 n. 1, (2009); *United States ex rel. Harrison v. Savannah River Co.*, 352 F.3d 908, 923 (4th Cir. 2003) (*qui tam* relator "stands in the place of the Government"); *United States ex rel. Doyle v. Health Possibilities, P.S.C.*, 207 F.3d 335, 342 (6th Cir. 2000); *United States ex rel. Rodgers v. Arkansas,* 154 F.3d 865, 868 (8th Cir. 1998) (relators sue "as agents of the Government, which is always the real party in interest.") (quoting *United States ex rel. Hyatt v. Northrup Corp.*, 91 F.3d 1211, 1217 n.8 (9th Cir. 1996)); *United States ex rel. Feldman v. City of N.Y.*, 808 F.Supp. 2d 641, 648 (S.D.N.Y. 2011); *Mason v. Medline Indus.*, No. 07 C 5615, 2010 U.S. Dist. LEXIS 15260, at *1 n.1 (N.D. Ill. Feb. 18, 2010); *In re Cardiac Devices Qui Tam Litig.*, 221 F.R.D. 318, 358 (D. Conn. 2004) ("[r]elator and the United States are one and the same."), *rev'd in part and remanded*, *United States v. Baylor Univ. Med. Ctr.*, 469 F.3d 263 (2d Cir. 2006); *United States ex rel. Purcell v. MWI Corp.*, 254 F.Supp. 2d 69, 73 (D.D.C. 2003); *United States ex rel. Jane Doe 1 v. X, Inc.*, 246 B.R. 817, 820 (Bankr. E. D. Va. 2000) ("the instant qui tam suit is 'brought by a governmental unit' for the purposes of [11 U.S.C.] § 362(b)(4)'s police powers exception, even though the United States has not yet made its intervention election.").

stands to receive at least 70% of any recovery. Through amendments in 1986 the False Claims Act is now a treble damages statute. It also contains severe financial penalties of up to $11,000 per each false claim/false document used by a defendant[12] as well as mandatory provisions for the recovery of all reasonable attorney fees and litigation costs.[13]

13. Claimants Roger L. Thacker, Roger L. Sanders and Thomas J. Hanson are referred to as relators. They will be able to blackboard damages, penalties, fees, and costs which far exceed the $50 million claim they have made against General Motors. Under the new Congressional standard enacted in response to their *qui tam* case they need show only that one or more of the defendants in the False Claims Act case knowingly made or used a false record or statement material to a false claim.[14] The evidence of record demonstrates each and every defendant—including General Motors—certified to the United States that the generator sets satisfied all NAVY specifications when in fact each and every defendant knew the generator sets did not.

**Claimants Are Not in Violation of Any Court Order**

14. The GUC Trust is incorrect in arguing that we are "refusing to comply with the ADR procedures."[15] By its terms the ADR Order specifically excludes this claim from

---

[12] 31 U.S.C. § 3729(a) (1986). *See also*, *Cook County Ill. v. United States ex rel. Chandler*, 538 U.S. 119, 123 n.1 (2003).

[13] 31 U.S.C. § 3730(d)(1) and (2) (1986).

[14] The United States Court of Appeals for the Sixth Circuit has already determined that the relators have submitted evidence which "easily" satisfies the materiality standard. *See United States ex rel. Sanders v. Allison Engine*, *Co*., *Inc*., 471 F3d. 610, 623 n.7 (6th Cir. 2006).

[15] Doc. 12463, GUC Trust's Motion to Compel Mandatory Mediation, at 5 (ECF p.12).

mandatory mediation. GUC Trust is itself ignoring the plain language of the Amended ADR Order.

15. Because Claim 27105 belongs to the United States, Claimants are not required to participate in time-consuming, expensive, and fruitless mediation. Nor can Claimants bind the United States to a settlement. Given GUC Trust's refusal to engage in good faith pre-mediation discussions and the prior unsatisfactory experience with the debtor in mediation, Claimants decided not to pursue voluntary mediation. We now respectfully oppose GUC Trust's effort unilaterally to force mediation. And, in order to avoid more needless expense on all sides, Claimants respectfully ask this Court to decide this motion on the pleadings without requiring the parties to attend a hearing on August 1, 2013.

