**Hearing Date and Time: October 21, 2013 at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: October 14, 2013 at 4:00 p.m. (prevailing Eastern Time)**

DICKSTEIN SHAPIRO LLP
Barry N. Seidel
Eric B. Fisher
Katie L. Weinstein
Mary Kim (admitted *pro hac vice*)
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Counsel for Motors Liquidation*
*Company GUC Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x
                                                                    :
In re:                                                              :    Chapter 11
                                                                    :
MOTORS LIQUIDATION COMPANY, *et al.,*                               :    Case No.:  09-50026 (REG)
f/k/a General Motors Corporation, *et al.,*                         :
                                                                    :    (Jointly Administered)
                              Debtors.                              :
                                                                    :
-------------------------------------------------------------------x
                                                                    :
MOTORS LIQUIDATION COMPANY GUC TRUST,                               :
                                                                    :
                              Plaintiff,                            :    Adversary Proceeding
                                                                    :    Case No.:  12-09802
              v.                                                    :
                                                                    :
APPALOOSA INVESTMENT LIMITED                                        :
PARTNERSHIP I, *et al.,*                                            :
                                                                    :
                                                                    :
                              Defendants.                           :
                                                                    :
-------------------------------------------------------------------x

**NOTICE OF MOTORS LIQUIDATION COMPANY**
**GUC TRUST'S MOTION FOR ENTRY OF ORDER PURSUANT**
**TO SECTIONS 105, 363 AND 1142 OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULES 3020 AND 9019 APPROVING GLOBAL**
**SETTLEMENT OF GUC TRUST'S OBJECTIONS AND ADVERSARY**
**PROCEEDING RELATING TO NOVA SCOTIA NOTES, AMONG OTHER MATTERS**

PLEASE TAKE NOTICE that the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (collectively, the "**Debtors**") in connection with the Debtors' Second Amended Joint Chapter 11 Plan, dated March 18, 2011, hereby files its Motion for an Order Pursuant to Sections 105, 363 and 1142 of the Bankruptcy Code and Bankruptcy Rules 3020 and 9019 Approving Global Settlement of GUC Trust's Objections and Adversary Proceeding Relating to Nova Scotia Notes, Among Other Matters (the "**Motion**").  The Motion seeks approval by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") of an agreement, attached to the Motion as **Exhibit "A,"** (the "**Settlement Agreement**") implementing a global settlement among (a) the GUC Trust, (b) FTI Consulting, Inc., as trust monitor of the GUC Trust, (c) Green Hunt Wedlake, Inc., as bankruptcy trustee of General Motors Nova Scotia Finance Company (the "**Nova Scotia Finance Trustee**"), (d) General Motors, LLC ("**New GM**"), (e) General Motors of Canada Limited, and (f) Morgan Stanley & Co. International plc, Worden Master Fund L.P., Worden Master Fund II L.P., Drawbridge DSO Securities LLC, Drawbridge OSO Securities LLC, FCOF UB Securities LLC, Gatwick Securities LLC, Elliott International LP, The Liverpool Limited Partnership, DbX – Risk Arbitrage 1 Fund, Lyxor/Paulson International Fund Limited, Paulson Enhanced Ltd., Paulson International Ltd., Paulson Partners Enhanced, L.P., and Paulson Partners L.P.

The Settlement Agreement resolves, among other matters, (a) the New GM Administrative Expense Claim (as defined in the Motion) (subject to paragraph 10 of the Settlement Agreement), (b) the GUC Trust's objections to all claims asserted against Motors Liquidation Company f/k/a General Motors Corporation ("**Old GM**") based on the guarantee by Old GM (the "**Guarantee**") of the obligations of General Motors Nova Scotia Finance Company

2

("**Nova Scotia Finance**") under Nova Scotia Finance's 8.375% Guaranteed Notes due 2015

(XSO171922643) and 8.875% Guaranteed Notes due 2023 (XSO171908063), (c) the GUC

Trust's objection to the claim of the Nova Scotia Finance Trustee, and (d) all claims arising from

or related to the Lock-Up Agreement (as defined in the Motion), the Consent Fee (as defined in

the Motion) and the Intercompany Loans (as defined in the Motion).  The pleadings resolved by

the Settlement Agreement include the following (and all responses, replies and/or objections

thereto): the (i) *Official Committee of Unsecured Creditors' Objection to Claims Filed by Green

Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and

Motion for Other Relief*, (Bankr. Dkt. No. 6248); (ii) *Official Committee of Unsecured Creditors'

First Amended Objection to Claims Filed by Green Hunt Wedlake, Inc. and Noteholders of

General Motors Nova Scotia Finance Company and Motion for Other Relief*, (Bankr. Dkt. No.

7859); (iii) adversary proceeding complaint and amended complaint in *Motors Liquidation

Company GUC Trust v. Appaloosa Investment Limited Partnership I, et al.,* (Adv. Pro. Case No.

12-09802) (Adv. Pro. Dkt. Nos. 1 and 37); (iv) *GUC Trust's Motion for Relief Under Rule 60(b)

of the Federal Rules of Civil Procedure Made Applicable By Rule 9024 of the Federal Rules of

Bankruptcy Procedure* (Bankr. Dkt. No. 12419, Adv. Pro. Dkt. No. 217); and (v) the New GM

Administrative Expense Claim (subject to paragraph 10 of the Settlement Agreement).

      **PLEASE TAKE FURTHER NOTICE** that pursuant to the terms of the

Settlement Agreement attached to the Motion as **Exhibit "A,"** the claims filed against Old GM

by certain holders relating to the Guarantee shall be disallowed and expunged.  **CLAIMANTS**

**RECEIVING THIS NOTICE SHOULD REVIEW THE MOTION AND EXHIBIT "C"**

**ATTACHED THERETO TO DETERMINE IF THEIR NAME(S) AND/OR CLAIM(S)**

**ARE INCLUDED, IN WHICH CASE THEIR CLAIMS MAY BE DISALLOWED AND**

**EXPUNGED IF THE RELIEF REQUESTED IN THE MOTION IS GRANTED.**

      **PLEASE TAKE FURTHER NOTICE** that a hearing to consider the Motion

will be held on **October 21, 2013 at 2:00 p.m. (prevailing Eastern Time**) before the Honorable

Robert E. Gerber, United States Bankruptcy Judge, in Room 621 of the United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New

York 10004.

