**Hearing Date and Time: October 21, 2013 at 2:00 p.m. (prevailing Eastern Time)**

**CURTIS, MALLET-PREVOST,
  COLT & MOSLE LLP**
101 Park Avenue
New York, NY 10178-0061
Telephone: (212) 696-6000
Facsimile: (212) 697-1559
Steven J. Reisman
Theresa A. Foudy
Ada V. Añon
E-Mail: sreisman@curtis.com
        tfoudy@curtis.com
        aanon@curtis.com

*Counsel for dbX – Risk Arbitrage 1 Fund,
Lyxor/Paulson International Fund Limited,
Paulson Enhanced Ltd., Paulson International Ltd.,
Paulson Partners Enhanced, L.P., and
Paulson Partners L.P.*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.,* | Case No.: 09-50026 (REG) |
| f/k/a General Motors Corporation, *et al.,* | (Jointly Administered) |
| Debtors. | |

------------------------------------------------------------------x

| | |
|---|---|
| MOTORS LIQUIDATION COMPANY GUC TRUST, | |
| Plaintiff, | Adversary Proceeding Case No.: 12-09802 |
| v. | |
| APPALOOSA INVESTMENT LIMITED PARTNERSHIP I, *et al.,* | |
| Defendants. | |

------------------------------------------------------------------x

-i-

## Table of Contents

Page #

PRELIMINARY STATEMENT ........................................................................................... 1

DISCUSSION ........................................................................................................................ 3

CONCLUSION .................................................................................................................... 10

# Table of Authorities

**Cases**

*GATX Terminals Corp. v. A. Tarricone, Inc. (In re A. Tarricone, Inc.)*,
   83 B.R. 253 (Bankr. S.D.N.Y. 1988) ................................................................. 4, 5

*Hall Fin. Grp., Inc. v. DP Partners, Ltd. P'ship (In re DP Partners Ltd. P'ship)*,
   106 F.3d 667 (5th Cir. 1997) ............................................................................. 4, 6

*In re 1031 Tax Grp., LLC*,
   No. 07-11448 (MG), 2007 WL 2455176 (Bankr. S.D.N.Y. Aug. 23, 2007) ............ 8

*In re Am. Plumbing & Mech., Inc.*,
   327 B.R. 273 (Bankr. W.D. Tex. 2005) ................................................................. 4

*In re Baldwin-United Corp.*,
   79 B.R. 321 (Bankr. S.D. Ohio 1987) ................................................................... 4

*In re Bayou Grp., LLC*,
   431 B.R. 549 (Bankr. S.D.N.Y. 2010) ................................................................... 2

*In re Granite Partners*,
   213 B.R. 440 (Bankr. S.D.N.Y. 1997) ................................................................... 5

*In re MF Global Inc.*,
   466 B.R. 244 (Bankr. S.D.N.Y 2012) ................................................................... 8

*In re Richton Int'l Corp.*,
   15 B.R. 854 (Bankr. S.D.N.Y. 1981) ..................................................................... 4

**Statutes**

11 U.S.C. § 105 ...................................................................................................... 1, 3
11 U.S.C. § 363 .......................................................................................................... 6
11 U.S.C. § 503(b) ........................................................................................ 1, 2, 3, 4, 5

**REPLY TO THE OBJECTION OF THE UNITED STATES
OF AMERICA TO THE MOTION OF THE PAULSON NOTEHOLDERS
PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 105 FOR ALLOWANCE
OF LIMITED PAYMENT OF PROFESSIONAL FEES AND EXPENSES
INCURRED BY THE GM NOVA SCOTIA TRUSTEE IN CONNECTION
WITH SETTLEMENT AND REQUEST FOR EXPEDITED TREATMENT**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

The Paulson Noteholders,[1] by and through its undersigned counsel, submit this reply to the *Objection of the United States of America to "Motion Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 105 for Allowance of Limited Payment of Professional Fees and Expenses Incurred by the GM Nova Scotia Finance Trustee in Connection with Settlement and Request for Expedited Treatment,"* filed on October 11, 2013 [Bankr. Dkt. No. 12522] (the "**Objection**"). By the Motion, the Paulson Noteholders seek entry of an order, substantially in the form attached hereto as **Exhibit 1** (the "**Proposed Order**"), allowing a limited administrative expense claim in the amount of $1.5 million for the actual, reasonable fees and expenses incurred by the GM Nova Scotia Trustee in connection with the Global Settlement detailed in the Rule 9019 Motion [Bankr. Dkt. No. 12512] of the GUC Trust. In further support of its Motion, the Paulson Noteholders respectfully respond to the Objection as follows:

