**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corporation, *et al.*, | Bankruptcy Case No.: 09-50026 (REG) (Jointly Administered) |
| Debtors. | |
| MOTORS LIQUIDATION COMPANY GUC TRUST, | |
| Plaintiff, | Adversary Proceeding Case No.: 12-09802 |
| v. | |
| APPALOOSA INVESTMENT LIMITED PARTNERSHIP I, *et al.*, | |
| Defendants. | |

**ORDER PURSUANT TO SECTIONS 105, 363
AND 1142 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES
3020 AND 9019, AUTHORIZING AND APPROVING THE GLOBAL
SETTLEMENT AGREEMENT BY AND AMONG THE GUC TRUST,
THE GUC TRUST MONITOR, THE NOVA SCOTIA TRUSTEE,
NEW GM, GM CANADA, AND THE REPRESENTATIVE NOTEHOLDERS**

Upon the motion of Motors Liquidation Company GUC Trust (the "**GUC Trust**") filed on [date], 2013 [Docket No. __] (the "**Motion**") for entry of an order authorizing and approving the global settlement embodied in the agreement attached hereto as Exhibit 1 (the "**Settlement Agreement**"),[1] by and among the GUC Trust, FTI Consulting, Inc., as trust monitor of the GUC Trust (in such capacity, the "**GUC Trust Monitor**"), Green Hunt Wedlake, Inc. as Trustee (the "**Nova Scotia Trustee**") for General Motors Nova Scotia Finance Corporation ("**GMNSFC**"), General Motors LLC ("**New GM**"), General Motors of Canada Limited ("**GM**

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed thereto in the Settlement Agreement.

Canada"), and Morgan Stanley & Co. International plc, Worden Master Fund L.P. and Worden Master Fund II L.P., Drawbridge DSO Securities LLC, Drawbridge OSO Securities LLC, FCOF UB Securities LLC, Elliott Management Corporation, Elliott International LP, The Liverpool Limited Partnership, DbX – Risk Arbitrage 1 Fund, Lyxor/Paulson International Fund Limited, Paulson Enhanced Ltd., Paulson International Ltd., Paulson Partners Enhanced, L.P., Paulson Partners L.P. (collectively, the "**Representative Noteholders**", and together with the GUC Trust, the GUC Trust Monitor, New GM, GM Canada, the Nova Scotia Trustee, the "**Parties**"); and the Court having considered the Motion; and a hearing on the Motion having been held before this Court on October 21, 2013 (the "**Hearing**") to consider the relief requested in the Motion; and the Court having found that it has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Plan; and the Court having considered the statements of counsel on the record of the Hearing and the filings of the parties in connection with the Motion; and it appearing that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and the Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and upon the record of the Hearing; and it appearing that proper and adequate notice of the Motion has been given in accordance with Paragraph 40 of the Motion and that no other or further notice is necessary; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS AND DETERMINES THAT:**[2]

    A.    This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

    B.    The statutory predicates for the relief requested in the Motion are Sections 105, 363 and 1142 of the Bankruptcy Code and Bankruptcy Rules 3020 and 9019.

---

[2] The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C. As evidenced by the affidavits of service filed with this Court, and in accordance with Paragraph 40 of the Motion, notice has been given and a reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to (i) the addresses listed in the proofs of claim identified on Exhibit C attached to the Motion, (ii) the parties in interest in accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Bankruptcy Rules 1015(c) and 9007 establishing Notice and Case Management Procedures*, dated May 5, 2011 and (iii) those parties served with the Objections or the Adversary Proceeding Complaint. Additional notice of the Motion has been given by the Nova Scotia Trustee as set forth in Paragraph 28 of the Settlement Agreement and Paragraph 40 of the Motion. The notice was good, sufficient and appropriate in light of the circumstances and the nature of the relief requested, and no other or further notice is or shall be required.

D. The GUC Trust has demonstrated good, sufficient and sound business purposes, causes and justifications for the relief requested in the Motion and the approval of the Settlement Agreement and the transactions contemplated thereby.

