```
                                                    USDS SDNY
                                                    DOCUMENT
UNITED STATES DISTRICT COURT                        ELECTRONICALLY FILED
SOUTHERN DISTRICT OF NEW YORK                       DOC #: _____
                                                    DATE FILED: 9-26-13
```

| | |
|---|---|
| In re MOTORS LIQUIDATION COMPANY, *et al.*, f/k/a General Motors Corporation, *et al.*, | Chapter 11 Case No. 09-50026 (REG) (Jointly Administered) |
| Debtors. | |
| MARJORIE A. CREAMER, Appellant, | |
| -v- | No. 12 Civ. 6074 (RJS) MEMORANDUM AND ORDER |
| MOTORS LIQUIDATION COMPANY GUC TRUST, | |
| Appellee. | |

RICHARD J. SULLIVAN, District Judge:

Marjorie A. Creamer ("Appellant"), proceeding *pro se*, appeals from the United States Bankruptcy Court's decision expunging the proof of claim she filed in the above-captioned Chapter 11 case. For the reasons that follow, the Court affirms the Bankruptcy Court's decision over Appellant's objection.

I. BACKGROUND[1]

Bankruptcy Court Proceedings

On June 1, 2009, Motors Liquidation Company, formerly known as General Motors

---

[1] In resolving the instant appeal, the Court has considered Appellant's Notice of Appeal (Doc. No. 1), Appellant's Designation of Bankruptcy Record on Appeal (Doc. No. 2) and the documents designated therein, the Counter Designation of Bankruptcy Record on Appeal (Doc. No. 3) and the documents designated therein ("CD-__"), Appellant's Supplemental Designation of Bankruptcy Record on Appeal (Doc. No. 4), Appellant's Opening Brief (Doc. No. 7) ("Mem."), Appellee's Brief (Doc. No. 12) ("Opp'n"), Appellant's Reply Brief (Doc. No. 17) ("Reply"), Appellant's May 1, 2013 Letter (Doc. No. 29), Appellee's Response to that Letter (Doc. No. 31), and Appellant's Proof of Claim ("Claim No. 60788") (CD-4 Ex. F), as well as all other communications by the parties with the Court, each of which is on the electronic docket for this case. Unless otherwise noted, citations to the documents on the electronic docket for this case refer to the page numbers assigned to that document by the ECF system as opposed to any other page numbers on that document.

Corporation ("Old GM"), and certain of its subsidiaries (collectively with Old GM, "Debtors"[2]) each filed for protection under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New York ("Bankruptcy Court"). (Opp'n at 3–4.) Soon thereafter, Debtors arranged to sell substantially all of their assets and assign many of their liabilities to General Motors, LLC ("New GM") pursuant to the Amended and Restated Master Sale and Purchase Agreement (the "Purchase Agreement"), dated as of June 26, 2009. (Doc. No. 40–1.) On July 5, 2009, the Bankruptcy Court approved the Purchase Agreement. (Opp'n at 4.)

Section 2.3(a) of the Purchase Agreement enumerates the specific liabilities of Debtors that were assumed by New GM. Section 2.3(a)(ix) describes the scope of product liability claims assumed by New GM: "all Liabilities to third parties for death, personal injury, or other injury to [p]ersons . . . caused by motor vehicles . . . or [their] component parts . . . manufactured, sold or delivered by [Debtors], which arise directly out of accidents, incidents or other distinct and discre[te] occurrences that happen on or after the Closing Date . . . ."[3] (Purchase Agreement § 2.3(a)(ix).) The Purchase Agreement also provides that New GM would assume "(A) all Liabilities arising under express warranties of [Debtors] . . . delivered in connection with the sale of new, certified used or pre-owned vehicles or . . . [their] parts and equipment . . . manufactured or sold by [Debtors] . . . prior to or after the Closing and (B) all obligations under Lemon

---

[2] The term "Debtors" as used in this Memorandum and Order includes each of the following entities that filed for Chapter 11 protection on June 1, 2009: General Motors Corporation; MLC, MLCS, LLC (f/k/a Saturn, LLC); MLCS Distribution Corporation (f/k/a Saturn Distribution Corp); and MLC of Harlem, Inc. (f/k/a Chevrolet-Saturn of Harlem, Inc.). The Court notes that two additional entities – Remediation and Liability Management Company, Inc., and Environmental Corporate Remediation Company, Inc. – commenced Chapter 11 cases on October 9, 2009 and their cases are also jointly administered under Case Number 09-50026 (REG).

