**HEARING DATE AND TIME:  December 20, 2013 at 9:45 a.m. (Eastern Time)**
**OBJECTION DEADLINE:  December 13, 2013 at 4:00 p.m. (Eastern Time)**

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Motors Liquidation*
  *Company GUC Trust*

James B. Helmer, Jr., PHV
HELMER, MARTINS, RICE AND POPHAM
600 Vine Street
Suite 2704
Cincinnati, Ohio 45202
Telephone:  (513) 421-2400
Facsimile:  (513) 421-7902

*Attorneys for Roger L. Thacker,*
  *Roger L. Sanders, and Thomas J. Hanson*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| In re | : | Chapter 11 Case No. |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| f/k/a General Motors Corp., *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

**NOTICE OF HEARING ON JOINT MOTION OF MOTORS
LIQUIDATION COMPANY GUC TRUST AND RELATORS ROGER
L. THACKER, ROGER L. SANDERS, AND THOMAS J. HANSON
FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING (I)
SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 27105 (II)
ALLOCATION OF THE SETTLEMENT PROCEEDS UNDER SECTION 3730(d)(2)
OF THE FALSE CLAIMS ACT AND (III) ATTORNEYS' FEES AND EXPENSES TO
<u>RELATORS' COUNSEL UNDER SECTION 3730(d)(2) OF THE FALSE CLAIMS ACT</u>**

**PLEASE TAKE NOTICE** that upon the annexed motion, dated November 26, 2013 (the "**Motion**"),[1] of the Motors Liquidation Company GUC Trust (the "**GUC Trust**") and Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson (collectively, "**Relators**" or "**Claimants**," and together with the GUC Trust, the "**Parties**"), seeking the entry of an order approving, pursuant to section 105 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) a settlement agreement (the "**Settlement Agreement**")[2] between the GUC Trust and Relators, which, among other things, reduces and allows Claim No. 27105 (the "**Claim**") to a general unsecured claim in the amount of $7,500,000 to be treated in accordance with the Plan (the "**Allowed Relators' Claim**"), (ii) the allocation to Relators of 30% of the proceeds of the Allowed Relators Claim pursuant to 31 U.S.C. § 3730(d)(2), and (iii) an award of attorneys' fees and expenses to Helmer, Martins, Rice & Popham Co., L.P.A. pursuant to 31 U.S.C. § 3730(d)(2) in the form of a general unsecured claim against the Debtors (in addition to the Allowed Relators Claim) in the amount of $2,500,000 to be treated in accordance with the Plan and the Settlement Agreement, all as more fully set forth in the Motion, a hearing will be held before the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **December 20, 2013 at 9:45 a.m. (Eastern Time),** or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE** that any objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules

---

[1] Capitalized terms used and not otherwise defined herein shall have the meaning ascribed to such terms in the Motion.

[2] *Stipulation and Settlement Resolving Claim No. 27105*, dated November 21, 2013.

US_ACTIVE:\44363032\15\72240.0639

of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in

accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by

registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest,

on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard

copy delivered directly to Chambers), in accordance with the customary practices of the

Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance

with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the Motors

Liquidation Company GUC Trust, 767 Fifth Avenue, New York, New York 10153 (Attn:

Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the

Debtors, c/o AlixPartners, 2101 Cedar Springs Road, Suite 1100, Dallas, Texas 75201 (Attn:

Barry Folse); (iii) General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn:

Lawrence S. Buonomo, Esqca.); (iv) Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys for

the United States Department of the Treasury, One World Financial Center, 1285 Avenue of the

Americas, New York, New York 10019 (Attn: Douglas R. Davis, Esq.); (v) the United States

Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C.

20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development

Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

US_ACTIVE:\44363032\15\72240.0639

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.);

(xi) Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and

Robert T. Brousseau, Esq.); (xii) Gibson, Dunn & Crutcher LLP, attorneys for Wilmington Trust

Company as GUC Trust Administrator and for Wilmington Trust Company as Avoidance Action

Trust Administrator, 200 Park Avenue, 47th Floor, New York, New York 10166 (Attn:  Keith

Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust Monitor and as the Avoidance Action

Trust Monitor, 3 Times Square, New York, New York 10036 (Attn:  Conor Tully); (xiv) Crowell

& Moring LLP, attorneys for the Revitalizing Auto Communities Environmental Response

Trust, 590 Madison Avenue, 19th Floor, New York, New York 10022-2524 (Attn:  Michael V.

Blumenthal, Esq.); (xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301

Woodlawn Boulevard, Austin, Texas 78703; (xvi) 33 Whitehall Street, 21st Floor, New York,

New York 10004 (Attn: Tracy Hope Davis, Esq.); (xvii) United States Department of Justice,

Civil Division, P.O. Box 261, Ben Franklin Station, Washington D.C. 20044 (Attn: Michael D.

Granston and Paul J. Wogaman); (xviii) the U.S. Attorney's Office, 221 E. Fourth St., Suite 400,

Cincinnati, Ohio 45202 (Attn: Donetta D. Wiethe); (xix) the Office of the United States Trustee

for the Southern District of Ohio, 105 East 4th Street, Suite 400, Cincinnati Ohio, 45202 (Attn:

Mark A. Greenberger); (xx) Hare Wynn Newell & Newton, The Massey Building, Suite 800,

4

2025 3rd Ave. North, Birmingham, AL 35203 (Attn: Scott A. Powell and Don McKenna), so as

to be received no later than **December 13, 2013 at 4:00 p.m. (Eastern Time)** (the "**Objection**

**Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and

served with respect to the Motion, either of the Parties may, on or after the Objection Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Motion, which order may be entered with no further notice or opportunity to be heard

offered to any party.

Dated: New York, New York
       November 26, 2013

/s/ Joseph H. Smolinsky
Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for Motors Liquidation
   Company GUC Trust*

/s/ James B. Helmer, Jr.
James B. Helmer, Jr., PHV
HELMER, MARTINS, RICE AND POPHAM
600 Vine Street
Suite 2704
Cincinnati, Ohio 45202
Telephone:  (513) 421-2400
Facsimile:   (513) 421-7902

*Attorneys for Roger L. Thacker,
   Roger L. Sanders, and Thomas J. Hanson*

5

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Motors Liquidation*
 *Company GUC Trust*

James B. Helmer, Jr., PHV
HELMER, MARTINS, RICE AND POPHAM
600 Vine Street
Suite 2704
Cincinnati, Ohio 45202
Telephone:  (513) 421-2400
Facsimile:  (513) 421-7902

*Attorneys for Roger L. Thacker,*
 *Roger L. Sanders, and Thomas J. Hanson*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

------------------------------------------------------------x

**JOINT MOTION OF MOTORS LIQUIDATION**
**COMPANY GUC TRUST AND RELATORS ROGER L.**
**THACKER, ROGER L. SANDERS, AND THOMAS J. HANSON**
**FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105 OF THE**
**BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING (I)**
**SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 27105 (II)**
**ALLOCATION OF THE SETTLEMENT PROCEEDS UNDER SECTION 3730(d)(2)**
**OF THE FALSE CLAIMS ACT AND (III) ATTORNEYS' FEES AND EXPENSES TO**
**RELATORS' COUNSEL UNDER SECTION 3730(d)(2) OF THE FALSE CLAIMS ACT**

# TABLE OF CONTENTS

**Page**

I.     Relief Request ........................................................................................................... 1

II.    Jurisdiction .............................................................................................................. 3

III.   Background .............................................................................................................. 3

       A.     The Prepetition Action Underlying the Claim ...................................... 3

       B.     Procedural History of the Prepetition Action ........................................ 5

       C.     The Debtors' Chapter 11 Cases ............................................................. 7

       D.     The Settlement Agreement ..................................................................... 9

IV.    The Settlement Agreement Should be Approved by the Court Pursuant to
       Bankruptcy Rule 9019 .......................................................................................... 10

       A.     Probability of Success .......................................................................... 13

       B.     Likelihood of Complex and Protracted Litigation with Attendant Expense,
              Inconvenience, and Delay .................................................................... 15

       C.     Paramount Interest of Creditors ........................................................... 16

       D.     Extent to which Settlement is the Product of Arm's Length Bargaining ........... 16

V.     The Court Should Approve the Allocation of 30% of the Allowed Relators
       Claim to Relators Pursuant to Section 3730(d)(2) of the False Claims Act ................... 17

VI.    The Court Should Approve the Award of Attorneys' Fees to
       HMR&P Pursuant to Section 3730(d)(2) of the False Claims Act ................................ 19

VII.   Notice .................................................................................................................... 22

US_ACTIVE:\44363032\15\72240.0639

# TABLE OF AUTHORITIES

Page(s)

CASES

*In re Adelphia Communications Corp.*,
327 B.R. 143 (Bankr. S.D.N.Y. 2005), *adhered to on reconsideration,* 327 B.R.
175 (Bankr. S.D.N.Y. 2005), *aff'd,* 337 B.R. 475 (S.D.N.Y. 2006), *aff'd,* 224 Fed.
Appx. 14 (2d Cir. 2006), *cert. denied,* 552 U.S. 941 (2007) ......................................10, 11

*Allison Engine Co. v. United States ex. rel. Sanders*,
553 U.S. 662 (2008).................................................................................................6

*In re Chemtura Corp.*,
439 B.R. 561 (Bankr. S.D.N.Y. 2010) .............................................................10, 11, 12, 13

*In re Dewey & LeBoeuf LLP*,
478 B.R. 627 (Bankr. S.D.N.Y. 2012) .......................................................................11, 13

*In re Iridium Operating LLC*,
478 F.3d 452 (2d Cir. 2007)...........................................................................................12

*Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James Talcott, Inc.*
*(In re Int'l Distrib. Ctrs., Inc.),* 103 B.R. 420 (S.D.N.Y. 1989) .......................................12

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*,
390 U.S. 414, *reh'g denied*, 391 U.S. 909 (1968) .................................................11, 12, 13

*In re Purofied Down Prods. Corp.*,
150 B.R. 519 (S.D.N.Y. 1993)................................................................................12, 13

*United States ex rel. Green v. Northrop Corp.*,
59 F.3d 953 (9th Cir. 1995) ...........................................................................................17

*United States ex. rel. Sanders, et al. v. Allison Engine Co.*,
Case No. C-1-95-970, 2005 WL 713569 (S.D. Ohio Mar. 11, 2005), *rev'd*, 471 F.3d
610 (6th Cir. 2006), *rev'd*, 553 U.S. 662 (2008) ...........................................................3, 5

*United States ex. rel. Sanders v. Allison Engine Co.*,
471 F.3d 610 (6th Cir. 2006), *rev'd*, 553 U.S. 662 (2008) ..................................................6

*United States ex rel. Sanders v. Allison Engine Co.*,
667 F.Supp. 2d 747 (S.D. Ohio 2009), *rev'd*, 703 F.3d 930 (6th Cir. 2012), *cert. denied*,
133 S. Ct. 2855 (2013).....................................................................................................6

*Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),*
134 B.R. 499 (Bankr. S.D.N.Y. 1991)...........................................................................11

ii

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re WorldCom, Inc.*,
  347 B.R. 123 (Bankr. S.D.N.Y.2006) ...............................................................................12

*In re W.T. Grant Co.*,
  699 F.2d 599 (2d Cir.1983) .............................................................................................11

RULES AND STATUTES

11 U.S.C. § 105 ....................................................................................................................1

11 U.S.C. § 362 ....................................................................................................................3

28 U.S.C. § 157 ....................................................................................................................3

28 U.S.C. § 157(b) ...............................................................................................................3

28 U.S.C. § 1334 ..................................................................................................................3

31 U.S.C. § 3729(a)(1) .....................................................................................................4, 14

31 U.S.C. § 3729(a)(1)(B) ...............................................................................................4, 6

31 U.S.C. § 3729(a)(2) .........................................................................................................6

31 U.S.C. § 3729(a)(3) .........................................................................................................4

31 U.S.C. § 3729(b)(2) .........................................................................................................4

31 U.S.C. § 3729 *et seq.* ......................................................................................................3

31 U.S.C. § 3730(b)(1) .........................................................................................................2

31 U.S.C. § 3730(d)(2) .......................................................................1, 3, 9, 10, 17, 19

Fed. R. Bankr. P. 9019 .................................................................................................1, 2, 10

Fed. R. Bankr. P. 9019(a) ...................................................................................................10

Fraud Enforcement and Recovery Act of 2009,
  Pub. L. No. 11-21, 123 Stat. 1617 (2009) ........................................................................6

Treas. Reg. § 1.468B-2 .......................................................................................................16

Treas. Reg. § 1.468B-9 .......................................................................................................16

# TABLE OF AUTHORITIES
## (continued)

Page(s)

Treas. Reg. § 1.468B-9(c)(1)(ii) ...................................................................................16

**OTHER AUTHORITIES**

James B. Helmer, Jr., *False Claims Act:  Whistleblower Litigation*, Chap. 23, "The FCA and the Supreme Court" (6th Ed. BNA Bloomberg 2012)...................................................18, 19

James B. Helmer, Jr., *The False Claims Act:  Incentivizing Integrity for 150 Years for Rogues, Privateers, Parasites, and Patriots*, 81 U. Cin. L. Rev. 1261 (2013)............................................18

Transcript of August 1, 2013 Hearing, *In re Motors Liquidation Company, et al.*, Case No. 09-50026 (Bankr. S.D.N.Y. May 31, 2012) (ECF No. 12484). ...................................2, 8

iv

The Motors Liquidation Company GUC Trust (the "**GUC Trust**"),[1] on the one

hand, and Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson (collectively, "**Relators**"

or "**Claimants**," and together with the GUC Trust, the "**Parties**."), on the other hand, jointly

submit this motion (this "**Motion**") and respectfully represent:

## I.    Relief Request

1.    Pursuant to section 105 of title 11 of the United States Code

(the "**Bankruptcy Code**") and Rule 9019 of the Federal Rules of Bankruptcy Procedure

(the "**Bankruptcy Rules**"), the Parties request the entry of an order, substantially in the form

annexed hereto as **Exhibit "A,"** approving (i) a settlement agreement (the "**Settlement**

**Agreement**")[2] between the GUC Trust and Relators, which, among other things, reduces and

allows Relators' Proof of Claim No. 27105 (the "**Claim**"),[3] asserted in the amount of

$50,000,000, to a general unsecured claim in the amount of $7,500,000 for treatment in

accordance with the Plan (the "**Allowed Relators' Claim**"), (ii) the allocation to Relators of

30% of the proceeds of the Allowed Relators Claim pursuant to section 3730(d)(2) of the False

Claims Act (as hereinafter defined),[4] and (iii) an award of attorneys' fees and expenses to

Helmer, Martins, Rice & Popham Co., L.P.A. ("**HMR&P**") pursuant to section 3730(d)(2) of the

False Claims Act in the form of a general unsecured claim against the Debtors (in addition to the

---

[1] The GUC Trust was formed by Motors Liquidation Company and its affiliated debtors (collectively, the "**Debtors**") in connection with the *Debtors' Second Amended Joint Chapter 11 Plan*, dated March 18, 2011 (the "**Plan**").

