PRESENTMENT DATE AND TIME: January 30, 2014 at 12:00 noon (Eastern Time)
OBJECTION DEADLINE: January 28, 2014 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Motors Liquidation*
  *Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                              :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

## NOTICE OF PRESENTMENT OF
## PROPOSED ORDER AUTHORIZING THE GARDEN CITY
## GROUP, INC. AS CLAIMS AGENT, TO ADJUST THE CLAIMS
## REGISTER TO REFLECT THE DISALLOWANCE OF CLAIM NO. 38932
## FILED BY NORTH SHORE, INC. D/B/A MULLER PONTIAC/GMC MAZDA
## AND CLAIM NO. 66308 FILED BY JOE MITCHELL BUICK/GMC TRUCK, INC.

**PLEASE TAKE NOTICE** that the annexed motion (the "**Motion**"), dated

January 16, 2014, of the Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed

by the above-captioned debtors (the "**Debtors**") in connection with the *Debtors' Second*

*Amended Joint Chapter 11 Plan*, dated March 18, 2011 (the "**Plan**"), for an order authorizing

The Garden City Group, Inc. in its capacity as the claims agent to adjust the claims register to

reflect the disallowance of (i) Claim No. 38932, filed by North Shore, Inc. d/b/a Muller

Pontiac/GMC Mazda, and (ii) Claim No. 66308, filed by Joe Mitchell Buick/GMC Truck, Inc,

all as more fully set forth in the Motion, will be presented to the Honorable Robert E. Gerber, United States Bankruptcy Judge, in Room 523 of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, on **January 30, 2014 at 12:00 noon (Eastern Time)**.

    **PLEASE TAKE FURTHER NOTICE** that any objections to the Motion must be in writing, shall conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, and shall be filed with the Bankruptcy Court (a) electronically in accordance with General Order M-399 (which can be found at www.nysb.uscourts.gov) by registered users of the Bankruptcy Court's filing system, and (b) by all other parties in interest, on a CD-ROM or 3.5 inch disk, in text-searchable portable document format (PDF) (with a hard copy delivered directly to Chambers), in accordance with the customary practices of the Bankruptcy Court and General Order M-399, to the extent applicable, and served in accordance with General Order M-399 and on (i) Weil, Gotshal & Manges LLP, attorneys for the Motors Liquidation Company GUC Trust, 767 Fifth Avenue, New York, New York 10153 (Attn: Harvey R. Miller, Esq., Stephen Karotkin, Esq., and Joseph H. Smolinsky, Esq.); (ii) the Debtors, c/o AlixPartners, 2101 Cedar Springs Road, Suite 1100, Dallas, Texas 75201 (Attn: Barry Folse); (iii) General Motors LLC, 400 Renaissance Center, Detroit, Michigan 48265 (Attn: Lawrence S. Buonomo, Esq.); (iv) Paul, Weiss, Rifkind, Wharton & Garrison LLP, attorneys for the United States Department of the Treasury, One World Financial Center, 1285 Avenue of the Americas, New York, New York 10019 (Attn: Douglas R. Davis, Esq.); (v) the United States Department of the Treasury, 1500 Pennsylvania Avenue NW, Room 2312, Washington, D.C. 20220 (Attn: Joseph Samarias, Esq.); (vi) Vedder Price, P.C., attorneys for Export Development Canada, 1633 Broadway, 47th Floor, New York, New York 10019 (Attn: Michael J. Edelman,

Esq. and Michael L. Schein, Esq.); (vii) Kramer Levin Naftalis & Frankel LLP, attorneys for the

statutory committee of unsecured creditors, 1177 Avenue of the Americas, New York, New York

10036 (Attn:  Thomas Moers Mayer, Esq., Robert Schmidt, Esq., Lauren Macksoud, Esq., and

Jennifer Sharret, Esq.); (viii) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Tracy Hope

Davis, Esq.); (ix) the U.S. Attorney's Office, S.D.N.Y., 86 Chambers Street, Third Floor, New

York, New York 10007 (Attn: David S. Jones, Esq. and Natalie Kuehler, Esq.); (x) Caplin &

Drysdale, Chartered, attorneys for the official committee of unsecured creditors holding

asbestos-related claims, 375 Park Avenue, 35th Floor, New York, New York 10152-3500 (Attn:

Elihu Inselbuch, Esq. and Rita C. Tobin, Esq.) and One Thomas Circle, N.W., Suite 1100,

Washington, DC 20005 (Attn:  Trevor W. Swett III, Esq. and Kevin C. Maclay, Esq.); (xi)

Stutzman, Bromberg, Esserman & Plifka, A Professional Corporation, attorneys for Dean M.

Trafelet in his capacity as the legal representative for future asbestos personal injury claimants,

2323 Bryan Street, Suite 2200, Dallas, Texas 75201 (Attn:  Sander L. Esserman, Esq. and Robert

T. Brousseau, Esq.); (xii) Gibson, Dunn & Crutcher LLP, attorneys for Wilmington Trust

Company as GUC Trust Administrator and for Wilmington Trust Company as Avoidance Action

Trust Administrator, 200 Park Avenue, 47th Floor, New York, New York 10166 (Attn:  Keith

Martorana, Esq.); (xiii) FTI Consulting, as the GUC Trust Monitor and as the Avoidance Action

Trust Monitor, 3 Times Square, New York, New York 10036 (Attn:  Conor Tully); (xiv) Crowell

& Moring LLP, attorneys for the Revitalizing Auto Communities Environmental Response

Trust, 590 Madison Avenue, 19th Floor, New York, New York 10022-2524 (Attn:  Michael V.

Blumenthal, Esq.); and (xv) Kirk P. Watson, Esq., as the Asbestos Trust Administrator, 2301

Woodlawn Boulevard, Austin, Texas 78703, so as to be received no later than **January 28, 2014**

3

**at 4:00 p.m. (Eastern Time)** (the "**Response Deadline**").

**PLEASE TAKE FURTHER NOTICE** that if no objections are timely filed and

served with respect to the Motion, the GUC Trust may, on or after the Response Deadline,

submit to the Bankruptcy Court an order substantially in the form of the proposed order annexed

to the Motion, which order may be entered with no further notice or opportunity to be heard

offered to any party.

Dated: New York, New York
        January 16, 2014

                                    */s/ Joseph H. Smolinsky*
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky

                                    **WEIL, GOTSHAL & MANGES LLP**
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    *Attorneys for Motors Liquidation*
                                        *Company GUC Trust*

PRESENTMENT DATE AND TIME:  January 30, 2014 at 12:00 noon (Eastern Time)
OBJECTION DEADLINE:  January 28, 2014 at 4:00 p.m. (Eastern Time)

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
**WEIL, GOTSHAL & MANGES LLP**
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

*Attorneys for Motors Liquidation
    Company GUC Trust*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
                                             :

| | | |
|---|---|---|
| **In re** | : | **Chapter 11 Case No.** |
| | : | |
| **MOTORS LIQUIDATION COMPANY,** *et al.,* | : | **09-50026 (REG)** |
| **f/k/a General Motors Corp.,** *et al.* | : | |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

---------------------------------------------------------------x

**MOTION OF MOTORS LIQUIDATING COMPANY GUC
TRUST FOR ENTRY OFAN ORDER AUTHORIZING THE GARDEN
CITY GROUP, INC. AS CLAIMS AGENT, TO ADJUST THE CLAIMS
REGISTER TO REFLECT THE DISALLOWANCE OF CLAIM NO. 38932
FILED BY NORTH SHORE, INC. D/B/A MULLER PONTIAC/GMC MAZDA
AND CLAIM NO. 66308 FILED BY JOE MITCHELL BUICK/GMC TRUCK, INC.**

TO THE HONORABLE ROBERT E. GERBER,
UNITED STATES BANKRUPTCY JUDGE:

        The Motors Liquidation Company GUC Trust (the "**GUC Trust**"), formed by the

above-captioned debtors (the "**Debtors**") in connection with the *Debtors' Second Amended Joint*

*Chapter 11 Plan*, dated March 18, 2011 (as may be amended, supplemented, or modified from time

to time, the "**Plan**"), respectfully represents:

## Relief Requested

1.    The GUC Trust requests the entry of an order, substantially in the form annexed hereto as **Exhibit "A,"** authorizing The Garden City Group, Inc. in its capacity as the claims agent in these chapter 11 cases (the "**Claims Agent**") to adjust the claims register to reflect the disallowance of (i) Claim No. 38932 (the "**North Shore Claim**"), filed by North Shore, Inc. d/b/a Muller Pontiac/GMC Mazda (the "**North Shore Dealership**"), and (ii) Claim No. 66308 (the "**Joe Mitchell Claim**," and together with the North Shore Claim, the "**Claims**"), filed by Joe Mitchell Buick/GMC Truck, Inc. (the "**Joe Mitchell Dealership**," and together with the North Shore Dealership, the "**Claimants**").

2.    The GUC Trust and the Claimants previously entered into a stipulation and agreed order to lift the Automatic Stay and Plan Injunction (each as hereinafter defined) to allow the liquidation of the Claims in the non-bankruptcy court where litigation relating to the Claims was pending prior to the onset of the Automatic Stay.  Now that the Claims have been liquidated in the amount of zero by the Illinois State Courts (as hereinafter defined), the Claims Agent should be authorized to adjust the claims register to reflect the disallowance of the Claims.  If the relief requested in this Motion is granted, the Claimants will no longer have the right to seek recoveries from the GUC Trust.

