SCHEDULE "2"

**SAMPLE ALLEGATIONS/CAUSES OF ACTION
IN IGNITION SWITCH COMPLAINTS[1]**

| <u>Lead Plaintiff</u> | <u>Allegations</u> |
|---|---|
| Ashbridge | "In addition to the liability arising out of the statutory obligations assumed by GM, it is also subject to successor liability for the deceptive and unfair acts and omissions of Old GM because, as described below, Defendant has continued the business enterprise of Old GM with full knowledge of the ignition switch defects. In light of this continuing course of business, GM and Old GM together will be referred to as 'GM' hereafter, unless noted otherwise." Compl., ¶ 8. |
| | Alleging Named Plaintiffs own a 2003 Saturn ION, purchased in 2002, and that Plaintiff would not have purchased the vehicle if she knew about the defect. Compl., ¶ 15. |
| | "Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the Vehicles' ignition switch defects, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged herein." Compl., ¶ 114. |
| | A few of the Class questions are: (i) "Whether Defendants were negligent in the design, manufacturing, and distribution of the Vehicles" (Compl., ¶ 119(c)); (ii) "Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed defectively designed Vehicles into the stream of commerce in the United States" (Compl., ¶ 119(d)); and (iii) "Whether Class members overpaid for their Vehicles as a result of the defects alleged herein (Compl., ¶ 119(h)). |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the Class to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 131. |
| | "GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(6). The Vehicles' implied warranties are covered under 15 U.S.C. §2301(7)." Compl., ¶ 164. |
| | "GM breached these express and implied warranties as described in more detail above . . . ." Compl., ¶ 165. |
| Ashworth | "Defendant, GM and its predecessor [footnote omitted], manufactured and distributed the [subject] vehicles [various models from 2003 through 2007] during the class period . . . ." Compl., ¶ 2. |

---

[1]   Due to space limitations and the ever increasing number of Ignition Switch Actions, this chart contains only a *sample* of statements, allegations and/or causes of action contained in certain complaints filed in the Ignition Switch Actions. This chart does *not* contain *all* statements, allegations and/or causes of action that New GM believes violates the provisions of the Court's Sale Order and Injunction and the MSPA.

| | |
|---|---|
| | "GM and its predecessor marketed, warranted and sold the Class Models as safe and reliable." Compl., ¶ 3. |
| | There are well over 50 individuals identified in the Complaint, all of whom either purchased or leased a vehicle that was designed and manufactured by Old GM prior to the closing of the 363 Sale, and an allegation that they would not have purchased or leased the vehicle if they knew about the defect. |
| | "GM is liable through successor liability for the deceptive and unfair acts and omissions of GM Corp., as alleged in the Compliant." Compl., ¶ 469. |
| | Alleging that GM breached express warranties. Compl., ¶¶ 513-14. |
| | Asserting causes of Action for breach of contract and breach of warranty. Compl., ¶ 519-523. |
| Balls | Alleging Named Plaintiffs own a 2007 Saturn ION and that Plaintiffs would not have purchased the vehicle if they knew about the defect. Compl., ¶ 31. |
| | Discussing Old GM's promotion and marketing of vehicles. Compl., ¶¶ 80-87. |
| | Asserting that New GM "has successor liability for Old GM's acts and omissions in the marketing and sale of the Subject Vehicles . . . ." Compl., ¶ 96; *see also* Compl., ¶ 145. |
| | Asserting that the "sale of the Subject Vehicles to Plaintiffs and the Class occurred within 'trade and commerce' within the meaning of" the Michigan Consumer Protection Act ("**MCPA**"). Compl., ¶ 115. |
| | Alleging numerous violations of the MCPA by Old GM. *See* Compl., ¶¶ 119-123. |
| | Alleging a breach of an express warranty. *See* Compl., ¶¶ 137-141. |
| Bedford | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., 12; *see also* Compl., ¶¶ 34, 86, 97(j). |
| | Allegations that Old GM promoted the Defective Vehicles as safe and reliable, referring to advertisements from 2001, 2003 and 2006. Compl., ¶¶ 70-75. |
| | Count II concerns a "breach of implied warranty," and Count III concerns a "breach of implied warranty of fitness for a particular purpose." |
| Benton[2] | Asserting that if Plaintiff and others knew about the defect, she would not have purchased the vehicle (a 2005 Chevy Cobalt). Compl., ¶ 31. |
| | Asserting that "GM is liable through successor liability for deceptive and unfair acts and omissions of Old GM, as alleged in the Compliant." Compl., ¶ 35; *see also* Compl., ¶ 88. One of the Class questions is "[w]hether, and to what extent, GM has successor liability for the acts and omissions of Old GM." Compl., ¶ 100(i). |

---

[2]   The *Ratzlaff* Action was commenced by the same attorneys as those that commenced the *Benton* Action, and the complaints are very similar.

| | |
|---|---|
| Brandt | Discussing "implied terms of sale" (Compl., ¶ 35) and referencing "advertising and marketing materials emphasizing the safety quality of its vehicles" (Compl., ¶ 36).<br><br>Stating "GM knew at the time they sold the vehicles to the Plaintiffs that such vehicles would be used for" a specific purpose. Compl., ¶ 48. |
| Brown | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 15; *see also* Compl., ¶ 104.<br><br>Alleging that in connection with their purchase of a 2006 HHR, the Named Plaintiffs "saw advertisements for Old GM vehicles before they purchased the HHR. Plaintiffs do recall that safety and quality were consistent themes in the advertisements they saw. These representations about safety and quality influenced Plaintiffs' decision to purchase the HHR." Compl., ¶ 35.<br><br>"Had Old GM and/or Defendant disclosed the ignition switch defects, Plaintiffs would not have purchased the HHR, or would have paid less than they did, and would not have retained the vehicle." Compl., ¶ 35.<br><br>A Class question is "whether Defendant is liable for a design defect." Compl., ¶ 114(f).<br><br>"At all times relevant, Defendant sold, marketed, advertised, distributed, and otherwise placed Defective Vehicles into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public." Compl., ¶ 143.<br><br>The Fifth Cause of Action is premised on a design defect theory.<br><br>"As a direct and proximate result of Defendant's breach of written warranties, Plaintiffs and Class members sustained damages and other losses." Compl., ¶ 171.<br><br>"Defendant breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing the ignition switch defects." Compl., ¶ 182. |
| Burton | Alleging that the Named Plaintiff's 2007 Saturn Ion was "manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl., ¶ 17.<br><br>"At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 22.<br><br>Two Class questions are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle" (Compl., ¶ 106 (c)), (ii) "whether the Class Vehicles were unfit for the ordinary purposes for which they were used, in violation of the implied warranty of merchantability" (Compl., ¶ 106 (j)). |

