# Exhibit L

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | |
|---|---|
| **DARYL BRANDT and MARIA BRANDT,** § § | |
| *Plaintiffs* § | Civil Action No. _____ |
| § § § § | |
| *vs.* § § | |
| **GENERAL MOTORS, LLC** § | |
| *Defendant* § | |

## ORIGINAL CLASS ACTION COMPLAINT

Comes now Plaintiffs Daryl Brandt and Maria Brandt and bring this action on their own behalf and on behalf of a class of persons defined below against the Defendant General Motors LLC ("GM") and for their Class Action Complaint allege upon information and belief and based on the investigation to date of counsel, as follows:

## I.
## Preliminary Statement

While extolling the safety and reliability of its vehicles, General Motors, LLC ("GM") was concealing a defect that caused its vehicles to have a sudden engine power loss. Try as it might to conceal its products' defects, GM's defective products came to light in a recent recall, thereby diminishing the value of its vehicles. The class members seek recovery for the damages resulting from the diminution in value of their GM vehicles.

1.

**ORIGINAL CLASS ACTION COMPLAINT**

## II.
## Jurisdiction and Venue

1. This Court has subject matter jurisdiction under the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d); 28 U.S.C § 331 because at least one class member is of diverse citizenship from at least one defendant; there are more than 1 million class members; with the aggregate amount in controversy exceeding $5 million.

2. This Court has personal jurisdiction over Defendant because General Motors, LLC ("GM") conducts significant business within the State of Texas and therefore the Court has general jurisdiction for all purposes.

3. Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in this District because a substantial part of the acts and omissions giving rise to Plaintiffs' claims occurred in this District.

## III.
## Parties

4. Plaintiffs Daryl Brandt and Maria Brandt (together, "Plaintiffs") are residents of Nueces County, Texas. They own a 2007 Chevy Cobalt subject to the ignition switch recall.

5. Defendant General Motors, LLC ("GM") is headquartered in Michigan and conducts business in this District and is responsible for the manufacture, distribution, and sale of all GM automobiles in the United States, as well as engineering design, development, research and development, and manufacturing activities in the U.S., Canada, and Mexico. General Motors, LLC may be served with process through its registered agent for service of process in the State of Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701-4234.

6. At all relevant times, each Defendant was acting as an agent or employee of each

2.

**ORIGINAL CLASS ACTION COMPLAINT**

other and was acting within the course or scope of the agency with knowledge and consent of the other Defendants. Each of the acts and omissions complained of were made known to, and ratified by, each of the other Defendants.

## IV.
## Nature Of The Action

### A. Class Action Allegations

7. Plaintiffs bring this action as a class action pursuant to the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons similarly.

8. The class is defined herein as all persons who owned or leased the following vehicles, as of February 7, 2014:

   a. 2005 Chevy Cobalt;

   b. 2006 Chevy Cobalt;

   c. 2007 Chevy Cobalt;

   d. 2007 G5 Pontiac;

   e. 2003 Saturn Ion;

   f. 2004 Saturn Ion;

   g. 2005 Saturn Ion;

   h. 2006 Saturn Ion;

   i. 2007 Saturn Ion;

   j. 2006 Chevy HHR;

   k. 2007 Chevy HHR;

   l. 2006 Pontiac Solstice;

   m. 2007 Pontiac Solstice;

3.

**ORIGINAL CLASS ACTION COMPLAINT**

      n. 2006 Saturn Sky; and

      o. 2007 Saturn Sky.

  9. The class is sufficiently numerous that joinder of all members is impracticable insofar as, upon information and belief, the class is comprised of as many as 1,367,146 recalled vehicles.

  10. There are questions of law and fact common to the class. These questions include, among others, the diminution in value of the recalled vehicles for each class period and causation.

  11. The claims of the representative parties are typical of the claims of the class. Plaintiffs have suffered the same claims asserted herein on behalf of the class members, thereby supporting typicality.

  12. Plaintiffs will fairly and adequately protect the interests of the class. The interest of Plaintiffs are representative and coincident with, not antagonistic to, those of the remainder of the class.