**Claim 27105 is Excluded from the ADR Procedures by the Plain Language of this Court's October 25, 2010 Order, which Remains in Force**

16. The GUC Trust misreads this Court's ADR Orders. Indeed, GUC Trust has in the past acknowledged that the ADR procedures in the Court's October 25, 2010 ADR Order (Doc. 7558) remain in full force and effect. When GUC Trust ordered Claimants to participate in expensive, pointless mediation, Claimants reminded GUC Trust that those procedures did not apply to "claims filed by the United States," and that the United States shall not be bound "in any way" by "any determination made pursuant to the ADR Procedures as to any other party or claim subject to the ADR Procedures."[16]

---

[16] Doc. 7558, Amended ADR Order, at 3. Even without such language in the Court's Order, Claimants are unable to bind the United States to any settlement. The Attorney General of the United States and the United States District Court for the Southern District of Ohio are the only entities who can accept any settlement. 31 U.S.C. § 3730(b)(1). *See also*, *United States ex rel. Doyle v. Health Possibilities, P.S.C.*, 207 F.3d 335, 336 (6th Cir. 2000) (In non-intervened *qui tam* case relator can not settle claim absent Attorney General consent.).

17. GUC Trust then decided to ignore the October 25, 2010 ADR Order in its filing before this Court and instead switched its reliance to the June 4, 2012 Second Amended ADR Order (Doc. 11777). But that Second Amended Order did not supercede the Amended Order. It merely added three specific, unrelated classes of previously excluded claims to the ADR Procedures.[17] None of those classes concern Claim 27105.

18. The June 2012 amendment "ORDERED that the Amended ADR Order is *supplemented* as provided herein."[18] (This is what the GUC Trust itself asked for,[19] and in contrast the same provision in the October 2010 Amended ADR Order stated that it "*supersedes in all respects* the Original ADR Order."[20]) The Amended ADR Order is still in effect. The Second Amended ADR Order did not replace it, did not change the provisions excluding the United States, did not add provisions including the United States, and did not add this claim as one requiring mandatory mediation.

19. The Amended ADR Order states that "the ADR Procedures shall not apply to claims filed by the United States of America or its agencies," and "the United States of America, nor any state or tribal government shall be in any way bound by any determination made pursuant

---

[17] *See* Doc. 11413, GUC Trust's Motion to Supplement Amended ADR Order, at 3 ("The proposed Second Amended ADR Order would supplement the Amended ADR Order . . . by including the following as additional covered claims . . . Environmental Claims . . . Patent Claims . . . Lower Tier Claims."). No mention was made of False Claims Act Claims.

[18] Doc. 11777, Second Amended ADR Order, at 1 (emphasis added).

[19] Doc. 11413, GUC Trust's Motion to Supplement Amended ADR Order, at ECF p.61 (Blackline of Proposed Changes the Amended ADR Order at 2).

[20] Doc. 7558, Amended ADR Order, at 2 (emphasis added).

to the ADR Procedures as to any other party or claim subject to the ADR Procedures."[21] These parts of the ADR Order apply to this case even though the United States itself did not file the claim at issue.

20. When private persons bring an action under the False Claims Act, they do so "in the name of the Government," and may only dismiss the action "if the court and the Attorney General give written consent to the dismissal and their reasons for consenting."[22] Even when the United States declines to intervene in a False Claims Act case, the United States remains the "real party in interest" in a False Claims Act case, and "is bound by the judgment in all FCA actions regardless of its participation in the case."[23]

21. For purposes of settlement, all False Claims Act cases belong to the United States, which exercises ultimate authority over the settlement, even if the initial complaint was filed on behalf of the United States rather than "filed by" a United States employee.[24] Claimants' False Claims Act action is as a matter of law rightly considered a claim filed by the United States for purposes of exclusion from the ADR Procedures, and Claimants are not bound by the Amended or Second Amended ADR Orders to participate in mediation.

---

[21] Doc. 7558, Amended ADR Order, at 3.

[22] 31 U.S.C. § 3730(b)(1).

[23] *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 931, 934-36 (2009) (holding that although the United States is the real party in interest it "is not a 'party' to an FCA action for purposes of the appellate filing deadline unless it has exercised its right to intervene in the case").

[24] *See* footnote 16, *supra*.