      **PLEASE TAKE FURTHER NOTICE** that any responses or objections to the

Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the

Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a)

electronically in accordance with General Order M-399 (which can be found at

www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by

all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document

format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the

customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable,

and served in accordance with General Order M-399 and on (i) Dickstein Shapiro LLP, attorneys

for the GUC Trust, 1633 Broadway, New York, New York, 10019-6708  (Attn: Barry N. Seidel,

Esq., and Eric. B. Fisher, Esq.); (ii) the Debtors, c/o Motors Liquidation Company, 401 South

Old Woodward Avenue, Suite 370, Birmingham, Michigan 48009; (iii) General Motors, LLC,

400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Paul,

Weiss, Rifkind, Wharton & Garrison LLP, attorneys for the United States Department of the

Treasury, 1285 Avenue of the Americas, New York, New York 10019-6064 (Attn: Douglas

Davis, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW,

Room 2312, Washington, D.C. 20220 (Attn: Jonathan Pacheco, Esq.); (vi) Vedder Price, P.C.,

attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York

10019 (Attn: Michael J. Edelman, Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin

Naftalis & Frankel LLP, attorneys for the statutory committee of unsecured creditors, 1177

Avenue of the Americas, New York, New York 10036 (Attn:  Thomas Moers Mayer, Esq.,

Robert Schmidt, Esq., and Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee

for the Southern District of New York, U.S. Federal Office Building, 201 Varick Street, Suite

1006, New York, New York 10014 (Attn: Tracy Hope Davis, Esq.); (ix) the U.S. Attorney's

Office, S.D.N.Y., 86 Chambers Street, Third Floor, New York, New York 10007 (Attn: David S.

Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin & Drysdale, Chartered, attorneys for the

official committee of unsecured creditors holding asbestos-related claims, 375 Park Avenue,

35th Floor, New York, New York 10152-3500 (Attn:  Elihu Inselbuch, Esq. and Rita C. Tobin,

Esq.) and One Thomas Circle, N.W., Suite 1100, Washington, DC 20005 (Attn: Trevor W. Swett

III, Esq. and Kevin C. Maclay, Esq.); (xi) Stutzman, Bromberg, Esserman & Plifka, A

Professional Corporation, attorneys for Dean M. Trafelet in his capacity as the legal

representative for future asbestos personal injury claimants, 2323 Bryan Street, Suite 2200,

Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert T. Brousseau, Esq.); (xii)

Gibson, Dunn & Crutcher LLP, attorneys for Wilmington Trust Company as GUC Trust

Administrator and for Wilmington Trust Company as Avoidance Action Trust Administrator, 200

Park Avenue, 47th Floor, New York, New York 10166 (Attn: Keith Martorana, Esq.); (xiii) FTI

Consulting, as the GUC Trust Monitor and as the Avoidance Action Trust Monitor, Three Times

Square, New York, New York 10036 (Attn: Conor Tully); (xiv) Crowell & Moring LLP,

attorneys for the Revitalizing Auto Communities Environmental Response Trust, 590 Madison

5

Avenue, 19th Floor, New York, New York 10022-2524 (Attn: Michael V. Blumenthal, Esq.);

(xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301 Woodlawn Boulevard,

Austin, Texas 78703; (xvi) Greenberg Traurig, LLP, attorneys for Morgan Stanley & Co.

International plc, the Elliott Noteholders (as defined in the Motion) and the Fortress Noteholders (as

defined in the Motion), 200 Park Avenue, New York,  New York 10166 (Attn: Bruce R. Zirinsky,

Esq.), (xvii) Curtis, Mallet-Prevost, Colt & Mosle LLP, attorneys for the Paulson Noteholders (as

defined in the Motion), 101 Park Avenue, New York, New York 10178 (Attn: Steven J. Reisman,

Esq. and Theresa A. Foudy, Esq.), (xviii) King & Spalding LLP, attorneys for New GM, 1185

Avenue of the Americas, New York, New York 10036 (Attn: Arthur Steinberg, Esq. and Scott

Davidson, Esq.), and (xix) Akin Gump Strauss Hauer & Feld LLP, attorneys for Green Hunt

Wedlake, Inc., One Bryant Park, New York, New York 10036 (Attn: Daniel H. Golden, Esq. and

Sean E. O'Donnell, Esq.), so as to be received no later than October 14, 2013 at 4:00 p.m.

(prevailing Eastern Time) (the "**Response Deadline**").

        **PLEASE TAKE FURTHER NOTICE** that if no responses are timely filed and

served with respect to the Motion, the GUC Trust may, on or after the Response Deadline,

submit to the Bankruptcy Court an order granting the relief requested in the Motion, which order

may be entered with no further notice or opportunity to be heard offered to any party.

Dated: New York, New York Respectfully submitted,
   September 27, 2013

          By: /s/ Barry N. Seidel
           Barry N. Seidel
           Eric B. Fisher
           Katie L. Weinstein
           Mary Kim (admitted *pro hac vice*)
           DICKSTEIN SHAPIRO LLP
          1633 Broadway
          New York, New York 10019-6708
          Telephone: (212) 277-6500
          Facsimile: (212) 277-6501

          *Counsel for the Motors Liquidation*
          *Company GUC Trust*

**Hearing Date and Time: October 21, 2013 at 2:00 p.m. (prevailing Eastern Time)**
**Objection Deadline: October 14, 2013 at 4:00 p.m. (prevailing Eastern Time)**

DICKSTEIN SHAPIRO LLP
Barry N. Seidel
Eric B. Fisher
Katie L. Weinstein
Mary Kim (admitted *pro hac vice*)
1633 Broadway
New York, New York 10019-6708
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

*Counsel for Motors Liquidation*
*Company GUC Trust*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------x
                                                       :

In re:                                          :    Chapter 11
                                                       :

MOTORS LIQUIDATION COMPANY, *et al.,*    :    Case No.:  09-50026 (REG)
f/k/a General Motors Corporation, *et al.,*       :
                                                       :    (Jointly Administered)

                           Debtors.               :

---------------------------------------------------------------------x
                                                       :

MOTORS LIQUIDATION COMPANY GUC TRUST,    :
                                                       :

                           Plaintiff,       :    Adversary Proceeding
                                                        :    Case No.:  12-09802

                           v.                     :

APPALOOSA INVESTMENT LIMITED                :
PARTNERSHIP I, *et al.,*                              :
                                                       :

                           Defendants.     :
                                                       :

---------------------------------------------------------------------x

**MOTORS LIQUIDATION COMPANY**
**GUC TRUST'S MOTION FOR ENTRY OF ORDER PURSUANT**
**TO SECTIONS 105, 363 AND 1142 OF THE BANKRUPTCY CODE**
**AND BANKRUPTCY RULES 3020 AND 9019 APPROVING GLOBAL**
**SETTLEMENT OF GUC TRUST'S OBJECTIONS AND ADVERSARY**
**PROCEEDING RELATING TO NOVA SCOTIA NOTES, AMONG OTHER MATTERS**

# TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES ................................................................................... ii