## PRELIMINARY STATEMENT

1.  As admitted in its Objection, the United States has not directly participated in the Chapter 11 Cases, the above-captioned Adversary Proceeding, or the mediation leading to the Global Settlement recently submitted to this Court for approval by the GUC Trust. As a result, the United States "lacks first-hand knowledge of the work for which fees are sought." Objection

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to them in the *Motion of the Paulson Noteholders Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 105 for Allowance of Limited Payment of Professional Fees and Expenses Incurred by the GM Nova Scotia Trustee in Connection with Settlement and Request for Expedited Treatment*, filed on October 2, 2013 [Adv. Pro. Dkt. No. 254] (the "**Motion**").

at 2.  But first-hand knowledge of these matters is needed, because the "substantial contribution" inquiry under section 503(b)(3)(D) is a fact-intensive inquiry, and not one which may be decided by conclusory statements regarding the parties' motivations.  *See In re Bayou Grp., LLC*, 431 B.R. 549, 560 (Bankr. S.D.N.Y. 2010).

2. The facts clearly support the Paulson Noteholders' Motion.  The Paulson Noteholders and other Settlement Noteholders made substantial contributions to resolve the myriad and complex matters implicated in the Adversary Proceeding, and related to the Claims Objection, by engaging in constructive efforts to initiate and continue mediation, as well as to negotiate a final settlement with a third party contribution from New GM.  In doing so, contrary to the Objection's assertions, the Settlement Noteholders have saved this Court, the GUC Trust, and all unsecured creditors substantial expense and time and benefitted the Old GM estate in numerous ways.

3. Specifically, as a result of the substantial contributions of the Settlement Noteholders:

    (i) The GUC Trust was able to reach a Global Settlement by funding $50 million of the total settlement amount from New GM;

    (ii) The GUC Trust's funds will not be diminished by additional attorneys' fees and expenses related to the now settled litigation;

    (iii) The GUC Trust will not be responsible for the bulk of the costly implementation of that Global Settlement;

    (iv) The GUC Trust will benefit from the resolution of the Adversary, Proceeding, the Claims Objection, the Rule 60(b) Motion, and the New GM Administrative Expense Claim, and be spared litigation of issues related to the Adversary Proceeding which were deferred pending resolution of the trial; and

    (v) The GUC Trust will be able to release $1.14 billion of claim value held in reserves for potential use in connection with the now resolved Adversary Proceeding and Claims Objection, which will benefit all creditors with a significantly earlier distribution.  *See* Rule 9019 Motion at 18.

4. Accordingly, the Paulson Noteholders reiterate their request for payment of the limited amount of $1.5 million pursuant to sections 503(b) and 105(a) of the Bankruptcy Code, to be paid directly to the GM Nova Scotia Trustee in connection with, *inter alia*, expenses resulting from implementation of the Settlement Agreement. The Paulson Noteholders seek to support this request on the basis of those efforts related to the mediation and the Global Settlement, and do not seek reimbursement for any other fees or expenses related to the general involvement of Settlement Noteholders and the GM Nova Scotia Trustee in the Chapter 11 Cases. The making of this Motion is an agreed term of the Settlement Agreement, pursuant to which the GUC Trust agreed not to oppose this Motion or to object to the relief sought by this Motion. *See* Rule 9019 Motion, Ex. A ¶ 29.

## DISCUSSION

5. The United States asserts by its Objection that efforts by the Settlement Noteholders to mediate and settle this litigation did not benefit "the estate as a whole," and were primarily intended to "maximize the applicants' recovery in this case." Objection at 2. These assertions are incorrect and unsupported by the underlying facts and legal standards at issue in this Motion.

6. **First**, the United States' emphasis on the motivations of the Settlement Noteholders and the GM Nova Scotia Trustee is a red herring. The United States asserts that, rather than working with the GUC Trust to reach a solution, the Noteholders were either litigating against the GUC Trust or negotiating on their own behalf. *See* Objection at 3. It further asserts that the Settlement Noteholders' attempts to lead the parties to resolution were "self-interested steps to seek an advantageous resolution of their disputes with the estate." Objection at 4. These allegations are wholly irrelevant.