E. The GUC Trust has demonstrated that the relief requested in the Motion is necessary for the prompt and efficient administration of the GM Bankruptcy cases and is in the best interests of the GUC Trust, its beneficiaries and other parties-in-interest.

F. After due diligence by the Parties, the Settlement Agreement was negotiated and entered into by and among the Parties, each of which was represented by counsel, without collusion, in good faith and from arm's length bargaining positions.

G. The GUC Trust has demonstrated that continued litigation of the matters resolved by the Settlement Agreement could be complex, costly and delay the closing of the GM

-3-

Bankruptcy cases and the distribution of the assets to holders of Class 3 Allowed Claims in accordance with the Plan.

H.     The Settlement Agreement resolves multiple disputes, claims and issues to which the Parties are involved in varying degrees and in related but not necessarily identical ways, such that, each Party's overall obligations to one or more other Parties constitute good and sufficient consideration for the overall benefits each Party is to receive from one or more of the other Parties.

I.     The settlements, compromises, releases, and transfers contemplated in the Settlement Agreement, are fair, reasonable and given in exchange for valuable and reasonably equivalent consideration.

J.     The GUC Trust's entry into the Settlement Agreement, including the compromises and releases embodied therein, is a prudent and reasonable exercise of business judgment that is in the best interests of the GUC Trust and its beneficiaries.

K.     The proofs of claim identified in Exhibit A to the Settlement Agreement encompass and account for all amounts included in the Guarantee Claim.

L.     The Settlement Agreement represents a multi-party resolution of a number of complex factual and legal issues, and the releases and acknowledgments contained therein, and the injunction and findings provided by this Order, are a necessary element of the consideration received by the Parties, and a condition to the effectiveness of the Settlement Agreement.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.     The relief requested by the Motion is GRANTED and the Settlement Agreement and each of its terms are approved in their entirety.

2.     Any and all objections to the Motion that have not been withdrawn, resolved, waived or settled as reflected on the record of the Hearing are overruled on the merits.

3. In accordance with Paragraphs 32, 33 and 40 of the Settlement Agreement, the Settlement Agreement shall be effective and binding on all persons upon the <u>Effective Date</u>, including, but not limited to, all past, present and future holders of the Notes and any past or present unit holder of the GUC Trust.

4. This Court authorizes the GUC Trust to perform all of its obligations pursuant to the terms of the Settlement Agreement, and to take any and all actions necessary or appropriate to effectuate the Settlement Agreement and to enforce its terms.

5. Upon the Effective Date, the Guarantee Claim shall be allowed as a Class 3 Claim in the amount of USD $1,073,000,000 (the "**Allowed Guarantee Claim Amount**"). The Allowed Guarantee Claim Amount will be allocated USD $616,219,100 to the 2015 Notes and USD $456,780,900 to the 2023 Notes.[3]

6. Upon the Effective Date, the Wind-Up Claim shall be reduced to $477,000,000 and allowed as a Class 3 Claim as so reduced (the "**Allowed Wind-Up Claim Amount**"). The Allowed Wind-Up Claim Amount will be allocated $273,938,966 to the 2015 Notes and $203,061,034 to the 2023 Notes.

7. The GUC Trust is hereby authorized and directed to distribute, in the aggregate, 6,174,015 shares of New GM Common Stock, 5,612,741 New GM $10.00 Warrants, 5,612,741 New GM $18.33 Warrants, and 1,550,000 Units (each as defined in the GUC Trust Agreement, and collectively, the "**Distribution**") for the benefit of All Holders as set forth in the Settlement Agreement. Promptly following the Distribution, the GUC Trust shall notify all Parties of the date of the Distribution (the "**Distribution Notice**").

---

[3] All recoveries and distributions made to All Holders of the Notes, including those provided for in Paragraphs 1, 2, and 7 of the Settlement Agreement shall be allocated 57.429552632% to the 2015 Notes and 42.570447368% to the 2023 Notes.