[3] The definition of the term "Liabilities" in the Purchase Agreement is quite expansive: "'Liabilities' means any and all liabilities and obligations of every kind and description whatsoever, whether such liabilities or obligations are known or unknown, disclosed or undisclosed, matured or unmatured, accrued, fixed, absolute, contingent, determined or undeterminable, on or off-balance sheet or otherwise, or due or to become due, including Indebtedness and those arising under any Law, Claim, Order, Contract or otherwise." (Purchase Agreement § 1.1 (Defined Terms).)

2

Laws."[4] (*Id.* § 2.3(a)(vii).)

On September 16, 2009, the Bankruptcy Court set a deadline of November 30, 2009 for the filing of proofs of claim in the Debtors' cases (the "Bar Date"). (Opp'n at 4.) On March 29, 2011, the Bankruptcy Court entered an Order confirming a bankruptcy plan, which created the Motors Liquidation Company GUC Trust (the "GUC Trust") to, among other things, resolve outstanding disputed unsecured claims against Debtors. (*Id.*)

On December 22, 2011, more than two years after the Bar Date, Appellant filed a proof of claim (the "Claim") seeking $2 million in damages related to a car accident that occurred on September 24, 2009. (CD-4, Ex. F.) The GUC Trust filed an objection to the Claim (the "Objection") on March 22, 2012, seeking to expunge the Claim because (1) it was not timely filed, and (2) it named the wrong party, since pursuant to the Purchase Agreement, New GM assumed any obligations associated with Appellant's car accident. (CD-4.) Appellant filed a response to the Objection, dated April 18, 2012, stating that her claim is "just and knowingly the obligation [and] liability of new GM reorganization."[5] (CD-8.) Appellant also filed no less than six letters with the Bankruptcy Court in support of her Claim against Debtors. (*See* CD-1, CD-2, CD-3, CD-5, CD-6, CD-7.)

The Bankruptcy Court held oral argument on the Objection on April 26, 2012 (the "Hearing"), at which Appellant appeared by telephone, and sustained the Objection. In his decision, the Honorable Robert E. Gerber, United States Bankruptcy Judge, stated:

---

[4] "Lemon Laws" is defined in the Purchase Agreement as "a state statute requiring a vehicle manufacturer to provide a consumer remedy when such manufacturer is unable to conform a vehicle to the express written warranty after a reasonable number of attempts, as defined by the applicable statute." (*Id.* § 1.1 (Defined Terms).)

[5] In this letter, Appellant makes reference to both her Claim, which is Claim No. 71249, as well as to Claim No. 48506. Her letter does not make clear what this latter claim is and she has not included a claim with that number in either her Designation of Bankruptcy Record on Appeal (Doc. No. 2) or Supplemental Designation of Bankruptcy Record on Appeal (Doc. No. 4). Further, the Bankruptcy Court decision at issue only references Claim No. 71249. Accordingly, the Court also only considers Claim No. 71249.

3

> [Appellant] bought a GM vehicle that caused a wreck on September 24, 2009, causing severe injuries. It is alleged, and for the purpose of this analysis, I take it as true, that she bought the vehicle back in 2007. . . . It is undisputed, or should be, that under the sale agreement, [N]ew GM assumed all liabilities to third parties for death, personal injury, or other injury to persons, or damage to property caused by motor vehicles, which arose directly out of death, personal injury or other injury to persons or damage to property caused by accidents or incidents first occurring on or after the closing date. And it is also undisputed that the closing date was back in July of 2009, several months before the wreck that caused the . . . severe injuries.