[2] *Stipulation and Settlement Resolving Claim No. 27105*, dated November 21, 2013, annexed hereto as **Exhibit "B."**

[3] The Claim, annexed hereto as **Exhibit "C,"** was filed by Relators on November 16, 2009.

[4] 31 U.S.C. § 3730(d)(2).

1

Allowed Relators Claim) in the amount of $2,500,000 to be treated in accordance with the Plan and the Settlement Agreement.

2.    The Settlement Agreement is the product of good faith arms'-length negotiation during a mediation that was ordered by this Court on August 1, 2013.[5]  The settlement will resolve one of the largest remaining claims in the Debtors' chapter 11 cases, which has been the subject of pending litigation between the Parties for over 18 years.  The settlement will permit the GUC Trust to release significant distributable assets that are currently being reserved on account of the Claim to holders of allowed claims without the need for expensive and protracted litigation that may otherwise become an obstacle to the closing of these chapter 11 cases.

3.    In addition to the approval of this Court, certain portions of the Settlement Agreement require the approval[6] or non-objection of the United States Department of Justice (the "**DOJ**").  While certain parties at the DOJ have expressed a positive reaction to the settlement, the DOJ has not yet provided its formal approval.  To the extent the DOJ's formal approval is not provided by the hearing date on this Motion, the Parties request that the Settlement Agreement nevertheless be approved under the standards of Bankruptcy Rule 9019.  Certain portions of the Settlement Agreement also require the approval of the Bankruptcy Court for the Southern District of Ohio (the "**Ohio Bankruptcy Court**"), whose approval, which is

---

[5] Transcript of August 1, 2013 Hearing at 23, *In re Motors Liquidation Company, et al.*, Case No. 09-50026 (Bankr. S.D.N.Y. May 31, 2012) (ECF No. 12484).

[6] See 31 U.S.C. § 3730(b)(1).

2

being sought simultaneously, is required for the reason that one of the Relators filed a pending chapter 7 case in that court.[7]

4.      Among other things, the Settlement Agreement requires that the Parties file a joint pleading in this Court requesting that Relators be allocated 30 percent of the proceeds of the Allowed Relators Claim pursuant to section 3730(d)(2) of the False Claims Act, which provides that private citizens that settle a False Claim Act litigation on behalf of the United States of America shall be entitled to between 25 and 30 percent of the settlement proceeds where, as here, the government does not intervene in the litigation.  The Settlement Agreement also requires that the joint pleading request that HMR&P receive an award of fees and expenses in the form of a general unsecured claim against the Debtors in an amount not to exceed $2,500,000, which is predicated on the grounds that section 3730(d)(2) of the False Claims Act provides for attorneys' fees and costs to be recovered in addition to any settlement proceeds. Accordingly, such relief is requested pursuant to this Motion.

## II.      Jurisdiction

5.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## III.      Background

### A.      The Prepetition Action Underlying the Claim

6.      On November 3, 1995, Relators commenced a *qui tam* action under 31 U.S.C. § 3729 *et seq.* (the "**False Claims Act**" or "**FCA**") styled *United States ex. rel. Sanders, et al. v. Allison Engine Company, et al.*, Case No. C-1-95-970 (the "**Prepetition Action**"), in the United States District Court for the Southern District of Ohio, Western Division

---

[7] *In re* Roger *L. Thacker*, Case No. 02-15125 (Bankr. S.D. Ohio).

US_ACTIVE:\44363032\15\72240.0639

(the "**Ohio District Court**").  The defendant parties to the Prepetition Action are General Motors

Corporation ("**GM**"),[8] Allison Engine Company, Inc. ("**Allison Engine**"), General Tool

Company ("**General Tool**"), and Southern Ohio Fabricators Corporation ("**SOFCO**")

(collectively, "**Defendants**").

      7.     Relators assert that Defendants are liable under the FCA pursuant to

(i) 31 U.S.C. § 3729(a)(1)(B), which imposes liability on a person who "knowingly makes, uses,

or causes to be made or used, a false record or statement material to a false or fraudulent claim,"

and (ii) under the 1986 version of the FCA,[9] 31 U.S.C. § 3729(a)(3), which imposes liability on a

person who "conspires to defraud the Government by getting a false or fraudulent claim allowed

or paid."[10]  The FCA imposes treble damages and civil penalties between $5,500 and $11,000 per

false claim.[11]  An FCA suit may be initiated either by the federal government or a private

individual, called a "relator," who brings a *qui tam* action in the government's name and who

receives a portion of any recovery.

      8.     Beginning on April 2, 1985, the Navy awarded contracts for the

construction of the Arleigh Burke class of guided missile destroyers to two shipyards, Bath Iron

Works and Ingalls Shipbuilding, Inc. (collectively, the "**Shipyards**").  The Shipyards then

subcontracted a division of GM, known as the "Allison Gas Turbine Division," to provide

---

[8] GM subsequently changed its name to Motors Liquidation Company upon the filing of these chapter 11 cases. While the Prepetition Action is currently stayed as to GM pursuant to section 362 of the Bankruptcy Code (the "**Automatic Stay**"), litigation against the other defendants in the Prepetition Action has been on-going.

[9] As hereinafter explained, although portions of the FCA were retroactively amended while the Prepetition Action was pending, the retroactivity did not affect 31 U.S.C. § 3729(a)(3).

[10] Under the statute, a "claim" is defined to include a request for money that is made to a contractor where, among other things, the United States government provides any portion of the money requested.  31 U.S.C. § 3729(b)(2).

[11] 31 U.S.C. § 3729(a)(1).

US_ACTIVE:\44363032\15\72240.0639

generator sets (the "**Gen-Sets**"), which are used to provide electrical power on the ships.  GM

subcontracted General Tool to assemble the Gen-Sets, and General Tool in turn subcontracted

SOFCO to weld the bases and enclosures of the Gen-Sets.  Following the completion and

delivery of approximately 52 Gen-Sets, in December 1993, GM sold substantially all of the

assets of the Allison Gas Turbine Division to Allison Engine, which is a separate and distinct

legal entity that is unaffiliated with GM.[12]

9.    Relators allege that GM submitted claims for payment in connection with

the Gen-Sets for work that had not been done in accordance with the Navy's requirements even

though GM certified pursuant to certain Certificates of Conformance that the Gen-Sets were

manufactured in accordance with all such requirements.  Specifically, Relators assert that

gearboxes installed in the first 52 Gen-Sets were defective; that quality inspections for specific

Gen-Sets were not completed; and that properly certified welders were not used to weld the Gen-

Set base and enclosure assemblies.

**B.    Procedural History of the Prepetition Action**[13]

10.    Beginning on February 1, 2005, the Prepetition Action was tried before a

jury in the Ohio District Court.  Over the course of five weeks, Relators presented the entirety of

their case.  At the close of Relators' case-in-chief, the Ohio District Court granted a dispositive

motion by Defendants for judgment as a matter of law as to all of the FCA counts, which

obviated the need for the presentation of Defendants' case.[14]  In so ruling, the Ohio District Court

---

[12] Allison Engine is now known as Rolls-Royce Corporation.

[13] The lengthy procedural history of the Prepetition Action is more fully described in the *Motors Liquidation Company GUC Trust's Motion to Estimate Proof of Claim No. 27105 Filed by Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson and Establish Procedures Thereto* (ECF No. 12427).

[14] *United* States *ex. rel. Sanders v. Allison Engine Co.*, Case No. C-1-95-970, 2005 WL 713569, at *11 (S.D. Ohio Mar. 11, 2005).

US_ACTIVE:\44363032\15\72240.0639

held that the FCA requires Relators to establish that Defendants presented a claim for payment directly to the United States—which relators had failed to do.

11.    On December 19, 2006, the United States Court of Appeals for the Sixth Circuit reversed the Ohio District Court's ruling.[15]  On June 9, 2008, the Supreme Court vacated the Sixth Circuit's ruling and remanded the case for further proceedings consistent with its new holding that, among other things, the FCA requires that a defendant intend a claim to be paid by the United States.[16]

12.    After the Supreme Court's decision, On May 20, 2009, Congress amended the FCA pursuant to the Fraud Enforcement and Recovery Act of 2009 ("**FERA**").[17]  As a result, former § 3729(a)(2) was replaced by the current § 3729(a)(1)(B) of the FCA.  Among other things, the amendment eliminated the new intent requirement imposed by the Supreme Court.

13.    FERA became effective while the Prepetition Action was still pending.  In § 4(f)(1) of FERA, Congress provided that the new § 3729(a)(1)(B) of the FCA would apply retroactively.  The Ohio District Court granted Defendants' motion to preclude FERA's retroactive application on the grounds of, among other things, the Ex Post Facto Clause of the Constitution.  On November 2, 2012, the Sixth Circuit reversed the Ohio District Court.  On June 24, 2013, the Supreme Court denied the Defendants petition for *certiorari*.[18]

---

[15] *United States ex. rel. Sanders v. Allison Engine Co.*, 471 F.3d 610 (6th Cir. 2006).

[16] *Allison Engine Co. v. United States ex. rel. Sanders*, 553 U.S. 662, 662-63 (2008).

[17] Pub. L. No. 11-21, 123 Stat. 1617 (2009).

[18] *United States ex* rel. *Sanders v. Allison Engine Co.*, 667 F.Supp. 2d 747 (S.D. Ohio 2009), *rev'd*, 703 F.3d 930 (6th Cir. 2012), *cert. denied*, 133 S. Ct. 2855 (2013).  Due to the Automatic Stay, GM did not participate in the appeal.

US_ACTIVE:\44363032\15\72240.0639

14.    A new trial in the Prepetition Action is currently scheduled to begin on March 17, 2014.

## C.    The Debtors' Chapter 11 Cases

15.    Commencing on June 1, 2009, the Debtors filed voluntary cases under chapter 11 of Bankruptcy Code, which cases were jointly administered under Case Number 09-50026 (Bankr. S.D.N.Y.).

16.    On November 16, 2009, Relators filed the Claim in these chapter 11 cases in the amount of $50 million.  The Claim also provides that Relators are entitled to statutory attorneys' fees pursuant to the False Claims Act.  The Claim did not specify whether any such attorneys' fees would cause the amount of the Claim to exceed $50 million.

17.    On March 23, 2011, this Court entered an Order (the "**Claim Reserves Order**")[19] establishing the maximum amount for the allowance of certain partially-unliquidated claims, which would permit the GUC Trust to provide initial distributions to holders of allowed claims after the confirmation of the Plan.  Pursuant to the Claims Reserves Order, a maximum amount of $50 million was established as to the Claim.

18.    On March 29, 2011, the bankruptcy court entered an Order (the "**Confirmation Order**")[20] confirming the Debtors' chapter 11 Plan.  Among other things, the Confirmation Order also (i) established the GUC Trust pursuant to that certain *Motors Liquidation Company GUC Trust Agreement* (the "**GUC Trust Agreement**"), and (ii) authorized the GUC Trust to resolve certain claims against the Debtors.

---

[19] *Order Estimating Maximum Amount of Certain Claims for Purposes of Establishing Claims Reserves Under the Debtors' Amended Chapter 11 Plan* (ECF No. 9877).

[20] *Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan* (ECF No. 9941).

US_ACTIVE:\44363032\15\72240.0639

19.     On May 14, 2013, following unsuccessful attempts by the GUC Trust to initiate settlement discussions as to the Claim, the GUC Trust filed a motion (the "**Estimation Motion**")[21] requesting that the Claim be estimated in the event that it was not consensually resolved by a specified date.  Concurrent with the filing of the Estimation Motion, the GUC Trust designated the Claim for mediation pursuant to this Court's order (the "**Second Amended ADR Order**")[22] establishing ADR procedures in these cases.

20.     On June 28, 2013, following a dispute between the GUC Trust and the Relators as to whether the Claim was subject to mandatory mediation under the Second Amended ADR Order, the GUC Trust filed a motion[23] to compel Relators to participate in mediation.  The GUC Trust's request to compel mediation was granted by this Court at a hearing on August 1, 2013.[24]

21.     On October 12, 2013, the Claim was mediated, at which time an agreement in principle was reached.  The parties subsequently entered into the Settlement Agreement.

---

[21] *Motors Liquidation Company GUC Trust's Motion to Estimate Proof of Claim No. 27105 Filed by Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson and Establish Procedures Thereto* (ECF No. 12427).

[22] *Second Amended Order Granting Motion to Supplement Amended Order Pursuant to 11 U.S.C. § 105(a) and General Order M-390 Authorizing Implementation of Alternative Dispute Procedures, Including Mandatory Mediation* (ECF No. 11777).

[23] *Motors Liquidation Company GUC Trust's Motion to Compel Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson to Participate in Mandatory Mediation with Respect to Claim No. 27105 Pursuant to the Second Amended ADR Order* (ECF No. 12463).

[24] Transcript of August 1, 2013 Hearing at 23, *In re Motors Liquidation Company, et al.*, Case No. 09-50026 (Bankr. S.D.N.Y. May 31, 2012) (ECF No. 12484).

US_ACTIVE:\44363032\15\72240.0639

**D.    The Settlement Agreement**

22.    The key provisions of the Settlement Agreement are summarized as

follows:

(a)    Subject to Judicial and Governmental Approval[25] (or in the case of the DOJ, non-objection), the Claim shall be allowed as a general unsecured claim in favor of Relators in the amount of $7,500,000 to be treated in accordance with the Plan (the "**Allowed Relators Claim**").  Distributions on account of the Allowed Relators Claim shall be made to a securities account (the "**Account**") established by Helmer, Martins, Rice & Popham Co., L.P.A. ("**HMR&P**") to be further allocated in accordance with all applicable laws among the individual Relators and the United States.  The MLC Parties[26] shall have no obligation with respect to the allocation of the distributions beyond providing the distributions to the Account specified by HMR&P.