## Jurisdiction

3.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

## Background

### A.    The Prepetition Action

4.    On March 14, 2008, in an action styled *North Shore, Inc. v. General Motors Corp.*, No. MVRB 79-01, the Motor Vehicle Review Board for the State of Illinois (the "**Review**

2

**Board**") issued a final order (the "**Final Order**")[1] directing Motors Liquidation Company

("**MLC**") (f/k/a General Motors Corporation) to, pursuant to section 13 of the Illinois Motors

Vehicles Franchise Act,[2] reimburse the Claimants for certain attorneys' fees and costs that the

Claimants incurred while successfully opposing MLC's efforts to add a new automobile dealership

within the Claimants' geographic vicinity.  At the time, both of the Claimants were automobile

dealerships that sold vehicles manufactured by MLC.

      5.      On October 28, 2008, the Circuit Court of the Seventh Judicial Circuit in

Sangamon County, Illinois (the "**Illinois Circuit Court**"), issued an order[3] upholding the Review

Board's Final Order with respect to the award of attorneys' fees and costs.

      6.      On November 21, 2008, the Illinois Circuit Court entered an agreed Order

(the "**Prepetition Agreed Order**")[4] upon the consent of MLC and the Claimants in which the

Illinois Circuit Court awarded Claimants additional attorneys' fees and costs (collectively, including

the amounts awarded in the Final Order, the "**Judgment**") and stayed execution of the Judgment

until MLC's appeal (the "**Appeal**") of the Judgment was resolved.

    **B.**    **The Debtors' Chapter 11 Cases**

      7.      On June 1, 2009 (the "**Commencement Date**"), while the Appeal of the

Judgment was pending in the Fourth District Court of Appeals of Illinois (the "**Illinois Appellate**

**Court,**" and together with the Review Board, the Illinois Circuit Court and the Illinois Supreme

Court, the "**Illinois State Courts**"), the Debtors commenced their voluntary cases under chapter 11

---

[1] The Final Order is annexed hereto as **Exhibit "B."**

[2] 815 ILCS 710/13.

[3] The order by the Illinois Circuit Court is annexed hereto as **Exhibit "C."**

[4] The Prepetition Agreed Order is annexed hereto as **Exhibit "D."**

of title 11 of the United States Code (the "**Bankruptcy Code**"), thereby causing the Appeal to be stayed pursuant to section 362 of the Bankruptcy Code (the "**Automatic Stay**").

8.    On November 23, 2009 and November 30, 2009, the North Shore Dealership and the Joe Mitchell Dealership respectively filed the North Shore Claim and the Joe Mitchell Claim in these chapter 11 cases on account of the Judgment.

9.    On March 29, 2011, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan* (the "**Confirmation Order**"), which, among other things, (i) confirmed the Plan; (ii) authorized the GUC Trust to resolve certain claims against the Debtors; and (iii) enjoined all persons from commencing or continuing in any manner on account of or respecting any claim, debt, right, or cause of action for which the Debtors, the GUC Trust Administrator, or the Avoidance Action Trust Administrator (as defined in the Plan) retains sole and exclusive authority to pursue in accordance with the Plan (the "**Plan Injunction**").

10.    The Plan also provides that the Automatic Stay in the Debtors' chapter 11 cases shall remain in full force and effect until the closing of the chapter 11 cases.

### C.    The Continuation of the Appeals in the Illinois State Courts

11.    On September 27, 2012, this Court entered the *Stipulation and Agreed Order Resolving Claims No. 38932, 66308, 66309, 66310,* between the Motors Liquidation Company GUC Trust and Grossinger Autoplex, Inc.; Castle Buick-Pontiac-GMC, Inc.; North Shore, Inc. d/b/a Muller Pontiac/GMC Mazda; and Joe Mitchell Buick/GMC Truck, Inc. (ECF No. 12109) (the

4

"**Stipulation and Agreed Order**"),[5] which, among other things, lifted the Automatic Stay and the Plan Injunction to permit the Appeal in the Illinois State Courts to resume.

12.    On June 26, 2013, the Illinois Appellate Court entered an order (the "**Appellate Order**")[6] reversing the Review Board's grant of attorneys' fees and costs against MLC, which had the effect of liquidating the Claims in the amount of zero.

13.    On November 27, 2013, the Supreme Court of Illinois, the highest court in the state, denied the Claimants' petition for leave to appeal.[7]

## The Relief Requested Should Be Approved by the Court

14.    Section 502(b)(1) of the Bankruptcy Code provides that a claim cannot be allowed to the extent it is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured."

15.    In this instance, the parties consensually agreed pursuant to the Stipulation and Agreed Order for the Automatic Stay to be lifted to permit the continuation of the Appeals so that the Claims could be liquidated.  Pursuant to the Appeals, the Illinois State Courts have determined that the Claimants are not entitled to any amount under the applicable state law.  As such, the Illinois State Courts have liquidated the Claims at zero.

16.    Accordingly, the Claims Agent for these cases should be authorized to modify the claims register to reflect the disallowance and expungment of the Claims.

---

[5] The Stipulation and Agreed Order is annexed hereto as **Exhibit "E."**  The Stipulation and Agreed Order also concerned two other claimants, Grossinger Autoplex, Inc.; Castle Buick-Pontiac-GMC, Inc., whose claims have been resolved and are not at issue in this Motion.

[6] The Appellate Order is annexed hereto as **Exhibit "F."**

[7] The Supreme Court of Illinois' denial of the Claimants' petition for leave to appeal is annexed hereto as **Exhibit "G."**

5

**Reservation of Rights**

17.    In the event that the relief requested herein is not granted, the GUC Trust

reserves the right to object to the Claims on any basis.

**Notice**

18.    Notice of this Motion has been provided in accordance with the *Sixth

Amended Order Pursuant to 11 U.S.C. § 105(a) and Fed. R. Bankr. P. 1015(c) and 9007

Establishing Notice and Case Management Procedures*, dated May 5, 2011 (ECF No. 10183).  The

GUC Trust submits that such notice is sufficient and no other or further notice need be provided.

19.    No previous request for the relief sought herein has been made by the GUC

Trust to this or any other Court.

**Conclusion**

WHEREFORE the GUC Trust respectfully requests entry of an order granting the

relief requested herein and such other and further relief as is just.

Dated: New York, New York
       January 16, 2014

                                    */s/ Joseph H. Smolinsky*
                                    Harvey R. Miller
                                    Stephen Karotkin
                                    Joseph H. Smolinsky

                                    **WEIL, GOTSHAL & MANGES LLP**
                                    767 Fifth Avenue
                                    New York, New York 10153
                                    Telephone: (212) 310-8000
                                    Facsimile: (212) 310-8007

                                    *Attorneys for Motors Liquidation
                                        Company GUC Trust*

6

# EXHIBIT A

# Proposed Order

US_ACTIVE:\44315146\1\72240.0639

PRESENTMENT DATE AND TIME: January 30, 2014 at 12:00 noon (Eastern Time)
OBJECTION DEADLINE: January 28, 2014 at 4:00 p.m. (Eastern Time)

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                          :
In re                                     :       Chapter 11 Case No.
                                          :
MOTORS LIQUIDATION COMPANY, *et al.*,     :       09-50026 (REG)
     f/k/a General Motors Corp., *et al.* :
                                          :
                    Debtors.              :       (Jointly Administered)
                                          :
-------------------------------------------------------------x

## ORDER AUTHORIZING THE GARDEN CITY GROUP, INC. AS CLAIMS AGENT, TO ADJUST THE CLAIMS REGISTER TO REFLECT THE DISALLOWANCE OF CLAIM NO. 38932 FILED BY NORTH SHORE, INC. D/B/A MULLER PONTIAC/GMC MAZDA AND CLAIM NO. 66308 FILED BY JOE MITCHELL BUICK/GMC TRUCK, INC.

Upon the Motion,[1] dated January __, 2014, of the Motors Liquidation Company

GUC Trust (the "**GUC Trust**"), formed by the above-captioned debtors (the "**Debtors**") in

connection with the *Debtors' Second Amended Joint Chapter 11 Plan*, dated March 18, 2011 (as

may be amended, supplemented, or modified from time to time, the "**Plan**"), seeking the entry of an

Order authorizing The Garden City Group, Inc. in its capacity as the claims agent in these chapter

11 cases (the "**Claims Agent**") to adjust the claims register to reflect the disallowance of the

Claims, all as more fully described in the Motion; and due and proper notice of the Motion having

been provided, and it appearing that no other or further notice need be provided; and the Court

having found and determined that the relief sought in the Motion is in the best interests of the

Debtors, their estates, creditors, and all parties in interest and that the legal and factual bases set

---

[1]  Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

forth in the Motion establish just cause for the relief granted herein; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is granted to the extent provided

herein; and it is further

ORDERED that the Claims Agent is authorized to adjust the claims register to reflect

the disallowance of (i) Claim No. 38932, filed by North Shore, Inc. d/b/a Muller Pontiac/GMC

Mazda, and (ii) Claim No. 66308, filed by Joe Mitchell Buick/GMC Truck, Inc.; and it is further

ORDERED that this Court shall retain jurisdiction to hear and determine all matters

arising from or related to this Order.