| | |
|---|---|
| | "In furtherance of its scheme to defraud, GM's February 28, 2005 Service Bulletin was issued in furtherance of its scheme to defraud." Compl., ¶ 123. |
| | "In June of 2005, GM issued a public statement through the mail and wires in furtherance of its scheme to defraud." Compl., ¶ 124. |
| | "Defendants intended that Plaintiff and Class Members rely on their misrepresentations and omissions, so that Plaintiff and other Class Members would purchase or lease the Class Vehicles." Compl., ¶ 140(h). |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 149. |
| | "GM breached its implied warranty of merchantability to Plaintiff and the Nationwide, Multi-State and Oklahoma Class because the Class Vehicles were not fit for the ordinary purposes for which they are used - a safe passenger motor vehicle." Compl., ¶ 164. |
| | The Fifth Claim for Relief is based on a "breach of implied warranty." |
| Camlan | Class questions include: (i) "whether and to what extent GM breached its express warranties relating to the safety and quality of its vehicles" (Compl., ¶ 32(b)), and (ii) "whether and to what extent GM breached any implied warranties relating to the safety and quality of its vehicles (Compl., ¶ 32(c)). |
| | Allegations that New GM is liable to Plaintiffs on a successor liability theory. Compl., ¶¶ 121-125. |
| | Allegation that New GM's "business practices include, without limitation: (a) Selling to Plaintiffs and the Class vehicles which contain defects or design flaws which make them inherently more dangerous than other similar vehicles . . . ." Compl., ¶ 135(a). |
| | "Defendant engaged in the advertising and the failure to disclose the defects and design flaws in its products herein alleged with the intent to induce Plaintiffs and the Class to purchase Defendant's products." Compl., ¶ 147. |
| Coleman | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 12; *see also* Compl., ¶84. |
| | Alleging that in connection with her purchase of a 2007 Pontiac G5, the Named Plaintiff "saw advertisements for Old GM vehicles before she purchased the G5, and, although she does recall the specifics of the advertisements, she does recall that safety and quality were consistent themes across the advertisements she saw. These representations about safety and quality influenced Plaintiff's decision to purchase the G5.." Compl., ¶ 30. |
| | "Had Old GM disclosed the ignition switch defects, Plaintiff would not have purchased her G5, or would have paid less than she did, and would not have retained the vehicle." |

| | |
|---|---|
| | Compl., ¶ 30. |
| | Allegations that Old GM promoted the Defective Vehicles as safe and reliable, referring to advertisements from 2001, 2003 and 2006.  Compl., ¶¶ 70-75. |
| | Three Class questions are (i) "Whether GM's practices in connection with the promotion, marketing, advertising, packaging, labeling and sale of the Defective Vehicles unjustly enriched GM at the expense of, and to the detriment of, Plaintiffs and the other members of the Class" (Compl., ¶ 94(i)); (ii) "Whether GM breached implied warranties in its sale and lease of the Defective Vehicles, thereby causing harm to Plaintiffs and the other members of the Class" (Compl., ¶ 94(j)); and (iii) "Whether, and to what extent, GM has successor liability for the acts and omissions of Old GM" (Compl., ¶ 94(m)). |
| | "GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Defective Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7). MG [sic] breached these warranties as described in more detail above."  Compl., ¶¶ 107-108. |
| | "The sale of the Defective Vehicles to Plaintiffs and the Class occurred within 'trade and commerce' within the meaning of" the MCPA.  Compl., ¶ 116. |
| | "While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007."  Compl., ¶ 123. |
| | Count IV concerns a breach of implied warranty. |
| Cox | Old GM and New GM "are the alter-egos of one another and [Old GM] exercised decision-making and control over [New GM] with respect to the conduct giving rise to Plaintiffs' claims."  Compl., ¶ 6. |
| | "Because GM is a mere continuation of Old GM, GM has successor liability for the conduct of Old GM as alleged herein."  Compl., 15. |
| | A Class question is "whether GM has successor liability for the acts of Old GM." Compl., ¶ 92(p). |
| | A cause of action asserts a breach of express warranty.  Compl., ¶¶124-127 |
| Darby | Alleging Named Plaintiff owns a 2006 Chevy HHR and that Plaintiff would not have purchased the vehicle if he knew about the defect.  Compl., ¶ 15. |
| | "Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the Vehicles' ignition switch defects, GM is liable through successor liability for deceptive and unfair acts and omissions of Old GM, as alleged herein."  Compl., ¶ 114. |
| | Class questions include (i) "[w]hether GM was negligent in the design, manufacturing, and distribution of the Vehicles" (Compl., ¶ 119(c)); and (ii) "[w]hether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed defectively designed Vehicles into the stream of commerce in the United States" (Compl., ¶ 119(d)). |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in |