  13. In addition, Plaintiffs are represented by experienced and able counsel. Counsel for Plaintiffs have handled numerous class actions and product liability claims, including claims for diminution in value.

  14. In addition, the prosecution of separate actions by individual members of the class would create a risk of: inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for defendants; and adjudications with respect to individual members of the class that would as a practical matter be

4.

**ORIGINAL CLASS ACTION COMPLAINT**

dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to obtain compensatory or equitable relief.

15. The questions of law and fact common to the members of the class predominate over any questions affecting individual members, and class treatment is a superior method for the fair and efficient adjudication of the issues in dispute because it permits a large number if injured parties, joinder of whom is impracticable, to prosecute their common claims in a single forum simultaneously, efficiently and without the duplication of effort and expense that numerous individual actions would engender.

16. There are no difficulties likely to be encountered in the maintenance of these claims as a class action, and no superior alternative exists whereby the relative rights of Plaintiffs, class members and Defendant can be fairly managed.

17. Class members have no interest in individually controlling the prosecution of separate actions, and no other litigation has been commenced by or against any other class member concerning the controversy.

### B. Plaintiffs' Vehicles

#### 1. Recall notices raise issues concerning GM vehicles

18. On February 7, 2014, General Motors filed a Defect Notice to recall 2005-2007 Model Year Chevrolet Cobalt and 2007 Pontiac G5 vehicles. The Defect Notice stated the ignition switch torque performance in these vehicles might not meet General Motors' specifications resulting in the non-deployment of airbags in crash events. The notice called for the recall of approximately six hundred thousand vehicles.

19. Seventeen days later, on February 24, 2014 General Motors issued a notice to the

5.

**ORIGINAL CLASS ACTION COMPLAINT**

National Highway Traffic Safety Administration which expanded the recall to include 2003-2007 Saturn Ions, 2006-2007 Chevrolet HHRs, 2006-2007 Pontiac Solstices and 2007 Saturn Skys, brining to the total affected U.S. vehicle population to 1,367,146.

20.     The February 24, 2014 notice provided a chronology that detailed General Motors' knowledge and actions related to the ignition switch.

### 2.     Remarkably, GM knew of the condition since 2004

21.     In 2004, before the launch of the 2005 Cobalt, GM became aware of incidents wherein the vehicle engine would suddenly lose power in the event the key moved out of the "run" position when the driver inadvertently contacted the key or steering column. An investigation was opened and after consideration of lead-time required, cost and effectiveness of potential solutions, the investigation was closed and no action taken.

22.     Notably, the recalls did not provide immediate relief for vehicle owners. Rather, GM disclosed that dangerous defects existed and stated that GM would implement a repair plan in the future.

23.     Throughout 2005, GM received similar field reports of vehicles losing engine power when the key moved out of the "run" position. A proposal was approved to redesign the key head but later cancelled. Instead of recalling the vehicles to replace the defective ignition switches, GM issued a Safety Bulletin. The Bulletin recognized that there was a potential for the driver to inadvertently turn off the ignition due to low ignition key cylinder torque/effort.

24.     Although GM developed an insert for the key ring that changed it from a slot design to a hole design, to prevent the key from easily jogging the ignition switch out of the run position, the redesigned ignition switch was not installed in vehicles until the 2007 model year.

**ORIGINAL CLASS ACTION COMPLAINT**

25. The defective ignition switch has been linked to 33 crashes and 13 fatalities in the United States.

26. Given the vast number of instances of sudden engine power loss and non-deployment of airbags related to the defective ignition switch and GM's knowledge of many or all of the instances, GM should have aggressively developed a remedy years ago. GM failed to do so. In fact, its first recall was not implemented until 2014, nearly ten years after instances of engine power loss.

27. The ignition switch defect in GM vehicles has adversely affected the company's reputation as a manufacturer of safe, reliable vehicles with high resale value, as compared to vehicles made by their competitors. In the wake of the news reports about this serious problem, GM customers and consumers generally are – as they should be – skeptical about the quality and safety of GM vehicles. Indeed, it is likely that the entire fleet of GM vehicles has been stigmatized by this defect, but most specifically the vehicles directly affected by this recall.