**GUC Trust has not Demonstrated a Willingness to Reach a Consensual Resolution of the 27105 Claim**

22. Though the Amended and Second Amended ADR Orders do not require Claimants to participate in mediation, this Court can order them to do so. However, the mediation as structured and initiated by GUC Trust would be a waste of time and money for both the Claimants and the bankruptcy estate. The False Claims Act and the ADR Procedures both prevent Claimants from binding the United States to any mediated agreement. And, GUC Trust has failed to demonstrate that they are willing to make a settlement offer that has any reasonable chance of resolving Claim 27105 in a way that is acceptable to the Claimants or the United States. As such, we have been unable to obtain any authorization from the Department of Justice to settle with GUC Trust. Given GUC Trust's adamant refusal to increase its $30,000 offer we do not anticipate any change in the Department of Justice's view.

23. Claim 27105 is only one piece of *United States ex rel. Sanders v. Allison Engine Co., Inc., et al*., an 18-year-old case with many interested parties. Any mediated settlement would need to be approved by this Court, by the United States District Court for the Southern District of Ohio, by the United States Attorney General, and by the Ohio Bankruptcy Court presiding over claimant Roger Thacker's own bankruptcy estate. Just last month, the United States Supreme Court (which had previously reviewed issues in this case) declined to take the case a second time. Claimants currently have a retrial against the remaining defendants set for March 3, 2014 before the federal court in Dayton, Ohio pursuant to the remand Order of United States Court of Appeals.

24. This is not to say that Claim 27105 can only be resolved through litigation.[25] Indeed, Mr. Thacker and his colleagues participated in an expensive three-day mediation with General Motors several years ago which was unsuccessful. Coupling that experience with GUC Trust's ludicrous offer and refusal to reconsider it belies any suggestion by GUC Trust that it is really serious about a good faith mediation. But even if GUC Trust succeeds in negotiating a settlement acceptable to Claimants, we must then convince the Attorney General, the Ohio District Court, and Mr. Thacker's Ohio Bankruptcy Court that the settlement is reasonable for the damage done to this country's national defense. Claimants cannot do that for a fraction of a penny on the dollar.

25. GUC Trust's opening offer of an allowed claim in the nominal amount of 0.2% of the estimated value of Claim 27105[26] demonstrates that it is not seeking a reasonable resolution of this claim in good faith. GUC Trust's statement that it has had some success in other unrelated mediations is neither relevant nor particularly encouraging given its hard line stance on its offer to settle this claim. Compelling mediation at this stage would only result in all sides wasting a lot of time and money to prepare for mediation that currently holds no promise of success.

26. Parties settle disputes every day without mediation. It is doubtful that any mediator listed in the ADR procedures for this case has any experience with the False Claims Act

[25] The GUC Trust has also filed a motion for estimation of this claim. We will respond to such motion in a separate filing.

[26] Doc. 12463, GUC Trust's Motion to Compel Mandatory Mediation, Exh. C at 1-2 (ECF p.74-75) (offering "an allowed general unsecured, nonpriority claim in the amount of $100,000 in full satisfaction of your Designated Claim, to be satisfied in accordance with the Debtors' Second Amended Joint Chapter 11 Plan.).

or could ever be as knowledgeable about the facts, exposure, and risks of this claim as the counsel for both sides who have worked the case for nearly two decades. If the GUC Trust really wants to settle this case it does not need a mediator to do so. Rather it simply needs to provide settlement authority to its legal advisors who are themselves expert negotiators and assessors of risk.

**Conclusion**

27. Claimants respectfully ask this Court to deny GUC Trust's motion to compel mandatory mediation. This Court's Orders exclude Claim 27105 from mandatory mediation.

28. Nor should the Court amend such Order or direct this Claim to mediation. Had GUC Trust made any offer that demonstrated a good faith attempt to resolve Claim 27105 that we could with a straight face present to officials of the United States Department of Justice, the litigants, and the federal judges who have spent years on this matter, we were willing to accede to GUC Trust's demand for mediation. Forcing such mediation when the parties are so far apart dooms any hope of success.

29. GUC Trust's motion to compel mandatory mediation should be denied.

Respectfully Submitted,

*/s/ James B. Helmer, Jr.*

James B. Helmer, Jr., PHV (Ohio Bar No. 00002878)
Helmer, Martins, Rice & Popham Co., L.P.A.
600 Vine Street, Suite 2704
Cincinnati, Ohio 45202
Telephone: (513) 421-2400
Facsimile: (513) 421-7902
*Attorney for Roger L. Thacker,*
*Roger L. Sanders, and Thomas J. Hanson*