RELIEF REQUESTED AND PRELIMINARY STATEMENT ...................................................1

JURISDICTION AND VENUE ...........................................................................4

BACKGROUND ...........................................................................................4

    A.    The Nova Scotia Notes And Related Intercompany Transactions...........................4

    B.    The Nova Scotia Action..............................................................5

    C.    The Lock-Up Agreement ...............................................................6

    D.    Proofs Of Claim ....................................................................8

    E.    Claims Objections And Subsequent Proceedings ......................................9

    F.    The Settlement .....................................................................11

BASIS FOR REQUESTED RELIEF..........................................................................14

    A.    Probability Of Success In The Litigation...........................................15

    B.    The Complexity Of The Litigation, And Attendant Expense,
          Inconvenience And Delay.............................................................18

    C.    Paramount Interest Of The Creditors ...............................................18

NOTICE................................................................................................19

CONCLUSION............................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                                                                          **PAGE(S)**

*Cosoff v. Rodman (In re W.T. Grant Co.)*, 699 F.2d 599 (2d Cir.), *cert. denied*,
    464 U.S. 822 (1983) ...................................................................................................... 15

*In re Adelphia Communic'ns Corp.*, 327 B.R. 143 (Bankr. S.D.N.Y. 2005) ................................ 14

*In re Dewey & LeBoeuf LLP*, 478 B.R. 627 (Bankr. S.D.N.Y. 2012) ........................................... 14

*In re Drexel Burnham Lambert Grp., Inc.,* 960 F.2d 285 (2d Cir. 1992), *cert.*
    *dismissed*, 506 U.S. 1088 (1993) .................................................................................. 15

*In re Ionosphere Clubs, Inc.*, 156 B.R. 414 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600
    (2d Cir. 1994) ................................................................................................................. 15

*In re Iridium Operating LLC*, 478 F.3d 452 (2d Cir. 2007) .......................................................... 15

*In re Purofied Down Prods. Corp.*, 150 B.R. 519 (S.D.N.Y. 1993) .............................................. 15

*In re Residential Capital, LLC*, Bankr. Case No. 12-12020 (MG), 2013 WL
    4874346 (Bankr. S.D.N.Y. Sept. 13, 2013) ................................................................. 14

*Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447 (6th
    Cir. 1963) ...................................................................................................................... 14

*Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert*
    *Group, Inc.)*, 134 B.R. 499 (Bankr. S.D.N.Y. 1991) ................................................... 14

**STATUTES**

11 U.S.C. § 105 .............................................................................................................. 1, 4, 13

11 U.S.C. § 363 ................................................................................................................... 1, 4

11 U.S.C. § 502(d) ........................................................................................................... 15, 18

11 U.S.C. § 503(b) ................................................................................................................. 13

11 U.S.C. § 547 ..................................................................................................................... 16

11 U.S.C. § 548 ..................................................................................................................... 16

11 U.S.C. § 549 ..................................................................................................................... 16

11 U.S.C. § 1142 ................................................................................................................ 1, 4

28 U.S.C. § 157 ................................................................................................................4

28 U.S.C. § 157(b) ...........................................................................................................4

28 U.S.C. § 1334 ..............................................................................................................4

28 U.S.C. § 1409 ..............................................................................................................4

**RULES**

Fed. R. Bankr. P. 3020 ..............................................................................................1, 4

Fed. R. Bankr. P. 9019 .........................................................................................1, 4, 14

Fed. R. Bankr. P. 9019(a) ............................................................................................14

Fed. R. Bankr. P. 9024 ..................................................................................................9

Fed. R. Civ. P. 60(b) ...........................................................................................4, 9, 11

**FOREIGN STATUTE**

*Companies Act*, RSNS 1989, c. 81, s. 135 ...........................................................4, 7, 8

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), by its counsel,

respectfully submits this motion and incorporated memorandum of law (the "**Motion**") and

represents as follows:

### RELIEF REQUESTED AND PRELIMINARY STATEMENT

1.      Pursuant to sections 105, 363 and 1142 of title 11 of the United States Code

(the "**Bankruptcy Code**") and Rules 3020 and 9019 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**"), the GUC Trust requests entry of an order, substantially in

the form attached hereto as **Exhibit "B**," approving a settlement agreement, attached hereto as

**Exhibit "A"** (the "**Settlement Agreement**"), that resolves, among other matters, (a) the New

GM Administrative Expense Claim (as defined herein) (subject to paragraph 10 of the Settlement

Agreement), (b) the GUC Trust's objections to all claims asserted against Motors Liquidation

Company f/k/a General Motors Corporation ("**Old GM**") based on the guarantee by Old GM of

the obligations of General Motors Nova Scotia Finance Company ("**Nova Scotia Finance**")

under the Nova Scotia Notes (as defined herein), (c) the GUC Trust's objection to the claim

asserted against Old GM by the bankruptcy trustee of Nova Scotia Finance, and (d) all claims

arising out of or related to the Lock-Up Agreement (as defined herein), the Consent Fee (as

defined herein) and the Intercompany Loans (as defined herein).  The pleadings resolved by the

Settlement Agreement include the following (and all responses, replies and/or objections

thereto):  the (i) *Official Committee of Unsecured Creditors' Objection to Claims Filed by Green*

*Hunt Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and*

*Motion for Other Relief* (Bankr. Dkt. No. 6248) (the "**Original Objection**"); (ii) *Official*

*Committee of Unsecured Creditors' First Amended Objection to Claims Filed by Green Hunt*

1

*Wedlake, Inc. and Noteholders of General Motors Nova Scotia Finance Company and Motion for Other Relief* (Bankr. Dkt. No. 7859) (the "**Amended Objection**"); (iii) adversary proceeding complaint and amended complaint filed in *Motors Liquidation Company GUC Trust v. Appaloosa Investment Limited Partnership I, et al.* (Adv. Pro. Case No. 12-09802) (Adv. Pro. Dkt. Nos. 1 and 37) (together, the "**Adversary Proceeding Complaint**"); (iv) *GUC Trust's Motion for Relief Under Rule 60(b) of the Federal Rules of Civil Procedure Made Applicable By Rule 9024 of the Federal Rules of Bankruptcy Procedure* (the "**Rule 60(b) Motion**") (Bankr. Dkt. No. 12419, Adv. Pro. Dkt. No. 217); and (v) New GM Administrative Expense Claim (subject to paragraph 10 of the Settlement Agreement).

2.      The settlement is the product of a series of difficult, intensive, multiparty negotiations spanning many months, which were ultimately brought to a successful conclusion with the active assistance of U.S. Bankruptcy Judge James M. Peck, serving as court-appointed mediator.  As set forth below, if approved by the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") and subject to the occurrence of the Effective Date (as defined in the Settlement Agreement), this settlement will conclude years of complex litigation and substantially benefit the estate by reducing the claims at issue by more than $1.129 billion.  The proposed settlement is a reasonable compromise of the complex, uncertain litigation concerning these claims.  Because it is within the "range of reasonableness," this Court should approve the settlement.