-3-

7. The lawful pursuit of one's own interests in litigation does not preclude compensation pursuant to section 503(b). On the contrary, section 503(b) "authorizes compensation for legal services rendered in making a substantial contribution to a Chapter 11 case . . . ***even if the services rendered by counsel are for its client [who is a creditor].***" *In re Richton Int'l Corp.*, 15 B.R. 854, 856 (Bankr. S.D.N.Y. 1981) (emphasis added). This is because "[t]he benefits, if any, conferred upon an estate ***are not diminished by selfish or shrewd motivations***." *Hall Fin. Grp., Inc. v. DP Partners, Ltd. P'ship (In re DP Partners Ltd. P'ship)*, 106 F.3d 667, 673 (5th Cir. 1997) (emphasis added), *cert denied*, 522 U.S. 815 (1997). Thus, in *In re Richton Int'l Corp.*, counsel to seven bank creditors was granted compensation for the services "which facilitated the progress of these cases and which substantially aided the formulation and adoption of the Plan of Reorganization," even though the Court acknowledged that the bank's counsel had represented creditors and served its own client's interests. *In re Richton Int'l Corp.,* 15 B.R. at 856. Notably, the qualifying services included "efforts to reconcile the Debtors and creditors and to negotiate and consummate the reorganization." *See id.* at 855; s*ee also In re Am. Plumbing & Mech., Inc.*, 327 B.R. 273, 282-83 (Bankr. W.D. Tex. 2005) ("benefits that can support a finding of substantial contribution include . . . lowering the 'temperature' of a case by preventing excessive litigation and encouraging cooperation" (citing *In re Baldwin-United Corp.*, 79 B.R. 321, 343 (Bankr. S.D. Ohio 1987))).

8. Other district courts have also allowed administrative expense claims for creditors who made substantial contributions while also representing their own interests. *See, e.g.*, *In re DP Partners Ltd. P'ship*, 106 F.3d at 673 (granting a creditor's motion for allowance of administrative expenses); *In re Baldwin-United Corp.*, 79 B.R. at 344 (awarding substantial contribution claim to creditor's counsel). Likewise, *GATX Terminals Corp. v. A. Tarricone, Inc.*

-4-

(*In re A. Tarricone, Inc.*), 83 B.R. 253 (Bankr. S.D.N.Y. 1988), which is cited by the United States (*see* Objection at 3), held that a creditor may be entitled to compensation under section 503(b) for "services performed on behalf of a creditor not a debtor . . . if the services performed make a substantial contribution." *In re A. Tarricone, Inc.*, 83 B.R. at 255 (denying a creditors' request for compensation under section 503(b) because the creditors "did not assert that the services performed . . . resulted in a substantial contribution"); *see also In re Granite Partners*, 213 B.R. 440, 445, 446 (Bankr. S.D.N.Y. 1997) (services are compensable under section 503(b) where there is an "actual and demonstrable benefit to the debtor's estate, the creditors, and to the extent relevant, the stockholders").

9.   The proper inquiry under section 503(b) is whether the Settlement Noteholders and the GM Nova Scotia Trustee made substantial contributions to the Chapter 11 Cases that benefitted all parties involved, including what remained of the bankruptcy estate and its creditors.  Here, the benefits to the remaining bankruptcy estate are clear.  The GUC Trust will pay a reduced proportion of the settlement due to the Settlement Noteholders' active negotiations with and inclusion of New GM—a third party who contributed $50 million to the settlement. The Settlement Noteholders' negotiations with New GM will therefore result in larger distributions to all unsecured creditors.

10.   In addition, implementation of the Global Settlement by the Settlement Noteholders and the GM Nova Scotia Trustee results in concrete economic benefits to the GUC Trust and all remaining unsecured creditors.  For example, if the Settlement Agreement is approved by this Court,[2] its final implementation and execution will result in resolution of all underlying legal issues involved in connection with the Adversary Proceeding, Claims

---

[2]   As noted *infra*, the Global Settlement is also subject to the approval of the Nova Scotia Court and other requirements to ensure compliance with Canadian law.  *See infra* ¶18.