-5-

8. Within 30 days of the Effective Date, the GUC Trust shall make a special, excess distribution pursuant to Sections 5.4 and 5.8 of the GUC Trust Agreement.

9. In the event that assets of the Avoidance Action Trust (as defined in the Plan) become available for distribution to holders of Allowed General Unsecured Claims (as defined in the Plan) in the manner set forth in the Avoidance Action Trust Agreement (as defined in the Plan), distributions in respect of the Guarantee Claim Amount and the Allowed Wind-Up Claim Amount shall be made to the registered holders of Notes as of the Record Date.

10. On the later of: (a) two (2) business days after receipt of the Distribution Notice; or (b) two (2) business days after the Effective Date (the "**Cash Distribution Date**") in full settlement of the Settled Disputes and in contemplation of, among other things, (i) the releases set forth in Paragraphs 13, 15, and 17 of the Settlement Agreement, and (ii) the acknowledgements by the GUC Trust, all past, present and future holders of Notes and the Nova Scotia Trustee set forth in Paragraph 23 of the Settlement Agreement, GM Canada is hereby directed to pay the total sum of fifty million U.S. Dollars (USD $50,000,000) (the "**GM Canada Payment**") to the Nova Scotia Trustee who shall direct the GM Canada Payment to the following recipients:

   a. USD $13,500,000 to a trust account designated by Greenberg Traurig, LLP;

   b. USD $2,500,000 to a trust account designated by Curtis, Mallet-Prevost, Colt & Mosle, LLP;

   c. On the Cash Distribution Date, the Nova Scotia Trustee, in its absolute and sole discretion and in good faith consultation with the Representative Noteholders, will determine the amounts owed by the GMNSFC estate to the Canadian Office of the Superintendent of Bankruptcy pursuant to Sections 128 and 147 of the BIA (the "**Superintendent's Levy**") and will instruct GM Canada to pay the amount of USD $ 1,500,000 plus the Superintendent's Levy to a trust account designated by the Nova Scotia Trustee for payment of all amounts and professional fees related to the winding up and final closure of the GMNSFC BIA Proceedings; and

        d.        The balance of the GM Canada Payment (the "**Remaining Cash Amount**") to the Fiscal and Paying Agent for the benefit of and ratable distribution to All Holders as of the Record Date.

        11.        The Fiscal and Paying Agent is authorized and directed to distribute the Remaining Cash Amount to All Holders upon receipt as set forth in the Settlement Agreement.

        12.        Upon the Effective Date, the proofs of claim identified in Exhibit A to the Settlement Agreement shall be disallowed, and the amount of the Wind-Up Claim in excess of USD $477,000,000 shall be disallowed.

        13.        As part of the settlement contained in the Settlement Agreement, on the Effective Date, the New GM Administrative Claim shall be deemed withdrawn without the necessity of a formal pleading being filed by New GM or the GUC Trust with the Bankruptcy Court, subject to the following conditions and understandings: (a) that portion of the New GM Administrative Claim that relates to, arises from, or concerns the Rule 60(b) Motion shall be deemed withdrawn with prejudice by New GM; (b) the remaining New GM Administrative Claim shall consist of the following two components: (i) the Environmental Response Trust shall remain liable for all environmental obligations set forth in the New GM Administrative Claim; and (ii) the GUC Trust shall remain liable, to the extent required by or set forth in the Final MSPA, the Sale Approval Order, the Plan or the Confirmation Order, for all obligations still owed to or to be performed by the GUC Trust in favor of New GM under the Sale Approval Order, the Final MSPA, the Plan, the Confirmation Order, and/or the Transition Services Agreement (as defined in the Final MSPA) ("**Remaining Administrative Claims**"); provided, however, that, subject to the further proviso below, the GUC Trust is not required to reserve any cash or New GM Securities on account of the Remaining Administrative Claims, and the sole remedy of New GM against the GUC Trust for any breach of the Sale Approval Order, the Final MSPA, the Plan, the Confirmation Order, and/or the Transition Services Agreement shall be