(CD-15 ("Hr'g Tr.") at 59:5–20.) The Bankruptcy Court then entered an Order, dated May 16, 2012 ("May 16 Order"), memorializing its ruling at the Hearing by granting "the relief requested in the Objection" and "disallow[ing] and expung[ing]" the Claim "pursuant to section 502(b) of the Bankruptcy Code." (CD-13.) In expunging the Claim, the Bankruptcy Court did not address, let alone make any findings concerning the timeliness argument raised in the Objection.[6] (*Id.*)

Appellant later requested that the Bankruptcy Court permit reargument on the Objection because her telephone call was disconnected before the Hearing ended. (CD-17). In an Order dated June 26, 2012 ("June 26 Order"), the Bankruptcy Court denied this request, explaining that "Ms. Creamer was not deprived of the opportunity to present any part of her argument." (*Id.*) Along with its June 26 Order, the Bankruptcy Court also mailed Appellant a copy of the complete hearing transcript. (*Id.*)

## District Court Proceedings

On June 27, 2012, Appellant executed a Notice of Appeal challenging the Bankruptcy Court's decision expunging her Claim. (Doc. No. 1.) The Notice of Appeal was received by this

---

[6] The Court also notes that the Bankruptcy Court, after recognizing that "the history of this matter does indicate a lot of vexatious litigation" (Hr'g Tr. 60:7–8) and referencing Appellant's inexplicable persistence in making submissions in support of her claim against the wrong entity, further ordered that Debtors need not respond to any future filings by Appellant, unless directed to do so by the Bankruptcy Court (*id.* at 60:8–18).

4

Court and filed on the electronic docket for this case on August 9, 2012. (*Id.*) On September 20, 2012, the Court received a submission from Appellant, labeled "Opening Brief," which attached, among other documents, portions of the transcript from the Hearing and the June 26 Order denying her request for reargument on the issues decided at that hearing. (Doc. No. 7.)[7] Appellee filed its opposition brief on October 5, 2012. (Doc. No. 12.) Appellant also submitted a reply brief, which was received by the Court on November 7, 2012. (Doc. No. 17.) Although the Court had ordered Appellant to submit her reply brief by November 2, 2012, the Court considered the brief to be timely in light of Appellant's *pro se* status. (*Id.*) Despite the fact that the Court did not authorize any subsequent submissions from the parties, Appellant sent numerous emails, letters, and documents to the Court – all of which were considered by the Court and have been posted on the electronic docket sheet for this case. (*See, e.g.*, Doc. Nos. 27, 28, 29, 33, 35.)

## II. STANDARD OF REVIEW

District courts are vested with appellate jurisdiction over bankruptcy court rulings pursuant to 28 U.S.C. § 158(a)(1). Specifically, "Congress intended to allow for immediate appeal in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case." *In re Fugazy Exp., Inc.*, 982 F.2d 769, 775 (2d Cir. 1992) (internal quotation marks omitted). The district court reviews the bankruptcy court's conclusions of law *de novo* and its findings of fact for clear error. *In re Bennett Funding Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998).

---

[7] On September 21, 2012, the Court's *Pro Se* Office received another filing from Appellant, which was also labeled "Opening Brief" (Doc. No. 10) but differed somewhat from her earlier submission with the same title. Since the Court had already accepted the prior filing and this subsequent filing was not timely, the Court declined to accept the second submission. (Doc. No. 11.)

5

III. DISCUSSION

As an initial matter, while Appellant clearly disagrees with the Bankruptcy Court's decision expunging her Claim and views it as unjust, she does not challenge the essential fact relied upon by the Bankruptcy Court in reaching its decision – namely, that the accident in question occurred on September 24, 2009. (Reply at 4.) Therefore, the Court need only review the Bankruptcy Court's conclusions of law.[8]

In reviewing Appellant's submissions, the majority of which are irrelevant or confusing, the Court is able to identify two arguments as to why she believes the Bankruptcy Court's decision is wrong. First, Appellant seems to argue that the car was manufactured in 2006 and purchased by her in 2007, and since the alleged defect in the car that eventually caused the 2009 accident already existed in the car at these earlier times, the Bankruptcy Court erred in using the date of the accident as the operative date. (*See generally* Mem.) Second, Appellant argues that "[t]he stockholders are the same for either old or new GM no matter the name of the company" (Reply at 2), implying that the two entities are essentially the same and that she should be able to bring her Claim against either one. Prior to considering these arguments, the Court first sets forth the law governing the administration of proofs of claim.