(b)    In addition to the Allowed Relators Claim, with respect to the portion of the Claim related to attorneys' fees and expenses, the Relators shall be entitled to request that this Court award fees pursuant to 31 U.S.C. § 3730(d)(2) for HMR&P, which award shall not exceed $2,500,000, to be treated as a general unsecured claim in accordance with the Plan.  The GUC Trust agrees to support approval of the award for statutory fees and expenses incurred solely by HMR&P by joining in its request.  Any fee award granted by this Court (an "**Allowed Attorneys' Award**") shall be conditioned on Judicial and Governmental approval of the Allowed Relators Claim.  HMR&P shall promptly file a proof of claim in connection with any Allowed Attorneys' Award authorized by this Court.  For the avoidance of doubt, approval of the Allowed Relators Claim shall not be conditioned upon the approval of HMR&P's fees and expenses.

(c)    The Parties shall work in good faith to expeditiously seek Judicial and Governmental Approval of the Allowed Relators Claim.  The

---

[25] The term "Judicial and Governmental Approval" is defined in the Settlement Agreement to mean (i) the approval of this Court, (ii) the approval (or non-objection to the approval of this Court) of the DOJ, and, (iii) the approval, to the extent necessary, of the Ohio Bankruptcy Court.

[26] The term "MLC Parties" is defined in the Settlement Agreement as, collectively, Motors Liquidation Company, the Debtors, the GUC Trust Administrator Parties (as defined in the GUC Trust Agreement), the GUC Trust, and any of their respective affiliates, estates, future successors or assigns, officers, directors, partners, principals, agents, insurers, servants, employees, administrators, executors, trustees or attorneys.

9

Parties shall also promptly file a joint motion with this Court seeking (i) approval of the Allowed Relators Claim, (ii) approval for Relators to receive 30% of the Allowed Relators Claim pursuant to 31 U.S.C. § 3730(d)(2), and (iii) authorization for the payment of any Allowed Attorneys' Award to HRM&P. For the avoidance of doubt, approval of subparagraph (i) above shall not be conditioned on the approval of subparagraphs (ii) and (iii) above.

(d)    As of the date that Judicial and Governmental Approval of the Allowed Relators Claim has been obtained (the "**Release Effective Date**"), the Claimant Parties[27] shall release the MLC Parties from all liabilities, and have no further right to payment from the MLC Parties.[28]  Nothing herein shall be deemed a release by the Claimant Parties against the remaining defendants in the Prepetition Action.

(e)    Relators shall seek the dismissal with prejudice of General Motors Corporation and any of the MLC Parties from the Prepetition Action within ten days following Judicial and Governmental Approval of the Relators Allowed Claim, which dismissal shall be without costs to any of the MLC Parties.

### IV.    The Settlement Agreement Should be Approved by the Court Pursuant to Bankruptcy Rule 9019

23.    Bankruptcy Rule 9019 provides, in part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  The legal standard for determining the propriety of a proposed settlement under Rule 9019 is whether the settlement is in the "best interests of the estate."  *In re Chemtura Corp.*, 439 B.R. 561, 593 (Bankr. S.D.N.Y. 2010); *In re Adelphia Communications Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005), *adhered to on reconsideration,* 327 B.R. 175 (Bankr.

---

[27] The term "Claimant Parties" is defined in the Settlement Agreement as, collectively, the Relators, the United States, and each of their respective spouse, heirs, assigns, guardians, estates, wards, successors, executors, administrators, agents, insurers, servants, employees, representatives, and trustees.

[28] The term "MLC Parties" is defined in the Settlement Agreement as, collectively, MLC, the Debtors, the GUC Trust Administrator Parties (as defined in the GUC Trust Agreement), the GUC Trust, and any of their respective affiliates, estates, future successors or assigns, officers, directors, partners, principals, agents, insurers, servants, employees, administrators, executors, trustees or attorneys.

10

S.D.N.Y. 2005), *aff'd,* 337 B.R. 475 (S.D.N.Y. 2006), *aff'd,* 224 Fed. Appx. 14 (2d Cir. 2006),

*cert. denied,* 552 U.S. 941 (2007); *Vaughn v. Drexel Burnham Lambert Group, Inc. (In re Drexel*

*Burnham Lambert Group, Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991).

24.     In determining whether a proposed settlement is in the best interests of the

estate, courts examine whether the settlement is "fair and equitable."  *Protective Committee for*

*Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424, *reh'g*

*denied*, 391 U.S. 909 (1968); *In re Chemtura*., 439 B.R. at 593.  Such a finding is, in turn, based

on "the probabilities of ultimate success should the claim be litigated," and

> [A]n educated estimate of the complexity, expense, and likely
> duration of such litigation, the possible difficulties of collecting on
> any judgment which might be obtained, and all other factors
> relevant to a full and fair assessment of the wisdom of the
> proposed compromise.  Basic to this process in every instance, of
> course, is the need to compare the terms of the compromise with
> the likely rewards of litigation.

*TMT Trailer Ferry,* 390 U.S. at 424-25; *In re Chemtura Corp*., 439 B.R. at 593-94 (citations

omitted).

25.     A bankruptcy court need not perform an independent investigation into the

reasonableness of the settlement, but must only "canvas the issues and see whether the settlement

falls below the lowest point in the range of reasonableness."  See *In re Chemtura*, 439 B.R. at

594 (quoting *In re W.T. Grant Co*., 699 F.2d 599, 608 (2d Cir.1983)); *In re Dewey & LeBoeuf*

*LLP,* 478 B.R. 627, 640 (Bankr. S.D.N.Y. 2012); *Drexel Burnham Lambert Group*, 134 B.R. at

505.

26.     Rather than conduct a "mini-trial" of the facts or the merits underlying the

dispute, a "court need only be apprised of those facts necessary to enable it to evaluate a

settlement and to make a considered and independent judgment about the settlement."  *In re*

*Chemtura*, 439 B.R. at 594 (citing *In re Purofied Down Prods. Corp.*, 150 B.R. 519, 522

(S.D.N.Y. 1993); *Official Comm. of Unsecured Creditors of Int'l Distrib. Ctrs., Inc. v. James

Talcott, Inc. (In re Int'l Distrib. Ctrs., Inc.),* 103 B.R. 420, 423 (S.D.N.Y.1989)).  In its

evaluation, the court is permitted to rely upon "opinions of the trustee, the parties, and their

attorneys."  *In re Chemtura*, 439 B.R. at 594 (quoting *Int'l Distrib. Ctrs.,* 103 B.R. at 423).

      27.    Citing *TMT Trailer Ferry* and other cases in this circuit, the Second

Circuit has set forth a list of factors (the "**Iridium Factors**") to consider in approving a

settlement:

> (1)    The balance between the litigation's possibility of success and the settlement's future benefits;
>
> (2)    The likelihood of complex and protracted litigation, with its attendant expense, inconvenience, and delay, including the difficulty in collecting on the judgment;
>
> (3)    The paramount interests of the creditors, including each affected class's relative benefits and the degree to which creditors either do not object to or affirmatively support the proposed settlement;
>
> (4)    Whether other parties in interest support the settlement;
>
> (5)    The competency and experience of counsel supporting, and the experience and knowledge of the bankruptcy court judge reviewing, the settlement;
>
> (6)    The nature and breadth of releases to be obtained by the directors and officers as a result of the settlement; and
>
> (7)    The extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.

*In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007) (citing *In re WorldCom, Inc.,*

347 B.R. 123, 137 (Bankr.S.D.N.Y.2006); *TMT Trailer Ferry,* 390 U.S. at 424); *see In re

Chemtura*, 439 B.R. at 594.

12

28.    A decision to accept or reject a compromise or settlement is within the

sound discretion of the Court. *In re Chemtura*, 439 B.R. at 595 (citing *Purofied Down Products,*

150 B.R. at 522); *In re Dewey & LeBoeuf,* 478 B.R. at 641. As a general matter, settlements and

compromises "are favored in bankruptcy as they minimize costly litigation and further parties'

interests in expediting the administration of the bankruptcy estate." In re *Dewey & LeBoeuf,*

478 B.R. at 641; *In re Chemtura*, 439 B.R. at 595 (citing *TMT Trailer Ferry,* 390 U.S. at 424.

29.    The Settlement Agreement between the Parties is in the best interests of

the Debtors' estate as it is fair and equitable and falls well within the range of reasonableness.

The Iridium Factors that are relevant in this context support the conclusion that the Settlement

Agreement should be approved.

## A.    Probability of Success

30.    The Claim implicates an extraordinary amount of factual and legal issues

that are among the most complex out of the more the 70,000 claims filed in these chapter 11

cases. The issues include, among other things, the following:

- Defective Gearboxes. Relators assert that GM knowingly permitted the

    installation of defective gearboxes into the first 52 Gen-Sets even though the

    gearboxes leaked pools of oil (thereby posing a safety hazard), and suffered from

    other workmanship issues such as overheating, poor quality parts, and

    contamination with metal chips and shavings. The GUC Trust asserts that oil

    leaks were caused by design issues that were approved by the Navy and, while a

    limited number of gearboxes had workmanship issues, deficiencies were

    effectively repaired at no cost to the Navy.

13

- <u>Uncertified Welders</u>.  Relators assert that GM had knowledge that many of the employees of SOFCO who welded the base and enclosure assemblies for the Gen-Sets were not qualified to military standards, as required under contract specifications.  The GUC Trust asserts that the welders were certified to commercial standards that are not materially different from military standards, and further, Relators cannot establish that GM had the requisite knowledge.

- <u>Missing Final Inspections</u>.  Relators assert that GM had knowledge that General Tool failed to conduct required quality inspections on certain Gen-Sets and that General Tool created fictitious paperwork certifying that such testing had been completed.  The GUC Trust asserts that General Tool did complete final quality inspections and that the paperwork was simply General Tool's internal documents that were completed subsequent to the occurrence of the inspections.

- <u>Damages</u>:  Relators assert numerous theories by which damages may be calculated, including, the entire contract price paid to GM for the Gen-Sets; the cost to obtain new gearboxes; the cost of inspecting and testing SOFCO welding; the value of General Tool's failure to perform final inspections; the imposition of treble damages and civil penalties under 31 U.S.C. § 3729(a)(1).  Relators assert that damages far exceed the face amount of the Claim.  The GUC Trust asserts that Relators' damage theories are unsupported under the applicable facts and case law or incapable of being reduced to reasonable certainty.

31.    The Parties dispute the factual and legal issues that are relevant to the disposition of the Claim, and, therefore, dispute the probability of success.  While the outcome of litigation is uncertain, the settlement represents a fair compromise.  Among other things, the

14

settlement will result in the expeditious resolution of one of the largest remaining claims in these

chapter 11 cases through a substantial reduction and allowance.  For over two years, the GUC

Trust has been reserving distributable assets on account of the Claim that are sufficient to satisfy

an allowed claim in the amount of $50 million.[29]  The settlement will permit the GUC Trust to

release significant assets to holders of allowed claims without the need for expensive and

protracted litigation that may otherwise become as an obstacle to the closing of these chapter 11

cases.

B.    **Likelihood of Complex and Protracted Litigation with Attendant Expense,
       Inconvenience, and Delay**

32.    The history of litigation underlying the Claim strongly indicates that,

without a consensual resolution, a liquidation of the Claim will not occur in a reasonable amount

of time.  The Prepetition Action has now been ongoing for over 18 long years and has been the

subject of two separate appeals to the Supreme Court.  While a new trial in the Prepetition

Action is scheduled to begin in March of 2014, it may take several additional years for any

appeals to come to an end.

33.    Even if the Claim were to be liquidated pursuant to an estimation or

objection in this Court, the complexity of the Claim would necessitate substantial briefing

followed by time consuming and expensive litigation without any assurance that further appeals

will not follow.  The resolution of the Claim pursuant to the settlement will resolve the GUC

Trust's pending Estimation Motion (ECF No. 12427).

---

[29] Section 5.5 of the GUC Trust Agreement provides that the GUC Trust is required, except under certain
exceptions, to maintain a reserve of assets to distribute to holders of disputed claims that subsequently become
allowed.

15

C.     **Paramount Interest of Creditors**

34.     The paramount interest of creditors favors approval of the settlement because it will expedite the release of distributable assets currently maintained on account of the Claim for the benefit of holders of allowed claims.

35.     Additionally, the GUC Trust exposes itself to adverse tax consequences with respect to any reserves that are held on account of the Claim.  The GUC Trust is currently, for U.S. federal income tax purposes, a "disputed ownership fund" within the meaning of Section 1.468B-9 of the Treasury Regulations promulgated under title 26 of the United States Code, and is taxable as a "qualified settlement fund," pursuant to Section 1.468B-9(c)(1)(ii) and Section 1.468B-2 of the Treasury Regulations.  As such, the GUC Trust recognizes taxable gain and/or loss from distributions of assets to holders of allowed claims equal to the difference between the market value of such assets at the time of distribution and the GUC Trust's tax basis of such assets.[30]  A subsequent increase in the market value of the distributed assets could result in adverse tax implications for the GUC Trust.  The amount necessary to satisfy the tax liability would otherwise be distributed to holders of allowed claims.

D.     **Extent to which Settlement is the Product of Arm's Length Bargaining**

36.     The Settlement Agreement is the result of good faith and arm's-length negotiations resulting from a mediation ordered by this Court.

37.     Based on the foregoing, the Parties submit that the Settlement Agreement is in the best interests of the Debtors' estates, falls well within the range of reasonableness, and should be approved.

---

[30] The tax implications of distributions by the GUC Trust are more fully explained in the Form 8-K filed by the GUC Trust on May 7, 2012.