Dated: New York, New York
_____, 2014


_____
United States Bankruptcy Judge

US_ACTIVE:\44315146\1\72240.0639

# EXHIBIT B

**Final Order by the Illinois Motor Vehicle Review Board**

## STATE OF ILLINOIS
## MOTOR VEHICLE REVIEW BOARD

North Shore, Inc  d/b/a Muller                     MVRB FILE NO:
Pontiac/GMC Mazda, Grossinger                           79-01
Autoplex, Inc , Joe Mitchell                            80-01
                                                        81-01
Buick/GMC Truck, Inc ; Castle                           82-01
Buick-Pontiac-GMC, Inc.,                                83-01
                                                        84-01
        Complainants                                    85-01

vs

General Motors Corporation,

        Respondent

### FINAL ORDER

WHEREAS, this matter was remanded back to the Motor Vehicle
Review Board by the Appellate Court, Fourth District, to
determine the award of attorneys fees and costs; and,

WHEREAS, upon a hearing on said award of attorneys fees and
costs, the hearing officer submitted a Proposed Decision; and,

WHEREAS, the Board, having reviewed said Proposed Decision,
adopts the Hearing Officer's Proposed Decision, which is
incorporated herein;

NOW THEREFORE IT IS HEREBY ORDERED:  That the respondent, General
Motors Corporation is to pay attorney's fees and costs in the
amount of $1,033,607.08, to be distributed as set forth in the
enclosed Proposed Decision  That the respondent, General Motors
Corporation is to pay Motor Vehicle Review Board fees and costs
incurred during this determination, in the amount of $8805.05

        This is a final Order subject to the Administrative Review
Law

ENTERED: This __14th__ day of ___March___. A D . 2008

                    _Terrence M. O'Brien_
                    Terrence O'Brien, Chairperson
                    ILLINOIS MOTOR VEHICLE REVIEW BOARD

# **EXHIBIT C**

## **Order by the Illinois Circuit Court**

<table>
<tr><td>

**NOTICE**
This order was filed under Supreme
Court Rule 23 and may not be cited as
precedent by any party except in the
limited circumstances allowed under
Rule 23(e)(1).

</td><td>

2013 IL App (4th) 080893-U

NO. 4-08-0893

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

</td><td>

FILED
June 26, 2013
Carla Bender
4th District Appellate
Court, IL

</td></tr>
</table>

| | |
|---|---|
| GENERAL MOTORS CORPORATION, | ) Appeal from |
|     Plaintiff-Appellant, | ) Circuit Court of |
|     v. | ) Sangamon County |
| THE STATE OF ILLINOIS MOTOR VEHICLE | ) No. 08MR240 |
| REVIEW BOARD; TERRENCE M. O'BRIEN; NORTH | ) |
| SHORE, INC., d/b/a MULLER PONTIAC/GMC | ) |
| MAZDA; and JOE MITCHELL BUICK/GMC TRUCK, | ) |
| INC., | ) |
|     Defendants-Appellees, | ) |
|     and | ) |
| LOREN BUICK, INC.; GROSSINGER AUTOPLEX, | ) Honorable |
| INC.; and CASTLE BUICK-PONTIAC, INC., | ) C. Joseph Cavanagh, |
|     Defendants. | ) Judge Presiding. |

_____

PRESIDING JUSTICE STEIGMANN delivered the judgment of the court.
Justices Knecht and Holder White concurred in the judgment.

## ORDER

¶ 1    *Held*:    The appellate court reversed the State of Illinois Motor Vehicle Review Board's
grant of attorney fees in defendants' favor, agreeing with the plaintiff that section
13 of the Motor Vehicle Franchise Act requires a finding of misconduct before
attorney fees can be awarded.

¶ 2    In February 2001, plaintiff, General Motors Corporation (GMC), sought to add a

new franchise to two existing Illinois automobile dealerships, specifically, an additional franchise

at Jacobs Twin Buick (Jacobs) in Chicago and another franchise at defendant Loren Buick

(Loren) in Glenview.  In pursuit of that goal, GMC informed defendants North Shore, Inc., d/b/a

Muller Pontiac/GMC Mazda (Muller); Grossinger Autoplex, Inc. (Grossinger); Joe Mitchell

Buick/GMC Truck, Inc. (Mitchell); and Castle Buick-Pontiac, Inc. (Castle), of its intent as required by the Motor Vehicle Franchise Act (Franchise Act) (815 ILCS 710/1 to 32 (West 2000)).

¶ 3        In response, the four dealerships timely filed their objection to GMC's plan as permitted by the Franchise Act. Following an administrative hearing, defendant, the State of Illinois Motor Vehicle Review Board (Board), prohibited the establishment of the new franchises because GMC failed to meet its burden of showing that good cause existed to allow the expansions. The Board also determined that because the dealerships had "substantially prevailed," they were entitled to attorney fees under section 13 of the Franchise Act (815 ILCS 710/13 (West 2002)), which would be determined at a later hearing. On administrative review, the circuit court confirmed the Board's decision.

¶ 4        On appeal to this court, we declined to address the parties' arguments regarding attorney fees, concluding that the issue was not yet ripe for our review because the Board had yet to determine the amount. *General Motors Corp. v. The Motor Vehicle Review Board*, 361 Ill. App. 3d 271, 291, 836 N.E.2d 903, 920 (2005) (*GMC I*). In so concluding, we (1) vacated the circuit court's confirmation of the Board's attorney-fee decision, (2) affirmed the court's confirmation of the Board's remaining decisions, and (3) remanded the cause to the Board with directions to address the attorney-fee issue. *Id*. The Supreme Court of Illinois later affirmed this court's decision. *General Motors Corp. v. The State of Illinois Motor Vehicle Review Board*, 224 Ill. 2d 1, 32, 862 N.E.2d 209, 229 (2007) (*GMC II*).

¶ 5        In March 2007, the prevailing dealerships filed a motion for attorney fees, expert fees, and costs, which was subsequently amended, seeking total reimbursement of approximately

- 2 -

$1,033,607 from GMC.  In March 2008, the Board granted the dealerships' motion and awarded

them $1,033,607 in attorney fees.  On administrative review, the circuit court confirmed the

Board's decision.

¶ 6          GMC appeals, arguing that (1) the dealerships waived their respective request for

additional attorney fees by failing to comply with the 10-day filing deadline imposed by section

1001.770(e)(3)(A) of title 92 of the Illinois Administrative Code (Administrative Code) (92 Ill.

Adm. Code 1001.770(e)(3)(A) (1999)); (2) the Board erred by awarding attorney fees because the

dealerships failed to show GMC engaged in wrongful conduct as required by section 13 of the

Franchise Act; (3) as applied in this case, section 13 of the Franchise Act violates due-process,

equal protection, and the prohibition against special legislation; and (4) even if the dealerships

were entitled to fees for the circuit court proceedings, they were not entitled to attorney fees and

costs associated with their respective appeals.

¶ 7          We disagree that the dealerships waived their request for additional attorney fees.

However, because we agree that section 13 of the Franchise Act requires a finding of "an unfair

or deceptive act or practice declared unlawful" before the Board can award attorney fees, we

reverse.

¶ 8                              I. BACKGROUND

¶ 9                              A. Preliminary Matter

¶ 10          As a threshold matter, we note that, in its brief to this court, GMC contested the

Board's award of $1,033,607 in attorney fees, which was to be distributed among the four

dealerships as follows:  $321,782 to Muller; $230,124 to Mitchell; $242,817 to Grossinger; and

$238,884 to Castle.  However, on the eve of oral arguments in this case, GMC informed this

- 3 -

court that it had reached a settlement with Grossinger and Castle. As a result, the only issues

presented to this court during oral arguments concerned GMC's aforementioned claims, attacking

the Board's award of attorney fees in favor of Muller and Mitchell, which totaled $551,906.

Accordingly, we limit the following discussion and our conclusion to the Board's award of

$551,906 in attorney fees to Muller and Mitchell (hereinafter, the protesting dealerships).

¶ 11                      B. The Circumstances That Prompted This Appeal

¶ 12          In February 2001, GMC sought to add a new franchise to two existing Illinois

automobile dealerships, specifically, a GMC franchise at Jacobs in Chicago, a Buick dealership,

and a second GMC franchise at Loren in Glenview, another Buick dealership. In pursuit of that

goal, GMC informed existing dealerships located within a 10-mile radius of the proposed

expansions of its intent pursuant to section 4(e)(8) of the Franchise Act (815 ILCS 710/4(e)(8)

(West 2000)). That section of the Franchise Act also permits an affected dealership to file a

protest when, as in this case, a manufacturer attempts to establish a new franchise within the

existing dealer's "relevant market area." *Id.* See also 815 ILCS 710/2(q) (West 2000)

(" 'Relevant Market Area' [is] the area within a radius of 10 miles from the principal location of a

franchise or dealership."). Pursuant to that provision, the protesting dealerships timely filed their

objections to GMC's planned expansion at Loren.

¶ 13          During 19 days of hearings conducted from May to December 2002, the parties

presented evidence to an administrative hearing officer in support of their respective positions.

In May 2003, the hearing officer recommended that the Board grant the protests because GMC

had failed to show "good cause" existed to establish the new franchises as required by section

4(e)(8) of the Franchise Act (815 ILCS 710/4(e)(8) (West 2000)). See 815 ILCS 710/12(c)

- 4 -

(West 2000) (outlining 11 factors that must be considered to determine whether a manufacturer

has met its good-faith burden).

¶ 14        On September 3, 2003, the Board issued a "final order" that (1) accepted the

hearing officer's recommendations; (2) ordered GMC to pay $58,673 for Board expenses; and (3)

determined that because the protesting dealerships had "substantially prevailed," they were

entitled to attorney fees under section 13 of the Franchise Act (815 ILCS 710/13 (West 2002)).