| | |
|---|---|
| | part, with the intend to induce Plaintiff and the Class to purchase Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 131 |
| DeLuco | The Named Plaintiff purchased a new 2006 Saturn Ion in 2006 after seeing advertisements for G.M. vehicles . . . and, although she does not recall the specifics of the advertisements, she recalls that safety and quality were consistent themes across the advertisements she saw before making the purchase of her 2006 Saturn Ion. She also recalls seeing promotional materials about the Saturn at the dealership where she purchased her 2006 Saturn Ion and spoke with Saturn salespeople who told her that the Saturn Ion was one of the safest vehicles in its class." Compl., ¶¶ 11-12. <br><br> "Because G.M. acquired and operated Old G.M. and ran it as a continuing business enterprise, and because G.M. was aware from its inception of the ignition switch defects in the Defective Vehicles G.M. is liable through successor liability for the deceptive and unfair acts and omissions of Old G.M., as alleged in this Complaint." Compl., ¶ 17; *see also* Compl., ¶¶ 56, 80, 89, 107, 124. <br><br> Two Class questions are: (i) "Whether G.M. and its predecessor breached its applicable warranties" and (ii) "Whether G.M. bears successor liability for Defective Vehicles that Class Members purchased or leased before July 10, 2009, the date G.M. acquired substantially all of the assets of its predecessor." Compl., ¶ 65. <br><br> "As more fully described above, G.M. breached its express and implied warranties to Plaintiff and the members of the Class . . . ." Compl., ¶ 78. <br><br> "Old G.M. and G.M. caused to be made or disseminated in New York, through advertising, marketing and other publications, statements regarding the quality, safety and reliability of the Defective Vehicles that were untrue or misleading." Compl., ¶ 120 |
| DePalma | "This case arises from GM's breach of express warranties, as well as its obligations and duties, including GM's failure to disclose . . . ." Compl., ¶ 8. <br><br> "Plaintiffs and the Class were also damaged by the acts and omissions of Old GM for which GM is liable through successor liability because the defective Vehicles they purchased are worth less than they would have been without the ignition switch defect." Compl., ¶ 19. <br><br> Allegations that Old GM promoted the Defective Vehicles as safe and reliable, referring to advertisements from 2001, 2003 and 2006. Compl., ¶¶ 74-77. <br><br> Allegations that "GM has successor liability for Old GM's acts and omissions in the marketing and sale of" the vehicles "because it continued the business enterprise of Old GM . . . ." Compl., ¶ 91. <br><br> "Concealment of the known ignition switch defects at the time of sale denied the Class an opportunity to refuse delivery of the Defective Vehicles." Compl., ¶ 123. <br><br> Count IV asserts a breach of implied warranty of merchantability, and Counts VI and VII assert breaches of express warranty. |

| DeSutter | Alleging Named Plaintiffs own a 2006 Saturn Ion or a 2006 Chevrolet Cobalt, each purchased new, and that Plaintiffs would not have purchased the vehicles if he knew about the defect. Compl., ¶ 12. |
|---|---|
| | GM is also liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint, because GM acquired and operated Old GM and ran it as a continuing business enterprise, utilizing substantially the same brand names, logos, plants, offices, leadership, personnel, engineers, and employees, GM was aware from its inception of the Ignition Switch Defect and Power Steering Defect in the Defective Vehicles, and GM and Old GM concealed both Defects from the public, regulators, and the bankruptcy court. Because GM is liable for the wrongful conduct of Old GM, there is no need to distinguish between the conduct of Old GM and GM, and the complaint will hereinafter simply refer to GM as the corporate actor when describing the relevant facts." Compl., ¶ 16. |
| | "GM intended for Plaintiffs, Class Members, the public, and the government to rely on its misrepresentations and omissions, so that Plaintiffs and Class Members would purchase or lease the Defective Vehicles." Compl., ¶ 67(e); *see also* Compl., ¶ 89(e). |
| | "GM actively concealed and/or suppressed these material facts, in whole or in part, to induce Plaintiffs and Class Members to purchase or lease the Defective Vehicles at high prices, and to protect its profits and avoid a costly recall, and it did so at the expense of Plaintiffs and the Class." Compl., ¶ 78. |
| Deushane | "Through advertising, marketing, and other publications, GM caused statements to be disseminated that were untrue or misleading . . . ." Compl., ¶ 31. |
| | "Had Plaintiff and the other California Sub Class members known this, they would not have purchased or leased their Defective Cobalts and/or paid as much for them." Compl., ¶ 34. |
| | "GM made express warranties to Plaintiff" (Compl., ¶ 44), the "Defective Cobalts are covered by GM's express warranties" (Compl., ¶ 46), and "GM breach[ed] its express warranties . . . . (Compl., ¶ 47). |
| | Asserting that "GM is a 'manufacturer' of the Defective Vehicles" (Compl., ¶ 54) and that "GM impliedly warranted" to Plaintiff and the Class that the vehicles were "merchantable" (Compl., ¶ 55). |
| Deighan | "In addition to the liability arising out of the statutory obligations assumed by GM, it is also subject to successor liability for the deceptive and unfair acts and omissions of Old GM because, as described below, Defendant has continued the business enterprise of Old GM with full knowledge of the ignition switch defects. In light of this continuing course of business, GM and Old GM together will be referred to as 'GM' hereafter, unless noted otherwise." Compl., ¶ 8. |
| | "Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the Vehicles' ignition switch defects, GM is liable through successor liability for the deceptive and unfair acts and |

| | |
|---|---|
| | omissions of Old GM, as alleged herein." Compl., ¶ 114. |
| Forbes | "Plaintiff and the Class either paid more for the Defective Vehicles than they would have had they known of the ignition switch defects, or they would not have purchased the Defective Vehicles at all had they known of the defects." Compl., ¶ 34. |
| | "GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it continued the business enterprise of Old GM, for the following reasons . . ." Compl., ¶ 36. |
| Foster | Alleging that the Named Plaintiff's 2006 Chevrolet Cobalt was "manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl., ¶ 17. |
| | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 22. |
| | Two Class questions are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle" (Compl., ¶ 104 (c)), (ii) "whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability" (Compl., ¶ 106 (h)). |
| | "Defendants intended that Plaintiff and Class Members rely on their misrepresentations and omissions, so that Plaintiff and other Class Members would purchase or lease the Class Vehicles." Compl., ¶ 116(h). |
| | "GM is liable to Plaintiff and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(1), because it breached the implied warranty of merchantability." Compl., ¶ 127. |
| | "GM breached its implied warranty of merchantability to Plaintiff and the Nationwide, Class because the Class Vehicles were not fit for the ordinary purposes for which they are used – namely a safe passenger motor vehicle." Compl., ¶ 128. |
| | The Third Claim for Relief is based on a "breach of implied warranties" and the Sixth Claim for Relief is based on a "tortious breach of warranty." |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 153. |
| | "Defendants violated the CSPA when they represented, through advertising, warranties, and other express representations, that the Class Vehicles had characteristics and benefits that they did not actually have." Compl., ¶ 163. |
| | "Defendants failed to use appropriate design, engineering, and parts in manufacturing the Class Vehicles, and in other respects, Defendants breached its duties by being wantonly reckless, careless, and negligent." Compl., ¶ 185. |