28. GM's mishandling of the ignition switch defect, including but not limited to its denial of any problem, even after receiving a substantial number of reports of sudden engine power loss, including ones that resulted in serious physical injury or death, and all other allegations set forth herein, has adversely affected the company's reputation as a manufacturer of safe, reliable vehicles with high resale value, as compared to vehicles made by its competitors. GM customers and the general public have reason to be skeptical about whether GM is coming forth with truthful information about the sudden loss of power defect. Likewise, GM customers and the general public are left to wonder whether safety concerns about GM vehicles are limited to this particular problem.

7.
**ORIGINAL CLASS ACTION COMPLAINT**

29.     Moreover, some vehicle owners, including Plaintiffs, have driven their cars less than they otherwise would due to fear of being in an accident.

### 3.     The damage done

30.     Plaintiffs seek damages suffered by the Class as a result of GM's conduct, including but not limited to: (i) loss of use of the vehicles; (ii) reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to address accelerator problems, floor mats that had to be discarded, etc.; (iii) diminution in resale value of the vehicles; and (iv) an increased risk of physical harm.

31.     Plaintiffs also seeks injunctive relief including: (i) repairs to remove the dangerous condition; (ii) an extension of warranty coverage covering components of the ignition switch system; and (iii) individual notice to each owner effected by the ignition switch recall disclosing the dangerous condition.

## V.

## CAUSES OF ACTION AGAINST GENERAL MOTORS

### A.     Breach of Implied Contract

32.     Plaintiffs re-allege all preceding allegations as if fully set forth herein.

33.     The essential elements of an implied contract are an offer, acceptance, and consideration. The existence and terms of the contract are implied by the conduct of the parties.

34.     An offer, acceptance, and consideration for the sale of vehicles existed, evidenced by the fact that Plaintiffs paid money to GM in exchange for vehicles. The act of exchanging money for vehicles was an offer and acceptance. The money and vehicles constituted consideration.

8.

**ORIGINAL CLASS ACTION COMPLAINT**

35. An implied term of the sale was that GM would provide vehicles that did not contain an unreasonably dangerous condition. There was a meeting of the minds regarding the absence of unreasonably dangerous conditions.

36. The Defendant's intent to provide safe vehicles was evidenced by, among other things, its advertising and marketing materials emphasizing the safety qualities of its vehicles.

37. The absence of unreasonably dangerous conditions was a material term to the contracts. Plaintiffs would not have purchased the vehicles, or would not have paid the purchase price had they known of the ignition switch defect.

38. The Defendant breached the implied terms of their contracts by providing vehicles that contained unreasonably dangerous conditions.

39. Plaintiffs suffered and will continue to suffer damages including but not limited to those set forth in Section VI, *infra*.

    **D.**     **Breach of Implied Warranty of Merchantability**

40. Plaintiffs re-allege all preceding allegations as if fully set forth herein.

41. GM's vehicles were accompanied by an implied warranty of merchantability when sold.

42. The vehicles encompassed by GM's recalls would not pass without objection in the automotive trade. The vehicles are unreasonably dangerous and in need of repair.

43. The vehicles are not fit for the ordinary purpose for which they were sold. The vehicles were purchased to, among other things, safely transport drivers and passengers. The vehicles cannot be used for safe transportation in their current condition.

44. The vehicles were not adequately labeled because the labeling failed to disclose

9.
**ORIGINAL CLASS ACTION COMPLAINT**

the dangerous conditions.

45.    GM breached the implied warranty of merchantability by manufacturing and selling vehicles containing an unreasonably dangerous condition.

46.    Plaintiffs suffered and will continue to suffer damages including but not limited to those set forth in Section VI, *infra*.

### E.    Breach of the Implied Warranty of Fitness for a Particular Purpose

47.    Plaintiffs re-allege all preceding allegations as fully set forth herein.

48.    Defendant GM knew at the time they sold vehicles to the Plaintiffs that such vehicles would be used for the specific purpose of, among other things, providing safe transportation.