3.      In order to implement the settlement, in exchange for the payments, distributions, releases and other consideration contained in the attached Settlement Agreement, the GUC Trust also respectfully requests entry of an order (i) allowing a general unsecured claim in favor of all holders (the "**Noteholders**") of Nova Scotia Notes (as defined herein) on account

2

of Old GM's guarantee of the Nova Scotia Notes (the "**Guarantee**") in the amount of

$1,073,000,000 (the "**New Guarantee Claim**"); (ii) disallowing and expunging all claims filed

by or on behalf of the Noteholders on account of the Guarantee, listed on **Exhibit "C"** attached

hereto, specifically:  claim numbers 1556; 1558; 29379; 29647; 29648; 31167; 31168; 31868;

32887; 32888; 37319; 49548; 60234; 60251; 60547; 60566; 60567; 60964; 60993; 61481;

61520; 61915; 63955; 64298; 64332; 64340; 65554; 65765; 65784; 65934; 66206; 66216;

66217; 66218; 66265; 66266; 66267; 66312; 66448; 66462; 66718; 66735; 66769; 67022;

67034; 67035; 67244; 67245; 67345; 67428; 67429; 67430; 67498; 67499; 67500; 67501;

68705; 68941; 69306; 69307; 69308; 69309; 69340; 69341; 69551; 69552; 69734; 70200;

70201; and 71270 (collectively, the "**Individual Guarantee Claims**");[1] (iii) reducing the Section

135 Claim (hereinafter defined) (claim no. 66319) to $477,000,000 and allowing such claim

against Old GM's estate as a general unsecured claim as so reduced; (iv) dismissing the Original

Objection, the Amended Objection, the Adversary Proceeding Complaint and the Rule 60(b)

Motion with prejudice and without costs, without the necessity of a formal pleading being filed

by the GUC Trust with the Bankruptcy Court; and (v) deeming the claim filed by General

Motors LLC ("**New GM**") (claim no. 71111), reserving its rights to seek administrative expenses

---

[1]       The Individual Guarantee Claims assert claims under the Guarantee and, as such, will be duplicative of the New Guarantee Claim to be allowed as part of the settlement.  Eleven of the Individual Guarantee Claims (claim nos. 32887; 32888; 60251; 60964; 60993; 61520; 65934; 66718; 66735; 67034; and 67035) (collectively, the "**Hybrid Claims**") assert liabilities relating to Nova Scotia Notes as well as liabilities on account of a beneficial interest in debt securities that were issued by the Debtors that are unrelated to the Nova Scotia Notes.  The portion of the Hybrid Claims relating to such unrelated securities are either duplicative of a global proof of claim filed on behalf of all holders of the applicable debt securities, or, duplicative of the aggregate amount already allowed pursuant to the Debtors' confirmed chapter 11 plan (the "**Plan**") on account of the applicable debt securities.  The holders of the Hybrid Claims, to the extent they were beneficial holders of the applicable debt securities as of the record date under the Plan, should have already received distributions on account of those debt securities through the applicable indenture trustee or clearing agency.  Thus, disallowance and expungement of the Hybrid Claims will not impair any distribution to which the holders of such claims are entitled.

relating the GUC Trust's request for relief under Rule 60(b) (the "**New GM Administrative Expense Claim**"), to be resolved as set forth in paragraph 10 of the Settlement Agreement.

## JURISDICTION AND VENUE

4.      The Bankruptcy Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. § 1409.  The statutory predicates for the relief requested are sections 105, 363 and 1142 of title 11 of the Bankruptcy Code and Bankruptcy Rules 3020 and 9019.

## BACKGROUND

A.      **The Nova Scotia Notes And Related Intercompany Transactions**

5.      Nova Scotia Finance is an unlimited liability company organized under the Nova Scotia Companies Act (the "**Companies Act**") whose sole member is Old GM.  Section 135 of the Companies Act provides that in the event that an unlimited liability company is wound up, every present and past member shall, subject to the provisions of section 135, "be liable to contribute to the assets of the company in an amount sufficient for payment of its debts and liabilities and the costs, charges, and expenses of the winding up . . . ." *Companies Act*, RSNS 1989, c. 81, s. 135.

6.      On July 10, 2003, Nova Scotia Finance issued £350,000,000 principal amount of 8.375% guaranteed notes due December 7, 2015 (XSO171922643) (the "**2015 Notes**") and £250,000,000 principal amount of 8.875% guaranteed notes due July 10, 2023 (XSO171922643) (the "**2023 Notes**," and together with the 2015 Notes, the "**Nova Scotia Notes**") to certain beneficial owners.  The Nova Scotia Notes were guaranteed by Old GM and issued under a fiscal and paying agency agreement dated July 10, 2003 among Nova Scotia Finance as issuer, Old

4

GM as guarantor, Deutsche Bank as fiscal agent, and Banque Générale du Luxembourg S.A. as paying agent.

7.        Upon issuance of the Nova Scotia Notes, Nova Scotia Finance entered into two currency swap transactions with Old GM on July 10, 2003.  One swap related to the 2015 Notes (the "**2015 Swap**") and the other swap related to the 2023 Notes (the "**2023 Swap**," and together with the 2015 Swap, the "**Swaps**").

8.        Upon issuance of the Nova Scotia Notes, Nova Scotia Finance loaned the proceeds of the Nova Scotia Notes to General Motors of Canada Limited ("**GM Canada**"), a Canadian federal corporation whose sole shareholder was Old GM, pursuant to two loan agreements dated July 10, 2003 (the "**Intercompany Loans**").  New GM subsequently acquired Old GM's interests in GM Canada pursuant to the Bankruptcy Court's order approving the Amended and Restated Master Sale and Purchase Agreement dated as of June 26, 2009 (as amended on June 30, 2009 and July 5, 2009) between Old GM and New GM (Bankr. Dkt. No. 2968) and related orders of the Bankruptcy Court (Bankr. Dkt. Nos. 274 and 2968) (collectively, the "**Sale Order**").

**B.        The Nova Scotia Action**

9.        On March 2, 2009, Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., Drawbridge DSO Securities LLC, Drawbridge OSO Securities LLC, FCOF UB Securities LLC, Appaloosa Investment Limited Partnership I, Palomino Fund Ltd., Thoroughbred Master Ltd. and Thoroughbred Fund LP, who at the time collectively held approximately 63% of the Nova Scotia Notes, filed a lawsuit in the Supreme Court of Nova Scotia (the "**Nova Scotia Action**") against Old GM, Nova Scotia Finance, GM Canada, General Motors Nova Scotia Investments Limited ("**Nova Scotia Investments**"), a Nova Scotia limited company whose sole

member at all relevant times was Old GM, and certain individual officers and directors of such entities.