-5-

Objection, Rule 60(b) Motion and the New GM Administrative Claim. Further, the GUC Trust will never have to litigate issues related to the Adversary Proceeding which were deferred by stipulation. *See Stipulation and Agreed Order Deferring the "Transferee Issue,"* entered Aug. 6, 2012 [Adv. Pro. Dkt. No. 169].

11. The scope and magnitude of these matters—and their potential to generate additional legal fees and expenses for the GUC Trust—cannot be overstated. By resolving the Rule 60(b) Motion alone, the Global Settlement avoided the potential reconsideration of Old GM's reorganization by section 363 sale to New GM and potential amendments to the *Amended and Restated Master Sale and Purchase Agreement dated as of June 26, 2009 (as amended on June 30, 2009 and July 5, 2009) between General Motors Corp. and General Motors LLC* (the "**MSPA**"), and related Orders of this Court approving the MSPA (collectively, the "**Sale Order**"). *See* Rule 60(b) Motion at 1. Reconsideration of the section 363 sale, the MSPA, and the Sale Order would impact nearly all creditors of the estate, as well as the estate itself.

12. Moreover, as a direct result of the Global Settlement brought about due to the substantial contributions of the Settlement Noteholders and the GM Nova Scotia Trustee, all creditors will benefit from the release of $2.69 billion of claim value held in reserves by the GUC Trust pending the resolution of all litigation related to the Adversary Proceeding and Claims Objection. *See* Rule 9019 Motion at 18. The release of this claim value will result in earlier distributions to all GUC Trust unit holders. In addition, $1.14 billion of these funds will provide for an excess distribution to all GUC Trust unit holders. *See id*. The value of all these benefits far outweighs the limited payment sought by the Paulson Noteholders on the basis of these substantial contributions. *See In re DP Partners Ltd. P'ship*, 106 F.3d at 673 ("the court should weigh the cost of the claimed fees and expenses against the benefits conferred upon the

-6-

estate which flow directly from those actions").

13.     **Second**, the Objection is premised on the erroneous assumption that the Settlement Noteholders somehow controlled the outcome of the settlement negotiations. Specifically, the United States asserts that the Settlement Noteholders' efforts to secure a $50 million payment from New GM did not benefit the estate because "the total amount that would need to be paid for a settlement to be reached is a question that is entirely within movants' control." Objection at 3. As with any settlement, in the course of negotiation *all parties to the Settlement Agreement compromised and reached a common ground*. *See* Rule 9019 Motion at 15 ("The Settlement Agreement is the result of good faith and arm's-length negotiations between the parties . . . [and] fairly compromises substantial claims against the Old GM bankruptcy estate, resulting in a more than $1.129 billion reduction of the Nova Scotia Claims.") Thus, while approval of the Settlement Agreement will result in the allowance of a $1.55 billion claim, it will also result in the reduction of the claims at issue by more than $1.129 billion. *See* Rule 9019 Motion at 15. Because of these compromises, and additional benefits resulting from the Settlement Agreement, the GUC Trust has stated that the "settlement . . . serves the paramount interest of the general unsecured creditors of Old GM." *Id*. at 18.

14.     In any event, the amount for which the Settlement Noteholders' claims were settled was merely a number—the question of how that number would be paid remained an open question. By securing the $50 million contribution from New GM, the Settlement Noteholders were able to significantly decrease the amount that would need to be paid from the GUC Trust's coffers in order to achieve settlement. Thus, the Settlement Noteholders did relieve the GUC Trust of an additional burden, resulting in greater recovery to its remaining unsecured creditors and holders of GUC Trust units.

-7-

15.     **Third**, the United States erroneously argues that any reduction in attorneys' fees and expenses to the estate as a result of the Global Settlement is "merely a byproduct of a decision by movants that it was in their own self-interest to settle their contentious dispute with the estate on terms that they had successfully negotiated." Objection at 4. The avoidance of attorneys' fees and expenses is one of the primary benefits of settlement, and not a mere byproduct. "Settlements and compromises are favored in bankruptcy . . . *[because] they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate*." *In re MF Global Inc.*, 466 B.R. 244, 247 (Bankr. S.D.N.Y 2012) (emphasis added); *see also In re 1031 Tax Grp., LLC*, No. 07-11448 (MG), 2007 WL 2455176, at *3 (Bankr. S.D.N.Y. Aug. 23, 2007) ("compromises are favored in bankruptcy because they minimize the costs of litigation and further the parties' interest in expediting the administration of a bankruptcy estate") (internal quotations omitted).