specific performance; provided further, however, that if a specific claim or demand is made by New GM against the GUC Trust after the Effective Date in connection with the Remaining Administrative Claims, New GM may seek Bankruptcy Court authorization (a) in addition to specific performance, a damages remedy, and (b) to establish a reserve for such claim or demand (up to an aggregate limit of $1 million) at the time such claim or demand is made but such reserve shall be limited to the assets that remain in the reserve established by the GUC Trust for secured, administrative and priority claims.

14. On the Effective Date, the Claims Objection, the Adversary Proceeding, and the Rule 60(b) Motion shall be deemed dismissed with prejudice and without costs and without the necessity of a formal pleading being filed by the GUC Trust with the Bankruptcy Court to effectuate such results.

15. Without derogation to any other provision of the Settlement Agreement, the Court expressly finds that the releases contained in Paragraphs 13-22 of the Settlement Agreement are hereby approved in their entirety and are incorporated by reference into this Order.

16. The Released Parties[4] and the GUC Trust Monitor: (a) shall have no liability whatsoever to any holder or purported holder of a claim or equity interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, or arising out of, the settlement of the claims addressed by the Settlement Agreement, or the pursuit of approval of the Settlement Agreement, the administration of the Settlement Agreement, or any transaction contemplated by the Settlement Agreement, or in furtherance thereof, or any obligations that they have under or in connection with the Settlement

---

[4] The "**Released Parties**" are all of the releasees as defined in Paragraphs 13-22 of the Settlement Agreement.

Agreement or the transactions contemplated by the Settlement Agreement (collectively, the "**Exculpated Claims**"), except (i) for any act or omission that constitutes willful misconduct or gross negligence as determined by a final order, and (ii) for any contractual obligation that is owed to a Party under the Settlement Agreement or this Order, and (b) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Settlement Agreement.  No holder of any claim or interest, or other party-in-interest, none of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, and no successors or assigns of the foregoing, shall have any right of action against the Released Parties or the GUC Trust Monitor with respect to the Exculpated Claims.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations and any other applicable law or rules protecting such Released Parties and the GUC Trust Monitor from liability.

17.     All releases, exculpations, waivers and covenants not to sue contained herein and in the Settlement Agreement are hereby authorized and approved in their entirety.

18.     Upon the occurrence of the Effective Date and in consideration of the settlement, compromises and releases embodied in the Settlement Agreement, all persons, including, but not limited to, all past, present and future holders of Notes, GMNSFC, the Nova Scotia Trustee or any creditor of Old GM or GMNSFC that have held, currently hold or may hold a claim, demand, debt, right, cause of action or liability that arises out of or is related to the Lock-Up Agreement, the Consent Fee (including the funding of the Consent Fee or the repayment of any loans made by Old GM which indirectly funded the Consent Fee), the Notes, the Intercompany Loans, the Guarantee, the Guarantee Claim, the Wind-Up Claim, the Extraordinary Resolution, the June 25 Agreement, GMNSFC, the GMNSFC BIA Proceedings,

the Claims Objection, the Adversary Proceeding, the Rule 60(b) Motion, the Oppression Action, or this Settlement Agreement (except for any obligation that is owed to a Party under the Settlement Agreement or this Order) (collectively, the "**GM Enjoined Claims**"), against New GM, GM Canada and any of their subsidiaries or affiliates, and any or all of their respective past, present or future agents, employees, officers, directors, shareholders, successors, assigns, members, representatives (in their capacity as such), and the Individuals, and any former director, officer or employee of GMNSFC (collectively, the "**GM Released Parties**"), shall be enjoined and forever barred from directly or indirectly bringing, commencing, initiating, instituting, maintaining, prosecuting or otherwise aiding, whether for the benefit of the GUC Trust, the Debtors' chapter 11 estates, former or present creditors of the Debtors or GMNSFC, or for the benefit of any other third party, in any action of any kind or nature, whether in the United States, Canada or elsewhere, against any of the GM Released Parties with respect to the GM Enjoined Claims. The injunction set forth in this Paragraph, which shall be effective on the Effective Date, is based on, among other things, the Court's independent confirmation of the acknowledgments made by the GUC Trust, all past, present and future holders of the Notes, and the Nova Scotia Trustee in Paragraph 23 of the Settlement Agreement.