"When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim . . . against the debtor's estate." *Travelers Cas. & Sur. Co. of Am. v. Pacific Gas & Elec. Co.*, 549 U.S. 443, 449 (2007). A proof of claim "is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a). "Even where a party in interest objects, [however,] the court

---

[8] To the extent that Appellant challenges the Bankruptcy Court's decision concerning her telephone call being disconnected during the Hearing, the Court has reviewed the Hearing transcript and finds that the call was not disconnected until the Bankruptcy Court was dictating its decision, and only after Appellant had already been afforded ample opportunity to present her argument in favor of her Claim and respond to Debtors' arguments against her claim. (Hr'g Tr. 55:1–21, 56:3–6, 56:11–57:3, 58:5–13). Accordingly, the Court affirms the Bankruptcy Court's finding that Appellant was not deprived of an opportunity to present any part of her argument.

'shall allow' the claim 'except to the extent that' the claim implicates any of the nine exceptions enumerated in § 502(b)," including where "the claim at issue is 'unenforceable against the debtor . . . under any agreement or applicable law.'" *Travelers Cas. & Sur. Co. of Am.*, 549 U.S. at 449 (quoting 11 U.S.C. §§ 502(b) & (b)(1)). In analyzing a proof of claim, courts within this Circuit employ a burden-shifting framework in which "[a] proof of claim is prima facie evidence of the validity and amount of a claim, and the objector bears the initial burden of persuasion." *In re Oneida Ltd.*, 400 B.R. 384, 389 (Bankr. S.D.N.Y. 2009). "The burden then shifts to the claimant if the objector produces 'evidence equal in force to the prima facie case . . . which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency.'" *Id.* (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992)). "When the burden is shifted back to the claimant, [she] must then prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Id.*; *accord In re Motors Liquidation Co.*, No. 11 Civ. 4180 (NRB), 2012 WL 124581, at *3 (S.D.N.Y. Jan. 17, 2012); *see also In re Adelphia Commc'ns Corp.*, No. 02-41729 (REG), 2007 WL 601452, at *5 (Bankr. S.D.N.Y. Feb. 20, 2007) ("[C]laimant is [then] required to meet the usual burden of proof.").

Here, Appellee's objection to the Claim is supported by the clear and explicit terms of the Purchase Agreement which provide that only New GM is liable for injuries arising from car accidents occurring after the Closing Date in July 2009, thus encompassing Appellant's accident in September 2009. Appellant's first argument in response – that the car was defective from the time it was manufactured or purchased, and thus prior to New GM's assumption of liability – can be construed as a breach of warranty claim rather than one based on the injuries she suffered. However, even if this is the case, the Purchase Agreement explicitly states that New GM assumed liability not only for all product liability claims against Debtors arising from accidents

7

"that happen on or after the Closing" (Purchase Agreement § 2.3(a)(ix)), but also for "all Liabilities arising under express warranties . . . [and] all obligations under Lemon Laws" for vehicles manufactured or sold "prior to or after the Closing" (*id.* § 2.3(a)(vii)). Therefore, whether Appellant's Claim is construed as seeking a remedy for the injury resulting from her accident or for the defect in the vehicle, any liability held by Debtors was assumed by New GM. Accordingly, Appellant's first argument does not establish that Debtors are liable for her Claim.

Appellant's second argument is that Debtors and New GM are both liable for her Claim because the two entities have the "same stockholders." However, Appellant fails to provide any evidence in support of this allegation, let alone any explanation of the legal significance of any such evidence. Accordingly, this conclusory statement by Appellant as to the relationship between Debtors and New GM does not change the Court's conclusion that, to the extent that any entity is liable for Appellant's Claim, that entity is New GM and not Debtors.

## IV. CONCLUSION

For the aforementioned reasons, the Court affirms the Bankruptcy Court's entry of the May 16 Order expunging Appellant's Claim. The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

Dated:    September 26, 2013
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

8

<u>A copy of this Memorandum and Order was mailed to:</u>

Marjorie A. Creamer
P.O. Box 25164
Kansas City, MO 64119

<u>A copy of this Memorandum and Order was emailed to Appellant's email account at:</u>

thehush91@hotmail.com