US_ACTIVE:\44363032\15\72240.0639

**V.** **The Court Should Approve the Allocation of 30% of the Allowed Relators**
**Claim to Relators Pursuant to Section 3730(d)(2) of the False Claims Act**

38.    The centerpiece of the legislative intent behind the federal False Claims

Act is to incentivize private parties to come forward to both report and prosecute government

contracting fraud.  In 1986, Congress expressed its judgment that "sophisticated and widespread

fraud" that significantly threatened both the federal treasury and the nation's security could only

be successfully combated by a "coordinated effort of both the Government and the citizenry."[31]

The 1986 amendments to the False Claims Act were specifically designed to "increase

incentives, financial and otherwise, for private individuals to bring suits on behalf of the

Government" and to encourage more private enforcement suits.[32]

39.    The False Claims Act establishes a scale from which the Court is to award

a share of the total recovery to the relator who initiates a successful suit.  The high end of such

scale, 25% to 30%, is reserved for those relators who prosecute these cases when the United

States DOJ elects to not intervene in the case.[33]  Here the DOJ did not intervene in this action.[34]

40.    It is appropriate that Relators be awarded the maximum amount

established by Congress for their role in prosecuting this prolonged and highly contentious

matter as to which the Parties are settling for significant sums albeit without any admission of

---

[31] *United States ex rel. Green v. Northrop Corp.*, 59 F.3d 953, 963 (9th Cir. 1995) (*citing* S. Rep. No. 99-345, at 2-3 (1986), *reprinted in* 1986 U.S.C.C.A.N. 5266, 5267-68).

[32] *Id.*

[33] 31 U.S.C. § 3730(d)(2) ("if the government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages.  The amount shall not be less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds.").

[34] From time-to-time the DOJ did file briefs and participate in oral arguments supporting the Relators' positions in the case.

US_ACTIVE:\44363032\15\72240.0639

liability.  In the 150 year history of the False Claims Act,[35] no case has been litigated longer than

this one.  In those 150 years only about one dozen of such cases have gone to trial, only 13 have

been reviewed by the United States Supreme Court,[36] and only a handful have been debated by

the United States Congress.  In this case, Relators have done all three.

41.    Relators Sanders and Thacker pointed federal agents of the Navy Criminal

Investigative Service and the FBI to relevant documents and then worked many years with such

agencies to review the two semi-trailer truck loads of seized documents concerning this case.

Both Relators allege to have lost their high paying jobs as a result of their whistleblowing efforts.

Mr. Sanders is now a house painter.  Mr. Thacker was forced to file bankruptcy and his disability

prevents him from working.

42.    As a result of Relators' whistleblowing the Navy was alerted to several

alleged construction issues concerning the vital power generating equipment used on the Navy's

primary combat ship.  But for their efforts and sacrifices, there would have been no recovery.

43.    The Relators hired experienced counsel to ensure this case was prosecuted

and assisted in all phases of the nearly 19 years of this case (so far), attending dozens of

hearings, being deposed, and testifying at trial.

44.    There is no doubt that without their diligence and patience this case would

never have resulted in the recovery to the United States being reviewed by this Court.  In short,

Relators submit that if there ever was a case in which relators qualify for a 30% share, this has to

---

[35] *See* James B. Helmer, Jr., *The False Claims Act:  Incentivizing Integrity for 150 Years for Rogues, Privateers, Parasites, and Patriots*, 81 U. Cin. L. Rev. 1261 (2013).

[36] James B. Helmer, Jr., *False Claims Act:  Whistleblower Litigation*, Chap. 23, "The FCA and the Supreme Court" (6th Ed. BNA Bloomberg 2012).

US_ACTIVE:\44363032\15\72240.0639

be it.[37]  Relators further submit that awarding such share is consistent with Congressional policy

behind deputizing regular citizens to pursue meritorious cases and relieve and/or supplement the

fraud-fighting resources of the DOJ.

**VI.    The Court Should Approve the Award of Attorneys' Fees to
HMR&P Pursuant to Section 3730(d)(2) of the False Claims Act**

45.    The False Claims Act also provides that the successful relator "shall also

receive an amount for reasonable expenses which the court finds to have been necessarily

incurred, plus reasonable attorneys' fees and costs," all of which "shall be awarded against the

defendant."[38]

46.    At the mediation of this matter there was no negotiation over attorneys'

fees.  This was because any discussion of such fees prior to this Court's approval of the

settlement of the *qui tam* suit would have placed counsel in an appearance of a conflict.  But the

GUC Trust realized that under the False Claims Act if the *qui tam* portion of the case was settled

the Relators were still entitled to pursue attorneys' fees and costs.  The GUC Trust insisted on

finality with respect to the Claim and would not consider the mediation successful if litigation

were to continue over the portion of the Claim attributable to attorneys' fees.  Accordingly, after

more than ten hours of mediation, the GUC Trust proposed the settlement which is now before

the Court.  HMR&P believed this was a reasonable resolution and was duty-bound to present it

to their clients (who approved it), the DOJ, and this Court.

---

[37] There are only a handful of False Claims Act reported decisions on determining relator share amounts, all of which are detailed in James B. Helmer, Jr., *False Claims Act:  Whistleblower Litigation*, p. 930-946 (6th Ed. BNA Bloomberg 2012).  Those decisions discuss various factors that other courts have considered but none of them present the overwhelming sacrifices, contributions and doggedness which exist in this case.

[38] 31 U.S.C. § 3730(d)(2).  The mandatory fee shifting in the False Claims Act stands in sharp contrast to fee shifting provisions of other important federal legislation (such as the Civil Rights Act) in which the court has discretion to award or not to award fees to the prevailing plaintiff.

19

47.    Had there been a negotiation over the attorneys' fees, HMR&P would

have pointed out the following:

(a)    HMR&P has been the Relators' trial counsel since 1995 and has

handled every aspect of this case.[39]  In this soon to be 19 year effort there

were very few weeks in which services were not performed on this case.

(b)    HMR&P's work involved the collection and review of hundreds of

thousands of documents, as well as winning multiple motions to dismiss,

motions for summary judgment, and motions in limine.  Relators' counsel

tried the case to a jury in Dayton, Ohio for over 5 weeks with

approximately 30 witnesses.  Counsel successfully appealed the trial

court's determination that "presentment" was a requirement of the statute

to the Sixth Circuit Court of Appeals.  HMR&P then successfully argued

to the United States Supreme Court (against General Motors counsel

Theodore Olson) that "presentment" is not an element of the portion of the

False Claims Act applying to this case.  Counsel were then summoned and

testified before Congress on overturning the Supreme Court's

misapplication of other language in the False Claims Act.   Congress

agreed and made retroactive changes which negated the Supreme Court's

decision.  Counsel then were required to argue to the trial court that such

retroactive clarification applied to this case.  When the trial court

---

[39] For a period of time the Alabama law firm of Hare, Wynn, Newell & Newton, LLP ("**Hare Wynn**") was co-counsel.  That firm was terminated by both Mr. Sanders and the Ohio Bankruptcy Court.  As part of approving the proposed settlement at the mediation, the Relators told the GUC Trust that Relators could not negotiate any aspect of the attorneys' and costs incurred by Hare, Wynn.  The GUC Trust considers the Claim to be fully resolved with Relators, and Hare Wynn has not filed a timely proof of claim.

20

disagreed, HMR&P successfully obtained interlocutory review by the Sixth Circuit Court of Appeals which again reversed the trial court. Finally, counsel successfully convinced the United States Supreme Court not to review such decision even though the Circuit Courts were split on the issue.

(c)    While not discussed at the mediation, Relators' counsel at HMR&P have expended over 30,000 hours on this nearly 19 year-old case, and hundreds of thousands of dollars of advanced costs.

(d)    Relators' counsels' credentials include over 300 published opinions as trial counsel including over 100 published legal decisions involving the False Claims Act, with nearly $1 billion recovered for the taxpayers in other False Claims Act cases, which also led to 15 criminal indictments.  Counsel enjoy the highest recognition by numerous legal rating systems, and their work has been praised by two published books. Congress sought their testimony in 1985, 1986, 1989, and 2008 impacting amendment to the False Claims Act.  Counsel have authored numerous published articles and books on trial practice and the False Claims Act.

(e)    Were a detailed fee application required by this Court, the time records for HMR&P would exceed 727 pages.  Because the Relators continue to be in active litigation against General Motors' co-defendants in the Arleigh Burke False Claims Act litigation it would not be prudent to submit such records at this time.

21

(f)      Under a typical lodestar analysis, which is the norm for

determining fees in *qui tam* cases, the product of counsels' hours

multiplied by their customary hourly rate charges would be several times

the $2.5 million proposed settlement.

48.      In short, the request for an allowed claim for $2.5 million for HMR&P's

fees from the estate is fully supportable.

## VII.    Notice

49.      Notice of this Motion has been provided to parties in interest in

accordance with the *Sixth Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P.*

*1015(c) and 9007 Establishing Notice and Case Management Procedures*, dated May 5, 2011

(ECF No. 10183).  The Parties submits that such notice is sufficient and no other or further

notice need be provided.

50.      No previous request for the relief sought herein has been made by the

Parties to this or any other Court.

WHEREFORE the Parties respectfully request that the Court grant the relief

requested herein and such other and further relief as is just.

Dated: New York, New York
       November 26, 2013

                       /s/ Joseph H. Smolinsky
                       Harvey R. Miller
                       Stephen Karotkin
                       Joseph H. Smolinsky
                       WEIL, GOTSHAL & MANGES LLP
                       767 Fifth Avenue
                       New York, New York 10153
                       Telephone:  (212) 310-8000
                       Facsimile:  (212) 310-8007

                       *Attorneys for Motors Liquidation*
                         *Company GUC Trust*

                       /s/ James B. Helmer, Jr.
                       James B. Helmer, Jr., PHV
                       HELMER, MARTINS, RICE AND POPHAM
                       600 Vine Street
                       Suite 2704
                       Cincinnati, Ohio 45202
                       Telephone:  (513) 421-2400
                       Facsimile:   (513) 421-7902

                       *Attorneys for Roger L. Thacker,*
                         *Roger L. Sanders, and Thomas J. Hanson*

23

## EXHIBIT A

## PROPOSED ORDER

HEARING DATE AND TIME: December 20, 2013 at 9:45 a.m. (Eastern Time)
OBJECTION DEADLINE: December 13, 2013 at 4:00 p.m. (Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                       :

In re                                :          Chapter 11 Case No.
                                         :

MOTORS LIQUIDATION COMPANY, *et al.*,  :         09-50026 (REG)
      f/k/a General Motors Corp., *et al.*  :

                                       :
                     Debtors.        :          (Jointly Administered)
                                       :
------------------------------------------------------------x

## ORDER GRANTING JOINT MOTION OF MOTORS LIQUIDATION COMPANY GUC TRUST AND RELATORS ROGER L. THACKER, ROGER L. SANDERS, AND THOMAS J. HANSON FOR ENTRY OF AN ORDER PURSUANT TO SECTION 105 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULE 9019 APPROVING (I) SETTLEMENT AGREEMENT RESOLVING PROOF OF CLAIM NO. 27105 (II) ALLOCATION OF THE SETTLEMENT PROCEEDS UNDER SECTION 3730(d)(2) OF THE FALSE CLAIMS ACT AND (III) ATTORNEYS' FEES AND EXPENSES TO RELATORS' COUNSEL UNDER SECTION 3730(d)(2) OF THE FALSE CLAIMS ACT

Upon the motion, dated November 26, 2013 (ECF No. ___) (the "**Motion**"),[1] of

the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), and Roger L. Thacker,

Roger L. Sanders, and Thomas J. Hanson (collectively, "**Relators**" or "**Claimants**," and together

with the GUC Trust, the "**Parties**"), seeking the entry of an order approving, pursuant to section

105 of title 11 of the United States Code (the "**Bankruptcy Code**") and  Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), (i) a settlement agreement

(the "**Settlement Agreement**")[2] between the GUC Trust and Relators, which, among other

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

[2] *Stipulation and Settlement* Resolving *Claim No. 27105*, dated November 21, 2013, annexed to the Motion as Exhibit "A."

things, reduces and allows Claim No. 27105 (the "**Claim**") to a general unsecured claim in the

amount of $7,500,000 to be treated in accordance with the Plan (the "**Allowed Relators'**

**Claim**"), (ii) the allocation to Relators of 30% of the proceeds of the Allowed Relators Claim

pursuant to 31 U.S.C. § 3730(d)(2), and (iii) an award of attorneys' fees and expenses to Helmer,

Martins, Rice & Popham Co., L.P.A. ("**HMR&P**") pursuant to 31 U.S.C. § 3730(d)(2) in the

form of a general unsecured claim against the Debtors (in addition to the Allowed Relators

Claim) in the amount of $2,500,000 to be treated in accordance with the Plan and the Settlement

Agreement, all as more fully set forth in the Motion, and due and proper notice of the Motion

having been provided, and it appearing that no other or further notice need be provided; and the

Court having found and determined that the relief sought in the Motion is in the best interests of

the Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases

set forth in the Motion establish just cause for the relief granted herein; and after due deliberation

and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is granted to the extent

provided herein; and it is further

ORDERED that, upon the approval of the Ohio Bankruptcy Court, the Claim is

hereby reduced and allowed as a general unsecured claim in the amount of $7,500,000 to be

treated in accordance with the Settlement Agreement and the Plan (the "Allowed Relators

Claim"); and it is further

ORDERED that distributions on account of the Allowed Relators Claim shall be

made to a securities account (the "**Account**") established by HMR&P to be further allocated in

accordance with all applicable laws among the individual Relators and the United States of

America, and the MLC Parties shall have no obligation with respect to the allocation of the

distributions beyond providing the distributions to the Account specified by HMR&P; and it is further

ORDERED that Relators shall seek the dismissal with prejudice of General Motors Corporation and any of the MLC Parties from the Prepetition Action within ten days following the Ohio Bankruptcy Court's approval of the settlement, which dismissal shall be without costs to any of the MLC Parties; and it is further

ORDERED that 30% of the proceeds of the Allowed Relators Claim is allocated to Relators pursuant to 31 U.S.C. § 3730(d)(2); and it is further

ORDERED that HMR&P is entitled to an award of attorneys' fees and expenses pursuant to 31 U.S.C. § 3730(d)(2) in the form of a general unsecured claim against the Debtors in the amount of $2,500,000 to be treated in accordance with the Plan and the Settlement Agreement and will file a proof of claim in connection therewith; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters arising from or related to this Order.

Dated: New York, New York
        _____, 2013


                                        _____
                                        United States Bankruptcy Judge

# EXHIBIT B

## STIPULATION AND SETTLEMENT
## RESOLVING CLAIM NO. 27105

## STIPULATION AND SETTLEMENT RESOLVING CLAIM NO. 27105

This Stipulation and Settlement (the "**Stipulation and Settlement**") is entered into as of November ≥1, 2013 (the "**Effective Date**"), by and between Motors Liquidation Company GUC Trust (the "**GUC Trust**"), on the one hand, and Roger L. Thacker, Roger L. Sanders, and Thomas J. Hanson (collectively, "**Claimants**" or "**Relators,**" and together with the GUC Trust, the "**Parties**"), on the other hand.