The Board's final order was served upon the protesting dealerships by mail.  On September 15,

2003, the protesting dealerships timely filed their respective claims for attorney fees.

¶ 15        In October 2003, GMC filed a complaint for administrative review under section

31 of the Franchise Act, which permits "[a]ny person affected by a final administrative decision

of the Board" to seek judicial review of that determination (815 ILCS 710/31 (West 2002)).  In

November 2003, the Board stayed proceedings on the attorney-fee issue, pending resolution of

GMC's appeal.  Prior to the June 2004 hearing on GMC's complaint, the circuit court granted

Loren's motion for leave to file its appearance *instanter* and to adopt GMC's arguments.  In July

2004, the court confirmed the Board's decision.

¶ 16        GMC and Loren timely appealed to this court pursuant to the Administrative

Review Law (735 ILCS 5/3-101 to 113 (West 2004)), challenging the Board's decision to grant

the dealers' protest.  Specifically, GMC contested (1) the standard applied, (2) the sufficiency of

the evidence, (3) the validity and constitutionality of the Franchise Act, and (4) the award of

attorney fees. *GMC I*, 361 Ill. App. 3d at 274-75, 836 N.E.2d at 907-08.  A divided panel of this

court concluded, in part, that with regard to attorney fees, that issue was not ripe for our review

because the Board had yet to determine the amount. *GMC I*, 361 Ill. App. 3d at 289-91, 836

- 5 -

N.E.2d at 919-20.   In so concluding, we vacated the circuit court's judgment confirming that

award and remanded with directions that the Board address the attorney-fee issue. *GMC I*, 361

Ill. App. 3d at 291, 836 N.E.2d at 920.  In all other respects, we affirmed the court's ruling, which

confirmed the Board's remaining determinations.  *Id.*

¶ 17        Justice Cook dissented, disagreeing, in part, with the Board's decision to award

the protesting dealerships attorney fees because the Board did not make a finding that GMC

engaged in "an unfair method of competition or an unfair or deceptive act or practice declared

unlawful by [section 13 of the Franchise] Act." (Internal quotation marks omitted.) *GMC I*, 361

Ill. App. 3d at 297, 836 N.E.2d at 925 (Cook, J., dissenting); 815 ILCS 710/13 (West 2004).

¶ 18        GMC and Loren later successfully petitioned the Illinois Supreme Court for leave

to appeal.  On January 8, 2007, the supreme court affirmed this court's judgment. *GMC II*, 224

Ill. 2d at 32, 862 N.E.2d at 229.  On February 1, 2007, the Board sent the parties a letter (1)

enclosing the Board's September 2003 final order; (2) alerting the parties to the supreme court's

January 2007 opinion, which it appended to the letter; and (3) requesting that GMC pay

$58,673—the amount the Board had previously levied against GMC for its expenses.

¶ 19                            C. The Attorney Fees at Issue

¶ 20        On March 28, 2007, the protesting dealerships filed a "motion for attorneys' fees,

expert fees[,] and costs," requesting the assignment of a hearing officer to consider their claim.

Following amendments to their motion, the protesting dealerships sought a total reimbursement

of approximately $551,906 ($321,782 to Muller and $230,124 to Mitchell). (As previously

noted, the Board awarded $1,033,607 in attorney fees; however, only $551,906—the portion

awarded to Mueller and Mitchell—is before us on appeal.) At an August 2007 hearing on that

- 6 -

motion, the hearing officer considered the following arguments: (1) the protesting dealerships
waived their request for additional attorney fees by failing to comply with the 10-day filing
deadline imposed by section 1001.770(e)(3)(A) of title 92 of the Administrative Code; (2) the
Board erred by awarding attorney fees because the protesting dealerships failed to show GMC
engaged in wrongful conduct as required by section 13 of the Franchise Act; (3) section 13 of the
Franchise Act, which authorized the attorney fees, is unconstitutional; (4) even if the protesting
dealerships were entitled to fees for the circuit court proceedings, they were not entitled to
attorney fees and costs associated with their respective appeals; and (5) the amount of attorney
fees requested was unreasonable.

¶ 21       In December 2007, the hearing officer issued a "proposed decision" to the Board,
finding as follows: (1) GMC's attorney-fee-waiver claim was without merit, given that the Board
stayed the attorney-fee issue pending resolution of GMC's appeals and the protesting dealerships
initially complied with the attorney-fee filing requirement, which the parties did not dispute; (2)
GMC's argument regarding whether section 13 of the Franchise Act requires a finding of
"wrongful conduct" to award attorney fees must be considered in another forum because the
hearing officer's discretion was limited to determining only the amount of the attorney-fee award;
(3) the Board lacked jurisdiction to address constitutional arguments; (4) the fees incurred by the
protesting dealerships were not avoidable and, thus, any award of attorney fees should include
fees incurred as a result of later appeals; and (5) the amount of attorney fees requested was not
unreasonable, given the complex nature of the litigation. The hearing officer recommended, in
pertinent part, that the Board award the protesting dealerships $551,906 in attorney fees.

¶ 22       In March 2008, the Board entered a final order, adopting the hearing officer's

- 7 -

December 2007 proposed decision. In so doing, the Board ordered GMC to pay $551,906 to the

protesting dealerships. Thereafter, GMC and Loren filed a complaint for administrative review

pursuant to section 31 of the Franchise Act, seeking judicial review of the Board's attorney-fee

determination. In October 2008, the circuit court confirmed the Board's decision.

¶ 23        This appeal followed.

¶ 24                II. THE BOARD'S AWARD OF ATTORNEY FEES

¶ 25                A. GMC's Attorney-Fee Waiver Claim

¶ 26        We first address GMC's argument that the protesting dealerships waived their

request for additional attorney fees by failing to comply with the 10-day filing constraints

mandated by section 1001.770(e)(3)(A) of title 92 of the Administrative Code because if we

agree, we need not address GMC's remaining arguments. In this regard, GMC contends that

although the protesting dealerships timely filed their initial petitions for attorney fees when the

Board issued its September 2003 final order, the protesting dealerships failed to file claims for

additional attorney fees when the Board "reserved" them with their second final order on

February 1, 2007. For the reasons that follow, we disagree.

¶ 27                1. *The Standard of Review*

¶ 28        "Appellate review of the decision of an administrative agency is of the agency's

decision and not the decision of the circuit court." *Summers v. Retirement Board of Policemen's*

*Annuity & Benefit Fund of Chicago*, 2013 IL App (1st) 121345, ¶ 15. When reviewing adminis-

trative decisions, this court reviews factual questions under the manifest weight of the evidence

standard, questions of law *de novo*, and mixed questions of law and fact under the clearly

erroneous standard. *Buckner v. University Park Police Pension Fund*, 2013 IL App (3d) 120231,

¶ 13, 983 N.E.2d 125.

¶ 29                          2. *The Administrative Policy at Issue*

¶ 30          Section 1001.770 of title 92 of the Administrative Code, entitled, "Conduct of

Protest Hearing," concerns, in part, the procedure a complainant must follow to claim attorney

fees after service of the Board's final order.  92 Ill. Adm. Code 1001.770 (1999).  Specifically,

section 1001.770(e)(3)(A) provides, as follows:

> "A)  The complainant shall be allowed to submit to the hearing
>
> officer within 10 days after receipt of the final order a detailed
>
> motion requesting the payment of the costs allowed under Section
>
> 1001.790(b) that it incurred in the hearing process.  *** If the
>
> complainant fails to submit the motion in a timely manner, the
>
> complainant will be deemed to have waived its right to an award of
>
> such costs."  92 Ill. Adm. Code 1001.770(e)(3)(A) (1999).

¶ 31          Section 1001.770 of title 92 of the Administrative Code continues, explaining that

if the complainant complies with the 10-day deadline for filing an attorney-fee claim and a

hearing is conducted on that claim, the following procedure applies:

> "F)  The Board shall then review the recommendation of the hear-
>
> ing officer, the pleading filed, any exceptions and briefs, and the
>
> recommendation of the monitor. *The Board shall then issue a final*
>
> *order assessing the Board's expenses and awarding attorney's fees*
>
> *and costs to the complainant.*  The final order shall be forwarded to
>
> the Secretary who shall then serve it upon the parties."  (Emphasis

- 9 -

added.) 92 Ill. Adm. Code 1001.770(e)(3)(F) (1999).

¶ 32          3. *The Board's Determination as to GMC's Waiver Claim*

¶ 33          We note that in his December 2007 proposed decision to the Board, which the

Board adopted, the hearing officer addressed the parties' disagreement as to what this court meant

when it made the following statement in our October 2005 opinion addressing, in pertinent part,

the decision to refrain from resolving the parties' attorney-fees issue:

> "Accordingly, we find the attorney-fees issues raised by GMC and
>
> Loren are not ripe for judicial review at this time.  *** We note
>
> our decision does not in any way address the merits of the attorney-
>
> fees issues and is not a confirmation of the Review Board's 'award
>
> of attorney fees and costs' in the September 2003 final order, as the
>
> Review Board's regulations provide such an award is to be made in
>
> a *second final order* in cases such as this (see 92 Ill. Adm. Code §
>
> 1001.770(e)(3)(F) (Conway Greene CD-ROM April 2001))."
>
> (Emphasis added.) *GMC I*, 361 Ill. App. 3d at 291, 836 N.E.2d at
>
> 920.