| Groman | Referencing a 2008 Chevrolet HHR, "Groman saw advertisements for G .M. vehicles before he purchased the car and . . . safety and quality were consistent themes across the advertisements . . . . These representations about safety and quality influenced Groman's decision to purchase the 2008 Chevrolet HHR. . . . Had G.M. disclosed the ignition switch defects , he would not have purchased the vehicle and would not have paid as much for it." Compl., ¶ 12. |
|---|---|
| | "G.M. actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and the other members of the Class to purchase Defective Vehicles at a higher price for the Defective Vehicles.  Compl., ¶ 98. |
| | "Plaintiff and the other members of the Class reasonably relied on G.M.'s statements in its marketing and advertising that the Defective Vehicles were safe, and would not have purchased or leased the Defective Vehicles had they known of the defects in the ignition switches, or would not have paid as much as they did." Compl., ¶ 100, 129. |
| | "Old G.M. and G.M. caused to be made or disseminated . . . through advertising, marketing and other publications, statements regarding the quality, safety and reliability of the Defective Vehicles that were untrue or misleading."  Compl., ¶ 124. |
| | With respect to the breach of express warranty of merchantability count, "at the time that Old G.M. and G.M. warranted, sold and leased the Defective Vehicles, it knew that the Defective Vehicles did not conform to the warranties and were inherently defective, and wrongfully and fraudulently misrepresented and/or concealed material facts regarding the Defective Vehicles." Compl., ¶ 142. |
| | "G.M. has successor liability for Old G.M.'s acts and omissions in the marketing and sale of the Defective Vehicles during the Class Period because G.M. has continued the business enterprise of Old G.M., for the following reasons . . ."  Compl., ¶ 60. |
| Grumet | Referencing the Saturn Ion and a 2007 advertisement that the car was "safe and sound", "G.M. knew this flaw existed from the moment the car hit dealers' floors . . . ." Compl., ¶ 45. |
| | G.M. breached its express and implied warranties . . . by, among other things: selling and/or leasing the Defective Vehicles in an unmerchantable condition; selling and/or leasing the Defective Vehicles when they were not fit for the ordinary purposes for which vehicles are used, and which were not fully operational, safe or reliable." Compl., ¶ 88. |
| | "Plaintiffs and the other members of the Class reasonably relied on G.M.'s statements in its marketing and advertising that the Defective Vehicles were safe, and would not have purchased or leased the Defective Vehicles had they known of the defects in the ignition switches, or would not have paid as much as they did." Compl., ¶ 106, 139. |
| | Referencing the express warranty of merchantability, "[t]he Defective Vehicles are covered by Old G.M.'s and G.M.'s express warranties."  Compl., ¶ 152. |

|  | |
|---|---|
|  | "Old G.M. and G.M. breached the implied warranty of merchantability by manufacturing and selling the Defective Vehicles with defective ignition switch systems." Compl., ¶ 168. <br><br> "G.M. has successor liability for Old G.M.'s acts and omissions in the marketing and sale of the Defective Vehicles during the Class Period because G.M. has continued the business enterprise of Old G.M., for the following reasons . . ." Compl., ¶ 65. |
| Hamid | "Had Plaintiff known of the ignition problem, he would not have purchased his Cobalt or, at a minimum, would have paid less than he did." Compl., ¶ 10. <br><br> With respect to consumer protection act count, "GM had a statutory duty to refrain from misleading and confusing unfair or deceptive acts in the manufacture, marketing and/or sale or leasing of the recalled vehicles . . . ." Compl., ¶ 16. <br><br> "GM expressly warranted that the recalled vehicles were safe and were merchantable and fit for use for particular purposes at the time of purchase and sale." Compl., ¶ 21. <br><br> "GM implicitly warranted that the recalled vehicles were safe and were merchantable and fit for use for particular purposes at the time of purchase and sale." Compl., ¶ 26. |
| Henry | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 12; *see also* Compl., ¶ 86. <br><br> Alleging Named Plaintiffs own a 2004 Saturn Ion and a 2005 Chevrolet Cobalt and that Plaintiffs would not have purchased their vehicle if they knew about the defect. Compl., ¶¶ 30, 31. <br><br> Alleging that Old GM promoted the Defective Vehicles as safe and reliable. Compl., ¶¶ 71-75. <br><br> Two Class questions are: (i) "Whether GM's practices in connection with the promotion, marketing, advertising, packaging, labeling and sale of the Defective Vehicles unjustly enriched GM at the expense of, and to the detriment of, Plaintiffs and the other members of the Class" (Compl., ¶ 97(i)), and (ii) "Whether GM breached implied warranties in its sale and lease of the Defective Vehicles, thereby causing harm to Plaintiffs and the other members of the Class" (Compl., ¶ 97(j)). <br><br> Count IV concerns breach of implied warranty. |
| Heuler | Alleging Named Plaintiff owns a 2006 Chevy Cobalt and that Plaintiffs would not have purchased the vehicle if they knew about the defect. Compl., ¶ 31. <br><br> "GM is liable through successor liability for the deceptive and unfair acts and omissions of GM Corp., as alleged in the Compliant." Compl., ¶ 35; *see also* Compl., ¶ 87. One of the Class questions is "[w]hether, and to what extent, GM has successor liability for the acts and omissions of Old GM." Compl., ¶ 99(k). |