49.    Defendant GM knew at the time they sold vehicles to the Plaintiffs that those individuals chose to buy their vehicles from GM at least in part because of the reputation of GM cars and trucks as safe vehicles with high resale value, as compared to cars and trucks manufactured by GM competitors.

50.    Defendant GM knew that Plaintiffs were relying on GM's skill and judgment in furnishing and/or recommending vehicles that were purportedly suitable for providing safe transportation and that enjoyed high resale value, as compared to cars and trucks manufactured by GM's competitors.

51.    Defendant GM breached the implied warranty of fitness because the vehicles contained an unreasonably dangerous condition and were not suitable for providing safe transportation. Likewise, the unreasonably dangerous condition of the vehicles has resulted in a substantial drop in the resale value of those vehicles.

**ORIGINAL CLASS ACTION COMPLAINT**

52.  As a direct result of GM's unlawful conduct, Plaintiffs have suffered and will continue to suffer the damages set forth Plaintiffs suffered and will continue to suffer damages including but not limited to those set forth in Section VI, *infra*.

## VI.

## DAMAGES & INJUNCTIVE RELIEF

53.  All class members seek damages suffered as a result of GM's conduct, including but not limited to:

(i)   loss of use of the vehicles;

(ii)  reimbursement of out of pocket costs for, among other things, alternative transportation, prior repairs to defective ignition switches; and

(iii) diminution in value of the vehicles.

54.  Plaintiffs also seek injunctive relief, including:

(i)   repairs to remove the dangerous condition;

(ii)  an extension of warranty coverage covering components of the ignition system; and

(iii) individual notice to each owner affected by the dangerous condition, which includes instructions to the owner or lessor to park the vehicle and order that GM pay for a rental car while the necessary repairs are conducted.

## VII.

## PRAYER

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter an Order:

11.

**ORIGINAL CLASS ACTION COMPLAINT**

A. Certifying the proposed Class under Fed. R. Civ. P. 23(b)(2) and (3) and appointing Plaintiffs and Plaintiffs' counsel to represent the Class;

B. Finding that Defendant is liable under all legal claims asserted herein;

C. Awarding damages to the Class under the common law and statutory theories alleged herein, including compensatory and consequential damages as set forth above, punitive damages, and any other damages provided under the law;

D. Ordering injunctive relief as set forth above;

E. Awarding attorneys' fees and litigation costs; and

F. Awarding any other legal or equitable relief as justice so requires.

## VIII.

## Demand For Jury Trial

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: March 14, 2014.

Respectfully Submitted,

**HILLIARD MUÑOZ GONZALES LLP**

By: */s/ Robert C. Hilliard*
Robert C. Hilliard
State Bar No. 09677700
bobh@hmglawfirm.com
Rudy Gonzales, Jr.
State Bar No. 08121700
rudyg@hmglawfirm.com
Catherine D. Tobin
State Bar No. 24013642
catherine@hmglawfirm.com

12.

**ORIGINAL CLASS ACTION COMPLAINT**

T. Christopher Pinedo
State Bar No. 00788935
cpinedo@hmglawfirm.com
John B. Martinez
State Bar No. 24010212
john@hmglawfirm.com
Kimberly Wilson
State Bar No. 24066035
kimberly@hmglawfirm.com
Marion Reilly
State Bar No. 24079195
marion@hmglawfirm.com

719 S. Shoreline Boulevard, Suite 500
Corpus Christi, TX 78401
Telephone No.: (361) 882-1612
Facsimile No.: (361) 882-3015


**THE LAW OFFICE OF THOMAS J. HENRY – INJURY ATTORNEYS**


By: */s/ Thomas J. Henry*
Thomas J. Henry
State Bar No. 09484210
tjh@thomasjhenrylaw.com
Greggory A. Teeter
State Bar No. 24033264
gteeter@thomasjhenrylaw.com
Travis Venable
State Bar No. 24068577
tvenable@thomasjhenrylaw.com


521 Starr St.
Corpus Christi, Texas 78401
Telephone No.: (361) 985-0600
Facsimile No.: (361) 985-0601

13.

**ORIGINAL CLASS ACTION COMPLAINT**