10.    The plaintiffs in the Nova Scotia Action alleged, among other things, that the defendants had engaged in oppressive conduct that impaired the ability of Nova Scotia Finance to repay the Nova Scotia Notes. The plaintiffs challenged the legality of various transfers from Nova Scotia Finance and Nova Scotia Investments to Old GM, specifically, two transfers of CDN$16,000,000 and $500,000 respectively, from Nova Scotia Finance to Old GM on May 22, 2008 and a transfer of CDN$576,672,670 from Nova Scotia Investments to Old GM on May 22, 2008. The defendants in the Nova Scotia Action disputed these allegations.

## C.    The Lock-Up Agreement

11.    Old GM and certain of its affiliates (the "**Debtors**") filed their petitions for relief under chapter 11 of the Bankruptcy Code on June 1, 2009 (the "**Petition Date**"), thereby commencing the above-captioned bankruptcy cases (the "**Bankruptcy Case**").

12.    On that same day, Old GM, Nova Scotia Finance, GM Canada, and Nova Scotia Investments entered into an agreement (the "**Lock-Up Agreement**") with Aurelius Capital Partners, LP, Aurelius Capital Master, Ltd., Drawbridge DSO Securities LLC, Drawbridge OSO Securities LLC, FCOF UB Securities LLC, Appaloosa Investment Limited Partnership I, Palomino Fund Ltd., Thoroughbred Master Ltd., Thoroughbred Fund LP, Elliott International, L.P., and The Liverpool Limited Partnership (the "**Lock-Up Noteholders**"), who then collectively held over two-thirds of the principal amount of each series of Nova Scotia Notes.

13.    Under the Lock-Up Agreement, among other provisions:

a.    Nova Scotia Finance was obligated to pay to the Noteholders a consent fee in the amount of approximately $367 million (the "**Consent Fee**")

6

upon the Noteholders' passage of an extraordinary resolution (the "**Extraordinary Resolution**") to amend the fiscal and paying agency agreement and global securities representing the Nova Scotia Notes to reflect the terms of the settlement set forth in the Lock-Up Agreement, which Consent Fee would be distributed to all Noteholders *pro rata* on the basis of their holdings.

b.      Nova Scotia Finance was obligated to deliver a consent to bankruptcy pursuant to the Canadian Bankruptcy and Insolvency Act.

c.      The Noteholders were entitled to general unsecured claims in the Bankruptcy Case for the full amount of the outstanding principal, interest and costs due upon the Nova Scotia Notes by virtue of Old GM's guarantee of such notes, to the extent permitted by law.

d.      The trustee appointed in the Nova Scotia Finance bankruptcy was entitled to a general unsecured claim in the Bankruptcy Case, under section 135 of the Companies Act, for any amounts outstanding under the Nova Scotia Notes, all amounts owed by Nova Scotia Finance to Old GM under the Swaps, and any other liabilities of Nova Scotia Finance, to the extent permitted by law.

e.      The Consent Fee payment would not reduce, limit or impair the Nova Scotia Notes, the Noteholders' claims based upon the Guarantee or the Section 135 Claim.

f.      In the event that any portion of the claim asserted by the Nova Scotia bankruptcy trustee was to be disallowed, Old GM agreed to subordinate its claim under the Swaps to the prior payment in full of the Nova Scotia Notes.

g.      Upon approval of the Extraordinary Resolution and payment by Nova Scotia Finance of the Consent Fee, the relevant Lock-Up Noteholders agreed to dismiss the Nova Scotia Action and release each of the defendants therein from all claims and demands made in the Nova Scotia Action.

h.      Upon approval of the Extraordinary Resolution and payment by Nova Scotia Finance of the Consent Fee, the Noteholders agreed to release and waive all claims against GM Canada relating to the Intercompany Loans.

14.     On June 25, 2009, the Extraordinary Resolution was passed.  On June 26, 2009, the Consent Fee was paid to the noteholders, *pro rata* on the basis of their holdings.

7

15.     On October 9, 2009, Nova Scotia Finance was adjudicated bankrupt by a Canadian court, and Green Hunt Wedlake, Inc. (the "**Nova Scotia Finance Trustee**") was appointed as bankruptcy trustee.  Old GM was the party "in the money" on the Swaps at the time of Nova Scotia Finance's bankruptcy filing.  New GM asserts that it acquired the interests of Old GM in the Swaps under the Sale Order.  The claims filed in the Nova Scotia bankruptcy case that are pertinent to this proceeding consist of (i) claims filed by Noteholders on account of amounts asserted to be due under the Nova Scotia Notes; and (ii) the claim filed on November 9, 2009 by New GM on account of amounts claimed to be due to New GM as a result of New GM's acquisition of Old GM's position under the Swaps (the "**Swap Claim**").

**D.     Proofs Of Claim**

16.     On November 30, 2009, the Nova Scotia Finance Trustee filed claim no. 66319 against Old GM seeking not less than $1,607,647,592.49 under section 135 of the Companies Act (the "**Section 135 Claim**") on account of (i) the unpaid principal and interest claimed to be owed on the Nova Scotia Notes as of October 9, 2009; and (ii) $564,493,957, claimed to be owed by Nova Scotia Finance on account of the Swap Claim.

17.     Individual Noteholders filed proofs of claims against Old GM on account of the Guarantee, specifically:  claim numbers 1556; 1558; 29379; 29647; 29648; 31167; 31168; 31868; 32887; 32888; 37319; 49548; 60234; 60251; 60547; 60566; 60567; 60964; 60993; 61481; 61520; 61915; 63955; 64298; 64332; 64340; 65554; 65765; 65784; 65934; 66206; 66216; 66217; 66218; 66265; 66266; 66267; 66312; 66448; 66462; 66718; 66735; 66769; 67022; 67034; 67035; 67244; 67245; 67345; 67428; 67429; 67430; 67498; 67499; 67500; 67501; 68705; 68941; 69306; 69307; 69308; 69309; 69340; 69341; 69552; 69734; 70200;

8

70201; and 71270 (together with the Section 135 Claim and Protective Claim (as defined herein),

the "**Nova Scotia Claims**").

18.     On December 10, 2009, Greenberg Traurig LLP, counsel to the Lock-Up

Noteholders, also filed a proof of claim, claim no. 69551 (the "**Protective Claim**") in the amount

of $314,071,424.08 on behalf of certain Noteholders on account of Old GM's Guarantee.[2]

19.     On April 24, 2011, New GM filed its New GM Administrative Expense Claim

based in part on the relief requested by the GUC Trust under Rule 60(b) of the Federal Rules of

Civil Procedure ("**Rule 60(b)**") relating to the Sale Order.