16.     Here, the only alternative to settlement was a protracted appeals process. *See* Rule 9019 Motion at 18. The parties' litigation was contentious and all sides held deeply entrenched views regarding the validity of their legal positions. The Global Settlement resolved these contentious and unsettled legal issues, as well as other costly matters that will reduce the burden on the estate like the New GM Administrative Claim. Accordingly, avoidance of a protracted appeals process is the direct, causal result of settlement, not a mere "byproduct." Objection at 4.

17.     **Fourth**, the United States incorrectly asserts that the Settlement Noteholders' efforts to have the Settlement Agreement authorized under Canadian law are again "calculated to benefit the moving creditors, not something intended to benefit the Motors Liquidation estate as a whole." *See* Objection at 4. This assertion again disregards the fact that the Settlement

-8-

Agreement is the product of intense and arm's-length negotiation and agreement between the Settlement Noteholders, the GM Nova Scotia Trustee, ***and the GUC Trust***. *See* Rule 9019 Motion at 15. By working to implement that Settlement Agreement, the Settlement Noteholders and the GM Nova Scotia Trustee act to benefit all parties to the Settlement Agreement—including the GUC Trust and its unit holders.

18. The cost of implementing the Settlement Agreement will be significant. In order to comply with Canadian law, the GM Nova Scotia Trustee must continue to incur expenses under the Settlement Agreement by:

(i) Working with the fiscal and paying agent designated by the terms of the Notes ("**Fiscal and Paying Agent**") to provide notice of the Rule 9019 Motion, as well as provide notice of the Rule 9019 Motion itself;

(ii) Filing the a procedural motion ("**GM Nova Scotia Procedural Motion**") with an accompanying proposed order;

(iii) Working with the Fiscal and Paying Agent to provide notice of the GM Nova Scotia Procedural Motion, as well as to provide notice of the GM Nova Scotia Procedural Motion in accordance with applicable Canadian laws, rules and statutes;

(iv) Appearing for a hearing on the GM Nova Scotia Procedural Motion;

(v) Providing notice for a meeting of the creditors of GM Nova Scotia, and convening the meeting;

(vi) Preparing a formal report of the GM Nova Scotia Trustee to be filed with the Nova Scotia Court;

(vii) Filing a motion with an accompanying proposed order seeking recognition of this Court's Rule 9019 approval order (if granted) (the "**GM Nova Scotia Recognition Motion**");

(viii) Working with the Fiscal and Paying Agent to provide notice of the GM Nova Scotia Recognition Motion, as well as provide notice of the GM Nova Scotia Recognition Motion in accordance with applicable Canadian laws, rules and statutes;

(ix) Appearing for a hearing on the GM Nova Scotia Recognition Motion; and

(x) Distributing assets of the GM Nova Scotia estate.

*See* Rule 9019 Motion, Ex. A ¶¶ 5-6, 27-28.  In addition, on account of the significant sums of cash and GM securities that the GM Nova Scotia Trustee is tasked with distributing under the Global Settlement, the GM Nova Scotia Trustee will be required to pay the Canadian Office of the Superintendent of Bankruptcy a substantial levy under sections 128 and 147 of the Canadian Bankruptcy and Insolvency Act.  *See* Rule 9019 Motion, Ex. A ¶¶ 5(c).

19.    These actions will be taken on behalf of all parties to the Settlement Agreement, and benefit all unsecured creditors of the GUC Trust who are now relieved of the legal fees and expenses related to this litigation.

## **CONCLUSION**

20.    For the foregoing reasons, the Paulson Noteholders, on behalf of and for the benefit of all holders of Notes, respectfully ask that the Court approve its request for payment of the limited sum of $1.5 million, which represents only the portion of the fees and expenses actually incurred by the Settlement Noteholders and the GM Nova Scotia Trustee in making substantial contributions to the Chapter 11 Cases, and overrule the United States' Objection.