19.    Upon the occurrence of the Effective Date and in consideration of the settlement, compromises and releases embodied in the Settlement Agreement, all persons that have held, currently hold or may hold a claim, demand, debt, right, cause of action or liability that arises out of or is related to the Lock-Up Agreement, the Consent Fee (including the funding of the Consent Fee or the repayment of any loans made by Old GM which indirectly funded the Consent Fee), the Notes, the Intercompany Loans, the Guarantee, the Guarantee Claim, the Wind-Up Claim, the Extraordinary Resolution, the June 25 Agreement, GMNSFC, the

GMNSFC BIA Proceedings, the Claims Objection, the Adversary Proceeding, the Rule 60(b) Motion, the Oppression Action, or this Settlement Agreement (except for any obligation that is owed to a Party under the Settlement Agreement or this Order) (collectively, the "**Other Enjoined Claims**"), against all past, present and future holders of Notes, the Nova Scotia Trustee, for itself, and on behalf of the bankruptcy estate of GMNSFC, the GUC Trust, for itself, and on behalf of the MLC bankruptcy estates and any of their subsidiaries or affiliates, and any or all of their respective past, present or future agents, employees, officers, directors, shareholders, successors, assigns, members, representatives (in their capacity as such) (collectively, the "**Other Released Parties**"), shall be enjoined and forever barred from directly or indirectly bringing, commencing, initiating, instituting, maintaining, prosecuting or otherwise aiding, whether for the benefit of the GUC Trust, the Debtors' chapter 11 estates, former or present creditors of the Debtors or GMNSFC, or for the benefit of any other third party, in any action of any kind or nature, whether in the United States, Canada or elsewhere, against any of the Other Released Parties with respect to the Other Enjoined Claims. Nothing in this paragraph shall be deemed to modify, annul or otherwise vitiate the rights and protections granted to the GM Released Parties in the Settlement Agreement and this Order, including without limitation, Paragraphs 17, 18 and 20 of this Order.

20.         All past, present and future holders of the Notes (and the other Parties) shall not commence any litigation of any kind, whether in the United States, Canada or elsewhere, which will result in a third party asserting a claim, liability or demand against the GM Released Parties in respect of the GM Enjoined Claims.

21. The Settlement Agreement, including any term, condition or other provision therein, may not be waived, modified, amended or supplemented, except as provided in the Settlement Agreement.

22. The failure to specifically describe or include any particular provision of the Settlement Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Settlement Agreement be authorized and approved in its entirety.

23. The Bankruptcy Court requests the aid and recognition of any court, tribunal, regulatory, administrative or other judicial body having jurisdiction in Canada to give effect to this Order and aid in carrying out its terms.

24. If there is any conflict between the terms of the Motion and the Settlement Agreement, the terms of the Settlement Agreement shall control, and if there is any conflict between the terms of this Order and the Settlement Agreement, the terms of this Order shall control.

25. Notwithstanding the possible applicability of Bankruptcy Rules 3020, 6004, 6006, 7062, or otherwise, the terms and conditions of this Order shall be immediately effective and enforceable upon its entry.

26. The Bankruptcy Court shall have exclusive jurisdiction to interpret and enforce the Settlement Agreement and to resolve any disputes relating to or concerning the Settlement Agreement.

Dated: October **21**, 2013

*s/ Robert E. Gerber*  
THE HONORABLE ROBERT E. GERBER  
UNITED STATES BANKRUPTCY COURT