### RECITALS:

WHEREAS, on June 1, 2009 (the "**Commencement Date**"), Motors Liquidation Company (f/k/a General Motors Corporation) ("**MLC**") and certain of its affiliated debtors, as debtors in possession (collectively, the "**Debtors**") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), Case No. 09-50026 (REG);

WHEREAS, on September 16, 2009, the Bankruptcy Court entered the *Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Rule 3003(c)(3) of the Federal Rules of Bankruptcy Procedure Establishing the Deadline for Filing Proofs of Claim (Including Claims Under Bankruptcy Code Section 503(b)(9)) and Procedures Relating Thereto and Approving the Form and Manner of Notice Thereof* (the "**Bar Date Order**") establishing November 30, 2009 as the deadline to file proofs of claim against the Debtors based on prepetition claims;

WHEREAS, Claimants filed the following proof of claim (the "**Claim**") in the Debtors' chapter 11 cases:

| Date of Filing | Claim Number | Filed Amount |
|---|---|---|
| 11/16/2009 | 27105 | $50,000,000.00 |

WHEREAS, the Claim was filed by Relators on account of a pending lawsuit and statutory counsel fees in connection therewith (the "**Lawsuit**") in the United States District Court for the Southern District of Ohio, Western Division, styled *United States ex. Rel. Sanders, et al. v. Allison Engine Company et al.*, Case No. C-1-95-970, that was initiated prior to the Commencement Date by Relators against, among other defendants, MLC;

WHEREAS, on October 6, 2009, the Bankruptcy Court entered that *certain Order pursuant to Section 105(a) of the Bankruptcy Code and Bankruptcy Rules 3007 and 9019(b) Authorizing the Debtors to (i) File Omnibus Claims Objections and (ii) Establish Procedures for Settling Certain Claims* (the "**Settlement Procedures Order**");

WHEREAS, on March 28, 2011, the Bankruptcy Court entered its *Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan* (the "**Confirmation Order**"), which, among other things,

THACKER/SANDERS SETTLEMENT (MATTER NO. 27105)

confirmed MLC's and its affiliated debtors' (collectively, the "**Debtors**") *Second Amended Joint Chapter 11 Plan* (as may be amended, modified or supplemented from time to time, the "**Plan**"), and established the GUC Trust pursuant to that certain *Motors Liquidation Company GUC Trust Agreement* (the "**GUC Trust Agreement**");

WHEREAS, pursuant to the Confirmation Order and the Plan, the GUC Trust is authorized to resolve the Claim on behalf of the Debtors' estates;

WHEREAS, on July 12, 2002, Roger Thacker commenced a case under chapter 7 of the Bankruptcy Code that is currently pending before the United States Bankruptcy Court for the Southern District of Ohio (the "**Ohio Bankruptcy Court**"), Case No. 02-15125;

WHEREAS, after good-faith, arms'-length negotiations, the Parties have reached an agreement to resolve the Claim; and

NOW, THEREFORE, in consideration of the foregoing, it is hereby stipulated and agreed that:

1.    As used in this Stipulation and Settlement, the term "**Judicial and Governmental Approval**" shall mean (i) the approval of the Bankruptcy Court, (ii) the approval (or non-objection to the approval of the Bankruptcy Court) of the United States Department of Justice ("**DOJ**"), and, (iii) the approval, to the extent necessary, of the Ohio Bankruptcy Court.

2.    Subject to Judicial and Governmental Approval, the Claim shall be allowed as a general unsecured claim in favor of Claimants in the amount set forth below (the "**Allowed Relators Claim**") to be treated in accordance with the Plan, which Allowed Relators Claim shall not be subject to any defense, counterclaim, right of setoff, reduction, avoidance, disallowance (including under Section 502(d) of the Bankruptcy Code) or subordination. Distributions on account of the Allowed Relators Claim shall be made to an account (the "**Account**") established by Helmer, Martins, Rice & Popham Co., L.P.A. ("**HMR&P**") to be further allocated in accordance with all applicable laws among the individual Claimants and the United States. The MLC Parties (as hereinafter defined) shall have no obligation with respect to the allocation of the distributions beyond providing the distributions to the Account specified by HMR&P.

| Claim Number | Allowed Amount |
|---|---|
| 27105 | $7,500,000 |

3.    In addition to the Allowed Relators Claim, with respect to portion of the Claim related to the clients' attorney fees and expenses, the Relators shall be entitled to request that the Bankruptcy Court award fees pursuant to 31 U.S.C. §3730(d)(2) for HMR&P, which award shall not exceed $2,500,000 to be treated as a general unsecured claim in accordance with the Plan. The GUC Trust agrees to support approval of the award for statutory fees and expenses incurred solely by HMR&P by joining in its request. Any fee award granted by the Bankruptcy Court (an "**Allowed Attorney Award**") shall be conditioned on Judicial and Governmental Approval of the Allowed Relators Claim, as provided in Paragraph 2 of this Stipulation and

THACKER/SANDERS SETTLEMENT (MATTER NO. 27105)

2

Settlement. HMR&P shall promptly file a proof of claim in connection with any Allowed Attorney Award authorized by the Bankruptcy Court. For the avoidance of doubt, approval of the Allowed Relators Claim shall not be conditioned upon the approval of HMR&P's fees and expenses.

4.    Immediately following the Effective Date of this Stipulation and Settlement, the Parties shall work in good faith to expeditiously and simultaneously seek the Judicial and Governmental Approval required under Paragraph 2 of this Stipulation and Settlement. The Parties shall promptly file a joint motion with the Bankruptcy Court seeking (i) approval of the Allowed Relators Claim, (ii) approval for Relators to receive 30% of the Allowed Relators Claim pursuant to 31 U.S.C. §3730(d)(2), and (iii) authorization for the payment of the fees of HRM&P in accordance with Paragraph 3 of this Stipulation and Settlement. For the avoidance of doubt, approval of subparagraph (i) above shall not be conditioned on the approval of subparagraphs (ii) and (iii) above.

5.    As of the date that Judicial and Governmental Approval under Paragraph 2 of this Stipulation and Settlement has been obtained (the **"Release Effective Date"**), other than the right to receive distributions in accordance with the Plan and this Stipulation and Settlement on account of the Allowed Relators Claim and any Allowed Attorney Award, Claimants, for themselves and on behalf of the United States and on behalf of each of their respective spouse, heirs, assigns, guardians, estates, wards, successors, executors, administrators, agents, insurers, servants, employees, representatives, and trustees (collectively, the **"Claimant Parties"**), shall have no further right to payment from MLC, the Debtors, the GUC Trust Administrator Parties (as defined in the GUC Trust Agreement), or the GUC Trust, or any of their respective current affiliates, their estates or their respective future successors or assigns, or their past, present or future members, officers, directors, partners, principals, agents, insurers, servants, employees, administrators, executors, trustees or attorneys (collectively, the **"MLC Parties"**). With respect to the Claim, except as set forth in this Stipulation and Settlement, the Claimant Parties hereby irrevocably waive any and all claims (as defined in section 101(5) of the Bankruptcy Code) against each of the MLC Parties, and are hereby barred from asserting any and all claims whatsoever, whether known or unknown, presently existing, whether or not asserted, and whether found in fact or law or in equity, in existence as of the execution of this Stipulation and Settlement by the Parties. Further, the Claimant Parties shall be deemed to have fully, finally, and forever released, relinquished and discharged all claims, debts, damages, demands, rights, liabilities, suits, matters, issues, and causes of action of every nature and description whatsoever, known or unknown, whether or not concealed or hidden, asserted or that might have been asserted, including, without limitation, claims for negligence, gross negligence, breach of duty of care and/or breach of duty of loyalty, fraud, misrepresentation, nondisclosure, breach of fiduciary duty, breach of warranty, products liability, strict liability, wrongful death, survival, injury by motor vehicle or equipment, loss of consortium, intentional infliction of emotional distress, negligent infliction of emotional distress, conspiracy, and violations of any local, state, or federal or foreign statutes, rules or regulations or common law and any and all claims arising out of, relating to or in connection with the Lawsuit and the settlement or resolution of the Claim against each and all of the MLC Parties. Nothing herein shall be deemed a release by the Claimant Parties against the remaining defendants in the Lawsuit.

THACKER/SANDERS SETTLEMENT (MATTER NO. 27105)

6.      Claimants represent and warrant that they have an obligation to and will seek dismissal with prejudice of General Motors Corporation and any of the MLC Parties from the Lawsuit within ten (10) days following the receipt of the Judicial and Governmental Approval required under Paragraph 2 of this Stipulation and Settlement, which dismissal shall be without costs to any of the MLC Parties.

7.      Upon the approval of the Bankruptcy Court and the Ohio Bankruptcy Court of the Relators Allowed Claim, the Debtors' claims agent shall be authorized and empowered to adjust the claims register to reduce and allow Proof of Claim No. 27105 to reflect the Allowed Relators Claim and, further, to recognize any Allowed Attorney Award.

8.      The Parties acknowledge that they have read and are familiar with the provisions of California Civil Code Section 1542 ("**Section 1542**"), which is set forth below:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE GUC TRUST.

By entering into this Stipulation and Settlement, to the extent applicable to any of them as California residents, each Claimant and the Claimant Parties hereby waive the provisions of Section 1542 and any and all similar provisions, rights, and benefits conferred by any law or any state or territory of the United States or principle of common law that is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

9.      This Stipulation and Settlement contains the entire agreement between the Parties as to the subject matter hereof and supersedes all prior agreements and undertakings between the Parties relating thereto.

10.     This Stipulation and Settlement may not be modified other than by signed writing executed by the Parties hereto or by order of the Court.

11.     Each person who executes this Stipulation and Settlement represents that he or she is duly authorized to do so on behalf of the respective Parties hereto and that each such party has full knowledge and has consented to this Stipulation and Settlement.

12.     This Stipulation and Settlement may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation and Settlement to present any copy, copies, or facsimiles signed by the Parties hereto to be charged.

THACKER/SANDERS SETTLEMENT (MATTER NO. 27105)

4

13.     The Parties intend this settlement to be a final and complete resolution of all disputes between them. This Stipulation and Settlement comprises claims which are contested and shall not be deemed an admission by the MLC Parties or Claimant Parties as to the merits of any claim or defense. The Parties agree that this Stipulation and Settlement was negotiated in good faith by the Parties, and reflects a settlement that was reached voluntarily after consultation with competent legal counsel. The Parties represent and warrant that (i) they are not relying on any statements, understandings, representations, expectations, or agreements other than those expressly set forth herein; (ii) they have been represented and advised by legal counsel in connection with this Stipulation and Settlement, which they make voluntarily and of their own choice and not under coercion or duress; (iii) they have made their own investigation of the facts and are relying upon their own knowledge and the advice of counsel; (iv) they knowingly waive any and all claims that this Stipulation and Settlement was induced by any misrepresentation or nondisclosure and knowingly waive any and all rights to rescind or avoid this Stipulation and Settlement based upon presently existing facts, known or unknown. The Parties agree to and stipulate that each party is relying upon these representations and warranties in entering into this Stipulation and Settlement. Furthermore, the Parties agree that these representations and warranties are material inducements to entering into this Stipulation and Settlement. These representations and warranties shall survive the execution of this Stipulation and Settlement.

14.     The Claimant Parties agree that neither this Stipulation and Settlement nor the settlement contained herein, nor the negotiation thereof, nor any act performed or document prepared pursuant to or in furtherance of this Stipulation and Settlement or the settlement contained herein: (i) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any allegation contained in the Claim or Lawsuit, or of any wrongdoing or liability of the MLC Parties, or of the damages to any Claimant Party; (ii) is or may be deemed to be or may be used as an admission of, or evidence of, any fault or omission of any of the MLC Parties in any civil, criminal, or administrative proceeding in any court, arbitration, administrative agency, or other tribunal; or (iii) is admissible in any proceeding except an action to enforce or interpret the terms of the Stipulation and Settlement, the settlement contained therein, and any other orders or documents executed in connection with the performance of the agreements embodied herein. The MLC Parties may file this Stipulation and Settlement and/or any document prepared pursuant to or in furtherance of this Stipulation and Settlement in any action for any purpose.

15.     This Stipulation and Settlement shall be binding upon, and inure to the benefit of, the successors and assigns to the Claimant Parties and MLC Parties. All MLC Parties are third party beneficiaries of and shall be entitled to enforce the releases contained in this Stipulation and Settlement.

16.     This Stipulation and Settlement shall be exclusively governed by and construed and enforced in accordance with the laws of the state of New York, without regard to conflicts of law principles thereof. The Court shall retain exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Stipulation and Settlement.

THACKER/SANDERS SETTLEMENT (MATTER NO. 27105)

5

**THE UNDERSIGNED WARRANT THAT THEY HAVE READ THE TERMS OF THIS STIPULATION AND SETTLEMENT, HAVE HAD THE ADVICE OF COUNSEL OR THE OPPORTUNITY TO OBTAIN SUCH ADVICE IN CONNECTION WITH READING, UNDERSTANDING, AND EXECUTING THE AGREEMENT, AND HAVE FULL KNOWLEDGE OF THE TERMS, CONDITIONS, AND EFFECTS OF THIS STIPULATION AND SETTLEMENT.**

*[Remainder of Page Intentionally Left Blank]*

THACKER/SANDERS SETTLEMENT (MATTER NO. 27105)

6

IN WITNESS WHEREOF, the undersigned have hereto set their hands as of the day and year first above written.

**ROGER L. THACKER**

By: _____

Print Name: _____

Date: _____

**THOMAS J. HANSON**

By: _____

Print Name: _____

Date: _____

**ROGER L. SANDERS**

By: *Roger D. Sanders*

Print Name: *ROGER L. SANDERS*

Date: *11-14-13*

**HELMER, MARTINS, RICE & POPHAM CO., L.P.A.**

By: *James B. Helmer*

Print Name: *James B. Helmer, Jr.*

Date: *11-14-13*

<u>THACKER/SANDERS SETTLEMENT (MATTER NO. 27105)</u>

7

IN WITNESS WHEREOF, the undersigned have hereto set their hands as of the day and year first above written.