¶ 34          With regard to the aforementioned passage, in particular, this court's reference to a

"second final order," GMC made the following argument in support of its position that the

Board's February 2007 correspondence constituted a second final order that required the

protesting dealerships to refile their claims for additional attorney fees within 10 days of service:

> "Well, our view is it means one of two things.  Either it's
>
> referencing the fact that there should be a second final order which

- 10 -

is interesting in that the Board did send out the final order in

February [2007], as your honor is aware, or it is saying that the

process should begin again and the Board should then have a new

final order issued after the hearing examiner conducts his proceed-

ings."

When the protesting dealerships responded that this court's "second final order" statement was

plainly addressing the Board's subsequent "final order determining how much the attorney[] fees

and costs are," GMC countered that the critical point the protesting dealerships were omitting

was that this court's October 2005 opinion vacated the Board's attorney-fee determination.

¶ 35        In rejecting GMC's claim, the hearing officer made the following recommendation

to the Board:

"The appellate court did not dismiss the [protesting dealer-

ships'] pending fee petitions.  In fact, the appellate court remanded

the case to the Board to address the attorney fee issues.  Since the

fee petitions were not dismissed but merely stayed during the

pendency of the appeal, the [protesting dealerships] did not have to

re-file their fee petitions at any time in the future."

¶ 36                    4. *Application of the Standard of Review*

¶ 37        As we have previously noted, GMC contends that although the protesting

dealerships timely filed their initial petitions for attorney fees when the Board issued its

September 2003 final order, they failed to file their claims for additional attorney fees when the

Board "reserved" them with their second final order on February 1, 2007.  Thus, the narrow issue

- 11 -

we address concerns whether the Board's February 2007 correspondence to the parties constituted

a "second final order" that triggered a second 10-day deadline for the petition of additional

attorney fees as GMC contends. We conclude that it does not.

¶ 38        We agree with the Board that this court's October 2005 opinion did not vacate the

Board's attorney-fee determination. Instead, this court vacated the circuit court's confirmation of

the Board's decision that the protesting dealerships were entitled to attorney fees under section 13

of the Franchise Act because the Board had yet to determine the amount of attorney fees. *GMC I*,

361 Ill. App. 3d at 291, 836 N.E.2d at 920. In so doing, we remanded the attorney-fee issue to

the Board with directions that it conduct those proceedings and issue a ruling—that is, that the

Board issue a second final order ascertaining the amount of such fees—in accordance with

section 1001.770(e)(3)(F) of title 92 of the Administrative Code. *Id.*

¶ 39        Here, we view the Board's February 2007 letter as a prudent measure, which, in

addition to requesting Board fees from GMC, alerted the parties involved about the supreme

court's resolution of GMC's appeal. We do not, however, view the Board's correspondence as a

final order for purposes of triggering a 10-day limitation on a contestant's ability to file petitions

for additional attorney fees incurred as a result of subsequent appeals. We caution, however, that

our rejection of GMC's narrow claim in no way addresses (1) if a timeliness provision does or

should apply to the request of such additional fees or (2) whether attorney-fee awards for costs

incurred for appeals are permitted by section 13 of the Franchise Act. Our conclusion rejects

only GMC's specific claim that the Board's February 2007 letter constituted a final order that

placed a time constraint on the protesting dealerships' ability to request additional attorney fees

under section 1001.770 of Title 92 of the Administrative Code. Accordingly, we conclude that

- 12 -

the Board's rejection of GMC's claim in this regard was not clearly erroneous.

¶ 40         B. GMC's Claim That the Board Erred by Awarding Attorney Fees

¶ 41         GMC next argues that the Board erred by awarding attorney fees because the

protesting dealerships failed to show GMC engaged in wrongful conduct as required by section

13 of the Franchise Act.  We agree.

¶ 42             1. *The Statute at Issue and the Standard of Review*

¶ 43         Section 13 of the Franchise Act, provides as follows:

"Damages; equitable relief.  Any franchisee or motor

vehicle dealer who suffers any loss of money or property, real or

personal, as a result of the use or employment by a manufacturer

*** of an unfair method of competition or an unfair or deceptive

act or practice declared unlawful by this Act, or any action in

violation of this Act, may bring an action for damages and equita-

ble relief, including injunctive relief, in the circuit court of the

county in which the objecting franchisee has its principal place of

business ***.  If the misconduct is willful or wanton, treble dam-

ages may be awarded.  A motor vehicle dealer, if it has not suffered

any loss of money or property, may obtain permanent equitable

relief if it can be shown that the unfair act or practice may have the

effect of causing such loss of money or property.  Where the fran-

chisee or dealer *substantially prevails* the court or arbitration panel

or Motor Vehicle Review Board shall award attorney's fees and

- 13 -

>assess costs, including expert witness fees and other expenses
>
>incurred by the dealer in the litigation, so long as such fees and
>
>costs are reasonable, against the opposing party. Moreover, for the
>
>purposes of the award of attorney's fees, expert witness fees, and
>
>costs whenever the franchisee or dealer is seeking injunctive or
>
>other relief, the franchisee or dealer may be considered to have
>
>prevailed when a judgment is entered in its favor, when a final
>
>administrative decision is entered in its favor and affirmed, if
>
>subject to judicial review, when a consent order is entered into, or
>
>when the manufacturer *** ceases the conduct, act or practice
>
>which is alleged to be in violation of any Section of this Act."

(Emphasis added.) 815 ILCS 710/13 (West 2010).

Because this case requires us to interpret section 13 of the Franchise Act, our review is *de novo*. *People v. Davis*, 2012 IL App (4th) 110305, ¶ 12, 966 N.E.2d 570 (discussing *de novo* review of section 2-1401 petition dismissal).

¶ 44                2. *The Principles of Statutory Construction*

¶ 45        The Illinois Supreme Court has recently reiterated the principles of statutory construction, explaining as follows:

>"The principles guiding our analysis are well established.
>
>Our primary objective is to ascertain and give effect to legislative
>
>intent, the surest and most reliable indicator of which is the statu-
>
>tory language itself, given its plain and ordinary meaning. [Cita-

- 14 -

tion.]  In determining the plain meaning of statutory terms, we

consider the statute in its entirety, keeping in mind the subject it

addresses and the apparent intent of the legislature in enacting it.

[Citation.]  Where the language of the statute is clear and unambig-

uous, we must apply it as written, without resort to extrinsic aids to

statutory construction.  [Citation.]

   If the language is ambiguous, making construction of the

language necessary, we construe the statute so that no part of it is

rendered meaningless or superfluous.  [Citation.]  We do not depart

from the plain language of the statute by reading into it exceptions,

limitations, or conditions that conflict with the expressed intent.

[Citation.]  The traditional canons or maxims of statutory construc-

tion are not rules of law, but rather are merely aids in determining

legislative intent and must yield to such intent."  (Internal quotation

marks omitted.)  *People v. Giraud*, 2012 IL 113116, ¶ 6, 980

N.E.2d 1107.

With these principles in mind, we turn to GMC's argument.

¶ 46                    3. *The Board's Award of Attorney Fees*

¶ 47         The plain language of section 13 of the Franchise Act begins by identifying who

can bring an action for "damages and equitable relief" pursuant to section 13 of the franchise

Act—that is, "[a]ny franchisee or motor vehicle dealer."  815 ILCS 710/13 (West 2010).  The

statute then segregates that franchisee or motor vehicle dealer into one of two financial catego-

- 15 -

ries. *Id.* Either the motor vehicle dealer (1) has suffered a loss of money or property, real or personal, or (2) has not suffered any loss of money or property. *Id.* The statute continues further that for those motor vehicle dealers that have lost money or property, the cause of their loss must have resulted from "the use or employment by a manufacturer *** of an unfair method of competition or an unfair or deceptive act or practice declared unlawful by this Act, or any action in violation of this Act." *Id.* For those motor vehicle dealers that cannot show an actual loss of money or property, they can still recover damages "if it can be shown that the unfair act or practice may have the effect of causing such loss of money or property." *Id.* Indeed, if a manufacturer's "misconduct" is "willful or wanton," section 13 of the Franchise Act permits the award of treble damages. *Id.* Thus, the plain language of the first three sentences of section 13 of the Franchise Act clearly conveys that a motor vehicle dealer can seek damages from a manufacturer that has engaged in misconduct or a violation of the Franchise Act if the dealer can show actual or foreseeable financial losses as a result of the manufacturer's misconduct.

¶ 48        As previously noted, GMC argues that the Board erred by awarding attorney fees because the protesting dealerships failed to show GMC engaged in wrongful conduct as required by section 13 of the Franchise Act. In response to GMC's argument, the protesting dealerships focus on the fourth sentence of the statute, which provides as follows:

> "Where the franchisee or dealer *substantially prevails* the court or
> arbitration panel or Motor Vehicle Review Board shall award
> attorney's fees and assess costs, including expert witness fees and
> other expenses incurred by the dealer in the litigation, so long as
> such fees and costs are reasonable, against the opposing party."

- 16 -

(Emphasis added.) 815 ILCS 710/13 (West 2010).

¶ 49       Relying primarily on the term "substantially prevails," the protesting dealerships

contend that "the statute provides that a dealer whose claims are before a court (or arbitration

panel or the Board) may recover fees where he 'substantially prevails'—not on any claim ever,

simply for being before the court, but only where (in this case) a final decision is entered *in its

favor.*" (Emphasis in original.) In other words, the protesting dealerships contend that section 13

permits the award of damages in at least the following two scenarios: (1) when the complainant

can prove the manufacturer engaged in misconduct or (2) when the complainant substantially

prevails against the manufacturer in any claim brought under the Franchise Act. We conclude

that this interpretation of section 13 of the Franchise Act is flawed.