| | |
|---|---|
| | Alleging that Old GM promoted the Defective Vehicles as safe and reliable.  Compl., ¶¶ 70-75 |
| Hurst | "On information and belief, in marketing and advertising materials, Old GM consistently promoted the Defective Vehicles as safe and reliable."  Compl., ¶ 39. |
| | "Purchasers and lessees paid more for the Defective Vehicles, through a higher purchase price or higher lease payments, than they would have had the ignition switch defects been disclosed, or they would not have purchased or leased the vehicle at all had they known the truth."  Compl., ¶ 51. |
| | "Old GM and Defendant's nondisclosure about safety considerations of the Defective Vehicles while selling and advertising the products were material."  Compl., ¶ 92. |
| | "GM has successor liability for Old GM's acts and omissions in the marketing and sale of the Defective Vehicles because it has continued the business enterprise of Old GM . . ."  Compl., ¶ 62. |
| Jawad | In the negligence count, stating "GM designed, manufactured, tested, inspected, marketed, labeled and sold the Defective Vehicles . . . ." Compl., ¶ 30. |
| | "GM owed Plaintiff a duty of care in the design, manufacture, testing, inspecting, marketing, labeling and sale of its product." Compl., ¶ 31. |
| | "The Defective GM Vehicles was [sic] defective at the time it left GM's control . . . . Compl., ¶ 37. |
| | "GM breached its implied warranty in the design of the Defective GM Vehicles . . . . Compl., ¶ 41. |
| | "GM breached its implied warranty in the manufacturing of Defective GM Vehicles . . . ." Compl., ¶ 42. |
| | "An implied term of the sale . . . ."  Compl., ¶ 53. |
| | "GM knew at the time they sold the vehicles to the Plaintiffs that such vehicles would be used for" a specific purpose.  Compl., ¶ 59. |

| Jones | Asserting that if Plaintiff and others knew about the defect, she would not have purchased the vehicle (a 2006 Saturn Ion).  Compl., ¶ 10. |
|---|---|
| | Referencing advertisements and promotion of the vehicles at issue which, according to the complaint were all manufactured prior to the closing of the 363 Sale.  Compl., ¶¶ 2, 11. |
| | An advertisement for a 2006 Saturn Ion was attached to the Complaint as Exhibit "B." Plaintiff also references advertisements from 2003 through 2007.  Compl., ¶ 29. |
| | Allegations that "GM has successor liability for GM Corp.'s acts and omissions in the marketing and sale of" the vehicles.  Compl., ¶ 77. |
| | A question common to the class is "[w]hether GM and its predecessor breached its express or implied warranties." Compl., ¶ 87; *see also* ¶¶ 97, 101-106 (breach of express warranty),  107-166 (breach of contract and implied warranty). |
| | Alleging that Defendant "engaged in unfair competition or unfair, unconscionable, deceptive, or fraudulent acts or practices with respect to the sale of" the vehicles in violation of statutes in numerous States.  Compl., ¶¶ 132-177. |
| Letterio | "In addition to the liability arising out of the statutory obligations assumed by GM, it is also subject to successor liability for the deceptive and unfair acts and omissions of Old GM because, as described below, Defendant has continued the business enterprise of Old GM with full knowledge of the ignition switch defects. In light of this continuing course of business, GM and Old GM together will be referred to as "GM" hereafter, unless noted otherwise."  Compl., ¶ 8; *see also* Compl., ¶ 114. |
| | "GM designed, manufactured, marketed, advertised, and warranted that all of its Vehicles were safe and reliable and fit for the ordinary purpose such Vehicles are used for, and were free from defects in materials and workmanship." Compl., ¶ 11. |
| | Named Plaintiff purchased a new 2007 Pontiac Solstice on November 30, 2007, and asserts that had "Defendants disclosed the ignition switch defect, Plaintiff would not have purchased her 2007 Pontiac Solstice." Compl., ¶ 15. |
| | A Class question includes "[w]hether Defendants were negligent in the design, manufacturing, and distribution of the Vehicles." Compl., ¶ 119(c). |
| | "Such misconduct materially affected the purchasing decisions of Plaintiff and the members of the Pennsylvania Subclass as Plaintiff and the Pennsylvania Subclass relied on Defendants' misstatements and omissions regarding the Vehicles' safety and/or reliability when purchasing or leasing the Vehicles." Compl., ¶ 156. |
| | "GM breached these express and implied warranties as described in more detail above . . . ." Compl., ¶ 165. |
| Leval | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the |

| | |
|---|---|
| | ignition switch defects." Compl., ¶ 12, *see also* Compl., ¶¶ 33, 84. |
| | The Named Plaintiff owns a 2007 Chevy HHR which was purchased "in part because she [sic] wanted a safely designed and manufactured vehicle. Plaintiff saw advertisements for Old GM vehicles before he purchased the HHR . . . ." Compl., ¶ 30. |
| | "Had Old GM disclosed the ignition switch defects, Plaintiff would not have purchased his HHR, or would have paid less than he did, and would not have retained the vehicle." Compl., ¶ 30. |
| | Allegations that Old GM promoted the Defective Vehicles as safe and reliable, referring to advertisements from 2001, 2003 and 2006. Compl., ¶¶ 70-75. |
| | A Class question is "[w]hether GM breached implied warranties in its sale and lease of the Defective Vehicles, thereby causing harm to Plaintiffs and the other members of the Class." Compl., ¶ 94(j). |
| | GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Defective Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7). GM breached these warranties as described in more detail above." Compl., ¶¶ 107-108. |
| | "While Old GM knew of the ignition switch defects by 2001, it continued to design, manufacture, and market the Defective Vehicles until 2007." Compl., ¶ 123. |
| | Count IV is based on a "breach of implied warranty." |
| | "Defendants, as manufacturer of the defective vehicle, are responsible for damages caused by the failure of its product to conform to well-defined standards." Compl., ¶ 148. |
| | "The vehicle as sold and promoted by Defendants possessed a redhibitory defect because it was not manufactured and marketed in accordance with industry standards and/or was unreasonably dangerous as described above, which rendered the vehicle useless or its use so inconvenient that it must presumed that a buyer would not have bought the vehicle had she known of the defect." Compl., ¶ 151. |
| Lewis | Plaintiffs 2007 Chevrolet HHR "was manufactured, sold, distributed, advertised, marketed, and warranted by GM . . . ." Compl., ¶ 12. |
| | "At all relevant times herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 18. |
| | A Class question is "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle." Compl., ¶ 87(c). |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase Class Vehicles at |