**E.     Claims Objections And Subsequent Proceedings**

20.     On July 2, 2010 and on November 19, 2010, the Official Committee of

Unsecured Creditors of Old GM (the "**Creditors' Committee**") filed, respectively, its Original

Objection and Amended Objection (together, the "**Objections**"), objecting to all claims relating

to the Nova Scotia Notes.  The Objections sought, *inter alia*, an order (i) disallowing or equitably

subordinating the Nova Scotia Claims, or, in the alternative, reducing the principal amount of the

Nova Scotia Notes by the Consent Fee, asserting that the fee should be recharacterized as a

principal prepayment; and (ii) granting relief from the Sale Order under Rule 60(b) and

Bankruptcy Rule 9024, to the extent that the Sale Order, among other things, authorized the

Debtors to assume and assign the Lock-Up Agreement and the Swaps.

---

[2]     As authorized by the Bankruptcy Court, the Protective Claim was filed on behalf of all
Noteholders except for those Noteholders who filed claim nos. 66216, 66217, 66218, 66265, 66266,
66267, 66312, 67428, 67429, 67430, 67498, 67499, 67500 and 67501 in the total aggregate amount of
approximately $758,486,107.  The aggregate total of the Protective Claim and claim nos. 66216, 66217,
66218, 66265, 66266, 66267, 66312, 67428, 67429, 67430, 67498, 67499, 67500 and 67501 is
$1,072,557,531.72.

21.     On March 1, 2012 and June 11, 2012, the GUC Trust, as successor-in-interest to the Creditors' Committee pursuant to the terms of the Plan, filed its Complaint (Adv. Pro. Dkt. No. 1) and Amended Complaint (Adv. Pro. Dkt. No. 37), respectively, against the holders of Nova Scotia Claims seeking, among other things, (i) equitable subordination or disallowance of the claims of the Nova Scotia Finance Trustee and the Lock-Up Noteholders; and (ii) recharacterization of the Consent Fee as a payment of principal and reduction of the Nova Scotia Claims accordingly.

22.     The hearing on the Objections and the trial on the Adversary Proceeding Complaint commenced on August 7, 2012 and continued for sixteen days interspersed over the course of seven and a half months.  Both the Objections and the Adversary Proceeding Complaint were contested and hotly litigated by certain participating Noteholders, the Nova Scotia Finance Trustee, and New GM.  Over the sixteen days of trial, the Bankruptcy Court heard the testimony of eleven fact witnesses and seven expert witnesses, including two swap experts, two computer forensic experts, and three Canadian law experts.

23.     During the period commencing on December 12, 2012 and concluding on March 18, 2013, the GUC Trust, New GM, the Nova Scotia Finance Trustee, and certain Noteholders[3] engaged in a sustained effort to resolve this dispute with the assistance of a mediator agreed to by the parties.  That effort concluded without the parties reaching a settlement.

---

[3]     The participating Noteholders were dB-Risk Arbitrage 1 Fund, Lyxor/Paulson International Fund Limited, Paulson Enhanced Ltd., Paulson International Ltd., Paulson Partners Enhanced, L.P. and Paulson Partners L.P. (together, the "**Paulson Noteholders**"), Worden Master Fund L.P., Worden Master Fund II L.P., Drawbridge DSO Securities LLC, Drawbridge OSO Securities LLC and FCOF UB Securities LLC (together, the "**Fortress Noteholders**"), Elliott Management Corporation, Elliott International LP and The Liverpool Limited Partnership (together, the "**Elliott Noteholders**"), and Morgan Stanley & Co. International PLC ("**Morgan Stanley**").

10

24.    Upon the close of evidence, on March 19, 2013, the Bankruptcy Court ordered

the GUC Trust to file a formal motion requesting relief under Rule 60(b).  Accordingly, on May

3, 2013, the GUC Trust filed its Rule 60(b) Motion seeking certain limited relief from the Sale

Order as necessary to permit a ruling that neither the Lock-Up Agreement nor the Swaps were

assumed and assigned to New GM and that the avoidance actions regarding the payment of the

Consent Fee were not sold to New GM.  New GM and certain Noteholders opposed the Rule

60(b) Motion. (Bankr. Dkt. Nos. 12446, 12447, Adv. Pro. Dkt. Nos. 233, 234) and the Nova

Scotia Finance Trustee joined the oppositions (Bankr. Dkt. No. 12450, Adv. Pro. Dkt. No. 235).

25.    Post-trial briefing concluded in July of 2013 and closing arguments were

scheduled for October 9, 2013.  The Bankruptcy Court indicated that it could take a good deal of

time to render a decision.

**F.    The Settlement**

26.    On June 11, 2013, the Bankruptcy Court, upon the request of the Paulson

Noteholders and with the consent of the parties, ordered the parties to participate in a mediation

under the supervision of the Honorable James M. Peck, U.S. Bankruptcy Judge, U.S. Bankruptcy

Court for the Southern District of New York.  Following the conclusion of all post-trial briefing,

the GUC Trust, the Nova Scotia Finance Trustee, New GM, the Paulson Noteholders, Morgan

Stanley and the Elliott Noteholders[4] participated in court-ordered mediation on September 9,

2013.  The parties were unable to reach agreement on September 9, 2013.  However, with the

assistance of Judge Peck, the parties continued their mediation efforts, ultimately reaching

agreement on the key economic terms of a settlement on September 13, 2013, contingent upon

final documentation and the Bankruptcy Court's approval.  Even after reaching this contingent

---

[4]    The Paulson Noteholders, Morgan Stanley, the Fortress Noteholders and the Elliott Noteholders
collectively represented holders of over 80% of the Nova Scotia Notes outstanding.

11

agreement in principle, there were remaining disagreements among the parties about certain

economic terms.  These remaining disagreements were resolved with Judge Peck's assistance

during the week of September 16, 2013, following which the parties began the process of

documenting the proposed settlement.  On September 26, 2013, the parties finalized and then

executed the Settlement Agreement annexed as Exhibit A, resolving all issues between the

parties relating to the Nova Scotia Notes, the Section 135 Claim (including the Swaps), the New

GM Administrative Expense Claim (subject to paragraph 10 of the Settlement Agreement), the

Lock-Up Agreement, the Consent Fee, the Intercompany Loans and the Rule 60(b) Motion.[5]

27.    The principal terms of the Settlement Agreement are as follows:[6]

- **Claims Allowance**:  The New Guarantee Claim will be allowed as a general unsecured claim in the amount of $1,073,000,000 and will be allocated $616,219,100 to the 2015 Notes and $456,780,900 to the 2023 Notes.  The Section 135 Claim (claim no. 66319) will be allowed as a general unsecured claim in the reduced amount of $477,000,000 and will be allocated $273,938,966 to the 2015 Notes and $203,061,034 to the 2023 Notes.  All other Nova Scotia Claims, including all Individual Guarantee Claims,[7] shall be disallowed and expunged.