Dated:  New York, New York
    October 17, 2013

                         **CURTIS, MALLET-PREVOST,
    COLT & MOSLE LLP**

                         By:  /s/ Steven J. Reisman
    Steven J. Reisman
    Theresa A. Foudy
    Ada V. Añon

101 Park Avenue
New York, New York 10178-0061
Telephone:  (212) 696-6000
Facsimile:  (212) 697-1559
E-mail:  sreisman@curtis.com
    tfoudy@curtis.com
    aanon@curtis.com

*Counsel to the Paulson Noteholders*

-10-

Exhibit 1:

Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
: 
In re: : Chapter 11
: 
MOTORS LIQUIDATION COMPANY, *et al.,* : Case No.: 09-50026 (REG)
f/k/a General Motors Corporation, *et al.,* :
: (Jointly Administered)
Debtors. :
: 
-------------------------------------------------------------------------x
: 
MOTORS LIQUIDATION COMPANY GUC TRUST, :
: Adversary Proceeding
Plaintiff, : Case No.: 12-09802
: 
v. :
: 
APPALOOSA INVESTMENT LIMITED :
PARTNERSHIP I, *et al.,* :
: 
Defendants. :
: 
-------------------------------------------------------------------------x

**ORDER GRANTING MOTION OF THE PAULSON NOTEHOLDERS
PURSUANT TO 11 U.S.C. §§ 503(b)(3)(D) AND 105 FOR ALLOWANCE
OF LIMITED PAYMENT OF PROFESSIONAL FEES AND EXPENSES
INCURRED BY THE GM NOVA SCOTIA TRUSTEE IN CONNECTION
WITH SETTLEMENT AND REQUEST FOR EXPEDITED TREATMENT**

Upon the *Motion of the Paulson Noteholders Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 105 for Allowance of Limited Payment of Professional Fees and Expenses Incurred by the GM Nova Scotia Trustee in Connection with Settlement and Request for Expedited Treatment*, filed October 2, 2013 [Adv. Pro. Dkt. No. 254] (the "**Motion**")[1] seeking entry of an order, pursuant to sections 503(b)(3)(D) and 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**") allowing payment of a $1.5 million administrative expense

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

-2-

claim to the GM Nova Scotia Trustee on the basis of the substantial contributions of the Settlement Noteholders and the GM Nova Scotia Trustee to the Global Settlement of the Adversary Proceeding, Claims Objection, Rule 60(b) Motion and New GM Administrative Expense Claim, as more fully described in the Motion; and it appearing that this Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Objection having been provided in accordance with the requirements of the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007 Establishing Notice and Case Management Procedures*, entered May 5, 2011 [Bankr. Dkt. No. 10183] (the "**Case Management Order**"), and it appearing that no other or further notice need be provided; and upon consideration of the *Objection of the United States of America to "Motion Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 105 for Allowance of Limited Payment of Professional Fees and Expenses Incurred by the GM Nova Scotia Finance Trustee in Connection with Settlement and Request for Expedited Treatment,"* filed Oct. 11, 2013 [Bankr. Dkt. No. 12522] (the "**Objection**"), and the Paulson Noteholders' *Reply to the Objection of the United States of America to "Motion Pursuant to 11 U.S.C. §§ 503(b)(3)(D) and 105 for Allowance of Limited Payment of Professional Fees and Expenses Incurred by the GM Nova Scotia Finance Trustee in Connection with Settlement and Request for Expedited Treatment,"* filed Oct. 17, 2013 [Bankr. Dkt. No. _____]; and the Court having found and determined that the relief sought in the Motion is in the best interests of the estate, creditors, and all parties in interest, and that the legal and factual basis set forth in the Motion and the Reply establish just cause for the relief requested therein; and after due deliberation and sufficient cause appearing therefore, it is

-3-

**ORDERED**, that the Settlement Noteholders are hereby granted, pursuant to sections 503(b)(3)(D) and 105(a) of the Bankruptcy Code, an allowed administrative claim in the amount of $1,500,000 (the "**Administrative Claim Amount**"); and it is further

**ORDERED**, that the GUC Trust is hereby authorized to pay the GM Nova Scotia Trustee the Administrative Claim Amount in full; and it is further

**ORDERED**, that this Order may not be used as precedent in other cases; and it is further

**ORDERED**, that this Court shall retain jurisdiction with respect to all matters arising from or related to the interpretation or implementation of this Order.

Dated: October __, 2013
       New York, New York

                                                                                                                                 _____
                                                                                                                                   THE HONORABLE ROBERT E. GERBER
                                                                                                                                   UNITED STATES BANKRUPTCY JUDGE