**ROGER L. THACKER**                                    **ROGER L. SANDERS**

By: *Roger L Thacker*                                   By: _____

Print Name: *Roger L. Thacker*                          Print Name: _____

Date: *11-14-13*                                        Date: _____

**THOMAS J. HANSON**                                    **HELMER, MARTINS, RICE & POPHAM
                                                         CO., L.P.A.**

By: _____                             By: _____

Print Name: _____                           Print Name: _____

Date: _____                            Date: _____

<u>THACKER/SANDERS SETTLEMENT (MATTER NO. 27105)</u>

7

IN WITNESS WHEREOF, the undersigned have hereto set their hands as of the day and first above written.

**ROGER L. THACKER**                    **ROGER L. SANDERS**


By: _____            By: _____

Print Name:_____            Print Name:_____

Date:_____            Date:_____

**THOMAS J. HANSON**                    **HELMER, MARTINS, RICE & POPHAM CO., L.P.A.**


By: _____            By: _____

Print Name: _Thomas J. Hanson_          Print Name:_____

Date: _11-14-2013_                      Date:_____

IN WITNESS WHEREOF, the undersigned have hereto set their hands as of the day and year first above written.

**MOTORS LIQUIDATION COMPANY**
**GUC TRUST**

*By Wilmington Trust Company, not in its*
*individual capacity, but solely as the Motors*
*Liquidation Company GUC Trust Administrator*

By: _____

Name: _Beth Andrews_____

Title: _Assistant Vice President_____

Date: _November 21, 2013_____

THACKER/SANDERS SETTLEMENT (MATTER NO. 27105)

US_ACTIVE:\44338837\17\72240.0639

# EXHIBT C

## CLAIM NO. 27105 (FILED BY ROGER L. THACKER, ROGER L. SANDERS, AND THOMAS J. HANSON)

FORM B10 (Official Form 10) (10/05)

| United States Bankruptcy Court     Southern District of New York | PROOF OF CLAIM |
|---|---|

**Name of Debtor**
Motors Liquidation Company (f/k/a General Motors Corp.

**Case Number**
09-50026

NOTE This form should not be used to make a claim for an administrative expense arising after the commencement of the case  A "request" for payment of an administrative expense may be filed pursuant to 11 U S C  § 503

**Name of Creditor** (The person or other entity to whom the debtor owes money or property)

Roger L Thacker, Roger L Sanders, Thomas J Hanson

☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim  Attach copy of statement giving particulars

**Name and address where notices should be sent**
Helmer, Martins, Rice & Popham Co , L P A
600 Vine St , Suite 2704
Cincinnati, Ohio 45202      FILED - 27105
MOTORS LIQUIDATION COMPANY
F/K/A GENERAL MOTORS CORP
Telephone number  513-421-2400 SDNY # 09-50026 (REG)

☐ Check box if you have never received any notices from the bankruptcy court in this case

☐ Check box if the address differs from the address on the envelope sent to you by the court

THE GARDEN CITY GROUP, INC.
NOV 16 2009

**This space is for Court Use Only**

Last four digits of account or other number by which creditor identifies debtor

Check here
if this claim    ☐ replaces    ☐ amends    a previously filed claim, dated _____

**1  Basis for Claim**
☑ Goods sold
☐ Services performed
☐ Money loaned
☑ Personal injury/wrongful death
☐ Taxes
☑ Other  See attached

☐ Retiree benefits as defined in 11 U S C  § 1114(a)
☐ Wages, salaries, and compensation (Fill out below)
Last four digits of your SS# _____
Unpaid compensation for services performed
from _____ to _____
        (date)        (date)

| **2  Date debt was incurred**   1986 - 1993 | **3  If court judgment, date obtained** |
|---|---|

**4  Classification of Claim**  Check the appropriate box or boxes that best describe your claim and state the amount of the claim at the time case filed  See reverse side for important explanations

**Unsecured Nonpriority Claim** $ 50,000,000 00
☑ Check this box if  a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority

**Secured Claim**
☐ Check this box if your claim is secured by collateral (including a right of setoff)
Brief Description of Collateral
☐ Real Estate   ☐ Motor Vehicle   ☐ Other_____
Value of Collateral   $_____
Amount of arrearage and other charges at time case filed included in secured claim, if any $_____

**Unsecured Priority Claim**
☐ Check this box if you have an unsecured priority claim, all or part of which is entitled to priority
Amount entitled to priority $_____

Specify the priority of the claim
☐ Domestic support obligations under 11 U S C  § 507(a)(1)(A) or (a)(1)(B)
☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U S C  § 507(a)(4)
☐ Contributions to an employee benefit plan - 11 U S C  § 507(a)(5)

☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U S C  § 507(a)(7)
☐ Taxes or penalties owed to governmental units - 11 U S C  § 507(a)(8)
☐ Other - Specify applicable paragraph of 11 U S C  § 507(a)(___)
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment

**5  Total Amount of Claim at Time Case Filed**   $ 50,000,000 00
(unsecured)        (secured)        (priority)        50,000,000 00 (Total)
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim  Attach itemized statement of all interest or additional charges

**6  Credits.**  The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim

**7  Supporting Documents**  Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien  DO NOT SEND ORIGINAL DOCUMENTS  If the documents are not available, explain  If the documents are voluminous, attach a summary

**8. Date-Stamped Copy**  To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

This Space is for Court Use Only

| Date   11-12-09 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy...)   *[signature]*   James B Helmer, Jr , Trial Attorney |
|---|---|

Penalty for presenting fraudulent claim  Fine of up to $500,000 or imprisonment for up to 5 years, or both  18 U S C  §§ 152 and 3571

**Basis for Claim**

Creditors Roger L Thacker, Roger L. Sanders, and Thomas J. Hanson have a contingent, unliquidated claim as *qui tam* Relators in a False Claims Act case for damages and civil penalties for defective generator sets installed in *Arleigh Burke* class destroyers, *United States ex rel Sanders v Allison Engine Company,* C-1-95-970, currently pending in the Southern District of Ohio. Relators also have claims for attorneys fees and costs pursuant to the False Claims Act fee-shifting provision



**LexisNexis**® *Total Research System*                          Switch Client | Pnsferences | Sign Out | [?] Help

| My Lexis™ | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector | Dossier | History |

FOCUS™ Terms                    Search Within  Original Results (1  4)    [  ] Go ✎  Advanced

Source  Legal > /   / > U S  Supreme Court Cases, Lawyers' Edition [i]
Terms  name(sanders and allison engine) (Edit Search | Suggest Terms for My Search)

✔Select for FOCUS™ or Delivery
☐

*128 S  Ct 2123, *, 170 L  Ed  2d 1030, **,*
*2008 U S  LEXIS 4704, ***, 76 U S L W  4387*

**ALLISON ENGINE** COMPANY, INC , et al , Petitioners v  UNITED STATES ex rel  ROGER L  **SANDERS** and ROGER L  THACKER

No  07-214

SUPREME COURT OF THE UNITED STATES

128 S  Ct 2123, 170 L  Ed  2d 1030, 2008 U S  LEXIS 4704, 76 U S L W  4387, 37 A L R  Fed  2d 773, 21 Fla  L  Weekly Fed  S 300

February 26, 2008, Argued
June 9, 2008, Decided

**NOTICE:**

The LEXIS pagination of this document is subject to change pending release of the final published version

**PRIOR HISTORY  [***1]**
ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT
United States ex rel  Sanders v  Allison Engine Co., 471 F.3d 610, 2006 U.S. App. LEXIS 31136 (6th Cir.) (6th Cir. Ohio, 2006)

**DISPOSITION:** The Court vacated the judgment and remanded the case for further proceedings consistent with the opinion
Unanimous decision

**CASE SUMMARY**

**PROCEDURAL POSTURE:** Petitioner subcontractors sought certiorari review of a judgment from the United States Court of
Appeals for the Sixth Circuit which reversed the district court's grant of judgment as a matter of law in favor of petitioners in
respondent former employees' qui tam action seeking to recover damages from petitioners under 31 U.S.C.S. § 3729(a)(2) and
(a)(3) of the False Claims Act (FCA), 31 U.S.C.S. § 3729

**OVERVIEW:** In the district court, respondents introduced evidence that petitioners issued certificates of conformance falsely
stating that their work was completed in compliance with U S  Navy specifications for generator sets needed in the construction of
Navy guided missile destroyers and that petitioners presented invoices for payment to the prime contractor shipyards
Respondents, however, did not introduce the invoices that the shipyards submitted to the Navy  The district court found
respondents' evidence legally insufficient under the FCA, but the Sixth Circuit held that claims under 31 U.S.C.S. § 3729(a)(2), (3)
did not require proof of an intent to cause a false claim to be paid by the Government, instead, proof of an intent to cause such a
claim to be paid by a private entity using Government funds was sufficient  Contrary to the Sixth Circuit, the Court held that under
§ 3729(a)(2) respondents were required to prove that petitioners intended that the false statement be material to the
Government's decision to pay or approve the false claim  Similarly, under § 3729(a)(3) respondents were required to show that
petitioners agreed to make use of the false statement to achieve this end

**OUTCOME** The Court vacated the judgment and remanded the case for further proceedings consistent with the opinion
Unanimous decision

**CORE TERMS:** false statement, false claims, fraudulent claim, claim paid, fraudulent, shipyards, defraud, private entity, intent,
conspirators, knowingly, recipient, invoices, subcontracted, destroyer, require proof, specifications, subcontractor, contractor,
asserting, intent to cause, used to pay, conspires, approve, grantee, usage, build, matter of law, funds to pay, prime contractor

**LEXISNEXIS® HEADNOTES**                                                                                      ⊟**Hide**

    Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof 🖑
    Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions 🖑
HN1 ⬦ It is insufficient for a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. §
3729, to show merely that the false statement's use resulted in obtaining or getting payment or approval of the claim or
that government money was used to pay the false or fraudulent claim  Instead, a plaintiff asserting a claim under 31
U.S.C.S. § 3729(a)(2) must prove that the defendant intended that the false record or statement be material to the
government's decision to pay or approve the false claim  Similarly, a plaintiff asserting a claim under 31 U.S.C.S. § 3729
(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this
end  More Like This Headnote | Shepardize, Restrict By Headnote

    Governments > Legislation > Interpretation 🖑
HN2 ⬦ To determine the meaning of a statute, the court starts with the language of the statute  More Like This Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > General Overview ⬆

*HN3*⬆ 31 U S.C.S § 3729(a)(2) of the False Claims Act (FCA), 31 U.S.C.S. § 3729, imposes civil liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government Under 31 U.S.C.S. § 3729(a)(2), the defendant must make the false record or statement "to get" a false or fraudulent claim "paid or approved by the Government " "To get" denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim paid or approved by the Government in order to be liable under 31 U.S.C.S. § 3729(a)(2) Additionally, getting a false or fraudulent claim "paid by the Government" is not the same as getting a false or fraudulent claim paid using government funds Under 31 U.S.C.S. § 3729(a)(2), a defendant must intend that the Government itself pay the claim Eliminating this element of intent would expand the FCA well beyond its intended role of combating fraud against the Government   More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > General Overview ⬆

*HN4*⬆ Under the definition of the term "claim" in 31 U.S.C.S. § 3729(c) of the False Claims Act, 31 U.S.C.S. § 3729, a request for money or property need not be made directly to the Government in order to constitute a claim Instead, a claim may include a request or demand that is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded 31 U.S.C.S. § 3729(c) This definition of the word "claim" does not alter the meaning of the phrase "by the Government" in 31 U.S.C.S. § 3729(a)(2) Under 31 U.S.C.S. § 3729(c)'s definition of "claim," a request or demand may constitute a claim even if the request is not made directly to the Government, but under 31 U.S.C.S. § 3729(a)(2) it is still necessary for the defendant to intend that a claim be "paid by the Government" and not by another entity   More Like This Headnote | Shepardize, Restrict By Headnote

Evidence > Inferences & Presumptions > Presumptions ⬆

Governments > Legislation > Interpretation ⬆

Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof ⬆

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions ⬆

*HN5*⬆ While 31 U.S.C.S. § 3729(a)(1) of the False Claims Act, 31 U.S.C.S. § 3729, requires a plaintiff to prove that the defendant presented a false or fraudulent claim to the Government, the concept of presentment is not mentioned in 31 U.S.C.S. § 3729(a)(2) The inclusion of an express presentment requirement in 31 U.S.C.S. § 3729(a)(1), combined with the absence of anything similar in § 3729(a)(2), suggests that Congress did not intend to include a presentment requirement in § 3729(a)(2) When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion   More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof ⬆

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions ⬆

*HN6*⬆ What 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. § 3729, demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government Therefore, a subcontractor violates 31 U.S.C.S. § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim "by the Government " In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability   More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions ⬆

*HN7*⬆ Recognizing a cause of action under the False Claims Act (FCA), 31 U.S.C.S. § 3729, for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute Under 31 U.S.C.S. § 3729(a)(2), based on the language of the statute, gives effect to Congress's efforts to protect the Government from loss due to fraud but also ensures that a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct   More Like This Headnote | Shepardize, Restrict By Headnote

Labor & Employment Law > Employer Liability > False Claims Act > Burdens of Proof ⬆

Labor & Employment Law > Employer Liability > False Claims Act > Coverage & Definitions > Qui Tam Actions ⬆

*HN8*⬆ 31 U.S.C.S. § 3729(a)(3) of the False Claims Act, 31 U.S.C.S. § 3729, makes liable any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid Under 31 U.S.C.S. § 3729(a)(3), it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government Instead, it must be shown that the conspirators intended "to defraud the Government " Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim   More Like This Headnote | Shepardize, Restrict By Headnote

**LAWYERS' EDITION DISPLAY**                                                                                          ⬏ Hide

**DECISION**

[**1030**] False Claims Act plaintiff held required to show (1) under 31 U.S.C.S. § 3729(a)(2), that defendant intended that false

record or statement be material to Federal Government's decision to pay or approve false claim, and (2) under 31 U.S.C.S. § 3729 (a)(3), that conspirators agreed to make use of false record or statement to achieve this end

**SUMMARY**

**Procedural posture:** Petitioner subcontractors sought certiorari review of a judgment from the United States Court of Appeals for the Sixth Circuit which reversed the district court's grant of judgment as a matter of law in favor of petitioners in respondent former employees' qui tam action seeking to recover damages from petitioners under 31 U.S.C.S. § 3729(a)(2) and (a)(3) of the False Claims Act (FCA), 31 U.S.C.S. § 3729