¶ 50       Given the parties' respective positions, our task concerns whether the phrase

"substantially prevails" refers back to the aforementioned misconduct by the manufacturer, as

GMC contends, or if that term introduces a separate and distinct cause of action that applies to

any proceeding where the complainant substantially prevails, as the protesting dealerships

contend. In making that determination, we are mindful of the canon of statutory construction that

we construe the statute so that no part of it is rendered meaningless or superfluous. In this vein,

we do not find the protesting dealerships' claim persuasive because if we were to accept it, doing

so would essentially eliminate the first three sentences of the statute, rendering them superfluous.

¶ 51       In this case, the Board—in its September 2003 final order—determined that

because the protesting dealerships substantially prevailed in their protest against GMC's proposed

expansions—that is, that GMC failed to show good cause existed for its proposal—they were

entitled to attorney fees. Thus, under the protesting dealerships' logic, and as this case shows,

- 17 -

attorney fees can be awarded when a manufacturer, who otherwise follows the procedures

delineated in the Franchise Act in good faith, does not prevail in its efforts to establish another

franchise because of a failure to show good cause.

¶ 52        If this is what the General Assembly intended, initially segregating complainants

by financial situation and requiring a manufacturer's misconduct to garner damages would be

nonsensical when substantially prevailing on *any* cause of action brought under the Franchise Act

would suffice, regardless of misconduct or actual or potential loss of money or property.  Indeed,

if merely successfully protesting a franchise expansion would suffice to obtain an award of

attorney fees, no reason would exist to identify the motor vehicle dealers by financial status or

that the manufacturer engaged in misconduct.

¶ 53        Here, the record shows that the protesting dealerships neither alleged GMC

engaged in misconduct nor argued that their respective financial status changed or could have

changed as a result of GMC's proposal.  And as we have already indicated, the Board made no

findings in that regard.  Notwithstanding its stance that substantially prevailing on a protest of a

franchise expansion alone is sufficient to garner attorney fees, the protesting dealerships also

claim as follows:

> "The gravamen of the statute is a manufacturer threatening
>
> to add an additional dealer, relocating an existing dealer, or
>
> terminat[ing] a dealer, and the whole scheme of the Act is com-
>
> posed the way it is because the legislature deemed that these acts
>
> (threatened relocation, addition, or termination of a dealer) are
>
> 'unfair acts or practices' contemplated by the Act."

- 18 -

We agree that the Franchise Act serves, in part, to protect dealerships, and by extension, the

public, from automobile manufacturers in specific instances, but we disagree that a manufac-

turer's decision to relocate, add, or terminate an automobile dealership should be viewed as *prima*

*facie* evidence of an unfair act or practice prohibited by the Franchise Act.  Legitimate business

reasons also exist that may compel a manufacturer to contemplate such action.  Manufacturers

who choose to do so—believing in good faith that good cause exists to proceed—should not be

penalized by paying the attorney fees of protesting dealerships without a showing of misconduct

as contemplated by section 13 of the Franchise Act.

¶ 54        We find support for our position in *GMC II*, 224 Ill. 2d at 31, 862 N.E.2d at 229,

in which the supreme court stated as follows:

> "Here, we find that the Franchise Act creates a legislative
>
> classification by treating existing automobile dealers differently
>
> than other kinds of franchise owners.  However, the classification
>
> is related to the legitimate government purposes of redressing the
>
> disparity in bargaining power between automobile manufacturers
>
> and their existing dealers and of protecting the public *from the*
>
> *negative impact of harmful franchise practices* by automobile
>
> manufacturers."  (Emphasis added.)

¶ 55        Accordingly, we vacate the circuit court's judgment confirming the Board's award

of attorney fees in the protesting dealerships' favor and reverse the Board's determination in that

regard.

¶ 56        Because we have so concluded, we need not address GMC's remaining arguments

that (1) as applied in this case, section 13 of the Franchise Act violates due-process, equal

protection, and the prohibition against special legislation; and (2) even if the protesting dealer-

ships were entitled to fees for the circuit court proceedings, they were not entitled to attorney fees

and costs associated with their respective appeals.  Both arguments pertain to the Board's award

of attorney fees, which we have determined the Board awarded erroneously.  See *In re Karen E.*,

407 Ill. App. 3d 800, 804, 952 N.E.2d 45, 50-51 (2011) (citing *In re Alfred H.H.*, 233 Ill. 2d 345,

351, 910 N.E.2d 74, 78 (2009)) ("Generally, Illinois courts do not decide moot issues, render

advisory opinions or consider issues where the outcome will not be affected by how the issues

are decided.").

¶ 57                            III. CONCLUSION

¶ 58            For the reasons stated, we reverse.

¶ 59            Reversed.

# EXHIBIT D

## Prepetition Agreed Order

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT
COUNTY OF SANGAMON

GENERAL MOTORS CORPORATION,  )
                             )
      Plaintiff,             )
                             )
v.                           )    No. 2008-MR-240
                             )
STATE OF ILLINOIS MOTOR VEHICLE )    (Administrative Review)
REVIEW BOARD, TERRENCE M. O'BRIEN, )
NORTH SHORE, INC. d/b/a MULLER )
PONTIAC/GMC MAZDA, GROSSINGER )
AUTOPLEX, INC., JOE MITCHELL )
BUICK/GMC TRUCK INC., CASTLE BUICK- )
PONTIAC, INC., AND LOREN BUICK, INC., )
                             )
      Defendants.            )

**FILED**

NOV 2 1 2008   CW-5

Clark of the
Circuit Court

## AGREED ORDER STAYING EXECUTION OF JUDGMENT

This matter is before the Court on General Motors Corporation's ("GM") Motion to Approve Bond and Stay Execution of Judgment and Defendants Motion for Additional Relief, and the parties' submission of this Agreed Order. Due notice has been given, the Court is fully apprised of the relevant matters, and the Court is advised that the parties have agreed to entry of this Agreed Order. Accordingly,

IT IS HEREBY ORDERED THAT:

    1)    The Motion to Approve Bond is granted and the bond is approved. The decisions served by the Motor Vehicle Review Board on March 14, 2008 and March 20, 2008, this Court's Order signed October 28, 2008 and the additional relief granted to Defendants by this Order as set forth below are stayed and shall not be enforced or executed upon until an appeal to the Fourth District Court of Appeals has been resolved and the requirements of applicable law have been met, as long as the previously filed Bond by GM remains in effect. Nothing in this Order is intended to affect or prejudice any right of Defendants to seek post-judgment interest running from the date of the Motor Vehicle Review Board's order or to affect or prejudice Defendants' claims for attorneys' fees and costs related to proceedings in this matter after today's Order. Nothing in this Order shall affect or prejudice any right of GM to oppose such requests.

    2)    Defendants' Motion for Additional Relief is granted and Defendant, North Shore, Inc. is awarded $12,888.06 in additional fees and costs since the last award of fees and costs by the Motor Vehicle Review Board and Defendants, Grossinger Autoplex, Inc., Joe Mitchell Buick/GMC Truck, Inc., and Castle Buick-Pontiac, Inc., are collectively awarded $30,550.19 in additional fees and costs. For purposes of further appeals, GM is deemed to have made and hereby preserves all previously made legal objections to the fees and costs of Defendants, including the Defendants' Motion for Additional Relief. Judgment is hereby entered against GM with regard to the above amounts.

Entered: _____Nov. 21 2008_____    _____
                                                      JUDGE

# EXHIBIT E

## Stipulation and Agreed Order

Harvey R. Miller
Stephen Karotkin
Joseph H. Smolinsky
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

Attorneys for Motors Liquidation
    Company GUC Trust

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
                                           :
**In re**                                  :    **Chapter 11 Case No.**
                                           :
**MOTORS LIQUIDATION COMPANY**, *et al.*,  :    **09-50026 (REG)**
        f/k/a **General Motors Corp.**, *et al.*  :
                                           :
        **Debtors.**                       :    **(Jointly Administered)**
                                           :
-------------------------------------------------------------x

**STIPULATION AND AGREED ORDER**
**REGARDING CLAIM NOS. 38932, 66308, 66309, 66310**

This Stipulation and Agreed Order is entered into as of September 21, 2012 (the

"**Effective Date**") by and among (i) the Motors Liquidation Company GUC Trust (the "**GUC**

**Trust**"); and (ii) Grossinger Autoplex, Inc.; Castle Buick-Pontiac-GMC, Inc.; North Shore, Inc.

d/b/a Muller Pontiac/GMC Mazda; and Joe Mitchell Buick/GMC Truck, Inc. (collectively, the

"**Claimants**," and together with the GUC Trust, the "**Parties**").