| | |
|---|---|
| | a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 107. |
| Maciel | Certain of the Named Plaintiffs purchased a subject vehicle prior to the closing of the 363 Sale, and assert that they would not have purchased the vehicle if they knew about the defect. See, e.g., Compl., ¶¶ 23, 36, 48. |
| | "GM, which is the successor GM entity resulting from the GM chapter 11 bankruptcy proceeding, contractually assumed liability for the claims in this lawsuit and "is liable under theories of successor liability in addition to, or in the alternative to, other bases of liability." Compl., ¶¶ 70, 80. |
| | "[N]ew GM, the Defendant here, is the owner of all 'vehicles' and 'finished goods' (such as cars) of old GM, 'wherever [they are] located,' and including any such vehicles or finished goods in the 'possession of' 'customers.'" Compl., ¶ 74. |
| | Allegations regarding breaches of express warranties. See, e.g., Compl., ¶¶ 212, 213. |
| | "By failing to disclose these material facts, GM intended to induce Plaintiffs and other Class members to purchase or lease the Defective Vehicles." Compl., ¶ 223. |
| Malaga | Referencing the 2006 Chevrolet Cobalt, ". . . Plaintiff bought a dangerous vehicle that was not of the quality that was advertised. . . . If GM had disclosed the nature and extent of its problems, Plaintiff would not have purchased a vehicle from GM, or would not have purchased that the vehicle for the price paid." Compl., ¶ 18, 21. |
| | "In leasing and/or purchasing the vehicles . . . Plaintiffs and the Class . . . reasonably believed and/or depended on the material false and/or misleading information . . . with respect to the safety and quality of the vehicles manufactured and sold by Defendant. . . . Defendant induced Plaintiffs and the Class to purchase the Defective Vehicles . . ." Compl., ¶ 136. |
| | "Defendant engaged in the advertising and the failure to disclose the defects and design flaws in its products herein alleged with the intent to induce Plaintiffs and the Class to purchase Defendant's products." Compl., ¶ 142. |
| | "Plaintiffs and the Class were exposed to Defendant's advertising and its false and misleading statements and were affected by the advertising in that Plaintiffs and the Class believed it to be true and/or relied on it when making purchasing decisions." Compl., ¶ 145. |
| | "At the time of the sale, Defendant had knowledge of the purpose for which its products were purchased and impliedly warranted the same to be, in all respects, fit and proper for this purpose." Compl., ¶ 167. |
| | With respect to the negligence count, "[d]efendant breached that duty by designing, manufacturing, and selling products to Plaintiffs and the Class that had a serious ignition switch defect without disclosing . . ." Compl., ¶ 187. |
| | "GM also has successor liability for GM Corporation's acts and omissions in the marketing and sale of the Defective Vehicles . . ." Compl., ¶ 117. |

| | |
|---|---|
| Mazzocchi | Named Plaintiff's vehicle is a 2003 Saturn Ion which "was manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl., ¶ 17. |
| | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 21. |
| | Two Class question are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle" (Compl., ¶ 110(c)), and (ii) "whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability" (Compl., ¶ 110(i)). |
| | "In furtherance of its scheme to defraud, GM issued the February 28, 2005 Service Bulletin. It instructed GM's dealers to disseminate false and misleading information about the dangerous and defective condition of the Defective Vehicles to customers, including Plaintiff and other members of the Class." Compl., ¶ 127. |
| | "In June of 2005, GM issued a public statement through the mail and wires in furtherance of its scheme to defraud." Compl., ¶ 128. |
| | "GM is liable to Plaintiffs and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(l), because it breached the implied warranty of merchantability." Compl., ¶ 155. |
| | "GM breached its implied warranty of merchantability to Plaintiffs and the Nationwide Class because the Class Vehicles were not fit for the ordinary purposes for which they are used~namely, as a safe passenger motor vehicle." Compl., ¶ 156. |
| | The Fourth Claim for Relief is based on a "breach of implied warranty." |
| McCarthy | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 20. |
| | Two Class questions are: (i) "whether the defective nature of the Class Vehicles constitutes a material fact reasonable consumers would have considered in deciding whether to purchase a GM Vehicle" (Compl., ¶ 100(c)), and (ii) "whether GM concealment of the true defective nature of the Class Vehicles induced Plaintiff and Class Members to act to their detriment by purchasing the Vehicles" (Compl., ¶ 100(f)). |
| | "Defendants designed, manufactured, sold and distributed the Class Vehicles which Defendants placed into the stream of commerce. Under Louisiana law, the seller warrants the buyer against redhibitory defects, or vices, in the thing sold. La. C.C. art. 2520." Compl., ¶ 108. |

|  | |
|---|---|
|  | Allegations that GM breached the implied warranty of merchantability." Compl., ¶¶ 117-121.<br><br>The Third Claim for Relief is based on a "breach of implied warranties of merchantability and fitness," and the Fourth Claim for Relief is based on a "breach of warranty of fitness for ordinary use." |
| McConnell | "GM . . . has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defect." Compl., ¶ 12; *see also* Compl., ¶ 87.<br><br>With reference to a 2007 Saturn Ion Coupe, "Plaintiff saw advertisements for Old GM vehicles before she purchased the Saturn" and would not have purchased it if she knew about the defect. Compl., ¶ 31.<br><br>"On information and belief, in marketing and advertising materials, Old GM consistently promoted the Defective Vehicles as safe and reliable." Compl., ¶ 70.<br><br>Referencing the "sale of the Defective Vehicle" in the cause of action alleging violations of the Michigan Consumer Protection Act. Compl., ¶ 108. |
| Phillip | "[H]ad Old GM or GM disclosed the ignition switch defects and safety risks presented sooner . . . Plaintiffs and members of the Class . . . would not have purchased the vehicles they did; would have paid less than they did. . ." Compl., ¶ 26.<br><br>"Although it had actual knowledge of the ignition switch defects that it was concealing, Old GM continued to sell hundreds of thousands of Defective Vehicles . . ." Compl., ¶ 80.<br><br>"GM and Old GM also expressly warranted through statements and advertisements that the Defective Vehicles were of high quality, and at a minimum, would actually work properly and safety." Compl., ¶ 292.<br><br>"Contrary to the applicable implied warranties, Old GM's and GM's Defective Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose." Compl., ¶ 319.<br><br>"GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 11.<br><br>"Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability . . . ." Compl., ¶ 50. |
| Ponce | The Named Plaintiff purchased a 2007 Chevrolet HHR in "2007 or 2008" and, based on Chevrolet's reputation, representations and advertising," he alleges that had "he known about the defect, he would not have purchased this vehicle, would not have paid a premium price, and would not have retained the vehicle." Compl., ¶ 9; *see also* Compl., ¶¶ 35-36, 40. |