- **GM Canada Payment**: The Nova Scotia Finance Trustee will direct GM Canada to pay the total sum of $50,000,000 (the "**GM Canada Payment**") as follows: (i) $16 million for payment of legal fees for the Noteholders who retained Greenberg Traurig LLP ($13.5 million) and Curtis, Mallet-Prevost, Colt & Mosle LLP ($2.5 million); (ii) $1.5 million for payment of the legal fees and expenses of the Nova Scotia Finance Trustee and its counsel, plus all amounts owed by the Nova Scotia Finance Trustee to the Canadian Office of the Superintendent of Bankruptcy; and (iii) the

---

[5]    The Settlement Agreement remains subject to the Bankruptcy Court's approval and the approval of the Nova Scotia insolvency court.

[6]    To the extent of any conflict between this summary and the Settlement Agreement, the terms of the Settlement Agreement shall control.

[7]    The Individual Guarantee Claims include the Protective Claim filed by Greenberg Traurig.

balance of the GM Canada Payment (the "**Remaining Cash Amount**") for the benefit of and ratable distribution to the Noteholders.  The Remaining Cash Amount will be allocated 57.429552632% to the 2015 Notes and 42.570447368% to the 2023 Notes.

- **New GM's Swap Claim**: The Swap Claim shall be deemed withdrawn by New GM in the bankruptcy case of Nova Scotia Finance.

- **New GM's Administrative Expense Claim**:  The New GM Administrative Expense Claim shall be deemed withdrawn, subject to paragraph 10 of the Settlement Agreement.

- **Section 503(b)/105 Motion**: The Noteholders and the Nova Scotia Finance Trustee reserve their rights to file a motion under sections 105 and 503(b) of the Bankruptcy Code for payment by the GUC Trust of up to $1.5 million in cash in the aggregate (the "**503(b) Motion**").  Such 503(b) Motion shall be filed within three business days of this Motion.  The GUC Trust has agreed that it will not oppose the 503(b) Motion.  Any order determining the 503(b) Motion shall be separate and independent of any order determining this Motion.

- **Mutual Releases**:  Mutual releases have been provided or will be deemed to have been provided as follows: by (i) New GM, GM Canada, the GUC Trust and the Noteholders to the Nova Scotia Finance Trustee, (ii) the GUC Trust, the Noteholders (past, present and future holders) and the Nova Scotia Finance Trustee to New GM and GM Canada; (iii) the GUC Trust, New GM, GM Canada and the Nova Scotia Finance Trustee to the Noteholders; and (iv) New GM, GM Canada, the Nova Scotia Finance Trustee and the Noteholders to the GUC Trust.  The Rule 60(b) Motion and the Adversary Proceeding Complaint will be dismissed with prejudice, and the Objections will be resolved in accordance with the Settlement Agreement.

- **Effectiveness**: The settlement reflected in the Settlement Agreement is contingent upon, and shall become effective upon, among other things, (i) entry of an order by the Bankruptcy Court approving the terms of the Settlement Agreement and granting such other relief sought in this Motion, which order shall have become a Final Order (as defined in the Settlement Agreement); <u>and</u> (ii) entry of an

13

order by the Supreme Court of Nova Scotia approving the
terms of the Settlement Agreement, which order shall have
become a Final Order (as defined in the Settlement
Agreement).

## BASIS FOR REQUESTED RELIEF

28.     Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the [debtor] and

after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr.

P. 9019(a).  The decision to approve a particular settlement or compromise lies within the sound

discretion of the Bankruptcy Court.  *In re Residential Capital, LLC*, Bankr. Case No. 12-12020

(MG), 2013 WL 4874346, *22 (Bankr. S.D.N.Y. Sept. 13, 2013); *In re Dewey & LeBoeuf LLP*,

478 B.R. 627, 641 (Bankr. S.D.N.Y. 2012); *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re

Drexel Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991); *see also

Mach. Terminals, Inc. v. Woodward (In re Albert-Harris, Inc.)*, 313 F.2d 447, 449 (6th Cir.

1963).

29.     As the Bankruptcy Court has recognized, "[t]he legal standard for determining

the propriety of a . . . settlement is whether the settlement is in the 'best interest of the estate.'"

*In re Adelphia Communic'ns Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005); *see also In re

Drexel Burnham Lambert Group, Inc.*, 134 B.R. at 505.  In order for a settlement to be in the

best interest of the estate, the settlement must be "fair and equitable."  *In re Adelphia

Communic'ns Corp.,* 327 B.R. 143 at 158 (citing *Protective Comm. for Indep. Stockholders of

TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).  The settlement proposed need

not constitute the best possible outcome for the debtor, and the Bankruptcy Court need not

conduct an independent investigation into the reasonableness of the settlement.  *See In re

Adelphia Communic'ns Corp.*, 327 B.R. at 159; *In re Drexel Burnham Lambert Group, Inc.*, 134

B.R. at 505.  Instead, the Bankruptcy Court is to "canvass the issue and see whether the

14

settlement 'fall[s] below the lowest point in the range of reasonableness.'" *Cosoff v. Rodman* (*In re W.T. Grant Co.*), 699 F.2d 599, 608 (2d Cir.), *cert. denied*, 464 U.S. 822 (1983) (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir.), *cert. denied sub. nom*, 409 U.S. 1039 (1972)).

30.     Courts in the Second Circuit have set forth the following factors to evaluate the reasonableness of proposed settlements:

> a.  the probability of success in the litigation;
>
> b.  the difficulties associated with collection;
>
> c.  the complexity of the litigation, and the attendant expense, inconvenience, and delay; and
>
> d.  the paramount interests of the creditors.

*In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 292 (2d Cir. 1992), *cert. dismissed*, 506 U.S. 1088 (1993); *In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522 (S.D.N.Y. 1993).

31.     The Settlement Agreement is the result of good faith and arm's-length negotiations between the parties and would not have come to fruition without the substantial assistance provided by Judge Peck.  The Settlement Agreement fairly compromises substantial claims against the Old GM bankruptcy estate, resulting in a more than $1.129 billion reduction of the Nova Scotia Claims.  Because this compromise is reasonable and serves the overall interests of Old GM's creditors, it should be approved.