**Overview** In the district court, respondents introduced evidence that petitioners issued certificates of conformance falsely stating that their work was completed in compliance with U S Navy specifications for generator sets needed in the construction of Navy guided missile destroyers and that petitioners presented invoices for payment to the prime contractor shipyards Respondents, however, did not introduce the invoices that the shipyards submitted to the Navy The district court found respondents' evidence legally insufficient under the FCA, but the Sixth Circuit held that claims under 31 U.S.C.S. § 3729(a)(2), (3) did not require proof of an intent to cause a false claim to be paid by the Government, instead, proof of an intent to cause such a claim to be paid by a private entity using Government funds was sufficient Contrary to the Sixth Circuit, the Court held that under § 3729(a)(2) respondents were required to prove that petitioners intended that the false statement be material to the Government's decision to pay or approve the false claim **[**1031]** Similarly, under § 3729(a)(3) respondents were required to show that petitioners agreed to make use of the false statement to achieve this end

**Outcome** The Court vacated the judgment and remanded the case for further proceedings consistent with the opinion Unanimous decision

**LAWYERS' EDITION HEADNOTES**

**[**LEdHN1]**

CLAIMS §101 CONSPIRACY §10

FALSE CLAIMS ACT -- REQUIRED SHOWING

Headnote *LEdHN(1)*±[1]

It is insufficient for a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. § 3729, to show merely that the false statement's use resulted in obtaining or getting payment or approval of the claim or that government money was used to pay the false or fraudulent claim Instead, a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(2) must prove that the defendant intended that the false record or statement be material to the government's decision to pay or approve the false claim Similarly, a plaintiff asserting a claim under 31 U.S.C.S. § 3729(a)(3) must show that the conspirators agreed to make use of the false record or statement to achieve this end

**[**LEdHN2]**

STATUTES §164

LANGUAGE

Headnote *LEdHN(2)*±[2]

To determine the meaning of a statute, the court starts with the language of the statute

**[**LEdHN3]**

CLAIMS §101

FALSE CLAIMS ACT -- CIVIL LIABILITY

Headnote *LFdHN(3)*±[3]

31 U.S.C.S. § 3729(a)(2) of the False Claims Act (FCA), 31 U.S.C.S. § 3729, imposes civil liability on any person who knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government Under 31 U.S.C.S. § 3729(a)(2), the defendant must make the false record or statement "to get" a false or fraudulent claim "paid or approved by the Government " "To get" denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim paid or approved by the Government in order to be liable under 31 U.S.C.S. § 3729(a)(2) Additionally, getting a false or fraudulent claim "paid by the Government" is not the same as getting a false or fraudulent claim paid using government funds Under 31 U.S C S § 3729(a)(2), a defendant must intend that the Government itself pay the claim Eliminating this element of intent would expand the FCA well beyond its intended role of combating fraud against the Government

**[**LEdHN4]**

CLAIMS §101

FALSE CLAIMS ACT -- CLAIM -- PAYMENT

Headnote LEdHN(4)⊁[4]

Under the definition of the term "claim" in 31 U S C S § 3729(c) of the False Claims Act, 31 U.S.C.S § 3729, a request for money or property need not be made directly to the Government in order to constitute a claim Instead, a claim may include a request or demand that is made to a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested [**1032] or demanded 31 U.S.C.S. § 3729(c) This definition of the word "claim" does not alter the meaning of the phrase "by the Government" in 31 U.S.C.S. § 3729(a)(2) Under 31 U.S.C.S. § 3729(c)'s definition of "claim," a request or demand may constitute a claim even if the request is not made directly to the Government, but under 31 U.S.C.S. § 3729(a)(2) it is still necessary for the defendant to intend that a claim be "paid by the Government" and not by another entity

[**LEdHN5]

CLAIMS §101

FALSE CLAIMS ACT -- PRESENTMENT

Headnote LEdHN(5)⊁[5]

While 31 U.S.C.S. § 3729(a)(1) of the False Claims Act, 31 U.S.C.S. § 3729, requires a plaintiff to prove that the defendant presented a false or fraudulent claim to the Government, the concept of presentment is not mentioned in 31 U.S.C.S. § 3729(a)(2) The inclusion of an express presentment requirement in 31 U.S.C.S. § 3729(a)(1), combined with the absence of anything similar in § 3729(a)(2), suggests that Congress did not intend to include a presentment requirement in § 3729(a)(2) When Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion

[**LEdHN6]

CLAIMS §101

FALSE CLAIMS ACT -- RECORD OR STATEMENT

Headnote LEdHN(6)⊁[6]

What 31 U.S.C.S. § 3729(a)(2) of the False Claims Act, 31 U.S.C.S. § 3729, demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting a false or fraudulent claim paid or approved by the Government Therefore, a subcontractor violates 31 U.S.C.S. § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim If a subcontractor or another defendant makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made with the purpose of inducing payment of a false claim "by the Government " In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability

[**LEdHN7]

CLAIMS §101

FALSE CLAIMS ACT -- COVERAGE

Headnote LEdHN(7)⊁[7]

Recognizing a cause of action under the False Claims Act (FCA), 31 U.S.C.S. § 3729, for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute The United States Supreme Court's reading of 31 U.S.C.S. § 3729(a)(2), based on the language of the statute, gives effect to Congress's efforts to protect the Government from loss due to fraud but also ensures that a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct

[**LEdHN8]

CONSPIRACY §10

FALSE CLAIMS ACT -- REQUIRED SHOWING

Headnote LEdHN(8)⊁[8]

31 U.S.C.S. § 3729(a)(3) of the False Claims Act, 31 U.S.C.S. § 3729, makes liable any person who conspires to defraud the Government by getting a false or fraudulent claim allowed or paid Under 31 U.S.C.S. § 3729(a)(3), it is not enough for a [**1033] plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government Instead, it must be shown that the conspirators intended "to defraud the Government " Where the conduct that the conspirators are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's decision to pay the false or fraudulent claim

**SYLLABUS**

The Navy contracted with two shipyards to build destroyers, each of which needed generator sets (Gen-Sets) for electrical power  The shipyards subcontracted with petitioner Allison Engine Company, Inc (Allison [**1034] Engine), to build Gen-Sets, Allison Engine subcontracted with petitioner General Tool Company (GTC) to assemble them, and GTC subcontracted with petitioner Southern Ohio Fabricators, Inc (SOFCO), to manufacture Gen-Set bases and enclosures  The subcontracts required that each Gen-Set be accompanied by a certificate of conformance (COC) certifying that the unit was manufactured according to Navy specifications  All of the funds paid under the contracts ultimately came from the U S Treasury

Former GTC employees Sanders and Thacker (hereinafter respondents) brought this *qui tam* suit seeking to recover damages from petitioners under the False Claims Act (FCA), which, *inter alia*, imposes civil liability on any person who knowingly uses a "false statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2), or who "conspires [***2] to defraud the Government by getting a false or fraudulent claim allowed or paid," § 3729(a)(3)  At trial, respondents introduced evidence that petitioners had issued COCs falsely stating that their work was completed in compliance with Navy specifications and that they had presented invoices for payment to the shipyards  They did not, however, introduce the invoices the shipyards submitted to the Navy  The District Court granted petitioners judgment as a matter of law, concluding that, absent proof that false claims were presented to the Government, respondents' evidence was legally insufficient under the FCA  The Sixth Circuit reversed in relevant part, holding, among other things, that respondents' §§ 3729(a)(2) and (3) claims did not require proof of an intent to cause a false claim to be paid by the Government, proof of an intent to cause such a claim to be paid by a private entity using Government funds was sufficient

*Held*

1  It is insufficient for a plaintiff asserting a § 3729(a)(2) claim to show merely that the false statement's use resulted in payment or approval of the claim or that Government money was used to pay the false or fraudulent claim  Instead, such a plaintiff [***3] must prove that the defendant intended that the false statement be material to the Government's decision to pay or approve the false claim  Pp 5-8

(a) The Sixth Circuit's interpretation of § 3729(a)(2) impermissibly deviates from the statute's language, which requires the defendant to make a false statement "to get" a false or fraudulent claim "paid or approved by the Government "  Because "to get" denotes purpose, a person must have the purpose of getting a false or fraudulent claim "paid or approved by the Government" in order to be liable  Moreover, getting such a claim "paid      by the Government" is not the same as getting it paid using "government funds "  Under § 3729(a)(2), a defendant must intend for the Government itself to pay the claim  Eliminating this element of intent would expand the FCA well beyond its intended role of combating "fraud against the *Government* "  *Rainwater v. United States*, 356 U.S. 590, 592, 78 S. Ct. 946, 2 L. Ed. 2d 996  Pp 5-6

(b) The Government's contention that "paid      by the Government" does not mean literal Government payment is unpersuasive  The assertion that it is customary to say that the Government pays a bill when a recipient of Government funds uses those funds [***4] to pay involves a colloquial usage of the phrase "paid by" [**1035] that is not customarily employed in statutory drafting, where precision is important and expected  Section 3729(c)'s definition of "claim" does not support the Government's argument  The definition allows a request to be a "claim" even if it is not made directly to the Government, but, under § 3729(a)(2), it is necessary that the defendant intend that a claim be "paid by the Government," not by another entity  Pp 6-7

(c) This does not mean, however, that § 3729(a)(2) requires proof that a defendant's false statement was submitted to the Government  Because the section requires only that the defendant make the false statement for the purpose of getting "a false or fraudulent claim paid or approved by the Government," a subcontractor violates § 3729(a)(2) if it submits a false statement to the prime contractor intending for that contractor to use the statement to get the Government to pay its claim  However, if a subcontractor makes a false statement to a private entity but does not intend for the Government to rely on the statement as a condition of payment, the direct link between the statement and the Government's decision to [***5] pay or approve a false claim is too attenuated to establish liability  The Court's reading gives effect to Congress' efforts to protect the Government from loss due to fraud but also ensures that "a defendant is not answerable for anything beyond the natural, ordinary, and reasonable consequences of his conduct "  *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 470, 126 S. Ct. 1991, 164 L. Ed. 2d 720  Pp 7-9

2  Similarly, it is not enough under § 3729(a)(3) for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government  Instead, it must be shown that they intended "to defraud the Government "  Where their alleged conduct involved the making of a false statement, it need not be shown that they intended the statement to be presented directly to the Government, but it must be established that they agreed that the statement would have a material effect on the Government's decision to pay the false or fraudulent claim  Pp 8-10

471 F.3d 610, vacated and remanded

Alito, J , delivered the opinion for a unanimous Court

**COUNSEL: Theodore B. Olson** argued the cause for petitioners

**Malcolm L. Stewart** argued the cause for the United States, as amicus curiae, by special leave of court

**James B. Helmer, Jr.** argued the cause for respondents

**JUDGES:** Alito, J , delivered the opinion for a unanimous Court

**OPINION BY: ALITO**

**OPINION**

[*2126] Justice **Alito** delivered the opinion of the Court

The False Claims Act (FCA) imposes [***6] civil liability on any person who knowingly uses a "false record or statement to get a false or fraudulent claim paid or approved by the Government," 31 U.S.C. § 3729(a)(2), and any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," § 3729(a)(3) We granted review in this case to decide what a plaintiff asserting a claim under these provisions must show regarding the relationship between the making of a "false record or statement" and the payment or approval of "a false or fraudulent claim    by the Government "

Contrary to the decision of the Court of Appeals below, we hold that HN1⊹ [**LEdHR1] LEdHR(1)⊹[1] it is insufficient for a plaintiff asserting a § 3729(a)(2) claim to show merely that "[t]he false statement's use    result[ed] in obtaining or [**1036] getting payment or approval of the claim," 471 F.3d 610, 622 (CA6 2006) or that "government money was used to pay the false or fraudulent claim," id., at 622 Instead, a plaintiff asserting a § 3729(a)(2) claim must prove that the defendant intended that the false record or statement be material to the Government's decision to pay or approve the false claim Similarly, a plaintiff asserting a claim under § 3729(a)(3) [***7] must show that the conspirators agreed to make use of the false record or statement to achieve this end

I

In 1985, the United States Navy entered into contracts with two shipbuilders, Bath Iron Works and Ingalls Shipbuilding (together the shipyards), to build a new fleet of Arleigh Burke class guided missile destroyers Each destroyer required three generator sets (Gen-Sets) to supply all of the electrical power for the ship The shipyards subcontracted with petitioner Allison Engine Company, -Inc (Allison Engine), formerly a division of General Motors, to build 90 Gen-Sets to be used in over 50 destroyers Allison Engine in turn subcontracted with petitioner General Tool [*2127] Company (GTC) to assemble the Gen-Sets, and GTC subcontracted with petitioner Southern Ohio Fabricators, Inc (SOFCO), to manufacture bases and enclosures for the Gen-Sets The Navy paid the shipyards an aggregate total of $1 billion for each new destroyer Of that, Allison Engine was paid approximately $3 million per Gen-Set, GTC was paid approximately $800,000 per Gen-Set, and SOFCO paid over $100,000 per Gen-Set All of the funds used to pay petitioners ultimately came from the Federal Treasury

The Navy's [***8] contract with the shipyards specified that every part of each destroyer be built in accordance with the Navy's baseline drawings and military standards These requirements were incorporated into each of petitioners' subcontracts In addition, the contracts required that each delivered Gen-Set be accompanied by a certificate of conformance (COC) certifying that the unit was manufactured in accordance with the Navy's requirements

In 1995, Roger L Sanders and Roger L Thacker (hereinafter respondents), former employees of GTC, brought suit in the District Court for the Southern District of Ohio as qui tam relators seeking to recover damages pursuant to § 3729, which renders liable any person who "knowingly presents, or causes to be presented, to an officer or employee of the United States Government    a false or fraudulent claim for payment or approval," § 3729(a)(1), any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government," § 3729(a)(2), and any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid," § 3729(a)(3)