**RECITALS:**

WHEREAS, on March 14, 2008, in an action styled *North Shore, Inc. v. General*

*Motors Corp.*, No. MVRB 79-01, the Motor Vehicle Review Board for the State of Illinois (the

"**Board**") issued a final order (the "**Final Order**") directing Motors Liquidation Company

("**MLC**") (f/k/a General Motors Corporation) to reimburse the Claimants for certain attorneys

fees and costs[1] that the Claimants incurred while successfully opposing the addition of a new dealership within the Claimants' geographic vicinity;

WHEREAS, on October 28, 2008, the Circuit Court of the Seventh Judicial Circuit in Sangamon County, Illinois (the "**Illinois Circuit Court**"), issued an Order upholding the Board's Final Order with respect to the award of attorneys fees and costs;

WHEREAS, on November 21, 2008, the Illinois Circuit Court entered an agreed Order (the "**Prepetition Agreed Order**")[2] upon the consent of MLC and the Claimants in which the Illinois Circuit Court awarded Claimants additional attorneys fees and costs (collectively, including the amounts awarded in the Final Order, the "**Judgment**") and stayed execution of the Judgment until such time that MLC's appeal (the "**Appeal**") of the Judgment was resolved;

WHEREAS, on April 15, 2008, MLC posted an appeal bond in the amount of $1,300,000 (the "**Appeal Bond**");

WHEREAS, on June 1, 2009 (the "**Commencement Date**"), while the Appeal of the Judgment was pending in the Fourth District Court of Appeals of Illinois (the "**Illinois Appellate Court**," and together with the Board, the Illinois Circuit Court and the Illinois Supreme Court, the "**Illinois State Courts**"), MLC and certain of its affiliated debtors (collectively with MLC, the "**Debtors**") commenced voluntary cases under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") before the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**"), Case No. 09-50026 (REG),

---

[1] Specifically, Hearing Officer Mark A. Kuchler ordered that the Claimants be awarded the following amounts: (i) $242,816.46 to Grossinger Autoplex, Inc.; (ii) $238,884.30 to Castle Buick-Pontiac-GMC, Inc.; (iii) $321,782.18 to North Shore, Inc. d/b/a Muller Pontiac/GMC Mazda; and (iv) $230,124.14 to Joe Mitchell Buick/GMC Truck, Inc.

[2] *General Motors Corp. v. State of Illinois Motor Vehicle Review Bd.*, No. 08-MR-240 (Cir. Ct. 7th Jud. Cit. Nov. 21, 2008). Specifically, the Illinois Circuit Court ordered that Claimants be awarded the following amounts: (i) $12,888.06 to North Shore, Inc d/b/a Muller Pontiac/GMC Mazda; and (ii) $30,550.19 to Grossinger Autoplex, Inc, Castle Buick-Pontiac-GMC, Inc. and Joe Mitchell Buick/GMC Truck, Inc, collectively.

thereby causing the Appeal to be stayed pursuant to section 362 of the Bankruptcy Code (the "**Automatic Stay**");

WHEREAS, on the Commencement Date, the Debtors filed a motion requesting the entry of an Order (ECF No. 2968) authorizing and approving the sale of substantially all of the Debtors' assets, free and clear of liens, claims, encumbrances, and other interests (the "**363 Transaction**"), pursuant to that certain Master Sale and Purchase Agreement (as amended and supplemented, the "**MSPA**"), dated June 1, 2009, by and among the Debtors and NGMCO, Inc. ("**New GM**");

WHEREAS, on March 5, 2010, the Bankruptcy Court later entered an Order (ECF No. 5198) approving a stipulation between the Debtors and New GM clarifying, among other things, that the Appeal Bond constitutes a Purchased Asset (as defined in the MSPA) to be transferred to New GM and that to the extent the Appeal results in a liability in excess of the Appeal Bond, such liability shall constitute a Retained Liability (as defined in the MSPA) and remain subject to the Bankruptcy Court's Orders as a Retained Liability;

WHEREAS, periodically after the Commencement Date, in connection with the Debtors' rationalization of its automobile dealership network and in conjunction with the 363 Transaction, the Debtors entered into participation agreements ("**Participation Agreements**") with many of its automobile dealerships, including Grossinger Autoplex, Inc. and Castile Buick-Pontiac-GMC, Inc., to allow the dealerships to continue its operations with New GM on a long term basis;

WHEREAS, each of the Participation Agreements provide, among other things, that the Debtors and New GM are released from certain claims by dealerships, all as more fully described in the Participation Agreements;

WHEREAS, on November 30, 2009, Castle Buick-Pontiac-GMC, Inc. and Grossinger Autoplex, Inc. each filed the following proofs of claim (collectively, the "**Castle and Grossinger Claims**") in the Debtors' chapter 11 cases on account of the Judgment:

| Claimant | Claim No. | Amount of Claim (as filed) | Classification (as filed) |
|---|---|---|---|
| Castle Buick Pontiac GMC Inc. | 66309 | $249,067.70 | Secured Claim |
| Grossinger Autoplex Inc. | 66310 | $252,999.85 | Secured Claim |

WHEREAS, between November 23, 2009 and November 30, 2009, North Shore, Inc. d/b/a Muller Pontiac/GMC Mazda and Joe Mitchell Buick/GMC Truck, Inc. respectively filed the following proofs of claim (collectively, the "**North Shore and Mitchell Claims**," and together with the Castle and Grossinger Claims, the "**Claims**") in the Debtors' chapter 11 cases on account of the Judgment:

| Claimant | Claim No. | Amount of Claim (as filed) | Classification (as filed) |
|---|---|---|---|
| North Shore, Inc. d/b/a Muller Pontiac/GMC Mazda | 38932 | $330,670.24 | Unsecured Claim |
| Joe Mitchell Buick/GMC Truck, Inc. | 66308 | $240,307.53 | Secured Claim |

WHEREAS, on March 29, 2011, the Bankruptcy Court entered the *Findings of Fact, Conclusions of Law, and Order Pursuant to Sections 1129(a) and (b) of the Bankruptcy Code and Rule 3020 of the Federal Rules of Bankruptcy Procedure Confirming Debtors' Second Amended Joint Chapter 11 Plan* (the "**Confirmation Order**"), which, among other things, (i) confirmed the *Debtors' Second Amended Joint Chapter 11 Plan* (as may be amended, modified, or supplemented, the "**Plan**"); (ii) authorized the GUC Trust to resolve certain claims filed against the Debtors; and (iii) enjoined all persons from commencing or continuing in any manner on account of or respecting any claim, debt, right, or cause of action for which the Debtors, the

4

GUC Trust Administrator, or the Avoidance Action Trust Administrator (as defined in the Plan) retains sole and exclusive authority to pursue in accordance with the Plan (the "**Plan Injunction**");

WHEREAS, the Plan also provides that the Automatic Stay in the Debtors' chapter 11 cases shall remain in full force and effect until the closing of the chapter 11 cases;

WHEREAS, on June 8, 2012, the Motors Liquidation Company GUC Trust filed an objection (the "**Objection**") (ECF No. 11810) to the Castle and Grossinger Claims, which Objection was originally scheduled by the GUC Trust to be heard by the Bankruptcy Court on July 17, 2012; and

NOW, THEREFORE, after good-faith, arms-length negotiations, in consideration of the foregoing, it is hereby stipulated and agreed that:

1.    The Castle and Grossinger Claims filed in the Debtors' chapter 11 cases are fully and finally withdrawn with prejudice and under no event shall Castle Buick-Pontiac-GMC, Inc. or Grossinger Autoplex, Inc. be entitled to a distribution in the Debtors' chapter 11 cases on account of the Castle and Grossinger Claims or have the ability to file any additional claims against the Debtors or the GUC Trust; provided, however, that the withdrawal of the Castle and Grossinger Claims shall have no effect whatsoever on the rights of Castle Buick-Pontiac-GMC, Inc. and Grossinger Autoplex, Inc. to pursue the Appeal, the Judgment or the Appeal Bond upon prevailing in the Appeal and/or related proceedings in the Illinois State Courts subject to the terms of this Order.  The matters raised in the Objection have not been adjudicated and may be raised in the Appeal.

2.    The North Shore and Mitchell Claims are reclassified to non-priority general unsecured claims to the extent they were not filed as such; provided, however, that such

5

classification shall have no effect whatsoever on the rights of North Shore, Inc. d/b/a Muller Pontiac/GMC Mazda and Joe Mitchell Buick/GMC Truck, Inc. to recover the Judgment through the Appeal Bond in the event they prevail in the Appeal and/or related proceedings subject to the terms of this Order. This Stipulation and Agreed Order does not resolve the allowance of the North Shore and Mitchell Claims in the Debtors' chapter 11 cases, which shall remain pending at this time.

3.    The Claimants shall not under any event seek or recover in the Appeal and/or related proceedings an aggregate amount that exceeds the amount of the Appeal Bond.

4.    The Automatic Stay and the Plan Injunction are modified solely to the extent necessary to permit the Appeal and any related proceedings in the Illinois State Courts to resume in accordance with this Stipulation and Agreed Order and to allow the appropriate Claimants, as determined by the Illinois State Courts (or any appellate Court thereof), to recover the applicable portion of the Judgment through the Appeal Bond, *provided that*, the Automatic Stay and Plan Injunction are not modified to permit the Claimants to seek or obtain a recovery in excess of the amount of the Appeal Bond. In no event shall the Automatic Stay and the Plan Injunction be modified to allow any claims, allegations or relief against the Debtors, New GM or the GUC Trust that are inconsistent with this Stipulation and Agreed Order or any prior Orders of this Court.

5.    Except to the extent of any recovery by the Claimants through the Appeal Bond upon prevailing in the Appeal and/or related proceedings, the provisions of the Automatic Stay and the Plan Injunction, or any provision or injunction created in connection with confirmation of the Plan and the order confirming the Plan prohibiting execution, enforcement, or collection of any judgment against the Debtors, New GM, the GUC Trust, and/or assets or

property of the Debtors' estates (as defined in section 541 of the Bankruptcy Code), shall remain in full force and effect.

6.     Nothing contained herein shall be deemed or construed as an admission of liability by any of the Parties with respect to the Appeal or the Objection, and all Parties reserve the right to assert any and all defenses in the Appeal and/or related proceedings.