| | |
|---|---|
| | "GM is liable for both its own acts and omissions, and the acts and omissions of Old GM, as alleged in the Complaint."  Compl., ¶ 14. |
| | Class questions include:  (i) Whether Defendant's practices and representations made in connection with the labeling, advertising, marketing, promotion and sale of the Subject Vehicles" violated certain statutes.  Compl., ¶¶ 46(e), 46(f) |
| | Count one asserts a breach of express and implied warranties with respect to the Subject Vehicles (which are various models manufactured from 2003 through 2007).   *See* Compl., ¶¶ 56-62. |
| Ramirez | "Defendants intended that Plaintiffs and Class Members rely on their misrepresentations and omissions, so that Plaintiffs and other Class Members would purchase or lease the Class Vehicles . . ."  Compl., ¶ 110(h). |
| | Defendant engaged in deceptive business practices in violation of California's Consumer Legal Remedies Act by, among other things, "advertising Class Vehicles with the intent not to sell or lease them as advertised . . ."  Compl., ¶ 147(c). |
| | "Had Plaintiff and other Class Members known that the Class Vehicles had the Ignition Switch Defect, they would not have purchased a Class Vehicle."  Compl., ¶ 150(f). |
| | "Defendants made express warranties to Plaintiffs and Class Members both in its warranty manual and advertising . . ."  Compl., ¶ 190. |
| | Defendants allegedly violated the Maryland Consumer Protection Act "when it falsely represented, throughout its advertising, warranties and other express representations, that the Class Vehicles were of certain quality or standard when they were not."  Compl., ¶ 210. |
| | Mentions that New GM expressly assumed certain liabilities, including statutory requirements, citing the MSA.  *See* Compl., ¶ 27. |
| | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States."  Compl., ¶ 29. |
| Roach | "In addition to the liability arising out of the statutory obligations assumed by GM, it is also subject to successor liability for the deceptive and unfair acts and omissions of Old GM because, as described below, Defendant has continued the business enterprise of Old GM with full knowledge of the ignition switch defects. In light of this continuing course of business, GM and Old GM together will be referred to as "GM" hereafter, unless noted otherwise."  Compl., ¶ 8; *see also* Compl., ¶ 114. |
| | "Had Defendants disclosed the ignition switch defect, Plaintiff would not have purchased his 2008 Chevy Malibu LS."  Compl., ¶ 15. |
| | Two Class Questions are (i) "Whether Defendants were negligent in the design, manufacturing, and distribution of the Vehicles" (Compl., ¶ 119(c)), and (ii) "Whether |

|  | |
|--|--|
| | Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed defectively designed Vehicles into the stream of commerce in the United States" (Compl., ¶ 119(d)). <br><br> "A reasonable consumer with knowledge of the defective nature of the defective GM Models ignition switch would not have purchased the defective GM Models equipped with a defective ignition switch or would have paid less for them." Compl., ¶ 158. <br><br> "GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §2301(6). The Vehicles' implied warranties are covered under 15 U.S.C. §2301(7). GM breached these express and implied warranties as described in more detail above . . . ." Compl., ¶ 169-170. |
| Robinson | Referencing alleged violation of the California False Advertising Law, "Defendants caused to be made or disseminated to consumers throughout California and the United States, advertising, marketing and other publications, statements about the Defective Vehicles that were untrue or misleading." Compl., ¶ 137. <br><br> "Defendants violated Minn. Stat. § 325D.44(9) by advertising, marketing, and selling the Defective Vehicles as reliable and without a known defect while knowing those claims were false." Compl., ¶ 145. <br><br> "GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 13. <br><br> "Because GM acquired and operated Old GM and ran it as a continuing business enterprise, and because GM was aware from its inception of the ignition switch defects in the Defective Vehicles, GM is liable through successor liability for the deceptive and unfair acts and omissions of Old GM, as alleged in this Complaint." Compl., ¶ 27. |
| Ross | With respect to alleged violations of the Michigan Consumer Protection Act, "Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the safety, performance, reliability, quality, and nature of the Class Vehicles . . . ." Compl., ¶114(b). <br><br> "GM gave an implied warranty . . . namely, the implied warranty of merchantability." Compl., ¶ 124. <br><br> "Defendants violated [New York's Deceptive Trade Practices Act] when they represented, through advertising, warranties, and other express representations, that the Class Vehicles had characteristics and benefits that they did not actually have." Compl., ¶ 161. <br><br> "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles . . . ." Compl., ¶ 22. |