## A.     Probability Of Success In The Litigation

32.     The Objections and Adversary Proceeding Complaint involve a number of disputed issues, including (i) whether the Nova Scotia Claims should be disallowed under section 502(d) of the Bankruptcy Code because payment of the Consent Fee is avoidable under sections

547, 548 or 549 of the Bankruptcy Code and the Consent Fee was not repaid; (ii) whether the claims of the Lock-Up Noteholders and the Nova Scotia Finance Trustee should be equitably subordinated to the claims of other general unsecured creditors on account of the Lock-Up Noteholder's conduct in connection with their negotiations with Old GM regarding the Nova Scotia Notes and on account of the Nova Scotia Finance Trustee's conduct in connection with the Nova Scotia Finance bankruptcy case; (iii) whether the Lock-Up Agreement and its implementing transactions are void as unauthorized postpetition transactions; (iv) whether the Consent Fee should be recharacterized as a payment of principal on the Nova Scotia Notes and the amount of the Nova Scotia Claims reduced accordingly; (v) whether the portion of the Section 135 Claim on account of the Swaps should be disallowed or reduced; (vi) whether the Bankruptcy Court should grant relief from the Sale Order to the extent necessary to grant the relief sought by the GUC Trust in the Objections and Adversary Proceeding Complaint; and (vii) whether the Section 135 Claim, to the extent of the amounts claimed on account of the Nova Scotia Notes, is duplicative of the Individual Guarantee Claims, and should therefore be disallowed.  Significant disputed issues also surround the Rule 60(b) Motion and the New GM Administrative Expense Claim.

33.    The matters at issue in this litigation involve many disputed facts and require resolution of unsettled legal issues.  As just one important example of an unresolved legal issue, the precise issue involved in determining whether the Section 135 Claim, to the extent of amounts claimed on account of the Nova Scotia Notes, is duplicative of the Individual Guarantee Claims affects the allowance of roughly one billion dollars in claims, and to the best of the knowledge of any of the parties, has not been ruled upon directly by any court.

16

34.    As another example, there are disputed matters of fact and law of (i) whether the Swaps – which constituted an asset of Old GM's estate as of the Petition Date – were validly assumed and assigned to New GM in the Bankruptcy Case (or otherwise purchased by New GM); (ii) and if they were, whether liability under such Swaps may then be asserted against Old GM's estate, and if so, in what amount.  These contested issues potentially involve more than $564 million of the Nova Scotia Claims.

35.    Similarly, there are fiercely disputed legal and factual issues concerning whether the timing of the Lock-Up Agreement and its implementing transactions render the Lock-Up Agreement an invalid postpetition agreement; whether certain actions of the Lock-Up Noteholders and the Nova Scotia Finance Trustee constitute inequitable conduct sufficient to merit equitable subordination or disallowance; whether payment of the Consent Fee was an unauthorized postpetition transfer of estate property, or in the alternative, was a voidable preferential or fraudulent transfer; whether the Consent Fee was, in fact, repaid; and whether the facts and circumstances surrounding the Consent Fee support a conclusion that the Consent Fee was, notwithstanding its characterization in the Lock-Up Agreement, a prepayment of principal.

36.    The parties have vigorously litigated these complex issues and have set forth their positions in the voluminous briefs filed with the Bankruptcy Court.  The GUC Trust believes that it will prevail on the merits and contends that the Bankruptcy Court should rule in its favor on each of the issues above.  The Noteholders, New GM, and the Nova Scotia Finance Trustee have asserted that they will ultimately prevail on the merits and strenuously deny that the GUC Trust is entitled to any relief.  Given the degree to which adjudication of this case turns on resolution of numerous, substantial factual and legal issues, the outcome of this litigation is uncertain.

17

**B.** **The Complexity Of The Litigation, And**
**Attendant Expense, Inconvenience And Delay**

37.     As discussed above, the litigation involves a number of complex factual and

legal issues, including issues of first impression.  While the parties have largely concluded the

trial before the Bankruptcy Court, resolution of these issues will yet require a substantial,

painstaking effort on the part of the Bankruptcy Court, and any judgment by the Bankruptcy

Court will likely be appealed by the non-prevailing party (and could also be subject to cross-

appeals), leading to litigation that is likely to continue for years at significant cost and

inconvenience to the parties.  Indeed, in the event that the GUC Trust were to prevail on its claim

for disallowance under section 502(d) of the Bankruptcy Code or for equitable subordination,

such a determination would likely require follow-on litigation to the extent that the claims

subject to disallowance or subordination have changed hands.  Consequently, the GUC Trust

would be required to maintain $2.69 billion of claim value in reserves on account of the Nova

Scotia Claims until all such litigation has been finally resolved.

**C.** **Paramount Interest Of The Creditors**

38.     Approval of the Settlement Agreement will result in the allowance of a $1.55

billion claim and the release of more than $1.14 billion of unsecured claims reserves.  The

release of the $1.14 billion of unsecured claims reserves will provide for an excess distribution

that will result in improved recoveries for all general unsecured creditors.  This settlement will

achieve certainty and cost-savings for unsecured creditors in connection with litigation that will

otherwise likely continue for years and will permit the GUC Trust to release reserves for the

benefit of all general unsecured creditors.  The settlement, thus, serves the paramount interest of

the general unsecured creditors of Old GM.

18

39.    The Settlement Agreement is supported by the GUC Trust, New GM, the
Nova Scotia Finance Trustee (subject to approval of the creditors of the Nova Scotia Finance
estate), and holders representing over 80% of the Nova Scotia Notes and will support the
paramount interest of the general unsecured creditors of Old GM.  The Settlement Agreement
falls well within the range of reasonableness and should be approved.

## NOTICE

40.    The GUC Trust has provided notice of this Motion to (i) the addresses listed
in the Individual Guarantee Claims identified on Exhibit C attached hereto, (ii) the parties in
interest in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and
Bankruptcy Rules 1015(c) and 9007 establishing Notice and Case Management Procedures*,
dated May 5, 2011 (Bankr. Dkt. No. 10183) and (iii) those parties served with the Objections or
the Adversary Proceeding Complaint.  The Nova Scotia Finance Trustee will also provide notice
of this Motion to all present Noteholders through the Euroclear and Clearstream settlement
systems, and all creditors that filed claims in the Nova Scotia insolvency proceeding.  The GUC
Trust submits that such notice is sufficient and no other or further notice need be provided.

## CONCLUSION

WHEREFORE, the GUC Trust respectfully requests that the Bankruptcy Court enter an

order substantially in the form attached hereto as Exhibit B and grant the GUC Trust such other

and further relief as the Bankruptcy Court deems just and proper.

Dated:          New York, New York          Respectfully submitted,
                September 27, 2013

                                            By: /s/ Barry N. Seidel
                                                Barry N. Seidel
                                                Eric B. Fisher
                                                Katie L. Weinstein
                                                Mary Kim (admitted *pro hac vice*)
                                                DICKSTEIN SHAPIRO LLP
                                            1633 Broadway
                                            New York, New York 10019-6708
                                            Telephone: (212) 277-6500
                                            Facsimile: (212) 277-6501

                                            *Counsel for the Motors Liquidation
                                            Company GUC Trust*