Respondents [***9] alleged that the invoices submitted to the shipyards by Allison Engine, GTC, and SOFCO fraudulently sought payment for work that had not been done in accordance with contract specifications Specifically, respondents claimed that the gearboxes installed by Allison Engine in the first 52 Gen-Sets were defective and leaked oil, that GTC never conducted a required final quality inspection for approximately half of the first 67 Gen-Sets, and that the [**1037] SOFCO welders who worked on the first 67 Gen-Sets did not meet military standards Respondents also claimed that petitioners issued COCs claiming falsely that the Gen-Sets had been built to the contractually required specifications even though petitioners knew that those specifications had not been met

The case was tried to a jury At trial, respondents introduced evidence that petitioners had issued COCs that falsely stated that their work was completed in compliance with the Navy's requirements and that they had presented invoices for payment to the shipyards Respondents did not, however, introduce the invoices submitted by the shipyards to the Navy At the close of respondents' case, petitioners moved for judgment as a matter of law pursuant [***10] to Federal Rule of Civil Procedure 50(a) Petitioners asserted that no reasonable jury could find a violation under § 3729 because respondents had failed to adduce any evidence that a false or fraudulent claim had ever been presented to the Navy The District Court granted petitioners' motion No. 1-,95-cv-970, 2005 U.S. Dist. LEXIS 5612, 2005 WL 713569 (SD Ohio, Mar. 11, 2005) The court rejected respondents' argument that they did not have to present evidence that a claim had been submitted to the Navy because they showed that Government funds had been used to pay the invoices that were presented to the shipyards The District Court concluded that, absent proof that false claims were presented [*2128] to the Government, respondents' evidence was legally insufficient under the FCA 2005 U.S. Dist. LEXIS 5612, [WL] at *10

On appeal, a divided panel of the United States Court of Appeals for the Sixth Circuit reversed the District Court in relevant part 471 F.3d 610 (2006) The majority agreed with the District Court that liability under § 3729(a)(1) requires proof that a false claim was presented to the Government However, the Court of Appeals held that the District Court erred in granting petitioners' motion for judgment as a matter of law with [***11] respect to respondents' §§ 3729(a)(2) and (3) claims The Court of Appeals held that such claims do not require proof of an intent to cause a false claim to be paid by the Government Rather, it determined that proof of an intent to cause a false claim to be paid by a private entity using Government funds was sufficient In so holding, the Court of Appeals recognized that its decision conflicted with United States ex rel. Totten v. Bombardier Corp., 363 U.S. App. D.C. 180, 380 F.3d 488 (CADC 2004) (Totten), cert denied, 544 U.S. 1032, 125 S. Ct. 2257, 161 L. Ed. 2d 1059 (2005)

We granted certiorari to resolve the conflict over the proper interpretation of §§ 3729(a)(2) and (a)(3) 552 U.S.   , 128 S. Ct. 491, 169 L. Ed. 2d 337 (2007)

II

A

We turn first to § 3729(a)(2), and HN2⊹ [**LEdHR2] LEdHR(2)⊹[2] "[w]e start, as always, with the language of the statute " Williams v. Taylor, 529 U.S. 420, 431, 120 S. Ct. 1479, 146 L. Ed. 2d 435 (2000) HN3⊹ [**LEdHR3] LEdHR(3)⊹[3]Section 3729(a)(2) imposes civil liability on any person who "knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government "

The interpretation of § 3729(a)(2) that was adopted by the Court of Appeals--and that is endorsed by the respondents and the

Government **[\*\*1038]** --impermissibly deviates from the statute's language In **[\*\*\*12]** the view of the Court of Appeals, it is sufficient for a § 3729(a)(2) plaintiff to show that a false statement resulted in the use of Government funds to pay a false or fraudulent claim 471 F.3d at 621-622 Under subsection (a)(2), however, the defendant must make the false record or statement "to get" a false or fraudulent claim "paid or approved by the Government " "To get" denotes purpose, and thus a person must have the purpose of getting a false or fraudulent claim "paid or approved by the Government" in order to be liable under § 3729(a)(2) Additionally, getting a false or fraudulent claim "paid   by the Government" is not the same as getting a false or fraudulent claim paid using "government funds " Id., at 622  Under § 3729(a)(2), a defendant must intend that the Government itself pay the claim

Eliminating this element of intent, as the Court of Appeals did, would expand the FCA well beyond its intended role of combating "fraud against the Government " See Rainwater v. United States, 356 U S. 590, 592, 78 S. Ct. 946, 2 L  Ed  2d 996 (1958) (emphasis added)  As the District of Columbia Circuit pointed out, the result of § 3729(a)(2) would then be "almost boundless  for example, liability could attach **[\*\*\*13]** for any false claim made to any college or university, so long as the institution has received some federal grants--as most of them do " Totten, supra, at 496

B

Defending the Court of Appeals' interpretation of § 3729(a)(2), the Government contends that the phrase "paid   by the **[\*2129]** Government" does not mean that the Government must literally pay the bill  The Government maintains that it is customary to say that the Government pays a bill when a person who has received Government funds uses those funds to pay a bill  The Government provides this example  "'[W]hen a student says his college living expenses are "paid by" his parents, he typically does not mean that his parents send checks directly to his creditors  Rather, he means that his parents are the ultimate source of the funds he uses to pay those expenses '" Brief for United States as Amicus Curiae 9 (quoting Totten, supra, at 506 (Garland, J , dissenting))

This example is unpersuasive because it involves a colloquial usage of the phrase "paid by"--a usage that is not customarily employed in more formal contexts  For example, if a federal employee who receives all of his income from the Government were asked in a formal **[\*\*\*14]** inquiry to reveal who paid for, say, his new car or a vacation, the employee would not say that the Federal Government had footed the bill  In statutory drafting, where precision is both important and expected, the sort of colloquial usage on which the Government relies is not customary

The Government is also wrong in arguing that the definition of the term "claim" in § 3729(c) means that § 3729(a)(2)'s use of the phrase "paid by the government" should not be read literally  HN4 **[\*\*LEdHR4]** LEdHR(4) [4] Under this definition, a request for money or property need not be made directly to the Government in order to constitute a "claim " Instead, a "claim" may include a request or demand that is made to "a contractor, grantee, or other recipient if the United States Government provides any portion of the money or property which is requested or demanded, or if the Government will reimburse such contractor, grantee, or other recipient for any portion of **[\*\*1039]** the money or property which is requested or demanded " § 3729(c)  This definition of the word "claim" does not support the Government's argument because it does not alter the meaning of the phrase "by the Government" in § 3729(a)(2)  Under § 3729(c)'s definition of "claim," **[\*\*\*15]** a request or demand may constitute a "claim" even if the request is not made directly to the Government, but under § 3729(a)(2) it is still necessary for the defendant to intend that a claim be "paid by the Government" and not by another entity [1]

**FOOTNOTES**

[1] This interpretation of § 3729(a)(2) does not render superfluous the portion of § 3729(c) providing that a "claim" may be made to a contractor, grantee, or other recipient of Government funding  This language makes it clear that there can be liability under §§ 3729(a)(1) and (2) where the request or demand for money or property that a defendant presents to a federal officer for payment or approval, § 3729(a)(1), or that a defendant intends "to get     paid or approved by the Government", § 3729(a)(2), may be a request or demand that was originally "made to a contractor, grantee, or other recipient of federal funds and then forwarded to the Government

C

This does not mean, however, as petitioners suggest, see Reply Brief 1, that § 3729(a)(2) requires proof that a defendant's false record or statement was submitted to the Government  HN5 **[\*\*LEdHR5]** LEdHR(5) [5] While § 3729(a)(1) requires a plaintiff to prove that the defendant "present[ed] a false or fraudulent **[\*\*\*16]** claim to the Government, the concept of presentment is not mentioned in § 3729(a)(2)  The inclusion of an express presentment requirement in subsection (a)(1), combined with the absence of anything similar in subsection (a)(2), suggests that Congress did not intend to include a presentment requirement in subsection (a) (2)  "[W]hen Congress includes particular language in one section of a statute but **[\*2130]** omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion " Barnhart v. Sigmon Coal Co., 534 U.S. 438, 452, 122 S. Ct. 941, 151 L. Ed  2d 908 (2002) (internal quotation marks omitted)

HN6 **[\*\*LEdHR6]** LEdHR(6) [6] What § 3729(a)(2) demands is not proof that the defendant caused a false record or statement to be presented or submitted to the Government but that the defendant made a false record or statement for the purpose of getting "a false or fraudulent claim paid or approved by the Government " Therefore, a subcontractor violates § 3729(a)(2) if the subcontractor submits a false statement to the prime contractor intending for the statement to be used by the prime contractor to get the Government to pay its claim [2]  If a subcontractor or another defendant **[\*\*\*17]** makes a false statement to a private entity and does not intend the Government to rely on that false statement as a condition of payment, the statement is not made **[\*\*1040]** with the purpose of inducing payment of a false claim "by the Government " In such a situation, the direct link between the false statement and the Government's decision to pay or approve a false claim is too attenuated to establish liability  HN7 **[\*\*LEdHR7]** LEdHR(7) [7] Recognizing a cause of action under the FCA for fraud directed at private entities would threaten to transform the FCA into an all-purpose antifraud statute  Our reading of § 3729(a)(2), based on the language of the statute, gives effect to Congress' efforts to protect the Government from loss due to fraud but also ensures that "a defendant is not answerable for anything beyond the natural, ordinary and reasonable consequences of his conduct " Anza v. Ideal Steel Supply Corp., 547 U.S. 451, 470, 126 S. Ct. 1991, 164 L. Ed. 2d 720 (2006) (internal quotation marks omitted)

**FOOTNOTES**

2 <u>Section 3729(b)</u> provides that the terms "knowing" and "knowingly" "mean that a person, with respect to information--(1) has actual knowledge of the information, (2) acts in deliberate ignorance of the truth or falsity of the information, or (3) acts **[***18]** in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required " The statutory definition of these terms is easily reconcilable with our holding in this case for two reasons  First, the intent requirement we discern in <u>§ 3729(a)(g)</u> derives not from the term "knowingly," but rather from the infinitive phrase "to get " Second, <u>§ 3729 (b)</u> refers to specific intent with regard to the truth or falsity of the "information," while our holding refers to a defendant's purpose in making or using a false record or statement

III

Respondents also brought suit under <u>§ 3729(a)(3)</u>, **HN8** [**LEdHR8]** *IEdHR(8)*[8] which makes liable any person who "conspires to defraud the Government by getting a false or fraudulent claim allowed or paid " Our interpretation of this language is similar to our interpretation of the language of <u>§ 3729(a)(2)</u>  Under <u>§ 3729(a)(3)</u>, it is not enough for a plaintiff to show that the alleged conspirators agreed upon a fraud scheme that had the effect of causing a private entity to make payments using money obtained from the Government  Instead, it must be shown that the conspirators intended "to defraud the Government " Where the conduct that the conspirators **[***19]** are alleged to have agreed upon involved the making of a false record or statement, it must be shown that the conspirators had the purpose of "getting" the false record or statement to bring about the Government's payment of a false or fraudulent claim  It is not necessary to show that the conspirators intended the false record or statement to be presented directly to the Government, but it must be established that they agreed that the false record or statement would have a material effect on the Government's **[*2131]** decision to pay the false or fraudulent claim

This reading of <u>subsection (a)(3)</u> is in accord with our decision in <u>Tanner v. United States</u>, 483 U.S. 107, 107 S. Ct. 2739, 97 L. Ed. 2d 90 (1987), where we held that a conspiracy to defraud a federally funded private entity does not constitute a "conspiracy to defraud the United States" under <u>18 U.S.C. § 371</u>  <u>Id., at 129, 107 S. Ct. 2739, 97 L. Ed. 2d 90</u>  In *Tanner*, the Government argued that a recipient of federal financial assistance and the subject of federal supervision may itself be treated as "the United States " We rejected this reading of <u>§ 371</u> as having "not even an arguable basis in the plain language of <u>§ 371</u> " <u>Id., at 131, 107 S. Ct. 2739, 97 L. Ed. 2d 90</u>  Indeed, we concluded that such an interpretation "would have, in **[***20]** effect, substituted 'anyone receiving federal financial assistance and supervision' for the phrase 'the United States '" <u>Id., at 132, 107 S. Ct. 2739, 97 L. Ed. 2d 90</u>  Likewise, the interpretation urged on us by respondents would in effect substitute "paid or approved by the Government" for the phrase "paid by Government funds " Had Congress intended <u>subsection (a)(3)</u> to apply to anyone who conspired to defraud a recipient of Government funds, it would have so provided

* * *

Because the decision of the Court of Appeals was based on an incorrect **[**1041]** interpretation of <u>§§ 3729(a)(2)</u> and <u>(3)</u>, we vacate its judgment and remand the case for further proceedings consistent with this opinion

It is so ordered

**REFERENCES**

<u>31 U.S.C.S. § 3729</u>

2 Federal Contract Management P <u>13.08</u> (Matthew Bender)

3 Federal Contract Management P <u>18.18</u> (Matthew Bender)

2 Government Contracts  Law, Administration & Procedures <u>§§ 14.30</u>, <u>14.70</u> (Matthew Bender)

2 <u>Moore's Federal Practice</u> § <u>9.03</u> (Matthew Bender 3d ed )

L Ed Digest, Claims § 101, Conspiracy § 10

L Ed Index, False Claims Act

What is a "claim" against the United States within meaning of Federal False Claims Act (<u>31 U.S.C.S. § 231</u> [predecessor of <u>31 U.S.C.S. § 3729</u>]) <u>19 L. Ed. 2d 1558</u>

Source  Legal > /    / > U S Supreme Court Cases, Lawyers' Edition [i]
Terms  name(sanders and allison engine)  (Edit Search | Suggest Terms for My Search)
View  Full
Date/Time  Thursday  November 12, 2009 - 12 13 PM EST

* Signal Legend
● - Warning  Negative treatment is indicated
[Q] - Questioned  Validity questioned by citing refs
⚠ - Caution  Possible negative treatment
◆ - Positive treatment is indicated
A - Citing Refs  With Analysis Available
❶ - Citation information available
* Click on any Shepard's signal to Shepardize® that case

<u>My Lexis™</u> | Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Transactional Advisor | Counsel Selector
History | Delivery Manager | Dossier | Switch Client | Preferences | Sign Out | Help

https //www lexis com/research/retrieve?cc=&pushme=1&tmpFBSel=all&totaldocs=&ta    11/12/2009

LexisNexis®  About LexisNexis | Terms & Conditions | Contact Us
Copyright © 2009 LexisNexis, a division of Reed Elsevier Inc  All rights reserved