7.     The claims agent in the Debtors' chapter 11 cases shall be authorized and empowered to adjust the claims register in accordance with this Stipulation and Agreed Order.

8.     This Stipulation and Agreed Order may not be modified other than by signed writing executed by the Parties hereto.

9.     Each person who executes this Stipulation and Agreed Order represents that he or she is duly authorized to do so on behalf of the respective Parties hereto and that each such party has full knowledge and has consented to this Stipulation and Agreed Order.

10.     This Stipulation and Agreed Order may be executed in counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument, and it shall constitute sufficient proof of this Stipulation and Agreed Order to present any copy, copies, or facsimiles signed by the Parties hereto to be charged.

11.     This Stipulation and Agreed Order shall be exclusively governed by and construed and enforced in accordance with the laws of the State of New York, without regard to conflicts of law principles thereof. The Bankruptcy Court shall retain exclusive jurisdiction over any and all disputes arising out of or otherwise relating to this Stipulation and Agreed Order.

*[Signature Page Follows]*

**MOTORS LIQUIDATION COMPANY GUC TRUST**
By:  AlixPartners LLP, *as attorney-in-fact on behalf of Wilmington Trust Company, acting solely in its capacity as trustee and trust administrator of the Motors Liquidation Company GUC Trust*

**C A S T L E   B U I C K - P O N T I A C - G M C , I N C .**

By:  /s/ Barry Folse _____

By:  /s/ Ira M. Levin _____

Print Name: Barry Folse _____
Title: Managing Director _____

Print Name: Ira M. Levin _____
Title: Attorney _____

Dated:  September 21, 2012

Dated:  September 12, 2012

8

GROSSINGER
AUTOPLEX, INC.

By: /s/ Ira M. Levin _____

Print Name: Ira M. Levin _____
Title: Attorney _____

Dated:  September 20, 2012

JOE MITCHELL
BUICK/GMC
TRUCK, INC.

By: /s/ Ira M. Levin _____

Print Name: Ira M. Levin _____
Title: Attorney _____

Dated:  September 20, 2012

NORTH SHORE,
INC. D/B/A MULLER
PONTIAC/GMC
MAZDA

By: /s/Glenn Muller _____

Print Name: Glenn Muller _____
Title: Pres. _____

Dated:  September 20, 2012

**IT IS SO ORDERED**
Dated: **_September 27, 2012_**
            New York, New York

                                        **_s/ Robert E. Gerber_**
                                        United States Bankruptcy Judge

# **EXHIBIT F**

## **Appellate Order**

IN THE CIRCUIT COURT OF THE SEVENTH JUDICIAL CIRCUIT

SANGAMON COUNTY, ILLINOIS



GENERAL MOTORS CORPORATION,          )
                                     )
                    Plaintiff,       )
                                     )
          v.                         )
                                     )
STATE OF ILLINOIS MOTOR VEHICLE      )          NO. 08-MR-240
REVIEW BOARD, TERRENCE M. O'BRIEN,   )
CHAIRPERSON, NORTH SHORE, INC.,      )
d/b/a MULLER PONTIAC/GMC MAZDA,      )
GROSSINGER AUTOPLEX, INC.,           )
JOE MITCHELL BUICK/GMC TRUCK INC.,   )
CASTLE BUICK-PONTIAC, INC., AND      )
LOREN BUICK, INC.,                   )
                                     )
                    Defendants.      )

**ORDER**

Matter before the Court on Plaintiff's Complaint
under the Administrative Review Law. All parties having appeared
by counsel. The issues and arguments having been fully briefed,
argument having been heard, proposed orders having been reviewed by
the Court and the Court being fully advised in the premises, the
Court finds as follows: Plaintiff ("GM") seeks administrative
review of the Board's ruling, that the Defendant Dealerships
("Dealers") in this case are entitled to attorneys' fees and the
amount of that fee award. On March 14th of 2008, the Board issued
a final order awarding the dealers $1,033,607.08 in attorneys'
fees. Plaintiff then filed a Complaint with this Court for
administrative review pursuant to 735 ILCS 5/3-104 and

1

815 ILCS 710/31.

The Court reviews the arguments presented by Plaintiff employing the *de novo* standard with the exception of Plaintiff's argument regarding whether certain fees were appropriately awarded, which this Court reviews based upon the manifest weight of the evidence standard.

**Section 13 of IMVFA.** The Plaintiff contends that the Board misconstrued Section 13 of the IMVFA which provides for attorneys' fees in certain cases. Specifically, Plaintiff argues that in addition to the dealers having substantially prevailed, Plaintiff must have been found to have specifically violated the IMVFA or engaged in some other bad act prior to an award of attorneys' fees under Section 13. The Defendants argue that the plain language of Section 13 requires only that the dealers substantially prevail prior to an award of attorneys' fees.

It is a fundamental rule of statutory construction to ascertain and give effect to the intent of the legislature. Wisniewski v. Kownacki, 221 Ill.2d 453, 460 (2006). Indeed, the best indication of that intent is the plain and ordinary meaning of the language in the statute. Id. In addition, statutes are presumed to be constitutional, and any doubts as to the statute's meaning should be resolved in favor of constitutionality. Michigan Ave. Nat. Bank v. County of Cook, 191 Ill. 2d 493, 503-04 (2000). Finally, where the interpretation of a statute by the agency

2

charged with enforcing that statute is made, the agency's
interpretation is given great weight. Parisi v. Jenkins, 236 Ill.
App. 3d 42, 47 (1992).

The plain language of Section 13 does not require that
there be a specific violation of the IMVFA or other bad act as a
prerequisite to an award of attorneys' fees. As the State Board's
counsel argues, the interpretation of the legislative history of
the IMVFA and Illinois Supreme Court interpretation supports the
plain language of Section 13. Specifically, the legislature
indicated that the purpose of what is now Section 13 was to "allow
[ ] the individual to go to court to seek redress." HEARINGS ON
S.B. 1002 BEFORE THE SENATE, 81 GEN. ASSEMBLY (6/23/79) at 178
(statement of Senator Berman.)

The Supreme Court held in GM v. The State of Illinois
Motor Vehicle Board Review, 224 Ill. 2d 1, 30-31 (2007). That the
legislative purpose of IMVFA was to "redress [ ] the disparity and
bargaining power between automobile manufacturers and their
existing dealers and [ ] protect [ ] the public from the negative
impact of harmful franchise practices by the automobile
manufacturers." Id. at 31. The Board's attorney further argues
that the Supreme Court has found that GM has failed to prove the
IMVFA as unconstitutional. Id. at 32. This Court finds no binding
authority or basis for Plaintiff's argument that Section 13 is
"special legislation" or that it violates equal protection or due

3

process.

**Timeliness of Filing Fee Petitions.**  Plaintiff GM argues
Defendant dealers must refile the originally filed fee petitions
following GM's appeal.  The Board previously found that Defendants
timely filed the fee petitions and were not required to refile
after appeal.  As the Board is the agency charged with enforcing
the rule, has interpreted the rule, the Board's ruling shall be
given great weight, and this Court finds Defendants' petition
timely filed.

**Appeal Fees.**  Further, the Board interpreted Section 13
to contemplate the inclusion of appellate attorneys' fees, and this
interpretation is consistent with the plain language of the
statute.  The Court finds the Board's inclusion of appellate fees
proper to be proper.

**Amount of Fee Award.**  This Court finds the Board's award
of attorneys' fees is supported by the evidence in the record.  The
Court accepts the finding of facts as true and correct and not
against the manifest weight of the evidence and therefore denies
Plaintiff's request to disturb the Board's finding regarding
attorneys' fees.

ENTERED: _Octob 28, 2008_

JUDGE

4

# <u>EXHIBIT G</u>

## Supreme Court of Illinois' Denial of Petition for Leave to Appeal

US_ACTIVE:\44315146\1\72240.0639

STATE OF ILLINOIS
SUPREME COURT

At a Term of the Supreme Court, begun and held in Chicago, on Monday, the eleventh day of November, 2013.

Present: Rita B. Garman, Chief Justice

| | |
|---|---|
| Justice Charles E. Freeman | Justice Robert R. Thomas |
| Justice Thomas L. Kilbride | Justice Lloyd A. Karmeier |
| Justice Anne M. Burke | Justice Mary Jane Theis |

---

On the twenty-seventh day of November, 2013, the Supreme Court entered the following judgment:

No. 116533

General Motors Corporation,

    Respondent

    v.

The State of Illinois Motor Vehicle Review Board, Terrence M. O'Brien, North Shore, Inc., d/b/a Muller Pontiac/GMC Mazda, and Joe Mitchell Buick/GMC Truck, Inc.

    #  #  #  #  #  #

North Shore, Inc., d/b/a Muller Pontiac/GMC Mazda, and Joe Mitchell Buick/GMC Truck, Inc.,

    Petitioners

Loren Buick, Inc., Grossinger Autoplex, Inc., and Castle Buick-Pontiac, Inc.

Petition for Leave to Appeal from Appellate Court Fourth District
4-08-0893
08MR240

The Court having considered the Petition for leave to appeal and being fully advised of the premises, the Petition for leave to appeal is DENIED.

As Clerk of the Supreme Court of the State of Illinois and keeper of the records, files and Seal thereof, I certify that the foregoing is a true copy of the final order entered in this case.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed the Seal of said Court, this second day of January, 2014.

*Carolyn Toft Gosboll*

Clerk,
Supreme Court of the State of Illinois