| | |
|---|---|
| Roush | "Had Plaintiffs known of the defect, they would not have purchased the vehicle." Compl., ¶ 18. |
| | Referencing the alleged violation of Missouri's Merchandising Practices Act, "GM has used and/or continues to use unfair practices, concealment, suppression and/or omission of material facts in connection with the advertising, marketing, and offering for sale of Class Vehicles." Compl., ¶ 48. |
| Ruff | Alleging Named Plaintiffs own a 2009 Chevrolet Cobalt or a 2006 Chevrolet Cobalt, each of which were purchased new.  With respect to the 2006 Chevrolet Cobalt, Plaintiffs assert that it "was manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl. ¶ 16. |
| | "At all times relevant herein, General Motors Corporation and its successor in interest General Motors LLC were engaged in the business of designing, manufacturing, constructing, assembling, marketing, warranting, distributing, selling, leasing, and servicing automobiles, including the Class Vehicles, and other motor vehicles and motor vehicle components throughout the United States." Compl., ¶ 21. |
| | A Class question is "whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability." Compl., ¶ 108(g). |
| | The second claim for relief asserts a breach of implied warranties. |
| | "Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiffs and Class Members to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 142. |
| Saclo | "GM breached these warranties as described in more detail above. Without limitation, the Defective Vehicles share a common design defect . . . ." Compl., ¶ 314. |
| | "By failing to disclose these material facts, GM intended to induce Plaintiffs and the other Class members to purchase or lease the Defective Vehicles." Compl., ¶ 325. |
| | Through advertising, marketing, and other publications, OM caused statements to be disseminated that were untrue or misleading, and that were known, or that by the exercise of reasonable care should have been known to GM, to be untrue and misleading to consumers, including Plaintiff Cohen and the other California State Class members." Compl., ¶ 346. |
| | "GM made express warranties to Plaintiff Cohen and the other California State Class members within the meaning of [California statutes] in its warranty, manual, and advertising, as described above." Compl., ¶ 359. |
| | "The Defective Vehicles are covered by GM's express warranties."  Compl., ¶ 361. |
| | "GM breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles that are defective."  Compl., ¶ 377. |

| | |
|---|---|
| | "GM has defectively designed, manufactured, sold, or otherwise placed in the stream of commerce Defective Vehicles as set forth above. GM impliedly warranted that the Defective Vehicles were merchantable for the ordinary purpose for which they were designed, manufactured, and sold." Compl., ¶¶ 553-554. |
| Salerno | The Named Plaintiff alleges that she "owns a 2006 Saturn Ion," which was manufactured, sold, distributed, advertised, marketed, and warranted by GM." Compl., ¶ 15.

One of the Class questions is "whether the Class Vehicles were fit for their ordinary and intended use, in violation of the implied warranty of merchantability." Compl., ¶ 101(g).

"Defendants provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the safety, performance, reliability, quality, and nature of the Class Vehicles." Compl., ¶ 113(b).

"Defendants intended that Plaintiff and Class Members rely on their misrepresentations and omissions, so that Plaintiff and other Class Members would purchase or lease the Class Vehicles." Compl., ¶ 113(h).

"In connection with its sales of the Class Vehicles, GM gave an implied warranty as defined in IS U.S.C. § 2301(7); namely, the implied warranty of merchantability" (Compl., ¶ 123), and "GM is liable to Plaintiff and the Nationwide Class pursuant to 15 U.S.C. § 2310(d)(l), because it breached the implied warranty of merchantability" (Compl., ¶ 124).

Count III concerns breach of implied warranty.

"Defendants actively concealed and/or suppressed these material facts, in whole or in part, with the intent to induce Plaintiff and Class Members to purchase Class Vehicles at a higher price for the vehicles, which did not match the vehicles' true value." Compl., ¶ 151. |
| Santiago | Alleging that New GM is liable under a successor liability theory, Plaintiffs allege: "Because GM is liable for the wrongful conduct of Old GM, there is no need to distinguish between the conduct of Old GM and GM, and the complaints will hereinafter simply refer to GM as the corporate actor when describing relevant facts." Compl., ¶ 16.

Named Plaintiff bought a 2007 Saturn Ion Coupe new, and alleged that "[h]ad Plaintiffs and the Class known about the full extent of the Ignition Switch Defect, they would either not have purchased the vehicle at all or would have paid less for them . . . ." Compl., ¶ 102.

"GM actively concealed and/or suppressed these material facts, in whole or in part, to induce Plaintiff and Class Members to purchase or lease the Defective Vehicles . . . ." Compl., ¶ 110. |

| Shollenberger | "GM expressly warranted that the Class Vehicles were of high quality and, at minimum, would actually work properly." Compl., ¶ 52. |
|---|---|
| | "Plaintiff relied on GM's express warranty when purchasing his Class Vehicles." Compl., ¶ 53. |
| | "GM breached this warranty by selling to Plaintiff and the Class members the Class Vehicles with known ignition switch defects . . ." Compl., ¶ 54. |
| | "GM manufactured and/or supplied the Class Vehicles, and prior to the time these goods were purchased by Plaintiff and the putative Class, GM impliedly warranted to Plaintiff that they would be merchantable." Compl., ¶ 60. |
| | "GM breached its contractual duties by, *inter alia*, selling Class Vehicles with a known safety defect and failing to timely recall them." Compl., ¶ 69. |
| Stafford | "In addition to the liability arising out of the statutory obligations assumed by GM, GM also has successor liability for the deceptive and unfair acts and omissions of Old GM because GM has continued the business enterprise of Old GM with full knowledge of the ignition switch defects." Compl., ¶ 15; *see also* Compl., ¶ 104. |
| | Alleging that in connection with his purchase of a 2004 Saturn Ion, the Named Plaintiff "saw advertisements for Old GM vehicles before he purchased the Ion. Plaintiff does recall that safety and quality were consistent themes in the advertisements he saw. These representations about safety and quality influenced Plaintiff's decision to purchase the Ion." Compl., ¶ 35. |
| | "Had Old GM and/or Defendant disclosed the ignition switch defects, Plaintiff would not have purchased the Ion, or would have paid less than he did." Compl., ¶ 35. |
| | A Class question is "whether Defendant is liable for design defect." Compl., ¶ 114(f). |
| | "As a direct and proximate result of Defendant's violations, Plaintiff suffered injury in fact and lost money because they purchased the Defective Vehicle and paid the price they paid believing it to be free of defects when it was not." Compl., ¶ 137. |
| | "At all times relevant, Defendant sold, marketed, advertised, distributed, and otherwise placed Defective Vehicles into the stream of commerce in an unlawful, unfair, fraudulent, and/or deceptive manner that was likely to deceive the public." Compl., ¶ 143. |
| | The Fifth Cause of Action is premised on a design defect theory. |
| | "As a direct and proximate result of Defendant's breach of written warranties, Plaintiff and Class members sustained damages and other losses." Compl., ¶ 171. |
| | "Defendant breached the implied warranty of merchantability by manufacturing and selling Defective Vehicles containing the ignition switch defects." Compl., ¶ 182. |